Lowey Dannenberg. P.C., ("Lowey") was founded in 1968 by Stephen Lowey, who is now Chairman Emeritus of the Firm.  Since then, the Firm has represented public pension funds and other institutional investors across a broad range of healthcare, securities, antitrust and contract law matters in both class and non-class cases in federal and state court.  Lowey primarily practices in four areas: healthcare and prescription drug overcharge litigation, antitrust litigation, commodities futures litigation, and securities litigation.

Lowey is organized as a professional corporation under New York law and comprises forty-five experienced and highly motivated lawyers, plus paralegals and support personnel.  The Firm has nine partners (eight Shareholders and Chairman Emeritus Stephen Lowey).  The Firm's management committee is headed by Barbara Hart (Shareholder, President, C.E.O. and Chair of Securities Litigation Practice), who serves with Richard Cohen (Shareholder, Chairman), Gerald Lawrence (Shareholder, C.O.O. and Head of Pennsylvania Office), and Geoffrey Horn (Shareholder, C.F.O. and Co-Chair Commodity Litigation Practice).  The other partners include Peter St. Phillip (Shareholder, and Chair of Antitrust Practice); Vincent Briganti (Shareholder and Co-Chair Commodity Litigation Practice); Thomas Skelton (Shareholder) and David Harrison (Shareholder).

As described more fully on our website www.lowey.com, Lowey handles many complex litigation, including:

**Healthcare and Prescription Drug Overcharge Litigation.**  Lowey has also become the nation's premier litigation firm for health insurers to recover overcharges for prescription drug and other medical products and services.  Our skills in this area are recognized by the largest payers for pharmaceuticals in the United States, including Aetna, CIGNA, Humana, and Anthem (formerly known as WellPoint), who regularly retain the firm to assert claims against pharmaceutical manufacturers for practices undertaken to inflate medication pricing.

**Antitrust Litigation.**   As one of the premier antitrust law practices in the United States, Lowey serves clients including businesses, consumers and benefit providers who pay higher prices because of anticompetitive practices.  From conspiracies, to boycotts, to exclusive dealings, we can chart the proper litigious course to fight activities that stop price competition.  Our antitrust cases have recovered tens of millions of dollars for clients who were victims of price fixing and bid rigging, output restrictions, group boycotts, price discrimination, secret rebates, tying, attempted monopolies and monopolies.  Lowey has the resources necessary to litigate these complex cases in a diverse array of industries.

**Commodities Futures Litigation.**  Lowey has been representing clients in commodities futures litigation since the early 1970s, developing an expertise in the commodities markets, representing brokers, dealers and customers in litigation and regulatory proceedings involving global benchmark rates, precious metals, oil, natural gas, potato, copper, and currency contracts.  Lowey has successfully prosecuted, as court appointed lead or co-lead counsel or individual plaintiff's counsel, the most important and complex

1

commodity manipulation actions since the enactment of the CEA.  The Firm handles some of the largest CEA recoveries in history.

**Investor and Securities Litigation.**  Our clients' cases often involve financial fraud; 10(b) violations; auction rate securities manipulation; options backdating; Ponzi schemes; challenges to unfair mergers and tender offers; statutory appraisal proceedings; proxy contests and election irregularities; failed corporate governance; stockholder agreement disputes; and customer/brokerage firm arbitration proceedings.  Our investor litigation practice group has recovered billions of dollars.  But the value of our accomplishments is measured by more than dollars.  We have also achieved landmark, long term corporate governance changes at public companies, including reversing results of elections and returning corporate control to the companies' rightful owners, its stockholders.

## Healthcare and Prescription Drug Overcharge Litigation:

Lowey's Healthcare and Prescription Overcharge Litigation practice is recognized among the nation's premier litigation firms for government entities and health benefit providers in recovering overcharges. Below is a list of some notable examples:

- In In re Neurontin Marketing and Sales Practices Litig., 04-MDL-1629 (D. Mass.), the Firm represented Aetna in an individual action seeking recovery against Pfizer for its off-label marketing of Neurontin.  Lowey was also appointed by the U.S. District Court in Boston to represent private third party payers' interests on the Plaintiffs Steering Committee.  In that capacity, we assisted the trial team in securing the first ever verdict in history against a pharmaceutical manufacturer (Pfizer) finding that it engaged in a RICO enterprise by fraudulently marketing its drug, resulting in a $142 million trebled award.  Lowey later argued and won a landmark RICO decision in the United States Court of Appeals for the First Circuit holding drug manufacturers accountable to health insurers for damages attributable to marketing fraud.   In re Neurontin Marketing Sales Practices Litig., Inc., 712 F.3d 51 (1st Cir. 2013).  The Firm obtained a substantial confidential settlement for Aetna and later negotiated settlements for other third party payer clients as part of a $325 million settlement of the *Neurontin* class action case.

- The Firm achieved an $80 million settlement of a class action on behalf of consumers and third party payers against Aventis S.A. and Andrx Corp., charging that they monopolized and unreasonably restrained trade in the United States market for Cardizem CD and its generic bioequivalents.  In re Cardizem CD Antitrust Litigation, 218 F.R.D. 508 (E.D. Mich. 2003); appeal dismissed, 391 F.3d 812 (6th Cir. 2004), cert. denied, 125 S. Ct. 2297 (2005).  Previously, the United States Court of Appeals for the Sixth Circuit unanimously affirmed a landmark summary judgment of per se liability against defendants.  In re Cardizem CD Antitrust Litig., 332 F.3d 896 (6th Cir. 2003), affirming, 105 F. Supp. 2d 682 (E.D. Mich. 2000).  As lead counsel, Lowey argued both successful appeals.

- On July 8, 2005, the United States District Court for the Southern District of Florida

2

approved a $28,700,000 settlement of a class action on behalf of consumers and third party payers against Abbott Laboratories and Geneva Pharmaceuticals, charging that they monopolized and unreasonably restrained trade in the market for the prescription drug Hytrin and its generic equivalents. The Firm was lead counsel for the class in this six-year litigation. The Court had previously certified a 17-state class of indirect purchasers consisting of consumers and third party payers in In re Terazosin Hydrochloride Antitrust Litig., 2004 U.S. Dist. LEXIS 6176 (S.D. Fla. April 8, 2004). The Court complimented our performance and experience in this hard-fought case.

- The United States District Court for the District of Delaware approved, and the Third Circuit Court of Appeals affirmed, a $44.5 million class action settlement paid by DuPont Pharmaceuticals to consumers and third party payers nationwide to settle claims of unfair marketing practices in connection with the prescription blood thinner Coumadin. Lowey, which had been appointed by the District Court to the plaintiffs' executive committee as the representative of third party payers, argued the successful appeal. In re Warfarin Sodium Antitrust Litigation, 391 F.3d 516 (3rd Cir. 2004).

- In the Rezulin litigation, Lowey representing a class of endpayers made law that has influenced every third party payer prescription drug case since. Louisiana Health Indemnity Company, d/b/a Louisiana BlueCross Blue Shield ("LABCBS"), sued Warner Lambert and Pfizer for alleged misrepresentations concerning the qualities of their antidiabetic medication, Rezulin, causing financial injury to LABCBS in the form of excessive purchases of the drug. Lowey successfully argued to reverse dismissal of LABCBS' class action in a precedent-setting appeal to the Second Circuit. This case established the direct rights (as contrasted with derivative, and more limited, subrogation rights) of third party payers to sue pharmaceutical manufacturers for drug overcharges for defective drugs. Desiano v. Warner-Lambert Co., 326 F.3d 339 (2d Cir. 2003).

