**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>Track 22: *City of Ogdensburg v. Purdue Pharma L.P., et al.*, No. 19-op-45852 | MDL No. 2804<br><br>Case No. 1:17-md-02804-DAP<br><br>Judge Dan Aaron Polster |

# MEMORANDUM IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## TABLE OF CONTENTS


INTRODUCTION ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 5

I. THE COURT LACKS GENERAL JURISDICTION OVER THE MOVING DEFENDANTS. ..... 6

II. THE COURT LACKS SPECIFIC JURISDICTION OVER THE MOVING DEFENDANTS. ..... 6

A. New York's Long-Arm Statute Does Not Authorize Jurisdiction Over the Moving Defendants. ..... 7

B. The Court Lacks Specific Jurisdiction Over the Moving Defendants as a Matter of Due Process. ..... 8

III. PLAINTIFF'S RICO CLAIM DOES NOT CURE THE AMENDED COMPLAINT'S JURISDICTIONAL DEFECTS. ..... 12

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*48th Rest. Assocs. LLC v. Avra Hosp. LLC*,
2022 U.S. Dist. LEXIS 12440 (S.D.N.Y. Jan. 24, 2022) ........................................................3

*Anthony v. Over*,
2023 U.S. Dist. LEXIS 176603 (E.D. Tenn. Sep. 27, 2023) ...........................................12, 14

*Bilek v. Burris*,
2010 U.S. Dist. LEXIS 118721 (E.D. Ky. Nov. 8, 2010).......................................................14

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017)...................................................................................................................5

*Canaday v. Anthem Cos.*,
9 F.4th 392 (6th Cir. 2021) .......................................................................................................14

*Cannella v. Intercontinental Hotels Grp., PLC*,
2023 U.S. Dist. LEXIS 46840 (S.D.N.Y. Mar. 20, 2023) .......................................................2

*Christie v. Hyatt Corp.*,
2024 U.S. Dist. LEXIS 92807 (E.D.N.Y. May 23, 2024)
..............................................................................................................................4, 6, 7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).............................................................................................................4, 6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Court.*,
592 U.S. 351 (2021).............................................................................................................5, 8

*In re Aegean Marine Petroleum Network, Inc.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)...................................................................1, 4, 9

*Miss. ex rel. Fitch, Att'y Gen. v. Eli Lilly & Co.*,
Case No. 3:21–CV–674–KHJ–MTP (S.D. Miss. Aug. 15, 2022), Dkt. 112 ............................3

*Nat'l Union Fire Ins. Co. of Pitt., Pa. v. UPS Supply Chain Sols., Inc.*,
74 F.4th 66 (2d Cir. 2023) .........................................................................................................7

*Plusgrade L.P. v. Endava Inc.*,
2023 U.S. Dist. LEXIS 39114 (S.D.N.Y. Mar. 8, 2023)
..............................................................................................................................1, 4, 9

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014)......................................................................................................4

*United States v. Botefuhr*,
309 F.3d 1263 (10th Cir. 2002) ....................15

*Walden v. Fiore*,
571 U.S. 277 (2014).................... passim

*World Depot Corp. v. Onofri*,
2017 U.S. Dist. LEXIS 198814 (D. Mass. Dec. 4, 2017) ....................12

**STATE CASES**

*Williams v. Beemiller, Inc.*,
130 N.E.3d 833 (N.Y. 2019)....................8, 9

**RULES**

N.Y. C.P.L.R. § 302....................5, 7

Rule 12(b)(2)....................4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XIV ....................8

## INTRODUCTION

Defendants OptumInsight, Inc. and OptumInsight Life Sciences, Inc.[1] (together, the **Moving Defendants**[2]) move to dismiss Plaintiff the City of Ogdensburg's (**Plaintiff or the City**) amended complaint (Dkt. 5913–1) for lack of personal jurisdiction. Throughout the amended complaint, Plaintiff refers to OptumInsight, Inc. and OptumInsight Life Sciences, Inc. together as "OptumInsight" (*e.g.*, Ogdensburg Am. Compl. ¶ 157) without pleading which entity allegedly did what. That kind of group pleading isn't enough; the law requires Plaintiff to allege facts showing that *each* defendant has the required suit-related contacts with the forum. *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant."); *Plusgrade L.P. v. Endava Inc.*, No. 1:21-cv-1530 (MKV), 2023 U.S. Dist. LEXIS 39114, at *8, *11 (S.D.N.Y. Mar. 8, 2023) (granting Defendants' motion to dismiss and finding that "group pleading precludes a proper analysis of the personal jurisdiction" issues and "[t]he Court simply cannot assess the jurisdictional argument based on such a non-particularized allegation, and Plaintiff has failed to make an adequate *prima facie* showing of personal jurisdiction with respect to each defendant"). Plaintiff doesn't even try to meet that standard.

