UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | MDL No. 2804 |
| | ) | Case No. 17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) | |
| ALL HEALTH CARE ACTIONS | ) ) | Judge Dan Aaron Polster |

**PROPOSED SCOPE AND TIMING OF HEALTH CARE ACTION LITIGATION TRACK AND CONTENTS OF A CASE MANAGEMENT ORDER**

The undersigned counsel represent, among others, a significant number of hospitals and other health care provider plaintiffs ("Health Care Entities") in actions brought both in state and federal courts ("Health Care Actions"). In response to the Court's direction to submit to the Special Master suggestions regarding the appropriate scope and timing of a litigation track and the contents of a case management order, (Doc. 170), the undersigned submit the following:

1. As of March 14, 2018, the Joint Panel for Multidistrict Litigation has transferred over 400 actions to this Court for coordinated or consolidated pretrial proceedings. (Conditional Transfer Order #14 (Doc. 177)). Other related cases are pending in state and federal courts throughout the United States. These cases can be separated into three general categories: (1) Health Care Actions; (2) Native American Tribal Actions; and (3) Municipal Actions;

2. The undersigned are named counsel in the Health Care Actions listed on Exhibit "A" attached hereto.

3.      The Health Care Actions are distinct from the other two categories of cases, both procedurally and substantively.  Those distinctions include, among others, the following:

**Nature of Health Care Action's Damages and Litigation Issues[1]**

- Each of the Health Care Entities involved in the Health Care Actions is unique. They are located in different geographic areas. They include non-profit, for profit, and public entities. They are both large networks and single site entities. They include hospitals, treatment centers, research institutions, teaching centers and rural providers.

- Treatment centers and hospital emergency departments are the frontline of response to the opioid crisis. They not only serve as the primary healthcare facility for first responders in opioid-related overdoses, but also provide primary medical treatment for persons lacking insurance or primary care physicians.  They incur directly the cost associated with the treatment of those affected by this crisis.

- The opioid epidemic taxes the resources of the Health Care Entities which frequently provide unreimbursed and under-reimbursed care to those affected.

- The problem is expanding rapidly and substantially.  A March, 2018 CDC report found an increase in ER visits of over 30% in the last year alone related to the opioid issue.  In-patient care costs rose from $700 million in 2002 to $15 *billion* in 2012.

---

[1] The Health Care Entities party to this filing have been provided no information from the Plaintiffs' Executive Committee related to the Committee's anticipated response to the Court's Order (Doc. 170).  The Health Care Entities' party to this filing reserve the right to modify the suggestions offered in this proposal based on information that might be later provided by the Executive Committee.

- Those treated in hospitals are frequently referred to outpatient treatment facilities for the longer term care required by their dependence.  This care frequently is not fully reimbursed.

### Discovery Issues Specific to Health Care Actions

- Because of the distinct nature of their claims and, specifically, their distinct damages, the Health Care Entities should be provided a separate discovery track.  Discovery is needed to obtain studies, data, reports, analyses and other information relating to the cost of treatment—both short and long term.

- Health Care Action discovery is needed on state-by-state Medicaid reimbursement rates for opioid-related healthcare treatment.  This cost analysis should include both direct treatment costs and those related to co-morbidities associated with the opioid crisis.

- Discovery into lobbying materials created or used by the defendants with respect to the Joint Commission or other hospital accreditation organizations—particularly with respect to patient satisfaction related to pain management—is needed.  Similarly, discovery is necessary related to marketing materials created or distributed by defendants or their agents with respect to health care providers, including paid appearances or endorsements designed to induce healthcare providers to prescribe opioids.  This discovery is unique to the Health Care Actions and goes to misrepresentations made to Health Care Entities upon which they relied.

- Materials from previous litigation and data on how the $1 billion in opioid-related settlement monies and fines previously paid and allocated will need to be discovered.

- Other categories of discovery may overlap with other categories of cases. For instance, 30(b)(6) depositions must be taken related to the science and effects of opioids, including when such information was known to defendants. County-by-county (or by zip code if available) opioid distribution data showing where opioid diversion and distribution has been the highest will need to be obtained.

