IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL CASES | MDL NO. 2804<br><br>Case No. 17-md-02804<br><br>HON. DAN A. POLSTER |

**WEST BOCA MEDICAL CENTER INC.'S RESPONSE TO MOTION FOR MODIFICATION OF CASE MANAGEMENT ORDER ONE FILED BY BAPTIST HOSPITAL, INC.**

Plaintiff West Boca Medical Center Inc., through its undersigned counsel hereby responds to Baptist Hospital Inc.'s Motion for Modification of Case Management Order One ("Modification Motion," Dkt. No. 405) and states:

**I.      Introduction**

Baptist Hospital, Inc.'s Modification Motion argues that (1) the Hospital Representative of the Hospitals on the Plaintiffs' Executive Committee ("PEC") failed to follow the Court's Order in selecting West Boca Medical Center as the hospital bellwether plaintiff, and (2) that the Hospital Representative has an "irreconcilable conflict of interest" and cannot serve as the hospitals' representative.[1]  Both arguments fail because (1) Case Management Order ("CMO") One was properly followed and West Boca is an appropriate bellwether choice, and (2) Mr. Barrett has no conflict of interest in representing hospitals.[2]

---

[1] Several other hospitals represented by Baptist's counsel have joined in Baptist's Modification Motion.

[2] It should be noted that Baptist Hospital Inc.'s Modification Motion violates Section 6.g. of Case Management Order One ("CMO One") which states: "No party may file any motion not expressly

1

**II. Case Management Order One was Properly Followed in Filing and Designating West Boca as the Hospital Bellwether Plaintiff.**

Baptist Hospital, Inc. ("Baptist") argues that it is the *"only"* choice for a hospital bellwether plaintiff because it was the only hospital MDL case on file when CMO One was entered.[3] (Modification Motion at ¶ 4.) CMO One placed no such limitation on hospital bellwether selection. As this Court is aware, Paragraph 2.e. of CMO One states:

> e. **Cases filed by Hospitals and Third-Party Payors. No later than Friday, May 11, 2018**, the Hospital Representative of the Plaintiffs' Executive Committee ("PEC") shall identify for the parties and the Court a single MDL case filed by a hospital, the claims of which are governed by the law of one of the States listed in paragraphs 2.b and 2.c. Furthermore, **no later than Friday, May 11, 2018**, Defendants shall notify the parties and the Court that they have identified a single MDL case filed by a third-party payor, the claims of which are governed by the law of one of the States listed in paragraphs 2.b and 2.c. The Court will issue a subsequent case management order setting deadlines in these cases.

(Dkt. No. 232 at 4). The Court clearly did not limit potential hospital bellwethers to cases on file before April 11, 2018, the date CMO One was entered.

Pursuant to CMO One, West Boca directly filed its complaint into this MDL on May 4, 2018. *See West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corporation et al*, Case No. 1:18-op-45530 (N.D. OH). In accordance with Paragraph 2.e of CMO One, on May 7, 2018,

---

authorized by this Order absent further Order of this Court or express agreement of the parties." CMO One, Dkt. No. 232 at 11 (Apr. 11, 2018). Nowhere in CMO One is there any authorization for the filing of motions for modifications of the Order. Additionally, Baptist did not seek agreement from any party before filing its motion and also failed to move this Court for leave to file its motion. As a result, Baptist's Modification Motion should be stricken.

[3] Re-arguing old motions which have been resolved, Baptist complains that only one hospital representative was added to the PEC. (Modification Motion at ¶ 2, "Thus a single lawyer to represent hospitals was added to a 23-person PEC dominated by lawyers representing municipal and county governments."). However, counsel for Baptist has advocated for "at least one" hospital representative on the PEC. *See* Plaintiffs Baptist Hospital, Inc. and Jay Hospital, Inc.'s Response to "Plaintiffs'" Motion to Approve Co-Leads, Co-Liaisons, and Plaintiffs' Executive Committee, Dkt. No. 19 at 2, 3 (Dec. 21, 2017). Additionally, Baptist failed to object or otherwise move for relief from the Court's Order denying as moot its Motion to Establish a Proper Leadership Structure for the Hospital Plaintiffs Filed by Baptist Hospital, Inc. *et al*. *See* Dkt. Nos. 33, 37.

