1                 UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF OHIO
2                      EASTERN DIVISION

3
     -------------------------------X
4                                   :
     IN RE: NATIONAL PRESCRIPTION    :   MDL No. 2804
5    OPIATE LITIGATION               :
                                     :   Case No. 1:17-md-2804
6                                    :   Cleveland, Ohio
     *APPLIES TO ALL CASES*          :
7                                    :
                                     :   Thursday, May 10, 2018
8    -------------------------------X

9

10

11

12              TRANSCRIPT OF STATUS CONFERENCE

13        HELD BEFORE THE HONORABLE DAN AARON POLSTER

14              UNITED STATES DISTRICT JUDGE

15                        and

16             THE HONORABLE DAVID A. RUIZ

17             UNITED STATES MAGISTRATE JUDGE

18

19

20   Court Reporter:          Lance A. Boardman, RDR, CRR
                              United States District Court
21                            801 West Superior Avenue
                              Court Reporters 7-189
22                            Cleveland, Ohio 44113
                              216.357.7186
23

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.

```
1    APPEARANCES:

2
     For the Plaintiffs:
3
     Joseph F. Rice, Motley Rice
4    Peter H. Weinberger, Spangenberg, Shibley & Liber
     Steven J. Skikos, Skikos Crawford
5    Paul J. Hanly, Jr., Simmons Hanly Conroy
     Paul T. Farrell, Jr., Greene Ketchum Farrell Bailey & Tweel
6    David A. Domina, Domina Law Group

7    For the Defendants:

8    Mark S. Cheffo, Quinn Emanuel
     Carole S. Rendon, BakerHostetler
9    Charles C. Lifland, O'Melveny & Myers
     Shannon McClure, Reed Smith
10   Robert A. Nicholas, Reed Smith
     Mark H. Lynch, Covington & Burling
11   Enu Mainigi, Williams & Connolly
     Steven A. Reed, Morgan, Lewis & Bockius
12
     Friends of the Court:
13
     James R. Bennett, II, AUSA
14   Alexander K. Haas, AUSA
     Alice Shih LaCour, AUSA
15   Eric J. Soskin, AUSA

16   Special Masters:

17   Catherine A. Yanni
     David Rosenblum Cohen
18   Francis E. McGovern, II

19

20

21

22

23

24

25
```

```
09:09:02   1              (In Open Court.)

09:09:02   2              THE COURT:  Good morning everyone.  Please be

09:09:04   3   seated.  I hope we have enough seats.  If not, I apologize

09:09:07   4   to those in the back.  This will not be a real long session,

09:09:14   5   but I did want to have a public session in open court since

09:09:19   6   we haven't had one for a while.  And there are some people

09:09:24   7   on the phone and hope that you're able to hear.

09:09:31   8        So Judge Ruiz and I want to thank everyone for all the

09:09:34   9   hard work that all of you have been doing over the past

09:09:40  10   several months.

09:09:44  11        And I think we're going to start off by having a

09:09:46  12   report from our special masters to summarize some of the

09:09:50  13   work that's been doing.

09:09:53  14        Before we start, I want to introduce Alex Haas, who I

09:09:58  15   think is -- yes, good morning, Alex.

09:10:00  16        Alex is chief of staff and special counsel to the

09:10:02  17   Assistant Attorney General Civil Division.

09:10:04  18        Did I get it accurately?

09:10:06  19              MR. HAAS:  That's correct.

09:10:06  20              THE COURT:  Okay.  Thank you.

09:10:08  21        And the Attorney General and the Department of Justice

09:10:14  22   has offered their services as a friend of the Court which I

09:10:16  23   have graciously accepted.  I certainly need a lot of help.

09:10:19  24   And so I met with Alex and his colleagues last week at DOJ

09:10:25  25   along with representatives of several federal agencies.  We
```

09:10:28    1    had a good discussion.  So Alex is here today.  So thanks to

09:10:32    2    Alex and the Attorney General.

09:10:33    3        So I guess we'll start off with -- Francis McGovern

09:10:42    4    will start.

