**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| This document relates to: *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.* Case No. 18-op-45090 | Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT**
**OF DISTRIBUTORS' MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 3

    A.      Regulatory Background ................................................................................... 3

    B.      Plaintiffs' Claims ........................................................................................... 6

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ............................................................................................................................ 7

I.       THE COUNTY'S RICO AND OCPA CLAIMS SHOULD BE DISMISSED. ................. 7

    A.      The County Fails To Allege an Injury to Business or Property............................. 8

          1.      The damages identified in the Complaint arise from personal
                 injuries, not injuries to business or property. ................................................ 8

          2.      Public expenditures by local governments are not injuries to
                 business or property. ................................................................................... 10

    B.      The County Fails To Allege a Direct Injury. ....................................................... 11

    C.      The County Fails To Allege "Racketeering Activity" or "Corrupt
          Activity." ...................................................................................................... 16

          1.      The Complaint does not allege "racketeering activity." ........................... 16

          2.      The Complaint does not allege "corrupt activity." ................................... 19

    D.      The County Fails To Allege Participation in an Enterprise. ................................. 20

II.      THE COUNTY'S PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED. ............. 21

    A.      The OPLA Abrogates Plaintiffs' Public Nuisance Claims. ................................. 22

    B.      Plaintiffs Fail To State a Common Law Absolute Public Nuisance Claim. ......... 26

          1.      Plaintiffs failed to allege a public right with which Distributors
                 interfered. ................................................................................................. 26

          2.      Absolute public nuisance claims concerning extensively regulated
                 conduct are improper. ............................................................................... 29

    C.      Plaintiffs' Statutory Public Nuisance Claim Contains Additional Defects. ......... 30

1. All Plaintiffs except Summit County lack authority to bring the asserted statutory public nuisance claim..................................................... 31

2. Summit County cannot obtain the relief it seeks. .................................... 31

III. THE COUNTY'S NEGLIGENCE CLAIM SHOULD BE DISMISSED. ...................... 32

A. The OPLA Bars the Negligence Claim................................................. 33

B. The Complaint Fails Adequately To Allege an Enforceable Duty Owed by Distributors to Plaintiffs.................................................................. 35

1. No private right of action. ....................................................... 36

2. No negligence *per se*............................................................... 39

3. No common law duty to monitor and report "suspicious" pharmacy orders........................................................................................... 41

4. No duty owed to *Plaintiffs*. ....................................................... 42

IV. THE COUNTY'S NUISANCE AND NEGLIGENCE CLAIMS SHOULD ALSO BE DISMISSED FOR ADDITIONAL REASONS. ......................................... 43

A. The Economic Loss Doctrine Requires Dismissal of Both Claims. .................... 43

B. The Statewide Concern Doctrine Requires Dismissal of Both Claims................. 44

C. The Direct Injury Test Requires Dismissal of Both Claims. ............................... 45

V. THE COUNTY'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. ......................................................................................... 49

VI. THE COUNTY'S CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ........... 52

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*Aaron v. Durrani*, No. 1:13-CV-202, 2014 WL 996471 (S.D. Ohio Mar. 13, 2014)....................16

*Agema v. City of Allegan*, 826 F.3d 326 (6th Cir. 2016) ................................................................7

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000)...................................14

*Am. BioCare Inc. v. Howard & Howard Att'ys PLLC*, 702 F. App'x 416
    (6th Cir. 2017)....................................................................................................................16

*Arnold v. Alphatec Spine, Inc.*, No. 1:13-cv-714, 2014 WL 2896838
    (S.D. Ohio June 26, 2014) ................................................................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................7

*Ashtabula River Corp. Grp. II v. Conrail, Inc.*, 549 F. Supp. 2d 981
    (N.D. Ohio 2008) ..............................................................................................................44

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696
    (9th Cir. 2001) ..................................................................................................................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................21

*Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892 (S.D. Ohio 2013)......................................50

*Bird v. Delacruz*, 411 F. Supp. 2d 891 (S.D. Ohio 2005)............................................................19

*Bonadio v. PHH Mortg. Corp.*, No. 12 CV 3421, 2014 WL 522784
    (S.D.N.Y. Jan. 31, 2014)..................................................................................................21

*Bradley v. Miller*, 96 F. Supp. 3d 753 (S.D. Ohio 2015).............................................................20

*Camden Cty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 273 F.3d 536
    (3d Cir. 2001)....................................................................................................................23

*Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008)..................................10, 11

*Cap City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 WL 4573993
    (S.D. Ohio Sept. 1, 2016).................................................................................................19

*Chesher v. Neyer*, 392 F. Supp. 2d 939 (S.D. Ohio 2005), *aff'd*, 477 F.3d 784
    (6th Cir. 2007)............................................................................................................52, 54

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474 (6th Cir. 2017) .................28, 44

*City of Cincinnati v. Deutsche Bank Nat. Tr. Co.*, 897 F. Supp. 2d 633
(S.D. Ohio 2012)........................................................................................46

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.* 621 F. Supp.2d 513
(N.D. Ohio 2009) ................................................................................. passim

*City of Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp.2d 882 (E.D. Pa. 2000)...............22, 26

*City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002) ..........................23, 49

*Cleveland v. United States*, 531 U.S. 12 (2000) ....................................................................17

*Coffman v. Bank of Am., NA*, No. 2:09-cv-00587, 2010 WL 3069905
(S.D. W.Va. Aug. 4, 2010) ....................................................................38

*Consol. Rail Corp. v. City of Dover*, 450 F. Supp. 966 (D. Del. 1978) ...........................30

*Cuyler v. United States*, 362 F.3d 949 (7th Cir. 2004) .................................................41

*D.E. & J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719 (E.D. Mich. 2003)...................17

*Davis v. Walmart Stores East, L.P.*, 687 F. App'x 307 (4th Cir. 2017) ..........................39

*Decker v. GE Healthcare, Inc. (In re Gadolinium-Based Contrast Agents Prods.*
*Liab. Litig.)*, Nos. 1:08-GD-50000, 1:12-GD-50004, 2013 WL 587655
(N.D. Ohio Feb. 13, 2013) ................................................................33, 35

*Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992)..........................................................................8

*Evans v. Hanger Prosthetics & Orthotics, Inc.*, 735 F. Supp. 2d 785
(N.D. Ohio 2010) ............................................................................33, 35

*Fed. Ins. v. Webne*, 513 F. Supp. 2d 921 (N.D. Ohio 2007)...........................................53

*Figueroa Ruiz v. Alegria*, 896 F.2d 645 (1st Cir. 1990) .................................................7

*Greenway v. Kimberly-Clark Corp.*, No. 1:15-cv-1720, 2016 WL 3460229
(N.D. Ohio June 24, 2016)...................................................................22, 33

*Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785 (6th Cir. 2015)......................................16

*Gucwa v. Lawley*, --- Fed.Appx. ----, 2018 WL 1791994 (6th Cir. Apr. 16, 2018) ......................9

*Haw. Health & Welfare Tr. Fund for Operating Eng'rs v. Philip Morris, Inc.*,
52 F. Supp. 2d 1196 (D. Haw. 1999) ...................................................9

*Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972)........................................................10

*Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393 (6th Cir. 2012) .................16, 17

*Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1 (2010) ............................................................ passim

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992) ...............................11, 15, 45

*Hot-Shot Motorworks v. Falicon Crankshaft Components*, No. 3:13-cv-1322,
    2014 WL 346435 (N.D. Ohio Jan. 30, 2014)........................................................................17

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917
    (6th Cir. 2014)........................................................................................................................7

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
    590 F. Supp. 2d 1282 (C.D. Cal. 2008) ................................................................................18

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*,
    No. 3:09-CV-20071-DRH, 2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) ...............................47

*Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v. Philip Morris
    Inc.*, 196 F.3d 818 (7th Cir. 1999) .......................................................................................14

*Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556 (6th Cir. 2013) .................................8, 9

*James v. Meow Media, Inc.*, 90 F. Supp. 2d 798 (W.D. Ky. 2000) ..........................................13

*Jiaxi Hu v. Chan*, No. 1:15-CV-709, 2016 WL 4269065
    (S.D. Ohio Aug. 15, 2016)....................................................................................................17

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996)..................................7

*Kemp v. Medtronic, Inc.*, No. 99-3720, 2001 WL 91119 (6th Cir. Jan. 26, 2001) ......................39

*Knopick v. UBS Financial Servs., Inc.*, 121 F. Supp. 3d 444 (E.D. Pa. 2015) ............................47

*Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229
    (2d Cir. 1999)...................................................................................................................14, 15

*Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346 (S.D. Fla. 2003) ....................................43

*Lefkowitz v. Ackerman*, No. 2:16-cv-00624, 2017 WL 4237068
    (S.D. Ohio Sept. 25, 2017)................................................................................................45, 47

*Lyons v. Philip Morris Inc.*, 225 F.3d 909 (8th Cir. 2000) ...........................................................14

*McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783 (S.D. W. Va. 2001).............................36

*McKesson Corp. v. Hembree*, No. 17-cv-323, 2018 WL 340042
    (N.D. Okla. Jan. 9, 2018).......................................................................................................36

*Miles v. Raymond Corp.*, 612 F. Supp. 2d 913 (N.D. Ohio 2009).................................................34

*Mitchell v. Proctor & Gamble*, No. 2:09-cv-426, 2010 WL 728222
(S.D. Ohio Mar. 1, 2010) ...................................................................33

*Myers v. United States*, 17 F.3d 890 (6th Cir. 1994) ............................................37, 39

*Nilavar v. Mercy Health Sys.-W. Ohio*, 142 F. Supp. 2d 859 (S.D. Ohio 2000) ...................52, 54

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006)........................................21

*Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902 (S.D. Ohio 2013) ........................20

*Ohio Edison Co. v. Direct Energy Bus., LLC*, No. 5:17-cv-746,
2017 WL 3174347 (N.D. Ohio July 26, 2017) .......................................................50

*Or. Laborers-Emp'rs Health & Welfare Tr.Fund v. Philip Morris Inc.*,
185 F.3d 957 (9th Cir. 1999) ....................................................................14

*Perry v. Am. Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003)......................................................15, 45

*Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884 (6th Cir. 2000) ........................................15

*Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924 (9th Cir. 1994) ............................................47

*Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617 (6th Cir. 1999).........................52

*Prater v. Livingston Ave. Child Care, LLC*, No. 2:14-CV-490, 2015 WL 1439322
(S.D. Ohio Mar. 27, 2015) ......................................................................17

*Rahimi v. St. Elizabeth Med. Ctr.*, No. C3-96-126, 1997 WL 33426269
(S.D. Ohio July 16, 1997) .......................................................................20

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)....................................................................20

*Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631 (N.D. Ohio 2012) ........................21

*Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289 (3d Cir. 2010) ...................................36

*Shmatko v. Ariz. CVS Stores LLC*, No. 14-cv-01076, 2014 WL 3809092
(D. Ariz. Aug. 1, 2014)..........................................................................36

*Slay's Restoration LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489
(4th Cir. 2018)...................................................................................15

*Smith v. Hickenlooper*, 164 F. Supp. 3d 1286 (D. Colo. 2016) ...................................................36

*Spears v. Chrysler, LLC*, No. 3:08CV331, 2011 WL 540284
(S.D. Ohio Feb. 8, 2011).........................................................................53, 54

*State of West Virginia v. McKesson Corp.*, No. 2:17-03555
   (S.D. W. Va. Feb. 15, 2018) ........................................................................36

*Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
   171 F.3d 912 (3d Cir. 1999)........................................................................14

*Stratford v. SmithKline Beecham Corp.*, No. 2:07-cv-639, 2008 WL 2491965
   (S.D. Ohio June 17, 2008) ..........................................................................34

*Swayze v. McNeil Labs., Inc.*, 807 F.2d 464 (5th Cir. 1987) ........................................43

*Tekavec v. Van Waters & Rogers, Inc.*, 12 F. Supp. 2d 672 (N.D. Ohio 1998) ..........................37

*Tex. Carpenters Health Benefit Fund v. Philip Morris Inc.*, 199 F.3d 788
   (5th Cir. 2000).........................................................................................14

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993) ........................23

*United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
   842 F.3d 430 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 69 (2017).............................7

*United States v. Daniel*, 329 F.3d 480 (6th Cir. 2003) ..................................................17

*United States v. Fowler*, 535 F.3d 408 (6th Cir. 2008)...........................................20, 21

*United States v. Prince*, 214 F.3d 740 (6th Cir. 2000)..................................................17

*United States v. Real Prop. & Improvements Located at 1840 Embarcadero*,
   932 F. Supp. 2d 1064 (N.D. Cal. 2013) ......................................................36

*United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014)..................................................17

*W. & S. Life Ins. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888
   (S.D. Ohio 2014)..................................................................................19, 20

*Wall v. Mich. Rental*, 852 F.3d 492 (6th Cir. 2017) ......................................................7

*Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27 (D.D.C. 2003) ..........................................37

*Welborn v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383 (5th Cir. 2014)..................................10

*Welch v. Atmore Cmty. Hosp.*, 704 F. App'x 813 (11th Cir. 2017)..........................................36

### STATE CASES

*Am. Fin. Servs. Ass'n v. City of Cleveland*, 858 N.E.2d 776 (Ohio 2006) ............................44, 45

*Bevan Grp. 9 v. A-Best Prods. Co.*, Nos. 502694 *et al.*, 2004 WL 1191713,
   (Ohio Ct. Com. Pl. May 17, 2004)……….....................................................52

*Bilicic v. Brake*, 581 N.E.2d 586 (Ohio Ct. App. 1989) ...........................................48

*Bohme, Inc. v. Sprint Int'l Commc'ns Corp.*, 686 N.E.2d 300
  (Ohio Ct. App. 1996) ...........................................42

*Brown v. Cty. Comm'rs of Scioto Cty.*, 622 N.E.2d 1153 (Ohio Ct. App. 1993) ...................26, 29

*Chambers v. St. Mary's Sch.*, 697 N.E.2d 198 (Ohio 1998)...........................................39, 40

*City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126 (Ill. Ct. App. 2005)...............................29

*City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004).......................13, 23, 25, 28

*City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002)...........................22, 24

*City of Cleveland v. JP Morgan Chase Bank, N.A.*, No. 98656, 2013-Ohio-1035,
  2013 WL 1183332 (Ohio Ct. App. 2013)...................................................11, 14, 46

*City of St. Louis v. Cernicek*, No. 02CC-1299, 2003 WL 22533578
  (Mo. Cir. Ct. Oct. 15, 2003)...........................................23

*City of Toledo v. Sherwin-Williams Co.*, No. CI 200606040, 2007 WL 4965044
  (Ohio Ct. Com. Pl. Dec. 12, 2007)...........................................24

*County of Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039 (Ill. App. Ct. 2004) ...........................15

*Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016)...................................26

*Detroit Bd. of Education v. Celotex Corp.*, 493 N.W.2d 513
  (Mich. Ct. App. 1992)...........................................23

*Diamond v. Gen. Motors Corp.*, 97 Cal. Rptr. 639 (Cal. Ct. App. 1971).....................................22

*Dist. of Columbia v. Beretta U.S.A. Corp.*, 872 A.2d 633 (D.C. 2005)...................................23, 25

*Eisenhuth v. Moneyhon*, 119 N.E.2d 440 (Ohio 1954)...........................................40

*Evans v. Thrasher*, No. C-120783, 2013-Ohio-4776, 2013 WL 5864592
  (Ohio Ct. App. Oct. 30, 2013) ...........................................48

*Fawcett v. G.C. Murphy & Co.*, 348 N.E.2d 144 (Ohio 1976)...........................................38

*Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*,
  560 N.E.2d 206 (Ohio 1990)...........................................43

*Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001)...........................................23, 47

