**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*County of Summit, Ohio, et al. v. Purdue
Pharma L.P., et al.*
Case No. 18-OP-45090 (N.D. Ohio)

**MDL No. 2804
Case No. 17-md-2804
Judge Dan Aaron Polster**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT
BY DEFENDANTS WALMART INC., CVS HEALTH CORP., RITE AID CORP., AND
WALGREENS BOOTS ALLIANCE, INC.**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................. ii

INTRODUCTORY STATEMENT OF THE ISSUES AND SUMMARY OF
    ARGUMENT .................................................................................................................. 1

REGULATORY BACKGROUND ................................................................................................. 3

LEGAL STANDARDS ................................................................................................................... 4

ARGUMENT ................................................................................................................................... 4

I.       Plaintiffs Lack Standing to Sue the Moving Defendants. .................................................... 4

II.     Plaintiffs State No Claims Against the Moving Defendants as Pharmacies ....................... 7

III.    The Ohio Product Liability Act Abrogates Plaintiffs' Tort Claims.................................... 8

IV.   Plaintiffs' Negligence Claim is Legally Deficient (Count 7). ........................................... 8

        A.      The Moving Defendants owe no duty to Plaintiffs. ............................................... 8

               1.      The Moving Defendants do not owe a common law duty to
                      Plaintiffs. .................................................................................................. 8

               2.      No duty arises from the Controlled Substances Acts............................... 11

        B.      Plaintiffs cannot establish proximate cause. ........................................................ 14

V.    Plaintiffs' Public Nuisance Claims Fail to Plausibly Allege Any Violation of
       Federal or State Law (Counts 5, 6). .................................................................................. 17

        A.      Statutory public nuisance .................................................................................... 17

        B.      Absolute public nuisance ..................................................................................... 19

VI.   Plaintiffs' Unjust Enrichment Claim Fails Because Plaintiffs Conferred No
       Benefit on the Moving Defendants (Count 10)................................................................. 21

VII.  Plaintiffs Fail to Establish an Actionable Civil Conspiracy Claim (Count 11). .............. 21

VIII.  Plaintiffs' Claim Under Ohio Rev. Code § 2307.60 Fails on Multiple Grounds
       (Count 9). .......................................................................................................................... 23

CONCLUSION.............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.A. v. Ostego Local School Bd. of Educ.*,
   No. 3:15-cv-1747, 2016 WL 7387261 (N.D. Ohio Dec. 21, 2016).........................................23

*A.M. v. Miami Univ.*,
   88 N.E.3d 1013 (Ohio Ct. App. 2017)........................................................................9

*Adelman v. Timman*,
   690 N.E.2d 1332 (Ohio Ct. App. 1997).....................................................................9

*Andersons, Inc. v. Consol, Inc.*,
   348 F.3d 496 (6th Cir. 2003) ..................................................................................21

*Arias v. Dyncorp*,
   738 F. Supp. 2d 46 (D.D.C. 2010) ...........................................................................7

*Armstrong v. Exceptional Child Center, Inc.*,
   135 S. Ct. 1378 (2015)...........................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................... *passim*

*Ashley Cty., Ark. v. Pfizer, Inc.*,
   552 F.3d 659 (8th Cir. 2009) ...........................................................................16, 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................4, 7, 22

*Brown v. Scioto Cty. Bd. of Commrs.*,
   622 N.E.2d 1153 (Ohio Ct. App. 1993).....................................................................20

*Burnside v. Abbott Labs.*,
   505 A.2d 973 (Pa. Super. Ct. 1985)........................................................................23

*Cascone v. Herb Kay Co.*,
   451 N.E.2d 815 (Ohio 1983) ..................................................................................14

*City & Cty. of San Francisco v. Philip Morris, Inc.*,
   957 F. Supp. 1130 (N.D. Cal. 1997) ........................................................................21

*City of Chicago v. Beretta U.S.A. Corp.*,
   821 N.E.2d 1099 (Ill. 2004)...............................................................................15, 20

*City of Cincinnati v. Beretta U.S.A., Corp.*,
   768 N.E.2d 1136 (Ohio 2002) ................................................................................16

*City of Cleveland, Ohio v. Purdue Pharma L.P.*,
   No. 18-OP-45132 (N.D. Ohio) ................................................................................1

*City of Cleveland v. Ameriquest Mortg. Secs., Inc.*,
   621 F. Supp. 2d 513 (N.D. Ohio 2009).................................................................15, 16

## TABLE OF AUTHORITIES
(continued)

Page(s)

*City of Toledo v. Sherwin-Williams Co.*,
   2007 WL 4965044 (Ohio Ct. Common Pleas Dec. 12, 2007) ................................16

*Cleveland v. JP Morgan Chase Bank, N.A.*,
   No. 98656, 2013 WL 1183332 (Ohio Ct. App. Mar. 21, 2013) ...........................15

*Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*,
   835 N.E.2d 701 (Ohio 2005) .........................................................................10

*County of Cuyahoga, Ohio v. Purdue Pharma L.P.*,
   No. 17-OP-45004 (N.D. Ohio) .......................................................................1

*County of Summit, Ohio v. Purdue Pharma L.P.*,
   No. 18-OP-45090 (N.D. Ohio) .......................................................................1

*Coyne v. American Tobacco Co.*,
   183 F.3d 488 (6th Cir. 1999) .........................................................................5

*Crosby v. Beam*,
   615 N.E.2d 294 (Ohio Ct. App. 1992) ..........................................................22

*Davis v. Walmart Stores East, L.P.*,
   687 F. App'x 307 (4th Cir. 2017) .................................................................12

*Doane v. Givaudan Flavors Corp.*,
   919 N.E.2d 290 (Ohio Ct. App. 2009) .....................................................22, 23

*Durr v. Strickland*,
   602 F.3d 788 (6th Cir. 2010) .......................................................................13

*Fed. Ins. Co. v. Webne*,
   513 F. Supp. 2d 921 (N.D. Ohio 2007) ........................................................22

*First Am. Title Co. v. Devaugh*,
   480 F.3d 438 (6th Cir. 2007) .........................................................................4

*Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*,
   560 N.E.2d 206 (Ohio 1990) .......................................................................10

*Gaines-Tabb v. ICI Explosives, USA, Inc.*,
   160 F.3d 613 (10th Cir. 1998) .....................................................................15

*Grey v. Walgreen Co.*,
   967 N.E.2d 1249 (Ohio Ct. App. 2011) ...................................................11, 13

*Hambleton v. R.G. Barry Corp.*,
   465 N.E.2d 1298 (Ohio 1984) .....................................................................21

*Harris v. Purdue Pharma*,
   L.P., 218 F.R.D. 590 (S.D. Ohio 2003) ........................................................10

*Heimberger v. Zeal Hotel Grp., Ltd.*,
   42 N.E.3d 323 (Ohio Ct. App. 2015) .............................................................9

iii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992).........................................................................................14, 16

*In re E.I. du Pont de Nemours*,
   No. 2:13-md-2433, 2015 WL 4092866 (S.D. Ohio July 6, 2015) ..........................12

*In re Multidistrict Vehicle Air Pollution MDL No. 31*,
   481 F.2d 122 (9th Cir. 1973) ..................................................................................7

