United State District Court
Northern District of Ohio
Eastern Division

_____

**In Re:**

**National Prescription
Opiate Litigation**

**Case No.: 1:17-CV-2804**
Hon. Dan A. Polster

**Nebraska Sovereign Tribal Governments
Brief Memorandum In Support of
Motion
to Establish Separate
Native American Tribes Litigation Tract**

Plaintiff's Ponca Tribe of Nebraska (U.S. Dist. Ct., Nebraska No. 8:18-cv-00180, transferred to MDL 2804 by CTO-28 on May 2, 2018) and Plaintiffs Winnebago Tribe of Nebraska, Omaha Tribe of Nebraska, and Santee Sioux Tribe of the Sioux Nation of the State of Nebraska (U.S.  Dist. Ct., Nebraska No. 8:18-cv-00203, awaiting transfer to MDL 2804) respectfully request that this Court issue Orders as set forth in its accompanying Motions for leave to file, and proposed Motion,  and as described below.

Any other approach marginalizes the roles of Tribal Sovereignty, Tribal Culture including healing methods, a broad array of federal laws that can serve as tools or must be worked around as potential impediments, to any Injunction or Global resolution, and an equally broad array of factual issues arising from life on Reservations, medical service predominantly from the Indian Health Service ("IHS"), and the historical legal duties, founded in treaties and statutes, requiring federal medical support and care for Native Americans.

Independent focus upon, and advocacy for, these concerns is essential to avoid marginalizing America's most adversely impacted opioids crisis victims.

This Memorandum sets forth the Moving Tribal Governments' points and authorities in support of the Motions as required by ND Ohio Local Rule 7.1(c).

### The Motion and Relief Requested

The Moving Tribal Governments ask that the Court issue one or more Orders creating a separate Tribal Governments Tract for centralized discovery, case development, and bellwether trial(s) in this MDL. The relief requested requires modification of this Court's CMO #1 in MDL 2804.

The Court is asked to issue one or more Orders as follows:

1.      **Separate Tract**.  Issue an Order establishing a separate and distinct track of litigation for Sovereign Native American Tribal Governments within these multi-district centralized proceedings.

1.1      Authorize and direct specialized discovery and case development steps, a litigation Track unique to the 567 federally recognized Tribal Governments and to Native American people in the United States who are "Indians" as defined by federal law. The list of Tribes is published at 81 *Fed Reg* 26826 (Jan.17, 2017). It includes the Moving Tribal Governments here, and all federally recognized Tribal Governments who file suits that are or become part of this centralized proceeding.

1.2      Authorize proceedings against selected Defendants and using selected theories of the law, including theories unique, or particularly well suited,

for Tribal Governments' Claims.

1.3    Direct counsel for the centralized efforts in the Tribal Governments Track to coordinate non-unique discovery efforts where possible with centralized discovery efforts common to all centralized cases, and direct Counsel for other tracks to coordinate these efforts. This will prevent duplication.

1.4    Select lead, coordinating, committee, liaison and trial counsel for the Track.

1.5    Select, or direct selection of, one or more bellwether cases, schedule them for trial and try the cases to verdicts and judgments or cause them to be tried where the Court directs that trial occur.  Trial of a Native American bellwether case will, by presenting all issues in the MDL in a single trial, help move the entire array of coordinated cases, and the opioids crisis, to a global solution.  No trial of any other case in any other track will present both the issues unique to Native Americans and the issues presented in each and every other track in MDL 2804. The Tribal Track litigation  will present every issue raised in cases involving States, political subdivisions, hospitals, third-party insurers, and babies,  and will also present the array of legal and factual issues unique to Tribal Governments and Native American people.  No other Track will do so.

1.6    Define the direct involvement of counsel for the Tribal Governments Track in settlement negotiations and prohibit settlement without prior approval of the Court. And,

1.7    Issue additional directions to counsel and the parties to govern the Tribal

3

Governments Track in best the interests of the Track and the purposes for which MDL 2804 was created.

