UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION, OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO: | MDL NO. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

*Rees v. McKesson Corporation, et al.*
S.D. IL, C.A. #18-00511; MDL Case #1:18-OP-45252

*Wood v. Purdue Pharma L.P., et al*
E.D. MO, C.A. #18-00385; MDL Case #1:18-OP-45264

*Salmons v. Purdue Pharma L.P., et al*
S.D. WV, C.A. #18-00385; MDL Case #1:18-OP-45268;

*Ambrosio v. Purdue Pharma L.P., et al*
C.D. CA, C.A. #18-02201; MDL Case #1:18-OP-45375

*Flanagan v. Purdue Pharma L.P., et al*
W.D. TN, C.A. #18-02194; MDL Case #1:18-OP-45405

*Whitley, et al. v. Purdue Pharma L.P., et al*
W.D. TN, C.A. #18-02290; MDL Case #1:18-OP-45598

*Roach v. McKesson Corporation, et al.*
E.D. LA, C.A. #18-04165; Transferred by CTO-27; awaiting MDL Case No.

*Hunt v. Purdue Pharma L.P., et al*
D. MD, C.A. #18-01349; Transferred by CTO-32; awaiting MDL Case No.

**MEMORANDUM IN SUPPORT OF**
**MOTION TO ESTABLISH SEPARATE TRACK FOR OPIOID BABIES**

**MAY IT PLEASE THE COURT:**

Plaintiffs, individually and on behalf of all putative class members in the above captioned matters, submit this memorandum in support of their Motion for the creation a separate track within this MDL for cases brought on behalf of persons born with neonatal abstinence syndrome (NAS),

or the "Opioid Babies."  The Opioid Babies are as identifiable as they are blameless, and their interests are currently unrepresented in the ongoing settlement discussions and in the various limited tracks and committees recognized by the Court.  They are suffering now.

## INTRODUCTION

Infants born with neonatal abstinence syndrome present the Court with a unique opportunity to assure delivery of life-changing medical intervention and a chance at a productive adult life. Members of this putative class by definition suffer from neurotoxic drug exposures, bear no contributory fault whatsoever, and share common issues of fact and law revolving around the fault of the Defendants.

Each year, tens of thousands of infants in the US are born with NAS, and the number has increased nearly 5-fold between 2000 and 2012 and continues to grow.[1]  The period of hospitalization for NAS averages 16 days and hospital costs for a typical newborn with NAS are $159,000-$238,000 greater than those of healthy newborns.[2] Recent evidence shows that long-term cognitive development is impaired in these children and will require comprehensive therapy from physicians and nurses, speech and language therapists, physical and occupational therapists, early enrichment programs, special education programs, and later assistance with job or vocational training.

---

[1] Journal of Perinatology volume 35, pages 650–655 (2015)
doi:10.1038/jp.2015.36
https://www.nature.com/articles/jp201536;  Neonatal Abstinence Syndrome and Associated Health Care Expenditures
United States, 2000-2009  pub May 9, 2012
https://jamanetwork.com/journals/jama/fullarticle/1151530

[2] Peltz, G., & Anand, K. J. (2015). Long-Acting Opioids for Treating Neonatal Abstinence Syndrome. Jama, 314(19), 2023. doi:10.1001/jama.2015.13537
https://jamanetwork.com/journals/jama/article-abstract/2463848

The Opioid Baby Class Actions before the Court originated from West Virginia, Illinois, California, Missouri, Louisiana, Tennessee and Maryland.  Each action seeks equitable relief and money damages aimed at securing dedicated funding to help alleviate the suffering inflicted upon this wholly innocent class by the Defendants. Due to what has been described as an epidemic of addicted newborns, and due to the discovery needs and questions of fact and law unique to this class, Plaintiffs propose the establishment of a NAS/Opioid Baby Limited Discovery and Litigation Track.

## PURPOSE OF THE TRACK

The undersigned was afforded the opportunity to advocate for the creation of a track for these cases at the status conference on May 10, 2018.   As discussed during the status conference, the Opioid Babies have unique discovery and settlement needs in this MDL.

