# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) ) ) ) | **MDL 2804** |
|  | ) | **CASE NO.: 1:17-MD-2804** |
| THIS DOCUMENT RELATES TO: | ) ) | **JUDGE DAN A. POLSTER** |
| ALL CASES | ) ) ) |  |

## MSP PLAINTIFFS' MOTION FOR APPOINTMENT TO A POSITION ON THE PLAINTIFFS' EXECUTIVE COMMITTEE

Plaintiffs, MSP Recovery Claims, Series LLC, MSPA Claims 1, LLC and MAO-MSO Recovery II, LLC (collectively, "the MSP Plaintiffs"), on behalf of themselves and a class of similarly-situated entities and their assignees, by and through undersigned counsel, submit this Motion for Appointment to a Position on the Plaintiffs' Executive Committee. As grounds in support thereof, the MSP Plaintiffs state as follows:

## I. INTRODUCTION

The MSP Plaintiffs filed two separate, but similar, class action complaints that are now pending before this Court: *MSP Recovery Claims, Series LLC v. Purdue Pharma, L.P., et al.*, Case No.: 1:18-OP-45091 (N.D. Ohio); and *MSPA Claims 1, LLC, et al. v. Anda, Inc., et al.*, Case No.: 1:18-OP-45526 (N.D. Ohio). The MSP Plaintiffs filed these class action lawsuits in their capacity as assignees of certain Medicaid Managed Care Plans and Providers, and on behalf of a class of similarly-situated entities. The MSP Plaintiffs and putative class members have the unique position of being "**payors of last resort**" in that they stand in the same shoes as their respective state Medicaid agencies ("PLR Class").[1]

---

[1] Medicaid, as used herein, means the joint federal-state medical assistance program authorized by Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq., and regulations thereunder, as administered in

The substantial number of Medicaid providers that assigned their rights to the MSP Plaintiffs, as well as the Medicaid entities that make up the nationwide PLR Class, provided health care benefits and services to almost 55 million Medicaid beneficiaries,[2] including millions of beneficiaries that purchased and used prescription opioids that were manufactured, marketed, promoted, sold, and/or distributed by the Manufacturer and Distributor Defendants.  The MSP Plaintiffs and the PLR Class are entitled to seek recovery for these losses and damages, representing potentially billions of dollars sustained as a direct and proximate result of the Defendants' intentional and tortious acts and/or omissions.

The MSP Plaintiffs and PLR Class's claims directly affect, and in many cases, will undermine or otherwise be erroneously double counted by other plaintiffs in this litigation.  Thus, the MSP Plaintiffs and PLR Class are an indispensable and critically important stakeholder in this litigation and will play a pivotal role in any potential global resolution of this matter.

As "payors of last resort," the MSP Plaintiffs and PLR Class are in a separate class of plaintiffs with significantly distinct rights of recovery from the Third-Party Payors ("TPP"), Hospital, and Governmental Entity plaintiffs, that are currently represented by the Plaintiffs' Co-Leads, Co-Liaisons, and Plaintiffs' Executive Committee. This class of Plaintiffs may be the largest in the litigation, will have a profound effect on many other cases in the litigation, and has absolutely no adequate representation whatsoever on the Plaintiffs' Executive Committee.

The MSP Plaintiffs, by and through undersigned counsel, directly raised these concerns with the Plaintiffs' leadership and Special Masters.  Having received no formal response, the MSP

---

each State through its respective health care agency.  Under the federal scheme, Medicaid is intended to be the "payor of last resort." *See* Federal Register, Vol. 81, No. 88, 27498 through 27901, 27769 (May 6, 2016).

[2] *See* https://www.medicaid.gov/medicaid/managed-care/downloads/enrollment/2016-medicaid-managed-care-enrollment-report.pdf (as of July 1, 2016, the State Medicaid Managed Care Enrollment Summary data shows that there are an estimated 54,627,180 Medicaid beneficiaries enrolled in a Comprehensive Managed Care plan nationwide).

Plaintiffs and PLR Class are left with no choice but to file the instant Motion and seek the Court's intervention.

Accordingly, the MSP Plaintiffs respectfully request that this Court appoint the undersigned counsel, James L. Ferraro, Esq., in his capacity as lead trial counsel for the MSP Plaintiffs and PLR Class, to a position on the Plaintiffs' Executive Committee consistent with the *Manual for Complex Litigation, Fourth,* §§ 10.221 and 10.224 (2004).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    THE PLAINTIFFS' LEADERSHIP STRUCTURE AND ITS GENESIS

On December 13, 2017, this Court held a telephonic conference, during which the Court requested that Plaintiffs' counsel meet and confer regarding recommendation for liaison and steering committees.

On December 18, 2017, Plaintiffs' proposed Co-Lead counsel held an Organizational Meeting in Cleveland, Ohio where the Plaintiffs' leadership structure was discussed.[3]  The Plaintiffs' proposed leadership structure included three Co-Leads, three Co-Liaisons and an Executive Committee ("PEC"). At this meeting, and several times thereafter, it was also expressly stated to the interested firms that a Plaintiffs' Steering Committee ("PSC") would be established in short order.  Based on these representations, many interested firms refrained from objecting and were held at bay waiting for the PSC and various other committees to be established.

On December 20, 2017, Plaintiffs' proposed Co-Lead counsel filed a Motion to Approve Co-Leads, Co-Liaisons and Plaintiffs' Executive Committee (docket no. 16) seeking the appointment of the slate of counsel presented at the Organizational Meeting.

---

[3] At the time of this meeting, undersigned counsel had yet to be retained by the MSP Plaintiffs. Nevertheless, Mr. Ferraro attended the Plaintiffs' Organizational Meeting in his capacity as lead trial counsel on behalf of five separate union health and welfare funds in what is normally described as TPP cases.  As such, Mr. Ferraro has been actively involved in the Opioid MDL since its inception in this Court.

On December 21, 2017, Plaintiffs' proposed Co-Lead counsel filed an Amended Motion to Approve Co-Leads, Co-Liaisons and Plaintiffs' Executive Committee (docket no. 17).  As set forth in the Amended Motion, Plaintiffs' proposed Co-Lead counsel suggested the creation of a PSC, including the creation of a Third-Party Payor PSC.

Three objections were filed in response to the Plaintiffs' Amended Motion: one form a group representing seven governmental entities in southern West Virginia (docket no. 18); one from a group representing Hospitals (docket no. 19); and one from a group representing the TPPs (docket no. 20).  All three objectors sought positions on the PEC.  Ultimately, all three objectors were invited to join the PEC to keep the status quo.

On January 3, 2018, Plaintiffs' proposed Co-Lead counsel filed a Renewed Motion to Approve Co-Leads, Co-Liaisons and Plaintiffs' Executive Committee in response to the filed objections.  *See* docket no. 34.  Pursuant to the Renewed Motion, Plaintiffs' proposed leadership structure was described as follows:



*See id*. at 5 – 6.

Plaintiffs' proposed Co-Lead counsel further stated that once the Co-leads, Co-Liaisons and PEC has been approved, then the leadership structure would move to populate within a couple of weeks the various committees and subcommittees with counsel from across the United States, including, but not limited to, the creation of Client committees. *Id.* (citing the *Manual for Complex Litigation, Fourth,* § 10.221).

On January 4, 2018, the Court granted the Plaintiffs' Renewed Motion to Approve Co-Leads, Co-Liaisons and Executive Committee (docket no. 37).

### B.   MSP PLAINTIFFS FILED THEIR CLASS ACTION COMPLAINTS SHORTLY AFTER THE PLAINTIFFS' LEADERSHIP STRUCTURE WAS ESTABLISHED

#### 1.   MSP National Class Action

On January 5, 2018, one day after the Court granted Plaintiffs' Renewed Motion to Approve the Plaintiffs' leadership structure, undersigned counsel, as lead trial counsel for MSP Recovery Claims, Series, LLC, filed a nationwide class action complaint in the case styled, *MSP Recovery Claims, Series LLC v. Purdue Pharma, L.P., et al.*, Case No.: 1:18-OP-45091 (N.D. Ohio) ("the MSP National Class Action").

The MSP National Class Action was originally filed in the Northern District of Ohio and subsequently transferred to this Court and assigned thereto as part of *In re: National Prescription Opiate Litigation*, MDL No. 2804 ("Opioid MDL").

The MSP National Class Action was filed on behalf of over one hundred (100) Medicaid Managed Care Plans and Providers, including Ohio-based managed care plans that provided health care and services to Medicaid beneficiaries residing in Ohio.

#### 2.   MSP Florida Class Action

On February 16, 2018, undersigned counsel, as lead trial counsel for the MSP Plaintiffs, filed a similar MSP class action complaint on behalf of Florida Medicaid Managed Care

Organizations and Providers in the case styled, *MSPA Claims 1, LLC, et al. v. Anda, Inc. et al*, Case No.: 2018-005066-CA-01 (11th Jud. Cir. Ct., Miami-Dade County, Florida) ("the MSP Florida Class Action").

The MSP Florida Class Action was originally filed in Florida state court, removed to Federal court, and subsequently transferred to the Opioid MDL. *See MSPA Claims 1, LLC, et al. v. Anda, Inc. et al.*, Case No.: 1:18-OP-45526 (N.D. Ohio).

Pursuant to CMO-1 (docket no. 232 at ¶ 2(e)), the Manufacturer Defendants recommended the MSP Florida Class Action (the smaller of the two MSP cases) as their choice for briefing as a third-party payor case. In contrast, and ironically, the de facto Plaintiffs' TPP committee did not include either of the two MSP cases on its list of TPP cases. Nevertheless, the Court chose another case identified by the Distributor Defendants (over the Manufacturer Defendants) because, among other reasons, a motion for remand to state court is still pending in the MSP Florida Class Action. *See* Order dated May 17, 2018 (docket no. 462).

### C.   THE MSP PLAINTIFFS AND PLR CLASS'S MULTIPLE REQUESTS FOR A POSITION ON THE PLAINTIFFS' EXECUTIVE COMMITTEE

On January 16, 2018, shortly after filing the MSP National Class Action, undersigned counsel sent written correspondence to Plaintiff's Co-Lead Counsel, Joseph P. Rice, Esq., alerting him to the filing of the MSP case.  *See* correspondence addressed to Plaintiffs' Co-Lead Counsel, Joseph F. Rice, Esq. (**Exhibit A**).

Undersigned counsel explained that the MSP Plaintiffs and PLR Class have the unique position of being "payors of last resort" and that they have separate and distinct rights of recovery from the other class of plaintiffs.  In addition, undersigned counsel expressed the importance of having the participation and representation of the PLR Class at the information exchange and

preliminary settlement conference scheduled by the Court for January 31, 2018. *Id.* Upon further discussion, Mr. Rice advised the undersigned should submit a Formal Application.

On January 22, 2018, undersigned counsel promptly submitted a Formal Application for a Position on the Plaintiffs' Steering Committee and further requested that the Plaintiffs' leadership consider the undersigned's application for and creation of an additional position on the PEC designated to represent the interests of the PLR Class. *See* correspondence forwarded to all three Plaintiffs' Co-Leads care of Jayne Conroy, Esq. (**Exhibit B**). Once again, undersigned counsel detailed the unique and distinct position of the PLR Class and the need to be adequately represented on the PEC. No formal response was received other than an acknowledgment of receipt.

On March 9, 2018, given the lack of response, undersigned counsel submitted a Formal Request and Application for a Position on the Plaintiffs' Executive Committee and forwarded the request to the Plaintiffs' Co-Leads, Co-Liaisons and entire Executive Committee, as well as to the Special Masters. *See* Formal Request for a Position on the PEC (**Exhibit C**).

In addition to identifying the MSP National Class Action, this request further identified the filing of the MSP Florida Class action that had been filed in the interim period between the first and second Formal Requests. The Formal Request also included a detailed discussion relating to the MSP Plaintiffs' right of recovery under the applicable Medicaid and Third-Party Liability provisions. *See id.* at 2 – 5.

On May 8, 2018, having received no formal response to the March 9, 2018 Request, undersigned counsel sent another request to the Plaintiffs' Co-Leads, Co-Liaisons and entire Executive Committee, and Special Masters. *See* third Formal Request (**Exhibit D**). In a last good faith effort to address this issue prior to seeking the Court's intervention, undersigned counsel again requested that the Plaintiffs' leadership take into consideration that there is no one properly

representing the interests of the MSP Plaintiffs and PLR Class and the implications that this may have on reaching a successful global resolution of this matter.

The intent of these multiple requests was to advise the Plaintiffs' leadership, Special Masters and ultimately this Court, that the MSP Plaintiffs and PLR Class are, in fact, an indispensable and critically important stakeholder in this litigation.  In fact, recently Mr. Rice recommended that the instant Motion should be filed with the Court.

Any potential global resolution that includes recovery for opioid-related health care services and treatment provided to any of the millions of Medicaid beneficiaries enrolled in a Medicaid managed care plan, will more likely than not involve claims for damages sustained by and belonging to the MSP Plaintiffs and PLR Class.  The MSP Plaintiffs and PLR Class's claims can, and will, affect the claims of many other plaintiffs in this litigation.

Given the significant and uniquely distinct interests of the MSP Plaintiffs and PLR Class, a new position should be added to the PEC to ensure that these interests are properly represented in the Opioid MDL litigation and at the settlement negotiations.

## III.  <u>ARGUMENT</u>

### A.  **THE MSP PLAINTIFFS AND PLR CLASS SHOULD BE APPOINTED TO A POSITION ON THE PLAINTIFFS' EXECUTIVE COMMITTEE**

As stated above, the MSP Plaintiffs and PLR Class are in a separate class of plaintiffs with significantly distinct rights of recovery from the Third-Party Payors and Hospital plaintiffs, as well as the Governmental Entity plaintiffs, that are currently represented by the Plaintiffs' Co-Leads, Co-Liaisons, and Plaintiffs' Executive Committee.  Based on the current composition of the Plaintiffs' leadership structure, however, the MSP Plaintiffs and PLR Class are not being adequately and appropriately represented on the PEC and/or on the Plaintiffs' settlement negotiating team approved by this Court.

The MSP Plaintiffs and PLR Class's claims for damages are potentially adverse to some of the claims for damages being asserted by the State Attorneys General and other Governmental Entities to the extent they are seeking reimbursement for opioid-related health care and services paid on behalf of Medicaid beneficiaries that were actually paid for by the MSP Plaintiffs and PLR Class. The sheer size of the MSP Plaintiffs and PLR Class and their extensive rights of recovery under the mandatory Medicaid managed care systems implemented by many states, could potentially encompass and override a substantial portion of the damages being sought by the State Attorneys General and Governmental Entity plaintiffs.[4]

Equally important is that the PLR Class is comprised of health care plans and providers that are on the front lines of the delivery of opioid-related health care services.  These Medicaid Managed Care Plans and Providers are vital to the abatement and restructuring of the delivery of opioid and non-opioid medications and treatments to effectively combat the current opioid epidemic.

