# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*County of Monroe, Michigan v. Purdue Pharma, L.P., et al.*<br>Case No. 18-op-45158 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

# MEMORANDUM IN SUPPORT OF
# DISTRIBUTORS' MOTION TO DISMISS
# <u>SECOND AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I. THE MICHIGAN PRODUCT LIABILITY ACT BARS THE COUNTY'S COMMON LAW CLAIMS. ................................................................................ 2

    A. The County's Common Law Claims Against Distributors Are "Product Liability Actions" Under the MPLA. ....................................... 2

    B. Distributors Have an Absolute Defense Against the County's Common Law Claims Because They Are Sellers of FDA-Approved Drugs. ....................... 4

II. THE RICO CLAIMS SHOULD BE DISMISSED. ............................................... 6

III. THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED. ...................................... 6

    A. The County Cannot Bring a Product Liability Claim in the Guise of a Public Nuisance Claim. ............................................................ 6

    B. The County Has Not Alleged Interference with a Public Right. ............. 8

    C. The County Has Not Alleged That Distributors Controlled the Medications When Those Medications Caused Injury. ........................... 8

IV. THE NEGLIGENCE CLAIM SHOULD BE DISMISSED. ............................................. 9

    A. The Complaint Fails Adequately To Allege an Enforceable Duty Owed by Distributors to the County. ................................................ 9

        1. No private right of action. ............................................................. 9

        2. No negligence *per se*. ................................................................. 11

        3. No common law duty to monitor and report "suspicious" pharmacy orders. ........................................................... 11

        4. No duty owed to *the County*. ...................................................... 12

    B. Michigan's "Present Physical Injury" Rule Requires Dismissal of the Negligence Claim. ....................................................... 13

V. THE FREE PUBLIC SERVICES DOCTRINE BARS THE COUNTY'S CLAIMS. ..... 14

VI. THE CONSUMER PROTECTION ACT CLAIM SHOULD BE DISMISSED. ............ 15

    A. The MCPA Claim Fails Because it Concerns Transactions Authorized By Law. ................................................................... 15

    B. The MCPA Claim is Not Pled with the Required Specificity. ............ 18

C.      The County's MCPA Claim Fails to Allege a Misrepresentation by Distributors Material to Any Transaction. ............................................................. 19

D.      The County's MPCA Claim Fails to Allege a Consumer Transaction. ................ 20

VII.    THE FRAUD CLAIM SHOULD BE DISMISSED. ......................................................... 20

A.      The County Fails to State a Claim for Misrepresentation..................................... 20

B.      The County Fails To State a Claim for Silent Fraud. ........................................... 22

C.      The County Has Not Sufficiently Alleged Reasonable Reliance. ........................ 23

VIII.   THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. ........................... 24

IX.     THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ............................... 25

CONCLUSION.................................................................................................................................. 26

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. Del Monte Corp.*,
  No. 09-cv-12303, 2011 WL 87286 (E.D. Mich. Jan. 11, 2011) ...............................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................18

*Baumkel v. Scotts Miracle-Gro Co.*,
  No. 08-cv-14137, 2009 WL 3190477 (E.D. Mich. Sept. 28, 2009) ......................................16

*Baye v. HBI Branded Apparel Enters.*,
  No. 12-cv-12869, 2013 WL 6546815 (E.D. Mich. Dec. 13, 2013) ..........................................2

*Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*,
  677 F. App'x 979 (6th Cir. 2017) ....................................................................................21, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................................18

*Brintley v. St. Mary Mercy Hosp.*,
  904 F. Supp. 2d 699 (E.D. Mich. 2012), *aff'd*, 545 F. App'x 484 (6th Cir. 2013)................26

*Buckman Co. v. Pls.' Legal Comm.*,
  531 U.S. 341, 350 (2001)........................................................................................................5

*Burger v. Allstate Ins. Co.*,
  667 F. Supp. 2d 738 (E.D. Mich. 2009)...............................................................................21

*Campbell v. Upjohn Co.*,
  498 F. Supp. 722 (W.D. Mich. 1980) ...................................................................................22

*Cotton v. Johnson & Johnson*,
  2016 WL 9776137 (E.D. Mich. Dec. 1, 2016), *aff'd*, 2017 WL 4857552 (6th
  Cir. Sept. 22, 2017)................................................................................................................6

*Dayco Corp. v. Firestone Tire & Rubber Co.*,
  386 F. Supp. 546 (N.D. Ohio 1974), *aff'd*, 523 F.2d 389 (6th Cir. 1975) .............................22

*Etts v. Deutsche Bank Nat'l Trust Co.*,
  126 F. Supp. 3d 889 (E.D. Mich. 2015).................................................................................21

*Feliciano v. Gen. Motors LLC*,
  No. 14-cv-06374, 2016 WL 9344120 (S.D.N.Y. Mar. 31, 2016)...........................................16

*Garcia v. Wyeth-Ayerst Labs.*,
  265 F. Supp. 2d 825 (E.D. Mich. May 19, 2003) ....................................................................5

*Garcia v. Wyeth-Ayerst Labs.*,
  385 F.3d 961 (6th Cir. 2004) ..................................................................................................5

*Grain v. Trinity Health*,
    431 F. App'x 434 (6th Cir. 2011) ..........................................................10

*Griffus v. Novartis Pharm. Corp.*,
    No. 06-cv-10891, 2006 WL 2583129 (E.D. Mich. Sept. 6, 2006) ...........................................3

*Hanover Exch. v. Metro Equity Grp. LLC*,
    No. 2:08-cv-14897, 2009 WL 2143866 (E.D. Mich. July 14, 2009)......................................26

*Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999)...................................................................4

*MacDonald v. Thomas M. Cooley Law Sch.*,
    724 F.3d 654 (6th Cir. 2013) ..........................................................20, 23

*Marsh v. Genentech, Inc.*,
    693 F.3d 546 (6th Cir. 2012) ..........................................................5

*McCray v. Jefferson Chevrolet Co*,
    No. 17-cv-12058, 2018 WL 1964674 (E.D. Mich. Apr. 26, 2018) ..........................................16

*McLiechy v. Bristol W. Ins. Co.*,
    474 F.3d 897 (6th Cir. 2007) ..........................................................10

*Means v. U.S. Conference of Catholic Bishops*,
    836 F.3d 643 (6th Cir. 2016) ..........................................................13

*Meyer v. Citimortgage, Inc.*,
    No. 11-cv-13432, 2012 WL 511995 (E.D. Mich. Feb. 16, 2012)..........................................18

*Molosky v. Wash. Mut., Inc.*,
    664 F.3d 109 (6th Cir. 2011) ..........................................................16

*Muneio v. Fed. Nat'l Mortg. Ass'n*,
    No. 09-cv-12973, 2010 WL 5146328 (E.D. Mich. Dec. 13, 2010) ..........................................18

*Olden v. LaFarge Corp.*,
    203 F.R.D. 254 (E.D. Mich. 2001) ..........................................................8

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) ..........................................................21, 22

*Roller v. Litton Loan Servicing*,
    No. 10-cv-13847, 2011 WL 2490597 (E.D. Mich. June 21, 2011) ..........................................25

*Ruffin-Steinback v. dePasse*,
    267 F.3d 457 (6th Cir. 2001) ..........................................................23, 24

*Storey v. Attends Healthcare Prods. Inc.*,
    No. 5-cv-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016) ..........................................24

*Terry Barr Sales Agency, Inc. v. All-Lock Co.*,
    96 F.3d 174 (6th Cir. 1996) .................................................................................25

*White v. SmithKline Beecham Corp.*,
    538 F. Supp. 2d 1023 (W.D. Mich. 2008) ..............................................................3

*Wiggins v. Argent Mortg. Co., LLC*,
    945 F. Supp. 2d 817 (E.D. Mich. 2013), *aff'd*, No. 13-1797 (6th. Cir. Mar. 31, 2014) ..........25

## STATE CASES

*Adkins v. Mong*,
    425 N.W.2d 151 (Mich. Ct. App. 1988) .................................................................11

*Adkins v. Thomas Solvent Co.*,
    487 N.W.2d 715 (Mich. 1992) .................................................................................8

*Attorney Gen. v. Merck Sharp & Dohme Corp.*,
    807 N.W.2d 343 (Mich. Ct. App. 2011) ...........................................................3, 4, 6

