**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*Cabell County Commission v.*<br>*AmerisourceBergen Drug Corp., et al.*<br>Case No. 17-op-45053-DAP | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT**
**OF DISTRIBUTORS' MOTION TO DISMISS**
**<u>SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ....................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.  THE RICO CLAIM SHOULD BE DISMISSED. ............................................................ 2

II.  THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED. ...................................... 2

III.  THE NEGLIGENCE CLAIM SHOULD BE DISMISSED. .............................................. 4

    A.  There Is No Private Right of Action To Enforce the Federal CSA or the WVCSA. ........................................................................................... 5

    B.  The County Cannot Enforce the CSA or WVCSA Through the Common Law. ............................................................................................... 6

    C.  The County Has Not Identified a Duty Owed to *the County*. ............................... 7

IV.  THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. ............................ 8

V.  THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ................................ 9

VI.  THE STATE-LAW CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS. ................................................................................................ 9

    A.  The Economic Loss Doctrine Bars the County's Claims. ...................................... 9

    B.  The Free Public Services Doctrine Bars the County's Claims. ........................... 10

    C.  The Direct Injury Test Requires Dismissal of the County's Claims. .................. 11

CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bertovich v. Advanced Brands & Importing Co.*, No. 5:05CV74, 2006 WL
    2382273 (N.D. W. Va. Aug. 17, 2006)...................................................................11

*Cuyler v. United States*, 362 F.3d 949 (7th Cir. 2004) ................................................6

*Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers
    Squibb Co.*, 969 F. Supp. 2d 463 (S.D. W. Va. 2013) ........................................8, 11

*Heavener v. Quicken Loans, Inc.*, No. 3:12-CV-68, 2012 WL 13028627 (N.D. W.
    Va. Nov. 7, 2012).................................................................................................9

*In re Silver Bridge Disaster Litig.*, 381 F. Supp. 931 (S.D. W. Va. 1974)....................4

*Johnson v. Ross*, 419 F. App'x 357 (4th Cir. 2011)......................................................8

*Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88 (4th Cir. 2011).........................3

*Stratton v. Arch Coal, Inc.*, No. 5:16-cv-12204, 2017 WL 2312840 (S.D. W. Va.
    May 26, 2017)....................................................................................................9

*Talley v. Danek Med., Inc.*, 179 F.3d 154 (4th Cir. 1999) ............................................7

*Veolia Es Special Servs., Inc. v. Techsol Chem. Co.*, No. 3:07-0153, 2007 WL
    4255280 (S.D. W. Va. Nov. 30, 2007) .................................................................8

*Wenmoth v. Duncan*, No. 3:08-CV-182, 2009 WL 2707579 (N.D. W. Va. Aug.
    26, 2009) ............................................................................................................9

## STATE CASES

*Aikens v. Debow*, 541 S.E.2d 576 (W. Va. 2000)....................................................9, 10

*Arbaugh v. Bd. of Educ., Cnty. of Pendleton*, 591 S.E.2d 235 (W. Va. 2003) ............6, 7

*Ash v. Allstate Ins.*, No. 12-1533, 2013 WL 5676774 (W. Va. Oct. 18, 2013) ..............9

*Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513 (Mich. Ct. App. 1992)............2

*Duff v. Morgantown Energy Assocs.*, 421 S.E.2d 253 (W. Va. 1992) (per curiam).......3

*Gen. Pipeline Constr., Inc. v. Hairston*, 765 S.E.2d 163 (W. Va. 2014)........................7

*Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348 (W. Va. 1945) ...............................3

*Hendricks v. Stalnaker*, 380 S.E.2d 198 (W. Va. 1989) ..............................................3

*Hill v. Stowers*, 680 S.E.2d 66 (W. Va. 2009) (per curiam) ...........................................................7

*In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007)...........................................................................4

*Mahoney v. Walter*, 205 S.E.2d 692 (W. Va. 1974) .........................................................................2

*Miller v. Whitworth*, 455 S.E.2d 821 (W. Va. 1995) ........................................................................8

*Pickens v. Coal River Boom & Timber Co.*, 65 S.E. 865 (W. Va. 1909) .........................................3

*Robertson v. LeMaster*, 301 S.E.2d 563 (W. Va. 1983) ...................................................................7

*Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616 (W. Va. 1985)..........................................3

