**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*<br>Case No. 17-op-45053-DAP | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT**
**OF CARDINAL HEALTH'S MOTION TO DISMISS**
**<u>SECOND AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................1

ARGUMENT.........................................................................................................................4

I.  THE COUNTY'S CLAIMS ARE BARRED BY *RES JUDICATA*. ..................................4

II.  THE STATE RELEASED THE *PARENS PATRIAE* CLAIMS.........................................9

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394 (8th Cir. 1990) ...........................................8, 9

*Keith v. Aldridge*, 900 F.2d 736 (4th Cir. 1990) .........................................................4, 5

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996).........................................................6

*N.Y.C. v. Beretta USA*, 315 F. Supp. 2d 256 (E.D.N.Y. 2004)........................................................8

*Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981) ..................................4, 6, 7

*Sierra Club v. Two Elk Generation Partners, L.P.*, 646 F.3d 1258 (10th Cir. 2011).....................9

*St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.*, 500 F. Supp. 2d 592 (E.D. La. 2007) ......................................................8, 9

*United States v. Olin Corp.*, 606 F. Supp. 1301 (N.D. Ala. 1985) ..............................................8, 9

## STATE CASES

*Beahm v. 7 Eleven, Inc.*, 672 S.E.2d 598 (W. Va. 2008) (per curiam) ...............................4, 5, 6, 9

*Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41 (W. Va. 1997)....................................4, 5

*Cater v. Taylor*, 196 S.E. 558 (W. Va. 1938) ................................................................6

*In re McIntosh's Estate*, 109 S.E.2d 153 (W. Va. 1959) ..................................................4

*State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625 (W. Va. 2013)...........................7

*W. Va. Human Rights Comm'n v. Esquire Grp., Inc.*, 618 S.E.2d 463 (W. Va. 2005) (per curiam) ..............................................................................6

## OTHER AUTHORITIES

W. Va. Code § 60A-1-101 *et seq.* ...................................................................1

W. Va. R. Civ. P. 20 ...............................................................................5

## INTRODUCTION

In 2012, acting on behalf of the State of West Virginia ("the State") and all of its citizens, the Attorney General of West Virginia sued Cardinal Health for allegedly flooding the state with opioid medications.  Thereafter, he sued 14 other distributors, including H.D. Smith.  The Attorney General's lawsuit alleged that Cardinal Health failed to monitor and report suspicious orders for opioid medications, and it asserted claims for violations of the West Virginia Uniform Controlled Substances Act, W. Va. Code § 60A-1-101 *et seq.* ("WVCSA") (and regulations thereunder), negligence, public nuisance, and unjust enrichment.  In January 2017, the Attorney General and Cardinal Health settled the lawsuit, and the Circuit Court of Boone County, West Virginia dismissed it with prejudice.

These simple facts mean that this case is barred by the doctrine of *res judicata*.  That doctrine precludes the re-litigation of (i) the same or similar claims (ii) by a party in privity with the State (iii) where there has been a final adjudication on the merits of the prior claims.  Cabell County ("the County")—a political subdivision of the State—asserts the very same claims made by the State in its 2012 lawsuit, which ended with an order dismissing the lawsuit with prejudice. The County's claims therefore should be dismissed in their entirety with prejudice.

## BACKGROUND

On June 26, 2012, the State filed suit against Cardinal Health in Boone County alleging that the company failed to report suspicious orders to the West Virginia Board of Pharmacy ("BOP") and distributed excessive quantities of prescription opioids into the State between 2007 and 2012.[1]  The State alleged from the beginning that there is an "epidemic of prescription drug

---

[1]  Compl., *West Virginia ex rel. McGraw v. Cardinal Health, Inc.*, No. 12-C-140 (W. Va. Cir. Ct. Boone Cnty. June 26, 2012) ("State Compl.") (attached to Request for Judicial Notice ("RJN") as Ex. 1).  The State's Complaint was amended twice.  *See* Am. Compl., *West Virginia ex rel. Morrisey v. Cardinal Health, Inc.*, No. 12-C-140 (W. Va. Cir. Ct. Boone Cnty. Jan. 9, 2014) ("State FAC") (attached to RJN as Ex. 2);

abuse" that has devastated communities across West Virginia, reduced the state's economic productivity, and imposed costs on the state's hospitals, schools, courts, social service agencies, jails, and prisons.  State Compl. ¶ 1.  The State further alleged that Cardinal Health, "[a]s a major distributor of controlled substances in West Virginia, … supplied controlled substances to rogue drugstores which dispense controlled substances based on bogus prescriptions from unethical physicians who are prescribing controlled substances for illegitimate medical purposes."  *Id*. ¶ 13.

