# Exhibit 2

IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY,**
Attorney General, **JOSEPH THORNTON,**
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT
OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING,** in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF
HEALTH & HUMAN RESOURCES,** an agency
of the State of West Virginia,

        Plaintiffs,

v.

        Civil Action No.12-C-140
        (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.,**
an Ohio corporation doing business in
West Virginia,

        Defendant.

## AMENDED COMPLAINT

For their Amended Complaint, the State of West Virginia, at the relation of its duly-

elected Attorney General Patrick Morrisey, and Secretary Joseph Thornton, and Secretary Karen

Bowling of two of its agencies, the West Virginia Department of Military Affairs and Public

Safety, and the West Virginia Department of Health & Human Resources, state the following:

### I.

### Summary of Action

1.     This civil action addresses the epidemic of prescription drug abuse and its

costs.  Prescription drug abuse costs the State of West Virginia hundreds of millions of dollars

1

annually.  Beyond the actual dollars lost, prescription drug abuse devastates families, communities and reduces the State's economic productivity.  Prescription drug abuse adversely affects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the very quality of life in our cities and towns.  Accordingly, the State, both by its Attorney General and two of its agencies, brings this action against a party whom they have identified as having substantially contributing to and which has substantially, illicitly and tortiously benefitted financially from the prescription drug abuse problem in West Virginia.

2.      The Defendant herein named distributes various prescription drugs closely identified with the prescription drug abuse problem in West Virginia.  This Defendant was on notice of the growing West Virginia epidemic from the abuse of those prescription drugs which it supplied and of the quantities and frequency with which those drugs were distributed to entities in West Virginia.  Notwithstanding their knowledge and the Defendant's attendant duties as required by West Virginia law and industry customs and practices this Defendant inserted itself as an integral part of the pill mill process which fuels this epidemic.  For reasons which are more specifically set forth in the following causes of actions this Defendant is answerable in damages to the State of West Virginia and is susceptible to such other relief as is requested herein.

a.      This Defendant acted negligently, recklessly, and in contravention of West Virginia law including violations of State statutes and regulations that govern the distribution of controlled substances and consumer protection.  While so acting, this Defendant received substantial revenue when engaging in the wholesale distribution of controlled substances in West Virginia and regularly supplying West Virginia pill mills.

-2-

3.     The problems, crimes, damages and losses related to the prescription drug epidemic in West Virginia include, _inter alia_, the following:

a.     Costs to the State of as much as $430 million annually in the year 2010 with costs projected to be as much as $695 million annually by 2017;

b.     A per capita death rate from prescription drug overdose which has at times been either the highest or the second highest recorded for all states in the United States.  One West Virginia county, McDowell County, located in Southern West Virginia, had a prescription drug overdose death rate of 34.2 per 100,000 in 2001 and 97.3 in 2008;

c.     Between 2001 and 2008 West Virginia deaths from overdoses involving prescription drugs quadrupled from 5.1 deaths per 100,000 residents to 21.5; Counties in which this Defendant distributed drugs have the highest per capita death rates in America.

d.     According to Charleston Area Medical Center approximately twenty (20) percent of patients admitted through the hospital's trauma service have an issue with narcotic usage contributing to their injuries or illnesses.  As such, the demand from the growing problem of addiction and management of addicted patients can reasonably be expected to become too great for the available care providers unless the problem is now effectively addressed.

e.     West Virginia has been identified as the nation's "most medicated state" based upon data gathered for 2009.  Pharmacies in the State filled 18.4 prescriptions per capita as compared to the national average of 11.6 per capita;

f.     One Pittsburgh area physician who has recently entered a guilty plea to a drug law violation worked in and/or owned a bogus "pain clinic" in Southern West

-3-

Virginia that a federal investigation disclosed netted as much as $20,000 per day in cash deposits. That so-called clinic was closed by the government resulting in seizure of hundreds of thousands of dollars in cash from physicians and others who were associated with the clinic. A pharmacy listed as a "preferred pharmacy" by this pill mill was among those which were regularly supplied with prescription drugs known to be abused.

