# Exhibit 3

IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY**,
Attorney General, **JOSEPH THORNTON,**
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT**
**OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING,** in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF**
**HEALTH & HUMAN  RESOURCES**, an agency
of the State of West Virginia,

        Plaintiffs,

v.

                                            Civil Action No.12-C-140
                                            (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.,**
an Ohio corporation doing business in
West Virginia,

        Defendant.

# UNDER SEAL

## SECOND AMENDED COMPLAINT

## IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY,**
Attorney General, **JOSEPH THORNTON,**
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT**
**OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING,** in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF**
**HEALTH & HUMAN  RESOURCES,** an agency
of the State of West Virginia,

       Plaintiffs,

v.                                    Civil Action No.12-C-140
                                       (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.,**
an Ohio corporation doing business in
West Virginia,

       Defendant.

### SECOND AMENDED COMPLAINT

For their Second Amended Complaint, the State of West Virginia, at the relation of its

duly-elected Attorney General Patrick Morrisey, and two of its agencies, the West Virginia

Department of Military Affairs and the West Virginia Department of Health & Human Resources

by cabinet secretaries Joseph Thornton and Karen Bowling respectively state the following:

### I.

### Introduction

Pursuant to the Order of this Court and in conformity with Rule 15(b) and (d) of the West

Virginia Rules of Civil Procedure, counsel for the Plaintiffs file their Second Amended and

Supplemental Complaint on behalf of the Plaintiff. They present the following as supplemented in part by information contained in the discovery which was previously produced by this Defendant.

The Defendant's initial discovery production already exceeds thousands of pages and involves millions of controlled substances transactions. There exists the potential of literally thousands of wrongful acts which will be litigated in this case. As a consequence of the foregoing, Plaintiffs set forth additional offending acts and omissions together with specific examples and supporting statistics.

### Description of Action

1.  This civil action addresses the epidemic of prescription drug abuse and its costs to the State of West Virginia. Prescription drug abuse costs the State of West Virginia hundreds of millions of dollars annually. Beyond the actual dollars lost, prescription drug abuse devastates West Virginia communities and families and reduces the State's economic productivity. The damage done by prescription drug abuse adversely effects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the very quality of life in our cities and towns. Accordingly, the State, at the relation of its Attorney General, the West Virginia Department of Military Affairs and Public Safety, and the West Virginia Department of Health and Human Resources (collectively herein referred to as "the State") brings this action against the largest distributor by volume among the distributors who have tortiously benefitted financially from the prescription drug abuse problem in West Virginia.

2.    This Defendant has distributed prescription drugs of the kind closely identified with the prescription drug abuse problem in West Virginia. In recent years, it has been well publicized in the media that West Virginia has been, per capita, one of the "most medicated" states in the country, with a prescription drug abuse problem of epidemic proportions. The Defendant was on notice of the growing West Virginia epidemic of the abuse of those prescription drugs it supplied and of the quantities and frequency with which those drugs were distributed to entities in West Virginia. For reasons more specifically set forth in the following causes of actions this Defendant is answerable in damages to the State of West Virginia and is susceptible to such other relief as is being requested herein.

3.    According to DEA data Defendant Cardinal is the largest distributor of controlled substances to West Virginia customers. Many of these customers are located in rural or low population areas and order such large quantities that are so much greater than the population that those orders are, at the very least, suspicious. Many of these pharmacies are "pill mills."

4.    Through its acts and omissions this Defendant has inserted itself as an integral part of the Pill Mill process.

5.    As hereinafter alleged the Defendant acted negligently, recklessly and in contravention of West Virginia law. More particularly, the Defendant violated West Virginia statutes and regulations that govern controlled substances and consumer protection. The Defendant received substantial revenue from West Virginia entities while engaging in wholesale drug distribution in West Virginia and in supplying West Virginia pill mills.

6.    The problems, damages and losses related to the prescription drug epidemic in West

       Virginia include, *inter alia,* the following:

   a.    Costs to the State of as much as $430 million annually in the year 2010 with costs
          projected to be as much as $695 million annually by 2017;

   b.    A per capita death rate from prescription drug overdose that has at times been
          either the highest or the second highest recorded for all States in the United States.
          One West Virginia County, McDowell County, located in Southern West
          Virginia, had a death rate of 34.2 per 100,000 in 2001 and 97.3 in 2008; West
          Virginia's death rate by drug overdose was 36.2 per 100,000 in 2011 as compared
          to the U.S. rate of 13.2.

