# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA


CHARLESTON DIVISION


STATE OF WEST VIRGINIA
*ex rel.* DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,

            Plaintiff,

v.                                  Civil Action No. 2:12-CV-03836
                                   (Hon. John T. Copenhaver, Jr., Judge)

CARDINAL HEALTH, INC.
an Ohio corporation doing business in
West Virginia,
            Defendant.


PLAINTIFF'S REPLY
MEMORANDUM IN SUPPORT OF MOTION
TO REMAND AND FOR COSTS


           State of West Virginia ex rel.
           **Darrell V. McGraw, Jr.**
           Attorney General

           *By Counsel,*


           Frances A. Hughes, Esq.
           Managing Deputy Attorney General
           **OFFICE OF ATTORNEY GENERAL**
           Building 1, Room 26-E
           Capitol Complex
           Charleston, WV 25305
           Telephone: 304-558-2021


           James M. Cagle, WV Bar No. (580)
           Cagle & Jackson, Attorneys
           P.O. Box 12326
           Big Chimney Station
           Charleston, WV 25302

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STATE OF WEST VIRGINIA
*ex rel.* DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,

              Plaintiff,

v.                                      Civil Action No. 2:12-CV-03836
                                      (Hon. John T. Copenhaver, Jr., Judge)

CARDINAL HEALTH, INC.
an Ohio corporation doing business in
West Virginia,
              Defendant.

**I.**

      **The Decision in <u>State ex rel. McGraw, Attorney General v. CVS Inc. et al.</u> 646 F. 3d 169, is Dispositive and Requires Remand to the Circuit Court of Boone County, West Virginia.**

      Cardinal continues to argue just as each of the Defendants did in <u>State ex rel. McGraw v. CVS et al.</u> that this case is a disguised class action or if not a class action then it is a mass action within the meaning of CAFA.  In so arguing Cardinal strains to distinguish this action from <u>CVS</u>. Moreover, as is addressed <u>infra</u> Cardinal attempts to support the alleged distinctions between the cases by relying upon its own misinterpretation of applicable statutes.  Indeed, in certain instances Cardinal either misreads the statute or neglects to consider the entire statutory language.

      Cardinal first summarizes its argument by stating that "this case is strikingly distinguishable from CVS, . . . " and that Attorney General McGraw has appointed himself as the enforcer of the Uniform Controlled Substances Act, Cardinal memorandum p. 3.  So begins Cardinal's misinterpretation and misapplication of West Virginia law, CAFA and in particular the decision in

CVS. Cardinal erroneously asserts that the enforcement authority of the Uniform Controlled Substances Act has been clearly and expressly assigned to the West Virginia Board of Pharmacy, citing as its authority W.Va. Code §60A-2-201. §60A-2-201 states that the said Board shall *administer* the provisions of this chapter, not enforce them. The chapter includes offenses and penalties, §60A-4-401 et seq for which Cardinal surely understands that the Board of Pharmacy does not act as enforcer. On the contrary rather than being authorized to enforce violations of the Board's own rules and statutes which it administers the board must report any alleged violations to prosecuting attorneys for enforcement, W.Va. Code §30-5-20. In the case of violations of the Uniform Controlled Substances Act, that enforcement clearly belongs not to the Board, but to prosecuting attorneys and to the Attorney General and his assistants, §60A-5-501( c ) precisely as is asserted in the complaint. W.Va. Code §30-5-2 which authorizes the creation of the Board of Pharmacy grants no enforcement authority to the board for violations. Rather, the Board regulates, employs agents, adopts rules of professional conduct, and disciplines pharmacists. Further proof that the Board has no enforcement authority is found in the January, 2011 audit overview conducted and prepared by the West Virginia Legislative Auditor. Not only did that audit note with alarm, as has Attorney General McGraw, that West Virginia led the nation in overall drug overdose death rates and that over a five(5) year period ending in 2004 deaths from unintentional overdose increased by 550 percent, but also the audit recommended that the legislature should consider amending West Virginia law to permit investigations and enforcement by the Board. As that report noted on page 6 the drug monitoring program which is at the heart of this action is merely "reactionary" in its operation. The Board can enforce nothing. Therefore, it is left to others, in this case Attorney General McGraw, to enforce drug laws.

