**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE NATIONAL PRESCRIPTION**
**OPIATE LITIGATION**

**MDL No. 2804**

**This document relates to:**                          **Judge Dan Aaron Polster**

*Cabell County Commission v.*
*AmerisourceBergen Drug Corporation, et al.*
**Case No. 17-OP-45053 – DAP**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT BY DEFENDANTS**
**CVS HEALTH CORPORATION, THE KROGER CO., RITE AID**
**CORPORATION, WALGREEN BOOTS ALLIANCE, INC., AND WALMART INC.**

## <u>TABLE OF CONTENTS</u>

INTRODUCTORY STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT .................................................................................................1

ARGUMENT ............................................................................................................2

I.      Plaintiff Lacks Authority to Challenge Legal Activities Otherwise Regulated by the State. .....................................................................2

II.     The Complaint Fails to State a Claim for Relief...................................3

      A.     Plaintiff Has Not Plausibly Pled Any Claim Against the Moving Defendants as Pharmacies...............................................3

      B.     Plaintiff Has Not Plausibly Pled a Claim for Negligence...........4

           a)     The Moving Defendants Do Not Owe a Duty to Plaintiff. ..............4

           b)     Plaintiff Has Not Pled a Breach of the Moving Defendants' Alleged Duty to it..............................................6

           c)     Plaintiff Has Not Plausibly Pled Proximate Causation...................6

      C.     Plaintiff Fails to State a Public Nuisance Claim. ........................8

      D.     Plaintiff's Unjust Enrichment Claim Fails Because Plaintiff Conferred No Benefit On The Moving Defendants....................9

      E.     Plaintiff's Claims Against Moving Defendants Based on the Distribution of Opioids are Barred by W. Va. Code §§ 30-5-21. ..............10

      F.     Plaintiffs' Claims Against Moving Defendants Based on Their Alleged Dispensation of Opioids are Barred by the West Virginia Medical Professional Liability Act. .........................................11

      G.     Plaintiff's Civil Conspiracy Claim Fails.....................................12

      H.     The "Free Public Services" Doctrine Bars Plaintiff's Claims. .................14

      I.     The Economic Loss Rule Bars Plaintiff's Claims. ....................15

CONCLUSION........................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Absure, Inc. v. Huffman*,
    584 S.E.2d 507 (W. Va, 2003) ........................................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................... 3

*Ashworth v. Albers Med., Inc*.,
    395 F. Supp. 2d 395 (S.D. W. Va. 2005) ......................................................................... 10

*Baker v. Purdue Pharma L.P.*,
    No. 1:01-0553, 2002 WL 34213424, at *4 (S.D. W. Va. Mar. 28, 2002) ........................ 10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................................... 3

*Brady v. Deals on Wheels, Inc.*,
    542 S.E.2d 457 (W. Va. 2000) ........................................................................................... 7

*Butler v. Tucker*,
    416 S.E.2d 262 (W. Va. 1992) ........................................................................................... 2

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ............................................................................................. 14

*City of Huntington v. State Water Comm'n*,
    137 W. Va. 786, 73 S.E.2d 833 (1952) ............................................................................. 3

*Cline v. Kresa-Reahl*,
    229 W. Va. 203, 728 S.E.2d 87 (2012) ........................................................................... 12

*County of Erie v. Colgan Air, Inc.*,
    711 F.3d 147 (2d Cir. 2013) ............................................................................................. 14

*District of Columbia v. Air Fla., Inc.*,
    750 F.2d 1077 (D.C. Cir. 1984) ....................................................................................... 14

*Dixon v. American Indus. Leasing Co*.,
    253 S.E.2d 150 (W. Va. 1979) ................................................................................... 13, 14

*Duff v. Morgantown Energy Assocs.*,
    421 S.E.2d 253 (W. Va. 1992) ........................................................................................... 8

*Dunlap v. Hinkle*,
    317 S.E.2d 508 (W. Va. 1984) ........................................................................................... 9

*Emp. Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Meyers Squibb Co.*, 969 F. Supp. 2d 463 (S.D. W. Va. 2013) .......................................... 7

*EQT Prod. Co. v. Wender*,
191 F. Supp. 3d 583 (S.D. W. Va. 2016) ............................................................. 2

*Hays v. Bankers Tr. Co. of California*,
46 F. Supp. 2d 490 (S. D. W. Va. 1999) .............................................................. 13

*In re Rezulin Products Liability Litigation*,
133 F. Supp. 2d 272 (S.D.N.Y. 2001) ................................................................. 11

*Kessel v. Leavitt*,
511 S.E.2d 720 (W. Va. 1998) ............................................................................ 13

*Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*,
954 F.2d 1279 (7th Cir. 1992) ............................................................................ 14

*Maynard v. DEA*,
117 F. App'x 941 (5th Cir. 2004) ....................................................................... 3

