**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*City of Chicago. v. Cardinal Health Inc. et al.*
Case No. 18-op-45281

**MDL No. 2804**
**Case No. 17-md-2804**
**Judge Dan Aaron Polster**

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT BY**
**<u>DEFENDANTS WALMART INC. AND CVS HEALTH CORP.</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTORY STATEMENT OF THE ISSUES
AND SUMMARY OF ARGUMENT ............................................................. 1

LEGAL STANDARDS ......................................................................................................... 2

ARGUMENT .......................................................................................................................... 2

I.      The City Lacks Standing to Sue the Moving Defendants. ................................... 2

II.     The City States No Claims Against the Moving Defendants in Their
        Capacities as Pharmacies. ...................................................................................... 3

III.    The City Cannot Establish the Elements of Public Nuisance (Count 1) ............. 3

        A.      The Complaint fails to plausibly allege that the Moving Defendants
                committed any act which unreasonably interfered with any public right. ............. 4

        B.      The City cannot establish proximate cause ........................................................... 5

IV.     The City's Negligence Claim is Legally Deficient (Count 2). ............................ 7

        A.      The Moving Defendants do not owe a common law duty to the City. ................ 7

        B.      No duty arises from the Controlled Substances Acts ........................................... 9

V.      The City Fails to State a Claim for Unjust Enrichment (Count 3) .................... 11

VI.     The City Fails to Establish an Actionable Civil Conspiracy Claim (Count 4). .............. 12

VII.    The City Fails to State a Consumer Fraud Claim (Count 5) .............................. 14

VIII.   The City's Municipal Services Claim Must Be Dismissed (Count 6). .............. 15

IX.     The City's Drug Dealer Liability Act Claim Must Be Dismissed (Count 7) ................. 16

CONCLUSION .................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adcock v. Brakegate, Ltd.,
    645 N.E.2d 888 (Ill. 1994) ................................................................................13

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ...........................................................................2, 3, 4, 12

Ashley Cty., Ark. v. Pfizer, Inc.,
    552 F.3d 659 (8th Cir. 2009) ....................................................................6, 11, 17

Batson v. Live Nation Entm't, Inc.,
    746 F.3d 827 (7th Cir. 2014) ...........................................................................15

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ...........................................................................2, 3, 4, 13

Blount v. Stroud,
    915 N.E.2d 925 (Ill. App. Ct. 2009) ..................................................................18

Borsellino v. Goldman Sachs Grp., Inc.,
    477 F.3d 502 (7th Cir. 2007) ...........................................................................12

Carroll v. Butterfield Health Care, Inc.,
    No. 02 C 4903, 2003 WL 22462604 (N.D. Ill. Oct. 29, 2003) ........................................14, 15

City of Chicago v. Beretta U.S.A. Corp.,
    821 N.E.2d 1099 (Ill. 2004) ..................................................................... passim

City of Chicago v. Purdue Pharma L.P.,
    211 F. Supp. 3d 1058 (N.D. Ill. 2016) .......................................................14, 15, 16

City of Cleveland v. Ameriquest Mortg. Secs., Inc.,
    621 F. Supp. 2d 513 (N.D. Ohio 2009) .................................................................6

Cleary v. Philip Morris Inc.,
    656 F.3d 511 (7th Cir. 2011) ........................................................................11, 12

Cooper v. Purdue Frederick Co., Inc.,
    No. 08-3757, 2008 WL 11355004 (E.D. La. Nov. 5, 2008) ............................................16, 17

Cty. of Cook v. Philip Morris, Inc.,
    817 N.E.2d 1039 (Ill. App. Ct. 2004) ...............................................................5, 6, 7

F.D.I.C. ex rel. Wheatland Bank v. Spangler,
    836 F. Supp. 2d 778 (N.D. Ill. 2011) ...................................................................11

First Am. Title Co. v. Devaugh,
    480 F.3d 438 (6th Cir. 2007) ............................................................................2

Gouge v. Cent. Illinois Pub. Serv. Co.,
    582 N.E.2d 108 (Ill. 1991) ..............................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)....................................................................................5, 6

*In Re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*,
    692 F. Supp. 2d 1012 (S.D. Ill. 2010)...................................................................8

*Iseberg v. Gross*,
    879 N.E.2d 278 (Ill. 2007)...................................................................................7

*Kirk v. Michael Reese Hosp. & Med. Ctr.*,
    513 N.E.2d 387 (Ill. 1987)...................................................................................8

*Krywin v. Chicago Transit Auth.*,
    938 N.E.2d 440 (Ill. 2010)...................................................................................7

*Leesley v. West*,
    518 N.E.2d 758 (Ill. App. Ct. 1988)....................................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................3

*Lyshe v. Levy*,
    854 F.3d 855 (6th Cir. 2017) ..............................................................................2

*McClure v. Owens Corning Fiberglas Corp.*,
    720 N.E.2d 242 (Ill. 1999)...........................................................................12, 13

*McNeil v. Carter*,
    742 N.E.2d 1277 (Ill. App. Ct. 2001) ...............................................................10

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
    435 N.E.2d 443 (Ill. 1982)...................................................................................8

*Muirfield Vill.-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*,
    810 N.E.2d 235 (Ill. App. Ct. 2004) ...................................................................8

*Pilotto v. Urban Outfitters W., L.L.C.*,
    72 N.E.3d 772 (Ill. App. Ct. 2017) ...................................................................10

