# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*Broward County, Florida v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45332 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

# MEMORANDUM IN SUPPORT
# OF DISTRIBUTORS' MOTION TO DISMISS
# <u>SECOND AMENDED COMPLAINT</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................. 1

BACKGROUND ............................................................. 1

ARGUMENT ............................................................... 2

I.      THE RICO CLAIMS SHOULD BE DISMISSED. ........................... 2

II.     THE CONSUMER FRAUD CLAIM SHOULD BE DISMISSED. ................. 3

        A.      The County Fails to Plead with the Required Particularity. ................... 3

        B.      The County Fails to Allege an Unfair Act or Practice by Distributors. ................. 5

        C.      The County Fails to Allege Actual Damages Cognizable Under FDUTPA. .......... 6

III.    THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED. ................... 9

IV.     THE NEGLIGENCE CLAIMS SHOULD BE DISMISSED. ....................... 10

        A.      There is No Private Right of Action. ................................ 10

        B.      The Negligence *Per Se* Doctrine Cannot Save the County's Claims. ................ 12

        C.      Distributors Do Not Owe A Reporting Duty to the County. ............... 12

V.      THE FRAUD CLAIM SHOULD BE DISMISSED. .......................... 13

VI.     THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. ......... 14

VII.    THE COMMON LAW CLAIMS SHOULD BE DISMISSED FOR
        ADDITIONAL REASONS. ..................................... 15

        A.      The Free Public Services Doctrine Requires Dismissal of the Common
                Law Claims. ................................... 15

        B.      The Complaint Fails Adequately to Allege Proximate Causation. ....... 16

VIII.   THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ............. 17

CONCLUSION.................................................................. 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*,
No. 10-23869-CIV, 2012 WL 1570057 (S.D. Fla. May 2, 2012)..............................................4

*Behrman v. Allstate Ins. Co.*,
388 F. Supp. 2d 1346 (S.D. Fla. 2005) ..................................................................................17

*Buell v. Direct Gen. Ins. Agency, Inc.*,
267 F. App'x 907 (11th Cir. 2008) .........................................................................................11

*In re Cardizem CD Antitrust Litig.*,
332 F.3d 896 (6th Cir. 2003) ...................................................................................................2

*City of Miami v. Citigroup Inc.*,
801 F.3d 1268 (11th Cir. 2015) ......................................................................................15, 16

*Cook v. MillerCoors, LLC*,
829 F. Supp. 2d 1208 (M.D. Fla. 2011)..................................................................................13

*Derbabian v. Bank of Am., N.A.*,
587 F. App'x 949 (6th Cir. 2014) .............................................................................................4

*Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings, Inc.*,
674 F. Supp. 2d 1344 (S.D. Fla. 2009) ...................................................................................6

*In re Edgewater By The Bay, LLLP*,
419 B.R. 511 (Bankr. S.D. Fla. 2009)......................................................................................5

*EEOC v. Nw. Airlines, Inc.*,
188 F.3d 695 (6th Cir. 1999) ...................................................................................................2

*Feheley v. LAI Games Sales, Inc.*,
No. 08-23060-CIV, 2009 WL 2474061 (S.D. Fla. Aug. 11, 2009) .........................................6

*Fields v. Mylan Pharm., Inc.*,
751 F. Supp. 2d 1257 (N.D. Fla. 2009)..................................................................................11

*Gastaldi v. Sunvest Resort Cmtys., LC*,
709 F. Supp. 2d 1299 (S.D. Fla. 2010) ...................................................................................7

*Gorran v. Atkins Nutritionals, Inc.*,
464 F. Supp. 2d 315 (S.D.N.Y. 2006), *aff'd*, 279 F. App'x 40 (2d Cir. 2008).........................7

*Grubbs v. Sheakley Grp., Inc.*,
807 F.3d 785 (6th Cir. 2015) ...................................................................................................3

*Gurerro v. Target Corp.*,
   889 F. Supp. 2d 1348 (S.D. Fla. Sept. 4, 2012) ....................................................................14

*Hennegan Co. v. Arriola*,
   855 F. Supp. 2d 1354 (S.D. Fla. 2012) ...............................................................................7, 8

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992)..............................................................................................................17

*Hucke v. Kubra Data Transfer Ltd.*,
   160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015) ....................................................................5, 6

*Hucke v. Kubra Data Transfer Ltd.*,
   No. 15-14232-CIV, 2015 WL 12085833 (S.D. Fla. Oct. 8, 2015) ...........................................5

*Hummel v. Tamko Bldg. Prods., Inc.*,
   No. 6:15–cv–910-Orl-40GJK, 2015 WL 12843907 (M.D. Fla. Nov. 6, 2015) ........................3

*Jovine v. Abbott Labs, Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011) ...................................................................................7

*Labzda v. Purdue Pharma, L.P.*,
   292 F. Supp. 2d 1346 (S.D. Fla. 2003) ..........................................................................13, 16

*Lemy v. Direct Gen. Fin. Co.*,
   559 F. App'x 796 (11th Cir. 2014) ..................................................................................11, 15

*Licul v. Volkswagen Grp. of Am., Inc.*,
   No. 13-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)..................................................14

*Mantz v. TRS Recovery Servs., Inc.*,
   No. 11- 80580-CIV, 2011 WL 5515303 (S.D. Fla. Nov. 8, 2011) ...........................................7

*Nelson v. Wal-Mart Stores, Inc.*,
   No. 4:14-cv-004, 2014 WL 12461056 (N.D. Fla. Mar. 26, 2014)..........................................11

*Nova Info. Sys. v. Greenwich Ins. Co.*,
   No. 6:00-cv-1703ORL31, 2002 WL 32075792 (M.D. Fla. Dec. 13, 2002) ...........................15

