**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*Broward County, Florida v. Purdue Pharma L.P.*, No. 18-op-45332 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**MEMORANDUM OF LAW IN SUPPORT OF THE MANUFACTURER DEFENDANTS'
JOINT MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ISSUES AND ARGUMENT .....................................1

LEGAL STANDARD...........................................................................................................2

ARGUMENT .......................................................................................................................2

I.     THE COUNTY LACKS STANDING BECAUSE ITS CLAIMS IMPLICATE STATEWIDE CONCERNS WITHIN THE STATE'S EXCLUSIVE PROVINCE..........2

II.    THE FEDERAL AND STATE RICO CLAIMS FAIL (COUNTS 1-4) ...........................3

III.   THE COUNTY'S STATE LAW CLAIMS ARE PREEMPTED.......................................5

IV.   THE COUNTY'S PUBLIC NUISANCE CLAIM FAILS (COUNT 6)............................5

     A.    Florida Recognizes a Safe Harbor for Lawful Conduct....................................6

     B.    The County Cannot Plead Actual or Proximate Causation.................................6

     C.    The Public Nuisance Claim Is Barred by the Municipal Cost Recovery Rule ....................................................................................................................7

V.     THE COUNTY'S NEGLIGENCE CLAIMS FAIL (COUNTS 7-9) .................................7

VI.   THE COUNTY'S FRAUD CLAIM FAILS (COUNT 11) ...............................................9

VII.  THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICE ACT CLAIM SHOULD BE DISMISSED ON NUMEROUS GROUNDS (COUNT 5) ........................10

     A.    The FDUTPA Claim Is Barred by the Safe-Harbor Provision. .............................10

     B.    The County Does Not Allege It Was Involved in a Consumer Transaction..........11

     C.    The County Fails to Plead a Deceptive or Unfair Act, Causation, or Damages...............................................................................................................12

VIII.  THE COUNTY'S UNJUST ENRICHMENT CLAIM FAILS (COUNT 10) ...................13

IX.   THE COUNTY'S CIVIL CONSPIRACY CLAIM FAILS (COUNT 12) ........................14

X.     THE COUNTY'S CLAIM FOR PUNITIVE DAMAGES FAILS (COUNT 13) .............15

XI.   ALL CLAIMS SHOULD BE DISMISSED, IN PART, AS TIME-BARRED .................15

     A.    The Applicable Statutes of Limitations Bar Plaintiff's Claims .............................15

     B.    No Exception to the Limitations Periods Applies.................................................16

          1.    Fraudulent Concealment and Equitable Estoppel Do Not Apply ..............16

          2.    The Continuing Violation Doctrine Does Not Apply ...............................17

CONCLUSION....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADT LLC v. Vivint, Inc.*,
2017 WL 5640725 (S.D. Fla. Aug. 3, 2017)..........................................................................13

*Agency Holding Corp. v. Malley-Duff & Assocs.*,
483 U.S. 143 (1987).................................................................................................................15

*Alhassid v. Bank of Am., N.A.*,
60 F. Supp. 3d 1302, 1319-20 (S.D. Fla. 2014).....................................................................14

*Arnold v. McFall*,
839 F. Supp. 2d 1281 (S.D. Fla. 2011) ....................................................................................9

*Baptista v. JPMorgan Chase Bank, N.A.*,
640 F.3d 1194 (11th Cir. 2011) .............................................................................................13

*Barrow v. Bristol-Myers Squibb*,
1998 WL 812318 (M.D. Fla. Oct. 29, 1998), 190 F.3d 541 (11th Cir. 1999) ..........................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................2, 13

*Cent. Reg'l Employees Ben. Fund v. Cephalon, Inc.*,
2009 WL 3245485 (D.N.J. Oct. 7, 2009)................................................................................11

*Christopher v. Cutter Labs.*,
53 F.3d 1184 (11th Cir. 1995) .................................................................................................4

*City of Miami Beach v. Fleetwood Hotel, Inc.*,
261 So.2d 801 (Fla. 1972)....................................................................................................2, 3

*City of Miami v. Bank of Am. Corp.*,
800 F.3d 1262 (11th Cir. 2015), *vacated and remanded on other grounds*, 137
S. Ct. 1296 (2017).................................................................................................................14

*Eirman v. Olde Disc. Corp.*,
697 So.2d 865 (Fla. Dist. Ct. App. 1997) ..............................................................................10

*Evans v. Pearson Enters., Inc.*,
434 F.3d 839 (6th Cir. 2006) ...................................................................................................9

*Felix v. Hoffmann-LaRoche, Inc.*,
540 So.2d 102 (Fla. 1989).......................................................................................................4

*Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*,
    233 So.3d 1207 (Fla. Dist. Ct. App. 2017) ............................................................13

*Indiana/Kentucky/Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*,
    2014 WL 2115498 (E.D. Pa. May 21, 2014) ............................................................12

*Jackson v. BellSouth Telecomm.*,
    372 F.3d 1250 (11th Cir. 2004) ...................................................................................4

*Janis v. Pratt & Whitney Canada, Inc.*,
    370 F. Supp. 2d 1226 (M.D. Fla. 2005) .......................................................................7

*Jenkins v. W.L. Roberts, Inc.*,
    851 So.2d 781 (Fla. Dist. Ct. App. 2003) ....................................................................7

*Estate of Johnson ex rel. Johnson v. Badger Acquisition Of Tampa LLC*,
    983 So.2d 1175 (Fla. Dist. Ct. App. 2008) ..................................................................8

*Kaiser v. Depuy Spine, Inc.*,
    944 F. Supp. 2d 1187 (M.D. Fla. 2013) .......................................................................8

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997)....................................................................................................16

*Kopel v. Kopel*,
    229 So.3d 812 (Fla. 2017)...........................................................................................13

*Labzda v. Purdue Pharma, L.P.*,
    292 F. Supp. 2d 1346 (S.D. Fla. 2003) ........................................................................8

*Leon v. Tapas & Tintos, Inc.*,
    51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) ..............................................................11

*Lombardo v. Johnson & Johnson Consumer Companies, Inc.*,
    124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) ............................................................12

*Lowe v. Broward Cty.*,
    766 So.2d 1199 (Fla. Dist. Ct. App. 2000) ..............................................................2, 3

