**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPI-ATE LITIGATION<br><br>This document relates to:<br>*Cabell County Commission v. AmerisourceBergen Drug Corporation, et al.*,<br>No. 1:17-op-45053-DAP (S.D. W. Va.) | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

<u>**MEMORANDUM OF LAW IN SUPPORT OF THE MANUFACTURER DEFENDANTS'
JOINT MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................................... 1

I. The County Lacks Standing to Bring Its Claims ................................................... 1

II. The RICO Claims Fail (Counts 1 and 2) .............................................................. 3

III. The County's State Law Claims Are Preempted .................................................. 5

IV. The Common Law Public Nuisance Claim Fails (Count 3) ................................. 5

    A. The Claim Is Barred by the Economic Loss Rule........................................ 5

    B. The County Does Not Plead Actual or Proximate Causation ..................... 5

    C. The County Fails to Plead Unreasonable Interference with a Public Right........................................................................................................... 6

    D. The County Cannot Bring Its Nuisance Claim for Damages and May Not Circumvent the Absence of a Private Cause of Action Under Federal or State Statutes................................................................. 7

V. The Negligence Claim Fails (Count 4) ................................................................. 9

VI. The Fraud Claim Fails (Count 5) ....................................................................... 10

VII. The Unjust Enrichment Claim Fails (Count 6).................................................. 11

VIII. The Civil Conspiracy Claim Fails (Count 7) .................................................... 11

    A. The Conspiracy Claim Fails with the Underlying Tort Claims .............. 11

    B. The County Fails to Plead the Elements of a Conspiracy........................ 11

IX. The Punitive Damages Claim Fails (Count 8) ................................................... 12

X. All Claims Should Be Dismissed, In Part, As Time-Barred.............................. 12

    A. The Applicable Statutes of Limitations Bar the County's Claims.......... 12

    B. No Exception to the Limitations Periods Applies.................................... 13

        1. The Equitable Doctrines Do Not Apply....................................... 13

        2. The Continuing Violation Doctrine Does Not Apply .................. 14

CONCLUSION................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs.*,
  483 U.S. 143 (1987) .......................................................................................... 13

*Aikens v. Debow*,
  541 S.E.2d 576 (W. Va. 2000) ........................................................................... 5

*Ash v. Allstate Ins. Co.*,
  2013 WL 5676774 (W. Va. Oct. 18, 2013) ...................................................... 11

*Ashworth v. Albers Med., Inc.*,
  410 F. Supp. 2d 471 (S.D. W. Va. 2005) ........................................................... 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 1

*Belville v. Ford Motor Co.*,
  13 F. Supp. 3d 528 (S.D. W. Va. 2014) ........................................................... 10

*Bennett v. Skyline Corp.*,
  2014 WL 4996275 (N.D. W. Va. Oct. 7, 2014) ................................................ 11

*Bertovich v. Advanced Brands & Imp., Co.*,
  2006 WL 2382273 (N.D. W. Va. Aug. 17, 2006) ............................................... 3

*Boster v. Live Well Fin., Inc.*,
  2018 WL 1582725 (S.D. W. Va. Mar. 30, 2018) .............................................. 13

*Bradley v. Williams*,
  465 S.E.2d 180 (W. Va. 1995) .................................................................... 13, 14

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
  273 F.3d 536 (3d Cir. 2001) ............................................................................... 6

*Carter v. Monsanto Co.*,
  575 S.E.2d 342 (W. Va. 2002) ........................................................................... 6

*Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*,
  515 F. App'x 451 (6th Cir. 2013) ....................................................................... 8

*City of Huntington v. State Water Comm'n*,
  73 S.E.2d 833 (W. Va. 1953) ......................................................................... 1, 2

*Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc.*,
  640 S.E.2d 102 (W. Va. 2006) ......................................................................... 14

*Davidson v. Shoney's Big Boy Restaurant*,
  380 S.E.2d 232 (W. Va. 1989) ........................................................................... 8

*Delardas v. Morgantown Water Comm'n*,
  137 S.E.2d 426 (W. Va. 1964) ........................................................................... 2

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Duff v. Morgantown Energy Assocs.*,
421 S.E.2d 253 (W. Va. 1992) ........................................................................ 6, 7

*Dunn v. Rockwell*,
689 S.E.2d 255 (W. Va. 2009) ................................................................ 11, 12, 13

*EQT Prod. Co. v. Wender*,
191 F. Supp. 3d 583 (S.D. W. Va. 2016) ............................................................ 2, 8

*Gillingham v. Stephenson*,
551 S.E.2d 663 (W. Va. 2001) ........................................................................... 10

*Heavener v. Quicken Loans, Inc.*,
2012 WL 13028627 (N.D. W. Va. Nov. 7, 2012) ................................................. 11

*Hill v. Stowers*,
680 S.E.2d 66 (W. Va. 2009) ............................................................................. 11

*In re Cardizem CD Antitrust Litig.*,
332 F.3d 896 (6th Cir. 2003) .............................................................................. 3

*Kucera v. City of Wheeling*,
170 S.E.2d 217 (W. Va. 1969) ............................................................................. 1

*Legg v. Johnson, Simmerman & Broughton, L.C.*,
576 S.E.2d 532 (W. Va. 2002) ........................................................................... 10

*Lengyel v. Lint*,
280 S.E.2d 66 (W. Va. 1981) ............................................................................. 10

*McCoy v. Miller*,
578 S.E.2d 355 (W. Va. 2003) ........................................................................... 13

