## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>ALL CASES | **MDL No. 2804**<br><br>**Case No. 17-md-2804**<br><br>**Judge Dan Aaron Polster** |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR MODIFICATION OF CMO-1 REGARDING RELATION BACK AND TOLLING

The Court staying all non-Track One cases is consistent with the Court's instructions that Plaintiffs focus on preparing the Track One cases for trial and not focus on amending the more than 700 cases which are part of the MDL Proceedings but which have not yet been set for trial. *See* CMO 1 (Dkt. 232).[1] But what about statutes of limitations running for parties not yet named as defendants, particularly where the now produced ARCOS data may reveal the identities of such unnamed defendants?

If statutes of limitations are not stayed, then the Plaintiffs likely will have to seek leave to amend the more than 700 non-trial track cases. The process of analyzing and providing ARCOS data to the more than 700 Plaintiffs so that they may assess whether defendants should be added to their Complaints and the subsequent process of preparing the 700 plus Amended Complaints will divert resources and focus from the Track One cases. To avoid such a result, Plaintiffs propose that, based on either Rule 15(c)'s relation-back provisions or this Court's equitable

---

[1] *See also* May 10 Hr'g Tr. at 11 (Dkt 418) ("I'm going to request that lawyers on the nonlitigating cases, the cases that haven't been set for trial . . . that those lawyers hold off. You'll have plenty of time to request that data if and when your case is set for trial and that to hold off contacting the PEC for the data. And, Mr. Rice, if you get the calls, just -- I mean, you note them down, but you don't need to respond now.").

authority, the Court stay the statute of limitations. Further, Plaintiffs propose giving these potential defendants actual notice of the litigation and the requested order to remove any argument that such defendants would potentially be prejudiced.

In the absence of tolling or relation back, the Plaintiffs seek an extension of the May 25, 2018 deadline to amend the non-trial track complaints without leave of Court. Plaintiffs seek sufficient time to review the ARCOS data and accomplish the more than 700 potential amendments, which Plaintiffs assert would require no fewer than 90 days.

Defendants' response is none of this works. They contend that even this highly unusual case presents no grounds for equitable tolling. Defendants also argue that Rule 15(c) is inapplicable even though Plaintiffs propose giving every potential defendant actual notice. Defendants further assert that Plaintiffs merely need 45 days to accomplish the ARCOS analysis and subsequent amendments.  The Defendants' are incorrect for the following reasons:

## I.      Rule 15(c)'s relation-back provisions presumptively apply.

### A.      The rule applies to newly added defendants.

An amendment "to change *or add* a defendant after the statute of limitations has run" is controlled by Rule 15(c)(1)(C), 3 Moore's Federal Practice - Civil § 15.19[3][a] (2018) (emphasis added), which requires Plaintiffs to show the following:

- The claim asserted by amendment "arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading" (*see* Rule 15(c)(1)(C)).

- The new party named in the amended pleading "received such notice of the action that it will not be prejudiced in defending on the merits" (*see* Rule 15(c)(1)(C)(i)).

- The new party either "*knew or should have known* that the action would have been brought against it, but for *a mistake* concerning the proper party's identity" (*see* Rule 15(c)(1)(C)(ii) (emphasis added)).

- The notice and knowledge factors are satisfied "within period provided for by Rule 4(m) for serving the summons and complaint" (*see* Rule 15(c)(1)(C)).

*See also* 3 Moore's Federal Practice - Civil § 15.19 (2018) (setting out elements).

