# EXHIBIT B



ENTERED 12-12-14

## IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY,**
Attorney General,
**JOSEPH THORNTON,**
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT
OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING,**
in her capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT
OF HEALTH & HUMAN RESOURCES,**
an agency of the State of West Virginia,

        Plaintiffs,

v.

        Civil Action No.12-C-141
        (Hon. William S. Thompson, Judge)

**AMERISOURCEBERGEN DRUG CORP.,**
a Delaware corporation doing business in West Virginia,
**MIAMI-LUKEN, INC.,**
an Ohio corporation doing business in West Virginia,
**J.M. SMITH CORP. d/b/a SMITH DRUG CO.,**
a South Carolina corporation doing business in West Virginia,
**THE HARVARD DRUG GROUP, LLC,**
a Michigan corporation doing business in West Virginia,
**ANDA INC.,**
a Florida corporation doing business in West Virginia,
**ASSOCIATED PHARMACIES, INC.,**
an Alabama corporation doing business in West Virginia,
**H.D. SMITH WHOLESALE DRUG CO.,**
a Delaware corporation doing business in West Virginia,
**KEYSOURCE MEDICAL INC.,**
an Ohio corporation doing business in West Virginia,
**MASTERS PHARMACEUTICALS, INC.,**
an Ohio corporation doing business in West Virginia,
**QUEST PHARMACEUTICALS, INC.,**
a Kentucky corporation doing business in West Virginia,
**RICHIE PHARMACAL CO., INC.,**
a Kentucky corporation doing business in West Virginia, and
**TOP RX, INC.,** a
Tennessee corporation doing business in West Virginia,

        Defendants.

## ORDER DENYING MOTIONS TO DISMISS

On June 5, 2014 came Plaintiffs, by counsel, and came Defendants, by counsel, for a hearing on Defendants' various Motions to Dismiss. After oral argument, full briefing and mature consideration, and for the reasons that follow, the Court hereby **DENIES** Defendants' Motions to Dismiss.

### THE MOTION-TO-DISMISS STANDARD

1. "A complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Conrad v. ARA Szabo*, 198 W. Va. 362, 369–70, 480 S.E.2d 801, 808–09 (1996).

2. "Although entitlement to relief must be shown, a plaintiff is not required to set out facts upon which the claim is based." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995).

3. "In view of the liberal policy of the rules of pleading with regard to the construction of plaintiff's complaint, and in view of the policy of the rules favoring the determination of actions on the merits, the motion to dismiss for failure to state a claim should be viewed with disfavor and rarely granted. The standard which plaintiff must meet to overcome a Rule 12(b)(6) motion is a liberal standard, and few complaints fail to meet it." *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 606, 245 S.E.2d 157, 159 (1978).

4. "Complaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure." *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 227, 488 S.E.2d 901, 907 (1997) (quoting *Scott Runyan*, 194 W.Va. at 776, 461 S.E.2d at 522).

5.     "In reviewing a motion to dismiss, this Court is required to accept all the well-pleaded

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."

*Murphy v. Smallridge*, 196 W. Va. 35, 36, 468 S.E.2d 167, 168 (1996). The Court therefore

accepts the following allegations in the Amended Complaint as true, and draws all reasonable

inferences therefrom in favor of Plaintiffs.

## FACTS ALLEGED IN AMENDED COMPLAINT

6.     The State alleges the problems caused by the prescription drug epidemic in West Virginia

contributed by Defendants includes the fact that West Virginia is the Nation's "most medicated

state" – citing data showing West Virginia pharmacies supplied by Defendants filled almost

twice as many prescriptions as the national average on a *per capita* basis. (Am. Compl. ¶ 6(e)).

7.     The State of West Virginia and two of its agencies, the West Virginia Department of

Military Affairs and Public Safety and the West Virginia Department of Health & Human

Resources (collectively "the State") bring this action to address "the epidemic of prescription

drug abuse and its costs to the State of West Virginia." The State pleads five claims: Injunctive

Relief for Violations of West Virginia Controlled Substances Act (Count I), Damages from

Negligence and Violations of Controlled Substances Act (Count II), Violations of West Virginia

Consumer Credit and Protection Act (Count III), Public Nuisance (Count IV), and Negligence

(Count V).

8.     It is alleged prescription drug abuse is widespread and costs the State hundreds of

millions of dollars annually, devastates West Virginia communities and families, reduces the

State's economic productivity, adversely affects West Virginia's hospitals, schools, courts, social

service agencies, jails and prisons as well as diminishing the quality of life in the State's cities

and towns. (*Id.* ¶¶ 1, 6).

9.      Defendants are distributors of addictive controlled substances who supply controlled substances to pharmacies dispensing those drugs for illegitimate medical purposes, and that some of those pharmacies located in rural or low population areas order large quantities of commonly abused controlled substances from Defendants in amounts much greater than the populations in those areas would warrant, such that those orders are, at the very least, suspicious. (*Id.* ¶ 3).

10.     The Amended Complaint identifies many abused controlled substances the Defendants allegedly wrongfully distribute in West Virginia. (*Id.* ¶ 6(k)).

11.     The State claims Defendants profit from the prescription drug epidemic in West Virginia by distributing controlled substances in amounts in excess of the amount of controlled substances legitimately medically required. By distributing these excessive amounts of controlled substances, it is alleged Defendants violate West Virginia law by failing to implement, or more particularly, to follow and adhere to effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose suspicious orders they fill. (*Id.* ¶ 8).

12.     In paragraph 29 of the Amended Complaint, the State alleges Defendants conduct violates industry customs and standards:

> "The Defendants are distributors of controlled substances and must comply both with the laws of the State into which they distribute controlled substances and with industry custom and standards. In the instant case, the standard of conduct for Defendants' industry requires Defendants know their customers, which includes, *inter alia*, an awareness of their customer base (including but not limited to population levels of the immediate area), knowledge of the average prescriptions filled each day, the percentage of diverted and/or abused controlled

substances distributed as compared to overall purchases, how the dispenser fulfills

its responsibility to ensure that prescriptions filled are for legitimate medical

purposes, and identification of physicians and bogus centers for the alleged

treatment of pain that are the dispenser's frequent prescribers."

13.    In paragraph 30 of the Amended Complaint, the State claims:

"Defendants have willfully turned a blind eye towards the foregoing factors by

regularly distributing large quantities of commonly abused controlled substances

to clients who are serving a customer base comprised of individuals who are

themselves abusing prescription medications, many of whom are addicted and

whom reasonably can be expected to become addicted or to engage in illicit drug

transactions.  The Defendants negligent acts and omissions in violation of West

Virginia's drug laws have lead to the dispensing of controlled substances for non-

legitimate medical purposes of epidemic proportions, including the operation of

bogus pain clinics that do little more than provide prescriptions for addictive

controlled substances and thereby creating and continuing addictions to

prescription medications."

14.    The State asserts each of the Defendants were aware of this epidemic of prescription drug

abuse in West Virginia, but they nevertheless persisted in a pattern of distributing commonly

abused and diverted controlled substances in geographic areas, and in such quantities and with

such frequency, that each of the Defendants knew or should have known these commonly abused

controlled substances were not being prescribed and consumed for legitimate medical purposes.

(*Id.* ¶ 50).

15.    Regulations promulgated pursuant to the West Virginia Controlled Substances Act

require Defendants to do the following:

•    "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances [. . . .]" 15 W.Va.C.S.R. § 2-4.2.1.

•    "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant.  Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 W.Va.C.S.R. § 2-4.4.

(*Id.* ¶ 20).

16.    The State further alleges Defendants have not complied with the requirements in the

foregoing regulations (*Id.* ¶¶ 21-22), and that by distributing excessive amounts of controlled

substances, Defendants violate West Virginia law (15 *WVCSR* § 2-4.2.1 and 15 *WVCSR* § 2-4.4)

by failing to implement effective controls to guard against prescription drug diversion and by

failing to effectively monitor, enforce and/or disclose suspicious orders they fill.  (*Id.* ¶ 8).

17.    The State alleges that between 2007 and 2013, certain Defendants have -- based on

similar allegations regarding their lack of oversight of painkiller sales and failure to effectively

detect, identify and report suspicious orders of controlled substances -- either had their licenses

suspended for a period of time, paid fines to various U.S. Attorney's Offices based on Drug

Enforcement Agency investigations or acknowledged such federal investigations.  (*Id.*).

**THE AMENDED COMPLAINT IS NOT PLED ENTIRELY SUFFICIENTLY**

18.    "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion,

should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." *Syl.* Pt. 2, *Sedlock v.*

*Moyle*, 222 W. Va. 547, 668 S.E.2d 176 (2008) (*per curiam*) (quoting *Syl.* Pt. 3, *Chapman v.*

*Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977); *accord Syl.* Pt. 1, *Hill v. Stowers*, 224 W. Va. 51, 680 S.E.2d 66, 70 (2009) (*per curiam*) (quoting *Chapman*).

