**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corp., et al.*<br>Case No. 18-op-45530-DAP | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT**
**OF DISTRIBUTORS' MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ................................................................................................... 3

ARGUMENT ........................................................................................................ 4

I.  THE DERIVATIVE INJURY RULE BARS THE HOSPITAL'S CLAIMS.................... 4

II.  THE RICO CLAIMS SHOULD BE DISMISSED......................................................... 7

    A.  The Hospital Fails To Allege a Direct Injury. ....................................... 7

    B.  The Hospital Fails To Allege an Injury to Business or Property. ........... 8

    C.  The Hospital Fails To Allege RICO Predicate Acts by Distributors. .................. 10

    D.  The Hospital's Enterprise Allegations Fail......................................... 11

    E.  The Hospital's Section 1962(a) Claim Fails. ..................................... 12

    F.  The Hospital's Conspiracy Claim Fails. ............................................ 13

III.  THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED ...............................14

IV.  THE NEGLIGENCE CLAIMS SHOULD BE DISMISSED. ........................................ 17

    A.  There Is No Private Right of Action. ................................................. 17

    B.  The CSA and FDCA Cannot Form the Basis of a Negligence *Per Se* Claim................................................................................................ 18

    C.  Distributors Do Not Owe the Hospital a Duty Under the Common Law. ............ 19

    D.  The Hospital Fails Adequately To Plead That Distributors Breached a Duty.................................................................................................. 21

    E.  The Hospital's "Wanton Negligence" Claim Fails as a Matter of Law................ 21

    F.  The Hospital Fails to State a Claim for Negligent Distribution............................ 21

V.  THE HOSPITAL'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. ................................................................................................... 22

VI.  THE CONSUMER FRAUD CLAIM SHOULD BE DISMISSED.................................. 23

    A.  The Hospital Fails Properly To Plead a Deceptive Act or Practice. ..................... 23

B.     The Hospital Fails to Allege Actual Damages Cognizable Under FDUTPA. ........................................................................................ 25

VII.    THE BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE CLAIM SHOULD BE DISMISSED .................................. 27

CONCLUSION ............................................................................................. 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000)...............................5, 16

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ...............................................13

*Ark. Carpenters' Health & Welfare Fund v. Philip Morris, Inc.*, 75 F. Supp. 2d
    936 (E.D. Ark. 1999) ..........................................................................................................7

*Armadillo Distrib. Enters., Inc. v. Hai Yun Musical Instruments Manufacture Co.
    Ltd.*, No. 8:12-cv-1839, 2015 WL 12732417 (M.D. Fla. Apr. 28, 2015) ...............................30

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696 (9th Cir.
    2001) ...............................................................................................................................5, 16

*Barnext Offshore, Ltd. v. Ferretti Grp., USA*, No. 10-23869-CIV, 2012 WL
    1570057 (S.D. Fla. May 2, 2012) ....................................................................................27, 29

*Boyce v. Pi Kappa Alpha Holding Corp.*, 476 F.2d 447 (5th Cir. 1973)......................................21

*Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907 (11th Cir. 2008) (per
    curiam) ..............................................................................................................................18

*Burgess v. M/V Tamano*, 370 F. Supp. 247 (D. Me. 1973)...........................................................16

*Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).........................................10

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565 (11th Cir.
    2009) (per curiam) ..............................................................................................................25

*Cook v. MillerCoors, LLC*, 829 F. Supp. 2d 1208 (M.D. Fla. 2011)............................................20

*Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990)....................................................13

*Crawford v. Gold Kist, Inc.*, 614 F. Supp. 682 (M.D. Fla. 1985) .................................................27

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013)........................................................11

*Czarnecki v. Roller*, 726 F. Supp. 832 (S.D. Fla. 1989) .........................................................28, 29

*Davis v. Bos. Sci. Corp.*, No. 2:17-cv-682-FtM-38CM, 2018 WL 2183885 (M.D.
    Fla. May 11, 2018)..........................................................................................................28, 29

*Eaton v. Newport Bd. of Educ.*, 975 F.2d 292 (6th Cir. 1992)......................................................10

*Foister v. Purdue Pharma, L.P.*, 295 F. Supp. 2d 693 (E.D. Ky. 2003).........................................6

*Freund v. Purdue Pharma Co.*, No. 04-C-611, 2006 WL 482382 (E.D. Wis. Feb. 27, 2006) ....................................................................................................................7

*Gastaldi v. Sunvest Resort Cmtys., LC*, 709 F. Supp. 2d 1299 (S.D. Fla. 2010) ..........................25

*Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315 (S.D.N.Y. 2006) ..................................26

*Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785 (6th Cir. 2015) .......................................................13

*Gurerro v. Target Corp.*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012) .................................................22

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ................................................................8

*Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354 (S.D. Fla. 2012)..........................................25, 27

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992) ..................................................................8

*Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018 (N.D. Ohio 2013) ...........................................13

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999) ...........................................................................5, 6

*Irwin v. Miami-Dade Cty. Pub. Sch.*, No. 06-23029-CIV, 2009 WL 497652 (S.D. Fla. Feb. 25, 2009) ..........................................................................................21

*Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556 (6th Cir. 2013) (en banc) ...............9, 10

*Jovine v. Abbott Labs, Inc.*, 795 F. Supp. 2d 1331 (S.D. Fla. 2011) .............................................25

*Koenig v. Purdue Pharma Co.*, 435 F. Supp. 2d 551 (N.D. Tex. 2006)...........................................6

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999) .........................................................................................................7

*Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346 (S.D. Fla. 2003) ..........................7, 19, 21

*Lemy v. Direct Gen. Fin. Co.*, 559 F. App'x 796 (11th Cir. 2014) (per curiam)...........................18

*Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)..........................................................................................22

*Mantz v. TRS Recovery Servs., Inc.*, No. 11-80580-CIV, 2011 WL 5515303 (S.D. Fla. Nov. 8, 2011) .......................................................................................26

*McCauley v. Purdue*, 331 F. Supp. 2d 449 (W.D. Va. 2004) .........................................................6

*Nova Info. Sys. v. Greenwich Ins. Co.*, No. 6:00-cv-1703ORL31, 2002 WL 32075792 (M.D. Fla. Dec. 13, 2002)................................................................22, 23

*Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300 (M.D. Fla. 2017) ................................................................................................24

*Patel v. Catamaran Health Sols., LLC*, No. 15-cv-61891, 2016 WL 5942475 (S.D. Fla. Jan. 14, 2016) ...........................................................................18

*Randolph v. 9-1-19 Co.*, No. 3:08-cv-204, 2008 WL 2385230 (M.D. Fla. June 7, 2008) ................................................................................................26

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)...........................................................12

*Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249 (7th Cir. 1989) ....................................10

*Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288 (M.D. Fla. 2018)................18

*Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092 (11th Cir. 1983) ..............................................................................................28, 29

*Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76 (2d Cir. 2017)......................................10

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006)................................................10

*Sweeney v. Kimberly-Clark Corp.*, No. 8:14-CV-3201, 2015 WL 5446797 (M.D. Fla. Sept. 15, 2015) ...........................................................................29

*T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842 (N.D. Fla. 1995) .......................26, 28

*Tilton v. Playboy Entm't Grp.*, No. 88:05-cv-692, 2007 WL 80858 (M.D. Fla. Jan. 8, 2007) ................................................................................................22

*Timmons v. Purdue Pharma Co.*, No. 8:04-CV-1479-T-26MAP, 2006 WL 263602 (M.D. Fla. Feb. 2, 2006) .............................................................................6

*United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) ............................11

*United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271 (11th Cir. 2000) ...............................4

*United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000) ............................................12

*United States v. Fowler*, 535 F.3d 408 (6th Cir. 2008)...............................................12

*United States v. Gills*, 702 F. App'x 367 (6th Cir. 2017) ............................................12

*United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006) ............................................11

*Vemco, Inc. v. Camardella*, 23 F.3d 129 (6th Cir. 1994).......................................12, 13

*Williams v. Mosaic Fertilizer, LLC*, No. 8:14-cv-1748, 2015 WL 12835675 (M.D. Fla. Apr. 22, 2015) ........................................................................................................20

*Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218 (S.D. Fla. 2010) ..........................19

*Zoom Tan, LLC v. Heartland Tanning, Inc.*, No. 2:12-cv-684, 2013 WL 5720140 (M.D. Fla. Oct. 21, 2013) ...............................................................................................29

## STATE CASES

*Ankers v. Dist. Sch. Bd. of Pasco Cty.*, 406 So. 2d 72 (Fla. Dist. Ct. App. 1981) ........20

*Anthony v. Slaid*, 52 Mass. 290 (1846) ...........................................................................4

*Brown v. Fla. Chautauqua Ass'n*, 52 So. 802 (Fla. 1910) .............................................15

*City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126 (Ill. App. Ct. 2005) ...............14

*Dep't of Corr. v. McGhee*, 653 So. 2d 1091 (Fla. Dist. Ct. App. 1995) ........................20

*E. States Health & Welfare Fund v. Philip Morris, Inc.*, 188 Misc.2d 638 (N.Y. Sup. Ct. 2000) .............................................................................................................4

*Elizabeth N. v. Riverside Grp.*, 585 So. 2d 376 (Fla. Dist. Ct. App. 1991) ...................27

*Fla. Wildlife Fed. v. Dep't of Envir. Reg.*, 390 So. 2d 64 (Fla. 1980) ...........................15

