**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*State of Alabama v. Purdue Pharma L.P., et al.*<br>Case No. 18-OP-45236 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT**
**OF MCKESSON'S MOTION TO DISMISS**
**<u>FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ......................................................................................................................... 1

    A.    Regulatory Background. ................................................................................... 1

    B.    Factual Background. ......................................................................................... 2

ARGUMENT ............................................................................................................................... 3

I.    THE STATE'S CLAIMS FAIL FOR SEVERAL THRESHOLD REASONS. ................ 3

    A.    The State Fails To Allege Proximate Causation. .................................... 3

    B.    The Derivative Injury Rule Bars the State's Claims. .............................. 6

    C.    The Free Public Services Doctrine Bars the State's Claims. ............... 10

II.    THE ALABAMA CSA CLAIM SHOULD BE DISMISSED. ....................................... 11

    A.    The Remedies Sought by the State Are Not Available Under the Alabama CSA........................................................................................ 11

    B.    The Complaint Fails To Allege That McKesson Violated the Alabama CSA........................................................................................ 12

        1.    The State has not pled a violation of any registration requirement. ......... 12

        2.    There is no obligation under Alabama law to report suspicious orders............................................................................... 13

III.    THE PUBLIC NUISANCE, NEGLIGENCE AND WANTONNESS CLAIMS SHOULD BE DISMISSED. ........................................................................ 14

    A.    The State Fails To Allege a Cognizable Duty. ...................................... 15

        1.    There is no private right of action to enforce the federal CSA................ 15

        2.    There is no Alabama law duty to report suspicious orders to the State............................................................................ 16

        3.    McKesson has no free-floating duty to prevent diversion. ....................... 18

    B.    The State Fails To Allege Breach or But-For Causation. ...................... 19

C. The Wantonness Claim Fails for Additional Reasons. ......................................... 20

D. The Public Nuisance Claim Fails for Additional Reasons.................................... 20

IV. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. .......................... 21

V. THE DECEPTIVE TRADE PRACTICES CLAIM SHOULD BE DISMISSED........... 23

A. The State Does Not Plead an Actionable Misrepresentation. .............................. 23

B. The State's ADTPA Claim Is Time-Barred....................................................... 25

C. The State Failed To Comply with the Statute's Notice Requirement.................. 27

D. The State's Claim Is Precluded by Its Common Law Claims. ............................ 27

VI. THE DRUG-RELATED NUISANCE CLAIM SHOULD BE DISMISSED. ................. 28

CONCLUSION...................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pioneer Life Ins. Co. v. Sherrard*,
   477 So. 2d 287 (Ala. 1985) ..................................................................................................24

*Ashley County v. Pfizer, Inc.*,
   552 F.3d 659 (8th Cir. 2009) ..................................................................................................5

*Avis Rent A Car Sys., Inc. v. Heilman*,
   876 So. 2d 1111 (Ala. 2003) ................................................................................................21

*Baker v. Smith & Wesson Corp.*,
   No. Civ.A. 99C-09-283-FS, 2002 WL 31741522 (Del. Super. Ct. Nov. 27,
   2002) ....................................................................................................................................10

*Bd. of Sch. Comm'rs v. Architects Grp., Inc.*,
   752 So. 2d 489 (Ala. 1999) ..................................................................................................25

*BellSouth Mobility, Inc. v. Cellulink, Inc.*,
   814 So. 2d 203 (Ala. 2001) ..................................................................................................24

*Birmingham Ry., Light & Power Co. v. Ely*,
   62 So. 816 (Ala. 1913) ......................................................................................................4, 5

*Bryan v. Ala. Power Co.*,
   20 So. 3d 108 (Ala. 2009) ....................................................................................................18

*Christensen v. Harris County*,
   529 U.S. 576 (2000) ..............................................................................................................15

*City of Birmingham v. Crow*,
   101 So. 2d 264 (Ala. 1958) ....................................................................................................7

*City of Philadelphia v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002) ..................................................................................................5

*Coffman v. Bank of Am., NA*,
   No. 2:09-cv-00587, 2010 WL 3069905 (S.D. W.Va. Aug. 4, 2010) ....................................17

*Davis v. Wells Fargo Home Mortg., Inc.*,
   No. 2:15-CV-00329-JEO, 2016 WL 393850 (N.D. Ala. Feb. 2, 2016) ................................22

*DGB, LLC v. Hinds*,
   55 So. 3d 218 (Ala. 2010) ....................................................................................................26

*Dickinson v. Land Developers Constr. Co.*,
   882 So. 2d 291 (Ala. 2003) ...................................................................................16

*Dixon v. Hot Shot Express, Inc.*,
   44 So. 3d 1082 (Ala. 2010) ..................................................................................17

*In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*,
   No. 16-02709-MD-W-GAF, 2017 WL 3863866 (W.D. Mo. Aug. 3, 2017) ..........................22

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*,
   No. 2:13-md-2433, 2015 WL 4092866 (S.D. Ohio July 6, 2015) ...........................................17

*E. States Health & Welfare Fund v. Philip Morris, Inc.*,
   188 Misc. 2d 638 (N.Y. Sup. Ct. 2000) ................................................................7

*Edmonson v. Cooper Cameron Corp.*,
   374 F. Supp. 2d 1103 (M.D. Ala. 2005) ...............................................................14

*Ex parte Emerald Mountain Expressway Bridge, L.L.C.*,
   856 So. 2d 834 (Ala. 2003) ..................................................................................29

*Emery v. Talladega Coll.*,
   688 F. App'x 727 (11th Cir. 2017) ......................................................................19

*F.T.C. v. Peoples Credit First, LLC*,
   244 F. App'x 942 (11th Cir. 2007) ......................................................................24

*Republic of Venezuela ex rel. Garrido v. Philip Morris Cos.*,
   827 So. 2d 339 (Fla. Dist. Ct. App. 2002) ...........................................................7

*In re Gen. Motors LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017)..................................................................22

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010)....................................................................................................4

*Hilyer v. Fortier*,
   227 So. 3d 13 (Ala. 2017).....................................................................................20

*Holmes v. Behr Process Corp.*,
   No. 2:15-CV-0454-WMA, 2015 WL 7252662 (N.D. Ala. Nov. 17, 2015) ....................24, 27

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992)................................................................................................4

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*,
   196 F.3d 818 (7th Cir. 1999) .........................................................................8, 9, 23

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999)..........................................................................6

*Lane v. State*,
    66 So. 3d 824 (Ala. 2010).......................................................................28

*Lauderdale Cty. Bd. of Educ. v. Alexander*,
    110 So. 2d 911 (Ala. 1959)......................................................................20

*Martin v. Medtronic, Inc.*,
    63 F. Supp. 3d 1050 (D. Ariz. 2014) .......................................................20

*Maryland v. Philip Morris Inc.*,
    No. 96122017, 1997 WL 540913 (Md. Cir. Ct. May 21, 1997) ...........7, 8

*McCallister v. Purdue Pharma L.P.*,
    164 F. Supp. 2d 783 (S.D. W.Va. 2001)..................................................16

*McKesson Corp. v. Hembree*,
    No. 17-cv-323, 2018 WL 340042 (N.D. Okla. Jan. 9, 2018) ..................16

*Mickens v. Ford Motor Co.*,
    900 F. Supp. 2d 427 (D.N.J. 2012) .........................................................20

*State ex rel. Miller v. Philip Morris Inc.*,
    577 N.W.2d 401 (Iowa 1998) ....................................................................8

*Moore v. Liberty Nat'l Ins. Co.*,
    108 F. Supp. 2d 1266 (N.D. Ala. 2000), *aff'd*, 267 F.3d 1209 (11th Cir. 2001) ...................26

*Myers v. United States*,
    17 F.3d 890 (6th Cir. 1994) .....................................................................17

*Nunley v. State*,
    628 So. 2d 619 (Ala. 1993).......................................................................27

*Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*,
    925 So. 2d 927 (Ala. 2005)......................................................................18

*Reid v. Unilever U.S., Inc.*,
    964 F. Supp. 2d 893 (N.D. Ill. 2013) ......................................................23

*Safe Streets Alliance v. Alt. Holistic Healing, LLC*,
    No. 15-cv-00349, 2016 WL 223815 (D. Colo. Jan. 19, 2016) ...............18

*Sao Paulo v. Am. Tobacco Co.*,
    919 A.2d 1116 (Del. 2007) ........................................................................8

*Shmatko v. Ariz. CVS Stores LLC*,
  No. 14-cv-01076, 2014 WL 3809092 (D. Ariz. Aug. 1, 2014) ...........................................16

*Shows v. Morgan*,
  40 F. Supp. 2d 1345 (M.D. Ala. 1999) ..................................................................................30

*Ex parte Simpson*,
  36 So. 3d 15 (Ala. 2009) ........................................................................................................23

*Smith v. Hickenlooper*,
  164 F. Supp. 3d 1286 (D. Colo. 2016) ...................................................................................16

*Southern v. Pfizer, Inc.*,
  471 F. Supp. 2d 1207 (N.D. Ala. 2006) .................................................................................22

