UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 1:17-MD-2804<br><br>JUDGE DAN A. POLSTER<br><br>MAGISTRATE JUDGE DAVID A. RUIZ<br><br><br>**BRIEF IN RESPONSE TO WASHINGTON POST COMPANY'S MOTION FOR ACCESS TO THE UNREDACTED BRIEF IN SUPPORT OF OBJECTIONS** |

Now comes the United States of America ("United States"), on behalf of the United States Department of Justice ("DOJ") and the Drug Enforcement Administration ("DEA"), by and through undersigned counsel, and hereby responds to the Washington Post Company's ("The Post") Motion for Access to the United States' Unredacted Brief in Support of Objections to Disclosure of Arcos Data.  (ECF No. 672 PageID # 16033.)  As explained below, the Post has failed to demonstrate any extraordinary circumstance or compelling need that would require additional information to be unredacted from DEA's Brief and supporting declaration, and its Motion for Access should be denied.

The Post has requested Plaintiffs Cuyahoga County and Summit County to provide electronic copies of DEA's ARCOS data that DEA disclosed in discovery pursuant to the Court's Protective Order.  (ECF Nos. 603-1, 603-2.)  On June 11, 2018, DEA filed its Notice of Objections to disclosure of ARCOS data.  (ECF No. 603, PageID # 14958.)  The Court requested the parties and the requestors to submit briefs regarding the objections.  (ECF No. 611.)

Because DEA needed to disclose confidential law enforcement sensitive information regarding ongoing investigations and prosecutions, as well as confidential law enforcement techniques, in support of its objections to disclosure, the United States requested and received permission to file limited portions of its Brief and supporting declaration under seal. (<u>Mot. to File Under Seal</u> ECF No. 652 PageID # 15596; <u>Order</u>, ECF No. 656.)

In reliance on the permission to file under seal, DEA disclosed to for the Court's eyes only information regarding pending investigations and prosecutions as well as confidential law enforcement techniques. (ECF No. 662.) The United States also publically filed its Brief and supporting declaration with limited redactions to enable the parties and requestors to understand and respond to the legal arguments made by the government. The publically filed versions contain all of the legal arguments and nearly all of the factual basis for those arguments. The government only redacted information regarding pending investigations and prosecutions as well as confidential law enforcement techniques. Despite the limited nature of these redactions and the Court's order granting the Motion to Seal, the Requestors filed a Motion for Access to the Unredacted Brief in Support. (ECF No. 672 PageID # 16033.)

After reviewing the Post's Motion for Access and the redactions, the United States believes that all the redactions were appropriate and that there was sufficient information for the parties to understand and respond to the arguments. Nevertheless, in the interests of justice and openness, the United States has determined that it can unredact additional portions of the brief and certain portions of the declaration without revealing law enforcement sensitive information, and is filing contemporaneously herewith, a revised brief and revised declaration which contain fewer redactions. However, as explained below, the remaining redactions remain properly

sealed because they contained privileged information related to ongoing investigations and prosecutions and/or to confidential law enforcement techniques.

I.   STANDARD FOR ACCESS TO CIVIL PRETRIAL DISCOVERY.

The press does not have a First Amendment right of access to every document in every case. *Nixon v. Warner Communications, Inc.* 435 U.S. 589, 598 (1978) (denying access to court records "where court files might have become a vehicle for improper purposes"). The Post argues the government must demonstrate that "closure is essential to preserve a higher value and is narrowly tailored to serve that interest . . . ." (Mot. for Access, ECF No. 672 at PageID # 16036.) However, this is the standard for First Amendment right of access in criminal cases— not the standard for right of access to civil pretrial discovery.

The "constitutional right of access has a more limited application in the civil context than it does in the criminal." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001). Moreover, materials disclosed during the civil discovery process "do not fall within the scope of the constitutional right of access's compelling interest standard." *Id.* Rather, public disclosure of discovery material is subject to the discretion of the trial court and the federal rules that govern that discretion. *Id.*, citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Thus, where a party seeks access to material disclosed during discovery and covered by a protective order, the party seeking to prevent access need only demonstrate good cause pursuant to Rule 26(c). *Id.*; *see also Courier Journal v. Marshall*, 828 F.2d 361, 367 (6th Cir. 1987). This is because, as the Sixth Circuit has explained, information disclosed during civil discovery is "presumptively nonpublic." *Marshall*, 828 F.2d at 367; *see also Rhinehart*, 467 U.S. at 33 (stating that "pretrial depositions and interrogatories are not public components of a civil trial").

