**CONFIDENTIAL JUDGE'S EYES ONLY**
**FILED UNDER SEAL**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION** | ) | |
| **OPIATE LITIGATION** | ) | |
| | ) | **MDL No. 2804** |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) | |
| **ALL CASES** | ) | **Case No. 17-MD-2804** |
| | ) | **Judge Dan Aaron Polster** |

**DECLARATION OF JOHN J. MARTIN IN SUPPORT OF THE UNITED STATES OF
AMERICA'S BRIEF POSING OBJECTIONS TO DISCLOSURE OF ARCOS DATA**

I, John J. Martin, hereby make this declaration pursuant to 28 U.S.C. § 1746.  I declare as follows:

1.    I make the factual statements herein based on my personal knowledge and on information provided to me during my employment by the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), and my personal consideration of information provided by my staff.  If called as a witness, I could and would competently testify to the factual statements herein.

2.    I am currently the Assistant Administrator for the Diversion Control Division ("Diversion") for DEA.  I have been employed by DEA since 1997 and have held the position of Assistant Administrator for Diversion since March 2018.

3.    Prior to serving as Assistant Administrator for Diversion, I was employed in various senior level positions with DEA including most recently as the Special Agent in Charge of the San Francisco Field Division from 2015 to 2018 and as Assistant Special Agent in Charge for the DEA's Las Vegas District Office from 2014 to 2015.

1

**GOVERNMENT
EXHIBIT

1**

CONFIDENTIAL JUDGE'S EYES ONLY
FILED UNDER SEAL

4.     The Assistant Administrator for Diversion serves as the principal advisor to the DEA's Administrator and the Deputy Administrator on all matters related to DEA's diversion efforts both domestically and internationally.

5.     Diversion's mission is to prevent, detect, and investigate the diversion of controlled pharmaceuticals and listed chemicals from legitimate sources to illicit ones while ensuring an adequate and uninterrupted supply for legitimate medical, commercial, and scientific needs. As part of this mission, Diversion coordinates investigations within DEA and with our law enforcement counterparts at the federal and state level.

6.     DEA maintains the Automation of Reports & Consolidated Orders System ("ARCOS"), an automated, comprehensive drug reporting system which monitors the flow of DEA controlled substances from their point of manufacture through commercial distribution channels to point of sale or distribution at the dispensing/retail level – hospitals, retail pharmacies, practitioners, mid-level practitioners, and teaching institutions.

7.     The data contained in ARCOS includes supplier name, registration number, address and business activity; buyer name, registration number and address; as well as drug code, transaction date, total dosage units, and total grams. Approximately 1,200 manufacturers and distributors are required by law to report to ARCOS.

8.     Included in the list of controlled substance transactions tracked by ARCOS are the following: all Schedule I and II materials (manufacturers and distributors); Schedule III narcotic and gamma-hydroxybutyric acid (GHB) materials (manufacturers and distributors); and selected Schedule III and IV psychotropic drugs (manufacturers only).

9.     DEA does not generally share ARCOS information with the public. Rather, DEA uses ARCOS internally to, among other things:

2

**CONFIDENTIAL JUDGE'S EYES ONLY**
**FILED UNDER SEAL**

a. identify patterns and trends in the flow of all Schedule I, II controlled substances; and Schedule III narcotic controlled substances under the Controlled Substances Act (CSA);

b. review and verify specific registrant activities and registrant self-reporting accuracy to assist diversion investigators with accountability audits during scheduled onsite regulatory investigations; and

c. provide field diversion investigators with tips, leads, and pointers of potential diversion of pharmaceutical controlled substances.

10.     DEA also provides ARCOS data to investigators in federal, state and local government agencies throughout the United States on a case by case basis to identify and combat the diversion of controlled substances into illicit channels of distribution.

11.     I understand that DEA has produced ARCOS data in this litigation for all 50 states and several U.S. territories for the time period of January 1, 2006 to December 31, 2014 for the following four opioids:  oxycodone, hydrocodone, hydromorphone, and fentanyl.  I further understand that this production has been made subject to a Protective Order that limits further dissemination of ARCOS information.

12.     I also understand that the ARCOS data produced by DEA has been provided to the plaintiffs' counsel in this litigation under the Protective Order and that plaintiffs in turn have received state public records request for such data from various sources, including the media.

13.     DEA asserts the law enforcement privilege over the ARCOS data produced in this litigation.  As noted above, ARCOS data is used internally by DEA, among other things, as tips and leads in investigations that are central to its mission of combatting diversion of controlled substances.  Such data is also shared on a limited basis with other law enforcement counterparts.

14.     ARCOS data may suggest particular activities or patterns of activity that raise red flags about potential drug diversion that DEA will then investigate in the field.  For example, although not always an indicator of diversion, shipment of an unusually large amount of drugs in

3

**CONFIDENTIAL JUDGE'S EYES ONLY**
**FILED UNDER SEAL**

a particular county or state could point to illicit drug activity. After looking at the data to rule out a legitimate need for the shipment, DEA could determine that a large shipment warrants investigation.

15.     After the field conducts its investigation in reliance on such ARCOS data, DEA further uses such data, together with the results of the investigation, to determine whether to bring an enforcement action against a registrant.

16.     Public disclosure of ARCOS data creates a very real risk of undermining open investigations that rely on such ARCOS information. If members of the public, particularly, the press, were to receive access to ARCOS information, their efforts to investigate any perceived patterns in the data could tip off a potential target that its activities could trigger an investigation before DEA had the opportunity to investigate. Therefore, public disclosure of the data would be detrimental to DEA's investigative efforts and could ultimately impede DEA's efforts to bring an enforcement action.

