# EXHIBIT A

2018 WL 2337285
United States District Court, D. Hawaiʻi.

Ellesar M. TRAWICK, individually and on behalf of all others similarly situated, Plaintiffs,
v.
TRI-STAR RESTAURANT GROUP, LLC; Tri-Star Restaurant Group III, LLC d/b/a/ Sarento's Top of the 'I'; Tri-Star Restaurant Group III, Limited Liability Company; Tri-Star Restaurant Group IV, LLC d/b/a Nick's Fishmarket Maui; and John Does 1-10; Jane Does 1-10, Doe Limited Liability Corporations 1-10, and Doe Other Entities 1-10, Defendants.

CIVIL 17-00456 LEK-RLP
|
Signed 05/23/2018

**Attorneys and Law Firms**

Brandee J. Faria, John F. Perkin, James J. Wade, Perkin and Faria LLLC, Honolulu, HI, Camille Fundora, Sarah R. Schalman-Bergen, Berger & Montague, P.C., Philadelphia, PA, for Plaintiffs.

Christine K.D. Belcaid, John L. Knorek, Torkildson Katz Moore Hetherington & Harris, Honolulu, HI, for Defendants.

### ORDER DENYING PLAINTIFFS' MOTION TO REMAND

Leslie E. Kobayashi, United States District Judge

 **\*1** Before the Court is Plaintiffs Elessar M. Trawick and Nathan Stroetz's ("Plaintiffs") Motion to Remand ("Motion"), filed on October 12, 2017. [Dkt. no. 11.] Defendants Tri-Star Restaurant Group, LLC ("TSG"); Tristar Restaurant Group III, LLC d/b/a Sarento's Top of the "I"; Tri-Star Restaurant Group III, Limited Liability Company ("TSG3"); Tri-Star Restaurant Group IV, LLC d/b/a Nick's Fishmarket, Maui ("TSG4," collectively "Defendants" or "Tri-Star")[1] filed their memorandum in opposition on March 12, 2018, and Plaintiffs filed their reply on March 19, 2018. [Dkt. nos. 18, 19.] This matter came on for hearing on April 2, 2018. On April 30, 2018, this Court issued an entering order ruling on the Motion. [Dkt. no. 28.] The instant Order supersedes that entering order. Plaintiffs' Motion is hereby denied for the reasons set forth below.

### BACKGROUND

Trawick filed the original Complaint on July 25, 2017 in state court. [Notice of Removal of State Court Action to Federal Court ("Notice of Removal"), filed 9/12/17 (dkt. no. 1), Exh. A.] On August 21, 2017, the First Amended Complaint was filed, adding Stroetz as a plaintiff. [Id., Exh. B.] On August 25, 2017, Defendants filed an answer to the original Complaint. [Id., Exh. C.]

Trawick was employed by Defendants as a waiter from approximately February 2015 to December 2016. Stroetz was employed by Defendants as a server from December 2010 until he became a captain in 2014. As of the filing of the First Amended Complaint, he was still employed as a captain. [First Amended Complaint at ¶¶ 1-2.] Defendants are a restaurant group that operates five restaurants on Oʻahu and Maui. [Id. at ¶ 3.] However, only Sarento's and the Nick's Fishmarket Maui restaurant ("Nick's") are referred to in the substantive allegations of the First Amended Complaint.[2] Plaintiffs bring this action as class action, [id. at ¶¶ 10-11,] but the issue of class certification is not before the Court at this time.

Plaintiffs allege Defendants "employ[ ] individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. § 206." [Id. at ¶ 6.] Further, their "annual gross volume of business exceeds $500,000," and they are "not an independently owned and controlled local enterprise within the meaning of 29 U.S.C. § 207(b)(3)." [Id. at ¶¶ 7-8.]

 **\*2** Plaintiffs are among Defendants' tipped employees, which includes waiters, bussers, and bartenders. Defendants' tipped employees are paid hourly and participate in a tip pooling system. [Id. at ¶ 14.] Plaintiffs participated in the tip pool, which also includes management employees who do not usually receive tips, such as roving captains. [Id. at ¶¶ 17, 21.] According to Plaintiffs, "roving captains are actually assistant and general managers whose interactions with customers are

*de minimus*" and who "are responsible for overseeing all of the restaurant's operations, the hiring and firing staff, purchasing food, supplies and equipment, and dealing with suppliers and vendors." [Id. at ¶ 23.] Plaintiffs describe the tip pool protocol as follows:

> 18. During the relevant time period, Tri-Star takes a tip credit from every tipped employee for every hour a tipped employee works, including Plaintiffs.
>
> 19. For example, Tri-Star took a tip credit of $0.75 per hour from Plaintiff Trawick for the pay periods between August 16, 2016 and August 31, 2016, and between September 1, 2016 and September 15, 2016. During those pay periods, Plaintiff Trawick was paid below the minimum wage per hour less the tip credit.

