# EXHIBIT B

2018 WL 3148246
Only the Westlaw citation is currently available.
United States District Court, D. Oregon.

KEITH VALLEY, an individual Plaintiff,
v.
INTERNATIONAL BUSINESS MACHINE CORPORATION (dba IBM, INC.), a New York Corporation, SETERUS, INC., (fka KYANITE FINANCIAL BUSINESS SERVICES, INC.), a Delaware corporation, and AMANDA LOWE, an individual, Defendants.

Case No. 3:17-cv-1413-AC
|
Filed 03/14/2018

FINDINGS AND RECOMMENDATION

JOHN V. ACOSTA United States Magistrate Judge

*Introduction*

**\*1** Plaintiff Keith Valley ("Valley") filed this lawsuit in state court against his former employers alleging claims for wage violations, retaliation, and breach of contract. Defendants timely removed the lawsuit to this court asserting diversity jurisdiction and identifying defendant Amanda Lowe ("Lowe") as a "sham defendant." Presently before the court is Valley's motion to remand, and his request for attorney fees and costs related to his motion.

The court finds Valley failed to state a cause of action against Lowe according to the settled rules of the state, Lowe should be disregarded for jurisdictional purposes, and complete diversity exits. Alternatively, Valley seeks to recover sums wrongfully collected as a tax, thereby raising a substantial issue of federal law. Accordingly, the court has diversity and federal question jurisdiction over this action, removal was proper, and the motion to remand and Valley's request for attorney fees and costs should be denied.

*Background*

Defendant Seterus, Inc. ("Seterus"), is a fully-integrated mortgage loan servicing company and a wholly-owned subsidiary of defendant International Business Machine Corporation ("IBM") (Lowe Decl., ECF No. 20, ¶¶ 2, 4.) From October 24, 2015, to May 25, 2017, Valley worked for Seterus as a bankruptcy asset specialist at a loan servicing center in Beaverton, Oregon. (Compl. ECF No. 1-1, ¶ 5;Terbenche Decl. ECF No. 21, ¶ 4.) Initially, Valley was hired by a third party and assigned to IBM as a contractor. (Terbenche Decl., ¶ 4.) In October 2016, IBM hired Valley directly. (Terbenche Decl. ¶ 5; Ex. 1.) [1]

While working at Seterus, Valley reported directly to Maggie Parrish ("Parrish") and Megan Snyder ("Snyder"), both of whom worked in Seterus's Beaverton office and served as Valley's day-to-day managers. (Lowe Decl. ¶ 6.) Parrish and Snyder reported to Shannon Stock ("Stock"), Assistant Vice President of the Bankruptcy group, who worked out of the Raleigh, North Carolina office and was only infrequently at the Beaverton office. (Lowe Decl. ¶¶ 6. 13.) Lowe was the Assistant Vice President of Operational Controls responsible for general operations of the foreclosure department as well as risk and compliance, and worked out of the Beaverton office. (Lowe Decl. ¶¶ 3, 4.) Both Stock and Lowe reported to Michael Perry ("Perry"), Vice President of Default Management. (Lowe Decl. ¶ 6.)

Valley alleges he was not allowed rest breaks or meal periods, and IBM and Seterus withheld too much money from his paychecks, did not paid wages in a timely manner, and did not properly report and pay taxes, all in violation of Oregon law. (Compl. ¶¶ 7, 9, 14, 16, 17, 18.) With regard to improper withholding, Valley specifically alleges "[a]t the time of hire Plaintiff claimed two dependen[t]s on his W-4 form. More money was being deducted from his gross wages than required." (Compl. ¶ 9.) In November 2016, Valley contacted the human resources and payroll departments to complain about "additional deductions from his gross wages." (Compl. ¶ 9.) The payroll department advised Valley that "employees made mistakes and miscalculated the deductions and withholdings of Plaintiff's wages and other recently hired employees. As a result, Plaintiff['s] net wage payment was lower than it should have been." (Compl. ¶ 10.) IBM and Seterus promised Valley he would receive the "additional deduction from his wages in the form of a separate check," which never arrived. (Compl. ¶ 11.) Valley alleges his communications with

other coworkers about the payroll issues and his advocacy on the issue "did not endear [him] to management," and he was terminated "[a]pproximately six months after his efforts to address company wide wage theft," along with other employees who complained about wage theft. (Compl. ¶ 12.) He claims his termination was based on his good faith reports of conduct he believed to be illegal. (Compl. ¶ 28.)

