**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION | ) | CASE NO. 1:17-MD-2804 |
| OPIATE LITIGATION | ) | |
| | ) | JUDGE DAN A. POLSTER |
| | ) | |
| | ) | MAGISTRATE JUDGE DAVID RUIZ |

**HD MEDIA COMPANY, LLC'S BRIEF IN SUPPORT OF PUBLIC DISCLOSURE OF**
**ARCOS DATA**

HD Media Company, LLC, owner of the Charleston Gazette-Mail and The Herald-Dispatch (collectively "HDM"), specially appears pursuant to this Court's order of June 13, 2018, regarding HDM's West Virginia Freedom of Information Act ("WVFOIA") request to the Cabell County Commission ("CCC"), a plaintiff in Case No. 1:17-MD-2804.[1] As more fully set forth below, HDM respectfully asserts that ARCOS data alleged to fall within the scope of a stipulated protective order is stale historic information and that none of the ARCOS data sought by HDM is entitled to protection under trade secret, privacy or law enforcement exemptions of the federal FOIA and WVFOIA or under Federal Rule of Civil Procedure 26(c). Detailed DEA West Virginia ARCOS data for 2007-2012 is currently in the public domain and none the harm claimed here occurred as a result of its disclosure in 2016. The U.S. Drug Enforcement Administration ("DEA") and the defendants fail to support their conclusory statements in opposition to disclosure by identifying any legally cognizable harm that would result from release of stale historic 2006-2012 ARCOS.

**I.     INTRODUCTION**

The DEA and the defendants are aware that a six-year portion of ARCOS data (2007-2012) on prescription opioid distribution in West Virginia was disclosed to HDM in 2016. Both

_____

[1] HDM joins and incorporates herein by reference The Washington Post's brief in support of

failed to acknowledge this in their briefs. This Court previously recognized, "[i]t is highly unlikely exposure of data more than three years old will actually or meaningfully interfere with any ongoing matter[.]" (Order RE: ARCOS DATA, ¶ 8, ECF No. 233.) The Court's observation was perceptive: the DEA and the defendants warn serious harm will follow public access to the ARCOS data at issue here. However, they fail to explain why no harm occurred after the 2016 disclosure of West Virginia ARCOS data to HDM and other WVOIA requesters.

Instead of addressing disclosure of six years of ARCOS data and identifying harm that accrued as a result, the opposition briefs rely upon unsubstantiated assertions of harm to current law enforcement and claims that stale historic ARCOS data will cause significant competitive harm. These and the briefs' other superficial makeweight arguments about trade secrets, the Privacy Act, federal property interests, and a required report privilege are addressed below.

## I.     ARGUMENT

### A.    The DEA's and the defendants' briefs ignore crucial facts.

The DEA and the defendants' briefs opposing release of any ARCOS data fail to acknowledge or address (1) a West Virginia trial court's rejection in 2016 of distributors' opposition to disclosure of court records containing ARCOS data, (2) the disclosure by the Office of the West Virginia Attorney General ("AG") to HDM of 2006-2012 West Virginia ARCOS data containing the same type of information requested by HDM from the CCC, or (3) the 2016 West Virginia Board of Pharmacy release to HDM of all 7000 drug distributors' suspicious order reports filed by drug distributors from 2012 to 2016.

#### 1.     Disclosure of ARCOS data by the West Virginia Trial Court

In 2016, HDM moved to intervene and to unseal amended complaints in *State of West Virginia ex rel. Patrick Morrisey v. AmerisourceBergen Corp. et al.*, Civil Action No. 12-C-

141, and *State of West Virginia ex rel. Patrick Morrisey v. Cardinal Health*, Civil Action No. 12-C-140 ("pill mill cases"). These cases were filed in 2012 in West Virginia state court by West Virginia's AG. In both, HDM sought to unseal the amended complaints that contained ARCOS information.[2] After briefing by HDM and the parties, the trial court rejected the drug distributor defendants' competitive injury and trade secret arguments and ordered the records unsealed in both cases.  (Ex. A; Ex. B.) None of the distributor defendants in either case moved to stay the court's order or appeal to prevent public disclosure of the ARCOS data.

