# IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
ex rel. **PATRICK MORRISEY**,
Attorney General, *et al.*,

      Plaintiffs,

v.

Civil Action No. 12-C-141
(Hon. William S. Thompson, Judge)

**AMERISOURCEBERGEN DRUG CORPORATION**, a Delaware corporation doing business in West Virginia, *et al.*,

      Defendants.

### ORDER WITH RESPECT TO PLATINTIFFS' MOTION TO UNSEAL THE SECOND AMENDED COMPLAINT AND THE GAZETTE'S MOTION TO INTERVENE

On a previous day came the parties for a hearing on the Plaintiffs' Motion to Unseal the Second Amended Complaint. The parties have briefed their positions on the unsealing of the Second Amended Complaint, and Court has reviewed and considered all such filings and the arguments set forth therein as well as oral arguments, including the motion of the intervenors.

The Court finds that there exists in the United States a long-standing right of public and press access to legal proceedings and documents. This right of public access to legal proceedings and documents is based in both the common law and the First Amendment to the U.S. *Constitution*, and is well recognized and beyond cavil. The right of public access applies to documents filed in this case. Any party who seeks to keep under seal a judicial record carries the heavy burden of overcoming a strong presumption of public access and also of showing compelling reasons for keeping such documents under seal.

### I  FINDINGS OF FACT

1. The Plaintiffs' Motion to Unseal is based on a part of a Protective Order

submitted to the Court for entry by the Court pursuant to the parties by agreement. Pursuant to the Protective Order, when a party's characterization of "confidential" is challenged, the party who so characterized the document has the burden to establish that it is confidential such that it should remain under seal.

2. Defendants seek to protect from the press and public allegations in the Second Amended Complaint concerning what addictive controlled substances they distributed into West Virginia and in what amounts they were distributed to certain West Virginia customers between 2007 and 2012; and the identity of defendants who distributed to specified known entities or areas. Defendants assert the above controlled substance distribution information constitutes "trade secrets" such that it should remain under seal.

## II  CONCLUSIONS OF LAW

1. In West Virginia, both the *West Virginia Constitution* (Article III, Section 17) ("The courts of this state shall be open[.]") and statutes (*W. Va. Code* § 51-4-2) ("The records and papers of every court shall be open to the inspection of any person[.]") provide presumptive right of the Public to access court records. *See State ex rel. Garden State Newspapers, Inc. v. Hoke*, 205 W. Va. 611, 616, 520 S.E.2d 186, 191 (W. Va. 1999); *Daily Gazette Co. v. Committee on Legal Ethics of the W. Va. State Bar*, 174 W. Va. 359, 364, 326 S.E.2d 705, 710 (W. Va. 1984) *State ex rel. Herald Mail Co. v. Hamilton*, 165 W.Va. 103, 267 S.E.2d 544, 547-49 (W. Va. 1980).

2. *Syllabus* Points 4 through 6 of *State ex rel. Garden State Newspapers, Inc. v. Hoke*, 205 W. Va. 611, 613, 520 S.E.2d 186, 188 (1999) hold as follows:

> "4. The open courts provision of Article III, Section 17 of the Constitution of West Virginia guarantees a qualified constitutional right on the part of the public to attend civil court proceedings.

5. "Unless a statute provides for confidentiality, court records shall be open to public inspection." Syllabus Point 2, in part, *Richardson v. Town of Kimball*, 176 W.Va. 24, 340 S.E.2d 582 (1986).

6. The qualified public right of access to civil court proceedings guaranteed by Article III, Section 17 of the Constitution of West Virginia is not absolute and is subject to reasonable limitations imposed in the interest of the fair administration of justice or other compelling public policies. In performing this analysis, the trial court first must make a careful inquiry and afford all interested parties an opportunity to be heard. The trial court must also consider alternatives to closure. Where the trial court closes proceedings or seals records and documents, it must make specific findings of fact which are detailed enough to allow appellate review to determine whether the proceedings or records are required to be open to the public by virtue of the constitutional presumption of access."

3. The Court of Appeals for the Fourth Circuit in *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) explained the right of access to court documents and records filed in civil proceedings as follows:

> "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n. 17, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 428 (4th Cir.2005). The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir.2004)."

The Court of Appeals in *Doe, supra,* 749 F.3d at 265-66 continued:

> "The common- law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that "countervailing interests heavily outweigh the public interests in access." *Rushford,* 846 F.2d at 253. By contrast, the First Amendment secures a right of access "only to particular judicial records and documents," *Stone,* 855 F.2d at 180, and, when it applies, access may be restricted only if closure is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that

-3-

interest," *In re Wash. Post Co.,* 807 F.2d 383, 390 (4th Cir.1986) (quoting *Press–Enter. Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (internal quotation marks omitted))."

4. The Court of Appeals in *Doe, supra,* explained the reasons why the right of public access is important and why it can be abrogated only in "unusual circumstances" (not present here):

> "[P]ublic access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary. *See Columbus–Am. Discovery Grp.,* 203 F.3d at 303. "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Littlejohn v. Bic Corp.,* 851 F.2d 673, 682 (3d Cir.1988). As Judge Easterbrook, writing for the Seventh Circuit, stated: "The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *Hicklin Eng'g, L.C. v. Bartell,* 439 F.3d 346, 348 (7th Cir.2006).

