BOONE COUNTY
CIRCUIT CLERK
SUE ANN ZICKEFOOSE

2016 NOV -4 P 2:07

RECEIVED

# IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA
*ex rel.* PATRICK MORRISEY,
Attorney General, et al.

        Plaintiffs,

v.                                                        Civil Action No. 12-C-140

CARDINAL HEALTH, INC.,
an Ohio corporation doing business
in West Virginia,

        Defendant.

## ORDER WITH RESPECT TO THE CHARLESTON GAZETTE-MAIL'S MOTION TO INTERVENE AND TO UNSEAL PLAINTIFFS' SECOND AMENDED COMPLAINT

On a previous day came the parties and the proposed Intervenor for a hearing on the CHARLESTON GAZETTE-MAIL'S ("Gazette-Mail") Motion to Intervene and to Unseal the Second Amended Complaint ("Amended Complaint"). The proposed Intervenor and the defendant CARDINAL HEALTH, INC. ("Cardinal') have submitted memoranda of law and presented oral argument on the pending motions and Court has reviewed and considered all such filings and the arguments set forth therein as well as oral arguments.

The Court finds that there exists in the United States a long-standing right of public and press access to legal proceedings and documents. This right of public access to legal proceedings and documents is based in both the common law and the First Amendment to the U.S. *Constitution,* and is well recognized and beyond cavil. The right of public access applies to the Second Amended Complaint filed in this case. Any party who seeks to keep under seal a judicial record carries the heavy burden of overcoming a strong presumption of public access and also of showing compelling reasons for keeping such documents under seal.

## I. FINDINGS OF FACT

1. The Gazette-Mail's Motion seeks to unseal the Second Amended Complaint on statutory and constitutional grounds.

2. The Second Amended Complaint was sealed based upon an agreed Protective Order submitted to the Court by the parties. Pursuant to the Protective Order, when a party's characterization of "confidential" is challenged, the party who so characterized the document has the burden to establish that it is confidential such that it should remain under seal.

3. Cardinal seek to protect, from the press and public, allegations in the Second Amended Complaint concerning addictive controlled substances it allegedly distributed in West Virginia to its customers between 2007 and 2012 and the identity of those customers. Cardinal asserts that the complaint allegations constitute confidential business information the public disclosure of which would risk competitive harm to Cardinal Health.

4. Plaintiff, State of West Virginia, does not oppose the Gazette-Mail Motion to Intervene and to Unseal the Second Amended Complaint.

5. Cardinal opposes Gazette-Mail's Motion on multiple grounds:

(a) This Court's recently entered an order formally "staying all discovery and related matters" in this action pending disposition of Civil Action No. 12-C-141 (styled State of West Virginia, ex rel. Patrick Morrisey, Attorney General, et al., v. AmerisourceBergen Drug Corp., et al.) ("Companion Case") and therefore Gazette-Mail's motion should be held in abeyance until the stay is lifted because it seeks to "discover" certain highly-confidential information alleged in the Second Amended Complaint.

(b) This Court permitted settling defendants in the Companion Case to maintain confidentiality over their sensitive commercial information and this Court should thus deny

2

the Gazette's Motion until the parties in this action have had the same opportunity to pursue settlement.

(c) The publication of customer identities and volumes shipped to those customers would cause Cardinal Health competitive harm.

(d) Disclosing customer identities and customer-specific shipments would result in undue prejudice, as the allegations in the Second Amended Complaint are one-sided and ignore many salient facts, including that the pharmacy customers receiving are fully licensed by the State of West Virginia.

6. Cardinal requests that this Court deny the Gazette-Mail's pending Motion, or, at the very least, hold the Motion in abeyance until the stay is lifted in this case.

7. Cardinal has presented to this court arguments in opposition to the Gazette-Mail's Motion, but no evidence in support of its conclusory representation that the unsealing of the Second Amended Complaint will harm its' business competitive position or taint the jury pool.

8. The Companion Case is completely distinguishable from the case at bar in so far as in the former matter there was an active mediation process going on at the time of unsealing a similar court record (May, 2016); the parties in the Companion Case were sitting down and actively discussing settlement and the Court allowed the parties two weeks in which to consummate settlement, in which event the court held the request for unsealing as to the settling plaintiffs to be moot.

