UNITED STATES DISTRICT
COURT NORTHERN DISTRICT
OF OHIO EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-2804 |
| | Judge Dan Aaron Polster |
| *Cabell County Commission v.* *AmerisourceBergen Drug Corporation, et al.* *Case No. 17-op-45053* | |

---

**PLAINTIFF CABELL COUNTY COMMISSION'S OMNIBUS MEMORANDUM IN OPPOSITION TO (1) DISTRIBUTORS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (Doc. 575); (2) MANUFACTURER DEFENDANTS JOINT MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (Doc 594); AND (3) MOTION TO DISMISS SECOND AMENDED COMPLAINT BY DEFENDANTS CVS HEALTH CORPORATION, THE KROGER CO., RITE AID CORPORATION, WALGREEN BOOTS ALLIANCE, INC., AND WALMART INC. (Doc 583)**

---

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................... 1

LEGAL STANDARD ......................................................................................... 2

ARGUMENT ...................................................................................................... 2

I.  Plaintiff Cabell County Has Stated Valid Causes of Action ......................... 2

    A.  Plaintiff Has Properly Pled a Claim for Common Law Public Nuisance ...................... 2

        1.  The SAC properly alleges an interference with a public right ..................... 2

        2.  Plaintiff has adequately plead causation ................................................ 4

        3.  Defendants' conduct meets the unreasonable interference test ................. 5

        4.  Broad damages are recoverable in a public nuisance claim .................... 5

    B.  Plaintiff Has Properly Pled a Claim Under Federal RICO ........................... 8

    C.  Plaintiff Has Properly Pled Negligence Claims Against All Defendants ........................ 13

        1.  Plaintiff Properly Pled the Existence of a Duty ...................................... 14

            a.  Defendants owe a common law duty of reasonable care ...................... 14

            b.  Plaintiff does not seek to enforce statutory duties .......................... 18

        2.  Plaintiff Properly Pled that Defendants Breached Their Duties ................. 19

        3.  The SAC Sufficiently Pleads that Plaintiff's Injuries Were Proximately Caused by the Defendant's Conduct ........................... 21

            a.  Plaintiff's injuries are sufficiently direct .................................... 21

            b.  The acts of third parties do not break the causal chain .................... 22

    D.  Plaintiff Has Properly Plead a Claim for Fraud Against the Manufacturer Defendants ........................ 23

    E.  Plaintiff Has Properly Plead an Unjust Enrichment Claim ........................ 26

    F.  Plaintiff Has Properly Pled a Claim for Civil Conspiracy ........................ 28

        1.  Civil Conspiracy Is a Separate Cause of Action ................................. 28

# TABLE OF CONTENTS
## (Continued)

**Page**

  2.  Defendants Improperly Heighten the Pleading Standard ...........................................29

  3.  The SAC Properly Pleads a Civil Conspiracy as Defined in
    West Virginia Jurisprudence ...................................................................................30

II.  Defendant's Other Arguments for Dismissal of Multiple Claims Also Lack Merit..............32

 A.  Plaintiff Has Standing to Bring its Claims .................................................................32

 B.  Plaintiff's State Law Claims Are Not Preempted.........................................................35

 C.  The Free Public Services Doctrine Does Not Bar Plaintiff's Claims................................36

 D.  The Economic Loss Doctrine Does Not Bar Plaintiff's Claims......................................38

 E.  Plaintiff's Claims Are Not Barred by the Statute of Limitations......................................40

  1.  There is No Statute of Limitations for Unabated Nuisance Claims ...........................41

  2.  Plaintiff Has Adequately Pleaded Fraudulent Concealment .....................................41

  3.  The Discovery Rule Applies to Plaintiff's Claims.....................................................42

  4.  Equitable Estoppel Applies to Plaintiff's Claims .....................................................4

  5.  The Continuous Violations Doctrine Applies to Plaintiff's Claims...........................43

 F.  Plaintiff Adequately Pled Claims Against the Pharmacy Defendants ..............................44

  1.  Plaintiff's Claims Are Not Barred by W.Va. Code § 30-5-21 .......................................45

  2.  Plaintiff's Claims Are Not Barred by the West Virginia
    Professional Liability Act, W.Va. Code § 55-7B-6 .........................................................47

 G.  Plaintiff's Claim for Punitive Damages Should Not be Dismissed ..................................48

CONCLUSION..................................................................................................................48

CERTIFICATE OF SERVICE..............................................................................................48

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.,*
    885 F. Supp. 410 (E.D.N.Y. 1994) ................................................................................7

*Absure, Inc. v. Huffman,*
    584 S.E.2d 507 (W.Va. 2003) ..............................................................................26, 27

*Aikens v. Debow,*
    541 S.E.2d 576 (2000) ...........................................................................................39

*Alig v. Quicken Loans, Inc.,*
    No. 5:12-cv-114 *et al.*, 2015 WL 13638324,
    (N.D. W.Va. Feb. 18, 2015)...................................................................................29

*Anderson v. Moulder,*
    394 S.E.2d 61 (W.Va. 1990) ................................................................................18

*Arbaugh v. Bd. of Educ., Cty. of Pendleton,*
    591 S.E.2d 235 (W.Va. 2003) ..............................................................................18

*Ash v. Allstate Ins. Co.,*
    No. 12-1533, 2013 WL 5676774, (W.Va. Oct. 18, 2013) ..................................28-30

*Ashworth v. Albers Med., Inc.,*
    410 F. Supp. 2d 471 (S.D. W.Va. 2005)............................................................17, 46

*Baker v. Purdue Pharma L.P.,*
    No. 1:01-0553, 2002 WL 34213424 (S.D. W.Va. Mar. 28, 2002).....................  46

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................  31

*Bennett v. Skyline Corp.,*
    No. 1:14CV129, 2014 WL 4996275 (N.D. W.Va. Oct. 7, 2014) ......................28

*Bertovich v. Advanced Brands & Imp., Co.,*
    No. 5:05CV74, 2006 WL 2382273 (N.D. W.Va. Aug. 17, 2006)......................10

*Bradley v. Williams,*
    465 S.E.2 180 (W.Va. 1995)................................................................................43

*Bragg v. United States,*
    741 S.E.2d 90 (W.Va. 2013) ...........................................................................15, 16

*Brandon Township v. Jerome Builders, Inc.,*
    263 N.W.2d 326 (1977) .........................................................................................7

# TABLE OF AUTHORITIES
## (Continued)

Page

*Brian & Christie, Inc. v. Leishman Elec., Inc.,*
    244 P.3d 166 (Idaho 2010) ................................................................40

*Brozik v. Parmer,*
    No. 16-0292 *et al.*, 2017 WL 65475 (W.Va. Jan. 6, 2017)24.............................................24

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.,*
    273 F.3d 536 (3d Cir. 2001) ...............................................................4

*Carter v. Monsanto Co.,*
    575 S.E.2d 342 (W.Va. 2002) .............................................................13

*Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.,*
    515 F. App'x 451 (6th Cir. 2013) ........................................................4

*Cincinnati v. Beretta U.S.A. Corp.,*
    768 N.E.2d 1136 (Ohio 2002).................................................5, 36, 39

*City of Boston v. Smith & Wesson Corp.,*
    No. 199902590, 2000 WL 1473568 (Mass. Super. July 13, 2000) ....................5

*City of Chicago v. Beretta U.S.A. Corp.,*
    821 N.E.2d 1099 (Ill. 2004) ...............................................................38

*City of Everett v. Purdue Pharma L.P.,*
    2017 WL 4236062 (W.D. Wash. Sept. 25, 2017)...............................10, 11, 37

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.,*
    719 F.2d 322 (9th Cir. 1983) ...............................................................38

*City of Gary ex rel. King v. Smith & Wesson Corp.,*
    801 N.E.2d 1222 (Ind. 2003)...............................................................36

*City of Huntington v. State Water Comm'n,*
    73 S.E.2d 833 (W.Va. 1952) ...............................................................35

*City of New York v. Keene Corp.,*
    505 N.Y.S.2d 782 (Sup.Ct.1986) ........................................................7

*City of Morgantown v. Nuzum Trucking Co.,*
    786 S.E.2d 486, (2016) ......................................................................33

*City of Philadelphia v. Beretta U.S.A. Corp.,*
    277 F.3d 415 (3rd Cir. 2002) ..............................................................38

# TABLE OF AUTHORITIES
## (Continued)

Page

*Cleveland v. JP Morgan Chase Bank, N.A.,*
2013-Ohio-1035, 2013 WL 1183332 (Ohio Ct. Appeals 2013) .........................................39

*Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc.,*
640 S.E.2d 102 (W.Va. 2006) ...........................................................44

*Cordial v. Ernst & Young,*
483 S.E.2d 248 (W.Va. 1996) ...........................................................25

*Delardas v. Morgantown Water Comm'n,*
137 S.E.2d 426 (W.Va. 1964) ...........................................................35

*Dixon v. American Indus. Leasing Co.,*
253 S.E.2d 150 (W.Va. 1979) .......................................................29, 30

*Dunlap v. Hinkle,*
317 S.E.2d 508 (W.Va. 1984) ...........................................................27

*Dunn v. Rockwell,*
689 S.E.2d 255 (W.Va. 2009) ..................................................28, 41-44

*Duff v. Morgantown Energy Assocs.,*
421 S.E.2d 253 (W.Va. 1992) ............................................................3

*Employer Teamsters-Local Nos. 175/505 Health &*
*Welfare Tr. Fund v. Bristol Myers Squibb Co.,*
969 F. Supp. 2d 463 (S.D. W.Va. 2013) .....................................22, 26, 28

*Everly v. Columbia Gas of West Virginia, Inc.,*
301 S.E.2d 165 (W.Va. 1982) ...........................................................21

*EQT Prod. Co. v. Wender,*
191 F.Supp.3d 583 (S.D. W.Va. 2016) .............................................33, 34

*First National Bank of Bluefield v. Crawford,*
386 S.E.2d 310 (W.Va. 1989) ...........................................................25

*Garnes v. Fleming Landfill, Inc.,*
413 S.E.2d 897 (1991) ...................................................................8

*Giles v. Gen. Motors Acceptance Corp.,*
494 F.3d 865 (9th Cir. 2007) ...........................................................40

*Gillingham v. Stephenson,*
551 S.E.2d 663 (W.Va. 2001) ...........................................................18

**TABLE OF AUTHORITIES**
**(Continued)**

Page

*Good v. Am. Water Works Co., Inc.,*
No. CV 14-1374, 2016 WL 5402238, (S.D. W.Va. Sept. 26, 2016) .................................6

*Gosden v. Louis,*
687 N.E.2d 481 (Ohio Ct. App. 1996) ...............................................................................29

*Graham v. Beverage,*
566 S.E.2d 603 (W.Va. 2002) ...........................................................................................44

*Greenberg v. Life Ins. Co. of Va.,*
177 F.3d 507 (6th Cir. 1999) .............................................................................................24

*Hark v. Mountain Fork Lumber Co.,*
34 S.E.2d 348 (W.Va. 1945) ...............................................................................................3

*Hartman v. Caraco Pharm. Labs., Ltd.,*
789 F. Supp. 2d 701 (S.D.W.Va. 2011) .............................................................................46

*Hatten v. Mason Realty Co.,*
135 S.E.2d 236 (W.Va. 1964) ...........................................................................................21

*Hays v. Bankers Trust Co. of California,*
46 F. Supp. 2d 4908 (S.D. W.Va. 1999) .......................................................................29, 30

*Heavener v. Quicken Loans, Inc.,*
2012 WL 13028627(N.D. W.Va. Nov. 7, 2012) ................................................................30

*Hill v. Stowers,*
680 S.E.2d 66 (W.Va. 2009) .............................................................................................26

*Hodell-Natco Industries, Inc. v. SAP Am., Inc.,*
13 F. Supp. 3d 786 (N.D. Ohio 2014) ...............................................................................24

*Holmes v. Runyan & Assoc., Inc.,*
2010 WL 2218698 (S.D. W.Va. June 2, 2010) ..................................................................28

*Hudnall v. Mate Creek Trucking, Inc.,*
490 S.E.2d 56 (W.Va. 1997) .............................................................................................21

*In re Lead Paint Litig.,*
924 A.2d 484 (N.J. 2007) ....................................................................................................6

*In re Neurontin Mktg. & Sales Practices Litig.,*
712 F.3d 21 (1st Cir. 2013) ...........................................................................................9, 10

## TABLE OF AUTHORITIES
### (Continued)

Page

*In re Opioid Litig.,*
No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018) ............................ 37, 40

*In re Rezulin Products Liability Litigation,*
133 F. Supp.2d 272 (S.D.N.Y. 2001) ........................................................................ 46

*James v. Arms Tech., Inc.,*
820 A.2d 27 (N.J. App. Div. 2003) ........................................................................... 5

*Jane Doe-1 v. Corporation of President of The Church of Jesus Christ of Latter-day Saints,*
801 S.E.2d 443 (W.Va. 2017) .................................................................................. 28

*J.C. by and through Michelle C. v. Pfizer, Inc.,* 2
018 WL 2293297 (W.Va. 2018) ............................................................................... 9

*Johnson v. Ross,*
419 F. App'x 357 (4th Cir. 2011) ............................................................................. 27

*Kessel v. Leavitt,*
511 S.E.2d 720 (W.Va. 1998) ............................................................................. 24, 28-31

*Kizer v. Harper,*
561 S.E.2d 368 (W.Va. 2001) .................................................................................. 16

*Knapp v. Americredit Financial Services, Inc.,*
245 F. Supp. 2d 841 (S.D. W.Va. 2003) .................................................................. 31

*Kodiak Island Borough v. Exxon Corp.,*
991 P.2d 757 (Alaska 1999) .................................................................................... 38

*Legg v. Johnson, Simmerman & Broughton, L.C.,*
576 S.E.2d 532 (W.Va. 2002) .................................................................................. 25

*Lengyel v. Lint,*
280 S.E.2d 66 (W.Va. 1981) ............................................................................... 24, 25

*Louk v. Isuzu Motors, Inc.,*
479 S.E.2d 911 (W.Va. 1996) ............................................................................. 16, 21

*Marcus v. Staubs,*
736 S.E.2d 360 (W.Va. 2012) ............................................................................. 17, 18, 23

*Masters Pharm., Inc. v. Drug Enf't Admin.,*
861 F.3d 206 (D.C. Cir. 2017) ................................................................................. 19

# TABLE OF AUTHORITIES
## (Continued)

Page

*Mays v. Chang,*
  579 S.E.2d 561 (W.Va. 2003) ........................................................................................21

*Midwestern Midget Football Club Inc. v. Riddell, Inc.,*
  2016 WL 3406129, (S.D. W.Va. June 17, 2016) ................................................28

*Miller v. Premier Corp.,*
  608 F.2d 973 (4th Cir. 1979) ........................................................................................24

*Miller v. Warren,*
  390 S.E.2d 207 (W.Va. 1990) ........................................................................................18

*Miller v. Whitworth,*
  455 S.E.2d 821 (W.Va. 1995) ........................................................................................17

*National Bank of Savannah v. Kershaw Oil Mill,*
  202 F. 90 (4th Cir. 1912) ........................................................................................25

*Nernberg v. Pearce,*
  35 F.3d 247 (6th Cir. 1994) ........................................................................................25

*New Mexico v. Gen. Elec. Co.,*
  335 F. Supp. 2d 1185 (D.N.M. 2004) ...........................................................................8

*Osborne v. United States,*
  166 F. Supp. 2d 479 (S.D. W.Va. 2001) .......................................................................23

*Patrick v. Sharon Steel Corp.,*
  549 F. Supp. 1259 (N.D.W.Va. 1982) ......................................................................37, 40

*People of the State of California v. Atlantic Richfield Co.,*
  2013 WL 6687953 (Cal.Super. 2013) ...........................................................................8

*Perrine v. E.I. du Pont de Nemours & Co.,*
  694 S.E.2d 815 (W.Va. 2010) ........................................................................................8

*Phillips v. Larry's Drive-In Pharmacy,*
  647 S.E.2d 920 (W.Va. 2007) ........................................................................................47

*Pope v. Edward M. Rude Carrier Corp.,*
  75 S.E.2d 584 (W.Va. 1953) ........................................................................................5

*Porter v. Warner Holding Co.,*
  328 U.S. 395 (1946) ........................................................................................8

