UNITED STATES DISTRICT
COURT NORTHERN DISTRICT
OF OHIO EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Cabell County Commission v. AmerisourceBergen Drug Corporation, et al.*<br>*Case No. 17-op-45053* | MDL No. 2804<br><br>Case No. 1:17-md-2804<br>Judge Dan Aaron Polster |

---

**PLAINTIFF CABELL COUNTY COMMISSION'S MEMORANDUM
IN OPPOSITION TO DEFENDANT CARDINAL HEALTH, INC.'S
MOTION TO DISMISS (Doc 579)**

---

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND ...........................................................................................1

ARGUMENT ....................................................................................................................5

I.   Plaintiff's Claims Are Not Barred By *Res Judicata* ..................................................5

   A.  No Privity Exits Between Cabell and the State with Respect to Cabell's Claims ...........5

      1.  West Virginia county commissions are constitutional entities
         separate from the State with independent powers and duties ....................................6

      2.  The WVAG and the State lack the power to represent counties ...............................7

         a.   The County retains the power to abate nuisances...................................8

         b.   The State does not have *parens patriae* power to bring the
            County's claims .......................................................................................9

         c.   The County retains the power to bring its RICO claims ......................10

      3.  The doctrine of "Virtual Representation" does not apply............................................10

   B.  The Claims Are Not Based on the Same Causes of Action .................................12

II.  Plaintiff's Claims Were Not Released ........................................................................13

III. Alternatively, Discovery Should Be Permitted Prior to Ruling On The Motion .................15

CONCLUSION..................................................................................................................15

CERTIFICATE OF SERVICE ...........................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

*Amoroso v. Marion Cty. Comm'n,*
   305 S.E.2d 299 (1983) ............................................................................13

*Beahm v. 7 Eleven, Inc.,*
   672 S.E.2d 598 (W.Va. 2008) ...................................................5, 10, 11

*Blake v. Charleston Area Medical Center, Inc.,*
   498 S.E.2d 41 (W.Va. 1997) ..............................................................11, 12

*City of New York v. Beretta,*
   315 F.Supp.2d 256 (E.D. NY 2004) ......................................................9

*Corte Co. v. Cty. Comm'n of McDowell Cty.,*
   299 S.E.2d 16 (W.Va. 1982) ..................................................................13

*Dillon v. Combs,*
   895 F.2d 1175 (7th Cir. 1990) ...............................................................10

*Fortuna v. Queen,*
   363 S.E.2d 472 (W.Va. 1987) ................................................................14

*Galanos v. National Steel Corp,*
   358 S.E.2d 452 (1987) .......................................................................10, 11

*In re Felton,*
   197 B.R. 881 (N.D. Cal. 1996) .............................................................15

*Nash Cty. Bd. of Educ. v. Biltmore Co.,*
   640 F.2d 484 (4th Cir. 1981) ................................................................12

*People of the State of Illinois v. Life of Mid-America Insurance Co.,*
   805 F.2d 763 (7th Cir. 1986) ................................................................10

*People of the State of N.Y. by Abrams v. Seneci,*
   817 F.2d 1015 (2nd Cir. 1987) ..............................................................10

*Pniewski v. Martorella,*
   Civil Action No. 3:04-0354, (S.D. W.Va. August 25, 2008) 2008 WL 4057523 ..............6

*Pueschel v. United States,*
   369 F.3d 345 (4th Cir. 2004) ................................................................15

*Russo v. Baxter Healthcare Corp.,*
   919 F. Supp. 565 (D.R.I. 1996) ............................................................15

*Satsky v. Paramount Communications, Inc.,*
   7 F.3d 1464 (10th Cir. 1993) ................................................................12

*State ex rel. Discover Fin. Servs., Inc. v. Nibert,*
   744 S.E.2d 625 (W.Va. 2013) ..............................................................7, 9

**TABLE OF AUTHORITIES**
(Continued)

Page

*State ex rel. Morrisey v. West Virginia Office of Disciplinary Counsel*,
764 S.E.2d 769 (W.Va. 2014) ................................................................................ 7, 8

*State ex rel. Riffle v. Ranson*,
464 S.E.2d 763 (W.Va. 1995) .................................................................................. 7

*State of Texas v. Enterprise Companies, Inc.*,
1986 WL 31561 (S.D. Tex. Jan. 7, 1986) ............................................................... 10

*West Virginia Human Rights Comm'n v. Esquire Group, Inc.*,
618 S.E.2d 463 (W.Va. 2005) ............................................................................... 5, 12

**Statutes and Constitutional Provisions**

West Virginia Constitution, art. IX ..................................................................... 4, 6, 12

W.Va. Code § 5-3-1 ................................................................................................... 7

W.Va. Code § 5-3-2 ................................................................................................... 7

W. Va. Code § 7-1-3kk ......................................................................................*passim*

W. Va. Code § 14-2-3 ................................................................................................ 6

W. Va. Code § 16-3-6 ................................................................................................ 8

W. Va. Code § 17-16-1 .............................................................................................. 8

W.Va. Code § 17-17-4 ............................................................................................... 8