- In In re Wellbutrin XL Antitrust Litig.. 08-cv-2433 (E.D. Pa.), we are class counsel in a generic delay case involving GlaxoSmithKline's and Valeant's (f/k/a Biovail) blockbuster drug Wellbutrin XL. In re Wellbutrin XL Antitrust Litig., 286 F.N.D. 126 (E.D. Pa. 2011). In July 2013 the Court approved our $11.75 settlement with Valeant.In December 2010, the Court granted a motion to amend the complaint allowing us to plead the New York (but not the Illinois) class claims based on the existing plaintiffs' purchases. In re: Wellbutrin XL Antitrust Litigation, 756 F. Supp. 2d 670 (E.D. Pa. 2010). The decision is the most comprehensive court interpretation to date of the United States Supreme Court's March 2010 decision in Shady Grove v. Allstate, 130 S. Ct. 1431 (2010), which held that in diversity actions in federal district courts, FED. R. CIV. P. 23 trumped state class action rules and statutes.

- In In re Nexium (Esomeprazole) Antitrust Litig., 12–md–02409–WGY (D. Mass.), the Firm represents 116 individual third party payer health insurers who have opted out of the certified litigation class in Nexium and filed separate actions in Pennsylvania state court. Cariten Insurance Company, et al. v. AstraZeneca AB, et

al., No. 002106 (Pa. Court of Common Pleas); Time Insurance Company, et al. v. AstraZeneca AB, et al., No. 001903 (Pa. Court of Common Pleas). After being removed, our motions for remand were granted by two separate federal courts. Time Ins. Co. v. AstraZeneca AB, 2014 U.S. Dist. LEXIS 140110 (E.D. Pa. Oct. 1, 2014); Cariten Insurance Company et al v. AstraZeneca AB, 1:14-cv-13873-*WGY,* ECF No. 52 (D. Mass. Nov. 20, 2014).  These matters are currently in the early stages of litigation.

- In Humana Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al., No. 3:14-cv-00572 (D. Conn.), Lowey represents Humana Inc. in a generic delay antitrust case against defendant Boehringer Ingelheim Pharmaceuticals, Inc., the Aggrenox brand manufacturer, and generic manufacturer Barr Pharmaceuticals Inc. (later acquired by Teva Pharmaceuticals), before Judge Underhill in the District of Connecticut, (SRU). Class actions on behalf of direct and indirect purchaser plaintiffs are pending in the same multidistrict litigation. In re Aggrenox Antitrust Litigation, MDL No. 2516 (D. Conn.).  The litigation asserts claims under state antitrust law, claiming a $100 million co-promotion agreement was disguised pay-for-delay, and as a result, Humana has overpaid and continues to overpay for Aggrenox.  On March 23, 2015, the Court sustained all but two of Humana's state law antitrust claims.  In re Aggrenox Antitrust Litig., 2015 U.S. Dist. LEXIS 35634 (D. Conn. Mar. 23, 2015).

- In Government Employees Health Association v. Endo Pharmaceuticals, Inc., et al., No. 3:14-cv-02180-WHO (N.D. Cal.), Lowey represents Government Employees Health Association ("GEHA") in a generic delay antitrust case pending before Judge Orrick in the Northern District of California, concerning Lidoderm, the brand name for a prescription pain patch for the treatment of after-shingles pain, sold by Endo Pharmaceuticals, Inc., Teikoku Pharma USA, and Teikoku Seiyaku Co., Ltd.  Class actions on behalf of direct and indirect purchaser plaintiffs are pending in the same multidistrict litigation. In re Lidoderm Antitrust Litigation, MDL No. 2521 (N.D. Cal.).  On May 5, 2015, Judge Orrick granted in part and denied in part defendants' motion to dismiss GEHA's Second Amended Complaint, sustaining GEHA's claims under the laws of 32 states. In re Lidoderm Antitrust Litig., 2015 U.S. Dist. LEXIS 58979 (N.D. Cal. May 5, 2015).

## Commodities Class Action Litigation:

Lowey's Commodities Litigation Team is also an industry leader:

- In re London Silver Fixing Ltd., Antitrust Litig., Case No. 14-md-2573  (S.D.N.Y.) (VEC).  Lowey Dannenberg serves as co-lead counsel in a proposed class action alleging the manipulation of the London Silver Fix, a global benchmark that impacts the value of more than $30 billion in silver and silver financial instruments traded each year, by large financial institutions, including Deutsche Bank, HSBC, and UBS. Lowey Dannenberg reached a settlement agreement with defendant Deutsche Bank for $38 million in September 2016. Judge Valerie E. Caproni sustained Sherman Act and CEA claims against HSBC and UBS in October 2016.

4

- <u>Sonterra Capital Master Fund Ltd. v Credit Suisse Group AG et al.</u>, Case No. 15-cv-871 (S.D.N.Y.) (SHS).  Lowey Dannenberg serves as lead Counsel in a proposed class action alleging the manipulation of the Swiss Franc LIBOR and Swiss Franc LIBOR-based derivatives prices and pricing by, among others, Deutsche Bank, JP Morgan, RBS, and UBS. Defendant JP Morgan has agreed to settle the claims against it for $22 million, and Judge Sidney H. Stein preliminary approved this settlement on August 16, 2017. Judge Stein issued a decision on defendants' motions to dismiss on September 25, 2017, finding personal jurisdiction over all of the bank defendants and granted leave to amend the complaint.

- <u>Sonterra Capital Master Fund Ltd. v Barclays Bank plc et al.</u>,, Case No. 15-cv-3538 (S.D.N.Y.) (VSB).  Lowey Dannenberg is leading the prosecution of a proposed class action alleging the manipulation of LIBOR for the Pound Sterling ("Sterling LIBOR") and Sterling LIBOR-based derivatives prices and pricing by institutions including Barclays, Deutsche Bank, Lloyds, RBS and UBS.

- <u>Yen-LIBOR/Euroyen TIBOR</u>. Lowey Dannenberg is court-appointed Lead Class Counsel in two related proposed class actions against the numerous financial institutions responsible for the setting of the London Interbank Offered Rate ("LIBOR") for the Japanese Yen and the Euroyen Tokyo Interbank Offered Rate ("TIBOR"). The lawsuits allege that the Defendants manipulated these global benchmark rates in an artificial direction that financially benefitted their Yen-LIBOR and Euroyen-based derivatives positions. Defendants named in the lawsuits have already pled guilty to criminal charges of price fixing and paid billions in fines to regulators. Further, Defendant UBS AG has been granted conditional leniency from the U.S. Department of Justice ("DOJ") pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") for alleged anticompetitive conduct relating to the Euroyen market. Lowey Dannenberg has already recovered $206 million for investors in these cases after resolving claims against defendants JPMorgan, Citigroup, Deutsche Bank, and HSBC. <u>Laydon v. Mizuho Bank, Ltd</u>. <u>et al.</u>, Case No. 12-cv-3419 (S.D.N.Y.) (GBD); Sonterra Capital Master Fund Ltd. et al. v. UBS AG et al, Case No. 15-cv-05844 (S.D.N.Y.) (GBD).

- <u>Euribor</u>. On February 12, 2013, Lowey Dannenberg filed a proposed class action against numerous global financial institutions responsible for the setting of the Euro Interbank Offered Rate ("Euribor"), a global reference rate used to benchmark and price settle over $200 trillion of financial products, including Euribor futures contracts traded on the NYSE LIFFE exchange. Defendants named in the lawsuit have already settled with global regulators, paid billions in fines, and have sought and been granted ACPERA conditional leniency from the DOJ for alleged anticompetitive conduct in the Euribor market. Lowey Dannenberg has secured agreements from three of the defendants—Barclays, Deutsche Bank, and HSBC—to settle the claims against them for a collective $309 million. <u>Sullivan v. Barclays PLC et al.</u>, Case No. 13-cv-2811 (S.D.N.Y.) (PKC).