---

[1] OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are both incorporated in Delaware. OptumInsight, Inc. has its principal place of business in Minnesota. OptumInsight Life Sciences, Inc. has its principal place of business in Massachusetts.

[2] Plaintiff has asserted claims against UnitedHealth Group Incorporated (UHG), Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. (collectively, the "UHG/Optum Family Defendants"). On April 30, 2025, Plaintiff dismissed UnitedHealth Group Incorporated (UHG), Optum, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. by stipulation.

Plaintiff mentions OptumInsight, Inc. only a few times in the 300-page amended complaint and then only to allege facts about its citizenship and certain business registrations and licenses. Ogdensburg Am. Compl. at p. 1, ¶¶ 153–55, 157, 162, 187. While Plaintiff alleges that an OptumInsight, Inc. predecessor changed its name after an alleged reimbursement rate scheme yielded a settlement with New York (*id.* ¶ 153), Plaintiff does not tie that settlement to the claims in this case.

Likewise, Plaintiff mentions OptumInsight Life Sciences, Inc. only a few times and then only to allege facts about its corporate citizenship. *Id.* at p. 1, ¶¶ 156–57, 187. Plaintiff presses *one* substantive allegation about OptumInsight Life Sciences, Inc., but the allegation has nothing to do with New York. *Id.* ¶ 418 ("In a 2013 email, an OptumInsight Life Sciences consultant forwarded an article to opioid manufacturer Endo indicating that CVS was cutting opioid access for 'risky' prescribers. . . .").

Even if the Court credited Plaintiff's group allegations about "OptumInsight" (and it should not), Plaintiff does not allege that "OptumInsight" had *any* suit-related contacts with New York, let alone suit-related contacts that create a substantial connection with the state. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."). Plaintiff's conclusory allegation that "OptumInsight's" (undifferentiated) alleged conduct "expand[ed] [opioid] use and availability throughout the country, including" in New York (Ogdensburg Am. Compl. ¶ 159) does not count in the jurisdictional calculus. *See Cannella v. Intercontinental Hotels Grp.,* 2023 U.S. Dist. LEXIS 46840, at *7 (S.D.N.Y. Mar. 20, 2023) (plaintiff's "conclusory non-fact-specific jurisdictional allegations" were insufficient to establish a prima facie case of personal jurisdiction) (citing *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d

181, 185–86 (2d Cir. 1998)); Order granting Mot. to Dismiss, *Miss. ex rel. Fitch, Att'y Gen. v. Eli Lilly & Co.*, Case No. 3:21–CV–674–KHJ–MTP (S.D. Miss. Aug. 15, 2022), Dkt. 112 at *8–9 ("The State fails to provide facts that any of the alleged 'coordination' or 'advising' took place in Mississippi, that OptumInsight conducted business in Mississippi that was '"continuing and substantial,' or that it tried to 'realize a pecuniary benefit' or 'otherwise accomplish an object' in Mississippi."). It certainly does not qualify as an allegation establishing suit-related conduct creating a substantial connection with the State. The only allegations that mention New York in the same breath as "OptumInsight" have nothing to do with this litigation.