4. For the reasons set forth herein, the contemplated Case Management Order should allow for Health Care Action-specific discovery, should contemplate the designation of Health Care Action-specific test cases, and should not prioritize any aspect of discovery in favor of the Municipal Cases. The Health Care Action plaintiffs represented by the undersigned want to ensure that litigation recoveries will fund not only damages for past care, but also future treatment. These plaintiffs are mindful that only 3% of tobacco-related litigation settlement funding has gone to healthcare treatment and disease prevention. Accordingly, the CMO should be drafted to ensure that Health Care Entities are afforded meaningful participation in the litigation and any resolution negotiations to ensure that both past and future relief is actually implemented. Because hospital emergency departments and treating centers tend to be the healthcare choice of those lacking insurance or without primary care physicians, plaintiffs in the Health Care Actions want to ensure that they have the necessary resources and funding to continue to serve on the frontlines of the opioid crisis;

5. Both the litigation and settlement tracks need to recognize the distinct nature of the Health Care Entities' claims, and afford for meaningful participation by those entities. Any

CMO should recognize these claims should not be treated the same as the other categories of cases on a class-wide basis. [2]Additionally, spots should be set aside on any steering and negotiation committees for: (i) large hospital networks; (ii) research and teaching facilities; (iii) individual hospital entities with geographic diversity; (iv) not-for-profit hospital organizations, (v) publically-funded hospitals; and (vi) treatment centers, both for profit and not for profit.

6.      With respect to the specifics and timing of the selection of bellwether cases, discovery, expert witness disclosures, and trial dates, the Health Care Entities propose separate, parallel processes—as outlined herein—to proceed on similar, but parallel timetables with the other categories of cases in this MDL. A CMO requiring, for example, expert disclosures for all categories of cases on the same date, but simultaneously allowing for separate disclosures for each category, would not only afford the Health Care Entities the protections requested herein, but would respect judicial economy and efficient administration of the MDL at large.

Dated this 16th day of March, 2018.

*/s/ J. Nixon* Daniel, III
J. Nixon Daniel, III
Mary Jane Bass
John R. Zoesch III
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL  32502
(850) 432-2451
jnd@beggslane.com
mjb@beggslane.com
jrz@beggslane.com

---

[2]The Health Care Entities party to filing reserve the right to challenge the viability of health care claims for class treatment and further reserve the right to challenge the adequacy of the class representatives and class action pending in this MDL related to hospital claims. See *Southern Mississippi Regional Medical Center, et al. v. Amerisourcebergen Drug Corp., et al.*  Case No. 5:17-cv-00145-KS-MTP, USDA, Southern District of Mississippi.

                      T. Roe Frazer II
                      Patrick D. McMurtray
                      T. R. Frazer III
                      FRAZER PLC
                      1 Burton Hills Blvd., Suite 215
                      Nashville, TN  37215
                      (615) 647-6464
                      roe@frazer.law
                      Patrick@frazer.law
                      trey@frazer.law


                      Frederick T. Kuykendall, III
                      THE KUYKENDALL GROUP
                      2013 1st Avenue North, Suite 450
                      Birmingham, Alabama  35203
                      (205) 252-6127
                      ftk@thekuykendallgroup.com

**EXHIBIT "A"**

*Consolidated Tribal Health v. McKesson Corp., et al*
Superior Court of California, San Francisco, Case No. CGC-18-564743

*Apollo MD Business Services, LLC v. Attain Med, Inc., et al*
State Court of Fulton Country, Georgia, Case No. 18-EV-001062

*Baptist Hospital, Inc., Jay Hospital, Inc. v. McKesson Corp. et al*
U.S. District Court for the Northern District of Ohio, Case No. 1:18-op-45073

*Center Point, Inc. v. McKesson Corp. et al*
Superior Court of California, San Francisco, Case No. CGC-18-564833

*El Campo Memorial Hospital v. McKesson Corp. et al*
U.S. District Court, Southern District of Texas, Houston Division, Case No. 4:1:8-cv-0751

*Rush Health Systems, Inc. v. McKesson Corp. et al*
U.S. District Court, Southern District of Mississippi, Northern Division, Case No. 3:17-cv-1012

*J. Paul Jones v. McKesson Corp. et al*
U.S. District Court, Southern District of Alabama, Selma Division, Case No. 2:18-cv-29