the Hospital Representative filed the appropriate notice selecting West Boca as the hospital bellwether plaintiff. *See* Notice by Hospital Representative of Plaintiffs' Executive Committee of Identification of Hospital for Bellwether Consideration Pursuant to CMO #1 filed by West Boca Medical Center, Inc., Dkt. No. 384 (May 7, 2018). Accordingly, the Hospital Representative for the PEC has complied with CMO One by identifying a "single MDL case filed by a hospital."

The decision to designate West Boca Medical Center, Inc. was made by the Hospital Representative, after evaluating all potential hospital cases that were known to be available. The pool of potential cases included the claims of West Boca.[4] Mr. Barrett is working with a group of eleven law firms, including attorneys licensed in the State of Florida, which have been retained to represent over 130 hospitals throughout the United States. These clients include Tenet Healthcare Corporation, which operates a network of ten hospitals in communities throughout Miami-Dade, Broward and Palm Beach counties in Florida. West Boca Medical Center is one of these Tenet-affiliated hospitals.

Additionally, as noted by Don Barrett in his email to Nix Daniel, counsel for Baptist, West Boca was selected as hospital bellwether plaintiff for its "state-of-the-art pleadings with an especially good RICO count." (Dkt. No. 405-4). As this Court is aware, "[u]nder bellwether trial practice, certain cases within an MDL are selected to proceed to trial, and the bellwether trials are used to assist the parties in evaluating the other cases in the MDL." *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, No. 1:08 GD 50000, 2010 U.S. Dist. LEXIS 43444, at *21 n.1 (N.D. Ohio May 4, 2010) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34-35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998)).

---

[4] A review of opioid-related deaths in Florida reflects that south Florida is an epicenter of opioid related deaths. *See* Exhibit A – Florida Medical Examiners Commission 2016 Annual Report on Drugs Identified in Deceased Persons by Florida Medical Examiners.

West Boca's Complaint is best-suited for bellwether consideration as it contains seven claims for relief **not** included in Baptist's Complaint, including two RICO claims (18 U.S.C. § 1962), which were drafted with the assistance of Professor G. Robert Blakey, the author of the RICO statute and who has signed West Boca's Complaint as co-counsel. Additional claims for relief not included in Baptist's Complaint are: violation of Florida's Fraudulent Practices Act, (Fla. Stat. Ann. § 817.41), Breach of Implied Warranty of Fitness for a Particular Purpose (Fla. Stat. Ann. §§ 672.315, 672.11), Negligence Per Se, Negligent Marketing and Negligent Distribution. Thus, West Boca's complaint would better assist the parties (including Baptist) in evaluating these issues in the MDL.

Additionally, West Boca's Complaint contains more specific factual allegations regarding the impact of the opioid epidemic in Florida, on hospitals generally, and on West Boca directly. Baptist's Complaint lists no specific facts related to either of its hospitals, including how many beds they have, whether or not they have a NICU, whether or not they purchase opioids directly from the Distributor Defendants, or whether or not they have had any opioid related admissions. Baptist's complaint also contains no economic or overdose data in either of its hospitals' geographic area. As a result, West Boca should remain the hospital bellwether plaintiff, and CMO One should not be modified to add Baptist as the bellwether plaintiff.

**III.     There is No Conflict Between Mr. Barrett and the Hospitals He Represents.**

Baptist next argues that Mr. Barrett has an "irreconcilable conflict" which prevents him from serving as the Hospital Representative. Baptist's argument, unsupported by any citation to authority or analysis, fails. First, Mr. Barrett has never represented Baptist in any prior matter. Second, Baptist does not explain how Mr. Barrett has *any* conflict in representing hospitals against the opioid defendants. That is because it cannot.