09:10:43    5        Francis, make sure you're speaking into a microphone.

09:10:45    6    Thank you.

09:10:52    7            MR. McGOVERN:  Thank you, Your Honor, Judge

09:10:53    8    Ruiz.

09:10:55    9        It's always a welcome sight to see so many folks who

09:10:59   10    want to participate in the resolution of the opioid crisis.

09:11:05   11        The report that I have today, Your Honor, as special

09:11:08   12    master concerns the discussions and negotiations that all of

09:11:14   13    the parties have had since our last meeting.

09:11:18   14        You may remember, Your Honor, that we had three groups

09:11:21   15    of plaintiffs, the plaintiffs' executive committee, the

09:11:27   16    litigating states and tribes, and the multistate group.  We

09:11:34   17    had two groups of defendants, the manufacturers and the

09:11:36   18    distributors.  And our discussions involved prospective

09:11:42   19    injunctive relief.  And there were a variety of documents

09:11:46   20    that were provided for discussions among all of the parties

09:11:51   21    involving the prospective injunctive relief.

09:11:55   22        We had meetings roughly every two weeks, and we have

09:12:00   23    seen a substantial amount of progress in understanding the

09:12:08   24    issues, understanding the potential methods of resolving any

09:12:12   25    disputes that may exist concerning those issues, explored a

09:12:18   1    variety of compromises, and have had what I would consider

09:12:25   2    to be, in my experience, very fruitful, very open, very

09:12:32   3    cooperative discussions.

09:12:33   4        I'm pleased to report that now we're in a slightly

09:12:38   5    different situation.  We have one group consisting of

09:12:45   6    representatives of the plaintiffs' executive committee, of

09:12:49   7    the litigating attorneys general, of the multistate, of the

09:12:54   8    tribes, and the U.S.  And we are making sure that attendance

09:13:00   9    at those meetings is for everyone who would like to attend.

09:13:04   10   But we do have representatives of those plaintiffs' groups

09:13:11   11   working together with a consistent approach dealing with

09:13:15   12   prospective injunctive relief in our discussions.

09:13:20   13       With the defendants, we now have three groups.  We

09:13:22   14   have the manufacturer group, we have the distributor group,

09:13:26   15   and we have the pharmacy group.

09:13:30   16       We are discussing, as I mentioned, prospective

09:13:34   17   injunctive relief, and we're also discussing various

09:13:39   18   procedures, structural mechanisms by which we could achieve

09:13:44   19   a resolution of implementing those procedural methods for

09:13:51   20   addressing some of the problems facing the nation in the

09:13:57   21   opioid crisis.

09:13:59   22       We have negotiation meetings scheduled for June --

09:14:07   23   continuing in May, for June, July, and August.  We have a

09:14:13   24   session scheduled in July to focus on the opioid crisis in a

09:14:19   25   nonlitigation context where we will have a presentation

09:14:24   1    concerning the various business models that exist in our

09:14:30   2    healthcare system in the United States and nonlitigation

09:14:35   3    issues that can be addressed in a cooperative way beyond

09:14:39   4    just litigation to address the opioid crisis.

09:14:45   5          And so we want the Court to know that the parties are

09:14:49   6    in a very cooperative way addressing all of the issues that

09:14:53   7    we have in the litigation, and we will also be focusing on

09:14:58   8    nonlitigation solutions to problems that we may be able to

09:15:03   9    facilitate here in the multidistrict litigation in

09:15:08   10   accordance with your desire that we look at this problem

09:15:11   11   holistically rather than just a litigation problem.

09:15:16   12         Thank you, Your Honor.

09:15:17   13               THE COURT:  Thank you, Mr. McGovern.

09:15:21   14         Special Master Cohen.

09:15:27   15               MR. COHEN:  Thank you, Judge.

09:15:34   16         Special Master McGovern of course went first to

09:15:37   17   discuss negotiations to resolve this dispute because that's

09:15:42   18   the more important goal.  I'm here to chat just very briefly

09:15:45   19   and to give the Court and everyone in the room and on the

09:15:49   20   phone a quick overview of what we're calling the litigation

09:15:53   21   track.