*Gilford v. Ohio State Bd. of Pharmacy*, No. 8979, 1985 WL 7634
  (Ohio Ct. App. Feb. 6, 1985) ...........................................37

*Grey v. Walgreen Co.*, 967 N.E.2d 1249 (Ohio Ct. App. 2011) ...................................38

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, No. 2:13-md-2433,
    2015 WL 4092866 (S.D. Ohio July 6, 2015) ........................................................37

*In re Firearm Cases*, 24 Cal. Rptr. 3d 659 (Cal. Ct. App. 2005) .................................23

*In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007) ...............................................25, 26

*Johnson v. Microsoft Corp.*, 834 N.E.2d 791 (Ohio 2005)..................................49, 50

*Kemerer v. Antwerp Bd. of Edn.,* 664 N.E.2d 1380 (Ohio Ct. Ap. 1995).....................47

*Kettering v. State Emp. Relations Bd.*, 496 N.E.2d 983 (Ohio 1986)...........................45

*Kooyman v. Staffco Constr., Inc.*, 937 N.E.2d 576 (Ohio Ct. App. 2010)....................39

*Kramer v. Angel's Path, LLC*, 882 N.E.2d 46 (Ohio Ct. App. 2007)......................26, 28

*Littleton v. Good Samaritan Hosp. & Health Ctr.*, 529 N.E.2d 449 (Ohio 1988)........43

*Martin v. Lambert*, 8 N.E.3d 1024 (Ohio Ct. App. 2014) .............................................41

*McCarty v. Pedraza*, 17 N.E.3d 71 (Ohio Ct. App. 2014).............................................49

*Miami Valley Hosp. v. Combs*, 695 N.E.2d 308 (Ohio Ct. App. 1997)..........................38

*Nielsen v. Ford Motor Co.*, 681 N.E.2d 470 (Ohio Ct. App. 1996) ..............................38

*Pankros v. Tyler*, 929 N.E.2d 1217 (Ill. Ct. App. 2010)................................................47

*Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001) ...............23, 30

*People ex rel. Spitzer v. Sturm, Ruger, & Co.*, 761 N.Y.S.2d 192 (App. Div. 2003).............23, 25

*Perry v. Town of Putnam*, 131 A.3d 1284 (Conn. Ct. App. 2016) .................................49

*Queen City Terminals, Inc. v. Gen. Am. Transp.*, 653 N.E.2d 661 (Ohio 1995).........44

*Robinson v. Vehicle Acceptance Corp.*, 2017-Ohio-6886, 2017 WL 3084579
    (Ohio Ct. App. July 20, 2017).............................................................................14

*RWP, Inc. v. Fabrizi Trucking & Paving Co.*, No. 87382, 2006-Ohio-5014,
    2006 WL 2777159 (Ohio Ct. App. Sept. 28, 2006).............................................44

*Schneider v. Kumpf*, 58 N.E.3d 1220 (Ohio Ct. App. 2016) ........................................38

*Sills v. Smith & Wesson Corp.*, No. 99C-09-283, 2000 WL 33113806
    (Del. Super. Ct. Dec. 1, 2000).......................................................................23, 25

*Simpson v. Big Bear Stores Co.*, 652 N.E.2d 702 (Ohio 1995) ...................................................42

*Smrtka v. Boote*, 88 N.E.3d 465 (Ohio Ct. App. 2017) .............................................................40

*State ex rel. Andersons v. Masheter*, 203 N.E.2d 325 (Ohio 1964)............................................27

*State ex rel. Schoener v. Bd. of Comm'rs of Hamilton Cty.*, 619 N.E.2d 2
(Ohio Ct. App. 1992) ...............................................................................................................29

*State of Sao Paulo of Fed. Rep. of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116
(Del. 2007) ...............................................................................................................................15

*State v. Frye*, No. 1-17-30,–2018-Ohio-894, 2018 WL 1256532
(Ohio Ct. App. Mar. 12, 2018)..................................................................................................37

*State v. Lead Indus. Ass'n*, 951 A.2d 428 (R.I. 2008) .....................................................25, 27, 28

*Sturm, Ruger & Co. v. City of Atlanta*, 560 S.E.2d 525 (Ga. Ct. App. 2002) ..............................23

*Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins.*, No. 16AP-742,
2017-Ohio-1461, 2017 WL 1407304 (Ohio Ct. App. Apr. 20, 2017) ......................................51

*Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743 (Ohio. Ct. App. 2016) ............................34

*Wallace v. Ohio Dep't of Commerce*, 773 N.E.2d 1018 (Ohio 2002) ...........................................42

*White v. Vrable*, No. 98AP-1351, 1999 WL 771053
(Ohio Ct. App. Sept. 30, 1999)................................................................................................48

*Williams v. Aetna Fin. Co.*, 700 N.E.2d 859 (Ohio 1998)......................................................52, 53

*Woodward Constr. Inc. v. FOR 1031 Summit Woods I, LLC*, 30 N.E.3d 237
(Ohio Ct. App. 2015) ...............................................................................................................53

## OTHER AUTHORITIES

21 C.F.R. § 1301.74(b) ...........................................................................................................5, 35

21 C.F.R. § 1303.11 .......................................................................................................................4

21 C.F.R. § 1303.21 .......................................................................................................................4

21 C.F.R. § 1306.04 ...................................................................................................................4, 5

18 U.S.C. § 1961................................................................................................................16, 18, 19

18 U.S.C. § 1962............................................................................................................................19

18 U.S.C. § 1964..............................................................................................................................8

21 U.S.C. § 355 ............................................................................................................4

21 U.S.C. §§ 801 .........................................................................................................36

21 U.S.C. § 822 ............................................................................................................5

21 U.S.C. § 823 ....................................................................................................18, 40

21 U.S.C. § 824 ............................................................................................................6

21 U.S.C. § 826 ............................................................................................................4

21 U.S.C. § 827 .....................................................................................................5, 40

21 U.S.C. § 829 ............................................................................................................4

21 U.S.C. § 843 ....................................................................................................18, 19

Donald G. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U.
    CIN. L. REV. 741, 800–01 (2003) ......................................................................21

Ohio Admin. Code 4729-9-16 ..............................................................................6, 35

Ohio Admin. Code 4731-11-02 ..................................................................................4

Ohio Admin. Code 4729-9-16 ...................................................................................45

Ohio Rev. Code § 1.51 ..............................................................................................31

Ohio Rev. Code § 2307.71 .............................................................22, 23, 33, 34, 41

Ohio Rev. Code § 2913.05 .........................................................................................19

Ohio Rev. Code § 2923.31 .........................................................................................19

Ohio Rev. Code § 2923.31 .........................................................................................19

Ohio Rev. Code § 2925.02 .........................................................................................40

Ohio Rev. Code § 3767.24 .........................................................................................32

Ohio Rev. Code § 4729.01………….....................................................................40, 45

Ohio Rev. Code § 4729.25 ...........................................................................36, 38, 45

Ohio Rev. Code § 4729.26 ...................................................................................37, 38

Ohio Rev. Code § 4729.35 ...................................................................................31, 32

Ohio Rev. Code § 4729.56 .....................................................................................6, 38

Ohio Rev. Code § 4729.63................................................................................37, 38

*Prosser and Keeton on the Law of Torts*, § 86 (W. Page Keeton ed., 5th ed. 1984).....................30

Restatement (Second) of Torts § 315............................................................................42

Restatement (Second) of Torts § 821B.........................................................................21, 27, 28

Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively, "Distributors") move to dismiss the Second Amended Complaint, dated May 18, 2018, and submit the following brief in support of the motion.[1]

## PRELIMINARY STATEMENT[2]

Unquestionably there is a public health crisis involving abuse of legal and illegal opioid drugs.  But the existence of a crisis does not create liability where none exists under the law, as this Court recognized in recent litigation involving the City of Cleveland.  *See City of Cleveland v. Ameriquest Mortg. Secs., Inc.* 621 F. Supp.2d 513 (N.D. Ohio 2009), *aff'd*, 615 F.3d 496 (6th Cir. 2010).  The economic events of 2007 and 2008—described as "the greatest financial crisis since the Great Depression"[3]—led to an "epidemic" of foreclosures across the City,[4] as "thousands of foreclosed homes in neighborhoods throughout Cleveland … became eyesores, fire hazards, and easy prey for looters and drug dealers in search of a place to conduct their business." [5]  The City alleged that these injuries were the "inevitable result" of the mortgage lending industry's subprime financing.[6]  The ingredients of this crisis, the City alleged, were a vulnerable population; a flooding of the market with a risky product; unscrupulous or negligent

---

[1]  Per Case Management Order Number Four [Dkt. 485], this motion is against the Second Amended Complaint ("Complaint"), but does not address any additional factual allegations about Distributors that were improperly included in, and should be removed from, the Second Amended Complaint.

[2]  This section contains both a summary of the argument and a statement of the issues presented, as required by Local Rule 7.1(f).  Unless otherwise noted, this Memorandum adds all emphasis in quotations and omits citations and internal quotation marks.

[3]  National Commission on the Causes of the Financial and Economic Crisis in the United States, *The Financial Crisis Inquiry Report* xv (2011).

[4]  621 F. Supp.2d at 516.

[5]  615 F.3d at 499.

[6]  *Id.*

intermediaries; a spike in defaults; and an industry that "turned a blind eye"[7] to the consequences of its actions.  Notwithstanding this crisis, Judge Lioi applied basic principles of nuisance law, proximate causation, derivative injury, and economic loss and dismissed the City's claims.  The Sixth Circuit affirmed.

The opioid litigation rests on analogous allegations:  a vulnerable population; "learned intermediaries" who mis-prescribed or over-prescribed an inherently dangerous medication; a "spike" in the amount of the medication allowed to be manufactured and then supplied and dispensed; an accompanying "epidemic" of addicted patients and cases of overdose; increased expenditures by the County and its municipalities; and the alleged turning of "a blind eye" by defendants to the increased demand for the medication.  As with the claims asserted by Cleveland against the mortgage industry, any connection between the harm alleged by the County and the conduct of Distributors—who neither market nor prescribe prescription drugs to patients—is too attenuated and indirect to state a claim under settled Sixth Circuit precedent. Plaintiffs' claims thus fail as a matter of law for this reason and others, including:

- **RICO/and the Ohio Corrupt Practices Act**:  Damages derived from personal injuries cannot support a racketeering claim; Plaintiffs did not suffer injury to "business and property"; and the Complaint does not allege predicate acts of "racketeering activity" or "corrupt activity," or adequately allege participation in an enterprise.

- **All common law claims**:  The Ohio Product Liability Act ("OPLA") abrogates product-related, common law claims, and the economic loss rule and statewide concern doctrines bar Plaintiffs' tort claims.

---

[7]    *Id.*

- **Public nuisance**:  The OPLA bars the public nuisance claims; Plaintiffs have not alleged interference with a "public right" (as distinguished from an aggregation of private rights not to be personally injured); and conduct that is extensively regulated at the federal and state level cannot be the subject of a public nuisance claim.

- **Negligence**:  The duty to monitor and report suspicious orders is a regulatory duty for which there is no private right of action and which is unknown at common law, and Distributors owed no duty to Plaintiffs.

- **Unjust enrichment**:  Plaintiffs did not confer any benefit on Distributors, who were not unjustly enriched by selling medications to their pharmacy customers at contracted prices.

- **Civil conspiracy**:  Plaintiffs have not pled with the requisite specificity.[8]

## BACKGROUND

This action was filed by Summit County and 23 Ohio municipal corporations (collectively, "Plaintiffs" or "the County") against (i) Distributors, (ii) several "National Retail Pharmacies," and (iii) the "Marketing Defendants," which are various entities that manufactured and promoted prescription opioid medications to doctors and patients.  Compl. ¶¶ 28–109, 116.

### A.    Regulatory Background

The manufacture, prescription, dispensing, and distribution of opioid medication is regulated extensively by multiple federal and state agencies:

---

[8]    Pursuant to Case Management Order One [Dkt. 232] Section 2.g, Distributors raise herein "only those issues they believe are most critical," and pursuant to Section 2.j, Distributors do not waive and hereby preserve any defenses not addressed herein and reserve their right "to file an individual motion to dismiss" at the appropriate time.  Distributors also hereby adopt, as if set forth herein, the arguments made in support of the separate motions to dismiss filed today by the manufacturing defendants and the retail pharmacy defendants.

*Manufacture*.  Under the federal Food, Drug, and Cosmetic Act, a prescription opioid may not be marketed or sold until the Food and Drug Administration has approved the drug as safe and effective for its intended use.  21 U.S.C. § 355(a), (d).  Once approved, if the drug is a schedule I or II controlled substance, the Attorney General is required to "establish production quotas … each calendar year to provide for the estimated medical, scientific, research, and industrial needs of the United States."  21 U.S.C. § 826(a); 21 C.F.R. §§ 1303.11, 1303.21; Compl. ¶ 507.

*Prescription*.  Under the CSA, "no controlled substance in schedule II [including prescription opioids] … may be dispensed without the written prescription of a practitioner."  21 U.S.C. § 829(a).  An opioid prescription "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  21 C.F.R. § 1306.04(a).  According to the Ohio Medical Board, a prescribing physician cannot prescribe a controlled substance "without taking into account the drug's potential for abuse, the possibility the drug may lead to dependence, the possibility the patient will obtain the drug for a nontherapeutic use or to distribute to others, and the possibility of an illicit market for the drug."  Ohio Admin. Code 4731-11-02(B).  "The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner …."  21 C.F.R. § 1306.04(a).

*Dispensing*.  Although the prescribing practitioner is responsible for the proper prescribing and dispensing of controlled substances, "a corresponding responsibility rests with the pharmacist who fills the prescription."  21 C.F.R. § 1306.04(a).  Prescriptions issued other than in the usual course of professional treatment are not considered legitimate prescriptions,

"and the person knowingly filling such a purported prescription … shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances." *Id.*

*Distribution*.  The Controlled Substances Act ("CSA") requires all wholesale distributors of controlled substances to obtain a registration from the DEA annually.  21 U.S.C. § 822.  In deciding whether to register an applicant, the DEA considers, among other things, whether the applicant maintains "effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels."  *Id.* § 823(b).  "Diversion" entails the "transfer of any legally prescribed controlled substance from the person for whom it was prescribed to another person for any illicit use."[9]

The CSA requires registered distributors to report to the Attorney General "every sale, delivery or other disposal" of prescription opioids.  21 U.S.C. § 827(d)(1).  These reports, which constitute the ARCOS data referenced in the Complaint, are available for review by DEA officials, and only the DEA has access to information regarding the total amount of prescription opioids that is reaching a given community.  According to DEA regulations, distributors "shall design and operate a system to disclose to the registrant suspicious orders of controlled substances" and "inform [the DEA] of suspicious orders when discovered by the registrant."  21 C.F.R. § 1301.74(b) (defining "suspicious orders" as "orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency").  Borrowing language from DEA regulations, the Ohio Board of Pharmacy ("BOP") imposes similar requirements on distributors to "maintain inventories and records of all transactions regarding the receipt and distribution or other disposition of dangerous drugs" and to "inform the state board of pharmacy

---

[9]  U.S. Dep't of Health & Human Servs., *Facing Addiction in America: The Surgeon General's Report on Alcohol, Drugs, and Health*, glossary at 2 (2016), https://addiction.surgeongeneral.gov/sites/default/files/surgeon-generals-report.pdf.

- 5 -

of suspicious orders for drugs when discovered."  Ohio Admin. Code 4729-9-16(H).
Distributors have no duty under the regulations to determine the legitimacy of opioid
prescriptions or to assess whether the total amount of prescription drugs entering the market as a
whole or any given community is "excessive."