*In re Tennessee Valley Auth. Ash Spill Litig.*,
   No. 3:09-cv-009, 2012 WL 3647704 (E.D. Tenn. Aug. 23, 2012).........................12

*Jane v. Patterson*,
   No. 1:16-cv-2195, 2017 WL 1345242 (N.D. Ohio Apr. 12, 2017) ........................23

*Jeffers v. Olexo*,
   539 N.E.2d 614 (Ohio 1989) ...........................................................................8, 11

*Jesner v. Arab Bank, PLC*,
   138 S. Ct. 1386 (2018)...........................................................................................12

*Kramer v. Angel's Path, L.C.*,
   882 N.E. 2d 46 (Ohio Ct. App. 2007)....................................................................20

*Labzda v. Purdue Pharma, L.P.*,
   292 F. Supp. 2d 1346 (S.D. Fla. 2003) ..................................................................10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................................4, 5, 6

*Lyshe v. Levy*,
   854 F.3d 855 (6th Cir. 2017) ..................................................................................4

*MAR Oil Co. v. Korpan*,
   973 F. Supp. 2d 775 (N.D. Ohio 2013)..................................................................11

*McCallister v. Purdue Pharma L.P.*,
   164 F. Supp. 2d 783 (S.D. W. Va. 2001)...............................................................13

*McConnell v. Cosco, Inc.*,
   238 F. Supp. 2d 970 (S.D. Ohio 2003) ............................................................16, 17

*Missouri v. Illinois*,
   180 U.S. 208 (1901)................................................................................................6

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)...............................................................................................18

*Mussivand v. David*,
   544 N.E.2d 265 (Ohio 1989) ...........................................................................8, 14

*Myers v. United States*,
   17 F.3d 890 (6th Cir. 1994) ...................................................................................12

iv

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Ortiz v. Kazimer*,
    No. 1:11-cv-01521, 2015 WL 1400539 (N.D. Ohio Mar. 26, 2015)...............................23, 24

*Parsons v. U.S. Dep't of Justice*,
    801 F.3d 701 (6th Cir. 2015) ...............................................................................................6

*Pavlovich v. Nat'l City Bank*,
    435 F.3d 560 (6th Cir. 2006) ........................................................................................10, 24

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
    761 N.Y.S.2d 192 (N.Y. App. Div. 2003) ...........................................................................15

*Power & Tel. Supply Co. v. SunTrust Banks, Inc.*,
    447 F.3d 923 (6th Cir. 2006) .............................................................................................11

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012)............................................................................................................18

*Shivers v. Univ. of Cincinnati*,
    No. 06AP-209, 2006 WL 3008478 (Ohio Ct. App. Oct. 24, 2006).........................................9

*Simpson v. Big Bear Stores Co.*,
    652 N.E.2d 702 (Ohio 1995) ................................................................................................9

*Smith v. Hickenlooper*,
    164 F. Supp. 3d 1286 (D. Colo. 2016)............................................................................12, 13

*Teal v. E.I. DuPont de Nemours & Co.*,
    728 F.2d 799 (6th Cir. 1984) ..............................................................................................13

*Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*,
    693 N.E.2d 271 (Ohio 1998) ................................................................................................8

*Tracy v. Merrell Dow Pharm., Inc.*,
    569 N.E.2d 875 (Ohio 1991) ...........................................................................................9, 10

*Vadaj v. French*,
    89 N.E.3d 73 (Ohio Ct. App. 2017)......................................................................................14

*Valley Forge Christian Coll. v. Ams. United for Separation of
    Church & State, Inc.*,
    454 U.S. 464 (1982)..............................................................................................................5

*Volter v. C. Schmidt Co.*,
    598 N.E.2d 35 (Ohio Ct. App. 1991)....................................................................................14

*Western Reserve Care Sys. v. Masters*,
    No. 97 CA 95, 1999 WL 783951 (Ohio Ct. App. Sep. 28, 1999) .........................................12

**STATUTES**

21 U.S.C. § 355....................................................................................................................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

21 U.S.C. § 821 ..........................................................................................................................3

21 U.S.C. § 822 ..........................................................................................................................3

21 U.S.C. § 823 ......................................................................................................................3, 19

21 U.S.C. § 824 ..........................................................................................................................3

21 U.S.C. § 827 ..........................................................................................................................3

Ohio Admin. Code §§ 4729-9-12 to -9-28 ..............................................................................19

Ohio Admin. Code § 4729-9-16 ................................................................................................3

Ohio Rev. Code § 715.44 ........................................................................................................18

Ohio Rev. Code § 2307.60 ..........................................................................................4, 23, 24

Ohio Rev. Code §§ 2307.71 *et seq.* ......................................................................................16

Ohio Rev. Code § 2925.02 ......................................................................................................24

Ohio Rev. Code § 2925.03 ......................................................................................................24

Ohio Rev. Code §§ 3719.01 to 3719.99 ..................................................................................3

Ohio Rev. Code § 3719.011 ....................................................................................................17

Ohio Rev. Code § 3719.18 ......................................................................................................13

Ohio Rev. Code § 3719.28 ........................................................................................................3

Ohio Rev. Code § 3767.03 ......................................................................................................18

Ohio Rev. Code §§ 4729.01 to 4729.99 ..................................................................................3

Ohio Rev. Code § 4729.01 ......................................................................................................19

Ohio Rev. Code § 4729.26 ........................................................................................................3

Ohio Rev. Code § 4729.35 ..............................................................................................17, 18

Ohio Rev. Code § 4729.52 ........................................................................................................3

Ohio Rev. Code § 4729.56 ........................................................................................................3

**OTHER AUTHORITIES**

21 C.F.R. §§ 1301 *et seq.* ........................................................................................................3

21 C.F.R. § 1301.74 ................................................................................................................19

39 Am. Jur., Nuisances, § 8 ....................................................................................................20

Fed. R. Civ. P. 12 ......................................................................................................................4

Restatement (Second) of Torts § 315 (1964) ............................................................................9

## INTRODUCTORY STATEMENT OF THE ISSUES
## AND SUMMARY OF ARGUMENT

Plaintiffs allege that they have been particularly hard hit by the nationwide "misuse, abuse, and over-prescription of opioids."  Compl. ¶ 2.[1]  Rather than focusing on the prescribing practices and criminal diversion that actually resulted in opioids ending up in the hands of unintended users, however, Plaintiffs have chosen a blunderbuss approach, naming as defendants a broad range of companies involved in the manufacture and distribution of these medicines across the supply chain.  Despite telling a story that may cry out for executive or legislative action and policy-making, the Complaint fails the fundamental requirement of plausibly alleging specific, actionable conduct against Defendants Walmart Inc., Rite Aid Corp., Walgreens Boots Alliance, Inc., and CVS Health Corp. (collectively, the "Moving Defendants").

The focus of the Complaint—more than 200 pages—is on the marketing practices and other conduct by manufacturers of prescription opioids, whom the Complaint styles the "Marketing Defendants."  *See id*. ¶¶ 63-106, 137-497, 746-59, 778-973, 1072-1136.  But the Moving Defendants do not manufacture or market opioids.  Indeed, while the Moving Defendants fall within the group Plaintiffs identify as the "Distributor Defendants," they have never distributed prescription opioids to third parties.  And although Plaintiffs elsewhere refer to the Moving Defendants as "National Retail Pharmacies," the Complaint does not actually assert any claims against them as pharmacies.