**Unique Factual Issues.**

2.     **Unique Discovery Requirements and Factual Issues** The Court is asked to Order that the Tribal Governments Track be authorized to take the lead on these areas of discovery and development of evidence for trial:

2.1.     **Systemic Concerns.** Vulnerability of Native Americans to opiates with other addictions & unique treatment & prevention issues and established fact that adverse impacts of the opioids crisis produce greater mortality among Indian Tribal members than any other segment of the U.S. population. (U.S. DHHS Center for Disease Control & Prevention Morbidity & Mortality Weekly Rpt, Vol 66 No. 19 (Oct 20, 2017). www.cdc.gov/mmwr/volumes/66/wr/mm6645a6.htm?s_cid=mm6645a6_w . These concerns are not presented, or at least not presented so clearly and uniquely, by other tracks of litigation in MDL 2804.

2.2.     **More Systemic Concerns.** Facts related to distribution of prescription opioids by the U.S. Indian Health Service and liability & injunction issues associated with this distribution path.

“The Indian Health Service (IHS), an agency within the Department of Health and Human Services, is responsible for providing federal health services to American Indians and Alaska Natives. The provision of health services to members of federally-recognized Tribes grew out of the special government-to-government relationship between the federal government and Indian Tribes. This relationship, established in 1787, is

DB2069 v10 5 28 18

based on <u>U.S. Const</u> Art I, Sec 8 [Indian Commerce Clause], and has been given form and substance by numerous treaties, laws, Supreme Court decisions, and Executive Orders….The IHS provides a comprehensive health service delivery system for American Indians and Alaska Natives." https://www.ihs.gov/aboutihs/overview/ .

This issue is not presented by other tracks.

2.3.   **Access & Death.**  Distribution to known Tribal points of access, and opioid death rate in Indian Country.  (ARCOS database; Testimony of National Indian Health Board to Committee on Energy & Commerce, Health Subcommittee (House of Reps March 22, 2018) https://democrats-energycommerce.house.gov/.../Testimony-Cook-Opioid%20Public . These issues are not presented by other tracks.

2.4.   **Inside the Brain.** Testing of human mezal limbic brain system  to assess the probability of addiction for Native American prescriptees and the impacts that predictably and proximately follow amplified addictions rates, types and levels for Tribal Governments.  Michael J. Kuhar, *The Addicted Brain; Why We Use…* (FT Press Science, 2012), FM Vassoler et al., *The Impact of Exposure to Addictive Drugs on Future Generations: Psychological and Behavioral Effects,* 76 Neuropharmacology 10 (2016). These concerns are not presented by other tracks, or if they are, the presentation is not for a population of Americans known to be especially vulnerable to addictive intoxicants and chemicals.  Susan E. Luczak et al., *Review: Prevalence and Co-Occurrence of Addictions in U.S.*

*Ethnic/Racial Groups: Implications for Genetic Research,* 26 American Journal of Addiction  424-436 Oct 19, 2016.  https://doi.org/10.1111/ajad.12464. Historically, these issues have not been the subject of focus by State Governments or Federal Government agencies outside the Indian Health Service; they have been marginalized. The Tribal Governments Track will present these issues with unparalleled clarity. It provide a distinct track to liability and causation that cannot be presented with equal force by any other Plaintiffs' case on any other track in this MDL.

2.5.    **Inside the Body.** Chronic Relapsing Diseases; Biological Nature in Native Opiate Users (Dr. Ron Shaw, President, Association of American Indian Physicians.www.npr.org/2017/11/11/563551077/how-the-opioid-crisis-is-affecting-native-americans. The issues raised at ¶¶2.4 and 2.5 have specific trial related concerns impacting case presentation to juries; these trial related issues have also generated significant scholarly consideration. MM Figueroa, Degree Candidate, *The Effect of the Brain Disease Model of Addiction on Juror Perceptions of Culpability,* Thesis,  Sam Houston University, 2017. http://hdl.handle.net/20.500.11875/2201 .  These issues are not presented by other track.  The Tribal Government's track deserves legal counsel focused on liability, causation, and trial presentation issues that optimize prospects for success for the Nation's most devastated population of opioids victims. The risk that even trial presentation concerns will be marginalized without a separate track are clear and present in the current MDL configuration.