Unlike the vast majority of the cases in this MDL, the Opioid Baby Class calls not only for direct victim compensation but also for medical monitoring.  Most infants diagnosed with NAS are born into financially difficult circumstances.  Money damages placed in trust with a Guardian *ad Litem* can provide these children with a much-needed springboard into a productive adult life.

Through medical monitoring, healthcare providers can accumulate the epidemiologic data necessary to identify and provide the Opioid Babies with necessary medical treatments throughout their lifetime.  Moreover, in the same manner that the ARCOS database will assist the attorneys general in prosecuting their claims against bad actors, the injunctive relief claims of the Opioid Babies will have a different but equally significant effect in helping to stem the growing crisis.

A separate limited track would enable the Opioid Baby Class to expend the time and funds necessary to retain experts, proceed with limited class discovery, and engage in motion practice into classwide issues, all of which will inform decisions about the Defendants' relative

exposure. Discovery would seek evidence of causation of actual damages for out-of-pocket sums for class representatives, with the plaintiffs breaking out opioid-weaning treatment costs using ICD-9 codes. Granting the Opioid Babies access to the ARCOS Database will further help to identify absent class members, quantify damages, and support Plaintiffs' allegations regarding the diversionary market. Evidence extracted from this database will ultimately aid the parties in reaching a settlement by providing a path to an evidence-based discussion about parsing liability among the Defendants.

At the end of the day, in addition to direct payments to victims, Plaintiffs envision an irrevocable, court-administered, replenishing medical trust to which healthcare professionals providing NAS-related treatment or testing would submit invoices directly to the trust administrator for direct payment and data release. The trust could be either nationwide in scope, or established on a state-by-state basis. This trust would also pay for the cost of ongoing epidemiological research which will assist in the evolution of medical knowledge regarding latent health impacts of NAS.

## AUTHORITY FOR THE TRACK

The JPML recognized the probability that separate tracks would be required when this MDL 2804 was created. The Transfer Order to this Court notes:

> "The transferee judge might find it useful, for example, to establish different tracks for the different types of parties or claims."
> … "As reflected in our questions at oral argument, this litigation might evolve to include additional categories of plaintiffs and defendants, as well as different types of claims."

*See* MDL #2804 Doc 382, 9:18-15:17 & 59:11-25.

It is well established that this Court, as the MDL Transferee Court:

> …can employ any number of pretrial techniques-such as establishing separate discovery and/or motion tracks for each mutual

4

> fund family and and/or separate tracks for the different types of actions involved-to efficiently manage this litigation.

*In re Janus Mut. Funds Inv. Litigation,* 310 F. Supp. 2d 1359, 1361 (U.S.J.P.M.L. 2004). *See also In re Federal Home Loan Mortg. Corp (Freddie Mac) Securities Litigation,* 643 F. Supp. 2d 1378, 1380 (U.S.J.P.M.L. 2009). Generally, Wright & Millers, 15 Fed Prac & Proc Juris § 3865 (4th ED Westlaw April 2018).

This Court's authority is expansive and can be wielded creatively to achieve the objectives of centralization:

> Courts interpret the phrase "pretrial proceedings" broadly, to give the transferee judge control over any and all proceedings before trial. The transferee judge inherits the entire pretrial jurisdiction that the transferor court could have exercised had the case not been transferred. This clearly encompasses plenary power to oversee and manage discovery and to decide discovery motions. The court may designate a magistrate judge or appoint a master to perform appropriate tasks. In addition to all the authority exercised as a district judge in the transferee court, the transferee judge has the "powers of a district judge in any district for the purpose of conducting pretrial depositions."

*Id*. at § 3866. See, *In re Corrugated Container Antitrust Litigation*, 655 F. 2d 748 (7th Cir. 1981). *On reh'g*, 661 F.2d 1145 (7th Cir. 1981), *aff'd* 459 U.S. 248 (1983).