Furthermore, the MSP Plaintiffs use a multi-level structure utilizing proprietary software and industry leading IT capabilities to analyze historical health claims data, including, but not limited to, Medicare and Medicaid claims data.  Through the use of this health care data analytics, based on medical coding and billing industry standards, the MSP Plaintiffs are able to specifically identify claims paid for opioid-related health care services and treatment contained within a given providers' historical electronic claims data.  This allows the MSP Plaintiffs to create a damages framework and model, including the ability to allow for onboarding of new electronic claims

---

[4] For example, Florida made Medicaid managed care enrollment mandatory on a statewide basis effective October 1, 2014. *See* § 409.971, Fla. Stat.  As of January 2018, Florida had enrolled 3,852,683 individuals in the Florida Medicaid Program.  Of these enrollees, approximately 3,102,714 individuals were enrolled in some type of Statewide Medicaid Managed Care program.  *See* AHCA Current Comprehensive Medicaid Managed Care Enrollment Report (January 2018).
http://www.fdhc.state.fl.us/Medicaid/Finance/data_analytics/enrollment_report/index.shtml.

submissions. The MSP Plaintiffs submit that this damages framework may inure to the common benefit of some, if not all, the plaintiffs in the Opioid MDL for the purposes of calculating actual economic damages incurred in this case.

In keeping with this Court's stated intentions of facilitating a resolution of this matter with all necessary stakeholders, including abatement and remediation of the opioid crisis, it is imperative that the MSP Plaintiffs and PLR Class be properly represented on the PEC. Based on the current composition of the Plaintiffs' leadership structure, however, the MSP Plaintiffs and PLR Class are not being adequately and appropriately represented on the PEC and/or on the Plaintiffs' settlement negotiating team approved by this Court.

## B. THE MSP PLAINTIFFS AND PLR CLASS'S RIGHT OF RECOVERY

### 1. Medicaid Recovery and Third-Party Liability

The Medicaid Program provides for payment for medical items or services, or both, on behalf of eligible low-income adults, children, pregnant women, elderly adults and people with disabilities that is administered by the Centers for Medicare and Medicaid Services ("CMS") and single state agencies that administer or supervise the administration of the state Medicaid plan under federal law. *See* 42 CFR Parts 431, 433, 438, 440, 457 and 495. Under the Medicaid Program, each state that chooses to participate in the program and receive federal financial participation for program expenditures, establishes eligibility standards, benefits packages, and payment rates, and undertakes program administration pursuant to the applicable federal statutory and regulatory standards. *Id.*

As a condition of participating in the Medicaid program, states must comply with the third-party liability provisions set forth under 42 U.S.C. § 1396a(a)(25) and assignment provisions set forth under 42 U.S.C. § 1396k(a). Under this federal scheme, Medicaid is intended to be the "payor of last resort." *See* Federal Register, Vol. 81, No. 88, 27498 through 27901, 27769 (May

10

6, 2016).  Title XIX of the Act requires state Medicaid agencies to identify and seek payment from liable third parties, before billing Medicaid.

Pursuant to the federal third-party liability provisions, states are required to "take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the [State's Medicaid] plan." 42 U.S.C. § 1396a(a)(25)(A).  If third-party liability is found after the State has provided medical services to a beneficiary and "the amount of reimbursement the state can reasonably expect to recover exceeds the costs of such recovery," the State is required to "seek reimbursement ... to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(B). That provision further specifies that a third party is any individual, entity, or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan.

2.      **MSP Plaintiffs and the PLR Class Stand in the Same Shoes as Medicaid**

The MSP Plaintiffs' assignees and PLR Class members are Medicaid Managed Care Plans and Providers that entered into capitated risk contracts[5] to provide health care benefits and related services to Medicaid beneficiaries.  Medicaid providers that are under capitated risk contracts are required to accept a "per-member, per-month payment" as payment in full for each Medicaid beneficiary covered under the provider's risk contract.[6] Any costs incurred by the Medicaid provider in excess of the capitation payment are borne in total by the provider.

---

[5] "Risk contracts" means a Medicaid contract whereby the contractor: (1) assumes risk for the contract for the cost of the services under the contract; and (2) incurs loss if cost of furnishing the services exceeds the payments under the contract. *See* 42 CFR § 438.2.

[6] "Capitation payment" means a payment the State makes periodically to a contractor on behalf of each beneficiary enrolled under a contract based on the actuarially sound capitation rate for the provision of services under the State plan.  The State makes the payment regardless of whether the particular beneficiary receives services during the period covered by the payment.  *See* 42 CFR § 438.2; *see e.g.,* §§ 409.962(13) and 409.968(1), Fla. Stat. (The capitation rate is defined as the "per-member, per-month payment" that is paid by Florida's Agency for Health Care Administration to a Medicaid Managed Care Plan ("MCO") for each Medicaid beneficiary enrolled under a risk contract for the provision of Medicaid services during the

These Medicaid Managed Care Plans and Providers stand in the same shoes as their contracted state Medicaid agencies to provide Medicaid health care benefits and additional services to Medicaid beneficiaries, including, but not limited to, the same responsibilities, limitations and the same rights and responsibilities of pursuing third-party liability claims when delegated that authority pursuant to the applicable state law or by contract.

CMS published guidance in 2012 on Medicaid.gov affirming that Medicaid Managed Care Plans should be treated as if they were the state Medicaid agency when the State has delegated responsibility and authority to perform third-party liability functions to the Medicaid Managed Care Plans.  *See* Federal Register, Vol. 81, No. 88, at 27771. The contract language between the state Medicaid agency and the Managed Care Plan, or where applicable specific state law, dictate the terms and conditions under which the Managed Care Plans assume third-party liability responsibility.[7]

Pursuant to their respective capitated risk contracts, the MSP Plaintiffs and Medicaid entities that make up the PLR Class were ultimately forced to pay for and absorb the losses related to the delivery of care, services, and/or supplies, including the delivery of opioid medications, treatments, hospitalizations, addiction and rehabilitation treatment, overdose, or other opioid-related health care services to their Medicaid beneficiaries that vastly exceeded the capitated payments they received for these enrollees.

Accordingly, the MSP Plaintiffs and the PLR Class, as "payors of last resort," are entitled to seek recovery for these losses and damages, representing potentially billions of dollars sustained

---

payment period.

[7] *See* Medicaid Third Party Liability and Coordination of Benefits. https://medicaid.gov/medicaid/eligibility/tpl-cob/index.html;  Coordination of Benefits and Third-Party Liability (COB/TPL) Training and Handbook in Medicaid 2016. https://www.medicaid.gov/medicaid/eligibility/downloads/tpl-cob/training-and-handbook.pdf.

as a direct and proximate result of the Defendants' intentional and tortious acts and/or omissions. This scenario can, and will, have a profound effect on the damages claims of many plaintiffs including, but not limited to, the State Attorneys General and Governmental Entity plaintiffs' claims.

## C.    EXPERIENCE AND QUALIFICATIONS OF JAMES L. FERRARO

Mr. Ferraro has the experience, qualifications and leadership skills necessary to adequately and appropriately represent the interests of the MSP Plaintiffs and PLR Class in the Opioid MDL.

### 1.    Legal Experience and Qualifications

In 1985, Mr. Ferraro founded The Ferraro Law Firm, P.A. ("Ferraro Law") in Miami, Florida.  In 1997, Mr. Ferraro, along with his late partner, Michael V. Kelley, founded the law firm of Kelley & Ferraro, LLP ("Kelley Law") in Cleveland, Ohio.   With over three decades of experience, Mr. Ferraro is nationally recognized as a leading civil trial attorney in the areas of complex product liability, asbestos, tobacco, pharmaceutical/defective drug cases, federal tax whistleblower claims, and other significant class action and mass tort litigation.

Mr. Ferraro has successfully tried many cases that resulted in multimillion-dollar jury verdicts. In 1995, he received the largest compensatory award in the state of Florida for a mesothelioma case. In 1997, he also had the highest compensatory jury verdict ever in the nation for a non-malignant asbestos case. Through skillfully negotiated settlements and numerous jury trials, Mr. Ferraro has been lead counsel in securing over $1 billion for Ferraro Law's clients in product liability matters.   In addition, he has firsthand experience handling over twenty (20) asbestos trusts, for which he sits on the creditor's committees.

In 1996, Mr. Ferraro made American legal history when he successfully tried a case against DuPont in the first lawsuit against a chemical company for causing a birth defect. He proved that a pregnant woman's exposure to the fungicide Benlate caused her child to be born without eyes

and held DuPont accountable in *Castillo vs. E.I. du Pont de Nemours and Company and Pine Island Farms*. The trial was broadcast in its entirety on Court TV, garnered worldwide media attention, and, ultimately, went to the Florida Supreme Court. Seven years after trial, the Florida Supreme Court affirmed the trial court verdict. In 1997, because of that case, he was named one of ten national finalists for Trial Lawyer of the Year.  The *Castillo* case is now featured in a 2017 bestselling book, *Blindsided*.

In August 2015, Mr. Ferraro tried an asbestos case against Georgia-Pacific with his oldest son, James Ferraro, Jr., resulting in a $17,175,000 verdict. Because of that case, CVN Florida voted him as the 2015 Plaintiff's Attorney of the Year. In November 2015, he was a guest lecturer at Harvard Law School for third year law students.

In 2015, Mr. Ferraro also personally argued *Aubin v. Union Carbide Corp*. before the Florida Supreme Court, which rejected the corporate-friendly Third Restatement of Torts and retained the Second Restatement of Torts.  Aubin has been acclaimed to be the most important Florida product liability case since *West v. Caterpillar* in 1976.  Additionally, on March 6, 2018, Mr. Ferraro argued the highly publicized product liability case of *Delisle v. Crane Co*. in front of the Florida Supreme Court, in which the Court will decide whether *Daubert* or *Frye* is the applicable standard for science in the courtroom.

Mr. Ferraro is a member of the Ohio, New York, Florida, Massachusetts, and District of Columbia Bars; the Fellows of the American Bar Foundation; the American Bar Association; the Florida Institute of Certified Public Accountants; the American Association for Justice; the Florida Justice Association; The National Trial Lawyers: Top 100 Trial Lawyers; and the Multi-Million Dollar Advocates Forum. He is also a Florida State Coordinator for The Public Justice Foundation. *See* attached curriculum vitae for Mr. Ferraro (**Exhibit E**) and The Ferraro Law Firm's Firm Biography (**Exhibit F**).

14

### 2.    Opioid Litigation Experience

Mr. Ferraro is lead counsel on behalf of Ferraro Law and Kelley Law in the following opioid-related lawsuits that are currently pending in the Opioid MDL-2804:

- *MSP Recovery Claims, Series LLC v. Purdue Pharma, L.P., et al.*, Case No.: 1:18-OP-45091 (N.D. Ohio);
- *MSPA Claims 1, LLC, et al. v. Anda, Inc., et al,* Case No.: 1:18-OP-45526 (N.D. Ohio);
- *Laborers 17 Health Benefit Fund v. Purdue Pharma, L.P., et al.,* Case No.: 1:18-OP-45072 (N.D. Ohio);
- *Teamsters Local 493 Health Services and Insurance Plan v. Purdue Pharma, et al.,* Case No.: 1:18-OP-45074 (N.D. Ohio);
- *Teamsters Local 671 Health Services and Insurance Plan v. Purdue Pharma, et al.,* Case No.: 1:18-OP-45092 (N.D. Ohio);
- *Teamsters Local 677 Health Services and Insurance Plan v. Purdue Pharma, et al.,* Case No.: 1:18-OP-45071 (N.D. Ohio);
- *IBEW Local 90 Benefits Plan v. Purdue Pharma, L.P., et al*., Case No.: 1:18-OP-45069 (N.D. Ohio);
- *City of Huron v. AmerisourceBergen Drug Corporation, et al*., Case No.: 1:18-OP-45431 (N.D. Ohio);
- *City of Macedonia v. AmerisourceBergen Drug Corporation, et al*., Case No.: 1:18-OP-45447 (N.D. Ohio);
- *City of North Royalton v. AmerisourceBergen Drug Corporation, et al.,* Case No.: 1:18-OP-45427 (N.D. Ohio);
- *City of East Cleveland v. AmerisourceBergen Drug Corporation, et al.,* Case No.: 1:18-OP-45448 (N.D. Ohio);
- *Village of Newburgh Heights v. AmerisourceBergen Drug Corporation, et al.*, Case No.: 1:18-OP-45449 (N.D. Ohio);
- *Village of Brooklyn Heights v. AmerisourceBergen Drug Corporation, et al.,* Case No.: 1:18-OP-45450 (N.D. Ohio);
- *City of Lyndhurst v. AmerisourceBergen Drug Corporation, et al.,* Case No.: 1:18-OP-45636 (N.D. Ohio);
- *City of Wickliffe v. AmerisourceBergen Drug Corporation, et al.,* Case No.: 1:18-OP-45637 (N.D. Ohio); and
- *City of Mayfield Heights v. AmerisourceBergen Drug Corporation, et al.,* Case No.: 1:18-OP-45635 (N.D. Ohio).

Furthermore, Mr. Ferraro is co-lead counsel in an opioid-related lawsuit filed in Florida state court in the matter of *Palm Beach County v. Purdue Pharma, L.P., et al*., Case No.: 2018-

CA-004109 (15th Jud. Cir. Ct. Palm Beach County, Florida). Palm Beach County is commonly known as the epicenter of the opioid epidemic in the State of Florida.

## IV.    CONCLUSION

Mr. Ferraro should be appointed to the Plaintiffs' Executive Committee because the MSP cases are different from all the other cases in this litigation. Moreover, the MSP cases will have a profound effect on the damage model for a significant number of plaintiffs. It is to the benefit of everyone in the litigation that Mr. Ferraro have a seat on the Executive Committee. His presence will provide access to and use of MSP's damages framework and model, including its vast database which will be invaluable for the purposes of accurately calculating the economic damages incurred in these matters.

For the foregoing reasons, the MSP Plaintiffs respectfully request that this Honorable Court enter an Order appointing James L. Ferraro, Esq., in his capacity as lead trial counsel for the MSP Plaintiffs and PLR Class, to a position on the Plaintiffs' Executive Committee.

DATED this 1st day of June, 2018.

Respectfully submitted,

*Attorney for Plaintiffs, MSP Recovery Claims, Series LLC, MSPA Claims 1, LLC and MAO-MSO Recovery II, LLC*

By: */s/ James L. Ferraro*
    James L. Ferraro, Esq.
    Florida Bar No.: 381659
    Ohio Bar No.: 0076089
    Janpaul Portal, Esq.
    Florida Bar No.: 0567264
    James L. Ferraro, Jr., Esq.
    Florida Bar No.: 107494
    **THE FERRARO LAW FIRM, P.A.**
    Brickell World Plaza
    600 Brickell Avenue
    38th Floor
    Miami, Florida 33131

Telephone: (305) 375-0111
Facsimile: (305) 379-6222
Email:    jlf@ferrarolaw.com
           jpp@ferrarolaw.com
           jjr@ferrarolaw.com

**AND**

John H. Ruiz, Esq.
Florida Bar No.: 928150
Frank C. Quesada, Esq.
Florida Bar No.: 29411
**MSP Recovery Law Firm**
5000 S.W. 75th Avenue, Suite 300
Miami, Florida 33155
Telephone: (305) 614-2239
Email:    jruiz@msprecovery.com
           fquesada@msprecovery.com
           serve@msprecovery.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2018, I electronically filed the foregoing document with the Clerk for the United States District Court, Northern District of Ohio. The electronic case filing system (CM/ECF) will send a Notice of Electronic Filing (NEF) to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ James L. Ferraro*
James L. Ferraro, Esq.

# EXHIBIT

## A

**Janpaul P. Portal**

| | |
|---|---|
| **From:** | Lisa Percival |
| **Sent:** | Tuesday, January 16, 2018 11:31 AM |
| **To:** | Joseph F. Rice Esq. (jrice@motleyrice.com) |
| **Subject:** | MSP Recovery Claims, Series LLC v. Purdue Pharma, et al. |
| **Attachments:** | 2018-1-16 Ltr to Joseph Rice.pdf |

Please see the attached correspondence from Jim Ferraro.