*Beard v. State*,
    308 N.W.2d 185 (Mich. Ct. App. 1981) ..................................................................8

*Brandon Twp. v. Jerome Builders, Inc.*,
    263 N.W.2d 326 (Mich. Ct. App. 1977) .................................................................14

*Buczkowski v. McKay*,
    490 N.W.2d 330 (Mich. 1992) ...............................................................................13

*In re Certified Question from Fourteenth Dist. Court of Appeals of Tex.*,
    740 N.W.2d 206 (Mich. 2007) ..........................................................................12, 13

*City of Chicago v. Beretta USA Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ...................................................................................14

*Detroit Bd. of Educ. v. Celotex Corp.*,
    493 N.W.2d 513 (Mich. Ct. App. 1992) ......................................................6, 7, 8, 9

*DiPiero v. Better Bus. Bureau of W. Mich., Inc.*,
    No. 316308, 2014 WL 6679406 (Mich. Ct. App. Nov. 25, 2014).........................19

*Douglas v. Edgewater Park Co.*,
    119 N.W.2d 567 (Mich. 1963) ...............................................................................11

*Duronio v. Merck & Co., Inc.*,
    2005 WL 5303676 (Mich. Cir. Ct. Nov. 22, 2005), *aff'd*, 2006 WL 1628516 ........6

*Duronio v. Merck & Co.*,
    No. 267003, 2006 WL 1628516 (Mich. Ct. App. June 13, 2006) ........................3, 5

*Gelman Scis. Inc. v. Dow Chem. Co.*,
    508 N.W.2d 142 (Mich. Ct. App. 1993) ...............................................................8, 9

*Graves v. Warner Bros.*,
    656 N.W.2d 195 (Mich. Ct. App. 2002) ........................................................................13

*Henry v. Dow Chem. Co.*,
    701 N.W.2d 684 (Mich. 2005)............................................................................12, 13, 14

*Hi-Way Motor Co. v. Int'l Harvester Co.*,
    247 N.W.2d 813 (Mich. 1976)....................................................................................21

*Hollowell v. Career Decisions, Inc.*,
    298 N.W.2d 915 (Mich. 1980)....................................................................................21

*Jimenez v. Ford Motor Credit Co.*,
    No. 322909, 2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015) ...........................16

*Kintigh v. Abbott Pharm.*,
    503 N.W.2d 657 (Mich. Ct. App. 1993) ....................................................................11

*Klanseck v. Anderson Sales & Service, Inc.*,
    393 N.W.2d 356 (Mich. 1986 .....................................................................................11

*Kolk v. Household Fin. Corp. III*,
    No. 337178, 2018 WL 521903 (Mich. Ct. App. Jan. 23, 2018) ...............................16

*Kraft v. Detroit Entm't, L.L.C.*,
    683 N.W.2d 200 (Mich. Ct. App. 2004) ....................................................................16

*Laura v. DaimlerChrysler Corp.*,
    711 N.W.2d 792 (Mich. Ct. App. 2006) ....................................................................19

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007)..............................................................................................7

*Liss v. Lewiston-Richards, Inc.*,
    732 N.W.2d 514, 518 (Mich. 2007).....................................................................16, 17

*Lowery v. Dep't of Corr.*,
    380 N.W.2d 99 (Mich. Ct. App. 1985) ......................................................................22

*M & D Inc. v. McConkey*,
    585 N.W.2d 33 (Mich. Ct. App. 1998) ...............................................................22, 23

*McClements v. Ford Motor Co.*,
    702 N.W.2d 166 (Mich. 2005)....................................................................................10

*Monroe Beverage Co. v. Stroh Brewery Co.*,
    568 N.W.2d 687 (Mich. Ct. App. 1997) ....................................................................10

*Newton v. West*,
    686 N.W.2d 491 (Mich. Ct. App. 2004) ....................................................................16

*Novak v. Nationwide Mut. Ins. Co.*,
599 N.W.2d 546 (Mich. 1999)................................................................24

*Paul v. Glendale Neurological Assocs.*,
848 N.W.2d 400, 406 (Mich. Ct. App. 2014).......................................20

*Pavia v. Ellis-Don Michigan, Inc.*,
No. 224327, 2001 WL 1511837 (Mich. Ct. App. Nov. 27, 2001)..........11

*Schaendorf v. Consumers Energy Co.*,
739 N.W.2d 402 (Mich. Ct. App. 2007)..................................................6

*Schultz v. Consumers Power Co.*,
506 N.W.2d 175 (Mich. 1993)................................................................13

*Simko v. Blake*,
532 N.W.2d 842 (Mich. 1995)................................................................12

*Slobin v. Henry Ford Health Care*,
666 N.W.2d 632, 634 (Mich. 2003)........................................................20

*Smith v. Glenmark Generics, Inc.*,
USA, No. 315898, 2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014)...............24

*Smith v. Global Life Ins. Co.*,
597 N.W.2d 28 (Mich. 1999)..................................................................16

*Stebbins v. Concord Wrigley Drugs, Inc.*,
416 N.W.2d 381 (Mich. Ct. App. 1987).................................................12

*Taylor v. Smithkline Beecham Corp.*,
658 N.W.2d 127 (Mich. 2003)..................................................................5

*Ursery v. Option One Mortg. Corp.*,
No. 271560, 2007 WL 2192657 (Mich. Ct. App. July 31, 2007)............16

*Wilson v. Citizens Ins. Co. of Am.*,
No. 1:13-cv-470, 2015 WL 631978 (M.D.N.C. Feb. 13, 2015).............19

## OTHER AUTHORITIES

21 C.F.R. § 1301.11 ..............................................................................17

21 C.F.R. § 1301.74(b) .........................................................................9, 10

Federal Rule of Civil Procedure 9(b)...............................................20, 21, 22

Mich. Comp. Laws §§ 333.7101 to 333.7545.......................................10

Mich. Comp. Laws § 333.7303 (1) .......................................................17

Mich. Comp. Laws § 333.7501................................................................10

Mich. Comp. Laws § 333.7502 ................................................................................................10

Mich. Comp. Laws § 333.7507 ................................................................................................10

Mich. Comp. Laws § 333.7511 ................................................................................................10

Mich. Comp. Laws § 333.7533 ................................................................................................10

Mich. Comp. Laws §§ 333.7501 to 333.7545 .........................................................................10

Mich. Comp. Laws § 445.903 ............................................................................................19, 20

Mich. Comp. Laws § 445.904 ......................................................................................15, 17, 18

Mich. Comp. Laws § 600.2945(h) .......................................................................................2, 3, 4

Mich. Comp. Laws § 600.2945(i) ...............................................................................................2

Mich. Comp. Laws §§ 600.2945 to 600.2949b ..........................................................................2

Mich. Comp. Laws § 600.2946(5) ..............................................................................................5

Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively, "Distributors") move to dismiss the Second Amended Complaint ("Complaint") filed May 30, 2018, and submit the following brief in support of the motion.

## PRELIMINARY STATEMENT

Plaintiff Monroe County ("the County") seeks to assert quintessential products liability claims:  the Complaint alleges that County residents died or suffered bodily injury as a result of their use of a pharmaceutical product, and seeks to recover money damages that purportedly resulted from those injuries and deaths.  Those claims fail at the outset because the Michigan Legislature—through the Michigan Products Liability Act—has granted an ***absolute defense*** to the *sellers* of FDA-approved drugs, such as Distributors.  For this fundamental reason, as well as the additional reasons explained below, the County's common law claims all fail as a matter of Michigan law.

The County fares no better with its statutory claims.  The RICO claim fails for substantially the reasons explained in Distributors' *Summit County* brief.  And the consumer protection claim fails both because it is not pled with the requisite specificity and because it concerns transactions authorized by law.

## BACKGROUND

The federal regulatory backdrop against which this action is set is described in detail in Distributors' *Summit County* brief.  Monroe County's allegations largely track the allegations made by Summit County, and Distributors therefore incorporate herein by reference herein the Background section of their *Summit County* brief.  *See* Distributors' Mem. In Supp. of Mot. to Dismiss Summit Cnty. Second Am. Compl., Dkt. 491-1 (May 25, 2018) ("Summit Br.").[1]

---

[1]   Unless otherwise noted, this Memorandum adds all emphasis in quotations and omits citations and internal quotation marks.  Distributors also hereby adopt, as if set forth herein, the arguments made in

**ARGUMENT**

**I.  THE MICHIGAN PRODUCT LIABILITY ACT BARS THE COUNTY'S COMMON LAW CLAIMS.**

The Michigan Product Liability Act ("MPLA") provides Distributors with an absolute defense to all of the County's common law claims.[2]  Under the MPLA, a seller of an FDA-approved drug cannot be held liable for the harms resulting from the sale of those drugs. Because the County's common law claims all attempt to impose liability on Distributors for harms resulting from their sales of FDA-approved opioid medications, they should be dismissed.