*West Virginia v. St. Clair*, 355 S.E.2d 418 (W. Va. 1987) .............................................................10

*Yourtee v. Hubbard*, 474 S.E.2d 613 (W. Va. 1996) ..................................................................7, 11

## OTHER AUTHORITIES

*Prosser & Keeton on the Law of Torts* § 86 (W. Page Keeton ed., 5th ed. 1984)............................2

Restatement (Second) of Torts § 821C(2) .........................................................................................4

W. Va. Code R. § 15-2-4 ....................................................................................................................5

W. Va. Code R. § 15-2-5.3 .................................................................................................................5

W. Va. Code § 16-3-6 .........................................................................................................................4

W. Va. Code § 30-5-6 .........................................................................................................................5

W. Va. Code § 30-5-21(a)...............................................................................................................9, 12

W. Va. Code § 30-5-30 .......................................................................................................................5

W. Va. Code § 60A-2-201(a)..............................................................................................................5

W. Va. Code § 60A-8-3 ......................................................................................................................6

W. Va. Code § 60A-8-9 ......................................................................................................................5

W. Va. Code § 60A-8-10 ....................................................................................................................5

W. Va. Code § 60A-8-11(a)................................................................................................................5

W. Va. Code § 60A-8-12(a)................................................................................................................5

W. Va. Code § 60A-8-14 ....................................................................................................................5

Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively, "Distributors") move to dismiss the Second Amended Complaint dated May 30, 2018, and submit the following brief in support of the motion.

## PRELIMINARY STATEMENT

The problem of opioid abuse is real, but the attempt by Cabell County (the "County") to fix liability on Distributors—who neither promote opioids to doctors nor provide them to patients—is misplaced.

The gist of the Complaint is that various opioid manufacturers—the "Marketing Defendants"—allegedly deceived doctors and the public by marketing opioid medications as non-addictive and effective for treating chronic pain.  But the Complaint contains no well-pled factual allegations that Distributors misled doctors or the public about opioid medications.  And for good reason:  Distributors are wholesalers, whose role in the pharmaceutical distribution chain is limited to filling orders placed by DEA-registered and state-licensed pharmacies and dispensaries.  They do not prescribe drugs to patients; doctors do that.  And they do not provide drugs to patients; pharmacists do that.  Against this backdrop, it is unsurprising that each of the County's claims fails as a matter of law.

## BACKGROUND

The federal regulatory backdrop against which this action is set is described in detail in Distributors' *Summit County* brief.  Cabell County's allegations, moreover, largely track the allegations made by Summit County in its Complaint.  Accordingly, Distributors incorporate by reference herein the "Background" section of their *Summit County* brief.  *See* Distributors' Mem.

in Supp. of Mot. to Dismiss Summit Cnty. Second Am. Compl., Dkt. 491-1 (May 25, 2018) ("Summit Br.") at 3–7.[1]

## ARGUMENT

### I. THE RICO CLAIM SHOULD BE DISMISSED.

For the reasons stated in the *Summit County* brief, the County's RICO claim against Distributors should be dismissed.  *See* Summit Br., Dkt. 491-1 at Part I.

### II. THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED.

The County's public nuisance claims fails for several independent reasons.

First, the West Virginia Supreme Court of Appeals has **never** recognized a public nuisance claim arising out of a defendant's distribution of a lawful product.  Public nuisance law was designed to protect the public's rights to use and enjoy public lands.[2]  While the Supreme Court of Appeals has held that "nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations," it has given no indication that this flexibility extends beyond the land use and environmental context:

> We have decided nuisance cases involving land being used for rock concerts, a school site near an airport, dust created by coal trucks, an automobile junk yard, a used car lot, a rail tramroad built on a public road, a house of prostitution, an automobile garage built out of inflammable materials, fences, coal smoke and soot emitted by a dye works plant, a carpenter shop with a steam engine, damage to property adjacent to a railroad track, a merry-go-round, an explosives factory, a

---

[1] Distributors also hereby adopt, as if set forth herein, the arguments made in support of the separate motions to dismiss filed today by the manufacturing defendants and the retail pharmacy defendants. Unless otherwise stated, all emphasis in quotations herein is added and citations and quotation marks are omitted from quotations.