The State asserted claims for violations of the WVCSA, alleging that Cardinal Health "failed to provide effective controls and procedures to guard against diversion of controlled substances in contravention of West Virginia law," and, more specifically, "failed to diligently respond to the suspicious orders" it received.  State Compl. ¶ 19.  The State also asserted a claim for negligence, alleging that Cardinal Health failed to "know its customers," *id.* ¶ 28, and "turned a blind eye towards the actual facts by regularly distributing large quantities of controlled substances to customers [i.e., pharmacies] who are serving a customer base comprised of individuals who are themselves abusing prescription medications," *id.* ¶ 29.  The State further asserted a claim for public nuisance, alleging that with knowledge of the "epidemic" Cardinal Health distributed controlled substances "in such quantities and with such frequency that [it] knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes," *id.* ¶ 45, thereby damaging "the health and safety of West Virginia citizens," *id.* ¶ 47.  Finally, the State asserted a claim for unjust enrichment, alleging that Cardinal Health had been enriched because the State is responsible for "costs of prescriptions, health care and other medically-related costs, rehabilitation and work-related programs, workers' compensation, public

---

Second Am. Compl., *West Virginia ex rel. Morrisey v. Cardinal Health, Inc.*, No. 12-C-140 (W. Va. Cir. Ct. Boone Cnty. Aug. 11, 2015) ("State SAC") (attached to RJN as Ex. 3).

insurance, law enforcement, prosecution costs, court related costs, public defender services, correctional institutions, probation and parole services, which costs have substantially increased as the result of [Cardinal Health's] acts and omissions."  *Id.* ¶ 51.

The State's First and Second Amended Complaints amplified these allegations.  The State alleged that its purpose was "to protect West Virginia communities," in part by enjoining Cardinal Health "from distributing controlled substances without sufficient monitoring and controls of suspicious orders, and by requiring notice to the State in order to prevent the creation and operation of pill mills or distribution to any other suspicious prescription drug retailers," State SAC ¶ 7; *accord* State FAC ¶ 4, and by further requiring Cardinal Health "to actually strictly follow its suspicious orders protocol," State SAC ¶ 7.  Concerning its public nuisance claim, the State alleged that Cardinal Health's conduct had "caused ongoing damage, hurt or inconvenience to the public health, the public safety and the general welfare of the citizens of West Virginia."  State FAC ¶ 47; State SAC ¶ 50.

On January 9, 2017, the State executed a Settlement Agreement and Release with Cardinal Health on behalf of "each and every" State agency, department and instrumentality, including "any agency, person, or other entity claiming by or through them or any of them."  *See* Settlement Agreement and Release ("Release") at 1 (Jan. 9, 2017) (attached to RJN as Ex. 4).  That same day the Circuit Court of Boone County entered an order dismissing the State's claims against Cardinal Health with prejudice.  *See* Order of Dismissal with Prejudice, *West Virginia ex rel. Morrisey v. Cardinal Health, Inc.*, No. 12-C-140 (Boone Cnty. W. Va. Cir. Ct. Jan. 9, 2017) (attached to RJN as Ex. 5).[2]

---

[2]  H.D. Smith settled the State's lawsuit against it on December 28, 2016.  The arguments made herein on behalf of Cardinal Health therefore equally apply to H.D. Smith, and H.D. Smith hereby joins this motion.  *See* H.D. Smith Settlement Agreement (attached to RJN as Ex. 8).

The Settlement Agreement and Release defined "Released Claims" as including "any and all claims ..., known and unknown, ... which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity ... against the Released Entities or any of them growing out of, relating to, or concerning the Litigation now pending before the Circuit Court of Boone County, West Virginia," as well as "claims relating to any act, conduct, error, or omission in distributing controlled substances in West Virginia ...."  Release at 5.  The Settlement Agreement and Release further recited that the litigation was brought "pursuant to the State's *parens patriae* authority to recover damages allegedly suffered by the State."  *Id.* at 2.

## ARGUMENT

## I.    THE COUNTY'S CLAIMS ARE BARRED BY *RES JUDICATA*.

The *res judicata* doctrine applies when:  (1) there was a final judgment on the merits in the first lawsuit, (2) the current lawsuit asserts claims identical to those in the first lawsuit, or claims that could have been resolved in that action, had they been presented, and (3) the current lawsuit involves the same parties or persons in privity with those parties.  *Beahm v. 7 Eleven, Inc.*, 672 S.E.2d 598, 601–02 (W. Va. 2008) (per curiam); *Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41, 44 (W. Va. 1997).  This case satisfies all three conditions.