        g.     State prosecutors and judges lament that as much as 90% of their case load consists of matters that are either directly or indirectly related to prescription drug abuse. As one prosecutor recently told a Charleston newspaper " I have sometimes morbidly said I would welcome a cocaine case because at least not as many people are dying from cocaine abuse as they are from prescription drug abuse. I bring this up to point out foremost that we continue to ignore the human cost of substance abuse. Families are destroyed. People die. People can't get jobs and become homeless. They don't send their children to school, which ultimately contributes to truancy, delinquency, another generation of crime and a host of other problems. We're at the top of the nation in births of drug-addicted babies."

        h.     According to media reports from 2013, "Thirty-five percent of babies born in the state are born drug-addicted because their mothers are using drugs." It was reported also that West Virginia Senator Ron Stollings of Boone County, a physician, stated that the economic costs of substance abuse is "chewing up tremendous amounts of money."

        i.     White House drug czar Gil Kerlowske stated the obvious to West Virginia leaders at an assembly: "The devastation wrought by prescription drug abuse on Appalachian communities is simply heartbreaking . . . . Prescription drug abuse is claiming too many lives, threatening public safety and placing unnecessary obstacles in the way of economic

prosperity in Appalachia."

          j.      The controlled substances distributed by this Defendant without sufficient monitoring of suspicious orders includes, but is not limited to, hydrocodone combinations (vicodin, lortab, lorcet, vocoprofen, tussenex, tussicaps), codeine combinations (e.g. empirin with codeine, fiorinal with codeine, tylenol with codeine), phenobarbital, lorazepam (ativan), triazolam (halcion), chlordiazepoxide (librium), diazepam (valium), alprazolam (xanax), zolpidem (ambien), zaleplon (sonata), zopiclone (lunesta), dextropropoxyphene (davron, darvocet), codeine preparations (Robitussin A-C), amobarbital (amytal), pentobarbital (nembutal), secobarbital (seconal), morphine (roxanol, duramorph), oxycodone (oxycontin, tylox, percocet, percodan), hydromorphone (diaudid), oxymorphone (opana, numorphan, numorphone), and meperdine (demerol) and other generic versions of each of the foregoing.

          4.      West Virginia and its agencies seek to protect West Virginia communities by enjoining Defendant from distributing controlled substances without sufficient monitoring and controls and requiring notice to the State in order to prevent the creation and operation of pill-mills and distribution to any other suspicious prescription drug retailers.  The State of West Virginia seeks to recover the damages it has incurred, continues to incur and will in the future incur in addressing and combating the prescription drug abuse epidemic in West Virginia and in addressing its effects.

          5.      The Defendant has profited from this epidemic by distributing controlled substances in West Virginia in amounts that are in excess of the amount of controlled substances legitimately medically required, thereby sourcing drugs ultimately used by drug abusers.  West Virginia law requires distributors of controlled substances such as this defendant to, "provide

effective controls and procedures to guard against . . . diversion of controlled substances [and] shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. . . . Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 WVCSR § 2-4.2.1 and 15 WVCSR § 2-4.4. By distributing excessive amounts of controlled substances, the Defendant violated West Virginia law by failing to implement or more particularly to follow and adhere to effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose the suspicious orders it filled.

      6.     This Defendant is aware of its legal responsibilities in regard to preventing suspicious orders of abused prescription drugs from flooding susceptible locales. In 2008, Defendant Cardinal Health, Inc., paid $34 Million to settle charges that it failed to alert the DEA to suspicious orders for millions of pain pills that it was shipping to Internet pharmacies— operations that for years supplied the illicit market. In 2012, the DEA took action against Cardinal. In that case, the DEA alleged Cardinal sent a "staggeringly high" volume of pills to various dispensers that posed "an imminent danger to public health or safety." The DEA further alleged Cardinal otherwise failed to report suspicious orders. As a consequence, the DEA issued an Immediate Suspension Order to Cardinal on February 2, 2012. In the agreement it reached with the DEA in May 2012, Cardinal admitted that it had inadequate control over some of its prescription drugs. As far back as 2006, internet pharmacy owner, Rakesh Jyoti Saran, pleaded guilty in Texas to illegally distributing controlled substances from 1999 through 2005 and acknowledged purchasing controlled substances from Defendant Cardinal and several entities who are Defendants in companion litigation hereto, namely AmeriSourceBergen, Anda, and H.D.