   c.    Between 2001 and 2008 West Virginia deaths from overdoses involving
          prescription drugs quadrupled from 5.1 deaths per 100,000 residents to 21.5; and
          now it is even greater according to more recent statistics;

   d.    According to Charleston Area Medical Center approximately twenty (20) percent
          of patients admitted through the hospital's trauma service have an issue with
          narcotic usage which contributes to their injuries. As such, the demand from the
          growing problem of addiction and management of addicted patients will
          eventually be too great for the available care provided unless the problem is
          addressed. Many of the addicted patients have no medical insurance coverage;

   e.    West Virginia has been identified as the nation's "most medicated state" based
          upon data gathered for 2009. Pharmacies in the State filled 18.4 prescriptions per
          capita as compared to the national average of 11.6 per capita;

   f.    One pharmacy located in tiny Kermit, West Virginia (population 400) in 2006
          received 3,194,400 dosage units of hydrocodone which ranked 22nd in the nation
          among all pharmacies with respect to purchases of hydrocodone dosage and 35th
          nationally when mail order pharmacies were taken into account. The owner who
          is a licensed pharmacist has testified that the pharmacy filled one prescription per
          minute. Pharmacy records reveal that the pharmacy regularly paid suppliers
          hundreds of thousands of dollars and that virtually 90% of the drugs ordered and
          received were of the kind associated with the prescription drug epidemic. The
          pharmacy reported revenue of more than $500,000 per month. A recent article
          described Kermit as "ground zero" in the prescription drug epidemic;

   g.    One Pittsburgh area physician who entered a guilty plea to a criminal law
          violation allegedly worked in or owned an operation in Southern West Virginia
          that a federal investigation disclosed netted him as much as $20,000 per day in

cash deposits made to his personal bank account. That so-called clinic was closed by the government resulting in seizure of hundreds of thousands of dollars in cash from physicians and others who were associated with the clinic. Two pharmacies listed as "preferred" by this pill mill were among those that regularly were supplied by this Defendant with prescription drugs known to be abused;

h. As much as 90% of Circuit Court criminal dockets are regularly made up of matters that are either directly or indirectly related to prescription drug abuse.

i. Reports indicate that thirty-five percent of babies born in the State are born drug-addicted because their mothers are using drugs.

j. White House drug czar Gil Kerlowske stated the obvious to West Virginia leaders at an assembly: "The devastation wrought by prescription drug abuse on Appalachian communities is simply heartbreaking . . . . Prescription drug abuse is claiming too many lives, threatening public safety and placing unnecessary obstacles in the way of economic prosperity in Appalachia."

7. West Virginia and its agencies hereby seek to protect West Virginia communities by enjoining this Defendant from distributing controlled substances without sufficient monitoring and controls of suspicious orders, and by requiring notice to the State in order to prevent the creation and operation of pill mills or distribution to any other suspicious prescription drug retailers. The State further seeks to require the Defendant to actually strictly follow its suspicious orders protocol. The State of West Virginia also seeks to recover the damages it has incurred, continues to incur, and will incur in the future in addressing and combating the prescription drug abuse epidemic in West Virginia and in addressing its effects, to all of which Cardinal's acts and omission as stated herein were a proximate case.

8. This Defendant has profited from this epidemic by distributing controlled substances in West Virginia in amounts that are in excess of the amount of controlled substances which are for legitimate medical purposes, thereby sourcing drugs ultimately used by drug

abusers.  West Virginia law requires distributors of controlled substances such as the

Defendant to, "provide effective controls and procedures to guard against . . . diversion of

controlled substances [and] . . . design and operate a system to disclose to the registrant

suspicious orders of controlled substances. . . . Suspicious orders include orders of

unusual size, orders deviating substantially from a normal pattern, and orders of unusual

frequency." 15 *WVCSR* § 2-4.2.1 and 15 *WVCSR* § 2-4.4.  By distributing excessive

amounts of controlled substances as aforesaid, the Defendant drug distributor violated

West Virginia law by failing to implement, or more particularly failing to follow, and

adhere to effective controls to guard against prescription drug diversion and by failing to

effectively monitor, enforce and/or disclose suspicious orders it fills.

9.    This Defendant is well aware of its legal responsibilities in regard to preventing

suspicious orders of abused prescription drugs from flooding susceptible locales. In 2008

Cardinal paid a $34 million to the DEA to resolve allegations that Cardinal failed to

notify the DEA about suspicious orders it filled.  In 2012 Cardinal agreed to a two year

suspension of its license to ship controlled substances from its Lakeland, Florida

operation for having improperly distributed prescription pain pills.

10.   The State expressly indicates that it does not seek any relief in this action for the federal

share of funding of the State Medicaid Program.  Claims of damages for any federal

monies are hereby expressly disavowed.