Cardinal argues that the "key" to the CVS decision was the Attorney General's "statutory authority to act on behalf of the sovereign-authority [he] largely lacks here," Memorandum p. 9. The Court of Appeals did emphasize the fact that Attorney General McGraw was acting as a parens patriae to vindicate the sovereign and quasi-sovereign interests as well as individual interests of citizens, 646 F. 3d at 176. Moreover, this Court had earlier emphasized the fact that Attorney General McGraw brought the action as a parens patriae suit, 748 F. Supp. 2d 580, 591-597. This is also how Attorney General McGraw acts in the case sub judice.

In Counts I and II herein the Attorney General acts under authority which is plainly vested in him under the West Virginia Uniform Controlled Substances Act, §60A-5-501( c ), complaint paragraphs 4a and 15. W.Va. Code §60A-5-503 grants State courts the authority to exercise jurisdiction to enjoin violations of the Act as is requested in Count I. The request for an injunction by a State Court is well within the Attorney General's power under 501( c ). This claim is similar to that which Attorney General sought in CVS i.e. injunctive relief for violations of West Virginia laws.

In CVS Attorney General McGraw acted to address violations of the West Virginia Consumer Credit and Protection Act, the State's generic drug pricing statute, and to disgorge impermissible collection of excess charges under W.Va. Code §46A-7-111. Similar claims are made in this case. In Count III the attorney general sues for violations of W.Va. Code §46A-6-104 which prohibits unfair methods and unfair or deceptive acts or practices in trade or commerce, paragraph 33. Attorney General McGraw is authorized to so act for the State under W.Va. Code § §46A-6-103, 46A-7-102, 108, 110 and 111, paragraph 34. As in CVS the Attorney General seeks hereby to vindicate the State's quasi-sovereign interests. He acts, in short, to exercise power over entities within West Virginia's jurisdiction in order to enforce West Virginia's laws just as was the case in

3

CVS.

In Count VIII of the complaint the Attorney General is acting under the clear authority which is granted to him in W.Va. Code § §47-18-6, 7 and 9. Attorney General McGraw brings this suit for violations of the West Virginia Antitrust Act, complaint paragraph 71. Here it is asserted that Cardinal seeks an unfair trade advantage over other distributors by simply ignoring the requirement that prescriptions must be for legitimate medical purposes. Instead, Cardinal either by design or through purposeful blind indifference ignored the obvious facts.

W.Va. Code §47-18-9 states:

> "The state and any of its political subdivisions and public
> agencies shall be deemed a *person* within the meaning
> of this section. *The attorney general may bring an action*
> *on behalf of this State, or any of its public agencies*, counties,
> municipalities or other political subdivisions to recover the
> damages provided for by this section or provision of federal law:
> Provided, that this shall not impair the authority of any
> such county, municipality or other political subdivision to
> bring such action on its own behalf.

The antitrust claims in this case are brought for the interests of the State and its agencies and not for individual persons under the above authority. The West Virginia statutes and regulation which form the basis for the relief which is herein sought do not require a consumer, individual West Virginia citizens or a consumer transaction. Cardinal has once again misread the applicable law. Cardinal therefore erroneously argues that claims under the West Virginia Antitrust Act are necessarily class actions, memorandum p.3. The statute Cardinal relies upon is W.Va. Code §47-18-17 which reads in pertinent part:

> (a)     The Attorney General *shall be permitted to bring*
> *an action as parens patriae of natural persons who*
> *are citizens and residents of this State. . .*

The Attorney General has chosen not to exercise such authority for natural citizens.  He instead brings the claims as he is entitled to do for the State and its agencies.  Cardinal further errs in its argument that §48-18-17(b)-(e) is "comparable" to Rule 23 of the Rules of Civil Procedure.  CAFA defines a class action as being a civil action filed under F.R.C.P. 23 or similar State statute or rule.  West Virginia has a Rule 23 and it is not being used in this case.  §48-18-17 lacks the requirements of numerosity, commonality, typicality and adequacy of representation.  Further, there is nothing whatsoever in §48-18-17 which addresses the requirements needed to satisfy Rule 23(b).  That statute is simply not similar to F.R.C.P. 23.