*Miller v. Whitworth*,
455 S.E.2d 821 (W. Va. 1995) ............................................................................ 6

*Politino v. Azzon, Inc.*,
212 W. Va. 200, 569 S.E.2d 447 (2002) ............................................................. 14

*Pope v. Edward M. Rude Carrier Corp.*,
138 W. Va. 218, 75 S.E.2d 584 (1953) ............................................................... 8

*Prudential Ins. Co. of Am. v. Couch*,
376 S.E.2d 104 (W. Va. 1988) ............................................................................ 9

*Rhodes v. E.I. duPont de Nemours and Co.*,
657 F. Supp. 2d 751 (S.D. W. Va. 2009) ............................................................ 8

*Ridgeway Coal Co. v. FMC Corp.*,
616 F. Supp. 404 (S.D. W. Va. 1985) ................................................................. 13

*Scott v. Taco Bell Corp.*,
892 F. Supp. 142 (S.D. W. Va. 1995) ................................................................. 6

*State v. St. Clair*,
355 S.E.2d 418 (W. Va. 1987) ............................................................................ 14

*Talley v. Danek Med., Inc.*,
179 F.3d 154 (4th Cir. 1999) .............................................................................. 5

*Thomas v. Wyeth*,
    No. 5:05-0094, 2005 WL 3754203, at *2-3 (S.D. W. Va. June 16, 2005) ................ 10, 11

*Ultramares Corp. v. Touche*,
    255 N.Y. 170 (1931) ............................................................................... 15

*Webb v. Brown & Williamson Tobacco Co.*,
    2 S.E.2d 898 (W. Va. 1939) ...................................................................... 4

*Wheeling Park Comm'n v. Dattoli*,
    787 S.E.2d 546 (W. Va. 2016) ................................................................... 4

*White v. Wyeth*,
    705 S.E.2d 828 (W. Va. 2010) ................................................................... 7

**Statutes**

W. Va. Code § 7-1-3kk ................................................................................. 2

W. Va. Code § 15-2-4.4 ............................................................................... 5

W. Va. Code § 22-1-1 .................................................................................. 2

W. Va. Code § 22-6-6 .................................................................................. 2

W. Va. Code § 30-5-12(a) .......................................................................... 10

W. Va. Code § 30-5-21 ............................................................................... 10

W. Va. Code § 30-5-21(a) ...................................................................... 10, 11

W. Va. Code § 55-7B-1 ............................................................................... 11

W. Va. Code § 55-7B-6(b) .......................................................................... 11

W. Va. Code § 60A-3-301 ............................................................................ 3

**Other Authorities**

Restatement (Second) of Torts § 821B(1) ..................................................... 8

CVS Health Corporation, the Kroger Co., Rite Aid Corporation, Walgreen Boots Alliance, Inc., and Walmart Inc. ("Moving Defendants"), by counsel, move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTORY STATEMENT OF THE ISSUES
## AND SUMMARY OF ARGUMENT

The focus of the Complaint—more than 200 pages—is on the marketing practices and other conduct by manufacturers of prescription opioids, whom the Complaint styles the "Marketing Defendants." *See Compl. Id. ¶¶* 142-466. But the Moving Defendants do not manufacture or market opioids. Indeed, while Plaintiff groups the Moving Defendants among the "Distributor Defendants," *id., ¶¶* 81-93, they have never distributed prescription opioids to third parties. And although Plaintiff elsewhere refers to the Moving Defendants as "National Retail Pharmacies," *id., ¶ 93,* the Complaint does not actually assert any claims again them as pharmacies.

This Court should dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, Plaintiff lacks standing to sue the Moving Defendants. Second, Plaintiff, a county commission, fails to assert proper claims for negligence and nuisance against the Moving Defendants, whose conduct is comprehensively regulated by state and federal authorities. Third, the Complaint does not plausibly allege a claim for unjust enrichment. Fourth, the West Virginia's immunity statute bars Plaintiff's claims. Fifth, the West Virginia Medical Professional Liability Act bars Plaintiff's claims. Sixth, Plaintiff's conspiracy claims fail as a matter of law. And eighth, the "free-public-service" and the "economic loss" doctrines bar Plaintiff's claims.

The Moving Defendants adopt the arguments in their Memorandum of Law in support of their motion to dismiss in the *Summit County* case (Dkt. No. 497), and arguments made in the

Major Distributors' *Cabell County* Brief (which Moving Defendants incorporate by reference) in this matter.