*Progressive N. Ins. Co. of Illinois v. Ford Motor Co.*,
    259 F. Supp. 3d 887 (S.D. Ill. 2017)...................................................................8

*Robinson v. Toyota Motor Credit Corp.*,
    775 N.E.2d 951 (Ill. 2002)...........................................................................14, 15

*Rodarmel v. Pneumo Abex, L.L.C.*,
    957 N.E.2d 107 (Ill. App. Ct. 2011) .................................................................13

*Roh v. Starbucks Corp.*,
    881 F.3d 969 (7th Cir. 2018) ..............................................................................7

*Simpkins v. CSX Transp., Inc.*,
    965 N.E.2d 1092 (Ill. 2012)...........................................................................7, 11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Smith v. Eli Lilly & Co.*,
    560 N.E.2d 324 (Ill. 1990) ......................................................................................18

*Steed v. Bain-Holloway*,
    356 P.3d 62 (Okla. Civ. App. 2015) .......................................................................18

*Westfield Nat'l Ins. Co. v. Long*,
    811 N.E.2d 776 (Ill. App. Ct. 2004) .......................................................................16

*Whittemore v. Owens Healthcare-Retail Pharmacy, Inc.*,
    111 Cal. Rptr. 3d 227 (Cal. Ct. App. 2010) ............................................................17

*Workman v. Dinkins*,
    442 F. Supp. 2d 543 (N.D. Ill. 2006) .......................................................................9

*Young v. Bryco Arms*,
    821 N.E.2d 1078 (Ill. 2004) ....................................................................................5

**STATUTES**

21 U.S.C. § 824 ..............................................................................................................10

21 U.S.C. § 827 ..............................................................................................................10

77 Ill. Admin. Code §§ 3100.10 *et seq.* ........................................................................10

720 Ill. Comp. Stat. §§ 570/100 *et seq.* ........................................................................10

740 Ill. Comp. Stat. §§ 57/5 *et seq.* ..........................................................15, 16, 17, 18

745 Ill. Comp. Stat. § 35/2 ......................................................................................14, 15

815 Ill. Comp. Stat. § 505/2 ...........................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 .............................................................................................................2

Ill. Const. Article 1, § 2 .................................................................................................18

Restatement (Second) of Torts § 315 (1964) ..................................................................8

## INTRODUCTORY STATEMENT OF THE ISSUES
## AND SUMMARY OF ARGUMENT

The City of Chicago, like other municipal plaintiffs in this litigation, seeks to hold the Moving Defendants liable for harms it has suffered as a result of the nationwide opioid epidemic. Compl. ¶ 2.  But its Complaint fails the fundamental requirement of plausibly alleging specific, actionable conduct against Defendants Walmart Inc. and CVS Health Corp. (the "Moving Defendants").  The Major Distributor Defendants—AmerisourceBergen Corporation, McKesson Corporation, and Cardinal Health—have explained why the City's claims fail as a matter of law. *See* Mem. in Support of Distributors' Mot. to Dismiss ("Major Distributors' *Chicago* Brief").  The Moving Defendants incorporate the arguments made in the Major Distributors' *Chicago* Brief, as well as the arguments submitted by the Major Distributors and the Moving Defendants in *Summit County*.  *See In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 491] ("Major Distributors' *Summit County* Brief"); *In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 497] ("Moving Defendants' *Summit County* Brief").  They offer this brief only to raise additional arguments and to highlight why the Court should dismiss all claims against them.

As a threshold matter, the City lacks standing because it seeks to recover for generalized grievances and indirect harms that cannot, by its own pleadings, be traced to the Moving Defendants.  Even if it had standing, it alleges claims against the Moving Defendants only in their capacities as distributors, not pharmacies.  Each of the City's tort claims—common law nuisance, negligence, unjust enrichment, and civil conspiracy—fails as a matter of law on its own terms. The City does not identify any specific unlawful conduct by the Moving Defendants that violated any public right.  It cannot establish proximate cause, because it alleges only a highly attenuated relationship between its generalized, derivative injuries and the Moving Defendants' lawful distribution of opioid medications.  Any possible causal link between the Moving Defendants'

conduct and the City's alleged harms is further broken by countless intervening acts—including by physicians who improperly prescribed drugs, individuals who illegally supplied opioids to third parties, and persons who abused the drugs.  And no duty runs from the Moving Defendants to the City under the common law or any statute.  Finally, the City cannot establish the required elements of its municipal code and statute-based claims.  The Complaint should therefore be dismissed.

## LEGAL STANDARDS

Because "standing is an issue of the court's subject matter jurisdiction," a defendant may raise the plaintiff's lack of standing by bringing a motion to dismiss "under Federal Rule of Civil Procedure 12(b)(1)."  *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).  On a motion to dismiss under Rule 12(b)(6), a court must dismiss a complaint if the facts alleged fail to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This pleading standard requires more than the assertion of legal conclusions.  *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007).  Cursory or conclusory statements are given no weight, and a complaint that raises only the possibility that a defendant acted unlawfully is insufficient as a matter of law.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## ARGUMENT

The City alleges seven causes of action against the Moving Defendants: public nuisance, negligence, unjust enrichment, civil conspiracy, consumer fraud, municipal services, and violation of the Drug Dealer Liability Act.  All should be dismissed under Rules 12(b)(1) and 12(b)(6) for the reasons identified by the Major Distributor Defendants and further explained below.