*Patel v. Catamaran Health Solutions, LLC*,
   No. 15-cv-61891, 2016 WL 5942475 (S.D. Fla. Jan. 14, 2016)............................................11

*Principal Life Ins. Co. v. Mosberg*,
   No. 09-22341, 2010 WL 473042 (S.D. Fla. Feb. 5, 2010) ...................................................17

*Randolph v. 9-1-19 Co.*,
   No. 3:08-cv-204, 2008 WL 2385230 (M.D. Fla. June 7, 2008) ..............................................8

iv

*Rikos v. Procter & Gamble Co.*,
  782 F. Supp. 2d 522 (S.D. Ohio 2011) ...............................................................................4, 5

*Rogers v. Nacchio*,
  241 F. App'x 602 (11th Cir. 2007) ...........................................................................................3

*Rowe v. Mentor Worldwide, LLC*,
  297 F. Supp. 3d 1288 (M.D. Fla. 2018) .................................................................................12

*Scolieri v. John Hancock Life Ins. Co.*,
  No. 2:16-cv-690, 2017 WL 700215 (M.D. Fla. Feb. 22, 2017)...............................................14

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
  487 F. Supp. 2d 914 (S.D. Ohio 2007) ...................................................................................2

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*,
  278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017) .........................................................................3

*T.W.M. v. Am. Med. Sys., Inc.*,
  886 F. Supp. 842 (N.D. Fla. 1995)......................................................................................7, 11

*Taviere v. Precision Motor Cars, Inc.*,
  No. 8:09-cv-467-T-TBM, 2010 WL 557347 (M.D. Fla. Feb. 12, 2010)....................................7

*Tilton v. Playboy Entm't Grp.*,
  No. 88:05-cv-692, 2007 WL 80858 (M.D. Fla. Jan. 8, 2007) .................................................15

*In re Vertrue Mktg. & Sales Practices Litig.*,
  712 F. Supp. 2d 703 (N.D. Ohio 2010), *aff'd*, 719 F.3d 474 (6th Cir. 2013) ...........................2

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................................................4

*Wagner v. First Horizon Pharm. Corp.*,
  464 F.3d 1273 (11th Cir. 2006) ...............................................................................................4

*Williams v. Mosaic Fertilizer, LLC*,
  No. 8:14–cv–1748, 2015 WL 12835675 (M.D. Fla. Apr. 22, 2015) .......................................13

*Zarrella v. Pac. Life Ins. Co.*,
  755 F. Supp. 2d 1218 (S.D. Fla. 2010) .................................................................................12

## STATE CASES

*Ankers v. Dist. Sch. Bd. of Pasco Cnty.*,
  406 So. 2d 72 (Fla. App. 1981)..............................................................................................12

*Bortell v. White Mountains Ins. Grp., Ltd.*,
    2 So. 3d 1041 (Fla. App. 2009)................................................................2

*Casey v. Cohan*,
    740 So. 2d 59 (Fla. App. 1999)..............................................................14

*Dep't of Corr. v. McGhee*,
    653 So. 2d 1091 (Fla. App. 1995)...........................................................13

*Dunn Bus Serv. v. McKinley*,
    178 So. 865 (Fla. 1937)..........................................................................17

*Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.*,
    616 So. 2d 562 (Fla. App. 1993)............................................................17

*Gardner v. Weiler*,
    630 So. 2d 670 (Fla. App. 1994)............................................................16

*Ginsberg v. Lennar Fla. Holdings, Inc.*,
    645 So. 2d 490 (Fla. App. 1994)............................................................17

*Lighthouse Mission of Orlando, Inc. v. Estate of McGowen*,
    683 So. 2d 1086 (Fla. App. 1996)...........................................................13

*Orlando Sports Stadium, Inc. v. State ex rel. Powell*,
    262 So. 2d 881 (Fla. 1972).....................................................................10

*Palmer v. Shearson Lehman Hutton, Inc.*,
    622 So. 2d 1085 (Fla. App. 1993)...........................................................13

*Penelas v. Arms Tech., Inc.*,
    No. 99-1941 CA-06, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*,
    778 So. 2d 1042 (Fla. App. 2001)....................................................9, 10, 16

*Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042 (Fla. App. 2001) ......................9

*Rodriguez v. Recovery Performance & Marine, LLC*,
    38 So. 3d 178 (Fla. App. 2010)............................................................7, 8

*Sewell v. Racetrac Petroleum, Inc.*,
    No. 3D16-1218, 2017 WL 6598586 (Fla. App. Dec. 27, 2017) ..............12

*State v. Lucas*,
    600 So. 2d 1093 (Fla. 1992)....................................................................2

*Trianon Park Condo. Assn., Inc. v. City of Hialeah*,
    468 So. 2d 912 (Fla. 1985)....................................................................13

## OTHER AUTHORITIES

21 C.F.R. § 1301.74(b) ...........................................................................................5, 6, 10

Fla. Stat. §§ 499.001 et seq. ...............................................................................5, 6, 11, 12

Fla. Stat. § 499.0121 ..................................................................................................5, 6

Fla. Stat. § 499.0121(15)(b) ...........................................................................................11

Fla. Stat. §§ 501.201 et seq. ................................................................................. *passim*

Fla. Stat. § 501.203(3)(c) ...............................................................................................5

Fla. Stat. § 501.211(2) ....................................................................................................6

Fla. Stat. § 501.212(3) ....................................................................................................7

Fla. Stat. § 772.102(1)(b) ...............................................................................................2

Fla. Stat. § 772.103(4) ....................................................................................................3

15 Wright & Miller, *Federal Practice and Procedure* § 3867 (4th ed.) ........................................2

Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively, "Distributors") move to dismiss the Second Amended Complaint ("Complaint") filed May 30, 2018, and submit the following brief in support of the motion.