*Marketran, LLC v. Brooklyn Water Enters., Inc.*,
    2017 WL 1292983 (S.D. Fla. Jan. 31, 2017) .............................................................13

*Markland v. Insys Therapeutics, Inc.*,
    270 F. Supp. 3d 1318, 1331 (M.D. Fla. 2017) .............................................................8

*Monsanto Co. v. Campuzano*,
  206 F. Supp. 2d 1239 (S.D. Fla.), *modified* (May 2, 2002), *modified*, 206 F.
  Supp. 2d 1270 (S.D. Fla. 2002) .......................................................................................11

*Orlando Sports Stadium, Inc. v. State ex rel. Powell*,
  262 So.2d 881 (Fla. 1972)..................................................................................................6

*Owens-Benniefield v. Nationstar Mortg. LLC*,
  258 F. Supp. 3d 1300, 1316 (M.D. Fla. 2017) .........................................................8

*Penelas v. Arms Tech., Inc.*,
  1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla.
  Dist. Ct. App. 2001) .......................................................................................................6, 7

*Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.*,
  667 So.2d 876 (Fla. Dist. Ct. App. 1996) ...............................................................13

*Perdue v. Wyeth Pharm., Inc.*,
  209 F. Supp. 3d 847, 851-52 (E.D.N.C. 2016) .........................................................5

*Porter v. Ogden, Newell & Welch*,
  241 F.3d 1334 (11th Cir. 2001) ...............................................................................15

*Prohias v. AstraZeneca Pharm., L.P.,*,
  958 So.2d 1054 (Fla. Dist. Ct. App. 2007) ..............................................................10

*Prohias v. Pfizer, Inc.*,
  490 F. Supp. 2d 1228 (S.D. Fla. 2007) ....................................................................10

*Pye v. Fifth Generation, Inc.*,
  2015 WL 5634600 (N.D. Fla. Sept. 23, 2015).........................................................10

*Raie v. Cheminova, Inc.*,
  336 F.3d 1278 (11th Cir. 2003) ...............................................................................16

*Raimi v. Furlong*,
  702 So.2d 1273 (Fla. Dist. Ct. App. 1997) ..............................................................14

*Rand v. Nat'l Fin. Ins. Co.*,
  304 F.3d 1049 (11th Cir. 2002) .................................................................................9

*In re Rezulin Prods. Liab. Litig.*,
  392 F. Supp. 2d 597 (S.D.N.Y. 2005).......................................................................11

*Rollins, Inc. v. Butland*,
  951 So.2d 860 (Fla. Dist. Ct. App. 2006) ................................................................12

*Rounds v. Genzyme Corp.*,
    440 F. App'x. 753 (11th Cir. 2011) ...........................................................................4

*Savalli v. Gerber Prod. Co.*,
    2016 WL 5390223 (S.D. Fla. Sept. 20, 2016) .......................................................10

*Smith v. Bank of Am. Corp.*,
    485 F. App'x 749 (6th Cir. 2012) .........................................................................14

*Soffer v. R.J. Reynolds Tobacco Co.*,
    187 So.3d 1219 (Fla. 2016)....................................................................................15

*Sosa v. Coleman*,
    646 F.2d 991 (5th Cir. 1981) ..................................................................................4

*Suarez v. City of Tampa*,
    987 So.2d 681 (Fla. App. 2008)............................................................................17

*Taft v. The Dade Cty. Bar Ass'n, Inc.*,
    2015 WL 5771811 (S.D. Fla. Oct. 2, 2015)..........................................................11

*Travelers Indem. Co. v. Cephalon, Inc.*,
    32 F. Supp. 3d 538, 552 (E.D. Pa. 2014), *aff'd*, 620 F. App'x 82 (3d Cir. 2015)...................12

*United States v. Caronia*,
    703 F.3d 149 (2d Cir. 2012)..................................................................................12

*Vining v. Avis Rent-A-Car Sys., Inc.*,
    354 So.2d 54 (Fla. 1977).........................................................................................4

*Virgilio v. Ryland Grp., Inc.*,
    680 F.3d 1329 (11th Cir. 2012) ............................................................................12

*Wallace v. Dean*,
    3 So.3d 1035 (Fla. 2009).........................................................................................7

*Weinberg v. Alley*,
    2011 WL 1878129 (N.D. Fla. Mar. 17, 2011) ...............................................17, 18

*Weinberg v. Wakulla Cty. Bd. of Comm'rs*,
    2011 WL 1877832 (N.D. Fla. May 17, 2011) ......................................................17

*Wolicki–Gables v. Arrow Intern., Inc.*,
    641 F. Supp. 2d 1270 ..............................................................................................8

*Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*,
    2017 WL 5202998 (M.D. Fla. Apr. 19, 2017) .....................................................16

*Zlotnick v. Premier Sales Grp., Inc.*,
480 F.3d 1281 (11th Cir. 2007) ...........................................................................12

## Statutes

Code, Art. VII §§ 20-159, *et seq.* ..........................................................................9

Fla. Stat. § 95.031(1), (2)(a) ..................................................................................15

Fla. Stat. § 95.11(3) ...............................................................................................15

Fla. Stat. § 125.01 ...................................................................................................3

Fla. Stat. § 456.44 ...................................................................................................6

Fla. Stat. § 456.44(2), (3) .......................................................................................10

Fla. Stat. § 501.212(1) ...........................................................................................10

Fla. Stat. §§ 772.101-772.19 ....................................................................................4

Fla. Stat. § 772.17 .................................................................................................15

Fla. Stat. § 772.103(3) .............................................................................................5

Fla. Stat. § 893.05(1)(a) ..........................................................................................4

18 U.S.C. §§ 1961 *et seq.* .......................................................................................3

## Other Authority

38 Fla. Jur 2d Negligence § 151 ..............................................................................9

## INTRODUCTION AND SUMMARY OF ISSUES AND ARGUMENT[1]

This Court should dismiss Broward County's Second Amended Complaint ("2AC") for many of the same reasons stated in the Manufacturer Defendants' Joint Motion to Dismiss the Summit County, Ohio action (Dkt. 499-1 ("*Summit* MTD")), and for the additional reasons explained below.[2] As in *Summit*, the County lacks standing to bring this action because it invades the State of Florida's exclusive domain to address matters of statewide concern. In addition, the 2AC does not state a cognizable injury or causal nexus sufficient to satisfy the elements of Plaintiff's RICO and state law claims. The County's alleged injuries are derivative of personal injuries sustained by residents who misused, abused, or became addicted to prescription opioids or illegal drugs. And any connection between the Manufacturer Defendants' alleged conduct and the public harms for which Plaintiff seeks recovery is broken by numerous independent actors and intervening causes, including individual prescribing decisions and criminal conduct. Finally, the County fails to allege any actionable misconduct with the particularity required by Rule 9(b). The 2AC should be dismissed in its entirety.