*McNair v. Johnson & Johnson*,
2018 WL 2186550 (W. Va. May 11, 2018) ........................................................... 9

*Menowitz v. Brown*,
991 F.2d 36 (2d Cir. 1993) ................................................................................. 3

*Merrill v. W. Va. Dep't of Health & Human Res.*,
632 S.E.2d 307 (W. Va. 2006) ........................................................................... 14

*Miller v. Whitworth*,
455 S.E.2d 821 (W. Va. 1995) ............................................................................. 9

*Pope v. Edward M. Rude Carrier Corp.*,
75 S.E.2d 584 (W. Va. 1953) .............................................................................. 7

*Prudential Ins. Co. of Am. v. Couch*,
376 S.E.2d 104 (W. Va. 1988) ........................................................................... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Rhodes v. E.I. du Pont de Nemours and Co.*,
636 F.3d 88 (4th Cir. 2011) ................................................................. 6

*Robertson v. LeMaster*,
301 S.E.2d 563 (W. Va. 1983)............................................................. 9

*Sharon Steel Corp. v. City of Fairmont*,
334 S.E.2d 616 (W. Va. 1985)............................................................. 6

*Smith v. Bank of Am. Corp.*,
485 F. App'x 749 (6th Cir. 2012) ........................................................ 1

*Smith v. Hickenlooper*,
164 F. Supp. 3d 1286 (D. Colo. 2016) ................................................ 8

*Stratton v. Arch Coal, Inc.*,
2017 WL 2312840 (S.D. W. Va. May 26, 2017).............................. 12

*Teter v. Old Colony Co.*,
441 S.E.2d 728 (W. Va. 1994)............................................................. 4

*West v. Nat'l Mines Corp.*,
285 S.E.2d 670 (W. Va. 1981)............................................................. 5

*Yourtee v. Hubbard*,
474 S.E.2d 613 (W. Va. 1996)................................................... 3, 6, 10

**Statutes**

18 U.S.C. § 1961(1) ................................................................................ 4

W. Va. Code § 14-2-3 ............................................................................. 1

W. Va. Code § 16-5H .............................................................................. 3

W. Va. Code § 29-12A-3(c) .................................................................... 1

W. Va. Code § 55-2-12 .......................................................................... 13

W. Va. Code § 55-7-29 .......................................................................... 12

W. Va. Code § 55-7-30(a) ....................................................................... 3

W. Va. Code § 60A-4-401 ....................................................................... 4

W. Va. Code § 60A-8-13 ......................................................................... 4

W. Va. Code § 60A-8-14 ......................................................................... 8

W. Va. Code § 7-1-3kk ......................................................................... 7, 8

**Other Authorities**

39 Am. Jur., Nuisances § 8 ..................................................................... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Restatement (Second) of Torts § 821b(2) (1979) ........................................................... 6

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................ 4

W. Va. C.S.R. § 11-5-5.12 .............................................................................................. 3

W. Va. C.S.R. § 11-6.3.3 ................................................................................................ 3

W. Va. C.S.R. § 15-2-4 ................................................................................................... 4

# ARGUMENT[1]

The claims in the County's Second Amended Complaint (the "2AC") are deficient for many of the same reasons stated in the Manufacturer Defendants' Joint Motion to Dismiss in *Summit County*, and for the reasons explained below. All of the County's claims sound in fraud.[2] Therefore each claim must be both plausible, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and pleaded with particularity, *see Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 752 (6th Cir. 2012). The 2AC fails to meet these standards and should be dismissed.[3]

## I.  THE COUNTY LACKS STANDING TO BRING ITS CLAIMS

The County may not regulate matters of statewide concern. As "a local and subordinate government, created by the sovereign authority of the State," the County is empowered only to "regulate and administer the local and internal affairs of the [local government], in contradistinction to those matters which are common to and concern the people at large of the State." *City of Huntington v. State Water Comm'n*, 73 S.E.2d 833, 841 (W. Va. 1953) (citations omitted).[4]

---

[1] Pursuant to Case Management Order One (Dkt. 232; "CMO One") § 2.g, Manufacturer Defendants raise only certain key "issues common to all manufacturers" that warrant dismissal of the County's claims. Manufacturer Defendants do not raise, and expressly reserve the right to later raise, additional grounds for dismissal of all claims, including Defendant-specific challenges.

[2] *See e.g.*, 2AC ¶¶ 142, 145-47, 315, 412, 564, 712, 734, 787, 828, 865, 870, 900, 936-37, 944-46, 977-78, 1002, 1010, 1025-26.

[3] Under CMO One § 2.g., the Manufacturer Defendants incorporate herein the "Legal Standard" section (and other portions noted below) of their Joint Motion to Dismiss in *County of Summit, Ohio v. Purdue Pharma L.P.*, No. 18-op-45090 (Dkt. 20-1; "*Summit* MTD"). They also incorporate its definition of "Manufacturer Defendants" at 1 n.2. Defendant Noramco, Inc. joins this Motion for the same reasons and on the same terms it joined the *Summit* MTD.  It does not (and did not at all material times relevant hereto) manufacture, package, brand, market, distribute, or sell the finished drug products at issue in this litigation, and it reserves all rights and defenses specific to it. Conversely, although the arguments raised herein apply equally to Teva Pharmaceutical Industries Ltd., Allergan plc, and Mallinckrodt plc, these parties do <u>not</u> join this Motion for the same reasons stated in the *Summit* MTD at 1 n.2.  Similarly, the arguments also apply to recently named SpecGX LLC, Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc., but those entities have not yet been served in this action (but intend to join the motion at the appropriate time).