2

Defendants assert that "Plaintiffs cannot establish that any new claims would relate back under Rule 15(c)," because "Rule 15(c) 'allows the correction of misnomers, but not the addition or substitution of new parties.'" Dkt. 560 at 6 (quoting *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991) and *Asher v. Unarco Material Handling*, Inc., 596 F.3d 313, 318 (6th Cir. 2010) ("[T]he precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'"). Defendants overlook *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010), however, and how courts in this circuit have found that it "has called into question the Sixth Circuit's narrow reading of the meaning of 'mistake' under Rule 15(c)(1)(C)(ii)" in the *In re Kent* and *Asher* cases cited by Defendants. *Hiler v. Extendicare Health Network*, No. 5:11-CV-192-REW, 2013 U.S. Dist. LEXIS 26548, at *11-13 (E.D. Ky. Feb. 26, 2013). *See also Jadco Enters. v. Fannon*, Civil Action No. 6: 12-225-DCR, 2013 U.S. Dist. LEXIS 61985, at *6 n.3 (E.D. Ky. May 1, 2013). Specifically, per *Krupski,* a mistake under Rule 15(c)(1)(C) includes a mistake concerning the proper party's identity, which includes mistakes that add new parties. *Erie Indem. Co. v. Keurig, Inc.*, No. 1:10-CV-02899, 2011 U.S. Dist. LEXIS 76998, at *9-10 (N.D. Ohio July 15, 2011)

*Erie* was a product liability case alleging that a defective coffee maker caused a fire. The plaintiffs initially sued Keurig, Inc., believing it was solely responsible. "Further investigation by the Plaintiffs, however, revealed that Defendant Simatelex … was likely involved in manufacturing the coffee maker," and so Plaintiffs amended to add Simatelex as a defendant and assert claims against both defendants. *Erie Indem. Co.*, 2011 U.S. Dist. LEXIS 76998, at *1. But while the original complaint was timely filed, the statute of limitations had run prior to the amendment. *Id.*, at *2. The court concluded that plaintiffs' claims were timely, however, because their failure to originally name Simatelex was a "mistake" for purposes of relation back under Rule 15(c)(1)(C)(ii). *Id.* at *9-10.

In reaching that conclusion, the court acknowledged that "under the prior Sixth Circuit rule, the amendment of Simatelex as a new party would not have been permitted." *Id.* at *5. But

3

the Supreme Court's decision in *Krupski*, "abrogate[ed] the prior Sixth Circuit rule that categorically barred addition of new parties under Rule 15(c)." *Id.* at *9. The court explained how in *Krupski*

> the Supreme Court broadly defined a "mistake" an "an error, misconception, or misunderstanding; an erroneous belief." [*Krupski*, 130 S.Ct.] at 2494. As an example of a mistake that would potentially allow for relation-back, the Supreme Court describes a plaintiff who sues party A, rather than party B, because of a misunderstanding regarding the roles that the potential defendants played in the transaction giving rise to the claim. *Id.* at 2494. In giving this example, the Supreme Court did not limit the meaning of mistake to only misnomers or corrections, as had the Sixth Circuit, but instead broadly viewed Rule 15(c)(1)(C) as covering any error that caused a plaintiff to sue one party, while in reality, actually intending to sue another. *Id.* at 2494.

*Id.* at *6-7. Thus, "[a]s the Supreme Court makes clear, a 'mistake' under Rule 15(c)(1)(C) includes a 'mistake concerning the proper party's identity,' which could logically include both mistakes that merely substitutes a party and those that add new parties." *Id.* at *9 (emphasis added and cited cases reproduced in the footnote below).[2] Applying that standard, the court concluded that while plaintiffs originally named only Keurig, "that under *Krupski* this is a mistake allowing for relation back, since it was a mistake regarding the proper identity of the party who may have been responsible for the alleged manufacturing and design defects." *Id.* at *10.

The same analysis applies here. As in *Erie*, Plaintiffs have sued various defendants and seek to hold responsible those entities that brought about the opioid epidemic in their communities. As in *Erie*, if Plaintiffs did not originally sue a potential defendant, it is because they are unaware of them and the role they played, issues Plaintiffs are diligently investigating using the recently-produced ARCOS data. And as in *Erie*, if a Plaintiff learns that parties other

---

[2] *Abdell v. City of New York*, 759 F. Supp. 2d 450, 454-55 (S.D.N.Y. 2010) (allowing relation back to add new party and specifically noting that the Sixth Circuit case law takes too narrow a view of *Krupski*); *see also Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011) (noting that under *Krupski* that Rule 15(c) allows for the substitution or addition of parties); *Tapp v. Shaw Envt'l, Inc.*, 401 F. App'x 930, 933-34 (5th Cir. 2010) (allowing relation back as to new defendant); *Penrod v. Wansack*, 2011 U.S. Dist. LEXIS 59225 (S.D. Ohio Apr. 4, 2011), *adopted by* 2011 U.S. Dist. LEXIS 57777 (S.D. Ohio. May 31, 2011) (allowing for the addition of a new party under Rule 15(c)(1)(C))