19.     A plaintiff is not required to set out claims in detail – the pleading standard is not based on how much detail is alleged, but rather whether the Court and opposing parties can understand whether a valid claim is alleged.  As our Supreme Court held in *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995):

> "Complaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure. –  The circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief." – Indeed, Rule 8 of the Rules of Civil Procedure requires clarity but not detail. Specifically, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" In addition, Rule 8(e)(1) states, in part, that "[e]ach averment of a pleading shall be simple, concise, and direct." The primary purpose of these provisions is rooted in fair notice. Under Rule 8, a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is.  Although entitlement to relief must be shown, a plaintiff is not required to set out facts upon which the claim is based."

20.     The Court finds and concludes the State has not entirely met its pleading burden and its claims to satisfy Rule 12.  The Amended Complaint's allegations put Defendants on fair notice

of the claims being pled against them; however, the Court Orders Plaintiffs to amend the Amended Complaint with more clarity.[1],[2]

## CONCLUSIONS OF LAW

### STANDING

21.     "[S]tanding is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002) (quoting *Black's Law Dictionary* 1413 (7th ed.1999)).

> "'Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an 'injury-in-fact'-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.'"

*Syl.* Pt. 2, *Doering v. City of Ronceverte*, 228 W.Va. 147, 718 S.E.2d 497 (2011) (quoting *Syl.* pt. 5, *Findley v. State Farm Mutual Automobile Insurance Company*, 213 W.Va. 80, 576 S.E.2d 807 (2002)).

22.     This case is brought by the Plaintiffs in the name of the State of West Virginia.

23.     The Attorney General is the lawyer, and although he may be the representative of the State, the claims are brought in the name of the State, and for the benefit of the State, and the

---

[1] At the conclusion of the hearing on June 5, 2014, the Court allowed certain Defendants who had not filed their own memoranda or replies in favor of Motions to Dismiss to nevertheless submit a proposed order regarding their Motions to Dismiss. On June 18, 2014, a proposed order was submitted jointly by Defendants Top Rx, Inc., Keysource Medical, Inc., Miami Luken, Inc., The Harvard Drug Group, LLC, Associated Pharmacies, Inc., Masters Pharmaceutical, Inc. and Quest Pharmaceuticals, Inc. The Court converts the proposed order into a joint motion. These Defendants essentially argue the State does not allege they have "sold a sufficient amount of controlled substances in West Virginia" for liability to attach. However, the Amended Complaint alleges, for example, "Defendants are major distributors," who have "received substantial revenue from West Virginia entities while engaging in wholesale drug distribution in West Virginia and in supplying West Virginia Pill Mills." (Am. Compl. ¶¶ 3, 5). The Motion to Dismiss of these Defendants is thus denied.

[2] Although the Defendants may not have explicitly asked for a more definite statement in either their written or oral motions before this Court, the Defendants implicitly argued for one in both their written and oral motions before this Court. The Court feels that the Defendants' arguments in their motions to dismiss can be adequately addressed by this Court requiring a more definite statement. Therefore, the Court is granting this implied motion.

State, not the Attorney General; thus, the State is the real party in interest. *See Lawyer Disciplinary Bd. v. McGraw*, 194 W. Va. 788, 800, 461 S.E.2d 850, 862 (1995) (explaining the Attorney General is the State's lawyer).

24.     "A State may have standing to assert an injury to a sovereign interest, to some proprietary interest, or to its parens patriae interest. A State has standing to sue in its sovereign capacity if it has suffered an economic injury." 72 Am.Jur.2d *States, etc.* § 93 at 516 (2012); *see also id.*, § 89 at 513 (2012) ("A state, as a political corporation, has the right, independent of any statutory provision, to institute a suit in any of its courts[,] whether doing so is required by its pecuniary interests or by the general public welfare. It possesses this right both in its sovereign capacity and by virtue of its corporate rights.").

25.     The Court notes the Attorney General's representation of the State has been challenged unsuccessfully in other cases.[3]

26.     The Attorney General regularly represents the State in these types of claims. In addition to the inherent standing of the State to bring the instant claims, the Attorney General is authorized to do so pursuant to the common law and several statutes, including inter alia *W.Va. Code* §§ 5-3-1, 5-3-2, 14-1-1, 14-1-2, 14-1-3, and 23-1-1(e).[4]

27.     The fact that West Virginia Governor Earl Ray Tomblin requested and authorized the State's claims on behalf of the Department of Military Affairs and Public Safety and the Department of Health and Human Resources in writing confirms the named Plaintiffs are

---

[3] *See State of West Virginia ex rel. McGraw v. Purdue Pharma, et al.* (McDowell County Civil Action No. 01-C-137-S); *State of West Virginia ex rel McGraw v. Warrick Pharmaceuticals, et al.* (Kanawha County Civil Action No. 01-C-3011); *State ex rel. McGraw v Minnesota Mining, et al.* (Lincoln County Civil Action No. 03-0107).

[4] In a case in this Circuit, *State ex rel. McGraw v Minnesota Mining, et al,* (Lincoln County Civil Action No. 03-C-0107), Chief Judge Hoke denied a Motion to Dismiss where similar "standing" arguments were made as are made here.

authorized to bring the instant claims in the name of the State. (*See* Ex. A to State's Resp. to H.D. Smith's M.T.D.).

28.  Defendants' "standing" argument ignores the well-recognized right of a State, through its officers, to bring a proprietary suit in which it sues much like a private party suffering a direct, tangible injury or to bring a *parens patriae* suit to vindicate "quasi-sovereign" interests on behalf of its citizens.

29.  "A State may bring a proprietary suit in which it sues much like a private party suffering a direct, tangible injury. . . . It may also bring a *parens patriae* suit in which it seeks to vindicate a 'quasi-sovereign' interest on behalf of its citizens. . . . A State's 'quasi-sovereign' interests include protecting the 'health and well-being—both physical and economic—of its residents in general.'" *In re Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591, 601 (S.D.N.Y. 2011) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601–02, 607 (1982); citing *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 119 (2d Cir. 2002)).

30.  The Court concludes the State has standing, first, by virtue of its direct, tangible injury, and second, by its *parens patriae* authority.

## PARENS PATRIAE STANDING

31.  In *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600-01 (1982), the United States Supreme Court held Puerto Rico had *parens patriae* standing to seek redress from private parties for discriminating against its citizens. The Court held a State may sue in court to enforce its quasi-sovereign interests, that "consist of a set of interests that the State has in the well-being of its populace[.]" *Id.* at 602. This includes "both [the] physical and economic" well-being "of its residents in general." *Id.* at 607. "Although more must be alleged than injury to an identifiable group of individual residents, the indirect effects of the injury must be considered as

10

well in determining whether the State has alleged injury to a sufficiently substantial segment of its population." *Id.* at 607.

32.    *Snapp* illustrates the basic point that a statute need not expressly provide for suit by states in a quasi-sovereign capacity in order for such standing to be found. *See, e.g., Maryland v. Louisiana*, 451 U.S. 725, 735-39 (1981) (state's suit in *parens patriae* on behalf of citizens as consumers of natural gas recognized without statutory text).

33.    The only limit on a State's *parens patriae* standing is that a State may not sue in its quasi-sovereign capacity when it is solely a nominal party representing the interests of others. *Id.* The Court concludes *Snapp, supra*, and *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439 (1945) are applicable here. The State is not a mere nominal party to this suit, is asserting damages in its own right, and is seeking to protect the health and well-being of its citizens. As stated in paragraph 1 of the Amended Complaint:

> "This civil action addresses the epidemic of prescription drug abuse and its costs to the State of West Virginia. Prescription drug abuse costs the State of West Virginia hundreds of millions of dollars annually. Beyond the actual dollars lost, prescription drug abuse devastates West Virginia communities and families and reduces the State's economic productivity. The damage done by prescription drug abuse adversely affects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the very quality of life in our cities and towns."

34.    The foregoing are the sorts of quasi-sovereign interests that give the State standing to sue under *Snapp, supra*. Thus, the State has "articulate[d] an interest apart from the interests of particular private parties." 458 U.S. at 607. The Court concludes the State has *parens patriae* standing here.

### THE ATTORNEY GENERAL'S COMMON LAW POWERS

35.     In *Syllabus* Point 3 of *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W. Va. 227,

744 S.E.2d 625, 627 (2013), the Supreme Court of Appeals affirmed that the Office of Attorney

General retains inherent common law powers:

> "The Office of Attorney General retains inherent common law powers, when not
>
> expressly restricted or limited by statute. The extent of those powers is to be
>
> determined on a case-by-case basis. Insofar as the decision in *Manchin v.*
>
> *Browning*, 170 W.Va. 779, 296 S.E.2d 909 (1982), is inconsistent with this
>
> holding, it is expressly overruled."

36.     "Under the common law, the attorney general has the power to bring any action which

he or she thinks necessary to protect the public interest, a broad grant of authority which includes

the power to enforce the state's statutes.  In the exercise of these common law powers, an

attorney general may control and manage all litigation on behalf of the state[.]" 7 Am.Jur.2d

*Attorney General* § 6 at 11 (2007).