*Garnett v. Jacksonville, St. Augustine & Halifax River Ry. Co.*, 20 Fla. 889 (Fla. 1884) ........................................................................................................................15

*Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262 (Fla. Dist. Ct. App. 1980) .......................................................................................................................30

*Grunow v. Valor Corp. of Fla.*, 904 So. 2d 551 (Fla. Dist. Ct. App. 2005) ...................22

*Hapag-Lloyd, A.G. v. Marine Indem. Ins. Co. of Am.*, 576 So. 2d 1330 (Fla. Dist. Ct. App. 1991) ...............................................................................................................30

*Intergraph Corp. v. Stearman*, 555 So. 2d 1282 (Fla. Dist. Ct. App. 1990) (per curiam) ....................................................................................................................27

*Kaminer v. Eckerd Corp. of Fla., Inc.*, 966 So. 2d 452 (Fla. Dist. Ct. App. 2007) ........6

*Kerns v. Hoppe*, 381 P.3d 630, 2012 WL 991651 (Nev. 2012) (unpublished table decision) ......................................................................................................................6

*Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988) ..........................................28

*Lighthouse Mission of Orlando, Inc. v. Estate of McGowen*, 683 So. 2d 1086 (Fla. Dist. Ct. App. 1996) (per curiam) ............................................................20

*Maryland v. Philip Morris Inc.*, No. 96122017, 1997 WL 540913 (Md. Cir. Ct. May 21, 1997) ....................................................................................4

*McCain v. Fla. Power Corp.*, 593 So. 2d 500 (Fla. 1992) ............................................19

*Murthy v. N. Sinha Corp.*, 644 So.2d 983 (Fla.1994) ...................................................19

*Orzel v. Scott Drug Co.*, 537 N.W.2d 208 (Mich. 1995) ..............................................6

*Page v. Niagara Chem. Div. of Food Mach. & Chem. Corp.*, 68 So. 2d 382 (Fla. 1953) ...........................................................................................14, 15

*Palmer v. Shearson Lehman Hutton, Inc.*, 622 So. 2d 1085 (Fla. App. 1993) ..................20, 21

*Price v. Purdue Pharma Co.*, 920 So. 2d 479 (Miss. 2006) (en banc) ............................6

*Provitola v. Comer*, 225 So.3d 347 (Fla. Dist. Ct. App. 2017) (per curiam)...................15

*Republic of Venezuela ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339 (Fla. Dist. Ct. App. 2002) (per curiam) ....................................................5, 17

*Robertson v. Deak Perera (Miami), Inc.*, 396 So.2d 749 (Fla. Dist. Ct. App.) ...........................19

*Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178 (Fla. Dist. Ct. App. 2010) ...........................................................................................25, 26

*Sewell v. Racetrac Petroleum, Inc.*, No. 3D16-1218, 2017 WL 6598586 (Fla. Dist. Ct. App. Dec. 27, 2017) ..................................................................20

*State of São Paulo of Federative Republic of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116 (Del. 2007) ..................................................................................2, 6

*State v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253 (Fla. Dist. Ct. App. 2007) ...........................................................................................25

*State v. Lead Indus. Ass'n*, 951 A.2d 428 (R.I. 2008) .................................................14

*State v. Shapiro & Fishman, LLP*, 59 So. 3d 353 (Fla. Dist. Ct. App. 2011)................24

*Town of Surfside v. County Line Land Co.*, 340 So. 2d 1287 (Fla. Dist. Ct. App. 1977) ...........................................................................................15

*Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912 (Fla. 1985).......................20

## OTHER AUTHORITIES

21 C.F.R. § 1301.74(b) ...................................................................................................18, 25

21 C.F.R. § 1306.04(a) .........................................................................................................14

45 C.F.R § 164.502 ...............................................................................................................30

18 U.S.C. § 1962 ........................................................................................................7, 12, 13

18 U.S.C. § 1964(c) ..........................................................................................................9, 13

Fla. Admin. Code Ann. r. 64B8-9.013 .................................................................................14

Fla. Stat. § 501.204 ...............................................................................................................24

Fla. Stat. § 501.211(2) ..........................................................................................................25

Fla. Stat. § 501.212(3) ..........................................................................................................26

Fla. Stat. § 672.307(3)(a) .....................................................................................................30

Fla. Stat. § 672.314 ...............................................................................................................28

Fla. Stat. § 672.315 ..........................................................................................................27, 29

Restatement (Second) of Torts § 821B .................................................................................14

U.S. Dep't of Justice, Drug Enf't Admin., *2017 National Drug Threat Assessment*
(2017) ..................................................................................................................................1

U.S. Dep't of Justice, *Drug Enforcement Administration collects record number
of unused pills as part of its 14th Prescription Drug Take Back Day* (Nov. 7,
2017) ...................................................................................................................................1

1 White & Summers, *Uniform Commercial Code* § 11-2 (3rd ed. 1988)....................................28

15 Wright & Miller, *Federal Practice and Procedure* § 3867 (4th ed.) ........................................9

Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively, "Distributors") move to dismiss the Complaint dated May 3, 2018.

**PRELIMINARY STATEMENT**

There is unquestionably a public health crisis involving opioid drugs. That crisis concerns both legal prescription medications and illegal "street" opioids. Where prescription medications are concerned, the crisis arises from both doctors' mis-prescription of medications for patients who do not need them and their over-prescription of the medications for patients who do. Together, the mis-prescription and over-prescription of opioid medications has caused dependence on the drugs and has facilitated abuse and addiction, not only among the patients for whom doctors prescribed the drugs, but also among those closest to them, for we know from the DEA that the majority of addicts obtain the drugs they use from family and friends.[1]

The direct victims of the crisis are the persons who have experienced dependence, addiction, and episodes of overdose. Beginning in the 1990s, by the hundreds, these victims brought claims against the prescription-opioid manufacturers, alleging that the medications were mis-labeled and deceptively marketed and seeking recovery of personal-injury damages. As far as Distributors are aware, those claims all failed. Now, amid a public outcry about the public health crisis, new categories of plaintiffs have lined up to sue, not only the manufacturers (who alone devised the dosing and formulations, authored the labeling, and conceived and carried out the marketing campaigns), but also doctors, pharmacies, and wholesale distributors, including movant-Distributors.

---

[1]  *See* U.S. Dep't of Justice, Drug Enf't Admin., *2017 National Drug Threat Assessment* 33–34 (2017), https://www.dea.gov/docs/DIR-040-17_2017-NDTA.pdf; *see also* U.S. Dep't of Justice, *Drug Enforcement Administration collects record number of unused pills as part of its 14th Prescription Drug Take Back Day* (Nov. 7, 2017), https://www.justice.gov/opa/pr/drug-enforcement-administration-collects-record-number-unused-pills-part-its-14th-0.

The new categories of plaintiffs include States, counties, cities, health plans, insurers, first responders, children's services agencies, assignees of managed care plans, and, in this case, a hospital.  These plaintiffs did not deal directly with Distributors, nor were they directly affected by anything that Distributors did or did not do.  Any "injury" they suffered was indirect because it resulted from, and was contingent upon, the personal injury suffered by an individual who had become addicted to legal or illegal opioids.  West Boca Medical Center ("the Hospital") presents a textbook example of a plaintiff whose claims should be dismissed because the claims are indirect and derivative.  It seeks recovery only for the costs of providing "unreimbursed" opioid-related medical care to patients.

Twenty years ago and more, when individual smokers often found it difficult to prevail in personal injury lawsuits against the tobacco manufacturers, third-party payers (including hospitals) tried to sue for costs resulting from smoking-related injuries. "*Multitudinous* … *state and federal appellate courts* … *unanimously* invoked the same rationale" to dismiss those cases, "*all holding* that third-party payors or providers of medical services, including … hospitals … have *no cognizable claims* under federal statutory law or state common law to recover medical expenses from the tobacco companies, because the plaintiffs' alleged injuries were entirely derivative of the injuries to the smoker-consumers of the tobacco companies' products."[2]  The law has not changed since.

For this fundamental reason, as well as the additional reasons described below, the Hospital's claims fail as a matter of law:

- **RICO**:  The Hospital does not allege (1) direct injury; (2) injury to "business and

---

[2] *State of São Paulo of Federative Republic of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116, 1125 (Del. 2007).  Unless otherwise noted, this Memorandum adds all emphasis in quotations and omits citations and internal quotation marks.

property"; (3) valid RICO predicate acts; or (4) an enterprise involving Distributors.

- **Negligence**:  There is no (1) private right of action to enforce Distributors' regulatory suspicious order reporting requirements; (2) common law duty to halt or report suspicious orders; (3) duty owed by Distributors to the Hospital; or (4) well-pled allegation that Distributors breached their alleged duties.

- **Public nuisance**:  The Hospital fails to allege (1) interference with property rights; (2) interference with a "public right"; (3) control of the drugs at the time of injury; or (4) the requisite injury different in kind and degree from that suffered by the public at large.

- **Unjust enrichment**:  The Hospital's claim is duplicative and fails to allege (1) a direct benefit it conferred on Distributors; or (2) a benefit of which Distributors were aware.

- **Deceptive Trade Practices**:  The Hospital (1) relies on group pleading and conclusory allegations to disguise the fact that it is the manufacturers alone that allegedly engaged in deceptive marketing practices; and (2) fails to allege cognizable damages, in part because the statute does not permit the recovery of expenditures arising from personal injuries.