*Star Freight, Inc. v. Sheffield*,
  587 So. 2d 946 (Ala. 1991) ......................................................................................................9

*State Superintendent of Educ. v. Ala. Educ. Ass'n*,
  144 So. 3d 265 (Ala. 2013) .....................................................................................................29

*State v. Black Hills Power, Inc.*,
  354 P.3d 83 (Wyo. 2015) ........................................................................................................10

*State v. Crocker's Estate*,
  83 So. 2d 261 (Ala. Ct. App. 1955) ........................................................................................25

*State v. Mudd*,
  143 So. 2d 171 (Ala. 1962) .....................................................................................................25

*Terrell v. Ala. Water Serv. Co.*,
  15 So. 2d 727 (Ala. 1943) .......................................................................................................16

*Tipler v. McKenzie Tank Lines*,
  547 So. 2d 438 (Ala. 1989) ..........................................................................................14, 20, 21

*Travis v. Ziter*,
  681 So. 2d 1348 (Ala. 1996) ...................................................................................................27

*United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund v.*
  *Philip Morris, Inc.*,
  223 F.3d 1271 (11th Cir. 2000) ........................................................................................3, 4, 7

*United States v. 1840 Embarcadero*,
  932 F. Supp. 2d 1064 (N.D. Cal. 2013) .................................................................................16

*United States v. Standard Oil Co.*,
  332 U.S. 301 (1947) ................................................................................................................10

*Wall v. Mich. Rental*,
　　852 F.3d 492 (6th Cir. 2017) ...................................................................................23

*Walnut Lake Land Co., Inc. v. Petro Stopping Centers, LP*,
　　No. 7:06-CV-00472-LSC, 2009 WL 10689908 (N.D. Ala. Jan. 21, 2009) ..........................14

*Ex parte Ward*,
　　46 So. 3d 888 (Ala. 2007) ......................................................................................26

*Webster v. Pacesetter, Inc.*,
　　259 F. Supp. 2d 27 (D.D.C. 2003) ...........................................................................17

*Welch v. Atmore Cmty. Hosp.*,
　　704 F. App'x 813 (11th Cir. 2017) ..........................................................................16

*West Virginia v. McKesson Corp.*,
　　No. 2:17-03555 (S.D. W.Va. Feb. 15, 2018) ...............................................................16

**Statutes**

Ala. Code § 6-5-120 *et seq.* ....................................................................................14, 20

Ala. Code § 6-5-121 ...............................................................................................21

Ala. Code § 6-5-155 ...............................................................................................28

Ala. Code § 6-5-155.1 .............................................................................................29

Ala. Code § 6-5-155.2 .............................................................................................28

Ala. Code § 6-5-155.3 .......................................................................................28, 29, 30

Ala. Code § 6-5-155.4 .............................................................................................28

Ala. Code § 6-5-156.3 .........................................................................................28, 29

Ala. Code § 8-19-3 ...............................................................................................25

Ala. Code § 8-19-4 ...............................................................................................25

Ala. Code § 8-19-5 ...........................................................................................23, 24

Ala. Code § 8-19-6 ...............................................................................................24

Ala. Code § 8-19-8 ...............................................................................................27

Ala. Code § 8-19-14 ..............................................................................................25

Ala. Code § 8-19-15 ..............................................................................................27

Ala. Code § 20-2-51 ...........................................................................................11, 12

Ala. Code § 20-2-52 .............................................................................................2, 12

Ala. Code § 20-2-54 ...............................................................................................11

Ala. Code § 20-2-56 ...............................................................................................13

Ala. Code § 20-2-58 .................................................................................................2

Ala. Code § 20-2-71 ...............................................................................................11

Ala. Code § 20-2-72 ...............................................................................................11

Ala. Code § 20-2-90 ...............................................................................................11

Ala. Code §  20-2-92 ..............................................................................................11

Ala. Code § 20-2-93 ...............................................................................................11

Ala. Code § 20-2-213 ...............................................................................................2

Ala. Code § 22-6-6 .............................................................................................9, 10

Ala. Code § 34-24-360 .............................................................................................2

**Other Authorities**

21 C.F.R. § 1301.74(b) ...............................................................................3, 13, 14, 15

21 C.F.R. § 1304.04 ................................................................................................14

Ala. Admin. Code r. 680-X-2-.23 ............................................................................14

Ala. Admin. Code r. 680-X-3-.05 .................................................................11, 12, 13

Fed. R. Civ. P. 9(b) .....................................................................................21, 23, 26

Restatement (Second) of Torts § 821B cmt. g (1979) ...............................................21

DEA, *Practitioner's Manual, An Informational Outline of the Controlled
    Substances Act* (2006 ed.) .................................................................................15

Defendant McKesson Corporation ("McKesson") moves to dismiss the First Amended Complaint ("Complaint") filed by Plaintiff State of Alabama ("Alabama" or the "State").

## PRELIMINARY STATEMENT

The problem of opioid abuse is real, but the attempt by Alabama to fix liability on McKesson—which neither promotes opioids to doctors nor provides them to patients—is misplaced.  The gist of the Complaint is that opioid manufacturers allegedly deceived doctors and the public by marketing opioid medications as non-addictive and effective for treating chronic pain.  But the Complaint contains no factual allegations that *McKesson* misled doctors or the public about the risks, effectiveness or addictive properties of opioid medications.  And for good reason: McKesson is a wholesaler, whose role in the pharmaceutical distribution chain is limited to filling orders placed by DEA-registered and state-licensed pharmacies and dispensaries.  McKesson does not prescribe drugs to patients; doctors do that.  And it does not provide drugs to patients; pharmacists do that.  Against this backdrop, it is unsurprising that each of the State's claims against McKesson fails as a matter of law.

## BACKGROUND[1]

### A.    Regulatory Background.

The manufacture, prescription, dispensing, and distribution of opioid medication is regulated extensively by federal and state agencies.  The relevant federal regulatory background is described in detail in Distributors' *Summit County* brief, which McKesson incorporates by

---

[1]  Unless otherwise noted, this brief adds all emphasis in quotations and omits citations and internal quotation marks.  McKesson also hereby adopts, as if set forth herein, the arguments made in support of the separate motion to dismiss filed today in this case by the Manufacturer Defendants, as well as the arguments made by Distributors in the *Summit County*, *Monroe County* and *City of Chicago* briefs and cited herein, *see* Distributors' Mem. in Supp. of Mot. to Dismiss Summit Cty. Second Am. Compl. ("Summit Br."), Dkt. 491-1; Distributors' Mem. in Supp. of Mot. to Dismiss City of Chicago First Am. Compl. ("Chicago Br."), Dkt. 571-1; Distributors' Mem. in Supp. of Mot. to Dismiss Monroe Cty. Second Am. Compl. ("Monroe Br."), Dkt. 572-1.

reference herein.  *See* Summit Br., Dkt. 491-1 at pp. 3–6.

Under Alabama law, persons or entities engaged in the manufacture, distribution, or dispensing of controlled substances must be registered with the relevant Alabama certifying board. Ala. Code § 20-2-52.  As under federal law, Alabama state law mandates that "a pharmacist may dispense directly a controlled substance in Schedule II only pursuant to a written prescription signed by the practitioner," *id.* § 20-2-58(a), and a doctor may prescribe controlled substances only for "a legitimate medical purpose," *id.* § 34-24-360(8).  Since at least 2006, moreover, pharmacists and doctors who dispense opioids have been required to report to the Alabama Department of Public Health information about each opioid dispensed, including the drug code of the prescribed opioid and the amount dispensed, the name of the patient, the name of the prescribing doctor, the name of the dispensing pharmacy or doctor, the date the prescription was filled, and the method of payment.  *Id.* § 20-2-213.  Thus, any assertion by the State that it was not aware of the quantity of opioids being dispensed to patients in Alabama is patently untrue.

### B.    Factual Background.

This action was filed by the State against several manufacturers of prescription opioid medications (the "Manufacturer Defendants") and McKesson, a wholesale distributor of pharmaceutical products.  Compl. ¶¶ 17-24.  As the Complaint acknowledges, McKesson's role in the pharmaceutical supply chain is limited to selling prescription opioids to pharmacies and other retailers, who in turn provide opioids to patients.  *Id.*; *see id.* ¶ 257.  Unlike the Manufacturer Defendants, who "aggressively advertised to and persuaded doctors to prescribe highly addictive, dangerous opioids," *id.* ¶ 3, McKesson does not market drugs to doctors.

The vast majority of the Complaint is devoted to detailing a "sophisticated and highly deceptive marketing campaign" on the part of the Manufacturer Defendants, which allegedly "misrepresented the risks and benefits of using opioids."  *Id.* ¶¶ 8, 10; *see, e.g.*, *id.* ¶¶ 64–229.

Although the Complaint sometimes resorts to the improper use of group pleading—alleging generically that "Defendants" did this or that—the factual allegations of the Complaint make clear that the purported "misinformation campaign" was conducted by the Manufacturer Defendants, along with various "Front Groups" and "key opinion leaders" that allegedly worked in concert with the manufacturers. *See, e.g.*, *id.* ¶¶ 31–229. Notably, the Complaint does not contain a single, non-conclusory allegation that McKesson made a misrepresentation regarding the effectiveness, risks, or addictive properties of opioids—nor could it.