## II.   GOOD CAUSE SHOWN TO REDACT DECLARATION AND BRIEF

In this case, there is good cause to seal the United States' unredacted brief and declaration in support.  Specifically, the following information is redacted from the publically filed declaration and brief:

1. Names of the computer systems and tools that DEA uses and a description of how it utilizes those systems and tools (¶¶ 19, 20, 21, 22, 23, 24, 25)

2. Numbers and types of pending cases that could potentially implicate ARCOS data from 2006 to 2014, including specific examples. (¶¶ 26, 27, 28, 29, 30, 31, and Exhibit A.)

Importantly, the United States did not request, nor did the Court order, sealing of the entire brief or declaration.  In fact, the refiled brief contains redactions only on one page regarding the number and type of pending cases that involve ARCOS data from 2006 to 2014, including specific examples.  Further, the nature of the information that is redacted is still discernable based on the unredacted portions of the brief and declaration as well as the context.  For example, in Paragraph 19, the parties and public can see that DEA uses a case management system to track open cases.  Only the name of that system is redacted.  The parties and the public are aware that there are open cases in the disclosed ARCOS data from the unredacted portions of Paragraphs 26-28 and Exhibit A.  They simply don't know the total number.

### A.   Information about DEA Systems and Tools Names, Codes, and Utilization was Properly Redacted

In this case, the United States redacted all or parts of Paragraphs 19 through 25 of the original Declaration of Assistant Administrator for Diversion Control, DEA, John J. Martin ("Martin Declaration") which set forth the names of the computer systems and the codes and tools that DEA queried and used, and how it utilized those systems and tools to determine the

number of open opioid cases that could potentially implicate ARCOS data from 2006 to 2014. (ECF No. 663-1 PageID # 16000 at ¶¶ 19-25.) These systems and tools support DEA's core capabilities to carry out its key mission priorities and are only accessible by DEA personnel. (*See* Supplemental Declaration of John J. Martin ("Martin Suppl. Decl."), attached as Exhibit 1, at ¶ 6.) DEA's ability to use these systems and tools, the manner in which they can be used and searched, how data can be organized or filtered, and what reports can be run to summarize the results, are internal techniques used by DEA in furtherance of its mission. (Id. at ¶ 7.)

Although the names of certain DEA systems and tools may be in the public domain, information about their specific capabilities and how DEA uses them in support of its mission, including its law enforcement efforts, is not publicly available. (Id. at ¶ 10.) Disclosure of this information would reveal investigative techniques and procedures that DEA uses and would adversely impact its mission. (Id. at ¶ 7.) Outside entities could specifically target these systems and tools based on the information about how the systems operate and how DEA queries them. (Id. at ¶ 11.) This could render the systems and tools vulnerable to unlawful intrusion and manipulation, such as by hacking. (Id.)

Further, disclosing the redacted information about how DEA uses the systems and tools and the codes could enable criminals to employ countermeasures to avoid detection. (Id. at ¶ 14.) The codes can be used to filter, collect and organize data that DEA needs in its investigations. (Id. at ¶ 15.) Knowledge of the codes could enable criminals to circumvent the law because they could manipulate their activities in a way that they thought would not trigger a particular code that DEA uses to monitor illicit activities. (Id.) Therefore, revealing the codes and their purpose would be detrimental to DEA's mission. (Id.) Thus, it is proper for this information to be redacted. Importantly, the United States did not cite any of this information in

its brief and provided it to the Court only as background information to understand how DEA obtained case specific information.  (ECF No. 663.)

Courts routinely reject requests for information regarding systems and processes used by federal law enforcement.  For example, in *United States v. Pirosko*, 787 F.3d 358 (6th Cir. 2015), a criminal defendant sought access to FBI software used by investigators to access his computer. The Sixth Circuit rejected his claim that he needed to review the software.  In so doing, the court expressed concerns that disclosing the proprietary software would compromise the integrity of law enforcement's surveillance system and would frustrate future surveillance efforts.  *Id.* at 365.