17.     The risk of adverse impact on DEA investigations and enforcement actions exists regardless of the age of the ARCOS data. Frequently, DEA investigations remain open for multiple years so that all the appropriate evidence can be gathered and DEA can assess the viability of a potential legal or enforcement action against the target. Therefore, it is not unusual for ARCOS data first generated a decade ago to continue to have relevance in ongoing investigations and enforcement actions.

18.     A case remains open during the investigation, during the time that DEA assess the information to determine if it will bring an enforcement action, and during the pendency of any such enforcement action that is brought.

4

**CONFIDENTIAL JUDGE'S EYES ONLY**
**FILED UNDER SEAL**

19.     DEA maintains a case management system called ▮▮▮▮▮ that tracks all open cases that are funded through the Diversion Fee Control Account, an account established in the general fund of the United States Department of Treasury used to support the DEA's Diversion program.

20.     To determine how many open cases could potentially implicate ARCOS data from 2006 to 2014, the time period at issue in this litigation, Diversion ran a report within ▮▮▮▮▮ for these years.

21.     Once all such open cases were identified, Diversion added a filter to segregate open opioids investigations from investigations of other drugs ▮▮▮▮▮

▮▮▮▮▮

22.     ▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮

23.     ▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮

24.     ▮▮▮▮▮

▮▮▮▮▮ Diversion filtered ▮▮▮▮▮

▮▮▮▮▮ characters to identify all open opioid cases from 2006 to 2014 for the following drugs:

a. ▮▮ Fentanyl (Pharmaceutical)
b. ▮▮ Opioid Treatment Pharmaceuticals
c. ▮▮ Hydromorphone (Dilaudid)
d. ▮▮ Schedule II Pharmaceutical Narcotics
e. ▮▮ Schedule III Narcotics
f. ▮▮ Oxycodone
g. ▮▮ Hydrocodone
h. ▮▮ Oxymorphone

**CONFIDENTIAL JUDGE'S EYES ONLY**
**FILED UNDER SEAL**

25.

26.    After applying the ▮▮▮▮ filters, DEA generated a report entitled "Summary of All Open Diversion Cases" that is attached hereto as Exhibit A.

27.    As the report indicates, there are ▮ open cases from 2006 to 2014 involving opioids.  This includes multiple cases each year and progressively more cases in later years, culminating in ▮ open cases in 2014.

28.    Therefore, public disclosure of the ARCOS data could adversely impact DEA's law enforcement efforts and administrative actions in ▮ open cases from 2006 to 2014.

29.

30.

31.



CONFIDENTIAL JUDGE'S EYES ONLY
FILED UNDER SEAL

32.     Public disclosure of ARCOS data also could cause the media or others to incorrectly focus on an individual or company that has not committed any wrongdoing. Unlike DEA diversion investigators who work with ARCOS data regularly and are trained to interpret and understand patterns of activity, members of the general public do not have such training.

33.     As noted above, a shipment of an unusually large amount of drugs is not always an indicator of diversion. There may be a legitimate need for such a large shipment, for example, if a particular county has a large hospital or treatment center in the area, it may require much larger shipments than neighboring counties.

34.     Similarly, one pharmacy may have dealings with large nursing homes or clinics in the area that a different pharmacy does not have, which would explain why the first pharmacy is purchasing much higher amounts of particular controlled substances.

35.     Without knowing how to interpret the ARCOS data, the media could unnecessarily bring attention to an individual or company that has done nothing wrong.

36.     Public disclosure of ARCOS information, moreover, could facilitate theft of opioids because the data could allow criminals to trace the flow of pills. Knowing where manufacturers and distributors are selling the largest number of opioids would allow criminals to

CONFIDENTIAL JUDGE'S EYES ONLY
FILED UNDER SEAL

target these particular locations and attract more drug seekers who are often associated with

collateral crimes that can adversely impact communities.

    37.    Information about the quantities of opioids at a particular location is not publicly

available.  That information, however, is available in ARCOS.  If criminals are able to match a

publicly available address with the quantities of opioids at that location based on information

from ARCOS, that increases the risk that they will target such locations.

I declare under penalty of perjury that the foregoing is true and correct to the best of my
information and belief.

_6/25/18_____
Date

John J. Martin
Assistant Administrator for the
Diversion Control Division
Drug Enforcement Administration

# Exhibit A

CONFIDENTIAL JUDGE'S EYES ONLY FILED UNDER SEAL

| Summary for all Open Diversion Cases | | |
|---|---|---|
| Case Year | Drug | Total |
| 2006 | | |
| 2006 Total | | |
| 2007 | | |
| 2007 Total | | |
| 2008 | | |
| 2008 Total | | |
| 2009 | | |
| 2009 Total | | |
| 2010 | | |
| 2010 Total | | |
| 2011 | | |
| 2011 Total | | |
| 2012 | | |
| 2012 Total | | |
| 2013 | | |
| 2013 Total | | |
| 2014 | | |
| 2014 Total | | |
| Grand Total | | |

**Drug Code Key**

Fentanyl (Pharmaceutical)
Opioid Treatment Pharmaceuticals
Hydromorphone (Dilaudid)
Schedule II Pharmaceutical Narcotics
Schedule III Narcotics
Oxycodone
Hydrocodone
Oxymorphone