[Id. at pg. 5.] Plaintiffs allege Defendants do not maintain accurate records of the hours Plaintiffs worked on a daily and weekly basis, and Defendants' operations at all of their restaurants are similar. [Id. at ¶¶ 25-26.] Plaintiffs contend Defendants' tip pool practices are illegal because it deprives the tipped employees of the "the full amounts of tips owed to them." [Id. at ¶ 20.]

According to Plaintiffs, Defendants: knowingly allowed roving captains to participate in the tip pool; [id. at ¶ 24;] willfully and/or recklessly failed to properly compensate Plaintiffs, in violation of Hawai'i law; [id. at ¶ 28;] and knew Plaintiffs were being under-compensated because they were splitting their tips with non-tipped employees and their hourly rates fell below minimum wage, [id. at ¶ 29]. Further, Defendants add a pre-set service charge to food and beverage bills "[f]or banquets, events, meetings, room service, and in other instances," without "clearly disclosing to Plaintiffs, ... and Tri-Star's customers that a portion of the service charge was not distributed to the employees" who provided the food and beverage services to the customers. [Id. at ¶¶ 56-58.] The establishments also retained a portion of the service charges. [Id. at ¶ 59.]

Plaintiffs allege the following claims: violation of the Hawai'i Wage and Hour Law, Haw. Rev. Stat. Chapter 387 ("Count I"); [id. at ¶¶ 39-46;] violation of the Hawai'i Payment of Wages and Other Compensation Law, Haw. Rev. Stat. Chapter 388 ("Count II"); [id. at ¶¶ 47-55;] and violation of Haw. Rev. Stat. § 481B-14, which also constitutes an unfair method of competition ("UMOC"), in violation of Haw. Rev. Stat. § 480-2 ("Count III"), [id. at ¶¶ 56-69]. Plaintiffs pray for the following relief: damages, including unpaid wages; liquidated damages; double or treble damages; prejudgment interest; attorney's fees and litigation costs/expenses; and any other appropriate relief. [Id. at pg. 13.]

On September 12, 2017, Defendants removed this action based on federal question jurisdiction because either: 1) Plaintiffs' claims under Chapters 387 and 388 "are wholly dependent on and require an interpretation of the Fair Labor Standards Act ('FLSA') and the federal tip pooling law (29 [U.S.C.] § 203(m) ) and regulations"; or 2) Plaintiffs' claims under Chapters 387 and 388 "are baseless because there is only a federal remedy for the alleged tip pooling infractions." [Notice of Removal at ¶ 4.] Defendants also assert there is supplemental jurisdiction over Count III. [Id. at ¶ 8.]

**\*3** The instant Motion followed. Plaintiffs argue the removal was improper because they assert claims under Hawai'i law, not federal law. Even if their claims require the interpretation of the FLSA, the federal issues are not so substantial as to create federal question jurisdiction.

## STANDARD

28 U.S.C. § 1441(a) states, in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

This district court has stated:

> "Removal and subject matter jurisdiction statutes are 'strictly construed,' and a 'defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability.' " Hawaii ex rel. Louie v. HSBC Bank Nev., N.A., 761 F.3d 1027, 1034 (9th Cir. 2014) (quoting Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008) ). Thus, " '[i]t is to be presumed that a

cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.' " Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006) ) (alterations in original). This " 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." Id. (quoting Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) ).

U.S. Bank, N.A. v. Mizukami, CIVIL NO. 15-00523 JMS-BMK, 2016 WL 632195, at *2 (D. Hawai'i Feb. 17, 2016) (alterations in U.S. Bank).

# DISCUSSION

## I. Federal Question Jurisdiction

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, an action is deemed to "arise under" federal law where it is a "federal law [that] creates the cause of action" that the plaintiff has asserted. Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013); see also Ultramar Am. Ltd. v. Dwelle, 900 F.2d 1412, 1414 (9th Cir. 1990) ("The plaintiff is the 'master' of his complaint; where he may pursue state and federal law claims, he is free to pursue either or both, so long as fraud is not involved.") (quoting Savelson v. W. States Bankcard Ass'n, 731 F.2d 1423, 1426-27 (9th Cir. 1984) ).[3]

Robinson v. First Hawaiian Bank, CIV. NO. 17-00105 DKW-RLP, 2017 WL 3641564, at *3 (D. Hawai'i Aug. 24, 2017) (some alterations in Robinson). In other words:

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See Gully v. First National Bank, 299 U.S. 109, 112-113, 57 S. Ct. 96, 97-98, 81 L.Ed. 70 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*4 Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). In the instant case, Plaintiffs have expressly pled state law claims. However, that does not end the federal question inquiry because:

> Actions asserting state-law claims may also be deemed to "arise under" federal law for purposes of federal question jurisdiction if the asserted state law: (1) "necessarily raise[s] a stated federal issue," (2) that is "actually disputed" and (3) "substantial," and (4) "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods. v. Daru Eng'g & Mfg., 545 U.S. 308, 314 (2005).