**\*2** Valley asserts claims against IBM and Seterus for unlawful deductions under OR. REV. STAT 652.610(3); late wage payments under OR. REV. STAT. 652.120; breach of contract; and whistleblower retaliation under OR. REV. STAT. 659A.199. Valley's sole claim against Lowe is for aider and abettor liability under OR. REV. STAT.659A.030(1)(g).

In support of his claim against Lowe, Valley alleges:

> At all times material to this action, Defendant Amanda Lowe (herein referred to as "Lowe") is a natural person residing in Oregon. Defendant [Lowe][2] was employed by Defendant IBM and Defendant Seterus and managed the Plaintiff subject to his terms of employment.
>
> \* \* \*
>
> Defendant Lowe, an Assistant Vice President, holds a management role and was aware of the issues with Payroll miscalculations. Defendant Lowe did not address the issues raised by Plaintiff. A lack of response and leadership on the part of Ms. Lowe allowed the wage and hour abuses to continue.
>
> \* \* \*
>
> Amanda Lowe aided, abetted, incited, compelled and/or coerced the illegal wage theft and retaliation for his good faith reports of conduct he believed to be illegal.

(Compl. ¶¶ 4, 13, 33.)

Lowe represents she did not supervise, hire, or review Valley's performance, and had no authority to counsel, discipline, or adjust Valley's grievances. (Lowe Decl. ¶ 7.) Parrish and Snyder were Valley's direct supervisors in the Beaverton office and available to assist him with any concerns. (Lowe Decl. ¶ 13.) However, according to Valley, Lowe held a management role and was generally the person of authority in the Beaverton office. (Valley Decl., ECF No. 13, ¶¶ 3, 4.) Lowe admits she provided administrative support to the bankruptcy team from time-to-time by executing court documents or settlement agreements requiring the signature of an Assistant Vice President. (Lowe Decl. ¶ 13.)

Occasionally, employees in the Beaverton office from other departments and over which Lowe had no control would come to her with concerns. (Lowe Decl. ¶ 8.) In these instances, Lowe generally consulted with human resources and let them work on a resolution. (Lowe Decl. ¶ 8.) On one occasion in November 2016, Valley approached Lowe regarding an error in his first IBM payroll check. (Lowe Decl. ¶ 9.) Lowe relayed Valley's complaint to human resources and Stock, and believed human resources was working on the issue. (Lowe Decl. ¶ 9.) Lowe represents she was not involved in, and did not provide any input into, Valley's termination, which was a part of a reduction in workforce due to financial circumstances. (Lowe Decl. ¶¶ 11, 12.)

Sheri Terbenche ("Terbenche"), Managing Director for Seterus, stated the error in Valley's first paycheck directly from IBM resulted from a delay in entering Valley's W-4 information. (Terbenche Decl. ¶ 10.) As a result, Valley's withholding allowance was set at "0" rather than the "2" claimed by Valley on his W-4 for his November 15, 2016 payroll check. (Terbenche Decl. ¶ 10.) While Terbenche advised Valley the errors would be remedied and he would receive an appropriate refund in his December 15, 2016 payroll check, the adjustment and refund were actually reflected in his November 30, 2016 payroll check. (Terbenche Decl. ¶¶ 9, 11.)

**\*3** Valley filed this action in the Circuit Court of the State of Oregon for the County of Multnomah on August 8, 2017. IBM, Seterus, and Lowe (collectively "Defendants"), filed a notice of removal on September 8, 2017, identifying Lowe, the sole defendant with Oregon citizenship, as a sham defendant fraudulently joined to defeat diversity jurisdiction. Valley filed a motion to remand contending he has alleged a viable claim against Lowe, thereby defeating Defendants alleged diversity jurisdiction. In their opposition brief, Defendants assert for the first time the existence of federal question jurisdiction based on Valley's claim for a refund of federal taxes erroneously withheld from his paycheck.