The West Virginia trial court finding is equally applicable to the ARCOS data sought by HDM pursuant to its WVFOIA request and all of the similar ARCOS data for every other state. Historic data from 2006-2014 identifying the number of prescription opioid pills sold in West Virginia and the other 49 states without pricing or profit information has no competitive value that the DEA or the defendants have articulated beyond conclusory statements. Neither the DEA nor the defendants have attempted to claim harm precipitated by the 2007-2012 West Virginia ARCOS data entering the public domain.[3]

### 2.  ARCOS data disclosed by DEA and the West Virginia Attorney General

In August 2016, HDM filed a WVFOIA request with the West Virginia AG's office for extensive ARCOS data referenced in the unsealed pill mill case complaints. (Ex. C, Eyre Aff. ¶ 12.)  The AG released the requested 2007-2012 ARCOS data identifying hydrocodone and

---

[2] The amended complaints were sealed per stipulated protective orders like the one entered herein because the distributor defendants alleged the complaints contained confidential ARCOS data obtained by the plaintiff during pre-trial discovery.

[3] In its Order addressing and rejecting the DEA's objections to the plaintiffs' subpoena, this Court identified the DEA's assertion that ARCOS data would reveal "details regarding the scope and breadth of [each manufacturer's and distributor's] market share, which is likely to cause [them] substantial competitive harm." In response, the Court observed that "the *Madel* court explicitly rejected this argument, noting the assertion was conclusory and also that market data over three years old carried no risk of competitive harm." (Order Re: ARCOS Data ¶ 7, ECF No. 233.)

oxycodone deliveries along with related DEA emails regarding its receipt of six years of ARCOS information.[4] (Ex. C, Eyre Aff. ¶¶ 13-15.)[5]

The state's highest law officer released the West Virginia ARCOS data, making no claim of exemptions for trade secrets, competitive injury or interference with law enforcement efforts to combat illegal opioid diversion. Although the defendants' brief cursorily asserts that WVFOIA exemptions prohibit such disclosure – citing only the exemptions eschewed by the AG – this representation is obviously erroneous.

### 3. Suspicious order reports disclosed to HDM and publicly available upon request

West Virginia law requires distributors to regularly file suspicious [controlled substances] order reports ("SOR") with the West Virginia Board of Pharmacy ("Board").[6] W. Va. C.S.R. §§ 15-2-4.2.1. and 15-2-4.4. In November 2016, the Board allowed HDM reporter Eric Eyre to review all SOR filed by drug wholesalers/distributors. Eyre reviewed more than 7000 suspicious order reports at the Board's office. (Ex. C, Eyre Aff. ¶ 16.) The Board also furnished a CD of all of the reports, which contained the names of the reporting distributors (primarily McKesson and Cardinal Health) and the names and locations of the pharmacies making suspicious orders. (Ex. C, Eyre Aff. ¶ 16.)

---

[4]The information disclosed by the AG pursuant to the HDM WVFOIA request included a DEA analysis of hydrocodone and oxycodone sales by each West Virginia county on a per-capita basis and hydrocodone and oxycodone purchases by strength (mg). The ARCOS pharmacy spreadsheets included: the name of the pharmacy, DEA number, drug code, city, county, zip code, weight in grams, and dosage units.

[5] Subsequently, the AG released the same ARCOS database received by the CGM to other requesters. These WVFOIA disclosures are identified online as required by law at: https://apps.sos.wv.gov/FOIA/Requests/

[6] The SOR requirement parallels federal law and regulations that impose essentially the same requirements on distributors as does West Virginia law and regulations.

Like the ARCOS reports the AG provided to HDM, all West Virginia SOR are available to the public, and the Board has never claimed the SOR are exempt from disclosure. Moreover, no absolute expectation of confidentiality or prohibition of disclosure of SOR data or ARCOS data exists under federal or state law. United States opioid drug distributors, manufacturers, and pharmacies are well aware that any or all of this historic/stale information may be disclosed to the public.