*Id.,* 749 F.3d at 266.

5. The Fourth Circuit explained that courts may not keep information from a corporation under seal merely to protect the company's corporate image, which is obviously what defendants are attempting to do here:

> "A corporation very well may desire that the allegations lodged against it in the course of litigation be kept from public view to protect its corporate image, but the First Amendment right of access does not yield to such an interest. The interests that courts have found sufficiently compelling to justify closure under the First Amendment include a defendant's right to a fair trial before an impartial jury, *Press–Enter., Co.,* 464 U.S. at 510, 104 S.Ct. 819; protecting the privacy rights of trial participants such as victims or witnesses, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607–08, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); and risks to national security, *United States v. Aref,* 533 F.3d 72, 83 (2d Cir.2008); *Detroit Free Press v. Ashcroft,* 303 F.3d 681, 705 (6th Cir.2002). Adjudicating claims that carry the potential for embarrassing or injurious revelations about a corporation's image, by contrast, are part of the day-to-day operations of federal courts."

*Id.*, 749 F.3d at 269.

6. No statute requires the allegations in the Second Amended Complaint be kept confidential.

7. Defendants cite the *Syllabus* of *State ex rel. Johnson v. Tsapis*, 187 W. Va. 337, 419 S.E.2d 1 (1992) for the proposition that the distribution data in question should remain under seal. Our Supreme Court of Appeals explained in *Tsapis* that,

> "we follow the court's decision in *United States v. International Business Machines Corp.*, 67 F.R.D. 40 (S.D.N.Y.1975), [hereinafter referred to as *I.B.M.*] to rely on the factors set forth in Section 757 of the Restatement of Torts as a test for determining whether a protective order should be issued with respect to commercial information which may rise to the level of a trade secret. See *id.* at 46–47."

The Court concludes review of the *IBM* holding (upon which the *Tsapis* decision relied upon by defendants is based) is instructive, as the federal court there addressed similar claims that historical commercial data relating to sales was not entitled to protection, holding:

> "None of this data is current; it reveals directly little, if anything at all, about [Defendant's] current operations. By a fair reading of [Defendant's] own representation, the value of this data to [Defendant's] competitors is speculative. To reveal any of this information would not erode the cornerstone of [Defendant's] competitive foundation."

*United States v. Int'l Bus. Machines Corp.*, 67 F.R.D. 40, 49 (S.D.N.Y. 1975).

8. As in *IBM, supra*, the Court concludes the historical controlled substances distribution information alleged in the Second Amended Complaint has at best only speculative value to competitors, as the identity of pharmacies who might be buyers is not secret, and amounts of specific controlled substances distributed four or more years ago to specific pharmacies or locales over specified time periods, without any sales pricing or profit

information, would, as in *IBM*, be unlikely to have such substantial competitive value that the public interest in access to court documents would be overcome.

9. Per *Syllabus* Point 6 of *State ex rel. Garden State Newspapers, Inc. v. Hoke*, 205 W. Va. 611, 613, 520 S.E.2d 186, 188 (1999), the Court has permitted all interested parties to be hears on this issue, and has made careful inquiry into the parties assertions, and now concludes the Second Amended Complaint should be unsealed and open to the public by virtue of the constitutional presumption of access. Here, as in *Public Citizen, supra*, the fact that the information herein alleged against defendants in the Second Amended Complaint may, "carry the potential for embarrassing or injurious revelations about a corporation's image," such fact is not a legally justified reason to keep the Second Amended Complaint from public access. The Court concludes the constitutional and common law rights of public access to legal filings and documents and proceedings such as this far outweighs the interests defendants assert for nondisclosure and sealing of the Second Amended Complaint. The Court likewise concludes that defendants' business reasons or interests in keeping the Second Amended Complaint sealed do not "heavily outweigh" the presumptive right of public access.

10. The Court finds and concludes the strong presumption of public access to pleadings in a civil case such as the Second Amended Complaint here. Generally, public access to civil case pleadings is required by the First Amendment to the U.S. *Constitution* and the common law, and may be sealed only in unusual circumstances, not present here.

11. The Court finds and concludes that certain defendants have reached a settlement agreement that has resulted in a partial dismissal. Therefore, because this is issue rendered moot, the Court **ORDERS** that the portions in the Second Amended Complaint that pertain to

defendants that which have settled shall **REMAIN SEALED**.

Because remaining defendants have not presented a sufficient legally justifiable basis "heavily outweighing" the strong presumption of public access, the Motion to Unseal the Second Amended Complaint as it pertains to the remaining defendants is hereby **GRANTED**, and the Clerk is **ORDERED** to **UNSEAL** the Second Amended Complaint as it pertains to the remaining defendants and make it publically available in fourteen (14) days upon entry of this Order.

FURTHERMORE, if any defendant reaches a settlement agreement with plaintiffs before the expiration of the fourteen (14) days and is no longer involved in this case, the Second Amended Complaint as it pertains to that defendant shall **REMAIN SEALED**.

FURTHERMORE, the Gazette's Motion to Intervene is **DENIED** due to the issue being moot.

The Clerk of this Court is **ORDERED** to send a certified copy of this Order to all interested parties.

ENTERED: May 6, 2016

Hon. William S. Thompson, Judge