9. In April, 2016 Cardinal, like the defendants in the companion case, was given an opportunity to engage in mediation toward settlement but chose not to do so,

10. Cardinal concedes that information in the Second Amended Complaint concerning the total amount of dosages of addictive drugs it distributed in West Virginia during 2006-2012

(241,000,000) is already in the public domain. Importantly, the sealed Second Amended Complaint identifies the location of the distribution of these drugs - information that, if disclosed to the public would identify areas of the state where large volumes of additive drugs were being sold and those where such drugs were not being distributed.

11. The great majority of complaints filed by plaintiffs in civil litigation are available to the public and only in extraordinary situations are such records unavailable to the public.. Complaints such as the Second Amended Complaint here contain allegations of fact that can and are disputed by defendants and juries decide what facts offered in evidence by the parties are probative.

12. There is no evidence offered by Cardinal, or otherwise in the record, that supports its' assertion that disclosure of the factual allegations in the Second Amended Complaint would make it any more difficult to empanel an unbiased jury than factual allegations in any other normal civil litigation.

13. The case at bar is distinguishable civil litigation between private parties; here the State of West Virginia is a plaintiff representing the interests of all West Virginians and the subject matter of the case relates to public health and safety issues of great public concern.

14. Unsealing of and public access to the facts and claims alleged in the Second Amended Complaint would serve an overarching public interest in government transparency and would assist the public in understanding the nature of the case being litigated on behalf of West Virginia citizens by the State Plaintiff.

15. Nothing in the record supports Cardinal's assertion that unsealing and public access to the information in the Second Amended Complaint will harm its' competitive business position or taint the jury pool.

## II. CONCLUSIONS OF LAW

16. The stay of "all discovery and related matters" in this action entered by this Court on October 17, 2016 pending disposition of the Companion Case applied only to discovery-related matters and does not prevent any third party such as the Gazette-Mail from filing a motion to intervene or other motion of that nature.

17. In West Virginia, both the *West Virginia Constitution* (Article III, Section 17) ("The courts of this state shall be open[.]") and statutes (W: *Va. Code* § 51-4-2) ("The records and papers of every court shall be open to the inspection of any person[.]") provide presumptive right of the Public to access court records. *See State ex rel. Garden State Newspapers, Inc. v. Hoke,* 205 W. Va. 611, 616, 520 S.E.2d 186, 191 (W. Va. 1999); *Daily Gazette Co. v. Committee on Legal Ethics of the W. Va. State Bar,* 174 W. Va. 359, 364, 326 S.E.2d 705, 710 (W. Va. 1984) *State ex rel. Herald Mail Co. v. Hamilton,* 165 W.Va. 103, 267 S.E.2d 544, 547-49 (W. Va. 1980).

18. *Syllabus* Points 4 through 6 of *State ex rel. Garden State Newspapers, Inc. v. Hoke,* 205 W. Va. 611, 613, 520 S.E.2d 186, 188 (1999) hold as follows:

> 4. The open courts provision of Article III, Section 17 of the Constitution of West Virginia guarantees a qualified constitutional right on the part of the public to attend civil court proceedings.

19. "Unless a statute provides for confidentiality, court records shall be open to public inspection." Syllabus Point 2, in part, *Richardson v. Town of Kimball,* 176 W.Va. 24, 340 S.E.2d 582 (1986).

> The qualified public right of access to civil court proceedings guaranteed by Article III, Section 17 of the Constitution of West Virginia is not absolute and is subject to reasonable limitations imposed in the interest of the fair administration of justice or other compelling public policies. In performing this analysis, the trial court

5

> first must make a careful inquiry and afford all interested parties an opportunity to be heard. The trial court must also consider alternatives to closure. Where the trial court closes proceedings or seals records and documents, it must make specific findings of fact which are detailed enough to allow appellate review to determine whether the proceedings or records are required to be open to the public by virtue of the constitutional presumption of access."