# TABLE OF AUTHORITIES
## (Continued)

Page

*Proffitt v. Greenlight Financial Services,*
   No. 2:09-1180, 2011 WL 1485576 (S.D. W.Va. April 19, 2011) ..........................................28

*Prudential Ins. Co. v. Couch,*
   376 S.E.2d 104 (W.Va. 1988) ...........................................................................................27

*Radec, Inc. v. Mountaineer Coal Development Co.,*
   552 S.E.2d 377 (W.Va. 2000) ...........................................................................................24

*Realmark Developments, Inc. v. Ranson,*
   588 S.E.2d 150 (W.Va. 2003) ...........................................................................................27

*Rhodes v. E.I. duPont de Nemours and Co.,*
   657 F. Supp. 2d 751 (S.D. W.Va. 2009) ....................................................................2, 3, 41

*Rhodes v. E.I. du Pont de Nemours & Co.,*
   636 F.3d 88 (4th Cir. 2011) ..........................................................................................3, 4, 41

*Ridgeway Coal Co., Inc. v. FMC Corp.,*
   616 F. Supp. 404 (S.D. W.Va. 1985) .................................................................................29

*Robertson v. LeMaster,*
   301 S.E.2d 563 (W.Va. 1983) .....................................................................................14, 16

*Roney v. Gencorp,*
   431 F. Supp. 2d 622 (S.D. W.Va. 2006) ............................................................................30

*Sempione v. Provident Bank of Maryland,*
   75 F.3d 951 (4th Cir. 1996) ...............................................................................................25

*Sergent v. City of Charleston,*
   549 S.E.2d 311 (W.Va. 2001) ...........................................................................................10

*Sharon Steel Corp. v. City of Fairmont,*
   334 S.E.2d 616 (W.Va. 1985) .............................................................................................4

*Sharyland Water Supply Corp. v. City of Alton,*
   354 S.W.3d 407 (Tex. 2011) ..............................................................................................39

*State v. Aaer Sprayed Insulations,*
   1987 WL 1428107 (W.Va. Cir. Ct. 1987)............................................................................7

*State v. Lead Ind. Assn., Inc.,*
   2001 WL 345830, (R.I. Super. Apr. 2, 2001).....................................................................38

## TABLE OF AUTHORITIES
### (Continued)

Page

*State v. Schenectady Chem., Inc,*
  479 N.Y.S.2d 1010 (N.Y.App. 1984) ................................................................. 7

*State v. Sears,*
  468 S.E.2d 324 (WV 1996) ............................................................................... 37

*State v. St. Clair,*
  355 S.E.2d 418 (W.Va. 1987) ........................................................................... 37

*State ex. Rel. AmerisourceBergen Drug Corp v. Thompson,*
  No. 15-1026 (W.Va. January 5, 2016) ................................................................ 5

*State ex rel. Johnson & Johnson Corp. v. Karl,*
  647 S.E.2d 899 (W.Va. 2007) ............................................................................ 9,

*State of West Virginia ex rel Morrisey v. Amerisourcebergen Drug Corp., et al,*
  2014 WL 12814021(Boone Cnty., W.Va. December 12, 2014) ....................... 5, 36, 40

*State of West Virginia ex rel Morrisey v. Cardinal Health, Inc.,*
  (Boone Cnty., W.Va., April 17, 2015) ............................................................ 5, 36, 40

*State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.,*
  488 S.E.2d 901 (W.Va. 1997) ........................................................................... 41

*State of N.Y. v. Next Millennium Realty, LLC,*
  2007 WL 2362144 (E.D.N.Y. Aug. 14, 2007) .................................................... 8

*Stephens v. Rakes,*
  775 S.E.2d 107 (W.Va. 2015) ........................................................................... 21

*Strahin v. Cleavenger,*
  603 S.E.2d 197 (W.Va. 2004) ....................................................................... 14-17

*Stratton v. Arch Coal, Inc.,*
  2017 WL 2312840(S.D. W.Va. May 26, 2017) .................................................. 30

*Stevens v. MTR Gaming Grp., Inc.,*
  788 S.E.2d 59 (W.Va. 2016) .......................................................................... 14, 15

*Talley v. Danek Med., Inc.,*
  179 F.3d 154 (4th Cir. 1999) ............................................................................. 18

*Teter v. Old Colony,*
  441 S.E.2d 728 (W.Va. 1994) ........................................................................... 11

## TABLE OF AUTHORITIES
### (Continued)

Page

*Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*,
346 U.S. 537 (1954)................................................................................................................31

*Thomas v. Wyeth*,
2005 WL 3754203 (S.D. W.Va. June 16, 2005) ...................................................45

*Traders Bank v. Dils*,
704 S.E.2d 691 (W.Va. 2010) ...................................................................25

*United States v. Boyd*,
520 F.2d 642 (6th Cir. 1975) ......................................................................7

*United States v. Chesapeake & Ohio Railway Co.*,
130 F.2d 308 (4th Cir. 1942) .................................................................38

*Walker v. Rite Aid of W.Virginia, Inc.*,
2003 WL 24215831 (S.D. W.Va. Oct 14, 2003) ...................................................46

*Wenmoth v. Duncan*,
No. 3:08-CV-182, 2009 WL 2707579 (N.D. W.Va. Aug. 26, 2009),
*aff'd per curiam,* 382 F. App'x 271 (4th Cir. 2010) ...................................................30

*White v. Smith & Wesson Corp.*,
97 F. Supp. 2d 816 (N.D. Ohio 2000) ...................................................5

*White v. Wyeth*,
705 S.E.2d 828 (W.Va. 2010) ...................................................21, 22

*Windsor Theatre Co. v. Walbrook Amusement Co.*,
189 F.2d 797 (4th Cir. 1951) ...................................................31

*Witteried v. City of Charles Town*,
2018 WL 2175820 (W.Va. May 11, 2018)...................................................6

*Yourtee v. Hubbard*,
474 S.E.2d 613 (W.Va. 1996) ...................................................4, 16, 18, 23

**Statutes and Constitutional Provisions**

18 U.S.C. § 1961(1)(D)...................................................11, 12

21 U.S.C.A. § 811...................................................34

21 U.S.C.A. § 821...................................................34

21 U.S.C. § 843(a)(4)(A)...................................................11

## TABLE OF AUTHORITIES
### (Continued)

Page

21 U.S.C.A. § 871 ...................................................................................................34

21 U.S.C.A. § 903 ...................................................................................................34

West Virginia Constitution Article IX ....................................................................33

W.Va. Code § 7-1-3kk ......................................................................................*passim*

W.Va. Code §16-3-6 ..................................................................................................6

W.Va. Code § 30-5-21 .........................................................................................45-47

W.Va. Code § 30-5-10(c) ........................................................................................46

W.Va. Code § 55-7-9 ...............................................................................................18

West Virginia Code § 55-7B-2 ...............................................................................47

W.Va. Code § 55-7B-6 ........................................................................................47-48

W.Va. Code § 55-7-30 ...............................................................................................9

W.Va. Code § 60A-2-201 .........................................................................................34

W.Va. Code § 60A-4-401 .........................................................................................11

W.Va. Code § 60A-4-404 .........................................................................................34

W.Va. Code § 60A-8-13 ...........................................................................................11

W.Va. Code § 60A-8-401 .........................................................................................11

**Other Authorities**

Op. Br. of Appellants in *Johnson v. Ross*,
    2010 WL 1048981 (filed in 4th Cir. March 22, 2010) ......................................27

Reply Br. in *Johnson v. Ross*,
    2010 WL 2147834 (filed in 4th Cir. May 27, 2010) .........................................27

**Rules**

Federal Rule of Civil Procedure 9(b) .....................................................................29

**Regulations**

21 C.F.R. 1301.74(b)...............................................................................................19

# TABLE OF AUTHORITIES
## (Continued)

Page

**Treatises**

Restatement of Restitution, § 115 ...................................................................7

Restatement (Second) of Torts § 447 ..........................................................10

Restatement (Second) of Torts § 821B.........................................................3

Restatement (Second) of Torts § 821C ..........................................................6

**Law Reviews/Articles**

E. Eyre,
*Drug Firms Poured 780M Painkillers Into WV Amid Rise Of Overdoses*,
Charleston Gazette (December 17, 2016) .............................................42-43

T. Lytton,
*Should Government Be Allowed to Recover the Costs of Public Services From Tortfeasors?:*
*Tort Subsidies, the Limits of Loss Spreading, and the Free Public Services Doctrine,*
76 Tulane L.Rev. 727 (2002) ........................................................................36

D. McIntyre,
*Tortfeasor Liability for Disaster Response Costs: Accounting for the True Cost of Accidents*,
55 Fordham L.Rev. 1001 (1987) ...................................................................38

## INTRODUCTION

The harm that the Cabell County Commission ("Plaintiff" or "the County") seeks to remedy in this case is beyond question – a widespread and unprecedented public health epidemic which compelled the County to declare the unlawful distribution of prescription pain pills a public nuisance.

Cabell County is at the epicenter of the opioid crisis. Huntington, Plaintiff's county seat, has been called the "overdose capital" of the country. Plaintiff's Second Amended Complaint ("SAC") at ¶ 688. In one local neighborhood, in a town of less than 50,000 people, 26 people overdosed in one night, including six individual overdoses at one residence. *Id.* By every count, whether number of prescriptions, overdose deaths, opioid-addicted babies, or drug related crime, the County's numbers are horrific. Defendants' response is to claim that there is no "public right" to be free from this nightmare. Cabell County urges the Court to review in their entirety the county-specific facts Plaintiff has pled, so the Court will understand why the County was compelled to be at the forefront of this fight. [*See* SAC ¶¶ 662-698]

Plaintiff incorporates the Introduction and Summary of Issues and Argument as set forth in Plaintiffs County of Summit, Ohio, and City of Akron, Ohio's Omnibus Memorandum in Opposition to (1) Defendants AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp's Motion to Dismiss; (2) Motion to Dismiss Complaint by Defendants Walmart Inc., CVS Health Corp., Rite Aid Corp., and Walgreens Boots Alliance, Inc.; and (3) Manufacturer Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint, ECF No. 654 at 1-4 (hereinafter "Summit Opp. Mem.").   Defendants' motions[1] lack merit and should be denied.

---

[1] This is Plaintiff's combined response to the following motions and supporting memoranda: Distributor's Motion to Dismiss Second Amended Complaint [ECF No. 575, 575-1] (hereinafter "Dist. Mem."); Manufacturer Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 594, 594-1] (hereinafter "Mfr. Mem."); and Motion to Dismiss Second Amended Complaint by Defendants CVS Health Corporation, The Kroger Co., Rite Aid Corporation, Walgreen Boots Alliance, Inc., and Walmart Inc. [ECF 583] (hereinafter "Pharm. Mem."). Plaintiffs in all cases have coordinated to conform to the page limits

**LEGAL STANDARD**

Plaintiff incorporates the Legal Standard section from the Summit Opp. Mem. at 4-6. As in Summit, Defendants incorrectly reframe the Plaintiff's entire Complaint as sounding in fraud in an attempt to elevate the required pleading standard. Defendants incorporate their argument as set forth in the Motion to Dismiss Summit County. [Mfrs. Mem. at 1] Plaintiff incorporates Summit County's response to this improper reframing of claims. [Summit Opp. Mem. at 5-6]

**ARGUMENT**

I.     **Plaintiff Cabell County Has Stated Valid Causes of Action.**

A.     **Plaintiff Has Properly Pled a Claim for Common Law Public Nuisance.**

The moving Defendants each challenge Plaintiff's nuisance claims, largely based on the same arguments raised in support of their Summit County motions to dismiss. [Dis. Mem. at 2-4; Mfr. Mem. at 5-8; Pharm. Mem. at 8-9] Plaintiff incorporates and reasserts the arguments made in Summit County's opposition. [Summit Opp. Mem at 6-14] For the reasons set forth below, the West Virginia authorities cited by the Defendants to challenge the County's SAC are similarly unpersuasive.[2]

1.     **The SAC properly alleges an interference with a public right.**

It is clear that the SAC alleges an interference with public rights sufficient to maintain a nuisance claim in West Virginia.[3] As Defendants acknowledge, West Virginia has adopted the Second Restatement's test for a public nuisance. [Pharm. Mem at p.8, n.3 (citing *Rhodes v. E.I. duPont de Nemours and Co.*, 657 F. Supp. 2d 751, 768 (S.D. W. Va. 2009); *Duff v. Morgantown Energy Assocs.*, 421 S.E.2d 253,

---

established by the Court in Case Management Order No. Four, ECF No. 485, at 3 as interpreted by Special Master Cohen.

[2] The factual allegations relied upon by Summit County are all similarly pled in Cabell's SCA. *See* ¶¶ 17-20, 139-141, 471, 549, 570, 629-698, 812, 864, 865, 890, 902-3, 905-08, 911, 913, 949, 959, and Factual Allegations Pts I.D., I.E, and II.

[3] The Distributors' claim that Plaintiff has alleged no facts to support its claim to the interference "in the use and enjoyment of the public and private land comprising Plaintiff's corporate boundaries" and "environmental contamination" of the same is belied by numerous facts contained within the SAC, *inter alia* SAC ¶¶ 690, 691, 851. [Dist. Mem. at 3, n.3] In the same footnote, he Distributors inexplicably attempt to recast Plaintiff's case as being "about personal injuries from the use of prescription drugs and the alleged consequences" which is clearly not an accurate description of the nature of the Plaintiff's claims.

257 n.6 (W. Va. 1992)] Under the Second Restatement test, "[u]nlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land," Restatement (Second) of Torts § 821B cmt. H (1979), and "a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience," is sufficient to constitute an interference with a public right. *Id.* at § 821B(2)(a); *see also* Summit Opp. Mem at p. 7-10. In any event, the SAC also contains allegations of damage to property. [SAC at ¶ 690 (alleging decrease in property taxes and property values); *id.* at ¶ 691 (alleging property contamination)]

Manufacturing Defendants' argument that use or misuse of a lawful product, or a series of personal injury claims, cannot give rise to a claim for nuisance fails for the same reasons that it did in the Summit motions. [Summit Opp. Mem. at 10-11] Indeed, *none* of the West Virginia cases Defendants cite so holds. In *Duff*, the Court reversed an injunction of *prospective* activities because the non-governmental plaintiffs could not meet the high standard of proof for future harm and prospective relief, not because the alleged future harms would not implicate a public right. 421 S.E.2d at 262. Likewise, in *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 97 (4th Cir. 2011), the Court rejected the public nuisance claim of a class of private citizens because they failed to meet the "special injury" requirement applicable to a private person bringing a public nuisance claim.[4] It is true that, in rejecting the plaintiff's *private* nuisance claim, the *Rhodes* court noted that a public right (and therefore a public nuisance) is not simply a matter of counting the number of people affected, but the County does not contend that the harms here constitute a public nuisance merely because of the number of people affected. Rather, it is the *nature* of the harms caused by the opioid epidemic – the impact on public health and public safety – that constitute the impairment of public rights and constitute a public

---

[4] Public entities are not subject to this requirement. *See id.* (citing *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 354 (W.Va. 1945)). In *Hark*, the Supreme Court of Appeals noted, that even absent a special injury, a suit to abate a public nuisance can be brought, as is here, by "the proper public officials to vindicate the rights of the public." *Id. See also* Summit Opp Mem at p. 8, n.6.

nuisance. *See Rhodes*, 636 F.3d at 96 ("the proper characterization of a nuisance as either private or public depends on the nature of the interest affected by the defendant's conduct.").

Nor does *Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616 (W.Va. 1985), support Defendants' argument. Although the court listed examples of interferences previously held to constitute nuisances, (*id.* at 621) nothing in the *Sharon Steel* opinion suggests that the list was, or was intended to be, exhaustive. On the contrary, in the same opinion, the Supreme Court of Appeals held that "[a] nuisance is anything which interferes with the rights of a citizen, either in person, property, the enjoyment of his property, or his comfort." 334 S.E.2d at 621. (quotes and cit. om.) Clearly, this test, and not the list of particular examples, is the controlling holding of that case.[5,6]

## 2. Plaintiff has adequately plead causation.

Relying primarily on their arguments in Summit, Defendants argue that Plaintiff fails to sufficiently plead proximate cause for its nuisance claim. [Mfr. Mem. at 5-6; Pharm. Mem. at 9; Dist. Mem. at 2, n.1] Plaintiff incorporates the response in Summit.[7]  [Summit Opp. Mem. at 13-15] This

---

[5] Defendants cite *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536 (3d Cir. 2001), but that case was decided under New Jersey law and thus is inapplicable.  It is also distinguishable, since it involved only conduct that was otherwise *lawful*, 273 F.3d at 540, whereas here, by contrast, the County alleges that the Defendants' conduct here was *unlawful*. *See* below at Point I-A-3.