W. Va. Code § 17-19-1 .............................................................................................. 8

W. Va. Code § 17-22-22 ............................................................................................ 8

W. Va. Code § 17-23-9 .............................................................................................. 8

W. Va. Code § 17C-3-8 ............................................................................................. 8

W.Va. Code § 22C-12-1 ............................................................................................ 8

W.Va. Code § 22-13-12 ............................................................................................. 8

W. Va. Code § 29-12A-3 ........................................................................................... 13

W. Va. Code § 30-7-14 .............................................................................................. 8

W. Va. Code § 30-7C-13 ........................................................................................... 8

W. Va. Code § 46A-7-101 ......................................................................................... 9

W. Va. Code § 47-18-17 ............................................................................................ 9

W.Va. Code § 60-6-17 ............................................................................................... 8

W. Va. Code § 61-3-47 .............................................................................................. 8

W.Va. Code § 61-9-3 ................................................................................................. 8

**TABLE OF AUTHORITIES**
**(Continued)**

                                                          **Page**

**Rules**

West Virginia Rule of Civil Procedure 19 .................................................................................13

West Virginia Rule of Civil Procedure 20 .................................................................................13

**Treatises**

Restatement (Second) of Judgments § 26 ................................................................................14

iv

# INTRODUCTION

There has been no prior litigation between the Cabell County Commission ("Cabell" or "County") and either Cardinal Health ("Cardinal") or H.D. Smith ("Smith") concerning the opioid crisis. Nevertheless, these two Distributor Defendants (collectively herein "Defendants") contend that the County's suit is barred by *res judicata*, based on a prior settlement between these defendants and the West Virginia Attorney General ("WVAG"). Defendants are incorrect.

In that earlier litigation, Cardinal and other Distributor Defendants sought to convince the WVAG to release claims of West Virginia cities and counties. As a matter of fact, he refused, likely because, as a matter of law, he did not have authority to either represent or bind political subdivisions with respect to their claims. As such, there was no release of Cabell's claims, and thus no *res judicata*. Defendants' Motion to Dismiss [Doc. 579] should be denied.

# FACTUAL BACKGROUND

In late 2016, the WVAG and Cardinal and other Distributor Defendants successfully negotiated a settlement of the WVAG's Boone County Circuit Court case against them. On December 27, 2016 the court ordered the parties to finalize and publicly disclose the terms of the settlement. [Morrisey v. Cardinal Docket Sheet at line 243 (Exhibit A)].[1] On January 9, 2017, the Court entered the dismissal order, and the parties' Settlement Agreement and Release was filed the next day.[2] [*Id.* at line 244, 245. *See also* ECF 147-4 (Final Settlement and Release) (hereinafter "Release"); ECF 147-5 (Dismissal Order)].

---

[1] Consistent with previous orders, Cabell requests that the Court take judicial notice of the exhibits attached to this motion which are either public records, documents produced by Cardinal, or a summary.

[2] The instant motion is brought on behalf of both Cardinal and Smith. [Memo at 3, n.2] As the Defendants concede that the arguments apply equally to Smith, all document references are solely to the Cardinal pleadings and the Release.

While the parties were drafting the settlement documents, West Virginia counties and cities were investigating potential claims against Cardinal based upon the ARCOS data produced in the WVAG's cases against distributors. On December 23, 2016, McDowell County, West Virginia filed the first county suit against Cardinal and others in circuit court. [*McDowell County* v. *McKesson, et al.,* No. 16-C-137].[3] Faced with both McDowell County's claims and the prospect of new lawsuits now that the ARCOS data had been publicly released, Cardinal and the other settling defendants in the WVAG's cases attempted to obtain a release from the WVAG of the claims of West Virginia cities and counties.[4] They were not successful.

Cardinal sought a number of provisions in the release expanding the scope of claims and persons released. [Exhibit C, Attach. 1 (hereinafter "Proposed Release")] Defendants' proposed language was largely rejected, and Defendants proceeded to settlement without securing the release of the claims of West Virginia's cities, counties and citizens.[5] The Release as finally executed contains the following limited definition of the "Releasor":

> the State, through its Attorney General, on its own behalf and on behalf of its departments, agencies, divisions, boards, commissions, and instrumentalities of any kind, and any person, in their official capacity elected or appointed to serve the State, its attorneys, and/or by any agency, person, or entity claiming by or through them or any of them ….

[Release at p. 4] Defendants' proposed the inclusion of "subdivisions, political subdivisions (as that term is defined Chapters 5 and 29 of the West Virginia Code)" into the above definition. [*Id.* at Exhibit C, Attachment 1 at p.3, ¶ 1] That proposal was rejected. [Release at p. 4]

---

[3] Defendants removed the case and it remains pending in this Court assigned as No. 1:17-op-45066-DAP.