5

- Australian Bank Bill Swap Reference Rate (BBSW). Lowey Dannenberg filed a proposed class action in August 2016 alleging that financial institutions responsible for setting the Bank Bill Swap Reference Rate ("BBSW"), the primary interest rate benchmark used to price and settle Australian dollar-denominated derivatives, manipulated the benchmark rate in an artificial direction that financially benefitted their related derivatives positions. Australia and New Zealand Banking Group, Limited and National Australia Bank have settled with the Australian Securities and Investments Commission, agreeing to pay $100 million AUD in fines and admitting to wrongdoing.  This case is currently pending before Judge Lewis A. Kaplan. Dennis, et al. v. JPMorgan Chase & Co., et al., Case No. 16-cv-06496 (S.D.N.Y.) (LAK).

- SIBOR and SOR.  Lowey Dannenberg filed a proposed class action in July 2015 alleging that the 20 global financial institutions responsible for setting the Singapore Interbank Offered Rate ("SIBOR") and the Singapore Swap Offer Rate ("SOR") manipulated these benchmark rates to artificial levels that financially benefitted their own derivatives positions at the expense of U.S. investors. The Monetary Authority of Singapore found these financial institutions had manipulated SIBOR and SOR and imposed fines and other remedial measures. In August 2017, Judge Alvin K. Hellerstein sustained plaintiffs' Sherman Act claims against defendants Bank of America, Citibank, JPMorgan, and granted leave to amend the Complaint. *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A., et al.*, 16-cv-5263 (S.D.N.Y.).

- FX Manipulation.  Lowey Dannenberg represents United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund in a proposed class action against numerous global financial institutions and leading FX market dealers. 15 of the defendants have collectively agreed to settle this case for $2.3 billion, which would represent the largest recovery in the history of the CEA. In re Foreign Exchange Benchmark Rates Antitrust Litigation, Case No. 13-cv-7789 (S.D.N.Y.).

- Lowey served as Co-Lead Counsel in In re: Amaranth Natural Gas Commodity Litigation, Case No. 07 Civ. 6377 (SAS) (S.D.N.Y.), a certified class action involving the manipulation of NYMEX natural gas futures and options contract prices by Amaranth Advisors LLC, one of the largest natural gas hedge funds prior to its widely-publicized collapse in September 2006.  After more than five years of litigation, the Honorable Shira A. Scheindlin, approved a $77.1 million settlement. The settlement Lowey achieved is remarkable because it is more than ten times greater than the $7.5 million joint settlement achieved by the Federal Energy Regulatory Commission ("FERC") and the Commodity Futures Trading Commission ("CFTC") against Amaranth Advisors LLC and represented the then fourth-largest class action recovery in the 85-plus year history of the Commodity Exchange Act.  A key component to Lowey's successful result was obtaining a pre-judgment attachment award in the amount of $72.4 million against the assets of Defendant Amaranth LLC, the "Master Fund" in the Amaranth hedge fund family.  In re: Amaranth Natural Gas Commodity Litig., 711 F. Supp.2d 301 (S.D.N.Y. 2010).

- <u>In re Natural Gas</u>, Master File No. 03 CV 6186 (S.D.N.Y.) (Marrero, J.).  Lowey Dannenberg served as co-lead counsel in this certified CEA class action alleging false reporting of physical natural gas price and volume information by more than twenty large energy companies.  Lovell Stewart and Lowey Dannenberg achieved recoveries in excess of $101 million on behalf of a certified class of New York Mercantile Exchange ("NYMEX") natural gas futures and options traders.  This was at the time the third-largest commodity manipulation class action recovery in the history of the Commodity Exchange Act.

**<u>Other Class Action Successes:</u>**

Lowey has also had significant success in other class actions:

- As lead counsel Lowey successfully represented a class of renters of mold-infested apartments in a $6.3 million settlement of a complex landlord-tenant class action in <u>In Re Archstone Westbury Tenant Litigation</u>, Index No. 21135/07 (N.Y. Sup. Ct. Nassau County) in which we successfully moved for remand based on a hotly contested exemption under the Class Action Fairness Act of 2005 ("CAFA").  <u>Sorrentino v. ASN Roosevelt Center, LLC</u>, 588 F. Supp.2d 350 (E.D.N.Y. 2008).

- After more than seven years of active litigation, Lowey secured a $13,000,000 recovery for residential home borrowers from the bankruptcy estate of Washington Mutual, Inc. The hard-fought case generated eight reported and unreported decisions, many of which were issues of first impression. See, e.g., <u>Cassese v. Washington Mut., Inc.</u>, 255 F.R.D. 89 (E.D.N.Y. 2008); <u>Cassese v. Washington Mut., Inc.</u>, 262 F.R.D. 179 (E.D.N.Y. 2009); <u>Cassese v. Washington Mut., Inc.</u>, 711 F. Supp. 2d 261 (E.D.N.Y. 2010); <u>Cassese v. Washington Mut., Inc.</u>, 743 F. Supp. 2d 148 (E.D.N.Y. 2010).

- The Supreme Court of the State of New York, County of New York, approved a $22.8 million settlement on behalf of a class of current and former holders of credit cards issued by MBNA bank who took cash advances in response to an MBNA promotion.  The Court noted that Lowey is an "able law firm having long-standing experience in commercial class action litigation." <u>Broder v. MBNA Corp.</u>, No. 605153/98 (Sup. Ct., N.Y. County, April 11, 2003).

**<u>Lowey's Recognized Expertise:</u>**

The attorneys of Lowey have been repeatedly recognized by the courts as expert practitioners in the field of complex litigation.  In 2013, the Honorable Colleen McMahon granted final approval to the $219.9 million Madoff Feeder Fund Settlement in <u>In re Beacon Associates Litigation</u>, 09 Civ. 0777 (LBS) (AJP) (S.D.N.Y.), <u>In re Jeanneret Associates</u>

Litigation, 09-cv-3907 (CM).  Judge McMahon commended Ms. Hart (Lead and Liaison Counsel) on the "unprecedented global settlement" and recognized that Ms. Hart "carried the laboring oar."  The extraordinary recovery represents 70% of class members' net losses suffered as a result of Madoff's Ponzi scheme.  No class member objected to the Settlement, and 100% of eligible Class Members filed Proofs of Claim.  Distinct from most settlements where it can take years for investors to see a penny, nearly all of all victims' checks were in their hands within weeks of the Settlement becoming final.  As Judge McMahon reflected:

> [T]he fact that there was no objection to [the Settlement] reflects the hard work that all of you put into trying to get a global resolution of all of these cases, whether class actions or private actions where ever they were pending, whether arbitrations or in court to get a global resolution of these disputes relating principally to Ivy achieved so that we can get them all behind us. You worked very hard. The settlement process really was quite extraordinary.

In the Juniper Networks, Inc. Securities Litigation, the Court, in approving the settlement, acknowledged that "[t]he successful prosecution of the complex claims in this case required the participation of highly skilled and specialized attorneys."  In re Juniper Networks, Inc., C06-04327, Order dated August 31, 2010 (N.D. Cal.).

In the WorldCom Securities Litigation, the Court repeatedly praised the contributions and efforts of the firm: "I want to thank Mr. Selinger again publicly.  I have done it many a time during the course of this litigation.  He has performed a marvelous service."  In re WorldCom, Inc. Securities Litigation, 02 Civ. 3288 (DLC), hearing transcript of November 5, 2004 at 76.  Similarly, on November 10, 2004, the Court found that "the Lowey Firm . . . has worked tirelessly to promote harmony and efficiency in this sprawling litigation. . . . [The Lowey firm] has done a superb job in its role as Liaison Counsel, conducting itself with professionalism and efficiency. . . ."  In re WorldCom, Inc. Securities Litigation, 2004 WL 2549682 (S.D.N.Y. Nov. 10, 2004).