Plaintiff tries to mask the absence of specific allegations about the Moving Defendants by shoehorning them (among others) into other labels like "Optum," "Defendants," "the Optum Defendants," and "the PBM Defendants." *E.g.*, Ogdensburg Am. Compl. at p. 1. Plaintiff sues "Optum . . . in its capacities as a: (1) PBM; (2) data, analytics, consulting, and research provider; and (3) mail-order pharmacy." *Id.* ¶ 188. But OptumRx, Inc. is the *only* Optum Defendant that is a "PBM" and "mail-order pharmacy." OptumInsight, Inc. and OptumInsight Life Sciences, Inc., are not PBMs or mail-order pharmacies, and Plaintiff does not allege otherwise. The law requires Plaintiff to allege specific *facts* showing that *each* defendant has the required suit-related contacts creating a substantial connection with the forum (*Walden*, 571 U.S. at 284); Plaintiff cannot just lump them all together. Plaintiff's one-for-all allegations do not support jurisdiction over the Moving Defendants.

**LEGAL STANDARD**

Under the Due Process clause and New York law, there are two types of personal jurisdiction: general and specific. Plaintiff bears the burden of establishing that the Court has personal jurisdiction over each defendant. *See 48th Rest. Assocs. LLC v. Avra Hosp. LLC*, 2022

U.S. Dist. LEXIS 12440, at *5 (S.D.N.Y. Jan. 24, 2022) ("A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.") (internal citations omitted). Accordingly, *each* defendant's contacts with the forum must be assessed individually. *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d at 135; *Plusgrade L.P.*, 2023 U.S. Dist. LEXIS 39114, at *8, *11.

General jurisdiction exists only if a business's contacts are so pervasive that it can be "fairly regarded as at home" in the state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (general jurisdiction attaches under New York law only if a defendant "has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted") (cleaned up).

Specific personal jurisdiction exists over a defendant only if New York's long-arm statute authorizes jurisdiction and exercising jurisdiction over the defendant comports with federal due process. *See Christie v. Hyatt Corp.*, 2024 U.S. Dist. LEXIS 92807, at *3 (E.D.N.Y. May 23, 2024). To satisfy New York's long-arm statute, Plaintiff must show that its cause of action arises from a defendant's: "(1) transact[ing] any business within the state or contract[ing] anywhere to supply goods or services in the state;" "(2) commit[ing] a tortious act within the state"; "(3) commit[ing] a tortious act [outside] the state causing injury to person or property within the state . . . if [they] (i) regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expect[] or should reasonably expect the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce;" or "(4) own[ing], us[ing]

or possess[ing] any real property situated within the state." N.Y. C.P.L.R. § 302(a)(1). Federal due process permits courts to exercise jurisdiction over a defendant only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court.*, 592 U.S. 351, 357 (2021). The alleged contacts with the forum state must have been the defendant's own choice and not "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286. The factual allegations must establish that the defendant purposefully "reach[ed] out beyond" its home state and into another forum (*id.* at 285) and that the plaintiff's claims "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (emphasis omitted).

## ARGUMENT

Plaintiff does not allege that OptumInsight, Inc. or OptumInsight Life Sciences, Inc. is at home in New York or otherwise subject to general jurisdiction in the State. Nor has Plaintiff alleged facts establishing that this Court has specific jurisdiction over the Moving Defendants under either New York's long-arm statute or the Due Process Clause. Nor does Plaintiff's alternative theory—that the Court may exercise RICO jurisdiction over the Moving Defendants and pendent jurisdiction over the City's state-law claims—cure those jurisdictional defects. The Court lacks RICO jurisdiction over the Moving Defendants because there are no factual allegations tying the Moving Defendants to the alleged RICO enterprise. Without allegations establishing that the Moving Defendants have suit-related contacts creating a substantial connection with New York or are subject to RICO jurisdiction, this Court should dismiss the claims against them for lack of personal jurisdiction.

## I. THE COURT LACKS GENERAL JURISDICTION OVER THE MOVING DEFENDANTS.

General jurisdiction attaches only if a business "is fairly regarded as at home" in a state. *Daimler*, 571 U.S. at 137. In most cases, a company's "place of incorporation and principal place of business" are the only things that satisfy that requirement. *Id.*

Plaintiff alleges that OptumInsight, Inc. and OptumInsight Life Sciences[3] are organized under Delaware law with their principal places of business in Minnesota. Ogdensburg Am. Compl. ¶¶ 153, 156. By Plaintiff's own allegations, the Moving Defendants are not at home in New York.