Ohio's Rules of Professional Conduct provide, in relevant part:

4

> RULE 1.7: CONFLICT OF INTEREST: CURRENT CLIENTS
> (a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
> (1) the representation of that client will be directly adverse to another current client;
> (2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

Ohio Prof. Cond. Rule 1.7

Under Rule 1.7 there is no conflict of interest. Mr. Barrett's representation of plaintiffs against certain hospitals (*nearly 14 years ago*) involved no claims which are directly adverse to West Boca, nor has Baptist identified any risk that Mr. Barrett's former litigation would limit his ethical responsibilities to West Boca. West Boca's claims, Baptist's claims, and the claims of all the hospitals in the country are all aligned against the opioid defendants.

While unclear, Baptist's argument appears to be that Mr. Barrett has a positional conflict based on his representation of plaintiffs in cases resolved over a decade ago. In those cases, the plaintiffs challenged certain hospital billing practices of that era as they related to care and treatment of uninsured patients. Those cases did not relate in any manner to claims that hospitals have suffered damages for uncompensated care and other costs arising out of the opioids epidemic. Notably, Baptist provides no facts or argument to support any claim that Mr. Barrett's representation of hospitals will be limited in any manner.

Baptist also complains that there is some "appearance of conflict or other interest" and that Mr. Barrett did not disclose those "conflicts." (Modification Motion at ¶¶ 12, 13). That is because there is no conflict to disclose. The "historic role" that Baptist notes is exactly that—remote history which has no bearing on Mr. Barrett's ability to represent hospitals in this litigation. As for Baptist's assertion that Mr. Barrett has "an avowed antagonism toward hospitals," creating a conflict, an inference of such a personal animus cannot be drawn simply

because a lawyer has sued certain types of entities. That would be contrary to the very nature of legal representation.

In effect, Baptist's motion is an untimely, unfounded motion to disqualify.[5] The Sixth Circuit has established the following test to determine if grounds for disqualification exist:

> 1. A prior attorney-client relationship must have existed between the party seeking disqualification and the attorney it seeks to disqualify;
>
> 2. The subject matter of the alleged prior and the present relationship must be substantially related; and
>
> 3. The attorney must have acquired confidential information from the party seeking disqualification.

*Thacker v. Cuyahoga Heights Bd. of Educ.*, No. 1:16 CV 2706, 2017 U.S. Dist. LEXIS 64368, at * 7, (N.D. Ohio Apr. 27, 2017) (*citing Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio,* 900 F.2d 882, 889 (6th Cir. 1990)). None of the Sixth Circuit elements for disqualification exist here. Mr. Barrett has no prior attorney-client relationship with movants so as to meet any of the elements of the test. Therefore, disqualification is unwarranted.

**IV.     Conclusion**

On May 7, 2018, the Hospital Representative properly selected a hospital bellwether case in accordance with CMO One, following the Court's instructions to the letter. Baptist's effort to now disqualify the Hospital Representative, appointed by Court Order, is completely unfounded. Baptist's Motion for Modification of Case Management Order lacks any support in fact or law, and should be denied.

Dated: May 11, 2018                             Respectfully Submitted,

                                                **BARRETT LAW GROUP, P.A.**

                                                By: */s/ Don Barrett*

---

[5] *See* n. 3, supra.

John W. (Don) Barrett
P.O. Box 927
404 Court Square North
Lexington, Mississippi 39095
Ph: (662) 834-2488
Fax: (662) 834-2628
donbarrettpa@gmail.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 11, 2018, a copy of foregoing West Boca Medical Center Inc.'s Response to Motion for Modification of Case Management Order One Filed by Baptist Hospital was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

 /s/ Don Barrett
John W. (Don) Barrett
P.O. Box 927
404 Court Square North
Lexington, Mississippi 39095
Ph: (662) 834-2488
Fax: (662) 834-2628
donbarrettpa@gmail.com