09:15:54   22         We have a settlement track which we're pursuing with

09:15:56   23   vigor.  We have a litigation track that I should make clear

09:16:00   24   your special masters believe is in aid of settlement and not

09:16:06   25   instead of settlement.  The purpose and the point of

09:16:09  1    litigating the legal issues that the parties have identified

09:16:13  2    is to make it easier to come to a resolution, and we believe

09:16:18  3    that that's really the point of it and that that will

09:16:20  4    happen.

09:16:24  5        As the Court knows, the case management order, the

09:16:27  6    first case management order went on less than one month ago,

09:16:30  7    on April 11th.  And the case management order created a

09:16:36  8    litigation track for sovereigns, which is both states and

09:16:42  9    Indian tribes, Native American Indian tribes, local

09:16:47  10   governmental entities, being counties and cities, hospitals,

09:16:50  11   and third-party payors.

09:16:53  12       Since then, there are other groups or entities that

09:16:57  13   have sought to also join the litigation, and those are

09:17:00  14   litigation issues the Court is going to have to address.

09:17:03  15   For example, there are class actions that have been filed,

09:17:10  16   purported class actions representing babies who suffer from

09:17:12  17   neonatal abstinence syndrome.  That is a different group

09:17:18  18   that the Court has not yet worked with.

09:17:22  19       There are class actions purportedly representing

09:17:27  20   everyone who has ever paid private insurance.  And again,

09:17:32  21   that's something that the Court is going to have to get its

09:17:34  22   hands around.

09:17:35  23       This is obviously one of the most, if not the most

09:17:39  24   complex pieces of litigation that the federal system has

09:17:43  25   seen.  That's a consistent statement made by every attorney

| 09:17:45 | 1 | in this room. And so it's unsurprising given this level of |
| 09:17:49 | 2 | complexity that the case management order didn't touch on |
| 09:17:52 | 3 | every topic that it needs to and that we're going to have to |
| 09:17:57 | 4 | tweak things that have already been addressed. I expect |
| 09:18:01 | 5 | those issues to come up today perhaps shortly as the Court |
| 09:18:06 | 6 | asks for comments from the parties and also in the private |
| 09:18:10 | 7 | discussions the Court is going to have with the parties |
| 09:18:13 | 8 | later today. |
| 09:18:14 | 9 | One of those, for example, is the ARCOS data. The |
| 09:18:18 | 10 | Court has put on two different orders directing the |
| 09:18:21 | 11 | Government to release ARCOS data. What that has had the |
| 09:18:25 | 12 | effect of doing, Judge, is that of course other plaintiffs' |
| 09:18:28 | 13 | attorneys around the country would like to see that to |
| 09:18:30 | 14 | determine the extent to which they need to amend their |
| 09:18:34 | 15 | complaints, to drop or add defendants. |
| 09:18:38 | 16 | And what that in turn has created is a lot of |
| 09:18:42 | 17 | attention and, frankly, distraction on the PEC, which is |
| 09:18:46 | 18 | still trying to get its hands around the data, understand |
| 09:18:48 | 19 | the data. So that's an issue that I think we're going to |
| 09:18:51 | 20 | have to go back and add some additional directions for the |
| 09:18:56 | 21 | parties. And I'm sure the parties will raise that. |
| 09:18:59 | 22 | The point is, Judge, though, that we have a litigation |
| 09:19:02 | 23 | track. It's proceeding. It's not linear. Like the |
| 09:19:09 | 24 | negotiations, it will be two steps forward and one step |
| 09:19:13 | 25 | back, but it is moving forward. Everything seems to be |

09:19:15  1    going as it should.  Disputes will arise, and the special

09:19:19  2    masters and the Court I'm sure will address those as we go

09:19:23  3    forward.

09:19:24  4        And I believe that's my report on the litigation

09:19:27  5    track.  Thank you, Judge.