Both the DEA and the BOP may "[s]uspend, revoke, limit, or refuse to grant or renew a
license" if registration is no longer in the public interest or if the registrant violates "any federal,
state, or local drug law."  Ohio Rev. Code § 4729.56(A); *see also* 21 U.S.C. § 824(d).  The full
weight of regulatory power to address the distribution of FDA approved medications and any
related public health decisions therefore rests at the federal and state, not local, level.

### B.     Plaintiffs' Claims

As the Complaint acknowledges, the role of Distributors is limited to the "wholesale
distribution" of medications.  Compl. ¶ 107.  Distributors "acquire pharmaceuticals, including
opioids, from manufacturers," *id.* ¶ 528, and ship them to pharmacies in response to orders.
Unlike the Marketing Defendants, who "advertise[], … [and] promote[]" prescription opioids, *id.*
¶ 63, Distributors do not market prescription drugs to patients.  And, unlike retail pharmacies,
Distributors are not involved in the "dispensing of prescription opioids" to patients based on
prescriptions by licensed physicians.  *Id.* ¶¶ 608, 612.

The vast majority of the Complaint is devoted to detailing a "sophisticated and deceptive
marketing strategy" on the part of the Marketing Defendants, which allegedly made
"misrepresentations about the risks and benefits of opioids."  Compl. ¶¶ 174–75; *see, e.g.*, *id.*
¶¶ 146–497.  Tellingly, however, the County does not allege that ***Distributors*** made any such
misrepresentations to doctors or the public—nor could they.  Indeed, the Complaint fails to
identify with specificity even a single misrepresentation made by any Distributor whatsoever.

Nonetheless, the Complaint asserts in conclusory fashion that Distributors engaged in a scheme to commit criminal mail and wire fraud in violation of RICO and its Ohio-law analogue, among other claims.

## LEGAL STANDARD

The Court should grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where "a litigant" fails to "allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). Mere "'conclusory statements'" or "'naked assertions devoid of further factual enhancement'" do not meet this standard, *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 932 (6th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), nor do "legal conclusions masquerading as factual allegations," *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 435 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 69 (2017).

For claims sounding in fraud, the burden is higher. To meet Rule 9(b)'s particularity requirement for pleading fraud, a plaintiff must allege "the time, place, and content of the alleged misrepresentation." *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017).

## ARGUMENT

## I. THE COUNTY'S RICO AND OCPA CLAIMS SHOULD BE DISMISSED.

Civil RICO claims are "the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F. 3d 1229 (2d Cir. 1997) (unpublished). Considerations of fairness therefore require that courts "strive to flush out frivolous RICO allegations at an early stage." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

Summit County fails to plead a valid RICO claim against Distributors for at least four separate reasons.  First, the Complaint fails to allege that the County suffered an injury to its "business or property."  Second, the County fails to allege that it suffered a "direct" injury by reason of Distributors' alleged conduct.  Third, the Complaint fails properly to allege that Distributors committed two or more predicate acts of "racketeering activity."  Finally, Plaintiffs fail to allege that Distributors directed the affairs of a purported RICO enterprise.

For many of the same reasons, the County's claim under Ohio's RICO analogue—the Ohio Corrupt Practices Act ("OCPA")—likewise fails as a matter of law.

## A.    The County Fails To Allege an Injury to Business or Property.

A RICO plaintiff must allege that it was "'injured in [its] business or property' … to state a claim for a civil RICO damages action."  *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc) (quoting 18 U.S.C. § 1964(c)).  The County fails to allege an injury to "business or property" for two reasons.  First, the injuries claimed by the County are monetary damages arising from ***personal*** injuries—a class of injuries not actionable under RICO.  Second, spending by municipalities in their governmental capacities on items such as health care or law enforcement is not an injury to "business or property" within the meaning of RICO.

### 1.    The damages identified in the Complaint arise from personal injuries, not injuries to business or property.

RICO creates a cause of action only for injury to "business or property."  18 U.S.C. § 1964(c).  "[C]ourts construing this language" unanimously hold that "'[t]he terms 'business or property' are … words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom."  *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992).

- 8 -

The Sixth Circuit's en banc decision in *Jackson* embraced this principle and is controlling. There, the plaintiffs alleged that defendants were participants in a scheme to deny workers' compensation benefits to employees who suffered on-the-job injuries. *Jackson*, 731 F.3d at 565. The Court rejected the argument that the plaintiffs' economic injuries, i.e., the loss of workers' compensation benefits, constituted an injury to "business or property," holding that "both personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under [RICO]." *Id.* at 565–66. Because the plaintiffs' pecuniary losses were "a consequence of their personal injuries," those losses did not give plaintiffs a basis to sue under RICO. *Id.* at 566.

*Jackson* compels the same result here: The County's claimed damages flow from the alleged personal injuries of County residents. But for those residents' use or misuse of prescription opioids, the County would not suffer the increased health care, law enforcement, or other expenses that constitute its claimed injuries, *see* Compl. ¶ 934. Under established law, because such damages "flow from" personal injuries, they are not injuries to "business or property" for purposes of RICO. *Id.*; *see, e.g.*, *Haw. Health & Welfare Tr. Fund for Operating Eng'rs v. Philip Morris, Inc.*, 52 F. Supp. 2d 1196, 1200 (D. Haw. 1999) (increased costs to third-party payors arising out of their members' tobacco use was not an injury to "business or property" because "the injury is, in all material respects, personal injury to the smokers"); *accord Gucwa v. Lawley*, --- Fed.Appx. ----, 2018 WL 1791994, at *3 (6th Cir. Apr. 16, 2018) ("Even though personal injuries may lead to monetary damages, such personal injuries and their associated pecuniary losses—including medical expenses—do not confer relief under § 1964(c)).

### 2. Public expenditures by local governments are not injuries to business or property.

The County fails to allege an injury to business or property for a second reason:  injuries sustained by municipalities in performing government functions do not constitute injuries to business or property under RICO.

"When a government sues under the civil RICO statute, the 'business or property' element requires that the injury 'refer to *commercial* interests or enterprises.'"  *Welborn v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383, 387 (5th Cir. 2014) (per curiam) (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264 (1972)).  When the government acts in its sovereign capacity, it lacks standing to sue under RICO.  Thus, a "government cannot claim damages for general injury to the economy or 'to the Government's ability to carry out its functions.'"  *Id.*  In other words, a municipality's alleged injury must arise from "commercial activity," not "the provision of a public service."  *Id.*

*Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008), is instructive. There, a county alleged an illegal scheme of hiring undocumented workers and asserted as a RICO injury "additional monies … expended on public health care and law enforcement services for [those] undocumented immigrants."  *Id.* at 971.  The Ninth Circuit rejected that assertion, explaining that when "a governmental body acts in its sovereign or quasi-sovereign capacity, seeking to enforce the laws or promote the public well-being, it cannot claim to have been 'injured in [its] … property' for RICO purposes.'"  *Id.* at 976 (alterations in original).

The reasoning of these cases applies with full force here.  Summit County's claimed injuries are identical to those alleged in *Canyon County*—increased healthcare and law enforcement costs.  519 F.3d at 971.  These alleged injuries do not arise from the County's participation in a market or commercial transaction, but from the performance of essential

governmental functions.  As in *Canyon County*, the gist of the County's Complaint is that it was forced to "spend money" on providing additional public services as a result of Defendants' alleged misconduct.  *Id.* at 975.  Thus, like Canyon County, Summit County "may not claim th[os]e costs as damages to its property for purposes of civil RICO standing."  *Id.* at 979. "[T]he very nature of the City's claim—which seeks relief for an alleged ***public*** nuisance—betrays any contention that its lawsuit is aimed at vindicating the City's private interests …."  *Ameriquest Mortg. Secs., Inc.*, 621 F. Supp. 2d at 519 (emphasis in original).

**B.      The County Fails To Allege a Direct Injury.**

The County also does not plead that the alleged conduct of Distributors was a ***direct*** cause of its purported injuries—nor could it.  Under established precedent, that failure forecloses its RICO and OCPA claims.

Under a line of Supreme Court cases beginning with *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), a plaintiff must allege that "a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'"  *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 268).  Thus, a plaintiff must allege a "'direct relation between the injury asserted and the injurious conduct alleged.'"  *Id.* (quoting *Holmes*, 503 U.S. at 268).  "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Id.* (alteration in original) (quoting *Holmes*, 503 U.S. at 271, 274).  Theories of causation cannot "go ***beyond the first step***."  *Hemi*, 559 U.S. at 10–11.  The *Holmes* "direct relation" test for proximate causation applies equally to claims under Ohio law, including the OCPA.  *See, e.g.*, *City of Cleveland v. JP Morgan Chase Bank, N.A.*, No. 98656, 2013-Ohio-1035, ¶ 18, 2013 WL 1183332, at *5 (Ohio Ct. App. 2013) ("The same proximate cause requirements … apply to both [RICO and OCPA] causes of action."); *see also infra* pp. 45–49.

The County does not allege the required "direct causal connection" between Distributors' purported predicate acts and the County's claimed injury.  *Hemi*, 559 U.S. at 17–18.  The County's damages allegedly consist of healthcare costs, emergency response costs, and lost tax revenue.  Compl. ¶ 934.  But the Complaint contains no allegations suggesting that Distributors' alleged predicate acts (i.e., purported failures of reporting to state and federal regulators) were the ***direct*** cause of the County's harm—nor could it.  The County's claims thus seek impermissibly to go "beyond the first step" of causation.  *Hemi*, 559 U.S. at 10.

*Hemi* illustrates the point.  There, New York City sued an out-of-state tobacco seller for fraudulently failing to submit customer information to the State (with which the City had an information-sharing agreement), which resulted in "lost tax revenue" to the City by hindering its ability to track down customers who unlawfully failed to pay sales tax.  *Id.*  The Supreme Court held that the City's "causal theory" was too "attenuated" both because "the conduct constituting the alleged fraud" was the failure to file accurate reports with the State, not the City, and because "the conduct directly responsible for the City's harm was the customers' failure to pay their taxes," not the retailer's failure to report its cigarette sales to the State.  *Id.* at 9, 11.  The Court had little trouble concluding that "the disconnect between the asserted injury and the alleged fraud" was too great to satisfy RICO's directness requirement.  *Id.* at 11.

The disconnect between Distributors' alleged wrongful conduct and the County's asserted injury is at least as great.  As in *Hemi*, the County's theory is based on an alleged failure to report certain information (suspicious pharmacy orders) to different governmental entities (the DEA and/or BOP).  But just as the tobacco seller's duty to report ran to the State of New York, not New York City (the plaintiff), in *Hemi*, so Distributors' alleged reporting duties run to the DEA and the BOP, not the County.  *See id.* (declining to "extend RICO liability to situations

where the defendant's fraud on [a] third party … has made it easier for a fourth party … to cause harm to the plaintiff" (emphasis omitted)).  Also as in *Hemi*, "the conduct directly responsible for the [County's] harm" was the behavior of the County residents who misused opioid medications, not Distributors' alleged failure to report suspicious pharmacy orders.  *Id.*  That failure cannot be said to affect the County in the first instance, but only after many intervening actors and events—including in every case (i) a prescribing doctor's decision regarding a patient's treatment, (ii) a pharmacist's decision whether to dispense a prescription, and (iii) a patient's or another's decision to misuse or divert a prescribed medication—that "move well beyond the first step."  *Id.* at 10.  That these intervening steps almost invariably involve illegal conduct—such as a doctor's prescribing of opioid medications without a legitimate medical basis or a patient's diversion of prescription medications to another—further demonstrates the ***indirect*** nature of the County's alleged injuries.[10]

The Sixth Circuit's decision in *City of Cleveland v. Ameriquest Mortgage Securities* underscores this conclusion.  There, the City alleged that the defendants' financing of subprime loans led to a foreclosure crisis, which in turn led to "increased expenditures for fire and police protection and maintenance and demolition costs."  615 F.3d at 499.  The Sixth Circuit held that the complaint failed the *Holmes* direct injury test in part because "there is another set of independent actors between the alleged misconduct and the alleged injury."  *Id.* at 505.

---

[10]  *Hemi Grp. LLC v. City of N.Y.*, 559 U.S. at 1, 11 (2010) (directness requirement not satisfied where alleged injury was contingent on non-parties' decisions "not to pay taxes they were legally obligated to pay"); *see James v. Meow Media, Inc.,* 90 F. Supp. 2d 798, 818 (W.D. Ky. 2000) (dismissing RICO claim where criminal's "intervening acts served as a superseding cause which broke the required causal connection needed … to establish civil RICO liability"), *aff'd*, 300 F.3d 683 (6th Cir. 2002); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1136 (Ill. 2004) ("[D]efendants' lawful commercial activity, having been followed by harm to person and property caused directly and principally by the criminal activity of intervening third parties, may not be considered a proximate cause of such harm.").

- 13 -

That reasoning applies here with equal force.  Like the defendants in *Ameriquest*—who "did not directly make subprime loans to the homeowners of Cleveland," but securitized the loans for sale to investors, *id.*—Distributors do not directly make opioid medications available to Summit County residents.  Without both a doctor who decided to prescribe the medications and a pharmacist who decided to dispense them, the medications supplied to pharmacies by Distributors would have remained on the shelf, reaching no patient.  And, but for the misuse or diversion of the medications by patients or others, there would be no cognizable harm—only the intended use of a lawfully prescribed medicine.  Thus, even more so than in *Ameriquest*, "the connection between the alleged harm and [Distributors'] alleged misconduct is too indirect to warrant recovery."  *See id.* at 506; *accord JP Morgan*, 2013 WL 1183332, at *4 (affirming dismissal of OCPA claim where "there [we]re several intervening factors necessary for the harm suffered by the City to materialize"); *Robinson v. Vehicle Acceptance Corp.*, 2017-Ohio-6886, ¶ 21, 2017 WL 3084579, at *4 (Ohio Ct. App. July 20, 2017) (dismissing fraud claim where injury was "caused solely" by intervening unlawful act of third party).

Dismissal is also warranted because the County's claims suffer from the same defect that led to the rejection of RICO claims by third-party payors in the tobacco cases.[11]  Courts in those cases, including the Sixth Circuit, "unanimously" invoked the *Holmes* rationale to reject claims seeking to recover monies that plaintiffs had expended on the smoking-related healthcare costs

---

[11] *See, e.g.*, *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696 (9th Cir. 2001) (dismissing RICO claim); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000) (same); *Lyons v. Philip Morris Inc.*, 225 F.3d 909 (8th Cir. 2000) (same); *Tex. Carpenters Health Benefit Fund v. Philip Morris Inc.*, 199 F.3d 788 (5th Cir. 2000) (same); *Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999) (same); *Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999) (same); *Or. Laborers-Emp'rs Health & Welfare Tr.Fund v. Philip Morris Inc.*, 185 F.3d 957 (9th Cir. 1999) (same); *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999) (same).

of their citizens, members, and insureds.[12]   As these many decisions recognize, the harms claimed by the third party payors "are entirely derivative"—that is, "[w]ithout injury to the individual smokers, the [plaintiffs] would not have incurred any increased costs." *Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999).  Because the plaintiffs' harms are "contingent on harm to third parties," these cases unanimously conclude that "[the] defendants' alleged misconduct did not proximately cause the injuries alleged." *Id.*

The County's alleged injuries are also derivative:  "Without injury to the individual [opioid users], the [County] would not have incurred any increased costs." *Id.*  Thus, any claims belong to those immediately injured parties, not the County.  *See, e.g.*, *Ameriquest Mortg. Secs., Inc.*, 615 F.3d at 506 (directness requirement not satisfied where "more immediate victims can sue"); *Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 890–91 (6th Cir. 2000) (plaintiff who suffered injuries derivative of those realized by intermediate parties had no standing to sue under RICO); *see also Holmes*, 503 U.S. at 269–70 ("directly injured victims can generally be counted on to vindicate the law … without any of the problems attendant upon suits by plaintiffs injured more remotely"); *Slay's Restoration LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018) (dismissing subcontractor's RICO claim alleging that insurance companies fraudulently paid too little to insured because, "even though [plaintiff] alleged that the

---

[12]   *State of Sao Paulo of Fed. Rep. of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116, 1125 (Del. 2007) ("Multitudinous other state and federal appellate courts have unanimously invoked the same rationale in eighteen separate opinions, all holding that third-party payors or providers of medical services … have no cognizable claims … to recover medical expenses from the tobacco companies…."); *see, e.g.*, *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 849 (6th Cir. 2003) (affirming dismissal of RICO claim "because the alleged injuries [we]re too remote" from the conduct of the tobacco company defendants); *County of Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039, 1043 (Ill. App. Ct. 2004) (applying "direct injury test" to affirm dismissal of claims by county seeking to recover increased health care costs).

defendants' fraudulent conduct was the ***cause*** of its injury, it did so by describing a chain of causation that extends significantly beyond 'the first step' ….").