---

[1] Case Management Order One calls for a motion to dismiss only in *County of Summit, Ohio v. Purdue Pharma L.P.*, No. 18-OP-45090 (N.D. Ohio).  This motion therefore addresses only that action.  Because the Complaints filed in *City of Cleveland, Ohio v. Purdue Pharma L.P.*, No. 18-OP-45132 (N.D. Ohio), and *County of Cuyahoga, Ohio v. Purdue Pharma L.P.*, No. 17-OP-45004 (N.D. Ohio), are substantively similar and are also governed by Ohio law, the arguments in this motion would apply to those Complaints as well.  Moving Defendants have not addressed any additional claims raised in those Complaints.

In any event, Plaintiffs' allegations against the Moving Defendants are insufficient to sustain a claim against them in any capacity.  The Major Distributor Defendants—AmerisourceBergen Corporation, McKesson Corporation, and Cardinal Health—have explained why the claims against the distributors fail as a matter of law.  *See* Mem. in Support of Distributors' Mot. to Dismiss ("Major Distributors' Brief").  The Moving Defendants incorporate the Major Distributors' relevant arguments by reference here and offer this brief only to raise additional arguments and to highlight why the Court should dismiss all claims against the Moving Defendants.

As a threshold matter, Plaintiffs lack standing because they seek to recover for generalized grievances and indirect harms that cannot, by their own pleadings, be traced to the Moving Defendants.  Even if they had standing, they allege claims against the Moving Defendants only in their capacity as distributors, not pharmacies.  And those tort claims—negligence, nuisance, and unjust enrichment—fail because they have been abrogated by the Ohio Product Liability Act and are also deficient as a matter of law.  No duty runs from the Moving Defendants to Plaintiffs under the common law or any statute.  Plaintiffs cannot establish proximate cause because they allege only a highly attenuated relationship between their generalized, derivative injuries and the Moving Defendants' lawful distribution of opioid medications pursuant to state and federal regulation.  Further, any possible link is broken by countless intervening acts—including by, for example, physicians who improperly prescribed the drugs, individuals who illegally supplied the opioids to third parties, and persons who abused the drugs.  Nor can Plaintiffs establish that the Moving Defendants were unjustly enriched at their expense, created a nuisance that is actionable under statutory or common law, engaged in an unlawful conspiracy, or injured Plaintiffs by any criminal acts.

## REGULATORY BACKGROUND

Both the federal government and the states extensively regulate the production, distribution, and sale of prescription opioid medications.  The federal Food, Drug, and Cosmetic Act allows the marketing and sale of a prescription medication only after the Food and Drug Administration has approved a drug as safe and effective for its intended use.  21 U.S.C. § 355(b)(1)(A).  Under the federal Controlled Substances Act ("CSA"), the Drug Enforcement Agency ("DEA") administers a registration program for handlers of controlled substances and grants licenses only to distributors that satisfy certain statutorily defined requirements.  *See id.* §§ 821-23; 21 C.F.R. §§ 1301 *et seq.*  For its part, the Ohio Controlled Substances Act ("Ohio CSA") imposes additional requirements on distributors through a comprehensive regulatory scheme administered by the Ohio Board of Pharmacy ("Board").  *See* Ohio Rev. Code §§ 3719.01 to 3719.99 (controlled substances); *id.* §§ 4729.01 to 4729.99 (Board and dangerous drugs); *id.* §§ 3719.28 & 4729.26 (Board may adopt rules to enforce and carry out these chapters).

Regulators routinely scrutinize the records and practices of registered distributors of controlled substances, who are required to maintain anti-diversion programs and detailed records of all controlled substances they distribute.  21 U.S.C. § 827(a)(3); Ohio Rev. Code § 4729.52; Ohio Admin. Code § 4729-9-16(D)-(M).  Those records are open to federal and state regulators for inspection.  21 U.S.C. § 827(b)(3); Ohio Admin. Code § 4729-9-16(H)(3).  If at any point a distributor's license is no longer in the public interest or is a danger to the public health and safety, either the DEA or the Board may revoke the registration or impose civil money penalties. 21 U.S.C. § 824(d); Ohio Rev. Code § 4729.56.

## LEGAL STANDARDS

Because "standing is an issue of the court's subject matter jurisdiction," a defendant may raise the plaintiff's lack of standing by bringing a motion to dismiss "under Federal Rule of Civil Procedure 12(b)(1)." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). On a motion to dismiss under Rule 12(b)(6), a court must dismiss a complaint if the facts alleged, viewed in the light most favorable to the nonmoving party, fail to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This pleading standard requires more than the assertion of legal conclusions. *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007). Cursory or conclusory statements are given no weight, and a complaint that raises only the possibility that a defendant acted unlawfully is insufficient as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Finally, under Rule 9(b), allegations of "fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake."

## ARGUMENT

Of the eleven causes of action set forth in their Complaint, Plaintiffs allege six against the Moving Defendants: negligence, unjust enrichment, civil conspiracy, statutory public nuisance, common law absolute public nuisance, and injury through criminal acts under Ohio Revised Code § 2307.60. All of them should be dismissed under Rules 12(b)(1) and 12(b)(6) for the reasons identified by the Major Distributor Defendants and as further explained below.

## I.      Plaintiffs Lack Standing to Sue the Moving Defendants.

Plaintiffs' suit relates to an "opioid disaster" that they assert has affected "most Americans . . . either directly or indirectly." Compl. ¶ 3. They sue over a broad array of public harms, including "severe and far-reaching public health, social services, and criminal justice consequences." *Id.* ¶ 20. Such generalized grievances and derivative harms are not cognizable under Article III. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

4

To satisfy the Article III injury-in-fact requirement, a plaintiff must claim "an invasion of a legally protected interest" that is, among other things, "concrete and particularized," *id*. at 560—*i.e.*, that "affect[s] the plaintiff in a personal and individual way," *id*. at 560 n.1. A plaintiff cannot base a claim on a "generalized grievance" that "no more directly and tangibly" affects the plaintiff "than it does the public at large." *Id*. at 574-75. A plaintiff likewise suffers no "personal and individual" injury where the harm affects third parties rather than the plaintiff itself. "The plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) (quotation omitted).

Binding Sixth Circuit precedent forecloses standing here because Plaintiffs allege injuries that are common to the general public and derivative of harm incurred by third parties. In *Coyne v. American Tobacco Co*., 183 F.3d 488 (6th Cir. 1999), two locally elected Ohio public officials sued tobacco companies on the ground that the State of Ohio had "expended sums of money to pay for the health care of Ohio citizens due to tobacco-attributable illnesses." *Id*. at 491. The Sixth Circuit held that the public officials lacked standing on multiple grounds. First, they asserted only a generalized grievance, because the fiscal harms caused by tobacco affected the State as a whole. *Id*. at 495. Second, the officials' injury was "merely derivative" rather than "direct"; any harms to the officials were merely the consequence of "injury to others" (such as "individual smokers"). *Id*. The court emphasized that "'a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover.'" *Id*. (quoting *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 268–69 (1992)).