2.6. **Cultural & Conventional Concerns.** Issues for Tribal physical & behavioral health systems, and cultural healing processes are widely practiced in Tribal Communities. And they are  integrated with traditional medicine.    See,  e.g.,  https://news.vice.com/en_ca/article/59knjz/a-native-american-tribe-is-using-traditional-culture-to-fight-addiction . Native people strive, daily, on every Reservation, to protect their heritage and culture. These concerns are not presented by existing litigation tracks in this MDL.

2.7.  **Foreseeability.** The foreseeability and predictability of opioids abuse in an impoverished population where unemployment rates are dramatically in excess of the non-Native American population of the United States.  This includes younger median user-ages and shorter life expectancies of Native Americans. It also includes some reservations where the unemployment rate is as high as 80% or even greater. This fact is in the news recently. https://www.bloomberg.com/news/articles/2018-04-05/where-u-s-unemployment-is-still-sky-high-indian-reservations . It is also the subject of scientific and medical research.    Cristian Boccuti et al., *The Role of Medicare and the Indian Health Service for American Indians and Alaska Natives: Health, Access and Coverage*, Kaiser Family Foundation Medicare Report (2014). https://www.kff.org/report-section/the-role-of-medicare-and-the-indian-health-service-for-american-indians-and-alaska-natives-health-access-and-coverage-report/ .    This foreseeability concern is not presented by any other track, or it is only coincidental to them and would be marginalized by comparison to its

importance in Tribal Government cases.

2.8.    **Broad Injunctive Concerns.** Consideration and use of evidence of damages and injunctive relief gleaned from research and sources including programs of U.S. DHHS Indian Health Service National Committee on Heroin, Opioids, and Pain Efforts (HOPE), established July 6, 2017, https://www.ihs.gov/ihm/circulars/2017/national-committee-on-heroin-opioids-and-pain-efforts-hope/  and IHS Substance Abuse & Mental Health Administrative Service, Administrative Behavioral Health Analysis & Programs www.samhsa.gov/sites/default/files/topics/tribal.../tribal-opioid-webinar.pdf .

See also, M. Cunningham, *The Perpetuation of Historic Grief: Health Discrepancies and the Epidemic of Depression in American Indian Communities,* Journal of Epidemiological Public Health 2.3 (2017).  These medical facts and opinions must be discovered, vetted, tried, and worked into an eventual overall solution. They are not presented by other tracks.

### Unique Legal Issues

3.    **Unique Legal Issues.** The Court is asked to take the requested action to permit consideration of many legal matters affecting only Tribal Governments, or affecting them in unique ways. For these purposes, this statutory definition is considered:

 **(3)** The term "Indian tribe" means any Indian tribe, band, nation, or other organized group or community of Indians (including any Alaska Native village or regional or village corporation as defined in, or established pursuant to, the Alaska Native Claims Settlement Act (43 USC 1601 et seq.)) which is recognized as eligible for special programs and services provided by the United States to Indians because of their status as Indians.

8

25 USC § 2403. The definition follows this broad Congressional finding:

The Congress finds and declares that—

(1) the Federal Government has a historical relationship and unique legal and moral responsibility to Indian tribes and their members,

(2) included in this responsibility is the treaty, statutory, and historical obligation to assist the Indian tribes in meeting the health and social needs of their members,

(3) alcoholism and alcohol and substance abuse is the most severe health and social problem facing Indian tribes and people today and nothing is more costly to Indian people than the consequences of alcohol and substance abuse measured in physical, mental, social, and economic terms,

(4) alcohol and substance abuse is the leading generic risk factor among Indians, and Indians die from alcoholism at over 4 times the age-adjusted rates for the United States population and alcohol and substance misuse results in a rate of years of potential life lost nearly 5 times that of the United States,

(5) 4 of the top 10 causes of death among Indians are alcohol and drug related injuries (18 percent of all deaths), chronic liver disease and cirrhosis (5 percent), suicide (3 percent), and homicide (3 percent),