Finally, *The Manual for Complex Litigation* (Fourth) provides further support for the relief requested. *See* §22.31 (more representative cases [make] more reliable results; § 22.311 (Aggregation for trial not appropriate where causation is uncertain or varying).

> Permeating the entirety of the Manual, Fourth, is the balance that must be struck between the competing interests of efficiency and fairness. The challenges in achieving that balance are due to difficulties that inhere in complex litigation and what from time to time are essentially breakdowns of the adversarial process. Creativity is the key for district judges who must take an increasingly more significant and influential role throughout the court of the litigation.

5

*Wright & Miller*, 15 Fed. Prac. & Proc. Juris. § 3868 (4th ed Westlaw April 2018).

## CONCLUSION

For the foregoing reasons, Plaintiffs' pray that their motion is granted.

Respectfully submitted,

/s/ Scott R. Bickford
**MARTZELL, BICKFORD & CENTOLA**
Scott R. Bickford (LA 1165)
Lawrence J. Centola, III (LA 27402)
Spencer R. Doody (LA 27795)
338 Lafayette Street
New Orleans, LA 70130
Telephone: 504-581-9065
Facsimile: 504-581-7635
sbickford@mbfirm.com
ljc@mbfirm.com
srd@mbfirm.com
usdcndoh@mbfirm.com

/s/ Celeste Brustowicz
**COOPER LAW FIRM, LLC**
Celeste Brustowicz
Barry J. Cooper, Jr.
Stephen H. Wussow
Victor Cobb
1525 Religious Street
New Orleans, LA 70130
Telephone: 504-399-0009
Cbrustowicz@sch-llc.com

/s/ Kevin W. Thompson
**THOMPSON BARNEY LAW FIRM**
Kevin W. Thompson
David R. Barney, Jr.
2030 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: 304-343-4401
Facsimile: 304-343-4405
Kwthompsonwv@gmail.com

/s/ James F. Clayborne
**CLAYBORNE, SABO & WAGNER, LLP**
Sen. James F. Clayborne (Bar No. 45627)
525 West Main Street, Suite 105
Belleville, IL 62220
Telephone: 618-239-0187
Facsimile: 618-416-7556
Jclayborne@cswlawllp.com


/s/ Jack W. Harang
**LAW OFFICES OF JACK W. HARANG**
Jack W. Harang
2433 Taffy Drive
Kenner, LA 70065
Telephone: 504-810-4734
jwharang@gmail.com


/s/ Warren Perrin
**PERRIN, LANDRY, deLAUNAY**
Warren Perrin
251 La Rue France
P. O. Box 53597
Lafayette, LA 70505
Telephone: 337-233-5832
Perrin@plddo.com


/s/ Kevin Malone
**KRUPNICK CAMPBELL MALONE ET AL**
Kevin Malone
12 SE 7th St #801
Ft. Lauderdale, FL 33301
Telephone: 954-763-8181
Kmalone@krupnicklaw.com

/s/ Kent Harrison Robbins
**THE LAW OFFICES OF KENT HARRISON ROBBINS, P.A.**
Kent Harrison Robbins (FL 275484)
242 Northeast 27th Street
Miami, FL 33137
Telephone: 305-532-0500
Facsimile: 305-531-0150
Primary: Khr@khrlawoffices.com
Secondary: ereyes@khrlawoffices.com
Tertiary: assistant@khrlawoffices.com


/s/ Donald Creadore
**THE CREADORE LAW FIRM, P.C.**
Donald Creadore (NY 09202)
450 Seventh Avenue - 1408
New York, NY 10123
Telephone: 212-355-7200
Facsimile: 212-583-0412
Primary: donald@creadorelawfirm.com
Secondary: donald@aol.com


**CERTIFICATE OF SERVICE**

    I hereby certify that on this 31st day of May, 2018, a copy of the above and foregoing has been electronically filed with the Clerk of Court using the CM/ECF system, which provides an electronic service notification to all counsel of record registered as CM/ECF users.


 /s/SCOTT R. BICKFORD