Thank you,

**Lisa C. Percival**
**Assistant to James L. Ferraro, Esq.**


**THE**
**FERRARO**
**LAW FIRM**

Brickell World Plaza
600 Brickell Avenue
Suite 3800
Miami, FL 33131
Tel:  (305) 375-0111
Fax: (305) 416-2525
Toll-Free: (800) 275-3332
www.ferrarolaw.com

Confidentiality Notice: The information contained in this transmittal, including any attachment, is privileged and confidential and is intended only for the person or entity to whom it is addressed. If you are neither the intended recipient nor the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying or distribution or the taking of any action in reliance on the contents of this transmittal is strictly prohibited. If you have received this transmittal in error, please contact the sender immediately and delete this transmittal from any computer or other data bank.

JAMES L. FERRARO*
DAVID A. JAGOLINZER**

SCOTT A. KNOTT***
GREGORY S. LYNAM+
JUAN P. BAUTA, II
ERICA L. BRADY++
ALLAN B. KAISER****
MARC P. KUNEN
JANPAUL PORTAL
JAMES L. FERRARO, JR.
JOSE L. BECERRA
GABRIEL S. SAADE*****
DICK M. ORTEGA***
FERNANDO J. ULLOA+++
RALPH LONGO
STEPHEN MCCLOSKEY
MATTHEW D. GUTIERREZ***



## THE FERRARO LAW FIRM

MIAMI • WASHINGTON, D.C.

600 Brickell Avenue
38TH FLOOR
MIAMI, FLORIDA 33131
TELEPHONE (305) 375-0111
TELEFAX (305) 379-6222
TOLL FREE (800) 275-3332
www.ferrarolaw.com

* ALSO LICENSED IN MA, DC, NY, OH
** ALSO LICENSED IN MA, DC, NY, IL
*** ALSO LICENSED IN DC
**** ALSO LICENSED IN MO
***** ALSO LICENSED IN MA
+ONLY LICENSED IN CA, IL
++ ONLY LICENSED IN CA, NY, DC
+++ONLY LICENSED IN HONDURAS

January 16, 2018

***Via Electronic Mail:*** jrice@motleyrice.com
Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464

      Re:     *MSP Recovery Claims, Series LLC v. Purdue Pharma, et al.*, 1:18-cv-00040 (N.D. Ohio)

Dear Joe:

     As we have discussed, The Ferraro Law Firm and partners currently represent MSP Recovery Claims, Series LLC, as assignee on behalf of over one hundred (100) Medicaid Managed Care Organizations, Health Maintenance Organizations, Managed Service Organizations, Primary Care Case Management entities, Independent Physician Associations, Primary Care Case Managers, Pre-Paid Ambulatory Health Plans and Pre-Paid Inpatient Health Plans, in a nationwide class action complaint filed against the opioid manufacturers and distributors in the above-styled case (hereinafter referred to as the "MSP Case).

     The Medicaid Program is a joint Federal-State medical assistance program authorized by Title XIX of the Social Security Act ("the Act"), 42 U.S.C. § 1396, et seq., and regulations promulgated thereunder (hereinafter referred to as "Medicaid" or "Medicaid Program"). As a condition of participating in the Medicaid Program, States must comply with the third-party liability provisions set forth under 42 U.S.C. § 1396a(a)(25) and assignment provisions set forth under 42 U.S.C. § 1396k(a). Under this federal scheme, Medicaid is intended to be the "payer of last resort." *See* Federal Register, Vol. 81, No. 88, 27498 through 27901, 27769 (May 6, 2016). Title XIX of the Act requires State Medicaid Agencies to identify and seek payment from liable third parties, before billing Medicaid.

Joseph F. Rice, Esq.
January 16, 2018
Page 2

The Plaintiff's assignors in the MSP Case have the unique position of being **Payors of Last Resort** in that they stand in the same shoes as their contracted State Medicaid Agencies to provide Medicaid health benefits and additional services to Medicaid beneficiaries, including, but not limited to, the same responsibilities, limitations, prompt payment requirements and the same rights and responsibilities of pursuing third-party liability claims when delegated that authority pursuant to the applicable State law or by contract. Accordingly, the Plaintiff in the MSP Case (payors of last resort), **unlike** the pending third-party payor cases, should be deemed to be in a separate class of plaintiffs with distinct recovery rights (hereinafter referred to as the "PLR Class"). More specifically, the PLR Class is defined as follows:

> All non-governmental entities, and/or their assignees including, but not limited to, downstream and/or down tier entities, that contracted directly with State Medicaid Agencies other than the State of Florida to provide care, services, prescription drugs and supplies as well as items and services to Medicaid beneficiaries, in the United States of America and its territories, between January 1, 2011 and the present date (the "Class Period"), who purchased, paid, provided reimbursement and/or possess the right to seek reimbursement from liable third-parties for the costs of prescription opioid drugs manufactured, marketed, sold, or distributed by the Defendants, for purposes other than resale, and/or who, during the same class period, incurred costs for treatments, hospitalizations, addiction and rehabilitation treatment, overdose or other opioid-related health-care services. Such entities include, but are not limited to, all Managed Care Organizations, Health Maintenance Organizations, Managed Service Organizations, Primary Care Case Management entities, Independent Physician Associations, Accountable Care Organizations, Primary Care Case Managers, Pre-Paid Ambulatory Health Plans and Pre-Paid Inpatient Health Plans and other similarly situated entities that contracted with State Medicaid Agencies to provide benefits to Medicaid beneficiaries.

The over one hundred Medicaid contracted entities that assigned their rights to Plaintiff, and which represent just one portion of the PLR Class, as well as the several hundred thousand similar nationwide Medicaid entities that make up the PLR Class, represent millions of beneficiaries, that purchased and used prescription opioids throughout the United States, and its territories. These Medicaid entities were forced to pay for and absorb the losses related to the delivery of care, services and/or supplies, including, the delivery of prescription opioid medications, treatments, hospitalizations, addiction and rehabilitation treatment, overdose or other opioid-related health-care services to Medicaid beneficiaries.

In light of Judge Polster's intent to have a meaningful discussion and possible resolution of the opioid epidemic, we feel it is imperative that a representative of the PLR Class, as a majority

Joseph F. Rice, Esq.
January 16, 2018
Page 3

stakeholder, should be present and represented by our firm at the January 31, 2018 hearing.

Please let us know if you would like any additional information.

Sincerely,

THE FERRARO LAW FIRM, P.A.

James L. Ferraro, Esq.

JLF/JP
(Enclosures as stated)

# EXHIBIT

# B

## Lisa Percival

| | |
|---|---|
| **From:** | Lisa Percival |
| **Sent:** | Monday, January 22, 2018 4:52 PM |
| **To:** | Jayne Conroy Esq. (jconroy@simmonsfirm.com) |
| **Cc:** | Joseph F. Rice Esq. (jrice@motleyrice.com); Paul J. Hanly Jr. Esq. (phanly@simmonsfirm.com); Paul T. Farrell Jr. Esq. (paul@greeneketchum.com) |
| **Subject:** | In re: National Prescription Opiate Litigation, Case No.: 1:17-md-02804-DAP (N.D. Ohio) |
| **Attachments:** | 2018-1-22 Ltr to Jayne Conroy.pdf |

Please see the attached correspondence from Jim Ferraro regarding the above-referenced matter.

Thank you,

**Lisa C. Percival**
**Assistant to James L. Ferraro, Esq.**



Brickell World Plaza
600 Brickell Avenue
Suite 3800
Miami, FL 33131
Tel: (305) 375-0111
Fax: (305) 416-2525
Toll-Free: (800) 275-3332
www.ferrarolaw.com

Confidentiality Notice: The information contained in this transmittal, including any attachment, is privileged and confidential and is intended only for the person or entity to whom it is addressed. If you are neither the intended recipient nor the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying or distribution or the taking of any action in reliance on the contents of this transmittal is strictly prohibited. If you have received this transmittal in error, please contact the sender immediately and delete this transmittal from any computer or other data bank.

JAMES L. FERRARO*
DAVID A. JAGOLINZER**

SCOTT A. KNOTT***
GREGORY S. LYNAM+
JUAN P. BALTA, II
ERICA L. BRADY++
ALLAN B. KAISER****
MARC P. KUNEN
JANPAUL PORTAL
JAMES L. FERRARO, JR.
JOSE L. BECERRA
GABRIEL S. SAADE*****
DICK M. ORTEGA***
FERNANDO J. ULLOA+++
RALPH LONGO
STEPHEN McCLOSKEY
MATHEW D. GUTIERREZ ***



**THE FERRARO LAW FIRM**

MIAMI • WASHINGTON, D.C.

600 Brickell Avenue
38TH FLOOR
MIAMI, FLORIDA 33131
TELEPHONE (305) 375-0111
TELEFAX (305) 379-6222
TOLL FREE (800) 275-3332
www.ferrarolaw.com

* ALSO LICENSED IN MA, DC, NY, OH
** ALSO LICENSED IN MA, DC, NY, IL
*** ALSO LICENSED IN DC
**** ALSO LICENSED IN MO
***** ALSO LICENSED IN MA
+ONLY LICENSED IN CA, IL
++ ONLY LICENSED IN CA, NY, DC
+++ONLY LICENSED IN HONDURAS

January 22, 2018

*Via Electronic Mail:* jconroy@simmonsfirm.com
Jayne Conroy, Esq.
Simmons Hanly Conroy LLC
112 Madison Avenue, 7th Floor
New York, New York 10016

Re: *In re: National Prescription Opiate Litigation*, Case No.: 1:17-md-02804-DAP
(N.D. Ohio)

### Formal Application for a Position on the Plaintiff's Steering Committee

Dear Jayne:

Please allow this to serve as my, James L. Ferraro's, formal application for a position on the Plaintiff's Steering Committee ("PSC") in the matter of *In re: National Prescription Opiate Litigation*, Case No.: 1:17-md-02804-DAP ("Opioid MDL-2804"). Although I am requesting a position on the PSC, for the reasons set forth in further detail below, I would also respectfully request that the Plaintiff's leadership consider my application for the creation of and my appointment to an additional position on the Plaintiff's Executive Committee ("PEC") designated to represent the interests of **Payors of Last Resort** ("PLR Class"). The latter, however, would understandably be subject to the agreement of the Plaintiff's leadership structure and approval by the Honorable Dan A. Polster.

In further support of my application, I submit the following for review and consideration:

### Experience and Qualifications

In 1985, I founded The Ferraro Law Firm, P.A. ("Ferraro Law") in Miami, Florida and in

Jayne Conroy, Esq.
January 22, 2018
Page 2

1997, along with my late partner, Michael V. Kelley, founded the law firm of Kelley & Ferraro in Cleveland, Ohio.  With over three decades of experience, I am nationally recognized as a leading civil trial attorney in areas of complex product liability, asbestos, tobacco, pharmaceutical/defective drug cases, federal tax whistleblower claims and other significant class action and mass tort litigation.

I have successfully tried many cases that resulted in multi-million dollar jury verdicts. In 1995, I received the largest compensatory award in the state of Florida for a mesothelioma case. In 1997, I also had the highest compensatory jury verdict ever in the nation for a non-malignant asbestos case. Through skillfully negotiated settlements and numerous jury trials, I have been lead counsel in securing over $1 billion for Ferraro Law's clients in product liability matters.   In addition, I have firsthand experience handling over twenty (20) asbestos trusts, for which I sit on the creditor's committees.

In 1996, I made American legal history when I successfully tried a case against DuPont in the first case against a chemical company for causing a birth defect. I proved that a pregnant woman's exposure to the fungicide Benlate caused her child to be born without eyes and held DuPont accountable in *Castillo vs. E.I. du Pont de Nemours and Company and Pine Island Farms*. The trial was broadcast in its entirety on Court TV, garnered worldwide media attention and, ultimately, went to the Florida Supreme Court. Seven years after trial, the Supreme Court of Florida affirmed the trial court verdict. In 1997, because of that case, I was named one of ten national finalists for Trial Lawyer of the Year.  The *Castillo* case is now featured in my 2017 bestselling book, *Blindsided*.

More recently, in August 2015, I tried an asbestos case against Georgia-Pacific with my oldest son, James Ferraro, Jr., resulting in a $17,175,000 verdict. Because of that case, CVN Florida voted me as the 2015 Plaintiff's Attorney of the Year. In November 2015, I was a guest lecturer at Harvard Law School for third year law students.

In 2015, I also personally argued *Aubin v. Union Carbide Corp.* before the Florida Supreme Court, which rejected the corporate-friendly Third Restatement of Torts and retained the Second Restatement of Torts. Aubin has been acclaimed to be the most important Florida product liability case since *West v. Caterpillar* in 1976. Most recently, I personally argued *Schwartz v. Honeywell International, Inc.*, before the Ohio Supreme Court, which was another product liability case dealing with sophisticated issues relating to medical expert testimony. Additionally, in March 2018, I am set to argue the highly publicized product liability case of *Delisle v. Crane Co.* in front of the Florida Supreme Court, in which the Court will decide whether Daubert or Frye is the applicable standard for science in the courtroom.

I am a member of the Ohio, New York, Florida, Massachusetts and District of Columbia Bars; the Fellows of the American Bar Foundation; the American Bar Association; the Florida Institute of Certified Public Accountants; the American Association for Justice; the Florida Justice

Jayne Conroy, Esq.
January 22, 2018
Page 3

Association; The National Trial Lawyers: Top 100 Trial Lawyers; and the Multi-Million Dollar Advocates Forum. I am also a Florida State Coordinator for The Public Justice Foundation. *See* attached curriculum vitae (**Exhibit A**) and The Ferraro Law Firm's curriculum vitae (**Exhibit B**).

## Opioid Litigation Experience

I am lead counsel on behalf of Ferraro Law and partners in the following opioid-related lawsuits that are currently pending in or are in the process of being transferred to the Opioid MDL-2804:

- *MSP Recovery Claims, Series LLC v. Purdue Pharma, et al.*, 1:18-cv-00040 (N.D. Ohio);
- *Laborers 17 Health Benefit Fund v. Purdue Pharma, L.P., et al*, 1:17-cv-09877-(S.D.N.Y.) (transferred to Opioid MDL-2804 pursuant to CTO-4);
- *Teamsters Local 493 Health Services and Insurance Plan v. Purdue Pharma, et al.*, Case No.: 3:17-cv-02092 (D. Conn.) (transferred to Opioid MDL-2804 pursuant to CTO-4);
- *Teamsters Local 671 Health Services and Insurance Plan v. Purdue Pharma, et al.*, Case No.: 3:17-cv-02093 (D. Conn.) (transferred to Opioid MDL-2804 pursuant to CTO-4);
- *Teamsters Local 677 Health Services and Insurance Plan v. Purdue Pharma, et al.*, Case No.: 3:17-cv-02094 (D. Conn.) (transferred to Opioid MDL-2804 pursuant to CTO-4); and
- *IBEW Local 90 Benefits Plan v. Purdue Pharma, L.P., et al.*, Case No.: 3:17-cv-02095 (D. Conn.) (transferred to Opioid MDL-2804 pursuant to CTO-4).