**A.  The County's Common Law Claims Against Distributors Are "Product Liability Actions" Under the MPLA.**

The MPLA applies to "product liability actions," which it defines broadly to include any "action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product."  Mich. Comp. Laws § 600.2945(h).  Injury or damage results from "production" if it results from "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, *selling*, advertising, packaging, or labeling."  *Id.* § 600.2945(i).

The MPLA applies to all legal and equitable claims for damages resulting from the sale of products, regardless of whether they are labeled "product-liability" claims.  Courts are "not bound by a party's choice of labels," but rather must "determine the gravamen of a party's claim

support of the separate motions to dismiss filed today in this case by the manufacturing defendants and the retail pharmacy defendants.

[2]  Michigan's Revised Judicature Act contains a Chapter titled "Provisions Concerning Specific Actions," several of which substantially circumscribe the product liability claims that can be brought under Michigan law.  Mich. Comp. Laws §§ 600.2945 to 600.2949b.  Although not officially titled the "Michigan Product Liability Act," Courts routinely refer to these statutes as such.  *See, e.g.*, *Baye v. HBI Branded Apparel Enters.*, No. 12-cv-12869, 2013 WL 6546815, at *2 (E.D. Mich. Dec. 13, 2013) ("[P]laintiff's claims in this case are governed by the Michigan Product Liability Act ("MPLA"), Mich. Comp. Laws Ann. § 600.2945 *et seq.*").

by reviewing the entire claim." *Attorney Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343, 347 (Mich. Ct. App. 2011).[3]

*Duronio v. Merck & Co.,* No. 267003, 2006 WL 1628516 (Mich. Ct. App. June 13, 2006) is instructive. There, the plaintiff sought a refund from Merck of the purchase cost of Vioxx on the ground that Merck allegedly misrepresented the risks and benefits of its drug product. *Id.* at *1. While the plaintiff argued that he did not bring a product liability claim within the meaning of the MPLA, the appellate court disagreed, explaining that the pecuniary harm asserted by the plaintiff constituted "damage to property" caused by the product. *Id.* at *4 ("The fact that the alleged injury in this case is in the form of monetary loss does not preclude application of MCL 600.2945(h). Money itself is a form of property, and a consumer's expenditure of money for overvalued goods can constitute an injury to property." (citation omitted)).

Similarly, in *Attorney General v. Merck Sharp & Dohme Corp.*, the State of Michigan sought to recoup from Merck payments it made to provide Medicaid recipients with Vioxx, alleging that Merck misrepresented the safety and efficacy of the drug. 807 N.W.2d at 345. The State argued that the MPLA applied only to "traditional products-liability actions in which an end user of the drug, i.e., a consumer, is injured by the ingestion of the drug," and not to claims seeking "reimbursement for money paid by a third party that never bought or used the product." *Id.* at 344, 346. But the Michigan Court of Appeals rejected that argument, holding that the

---

[3]  *See also White v. SmithKline Beecham Corp.*, 538 F. Supp. 2d 1023, 1030 (W.D. Mich. 2008) ("Through the definition of 'production,' the statute extends the protection from suits broadly to a myriad of activities a manufacturer might perform related to the product. The statute does not limit the protection to situations when the drug is used for its approved purposes."); *Griffus v. Novartis Pharm. Corp.*, No. 06-cv-10891, 2006 WL 2583129, at *2 (E.D. Mich. Sept. 6, 2006) (applying MPLA and concluding that "Plaintiff's negligence and warranty claims are simply disguised product liability claims"); *Duronio v. Merck & Co.*, No. 267003, 2006 WL 1628516, at *3 (Mich. Ct. App. June 13, 2006) ("Although we must accept the factual allegations in plaintiff's second amended complaint as true for purposes of deciding this issue, we are not bound by a party's choice of labels for its action because this would put form over substance. Plaintiff's mere allegation that he is not pursuing a product liability action is not controlling." (citations omitted)).

State's "claim of monetary loss based on alleged misrepresentations regarding the safety and efficacy of Vioxx constitutes a claim for 'damage to property.'" *Id.* at 350.

The claims brought by the County are product liability claims. The County asserts legal and equitable theories of liability based on the marketing, advertising and selling of FDA-approved opioid medications by their manufacturers and wholesale distributors. The County, moreover, seeks reimbursement for costs it allegedly incurred as a result of that improper marketing, advertising and selling, *see* Compl. ¶¶ 866–67, 870, 877, 879, 883–85, 895, 899, 908—precisely the sort of claim held to be a product liability claim in the Vioxx litigation. *See* 807 N.W.2d at 350.

Indeed, it is even clearer here that the County's claims fall within the MPLA's definition of a product liability claim here than it was in the Vioxx litigation. In this case, the costs claimed by the County are entirely derivative of personal injuries suffered by County residents: but for the injuries of those individuals, the County would not have incurred treatment, emergency response, burial or other costs it seeks to recover. *See, e.g.*, *Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999) ("Without injury to the individual smokers, the [plaintiffs] would not have incurred any increased costs…."). Accordingly, the County's claims are "brought for the death of a person or for an injury to a person"—and thus fall within the core of product liability claims under the MPLA. *See* Mich. Comp. Laws § 600.2945(h).

### B. Distributors Have an Absolute Defense Against the County's Common Law Claims Because They Are Sellers of FDA-Approved Drugs.

Under the MPLA (and subject to narrow exceptions not relevant here[4]), "a manufacturer or *seller of a drug* that has been approved by the FDA has an ***absolute defense*** to a products

---

[4]  The exceptions apply only if the *defendant* (i) "[i]ntentionally withholds from or misrepresents to the [FDA] information concerning the drug that is required to be submitted under the federal food, drug, and cosmetic act, and the drug would not have been approved, or the [FDA] would have withdrawn

liability claim if the drug and its labeling were in compliance with the FDA's approval at the time the drug left the control of the manufacturer or seller."  *Taylor v. Smithkline Beecham Corp.*, 658 N.W.2d 127, 131 (Mich. 2003); *see* Mich. Comp. Laws § 600.2946(5).  "Thus, the Legislature has determined that a drug manufacturer or seller that has properly obtained FDA approval of a drug product has acted sufficiently prudently so that ***no tort liability may lie***."  *Taylor*, 658 N.W.2d at 131.

The Supreme Court of Michigan has held that this absolute defense applies to "distributors" of prescription drugs and bars liability so long as a prescription drug is "approved by the FDA at the time the drug leaves the control of the" distributor.  *Id.* at 129, 135 n.15.; *see also Marsh v. Genentech, Inc.*, 693 F.3d 546, 550 (6th Cir. 2012); *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 968 (6th Cir. 2004) ("[T]he Michigan legislature … granted immunity from liability to drug sellers and manufacturers who market their products after obtaining approval from the FDA." (quoting *Garcia v. Wyeth-Ayerst Labs.*, 265 F. Supp. 2d 825, 834 (E.D. Mich. May 19, 2003)); *Duronio*, 2006 WL 1628516 at *3 ("MCL 600.2946(5) now establishes an absolute defense for drug manufacturers and sellers in a product liability action, where the drugs complied with FDA standards and labeling.").

The County does not allege that prescription opioids were not approved by the FDA or that the drugs and their labels were not in compliance with the FDA's approval at the time they

---

approval for the drug if the information were accurately submitted," or (ii) "[m]akes an illegal payment to an official or employee of the [FDA] for the purpose of securing or maintaining approval of the drug."  Mich. Comp. Laws § 600.2946(5).  Under Sixth Circuit law, moreover, the fraud-on-the-FDA exception to immunity under the MPLA applies only where the FDA itself has determined that such fraud occurred.  *See, e.g.*, *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 966 (6th Cir. 2004) (holding that, under *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 350 (2001), plaintiffs cannot invoke the fraud-on-the-FDA exception in Section 600.2946(5) unless "the *FDA itself* determines that a fraud has been committed on the agency during the regulatory-approval process" (emphasis in original)).

were sold.  To the contrary, it acknowledges that the opioids at issue were FDA-approved.  *See* Compl. ¶¶ 67, 71, 276, 286.[5]  The County's claims therefore should be dismissed.