[2] *Prosser & Keeton on the Law of Torts* § 86, at 618 (W. Page Keeton ed., 5th ed. 1984) ("If 'nuisance' is to have any meaning at all, it is necessary to dismiss a considerable number of cases which have applied the term to matters not connected either with land or with any public right, as mere aberration …."); *see also Mahoney v. Walter*, 205 S.E.2d 692, 697 (W. Va. 1974) (noting the "basic concept" of nuisance law, according to Blackstone, is "anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another"); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992) (observing that nuisance cases "almost universally concern the use or condition of property, not products").

house built partially on city property, noise from a factory, and an obstruction of a public road.

*Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616, 621 (W. Va. 1985).  Indeed, consistent with the above list, the West Virginia Supreme Court of Appeals has never upheld a common law public nuisance claim that sought to vindicate anything other than an interest in property or the environment.  This Court should resist the County's efforts to extend the doctrine of public nuisance far beyond its property law moorings.  *See* Summit Br., Dkt. 491-1 at Part II.[3]

Second, like Illinois, Ohio, and virtually every other jurisdiction, West Virginia requires that a ***public*** nuisance claim involve invasion of a ***public*** right.  *See Duff v. Morgantown Energy Assocs.*, 421 S.E.2d 253, 257 n.6 (W. Va. 1992) (per curiam) (adopting the Restatement's requirement of "unreasonable interference with a right common to the general public").[4] The Complaint does not even attempt to identify any public right with which Distributors interfered. For this fundamental reason, and as explained in greater detail in Distributors' *Summit County* and *City of Chicago* briefs, Cabell County's public nuisance claim fails as a matter of law.  *See* Summit Br., Dkt. 491-1 at Part II.B.1; Distributors' Mem. in Supp. of Mot. to Dismiss City of Chicago First Am. Compl. ("Chicago Br."), Dkt. 571-1 at Part I.

---

[3]  While the County makes the conclusory allegation that Distributors' conduct interfered "in the use and enjoyment of the public and private land comprising Plaintiff's corporate boundaries" and resulted in "environmental contamination," Compl. ¶¶ 893–894, it alleges no facts to support this claim.  This case is about personal injuries from the use of prescription drugs and the alleged consequences.  The County has not pled any facts to show the invasion of property rights or how prescription opioid drugs have contaminated the environment.

[4]  *See also Hendricks v. Stalnaker*, 380 S.E.2d 198, 200 (W. Va. 1989) (describing public nuisance as "that which affects the general public as public"); *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 354 (W. Va. 1945) (stating that a public nuisance "affects the general public" whereas a private nuisance "injures one person or a limited number of persons only"); *Pickens v. Coal River Boom & Timber Co.*, 65 S.E. 865, 866 (W. Va. 1909) ("There is no difference between [public and private] nuisance, except as they affect the public or only certain individuals."); *see also Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011) (a public right under West Virginia law is "an interest shared equally by members of the public").

Third, the only remedy available to a public entity pursuing a public nuisance claim is an *injunction* to abate the nuisance, not money damages.  Counties are authorized under West Virginia law to investigate certain public nuisances and "to apply to the circuit court of the county in which any such nuisance exists, or to the judge thereof in vacation, *for an injunction forthwith to restrain, prevent or abate such nuisance*."  W. Va. Code § 16-3-6.  This restriction to injunctive relief is consistent with the law in other jurisdictions.  *See In re Lead Paint Litig.*, 924 A.2d 484, 498–99 (N.J. 2007) ("[T]here is no right either historically, or through the *Restatement (Second)*'s formulation, for the public entity to seek to collect money damages in general."); *see also* Restatement (Second) of Torts § 821C(2) (Am. Law Inst. 1979) (stating that a "public official or public agency" may "maintain a proceeding *to enjoin*" a public nuisance).  Where, as here, a public entity "seek[s] damages rather than remedies of abatement," the Complaint fails to state a claim for public nuisance and should be dismissed.  *In re Lead Paint Litig.*, 924 A.2d at 502.

Moreover, "whether the tort be one of negligence *or nuisance* created with or without negligence of wrongful act, no plaintiff can recover damages for a tort from a person unless that latter person violated a duty owed to the plaintiff."  *In re Silver Bridge Disaster Litig.*, 381 F. Supp. 931, 968 (S.D. W. Va. 1974).  Because the County has not alleged any duty Distributors owed it, the County cannot recover damages.  *See infra* Part III.