1.    There was a final adjudication on the merits of the State's lawsuit because the Circuit Court of Boone County dismissed the case with prejudice upon its settlement by the parties.  An order dismissing a case with prejudice pursuant to settlement is "a final judgment on the merits for res judicata purposes."  *Keith v. Aldridge*, 900 F.2d 736, 742 (4th Cir. 1990); *see also In re McIntosh's Estate*, 109 S.E.2d 153, 157–58 (W. Va. 1959); *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486–87 (4th Cir. 1981) (consent decree of judgment supports the final judgment requirement for *res judicata*).

2.    The claims asserted by the County in this case are "virtually identical" in three

4

respects to those asserted by the State.  *Beahm*, 672 S.E.2d at 604.  First, the causes of action are the same.  The State's complaints contained counts for violations of the WVCSA regulations, negligence, public nuisance, and unjust enrichment, and so does the County's complaint.[3]  Second, the test for *res judicata* is satisfied if that claim "could have been resolved, had it been presented, in the prior action."  *Beahm*, 672 S.E.2d at 604 (quoting *Blake*, 498 S.E.2d at 44, 49).  All of the County's claims arise out of Cardinal Health's distribution of opioid medications to pharmacies in the County and concern Cardinal Health's alleged failure, at a minimum, to report suspicious orders.  Thus, even to the extent that the County asserts new causes of action—e.g., RICO, civil conspiracy—they arise out of a subset of "the same ... series of transactions" that were the subject of the State's lawsuit.  *Keith*, 900 F.2d at 740 ("[W]e have adopted a transactional approach to the identity of claims question—'the appropriate inquiry is whether the new claim arises out of [the] same transaction or series of transactions as the claim resolved by the prior judgment.'").  Nothing prevented the County from presenting its claims then.  Indeed, West Virginia Rule of Civil Procedure 20 authorizes parties to join an action if they have claims arising out of "the same … series of transactions."  W. Va. R. Civ. P. 20.  Third, one further test "to determine if the ... cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues."  *Beahm*, 672 S.E.2d at 604 (ellipses in original) (quoting *Blake*, 498 S.E.2d at 48).  Here, the claims in both cases unmistakably rest on the same alleged facts.  Both the State and the County allege that (i) Cardinal Health supplied such large quantities of opioid medications in the state that it should have known that the drugs were being diverted to improper use and also that (ii) Cardinal Health failed to monitor and report to the State the

---

[3]    *Compare* State Compl., ¶¶ 14–31, 42–48, 54–63; State FAC, ¶¶ 19–34, 44–55, 56–65; State SAC, ¶¶ 22–37, 47–58, 59–68, *with* Cabell Cnty. Second Am. Compl. ("Cabell Compl.") ¶¶ 887–929, 930–973.

suspicious pharmacy orders that accounted for those large quantities.[4]  The County therefore will rely on the same evidence as did the State in the prior case.

      3.     The County is in privity with the State.  The law is clear that "[a] plaintiff cannot ... escape the application of *res judicata* ... simply because [it] was not formally joined as a party in the prior litigation." *Beahm*, 672 S.E.2d at 602.  The law looks to the relationship of the parties allegedly in privity and asks whether they have a "mutual … relationship to the same rights of property," *id.* (quoting *W. Va. Human Rights Comm'n v. Esquire Grp., Inc.*, 618 S.E.2d 463, 469 (W. Va. 2005) (per curiam) (quoting *Cater v. Taylor*, 196 S.E. 558, 558 (W. Va. 1938))), or whether they share the same legal right, such that "the interests of the party again[st] whom [the] preclusion is asserted have been adequately represented," *id.* (quoting *W. Va. Human Rights Comm'n*, 618 S.E.2d at 470).  The Supreme Court of Appeals of West Virginia has captured these related concepts in the doctrine of "virtual representation," which bars re-litigation of a claim "that has once been adequately tried by a person sharing ***a substantial identity of interests*** with a nonparty." *Id.* at 603 (emphasis added) (internal quotation marks and citation omitted).[5]

      The Fourth Circuit applied the virtual representation doctrine to bar a North Carolina school district from pursuing the same claims previously litigated by the North Carolina Attorney General.  *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981).  In *Nash*, the Attorney General brought and settled a suit against nine dairy companies alleging that they acted in restraint of trade in the sale of milk products to North Carolina public school systems.  The Nash County Board of Education then brought a lawsuit alleging the same antitrust conspiracy under

---

[4]    State Compl. ¶¶ 1, 19, 28–29, 45–46; State FAC ¶¶ 1, 6, 23, 31–32, 52–53; State SAC ¶¶ 1, 9, 26, 34–35, 55–56; Cabell Compl. ¶¶ 463–564.