Smith.

7.    The State expressly indicates that it does not seek any relief in this action for the federal share of funding for the State Medicaid Program.  Claims of damages for any federal monies expended are hereby expressly disavowed.

## II.

## Parties

8.    Plaintiff State of West Virginia appears at the relation of its duly elected Attorney General, Patrick Morrisey.  General Morrisey is authorized by the West Virginia Constitution, West Virginia common law and by statute to bring this action:

a.    *West Virginia Code* § 60A -5-501(c) invests the Attorney General with the duty and the authority to assist in the enforcement of the provisions of the Uniform Controlled Substances Act and to cooperate with agencies and other governmental entities, including but not limited to the West Virginia Department of Military Affairs and Public Safety and the West Virginia Department of Health and Human Resources, as relates to controlled substances; and

b.    *West Virginia Code* § 46A- 7-101 *et seq*, invests the Attorney General with authority to sue for violations of the West Virginia Consumer Protection Act, to recover civil penalties and to seek other remedies for violations of said statute.

9.    Plaintiff Joseph Thornton acting in his capacity as Secretary of the West Virginia Department of Military Affairs and Public Safety, an agency of the State of West Virginia established by *W.Va. Code* §5F-1-2.  The agency includes, *inter alia*, the West Virginia State Police, National Guard, the Division of Justice and Community Services, the Division of

Corrections, the Division of Homeland Security & Emergency Management, the Division of Juvenile Services, the Division of Protective Services, and the Regional Jail and Correctional Facilities Authority. This agency is charged with responsibility for, *inter alia*, enforcing the Uniform Controlled Substance Act, *W.Va. Code* § 60A-5-501 and for housing inmates who have violated said Act and/or committed other crimes related to their violations of the Act.

          10.     Plaintiff Karen Bowling acting in her capacity as Secretary of the West Virginia Department of Health & Human Resources, an agency of the State of West Virginia established by *W.Va. Code* § 5F-1-2. The agency includes, *inter alia*, the West Virginia Bureau of Behavioral Health & Health Facilities, the Bureau for Children and Families, the Bureau for Medical Services, and the Bureau for Public Health. This agency is charged with the responsibility for, *inter alia*, providing services related to drug addiction as well as the attendant problems of treatment and family-related issues.

          11.     The Defendant Cardinal Health, Inc. is an Ohio corporation which at all times pertinent hereto, was conducting business in West Virginia. This Defendant is a registrant with the West Virginia Board of Pharmacy and was so at all times relevant hereto.

### III.

### Jurisdiction and Venue

          12.     Pursuant to *W.Va. Code* § 46A-7-114 venue is proper in that the Defendants committed acts in violation of, *inter alia*, the West Virginia Uniform Controlled Substances Act and the West Virginia Consumer Credit and Protection Act in Boone County West Virginia. Further, the Defendants transacted business in Boone County as well as in other counties within the State of West Virginia.

## IV

### DEA's Suspension of Cardinal Health, Inc. As an Example of Defendants' Illegal Conduct

13.     In a recent federal district court proceeding in the District of Columbia regarding the DEA's suspension of Defendant Cardinal's federal controlled substances license, DEA alleged that Cardinal had not taken adequate safeguards to prevent prescription drugs which it distributed from being unlawfully diverted.