## II.

### Parties

11.     Plaintiff State of West Virginia appears at the relation of its duly elected Attorney

        General, Patrick Morrisey.  General Morrisey is authorized by the West Virginia

        Constitution, West Virginia common law and by statute to bring this action:

   a.   *West Virginia Code* § 60A-5-501(c) invests the Attorney General with the duty

        and the authority to assist in the enforcement of the provisions of the Uniform

        Controlled Substances Act and to cooperate with agencies and other governmental

        entities, including but not limited to the West Virginia Department of Military

        Affairs and Public Safety and the West Virginia Department of Health and Human

        Resources, as relates to controlled substances;

   b.   *West Virginia Code* § 46A- 7-101 *et seq*, invests the Attorney General with

        authority to sue for violations of the West Virginia Consumer Protection Act, to

        recover civil penalties and to seek other remedies for violations of said statute;

        and

   c.   Under West Virginia common law, the Attorney General possesses the authority

        to enforce all of the applicable laws cited herein, including the consumer

        protection laws, substance abuse laws, and laws governing the illicit distribution

        of drugs in West Virginia.

12.     Plaintiff Joseph Thornton acts in his capacity as Secretary of the West Virginia

        Department of Military Affairs and Public Safety, an agency of the State of West Virginia

        established by *W.Va. Code* §5F-1-2.  The agency includes, *inter alia*, the West Virginia

-7-

State Police, National Guard, the Division of Justice and Community Services, the

Division of Corrections, the Division of Homeland Security & Emergency Management,

the Division of Juvenile Services, the Division of Protective Services, and the Regional

Jail and Correctional Facilities Authority. This agency is charged with responsibility for,

*inter alia*, enforcing the Uniform Controlled Substance Act, *W.Va. Code* § 60A-5-501

and for housing inmates who have violated said Act and/or committed other crimes

related to their violations of the Act.

13. Plaintiff Karen Bowling acts in her capacity as Secretary of the West Virginia Department

of Health & Human Resources, an agency of the State of West Virginia established by

*W.Va. Code* § 5F-1-2. The agency includes, *inter alia*, the Bureau of Behavioral Health &

Health Facilities, the Bureau for Children and Families, the Bureau for Medical Services,

and the Bureau for Public Health. This agency is charged with the responsibility for, *inter*

*alia*, providing services related to drug addiction as well as the attendant problems of

treatment and family-related issues.

14. At all times pertinent to this Second Amended Complaint this Defendant was doing

business in West Virginia as a wholesale drug distributor.

At relevant times Defendant Cardinal Health, Inc. was:

- Knew or should have known and was on notice that an epidemic of

prescription drug abuse existed in West Virginia and in the specific areas

of this State in which their customers were located. Further, Cardinal

knew or should have known and was on notice that the controlled

substances being distributed were the kind which were being abused;

-8-

- Knew or should have known and was on notice that State law required them, *inter alia*, to provide effective controls and procedures to guard against diversion of controlled substances, 15 WVCSR §2-4.21 and 15 WVCSR §2-4-4; and

- Knew or should have known and was on notice that the Healthcare Distribution Management Association ("HDMA") *"Industry Compliance Guidelines: Reporting Suspicious Orders and Preventing Diversion of Controlled Substances"* describe the critical role of each member of the supply chain in distributing controlled substances. These industry guidelines further provide: "At the center of a sophisticated supply chain, distributors are uniquely situated to perform due diligence in order to help support the security of controlled substances they deliver to their customers." Industry standards and guidelines contain the following elements:

I.     Know Your Customer Due Diligence

II.    Monitoring for Suspicious Orders

III.   Suspend/Stop an Order of Interest Shipment

IV.    Investigation of Orders of Interest

V.     File Suspicious Order Reports with DEA

VI.    Employees, Training and Standard Operating Procedure (SOP)

VII.   Additional Recommendations

The guidelines' first element of "Know Your Customer" provides that distributors must

gather substantial information on each of its customers, including, *inter alia*, their business background, customer base, average number of prescriptions filled each day, average number of controlled substances item prescriptions filled each day, percentage of controlled substance purchases compared to overall purchases, *etc.* According to the industry standards and guidelines, this information must be reviewed carefully by the distributor, and the distributor must conduct a thorough, independent investigation of the customer:

- Subject to the requirement that it provide notice to the appropriate authorities of any suspicious orders for controlled substances and not fill the same. Notwithstanding its duties regarding suspicious orders, Cardinal regularly filled suspicious orders of West Virginia customers. In so doing Cardinal acted either with gross negligence or with a willful blind eye to the facts and circumstances when filling suspicious orders for controlled substances.

- Further, Cardinal failed to adhere to industry customs and standards and violated applicable West Virginia statutes and regulations.

### III.

### Jurisdiction, Venue and Claims

15. Jurisdiction exists pursuant to the provisions of *West Virginia Code* § 56-3-33, as amended, in that Defendant Cardinal by and through its authorized agents, servants and employees regularly transacted business in West Virginia, supplied and distributed prescription drugs in West Virginia and further through their acts and omissions tortiously caused injuries in West Virginia by engaging in a persistent course of conduct

-10-

in West Virginia that violated West Virginia law.  These Defendants derived substantial revenue as the result of the controlled substance that were distributed to West Virginia entities and later consumed by persons then residing in West Virginia.  More particularly, the acts and omissions as claimed are described hereinafter.