## II.
## The State of West Virginia is the Real Party In Interest

The US Supreme Court's analysis in <u>Snapp and Son, Inc. v. Puerto Rico</u>, 485 U. S. 592 (1982) provides guidance as to the nature of the state's claims in a parens patriae capacity. To have parens patriae standing the injury claim must relate to a quasi-sovereign interest. <u>Snapp</u> at 601.

Quasi-sovereign interests consist of a set of interests relating to the well-being of its populace. For example the State of West Virginia may enjoin public nuisances, <u>North Dakota v. Minnesota</u> 263 US 365 (1923 ); <u>Georgia v. Tennessee Copper Company</u>, 206 US 230 (1907) <u>see</u> complaint count IV.  As set forth in <u>Georgia v. Pennsylvania R. Company</u>, 324 US 439 (1945) as cited in <u>Snapp</u>, regarding the State's interests as considered apart from individual citizens who might be effected, the Court stated:

> "If the allegations of the bill are taken as true, the economy
> of Georgia and the welfare of her citizens have seriously
> suffered as the result of this alleged conspiracy.... Trade
> barriers may cause a blight no less serious than the spread
> of noxious gas over the land or the deposit of sewage in the

streams. They may affect the prosperity and welfare of a State
as profoundly as any diversion of waters from the rivers......
Georgia as a representative of the public is complaining of a wrong
which, if proven, limits the opportunities of her people, shackles
her industries, retards her development, and relegates her to an
inferior economic position among her sister States. These are
matters of great public concern in which Georgia has an interest
apart from that of particular individuals who may be affected. Snapp p. 606.
"This summary of the case law involving parens patriae actions
leads to the following conclusions. In order to maintain such an
action, the state must articulate an interest apart from the interest
of particular private citizens, i.e. the State must be more than a
nominal party. The State must express a quasi-sovereign interest.
Although the articulation of such interest is a matter for case-by-case
development -neither an exhaustive formal definition nor a definitive
list of qualifying interests can be presented in the abstract -certain
characteristics of such interest are so far evident. These characteristics
fall into two general categories. First, the State has a quasi-sovereign
interest in the health and well - being - both physical and economic
of its residents in general.... See Snapp p. 607.


"The court has not attempted to draw any definitive limits
on the proportion of the population of the State that must
be adversely affected by the challenged behavior. Although
more must be alleged than injury to an identifiable group of
individual residents, the indirect effects of the injury must be
considered as well in determining whether the state has alleged
injury to a sufficiently substantial segment of its population.
One helpful indication in determining whether an alleged injury
to the health and welfare of its citizens suffices to give the State
standing to sue as parens patriae is whether the injury is one that
the state, if it could, would likely attempt to address through it
sovereign lawmaking powers". Id.

As alleged in its complaint, the State has attempted to address, through its lawmaking powers, a

prohibition of the acts in which the defendant has engaged.  The violation of West Virginia laws

form the basis of the state law claims made by the Plaintiff to protect the health and welfare of

West Virginia citizens.

6

The Defendant Cardinal's continuous violation of state law by distributing enormous amounts of controlled substances much of which is then misprescribed and misdirected for illegitimate medical purposes represents the worst type of "pollution". As in Georgia v. Tennessee Cooper Company, supra, the state has a right to protect the health and well-being of its citizens. Like the air pollution in that case, the "drug pollution" caused by Defendant Cardinal is devastating to the State of West Virginia.  In its capacity of quasi-sovereign the State has the right under State law to prevent the illegal drug pollution and it "has an interest independent of and behind the titles of its citizens." Tennessee Cooper at 273.

All relief being sought by the State in this suit consists of injunctive relief and damages for the State. For example, the claim for medical monitoring, is for the benefit of the State to educate and to assist members of the public who have become addicted to controlled substances distributed by the defendant in violation of law.  Its purpose is also to prevent crime caused by the prescription drug epidemic.  The purpose of the medical monitoring claim is to limit and prevent the damages being sustained by the state.   For example, such claims relate to the Medicaid costs associated with treating persons who have become addicted to controlled substances, costs to the criminal justice system and other costs to the State occasioned by Cardinal's illegal distribution of controlled substances for non-legitimate medical purposes.[1]

---

[1]The defendant on page 5 of its memorandum, in respect to the state's claim for medical monitoring, states "not for the state, of course, which has no health to monitor". This argument is contrary to the holding in State of Georgia v. Tennessee Copper Company supra at p. 237 wherein the state maintained an action in its quasi-sovereign capacity and in that capacity the state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain. Likewise the State has an interest in the physical and economic well-being of its citizens in general. State of West Virginia ex rel. Mc Graw v CVS Pharmacy, Incorporated 646 F. Supp 169 (2011) at 180.  Both Missouri v. Illinois, 180 U.S. 208 (1901) and Georgia v. Tennessee Cooper Co. supra "involved the State's interest in the abatement of public nuisances, instances in which the inquiry to the public health and comfort was graphic and direct." Snapp at p. 604.