## ARGUMENT

**I.    Plaintiff Lacks Authority to Challenge Legal Activities Otherwise Regulated by the State.**

A county commission, such as Plaintiff, has only the authority expressly granted to it by the State Constitution or Legislature. *EQT Prod. Co. v. Wender*, 191 F. Supp. 3d 583, 594 (S.D. W. Va. 2016) (citing *Butler v. Tucker*, 416 S.E.2d 262 (W. Va. 1992)). Plaintiff alleges that West Virginia Code § 7-1-3kk empowers it to act to eliminate hazards to public health and safety, or to abate anything that it deems to be a public nuisance. *See*, e.g., Compl., at ¶¶ 35, 891. This statute, however, does not empower Plaintiff to usurp authority expressly granted by the Legislature to the Board of Pharmacy (BOP), and by Congress to the Drug Enforcement Administration (DEA), and take enforcement of the West Virginia Controlled Substances Act (WVCSA) and the federal Controlled Substance Act (CSA) into its own hands by way of a claim for nuisance, for the reasons explained in *EQT Prod. Co. v. Wender*, 191 F. Supp. 3d 583, 598 (S.D. W. Va. 2016).

In *EQT Production*, the court reviewed an ordinance enacted by Fayette County, West Virginia, that prohibited the storage of wastewater in underground injection wells unless special circumstances existed. *Id*. at 588. EQT sought a declaration that Fayette County's ordinance was preempted by the West Virginia Oil and Gas Act, W. Va. Code §§ 22-1-1; 22-6-6 *et seq*. Fayette County responded that W. Va. Code §§ 7-1-3kk acted as a "specific grant of power from the state legislature" to regulate the activity at issue, storage of drilling wastewater. *Id*. at 595. The court disagreed, explaining that, "[a]lthough W. Va. Code §§ 7–1–3kk grants counties the power to abate nuisances within their borders, the Commission cannot use that general grant of power to interfere with an area of the law that the state has expressly reserved wholly to its own authority." *Id*. at

599.  The court held that because West Virginia already "comprehensively regulated" drilling sites, there was "no room for local control" of the issue.  *Id*.

Similarly here, state and federal authorities comprehensively regulate wholesale drug distributors.  The CSA is a "comprehensive regulatory framework to control the manufacture, distribution, and dispensation of controlled substances."  *Maynard v. DEA,* 117 F. App'x 941, 943 (5th Cir. 2004)).  And under the WVCSA, the BOP regulates "the manufacture and distribution of" prescription drugs in West Virginia.  W. Va. Code §§ 60A-3-301.  These comprehensive regulatory systems leave no room for a county commission to regulate wholesale distributors of prescription drugs by way of a negligence or nuisance action, because the Congress and the West Virginia Legislature have given that authority to the DEA and BOP.  *See* Syl. Pt. 5, *City of Huntington v. State Water Comm'n*, 137 W.Va. 786, 73 S.E.2d 833 (1952) ("Public health is a matter of statewide rather than local or municipal interest or concern and in the regulation of public health the power of the state is supreme.").  Accordingly, Plaintiff does not have authority to pursue its claims, and the Court should dismiss the Complaint.

## II.    The Complaint Fails to State a Claim for Relief.

Plaintiff's Complaint also fails to state a claim for which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

### A.    Plaintiff Has Not Plausibly Pled Any Claim Against the Moving Defendants as Pharmacies.

To the extent that Plaintiff intended to plead claims against the Moving Defendants as dispensing pharmacies rather than distributors, those claims fail and should be dismissed.  The allegations at paragraphs 569-617 of the Complaint are manifestly insufficient under *Iqbal* and

3

*Twombly* because they are vague, conclusory, and generic boilerplate. *See Iqbal,* 556 U.S. at 678-79; *Twombly,* 550 U.S. at 555-56. Paragraphs 569-589 simply offer context, not allegations of any conduct by the Moving Defendants, while paragraphs 585-617 are exactly the sort of "'naked assertion[s]' devoid of 'further factual enhancement'" that are legally insufficient under *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, while Plaintiff describes dispensing conduct by *some* (though not all) of the Moving Defendants in *other* jurisdictions (Compl. ¶¶ 618-628), such allegations cannot support claims against the Moving Defendants as dispensing pharmacies in Cabell County.

The allegations are speculative and do not connect the Moving Defendants to the opioid epidemic or Plaintiff's claimed damages. The Complaint also does not allege any facts demonstrating that any pill the Moving Defendants distributed was "diverted" to an improper purpose, rather than used for legitimate medical purposes pursuant to a valid prescription. In fact, the Complaint lacks any detail regarding the specific conduct, if any, the Moving Defendants engaged in that was unreasonable, when such conduct occurred, or how such conduct caused the damages that Plaintiff now seeks to recover through this lawsuit. Thus, pursuant to *Iqbal*, Plaintiff's allegations do not show that it is entitled it to relief.

**B.  Plaintiff Has Not Plausibly Pled a Claim for Negligence.**

To state a claim for negligence under West Virginia law, a plaintiff must plausibly allege: "(1) A duty which the defendant owes him; (2) A negligent breach of that duty; (3) Injuries received thereby, resulting proximately from the breach of that duty." *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016) (citing *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)). The Complaint fails to adequately plead any of those required elements.