## I.    The City Lacks Standing to Sue the Moving Defendants.

The City asserts that an "opioid disaster" has affected "most Americans . . . either directly or indirectly."  Compl. ¶ 3.  It sues over an array of public harms related to this disaster, including "public health, social services, and criminal justice consequences."  *Id*. ¶ 19.  But as discussed

more fully in Part I of the Moving Defendants' *Summit County* Brief, these harms are textbook "generalized grievance[s]" that are not justiciable under Article III.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In asserting injury, the City has alleged nothing to set itself apart from the public at large, and the harms it claims are at most the consequence of injury to others (individual opioid users), not direct injuries to itself.  *See, e.g.,* Compl. ¶¶ 223, 281, 330.  The Complaint should therefore be dismissed for lack of standing.

## II.    The City States No Claims Against the Moving Defendants in Their Capacities as Pharmacies.

The Complaint purports to state claims against the Moving Defendants in their capacities as distributors, not dispensing pharmacies.  It classifies them as "Distributors," Compl. ¶ 1, and "wholesale distributors," *id.* ¶ 74; and its claims for relief focus on the distribution and sale of opioids—not on filling prescriptions or dispensing medications, *see, e.g., id.* ¶¶ 48-110, 179-200, 249-398.  Nonetheless, like the plaintiffs in *Summit County*, the City makes a handful of vague allegations that refer to the Moving Defendants in their role as dispensing pharmacies.  *E.g.*, Compl. ¶¶ 64, 74, 129-31, 148.  To the extent the City intends these allegations to plead claims against the Moving Defendants as dispensing pharmacies, those threadbare, vague, and generic assertions are manifestly insufficient to state a claim.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56.  And while the City describes dispensing conduct by one of the Moving Defendants in *other* jurisdictions (Compl. ¶¶ 150-62), such allegations cannot support claims against that Moving Defendant as a dispensing pharmacy in Chicago.

## III.   The City Cannot Establish the Elements of Public Nuisance (Count 1).

The Complaint fails to allege the essential elements of a public nuisance claim: "[1] the existence of a public right, [2] a substantial and unreasonable interference with that right by the defendant, [3] proximate cause, and [4] injury."  *City of Chicago v. Beretta U.S.A. Corp.*, 821

N.E.2d 1099, 1113 (Ill. 2004). The Major Distributors have explained why the Complaint is deficient with respect to each of these elements, including the existence of a public right. *See* Major Distributors' *Chicago* Brief (Part I). The Moving Defendants will further explain why the allegations of unreasonable interference and proximate cause are deficient with respect to them.

### A. The Complaint fails to plausibly allege that the Moving Defendants committed any act which unreasonably interfered with any public right.

The City alleges that Defendants interfered with the health and safety of the public through continuous violations of both the state and federal Controlled Substances Act ("CSA"). *See* Compl. ¶¶ 252-57. But the Complaint never identifies any specific act by the Moving Defendants, continuous or otherwise, that violates any law or interferes with any public right. Instead, the City makes the kind of cursory or conclusory assertions of liability that are patently insufficient to state a claim. *See Iqbal*, 556 U.S. at 678-79; *see also* Moving Defendants' *Summit County* Brief (Part V). In particular, despite offering broad-brush allegations that the Moving Defendants failed to stop the flow or diversion of opioid medications in Chicago, *see* Compl. ¶¶ 129-31, 141-48, 260, the City does not allege that the Moving Defendants control which medications doctors prescribe, how patients use medications after they are dispensed, or any illegal means patients might use to obtain opioids. It does not allege that the Moving Defendants manufactured or marketed the medications at issue. Indeed, it does not even identify one instance in which the Moving Defendants purportedly failed to keep records or inventory lists, fulfill licensing obligations, store drugs appropriately, or allow inspectors access to records in Illinois—much less in Chicago. At most, it points to enforcement actions related to other kinds of conduct (predominantly pharmacy rather than distributor conduct) in other jurisdictions against one of the Moving Defendants. *See* Compl. ¶¶ 150-62. But there are no factual assertions as to any conduct affecting Chicago. These allegations do not suffice under *Iqbal*, 556 U.S. at 678-79, or *Twombly*, 550 U.S. at 555-56.

**B.      The City cannot establish proximate cause.**

To establish proximate cause—a critical element of any common law nuisance or negligence claim, *Young v. Bryco Arms*, 821 N.E.2d 1078, 1085-91 (Ill. 2004)—a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged," *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). The law does not recognize claims for injuries that are too indirect or remote from the alleged conduct. *See Young*, 821 N.E.2d at 1091; *see also Cty. of Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039, 1043 (Ill. App. Ct. 2004) (*citing Holmes*, 503 U.S. at 268). Rather, proximate cause is "established only if the defendant's conduct is so closely tied to the plaintiff's injury that he should be held legally responsible for it." *Beretta U.S.A.*, 821 N.E.2d at 1127 (quotation omitted). Here, the Complaint does not plausibly plead any direct link between the Moving Defendants' actions and the sweeping, generalized public harms the City alleges. *See, e.g.*, Compl. ¶¶ 3, 19, 223, 281, 330. By the City's own account, the causal chain is severed by the intervening conduct of other actors, some of it criminal, and its injuries are derivative of harms to third parties. *Cf.* Moving Defendants' *Summit County* Brief (Part IV.B).