## PRELIMINARY STATEMENT

The problem of opioid abuse is real, but the attempt by Broward County (the "County") to fix liability on Distributors—who neither promote opioids to doctors nor provide them to patients—is misplaced.

The gist of the Complaint is that various opioid manufacturers—the "Marketing Defendants"—allegedly deceived doctors and the public by marketing opioid medications as non-addictive and effective for treating chronic pain. But the Complaint contains no factual allegations that Distributors misled doctors or the public about opioid medications. And for good reason: Distributors are wholesalers, whose role in the pharmaceutical distribution chain is limited to filling orders placed by DEA-registered and state-licensed pharmacies and dispensaries. They do not prescribe drugs to patients; doctors do that. And they do not provide drugs to patients; pharmacists do that. Against this backdrop, it is unsurprising that each of the County's claims fails as a matter of law.

## BACKGROUND

The federal regulatory backdrop against which this action is set is described in detail in Distributors' *Summit County* brief. Broward County's allegations largely track the allegations made by Summit County in its Complaint, and Distributors therefore incorporate herein by reference the "Background" section of their *Summit County* brief. *See* Distributors' Mem. in Supp. of Mot. to Dismiss Summit Cnty. Second Am. Compl. ("Summit Br."), Dkt. 491-1.

# ARGUMENT[1]

## I.    THE RICO CLAIMS SHOULD BE DISMISSED.

For substantially the reasons explained in Distributors' *Summit County* brief, Broward County's federal RICO claims fail as a matter of law.  *See* Summit Br., Dkt. 491-1 at Part I.[2]

For many of the same reasons, the County's Florida RICO claim likewise fails.  First, as under federal law, Florida RICO requires a plaintiff to allege a "***direct relation*** between the injury asserted and the injurious conduct alleged."  *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1047 (Fla. App. 2009) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).  "Indirect harm is insufficient" under Florida law.  *Id.*  For substantially the reasons explained in the *Summit County* brief, Broward County fails to plead the direct relationship required to state a claim under Florida law.  *See* Summit Br., Dkt. 491-1 at Part I.B.

Second, the Florida RICO statute's definition of "criminal activity" incorporates RICO's definition of "racketeering activity," and the same analysis therefore applies to both.  *See* Fla. Stat. § 772.102(1)(b) (citing 18 U.S.C. § 1961(1)(A)–(D)); *see also State v. Lucas*, 600 So. 2d 1093, 1094 (Fla. 1992) (adopting federal case law on "pattern of racketeering activity" requirement to interpret Florida RICO).  Like Summit County, Broward County alleges as predicate acts mail

---

[1] Unless otherwise noted, this Memorandum adds all emphasis in quotations and omits citations and internal quotation marks.  Distributors also hereby adopt, as if set forth herein, the arguments made in support of the separate motions to dismiss filed today in this case by the manufacturing defendants and the retail pharmacy defendants.

[2] Distributors' motion to dismiss Summit County's RICO claim relied in part on Sixth Circuit law.  The law of the Sixth Circuit likewise applies to Broward County's federal RICO claim.  *See, e.g.*, 15 Wright & Miller, *Federal Practice and Procedure* § 3867 n.32 (4th ed.) (collecting cases); *see also In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 912 n.17 (6th Cir. 2003) (applying law of the transferee court in an MDL); *EEOC v. Nw. Airlines, Inc.*, 188 F.3d 695, 700 (6th Cir. 1999) (adopting "the prevailing view … that the venue of appeal determines choice of law on federal issues"); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 487 F. Supp. 2d 914, 920 (S.D. Ohio 2007) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."); *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 712 n.4 (N.D. Ohio 2010) ("In an MDL proceeding, the transferee court applies the federal law of the circuit in which it is located."), *aff'd*, 719 F.3d 474 (6th Cir. 2013).

fraud, wire fraud, and violations of the federal Controlled Substances Act ("CSA").  *See* Compl. ¶¶ 846–848, 903.  But like Summit County, Broward County fails to allege mail and wire fraud with the particularity required under Rule 9(b).  And like Summit County, Broward County alleges CSA violations that are not predicate acts under RICO.  Accordingly, Broward County's predicate act allegations are insufficient under Florida Law for precisely the same reasons that Summit County's claims fail under the federal RICO statute.  *See* Summit Br., Dkt. 491-1 at Part I.C.

Finally, the Complaint alleges that Distributors conspired to violate the Florida RICO statute.  Compl. ¶¶ 904–10; *see* Fla. Stat. § 772.103(4).  But where, as here, the plaintiff "fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails."  *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) (dismissing federal and state RICO conspiracy claims); *see also Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 805–06 (6th Cir. 2015) ("To state a claim for RICO conspiracy, one must successfully allege all the elements of a RICO violation, as well as … the existence of an illicit agreement to violate the substantive RICO provision.").  The Florida RICO conspiracy allegations thus should be dismissed.

## II.     THE CONSUMER FRAUD CLAIM SHOULD BE DISMISSED.

The County's claim that Distributors violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") fails for multiple reasons.

### A.     The County Fails to Plead with the Required Particularity.

The County's FDUTPA claim should be dismissed because it is not pled with the requisite particularity.  FDUTPA claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b).  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017); *Hummel v. Tamko Bldg. Prods., Inc.*, No. 6:15–cv–910-Orl-40GJK, 2015 WL 12843907, at *2 (M.D. Fla. Nov. 6, 2015).

Even non-fraud claims "must be pled with particularity when the facts underlying the misrepresentation at stake in the claim are said to be part of a fraud claim, as alleged elsewhere in the complaint." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (claim for "preparing and signing materially misleading registration statements," a non-fraud claim, must be pled with particularity when the misleading statements are "also alleged to support a claim for fraud under the Exchange Act and Rule 10(b)-5"); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (Rule 9(b) applies where plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim").