---

[1] Pursuant to Case Management Order One (Dkt. 232) ¶ 2.g, the Manufacturer Defendants raise only certain key "issues common to all manufacturers" that warrant dismissal of the County's claims. Manufacturer Defendants do not raise, and expressly reserve the right to later raise, additional grounds for dismissal of all claims, including Defendant-specific challenges.

[2] This motion incorporates the definition of "Manufacturer Defendants" set forth in the *Summit* MTD at 1 n.2. Defendant Noramco, Inc., a company referenced in the 2AC as a former affiliate of Janssen (*see* 2AC ¶ 55), joins in this Motion to the extent applicable. Noramco does not (and did not at all material times relevant hereto) manufacture, package, brand, market, distribute, or sell the finished drug products at issue in this litigation, and it reserves all rights and defenses specific to it. Conversely, although the arguments raised herein apply equally to Teva Pharmaceutical Industries Ltd., Allergan plc, and Mallinckrodt plc, these parties do <u>not</u> join this Motion for the same reasons stated in the *Summit* MTD at 1 n.2. Similarly, the arguments also apply to recently named SpecGX LLC, Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc., but those entities have not yet been served in this action (but intend to join the motion at the appropriate time). Unless otherwise noted, this Memorandum adds all emphasis in quotations and omits citations and internal quotation marks.

**LEGAL STANDARD**

The County's claims must meet the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and to the extent they sound in fraud, the particularity standard of Rule 9(b). *Summit* MTD at 5-6. The 2AC satisfies neither.

**ARGUMENT**

**I.     THE COUNTY LACKS STANDING BECAUSE ITS CLAIMS IMPLICATE STATEWIDE CONCERNS WITHIN THE STATE'S EXCLUSIVE PROVINCE**

As a political subdivision, the County may not infringe on the State's exclusive power to address matters of statewide concern. Indeed, the State has exercised its controlling authority by initiating its own lawsuit in Florida state court.

Under the Florida Constitution and the statewide concern doctrine, "[m]unicipal corporations are established for purposes of local government, and, in the absence of specific delegation of power, cannot engage in any undertakings not directed immediately to the accomplishment of those purposes." *City of Miami Beach v. Fleetwood Hotel, Inc.*, 261 So.2d 801, 803 (Fla. 1972). Accordingly, "[m]atters that because of their nature are inherently reserved for the State. . . and many other matters of general and statewide significance, are not proper subjects for local treatment." *Lowe v. Broward Cty.*, 766 So.2d 1199, 1204 (Fla. Dist. Ct. App. 2000). These limitations apply to Broward County.

Just as these principles preclude local ordinances that seek to regulate matters of statewide concern, the same limitations apply equally to ***litigation*** brought by political subdivisions. Here, Plaintiff admits that the opioid crisis is a matter of general concern with effects extending statewide. 2AC ¶¶ 2, 629. Indeed, the Florida Attorney General ("AG") cited that fact in initiating her own lawsuit against manufactures and distributors of opioids. AG Compl., Ex. 1, ¶ 1. Through that suit, the AG seeks to vindicate the interests of Florida and its citizens. *Id.* ¶¶ 13, 223-232.

By contrast, the County cites no authority authorizing Florida counties to bring lawsuits vindicating statewide interests. Its reference to section 1 of Article VIII of the Florida Constitution, 2AC ¶ 30, only confirms that it lacks such standing, as the authority of political subdivisions to sue under that provision does not extend to matters of statewide concern. *Lowe*, 766 So.2d at 1204-05. The same is true with Plaintiff's citation of Fla. Stat. § 125.01, which merely confirms the geographic limitations of the County's authority. *See* Fla. Stat. § 125.01 ("The legislative and governing body of a county shall have the power to carry on *county* government."). Nowhere does that statute provide the requisite "specific delegation of power" for counties to regulate statewide matters. *Fleetwood Hotel, Inc.*, 261 So.2d at 803. Nor does this statute or any other Florida authority permit a political subdivision to maintain an action that is duplicative of one by the Florida Attorney General. Such duplicative actions not only waste judicial and other public resources, but also pose the risk of impermissible claim splitting, inconsistent rulings, and duplicative recoveries for the same alleged harms. In short, Plaintiff's action should be dismissed under the statewide concern doctrine.

## II.     THE FEDERAL AND STATE RICO CLAIMS FAIL (COUNTS 1-4)

The County's claims under the Racketeer-Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, echo nearly verbatim those in *Summit*. *Compare* 2AC ¶¶ 741-804 (facts), ¶¶ 812-838 (Count 1), and ¶¶ 841-871 (Count 2) *with Summit* Corrected 2AC ¶¶ 814-877 (facts), ¶¶ 878-904 (Count 1), and ¶¶ 906-937 (Count 2).[3] Plaintiff's RICO counts thus fail for the same reasons as Summit County's, as the County fails to allege (1) any cognizable injuries; (2) actual or proximate causation; (3) the existence of an "Opioid Marketing Enterprise" or "Opioid Supply Chain Enterprise"; and (4) actionable racketeering activity. *See Summit* MTD at 9-34.

---

[3] The paragraphs describing the requested relief in Counts 1 and 2 appear to be swapped. *Compare* 2AC ¶839-40 and ¶872 *with Summit* Corrected 2AC ¶938 and ¶905, respectively.