[4] The County incorrectly cites W. Va. Code § 29-12A-3(c), § 14-2-3, and *Kucera v. City of Wheeling*, 170 S.E.2d 217 (W. Va. 1969), for the proposition that it is "neither an agency nor an agent

The County acknowledges that the opioid crisis is a matter of general concern affecting the public health of West Virginia citizens beyond Cabell County. 2AC ¶¶ 629-61. "[I]n matters which do not concern the inhabitants of the municipality *alone*, the municipalities are acting as agencies for the government." *Id.* at 842 (emphasis added; citations omitted). Because "[p]ublic health [is] a matter of statewide rather than local or municipal interest or concern . . . in the regulation of public health the power of the state is supreme." *Delardas v. Morgantown Water Comm'n*, 137 S.E.2d 426, 433 (W. Va. 1964).[5] West Virginia's statewide concern doctrine thus precludes local ordinances that improperly seek to regulate statewide matters, and its logic applies equally to local litigation like this case.

Just as the County could not regulate issues of statewide concern by local ordinance, it cannot attempt the same thing by lawsuit. Both actions equally usurp statewide authority vested in the State. Indeed, the State Attorney General has brought two separate civil lawsuits seeking to address this very issue.[6] Notably, the County cites no authority permitting it to file a lawsuit seeking to address a public health crisis that impacts the State as a whole—particularly where the State is already exercising its constitutional authority to address the very same issue. The County's lack of standing requires dismissal.

---

of the State of West Virginia." *See* 2AC ¶ 29.  None of these authorities applies here. The first relates only to the Governmental Tort Claims and Insurance Reform Act. The second is a statute addressing "Claims *Against* the State." And *Kucera* holds only that a political subdivision is not an agency of the state under an inapplicable wage and hour statute.

[5] *See also EQT Prod. Co. v. Wender*, 191 F. Supp. 3d 583, 595 (S.D. W. Va. 2016), *aff'd*, 870 F.3d 322 (4th Cir. 2017) (noting that County Commissions' powers are "far from plenary").

[6] *See State of West Virginia v. Amerisourcebergen, et al.*, Case No. 12-C-141 (Ex. A at ¶ 1); *State of West Virginia v. McKesson Co.*, Case No. 16-C-1 (Ex. B at ¶¶ 11, 16, 20).

## II.   **THE RICO CLAIMS FAIL (COUNTS 1 AND 2)**

Plaintiff's marketing enterprise and supply chain enterprise RICO allegations echo *Summit*'s nearly verbatim.[7] Both counts thus fail for each and every reason identified in the *Summit* MTD, including (among other infirmities) the failure to plead: (1) any cognizable injury; (2) that the Manufacturer Defendants' purported misconduct actually and proximately caused the County's purported injuries; (3) the existence of an "Opioid Marketing Enterprise"; or (4) actionable racketeering activity, including any fraudulent statement or omission made by a Manufacturer Defendant to the County or any prescriber in the County and the specific details of that interaction as mandated by Rule 9(b). *See Summit* MTD at 9-34.[8]

West Virginia law does not rescue any claims that failed under federal and Ohio law in *Summit*. The same controlling principles that preclude claims under Ohio law also preclude them under West Virginia law: For example, in West Virginia, as in Ohio:

- The learned intermediary rule applies, *see* W. Va. Code § 55-7-30(a), and requires physicians to understand the risks, benefits, and labels of opioid drugs. *See Summit* MTD § II.B.4.a; *see also* W. Va. Code § 16-5H; W. Va. C.S.R. §§ 11-5-5.12, 11-6.3.3 (requiring physicians who prescribe opioids to be trained in drug diversion and to communicate all risks to the patients). The prescribing physician therefore breaks any causal link between the pharmaceutical manufacturer and patient. *See Summit* MTD at 14-15 & n.16.

- Intervening third-party criminal acts such as, in this case, street-level drug dealing and heroin usage, likewise negate proximate causation. *See Summit* MTD § II.B.2; *Yourtee v. Hubbard*, 474 S.E.2d 613, 620 (W. Va. 1996); *Bertovich v. Advanced Brands & Imp., Co.*, 2006 WL 2382273, at *8-10 (N.D. W. Va. Aug. 17, 2006).

- Unlawful marketing claims fail to the extent they rely on alleged misrepresentations or omissions made by third parties, where the County has not adequately pleaded that such third parties acted as the Manufacturer Defendants' agents.

---

[7] *Compare* 2AC ¶¶ 763-826 (facts), ¶¶ 827-54 (Count 1), and ¶¶ 855-86 (Count 2) *with Summit* 2AC ¶¶ 814-77 (facts), ¶¶ 878-905 (Count 1), and ¶¶ 906-37 (Count 2).

[8] The Sixth Circuit law cited in the *Summit* MTD also applies to the County's federal claim in this transferred action. *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (per curiam); *see also In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 911 n.17 (6th Cir. 2003).

> *See Summit* MTD § II.B.4.c; *see also Teter v. Old Colony Co.*, 441 S.E.2d 728, 737 (W. Va. 1994).

Moreover, to the extent the County seeks to establish racketeering activity based on purported violations of West Virginia law, it pleads only: (a) misdemeanors (W. Va. Code § 60A-8-13; W. Va. C.S.R. § 15-2-4), which are not predicate acts under RICO, *see Summit* MTD at 31 (citing 18 U.S.C. § 1961(1)); or (b) statutes that do not apply to the Manufacturer Defendants in the first place, such as W. Va. Code § 60A-4-401, which by its terms does not apply to anyone "authorized by this act" to manufacture controlled substances. *See* 2AC ¶¶ 468-77, 902, 950-52.