4

than the current defendants played a role in causing harm to that plaintiff, "under *Krupski* this is a mistake allowing for relation back, since it was a mistake regarding the proper identity of the party who may have been responsible for the alleged [harm]." *Erie Indem. Co.*, 2011 U.S. Dist. LEXIS 76998, at *10. The Court should find that Plaintiffs have met their burden to show that adding new defendants based on their investigation of the ARCOS data falls squarely within Rule 15(c)'s definition of a "mistake" for relating back.

      **B.**     **The notice requirement is presumptively satisfied.**

Plaintiffs have stated that they will make a good-faith effort to give actual notice of the litigation and the requested Order to all manufacturers and distributors of opioids identified in the ARCOS data at the addresses contained therein within the time under CMO1 to serve the original complaints. Dkt. 487 at 5. Actual "notice [of the litigation] may be either formal or informal," 3 Moore's Federal Practice - Civil § 15.19[3][c] (2018), and the question is whether notice allowed a newly defendant "to anticipate and therefore prepare for his role as a defendant," *In re Integrated Res. Real Estate Ltd. Partnerships Sec. Litig.*, 815 F. Supp. 620, 647 (S.D.N.Y. 1993). Plaintiffs' offer to provide potential defendants actual notice of the litigation and the requested Order presumptively satisfies the requirements of Rule 15(c); Defendants do not – because they cannot – argue otherwise.

Instead, Defendants cite *Goodwin v. Summit Cty.*, 703 F. App'x 379 (6th Cir. 2017), but that case provides no support for Defendants' notice arguments. In that case, the court found that that county officials would have no notice of their potential individual liability because the complaint specified "five times" that plaintiff "sought recovery from the County officials in their *official* capacity" only. *Id.* at 383. Plaintiffs have communicated no information to any potential defendant suggesting that they may not face liability. Indeed, Plaintiffs propose sending notice and the requested order to potential defendants informing them that they face potential liability.

### C. Plaintiffs' proposed order does not impermissibly shift the burden of proof or raise Due Process concerns.

Defendants overlook two key points when they argue that adopting Plaintiffs' position "would impermissibly shift the burden of proof regarding relation back," and "violate fundamental constitutional rights" to due process. Dkt. 560 at 8, 12. First, Plaintiffs' proposed order expressly contemplates that, when the stay is lifted, each plaintiff will as necessary file an amended complaint adding any new defendants. Under Rule 15(a), each new defendant will have an opportunity to respond to the amended complaint and raise any defense, including the statute of limitations and the applicability of Rule 15(c). *See* Fed. R. Civ. P. 15(a)(3) ("Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."). Each added defendant, therefore, will have the opportunity to respond and be heard on any statute of limitations defense they may wish to raise.

Second, because Plaintiffs must meet their burden to show that Rule 15(c) applies to obtain the requested tolling order, the "rebuttable presumption" does not shift the burden of proof. All it does it require a newly added defendant to come forward with arguments on why Rule 15(c) does not apply – just as it would be required to do in an opposition brief – and a Plaintiff would have to respond to those arguments. That is no different than how briefing works in any other case.

### D. Repose would be a windfall for a prospective defendant.

Finally, Defendants argue that it is somehow improper to "group all time-related defenses … and rule on them collectively," and point out that statutes of repose "cannot be tolled at all." Dkt. 560 at 13. To the extent Defendants intend such arguments to apply to Rule 15(c), they reflect a misconception of the rule's effect and purpose. Rule 15(c) does not "toll" a statute of limitations or repose; by its terms, it "relates back" an amended pleading "to the date of the original pleading…." Fed. R. Civ. P. 15(c)(1). The purpose of relating back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in

6

the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski*, 560 U.S. at 550. "[R]epose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id*.