37.     "Pursuant to his or her statutory, constitutional, or common-law powers as the chief law

officer of the state, the attorney general may institute, conduct and maintain all such suits and

proceedings as he or she deems necessary for the enforcement of the laws of the state, the

preservation of order, and the protection of public rights." *Id.* § 21 at 26.

38.     It is acknowledged generally an attorney general is the proper party to determine the

necessity and advisability of undertaking or prosecuting actions on the part of the state[.]" *Id.* §

23 at 27.

39.     Defendants do not argue the Attorney General's common law power to bring this suit is

"expressly restricted or limited by statute," as required by *State ex rel. Discover Fin. Servs., Inc.*

*v. Nibert, supra.*  Instead, they assert the Attorney General's common law authority has been

limited *impliedly*. The Court concludes that because there is no *express* statutory restriction or limitation on the Attorney General's common law powers, the Attorney General has standing to bring the instant claims on behalf of the State, and Defendants' arguments to the contrary fail.[5]

## THE AMENDED COMPLAINT STATES VALID CAUSES OF ACTION

40.     The State asserts claims for, *inter alia*, negligence.

41.     "'The liability to make reparation for an injury, by negligence, is founded upon an original moral duty, enjoined upon every person, so to conduct himself, or exercise his own rights, as not to injure another.'" *Syllabus* Point 1, *Robertson v. LeMaster*, 171 W. Va. 607, 301 S.E.2d 563 (1983) (internal citation omitted).

42.     "One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." *Id. Syl.* Pt. 2.

43.     The Court concludes the State's negligence claims constitute valid claims. The State alleges Defendants engaged in affirmative conduct, that is, the heavy distribution and sale of addictive controlled substances to Pill Mill pharmacies in unusually large amounts for the population base, when they knew or should have known that the distribution of addictive controlled substances in such amounts in such areas would be diverted and/or improperly used thereby creating an unreasonable risk of harm and damage to others, in the form of increased crimes and other public health and safety dangers in West Virginia communities. (*See, e.g.*, Am. Compl. ¶¶ 3, 29). *Syl. Pts.* 1 and 2, *Robertson v. LeMaster*, 171 W. Va. 607, 301 S.E.2d 563 (1983).

44.     Moreover, questions of negligence are for the jury, not for the Court on a motion to

---

[5] Even if the Attorney General lacked common law authority, he would have standing under *W. Va. Code* § 60A-5-501(c), both independently and pursuant to the request of the State Police – he is not expressly restricted to taking only such actions on behalf of the State as requested by the Board of Pharmacy, as asserted by Defendants

dismiss. "'The questions of negligence and contributory negligence are for the jury when the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them.'" *Id. Syl.* Pt. 5 (internal citation omitted). Thus, questions of negligence presented by the State's Amended Complaint are for a jury, not for a court on a motion to dismiss.

### PRIVATE CAUSE OF ACTION UNDER THE CONTROLLED SUBSTANCES ACT

45.     *West Virginia Code* § 55-7-9 permits the recovery of damages stemming from a violation of a statute:

> "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."

46.     A violation of a statute or ordinance can constitute actionable negligence. *Syllabus* Point 4, *State Rd. Comm'n v. Ball*, 138 W. Va. 349, 350, 76 S.E.2d 55 (1953) ("The violation of a statute or ordinance, which is the proximate cause of an injury or contributed thereto, constitutes actionable negligence.").

47.     Even if the State had not presented valid negligence claims pursuant to *Robertson v. LeMaster, supra*, the violation of a statute also is *prima facie* evidence of negligence, provided such violation is the proximate cause of injury. *See, e.g., Powell v. Mitchell*, 120 W.Va. 9, 196 S.E. 153 (1938); *Porterfield v. Sudduth*, 117 W.Va. 231, 185 S.E. 209 (1936). *See also Syl* Pt. 1, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990) ("Violation of a statute is *prima facie*

evidence of negligence.")[6]

48.     Whether a private cause of action exists based on a violation of a statute is determined by applying the four part test set forth in *Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980). *Syllabus* Point 1 of *Hurley, supra*, states:

> "The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government."

49.     The Court concludes the State and its agencies are Plaintiffs in this case as representatives of the State and the public, for whose benefit the statute and accompanying regulations was enacted, so the first prong of the *Hurley* test is satisfied.

50.     As for the second factor of "legislative intent," our Supreme Court has cautioned that, "state statutes often have sparse legislative history or none at all . . . and in its absence, a state court would be unable to utilize the second factor. *Hurley, supra*, 262 S.E.2d at 762.[7]   Such is the case here, as no "legislative history" exists.

51.     As for the third *Hurley* factor, it has been held that, "a private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute. *Hurley*, 262 at 762, quoting *Cort v Ash*, 441 U.S. at 703.  The Court concludes the State's causes of action are helpful to the

---

[6] The same is true for violations of regulations. *See Hersh v. E T Enterprises, Ltd. P'ship*, 232 W.Va. 305, 752 S.E.2d 336, 342 (2013); *see also Syllabus* Point 1, in part, *Miller v. Warren*, 182 W.Va. 560, 390 S.E.2d 207 (1990); *Syllabus* Point 1, in part, *Johnson v. Monongahela Power Co.*, 146 W.Va. 900, 123 S.E.2d 81, 83 (1961).

[7] It is not necessary to show an intention to create a private cause of action, although an explicit purpose to deny such cause of action would be controlling." *Hurley, supra*, 262 S.E.2d at 761-62. The Court finds no "explicit purpose to deny such cause of action" here.

statutory purpose – it is alleged by the State that there is an epidemic of prescription drug abuse in West Virginia, and that the Defendants put their desire for profits above and beyond their duty to put in place effective controls and procedures to prevent diversion of controlled substances and wholly failed in their duties to design and implement a system to disclose suspicious orders. The Court agrees the remedies sought by the State here, including damages, will be "helpful" to accomplish the statutory purposes of putting in effective controls against controlled substance diversions and reporting suspicious orders. Therefore, the Court concludes the third prong of *Hurley* is satisfied.[8]

52.     As to the fourth factor, the pending matter is not an area delegated exclusively to the federal government; thus, the factor is satisfied.

53.     On balance under *Hurley*, the private cause of action plead by the State exists.

## PUBLIC NUISANCE

54.     "Generally, [public nuisance] has been described as 'the doing of or the failure to do something that injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public." *State ex rel. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245 n. 28, 488 S.E.2d 901, 925 n. 28 (1997).

55.     The Court concludes the Amended Complaint sufficiently alleges Defendants either did something or failed to do something that injuriously affected the safety, health, and morals of the public, or worked some substantial annoyance, inconvenience or injury to the public – which is the accepted definition of "public nuisance".

56.     Our Supreme Court of Appeals repeatedly has explained a public nuisance: "'is an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons. . . .

---

[8] The Court concludes the fourth prong of the *Hurley* test is not relevant, as the State's claims are based on state laws and therefore do not intrude on federal authority.

[A] public nuisance . . . affects the general public . . . .'" *Kermit Lumber*, 200 W. Va. at 241, 488 S.E.2d at 921 (internal citations omitted).[9]

57.     West Virginia law on public nuisance is consistent with the definition of "public nuisance" in 4 Restatement of the Law 2d, *Torts* (1965) ("Restatement"), which explains that a "public nuisance" is "an unreasonable interference with a right common to the general public." 4 Restatement of the Law 2d, *Torts* § 821B(1).

58.     An "unreasonable interference" includes acts that significantly interfere with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware. *Id.* § 821B(2); see Am. Compl. ¶ 8.[10]

59.     The Court concludes the Amended Complaint's allegations fit squarely within the definition of a public nuisance under West Virginia law.  The State alleges Defendants "failed to do something," that is, they failed to provide effective controls against the diversion of controlled

---

[9] Our Supreme Court has stated that a nuisance has a "broad definition" and that "nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations." *Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616, 621 (1985) (emphasis added).  In *Sharon Steel*, the Court stated:

"A nuisance is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable.... A nuisance is anything which interferes with the rights of a citizen, either in person, property, the enjoyment of his property, or his comfort.... When the prosecution of a business, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well being, comfort, repose, and enjoyment of the ordinary normal individual residing therein, the carrying on of such business in such locality becomes a nuisance, and may be enjoined." (Citations omitted).

*Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616, 620-621 (1985) (quoting *Martin v. Williams*, 141 W.Va. 595, 610 11, 93 S.E.2d 835, 844, 56 A.L.R.2d 756, 768 (1956)).