- **Implied Warranty for a Particular Purpose**: The Hospital fails to allege that (1) it purchased prescription opioids from each Distributor; or, (2) if it did, it purchased them for a particular purpose other than the ordinary purpose of treating pain.

## BACKGROUND[3]

The vast majority of the Complaint is devoted to detailing a "massive marketing campaign" on the part of the so-called Marketing Defendants, who—along with "Front Groups"

---

[3]   The federal regulatory backdrop against which this action is set is described in detail in Distributors' *Summit County* brief, which they incorporate by reference herein.  *See* Distributors' Mem. in Supp. of Mot. to Dismiss Summit Cnty. Second Am. Compl. ("Summit Br."), Dkt. 491-1.  Distributors also hereby adopt, as if set forth herein, the arguments made in support of the separate motions to dismiss filed today by the manufacturing defendants and the retail pharmacy defendants.

and "key opinion leaders" purportedly working at their behest—allegedly made "misrepresentations of the risks and benefits of [the] opioids" that they manufactured.  *E.g.*, Compl. ¶¶ 15, 75; *see, e.g.*, *id.* ¶¶ 146–508, 812–846.[4]  Tellingly, however, the Hospital does not allege that *Distributors* made any misrepresentations to doctors, hospitals or the public regarding the safety, efficacy or addictive properties of opioid medications—nor could it.  The Complaint fails to identify with specificity even a single misrepresentation made by any Distributor whatsoever.  Nevertheless, the Hospital asserts that Distributors participated in a criminal enterprise whose purpose was "to defraud purchasers, including doctors and hospitals, by propagating falsehoods about the safety and benefits of opioids."  Compl. ¶ 878.

## ARGUMENT

**I.      THE DERIVATIVE INJURY RULE BARS THE HOSPITAL'S CLAIMS.**

The Hospital's claimed injuries consist entirely of "unreimbursed charges for its treatment of patients."  Compl. ¶ 55.  Because the alleged injuries are wholly derivative of the personal injuries of individual opioid users, the Hospital's claims all fail as a matter of law.

"The usual common law rule is that a health-care provider has no direct cause of action in tort against one who injures the provider's beneficiary, imposing increased costs upon the provider."  *United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271, 1274 (11th Cir. 2000) (citing *Anthony v. Slaid*, 52 Mass. 290, 290–91 (1846)).[5]  Accordingly, federal courts have repeatedly rejected attempts by hospitals to

---

[4]     The paragraphs in the Complaint are numbered 1 through 157, followed by 126 through 1011.  Thus, there are two sets of paragraphs numbered 126 through 157.  This reference is to the second ¶ 146.

[5]     *Accord E. States Health & Welfare Fund v. Philip Morris, Inc.*, 188 Misc.2d 638, 646 (N.Y. Sup. Ct. 2000) ("[F]or more than [a] century, state and federal courts have adopted the theory that the victim of a tort is the appropriate plaintiff and that third-party providers of medical care may recover only pursuant to rights of subrogation."); *Maryland v. Philip Morris Inc.*, No. 96122017, 1997 WL 540913, at *9 (Md. Cir. Ct. May 21, 1997) ("At common law a plaintiff had no right to recover

recover unreimbursed health care costs from alleged third-party tortfeasors by filing suits in their own name. *See, e.g.*, *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 703 (9th Cir. 2001) (rejecting attempt by hospital district to "recover damages that are derivative of the injuries suffered by smokers"); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000) (affirming dismissal of RICO and common law claims on the ground that the "Hospitals' injuries are derivative of the nonpaying patients' injuries"). These principles apply under Florida law: "Case precedent and settled common-law principles establish that one who pays for the medical expenses of another, may not bring a direct, independent action to recover those expenses from the alleged tortfeasor." *Republic of Venezuela ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. Dist. Ct. App. 2002) (per curiam).

The Seventh Circuit's opinion in *International Brotherhood of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999), is instructive. There, third-party payors brought suit against tobacco companies seeking compensation for smoking-related healthcare costs. Writing for the court, Judge Easterbrook began by noting that, "[f]or more than 100 years state and federal courts have adhered to the principle (under both state and federal law) that the victim of a tort is the proper plaintiff, and that insurers or other third-party providers of assistance and medical care to the victim may recover only to the extent their contracts subrogate them to the victim's rights." *Id.* at 822 (collecting cases). In that case, however, the plaintiff third-party payors eschewed subrogation because "smokers' suits against cigarette manufacturers usually are unsuccessful." *Id.* But that, Judge Easterbrook explained, was "why plaintiffs must lose": "A third-party payor has no claim if its insured did not suffer a

---

damages from a defendant tortfeasor as a result of the defendant's injuries, harm, or lack of care to a third person ….").

tort; no rule of law requires persons whose acts cause harm to cover all of the costs, unless these acts were legal wrongs."  *Id.* at 823; *accord State of São Paulo of Federative Republic of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116, 1123 (Del. 2007) ("[I]t would be both unfair and unsound policy to allow" third-party payors "to pursue claims on which the[] injured [persons], had they sued directly, might not be entitled to recover[.]").

The same reasoning applies here.  Since the late 1990s, hundreds of individual users have sued opioid manufacturers for personal injury.  Distributors are not aware of a single reported case in which a plaintiff survived summary judgment, let alone prevailed at trial.  These lawsuits were typically dismissed because: (1) the user obtained opioids ***legitimately***, through a prescription from a licensed physician, and the learned intermediary doctrine barred the claim;[6] or (2) the user obtained the opioids ***illegitimately***, through theft or deception, for example, and the user's own wrongful conduct barred the claim.[7]  Other suits were dismissed because the plaintiffs could not show that the defendant's product, as opposed to another manufacturer's opioid medication or an illicit drug, was the cause of his injury, *see e.g.*, *McCauley v. Purdue*,

---

[6]   *See Koenig v. Purdue Pharma Co.*, 435 F. Supp. 2d 551, 555 (N.D. Tex. 2006) (the physician "was aware of the possible addiction risks associated with the opioid OxyContin, yet chose to prescribe it anyway"); *Timmons v. Purdue Pharma Co.*, No. 8:04-CV-1479-T-26MAP, 2006 WL 263602 (M.D. Fla. Feb. 2, 2006) (granting summary judgment because all four of user's prescribing doctors "were independently aware of the risks of addiction"); *Foister v. Purdue Pharma, L.P.*, 295 F. Supp. 2d 693, 708 (E.D. Ky. 2003) ("[A]pplication of the learned intermediary defense bars the claims of all plaintiffs to this action."); *Kerns v. Hoppe*, 381 P.3d 630, 2012 WL 991651 (Nev. 2012) (unpublished table decision) (affirming dismissal of claims against pharmacy based on leaned intermediary doctrine).

[7]   *See Price v. Purdue Pharma Co.,* 920 So. 2d 479, 486 (Miss. 2006) (en banc) (wrongful conduct rule "prevents a plaintiff from suing caregivers, pharmacies, and pharmaceutical companies … for addiction to a controlled substance which he obtained through his own fraud, deception, and subterfuge"); *Kaminer v. Eckerd Corp. of Fla., Inc.*, 966 So. 2d 452 (Fla. Dist. Ct. App. 2007) (affirming summary judgment because deceased opioid user obtained prescriptions by theft); *Foister*, 295 F. Supp. 2d 693 (E.D. Ky. 2003) (dismissing claims because plaintiffs procured OxyContin illegally and had to rely on their illegal actions to establish their claims); *Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 217–18 (Mich. 1995) (dismissing widow's claims against pharmaceutical company because her husband fraudulently obtained the prescriptions that led to his death).

331 F. Supp. 2d 449, 465 (W.D. Va. 2004), because the plaintiffs intentionally misused opioids by crushing, snorting, or inhaling them, *see e.g.*, *Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1356 (S.D. Fla. 2003); or because the statute of limitations had run, *see e.g.*, *Freund v. Purdue Pharma Co.*, No. 04-C-611, 2006 WL 482382 (E.D. Wis. Feb. 27, 2006).

As in the tobacco cases, the Hospital's claims are wholly derivative: "Without injury to the individual [opioid users], the [Hospital] would not have incurred any increased costs." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999); *see also Ark. Carpenters' Health & Welfare Fund v. Philip Morris, Inc.*, 75 F. Supp. 2d 936, 941 (E.D. Ark. 1999) ("Without any injury to smokers, the plaintiff would not have incurred any of the additional, smoking related expenses for which it is now seeking reimbursement."). Thus, if anything, the Hospital has a subrogation claim stemming from its patients' personal injuries—claims against which Distributors have powerful defenses. But, under established law, the Hospital is prohibited from recovering in tort for derivative injuries to patients by suing Distributors in its own name.

## II.     THE RICO CLAIMS SHOULD BE DISMISSED.

The Hospital fails to plead a valid RICO claim under 18 U.S.C. § 1962(c) against Distributors for at least four separate reasons. First, the Hospital fails to allege that it suffered a "direct" injury by reason of Distributors' alleged conduct. Second, the Complaint fails to allege that the Hospital suffered an injury to its "business or property." Third, the Complaint fails properly to allege that Distributors committed two or more RICO predicate acts. Finally, the Hospital does not properly allege the existence of a valid RICO enterprise involving Distributors. The Hospital's claims under Sections 1962(a) and 1962(d) likewise fail for these reasons, as well as the additional reasons identified below.