Instead, the Complaint alleges that McKesson failed to "monitor, detect, investigate, refuse to fill, and report suspicious orders"—a duty purportedly imposed on wholesale distributors by a federal regulation, 21 C.F.R. § 1301.74(b), and incorporated by Alabama law. *See* Compl. ¶¶ 230, 242–46. The Complaint also baldly alleges that "diversion" was a foreseeable consequence of McKesson's conduct, *id.* ¶ 231, yet it fails to connect any wholesale pharmacy order supplied by McKesson to even a single instance of diversion that allegedly occurred within the State.

## ARGUMENT

## I.  THE STATE'S CLAIMS FAIL FOR SEVERAL THRESHOLD REASONS.

### A.  The State Fails To Allege Proximate Causation.

The State's claims fail because it has not adequately alleged—and could not adequately allege—either but-for causation, *see infra* pp. 19-20, or proximate causation.

"A well-established principle of Alabama law is that … a plaintiff must establish that the defendant's misconduct was the 'proximate cause'—and not just the 'remote cause'—of the plaintiff's injuries." *United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271, 1273 (11th Cir. 2000). Proximate causation is an element of at least the State's nuisance, negligence, and wantonness claims. *See infra* Part III. Because the Complaint pleads, at most, a remote and indirect connection between McKesson's alleged

wrongdoing and the State's claimed harm, those claims fail as a matter of law.

As the Alabama Supreme Court has explained,

The law cannot undertake to trace back the chain of causes indefinitely, for it is obvious that this would lead to inquiries far beyond human power and wisdom—in fact, infinite in their scope. It therefore **stops at the first link in the chain of causation**, and looks only to the person who is the proximate cause of the injury. The general rule is that the damage to be recovered must be the natural and proximate consequence of the act complained of. It is not enough if it be the natural consequence; it must be both natural and proximate.

*Birmingham Ry., Light & Power Co. v. Ely*, 62 So. 816, 819 (Ala. 1913). "In this respect, Alabama law is consistent with the usual common law rule of proximate cause." *Philip Morris, Inc.*, 223 F.3d at 1273. Under that usual rule, a "**direct** relation between the injury asserted and the injurious conduct alleged" is required. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).

The State does not allege the required direct causal connection between McKesson's allegedly injurious conduct and its claimed injury. The State's injury purportedly consists of healthcare costs, law enforcement costs, and lost tax revenue. Compl. ¶ 377. But the Complaint contains no allegations suggesting that McKesson's alleged wrongdoing (i.e., purported regulatory reporting failures) was the **direct** cause of the State's injury—nor could it. The State's claims thus seek impermissibly to "go beyond the first step" of causation. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010) (proximate causation typically cannot "go beyond the first step").

The Eleventh Circuit's decision in the *Philip Morris* case is instructive. There, a third-party payor of medical expenses brought suit under Alabama law against tobacco companies, seeking to recover for costs allegedly incurred due to tobacco-related illnesses. *See* 223 F.3d at 1272. Rejecting the argument that Alabama law compelled a different result, the court held—consistent with the "uniform[]" decisions of its "sister circuits" in the tobacco cases—that "all of Plaintiff's claims, as a matter of law, are barred by the doctrine of proximate cause." *Id.* at 1274.

The State's causation allegations here are at least as remote and indirect as in the tobacco

4

cases. The State's injuries necessarily arise only after its citizens use (or misuse) opioids, but McKesson does not supply opioids to Alabama citizens. Rather, McKesson delivers controlled substances to licensed pharmacies and other retail dispensaries. *See* Compl. ¶ 257 (acknowledging that McKesson sells only to retailers). Those retailers are required, by federal and state laws, to dispense the controlled substances only to patients with a valid prescription, signed by a licensed physician upon a determination of the patient's legitimate medical need. Then, either a patient must misuse the medications, or they must be diverted to another who misuses them, in such a way that ultimately necessitates use of the State's resources. The attenuated and indirect theory of causation advanced by the State against McKesson goes well beyond "***the first link in the chain of causation***," *Ely*, 62 So. at 819, and thus fails under the plain requirements of Alabama law.

The absence of a direct causal connection is further demonstrated here by the fact that the State's claims turn on the intervening criminal conduct of third parties. *See, e.g.*, *Ashley County v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009). In *Ashley*, a number of counties brought claims against manufacturers and distributors of products containing ephedrine or pseudoephedrine, seeking "to recoup the costs expended by the counties in dealing with the societal effects of the methamphetamine epidemic." *Id.* at 662–63. The Eighth Circuit, however, declined to "recognize[] a cause of action available to a government entity to recover against pharmaceutical manufacturers for the legal sale of products containing pseudoephedrine based on the subsequent use of the product in the manufacture of methamphetamine." *Id.* at 673. As the Court explained, "it is inadvisable as a matter of public policy to deem the [distributor] defendants' actions a legal cause of the alleged nuisance" where "[n]one of the Defendants are retailers, nor do they sell the medications directly to the public," but rather sold their products to "independent retailers" from whom illegal methamphetamine cooks obtained the products. *Id.* at 663, 672 & n.5; *see also City*

*of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 424 (3d Cir. 2002) (affirming dismissal of claims against gun distributors because many "links … separate a manufacturer's sale of a gun to a [licensed retailer] and the gun's arrival in the illegal market through a distribution scheme that is not only lawful, but also is prescribed by statute with respect to the manufacturer['s] conduct").

The same reasoning applies with equal force here.  Like distributors of ephedrine products, McKesson does not sell opioids directly to consumers.  Without both a doctor who prescribes opioids to a patient and a pharmacist who dispenses them, the medications supplied by McKesson would have remained on the shelf, reaching no patient.  And, but for the misuse or diversion of the medications by patients or others, there would be no cognizable harm to the persons who used the medications and, in turn, to the State—only the intended use of a lawfully prescribed medicine.

In sum, for these reasons, and as explained in greater detail in Distributors' *Summit County* brief, the connection between the State's alleged injury and McKesson's purported conduct is far too remote and indirect to state a claim.  *See* Summit Br., Dkt. 491-1 at Parts I.B, IV.C.

## B.     The Derivative Injury Rule Bars the State's Claims.

The State alleges that Alabama citizens have abused, become addicted to, been made sick by, and died from opioid medications, and that—as a result of its citizens' "abuse, addiction, morbidity and mortality"—the State has incurred increased costs, including costs for "health services," "treatment and overdose prevention," and "reimburse[ments] [of] prescriptions for opioids" that should not have been written.  *See* Compl. ¶¶ 333, 377, 441.  The State's alleged injuries are thus derivative:  "Without injury to the individual [opioid users], the [State] would not have incurred any increased costs." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999) ("Ultimately … [plaintiffs'] damages are entirely derivative of the harm suffered by plan participants as a result of using tobacco products.").  The State is precluded from recovering for such derivative injuries—at least in the absence of a valid

subrogation claim—as a matter of law.  For this reason, the State's public nuisance, negligence, wantonness, and unjust enrichment claims should all be dismissed.

"The usual common law rule is that a [third-party payor] has no direct cause of action in tort against one who injures the [payor's] beneficiary, imposing increased costs upon the [payor]." *Philip Morris*, 223 F.3d at 1274 (citing *Anthony v. Slaid*, 52 Mass. 290, 290–91 (Mass. 1846)); *see id.* at 1274 n.6 ("The Alabama Supreme Court has cited *Anthony* with approval." (quoting *Comm'rs' Court v. McCann,* 23 Ala. 599 (1853))).[2]  Alabama follows the usual rule:  "the Alabama Supreme Court [has] made clear that—absent subrogation—a healthcare provider has no cause of action against a defendant who injures the health-care provider's ward, causing the health-care provider to incur increased expenses."  *Id.* at 1273 n.5 (collecting cases).