In *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C.Cir.2011), the FBI sought to protect "methods of data collection, organization and presentation contained" in certain reports.  The FBI's declarant explained that "the manner in which the data is searched, organized and reported to the FBI is an internal technique, not known to the public," and the "method was developed by [the vendor] to meet the specific investigative needs of the FBI." *Id.* (internal quotation marks omitted). Based on those averments (as well as an additional attestation concerning how disclosure could give rise to the potential risk of circumvention of the law), the Court of Appeals concluded that the FBI had properly withheld the information in response to a FOIA request.  *Id.*

Further, in *Long v. ICE*, 149 F.Supp.3d 39, 44-45, (D.D.C. 2015), plaintiffs sought documents pursuant to FOIA requests that would disclose the fields, variables, codes and structures of databases maintained by the Department of Homeland Security.  In finding that the government properly withheld the requested documents, the Court ruled that "internal database codes, fields, and other types of identifiers used by law enforcement agencies to conduct, organize, and manage investigations and prosecutions qualify, at least, as law enforcement guidelines, if not also law enforcement methods and techniques." *Id.* at 50.  See also *Miller v.*

*DOJ*, 872 F.Supp.2d 12, 29 (D.D.C.2012) (permitting agency to withhold law enforcement numerical database codes used to identify information and individuals, as well as codes "relate[d] to procedures concerning the use of law enforcement resources and databases ..., as well as case program and access codes"); *Soghoian v. U.S. Dep't of Justice*, 885 F.Supp.2d 62, 75 (D.D.C. 2012) ("[k]nowing what information is collected, how it is collected, and more importantly, when it is not collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection"); *McRae v. DOJ*, 869 F.Supp.2d 151, 169 (D.D.C.2012) (holding that "codes, case numbers, and other computer information pertaining to the TECS, NCIC, and databases maintained by the North Carolina authorities are techniques and procedures for law enforcement investigation"); *Los Angeles Times v. County of Los Angeles*, 956 F.Supp. 1530 (C.D. Cal 1996) (holding that county courts' online case management system containing data about civil cases was not subject to First Amendment right of access).

  **B. Information about Pending Cases Properly Redacted**

  The United States redacted all or parts of Paragraphs 26 through 31 and Exhibit A of the Martin Declaration which set forth information about the number and types of pending matters that involve ARCOS data from 2006 to 2014. (ECF No. 663-1 PageID # 16000 at ¶¶ 26-31, Ex. A.) Further, specific examples of ongoing enforcement efforts are described in those paragraphs. (Id.) This information, consisting of the types and number of particular cases, and when they were first opened, would give criminals insight about the specific activities that DEA monitors, as well as about what resources DEA has at its disposal. (Martin Suppl. Decl. at ¶ 17.) For example, revealing the number of open cases each year by drug code would enable criminals to better understand the scope and focus of the investigations that DEA conducts, how long cases remain open, which types of cases DEA is prioritizing, and how many cases of each kind DEA

has open at any given time.  (Id. at ¶ 18.)  Access to such information would enable criminals to employ countermeasures to avoid detection.  (Id. at ¶ 19.)  Criminals could change their activities to avoid or minimize trafficking of a particular drug that DEA appears to be monitoring more closely, or as to which it has more open cases.  (Id.)  Importantly, none of this information is publically available.  (Id. at ¶ 16.)

Further, the United States redacted information regarding specific open matters.  (ECF No. 663-1 PageID # 16000 at ¶¶ 29-31).  Such information is not publically available.  (Martin Suppl. Decl. at ¶¶ 20-21.)  Disclosing the redacted information would be detrimental to DEA's efforts to prosecute and resolve the actions because doing so would reveal the status of the actions and the strategies that DEA is employing in the action.  (Id.)  Accordingly, redacting this information is appropriate.

It is well-established that data regarding ongoing law enforcement actions should be protected by the law enforcement investigatory privilege, "a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998); see also *Friedman v. Bache Halsey Stuart Shields, In*c., 738 F.2d 1336, 1341 (D.C.Cir.1984) ("[t]here is surely such a thing as a qualified common law privilege ... for law enforcement investigatory files").  "The privilege serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations."  *Id*. at 176-77; see also *Black v. Sheraton Corp. of America*, 564 F .2d 531, 542 (D.C.Cir.1977) (stating "law enforcement operations cannot be effective if conducted in full public view..." and recognizing

8

the privilege under common law to allow for "pragmatic adjustment to the needs of sound government.").