Naehu v. Read, CIVIL NO. 16-00673 DKW-KSC, 2017 WL 1162180, at *4 (D. Hawai'i Mar. 28, 2017) (alteration in Naehu).

In the instant case, Plaintiffs' claims brought pursuant to Hawai'i law—Chapters 387, 388, and 480—challenge: 1) Defendants' tip pooling practices and procedures; and 2) Defendants' practice of failing to disclose to customers that a portion of the mandatory service charges is retained by the establishments instead of being distributed to the employees who provide the food and beverage services to the customers. Plaintiffs' second challenge does not necessarily raise a federal issue. The Hawai'i Supreme Court has held that,

> when a hotel or restaurant applying a service charge for the sale of food or beverage services allegedly violates HRS § 481B–14 (2008) (1) by not distributing the full service charge directly to its employees as "tip income" (in other words, as "wages and tips of employees"), and (2) by failing to disclose this practice to the purchaser of the services, the employees may bring an action under HRS §§ 388-6 (1993), -10 (1993 & Supp. 1999), and -11

(1993 & Supp. 1999) to enforce the employees' rights and seek remedies.

Villon v. Marriott Hotel Servs., Inc., 130 Hawai'i 130, 132–33, 306 P.3d 175, 177–78 (2013). Further, "[e]mployees are 'any persons' within the meaning of HRS §§ 480-1 and 480-2(e), ... and are within the category of plaintiffs who have standing to bring a claim under HRS § 480-2(e) for a violation of HRS § 481B-14." Davis v. Four Seasons Hotel Ltd., 122 Hawai'i 423, 425, 228 P.3d 303, 305 (2010). Plaintiffs' claims challenging Defendants' service charge practices necessarily raise only state law issues, and therefore those claims cannot be deemed to arise under federal law for purposes of federal question jurisdiction.

In contrast, neither Chapter 387, Chapter 388, nor any other provision of the Hawai'i Revised Statutes governs the practice of tip pooling. Federal law sets forth the principles governing which employees an establishment may include in a tip pool and how the establishment distributes the tips among the employees in the pool. The FLSA definition of the "wage" paid to an employee states, *inter alia*:

> *5 In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that **this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips**.

29 U.S.C. § 203(m) (emphasis added). The FLSA regulations include a regulation titled "Tip pooling," which provides that: a "valid mandatory tip pool[ ] ... can only include those employees who customarily and regularly receive tips"; and "an employer must notify its employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each employee ultimately receives, and may not retain any of the employees' tips for any other purpose." 29 C.F.R. § 531.54; see also 29 C.F.R. § 531.59(b) (discussing a tip pooling arrangement as an exception to certain tip wage credit requirements).

The leading case on the issue of which employees may be included within a tip pool is a Sixth Circuit case that has been summarized as follows:

> This circuit recently affirmed a magistrate judge's summary judgment ruling that hosts and hostesses at Outback steak houses qualified as "tipped employees," and thus were legitimately subsumed into a section 203(m) tip pool, because they worked in a customarily "tipped" service occupation. Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 300-02 (6th Cir. 1998). On appellate review, this court concluded that, as a factual matter, the actual employment functions of the Outback hosts/hostesses entailed sufficient customer interaction and table attendance duties to qualify their job classification as among the types which have traditionally generated service gratuities. The Kilgore court explained:
>
>> Hosts at Outback are "engaged in an occupation in which they customarily and regularly receive tips" because they sufficiently interact with customers in an industry (restaurant) where undesignated tips are common. Although the parties dispute exactly how hosts spend their time working at Outback, hosts do perform important customer service functions: they greet customers, supply them with menus, seat them at tables, and occasionally "enhance the wait." Like bus persons, who are explicitly mentioned in 29 C.F.R. § 531.54 as an example of restaurant employees who may receive tips from tip outs by servers, hosts are not the primary customer contact but they do have **more than de minimis interaction with the customers**. One can distinguish hosts from restaurant employees like dishwashers, cooks, or off-hour employees like an overnight janitor who do not

directly relate with customers at all. Additionally, the fact that Outback prohibits hosts from receiving tips directly from customers provides some evidence that Outback hosts work in an occupation that customarily and regularly receives tips.