*Legal Standard*

28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Such removal can be based on either diversity jurisdiction or federal question jurisdiction. 28 U.S.C. §§ 1441(b) and (c) (2017). A plaintiff who believes an action has been improperly removed to federal court may file a motion to remand. 28 U.S.C. § 1447(c) provides:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

The removal statute is strictly construed and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The presumption against removal jurisdiction means "the defendant always has the burden of establishing that removal is proper." *Id.*

*Discussion*

I. Diversity Jurisdiction

Defendants removed this action asserting the existence of diversity jurisdiction. Under 28 U.S.C. § 1332(a), district courts have original jurisdiction of all civil actions in which the matter in controversy exceeds the sum or value of $75,000 and the parties are citizens of different states. In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, *i.e.*, all plaintiffs must have citizenship different than all defendants. See *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Consequently, to be valid, removal of a state action based on diversity "requires complete diversity of citizenship." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). One exception to the requirement of complete diversity, however, is when a non-diverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

A district court may disregard a non-diverse party named in the state court complaint and retain jurisdiction if joinder of the non-diverse party is a sham or fraudulent. *Stroteck Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002). Fraudulent joinder does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive. *Lewis v. Time, Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979) *aff'd*, 710 F.2d 549 (9th Cir. 1983). As the Ninth Circuit explained in *Morris*:

> Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.

*\*4* *Morris*, 236 F.3d at 1067 (internal quotations and citations omitted).

A defendant seeking removal to federal court "is entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339 (citations omitted). Accordingly, when faced with fraudulent joinder claims, the court may look beyond the pleadings and consider evidence similar to that offered in summary judgment proceedings, such as affidavits and deposition testimony. *Morris*, 236 F.3d at 1068 (citation omitted). A district court resolves all questions of disputed fact and controlling law against the party seeking removal. *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1169-70 (E.D. Cal. 2011)(citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995).

The Ninth Circuit has made clear that the party invoking federal court jurisdiction has a very heavy burden since, in addition to the strong presumption against removal jurisdiction, there is a "general presumption against fraudulent joinder" which a defendant asserting fraudulent joinder must overcome. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)(quoting *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d

1203, 1206 (9th Cir. 2007)). Moreover, "[f]raudulent joinder must be proven by clear and convincing evidence." Hamilton, 494 F.3d at 1206.

Valley asserts a single claim against Lowe for aider and abettor liability under OR. REV. STAT. 659A.030(1)(g). (Compl. ¶ 32.) OR. REV. STAT. 659A.030(1)(g) provides that: "[i]t is an unlawful employment practice ... [f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." Valley argues that OR. REV. STAT.659A.199 reaches to other chapters, including ORS Chapter 652, to provide a legal basis for his aider and abettor wage theft theory against Lowe. Chapter 659A makes it unlawful:

> for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employees has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule, or regulation.

OR. REV. STAT.659A.199 (2017). Valley specifically alleges Lowe "aided, abetted, incited, compelled and/or coerced the illegal wage theft and retaliation for his good faith reports of conduct she believed to be illegal."

Valley alleges Lowe assisted in the excess deductions from his paycheck in violation of OR. REV. STAT. 652.610(3) and OR. REV. STAT. 652.120, as well as in the retaliation of Valley for reporting the excess withholding in violation of OR. REV. STAT. 659A.199. OR. REV. STAT. 659A.030(1)(g) is expressly limited to violations of Chapter 659A and does not apply to claims brought under Chapters 652. White v. Amedisys Holding, LLC, No. 3:12-cv-01773-ST, 2012 WL 7037317, at *5 (D. Or. Dec. 18, 2012)("The reference to 'this chapter' is to ORS Chapter 659A, which forbids certain unlawful employment practices.); Grosz v. Farmers Ins. Exchange, No. CV- 10-563-ST, 2010 WL 5812667, at *8 (D. Or. Nov. 9, 2010)(concluding, based on the legislative history of subsection .030(1)(g), that "aiding and abetting liability under ORS 659A.030(1)(g) does not apply to claims for wage claim retaliation under ORS 652.355 or 653.060."). Valley cites no authority to the contrary. Accordingly, Valley may not state a cause of action against Lowe for assisting in violating provisions of Chapter 652. The court must now consider Valley's claims for aiding and abetting retaliatory conduct in violation of OR. REV. STAT. 659A.199.