**B.      Neither the stipulated protective order nor any provision of federal and state law should prevent the disclosure of the requested ARCOS data.**

The DEA contends release of the stale historic 2006-2014 ARCOS data would "eviscerate this Court's Protective Order and contradict the bedrock [discovery] principles." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1995).[7] (U.S. Br. Supp. Objs. Discl. 4, ECF No. 663.) The defendants essentially make the same argument. This argument, however, ignores the fact *Anderson* involved discovery in a criminal case and that the trial court denied access to sealed documents after balancing the harm to persons referenced in an indictment as unindicted co-conspirators versus the public's right to the information. *Anderson* did not address the issue presented here – whether injury would occur by disclosure of information when a portion of it was already in the public domain and there is no evidence that its disclosure will result in any competitive harm or harm to law enforcement.

Contrary to the DEA's blanket assertion about discovery, "[i]t is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively

---

[7] The DEA's sole reliance on *Anderson* is erroneous. It involved the sealing of documents provided by the government to defendants in discovery in a criminal case. The Eleventh Circuit upheld the trial courts' denial of a newspaper's request to access the sealed documents finding that both the harm to persons named in a bill of particulars as "unindicted co-conspirators" and the harm to individuals named in the notice of similar acts evidence outweighed the public's interest in learning the information before trial. 799 F.2d at 1440-42.

public. " *San Jose Mercury News, Inc. v. U.S. Dist. Court-N. Dist. (San Jose),* 187 F.3d 1096, 1103 (9th Cir. 1999*)*. Rule 26(c) only authorizes this Court "to override this presumption where `good cause' is shown" on a motion for a protective order. *Id.* at 1103. *See also Proctor & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 227 (6th Cir. 1996) ("Rule 26(c) allows the sealing of court papers only 'for good cause shown' to the court that the particular documents justify court-imposed secrecy.") (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983)).  "Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson,* 710 F.2d at 1179.

The DEA ignores the fact that the Protective Order was stipulated, this Court entered it based upon representations of the parties, and it has not been subject to this Court's review under Rule 26(c). (Case Mgmt. Order No. 2: Prot. Order, ¶¶ 1, 85, ECF No. 441). "The ultimate burden of persuasion" rests "on the Producing Party as if the Producing Party were seeking a Protective Order pursuant to Fed. R. Civ. P. 26(c) in the first instance." (Order, ¶¶ 52, 58, ECF No. 441.)

The DEA and the defendants' argument that the information sought by HDM should not be publicly disclosed because it is subject to the stipulated Protective Order begs the question. They must now carry their burden of showing the information is entitled to protection. As explained below, they have not and cannot satisfy this burden.

**C.**     **Public disclosure of stale historic ARCOS data for the period 2006-2012 has already been permitted under the WVFOIA with no demonstrable harm to distributors, pharmacies or manufacturers.**

Defendants argue that federal FOIA's exemption 4 (5 U.S.C. § 552(b)(4)) bars disclosure of ARCOS information because it is likely to cause substantial competitive harm.

6

(Defs.' Br. Opp.'g Pub. Discl. 4, ECF No. 665.) The DEA asserts 21 U.S.C. § 830(c)(1) incorporates FOIA's exemption 4, which prohibits disclosure of trade secrets and confidential commercial information. (U.S. Br. Supp. Objs. Discl. 12, ECF No. 663.) Moreover, the DEA contends that it "is required to protect the trade secrets and commercial or financial information obtained from a registrant that is privileged or confidential," citing 21 U.S.C. § 830 (a) and (c)(1), as well as 18 U.S.C. § 1905.[8] (*Id.*) However, neither the defendants or the DEA have represented that the submitter/owner has "designate[d] by appropriate markings . . . any portion of its submission that it considers to be protected from disclosure under Exemption 4." 28 C.F.R. § 16.7(b). Compliance with the marking requirement is a prerequisite to the agency identifying information as privileged or confidential. The DEA and the defendants offer nothing but conclusory statements that the data at issue constitutes trade secrets and its disclosure will cause harm.