20.     In *Doe v. Pub. Citizen,* The United States Court of Appeals for the Fourth Circuit 749 F.3d 246, 265 (4th Cir. 2014), explained the right of access to court documents and records filed in civil proceedings as follows:

> "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings. *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580 n. 17, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *MediaGen. Operations, Inc. v. Buchanan,* 417 F.3d 424, 428 (4th Cir.2005). The right of public access springs from the First Amendment and the common_ law tradition that court proceedings are presumptively open to public scrutiny. *Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567, 575 (4th Cir.2004)."

The Court of Appeals in *Doe, supra,* 749 F.3d at 265-66 continued:

> "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that "countervailing interests heavily outweigh the public interests in access." *Rushford,* 846 F.2d at 253. By contrast, the First Amendment secures a right of access "only to particular judicial records and documents," *Stone,* 855 F.2d at 180, and, when it applies, access may be restricted only if closure is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that interest," *In re Wash. Post Co.,* 807 F.2d 383, 390 (4th Cir.1986) (quoting *Press-Enter. Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (internal quotation marks omitted))."

21.     The Court of Appeals in *Doe, supra*, explained the reasons why the right of public access is important and why it can be abrogated only in "unusual circumstances" (not present here):

6

> "[P]ublic access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary. *See Columbus-Am. Discovery Grp.*, 203 F. 3d at 303. "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Littlejohn v. Bic Corp.,* 851 F.2d 673, 682 (3d Cir.1988). As Judge Easterbrook, writing for the Seventh Circuit, stated: "The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *Hicklin Eng'g, L.C. v. Bartell,* 439 F.3d 346, 348 (7th Cir.2006).

*Id.,* 749 F3d at 266.

22. The Fourth Circuit explained that courts may not keep information from a corporation under seal merely to protect the company's corporate image, which is what defendants appear to be attempting to do here:

> "A corporation very well may desire that the allegations lodged against it in the course of litigation be kept from public view to protect its corporate image, but the First Amendment right of access does not yield to such an interest. The interests that courts have found sufficiently compelling to justify closure under the First Amendment include a defendant's right to a fair trial before an impartial jury, *Press-Enter., Co.,* 464 U.S. at 510, 104 S.Ct. 819; protecting the privacy rights of trial participants such as victims or witnesses, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607- 08, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); and risks to national security, *United States v. Are/,* 533 F.3d 72, 83 (2d Cir.2008); *Detroit Free Press v. Ashcroft,* 303 F.3d 681, 705 (6th Cir.2002). Adjudicating claims that carry the potential for embarrassing or injurious revelations about a corporation's image, by contrast, are part of the day-to-day operations of federal courts."

*Id.,* 749 F.3d at 269.

23. No statute requires the allegations in the Second Amended Complaint be kept confidential.

24. In *State ex rel. Johnson v. Tsapis,* 187 W. Va. 337, 419 S.E.2d 1 (1992). Our Supreme

Court of Appeals explained in that:

> "we follow the court's decision in *United States v. International Business Machines Corp.*, 67 F.R.D. 40 (S.D.N.Y.1975), [hereinafter referred to as *I.B.M.*] to rely on the factors set forth in Section 757 of the Restatement of Torts as a test for determining whether a protective order should be issued with respect to commercial information which may rise to the level of a trade secret. See *id.*, at 46-47."

The Court concludes that the *IBM* holding, upon which the *Tsapis* decision relied, is instructive, as the federal court there addressed similar claims that historical commercial data relating to sales was not entitled to protection, holding:

> "None of this data is current; it reveals directly little, if anything at all, about [Defendant's] current operations. By a fair reading of [Defendant's] own representation, the value of this data to [Defendant's] competitors is speculative. To reveal any of this information would not erode the cornerstone of [Defendant's] competitive foundation."

*United States v. Int'l Bus. Machines Corp.*, 67 F.R.D. 40, 49 (S.D.N.Y. 1975).

25. As in *IBM, supra,* and the companion case, the Court concludes the historical controlled substances distribution information alleged in the Second Amended Complaint has at best only speculative value to competitors, as the identity of pharmacies who might be buyers is not secret, and amounts of specific controlled substances distributed four or more years ago to specific pharmacies or locales over specified time periods, without any sales pricing or profit information, would, as in *IBM,* be unlikely to have such substantial competitive value that the public interest in access to court documents would be overcome.