[6] The Manufacturing Defendants also argue that the absence of a private right of action bars a nuisance claim. [Mfr. Mem. at 8] The case cited for this proposition, *Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 458-59 (6th Cir. 2013), is a case interpreting Kentucky's negligence *per se* statute. Defendants cite no West Virginia authority for the proposition that the absence of a private right of action bars a public entity from pursing claims based on public nuisance. The County's nuisance action here is not one to enforce the statute; rather, it is an action to protect the public from the Defendants' unreasonable interference with public rights, and statutory authority exists to bring the claim.  W.Va. Code § 7-1-3kk.

[7] The principal West Virginia authority cited by Defendants, *Yourtee v. Hubbard*, 474 S.E.2d 613, 620 (W.Va. 1996), is not nuisance case and is addressed *infra.* at §§ I.C.1.a.; I.C.1.b; and I.C.3.b.

argument has previously been rejected as a matter of West Virginia law.[8] Other courts applying the common law test of the Second Restatement have rejected similar arguments.[9]

### 3. Defendants' conduct meets the unreasonable interference test.

Defendants also argue that Plaintiff has failed to establish that Defendants' actions constituted an unreasonable interference with a public right sufficient to constitute a public nuisance. [Mfr. Mem. at 6-7, Pharm. Mem. at 8-9] Defendants primarily rely on *Pope v. Edward M. Rude Carrier Corp.*, 75 S.E.2d 584, 589 (W. Va. 1953), which stands for the unremarkable proposition that conduct that is lawful cannot constitute a nuisance. This argument is addressed and refuted in the Summit briefing which is incorporated herein. [Summit Opp. Mem at 11-12] Simply put, for the reasons noted therein, Defendants' actions were not lawful or authorized. Rather, Defendants violated applicable federal statutes and regulations, all of which was pled in the SAC.[10] In addition, Plaintiff also pled violations of West Virginia law which imposes similar duties. [*See* SAC ¶¶ 950-55 (noting violations of West Virginia Uniform Controlled Substances Act that parallel and incorporate federal law)] *See also Morrisey v. Cardinal, supra* at ¶¶ 54-63 (rejecting claim that West Virginia law authorized defendants' actions); and *Morrisey v. AmerisourceBergen, supra* at ¶¶ 54-63 (same).

### 4. Broad damages are recoverable in a public nuisance claim.

Defendants' final challenge to Plaintiff's nuisance claim seeks to limit Plaintiff's damages, contending that the County is entitled only to injunctive relief, and not to any form of damages,

---

[8] *See, e.g., State ex rel. Morrisey v. Cardinal Health,* No. 12-C-140, (W. Va. Cir. Ct. Boone Cnty, April 17, 2015), [ECF No. 580-7 at ¶¶ 64-78]; *State ex rel. Morrisey v. AmerisourceBergen Drug Corp., et al*, No. 12-C-141 (W. Va. Cir. Ct. Boone Cnty, December 12, 2014), at ¶¶ 64-78, 2014 WL 12814021 (attached as Exhibit 1). The Supreme Court of Appeals of West Virginia denied the Defendants request for a writ of prohibition to review *Morrisey v. AmerisourceBergen Drug Corp. State ex.rel. AmerisourceBergen Drug Corp v. Thompson,* No. 15-1026 (W.Va. January 5, 2016) (attached as Exhibit 2). Consistent with previous orders, Cabell requests that the Court take judicial notice of the exhibits attached to this motion which are either public records or documents produced by Cardinal.

[9] *James v. Arms Tech., Inc.,* 820 A.2d 27, 39 (N.J. App. Div. 2003); *Cincinnati v. Beretta U.S.A. Corp.,* 768 N.E.2d 1136, 1143 (Ohio 2002); *White v. Smith & Wesson Corp.,* 97 F. Supp. 2d 816, 823 (N.D. Ohio 2000); *City of Boston v. Smith & Wesson Corp.,* No. 199902590, 2000 WL 1473568, at *7 (Mass. Super. July 13, 2000).

[10] SAC ¶¶ 902-909, 911, and 913.

disgorgement, or restitution. [Dist. Mem. at 4; Mfr. Mem. at 8] No such limitation exists under West Virginia law for a public nuisance action brought by a public entity.[11]

The County is specifically authorized to bring an action to "abate or cause to be abated" a public nuisance.[12] W.Va. Code § 7-1-3kk. West Virginia caselaw recognizes broad remedies in abatement. *See, e.g., Witteried v. City of Charles Town,* No. 17-0310, 2018 WL 2175820, at *3 (W. Va. May 11, 2018) (abatement action awarding injunction allowing city to recover costs of demolition of building determined to be public nuisance); *see also Good v. W. Virginia-Am. Water Co.,* No. 2:14-CV-1374, 2018 WL 2976108, at *2 (S.D.W. Va. June 8, 2018) (recognizing un-litigated abatement claim for "rehabilitative advertising" as part of environmental claim arising out of contamination of public water supply). Even the single case cited by the Defendants [Dist. Mem. at 4] allows a public entity bringing a public nuisance claim to impose upon and recover from the defendant "the obligations, including the costs of the abatement." *In re Lead Paint Litig.,* 924 A.2d 484, 498 (N.J. 2007).

*Lead Paint, supra,* and other cases limiting abatement damages rely on the Second Restatement, § 821C. *E.g.,* 924 A.2d at 496-99, 502 (citing Restatement (Second) of Torts § 821C (1979)). This section addresses the "special injury" requirement necessary for a private party to recover damages or an abatement injunction. Restatement (Second) of Torts § 821C. In essence the rule grants standing to private plaintiffs where it might otherwise not exist. *Id.* at Comment j. The ability of a governmental

---

[11] Summit has agreed to limit its damages based on Ohio law. [Summit Mem Opp. at 8, n.6] To the extent that the succeeding citations of West Virginia law permit recovery of broader damages, Plaintiff does not join in Summit's damage limitations.

[12] Distributor Defendants' assert that Plaintiff's damages are limited to injunctive relief. [Dist. Mem at 4] Their argument is based on W.Va. Code §16-3-6, which is part of the article giving public health officials authority over communicable diseases, and, as such it is not applicable to this case. Counties have general authority to bring actions and abate nuisances under W.Va. Code § 7-1-3kk. In any event, as noted herein, equitable injunctive relief abatement remedies are broad. Finally, if the provision is applicable, it conclusively establishes that public health is a public right sufficient to support a public nuisance claim.

entity to bring the claims, however, was not in doubt, and a claim for governmental "redress" is specifically recognized:

> [I]t is uniformly agreed that a private individual has no tort action for the invasion of the purely public right, unless his damage is to be distinguished from that sustained by other members of the public. It is not enough that he suffers the same inconvenience or is deprived of the same enjoyment or is exposed to the same threat of injury as everyone else who may be exercising the same public right. *Redress of the wrong to the entire community is left to its duly appointed representatives.*

*Id.* at Comment a (emphasis added).

Moreover, it has long been recognized that restitution is an available remedy in public nuisance cases under the common law. A claim for restitution arises where "[a] person who has performed the duty of another, by supplying things or services ... and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety." Restatement of Restitution § 115; *United States v. Boyd*, 520 F.2d 642, 644–45 (6th Cir. 1975). Comment b of the Restatement makes it clear that the "abatement of a serious public nuisance ... is another situation calling for the [award of restitution]." Restatement of Restitution, § 115 cmt. b.  This common law doctrine is recognized in West Virginia. *State v. Aaer Sprayed Insulations*, No. 86-C-458, 1987 WL 1428107 (W. Va. Cir. Ct. Sept. 4, 1987) (permitting restitution in public nuisance action by State seeking to recover costs of asbestos abatement, citing Restatement of Restitution § 115).  *See also State v. Schenectady Chem., Inc,* 479 N.Y.S.2d 1010 (N.Y.App. 1984) (state could receive restitution of costs for abating public nuisance caused by chemical wastes); *Brandon Township v. Jerome Builders, Inc.*, 263 N.W.2d 326 (Mich. Ct. App. 1977) (town could recover costs of repairing dam as restitution for abating public nuisance); *City of New York v. Keene Corp.,* 505 N.Y.S.2d 782, 784 (Sup.Ct.1986); *55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.,* 885 F. Supp. 410, 424 (E.D.N.Y. 1994).

A claim for recovery of costs incurred and costs to be incurred in responding to an actual or threatened nuisance is without question equitable in nature. Even in circumstances where a legal claim for damages is statutorily prohibited, the allowance of equitable claims allows the recovery of

restitution damages. *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946). In such a case, the plaintiff does not seek compensatory damages; rather the plaintiff simply seeks to restore the status quo ante. *See id.* Courts can also create large equitable funds to provide for the costs of abatement.[13] Alternatively, other courts have considered the governmental costs expended to respond to a public nuisance as sufficient to meet the "special injury" requirement.[14] And, when damages are awarded in nuisance, punitive damages are potentially available under West Virginia law upon a proper evidentiary showing. *See, e.g., Perrine v. E.I. du Pont de Nemours & Co.,* 694 S.E.2d 815 (W.Va. 2010); *Garnes v. Fleming Landfill, Inc.,* 413 S.E.2d 897, 900 (1991).

## B.     Plaintiff Has Properly Pled a Claim Under Federal RICO.

The Manufacturer and Distributor Defendants[15] argue that Plaintiff's RICO claims must be dismissed for the same reasons asserted in their Summit County motions to dismiss. [Dis. Mem at 2; Mfr. Mem. at 3] Thus, Plaintiff incorporates and reasserts the  arguments made in Summit County's opposition. [Summit Opp. Mem. at 4-6, 23-69] Here, the Manufacturer Defendants also assert additional bases for dismissing Plaintiff's Complaint, but for the reasons discussed below, those arguments lack merit.

---

[13] *People of the State of California v. Atlantic Richfield Co.*, No. 100CV788657, 2013 WL 6687953 at *59 (Cal. Super. Ct. Dec. 16, 2013) ("The Defendants against whom judgment is entered, jointly and severally, shall pay to the State of California *$1,100,000,000 (One Billion One Hundred Million Dollars)* into a specifically designated, dedicated, and restricted abatement fund (the "Fund"). The payments into the Fund shall be within 60 days of entry of judgment." (emphasis added)).

[14] *New Mexico v. Gen. Elec. Co.*, 335 F. Supp. 2d 1185, 1240–41 (D.N.M. 2004) (pecuniary losses arising from existing and future response and remediation costs); *State of N.Y. v. Next Millennium Realty, LLC*, No. CV03-5985(SJF)(MLO), 2007 WL 2362144, at *15 (E.D.N.Y. Aug. 14, 2007) (injunctive order directing defendants to pay for or carry out any remediation of the groundwater contamination in the future).

[15] For purposes of this section only, Plaintiff's references to Manufacturer Defendants and Distributor Defendants refer to the Manufacturer and Distributor Defendants in the RICO claims in the SAC, Claims for Relief 1-2, respectively.

First, the Manufacturer Defendants ask the Court to extend the learned intermediary doctrine far beyond the bounds of the law. The doctrine is inapplicable to Plaintiff's RICO claims because it is a doctrine of product liability law and it has not been applied outside of that context. *State ex rel. Johnson & Johnson Corp. v. Karl*, 647 S.E.2d 899 (W.Va. 2007) (generally discussing the learned intermediary doctrine as a matter of product liability law); *see also In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 39 (1st Cir. 2013) (rejecting application of the learned intermediary in RICO context). Indeed, even in the limited context of product liability, the doctrine is only applicable, if at all, to conduct occurring after the statutory enactment of the doctrine by W.Va. Code § 55- 7-30 in 2016  *J.C. by and through Michelle C. v. Pfizer, Inc.*, 814 S.E.2d 234, 238 n.9 (W.Va. 2018) (W.Va. Code § 55-7-30 not retroactive and learned intermediary previously rejected in West Virginia in its entirety in *Karl, supra*).

Second, setting applicability aside, the Manufacturer Defendants cannot avail themselves of the doctrine because the learned intermediary doctrine relieves a manufacturer of the duty to warn a consumer directly only when the manufacturer provides reasonable warnings or instructions to the prescriber. The County alleges, however, that the Defendants unreasonably failed to provide appropriate instructions and warnings, and they directly contradicted their products' warning labels and affirmatively misrepresented, or omitted information about the risks of prescription opioid use. [SAC ¶¶ 164, 563, 649, 722-24, 743, 745, 831, 849, 900, 906] These inadequate warnings, fraudulent over-promotions and misrepresentations, negated the adequacy, reasonableness and effectiveness of any label warnings, thereby taking these defendants out of any protections the learned intermediary doctrine would otherwise offer. *See* W.Va. Code § 55-7-30(a)(1),(b); *see also Karl*, 647 S.E.2d at 911-12 (exceptions include "overpromoted drugs" and instances in which "the manufacturer knows or should know that a physician will not be in a position to provide an adequate warning"); Summit Opp. Mem. at I.B.2.C (explaining that the FDA warning labels relied on by the Manufacturer Defendants were

not approved until December 2016 and, therefore, they provide no basis for any assertion that they adequately informed prescribers of risks related to prescription opioid use before that date).

Finally, intervening third-party criminal acts such as street-level drug dealing and heroin use do not negate proximate causation in this case. Where the original tortfeasor's intentional acts *contemplated and caused the intervening acts*, the original tortfeasor remains liable for the consequences of its actions--even if the intervening actors negligently or intentionally cause injury. *See*, *e.g.*, *In re Neurontin*, 712 F.3d at 39; Rest. (Second) of Torts § 447; Summit Opp. Mem. at 40-45. The cases cited by the Manufacturer Defendants do not hold otherwise. Rather, in *Yourtree v. Hubbard*, 474 S.E.2d 613 (W.Va. 1996), the court affirmed a trial verdict on the basis that the causal chain was broken because the intervening acts were *not* foreseeable. The federal district court in *Bertovich v. Advanced Brands & Imp., Co.*, No. 5:05CV74, 2006 WL 2382273, *11 (N.D. W.Va. Aug. 17, 2006) similarly recognized that "West Virginia does require that an intervening illegal act be unforeseeable" in order for it to break the causal chain.

Here, Plaintiff alleged a direct causal link between misrepresentations about the addictiveness of prescription opioids, failure to identify and report suspicious orders, and the epidemic that harmed Plaintiff. [SAC ¶¶ 17, 469, 765, 849-53, 868, 877, 879-82, 883-85]. These allegations are sufficient to satisfy the West Virginia principle that "a tortfeasor ... is not relieved of liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of [its] negligent conduct." *Sergent v. City of Charleston*, 549 S.E.2d 311 (W.Va. 2001). Moreover, a reasonable person could and would foresee excess prescription opioids sold on the street and those addicted to prescription opioids transitioning to (substantially cheaper) heroin resulting from Defendants' actions. Thus, as discussed in *Summit* (at § I.C.2.b.) and below (at § I.C.3), the allegedly intervening acts were foreseeable and, nevertheless, raise fact issues inappropriate for determination at this stage of the proceedings. Indeed, the Western District of Washington recently rejected the same argument raised

by Purdue regarding its liability in the *City of Everett v. Purdue Pharma L.P.*, C17-209RSM, 2017 WL 4236062, at *6 (W.D. Wash. Sept. 25, 2017). Here, as in *Everett*, the SAC sufficiently and plausibly alleges that intervening third-party criminal acts were foreseeable and do not break the causal chain.