[4] Although the WVAG refused to respond to Cabell's FOIA request [October 4, 2017 WVAG FOIA Response (Exhibit B)], Cardinal produced a single email providing some documentation of its unsuccessful efforts to obtain a broad release. [See December 29, 2016 email and attachments from Cardinal attorney Tostado (Exhibit C)]

[5] *Compare* ECF 147-4 (Final Settlement and Release (hereinafter "Release")) *with* Proposed Release. Plaintiff has created a redline comparing the Proposed Release with the Release as executed. [See Exhibit D].

With respect to the claims, the Release purports to include:

> any and all claims, demands, debts, damages, liabilities, civil penalties, restitution, disgorgement, reimbursement, fines, expenses, actions, and causes of action whatsoever, known and unknown, foreseen, unforeseen, or unforeseeable, which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity **that the State** now has or may have in the future against the Released Entities or any of them growing out of, relating to, or concerning the Litigation . . . subject to the conditions set forth herein ("Released Claims"). . . . This is a full, final, and complete release of the Released Claims . . . **by the State**. . . .

[*Id.* at pp. 5-6 (emphasis added)]  Defendants' proposed inclusion of the sentence, "[t]he State accepts the Settlement Payment on its behalf and on behalf of the citizens of West Virginia through its *parens patriae* authority," [Proposed Release at pp. 4-5, ¶ 1] was also rejected. [Release. at pp. 5-6]  Defendants also requested the following indemnity from the State:

> The State shall fully indemnify the Released Entities and hold them harmless from and against, and from attorney's fees and costs incurred in defending or arising from, all claims, demands, actions, and causes of action that may be asserted or initiated against any of the Released Entities relating to the events described in the Litigation and the controlled substances epidemic up to the Effective Date by (1) any "Political Subdivision" and/or "Municipality" in the State of West Virginia (as those terms are defined in the West Virginia Code, including Chapters 5 and/or 29) and/or by (2) any other party by reason of any claim, demand, action, or cause of action asserted or initiated by the State against said party.  This provision includes, without limitation, claims, demands, actions, or causes of action seeking to hold any of the Released Entities liable or to obtain contribution for any alleged liability for or relating to the events described in the Litigation, the controlled substances epidemic, or the damages or costs the State or any "Political Subdivision" and/or "Municipality" in the State claims it has incurred as a result of the controlled substances epidemic.

[Proposed Release at p. 8, ¶ 7] Notwithstanding the fact that *McDowell v. McKesson* was pending at the time, this indemnity paragraph was rejected in its entirety. [Release at p. 9] Finally, two proposed inclusions to the recitals in the release were also rejected.[6]

---

[6] Language expanding the Release's recital regarding the WVAG's power to bring suit so as to include not just recovery of damages allegedly suffered by the State but also to include damages suffered by "the citizens of West Virginia" was proposed [Proposed Release at p.1, Recital C] and rejected. [Release at pp. 1-2 Recital C]. Similarly, a recital noting, the "State has concluded that it is in the best interest of the State, its agencies, the residents of the State represented by them, and the communities in West Virginia to resolve all claims and avoid further litigation," [Proposed Release at Recital H] was also rejected. [Release at p.2]

A review of the claims brought in the WVAG's Complaint confirms that the State was litigating its case and not the claims of counties. For example, the WVAG's Complaint sought to recoup the costs to the "State of West Virginia." [ECF 147-3 at ¶ 1] In the Complaint, the WVAG consistently refers to damages sustained by "*the State*" or "*the State of West Virginia and its agencies*" [*Id.* at ¶¶ 2, 6, 29-31, 37, 45, 56, 62, 71 (emphasis added)]

The ultimate use of the settlement proceeds reinforces the fact that lawsuit was the State's, not Cabell's. The only portion of the settlement which has found its way to the Cabell County was via the West Virginia Department of Health and Human Resources (a State agency) providing a $2.8 million grant to a substance abuse treatment program run by Marshall University, a State-run entity.[7]

Cabell had no contact with the WVAG regarding the claims Defendants now contend were released in the settlement, and its damages apparently were not sought.[8] A review of Cabell's Second Amended Complaint ("SAC") shows damages that are uniquely and specifically local, relating to expenses incurred pursuant to fulfilling its constitutional duties pertaining to the "superintendence and administration of the internal police and fiscal affairs of their count[y]."[9] W. Va. Const., art. IX, sec. 11.

---

[7] *See,* Eric Eyre, "$20.8M from opioid settlement distributed for treatment beds in WV", Charleston Gazette-Mail (Dec. 4, 2017), https://www.wvgazettemail.com/news/health/wv_drug_abuse/m-from-opioid-settlement-distributed-for-treatment-beds-in-wv/article_6f80c18a-565a-5b07-b5fa-a33bba045b43.html.

[8] Indeed, the WVAG contends it has no documents reflecting any communication between it and Cabell regarding potential claims by Cabell. [Exhibit B at p. 2, Response to Request 5] Cardinal has not produced record of any contact by the WVAG or the State regarding *Morrissey v. Cardinal* prior to settlement.