In the In re Bayer AG Securities Litigation, 03 Civ. 1546 (S.D.N.Y. Dec. 15, 2008), Judge William H. Pauley III, in his order approving a settlement of $18.5 million for the class of plaintiffs, noted that the attorneys from the firm are "nationally recognized complex class action litigators, particularly in the fields of securities and shareholder representation," that "provided high-quality representation."  In re Bayer AG Securities Litigation, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008).

In the In re Luminent Mortgage Capital, Inc. Securities Litigation, No. C07-4073 (N.D. Cal.), Judge Phyllis J. Hamilton noted in the hearing for final approval of settlement and award of attorneys' fees that "[t]he $8 million settlement…is excellent, in light of the circumstance." Judge Hamilton went on to say that "most importantly, the reaction of the class has been exceptional with only two opt-outs and no objections at all received."  In re Luminent Mortgage Capital, Inc. Securities Litigation, No. C07-4073-PJH, Hearing on Plaintiff's Motion for Final Approval of Settlement/Plan of Allocation and for an Award of Attorneys' Fees and Reimbursement of Expenses, April 29, 2009.

In the Oracle Securities Litigation, Judge Vaughn Walker repeatedly praised the performance of the firm.  See In re Oracle Securities Litigation, 852 F. Supp. 1437, 1454, 1459 (N.D. Cal. 1994) ["The Lowey firm's high caliber representation of the class against the Oracle defendants served as tangible evidence of its ability to represent the class against Andersen.... Class counsel's able, persistent and patient performance in achieving the present recovery has not gone unnoticed"].  See also related opinions 829 F. Supp. 1176 (N.D. Cal. 1993); and 136 F.R.D. 639, 649 n.23 (N.D. Cal. 1991) ["The Lowey firm's papers have been thoughtful and to the point...."].

The Court in <u>Winston v. Mezzanine Investments, L.P.</u>, Index No. 28657/91 (Sup. Ct. N.Y. Co. Dec. 22, 1997), following victory at trial and an $8,000,000 recovery for a class of investors, expressed the view that the attorneys of Lowey "are highly experienced specialists" whose work is "of very high quality."  The Court in <u>In re Seagate Technology, Inc. Shareholders Litigation</u>, CA No. 17932 (Del. Ch. Apr. 9, 2001), in approving a $200 million settlement in an action in which the Firm served as co-lead counsel, stated that the attorneys of Lowey "did highly skilled work against highly skilled opposition.  I read the opening brief carefully ... it was very well done and a piece of work ... there was some high-wall lawyering done here."  <u>Snyder v. Nationwide Insurance Company</u>, Index No. 97/0633 (Sup. Ct. Onondaga Co. December 17, 1998) (finding that the attorneys of Lowey are "great attorneys" who did a "very, very good job" for the class, and that Lowey makes "attorneys look good"); <u>In re MobileMedia Securities Litigation</u>, Civil No. 96-5723 (D.N.J. February 7, 2000) (describing the firm as "expeditious," "efficient," and "professional").

**<u>Earlier Recoveries</u>**

Other examples of the Firm's successful efforts include:

- A recovery by settlement of approximately $100 million in policy refunds or adjustments, discounted premiums, and discounted products for a national class of purchasers of life insurance policies issued by Nationwide Mutual Insurance.  <u>Snyder v. Nationwide Insurance Company</u>, Index No. 97/0633 (Sup. Ct. Onondaga Co. 1998).  Firm acted as co-lead counsel.

- A recovery by settlement of approximately $110,000,000 for a class of purchasers of various taxable municipal bonds.  <u>In re Taxable Municipal Bond Securities Litigation</u>, Master File No. MDL 863 (E.D. La. 1995).  Firm acted as member of the executive committee of plaintiffs' counsel.

- The recovery by settlement of approximately $618,000,000 for the public shareholders of Standard Oil Company in connection with the acquisition by its controlling stockholder, British Petroleum Acquisition p.l.c.  <u>In re The Standard Oil Company/British Petroleum Litigation</u>, Consolidated Case No. 126760 (Court of Common Pleas, Cuyahoga County, Ohio 1987).  Firm acted as co-lead counsel.

- A recovery by settlement of more than $180,000,000 for public shareholders of Shell Oil Company after a successful motion for a preliminary injunction against a tender offer by the Royal Dutch/Shell group of companies, the majority shareholder.  See Joseph v. Shell Oil Co., 501 A.2d 409 (Del. Sup. 1985).  Firm acted as co-lead counsel.

- A recovery by settlement of more than $149,000,000, one of the largest recoveries ever in a commodities manipulation case, for investors in Comex copper futures contracts.  See In re Sumitomo Copper Litigation Sumitomo ("Sumitomo"), Master File No. 96 CV 4854 (S.D.N.Y.) (MP).  Lowey served as one of the three executive committee members in charge of prosecuting the case.

- A recovery by settlement of approximately $75,000,000 for former public shareholders of Triangle Industries, Inc.  See In re Triangle Industries, Inc. Shareholders Litigation, Delaware Chancery Court, Consolidated Action No. 10466.  Firm acted as co-lead counsel.

- A recovery by settlement of $72,500,000 for sellers of the stock of RJR Nabisco, Inc.  In re RJR Nabisco, Inc. Securities Litigation, M.D.L. Docket No. 818 (MBM) (S.D.N.Y. 1992).  Firm acted as lead counsel.

- A recovery by settlement of more than $44 million in policy refunds or adjustments or additional paid-up life insurance policies for a national class of purchasers of life insurance policies issued by the Country Life Insurance Company.  Duckworth v. Country Life Insurance Company, 98 CH 01046 (Cir. Ct., Cook Co., Ill. 2000).

- A recovery by settlement of approximately $35,500,000 for public bondholders of Burlington Northern Railroad Co. Rievman v. Burlington Northern Railroad Co., 118 F.R.D. 29 (S.D.N.Y. 1987).  During the course of the action, the Firm obtained a preliminary injunction against a tender offer and defeasance plan by Burlington Northern Railroad Co. relating to certain railroad bonds. 618 F. Supp. 592 and 644 F. Supp. 168 (S.D.N.Y.).  Firm was lead counsel.

- Recoveries by settlement exceeding $30,000,000 for classes of third-party payers and patients for alleged overcharges for clinical laboratory testing.  In re SmithKline Beecham Clinical Laboratories, Inc. Laboratory Test Billing Practices Litigation, 3: 97-CV-1795 (AVC) (D. Ct. 2001); May v. SmithKline Beecham Clinical Laboratories, Inc., C.A. No. 97-L-1230 (Cir. Ct., Madison Co., Ill. 2001).  Firm acted as co-lead counsel.

- A recovery by settlement exceeding $27,000,000 for a class of purchasers of securities of MobileMedia, Inc.  In re MobileMedia Securities Litigation, Civil No. 96-5723 (D.N.J. 2000).  Firm acted as co-lead counsel.

- A recovery by settlement of $25,300,000 for a class of third-party payers settling claims for overcharges for the generic versions of the prescription drugs lorazepam and clorazepate.  In re Lorazepam and Clorazepate Antitrust Litigation, MDL No. 99-

1290 (TFH) (D.D.C. 2002).  Firm acted as lead counsel.

- A recovery by settlement of $25,000,000 for a class of purchasers of securities of Oracle Systems Corporation.  In re Oracle Securities Litigation, Master File C-90-0931 (VRW) (N.D. Cal. 1994).  Firm acted as lead counsel.