Nor does the Amended Complaint contain factual allegations that would make this the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19. Plaintiff offers no allegations that OptumInsight, Inc.'s or OptumInsight Life Sciences, Inc.'s activities constitute substantial or continuous and systematic contacts that approximate a physical presence in New York. Inasmuch as Plaintiff suggests that either entity consented to general jurisdiction in New York by registering to do business there, the argument is meritless. *Christie,* 2024 U.S. Dist. LEXIS 92807, at *10 n.5 ("[U]nder current New York law, a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process under BCL § 1301(a).").

## II. THE COURT LACKS SPECIFIC JURISDICTION OVER THE MOVING DEFENDANTS.

The Court's specific jurisdiction analysis must begin with New York's long-arm statute. *Christie*, 2024 U.S. Dist. LEXIS 92807, at *3. And here, the Court's analysis can end there because

[3] Although not relevant to this motion, OptumInsight Life Sciences Inc.'s principal place of business is in Massachusetts, not Minnesota.

Plaintiff has not alleged that OptumInsight, Inc. and OptumInsight Life Sciences, Inc. directed any activities towards New York, let alone activities enumerated in the State's long-arm statute. And even if the City could identify a provision in the long-arm statute that covers the companies' alleged conduct (and it cannot), Plaintiff still has not shown that the Court can exercise jurisdiction over the Moving Defendants as a matter of due process.

### A. New York's Long-Arm Statute Does Not Authorize Jurisdiction Over the Moving Defendants.

Plaintiff does not allege facts showing that OptumInsight, Inc. and OptumInsight Life Sciences, Inc. were involved in activities that are subject to New York's long-arm statute. Plaintiff does not even try to allege that its claims arise from the Moving Defendants' (1) transacting business in New York or contracting to supply services in the State (N.Y. C.P.L.R. § 302(a)(1)), (2) committing a tortious act in New York (*id.* § 302(a)(2)), or (3) owning, using, or possessing any real property in New York (*id.* § 302(a)(4)). If Plaintiff tries to argue that the Moving Defendants are subject to the long-arm statute because they committed a tortious out-of-state act that caused in-state injury (*id.* § 302(a)(3)), Plaintiff's allegations fall short.

Under, N.Y. C.P.L.R section 302(a)(3), Plaintiff was required to show that "(1) [t]he [plaintiff stated a colorable claim that the] defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; and (5) the defendant derives substantial revenue from interstate or international commerce." *Nat'l Union Fire Ins. Co. of Pitt., Pa. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 72 (2d Cir. 2023). As explained in the allegation-by-allegation review in Section II.B., Plaintiff has not alleged facts supporting those elements.

*First*, Plaintiff has not stated a colorable claim that either OptumInsight, Inc. or

OptumInsight Life Sciences, Inc. committed a tortious act outside the State. Plaintiff's allegations focus on "OptumInsight's" (undifferentiated) supposed work providing research, data, consulting, and marketing services to certain opioid manufacturers. Ogdensburg Am. Compl. ¶¶ 30, 159, 197–200, 340–42, 354–62, 364–69, 398, 418. There is nothing tortious about providing research, data, consulting, or marketing.

*Second*, most of Plaintiff's allegations about those entities are not tied to New York. The few allegations that mention New York have nothing to do with this litigation. As explained below, for example, Plaintiff alleges that OptumInsight, Inc. is registered to do business in New York and holds certain licenses with a New York department. Ogdensburg Am. Compl. ¶¶ 154, 155. The City also alleges that an OptumInsight, Inc. predecessor changed its name after an alleged reimbursement rate scheme yielded a settlement with New York. *Id.* ¶ 153. But at no point does Plaintiff explain how those allegations are relevant to its claims or liability theories.

Because Plaintiff cannot establish personal jurisdiction over the Moving Defendants under New York's long-arm statute, the analysis ends and the Moving Defendants should be dismissed. *Williams v. Beemiller, Inc.*, 130 N.E.3d 833, 835–37 (N.Y. 2019).