09:19:28  6            THE COURT:  Thank you, Special Master Cohen.

09:19:30  7        Special Master Yanni, is there anything you'd like to

09:19:34  8    add?  Don't want to leave you out.

09:19:36  9        We have three exceptional special masters.  Each of

09:19:39  10   them have unique skills and talents.

09:19:44  11           MS. YANNI:  No, Your Honor, I'm good.  Thank

09:19:47  12   you.

09:19:47  13           THE COURT:  Okay.  Thank you.

09:19:47  14       All right.  I just want to emphasize one of the things

09:19:50  15   that Special Master Cohen said.  We of course have a

09:19:55  16   litigating track.  It's proceeding.  I've set a trial for I

09:19:59  17   believe March 18 of 2019 here in Cleveland.  But I

09:20:06  18   absolutely see it as an aid in settlement discussions.  It's

09:20:10  19   not a substitute or replacement.  It's necessary to do it

09:20:16  20   and we're doing it, but it's not a substitute or replacement

09:20:23  21   in any way.

09:20:23  22       And I still am resolved to be the catalyst to do -- to

09:20:32  23   take some steps this year to turn the trajectory of this

09:20:36  24   epidemic down rather than up, up, up.  And I know everyone's

09:20:41  25   been -- shares that objective and is working hard on it.

09:20:43   1      I of course will be meeting separately with the

09:20:52   2  different groups today, and we'll be starting that as soon

09:20:54   3  as we finish the public session.

09:20:58   4      With some trepidation, I'm going to ask if there's

09:21:00   5  anyone who feels there's something that needs to -- or

09:21:06   6  should appropriately be said while we're all together in

09:21:08   7  open court.  I'm not -- so I'm -- if there's -- remember,

09:21:17   8  you're going to have an opportunity to say a lot of things

09:21:21   9  to me and Judge Ruiz privately, starting as soon as we

09:21:26  10  break.  But there may be something that someone feels should

09:21:29  11  be said while we're all here.

09:21:31  12      Yes, Mr. Rice?

09:21:33  13          MR. RICE:  Your Honor, Joe Rice on behalf of

09:21:35  14  the plaintiffs' executive committee.  I'd like to take the

09:21:37  15  opportunity to follow up on a couple comments that Special

09:21:41  16  Master Cohen brought to the Court's attention.

09:21:42  17      The ARCOS database, as Your Honor knows, has proven to

09:21:46  18  be very helpful, and we believe it will fulfill some of the

09:21:49  19  goals the Court sees to help law enforcement and other

09:21:52  20  agencies.  But our group is working 24/7, and we're getting

09:21:55  21  a lot of pressure from people to start giving things out.

09:21:58  22  And we need some time to be sure that what we're producing

09:22:02  23  and how we're getting it together is going to be a useful

09:22:05  24  product.  So it would be helpful if we had some indication

09:22:08  25  from the Court that we could have 30, 45 days to report back

09:22:12    1    to the Court and not have people bombard us for wanting the

09:22:17    2    data until our team can get it into workable shape.

09:22:21    3            THE COURT:  That is a fair request, Mr. Rice.

09:22:23    4    The CMO made it clear, I thought it was clear, that for

09:22:31    5    those cases that aren't set now for trial, plaintiffs are

09:22:38    6    not under any imminent deadline to amend their complaints so

09:22:43    7    that there's no need for someone to say, look, if I don't

09:22:47    8    get this ARCOS data in the next 30 days and either add

09:22:52    9    defendants or subtract defendants, I'll be barred from doing

09:22:55   10    that.  In fact, it's the opposite.  So I thought that was

09:22:58   11    clear.

09:22:59   12       And so I'm going to -- I'm going to request that

09:23:05   13    lawyers on the nonlitigating cases, the cases that haven't

09:23:11   14    been set for trial -- and, quite frankly, the only ones set

09:23:14   15    for trial are the three that I indicated:  City of

09:23:18   16    Cleveland, Cuyahoga County, Summit County -- that those

09:23:22   17    lawyers hold off.  You'll have plenty of time to request

09:23:26   18    that data if and when your case is set for trial and that to

09:23:34   19    hold off contacting the PEC for the data.