For all these reasons, the remote and derivative injuries alleged in the Complaint fail to satisfy the direct injury requirement applicable to the County's RICO and OCPA claims.

### C.    The County Fails To Allege "Racketeering Activity" or "Corrupt Activity."

### 1.    The Complaint does not allege "racketeering activity."

The RICO claim should be dismissed because the Complaint fails adequately to allege that any Distributor committed two or more predicate acts of "'racketeering activity.'"  *See* 18 U.S.C. § 1961(1), (5).

**Mail and Wire Fraud**.  The principal RICO predicate acts alleged in the Complaint are mail and wire fraud.  *See, e.g.*, Compl. ¶¶ 911, 962.  Under established law, "predicate acts of mail or wire fraud must be pled with particularity pursuant to Rule 9(b)."  *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 804 n.5 (6th Cir. 2015).  Because the Complaint does not satisfy this requirement, the mail and wire fraud allegations fail as a matter of law.

To plead RICO predicate acts of mail or wire fraud with sufficient particularity, "a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012); *see also Aaron v. Durrani*, No. 1:13-CV-202, 2014 WL 996471, at *6 (S.D. Ohio Mar. 13, 2014).  Notwithstanding the "jumble of details" provided by the County, its 1137-paragraph Complaint fails to identify even "a single, discrete instance of fraud" allegedly committed by Distributors.  *Am. BioCare Inc. v. Howard & Howard Att'ys PLLC*, 702 F. App'x 416, 422 (6th Cir. 2017).  Nowhere, for instance, does the Complaint identify by date, speaker,

or content even one alleged predicate act, as Rule 9(b) requires.[13]  The Complaint, moreover, fails to attribute any of the alleged predicate acts to any specific Distributor, instead resorting entirely to impermissible "group pleading."[14]  Under settled law, the County's generic and undifferentiated allegations of mail and wire fraud are insufficient.

The allegations are also insufficient because the mail and wire fraud statutes only "punish[] one kind of scheme—schemes intended 'to deprive [people] of their money or property.'"  *United States v. Sadler*, 750 F.3d 585, 590 (6th Cir. 2014) (second alteration in original) (quoting *Cleveland v. United States*, 531 U.S. 12, 18–19 (2000)); *accord United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (explaining that wire fraud requires "intent to deprive a victim of money or property"); *United States v. Prince*, 214 F.3d 740, 748 (6th Cir. 2000) (same).  The Complaint contains no well-pled factual allegation that any Distributor used the mail or wires to deprive someone of money or property—let alone does it identify such person or entity.  For this reason, too, the County has failed to allege predicate acts of mail or wire fraud.

---

[13]  *See, e.g.*, *Heinrich*, 668 F.3d at 404 (dismissing complaint for failure to identify fraudulent statement or indicate "where and when the [fraudulent] statements were made"); *Prater v. Livingston Ave. Child Care, LLC*, No. 2:14-CV-490, 2015 WL 1439322, at *5 (S.D. Ohio Mar. 27, 2015) (same); *Arnold v. Alphatec Spine, Inc.*, No. 1:13-cv-714, 2014 WL 2896838, at *12 (S.D. Ohio June 26, 2014) (same); *Hot-Shot Motorworks v. Falicon Crankshaft Components*, No. 3:13-cv-1322, 2014 WL 346435, at *5 (N.D. Ohio Jan. 30, 2014) (dismissing complaint for failure to indicate "who made the allegedly false statements" or where and when they were made (emphasis omitted)).

[14]  *D.E. & J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir. 2005).  Group pleading "fails to meet … [Rule] 9(b)'s specificity requirements."  *Id.*; *see also Jiaxi Hu v. Chan*, No. 1:15-CV-709, 2016 WL 4269065, at *6 (S.D. Ohio Aug. 15, 2016) ("Plaintiffs cannot meet their burden under Rule 9(b) by relying, as they do, on group pleading."); *Arnold v. Alphatec Spine, Inc.*, No. 1:13-CV-714, 2014 WL 2896838, at *4 (S.D. Ohio June 26, 2014) ("Plaintiffs' reference to 'Defendants' collectively fails to specify the conduct attributable to each party and is, therefore, insufficient to meet Rule 8's notice requirement.").

**Controlled Substances Act Violations**.  The County's allegation that Distributors violated 21 U.S.C. § 843(a)(4), a provision of the Controlled Substances Act ("CSA"), *see* Compl. ¶¶ 914, 917, is likewise unavailing because the alleged CSA violations are not actionable under RICO.[15]

According to the County, Distributors violated Section 843(a)(4), which makes it unlawful to "furnish false or fraudulent material information in, or omit any material information from, any application, report, record, or other document required to be made, kept, or filed" under the statute.  21 U.S.C. § 843(a)(4).  As a matter of law, that allegation cannot support a RICO claim because a violation of Section 843(a)(4) is not a RICO predicate act of "racketeering activity."

RICO's list of predicate acts does not include all federal offenses involving controlled substances but is instead limited to offenses involving "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance." 18 U.S.C. § 1961(1)(D).  Violations of Section 843(a)(4) do not fall within that language because they consist only of "furnish[ing]" false information in, or "omit[ting]" material information from, certain "report[s]" or "record[s]"—not "buying, selling, or otherwise dealing" in controlled substances.  21 U.S.C. § 843(a)(4).  Any decision to the contrary would improperly "permit Plaintiffs to use RICO as a vehicle to enforce" the CSA, which has no private right of action. *See In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290 (C.D. Cal. 2008) (stating that "FDCA provides no private right of action for violations

---

[15]  Although the Complaint refers to "violations" of 21 U.S.C. § 823 as predicate acts, *see* Compl. ¶ 917, this appears to be a typographical error.  Section 823 contains only registration procedures for manufacturers and distributors, not prohibitions on the conduct of such entities.

- 18 -

thereof, and what the FDCA does not create directly, RICO cannot create indirectly"); *see also infra* Part III.B.1.

In short, because a violation of Section 843(a)(4) falls outside Section 1961(1)(D), the County's allegation that Distributors violated Section 843(a)(4) does not satisfy the essential RICO element of "a pattern of racketeering activity." 18 U.S.C. § 1962.

### 2. The Complaint does not allege "corrupt activity."

The County's allegations of mail fraud, wire fraud, and CSA violations also fail to support a claim under the OCPA for the reasons explained above. *See supra* pp. 16–18; *see also Bird v. Delacruz*, 411 F. Supp. 2d 891, 895 (S.D. Ohio 2005) (applying Rule 9(b) to OCPA claims based on mail and wire fraud). As an additional predicate act—or, in the parlance of the OCPA, "corrupt activity"[16]—the County alleges that Distributors engaged in "[t]elecommunications fraud" in violation of Ohio Revised Code Section 2913.05. Compl. ¶ 955. That allegation cannot save the OCPA claim for three reasons.

First, the failure to satisfy the *Holmes* direct injury test is dispositive. Even if the County had properly alleged telecommunications fraud (it has not), the OCPA claim would fail because the Complaint does not allege a direct relation between Distributors' purported conduct and the County's claimed injury. *See supra* pp. 11–16.

Second, like allegations of mail and wire fraud, telecommunications fraud must be pled with particularity under Rule 9(b). *See Cap City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at *9 (S.D. Ohio Sept. 1, 2016); *W. & S. Life Ins. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 915 (S.D. Ohio 2014). As explained above, the County's generic

---

[16] A "corrupt activity," for purposes of the OCPA, can be either a RICO predicate act, *see* Ohio Rev. Code § 2923.31(I)(1), or the violation of a statute enumerated in Ohio Revised Code Section 2923.31(I)(2).

allegations of fraud by Distributors—whether labeled as mail fraud, wire fraud, or telecommunications fraud, s*ee* Compl. ¶¶ 962–963—demonstrably fail to meet this requirement. *See supra* pp. 16–18.

Third, Ohio law requires that a plaintiff plead at least one "corrupt activity" that could not be pled as mail or wire fraud. *W. & S. Life Ins.*, 54 F. Supp. 3d at 915. To satisfy this requirement, pleading a violation of a different statute is not enough—"the Plaintiff must be able to point to an incident of corrupt activity that is not actionable under laws which prohibit mail fraud [or] wire fraud." *Rahimi v. St. Elizabeth Med. Ctr.*, No. C3-96-126, 1997 WL 33426269, at *2 n.1 (S.D. Ohio July 16, 1997). While the Complaint invokes Ohio's prohibition on telecommunications fraud, the gravamen of the County's factual allegations—i.e., that Distributors failed to make reports to regulators—could (if otherwise properly pled) potentially be pled as mail or wire fraud. Thus, the Complaint fails to plead as "corrupt activities" at least one offense that is not chargeable as mail or wire fraud, as required under the OCPA.

### D. The County Fails To Allege Participation in an Enterprise.

The County's RICO and OCPA claims also should be dismissed because the Complaint does not adequately allege that Distributors conducted or participated in an enterprise within the meaning of RICO and the OCPA. To state a RICO claim, the plaintiff must plausibly allege that each defendant had "'some part in *directing* the enterprise's affairs.'" *United States v. Fowler*, 535 F.3d 408, 419 (6th Cir. 2008) (emphasis omitted) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). The OCPA likewise requires well-pleaded factual allegations that the defendant either "conduct[ed]" or "participate[d] in the affairs of the enterprise." *Bradley v. Miller*, 96 F. Supp. 3d 753, 773 (S.D. Ohio 2015), and such facts must be pleaded with specificity, *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 913 (S.D. Ohio 2013).

The County fails adequately to plead any facts showing that Distributors directed the affairs of the so-called Opioid Supply Chain Enterprise.  To be sure, the County alleges in conclusory terms that the Defendants "worked together" and "collectively sought to undermine the impact" of CSA regulations by "disregard[ing] their statutory duties to identify, investigate, halt and report suspicious orders."  Compl. ¶¶ 849, 853, 854.  The Complaint, however, is entirely devoid of well-pled factual allegations relating to the conduct of each Distributor that, if true, would support the bare assertion that Distributors "ma[de] decisions on behalf of" an association-in-fact enterprise or "knowingly carr[ied] them out."  *Fowler*, 535 F.3d at 418.  Instead, it relies on commonplace facts such as Defendants' memberships in trade organizations, their contractual relationships with one another, and their parallel conduct to insinuate that each Defendant must have participated in the operation or management of the enterprise.  But it is well established that such "routine business relationships, without more, are insufficient to establish a RICO claim."  *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 653 (N.D. Ohio 2012) (Polster, J.) (collecting cases).[17]

## II.  THE COUNTY'S PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED.

For nearly 900 years, public nuisance law almost exclusively protected rights connected to public property.  Restatement (Second) of Torts § 821B cmts. a, b (Am. Law Inst. 1979); Donald G. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. CIN. L. REV. 741, 800–01 (2003).  When, in the twentieth century, litigants attempted for the first time to stretch

---

[17] *See also, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (allegations of "parallel conduct" and "conclusory allegation[s] of agreement" are insufficient absent "some further factual enhancement"); *Bonadio v. PHH Mortg. Corp.*, No. 12 CV 3421, 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014) (dismissing RICO claim where plaintiff's "only factual allegations relating to the enterprise are that its members had ongoing business relationships"); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1092 (N.D. Cal. 2006) (enterprise allegations insufficient where based "upon the existence of routine contractual relationships").

this narrow doctrine to cover the manufacture and distribution of products, most courts rejected the attempt, discerning an invitation "to do what the elected representatives of the people have not done" and eschewing the "judicial regulation of the processes, products and volume of business of … major industries." *Diamond v. Gen. Motors Corp.*, 97 Cal. Rptr. 639, 645–46 (Cal. Ct. App. 1971); *see also City of Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp.2d 882, 910 (E.D. Pa. 2000) ("The refusal of many courts to expand public nuisance law to the manufacturing, marketing, and distribution of products conforms with the elements of public nuisance law."), *aff'd*, 277 F.3d 415 (3d Cir. 2002).

In 2002, a sharply-divided Ohio Supreme Court departed from the majority position, ruling in *City of Cincinnati v. Beretta U.S.A. Corp.* that a public nuisance claim against gun manufacturers and distributors should survive a motion to dismiss. 768 N.E.2d 1136, 1143–44 (Ohio 2002). In response, the General Assembly amended the Ohio Product Liability Act ("OPLA") to abrogate products-based public nuisance claims. *See* Ohio Rev. Code § 2307.71(A)(13). That legislative enactment controls this case and requires dismissal of Plaintiffs' product-based public nuisance claims (Counts V and VI).

### A. The OPLA Abrogates Plaintiffs' Public Nuisance Claims.

Plaintiffs' common law and statutory public nuisance claims are conventional products liability claims under the OPLA. They concern (i) a pharmaceutical product that is (ii) dangerous when misused and (iii) alleged wrongdoing in connection with the "marketing, distribution, promotion [and] advertising" of the product. Ohio Rev. Code § 2307.71(A)(13); *see, e.g.*, Compl. ¶¶ 2–11, 14, 63, 107, 495–500, 671, 715. Plaintiffs' public nuisance claims therefore should be dismissed as abrogated by the OPLA.

In 2005, the Ohio General Assembly amended the OPLA to abrogate all common law product liability claims. Ohio Rev. Code § 2307.71(B); *Greenway v. Kimberly-Clark Corp.*, No.

1:15-cv-1720, 2016 WL 3460229, at *2 (N.D. Ohio June 24, 2016).  Two years later, the General

Assembly amended the OPLA again, this time to clarify that all products-based public nuisance

claims were, in fact, abrogated:

> "Product liability claim" also includes *any public nuisance claim* or cause of
> action at common law in which it is alleged that the design, manufacture, supply,
> marketing, *distribution*, promotion, advertising, labeling, or sale of a product
> unreasonably interferes with a right common to the general public.

Ohio Rev. Code § 2307.71(A)(13).  With this enactment, the General Assembly effectively

overruled *Beretta*, and Ohio joined the many states across the country that refuse to recognize

product-based public nuisance claims.  *See Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984

F.2d 915, 921 (8th Cir. 1993) (if law recognized products-based nuisance claims, "[n]uisance …

would become a monster that would devour in one gulp the entire law of tort"); *Detroit Bd. of

Education v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992) (concluding that

allowing product-based nuisance claim "would significantly expand, with unpredictable

consequences, the remedies already available to persons injured by products").

The circumstances of the amendment's passage underscore the General Assembly's clear

intent to bar product-based public nuisance claims.  Four years earlier, in *City of Cincinnati v.