Plaintiffs stand in the same shoes as the government officials in *Coyne*.  They assert a textbook "generalized grievance," claiming damages based on the fact that governments in Ohio have expended sums of money to pay for the health care of Ohio citizens due to opioid-attributable illnesses.  Plaintiffs have alleged nothing to set themselves apart from the public at large.  The harms Plaintiffs allege—"[c]osts for providing healthcare and medical care," "[c]osts of training emergency and/or first responders in the proper treatment of drug overdoses," and "[c]osts for providing mental-health services . . . to the victims of the opioid epidemic" (Compl. ¶ 902)—are at most the consequence of injury to others (individual opioid users), rather than direct injuries to Plaintiffs.  Because these alleged harms are merely derivative rather than direct, Plaintiffs lack standing under *Coyne*.

Plaintiffs are also required to show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal citation, quotation, and alterations omitted).  Although "the causation need not be proximate," standing "is generally more difficult to establish when the injury is indirect."  *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 713 (6th Cir. 2015).  Here Plaintiffs' harms are so indirect that not only is proximate cause lacking (as explained in Part IV.B below), but even the minimal requirements of Article III are not met.

Plaintiffs may not evade these problems by asserting a theory of "*parens patriae* standing."  Under this theory, a government, as "*parens patriae*," may in some circumstances bring a lawsuit to protect "the health and comfort of its inhabitants," even though it alleges no direct injury to itself.  *Missouri v. Illinois*, 180 U.S. 208, 241 (1901).   But only a sovereign—the United States or a State—may bring a *parens patriae* lawsuit.  Since Plaintiffs are political

6

subdivisions rather than States, they may not use the *parens patriae* doctrine to sue for injuries to their citizens.  *See In re Multidistrict Vehicle Air Pollution MDL No. 31*, 481 F.2d 122, 131 (9th Cir. 1973) ("[P]olitical subdivisions such as cities and counties, whose power is derivative and not sovereign, cannot sue as *parens patriae*."); *accord Arias v. Dyncorp*, 738 F. Supp. 2d 46, 53 (D.D.C. 2010).

## II.  Plaintiffs State No Claims Against the Moving Defendants as Pharmacies.

The Complaint purports to state claims against the Moving Defendants in their capacities as distributors, not as dispensing pharmacies:  It classifies the Moving Defendants as "Distributor Defendants," Compl. ¶ 127, and its claims for relief focus on the marketing, distribution, and sale of opioids by marketers and distributors—not on filling prescriptions or dispensing medications, *id*. ¶¶ 878-1137; *see also, e.g.*, *id*. ¶ 568 (referring to "sales" by a manufacturer).  Yet, presumably in an effort to add color otherwise lacking from their unsupported distributor claims against the Moving Defendants, Plaintiffs make a handful of vague allegations that refer to some of the Moving Defendants in their role as dispensing pharmacies.  *E.g.*, *id*. ¶¶ 611-26.

To the extent that Plaintiffs intended these allegations to plead claims against the Moving Defendants as dispensing pharmacies rather than distributors, those claims fail and should be dismissed.  The allegations at paragraphs 592-607 of the Complaint are manifestly insufficient under *Iqbal* and *Twombly* because they are vague, conclusory, and generic boilerplate.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56.  Paragraphs 592-599 simply offer context, not allegations of any conduct by the Moving Defendants, while paragraphs 599-607 are exactly the sort of "'naked assertion[s]' devoid of 'further factual enhancement'" that are legally insufficient under.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, while Plaintiffs describe dispensing conduct by *some* (though not all) of the Moving Defendants in

*other* jurisdictions (Compl. ¶¶ 628-59), such allegations cannot support claims against the Moving Defendants as dispensing pharmacies in Summit County.

## III.     The Ohio Product Liability Act Abrogates Plaintiffs' Tort Claims.

The Court should dismiss Plaintiffs' tort claims because they have been abrogated by the Ohio Product Liability Act ("OPLA").  *See* Major Distributors' Brief Parts III.A & IV.A.

## IV.     Plaintiffs' Negligence Claim is Legally Deficient (Count 7).

Even if it were not superseded by OPLA, Plaintiffs' negligence claim would still fail as a matter of law.  To state a negligence claim, a plaintiff must adequately plead that defendants owed a duty to the plaintiff, defendants breached this duty, and the breach proximately caused the plaintiff's injury.  *See Texler v. D.O. Summers Cleaners & Shirt Laundry Co*., 693 N.E.2d 271, 274 (Ohio 1998).  As the Major Distributors have demonstrated, the Complaint fails to adequately allege any of these required elements.  Most notably, the Moving Defendants do not owe Plaintiffs any duty, based either on the common law or on any statute, and Plaintiffs fail to plausibly plead that any conduct by the Moving Defendants proximately caused Plaintiffs' alleged injuries.

### A.     The Moving Defendants owe no duty to Plaintiffs.

The existence of a legal duty running from the defendant to the plaintiff is "fundamental" to a negligence claim, *Jeffers v. Olexo*, 539 N.E.2d 614, 616 (Ohio 1989), and "is a question of law for the court to determine," *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989).  No legally cognizable duty runs from the Moving Defendants to Plaintiffs.

#### 1.     The Moving Defendants do not owe a common law duty to Plaintiffs.

Plaintiffs allege that the Moving Defendants have a general common law duty to exercise care in the distribution of opioids, and specifically to detect, identify, or report suspicious orders. *E.g*., Compl. ¶¶ 107, 498-99, 501-05, 512-13, 611-13.  But no such duty exists at common law.

*First*, "under Ohio law, there is no duty to prevent a third person from causing harm to another absent a special relation between the parties." *Simpson v. Big Bear Stores Co*., 652 N.E.2d 702, 705 (Ohio 1995). Ohio courts have found that such a relationship exists between, for example, business owners and invitees, *id*., physicians and patients, *Tracy v. Merrell Dow Pharm., Inc*., 569 N.E.2d 875, 878 (Ohio 1991), and students and academic institutions, *A.M. v. Miami Univ.*, 88 N.E.3d 1013, 1023 (Ohio Ct. App. 2017). No such relationship exists between Plaintiffs and the Moving Defendants. Because Plaintiffs do not (and cannot) allege that the Moving Defendants distributed opioids directly to them, there was no agreement or exchange between Plaintiffs and the Moving Defendants that could even arguably have created a "special relation" between them. *Adelman v. Timman*, 690 N.E.2d 1332, 1336 (Ohio Ct. App. 1997).

*Second*, the existence of a duty is foreclosed by the highly attenuated connection— subject to multiple intervening acts, including criminal misconduct—between the Moving Defendants' alleged conduct and Plaintiffs' alleged injuries. *See* Part IV.B *infra*. This defect in Plaintiffs' claims means not just that the Moving Defendants did not proximately cause Plaintiffs' injuries, but also that Plaintiffs are so far removed from the Moving Defendants' alleged conduct that no duty can run between them. *See Shivers v. Univ. of Cincinnati*, No. 06AP-209, 2006 WL 3008478, at *2 (Ohio Ct. App. Oct. 24, 2006); *Heimberger v. Zeal Hotel Grp., Ltd*., 42 N.E.3d 323, 330 (Ohio Ct. App. 2015).