(6) primarily because deaths from unintentional injuries and violence occur disproportionately among young people, the age-specific death rate for Indians is approximately double the United States rate for the 15 to 45 age group,

***

(9) the Indian Health Service, which is charged with treatment and rehabilitation efforts, has directed only 1 percent of its budget for alcohol and substance abuse problems,

(10) the Bureau of Indian Affairs, which has responsibility for programs in education, social services, law enforcement, and other areas, has assumed little responsibility for coordinating its various efforts to focus on the epidemic of alcohol and substance abuse among Indian people,

(11) this lack of emphasis and priority continues despite the fact that Bureau of Indian Affairs and Indian Health Service officials publicly acknowledge that alcohol and substance abuse among Indians is the most serious health and social problem facing the Indian people, and

**(12)** the Indian tribes have the primary responsibility for protecting and ensuring the well-being of their members and the resources made available under this chapter will assist Indian tribes in meeting that responsibility.

25 USC § 2401.

4.      A separate litigation track for Tribal Governments in MDL 2804 is essential because unique legal issues affect only Tribal Governments, and/or affect them in unique ways. While many are suggested by 25 USC §2401, these broadly identified questions are among key legal issues that deserve the attention of lawyers focused on Tribal Governments in a separate track:

4.1.    **Tribal Sovereignty.** Consideration of objections to any *parens patriae* efforts by United States or States impinging on Tribal sovereignty are of central concern to any resolution for Tribal Governments and Native Americans.  This requires consideration of long established federal judicial recognition of Indian tribes as "distinct, independent political communities," *Worcester v. Georgia,* 6 Pet. 515, 559, 8 L.Ed. 483 (1832), qualified to exercise many of the powers and prerogatives of self-government, see *United States v. Wheeler,* 435 U.S. 313, 322–323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). However, "sovereignty that the Indian tribes retain is of a unique and limited character." *Id.,* at 323, 98 S.Ct. 1079. It centers on the land held by the tribe and on tribal members within the reservation. See *United States v. Mazurie,* 419 U.S. 544, 557, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975) (tribes retain authority to govern "both their members and their territory," subject ultimately to Congress); see also *Nevada v. Hicks,* 533 U.S. 353, 392, 121

10

S.Ct. 2304, 150 L.Ed.2d 398 (2001) (O'Connor, J., concurring in part and concurring in judgment). ("[T]ribes retain sovereign interests in activities that occur on land owned and controlled by the tribe"). Tension between Tribes and States extends from adoption of the Constitution to today.

4.2. **Sovereignty Distinctions.** Liability, damages and remedies issues arising from the differences between Tribal Sovereignty and State sovereignty including the Ft. Laramie Treaty pled by the two of the Moving Parties, and other issues must be determined.  See authorities at  ¶4.1.

4.3. **Indian Commerce Clause.** The impact of the Constitution's Indian Tribes Interstate Commerce Clause must be considered and litigated on the liability issues, and while developing the structure of any solution impacting Native Americans. U.S. Const. Art I, Sec. 8 Cl. 3. See, generally, Gregory Ablavsky, *Beyond the Indian Commerce Clause,* 124 Yale L J 1012 (2015).

4.4. **Congressional Authority.** The impact of existing federal legislation, and potential legislation that might be required to implement parts of a global, or a global Tribal, settlement of this litigation and the established rule that Congress has "plenary power to legislate in the field of Indian affairs" are legal considerations that could complicate and slow or thwart global settlement if not addressed and considered by knowledgeable, focused counsel from a Tribal Governments Tract. For general consideration of the scope of this authority and concern in an unrelated context, see *Cotton Petroleum Corp. v. New Mexico*, 490 U. S. 163, 192 (1989).