As indicated above, Ferraro Law and partners represent five separate union health and welfare fund plaintiffs in what is ordinarily classified as third-party payor cases ("TPP cases"). I have been intricately involved in the discussions relating to the leadership structure of the TPP cases and endorsed the nomination of James Dugan to the PEC, as the designated representative on behalf of the TPP cases, with the understanding that I would be appointed to a position on the Plaintiff's TPP Executive Committee and/or PSC. *See* TPP's Objection to Plaintiff's Motion to Approve Co-Leads, Co-Liaisons and Plaintiff's Executive Committee (Doc #20).

Subsequent to the filing of the Plaintiff's Renewed Motion to Approve Co-Leads, Co-Liaisons and Plaintiff's Executive Committee (Doc. #34) and the Court's Order granting same (Doc. #37), Ferraro Law, in collaboration with its partners, filed *MSP Recovery Claims, Series LLC v. Purdue Pharma, et al.*, 1:18-cv-00040 (N.D. Ohio) (hereinafter referred to as the "MSP Case"). The MSP Case is a nationwide class action complaint filed by MSP Recovery Claims, Series LLC, as assignee on behalf of over one hundred (100) Medicaid Managed Care Organizations, Health Maintenance Organizations, Managed Service Organizations, Primary Care Case Management entities, Independent Physician Associations, Primary Care Case Managers,

Jayne Conroy, Esq.
January 22, 2018
Page 4

Pre-Paid Ambulatory Health Plans and Pre-Paid Inpatient Health Plans, and other members of the PLR Class, against the opioid manufacturers, distributors and key opinion leaders.

## PLR Class

The Medicaid Program is a joint Federal-State medical assistance program authorized by Title XIX of the Social Security Act ("the Act"), 42 U.S.C. § 1396, et seq., and regulations promulgated thereunder (hereinafter referred to as "Medicaid" or "Medicaid Program"). As a condition of participating in the Medicaid Program, States must comply with the third-party liability provisions set forth under 42 U.S.C. § 1396a(a)(25) and assignment provisions set forth under 42 U.S.C. § 1396k(a). Under this federal scheme, Medicaid is intended to be the "payer of last resort." *See* Federal Register, Vol. 81, No. 88, 27498 through 27901, 27769 (May 6, 2016). Title XIX of the Act requires State Medicaid Agencies to identify and seek payment from liable third parties, before billing Medicaid.

The Plaintiff's assignors in the MSP Case have the unique position of being **Payors of Last Resort** in that they stand in the same shoes as their contracted State Medicaid Agencies to provide Medicaid health benefits and additional services to Medicaid beneficiaries, including, but not limited to, the same responsibilities, limitations, prompt payment requirements and the same rights and responsibilities of pursuing third-party liability claims when delegated that authority pursuant to the applicable State law or by contract. Accordingly, the Plaintiff in the MSP Case (payors of last resort), **unlike the TPP cases**, should be deemed to be in a separate class of plaintiffs with distinct recovery rights (the PLR Class). More specifically, the PLR Class is defined as follows:

> All non-governmental entities, and/or their assignees including, but not limited to, downstream and/or down tier entities, that contracted directly with State Medicaid Agencies other than the State of Florida to provide care, services, prescription drugs and supplies as well as items and services to Medicaid beneficiaries, in the United States of America and its territories, between January 1, 2011 and the present date (the "Class Period"), who purchased, paid, provided reimbursement and/or possess the right to seek reimbursement from liable third-parties for the costs of prescription opioid drugs manufactured, marketed, sold, or distributed by the Defendants, for purposes other than resale, and/or who, during the same class period, incurred costs for treatments, hospitalizations, addiction and rehabilitation treatment, overdose or other opioid-related health-care services. Such entities include, but are not limited to, all Managed Care Organizations, Health Maintenance Organizations, Managed Service Organizations, Primary Care Case Management entities, Independent Physician Associations, Accountable Care Organizations, Primary Care Case Managers, Pre-Paid Ambulatory Health Plans and Pre-Paid Inpatient

Jayne Conroy, Esq.
January 22, 2018
Page 5

Health Plans and other similarly situated entities that contracted with State
Medicaid Agencies to provide benefits to Medicaid beneficiaries.

The over one hundred Medicaid contracted entities that assigned their rights to Plaintiff,
and which represent just one portion of the PLR Class, as well as the several hundred thousand
similar nationwide Medicaid entities that make up the PLR Class, represent millions of
beneficiaries, that purchased and used prescription opioids throughout the United States, and its
territories. These Medicaid entities were forced to pay for and absorb the losses related to the
delivery of care, services and/or supplies, including, the delivery of prescription opioid
medications, treatments, hospitalizations, addiction and rehabilitation treatment, overdose or other
opioid-related health-care services to Medicaid beneficiaries.

### Conclusion

In light of Judge Polster's intent to have a meaningful discussion and possible resolution
of the opioid epidemic, I feel it is imperative that the PLR Class, as a majority stakeholder, should
be represented in the Opioid MDL-2804. Accordingly, I hereby respectfully request that the
Plaintiff's leadership approve my application for a position on the PSC or, alternatively, on the
PEC.

Please do not hesitate to contact me, should you require any additional information.

Very truly yours,

THE FERRARO LAW FIRM, P.A.

James L. Ferraro, Esq.

JLF/JP
(*Enclosures as stated*)

cc:     Joseph F. Rice, Esq., via email: jrice@motleyrice.com
        Paul J. Hanly, Jr., Esq., via email: phanly@simmonsfirm.com
        Paul T. Farrell, Jr., Esq., via email: paul@greeneketchum.com

# EXHIBIT

## C

## Lisa Percival

| | |
|---|---|
| **From:** | Lisa Percival |
| **Sent:** | Friday, March 09, 2018 5:34 PM |
| **To:** | Joseph F. Rice Esq. (jrice@motleyrice.com); Paul J. Hanly Jr. Esq. (phanly@simmonsfirm.com); Paul T. Farrell Jr. Esq. (paul@greeneketchum.com); Peter H. Weinberger Esq. (pweinberger@spanglaw.com); David R. Cohen, Esq. (david@specialmaster.law); Francis McGovern, Esq. (McGovern@law.duke.edu); Cathy Yanni, Esq. (cathy@cathyyanni.com) |
| **Cc:** | Steve Skikos Esq. (sskikos@skikoscrawford.com); Troy Rafferty Esq. (trafferty@levinlaw.com); Don Barrett Esq. (dbarrett@barrettlawgroup.com); Elizabeth Cabraser Esq. (ecabraser@lchb.com); James E. Cecchi Esq. (jcecchi@carellabyrne.com); Erin Dickinson Esq. (ekd@cruegerdickinson.com); James R. Dugan II Esq. (jdugan@dugan-lawfirm.com); Paul J. Geller Esq. (pgeller@rgrdlaw.com); Michael J. Fuller Esq. (mike@mchughfuller.com); R. Eric Kennedy Esq. (ekennedy@weismanlaw.com); Mark Lanier Esq. (WML@LanierLawFirm.com); Peter J. Mougey Esq. (pmougey@levinlaw.com); Ellen Relkin Esq. (erelkin@weitzlux.com); Lynn Sarko Esq. (lsarko@kellerrohrback.com); Hunter J. Shkolnik (Hunter@NapoliLaw.com); Christopher A. Seeger Esq. (cseeger@seegerweiss.com); Roland Tellis Esq. (rtellis@baronbudd.com); James D. Young Esq. (jyoung@forthepeople.com); James L. Ferraro Jr.; Janpaul P. Portal |
| **Subject:** | In re: National Prescription Opiate Litigation, Case No.: 1:17-md-02804-DAP (MDL 2804) |
| **Attachments:** | 2018-3-9 Application for Position on PEC.pdf |

Attached please find the Formal Request and Application for a Position on the Plaintiffs' Executive Committee submitted by James L. Ferraro.

Thank you,

**Lisa C. Percival**
**Assistant to James L. Ferraro, Esq.**



Brickell World Plaza
600 Brickell Avenue
Suite 3800
Miami, FL 33131
Tel: (305) 375-0111
Fax: (305) 416-2525
Toll-Free: (800) 275-3332
www.ferrarolaw.com

Confidentiality Notice: The information contained in this transmittal, including any attachment, is privileged and confidential and is intended only for the person or entity to whom it is addressed. If you are neither the intended recipient nor the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying or distribution or the taking of any

JAMES L. FERRARO*
DAVID A. JAGOLINZER**

SCOTT A. KNOTT***
GREGORY S. LYNAM+
JUAN P. BAUTA, II
ERICA L. BRADY++
ALLAN B. KAISER****
MARC P. KUNEN
JANPAUL PORTAL
JAMES L. FERRARO, JR.
JOSE L. BECERRA
GABRIEL S. SAADE*****
DICK M. ORTEGA***
FERNANDO J. ULLOA+++
RALPH LONGO
STEPHEN McCLOSKEY
MATHEW D. GUTIERREZ***



*ALSO LICENSED IN MA, DC, NY, OH
**ALSO LICENSED IN MA, DC, NY, IL
*** ALSO LICENSED IN DC
**** ALSO LICENSED IN MO
***** ALSO LICENSED IN MA
+ONLY LICENSED IN CA, IL
++ ONLY LICENSED IN CA, NY, DC
+++ONLY LICENSED IN HONDURAS

MIAMI • WASHINGTON, D.C.

600 Brickell Avenue
38TH FLOOR
MIAMI, FLORIDA 33131
TELEPHONE (305) 375-0111
TELEFAX (305) 379-6222
TOLL FREE (800) 275-3332
www.ferrarolaw.com

March 9, 2018

### *Via Electronic Mail*

Joseph F. Rice, Esq., Plaintiffs' Co-Lead Counsel
jrice@motleyrice.com
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

David R. Cohen, Special Master
david@specialmaster.law
24400 Chagrin Blvd.
Suite 300
Cleveland, OH 44122

Paul J. Hanly, Esq., Plaintiffs' Co-Lead Counsel
phanly@simmonsfirm.com
Simmons, Hanly & Conroy, LLC
112 Madison Ave.
New York, NY 10146

Francis McGovern, Special Master
McGovern@law.duke.edu
401 W. Alabama
Houston, TX 77006

Paul T. Farrell, Jr., Esq., Plaintiffs' Co-Lead Counsel
paul@greeneketchum.com
Greene, Ketchum, Farrell, Bailey & Tweel
419 Eleventh Street
Huntington, WV 25724

Cathy Yanni, Special Master
cathy@cathyyanni.com
JAMS
2 Embarcadero Center, Suite 1500
San Francisco, CA 94111

Peter H. Weinberger, Plaintiffs' Co-Liaison Counsel
pweinberger@spanglaw.com
Spangenberg, Shibley & Liber
1001 Lakeside Avenue, E, Ste. 1700
Cleveland, OH 44114

Re:    *In re: National Prescription Opiate Litigation*, Case No.: 1:17-md-02804-DAP
(MDL 2804) (N.D. Ohio) and *MSP Recovery Claims. Series LLC v. Purdue
Pharma, et al.*, 1:18-op-45091-DAP (N.D. Ohio).

Plaintiffs' Executive Committee and Special Masters
March 9, 2018
Page 2

### FORMAL REQUEST AND APPLICATION FOR A
### POSITION ON THE PLAINTIFFS' EXECUTIVE COMMITTEE

Dear Counsel:

The Ferraro Law Firm, P.A. ("Ferraro Law") is lead counsel in a nationwide class action complaint filed on behalf of Medicaid Managed Care Organizations and Providers in the case styled, *MSP Recovery Claims, Series LLC v. Purdue Pharma, et al.*, 1:18-op-45091-DAP (N.D. Ohio) (hereinafter referred to as the "MSP case" or "PLR Class"). The MSP case has been transferred to the Honorable Dan A. Polster and consolidated with the other cases pending in the matter of *In re: National Prescription Opiate Litigation*, Case No.: 1:17-md-02804-DAP ("Opioid MDL-2804").

For the reasons set forth in detail below, the MSP case is significant and distinct from the other third-party payor ("TPP"), hospital and union cases, as well as the government cases, that are currently represented by counsel on the Plaintiffs' Executive Committee ("PEC"). The MSP Plaintiff and members of the putative PLR Class have the unique position of being **"payors of last resort"** in that they stand in the same shoes as their respective state Medicaid agencies. They entered into risk contracts[1] with their state Medicaid agencies to provide health care benefits and related services to Medicaid beneficiaries enrolled in Medicaid managed care plans. Under a risk contract, the Medicaid Managed Care Organization or Provider receives a monthly capitated payment and assumes the risk for the costs associated with providing health care benefits and services to Medicaid beneficiaries enrolled in a managed care plan and further assumes the risk of incurring loss if the costs of furnishing these services exceed the payments under the contract. *See* 42 CFR § 438.2. Accordingly, the interests of the MSP Plaintiff and PLR Class are potentially adverse to some of the claims being asserted by the State Attorneys General to the extent they are seeking reimbursement for opioid-related health care and services paid on behalf of Medicaid beneficiaries in their respective States.

As it stands, the MSP Plaintiff and putative PLR Class are not adequately and appropriately represented on the PEC and/or on the Plaintiffs' settlement negotiating team approved by Judge Polster. In light of the settlement negotiation structure recently established by Judge Polster, and in keeping with his stated intentions of facilitating an early resolution of this matter with all necessary stakeholders, it has become imperative that the undersigned, James L. Ferraro, Esq., as lead trial counsel for the MSP Plaintiff and PLR Class, be afforded an immediate position on the PEC. Moreover, now that Judge Polster is considering entering a CMO, it appears that time is of the essence for this appointment.

### MEDICAID AND THIRD-PARTY LIABILITY

In 1965, Congress established the Medicaid Program as a joint federal-state medical assistance program authorized by Title XIX of the Social Security Act ("the Act"), 42 U.S.C. §

---

[1] "Risk contracts" means a Medicaid contract whereby the contractor: (1) assumes risk for the contract for the cost of the services under the contract; and (2) incurs loss if the cost of furnishing the services exceeds the payments under the contract. *See* 42 CFR § 438.2.

Plaintiffs' Executive Committee and Special Masters
March 9, 2018
Page 3

1396, et seq., and regulations promulgated thereunder (hereinafter referred to as "Medicaid" or "Medicaid Program"). The Children's Health Insurance Program ("CHIP") was established in 1997 to provide new coverage opportunities for children in families with incomes too high to qualify for Medicaid, but who could not afford private coverage. Both Medicaid and CHIP are administered by states within broad federal guidelines and jointly funded by the federal government and states. The Medicaid Program provides for payment for medical items or services, or both, on behalf of eligible low-income adults, children, pregnant women, elderly adults and people with disabilities that is administered by the Centers for Medicare and Medicaid Services ("CMS") and single state agencies that administer or supervise the administration of the state Medicaid plan under federal law. *See* 42 CFR Parts 431, 433, 438, 440, 457 and 495.

Under the Medicaid Program, each state that chooses to participate in the program and receive federal financial participation for program expenditures, establishes eligibility standards, benefits packages, and payment rates, and undertakes program administration pursuant to the applicable federal statutory and regulatory standards. *Id.* Although states are not required to participate in Medicaid, all of them do.[2] Similarly, even though pharmacy coverage is an optional benefit under the Medicaid Program pursuant to Section 1905(a)(12) of the Act, all states currently provide coverage for outpatient prescription drugs to all eligible individuals within the their state Medicaid Programs.[3] The Medicaid prescription drug programs include the management, development and administration of systems and data collection necessary to operate the Medicaid Drug Rebate program as authorized by Section 1927 of the Act. As a result, state Medicaid agencies typically pay for any FDA-approved drug that the physician prescribes for an FDA-approved indication that are prescribed on either an in-patient or out-patient basis.