## II.    THE RICO CLAIMS SHOULD BE DISMISSED.

For the reasons set forth in Distributors' *Summit County* brief, Monroe County fails to plead a valid RICO claim against Distributors.  *See* Summit Br., Dkt. 491-1 at Part I.

## III.    THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED.

The County's public nuisance claim fails for the same reasons set forth in the *Summit County* and *City of Chicago* briefs.  Summit Br., Dkt. 491-1 at Part II; Distributors' Mem. In Supp. of Mot. to Dismiss City of Chicago's Second Am. Compl., Dkt. 571-1 (June 8, 2018) at Part I ("Chicago Br.").  Distributors elaborate here on Michigan-specific law.

### A.    The County Cannot Bring a Product Liability Claim in the Guise of a Public Nuisance Claim.

In Michigan, as in Ohio and Illinois, nuisance cases "almost universally concern the use or condition of property, not products."  *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992) (dismissing public nuisance claim for failure to state a claim).  Under settled Michigan law, "manufacturers, sellers, or installers of defective products may not be held liable on a nuisance theory for injuries caused by the defect."  *Id.*  As the court of appeals explained in *Celotex*, "[t]o hold otherwise would significantly expand, with unpredictable consequences, the remedies already available to persons injured by products, and not merely asbestos products."  *Id.*; *see also Schaendorf v. Consumers Energy Co.*, 739 N.W.2d 402, 408

---

[5]    At least one Michigan court has indicated that the plaintiff bears the burden of pleading that the MPLA's absolute defense for FDA-approved-drug sellers does not apply.  *Duronio v. Merck & Co., Inc.*, 2005 WL 5303676 (Mich. Cir. Ct. Nov. 22, 2005) (dismissing claim based on immunity under the MPLA because plaintiff failed to plead FDA finding of fraud), *aff'd*, 2006 WL 1628516 (Mich. Ct. App. June 13, 2006).  And courts routinely dismiss claims based on MPLA immunity where there is no real dispute that drugs were FDA-approved at the time of sale.  *See, e.g.*, *Merck Sharp & Dohme Corp.*, 807 N.W.2d at 347 n.5; *Cotton v. Johnson & Johnson*, 2016 WL 9776137, at *3 n.1 (E.D. Mich. Dec. 1, 2016) (taking judicial notice of FDA approval), *aff'd*, 2017 WL 4857552 (6th Cir. Sept. 22, 2017).

(Mich. Ct. App. 2007) (concluding claim "is essentially a product-liability claim" and "[s]ellers or installers of defective equipment generally cannot be liable for nuisance, because this would significantly expand the scope of nuisance law beyond its origins").

*Celotex* demonstrates why Michigan courts refuse to permit public nuisance claims to supplant product liability law.  The Board of Education's claims against asbestos manufacturers were barred by the statute of limitations, but by pleading a continuing public nuisance, the Board convinced the trial court that its claims were not time-barred.  *Celotex*, 493 N.W.2d at 521. "Statutes of limitation are founded in public needs and public policy," and according to the court of appeals, "the public would not be served by neutralizing the limitation period by labeling a products liability claim as a nuisance claim."  *Id.*  Michigan law, like so many other states, refuses to allow plaintiffs to plead around product liability schemes that are carefully calibrated to fairly adjudicate injuries arising out of products.  *See* Summit Br., Dkt. 491-1 at Part II.B; *see also In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007) (declining "to permit these plaintiffs to supplant an ordinary product liability claim with a separate cause of action as to which there are apparently no bounds").

The County concedes that its public nuisance claim seeks to hold manufacturers and distributors of opioids liable for standard product liability injuries.  The County alleges that the nuisance arose out of "promoting and marketing the use of opioids for indications not federally approved, circulating false and misleading information concerning their risks, benefits and superiority, and/or downplaying or omitting the risk of addiction arising from their use."  Compl. ¶ 862.  Because the County's claim is a transparent attempt to circumvent product liability law— and especially the MPLA's absolute defense for Distributors—it is not cognizable under Michigan law.

### B.     The County Has Not Alleged Interference with a Public Right.

Like Illinois, Ohio, and virtually every other state, Michigan requires that a ***public*** nuisance claim involve invasion of a ***public*** right.  Like Summit County and the City of Chicago, Monroe County does not even attempt to allege interference with any public right.   Monroe County's public nuisance claim is therefore insufficient for the reasons stated in Distributors' *Summit County* and *City of Chicago* briefs.  *See* Summit Br., Dkt. 491-1 at Part II.B.1; Chicago Br., Dkt. 571-1 at Part I.A; *see also Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 720 n.8 (Mich. 1992) (adopting Restatement's requirement of "unreasonable interference with a right common to the general public"); *cf. Olden v. LaFarge Corp.*, 203 F.R.D. 254, 266–67 (E.D. Mich. 2001) (dismissing public nuisance claim because there was no allegation that emission of toxic pollutants interfered with public right, as opposed to plaintiff's private right of use and enjoyment of land).

### C.     The County Has Not Alleged That Distributors Controlled the Medications When Those Medications Caused Injury.

Under Michigan law, "liability for damage caused by a nuisance turns upon when the defendant was in control, either through ownership or otherwise.... Liability cannot extend to where an object constituting part of the nuisance or the dangerous condition is removed from defendants' premises and thus out of their control."  *Beard v. State*, 308 N.W.2d 185, 187 (Mich. Ct. App. 1981).  Where commercial transactions are involved, a defendant cannot be liable for a public nuisance unless it controlled the instrumentality of nuisance at the time of injury.  *See Celotex*, 493 N.W.2d at 522; *see also Gelman Scis. Inc. v. Dow Chem. Co.*, 508 N.W.2d 142, 144 (Mich. Ct. App. 1993) ("If a commercial transaction is involved, control of the nuisance at the time of injury is required.").  When "a seller in a commercial transaction relinquishes ownership and control of its products when they are sold, it lacks the legal right to abate whatever hazards

its products may pose." *Gelman Scis.*, 508 N.W.2d at 144. "In such a setting, the purchaser's proper remedies are products liability actions for negligence or breach of warranty." *Id.*

*Celotex* compels dismissal of the public nuisance claim. There, the plaintiffs were precluded from recovering because the asbestos defendants "gave up ownership and control of their products when the products were sold to plaintiffs." 493 N.W.2d at 522. Here, the gap between Distributors' control over prescription opioids and the County's alleged injuries is even greater. Distributors are middlemen. They sell pharmaceutical products to retail pharmacies, who then may dispense opioids to individual patients only upon presentment of a valid prescription. Because Distributors gave up ownership and control over prescription opioids long before they reached individual users (and thus long before the County's alleged harm occurred), the County's public nuisance claim fails as a matter of Michigan law.

## IV.    THE NEGLIGENCE CLAIM SHOULD BE DISMISSED.

The gist of the County's negligence claim is that Distributors breached an alleged duty to report or stop shipment of suspicious orders by their retail pharmacy customers. *See* Compl. ¶¶ 876–77. The claim fails because the County fails to (1) identify any enforceable duty running from Distributors to the County, or (2) allege that it suffered a present physical injury.

### A.    The Complaint Fails Adequately To Allege an Enforceable Duty Owed by Distributors to the County.

#### 1.    No private right of action.

The genesis of Distributors' alleged duty to report or halt suspicious orders is a federal regulation, 21 C.F.R. § 1301.74(b). As explained in Distributors' *Summit County* brief, however, there is no private right of action to enforce that federal reporting requirement. Summit Br., Dkt. 491-1 at Part III.B.1.