## III.    THE NEGLIGENCE CLAIM SHOULD BE DISMISSED.

As in *Summit County*, Cabell County's negligence claim rests on an alleged duty to halt or report suspicious pharmacy orders.  *See, e.g.*, Compl. ¶¶ 9, 463–485, 933–936, 953–954, 957, 962–963.  As in *Summit County*, Cabell County's claim fails because these alleged duties (i) are purportedly contained in state and federal regulations for which there is no private right of

action, (ii) are unknown at common law, and (iii) do not run to the County.  *See* Summit Br., Dkt. 491-1 at Part III.B.

### A.  There Is No Private Right of Action To Enforce the Federal CSA or the WVCSA.

As set forth in Distributors' *Summit County* brief, the law is clear that there is no private right of action under the federal CSA.  *See* Summit Br., Dkt. 491-1 at Part III.B.1.

It is equally clear that the CSA's state-law analogue—West Virginia's Uniform Controlled Substances Act ("WVCSA")—likewise does not create a private right of action.  Like the federal CSA, the WVCSA requires distributors to maintain a system to detect and report suspicious orders to the BOP.  W. Va. Code R. § 15-2-5.3.[5]  Just as the federal CSA is administered only by the Attorney General and the DEA, only the West Virginia Board of Pharmacy ("BOP") administers the WVCSA.  *See* W. Va. Code § 60A-2-201(a).  The WVCSA empowers the BOP, among other things, to perform inspections of wholesale drug distributors, *id.* § 60A-8-11(a); file a written complaint, hold expedited hearings, and restrict, revoke or suspend a wholesale drug distributor's license, *id.* § 60A-8-10; and promulgate additional rules necessary "to carry out the purposes" of the WVCSA, *id.* § 60A-8-9.  Finally, the WVCSA allows for judicial relief—but only at the request of the BOP.  *Id.* § 60A-8-12(a) ("Upon proper application by the board, a court ... may grant an injunction ….").[6]  Nowhere does the statute permit a county to bring a private action to enforce the WVCSA.

---

[5]  The Complaint cites to a prior version of the provisions related to suspicious order monitoring.  Compl. ¶¶ 902, 933, 952, 957, 962 (citing W. Va. Code R. § 15-2-4).  Effective April 10, 2018, these provisions are contained in Section 15-2-5.

[6]  *See also* W. Va. Code § 60A-8-14 (WVCSA provision granting the BOP the authority to take enforcement actions against wholesale drug distributors "[i]n accordance with article five, chapter thirty of this code"); W. Va. Code § 30-5-6 (granting the BOP the powers and duties to, inter alia, "[i]nstitute appropriate legal action for the enforcement of the provisions of this article" and "[s]ue and be sued in its official name as an agency of this state"); *id.* § 30-5-30 (granting the BOP authority

- 5 -

**B.      The County Cannot Enforce the CSA or WVCSA Through the Common Law.**

The duty to monitor and report suspicious orders on which the County predicates its claim is unknown to the common law.   And the County cannot bootstrap the regulatory requirement to report suspicious orders into a ***state common law*** duty.

"[T]he mere fact that a statute defines due care does not in and of itself create a duty enforceable by tort law." *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) (Posner, J.) (emphasis omitted).  Under West Virginia law, statutory requirements can give rise to a common law duty only if "the statute creates an implied private cause of action." *Arbaugh v. Bd. of Educ., Cnty. of Pendleton*, 591 S.E.2d 235, 239 (W. Va. 2003) (dismissing negligence claim based on statute that lacked express or implied private right of action).   "The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action":

> (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; [and] (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme ….

*Id.*

None of these criteria is met here.  First, the WVCSA was not enacted to protect counties, as political subdivisions, from the costs of drug diversion.  Rather, "[t]he purpose of th[e] article is to protect the health, safety and general welfare ***of residents*** of this state."  W. Va. Code § 60A-8-3.  Second, based on the WVSCA's explicit text, the Legislature intended for the BOP to enforce the WVCSA, not political subdivisions.  Third, allowing a county to enforce its own

---

to "issue a notice to the person to cease and desist [violating the act] and/or apply to the circuit court in the county of the alleged violation for an order enjoining the act").

understandings of the WVCSA would be inconsistent with the existing legislative scheme—particularly where, as here, the BOP continues to register Distributors and has declined to take any enforcement action against them.