[5]    *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996) ("[28 U.S.C. § 1738] directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state.").

federal, rather than state, law.  The district court granted summary judgment to the defendants on *res judicata* grounds, and the Court of Appeals affirmed.  The court handily found the first two requirements met, *id.* at 488,[6] and, as regards the privity requirement, held that "we have no difficulty in finding the appellant School District in privity with the Attorney General, in instituting the earlier state court proceeding," *id.* at 494.  The Attorney General had common law authority to sue as a representative of the State or any of its political subdivisions, and he had sought to recover overpayments for dairy products where the money came in part "from the coffers of state government and the state itself had a direct stake in the litigation." *Id.* at 495.

The same is true here.[7]  While, unlike here, the North Carolina Attorney General declared that he was suing on behalf of each public school system, the Fourth Circuit did not find (and did not say that it was important to know) that the Attorney General had recovered monies paid by the school districts or had shared any part of the recovery with the school districts.  The requisite "unity of interest" existed where both the State and the school district had overpaid as a result of the defendants' conduct, and the Attorney General sued for damages.  *Id.* ("We cannot imagine a factual setting more clearly demonstrative of the requisite unity [of] interest in both suits.").

Here, the State even more clearly acted as the County's virtual representative for *res judicata* purposes, because it sued Cardinal Health, and settled with it, in the State's *parens patriae*

---

[6]   The court also held that "[u]nder established precedent, the identity of two actions, as intimately tied together as these two, will not be destroyed in the res judicata context simply because the two suits are based on different statutes."  *Nash*, 640 F.2d at 488.

[7]   In West Virginia, "the Office of Attorney General retains inherent common law powers, when not expressly restricted or limited by statute."  *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625, 645 (W. Va. 2013).

capacity.  The State expressly asserted that authority,[8] the circuit court acknowledged it,[9] and the parties recited it in the Settlement Agreement and Release that served as the basis for the circuit court's dismissal of the case with prejudice.  The State released all claims "the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity …."  *See* Release at ¶ 1.  "The weight of authority," the courts have said, "indicates that once a state represents all of its citizens in a *parens patriae* suit, a consent decree or final judgment entered in such a suit is conclusive upon those citizens and is binding upon their rights."  *United States v. Olin Corp.*, 606 F. Supp. 1301, 1304, 1308 (N.D. Ala. 1985) (*res judicata* barred case by group of Alabama citizens where the United States and Alabama had previously sued and settled with defendant for the same claims; the United States and Alabama "were suing in a *parens patriae* capacity as a representative of all of its citizens" because they had sued "to eliminate the alleged public nuisance created by the presence of DDT pollution which was alleged to have caused injury to the wildlife, natural resources, health and welfare of Alabama residents in the subject area"); *E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394, 1403–05 (8th Cir. 1990) (*res judicata* barred a  private enforcement action where E.P.A. had concluded by consent decree a government enforcement action involving the same subject matter); *St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.*, 500 F. Supp. 2d 592, 604 (E.D. La. 2007), *opinion adhered to as modified on denial of reconsideration*, 2007 WL 3256463 (E.D. La. Nov. 5, 2007) ("When either a state or federal government asserts *parens patriae* authority, courts have held that 'it can bind the citizens of a state as privies for *res judicata* purposes.'" (quoting *N.Y.C. v. Beretta USA*, 315 F. Supp. 2d 256,

---

[8]    Plaintiff's Reply Memorandum in Support of Motion to Remand and for Costs, *State of West Virginia ex rel. McGraw v. Cardinal Health, Inc.*, No. 2:12-CV-03836, at 3 (S.D. W. Va. Oct. 1, 2012) (attached to RJN as Ex. 6).

[9]    *See* Order Denying Motion to Dismiss, *West Virginia ex rel. McGraw v. Cardinal Health, Inc.*, No. 12-C-140, ¶¶ 28–34 (W. Va. Cir. Ct. Boone Cty. Apr. 17, 2015) ("State Order") (attached to RJN as Ex. 7).

265 (E.D.N.Y. 2004))).[10]  That result follows from the principle that "[i]n a proper *parens patriae* action, a state is deemed to represent all of its citizens."  *Olin Corp.*, 606 F. Supp. 2d at 1305.