14.     The DEA further alleged that Cardinal's "staggeringly high" volumes of pills sent to various dispensers posed "an imminent danger to public health or safety" and thus the DEA issued an Immediate Suspension Order ("ISO") to Cardinal on February 2, 2012.

a.     During this proceeding, it became apparent that Cardinal had sent 2,050,000 pills to a store in Florida, where the population of the town was 53,000 (USA Today).

b.     An average pharmacy in the United States dispenses 69,000 oxycodone pills a year.  (USA Today).

15.     Indeed, the DEA explained "Orders Cardinal flagged as suspicious were overwhelmingly released with little or no explanation why.  Even those few orders that Cardinal refused to fill as suspect it failed to report to DEA, as Lakeland [Cardinal's location] was required to do.  Since it resumed operations in October 2008, Lakeland has not alerted DEA about a single suspicious order for three of its top four customers, even though two of them have surrendered their DEA registrations due to committing the very sort of diversion DEA expects Cardinal and all distributors to police.  During the relevant period of time, Cardinal never

conducted an in-store audit of either CVS, despite DEA having told Cardinal that it could not fulfill its due diligence obligations simply by relying on CVS's corporate controls.

16.     Moreover, when Cardinal's investigations did raise red flags, they were frequently ignored. In October 2010, for example, a Cardinal investigator suspected that a pharmacy was illegitimately dispensing oxycodone, and recommended that Cardinal call DEA. Not only did that call never come, Lakeland [Cardinal's location] increased oxycodone volume to this pharmacy in the months after the visit, notwithstanding the investigator's warning that this particular pharmacy posed a "high risk of diversion."

From the bench during a hearing on February 29, 2012, U.S. District Judge Reggie Walton ruled in favor of the DEA, stating, "I think DEA is correct that companies have an obligation to police themselves ... and to be proactive in assessing whether diversion (of controlled substances) is taking place." (Reuters)

17.     In regard to the District Court's validation of the DEA's Immediate Suspension Order (ISO), Cardinal appealed same. On May 16, 2012 the United States Court of Appeals for the District of Columbia Circuit ruled that the Defendant's (Cardinal Health, Inc) emergency motion for injunction pending appeal be denied, therefore the administrative stay of the DEA's immediate suspension order (ISO) was dissolved.

18.     Cardinal's actions or inactions in Florida are consistent with and similar to Cardinal's conduct in West Virginia. More particularly stated, as a major distributor of controlled substances in West Virginia, Cardinal has supplied controlled substances to rogue drugstores which dispense controlled substances based on bogus prescriptions from unethical physicians who are prescribing controlled substances for illegitimate medical purposes.

-10-

# Causes of Action

## Count I

### Injunctive Relief for Violations of Responsibilities and Duties Under The West Virginia Uniform Controlled Substances Act

19.     The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

20.     *West Virginia Code* § 60A-5-501(c) provides: "All prosecuting attorneys and the attorney general, or any of their assistants, shall assist in the enforcement of all provisions of this act and shall cooperate with all agencies charged with the enforcement of the laws of the United States, of this state, and of all other states relating to controlled substances."

21.     *West Virginia Code* § 60A-5-503(a) states that "The courts of record of this state have and may exercise jurisdiction to restrain or enjoin violations of this act."

22.     Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301, provide, *inter alia,* for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall

-11-

inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 *W.Va.C.S.R.* § 2-4.4.

23.     Although this Defendant is the single registrant who has actually disclosed two (2) suspicious orders to the West Virginia Board of Pharmacy, (one of which was subsequently shipped) the Defendant has not been consistent in doing so and has filled suspicious orders that thereafter led to illegal dispensing of drugs for illegitimate purposes. The Defendant has failed to provide effective controls and procedures to guard against diversion of controlled substances in contravention of West Virginia law.

24.     By failing to do so, Defendant has willfully and repeatedly violated the Uniform Controlled Substances Act and corresponding regulations.

25.     The State, by and through, the Attorney General under the authority of *W.Va. Code* § 60A-5-501(c) and *W. Va. Code* § 60A-5-503(a) seeks to restrain the violations of 15 *W.Va.C.S.R.* § 2-4.4.