16.    DEA statistics indicate that in the 5 years beginning January 2007 and ending December 2012 Defendant Cardinal Health, Inc. distributed at least 155,629,101 hydrocodone and 85,493,140 oxycodone pills to West Virginia customers.

These same statistics when broken down by county are revealing in that the counties most effected by the prescription drug epidemic received large quantities of controlled substances from Cardinal.  For example: The distribution statistics stated below show such a huge amount of distribution of controlled substances beyond what the local population legitimated could be expected to need that one amount of distributions should have been identified as suspicious, but were not.

   a.    During this period of time Boone county customers received *1,042,090* hydrocodone and *431,120* oxycodone from Cardinal.  Neighboring Logan County customers received from Cardinal a total of *8,863,310* hydrocodone and *1,844,000* oxycodone.  Mingo County customers received *2,382,9900* hydrocodone and *117,400* oxycodone while McDowell County received *3,052,370* hydrocodone and *1,492,960* oxycodone from Cardinal.

   b.    Statewide the foregoing figures reflect Cardinal alone distributed 154.39 hydrocodone for each man, woman and child in West Virginia over 5

-11-

years, and also 84.81 oxycodone for every person in the State.

c.  Considering the populations of Logan County (36,743) that amounts to 241.22 hydrocodone for every person in the county and 50.19 oxycodone for each person.

d.  For McDowell County (population 22,113) it is 138.04 per person for hydrocodone and 67.52 per person for oxycodone consumption.

e.  In Williamson, West Virginia, population 3,191, this Defendant distributed massive amounts of hydrocodone and other abused controlled substances to Hurley Pharmacy, a pill mill which filled prescriptions written by the notorious Williamson pill mill physicians at the Mountain Medical Clinic, aka Williamson Wellness Center, and Diane Shafer. The totals reflected in Cardinal's records are as follows: (2007-2008) 397,500 hydrocodone; (2009-2010) 470,900 alpraxalom and 749,300 hydrocodone; (2011-2012) 355,000 alpraxalom and 991,000 hydrocodone and 68,100 oxycodone. (2013) 87,000 alpraxalom and 246,400 hydrocodone and 29,300 oxycodone.  At the same times other distributors who are known to the State were also inundating Hurley Pharmacy with hydrocodone.

17.  Cardinal records indicate that the company distributed oxycodone to Best Care Pharmacy. Records reflect the 2013 total to be 73,900 oxycodone distributed and in years 2011 and 2012 the total was 23,000.  In 2014 Best Care pharmacist Mario Blount was charged with violations of federal drug laws because of his illegal distribution and conspiracy to distribute oxycodone and oxymorphone.  This followed October, 2013 search warrants

-12-

served at several Best Care locations.  Mr. Blount has since been convicted and sentenced to a period of incarceration.  Cardinal's distributions of controlled substances to Best Care as aforesaid were suspicious and should have been refused and reported, but were not.

18.    Other suspicious transactions appear from the records as supplied by Cardinal in its discovery.

      a.    Distribution to Trivillian's Pharmacy in Charleston.  This Pharmacy's owner is awaiting sentencing after entering a guilty plea following an investigation by drug task force officers.  Trivillian's filled all prescriptions brought to it from the Hope Clinic, a pill mill operation which has been closed by authorities in West Virginia.  Cardinal's records indicate delivery of 246,400 hydrocodone in 2013, 245,000 in 2011-2012 along with 362,800 oxycodone.  The 2009-2010 totals were 263,000 hydrocodone and 333,800 oxycodone distributed.  These distributions were suspicious, should have been refused and reported, but were not.

      b.    Van, West Virginia is a Boone County community which had a population of 211 people in 2010.  In the period of 2011-2012 Cardinal distributed to Van Professional Pharmacy 102,100 alpraxalom and 207,000 hydrocodone.  Cardinal's distribution to Van Professional Pharmacy as aforesaid were suspicious, should have been refused and reported, but were not.

-13-

19.   The foregoing statistical information standing alone is representative and prima facie shows suspicious transactions.  That is particularly so when one considers the known data referred to in paragraph 6 <u>supra</u> and the requirement that this distributor shall "know your customer."  Cardinal violated these duties in making the distributions identified above.

20.   Further, this Defendant regularly supplied known addictive and abused controlled substances to Family Pharmacy, aka B&K Pharmacy, of South Williamson, Kentucky. Family Pharmacy is a pill mill pharmacy located in Pike County just yards away from the State line with Mingo County, West Virginia.  Family Pharmacy was on the list of "preferred pharmacies" which regularly filled prescriptions faxed directly to it by staff at Mountain Medical Center and other prescriptions delivered by Diane Shafer's customers or patients.  Along with other distributors who are being sued by these Plaintiffs, Cardinal distributed that cocktail of widely abused controlled substances which the pill mill "physicians" and their staffs forwarded to Family Pharmacy on a daily basis.