These persons frequently are uninsured and are treated at emergency rooms, thereby burdening State resources.

The state of West Virginia certainly has a right to seek money from the defendant Cardinal to mitigate the damages the state has and is suffering. But for the violations of State law the costs for medically treating such persons at the expense of the State would never have been incurred in such alarming amounts. As in State of W.Va. v. Morgan Stanley & Co., Inc., 747 F. Supp. 332, the damages sought by the state is for monies paid out by the state to treat medical issues related to addiction and substance abuse caused, in part, by the defendant Cardinal's distribution of controlled substances for non-legitimate medical purposes. Except as spelled out in the consumer protection act, the Attorney General has no claim for these monies. The monies, if recovered, belong to the State of West Virginia.

In Nevada v. Bank of America Corporation, 672 F.3d 661 (9th Cir. 2012) the State of Nevada through its attorney general brought an action pursuant to the Nevada Deceptive Trade Practices Act ("DPTA") in the name of the State through its Attorney General against those persons whom the Attorney General had reason to believe engaged or is engaging in a deceptive trade practice. Among the relief which was sought by the State of Nevada was a declaratory judgment and injunctive relief, civil penalties, restitution for defrauded Nevada consumers, attorney fees and costs of investigation. The court held, following its ruling in Washington v. Chimei Innoulux Corp., 659 F. Supp 2d 942 (2012) that attorney general enforcement actions were not removable to U.S. District Court. The Defendants argued that consumers were the real parties in interest for the monetary relief claims, therefore the State's parens patriae claims were disguised class-action removable under CAFA. The 9th Circuit disagreed. It held that parens patriae suits lack the defining attributes of true class actions.

8

In accord is the finding in LG Display Co., LTD., et al. v. Lisa Madigan, Attorney General of the State of Illinois, 665 F.3d 768  (7th Cir 2011). In LG Display the Illinois Atty. Gen. filed suit against the manufacturers of LCD panels for violations of the Illinois Antitrust Act asserting that the Defendants had unlawfully inflated prices on products sold to the state, its agencies, and residents. Finding the discussions in Washington v. Chimei and in McGraw v. CVS to be persuasive the Court found that the parens patriae suit was not a class action or a mass action under CAFA.  The Court stated:

> "A State will have standing to sue as parens patriae where it can articulate an interest apart from the interest of particular private parties" and "express a quasi-sovereign interest." Snapp at 607. A state, for example, has a quasi-sovereign interest in the health and well-being - both physical and economic off its residents in general.  Id."

It is precisely for just such interests that Attorney General McGraw brings the instant suit.

### III.
### CAFA/Diversity
### The Requirements of Neither is Satisfied

Under CAFA to be a class action the case must be brought under Rule 23 or the state equivalent. The action must be brought by a "representative person." "This case was brought by the attorney general, not by a representative of a class. A class action must be brought as a class action". LG Display at 772.  The LG Display Court noted that the case was brought as a parens patriae suit under the Illinois Antitrust Act ("IAA") which does not impose any of the familiar Rule 23 constraints such as numerosity, commonality, or typicality.

As in LG Display, when Rule 23 and the West Virginia statutes and regulations that constitute the foundation of the State of West Virginia's complaint are compared, these statutes appear as "entirely different beasts". Id at 772.

9

> "This conclusion is consistent with recent decisions from
> the Fourth and Ninth Circuits. In CVS Pharmacy, 646 F.3d
> at 172, the Fourth Circuit held a parens patriae suit brought
> by the Attorney General of West Virginia alleging violations
> of the state generic drug statute and state credit protection act
> was not removable as a class action because the West Virginia
> laws did not include provisions typical of a class action
> addressing the adequacy of representation, numerosity,
> commonality, and typicality."