**a)  The Moving Defendants Do Not Owe a Duty to Plaintiff.**

4

Plaintiff alleges that the Moving Defendants owe it a duty under the CSA and the WVCSA to monitor, detect, investigate, refuse, and report suspicious orders of controlled substances. *See, e.g.*, Compl., at ¶ 953. Regulatory requirements to report to the government are administrative requirements, however, not standards of care, and cannot support a negligence claim. *See Talley v. Danek Med., Inc.,* 179 F.3d 154, 159 (4th Cir. 1999) (violation of statutory requirement that "does not itself articulate a standard of care but rather requires only ... a report for the administration of a more general underlying standard ... is not a breach of a standard of care").

Directives under the CSA and WVCSA pertaining to distributors' detection and reporting of suspicious orders of controlled substances are too vague to support civil liability.[1] The CSA directs distributors to develop a system to detect "suspicious" orders, which are defined to "include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." W. Va. Code §§ 15-2-4.4. However, these regulations do not identify any details of such a system or define what constitutes an order of "unusual size," a "normal pattern," or "unusual frequency." *Id.*

Further, Plaintiff alleges that the Moving Defendants have a duty to guard against theft and diversion of controlled substances. *See*, e.g., Compl., at ¶ 471; *see also, id*. at ¶ 473 (describing an "illicit market" in opioids). However, the law does not impose "a duty to protect others from the deliberate criminal conduct of third parties." *Miller v. Whitworth*, 455 S.E.2d 821, 825 (W. Va. 1995); *see also Scott v. Taco Bell Corp.*, 892 F. Supp. 142, 144 (S.D. W. Va. 1995) (same). Thus,

---

[1] *See* Food Drug Cosm. L. R. Rep. 400076 (C.C.H.), 2015 WL 7796261, pp. 28–29, 67 (reporting that DEA has acknowledged that "short of providing arbitrary thresholds to distributors, it cannot provide more specific suspicious orders guidance because the variables that indicate a suspicious order differ among distributors and their customers").

Plaintiff cannot rely on broad allegations regarding the criminal conduct of third-parties to impose a duty upon the Moving Defendants.

> **b)  Plaintiff Has Not Pled a Breach of the Moving Defendants' Alleged Duty to it.**

Even if the CSA or WVCSA established a duty owed to Plaintiff—which they do not—Plaintiff still has not plausibly alleged that the Moving Defendants violated that duty.  Plaintiff claims that the Moving Defendants caused an opioid abuse epidemic by allegedly distributing opioids that were then diverted from legitimate medical uses.  *See, e.g.*, Compl., at ¶ 486.  No facts are alleged that the Moving Defendants distributed a single pill in Cabell County that was used for anything other than legitimate purposes.  Plaintiff supports this diversion theory of wrongdoing with allegations that the Moving Defendants (1) sold an "excessive volume" of opioids in Cabell County, and (2) distributed opioids without complying with regulations under the CSA, WVCSA, or BOP regulations.  *See, e.g.*, *id*. at ¶¶ 673-675.

Plaintiff's allegations of excess pills sold in, or affecting, Cabell County are entirely conclusory.  And to the extent Plaintiff seeks damages for such actions, the allegations are also deficient.  The allegation that the Moving Defendants failed to report suspicious orders is likewise conclusory and devoid of further factual enhancement—and thus should be ignored under *Iqbal*.  Consequently, Plaintiff has not plausibly alleged that the Moving Defendants breached their alleged duty to Plaintiff.

> **c)  Plaintiff Has Not Plausibly Pled Proximate Causation.**

Plaintiff has also failed to allege plausibly that the Moving Defendants proximately caused its claimed damages.  "To be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury."  *Brady v. Deals on Wheels, Inc.*, 542 S.E.2d 457, 463 (W. Va. 2000).  "The proximate cause of an

injury is the last negligent act contributing to the injury and without which the injury would not have resulted." *Id*.

Absent proximate cause, the negligence claim cannot stand.  For example, the Southern District of West Virginia has held that a pharmaceutical manufacturer's activities in marketing a blood-thinning drug, Plavix, were too remote as a matter of law to be deemed the proximate cause of the increased costs the plaintiff (a third-party payor) had paid for the drug, based on the intervening medical judgment of doctors.  *Emp. Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Meyers Squibb Co.*, 969 F. Supp. 2d 463, 472–475 (S.D. W. Va. 2013).  As the Court explained:

> [b]etween Defendants' alleged misleading marketing and Plaintiffs' prescription reimbursement lies a vast array of intervening events, including the 'independent medical judgment' of doctors.  Without any specific allegations as to who received these misrepresentations, how the misrepresentations influenced doctors, and why certain patients received Plavix instead of alternative medications, this Court is left without sufficient allegations from which to properly infer that proximate causation is satisfied.