The City expressly pleads that intervening criminal acts broke the alleged causal chain between the Moving Defendants' conduct and the City's alleged harms. These acts were committed not only by individuals seeking to obtain opioids, but also by physicians who participated in illegal "pill mills" and drug cartels that employed "Chicago-based street gangs" to distribute black market opioids. Compl. ¶¶ 15-16, 166, 194-95, 203, 300. These allegations alone are enough to warrant dismissal, because proximate cause is lacking as a matter of law where criminal acts of third parties break the connection between a defendant's act and the resulting injury. *See Young*, 821 N.E.2d at 1089 (dismissing nuisance claim against gun manufacturers).

The City's Complaint also alleges too many intervening causes—criminal or otherwise—to permit a finding of proximate cause against the Moving Defendants. The City does not allege

that the Moving Defendants ever sold or distributed anything directly to it, or caused the City any direct harm.  Instead, the City alleges that its injuries are attributable to—at the least—the improper prescribing practices of physicians who prescribed opioids (whether just unnecessarily or with criminal intent), the acts of persons who illegally or improperly supplied prescription opioids to third parties, and the behavior of the persons who abused prescription opioids or other drugs such as heroin.  *See* Compl. ¶¶ 6, 15-16, 19, 166, 194-98, 203, 300, 308.  Just such a multiplicity of intervening causes is a key reason why Chicago's lawsuit against firearms dealers was dismissed, *Beretta U.S.A. Corp.*, 821 N.E.2d 1099; why Cook County failed to establish claims against tobacco companies, *Cty. of Cook*, 817 N.E.2d at 1043; why Cleveland's foreclosure-crisis lawsuit failed, *see City of Cleveland v. Ameriquest Mortg. Secs., Inc*., 621 F. Supp. 2d 513, 516, 533-34 (N.D. Ohio 2009); and why Arkansas counties' complaint against drug manufacturers and distributors for costs related to the methamphetamine epidemic was dismissed, *Ashley Cty., Ark. v. Pfizer, Inc*., 552 F.3d 659, 667-73 (8th Cir. 2009).  *See* Major Distributors' *Chicago* Brief (Part III.A).  In all these cases, the municipalities failed to establish that the defendants' conduct could be "deemed a legal cause of a nuisance that is the result of the aggregate of the criminal acts of many individuals over whom they have no control," *Beretta U.S.A. Corp.*, 821 N.E.2d at 1138.

Finally, the required "direct relation between the injury asserted and the injurious conduct alleged" is absent because the City's own allegations show that its injuries are derivative of harms suffered by third parties—namely, the individuals harmed directly by opioid abuse and addiction. *See Holmes*, 503 U.S. at 268; *e.g.*, Compl. ¶¶ 3, 19, 223, 304.  As previously explained, derivative claims fail as a matter of law for lack of causation.  *See* Moving Defendants' *Summit County* Brief (Part IV.B); Major Distributors' *Chicago* Brief (Part III.A).

## IV.    The City's Negligence Claim is Legally Deficient (Count 2).

To state a claim for negligence, a plaintiff must adequately plead that defendants owed a duty to the plaintiff, that defendants breached this duty, and that the breach proximately caused the plaintiff's injury.  *See Krywin v. Chicago Transit Auth.*, 938 N.E.2d 440, 446-47 (Ill. 2010). The Complaint fails to adequately allege all required elements.  *See* Major Distributors' *Chicago* Brief (Part II-III).  Most notably, the Moving Defendants do not owe the City any duty, based either on the common law or any statute, and the City fails to plausibly plead that any conduct by the Moving Defendants proximately caused its alleged injuries.  The lack of proximate cause— which is fatal to any tort claim, *see Philip Morris, Inc.,* 817 N.E.2d at 1043—was discussed in Part III.B above.  The absence of duty, also fatal to the City's claim, is discussed here.

### A.    The Moving Defendants do not owe a common law duty to the City.

Whether the defendant owes the plaintiff a legal duty is the "threshold question" in any negligence claim.  *See Simpkins v. CSX Transp., Inc*., 965 N.E.2d 1092, 1098 (Ill. 2012).  It is "a question of law to be determined by the court."  *Roh v. Starbucks Corp*., 881 F.3d 969, 973 (7th Cir. 2018) (citing *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990)).

The City alleges that the Moving Defendants have a general common law duty to exercise care in the distribution of opioids, and specifically to detect and warn of diversion of prescription medication and to monitor and report suspicious activity.  *See, e.g.,* Compl. ¶¶ 13, 33, 129-48, 294-308.  But no such duty exists.  As discussed more fully in the Moving Defendants' *Summit County* Brief (Part IV.A.2), the Moving Defendants owe no common law duty to the City because the highly attenuated connection between Moving Defendants' conduct and the City's alleged harm forecloses the existence of any duty (*see, e.g., Iseberg v. Gross*, 879 N.E.2d 278, 292 (Ill. 2007)); industry standards provide no independent basis for inferring a duty; the learned intermediary doctrine precludes recognition of any such duty; and the economic loss doctrine forecloses any

duty to prevent purely economic harm.  The Moving Defendants offer additional analysis below with respect to Illinois law.