Pursuant to Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 536 (S.D. Ohio 2011) (quoting *Vess*, 317 F.3d at 1106); *see also Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 953 (6th Cir. 2014). Even if Rule 9(b) did not apply, a FDUTPA claim must include well-pled, "defendant-specific" factual allegations that plausibly state a claim for relief. *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV, 2012 WL 1570057, at *7–8 (S.D. Fla. May 2, 2012).

Here, the FDUTPA allegations sound in fraud, as the factual allegations underlying the claim against Distributors—i.e., their alleged failure to monitor and report suspicious orders—also form the basis of the County's fraud claims. *See* Compl. ¶ 926. Yet the County's allegations lack any particularity: the only allegations pertaining to Distributors are that they "omitt[ed] the material fact of [their] failure to design and operate a system to disclose suspicious orders of controlled substances" and failed "to actually disclose such suspicious orders" to regulators. *Id*. These allegations fall well short of the particularity required by Rule 9(b). They do not identify, for example, any specific orders that should have been reported but were not; nor do they make

any "defendant-specific" allegations.  The Complaint thus fails to allege the "who, what, when, where, and how' of the misconduct charged.'"  *Rikos*, 782 F. Supp. 2d at 536.

### B.       The County Fails to Allege an Unfair Act or Practice by Distributors.

The FDUTPA claim is also deficient because the County fails adequately to allege an actionable violation of the statute.  The gravamen of the claim is that (i) Distributors failed to "design and operate a system to disclose suspicious orders of controlled substances" (ii) in violation of 21 C.F.R. § 1301.74(b), and (iii) that federal regulation "is incorporated into Florida law by the Florida Drug and Cosmetic Act (Fla. Stat. § 499 et seq.), including [Florida Statute] § 499.0121."  Compl. ¶ 926.  But those provisions do not "proscribe[] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," Fla. Stat. § 501.203(3)(c); consequently, Distributors' alleged violations are not proper predicates for an FDUTPA claim.

"Statutes may serve as predicates for a FDUTPA claim … in one of two ways."  *Hucke v. Kubra Data Transfer Ltd.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015).  First, the statute may expressly so provide—a circumstance not present here.  Second, "'a court may find that a statute proscribes unfair and deceptive trade practices and therefore operates as an implied FDUTPA predicate.'"  *Id.* (quoting *Parr v. Maesbury Homes, Inc.*, No. 609-cv–1268–ORL–19GJK, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009)).  A statute may qualify as a predicate if it "directly implicate[s] consumer protection," like a food labeling or property sale disclosure statute.  *Hucke v. Kubra Data Transfer Ltd.*, No. 15-14232-CIV, 2015 WL 12085833, at *7 (S.D. Fla. Oct. 8, 2015), *adopted*, 160 F. Supp. 3d 1320 (S.D. Fla. 2015).  On the other hand, where there is "nothing more than a general, indirect link between the subject statute[] and consumer protection goals," the statute may not serve as a predicate.  *Id*.  Indeed, courts have rejected as "overly broad and unfounded" the notion that "a violation of any statute or rule providing consumer protection may provide the basis for a FDUTPA claim."  *In re Edgewater By The Bay, LLLP*, 419 B.R. 511, 516

(Bankr. S.D. Fla. 2009) (emphasis omitted).  For these reasons, courts have found provisions relating to escrow protections for condominium purchases, bans on gaming machines, and regulations of money transmitters to be insufficiently related to consumer protection to qualify as predicates for FDUTPA claims.[3]

Neither 21 C.F.R. § 1301.74(b) nor Florida Statute § 499.0121 **directly** implicates consumer protection.  As those provisions recognize, Distributors have no direct interactions with consumers.  Section 1301.74(b) requires registrants to "design and operate a system to disclose to the registrant suspicious orders of controlled substances" and "inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant."  Florida Statute § 499.0121 concerns the storage and transportation of controlled substances, related recordkeeping requirements, and certain reporting and due-diligence requirements applicable to wholesalers.  Both govern Distributors' cooperation with regulators, and neither has more than a "general, indirect" link to "consumer protection goals."  *Hucke*, 160 F. Supp. 3d at 1328.  As a result, the statutory and regulatory violations alleged by the County cannot serve as predicates for an FDUTPA claim.

### C.  The County Fails to Allege Actual Damages Cognizable Under FDUTPA.

The FDUTPA claim also fails because the County does not allege damages cognizable under the statute.  The statute allows recovery only for "actual damages," Fla. Stat. § 501.211(2),

---

[3] *See, e.g.*, *Feheley v. LAI Games Sales, Inc.*, No. 08-23060-CIV, 2009 WL 2474061, at *4 (S.D. Fla. Aug. 11, 2009) (slot machine ban not a FDUTPA predicate largely because provision contains "no explicit declaration that a violation constitutes an unfair, unconscionable, or deceptive trade practice, as do other statutory provisions that operate as implied predicates"); *Double AA Int'l Inv. Grp., Inc. v. Swire Pac. Holdings, Inc.*, 674 F. Supp. 2d 1344, 1358 (S.D. Fla. 2009) (provision requiring separate escrow account not a FDUTPA predicate because it was "ministerial in nature, rather than designed to prevent misleading or deceptive acts"); *Hucke*, 160 F. Supp. 3d at 1327–28 (money transmitter regulations not a FDUTPA predicate given the only "*general, indirect* link between the subject statute[] and consumer protection goals").

defined as the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. App. 2010); *see also Gastaldi v. Sunvest Resort Cmtys., LC*, 709 F. Supp. 2d 1299, 1304 (S.D. Fla. 2010) (same). For purposes of the statute, "'actual damages' do not include consequential damages." *Jovine v. Abbott Labs, Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011). Actual damages under the FDUTPA, moreover, "must *directly flow* from the alleged deceptive act or unfair practice." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).