Florida law does not rescue any claims that failed under federal and Ohio law in *Summit*. For example:

- In Florida, as in Ohio, the learned intermediary rule applies. *See Felix v. Hoffmann-LaRoche, Inc.*, 540 So.2d 102, 105 (Fla. 1989); *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1192 (11th Cir. 1995). A prescribing physician has "a duty to [patients] to read the package insert and exercise judgment in discussing [the] risks" and benefits of opioid drugs. *Rounds v. Genzyme Corp.*, 440 F. App'x. 753, 756 (11th Cir. 2011); *see also* Fla. Stat. § 893.05(1)(a) (a physician may prescribe controlled substances only "in good faith and in the course of his or her professional practice"); *see also Summit* MTD § II.B.4. The prescribing physician therefore breaks any causal link between the pharmaceutical manufacturer and patient.

- In Florida, as in Ohio, intervening third-party criminal acts such as, in this case, street-level drug dealing and heroin usage, likewise negate proximate causation. *See Summit* MTD § II.B.2; *Vining v. Avis Rent-A-Car Sys., Inc.*, 354 So.2d 54, 55-56 (Fla. 1977); *Sosa v. Coleman*, 646 F.2d 991, 993-94 (5th Cir. 1981).

- In Florida, as in Ohio, unlawful marketing claims fail to the extent they rely on alleged misrepresentations by third parties, where the County has pleaded that such parties acted as the Manufacturer Defendants' agents. *See* Summit MTD § II.B.4.

Nor do the County's sparse additional allegations rescue its deficient RICO claims. The additional allegations in paragraphs 805-06 simply repeat allegations elsewhere in the 2AC (*see* ¶162), cite a magazine article, and allege that Purdue distributed prescription guidelines to Florida physicians with the help of an industry trade group. None supplies the missing link to any of the deficient elements of Plaintiff's federal RICO claims.

To the extent the County seeks to plead violations of the Florida Civil Remedies for Criminal Practices Act ("Florida RICO"), Fla. Stat. §§ 772.101-772.19, these claims similarly fail. Because Florida RICO is based on the federal RICO statute, analysis of Plaintiff's federal RICO claims "is equally applicable to [its Florida] RICO claims." *Jackson v. BellSouth Telecomm.*, 372

F.3d 1250, 1263-64 (11th Cir. 2004). Accordingly, the County's Florida RICO claims[4] should be dismissed for substantially the same reasons as its federal RICO claims.

## III.    THE COUNTY'S STATE LAW CLAIMS ARE PREEMPTED

The County's state law claims are preempted by federal law. *See Summit* MTD § IV. As in *Summit*, the County alleges that the Manufacturer Defendants falsely represented opioids as safe and effective for the long-term treatment of chronic, non-cancer pain, even though FDA has approved most of the medications at issue here for exactly that purpose. *See, e.g.*, 2AC ¶¶ 13-14, 144, 149, 249, 317, 414, 468, 741, 761, 866, 893. Likewise, claims based on alleged off-label promotion are preempted because "[t]he restrictions and guidelines placed upon pharmaceutical companies for off-label promotion entirely depend upon the statutory and regulatory scheme created by the FDCA," which "does not provide a private right of action" to enforce its provisions. *Perdue v. Wyeth Pharm., Inc.*, 209 F. Supp. 3d 847, 851-52 (E.D.N.C. 2016). The County's claims conflict with FDA's decisions and enforcement authority, including its decision to approve the manufacture and sale of these medications to the public, and are preempted by federal law.

## IV.    THE COUNTY'S PUBLIC NUISANCE CLAIM FAILS (COUNT 6)

The County's common law public nuisance claim fails for at least three independent reasons: (1) Florida does not impose liability for public nuisance on manufacturers for the distribution and sale of lawful products, even those alleged to be defective; (2) the County does not and cannot plead that its alleged injuries were actually and proximately caused by the Manufacturer Defendants' alleged conduct; and (3) the County's requested relief is barred by the municipal cost recovery rule.

---

[4] Plaintiff styles Count 3 as a claim under the "Florida Corrupt Practices Act." 2AC at 273. No such statute exists. Consistent with Count 4, the Manufacturer Defendants construe Count 3 as alleging violation of Florida RICO. *See id.* ¶ 875 (alleging violation of Fla. Stat. § 772.103(3)).

### A. Florida Recognizes a Safe Harbor for Lawful Conduct

Florida courts define a public nuisance as conduct that "violates public rights, subverts public order, decency or morals, or causes inconvenience to the public generally." *Orlando Sports Stadium, Inc. v. State ex rel. Powell*, 262 So.2d 881, 884 (Fla. 1972). As in Ohio and Illinois (*see Summit* MTD § VII.C and Manufacturers' Joint Motion to Dismiss in *City of Chicago v. Purdue Pharma L.P.* ("*Chicago* MTD") § II.A), Florida courts recognize a safe harbor from public nuisance liability for lawful conduct: "Public nuisance does not apply to the design, manufacture, and distribution of a lawful product." *Penelas v. Arms Tech., Inc.*, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So.2d 1042 (Fla. Dist. Ct. App. 2001). For example, in *Penelas*, the court dismissed a public nuisance claim against licensed firearms manufacturers based on alleged improper "business methods" in marketing and selling their products as an impermissible "attempt to regulate firearms and ammunition through the medium of the judiciary." 778 So.2d at 1045. Here too, federal and state law expressly authorize and regulate the manufacture, marketing, labeling, sale, and use of the Manufacturer Defendants' opioid medications, including for the treatment of chronic pain. *Summit* MTD § VII.C; Fla. Stat. § 456.44 (governing the prescribing of controlled substances for the treatment of chronic non-cancer pain). Thus, the County's nuisance claims fail under Florida's safe harbor.

### B. The County Cannot Plead Actual or Proximate Causation

The County's public nuisance claim also fails because the Manufacturer Defendants' alleged conduct did not actually or proximately cause the County's alleged harms. As in *Summit* and *Chicago*, the County must plead both actual and proximate causation, but the intervening criminal acts of independent third parties break the chain of causation. *See Summit* MTD § VII.B; *Chicago* MTD § II.A. In Florida, "[a] party cannot be held liable for nuisance absent control of the activity which creates the nuisance." *Penelas*, 1999 WL 12043453 at *4. Here, as in *Penelas*,

because the alleged nuisance involves "criminal or reckless misuse of [a product] by third parties who are beyond the control of the defendants," such "defendants have no ability to control the misconduct of these third parties," and "nuisance does not apply." *Id.*

### C. The Public Nuisance Claim Is Barred by the Municipal Cost Recovery Rule

Under the municipal cost recovery rule, "expenditures made in [the County's] performance of governmental functions" are "not, without express legislative authorization, recoverable by governmental entities." *Penelas*, 1999 WL 1204353 at *2; *cf. Chicago* MTD § II.B. The County seeks recovery of costs that fall squarely within that rule, including "law enforcement and judicial expenditures," "increased prison and public works expenditures," and costs for "clean-up of public parks." 2AC ¶ 936. Such costs are not recoverable because "[n]o Florida statute authorizes the County to seek recovery for its costs of services provided." *Penelas*, 1999 WL 1204353 at *2.