Indeed, the 2AC is even weaker than *Summit* in some respects. For example, the County does not allege that it interviewed even a single Cabell County prescriber before filing suit. Allegations untethered to any patient, prescription, or physician in Cabell County cannot even begin to satisfy Rule 9(b). Conclusory references to general marketing activities, *see* 2AC ¶¶ 145-315, do not suffice.[9] *See Summit* MTD at 24. Worse yet, the County repeatedly lumps the Manufacturer Defendants together as if they were a single entity, even though the County knows they are twenty-four distinct companies spanning seven distinct corporate families. *See, e.g.*, 2AC ¶ 80.[10] Indeed, much of the 2AC improperly combines Manufacturer **and Distributor** Defendants as if they were one.[11] This impermissible "group pleading" also warrants dismissal of the RICO counts. *See Summit* MTD at 25.

---

[9] For instance, the County cites certain materials produced in the *City of Chicago* litigation, *see* 2AC ¶¶ 162, 173, 177, 179-81, 184-87, 190-93, 232-33, 305, but fails to explain how any statement in those materials reached a single prescriber in Cabell County.

[10] *See* 2AC ¶¶ 10-12, 15, 37, 80, 108-09, 113, 118, 131, 138, 142-49, 154, 199-200, 207-08, 219, 222-24, 234-35, 248, 252-53, 261, 275, 314-20, 322, 326, 329-30, 333, 340, 342, 348, 357-58, 360-69, 372, 374-75, 380, 383, 390, 395-96, 398-99, 406-16, 418-21, 428, 431, 433, 436, 453, 456, 458-59 463-64, 466, 480-81, 483, 494-96, 501, 506, 508, 513, 519-21, 540, 543, 560, 629, 644-46, 649-50 723-24, 726, 731, 734-35, 764-65, 778-80, 784-88, 808, 812, 833, 835, 906-08, 911, 913, 937, 944-45, 961, 977-81, 983-85, 987, 1002, 1012.

[11] *See* 2AC ¶¶ 13-14, 16-17, 19-21, 23, 25-26, 33-36, 95-96, 139-41, 151, 156, 200, 209, 219, 274, 318, 322, 327, 329, 331, 336-37, 344, 378, 398, 456, 463-65, 468-72, 479, 484-85, 487, 489-90,

## III.  THE COUNTY'S STATE LAW CLAIMS ARE PREEMPTED

The County's state law claims are preempted by federal law. *See Summit* MTD § IV.[12]

## IV.  THE COMMON LAW PUBLIC NUISANCE CLAIM FAILS (COUNT 3)

### A.  The Claim Is Barred by the Economic Loss Rule

In West Virginia, a plaintiff alleging only economic loss from negligence may not recover damages in tort. *Aikens v. Debow*, 541 S.E.2d 576 (W. Va. 2000).[13] To recover for purely economic loss, a plaintiff must allege "*physical harm* to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship." *Id.* at 499 (emphasis added). The County seeks to recover only economic loss, including costs of addiction treatment and social, healthcare, and law enforcement services, but alleges none of the requirements to recover for a purely economic loss. *See, e.g.*, 2AC ¶¶ 20, 899, 916, 921-22.[14] The economic loss rule therefore bars its claim. *See also Summit* MTD at 41.

### B.  The County Does Not Plead Actual or Proximate Causation

As in Ohio, actual and proximate cause are essential elements of a common law public nuisance claim under West Virginia law. *See Carter v. Monsanto Co.*, 575 S.E.2d 342, 347 (W.

---

492-93, 496-97, 500-01, 503, 507, 509-18, 522-30, 532, 535-36, 538-39, 541, 544-45, 550-51, 564, 568, 586, 647-49, 651, 656, 681, 683, 712-22, 725, 727-29, 731-34, 746, 749, 762, 798-99, 801-803, 806, 812, 819-20, 823, 845, 852, 870, 873, 875-77, 888, 890, 893-98, 900, 902-05, 909-21, 923, 927-28, 929, 931-35, 936, 938-41, 943-48, 955-57, 959, 962-68, 970, 972-73, 979, 981, 983-84, 986, 988-89, 991-93, 995, 997, 999-1005, 1007, 1009-11, 1013-20, 1025-26.

[12] The RICO Marketing Enterprise claim is also preempted. *See Summit* MTD at 34 n. 33.

[13] *Aikens* excepted "nuisance law" from its opinion, but the case it cites for this exception was an injunctive action based on *physical* property damage. *See id.* at 591 (citing *West v. Nat'l Mines Corp.*, 285 S.E.2d 670 (W. Va. 1981)).

[14] The only *physical* property damage alleged by the County are "[u]sed needles" that "are scattered across the Community's parks, sidewalks and streets resulting in environmental contamination." 2AC ¶ 691. While this alleged physical property damage is not barred by the economic loss doctrine, it *is* barred for lack of proximate cause since none of Manufacturer Defendants' medications are administered by needles. Whatever the needles' source, they are plainly the result of criminal activity, which severs any purported causation. *Supra* § II.B.2.