Such is the case here. Any potential defendant has avoided suit thus far only because a Plaintiff misunderstood crucial facts about its identity and role in events at issue in this case – a mistake that Plaintiffs are diligently working to correct using the recently-produced ARCOS data. Escaping suit because the statute of limitations has run while Plaintiffs did their investigation would be a windfall to a potential defendant that would cut against both Rule 15(c) and the preference of resolving disputes on their merits, not procedural technicalities. *Id*.

## II.     Equitable tolling is appropriate under Sixth Circuit and Ohio Law

"[T]he decision to invoke equitable tolling in any particular case lies solely within the discretion of the trial court." *Fitzpatrick v. Cuyahoga County*, No. 1:17-cv-1235, 2017 WL 5178266, at *4-5 (N.D. Ohio Nov. 8, 2017). This Court has stated that it "*may consider*" the following factors to determine whether equitable tolling is warranted: "(1) [t]he petitioner's lacking [actual] notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Osman v. Grube, Inc.,* No. 16-cv-802, 2017 WL 2908864, at *8–10 (N.D. Ohio July, 7 2017) (emphasis added).

But these factors – often referred to as the *Andrews* factors after *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988) – are "not a comprehensive list nor are all these factors necessarily relevant in every case." *Kampfer v. Fifth Third Bank*, No. 3:14-cv-2849, 2016 WL 1110257, at *7 (N.D. Ohio Mar. 22, 2016) (citing *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004)). This Court has held that its equitable tolling analyses is also guided by the two-factor *Holland* analysis set out in Plaintiffs' Motion: namely, whether (1) a litigant has been "pursuing his rights diligently" and (2) whether "some extraordinary circumstance stood in his way and prevented

timely filing." *Fitzpatrick*, 2017 WL 5178266, at *4–5. Indeed, in the decision Defendants cite to argue that Plaintiffs directed this Court to the wrong standard, the Sixth Circuit confirms that since the "propriety of equitable tolling must necessarily be determined on a case-by-case basis . . . both standards can inform . . . [an] evaluation of . . ." whether equitable estoppel is warranted, "particularly . . . because the two approaches are quite compatible and may often lead to the same result." *Zappone v. United States*, 870 F.3d 551, 556–57 (6th Cir. 2017).

Defendants have asserted that this Court cannot equitably toll Plaintiffs state law claims, citing *Roberson v. Macnicol*. 698 F. App'x 248, 250 (6th Cir. 2017) ("As to Roberson's state-law claims, however, federal tolling doctrine does not apply; instead, claims arising under state law are governed by state tolling doctrine."). However, if the Court finds the *Roberson* decision controlling, then the Court may enter a tolling order which is crafted to comply with the equitable tolling rules of the various states for which state law claims are before this Court, or the Court may issue separate tolling orders regarding those Plaintiffs' state law claims.[3]

With regard to cases filed in Ohio, both Ohio state courts and courts within the Sixth Circuit examining Ohio state-law claims have considered the same factors relevant their equitable tolling analyses for Ohio state law claims as those the courts consider in their federal equitable tolling analysis. Though declining to expressly adopt the *Holland* analysis, the Sixth Circuit has utilized "both standards" – the two factor *Holland* analysis and the five factor *Andrews* analysis – to "inform [its] evaluation" of equitable tolling in the context of the state law claims. *Zappone v. United States*, 870 F.3d 551, 556–57 (6th Cir. 2017). While federal courts examining Ohio state law regarding equitable tolling have noted that "Ohio courts recognize the doctrine of equitable tolling . . . [but] have not settled on one standard analysis," (*Wolfel v. Collins*, No. 2:07–cv–1296, 2011 WL 1770234, at *2–3 (S.D. Ohio May 9, 2011)), Ohio courts have frequently looked to the same factors utilized by the federal courts in the Sixth Circuit, including many of the two *Holland* factors and the five *Andrews* factors. *See Byers v. Robinson*,

---

[3] At the time of filing, Plaintiffs from 44 states, plus Puerto Rico, have filed claims in the MDL Proceedings.