[10] To the extent Defendants attempt to recast the State's public nuisance claim as one that attaches to the *lawful distribution* of controlled substances, similar to the lawful sale of firearms, their argument has no merit.  The cases they cite are distinguishable and off-point because the Amended Complaint alleges something very different – that Defendants' distribution of controlled substances in West Virginia violated well-established regulations and industry standards requiring them to provide effective controls against the diversion of controlled substances and design and operate a system that discloses suspicious orders of controlled substances.

substances and failed to design and operate a system that discloses suspicious orders of controlled substances, failed to live up to industry standards – each one a failure that "injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public." *Kermit Lumber*, 200 W. Va. at 245 n. 28, 488 S.E.2d at 925 n. 28; *Rush v. Concrete Materials & Construction Co.*, 238 P.2d 704, 707 (Kan. 1951) ("all those who contribute" to the nuisance are liable, and one who creates the nuisance continues to be liable as long as the nuisance continues).

60.     To the extent Defendants argue the Legislature intended to immunize their conduct from a "public nuisance" claim because the Controlled Substances Act ("CSA") includes a criminal law provision deeming stores where "drug paraphernalia" are sold to be a *per se* public nuisance, while not addressing the massive harm allegedly done by Defendants' acts and omissions, the Court rejects this contention. The "maxim" of *"expressio unius est exclusio alterius"* argued by Defendants is not a rule of law, but rather a mode a statutory construction used to delineate legislative intent. There is nothing about the criminalizing of the selling of "drug paraphernalia" that suggests the Legislature intended to thereby remove a claim of public nuisance for wrongful conduct in the distribution of controlled substances. In an analogous situation, our Supreme Court in *Reed v. Phillips*, 192 W. Va. 392, 398, 452 S.E.2d 708, 714 (1994) held a statute limiting civil liability where smoke detectors are required in one statutory section applied only to that section, and would not limit tort liability relating to smoke detectors generally. By the same logic, the *expressio unius est exclusio alterius* maxim does not apply because the Legislature, in a separate section addressing drug paraphernalia crimes that have nothing to do with the Defendants' duty of care in distributing drugs to Pill Mill pharmacies, cannot be said to have intended to limit the State's ability to pursue public nuisance claims here.

61.     The Court further concludes that *W. Va. Code* § 60A-4-404 expresses the opposite

legislative intent to that asserted by Defendants – declaring that any penalty or sanction listed in

the Act is "in addition to, and not in lieu of, any civil or administrative penalty or sanction

otherwise authorized by law, which would include the State's public nuisance claim." *Id.* Thus,

the Court concludes the Legislature's intent was not to make the per se public nuisance of

buildings where drug paraphernalia is sold the exclusive provision addressing a public nuisance,

but rather it was intended to be in addition other civil sanctions and remedies such as the public

nuisance claim asserted by the State here.

62.     Defendants also argue the State has not alleged any rights "common to the general

public" to which they have interfered.  The Court disagrees.  In paragraph 44 of the Amended

Complaint, the State alleges Defendants interfered with West Virginians' common right,

> "to be free from unwarranted injuries, addictions, diseases and sicknesses and
> have caused ongoing damage, hurt or inconvenience to West Virginia residents
> exposed to the risk of addiction to prescription drugs, who have become addicted,
> and/or have suffered other adverse consequences from the use of the addictive
> prescription drugs distributed by Defendants, and countless others who will suffer
> the same fate in the future as Defendants' conduct is continuing."

(Am. Compl. ¶ 44). The State further alleges in paragraph 51 of the Amended Complaint that a

"public nuisance so created, injuriously, and in many areas pervasively, affects West Virginia

communities and the State, and endangers the public health and safety and inconveniences the

citizens of the State in many ways, including:

•       Hospital services, especially those services provided by emergency rooms, are being
consumed by persons with prescription drug abuse issues;

•       Law enforcement and prosecutorial resources are being exhausted and consumed by
having to address prescription drug abuse issues to the exclusion of other matters;

•       Public resources are being unreasonably consumed in efforts to address the prescription
drug abuse epidemic, thereby eliminating available resources which could be used to benefit the
public at large;

19

- Court dockets are congested by prescription drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our courts by others;

- Jails and prisons suffer from overcrowding;

- Crimes and other dangerous activities have increased[.]"

63. The Court concludes the State's public nuisance claim sufficiently alleges the safety and health and morals of the people of West Virginia has been compromised due to Defendants' alleged wrongful influx of addictive, controlled substances into West Virginia, thereby causing substantial injury to West Virginia citizens and taxpayers. At the pleading stage, all facts and inferences therefrom supporting the public nuisance claim must be taken as true, and because the Amended Complaint sufficiently asserts a claim for public nuisance, the motion to dismiss that claim is denied.[11]

## PROXIMATE CAUSE

64. Under West Virginia law, questions of negligence and proximate cause are questions of fact for a jury to determine. *Aikens v. Debow*, 541 S.E.2d 576, 580 (W.Va. 2001); *Wehner v. Weinstein*, 444 S.E.2d 27, 32 (W.Va. 1994); *see Chapman*, 236 S.E.2d at 211-212. "A party in a tort action is not required to prove that the negligence of one sought to be charged with an injury was the sole proximate cause of an injury." *Syllabus* Point 2, in part, *Everly v. Columbia Gas of West Virginia, Inc.*, 171 W.Va. 534, 301 S.E.2d 165 (1982). Defendants' argument for dismissal on this basis is denied.

---

[11] To the extent it is argued that a comment in 4 Restatement of Law 2d, *Torts* to the effect that the one person's right to be free from a criminal assault is an individual right as opposed to common right applies to the statewide crime surge and other damages caused by the prescription drug epidemic to which the Defendants contributed is not an actionable public nuisance, the Court concludes the Restatement comment is meant to address something very different than what the State alleges here. The State's Amended Complaint does not allege that the public nuisance is one single assault, but rather that the prescription drug abuse fueled by Defendants' acts and omissions make up 90% of the criminal docket in some counties and has changed the way of life in many West Virginia communities. The Restatement comment cited by Defendants is not directed in any way towards the conduct alleged in the State's Complaint and therefore does not apply.

## FORESEEABLE CRIMINAL ACTS

65.     West Virginia case law holds the element of causation may be satisfied even where the immediate cause of the injury was a criminal act by a third party.  For example, in *Osborne v. U.S.*, 166 F.Supp.2d 479 (S.D.W.Va. 2001), Chief Judge Haden applied West Virginia law to hold that a doctor's treatment of a patient, whereby he persistently prescribed addictive medications over a period of several years to a known drug and alcohol abuser, fell below the appropriate standard of medical care and treatment and was the proximate cause of the death, injuries, and damages suffered by plaintiffs in a motor vehicle accident in which a wife and daughter were injured and a husband was killed by the drug abuser. *Osborne v. U.S.*, 166 F.Supp.2d at 493.  In rejecting the defense's contention that the plaintiffs could not show proximate cause because of the actions of the drug abuser, the court noted: "For the plaintiff to prove his case, he need not show his injury resulted solely from the physician's negligence." *Id.* at 498.  This case later was certified to the Supreme Court of Appeals, which upheld the finding of liability, noting it agreed with Chief Judge Haden's finding that all of the elements of liability, including proximate cause, had been met. *Osborne v. U.S.*, 211 W. Va. 667, 675 n. 15, 567 S.E.2d 677, 685 n. 15 (2002).

66.     In *Miller v. Whitworth* 455 S.E.2d 821 (W.Va. 1995), our Supreme Court refused to fashion a bright-line rule that a landlord can never be held liable for injuries a tenant receives from a third party's criminal activity.  Noting that the landlord's duty should be determined on a case-by-case basis, the Court found that "when the landlord could reasonably foresee that his own actions or omissions have unreasonably created or increased the risk of injury from the intentional criminal activity," such a duty would arise. *Id.*

67.    In *Blake v. John Skidmore Truck Stop*, 493 S.E.2d 887 (W.Va. 1997), our Supreme Court overturned a directed verdict in favor of the defense.  The case involved a deliberate-intent claim against the plaintiff's employer for failure to provide appropriate security at the convenience store where the plaintiff worked.  The plaintiff was stabbed repeatedly and suffered serious injury during a robbery of the convenience store.  The defendant argued that, because criminal acts are unforeseeable, the employer could not possibly have "a subjective realization" of the risk as required by the deliberate-intent statute.  The lower court agreed.  However, our Supreme Court reversed, finding that "such a contention [did not] comport with common sense." *Id.* Thus, even in a deliberate-intent action, where the plaintiff carries a heavy burden to prove the employer's "subjective realization" of the risk, a criminal act by a third party does not break the chain of causation.

68.    In *Marcus v. Staubs*, 230 W. Va. 127, 736 S.E.2d 360 (2012), our Supreme Court held the issue of whether subsequent acts of minors and their friends in illegally consuming alcohol, stealing a vehicle, and recklessly operating the vehicle without a license while intoxicated amounted to intervening causes in a negligence action brought against an individual who allegedly helped supply minors with alcohol were questions for a jury.