### A.     The Hospital Fails To Allege a Direct Injury.

- 7 -

The Hospital does not plead that Distributors' alleged conduct was a ***direct*** cause of its purported injuries—nor could it.  Under established precedent, that failure forecloses its RICO claims.  *See* Summit Br., Dkt. 491-1 at Part I.B.

A RICO plaintiff must allege that a RICO "predicate act" was the proximate cause of the plaintiff's injury.  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).  This means that a plaintiff must allege a "direct relation between the injury asserted and the injurious conduct alleged."  *Id.*  "A link that is too remote, purely contingent, or indirec[t] is insufficient."  *Id.* (alteration in original).  Theories of causation cannot "***go beyond the first step***."  *Id.* at 10–11.

The Hospital does not allege the required "direct causal connection" between its claimed injury and the Distributors' purported predicate acts.  *Id.* at 17–18.  The Hospital's alleged damages consist of "unreimbursed charges for its treatment of patients with opioid conditions." Compl. ¶ 55.  But the Complaint contains no allegations suggesting that Distributors' alleged predicate acts (i.e., purported failures of reporting to state and federal regulators) were the ***direct*** cause of the Hospital's harm—nor could it.  Only if an individual first suffered personal injury (i.e., became addicted or overdosed) would the Hospital incur any costs.  Thus, the link between the Hospital's unreimbursed costs—which were "purely contingent on the harm suffered by" the prescription opioid users—and Distributors' alleged non-reporting of pharmacy orders "is too remote."  *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 271 (1992).  The Hospital's claims impermissibly seek to go "beyond the first step" of causation.  *Hemi*, 559 U.S. at 10.

For substantially the reasons explained in Distributors' *Summit County* brief, the remote and derivative injuries alleged in the Hospital's Complaint fail to satisfy the direct injury requirement applicable to its RICO claims.  *See* Summit Br., Dkt. 491-1 at Part I.B.

## B. The Hospital Fails To Allege an Injury to Business or Property.

A RICO plaintiff must allege that it was "'injured in [its] business or property' … to state

a claim for a civil RICO damages action." *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc) (quoting 18 U.S.C. § 1964(c)). The Hospital fails to allege an injury to "business or property" because its alleged injuries are entirely derivative of ***personal*** injuries—a class of injuries not actionable under RICO.

The Sixth Circuit's *en banc* decision in *Jackson* embraced this principle and is controlling.[8] There, the plaintiffs alleged that defendants were participants in a scheme to deny workers' compensation benefits to employees who suffered on-the-job injuries. *Jackson*, 731 F.3d at 565. The Court rejected the argument that the plaintiffs' economic injuries, i.e., the loss of their workers' compensation benefits, constituted an injury to "business or property," holding that "both personal injuries and ***pecuniary losses flowing from those personal injuries*** fail to confer relief under [RICO]." *Id.* at 565–66. Because the plaintiffs' pecuniary losses were "a consequence of their personal injuries," those losses did not give plaintiffs a basis to sue under RICO. *Id.* at 566.

*Jackson* compels the same result here. The Hospital's claimed damages flow entirely from the personal injuries of the patients the Hospital treated for opioid addiction and overdoses. *See, e.g.*, Compl. ¶ 1 (personal injury to an "opioid-addicted child" causes hospital increased costs); *id.* ¶ 25 (discussing "cost of treating opioid overdose victims"); *id.* ¶ 47 ("As a result of the opioid addiction epidemic in the area which Plaintiff serves, opioid-addicted patients routinely occupy beds in [the Hospital]"); *id.* ¶ 55 ("Plaintiff has incurred and continues to incur substantial unreimbursed charges for its treatment of patients with opioid conditions."). Under Sixth Circuit precedent, because such damages "flow from" personal injuries, they are not

---

[8] The law of the Sixth Circuit applies to the Hospital's RICO claims. *See, e.g.*, 15 Wright & Miller, *Federal Practice and Procedure* § 3867 n.32 (4th ed.) (collecting cases); *see also* Distributors' Mem. in Supp. of Mot. to Dismiss Broward Cnty. Second Am. Compl. ("Broward Br."), Dkt. 591-1 at 2 n.2.

injuries to "business or property" for purposes of RICO. *Jackson*, 731 F.3d at 565–66; *see also* Summit Br., Dkt. 491-1 at Part I.A.1 (collecting cases).

### C. The Hospital Fails To Allege RICO Predicate Acts by Distributors.

The RICO claims should be dismissed because the Complaint fails adequately to allege that any Distributor committed two or more RICO predicate acts. The Hospital alleges that Distributors committed predicate acts of (1) mail and wire fraud, and (2) violations of the CSA. Compl. ¶¶ 881, 891. Like Summit County's allegations, the Hospital's allegations of mail and wire fraud by Distributors are wholly conclusory and thus fail to satisfy the heightened pleading requirement applicable under Rule 9(b). *See* Summit Br., Dkt. 491-1 at Part I.C. Moreover, as explained in Distributors' *Summit County* brief, violations of the CSA do not constitute "predicate acts" under RICO. *See id.*[9] The Hospital's RICO claims against Distributors therefore should be dismissed.[10]

---

[9] Furthermore, unlike Summit County, which pled a violation of a particular section of the CSA, the Hospital alleges a violation of "the Controlled Substances Act, 21 U.S.C. 801, et seq." Compl. ¶¶ 881, 891. This generic and conclusory allegation of the violation of a broad statutory scheme fails to state a claim because "it is essential to plead precisely in a RICO case the enterprise alleged and the RICO section allegedly violated." *Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1251 (7th Cir. 1989).

[10] The Hospital asserts that Distributors "applied political … pressure on the DOJ and DEA," argued to regulators that "the quotas for prescription opioids should be increased," and "lobbied Congress" to pass legislation supported by Distributors. Compl. ¶¶ 854–855. These allegations cannot give rise to a RICO claim for an additional reason: they are barred by the *Noerr-Pennington* doctrine. Reflecting the principle that "the right to petition extends to all departments of the Government," *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972), *Noerr-Pennington* is a First Amendment doctrine that "protects efforts to influence governmental action through litigation and lobbying." *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017); *accord Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 298 (6th Cir. 1992) (holding that "first amendment right of petition" protects efforts to "influence the legislative, executive, or judicial branches of government or administrative agencies"). Under the doctrine, speech that is part of or incidental to a valid effort to influence government action cannot serve as RICO predicate acts of mail or wire fraud. *See, e.g.*, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006) (allegedly false statements in made in the course of petitioning activity cannot serve as RICO predicate acts of mail or wire fraud); *Singh*, 683 F. App'x at 77 (same).

### D.    The Hospital's Enterprise Allegations Fail.

The Hospital's RICO enterprise allegations fail because the Complaint does not allege that (1) Distributors shared a "common purpose" with, (2) committed predicate acts connected to, or (3) directed the affairs of the so-called False Narrative Enterprise.

First, the Hospital fails to satisfy RICO's "common purpose" requirement.  A RICO enterprise consists of "a group of persons associated together for a common purpose." *United States v. Johnson*, 440 F.3d 832, 840 (6th Cir. 2006) (emphasis omitted).  The Hospital alleges that the "purpose" of the False Narrative Enterprise was to "defraud purchasers, including doctors and hospitals, by propagating falsehoods about the safety and benefits of opioids." Compl. ¶ 878.  But, in contrast to its allegations as to the Marketing Defendants, *see id.* ¶¶ 812–846, the Complaint is devoid of factual allegations showing that Distributors shared this "common purpose."  The Marketing Defendants have an obvious interest in touting the drugs they manufacture and sell, whether by overstating their benefits or understating their risks. Distributors, on the other hand, typically provide pharmacies with more than 23,000 prescription drugs—often competing drugs—and have no such interest in any particular drug.  In the absence of factual allegations that Distributors shared the Marketing Defendants' purpose, Distributors should be dismissed from the RICO count.  *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (defendants "not plausibly alleged to share a common purpose to engage in a particular fraudulent course of conduct ... were properly excluded from the alleged RICO enterprise"); *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (allegations of "commercial relationship" between defendants insufficient to plausibly allege RICO enterprise).

Second, the Complaint fails to allege the required nexus between the purported RICO enterprise and Distributors' alleged predicate acts.  A RICO plaintiff must allege that the

defendant's predicate acts are "connected to the affairs and operations of the criminal enterprise." *United States v. Corrado*, 227 F.3d 543, 554 (6th Cir. 2000).  In other words, if "a defendant joins an enterprise but commits (or agrees to commit) racketeering acts that are not related to the purposes of the enterprise, then he has not violated RICO." *United States v. Gills*, 702 F. App'x 367, 375 (6th Cir. 2017), *cert. denied sub nom. Walker v. United States*, 138 S. Ct. 1172 (2018); *cert. denied*, 2018 WL 2290800 (June 18, 2018).  Here, none of Distributors' alleged predicate acts—which consist entirely of making "false and misleading statements *to state and federal regulators*" regarding the reporting of *suspicious pharmacy orders*, *see* Compl. ¶ 854—relates to the False Narrative Enterprise's purpose of "defraud[ing] *purchasers* … by propagating falsehoods about *the safety and benefits of opioids*." Compl. ¶ 878.