This rule, moreover, applies with full force when governments seek to assert claims based upon expenses incurred in the course of providing services their citizens.  For instance, the Alabama Supreme Court has held that a government has no right to sue in its own name for medical costs it incurred due to the negligence of a tortfeasor in injuring the government's employee.  *City of Birmingham v. Crow*, 101 So. 2d 264, 265 (Ala. 1958).  Numerous other decisions similarly recognize that "third-party payors or providers of medical services, including U.S. States and political subdivisions … have no cognizable claims … to recover medical expenses" from alleged

---

[2]  *See also Republic of Venezuela ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. Dist. Ct. App. 2002) ("Case precedent and settled common-law principles establish that one who pays for the medical expenses of another, may not bring a direct, independent action to recover those expenses from the alleged tortfeasor."); *E. States Health & Welfare Fund v. Philip Morris, Inc.*, 188 Misc. 2d 638, 646 (N.Y. Sup. Ct. 2000) ("[F]or more than [a] century, state and federal courts have adopted the theory that the victim of a tort is the appropriate plaintiff and that third-party providers of medical care may recover only pursuant to rights of subrogation."); *Maryland v. Philip Morris Inc.*, No. 96122017, 1997 WL 540913, at *9 (Md. Cir. Ct. May 21, 1997) ("At common law a plaintiff had no right to recover damages from a defendant tortfeasor as a result of the defendant's injuries, harm, or lack of care to a third person….").

tortfeasors "because the plaintiffs' alleged injuries [are] entirely derivative."[3]

The Seventh Circuit's opinion in *International Brotherhood of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999), is instructive. There, third-party payors brought suit against tobacco companies, seeking compensation for smoking-related healthcare costs.  Writing for the court, Judge Easterbrook began by noting that "[f]or more than 100 years state and federal courts have adhered to the principle (under both state and federal law) that the victim of a tort is the proper plaintiff, and that insurers or other third-party providers of assistance and medical care to the victim may recover only to the extent their contracts subrogate them to the victim's rights."  *Id.* at 822 (collecting cases).  In that case, however, the plaintiff third-party payors sought to avoid subrogation because "smokers' suits against cigarette manufacturers usually are unsuccessful."  *Id.*  But that, Judge Easterbrook explained, was "why plaintiffs must lose":  "A third-party payor has no claim if its insured did not suffer a tort; no rule of law requires persons whose acts cause harm to cover all of the costs, unless these acts were legal wrongs."  *Id.* at 823; *accord Am. Tobacco Co.*, 919 A.2d at 1123 (holding that "it would be both unfair and unsound policy to allow" third-party payors "to pursue claims on which the[] injured [persons], had they sued directly, might not be entitled to recover").

In short, the State may not assert a claim in its own name based on costs it allegedly incurred in providing medical care and other services to its citizens.  Instead, in order to recover based on personal injury to Alabamans, the State must properly assert a valid claim for subrogation

---

[3]  *Sao Paulo v. Am. Tobacco Co.*, 919 A.2d 1116, 1125 (Del. 2007); *see Philip Morris*, 1997 WL 540913, at *13 ("[T]he State had no right at common law, and consequently has no right now, to assert claims in its own name against Defendants as tortfeasors for the harms Defendants allegedly caused to third party smokers, unless such claims are made in the name of each of the individually injured third party medicaid program recipients under the equitable doctrine of subrogation."); *State ex rel. Miller v. Philip Morris Inc.*, 577 N.W.2d 401, 403 (Iowa 1998) (State precluded from bringing "derivative" claim to recoup costs of providing "health care and other services to citizens" necessitated by their tobacco use).

on behalf of the allegedly injured persons. And, in asserting any such claim, the State would be subject to the same defenses that would be available to McKesson in a direct action by an allegedly injured Alabaman. *See, e.g.*, *Star Freight, Inc. v. Sheffield*, 587 So. 2d 946, 958 & n.5 (Ala. 1991) ("Under the general principles of subrogation a subrogee steps into the shoes of its subrogor and that subrogee only gets those rights that its subrogor has. The subrogee can have no greater rights."); *see also Philip Morris Inc.*, 196 F.3d at 821 (government cannot "bypass the elements of subrogation actions—principally, that the insurer demonstrate the existence of a tort and the lack of any defenses to liability"—by "suing directly").

In its Complaint, Alabama seeks to recover medical and other expenses—including payments for opioid prescriptions—paid on behalf of its citizens, including State employees and Medicaid recipients. *See, e.g.*, Compl. ¶ 441. McKesson is aware of no authority granting the State subrogation rights in respect of medical expenses incurred on behalf of its citizens and employees. Moreover, even if the State **could** assert claims on their behalf, the Complaint fails to do so: It does not, for instance, identify the individuals on whose behalf the State paid for improper prescriptions. Nor does it even attempt to allege that McKesson violated a tort duty owed to any such persons. Accordingly, the State's claims related to the payment of medical and other expenses arising out of alleged injuries to its citizens and employees fail as a matter of law.

Finally, the State fares no better with its claim for expenses allegedly incurred by its Medicaid Program. *See, e.g.*, *id.* By statute, the State may bring a subrogation action if "medical assistance is provided to a recipient under the Alabama Medicaid Program for injuries, disease or sickness caused under circumstances creating a cause of action in favor of the recipient against any person, firm or corporation." Ala. Code § 22-6-6. In any such suit, however, the State may recover only insofar as the recipient of the medical assistance has a "cause of action" against the

alleged tortfeasor.  *See id.* ("[T]he State of Alabama shall be subrogated to such recipient's rights and shall be entitled to recover the proceeds that may result from the exercise of any rights of recovery which the recipient may have against any such person, firm or corporation ….").  Accordingly, the State's claims based upon prescription and other medical expenses incurred by its Medicaid Program fail because the Complaint makes no effort to identify the Medicaid recipients on whose behalf the State is suing or to demonstrate that any such Medicaid recipient would have a facially valid cause of action against McKesson.

### C. The Free Public Services Doctrine Bars the State's Claims.

The State claims injury based on expenses such as "increased law enforcement spending, increased pretrial and post-trial incarceration costs, increased criminal defense costs, [and] increased social services spending."  Compl. ¶ 363.  As explained in Distributors' *City of Chicago* brief, public expenditures made in the performance of governmental functions are not recoverable from a tortfeasor in the absence of a specific statute.  *See* Chicago Br., Dkt. 571-1 at Part III.C (collecting cases).  This "free public services doctrine" is fatal to the State's common law claims.

While cases applying the rule often involve municipalities, the doctrine has been extended to claims brought by states.  *See State v. Black Hills Power, Inc.*, 354 P.3d 83, 87 (Wyo. 2015) ("Absent a legislative grant of authority, the State of Wyoming may not generally recover its fire suppression and/or emergency service costs from a party whose negligence created the need for the services."); *cf. Baker v. Smith & Wesson Corp.*, No. Civ.A. 99C-09-283-FS, 2002 WL 31741522, at *5 (Del. Super. Ct. Nov. 27 2002) ("[T]he General Assembly typically expects ***the State*** and local governments to cover their expenses through taxes and fees.").  The rule, moreover, is rooted in the separation of powers and deference to "the legislative policy of taxing citizens to pay for these services." *Id.* at *4; *see United States v. Standard Oil Co.*, 332 U.S. 301, 314–15 (1947) ("Congress, not … [the] courts," has responsibility for "securing the treasury or the

10

government against financial losses however inflicted, including requiring reimbursement for injuries creating them").  Because the Alabama Legislature has not authorized its Attorney General to recover amounts spent on public services from alleged tortfeasors for these claims, the Attorney General's attempt to recover its expenses from McKesson fails as a matter of law.

## II.      THE ALABAMA CSA CLAIM SHOULD BE DISMISSED.

Count IV of the Complaint alleges that McKesson breached the Alabama Uniform Controlled Substances Act ("Alabama CSA") by (i) "failing to properly register in conformity with § 20-2-51(b) of Alabama's [CSA] and Alabama State Board of Health Regulation 680-X-3-.05(1)" and (ii) "failing to report suspicious orders."  Compl. ¶ 409.  On the basis of these alleged statutory violations, the State seeks to hold McKesson and the other defendants "jointly and severally liable for [its] damages."  *Id.* ¶ 411.  This claim fails both because (1) damages are not an available remedy under the Alabama CSA, and (2) the Complaint does not plead a breach of any reporting or registration obligation by McKesson arising under the Alabama law.

### A.      The Remedies Sought by the State Are Not Available Under the Alabama CSA.

The State purports to seek "damages" from McKesson for its alleged violations of the Alabama CSA, *see* Compl. ¶ 411, but that is not a remedy that is available under the statute. Enforcement authority under the Alabama CSA is vested principally in the State Board of Pharmacy ("BOP").  Ala. Code § 20-2-90(a).  The Board, for example, has the power to revoke or suspend a wholesale distributor's registration as a licensed distributor.  *Id.* § 20-2-54.  The Alabama CSA likewise imposes criminal sanctions for violations of specified provisions, *see id.* §§ 20-2-71, -72, and authorizes forfeitures of controlled substances where they are manufactured, distributed, or dispensed in violation of Alabama law, *see id.* § 20-2-93.  Finally, the Act authorizes Alabama state "circuit courts" to "restrain or enjoin violations" of the Alabama CSA.  *Id.* § 20-2-92.  Absolutely nothing in the statute, however, authorizes the State to seek compensatory or

consequential "damages" on the basis of alleged violations of the Alabama CSA.  Accordingly, the Court should dismiss the State's claim for money damages (as well as its federal-court claim for injunctive relief) on the ground that the relief sought is not authorized by the Alabama CSA.

**B.      The Complaint Fails To Allege That McKesson Violated the Alabama CSA.**

**1.      The State has not pled a violation of any registration requirement.**

The State alleges that McKesson violated the Alabama CSA by "failing to properly register in conformity" with the relevant state law and regulations, *see* Compl. ¶ 409, but the Complaint does not (and could not) contain a single factual allegation to support this claim.

The State identifies two registration provisions that McKesson purportedly violated:

1.  Ala. Code § 20-2-51(b):  Persons registered by the certifying boards under this chapter to manufacture, distribute, dispense, or conduct research with controlled substances may possess, manufacture, distribute, dispense, or conduct research with those substances to the extent authorized by their registration and in conformity with the other provisions of this article.