Importantly, "[a]n investigation…need not be ongoing for the law enforcement privilege to apply as 'the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information' " is revealed to the public. *Nat'l Congress for P.R. Rights ex rel. Perez v. City of N.Y.*, 194 F.R.D. 88, 95 (S.D.N.Y.2000) (quoting *Morrissey v. City of N.Y.*, 171 F.R.D. 85, 90 (S.D.N.Y.1997)); see also *Halpern v. FBI*, 181 F.3d 279, 294 (2d Cir.1999). Nor is the applicability of the law enforcement privilege dependent on whether the information was voluntarily provided to the government; investigations are equally subject to disruption regardless of the investigative means used to obtain information, and the willingness of those providing information to do so fulsomely may likewise be deterred even where the government compels production. *See Dellwood Farms v. Cargill*, 128 F.3d 1122, 1125 (7th Cir. 1997) (recognizing law enforcement privilege protects the government from "being force[d] to tip its hand to criminal suspects and defendants by disclosing the fruits" of its activities).

Even if the right of access extends to some civil filings, Courts have held that the United States has a compelling interest in protecting the integrity of ongoing investigations. *American Civil Liberties Union v. Holder*, 673 F.3d 245 (4th Cir. 2011) (no right of access to a qui tam complaint and docket sheet); see also *Times Mirror Co. v. U.S.*, 873 F.2d 1210 (9th Cir. 1989) (denying media access to search warrants and supporting affidavits, finding no First Amendment right of access to materials when an investigation is ongoing but before indictments have been returned); *In re: Search Warrants for Columbia/HCA Healthcare Corp.*, 971 F. Supp. 251 (W.D. Tex. 1997) ("There is no First Amendment right of public access to documents sealed by court, when criminal investigation is ongoing but indictments have not been returned."); *In re: Search*

9

*Warrants for Natl. Builders Corp.,* 833 F. Supp. 644 (N.D. Ohio 1993) (holding that, even if First Amendment right of access to papers supporting search warrant were recognized, compelling governmental interest in ongoing investigations would justify sealing FBI agent's search warrant affidavit until conclusion of investigation). Accordingly, the redactions in the brief and declaration to ongoing matters is proper.

### III.     RELIANCE ON ORDER TO SEAL

The United States filed the redacted information in reliance on the Court's Order to Seal and understood that its information would be protected. As the Sixth Circuit has explained, when a party "placed significant reliance upon the protective order…only 'extraordinary circumstances' or 'compelling need' warrant reversal of a protective order." *In re Knoxville News-Sentinel*, 723 F.2d 470, 478 (6th Cir. 1983) quoting *FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) ("Once a confidentiality order has been entered and relied upon, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification.") In this case, the Post has not made a showing of any extraordinary circumstances or compelling need justifying disclosure of information regarding pending DEA investigations and prosecutions nor confidential law enforcement investigative techniques. Thus, its Motion for Access should be denied.

Respectfully submitted,

DAVID A. SIERLEJA
First Assistant United States Attorney
Northern District of Ohio

By: /s/James R. Bennett II
JAMES R. BENNETT II (OH #0071663)
KAREN E. SWANSON HAAN (OH #0082518)
Assistant U.S. Attorneys
Carl B. Stokes United States Courthouse
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852
(216) 622-3988 (Bennett)
(216) 622-3851 (Swanson Haan)
E-mail: James.Bennett4@usdoj.gov
E-mail: Karen.Swanson.Haan@usdoj.gov

ALEXANDER K. HAAS
Special Counsel to the Assistant AG, Civil Division
ALICE SHIH LACOUR
ERIC J. SOSKIN
Counsel to the Assistant AG, Civil Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 353-8679 (Haas)
(202) 514-3180 (LaCour)
(202) 514-1500 (Soskin)
E-mail: alex.haas@usdoj.gov
E-mail: alice.s.lacour@usdoj.gov
E-mail: eric.soskin@usdoj.gov

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Loc. R. 7.1(f), I certify that the foregoing brief is eleven (11) pages in length and within the length set by order of the Court.

>/s/ James R. Bennett II
JAMES R. BENNETT II
Assistant U.S. Attorney

*Attorney for the United States of America*

## **CERTIFICATE OF SERVICE**

I certify that, on July 9, 2018, I filed a copy of the foregoing Brief in Response electronically. The Court's electronic filing system will send notice of this filing to all parties. Parties may access this filing through the Court's system.

>/s/ James R. Bennett II
JAMES R. BENNETT II
Assistant U.S. Attorney

*Attorney for the United States of America*