*6 Id. at 301-02 (brackets and ellipses omitted; quotations in original).

Myers v. Copper Cellar Corp., 192 F.3d 546, 550 (6th Cir. 1999) (footnote omitted) (emphasis added). The Ninth Circuit has cited Kilgore regarding an aspect of tip pools, other than who may be included in the pool. See Cumbie v. Woody Woo, Inc., 596 F.3d 577, 581 n.12 (9th Cir. 2010) (declining to recognize a requirement limiting the amount of tip pool contributions to what was "customary and reasonable") (citing Kilgore v. Outback Steakhouse, 160 F.3d 294, 302-03 (6th Cir. 1998) ). Further, at least one district court within the Ninth Circuit has applied the Kilgore analysis in determining who may participate in a tip pool. See Thornton v. Crazy Horse, Inc., Case No. 3:06-cv-00251-TMB, 2011 WL 13234967, at *4 (D. Alaska Sept. 26, 2011). This Court agrees with the Kilgore analysis of who may participate in a top pool. In light of the absence of Hawai'i statutes or case law addressing tip pooling, this Court concludes the FLSA and federal case law—including Kilgore—governs the issue of which employees may participate in a tip pool. Plaintiffs' First Amended Complaint appears to acknowledge that the FLSA and the Kilgore analysis apply to their claims. See First Amended Complaint at ¶ 6 (citing 29 U.S.C. § 206)[4]; id. at ¶ 8 (citing 29 U.S.C. § 207(b)(3) );[5] id. at ¶ 23 (alleging roving captains have "de minimus" interactions with customers).

To the extent Plaintiffs' state law claims are based upon allegedly improper tip pooling practices, their claims "necessarily raise [ ] stated federal issue[s]" that will be "actually disputed" in this case, and that are "substantial." See Grable & Sons, 545 U.S. at 314. Further, because Hawai'i does not have any statute or case law governing tip pooling, this Court may consider the federal issues in Plaintiffs' claims "without disturbing any congressionally approved balance of federal and state judicial responsibilities." See id. Plaintiffs' claims regarding Defendants' tip pooling practice are therefore "deemed to 'arise under' federal law for purposes of federal question jurisdiction." See Naehu, 2017 WL 1162180, at *4.

*7 Federal question jurisdiction, pursuant to § 1331, exists over Plaintiffs' claims regarding Defendants' tip pooling practice. Supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), exists over Plaintiffs' state law claims that do not implicate federal issues. Defendants' removal of this case was therefore proper.

## CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion to Remand, filed October 12, 2017, is HEREBY DENIED.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 2337285, 2018 Wage & Hour Cas.2d (BNA) 183,405

Footnotes

1  Defendants state "[t]here is no active Hawaii entity called 'Tri-Star Restaurant Group III, LLC,' the second named defendant," and it was TSG3 that operated the Sarento's Top of the "I" restaurant ("Sarento's")—not the second named defendant. Sarento's closed on September 30, 2017. [Mem. in Opp. at 1 nn.2-3.]
2  Defendants state none of the entities named as defendants own or operate the other three restaurants—Manoli's Pizza Company, Sarento's on the Beach, and Son'z Steakhouse. Defendants therefore assert only Sarento's and Nick's are at issue in this case. [Mem. in Opp. at 1 n.1.]
3  Salveson was superseded by statute on other grounds, as stated in Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1392 n.3 (9th Cir. 1988).
4  Section 206(a)(1) specifies the minimum wage "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce."
5  Section 207(b)(3) states:

> No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of that specified in such subsection without paying the compensation for overtime employment prescribed therein if such employee is so employed—
>
> ....
>
> (3) by an independently owned and controlled local enterprise (including an enterprise with more than one bulk storage establishment) engaged in the wholesale or bulk distribution of petroleum products if—
>
> (A) the annual gross volume of sales of such enterprise is less than $1,000,000 exclusive of excise taxes,
>
> (B) more than 75 per centum of such enterprise's annual dollar volume of sales is made within the State in which such enterprise is located, and
>
> (C) not more than 25 per centum of the annual dollar volume of sales of such enterprise is to customers who are engaged in the bulk distribution of such products for resale,
>
> and such employee receives compensation for employment in excess of forty hours in any workweek at a rate not less than one and one-half times the minimum wage rate applicable to him under section 206 of this title,

and if such employee receives compensation for employment in excess of twelve hours in any workday, or for employment in excess of fifty-six hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed.

---

**End of Document** © 2018 Thomson Reuters. No claim to original U.S. Government Works.