**\*5** Oregon courts have held a co-employee may be liable as an aider and abettor under OR. REV. STAT.659A.030(1)(g). Schram v. Albertson's Inc., 146 Or. App. 415, 422 (1997)("The plain text of the statute clearly encompasses both employees and employers and reaches those employees who aide and abet unlawful employment practices."); Price v. Taco Bell Corp., 896 F. Supp. 1022, 1024 (D. Or. 1995). However, neither party has offered case law from the Oregon courts discussing or analyzing a claim for aider and abettor liability under OR. REV. STAT. 659A.030(1)(g). This district recently acknowledged the absence of such case law. See Hernandez v. FedEx Freight, Inc., Case No. 2:16-cv-01495-SU, 2017 WL 3120283, at *2 (D. Or. June 12, 2017)("Neither party has cited authority to establish, or sought to explain or argue, precisely what constitutes aiding, abetting, etc., discrimination, retaliation, or other forbidden acts under Or. Rev. State chapter 659A. For instance, neither party has laid out the elements of a *prima facie* case of aiding discrimination under Or. Rev. Stat. § 659A.030(1)(g). The Court has researched the matter itself and has not found authority discussing what is necessary to plead a § 659A.030(1)(g) claim. The Court thus looks to general tort law principles for guidance.") Additionally, this district has concluded the law of Oregon is not " 'settled' with respect to supervisor liability under § 659A.030(1)(g), particularly in light of the plain language of the statute." Chamber v. United Rentals, Inc., Civ. No. 10-62-AA, 2010 WL 2730944, at *2 (D. Or. July 7, 2010).

The fraudulent joinder of a non-diverse defendants must be considered "according to the settled rules of the state." At least one judge in this district has granted a motion for remand based solely on the absence of settled Oregon law construing OR. REV. STAT.659A.030(1)(g) to allow Oregon courts to determine whether the plaintiff had stated a viable claim under OR. REV. STAT.659A.030(1)(g) against a non-diverse defendant. Chambers, 2010 WL 2730944, at *2. While remand may be appropriate based solely on the absence of settled law from the Oregon courts, the court will consider whether Valley's allegations

and the evidence offered by the parties, viewed in a light most favorable to Valley, and taking into account Defendants' heavy burden and the lack of settled state law in this area, state a claim against Lowe under OR. REV. STAT.659A.030(1)(g). In so doing, the court will "not consider whether [Lowe] is actually liable to [Valley], but only whether there is a possibility that [Lowe] might be found liable." Gaither v. John Q. Hammons Hotel Mgmt., LLC, No. CV 09-629-MO, 2009 WL 9520797, at *4 (D. Or. Sept. 3, 2009).

A plaintiff asserting a claim for retaliation under OR. REV. STAT. 659A.199 must show: "(1) she as engaging in a protected activity, (2) she suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision." Larmanger v. Kaiser Found. Health Plan of the Nw., 895 F. Supp. 2d 1033, 1049 (D. Or. 2012). In the absence of settled Oregon law, this district has concluded "that liability for aiding and abetting, etc. discrimination or retaliation in violation of OR. REV. STAT.659A.030(1)(g) requires at a minimum that the aiding party intended that the complainant be discriminated or retaliated against, or understand that he was aiding in acts of discrimination or retaliation." Hernandez, 2017 WL 3120283, at * 3.

Valley specifically alleged Lowe managed him in some capacity and failed to address the issues raised by Valley. Lowe concedes that, on at least one occasion, Valley complained directly to Lowe about excess deductions from his paycheck. The undisputed evidence establishes Valley's complaint was addressed and resolved in his next paycheck. (Terbenche Decl. ¶ 11.) Valley generally alleges his complaint angered management and six months later, he was terminated. Valley does not identify the individual who fired him, the parties involved in the decision-making process, or Lowe's involvement in such process.