Contrary to the DEA's and the defendants' assertions, the ARCOS data at issue does not constitute "trade secrets, commercial or financial information" and its disclosure will not cause substantial competitive harm. As indicated above, the West Virginia ARCOS data (2007-2012) has already been disclosed to HDM pursuant to a WVFOIA request and no competitive harm has been shown by the DEA or the defendants; thus, the West Virginia ARCOS data from 2006 and 2013-2014 is not exempt under either federal or state law.

### 1.     The ARCOS data does not contain exempt trade secrets.

The Supreme Court of the United States has long recognized the "limited exemptions" under the federal FOIA, such as the trade secret exemption, "do not obscure the basic policy

---

[8] The DEA, however, fails to mention that § 830(c)(1) is inapplicable unless the information submitted falls within federal FOIA exemption 4, which it does not. Similarly, § 1905 is generic and does not apply unless it is proved any agency employee was not "authorized by law" to disclose identified information.

that disclosure, not secrecy, is the dominant objective of the Act" and that those exemptions "must be narrowly construed." *Dep't of Air Force v. Rose,* 425 U.S. 352, 361-62 (1976)); *accord Ogden Newspaper, Inc. v. City of Williamstown,* 192 W.Va. 648, 654 (1994) (citing *Dep't of Air Force v. Rose,* 425 U.S. at 360-62).

The contested ARCOS data does not identify the formulation of pills or their pricing. Thus, as this Court has recognized, "there are no trade secrets here. This is a controlled substance, they're pills. We're not going to ask the formulation of any pills, that shouldn't be in the data. Where the pills went is not a trade secret." (Tr. 15:21-25, ECF No. 156.)

This Court also addressed the DEA's trade secret objection in its April 11 order. In overruling this objection, this Court found that *Madel* "explicitly rejected this argument, noting the assertion was conclusory and also that market data over three years old carried no risk of competitive harm." (Order Re: ARCOS Data, 17 ¶ 7, ECF No. 233.)

Clearly, the number of opioid pills individual distributors shipped to particular pharmacies in West Virginia in the past is not a trade secret. The DEA and the defendants have failed to meet their burden to establish stale ARCOS data disclosed in pre-trial discovery and independently produced by the West Virginia AG in response to HDM's 2016 FOIA request would be entitled to exemption as a trade secret under the WVFOIA or federal FOIA.

**2. Public disclosure of the ARCOS data that is the subject of HDM's FOIA request would not reveal confidential commercial information nor cause any articulable competitive harm to the chain pharmacies and distributors**.

The defendants assert that public disclosure of ARCOS data will provide other distributors and pharmacies information that will allow them to gain a competitive advantage and that "might encourage other pharmacies to move into that area[.]" (emphasis supplied) (Tr. 51:22-52:11, ECF No. 156.) This unsubstantiated allegation of harm requires this Court to

assume that drug distributors armed only with ARCOS data will use publicly disclosed decade-old information to "move in" and build competing drug stores. (Tr. 51:22-52:11, ECF No. 156.) The defendants also suggest that if high sales of opioids to a pharmacy are publicly identified, drug distributors and/or manufacturers will show up at the pharmacy attempting to persuade its management to buy opioids from them rather than one of the objecting defendant distributors.

The historic ARCOS data responsive to HDM's WVFOIA requests simply identifies the distributors who shipped the opioids, the number of pills ordered, the identity and location of the pharmacies, and the year shipments occurred. This Court cogently observed at the February 26 hearing, "the distributors . . . obviously know which pharmacies they're selling to and which they aren't, and . . . they probably have a darn good idea which of their competitors are supplying the pharmacies they're not." (Tr. 16:19-23, ECF No. 156.)[9] At that hearing, the Court also pinpointed the data the defendants seek to shield from the public - the number of opioid pills distributed to pharmacies by distributors from 2006 through 2014. The conclusory competitive injury argument requires the Court to assume historic information identifying the number of addictive pills "*might* encourage other pharmacies to move into that area" where a local pharmacy long ago received large orders of opioids. Recognizing the problematic nature of the defendants' competitive advantage argument, this Court stated, "[t]here shouldn't be a lot of competition for the distribution of opioids." (Tr. 52:13-14, ECF No. 156.)