26. In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 -788 (3rd. Cir. 1994), the Court of Appeals emphasized that the public's involvement in a case adjudicating matters of public concern is a factor weighing against maintaining an order of confidentiality:

> Circumstances weighing against confidentiality exist when

8

confidentiality is being sought over information important to public health and safety, and when the sharing of information among litigants would promote fairness and efficiency, e.g., id. at 490 . . . . the district court should consider whether the case involves issues important to the public.

See, Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv.L.Rev. 427, 478 (1991). See also, FTC v. Standard Fin. Management Corp., 830 F.2d 404, 412 (1st Cir.1987) (threshold for sealing is elevated because the case involves a government agency and matters of public concern).

*Pamsy* went on to hold the following concerning the burden that must be met by a party moving for a protective order under Rule 26(c):

> "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a good cause showing. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1109, 1121 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct., 487, 98 L.Ed.2d 485 (1987). The burden of justifying the confidentiality of each *787 and every document sought to be covered by a protective order remains on the party seeking the order. *Id. at* 1122.

Cardinal has not met its burden. The grounds advanced for the protective order are not shown with the specificity that is required. The grounds advanced for the order are not framed with specific or articulated reasoning that shows that specific harm will befall Cardinal if the order does not remain in effect.

27.     Per *Syllabus* Point 6 of *State ex rel. Garden State Newspapers, Inc. v. Hoke,* 205 W. Va. 611, 613, 520 S.E.2d 186, 188 (1999), the Court has permitted all interested parties to be heard on this issue, and has made careful inquiry into the parties assertions, and now concludes the Second Amended Complaint should be unsealed and open to the public by virtue of the

constitutional presumption of access. Here, as in *Public Citizen, supra,* the fact that the information herein alleged against defendants in the Second Amended Complaint may, "carry the potential for embarrassing or injurious revelations about a corporation's image," such fact is not a legally justified reason to keep the Second Amended Complaint from public access. The Court concludes the constitutional and common law rights of public access to legal filings and documents and proceedings such as this far outweighs the interests defendants assert for nondisclosure and sealing of the Second Amended Complaint. The Court likewise concludes that defendants' business reasons or interests in keeping the Second Amended Complaint sealed do not "heavily outweigh" the presumptive right of public access.

28. The Court finds and concludes there is a strong presumption of public access to pleadings in a civil case such as the Second Amended Complaint here. Generally, public access to civil case pleadings is required by the First Amendment to the U.S. *Constitution* and the common law, and may be sealed only in unusual circumstances, not present here.

29. Rule 24 (b)(2) of the West Virginia Rules of Civil Procedure provides that a court may permit an applicant to intervene in an action "when an applicant's claim or defense and the main action have a question of law or fact in common." Here the discovery issues in the main action and the issues raised by the Gazette in its Motion to Intervene involve common questions of law and fact concerning whether or not the material in question should be sealed. The Court finds and concludes that the Gazette-Mail has standing to intervene for the limited purpose of moving to Unseal The Plaintiff's Second Amended Complaint and the Motion to Intervene is hereby **GRANTED**.

30. Because defendant Cardinal has not presented a sufficient legally justifiable basis "heavily outweighing" the strong presumption of public access, the Motion to Unseal the Second

10

Amended Complaint is hereby **GRANTED**, and the Clerk is **ORDERED** to **UNSEAL** the Second Amended Complaint and to make it publically available upon entry of this Order.

31. FURTHERMORE, it is **ORDERED** that all material other than the Second Amended complaint generated in discovery and subject to the existing Protective Order shall **REMAIN SEALED**.

The Clerk of this Court is **ORDERED** to send a certified copy of this Order to the parties and the Intervener.

ENTERED: *November 4, 2016*

*William S. Thompson*
Hon. William S. Thompson, Judge

Submitted for entry:
Timothy Conaway, Esq.
Bar # 793
Conaway & Conaway PLLC
63 Avenue B
Madison, WV 25130
Phone: (304) 369-0100
timconaway@suddenlinkmail.com
*Counsel for Intervener*

A COPY ATTEST

*Sue Ann Zickefoose*

CIRCUIT COURT

11