The Manufacturer Defendants' claim that they did not maintain control over the Front Groups and KOLs is contrary to the allegations in the SAC which explicitly allege that Defendants had the right to direct their activities, including "funding, directing, editing, approving," etc. [SAC ¶¶ 318, 320-23, 326-29, 331-36, 338, 344-46, 349-52, 357-64, 367-69, 766-69, 779-78, 784-86] The agreements between the Manufacturer Defendants and their KOLs and Front Groups, unlike the cases cited in the motion to dismiss Summit County or *Teter v. Old Colony*, 441 S.E.2d 728 (W.Va. 1994) (where there was "no evidence demonstrating that the broker retained any control over the manner in which the engineering firm performed its inspection of the premises") demonstrate that the Manufacturer Defendants maintained control over the kinds of representations that KOLs and Front Groups made, and the way in which they were prepared, delivered and disseminated.

Plaintiff has pleaded that the Manufacturer Defendants engaged in the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance pursuant to RICO section 1961(1)(D) by violating, at a minimum, section 843(a)(4)(A) of the CSA. [SAC ¶¶ 863-65] Contrary to the Manufacturer Defendants' contentions, a violation of section 60A-4-401 of the West Virginia Code is irrelevant to Plaintiff's Opioid Supply Chain claim. Section 60A-4-401 is not relied on as a racketeering activity. Similarly, while Plaintiff relies on violations of W. Va. Code § 60A-8-13 and the W. Va. C.S.R. in support of other claims for relief, they do not form the basis of Plaintiff's racketeering allegations. Finally, a violation of Section 60A-8-401 may satisfy the definition of a racketeering activity under RICO section 1961(1)(D) where, as here, Plaintiff alleges that the Manufacturer Defendants manufactured, delivered, and possessed their prescription opioids in ways that were **not** authorized by federal or state law when they failed to identify and report

suspicious orders. [SAC ¶¶ 955-57] And, a violation of that statute satisfies RICO section 1961(1)(D) because it is a felony punishable under any law of the United States. 18 U.S.C. § 1961(1)(D). Nevertheless, Plaintiff does not rely on a violation of Section 60A-8-401 to support of its racketeering activities and it, therefore, cannot undermine Plaintiff's federal RICO claims.

As argued in Summit County, Plaintiff pleaded mail and wire fraud with the particularity required in a complex, far reaching fraudulent scheme. [Summit Opp. Mem. at 5-6, 26-35] In contrast, the Manufacturer Defendants provide no authority requiring Plaintiff to connect any misrepresentations directly to a prescription, prescriber, or patient in Cabell County in order to plead mail and wire fraud.[16] And, Plaintiff's alleged failure to tie misrepresentation to prescriptions, prescribers or patients is belied by the significant number of pages devoted to detailed and specific examples of Manufacturer Defendants' patently false claims, including pictures and quotes taken directly from source material, regarding prescription opioids in general and their specific products [SAC at ¶¶ 42-98], the ways in which those misrepresentations were disseminated through Front Groups [SAC ¶¶ 98-115], KOLs [SAC ¶¶ 115-26], continuing medical education ("CME") programs [SAC ¶¶ 126-29], "branded" advertising to promote their products directly to doctors and consumers [SAC ¶¶ 129-30], "unbranded" advertising to promote their products directly to doctors and consumers without FDA review [SAC ¶¶ 130-31] and funding, editing, and distributing publications that supported their misrepresentations (including the nine falsehoods alleged earlier in the Complaint). [SAC ¶¶131-33] The SAC describes how these misrepresentations were disseminated, including through speakers' bureaus and programs [SAC ¶ 137], and detailing to doctors. [SAC ¶¶ 133-37] Plaintiff further alleged that the Manufacturer Defendants made thousands of payments to prescribers in West Virginia for activities such as participating on speakers' bureaus and providing

---

[16] The Manufacturer Defendants do not provide any new cases in support of this proposition and no authority cited in Summit County stands for this proposition.

12

consulting services [*see, e.g.,* SAC ¶¶ 42, 50, 57, 66, 79]; and that sales representatives marketed the Manufacturer Defendants' drugs in Cabell County and surrounding areas [SAC ¶ 161]. Plaintiff's alleged failure to identify specific prescribers or sales representatives in this massive, years-long fraudulent scheme is irrelevant where the SAC alleges information that is obviously within the Manufacturer Defendants' knowledge regarding their own marketing practices, detailing visits and payments to doctors within Cabell County.

Finally, the group pleading argument lacks merit. Although the Manufacturer Defendants raise this argument again, they do not provide the Court with any new authority or facts to suggest that it is any more applicable to Cabell County than Summit. It, therefore, fails on the same basis as argued in Summit County. [Summit Opp. Mem. at § I.B.1.b.iii]

## C.    Plaintiff Has Properly Pled Negligence Claims Against All Defendants.

The elements of negligence in West Virginia are: duty, breach, causation and damages. *Carter v. Monsanto Co.,* 575 S.E.2d 342, 347 (W. Va. 2002). Defendants dispute that they owed a duty to Plaintiff. [Mfr. Mem. at 9-10; Dist. Mem. at 7-8; Pharm. Mem. at 4-6] The Pharmacy Defendants also argue that Plaintiff has not adequately pled breach and causation. [Pharm. Mem. at 6-8; Mfr. Mem. at 10 (proximate cause)] Defendants incorporate the arguments made in the Summit County case. Plaintiff incorporates Summit County's response to the same. [Summit Opp. Mem. at 69-88]

In addition, Plaintiff notes that all of these arguments fail because under West Virginia law Defendants clearly owed a common law duty to Plaintiff – a duty that is informed by the applicable standards of care in the Controlled Substances Act ("CSA") and West Virginia Controlled Substances Act ("WSCSA"). Plaintiff also properly pled that Defendants breached their duties which proximately caused Plaintiff's injuries.

1.      **Plaintiff Properly Pled the Existence of a Duty.**

a.      **Defendants owe a common law duty of reasonable care.**

Defendants' arguments center on the lack of a private right of action in the CSA or WVCSA. But, the duty owed here stems from the common law duty of reasonable care. Under West Virginia law every person is required to use reasonable care to avoid injuring another. "'The liability to make reparation for an injury, by negligence, is founded upon an original moral duty, enjoined upon every person, so to conduct himself, or exercise his own rights, as not to injure another.' This basic expression of policy is a restatement of the general duty which all actors in an organized society owe to their fellow persons." *Robertson v. LeMaster*, 301 S.E.2d 563, 567 (W. Va. 1983) (cit. om.).

"Whether a person acts negligently is always determined by assessing whether or not the alleged negligent actor exercised reasonable care under the facts and circumstances of the case, with reasonable care being that level of care a person of ordinary prudence would take in like circumstances." *Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004) (cit. om.). Moreover, "one who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." *Stevens v. MTR Gaming Grp., Inc.,* 788 S.E.2d 59, 62 (W. Va. 2016) (citing *Robertson*). Plaintiff has pled this existence of a duty that Defendants owed under the common law to Plaintiff. [SAC¶¶ 463, 468-472; 929-30] Defendants "had a duty to exercise reasonable care in delivering dangerous narcotic substances." [SAC ¶ 469]

West Virginia has long recognized that the existence of a duty depends on the foreseeability of the injury.

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

*Bragg v. United States*, 741 S.E.2d 90, 98 (W. Va. 2013) (cit. om.). The task of this court in determining duty

> is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.

*Strahin*, 603 S.E.2d at 207 (cit om) (emphasis in original). It is up to the jury – and thus not appropriate for a Motion to Dismiss – to consider foreseeability, that is, in the context of the facts of the case, whether Defendants' conduct falls within the scope of the duty as defined by the court. *Id.*

The existence of a duty also involves policy considerations such as "the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant.'" *Stevens,* 788 S.E.2d at 62-63 (cit. om.); *Bragg,* 741 S.E.2d at 98 (cit. om.). Defendants, in their roles as manufacturers and distributors of dangerous drugs, were under an obligation to evaluate whether their failure to exercise adequate control over the marketing and distribution of their products would be likely to cause injury. [SAC ¶ 934 ("Defendants' conduct in marketing, distributing and selling dangerously addictive drugs required a high degree of care and places them in a position of great trust and responsibility"] This was a responsibility of great magnitude and one that Defendants were in the best position to guard against. [*Id. See also* SAC ¶ 473 (describing how Congress recognized that controlled substances were a danger to public health and safety), ¶¶ 487-492][17] In fact, the potential that opioids could cause widespread harms to communities was so foreseeable that federal

---

[17] "Congress was particularly concerned with the diversion of drugs from legitimate channels. It was aware that registrants, who have the greatest access to controlled substances and therefore the greatest opportunity for diversion, were responsible for a large part of the illegal drug traffic." *United States v. Moore,* 423 U.S. 122, 135 (1975). To prevent this diversion, the CSA was designed to improve the administration and regulation of the manufacturing, distribution, and dispensing of controlled substances by providing for a "closed" system of drug distribution for legitimate handlers of such drugs. *Such a closed system is intended to reduce the widespread diversion of these drugs out of legitimate channels into the illicit market,* while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control. 1970 U.S.C.C.A.N. 4566, 4571-72 (emphasis added).

and state laws were enacted to attempt to prevent addiction, abuse and diversion from occurring. [SAC ¶¶ 471-82, 951-57] The DEA repeatedly reminded the Defendants of their obligations and advised them that their responsibility was critical as "the illegal distribution of controlled substances has a substantial and detrimental effect on the health and general welfare of the American people" and that "diversion can cause enormous harm." [SAC at ¶490-92. *See also* Summit Opp. Mem. at 72-73]

Thus, it is irrelevant if the duty to monitor and report suspicious orders was unknown to or implied under the common law. [Dist. Mem. at 6-7] Defendants were under the obligation to use reasonable care just like everyone else in West Virginia. *See Robertson*, 301 S.E.2d at 567; *Strahin*, 603 S.E.2d at 205-07.

Moreover, as outlined above, Defendants owed a duty to the County *directly*. But even if Plaintiff were not owed this duty directly, West Virginia law is replete with examples of cases in which a duty running to a third party can give rise to liability. *See, e.g., Bragg*, 741 S.E.2d at 96; *Kizer v. Harper*, 561 S.E.2d 368 (W. Va. 2001) (per curiam); *Louk v. Isuzu Motors, Inc.,* 479 S.E.2d 911 (W. Va. 1996); *Robertson*, 301 S.E.2d at 568-69. For example, *Robertson*, cited by Distributor Defendants, supports Plaintiff's position. In *Robertson*, the court found that defendants owed a duty to plaintiff when their employee was forced to work over 27 hours and then crashed into plaintiff while driving home. The defendants argued that they owed no duty as a matter of law, but the court disagreed, reversing a directed verdict, because the defendants could have reasonably foreseen that their exhausted employee would pose a risk to other motorists while driving home and "liability may be imposed regardless of the existence of a relationship between the defendant and the party injured." *Robertson*, 301 S.E.2d at 568-69.[18] Similarly, the SAC alleges -- and a jury applying West Virginia negligence law could find --

---

[18] *Yourtee, supra,* 474 S.E.2d at 620, cited by Distributor Defendants, is inapposite. There, the court examined whether a common law duty existed and found that someone who is complicit in the theft of a car and crashes it is not owed a duty from the car's owner. The Court found that the plaintiff's complicity in the theft was what took him outside the scope of any duty owed. *Id.* Defendants do not and cannot contend that Plaintiff committed any illegal acts or otherwise contributed to or caused its own injuries. Notably, the court refused to

that Defendants should have and did foresee that if they lied about the safety of opioids, oversupplied them and did not report or adequately respond to diversion, that serious harms would befall Plaintiff and Plaintiff's Community. [SAC ¶¶ 522-543; 569-578; 585-611; 938-949]

Defendants also argue that they have no duty to protect against the deliberate criminal conduct of third parties. [Dist. Mem. at 8; Mfr. Mem. at 9; Pharm. Mem. at 5] This misstates West Virginia law. In *Marcus v. Staubs*, the Supreme Court of Appeals of West Virginia reaffirmed the principles of duty and foreseeability delineated above, and rejected the contention that there is no duty to protect someone from the intentional, criminal acts of third parties. 736 S.E.2d 360, 370-71 (W. Va. 2012). Instead, the court held that it was a jury question whether the harm was foreseeable. *Id.* Other cases, including those cited by Defendants, have held the same. *See Miller v. Whitworth,* 455 S.E.2d 821, 827 (W. Va. 1995) (duty be imposed when a defendant's acts or omissions have unreasonably created or increased the foreseeable risk of injury from the criminal activity or intentional misconduct of a third party); *see also Strahin,* 603 S.E.2d at 209 (when negligence concurred with intentional, criminal acts jury must make determination if it was foreseeable that the conduct could have created an unreasonable risk of harm).[19]

In addition, Plaintiff's allegations do not rely on the existence of criminal conduct. While criminal conduct may have exacerbated the opioid crisis, the SAC states a negligence claim that is rooted in the breach by Defendants of their duty of care regardless of the acts of non-parties. [SAC ¶¶ 463, 468-472; 931-34] Plaintiff alleges that Defendants themselves engaged in conduct which

---

adopt the absolute bar to proof of causation urged by Defendants here, *id.* at 621, and declined to address the duty owed to third persons not involved in the illegal activity. *Id.* at 618, n.8.

[19] *Ashworth v. Albers Med., Inc.,* cited by Manufacturer Defendants, also acknowledged the law on duty as explained above and the exception, recognized by *Miller,* that under certain circumstances a person may have a duty to protect others from the criminal activity of a third party, such as when their affirmative acts expose others to a foreseeable high risk of harm from the intentional misconduct. 410 F. Supp. 2d 471, 479 (S.D. W.Va. 2005).

foreseeably caused harm to Plaintiff. [*See, e.g.,* SAC ¶¶142-46; 316-17; 453-55; 463-64; 466; 522-568; 585-613; 936]

### b.  Plaintiffs does not seek to enforce statutory duties.

Plaintiff references federal and state statutes and regulations that Defendants have violated not because Plaintiff seeks to enforce those statutes, but to help establish the standard of care owed by Defendants under the common law. Defendants' liability arises from their failure to use reasonable care, not their violations of federal and state laws. In West Virginia, a violation of a statute is *prima facie* evidence of negligence. *See, e.g., Marcus,* 736 S.E.2d at 368 (citing *Anderson v. Moulder,* 394 S.E.2d 61, 66-67 (W. Va. 1990)); *Arbaugh v. Bd. of Educ., Cty. of Pendleton,* 591 S.E.2d 235, 239 (W. Va. 2003); *Yourtee,* 474 S.E.2d at 617. Similarly, violations of regulations are also prima facie evidence of negligence. *See Miller v. Warren,* 390 S.E.2d 207, 209 (W. Va. 1990).[20]

The federal and state laws define a standard of care for the underlying common law duty by establishing how a reasonable manufacturer or distributor of dangerous drugs would behave. [SAC ¶480 ("State and federal statutes and regulations reflect a standard of conduct and care below which reasonably prudent manufacturers and distributors would not fall.")] "It is settled law that a statute or regulation ... sets a floor of due care." *Miller,* 390 S.E.2d at 209. In fact, West Virginia specifically creates actionable duties based on a violation of a statute unless the statute explicitly bars such claims. W. Va. Code § 55-7-9 ("[a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reasons of the violation" unless a penalty for the violation is expressly imposed instead of damages).

---

[20] The Manufacturer Defendants argue that West Virginia does not recognize the doctrine of negligence *per se.* [Mfr. Mem. at 9-10] The case they cite, *Gillingham v. Stephenson,* does not say that, but instead confirms that in West Virginia, "violation of a statute is prima facie negligence." 551 S.E.2d 663, 670 (W. Va. 2001). Moreover, another case that Defendants cite, *Talley v. Danek Med., Inc.,* is not applying West Virginia law and acknowledges that under the doctrine of negligence *per se,* violation of a statute constitutes conclusive evidence of negligence. 179 F.3d 154, 158 (4th Cir. 1999).

Federal law imposes a duty upon Defendants to, *inter alia*, "(a) limit sales within a quota set by the DEA for the overall production of Schedule II substances like opioids; (b) register to manufacture or distribute opioids; (c) maintain effective controls against diversion of the controlled substances that they manufacturer or distribute; and (d) design and operate a system to identify suspicious orders of controlled substances, halt such unlawful sales, and report them to the DEA." [SAC ¶ 472. *See also* SAC ¶¶ 465, 471-77] *See also* 21 U.S.C. §§ 823; 21 C.F.R. 1301.74(b). West Virginia imposes similar duties. [SAC ¶¶ 950-55.] The SAC pleads these laws as part of its allegations that Defendants owed Plaintiff a duty of due care to prevent prescription opioids from being marketed and distributed in ways that would harm Plaintiff.[21] *See also* Summit Opp. Mem. at 70-78.