[9] *See* SAC ¶¶ 916, 964 (expenses for police, emergency, health, prosecution, corrections, rehabilitation, and other services); *id.* at ¶¶ 917, 965 (stigma damage, non-physical property damage, and damage to its proprietary interests); *id* at ¶¶ 922, 969, 990, 1022 (expenditures for special programs over and above Plaintiff's ordinary public services).

## ARGUMENT

### I.  Plaintiff's Claims Are Not Barred By *Res Judicata*.

*Res judicata* "generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action." *Beahm v. 7 Eleven, Inc.*, 672 S.E.2d 598, 601 (W. Va. 2008) (per curium) (quotation omitted). The application of *res judicata* is dependent on the "distinctive characteristics of a particular case," *id.* at 605, and the party seeking to invoke the bar must show that "the two actions … have (1) substantially the same parties who sue and defend in each case in the same respective character [and] (2) the same cause of action. …" *Id.* at 602. Because the WVAG does not have the power to bring Cabell's claims, neither of these elements is met, and the defense of *res judicata* fails.

### A.  No Privity Exists Between Cabell and the State with Respect to Cabell's Claims.

When, as here, the parties are not the same, the defense of *res judicata* requires a showing of privity. *Beahm*, 672 S.E.2d at 605. West Virginia law recognizes that "[p]rivity, in a legal sense, ordinarily denotes 'mutual or successive relationship to the same rights of property.'" *Id.* (quoting *West Virginia Human Rights Comm'n v. Esquire Group, Inc.*, 618 S.E.2d 463, 469 (W. Va. 2005)). The "key consideration for [privity's] existence is the sharing of the same legal right by parties allegedly in privity, so as to ensure that the interests of the party against whom preclusion is asserted have been adequately represented." *Beahm, supra*, at 605. This requisite relationship is absent here.

### 1.  West Virginia county commissions are constitutional entities separate from the State with independent powers and duties.

The Cabell County Commission is a not an arm of the state or an entity of the government of the State of West Virginia.[10] The West Virginia Constitution establishes counties as separate units of

---

[10]*See* W. Va. Code § 29-12A-3(e) ("'State' means the state of West Virginia, including, the Legislature, the supreme court of appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, colleges, and universities, institutions, and other instrumentalities of the state of West

government and grants explicit powers to county commissions over the "superintendence and administration of the internal police and fiscal affairs of their counties." W. Va. Const., art. IX, sec. 11. It further grants the Legislature plenary power to assign county commissions powers and duties. *Id.* Chapter seven of the Code sets forth the specific powers, duties, obligations of County Commissions and their officers, implementing the Constitution's grant of police and fiscal powers.[11] Relevant to the instant motion, W. Va. Code § 7-1-3kk is explicit in its grant of authority -- the County is authorized to "enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance." In addition, West Virginia counties "have authority to employ such legal counsel as [they] may deem necessary for the purpose of advising such county commission on matters of a civil nature and to conduct any litigation of a civil nature to which the county is a party." Cabell's instant action is clearly within these grants of authority.

### 2.     The WVAG and the State lack the power to represent counties.

The Defendants cite no constitutional or statutory authority authorizing the WVAG to litigate claims on behalf of the County. West Virginia law generally authorizes the WVAG to represent the State and State entities.[12] Neither the Constitution nor any statute provides the WVAG with the legal authority to bring suit on behalf of the County.

---

Virginia. 'State' does not include political subdivisions."). *See* W. Va. Code § 14-2-3 ("'state agency' shall not be considered to include county commissions, county boards of education, municipalities, or any other political or local subdivision of the state regardless of any state aid that might be provided."); *Pniewski v. Martorella*, Civil Action No. 3:04-0354, (S.D. W. Va. August 25, 2008) 2008 WL 4057523, *2 ("[T]here is no authority for characterizing the county commission as an 'arm of the State.'").

[11]*See, e.g., id.* at art. 5 (fiscal affairs); *id.* at art. 8 (jail); *id.* at art. 14 (Deputy Sheriffs); *id.* at art. 15 (ambulance services).

[12]*See, e.g.,* W. Va. Code § 5-3-2 (WVAG's power to prosecute suits limited to supporting "official duties of any **state** officer, board or commission" (emphasis added)); W. Va. Code § 5-3-1 (same listing state officers and entities).