- A recovery by settlement of $25,000,000 for a class of sellers of shares of Columbia Pictures Entertainment, Inc.  The Firm acted as lead counsel in the case, which was prosecuted for more than five years and involved, among many other hurdles, a motion to dismiss (In re Columbia Securities Litigation, 747 F. Supp. 237 (S.D.N.Y. 1990)), a motion for summary judgment (155 F.R.D. 466 (S.D.N.Y. 1994)) and considerable discovery in and from Japan.

- A recovery by settlement of $24,000,000 for a class of purchasers of securities of Arakis Energy Corporation.  In re Arakis Energy Corp. Securities Litigation, Fed. Sec. L. Rep. (CCH) ¶ 91,646 (E.D.N.Y. August 17, 2001).  Firm acted as co-lead counsel.

- A recovery by settlement of $21,100,000 for holders of rights to purchase the common stock of Crown Zellerbach Corporation, in connection with the acquisition of Crown Zellerbach assets.  In re Crown Zellerbach Corporation Rights Plan, No. 85-C-3286 (N.D. Ill. 1986).  Firm acted as co-lead counsel.

- A recovery by settlement of more than $20,000,000 for a class of purchasers of securities of Pepsi Cola Puerto Rico Bottling Co.  Turabo Medical Center v. Beach, No. 96-2250 (DRD) (D.P.R. 1997).  Firm acted as co-lead counsel.

- A recovery by settlement of $19,500,000 for a class of purchasers of securities of Raychem Corporation.  Cytryn v. Cook, 89-20801-RFP (N.D. Cal. 1992).  Firm acted as co-lead counsel.

- A recovery by settlement of $19,000,000 for a class of purchasers of shares of General Electric Company.  Lowey acted as sole lead counsel in the case, which was prosecuted for more than six years and involved, among many obstacles to recovery, motions to dismiss (In re Kidder Peabody Securities Litigation, Fed. Sec. L. Rep. (CCH) ¶ 99,030 (S.D.N.Y. 1995)), motions for summary judgment (10 F. Supp. 2d 398 (S.D.N.Y. 1998)), and a leading decision compelling production by defendants' counsel of witness interview notes (168 F.R.D. 459 (S.D.N.Y. 1996)).

- A recovery by settlement of $17,600,000 for former preferred shareholders of Genesco Inc. after successful trial and appeal.  See Denco v. Genesco, 427 N.Y.S.2d 434 (1st Dep't 1980).  Firm was lead counsel.

- A recovery after trial of approximately $13,000,000 for 115 residents of Mexico and Latin America, whose status as depositors of the insolvent American Bank and Trust Co. had been challenged by the Federal Deposit Insurance Corporation.  In the Matter of American Bank & Trust Co., Index No. 18649/76 (Sup. Ct., N.Y. Co. 1979).  Firm

acted as lead counsel.

# ATTORNEY RESUMÉS

### *Gerald Lawrence – Chief Operating Officer; Heads Pennsylvania Office*

Mr. Lawrence is the Chief Operating Officer of the Firm.  Mr. Lawrence has been seven times recognized as one of the "Top 100 Lawyers in Pennsylvania" or as one of the "Top 100 Lawyers in Philadelphia" in a survey of lawyers and judges published in *Philadelphia Magazine*, and previously published in the *Philadelphia Inquirer*.  In 2016, he was also again selected by *American Lawyer Media* as "one of New York's Top Rated Lawyers" as published in the *New York Law Journal* and *New York Magazine*. In addition, he has been recognized as a "Pennsylvania Super Lawyer" every year since 2005.

In February, 2016, Governor Tom Wolf appointed Mr. Lawrence as one of 12 members of the Pennsylvania Judicial Selection Commission.  Mr. Lawrence had previously served the Governor as a member of his transition team.

In 2014, the Supreme Court of Pennsylvania appointed Mr. Lawrence to the Board of Law Examiners, and, on April 1, 2016, as Vice-Chairman.  The seven member Board of lawyers and judges determines whether applicants meet the requirements for admission to the bar.  In addition, he served two terms, including as the Vice-Chairman, on the Disciplinary Board of the Supreme Court of Pennsylvania which regulates the conduct of Pennsylvania's 75,000 licensed attorneys.  Mr. Lawrence serves as Commissioner of Elections and Commissioner of Voter Registration of Delaware County, Pennsylvania, and previously served as an appointed Member of the Pennsylvania Securities Commission's Attorney Advisory Committee, and on the Investment Advisory Board of the Pennsylvania Supreme Court.

He has enjoyed success in a wide variety of cases.  Mr. Lawrence has represented health benefits plan providers and recovered hundreds of millions of dollars on their behalf, including in *In re: Skelaxin (Metaxalone) Antitrust Litigation,* Case No. 12-md-02343, MDL No. 2343 (D. Tenn.)(Third Part Payor allocation counsel), *Blue Cross and Blue Shield Association, et al. v. SmithKlineBeecham Corp.,* Phila. C.C.P., August Term 2012, No. 997 (Flonase opt-out settlement), *New England Carpenters Health Benefit Fund, et al. v. First DataBank, Inc. and McKesson Corp.,* No. 05-cv- 11148 (D. Ma.) (TPP allocation counsel for $285 million TPP share of $350 million settlement), *Medical Mutual of Ohio v. Merck & Co., Inc.,* N.J. Superior Ct. (Atlantic County), Docket No. ATL-L-07319-06-MT, Case No. 619 ($65 million Vioxx settlement), *In re Actiq Sales and Marketing Practices Litig.,* 790 F. Supp. 2d 313 (E.D. Pa. 2011), *In re Pharmaceutical Industry Average Wholesale Price Litig.,* Case No. 01-CV-12257, MDL No.1456 (D. Mass.) (ISHP counsel for opt-out TPPs), *Humana, Inc., et al. v. GlaxoSmithKline,* Phila. C.C.P., December Term 2004, No. 3140 (Augmentin opt-out settlement), *In re: Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003) ($80 million settlement).  He represented Aetna in the recently resolved *In re Neurontin Mktg. & Sales Practices Litig.,* 712 F.3d 51 (1st Cir. 2013) (holding drug manufacturers accountable to health insurers for damages attributable to marketing fraud), and as the representative of a certified class, in *In re Wellbutrin XL Antitrust Litig.,* 282 F.R.D. 126 (E.D. Pa. 2011) and *In re*

*Wellbutrin XL Antitrust Litig.,* 756 F. Supp. 2d 670 (E.D. Pa. 2010) (the first decision to allow class action prosecution of antitrust claims under New York law).