**B. The Court Lacks Specific Jurisdiction Over the Moving Defendants as a Matter of Due Process.**

The Court also lacks specific personal jurisdiction over the Moving Defendants under the Due Process Clause of the U.S. Constitution. Specific jurisdiction under the Due Process Clause exists only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *see also Ford Motor Co.*, 592 U.S. at 357. The U.S. Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. "The proper question is not where the plaintiff experienced a

particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

Plaintiff has not come close to alleging that the Moving Defendants engaged in "suit-related conduct . . . creat[ing] a substantial connection with" New York. *Walden*, 571 U.S. at 284. Further, there are no factual allegations establishing that that the Moving Defendants engaged in suit-related conduct by which they "purposefully avail[ed] [them]sel[ves] of the privilege of conducting activities within" the State. *Williams*, 130 N.E.3d at 836.

**The opening paragraph and Ogdensburg Amended Complaint paragraphs 157 and 187.** In those paragraphs, Plaintiff merely lists the defendants and then improperly group them together. For example, the opening paragraph defines "Optum" to include *ten* different entities, and "Defendants" and "the PBM Defendants" to include *eighteen* different entities. At paragraph 157, Plaintiff lumps OptumInsight, Inc. and OptumInsight Life Sciences, Inc. together as "OptumInsight." At paragraph 187, Plaintiff lumps eight entities together, including "OptumInsight," as "Optum"—an especially confusing group allegation given that the opening paragraph defines "Optum" to include ten entities. That disconnect demonstrates that even Plaintiff cannot track which entities it claims did what.

Group pleading defines Plaintiff's amended complaint. Plaintiff's one-for-all allegations only muddy the waters and demonstrate that it cannot establish jurisdiction over each defendant individually—as it is required to do. *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d at 135; *Plusgrade L.P.*, 2023 U.S. Dist. LEXIS 39114, at *8, *11.

**Ogdensburg Amended Complaint paragraphs 153–56, 158, and 162.** In those paragraphs, Plaintiff provides general background about OptumInsight, Inc. and OptumInsight Life Sciences, Inc., including where they are citizens and certain licenses or registrations that they

hold. Most of these allegations have nothing to do with New York. And those that do don't move the needle. For example, Plaintiff alleges merely that OptumInsight, Inc. is registered to do business in New York. Ogdensburg Am. Compl. ¶ 154. However, allegations about where a company is registered to do business cannot establish specific jurisdiction because Plaintiff offers no factual allegations showing that an alleged New York registration has anything to do with this case, never mind that it constitutes suit-related conduct creating a substantial connection with the State. *See Walden*, 571 U.S. at 284. Plaintiff similarly alleges that OptumInsight, Inc. holds certain licenses with the New York Department of Finance but fails to tie those licenses to this case. Ogdensburg Am. Compl. ¶¶ 155, 162.

Plaintiff's other New York allegation does not change the outcome. In paragraph 153, Plaintiff alleges that an OptumInsight Inc. predecessor changed its name after an alleged reimbursement rate scheme yielded a settlement with New York State. But Plaintiff has failed to allege facts establishing that their claims arise out of or relate to this alleged conduct. *See Walden*, 571 U.S. at 284.

**Ogdensburg Amended Complaint paragraphs 30, 159, 197–200, 340–42, 354–57, 359–69, and 418**. Plaintiff alleges that "OptumInsight" (undifferentiated) worked with opioid manufacturers to "convince patients, prescribers, payors and the public that long term opioid use was appropriate for the treatment of chronic pain and that opioids were not addictive." Ogdensburg Am. Compl. ¶ 198. "OptumInsight" (undifferentiated) allegedly met with manufacturers like Purdue and created programs to "re-educate" physicians on using opioids to treat certain types of pain, which allegedly yielded "teleconferences, newsletters, faxes, live meetings, case study monographs, letters, and website and web-based programming directly to physicians." *Id.* ¶ 342. "OptumInsight" (undifferentiated) also allegedly "helped Purdue generate clinical studies,

educational materials, and marketing programs to downplay the addictive properties of OxyContin." *Id.* ¶ 354. Plaintiff also alleges that an "OptumInsight Life Sciences consultant forwarded an article to opioid manufacturer Endo indicating that CVS was cutting opioid access for 'risky' prescribers and that OptumInsight could do the same." *Id.* ¶ 418.