09:23:36   20       And, Mr. Rice, if you get the calls, just -- I mean,

09:23:40   21    you note them down, but you don't need to respond now.

09:23:43   22            MR. RICE:  And that brings the second point

09:23:45   23    up, Your Honor.  You are correct that there is a lot of

09:23:47   24    confusion from the CMO about the need for filing amended

09:23:51   25    complaints, and we appreciate Your Honor's clarification

09:23:53  1   this morning on that.  But it also raises a second issue,

09:23:56  2   and that is as to new defendants that are added, the parties

09:24:01  3   are concerned about whether the Court will recognize the

09:24:04  4   relation back since we're sort of stayed and we don't have

09:24:06  5   the knowledge yet to add those parties.  So there's a

09:24:09  6   concern about the statute of limitations issues and the

09:24:12  7   concept of relation back to the original filings, as to the

09:24:18  8   new parties.

09:24:19  9             THE COURT:  Well, that's a little more

09:24:20  10  complicated.  I'm not sure I can answer that one on the fly.

09:24:29  11  So it is important for those cases that are being litigated,

09:24:31  12  and those amended complaints have been filed.  Some new

09:24:33  13  defendants are added.  Some have been subtracted.  The whole

09:24:38  14  point of the ARCOS data was that now it's evidence-based,

09:24:41  15  fact-based, and we have the parties in who need to be in.

09:24:46  16  If parties don't need to be, so be it.

09:24:48  17      Mr. Rice, I appreciate the formality and the courtesy

09:24:53  18  of standing.  The problem is that with people on the phone,

09:24:58  19  if you're standing, they can't hear and the court reporter

09:25:01  20  can't.  So I guess anyone can be either at the lectern or

09:25:06  21  seated and that's fine.

09:25:09  22      So I think you'll need to try and work out that

09:25:11  23  relation back issue.  And if the Court needs to get

09:25:16  24  involved, I will.

09:25:17  25             MR. RICE:  Your Honor, there's a third issue

09:25:19  1  that we need some guidance on.  And I think this was maybe

09:25:21  2  an oversight in the CMO.  We have filed -- we have not filed

09:25:26  3  in Court, we have served the many complaints for the track

09:25:31  4  cases, and today we've -- since the Chicago case, pursuant

09:25:34  5  to the special master's instructions, to add the Chicago

09:25:38  6  distributor case.

09:25:39  7      And we sent the redacted versions to the defendants

09:25:43  8  which basically redacted the ARCOS data pursuant to the

09:25:47  9  ARCOS protective order.  However, we have not been able to

09:25:50  10  file those as public documents, and we're getting a lot of

09:25:53  11  questions about that as well.  And we just don't have a

09:25:55  12  deadline in the CMO to get that done.

09:25:59  13          THE COURT:  All right.  That's a good point.

09:26:01  14  In fact, I was driving in today, and there was a story on

09:26:05  15  NPR.  And it said that the amended complaint's been filed

09:26:11  16  under seal and so no one knows what it is.

09:26:14  17      All right.  We need to accelerate that.

09:26:20  18          MR. LYNCH:  Your Honor, if I may?

09:26:20  19          THE COURT:  Yes.

09:26:21  20          MR. LYNCH:  Mark Lynch for McKesson.  For the

09:26:24  21  McKesson, Cardinal, and AmerisourceBergen, we notified

09:26:27  22  Mr. Rice yesterday that we have no objections -- we have no

09:26:30  23  redactions that we're going to seek in the amended

09:26:32  24  complaints.

09:26:35  25          MR. RICE:  Thank you, Counsel.

09:26:35   1          THE COURT:  All right.  Fine.

09:26:41   2      All right.  Well, what about the other groups?  When

09:26:44   3  are they going to get -- I'm going to -- if you know now, if

09:26:47   4  you have any -- have no objections, you can say it.  If

09:26:49   5  you're not in a position...