Beretta U.S.A. Corp.*, the Ohio Supreme Court had departed from the majority of jurisdictions

that dismissed similar claims.[18]  It did so over the dissenters' warning that "allow[ing] the

---

[18]  *Camden Cty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 273 F.3d 536, 540–41 (3d
Cir. 2001) (per curiam); *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir.
2002); *Dist. of Columbia v. Beretta U.S.A. Corp.*, 872 A.2d 633, 650–51 (D.C. 2005); *City of
Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004); *Ganim v. Smith &
Wesson Corp.*, 780 A.2d 98, 132 (Conn. 2001); *In re Firearm Cases*, 24 Cal. Rptr. 3d 659,
579–82 (Cal. Ct. App. 2005); *Sturm, Ruger & Co. v. City of Atlanta*, 560 S.E.2d 525, 532
(Ga. Ct. App. 2002); *Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042, 1045 (Fla. Dist. Ct. App.
2001); *People ex rel. Spitzer v. Sturm, Ruger, & Co.*, 761 N.Y.S.2d 192, 196 (App. Div.
2003); *City of St. Louis v. Cernicek*, No. 02CC-1299, 2003 WL 22533578, at *2 (Mo. Cir. Ct.
Oct. 15, 2003), *aff'd* 145 S.W.3d 37 (Mo. Ct. App. 2004); *Sills v. Smith & Wesson Corp.*, No.
99C-09-283, 2000 WL 33113806, at *7 (Del. Super. Ct. Dec. 1, 2000).

public-nuisance doctrine to reach the defendants in this case amounts to an unwarranted legislative judgment." 768 N.E.2d at 1157 (Cook, J., dissenting). After *Beretta* was decided, the City of Toledo sued several paint manufacturers and, relying on *Beretta*, alleged that lead-based paint was a public nuisance that entitled it to recoup increased healthcare and abatement costs. *City of Toledo v. Sherwin-Williams Co.*, No. CI 200606040, 2007 WL 4965044 (Ohio Ct. Com. Pl. Dec. 12, 2007). In the midst of that litigation, the General Assembly amended the OPLA to abrogate all product-based public nuisance litigation, employing clear language as expansive as *Beretta*, only in precisely the opposite direction.

Once the amendment passed, the Ohio Court of Common Pleas presiding over Toledo's lead-paint claims dismissed the lawsuit and rejected Toledo's argument that *Beretta* controlled. Observing that the amended OPLA "expressly encompasses public nuisance claims within the product liability statute," the court concluded that "public nuisance actions such as Plaintiff's sub judice were intended to be abrogated by the OPLA." *Id.* at *5. In reaching this conclusion, the court specifically rejected Toledo's argument that "authority allowing it to bring a public nuisance [claim] … is found in [*Beretta*]." *Id.* at *5 n.2. The court explained that "*Beretta* was decided and written prior to the enactment of" the OPLA amendments. *Id.* Later, other cities that had filed similar actions voluntarily dismissed their suits.[19] The Attorney General dropped the State of Ohio's lawsuit as well, stating that although "exposure to lead paint is a very real problem … I also know that not every problem can be solved by a lawsuit."[20] Since the statutory amendments, no other similar public nuisance claims have proceeded under Ohio law.

---

[19]  *See* "Lead-paint ruling might undercut Ohio lawsuits," The Columbus Dispatch (July 2, 2008), http://www.dispatch.com/article/20080702/news/307029812.

[20]  *See* "State dismisses lead-paint lawsuit," The Columbus Dispatch (Feb. 7, 2009), http://www.dispatch.com/content/stories/local/2009/02/07/lead.html.

Like most other jurisdictions to consider it, Ohio now recognizes the risk that an expansive conception of public nuisance law—one that extends public nuisance principles to product-based claims—could displace product liability law, and OPLA accomplishes through legislation what has been done elsewhere through the courts.  Courts across the country have resisted efforts of creative plaintiffs to cut the moorings that connect public nuisance law to misuse of, or interference with, property and to circumvent traditional tort and products liability claims.  The Rhode Island Supreme Court observed that "[t]he law of public nuisance never before has been applied to products, however harmful."  *State v. Lead Indus. Ass'n*, 951 A.2d 428, 456 (R.I. 2008).  The same is true in Delaware.  *Sills v. Smith & Wesson Corp.*, No. 99C-09-283, 2000 WL 33113806, at *7 (Del. Super. Ct.) ("Delaware has yet to recognize a cause of action for public nuisance based upon products.").  The New Jersey Supreme Court, in rejecting public nuisance claims against lead paint manufacturers, refused "to permit these plaintiffs to supplant an ordinary product liability claim with a separate cause of action as to which there are apparently no bounds."  *In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007).  Similarly, the Illinois Supreme Court was "reluctant" to countenance a cause of action "so broad and undefined that the presence of any potentially dangerous instrumentality in the community could be deemed to threaten it."  *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004).[21]

---

[21]  *See also Dist. of Columbia*, 872 A.2d at 650–51 (declining to adopt a right of action for public nuisance applied to the manufacture and sale of guns generally, "where an effect may be a proliferation of lawsuits not merely against these defendants but against other types of commercial enterprises … in order to address a myriad of societal problems" (alterations omitted)); *Sturm, Ruger & Co.*, 761 N.Y.S.2d at 196 ("[G]iving a green light to a common-law public nuisance cause of action today will … likely open the courthouse doors to a flood of limitless, similar theories of public nuisance … against a wide and varied array of other commercial and manufacturing enterprises and activities"); *id.* ("All a creative mind would need to do is construct a scenario describing a known or perceived harm of a sort that can

The General Assembly's decision to overrule *Beretta* and abrogate product-based public nuisance claims aligns Ohio law with the overwhelming majority position and requires dismissal of the County's nuisance claims.

**B.    Plaintiffs Fail To State a Common Law Absolute Public Nuisance Claim.**

Even if the OPLA did not abrogate the County's nuisance claims, the County's claims fail.

### 1.    Plaintiffs failed to allege a public right with which Distributors interfered.

Ohio, like almost every jurisdiction, requires that a ***public*** nuisance claim involve invasion of a ***public*** right.  That is a defining element of a public nuisance claim, setting it apart from a private nuisance.  *Brown v. Cty. Comm'rs of Scioto Cty.*, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993) ("[T]here must be some interference with a public right which is common to all members of the general public.").  The test for what counts as a public right is not the number of persons affected by the conduct.  "Conduct does not become a public nuisance merely because it interferes with a large number of people."  *Id.*; *see also Kramer v. Angel's Path, LLC*, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007) ("A public nuisance will not arise because a large number of people are affected; rather, it arises only when a public right has been affected.").  Rather, a public right is a right that is shared equally by all members of the public, like access to air, water,

---

somehow be said to relate back to the way a company or an industry makes, markets and/or sells its non-defective, lawful product or service, and a public nuisance claim would be conceived and a lawsuit born."); *In re Lead Paint Litig.*, 924 A.2d at 505 (observing plaintiffs' nuisance theory would "vest the public entities with a general tort-based remedy" or would "create an ill-defined claim that would essentially take the place of [existing] enforcement, abatement, and public health funding scheme[s]"); *City of Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp. 2d 882, 909 (E.D. Pa. 2000) (recognizing that "courts across the nation have begun to refine the types of cases amenable to a nuisance theory"); *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 595 (Tex. 2016) ("[T]he term nuisance does not refer to the 'wrongful act' or to the 'resulting damages' but only to the legal injury—the interference with the use and enjoyment of property ….").

or rights-of-way.  *See State ex rel. Andersons v. Masheter*, 203 N.E.2d 325, 327 (Ohio 1964) ("Navigation on public waters is exclusively a public right.  Everyone has an equal right to the use of the water for travel and transportation."); *see also* Restatement (Second) of Torts § 821B cmt. g (Am. Law Inst. 1979) ("A public right is one common to all members of the general public" and "is collective in nature."); *Lead Indus.*, 951 A.2d at 453 ("The interference must deprive all members of the community of a right to some resource to which they otherwise are entitled.").

A private right, on the other hand, is an individual right or a right shared by a limited number of persons, such as "the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured."  Restatement (Second) of Torts § 821B cmt. g.  This line between public and private nuisance, which Ohio courts have consistently maintained, lends rigor to the public nuisance doctrine and prevents public officials from meddling in private controversies or from circumventing established product liability standards.

The Complaint fails to allege facts that establish the existence of a public right that has been affected by Distributors' conduct.  The Complaint purports to identify two public rights, but if the concept of a public right is to have any meaning, neither "right" qualifies.  First, Plaintiffs allege, in circular fashion, that Distributors interfered with their residents' "common right to be free" from conduct "that unreasonably interfere[s] with public health, welfare and safety in Plaintiffs' communities."  Compl. ¶ 1000.  Alleging a "common right to be free from unreasonable interference" is no different than alleging merely that a negligent tortfeasor owed a duty not to be negligent; just as a plaintiff must identify a duty to state a negligence claim, Plaintiffs must identify a public right to state public nuisance claim.  Second, Plaintiffs allege that Distributors interfered with a public right "to be free from conduct that creates a disturbance

- 27 -

and reasonable apprehension of danger to person or property." *Id.* But the "right" not to be negligently injured by a drug that is misleadingly labeled and marketed is an individual right, and the proper remedy lies in a negligence claim brought by the injured individuals. *See* Restatement (Second) of Torts § 821B cmt. g; *Lead Indus.*, 951 A.2d at 454 ("Were we to hold otherwise, we would change the meaning of public right to encompass all behavior that causes widespread interference with the private rights of numerous individuals.").

The Complaint does not state clearly what the alleged ***public*** right is because to do so would expose how far removed it is from the public rights recognized in the case law—i.e., rights shared equally by all members of the public, like the right to unpolluted air or safe travel on a public highway. *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 477 (6th Cir. 2017). The opioid epidemic is a pressing social issue, but there is no public right to be free from prescription drugs that are allegedly deceptively marketed, mis-prescribed, or misused. The "right" to be safe from defective products is an individual right. Restatement (Second) of Torts § 821B cmt. g (distinguishing a public nuisance from "***the individual right*** everyone has not be assaulted or defamed or defrauded *or **negligently injured***"); *City of Chicago*, 821 N.E.2d at 1116 ("[W]e are reluctant to state that there is a public right to be free from the threat that some individuals may use an otherwise legal product … in a manner that may create a risk of harm to another."). That individual right does not become a public right "because a large number of people are affected" by the product. *Kramer*, 882 N.E.2d at 52; *see also* Restatement (Second) of Torts § 821B cmt. g ("Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons."); *see Lead Indus.*, 951 A.2d at 448 (a public right is "more than an aggregate of private rights by a large number of

injured people"); *City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126, 131 (Ill. App. Ct. 2005) (public nuisance is more than "an assortment of claimed private individual rights").

> **2.      Absolute public nuisance claims concerning extensively regulated conduct are improper.**

Under Ohio law, duly licensed individuals who engage in extensively-regulated activities cannot be held liable for absolute public nuisance.  *State ex rel. Schoener v. Bd. of Comm'rs of Hamilton Cty.*, 619 N.E.2d 2, 6 (Ohio Ct. App. 1992) (dismissing absolute public nuisance claim, noting "we think it fair to say in law that part of the *quid pro quo* for the submission to such exacting regulatory oversight is the operator's insulation from liability under a theory of strict liability").  Plaintiffs have not alleged that Distributors were not licensed to distribute controlled substances.  Accordingly, their common law absolute public nuisance claim should be dismissed. *See Brown*, 622 N.E.2d at 1160 (dismissing absolute public nuisance claim when "appellant introduced no evidence that appellees were not licensed to operate the sewage disposal plant").

*Schoener* is particularly instructive.   There, the defendants "met certain licensing parameters," were "subject to many regulations," and were "further subject to numerous inspections conducted by agents of both Hamilton County and the Ohio Environmental Protection Agency."  619 N.E.2d at 6.  Upholding the trial court's refusal to instruct the jury concerning absolute public nuisance, the Court observed, "[w]e have found no cases in which the Ohio Supreme Court has held that such a facility can be subject to liability as an absolute [public] nuisance."  *Id.*  Like the defendants in *Schoener*, Distributors are duly licensed under federal and Ohio law, are subject to many federal and state regulations as well as numerous inspections by federal and state agents.  Under these circumstances, Ohio law is clear that, at most, only a qualified public nuisance theory is available, which Plaintiffs have not pled.  *Brown*,

622 N.E.2d at 1160 ("In order for a duly licensed and regulated sanitary landfill to be found liable for maintaining a nuisance, negligence must be established, *i.e.*, a qualified nuisance.").

But even were Plaintiffs to amend their Complaint to substitute a qualified public nuisance claim, regulating controlled substances through qualified public nuisance law is similarly inappropriate.  The manufacture, approval, wholesale distribution, and retail dispensing of prescription opioids is subject to comprehensive regulation at the federal and state levels.  The public nuisance doctrine, however, is a blunt instrument.[22]  Applied in the loose fashion advocated by Plaintiffs, the doctrine would supplant the calibrated regulatory framework administered and enforced by the FDA, DEA, and the Ohio Boards of Medicine and Pharmacy. Courts thus have refused to stretch nuisance law and improperly expand the government's ability to "regulate by litigation."  *See Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042, 1045 (Fla. Dist. Ct. App. 2001) (characterizing county's public nuisance claim as "an attempt to regulate firearms and ammunition through the medium of the judiciary"); *Consol. Rail Corp. v. City of Dover*, 450 F. Supp. 966, 972–73 (D. Del. 1978) (rejecting public nuisance claim involving "technical and policy questions which have industrywide application" and which are "better made on an industry-wide basis in an agency rulemaking proceeding").

### C.  Plaintiffs' Statutory Public Nuisance Claim Contains Additional Defects.

Even if the OPLA had not been amended to abrogate Plaintiffs' products-based statutory public nuisance claims, they still contain several fatal defects.

---

[22] *See also Prosser and Keeton on the Law of Torts*, § 86, at 618 (W. Page Keeton ed., 5th ed. 1984) ("If 'nuisance' is to have any meaning at all, it is necessary to dismiss a considerable number of cases which have applied the term to matters not connected either with land or with any public right, as mere aberration …." (footnote omitted)).

### 1. All Plaintiffs except Summit County lack authority to bring the asserted statutory public nuisance claim.

Plaintiffs in this action consist of Summit County and 23 other entities, including cities, villages, townships, the Summit County Combined Public Health District, and Valley Fire District.  Compl. ¶ 1 n.1.  But only Summit County is authorized to bring a statutory public nuisance claim based on Distributors' alleged violations of regulations "controlling the distribution of a drug of abuse."  Ohio Rev. Code § 4729.35.  Section 4729.35 limits the authority to bring a claim under the statute to three individuals or entities:  "[t]he attorney general, the prosecuting attorney of any county in which the offense was committed or in which the person committing the offense resides, or the state board of pharmacy."  *Id.*  Accordingly, the statutory public nuisance claims brought by the 23 entities other than Summit County must be dismissed.[23]

### 2. Summit County cannot obtain the relief it seeks.

In its Complaint, Summit County claims that it "has incurred expenditures for special programs over and above Plaintiffs' ordinary public services" and "seeks abatement, recovery of abatement costs, injunctive relief, and to prevent injury and annoyance from any nuisance."  Compl. ¶¶ 995, 1029.  Under Section 4729.35, the only relief the prosecuting attorney of a county may seek is to "enjoin such person from engaging in such violation."  Ohio Rev. Code § 4729.35.  No other relief, including the collection of abatement costs, is authorized.

---

[23] The 23 entities other than Summit County cannot plead around Section 4729.35's limitation by relying on Section 3767.03 or Section 715.44.  These general provisions do not supersede Section 4729.35's specific language, which clearly limits who may bring a statutory public nuisance claim for violations of the Dangerous Drug Act to the attorney general, county prosecutors, and BOP.  *See* Ohio Rev. Code § 1.51 (stating that statutes "shall be construed, if possible, so that effect is given to both," but the specific provision prevails over the general in the event of conflict).  Allowing cities, towns, and villages to bring statutory nuisance claims for violations of the Dangerous Drug Act would write this limitation out of the Code entirely.