Indeed, it is hornbook law that the Moving Defendants have no common law duty to protect the public (or, *a fortiori*, government entities indirectly injured by alleged harm to the public) from third parties' misuse of lawful products or from other criminal activity. *See generally* Restatement (Second) of Torts § 315 (1964). One federal court concluded, for example, that a pharmaceutical company had no duty to control a physician's practice of

9

prescribing opioid medications or to police the products' use in the stream of commerce.  *See Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1353 (S.D. Fla. 2003).  That court dismissed a suit against the drug manufacturer by parents whose son died from misusing prescription OxyContin, reasoning that, among other things, the defendant had no duty to control the doctor's practice of prescribing the drug.  *Id.* at 1353-55 (finding no "duty on the defendants to interfere with the physician-patient relationship, even if they were aware that the product may have been prescribed inappropriately").

The reasoning in *Labzda* applies with equal force under Ohio law, which recognizes that the physician, as a "learned intermediary," bears an intervening "duty to know the patient's condition as well as the qualities and characteristics of the drugs or products to be prescribed for the patient's use," *Tracy*, 569 N.E.2d at 878.  "The physician is sophisticated and can ascertain whether pressure from a patient is an indication of addictive behavior, and use his clinical judgment to address the problem."  *Harris v. Purdue Pharma*, L.P., 218 F.R.D. 590, 598 (S.D. Ohio 2003) (applying Ohio's learned intermediary doctrine to a putative class action against manufacturers of OxyContin).

*Third,* the "economic loss rule" precludes recognizing a duty on the part of the Moving Defendants to protect Plaintiffs from their indirect and purely economic injuries.  Under that rule, "there is no duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things."  *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 208 (Ohio 1990) (quotation omitted); *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005); *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006).  Plaintiffs' requested relief falls squarely within the rule because they seek damages related to the diagnosis

10

and treatment of abuse and addiction of others, for the costs of care and treatment of others, for

law enforcement costs associated with opioid addiction, abuse, and diversion, and for care of

children in the foster care system.  *See* Compl. ¶¶ 20, 728-45, 1062-63.  Although Plaintiffs

purport to seek costs for property damage, the Complaint says nothing about what type of

property was allegedly damaged or how that damage supposedly occurred.  *See id*. ¶¶ 848, 874,

1000, 1025, 1063.

*Finally*, Plaintiffs cannot ground a common law duty in "industry standards," *see  id*.

¶ 522, because such standards have no independent legal force and do not establish a legal duty

of care.  Although industry standards may help establish the *level* of care owed where a duty

already exists, they do not establish the existence of a duty in the first place.  *See Power & Tel.*

*Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932-33 & n.5 (6th Cir. 2006) (noting breach of

standard of care, not underlying duty, may be established by industry standards); *MAR Oil Co. v.*

*Korpan*, 973 F. Supp. 2d 775, 786 (N.D. Ohio 2013) (same).

### 2.    No duty arises from the Controlled Substances Acts.

Plaintiffs also assert that "Defendants had a duty not to breach the standard of care

established" under the Ohio and federal CSAs.  Compl. ¶ 1042.  Plaintiffs cannot bring a

negligence action based on alleged breaches of duties created by the CSAs because: (1) any duty

the Moving Defendants owed under the CSAs, if one exists, would be to the Ohio and federal

governments, not Plaintiffs; and (2) Plaintiffs lack a cause of action under the CSAs.

As an initial matter, a plaintiff may bring a negligence lawsuit for violation of a statute

*only* where the defendant owes a duty *to the plaintiff* to obey that statute—that is to say, where

the plaintiff has a personal right to insist on compliance with the statute.  *See Grey v. Walgreen*

*Co.*, 967 N.E.2d 1249, 1253 (Ohio Ct. App. 2011) (plaintiff must show both a "personal right"

and a "private remedy" to sue for violation of a statute); *Jeffers*, 539 N.E.2d at 616.  Merely

showing that the defendant violated the statute does not establish that the defendant violated a duty to the plaintiff.  Although a violation of a statute can amount to negligence per se, that doctrine goes only to the standard of care that applies when a duty already exists.  *See Myers v. United States,* 17 F.3d 890, 899 (6th Cir. 1994); *accord Davis v. Walmart Stores East, L.P.*, 687 F. App'x 307, 312 (4th Cir. 2017) ("'[A] statute setting the standard of care does not create the duty of care.'" (citation omitted)).

The federal and Ohio CSAs do not impose on the Moving Defendants any duty of care toward Plaintiffs.  To the contrary, to the extent the statutes create any duties at all, these duties are owed exclusively to the federal government and Ohio.  As set forth above, the relevant provisions of these statutes require registration with, and reporting to, the federal and state governments, with any possible sanctions levied by those governments.  Cities and counties have no special place in this statutory scheme, and there is no basis for inferring that the statutes create a special duty to them.

Moreover, to bring a lawsuit predicated on a violation of a statute, a plaintiff must show that the statute creates a cause of action for the violation.  *See Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015); *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1402 (2018).[2]  The federal CSA "does not create a private right of action."  *Smith v. Hickenlooper*, 164

---

[2] This principle applies even where plaintiffs style their lawsuits as "negligence" or "negligence per se" actions.  "Were [a court] to permit [plaintiffs] to proceed on the basis of negligence" absent a statutory cause of action, it would "in effect, be permitting a private cause of action" the legislature has not provided—a step courts should "refuse" to take.  *Myers*, 17 F.3d at 901; *see, e.g., id.* ("Where Congress has refused to create an express cause of action … we decline to infer a cause of action … through a misapplication of negligence per se principles"); *accord In re E.I. du Pont de Nemours*, No. 2:13-md-2433, 2015 WL 4092866, at *25 (S.D. Ohio July 6, 2015); *In re Tennessee Valley Auth. Ash Spill Litig.*, No. 3:09-cv-009, 2012 WL 3647704, at *59 (E.D. Tenn. Aug. 23, 2012); *Western Reserve Care Sys. v. Masters*, No. 97 CA 95, 1999 WL 783951, at *4 (Ohio Ct. App. Sep. 28, 1999).  The same is true for a

F. Supp. 3d 1286, 1290 (D. Colo. 2016); *see also Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010); *McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783, 793 (S.D. W. Va. 2001). Neither does the Ohio CSA.  *See* Major Distributors' Brief Part IV.B.  Far from creating a cause of action for litigants like Plaintiffs to seek damages for negligence, the Ohio statute establishes enforcement mechanisms that do *not* depend on damages lawsuits.  *See Grey*, 967 N.E.2d at 1253 (declining to infer private cause of action unless the General Assembly clearly creates one).

To be sure, § 3719.18 states that "[t]he state board of pharmacy, its officers, agents, inspectors, and representatives, and all officers within the state, and all prosecuting attorneys, shall enforce Chapters 2925 and 3719 … and cooperate with all agencies charged with the enforcement of the laws … relating to controlled substances."  Ohio Rev. Code § 3719.18(A). But this provision, which is captioned "enforcement officers" and refers generically to "enforcement," simply designates the officials responsible for using the enforcement mechanisms set out elsewhere in the statute.  It does not itself create any additional enforcement mechanisms.  And it does not refer to—much less clearly provide for—new rights of action. Interpreting this provision to establish causes of action would mean that every individual "agen[t]" of the state board of pharmacy and even individual "office[rs] within the state" (such as the Agriculture Commissioner or the Superintendent of Schools) would have independent authority to "enforce" the Act by bringing his own right of action.  There is no reason to think that the General Assembly intended such a result.[3]  Because the Moving Defendants owe no

---

claim purportedly brought for violations of regulations.  *See, e.g., Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799, 802 (6th Cir. 1984).