4.5.  **Indian Health Service Issues.**   Legal issues related to distribution of most prescription opioids by the U.S. Indian Health Service and liability & injunction issues associated with this distribution path must be investigated and resolved.  The surface has been scratched, but only scratched, on this issue.  U.S. DHHS  BIA Office of Inspector General Report, *Two Indian Hospitals Had System Security & Physician Controls for Prescription Drug & Opioid Dispensing But Could Still Improve Controls*  No. A-18-16-30540 (Nov 2017). Unique healthcare delivery opportunities are also provided by the *Indian Health Care Improvement Act of 1976,* 25 USC §1601 et seq. This statute is "…the cornerstone legal authority for the provision of health care to American Indians and Alaska Natives".  https://www.ihs.gov/ihcia/ .  The current budget submitted to Congress for the IHS identifies these opportunities.  https://www.ihs.gov/budgetformulation/.../FY2018CongressionalJustification.pdf .

4.6.  **Indian Child Welfare.** Legal issues arising from the problem of broken families, abandoned  children, children removed from their addicted parents, and the *Indian Child Welfare Act of 1978,*  25 USC §§ 1901-1963 must be addressed. The *Indian Child Protection & Family Violence Prevention Act,* 25 USC §§ 3201 et seq. also has a probable role in any Injunction or global settlement. See, *Adoptive Couple v. Baby Girl,* 570 U.S. 637 (2013).

4.7.  **Indian School Issues.** Legal issues arising from school related problems and Federal Schools for Indians as provided by 25 CFR § 31.00 et seq. and authorized by 25 USC § 282 must be addressed in any Injunction or global

settlement involving education and addiction prevention. These issues arise from Congressional policy investing in Tribal Governments responsibility for self-determination and educational assistance. This includes operations of tribal primary, secondary and post-secondary schools, and the role of those schools in a permanent solution to prevent addiction and abuse of prescription medications on a permanent basis.  25 USC §§ 5301 et seq. (re: contracts with States, school construction and acquisition, grant programs, management of Tribal schools, etc.).

4.8. **Unique Law Enforcement.** Unique liability and damages issues interrelated with statutory Tribal law enforcement authority and responsibilities and the law enforcement responsibilities of Special Agents of the Bureau of Indian Affairs ("BIA") pursuant to 25 USC §§ 2801 et seq.,  including, but not limited to the "Office of Justice Services" of the BIA,  and all law enforcement related matters must be considered. These are pervasive and range from dispatch and E-911 services, to enforcement, arrest, prosecution, incarceration, rehabilitation, reduction of recidivism and amelioration of adverse social effects. 25 USC § 2802.

4.9. **Unique Judicial Enforcement.**  Unique liability and damages issues interrelated with statutory Tribal judicial systems and the BIA's "Office of Tribal Justice Support" authorized by 25 USC § 3611, and the various Tribal Courts of the Tribal Governments must be addressed and resolved.

4.10.  **Trusts for Tribes Issues.**  Legal issues related to the placement and

13

holding of assets in Trust for Native American Tribes must be considered. 25 USC § 2201 et seq. (Land); 25 USC §§ 4001 et seq. and §§ 4021 et seq., (Trust Funds and Trust Funds Management).  Statutes concerning existing Trusts must be considered and worked around. Historical issues related to failed accountings and federal breaches of trust duties will inevitably arise.

4.11.  **Native Jurisdiction and Legislative Power.** Unique settlement issues will arise and be related to the principle that Indians have legal rights to make their own laws, including criminal laws governing actions of Indian persons upon Indian persons and property on Reservations. *Nevada v. Hicks,* 533 U.S. 353 (2001).  This was recently discussed by the Sixth Circuit in *NLRB v. Little River Band of Ottawa Indians Tribal Govt,* 788 F.3d 537, 544 (6th Cir. 2015) (detailing expanse of tribal jurisdictional authority and its uniqueness).

4.12.  **Exclusions, Current and Historical.** Marginalization must be avoided at every turn. This is an acute concern in view of recent congressional hearings about exclusion of Tribal Governments from potential beneficiaries of federal funding to States to combat the Opioids Crisis. (U.S. Senate Oversight Committee Hearing on "Opioids in Indian Country: Beyond the Crisis to Healing the Community," March, 2018.

https://www.indian.senate.gov/hearing/oversight-hearing-opioids-indian-country-beyond-crisis-healing-community

4.13.  **Vermont Consent Judgment.** No Tribe executed the 2007 Consent Judgment secured by the State of Vermont against some of the Defendants.