Moreover, as a condition of participating in the Medicaid program, states must comply with the third-party liability provisions set forth under 42 U.S.C. § 1396a(a)(25) and assignment provisions set forth under 42 U.S.C. § 1396k(a). Under this federal scheme, Medicaid is intended to be the "payor of last resort." *See* Federal Register, Vol. 81, No. 88, 27498 through 27901, 27769 (May 6, 2016). Title XIX of the Act requires state Medicaid agencies to identify and seek payment from liable third parties, before billing Medicaid. Pursuant to the federal third-party liability provisions, states are required to "take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the [State's Medicaid] plan." 42 U.S.C. § 1396a(a)(25)(A). If third-party liability is found after the State has provided medical services to a beneficiary and "the amount of reimbursement the state can reasonably expect to recover exceeds the costs of such recovery," the State is required to "seek reimbursement ... to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(B). That provision further specifies that a third party is any individual, entity, or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan.

Until the early 1990's, the majority of Medicaid benefits were provided to Medicaid

---

[2] *See Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011); *see also, Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006) (describing the structure and administration of the Medicaid Program).

[3] See https://www.medicaid.gov/medicaid/prescrition-drugs/index.html.

Plaintiffs' Executive Committee and Special Masters
March 9, 2018
Page 4

beneficiaries through fee-for-service arrangements directly administered by the state Medicaid agencies. *See* Federal Register, Vol. 81, No. 88, at 27500. However, over time that practice changed and state Medicaid agencies began to contract with various types of Managed Care Organizations ("MCO's"), Pre-Paid Inpatient Health Plans ("PIHP's"), Pre-Paid Ambulatory Health Plans ("PAHP's") and Primary Care Case Managers ("PCCM"), for the delivery of Medicaid health care benefits and additional services through a health care delivery system organized to manage cost, utilization and quality. *Id.* at 27500. Under these contracts, the MCO's accept a fixed, prospective amount, per member per month (capitation) payment for these services.[4] By way of example, in 1992, 2.4 million Medicaid beneficiaries (or 8% of all Medicaid beneficiaries) were enrolled in some type of Medicaid managed care plan. By July 1, 2014, that number had exponentially increased to more than 55 million Medicaid beneficiaries (or 77% of all Medicaid beneficiaries) that accessed part or all of their Medicaid benefits through some type of Medicaid managed care plan.[5]

The MCO's, in turn, provide these Medicaid health care benefits and additional services to Medicaid beneficiaries through a network providers or subcontractors. A "network provider" means any provider[6], group of providers or entity that that has a network provider agreement with an MCO, PIHP, or PAHP, or a subcontractor, and receives Medicaid funding directly or indirectly to order, refer or render covered services as a result of the state's contract with an MCO, PIHP, or PAHP. *See* 42 CFR § 438.2. A "subcontractor" means an individual or entity that has a contract with an MCO, PIHP, PAHP, or PCCM entity that relates directly or indirectly to the performance of the MCO's, PIHP's, PAHP's, or PCCM entity's obligations under its contract with the State. *Id.* The Medicaid MCO's, PIHP's or PAHP's, are authorized to delegate their responsibilities of providing health care benefits and services to Medicaid beneficiaries under their risk contracts with the state Medicaid agency, subject to the requirements and limitations set forth in 42 CFR § 438.20, by entering into risk contracts with Providers or Subcontractors, including, but, not limited to, first tier, downstream and related entities ("FDR entities").[7]

The Providers or Subcontractors, including, but, not limited to, FDR entities, bear the full

---

[4] "Capitation payment" means a payment the State makes periodically to a contractor on behalf of each beneficiary enrolled under a contract based on the actuarially sound capitation rate for the provision of services under the State plan. The State makes the payment regardless of whether the particular beneficiary receives services during the period covered by the payment. *See* 42 CFR § 438.2.

[5] 2014 Medicaid Managed Care Enrollment Report. https://www.medicaid.gov/medicaid/managed-care/enrollment/index.html.

[6] "Provider" means any individual or entity that is engaged in the delivery of services, or ordering or referring for those services, and is legally authorized to do so by the State in which it delivers the services. *See* 42 CFR § 438.2.

[7] "First tier" entity means any party that enters into a written arrangement, acceptable to CMS, with an MA organization or applicant to provide administrative services or health care services for a Medicare eligible individual under the MA program. "Downstream entity" means any party that enters into a written arrangement, acceptable to CMS, with persons or entities involved with the MA benefit, below the level of the arrangement between an MA organization (or applicant) and a first tier entity. These written arrangements continue down to the level of the ultimate provider of both health and administrative services. *See* 42 CFR § 422.2, Fla. Stat.

Plaintiffs' Executive Committee and Special Masters
March 9, 2018
Page 5

risk of loss pursuant to their contractional relationships with the Medicaid MCO's, PIHP's or PAHP's. FDR entities, include Management Service Organizations ("MSO's") and Independent Physician Associations ("IPA's"). These Medicaid MCO's and Providers or Subcontractors, including, but, not limited to, FDR entities, stand in the same shoes as their contracted state Medicaid agencies to provide Medicaid health care benefits and additional services to Medicaid beneficiaries, including, but not limited to, the same responsibilities, limitations and the same rights and responsibilities of pursuing third-party liability claims when delegated that authority pursuant to the applicable state law or by contract.

CMS published guidance in 2012 on Medicaid.gov affirming that Medicaid MCO's should be treated as if they were the state Medicaid agency when the State has delegated responsibility and authority to perform third-party liability functions to the MCO's. *See* Federal Register, Vol. 81, No. 88, at 27771

## MSP AND THE PLR CLASS

The MSP case is a nationwide class action complaint filed by MSP Recovery Claims, Series LLC, as assignee on behalf of over one hundred (100) Medicaid Managed Care Organizations, Health Maintenance Organizations, Managed Service Organizations, Primary Care Case Management entities, Independent Physician Associations, Primary Care Case Managers, Pre-Paid Ambulatory Health Plans and Pre-Paid Inpatient Health Plans, that contracted with and/or were licensed by their respective state Medicaid Agencies to provide health care benefits and related services to Medicaid beneficiaries (collectively referred to as "Plaintiff's Assignors"), and by a Class of similarly-situated entities, the PLR Class, against the Defendant opioid manufacturers, distributors and key opinion leaders.

The Plaintiff's Assignors and putative PLR Class members have the unique position of being "payors of last resort" in that they stand in the same shoes as their respective state Medicaid Agencies because they have entered into risk contracts to provide health care benefits and additional services to Medicaid beneficiaries. As such, the MSP Plaintiff and PLR Class have the same or similar responsibilities, limitations, and the same or similar rights and responsibilities of pursuing third-party liability claims when delegated that authority pursuant to the applicable state law or by contract. The PLR Class is defined as follows:

> All non-governmental entities, and/or their assignees including, but not limited to, downstream and/or down tier entities, that contracted directly with state Medicaid Agencies to provide care, services, prescription drugs and supplies as well as items and services to Medicaid beneficiaries, in the United States of America and its territories, between January 1, 2011 and the present date (the "Class Period"), who purchased, paid, provided reimbursement and/or possess the right to seek reimbursement from liable third-parties for the costs of prescription opioid drugs manufactured, marketed, sold, or distributed by the Defendants, for purposes other than resale, and/or who, during the same class period, incurred costs for treatments, hospitalizations, addiction and rehabilitation treatment,

Plaintiffs' Executive Committee and Special Masters
March 9, 2018
Page 6

> overdose or other opioid-related health-care services. Such entities include, but are not limited to, all Managed Care Organizations, Health Maintenance Organizations, Managed Service Organizations, Primary Care Case Management entities, Independent Physician Associations, Accountable Care Organizations, Primary Care Case Managers, Pre-Paid Ambulatory Health Plans and Pre-Paid Inpatient Health Plans and other similarly situated entities that contracted with State Medicaid Agencies to provide benefits to Medicaid beneficiaries.

The over one hundred Medicaid contracted entities that assigned their rights to Plaintiff, and which represent just one portion of the PLR Class, as well as the several hundred thousand similar nationwide Medicaid entities that make up the PLR Class, provide health care benefits and services to almost 55 million Medicaid beneficiaries nationwide, including a significant number of beneficiaries that purchased and used prescription opioids that were manufactured, marketed, promoted, sold and/or distributed by the Defendant manufactures, distributors and key opinion leaders.

The MSP Plaintiff and Medicaid entities that make up the PLR Class, were ultimately forced to pay for and absorb the losses related to the delivery of care, services and/or supplies, including, the delivery of opioid medications, treatments, hospitalizations, addiction and rehabilitation treatment, overdose or other opioid-related health care services to their respective Medicaid beneficiaries that vastly exceeded the capitated payments they received for these enrollees. Accordingly, the MSP Plaintiff and the PLR Class, as "payors of last resort," are entitled to seek recovery for these losses and damages, which represent potentially billions of dollars in damages, sustained as a direct and proximate result of the Defendants' intentional and tortious acts and/or omissions.

## EXPERIENCE AND QUALIFICATIONS

In 1985, I founded The Ferraro Law Firm, P.A. ("Ferraro Law") in Miami, Florida and in 1997, along with my late partner, Michael V. Kelley, founded the law firm of Kelley & Ferraro in Cleveland, Ohio. With over three decades of experience, I am nationally recognized as a leading civil trial attorney in areas of complex product liability, asbestos, tobacco, pharmaceutical/defective drug cases, federal tax whistleblower claims and other significant class action and mass tort litigation.

I have successfully tried many cases that resulted in multimillion-dollar jury verdicts. In 1995, I received the largest compensatory award in the state of Florida for a mesothelioma case. In 1997, I also had the highest compensatory jury verdict ever in the nation for a non-malignant asbestos case. Through skillfully negotiated settlements and numerous jury trials, I have been lead counsel in securing over $1 billion for Ferraro Law's clients in product liability matters. In addition, I have firsthand experience handling over twenty (20) asbestos trusts, for which I sit on the creditor's committees.

Plaintiffs' Executive Committee and Special Masters
March 9, 2018
Page 7

In 1996, I made American legal history when I successfully tried a case against DuPont in the first case against a chemical company for causing a birth defect. I proved that a pregnant woman's exposure to the fungicide Benlate caused her child to be born without eyes and held DuPont accountable in *Castillo vs. E.I. du Pont de Nemours and Company and Pine Island Farms*. The trial was broadcast in its entirety on Court TV, garnered worldwide media attention and, ultimately, went to the Florida Supreme Court. Seven years after trial, the Supreme Court of Florida affirmed the trial court verdict. In 1997, because of that case, I was named one of ten national finalists for Trial Lawyer of the Year. The *Castillo* case is now featured in my 2017 bestselling book, *Blindsided*.

More recently, in August 2015, I tried an asbestos case against Georgia-Pacific with my oldest son, James Ferraro, Jr., resulting in a $17,175,000 verdict. Because of that case, CVN Florida voted me as the 2015 Plaintiff's Attorney of the Year. In November 2015, I was a guest lecturer at Harvard Law School for third year law students.

In 2015, I also personally argued *Aubin v. Union Carbide Corp.* before the Florida Supreme Court, which rejected the corporate-friendly Third Restatement of Torts and retained the Second Restatement of Torts. Aubin has been acclaimed to be the most important Florida product liability case since *West v. Caterpillar* in 1976. Additionally, on March 6, 2018, I am set to argue the highly publicized product liability case of *Delisle v. Crane Co.* in front of the Florida Supreme Court, in which the Court will decide whether Daubert or Frye is the applicable standard for science in the courtroom.

I am a member of the Ohio, New York, Florida, Massachusetts and District of Columbia Bars; the Fellows of the American Bar Foundation; the American Bar Association; the Florida Institute of Certified Public Accountants; the American Association for Justice; the Florida Justice Association; The National Trial Lawyers: Top 100 Trial Lawyers; and the Multi-Million Dollar Advocates Forum. I am also a Florida State Coordinator for The Public Justice Foundation. *See* attached curriculum vitae (**Exhibit A**) and The Ferraro Law Firm's curriculum vitae (**Exhibit B**).

## OPIOID LITIGATION EXPERIENCE

I am lead counsel on behalf of Ferraro Law and partners in the following opioid-related lawsuits that are currently pending in the Opioid MDL-2804:

- *MSP Recovery Claims, Series LLC v. Purdue Pharma, et al.*, 1:18-cv-00040 (N.D. Ohio);
- *Laborers 17 Health Benefit Fund v. Purdue Pharma, L.P., et al*, 1:17-cv-09877- (S.D.N.Y.) (transferred to Opioid MDL-2804 pursuant to CTO-4);
- *Teamsters Local 493 Health Services and Insurance Plan v. Purdue Pharma, et al.*, Case No.: 3:17-cv-02092 (D. Conn.) (transferred to Opioid MDL-2804 pursuant to CTO-4);
- *Teamsters Local 671 Health Services and Insurance Plan v. Purdue Pharma, et al.*, Case No.: 3:17-cv-02093 (D. Conn.) (transferred to Opioid MDL-2804 pursuant to CTO-4);

Plaintiffs' Executive Committee and Special Masters
March 9, 2018
Page 8

- *Teamsters Local 677 Health Services and Insurance Plan v. Purdue Pharma, et al.*, Case No.: 3:17-cv-02094 (D. Conn.) (transferred to Opioid MDL-2804 pursuant to CTO-4); and
- *IBEW Local 90 Benefits Plan v. Purdue Pharma, L.P., et al.*, Case No.: 3:17-cv-02095 (D. Conn.) (transferred to Opioid MDL-2804 pursuant to CTO-4).

As indicated above, Ferraro Law and partners represent five separate union health and welfare fund plaintiffs in what is ordinarily classified as TPP cases. I have been intricately involved in the discussions relating to the leadership structure of the TPP cases and endorsed the nomination of James Dugan to the PEC, as the designated representative on behalf of the TPP cases, with the understanding that I would be appointed to a position on the Plaintiff's TPP Executive Committee and/or PSC. *See* TPP's Objection to Plaintiff's Motion to Approve Co-Leads, Co-Liaisons and Plaintiff's Executive Committee (Doc #20).

The MSP case, however, was filed after the filing of the Plaintiff's Renewed Motion to Approve Co-Leads, Co-Liaisons and Plaintiff's Executive Committee (Doc #34) and the Court's Order granting same (Doc. #37). Since the PSC has not been established, and given the significant and uniquely distinct interests of the MSP Plaintiff and PLR Class, a new position should be added to the PEC to ensure these interests as properly represented in the MDL litigation and at the settlement negotiations.

In addition, Ferraro Law recently filed a similar MSP class action complaint in Florida state court on behalf of Florida Medicaid Managed Care Organizations and Providers. *See MSPA Claims 1, LLC, et al v. ANDA, Inc. et al*, Case No.: 2018-005066-CA-01, Jud Sec. 30 (11th Jud. Cir/ Ct., Miami-Dade County, FL).

## CONCLUSION

Based on the foregoing, and consistent with Judge Polster's intent to have a meaningful discussion and possible resolution of the opioid epidemic, we feel it is imperative that the PLR Class, as a majority stakeholder, should be represented in the Opioid MDL-2804. Accordingly, I hereby respectfully request that the Plaintiffs' leadership approve my application for an immediate position on the PEC.

Please do not hesitate to contact me, should you require any additional information.

Very truly yours,

THE FERRARO LAW FIRM, P.A.

James L. Ferraro, Esq.