- 9 -

The County also purports to base its claims on the Michigan analogue to the federal CSA, alleging that the federal suspicious order reporting requirement in 21 C.F.R. § 1301.74(b) is incorporated into Michigan law by reference.[6]  Compl. ¶¶ 634, 876.  The Michigan CSA and its implementing regulations, however, do not contain an independent suspicious order reporting requirement; thus, the County's claim is really just a claim based on alleged violation of federal law.  In any event, there is no private right of action to privately enforce the Michigan CSA either.  The Sixth Circuit has recognized that "the Michigan Public Health Code," which contains the Michigan CSA, "does not create a private right of action" and that the statutory remedies included "to enforce its provisions … are exclusive."  *Grain v. Trinity Health*, 431 F. App'x 434, 448 (6th Cir. 2011).  The County therefore cannot bring suit to enforce the Michigan CSA "under the guise of" pursuing a negligence claim.  *See McClements v. Ford Motor Co.*, 702 N.W.2d 166, 171 (Mich. 2005), *corrected on reh'g*, 704 N.W.2d 68 (2005); *Monroe Beverage Co. v. Stroh Brewery Co.*, 568 N.W.2d 687, 689 (Mich. Ct. App. 1997) ("[B]ecause [plaintiff] cannot maintain a civil suit against [defendant] under the Liquor Control Act, that act cannot be used as the basis for establishing a tort duty of care."); *see also McLiechy v. Bristol W. Ins. Co.*, 474 F.3d 897, 900 (6th Cir. 2007).[7]

---

[6]  Article 7 of Michigan's Public Health Code governs "Controlled Substances," but is not titled the "Controlled Substances Act."  Mich. Comp. Laws §§ 333.7101 to 333.7545.  However, Michigan's controlled substances laws will be referred to herein as the "Michigan CSA" for ease of reference.

[7]  Indeed, the Michigan CSA contains an entire subsection, "Part 75," governing "Enforcement and Administration."  Mich. Comp. Laws §§ 333.7501 to 333.7545.  Part 75 makes clear that, consistent with Sections 7311 and 7314, all enforcement contemplated under the Michigan CSA is to be done by state law enforcement officials, including the BOP, a disciplinary subcommittee of the BOP, and/or the department of commerce.  *See, e.g.*, Mich. Comp. Laws § 333.7501 (allowing "[a] sheriff, deputy sheriff, or local or state police officer" to arrest suspected violators); *id.* § 333.7502 (allowing "[a]n inspection agent or investigatory agent of the department of commerce" to perform any "law enforcement duties the administrator or the department of commerce designates"); *see also, e.g.*, *id.* § 333.7507; *id.* § 333.7533.  The Michigan CSA similarly provides for injunctive relief to restrain violations of the statute.  *Id.* § 333.7511.

### 2.      No negligence *per se*.

The County's allegation that Distributors were *per se* negligent cannot save its claim. Michigan, like Ohio, bars the use of administrative rules and regulations to establish negligence *per se*.  *Douglas v. Edgewater Park Co.*, 119 N.W.2d 567, 571 (Mich. 1963); *Pavia v. Ellis-Don Michigan, Inc.*, No. 224327, 2001 WL 1511837, at *4 (Mich. Ct. App. Nov. 27, 2001).  The County premises its negligence *per se* claim on purported federal obligations "to monitor and report suspicious orders, to not fill suspicious orders, to abide by any government agreements entered regarding the same, and to … design and operat[e] … a system to detect and disclose suspicious orders of controlled substances."  Compl. ¶ 876.  The purported duties come from federal administrative regulations, letters, and agreements.  For substantially the reasons explained in Distributors' *Summit County* brief, Monroe County cannot establish a claim for negligence *per se*.  *See* Summit Br., Dkt. 491-1 at Part III.B.2.[8]

### 3.      No common law duty to monitor and report "suspicious" pharmacy orders.

Michigan case law defining the duties owed by pharmacists to patients confirms the absence of any common law duty owed by Distributors here.

A number of Michigan cases have examined the duties of pharmacists who dispense prescription drugs to patients.  Those cases hold that pharmacists owe a duty to their customers to "properly fill lawful prescriptions."  *Adkins v. Mong*, 425 N.W.2d 151, 152 (Mich. Ct. App. 1988).  Pharmacists, however, do ***not*** owe a common law duty to identify or refuse to fill prescriptions written by physicians who overprescribe drugs.  *Kintigh v. Abbott Pharm.*, 503 N.W.2d 657, 658 (Mich. Ct. App. 1993) (holding that pharmacists do not "owe[] a customer a

---

[8]     Moreover, under Michigan law, the negligence per se doctrine only applies where "the plaintiff is within the class intended to be protected by the statute."  *Klanseck v. Anderson Sales & Service, Inc.*, 393 N.W.2d 356 (Mich. 1986).  Here, there is no indication that the relevant federal and state regulations were enacted to protect counties, as political subdivisions, from the costs of drug diversion.

legal duty to monitor drug usage" and therefore "owe[] no duty to plaintiff[s] to discover [their] addicted status" and to "refuse to sell to [them]."); *see also Stebbins v. Concord Wrigley Drugs, Inc.*, 416 N.W.2d 381, 387–88 (Mich. Ct. App. 1987). Because physicians are best positioned to determine the appropriateness of prescriptions for their patients, these Michigan decisions refuse to impose on pharmacists a duty to monitor and refuse to fill orders.

The same concerns militate even more strongly against imposing on Distributors new common-law duties to report or halt the shipment of suspicious orders. Distributors are even further removed from doctors' prescribing decisions, and thus are in even less of a position to second-guess lawful prescriptions or to know whether a pharmacy customer will misuse or divert a prescribed opioid. Thus, for the same reasons that pharmacists have no duty under Michigan law to report or refuse to fill "suspicious" prescriptions, wholesale distributors have no duty under the common law of Michigan to report or refuse to fill "suspicious" orders placed by retail pharmacies.[9]

### 4. No duty owed to *the County.*

"[D]uty is a question of law for the court." *Simko v. Blake,* 532 N.W.2d 842, 846 (Mich. 1995). "Before a duty can be imposed, there must be a relationship **between the parties**…." *In re Certified Question from Fourteenth Dist. Court of Appeals of Tex.*, 740 N.W.2d 206, 213 (Mich. 2007); *see also id.* at 211, 213 ("The most important factor to be considered is the relationship of the parties…. **Where there is no relationship between the parties, no duty can be imposed**, but where there is a relationship, the other factors must be considered to determine

---

[9] Any such duties would also be too difficult for the court system to implement. "The court system … is simply not institutionally equipped to establish, promulgate operative rules for, or administer" such complex regimes as are required for the regulation of prescription drugs. *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 699 (Mich. 2005). Courts should not expand common-law causes of action to impose new duties where the legislative branches have "already created a body of law"—here, statutes and DEA and BOP regulations—that regulate the conduct at issue, *see id.*, and regulators have access to information that individual distributors lack.

whether a duty should be imposed."); *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 178 (Mich. 1993) ("***Most importantly, for a duty to arise there must exist a sufficient relationship between the plaintiff and the defendant***."); *Buczkowski v. McKay*, 490 N.W.2d 330, 333 (Mich. 1992) ("Duty is actually a question of whether the defendant is under any ***obligation for the benefit of the particular plaintiff*** ....").

The Complaint, however, does not allege any basis to infer a duty running from Distributors—who purchase pharmaceuticals from manufacturers and sell them to licensed pharmacies. *See In re Certified Question*, 740 N.W.2d at 212 (citing *Buczkowski*, 490 N.W.2d at 330) (no relationship—and therefore no duty—between a seller and a bystander injured by a criminal customer). Similarly, Distributors owe the County no duty to control the conduct of third parties, particularly third parties engaged in illegal conduct, because there is no "special relationship" between Distributors and the County or its resident opioid users. *See Buczkowski*, 490 N.W.2d at 334 n.9; *Graves v. Warner Bros.*, 656 N.W.2d 195, 200 (Mich. Ct. App. 2002); *see also* Summit Br., Dkt. 491-1 at Part III.B.4.

### B. Michigan's "Present Physical Injury" Rule Requires Dismissal of the Negligence Claim.

In order to recover in negligence under Michigan law, plaintiffs must show that "they suffer from ***present physical*** injuries to person or property." *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 691 (Mich. 2005) (emphasis in original); *accord Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 654 (6th Cir. 2016) (allegation that defendant caused plaintiff to incur medical expenses is "insufficient to state a claim" under Michigan negligence law). Because the County has not alleged any present physical injuries to its person or property, its negligence claim fails as a matter of Michigan law.

- 13 -

## V.     THE FREE PUBLIC SERVICES DOCTRINE BARS THE COUNTY'S CLAIMS.

The "free public services doctrine" precludes municipalities from recovering in tort for the cost of providing public services to their citizens.  For substantially the reasons explained in Distributors' *City of Chicago* brief, Dkt. 571-1, Part III.C, the doctrine also bars the claims asserted by Monroe County.