Moreover, where the Legislature has granted exclusive authority to a state agency to sue and enforce a statute, no private right of action exists.  *See Gen. Pipeline Constr., Inc. v. Hairston*, 765 S.E.2d 163, 171–72 (W. Va. 2014) ("Because of the Legislature's specificity in creating the cause of action in an agency of the State of West Virginia, we cannot say the Legislature intended also to infer the creation of a private cause of action in the plaintiffs."); *Hill v. Stowers*, 680 S.E.2d 66, 74 (W. Va. 2009) (per curiam) (an implied right of action to contest elections would "usurp the legislative scheme" where the scheme established a "comprehensive and detailed procedure" to dispute results).  As explained above, the BOP has been granted exclusive authority to enforce the WVCSA.  Accordingly, there is no implied common law duty to halt or report suspicious pharmacy orders under West Virginia law.[7]

### C.    The County Has Not Identified a Duty Owed to *the County*.

The County's duty allegations also fail for another reason:  the Complaint fails to identify any duty that Distributors owed **to the County**.  Under West Virginia law, a claim of negligence does not lie unless the defendant owes a duty that runs to the plaintiff.  *See, e.g.*, *Yourtee v. Hubbard*, 474 S.E.2d 613, 619 (W. Va. 1996) ("[A] common law negligence theory cannot proceed unless there is a duty owed by the alleged culpable person **to the injured person**."); *Robertson v. LeMaster*, 301 S.E.2d 563, 567 (W. Va. 1983) ("[T]his duty must be brought home **to the particular plaintiff**, for a duty owing to everybody can never become the foundation of an

---

[7]    The County also alleges negligence *per se*, but the law is equally clear that such a claim is not cognizable if the relevant statute lacks a private right of action.  *Talley v. Danek Med., Inc.*, 179 F.3d 154, 158 (4th Cir. 1999) ("The negligence per se doctrine … is not a magic transforming formula that automatically creates a private right of action for the civil enforcement, in tort law, of every statute."); *see also Arbaugh*, 591 S.E.2d at 239.

action until some individual is placed in position which gives him particular occasion to insist upon its performance.").  For substantially the reasons explained in the *Summit County* brief, Distributors did not owe any reporting or other duty to Cabell County.  *See* Summit Br., Dkt. 491-1 at Part III.B.4.  Nor do Distributors have a duty under West Virginia law to control the conduct of third parties, particularly third parties engaged in illegal conduct, further down the supply chain from Distributors.  *See Miller v. Whitworth*, 455 S.E.2d 821, 825 (W. Va. 1995) ("Generally, a person does not have a duty to protect others from the deliberate criminal conduct of third parties.").  For these reasons, too, the County's negligence claim fails.  *See id.*

## IV.    THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The County's unjust enrichment claim fails for substantially the reasons explained in the *Summit County* and *City of Chicago* briefs.  *See* Summit Br., Dkt. 491-1 at Part V; Chicago Br., Dkt. 571-1 at Part V; *see also Johnson v. Ross*, 419 F. App'x 357, 362 (4th Cir. 2011) ("Plaintiffs cite no West Virginia case establishing that an unjust enrichment action can be sustained against the indirect recipient of a benefit conferred by a plaintiff."); *Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 472–75 (S.D. W. Va. 2013) (dismissing unjust enrichment claims against drug manufacturer because "[b]etween Defendants' alleged misleading marketing and Plaintiffs' prescription reimbursements lies a vast array of intervening events"); *Veolia Es Special Servs., Inc. v. Techsol Chem. Co.*, No. 3:07-0153, 2007 WL 4255280, at *10 (S.D. W. Va. Nov. 30, 2007) (unjust enrichment claim dismissed where allowing plaintiff "to move forward on an unjust enrichment claim with the mere suggestion of negligence, would effectively permit the plaintiff to indirectly assert a tort claim while circumventing essential tort principles").