In sum, there is a unity of interest between the State and the County from the simple fact that the County is a political subdivision of the State.  It is also plain from the face of the respective complaints that the State and the County share a substantial identity of interests in seeking redress for the opioid "epidemic," for they each assert the same facts and assert the same claims.  *See Beahm*, 672 S.E.2d at 603 ("[T]he only reasonable conclusion is that these Appellants have been adequately represented" because the prior litigant "advanced substantially the same proof in both cases.").  Moreover, by suing in its *parens patriae* capacity to address an alleged public nuisance, the State acted on behalf of the County and all of its citizens.  *Res judicata* thus bars the County's claims against Cardinal Health.

## II.    THE STATE RELEASED THE *PARENS PATRIAE* CLAIMS.

The State released all claims "which [it] has asserted or could have asserted on its own behalf or in its *parens patriae* capacity that the State now has or may have in the future against [Cardinal Health] growing out of, relating to, or concerning" the State's lawsuit.  *See* Release at 5. It did so for "each and every" State agency, department and instrumentality, including "any agency, person, or other entity ***claiming by or through them or any of them***."  *Id*. at 1 (emphasis added). This language acts to release two sets of claims in this case.

First, the Release bars the County's nuisance claim.  The State's nuisance claim involved alleged "damage, hurt or inconvenience to the public health, the public safety and the general

---

[10]    In the context of the Clean Water Act, the courts have found that the *res judicata* and *parens patriae* doctrines bar an enforcement action by private citizens even where the government's enforcement action was the later-filed case.  *Sierra Club v. Two Elk Generation Partners, L.P.*, 646 F.3d 1258 (10th Cir. 2011); *Green Forest*, 921 F.2d at 1403–05; *St. Bernard Citizens*, 500 F. Supp. 2d at 604.

welfare of the citizens of West Virginia," State FAC ¶ 47; State SAC ¶ 50—language that mirrors the County's nuisance claim, which alleges unreasonable interference "with the public health, welfare, and safety in Plaintiff's Community."  Cabell Compl. ¶ 890.  Thus, acting in its *parens patriae* capacity, the State did assert a nuisance claim on behalf of the County, but, even it did not, it could have.

Second, the State's release of claims "growing out of, relating to, or concerning" its lawsuit by "any ... entity claiming by or through" any State agency encompasses the County's claims for violation of the WVCSA and for negligence.  The WVCSA invests the BOP with exclusive authority to enforce the Act.  To the extent that the County can sue to enforce the Act and its regulations (if it can do so at all),[11] the County acts in aid of the BOP and necessarily "through" it, as the BOP alone has authority to "administer the provisions of this chapter."  But because the State has released any and all claims by any entity claiming through the BOP, the County's claims pursuant to the Act, which include its negligence claim,[12] cannot proceed.

## CONCLUSION

For the foregoing reasons, Cardinal Health respectfully requests that the Court dismiss all of the County's claims against it.

---

[11]  It cannot.  *See* Distributors' Mem. in Supp. of Mot. to Dismiss Cabell Cnty. Second Am. Compl., Dkt. 575-1 at Part III.A–B.

[12]  The County's negligence claim is nothing other than a claim for failure "to design and operate a system to disclose to the registrant suspicious orders of controlled substances and inform the West Virginia Board of Pharmacy of suspicious orders when discovered," *see, e.g.*, Cabell Compl. ¶¶ 933, 950–60—namely, a breach of the duty imposed by the West Virginia Controlled Substances Act.

Dated:  June 8, 2018

Respectfully submitted,

<table>
<tr>
<td>

<u>/s/ Enu Mainigi</u>
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

</td>
<td>

<u>/s/ Dean T. Barnhard</u>
Dean T. Barnhard
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 231-7501
Fax: (317) 231-7433
dean.barnhard@btlaw.com

*Counsel for H.D. Smith*

</td>
</tr>
</table>

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order Number Four (Dkt. 485, May 22, 2018), Distributors are permitted to file motions to dismiss totaling 150 pages across the following five local government cases set for briefing:

- *Summit County, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090;
- *City of Chicago, Illinois v. Cardinal Health, Inc., et al.*, No. 18-op-45281;
- *Cabell County Comm'n, West Virginia v. AmerisourceBergen Drug Corp. et al.*, No. 17-op-45053;
- *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, No. 18-op-4515;
- *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332;

This brief adheres to the limits set forth in Case Management Order Number Four, as the combined briefing in all five cases is 148 pages.

*/s/ Ashley W. Hardin*
Ashley W. Hardin

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Ashley W. Hardin*
Ashley W. Hardin