26.     The State of West Virginia and its agencies have in the past sustained enormous damages as the proximate result of the failure by the Defendant to comply with 15 *W.Va.CSR* § 2-4.2.1 and 15 *W.Va.CSR* § 2-4.4. Unless restrained by injunctive relief the State and its agencies will continue to suffer those losses as the proximate result of the failure by the Defendant to monitor and to disclose suspicious orders of controlled substances.

27.     The State of West Virginia has suffered substantial and irreparable harm and will in the future suffer irreparable harm unless the Defendant is restrained by an injunction.

28.     A lawsuit for damages for past losses as have been sustained by the State

is inadequate by itself to prevent future losses that will result from the failure to comply with West Virginia law as herein alleged.

## Count II

### Damages Resulting From Negligence and Violations of the
### West Virginia Uniform Controlled Substances Act

29.　　The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

30.　　The epidemic prescription drug abuse is attended and promoted by the repeated violation of various provisions of the West Virginia Uniform Controlled Substances Act, to wit;

　　　　　a.　　Improper dispensing of prescriptions contrary to
　　　　　　　　*W.Va Code* § 60A-3-308;

　　　　　b.　　Engaging in prohibited acts contrary to *W.Va Code*
　　　　　　　　§§ 60A-4-401 through 403;

　　　　　c.　　Deceiving and attempting to deceive medical practitioners
　　　　　　　　in order to obtain prescriptions in contravention of *W.Va.*
　　　　　　　　*Code* § 60A-4-410;

　　　　　d.　　Disregarding the requirements of the Wholesale Drug
　　　　　　　　Distribution Licensing Act of 1991, *W.Va. Code*
　　　　　　　　§ 60A-8-1 *et seq,*; and

　　　　　e.　　Conspiring to violate the West Virginia Uniform Controlled
　　　　　　　　Substances Act.

31.　　The Defendant as a distributor of controlled substances is expected to comply both with the laws of the State into which they distribute controlled substances and with industry customs and standards.  In the instant case the standard of conduct for Defendant's industry requires that the Defendant know its customers which includes *inter alia* an awareness

of the customer base, knowledge of the average prescriptions filled each day, the percentage of controlled substances compared to overall purchases, a description of how the dispenser fulfills its responsibility to ensure that prescriptions filled are for legitimate medical purposes, and identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's most frequent prescribers.

32.     This Defendant has wilfully turned a blind eye towards the actual facts by regularly distributing large quantities of controlled substances to clients who are serving a customer base comprised of individuals who are themselves abusing prescription medications, many of whom are addicted and all of whom can reasonably be expected either to become addicted or to engage in illicit drug transactions. The Defendant negligently acted to violate West Virginia's drug laws, dispensing controlled substances for illegitimate medical purposes, operating bogus pain clinics which do little more than provide prescriptions for controlled substances and thereby creating and continuing addictions to prescription medications.

33.     Under West Virginia law a party who violates a statute which violation results in damages is liable for such damages as are sustained therefrom. *W.Va. Code* § 55-7-9.

34.     This Defendant has by its acts and omissions proximately caused and substantially contributed to damages to the State of West Virginia by violating West Virginia laws, by creating conditions which contribute to the violations of West Virginia laws by others, by its negligence and by its reckless disregard of the customs, standards and practices within Defendant's own industry.

### Count III

**Violation of the West Virginia Consumer Credit and Protection Act (WVCCPA)**

-14-

## Unfair Methods of Competition or Unfair or Deceptive Acts or Practices

35. The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

36. West Virginia law as embodied in *W.Va. Code* § 46A-6-104 prohibits the use of unfair methods and/or competition or unfair or deceptive acts or practices in any trade or commerce.

37. The Attorney General specifically is charged with the administration of this provision and may act *sua sponte* as the agent and legal representative of the State in civil proceedings to enforce the statute, *W. Va. Code* § 46A-6-103, §§ 46A-7-102, -108, -110, -111.