21.   The foregoing are not intended to be exhaustive of Cardinal's wrongful acts and omissions at issue herein.  They are however representative.

## IV

### Causes of Action

### Count I

### Injunctive Relief for Violations of Responsibilities and Duties Under The West Virginia Uniform Controlled Substances Act

22.   The State hereby incorporates by reference all of the previous allegations of this Second Amended Complaint.

-14-

23.   *West Virginia Code* § 60A-5-501(c) provides: "All prosecuting attorneys and the attorney general, or any of their assistants, shall assist in the enforcement of all provisions of this act and shall cooperate with all agencies charged with the enforcement of the laws of the United States, of this state, and of all other states relating to controlled substances."

24.   *West Virginia Code* § 60A-5-503(a) states that, "The courts of record of this state have and may exercise jurisdiction to restrain or enjoin violations of this act."

25.   Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301, provide, *inter alia,* for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant.  Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency."  15 *W.Va.C.S.R.* § 2-4.4.

26.   This Defendant has failed to diligently respond to suspicious orders that it has filled. Defendant Cardinal therefore has failed to provide effective controls and procedures to guard against diversion of controlled substances in contravention of West Virginia law.

27.   By failing to do so, Cardinal has willfully and repeatedly violated the West Virginia Uniform Controlled Substances Act and corresponding regulations.

28.   The State, by and through, the Attorney General under the authority of *W.Va. Code* §

60A-5-501(c) and *W. Va. Code* § 60A-5-503(a) seeks to restrain the violations of 15 *W.Va.C.S.R.* §§ 2-4.2.1, 2-4.4.

29.    The State of West Virginia and its agencies have in the past sustained enormous damages as the proximate result of the failure by Cardinal to comply with 15 *W.Va.CSR* §2-4.2.1 and 15 *W.Va.CSR* §2-4.4. Unless restrained by injunctive relief the State will continue to suffer losses as the proximate result such to monitor and to disclose suspicious orders of controlled substances.

30.    The State of West Virginia and its agencies have suffered substantial and irreparable harm and will in the future suffer irreparable harm unless Cardinal is restrained by an injunction.

31.    A lawsuit for damages for past losses as have been sustained by the State and its agencies is inadequate by itself to prevent the future losses that will result from the failures of said Defendant to comply with West Virginia law as herein alleged.

## Count II

### Damages Resulting From Negligence and Violations of the West Virginia Uniform Controlled Substances Act

32.    The State hereby incorporates by reference all of the previous allegations of this Amended Complaint.

33.    The epidemic prescription drug abuse is attended and promoted by the repeated violation of various provisions of the West Virginia Uniform Controlled Substances Act, to wit;

        a.    Improper dispensing of prescriptions contrary to *W.Va Code* § 60A-3-308;

        b.    Engaging in prohibited acts contrary to W.Va *Code*

-16-

§§ 60A-4-401 through 403;

c.     Deceiving and attempting to deceive medical practitioners in order to obtain prescriptions in contravention of *W.Va. Code* § 60A-4-410;

d.     Disregarding the requirements of the Wholesale Drug Distribution Licensing Act of 1991, *W.Va. Code* §60A-8-1 *et seq*,; and

e.     Conspiring to violate the West Virginia Uniform Controlled Substances Act.

34.     Defendant Cardinal is a distributor of controlled substances and must comply both with the laws of the State into which it distributes controlled substances and with industry custom and standards. In the instant case, the standard of conduct for Defendant's industry requires that it know its customers, which includes, *inter alia,* an awareness of its customer base (including but not limited to population levels of the immediate area), knowledge of the average prescriptions filled each day, the percentage of diverted and/or abused controlled substances distributed as compared to overall purchases, a description of how the dispenser fulfills its responsibility to ensure that prescriptions filled are for legitimate medical purposes, and identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's most frequent prescribers.

35.     Defendant Cardinal has wilfully turned a blind eye towards the foregoing factors by regularly distributing large quantities of commonly-abused controlled substances to clients who are serving a customer base comprised of individuals who are themselves abusing prescription medications, many of whom are addicted and who reasonably can be expected to become addicted or to engage in illicit drug transactions. The Defendant's

-17-

negligent acts and omissions in violation of West Virginia's drug laws have led to the dispensing of controlled substances for non-legitimate medical purposes of epidemic proportions, including the operation of bogus pain clinics that do little more than provide prescriptions for addictive controlled substances, thereby creating and continuing addictions to prescription medications.

36. Under West Virginia law a party who violates a statute which violation results in damages is liable for such damages as are sustained therefrom. *W.Va. Code* § 55-7-9.

37. Defendant Cardinal has by its acts and omissions proximately caused and substantially contributed to damage to the State by violating West Virginia laws, by creating conditions that contribute to the violations of West Virginia laws by others, by its negligence and by its reckless disregard of the customs, standards and practices within Defendant's own industry.