By the plain language of section 1332, this case is not removable.

Regarding "mass actions" 28 U.S.C. Section 1332 (d) (11) (B) (I) provides that monetary

relief claims of 100 or more persons are to be tried jointly when the plaintiffs' claims involve

common questions of law or fact. In LG Display as in the present case, it is only the Attorney

General , be it Illinois or West Virginia who brings the suit. Under the very language of section

1332, the suit is not removable as a mass action, Anderson v. Bayer Corp., 610 F. 3d 390, 394

(7th Cir. 2010). Moreover, a suit is not a mass action under 28 U.S.C. Section 1332 (d) (11) (B)

(ii) ( III) if  all of the claims in the action are asserted on behalf of the general public (and not on

behalf of individual claimants or members of a purported class) pursuant to a State statute

specifically authorizing such action.  Once again Cardinal misreads the statute.  While it seems

almost fatuous to say, one person is not a hundred or more people.

Likewise under 28 U.S.C. 1332 (d) (11) (B) (ii) as used in subparagraph (A) the term

"mass action" *shall not include any civil action in which (I) "all of the claims in the action arise*

*from an event or occurrence in the State in which the action was filed, and that allegedly*

*resulted in injuries in that State or in States contiguous to that State. "* The event(s) or

occurrence(s) at issue in this case transpired in West Virginia through the distribution in West

Virginia by Cardinal of controlled substances which were used for illegitimate medical purposes.

Violations of West Virginia laws and regulations apply only to acts, occurrences and omissions

within West Virginia.

Finally, when the State is the real party in interest complete diversity is lacking.  That is true even when the Attorney General is found to be an additional real party in interest, State of West Virginia ex rel. McGraw v. Minnesota Mining and Manufacturing, 354 F. Supp. 2d 660, 664 (U.S.D.C., S.D. West Virginia 2005). As such diversity of citizenship is destroyed, therefore CAFA by its terms does not apply.

## IV.
## Cardinal Wrongfully Alleges Fraudulent Joinder

As in State v. Minnesota Mining, supra, Cardinal's argument that the attorney general is powerless to bring some of the instant claims is in effect one of fraudulent joinder.

> The fraudulent joinder standard is well settled.  Our court of appeals notes the "heavy burden" laid upon a Defendant removing a case on such grounds:

> "In order to establish that a nondiverse Defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the Plaintiff would be able to establish a cause of action against the in-state Defendant in State Court; or [t]hat there has been outright fraud in the Plaintiff's pleading or jurisdictional facts." Mayes v. Rapoport, 198 F. 3d 457, 464 (4th Cir. 1999) (quoting Marshall v. Manville Sales Corp., 6 F. 3d 229, 232 (4th Cir. 1993).  The applicable standard "is even more favorable to the Plaintiff than the standard for ruling on a motion to dismiss[.]" Hartley v. CSX Transp., Inc., 187 F. 3d 422, 424 (4th Cir. 1999).

> As the decision in Hartley illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this Circuit.  Any shades of gray are resolved in favor of remand.  At bottom, a Plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> CSX contests these points and we are unable to resolve them with the snap of a finger at this state of the litigation.  Indeed, these are

questions of fact that are ordinarily left to the state court jury.

> In all events, a jurisdictional inquiry is not the appropriate stage
> of litigation to resolve. . . various uncertain questions of law and
> fact. Allowing joinder of the public Defendant is proper . . .because
> courts should minimize threshold litigation over jurisdiction.
> Jurisdictional rules direct judicial traffic. They function to steer
> litigation to the proper forum with a minimum of preliminary fuss.
> The best way to advance this objective is to accept the parties [as]
> joined. . . unless joinder is clearly improper. To permit extensive
> litigation of the merits of a case while determining jurisdiction
> thwarts the purpose of jurisdictional rules, <u>Minnesota Mining</u> at 666.