*Id*. at 475.  The Court also discussed other cases, including *White v. Wyeth,* 705 S.E.2d 828 (W. Va. 2010), that had "engaged in necessary line-drawing to limit the permissible scope of recovery when an alleged injury involves a potentially complex chain of causation with many intervening events."[2] *Id.* at 472–475.  The necessary line-drawing is similarly problematic in this case, for the reasons further developed in the Moving Defendants' *Summit County* filing.  *See* Dkt. No. 497, at 14-17.

---

[2] Other West Virginia cases have likewise recognized the courts' gatekeeper role in determining that a defendant's role in causing a harm is too remote to be considered its proximate cause.  *See, e.g.*, *Webb v. Sessler,* 63 S.E.2d 65, 68–69 (W. Va. 1950); *Jackson v. Putnam Cty. Bd. of Educ.,* 653 S.E. 2d 632, 642 (W. Va. 2007); *Aikens v. Debow,* 541 S.E.2d 576, 582–587 (W. Va. 2000).

The Moving Defendants' conduct is remote and attenuated from the alleged opioid epidemic, especially when contrasted with the admittedly criminal conduct of numerous actors that led to the opioid abuse.  Thus, the Moving Defendants' alleged role is far too remote to be deemed the proximate cause of the Plaintiff's alleged costs.  *See Employer Teamsters,* 969 F. Supp. 2d at 475; *Ashley,* 552 F.3d at 664; *City of Philadelphia, 277* F.3d at 426.  *See also* the Moving Defendants' *Summit County* brief (Dkt. No. 497).

## C.    Plaintiff Fails to State a Public Nuisance Claim.

Plaintiff has not alleged a public nuisance claim for which the law grants relief.  *See, e.g.*, Compl., at ¶ 138.  A public nuisance is an "unreasonable" interference with a public right, that is, an activity that society deems unreasonable.  *Rhodes v. E.I. duPont de Nemours and Co.*, 657 F. Supp. 2d 751, 768 (S.D. W. Va. 2009) (citing *Duff v. Morgantown Energy Assocs.*, 421 S.E.2d 253, 257 n.6 (W. Va. 1992) (adopting the definition of "public nuisance" found in the Restatement (Second) of Torts § 821B(1))).

Plaintiff's public nuisance claim fails for two reasons.  First, an activity cannot constitute an unreasonable interference when the activity is endorsed and fully regulated by the government, and the Moving Defendants' actions comply with the relevant regulatory framework.  "'Public nuisances always arise out of unlawful acts, and that which is lawful, or is authorized by a valid statute, or which the public convenience imperatively demands, cannot be a public nuisance.'" *Pope v. Edward M. Rude Carrier Corp*., 138 W. Va. 218, 226, 75 S.E.2d 584, 589 (1953) (quoting 39 Am. Jur., Nuisances, Section 8).[3]  The Complaint alleges no particular act by any one of the Moving Defendants that violated the regulatory framework or any alleged criteria of

---

[3]  The Comment to the Restatement (Second) of Torts § 821B similarly recognizes this fact: "if . . . a comprehensive set of legislative acts or administrative regulations govern[s] the details of a particular kind of conduct, the courts are slow to declare an activity to be a public nuisance if it complies with the regulations."

noncompliance with the DEA or the BOP.  Accordingly, the allegations do not support a public nuisance claim.

More broadly, and as shown in the *Summit County* briefing, the Complaint fails to plead plausibly that the Moving Defendants' alleged improper actions are the proximate cause of the harm now claimed by Plaintiff, that is, costs related to a statewide opioid epidemic.  Courts have held that legal activities, such as the sale and distribution of legal pharmaceuticals, *id.*, and the lawful manufacture of handguns, cannot support a public nuisance claim because the causal chain between the indisputably legal action and the alleged harm "is too attenuated."  *City of Philadelphia*, 277 F.3d at 422.  Plaintiff's nuisance claim against the Moving Defendants fails for similar reasons.  Thus, Plaintiff has failed to state an actionable claim for public nuisance against the Moving Defendants.

**D.      Plaintiff's Unjust Enrichment Claim Fails Because Plaintiff Conferred No Benefit On The Moving Defendants.**

To state a valid claim for unjust enrichment, a plaintiff must allege that a defendant retains money or benefits that in justice and equity belong to the plaintiff.  *See, e.g., Prudential Ins. Co. of Am. v. Couch,* 376 S.E.2d 104, 108 (W. Va. 1988) ("The theoretical basis for this principle (unjust enrichment) is that it would be unjust to allow a person to retain money on which he had no valid claim."); *Dunlap v. Hinkle*, 317 S.E.2d 508, 512 n. 2 (W. Va. 1984).  Here, Plaintiff does not allege facts to suggest that it has conferred any benefit upon the Moving Defendants, must less that the Moving Defendants retained the benefit under circumstances where it would be unjust to do so without payment.  *Prudential*, 376 S.E.2d at 108-109; *Absure, Inc. v. Huffman*, 584 S.E.2d 507, 511 (W. Va, 2003); *Bristol Myers Squibb*, 969 F. Supp. 2d at 471.