Like Ohio, Illinois recognizes that the physician, as a "learned intermediary," "decides which available drug best fits the patient's needs" and accordingly bears an intervening duty to exercise medical judgment on the patient's behalf.  *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 393 (Ill. 1987).  The doctrine reflects the "State's legislative policy against expanding the liability risks of health professionals," *Leesley v. West*, 518 N.E.2d 758, 763 (Ill. App. Ct. 1988), and a reluctance to "[i]nterfer[e] with the doctor-patient relationship," *In Re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 692 F. Supp. 2d 1012, 1017-21 (S.D. Ill. 2010), *aff'd sub nom.*, *Walton v. Bayer Corp.,* 643 F.3d 994 (7th Cir. 2011).  This doctrine precludes recognition of any common law duty on the part of distributors to protect the public—or municipalities indirectly injured by alleged harm to the public—from unnecessary or unlawful prescription of lawful pharmaceuticals.  *See generally* Restatement (Second) of Torts § 315 (1964).

Illinois also follows the "economic loss rule," which precludes recognizing a duty on the part of the Moving Defendants to protect the City from its asserted economic injuries.  *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982); *see also Progressive N. Ins. Co. of Illinois v. Ford Motor Co.*, 259 F. Supp. 3d 887, 891 (S.D. Ill. 2017) (discussing rule).  Under this rule, "recovery for solely economic losses in relation to a product may not be had upon a tort theory of negligence" absent personal injury or property damage resulting from a "sudden or dangerous occurrence," damages caused by a defendant's intentional and false representation, or instances in which the defendant is "in the business of supplying information to guide others in their business transactions." *Muirfield Vill.-Vernon Hills, LLC v. K. Reinke, Jr. & Co*., 810 N.E.2d 235, 247 (Ill. App. Ct. 2004).  The City's requested relief is foreclosed by this rule, because it

consists of economic damages related to "expenses for police, emergency, health, prosecution, corrections, [and] rehabilitation," Compl. ¶ 315, as well as costs associated with child welfare and protective custody cases, *id.* ¶ 214, and crime, *id.* ¶¶ 203-05, 215-23. Nor do the City's harms fall within any of the rule's exceptions. Although the City makes vague references to property crime, the Complaint says nothing about what type of property was allegedly damaged or how the supposed damage occurred. *See id.* ¶ 210. There is no allegation of a "sudden or dangerous occurrence," and the City's allegations of false representation are unfounded, *see* Part VII, *infra*. And there is no allegation that the Moving Defendants are in the business of supplying information.

**B.      No duty arises from the Controlled Substances Acts.**

The City also asserts that Defendants "breached their duties" under the Illinois and federal CSAs. Compl. ¶¶ 180-85, 312-13. But as explained in the Moving Defendants' *Summit County* Brief (Part IV.A.2), the City cannot bring a negligence action based on alleged breaches of duties created by the CSAs because (1) any duty the Moving Defendants owed under the CSAs (if one exists) would be to the Illinois and federal governments, not the City, and (2) the City lacks a cause of action under the CSAs.

*First*, the federal and Illinois CSAs do not impose on the Moving Defendants any duty of care toward the City. This is a fatal deficiency, because a plaintiff may bring a negligence lawsuit for violation of a statute only where the defendant owes a duty *to the plaintiff* to obey that statute— that is, where the plaintiff has a personal right to insist on compliance with the statute. *See Gouge v. Cent. Illinois Pub. Serv. Co.*, 582 N.E.2d 108, 112 (Ill. 1991) (utility company owed plaintiff no duty because statute was not intended to protect against plaintiff's alleged injury); *Workman v. Dinkins*, 442 F. Supp. 2d 543, 555 (N.D. Ill. 2006) (existence of duty turns in part on whether plaintiff was a member of the class the statute was designed to protect).

There is no duty owed to a municipality because both the federal and state governments extensively regulate the production, distribution, and sale of prescription opioid medications.  *See* Moving Defendants' *Summit County* Brief (Part IV.A.2).  This is as true in Illinois as it is in Ohio. The Illinois CSA, 720 Ill. Comp. Stat. §§ 570/100 *et seq.*, imposes requirements on distributors— on top of those required by federal law—through a comprehensive regulatory scheme administered by the Illinois Department of Financial and Professional Regulation ("Department").  *See id.* § 570/301 (authorizing Department to adopt enforcement rules); 77 Ill. Admin. Code §§ 3100.10 *et seq*.  State and federal regulators routinely scrutinize the records and practices of registered controlled substance distributors.  21 U.S.C. § 827(a)(3) & (b)(3); 720 Ill. Comp. Stat. §§ 570/306 & 570/501; 77 Ill. Admin. Code §§ 3100.310 & 3100.440.  If at any point a distributor's license is no longer in the public interest or threatens public health and safety, the DEA or the Department— but not a city—may revoke the registration or impose civil money penalties.  21 U.S.C. § 824(d); 720 Ill. Comp. Stat. §§ 570/303 to 570/305; 77 Ill. Admin. Code § 3100.460.  Municipalities have no special place in this statutory scheme, and there is no basis for inferring that the statutes create a special duty to Chicago.