The statute specifically prohibits recovery for "[a] claim for personal injury or death," or "a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3). Courts accordingly do not permit FDUTPA claims for expenditures arising from personal injuries. *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (dismissing FDUTPA claim for medical care and loss of earnings). "If a plaintiff fails to allege a recoverable loss under FDUTPA, the complaint fails to state a claim." *Mantz v. TRS Recovery Servs., Inc.*, No. 11- 80580-CIV, 2011 WL 5515303, at *2 (S.D. Fla. Nov. 8, 2011) (citing *Smith v. 2001 S. Dixie Hwy., Inc.*, 872 So. 2d 992, 994 (Fla. App. 2004)).

The County's FDUTPA claim runs afoul of these rules in three ways. First, the County has failed to allege actual damages—that is, it "has not alleged facts sufficient to show that defendants' alleged unfair or deceptive practices caused a diminution in the value of the products that [it] purchased." *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 329 (S.D.N.Y. 2006), *aff'd*, 279 F. App'x 40 (2d Cir. 2008). The Complaint's bare assertion in the FDUTPA count that the County "is entitled, and does hereby seek, to recover its actual damages," Compl. ¶ 929, is a "conclusory allegation[] … insufficient to support a claim." *Taviere v. Precision Motor*

*Cars, Inc.*, No. 8:09-cv-467-T-TBM, 2010 WL 557347, at *5 (M.D. Fla. Feb. 12, 2010) (dismissing FDUTPA claim).  Nor do the injuries claimed by the County elsewhere in the Complaint—such as health-care and law-enforcement costs, *e.g.*, Compl. ¶ 810—amount to a claim for actual damages.  They do not represent the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered."  *Rodriguez*, 38 So. 3d at 180.

Second, the County's FDUTPA claim does not allege cognizable damages because the alleged damages arise from personal injuries.  The County asserts that it bore "unanticipated costs"—including "increased healthcare expenditures, law enforcement and judicial expenditures, increased jail and public works expenditures, increased substance abuse treatment and diversion plan expenditures," Compl. ¶ 662—only because its residents first suffered personal injuries, such as opioid addiction and overdoses, *see id.* ¶ 653.  The County's damages therefore arise out of personal injuries and are not cognizable under FDUTPA.  *See, e.g.*, *Randolph v. 9-1-19 Co.*, No. 3:08-cv-204, 2008 WL 2385230, at *2 (M.D. Fla. June 7, 2008) (barring recovery under FDUTPA for "medical expenses incurred as a result of … personal injuries").

Third, the damages claimed by the County do not "directly flow" from any alleged deceptive act or practice by Distributors.  *Hennegan*, 855 F. Supp. 2d at 1361.  As explained in greater detail in Distributors' *Summit County* brief, many intervening actors and events—including in every case (i) a prescribing doctor's decision regarding a patient's treatment, (ii) a pharmacist's decision whether to dispense a prescription, and (iii) a patient's or another's decision to misuse or divert a prescribed medication—separate the County's asserted damages from Distributors' alleged wrongdoing.  *See* Summit Br., Dkt. 491-1 at Parts I.B, IV.C.

### III.     THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED.

The County's public nuisance claim fails for four reasons.  First, the Florida Supreme Court has ***never*** recognized a common law public nuisance that did not concern or interfere with rights connected to property, and its lower courts hold that "[p]ublic nuisance does not apply to the design, manufacture, and distribution of a lawful product."  *Penelas v. Arms Tech., Inc.*, No. 99-1941 CA-06, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla. App. 2001).  This is because a "separate body of law (strict product liability and negligence) has been developed to apply to the manufacture and design of products."  *Id.*  The Court should therefore reject the County's invitation to stretch the doctrine of public nuisance beyond its existing boundaries.  *See also* Summit Br., Dkt. 491-1 at Part II.A n.18 (collecting cases).

Second, Florida courts have resisted efforts by political subdivisions to regulate issues through litigation that are more properly within the jurisdiction of state and federal agencies.  For example, in *Penelas*, the court of appeals rejected an attempt by a county to obtain injunctive relief against gun manufacturers for allegedly interfering with the public health and safety of County residents, explaining:

> The County's request that the trial court … declare that the appellees' business methods create a public nuisance, is an attempt to regulate firearms and ammunition through the medium of the judiciary.  Clearly this round-about attempt is being made because of the County's frustration at its inability to directly regulate firearms ….  The County's frustration cannot be alleviated through litigation as the judiciary is not empowered to "enact" regulatory measures in the guise of injunctive relief.

778 So. 2d at 1045.  Regulating controlled substances through public nuisance law is similarly inappropriate.  Applied in the loose fashion advocated by the County, the doctrine would supplant the calibrated regulatory framework administered and enforced by the FDA, DEA, and the Florida Boards of Medicine and Pharmacy.  *See* Summit Br., Dkt. 491-1 at Part II.B.2.

Third, like Illinois, Ohio, and virtually every other jurisdiction, Florida requires that a **public** nuisance claim involve invasion of a **public** right. *See Orlando Sports Stadium, Inc. v. State ex rel. Powell*, 262 So. 2d 881, 884 (Fla. 1972) ("A public nuisance violates public rights, subverts public order, decency or morals, or causes inconvenience or damage to the public generally."). The Complaint does not even attempt to identify any public right with which Distributors interfered. For this fundamental reason, and as explained in greater detail in Distributors' *Summit County* and *City of Chicago* briefs, Broward County's public nuisance claim fails as a matter of law. *See* Summit Br., Dkt. 491-1 at Part II.B.1; Distributors' Mem. in Supp. of Mot. to Dismiss City of Chicago First Am. Compl. ("Chicago Br."), Dkt. 571-1 at Part I.A.