### V. THE COUNTY'S NEGLIGENCE CLAIMS FAIL (COUNTS 7-9)

As in *Summit*, the County's negligence claims fail because the 2AC does not plead actual and proximate causation or any actionable conduct and because the claims are preempted. *See* Summit MTD § IX. In addition, the County has not alleged even "the first required element of a negligence claim": a duty of care to the County. *Wallace v. Dean*, 3 So.3d 1035, 1044 (Fla. 2009). Whether a duty exists "is a threshold legal question; if no legal duty exists, then no action for negligence may lie." *Jenkins v. W.L. Roberts, Inc.*, 851 So.2d 781, 783 (Fla. Dist. Ct. App. 2003); *accord Janis v. Pratt & Whitney Canada, Inc.*, 370 F. Supp. 2d 1226, 1229 (M.D. Fla. 2005).

None of the County's generalized allegations, *see, e.g.*, 2AC ¶ 941, identifies a cognizable common law or statutory duty owed by the Manufacturer Defendants to the County. For example, the County alleges that the Manufacturer Defendants "owed Broward County a duty of care by virtue of their special relationship as manufacturers . . . of pharmaceutical opioids purchased by

Broward County." *Id.* ¶ 950.[5] This purported relationship is not a special relationship under Florida law. To the contrary, "Florida law does not impose a duty on the defendants to interfere with the physician-patient relationship, even if they were aware that the product many have been prescribed inappropriately." *Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1355 (S.D. Fla. 2003).

Nor has the County sufficiently alleged any statutory duty of care. Although the violation of a statute may be *evidence* of negligence, "such evidence only becomes relevant to a breach of a standard of care after the law has imposed a duty of care." *Estate of Johnson ex rel. Johnson v. Badger Acquisition Of Tampa LLC*, 983 So.2d 1175, 1182 (Fla. Dist. Ct. App. 2008). And a statute creates a duty of care for negligence *per se* only where the statute includes a private right of action. *Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1316 (M.D. Fla. 2017). None of the statutes the County cites establishes a duty of care.

To the extent the County purports to rely on an alleged breach of a duty to comply with the federal Food, Drug and Cosmetic Act ("FDCA"), 2AC ¶ 948, Florida law "bars plaintiffs from using state negligence actions to seek recovery for FDCA violations." *Markland v. Insys Therapeutics, Inc.*, 270 F. Supp. 3d 1318, 1331 (M.D. Fla. 2017); *see also Wolicki–Gables v. Arrow Intern., Inc.*, 641 F. Supp. 2d 1270, 1292; *Kaiser v. Depuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1192 (M.D. Fla. 2013). Nor is there a private right of action under the Florida Food, Drug and Cosmetic Act. *Barrow v. Bristol-Myers Squibb*, 1998 WL 812318, at *46 (M.D. Fla. Oct. 29, 1998), *aff'd* 190 F.3d 541 (11th Cir. 1999). The federal Controlled Substances Act likewise "imposes no duty to police prescribing physicians," and its violation cannot serve as the basis of a negligence *per se* claim. *Labzda*, 292 F. Supp. 2d at 1355. The County's attempt to impose a duty

---

[5] In addition, the County does not allege facts showing any direct purchases from any of the Manufacturer Defendants, and thus alleges no privity with the Manufacturer Defendants.

of care based on the Broward County Consumer Protection Code, Art. VII §§ 20-159-20-176.128, *et seq.*, fails for the same reason: it does not establish a private cause of action. *See id.*, Art. VII § 20-176.4; *see also Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008) (plaintiffs cannot use common law claims to circumvent absence of private cause of action).

In sum, the negligence claims are fatally deficient because the 2AC "fails to allege facts establishing a relationship between the plaintiff and the defendant from which the law implies a legal duty." 38 Fla. Jur 2d Negligence § 151 (citing *Peninsular Florida Dist. Council of Assemblies of God v. Pan Am. Inv. and Dev't Corp.*, 450 So.2d 1231 (Fla. Dist. Ct. App. 1984)).

## VI. THE COUNTY'S FRAUD CLAIM FAILS (COUNT 11)

As in *Summit*, the County's fraud claim is premised on allegations of misleading marketing. *See* 2AC ¶ 974. This claim fails for the same reasons discussed in the *Summit* MTD, including because the County fails: to plead any actionable misrepresentation or omission in Broward County, much less with the specificity required by Rule 9(b); to identify any County prescriber who was exposed to the Manufacturer Defendants' alleged deceptive marketing; to identify when or by whom any alleged misrepresentation or omission was made to any County prescriber; and to identify any County prescriber who wrote an allegedly harmful or medically unnecessary opioid prescription as a result of the alleged deceptive marketing.

Moreover, the County fails to plead, as it must, that it detrimentally relied on an alleged misrepresentation. *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1289 (S.D. Fla. 2011); *Rand v. Nat'l Fin. Ins. Co.*, 304 F.3d 1049, 1052 (11th Cir. 2002); *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852-53 (6th Cir. 2006). The 2AC contains only conclusory statements of such reliance on unspecified misrepresentations. *See* 2AC ¶¶ 977-78, 984-85, 987-88. Such allegations should be disregarded and fall well short of pleading detrimental reliance with the particularity required under Rule 9(b). *See Evans*, 434 F.3d at 852-53; *Rand*, 304 F.3d at 1052. Nor can such reliance

"be inferred from [Defendants' alleged] widespread, pervasive, misleading, and effective opioid marketing campaign," 2AC ¶ 985, since detrimental reliance cannot be "inferred" from other elements of fraud. *See Evans*, 434 F.3d at 852-53. The County's failure to adequately plead its own detrimental reliance defeats its fraud claim. *See id.*