Va. 2002). The County fails to plead actual causation for either its marketing claims or its diversion control theories. *Supra* § II; *see Summit* MTD at 11-12, 28-29. The County also fails to plead proximate causation because the connection between the Manufacturer Defendants' alleged misconduct and the alleged opioid crisis is too attenuated and remote as a matter of law. *Supra* § II; *see Summit* MTD at 41-42; *Yourtee*, 474 S.E.2d at 620 (holding that under West Virginia law third-party criminal acts break the chain of proximate causation for tort liability).

### C. The County Fails to Plead Unreasonable Interference with a Public Right

West Virginia courts have adopted the Restatement (Second) of Torts section 821b(2) (1979), which defines a public nuisance as "an unreasonable interference with a right common to the general public." *Duff v. Morgantown Energy Assocs. (M.E.A.)*, 421 S.E.2d 253, 257 n.6 (W. Va. 1992); *see also* 2AC ¶ 889. Like many jurisdictions, West Virginia has not extended public nuisance law to use or misuse of products lawfully sold and highly regulated for individual human consumption. *See Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616, 620-22 (W. Va. 1985).[15] The County alleges neither an unreasonable interference nor a public right.

***No public right.*** Whether a right is public "depends on the nature of the interest affected by the defendant's conduct," and "is not simply a matter of tallying the number of people affected by a defendant's allegedly tortious conduct." *Rhodes v. E.I. du Pont de Nemours and Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011) (citing *Duff*, 421 S.E.2d at 257 n.7). The right must be "collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured." Rest. 2d Torts § 821b(2) cmt. g (emphasis added).

---

[15] *See e.g.*, *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 539-42 (3d Cir. 2001) (noting extension of public nuisance law to cover highly-regulated and lawful products would eliminate the "boundary between the well-developed body of product liability law and public nuisance law").

The "nuisance" alleged here derives solely from alleged personal injuries to individuals who misused, abused, or became addicted to prescription opioids.[16] *See, e.g.*, 2AC ¶¶ 19-20, 140, 666-67, 691, 899, 913. The right with which the Manufacturer Defendants allegedly interfered is thus strictly an individual one, not a collective right "common to the general public." *Duff*, 421 S.E.2d at 257 n.6; *see also Summit* MTD § VI.C.

*No unreasonable interference.* Nor does the County plead "unreasonable interference" with any public right. West Virginia recognizes a safe harbor from nuisance liability for lawful conduct. "Public nuisances always arise out of unlawful acts, and that which is lawful, or is authorized by a valid statute . . . cannot be a public nuisance." *Pope v. Edward M. Rude Carrier Corp.*, 75 S.E.2d 584, 589 (W. Va. 1953) (quoting 39 Am. Jur., Nuisances § 8) (internal quotation marks omitted). Both federal and state law expressly authorize the manufacture, promotion, sale, and use of the Manufacturer Defendants' opioid medications. *Summit* MTD at 21, 44. The County has not pleaded facts establishing that any prescription opioid medication sold in Cabell County failed to comply with those laws. *See supra* § II. This forecloses any public nuisance claim under West Virginia law. *See also Summit* MTD at 44-45.

### D.     The County Cannot Bring Its Nuisance Claim for Damages and May Not Circumvent the Absence of a Private Cause of Action Under Federal or State Statutes

As discussed above, *supra* § I.B, county commissions have limited, prescribed powers. The County's **exclusive** source of authority to bring a nuisance claim is West Virginia Code section 7-

---

[16] The County's allegations of an "invasion of the interest . . . in the use and enjoyment of the public and private land," 2AC ¶ 893, or "environmental contamination and/or damage to . . . property," *id*. ¶ 894, do not save its claim. These conclusory allegations presumably refer to the increased rate of drug-related crimes, *id*. ¶ 683, or used-needle litter, *id*.¶ 691. Such conditions are the result of third-party criminal acts, breaking the causal chains. *See supra* at § II.

1-3kk.[17] *See* 2AC ¶¶ 31, 891. That section nowhere authorizes the County to seek restitution, disgorgement of profits, or compensatory or punitive damages for an alleged public nuisance; it allows a suit **only** to eliminate or abate such a nuisance. Ex. C (quoting W. Va. Code § 7-1-3kk); *Wender*, 191 F. Supp. 3d at 595; *supra* § I.B. The County therefore exceeds its statutorily limited powers by seeking "restitution, disgorgement of profits, compensatory and punitive damages" for its public nuisance claim. *See* 2AC ¶ 929; *see also* Cabell County Commission Resolution ("Resolution"), attached as Ex. C (declaring the "unlawful distribution of prescription pain pills, including hydrocodone and oxycodone, has created a public nuisance to the people of Cabell County").[18] Because Section 7-3-1-3kk does not authorize this sort of relief, that claim should be dismissed or stricken. *Id.*

Nor may the County bring a public nuisance action to enforce the federal or West Virginia Controlled Substance Acts. Neither act creates a private right of action. *See Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1290 (D. Colo. 2016) (finding "that the CSA does not create a private right of action"). And enforcement of the West Virginia act is committed entirely to the Board of Pharmacy. *See* W. Va. Code § 60A-8-14; *Davidson v. Shoney's Big Boy Restaurant*, 380 S.E.2d 232, 235 (W. Va. 1989). The County cannot use common law claims, like public nuisance, to circumvent the absence of a private cause of action in these statutes. *See, e.g.*, *Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 458-59 (6th Cir. 2013) (applying principle to dismiss common-law claims under state law).

---

[17] The powers expressly granted under section 7-1-3kk—*i.e.*, "to enact ordinances, issue orders and take other appropriate and necessary actions"—are expressly limited to "the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance." W. Va. Code § 7-1-3kk. No monetary penalty (much less punitive damages) is permitted.