No. 08AP–204, 2008 Ohio 4833, at ¶ 52 (Ohio Ct. App. Sept. 23, 2008) (considering diligent pursuant of rights as a factor); *McCualsky v. Appalachian Behavioral Healthcare*, No. 17AP–476, —— N.E.3d ——, 2017 WL 6016632, at *4 (Ohio Ct. App. Dec. 5, 2017) (A litigant seeking equitable tolling "must demonstrate that he or she diligently pursued his or her rights, but some extraordinary circumstance stood in his or her way and prevented timely action," namely, the *Holland* factors); *Brown v. Ohio Dept. of Job & Family Services*, No. 08AP-239, 2008 WL 5197157, at *3–4 (Ohio Ct. App. Dec. 11, 2008) (citing the five factor *Andrews* analysis as "relevant to a determination of whether tolling should be allowed").  Indeed, because it is an equitable remedy to be considered on a case-by-case basis, the decision to grant equitable tolling under Ohio law is entirely within the court's discretion. *Byers v. Robinson*, No. 08AP–204, 2008 WL 4328189 (Ohio Ct. App. Sept. 23, 2008) (citing *McDonald & Co. Sec., Inc., Gradison Div. v. Alzheimer's Disease & Related Disorders Assn., Inc.*, No. C–990810, 747 N.E.2d 843 (Ohio Ct. App. 2000) ("'In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy.' . . .  It has the power to fashion any remedy necessary and appropriate to do justice in a particular case.'").

Defendants also misstate what is meant by the phrase "case-by-case basis" in the context of equitable tolling analysis.  "While equitable tolling is decided on a case-by-case basis, there is no requirement that it be decided on a plaintiff-by-plaintiff basis." *Penley v. NPC International, Inc.*, 206 F.Supp.3d 1341, 1348 (W.D. Tenn. 2016) ("no value can be obtained from protracting this litigation any further through an individualized, fact-intensive inquiry into how the equitable tolling standard applies to each Plaintiff. Accordingly, the Plaintiffs will be treated as a group for the purposes of this motion.") (cited with approval by this Court in *Osman*, 2017 WL 2908864, at *8–10). Both this Court and other federal District Courts in Ohio and the Sixth Circuit have made equitable tolling determinations regarding similarly situated groups of plaintiffs without considering them on a plaintiff-by-plaintiff basis.  *See Kampfer*, 2016 WL 1110257, at *7 (granting equitable tolling in favor of all Plaintiffs); *Osman v. Grube, Inc.*, 2017 WL 2908864, at *8–10 (N.D. Ohio 2017) (evaluating all plaintiffs together for equitable tolling purposes); *Patton*

*v. ServiceSource Delaware, Inc.*, 2016 WL 4441424, at *4–5 (M.D. Tenn. 2016) (granting equitable tolling to a group of plaintiffs).

Consideration of the *Holland* and the *Andrews* factors dictates that granting equitable tolling in the case *sub judice* is proper. Substantially all of the factors in the two analyses "tip[] the balance in favor equitable tolling" here. *Kampfer*, 2016 WL 1110257, at *7.  Further, analysis of the unusual circumstances before this Court support the conclusion that equitable tolling is necessary to prevent inequity. *Baden–Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007).

This Court has already recognized that, without access to certain non-public transactional data such as that contained in the ARCOS database, the Plaintiffs in this MDL "do not know: (a) which manufacturers (b) sold what types of pills (c) to which distributors; nor do they know (d) which distributors (e) sold what types of pills (f) to which retailers (g) in what locations. In any given case, therefore, the Plaintiff still cannot know for sure who are the correct defendants, or the scope of their potential liability." April 11, 2018 Order Regarding ARCOS Data (Dkt. 233). "Discovery of precisely which manufacturers sent which drugs to which distributors, and which distributors sent which drugs to which pharmacies and doctors, is critical . . . to all of plaintiffs' claims . . . ." *Id.*  The Court is well familiar with the Plaintiffs' attempts to obtain this nonpublic information and with the DEA and Defendants' resistance to permitting production of the data.[4] Though the Court has ordered production for all fifty states of a significant amount of the non-public transactional data in the form of ARCOS data [Dkt. 397], in supplement to the original six states which the Court previously ordered produced [Dkt 233], production of the data for the remainder of the 50 states has not been instantaneous or complete. On May 18, 2018, ten days after the Order requiring production [Dkt. 397], the DEA produced certain data for the remaining fifty states to the Plaintiffs. Upon review of the data, Plaintiffs discovered that material portions