69.    In West Virginia, intervening criminal acts break the chain of causation only when they are unforeseeable. *In re Flood Litigation*, 216 W.Va. 534, 607 S.E.2d 863, 878 (W.Va.2004). Additionally, "an intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury." *Sydenstricker v. Mohan*, 217 W.Va. 552, 618 S.E.2d 561, 568 (2005) (emphasis added).  That is not the case here.

22

70.     The Court concludes Defendants are unable to show any "intervening cause" constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury, as required by *Sydenstricker, supra.* Therefore, the "intervening causes" argument fails.

71.     There may be more than one proximate cause of an injury. When several factors contribute to produce an injury, one actor's negligence will be considered a proximate cause of the harm if it was a substantial factor in producing the injury. *Hundall v. Mate Creek Trucking, Inc.,* 200 W.Va. 454, 490 S.E.2d 56, 59 60 (1997).

72.     Whenever causation is required to be proved, it is well settled that causation of an injury or loss can be, and often is, the result of multiple causes. A defendant's conduct need not be the sole proximate cause. "A party is at fault when his or her negligence or fault was a proximate cause or *contributing factor* to the event which brought about the damages for which the claim is made." *Shia v. Chvasta,* 377 S.E.2d 644 (W.Va. 1988). In a concurrent negligence case, the fault of the defendant tortfeasor need only be a cause of the injury. *See, e.g., Everly v. Columbia Gas,* 301 S.E.2d 165 (W.Va. 1983). Moreover, "a plaintiff may sue any or all of those responsible for his injuries and collect his damages from whoever is able to pay, irrespective of their percentage of fault." *Syl.* Pt. 3, *Miller v. Monongahela Power Co.,* 403 S.E.2d 406 (W.Va. 1991)("makes no difference whether Monongahela was 90 percent at fault or 1 percent at fault as long as the plaintiff was not more than 50 percent at fault." (Citing *King v. Kayak Mfg. Corp.,* 387 S.E.2d 511 (W.Va. 1989)).

73.     The Court concludes the Amended Complaint alleges facts from which a jury could conclude Defendants' acts and omissions were a "substantial factor" producing damage to the

State and its citizens.[12]  Foreseeability is the touchstone.  The Court concludes that if it was foreseeable that Defendants' acts and omissions, in failing to provide effective controls against the diversion of controlled substances and design, and in failing to operate a system that discloses suspicious orders of controlled substances contributes to the prescription drug abuse epidemic in West Virginia, then Defendants' alleged actions constitute a proximate cause; a jury may conclude from the State's allegations that Defendants' alleged actions were a substantial contributing factor to the harm and damage alleged by the State in this case.

## THE *ARBAUGH* CASE

74.     The State alleges Defendants, as distributors of controlled substances, have a duty, *inter alia*, to report suspicious orders they receive from "Pill Mills."  It is alleged Defendants habitually and unlawfully fail to do so in order to profit from these dubious orders.  Defendants argue their wrongful failure to report suspicious orders of controlled substances can never be the proximate cause of damages as a matter of law based on *Arbaugh v. Bd. of Educ.*, 214 W.Va. 667, 591 S.E.2d 235 (2003).

75.     The Court concludes the *Arbaugh* case does not hold that a "failure to report" never can be the proximate cause of damages.  To the contrary, *Arbaugh* states that a cause of action "may be brought based on negligence with the failure to report admissible as evidence in that context." *Arbaugh, supra* at 684., *but cf. Barbina v. Curry*, 221 W. Va. 41, 47, 650 S.E.2d 140, 146 (2007) (*Arbaugh* "states only that in a properly brought negligence action, a plaintiff may introduce evidence regarding failure to report. However, such evidence is not the basis for a cause of action; rather, it is evidence to support a legally recognized cause of action.").

---

[12] The primary case upon which they rely for their proximate cause arguments (an unpublished federal district court opinion) recognizes, "West Virginia does require that an intervening illegal act be unforeseeable[.]" *Bertovich v. Advanced Brands & Importing Co.*, 2006 WL 2382273 (N.D.W.Va. 2006).

76.    Moreover, *Arbaugh* discusses difficulties of establishing proximate cause solely in the context of reporting child abuse:

> "The problems with causation are further complicated when one considers that the statute conditions the reporting requirement on the exercise of judgment of an individual reporter who may become aware of a possible case of child abuse only through rumors, innuendo or second-hand reports. The diverse backgrounds, professions and occupations represented in the statutorily defined class of persons required to report make it all the more difficult to define what conduct is required in various conceivable situations."

*Id.*, 591 S.E.2d at 240.

77.    The Court concludes the reporting duties of the Defendant drug distributors are substantially different from the duty to report placed on certain professionals to report child abuse – unlike those upon whom a duty to report child abuse is placed, Defendants are intimately connected with and profit from the sale of dangerous, addicted controlled substances – so along with the privilege to profit from the sale of these addictive drugs, there is a duty imposed upon them to provide effective controls and procedures to guard against diversion of those addictive controlled substances, and also to "design and operate a system" to report suspicious orders like those at issue in this case.[13]

78.    Because Defendants must "design and operate a system" to report suspicious orders, and also provide effective controls and procedures to guard against diversion of those addictive controlled substances, their duties and the conduct they are required to report are not vague or "difficult to define" as was the case in *Arbaugh* . Moreover, Defendants' duty to report is only

---

[13] Defendants have the duty to "provide effective controls and procedures to guard against . . . diversion of controlled substances [and] shall design and operate a system to disclose to the registrant suspicious orders of controlled substances[.]" 15 *W.Va.C.S.R.* §§ 2-4.2.1 - 4.4.

part of the breach of duty alleged by the State. The reporting duty complements Defendants'

specific duty to put in place effective controls and procedures to guard against diversion of the

addictive controlled substances they sell and distribute, duties that do not exist for those who are

supposed to report child abuse. Thus, *Arbaugh's* reasoning, which addresses the much more

limited duty to report child abuse by professionals who might happen to come into contact with

abused children, is inapposite, and is limited to the reporting of child abuse by licensed

professionals. Defendants' arguments for dismissal based on *Arbaugh* are denied.

## WVCCPA

79.     The purpose of the West Virginia Consumer and Credit Protection Act ("WVCCPA") is

to protect the public and promote sound business practices. See *W. Va. Code* § 46A-6-101.

80.     West Virginia Code § 46A-6-104 is "among the most broadly drawn provisions" in the

WVCCPA, *McFoy v. Amerigas*, 295 S.E.2d 16, 19 (W. Va. 1982), and must be interpreted

liberally to further its remedial purposes. *State ex rel. McGraw v. Scott Runyan Pontiac-Buick,*

*Inc.* 194 W.Va. 770, 778, 461 S.E.2d 516, 524 (1995); *see also State ex rel. McGraw v. Rite Aid*

*of WV, Inc.*, Civil Action 09-C-217 (Cir. Ct. Boone Cty. March 15, 2011 ¶ 9).

81.     Likewise, the Attorney General has broadly-stated powers under Article 7 of the

WVCCPA, and those powers are to be interpreted broadly. *Scott Runyan*, 194 W.Va. at 779,

781, 461 S.E.2d at 525, 527; *see also State ex rel. McGraw v. Rite Aid of WV, Inc., supra* ¶ 9.

82.     In its Amended Complaint, the State alleges Defendants engaged in improper and illegal

sales of prescription drugs to Pill Mills without the proper anti-diversion controls (as mandated

by state regulations). (Am. Compl. ¶¶ 2-5, 8). The State further alleges this conduct of

Defendants has caused and continues to cause harm to the public. (*Id.* ¶¶ 1, 6). Under the

Attorney General's broadly-worded and broadly-interpreted authority in Article 7, the State

asserts the aforementioned conduct by Defendants constitutes an illegal "unfair or deceptive act or practice in the conduct of any trade or commerce," under the plain and broad wording of *W. Va. Code* § 46A-6-104.

83.     Essentially, Defendants make two arguments. *First*, Defendants argue the alleged conduct is not unfair. The list of specifically-enumerated practices in W. Va. Code § 46A-6-102(f) contain the previous qualifier that an unfair or deceptive act or practice ("UDAP") "includes, but [is] not limited to" that specifically-enumerated list. *W. Va. Code* § 46A-6-102(7); *see also State ex rel. McGraw v. Rite Aid of WV, supra,* ¶ 10. This language indicates the list is not exclusive, and other conduct can constitute unfair or deceptive acts or practices.[14]  *Id.* Defendants counter that not all violations of a statute or regulation are unfair. Other courts have articulated such a limit and stated, "[a]n unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Kertesz v. Net Transactions, Ltd.,* 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009).[15] This question of "unfairness" is decided on a case-by-case basis. *See, e.g., Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010). The State has pled that Defendants have profited off of the prescription drug epidemic by ignoring state-law anti-diversion regulations, thereby supplying Pill Mills. (Am. Compl. ¶¶ 2-4). That meets the pleading requirement of unfairness at

---

[14] The importance of *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 516 F. Supp. 2d 1072, 1118 (N.D. Cal. 2007) is over-stated by Defendants. While the court noted the private antitrust (price-fixing) suit brought by indirect purchaser businesses did not allege conduct similar to that enumerated in the non-exhaustive list of examples of UDAP's, it found dispositive the fact that, "the provision of the WVCCP that authorizes plaintiffs' private action expressly states that any such action may only be brought by a person or persons injured as a result *'of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article[.]'" Id.* (emphasis in original). The same limitation does not apply to the State's WVCCPA claim in this case. *DRAM* does not require a different result here.