Third, the Hospital fails adequately to allege that Distributors conducted or participated in the affairs of the False Narrative Enterprise.  To state a RICO claim, a plaintiff must plausibly allege that each defendant had "some part in *directing* the enterprise's affairs." *United States v. Fowler*, 535 F.3d 408, 419 (6th Cir. 2008) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)).  The Hospital fails to plead any facts showing that Distributors "ma[de] decisions on behalf of" the False Narrative Enterprise or "knowingly carr[ied] them out." *Fowler*, 535 F.3d at 418.  For this additional reason, the Hospital's RICO claims against Distributors fail.  *See* Summit Br., Dkt. 491-1 at Part I.D.

### E.    The Hospital's Section 1962(a) Claim Fails.

The Hospital's Section 1962(a) claim, Compl. ¶¶ 886–894, fails for the reasons set forth above and because the Complaint does not allege the elements of a Section 1962(a) claim.

"[I]n order to state a claim under [Section] 1962(a), a plaintiff must plead a specific injury to the plaintiff *caused by the investment of income* into the racketeering enterprise, distinct from any injuries caused by the predicate acts of racketeering." *Vemco, Inc. v.*

*Camardella*, 23 F.3d 129, 132 (6th Cir. 1994); *accord Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990) (dismissing § 1962(a) claim where plaintiffs' alleged injuries were only "traceable to the alleged predicate acts").  For purposes of its Section 1962(a) claim, the Hospital alleges that "[e]ach Defendant" is the relevant "enterprise."  Compl. ¶ 888.  Because the Complaint makes no effort to allege that Distributors' investments of income into their own businesses proximately caused the Hospital's injuries, the Section 1962(a) claim fails as a matter of law.  *See Vemco, Inc.*, 23 F.3d at 132; *Craighead*, 899 F.2d at 494; *see also supra* Part II.A (causation under RICO must be direct).

### F.    The Hospital's Conspiracy Claim Fails.

The Hospital's RICO conspiracy allegations under Section 1962(d), *e.g.*, Compl. ¶¶ 883, 886, fail for three reasons.  First, the conspiracy claim should be dismissed for the same reasons as the substantive RICO allegations.  *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 805–06 (6th Cir. 2015) ("To state a claim for RICO conspiracy, one must successfully allege all the elements of a RICO violation….").  Second, the conspiracy claim fails because the Hospital does not allege with the requisite particularity the "existence of an illicit agreement to violate" the substantive provisions of RICO on the part of Distributors.  *See id.*; *see also Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018, 1040 (N.D. Ohio 2013) (dismissing RICO conspiracy claim where complaint contained only "conclusory allegation[s]" that "fail[ed] to allege when, where, or between whom any alleged illicit agreement was made").  Finally, the entirely unremarkable fact that defendants are members of trade organizations like the Healthcare Distribution Alliance, *see* Compl. ¶ 552, raises no plausible inference of conspiracy, *see Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) ("As for Plaintiffs' allegation that a conspiracy may be inferred from Defendants' participation in trade associations and other professional groups, it [is] well-settled … that participation in trade organizations provides no indication of conspiracy.").

### III.    THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED.

The Hospital's public nuisance claim is substantially similar to Broward County's public nuisance claim.  The Hospital alleges that Distributors created a public nuisance through their distribution of prescription opioids to DEA-registered and state-licensed pharmacies.  Like Broward County, the Hospital (1) does not allege interference with rights connected to property; (2) seeks to regulate subject matter properly within the jurisdiction of state and federal agencies; (3) fails to identify any public right with which Distributors interfered; and (4) does not allege that Distributors controlled the prescription opioids at the time of injury.  Accordingly, the Hospital's public nuisance claim fails for the reasons set forth in the *Broward County* brief.  Dkt. 591.1 at Part III.

The Hospital's public nuisance claim is even more misguided than Broward County's because the Hospital is a private plaintiff.  Public nuisance law protects ***public*** rights, or rights belonging collectively to the "public at large," like access to air, water, or public property.  *Page v. Niagara Chem. Div. of Food Mach. & Chem. Corp.*, 68 So. 2d 382, 384 (Fla. 1953).  No such public right is involved here.[11]

But, even if there were a public right not to be negligently injured by prescription drugs that were allegedly deceptively marketed, mis-prescribed, or misused, the Hospital lacks standing to pursue a public nuisance claim.  Florida, like every other jurisdiction, recognizes that

---

[11] As explained in the *Summit County* brief, Dkt. 491-1 at 4, access to prescription opioids, unlike clean air or water, is restricted and is granted only after a DEA-registered and state-licensed physician concludes that an individual has a legitimate medical need.  21 C.F.R. § 1306.04(a); Fla. Admin. Code Ann. r. 64B8-9.013.  The right of individuals "not to be … defrauded or *negligently injured*" is a private, not a public, right.  Restatement (Second) of Torts § 821B cmt. g (1979); *see also State v. Lead Indus. Ass'n*, 951 A.2d 428, 448 (R.I. 2008) ("As the Restatement (Second) makes clear, a public right is more than an aggregate of private rights by a large number of injured people."); *City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126, 131 (Ill. App. Ct. 2005) (public nuisance is more than "an assortment of claimed private individual rights").

"public wrong[s] must be redressed at the suit *of the state*" or other authorized public official. *Id.*; *Brown v. Fla. Chautauqua Ass'n*, 52 So. 802, 804 (Fla. 1910) ("In order to secure an efficient administration of the law for the benefit of the public and to avoid the evil of many suits to accomplish one purpose, public wrongs are redressed at the suit of proper officials."). **Private** plaintiffs lack standing to bring a public nuisance action **unless** they can show "injury different both in kind and degree from that suffered by the public at large." *Fla. Wildlife Fed. v. Dep't of Envir. Reg.*, 390 So. 2d 64, 67 (Fla. 1980).[12]  That is, if a public nuisance, in addition to its impact on the general public, also invades a plaintiff's private property rights—for example, if the defendant's contamination of a public waterway with toxic chemicals also harm's the downstream farmer's ability to irrigate his crops—that plaintiff can protect his interests without waiting for the proper public officials to take action. *Town of Surfside v. County Line Land Co.*, 340 So. 2d 1287, 1289 (Fla. Dist. Ct. App. 1977) ("The interference with the enjoyment and value of private property rights is a special injury justifying a suit by a private individual to enjoin the nuisance.").

Here, however, the Hospital's injuries are merely derivative, and, for that reason, they are not different or special, but the same as the alleged "public" injury.  According to the Complaint, the Hospital "suffered a special injury" by "provid[ing] uncompensated care for patients suffering from opioid related conditions."  Compl. ¶ 1002.  But "opioid related conditions"—i.e., addiction and overdosing—are the "public" injury.  Compl. ¶ 991 (alleging that the injury to the public is the "over-saturation of opioids in the patient population … as well as the adverse social,

---

[12]  *See also Garnett v. Jacksonville, St. Augustine & Halifax River Ry. Co.*, 20 Fla. 889, 902 (Fla. 1884) ("[I]t is settled law here and elsewhere that an individual cannot recover damages at law, or have relief in equity, against even an admitted public nuisance unless he makes a case of special and particular injury to himself.  He must sustain an injury not common to the public."); *Provitola v. Comer*, 225 So.3d 347, 348 (Fla. Dist. Ct. App. 2017) (per curiam) (dismissing public nuisance claim for lack of special injury).

economic, ***and human health outcomes*** associated with widespread illegal opioid use"). Adverse "human health outcomes," like "opioid related conditions," are dressed-up synonyms for the personal injuries (addiction and overdose) resulting from opioid use.  Thus, the reality is that the Hospital's alleged injury (uncompensated care for injured users) is no different from the alleged injury to the public at large (adverse human health outcomes).  That the Hospital, instead of the patients, bore the ***cost*** of the injury does not change the fact that the alleged ***injury*** is the same.

The Third Circuit dismissed a nearly identical public nuisance claim brought by hospitals against tobacco companies for precisely this reason.  *See Allegheny Gen. Hosp*, 228 F.3d at 446. Sixteen hospitals sued tobacco companies "to recover unreimbursed costs of health care provided to nonpaying patients suffering from tobacco-related disease."  *Id.* at 432.  The court held that the hospitals "did not sufficiently allege that they suffered a harm different from and of greater magnitude than the harm suffered by the general public" because "[t]he Hospitals' injuries are derivative of the nonpaying patients' injuries."  *Id.* at 446.  Given that "the Hospitals are one of numerous parties in the public harmed by [the defendant's conduct]," the court concluded that remedying the alleged nuisance "is more properly the task for public officials."  *Id.*; *see Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 703, 707 (dismissing public nuisance claim where hospitals "attempt[ed] to recover for harm that is derivative of personal injuries visited upon their patients"); *see also Burgess v. M/V Tamano*, 370 F. Supp. 247, 251 (D. Me. 1973), *aff'd*, 559 F.2d 1200 (1st Cir. 1977) (dismissing claim based on "loss of customers indirectly resulting from alleged pollution" because the alleged injury "is derivative from that of the public at large").