2.  Ala. Admin. Code r. 680-X-3-.05(1):  Any manufacturer, wholesaler or distributor of controlled substances doing business in the State of Alabama or who proposes to do business in Alabama shall obtain annually a registration by the Alabama State Board of Pharmacy.

*See* Compl. ¶ 409.[4]

These provisions merely require McKesson to "obtain annually a registration" and, upon registration, entitle McKesson to "possess" and "distribute" controlled substances.  Ala. Admin. Code r. 680-X-3-.05(1); Ala. Code § 20-2-51(b).  The Complaint is devoid of any allegation suggesting McKesson did not properly register as a wholesale distributor under Alabama law.  It

---

[4]  The State also cites Section 20-2-52(d) of the Alabama Code, which states that "[c]ompliance by manufacturers and distributors with the provisions of the federal law respecting registration (excluding fees) entitles them to be registered under this article."  Compl. ¶¶ 242-43.  That provision does not impose any obligations on McKesson.  Rather, it entitles registrants under the federal CSA to be registered in Alabama upon payment of a fee.  It is utterly inapposite here.

does not, for instance, allege that the BOP ever revoked or suspended McKesson's registration— nor could it.  The State's registration-related allegations therefore fail.[5]

### 2. There is no obligation under Alabama law to report suspicious orders.

The State also contends that McKesson violated the Alabama CSA by "failing to report suspicious orders" of opioids, but there is no Alabama statute or regulation requiring wholesale distributors to report "suspicious orders" to the State.  Compl. ¶ 409.  Rather, as the Complaint acknowledges, the obligation to report suspicious orders arises under ***federal*** law.  *Id*. ¶ 245 (quoting 21 C.F.R. § 1301.74(b)).

The State alleges that McKesson's failure to report suspicious orders violated Ala. Admin. Code r. 680-X-3-.05(2), which states that

> distributors doing business in the State of Alabama who sell, furnish, give away, or otherwise dispose of controlled substances … shall submit to the Alabama State Board of Pharmacy legible copies of records and reports required by the Drug Enforcement Administration concerning increases in purchases or high or unusual volumes purchased by pharmacies within 30 days.

By its terms, this regulation merely requires McKesson to forward to the BOP ***legible copies*** of the records and reports that it submits to the DEA; it does not create an independent obligation under Alabama law to generate reports concerning "suspicious orders" of opioids.  Nor does the Complaint adequately allege that McKesson violated this provision, as it makes no attempt to allege that McKesson failed to forward legible copies of the relevant reports to the BOP.

The State next points to Ala. Code § 20-2-56, *see* Compl. ¶ 242, which states only that:

> Persons registered to manufacture, distribute, or dispense controlled substances under this article shall keep records and maintain inventories in conformance with the record keeping and inventory requirements of federal law ….

---

[5]  Even assuming *arguendo* that money damages are available for violations of the Alabama CSA and that the Complaint properly alleges a violation of its registration requirements, the State still would not be entitled to relief because the Complaint does not allege that McKesson's purported registration violations were the proximate cause of the State's injuries.  *See supra* pp. 3-6.

This provision, at most, incorporates the federal CSA's **record-keeping** and **inventory** requirements—not its suspicious order report requirements.  *Compare* 21 C.F.R. § 1304.04 (distributors "shall maintain inventories and records of controlled substances" for inspection by the DEA), *with* 21 C.F.R. § 1301.74(b) ("The registrant shall inform the Field Division Office of the [DEA] in his area of suspicious orders when discovered by the registrant.").

Finally, the State cites a catch-all BOP regulation that requires wholesale distributors to "operate in compliance with applicable Federal, State and Municipal laws and regulations." Compl. ¶ 242 (citing Ala. Admin. Code r. 680-X-2-.23(2)(k)(3)).  This regulation, at most, recapitulates McKesson's federal obligation to report suspicious orders to the DEA.  It does not create any independent obligation on the part of McKesson to report suspicious orders to the State.

## III.   THE PUBLIC NUISANCE, NEGLIGENCE AND WANTONNESS CLAIMS SHOULD BE DISMISSED.

"Under Alabama law, there are four elements to establish a case of negligence or wantonness:  (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." *Edmonson v. Cooper Cameron Corp.*, 374 F. Supp. 2d 1103, 1106 (M.D. Ala. 2005).  Similarly, in order to prevail on a nuisance claim under Alabama Code § 6-5-120, a plaintiff is "required to prove against the defendant the elements of legal duty and causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for." *Tipler v. McKenzie Tank Lines*, 547 So. 2d 438, 440 (Ala. 1989).  Or, put differently, a complaint for nuisance "must comport with the classical tort concepts of duty and causation" in order to state a claim. *Id.*; *accord Walnut Lake Land Co., Inc. v. Petro Stopping Centers, LP,* No. 7:06-CV-00472-LSC, 2009 WL 10689908, at *9 (N.D. Ala. Jan. 21, 2009) ("the duty and causation analyses in a nuisance claim are conducted the same way as they are in a negligence claim").

The State's negligence, wantonness, and nuisance claims all fail as a matter of law because

the Complaint (1) does not properly identify a tort law duty that McKesson allegedly violated, and (2) does not adequately allege that McKesson breached any obligation, much less that any alleged breach caused the State's asserted loss.

### A. The State Fails To Allege a Cognizable Duty.

The gravamen of the State's nuisance, negligence, and wantonness claims is that McKesson "fail[ed] to satisfy [its] statutory duty to report, investigate, and halt suspicious orders." Compl. ¶ 370 (nuisance); *accord id.* ¶ 428 (negligence); *id.* ¶ 445 (wantonness).[6]  Nothing in Alabama law even remotely suggests that there is a common law duty to report and halt suspicious orders.  Instead, the sole source of this purported duty is a federal regulation (which the State contends is incorporated into Alabama law).  For the reasons explained below, the State may not assert tort claims against McKesson based on its federal regulatory obligations because (1) there is no private right of action to enforce the federal CSA, (2) there is no duty under Alabama law to halt or report suspicious orders, much less any such duty running to the State, and (3) McKesson has no duty under Alabama law to prevent the criminal acts of third parties who divert opioids to illegal use after McKesson delivers the medicines to licensed dispensaries.

### 1. There is no private right of action to enforce the federal CSA.

The State alleges that McKesson's duty to report and halt suspicious orders arises from a federal regulation, 21 C.F.R. § 1301.74(b).  The law is clear, however, that there is no private right of action to enforce the federal CSA or its implementing regulations.

The DEA is "the primary federal agency responsible for the enforcement of the Controlled Substances Act."   DEA, *Practitioner's Manual, An Informational Outline of the Controlled*

---

[6]  McKesson does not concede that it has a duty under federal law to halt suspicious orders.  While the State purports to identify DEA guidance letters as the source of this alleged duty, *see* Compl. ¶¶ 250, 252-54, such informal letters "lack the force of law."  *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

*Substances Act* 4 (2006 ed.).  Courts have recognized that, "according to its plain terms, '[t]he [CSA] is a statute enforceable only by the [U.S.] Attorney General and, by delegation, the Department of Justice.'"  *Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1290 (D. Colo. 2016) (alterations in original) (quoting *Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 293 (3d Cir. 2010) (per curiam)), *aff'd sub nom. Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017).  Consequently, "federal courts"—including in the opioid litigation—"have uniformly held that the [federal] CSA does not create a private right of action."  *Smith*, 164 F. Supp. 3d at 1290; *West Virginia v. McKesson Corp.*, No. 2:17-03555, slip op. at 14–15 (S.D. W.Va. Feb. 15, 2018) (ECF No. 21) (attached as Ex. 1); *McKesson Corp. v. Hembree*, No. 17-cv-323, 2018 WL 340042, at *5 (N.D. Okla. Jan. 9, 2018).[7]

### 2. There is no Alabama law duty to report suspicious orders to the State.

The State fails to allege the existence of a duty to report suspicious orders running from McKesson to the State for several reasons.  First, as discussed above, McKesson has no statutory or regulatory duty under Alabama law to report suspicious orders ***to the State***.  *See supra* Part II.B.  Because McKesson's regulatory reporting obligations (and the alleged attendant duty to "halt" orders) run only to the federal DEA, the State has failed to allege that McKesson breached a duty that it owes ***to Alabama***.  The State's claims thus fail as a matter of law.  *See, e.g.*, *Terrell v. Ala. Water Serv. Co.*, 15 So. 2d 727, 729 (Ala. 1943) (noting that "there must be a breach of duty owing by defendant ***to plaintiff***" to state a claim for negligence or nuisance); *Dickinson v. Land*

---

[7]  *See also Welch v. Atmore Cmty. Hosp.*, 704 F. App'x 813, 816 (11th Cir. 2017) (per curiam) ("[N]o part of the [CSA] provides a private remedy or contains a specific statutory grant of jurisdiction for private litigants ... to bring civil claims."); *Shmatko v. Ariz. CVS Stores LLC*, No. 14-cv-01076, 2014 WL 3809092, at *2 (D. Ariz. Aug. 1, 2014) ("Federal law unequivocally holds ... that the FDCA and CSA do not create private rights of action ...."); *United States v. 1840 Embarcadero*, 932 F. Supp. 2d 1064, 1072 (N.D. Cal. 2013) (collecting cases); *McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783, 793 (S.D. W.Va. 2001) ("[A] careful review of the [CSA], 21 U.S.C. §§ 801–971, establishes no Congressional intent to create a private, civil right of action ....").