Judge Stewart has, on two occasions, found somewhat similar allegations sufficient to demonstrate a possibility that a co-employee could be found liable for aiding and abetting retaliatory conduct "given the lack of settled Oregon law in this area." White, 2012 WL 7037317, at *6; Demont v. Starbucks Corp., No. CV-10-644-ST, 2010 WL 5173314, at *7 (D. Or. Aug. 26, 2010). In White, Judge Stewart held passive allegations that the plaintiff was subject to write-ups, discipline, and retaliation in response to her failure to comply with what she believed to be fraudulent reporting practices were sufficient to demonstrate a possibility the director of the facility in which plaintiff worked, and who allegedly created a hostile work environment in retaliation for her complaints, could be found liable for aiding and abetting in violation of OR. REV. STAT.659A.030(1)(g). White, 2012 WL 7037317, at *4, *6. In Demont, Judge Stewart found the plaintiff had alleged sufficient facts to demonstrate a possibility his supervisor and the district manager could be found liable for aiding and abetting. Demont, 2010 WL 5173314, at *7. The plaintiff alleged, in conclusory terms, that the defendants "participated in and assisted each other in ongoing discrimination, harassment, and retaliation against [him] in the workplace" and "violated ORS 659A.030(1)(g) by aiding each other in efforts to perpetuate ongoing discrimination, harassment, and retaliation." Id. at *6. The plaintiff alleged both defendants were angry with him and the district manager disciplined him. Id. at *7. Judge Stewart noted the allegations did not make clear who made the decision to remove the plaintiff from the schedule or terminate the plaintiff and presumed he was attempting to allege all individual defendants were involved in the termination decision. Id. at *6, *7. Moreover, in a third case, Chief Judge Mosman found allegations that an assistant general manager "knew or should have known of [the] plot to get [plaintiff] fired ... [and] was complicit in it," "pretextually disciplined and suspended" plaintiff, and "aided and abetted in each of the unlawful acts alleged" by plaintiff were sufficient to make the manager a proper defendant under Oregon law, thereby defeating diversity jurisdiction. Gaither, 2009 WL 9520797, at *2, *4.

*6 Valley's allegations are distinguishable from those considered by Judges Stewart and Mosman. Here, Valley has merely alleged Lowe had some managerial authority over him and was aware of a single complaint of excess deductions from his first paycheck which was referred to the human resources and payroll departments. These complaints were addressed and quickly remedied by IBM. While Valley alleges his "advocacy did not endear [him] to management," Valley does not identify who is included in the term "management" or allege Lowe was upset with him or disciplined him in any way for his complaint. In Demont, the plaintiff alleged the supervisor and manager were angry with him and the manager had disciplined him while in Gaither, the manager had allegedly "pretextually disciplined and suspended" the plaintiff. Valley does not allege retaliation or hostile actions between his complaint

in mid-November 2016 and his termination in late-May 2017. Allegations of ongoing write-ups, discipline, and a hostile environment were present in *White* and allegation of ongoing discrimination and harassment were present in *Demont.* Finally, there is no allegation of participation by Lowe with "management" in the discussion or resolution of his complaint. In *Demont*, the plaintiff alleged the defendants participated in and assisted each other in retaliating against the plaintiff.

Valley's allegations are more akin to those Judge Stewart found insufficient to state a claim in *Demont.* Shift supervisors, who did not have the authority to "hire, fire, manage performance, discipline or terminate" the plaintiff and were not alleged to have been involved in any discriminatory conduct, were held not liable as aiders and abettors of retaliatory conduct under OR. REV. STAT.659A.030(1)(g). *Demont*, 2017 WL 5173314, at *1, *7. Similarly, the alleged conduct of a human resources director who provided information to the plaintiff at his request "does not, by any stretch of the imagination, rise to the level of aiding and abetting unlawful discrimination." *Id.* at * 7. Here, while Valley alleges Lowe "managed" him and was a person of authority in the Beaverton office, it is undisputed that Lowe "did not supervise or have any authority over Mr. Valley," "was not responsible for his hire, did not review his performance, and had no authority to counsel, discipline, or adjust his grievances." (Lowe Decl. ¶ 7.) Lowe had no supervisory authority over Valley, is not alleged to have engaged in any retaliatory conduct, and merely forwarded his complaint to human resources. These allegations do not support a claim for aiding and abetting under OR. REV. STAT.659A.030(1)(g).

The court finds Defendants have met the heavy burden required to establish Valley failed to state a claim against Lowe under OR. REV. STAT.659A.030(1)(g) for the purposes of fraudulent joinder. Accordingly, Lowe was fraudulently joined, is a sham defendant, and must be ignored in considering the existence of diversity jurisdiction. Valley's motion to remand should be denied.