This very issue was adjudicated in a West Virginia trial court in cases where defendants AmerisourceBergen, Cardinal Health and other distributors contended that disclosure of their

---

[9]AmerisourceBergen Corp., Cardinal Health, Inc. and McKesson Corp. account for ninety percent (90%) of all drug revenue in the United States. https://www.mdm.com/2017-top-pharmaceuticals-distributors. Through their own market research and their salesmen who solicit pharmacies for business, these companies obviously know their competitors' share of the opioid distribution market.

names, the names of pharmacies and the amounts of pills ordered constituted trade secrets and would cause significant competitive injuries:[10]

> [T]he Court concludes the historical controlled substances distribution information alleged in the Amended Complaint has at best only speculative value to competitors, as the identity of pharmacies who might be buyers is not secret, and amounts of specific controlled substances distributed four or more years ago to specific pharmacies or locales over specified time periods, without any sales pricing or profit information, would, as in *IBM*, be unlikely to have such substantial competitive value that the public interest in access to court documents would be overcome. (Ex. A., ¶ 8; Ex. B, ¶ 26.)

This Court should similarly reject the defendants' and the DEA's competitive injury arguments as a basis for withholding stale historic ARCOS data from the public.

**D.    There is no credible evidence that disclosure of historic ARCOS data would undermine law enforcement efforts or facilitate criminal activity.**

DEA argues disclosure of the ARCOS data would undermine its law enforcement efforts. In its April 11 order, the Court addressed DEA's objections "to the production of the requested information under DOJ's *Touhy* regulations (28 C.F.R. §16.26(b)(5)) because disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings." (Order Re: ARCOS Data 16-17, ECF No. 233.) This Court found three cogent reasons why the objection fails. (Order Re: ARCOS Data 16-17, ECF No. 233.) Among those three reasons, the Court addressed DEA's objection that disclosure would violate DOJ's policy prohibiting release of information related to ongoing matters and found, "[i]t is highly unlikely exposure of data more than three years old will actually or meaningfully interfere with any ongoing matter." (*Id.*)

The DEA Acting Administrator confirmed in sworn testimony before Congress that

---

[10] Rather than competitive injuries, the trial court identified defendants' real concern: "[C]ourts may not keep information from a corporation under seal merely to protect the company's corporate image, which is obviously what defendants are attempting to do here." (Ex. B, ¶ 22.)

DEA made little use of the ARCOS data distributors provided to further DEA investigations of opioid diversion in West Virginia. (House Subcomm. on Oversight & Investigations, Tr. 31:655-34:725, 35:734-743 (Mar. 10, 2018) (preliminary transcript).)[11] Moreover, DEA has acknowledged there is a five-year statute of limitations for initiating any criminal proceedings relating to historic ARCOS data, pushing pre-July 2013 data beyond reach of criminal enforcement. (*Id*., Tr. 60:1291-1299.)

The DEA and the defendants also allege that the release of ARCOS data will precipitate criminal activity. The DEA references burglaries that took place in Florida, Illinois, Indiana and Ohio where ARCOS data has not been released. Yet, it fails to claim any robberies occurred in West Virginia or Georgia where ARCOS data has been made public. Attention is directed to a new version of DEA's brief that criminals can use disclosed data to know where manufacturers and distributors are selling the most opioids." (U.S. Br. Supp. Objs. Discl. 12, ECF No. 663.) DEA's suggestion that without ARCOS data criminals do not know where the most opioids are sold today is pure fantasy. DEA's citation of robberies shows criminals and addicts know where the most opioids can be found. All of the DEA's and the defendants' claims that stale ARCOS data is protected by federal FOIA and WVFOIA law enforcement exemptions are unfounded and should be rejected by this Court.[12]

---

[11]The transcript of the acting administrator's testimony can be verified by watching the video of his sworn testimony available online at the House Committee's website.