## 2.    Plaintiff Properly Pled that Defendants Breached Their Duties.

The Pharmacy Defendants argue that Plaintiff did not adequately plead they breached their duties and that the allegations that they failed to report suspicious orders are conclusory. But Plaintiff's allegations provide multiple specific examples of how the Pharmacy Defendants (and the other Defendants) breached their duties by failing to control the supply chain, prevent diversion, report suspicious orders, and halt shipments of opioids they knew or should have known were indicative of serious problems of overuse. [SAC ¶485]

For example, the SAC pleads that all the Defendants throughout the supply chain deliberately disregarded their duties to maintain effective controls and to identify, report and halt suspicious orders. [SAC ¶¶ 469, 493, 565, 567] They worked to inflate opioid quotas [SAC ¶¶ 493-496, 509-510, 513-518, 567, 578], they kept track of prescribing data and knew about suspicious orders and prescribers [SAC ¶¶ 519-531, 568], they failed to report these suspicious orders [SAC ¶¶ 544-545,

---

[21] The Pharmacy Defendants' challenge the directives under CSA and WVCSA as "too vague to support civil liability." [Phar Def. at p.5, n.1]  The challenge is itself too vague and conclusory to support dismissal. In any event, as decision in *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017), establishes, Courts can and do interpret these acts to find violations.

567, 575-577], and they pretended to cooperate with law enforcement [SAC ¶¶ 552, 587-598, 600-607, 609-611, 946] Like the other Defendants, and in particular like other Distributors, the Pharmacy Defendants were in possession of national, regional, state and local prescriber- and patient-level data that allowed them to track prescribing patterns, putting them on notice of the problems of abuse and diversion, and yet they continued to flood U.S. communities, including Plaintiff's, with opioids. [SAC ¶¶ 520-522, 565-568, 575-578, 585-613]

Pharmacy Defendants argue that Plaintiff has not pled facts to show that they distributed any pills in Cabell County that were used for illegitimate purposes. [Pharm. Mem. at 6] That contention cannot be taken seriously given the numbers. As alleged in the SAC, based on the limited ARCOS data available to the public, from 2007 to 2012, the Distributors – including all of the Pharmacy Defendants – sold close to 40 million doses of prescription opioids to retailers in Cabell County (population of 96,319) and 780 million doses statewide – in a state with a population of 1.8 million. SAC ¶ 673, 674,  676.[22] (Of those 40 million doses, approximately half were sold by the Pharmacy Defendants. [SAC ¶ 673]

The sheer volume of prescription opioids distributed by Defendants " exceeds, by orders of magnitude, any reasonably conceivable medical need of the community and facially suspicious. [*See* SAC ¶¶ 673, 674, 676-680] As the SAC alleges, these red flags are so obvious that no one who engages in the legitimate distribution of controlled substances can reasonably claim ignorance of them. [SAC ¶¶ 613-617, 644-648] The facts alleged in the SAC make plausible the Plaintiff's allegations that Defendants inundated Cabell County with excess pills and failed to report suspicious orders in breach of their duties. [*See* SAC ¶¶  936 939-941 944  957, 961, 963]

---

[22] Plaintiff also incorporates by reference the additional ARCOS data which is contained in the sealed version of the SAC at ¶¶ 676-80.

3. **The SAC Sufficiently Pleads that Plaintiff's Injuries Were Proximately Caused by the Defendants' Conduct.**

a. **Plaintiff's injuries are sufficiently direct.**

Defendants assert that the Plaintiff's injuries were not proximately caused by the Defendants' conduct and that the direct injury test bars Plaintiff's claims. [Pharm. Mem. at 6-8; Dist. Mem. at 11-12] Plaintiff addresses these arguments together and incorporates Summit's response regarding the same. [Summit Opp. Mem. at 79-82]

In West Virginia, proximate cause is defined as a cause of an injury "which, in natural and continuous sequence, produces foreseeable injury and without which the injury would not have occurred." *Hudnall v. Mate Creek Trucking, Inc.,* 490 S.E.2d 56, 61 (W. Va. 1997). Thus, the test requires both foreseeable injury and but-for causation. *Id.* Again, a key question is foreseeability. "Negligence to constitute the proximate cause of an injury ... must be such as can reasonably have been anticipated by an ordinarily prudent person."[23]

Moreover, a plaintiff need only show that a defendant's breach of a particular duty of care was *a* proximate cause of the plaintiff's injury, not the *sole* cause. *Stephens v. Rakes,* 775 S.E.2d 107, 117 (W. Va. 2015); *Mays v. Chang,* 579 S.E.2d 561, 565 (W. Va. 2003) (citing *Everly v. Columbia Gas of West Virginia, Inc.,* 301 S.E.2d 165 (W. Va. 1982) (emphasis in original)). In addition, questions of negligence and proximate cause are jury questions not appropriate for a motion to dismiss. *Mays,* 579 S.E.2d at 565; *Hatten v. Mason Realty Co.,* 135 S.E.2d 236 (W. Va. 1964).

The cases cited by Defendants are distinguishable. *Employer Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers Squibb Co.,* 969 F. Supp. 2d 463 (S.D. W. Va. 2013) and *White v. Wyeth,* 705 S.E.2d 828 (W. Va. 2010) are not even negligence cases. In both cases the courts concluded

---

[23] *Louk,* 479 S.E.2d at 914-15 (cit. om.) *See also Good v. Am. Water Works Co., Inc.,* No. CV 14-1374, 2016 WL 5402238, at *4 (S.D. W.Va. Sept. 26, 2016) ("[o]ne requisite of proximate cause is an act or omission which a person of ordinary prudence could reasonably foresee might naturally or probably produce an injury, and the other requisite is that such act or omission did produce the injury." (cits. om.)).

that because there were not specific allegations as to who received the misrepresentations or how the misrepresentations influenced doctors, the allegations were deficient as to causation. *See Employer Teamsters,* 969 F. Supp. 2d at 475 (dismissing breach of implied warranty and unjust enrichment); *White,* 705 S.E.2d at 831 (dismissing statutory consumer fraud action because plaintiffs failed to alleged that their doctors ever received, read or relied upon the alleged misrepresentations).

By contrast, in this case, Plaintiff has set forth numerous facts from which a jury could conclude that Defendants' acts and omissions were a proximate cause of Cabell's injury. [SAC ¶¶ 520-530, 544, 565, 567-568, 577-617, 644-49, 651, 662-698, 935-949, 955-957, 961, 963-966[24]] In addition, the SAC clearly identifies foreseeable harms caused by the breach of the duties owed by Defendants, including the municipal costs it was forced to incur as a result the opioid crisis. [*See, e.g.,* SAC ¶¶ 469, 630-649, 651, 660-698, 935-949, 955-957, 961, 963-966.] Without the Defendants' acts, Plaintiff's injuries would not have occurred. Based on the SAC, a properly instructed jury could conclude that that Defendants' acts in negligently marketing and failing to control the supply of dangerous drugs caused the opioid epidemic that is ravaging Plaintiff's Community.

### b. The acts of third parties do not break the causal chain.

Defendants claim that their conduct was too remote from the opioid epidemic, in contrast with the criminal conduct of numerous actors that lead to the opioid abuse and incorporate arguments from their Summit County brief. [Pharm. Mem. at 8; Mfr. Mem. at 5, n.14, Mfr. Mem. at 7 n.16] Plaintiff incorporates Summit's responsive argument. [Summit Opp. Mem. at 82-85] *See also* § I.B. at 9-10 and §I.C.1.a. at 16-17, above.

---

[24] The SAC also sufficiently alleges that the Manufacturer Defendants breached their additional duties by increasing the demand for opioids by disseminating false and misleading information about the risks and benefits of these drugs and that those breaches caused Plaintiff's injuries. [SAC ¶¶ 142-437, 453-62, 629-72, 937, 940]

As with the concept of duty under West Virginia law, the acts of third parties do not break the chain of causation - unless their negligence "constitutes a new effective cause and operates *independently* of any other act, *making it and it only, the proximate cause of the injury. Marcus*, 736 S.E.2d at 372 (cit. om.) (emphasis added). Even a criminal act by a third party does not defeat causation under West Virginia law. *Marcus*, 736 S.E.2d at 372.[25, 26]

### D. Plaintiff Has Properly Pled a Claim for Fraud Against the Manufacturer Defendants.

In 557 paragraphs of specific and thorough pleadings, the Complaint identifies the Marketing Defendants' multiple falsehoods [SAC ¶¶ 142-315], and the dissemination of these falsehoods through multiple channels [SAC ¶¶ 316-628], specifically including in West Virginia and in Cabell County. [SAC ¶¶ 629-698] The SAC alleges that the Marketing Defendants "intended and had reason to expect" that "Plaintiff, Plaintiff's agents," "and persons on whom Plaintiff and its agents relied would be deceived by" the Marketing Defendants' false representations and concealments, that Defendants "intended and knew that … reasonable and rightful reliance would be induced by these Defendants' misrepresentations and omissions" and "cause Plaintiff to suffer loss," and that Plaintiff, through its agents and persons on whom Plaintiff and its agents relied, in fact relied on the misrepresentations and omissions, thereby incurring expenditures and sustaining injuries. [SAC ¶¶ 983-990] The SAC

---

[25] *See Osborne v. United States*, 166 F. Supp. 2d 479, 498 (S.D. W.Va. 2001) (court rejected the contention that the plaintiffs could not show proximate cause in a case against a doctor who overprescribed narcotics to a drug abuser who then drove while impaired and injured plaintiffs. The doctor's actions were a proximate cause of the accident because it was foreseeable that his patient would abuse the medications and possibly drive while intoxicated. The patient's criminal acts did not prevent the doctor from being found negligent). *See also, Yourtee*, 474 S.E.2d at 621 (criminal acts break the causal chain only when they are unforeseeable).

[26] Contrary to Manufacturers' claim, the causal chain for environmental contamination caused by discarded "used needles" in public parks is not severed as is foreseeable that addiction to the manufacturers' products would lead to the use of comparable drugs, i.e. heroin, which is delivered via needles and commonly discarded on public property. Notably, Manufacturers do not dispute that these damages do not fall within the economic loss rule.

states a claim for fraud. Reliance and fraud are issues of fact,[27] and are therefore inappropriate for resolution in a Rule 12(b)(6) motion.[28]

Defendants nonetheless assert that the fraud claim fails, primarily for reasons addressed elsewhere. [Mfr. Mem. at 10] For the reasons addressed in §§ I.B. and II.B of this brief and Summit's Opp. Mem. at 90-92, Defendants' arguments are unfounded.

The Marketing Defendants also incorrectly contend that the SAC allegedly did not plead reliance by the Plaintiff. [Mfr. Mem. at 10] This allegation is easily disposed of on the face of the pleadings.[29] Because Plaintiff *did* plead its reliance, Defendants' argument that third party reliance is insufficient is unavailing here.

Independently, the cases cited by the Marketing Defendants do not immunize them from fraudulent representations upon which the Plaintiff relied merely because those statements were made in the first instance to third parties. Rather than supporting Defendants' argument, *Lengyel v. Lint,* 280 S.E.2d 66, 70 (W. Va. 1981), explains that the court "has never directly addressed the issue of a real estate agent's liability to a third party or purchaser for fraud," that such liability often turns on the particular facts, and "that there are situations in which a real estate agent may be liable to a purchaser

---

[27]  *See Miller v. Premier Corp.*, 608 F.2d 973, 982 (4th Cir. 1979) (reliance and its reasonableness "are preeminently factual issues for the trier of fact.") (case decided under South Carolina law); *Hodell-Natco Industries, Inc. v. SAP Am., Inc.*, 13 F. Supp. 3d 786, 811 (N.D. Ohio 2014) (reasonable reliance issue best left to trier of fact) (citing *Miller v. Premier* and collecting other cases); *Brozik v. Parmer*, No. 16-0292 *et al.*, 2017 WL 65475, at *8 (W. Va. Jan. 6, 2017) (declining to "usurp the role of the jury" in determining fraud); *Radec, Inc. v. Mountaineer Coal Development Co.*, 552 S.E.2d 377, 382 (W. Va. 2000) (fraud was properly a question for the jury); *Kessel v. Leavitt*, 511 S.E.2d 720, 757 n. 38 (W. Va. 1998) (fraud is generally a fact question) (citation omitted).

[28]  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 516-17 (6th Cir. 1999) (as discussed at Summit Opp. Mem. at 91).

[29]  SAC ¶ 985 (expressly alleging that "Plaintiff … did in fact rightfully, reasonably, and justifiably rely on Marketing Defendants' representations and/or concealments . . . ."); ¶ 986 (Plaintiff's reliance on Defendants' misrepresentations caused Plaintiff to "misapprehen[d] that the opioid crisis was simply a result of conduct by persons other than Defendants," thereby "prevent[ing] Plaintiff from a more timely and effective response to the opioid crisis.").

in an action for fraud. A real estate agent is not, as a matter of law, always insulated from such liability." *Lengyel* thus contradicts rather than supports Defendants' argument.[30]

Subsequently, the West Virginia Supreme Court reversed a defense verdict in an action for fraud against an accounting firm, finding an error in the jury charge. *Cordial v. Ernst & Young*, 483 S.E.2d 248 (W. Va. 1996). The court noted that privity was not required in a negligence action against an accountant who knew his reporting would be relied upon.[31] More recently, the court held that the fact that a third party was the beneficiary of an oral promise did not defeat a fraud in the inducement claim.[32] Thus, to the extent that this issue has been resolved in West Virginia jurisprudence, the court has not limited the scope of fraud actions to only those representations made directly to a plaintiff.

The prevailing rule, as reflected in Restatement (Second) of Torts § 533, is that direct communication between the parties is not a required element of fraud. The Fourth and Sixth Circuits have consistently applied it where state courts have not directly addressed this issue.[33]

---

[30] Defendants also misplace reliance on *Legg v. Johnson, Simmerman & Broughton, L.C.,* 576 S.E.2d 532, 539 (W. Va. 2002), and *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 545 (S.D. W. Va. 2014). Neither addressed the issue of misrepresentations to third parties.

[31] 483 S.E.2d at 260 ("in a negligence action, we held that '[i]n the absence of privity of contract, an accountant is liable for the negligent preparation of a financial report to those he knows will be receiving and relying on the report.'") (citing Syllabus, *First National Bank of Bluefield v. Crawford*, 386 S.E.2d 310 (W. Va. 1989)).

[32] *Traders Bank v. Dils*, 704 S.E.2d 691, 697-98 (W. Va. 2010) ("we hold that the maker of a promissory note has standing to assert a tort claim of fraud in the inducement as a defense and/or a counterclaim in response to the lender's attempt to recover a debt on the promissory note where the maker can demonstrate reliance to his financial detriment upon the oral promise of the lender, which the lender had no contemporaneous intention of fulfilling, and notwithstanding the fact that a third party was the beneficiary of the oral promise.").

[33] *Sempione v. Provident Bank of Maryland*, 75 F.3d 951, 962 (4th Cir. 1996) ("We believe that the Maryland courts would not require Provident to have communicated with BDS in order to be held liable for fraud. Though the Maryland courts have not directly addressed the issue, the prevailing rule" is Restatement (Second) of Torts § 533.); *National Bank of Savannah v. Kershaw Oil Mill*, 202 F. 90, 96 (4th Cir. 1912) (privity not a requirement in the context of fraud; true test was whether defendants knowingly allowed false statements to pass through channels of commerce, falling into the hands of a third party) (generally citing cases from several jurisdictions but presumably decided under South Carolina law); *Nernberg v. Pearce,* 35 F.3d 247, 251 (6th Cir. 1994) (same; decided under Michigan law).