Nor does the WVAG have any common-law authority with respect to representation of the County. While the WVAG possesses common law powers, the scope of those powers can be abolished or restricted by the Legislature. *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625, 645 (W. Va. 2013); *State ex rel. Morrisey v. West Virginia Office of Disciplinary Counsel*, 764 S.E.2d 769, 784 (W. Va. 2014). And, the West Virginia Supreme Court of Appeals has not hesitated to find implicit legislative preemption of the WVAG's powers based on the Legislature's grant of particular powers to counties. *See, e.g.*, *Morrisey*, 764 S.E.2d at 791 (noting the express constitutional and statutory power granted to counties to prosecute criminal cases, the court, applying *expressio unius est exclusio alterius,* found WVAG's broad common law power to prosecute had been implicitly abolished by Legislature's grant of limited prosecutorial powers); *cf. State ex rel. Riffle v. Ranson*, 464 S.E.2d 763, 770 (W. Va. 1995) (the conclusion that the Legislature intended to exclude and abolish all other common law powers to change venue when it adopted statute providing for change of venue in limited cases compelled by both *expressio unius est exclusio alterius* along with reason and common sense). Here the relevant constitutional and statutory provisions noted above grant the County broad authority to address the public health, safety, and fiscal consequences of the opioid epidemic in its community, implicitly removing any common law authority from the WVAG over the County's claims.

### a.  The County retains the power to abate nuisances.

The relative powers are particularly clear in the context of the County's nuisance claim. As noted above, the County has express power to declare a nuisance and take action to remedy it. W. Va. Code § 7-1-3kk. Like the limited prosecutorial power provided to the WVAG at issue in *Morrisey*, the Legislature has provided the WVAG limited authority to bring actions on nuisances in only five specific cases, none of which apply here.[13] A similar argument defeats the State's standing to bring a

---

[13] W. Va. Code § 61-9-3 (houses of prostitution); W. Va. Code § 60-6-17 (places where alcohol sold illegally); W. Va. Code § 22-13-12 (pollution of streams); W. Va. Code § 17-17-4 (illegally constructed bridges); W. Va.

nuisance claim. Unlike counties which are given express powers to regulate all nuisances, the Legislature has not enacted a general statute allowing the State general authority to abate nuisances, instead granting only specific State agencies the power to abate nuisances in specific cases.[14] Notably, in the Boone County case the State acted through the West Virginia Department of Military Affairs and Public Safety and West Virginia Department of Health and Human Resources, neither of which has statutory authority to bring actions to abate nuisances caused by prescription drugs.

Under both the doctrine of *expressio unius est exclusio alterius* and the holdings in *Morrisey* and *Ranson,* neither the State nor the WVAG had the power to bring (let alone release) the County's nuisance claim. This is fatal to the Defendants' showing of privity.

### b.  The State does not have parens patriae power to bring the County's claims.

Cardinal argues that the doctrine of *parens patriae* supports finding privity. Notably, Cardinal cites no West Virginia case even mentioning *parens patriae* let alone establishing the existence of the *parens patriae* authority of the State to bring the civil claims on behalf of counties or residents of counties. Cardinal's reliance on *Discover v. Nibert, supra* [Memo at 7, n.6], is misplaced. Its holding relates to the power of the WVAG to hire outside counsel. In any event, the analysis above of why the

---

Code § 22C-12-1 (violation of Ohio River Valley Water Sanitation Compact). Notably, in all these instances the power is concurrent between the WVAG and counties.

[14] *See* W. Va. Code § 17-16-1 (State highway department or county commission empowered to seek abatement of nuisances from roadway obstructions); W. Va. Code § 17-19-1 (State highway department can abate nuisances caused by illegal signs on roadway right-of-way); W. Va. Code § 17-22-22 (State highway commissioner or county prosecuting attorney may apply for an injunction to abate nuisance from illegal billboard); W. Va. Code § 17-23-9 (State highway commissioner or county prosecuting attorney may seek abatement of illegal salvage yards as a nuisance); W. Va. Code § 17C-3-8 (State highway commissioner or other authority having jurisdiction over highway may seek abatement of unauthorized traffic-control device as a nuisance); W. Va. Code § 22-13-12 (State may apply to court to abate nuisances in violation of Streams Preservation Act); W. Va. Code § 30-7-14 (State board of nursing may seek injunction to stop nuisance of unlicensed practice of nursing); W. Va. Code § 30-7C-13 (State board of nursing may seek injunction to stop nuisance of unlicensed practice by dialysis technician); W. Va. Code § 61-3-47 (State division of natural resources and others can bring suit to abate nuisance in form of obstruction of waterways). *See also* n.9, *supra*. W. Va. Code § 16-3-6 does empower state director of health or any county or municipal health officer to seek abatement of nuisances impacting public health, but the authority granted by that provision is limited to nuisances infectious diseases which is the sole subject of Article 3.

WVAG and the State do not have the power to represent the County or bring its claims applies equally to the recognition of a common law *parens patriae* power on the part of the State or the WVAG. The broad, clear legislative delegation of these common law powers to the County with the reservation of only limited power to the State and the WVAG counsel that whatever common law *parens patriae* authority exists for these claims is for the County to exercise not the State. Importantly, the County's claims do not involve consumer credit or antitrust where the WVAG has been given explicit *parens patriae* authority.[15]

Moreover, where the claims of two overlapping governmental entities are involved, privity does not exist. In *New York v. Beretta*, the court refused to find that "a prior case brought by New York State in its *parens patriae* capacity will bar the City of New York or other sub-state entities from subsequently bringing suit on the same cause of action." *City of New York v. Beretta*, 315 F.Supp.2d 256, 266 (E.D. NY 2004). The *Beretta* Court noted that res judicata analysis differed when the claims involved a subsequent suit by a sub-state governmental body, not a private citizen:

> The 'City is not precluded under the doctrine of *res judicata*, however, simply because its residents, if suing as private plaintiffs, might be barred from bringing suit. The City's interest cannot be characterized as coterminous with that of its inhabitants'; it has a municipal interest that is separate and distinct from, and not duplicate of, the interests of individual New Yorkers.