Mr. Lawrence heads the firm's mass tort lien recovery practice and prosecuted these matters: *In re Avandia Marketing Sales Practices and Products Liability Litigation,* 685 F.3d 353 (3d Cir. 2012), *cert. denied,* 12-690, 2013 WL 1500235 (U.S. Apr. 15, 2013) and *UnitedHealth Group, Inc. v. GlaxoSmithKline, LLC*, Phila. C.C.P., Dec. Term, 2010, No. 2871 (Avandia state court proceeding), *Avmed v. BrownGreer PLC,* Case No. 08-30802 (E.D. La.) (Vioxx lien recovery litigation), *Yaz Products Liability Litigation*, including litigation in the United States District Court for the Southern District of Illinois (MDL 2100), the Philadelphia Court of Common Pleas, the N. J. Superior Court (Bergen County) and the Superior Court for the State of California, and the *In re Hormone Therapy Products Liability Litig.*

Mr. Lawrence also represented defendants in winning dismissals of these class action litigations: *Roche v. Aetna, Inc.*, 165 F. Supp. 3d 180 (D.N.J. 2016); *Mattson v. Aetna Life Ins. Co.*, 124 F. Supp. 3d 381 (D.N.J. 2015), *aff'd* 2016 U.S. App. LEXIS 11428 (3d Cir. N.J., June 23, 2016); *Meek-Horton v. Trover Solutions,* 910 F. Supp. 2d 690 (2013); *Potts v. Rawlings Co., LLC,* 897 F. Supp. 2d 185 (2012); *Kesselman v. The Rawlings Company, LLC*, 668 F. Supp. 2d 604 (S.D.N.Y. 2009); *Elliot Plaza Pharmacy v. Aetna U.S. Healthcare*, 2009 WL 702837 (N.D. Okla. March 16, 2009); *Main Drug, Inc. v. Aetna U.S. Healthcare*, 475 F.3d 1228 (11th Cir. 2007) ((dismissing appeals from *Main Drug, Inc. v. Aetna U.S. Healthcare,* 455 F. Supp. 2d 1323 (M.D. Ala. 2006) and 455 F. Supp. 2d 1317 (M.D. Ala. 2005)); and defends Aetna in the class action case: *Minerley v. Aetna, Inc., et al*., Civ. 13-1377 (D.N.J.).

Mr. Lawrence's *pro bono* work includes significant and important cases. He sought to overturn the Pennsylvania Defense of Marriage Act while representing a public official before the Pennsylvania Supreme Court appealing an order enjoining him from issuing marriage licenses to same sex couples. *Pennsylvania v. Hanes,* 77 MAP 2013 (Pa. Supreme Court).

Mr. Lawrence was given an AV rating by Martindale-Hubbell, the highest rating a lawyer can obtain, indicating a very high to preeminent legal ability and exceptional ethical standards as established by confidential opinions from members of the Bar. Mr. Lawrence is a graduate of Georgetown University (B.S., B.A. 1990) and the Villanova University School of Law (J.D. 1993). He is admitted to practice in Pennsylvania and New York; and in the U.S. Courts of Appeals for the 1st, 2nd and 3rd Circuits and the U.S. District Courts for the Eastern and Middle Districts of Pennsylvania and the Eastern and Southern Districts of New York.

### *Barbara J. Hart – President and CEO*

Ms. Hart is the President and Chief Executive Officer of Lowey and Chair of the securities litigation practice. She has over 20 years of experience representing a broad range of clients in complex class action litigation, with a particular emphasis on securities and antitrust litigation. Ms. Hart is AV preeminent rated by Martindale-Hubbell; a multi-year Super Lawyer, and Top Female Lawyers; and was the 2014 Chair of the New York State Bar Association's Antitrust Committee, and is a member of the National Association of Public Pension Attorneys.

Ms. Hart's vast experience in diverse complex matters showcases her array of abilities. She has led complex trials; argued motions; opened; closed; examined witnesses and cross-examined and presented expert witnesses at trial, evidentiary hearings and depositions.  In 2015, Ms. Hart settled a whistleblower representation for a Relator alleging Medicaid fraud recovering $22.4 million in one of New York State's largest single state recoveries.  The prior year, she successfully tried a case for a limited partner in a real estate investment to a full recovery of damages.  *Lassiter v. 1400 5th Commercial, LLC, et al.*, Index No. 652867/2013.

In 2013, the Honorable Colleen McMahon granted final approval to the $219.9 million Madoff Feeder Fund Settlement in *In re Beacon Associates Litigation*, 09 Civ. 0777 (LBS) (AJP) (S.D.N.Y.), and *In re Jeanneret Associates Litigation*, 09-cv-3907 (CM).  Judge McMahon commended Ms. Hart (Lead and Liaison Counsel) on the "unprecedented global settlement" and recognized that Ms. Hart "carried the laboring oar" in the extraordinary recovery of 70% of class members' net losses from Madoff's Ponzi scheme.

Ms. Hart also led the prosecution in *In re Juniper Networks, Inc. Securities Litigation*, recovering $169.5 million.  *In re Juniper Networks, Inc.*, C06-04327, 2010 (N.D. Cal.).  On August 30, 2010, in approving a $169.5 million settlement, the court acknowledged the "excellent result".  The recovery is the third largest of any of the dozens of litigations involving options backdating.

Ms. Hart served as Counsel to the Office of the Treasurer of the State of Connecticut in the *In re Waste Management Securities Litigation*, which settled for $457 million and was then the third-largest securities class action settlement in history.  Ms. Hart also achieved a $285 million class action settlement in *In re El Paso Corp. Securities Litig.*, Civ. No. H-02-2717 (S.D. Tex.) where she was retained to prosecute as Co-Lead Counsel allegations that defendants inflated the prices of El Paso securities by making materially false and misleading SEC filings and public statements which overstated El Paso's proved oil and natural gas reserves by 40%, causing a material overstatement of its income, and falsely attributed its success to legitimate business practices when El Paso manipulated the California Energy market.  The Court commended the efficiency with which the case had been prosecuted, particularly because of the complexity of the allegations and the legal issues.

Ms. Hart has authored and co-authored numerous articles, including "Depositions as a Means of Building Your Trial Narrative," Fundamentals of Taking and Defending Depositions 2015 Course Handbook, 2015.  Also, Ms. Hart co-authored "Conduct Within the Scope Cannot Be Beyond the Reach," New York Law Journal NYSBA Annual Meeting Special Report, January, 26, 2015; "Another Alarm Blasts as the Second Circuit Rejects Class Action Tolling of the Statutes of Repose" NAPPA article, August 2013 Volume 27, Number 3.  Ms. Hart co-authored "Don't Bend 'American Pipe,'" New York Law Journal, November 7, 2012, and numerous other articles identified on our website.

Ms. Hart is a graduate of Vanderbilt University (B.A. 1982), the University of North Carolina (M.A. 1987), and the Fordham University School of Law (J.D. 1992), where she was a member of the Law Review and on the Dean's List.  Ms. Hart is admitted to practice in New York and Connecticut, and is a member of the bars of the U.S. Supreme Court; the U.S. Courts

of Appeals for the 2nd, 3rd, and 7th Circuits; and the U.S. District Courts for the Southern and Eastern Districts of New York.

### *Richard W. Cohen – Chairman*

Mr. Cohen defended and won dismissals for large health insurers of these class actions: *Wurtz v. Rawlings Co., LLC*, No. 12-cv-1182-JMA-AKT, 2016 WL 7174674 (E.D.N.Y. Nov. 17, 2016); *Roche v. Aetna, Inc.*, 165 F. Supp. 3d 180 (D.N.J. 2016); *Mattson v. Aetna Life Ins. Co.*, 124 F. Supp. 3d 381 (D.N.J. 2015), *aff'd* 2016 U.S. App. LEXIS 11428 (3d Cir. N.J., June 23, 2016); *Meek-Horton v. Trover Solutions*, 910 F. Supp. 2d 690 (S.D.N.Y. 2013); *Potts v. Rawlings Co.*, LLC, 897 F. Supp. 2d 185, 2012 (S.D.N.Y. 2012); *Kesselman v. The Rawlings Company, LLC*, 668 F. Supp. 2d 604 (S.D.N.Y. 2009); *Elliot Plaza Pharmacy v. Aetna U.S. Healthcare*, 2009 WL 702837 (N.D. Okla. March 16, 2009); *Main Drug, Inc. v. Aetna U.S. Healthcare*, 475 F.3d 1228 (11th Cir. 2007) (dismissing appeals from *Main Drug, Inc. v. Aetna U.S. Healthcare*, 455 F. Supp. 2d 1323 (M.D. Ala. 2006) and 455 F. Supp. 2d 1317 (M.D. Ala. 2005); and *Medfusion Rx, LLC v. Humana Health Plan, Inc*., Case No. CV-08-PWG-0451-S (N.D. Ala.).   Mr. Cohen is defending the class action *Roche, et al. v. Aetna, Inc., et al.*, Civ. 13-1377 (JHR) (D.N.J.).