As a threshold matter, only one of those allegations even mentions New York, and then only to say that "OptumInsight" (undifferentiated) allegedly engaged in conduct which "expanded [opioid] use and availability throughout the country, including" in New York. *Id.* ¶ 159. Conclusory allegations like that do not establish that "OptumInsight" (undifferentiated) "purposefully reached out beyond" its home and into New York, much less that any supposed contacts created a substantial connection with the State. *Walden*, 571 U.S. at 284-85. On the contrary, the *same* allegation about "OptumInsight" (undifferentiated) appears in complaints filed not only in New York (Ogdensburg and Rochester Am. Compls., Dkt. 5296-2) but also in Missouri (Lincoln County, Dkt. 5296-3 and City of Independence Am. Compls., Dkt. 5296-4) and in Texas (Webb County Am. Compl., Dkt. 5296-5).

* * * * *

The Amended Complaint fails to establish specific jurisdiction over the Moving Defendants because every allegation about them is either untethered to New York, untethered to the claims in this case, or both. Plaintiff does not allege that the Moving Defendants satisfy New York's long-arm statute or that they engaged in any suit-related conduct creating a "substantial connection" with the State. *Walden*, 571 U.S. at 284. Indeed, for nearly every allegation discussed above, Plaintiff fails to allege *any* connection to New York. That is fatal in the jurisdictional analysis.

## III. PLAINTIFF'S RICO CLAIM DOES NOT CURE THE AMENDED COMPLAINT'S JURISDICTIONAL DEFECTS.

Recognizing these jurisdictional problems, Plaintiff alleges that "in the alternative, the Court has personal jurisdiction over all Defendants under 18 U.S.C. § 1965(b) as to Plaintiff's RICO claims and pendant [sic] personal jurisdiction over all Defendants as to Plaintiff's other claims, all of which arise out of a common nucleus of operative facts." Ogdensburg Am. Compl. ¶ 95.

To meet its burden under that "alternative" RICO-jurisdiction theory, Plaintiff must show that "'the ends of justice' require an exercise of personal jurisdiction." *Anthony v. Over*, 2023 U.S. Dist. LEXIS 176603, at *10 (E.D. Tenn. Sep. 27, 2023). "An inadequately pleaded RICO claim against an out-of-district Defendant cannot support a finding that the 'ends of justice' require exercising personal jurisdiction." *Id.* at *16. Here, Plaintiff's RICO allegations are inadequate to justify the exercise of jurisdiction over OptumInsight, Inc. and OptumInsight Life Sciences, Inc. As one federal court has warned, "[b]ecause of the broad jurisdictional reach of the RICO statute, the courts should be particularly vigilant not to permit a plaintiff to assert a spurious RICO claim in order to try to obtain personal jurisdiction over other defendants . . . ." *World Depot Corp. v. Onofri*, No. 16-12439, 2017 U.S. Dist. LEXIS 198814, at *14–15 (D. Mass. Dec. 4, 2017). That describes this case perfectly. Plaintiff's RICO claim against the Moving Defendants is not merely "spurious," it is nonexistent.

According to Plaintiff, "Defendants" (undifferentiated) participated in a "Formulary & UM [RICO] Enterprise" through "discussions of formulary placement, prior authorization limits, step edits, preferred formulary status and their impact on opioid prescribing and dispensing and, relatedly, rebates and other fees" with drug manufacturers. Ogdensburg Am. Compl. ¶ 676. Plaintiff alleges the conduct of the Formulary & UM Enterprise to include negotiating and

contracting for rebates from opioid manufacturers, giving those manufacturers' products favorable placement on standard formularies, foregoing utilization management controls limiting how opioids are used by plan members, and dispensing opioids through mail-order pharmacies without investigating potentially fraudulent claims. *See* Ogdensburg Am. Compl. ¶ 636. Plaintiff alleges that the racketeering activity includes communicating about formulary placement and preferred formulary status, rebates, and utilization management by U.S. Mail and interstate wire (*see id.* ¶¶ 676–80) and violating the controlled substances act through their mail order pharmacies. *See Id.* ¶ 688.