09:27:07   6      All right.  I'll just make it by noon a week from

09:27:10   7  today, which is the 17th, for all other defendants.  And I'm

09:27:25   8  going to say by noon the following Wednesday, which will be

09:27:33   9  the 23rd, that's all to be resolved, okay?  And if it's not,

09:27:38  10  submit it to the Court, I'll decide it fast.  Okay?

09:27:44  11      So noon the 14th.  Any objections by any of the other

09:27:50  12  defendant groups - that would be the manufacturers and

09:27:55  13  pharmacies - I'm giving another six days, noon the 23rd, May

09:28:00  14  23rd, to get that all resolved.  And if it's not resolved

09:28:04  15  then, submit a joint report to the Court immediately, and

09:28:09  16  I'll decide it.  I'll just call it, and that will be it.

09:28:14  17          MR. RICE:  Your Honor, I think that's the only

09:28:16  18  housekeeping matters the plaintiffs had.  We've got some

09:28:18  19  matters to take up with the special masters, but I think it

09:28:21  20  belongs there first.

09:28:45  21          (Off-the-record discussion.)

09:28:45  22          THE COURT:  So it's noon, next Thursday, the

09:28:47  23  17th, for any objections.  And then have it all worked out

09:28:50  24  by noon the following Wednesday, the 23rd.  If there are any

09:28:56  25  issues, submit them immediately to the Court, and I'll

| | |
|---|---|
| 09:28:58 | 1 |
| 09:28:58 | 2 |
| 09:28:58 | 3 |
| 09:29:12 | 4 |
| 09:29:16 | 5 |
| 09:29:19 | 6 |
| 09:29:21 | 7 |
| 09:29:22 | 8 |
| 09:29:25 | 9 |
| 09:29:28 | 10 |
| 09:29:30 | 11 |
| 09:29:33 | 12 |
| 09:29:36 | 13 |
| 09:29:37 | 14 |
| 09:29:39 | 15 |
| 09:29:42 | 16 |
| 09:29:44 | 17 |
| 09:29:46 | 18 |
| 09:29:49 | 19 |
| 09:29:53 | 20 |
| 09:29:56 | 21 |
| 09:29:58 | 22 |
| 09:30:00 | 23 |
| 09:30:04 | 24 |
| 09:30:07 | 25 |

1  decide it.

2              MR. CHEFFO:  Your Honor?

3              THE COURT:  Yes, Mr. Cheffo.

4              MR. CHEFFO:  Let me just take a minute to both

5  thank the Court and your staff and the special masters and

6  the Government to the extent that they're participating.  We

7  really do appreciate that.

8      I would just say that I think I've been glass half

9  full in this process.  We have a lot of work.  There are

10  many complicated issues.  But I think that, you know, we've

11  seen some cooperation, a lot of cooperation and compromise

12  and professionalism, so hopefully that will continue.  And I

13  think we're all moving in the right direction.

14      Just to speak one minute, I think Your Honor's

15  addressed this already, but just so we're clear on this

16  relation back, I think we would urge the Court to come out

17  where I think you did.  For instance, obviously we can't

18  speak for folks who may not be at the table, so that would

19  be the first issue.  And we think that amendment should be

20  governed by the normal rules of federal civil procedure.

21              THE COURT:  I said I'm not going to be able to

22  deal with that on the fly.  If you can't work this out,

23  you'll have to submit it first to the special masters and,

24  if there's still a problem, to Judge Ruiz and me, and

25  I'll -- we'll make the decision.

09:30:09  1          MR. CHEFFO:  Great.  And thank you.

09:30:10  2      And the last just quick housekeeping, I think it

09:30:12  3  doesn't necessarily relate to the ARCOS as I understood it

09:30:15  4  and the amendment which none of the folks here have

09:30:18  5  objections.  To the extent that we do have other -- if there

09:30:22  6  are any other redaction issues, what I would ask is the

09:30:25  7  plaintiffs to help us and the Court -- often, there may be

09:30:31  8  issues of redaction and it's hard to actually find the

09:30:33  9  documents or the statements.