The inability to collect abatement costs in these circumstances is conspicuously demonstrated by the many other instances in which the General Assembly has authorized such relief for statutory public nuisances. *See, e.g.*, Ohio Rev. Code § 3767.24 ("[T]he court may direct the sheriff to execute the order of abatement at the cost and expense of the defendant."); *id.* § 505.87 (authorizing town to collect costs of removing debris constituting a nuisance from land); *id.* § 3707.01 (permitting city health board to assess abatement costs against property deemed a public nuisance); *id.* § 715.261 ("A municipal corporation or its agent … may collect the total cost of abatement activities …."); *id.* § 2307.72(D)(1) (authorizing "relief in the form of the abatement of a nuisance, civil penalties, cleanup costs, cost recovery"); *id.* § 4781.56(A) ("The park operator shall pay any costs for the removal."). Because the General Assembly did not authorize Summit County to collect abatement costs in actions pursuant to Section 4729.35, the County's requested relief should be denied.

## III.    THE COUNTY'S NEGLIGENCE CLAIM SHOULD BE DISMISSED.

The County purports to assert a common law negligence claim. That claim, however, represents an attempt to circumvent two barriers to any claim by the County to hold Distributors responsible allegedly for failing to report suspicious pharmacy orders.

The first barrier is that the County's claim is a product-based claim arising from the personal injuries suffered by County residents who misused or became addicted to opioid medications. As discussed above, the OPLA abrogates all product-based common law claims and requires that product-based claims be brought pursuant to the Act or not at all.

The second barrier is that the duty to monitor and report suspicious orders on which the County predicates its claim is a creation of federal law (later incorporated into the Ohio regulations for controlled substances). That duty is unknown to the common law. Distributors owe that duty to the DEA and the Ohio BOP, not the County, which as a matter of well-

established case law has no private right of action to enforce federal and state reporting requirements.  The County cannot accomplish indirectly what that case law bars it from doing directly.

### A.     The OPLA Bars the Negligence Claim.

The OPLA expressly "abrogate[s] ***all common law product liability claims or causes of action***."  Ohio Rev. Code § 2307.71(B).  As amended in 2005, the OPLA defines product liability claims to include:

> [A] claim or cause of action … that seeks to recover compensatory damages from a manufacturer or ***supplier*** for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> > (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
> >
> > (b) Any warning or instruction, or lack of warning or instruction, associated with that product;
> >
> > (c) Any failure of that product to conform to any relevant representation or warranty.

*Id.* § 2307.71(A)(13).  In language that plainly applies to Distributors here, the OPLA defines a "supplier" as "[a] person that, in the course of a business conducted for the purpose, sells, ***distributes***, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce."  *Id.* § 2307.71(A)(15)(a).  Applying the OPLA, this Court and others have routinely dismissed common law negligence claims that sound in product liability.[24]

---

[24]   *See Decker v. GE Healthcare, Inc.* (*In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*), Nos. 1:08-GD-50000, 1:12-GD-50004, 2013 WL 587655, at *13 (N.D. Ohio Feb. 13, 2013), *aff'd*, 770 F.3d 378 (6th Cir. 2014); *Greenway v. Kimberly-Clark Corp.*, No. 1:15-cv-1720, 2016 WL 3460229, at *2 (N.D. Ohio June 24, 2016) (dismissing negligence claim); *Evans v. Hanger Prosthetics & Orthotics, Inc.*, 735 F. Supp. 2d 785, 796 (N.D. Ohio 2010); *Mitchell v. Proctor & Gamble*, No. 2:09-cv-426, 2010 WL 728222, at *4 (S.D. Ohio Mar. 1,

- 33 -

The County's common law negligence claim is, at its core, a product liability claim—precisely the kind of claim abrogated by the OPLA.  *See Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743, 753 (Ohio. Ct. App. 2016) (stating courts look to "[t]he essential nature of the substantive allegations of the plaintiff's claim, not the artificial label attached to the claim"). The County seeks damages resulting from personal injuries to its residents.  "Defendants' conduct,' the County alleges, caused "addiction, abuse, overdose and death," Compl. ¶ 20; *see also, e.g.*, *id.* ¶¶ 714–745 (referring to opioid addiction, abuse, and death; emergency room visits; Hepatitis C; neonatal abstinence syndrome; etc.).  The County also alleges that those personal injuries arose from breach of the "applicable standards of conduct in manufacturing, advertising, marketing, ***selling*** and/or ***distributing*** opioids."  Compl. ¶ 1041 (quoting the Seventh Claim for Relief (Negligence)); *see also id.* ¶ 1049 ("Defendants were negligent by marketing, distributing and selling opioids ...."); *id.* ¶ 1051 ("A reasonably prudent opioid ... distributor should have anticipated an injury to Plaintiff as a probable result of ... distributing, and selling prescription opioids in this manner.").  These allegations track the language of the OPLA's definition of a "product liability claim"—injuries that arise from the "design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing" of a product. Ohio Rev. Code § 2307.71(A)(13)(a); *see also Stratford v. SmithKline Beecham Corp.*, No. 2:07-cv-639, 2008 WL 2491965, at *5 (S.D. Ohio June 17, 2008) (the OPLA abrogates negligence claim related to antidepressant drug because the "actionable conduct that forms the basis of the negligence claim—negligent research, manufacturing, testing, marketing, and failure to warn—is

---

2010); *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 918–22 (N.D. Ohio 2009); *Stratford v. SmithKline Beecham Corp.*, No. 2:07-cv-639, 2008 WL 2491965, at *5 (S.D. Ohio June 17, 2008).

the same conduct that the OPLA defines as giving rise to a 'products liability claim'" (citation omitted)).

Where a plaintiff has impermissibly asserted a common law claim that has been abrogated by the OPLA, courts "typically dismiss … without prejudice to allow plaintiffs the opportunity to re-plead their common law claims under the applicable provision of the OPLA." *Evans v. Hanger Prosthetics & Orthotics, Inc.*, 735 F. Supp. 2d 785, 797 (N.D. Ohio 2010); *see also Decker v. GE Healthcare, Inc.* (*In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*), Nos. 1:08-gd-50000, 1:12-gd-50004, 2013 WL 587655, at *13 (N.D. Ohio Feb. 13, 2013) ("The remedy, the parties acknowledge, is to allow Plaintiffs to amend the complaint, which they must do promptly.").  Here, however, the negligence claim should be dismissed **with prejudice** because, as explained below, the County fails to allege an enforceable duty, proximate cause, or cognizable injury.

### B.    The Complaint Fails Adequately To Allege an Enforceable Duty Owed by Distributors to Plaintiffs.

It would be futile for the County to amend the Complaint to allege a statutory negligence claim under the OPLA because the alleged negligence is grounded in a duty to monitor and report suspicious pharmacy orders that is the creation of federal and state regulation and is unknown at common law.  Whatever duty Distributors have to report suspicious orders is a duty that was created by statute, and the duty runs to the DEA and the BOP, **not** the County. Congress and the General Assembly could have provided for a private right of action to augment enforcement of these regulatory duties, but they did not.  Any negligence claim based on a violation of the same duty to monitor and report suspicious pharmacy orders is an improper attempt to circumvent the prohibition against private rights of action under the Controlled Substances Act ("CSA"), 21 C.F.R. § 1301.74(b), and Ohio Admin. Code 4729-9-16(H).

1.      **No private right of action.**

The law is clear that there is no private right of action under federal or state law.  The

DEA is "the primary federal agency responsible for the enforcement of the Controlled

Substances Act."  DEA, *Practitioner's Manual, An Informational Outline of the Controlled*

*Substances Act* 4 (2006 ed.).[25]  The courts recognize that "according to its plain terms, '[t]he

[CSA] is a statute enforceable only by the Attorney General and, by delegation, the Department

of Justice.'"  *Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1290 (D. Colo. 2016) (alterations in

original) (quoting *Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 293 (3d Cir. 2010)

(per curiam)), *aff'd sub nom. Safe Sts. All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017).

Consequently, "federal courts"—including in the opioid litigation—"have uniformly held that

the [federal] CSA does not create a private right of action."  *Smith*, 164 F. Supp. 3d at 1290;

*State of West Virginia v. McKesson Corp.*, No. 2:17-03555 (S.D. W. Va. Feb. 15, 2018) (ECF

No. 21), at 14–15 (attached as Ex. 1); *McKesson Corp. v. Hembree*, No. 17-cv-323, 2018 WL

340042, at *5 (N.D. Okla. Jan. 9, 2018).[26]

Similarly, the Ohio Revised Code makes clear that the Ohio General Assembly vested

exclusive authority to enforce pharmacy regulations, including those related to the distribution of

prescription drugs, with the BOP.  *See* Ohio Rev. Code § 4729.25 ("The state board of pharmacy

---

[25]   This document is available at
https://www.deadiversion.usdoj.gov/pubs/manuals/pract/pract_manual012508.pdf.

[26]   *See also Welch v. Atmore Cmty. Hosp.*, 704 F. App'x 813, 816 (11th Cir. 2017) (per curiam)
("[N]o part of the [CSA] provides a private remedy or contains a 'specific statutory grant' of
jurisdiction for private litigants … to bring civil claims."); *Shmatko v. Ariz. CVS Stores LLC*,
No. 14-cv-01076, 2014 WL 3809092, at *2 (D. Ariz. Aug. 1, 2014) ("Federal law
unequivocally holds … that the FDCA and CSA do not create private rights of action ….");
*United States v. Real Prop. & Improvements Located at 1840 Embarcadero*, 932 F. Supp. 2d
1064, 1072 (N.D. Cal. 2013) (collecting cases); *McCallister v. Purdue Pharma L.P.*, 164 F.
Supp. 2d 783, 793 (S.D. W. Va. 2001) ("[A] careful review of the [CSA], 21 U.S.C. §§ 801–
971, establishes no Congressional intent to create a private, civil right of action ….").

shall enforce, or cause to be enforced, this chapter.").[27]  Before 2005, the Revised Code authorized "the attorney general, prosecuting attorney, or city director of law to whom the board reports any violation" to sue.  *Id.* § 4729.63 (2004).  But the General Assembly repealed Section 4729.63 in 2005.  *See* Ohio Rev. Code § 4729.63 (repealed effective May 18, 2005).

The Sixth Circuit has recognized that permitting a plaintiff to enforce statutory or regulatory duties through common law negligence "would, in effect, be permitting a private cause of action under" the statute or regulation.  *Myers v. United States*, 17 F.3d 890, 901 (6th Cir. 1994).  Where the legislature has decided not to permit a private cause of action, a court must "refuse" to allow plaintiffs to circumvent the regulatory scheme by enforcing statutory or regulatory duties through common law causes of action.  *Id.*  Such circumvention violates legislative intent and threatens principles of separation of powers and federalism.  *See, e.g.*, *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, No. 2:13-md-2433, 2015 WL 4092866, at *23–25 (S.D. Ohio July 6, 2015) (collecting cases); *Tekavec v. Van Waters & Rogers, Inc.*, 12 F. Supp. 2d 672, 683 (N.D. Ohio 1998) (Ohio law does not permit negligence *per se* claim to rest on regulations Congress intended to be enforced through the Attorney General); *Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36 (D.D.C. 2003) (plaintiff may not "bootstrap [its] arguments regarding" an alleged violation of federal regulations by asserting they supply the

---

[27] Ohio Rev. Code § 4729.26 ("The state board of pharmacy may adopt rules in accordance with Chapter 119 of the Revised Code, not inconsistent with the law, as may be necessary to carry out the purposes of and to enforce the provisions of this chapter."); *id.* § 4729.56 (allowing BOP to impose sanctions under certain specified circumstances); *see also Gilford v. Ohio State Bd. of Pharmacy*, No. 8979, 1985 WL 7634, at *4 (Ohio Ct. App. Feb. 6, 1985) ("It is the governmental duty of the [Board of Pharmacy] to enforce the pharmacy laws, R.C. 4729.25, and to protect the rights and interests of the people of the state of Ohio in this regard."); *State v. Frye*, No. 1-17-30,–2018-Ohio-894, ¶ 86, 2018 WL 1256532, at * 18 (Ohio Ct. App. Mar. 12, 2018) (noting that the Ohio General Assembly delegated the power "to facilitate the administration and enforcement of controlled substances" to the State Board of Pharmacy).

applicable standard of care for common law negligence) (citing *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 348 (2001)); *Coffman v. Bank of Am., NA*, No. 2:09-cv-00587, 2010 WL 3069905, at *8 (S.D. W.Va. Aug. 4, 2010) ("Plaintiff may not circumvent the [Office of Thrift Supervision]'s exclusive authority to implement disclosure requirements for federal savings banks through a state law claim of unconscionable inducement."). Accordingly, the absence of a private right of action to enforce the CSA and its Ohio counterpart is fatal to Plaintiffs' negligence claim.[28]

Cities and counties have no special place in the federal or state regulatory schemes. There is thus no basis for inferring that the applicable federal or state statutes and regulation creates a special duty to them that they may sue to enforce.

---

[28] There is also no implied private right of action. "Ohio courts apply a three-part test adopted from *Cort v. Ash* [422 U.S. 66, 78 (1975)], for determining when a private cause of action arises by implication under a particular statute." *Nielsen v. Ford Motor Co.*, 681 N.E.2d 470, 474 (Ohio Ct. App. 1996). The test asks: whether (1) "the plaintiff [is] one of the class for whose especial benefit the statute was enacted"; (2) "there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) "it [is] consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff." *Miami Valley Hosp. v. Combs*, 695 N.E.2d 308, 311 (Ohio Ct. App. 1997); *see also Nielsen*, 681 N.E.2d at 474.

The application of this test "has gradually narrowed" to focus "on the single factor of whether there was a legislative intent to grant a private right of action." *Schneider v. Kumpf*, 58 N.E.3d 1220, 1236 (Ohio Ct. App. 2016); *Grey v. Walgreen Co.*, 967 N.E.2d 1249, 1252 (Ohio Ct. App. 2011). Here, there is clear evidence of the General Assembly's intent *not* to provide a private right of action. First, the Revised Code includes a clear enforcement mechanism exclusively vested with the Board of Pharmacy. *See* Ohio Rev. Code §§ 4729.25, 4729.26, 4729.56. Courts have declined to infer a private right of action where the regulatory scheme includes administrative enforcement procedures. *See, e.g.*, *Fawcett v. G.C. Murphy & Co.*, 348 N.E.2d 144, 147 (Ohio 1976), *superseded by statute*, 1978 H.B. No. 598, 137 Ohio Laws, Part II, 3062. Moreover, as set forth above, a prior version of the Revised Code did include a private right of action, authorizing actions filed by the attorney general, prosecuting attorney, or city director of law. Ohio Rev. Code § 4729.63 (2004). This section was repealed by the General Assembly over a decade ago, in 2005. There can be no clearer evidence that the General Assembly intended to vest enforcement power with only the Board of Pharmacy.

## 2.     No negligence *per se*.

Plaintiffs cannot plead around the absence of a private right of action by alleging negligence *per se*.  First, the doctrine of negligence *per se* does not establish when a duty is owed, but is "a means of defining the particular standard of conduct such a duty [where it exists] requires."  *Myers*, 17 F.3d at 899; *accord Davis v. Walmart Stores East, L.P.*, 687 F. App'x 307, 312 (4th Cir. 2017) ("[A] statute setting the standard of care does not create the duty of care.").  "Thus, a plaintiff … must first establish the existence of a relationship giving rise to a duty before attempting to rely on the doctrine of negligence per se to establish the standard of conduct required."  *Myers*, 17 F.3d at 899.  Ohio law prohibits the use of administrative regulations to establish negligence *per se* and does not permit liability to rest on statutes that, like those at issue here, do not establish a definite standard of conduct.