[3] As discussed in Part V.A below, one statutory provision, Ohio Chapter 4729, provides Plaintiff Counties with the authority to bring an action in nuisance for alleged violations of the Ohio or federal CSAs.  That authority does not provide the counties, or any other plaintiff, with the authority to seek damages for violations of either CSA in an action for negligence.

13

legal duty to Plaintiffs, the Court should dismiss Plaintiffs' negligence claim on this basis alone. *See Mussivand*, 544 N.E.2d at 270.

>B. **Plaintiffs cannot establish proximate cause.**

To establish proximate cause—a necessary element of any negligence claim, *Vadaj v. French*, 89 N.E.3d 73, 77 (Ohio Ct. App. 2017)—a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged," *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). The law does not recognize claims for injuries that are too indirect or remote from the alleged conduct. *See Vadaj*, 89 N.E.3d at 77; *see also Holmes*, 503 U.S. at 268. The Complaint does not plausibly plead any direct link between the Moving Defendants' actions and the sweeping, generalized public harms Plaintiffs allege. *See, e.g.*, Compl. ¶ 20 (citing increased expenditures for the "handling of emergency responses to overdoses" and "providing addiction treatment"); *id.* ¶ 1062 ("expenses for police, emergency, health, prosecution, corrections, rehabilitation, and other services"); *id.* ¶ 1063 ("stigma damage, non-physical property damage, and damage to its proprietary interests"). Nor could it do so, since Plaintiffs' theory of causation suffers from multiple fatal defects as a matter of law.

*First*, any chain of causation is severed by the intervening conduct of other, independent actors—some of which was criminal. *See Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 819-20 (Ohio 1983). Plaintiffs expressly plead that criminal acts intervened in the alleged causal chain between the Moving Defendants' conduct and Plaintiffs' alleged harms, undertaken not only by individuals seeking to obtain opioids, but by physicians themselves who participated in illegal "pill mills." Compl. ¶¶ 495, 661-70, 710, 722. These allegations alone are enough to warrant dismissal, because under Ohio law "an intentional tort committed by a third party constitutes an intervening act which supersedes the negligence of the party creating the risk of harm, and relieves that party from liability." *Volter v. C. Schmidt Co.*, 598 N.E.2d 35, 37 (Ohio Ct. App.

1991) (citing Restatement (Second) of Torts § 442(B) (1965)); *see also Gaines-Tabb v. ICI Explosives, USA, Inc*., 160 F.3d 613 (10th Cir. 1998); *City of Chicago v. Beretta U.S.A. Corp.,* 821 N.E.2d 1099, 1136 (Ill. 2004); *People ex rel. Spitzer v. Sturm, Ruger & Co*., 761 N.Y.S.2d 192, 195-202 (N.Y. App. Div. 2003).

*Second*, even leaving aside criminal conduct, by Plaintiffs' own allegations there are too many intervening causes to permit a finding of proximate cause against the Moving Defendants. Plaintiffs do not allege that the Moving Defendants ever sold or distributed anything directly to them or ever did anything that caused Plaintiffs any direct harm.  Instead, according to Plaintiffs, their injuries are attributable to—at the least—the improper prescribing practices of physicians who prescribed opioids (in many cases just unnecessarily but other times with criminal intent), the acts of persons who illegally or improperly supplied prescription opioids to third parties, and the behavior of the persons who abused the prescription opioids or transitioned to other drugs such as heroin.  *See* Compl. ¶¶ 495, 661-70, 710, 722.  As the Major Distributors explain more fully, just such a multiplicity of intervening causes is one of the reasons Cleveland's foreclosure-crisis lawsuit fell short.  *See City of Cleveland v. Ameriquest Mortg. Secs., Inc*., 621 F. Supp. 2d 513, 516, 533-34 (N.D. Ohio 2009) (holding that "the potential number of intervening causes borders on incalculable," and thus "[i]t would be tremendously difficult, if not completely impossible, to determine which of [Plaintiffs'] damages are attributable to Defendants' alleged misconduct and not to some absent party"), *aff'd* 615 F.3d 496, 505 (6th Cir. 2010) (concluding that "the complaint does not satisfy the directness requirement" under *Holmes*); *see also Cleveland v. JP Morgan Chase Bank, N.A*., No. 98656, 2013 WL 1183332, at \*4 (Ohio Ct. App.

Mar. 21, 2013) (citing *Ameriquest* and ruling too many intervening factors prevented Cleveland from demonstrating proximate cause in subprime loan suit).[4]

The same reasoning also led a court to dismiss Arkansas counties' complaint against drug manufacturers and distributors for costs related to the methamphetamine epidemic. *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 667-73 (8th Cir. 2009) (affirming judgment on the pleadings). In that case, the counties sued the manufacturer of cold medicines that purchasers used to make methamphetamine. The court concluded that the intervening causes of methamphetamine abuse—including illegal use of the medication and illegal distribution to others, *id.*—were "sufficient to stand as the cause of the injury to the Counties in the form of increased government services," *id.* at 670 (internal quotations omitted). The same logic applies with full force here.

*Third*, the required "direct relation between the injury asserted and the injurious conduct alleged" is absent because Plaintiffs' own allegations show that their injuries are derivative of harms suffered by third parties. *Holmes*, 503 U.S. at 268; *see, e.g.*, Compl. ¶¶ 20, 734, 1007. Cleveland's foreclosure-crisis lawsuit fell short for the same reason: As the district court in *Ameriquest* explained, "[w]hile the foreclosure crisis ultimately wound up driving tax-paying property owners from their homes and depressed the values of neighboring properties, the reduction in value affected the property owners in the first instance, not the City. The City's claimed injury is therefore derivative and, as a consequence, fails as a matter of law for lack of proximate causation." 621 F. Supp. 2d. at 535-36; *accord McConnell v. Cosco, Inc.*, 238 F.

---

[4] The proximate cause analysis is governed by *Ameriquest*, not *City of Cincinnati v. Beretta U.S.A., Corp.*, 768 N.E.2d 1136 (Ohio 2002) (allowing suit against gun manufacturers to go forward). *City of Cincinnati* was an outlier that went against the weight of authority even when it was issued; it has since been abrogated by the General Assembly and no longer has controlling effect. *See City of Toledo v. Sherwin-Williams Co.*, 2007 WL 4965044, at n.2 (Ohio Ct. Common Pleas Dec. 12, 2007); Ohio Rev. Code §§ 2307.71 *et seq.* (product liability claims).

Supp. 2d 970, 982 (S.D. Ohio 2003).  The same is true here: as discussed in more detail in Part I above, the opioid crisis has in the first instance affected the individuals harmed directly by opioid abuse and addiction; it has affected Plaintiffs only derivatively.

**V.     Plaintiffs' Public Nuisance Claims Fail to Plausibly Allege Any Violation of Federal or State Law (Counts 5, 6).**

Even if Plaintiffs' public nuisance claims were not abrogated by OPLA, they would fail on their own terms.