Only States did so. *State of Vermont v. Purdue Pharma*, No 3469-5-07 Washington County VT Superior Court (June 25, 2007).

**4.14. Housing.** Much housing on a Reservations is owned by the Tribal Government. Repairs, reconstruction, etc. after damages secondary to behaviors by addicted persons to drugs are a major cost. Government programs are involved in this area of activity. See, e.g., 25 USC §4101 et seq. Housing damages are a significant aspect of many Tribes' claims.

4.15. **Reservations and Service Areas.** Many of the tribal governments control Reservations. This is true of all the Nebraska Tribes except the Ponca Tribe which governs "service areas". These geographic areas introduce additional legal complications in the enforcement processes that must be associated with any injunction or any settlement of this litigation on a global basis.

5. **Coordination.** The Moving Tribal Governments further request that the Court direct coordination of the centralized discovery efforts for the benefit of all Tribes with other aspects of centralized discovery handled by other tracks within MDL 2804.

**Additional Points and Authorities**

6. It is well established that this Court, as the MDL Transferee Court:

… can employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks for each mutual fund family and/or separate tracks for the different types of actions involved—to efficiently manage this litigation.

*In re Janus Mut. Funds Inv. Litigation*, 310 F. Supp. 2d 1359, 1361 (U.S.J.P.M.L. 2004).

Also, *In re Federal Home Loan Mortg. Corp. (Freddie Mac) Securities Litigation*, 643 F.

Supp. 2d 1378, 1380 (U.S.J.P.M.L. 2009).  Generally,  Wright & Miller, 15 Fed Prac & Proc Juris § 3865 (4th Ed Westlaw April 2018).

7.      This Court's authority is expansive and can be wielded creatively to achieve the objectives of centralization:

> Courts interpret the phrase "pretrial proceedings" broadly, to give the transferee judge control over any and all proceedings before trial. The transferee judge inherits the entire pretrial jurisdiction that the transferor court could have exercised had the case not been transferred. This clearly encompasses plenary power to oversee and manage discovery and to decide discovery motions.  The court may designate a magistrate judge or appoint a master to perform appropriate tasks. In addition to all the authority exercised as a district judge in the transferee court, the transferee judge has the "powers of a district judge in any district for the purpose of conducting pretrial depositions."

Id.  at  § 3866.  See, *In re Corrugated Container Antitrust Litigation*, 655 F.2d 748 (7th Cir. 1981), on reh'g, 661 F.2d 1145 (7th Cir. 1981),   aff'd, 459 U.S. 248(1983).

8.      *The Manual for Complex Litigation* (Fourth) provides support for the relief requested.   See,   § 22.31 (more representative cases [make] more reliable results; § 22.311 (Aggregation for trial not appropriate where causation is uncertain or varying).

> Permeating the entirety of the Manual, Fourth, is the balance that must be struck between the competing interests of efficiency and fairness. The challenges in achieving that balance are due to difficulties that inhere in complex litigation and what from time to time are essentially breakdowns of the adversarial process. Creativity is the key for district judges who must take an increasingly more significant and influential role throughout the course of the litigation.

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3868 (4th ed Westlaw April 2018).

9.      The probability that separate tracks would be required as recognized by the panel judges when this  MDL 2804 was created. The Transfer Order to this Court notes:

"The transferee judge might find it useful, for example, to establish different tracks for the different types of parties or claims."….."As reflected in our questions at oral argument, this litigation might evolve to include additional categories of plaintiffs and defendants, as well as different types of claims."

See,  MDL # 2804  Doc 382, 9:18-15:17 & 59:11-25.

10.     The question before this Court is not about the *authority* to create a separate Tribal Governments litigation track.  It is about the *necessity* to do so.  History, culture, predominant religious practices, significant health practices, abbreviated longevity, lower average user age, elevated usage levels, and historical problems with addictions, all make problems of tribal governments unique.  Superimposed upon these facts are laws enacted by the Congress dealing with Native Americans and Tribes.