JLF/JP
(*Enclosures as stated*)

Plaintiffs' Executive Committee and Special Masters
March 9, 2018
Page 9

cc:    Plaintiffs' Co-Liaison Counsel:
       Steve Skikos, Esq., sskikos@skikoscrawford.com
       Troy Rafferty, Esq., trafferty@levinlaw.com

       Plaintiffs' Executive Committee:
       Don Barrett, Esq., dbarrett@barrettlawgroup.com
       Elizabeth Cabraser, Esq., ecabraser@lchb.com
       James E. Cecchi, Esq., jcecchi@carellabyrne.com
       Erin Dickinson, Esq., ekd@cruegerdickinson.com
       James R. Dugan, II, Esq., jdugan@dugan-lawfirm.com
       Paul J. Geller, Esq., pgeller@rgrdlaw.com
       Michael J. Fuller, Esq.,  mike@mchughfuller.com
       R. Eric Kennedy, Esq., ekennedy@weismanlaw.com
       Mark Lanier, Esq., WML@LanierLawFirm.com
       Peter J. Mougey, Esq., pmougey@levinlaw.com
       Ellen Relkin, Esq., erelkin@weitzlux.com
       Lynn Sarko, Esq., lsarko@kellerrohrback.com
       Hunter Shkolnik, Esq., Hunter@NapoliLaw.com
       Christopher A. Seeger, Esq., cseeger@seegerweiss.com
       Roland Tellis, Esq., rtellis@baronbudd.com
       James D. Young, Esq., jyoung@forthepeople.com

# EXHIBIT

# D

**Janpaul P. Portal**

| | |
|---|---|
| **From:** | Lisa Percival |
| **Sent:** | Tuesday, May 08, 2018 5:32 PM |
| **To:** | Joseph F. Rice Esq. (jrice@motleyrice.com); Paul J. Hanly Jr. Esq. (phanly@simmonsfirm.com); Paul T. Farrell Jr. Esq. (paul@greeneketchum.com); Peter H. Weinberger Esq. (pweinberger@spanglaw.com); David R. Cohen, Esq. (david@specialmaster.law); Francis McGovern, Esq. (McGovern@law.duke.edu); Cathy Yanni, Esq. (cathy@cathyyanni.com) |
| **Cc:** | Steve Skikos Esq. (sskikos@skikoscrawford.com); Troy Rafferty Esq. (trafferty@levinlaw.com); Don Barrett Esq. (dbarrett@barrettlawgroup.com); Elizabeth Cabraser Esq. (ecabraser@lchb.com); James E. Cecchi Esq. (jcecchi@carellabyrne.com); Erin Dickinson Esq. (ekd@cruegerdickinson.com); James R. Dugan II Esq. (jdugan@dugan-lawfirm.com); Paul J. Geller Esq. (pgeller@rgrdlaw.com); Michael J. Fuller Esq. (mike@mchughfuller.com); R. Eric Kennedy Esq. (ekennedy@weismanlaw.com); Mark Lanier Esq. (WML@LanierLawFirm.com); Peter J. Mougey Esq. (pmougey@levinlaw.com); Ellen Relkin Esq. (erelkin@weitzlux.com); Lynn Sarko Esq. (lsarko@kellerrohrback.com); Hunter J. Shkolnik (Hunter@NapoliLaw.com); Christopher A. Seeger Esq. (cseeger@seegerweiss.com); Roland Tellis Esq. (rtellis@baronbudd.com); James D. Young Esq. (jyoung@forthepeople.com); James L. Ferraro Jr.; Janpaul P. Portal |
| **Subject:** | In re: National Prescription Opiate Litigation, Case No.: 1:17-md-02804-DAP (MDL 2804) |
| **Attachments:** | 2018-5-8 Application for Position on PEC.pdf |

Attached please find additional correspondence regarding the Formal Request and Application for a Position on the Plaintiffs' Executive Committee submitted by James L. Ferraro.

Thank you,

**Lisa Percival**
Assistant to James L. Ferraro, Esq.



Brickell World Plaza
600 Brickell Avenue
Suite 3800
Miami, FL 33131
Tel:  (305) 375-0111
Fax: (305) 416-2525
Toll-Free: (800) 275-3332
www.ferrarolaw.com

Confidentiality Notice: The information contained in this transmittal, including any attachment, is privileged and confidential and is intended only for the person or entity to whom it is addressed. If you are neither the intended recipient nor the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, copying or distribution or the taking of any action in reliance on the contents of this transmittal is strictly prohibited. If you have received this transmittal in error, please contact the sender immediately and delete this transmittal from any computer or other data bank.

JAMES L. FERRARO*
DAVID A. JAGOLINZER**

SCOTT A. KNOTT***
GREGORY S. LYNAM+
JUAN P. BAUTA, II
ERICA L. BRADY++
ALLAN B. KAISER****
MARC P. KUNEN
JANPAUL PORTAL
JAMES L. FERRARO, JR.
JOSE L. BECERRA
GABRIEL S. SAADE*****
DICK M. ORTEGA***
RALPH LONGO
STEPHEN MCCLOSKEY
MATHEW D. GUTIERREZ ***



# THE FERRARO LAW FIRM

*ALSO LICENSED IN MA, DC, NY, OH
**ALSO LICENSED IN MA, DC, NY, IL
*** ALSO LICENSED IN DC
**** ALSO LICENSED IN MO
***** ALSO LICENSED IN MA
+ONLY LICENSED IN CA, IL
++ ONLY LICENSED IN CA, NY, DC

MIAMI • WASHINGTON, D.C.

600 Brickell Avenue
38TH FLOOR
MIAMI, FLORIDA 33131
TELEPHONE (305) 375-0111
TELEFAX (305) 379-6222
TOLL FREE (800) 275-3332
www.ferrarolaw.com

May 8, 2018

*Via Electronic Mail*

Joseph F. Rice, Esq., Plaintiffs' Co-Lead Counsel
jrice@motleyrice.com
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

David R. Cohen, Special Master
david@specialmaster.law
24400 Chagrin Blvd.
Suite 300
Cleveland, OH 44122

Paul J. Hanly, Esq., Plaintiffs' Co-Lead Counsel
phanly@simmonsfirm.com
Simmons, Hanly & Conroy, LLC
112 Madison Ave.
New York, NY 10146

Francis McGovern, Special Master
McGovern@law.duke.edu
401 W. Alabama
Houston, TX 77006

Paul T. Farrell, Jr., Esq., Plaintiffs' Co-Lead Counsel
paul@greeneketchum.com
Greene, Ketchum, Farrell, Bailey & Tweel
419 Eleventh Street
Huntington, WV 25724

Cathy Yanni, Special Master
cathy@cathyyanni.com
JAMS
2 Embarcadero Center, Suite 1500
San Francisco, CA 94111

Peter H. Weinberger, Plaintiffs' Co-Liaison Counsel
pweinberger@spanglaw.com
Spangenberg, Shibley & Liber
1001 Lakeside Avenue, E, Ste. 1700
Cleveland, OH 44114

Re:     *In re: National Prescription Opiate Litigation*, Case No.: 1:17-md-02804-DAP
        (MDL 2804) (N.D. Ohio) and *MSP Recovery Claims, Series LLC v. Purdue
        Pharma, et al.*, 1:18-op-45091-DAP (N.D. Ohio).

Dear Counsel:

    On March 9, 2018, I emailed a "Formal Request and Application for a Position on the

Plaintiffs' Executive Committee and Special Masters
May 8, 2018
Page 2

Plaintiffs' Executive Committee" (attached as Exhibit "A"), for which I have not received a response. Prior to that, on January 22, 2018, I filed a "Formal Application for a Position on the Plaintiffs' Steering Committee" (attached as Exhibit "B"), for which I also have not received a formal response other than an acknowledgment of receipt. It has been two months since my "Formal Request and Application for a Position on the Plaintiffs' Executive Committee." Please provide me with a formal response within the next week. If necessary, I will file the appropriate motion with the Court directly, which I prefer not to do.

Since my March 9, 2018 letter, I want to supplement that request with the fact that The Ferraro Law Firm, P.A. ("Ferraro Law") is now lead counsel for *Palm Beach County v. Purdue Pharma, L.P., et al.*, Case No.: 2018-CA-004109 (15th Cir. Ct. Palm Beach County, Florida). Palm Beach County is commonly known as the epicenter of the opiate epidemic. Be that as it may, the most compelling reason why I should be on the Executive Committee is the fact that the MSP case is different from any other case in the litigation and therefore a seat on the Executive Committee is appropriate. Not only is it possibly the biggest case, but it is to the benefit of everyone in the litigation that I have a seat on the Executive Committee.

I am aware that negotiations have been going on rather intensely for the last couple of months and there is no one at the table that can properly represent the MSP Class Action. I know that some of you have some working knowledge about MSP, in that a couple of you have met with my client with hope of receiving some work of your own.

I appreciate the formal response within the next week. Thank you for your prompt and thorough attention to this matter.

Very truly yours,

**THE FERRARO LAW FIRM, P.A.**

James L. Ferraro, Esq.

JLF:lcp
(*Enclosures as stated*)

cc:   Plaintiffs' Co-Liaison Counsel:
Steve Skikos, Esq., sskikos@skikoscrawford.com
Troy Rafferty, Esq., trafferty@levinlaw.com

Plaintiffs' Executive Committee:
Don Barrett, Esq., dbarrett@barrettlawgroup.com
Elizabeth Cabraser, Esq., ecabraser@lchb.com
James E. Cecchi, Esq., jcecchi@carellabyrne.com
Erin Dickinson, Esq., ekd@cruegerdickinson.com
James R. Dugan, II, Esq., jdugan@dugan-lawfirm.com

Plaintiffs' Executive Committee and Special Masters
May 8, 2018
Page 3

        Paul J. Geller, Esq., pgeller@rgrdlaw.com
        Michael J. Fuller, Esq.,  mike@mchughfuller.com
        R. Eric Kennedy, Esq., ekennedy@weismanlaw.com
        Mark Lanier, Esq., WML@LanierLawFirm.com
        Peter J. Mougey, Esq., pmougey@levinlaw.com
        Ellen Relkin, Esq., erelkin@weitzlux.com
        Lynn Sarko, Esq., lsarko@kellerrohrback.com
        Hunter Shkolnik, Esq., Hunter@NapoliLaw.com
        Christopher A. Seeger, Esq., cseeger@seegerweiss.com
        Roland Tellis, Esq., rtellis@baronbudd.com
        James D. Young, Esq., jyoung@forthepeople.com

# EXHIBIT

# E

7003 Fisher Island Drive    Phone (305) 375-0111
Fisher Island, Florida 33109    Fax    (305) 416-2525
E-mail jlf@ferrarolaw.com

# JAMES L. FERRARO

**Education**

*UNIVERSITY OF MIAMI SCHOOL OF LAW, Coral Gables, Florida*

Juris Doctorate:  May 1983

*UNIVERSITY OF MIAMI, Coral Gables, Florida*

Master of Science:  December 1979

*UNIVERSITY OF MIAMI, Coral Gables, Florida*

Bachelor of Business Administration:  December 1978

**Honors**

Guest Lecturer Harvard Law School, 2015

Honoree, Twelve Good Men, 2010

Member, The Fellows of the American Bar Foundation, 2010

Member, Bowman Foster Ashe Society, University of Miami, 2009

Member, Hope Stout Society, 2008

Trustee, The Clinton Foundation, 2004

Ellis Island Medal of Honor Recipient, 2001

Inducted, Knights of Malta, 1999

Knight Grand Officer, Knights of Malta, 2015

National Finalist for Trial Lawyer of the Year, 1997

President's Honor Roll, 1978 – 1979

Beta Alpha Psi, 1977

Dean's List, 1975 – 1978

**Occupation**

Attorney-at-Law, 1983 – Present

Certified Public Accountant, 1980 – Present

**Professional Experience**

*KELLEY & FERRARO, LLP, Cleveland, Ohio*

Partner, 1997 – Present

*THE FERRARO LAW FIRM, P.A., Miami, Florida*

President, 1985 – Present

**FINLEY, KUMBLE, WAGNER, et al.**, Miami, Florida

Attorney, 1984

**KIMBRELL & HAMMAN**, Miami, Florida

Attorney, 1983

**GREENBERG, TRAURIG, et al.**, Miami, Florida

Law Clerk, 1982

**UNIVERSITY OF MIAMI**, Coral Gables, Florida

Accounting Instructor, 1982

**PRICEWATERHOUSE COOPERS LLP f/k/a
COOPERS & LYBRAND**, Miami, Florida

Certified Public Accountant, 1981

**DELOITTE TOUCHE TOHMATSU LIMITED f/k/a
DELOITTE, HASKINS & SELLS**, Miami, Florida

Certified Public Accountant, 1980

**Licenses**

District of Columbia Bar, 2014

U.S. Court of Appeals, Second Circuit, 2010

U.S. District Court, Northern District of Ohio, 2008

U.S. District Court, Northern District of Florida, 2006

Supreme Court of the United States, 2004

Ohio Bar, 2003

New York Bar, 2002

U.S. District Court, Southern District of New York, 2002

U.S. Court of Appeals, Fourth Circuit, 2002

U.S. Court of Appeals, First Circuit, 2000

U.S. Tax Court, 1994

U.S. Court of Appeals, Third Circuit, 1994

NFLPA Contract Advisor, 1985

Massachusetts Bar, 1985

U.S. District Court, Southern District of Florida, 1984

Florida Bar, 1983

Florida CPA, 1980

**Trial History**

Multiple million dollar jury verdicts, totaling in the tens of millions of dollars. Largest compensatory jury award nationally at the time for an asbestosis case. Largest compensatory award in the state of Florida at the time for a mesothelioma case. Additionally, in 1996 received multi-million dollar jury verdict against E.I. DuPont de Nemours and Company in the first birth defect verdict worldwide against a chemical company. This trial was covered in its entirety on Court TV and received worldwide attention. Based on the DuPont verdict, was one of ten national finalists for Trial Lawyer of the Year in July 1997.

**Board Memberships**

The Buoniconti Fund to Cure Paralysis, Inc.

Make-A-Wish Foundation of Southern Florida

NoticeAbility

United Way of Miami-Dade

Trustee, VeritageMiami

Trustee, The Clinton Foundation

**Professional Memberships**

Florida Institute of Certified Public Accountants

Dade County Bar Association

Cleveland Metropolitan Bar Association

Massachusetts Bar Association

New York State Bar Association

American Bar Association

American Association for Justice

Florida Justice Association

The National Trial Lawyers

Million Dollar Advocates Forum

Multi-Million Dollar Advocates Forum

Florida State Ambassador, Public Justice Foundation

**References**

Available Upon Request

# EXHIBIT

# F

JAMES L. FERRARO*
DAVID A. JAGOLINZER**

SCOTT A. KNOTT***
GREGORY S. LYNAM+
JUAN P. BAUTA, II
ERICA L. BRADY++
ALLAN B. KAISER****
MARC P. KUNEN
JANPAUL PORTAL
JAMES L. FERRARO, JR.
JOSE L. BECERRA
GABRIEL S. SAADE*****
DICK M. ORTEGA***
RALPH LONGO
STEPHEN MCCLOSKEY
MATHEW D. GUTIERREZ ***



# THE FERRARO LAW FIRM

*ALSO LICENSED IN MA, DC, NY, OH
**ALSO LICENSED IN MA, DC, NY, IL
*** ALSO LICENSED IN DC
**** ALSO LICENSED IN MO
*****ALSO LICENSED IN MA
+ONLY LICENSED IN CA, IL
++ ONLY LICENSED IN CA, NY, DC

MIAMI • WASHINGTON, D.C.