The dominant rule throughout the country is that local governments are precluded from asserting claims for damages against private entities seeking reimbursement for police, medical, and other costs incurred in the performance of public duties—even where those costs are allegedly in excess of what the government body would otherwise need to spend and even where the defendants allegedly created an ongoing nuisance.  *See* Chicago Br., Dkt. 571-1 at Part III.C. Without invoking the free public services doctrine by name, the Michigan Court of Appeals has held that—absent a "statutory right"—municipalities may not bring damages actions to recover monies spent to abate a public nuisance.  *See Brandon Twp. v. Jerome Builders, Inc.*, 263 N.W.2d 326, 328 (Mich. Ct. App. 1977) (no damages action to recover costs incurred by township to repair dam owned by defendants); *cf. Henry*, 701 N.W.2d at 698 n.20 (citing *City of Chicago v. Beretta USA Corp.,* 821 N.E.2d 1099 (Ill. 2004) with approval).

The County does not identify any statutory authority permitting it to bring claims for money damages—nor could it.  Accordingly, its efforts to recover from Distributors quintessentially public expenditures—i.e., "increased law enforcement and judicial expenditures, increased prison and public works expenditures, increased substance abuse treatment and diversion plan expenditures, [and] increased emergency and medical care services," *e.g.*, Compl. ¶ 870—is barred under Michigan law and the free public services doctrine.

- 14 -

## VI.    THE CONSUMER PROTECTION ACT CLAIM SHOULD BE DISMISSED.

The bulk of the County's allegations under the Michigan Consumer Protection Act ("MCPA") relate only to the Marketing Defendants, which the County contends "us[ed] trade associations, front groups, and key opinion leaders to actively promote the use of opioids for indications not federally approved, to circulate false and misleading information concerning opioids' risks, benefits, and superiority, and to downplay or omit the risk of addiction arising from their use."  Compl. ¶ 856.  Indeed, the sole allegation arguably directed at Distributors is a single sentence stating that unspecified "Defendants have engaged in unfair and/or deceptive acts or practices by omitting the material fact of its failure to monitor, report, and stop the filling of suspicious orders of controlled substances."  *Id.* ¶ 857.

This stray allegation is insufficient as a matter of law to sustain a MCPA claim for three separate reasons.  First, Distributors' alleged conduct is subject to an exemption under Michigan law for "transaction[s] or conduct specifically authorized under law[]."  Mich. Comp. Laws § 445.904(1)(a).  Second, this generic and conclusory allegation fails to satisfy the applicable pleading standard.  Finally, the Complaint does not allege, as it must, that any misrepresentations or omissions by Distributors were material to a transaction that took place with the County.

### A.    The MCPA Claim Fails Because it Concerns Transactions Authorized By Law.

The County's MCPA claim fails because Distributors are subject to an extensive licensing and regulatory regime and therefore fall within an exemption to the MCPA.

The MCPA provides that no liability attaches to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  *Id.*  As the Michigan Supreme Court has explained, when applying this exemption, the "relevant inquiry" is whether "the general transaction is

specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Global Life Ins. Co.*, 597 N.W.2d 28, 38 (Mich. 1999); *accord Molosky v. Wash. Mut., Inc.*, 664 F.3d 109, 117 (6th Cir. 2011) (noting that for the MCPA exemption to apply, "the general transaction at issue, '***not the alleged misconduct***,' must be ... authorized" (emphasis in original)); *McCray v. Jefferson Chevrolet Co*, No. 17-cv-12058, 2018 WL 1964674, at *7 (E.D. Mich. Apr. 26, 2018) ("For the exemption to apply, the general transaction must be specifically authorized by law, regardless of whether the specific alleged misconduct is prohibited.").

"Michigan courts … construe the exemption broadly," *Feliciano v. Gen. Motors LLC*, No. 14-cv-06374, 2016 WL 9344120, at *12 (S.D.N.Y. Mar. 31, 2016), and have applied it to dismiss claims regarding the sale of insurance, the operation of slot machines, residential mortgage loan transactions, and the sale of motor vehicles.[10]  Federal courts have likewise applied the exemption to dismiss claims where "the transaction at issue is ... regulated by an expert agency with licensing, approval and enforcement authority." *Baumkel v. Scotts Miracle-Gro Co.*, No. 08-cv-14137, 2009 WL 3190477, at *8 (E.D. Mich. Sept. 28, 2009).[11]

The Michigan Supreme Court's decision in *Liss v. Lewiston-Richards, Inc.* is particularly instructive.  *See* 732 N.W.2d 514, 518 (Mich. 2007).  To ascertain whether the "general transaction" was "specifically authorized by law," the court first determined that the "general transaction" at issue in *Liss* was "residential home building."  *Id.* at 519-20.  The court then

---

[10]  *See, e.g.*, *Smith*, 597 N.W.2d 28; *Kolk v. Household Fin. Corp. III*, No. 337178, 2018 WL 521903, at *10 (Mich. Ct. App. Jan. 23, 2018); *Jimenez v. Ford Motor Credit Co.*, No. 322909, 2015 WL 9318913, at *7 (Mich. Ct. App. Dec. 22, 2015); *Ursery v. Option One Mortg. Corp.*, No. 271560, 2007 WL 2192657 (Mich. Ct. App. July 31, 2007); *Kraft v. Detroit Entm't*, L.L.C., 683 N.W.2d 200 (Mich. Ct. App. 2004); *Newton v. West*, 686 N.W.2d 491 (Mich. Ct. App. 2004).

[11]  *See also, e.g.*, *Alexander v. Del Monte Corp.*, No. 09-cv-12303, 2011 WL 87286, at *3 (E.D. Mich. Jan. 11, 2011) (dismissing MCPA claims against fruit product packager because packaging facilities were regulated by the Food and Drug Administration).

observed that residential home builders are licensed under the Michigan Occupational Code ("MOC"), "there is a set of administrative rules promulgated to regulate the licensing procedure," and the conduct of home builders is regulated by a board established by state law.  *Id*. at 520. The court concluded that "a residential home builder is 'specifically authorized' to contract to build homes" because home-building, with limited exceptions, is an activity "permitted by the MOC to be performed only by licensed residential home builders."  *Id*. at 520-21.  Rejecting the dissent's suggestion that Michigan statutes did not specifically authorize the conduct alleged in the complaint—which included "doing work that did not meet the agreed-upon specifications[] and making various misrepresentations"—the Michigan Supreme Court concluded that the exemption applied because the general activity of residential homebuilding was subject to licensing and regulatory requirements.  *Id*. at 522 (Cavanaugh, J., dissenting); *see id.* at 519–21. Thus, as one of the dissenters candidly acknowledged, "merely being a licensee in a regulated industry qualifies one for the exemption" under Michigan law.  *Id*. at 529 (Kelly, J., dissenting).

Section 445.904 of the MCPA compels the dismissal of the County's MCPA claim against Distributors.  As the Complaint acknowledges, the distribution of prescription pharmaceuticals is subject to the comprehensive licensing, approval, and enforcement authority of both state and federal expert agencies.  *See* Compl. ¶¶ 466, 468–69, 471–74.  Distributors cannot engage in the wholesale distribution of prescription drugs in Michigan without licenses from both the DEA and the BOP.  *See* 21 C.F.R. § 1301.11 (requiring "[e]very person who ... distributes ... any controlled substance or who proposes to engage in the ... distribution ... of any controlled substance [to] obtain a registration" with the DEA); Mich. Comp. Laws § 333.7303(1) (requiring any "person who ... distributes ... a controlled substance in [Michigan]" to "obtain a license issued by" the BOP).  Accordingly, because the County's allegations relate to

- 17 -

"transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States," Distributors are expressly exempt from liability under the MCPA.  Mich. Comp. Laws § 445.904(1)(a).

**B.     The MCPA Claim is Not Pled with the Required Specificity.**

Courts consistently hold that, where a plaintiff does not "identify how or when [the defendants] purportedly violated the act," an MCPA claim should be dismissed.  *Meyer v. Citimortgage, Inc.*, No. 11-cv-13432, 2012 WL 511995, at *11 (E.D. Mich. Feb. 16, 2012).  A mere "recitation of lists of prohibited activities under the MCPA, without identifying which sections were purportedly violated, without pleading any factual[] basis for the purported violations, and without identifying which defendant purportedly violated the acts" is "insufficient to state a claim."  *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Muneio v. Fed. Nat'l Mortg. Ass'n*, No. 09-cv-12973, 2010 WL 5146328, at *4 (E.D. Mich. Dec. 13, 2010) (dismissing MCPA claim where plaintiff did not "allege how [defendant] violated the MCPA" or "identify which MCPA sections it purportedly violated").