## V.      THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

Civil conspiracy claims sounding in fraud—like those made by the County here, Compl. ¶ 1010—must be pled with particularity.  *See Heavener v. Quicken Loans, Inc.*, No. 3:12-CV-68, 2012 WL 13028627, at *3 (N.D. W. Va. Nov. 7, 2012); Summit Br., Dkt. 491-1 at Part VI.  The County fails to allege with the requisite particularity that any Distributor (1) acted with an intent to achieve an illegal goal, (2) undertook an act in furtherance of the alleged conspiracy, or (3) committed an underlying intentional tort.  As under Ohio law, these failures are fatal under West Virginia law.  *See Stratton v. Arch Coal, Inc.*, No. 5:16-cv-12204, 2017 WL 2312840, at *5 (S.D. W. Va. May 26, 2017); *Heavener*, 2012 WL 13028627 at *3; *Ash v. Allstate Ins.*, No. 12-1533, 2013 WL 5676774, at *5 (W. Va. Oct. 18, 2013); *Wenmoth v. Duncan*, No. 3:08-CV-182, 2009 WL 2707579, at *5 (N.D. W. Va. Aug. 26, 2009), *aff'd per curiam*, 382 F. App'x 271 (4th Cir. 2010); *see also* Summit Br., Dkt. 491-1 at Part VI.

## VI.     THE STATE-LAW CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS.

In addition to the defects identified above, the County's state-law claims run afoul of the economic loss and free public services doctrines, fail adequately to allege proximate cause, and are barred by West Virginia Code section 30-5-21(a).

### A.      The Economic Loss Doctrine Bars the County's Claims.

West Virginia has adopted the "economic loss rule," pursuant to which a plaintiff cannot recover in tort for purely economic losses.  *See Aikens v. Debow*, 541 S.E.2d 576, 584 n.4 (W. Va. 2000).  For substantially the reasons explained in the *Summit County* brief, Cabell County's claims are barred by the economic loss doctrine.  *See* Summit Br., Dkt. 491-1 at Part IV.A; *see also* Compl. ¶¶ 19, 682–683, 882, 916–917, 964–965.  To be sure, West Virginia recognizes an exception to the economic loss doctrine where there is a contractual or "special relationship"

between the plaintiff and the alleged tortfeasor.  *Aikens*, 541 S.E.2d at 590.  Distributors and the County, however, are strangers to one another, and thus no special relationship could possibly exist between the two.

   **B.     The Free Public Services Doctrine Bars the County's Claims.**

   The "free public services doctrine" precludes municipalities from recovering in tort for the cost of providing public services to their citizens.  For substantially the reasons explained in Distributors' *City of Chicago* brief, the doctrine also bars the claims asserted by Cabell County. *See* Chicago Br., Dkt. 571-1 at Part III.C.

   The dominant rule throughout the country is that local governments are precluded from asserting claims for damages against private entities seeking reimbursement for police, medical, and other costs incurred in the performance of public duties—even where those costs are allegedly in excess of what the government body would otherwise need to spend and even where the defendants allegedly created an ongoing nuisance.  *See id.*  Without invoking it by name, West Virginia's highest court has adopted the free public services doctrine, holding that "a public charge on the county" cannot "be collected" from an allegedly responsible third party absent "statutory authority."  *West Virginia v. St. Clair*, 355 S.E.2d 418, 419–20 (W. Va. 1987). "Allowance and recovery of costs was ***unknown at common law***, and therefore only costs ***specifically allowed by statute*** may be recovered."  *Id.* at 420.

   Here, the County does not identify any statutory authority for its claims—nor could it. Accordingly, its efforts to recover from Distributors quintessentially public expenditures—i.e., "expenses for police, emergency, health, prosecution, corrections, rehabilitation, and other services," *e.g.*, Compl. ¶¶ 916, 964—are barred by the free public services doctrine.

- 10 -

**C.      The Direct Injury Test Requires Dismissal of the County's Claims.**

For the reasons explained in Distributor's *Summit County* brief, Cabell County fails adequately to plead the required element of proximate causation.  *See* Summit Br., Dkt. 491-1 at Part IV.C.

The *Holmes* direct injury test—which requires a "direct relation between the injury asserted and the injurious conduct alleged"—applies to claims under West Virginia law.  *See, e.g.*, *Bristol Myers Squibb Co.*, 969 F. Supp. 2d at 472–75 ("The Court finds that Plaintiffs' claims do not satisfy the 'direct relation' test found in *Holmes* ….  Between Defendants' alleged misleading marketing and Plaintiffs' prescription reimbursements lies a vast array of intervening events, including the 'independent medical judgment' of doctors).