38. Violations of statutes and regulations that are enacted to protect the Public or in the exercise of the State's police power constitute unfair or deceptive acts or practices.

39. Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301 18 provide, *inter alia,* for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 *W.Va.C.S.R.* § 2-4.4.

40. Each violation of these mandatory duties in the West Virginia Uniform

Controlled Substances Act and its corresponding regulations is an unfair or deceptive act or practice in the conduct of trade or commerce, as set forth in *W. Va. Code* § 46A-6-104.

41.  Defendant's repeated violations were and are willful, and the State seeks civil penalties under *W. Va. Code* § 46A-7-111(2) for each violation.

42.  As a result of the Defendant's actions and omissions the State and its agencies have sustained damages, both past and in the future.

43.  The State and its agencies seek all " other appropriate relief" under *W. Va. Code* § 46A-7-108, including attorney fees and costs.

## Count IV

## Public Nuisance

44.  The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

45.  Defendant, individually and acting through its employees and agents, has created and continues to perpetrate and maintain a public nuisance by the massive distribution of abused prescription drugs for use by the citizens of West Virginia, and by its failure to put in place effective controls and procedures to guard against theft and diversion of controlled substances, and its failures to adequately design and operate a system to disclose suspicious orders of controlled substances, and by its failures to inform the State of suspicious orders when discovered by the registrant ("suspicious orders" include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency).  Defendant knew or should have known its conduct would cause hurt or inconvenience to the countless numbers of West Virginians in a multitude of ways.

46.     As a direct result of the conduct of this Defendant as set forth above, Defendant has negligently, intentionally and/or unreasonably interfered with the right of West Virginians to be free from unwarranted injuries, addictions, diseases and sicknesses and have caused ongoing damage, hurt or inconvenience to West Virginia residents exposed to the risk of addiction to prescription drugs, who have become addicted, and/or have suffered other adverse consequences from the use of the addictive prescription drugs distributed by Defendant, and countless others who will suffer the same fate in the future as Defendant's conduct is continuing.

47.     As a direct result of Defendant's conduct as set forth above, Defendant has negligently, intentionally and/or unreasonably interfered with the Public's right to be free from unwarranted injury, disease or sickness, and have caused ongoing damage, hurt or inconvenience to the public health, the public safety and the general welfare of the citizens of West Virginia.

48.     The health and safety of the citizens of West Virginia, including those who have used or will use prescription drugs, is a matter of great public interest and of legitimate concern to the State and its citizens.

49.     The public nuisance created, perpetuated and maintained by Defendant can be abated and further occurrence of such harm and inconvenience can be prevented.

50.     This Defendant was on notice that an epidemic from prescription drug abuse existed and has existed during times relevant to this Amended Complaint. Such notice is the result of

- A large amount of media coverage of prescription drug abuse and its consequences by both national and local print, television and radio media;

- Publications received from government sources as well as warnings and recommendations contained in trade and professional journals;

-17-

- Changes in law and regulations which were designed specifically to address the growing problem of prescription drug abuse.

51.    The widespread publicity contained many references and statistics concerning West Virginia's problems from prescription drug abuse including, but not limited to, suffering the nations' highest per capita death rate from prescription drug overdose.

52.    Notwithstanding the knowledge of this epidemic of prescription drug abuse in West Virginia, the Defendant persisted in a pattern of distributing controlled substances of the kinds which were well-known to be abused and diverted all the while distributing them in geographic areas, and in such quantities and with such frequency, that the Defendant knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes.