## Count III

### Violation of the West Virginia Consumer Credit and Protection Act (WVCCPA) Unfair Methods of Competition or Unfair or Deceptive Acts or Practices

38. The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

39. West Virginia law as embodied in *W.Va. Code* § 46A-6-104 prohibits the use of unfair methods and/or competition or unfair or deceptive acts or practices in any trade or commerce.

40. The Attorney General specifically is charged with the administration of this provision and may act *sua sponte* as the agent and legal representative of the State in civil proceedings

to enforce the statute, *W. Va. Code* § 46A-6-103, §§ 46A-7-102, -108, -110, -111.

41.   Violations of statutes and regulations that are enacted to protect the Public or in the

exercise of the State's police power constitute unfair or deceptive acts or practices.

42.   Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances

Act, *W. Va. Code* § 60A-3-301 18 provide, *inter alia,* for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 *W.Va.C.S.R.* § 2-4.4.

43.   Each violation of these mandatory duties in the West Virginia Uniform Controlled

Substances Act and its corresponding regulations is an unfair or deceptive act or practice

in the conduct of trade or commerce, as set forth in *W. Va. Code* § 46A-6-104.

44.   Defendant Cardinal's repeated violations were and are willful, and the State seeks civil

penalties under *W. Va. Code* § 46A-7-111(2) for each violation.

45.   As a proximate cause and result of the Defendant's actions and omissions the State has

sustained damages, both past and in the future.

46.   The State seeks all "other appropriate relief" under *W. Va. Code* § 46A-7-108, including

attorney fees and costs.

-19-

## Count IV

### Public Nuisance

47.    The State and its agencies hereby incorporate by reference all of the previous allegations

of this Amended Complaint.

48.    Defendant Cardinal, individually and acting through its employees and agents, has created

and continues to perpetrate and maintain a public nuisance by the massive distribution of

abused prescription drugs for use by the citizens of West Virginia, and by its failure to put

in place effective controls and procedures to guard against theft and/or diversion of

controlled substances, and its failures to adequately design and operate a system to

effectively disclose suspicious orders of controlled substances, or to follow the system it

has designed, and by its failure to inform the State of suspicious orders when discovered

by the registrant ("suspicious orders" include but are not limited to orders of unusual size,

orders deviating substantially from a normal pattern, and orders of unusual frequency).

The Defendant knew or should have known that its conduct would cause hurt or

inconvenience and/or damage to the State of West Virginia in a multitude of ways.

49.    As a direct and proximate result of the conduct of Defendant Cardinal as set forth above,

Defendant has negligently, intentionally and/or unreasonably interfered with the right of

West Virginians to be free from unwarranted injuries, addictions, diseases and sicknesses

and have caused ongoing damage, hurt or inconvenience to the State of West Virginia and

its residents exposed to the risk of addiction to prescription drugs, who have become

addicted, and/or have suffered other adverse consequences from the use of the addictive

prescription drugs distributed by Defendant, and countless others who will suffer the

same fate in the future as Defendant's conduct is continuing.

50. As a direct result of Defendant's conduct as set forth above, Defendant has negligently, intentionally and/or unreasonably interfered with the Public's right to be free from unwarranted injury, disease or sickness, and have caused ongoing damage, hurt or inconvenience to the public health, the public safety and the general welfare of the citizens of West Virginia.

51. The health and safety of the citizens of West Virginia, including those who have used or will use prescription drugs, is a matter of great public interest and of legitimate concern to the State and its citizens as the prescription drug epidemic has been so widespread that entire communities have been devasted.

52. The public nuisance created, perpetuated and maintained by Defendant can be abated and further occurrence of such harm and inconvenience can be prevented.

53. The Defendant was on notice that an epidemic of prescription drug abuse existed and has existed during times which are relevant to this Amended Complaint.  Such notice is the result of

- A large amount of media coverage of prescription drug abuse and its consequences by both national and local print, television and radio media;

- Publications received from government sources as well as warnings and recommendations contained in trade and professional journals; and

- Changes in law and regulations that were designed specifically to address the growing problem of prescription drug abuse.

54. The widespread publicity contained many references and statistics concerning West Virginia's severe problems resultant from prescription drug abuse including, but not

limited to, suffering the nations' highest per capita death rate from prescription drug
overdose, and crime that county prosecutors estimate comprise more than half their
criminal case dockets.

55.    Notwithstanding the knowledge of this epidemic of prescription drug abuse in West
Virginia, the Defendant persisted in a pattern of distributing controlled substances of the
kinds that were well-known to be abused and diverted all the while distributing them in
geographic areas, and in such quantities and with such frequency, that the Defendant
knew or should have known that these substances were not being prescribed and
consumed for legitimate medical purposes.