The initial inquiry must be as to whether or not this court has jurisdiction. Even Cardinal tacitly recognizes this. Cardinal argues on page 10 of its memorandum that the Attorney General's lack of delegated legislative authority to bring the bulk off this action will eventually doom the unauthorized claims to dismissal for want of standing this argument has no bearing as to jurisdiction. However, as this is a Motion to Remand and not a Rule 12(b)(6) motion to dismiss, the relevant questions are to whom would the State's actual damages enure and what is the purpose of the litigation. *Minnesota Mining*, 354 F. Supp.2d at 665 (*quoting Morgan Stanley*, 747 F. Supp. at 337). This argument is in effect a red herring which obscures the CAFA jurisdiction argument. The Attorney General's authority has been, and must be, recognized under the above-identified statutes. Any further arguments on the subject belong in West Virginia's state courts.

This same question was previously addressed in <u>Minnesota Mining</u>, 354 F. Supp 2d at 665 where this Court found that:

> Defendant cites no holding that a state officer's ultra vires
> pursuit of recompense for the state somehow converts him
> into the real party in interest for diversity person purposes
> under the circumstances. In any event, the state clearly satisfies
> the rather elastic test for qualifying as the real party in interest
> for diversity purposes, at least vis-a-vis the attorney general.

12

> Whether a state is the real party in interest for diversity
> purposes must be determined by looking at the "essential
> nature and effect of the proceeding". In particular, a state,
>
> as a plaintiff, is the real party in interest for diversity purposes
> when the relief sought is that which enures to it alone, and in
>
> its favor for the judgment or decree, if for the plaintiff, will
> effectively operate.

To reiterate what is crystal clear, regardless of the defendant Cardinal's interpretation of

the language contained in the complaint, the State of West Virginia makes no claims for any

individual West Virginia citizens/consumers. In *CVS Pharmacy, supra*, the Fourth Circuit

recognized the importance of the federalism and comity principles inherent in the Eleventh

Amendment, observing:

> While it is true that West Virginia voluntarily entered into its own
> courts to enforce its laws, it did not voluntarily consent to removal
> of its case to a federal court, and a <u>federal court should be most</u>
> <u>reluctant to compel such removal, reserving its constitutional</u>
> <u>supremacy only for when removal serves an overriding federal</u>
> <u>interest</u>. *See Tennessee v. Davis*, 100 U.S. 257, 266–67, 25 L. Ed.
> 648 (1880).

*CVS Pharmacy*, 646 F.3d at 178 (emphasis added). Here, as in *CVS Pharmacy, supra*, the State

is enforcing its own laws and seeking its own damages in its *parens patriae* capacity. Therefore,

Defendants' cited authorities do not control in this instance, and the Eleventh Amendment and its

attendant principles of federalism and comity prohibit removal.

## V.

## Conclusion

For all the foregoing reasons and the reasons stated in its initial brief, the State's Motion

to Remand should be granted and this action should be remanded to the Circuit Court of Boone

County, and the State awarded its fees and costs.

> State of West Virginia ex rel.
> **Darrell V. McGraw, Jr.**
> Attorney General
>
> *By Counsel,*
>
>
> /s/James M. Cagle (WV Bar No. 580)
> Frances A. Hughes, Esq.
> Managing Deputy Attorney General
> **OFFICE OF ATTORNEY GENERAL**
> Building 1, Room 26-E
> Capitol Complex
> Charleston, WV 25305
> Telephone: 304-558-2021
>
>
> Cagle & Jackson, Attorneys
> P.O. Box 12326
> Big Chimney Station
> Charleston, WV 25301

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**STATE OF WEST VIRGINIA**
*ex rel.* **DARRELL V. MCGRAW, JR.,**
**ATTORNEY GENERAL,**

Plaintiff,

v.

Civil Action No. 2:12-CV-03836
(Hon. John T. Copenhaver, Jr., Judge)

**CARDINAL HEALTH, INC.**
an Ohio corporation doing business in
West Virginia,

Defendant.

### CERTIFICATE OF SERVICE

The undersigned, Counsel for the Plaintiff, State of West Virginia ex rel. McGraw does

hereby certify that a true and correct copy of the ***Plaintiff's Reply Memorandum in Support of***

***Motion to Remand and for Costs*** was served via electronic filing to Johnny M. Knisely II,

Esquire and Joseph M. Ward, Esquire at the law firm of Goodwin & Goodwin, LLP, counsel for

Defendant, on this the 1st day of October, 2012.

/s/James M. Cagle
James M. Cagle, WV Bar No. (580)
Cagle & Jackson, Attorneys
P.O. Box 12326
Big Chimney Station
Charleston, WV 25302

15