E.      **Plaintiff's Claims Against Moving Defendants Based on the Distribution of Opioids are Barred by** W. Va. Code §§ 30-5-21**.**

West Virginia Law provides immunity against any claims against the claims for public nuisance, unjust enrichment, and negligence. While West Virginia Code §§ 30-5-21(a) provides that "***[a]ll persons***, whether licensed pharmacists or not, shall be responsible for the quality of all drugs . . . they may ***sell***", the statue provides a specific exception when the drug is sold "unchanged from the original retail package of the manufacturer, in which event the manufacturer shall be responsible." The plain language of the statute extends beyond pharmacies to "all persons." *Id*. As such, the protection from liability extends to distributors that deliver drugs in their original packaging to their retailer customers.

This section abrogates liability for a variety of claims, including negligence and conspiracy. *See e.g., Thomas v. Wyeth*, No. 5:05-0094, 2005 WL 3754203, at *2-3 (S.D. W. Va. June 16, 2005) (finding negligence, failure to warn, and breach of express and implied warranty claims barred); *Ashworth v. Albers Med., Inc*., 395 F. Supp. 2d 395, 408 (S.D. W. Va. 2005) (negligence, conspiracy, and other tort claims preempted); *Baker v. Purdue Pharma L.P*., No. 1:01-0553, 2002 WL 34213424, at *4 (S.D. W. Va. Mar. 28, 2002) (claims for negligence, intentional infliction of emotional distress, and breach of express and implied warranty barred). Courts applying West Virginia law have thus held that to the extent Plaintiff's claims "are predicated on the quality of drugs, they are pre-empted by W. Va. Code §§ 30-5-12(a) [now W. Va. Code §§ 30-5-21(a)]."[4] *Ashworth*, 395 F. Supp. 2d at 408. *See also In re Rezulin Products*

---

[4]*See also Walker v. Rite Aid of W. Virginia, Inc.,* No. CIV.A. 2:02-1208, 2003 WL 24215831, at *4 (S.D.W. Va. Oct. 14, 2003) (Rite Aid was immune from liability per W. Va. Code §§ 30-5-12(a) [now W. Va. Code §§ 30-5-21(a)] because any other interpretation of West Virginia's statutory scheme would involve a court changing a principle that is "susceptible of no other reasonable interpretation.")

*Liability Litigation,* 133 F. Supp. 2d 272 (S.D.N.Y. 2001) (granting Rite Aid's Motion to Dismiss based on statutory immunity).

Here, there is no serious dispute that Plaintiff's claims are predicated on the "quality of drugs." *See* W. Va. Code §§ 30-5-21(a). The entire basis for Plaintiff's Complaint is that opioid medications are dangerously addictive and unsafe for long-term use. *See, e.g.* Compl. ¶¶ 97-138. Because (among other alleged causes) the Moving Defendants allegedly over-supplied these medications, Plaintiff's claim that they incurred extra costs that flowed from higher rates of addiction. *Id.* ¶¶ 19, 33; ¶¶ 102-112 ("Due to concerns about their addictive properties, opioids have been regulated at the federal level … since 1970."); ¶¶ 1025-1026 (detailing harms Plaintiffs have allegedly incurred as a result of opioid addiction and abuse). These kinds of allegations trigger W. Va. Code §§ 30-5-21(a). *See, e.g. Thomas* 2005 WL 3754203, at *3 (barring claims against pharmacy where plaintiffs alleged that the drugs prescribed caused them to develop serious illnesses).

There is no suggestion that Moving Defendants altered the packaging for the opioid medications they dispensed. Therefore, Moving Defendants are exempt from liability under W. Va. Code §§ 30-5-21(a).

**F.      Plaintiffs' Claims Against Moving Defendants Based on Their Alleged Dispensation of Opioids are Barred by the West Virginia Medical Professional Liability Act.**

The Medical Professional Liability Act ("MPLA"), W. Va. Code §§ 55-7B-1 *et seq.*, as amended in 2003, requires Plaintiff to satisfy certain requirements before an action against health care providers, such as Moving Defendants, is permitted. The pre-filing requirements include, among other things, formal notice of a claim at least thirty (30) days prior to filing a complaint and a certificate of merit signed by a health care provider qualified to act as an expert. *See* W. Va. Code § 55-7B-6(b). In direct violation of the MPLA, Plaintiff neither provided required notice to

Moving Defendants nor tendered the required certificate of merit.  Because Plaintiff failed to attach to its Complaint a certificate of merit, and because no health professional would certify that the retail pharmacies have breached the applicable standard of care in West Virginia, any claim against the Moving Defendants as pharmacies – if Plaintiff is asserting such a claim – must be dismissed for these reasons as well.  See *Cline v. Kresa-Reahl*, 229 W. Va. 203, 214, 728 S.E.2d 87, 98 (2012) (upholding dismissal for a health care provider based on plaintiff's failure to follow the MPLA's pre-suit procedures).