*Second*, neither the federal CSA nor its Illinois counterpart provides municipalities with a cause of action.  *See* Major Distributors' *Chicago* Brief (Part II.A); Moving Defendants' *Summit County* Brief (Part IV.A.2).  With respect to the Illinois CSA, the statute creates no express right of action, and under Illinois law, courts will infer a right of action only "cautiously," paying close attention to the "intent of the legislature."  *McNeil v. Carter*, 742 N.E.2d 1277, 1280 (Ill. App. Ct. 2001); *see also Pilotto v. Urban Outfitters W., L.L.C.*, 72 N.E.3d 772, 781 (Ill. App. Ct. 2017). Affording the City a cause of action would be entirely inconsistent with the statutory scheme established by the Illinois General Assembly, because the statute empowers the Department—not

municipalities—to promulgate regulations to implement and enforce the CSA.  None of the statutory provisions envisions, much less establishes, a separate enforcement mechanism based on damages lawsuits.  There is thus no basis to infer a cause of action, and the City's negligence claim should be dismissed.  *See Simpkins*, 965 N.E.2d at 1098.[1]

## V.      The City Fails to State a Claim for Unjust Enrichment (Count 3).

"In Illinois, '[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'"  *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).  The Complaint fails to adequately allege these required elements.  *See* Major Distributors' *Chicago* Brief (Part V).

The City's main complaint is that it has allegedly spent money "in an effort to remedy or mitigate the societal harms caused by Defendants' [alleged] conduct."  Compl. ¶ 329; *see also id.* ¶ 332.  Yet even if that were true, such spending in no way enriches *the Moving Defendants*.  The "societal harms" that it purportedly mitigated were not harms to the Moving Defendants but rather to third parties—the City refers to the harms as Defendants' "externalities," *id.* ¶ 332—and it was those third parties who benefitted from the City's social spending.  The Moving Defendants, like the manufacturers of cold medicine sued in *Ashley County*, "cannot be said to be the beneficiaries of the services provided by" the City.  552 F.3d at 666.  The City does allege that "[t]hese expenditures have helped sustain Defendants' businesses."  Compl. ¶ 331.  But this "conclusory

---

[1] The City's "gross negligence" allegation likewise fails for lack of duty.  *See F.D.I.C. ex rel. Wheatland Bank v. Spangler*, 836 F. Supp. 2d 778, 785 (N.D. Ill. 2011) (discussing gross negligence elements under Illinois law).  Further, as explained in the Moving Defendants' *Summit County* Brief (Part IV.A.2), the City cannot sidestep these principles by styling its lawsuit a "negligence *per se*" action, *see* Compl. ¶ 313.

statement," which the City makes no attempt to explain, is merely a bare assertion that is insufficient to "survive a motion to dismiss." *Iqbal*, 552 U.S. at 678.

Nor can the City state a cause of action based on the "benefit" that the Moving Defendants allegedly received from "the distribution and purchase of opioids within the City." Compl. ¶ 327. A claim for unjust enrichment lies only where "the defendant has unjustly retained a benefit *to the plaintiff's detriment*." *Cleary*, 656 F.3d at 516 (emphasis added) (quotation omitted).  The City does not allege that *it* purchased opioids from the Moving Defendants, or that customers should have given their money to the City instead of buying prescription drugs.  Even assuming that the City was harmed by some of those customers' *use* of prescription drugs, their *payments* for the drugs were not detrimental to the City.  The claim should be dismissed.

## VI.    The City Fails to Establish an Actionable Civil Conspiracy Claim (Count 4).

"In order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999).  The City fails to allege either.  *First*, the City fails to adequately allege that the Moving Defendants entered into any agreement for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007); *see also* Moving Defendants' *Summit County* Brief (Part VII); Major Distributors' *Summit County* Brief (Part VII).  The City's key contention is that Defendants participated together in industry organizations.  Compl. ¶¶ 73-95.  Yet the City does not allege that Walmart was in fact a member of these organizations, *see id.* ¶ 81, and it makes no allegation about how CVS participated in them.  Even setting aside those omissions, "[i]n other cases involving allegations of a civil conspiracy among" competitors, "courts have been unwilling to infer an agreement based on membership in industry trade

organizations."  *McClure*, 720 N.E.2d at 266; *see also Rodarmel v. Pneumo Abex, L.L.C.*, 957 N.E.2d 107, 131 (Ill. App. Ct. 2011).

The City also asserts that an agreement can be inferred because "each Defendant acted directly against their commercial interests in not reporting the unlawful distribution practices of their competitors to the authorities."  Compl. ¶ 350.  The City never explains how one Defendant could be expected to know about suspicious orders filled by competitors.  (It alleges that Defendants could track competitors' sales, *id.* ¶ 105, but not how they could know whether the orders filled by such sales were suspicious.)  Nor does the City say what incentive any one Defendant would have to expend resources monitoring its competitors—thereby possibly inducing them to monitor it.[2]  Even if Defendants were aware that competitors were filling suspicious orders and decided not to disclose this fact to authorities, that allegation would not state a claim for conspiracy, because it is equally consistent with non-conspiratorial parallel conduct.  *See McClure*, 720 N.E.2d at 258 ("Mere knowledge of the fraudulent or illegal actions of another is . . . not enough to show a conspiracy.").