Fourth, as in Michigan, Florida law provides that "a party cannot be held liable for nuisance absent control of the activity which creates the nuisance." *Penelas*, 1999 WL 1204353, at *4 (concluding "the nuisance is the criminal or reckless misuse of firearms by third parties who are beyond the control of the defendants"). For this reason, too, and as explained in greater detail in Distributors' *Monroe County* brief, the County's public nuisance claim should be dismissed. *See* Distributors' Mem. in Supp. of Mot. to Dismiss Monroe Cnty. Second Am. Compl. ("Monroe Br."), Dkt. 572-1 at Part III.C.

## IV.    THE NEGLIGENCE CLAIMS SHOULD BE DISMISSED.

The gist of the County's negligence claims is that Distributors breached an alleged duty to the County to report or stop shipment of suspicious orders by their retail pharmacy customers. *See* Compl. ¶¶ 481, 486–87. These claims fail for several overlapping reasons.

### A.    There is No Private Right of Action.

The genesis of Distributors' alleged duty to report or halt suspicious orders is a federal regulation, 21 C.F.R. § 1301.74(b). As explained in Distributor's *Summit County* brief, however,

there is no private right of action to enforce that federal reporting requirement.  *See* Summit Br., Dkt. 491-1 at Part III.B.1.

The County also asserts that a duty to report suspicious orders exists under the Florida Drug and Cosmetic Act ("FDCA"), Fla. Stat. §§ 499 *et seq.*  *See* Compl. ¶ 948.  There is, however, likewise no express or implied private right of action to enforce the FDCA.  *See Nelson v. Wal-Mart Stores, Inc.*, No. 4:14-cv-004, 2014 WL 12461056, at *2 (N.D. Fla. Mar. 26, 2014) ("[T]here is no private right of action under [the Florida Drug and Cosmetic Act]."); *Fields v. Mylan Pharm., Inc.*, 751 F. Supp. 2d 1257, 1259 (N.D. Fla. 2009) ("Nowhere does the [FDCA] state that it provides for a private cause of action."); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 845 (N.D. Fla. 1995) ("Legislative intent … does not support the conclusion that the Florida Drug and Cosmetic Act impliedly provides a private cause of action.").[4]

While the FDCA imposes certain obligations on wholesale distributors, it makes clear that the legislature vested exclusive authority for enforcement of its provisions with the Florida Department of Health ("DOH").  For example, the FDCA requires wholesale distributors to "take reasonable measures to identify its customers, understand the normal and expected transactions conducted by those customers, and identify those transactions that are suspicious in nature."  Fla. Stat. § 499.0121(15)(b); *see also* Compl. ¶ 948 (citing §§ 499 *et seq.*).  The reporting required by

---

[4]  *See also Lemy v. Direct Gen. Fin. Co.*, 559 F. App'x 796, 799 (11th Cir. 2014) (affirming the district court's reasoning that "since the Florida legislature had created a private right of action for some insurance code violations, but not for others, plaintiffs could not circumvent this legislative decision by asserting common law claims premised on violations of code sections"); *Patel v. Catamaran Health Solutions, LLC*, No. 15-cv-61891, 2016 WL 5942475, at *8 (S.D. Fla. Jan. 14, 2016) ("Florida law is clear that no private right of action exists for alleged statutory violations, even on common law theories, unless the text or legislative history of the statute at issue confirms that the Legislature intended to confer such a right."); *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008) ("[P]laintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions of FUITPA by asserting common law claims based on such violations").

this section is to be made **to the DOH**. *Id.* The FDCA imposes no reporting or other obligations running to counties, the public, or any entity other than DOH.

### B. The Negligence *Per Se* Doctrine Cannot Save the County's Claims.

For substantially the reasons explained in Distributor's *Summit County* brief, the County cannot plead around the absence of a private right of action by invoking the doctrine of negligence per se. *See Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288 (M.D. Fla. 2018) ("violation of a federal regulation does not create civil liability based upon a theory of negligence *per se* in the absence of evidence of a legislative intent to create a private cause of action"); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1229 (S.D. Fla. 2010) ("Plaintiffs cannot use negligence per se to create a private cause of action for alleged violations of [a Florida statute] because the legislature has not demonstrated an intent to create a private cause of action under these sections."); *see also* Summit Br., Dkt. 491-1 at Part III.B.2.

### C. Distributors Do Not Owe A Reporting Duty to the County.

Finally, the County's negligence claims fail because any duty on the part of Distributors to report suspicious orders does not run **to the County**. Under Florida law, the determination of whether a duty exists depends on the nature of the relationship **between the plaintiff and defendant**. *See, e.g.*, *Sewell v. Racetrac Petroleum, Inc.*, No. 3D16-1218, 2017 WL 6598586, at *3 (Fla. App. Dec. 27, 2017). "To sustain a cause of action in negligence, a complaint must allege ultimate facts which establish a relationship between the parties giving rise to a legal duty on the part of the defendant to protect the plaintiff from the injury of which he complains." *Ankers v. Dist. Sch. Bd. of Pasco Cnty.*, 406 So. 2d 72, 73 (Fla. App. 1981). The Complaint, however, does not allege that Distributors—who purchase pharmaceuticals from manufacturers and sell them to licensed pharmacies—have any relationship with the County whatsoever.