## VII. THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICE ACT CLAIM SHOULD BE DISMISSED ON NUMEROUS GROUNDS (COUNT 5)

### A. The FDUTPA Claim Is Barred by the Safe-Harbor Provision.

FDUTPA liability cannot be premised on any "act or practice required or specifically permitted by federal law or state law." Fla. Stat. § 501.212(1); *see also Pye v. Fifth Generation, Inc.*, 2015 WL 5634600, at *4 (N.D. Fla. Sept. 23, 2015); *Eirman v. Olde Disc. Corp.*, 697 So.2d 865, 866 (Fla. Dist. Ct. App. 1997). Applying this safe-harbor provision, courts have regularly held that "advertising activity . . . supported by [] FDA-approved labeling . . . is 'specifically permitted' by federal law," and therefore cannot be the basis for consumer-protection claims. *Prohias v. AstraZeneca Pharm., L.P.*, 958 So.2d 1054, 1056 (Fla. Dist. Ct. App. 2007); *see also Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1234 (S.D. Fla. 2007) (applying safe-harbor where alleged advertisements "largely comport with[] the [FDA] approved label"); *Savalli v. Gerber Prod. Co.*, 2016 WL 5390223, at *4 (S.D. Fla. Sept. 20, 2016) (same).

Here, the Manufacturer Defendants are permitted to market their medications consistent with their FDA-approved labeling, and the County's FDUTPA claims based on that marketing and promotion are barred under the statute's safe harbor. For example, FDA has approved many opioid medications for long-term use in treating chronic pain, including most of the ER/LA opioid medications at issue here. *See Summit* MTD at 35. And Florida law likewise authorizes the use of opioids for chronic pain. Fla. Stat. § 456.44(2), (3). The County's FDUTPA claim based on advertising and promotion these medications for their FDA-approved uses should be dismissed.

10

**B.      The County Does Not Allege It Was Involved in a Consumer Transaction**

As a threshold matter, "a private right of action for damages under [FDUTPA] cannot be maintained unless the alleged unfair or deceptive acts or practices complained of involves a consumer transaction." *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1239, 1251 (S.D. Fla.), *modified* (May 2, 2002), *modified*, 206 F. Supp. 2d 1270 (S.D. Fla. 2002). Accordingly, "FDUTPA applies only to a consumer injured by an unfair or deceptive act when buying or purchasing goods and services."[6] *Taft v. The Dade Cty. Bar Ass'n, Inc.*, 2015 WL 5771811, at *4 (S.D. Fla. Oct. 2, 2015); *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) (dismissing FDUTPA claim with prejudice because plaintiff "cannot be said to be a 'consumer,' as he has not, nor has he alleged to have, engaged in any consumer transaction").

The County fails to allege that it is a "consumer" authorized to bring a FDUTPA action. Apart from vague and conclusory references to "fraudulent prescriptions" (2AC ¶¶ 662, 810, 936), the County does not identify a single prescription for which it paid, much less one that was written because of any Manufacturer Defendant's allegedly false or misleading statement. Nor does the purchase of a medicine by a third-party payor that does not actually use the medicine render that entity a "consumer."[7] Moreover, none of the County's alleged municipal expenditures were incurred in the County's capacity as a "consumer" of the Manufacturer Defendants' opioid products. Accordingly, the County cannot bring a FDUTPA claim.

---

[6] This reading of the statute follows "the overwhelming weight of authority." *Taft v. The Dade Cty. Bar Ass'n, Inc.*, 2015 WL 5771811, at *3-*4 (S.D. Fla. Oct. 2, 2015).

[7] Courts have dismissed similar claims against pharmaceutical manufacturers under consumer protection statutes that impose a "consumer" requirement because a third-party payor of prescription medicines is not a "consumer" of those medicines. *See, e.g., Cent. Reg'l Employees Ben. Fund v. Cephalon, Inc.*, 2009 WL 3245485, at *3 (D.N.J. Oct. 7, 2009); *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 616-17 (S.D.N.Y. 2005).

### C.  The County Fails to Plead a Deceptive or Unfair Act, Causation, or Damages

A FDUTPA claim requires: "'(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'" *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (quoting *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006)). The County has not alleged *any* of these required elements.

*First*, a "deceptive" or "unfair" practice must be "likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)). As explained in Section VI, the County does not allege any false or misleading statement by any Manufacturer Defendant, much less facts connecting one to any specific prescriptions, doctors, patients, or alleged harm in Broward County.[8]

*Second*, "causation must be direct, rather than remote or speculative." *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015). For the reasons set forth in Sections V above and the *Summit* MTD at 11-17, the County's causation theory is too remote and speculative to establish causation.

*Third*, the County has not alleged actual damages under FDUTPA, for the same reasons it fails to allege a cognizable injury. Summit MTD at 9-10. Moreover, recoverable damages under FDUTPA are limited to the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have

---

[8] Moreover, as set forth in the *Summit* MTD at 35-36, allegations of off-label promotion are not actionable because "courts and the FDA have recognized the propriety and potential public value of unapproved or off-label drug use," and "the promotion of off-label drug use is ***not in and of itself false or misleading***." *United States v. Caronia*, 703 F.3d 149, 165 (2d Cir. 2012); *see also Indiana/Kentucky/Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*, 2014 WL 2115498, at *5, 9 (E.D. Pa. May 21, 2014); *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 552 (E.D. Pa. 2014), *aff'd* 620 F. App'x 82 (3d Cir. 2015).

been delivered." *Butland*, 951 So.2d at 869 (quoting *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. Dist. Ct. App. 1984)). The County fails to allege that any opioid prescription for which it allegedly paid was not what it bargained for, much less the "difference in the market value of" any opioid medication for which it paid and "its market value in the condition in which it should have been delivered." *See ADT LLC v. Vivint, Inc.*, 2017 WL 5640725, at *5 (S.D. Fla. Aug. 3, 2017). Nor can the County recover downstream damages, such as the alleged increased municipal services costs attributed to opioid abuse (2AC ¶ 836), as these kinds of incidental or "[c]onsequential damages . . . are not recoverable under FDUTPA." *Marketran, LLC v. Brooklyn Water Enters., Inc.*, 2017 WL 1292983, at *4 (S.D. Fla. Jan. 31, 2017). Because the County has not alleged (and cannot allege) actual damages, its FDUTPA claim should be dismissed.