[18] The County references but did not attach its Resolution to the 2AC. *Id.* ¶¶ 31, 891.

## V.    THE NEGLIGENCE CLAIM FAILS (COUNT 4)

The County's negligence claim fails for many of the reasons discussed above: (1) the claim is barred by the economic loss rule (*supra* § IV.A); (2) the County does not and cannot plead actual and proximate causation (*supra* § II); (3) the claim is preempted (*supra* § III); and (4) the County fails to plead with particularity any actionable conduct (*supra* § II).

The negligence claim should also be dismissed because the County has not alleged any breach of a duty owed to the County by the Manufacturer Defendants. "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." *McNair v. Johnson & Johnson*, 2018 WL 2186550, at *6 (W. Va. May 11, 2018); *Robertson v. LeMaster*, 301 S.E.2d 563, 566 (W. Va. 1983); *see also Summit* Distributors' MTD[19] § III.B. The County offers only generalized allegations that the Manufacturer Defendants "owed Plaintiff a duty to not expose Plaintiff to an unreasonable risk of harm," 2AC ¶¶ 931, 940, but fails to identify any specific duty applicable here. *See Ashworth v. Albers Med., Inc.*, 410 F. Supp. 2d 471, 482 (S.D. W. Va. 2005) (finding manufacturers had no common law duty to "police [their] distributors"). Further, West Virginia courts recognize that "[g]enerally, a person does not have a duty to protect others from the deliberate criminal conduct of third parties." *Miller v. Whitworth*, 455 S.E.2d 821, 825 (W. Va. 1995). The County has thus failed to plead a duty and the Court should dismiss the County's claim.

The County attempts to sidestep these failures by invoking "negligence per se," 2AC ¶ 959,[20] but this also fails. *First*, West Virginia law does not recognize the doctrine of negligence

---

[19] "*Summit* Distributors' MTD" refers to the Distributor Defendants' Motion to Dismiss (Dkt. 491-1) filed in *County of Summit, Ohio v. Purdue Pharma, L.P.*, N.D. Ohio Case No. 18-op-45090.
[20] *See also* 2AC ¶¶ 933, 950-52, 955, 962.

per se. *Gillingham v. Stephenson*, 551 S.E.2d 663, 670 (W. Va. 2001). Rather, "a violation of a statute is prima facie evidence of negligence, providing that ***such violation is the proximate cause*** of the injury." *Yourtee*, 474 S.E.2d at 617. *Second*, the County fails to allege a violation of any predicate statute or regulation. *See supra* §§ II, IV.C-D. *Third,* even if the County could allege statutory or regulatory violations, the County cannot plead any violation proximately caused its injuries. *See supra* § II. *Finally*, the CSA, DEA, or West Virginia statutes or administrative regulations the County cites, *see* 2AC ¶¶ 933, 950-57, 955, 962, are not intended to have any duty run to the County and are intended for exclusive agency enforcement. *See supra* § IV.D; *Summit* MTD § IX; *Summit* Distributors' MTD § II.B.2.

## VI.    THE FRAUD CLAIM FAILS (COUNT 5)

The fraud claim fails for the reasons discussed above, including: (1) the County does not and cannot plead actual and proximate causation (*supra* § II); (2) the claim is preempted (*supra* § III); and (3) the County fails to plead with particularity any actionable conduct (*supra* § II).

The fraud claim also fails for the reasons set forth in the *Summit* MTD, Section X. "[T]o establish fraud" in West Virginia, as in Ohio, "[i]t is necessary that ***a plaintiff*** relies upon the statement and that ***he*** is damaged because of ***his reliance***." *Legg v. Johnson, Simmerman & Broughton, L.C.*, 576 S.E.2d 532, 539 (W. Va. 2002) (emphasis added); *see also, e.g.*, *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 545 (S.D. W. Va. 2014). Alleged misrepresentations to, and reliance by, third parties are not enough. *See, e.g.*, *Lengyel v. Lint*, 280 S.E.2d 66, 69 (W. Va. 1981). Here, the County's fraud claim is based ***solely*** on alleged misrepresentations to third parties, not the County itself. *See* 2AC ¶¶ 147, 204, 223, 316, 365, 395, 406, 431, 453, 649, 978-79, 805 (alleged misrepresentations to prescribers, patients, payors, and regulators). As in *Summit*, such allegations are insufficient to state a claim for common law fraud. *See Summit* MTD at 48-49.

## VII.  THE UNJUST ENRICHMENT CLAIM FAILS (COUNT 6)

The County's unjust enrichment claim is derivative of its other claims and thus falls with them. *See Ash v. Allstate Ins. Co.*, 2013 WL 5676774, at *5 (W. Va. Oct. 18, 2013). The unjust enrichment claim also fails on its own terms. To plead unjust enrichment, the County must allege that *it* conferred a benefit on the Manufacturer Defendants: *i.e.*, that it entered into a direct economic transaction with the Manufacturer Defendants. *Prudential Ins. Co. of Am. v. Couch*, 376 S.E.2d 104, 108 (W. Va. 1988); *Hill v. Stowers*, 680 S.E.2d 66, 75 (W. Va. 2009). But the County here alleges only that its public expenditures—which took place long after any prescription of one of the Manufacturer Defendants' opioid medicines was written and then filled—somehow "helped sustain Defendants' businesses." 2AC ¶ 999. This is not a direct economic transaction and is insufficient to state an unjust enrichment claim. *See also Summit* MTD at 50-51.