---

[4] The Court has discussed Plaintiffs' efforts in its Orders regarding the ARCOS data.  *See, generally* Feb. 2, 2018 Order re: ARCOS/DADs Database (Dkt. 112); Mar. 6, 2018 Protective Order re: DEA's ARCOS/DADS Database (Dkt. 167); Apr. 11, 2018 Order Regarding ARCOS Data (Dkt. 233); May 8, 2018 Second Order Regarding ARCOS Data (Dkt. 397).

of the data were missing – the data fields identifying the "Buyer Name" and additional information found within the field "Buyer Addl Co Info" were not produced – and Plaintiffs promptly informed the DEA of the missing information via email on May 23, 2018.  On June 5, 2018, the DEA produced additional data but, at the time of this filing, Plaintiffs have not yet completed analysis and confirmation that all necessary data fields have now been produced.  *See* **Exhibit A**, Declaration of Peter Mougey.

Plaintiffs' counsel are working diligently to analyze the more than 374 million lines of currently produced ARCOS data. A determination of which DEA registrants sold and/or distributed opioids in which communities is necessary to informing the amendments to add, subtract, and rename DEA registrants as defendants to the complaints for more than 700 Plaintiffs in the MDL Proceedings. Due in part to the significant data size and the missing data fields, the analysis is not immediate and is not yet complete.

Of course, the Defendants and all DEA registrants have unfettered access to relevant information – including the transactional data contained in the ARCOS database – regarding their own manufacture, marketing, sale, and distribution of prescription opioids to the Plaintiffs' communities. Each Defendant named in MDL Proceedings is on notice of the potential claims against that Defendant which may be brought any Plaintiff regarding the prescription opioids which the Defendant marketed to, sold, or distributed into the Plaintiff's community.  Further, each DEA Registrant is on notice, by virtue of its DEA registration, of the legal requirements that it "design and operate and system to disclose . . . suspicious orders of controlled substances" (21 CFR 1301.74(b)) and the requirement that it "maintain effective controls against diversion" (*See* 21 U.S.C. § 823(a)).  In order to fulfill these requirements, the DEA registrants were required to know the quantity, frequency, and pattern in which their opioids were being distributed in the Plaintiffs' communities.  Additionally, as discussed below, Plaintiffs have offered to provide notice of the litigation to all DEA registrants.

The court has already determined that the Plaintiffs in the non-trial track cases need access to the transactional information included in the ARCOS data in order to determine which

11

DEA registrants to name in their Amended Complaints and further has found that the non-trial track Plaintiffs do not have access to this information at this time.  The record further establishes that Plaintiffs have diligently sought to obtain this information, but that factors beyond their control have prevented their access to it.  Further, there is no dispute that the Defendants and potential Defendants have access to the relevant information regarding their own distribution of opioids as well as actual or constructive notice of the litigation.  This is a "situation [which] represents a delay beyond the movant's control and exhibits the Plaintiffs' diligence . . . [as well as one in which] the Defendants can hardly complaint of prejudice…" and in which the "relevant factors tip[] the balance in favor of equitable tolling." *Kampfer*, 2016 WL 1110257, at *7. Accordingly, the Court may properly exercise its discretion to grant equitable tolling here.

### III.    Issuing a stay is within the Court's discretionary power and appropriate here

The discretionary "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cause on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (quoting *Landis v. N. Amer. Co.*, 299 U.S. 248, 254-55 (1936)).  While there is "no precise test" in the Sixth Circuit for when a stay is appropriate, *Ferrell v. Wyeth–Ayerst Labs., Inc.*, No. 1:01-cv-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005), "[t]he Northern District of Ohio has given shape to this balancing test by establishing four factors that should be weighed when determining whether a matter should be stayed pending the outcome of another case . . . (1) the potentially dispositive effect of the pending litigation, (2) judicial economy, (3) the public welfare, and (4) the hardship imposed on the opposing party if the stay is ordered." *Hickman v. First American Title Insurance Company*, No.: 1:07-cv- 1543, 2010 WL 11565405, at *2 (N.D. Ohio Aug. 4, 2010) (citations omitted).