[15] *See also PNR, Inc. v. Beacon Property Management, Inc.,* 842 So.2d 773, 777 (Fla. 2003) (same); *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla.Dist.Ct.App.2006) (same); *Speigel v. FTC,* 540 F.2d 287, 293 (7th Cir.1976); *Newcomb v. Cambridge Home Loans, Inc.,* 861 F. Supp. 2d 1153, 1168 (D. Haw. 2012); *Walker v. Fleetwood Homes of N. Carolina, Inc.,* 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007); *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981).

this stage. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008) ("Although the complaint does not use specifically the words "immoral, unethical, oppressive, or unscrupulous," it alleges conduct that, if proven, could support this statutory definition of unfairness under the Consumer Fraud Act."). Accordingly, Defendants' first basis for dismissal of the WVCCPA claim is rejected.

84.     *Second*, Defendants attempt to read into the WVCCPA a requirement that Defendants must make a sale directly to a "consumer" (as that term is defined in the WVCCPA) in order for the State to have a valid WVCCPA claim. To the extent Defendants seek to write in such a requirement, that is simply not contained in the language of *W. Va. Code* § 46A-6-104 or Article 7. Nothing about the declaration in § 46A-6-104 banning unfair or deceptive acts or practices in any trade or commerce indicates that statute only protects and applies to a defendant's sales made directly to a "consumer." Two published opinions, *Fed. Trade Comm'n v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 10 (D.D.C. 1999) and *West Virginia ex rel. McGraw v. Minnesota Mining and Mfg. Co.* ("3M"), 354 F. Supp.2d 660, 667 (S.D. W. Va. 2005), have noted that the UDAP statute and Article 7 do not require a defendant to make a sale directly to a "consumer." *See id.*; *see also State ex rel. McGraw v. Rite Aid of WV, Inc., supra*, ¶ 11. In reply, Defendants essentially cite two other authorities, but neither change the result in this case.

a.     Defendants cite the unpublished opinion of *Cather v. Seneca Upshur Petroleum, Inc.*, 2010 WL 3271965, *7 (N.D. W.Va. Aug. 18, 2010). *Cather* concluded: "Because the plaintiffs . . . are lessors of oil and natural gas, and not 'consumers' as defined in W. Va.Code § 46A-6-102(2) or 46A-1-102, the WVCCPA does not provide them with a legal remedy in this case." *Id.* In *Cather*, the WVCCPA claim was not permitted to go forward because of the type of plaintiffs asserting

28

the claim. While the lessors of natural gas in *Cather* could not assert their WVCCPA claim under Article 6, there is nothing that precludes the State from bringing its claim pursuant to the Attorney General's powers in Article 7 of the WVCCPA. Furthermore, *Cather* even acknowledges *W.Va. Code* § 46A-6-104 "does not require a consumer or consumer transaction."[16]

b.   Defendants also note that the title of Article 6 of the WVCCPA is "General Consumer Protection." Though the State may focus on Defendants' transactions that do not involve a sale directly to a "consumer," (as it is defined in the WVCCPA), the State nevertheless is seeking to "protect consumers" through Count III of this lawsuit. The title, therefore, does not add a requirement into the State's enforcement of W. Va. Code § 46A-6-104 that Defendants must make a sale directly to a "consumer."[17]   The Court concludes the WVCCPA claim may proceed.[18]

---

[16] Another point of clarification is needed regarding *W. Va. Code* § 46A-1-104, to which *Cather* and Defendants make reference. Two published opinions specifically have rejected the use of *W. Va. Code* § 46A-1-104 as a means of limiting other provisions of the WVCCPA. In *Polis v. Am. Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 686 (S.D. W.Va. 2002) and *Rhoades v. W. Virginia Credit Bureau Reporting Servs., Inc.*, 96 F. Supp. 2d 528, 534 (S.D.W.Va. 2000), the Southern District of West Virginia underscored that § 1-104 is a choice-of-law provision that does not say WVCCPA only applies to the kinds of consumer transactions described in that specific choice-of-law provision. This point is even more poignant where, as here, the Attorney General's broad powers in Article 7 are at stake. The Attorney General's powers in Article 7 cannot be constrained by the choice-of-law provision in *W. Va. Code* § 46A-1-104, and the Court follows the lead of *Polis* and *Rhodes* in refusing to extrapolate from *W. Va. Code* § 46A-1-104 to "wipe out almost all of the WVCCPA." *Rhoades*, 96 F. Supp.2d at 534.

[17] Defendants also cite *White v. Wyeth*, 227 W. Va. 131, 705 S.E.2d 828 (2010), *State ex rel. McGraw v. Bear Stearns*, 217 W. Va. 573, 618 S.E.2d 582 (2005), and *Forster v. Pierce Cnty.*, 99 Wash. App. 168, 991 P.2d 687 (2000). Neither control the WVCCPA claim alleged here. In *White*, the holding dealt with "[t]he private cause of action afforded consumers under *West Virginia Code* § 46A 6 106(a)[.]." *Syl.* Pt. 6, *White v. Wyeth*, 227 W. Va. 131, 133, 705 S.E.2d 828, 830 (2010). Here, Section 106 is not at issue, and the State, not individual consumers, brings this action under the broader and liberally-construed powers afforded to it in Article 7 of the WVCCPA, specifically *W. Va. Code* §§ 46A 7-108, 110, and 111.
In *Bear Stearns*, the issue was whether an express exemption in the WVCCPA for buying and selling securities (*W. Va. Code* § 46A-1-102(21)) could be bypassed by the fact that advice was given in the selling of the securities. *Id.* 217 W. Va. at 579, 618 S.E.2d at 588. *Bear Stearns* reasoned "the service of providing investment advice and analyses is so ancillary or subsidiary to the buying and selling of securities" such that it falls within this statutory exemption embodied in the WVCCPA. *See id.* 217 W. Va. at 577, 618 S.E.2d at 586. Our Supreme Court

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

85. Article 8 of the Controlled Substances Act ("CSA") is a licensing statute. "The Wholesale Drug Distribution Licensing Act of 1991" added Article 8 to the CSA. *W.Va. Code* § 60A-8-1. The purpose of Article 8 was to ensure that those selling prescription drugs would be licensed by the Board of Pharmacy. *Id.* § 60A-8-3. Under Article 8 of the CSA, however, even the Board of Pharmacy is limited to taking action against a distributor's license, imposing a penalty "not to exceed $1,000," and, in certain limited circumstances, placing drugs under seal. *Id.* § 60A-8-14(a), (c).

86. By contrast, Article 5 of the CSA is entitled "Enforcement and Administrative Provisions." Article 5 explicitly recognizes the Board of Pharmacy is not the exclusive administrative body charged with enforcement of the CSA. For example, enforcement authority and various other responsibilities are bestowed upon the State Police (a subdivision of Plaintiff DMAPS). *See W.Va. Code* § 60A-5-501(a)(5), *W.Va. Code* § 60A-5-501(c)(3)-(6). Further, the Attorney General is charged with "assist[ing] in the enforcement of the act" and "cooperat[ing] with all agencies charged with the enforcement of the laws . . . of this state[.]" *W. Va. Code* § 60A-5-501(c). Article 5 further provides a judicial remedy: "The courts of record of this state have and may exercise jurisdiction to restrain or enjoin violations of this act." *Id.* § 60A 5 503(a).

---

was careful to explain "the legal issue before us is a narrow one" and the "opinion should not be read as an attempt to in any way diminish the power of the office of the Attorney General." *Id.* at 217 W. Va. at 579, 618 S.E.2d at 588.

In *Forster*, the Washington court explained at the outset, "[t]he question . . . is whether a person convicted of delivering drugs in 1972 has an unrestricted right to possess firearms in 1997." 99 Wash. App. at 170, 991 P.2d at 690. Neither of these cases compel the State's WVCCPA claim be dismissed here.

[18] To the extent Defendants continue to argue the State did not comply with pre-suit notice provisions, the notice provision in sub-section (b) only applies to claims brought by individuals pursuant to *W.Va. Code* § 46A 6 106 and does not apply to the State pursuant to its authority under Article 7 of the WVCCPA. Consequently, the Court concludes pre-suit notice is not a basis for dismissal of Count III.

87.     The Court concludes the State Plaintiffs were not required to exhaust administrative remedies for a multitude of reasons.