The same outcome is required here.  Like the *Allegheny* and *Washington* hospitals, the Hospital alleges that its patients suffered opioid-related injuries, and that the Hospital—rather

than patients themselves—bore the medical cost of those injuries.  According to the Hospital, the alleged nuisance ("the opioid epidemic") has interfered with its "economic rights"—in plain terms, the "right" to be paid the full retail charge for those individuals without insurance who came to the Hospital seeking care for addiction or an overdose.  Compl. ¶ 995.  This right arises from the federal prohibition against denying emergency-room care to the indigent, and concerns only how much the Hospital will be paid.  Basic principles of subrogation and derivative injury show that the Hospital is asserting an injury that belongs in the first instance to the injured opioid users.  *See supra* Part I.  "[A] third-party payor is limited to pursuing subrogation remedies and ***does not have an independent claim against alleged tortfeasors*.**"  *Republic of Venezuela*, 827 So. 2d at 341.

For these reasons, and those given in the *Summit County* and *Broward County* briefs, Dkt. 491-1 at Part II; Dkt. 591-1 at Part III, the court should dismiss the Hospital's public nuisance claim.

## IV.     THE NEGLIGENCE CLAIMS SHOULD BE DISMISSED.

The Hospital purports to assert claims for negligence, wanton negligence, negligence *per se*, and negligent distribution against Distributors.  All of these claims fail as a matter of law.

The crux of the Hospital's negligence-based claims is that Distributors breached an alleged duty to the Hospital to report or stop shipment of suspicious orders by their retail pharmacy customers.  *See* Compl. ¶¶ 617–624.  These claims fail because (1) there is no private right of action to enforce Distributors' duties under federal CSA or its implementing regulations or under Florida law; (2) there is no common law duty running to the Hospital to report or halt suspicious orders; and (3) the Complaint fails to plead facts suggesting that Distributors breached any duty to the Hospital.

### A.     There Is No Private Right of Action.

The genesis of Distributors' alleged duty to report or halt suspicious orders is the federal CSA and a federal regulation promulgated thereunder, 21 C.F.R. § 1301.74(b).  *See* Compl. ¶¶ 520–523, 942.  As explained in Distributors' *Summit County* brief, however, there is no private right of action to enforce that federal reporting requirement.  *See* Dkt. 491-1 at Part III.B.1.

The Hospital also asserts that a duty to report suspicious orders exists under the Florida Drug and Cosmetic Act ("FDCA"), Fla. Stat. §§ 499.001–499.94.  *See* Compl. ¶ 943.  There is, however, likewise no express or implied private right of action to enforce the FDCA.  *See* Broward Br., Dkt 591-1 at Part IV.A.[13]

### B.       The CSA and FDCA Cannot Form the Basis of a Negligence *Per Se* Claim.

The Hospital asserts that Distributors' alleged failure to comply with provisions of the CSA and the FDCA constitutes negligence *per se*, but the negligence *per se* doctrine cannot be used as a "back door" to create a private right of action.  Under Florida law, negligence *per se* may not be premised on a violation of a federal regulation or Florida statute unless there is evidence demonstrating that the legislature intended to create a private right of action.  *See Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288 (M.D. Fla. 2018) ("[V]iolation of a federal regulation does not create civil liability based upon a theory of negligence per se in the absence

---

[13]   *See also Lemy v. Direct Gen. Fin. Co.*, 559 F. App'x 796, 799 (11th Cir. 2014) (per curiam) (affirming the district court's reasoning that "since the Florida legislature had created a private right of action for some insurance code violations, but not for others, plaintiffs could not circumvent this legislative decision by asserting common law claims premised on violations of code sections"); *Patel v. Catamaran Health Sols., LLC*, No. 15-cv-61891, 2016 WL 5942475, at *8 (S.D. Fla. Jan. 14, 2016) ("Florida law is clear that no private right of action exists for alleged statutory violations, even on common law theories, unless the text or legislative history of the statute at issue confirms that the Legislature intended to confer such a right."); *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008) (per curiam) ("[P]laintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions of [the Florida Unfair Insurance Trade Practices Act] by asserting common law claims based on such violations").

of evidence of a legislative intent to create a private cause of action."); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1229 (S.D. Fla. 2010) ("Plaintiffs cannot use negligence per se to create a private cause of action for alleged violations of [a Florida statute] because the legislature has not demonstrated an intent to create a private cause of action under these sections.").

Because there is no private right of action to enforce the CSA or the FDCA, the Hospital may not pursue a negligence *per se* claim based on violations of either statute.  *Labzda*, 292 F. Supp. 2d at 1355 ("Nothing suggests that the legislative intent behind [the Controlled Substances Act] creates a private remedy based on the doctrine of negligence per se.") (citing *Murthy v. N. Sinha Corp.*, 644 So.2d 983, 985 (Fla.1994)).

**C.      Distributors Do Not Owe the Hospital a Duty Under the Common Law.**

The Hospital also vaguely alleges that Distributors have a common-law duty to "exercise reasonable care in the ... distributing of highly dangerous opioid drugs," *see* Compl. ¶ 931, and that they "breached their duty to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates" to prevent diversion.  *Id.* ¶ 621.  For several reasons, these assertions cannot rescue the Hospital's negligence claims.

It is axiomatic that actionable negligence does not exist in the absence of a duty.  *See, e.g.*, *Robertson v. Deak Perera (Miami), Inc.*, 396 So.2d 749, 750 (Fla. Dist. Ct. App.), *rev. denied*, 407 So. 2d 1105 (Fla. 1981).  The Hospital identifies no authority under Florida law suggesting a common-law duty to report or halt suspicious orders—nor are Distributors aware of any such authority.   Because these purported duties were unknown at common law, the Hospital's claim fails.  *See McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992) (in a negligence action, the existence of a duty is a question of law to be determined by the court).

Moreover, even if Distributors had a duty to report or halt suspicious orders, that duty would not run to the Hospital.  Under Florida law, the determination of whether a duty exists

depends on the nature of the relationship between the plaintiff and defendant.  *See, e.g.*, *Sewell v. Racetrac Petroleum, Inc.*, No. 3D16-1218, 2017 WL 6598586, at *3 (Fla. Dist. Ct. App. Dec. 27, 2017).  "To sustain a cause of action in negligence, a complaint must allege ultimate facts which establish a relationship between the parties giving rise to a legal duty on the part of the defendant to protect the plaintiff from the injury of which he complains."  *Ankers v. Dist. Sch. Bd. of Pasco Cty.*, 406 So. 2d 72, 73 (Fla. Dist. Ct. App. 1981).  The Complaint, however, does not allege that Distributors—who purchase pharmaceuticals from manufacturers and sell them to licensed pharmacies—have any relationship with the Hospital whatsoever.

Any allegation that Distributors have a free-floating duty to "prevent diversion" also fails for another reason:  Distributors have no duty to prevent the conduct of third parties who illegally divert opioids after the drugs have left Distributors' custody and control.  Under Florida law, there is no duty to control the conduct of third parties, particularly third parties engaged in illegal conduct, in the absence of a "special relation" between the parties or between the defendant and a third person.  *See Williams v. Mosaic Fertilizer, LLC*, No. 8:14-cv-1748, 2015 WL 12835675, at *1 (M.D. Fla. Apr. 22, 2015); *Cook v. MillerCoors, LLC*, 829 F. Supp. 2d 1208, 1217 (M.D. Fla. 2011); *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985); *Palmer v. Shearson Lehman Hutton, Inc.*, 622 So. 2d 1085, 1089 (Fla. App. 1993).  Such a "special relation" occurs only in limited circumstances such as where one "takes charge" of a person.  *Lighthouse Mission of Orlando, Inc. v. Estate of McGowen*, 683 So. 2d 1086, 1089 (Fla. Dist. Ct. App. 1996) (per curiam); *accord Dep't of Corr. v. McGhee*, 653 So. 2d 1091, 1095 n.3 (Fla. Dist. Ct. App. 1995).  "Implicit in the special relationship exception … is the concept that, when relying on a special relationship between the defendant and the person whose conduct needs to be controlled, the defendant must have the right or ability to control the

third person's conduct." *Palmer*, 622 So. 2d at 1089.  Accordingly, Distributors have no duty to control third parties whose diversion of opioids allegedly caused the Hospital to incur expenses because Distributors have no "right or ability" to control those parties' actions.  *See Labzda*, 292 F. Supp. 2d at 1355 (drug manufacturer had no common law duty to control physicians prescribing its drugs); *see also* Summit Br., Dkt. 491-1 at Part III.B.4.

### D.      The Hospital Fails Adequately To Plead That Distributors Breached a Duty.

The Hospital's negligence claims also fail because it has not properly alleged the breach of any duty to report or halt suspicious orders.  The Hospital's allegation that Distributors breached their purported duties is wholly conclusory.  The Complaint does not identify any specific order that one of the Distributors should have reported or refused to fill, let alone make any effort to connect Distributors' alleged failure to any injury purportedly suffered by the Hospital.  For these reasons, the Hospital's negligence claims fail as a matter of law.

### E.      The Hospital's "Wanton Negligence" Claim Fails as a Matter of Law.

Under Florida law "willful and wanton negligence" is considered a 'more culpable' form of misconduct" than ordinary negligence; "that is, conduct which is more in the nature of an intentional wrong."  *Boyce v. Pi Kappa Alpha Holding Corp.*, 476 F.2d 447, 451–52 (5th Cir. 1973) (emphasis omitted).  "Under either form of negligence, the defendant mus[t] breach a duty of care; the deciding factor between the two is exactly what amount of care was breached."  *Irwin v. Miami-Dade Cty. Pub. Sch.*, No. 06-23029-CIV, 2009 WL 497652, at *4 (S.D. Fla. Feb. 25, 2009), *aff'd*, 398 F. App'x 503 (11th Cir. 2010) (per curiam).  As set forth above, the Hospital's allegations do not support a claim that Distributors had or breached any duty.  The "wanton negligence" claim therefore fails as a matter of law.