*Developers Constr. Co.*, 882 So. 2d 291, 302 (Ala. 2003) ("The existence of a duty **to the plaintiff** is fundamental to a negligence claim ….").

Second, as the Alabama Supreme Court has made clear, "[f]ailing to fulfill a federal regulatory responsibility does not equate to tort liability under [Alabama] law." *Dixon v. Hot Shot Express, Inc*., 44 So. 3d 1082, 1090 (Ala. 2010).  This is especially so where, as here, there is no private right of action to enforce the federal regulatory obligation.  The Sixth Circuit has recognized that permitting a plaintiff to enforce statutory or regulatory obligations through common law tort claims "would, in effect, be permitting a private cause of action."  *Myers v. United States*, 17 F.3d 890, 901 (6th Cir. 1994).  Where Congress has decided not to authorize a private cause of action, courts must "refuse" to allow plaintiffs to circumvent that decision by enforcing statutory or regulatory duties through state-law causes of action.  *Id.*  To do otherwise would violate "legislative intent" and threaten "principles of federalism and separation of powers." *See, e.g.*, *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, No. 2:13-md-2433, 2015 WL 4092866, at *24–25 (S.D. Ohio July 6, 2015) ("The wealth of case law cited above persuades the Court that recognition of state law negligence per se claims under these federal statutes is in essence permitting a private cause of action where Congress intended none to lie."); *Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36 (D.D.C. 2003) (plaintiff may not "bootstrap [its] arguments regarding" an alleged violation of federal regulations by asserting they supply the applicable standard of care for common law claims) (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001)); *Coffman v. Bank of Am., NA*, No. 2:09-cv-00587, 2010 WL 3069905, at *8 (S.D. W.Va. Aug. 4, 2010) ("Plaintiff may not circumvent the [Office of Thrift Supervision]'s exclusive authority to implement disclosure requirements for federal savings banks through a state law claim of unconscionable inducement.").  Accordingly, the absence of a private right of action

17

under the federal CSA is fatal to the State's attempt to premise its claims on McKesson's federal regulatory obligations.

Third, the State cannot assert a claim based on purported violations of the suspicious order reporting requirements because the federal CSA was not enacted to protect a "class of persons"— let alone a class of persons of whom the State "is a member." *See, e.g.*, *Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005) (rejecting argument that building code requirements gave rise to tort law duties). The State "point[s] to nothing in the text of the CSA that includes the type of 'rights-creating language' which 'explicitly confer[s] a right directly on a class of persons that includes the plaintiff' or 'identif[ies] the class for whose especial benefit the statute was enacted'"—nor could it. *Safe Streets Alliance v. Alt. Holistic Healing, LLC*, No. 15-cv-00349, 2016 WL 223815, at *3 (D. Colo. Jan. 19, 2016) (alterations in original), *aff'd sub nom. Safe Streets All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017). Rather, like the building code requirements at issue in *Parker*, the federal CSA reporting requirements were enacted "to protect the general public," and are not enforceable in tort under Alabama law. *See* 925 So. 2d at 931.

### 3. McKesson has no free-floating duty to prevent diversion.

The Complaint asserts that wholesale distributors of controlled substances have a free-floating duty to "prevent diversion" by downstream actors, Compl. ¶ 433, but no such duty exists as a matter of law. *Bryan v. Ala. Power Co.*, 20 So. 3d 108, 116 (Ala. 2009) ("In Alabama, the existence of a duty is a strictly legal question to be determined by the court.").

Diversion is the transfer of medications to persons not entitled to receive them. In this case, it inherently involves unlawful conduct—e.g., by a patient in fabricating a complaint of pain or in obtaining prescriptions from more than one doctor; by a doctor in prescribing the medications without determining whether there is a legitimate medical basis; or by others in buying or stealing the medications from persons who obtained them from a doctor. Thus, as the Complaint tacitly

18

concedes, diversion *necessarily* entails the "illicit" movement of a prescription opioid out of "legitimate [distribution] channels"—and occurs only after McKesson fills a wholesale order by delivering an FDA-approved medicine to a state-licensed retail pharmacy.  *See* Compl. ¶ 264.

Under Alabama law, "[i]t is well settled that absent a *special relationship* or *special circumstances*, a person has no duty to protect another from criminal acts of a third person." *Emery v. Talladega Coll.*, 688 F. App'x 727, 731 (11th Cir. 2017).  Here, the State asserts that McKesson had an obligation to guard against the downstream, criminal diversion of the opioid medications that it delivered.  But the Complaint makes no effort to allege the existence of special circumstances or a special relationship between McKesson and the State that could give rise to any such duty.  For this additional reason, the State's claims fail as a matter of law.

### B.    The State Fails To Allege Breach or But-For Causation.

In order to state a claim for negligence, wantonness or public nuisance, the Complaint must allege facts showing that (1) McKesson breached a duty owed to the State, and (2) that the breach was both the but-for and the proximate cause of the State's alleged injuries.  Even assuming arguendo that McKesson owes a duty to the State to report and halt suspicious orders, the State's claims still fail as a matter of law because the State has not adequately pled (1) proximate causation, *see supra* Part I.A, (2) but-for cassation, or (3) breach.

The Complaint, for example, does not identify any particular order that McKesson should have identified as suspicious but did not.  Nor does it allege that, had McKesson halted a particular order, it would have reduced the total quantity of opioids available to Alabamans—let alone that it would have reduced the State's opioid-related expenditures.  As the Complaint acknowledges, McKesson is one of many wholesale distributors that ships opioids to Alabama, and there is no allegation that a retail pharmacy would not have obtained opioids from some other source.  *See, e.g.*, Compl. ¶ 270 (alleging that McKesson is responsible for less than one-third of the opioids

shipped to Alabama). Under these circumstances, the State's threadbare allegations that McKesson failed to report and halt suspicious orders, and that this failure caused the State to incur increased medical, law enforcement or other expenses, are far too speculative to state a claim. *E.g.*, *Martin v. Medtronic, Inc.*, 63 F. Supp. 3d 1050, 1058 (D. Ariz. 2014) (dismissing claim where plaintiffs did "not allege[] how defendants' alleged failure to warn the FDA about adverse events contributed to their injuries"); *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 438 (D.N.J. 2012) (dismissing claim where plaintiff made "no plausible factual allegation that a report to [a state agency], if it had occurred, would have prevented" his injury).

### C. The Wantonness Claim Fails for Additional Reasons.

The State's failure to allege duty, breach and causation is fatal to its wantonness claim against McKesson. The claim also fails because the Complaint is entirely devoid of concrete factual allegations—as opposed to mere legal conclusions—suggesting that McKesson, "with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017).

### D. The Public Nuisance Claim Fails for Additional Reasons.

Alabama nuisance law, although codified at Ala. Code § 6-5-120 *et seq.*, is "declaratory of the common law and does not supersede it as to the other conditions and circumstances constituting a nuisance under common law." *Lauderdale Cty. Bd. of Educ. v. Alexander*, 110 So. 2d 911, 915 (Ala. 1959); *accord Tipler*, 547 So. 2d at 440. For substantially the reasons set forth in Distributors' *Summit County* and *Monroe County* briefs, the elements of a common law public nuisance claim are not satisfied here.

First, the State does not allege that McKesson **controlled** the opioid medications when those medications purportedly caused a nuisance; rather, the nuisance condition was not allegedly created until after McKesson delivered the medicines to retailers and they were subsequently

diverted.  Because McKesson did not have control over the instrumentality of the nuisance at the time the diversion occurred, McKesson cannot be held liable for failing to prevent the nuisance. *See Tipler*, 547 So. 2d at 441 ("Exxon cannot be charged and held liable [for nuisance] either for maintaining, or for failing to prevent, a chain of events and circumstances over which it had no reasonable means of control."); *see also* Monroe Br., Dkt. 572-1 at Part III.C.

Second, the State fails to allege interference with a ***public*** right, as opposed to interference with a collection of private rights. Ala. Code § 6-5-121 ("A public nuisance is one which damages all persons who come within the sphere of its operation …."); *see* Restatement (Second) of Torts § 821B cmt. g (1979) ("A public right …. is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured."). This failure, too, is fatal to the State's public nuisance claim. *See* Summit Br., Dkt. 491-1 at Part II.B.1.

## IV.     THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

Under Alabama law, to state a claim for unjust enrichment, a plaintiff must allege facts demonstrating that the defendant holds money that (1) in equity and good conscience belongs to the plaintiff, or (2) was improperly paid because of mistake or fraud. *See Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1123 (Ala. 2003). Alabama fails to state an unjust enrichment claim for multiple reasons.