II. Federal Question Jurisdiction
While Defendants relied solely on diversity jurisdiction in their notice of removal, they now argue this court has federal question jurisdiction over this lawsuit. Defendants assert Valley's claims under Chapter 652, and his breach of contract claim, are based on taxes improperly withheld from his paycheck and, therefore, seek a refund of taxes under 26 U.S.C. § 7422. Valley counters he is seeking recovery of unpaid wages, not a refund of taxes, and his claims do not implicate federal law.

Federal courts have original federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1441(b) (2017). Normally, cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, federal courts have recognized that a case may also arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983). "Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Id.* at 13.

**\*7** A corollary to the well-pleaded complaint rule is the "artful pleading" doctrine. *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). This doctrine provides that "[a]lthough the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." *Hansen v. Blue Cross of California*, 891 F.2d 1384, 1389 (9th Cir. 1989)(quoting *Paige v. Henry J. Kaiser Co.*, 826 F.3d 857, 860 (9th Cir. 1987)).

The Supreme Court has held that federal question jurisdiction may exist under the artful pleading doctrine if the complaint necessarily raises "a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-320 (2005)(federal jurisdiction applied to a state quiet title action because the meaning of a federal statue was the sole contested issue, there was a substantial national interest in the availability of a federal forum, and the case had little impact on the federal-state division of labor because only a rare quiet title case would raise a matter of federal law).

A state law claim thus raises a substantial federal question where it necessarily "involv[es] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Id.* at 313 (citation omitted.)

Defendants assert Valley has alleged a claim for a tax refund governed by 26 U.S.C. § 7422, which provides, in pertinent part:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (2017). The Ninth Circuit interpreted the statute to mean "that if someone wrongfully collects money as a tax, then a suit to recover the sum constitutes a tax refund suit." *Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1410 (9th Cir. 1998). It then held that any attempt by a plaintiff to recover amounts collected as a federal tax is governed by Section 7422 and necessarily raises a substantial federal question. *Id.* at 1412.

Valley's First Claim for Relief, entitled "Unlawful Deductions," alleges "Defendants violated ORS 652.610(3) by deducting ... more taxes than Plaintiff had indicated on his W-4 form." (Compl. ¶ 21.) Valley seeks his "unpaid wages" as well as actual and statutory damages. (Compl. ¶ 22.) Despite Valley's characterization of his damages sought as "unpaid wages," he is clearly ==seeking to recover sums he alleges Defendants' wrongfully collected as a tax==, and has filed suit "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected." Accordingly, Valley's complaint necessarily raises a federal issue that must be considered with regard to 26 U.S.C. § 7422. The court finds Valley has ==alleged a federal question establishing federal subject matter jurisdiction.==[3] Valley's motion to remand should be denied on this ground as well.

### III. Attorney Fees

**\*8** Valley asks the court to award attorney fees and costs incurred in contesting removal of this action under 28 U.S.C. § 1447(c). Valley argues Defendants lacked an objectively reasonable basis for removing this action. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Removal is not objectively unreasonable merely because the court orders remand. *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, courts assess whether "the relevant case law clearly foreclosed the defendant's basis for removal." *Id.* at 1066–67.

As both diversity and federal question jurisdiction exist, Defendants clearly had an objectively reasonable basis for removal. Defendants' removal was proper and Valley's request for attorney fees should be denied.

### Conclusion

Valley's motion (ECF No. 12) to remand, and his request for attorney fees, should be DENIED.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **April 2, 2018**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 14th day of March, 2018.

**All Citations**

Slip Copy, 2018 WL 3148246

Footnotes

| | |
|---|---|
| 1 | Valley alleges he was jointly employed by IBM and Seterus. For the purposes of this motion, this distinction is irrelevant. |
| 2 | Valley appears to mistakenly refer to Lowe as "Defendant Stock". |
| 3 | Defendants argue Valley's claims based on improperly withheld federal taxes are preempted. The court need not consider this argument to resolve the pending motion to remand, and it declines to do so at this time. |

**End of Document**  © 2018 Thomson Reuters. No claim to original U.S. Government Works.