[12]DEA's first brief was heavily redacted. On July 9, 2018, DEA filed a brief removing redactions at pages 2, 8, 9, 14 and 15. Unredacted, the assertions provide additional support showing for HDM's DEA offers only vague speculative reasons for blocking public access to the contested historic data. The unredacted 2 sentences at page 9 vaguely assert DEA investigations can remain open for a decade "so appropriate evidence can be gathered and [assessed]." HDM is confident the remaining redacted portions of the DEA brief do not identify any harm to its activities in West Virginia by disclosure of 2007-2012 ARCOS data.

**E.     DEA federal property, Privacy Act and required report privilege arguments have no merit.**

**1.     The fact that ARCOS data might in some situations be identified as "federal property" does not control the public's right to disclosure.**

The DEA contends that the ARCOS data is not subject to public disclosure because it is "federal property" subject to the control of the United States. The suggestion that records contained in a database operated by a public body cannot be disclosed because they are "federal property" is curious and unprecedented given that the federal FOIA commands all such records be open unless they fall within narrowly circumscribed exemptions. The three cases DEA cites are distinguishable from the issue in the present case. In *United States v. Napper,* the United States sought to recover FBI documents "loaned" to the City of Atlanta during a murder investigation, which the city refused to return. *United States v. Napper,* 694 F.Supp. 897, 901 (N.D. Ga. 1988). In ordering the documents be returned, the court clarified: "The court here is not concerned with whether the investigatory documents should be released to the public. The question before the court is who owns, and is entitled to possession of, the documents." *Id.* The court emphasized that, "it [was] not ruling upon the merits of plaintiff's contention that the documents would be exempt from mandatory disclosure under FOIA exemption 7D." *Id.*

Similarly, in *United States v. Story County, Iowa,* the question before the court was whether emails sent to a local county sheriff belonged to the United States, not whether they were subject to "[p]ublic access":

> [T]he question before this Court was a very narrow one: Do the subject emails belong to the United States or to Story County? The evidence and applicable law demonstrate that they are federal records that belong to the United States. Public access to those records is a question for another day and another forum.

*United States v. Story Cty., Iowa,* 28 F.Supp.3d 861, 876 (S.D. Iowa 2014).[13]

Here, a substantial amount of the ARCOS data was disclosed to HDM in 2016 in the pill mill cases, by the West Virginia AG and by the Board. Until the filing of its brief, at no time after this disclosure has the DEA sought to enjoin dissemination or even claimed the data is "federal property." The years-old stale ARCOS data merely identifies the number of opioid pills delivered by a named distributor to a named pharmacy and the dates of the orders. Even if this data was not already in the public domain, it is not information exempt under Rule 26(c) or other federal and state laws simply because of the claim it is federal property.

### 2. Disclosure of the ARCOS data would not contravene the Privacy Act.

The DEA contends that "many of the ARCOS registrants are individuals, and the Privacy Act protects their information." (U.S. Br. 11, ECF No. 663.) However, the Privacy Act only protects "against invasion of an individual's personal privacy." *Unger v. District Disclosure Office IRS*, 1:99-CV-698, 2000 U.S. Dist. LEXIS 16064, at *5-6 (N.D. Ohio Sep. 18, 2000). The corporations named in ARCOS data are not individual persons' whose privacy might be invaded. Furthermore, ARCOS data is not of a personal nature; it simply discloses the volume of opioids that were sent by distributors to pharmacies in certain areas on a particular date. The scope of HDM's FOIA request is limited to corporate and business entities that have no rights under the Privacy Act. HDM's WVFOIA request does not include data that identifies individual persons. Even if there were an incidental ARCOS reference to an individual, disclosure would not invade her/his privacy interest in any legally cognizable manner.

---

[13] *United States v. City of Seattle* is also distinguishable. There, the court barred disclosure of the location, number, installation or removal of any FBI covert surveillance cameras on city light poles and the names or other identifying information of any FBI agent/employee who installed or deployed the cameras.