### E.  Plaintiff Has Properly Pled an Unjust Enrichment Claim.

Defendants seek to dismiss Plaintiff's claim for unjust enrichment for the same reasons argued elsewhere, and/or because Plaintiff allegedly did not confer a benefit directly on Defendants. [Dist. Mem. at 8; Mfr. Mem. at 11; Pharm. Mem. at 9] Defendants' arguments can be rejected for the reasons advanced in prior briefing. [Summit's Opp. Mem. at 95-99; Chicago Opp. Mem. at 41-42]

Count Six properly pleads unjust enrichment under West Virginia law. The elements of an unjust enrichment claim are "(1) a benefit conferred upon the [defendant], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Employer Teamsters-Local*, 969 F. Supp. 2d at 471  (quotation marks & citation omitted). The SAC explains that the cost of Defendants' wrongful conduct in selling and distributing opioids includes *inter alia* increased healthcare services and addiction treatment for opioid users. [SAC ¶¶ 997-998, 1000, 1006] These costs are part of Defendants' business, yet Defendants are not paying for them. Plaintiff does, and these costs are "not part of the normal and expected costs of a local government's existence." [SAC ¶ 1005] By using Plaintiff to fund Defendants' negative externalities (i.e., the cost of the harms caused by their wrongful practices), Defendants knowingly saved on expenses, thereby allowing them to sell and distribute more opioids, and make more money, than if they had internalized the actual cost of their activities. [SAC at ¶¶ 1001-1006] Defendants have thereby received a benefit unjustly financed by the Plaintiff.[34]

Defendants' contention that a direct, transactional relationship is a prerequisite for unjust enrichment is unfounded because West Virginia law does not mandate a direct relationship between the parties. *See Absure, Inc. v. Huffman,* 584 S.E.2d 507, 510-11 (W. Va. 2003) (improper indirect

---

[34] Defendants' reliance on *Hill v. Stowers*, 680 S.E.2d 66, 75 (W. Va. 2009), is misplaced because there, unlike here, the plaintiff was not the payor of the benefits at issue.

payment could be basis for unjust enrichment, and "a third party connected with a transaction may seek restitution where there is unjust enrichment which resulted from the third party satisfying an obligation of the unjustly enriched party") (citing *Prudential Ins. Co. v. Couch,* 376 S.E.2d 104 (W. Va. 1988)); *Dunlap v. Hinkle,* 317 S.E.2d 508, 512 n.2 (W. Va. 1984) ("unjust enrichment does not necessitate a finding of privity of contract between the parties.") (citations omitted).[35] "[I]f benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value." *Realmark Developments, Inc. v. Ranson*, 588 S.E.2d 150, 153 (W. Va. 2003) (quotation marks & citation omitted). For these purposes, a plaintiff need not prove that it wrote a check or delivered goods to the defendants. "A person may be unjustly enriched not only where he receives money or property, but also where he otherwise receives a benefit. He receives a benefit ... where he is saved expense or loss." *Prudential Ins.,* 376 S.E.2d at 109 (citation marks & citation omitted). Plaintiff's pleadings here thus comport with West Virginia law.

Consistently, federal and state cases nationwide recognize that defendants are unjustly enriched where, as here, a plaintiff must bear the cost of negative externalities that defendants caused, and that this is true even where the plaintiff is a "third party." *See* Summit's Opp. Mem. at 96-98 (collecting cases, including regarding pollution costs).

---

[35] Contrary to the Distributor Defendants' suggestion, *Johnson v. Ross,* 419 F. App'x 357, 362 (4th Cir. 2011), did not resolve the issue of whether unjust enrichment requires a direct benefit, but rather held that regardless, the defendant was shielded from liability by a corporate veil. Defendants quote a sentence in *Johnson* criticizing plaintiffs there for failure to cite a case regarding indirect receipt (Dist. Mem. at 8); however, that litigation focused on other issues and neither *Absure* nor *Dunlap* were cited in the *Johnson* plaintiffs' briefs. *See* Op. Br. of Appellants in *Johnson v. Ross,* 2010 WL 1048981 (filed in 4th Cir. March 22, 2010); Reply Br. in *Johnson v. Ross,* 2010 WL 2147834 (filed in 4th Cir. May 27, 2010).

Finally, contrary to the Marketing Defendants' argument, West Virginia law does not require dismissal of unjust enrichment claims based on dismissal of underlying tort claims. *See Employer Teamsters-Local,* 969 F. Supp. 2d at 471.[36]

**F.      Plaintiff Has Properly Pled a Claim for Civil Conspiracy.**

Defendants' heavy reliance on cross-references to their Summit briefing [Mfr. Mem. at 11-12; Dist. Mem. at 9], are rebutted in turn in the Summit Opp. Mem. at 99-105. Defendants' arguments that the underlying tort claims allegedly fail [Mfr. Mem. at 11; Dist. Mem. at 9; Pharm. Mem. at 13] are unfounded for the reasons catalogued above. Defendants' West Virginia case citations are rebutted below.

**1.   Civil Conspiracy Is a Separate Cause of Action.**

Contrary to the Marketing Defendants' argument,[37] the West Virginia Supreme Court has long "recognized conspiracy as a separate claim." *Jane Doe-1 v. Corporation of President of The Church of Jesus Christ of Latter-day Saints*, 801 S.E.2d 443, 458 (W.V a. 2017) (citing *Dunn*, 689 S.E.2d at 268; *Kessel v. Leavitt*, 511 S.E.2d 720, 753 (W. Va. 1998)); *see also Kessel,* 511 S.E.2d at 753 ("The law of this State recognizes a cause of action sounding in civil conspiracy").[38] Underscoring this point, the court last

---

[36] The ultimate result in *Employer Teamsters-Local* is distinguishable because it turned on the court's interpretation of particular pleadings regarding third party payors and the mechanism of payments made for insureds' prescription drugs. *Cf. Midwestern Midget Football Club Inc. v. Riddell, Inc.*, No. 2:15-00244, 2016 WL 3406129, at *7 (S.D. W. Va. June 17, 2016) (distinguishing *Employer Teamsters-Local* where the complaint plainly alleged misleading statements and purchases). *Ash v. Allstate Ins. Co.,* No. 12-1533, 2013 WL 5676774, at *5 (W. Va. Oct. 18, 2013), is distinguishable because there, "[f]rom the face of petitioner's complaint, it [was] clear that his unjust enrichment claim arises from an express contract" and the plaintiff's insurance contract interpretation had been rejected in a prior case that had res judicata effect.

[37]  Marketing Defendants, through ellipses, deleted the qualifier "*per se*" from a quote in a case addressing the statute of limitations applicable to conspiracy. Mfr. Mem. at 11 (deleting the words "*per se*" from a sentence in *Dunn v. Rockwell,* 689 S.E.2d 255, 269 (W. Va. 2009)). *See Proffitt v. Greenlight Financial Services,* No. 2:09-1180, 2011 WL 1485576, at *4 (S.D. W. Va. April 19, 2011) (rejecting argument that *Dunn* prohibits civil conspiracy as a cause of action) (citation omitted); *Holmes v. Runyan & Assoc., Inc.*, No. 2:09-0679, 2010 WL 2218698, at *3 (S.D. W. Va. June 2, 2010) ("The language in *Dunn* does not suggest that civil conspiracy is not a permissible cause of action generally.").

[38]  In fact, one of the decisions cited by the Marketing Defendants explains that, "West Virginia recognizes a cause of action for civil conspiracy." *Bennett v. Skyline Corp.*, No. 1:14CV129, 2014 WL 4996275, at *7 (N.D. W. Va. Oct. 7, 2014) (citing *Kessel,* 511 S.E.2d at 753). Decisions cited by the Pharmacy Defendants expressly

28

year rejected a defendant's argument that a civil conspiracy claim was allegedly inseparable from the underlying torts, explaining that, "[t]he fact that a civil conspiracy claim requires an underlying tort or harm resulting from the conspiracy does not make it any less a claim that can be disposed of separately from the remaining causes of action." *Jane Doe-1,* 801 S.E.2d at 458. The court cited Ohio jurisprudence in support of the reasoning that, "'[w]hen the mischief is accomplished, the conspiracy becomes important, as it affects that means and measure of redress;' … [A] conspiracy claim 'enlarge[s] the pool of potential defendants from whom a plaintiff may recover damages and, possibly, an increase in the amount of those damages[.]'" *Id.* (quoting *Gosden v. Louis,* 687 N.E.2d 481, 497-98 (Ohio Ct. App. 1996); brackets in *Jane Doe-1*).

## 2. Defendants Improperly Heighten the Pleading Standard.

As explained in previous briefing [Summit Opp. Mem. at 99-100], Defendants improperly assert a heightened pleading standard. Conspiracy is not among the categories subject to heightened pleading pursuant to Federal Rule of Civil Procedure 9(b), which requires that fraud and mistake be stated with particularity *but* that malice, intent, knowledge and other mental conditions "may be alleged generally." Accordingly, courts do not require that averments of conspiracy meet the heightened pleading standard of Rule 9(b).[39]

---

recognize that, under West Virginia case law, a corporation can "be sued for torts such as civil conspiracy." *Ridgeway Coal Co., Inc. v. FMC Corp.,* 616 F. Supp. 404, 409 (S.D. W. Va. 1985); *see also Hays v. Bankers Trust Co. of California,* 46 F. Supp. 2d 490, 497-98 (S.D. W. Va. 1999) (denying summary judgment on civil conspiracy claim and citing *Kessel*).

[39] *See Alig v. Quicken Loans, Inc.,* No. 5:12-cv-114 *et al.,* 2015 WL 13638324, at *4 (N.D. W. Va. Feb. 18, 2015) ("Although Hyett states that conspiracy claims must meet the heightened pleading standard of Fed. R. Civ. P. 9(b), the authority Hyett relies upon does not address this issue. . . . A review of the decisions in *Ash* and *Dixon* also fail to support this proposition.") (citing *Ash v. Allstate Ins. Co.,* No. 12-1533, 2013 WL 5676774, at *5 (W. Va. Oct. 18, 2013) (unpublished); *Dixon v. American Indus. Leasing Co.,* 253 S.E.2d 150, 152 (W. Va. 1979)).

Contrary to the Distributor Defendants' suggestion [Dist. Mem. at 9], the court in *Stratton v. Arch Coal, Inc.,* No. 5:16-cv-12204, 2017 WL 2312840, at *5 (S.D. W. Va. May 26, 2017), did not state that civil conspiracy must be pled with particularity; rather, the *Stratton* pleadings failed for the distinguishable reason that, "at no point [did] the Plaintiff allege any agreement between the named Defendants wherein they attempt to accomplish some purpose, lawful or unlawful." Nor does the decision in *Ash v. Allstate Ins. Co.,* 2013 WL 5676774, at *5, require that conspiracy be pled with particularity; instead, the court stated that at least two persons must conspire and that "at least circumstantial evidence" of the same objective and agreement is required. Similarly, in *Wenmoth v. Duncan,* No. 3:08-CV-182, 2009 WL 2707579, at *5 (N.D. W. Va. Aug. 26, 2009), *aff'd per curium,* 382 F. App'x 271 (4th Cir. 2010), the court did not require particularity, but rather found that, "[a]t best the plaintiff offers speculation and conjecture, which is not sufficient." Finally, the decision in *Heavener v. Quicken Loans, Inc.,* No. 3:12-CV-68, 2012 WL 13028627, at *3 (N.D. W. Va. Nov. 7, 2012), may have found that fraud and false representations should be stated with particularity, but as to how the parties conspired, the court's criticism was that the plaintiff alleged "mere legal conclusions rather than facts." In short, Defendants' argument incorrectly conflates fraud with conspiracy.

### 3. The SAC Properly Pleads a Civil Conspiracy as Defined in West Virginia Jurisprudence.

"A claim for civil conspiracy under West Virginia law is a 'combination to commit a tort.'" *Roney v. Gencorp*, 431 F. Supp. 2d 622, 637 (S.D. W. Va. 2006) (quoting *Hays*, 46 F. Supp. 2d at 497). A civil conspiracy is actionable if "defendants have committed some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff." *Kessel*, 511 S.E.2d at 754 (quotation marks and citations omitted); *see also Dixon*, 253 S.E.2d at 152 ("a civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means"). "Additionally, individuals who have conspired

30

with one another to orchestrate and/or carry out a fraudulent plan or scheme can be held liable for their conduct." *Kessel*, 511 S.E.2d at 754. Conspiracy is a fact issue appropriate for jury resolution.[40]

The SAC contains numerous paragraphs setting forth the distribution combination as to all Defendants. [SAC ¶¶ 565-584, 712-718, 855-886, 1008-1022] Defendants engaged in a civil conspiracy to unlawfully and tortiously market and distribute opioids, including through failure to abide by their prevention and monitoring duties, misrepresentation, and fraud. [SAC ¶¶ 1009-1013]   Here, "each Defendant acted directly against their commercial interests in not reporting the unlawful distribution practices of their competitors to the authorities, which they had a legal duty to do." [SAC ¶ 1016] Defendants' combined efforts to inflate the opioid quotas – in contravention of their legal duties – are detailed in the SAC. [SAC ¶¶ 477, 493-551] Plaintiff further describes how Defendants, through their participation in trade associations, worked together to mislead the public regarding Defendants' commitment to complying with their legal obligations and safeguarding against diversion. [SAC ¶¶ 557-58, 560] As additional examples of the raft of conduct chronicled in the SAC, the Defendant co-conspirators deliberately concealed their knowledge of each other's wrongdoing. [SAC ¶¶ 721-23] These detailed allegations exceed far beyond the parallel acts consistent with marketplace competition at issue in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See also* Summit Opp. Mem. at 102-05 (listing additional allegations also contained in Cabell County SAC).

Finally, the Pharmacy Defendants repeat the inaccurate argument that the SAC omits allegations against them and solely pertains to the Marketing Defendants. *See* Pharm. Mem. at 12. This contention ignores allegations specific to the pharmacies and their wrongdoing [*e.g., inter alia*, SAC ¶¶

---

[40]  *See generally, e.g., Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 542 (1954) (evidence "raised fact issues requiring the trial judge to submit the issue of conspiracy to the jury"); *Frey & Son v. Cudahy Packing Co.*, 256 U.S. 208, 210 (1921) ("whether there existed an unlawful combination or agreement between the manufacturer and jobbers was a question for the jury to decide"); *Windsor Theatre Co. v. Walbrook Amusement Co.*, 189 F.2d 797, 798 (4th Cir. 1951) ("Whether a conspiracy in restraint of trade exists is a question of fact."); *Knapp v. Americredit Financial Services, Inc.*, 245 F. Supp. 2d 841, 853 (S.D. W. Va. 2003) (denying summary judgment and stating that conspiracy was a jury issue).

482, 557, 565-617, 673, 678-679], and allegations including the pharmacies [*e.g., inter alia* SAC ¶¶ 465, 468-471, 494-497, 520-524, 557-558, 712-718, 1008-1022]. Among other things, the pharmacies participated with the other Defendants in the financially incentivized, improper exchange of information. [SAC ¶¶ 495, 565] The national pharmacy chains "were keenly aware of the oversupply" and in breach of mandatory duties "participate[d] in the oversupply" for profit and provided the other Defendants with data. [SAC ¶¶ 565, 568] The Pharmacy Defendants also failed to use data available to them to identify doctors who were writing suspicious orders, even while maintaining extensive data on the opioids that they distributed and dispensed. [SAC ¶¶ 568, 580] In short, the SAC includes descriptions of the pharmacies' knowing participation in the exchange of information with other Defendants, and the abdication of mandatory duties, comprising the wrongful distribution of dangerous drugs on a massive scale nationally, and specifically in Cabell County, West Virginia.

## II.    Defendants' Other Arguments for Dismissal of Multiple Claims Also Lack Merit.

### A.    Plaintiff Has Standing to Bring its Claims.

The Defendants contend that Plaintiff lacks standing to bring its claims, incorporating their arguments in the Summit County case that a plaintiff such as the County may not regulate matters of "statewide concern." [Mfr. Mem. at 1-2, Pharm. Mem. at 2-3] Plaintiff incorporates Summit's response herein. [Summit Opp. at 105-114] Plaintiff also incorporates its response to Cardinal Health's separately filed Motion to Dismiss [ECF No. 579] which will be filed contemporaneously with this brief. It is clear that the Defendants' argument misapprehends both West Virginia law and the Plaintiff's claims.

In this case, Plaintiff's standing to bring the claims in the SAC is specifically granted by law. Counties are explicitly vested with the power of "superintendence and administration of the internal

police and fiscal affairs of their counties."[41] West Virginia Constitution Art. IX. Indeed, Counties are specifically "authorized to enact ordinances, issue orders and take appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance." W. Va. Code § 7-1-3kk. In this case, Plaintiff passed a resolution declaring the unlawful distribution of prescription pain pills a public nuisance and brought this suit against the Defendants seeking damages to eliminate the hazard to public health and safety as well as to abate, or cause to be abated, the public nuisance. Plaintiff not only seeks to abate the public nuisance but also seeks to recover damages for costs that it has sustained as a direct result of the Defendant's activities. Plaintiff's action relates directly to the County's power "of superintendence and administration of the internal police and fiscal affairs" of the County.