*Id.* Finding "nothing in the law to suggest that the Attorney General has the authority to represent the City's legal interests or that the exclusive grant of authority to the Corporation Counsel in the City's Charter is subject to exceptions, the Court refused to find privity for *res judicata* purposes. *Id.* at 274.

The opioid crisis in Cabell County is a local concern analogous to gun crime in New York City. *Cf. id.* at 274. Given the lack of authority for the WVAG to represent the County, the same result should apply here. Finally, like in *Beretta,* barring the County from litigating its claims would interfere

---

[15] W.Va. Code § 46A-7-101 (Consumer Credit and Protection Act); W.Va. Code § 47-18-17 (Antitrust Act).

with the proper delineation of authority, between the County and the WVAG which would usurp the powers expressly delegated to Cabell by both the Constitution and the Legislature.

### c. The County retains the power to bring its RICO claims.

With respect to the County's RICO claims, neither the State nor the WVAG have standing to bring a claim for the County's damages whether under the doctrine of *parens patriae* or otherwise.[16]

### 3. The doctrine of "virtual representation" does not apply.

Nor does the doctrine of virtual representation apply to this case. West Virginia has utilized the doctrine of "virtual representation" a "variety of privity" which "precludes relitigation of any issue that [has] once been adequately tried by a person sharing a substantial identify of interests with a nonparty."[17] The West Virginia Supreme Court has recognized the application of virtual representation only in cases in which a nonparty actively participated in and exercised control over the conduct of the prior litigation; where a nonparty impliedly consented to abide by a prior judgment; or if the nonparty's actions involved deliberate maneuvering or manipulation in an effort to avoid the

---

[16] *Dillon v. Combs*, 895 F.2d 1175 (7th Cir. 1990) (state did not have standing under RICO because RICO does not authorize a state to obtain relief on account of a fraud practiced against its residents); *People of the State of Illinois v. Life of Mid-America Insurance Co.*, 805 F.2d 763 (7th Cir. 1986) (state did not have *parens patriae* standing, and could not assert claims under the RICO Act because it was seeking to recover for claims belonging to the individuals who had been harmed); *People of the State of N.Y. by Abrams v. Seneci*, 817 F.2d 1015 (2d Cir. 1987) (holding that the state did not have standing as *parens patriae* or under the RICO Act because it was seeking a monetary award solely for injury to the business and property of the state's citizens); *State of Texas v. Enterprise Companies, Inc.*, No. H-85-5519, 1986 WL 31561 (S.D. Tex. Jan. 7, 1986) (holding that the state did not have *parens patriae* standing, and could not assert claims under the RICO Act because it was not suing for injury to its own business or property).

[17] *Beahm*, 672 S.E.2d at 603 (quoting *Galanos v. National Steel Corp*, 358 S.E.2d 452, 454 (W. Va. 1987)).

preclusive effects of a prior judgment.[18] The "doctrine of virtual representation cannot be construed to imply privity to all who derive injury from a single wrongful act."[19]

Indeed, the virtual representation doctrine is itself a creature of equity, but equity clearly weighs against *res judicata* in this case. Here, the Defendants knew of the subsequent lawsuits and the likelihood of others. At the last minute, they tried unsuccessfully to include county claims in the settlement and release with the State without any notice to the counties. The State's lawyers did not represent any county or municipality. After unsuccessfully attempting to get the State's agreement, Defendants now seek to get this Court to enforce a deal they could not make with the State. The Supreme Court has admonished courts not to rigidly enforce the doctrine of *res judicata* where to do so would plainly defeat the ends of justice. *Blake v. Charleston Area Medical Center, Inc.*, 498 S.E.2d 41, 50 (W.Va. 1997).

The State did not act as the County's virtual representative for *res judicata* purposes based on its assertion of its *parens patriae* power in the State's case against Defendants. The cases cited in support of Defendants' argument all are cases in which private citizens attempted to bring successive private enforcement actions after a State had privately sued in its capacity as *parens patriae* representative of its citizens. [Def. Mem. at 8] The County is not a private citizen of the State. Rather, the County is an independent governmental entity created by the Constitution to have "the superintendence and administration of the internal police and fiscal affairs of their counties." W.Va. Const. art. IX, sec. 11.