Mr. Cohen has lectured at several public pension fund conferences on the circumstances which a public pension fund should weigh in considering whether to serve as a lead plaintiff, an opt-out plaintiff or a passive class member in cases involving the Private Securities Litigation Reform Act ("PSLRA").

Mr. Cohen also represents health insurers in actions to recover amounts overpaid for prescription drugs, medical devices and medical services.  Mr. Cohen argued successfully before the United States Court of Appeals for the Second Circuit to reverse the district court's dismissal of a class action case to recover monies paid by health insurers for a recalled diabetes drug, resulting in a landmark decision protecting the rights of health insurers to sue drug companies to recover overcharges for drugs prescribed to their insureds.  *Desiano v. Warner-Lambert*, 326 F.3d 339 (2d Cir. 2003).  Mr. Cohen prosecuted and argued the Cardizem CD prescription drug class action cases which established that long-standing practices used by drug companies to delay generic competition violate antitrust law. *In re Cardizem CD Antitrust Litigation*, 332 F.3d 896 (6th Cir. 2003) (settlement of $80 million).  Mr. Cohen argued successfully before the U.S. Court of Appeals for the Third Circuit to affirm the allocation to third party payers of the $44.5 million settlement he helped negotiate as class counsel in *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004).

Mr. Cohen has often been a speaker at legal education conferences, including The American Bar Association's Section of Litigation's "Current Issues in Pharmaceutical Litigation Policy" (2008); Blue Cross Blue Shield Association's Annual Lawyers' Conference (2010); The American Conference Institute's "Advanced Forum on Managed Care Disputes and Litigation" (2011, 2012, 2013); and Dealflow Media's "Activist Investor Conference" (2013).  Mr. Cohen was a contributor to the American Bar Association's "State Antitrust Enforcement Handbook."

Mr. Cohen graduated from Georgetown University (A.B. 1977) and the New York University School of Law (J.D. 1980).  Mr. Cohen is admitted to practice in New York and

Pennsylvania, and is a member of the bars of the U.S. Courts of Appeals for the 1st, 2nd, 3rd, 6th and 11th Circuits; and the U.S. District Courts for the Southern and Eastern Districts of New York, the Eastern District of Michigan and the Eastern District of Pennsylvania.

### Peter St. Phillip - Chair of Antitrust Practice

Peter St. Phillip is a partner in the firm and co-head of the firm's antitrust department. He regularly represents institutional clients in large-scale cost recovery litigation. His primary clients include large health insurers, such as CIGNA and Horizon, and hedge funds and other investment companies.

Mr. St. Phillip has extensive appellate experience, stemming from his clerkship with the United States Court of Appeals for the Third Circuit. He has lectured on appellate advocacy and routinely briefs and argues appeals in the federal circuit courts.

Mr. St. Phillip successfully argued Aetna's appeal before the United States Court of Appeals for the First Circuit in *In re Neurontin Mktg. & Sales Practices Litigation*, 712 F.3d 51 (1st Cir. 2013), a landmark civil RICO decision holding drug manufacturers accountable to health insurers for damages attributable to marketing fraud. He appeared prominently in the April 4, 2013 National Law Journal with his quote concerning the decision, "Pfizer Suffers Big Setback in Trio of Appellate Rulings," National Law Journal (Apr. 4, 2013).

Through his appellate practice, Mr. St. Phillip has also helped to secure decisions invalidating agency regulations, *Roussos v. Menifee*, 122 F.3d 159 (3d Cir. 1997), upholding summary judgment, *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896 (6th Cir. 2003), affirming settlements, *In re Cardizem CD Antitrust Litig.,* 391 F.3d 812 (6th Cir. 2004) and reversing dismissals, *In re: Avandia Mktg., Sales Prac. & Prods. Liab. Litig.,* 685 F.3d 353 (3d Cir. 2012), *cert. denied*, 12-690, 2013 WL 1500235 (U.S. Apr. 15, 2013); *Desiano v. Warner-Lambert Co.,* 326 F.3d 339 (2d Cir. 2003).

Mr. St. Phillip has prosecuted many antitrust and cost recovery matters during his career, including trying cases to verdict. He has developed and defended expert economic testimony for successful prosecutions of commodity manipulation and securities claims, prescription drug cases and antitrust matters. He handles day-to-day litigation efforts in several antitrust and pharmaceutical and healthcare engagements. Mr. St. Phillip has extensive expertise in complex litigation concerning medical and pharmaceutical cost recovery claims and pharmacy benefits management. Mr. St. Phillip is a contributing editor to the American Bar Association's Antitrust Class Actions Handbook, and often publishes and speaks on antitrust issues.

Mr. St. Phillip has taken an active role in litigating antitrust issues relative to collusive interbank rate-setting conduct in the financial industry.  He served as a panelist discussing these issues during the 2014 New York City Bar Association Financial Services forum and has been published on the topic:  Competition Policy Cartel International's Cartel Column "No Antitrust Injury in Rate-Setting—What Happened to Effects?" (May 30, 2013).

Mr. St. Phillip has represented hedge funds in insurance coverage and securities litigation. He also regularly represents a publicly-traded bank in defense of claims involving state

and federal lending disclosure and trade practices laws. Mr. St. Phillip graduated with honors from Seton Hall University School of Law (J.D., *cum laude*, 1993) and received a Bachelor of Arts from Trinity College (1990). He is admitted to practice in New York, New Jersey and Pennsylvania, and is a member of the bars of the U.S. Courts of Appeals for the 1st, 2nd, 3rd, 5th, 6th, 8th and 9th Circuits; and the U.S. District Courts for the Southern and Eastern Districts of New York, the District of New Jersey, the Eastern District of Pennsylvania and the District of Connecticut.

### *Uriel Rabinovitz*

Mr. Rabinovitz, an associate at the firm since 2010, regularly represents health insurers in complex litigation, focusing on prosecution of antitrust violations and pharmaceutical overcharges and defense of class actions.

Mr. Rabinovitz briefed Aetna's appeal before the United States Court of Appeals for the First Circuit in *In re Neurontin Mktg. & Sales Practices Litigation,* 712 F.3d 51 (1st Cir. 2013), decision holding drug manufacturers accountable to health insurers for damages attributable to off-label marketing fraud, and *In re Avandia Marketing Sales Practices and Products Liability Litigation,* 685 F.3d 353 (3d Cir. 2012), *cert. denied*, 12-690, 2013 WL 1500235 (U.S. Apr. 15, 2013), a landmark federal appellate decision establishing Medicare Advantage health insurers' private right of action under the Medicare Secondary Payer Act.

Mr. Rabinovitz is prosecuting "pay-for-delay" antitrust claims on behalf of Humana (*In re: Aggrenox Antitrust Litig.,* 14-md-2516 (D. Conn)), Aetna (*In re Wellbutrin XL Antitrust Litig.,* 08-cv-2433 (E.D. Pa.)), and Government Employees Health Association (*In re: Lidoderm Antitrust Litig.,* 14-md-2524 (N.D. Cal.)).  In the *In re Nexium* "pay-for-delay" litigation, Mr. Rabinovitz was part of the Lowey team that won remand on behalf of more than a dozen health insurers in the first District Court decision to consider remand of state antitrust claims following the Supreme Court's landmark decision in *FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013). *Time Ins. Co. v. AstraZeneca AB*, 52 F.Supp. 3d 705 (E.D. Pa. 2014).