Although Plaintiff seeks to assert a RICO claim against all Defendants, Plaintiff does not allege that the Moving Defendants "dispensed massive amounts of . . . opioids without performing the requisite due diligence" (*Id.* ¶ 670), offered opioid manufacturers "preferred formulary placement" (*Id.* ¶ 677), received "rebates and [administrative] fees" from manufacturers (*Id.* ¶ 679), or provided unfettered formulary access without meaningful UM measures on their standard formulary offerings. *Id.* ¶ 809. Of the UHG/Optum Family Defendants, only OptumRx negotiated rebates, developed formulary offerings, and operated a mail-order pharmacy. Other than grouping all defendants together under a single "PBM Defendant" label and alleging that the "PBM Defendants formed . . . the Formulary & UM Enterprise," there is no connection between the Moving Defendants and the alleged RICO enterprise.

But grouping Defendants together under a single label does not establish RICO jurisdiction over each of them individually. To hold otherwise would jettison due process and the limits on this Court's exercise of jurisdiction. Because Plaintiff fails to allege any facts showing that the Moving Defendants were members in the alleged "Formulary & UM Enterprise" or participated in the conduct and pattern of racketeering activity underlying the purported RICO claim, Plaintiff cannot

invoke RICO's personal jurisdiction provision. *See Anthony*, 2023 U.S. Dist. LEXIS 176603, at *14–15 ("[I]n the entirety of their 191 page Amended Complaint, Plaintiffs never specifically allege any single act of racketeering engaged in by [Defendant]" so "it is difficult to understand . . . how exercising personal jurisdiction over Defendant [] under the RICO SOP is required by the 'ends of justice.'").

Nor can pendent jurisdiction save Plaintiff's state-law claims. As a threshold matter, the Sixth Circuit has not authorized the exercise of pendent personal jurisdiction. *Canaday v. Anthem Cos.*, 9 F.4th 392, 401 (6th Cir. 2021) ("[O]ur court has never recognized this exception to these due-process limitations" and "[w]e see no good reason to do so now."). As the Sixth Circuit explained in *Canaday*, "no federal statute or rule authorizes pendent . . . claim personal jurisdiction"—*i.e.*, the doctrine that "a court's exercise of personal jurisdiction over one defendant as to one claim allows it to exercise personal jurisdiction with respect to related claims that it could not adjudicate in the anchor claim's absence." *Id.* at 402. Indeed, "[n]o such law exists—not in 28 U.S.C. § 1367, the supplemental jurisdiction statute, not in the Federal Rules of Civil Procedure." *Id.*; *see Bilek v. Burris*, No. 3:10-13-DCR, 2010 U.S. Dist. LEXIS 118721, at *18 (E.D. Ky. Nov. 8, 2010) (noting that the Sixth Circuit has never adopted the doctrine of pendent personal jurisdiction); *see also Anthony*, 2023 U.S. Dist. LEXIS 176603, at *17.

Even if the Sixth Circuit had authorized pendent claim personal jurisdiction, that would not save Plaintiff's state law claims. Where authorized, a district court has discretion to exercise pendent claim personal jurisdiction over a claim for which it otherwise lacks personal jurisdiction only when that claim "arises out of the same nucleus of operative fact" with the federal anchor claim. *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). Here, pendent jurisdiction cannot attach because Plaintiff's RICO claim rests on entirely different alleged facts than its state-

law claims against Moving Defendants. For instance, Plaintiff alleges that the RICO enterprise arises from alleged negotiations between PBMs and drug manufacturers for rebates and favorable formulary placement, as well as the dispensing of opioids. *See, e.g.*, Ogdensburg Am. Compl. ¶ 676. As for OptumInsight, Inc. and OptumInsight Life Sciences, Inc., Plaintiff alleges that they contributed to the flow of opioids into the City allegedly by performing studies, research, or data analysis for opioid manufacturers. *Id.* ¶¶ 189, 340–43, 355–70. By Plaintiff's own allegations, those services are not part of the alleged "Formulary & UM enterprise."

In sum, the RICO claim against Moving Defendants rests on entirely separate—not common—factual allegations. Pendent claim personal jurisdiction therefore does not apply.

## CONCLUSION

The Court should dismiss Plaintiff's amended complaint against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. for lack of personal jurisdiction.

Respectfully submitted this 30th day of April, 2025.

*/s/ Brian D. Boone*
Brian D. Boone
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com

Andrew Hatchett
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Suite 4900
Atlanta, GA 30309
T: (404) 881-7000
andrew.hatchett@alston.com

*Attorneys for OptumInsight, Inc. and OptumInsight Life Sciences, Inc.*