09:30:34  10      So to the extent that we're going forward and if we're

09:30:37  11  talking about anything other than the ARCOS data, that that

09:30:39  12  information be supplied to us so we could actually quickly

09:30:41  13  find it and then get back to the plaintiffs.  We've asked

09:30:44  14  them for that, and I think that would really help us going

09:30:47  15  forward, Your Honor.

09:30:49  16          THE COURT:  All right.  I'm not quite sure I

09:30:51  17  understand what the disagreement is, but --

09:30:55  18          MR. CHEFFO:  I don't think there's a

09:30:57  19  disagreement.

09:30:58  20          THE COURT:  You've been working cooperatively.

09:30:59  21  Just continue to do that.

09:31:00  22          MR. CHEFFO:  Thank you.

09:31:03  23          THE COURT:  Okay.  So you're still --

09:31:04  24  something you wanted?  Yes, sir.

09:31:06  25          MR. DOMINA:  May it please the Court, I'm Dave

09:31:09   1    Domina from Nebraska.  I'm not here on a procedural matter.

09:31:12   2    I want to spend just a few seconds speaking to the

09:31:15   3    circumstances of Native Americans and particularly the

09:31:19   4    Plains tribes.

09:31:22   5         Your Honor, those people have been marginalized in

09:31:25   6    every significant thing that has happened in the history of

09:31:28   7    the United States, and they want to not be marginalized in

09:31:31   8    this proceeding.  Native Americans are 1.7 percent of the

09:31:35   9    population of the United States.  They have many multiples

09:31:40  10    of that number of the totality of this devastation among

09:31:43  11    their people.

09:31:45  12         I am here simply to let the Court know how important

09:31:48  13    it is to them that they have their own track, have their own

09:31:54  14    opportunity to elevate their unique concerns.  And they have

09:31:58  15    unique concerns.  They relate not only to their own medical

09:32:01  16    circumstances, their historical circumstances, but also to

09:32:05  17    the means of distribution of this pernicious medication

09:32:09  18    among their people.

09:32:10  19         So as this goes forward, I want it to be remembered

09:32:14  20    that today they spoke out against being marginalized and in

09:32:19  21    favor of having a distinct track.

09:32:22  22         Thank you very much.

09:32:23  23              THE COURT:  All right.  Thank you, Mr. Domina.

09:32:26  24         I know I've said privately and I'll say publicly, the

09:32:32  25    tribes are an important part of this litigation.  They have

09:32:36  1   been, I think, disproportionately affected by the opioid

09:32:42  2   epidemic.  And I've made very clear that if there is a

09:32:49  3   resolution, there won't be one without them.  So it's not --

09:32:53  4   this Court is not going to marginalize them.  In fact, it's

09:32:56  5   the opposite.  And whether they're a separate track or

09:32:59  6   they're an integral part of the plaintiffs' track -- I know

09:33:04  7   they've been -- I expect to be talking to lawyers for the

09:33:09  8   tribes when I have my first meeting with the plaintiffs.

09:33:12  9       So some of them are represented by PEC lawyers, some

09:33:17  10  are self-represented, as they may be because they're

09:33:23  11  sovereign nations.  So thank you.

09:33:27  12              MR. DOMINA:  Thank you.

09:33:30  13              MR. SKIKOS:  Your Honor, Steve Skikos on

09:33:33  14  behalf of plaintiffs' liaison.

09:33:35  15      I just want to document for the Court and for all

09:33:37  16  parties here the lead counsel in the PEC has been and will

09:33:42  17  continue to vigorously represent the interests of the

09:33:44  18  tribes.  We actually had a call with Mr. Domina yesterday.

09:33:49  19  We have a fully cooperative group engaged.  And we will be

09:33:54  20  presenting to Your Honor as Francis McGovern told me at the

09:33:59  21  break.

09:33:59  22              THE COURT:  Okay.  Thank you, Mr. Skikos.