The County cites a string of regulations and statutes that allegedly establish duties breached by Distributors.  *See* Compl. ¶¶ 1060–1061.  But Ohio law is clear that "the violation of administrative rules and regulations 'does not constitute negligence *per se*.'"  *Kemp v. Medtronic, Inc.*, No. 99-3720, 2001 WL 91119, at *1 (6th Cir. Jan. 26, 2001) (per curiam) (quoting *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 203 (Ohio 1998)); *accord Kooyman v. Staffco Constr., Inc.*, 937 N.E.2d 576, 582 (Ohio Ct. App. 2010) ("[A]dministratively enacted provisions cannot form the basis of a finding of negligence per se.").  Thus, the County cannot premise its negligence *per se* claim on alleged violations of such regulations.

Nor can it premise its claim on its alleged statutory violations.  Even apart from the lack of a private right of action, not all statutes give rise to duties enforceable under the doctrine of negligence *per se*.  Rather, the doctrine applies only to statutes that establish a "'positive and definite standard of care … whereby a jury may determine whether there has been a violation

thereof by finding a single issue of fact.'"  *Chambers*, 697 N.E.2d at 201 (quoting *Eisenhuth v. Moneyhon*, 119 N.E.2d 440, 444 (Ohio 1954)).

None of the statutes cited by Plaintiffs, Compl. ¶ 1060, satisfies that test.  For example, 21 U.S.C. § 823 requires the Attorney General to consider, in granting registration to a distributor, whether the applicant maintains "effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels" as well as its "past experience in the distribution of controlled substances."  21 U.S.C. § 823(b), (e).  This statute does not establish a positive and definitive standard of care—it does not specify what "effective control" entails or how much "experience" distributors must have.  Instead, it leaves the determination of the necessary standards for registration to the Attorney General's sole discretion.  Similarly, 21 U.S.C. § 827(d)(1) requires distributors to report every sale and delivery of controlled substances "at such time or times and in such form as the Attorney General may require."

The Ohio statutes Plaintiffs cite are even further afield.  Ohio Revised Code § 4729.01(F) simply defines the term "[d]angerous drug" and establishes no duties whatsoever.  And Ohio Revised Code § 2925.02(A)(3)—which makes it a crime to knowingly "administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person"—is inapplicable for two reasons.  First, the Complaint does not allege that Distributors administered or furnished opioid medications to the persons who used them.  Nor could they, as Distributors supply medications to pharmacies, not directly to consumers.  *See* Compl. ¶ 1058.  Second, in order to invoke the negligence *per se* doctrine, "the plaintiff must demonstrate that the duty set forth in the statute was imposed for the plaintiff's benefit to prevent the harm that ultimately resulted."  *Smrtka v. Boote*, 88 N.E.3d 465, 474 (Ohio

Ct. App. 2017).  By its plain terms, Section 2925.02(A) protects natural persons from physical harm, not political subdivisions from economic loss.

### 3. No common law duty to monitor and report "suspicious" pharmacy orders.

 "Duty is a threshold question in a negligence case" because "[i]f there is no duty, then no legal liability can arise on account of negligence."  *Martin v. Lambert*, 8 N.E.3d 1024, 1030 (Ohio Ct. App. 2014).  Plaintiffs fail properly to allege the existence of a common law duty (assuming any such duty survives Section 2307.71(B) of the OPLA) owed to them.

The gravamen of the Complaint is that Distributors have a duty to monitor pharmacy orders and to report or halt apparently suspicious orders.  *See, e.g.*, Compl. ¶¶ 504, 510, 684–86, 1042, 1045, 1061.  As explained above, however, to the extent those duties exist, they are entirely creatures of statute, with no grounding in the common law.  Accordingly, it is not enforceable in tort.  *See Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) (Posner, J.) ("[T]he mere fact that a statute defines due care does not in and of itself create a duty enforceable by tort law." (emphasis omitted)).

In an effort to escape this result, Plaintiffs also vaguely allege other purported duties, such as duties to "exercise reasonable care in delivering dangerous narcotic substances" or to "prevent the oversupply of prescription opioids and minimize the risk of their diversion."  *See, e.g.*, Compl. ¶¶ 502, 514.  But these attempts to dress up Plaintiffs' duty allegations in common law clothing fail.

Distributors are middlemen.  They do not write prescriptions or determine whether opioid medications are appropriate for patients—doctors do that.  Nor do Distributors meet directly with patients and furnish them with opioids—pharmacists do that.  Each Distributor, moreover, knows only what its pharmacy customers order from it—not what other pharmacies order, and typically

not even what its own pharmacy customers order from other distributors.  Any given Distributor certainly does not know and could not know the total quantity of medication being delivered to an entire community—let alone whether that amount exceeds the amount needed by that community to meet its legitimate medical needs.

Given Distributors' limited role and the limited information available to them, there is simply no way for a particular Distributor—even one using extraordinary care—to "prevent the oversupply" of opioids or the diversion of opioids for nonmedical purposes.  Compl. ¶ 514. Accordingly, Plaintiffs have failed adequately to allege the existence of any duty separate and apart from Distributors' regulatory duty to monitor and report potentially suspicious orders.

### 4. No duty owed to *Plaintiffs*.

Plaintiffs' duty allegations also fail for another reason:  they fail to identify any duty that Distributors owed **to them**.  "Duty, as used in Ohio tort law, refers to **the relationship between the plaintiff and the defendant** from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff."  *Wallace v. Ohio Dep't of Commerce*, 773 N.E.2d 1018, 1026 (Ohio 2002) (internal quotation marks omitted); *see also Bohme, Inc. v. Sprint Int'l Commc'ns Corp.*, 686 N.E.2d 300, 303 (Ohio Ct. App. 1996) (stating that the existence of a duty "depends upon the relationship between the parties").  Distributors, however, do not have any relationship with the County; they purchase pharmaceuticals from manufacturers and sell them to licensed pharmacies.

At common law, there is no duty to control the conduct of third parties, particularly third parties engaged in illegal conduct, in the absence of a "'special relation'" between the parties or between the defendant and a third person.  *Simpson v. Big Bear Stores Co.*, 652 N.E.2d 702, 705 (Ohio 1995) (quoting Restatement (Second) of Torts § 315 (Am. Law Inst. 1965)).  Such a "special relation" occurs only in limited circumstances.  For example, a business owner has a

- 42 -

special relationship with invitees on premises it possesses and controls, but no special relationship with invitees on premises it does not possess or control. *Id.* A psychiatrist has a special relationship with a patient under his or her care that he or she "takes charge of." *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 529 N.E.2d 449, 455 (Ohio 1988). Distributors have no "special relationship" with the County, and Plaintiffs cannot plausibly allege that Distributors took charge of the doctors who prescribed the medications, the pharmacies that dispensed them, or the patients who used them. Accordingly, Distributors have no duty to monitor, report, or prevent downstream diversion of prescription opioids after the medications have been shipped or to control those whose conduct has injured the County. *See Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1355 (S.D. Fla. 2003) (citing *Swayze v. McNeil Labs., Inc.*, 807 F.2d 464, 472 (5th Cir. 1987)) (drug manufacturer had no common law duty to control physicians prescribing its drugs).

## IV.  THE COUNTY'S NUISANCE AND NEGLIGENCE CLAIMS SHOULD ALSO BE DISMISSED FOR ADDITIONAL REASONS.

In addition to the defects identified above, both the nuisance and negligence claims run afoul of the economic loss and statewide concern doctrines and fail to satisfy Ohio's direct injury test for common law tort claims. For these additional reasons, both should be dismissed.

### A.  The Economic Loss Doctrine Requires Dismissal of Both Claims.

According to the County, its alleged injuries are purely economic. Accepting that assertion as true, the County's nuisance and negligence claims run afoul of the Ohio economic loss doctrine and should be dismissed on that basis.

"'[A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" *Ameriquest Mortg. Secs., Inc.*, 621 F. Supp. 2d at 522 (quoting *Floor Craft Floor Covering, Inc. v. Parma Cmty.*

- 43 -

*Gen. Hosp. Ass'n*, 560 N.E.2d 206, 208 (Ohio 1990)); *see also City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 477 (6th Cir. 2017) (the economic-loss doctrine "bars tort plaintiffs from recovering purely economic loss that 'do[es] not arise from tangible physical injury' to persons or property" (alteration in original) (quoting *Queen City Terminals, Inc. v. Gen. Am. Transp.*, 653 N.E.2d 661, 667 (Ohio 1995))).  The doctrine prohibits recovery under both negligence and public nuisance theories unless the plaintiff itself has suffered a physical injury to its own person or property.  *Ashtabula River Corp. Grp. II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 987 (N.D. Ohio 2008) (holding the doctrine barred recovery because "[p]laintiffs failed to demonstrate that they suffered harm to ***their*** persons or property"); *see RWP, Inc. v. Fabrizi Trucking & Paving Co.*, No. 87382, 2006-Ohio-5014, ¶ 28, 2006 WL 2777159, at *4 (Ohio Ct. App. Sept. 28, 2006).

According to the County, it does not purport to seek recovery for any physical injury to its person or property.  It seeks in its negligence count only "expenses" for government services and "non-physical" and "proprietary" damages.[29]  *See* Compl. ¶¶ 1062–1063.  Similarly, in its nuisance count, the County alleges the same harms.  *See id.* ¶¶ 1024–1025.  The economic loss rule therefore bars the County's negligence and nuisance claims.

### B.  The Statewide Concern Doctrine Requires Dismissal of Both Claims.

"It is a fundamental principle of Ohio law that, pursuant to the 'statewide concern' doctrine, a municipality may not, in the regulation of local matters, infringe on matters of general and statewide concern."  *Am. Fin. Servs. Ass'n v. City of Cleveland*, 858 N.E.2d 776, 781 (Ohio

---

[29]  Plaintiffs claim that they have suffered "proprietary damages," but they have not pled any damages in their capacity as a business.  They are instead seeking damages in their sovereign capacity, such as decreased investment in the county and lost tax revenues.  Compl. ¶ 902(m)–(n).  Even if they had alleged such proprietary damages, those damages would be barred by the economic loss rule.

2006).  This is because, in some policy areas, "a comprehensive statutory plan is … necessary to promote the safety and welfare of all the citizens of this state."  *Kettering v. State Emp. Relations Bd.*, 496 N.E.2d 983, 988 (Ohio 1986).  The statewide concern doctrine prohibits cities and counties from regulating through litigation what they cannot regulate through local ordinance.  *See JP Morgan*, 2013 WL 1183332, at *6.  Lawsuits seeking money judgments "may constitute regulation."  *Id.*

The regulation of controlled substances is one such area of statewide concern.  Ohio law imposes a detailed and comprehensive set of laws and regulations on the distribution of controlled substances.  *See* Ohio Rev. Code § 4729.01 *et seq.*; Ohio Admin. Code 4729-9-16(H).  That statute, moreover, vests **exclusive** enforcement authority in the Board of Pharmacy.  *See* Ohio Rev. Code § 4729.25.  The statewide-concern doctrine therefore preempts the County's attempt to regulate the field, including through litigation.  *Am. Fin. Servs.*, 858 N.E.2d at 781.

### C.    The Direct Injury Test Requires Dismissal of Both Claims.

The touchstone of proximate cause is direct injury.  Both the Sixth Circuit and the Ohio Supreme Court have held that the *Holmes* direct injury test applies to claims arising under the common law of Ohio.  *Ameriquest Mortg. Secs., Inc.*, 615 F.3d at 504; *accord Beretta*, 768 N.E.2d at 1148; *see also Perry v. Am. Tobacco Co.*, 324 F.3d 845, 850 (6th Cir. 2003); *Lefkowitz v. Ackerman*, No. 2:16-cv-00624, 2017 WL 4237068, at *4 (S.D. Ohio Sept. 25, 2017).  Thus, to satisfy the proximate cause requirement at the pleading stage, a plaintiff must plead a "direct relation between the injury asserted and the injurious conduct alleged."  *Holmes*, 503 U.S. at 268–69.  As explained above, theories of causation that "go beyond the first step" fail to allege proximate causation and should be dismissed.  *See supra* at pp. 11–16.

The recent litigation by the City of Cleveland against lenders that securitized subprime loans is instructive.  For example, in *City of Cleveland v. JP Morgan Chase Bank, N.A.*, the

Court held that the lender was "one step removed" from the City's injuries.  2013 WL 1183332, at *6.  Despite having provided the money to fund the mortgage-backed securities ("MBS"), the Court held that the lenders "did not create the cocktail of factors that led to the glut of foreclosed homes poisoning the Cleveland housing market."  *Id.*  Similarly, in *City of Cleveland v. Ameriquest Mortgage Securities*, the court dismissed the City's claims because the mortgage lenders "stand atop a lengthy chain of events, far removed from the City's ultimate damages." 621 F. Supp. 2d at 534.  Although the mortgage lenders provided funding for MBS, the City's injury then depended on (1) mortgage brokers finding subprime borrowers, who (2) failed to repay their loans, resulting in (3) someone other than the defendants foreclosing on the property.

Here, Plaintiffs' injuries necessarily arise only after their residents' use (and misuse) of opioids, but Plaintiffs do not allege that Distributors directly supplied opioids to County residents.  Rather, the Complaint reveals that, like the mortgage lenders, Distributors stand near the top of a lengthy chain of distribution, and their alleged conduct is ***at least*** "one step removed" from Plaintiffs' injuries.  Distributors deliver controlled substances to licensed pharmacies. Pharmacists are required, by federal and state laws, to dispense the controlled substances only to patients with a valid prescription, signed by a licensed physician upon a determination of the patient's legitimate medical need.  Then, the patients must use (or, rather, misuse) the controlled substances in such a way that necessitates use of Plaintiffs' resources.  Thus, standing between Distributors and Plaintiffs are the pharmacists, doctors, and resident users.  This is too attenuated to constitute direct injury.[30]  *See City of Cincinnati v. Deutsche Bank Nat. Tr. Co.*, 897 F. Supp.

---

[30]  As set forth more fully in the manufacturing defendants' memorandum, Plaintiffs' claims are also too speculative to satisfy but-for causation because they have not alleged any facts suggesting that, had Distributors reported suspicious orders to the DEA, then the DEA would have relied on those reports and taken action that would have prevented opioid diversion. Nor have Plaintiffs alleged that, if one of the Distributors (or even all three) had refused to

2d 633, 641 (S.D. Ohio 2012) ("The City's factual allegations with respect to the proximate

causal link between [neighborhood blight, increased costs, decreased revenues, and increased

crime] and the Defendants' 'business practices' are insufficient to satisfy proximate cause

standards set forth by the Sixth Circuit."); *Ameriquest Mortg. Secs., Inc.*, 621 F. Supp. 2d at 533–

34 (observing that, because "the potential number of intervening causes borders on incalculable,"

… "[i]t would be tremendously difficult, if not completely impossible, to determine which of

[Plaintiffs'] damages are attributable to [Defendants'] alleged misconduct and not to some absent

party").[31]

Not only are Distributors several times removed from Plaintiffs' injuries, those injuries

depend on the superseding criminal misconduct of actors outside Distributors' control.

ship any particular order to a pharmacy, that pharmacy would not otherwise have been able
to acquire the medications.