**A.     Statutory public nuisance**

Ohio law provides a limited statutory cause of action for government entities to enjoin or abate activities defined to be public nuisances.  Section 4729.35 of the Ohio Revised Code declares violating the laws of Ohio or the United States or a rule of the Board of Pharmacy controlling the distribution of a drug of abuse to be a public nuisance.  *Id; see also id.* § 3719.011 (defining "drug of abuse" to include controlled substances).  Plaintiffs allege that "Defendants" as a group violated or aided and abetted the violation of state and federal law in their distribution and sale of prescription opioids.  Compl. ¶ 984.  Specifically, Plaintiffs claim that Defendants facilitated and encouraged the flow of drugs into an illegal market; failed to maintain effective controls against diversion; failed to monitor, investigate, or report suspicious orders; failed to suspend shipments of suspicious orders; and distributed to "pill mills."  *Id.* ¶ 985.

As an initial matter, all Plaintiffs other than Summit County lack authority to maintain this statutory nuisance claim.  Ohio law provides that only "the attorney general, the prosecuting attorney of any county in which the offense was committed or in which the person committing the offense resides, or the state board of pharmacy may maintain" a statutory nuisance action for a controlled-substances nuisance.  Ohio Rev. Code § 4729.35.  The Plaintiffs that are cities and their officers do not fall within any of these categories.

The city Plaintiffs cite the general nuisance statute, § 3767.03, which empowers certain city officials to bring nuisance actions, and the municipal-powers statute, § 715.44, which empowers municipal corporations to sue to abate nuisances.  Compl. ¶ 977.  But when the legislature has enacted both a "general authorization" and a "more limited, specific authorization" that "deliberately target[s] specific problems with specific solutions," "the terms of the specific authorization must be complied with."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).  Here, § 3767.03 and § 715.44 grant general authorizations to bring nuisance actions.  By contrast, § 4729.35 grants a more limited, specific authorization to bring controlled-substance nuisance actions: it deliberately targets a specific problem (controlled-substance violations) with a specific solution (lawsuits by the attorney general, county prosecutors, and the state board of pharmacy).  The terms of this specific authorization therefore control and supersede the general authorization statutes.  *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

In any event, the statutory nuisance claim fails as brought by all parties because Plaintiffs' Complaint offers no more than conclusory factual allegations and legal conclusions about the Moving Defendants' purported violations of the law necessary to support such a claim.  To begin with, Plaintiffs do not allege that the Moving Defendants exercise any control over which medications doctors prescribe or in what doses and quantities.  They do not allege that the Moving Defendants control the manner in which patients use medications after they are dispensed under a valid prescription, or any of the illegal activities that patients might engage in to procure opioid medication.  And they do not allege that Moving Defendants manufactured or marketed the medications at issue.

At most, Plaintiffs present the bare fact that the Moving Defendants distributed a fraction of the opioid medications distributed in Ohio, *see, e.g.*, Compl. ¶¶ 694-95, but that alone cannot constitute a breach of any duty owed to Plaintiffs. Moreover, although Plaintiffs accuse the Moving Defendants of certain omissions (failing to identify suspicious prescriptions, to identify patterns, and to analyze the number of opioid prescriptions for indications of diversion, *id.* ¶¶ 622-26), these general, unfounded, and conclusory allegations fail to satisfy the requisite pleading standards. *See Iqbal*, 556 U.S. at 678.

Finally, the Complaint fails to adequately allege that the Moving Defendants violated any of the statutes and rules Plaintiffs claim they have violated. Plaintiffs assert that Defendants violated Ohio licensing provisions, which require distributors to keep records and inventory, fulfill licensing obligations, store drugs appropriately, and allow for inspections. *See* Compl. ¶ 984; Ohio Rev. Code § 4729.01; Ohio Admin. Code §§ 4729-9-12 to -9-28. But the Complaint contains no specific allegations of any such recordkeeping defaults. It does not allege even one instance in which any one of the Moving Defendants supposedly failed to keep records or inventory lists, fulfill licensing obligations, store drugs appropriately, or allow inspectors access *in Ohio*, much less in Summit County. With respect to the federal laws allegedly violated, 21 U.S.C. § 823; 21 C.F.R. § 1301.74, Plaintiffs have not plausibly alleged that the Moving Defendants failed to maintain effective controls against diversion or failed to disclose suspicious orders in or affecting Summit County. Absent violation of federal or state law, on the Ohio statute's own terms, there is no well-pleaded statutory public nuisance claim.

### B. Absolute public nuisance

Plaintiffs' claim for absolute public nuisance also fails. *First*, that theory does not remotely fit this case. An absolute nuisance ordinarily involves an inherently dangerous activity "that cannot be maintained without injury to property, no matter what precautions are taken."

*Kramer v. Angel's Path, L.C.*, 882 N.E. 2d 46, 52 (Ohio Ct. App. 2007). But that description does not apply to the Moving Defendants' alleged conduct—the distribution of a prescription medication that is authorized and extensively regulated by state and federal law. In fact, no "actionable" nuisance tort lies where, as here, "a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct exist." *Brown v. Scioto Cty. Bd. of Commrs.*, 622 N.E.2d 1153, 1158-60 (Ohio Ct. App. 1993); 39 Am. Jur., Nuisances, §8 ("Public nuisances always arise out of unlawful acts, and that which is lawful, or is authorized by a valid statute, or which the public convenience imperatively demands, cannot be a public nuisance.").

Plaintiffs try to make up for this poor fit by claiming that several of the Moving Defendants intentionally violated the CSA, but their only support for that assertion is prior enforcement actions related to other kinds of conduct (predominantly pharmacy conduct, not distributor conduct like that alleged here) in other jurisdictions. *See* Compl. ¶¶ 627-59. There are no factual assertions as to any intentional conduct within or affecting Summit County. These allegations do not suffice under *Iqbal*, 556 U.S. at 678-79.

*Second*, "[t]o recover damages under a claim of public nuisance, the plaintiff must establish," among other things, "an interference with a public right." *Kramer*, 882 N.E.2d at 52. But there is no common law "public right to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, a car, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another." *City of Chicago*, 821 N.E.2d at 1116. The absolute nuisance claim should be dismissed

20

**VI.  Plaintiffs' Unjust Enrichment Claim Fails Because Plaintiffs Conferred No Benefit on the Moving Defendants (Count 10).**

To state a valid claim for unjust enrichment, a plaintiff must allege that a defendant retains money or benefits that in justice and equity belong to the plaintiff.  *See, e.g., Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984).  Plaintiffs' unjust enrichment claim should be dismissed not just because OPLA abrogates it, but also because (as the Major Distributors have explained) it duplicates Plaintiffs' other tort claims, and Plaintiffs fail to satisfy the essential elements of the claim.  Liability for a claim of unjust enrichment is measured in terms of the benefit the plaintiff conferred on the defendant, *see Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) (applying Ohio law), and Plaintiffs have not conferred any benefit on the Moving Defendants.  *See, e.g., City & Cty. of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130 (N.D. Cal. 1997).  Nowhere in the Complaint do Plaintiffs say *they* purchased opioids *from* the Moving Defendants.  And the Moving Defendants, like the manufacturers of cold medicine sued in *Ashley County*, "cannot be said to be the beneficiaries of the services provided by the Counties," 552 F.3d at 666.