11.     "Indian Country" is a legal term of art defined by 18 USC § 1151. The term "intoxicants" defined at 18 USC § 1154 governs specifically beer, ale, wine "or any ardent or other intoxicating liquor of any kind, except for scientific, sacramental, medicinal or mechanical purposes. But, "intoxicants" also includes at  18 USC § 1154(a):

"…any essence, extract, bitters, preparation, compounds, composition, or any article whatsoever, under any name, label or brand which produces intoxication..."

12.     "Intoxication" also has a statutory definition though it is found at 34 USC § 10284. This definition is confined to part of Title 34 dealing with educational assistance to dependents of civilian federal law enforcement officers killed in the line of duty.

"Intoxication" means a disturbance of mental or physical faculties… resulting from drugs or other substances in the body….

13.     These definitions reach the essence of the problem.  Native American are vulnerable to intoxication, including opioid drugs as intoxicants. Intoxication by alcohol

DB2069 v10 5 28 18

and drugs is an especially acute problem in Indian Country.  See ¶ 2 and subparts above.

14.     The United States Congress recognized the unique circumstances, concerns, governance needs, health considerations, and sociological circumstances of the Native Americans when it adopted "Indian Country" as a statutory term of art and developed a body of law to govern it.  Title 25 of the United States Code is devoted to "Indians".  No other ethnic group has a single title of the United States Code devoted to it. The term "Indian Country" is defined. 18 USC § 1151. "Indian Country" and other definitions are laws that any Injunction or global solution must be built around. The proposed Tribal Governments Track is an opportunity for the entire MDL. This Track can serve as a filter for potential solutions because it, alone, presents all the issues.

15.     Fourteen (14) years after the civil war ended, for the first time in American history, a Native American was considered a human being and not a savage under the law of United States.  This occurred when Ponca Chief Standing Bear sued in Federal Court in Nebraska for a writ of habeas corpus.  The issue presented was whether Standing Bear was a human with legal standing under the Constitution. He was arrested while dragging the body of his son on a trellis from Oklahoma to his ancestral lands in northeast Nebraska for burial.  As a result of Standing Bear's victory establishing the humanity of Native people under the Constitution, the "relocation" of Native people stopped when the Federal Court in Omaha enjoined the President of United States.

16.     Standing Bear's people, farmers by nature, continue here their confidence in the United States judiciary first expressed by their Honored Chief.

**Conclusion**

17.     The Tribal Government Track can provide the broadest and most intense look at the problem of prescription opioids medications because of the defined nature of Tribal Governments, their sources of health care and medications, and there oversight by the BIA in many aspects of their activities.

18.     These unique features commend a separate litigation track for Tribal Governments for all the reasons outlined above, and for one more: All the issues that must coalesce to find a solution to the opioids crisis can be examined and evaluated in the context of a defined, manageable structural size of litigation in the Tribal Governments Track.  No other litigation track in MDL 2804 will bring to the Court all the issues common to Tribal Governments and the issues common to the other track.

> Ponca Tribe of Nebraska,
> Santee Sioux Nation of Nebraska,
> Winnebago Tribe of Nebraska, and
> Omaha Tribe of Nebraska, Plaintiffs,
>
>
> By  */s/ David A. Domina*
> David A. Domina  NE # 11043
> Domina Law Group pc llo
> 2425 S. 144th St., Omaha, NE 68144
> (402) 493-4100
> ddomina@dominalaw.com

Of Counsel:

| | | |
|---|---|---|
| Kevin Malone | Stuart H. Smith | Lola Thomas,  FL |
| **Krupnick Campbell Malone et al.** | **Stuart H. Smith, LLC** | #215724 |
| 12 SE 7th St #801 | 508 Phillips St. | Miami Beach, FL |
| Fort Lauderdale, FL 33301 | New Orleans LA 70116 | (402) 493-4100 |
| (954)763-8181 | (504) 566-1558 | lolathomas86@gmail.com |
| KMalone@krupnicklaw.com | ssmith@sch-llc.com | |

CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record and all persons registered with the CM/ECF system in this Court.

/s/  David  A. Domina

DB2069 v10 5 28 18