600 Brickell Avenue
38TH FLOOR
MIAMI, FLORIDA 33131
TELEPHONE (305) 375-0111
TELEFAX (305) 379-6222
TOLL FREE (800) 275-3332
www.ferrarolaw.com

## FIRM BIOGRAPHY

Since 1985, the trial attorneys at The Ferraro Law Firm have been vigorously and successfully fighting for the rights of individuals injured due to the negligence or wrongful acts of others. With offices in Miami, Florida, Washington, D.C., and an affiliated office, Kelley & Ferraro, located in Cleveland, Ohio, as well as a significant presence nationwide, the Firm has earned its place as one of the top five law firms in the United State in the areas of product liability, asbestos and environmental toxic tort lawsuits. Additionally, the Firm's attorneys have consistently and successfully represented victims of serious personal injuries, medical malpractice and defective drugs throughout Florida and the nation.

Under the direction of founder James L. Ferraro, The Ferraro Law Firm concentrates on resolving the most serious injury cases, such as cancers caused by defective drugs, asbestos, work place diseases, catastrophic accidents, medical malpractice, product liability, environmental toxins, automobile defects and wrongful death. The Firm also has experience with over twenty (20) asbestos trusts for which Mr. Ferraro sits on the creditors' committees. The Ferraro Law Firm has the highest rating (AV) from Martindale-Hubbell, the leading rating service for law firms. As a leading plaintiff firm for mass torts and serious injury cases, The Ferraro Law Firm has the resources and expertise to argue and win even the most challenging cases. Through skillfully negotiated settlements and numerous jury trials, The Ferraro Law Firm has secured over $1 billion for its clients in product liability matters.

Aside from product liability, The Ferraro Law Firm has continuously expanded into other fields, some of which involve working alongside the federal government to recover money owed to the U.S. taxpayer. Namely, The Ferraro Law Firm actively pursues Qui Tam and tax whistleblower cases. Nearly a decade ago The Ferraro Law Firm began pursuing tax whistleblower claims via the IRS Whistleblower Program and currently have over $100 billion in active IRS whistleblower submissions, making The Ferraro Law Firm the largest law firm in this field. For your reference, here are our websites: http://www.ferrarolaw.com/, http://www.tax-whistleblower.com/ and http://www.kelley-ferraro.com/.

Clear vision. Comprehensive research. Well-planned, focused legal strategies. Individualized attention. A winning attitude. These are the cornerstones of The Ferraro Law Firm. They are what distinguish the Firm and its attorneys.

## RECENT JURY VERDICTS AND RESULTS

The Ferraro Law Firm has over three decades of experience in mass tort litigation representing thousands of clients in asbestos, tobacco, and pharmaceutical/defective drug cases. We also have a strong track record in the Florida District Courts of Appeal and Florida Supreme Court.  Over the past five years, our firm has won more Florida verdicts of at least seven figures than any other plaintiff mass tort firm.  Some examples include:

- *Font v. Union Carbide Corp.* (Miami-Dade County 2017) - $6,900,000
- *Moore v. John Crane Inc.* (Broward County 2017) - $6,785,000
- *Batchelor v. Bechtel* (Miami-Dade County 2016) - $22,000,000
- *Britt v. Northrup Grumman Systems* (Miami-Dade County 2016) - $9,000,000
- *Taylor v. Georgia-Pacific LLC* (Miami-Dade County 2015) - $17,175,000
- *Monroe v. R.J. Reynolds Tobacco Co.* (Gadsden County 2015) - $11,000,000
- *Hampton v. Pneumo Abex LLC* (Hillsborough County 2014) - $36,984,800
- *Hubbird v. R.J. Reynolds Tobacco Co.* (Miami-Dade County 2014) - $28,000,000
- *CuCulino v. R.J. Reynolds Tobacco Co.* (Miami-Dade County 2014) - $12,500,000
- *Fernandez v. Florida Power & Light Co.* (Miami-Dade County 2014) - $5,670,000
- *Delisle v. Lorillard Tobacco Co.* (Broward County 2013) - $8,000,000

Please visit our website for information relating to additional jury verdicts and results. http://www.ferrarolaw.com/.

## THE FIRM'S ATTORNEYS

### James L. Ferraro, *Shareholder*

Attorney James L. Ferraro was born in Greenwich, Connecticut in 1957. After graduating from Greenwich High School in 1975, Jim moved to South Florida to attend college at the University of Miami. He obtained his Bachelor of Business Administration in 1978, Master of Science in Accounting in 1979, and Juris Doctor in 1983 from the University of Miami School of Law. He became a Certified Public Accountant in 1980.

Following his law school graduation, Jim represented athletes and worked for a civil litigation defense firm. In 1985 he founded The Ferraro Law Firm in Miami, Florida. In 1997, along with his late partner Michael V. Kelley, he founded the law firm of Kelley & Ferraro in Cleveland, Ohio. His law practices are focused in the areas of Mass Tort litigation, Environmental Law, Medical Malpractice, Family Law and Federal Tax Whistleblower claims. The Ferraro Law Firm also has an office in Washington, D.C. The firms now handle nearly 50,000 cases, and are known nationwide for their Mass Tort and Federal Tax Whistleblower practices.

Jim has successfully tried many cases that resulted in multi-million dollar jury verdicts. In 1995, he received the largest compensatory award in the state of Florida for a mesothelioma case. In 1997, he also had the highest compensatory jury verdict ever in the nation for a non-malignant asbestos case. Jim has negotiated settlements in the billions of dollars on behalf of tens of thousands of clients in his years of practice.

In 1996, Jim made American legal history when he successfully tried a case against DuPont in the first case against a chemical company for causing a birth defect. Jim proved that a pregnant

woman's exposure to the fungicide Benlate caused her child to be born without eyes and held DuPont accountable in *Castillo* vs. *E.I. du Pont de Nemours and Company* and *Pine Island Farms*. The trial was broadcast in its entirety on Court TV, garnered worldwide media attention and, ultimately, went to the Florida Supreme Court. Seven years after trial, the Supreme Court of Florida affirmed the trial court verdict. In 1997, because of that case, Jim was named one of ten national finalists for Trial Lawyer of the Year. The *Castillo* case is now featured in Mr. Ferraro's 2017 bestselling book, *Blindsided*.

More recently, in August 2015, Jim tried an asbestos case against Georgia-Pacific with his oldest son, James Ferraro, Jr., resulting in a $17,175,000 verdict. Because of that case, CVN Florida voted Jim 2015 Plaintiff's Attorney of the Year. In November 2015, Jim was a guest lecturer at Harvard Law School for third year law students.

In 2015, Jim also personally argued *Aubin v. Union Carbide Corp.* before the Florida Supreme Court, which rejected the corporate-friendly Third Restatement of Torts and retained the Second Restatement of Torts. *Aubin* has been acclaimed to be the most important Florida product liability case since *West v. Caterpillar* in 1976. Most recently, Jim personally argued *Schwartz v. Honeywell International, Inc.,* before the Ohio Supreme Court, which was another product liability case dealing with sophisticated issues relating to medical expert testimony. Additionally, in 2018, Mr. Ferraro is set to argue the highly publicized product liability case of *Delisle v. Crane Co.* in front of the Florida Supreme Court, in which the Court will decide whether *Daubert* or *Frye* is the applicable standard for science in the courtroom.

He is a member of the Ohio, New York, Florida, Massachusetts and District of Columbia Bars; the Fellows of the American Bar Foundation; the American Bar Association; the Florida Institute of Certified Public Accountants; the American Association for Justice; the Florida Justice Association; The National Trial Lawyers: Top 100 Trial Lawyers; and the Multi-Million Dollar Advocates Forum. He is a Florida State Coordinator for The Public Justice Foundation.

### David A. Jagolinzer, *Shareholder*

David A. Jagolinzer is a partner of The Ferraro Law Firm and specializes in complex cases that involve mesothelioma victims, product liability, toxic torts, catastrophic personal injury and wrongful death. Mr. Jagolinzer has been successful in obtaining millions of dollars for thousands of the Firm's clients, both in trials and pre-trial settlements. Mr. Jagolinzer's victories earned him membership in the Multi-Million Dollar Advocates Forum, Rising Star status by Florida Super Lawyers 2011 through 2014 and in 2008 and 2014 was selected by the DBR as Finalist for Most Effective Lawyer in Product Liability cases. Some of Mr. Jagolinzer's recent and most notable jury verdicts and trial settlements for victims include the following cases:

$24.2 million jury verdict - *Guilder v. Honeywell International, Inc., April, 2008*. Dr. Guilder was a 51 year old Weston doctor suffering from peritoneal mesothelioma. This case is listed in the National Law Journal Top 100 Verdicts of 2008.

Over $14 million settlement - *Plaintiff v. Union Carbide Corporation, et al.*, August, 2008. A 61 year old Drywall contractor suffering from pleural mesothelioma.

In addition to verdicts and pre-trial settlements at the trial court level, Mr. Jagolinzer has also successfully argued and won major victories for the Firm's clients in appellate courts. Most notably in 2008, Mr. Jagolinzer was integral in the firm's successful argument to declare the Florida Asbestos Statute unconstitutional as it improperly limited Florida asbestos victims right to seek

compensation. *Williams v. American Optical Corporation*, 985 So.2d 23 (Fla. 4th *DCA* 2008); *Spiewak, et al., v. American Optical Corporation*, 73 So.3d 120.

Mr. Jagolinzer is admitted to The Florida, Massachusetts, New York and District of Columbia Bars and actively litigates cases in various other states. Mr. Jagolinzer is a member of the American Bar Association, Florida Bar Association, Massachusetts Bar Association, New York Bar Association, American Association for Justice, the National Italian American Bar Association and the Multi-Million Dollar Advocates Forum. Mr. Jagolinzer plays an active role on creditors' committees relating to bankruptcy filings of asbestos companies, serves as an arbitrator for alternative dispute resolution programs, and has fought for victims' rights in front of the Florida Legislature. He is also a frequent lecturer on litigation and trial preparation skills for other attorneys. Mr. Jagolinzer speaks fluent Italian.

**Scott A. Knott, Esq.**

Mr. Knott practices exclusively in the area of tax whistleblower claims. In July of 2007, Mr. Knott co-established the tax group at The Ferraro Law Firm and thereafter filed the first of many tax whistleblower claims that exceed a billion dollars. He has represented many multinational corporations, high-net worth individuals, foreign governments, and underprivileged taxpayers before the Internal Revenue Service and in litigation in the U.S. Tax Court and federal courts, often involving tax deficiencies and refunds in the hundreds of millions of dollars. Domestic issue tax controversies that Mr. Knott has experience with relate to tax accounting and timing issues, like-kind exchanges of property, corporate reorganizations, payroll taxes, estate and gift taxes, life and property & casualty insurance, the Research & Experimentation tax credit, Investment tax credit, custom tax shelters, and issues relating to transactions with tax-indifferent parties. Mr. Knott has extensive experience with international tax issues including transfer pricing, the application of treaties to income of non-resident aliens and foreign corporations, permanent establishments, hybrid entities, withholding issues, and the Foreign Sales Corporation and Extraterritorial Income Exclusion regimes.

Mr. Knott's practice before the Internal Revenue Service includes making submissions to the IRS Whistleblower Office, handling comunications with the IRS through all phases of a whistleblower claim, and ultimately the filing of appeals of IRS award determinations in the U.S. Tax Court. Mr. Knott previously handled tax disputes from the audit level through the Appeals level on behalf of some of the world's largest companies, including representing taxpayers in Competent Authority and alternative dispute resolution procedures such as the Pre-filing Agreement and Advanced Pricing Agreement programs. Mr. Knott also has experience with matters that involve tax evasion, fraud and other tax crimes, and has dealt with the IRS Criminal Investigation division and Department of Justice on these matters.

Mr. Knott was previously a management committee co-chair of the Tax Controversy Subpractice Group of Baker & McKenzie's North American Tax Practice Group, which was ranked as one of the top five tax litigation practices in the United States by Chambers & Partners USA, 2007 edition, and was also a member of the Baker & McKenzie Washington, D.C. office Business Development and Recruiting committees.

For more information about our tax whistleblower practice and Mr. Knott's experience and qualifications, see http://www.tax-whistleblower.com/attorneys/scottknott/.

**Gregory S. Lynam, Esq.**

Gregory Lynam practices exclusively in the area of tax whistleblower claims. Prior to joining The Ferraro Law Firm as a Tax Partner and co-establishing its tax group, Mr. Lynam was Counsel at Miller & Chevalier Chartered, in Washington, D.C., and was an Associate with Baker

& McKenzie LLP in the Chicago and San Diego offices. Both firms' tax controversy groups are ranked as one of the top five tax litigation practices in the United States by Chambers & Partners USA. Mr. Lynam's practice before the Internal Revenue Service includes making submissions to the IRS Whistleblower Office and litigating IRS Whistleblower Office award determinations before the U.S. Tax Court. He has filed more than $82 billion in tax underpayments to the IRS Whistleblower Office to date, representing potential awards for his clients in excess of $19 billion. Mr. Lynam has extensive experience in controversies and informant submissions involving tax fraud, partnership issues, transfer pricing, interest allocation, R&E credit, information reporting, and tax-advantaged transactions (a.k.a. tax shelters).

Mr. Lynam previously practiced in the areas of federal tax controversy and tax appeals, with a focus on international tax matters. He has represented multi-national corporations and high-net-worth individuals at all levels of a tax controversy before the Internal Revenue Service and in litigation with matters often involving deficiencies and refunds in the hundreds of millions to billions of dollars. Mr. Lynam's pro bono practice has focused primarily on criminal defense including a grant of clemency in a post-conviction death penalty case and a not-guilty verdict in a juvenile murder trial. He has won numerous awards for his pro bono work.

Mr. Lynam is a 2006-2007 John S. Nolan Fellow, awarded by the American Bar Association Section of Taxation. He speaks frequently at the American Bar Association on Tax Whistleblower, TEFRA partnership litigation, managing tax controversies, and new technologies in the courtroom. He is the current chair of the TEFRA subcommittee of the ABA Section of Taxation, Court Procedure & Practice committee and the immediate past chair of the Technology in the Courtroom subcommittee.

**Juan P. Bauta, II, Esq.**

Juan P. Bauta, II is a Board Certified Trial Lawyer who practices in the areas of asbestos litigation, products liability, toxic torts, construction defect, wrongful death, class actions and complex litigation. Mr. Bauta has obtained numerous multi-million dollar verdicts and has successfully argued numerous appellate cases. Mr. Bauta has also argued before the Federal Panel on Multi-district Litigation. Mr. Bauta has been admitted to and has argued before the United States Court of Appeals for the Eleventh, Fifth and Third Circuits, as well as the United States District Courts for the Southern and Middle Districts of Florida.

Mr. Bauta is a member of the Florida Bar and is a Board Certified Civil Trial Lawyer. Mr. Bauta graduated from Florida State College of Law in 1990 and was the editor-in-chief of the Journal of Land Use and Environmental Law. The Daily Business Review selected Mr. Bauta as the Most Effective Lawyer in both 2010 and 2011. Mr. Bauta is fluent in Spanish.

Mr. Bauta has argued and tried cases to verdict in both state and federal courts. Mr. Bauta has tried over twenty-five cases to verdict. Mr. Bauta has several jury verdicts in excess of $10,000,000.00. Mr. Bauta's highest jury verdict to date in a single personal injury case was over $20,000,000.00. Mr. Bauta has litigated six class actions involving employment discrimination, construction defects and vehicle design defects. Mr. Bauta represents both individuals and corporations exclusively on the plaintiff's side. Finally, Mr. Bauta has argued numerous cases before the Florida District Courts of Appeal and has over fourteen reported decisions.