The County's MCPA claim against Distributors should be dismissed on this basis.  The Complaint alleges (in relevant part) only that unspecified "Defendants have engaged in unfair and/or deceptive acts by omitting the material fact of its failure to monitor, report, and stop the filling of suspicious orders of controlled substances."  Compl. ¶ 857.  But the County makes no effort to identify (i) which of the three Distributors (if any) engaged in this alleged conduct, (ii) which provision or provisions of the MCPA the alleged conduct purportedly violated, or (iii) which communications contained the alleged omissions.  These allegations fall well short of the County's obligation to "identify[] which defendant purportedly violated" the MCPA and how.  *Meyer*, 2012 WL 511995, at *11.

**C.      The County's MCPA Claim Fails to Allege a Misrepresentation by Distributors Material to Any Transaction.**

As discussed above, the County's MCPA claim should be dismissed, *inter alia*, because the Complaint fails even to identify the specific MCPA provision that Distributors allegedly violated.   To the extent that the County purports to proceed under Mich. Comp. Laws § 445.903(1)(s), (bb), or (cc), any such claim would fail for additional reasons.[12]

When proceeding under those subsections of the MCPA, a plaintiff is required to allege that any misrepresentation or omission related to a "material fact" or was "material to [a] transaction."   Mich. Comp. Laws § 445.903(1)(s), (bb), (cc).   The "common thread" in such provisions is that they give rise to a claim only where the "parties … have done business with each other."  *DiPiero v. Better Bus. Bureau of W. Mich., Inc.*, No. 316308, 2014 WL 6679406, at *4 (Mich. Ct. App. Nov. 25, 2014).   Where there were no "mutual or reciprocal acts" between the plaintiffs and defendants, such provisions cannot support an MCPA claim.  *Wilson v. Citizens Ins. Co. of Am.*, No. 1:13-cv-470, 2015 WL 631978, at *10 (M.D.N.C. Feb. 13, 2015); *accord Laura v. DaimlerChrysler Corp.*, 711 N.W.2d 792, 794 (Mich. Ct. App. 2006) (holding that application of Mich. Comp. Laws § 445.903(1)(s), prohibiting "failure to reveal a material fact," turns on whether failure was "important to the transaction").

The County does not premise its MCPA claim on any purported consumer transactions between it and Distributors.   Nor does it even attempt to identify a specific material misrepresentation or omission by Distributors that impacted a consumer transaction between the

---

[12]    While the County's failure to satisfy its burden of identifying the particular MCPA provision that Distributors allegedly violated makes it impossible for them to be certain, Sections 445.903(1)(s), (bb), (cc) appear to correspond most closely to the County's vague allegations of wrongdoing by Distributors.

County and Distributors.  For this additional reason, it fails to state a claim under Sections 445.903(1)(s), (bb), and (cc) of the MCPA.

### D.    The County's MPCA Claim Fails to Allege a Consumer Transaction.

The County's MCPA claim also fails because it does not relate to a consumer transaction. The MPCA applies only to transactions involving "goods, property, or service ***primarily for personal, family, or household purposes***."  *Paul v. Glendale Neurological Assocs.*, 848 N.W.2d 400, 406 (Mich. Ct. App. 2014).  In other words, the MCPA "does not apply to purchases that are primarily for business purposes."  *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 634 (Mich. 2003); *accord MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 661 (6th Cir. 2013).  Here, the County does not allege that anyone—let alone it—purchased opioids ***from Distributors*** for personal, family or household purposes.  Nor could it:  Distributors are middlemen, who sell pharmaceutical products to retail pharmacies and other dispensaries. Because these sales are made for business purposes, they are not actionable under the MPCA. *See, e.g.*, *Slobin*, 666 N.W.2d at 634; *MacDonald*, 724 F.3d at 661.

## VII.    THE FRAUD CLAIM SHOULD BE DISMISSED.

The County's common law fraud claim against Distributors is baseless.  The County has not alleged any factual basis to support a fraudulent misrepresentation claim—let alone with the particularity required by Rule 9(b)—and it may not maintain a claim for "silent fraud" because Distributors have no duty to speak that runs to the County.

### A.    The County Fails to State a Claim for Misrepresentation.

"To state a claim for fraudulent misrepresentation under Michigan law, [a plaintiff] must sufficiently allege the following: '(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it

should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.'" *Etts v. Deutsche Bank Nat'l Trust Co.*, 126 F. Supp. 3d 889, 896–97 (E.D. Mich. 2015) (quoting *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976)).

The County's fraud claim against Distributors fails at the threshold for the simple reason that the 913-paragraph Complaint does not include a single allegation that Distributors made ***any*** false representations about opioids.  The Complaint does not mention Distributors once in the approximately 321 paragraphs describing the alleged advertising, marketing, and promotion of opioids by the "Marketing Defendants."  Compl. ¶¶ 35–76, 136–457.  The Complaint does not allege—let alone plead with particularity—that Distributors misled doctors or the public about opioid medications or that they made any representations at all to anyone about the use or addictiveness of opioid medications.  *See Burger v. Allstate Ins. Co.*, 667 F. Supp. 2d 738, 746 (E.D. Mich. 2009) (dismissing Michigan fraud claim for failure to allege misrepresentation); *Hollowell v. Career Decisions, Inc.*, 298 N.W.2d 915, 921 (Mich. 1980) (dismissing fraud claim for "fail[ure] to allege that defendants' statements were made knowingly and falsely or in reckless disregard for their truth").

Nor could the County premise its fraud claim on Distributors' affirmative statements that they maintain "state-of-the-art" anti-diversion systems and are committed to helping to prevent diversion.  *See* Compl. ¶¶ 547–52.  As an initial matter, any fraud claim based on these statements should be dismissed for failure to plead them with particularity.  The County does not allege who made these statements, when, or to whom, that the County was aware of them before the County filed suit, or what actions the County took or did not take in reliance on the statements.  *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255–56 (6th Cir. 2012) (Rule 9(b) "requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to

identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent.").  More significantly, the County does not actually allege that the statements are false.  The statements are, at most, denials that Distributors have done anything wrong, which are not actionable as fraud.  *See Campbell v. Upjohn Co.*, 498 F. Supp. 722, 728 (W.D. Mich. 1980) ("[T]he mere denial of wrongdoing does not constitute active concealment."); *Dayco Corp. v. Firestone Tire & Rubber Co.*, 386 F. Supp. 546, 549 (N.D. Ohio 1974) (same), *aff'd*, 523 F.2d 389 (6th Cir. 1975).

## B. The County Fails To State a Claim for Silent Fraud.

The County's real complaint against Distributors is that they committed a "silent fraud" by omission—*i.e.*, by not confessing wrongdoing.[13]  The County alleges that Distributors "concealed their noncompliance with the[] requirements" to "prevent diversion [and] their duties to monitor, report and halt suspicious orders."  Compl. ¶ 890; *see also id.* ¶ 458 (alleging that Distributors failed to disclose that they had not "maintain[ed] effective controls [or] investigate[d], report[ed], [or] take[n] steps to halt orders that they knew or should have known were suspicious").  In other words, the County alleges that Distributors never announced that they had been negligent, and, for that reason, they are fraudsters.  That wildly broad conception of common law fraud would encompass every possible negligence claim and has no basis in Michigan law.

Nor can the County maintain a fraud claim against Distributors for the underlying alleged act of failing to report suspicious pharmacy orders to the DEA.  "Michigan courts have recognized that silence cannot constitute actionable fraud *unless* it occurred in circumstances where there was a legal duty of disclosure."  *M & D Inc. v. McConkey*, 585 N.W.2d 33, 37

---

[13]  Federal Rule of Civil Procedure 9(b) applies with equal force to fraud claims premised on an omission or a failure to disclose.  *See Republic Bank & Tr. Co.,* 683 F.3d at 255–56; *Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 982–83 (6th Cir. 2017).