In *Bertovich v. Advanced Brands & Importing Co.*, No. 5:05CV74, 2006 WL 2382273 (N.D. W. Va. Aug. 17, 2006), parents of minor children brought claims against brewers and distillers for sums spent by the minors who illegally bought alcoholic beverages.  The court dismissed the action because, among other reasons, the complaint "contains no allegation that directly links the Defendants' actions or omissions to the [parents'] alleged injury."  *Id.* at *9.

West Virginia, moreover, recognizes the rule that the "criminal act[s]" of intervening parties breaks the chain of causation.  *Yourtee*, 474 S.E.2d at 620.  *Bertovich* is again instructive.  The court observed that brewers and distillers "are not able to sell their products directly to individual customers.  They may only sell their products to wholesalers approved by the State of West Virginia, who in turn may then sell their products to retailers, who may then sell the products to consumers."  *Id.* at *11.  The court concluded that for any injury to result from defendants' conduct, "at least two levels of third parties must intervene by violating the law.  Both the underage consumer and some of-age adult or retailer must conspire to illegally obtain alcohol for the Plaintiff's child."  *Id.*  Distributors, likewise, do not sell their products directly to

- 11 -

individual customers, and any injury to the County necessarily involves intervening third-party misconduct, whether by retail pharmacies who dispense opioids without a valid prescription, doctors who mis-prescribe, or individuals who divert or misuse the drugs.

For these reasons, as well as the reasons explained in the *Summit County* brief, The County fails adequately to plead the required element of proximate causation.[8] *See* Summit Br., Dkt. 491-1 at Part IV.C.[9]

### CONCLUSION

For the foregoing reasons, Cabell County's claims should be dismissed with prejudice.

---

[8]  As set forth more fully in the manufacturing defendants' *Summit County* brief, the County's claims are also too speculative to satisfy but-for causation because it has not alleged any facts suggesting that, had Distributors reported suspicious orders to the DEA, then the DEA would have relied on those reports and taken action that would have prevented opioid diversion. *See* Dkt. 499-1 at 28–29. Nor has the County alleged that, if one of the Distributors (or even all four) had refused to ship any particular order to a pharmacy, that pharmacy would not otherwise have been able to acquire the medications.

[9]  Distributors adopt and incorporate herein the arguments made in the retail pharmacies' motion to dismiss Cabell County's complaint at Part II.E that the County's claims are barred by West Virginia Code § 30-5-21(a).

Dated:  June 8, 2018                              Respectfully submitted,


*/s/ Robert A. Nicholas*                          */s/ Enu Mainigi*
Robert A. Nicholas                                Enu Mainigi
Shannon E. McClure                                F. Lane Heard III
**REED SMITH LLP**                                Steven M. Pyser
Three Logan Square                                Ashley W. Hardin
1717 Arch Street, Suite 3100                      **WILLIAMS & CONNOLLY LLP**
Philadelphia, PA 19103                            725 Twelfth Street, N.W.
Tel: (215) 851-8100                               Washington, DC 20005
Fax: (215) 851-1420                               Tel: (202) 434-5000
rnicholas@reedsmith.com                           Fax: (202) 434-5029
smcclure@reedsmith.com                            emainigi@wc.com
                                                  lheard@wc.com
*Counsel for AmerisourceBergen Corporation*       spyser@wc.com
*and AmerisourceBergen Drug Corporation*          ahardin@wc.com


*/s/ Geoffrey Hobart*                             *Counsel for Cardinal Health, Inc.*
Geoffrey Hobart
Mark Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com


*Counsel for McKesson Corporation*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order Number Four (Dkt. 485, May 22, 2018), Distributors are permitted to file motions to dismiss totaling 150 pages across the following five local government cases set for briefing:

- *Summit County, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090;
- *City of Chicago, Illinois v. Cardinal Health, Inc., et al.*, No. 18-op-45281;
- *Cabell County Comm'n, West Virginia v. AmerisourceBergen Drug Corp. et al.*, No. 17-op-45053;
- *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, No. 18-op-4515;
- *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332;

This brief adheres to the limits set forth in Case Management Order Number Four, as the combined briefing in all five cases is 148 pages.

*/s/ Ashley W. Hardin*
Ashley W. Hardin

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Ashley W. Hardin*
Ashley W. Hardin