53.    As the result of the above-described conduct the Defendant negligently, recklessly and/or intentionally, and acting with blind indifference to the facts, created and continued propagate a public nuisance.  More particularly, the public nuisance so created, injuriously, and in many areas pervasively, affects West Virginia communities and the State, and endangers the public health and safety and inconveniences the citizens of the State, *inter alia,* in the following ways:

- Areas in certain communities have become congested with persons who gather in large groups outside of "clinics, pharmacies and physician offices" that in fact are component parts of Pill Mills that exist only to prescribe and deliver drugs for illicit, non-medical purposes;
- Crimes and other dangerous activities have increased;
- Hospital services, especially those services provided by emergency rooms, are being consumed by persons with prescription drug abuse issues;

- Law enforcement and prosecutorial resources are being exhausted and consumed

-18-

by having to address prescription drug abuse issues to the exclusion of other matters;

- Public resources are being unreasonably consumed in efforts to address the prescription drug abuse epidemic, thereby eliminating available resources which could be used to benefit the public at large;

- Court dockets are congested by prescription drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our courts by others;

- Jails and prisons suffer from overcrowding.

54.     As a direct result of the acts and omissions of Defendant in creating, perpetuating and maintaining the public nuisance hereinabove described, the public nuisance described herein has damaged the health and safety of West Virginia citizens in the past and will continue to do so in the future unless the nuisance is abated.

55.     The State has sustained economic harm in the expenditure of massive sums of monies and will in the future continue to suffer economic harm unless the above-described public nuisance is abated.

## Count V

### Negligence

56.     The State and its agencies reallege and incorporates by reference all preceding paragraphs as though fully set forth herein and further alleges the following.

57.     Defendant has a duty to exercise reasonable care in the distribution of controlled substances.

58.     Defendant has breached this duty by their conduct alleged above.

59.     As a proximate result, Defendant and its agents have caused the State and

its agencies to incur excessive costs related to diagnosis, treatment and cure of addiction or the risk of addiction to such controlled substances, thus the State has borne the massive costs of these illnesses and conditions by having to provide necessary medical care, facilities and services for treatment of citizens of West Virginia who are unable to afford or otherwise obtain such necessary medical care, facilities and services.

60.     The Defendant was negligent in failing to monitor and guard against third-party misconduct, *i.e.* the conduct of the Pill Mill physicians and staff as well as corrupt pharmacists and staff and, in fact, by their actions the Defendant participated and enabled such misconduct.

61.     Defendant's acts and omissions as aforesaid imposed an unreasonable risk of harm to others separately and/or as combined with the negligent and/or criminal acts of third parties.

62.     The Defendant is in a class of a limited number of parties that distribute controlled substances and such activity poses distinctive and significant dangers.  The dangers include diversion of controlled substances for non-legitimate medical purposes and addiction to same by consumers.

63.     The Defendant was negligent in not acquiring and utilizing special knowledge and special skills that relate to the dangerous activity in order to prevent and/or ameliorate such distinctive and significant dangers.

64.     Controlled substances are dangerous commodities.  The Defendant distributor is required to exercise a high degree of care and diligence to prevent injury to the public from the diversion of controlled substances during distribution.  The Defendant breached

its duty to exercise the degree of care, prudence, watchfulness, and vigilance commensurate to the dangers involved in the transaction of its business. The Defendant cannot delegate this duty of care to another.

        65.     The distribution of these controlled substances is under the exclusive control and management of the Defendant. The State and its agencies are without fault and the injuries to the State, it agencies and its citizens would not have happened in the ordinary course of events had the Defendant used due care commensurate to the dangers involved in the distribution of controlled substances. Hence, the Defendant is negligent.

## PRAYER

**WHEREFORE**, the State and its agencies pray that the Court grant the following relief:

1.     Judgment in favor of the State;

2.     Temporary relief, a preliminary injunction and permanent injunction ordering the ordering the Defendant to comply with the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301 (and regulations promulgated thereto), and *West Virginia Code* § 46A-6-104, and to cease its unlawful conduct, and mandate the Defendant promptly notify the West Virginia Board of Pharmacy, the Office of the Attorney General, and the Department of Military Affairs and Public Safety of any and all suspicious orders for controlled substances as received from parties who are located in West Virginia and to submit their system for determining suspicious orders to those West Virginia authorities for prior approval, and to enter temporary and permanent injunctions that mandate Defendant be enjoined from distributing in West Virginia any controlled

substances for any non-legitimate medical purpose;