56.    As the result of the above-described conduct the Defendant negligently, recklessly and/or
intentionally, and acting with blind indifference to the facts, created and continued
propagate a public nuisance.  More particularly, the public nuisance so created,
injuriously, and in many areas pervasively, affects West Virginia communities and the
State, and endangers the public health and safety and inconveniences the citizens of the
State, *inter alia,* in the following ways:

- Areas in certain communities have become congested with persons who gather in large groups outside of "clinics, pharmacies and physician offices" that in fact are component parts of Pill Mills that exist only to prescribe and deliver drugs for illicit, non-medical purposes;

- Crimes and other dangerous activities committed by those addicted to controlled substances have increased dramatically;

- Hospital services, especially those services provided by emergency rooms, are being consumed by persons with prescription drug abuse issues;

- Law enforcement and prosecutorial resources are being exhausted and consumed by having to address prescription drug abuse issues to the exclusion of other

-22-

matters;

- Public resources are being unreasonably consumed in efforts to address the prescription drug abuse epidemic, thereby eliminating available resources which could be used to benefit the public at large;

- Court dockets are congested by prescription drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our courts by others;

- Jails and prisons suffer from overcrowding.

57.    As a direct result of the acts and omissions of Defendant in creating, perpetuating substantially contributing to and maintaining the public nuisance herein above described, the public nuisance described herein has damaged the health and safety of West Virginia citizens in the past and will continue to do so in the future unless the nuisance is abated.

58.    The State has sustained economic harm in the expenditure of massive sums of monies and will in the future continue to suffer economic harm unless the above-described public nuisance is abated.

## Count V

## Negligence

59.    The State realleges and incorporates by reference all preceding paragraphs as though fully set forth herein and further alleges the following.

60.    Defendant Cardinal has a duty to exercise reasonable care in the distribution of controlled substances.

61.    This Defendant has breached this duty by its acts and omissions alleged above.

62.    As a proximate result, Defendant and its agents have caused the State to incur excessive costs related to diagnosis, treatment and cure of addiction or the risk of addiction to such controlled substances, fighting and controlling crime thus the State has borne the massive

costs of these illnesses and conditions by having to provide necessary medical care, facilities and services for treatment of citizens of West Virginia who are unable to afford or otherwise obtain such necessary medical care, facilities and services, and many other costs proximately caused by Cardinal's wrongful acts and omissions.

63.   The Defendant was negligent in failing to monitor and guard against third-party misconduct, *i.e.* the conduct of the Pill Mill physicians and staff as well as corrupt pharmacists and staff and, in fact, by its actions the Defendant participated and enabled such misconduct.

64.   Defendant's acts and omissions as aforesaid imposed an unreasonable risk of harm to others separately and/or as combined with the negligent and/or criminal acts of third parties.

65.   The Defendant is in a class of a limited number of parties that distribute controlled substances and such activity poses distinctive and significant dangers.  The dangers include diversion of controlled substances for non-legitimate medical purposes and addiction to same by consumers.

66.   The Defendant was negligent in not acquiring and utilizing special knowledge and special skills that relate to the dangerous activity in order to prevent and/or ameliorate such distinctive and significant dangers.

67.   Controlled substances are dangerous commodities.  The Defendant as a distributor is required to exercise a high degree of care and diligence to prevent injury to the public from the diversion of controlled substances during distribution.  The Defendant breached its duty to exercise the degree of care, prudence, watchfulness, and vigilance

-24-

commensurate to the dangers involved in the transaction of its business. The Defendant cannot delegate this duty of care to another.

68. The distribution of these controlled substances are under the exclusive control and management of the Defendant. The State is without fault and the injuries to the State and its citizens would not have happened in the ordinary course of events had the Defendant used due care commensurate to the dangers involved in the distribution of controlled substances. Hence, the Defendant is negligent.

## Count VI

## <u>Unjust Enrichment</u>

69. Plaintiffs incorporate by reference all of the previous allegations of this Complaint.

70. Because of prescription drug abuse the State of West Virginia expends additionally hundreds of millions of dollars annually on law enforcement, prosecutors and prosecutions, courts and court personnel, public defender services, corrections and correctional facilities, probation and parole, public welfare and service agencies, healthcare and medical services and drug abuse education. Further, the State suffers losses in revenue and incurs costs from workplace accidents and absenteeism resulting from prescription drug abuse.

71. The State of West Virginia remains responsible for costs of prescriptions, health care and other medically-related costs, rehabilitation and work-related programs, workers' compensation, public insurance, law enforcement, prosecution costs, court related costs, public defender services, correctional institutions, probation and parole services, which costs have substantially increased as the result of the Defendant's acts and omissions

herein complained of and will in the future continue to increase unless the Defendants'
conduct is abated.

72.    The Defendant has thus been enriched unjustly by neglecting its duty of distributing
drugs only for proper medical purposes which substances are consumed for reasons other
than medical.

73.    The unjust enrichment of the Defendant Cardinal is directly related to the damage, loss
and detriment to the Plaintiff State of West Virginia and its agencies named herein.