**G.      Plaintiff's Civil Conspiracy Claim Fails.**

Plaintiff's civil conspiracy claim fails because the Complaint contains no legally cognizable allegations that the Moving Defendants engaged in any conspiracy.  The Complaint asserts that "Defendants" as a group engaged in a conspiracy in their unlawful marketing or distribution of opioids, *see* Compl. ¶ 1010, but then presents allegations only with respect to the Marketing Defendants.  *Id.*  ¶ 1012.  Also, Plaintiffs allege a civil conspiracy to "commit fraud and misrepresentation," *id.* ¶ 1010, but the Moving Defendants are expressly excluded from the Complaint's fraud claim, which is alleged against the Marketing Defendants, *see id* ¶¶ 974-993. The Complaint otherwise contains no specific allegations about fraudulent activity by the Moving Defendants.

Plaintiff also alleges a conspiracy in furtherance of RICO, *id.* ¶ 1013, but again, this count and the accompanying factual allegations expressly exclude the Moving Defendants, *see id.* ¶¶ 827-854.  Although the Complaint devotes more than 100 pages to alleged "schemes" by the Marketing Defendants, there are a mere handful of paragraphs that refer in vague and conclusory terms to a purported relationship between Defendants as a "tightly knit industry." *See, e.g., id.* ¶ 1008-1020, 713.  These bare-bones allegations do not suffice to state a conspiracy claim.

12

A "civil conspiracy" is "a combination to commit a tort." *Hays v. Bankers Tr. Co. of California*, 46 F. Supp. 2d 490, 497–98 (S. D. W. Va. 1999) (citing *Kessel v. Leavitt*, 511 S.E.2d 720, 753 (W. Va. 1998)). Specifically, it is the "combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Hays v. Bankers Tr. Co. of California*, 46 F. Supp. 2d 490, 497–98 (S. D. W. Va. 1999). The cause of action is not created by the conspiracy but by *the wrongful acts done by the defendants to the injury of the plaintiff. Id.,* citing *Dixon v. American Indus. Leasing Co*., 253 S.E.2d 150, 152 (W. Va. 1979) (emphasis added). Because "in order for civil conspiracy to be actionable it must be proved that the defendants have committed some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff," and Plaintiff's tort claims fail on their own terms as mentioned above, their conspiracy claim also fails. *Hays v. Bankers Tr. Co. of California*, 46 F. Supp. 2d 490, 497–98 (S. D. W. Va. 1999).

At most, the Complaint describes parallel conduct by the Moving Defendants as they engage in a lawful, highly regulated activity. But "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to state a claim. *Twombly,* 550 U.S. at 556-57. Further, even if the Moving Defendants failed (as Plaintiff alleges) to identify or report suspicious orders, *see* Compl. ¶ 567, there is no factual allegation that they did so *together* in a coordinated effort rather than as individual corporations. "It is a well-settled principle of law that civil conspiracy requires concerted action by two or more persons or entities." *Ridgeway Coal Co. v. FMC Corp*., 616 F. Supp. 404, 408 (S.D.W. Va. 1985) (citing *Dixon v. American Industrial Leasing Co.*, 162 W.Va. 832, 834, 253 S.E.2d 150, 152 (1979)). Thus, because the Complaint fails to allege any acts of the Moving Defendants to conspire in "wrongful acts done by the defendants to the injury of the plaintiff," the civil conspiracy claim fails as a matter of law. *Dixon v. American Indus.*

*Leasing Co.*, 162 W.Va. 832, 834, 253 S.E.2d 150, 152 (1979); *Politino v. Azzon, Inc.*, 212 W. Va. 200, 204, 569 S.E.2d 447, 451 (2002).

**H.      The "Free Public Services" Doctrine Bars Plaintiff's Claims.**

Plaintiff admits that it seeks compensation from the Moving Defendants for the costs Plaintiff allegedly has incurred in responding to what it characterizes as the "opioid epidemic." *See, e.g.*, Compl., at ¶¶ 2 and 966.