*Second*, the City never points to any unlawful overt act that any conspirator supposedly took in furtherance of the conspiracy.  *See Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994).  Even if the City had adequately alleged that Defendants filled suspicious orders of opioids, such an act would not advance the conspiracy, but merely the individual interests of the particular distributor filling the order.  The City also asserts that industry organizations in which some

---

[2] The City's own assertions are also internally inconsistent: if, as the City contends, Defendants were knowingly filling suspicious orders, then increasing the authorities' focus on such orders would run directly against their individual commercial interests.  *See Twombly*, 550 U.S. at 566 ("[E]ven if the [defendants] flouted the 1996 Act in all the ways the plaintiffs allege, … there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway."); *McClure*, 720 N.E.2d at 267 ("Plaintiffs showed separate acts by the alleged conspirators, but the evidence failed to show that these acts were connected by an agreement.").

Defendants participated lobbied various government bodies on opioid policy.  *E.g.,* Compl. ¶¶ 79, 94.  But not only is lobbying the government not "tortious or unlawful," it is protected by the First Amendment.  Finally, the City asserts that Defendants refrained from reporting each other to the DEA for filling suspicious orders.  For the reasons given above, the City has failed to adequately allege that the Moving Defendants knowingly failed to report such conduct.  And, in any event, such an omission, even if unlawful, is not an "overt act."

## VII.    The City Fails to State a Consumer Fraud Claim (Count 5)

The City's claim that the Moving Defendants violated Chicago Ordinance MCC § 2-25-090 or the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/2, by "engaging in unfair acts or practices in distributing opioids in the City," Compl. ¶ 361, fails as a matter of law for all the reasons explained in the Major Distributors' *Chicago* Brief (Part IV).  It also fails because the conduct alleged—failing to maintain effective controls against diversion—is not "unfair," for at least three additional reasons.  *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960-61 (Ill. 2002) (discussing relevant factors).

*First*, the City identifies no "public policy" the conduct supposedly "offend[ed]."  *Id.* at 961.  Its suggestion that the federal CSA and the "system of control[s] over the distribution and use of controlled substances" in the Illinois CSA, *see* Compl. ¶ 363 & n.35, constitute the required policy is plainly wrong: that argument was already considered, and rejected, by the district court in *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1074 (N.D. Ill. 2016) (rejecting claim that opioid manufacturers' conduct offended a "public policy, enshrined in state and federal law, seeking to ensure that pharmaceuticals are marketed and utilized appropriately").  *See also Carroll v. Butterfield Health Care, Inc.*, No. 02 C 4903, 2003 WL 22462604, at *3 (N.D. Ill. Oct. 29, 2003) (violation of statute that "does not provide a private right of action … does not offend public policy").  The City fares no better citing 745 Ill. Comp. Stat. § 35/2, Compl. ¶ 363 & n.36,

14

an irrelevant drug-intervention statute.  *See Purdue Pharma*, 211 F. Supp. 3d at 1075 (745 Ill. Comp. Stat. § 35/2 had "no bearing" on the City's unfair practices claim against opioid manufacturers).  Nor is an applicable public policy created by the Illinois Drug Dealer Liability Act.  *See* Compl. ¶ 363 & n.37.  As discussed *infra* Part IX, that Act applies only to drug "dealers" involved in the "distribution of illegal drugs," and not to participants in the "chain of distribution for legal products."  740 Ill. Comp. Stat. § 57/10(7).

*Second*, the City fails to allege facts showing that the conduct of the Moving Defendants was "immoral, unethical, oppressive, or unscrupulous."  *Robinson*, 775 N.E.2d at 961.  "The relevant inquiry here is whether a defendant's conduct is 'so oppressive as to leave the consumer with little alternative except to submit to it….'"  *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) (quoting *Robinson*, 775 N.E.2d at 961).  The City cannot plausibly claim that any action of the Moving Defendants left consumers with "little alternative" but to illegally divert prescription opioids.  *See Purdue Pharma*, 211 F. Supp. 3d at 1075 (the City failed to allege that opioid manufacturers "left prescribers and consumers no choice but to use [their] opioids").

*Third*, the City fails to plead that the wholesale distributor conduct of the Moving Defendants "cause[d] substantial injury to consumers."  *Robinson*, 775 N.E.2d at 961; *see Carroll*, 2003 WL 22462604, at *3.

## VIII.  The City's Municipal Services Claim Must Be Dismissed (Count 6).

Chicago Ordinance MCC § 1-20-020 imposes liability for costs on any person who "causes" the City "to incur costs in order to provide services reasonably related to such person's violation of any federal, state or local law."  The City's claim for recovery under this ordinance— which it incorporates into each of its counts—fails for three independent reasons.  *First*, the City fails to state an underlying claim against the Moving Defendants for violation of any federal, state or local law.  *See supra* Parts III-VII; *infra* Part IX.  This is fatal to the City's claim because the

ordinance does not itself impose any duty on or require any action by the Moving Defendants, but rather imposes liability for costs caused by violations of other laws. *See* MCC § 1-20-020; *Purdue Pharma*, 211 F. Supp. 3d at 1083 (noting that the City's § 1-20-020 claim was premised on unlawful acts alleged in separate causes of action). *Second*, as already discussed, the City fails to plead that any action by the Moving Defendants caused the City to incur costs. *See supra* Part III.B; *Purdue Pharma*, 211 F. Supp. 3d at 1083 (dismissing § 1-20-020 claim on causation grounds). *Third*, the claim is barred by the "municipal cost recovery rule, also called the 'free public services doctrine,' under which public expenditures made in the performance of governmental functions are not recoverable in tort." *Beretta U.S.A. Corp.*, 821 N.E.2d at 1144; *see also* Major Distributors' Brief (Part III.C).