At common law, moreover, there is no duty to control the conduct of third parties, particularly third parties engaged in illegal conduct, in the absence of a "special relation" between the parties or between the defendant and a third person.  *See Williams v. Mosaic Fertilizer, LLC*, No. 8:14–cv–1748, 2015 WL 12835675, at *1 (M.D. Fla. Apr. 22, 2015); *Cook v. MillerCoors, LLC*, 829 F. Supp. 2d 1208, 1217 (M.D. Fla. 2011); *Trianon Park Condo. Assn., Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985); *Palmer v. Shearson Lehman Hutton, Inc.*, 622 So. 2d 1085, 1089 (Fla. App. 1993).  Such a "special relation" occurs only in limited circumstances such as where one "takes charge" of a person.  *Lighthouse Mission of Orlando, Inc. v. Estate of McGowen*, 683 So. 2d 1086, 1089 (Fla. App. 1996); *accord Dep't of Corr. v. McGhee*, 653 So. 2d 1091, 1095 n.3 (Fla. App. 1995).  "Implicit in the special relationship exception … is the concept that, when relying on a special relationship between the defendant and the person whose conduct needs to be controlled, the defendant must have the right or ability to control the third person's conduct."  *Palmer*, 622 So. 2d at 1089.  Accordingly, Distributors have no duty to control third parties whose conduct allegedly caused the County to incur expenses because Distributors have no ability to control the actions of third parties who divert opioids.  *See Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1355 (S.D. Fla. 2003) (drug manufacturer had no common law duty to control physicians prescribing its drugs); *see also* Summit Br., Dkt. 491-1 at Part III.B.4.

## V.    THE FRAUD CLAIM SHOULD BE DISMISSED.

The fraud claim should be dismissed against Distributors for substantially the reasons explained in Distributors' *Monroe County* brief.  *See* Monroe Br., Dkt. 572-1 at Part VII.

First, Broward County fails to plead Distributors' alleged misrepresentations with the requisite particularity.  While the Complaint alleges in conclusory terms that unspecified "Defendants" made certain misrepresentations, *e.g.,* Compl. ¶ 974, this group pleading is undercut by the Complaint's factual allegations making clear that the alleged misstatements were in fact

13

made by the Marketing Defendants, *see id.* ¶¶ 143–454. Because neither these allegations of misrepresentations nor any other allegations of misrepresentations by Distributors are made with the particularity required by Rule 9(b), the County's fraud claims should be dismissed. *See supra* at Part II.A; Monroe Br., Dkt. 572-1 at Part VII.A.[5]

Second, the County cannot maintain a fraud claim on the basis of an alleged failure to report suspicious pharmacy orders because Distributors (1) had no duty to speak that ran to the County, and (2) any reporting failure was not made in connection with a business transaction. *See Scolieri v. John Hancock Life Ins. Co.*, No. 2:16-cv-690, 2017 WL 700215, at *3–4 (M.D. Fla. Feb. 22, 2017) (explaining that an omission constitutes fraud under Florida law only where there is a duty to disclose, such as a fiduciary duty or facts that are material to a transaction concerning real property); *Casey v. Cohan*, 740 So. 2d 59, 62 (Fla. App. 1999) (explaining that a fact is material only if the complaining party would not have entered into the transaction at issue but for the alleged nondisclosure); *see also* Monroe Br., Dkt. 572-1 at Part VII.B.

## VI. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The County's unjust enrichment claim should be dismissed. As a threshold matter, the claim is based on the same alleged conduct underlying the County's other claims and should be dismissed as duplicative.[6]

---

[5] The Complaint alleges that Distributors misleadingly claim to maintain "state-of-the-art" anti-diversion systems and a commitment to preventing diversion. *See* Compl. ¶¶ 556–61. But any such statements are not actionable as fraud. *See* Monroe Br., Dkt. 572-1 at Part VII.A.

[6] *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013) (Where an "unjust enrichment claim is a vague catch-all that does no more than incorporate by reference the alleged wrongdoing already addressed by their other legal causes of action," the claim "should be dismissed."); *accord Gurerro v. Target Corp.*, 889 F. Supp. 2d 1348, 1356–57 & n.7 (S.D. Fla. Sept. 4, 2012) ("[T]he factual allegations underlying the FDUTPA and the unjust enrichment claims are exactly the same so Plaintiff should not be permitted to plead an unjust enrichment claim in the alternative.").

In addition, to prevail on an unjust enrichment claim, the County must show that:  "1) it conferred a benefit on Defendants of which Defendants are aware, 2) Defendants voluntarily accepted and retained the benefit conferred, and 3) the circumstances are such that it is inequitable for Defendants to retain the benefit without paying Plaintiff for it."  *Nova Info. Sys. v. Greenwich Ins. Co.*, No. 6:00-cv-1703ORL31, 2002 WL 32075792, at *10 (M.D. Fla. Dec. 13, 2002).  Under Florida law, moreover, a plaintiff must confer a "***direct*** benefit upon Defendants," *id.*—"[a]n indirect benefit is not sufficient to support a claim for unjust enrichment," *Tilton v. Playboy Entm't Grp.*, No. 88:05-cv-692, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007).[7]

The gist of the County's unjust enrichment claim is that it incurred costs for "health insurance, treatment services, autopsies, emergency visits, medical care" and treatment, and "law enforcement."  Compl. ¶ 968.  But these expenditures did not confer a benefit—let alone a direct benefit—on Distributors.  Rather, they conferred a benefit on opioid users.  For this reason, and as explained in the *City of Chicago* and *Monroe County* briefs, the unjust enrichment claim should be dismissed.  *See* Chicago Br., Dkt. 571-1 at Part V; Monroe Br., Dkt. 572-1 at Part VIII.

## VII.  THE COMMON LAW CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS.

The County's common law claims run afoul of the free public services doctrine and the proximate causation requirement.  For these additional reasons, they should be dismissed.