## VIII.   THE COUNTY'S UNJUST ENRICHMENT CLAIM FAILS (COUNT 10)

The County's unjust enrichment claim is derivative of its other claims and thus falls with them. *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1197 (11th Cir. 2011). It also fails on its own terms for two reasons. First, a plaintiff pleading unjust enrichment must allege that ***the plaintiff*** directly conferred a benefit on the defendant. *Kopel v. Kopel*, 229 So.3d 812, 818 (Fla. 2017); *see Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.*, 667 So.2d 876, 879 (Fla. Dist. Ct. App. 1996). The County does not plausibly allege any such benefit here. Although it asserts that it conferred a benefit on the Manufacturing Defendants "on [the County's] own behalf and on behalf of its inhabitants," 2AC ¶ 966, this conclusory allegation is insufficient as a matter of law under *Twombly*, 550 U.S. 544 (2007). Second, the County also fails to plead, as it must, facts showing that the Manufacturer Defendants "knowingly and voluntarily accepted" any direct benefit from the County. *Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So.3d 1207, 1212 (Fla. Dist. Ct. App. 2017). Moreover, Florida law expressly rejects the theory that a municipality can recover for municipal expenses through an unjust enrichment claim because such

expenditures are not "conferred directly on the [defendant]—the services were provided to the residents of [the municipality]." *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1288 (11th Cir. 2015), *vacated and remanded on other grounds*, 137 S. Ct. 1296 (2017). The County's unjust enrichment claim should be dismissed.

## IX. THE COUNTY'S CIVIL CONSPIRACY CLAIM FAILS (COUNT 12)

The County fails to adequately allege any of the essential elements of civil conspiracy. In Florida, "[a] civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997).

First, the County fails to allege a conspiratorial agreement between the Manufacturer Defendants. Instead, the County offers only bare-bones allegations that the Manufacturer Defendants "agreed among themselves" to establish a fraudulent "marketing network" and, together with the Distributor Defendants, to "increas[e] the supply of opioids." 2AC ¶¶ 677-79, 690. These allegations are insufficient to plead a conspiratorial agreement. *See Summit* MTD at 52; *see also Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319-20 (S.D. Fla. 2014). The County's allegations regarding sponsorships of third-party organizations and publications—as well as the Manufacturer and Distributor Defendants' participation in two industry-wide trade associations—are similarly deficient. *See Summit* MTD at 52-53. *Compare Summit* 2AC ¶¶ 352-451, 532-34, 754-58; 763, *with* 2AC ¶¶ 320-419, 501-03, 685-89; 693.

*Second*, the County's conspiracy claim sounds in fraud, *see* 2AC ¶ 993, but the County has not alleged any details of the purported conspiracy, including the "who, what, when, where and how of Defendants' alleged agreement." *Alhassid*, 60 F. Supp. 3d at 1320; *see also Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 752 (6th Cir. 2012). This, too, defeats the civil conspiracy claim.

## X.  THE COUNTY'S CLAIM FOR PUNITIVE DAMAGES FAILS (COUNT 13)

Count Thirteen of the 2AC, which consists of a single paragraph containing nothing but conclusory allegations regarding *all* Defendants collectively (2AC ¶ 1000), purports to state a cause of action for punitive damages. But "a demand for punitive damages is 'not a separate and distinct cause of action; rather, it is auxiliary to, and dependent upon, the existence of an underlying claim.'" *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So.3d 1219, 1221 (Fla. 2016). The County's stand-alone punitive damages claim should be dismissed for this reason alone.

In addition, at a minimum, a complaint "must plead specific acts committed by a defendant" to justify punitive damages. *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1341 (11th Cir. 2001); *see also Moss v. Liberty Mut. Fire Ins. Co.*, 2017 WL 4676629, at *6 (M.D. Fla. Aug. 18, 2017). The County's conclusory allegations of "fraudulent, malicious, willful, deliberately violent or oppressive" conduct (2AC ¶ 1000) are insufficient and should be dismissed.

## XI.  ALL CLAIMS SHOULD BE DISMISSED, IN PART, AS TIME-BARRED

### A.  The Applicable Statutes of Limitations Bar Plaintiff's Claims

The County's claims rely largely on alleged acts or omissions that occurred as far back as the mid-1990s. *See, e.g.*, 2AC ¶¶ 159, 226, 271. But each claim is subject to a statute of limitations, and the ***longest*** applicable limitations period is five years.[9] The County's claims accrued "when the last element constituting the cause of action occur[red]," except for Plaintiff's fraud claim, which accrued at "the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(1), (2)(a). Accordingly, the Court should dismiss the County's claims to the extent the County relies on

---

[9] Fla. Stat. § 772.17 (Florida RICO). The remaining claims are subject to a four-year period. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987) (federal RICO); Fla. Stat. § 95.11(3) (FDUTPA, nuisance, negligence, gross negligence, unjust enrichment, and fraud).

alleged conduct committed before March 12, 2013—five years before Plaintiff brought suit—by Defendants named in the original complaint, and before April 25 and May 31, 2013, by Defendants first named in the amended and second amended complaints, respectively. *See Summit* MTD at 54.

For example, all claims premised on allegations that the Manufacturer Defendants' alleged misconduct began roughly 20 years ago, *see* 2AC ¶¶ 7, 10, 144, 156-70, 239, 283, 295, 718-19, 756, including publications, advertisements, and third-party materials that were allegedly created and published before March 2013, *e.g.*, *id.* ¶¶ 179, 181, 190, 198, 205, 207, 215, 217, 226, 229, 232, 239, 241-42, 254, 266, 344, 372, 404, are barred by the statutes of limitations. Plaintiff simply cannot recover for any alleged injuries caused by such conduct, nor can Plaintiff rely on more recent conduct as a "bootstrap to recover for injuries" allegedly caused by that time-barred conduct. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 181 (1997). The statutes of limitations preclude the vast majority, if not all, of Plaintiff's allegations with respect to each Manufacturer Defendant.

### B.     No Exception to the Limitations Periods Applies

The 2AC cites three exceptions to the limitations period: fraudulent concealment, equitable estoppel, and continuing violation. *See* 2AC ¶¶ 697-707. None applies here.