## VIII.  THE CIVIL CONSPIRACY CLAIM FAILS (COUNT 7)

### A.  The Conspiracy Claim Fails with the Underlying Tort Claims

In West Virginia, "[a] civil conspiracy is not a . . . stand-alone cause of action." *Dunn v. Rockwell*, 689 S.E.2d 255, 269 (W. Va. 2009). The "cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." *Id.* at 268. As in *Summit*, the County has not adequately alleged any underlying claims, so the derivative conspiracy claim fails. *See Bennett v. Skyline Corp.*, 2014 WL 4996275, at *8 (N.D. W. Va. Oct. 7, 2014) (dismissing conspiracy claims where plaintiff failed to adequately plead fraud and misrepresentation claims); *Heavener v. Quicken Loans, Inc.*, 2012 WL 13028627, at *3 (N.D. W. Va. Nov. 7, 2012) (same).

### B.  The County Fails to Plead the Elements of a Conspiracy

The County also fails to allege even the basic elements of a conspiracy. A "conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to

accomplish some purpose, not in itself unlawful, by unlawful means." *Dunn*, 689 S.E.2d at 268. "Mere similarity of conduct by various persons and the fact that they have associated with each other . . . is not necessarily sufficient to prove a conspiracy." *Stratton v. Arch Coal, Inc.*, 2017 WL 2312840, at *4 (S.D. W. Va. May 26, 2017) (internal citation and quotation omitted). The County fails to plead the factual elements required to state a civil conspiracy claim in West Virginia for the reasons stated in *Summit*. *See Summit* MTD at 51-52. For example, the County fails to allege an agreement between ***any*** of the more than 30 named Defendants—many of whom are direct competitors. The County asserts that Defendants "agreed among themselves" to set up an alleged "marketing network" and to "increas[e] the supply of opioids," 2AC ¶¶ 699, 712, 1014, 1016, but provides no facts from which to infer any such agreement. No conspiracy has been or can be pled.

## IX.  THE PUNITIVE DAMAGES CLAIM FAILS (COUNT 8)

In West Virginia, punitive damages are not cognizable as an independent cause of action. *See* 2AC ¶¶ 1023-26. Section 55-7-29 provides for limits on an "***award*** of punitive damages," (emphasis added). It does not create a freestanding cause of action, but merely constrains the County's ability to recover punitive damages on its ***other*** claims (*see* 2AC ¶¶ 929 (public nuisance); 973 (negligence); 993 (fraud); 1022 (conspiracy)). Count 8 should therefore be dismissed.

## X.  ALL CLAIMS SHOULD BE DISMISSED, IN PART, AS TIME-BARRED

### A.  The Applicable Statutes of Limitations Bar the County's Claims

The County's claims rely largely on alleged acts or omissions that occurred as far back as the mid-1990s. *See, e.g.*, 2AC ¶¶ 122, 158, 225. But each claim is subject to a statute of limitations,[21] the ***longest*** of which is four years. *See Agency Holding Corp. v. Malley-Duff & Assocs.*,

---

[21] West Virginia uses a five-step analysis to determine whether a cause of action is time-barred. *See, e.g.*, *Dunn*, 589 S.E.2d at 265. Manufacturer Defendants focus here on the inapplicability of doctrines that would expand the temporal scope of actionable conduct.

483 U.S. 143, 156 (1987) (four-year period for RICO claim).[22]

For each of these claims, "the statute of limitations beg[an] to run when a tort occur[red]." *Dunn*, 689 S.E.2d at 262. Accordingly, the Court should dismiss all claims to the extent they rely on alleged conduct committed before March 9, 2013—four years before the County brought suit— by Defendants named in the original complaint; and before April 25, 2014 by the Defendants named for the first time in the amended complaint. *See Summit* MTD at 54.

### B. No Exception to the Limitations Periods Applies

The 2AC attempts to invoke four exceptions to the limitations period: the discovery rule, fraudulent concealment, equitable estoppel, and the continuing violation doctrine. *See* 2AC ¶¶ 719-30. None applies.

### 1. The Equitable Doctrines Do Not Apply

Under West Virginia law, the discovery rule, fraudulent concealment, and equitable estoppel "should be applied cautiously" and "only when equity clearly requires that it be done." *Bradley v. Williams*, 465 S.E.2d 180, 185 (W. Va. 1995). To invoke any of these exceptions, the County must, at a minimum, allege facts showing it failed to discover "the elements of a possible cause of action." *See, e.g.*, *Dunn*, 689 S.E.2d at 265.[23] Fraudulent concealment and equitable estoppel also require particularized pleading of affirmative conduct, apart from the underlying fraud, to "conceal the cause of action," *Merrill v. W. Va. Dep't of Health & Human Res.*, 632 S.E.2d 307, 325 (W.

---

[22] The remaining claims are subject to a two-year limitations period. W. Va. Code § 55-2-12 (fraud, negligence, nuisance); *Dunn*, 689 S.E.2d at 269 (limitations period for civil conspiracy is determined by nature of underlying conduct on which conspiracy claim is based—here, fraud, negligence, and nuisance); *Boster v. Live Well Fin., Inc.*, 2018 WL 1582725, at *4-*7 (S.D. W. Va. Mar. 30, 2018) (courts in Fourth Circuit deem equitable unjust enrichment claims barred by laches if not brought within the limitations period for analogous claims at law).

[23] *See also McCoy v. Miller*, 578 S.E.2d 355, 359 (W. Va. 2003) ("Where a plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding that potential breach.").