A formal stay of the non-bellwether, non-Trial Track cases would serve these interests by allowing the counsel for the Plaintiffs in the MDL Proceedings – and the Court – to focus litigation efforts and resources on the bellwether and Trial Track issues and cases. A stay, if

accompanied by equitable tolling and the requested order, would protect the interests of the Plaintiffs while serving the Court's interest in conserving judicial resources and promoting the just and efficient conduct of this litigation.  *See Griffith v. Menard, Inc*., No. 2:18-cv-81, 2018 WL 1907348, at *4 (S.D. Ohio Apr. 23, 2018) (granting a stay and equitably tolling the statutes of limitations "in the interest of justice and fairness.")*; Cobble v. 20/20 Commc'ns, Inc.,* No. 2:17-cv-53-TAV-MCLC, 2017 WL 4544598, at *3 (E.D. Tenn. Oct. 11, 2017) ("[T]he interest of judicial efficiency is the overriding consideration in these circumstances because determining the order in which particular matters will be addressed in litigation is a quintessential prerogative of the trial court.").

## IV.    Defendants grossly underestimate the time needed to accomplish the amendments

The Defendants mischaracterize Plaintiffs' representations to this Court to imply that Plaintiffs simply need an extension of 45 days in order to (1) finalize review of the ARCOS data, (2) provide information obtained from the ARCOS data to the individual counsel for each of the more than 700 Plaintiffs in the MDL Proceedings, and then (3) separately amend each of those 700 plus non-trial and non-bellwether track cases based on the specific jurisdictional activity revealed by the ARCOS data.[5]  That is not what Plaintiffs' counsel represented to the Court, nor is 45 days sufficient to accomplish such a monumental task. At the May 10, 2018 hearing, Plaintiffs' counsel requested 30-45 days from receipt of the full set of ARCOS data to provide the Court *with a report* regarding the status of the ARCOS data and the various reports Plaintiffs were working to generate therefrom.  *See* May 10 Hr'g Tr. at 10-11(Dkt 418). Plaintiffs' counsel never represented that 45 days was adequate time to accomplish the tasks necessary to amend all 700 plus non-trial, non-bellwether track actions in the MDL Proceedings.  If the statutes of limitations for the such Plaintiffs are not stayed by equitable tolling or relation back, Plaintiffs requests an extension of no fewer than 90 days from the date production of the fifty state

---

[5] To date, more than 498 counties are represented in the MDL Proceedings, in addition to 235 municipalities which have also filed suit. Approximately 34 sovereign nations are included in the MDL Proceedings, as are multiple states.

transactional ARCOS data is complete in order to amend the non-bellwether and non-trial track complaints based on the currently produced ARCOS data.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court stay the May 25, 2018 due date for Plaintiffs to file amended pleadings without leave of Court, so that Plaintiffs may review the ARCOS and other data; and create a rebuttable presumption the amendment of any Complaint to add any additional Defendant(s) relates back, under Fed.R.Civ.P.15(c) and the doctrine of equitable tolling, as described above for any civil action which is now part of the MDL Proceedings or which later becomes part of the MDL Proceedings. In the absence of tolling and relation back, the Plaintiffs seek an extension of the May 25, 2018 deadline for filing Amended Complaints without leave of Court by at least ninety (90) days from the data on which production of the fifty state ARCOS data and associated data fields is complete so that Plaintiffs may analyze the fifty state ARCOS data and amend the Complaints for those Plaintiffs which have not yet been designated in a trial or motion to dismiss bellwether track.

Dated:  June 13, 2018

Respectfully submitted,

By: /s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr. (Ohio Bar No. 0070257)
**GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP**
419 - 11th Street (25701)/ P.O. Box 2389
Huntington, West Virginia 25724-2389
Tel.: 800-479-0053 or 304-525-9115
Fax: 304-529-3284
paul@greeneketchum.com
*Plaintiffs' Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of June 2018, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF System. The foregoing will be served on counsel of record by, and may be obtained through, the Court CM/ECF Systems.

/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr.
*Plaintiffs' Co-Lead Counsel*