88.     *First*, there is no administrative remedy available to the State Plaintiffs in this case. "'The rule which requires the exhaustion of administrative remedies is inapplicable where no administrative remedy is provided by law.'" *Syl.* Pt. 3, *CBC Holdings, LLC v. Dynatec Corp., USA,* 224 W. Va. 25, 680 S.E.2d 40 (2009) (internal quotation omitted). The Attorney General, DMAPS, and DHHR are suing for money damages, statutory damages under the WVCCPA, attorney fees, injunctive relief, *etc.* (*See generally* Am. Compl.). They are not suing to revoke Defendants' licenses. (*See id.*). The administrative remedy provided in Article 8 of the CSA confers rights to the Board of Pharmacy, and the Board alone, to pursue the licensing privileges of drug distributors. Demonstrating this point is the fact that no party has argued the State Plaintiffs have authority under Article 8 to revoke Defendants' licenses.

89.     Contrary to Defendants' assertions, however, the two vague references to "complaints" and the like in W. Va. Code § 60A-8-10(a) and W. Va. Code § 60A-8-11(a) made in the context of the Board of Pharmacy's rights do not somehow convert the Board of Pharmacy's power over licensing and inspection of drug distributors into an administrative remedy available to the State Plaintiffs to appear before the Board. The sections Defendants rely on for their argument provide as follows:

**§60A 8 10. West Virginia board of pharmacy complaint provisions.**

Complaints arising under any provision of this article shall be handled as follows:

The board of pharmacy is hereby authorized and empowered, when complaints or examinations or inspections of a wholesale drug distributor disclose that a wholesale drug distributor is not operating or conducting business according to the state and federal laws, to file a written complaint with the board charging the holder of a license to operate a wholesale drug distributorship operation with violations of this article which are grounds for restriction, suspension or revocation of the wholesale drug distributor's license.

\* \* \* \*

**§60A 8 11. The West Virginia board of pharmacy inspection powers and access to wholesale drug distributor records.**

(a) A person authorized by the board may inspect during normal business hours any premises being used by a wholesale drug distributor in this state in the course of its business. Any wholesale drug distributor providing adequate documentation of the most recent satisfactory inspection less than three years old of such distributor's wholesale drug distribution activities and facilities by either the food and drug administration or a state agency, or any person or entity lawfully designated by a state agency to perform such inspection, determined to be comparable by the board shall be exempt from further inspection for a period of time to be determined by the board of pharmacy. Such exemption shall not bar the board from initiating an investigation pursuant to a public or governmental complaint received by the board regarding a wholesale drug distributor.

*Id.* (Boldface in original). These two sub-sections allow the Board of Pharmacy (and its designees) to take action against drug distributors' licensing privileges and to inspect drug distributors' premises. While these sections in Article 8 confer or limit rights of the Board of Pharmacy under the CSA, they do not limit the right of the State Plaintiffs to bring the instant claims. Because there is not an administrative remedy available to the State Plaintiffs in this case, there is no requirement that they exhaust one.

90.    *Second*, if these sections in Article 8 somehow can be construed to allow for an administrative remedy for the Attorney General, DMAPS and/or DHHR, it would be (at most) *permissive, not mandatory or exclusive.* Nowhere in Article 8 of the CSA, including all of the provisions cited by Defendants – *W. Va. Code* §§ 60A-8-7(h),[19] 60A-8-10, 60A-8-11, 60A-8-

---

[19] Defendants also contend that because *W. Va. Code* § 60A-8-7(b)(3) indicates the Board of Pharmacy may not issue a license to a drug distributor "unless the distributor operates in a manner prescribed by law," their licenses issued by the Board somehow amounts to conclusive proof that Defendants have complied with all laws. While Defendants offer the Board of Pharmacy's renewal of their licenses as having some sort of *res judicata* or collateral estoppel effect, the Court concludes the renewals are not conclusive proof that Defendants have complied with all laws and regulations for all of time which or warrant dismissal of the case. The Amended Complaint alleges Defendants violated state law, and the Court must accept those allegations as true at this stage of litigation.

14(a)-(c) and 15 *W.Va.C.S.R.* § 5.7.1 – is there a *requirement* that a state entity with damages caused by wrongful acts by a controlled prescription drug distributor make a complaint for damages with the Board of Pharmacy or otherwise work through the Board of Pharmacy's internal process of trying to restrict the drug distributor's license before proceeding to circuit court.[20] And so, there cannot be an exhaustion requirement imposed on the State Plaintiffs. *Syl. Pt. 6, Weimer v. Sanders,* 232 W. Va. 367, 752 S.E.2d 398, 401 (2013); *Collins v. Elkay Min. Co.,* 179 W. Va. 549, 554, 371 S.E.2d 46, 51 (1988); *see also State ex rel. McGraw v. Rite Aid of WV, Inc., supra,* ¶ 8.

91.     *Third and furthermore,* the CSA includes a specific statutory grant of authority to seek injunctive relief in court in *W. Va. Code* § 60A 5 503(a). Contrary to *W. Va. Code* §§ 60A-4-403 and 60A-8-12 in the CSA, which limit those judicial remedies to prosecuting attorneys, certain individuals, and the Board of Pharmacy, the judicial remedy in § 60A 5 503(a) of the CSA does not limit the State authorities who may pursue relief under that section. When a statute offers a judicial remedy, there can be no exhaustion requirement, absent an express statement by the Legislature. *Weimer,* 752 S.E.2d at 406 n. 4; *Syl. pt. 3, Beichler v. West Virginia Univ. at Parkersburg,* 226 W.Va. 321, 700 S.E.2d 532 (2010); *State ex rel. McGraw v. Rite Aid of WV, Inc., supra,* ¶ 8. There is no such statement by the Legislature in this context.

92.     *Fourth and moreover,* the inadequacy exception to the doctrine applies. "The exhaustion of administrative remedies doctrine is not ironclad; exceptions to the rule exist." *Hicks v. Mani,*

---

[20] Defendants hone in on the prelude to *W. Va. Code* § 60A-8-10, that provides: "Complaints arising under any provision of this article shall be handled as follows[.]" *Id.* (emphasis added). The parties differ over the meaning of the phrase, "shall be handled." The State contends it merely describes the mandatory processes the Board of Pharmacy must follow if it chooses to pursue a restriction on a distributor's license in terms of time periods as set out in *W.Va. Code* § 60A-8-10(b), *etc.* Defendants suggest the Board of Pharmacy has mandatory authority over regulation of prescription drug distributors. In any event, the word, "article," is dispositive. Any authority under § 60A-8-10 is limited to the Board of Pharmacy's undisputed regulation of licensing in "article" 8 (as indicated in the prelude to that section). And so, resolution of the dispute over the meaning of "shall be handled" makes no difference to the result here because either way the Board of Pharmacy does not have exclusive authority outside the licensing sphere.

230 W. Va. 9, 13 14, 736 S.E.2d 9, 13 14 (2012). Because relief is unavailable to the Attorney

General, DMAPS, or DHHR through any such CSA administrative licensing procedures and

because the Board of Pharmacy has no jurisdiction over WVCCPA enforcement actions, even if

the CSA's administrative remedies were exclusive and § 60A 5 503(a) did not confer the right to

seek judicial relief, those administrative remedies would be inadequate and therefore need not be

pursued. *See, e.g., Weimer*, 752 S.E.2d at 406 n. 5; *Collins*, 179 W. Va. at 551 52, 371 S.E.2d at

48; *Syl.* Pt. 2, *Wiggins v. E. Associated Coal Corp.*, 357 S.E.2d 745 (1987).

93.     *Fifth and lastly*, the futility exception to the doctrine applies as well. "The exhaustion

doctrine contemplates an efficacious administrative remedy." *State ex rel. Bd. of Educ. of*

*Kanawha Cnty. v. Casey*, 176 W. Va. 733, 735, 349 S.E.2d 436, 438 (1986). Neither the

Attorney General, DMAPS or DHHR have the authority to participate in the Board of

Pharmacy's ability to restrict the licensing privileges of Defendants. Further, the Board of

Pharmacy itself cannot seek monetary damages beyond the limit of $1,000. *W. Va. Code* § 60A-

8-14(a). Any such remedy available to the State Plaintiffs would thus be futile, and the State

Plaintiffs are not required to engage in such futility. *See, e.g., Syl.* pt. 1, *Casey*, 176 W.Va. 733,

349 S.E.2d 436; *Weimer*, 752 S.E.2d at 406 n. 5.

94.     Based upon the foregoing, the Court finds the State Plaintiffs were not required to

exhaust any administrative remedies before filing this case in circuit court.

## MUNICIPAL COST RECOVERY DOCTRINE

95.     As the name suggests, the "municipal cost recovery doctrine," never before has been

extended to claims made by a State. *See, e.g., State v. Lead Ind. Assn., Inc.*, 99 5226, 2001 WL

345830, *5 (R.I. Super. Apr. 2, 2001) (unpublished). States hold a very different and special

place in our federalist system than municipalities. *See, e.g., Alden v. Maine*, 527 U.S. 706, 715

(1999); *see also West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011).