### F.      The Hospital Fails to State a Claim for Negligent Distribution.

The Hospital's "negligent distribution" clam, alleging that Distributors breached statutory

and common-law duties by allegedly failing to report and halt suspicious orders, thereby permitting diversion, Compl. ¶¶ 984–986, is entirely duplicative of its negligence claim and fails for the same reasons.[14]

## V.     THE HOSPITAL'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The Hospital's unjust enrichment claim fails for several reasons.  First, the claim is based on the same alleged conduct underlying its other claims and should be dismissed as duplicative. *See Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013); *accord Gurerro v. Target Corp.*, 889 F. Supp. 2d 1348, 1356–57 & n.7 (S.D. Fla. 2012) ("[T]he factual allegations underlying the [Florida Deceptive and Unfair Trade Practices Act] and the unjust enrichment claims are exactly the same so Plaintiff should not be permitted to plead an unjust enrichment claim in the alternative.").

Second, the Complaint fails to allege that the Hospital conferred a benefit on Distributors. Under Florida law, a plaintiff must confer a "direct benefit upon Defendants" to bring an unjust enrichment claim.  *Nova Info. Sys. v. Greenwich Ins. Co.*, No. 6:00-cv-1703ORL31, 2002 WL 32075792, at *10 (M.D. Fla. Dec. 13, 2002).  "An ***indirect benefit is not sufficient*** to support a claim for unjust enrichment."  *Tilton v. Playboy Entm't Grp.*, No. 88:05-cv-692, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007).  The Hospital alleges only that it "provided unreimbursed healthcare treatment to patients."  Compl. ¶ 1006.  But those expenditures conferred a direct benefit on patients; they did not confer a benefit—let alone a direct one—on Distributors.  For this reason, and as explained in Distributors' *City of Chicago* and *Monroe County* briefs, the

---

[14]    To the extent that Florida law recognizes a separate claim for "negligent distribution," it is essentially a product liability claim grounded in allegations of design defect and has no relevance to the Hospital's claims against Distributors.  *See, e.g.*, *Grunow v. Valor Corp. of Fla.*, 904 So. 2d 551, 554 (Fla. Dist. Ct. App. 2005).  No decision in Florida has ever found negligent distribution in the context of distribution of prescription drugs.

unjust enrichment claim should be dismissed.  *See* Chicago Br., Dkt. 571-1 at Part V; Monroe County Br., Dkt. 572-1 at Part VIII.

Third, the Hospital fails to allege that Distributors were aware of the benefit conferred on them, as required by Florida law.  *Nova Info. Sys.*, 2002 WL 32075792, at *10.  According to the Complaint, "Defendants appreciated and knew of th[e] benefit because they knew their opioid promotional and marketing policies would cause" hospitals "to provide unreimbursed healthcare."  Compl. ¶ 1007.  The Complaint, however, contains no well-pled allegations that Distributors engaged in any promotional or marketing activities.  *See supra* pp. 3–4; *infra* Part VI.A.  Because the Hospital's only allegation relating to this element of its claim does not apply to Distributors, the unjust enrichment claim against Distributors should be dismissed.

Fourth, as the Complaint acknowledges, the Hospital is obligated under both State and federal law to provide emergency medical care to indigent patients.  *See* Compl. ¶¶ 40–45.  Accordingly, there is nothing unjust about their payment of unreimbursed medical expenses.

## VI.    THE CONSUMER FRAUD CLAIM SHOULD BE DISMISSED.

### A.    The Hospital Fails Properly To Plead a Deceptive Act or Practice.

The Hospital's claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") should be dismissed because it fails to plead, with the requisite particularity, a deceptive act or practice committed by Distributors in the course of trade or commerce.

The Hospital alleges generically that "Defendants" made "false or misleading statements about the efficacy and safety of opioid pharmaceuticals."  Compl. ¶ 905.  Invariably, however, the Complaint's factual allegations relating to such allegedly false or misleading statements involve the conduct of the Marketing Defendants, along with the so-called "Front Groups" and "key opinion leaders" that allegedly worked in concert with the Marketing Defendants.  *See, e.g.*,

*id.* ¶¶ 146–508.[15]  The *only* fraudulent practices that Distributors allegedly engaged in are "omitting the material fact of [their] failure to design and operate a system to disclose suspicious orders of controlled substances" and "failing to actually disclose such suspicious orders."  *Id.* ¶ 902.  These allegations fail to state a claim for at least four separate reasons.

First, they are not pled with the requisite particularity.  Where, as here, an FDUTPA claim sounds in fraud, it is subject to the heightened pleading requirements of Rule 9(b).  *See* Broward Br., Dkt. 591-1 at Part II.A (collecting authority).  The Hospital fails to satisfy this requirement:  it does not identify any specific orders that should have been reported but were not, or any specific misstatement allegedly made by a Distributor.  The Complaint thus fails to allege the "who, what, when, where, and how" of Distributors' allegedly fraudulent conduct.  *See id.*

Second, the Hospital does not allege (other than in wholly conclusory fashion) that Distributors' purported failures to disclose suspicious orders occurred "in the conduct of … trade or commerce," as the FDUTPA requires.  *See* Fla. Stat. § 501.204.  Distributors' purportedly fraudulent omissions were not made to consumers or to businesses or for any commercial purpose.  Rather, they allegedly were made (or omitted) in connection with Distributors' regulatory reporting obligations.  Accordingly, they are not actionable under the FDUTPA.  *See, e.g.*, *Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1321 (M.D. Fla. 2017) (allegedly deceptive statements made to regulators and credit reporting agencies regarding customer's mortgage not made in the course of conducting "trade or commerce" for purposes of FDUTPA); *State v. Shapiro & Fishman, LLP*, 59 So. 3d 353, 355–56 (Fla. Dist. Ct. App. 2011) (allegation that law firm "fabricat[ed] or present[ed] false or misleading documents" did not satisfy "trade or commerce" element).

---

[15]   This reference is to the second ¶ 146.

Third, while a plaintiff under the FDUTPA need not allege actual reliance, it must plead that the defendant's "alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (per curiam) (citing *State v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007)).  Here, the Complaint is entirely devoid of any non-conclusory allegation that the Hospital—let alone any consumer—was likely to be deceived by Distributors' alleged omissions and reporting failures.  Nor would any such allegations be plausible, given that Distributors' reports to DEA are **confidential** and cannot be accessed by either hospitals or consumers.

Fourth, for substantially the reasons explained in Distributors' *Broward County* brief, Distributors' alleged violation of their regulatory obligation to "design and operate a system to disclose suspicious orders" under 21 C.F.R. § 1301.74(b), does not constitute an actionable violation of the FDUTPA.  *See* Broward Br., Dkt. 591-1 at Part II.B.

### B.    The Hospital Fails to Allege Actual Damages Cognizable Under FDUTPA.

The FDUTPA claim also fails because the Hospital does not allege damages cognizable under the statute.  The statute allows recovery only for "actual damages," Fla. Stat. § 501.211(2), defined as the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010); *see also Gastaldi v. Sunvest Resort Cmtys., LC*, 709 F. Supp. 2d 1299, 1304 (S.D. Fla. 2010) (same).  For purposes of the statute, "'actual damages' do not include consequential damages." *Jovine v. Abbott Labs, Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011).  Actual damages under the FDUTPA, moreover, "must **directly flow** from the alleged deceptive act or unfair practice." *Hennegan Co. v. Arriola*, 855 F. Supp.

2d 1354, 1361 (S.D. Fla. 2012).

The FDUTPA specifically prohibits recovery for "[a] claim for personal injury or death," or "a claim for damage to property other than the property that is the subject of the consumer transaction."  Fla. Stat. § 501.212(3).  Accordingly, courts do not permit FDUTPA claims for expenditures arising from personal injuries.  *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (dismissing FDUTPA claim for medical care and loss of earnings).  "If a plaintiff fails to allege a recoverable loss under FDUTPA, the complaint fails to state a claim."  *Mantz v. TRS Recovery Servs., Inc.*, No. 11-80580-CIV, 2011 WL 5515303, at *2 (S.D. Fla. Nov. 8, 2011).

The Hospital's FDUTPA claim runs afoul of these rules in three ways.  First, the Hospital has failed to allege actual damages—that is, it "has not alleged facts sufficient to show that defendants' alleged unfair or deceptive practices caused a diminution in the value of the products that [it] purchased."  *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 329 (S.D.N.Y. 2006), *aff'd*, 279 F. App'x 40 (2d Cir. 2008).  The unreimbursed medical expenses sought by the Hospital do not represent the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered."  *Rodriguez*, 38 So. 3d at 180.

Second, the Hospital's FDUTPA claim does not allege cognizable damages because its purported damages arise from personal injuries.  The Complaint makes clear that the Hospital incurred unreimbursed medical expenses only because patients treated by the Hospital first suffered personal injuries, such as opioid addiction and overdoses.  *See supra* pp. 1–2.  The Hospital's damages therefore arise out of personal injuries and are not cognizable under the FDUTPA.  *See, e.g.*, *Randolph v. 9-1-19 Co.*, No. 3:08-cv-204, 2008 WL 2385230, at *2 (M.D.