First, the State does not allege that it made a mistake or that McKesson holds money that belongs to the State—nor could it. Instead, its unjust enrichment claim is predicated on an alleged fraud: according to the State, "Defendants' deceptive and illegal conduct in promoting opioids to treat chronic pain" caused the State to "reimburse[] prescriptions … that otherwise would not have been written." Compl. ¶ 441. The Complaint, however, wholly fails to allege any facts suggesting that ***McKesson*** played a role in the fraudulent promotion of opioids to treat chronic pain—let alone with the particularity required under Rule 9(b). Where, as here, "a plaintiff cannot maintain a

fraudulent misrepresentation claim against a defendant, that plaintiff will not be permitted a viable claim of unjust enrichment which is based on an untenable fraudulent misrepresentation claim." *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1219 (N.D. Ala. 2006); *see also Davis v. Wells Fargo Home Mortg., Inc.*, No. 2:15-cv-00329-JEO, 2016 WL 393850, at *4-5 (N.D. Ala. Feb. 2, 2016) (dismissing both unjust enrichment and fraud claims where causes of action were "both premised" on same non-actionable representation).

Second, under Alabama law, unjust enrichment is an equitable remedy that is available only where the plaintiff lacks an adequate remedy at law. *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 409 (S.D.N.Y. 2017) (collecting cases). Here, the State plainly would have an adequate remedy at law if, as it alleges, it was harmed as a result of the alleged fraud.

Third, the gist of the State's unjust enrichment claim is that State employees and Medicaid recipients were prescribed medicines that they should not have been prescribed, and that the State "reimbursed" the costs of those allegedly improper prescriptions. Compl. ¶ 441. As explained above, any such claims belong to the patients who were allegedly harmed by the improper prescriptions. Thus, at least in the absence of valid subrogation claims on behalf of identified employees or Medicaid recipients, the State's unjust enrichment claim fails. *See supra* Part I.B.

Finally, to the extent that the State purports to assert an unjust enrichment claim based on federal common law, that claim fails for the fundamental reason that no such free-floating cause of action exists under federal law. *See, e.g.*, *In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-02709-MD-W-GAF, 2017 WL 3863866, at *5 (W.D. Mo. Aug. 3, 2017) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

## V.     THE DECEPTIVE TRADE PRACTICES CLAIM SHOULD BE DISMISSED.

### A.     The State Does Not Plead an Actionable Misrepresentation.

Although the Complaint purports to identify numerous provisions of the Alabama Deceptive Trade Practices Act ("ADTPA") that "Defendants" violated, each of the specific ADTPA provisions identified by the State relates exclusively to the alleged conduct of the Manufacturer Defendants.  Compl. ¶ 384.  As for McKesson, the Complaint alleges only that it violated the ADTPA's "catch-all" provision, which prohibits "any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5(27).   According to the Complaint, McKesson violated this provision by (i) "[p]ublicly representing that it was complying with its legal obligations," (ii) "[p]romoting itself as a company that encourages and assists law enforcement," (iii) "[p]ublicly stating that it has a 'best-in-class controlled substance monitoring program,'" and (iv) "[m]isleading the public about the effectiveness of its controlled substances monitoring program."  Compl. ¶ 387(a)-(d).  These allegations are insufficient as a matter of law for several overlapping reasons.

First, "[c]laims brought pursuant to the … ADTPA are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)."  *See, e.g.*, *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013) (construing Alabama law).  The Complaint, however, largely fails to identify "the time, place, and content of the alleged misrepresentation[s]."  *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017).  The State's generic allegations of unspecified misrepresentations made by McKesson to "the public" are insufficient as a matter of law.

Second, "[u]nder the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Ex parte Simpson*, 36 So. 3d 15, 26 (Ala. 2009); *accord Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) ("To the extent the

manufacturers' statements were designed to influence Congress—to get favorable laws and ward off unfavorable ones—they cannot be a source of liability directly under the *Noerr–Pennington* doctrine.").  Accordingly, insofar as the State's claim is based on McKesson's alleged advocacy before courts, regulators, or Congress, *see, e.g.*, Compl. ¶¶ 287-88, 294, it is barred by the First Amendment and should be dismissed on that basis.

Third, McKesson's broad promotional statements regarding the effectiveness of its controlled substance monitoring program and its commitment to assisting law enforcement are not actionable under the ADTPA.  *See BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203, 217 (Ala. 2001) (claim that cellular telephone company was "committed to its agents" not actionable in fraud); *Am. Pioneer Life Ins. Co. v. Sherrard*, 477 So. 2d 287, 291 (Ala. 1985) (claim that business idea was company's "number one priority" and "would revolutionize the industry" not actionable in fraud); *Holmes v. Behr Process Corp.*, No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *3 (N.D. Ala. Nov. 17, 2015) (claims attesting to "high quality" of product not actionable in fraud); *see also* Ala. Code § 8-19-5(25).  Statements of this kind—including McKesson's alleged statements that it had a "best-in-class controlled substance monitoring program" and was "deeply passionate about curbing the opioid epidemic," Compl. ¶ 296—are not claims actionable under the ADTPA.  This is especially so where, as here, the State has not alleged (and could not allege) that such statements were likely to be relied on by or posed any harm to members of the consuming public.  *See F.T.C. v. Peoples Credit First, LLC*, 244 F. App'x 942, 944 (11th Cir. 2007) ("To establish that an act or practice is deceptive [under 15 U.S.C. § 45(a)(1)], the FTC must show that (1) there was a representation or omission, (2) the representation or omission was likely to ***mislead consumers*** acting reasonably under the circumstances, and (3) the representation or omission was material."); Ala. Code § 8-19-6 (affording "great weight" to

24

judicial interpretations of 15 U.S.C. § 45(a)(1)).

**B.      The State's ADTPA Claim Is Time-Barred.**

The State's ADTPA claim is time-barred under the statute's one-year limitations period. *See* Ala. Code § 8-19-14 ("No action may be brought under this chapter more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action ….").

Under Alabama law, statutes of limitations do not apply to claims by the State "unless the state … is expressly or by necessary implication included within the operation of the statute." *Bd. of Sch. Comm'rs v. Architects Grp., Inc.*, 752 So. 2d 489, 491 (Ala. 1999).  Courts have barred claims by the State where the statutory language or context suggests that limitations provisions apply.  *State v. Mudd*, 143 So. 2d 171, 175 (Ala. 1962) (prescriptive period applied to state claims where statute provided that the State was entitled to sue and "the suit is governed by the same rules as suits between individuals"); *State v. Crocker's Estate*, 83 So. 2d 261, 264 (Ala. Ct. App. 1955) (statute barred State's claim where circumstances suggested legislative intent to do so).

The unambiguous language of ADTPA makes clear that its limitations provision applies to the State.  The statute of limitations applies to any "person," Ala. Code § 8-19-14, and the term "person" is broadly defined for purposes of the ADTPA to include "any … legal entity."  Ala. Code § 8-19-3(5).  That the ADTPA's definition of "person" includes claims brought by the Attorney General is confirmed by the ADTPA's enforcement provision, which expressly refers to the "office of the Attorney General and the district attorneys" as "persons" under the statute:

> ***The office of the Attorney General and the district attorneys*** may otherwise receive and investigate complaints with respect to acts or practices declared to be unlawful by this chapter, and inform the complainants with respect thereto.  ***Said persons*** may institute legal proceedings or take such other actions provided for herein which are necessary or incidental to the exercise of its powers and functions.

Ala. Code § 8-19-4(a)(2).

Here, the State's ADTPA claim is barred by the statute of limitations because the Complaint wholly fails to identify a false or misleading statement made by McKesson after May 18, 2017, i.e., one year before the date on which the State first sued McKesson.  *See* First Am. Compl., Dkt. 474.  To the contrary, it is clear from the face of the Complaint that the handful of statements identified with any particularity by the State were all made well before that date.  *E.g.*, Compl. ¶ 288 (describing amicus brief filed by HDMA trade association in April 2016); *id.* ¶ 294 (October 2016 article describing McKesson lobbying efforts); *id.* ¶ 296 (December 2016 article describing statement by McKesson representative).  Because each of the purportedly fraudulent statements relied on by McKesson was made publicly, moreover, the State cannot plausibly claim that it could not have discovered them at or near the time they were made.

Finally, the State does not allege the "extraordinary circumstances" or the "exercise of diligence" required to support the application of equitable tolling.  *Ex parte Ward*, 46 So. 3d 888, 897 (Ala. 2007).  Nor has it pleaded fraudulent concealment with the particularity required by Rule 9(b).  *Moore v. Liberty Nat'l Ins. Co.*, 108 F. Supp. 2d 1266, 1273 (N.D. Ala. 2000) (plaintiff must plead fraudulent concealment with particularity), *aff'd*, 267 F.3d 1209 (11th Cir. 2001); *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010) (rule governing concealment of fraud also governs fraudulent concealment of other causes of action).  Indeed, it strains credulity to assert that the State—which maintains a database of ***every opioid prescription written in Alabama***, *see supra* p. 2—could not with reasonable diligence have discovered its cause of action sooner.  It likewise defies logic—especially given the importance placed by the State on McKesson's January 2017 settlement agreement with the DEA and on the HDMA's April 2016 amicus brief "denying" that wholesale distributors have a "legal dut[y]" to "investigate" or "halt" suspicious orders, *see* Compl. ¶¶ 249 n.105, 288, 291–92—that the State was somehow prevented from bringing its claim sooner

by generic public statements touting the sophistication of McKesson's suspicious order reporting technology or its commitment to "curbing the opioid epidemic," *see id.* ¶ 344.