This Court has addressed the DEA's objection to ARCOS data production on the basis of the Privacy Act, 5 U.S.C. § 552a. (Order Re: ARCOS Data 15-16, ECF No. 233.) "The statute . . . states that 'No agency shall disclose any record which is contained in a system of records . . . to any person . . . unless disclosure of the record would be . . . pursuant to the order of a court of competent jurisdiction.' 5 U.S.C. §552a(b)(11)." (*Id.* at 17.) The Court can fashion a protective order to "[remove] any concern of a violation of the Privacy Act." (*Id.* at 16.)

HDM does not seek information that identifies any particular person, a fact that HDM stipulates to before this Court and would similarly so stipulate when seeking such information pursuant to FOIA requests. In resolving the instant matter, this Court may order identification of the names of individuals redacted before disclosure.

### 3.     The ARCOS data is not protected by the required report privilege.

The DEA claims ARCOS data is protected by the "required report privilege" because "registrants are mandated to report to DEA the information contained in the ARCOS database" and "the data is confidential under 21 U.S.C. § 830(c)(1)."  (DEA Br. 13, ECF No. 663). This argument is without merit because for the data to be confidential under 21 U.S.C. § 830(c)(1), it must be exempt from disclosure as "trade secrets and commercial or financial information obtained from a person and privileged or confidential" under 5 U.S.C. § 552(b)(4). As explained above, the ARCOS data is not exempt from disclosure under Section 552(b)(4). Thus, it is not protected by a confidential report privilege.

## III.    CONCLUSION

Following the release of 2007-2012 West Virginia ARCOS data, no harm the DEA and the defendants now claim actually occurred. Instead, many positive steps were taken toward combating the opioid crisis in West Virginia and nationally. (Ex. C. Eyre Aff. ¶ 19).

Drug distributors and manufacturers have spent more than a decade trying to conceal the tsunami of prescription opioids flowing into American communities. Literarily hundreds of thousands of citizens have died from prescription opioid overdoses. Millions more have fallen prey, not to dope peddled by drug gangs and street pushers, but to prescription opioids channeled from manufacturer to distributor to neighborhood pharmacies. Access to the West Virginia ARCOS data cracked open the veil of secrecy revealing that 780,000,000 pills took this route into the Mountain State (Pop. 1,815,000), which ranks number one in the United States in opioid overdose deaths. The prescription opioid epidemic has similarly blighted communities across the nation while corporate profits soared to billions. During the same time period of 2006-2014, the DEA failed to effectively use the ARCOS data to take needed enforcement action. Now, the agency, drug distributors and pharmacies argue to that Americans in other states are not entitled to see the same type of historic data that educated West Virginians about the flow of addictive pills into their state. Quoting Justice Louis Brandeis, a giant of our country's jurisprudence, this Court observed, "sunlight is the best disinfectant." HDM respectfully urges this Court to reject arguments for continued secrecy and open the door to information that this country needs to promote understanding and healing of the deep and lasting wounds inflicted by the opioid epidemic.

Date:   July 9, 2018

*/s/Patrick C. McGinley*
Patrick C. McGinley (W. Va. Bar
5620; Pa. Bar 33674)
Suzanne Weise (W. Va. Bar 4312)
737 South Hills Drive
Morgantown, West Virginia 26501
Cell Phone: 304-552-2631
Telephone & Fax: 304-292-9822
E-mail: pmcginley@igc.org
E-mail: suzweise@yahoo.com

Counsel for HD Media Company, LLC

## CERTIFICATE OF SERVICE

I certify that on July 9, 2018, a copy of the foregoing "HD Media Company, LLC's Brief in Support of Public Disclosure of Arcos Data" was electronically filed and served on all counsel of record for this case through the Court's electronic filing system in accord with the Court's Order entered on June 13, 2018, inviting HD Media Company, LLC to participate in this action for the limited purpose of filing a brief to address its public records request.

*/s/ Suzanne Weise*
Suzanne Weise (W. Va. Bar 4312)
737 South Hills Drive
Morgantown, West Virginia 26501
suzweise@yahoo.com
Telephone & Fax: 304-292-9822

Counsel for HD Media Company, LLC