The Defendants' claim that the Plaintiff cannot rely on its general grant of authority to abate nuisances under the statute relies on cases that are clearly distinguishable. In *EQT Prod. Co. v. Wender*, 191 F. Supp. 3d 583, 588 (S.D. W. Va. 2016), the natural gas companies brought action against county commissioners, seeking declaration of preemption and a permanent injunction to enjoin enforcement of county ordinance prohibiting storage of wastewater. *Id.* at 592. The County Commission had passed an ordinance which effectively outlawed horizontal drilling anywhere in Fayette County. *Id.* The Court recognized that "'the fact that the state has entered into the field of regulating [particular conduct] by license' does not preclude local governments from also licensing such conduct so long as the local ordinance 'conforms with, and is not in conflict with[,] state law.'" *Id.* at 597 (cit. om.); *see also City of Morgantown v. Nuzum Trucking Co.*, 786 S.E.2d 486 (W. Va. 2016). However, the Court noted that "[w]hen a municipal ordinance is opposed to the policy of the state in relation to the subject-matter thereof and in conflict with the statute of the state in relation thereto, the ordinance is void to the

---

[41] *See also* Plaintiff's Response to Cardinal Health's Motion to Dismiss (refuting the claim that the County is an agent of the State).

extent of its conflict with the statute and should not be enforced." *EQT Prod. Co.,* 191 F. Supp. 3d at 599.

In this case, the Plaintiff is not seeking to legislate "in conflict with the State," rather, the Plaintiff is seeking to abate the public health and safety hazards in accordance with state law. The Plaintiff is not seeking to ban the lawful distribution of opioids. Defendants' activities are pled to be in contravention of state and federal law. It is that illegal activity that is the basis for the claims here.

Contrary to the Defendants' claims, neither the CSA nor the WVCSA preclude the County from pursuing the causes of action set forth in these matters under the authority provided under West Virginia Code § 7-1-3kk. Nor does the alleged "comprehensive regulatory scheme" occupy the field of prescription drug regulation so as to preempt any attempts at local regulation, including through litigation. Rather, both the CSA and WVCSA recognize specifically recognize that they are not exclusive remedies. The CSA, 21 U.S.C.A. § 903, explicitly preserves state law:

> [n]o provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

Similarly, the WVCSA specifically provides that any penalty imposed for violation of the WVCSA is "in addition to, and not in lieu of, any civil or administrative penalty or sanction otherwise authorized by law." W. Va. Code § 60A-4-404. Thus, the fact that the U.S. Attorney General and the West Virginia Board of Pharmacy are granted authority over the application of the provisions, and administrative promulgation of rules, regulations and other procedures under the CSA (21 U.S.C.A. §§ 811, 821, 871) and WVCSA (W. Va. Code § 60A-2-201) does not preclude the Plaintiff from filing causes of action authorized under W. Va. Code § 7-1-3kk.

The Defendants' reliance on *City of Huntington v. State Water Comm'n*, 73 S.E.2d 833 (W. Va. 1952) and *Delardas v. Morgantown Water Comm'n*, 137 S.E.2d 426 (W. Va. 1964) is misplaced. *City of*

*Huntington* involved an order from the State Water Commission requiring "a municipal corporation to cease and desist from polluting the waters of certain designated rivers" and "to install, use and operate a practical and reasonably available system or means to reduce such pollution to an acceptable minimum." *Id.* at 835. *City of Huntington* dealt with the police power of the State to compel municipalities "to perform certain duties of state concern" as expressed by state law enactments that would preempt *conflicting* municipal enactments. *Id.* at 842. Similarly, *Delardas* involved a conflict between state law which allowed the Public Service Commission to promulgate sewer rates upon filing with the commission and a municipal ordinance which required a special election first be held. *Id.* at 428-29. *Delardas* centered on the Public Service Commission's vested jurisdiction and powers to regulate and control the public utilities in the State, including ones operated by municipalities. The court held that, when there was a conflict, the municipality's laws would have to give way to state law. Here, the Plaintiff's exercise of its legislatively granted power is consistent with and not in conflict with state law and policy.

The cases relied on by the Defendants do not stand for the proposition that a County does not have standing to pursue claims that fall squarely within the powers and authority granted to it by the Constitution and Legislature. Contrary to Defendants' claims, the Plaintiff's lawsuit does not usurp any statewide authority vested in the State. Neither is Plaintiff's standing impacted by the State Attorney General's prior lawsuits. The Plaintiff incorporates its response to Cardinal Health's Motion to Dismiss which provides a detailed discussion of the Plaintiff's authority to bring suit in contrast with the Attorney General's power and authority.

### B.    Plaintiff's State Law Claims Are Not Preempted.

The Manufacturing Defendants' argument that Plaintiff's state law claims are preempted incorporates the argument asserted in their brief in Summit County. [Mfr. Mem. at 5] Plaintiff incorporates Summit's response as if set forth herein. [Summit Opp. Mem. at 114-122]

**C.**     **The Free Public Services Doctrine Does Not Bar Plaintiff's Claims.**

The Defendants next argue that Plaintiff's claims are barred by the "free public service

doctrine" which they claim requires the Plaintiff's taxpayers to bear the burdens of Defendants'

decision to profit from illegally flooding the County with opioids. [Dist. Mem. at 10-11; Pharm. Mem.

at 14-15] Plaintiff incorporates the City of Chicago's response on this issue. [Chicago Opp. at 36-37]

Separate and apart from the City of Chicago response, in this case, the free public services

doctrine, or the municipal cost recovery rule as it also known, is entirely inapplicable because it has

never been accepted in West Virginia. Indeed, in the cases brought against the Distributor Defendants

by the State of West Virginia, the trial court rejected motions to dismiss based on this doctrine. *See,*

*e.g., Morrisey v. Cardinal*, ECF No. 580-7 at 33-34; *Morrisey v. AmerisourceBergen,* 2014 WL 12814021 at 34-

36.

These decisions are part of a trend rejecting the application of the free public services doctrine.

A number of cases have rejected the doctrine as an absolute bar. *James v. Arms Tech., Inc.*, 820 A.2d 27,

49 (N.J. App. Div. 2003); *Cincinnati v. Beretta U.S.A. Corp.,*768 N.E.2d 1136, 1149 (Ohio 2002); *City of*

*Gary ex rel. King v. Smith & Wesson Corp.,* 801 N.E.2d 1222, 1243 (Ind. 2003); *City of Boston v. Smith &*

*Wesson Corp.*, No. 199902590, 2000 WL 1473568 (Mass. Super. July 13, 2000). Commentators have

criticized the doctrine on grounds of fairness and equity.[42]  The court in *James v. Arms Tech., Inc.*,

rejected the doctrine in its entirety based on these criticisms:

---

[42] *See* T. Lytton, *Should Government Be Allowed to Recover the Costs of Public Services From Tortfeasors?: Tort Subsidies, the Limits of Loss Spreading, and the Free Public Services Doctrine,* 76 Tulane L. Rev. 727, 728 (2002) (free public services rule "should be eliminated" because it "shields industrial tortfeasors from liability ..., constitutes a tort subsidy to industry and functions as an insurance scheme for industrial accidents paid for by taxpayers."); *id.* at 759 (rule "unjustifiably favors tortfeasors who harm government as compared to those who harm private parties" and then "imposes the losses caused by this favored class of tortfeasors on taxpayers."); *id.* at 766 (with rule industrial tortfeasors have no incentive to purchase general liability insurance to cover the cost of the public services); D. McIntyre, *Tortfeasor Liability for Disaster Response Costs: Accounting for the True Cost of Accidents*, 55 Fordham L. Rev. 1001, 1005-06 (1987) (rule "may not be the most equitable solution to the problem ... in modern society," given the "recent cuts in federal revenue-sharing programs" and "local municipalities ... facing very tight budgets").

> Here, if the City has a worthy claim, application of the Municipal Cost Recovery Rule leaves it without a remedy. If tortious conduct exists, the consequence is that the gun manufacturers are subsidized for their wrongful acts, and the cost of the governmental services must be borne by the taxpayers of the City. This result is fundamentally unfair, given the City's limited resources and strained ability to provide other essential services to its citizens. Application of the rule also serves as a disincentive; if culpable, the insulated defendants have no reason to obtain liability insurance to cover the cost of their conduct, or to take reasonable measures to eliminate, or at least reduce, the harm resulting from the use of their product.

*James*, 820 A.2d at 49. Two other courts addressing claims by municipalities brought against some of these same Defendants arising out of the opioid crisis have rejected the doctrine. *See City of Everett v. Purdue Pharma L.P.*, No. C17-209RSM, 2017 WL 4236062 (W.D. Wash. Sept. 25, 2017); *In re Opioid Litig.*, No. 400000/2017, 2018 WL 3115102, at *10 (N.Y. Sup. Ct. June 18, 2018).

Contrary to Defendants' claim, West Virginia did not adopt the doctrine in *State v. St. Clair*, 355 S.E.2d 418 (W. Va. 1987). The *St. Clair* court's refusal to allow the recovery of the costs of incarceration in a county jail prior to conviction in a criminal case does not constitute the adoption of the free public services doctrine. The order being appealed in *St. Clair* was the refusal of the court below to allow probation until the incarceration costs were paid. *Id.* at 419. The costs become a criminal fine. While the court resolved the issue on a statutory basis, it avoided the constitutional questions that would have been raised by the State's position in *St. Clair. Id.* at 419, n.1. Finally, the doctrines of strict construction applicable to criminal statutes and rules are simply not comparable to the broad construction applied to common law claims.[43]

Moreover, beginning with *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322 (9th Cir. 1983) governmental claims for public nuisances have not been subjected to this restrictive doctrine: "Recovery has also been allowed where the acts of a private party create a public nuisance

---

[43] *Compare State v. Sears,* 468 S.E.2d 324, 334 (W. Va. 1996) (rule of lenity requires doubt as to legislative intent of criminal statute should be resolved in favor of lenity for the accused) *with Patrick v. Sharon Steel Corp.*, 549 F. Supp. 1259, 1263 (N.D. W. Va. 1982) (noting broad construction applied to civil nuisance claim).

which the government seeks to abate." 719 F.2d at 324; *see City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1124 (Ill. 2004); *City of Philadelphia v. Beretta U.S.A. Corp.,* 277 F.3d 415, 420 n.4 (3rd Cir. 2002); *James*, 820 A.2d at 49 ("the Municipal Cost Recovery Rule does not apply to cases, as here, where a municipality seeks to recover damages for the cost of abating a nuisance"); *State v. Lead Ind. Assn., Inc.*, No. 99-5226, 2001 WL 345830, at *5 (R.I. Super. Apr. 2, 2001) (refusing to apply free public services doctrine to nuisance claims by Attorney General arising out of the use of lead paint); *see also* McIntyre, *supra,* 55 Fordham L. Rev. at 1023 & n. 129.

Similarly, the rule also has been rejected when, as is the case here, the governmental plaintiff is proceeding under statutory authorization. *City of Flagstaff*, 719 F.2d at 324 (citing cases); *see also United States v. Chesapeake & Ohio Railway Co.,* 130 F.2d 308 (4th Cir. 1942) (permitting United States as plaintiff to recover costs of putting out fire caused by railroad under authorization of Virginia statute); *Kodiak Island Borough v. Exxon Corp.,* 991 P.2d 757, 761 (Alaska 1999). Contrary to the Defendants' arguments, W. Va. Code § 7-1-3kk specifically authorizes the County to take "appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance."

Finally, courts reject the application of the free public services doctrine where, as is the case here, the municipality "claims a repeated course of conduct on defendants' part, requiring [it] to expend substantial governmental funds on a continuous basis." *James*, 820 A.2d at 48-49; *see also Cincinnati v. Beretta,* 768 N.E.2d at 1149; *City of Boston,* 2000 WL 1473568, at *8.

### D.     The Economic Loss Doctrine Does Not Bar Plaintiff's Claims.

Defendants seek dismissal based on the economic loss rule. [Dist. Mem. at 9-10; Mfr. Mem. at 5; Pharm. Mem. at 15-16] Plaintiff incorporates the responses of Summit and City of Chicago on this issue. [Summit Opp. Mem. at 21-23, 85-88; and Chicago Opp. Mem. at 37-38]

Defendants rely on the opinion of the Supreme Court of Appeals of West Virginia in *Aikens v. Debow,* where a motel and restaurant operator sued a truck driver and his employer seeking damages for loss of income, which the operator of the motel and restaurant claimed were the result of a bridge closure caused by repairs after it was struck by the defendants' truck. 541 S.E.2d 576 (2000). The court rejected the claims, holding that under the economic loss rule "[a]n individual who sustains economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual." *Id.* at Syl. Pt. 9. *Aikens'* negligence claims based on an interruption in commerce are clearly different than the losses alleged here.

First, as *Aikens* itself held, the economic loss rule does not apply to nuisance claims. *Id.* at 591 ("We also emphasize that the holding of this case applies strictly to plaintiffs alleging purely economic loss from an interruption in commerce caused by another's negligence. This opinion therefore does not encompass, and has no effect upon, our prior rulings regarding . . . nuisance law.").[44] Thus, the damages sought by the Plaintiff's nuisance claim are not subject to dismissal on this basis.

Second, the doctrine has no application to the Plaintiff's other claims, as the rule is "strictly" limited "to plaintiffs alleging purely economic loss from an interruption in commerce caused by another's negligence." *Id.* at 591. Here, Plaintiff's damages do not result from any interruption in commerce. The doctrine is a means of limiting the duty required of certain potential tortfeasors, but

---

[44] *See also City of Boston, supra,* at *9-10 ("Defendants' argument that the economic loss rule requires dismissal of the claims for public nuisance and unjust enrichment is without merit, as the rule does not appear to apply to such claims."); *cf. Cleveland v. JP Morgan Chase Bank, N.A.,* 2013-Ohio-1035, ¶ 28, 2013 WL 1183332 (Ohio Ct. App.) ("The [economic loss]doctrine does not present a strong case for application to the City's [public nuisance] suit where the duty alleged to have been breached is not related to a contractual relationship and the City has alleged particularized damages associated with decreased tax revenue and increased costs of safety services."); *Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 419 (Tex. 2011) (economic loss rule does not apply in nuisance actions).

it does not limit damages recoverable in an otherwise proper negligence action. *Brian & Christie, Inc. v. Leishman Elec., Inc.*, 244 P.3d 166, 172 (Idaho 2010). Thus, the economic loss doctrine "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff." *Giles v. Gen. Motors Acceptance Corp.,* 494 F.3d 865, 879 (9th Cir. 2007).

This same argument was rejected by the circuit court in the cases brought by the West Virginia Attorney General against Cardinal and AmerisourceBergen. *Morrisey Order*, ECF No. 580-7 at 34-37; and *Morrisey v. AmerisourceBergen Drug Corp., et al*, 2014 WL 12814021 at 36-39. A New York court has recently rejected the application of the economic loss doctrine in a similar case brought by counties within the State of New York. *In re Opioid Litigation*, Suffolk County, NY, No. 400000/2017, 2018 WL 3115102 at 27 (Order dated June 18, 2018).

### E.    Plaintiff's Claims Are Not Barred by the Statute of Limitations.

The Manufacturer Defendants argue that the Plaintiff's claims are barred by the statute of limitations and incorporate the arguments from Summit County. [Mfr. Mem. at 12-24] Plaintiff incorporates Summit County's response on this issue. [Summit Opp. Mem. at p. 122-128]

West Virginia law controls the question of when the statute of limitations begins to run. *Patrick v. Sharon Steel Corp.*, 549 F. Supp. 1259, 1263 (N.D. W. Va. 1982). West Virginia has set forth the following five-step analysis to determine whether a cause of action is time-barred:

> [f]irst, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the

40

court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

*Dunn v. Rockwell*, 689 S.E.2d 255, Syl. Pt. 5 (W. Va. 2009). The resolution of steps two through five in this case involve questions of material fact that will need to be resolved by the trier of fact. Thus, Defendants' arguments should be dismissed on that basis alone.

Furthermore, with respect to co-conspirators, the general rule in West Virginia is that if the statute of limitations is tolled as to one defendant in a civil conspiracy, it is tolled as to all alleged co-conspirators. *Dunn*, 689 S.E.2d at 273.

1.     **There is No Statute of Limitations for Unabated Nuisance Claims.**

The statute of limitations which governs public nuisance in the State of West Virginia "does not accrue until the harm or endangerment to the public health, safety and the environment is abated."[45] Plaintiff alleges the nuisance has not been abated. [SAC ¶ 918] In order for Defendants to prevail on this legal issue, they must establish that the prescription opiate and heroin epidemic in the County is over and/or has been abated. Neither reality nor the record suggest that such is the case. At the very least, a material issue of fact exists which is sufficient to deny summary judgment.

2.     **Plaintiff Has Adequately Pleaded Fraudulent Concealment.**

Plaintiff's SAC adequately pleaded fraudulent concealment. *See* § I.D. above. Plaintiff incorporates Summit's response on this issue as set forth in the Summit Opp. Mem. at 124-125. Like

---

[45] Syl. pt. 11, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901 (W. Va. 1997); *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 762 (S.D. W. Va. 2009), *aff'd in part, appeal dismissed in part*, 636 F.3d 88 (4th Cir. 2011) (noting that tortious "*refusal to remediate* tolls the statute of limitations" only if such behavior constitutes tortious conduct.") (emphasis added)).

Summit, Plaintiff has pleaded more than sufficient facts to support tolling the statute of limitations based on Defendants' fraudulent concealment.[46]

### 3. The Discovery Rule Applies to Plaintiff's Claims.

The "discovery rule" is generally applicable to all torts unless there is a clear statutory prohibition. In tort actions, absent a clear statutory prohibition, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury. Syl. pts. 2-3, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009).

Application of the second element forecloses dismissal in favor of Defendants. The identity of the manufacturers and wholesale distributors who engaged in commerce, let alone the conduct of those that may have engaged in unlawful conduct, was not public knowledge. This information was secreted in two locations: (1) the DEA ARCOS database; and (2) the Defendants' Suspicious Order Monitoring System (SOMS). Both the DEA and Defendants have jealously guarded the information and refuse to disclose the same.

Plaintiff did not know (and did not have the means to know) the identity of the entity who owed Plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, or that the conduct of that entity has a causal relation to the injury prior to the expiration of any statute of limitations. In fact, but for the investigative journalism of Pulitzer Prize winner Eric Eyre of the Charleston Gazette, the identity of those who engaged in wholesale distribution and the volume

---

[46] [Cabell SAC ¶¶ 721-729; ¶ 495; ¶ 515; ¶¶ 772-74; ¶ 778; ¶ 767; ¶¶ 318-361; ¶¶ 362-394; ¶ 540; ¶¶ 274-315; ¶¶ 559-564; ¶ 560 n. 219; ¶¶ 724-25]

of prescription pain pills sold in southern West Virginia would still be unknown. *See* E. Eyre, *Drug Firms Poured 780M Painkillers Into WV Amid Rise Of Overdoses*, Charleston Gazette (December 17, 2016).

The Defendants cannot escape the application of the discovery rule in this case by reference to what they describe as publicly available material (FDA's regulatory actions, articles related to opioids and opioid addition, and marketing efforts regarding opioids) contained within Plaintiff's SAC. [Mfr. Mem. at 14] Under *Dunn,* this issue should be submitted to the finder of fact to determine whether this information was of such a public nature that a reasonable person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.

### 4. Equitable Estoppel Applies to Plaintiff's Claims.

West Virginia has held that "estoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentations or concealment of material fact." *Bradley v. Williams*, 465 S.E.2d 180, 185 (W. Va. 1995) (cit. om.). Plaintiff's SAC has pleaded more than sufficient facts to support tolling the statute of limitations based on equitable estoppel. [*See, e.g.,* SAC ¶¶ 721-729] As argued above, Plaintiff's inclusion of what the Defendants deem "publicly available" documents within the SAC does not preclude the application of the doctrine of equitable estoppel to Plaintiff's claims. Under *Dunn*, this matter should be submitted to the finder of fact to determine whether a reasonable person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action.

### 5. The Continuous Violations Doctrine Applies to Plaintiff's Claims.

Plaintiff incorporates Summit County's response on this issue. [Summit Opp. Mem. at 126-27] West Virginia has adopted the continuing tort theory, which provides, "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." *Graham v. Beverage*, 566 S.E.2d 603, Syl. Pt. 11 (W. Va. 2002).

The continued tortious and unlawful conduct by the Defendants has caused a repeated and continuous injury. The tort is not completed and the wrongdoing and unlawful activity by Defendants has not ceased. The public nuisance remains unabated. The conduct causing the damages remains unabated. The damages have not occurred all at once but have continued to occur and have increased as time progresses.

The case relied on by Defendants is clearly distinguishable. *Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc.*, 640 S.E.2d 102, 110 (W. Va. 2006) involved "the conversion of multiple, separate negotiable instruments" which the court concluded was unlike the circumstances in *Graham*, "where wrongful conduct created a specific continuing injury, which was then perpetuated by the tortfeasor's failure to take corrective action." The Defendants cannot escape the application of the continuous violation doctrine by claiming that different defendants engaged in different conduct at different periods of time. The Defendants' argument not only mischaracterizes the Plaintiff's allegations but attempts to self-limit their misconduct to discrete acts alleged in the SAC which were merely representative examples of a complex and far-reaching fraudulent scheme rather than isolated acts. The Defendants' conduct was well orchestrated and continuous, and it continues to harm Plaintiff, as the opioid epidemic is ongoing.

## F.     Plaintiff Adequately Pled Claims Against the Pharmacy Defendants.

The Pharmacy Defendants claim that Plaintiff has not adequately plead claims against them. [Pharm. Mem. at 3-4] This claim rings hollow. *See* §§ I.C.2 and I.F.3, above. The allegations set forth in Plaintiff's SAC ¶¶ 569-617 are not vague, conclusory, generic boilerplate, or "naked assertions." [Pharm. Mem. at 4] Rather, the allegations set forth a detailed description of the Pharmacy Defendants' participation as distributors in the creation of the opioid epidemic. The Pharmacy Defendants are a subset of the Distributor Defendants and subject to the same duties. [SAC ¶¶ 86-91, 94, 570] Although sued as distributors, the Pharmacy Defendants had information available to them beyond what other

distributors may have had: as alleged in the SAC, the Pharmacy Defendants developed and maintained extensive data on the opioids they distributed, thus, having direct knowledge of patterns and instances of improper distribution, prescribing, and use of prescription opioids. The discrete acts alleged in the SAC were representative examples of the Pharmacy Defendants' failure to take meaningful action to halt the diversion of opioids despite their knowledge of it.

Moreover, the transactional ARCOS data was produced to Plaintiff just prior to the filing of the SAC, and the data had not yet been fully reviewed and synthesized. Discovery is ongoing. The Pharmacy Defendants are attempting to impose a heightened pleading standard that is not warranted under either *Iqbal* or *Twombly*.

### 1.    Plaintiff's Claims Are Not Barred by W.Va. Code § 30-5-21.

The Pharmacy Defendants seek to evade liability based on W.Va. Code § 30-5-21 which provides that all persons "shall be responsible for the quality of all drugs" sold or dispensed "with the exception of those sold in or dispensed unchanged from the original retail package of the manufacturer, in which event the manufacturer shall be responsible." [Pharm. Mem. at 10-11] The Distributor Defendants also incorporate this argument. [Dist. Mem. at 12, n. 9] While Plaintiffs bring claims against the Pharmacy Defendants, they do so as Distributor Defendants.  None of the current Pharmacy Defendants sells at retail or is being sued for their sales at retail.   Instead, they act as distributors to their retail subsidiaries and are being sued solely in that role.

West Virginia Code § 30-5-21 is not applicable to Plaintiff's claims as it relates to the "quality" of drugs sold or dispensed. Plaintiff's claims relate to the sheer "quantity" of opioids distributed. Plaintiff's claims against the Pharmacy Defendants are not related to the "quality" of the drugs, thus, the exception does not apply. The cases relied on by the Defendants are clearly distinguishable as they all involved personal injury, product liability claims pertaining to the "quality" of the drugs sold or dispensed. *Thomas v. Wyeth*, No. 5:05-0094, 2005 WL 3754203, at *1 (S.D. W. Va. June 16, 2005)

(plaintiffs alleged that the HRT caused them to develop serious illnesses); *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395 (S.D. W. Va. 2005) (plaintiffs alleged counterfeit tablets of cholesterol-reducing drug caused injuries); *Baker v. Purdue Pharma L.P.*, No. 1:01-0553, 2002 WL 34213424 (S.D. W. Va. Mar. 28, 2002) (plaintiffs developed addiction to OxyContin); *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001) (plaintiffs alleged personal injuries from the use of Rezulin). Claims against pharmacists arising out of theories other than drug quality are not barred by the provision. *Walker v. Rite Aid of W. Virginia, Inc.*, 2:02-1208, 2003 WL 24215831 (S.D. W. Va. Oct 14, 2003) (failure to warn claim by plaintiff who alleged personal injury from use of Aleve not within statute's bar); *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 406 (S.D. W. Va. 2005) (same; prescription drug); *see also Hartman v. Caraco Pharm. Labs., Ltd.*, 789 F. Supp. 2d 701, 706 (S.D. W. Va. 2011) (rejecting fraudulent joinder challenge to failure to warn claim against pharmacy).

Contrary to Defendants' assertion, the fact that Plaintiff has alleged that opioids are dangerously addictive and unsafe for long-term use does not convert this case to one involving the "quality" of the drug for purposes of triggering immunity. The plain, unambiguous language of W. Va. Code § 30-5-21 is susceptible of no other interpretation than it is limited to cases involving the "quality" of the drugs.[47] *See Walker*, supra at *5 (court found that the immunity was not applicable to failure to warn cases on the basis that had the Legislature intended to do so, it could have specified that the seller is relieved from all forms of products liability in connection with the sale of drugs, rather than simply for liability relating to the quality of the drug sold). Here, the claims against the Pharmacy Defendants arise out of their duties to prevent diversion as distributors of controlled substances rather than the quality of the drugs sold at retail. Thus, Plaintiff's allegations against the Pharmacy and Distributor Defendants are predicated on the "quantity" distributed, the failure to identify suspicious

---

[47] Indeed, W. Va. Code § 30-5-10(c) explicitly imposes a duty to warn on the part of a pharmacist when, as here, the medicine is "poisonous, deleterious, or habit-forming."

orders, and the failure to provide effective controls and procedures to guard against diversion of controlled substances. Plaintiff's SAC clearly contains facts and allegations against the Pharmacy and Distributor Defendants which take their action outside any protections afforded by W. Va. Code § 30-5-21.

> **2. Plaintiff's Claims Are Not Barred by the West Virginia Professional Liability Act, W.Va. Code § 55-7B-6.**

Plaintiff's claims are not barred by the West Virginia Professional Liability Act, W. Va. Code § 55-7B-6, as the Plaintiff has not brought a medical professional liability action against the Pharmacy Defendants.[48] West Virginia Code § 55-7B-2(i) defines medical professional liability as:

> any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

West Virginia Code § 55-7B-2(e) *et seq.* defines "health care" to mean: "(1) any act, service or treatment provided … in furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment"; "(2) any act, service or treatment performed …, or which should have been performed …,by any health care provider … to or on behalf of a patient during the patient's medical care …"; and "(3) the process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging and supervision of health care providers."

As set forth in Plaintiff's SAC, Plaintiff's claims against the Pharmacy Defendants are not based on the provision of "health care" and do not qualify as medical professional liability actions. As noted above, Plaintiff has sued the Pharmacy Defendants only in their capacity as distributors and not

---

[48] Pharmacies were not included in the definition of "health care facility" prior to June 29, 2017. *See, e.g. Phillips v. Larry's Drive-In Pharmacy*, 647 S.E.2d 920, Syl. Pt. 7 (W. Va. 2007). As such, claims based on conduct occurring prior to this amendment are not subject to the MPLA.

Case: 1:17-md-02804-DAP  Doc #: 727  Filed:  07/09/18  62 of 64.  PageID #: 16778

as retail pharmacies. [SAC ¶¶ 86-91, 94, 570] Again, Plaintiff's allegations against the Pharmacy Defendants are based on their duties as distributors and predicated on the "quantity" distributed, the failure to identify suspicious orders, and the failure to provide effective controls and procedures to guard against diversion of controlled substances. Their conduct simply is not the provision of health care under the act. Indeed, the claims asserted against the Pharmacy Defendants are not different from the claims asserted against other Distributor Defendants. The MPLA is simply not applicable, and Plaintiff was not required to comply with the pre-filing requirements set forth in W. Va. Code § 55-7B-6(b).

### G.  Plaintiff's Claim for Punitive Damages Should Not be Dismissed.

The Manufacturer Defendants seek to dismiss Plaintiff's claim for punitive damages on the basis that punitive damages are not an independent cause of action. [Mfr. Mem. at 12] Plaintiff agrees that a punitive damages claim is not a separate cause of action in West Virginia. Plaintiff pled it in a separate count to both set forth the legal standard and to provide Defendants with clear notice that it was seeking punitive damages. Since the Manufacturer Defendants do not appear to be challenging the Plaintiff's entitlement to punitive damages, "dismissal" serves no purpose. Instead, the Court should deem the punitive damage claim as part of the *ad damnum* section of the SAC.

### CONCLUSION

For the reasons set forth herein, the motions to dismiss should be denied

Respectfully submitted,

Paul T. Farrell, Jr.
Bert Ketchum
**GREENE, KETCHUM, FARRELL,**
**BAILEY & TWEEL, LLP**
419 - 11th Street (25701)/ P.O. Box 2389
Huntington, West Virginia 25724-2389
Tel.: 800-479-0053 or 304-525-9115
Fax: 304-529-3284
paul@greeneketchum.com
bert@greeneketchurn.com

By: */s/ Anthony J. Majestro* .

Anthony J. Majestro
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel.: 304-346-2889
Fax: 304-346-2895
amajestro@powellmajestro.com

48

Russell W. Budd
J. Burton LeBlanc, IV
Laura J. Baughman
S. Ann Saucer
Christine C. Mansour
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 11 00
Dallas, TX 752 19
Tel.: 214-521-3605
Fax: 214-520-1181
rbudd@baronbudd.com
bleblanc@baronbudd.com
lbaughman@baronbudd.com
asaucer@baronbudd.com
cmansour@baronbudd.com

Roland K. Tellis
Mark P. Pifko
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Los Angeles, CA 91436
Tel.: 818-839-2333
Fax: 818-986-9698
rtellis@baronbudd.com
mpifko@baronbudd.com

Michael J. Fuller, Jr.
Amy Quezon
**McHUGH FULLER LAW GROUP, PLLC**
97 Elias Whiddon Rd.
Hattiesburg, MS 39402
Tel.: 601-261-2220
Fax: 601-261-2481
mike@mchughfuller.com
amy@mchughfuller.com

Michael A. Woelfel
**Woelfel & Woelfel**
801 Eighth Street
Huntington, WV 25701
Tel.: 304-522-6249
Fax.: 304-522-9282

***Counsel for Cabell County Commission***

Peter J. Mougey
Troy Rafferty
Page A. Poerschke
Laura S. Dunning
Neil E. "Ned" McWilliams
Jeffrey Gaddy
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Tel.: 850-435-7068
Fax: 850-436-6068
pmougey@levinlaw.com
trafferty@levinlaw.com
ppoerschke@levinlaw.com
ldunning@levinlaw.com
nmcwilliams@levinlaw.com
jgaddy@levinlaw.com

James C. Peterson
R. Edison Hill
Aaron Harrah
**HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC**
NorthGate Business Park
500 Tracy Way
Charleston, WV  25311
Tel.: 304-345-5667
Fax: 304-345-1519
jcpeterson@hpcbd.com
rehill@hpcbd.com
aaron@hpcbd.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of July 2018, I electronically filed the foregoing

as with the Clerk of Court by using the CM/ECF System.

/s/ Anthony J. Majestro

Anthony J. Majestro