---

[18] *Galanos*, 358 S.E.2d at 455 (case did not come within any of the recognized classes of virtual representation and found that the doctrine of collateral estoppel did not bar the actions even though they were represented by the same attorney and two plaintiffs had testified as witnesses in the prior litigation, where there was no showing of those plaintiffs' control over the prior litigation, consent to be bound, or deceit or tactical maneuvering).

[19] *Beahm*, 672 S.E.2d at 603 (applying virtual representation to the case after finding that the parties had sought to join the prior action, shared common counsel, had notice of the prior suit and would have had the same practical opportunity to control the course of the proceedings).

Nor, is *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981), persuasive here. In *Nash* the court applied *res judicata* to bar a North Carolina school district from pursuing the same claims previously litigated by the North Carolina Attorney General. *Nash* is distinguishable from this case because the express authority of the Attorney General to sue as the representative of the school districts of the State was clear both in the common law and statutory law of North Carolina. *Id.* at 494. As set forth above, this is not the law in West Virginia.

### B.    The Claims Are Not Based on the Same Causes of Action.

In order for *res judicata* to be applicable, "the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action."[20]

The Attorney General's action sought to recover damages the State had incurred and would incur in the future addressing and combating the prescription drug abuse epidemic in West Virginia.[21] Because, for the reasons noted above, neither the State nor the Attorney General could seek many of the claims asserted by the County, it cannot be said that the claims were identical. This is particularly true with respect to the nuisance, RICO claims, and Cabell's individual claims for damages.  While *res judicata* may apply to both claims brought and claims which could have been brought, (*West Virginia Human Rights Com'n, supra*), claims of a third party (i.e. a party other than the party appearing *parens patriae*) are not the same claims for purposes of *res judicata*. *Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464 (10th Cir. 1993) (holding that private landowners could pursue private property claims against a defendant despite a consent decree in an earlier lawsuit between Colorado and the same defendant because the state could not have recovered as *parens patriae* for injuries to the plaintiffs' private interests).

---

[20] *West Virginia Human Rights Com'n*, supra at 471 (quoting Syl. Pt. 4, *Blake, supra*, 498 S.E.2d 41).

[21] *See* Doc 147-3 at ¶ 8.

Finally, the Defendants' argument that the County could have joined in the State's suit itself establishes that *res judicata* is inappropriate here. Joinder under Rule 20 is explicitly permissive, not mandatory. W.Va.R.Civ.Pro. 20. Indeed, should the Defendants have believed that the County was a necessary party, it was incumbent on them to seek to have the County joined as a necessary party. *See* W.Va.R.Civ.Pro. 19.

Because the WVAG and the State were neither in privity with the County nor bringing the same claim as is being pursued here, *res judicata* cannot act as a bar to the County's claims.

## II.    Plaintiff's Claims Were Not Released.

As discussed in detail above, the fact that the State resolved its claims against Defendants and released claims "which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity," does not relieve Defendants from their liabilities to Cabell County. Because neither the State nor WVAG had the authority to enter into a release of the County's claims, the Release is not valid as to the claims brought by Cabell County.

The State executed a Settlement Agreement and Release with Defendants on behalf of "each and every" State agency, department and instrumentality, including "any agency, person, or other entity claiming by or through them or any of them." The County is neither a State agency nor an instrumentality of the State.[22] Nor is the County "claiming by or through" the State. Contrary to the Defendants' assertions, the County is not suing to enforce the WVCSA and is not acting through the Board of Pharmacy or any other State agency. Thus, the County's claims were not released by the State's release of claims "growing out of, relating to, or concerning" its lawsuit by "any . . . entity

---

[22] *Supra* at § I(A)(1); *Amoroso v. Marion Cty. Comm'n,* 305 S.E.2d 299, 303, n.7 (W. Va. 1983) ("Although broad police powers have been expressly conferred on county commissions, they are not instrumentalities of the state"); *Corte Co. v. Cty. Comm'n of McDowell Cty.*, 299 S.E.2d 16, 18 (W.Va. 1982); W.Va. Code 29-12A-3(e) ("'State' means the state of West Virginia, including, but not limited to, the Legislature, the supreme court of appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, colleges, and universities, institutions, and other instrumentalities of the state of West Virginia. 'State' does not include political subdivisions.").

claiming by or through" any State agency. Thus, the express terms of the Release do not bar the County's claims.

Without standing to bring the County's claims, the WVAG had no power to contractually release them. "Contracts of compromise and settlement are to be construed and enforced like any other contract." *Fortuna v. Queen,* 363 S.E.2d 472, 477 (W. Va. 1987). The Defendants cite no authority for the proposition that one party has the power to bind a separate non-party to a contractual release.

In any event it is clear as a factual matter that the parties did not agree to include the Counties' claims in the release. Counties are not mentioned as released parties. Given the clear division between county and state government in West Virginia law, it follows that the parties did not agree to include them as released parties. As such, the County is not included within the scope of the release, and its claims are not barred. "Obviously, a judgment dismissing an action as compromised and settled does not preclude a party from bringing suit upon a claim not within the scope of the compromise agreement." *Fortuna,* 363 S.E.2d at 477.

The limited documents available to the County establish that the decision to exclude the Counties was in effect an agreement by the parties (or acquiescence by the Defendants) to split the claims of the State from the claims of the counties and cities. The fact that counties are excluded from the definition of released parties and the drafting history of the Cardinal release are strong evidence of an effective agreement to split the County's claims or an acquiescence that permits the County's claim to proceed even if the County's claims could have otherwise been included within the scope of the Release or dismissal order (which is denied). *See* Restatement (Second) of Judgments § 26(1)(a) (claim is not extinguished by settlement or judgment when "parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein"); *Pueschel v. United States,* 369 F.3d 345, 356 (4th Cir. 2004).

14

**III.      Alternatively, Discovery Should Be Permitted Prior To Ruling on the Motion**

From the foregoing discussion, Cabell County believes it should be clear that *res judicata* does

not apply to the County's claims. If, however, the Court has any doubt about the scope of the release

given by the State, discovery regarding those settlement negotiations should be permitted prior to any

ruling on the pending motion.[23]

Such evidence is clearly relevant to both intent and interpretation of the releases to the extent

the Court finds them ambiguous. *In re Felton*, 197 B.R. 881, 887–88 (N.D. Cal. 1996) (court should

review all credible parol evidence to determine whether the language is reasonably susceptible to the

interpretation urged by party claiming ambiguity, and if so thereafter admit the extrinsic evidence to

interpret the language of the release). When an alleged party to a release is not clearly identified therein,

the release is ambiguous, and the court can examine extrinsic evidence to interpret the release. *Russo*

*v. Baxter Healthcare Corp.,* 919 F. Supp. 565, 572 (D.R.I. 1996).

## CONCLUSION

The elements of *res judicata* are not present here, and the State's release cannot be interpreted

to include Cabell's claims. The Defendants motion to dismiss should be denied.

---

[23] Because this is not a Track I case, discovery has been stayed. [Doc. 232, CMO One, § 9(a)] The State has not produced any documents concerning the settlement negotiations, and Cardinal has voluntarily produced only one email.

Respectfully submitted,

By: */s/ Anthony J. Majestro* .

Paul T. Farrell, Jr.
Bert Ketchum
**GREENE, KETCHUM, FARRELL,
 BAILEY & TWEEL, LLP**
419 - 11th Street (25701)/ P.O. Box 2389
Huntington, West Virginia 25724-2389
Tel.: 800-479-0053 or 304-525-9115
Fax: 304-529-3284
paul@greeneketchum.com
bert@greeneketchurn.com

Russell W. Budd
J. Burton LeBlanc, IV
Laura J. Baughman
S. Ann Saucer
Christine C. Mansour
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 11 00
Dallas, TX 752 19
Tel.: 214-521-3605
Fax: 214-520-1181
rbudd@baronbudd.com
bleblanc@baronbudd.com
lbaughman@baronbudd.com
asaucer@baronbudd.com
cmansour@baronbudd.com

Roland K. Tellis
Mark P. Pifko
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Los Angeles, CA 91436
Tel.: 818-839-2333
Fax: 818-986-9698
rtellis@baronbudd.com
mpifko@baronbudd.com

Anthony J. Majestro
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel.: 304-346-2889
Fax: 304-346-2895
amajestro@powellmajestro.com

Peter J. Mougey
Troy Rafferty
Page A. Poerschke
Laura S. Dunning
Neil E. "Ned" McWilliams
Jeffrey Gaddy
**LEVIN, PAPANTONIO, THOMAS,
 MITCHELL, RAFFERTY &
 PROCTOR, P.A.**
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Tel.: 850-435-7068
Fax: 850-436-6068
pmougey@levinlaw.com
trafferty@levinlaw.com
ppoerschke@levinlaw.com
ldunning@levinlaw.com
nmcwilliams@levinlaw.com
jgaddy@levinlaw.com

James C. Peterson
R. Edison Hill
Aaron Harrah
**HILL, PETERSON, CARPER,
 BEE & DEITZLER, PLLC**
NorthGate Business Park
500 Tracy Way
Charleston, WV  25311
Tel.: 304-345-5667
Fax: 304-345-1519
jcpeterson@hpcbd.com
rehill@hpcbd.com
aaron@hpcbd.com

Michael J. Fuller, Jr.
Amy Quezon
**McHUGH FULLER LAW GROUP, PLLC**
97 Elias Whiddon Rd.
Hattiesburg, MS 39402
Tel.: 601-261-2220
Fax: 601-261-2481
mike@mchughfuller.com
amy@mchughfuller.com

Michael A. Woelfel
**Woelfel & Woelfel**
801 Eighth Street
Huntington, WV 25701
Tel.: 304-522-6249
Fax.: 304-522-9282

*Counsel for Cabell County Commission*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of July 2018, I electronically filed the foregoing

as with the Clerk of Court by using the CM/ECF System.

*/s/  Anthony J. Majestro*
Anthony J. Majestro