Mr. Rabinovitz has also defended and won dismissal of several class action lawsuits against health insurance clients that sought to void health insurance plans' subrogation and reimbursement rights under state's anti-subrogation laws. *Wurtz v. Rawlings Co., LLC*, No. 12-cv-1182-JMA-AKT, 2016 WL 7174674 (E.D.N.Y. Nov. 17, 2016); *Roche v. Aetna, Inc.*, 165 F. Supp. 3d 180 (D.N.J. 2016); *Mattson v. Aetna Life Ins. Co.*, 124 F. Supp. 3d 381 (D.N.J. 2015), *aff'd* 2016 U.S. App. LEXIS 11428 (3d Cir. N.J., June 23, 2016); *Meek-Horton v. Trover Solutions,* 910 F. Supp. 2d 690 (S.D.N.Y. 2013); *Potts v. Rawlings Co.*, LLC, 897 F. Supp. 2d 185, 2012 (S.D.N.Y. 2012)

Mr. Rabinovitz's practice is not limited to health care matters; it covers a wide range of commercial litigation in federal and state courts, including defense of a major regional bakery in an antitrust suit brought by a competitor, defense of a financial investment firm in an age discrimination claim, defense of hedge fund for violation of securities laws, and SEC Whistleblower action, and representation of one of the largest mutual funds in the United States to recover losses related to mortgage-backed securities.

Mr. Rabinovitz has published in the Fordham Law Review: *Toward Effective Implementation of 11 U.S.C. § 522(d)(11)(E): Invigorating A Powerful Bankruptcy Exemption*, 78 Fordham L. Rev. 1521 (2009).

Mr. Rabinovitz is a graduate Yeshiva University (B.A. 2005) and Fordham University School of Law (J.D. 2010), where he served as an Associate Editor of the Fordham Law Review.  Prior to joining the firm, Mr. Rabinovitz served as a Judicial Intern to the Honorable Novalyn L. Winfield, U.S. Bankruptcy Judge for the District of New Jersey.  Mr. Rabinovitz is admitted in New York, New Jersey, the United States Courts of Appeal for the Second and Third Circuits, the U.S. District Courts for the Southern and Eastern Districts of New York, and the District of New Jersey.

### Noelle Ruggiero

Ms. Ruggiero's practice covers a wide variety of litigation matters in federal and state courts, and focuses on litigation involving securities fraud.  On March 15, 2013, the Honorable Colleen McMahon of the United States District Court for the Southern District of New York granted final approval of the $219 million settlement of Madoff feeder-fund litigation encompassing the In re Beacon Assoc. Litig., 09 Civ. 0777 (LBS)(AJP) (S.D.N.Y.) and In re J.P. Jeanneret Assoc. Inc., 09 Civ. 3907 (CM) (AJP) (S.D.N.Y.), in which she assisted in the prosecution.  The settlement covers several additional lawsuits in federal and New York state courts against the Settling Defendants, including suits brought by the United States Secretary of Labor and the New York Attorney General.  Plaintiffs in these cases asserted claims under the federal securities laws, ERISA and state laws arising out of hundreds of millions of investment losses sustained by unions and other investors in Bernard Madoff feeder funds.

Several notable decisions were reached during the course of these litigations, including the March 14, 2012 decision by Judge Sand granting class certification notwithstanding that the Madoff-related feeder funds were not traded in an efficient market and thus were not entitled to a presumption of reliance under the fraud on the market theory.  In re Beacon Associates Litig., 282 F.R.D. 315, 322 (S.D.N.Y. 2012).  This ruling is significant because it bolsters investor protections, most notably in endorsing a line of cases holding that the statute of repose on 10b-5 claims does not begin to run until the last misrepresentation is made by a defendant as part of a continuing fraud.  Thus, this decision held that all plaintiffs' claims, including those claims that go back more than five years, were timely filed.

Ms. Ruggiero graduated the University of Miami (B.B.A. *cum laude* 2007), and St. John's University School of Law (J.D. *magna cum laude* 2010) where she served as a senior staff member on the St. John's Law Review. Ms. Ruggiero is admitted to practice in New York, and in the U.S. District Court for the Southern District of New York.  She is a member of the Westchester Women's Bar Association.

### Laura Mummert

Ms. Mummert has focused her practice in prosecuting complex securities, antitrust, fiduciary and consumer protection class actions.

Ms. Mummert served as part of the teams that prosecuted a number of securities fraud class actions, including *In re General Motors Corp. Securities Litigation*, which settled for $300 million, *In re Oppenheimer Champion Fund Securities Litigation* and *In re Oppenheimer Core Bond Fund Securities Litigation*, both of which settled for a combined $100 million after successfully opposing Defendants' request for dismissal, and *In re Take-Two Interactive Securities Litigation* where investors achieved a $20.1 million settlement. Ms. Mummert also played a significant role in the prosecution of *In re Amgen Inc. Securities Litigation*, which settled for $95 million and resulted in the landmark U.S. Supreme Court decision, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).

In protecting consumers' rights, Ms. Mummert has litigated a variety of cases, including those involving pharmaceutical and nutritional supplement products, rental-car fees, food and beverages, and diesel engines. For instance, Ms. Mummert served as one of the lead attorneys who obtained class certification of a nationwide class against Avis Rent-A-Car Systems, LLC and Budget Rent-A-Car Systems, Inc., for allegedly charging customers a deceptive fee for earning frequent flyer miles in connection with their car rentals, a case which resulted in a $13.7 million recovery for the class. Ms. Mummert also served as lead counsel in a breach of fiduciary duty action against the Board of Pensions for one of the largest Christian denominations in the United States and obtained a full recovery for each of the plaintiffs.

Ms. Mummert also served on the litigation team that prosecuted the data breach action against Target after hackers stole the personal and financial information of up to 110 million Target customers during the height of the 2013 holiday season, and the team that brought the concussive injury case against the National Hockey League for its failure to disclose to its players the long-term risk of neurodegenerative disorders and diseases involved with repeated head traumas that have become inherent to the League.

Ms. Mummert served as co-lead counsel in *In re Aftermarket Automotive Sheet Metal Indirect Purchaser Litigation*, which led to a $9.85 million recovery, and participated on the litigation teams prosecuting several other antitrust class actions, including *In re Disposable Contact Lens Antitrust Litigation*, and *In re Dental Supplies Antitrust Litigation*.

Ms. Mummert received her B.S. in Environmental Resource Management from Penn State University in 1992. She received her J.D. from Penn State Dickinson Law School in 2000. While at Dickinson, Ms. Mummert served as an articles editor for the *Dickinson Law Review*; her student law review note, "Concerned or Just Plain Nosy - The Consequences of Parental Wiretapping under the Federal Wiretap Act in Light of *Pollock v. Pollock*," was published in the December 2000 Law Review.

Ms. Mummert is admitted to practice in Pennsylvania and before the U.S. District Courts for the Eastern District of Pennsylvania, the District of Colorado, and the Eastern District of Wisconsin.

***Jennifer Risener***

Ms. Risener received her LL.M. in European Union Law from Université Paris II Panthéon-Assas (2015). She received her J.D. from Fordham University, School of Law (2015) where she served on the International Law Journal. Ms. Risener received her B.A., cum laude in History and Political Science from Muhlenberg College (2011).

Prior to joining the firm Ms. Risener served as a Judicial Intern to the Honorable Joseph F. Bianco, U.S. District Court Judge for the Eastern District of New York. Ms. Risener has also interned at the Coalition for the International Criminal Court.

Ms. Risener is admitted to practice in New York.