09:34:08  23      Is there anyone else?

09:34:25  24              MR. RICE:  Your Honor, I do have one other

09:34:27  25  matter.

09:34:27    1        As Your Honor has scheduled our next conference, we

09:34:30    2    expect at that time that the MDL panel may have

09:34:34    3    transferred -- conditionally transferred one or more state

09:34:37    4    AG cases that the states will be seeking, pursuant to the CM

09:34:41    5    order, for immediate remand hearings.  And so for scheduling

09:34:45    6    purposes, I just wanted to try to get that on Your Honor's

09:34:50    7    calendar.

09:34:51    8              THE COURT:  All right.  We'll have to figure

09:34:53    9    that out.

09:34:58   10              MR. CHEFFO:  I'm not sure that I understand

09:35:00   11    exactly what Mr. Rice is talking about in terms of immediate

09:35:02   12    remand hearings.

09:35:05   13              THE COURT:  Well, first of all, we can't have

09:35:06   14    a hearing unless and until someone files a motion.  All

09:35:08   15    right?

09:35:10   16        I think you're right, Mr. Rice.  I would anticipate if

09:35:17   17    a case filed by a state attorney general is removed to

09:35:22   18    Federal Court and transferred here, I would anticipate that

09:35:26   19    state will file a motion to remand.  There may be an

09:35:29   20    opposition, and if we need a hearing, we'll have one.  But

09:35:33   21    we'll certainly address those.  But I'm not going to -- I

09:35:37   22    think it would be inappropriate to just schedule a hearing

09:35:40   23    without any motion at all.

09:35:41   24              MR. RICE:  No, sir, I wasn't asking for that.

09:35:43   25    I was just putting before the Court that when we do the

09:35:46   1   schedules -- and we have a very tight schedule during the

09:35:50   2   time -- that we may actually need some time at the next

09:35:53   3   hearing for actual motions.

09:35:54   4               THE COURT:  Well, all right.  But I -- I don't

09:35:57   5   have to wait to deal with a motion till we have a hearing or

09:36:02   6   a conference.  I mean, I'll -- I know how to deal with

09:36:06   7   motions, and if --

09:36:08   8               MR. RICE:  Okay.  Thank you, Your Honor.

09:36:09   9               THE COURT:  I may not need -- typically,

09:36:12  10   lawyers are pretty good at stating the law and the facts.

09:36:16  11   And the only time I generally require hearings is

09:36:19  12   evidentiary ones when there are facts in dispute or I'm

09:36:24  13   taking testimony.  I really don't need too much exposition.

09:36:28  14   So we'll deal with those.

09:36:31  15               MR. RICE:  Thank you, Your Honor.

09:36:33  16               THE COURT:  Okay.  Then we will adjourn this

09:36:38  17   public portion.  And the first meeting on our schedule is

09:36:43  18   with the plaintiffs, so that would be PECs, any attorneys

09:36:50  19   general, tribes, and any of the other third-party payors,

09:36:57  20   hospitals.  And we're going to do that -- that's probably

09:37:03  21   the largest group.  We'll meet in the courtroom on 16.

09:37:08  22               (Off-the-record discussion.)

09:37:10  23               THE COURT:  16A.  We'll go to 16A.

09:37:16  24               MR. COHEN:  Judge, the United States will be

09:37:19  25   part of that as well?

09:37:20  1            THE COURT:  Yes, Mr. Haas and his group can

09:37:23  2   come with that one.

09:37:24  3         Okay.  Thank you.

09:37:27  4              (Proceedings adjourned at 9:37 a.m.)

5                      * * * * *

6

7                 **C E R T I F I C A T E**

8

9       I certify that the foregoing is a correct transcript

10   of the record of proceedings in the above-entitled matter

11   prepared from my stenotype notes.

12

13         */s/ Lance A. Boardman_____   05/14/2018*
            Lance A. Boardman, RDR, CRR           DATE
14

15

16

17

18

19

20

21

22

23

24

25