[31]   *See also Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924 (9th Cir. 1994) (law firm alleged
that fraud caused increase in rent paid by its landlord, with increase passed on to firm: "We
decline Pillsbury's invitation to go beyond the first step" for causation purposes); *Lefkowitz v.
Ackerman*, 2017 WL 4237068 (S.D. Ohio Sept. 25, 2017) (allegedly fraudulent activity in
permitting unlicensed psychiatrist to perform examination not direct cause of man's
unfavorable result in legal proceeding where plaintiff's theory of causation "requires the
Court to 'move well beyond the first step'" and thus fails (quoting *Hemi Grp.*, 559 U.S. at
10)); *Knopick v. UBS Financial Servs., Inc.*, 121 F. Supp. 3d 444, (E.D. Pa. 2015) (tax haven
scheme to defraud U.S. government not proximate cause of investor's losses from allegedly
unwise trades: "Accepting [plaintiff's] theory requires the Court to move well beyond that
first step, something the Court cannot and will not do."); *Pankros v. Tyler*, 929 N.E.2d 1217,
1224 (Ill. Ct. App. 2010) ("[P]laintiff's theory of causation extends beyond that 'first step'
and thus, her injury is too remote to satisfy proximate cause."); *In re Yasmin & Yaz
(Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-CV-20071-DRH, 2010
WL 3119499, at *7, **8–9 (S.D. Ill. Aug. 5, 2010) (dismissing negligence claim against
pharmaceutical manufacturer where "the causal link necessarily involves the [intervening]
decision making process of the patient, the prescribing physician, and the third party payor");
*Ganim*, 258 Conn. at 355 (dismissing negligence and public nuisance claims where "the
sheer number of links in the chain of causation" compel the conclusion that the City's
injuries are, at best, "derivative of those suffered by the various actors in between the
defendants and the plaintiffs"); *Kemerer v. Antwerp Bd. of Edn.*, 664 N.E.2d 1380, 1383–84
(Ohio Ct. Ap. 1995) ("No liability can result to a party, [e]ven if negligence of a party is a
cause of injury to another, if the cause is a remote one.").

Diversion is the transfer of medications to persons not entitled to receive them.[32]  It inherently involves unlawful conduct—e.g., by a patient in fabricating a complaint of pain or in obtaining prescriptions from more than one doctor; by a doctor in prescribing the medications without determining whether there is a legitimate medical basis; or by others in buying or stealing the medications from persons who obtained them from a doctor.  Plaintiffs expressly plead that criminal acts intervened in the alleged causal chain between Distributors' conduct and Plaintiffs' alleged harms, including by individuals seeking to obtain opioids and by physicians who participated in illegal pill mills.  *See* Compl. ¶¶ 483, 642–651, 710–712.  Plaintiffs' Complaint concedes that criminal acts intervene, which, as a matter of law, breaks the causal chain.  *See, e.g.*, *White v. Vrable*, No. 98AP-1351, 1999 WL 771053 (Ohio Ct. App. Sept. 30, 1999) (dismissing negligence claims against a pharmacy for alleged mishandling of prescription drugs because the drugs were stolen by the plaintiff's father and illegally ingested by the plaintiff).[33]

The Eighth Circuit's opinion in *Ashley County v. Pfizer, Inc.*, dismissing a public nuisance claim against distributors, is instructive.  The Court held that "it is inadvisable as a matter of public policy to deem the [distributor] defendants' actions a legal cause of the alleged nuisance" where "[n]one of the Defendants [sellers of pseudoephedrine] are retailers, nor do they sell the medications directly to the public," but rather sold their products to "independent retailers" from whom illegal methamphetamine cooks obtained the products.  552 F.3d 659, 663,

---

[32]  *Facing Addiction in America*, *supra* note 9, at 4 (2016), https://addiction.surgeongeneral.gov/sites/default/files/surgeon-generals-report.pdf.

[33]  *See supra* n. 10 (collecting cases); *see also Bilicic v. Brake*, 581 N.E.2d 586, 587–88 (Ohio Ct. App. 1989) (holding that defendant's negligence was not the proximate cause of plaintiff's injuries where "there had intervened a willful, malicious and criminal act"); *Evans v. Thrasher*, No. C-120783, 2013-Ohio-4776, ¶ 22, 2013 WL 5864592, at *4 (Ohio Ct. App. Oct. 30, 2013) (affirming dismissal of claims against hospital at pleadings stage on proximate cause grounds, where plaintiff's injuries were directly caused by the willful, criminal acts of a hospital employee that were not foreseeable).

671–72 & n.5 (8th Cir. 2009); *see also City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 424 (3d Cir. 2002) (affirming dismissal of negligence and public nuisance claims against gun distributors because many "links … separate a manufacturer's sale of a gun to a [licensed retailer] and the gun's arrival in the illegal market through a distribution scheme that is not only lawful, but also is prescribed by statute with respect to the manufacturer['s] conduct"); *Perry v. Town of Putnam*, 131 A.3d 1284, 1289 (Conn. App. Ct. 2016) (town was not liable in public nuisance for third parties' "unpleasant and disruptive behavior" at town-built parking lot; such behavior "is the proper bailiwick of police regulation and control, not of the law of nuisance"). The same result is warranted here.

## V.     THE COUNTY'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The County's unjust enrichment claim should be dismissed because it merely duplicates the County's other deficient claims and because the County fails to allege that it conferred a benefit on Distributors, Distributors were aware of the purported benefit, or retention of the alleged benefit would be unjust.

As a threshold matter, the County's unjust enrichment cause of action is based on the same alleged conduct underlying its other claims and should be dismissed as duplicative.  *See McCarty v. Pedraza*, 17 N.E.3d 71, 80–81 (Ohio Ct. App. 2014) (where claim for unjust enrichment was "not based on conduct distinct from the conduct supporting [plaintiffs'] legal-malpractice claim," unjust enrichment claim "should have been dismissed").  Indeed, the Ohio Supreme Court has refused to recognize an independent cause of action for unjust enrichment where doing so would allow "an end run around policies" barring a plaintiff's other failed claims.  *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (claim for unjust enrichment by indirect purchasers against software manufacturer failed because allowing such

claims would permit an "end run around" the rule barring indirect purchasers from asserting antitrust claims).

Even putting aside that threshold bar, the County's unjust enrichment claim fails on its own terms.  To prevail on an unjust enrichment claim, the County must show:  "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Id.* at 799.  The County has not pled facts supporting any of those elements.

First, the County has not properly alleged that it conferred a transactional benefit on Distributors.  Under Ohio law, a plaintiff does not confer a benefit on a defendant unless there is a transactional relationship between the parties.  *Ohio Edison Co. v. Direct Energy Bus., LLC*, No. 5:17-cv-746, 2017 WL 3174347, at *3 (N.D. Ohio July 26, 2017) ("To show that a plaintiff conferred a benefit upon a defendant, 'an economic transaction must exist between the parties.'" (quoting *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters., Inc.*, 50 N.E.3d 955, 967 (Ohio Ct. App. 2015))); *accord Johnson*, 834 N.E.2d at 799 ("[N]o economic transaction occurred between Johnson and Microsoft, and, therefore, Johnson cannot establish that Microsoft retained any benefit 'to which it is not justly entitled.'").  The County does not allege any economic transaction that took place between it and Distributors or seek to assert claims in the capacity of a purchaser.

Under Ohio law, moreover, "[i]t is not enough that a plaintiff suffers a loss and a defendant receives a benefit; rather, 'a plaintiff must establish that a benefit has been conferred upon that defendant *by that particular plaintiff*.'"  *Ohio Edison*, 2017 WL 3174347, at *3 (quoting *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013)) (emphasis

in original).  The County does not allege—and could not allege—that it conferred a benefit on Distributors.  Instead, the County alleges only that it expended money "in an effort to remedy or mitigate the societal harms caused by" the abuse and misuse of prescription opioids.  Compl. ¶ 1111.  Even assuming that such expenditures could constitute a "benefit" for purposes of an unjust enrichment claim, the purported benefit was conferred on people who use opioids—not Distributors.   While the Complaint vaguely alleges that Distributors benefited from the expenditures because they allowed Distributors "to continue providing customers with a high volume of opioid products," *id.* ¶ 1116, any connection between the County's funding of social programs and the purported effects such expenditures had on the wholesale market for opioids is far too tenuous and indirect to support an unjust enrichment claim.  *See Ohio Edison Co.*, 2017 WL 3174347, at \*3 (dismissing unjust enrichment claim where plaintiff "allege[d] no facts and provide[d] no argument to support the idea that [plaintiff] actually sent any money to [defendant]"); *see also Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins.*, No. 16AP-742, 2017-Ohio-1461, ¶ 27, 2017 WL 1407304, at \*6 (Ohio Ct. App. Apr. 20, 2017) ("The repair work may have a had the collateral effect of restoring the customer's vehicle to its pre-accident condition, but the connection between Three-C and Nationwide is too indirect to constitute a 'benefit conferred' for purposes of a common law claim of unjust enrichment.").

Second, the County has not pled facts showing that Distributors had "knowledge" of the purported benefit conferred on them by the County and instead relies entirely on a vague allegation that "Defendants were aware of these obvious benefits …."  Compl. ¶ 1115.  Such threadbare and conclusory allegations are not sufficient.  *See, e.g.*, *Ohio Edison Co.*, 2017 WL 3174347, at \*5 ("[T]he mere recitation of an element of a claim, without more, is insufficient to survive a motion to dismiss.").

- 51 -

Third, even assuming that the County's alleged social service expenditures constitute a "benefit" for purposes of unjust enrichment, and that such a benefit was conferred upon Distributors by the County, there is no injustice under the circumstances.  One of the County's essential responsibilities is providing social services to its residents; the fact that the County has provided such services does not translate into a benefit conferred unjustly on Distributors.

## VI.  THE COUNTY'S CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

The elements of a civil conspiracy claim include (1) "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages," and (2) an "underlying unlawful act" that is independent from the conspiracy itself.  *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998); *accord Nilavar v. Mercy Health Sys.-W. Ohio*, 142 F. Supp. 2d 859, 888 (S.D. Ohio 2000).  The County's civil conspiracy claim fails because the Complaint does not adequately allege either that Distributors arrived at a common understanding to engage in unlawful activity or the existence of an underlying wrongful act.

"Under Ohio law, civil conspiracy is an intentional tort."  *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 622 (6th Cir. 1999).  Accordingly, to prevail on a civil conspiracy claim, a plaintiff "must demonstrate that [defendants] purposely committed a wrongful act"—mere negligence is not enough.  *Bevan Grp. 9 v. A-Best Prods. Co.*, Nos. 502694 *et al.*, 2004 WL 1191713, at *8–9 (Ohio Ct. Com. Pl. May 17, 2004) (conspiracy claim fails where it is "grounded solely on a claim of negligent undertaking"), *aff'd sub nom. Bugg v. Am. Standard, Inc.*, No. 84829, 2005-Ohio-2613, 2005 WL 1245043 (Ohio Ct. App. May 26, 2005).[34]  A civil conspiracy claim, moreover, "must be pled with some degree of specificity";

---

[34]  *See Bevan Grp. 9*, 2004 WL 1191713, at *8–9 (conspiracy claim fails where it is "grounded solely on a claim of negligent undertaking"); *Chesher v. Neyer*, 392 F. Supp. 2d 939, 959

"vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Spears v. Chrysler, LLC*, No. 3:08CV331, 2011 WL 540284, at \*11 (S.D. Ohio Feb. 8, 2011).  Where (as here) the acts alleged as the basis for the conspiracy sound in fraud, the circumstances constituting the fraud likewise must be stated with particularity.  *See* Fed. R. Civ. P. 9(b); *Fed. Ins. v. Webne*, 513 F. Supp. 2d 921, 927 (N.D. Ohio 2007).

The County alleges in conclusory fashion that Defendants "engaged in a civil conspiracy to commit fraud and misrepresentation in conjunction with their unlawful marketing of opioids and/or distribution of opioids into Ohio," Compl. ¶ 1124, but the County has pled no facts establishing a cause of action for conspiracy with the requisite particularity for at least two reasons.

First, Summit County has failed to plead the alleged "malicious combination" with the requisite specificity.  Although a plaintiff need not plead that defendants came to an "express agreement," it must plead with some particularity that the defendants had "a common understanding" to commit the alleged unlawful acts.  *Woodward Constr. Inc. v. FOR 1031 Summit Woods I, LLC*, 30 N.E.3d 237, 243 (Ohio Ct. App. 2015).  Here, the Complaint alleges that Distributors engaged in routine commercial activities, such as participation in trade associations and conferences, commercial contractual relationships, and development of industry compliance guidelines, e.g., Compl. ¶¶ 527, 531, 540–41, 545, 547—but none of those allegations comes close to suggesting that Distributors came to an agreement or "common understanding" to commit fraud.  Indeed, the Complaint relies entirely on conclusory allegations

---

(S.D. Ohio 2005) ("An agreement to commit negligence is not possible and, as such, a civil conspiracy must be a conspiracy to commit some type of underlying intentional tort."), *aff'd*, 477 F.3d 784 (6th Cir. 2007); *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) ("The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'").

that defendants "collaborated to expand the opioid market" and "overwhelmingly agreed" to "fail to identify, report or halt suspicious opioid orders," *id.* ¶¶ 762–63, but does not even attempt to identify a specific action by a specific Distributor from which an agreement to commit unlawful activity could reasonably be inferred.  Such "vague [and] conclusory allegations" are not sufficient to state a claim for conspiracy.  *See Spears*, 2011 WL 540284, at *11.

Second, the County has not pled facts establishing an underlying unlawful act.  "[A] plaintiff may not bring a claim for conspiracy unless he can also state a claim for the underlying cause of action," *Nilavar*, 142 F. Supp. 2d at 889, and that cause of action must be an "intentional tort," *Chesher v. Neyer*, 392 F. Supp. 2d 939, 958 (S.D. Ohio 2005).  The County predicates its civil conspiracy claim on alleged "fraud and misrepresentation," in the distribution and marketing of opioids, Compl. ¶ 1124, but as explained above, *supra* pp. 16–21, the Complaint wholly fails to plead any fraud or misrepresentation with the particularity required under Rule 9(b).  The civil conspiracy claim should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the claims of Summit County and its 23 subdivisions should be dismissed with prejudice.

Dated:  May 25, 2018                          Respectfully submitted,


*/s/ Robert A. Nicholas*                      */s/ Enu Mainigi*
Robert A. Nicholas                            Enu Mainigi
Shannon E. McClure                            F. Lane Heard III
**REED SMITH LLP**                            Steven M. Pyser
Three Logan Square                            Ashley W. Hardin
1717 Arch Street, Suite 3100                  **WILLIAMS & CONNOLLY LLP**
Philadelphia, PA 19103                        725 Twelfth Street, NW
Tel: (215) 851-8100                           Washington, DC 20005
Fax: (215) 851-1420                           Tel: (202) 434-5000
rnicholas@reedsmith.com                       Fax: (202) 434-5029
smcclure@reedsmith.com                        EMainigi@wc.com
                                              lheard@wc.com
*Counsel for AmerisourceBergen Corporation*   spyser@wc.com
*and AmerisourceBergen Drug Corporation*      ahardin@wc.com
                                              *Counsel for Cardinal Health, Inc.*

*/s/ Geoffrey Hobart*
Geoffrey Hobart
Mark Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com


*Counsel for McKesson Corporation*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order Number Four (Dkt. 485, May 22, 2018), the Distributors are permitted to file motions to dismiss totaling 150 pages across the following five local government cases set for briefing:

- *Summit County, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090;
- *City of Chicago, Illinois v. Cardinal Health, Inc., et al.*, No. 18-op-45281;
- *Cabell County Comm'n, West Virginia v. AmersourceBergen Drug Corp. et al.*, No. 17-op-45053;
- *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, No. 18-op-4515;
- *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332;

This brief adheres to the limits set forth in Case Management Order Number Four, as it is the Distributors' first brief in the above cases and it totals 54 pages.

*/s/ Ashley W. Hardin*
Ashley W. Hardin

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Ashley W. Hardin*
Ashley W. Hardin