**VII.  Plaintiffs Fail to Establish an Actionable Civil Conspiracy Claim (Count 11).**

Plaintiffs' civil conspiracy claim fails because the Complaint contains no legally cognizable allegations that the Moving Defendants engaged in any conspiracy.  The Complaint baldly asserts that "Defendants" as a group engaged in a conspiracy in their unlawful marketing or distribution of opioids, Compl. ¶ 1123, but then presents allegations only with respect to the Marketing Defendants.  For instance, Plaintiffs allege a civil conspiracy to "commit fraud and misrepresentation," *id.* ¶¶ 1124, 1126, 1132, but the Moving Defendants are expressly excluded from the Complaint's fraud claim, *see id*. ¶¶ 1072-89.  And the Complaint otherwise contains no specific allegations about fraudulent activity by the Moving Defendants.

Plaintiffs also allege a conspiracy in furtherance of RICO and Ohio Corrupt Practices Act violations, *id.* ¶ 1127, but again those counts and accompanying factual allegations expressly exclude the Moving Defendants, *see id.* ¶¶ 878-973.  Although the Complaint devotes more than 100 pages to alleged "schemes" by the Marketing Defendants, *see id.* ¶¶ 174-494, 746-58, just two paragraphs refer in general terms to financial relationships between distributors and manufacturers, *id.* ¶¶ 527-28, and a mere seven paragraphs are devoted to generic assertions that "Defendants" as a whole conspired together, based on the vague allegation that Defendants are part of a "tightly knit industry" that "operated together as a united entity," *see, e.g., id.* ¶ 761.

These bare-bones allegations do not suffice to state a conspiracy claim.  They certainly do not meet the heightened pleading standard for fraud-based claims.  *See, e.g., Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 927 (N.D. Ohio 2007) (underlying fraud claim must be pleaded with particularity); *Crosby v. Beam*, 615 N.E.2d 294, 300 (Ohio Ct. App. 1992) (setting forth elements of conspiracy based on fraud).  To the extent Plaintiffs' conspiracy claim is premised on an underlying tort, Plaintiffs' tort claims have been abrogated and fail on their own terms for reasons explained above.  *See Doane v. Givaudan Flavors Corp.*, 919 N.E.2d 290, 298 (Ohio Ct. App. 2009) (a civil conspiracy "requires an underlying tortious act that causes an injury").

At most, the Complaint describes parallel conduct by the Moving Defendants as they engage in a lawful, highly regulated activity.  But "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to state a claim.  *Twombly*, 550 U.S. at 556-57.  And despite asserting that "Defendants" failed to report the alleged unlawful distribution practices of their competitors, and that they had "an actual or tacit agreement" not to report unlawful behavior to the authorities, Compl. ¶ 1130, the Complaint fails to allege the manner in which the Moving Defendants would have devised or carried out such a conspiratorial scheme.  Further,

even if the Moving Defendants failed (as Plaintiffs allege) to identify or report suspicious orders, *see id.* ¶¶ 611-26, there is no factual allegation that they did so *together* in a coordinated effort rather than as individual corporations. "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Burnside v. Abbott Labs.*, 505 A.2d 973, 980 (Pa. Super. Ct. 1985) (quotation omitted) (upholding trial court's ruling in favor of pharmaceutical company on conspiracy claim).

In sum, because the Complaint fails to allege "a malicious combination of two or more persons to injure another person in person or property" on the part of any of the Moving Defendants, the civil conspiracy claim fails as a matter of law. *See Doane*, 919 N.E.2d at 298.

## VIII. Plaintiffs' Claim Under Ohio Rev. Code § 2307.60 Fails on Multiple Grounds (Count 9).

Ohio law provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law." Ohio Rev. Code § 2307.60. In addition to Plaintiffs' failure to plead proximate causation (for the reasons explained above), this claim should be dismissed for several reasons.

*First*, Plaintiffs do not allege that any of the Moving Defendants have been convicted of a crime. That omission ends the matter, because claims under § 2307.60 "are not viable in the absence of a criminal conviction." *Jane v. Patterson*, No. 1:16-cv-2195, 2017 WL 1345242, at *4 (N.D. Ohio Apr. 12, 2017); *see also, e.g.*, *A.A. v. Ostego Local School Bd. of Educ.*, No. 3:15-cv-1747, 2016 WL 7387261, at *9 (N.D. Ohio Dec. 21, 2016) ("[T]he allegations in this claim aimed at civil recovery for a criminal act … are not viable in the absence of a criminal conviction" (citing Ohio Rev. Code § 2307.60)); *Ortiz v. Kazimer*, No. 1:11-cv-01521, 2015 WL

1400539, at *12 (N.D. Ohio Mar. 26, 2015), *aff'd sub nom. Ortiz ex rel. Ortiz v. Kazimer*, 811 F.3d 848 (6th Cir. 2016).

Plaintiffs do allege that some (though not all) of the Moving Defendants have been involved in "enforcement actions" brought by various entities outside Ohio.  Compl. ¶ 1102.  But they do not allege that any of these actions resulted in a court judgment adverse to any Moving Defendant, much less a criminal conviction.  And Plaintiffs' references to RICO and the Ohio Corrupt Practices Act are irrelevant to their claim against the Moving Defendants, because Plaintiffs do not allege that the Moving Defendants even violated those laws, much less were convicted of doing so.  *Id*.  Also irrelevant are Plaintiffs' allegations that *other* entities have pleaded guilty to criminal acts.  *Id*.

*Second*, Plaintiffs have not alleged any "injur[y]" to their "person or property."  Ohio Rev. Code § 2307.60.  They allege only economic loss.  Section 2307.60 does not provide for recovery for purely economic loss in the absence of injury to "person or property"; indeed, Ohio law in general does not permit recovery for such loss where the "economic loss is unaccompanied by personal injury or property damage."  *Pavlovich*, 435 F.3d at 569.

*Third*, the Moving Defendants are "specifically excepted by law" from liability under § 2307.60.  As Plaintiffs acknowledge (Compl. ¶¶ 1095, 1097), the statutes that the Moving Defendants allegedly violated are subject to exceptions for "wholesalers …, pharmacists, … and other persons whose conduct is in accordance with" specified Chapters of the Ohio Revised Code.  Ohio Rev. Code §§ 2925.02(B), 2925.03(B).  While Plaintiffs flatly assert that "Defendants are not in compliance with said chapters," Compl. ¶¶ 1095, 1097, such unsupported and generic legal conclusions should be disregarded.  *Iqbal*, 556 U.S. at 678.

## CONCLUSION

For the foregoing reasons, all claims against the Moving Defendants should be dismissed with prejudice.


Dated:  25 May 2018

Respectfully submitted,


/s/   Tara A. Fumerton

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

/s/   Eric R. Delinsky (consent)

Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Health Corporation*

/s/   Kelly A. Moore (consent)

Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid Corporation*

/s/   Kaspar Stoffelmayr (consent)

Kaspar Stoffelmayr
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorney for Walgreens Boots Alliance, Inc.*

26

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

Pursuant to Local Rule 7.1(f), I hereby certify that this Court has ordered that length limitations applicable to complex cases apply to this matter, ECF No. 232 at 4 (No. 1:17-MD-2804), and that the foregoing Memorandum of Law is 25 pages in length and within Rule 7.1(f)'s 30-page limit for a complex case.

/s/  Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com