In addition to his numerous multi-million dollar jury verdicts, Mr. Bauta has successfully negotiated settlements in the tens of millions of dollars for his clients. These non-class action settlements range from a low of $1,000,000.00 to a high of $29,000,000.00.

**Erica L. Brady, Esq.**

Erica Brady practices exclusively in the area of tax whistleblower claims. Prior to joining the Ferraro Law Firm, Ms. Brady completed her Masters of Laws in Taxation at Georgetown University Law Center, where she focused primarily on international corporate taxation. Ms. Brady's practice before the Internal Revenue Service includes making submissions to the IRS Whistleblower Office. Ms. Brady regularly handles matters involving consolidated returns; income tax accounting and timing; partnership and pass-through taxation issues; employment taxes; the taxation of financial products, financial derivatives, and debt instruments; insurance company taxation; and the taxation of intellectual property. Ms. Brady also has extensive experience with international issues, such as transfer pricing, the taxation of foreign currency transactions, and tax issues related to offshore entities, including captive insurance companies.

Ms. Brady spoke at the ABA Section of Taxation 2010 May Meeting and the 2011 Midyear Meeting about the representation of whistleblowers in front of the IRS. Additionally, the ABA Section of Taxation's NewsQuarterly published Ms. Brady's article, "Are Criminal Fines 'Collected Proceeds'?" in the summer 2011 issue. Ms. Brady also had an article published in the February 2012 edition of Taxes – The Tax Magazine, titled Does Tax Crime Pay (Whistleblowers)?

**Allan B. Kaiser, Esq.**

Allan B. Kaiser has been litigating criminal and civil cases since graduating from Tulane University Law School in 1982. As an Assistant Prosecuting Attorney in St. Louis Missouri, Mr. Kaiser prosecuted major felony cases. Thereafter, for sixteen years as an Assistant United States Attorney for the Southern District of Florida, Mr. Kaiser prosecuted some of the more high profile corruption and fraud cases in the Southern District of Florida. Upon leaving public service for private practice, in 2006, Mr. Kaiser maintained both a criminal defense and civil litigation practice, which included representing individuals charged with health care-related fraud, mortgage fraud, insurance fraud, organized crime and drug and money laundering offenses as well as representing clients in employment related civil matters, including retaliatory termination and race and age discrimination cases.

Since joining the Ferraro Law Firm in 2010, Mr. Kaiser's practice has been devoted to civil litigation, in State and Federal Courts, where he focuses primarily on tobacco litigation, along with medical malpractice and products liability cases. Mr. Kaiser has won several multi-million dollar verdicts for Plaintiffs since 2010, including two verdicts in 2014 against the major tobacco companies totaling 40.5 million dollars. As a result of those verdicts, Mr. Kaiser was a finalist for the 2014 Courtroom View Network Engle awards, honoring excellence in Florida Tobacco litigation. In addition the South Florida Daily Business Review named Mr. Kaiser 2014 Most Effective Lawyer in the area of Products Liability.

Mr. Kaiser has tried over 200 criminal and civil jury trials as a Prosecutor and while in private practice. In addition, Mr. Kaiser has written numerous articles on a wide range of topics in both criminal and civil law.

Mr. Kaiser is a member of the Florida and Missouri Bar as well as the Dade County Bar Association and the Federal Bar of the Southern District of Florida.

**Marc P. Kunen, Esq.**

Marc P. Kunen is an associate with The Ferraro Law Firm and focuses his practice on complex civil litigation, product liability, asbestos litigation, toxic torts, severe personal injury and wrongful death.

Mr. Kunen graduated from the University of Miami School of Law, magna cum laude, and has been admitted to practice law in the State of Florida. While at the University of Miami, he served as a law clerk with the Ferraro Law Firm for two years, was a member of the Charles C. Papy, Jr. Moot Court Board, interned with Florida Legal Services as a member of the Community Economic Development and Design Clinic, was awarded the Priscilla Jewett Schneller Scholarship, and was the recipient of two Dean's Achievement Awards. Mr. Kunen also earned his Bachelor of Science in Management while majoring in Legal Studies in Business at Tulane University in New Orleans, Louisiana. Since joining The Ferraro Law Firm, Mr. Kunen has actively participated in complex civil litigation against large corporations and manufacturers of toxic products.

**Janpaul Portal, Esq.**

Janpaul Portal specializes in the representation of injured victims and consumers in catastrophic personal injury, wrongful death, medical malpractice, environmental toxic torts, defective drugs and product liability cases in state and federal courts throughout the United States.

Prior to joining The Ferraro Law Firm, Mr. Portal dedicated his practice to the representation of plaintiffs in catastrophic personal injury, medical malpractice and complex commercial litigation matters in state and federal courts. He has successfully litigated medical malpractice, wrongful death, maritime negligence, product liability and general business tort disputes. He began his career at a prominent law firm in Boca Raton, Florida where he represented plaintiffs in medical malpractice and nursing home negligence cases. Mr. Portal also represented business owners in complex commercial disputes. In 2003, he joined a prestigious personal injury law firm in Downtown Miami, where he honed his trial skills while representing plaintiffs in complex medical malpractice cases. Mr. Portal was a founding member of Portal & Associates in Coral Gables, Florida, where he dedicated his practice to the representation of clients in civil, immigration and criminal litigation matters. In 2008, Mr. Portal joined a premier civil trial firm with offices on Brickell Avenue, where he practiced in the areas of medical malpractice, catastrophic personal injury and negligent security.

Mr. Portal is a native of Miami, Florida. He received his B.S. in Microbiology and Immunology in 1998 at the University of Miami. He earned his Juris Doctorate, cum laude, in 2001 from the University of Miami School of Law. He was the recipient of the C.A.L.I. Excellence Award, "Medical Malpractice," 2000.

Mr. Portal has been a member of the Florida Bar since 2002. He is also admitted to practice in the United States District Court for the Northern, Middle and Southern Districts of Florida, and the United States Court of Appeals for the Eleventh Circuit.

Mr. Portal was recently appointed as the President of the Miami Dade Trial Lawyers Association for the 2017 – 2018 term. He has been an active member of the MDTLA since 2003 and was elected to the Board of Directors in 2010. He is also an active member of the Florida Justice Association and Cuban American Bar Association. In addition, he is also a member of the American Association for Justice, where he served on the NLD Board of Governors for Florida from 2005-2006.

Mr. Portal has been named as a "Top Up and Comer" by the South Florida Legal Guide and a "Rising Star" by Florida Super Lawyers in 2009, 2010, 2011, 2012, 2013, 2014, and 2015. Mr. Portal was named as a "Top Lawyer" in 2016 and 2017.

**James L. Ferraro, Jr., Esq.**

James L. Ferraro, Jr. is an associate with the Ferraro Law Firm and focuses his practice on complex civil litigation, product liability, asbestos litigation, toxic torts, severe personal injury and wrongful death.

Mr. Ferraro graduated from the University of Miami School of Law and has been admitted to practice law in the State of Florida. During his tenure at the University of Miami, he served as a law clerk for United States District Court Judge Robert N. Scola, Jr., was a law clerk for Grossman and Roth, P.A., and was a recipient of a Dean's Achievement Award. Mr. Ferraro also earned his Bachelor of Business Administration while double majoring in finance and managing organizations at Emory University's Goizueta Business School. Since joining The Ferraro Law Firm, Mr. Ferraro has actively participated in complex civil litigation against large corporations and manufacturers of toxic products.

**Jose L. Becerra, Esq.**

Jose L. Becerra is a Florida trial attorney who handles a broad range of personal injury cases including product liability, wrongful death, and mesothelioma.  Mr. Becerra also handles family law cases including dissolutions of marriage, child custody and support, and post-judgement matrimonial matters.  In July 2017, in the matter of *Moore v. John Crane, Inc*., Circuit Court, Broward County, Florida (Case No. 13-011729), he assisted in obtaining a $6,785,000 verdict in favor of his client.

In law school, Mr. Becerra was a judicial intern for The Honorable Laurel M. Isicoff of the U.S. Bankruptcy Court for the Southern District of Florida and The Honorable Edwin G. Torres of the United States District Court for the Southern District of Florida.  He also served as the interschool vice president for the Charles C. Papy Jr. Moot Court Board and successfully competed in numerous appellate advocacy competitions.  For example, he was named "Best Oral Advocate" at the C. Clyde Atkins 2011 Fall Moot Court Competition, "Best Oral Advocate Runner Up" at the 2013 Cristol Kahn Paskay Cup, and "Outstanding Oral Advocate" at the 21st Annual Duberstein Bankruptcy Moot Court Competition.

Upon graduation, Mr. Becerra was selected to The Order of Barristers – a United States honor organization that encourages excellence in writing briefs and oral advocacy.  Mr. Becerra was also a member of the International and Comparative Law Review and the recipient of the Kapila Family Foundation Scholarship, the Louis Phillips Scholarship, and the Dean's Certificate of Academic Achievement Award in Commercial Law and Tort Law & Policy Seminar.

**Gabriel S. Saade, Esq.**

Gabriel S. Saade practices in the areas of Product Liability, Environmental Toxic Torts, Mesothelioma & Asbestos, Wrongful Death, Catastrophic Personal Injury, and Defective Drugs. Mr. Saade is admitted to the practice of law in Florida. Mr. Saade earned his law degree from the University Of Miami School Of Law. He obtained a Bachelor of Science with a concentration in

Political Science from Duke University. Mr. Saade also obtained a certificate in Markets and Management from Duke University.

During law school, Mr. Saade clerked for The Honorable Leslie B. Rothenberg, where he handled research and production of legal memoranda on a panoply of issues before Judge Rothenberg. Mr. Saade also served as a Certified Legal Intern at the Miami-Dade State Attorney's Office. In addition, Mr. Saade clerked at The Ferraro Law Firm throughout law school.

**Dick Maykel Ortega, Esq.**

Dick Maykel Ortega is a trial attorney at The Ferraro Law Firm representing victims in cases involving product liability, wrongful death, catastrophic injuries, asbestos-related diseases, and toxic torts. Prior to joining The Ferraro Law Firm, Mr. Ortega worked in the Washington, D.C. office of a large international law firm counseling international and domestic entities in complex merger and acquisition transactions, finance transactions, market entry strategies, product liability litigation, antitrust litigation, and FCPA matters.

During law school, Mr. Ortega held several positions that prepared him to represent our clients in complex matters. He interned with the Securities and Exchange Commission assisting counsel with the investigation and litigation of industry and issuer practices. He also interned with the FIU Office of the General Counsel developing litigation strategies and regulatory compliance parameters, and a boutique litigation firm working closely with clients to build their case and negotiate advantageous settlements.

Mr. Ortega earned his law degree, *magna cum laude*, from Florida International University College of Law and graduated as the Salutatorian of his class. In addition, Mr. Ortega earned book awards in several courses including International Commercial Arbitration, Investor Advocacy Clinic, Legal Skills and Values III, and Contracts. He successfully competed in prestigious appellate advocacy and arbitration competitions, and received the C.A.M.P. 4 Justice Human Rights Scholarship, Dean's Merit Scholarship, and Broward Hispanic Bar Association Scholarship.

Mr. Ortega co-authored the following publications: "How Far Can the CFPB Cast Its Net for Abusiveness Claims?," *Corporate Counsel* (July 2015), and "CFPB Enforcement of the Abusive Standard," *Corporate Counsel* (July 2015).

**Ralph R. Longo, Esq.**

Ralph R. Longo IV is an attorney in Miami, Florida working as an associate with the team at The Ferraro Law Firm.

Mr. Longo attended the University of Connecticut, where he graduated with a B.S. in Finance from the UConn School of Business. While at the University of Connecticut, Mr. Longo was a New England Scholar Award winner, as well as a Greenwich Scholarship award recipient. Further, during his undergraduate studies, Mr. Longo honed his research and writing skills while working as a Featured Columnist for a major online sports publication.

After completing his undergraduate studies, Mr. Longo attended the University of Miami School of Law, where he was a Dean's Merit Scholarship award winner. Mr. Longo also successfully completed the University of Miami Litigation Skills Program. Further, Mr. Longo

won the 2014 Collegiate Boxing Light Heavyweight National Championship while completing his legal studies.

Throughout his tenure in law school, Mr. Longo spent time as a law clerk with The Ferraro Law Firm. He was admitted to the Florida Bar in 2016 and is a member of the American Bar Association, as well as the Dade County Bar Association.

**Stephen McCloskey, Jr., Esq.**

Stephen McCloskey Jr. is an attorney at The Ferraro Law Firm who focuses his practice on tax law. Mr. McCloskey joined The Ferraro Law Firm's tax group in 2013 and brings a wide breadth of tax knowledge and experience to the firm's practice. Mr. McCloskey provides clients with sophisticated tax analysis and protection to clients seeking tax whistleblower awards. Mr. McCloskey has represented clients before the IRS, the Department of Justice, and the U.S. Tax Court.

Prior to joining The Ferraro Law Firm, Mr. McCloskey worked for one of the world's largest law firms, as well as one of the Big Four accounting firms. During this time, Mr. McCloskey focused on inbound and outbound international tax planning for corporate multinationals and income tax compliance at both the State and Federal levels. Mr. McCloskey's experience includes advising clients on corporate reorganizations, debt restructurings, and U.S. tax treaty analysis.

Mr. McCloskey earned his law degree, cum laude, from the University of Florida, Levin College of Law where he earned the book award for Mergers & Acquisitions. Mr. McCloskey then went on to earn his Master of Laws (LL.M.) with a certificate in International Taxation from Georgetown University Law Center. Mr. McCloskey is licensed to practice law in Florida, the U.S. Court of Federal Claims, and the United States Tax Court.

**Matthew D. Gutierrez, Esq.**

Mathew D. Gutierrez is The Ferraro Law Firm's appellate practitioner. In this role, Mr. Gutierrez is responsible for every aspect of the firm's appellate practice, which spans all levels of Florida's state and federal courts. He also provides the firm's trial lawyers with litigation and brief-writing support and advises them on preservation of error issues.

Prior to joining The Ferraro Law Firm, Mr. Gutierrez spent more than four years as a litigator at one of the largest multi-national defense firms in the country (Am Law 50). In that capacity, Mr. Gutierrez represented clients in high-stakes corporate litigation, with a particular emphasis on appeals, contractual and partnership disputes, federal securities law claims, and First Amendment litigation. His clients included Fortune 50 corporations, financial institutions, major political parties and candidates, hospital systems, brokerage firms, developers, and manufacturers. Mr. Gutierrez began his post-law school career as a judicial law clerk to Judge Leslie B. Rothenberg at the Florida Third District Court of Appeal. As an appellate law clerk, Mr. Gutierrez researched and analyzed contested legal issues, presented written and oral case recommendations to judges, and drafted legal memoranda and proposed opinions for publication. During his clerkship, Mr. Gutierrez also served as Moot Court Coach at the University of Miami School of Law.

Mr. Gutierrez earned his law degree from Emory University School of Law (J.D., with honors, 2011), where he was a research assistant to Dean Robert A. Schapiro. During law school,

he also served as an intern at the United States District Court, the United States Attorney's Office, the Fulton County District Attorney's Office, and the Fulton County Superior Court. Mr. Gutierrez received his undergraduate degree in English literature from the University of Miami (B.A., 2008). Mr. Gutierrez is admitted to practice in Florida and the District of Columbia.