(Mich. Ct. App. 1998) (emphasis in original); *see also Lowery v. Dep't of Corr.*, 380 N.W.2d 99,

108 (Mich. Ct. App. 1985) ("[P]laintiff has failed to allege that defendants had an affirmative

duty to disclose [certain] facts, an element which is essential to a claim of silent fraud.").  For

reasons that already have been well explained, *see supra* Part IV.A, Distributors have no legal

duties that run to the County.  There are no statutes or regulations that require reporting of

suspicious pharmacy orders to the County.  Any reporting or record-keeping requirements run to

the DEA and/or the state BOP—not the County.  Even if the County could establish some

common law duty to the County on the part of Distributors to prevent diversion or stop shipment

of suspicious orders (it cannot, *see supra* Part IV.A), the County cannot establish a duty to

"speak," or report, to the County because the reporting requirement is wholly a creature of

statute and regulation.[14]

### C.     The County Has Not Sufficiently Alleged Reasonable Reliance.

Other than with boilerplate legal conclusions, Compl. ¶¶ 891–94, the County has not pled

that it relied on any misrepresentations or omissions by Distributors.  The County does not allege

that it took or refrained from taking any action in reliance on Distributors' alleged omissions.

Nor does the County alleged that it somehow relied on ***confidential*** reports made by Distributors

to their federal regulators.  Because the County has not pled any reliance at all on Distributors'

alleged omissions (or alleged any misrepresentations), it certainly has not pled reasonable

reliance.  *See MacDonald.*, 724 F.3d at 664–65 (dismissing Michigan fraud claim because

plaintiff's reliance on alleged fraudulent misstatement was unreasonable); *id.* at 664 ("[U]nder

---

[14]   A "review of Michigan Supreme Court precedent" reveals that the duty of disclosure is further limited
to circumstances in which "the fraud by nondisclosure was based upon statements by the vendor that
were made in response ***to a specific inquiry*** by the purchaser" that "were in some way incomplete or
misleading." *M & D Inc.*, 585 N.W.2d at 39.  The County has not pled that it made a "specific inquiry"
to Distributors about anything, nor would it have, because the County and Distributors have no
relationship in which the County would have made inquiry of Distributors.

Michigan law, a court may determine, based on the complaint, that a plaintiff's reliance was unreasonable …." (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 549 (Mich. 1999)).

The County's fraud claim against Distributors therefore should be dismissed.

## VIII.   THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The County's unjust enrichment claim should be dismissed.  As a threshold matter, the claim is based on the same alleged conduct underlying the County's other claims and should be dismissed as duplicative.  *See Ruffin-Steinback v. dePasse*, 267 F.3d 457, 462–63 (6th Cir. 2001) (dismissing unjust enrichment claim under Michigan law as "duplicative or derivative of" tort claim).  The County's unjust enrichment claim also fails for substantially the reasons explained in the *Summit County* and *City of Chicago* briefs, Summit Br., Dkt. 491-1 at Part V; Chicago, Br., Dkt. 571-1 at Part V.

The gist of the County's unjust enrichment claim is that it incurred costs for "medical care and treatment services, emergency visits, medical care, treatment for related illnesses and accidents, law enforcement and lost productivity to Monroe County's workforce."  Compl. ¶ 884.  But these expenditures did not confer a benefit—let alone a direct benefit—on Distributors.  Rather, they conferred a benefit on County residents.  The claim therefore fails.  *See Smith v. Glenmark Generics, Inc.*, USA, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) ("[T]he first element of unjust enrichment requires a finding that defendant directly benefited from plaintiff…."); *accord Storey v. Attends Healthcare Prods. Inc.*, No. 5-cv-13577, 2016 WL 3125210, at *13 (E.D. Mich. June 3, 2016) (claim for unjust enrichment under

Michigan law failed because plaintiffs "have not alleged that they directly conferred a benefit on Defendant"). [15]

The Complaint also vaguely suggests, without squarely alleging, that the County purchased opioids directly from one or more of the Distributors.  *See* Compl. ¶ 883 ("Plaintiff, acting on its own behalf and on behalf of its inhabitants, conferred on Defendants a benefit, including payments for opioids distributed by Defendants for sale in Monroe County….").  Absent a concrete factual allegation that the County purchased opioid medications from an identified Distributor, this vague and conclusory allegation fails as a matter of law.  Any such claim would also fail because (1) a claim for unjust enrichment fails where a contract governs the parties' relationship, *see, e.g.*, *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 181 (6th Cir. 1996), and (2) the Complaint does not identify any facts suggesting that it would be unjust for the County to pay the contractually agreed price for a lawful product.  Nor could it, given that the County would stand between Distributors and the eventual diversion or misuse of any opioid medications purchased directly by the County.

## IX.    THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

Civil conspiracy claims sounding in fraud—like the claim asserted by the County, *see* Compl. ¶¶ 898–99—must be pled with particularity.  *See Roller v. Litton Loan Servicing*, No. 10-cv-13847, 2011 WL 2490597, at *7 (E.D. Mich. June 21, 2011).  The County fails to allege with the requisite particularity that any Distributor (1) acted with an intent to accomplish an unlawful purpose, or (2) committed an underlying intentional tort.  As under Ohio law, these failures are fatal under Michigan law.  *See Wiggins v. Argent Mortg. Co., LLC*, 945 F. Supp. 2d

---

[15]    One of the County's essential responsibilities, moreover, is providing social services to its residents; the fact that the County has provided such services does not amount to a benefit conferred unjustly on Distributors.

817, 824-25 (E.D. Mich. 2013), *aff'd*, No. 13-1797 (6th. Cir. Mar. 31, 2014); *Hanover Exch. v. Metro Equity Grp. LLC*, No. 2:08-cv-14897, 2009 WL 2143866, at *5 (E.D. Mich. July 14, 2009); *see also* Summit Br., Dkt. 491-1 at Part VI.

In addition, the civil conspiracy claim should be dismissed because, as explained in Parts VI and VII, the underlying fraud claims are deficient as a matter of law. *Brintley v. St. Mary Mercy Hosp.*, 904 F. Supp. 2d 699, 733 (E.D. Mich. 2012) ("[U]nder Michigan law, it is axiomatic that a civil conspiracy claim 'is not cognizable without a cognizable underlying tort.' Where a plaintiff has failed to establish the underlying tort, his civil conspiracy claim also fails."), *aff'd*, 545 F. App'x 484 (6th Cir. 2013).

## CONCLUSION

For the reasons set forth herein and the portions of the *Summit County* and *City of Chicago* briefs incorporated herein, Monroe County's claims should be dismissed with prejudice.

Dated:  June 8, 2018                    Respectfully submitted,


*/s/ Robert A. Nicholas*                */s/ Enu Mainigi*
Robert A. Nicholas                      Enu Mainigi
Shannon E. McClure                      F. Lane Heard III
**REED SMITH LLP**                      Steven M. Pyser
Three Logan Square                      Ashley W. Hardin
1717 Arch Street, Suite 3100            **WILLIAMS & CONNOLLY LLP**
Philadelphia, PA 19103                  725 Twelfth Street, NW
Tel: (215) 851-8100                     Washington, DC 20005
Fax: (215) 851-1420                     Tel: (202) 434-5000
rnicholas@reedsmith.com                 Fax: (202) 434-5029
smcclure@reedsmith.com                  emainigi@wc.com
                                        lheard@wc.com
*Counsel for AmerisourceBergen Corporation*   spyser@wc.com
*and AmerisourceBergen Drug Corporation*      ahardin@wc.com


*/s/ Geoffrey Hobart*                   *Counsel for Cardinal Health, Inc.*
Geoffrey Hobart
Mark Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com


*Counsel for McKesson Corporation*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order Number Four (Dkt. 485, May 22, 2018), the Distributors are permitted to file motions to dismiss totaling 150 pages across the following five local government cases set for briefing:

- *Summit County, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090;
- *City of Chicago, Illinois v. Cardinal Health, Inc., et al.*, No. 18-op-45281;
- *Cabell County Comm'n, West Virginia v. AmersourceBergen Drug Corp. et al.*, No. 17-op-45053;
- *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, No. 18-op-4515;
- *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332;

This brief adheres to the limits set forth in Case Management Order Number Four, as the combined briefing in those five cases is 148 pages.

*/s/ Robert A. Nicholas*
Robert A. Nicholas

## CERTIFICATE OF SERVICE

I, Robert A. Nicholas, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Robert A. Nicholas*
Robert A. Nicholas