3.   Equitable relief, including but not limited to restitution and disgorgement;

4.   Order a jury trial to determine such costs, losses and damages as are proved in this action in relation to the several counts of this Amended Complaint including, but not limited to:

    a.   Losses sustained as the proximate result of both negligent and conscious violations of the West Virginia Uniform Controlled Substances Act and regulations;

    b.   Damages sustained as the proximate result of nuisances created by the prescription drug abuse epidemic;

    c.   Damages and losses sustained as the proximate result of the Defendant's negligence in marketing, promoting and distribution of controlled substances in West Virginia;

    d.   Disgorgement of unjust enrichment of the Defendant;

    e.   Civil penalties of up to $5000 for each repeated and willful violation of Chapter 46A, under *West Virginia Code* § 46A-7-111;

    f.   Pre- and post-judgment interest;

    g.   Costs and reasonable attorneys' fees; and

5.   Such other relief, fees and cost as shall be available under the West Virginia Credit and Consumer Protection Act.

6.   Order reimbursement of all litigation costs and enter an award of attorney fees herein.

7.   And grant such other and further relief as shall be deemed appropriate herein.

**Plaintiffs seek a jury trial for all such counts as are so triable**.

-22-

**STATE OF WEST VIRGINIA** *ex rel.*
Patrick Morrisey**,** Attorney General

Joseph Thornton, Secretary
**WEST VIRGINIA DEPARTMENT OF**
**MILITARY AFFAIRS AND PUBLIC**
**SAFETY**, an agency of the State of West
Virginia,

Karen Bowling, Secretary
**WEST VIRGINIA DEPARTMENT OF**
**HEALTH & HUMAN RESOURCES**, an
agency of the State of West Virginia,

By Counsel,

Dan Greear, Esq., Chief Counsel
**OFFICE OF ATTORNEY GENERAL**
Building 1, Room 26-E
Capitol Complex
Charleston, WV 25305
Telephone: 304-558-2021

James M. Cagle, WV Bar No. (580)
**CAGLE & JACKSON, ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25302

Rudolph L. DiTrapano WV Bar No.1024
**DITRAPANO BARRETT DIPIERO**
**MCGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, WV 25301

-23-

## IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA
ex rel DARRELL V. MCGRAW, JR.
Attorney General,

          Plaintiff,

v.

CARDINAL HEALTH, INC.
an Ohio corporation doing business in
West Virginia,

          Defendant.

Civil Action No.12-C-140
Judge William S. Thompson

### CERTIFICATE OF SERVICE

TO:   Cardinal Health, Inc.: Via Fax and email: 304-357-0919
      W. Henry Jernigan, Jr., Esq. (WV Bar No. 1884)
      Mark A. Carter, Esq. (WV Bar No. 4316)
      Dinsmore & Shohl, LLP
      P.O. Box 11887
      Charleston, WV 25339-1887
      *Counsel for Cardinal Health, Inc.*

The undersigned, Counsel for the Plaintiff, State of West Virginia ex rel. McGraw does

hereby certify that a true and correct copy of the ***Plaintiff's Amended Complaint*** was served by

via email and regular US mail to Mark A. Carter, Esq., and W. Henry Jernigan, Jr., Esq at the law

firm of Dinsmore & Shohl, LLP, P.O. Box 11887, Charleston, WV 25339, counsel for

Defendant, on this the 8th day of January, 2014.

James M. Cagle (WV Bar No. 580)
P. Rodney Jackson, (WV Bar No.1861)
**CAGLE & JACKSON**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25301

Dan Greear (WV Bar No. 6036)
Chief Deputy Attorney General
**OFFICE OF ATTORNEY GENERAL**
Building 1, Room 26-E, Capitol Complex
Charleston, WV 25305
(304) 558-2021
(304) 558-0140 facsimile