## PRAYER

**WHEREFORE**, the State and its agencies pray that the Court grant the following relief:

1.    Judgment in favor of the State;

2.    Temporary relief, a preliminary injunction and permanent injunction ordering the
ordering the Defendants to comply with the West Virginia Uniform Controlled
Substances Act, *W. Va. Code* § 60A-3-301 (and regulations promulgated thereto), and
*West Virginia Code* § 46A-6-104, and to cease their unlawful conduct, and mandate the
Defendants to promptly notify the West Virginia Board of Pharmacy, the Office of the
Attorney General, and the Department of Military Affairs and Public Safety of any and all
suspicious orders for controlled substances as received from parties who are located in
West Virginia and to submit their system for determining suspicious orders to those West
Virginia authorities for prior approval, and to enter temporary and permanent injunctions
that mandate Defendant be enjoined from distributing in West Virginia any controlled
substances for any non-legitimate medical purpose;

3.    Equitable relief, including but not limited to restitution and disgorgement;

4.  Order a jury trial where so triable to determine such costs, losses and damages as are proved in this action in relation to the several counts of this Second Amended Complaint including, but not limited to:

    a.  Losses sustained as the proximate result of both negligent and conscious violations of the West Virginia Uniform Controlled Substances Act and regulations;

    b.  Damages sustained as the proximate result of nuisances created by the prescription drug abuse epidemic;

    c.  Damages and losses sustained as the proximate result of the Defendant's negligence in marketing, promoting and distribution of controlled substances in West Virginia;

    d.  Disgorgement of unjust enrichment of the Defendant;

    e.  Civil penalties of up to $5000 for each repeated and willful violation of Chapter 46A, under West Virginia Code § 46A-7-111;

    f.  Pre- and post-judgment interest;

    g.  Costs and reasonable attorneys' fees; and

5.  Such other relief, fees and cost as shall be available under the West Virginia Credit and Consumer Protection Act;

6.  Order reimbursement of all litigation costs and enter an award of attorney fees herein;

7.  And grant such other and further relief including but not limited to punitive damages as shall be deemed appropriate herein.

-27-

Plaintiffs seek a jury trial for all such counts as are so triable.

> **STATE OF WEST VIRGINIA** *ex rel.*
> Patrick Morrisey**,** Attorney General
>
> Joseph Thornton, Secretary
> **WEST VIRGINIA DEPARTMENT OF
> MILITARY AFFAIRS AND PUBLIC
> SAFETY**, an agency of the State of West
> Virginia,
>
> Karen Bowling, Secretary
> **WEST VIRGINIA DEPARTMENT OF
> HEALTH & HUMAN RESOURCES**, an
> agency of the State of West Virginia,
>
>
> *By Counsel,*
>
>
> Steve Jarrell, (W.Va. Bar No. 6787)
> Chief Deputy Attorney General
> **OFFICE OF ATTORNEY GENERAL**
> Consumer Protection and Antitrust Division
> 812 Quarrier Street, 1ˢᵗ Floor
> Charleston, WV 25326
> Telephone: 304-558-8986
>
>
> James M. Cagle, WV Bar No. (580)
> **CAGLE & JACKSON, ATTORNEYS**
> P.O. Box 12326
> Big Chimney Station
> Charleston, WV 25302
>
>
> Rudolph L. DiTrapano WV Bar No.1024
> **DITRAPANO BARRETT DIPIERO
> MCGINLEY & SIMMONS, PLLC**
> 604 Virginia Street, East
> Charleston, WV 25301

-28-

## IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY,**
Attorney General, **et al.**

        Plaintiffs,

v.

Civil Action No.12-C-140
(Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.,**
an Ohio corporation doing business in West Virginia,

        Defendant.

### CERTIFICATE OF SERVICE

The undersigned, Counsel for the Plaintiff, State of West Virginia ex rel. Morrisey does

hereby certify that a true and correct copy of the ***Second Amended Complaint*** was served by via

fax and email to Mark A. Carter, Esq., and W. Henry Jernigan, Jr., Esq at the law firm of

Dinsmore & Shohl, LLP, P.O. Box 11887, Charleston, WV 25339 and via email to James R.

Wooley, Esq. and Chad A. Readler, Esq., on this the 11th day of August, 2015.

James M. Cagle (WV Bar No. 580)
P. Rodney Jackson, (WV Bar No.1861)
**CAGLE & JACKSON**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25301

Steve Jarrell, (W.Va. Bar No. 6787)
Chief Deputy Attorney General
**OFFICE OF ATTORNEY GENERAL**
Consumer Protection and Antitrust Division
812 Quarrier Street, 1st Floor
Charleston, WV 25326
Telephone: 304-558-8986

Rudolph L. DiTrapano     (WV Bar #1024)
**DiTRAPANO, BARRETT, DiPIERO,**
**McGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, WV 25301
(304) 342-0133

-29-