But the free public services doctrine bars Plaintiff from seeking or recovering costs incurred in performing its public duties and responsibilities.  This doctrine precludes government entities from recovering expenditures they incur in doing what their public duty mandates.  *See Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1310 (7th Cir. 1992).  "[T]he government's decision to provide tax-supported services is a legislative policy determination," such that "[i]t is not the place of the courts to modify such decisions." *District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1080 (D.C. Cir. 1984).  This doctrine has barred claims against a negligent airline for costs expended "to provide public services" in response to a plane crash, *County of Erie v. Colgan Air, Inc.,* 711 F.3d 147, 149, 150–51 (2d Cir. 2013), and against gun manufacturers for costs incurred to address gun violence, *City of Chicago v. Beretta U.S.A. Corp.,* 821 N.E.2d 1099, 1147 (Ill. 2004).

West Virginia courts have invoked similar principles to bar claims against inmates to recover "the costs of room and board in the county jail," reasoning that such costs are "a public charge on the county" that cannot "be collected . . . [absent] statutory authority."  *State v. St. Clair*, 355 S.E.2d 418, 419-20 (W. Va. 1987).  Correspondingly, if government entities may not recover such costs from the criminals who directly cause them, they are also barred in seeking these costs from the far removed, legitimate, highly regulated business entities such as the Moving Defendants.

I.      **The Economic Loss Rule Bars Plaintiff's Claims.**

Plaintiff's claims are also barred by the economic loss rule under West Virginia law, which provides:

> An individual who sustains economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages....

Syl. Pt. 9, *Aikens,* 541 S.E.2d 576.  This rule, requires physical harm or property damage to support tort liability, in order to prevent tort law from swelling into "a liability in an indeterminate amount for an indeterminate time to an indeterminate class."  *Id.* at 581 (quoting *Ultramares Corp. v. Touche*, 255 N.Y. 170 (1931) (Cardozo, J.)).

Here, Plaintiff asserts *only* economic losses related to its costs of providing governmental services that it has a duty to provide.  There is no allegation that Cabell County Commission itself has suffered any sort of physical harm or property damages.  And Plaintiff alleges no facts to support the finding of a contractual or other "special relationship" between Plaintiff and the Moving Defendants.  According, the West Virginia economic loss rule bars this action in its entirety.  *See, e.g.*, *City of Chicago,* 821 N.E.2d at 1143 (dismissing, under economic loss rule, city's claim for costs of responding to gun violence).

## CONCLUSION

Based on the foregoing, the Complaint against the Moving Defendants should be dismissed with prejudice.

**Respectfully submitted,**


/s/ Ronda L. Harvey
Ronda L. Harvey (WVSB #6326)
Fazal A. Shere (WVSB #5433)
BOWLES RICE LLP
600 Quarrier Street (25301)
Post Office Box 1386
Charleston, West Virginia 25326-1386
Telephone:  304-347-1100
Facsimile:  304-347-1756
rharvey@bowlesrice.com
fshere@bowlesrice.com
*Counsel for The Kroger Co.*


/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER
1800 M Street, NW
Suite 1000
Washington, DC 20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
*Attorneys for CVS Health Corporation*

/s/ Kaspar Stoffelmayr (consent)
Kaspar Stoffelmayr
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail:kaspar.stoffelmayr@bartlit-beck.com
*Attorney for Walgreens Boots Alliance, Inc.*

16

/s/ Kelly A. Moore (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail:  kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
Email: elisa.mcenroe@morganlewis.com
*Attorneys for Rite Aid Corporation and
Rite Aid of Maryland, Inc. d/b/a Rite Aid
Mid-Atlantic Customer Support Center, Inc.*

/s/ Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail:    tfumerton@jonesday.com
*Attorneys for Walmart Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing

Memorandum in Support of Motion to Dismiss by CVS Health Corporation, The Kroger Co.,

Rite Aid Corporation, Walgreens Boots Alliance, Inc., and Walmart Inc. is within the pages

limitations permitted by CMO 1 and CMO 4 in this matter.

/s/ Ronda L. Harvey
Ronda L. Harvey (WVSB # 6326)
BOWLES RICE LLP
600 Quarrier Street (25301)
Post Office Box 1386
Charleston, West Virginia 25326-1386
Telephone:  304-347-1100
Facsimile:  304-347-1756
rharvey@bowlesrice.com

*Counsel for The Kroger Co.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE NATIONAL PRESCRIPTION**
**OPIATE LITIGATION**

**MDL No. 2804**

**This document relates to:**

**Case No. 17-md-2804**

**Judge Dan Aaron Polster**

*Cabell County Commission v.*
*AmerisourceBergen Drug Corporation, et al.*
**Case No. 1:17-OP-45053 – DAP (S.D. W. Va.)**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this 8th day of June, 2018, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ Ronda L. Harvey
Ronda L. Harvey (WVSB #6326)
BOWLES RICE LLP
600 Quarrier Street (25301)
Post Office Box 1386
Charleston, West Virginia 25326-1386
Telephone:  304-347-1100
Facsimile:  304-347-1756
rharvey@bowlesrice.com

*Counsel for The Kroger Co.*

10185548.1