## IX.    The City's Drug Dealer Liability Act Claim Must Be Dismissed (Count 7).

The City's final claim, under the Drug Dealer Liability Act, 740 Ill. Comp. Stat. §§ 57/5 *et seq.* ("DDLA"), must be dismissed for at least four reasons.[3] *First*, as explained in the Major Distributors' *Chicago* Brief (Part VI), the DDLA does not apply to legitimate distributors of controlled substances. Rather, it targets the illegal drug market and the "support system of illegal drug related operations." *Id*. § 57/15. As a federal court explained about an analogous statute, "[t]he Louisiana Drug Dealer Act establishes a cause of action against drug dealers, not pharmaceutical companies." *Cooper v. Purdue Frederick Co., Inc.*, No. 08-3757, 2008 WL 11355004, at *3 (E.D. La. Nov. 5, 2008) (internal quotation omitted). The DDLA is similarly designed to reach people "who intentionally join the illegal drug market," not legitimate businesses that allegedly fail to fulfill their regulatory duties within a highly regulated environment. 740 Ill.

---

[3] The Act appears to be rarely used: The Moving Defendants have not located a single decision addressing the merits of a DDLA claim. *Cf. Westfield Nat'l Ins. Co. v. Long*, 811 N.E.2d 776 (Ill. App. Ct. 2004) (addressing insurer's duty to defend DDLA suit without discussing merits).

Comp. Stat. § 57/10(9).  The Moving Defendants are part of the "chain of distribution for legal products," not the "clandestine" distribution system for illegal drugs.  *Id.* § 57/10(7); *see also Cooper*, 2008 WL 11355004, at *3 (plaintiff failed to show that Louisiana statute applied to claims that a pharmaceutical company misrepresented OxyContin's addictiveness).

*Second*, the City does not plausibly allege that the Moving Defendants "knowingly participated" in the illegal drug market.  740 Ill. Comp. Stat. § 57/25(b)(2).  The City claims that the Moving Defendants satisfied this element by "failing to detect, report, and reject suspicious orders reaching the City."  Compl. ¶ 390.  But these allegations at best suggest negligence, not knowledge.  Further, as already noted, the DDLA itself states that liability is reserved for "those who *intentionally* join the illegal drug market"—a standard plainly not met by the allegations here. 740 Ill. Comp. Stat. § 57/10(9) (emphasis added); *see also Whittemore v. Owens Healthcare-Retail Pharmacy, Inc.*, 111 Cal. Rptr. 3d 227, 229-230 (Cal. Ct. App. 2010).

*Third*, the City asserts a DDLA claim against the Moving Defendants based on "individual drug users in the City."  Compl. ¶ 390.  But a DDLA claim must be based on the illegal drug use of a *specific* individual user.  740 Ill. Comp. Stat. § 57/15 ("'Individual drug user' means the individual whose illegal drug use is the basis of an action brought under this Act."); *see also id.* § 57/25 (elements for recovery tied to facts relating to an individual user); *id.* § 57/70 (statute of limitations tied to an individual user).  The Complaint does not identify an individual user, instead attempting to recover based on an unspecified number of unnamed individual users.  Such allegations fail to comply with the statute.  *See Ashley Cty.*, 552 F.3d at 672 (stating that the individual user is "critical" to Arkansas's DDLA and that the act does not establish a public policy making drug manufacturers liable for societal costs relating to those drugs).

17

*Finally*, the DDLA's causation presumption violates due process.  *Cf. Steed v. Bain-Holloway*, 356 P.3d 62, 68 (Okla. Civ. App. 2015) (holding that Oklahoma's DDLA impermissibly "creates liability for participation in the illegal drug market, regardless of whether the defendant's conduct is the cause of the injury").  The DDLA allows a plaintiff to recover against any knowing participant in an illegal drug market if that participant sold the same type of drug around the same time and in the same geographic area as the individual user who used the drug.  740 Ill. Comp. Stat. § 57/25(b)(2).  There is no opportunity to rebut this presumption, even if the defendant can show that it had no involvement whatsoever with the individual's drug use.  *Id.*  This kind of arbitrary deprivation of property violates the constitutional due process protections of both federal and state law.  *See Blount v. Stroud*, 915 N.E.2d 925, 941 (Ill. App. Ct. 2009) (due process clause of the fourteenth amendment prohibits "arbitrary punishments on a tortfeasor"); Ill. Const. Art. 1, § 2; *Steed*, 356 P.3d at 68; *see also Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 338 (Ill. 1990) (rejecting market liability for product liability cases).

## CONCLUSION

For the foregoing reasons, all claims against the Moving Defendants should be dismissed with prejudice.

Dated:  8 June 2018

Respectfully submitted,

/s/    Tara A. Fumerton

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

/s/    Eric R. Delinsky (consent)

Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Health Corporation*

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

Pursuant to Local Rule 7.1(f), I hereby certify that this Court has ordered that length limitations applicable to complex cases apply to this matter, ECF No. 232 at 4 (No. 1:17-MD-2804), and that the foregoing Memorandum of Law is 18 pages in length and within Rule 7.1(f)'s 30-page limit for a complex case.

/s/   Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com