### A.    The Free Public Services Doctrine Requires Dismissal of the Common Law Claims.

The "free public services doctrine" precludes municipalities from recovering in tort for the cost of providing public services to their citizens.  For substantially the reasons explained in

---

[7] *Accord City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277 (11th Cir. 2015) (municipal expenditures allegedly incurred as a result of Bank's wrongdoing "not a benefit directly conferred on the Bank, as is required for an unjust enrichment claim under Florida law").

Distributors' *City of Chicago* brief, *see* Chicago Br., Dkt. 571-1 at Part III.C, the doctrine also bars the claims asserted by Broward County.

The dominant rule throughout the country is that local governments are precluded from asserting claims for damages against private entities seeking reimbursement for police, medical and other costs incurred in the performance of public duties—even where those costs are allegedly in excess of what the government body would otherwise need to spend and even where the defendants allegedly created an ongoing nuisance.  *See id.*  The only Florida court to consider the question has adopted the "prohibition against municipal cost recovery under [the] common law," holding that the costs of providing public services are not recoverable as a matter of law "without express legislative authorization."  *Penelas*, 1999 WL 1204353, at *2, 4 (citing *Koch v. Consol. Edison Co. of N.Y., Inc.*, 568 N.E.2d 1 (N.Y. 1984); *Dist. of Columbia v. Air Fla.*, 750 F.2d 1077 (D.C. Cir. 1984)), *aff'd on other grounds*, 778 So. 2d 1042 (Fla. App. 2001); *accord City of Miami*, 801 F.3d at 1277 ("Municipal expenditures … do not appear to be among the types of benefits that can be recovered … under Florida law.").

The County does not identify any express legislative authorization for its claims—nor could it.  Accordingly, its efforts to recover from Distributors quintessentially public expenditures—i.e., costs associated with "police and fire rescue first responders, hospitalizations and treatment services," *e.g.*, Compl. ¶ 653—is barred by the free public services doctrine.

### B.    The Complaint Fails Adequately to Allege Proximate Causation.

In Florida, as elsewhere, proximate causation is an element of a plaintiff's claims.  *See, e.g.*, *Labzda*, 292 F. Supp. 2d at 1355–56 (negligence); *Penelas*, 1999 WL 1204353, at *4 (nuisance); *Gardner v. Weiler*, 630 So. 2d 670, 670 (Fla. App. 1994) (fraud).  Under Florida law, a "proximate cause" is a cause "that directly causes, or contributes directly to causing, [a] result, without any independent efficient cause intervening between the cause and the result of injury."

16

*Dunn Bus Serv. v. McKinley*, 178 So. 865, 868 (Fla. 1937); *see Holmes*, 503 U.S.at 268 ("among the many shapes th[e] concept [of proximate cause] took at common law was a demand for some direct relation between the injury asserted and the injurious conduct alleged").  Here, for substantially the reasons explained in the *Summit County* brief, Distributors' alleged conduct—which was followed in the chain of causation by the (often negligent or unlawful) conduct of doctors, pharmacists, and patients—did not contribute ***directly*** to causing the County's alleged injuries.  *See* Summit Br., Dkt. 491-1 at Parts I.B, IV.C.[8]

## VIII.   THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

Civil conspiracy claims sounding in fraud—like those made by the County, Compl. ¶ 993—must be pled with particularity.  *See Principal Life Ins. Co. v. Mosberg*, No. 09-22341, 2010 WL 473042, at *6 (S.D. Fla. Feb. 5, 2010); Summit Br., Dkt. 491-1 at Part VI.  The County fails to allege with the requisite particularity that any Distributor (1) acted with an intent to achieve an illegal goal, (2) undertook an "overt act" in furtherance of the alleged conspiracy, or (3) committed an underlying intentional tort.  As under Ohio law, these failures are fatal under Florida law.  *See Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1353 (S.D. Fla. 2005); *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 502 (Fla. App. 1994); *Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.*, 616 So. 2d 562, 565 (Fla. App. 1993).

## CONCLUSION

For the reasons set forth above and in the *Summit County*, *City of Chicago*, and *Monroe County* briefs incorporated herein, the County's claims should be dismissed with prejudice.

---

[8] As set forth more fully in the Manufacturing Defendants' *Summit County* brief, the City's claims are also too speculative to satisfy but-for causation because it has not alleged any facts suggesting that, had Distributors reported suspicious orders to the DEA, then the DEA would have relied on those reports and taken action that would have prevented opioid diversion.  *See* Dkt. 499-1 at Part III.B.1.  Nor has the City alleged that, if one of the Distributors (or even all three) had refused to ship any particular order to a pharmacy, that pharmacy would not otherwise have been able to acquire the medications.

Dated:  June 8, 2018

Respectfully submitted,

/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Corporation
and AmerisourceBergen Drug Corporation*

/s/ Geoffrey Hobart
Geoffrey Hobart
Mark Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*

/s/ Enu Mainigi
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order Number Four (Dkt. 485, May 22, 2018), the Distributors are permitted to file motions to dismiss totaling 150 pages across the following five local government cases set for briefing:

- *Summit County, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090;
- *City of Chicago, Illinois v. Cardinal Health, Inc., et al.*, No. 18-op-45281;
- *Cabell County Comm'n, West Virginia v. AmerisourceBergen Drug Corp. et al.*, No. 17-op-45053;
- *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, No. 18-op-4515; and
- *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332.

This brief adheres to the limits set forth in Case Management Order Number Four, as the combined briefing in those five cases is 148 pages.

*/s/ Geoffrey Hobart*
Geoffrey Hobart

## CERTIFICATE OF SERVICE

I, Geoffrey Hobart, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Geoffrey Hobart*
Geoffrey Hobart