#### 1.     Fraudulent Concealment and Equitable Estoppel Do Not Apply

Both the fraudulent concealment and equitable estoppel doctrines require affirmative conduct—apart from the underlying fraud—that constitutes "willful concealment of the cause of action" (in the case of fraudulent concealment), or that induces the plaintiff to believe that limitations would not be enforced (in the case of equitable estoppel). *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (fraudulent concealment); *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 2017 WL 5202998, at *11 (M.D. Fla. Apr. 19, 2017) (equitable estoppel). The County fails to plead facts sufficient to support application of either exception. To the contrary, the 2AC confirms that the County knew, or reasonably should have known, of the alleged fraud long before

March 9, 2013. Indeed, many of the matters the County relies upon in the 2AC were publicly available long before 2013. For example:

- FDA's public regulatory actions related to opioids that the County now claims show actionable misconduct on the part of the Manufacturer Defendants began as early as 2001. *See* 2AC ¶¶ 137, 167-70, 239, 283, 295, 718-19;

- Articles related to opioids and opioid addiction were published as early as 2001. *See, e.g.*, *id.* ¶¶ 239, 252, 254; and

- The Manufacturer Defendants' efforts to market opioids, which were public by their very nature. *See, e.g.*, *id.* ¶¶ 138, 152-56.

The County also necessarily knew of the alleged costs it spent in connection with opioids more than five years ago. Nor has the County alleged (and, indeed, it cannot allege) that any Manufacturer Defendant took affirmative steps to prevent the County from bringing its claims or to induce it into believing that limitations would not be enforced, particularly given that the allegedly fraudulent statements were publicly available. As a result, neither exception applies.

### 2. The Continuing Violation Doctrine Does Not Apply

"A continuing tort is 'established by continual tortious *acts*, not by continual harmful effects from an original, completed act.'" *Suarez v. City of Tampa*, 987 So.2d 681, 686 (Fla. Dist. Ct. App. 2008). Further, "[i]f an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." *See, e.g.*, *Weinberg v. Alley*, 2011 WL 1878129, at *2 (N.D. Fla. Mar. 17, 2011), *report and recommendation approved sub nom. Weinberg v. Wakulla Cty. Bd. of Comm'rs*, 2011 WL 1877832 (N.D. Fla. May 17, 2011).

The County alleges discrete acts that were themselves potentially actionable: that is, different Defendants engaging in different conduct at different periods of time causing various alleged harms. *See, e.g.*, 2AC ¶¶ 162, 163, 173, 176, 182, 190, 194, 198, 202-07, 209, 211, 213,

217, 221, 226-27, 229-31, 237-48, 255-61, 263-71, 280, 313-15, 319, 428.[10] Pursuant to Plaintiff's own allegations, different representations would have been made at distinct times to separate prescribers who then wrote different prescriptions that led to discrete alleged harms to different patients. The facts pleaded by the County demonstrate there is no "continuing tort." Moreover, the alleged events or series of events for which the County has sued should have alerted it to its claims well before February 2013. *Weinberg*, 2011 WL 1878129, at *2; *see also* 2AC ¶¶ 726, 734, 805. The continuing violation doctrine simply does not apply.

## CONCLUSION

For the foregoing reasons, the 2AC should be dismissed with prejudice.

Dated: June 8, 2018                           Respectfully submitted,

By: /s/ *Mark S. Cheffo*
Mark S. Cheffo
Sheila L. Birnbaum
Hayden A. Coleman
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com
Sheila.Birnbaum@dechert.com
Hayden.Coleman@dechert.com

*Attorneys for Defendants Purdue Pharma L.P.,*
*Purdue Pharma Inc., and The Purdue Frederick*
*Company*

---

[10] Furthermore, the 2AC alleges that the Manufacturer Defendants used different channels to make their representations to prescribers. *See, e.g.*, 2AC ¶ 319.

By: /s/ *Charles C. Lifland* (consent)
Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
clifland@omm.com
sstrong@omm.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

By: /s/ *Steven A. Reed* (consent)
Steven A. Reed
Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5603
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000
brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

By: /s/ *Jonathan L. Stern* (consent)
Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 942-5000

jonathan.stern@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Tel: (213) 243-4000
sean.morris@arnoldporter.com

*Attorneys for Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*

*Attorneys for Defendants Par Pharmaceutical, Inc. and Par Pharmaceuticals Companies, Inc. (not yet served or appearing)*

By: */s/ Brien T. O'Connor* (consent)
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
Tel: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Attorneys for Defendant Mallinckrodt LLC*

*Attorneys for SpecGX LLC (not yet served or appearing)*

By: */s/ Donna M. Welch* (consent)
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

*Attorney for Defendant Allergan Finance, LLC f/k/a/ Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*

By: */s/ Eric H. Zagrans* (consent)
Eric H. Zagrans (0013108)
ZAGRANS LAW FIRM LLC

20

6100 Oak Tree Boulevard, Suite 200
Cleveland, Ohio 44131
Tel: (216) 771-1000
eric@zagrans.com

J. Matthew Donohue
Joseph L. Franco
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Tel: (503) 243-2300
matt.donohue@hklaw.com
joe.franco@hklaw.com

Nicholas A. Sarokhanian
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
Tel: 214.964.9500
nicholas.sarokhanian@hklaw.com

*Attorneys for Insys Therapeutics, Inc.*

/s/ *Daniel G. Jarcho* (consent)
Daniel G. Jarcho
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Tel: (202) 239-3254
daniel.jarcho@alston.com

Cari K. Dawson
Jenny A. Mendelsohn
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
cari.dawson@alston.com
jenny.mendelsohn@alston.com

*Attorneys for Noramco, Inc.*

21

## LOCAL RULE 7.1(F) CERTIFICATION

I certify that this case has been assigned to the "litigation track" pursuant to CMO One and that this Memorandum adheres to the page limitations set forth in CMO One § 6(f), CMO Four at 2-3, and L.R. 7.1(f).

Dated: June 8, 2018

By: /s/ *Mark S. Cheffo*
Mark S. Cheffo
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2018, a copy of the foregoing **Memorandum of Law in Support of the Manufacturer Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mark S. Cheffo*