Va. 2006). *See also Bradley*, 465 S.E.2d at 185. The 2AC shows that these exceptions do ***not*** apply: citations to publicly available material pre-dating the limitations period confirms the County knew, or reasonably should have known, of the alleged fraud long ago. *See Summit* MTD at 55-56. For example:

- FDA's public regulatory actions on opioid misuse and abuse (which the County now claims show actionable misconduct by the Manufacturer Defendants) dating from as early as 2001. *See* 2AC ¶¶ 36, 166, 238, 248, 265, 281.

- Articles related to opioids and opioid addiction published as early as 2001. *See, e.g.*, *id.* ¶¶ 116 n.17, 124 n.24, 159.

- Some of the Manufacturer Defendants' efforts to market opioids beginning in the 1990s, which were public by their very nature. *See, e.g.*, *id.* ¶¶ 395-411.

In addition, the County does not and cannot allege that any Manufacturer Defendant took affirmative steps to prevent the County from discovering and bringing claims based on this publicly available information. The statute of limitations therefore bars the claims.

### 2.     The Continuing Violation Doctrine Does Not Apply

The continuing violation doctrine applies only where there is "a continuing cause of action" which "for all practical purposes are identical, occur repeatedly, at short intervals, in a consistent, connected, rhythmic manner." *Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc.*, 640 S.E.2d 102, 108 (W. Va. 2006). The doctrine does not apply where "similar, but separate injuries" occur repeatedly through discrete transactions. *Id*. Here, the County alleges (and at the time was aware of) only discrete acts that were themselves potentially actionable: that is, different defendants engaging in different conduct at different periods of time causing various alleged harms. *See e.g.*, 2AC ¶¶ 151-99, 201-06, 211-17, 220-21, 225, 229-33, 236-47, 254-60, 262-310, 438-46. The continuing violation doctrine therefore does not apply.

### <u>CONCLUSION</u>

The Second Amended Complaint should be dismissed with prejudice.

Dated: June 8, 2018

Respectfully submitted,

/s/ Charles C. Lifland

Charles C. Lifland (*pro hac vice*)
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
clifland@omm.com
sstrong@omm.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

/s/ Mark S. Cheffo (consent)
Mark S. Cheffo
Sheila L. Birnbaum
Hayden A. Coleman
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com
Sheila.Birnbaum@dechert.com
Hayden.Coleman@dechert.com

*Attorneys for Defendants Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company*

s/ Jonathan L. Stern (consent)
Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Phone: 202-942-5000
Fax: 202-942-5999
Email: jonathan.stern@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Phone: 213-243-4000
Fax: 213-243-4199
Email: sean.morris@arnoldporter.com

*Attorneys for Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*

*Attorneys for Par Pharmaceutical, Inc. and Par Pharmaceuticals Companies, Inc. (not yet served or appearing)*

/s/ Steven A. Reed (consent)
Steven A. Reed
Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
T: 215.963.5603
F: 215.963.5001
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
(305) 415-3000
brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc.*

/s/ Donna M. Welch (consent)
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com

*Counsel for Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*

/s/ Eric H. Zagrans (consent)
Eric H. Zagrans (0013108)
ZAGRANS LAW FIRM LLC
6100 Oak Tree Boulevard, Suite 200
Cleveland, Ohio 44131
Telephone: 216.771.1000
Facsimile: 866.261.2008
eric@zagrans.com

J. Matthew Donohue
Joseph L. Franco

HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300
Facsimile: 503.241.8014
matt.donohue@hklaw.com
joe.franco@hklaw.com

Nicholas A. Sarokhanian
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
Telephone: 214.964.9500
Facsimile: 214.964.9501
nicholas.sarokhanian@hklaw.com

*Counsel for Insys Therapeutics, Inc.*

/s/ Brien T. O'Connor (consent)
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
(617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Attorneys for Defendant Mallinckrodt LLC*

*Attorneys for SpecGX LLC (not yet served or appearing)*

/s/ Daniel G. Jarcho (consent)
Daniel G. Jarcho*
D.C. Bar No. 391837
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3254
Facsimile: (202) 239-333
daniel.jarcho@alston.com

Cari K. Dawson*
Georgia Bar No. 213490
Jenny A. Mendelsohn*
Georgia Bar No. 447183
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
cari.dawson@alston.com
jenny.mendelsohn@alston.com

*Attorneys for Noramco, Inc.*
*\* denotes national counsel who will seek pro hac vice admission*

## LOCAL RULE 7.1(F) CERTIFICATION

I certify that this case has been assigned to the "litigation track" pursuant to CMO One and that this Memorandum adheres to the page limitations set forth in CMO One § 6(f), CMO Four at 2-3, and L.R. 7.1(f).

Dated:  June 8, 2018     /s/ Charles C. Lifland

           Charles C. Lifland
           O'MELVENY & MYERS LLP
           400 S. Hope Street
           Los Angeles, CA 90071
           Telephone:  (213) 430-6000
           Facsimile:  (213) 430-6407
           clifland@omm.com

*Attorney for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2018, a copy of the foregoing **Memorandum of Law in Support of the Manufacturer Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Complaint** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated:  June 8, 2018                    /s/ Charles C. Lifland

                                        Charles C. Lifland
                                        O'MELVENY & MYERS LLP
                                        400 S. Hope Street
                                        Los Angeles, CA 90071
                                        Telephone:  (213) 430-6000
                                        Facsimile:  (213) 430-6407
                                        clifland@omm.com

                                        *Attorney for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*