96.     Even in the case of municipalities, no court in West Virginia has ever recognized the "municipal cost recovery doctrine" or applied it to bar claims by a municipality.  Finding this common law doctrine to be misguided, the Indiana Supreme Court and New Jersey Appellate Court have rejected the application of this doctrine altogether – even to municipalities.  *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind. 2003) (citing, *inter alia, James v. Arms Tech., Inc.*, 359 N.J. Super. 291, 820 A.2d 27, 49 (N.J. App.Div.2003)).

97.     Moreover, when the municipal cost recovery doctrine has been applied, it has, by and large,[21] been applied only to discrete, one-time events and not to ongoing public problems such as the facts alleged here. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 428, 768 N.E.2d 1136, 1149 50 (Ohio 2002) (refusing to apply doctrine to gun violence problem); *James*, 820 A.2d at 49 (same); *City of Boston v. Smith & Wesson Corp.*, 199902590, 2000 WL 1473568 (Mass. Super. July 13, 2000) (same); *Cf In re Oil Spill by The Amoco Cadiz*, 954 F.2d 1279, 1310 (7th Cir. 1992) (*per curiam*) (oil spill); *District of Columbia v. Air Fla, Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (plane crash); *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 150-51 (2d Cir. 2013) (plane crash); *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (train derailment); *Walker v. Tri-County Crematory*, 643 S.E.2d 324,

---

[21] In *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 213 Ill.2d 351 (2004), that court expanded the municipal cost recovery doctrine to encompass ongoing public problems, but no other court since then has adopted such a broad application of the doctrine. Even among those courts that have chosen to apply the doctrine to municipalities at all, the *Chicago* case is an outlier to the rule of demarcation drawn by such courts between sudden disasters and ongoing public problems.

327-28 (Ga. Ct. App. 2007) (unburied human remains found at crematorium).[22]  The Amended

Complaint alleges an ongoing problem.

98.     Based on the foregoing, the Court concludes the "municipal cost recovery doctrine" does

not bar any of the State's claims as alleged.

### ECONOMIC LOSS DOCTRINE

99.     To the extent Defendants are seeking dismissal of the statutory claims in Counts I, II, and

III or the public nuisance claim in Count IV based on the economic loss doctrine, the doctrine

plainly does not apply to these types of claims.  *See Stuart v. Weisflog's Showroom Gallery, Inc.,*

2008 WI 22, 308 Wis. 2d 103, 124, 746 N.W.2d 762, 772 (Wis. 2008) (holding the economic

loss doctrine does not apply to statutory claims); *Aikens v. Debow,* 208 W. Va. 486, 501, 541

S.E.2d 576, 591 (2000) (explaining the doctrine does not apply to nuisance claims).

100.    Contrary to Defendants' contention, the economic loss doctrine does not bar Count V

either.  The economic loss doctrine is a means of limiting the duty required of certain potential

tortfeasors, but it does not limit damages recoverable in an otherwise proper negligence action.

*Brian & Christie, Inc. v. Leishman Elec., Inc.,* 150 Idaho 22, 28, 244 P.3d 166, 172 (2010); *see*

*also AmeriSource Mem.* In Supp. Of M.T.D. at 16.  When Defendants argue for application of

the economic loss doctrine, they are arguing that no duty exists.  The economic loss doctrine

"does not bar recovery in tort where the defendant had a duty imposed by law rather than by

contract and where the defendant's intentional breach of that duty caused purely monetary harm

to the plaintiff." *Giles v. Gen. Motors Acceptance Corp.,* 494 F.3d 865, 879 (9th Cir. 2007). "The

ultimate test of the existence of a duty to use care is found in the foreseeability that harm may

---

[22] Because the doctrine does not apply based on the allegations in the Amended Complaint, the Court need not address whether the alleged conduct fits into one of the following two exceptions for those cases where courts have chosen to apply the doctrine: (1) where Defendant(s)' acts create a public nuisance the government seeks to abate and (2) where there is specific statutory authority for recovery of the losses suffered by the government. *See, e.g., Cincinnati v. Beretta U.S.A. Corp.,* 95 Ohio St. 3d 416, 428, 768 N.E.2d 1136, 1149 50 (Ohio 2002).

result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" *Syl.* Pt. 8, *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000) (quoting *Syl.* Pt. 3, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988)). "[A] court's overall purpose in its consideration of foreseeability in conjunction with the duty owed is to discern in general terms whether the type of conduct at issue is sufficiently likely to result in the kind of harm experienced based on the evidence presented." *Strahin v. Cleavenger*, 216 W. Va. 175, 185, 603 S.E.2d 197, 207 (2004). Here, it is foreseeable the conduct alleged – failing to put in place proper anti-diversion controls so that West Virginia Pill Mills would not be supplied and enabled to fuel the prescription drug epidemic -- is sufficiently likely to result in the State having to spend additional resources to combat the escalation of the prescription drug epidemic. Under the allegations in the Amended Complaint, Defendants owe a duty to the State, and the economic loss doctrine does not bar Count V.

101.    In *Aikens*, the Supreme Court of Appeals "emphasized that the holding" only "applies strictly to plaintiffs alleging purely economic loss from an interruption in commerce caused by another's negligence." 208 W. Va. at 501, 541 S.E.2d at 591 (internal citations omitted). Defendants nevertheless try to seize on *Syllabus* Point 9 of *Aikens*, which held:

> "An *individual* who sustains *economic loss* from an *interruption in commerce* caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor."

*Syl.* Pt. 9, *Aikens*, 208 W. Va. 486, 541 S.E.2d 576 (emphasis added). *Syllabus* Point 9 of *Aikens* does not control this case for, at least, three reasons. *First*, the State brings this action as

opposed to an individual plaintiff. *Second*, beyond the statutory damages in the WVCCPA and injunctive relief, the State also brings this case in its *parens patriae* capacity to vindicate a 'quasi sovereign' interest on behalf of its citizens, including the physical injury to the health and well-being of West Virginia residents generally. *See supra* pp. 11-13.[23]  While not a claim for particularized personal injury, the alleged physical harm to the State's residents generally means there is more at issue than purely economic loss. *Third and last*, the State seeks, *inter alia*, economic loss in the form of costs paid out by the State in dealing with the prescription drug epidemic; whereas, *Aikens* involved a motel-restaurant's right to seek speculative and prospective "purely economic loss *as a result of an interruption in commerce*" caused by a truck accident that damaged the road leading to the motel-restaurant.

102.    However, even within the framework of *Syllabus* Point 9 of *Aikens*, the State fits into the "special relationship" caveat to any ban on purely economic loss for an interruption in commerce in the absence of personal injury, property damage or contract such that a duty must be imposed. *See Syl.* Pt. 9, *Aikens, supra*. "In defining the proper considerations for ascertaining the existence of a duty . . . in addition to the [1] primary question of foreseeability of risk in discerning the existence of a duty, consideration must also be given to [2] 'the likelihood of injury, [3] the magnitude of the burden of guarding against it, and [4] the consequences of placing that burden on the defendant.'" *E. Steel Constructors, Inc. v. City of Salem*, 209 W. Va. 392, 397, 549 S.E.2d 266, 271 (2001) (Davis, J.) (citing *Aikens*, 208 W.Va. at 491, 541 S.E.2d at 581; *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983)).

103.    Based upon the State's allegations in the pleadings that Defendants have violated anti-diversion regulations, it is foreseeable that injury to the State was likely to occur in the form of

---

[23] *In re Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591, 601 (S.D.N.Y. 2011) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601–02, 607 (1982); citing *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 119 (2d Cir.2002)); Am. Compl. ¶¶ 6b, 6c, 6h, and 6i.

increased costs in dealing with the prescription drug abuse epidemic, and the magnitude and consequences of placing this burden on Defendants is low because the duty already exists in state and federal regulations.  The Court concludes Defendants may have owed a duty to the State. Based upon the foregoing, it is, accordingly, **ORDERED** as follows:

1. The Motions to Dismiss of all Defendants in the above-captioned case be, and they hereby are, DENIED;

2. However, the Court GRANTS Defendants' Motion for a More Definite Statement;

3. The Plaintiffs are hereby ORDERED to amend the Complaint to include a More Definite Statement within thirty (30) days upon entry of this Order;

4. Specifically, the Court Orders the Plaintiffs to use more specificity by alleging each individual Defendants' wrongful act(s) instead of using one broad category of Defendants, along with addressing each wrongful act(s) with clarity;

5. Subsequent to the Court receiving and being satisfied with Plaintiffs' More Definite statement, the stay of discovery previously issued will be lifted and the Court will allow discovery until September 1, 2015;

6. There shall be a stay between September 1, 2015 and October 31, 2015 for another mediation session.

7. After mediation has occurred, the parties shall appear before this Court on the 9th day of November, 2015 at 9:30 a.m. for a status hearing.

Entered this _12th_ day of December 2014.

_Will S._

William S. Thompson, Judge

A COPY ATTEST

_Sue Ann Jickefoose_

CIRCUIT COURT