Fla. June 7, 2008) (barring recovery under FDUTPA for "medical expenses incurred as a result of … personal injuries").

Third, the damages claimed by the Hospital do not "directly flow" from Distributors' alleged omissions and reporting failures.  *Hennegan*, 855 F. Supp. 2d at 1361.  As explained in Distributors' *Summit County* brief and *supra* Part II.B, many intervening actors and events separate the Hospital's asserted injury from Distributors' alleged reporting failures.  *See* Summit Br., Dkt. 491-1 at Part I.B.

## VII.    THE BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE CLAIM SHOULD BE DISMISSED.

An implied warranty of fitness for a particular purpose arises from circumstances that create an understanding between a buyer and a seller that the goods will be used in a way that deviates from the ordinary use.  *See* Fla. Stat. § 672.315.  A claim for breach lies only where "the [seller], at the time the sale was made, knew of a particular purpose for which the goods were going to be used and that the [buyer] relied upon the defendant's skill and judgment when purchasing [that] product."  *Barnext Offshore, Ltd. v. Ferretti Grp., USA*, No. 10-23869-CIV, 2012 WL 1570057, at *12 (S.D. Fla. May 2, 2012) (citing *Crawford v. Gold Kist, Inc.*, 614 F. Supp. 682, 687 (M.D. Fla. 1985)).  The Hospital has failed to state such a claim against Distributors for at least four distinct reasons.

First, the Hospital does not allege that it purchased opioids from any Distributor.  The Hospital alleges only in conclusory fashion that it "purchased opioid products from Defendants," generally.  Compl. ¶ 923.  This group pleading is insufficient because the Hospital must allege that it was in privity of contract with *each* Distributor.  *See Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. Dist. Ct. App. 1990) (per curiam) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); *Elizabeth N.*

*v. Riverside Grp.*, 585 So. 2d 376, 378 (Fla. Dist. Ct. App. 1991) ("A warranty, whether express

or implied, is fundamentally a contract.  A contract cause of action requires privity."); *see also*

*Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988).  A plaintiff who does not buy a

product "***directly*** from the defendant[] is not in privity with that defendant."  *T.W.M.*, 886 F.

Supp. at 844 (citing 1 White & Summers, *Uniform Commercial Code* § 11-2, at 528 (3rd ed.

1988)); *see also id.* (dismissing for lack of privity).

Although Florida courts have recognized a "direct contacts" exception to the privity

requirement, that exception applies only where a ***manufacturer*** markets directly to an ultimate

consumer.  "[T]he interests of privity are satisfied by direct contact, but only in the sense of

personal contact between the consumer and the manufacturer."  *Davis v. Bos. Sci. Corp.*, No.

2:17-cv-682-FtM-38CM, 2018 WL 2183885, at *5–6 (M.D. Fla. May 11, 2018) (collecting

Florida case law on the privity exception and dismissing claim for lack of privity where a

manufacturer merely engaged in untargeted marketing).  Distributors are not manufacturers;

moreover, the Complaint does not allege that Distributors marketed directly to the Hospital or its

patients.  Compl. ¶¶ 158–160 (alleging "Direct Marketing" by the ***Marketing Defendants***).  The

Hospital's particular-purpose claim against Distributors thus fails for lack of privity.

Second, the Hospital fails to allege a particular purpose for which it purchased

prescription opioids that is distinct from the ordinary purpose for which they are generally

purchased.  It certainly would be odd if it had.  A particular purpose differs "from an ordinary

purpose in that it envisages a specific use by the buyer which is peculiar to the nature of his

business."[16]  *Czarnecki v. Roller*, 726 F. Supp. 832, 843 (S.D. Fla. 1989) (citing *Royal*

---

[16]   Florida law recognizes a separate claim for breach of implied warranty where the goods were
purchased under contract for their ordinary use—the implied warranty of merchantability.  *See* Fla.
Stat. § 672.314.  The Hospital has not alleged a breach of that implied warranty.

*Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983)); *see also* Official Comment 2 to Fla. Stat. § 672.315.  The Complaint does not allege that the Hospital had any particular purpose for the prescription opioids it purchased:  It bought them "to provide pain relief in an appropriate way that did not unnecessarily endanger its patients."  Compl. ¶ 924.  But pain relief is the ordinary purpose for which the product is used; it is in no way a "specific use" that is "peculiar to the nature of" the Hospital's business.  *Czarnecki*, 726 F. Supp. at 843 (quoting *Royal Typewriter*, 719 F.2d at 1100).  Where, as here, a particular purpose is not adequately alleged, dismissal is appropriate.  *See, e.g.*, *Sweeney v. Kimberly-Clark Corp.*, No. 8:14-CV-3201, 2015 WL 5446797, at *5 (M.D. Fla. Sept. 15, 2015); *Zoom Tan, LLC v. Heartland Tanning, Inc.*, No. 2:12-cv-684, 2013 WL 5720140, at *3–4 (M.D. Fla. Oct. 21, 2013).

Third, even if the Hospital had a particular purpose for prescription opioids other than providing pain relief, the Hospital has not alleged facts that plausibly support a conclusion that (1) Distributors "knew of [the] particular purpose for which the goods were going to be used," or (2) the Hospital "relied upon the [Distributors'] skill and judgment when purchasing" the product for that particular purpose.  *Barnext Offshore, Ltd.*, 2012 WL 1570057, at *12.  The knowledge and reliance requirements presuppose that a buyer and a seller are engaged in an arm's-length transaction in which a seller's expertise may make a difference to a buyer purchasing a good for something other than its ordinary purpose.  *See Royal Typewriter*, 719 F.2d at 1100; *Davis*, 2018 WL 2183885, at *5–6.  The Hospital has not alleged that Distributors and the Hospital had any commercial relationship or communications, much less that Distributors had knowledge that the Hospital intended to use prescription opioids for other than their FDA-approved indications or that the Hospital relied on Distributors' skill and judgement

in so using the drugs.  It would be implausible for the Hospital to make any such knowledge or reliance allegations.  Distributors are middlemen.  They do not manufacture opioids, nor do they draft the warnings and instructions for use that accompany the drugs.  Distributors are not doctors, and they do not exercise medical judgment as to how prescription opioids (or any drugs) are used.  As middlemen, Distributors are prevented by law from knowing who—including the Hospital—prescribes opioids to which patients and for what purpose.  *See* 45 C.F.R § 164.502.

Fourth, the Hospital failed to provide notice to Distributors of the alleged breach.  A buyer injured by a breach of an implied warranty of fitness for a particular purpose must "within a reasonable time after he or she discovers or should have discovered [the] breach notify the seller of [the] breach or be barred from any remedy."  Fla. Stat. § 672.307(3)(a); *see Armadillo Distrib. Enters., Inc. v. Hai Yun Musical Instruments Manufacture Co. Ltd.*, No. 8:12-cv-1839, 2015 WL 12732417, at *5 (M.D. Fla. Apr. 28, 2015) (applying the notice requirement to a claim for breach of implied warranty of fitness for a particular purpose).  The notice requirement "is a valid precondition of imposing liability of a seller of goods" for breach of warranty.  *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. Dist. Ct. App. 1980); *see also Hapag-Lloyd, A.G. v. Marine Indem. Ins. Co. of Am.*, 576 So. 2d 1330, 1330–31 (Fla. Dist. Ct. App. 1991) ("[T]he failure to afford the seller reasonable notice … requires a conclusion that … the buyer is barred from remedy.").  The Complaint does not allege that the Hospital provided the required notice—nor could it.

## CONCLUSION

For the foregoing reasons, the Hospital's claims should be dismissed with prejudice.

Dated:  June 29, 2018                          Respectfully submitted,


_/s/ Robert A. Nicholas_                        _/s/ Enu Mainigi_
Robert A. Nicholas                              Enu Mainigi
Shannon E. McClure                              F. Lane Heard III
**REED SMITH LLP**                              Steven M. Pyser
Three Logan Square                              Ashley W. Hardin
1717 Arch Street, Suite 3100                    **WILLIAMS & CONNOLLY LLP**
Philadelphia, PA 19103                          725 Twelfth Street, N.W.
Tel: (215) 851-8100                             Washington, DC 20005
Fax: (215) 851-1420                             Tel: (202) 434-5000
rnicholas@reedsmith.com                         Fax: (202) 434-5029
smcclure@reedsmith.com                          emainigi@wc.com
                                                lheard@wc.com
_Counsel for AmerisourceBergen Corporation_     spyser@wc.com
_and AmerisourceBergen Drug Corporation_        ahardin@wc.com


_/s/ Geoffrey Hobart_                           _Counsel for Cardinal Health, Inc._
Geoffrey Hobart
Mark Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com


_Counsel for McKesson Corporation_

## LOCAL RULE 7.1(F) CERTIFICATION

Local Rule 7.1(f) permits memoranda of up to 30 pages in complex cases.  I, Ashley W. Hardin, hereby certify that this brief conforms to the page limitations set forth in Local Rule 7.1(f) and Case Management Order One (Dkt. 232, Apr. 11, 2018) § 2.h.

*/s/ Ashley W. Hardin*
Ashley W. Hardin

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Ashley W. Hardin*
Ashley W. Hardin