In short, because the State fails to identify any grounds for its ADTPA claim occurring after May 18, 2017, and no equitable exception applies, the claim should be dismissed as time-barred.  *See Travis v. Ziter*, 681 So. 2d 1348, 1351 (Ala. 1996) (dismissing complaint where "it is apparent" from the face of the complaint "that the tolling provisions do not apply").

### C.    The State Failed To Comply with the Statute's Notice Requirement.

The State's ADTPA claim should be dismissed for the additional reason that the State has not pled compliance with the ADTPA's pre-suit notice requirement.  The statute, subject to exceptions not applicable here, requires the Attorney General, "before initiating any legal proceedings," to "allow [the defendant] a reasonable opportunity to appear before the Attorney General or district attorney and solve the dispute to the parties' satisfaction."  Ala. Code § 8-19-8(a); *see Nunley v. State*, 628 So. 2d 619, 621 (Ala. 1993) (upholding judgment for state only because state made such efforts before filing).  The State's failure to satisfy ADTPA's pre-suit notice requirements is grounds for dismissal.

### D.    The State's Claim Is Precluded by Its Common Law Claims.

Finally, the ADTPA claim should be dismissed because it is inconsistent with the State's unjust enrichment claim in this case.  The ADTPA provides that "[a]n election to pursue any civil remedies available at common law," for fraud, misrepresentation, or other, similar claims, "shall exclude and be a surrender of all rights and remedies available under this chapter."  Ala. Code § 8-19-15(b).  As discussed above, the State's unjust enrichment claim sounds in fraud.  *See supra* pp. 21–22.  Because "the plain text of the ADTPA specifically and unambiguously makes, as an essential element of the claim, the statutory remedy exclusive of other remedies available under Alabama law," the State's ADTPA claim must be dismissed.  *Holmes*, 2015 WL 7252662, at *3.

27

## VI.     THE DRUG-RELATED NUISANCE CLAIM SHOULD BE DISMISSED.

On its face, Alabama's drug-related nuisance statute is meant to address, and applies only to, properties used in connection with the illegal drug trade, i.e., drug houses.  The State's strained attempt to distort this utterly inapposite statute fails as a matter of law.

Under Alabama law, the "fundamental rule of statutory construction is that th[e] Court is to ascertain and effectuate the legislative intent as expressed in the statute."  *Lane v. State*, 66 So. 3d 824, 827 (Ala. 2010).  The legislative intent of the drug-related nuisance statute is to prevent "a deterioration in the habitability of housing and rental accommodations" by providing incentives "for property owners to take a more active role in preventing the use of their property for the manufacture, use, sale, storage, or distribution of drugs."  Ala. Code § 6-5-155(2), (3).  The Court should therefore reject the Attorney General's attempt to distort the plain purpose of the statute and apply it to alleged nuisances that have nothing to do with drug houses being used for the "manufacture, use, sale, storage, or distribution" of illegal drugs.

Consistent with its statutory purpose, the plain language of the drug-related nuisance statute makes clear that it applies only to specified real property.  The statute, for example, permits suits by "person[s] residing in the county in which ***the property is located***," requires pre-suit notice to "the owner of ***the property on which the drug-related nuisance is situated***," and establishes "posting the papers at ***the property***" as an acceptable mode of service.  Ala. Code §§ 6-5-155.2, -155.3(b), -155.4.  Numerous other provisions of the statute likewise assume the existence of real property, such as a residence, at which the nuisance is physically located.[8]

---

[8]  *E.g.*, Ala. Code § 6-5-155.3(c) ("When an action is brought under this division by a private individual, the complaint shall be supported by at least five residents residing or owning real property within 1,000 feet of the premises alleged to be a drug-related nuisance."); *id.* § 6-5-156.3(a) ("The plaintiff is required … to establish that the owner of the property who is not a resident or in actual possession of the property was criminally culpable in aiding and abetting in the drug related nuisance."); *id.* § 6-5-156.3(d) (listing

Moreover, the statute requires, as an element of a drug-related nuisance claim, that the complaint (or an accompanying affidavit) "describe the adverse impact associated with the drug-related nuisance upon the ***surrounding neighborhood***."  Ala. Code § 6-5-155.3(a).  The statute sets forth 18 conditions that constitute adverse impacts, ***all*** of which are predicated upon the existence of a specific property constituting the nuisance.  *See, e.g.*, *id.* § 6-5-155.3(a)(4) ("An increase in the number of ambulance or police calls ***to the property*** …."); *id.* § 6-5-155.3(a)(6) ("The display of dangerous weapons ***on or near the property***."); *id.* § 6-5-155.3(a)(9–10) ("Housing" or "[h]ealth code violations relating ***to the property***.").  While the list of 18 conditions is not exclusive, under the *ejusdem generis* canon of construction, any adverse condition cognizable under the statute must likewise relate to a specified property.  *See, e.g.*, *State Superintendent of Educ. v. Ala. Educ. Ass'n*, 144 So. 3d 265, 274 (Ala. 2013) ("[G]eneral phrase[s]" in a statute "should be interpreted as referring only to other matters similar to those specifically stated in the statute being construed."); *Ex parte Emerald Mountain Expressway Bridge, L.L.C.*, 856 So. 2d 834, 842 (Ala. 2003) ("[G]eneral words, following the enumeration of particular classes of persons or things, are construed to apply only to persons or things of the same general nature or class as those specifically enumerated.").

The State's drug-related nuisance claim should be dismissed because the Complaint does not describe the sort of adverse impact contemplated by the statute.  It does not, for instance, identify any specific property or properties where McKesson's alleged conduct has caused an "[i]ncreased volume of vehicular and pedestrian traffic," the "display of dangerous weapons" or

---

remedies available, assuming existence of "the property"); *id.* § 6-5-156.3(e) (listing factors bearing on selection of remedy, also assuming existence of "the property"); *id.* § 6-5-156.3(h) ("The owner of the property on which a tenant maintains a drug-related nuisance may in the same proceeding seek the eviction of the tenant."); *see id.* § 6-5-155.1(6) (defining "property" as "[t]angible real property").

any comparable adverse impacts. Ala. Code § 6-5-155.3(a)(3), (6). To the contrary, the Complaint candidly admits that the State's claim is not based upon adverse impacts to an identified property or properties. *See* Compl. ¶ 396. The drug-related nuisance claim therefore fails.

This conclusion is reinforced by the statute's pre-suit notice requirement. The statute provides that "[n]o complaint shall be filed unless there has been at least one notice to the owner of the alleged drug-related nuisance 21 days prior to the filing of the complaint." Ala. Code § 6-5-155.3(b). The State acknowledges that it provided no such notice, instead asserting that "[t]he notice provisions … are inapplicable here." Compl. ¶ 396. McKesson respectfully submits that the inapplicability of the statute's notice requirements is still further evidence of the statute's inapplicability to McKesson's alleged conduct. In any event, the State's assertion that it should be excused from satisfying the requirements of the statute is unsupported and without merit. The plain terms of the notice requirement admit of no exception. Because the State did not provide McKesson with a notice identifying an alleged drug-related nuisance of which McKesson was the "owner" prior to filing suit, the State's drug-related nuisance claim should be dismissed. *E.g.*, *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1365 (M.D. Ala. 1999) (dismissing claims "because [plaintiff] failed to comply, or even allege that he complied," with an Alabama notice requirement).

Finally, even assuming *arguendo* that the drug-related nuisance statute applies to conduct disconnected from properties being used as drug houses and that the State may evade the statute's pre-suit notice requirement, the drug-related nuisance claim still should be dismissed. The gist of the State's claim is that McKesson "distribut[ed]" opioids in a manner that violated the Alabama CSA. Compl. ¶ 392. The claim fails because the Complaint does not identify any violation by McKesson of the Alabama CSA. *See supra* Part II.B.

## CONCLUSION

For the reasons set forth above, the State's claims should be dismissed with prejudice.

Dated:  June 29, 2018                          Respectfully submitted,


                                               */s/ Geoffrey E. Hobart*
                                               Geoffrey E. Hobart
                                               Mark H. Lynch
                                               Christian J. Pistilli
                                               **COVINGTON & BURLING LLP**
                                               One CityCenter
                                               850 Tenth Street N.W.
                                               Washington, DC 20001
                                               Tel: (202) 662-6000
                                               ghobart@cov.com
                                               mlynch@cov.com
                                               cpistilli@cov.com

                                               *Counsel for McKesson Corporation*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order 1 (Dkt. 232), which adopts the limits on length of memoranda applicable to complex cases, McKesson is permitted to file a memorandum of up to 30 pages.  This brief adheres to that limit.

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart

## CERTIFICATE OF SERVICE

I, Geoffrey E. Hobart, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart