# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

**MDL No. 2804**

**Case No. 17-md-2804**

**Judge Dan Aaron Polster**

This document relates to:

*County of Monroe v. Purdue Pharma L.P., et al.,*
Case No. 18-op-45158 (N.D. Ohio)

**PLAINTIFF COUNTY OF MONROE'S OMNIBUS MEMORANDUM IN
OPPOSITION TO:**

**(1) MANUFACTURER DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT; (2) DEFENDANTS AMERISOURCEBERGEN
DRUG CORP.'S, CARDINAL HEALTH, INC.'S, AND McKESSON CORP.'S MOTION
TO DISMISS (FED. R. CIV. P. 12(b)(6)); AND (3) MOTION TO DISMISS BY
DEFENDANTS CVS HEALTH CORPORATION, THE KROGER CO., RITE AID
CORPORATION, RITE AID OF MARYLAND, INC., D/B/A RITE AID MID-
ATLANTIC CUSTOMER SUPPORT CENTER, WALGREENS BOOTS ALLIANCE,
INC., AND WALMART INC.**

1449492_1

## TABLE OF CONTENTS

PAGE

I.  INTRODUCTION AND SUMMARY OF ISSUES AND ARGUMENT ..........................1

II.  LEGAL STANDARD ..............................................................................................2

III.  ARGUMENT ...........................................................................................................3

    A.  Monroe May Assert Its Claims ...................................................................3

        1.  Monroe Possesses Constitutional and Statutory Authority to Assert Its Claims ..............................................................................3

        2.  The "Statewide Concern" Doctrine Has Been Overruled ............................4

        3.  The County Has Concurrent Authority to Bring This Suit ............................4

        4.  Monroe Has Standing to Bring These Claims ..............................................5

        5.  Monroe Was Not Required to Provide Pre-Suit Notice to the Pharmacy Defendants ..............................................................................5

        6.  Plaintiff's Claims Are Not Preempted ..........................................................6

    B.  Plaintiff's Claims Are Not Time-Barred .....................................................6

        1.  Defendants Misstate Michigan Law Regarding Accrual ...............................7

        2.  The Injury Discovery Rule Applies to Plaintiff's RICO Claims ...................8

        3.  Fraudulent Concealment and Equitable Tolling Were Sufficiently Pled .........8

    C.  The MPLA Immunity Provision Does Not Bar Plaintiff's Claims ..........................11

        1.  Nothing in the MPLA Immunizes Defendants' Failure to Identify, Investigate, and Report Suspicious Orders of Opioids ...............................11

        2.  The MPLA Does Not Immunize Defendants' False Marketing ..................13

        3.  Whether Defendants' Products Are "Combination Products," Exempt from the MPLA, Is a Question of Fact .......................................14

        4.  The Statutory Immunity Arguments Do Not Shield Defendants from Reasonably Foreseeable Misuse of Opioid Products....................................15

    D.  The Free Public Services Doctrine Does Not Bar Plaintiff's Claims ......................16

    E.  Plaintiff States a Claim for Public Nuisance............................................................19

        1.  Monroe Properly Alleges Interference with a Public Right ..........................19

        2.  Defendants' Conduct Was Not Sanctioned by Law ....................................21

3.      Defendants Control, and Have Exacerbated, the Flood of Opioids into Monroe ...................................................................................................22

4.      Monroe's Public Nuisance Claim Is Not a Disguised Product-Liability Claim ..................................................................................................24

F.      Plaintiff States a Claim Under the MCPA .............................................................24

1.      Plaintiff Has Stated a Strong *Prima Facie* Claim ..............................................24

2.      Defendants' Misconduct Was Not Authorized by Law................................26

3.      Plaintiff's MCPA Claims Are Pled with the Requisite Specificity ................29

        a.      The MCPA Allegations Against the Distributors Are Sufficiently Specific ..........................................................................................29

        b.      The MCPA Allegations Against the Marketing and Pharmacy Defendants Are Sufficiently Specific ................................................30

        c.      The Pharmacies' Assertion that the SAC Claims Are Based on a Single Conclusory Allegation Is Incorrect........................................32

        d.      The Manufacturers' Assertion that Plaintiff Failed to Plead Any Misrepresentations or Omissions in Monroe Is a Red Herring ........32

4.      Plaintiff Has Alleged Material Misrepresentations .........................................33

5.      Plaintiff Has Alleged a "Consumer Transaction" in Which Consumers Have Been Misled Within the Course of "Trade or Commerce" ................34

6.      All Defendants Had a Duty to Disclose the Emergence of a Public Health Emergency and Misled Consumers by Failing to Do So ............................37

7.      Plaintiff Does Not Need to Prove Reasonable Reliance ...............................39

8.      Plaintiff Need Not Allege Damages but Has Done So Anyway ..................39

G.      Plaintiff Adequately Pleads Its Negligence Claim Against All Defendants .............41

1.      Plaintiff Does Not Seek to Enforce Statutory Duties ...................................41

2.      Defendants Owe Plaintiff a Common Law Duty of Reasonable Care..........43

3.      Plaintiff Pleads Its Injuries Were Proximately Caused by Defendants' Acts and Omissions ................................................................................................46

        a.      Defendants' Negligence Foreseeably Caused Plaintiff's Injuries ......47

        b.      Third-Party Actions Do Not Break the Causal Chain....................48

4.      Plaintiff Plausibly Pleads Factual Causation..................................................48

5.      Plaintiff Need Not Plead Physical Injury ......................................................49

H.  Plaintiff Has Properly Pled Its Unjust Enrichment Claim ........................................49

I.  Plaintiff Has Properly Pled Its Federal RICO Claims ................................................52

    1.  Causation ........................................................................53

    2.  Actionable Racketeering Activity ................................................54

    3.  Attributable Third-Party Statements ...........................................55

J.  Plaintiff Has Stated a Claim for Fraud ..................................................................56

    1.  Plaintiff Alleges Fraudulent Misrepresentations with Sufficient Particularity57

    2.  Plaintiff States a Claim for Silent Fraud with Sufficient Particularity............59

    3.  Plaintiff Adequately Alleges Reliance ........................................60

K.  Plaintiff Has Properly Alleged Its Civil Conspiracy Claim ......................................61

IV.  CONCLUSION ...............................................................................................63

# TABLE OF AUTHORITIES

**CASES**                                                            **PAGE**

*4041-49 W. Maple Condo. Ass'n v. Countrywide Home Loans, Inc.*,
   768 N.W.2d 88 (Mich. Ct. App. 2009) ............................................................. 40

*Action Auto Glass v. Auto Glass Specialists*,
   134 F. Supp. 2d 897 (W.D. Mich. 2001) ......................................................... 37

*Adkins v. Mong*,
   425 N.W.2d 151 (Mich. Ct. App. 1988) ......................................................... 46

*Adkins v. Thomas Solvent Co.*,
   487 N.W.2d 715 (Mich. 1992) ....................................................................... 19

*Admiral Ins. Co. v. Columbia Cas. Ins. Co.*,
   486 N.W.2d 351 (Mich. Ct. App. 1992) ......................................................... 62

*Agency Holding Corp. v. Malley-Drift & Assocs., Inc.*,
   483 U.S. 143 (1987) ......................................................................................... 8

*Am. Auto. Ass'n, Inc. v. Advanced Am. Auto Warranty Servs., Inc.*,
   No. CIV. A. 09-CV-12351, 2009 WL 3837234
   (E.D. Mich. Nov. 16, 2009) ........................................................................... 28

*Archer v. Arms Tech., Inc.*,
   No. 99-912658 NZ, 2000 WL 35624356, slip. op.
   (Mich. Cir. Ct. May 16, 2000) ....................................................................... 16

*Arlan's Dep't Stores, Inc. v. Kelley*,
   130 N.W.2d 892 (Mich. 1964) ......................................................................... 4

*Arrowood Indem. Co. v. City of Warren*,
   No. 13-13938, 2015 WL 58679 (E.D. Mich. Jan. 5, 2015),
   *aff'd sub nom. Arrowood Indem. Co. v. Cristini*, 630 F. App'x 512
   (6th Cir. 2015) ................................................................................................ 60

*Associated Builders & Contractors v. City of Lansing*,
   880 N.W.2d 765 (Mich. 2016) ......................................................................... 4

*Attorney Gen. ex rel. Lennane v. City of Detroit*,
   196 N.W. 391 (Mich. 1923) ............................................................................. 4

*Attorney Gen. v. Diamond Mortg. Co.*,
   327 N.W.2d 805 (Mich. 1982) ................................................................... 26, 27

*Baggett v. Hewlett-Packard Co.*,
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) ......................................................... 31

*Baker v. Arbor Drugs, Inc.*,
  544 N.W.2d 727 (1996) ....................................................................................27

*Baumkel v. Scotts Miracle-Gro Co.*,
  No. 08-14137, 2009 WL 3190477
  (E.D. Mich. Sept. 28, 2009) ..............................................................................27

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017) ...........................................................31

*Belle Isle Grill Corp. v. City of Detroit*,
  666 N.W.2d 271 (Mich. Ct. App. 2003) ...........................................................50

*Brandon Twp. v. Jerome Builders, Inc.*,
  263 N.W.2d 326 (Mich. Ct. App. 1977) ...........................................................16

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ..........................................................................................53

*Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*,
  474 F.3d 365 (6th Cir. 2007) .............................................................................36

*Brintley v. St. Mary Mercy Hosp.*,
  904 F. Supp. 2d 699 (E.D. Mich. 2012) ...........................................................61

*Brisboy v. Fibreboard Corp.*,
  418 N.W.2d 650 (Mich. 1988) ..........................................................................47

*Brownlow v. McCall Enters., Inc.*,
  888 N.W.2d 295 (Mich. Ct. App. 2016) ...........................................................28

*Buczkowski v. McKay*,
  490 N.W.2d 330 (Mich. 1992) ..........................................................................45

*Cataldo v. U.S. Steel Corp.*,
  676 F.3d 542 (6th Cir. 2012) .............................................................................58

*Cincinnati Ins. Co. v. Citizens Ins. Co.*,
  562 N.W.2d 648 (Mich. Ct. App. 1997) ........................................................9, 23

*Cincinnati v. Beretta U.S.A. Corp.*,
  95 Ohio St. 3d 416 (2002) ....................................................................18, 21, 22

*City of Boston v. Smith & Wesson Corp.*,
  No. 199902590, 2000 WL 1473568
  (Mass. July 13, 2000) ..................................................................................18, 28

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004) ..............................................................................17

*City of Chicago v. Purdue Pharma L.P.*,
    211 F. Supp. 3d 1058 (N.D. Ill. 2016) .................................................................27

*City of Chicago v. Purdue Pharma L.P.*,
    No. 14 C 4361, 2015 WL 2208423
    (N.D. Ill. May 8, 2015) ........................................................................................27

*City of Everett v. Purdue Pharma L.P.*,
    No. C17-209RSM, 2017 WL 4236062
    (W.D. Wash. Sept. 25, 2017) ...............................................................................17

*City of Gary v. Smith & Wesson Corp.*,
    801 N.E.2d 1222 (Ind. 2003) ...............................................................................18

*Clement-Rowe v. Mich. Health Care Corp.*,
    538 N.W.2d 20 (Mich. Ct. App. 1995) .................................................................38

*Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co.*,
    727 F.3d 633 (6th Cir. 2013) ...........................................................................41, 43

*Coffey v. Foamex L.P.*,
    2 F.3d 157 (6th Cir. 1993) ....................................................................................58

*Cole v. Jackson Nat'l Life Ins. Co.*,
    No. 1:11-CV-221, 2012 WL 360285
    (W.D. Mich. Feb. 2, 2012) ...................................................................................62

*Cole v. Marathon Oil Corp.*,
    711 F. App'x 784 (6th Cir. 2017) ..........................................................................6

*Cormack v. Am. Underwriters Corp.*,
    288 N.W.2d 637 (Mich. Ct. App. 1979) ...............................................................55

*Cormier v. PF Fitness-Midland, LLC*,
    No. 331286, 2017 WL 2390691
    (Mich. Ct. App. June 1, 2017) .............................................................................39

*Cty. of Oakland v. City of Detroit*,
    866 F.2d 839 (6th Cir. 1989) ...........................................................................3, 54

*Date v. Sony Elecs., Inc.*,
    No. 07-cv-15474, 2010 WL 3702599
    (E.D. Mich. Sept. 16, 2010) ................................................................................30

*Dell v. Citizens Ins. Co. of Am.*,
    880 N.W.2d 280 (Mich. Ct. App. 2015) ...............................................................33

*Dep't of Agric. v. Appletree Mktg., L.L.C.*,
    779 N.W.2d 237 (Mich. 2010) .............................................................................43

*Dep't of Envtl. Quality v. Waterous Co.*,
   760 N.W.2d 856 (Mich. Ct. App. 2008) ....................................................... 6

*Detroit Bd. of Educ. v. Celotex Corp.*,
   493 N.W.2d 513 (Mich. Ct. App. 1992) ................................................. 23, 24

*DiPiero v. Better Bus. Bureau of W. Mich., Inc.*,
   No. 316308, 2014 WL 6679406
   (Mich. Ct. App. Nov. 25, 2014) ............................................................... 33

*DIRECTV, Inc. v. Cavanaugh*,
   321 F. Supp. 2d 825 (E.D. Mich. 2003) ..................................................... 37

*Dix v. Am. Bankers Life Assurance Co. of Fla.*,
   415 N.W.2d 206 (Mich. 1987) .................................................................. 37

*Doe v. Bishop Foley Catholic High Sch.*,
   No. 336795, 2018 WL 2024589
   (Mich. Ct. App. May 1, 2018) ............................................................... 9, 10

*Douglas v. Edgewater Park Co.*,
   119 N.W.2d 567 (Mich. 1963) .................................................................. 42

*Draws v. Levin*,
   52 N.W.2d 180 (Mich. 1952) .................................................................... 8

*Duronio v. Merck & Co., Inc.*,
   No. 267003, 2006 WL 1628516
   (Mich. Ct. App. June 13, 2006) ............................................................... 27

*Estate of Gallivan by Gallivan v. DBMJ Rehab. Servs., PLLC*,
   No. 331832, 2017 WL 5013279
   (Mich. Ct. App. Nov. 2, 2017) ................................................................. 43

*Evans v. Ameriquest Mortg. Co.*,
   No. 233115, 2003 WL 734169
   (Mich. Ct. App. Mar. 4, 2003) ................................................................. 30

*Feliciano v. Gen. Motors LLC*,
   No. 14 Civ. 06374 (AT), 2016 WL 9344120
   (S.D.N.Y. Mar. 31, 2016) ....................................................................... 27

*Firestone v. Firestone*,
   76 F.3d 1205 (D.C. Cir. 1996) ................................................................... 7

*Florists' Transworld Delivery, Inc. v. Fleutrop-Interflora*,
   261 F. Supp. 2d 837 (E.D. Mich. 2003) ..................................................... 37

*Fremont Reorganizing Corp. v. Duke,*
    811 F. Supp. 2d 1323 (E.D. Mich. 2011) ..................................................................8, 62

*FTC v. Mylan Labs., Inc.,*
    62 F. Supp. 2d 25 (D.D.C. 1999) ......................................................................... 35, 37

*Garcia v. Tyson Foods, Inc.,*
    766 F. Supp. 2d 1167 (D. Kan. 2011) ........................................................................29

*Garfield Twp. v. Young,*
    82 N.W.2d 876 (Mich. 1957) ............................................................................. 19, 24

*Gernhardt v. Winnebago Indus.,*
    No. 03-73917, 2005 WL 2562783
    (E.D. Mich. Oct. 12, 2005) ........................................................................................34

*Giura v. Bartolomeo,*
    No. 291952, 2010 WL 3767563
    (Mich. Ct. App. Sept. 28, 2010) ................................................................................28

*Gladstone, Realtors v. Vill. of Bellwood,*
    441 U.S. 91 (1979) .....................................................................................................18

*Gonzales v. Raich,*
    545 U.S. 1 (2005) .......................................................................................................12

*Graham v. Rite Aid Corp.,*
    No. 240500, 2003 WL 21079858
    (Mich. Ct. App. May 13, 2003) ...................................................................................6

*Grain v. Trinity Health,*
    431 F. App'x 434 (6th Cir. 2011) ..............................................................................42

*Graves v. Warner Bros.,*
    656 N.W.2d 195 (Mich. Ct. App. 2002) ....................................................................45

*Greenberg v. Life Ins. Co. of Va.,*
    177 F.3d 507 (6th Cir. 1999) .....................................................................................60

*H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.,*
    595 N.W.2d 176 (Mich. Ct. App. 1999) .....................................................................7

*Hand v. Dayton-Hudson,*
    775 F.2d 757 (6th Cir. 1985)......................................................................................38

*Hanover Exch. v. Metro Equity Grp. LLC,*
    No. 2:08-cv-14897, 2009 WL 2143866
    (E.D. Mich. July 14, 2009) ........................................................................................63

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ........................................................................... 28

*Hendricks v. DSW Shoe Warehouse Inc.*,
   444 F. Supp. 2d 775 (W.D. Mich. 2006) ...................................................... 38

*Henry v. Dow Chem. Co.*,
   701 N.W.2d 684 (Mich. 2005) ............................................................... 16, 49

*Hensley Mfg., Inc. v. ProPride, Inc.*,
   579 F.3d 603 (6th Cir. 2009) ......................................................................... 29

*Hetchler v. Am. Life Ins. Co.*,
   254 N.W. 221 (Mich. 1934) ............................................................................. 9

*Hobrla v. Glass*,
   372 N.W.2d 630 (Mich. Ct. App. 1985) .................................................. 23, 24

*Home Owners Ins. Co. v. ADT LLC*,
   109 F. Supp. 3d 1000 (E.D. Mich. 2015) ..................................................... 30

*Iliades v. Dieffenbacher N. Am. Inc.*,
   No. 154358, 2018 WL 2338911
   (Mich. May 23, 2018) ............................................................................. 15, 16

*In re Air Crash Disaster*,
   86 F.3d 498 (6th Cir. 1996) ........................................................................... 42

*In re Auto. Parts Antitrust Litig.*,
   50 F. Supp. 3d 836 (E.D. Mich. 2014) .................................................... 50, 51

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
   495 F. Supp. 2d 1027 (N.D. Cal. 2007) ....................................................... 35

*In re Cardizem CD Antitrust Litig.*,
   105 F. Supp. 2d 618 (E.D. Mich. 2000) ............................................ 49, 50, 51

*In re Certified Question from the Fourteenth Dist. Ct. of App. of Tex.*,
   740 N.W.2d 206 (Mich. 2007) ...................................................................... 45

*In re Certified Question from U.S. Dist. Ct. for E. Dist. of Mich.*,
   622 N.W.2d 518 (Mich. 2001) ........................................................................ 4

*In re Certified Question from U.S. Dist. Ct. for E. Dist. of Mich.*,
   638 N.W.2d 409 (Mich. 2002) .............................................................. 4, 5, 45

*In re Colonial Mortg. Bankers Corp.*,
   324 F.3d 12 (1st Cir. 2003) ........................................................................... 29

*In re Duramax Diesel Litig.*,
   298 F. Supp. 3d 1037 (E.D. Mich. 2018) ............................................................. 31, 55

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
   No. 09 C 7670, 2010 WL 2742310
   (N.D. Ill. July 8, 2010) ..................................................................................... 40

*In re Louisville Nat. Banking Co.*,
   158 F. 403 (6th Cir. 1908) ............................................................................... 49

*In re Neurontin Mktg. & Sales Practices Litig.*,
   712 F.3d 21 (1st Cir. 2013) ......................................................................... 53, 54

*In re Opioid Litig.*,
   No. 400000/2017, 2018 WL 3115102
   (N.Y. Sup. Ct. June 18, 2018) ................................................. 17, 41, 42, 54

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
   779 F. Supp. 2d 671 (E.D. Mich. 2011) ......................................................... 37

*Int'l Bhd. of Elec. Workers, Local Union No. 58 v. McNulty*,
   543 N.W.2d 25 (Mich. Ct. App. 1995) ........................................................... 61

*Iverson Indus. v. Metal Mgmt. Ohio, Inc.*,
   525 F. Supp. 2d 911 (E.D. Mich. 2007) ......................................................... 52

*JAC Holding Enters., Inc. v. Atrium Capital Partners, LLC*,
   997 F. Supp. 2d 710 (E.D. Mich. 2014) ......................................................... 57

*James v. Arms Tech., Inc.*,
   820 A.2d 27 (N.J. 2003) ........................................................................... 22, 23

*Janda v. Riley-Meggs Indus., Inc.*,
   764 F. Supp. 1223 (E.D. Mich. 1991) ....................................................... 34, 36

*John Labatt Ltd. v. Molson Breweries*,
   853 F. Supp. 965 (E.D. Mich. 1994) ......................................................... 36, 37

*Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*,
   504 N.W.2d 635 (Mich. 1993) ....................................................................... 51

*Kerrigan v. ViSalus, Inc.*,
   112 F. Supp. 3d 580 (E.D. Mich. 2015) ..................................................... 50, 61

*Kintigh v. Abbott Pharm.*,
   503 N.W.2d 657 (Mich. Ct. App. 1993) ......................................................... 46

*Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.,*
    No. 2:12-cv-14405, 2013 WL 3773373
    (E.D. Mich. July 17, 2013) ........................................................................... 62

*Kraft v. Detroit Entm't, L.L.C.,*
    683 N.W.2d 200 (Mich. Ct. App. 2004) ........................................................ 26

*Kuznar v. Raksha Corp.,*
    750 N.W.2d 121 (Mich. 2006) ........................................................................ 6

*LaChance v. U.S. Smokeless Tobacco Co.,*
    931 A.2d 571 (N.H. 2007) ....................................................................... 34, 36

*Lauderdale v. Wells Fargo Home Mortg.,*
    552 F. App'x 566 (6th Cir. 2014) ................................................................... 52

*Laura v. DaimlerChrysler Corp.,*
    711 N.W.2d 792 (Mich. Ct. App. 2006) ........................................................ 33

*Leoni v. Rogers,*
    719 F. Supp. 555 (E.D. Mich. 1989) ............................................................. 58

*Lipov v. Louisiana-Pacific Corp.,*
    No. 1:12-CV-439, 2013 WL 3805673
    (W.D. Mich. July 22, 2013) ........................................................................... 52

*Liss v. Lewiston-Richards, Inc.,*
    732 N.W.2d 514 (Mich. 2007) ................................................................. 26, 28

*Logan v. Charter Twp. of W. Bloomfield,*
    No. 333452, 2018 WL 383751
    (Mich. Ct. App. Jan. 11, 2018) ...................................................................... 49

*Love v. Ciccarelli,*
    No. 221993, 2002 WL 44327
    (Mich. Ct. App. Jan. 4, 2002) ........................................................................ 40

*Lowe v. Estate Motors Ltd.,*
    410 N.W.2d 706 (Mich. 1987) ....................................................................... 44

*Lucas v. Awaad,*
    830 N.W.2d 141 (Mich. Ct. App. 2013) ........................................................ 27

*M&D, Inc. v. W.B. McConkey,*
    585 N.W.2d 33 (1998) .................................................................................... 38

*MacDonald v. Thomas M. Cooley Law Sch.,*
    724 F.3d 654 (6th Cir. 2013) .................................................................... 35, 59

*Macomb Interceptor Drain Drainage Dist. v. Kilpatrick,*
    No. 11-13101, 2013 WL 5954426
    (E.D. Mich. Nov. 7, 2013) ........................................................................7

*Marilyn Froling Revocable Living Tr. v. Bloomfield Hills Country Club,*
    769 N.W.2d 234 (Mich. Ct. App. 2009) .................................................7

*Marsh v. Genentech, Inc.,*
    693 F.3d 546 (6th Cir. 2012) ...............................................................28

*Masters Pharm., Inc. v. Drug Enforcement Admin.,*
    861 F.3d 206 (D.C. Cir. 2017) .............................................................46

*Mayhall v. A.H. Pond Co., Inc.,*
    341 N.W.2d 268 (1983) ........................................................................40

*Mayor of Detroit v. Arms Tech., Inc.,*
    669 N.W.2d 845 (2003) ..................................................................20, 21

*McClements v. Ford Motor Co.,*
    702 N.W.2d 166 (Mich. 2005) .............................................................43

*McCracken v. Redford Twp.,*
    439 N.W.2d (Mich. Ct. App. 1989) .....................................................19

*McCray v. Jefferson Chevrolet Co., Inc.,*
    No. 17-cv-12058, 2018 WL 1964674
    (E.D. Mich. Apr. 26, 2018) ...................................................................27

*McGill v. DHL Airways, Inc.,*
    12 F. App'x 247 (6th Cir. 2001) ...........................................................29

*McLiechy v. Bristol W. Ins. Co.,*
    474 F.3d 897 (6th Cir. 2007) ..........................................................42, 43

*Meretta v. Peach,*
    491 N.W.2d 278 (Mich. Ct. App. 1992) ...............................................56

*Meyer v. Citimortgage, Inc.,*
    No. 11-13432, 2012 WL 511995
    (E.D. Mich. Feb. 16, 2012) ...................................................................29

*Michaels v. Amway Corp.,*
    522 N.W.2d 703 (Mich. Ct. App. 1994) ...............................................37

*Michels v. Monaco Coach Corp.,*
    298 F. Supp. 2d 642 (E.D. Mich. 2003) ...............................................30

PLTF'S OMNIBUS OPPOSITION TO MOTIONS TO DISMISS SECOND AMEND. CPT.

*Midfield Concession Enters., Inc. v. Areas USA, Inc.,*
   130 F. Supp. 3d 1122 (E.D. Mich. 2015) .................................................. 50

*Mikos v. Chrysler Corp.,*
   404 N.W.2d 783 (Mich. Ct. App. 1987) ................................................... 34

*Miller v. MSX-IBS Holding, Inc.,*
   No. 16-CV-10596, 2016 WL 4138238
   (E.D. Mich. Aug. 4, 2016) ....................................................................... 51

*Miller v. Mylan Inc.,*
   741 F.3d 674 (6th Cir. 2014) ............................................................. 12, 14

*Mills v. Lerner,*
   No. 319644, 2015 WL 1650931
   (Mich. Ct. App. Apr. 14, 2015) ................................................................. 6

*Molosky v. Wash. Mut., Inc.,*
   664 F.3d 109 (6th Cir. 2011) .................................................................... 26

*Moning v. Alfono,*
   254 N.W.2d 759 (Mich. 1977) ........................................................*passim*

*Monroe Beverage Co., Inc. v. Stroh Brewery Co.,*
   568 N.W.2d 687 (Mich. Ct. App. 1997) ............................................. 42, 43

*Mowery v. Crittenton Hosp.,*
   400 N.W.2d 633 (Mich. Ct. App. 1986) ................................................... 39

*Muilenberg v. Upjohn Co.,*
   320 N.W.2d 358 (Mich. Ct. App. 1982) ................................................... 48

*Muneio v. Fed. Nat'l Mortg. Ass'n,*
   No. 09-12973, 2010 WL 5146328
   (E.D. Mich. Dec. 13, 2010) ...................................................................... 29

*Murdock v. Higgins,*
   559 N.W.2d 639 (Mich. 1997) ................................................................. 54

*Nernberg v. Pearce,*
   35 F.3d 247 (6th Cir. 1994) ................................................................ 55, 60

*Newton v. West,*
   686 N.W.2d 491 (Mich. Ct. App. 2004) ................................................... 26

*Nichols v. Clare Cmty. Hosp.,*
   476 N.W.2d 493 (Mich. Ct. App. 1991) ................................................... 48

*Nintendo of Am., Inc. v. Elcon Indus., Inc.,*
  564 F. Supp. 937 (E.D. Mich. 1982) ............................................................. 36

*Noggles v. Battle Creek Wrecking, Inc.,*
  395 N.W.2d 322 (Mich. Ct. App. 1986) ........................................................ 35

*Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.,*
  710 F. Supp. 2d 458 (D. Del. 2010) ............................................................. 35

*Paul v. Glendale Neurological Assocs., PC,*
  848 N.W.2d 400 (Mich. Ct. App. 2014) ....................................................... 35

*Pavia v. Ellis-Don Mich., Inc.,*
  No. 224327, 2001 WL 1511837
  (Mich. Ct. App. Nov. 27, 2001) ................................................................... 42

*PCA Minerals, LLC v. Merit Energy Co., LLC,*
  725 F. App'x 342 (6th Cir. 2018) ................................................................. 49

*Pfeil v. State St. Bank & Tr. Co.,*
  671 F.3d 585 (6th Cir. 2012) ....................................................................... 28

*Phelps v. Com.,*
  654 S.E.2d 926 (Va. 2008) ........................................................................... 36

*Price v. Annuity Inv'rs Life Ins. Co.,*
  244 F. App'x 654 (6th Cir. 2007) ................................................................... 9

*Price v. Long Realty, Inc.,*
  502 N.W.2d 337 (Mich. Ct. App. 1993) ....................................................... 28

*Pullman-Standard v. Swint,*
  456 U.S. 273 (1982) ..................................................................................... 14

*Ray v. Swager,*
  903 N.W.2d 366 (Mich. 2017) ............................................................... 47, 48

*Reeder v. Hammond,*
  336 N.W.2d 3 (Mich. Ct. App. 1983) ........................................................... 48

*Republic Bank Tr. Co. v. Bear Stearns & Co., Inc.,*
  683 F.3d 239 (6th Cir. 2012) ....................................................................... 58

*Roche v. Blair,*
  9 N.W.2d 861 (Mich. 1943) ......................................................................... 61

*Roller v. Litton Loan Servicing,*
  No. 10-cv-13847, 2011 WL 2490597
  (E.D. Mich. June 21, 2011) .......................................................................... 62

*Rotella v. Wood,*
   528 U.S. 549 (2000) ..................................................................................................8

*Ruffin-Steinback v. dePasse,*
   267 F.3d 457 (6th Cir. 2001) ...................................................................................50

*Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.,*
   625 F. Supp. 2d 508 (2008) ....................................................................................36

*Saloka v. Shelby Nursing Ctr. Joint Venture,*
   No. 255954, 2005 WL 3304596
   (Mich. Ct. App. Dec. 6, 2005) ................................................................................61

*Sanderson v. HCA-The Healthcare Co.,*
   447 F.3d 873 (6th Cir. 2006) ...................................................................................58

*Schaendorf v. Consumers Energy Co.,*
   739 N.W.2d 402 (Mich. Ct. App. 2007) ..................................................................7

*Schechner v. Whirlpool Corp.,*
   237 F. Supp. 3d 601 (E.D. Mich. 2017) .................................................................50

*Schultz v. Consumers Power Co.,*
   506 N.W.2d 175 (Mich. 1993) ...............................................................................41

*Sears v. Cottrell,*
   5 Mich. 251 (1858) .................................................................................................49

*Sims v. Ohio Cas. Ins. Co.,*
   151 F. App'x 433 (6th Cir. 2005) .............................................................................8

*Slobin v. Henry Ford Health Care,*
   666 N.W.2d 632 (Mich. 2003) ...............................................................................34

*Smith v. Glenmark Generics, Inc.,*
   No. 315898, 2014 WL 4087968
   (Mich. Ct. App. Aug. 19, 2014) .............................................................................52

*Smith v. Globe Life Ins. Co.,*
   597 N.W.2d 28 (Mich. 1999) .................................................................................26

*St. Clair Intermediate Sch. Dist. v. Intermediate Ed. Ass'n,*
   581 N.W.2d 707 (Mich. 1998) ...............................................................................56

*State ex rel. Morrisey v. AmerisourceBergen Drug Corp.,*
   No. 12-C-141, 2014 WL 12814021
   (W. Va. Cir. Ct. Dec. 12, 2014) ......................................................................14, 17

*State Farm Mut. Auto. Ins. Co. v. BMW of N. Am., LLC,*
No. 08-12402, 2009 WL 2447612
(E.D. Mich. Aug. 7, 2009) ................................................................................................ *passim*

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC,*
107 F. Supp. 3d 772 (E.D. Mich. 2015) .......................................................................... 8

*State of Mich. ex rel. Kelley v. McDonald Dairy Co.,*
905 F. Supp. 447 (W.D. Mich. 1995) ............................................................................. 7

*Stebbins v. Concord Wrigley Drugs, Inc.,*
416 N.W.2d 381 (Mich. Ct. App. 1987) ....................................................................... 46

*Stephens v. Dixon,*
536 N.W.2d 755 (Mich. 1995) ........................................................................................ 7

*Storey v. Attends Healthcare Prods., Inc.,*
No. 15-CV-13577, 2016 WL 3125210
(E.D. Mich. June 3, 2016) ............................................................................................ 52

*Taylor Grp. v. ANR Storage Co.,*
24 F. App'x 319 (6th Cir. 2001) ............................................................................... 8, 50

*Taylor v. Kochanowski,*
No. 289660, 2010 WL 2696675
(Mich. Ct. App. July 8, 2010) ...................................................................................... 50

*Tefft v. Seward,*
689 F.2d 637 (6th Cir. 1982) ......................................................................................... 63

*Temborius v. Slatkin,*
403 N.W.2d 821 (Mich. Ct. App. 1986) ....................................................................... 61

*Tice v. Zimmer Holdings, Inc.,*
No. 1:15-cv-134, 2015 WL 4392985
(W.D. Mich. July 15, 2015) .......................................................................................... 48

*Timber Prods. Inspection, Inc v. Coastal Container Corp.,*
827 F. Supp. 2d 819 (W.D. Mich. 2011) ...................................................................... 35

*Tkachik v. Mandeville,*
790 N.W.2d 260 (Mich. 2010) ...................................................................................... 50

*Torno v. 2SI, LLC,*
No. 03-74091, 2006 WL 1791392
(E.D. Mich. June 27, 2006) .......................................................................................... 44

*Traxler v. PPG Indus., Inc.,*
158 F. Supp. 3d 607 (N.D. Ohio 2016) ........................................................................ 30

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976) ...................................................................................... 34

*U.S. Fid. & Guar. Co. v. Amerisure Ins. Co.,*
    489 N.W.2d 115 (Mich. Ct. App. 1992) ......................................................... 9

*United States ex. rel. Bledsoe v. Cmty. Health Sys., Inc.,*
    501 F.3d 493 (6th Cir. 2007) ........................................................................ 58

*United States ex rel. Walter Toebe Constr. Co. v. Guarantee Co. of N. Am.,*
    66 F. Supp. 3d 925 (E.D. Mich. 2014) .......................................................... 11

*United States v. Johnson & Johnson,*
    No. 12-7758 (MAS) (LHG), 2017 WL 2367050
    (D.N.J. May 31, 2017) ................................................................................... 14

*United States v. Pfizer, Inc.,*
    No. 05-6795, 2016 WL 807363
    (E.D. Pa. Mar. 1, 2016) ................................................................................. 14

*United States v. Weisscredit Banca Commerciale E D'Investimenti,*
    325 F. Supp. 1384 (S.D.N.Y. 1971) ............................................................... 29

*Valcaniant v. Detroit Edison Co.,*
    679 N.W.2d 689 (2004) ................................................................................. 38

*Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.,*
    182 F.R.D. 500 (W.D. Minn. 1998) ......................................................... 39, 40

*Vandenberg v. Slagh,*
    114 N.W. 72 (1907) ....................................................................................... 40

*Vincent v. Raglin,*
    318 N.W.2d 629 (Mich. Ct. App. 1982) ........................................................ 61

*W.C. Ducomb Co., Inc. v. Ann Arbor Machine Co.,*
    No. 301988, 2012 WL 516089
    (Mich. Ct. App. Feb. 16, 2012) ..................................................................... 52

*Wagner v. Regency Inn Corp.,*
    463 N.W.2d 450 (Mich. App. 1990) ........................................................ 19, 22

*Wayne Cty. Chief Exec. v. Governor,*
    583 N.W.2d 512 (Mich. Ct. App. 1998) .......................................................... 3

*Wiggins v. Argent Mortg. Co., LLC,*
    945 F. Supp. 2d 817 (E.D. Mich 2013),
    *aff'd* No. 13-1797, 2014 U.S. App. LEXIS 24958
    (6th Cir. Mar. 31, 2014) ................................................................................ 63

*Wilson v. Citizens Ins. Co. of Am.,*
    No. 1:13-CV-470, 2015 WL 631978
    (M.D.N.C. Feb. 13, 2015) ................................................................................................ 33

*Wong v. T-Mobile USA, Inc.,*
    No. 05-73922, 2006 WL 2042512
    (E.D. Mich. July 20, 2006) ............................................................................................. 28

*Zeni v. Anderson,*
    243 N.W.2d 270 (Mich. 1976) ....................................................................................... 42

*Zine v. Chrysler Corp.,*
    600 N.W.2d 384 (Mich. Ct. App. 1999) ...................................................................... 35

## STATUTES, RULES AND REGULATIONS

18 U.S.C.
    §1341 ................................................................................................................................. 55
    §1343 ................................................................................................................................. 55

21 U.S.C.
    §823(a) .............................................................................................................................. 12
    §823(b) .............................................................................................................................. 12
    §828 .................................................................................................................................. 12
    §873 .................................................................................................................................. 12

Controlled Substances Act ..................................................................................... *passim*

Federal Communications Act .......................................................................................... 28

Liquor Control Act ........................................................................................................... 42

Mich. Comp. Law

§28.435 .......................................................................................................21
§45.3 ...........................................................................................................3
§333.7214 ...................................................................................................21
§333.7303 ...................................................................................................21
§333.7303a .................................................................................................21
§333.16105 ...................................................................................................6
§333.20106 ...................................................................................................5
§445.901 *et seq.* .......................................................................................21
§445.902(1)(d) ...........................................................................................36
§445.902(d) ............................................................................... 33, 34, 35
§445.903(1) .......................................................................................... 24, 25
§445.903(1)(a) ................................................................... 29, 30, 33
§445.903(1)(c) ............................................................................... 29, 33
§445.903(1)(s) ............................................................................ 29, 38, 39
§445.903(1)(bb) .......................................................................... 29, 39
§445.903(1)(cc) ...........................................................................................29
§445.904(1)(a) ............................................................................... 26, 27
§445.904(4) ...............................................................................................28
§445.911 ................................................................................................ 36, 39
§445.911(1) ...............................................................................................36
§445.911(1)(b) ...........................................................................................40
§445.911(2) ...............................................................................................40
§445.911(3) ...............................................................................................36
§600.2945 ...................................................................................................15
§600.2945(i) ...............................................................................................13
§600.2946 ...................................................................................................15
§600.2947 ...................................................................................................15
§600.2948 ...................................................................................................15
§600.2949 ...................................................................................................15
§600.2949a .................................................................................................15
§600.2945(e) ...............................................................................................15
§600.2945(h) ...................................................................................... 11, 27
§600.2945(i) ...............................................................................................11
§600.2946(5) ...............................................................................................11
§600.2946(5)(a) .........................................................................................13
§600.2947(2) ...............................................................................................15
§600.2949a .................................................................................................15
§600.5805(10) ..............................................................................................6
§600.5813 .....................................................................................................6
§600.5827 .....................................................................................................7
§600.5829 .....................................................................................................7
§600.5830 .....................................................................................................7
§600.5831 .....................................................................................................7
§600.5832 .....................................................................................................7
§600.5833 .....................................................................................................7
§600.5834 .....................................................................................................7
§600.5835 .....................................................................................................7

§600.5836 ........................................................................................................................ 7
§600.5837 ........................................................................................................................ 7
§600.5838 ........................................................................................................................ 7
§600.5838a ...................................................................................................................... 5
§600.5855 ........................................................................................................................ 9

Michigan Consumer Protection Act ........................................................................... *passim*

Michigan Product Liability Act .................................................................................. *passim*

New Hampshire Consumer Protection Act................................................................ 36

Racketeer Influenced and Corrupt Organizations Act,
   18 U.S.C. §1961 *et seq.* ......................................................................................... *passim*

Federal Rules of Civil Procedure
   Rule 9(b) ............................................................................................................... *passim*
   Rule 12(b)(6) ........................................................................................................ 7
   Rule 15(a) ............................................................................................................. 63

21 C.F.R.
   §1301.74(b)........................................................................................................... 12

## SECONDARY AUTHORITIES

7 *American Law of Products Liability*
   §27:8 (3d ed. 1987) .............................................................................................. 22

1963 Michigan Constitution ....................................................................................... 4
   Article 7, §1 .......................................................................................................... 3
   Article 7, §34 ........................................................................................................ 3, 4

Restatement (Second) of Torts
   §821B(2)(a) ............................................................................................................ *passim*

Webster's Third New International Dictionary 1686 (1993)...................................... 36

www.inthefaceofpain.com .......................................................................................... 25

## I.    INTRODUCTION AND SUMMARY OF ISSUES AND ARGUMENT

Monroe County, Michigan ("Plaintiff" or "Monroe") sits squarely in the crosshairs of the worst man-made epidemic in modern medical history – the misuse, abuse, and over-prescription of opioids, which was created and fueled by Defendants' intentional conduct.  Monroe County's Second Amended Complaint (ECF No. 522), ¶2 (hereinafter, "SAC").[1]  The prescription rate and opioid-related drug totals in Monroe are indicative of the severity of the epidemic.  In 2015, there were 12,790 opioids prescriptions per every 10,000 residents in Monroe – not only more prescriptions than people but also a 31% increase compared to 2009.  ¶660.  Opioid-related drug overdose deaths more than quadrupled from 2010 to 2015.  During the first 11 months of 2016, 45 people in Monroe died from drug overdoses – 26 from opioids, including heroin and fentanyl, and another four from methadone, used to treat opioid addiction.  ¶¶647, 659.

Plaintiff, through this lawsuit, seeks to redress past wrongs and prevent future harm by Defendants,[2] asserting two categories of claims: (1) claims against pharmaceutical manufacturers for engaging in a massive false marketing campaign to dramatically expand the market for opioids, and (2) claims against manufacturer and distributor entities in the supply chain for refusing to monitor and restrict the improper distribution of opioids, reaping enormous profits.  ¶1.

Defendants were on notice that prescription opioid diversion was likely occurring in Monroe, and thus were required under state and federal law to investigate, report and halt shipments of suspicious sales.  ¶636.  They failed to do so.  ¶¶648-649.  Instead, they ignored the red flags, including that multiple prescribers in Monroe and in Michigan at large were convicted of crimes involving drug diversion (*see* ¶¶643-646), and they further ignored that fatal overdose rates were rising in lockstep with prescription rates.  ¶647.  As a result, opioid use, addiction, and overdose rates reached epidemic proportions, and the crisis continued to escalate.  ¶¶648-650.

---

[1]    Cites to "¶" throughout refer to paragraphs in the SAC.

[2]    "Defendants" shall refer to all defendants in the SAC, unless otherwise more narrowly defined in the context of the specific argument section.  "Marketing Defendants" refers to those defendants who are referenced as such in the SAC.  ¶¶35-76.  "Distributor Defendants" refers to those defendants who are referenced as such in the SAC.  ¶¶77-89.

The costs of this epidemic, including those related to public health, social services, and criminal justice, are borne by Plaintiff and other governmental entities.  ¶19.  Monroe has suffered these costs, including the handling of emergency responses to overdoses, providing addiction treatment, handling opioid-related investigations, arrests, adjudications, and incarcerations, treating opioid-addicted newborns in neonatal intensive care units, burying the dead, and overpaying for opioids as part of its self-insurance program.  *Id.*

Through their motions,[3] Defendants seek to evade responsibility for their unlawful conduct that created and fueled the epidemic in Monroe.  As explained below, Plaintiff's SAC has pled facts sufficient to allege each of its claims.  In an effort to avoid repetition, this memorandum expressly incorporates, where applicable, overlapping portions of the County of Summit, Ohio and City of Akron's Omnibus Memorandum in Opposition to: (1) Defendants AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp.'s Motion to Dismiss (ECF No. 491); (2) Motion to Dismiss Complaint by Defendants Walmart Inc., CVS Health Corp., Rite Aid Corp., and Walgreens Boots Alliance, Inc. (ECF No. 497); and (3) Manufacturer Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 499).  ECF No. 654 (hereinafter, "*Summit Omnibus Mem.*").  Defendants' motions should be denied.

## II.    LEGAL STANDARD

Plaintiff specifically incorporates the legal standards of review as discussed in the *Summit Omnibus Mem.* at 4-6.

---

[3]    The Memorandum in Support of Distributors' Motion to Dismiss Second Amended Complaint, ECF No. 572-1 (hereinafter "Dist. Mem."); Memorandum of Law in Support of the Manufacturer Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 595-1 (hereinafter, "Mfr. Mem."); Memorandum in Support of Motion to Dismiss by CVS Health Corporation, The Kroger Co., Rite Aid Corporation, Rite Aid of Maryland, Inc., D/B/A/ Rite Aid Mid-Atlantic Customer Support Center, Walgreens Boots Alliance, Inc., and Walmart Inc., ECF No. 592-1 (hereinafter, "Pharm. Mem.").

## III.  ARGUMENT

### A.  Monroe May Assert Its Claims

The SAC seeks recovery for damages suffered by Monroe in its proprietary capacity and further seeks abatement of the nuisance caused by the unlawful conduct.  Manufacturers[4] argue that Plaintiff lacks constitutional authority to bring suit for damages and nuisance associated with the epidemic, positing two flawed arguments: (1) Plaintiff has "no power" to bring this lawsuit, and (2) the Michigan Attorney General possesses the "exclusive power" to bring this lawsuit under the "statewide concern" doctrine.

#### 1.  Monroe Possesses Constitutional and Statutory Authority to Assert Its Claims

Article 7, §1 of the 1963 Michigan Constitution provides that "(e)ach organized county shall be a body corporate with powers and immunities provided by law," specifically conferring on the County the power to sue.[5]  The State Constitution also provides that county powers are to be liberally construed.[6]  Indeed, counties routinely bring lawsuits to vindicate county interests and those of the taxpayers that the county serves.[7]

---

[4] "Manufacturers" as used in this Memorandum has the same definition as "Manufacturer Defendants" in Manufacturer Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 595) at 1 n.1.

[5] "Each organized county shall be a body politic and corporate, for the following purposes, that is to say: To sue and be sued . . . and to do all other necessary acts in relation to the property and concerns of the county."  Mich. Comp. Law ("MCL") §45.3.

[6] 1963 Michigan Constitution, Article 7, §34: "The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor.  Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution."

[7] The ability of Michigan counties to bring lawsuits to vindicate their interests has been recognized in a variety of contexts.  *See, e.g., Cty. of Oakland v. City of Detroit*, 866 F.2d 839, 847 (6th Cir. 1989) ("Are the plaintiff counties proper parties to bring private antitrust and RICO actions under these statutory provisions? We believe they are."); *Wayne Cty. Chief Exec. v. Governor*, 583 N.W.2d 512, 518 (Mich. Ct. App. 1998) (recognizing Wayne County Executive's ability to sue Governor in his capacity as plaintiff "effectively representing the interests of taxpayers . . . .").

### 2.     The "Statewide Concern" Doctrine Has Been Overruled

Second, Manufacturers' reliance upon the "statewide concern" doctrine is misplaced. Manufacturers cite *Arlan's Dep't Stores, Inc. v. Kelley*, 130 N.W.2d 892 (Mich. 1964), for the proposition that the Michigan Constitution "does not permit" Plaintiff to sue with respect to the opioid epidemic because it is a matter of statewide concern.  Mfr. Mem. at 4; *see Arlan's*, 130 N.W.2d at 895.  However, the language referenced in *Arlan's*, is predicated on *Attorney Gen. ex rel. Lennane v. City of Detroit*, 196 N.W. 391 (Mich. 1923), which was explicitly reversed by the Michigan Supreme Court in *Associated Builders & Contractors v. City of Lansing*, 880 N.W.2d 765 (Mich. 2016):

> Furthermore, *Lennane's* holding appears to rest on an implicit dichotomy: if something is a matter of "state concern" it cannot also be a matter of "local concern."  But this binary understanding does not comport with the plain language of the 1963 Constitution, which grants cities and villages broad powers over "municipal concerns, property and government" whether those powers are enumerated or not.  The relevant constitutional language does not state that a matter cannot be a "municipal concern" if the state might also have an interest in it.  While a binary understanding of state and local governmental power might have been common 100 years ago, the ratifiers of the 1963 Constitution do not appear to have worked under the same apprehension – instead, we are left with their words: "The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor."[8]

*Id.* at 770-71.[9]  Manufacturers' assertions under the "statewide concern doctrine" fail.

### 3.     The County Has Concurrent Authority to Bring This Suit

Manufacturers also misconstrue *In re Certified Question from U.S. Dist. Ct. for E. Dist. of Mich.*, 638 N.W.2d 409, 547 (Mich. 2002), contending that it stands for the notion that the Michigan Attorney General has "exclusive authority" to bring this suit.  But the question presented and ruled upon in *Certified Question* was not whether the **Attorney General** had exclusive authority, but **whether a county** possessed exclusive authority.  *In re Certified Question from U.S. Dist. Ct. for E. Dist. of Mich.*, 622 N.W.2d 518 (Mich. 2001) (order requesting supplemental briefing on the question: "To

---

[8]     All citations are omitted and emphasis is added unless otherwise noted.

[9]     Although *Associated Builders* addressed an action of a city, the court relied upon powers conferred under the 1963 Michigan Constitution to cities, townships, and counties.  *See* n.6 and the reference to 1963 Michigan Constitution, Article 7, §34.

what extent, if any, does plaintiff [the county] have an exclusive right to bring any of the claims asserted in this action?").  While the Michigan Supreme Court rejected the argument that the county possessed exclusive authority, it recognized the county possessed authority to bring the claim.  *Id.* at 415.

### 4.  Monroe Has Standing to Bring These Claims[10]

Plaintiff has alleged that it has made and will be required to make, direct payments from the public coffers to address the opioid crisis.  *See, e.g.*, ¶¶662-664, 741, 858, 870, 879, 882-884.  Plaintiff has a cognizable interest in abating the nuisance that afflicts its community (¶¶133-135, 860-871) and in maintaining the fiscal integrity of its communities by seeking reimbursement for past and future abatement costs it necessarily and foreseeably incurred.

### 5.  Monroe Was Not Required to Provide Pre-Suit Notice to the Pharmacy Defendants

Pharmacies[11] incorrectly assert that the Court must dismiss Plaintiff's "medical malpractice claim" for its failure to provide pre-suit notice and an affidavit of merit, as required by Michigan's malpractice statutes.  *See* Pharm. Mem. at 2-3.  But notice and an affidavit are required only in medical malpractice cases and only when such cases are brought against licensed health care facilities, agencies, or health care professionals.  MCL §600.5838a (required in medical malpractice actions); MCL §333.20106 (defining licensed health care facilities and agencies);[12] MCL §333.20106

---

[10]  Plaintiff incorporates the arguments raised by Summit County, which apply with equal force here.  *See Summit* Omnibus Mem. at 106-09; *see also supra* at n.7.

[11]  As used in this Memorandum, "Pharmacies" or "Pharmacy Defendants" are a reference to the following Defendants: CVS Health Corporation, The Kroger Co., Rite Aid Corporation, Rite Aid of Maryland, Inc., D/B/A Rite Aid Mid-Atlantic Customer Support Center, Walgreens Boots Alliance, Inc., and Walmart Inc. the "Moving Defendants" referenced in ECF No. 592.

[12]  The Public Health Code defines a "licensed health care facility or agency" as one of the following: (a) an ambulance operation, aircraft transport operation, non-transport prehospital life support operation, or medical first response service; (b) a county medical care facility; (c) a freestanding surgical outpatient facility; (d) a health maintenance organization; (e) a home for the aged; (f) a hospital; (g) a nursing home; (h) a hospice; (i) a hospice residence.  MCL §333.20106.

(defining licensed health care professionals).[13]  Here, Plaintiff does not bring a medical malpractice claim.  No Defendant is a licensed health care facility, agency, or health care professional.  Further, the Michigan Supreme Court has held that a pharmacy is neither a licensed health care facility, nor a licensed agency, nor a licensed health care professional.  *Kuznar v. Raksha Corp.*, 750 N.W.2d 121 (Mich. 2006).  So, neither pre-suit notice nor an affidavit of merit is required.

Pharmacies rely on *Graham v. Rite Aid Corp.*, No. 240500, 2003 WL 21079858 (Mich. Ct. App. May 13, 2003), but nowhere in *Graham* does the court hold that a pharmacy is a health care provider.  *Graham* stands for the simple proposition that a pharmacy can be vicariously liable for professional malpractice committed by one of its employees.  *Id.* at *2-*3.  Here, the Pharmacies' liability stems directly from their own acts and omissions, not from vicarious liability for a licensed health care provider rendering professional service.  *Graham* is inapplicable.

### 6.  Plaintiff's Claims Are Not Preempted

For the reasons set forth in the *Summit* Omnibus Mem., Plaintiff's state law claims are not preempted.  *Summit* Omnibus Mem. at 114-22.

### B.  Plaintiff's Claims Are Not Time-Barred

The Manufacturer Defendants, but no others, move to dismiss as time-barred only "in part" Plaintiff's claims arising from conduct that occurred more than six years before filing of the operative Complaints.[14]  Mfr. Mem. at 21-22.  The Manufacturers implicitly acknowledge that Plaintiff has timely claims for wrongful acts occurring within the limitations periods.  *See Cole v. Marathon Oil Corp.*, 711 F. App'x 784, 786 (6th Cir. 2017) (just because "'some of a plaintiff's claims

---

[13]   A pharmacy is not a "licensed healthcare provider."  "'Health profession' means a vocation, calling, occupation, or employment performed by an **individual** acting pursuant to a license or registration issued under this article."  MCL §333.16105.

[14]   The Manufacturer Defendants do not fully develop what they assert are the applicable limitation periods. They falsely maintain that Plaintiff's public nuisance claim is governed by MCL §600.5805(10)'s three-year statute of limitations.  Mfr. Mem. at 21 n.10.  However, this is incorrect as even if the statute of limitations did apply, which for reasons set forth below it does not, it would be MCL §600.5813's six-year statute of limitations for Plaintiff's public nuisance claims.  *See Dep't of Envtl. Quality v. Waterous Co.*, 760 N.W.2d 856, 876 (Mich. Ct. App. 2008); *Mills v. Lerner,* No. 319644, 2015 WL 1650931, at *2 (Mich. Ct. App. Apr. 14, 2015) (the court held that "[t]he six-year limitations period in MCL §600.5813 applies to a township's claim to obtain injunctive relief to abate a public nuisance").

accrued outside the applicable limitations period [this] does not time-bar all the plaintiff's claims'"); *H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.*, 595 N.W.2d 176 (Mich. Ct. App. 1999) (same). However, the Manufacturer Defendants misstate Michigan law as to when claims accrue, and fail to acknowledge questions of fact[15] associated with application of fraudulent concealment and equitable estoppel. Moreover, it is premature to rule on this statute of limitations defense in a Rule 12(b)(6) motion.

### 1. Defendants Misstate Michigan Law Regarding Accrual

Manufacturer Defendants incorrectly assert that "Plaintiff's claims accrued at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mfr. Mem. at 21 (citing MCL §600.5827).[16] However, "the term 'wrong,' as used in the accrual provision, refers to the date on which the plaintiff was harmed by the defendant's negligent act, not the date on which the defendant acted negligently." *Stephens v. Dixon*, 536 N.W.2d 755, 756 (Mich. 1995).[17]

A claim accrues when all the necessary elements for a cause of action have occurred, including damages. *Stephens*, 536 N.W.2d at 758; *Marilyn Froling Revocable Living Tr. v. Bloomfield Hills Country Club*, 769 N.W.2d 234, 250 (Mich. Ct. App. 2009). Thus, the time of accrual is a question of fact that is not appropriate at this stage of the case.

---

[15] A complaint may be dismissed under Rule 12(b)(6) for failing to comply with the statute of limitations only when the complaint on its face **conclusively** indicates that the action is time-barred. Where, as here, Plaintiff asserts various tolling exceptions to Michigan's statutes of limitations (¶¶685-695), the applicability of those exceptions is a question of fact that should not be resolved on a motion to dismiss. *See Firestone v. Firestone*, 76 F.3d 1205, 1208-09 (D.C. Cir. 1996) ("As we have repeatedly held, courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. . . . [W]e made clear that, because statute of limitations issues often depend on contested questions of act, dismissal is appropriate only if the complaint on its face is conclusively time-barred."); *see also Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*, No. 11-13101, 2013 WL 5954426, at *4 (E.D. Mich. Nov. 7, 2013) (court refused to dismiss claims because factual issues existed as to application of fraudulent concealment); *State of Mich. ex rel. Kelley v. McDonald Dairy Co.*, 905 F. Supp. 447 (W.D. Mich. 1995) (same).

[16] Defendants have not specified which claims are subject to MCL §600.5827. However, this accrual provision only applies to MCL §§600.5829-5838 and does not apply to, for example, the Michigan Consumer Protection Act ("MCPA"). *Id.*

[17] "For purposes of MCL §600.5827, the term 'wrong' refers to the date on which the plaintiff was harmed by the defendant's act, not the date on which the defendant acted negligently because that would permit a cause of action to be barred before any injury resulted." *Schaendorf v. Consumers Energy Co.*, 739 N.W.2d 402, 406 (Mich. Ct. App. 2007).

### 2. The Injury Discovery Rule Applies to Plaintiff's RICO Claims

The Sixth Circuit and the Eastern District of Michigan have applied the "injury discovery rule" to Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, finding that "'[t]he limitations period for RICO claims accrues when a plaintiff knew or should have known of an injury.'" *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 792 (E.D. Mich. 2015) (citing *Taylor Grp. v. ANR Storage Co.*, 24 F. App'x 319, 325 (6th Cir. 2001)); *see also Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005) ("The [limitations] period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation.") (citing *Rotella v. Wood*, 528 U.S. 549, 554-55 (2000)); *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323 (E.D. Mich. 2011). In *Fremont*, the plaintiff alleged that it did not discover the fraudulent scheme until 2007, which was sufficient to preclude dismissal at the motion to dismiss stage on statute of limitations grounds. 811 F. Supp. 2d at 1340.

Since the Supreme Court's decision in *Agency Holding Corp. v. Malley-Drift & Assocs., Inc.*, 483 U.S. 143, 156 (1987), federal courts have uniformly upheld the application of federal equitable tolling and equitable estoppel principles in the context of civil RICO. As explained in the SAC, "Plaintiff did not discover the nature, scope, and magnitude of Defendants' misconduct, and its full impact on Monroe County and Michigan, and could not have acquired such knowledge earlier through the exercise of reasonable diligence." ¶691; *see also* ¶693.

### 3. Fraudulent Concealment and Equitable Tolling Were Sufficiently Pled

Fraudulent concealment exists when a defendant uses an "artifice, planned to prevent inquiry or escape investigation and to mislead or hinder acquirement of information disclosing a right of action." *Draws v. Levin*, 52 N.W.2d 180, 183 (Mich. 1952). Here, Plaintiff has established fraudulent concealment by alleging that Defendants committed affirmative acts or misrepresentations that were designed to prevent discovery of the cause of action.

Similarly, under Michigan law, "'[e]quitable estoppel arises where one party has knowingly concealed or falsely represented a material fact, while inducing another's reasonable reliance on that

misapprehension, under circumstances where the relying party would suffer prejudice if the representing or concealing party were subsequently to assume a contrary position.'" *Price v. Annuity Inv'rs Life Ins. Co.*, 244 F. App'x 654, 658 (6th Cir. 2007). "Michigan and federal case law provides precedent for the principle that limitation statutes are not entirely rigid, allowing judicial tolling under certain circumstances." *U.S. Fid. & Guar. Co. v. Amerisure Ins. Co.*, 489 N.W.2d 115, 117 (Mich. Ct. App. 1992). Estoppel can be applied when one "'by his silence . . . ought to speak out, [and] intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.'" *Doe v. Bishop Foley Catholic High Sch.*, No. 336795, 2018 WL 2024589, at *8 (Mich. Ct. App. May 1, 2018) (quoting *Hetchler v. Am. Life Ins. Co.*, 254 N.W. 221, 223 (Mich. 1934)). The time requirements in lawsuits between private litigants are customarily subject to equitable tolling if such tolling is necessary to prevent unfairness to a diligent plaintiff. *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 562 N.W.2d 648 (Mich. Ct. App. 1997).

Plaintiff has sufficiently pled facts to support equitable estoppel and fraudulent concealment under MCL §600.5855. *See* ¶¶687-695. Plaintiff has alleged that Defendants are equitably estopped from asserting a statute of limitations defense, because they purposefully concealed their unlawful conduct and fraudulently assured the public, including Plaintiff, that they were actively working to comply with their obligations under controlled substances laws and to curb the opioid epidemic. ¶¶685-695, 886-896. Plaintiff alleged specific examples of Defendants' patently false claims, including pictures and quotations taken directly from source material (¶¶139-310) and the ways those misrepresentations were disseminated through Front Groups,[18] key opinion leaders ("KOLs"), and CME programs. ¶¶138-150, 240, 311-425.

Defendants' misrepresentations were furthered through branded advertising to promote their products to doctors (¶¶71-101, 125-126, 189, 269-270, 312, 403-412), unbranded advertising to

---

[18] The Front Groups are patient advocacy groups and professional organizations funded by Defendants that put out patient education materials, treatments guidelines, and continuing medical education ("CME") programs supporting the use of opioids for chronic pain while overstating their benefits and understating their risks. ¶313.

promote their products to consumers without United States Food and Drug Administration ("FDA") review (¶¶312, 405-406), and funding, drafting and disseminating publications that supported Defendants' misrepresentations.  ¶¶407-412, 796.  Defendants used speakers' bureaus and programs to spread their deceptive messages (¶¶40-55, 62-75, 312, 423-425, 710, 888) and engaged in direct detailing to doctors where Manufacturer Defendants' sales agents made the misrepresentations they had been trained by their employers to make.  ¶¶149-157, 206-207, 299-300, 413-452, 520-537, 793-796.  Defendants' warning labels did not adequately advise doctors or address the risk associated with their products.  ¶¶35, 135, 144, 159-310, 376-389, 704-710.  Likewise, Plaintiff pled examples of the ways in which Defendants were aware of and omitted information regarding suspicious orders.  ¶¶9, 14, 35, 80, 351, 458-612.  In addition, Plaintiff pled specific examples of Defendants making misrepresentations regarding their duty to identify, report and halt suspicious orders.  ¶¶463-480, 537-566, 632, 726-765, 887-891.

Further, when some information regarding the dangers of opioids was revealed, Defendants continued to make misrepresentations, shifting the blame onto others (¶¶535, 689) and claimed their new formulation of opioid medication would deter abuse and resist tampering.  ¶¶139, 188, 269-309, 888.  Defendants further concealed their unlawful conduct and fraudulently assured the public they were working to comply with their obligations under the controlled substances laws when in fact their goal was to generate profits while protecting their registered manufacturer or distributor status.  ¶¶479-486, 547-559, 687-695.

Defendants' fraudulent concealment deprived Plaintiff of actual or implied knowledge of facts sufficient to put Plaintiff on notice of potential claims, and Plaintiff did not discover the nature and magnitude of Defendants' misconduct, nor could it have acquired such knowledge earlier through the exercise of reasonable diligence.  ¶¶687-695.

Defendants' cited case, *Doe*, 2018 WL 2024589, at *8-*10, is inapposite.  In *Doe*, the court rejected plaintiff's equitable estoppel argument because the acts alleged by plaintiff "did not show conduct designed to induce plaintiff to refrain from bringing the action or that plaintiff refrained from timely filing her lawsuit due to the actions of defendants." *Id.* at *4.  In light of the facts cited

above, the same cannot be said here.  *United States ex rel. Walter Toebe Constr. Co. v. Guarantee Co. of N. Am.*, 66 F. Supp. 3d 925, 930 (E.D. Mich. 2014).

      **C.**     **The MPLA Immunity Provision Does Not Bar Plaintiff's Claims**

Asserting an implausibly broad reading of Michigan's Product Liability Act ("MPLA"), Defendants contend that their status as drug "manufacturers" and "sellers" gives them absolute immunity to **any** state-law cause of action.  However, the MPLA provides no such immunity for the conduct alleged here.

      **1.**     **Nothing in the MPLA Immunizes Defendants' Failure to Identify, Investigate, and Report Suspicious Orders of Opioids**

Plaintiff alleges that Defendants repeatedly failed to "identify, investigate and report suspicious orders to the DEA."  *See, e.g.*, ¶¶524, 865(c)-(f); ¶876(c)-(f).  As to those claims, the MPLA is irrelevant.  The MPLA applies only to "product liability action[s]" under state law.  MCL §600.2946(5).  Such actions are defined to include claims based on the "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling" of drugs.  MCL §600.2945(h)-(i).  Absent from that exhaustive list is anything encompassing Defendants' failure to identify suspicious opioid orders, investigate such orders, or report such orders to the United States Drug Enforcement Agency ("DEA").  By its own terms, the MPLA does not apply to Defendants' breach of their diversion-related duties.

Defendants suggest, without support or explanation, that their repeated failure to investigate, report, or identify suspicious orders falls within the ambit of "marketing," "advertising," or "selling" drugs.  Dist. Mem. at 4; *see* Pharm. Mem. at 4.  That contention, however, is wholly inconsistent with the plain meaning of those terms.  To be sure, Defendants may have been under a separate common-law duty not to sell "drugs at unreasonable volumes," *see* Pharm. Mem. at 4, and not to market opioids in an irresponsible manner.  *See infra* at §III.C.2. (explaining why MPLA does not apply to Plaintiff's false marketing-based claims).  But those duties, and the claims based on them, are distinct from the specific obligations imposed on Defendants by the Controlled Substances Act

("CSA").  Defendants shirked those obligations, and their parallel duties under the common law, when they failed to create a system to effectively identify, investigate, and halt suspicious orders.  21 C.F.R. §1301.74(b).  The words "marketing," "advertising," and "selling" do not reach that conduct.

Moreover, any ambiguity regarding the MPLA's application must be construed in Monroe's favor.  In *Miller v. Mylan Inc.*, 741 F.3d 674, 677-78 (6th Cir. 2014), the Sixth Circuit considered whether a "combination product" – which consists of both a drug and a delivery device – qualifies as a "drug" subject to immunity under the MPLA.  Noting that the MPLA is "ambiguous as to whether the manufacturer of a combination product should be immune from suit," the court held that "[a]ccepted canons of statutory construction require this ambiguity to work against immunity." *Id.* at 678.  The same principle applies here.  For conduct to be immunized by the MPLA, it must **unambiguously** be subject to the law.  Whatever creative arguments might be made about the words "selling," "marketing," and "advertising" – or any other terms that define "product liability action" in the MPLA – Defendants' diversion-related conduct is certainly not **unambiguously** subject to their reach.

It would make little sense for the MPLA to immunize a distributor's failure to prevent drug diversion.  The MPLA provides a safe-harbor in product-liability actions if the FDA approves a drug, but a distributor's diversion-related duties, for which the CSA provides the standard of care, have nothing to do with FDA approval of a drug or the conduct which the MPLA immunizes.  The CSA exists "to control the legitimate and illegitimate traffic in controlled substances." *Gonzales v. Raich*, 545 U.S. 1, 12 (2005).  It envisions drug manufacturers and distributors serving as watchdogs for suspicious orders, working hand-in-hand with the DEA, law enforcement, and local communities. *See* 21 U.S.C. §§823(a)-(b), 828, 873.  The CSA standard of care exists with full force even where the FDA has approved a drug.  It would be incongruous for a law to immunize a distributor's dereliction of duties for which the standard of care is governed by the CSA on the ground that the drug at issue was FDA approved.

Finally, at various points in their motion, Defendants suggest that the MPLA gives them an "absolute defense" to state-law claims because they are "manufacturers" and "sellers" of drugs.

Dist. Mem. at 4.  This is incorrect.  The MPLA provides a statutory defense to claims based on certain conduct.  MCL §600.2945(i).  The statute does not grant a whole category of companies roving license to inflict harm on Michigan communities without fear of civil suit.  The fact that Defendants are "manufacturers" and "sellers" of drugs – and that they committed tortious acts in the course of conducting business – does not unconditionally immunize them from liability.

## 2.  The MPLA Does Not Immunize Defendants' False Marketing

Monroe, moreover, has adequately alleged that **all** of Defendants' behavior – marketing and failure to control the supply chain – falls outside the scope of the MPLA.  A defendant may not invoke the MPLA's statutory-defense section if, "**at any time**," the defendant (1) "intentionally withholds from," or "misrepresents" information to the FDA that would have (2) led the FDA to deny approval to, or to withdraw approval for, the drugs in question.  MCL §600.2946(5)(a). Critically, the SAC canvasses multiple instances in which the FDA itself has admonished Defendants for their misrepresentations.  These activities include:

- the FDA's finding that Endo "omi[tted] . . . material facts" in promoting Opana ER and the FDA's subsequent request that Opana ER be removed from the market (¶¶64, 128, 282-304);

- the FDA's warning letters to Janssen admonishing Janssen for its misleading promotion of the Duragesic patch (¶¶130, 701);

- the FDA's warning letter to Purdue regarding Purdue's "Life With Relief" campaign in which Purdue omitted critical language about OxyContin (¶232);

- Purdue's prolonged refusal to comply with the FDA's guidance in connection with OxyContin's label and promotion (¶¶159-163);

- Cephalon's contravention of the FDA's strict instructions regarding the promotion of Actiq and Fentora (¶¶421, 706-708); and

- the FDA's warning letters to manufacturers regarding the lack of evidence for claims that "the use of opioids for chronic pain improves patients' function and quality of life."  ¶242.

The SAC is replete with examples of Defendants' misrepresentations regarding their dangerous products.  *See* ¶¶139-457.  Discovery is almost certain to uncover additional instances of misrepresentations and omissions made directly to the FDA.

PLTF'S OMNIBUS OPPOSITION TO MOTIONS TO DISMISS SECOND AMEND. CPT.

Additionally, much of the alleged misconduct by manufacturers pertains to non-branded promotional efforts, activity which was completely unregulated by any governmental entity. The court in *United States v. Pfizer, Inc.*, No. 05-6795, 2016 WL 807363 (E.D. Pa. Mar. 1, 2016), held that "we confront allegations of off-label promotion of a prescription drug for uses beyond the FDA's approval. Accordingly, at this stage – [plaintiff's] claims . . . may proceed." *Id.* at *14; *see also United States v. Johnson & Johnson*, No. 12-7758 (MAS) (LHG), 2017 WL 2367050, at *7 (D.N.J. May 31, 2017).

The import of such deception, moreover, is a question of fact for the jury. The MPLA requires fact-finders to assess states of mind: namely, whether Defendants made misrepresentations "intentionally" and whether those misrepresentations would have affected the FDA's approval of the drug in question. Such questions of intent are reserved for a jury. *See Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982).

### 3. Whether Defendants' Products Are "Combination Products," Exempt from the MPLA, Is a Question of Fact

In addition to the fact that Defendants' conduct is not immunized by the MPLA, the MPLA does not cover many of the opioid ***products*** at issue in this case. As noted above, the Sixth Circuit held that the MPLA does not apply to "combination products," which include both a drug and a delivery mechanism. *Miller*, 741 F.3d 677-78. Many of the opioid products sold, distributed, and manufactured by Defendants are best categorized as "combination products." Indeed, such combination products are the crux of the modern opioid crisis. Although the opioid ***drug*** has been "recognized for millennia" (¶92), Defendants' products innovatively (and disastrously) offered new ***delivery mechanisms*** for opioids. Those delivery mechanisms include, but are not limited to, patches, lollipops, and oral delivery systems with extended-release mechanisms.

Whether a product qualifies as a "combination product" under the MPLA depends, in part, on whether the delivery mechanism has a "mechanical . . . effect on the human body." *Miller*, 741 F.3d at 677. Such an inquiry is a "question of fact" for a jury, *id.* at 678, and thus dismissal based on the MPLA is improper at this stage. *Id.*

> **4.**    **The Statutory Immunity Arguments Do Not Shield Defendants from Reasonably Foreseeable Misuse of Opioid Products**

Plaintiff also adequately pleads Defendants were aware of the reasonably foreseeable misuse of opioid products.  Monroe's claim is based upon widespread use,[19] misuse and abuse of opioid products, caused by the failure to identify, investigate and report suspicious orders under the CSA. Michigan law imposes liability for misuse of a product if the misuse is reasonably foreseeable to the defendant.

> MCL §600.2945(e) defines "[m]isuse" as:

> use of a product in a materially different manner than the product's intended use. Misuse includes uses inconsistent with the specifications and standards applicable to the product, uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product, and uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances.

Manufacturers and sellers are not liable for harm caused by such misuse "***unless the misuse was reasonably foreseeable***."  MCL §600.2947(2); *see Iliades v. Dieffenbacher N. Am. Inc.*, No. 154358, 2018 WL 2338911, at *3 (Mich. May 23, 2018) ("[F]irst, a court must decide whether there was misuse of the product.  Second, if there was misuse, a court must decide whether that particular misuse was reasonably foreseeable by the manufacturer.").[20]

Plaintiff's allegations satisfy both prongs.  First, Plaintiff has pled that there was ample misuse of opioids.  ¶2.  The SAC is filled with factually specific references to the abuse and misuse of opioids.  Second, Plaintiff has adequately pled that the misuse and alteration of opioids was "reasonably foreseeable."  "When dealing with the foreseeability of a product's misuse in particular,

---

[19]    Opioids are addicting and cause harm even without misuse.  But, as described herein, Monroe's claims also arise from foreseeable misuse and abuse.

[20]    The standards for evaluating liability caused by "misuse" of a product are applicable to FDA-approved drugs.  The MPLA states that the definitions contained in the statute – including the definition of misuse- are applicable to MCL §§600.2945-2949a.  *See* MCL §600.2945.  If the legislature intended to render the "misuse" section inapplicable to a specific section of the MPLA, it would have done so expressly.  Indeed, it has: there are specific sections in the MPLA where the "misuse" provision contained in MCL §600.2947(2) does not apply.  *See* MCL §600.2949a.  Notably, the legislature has not identified the drug immunity provision as an instance where the "misuse" provision is inapplicable.

the crucial inquiry is whether, at the time the product was manufactured, the manufacturer was aware, or should have been aware, of that misuse." *Iliades*, 2018 WL 2338911, at *3. Plaintiff has adequately pled each Defendant was aware of its prescription opioid misuse (*see, e.g.*, ¶195 (Purdue); ¶¶191, 554 (Malinckrodt); ¶¶252, 287, 305 (Endo); ¶386 (Manufacturers); ¶549 (Cardinal); ¶551 (Amerisource)) and that the explosion in opioid misuse attributable to their conduct was foreseeable. ¶650.

### D.     The Free Public Services Doctrine Does Not Bar Plaintiff's Claims

Distributors' and Manufacturers' assertion that the "free public services doctrine" (also known as the "municipal cost recovery rule") bars Monroe's claims, lacks support. To the contrary, one Michigan trial court has held that the public service and municipal costs that Monroe seeks here "are not barred by the municipal cost recovery rule." *Archer v. Arms Tech., Inc.*, No. 99-912658 NZ, 2000 WL 35624356, slip. op. at 7 (Mich. Cir. Ct. May 16, 2000) (attached hereto as Ex. 1).

The Michigan cases that Distributors cite for support neither adopt nor apply the free public services doctrine.[21] For example, in *Brandon Twp. v. Jerome Builders, Inc.*, 263 N.W.2d 326 (Mich. Ct. App. 1977), the court did not hold, as Distributors posit, that "absent a 'statutory right' – municipalities cannot bring damages actions to recover monies spent to abate a public nuisance." Dist. Mem. at 14. Rather, the court held that under a particular statute the expense must be collected against the property, not assessed as damages. *Brandon Twp.*, 236 N.W.2d at 328. In fact, the *Brandon Twp.* case reversed the trial court's grant of summary judgment in favor of the defendant on the township's quasi contract theory to recover the costs incurred in abating a public nuisance. *Id.* Thus, *Brandon Twp.* actually supports Monroe's position. Distributors also rely on *Henry v. Dow Chem. Co.*, 701 N.W.2d 684 (Mich. 2005), which neither adopts the free public services doctrine nor even concerns a public entity.

---

[21]  Manufacturers are more forthcoming, conceding that "[n]o published Michigan decision appears to have explicitly adopted or rejected the doctrine." Mfr. Mem. Br. at 16-17. Regardless, they assert that Michigan would adopt the rule if presented with the issue, citing nothing in support thereof.

Distributors and Manufacturers cite non-controlling case law from other jurisdictions adopting the free public services doctrine, but more compelling authority and public policy favors a finding in Plaintiff's favor.  Cases from other jurisdictions addressing circumstances and claims parallel to those here reject the use of the free public services doctrine to escape liability for costs caused by a public nuisance or other long-term and ongoing tortious conduct.  In *City of Everett v. Purdue Pharma L.P.*, No. C17-209RSM, 2017 WL 4236062 (W.D. Wash. Sept. 25, 2017), the court denied a motion to dismiss the city's claims to recover costs similar to those involved here in connection with its claims against Purdue for the illegal diversion of OxyContin.  *Id.* at *7.  Similarly, the New York Supreme Court recently denied a motion to dismiss brought by opioid manufacturers, including Defendants here, rejecting application of the municipal cost recovery rule.  In so doing, the court distinguished expenses due to accidents and emergencies necessitating the normal provision of public services, from public harm incurred due to intentional, persistently deceptive conduct:

> Moreover, a review of the current state of the law revealed no case law supporting the manufacturer defendants' contention that such rule bars recovery for municipal expenses incurred, not by reason of an accident or an emergency situation necessitating 'the normal provision of police, fire and emergency services' (*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F2d at 324), but to remedy public harm caused by an intentional, persistent course of deceptive conduct. The manufacturer defendants' argument that, despite allegations they designed and implemented materially deceptive marketing campaigns to mislead the public and prescribers about the risks and benefits of prescription opioids, the municipal cost recovery rule forecloses the plaintiffs from recovering the costs for services to treat residents suffering from prescription opioid abuse, addiction or overdose, or for the increased costs of programs implemented to stem prescription opioid-related criminal activities, if accepted, would distort the doctrine beyond recognition.

*In re Opioid Litig.*, No. 400000/2017, 2018 WL 3115102, at *10 (N.Y. Sup. Ct. June 18, 2018); *see also State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, No. 12-C-141, 2014 WL 12814021, at *19 (W. Va. Cir. Ct. Dec. 12, 2014) (rejecting application of the municipal cost recovery rule and noting that *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004) – on which Distributors and Manufacturers rely – is an outlier: "[W]hen the municipal cost recovery doctrine has been applied, it has, by and large, been applied only to discrete, one-time events and not to ongoing public problems such as the facts alleged here.").

Similar reasoning has been used to reject application of the free public services doctrine in cases against firearm manufacturers.  For example, in *City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568 (Mass. July 13, 2000), the Massachusetts Supreme Court rejected an argument similar to the Distributors' argument.  There, the city sought recovery of damages, including increased costs on law enforcement, emergency response, unemployment benefits, and prison costs, alleging that the defendant gun manufacturers and distributors created an illegal firearms market for juveniles, criminals, and other unauthorized gun users.  *Id.* at *1.  The court rejected defendants' argument that the free public services doctrine barred the city's claims, reasoning that the harm defendants caused was not isolated or the type the municipality could expect might occur.  *Id.* at *8; *see also  City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1242-43 (Ind. 2003) (agreeing with courts rejecting the municipal cost recovery rule); *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 428 (2002) (reversing and rejecting appellate court's decision that the city could not recover the costs of its government services, finding that the continuing nature of the misconduct may justify the recoupment of such costs).

Barring Plaintiff's recovery based on the unrecognized free public services doctrine would unfairly shift the burden of Defendants' wrongful conduct to Monroe and its taxpayers.  Knowing that they will not be liable for the immense damages their actions knowingly and willfully cause creates perverse incentives for tortfeasors, like Defendants, to continue their wrongful, but highly profitable, conduct.  Further, Monroe has alleged that it paid for opioids distributed by Defendants for sale in Monroe (¶¶28, 882-883) and that Defendants' conduct itself has diminished its collections of taxes.  ¶¶815, 846.  It is nonsensical to allow the Distributors and Manufacturers to escape liability based upon an asserted societal expectation that the costs of public services are to be borne by the government and spread among the taxpayers at large when the challenged conduct itself threatens the ability of taxpayers to bear those expenses.  *See, e.g.*, *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 110-11 (1979) (a "significant reduction in property values directly injures a municipality

by diminishing its tax base, thus threatening its ability to bear the costs of local government and to provide services").[22]

### E.     Plaintiff States a Claim for Public Nuisance

The Michigan Supreme Court has held that "[a] public nuisance involves the unreasonable interference with a right common to all members of the general public." *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 720 n.8 (Mich. 1992) (citing *Garfield Twp. v. Young*, 82 N.W.2d 876, 879 (Mich. 1957)).  Rights "common to the general public" include the rights of public health, public safety, public peace, public comfort, and public convenience.  Restatement (Second) of Torts §821B(2)(a) ("*Restatement*").  "'[U]nreasonable interference' includes: (1) conduct that significantly interferes with public health, safety, peace, comfort, or convenience; (2) conduct that is proscribed by law; [or] (3) conduct of a continuing nature that produces a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect on public rights." *Wagner v. Regency Inn Corp.*, 463 N.W.2d 450, 453-54 (Mich. App. 1990); *see also McCracken v. Redford Twp.*, 439 N.W.2d at 377 (Mich. Ct. App. 1989).

### 1.     Monroe Properly Alleges Interference with a Public Right

Defendants contend that Monroe has failed to plead any threat to the rights of the general public.  *See* Dist. Mem. at 8; Mfr. Mem. at 14; Pharm. Mem. at 9.  This contention simply ignores extensive allegations in the SAC detailing a vast and spiraling opioid epidemic in Monroe caused by Defendants.  Specifically, Defendants employed a sophisticated campaign to convince the medical community and the public that opioids were safe, and without Defendants' conduct, this health epidemic would not have occurred.  ¶866.  Defendants' misconduct fostered black markets for diverted prescription opioids and a concomitant rise in heroin and fentanyl abuse.  ¶¶6, 17, 651. Defendants failed to provide effective controls against the diversion of controlled substances and failed to design and operate a system that discloses suspicious orders of controlled substances.  ¶866.

---

[22]    Moreover, not all of the relief Monroe seeks constitutes expenditures made in the course of performing governmental functions.  For example, the SAC seeks disgorgement of profits, damages for lost reputation and good will, losses caused by diminished property values, and loss of tax revenue.  *See, e.g.*, ¶¶847, 879, 895.

By flooding Michigan with more opioids than could be used for legitimate medical purposes and by filling and failing to report orders that Defendants knew or should have realized were being diverted for illicit purposes, Defendants caused this opioid crisis. ¶¶464, 517. The SAC describes bloated opioid prescriptions written for citizens of Monroe. ¶656. Opioid overdose deaths increased in Monroe approximately 25% from 2013 to 2015 (¶658), and "Monroe County treats more people for heroin and opioid addictions than any other county in Michigan." ¶663. The epidemic has imposed high costs to Monroe. ¶664. Taken as true, these allegations sufficiently allege an ongoing threat to Monroe's public health.

Defendants attempt to characterize these allegations as simply an amalgamation of private, personal injury claims suffered by Monroe residents rather than rights common to the public. Defendants' argument fails on two fronts. First, this case does not hinge on whether individual residents in Monroe have a right to be personally and individually safe from defective products. Dist. Mem. at 8. While it is true that thousands of people in Monroe have been personally touched by the opioid crisis, Monroe's public nuisance claim does not seek recovery based on, or for, the personal injuries of individual residents. Instead, Monroe alleges that the Defendants engaged in conduct that creates widespread harm and widespread costs that are "borne by Plaintiff and other governmental entities." ¶¶19, 870.

Second, even if the only measure of this nuisance was the number of people affected, that alone can establish that a public nuisance exists. As explained in Comment g to *Restatement* §821B, a public nuisance can be something that "affect[s] the health of so many persons as to involve the interests of the public at large." "It is not . . . necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large." *Id.* The opioid epidemic fits squarely within this definition.

Under analogous circumstances, courts in Michigan and elsewhere have refused to dismiss public nuisance claims at the pleading stage of a lawsuit. In *Mayor of Detroit v. Arms Tech., Inc.*, 669 N.W.2d 845, 852 (2003), Wayne County and the City of Detroit, among others, "filed separate

complaints against manufacturers, distributors, and retailers of legal firearms" in the Wayne County Circuit Court, "alleging that the methods used by defendants to market and distribute firearms constitute concerted, intentional, reckless, and negligent conduct that rises to the level of a public nuisance."  As in this lawsuit, the plaintiffs alleged defendants employed manufacturing decisions, marketing schemes, and distribution patterns which imposed ongoing and permanent harm on each plaintiff in the form of loss of life, serious injury, law-enforcement expenses, and emergency response costs.  *Id.*  Plaintiffs claimed the defendant manufacturers were "aware of the funneling of their products into [an] illegal market but have not taken steps to supervise or screen distributors or retailers to ensure responsible distribution."  *Id.* at 853.  The trial court concluded plaintiffs' complaint pled sufficient facts establishing defendants' engagement in a continuing and systematic course of conduct proscribed by statute and calculated to result in harm and economic loss to Detroit and Wayne County citizens.  *Id.* at 854.[23]

### 2.     Defendants' Conduct Was Not Sanctioned by Law

Defendants are wrong to claim their conduct cannot be considered unreasonable interference because they purportedly complied with all applicable state and federal laws.  *See* Mfr. Mem. at 15.  This argument, again, ignores extensive factual allegations of Defendants' illegality, including that Defendants violated state and federal law (the CSA; RICO, 18 U.S.C. §1961 *et seq.*; MCL §§333.7214, 333.7303, 333.7303a; MCPA, MCL §445.901 *et seq.*; and Michigan common law).  ¶¶743, 793, 802, 806, 825-830, 854-857, 861-870, 882-884, 887-894.  While a comprehensive regulatory scheme addresses the manufacturing, sales, and distribution of opioids, such regulations do not immunize Defendants' illegal marketing and distribution practices, as alleged in the SAC.  *See Cincinnati*, 95 Ohio St. 3d at 419 (extensive regulatory scheme involving the manufacturing and distribution of firearms does not exempt wrongdoings alleged in complaint).

---

[23]  While the plaintiffs' case was dismissed on appeal, dismissal was due to subsequent Michigan legislation shielding firearms manufacturers from liability.  The relevant statutory provision, MCL §28.435, was upheld as constitutional and "plaintiffs concede[d] that if MCL §28.435 is valid, it bars the claims asserted in this case."  *Mayor of Detroit*, 669 N.W.2d at 855.

Regardless, even legal actions can cause a public nuisance if they are unreasonable.  *Wagner*, 463 N.W.2d at 453-54; *see also* David M. Holliday, 7 *American Law of Products Liability* §27:8 (3d ed. 1987) ("[W]hether [a defendant's conduct] is unreasonable" "turns on whether the activity, even if lawful, can be expected to impose such costs or inconvenience on others that those costs should be borne by the generator of the activity, or the activity must be stopped or modified.").  The SAC's allegations demonstrate Defendants "unreasonably interfered" with public health.

### 3.  Defendants Control, and Have Exacerbated, the Flood of Opioids into Monroe

Defendants also attempt to evade liability by arguing they did not control the opioids at the time of the alleged injuries to Monroe.  *See* Dist. Mem. at 8; Mfr. Mem. at 15; Pharm. Mem. at 9.  This argument misconstrues the public nuisance instrumentality alleged in the SAC.  Monroe's public nuisance claim is not about a defective product.  Rather, Monroe seeks redress and abatement of Defendants' unlawful marketing and distribution activities which continue to foreseeably fuel illegal secondary markets for opioids in Monroe.

Courts have rejected Defendants' "lack of control" argument in similar circumstances.  In *Cincinnati*, 95 Ohio St. 3d at 419, for example, the Ohio Supreme Court held in the context of allegations involving unlawful firearm sales and distribution:

> [I]t is not fatal to the appellant's public nuisance claim that appellees did not control the actual firearms at the moment that harm occurred. . . .  [A]ppellant alleged that appellees control the creation and supply of this illegal secondary market for firearms, not the actual use of the firearms that cause injury.  Just as the individuals who fire the guns are held accountable for the injuries sustained, appellees can be held liable for creating the alleged nuisance.

Similarly, in *James v. Arms Tech., Inc.*, 820 A.2d 27, 52-53 (N.J. 2003), the Superior Court of New Jersey held:

> "There is no requirement that a defendant have the kind of control defendants suggest - actual control over the instrumentality of the nuisance at the time and place it does harm.  Contributing to a public nuisance through or with the conduct of others is sufficient for liability if the defendant knew or should have known the consequences.  In any event, the manufacturers do have control of the products at the pertinent time and place: they use a distribution system they established and maintain which they know or should know facilitates easy access for crime and by persons prohibited to purchase.  [Defendants'] public nuisance liability stems from their marketing and distribution policies and practices, over which they have complete control."

As in *Cincinnati* and *James*, Defendants' public nuisance liability in this lawsuit stems from their unlawful marketing and distribution policies and practices, over which they have complete and continuous control.

Defendants' cases are inapposite because they either involve strictly defective product claims or causation that is too attenuated, issues not present here.  For example, in *Hobrla v. Glass*, 372 N.W.2d 630 (Mich. Ct. App. 1985), an individual injured in a motor vehicle accident brought a public nuisance claim against the Michigan Secretary of State to recover damages for injuries he sustained when his vehicle was struck by a drunk driver because the plaintiff claimed the secretary of state negligently issued the drunk driver a driver's license.  Under those unique circumstances, the Michigan Court of Appeals held that the secretary of state did not participate in the driver's consumption of alcohol nor had any right of control over the driver's actions on the day of the accident.  The *Hobrla* court reasoned the license was irrelevant because the drunk driver could have caused the accident with or without the driver's license so long as he obtained a set of car keys.  *Id.* at 631.  Unlike here, *Hobrla* contained no allegations of continuing wrongdoing by defendants.

Defendants also wrongly rely on *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513 (Mich. Ct. App. 1992), a private nuisance lawsuit filed by several hundred public school districts against asbestos manufacturers and sellers.  The class-action complaint did not involve any allegations of continuing wrongdoing by the defendants.  The Michigan Court of Appeals ruled creation of the defective asbestos product, alone, is insufficient to state a nuisance claim.  *Id.* at 521.  The plaintiffs clearly pled a nuisance claim to circumvent statutes of limitation applicable to product liability claims.  Moreover, the *Celotex* defendants, unlike Defendants in this lawsuit, lacked the ability to abate the dangerous condition:

> While control over a nuisance at the time of injury may not always be required in a nuisance action, on the facts of this case we hold that it is . . . .  Defendants gave up ownership and control of their products when the products were sold to plaintiffs. Defendants now lack the legal right to abate whatever hazards their products may pose; ownership and possession lie exclusively with plaintiffs.

*Id.* at 522.

Unlike *Hobrla* and *Celotex*, this case concerns Defendants' ongoing and continuous deceptive marketing and reckless distribution of opioids.  Contrary to Defendants' arguments otherwise, there is no "bright-line" test in Michigan that all commercial transaction cases involving a product require continued control over the product by defendants.  Instead, "[t]he question in each [nuisance] case is one of fact, and in each case we must consider the facts peculiar to that particular case." *Garfield Twp.*, 82 N.W.2d at 879.

### 4. Monroe's Public Nuisance Claim Is Not a Disguised Product-Liability Claim

The Court should reject Defendants' argument that the public nuisance claim is a disguised product-liability claim.  Defendants' liability is not based on allegations of a defective product or a mere failure to warn.  Instead, liability is premised on Defendants' unlawful fraudulent promotion and reckless distribution of opioids with knowledge of the hazards that such activities would create, as well as Defendants' failure to remedy/abate this epidemic.  Michigan's courts and legislature have not expressed any intent to foreclose common law public nuisance liability under these circumstances.

### F. Plaintiff States a Claim Under the MCPA

### 1. Plaintiff Has Stated a Strong *Prima Facie* Claim

The MCPA declares unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."  MCL §445.903(1); ¶853.  Defendants engaged in such unlawful conduct through a broad "unbranded" marketing campaign in support of opioids as a drug class and through off-label marketing.  Rife with misrepresentations and omissions, the campaign sought to reassure the market that opioids were safe and effective.  ¶¶856-857.  This campaign was above-and-beyond any drug-specific marketing effort, and was outside of any government regulation.  *See* ¶405 (although branded marketing is subject to FDA regulations, unbranded advertising is not).  Each of the Defendants saw and knew or should have realized the disastrous impact, and each had an obligation, independent of any regulation, to set the record

straight.  ¶857.  Such "unbranded marketing methods" not only fell outside of regulations but were used to "circumvent the system."  ¶42.

The Marketing Defendants "aggressively promoted opioids through 'unbranded advertising' to generally tout the benefits of opioids without specifically naming a particular brand-name opioid drug . . . and, therefore, without providing balanced disclosures about the product's limits and risks." ¶405.  "Through unbranded materials, [they] expanded the overall acceptance of and demand for chronic opioid therapy without the restrictions imposed by regulations on branded advertising." *Id*; *see also* ¶406 (Defendants "utilized unbranded websites to promote opioid use without promoting a specific branded drug, such as Purdue's pain-management website, www.inthefaceofpain.com," featuring "advocates" to whom "Purdue paid . . . hundreds of thousands of dollars."); ¶¶156, 402 (Purdue's unbranded website); ¶173 (Janssen's unbranded marketing website and marketing materials, *Let's Talk Pain*, promoted opioids generally); ¶¶189-191 (Mallinckrodt's C.A.R.E.S. Alliance and associated publications promoted opioids generally); ¶¶193-194 (Defendants' unbranded marketing materials downplayed the risks of opioids); ¶196 (Cephalon joined Purdue's unbranded marketing efforts); ¶¶198-200 (Purdue and Endo paid for continuing medical education programs to promote opioid use generally); ¶¶202-212 (Defendants promoted general pro-opioid materials promoting the predictably debunked theory that signs of addictive behavior are "pseudoaddiction" that require *more* opioids); ¶¶213-216 (unbranded efforts to convince the marketplace that opioid withdrawal can be avoided through "tapering"); ¶¶223-228 (Endo, Purdue, and Cephalon produced materials falsely claiming that opioids generally lack a maximum safe dosage, in contrast to a competitor class of medications); ¶¶233, 236-241 (Defendants including Purdue, Janssen, Endo, and Mallinckrodt produced unbranded materials falsely claiming that opioids improved functioning); ¶¶246-255 (materials claiming that other forms of pain relief were more dangerous than opioids); ¶¶40, 48, 55, 62, 66, 75 (payments to doctors for promotion of opioids). Such "unbranded marketing methods" not only fell outside of regulation but were used to "circumvent the system."  ¶42.

### 2.  Defendants' Misconduct Was Not Authorized by Law

Defendants assert that the conduct falls outside of the MCPA as "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  MCL §445.904(1)(a).  But even if a defendant's underlying business relates to a regulated activity, a victim may bring a MCPA claim arising from actions beyond the underlying regulated activity.

In *Attorney Gen. v. Diamond Mortg. Co.*, 327 N.W.2d 805, 811 (Mich. 1982), the defendant argued that because it was a licensed real estate broker, its activities in marketing and offering loans to homeowners were exempt from the MCPA.  But while the broker's license authorized the defendant "to engage in the activities of a real estate broker," it did not "specifically authorize the conduct that plaintiff alleges is violative of the [MCPA], nor transactions that result from that conduct."  *Id.* at 811.  Thus, the defendant's conduct and transactions were not exempt.  *Id.*

Defendants rely heavily upon *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999), and *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich. 2007).  But these cases did not depart from *Diamond Mortg.*; they expressly adopt it.  *See Smith*, 597 N.W.2d at 37 ("our decision in *Diamond Mortgage* controls the resolution of this issue"); *Liss*, 732 N.W.2d at 518 (favorably analyzing *Diamond Mortg.*).  As such, they simply articulate the corollary to *Diamond Mortg.* if – unlike the conduct here – the conduct is expressly governed by the applicable non-MCPA regulation, then the exception applies, and this is true even if, under the regulation, "the legality of [the conduct] is in dispute."  *Smith*, 597 N.W. 2d at 38; *see also State Farm Mut. Auto. Ins. Co. v. BMW of N. Am., LLC*, No. 08-12402, 2009 WL 2447612, at *7 (E.D. Mich. Aug. 7, 2009) (rejection of "authorized" activity exemption based on state Motor Vehicle Code is persuasive as to outcome with respect to federal transportation regulations).[24]

---

[24]  Defendants' other cases are distinguishable because they concern MCPA claims closely relating to the regulated activity.  *See, e.g., Molosky v. Wash. Mut., Inc.*, 664 F.3d 109, 118 (6th Cir. 2011) (fees at issue were part of regulated activity); *Newton v. West*, 686 N.W.2d 491, 495 (Mich. Ct. App. 2004) ("[W]e are not ruling that the banking industry as a whole is exempt from the provisions of the MCPA.  Rather, we find that the specifically authorized mortgage loan transactions are exempt."); *Kraft v. Detroit Entm't, L.L.C.*, 683 N.W.2d 200, 205 (Mich. Ct. App. 2004) (no MCPA claim for misleading slot machine where regulations specifically

Indeed, Michigan case law suggests that the matters here fall outside the statutory exception. In *Baker v. Arbor Drugs, Inc.*, 544 N.W.2d 727 (1996), a pharmacy claimed that its advertising of a computer system related to its pharmacy business fell within the authorized activity exception.  The court of appeals rejected this argument.  "We do not agree with defendant that it is exempt from the MCPA because it is governed by a regulatory board, the Michigan Board of Pharmacy."  *Id.* at 732. While the court agreed that "the MCPA does not apply to a transaction or conduct specifically authorized under laws administered by a regulatory board or officer," it found that the "exemption does not apply in this case" because "advertising is not within the purview of the Pharmacy Board's regulatory powers."  *Id.* (citing *Diamond Mortg.*, 327 N.W.2d at 810; additional citations omitted).[25]

Here, as discussed above, Monroe's MCPA allegations specifically concern unregulated conduct: the deceptive unbranded marketing campaign, deceptive off-label marketing, and the failure to disclose their falsity.  Such unregulated marketing falls outside of any "authorized activity" exception.  *See City of Chicago*, 211 F. Supp. 3d at 1063 & n.6 (noting  that "[u]nbranded materials are not typically submitted to or reviewed by the FDA"); *City of Chicago*, 2015 WL 2208423, at *2 ("the FDA generally does not review 'unbranded' promotional materials, *i.e.*, materials that promote the use of a type of drug but do not identify any particular drug by name").  Thus, "the Marketing

---

determined "whether the machines are misleading"); *Lucas v. Awaad*, 830 N.W.2d 141, 154-55 (Mich. Ct. App. 2013) (false diagnosis by doctor was regulated medical activity); *McCray v. Jefferson Chevrolet Co., Inc.*, No. 17-cv-12058, 2018 WL 1964674, at *7-*8 (E.D. Mich. Apr. 26, 2018) (regulated sale of motor vehicle); *Feliciano v. Gen. Motors LLC*, No. 14 Civ. 06374 (AT), 2016 WL 9344120, at *13 (S.D.N.Y. Mar. 31, 2016) ("the Court cannot conclude that automobile manufacturing is not regulated"); *Baumkel v. Scotts Miracle-Gro Co.*, No. 08-14137, 2009 WL 3190477, at *8 (E.D. Mich. Sept. 28, 2009) (application of pesticides is regulated activity).

25     Since this decision, the Michigan Court of Appeals held in *Duronio v. Merck & Co., Inc.*, No. 267003, 2006 WL 1628516, at *7 (Mich. Ct. App. June 13, 2006), that general marketing and advertising activities are authorized and regulated under laws administered by the FDA and that a claim under the MCPA arising from these may be subject to the exemption in MCL §445.904(1)(a).  However, the *Duronio* court also found that MCL §600.2945(h) did not necessarily bar a claim under the MCPA.  Here, the unbranded marketing at issue in Monroe's MCPA claim is not subject to FDA regulation.  *See also City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1063 n.6 (N.D. Ill. 2016); *City of Chicago v. Purdue Pharma L.P.*, No. 14 C 4361, 2015 WL 2208423, at *2 (N.D. Ill. May 8, 2015).

Defendants circumvented and acted outside the bounds of their federal regulatory obligations and FDA oversight" (¶856), and all Defendants benefited.[26]

Moreover, Defendants' assertions are premature and do not justify dismissal for three additional reasons. First, "the MCPA specifically places the burden of proving an exemption from the MCPA on the person claiming the exemption." *Giura v. Bartolomeo*, No. 291952, 2010 WL 3767563, at *2 (Mich. Ct. App. Sept. 28, 2010) (citing MCL §445.904(4)). Defendants do not meet their burden of showing what regulations they say apply to the unbranded marketing campaign and the failure to correct its misimpressions. *See also BMW*, 2009 WL 2447612, at *7 (defendant failed to meet its burden to show plaintiff's claim is barred by §445.904(a) of the MCPA).

Second, the "regulated activity" exception is an affirmative defense. *Giura*, 2010 WL 3767563, at *2 (citing *Liss*, 732 N.W.2d at 517 n.13). "Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 599 (6th Cir. 2012) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)), *aff'd*, 806 F.3d 377 (6th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 2511 (2016); *see also Marsh v. Genentech, Inc.*, 693 F.3d 546, 554-55 (6th Cir. 2012) ("[a] motion to dismiss can be premised on an affirmative defense[,]" only if "'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief'");

---

[26] Numerous other cases have also upheld MCPA claims against regulated entities where the alleged wrongdoing extends beyond the regulated activity. *See, e.g., Wong v. T-Mobile USA, Inc.*, No. 05-73922, 2006 WL 2042512, at *7-*9 (E.D. Mich. July 20, 2006) (upholding MCPA claim concerning defendant's billing practices despite defendant's reliance on Federal Communications Act and related regulations licensing and regulating defendant). *Wong* further found that "while *Smith* unquestionably broadened the MCPA's exemption for conduct authorized by a governmental agency, it did not abrogate the statute entirely," as Defendants imply. *Id.; see also Brownlow v. McCall Enters., Inc.*, 888 N.W.2d 295, 297-98 (Mich. Ct. App. 2016) ("the general transaction of cleaning a house was not specifically authorized by defendant's contractor license and therefore not exempt from the [MCPA]" ); *Am. Auto. Ass'n, Inc. v. Advanced Am. Auto Warranty Servs., Inc.*, No. CIV. A. 09-CV-12351, 2009 WL 3837234, at *6 (E.D. Mich. Nov. 16, 2009) (regulation of underlying warranty and insurance business inapplicable to MCPA claim relating to ancillary activity); *Price v. Long Realty, Inc.*, 502 N.W.2d 337, 342 (Mich. Ct. App. 1993) ("Although real estate licensees who perpetrate fraud are subject to [statutory] penalties, the defendant's license 'does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act[,]'" so it "was not exempt from the MCPA"); *BMW*, 2009 WL 2447612, at *7 (NHTSA regulations do not preclude MCPA claim related to vehicle fire).

*In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003) (same) (cited by *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)).

Third, the issue of whether the conduct at issue in the MCPA claim is subject to a specific regulation is one of fact.  *See, e.g., Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1184 n.13 (D. Kan. 2011) ("whether the regulation applies in this particular case is undoubtedly a factual issue"); *McGill v. DHL Airways, Inc.*, 12 F. App'x 247, 249 (6th Cir. 2001) (application of FAA regulations was a threshold fact issue for jury); *United States v. Weisscredit Banca Commerciale E D'Investimenti*, 325 F. Supp. 1384, 1392 (S.D.N.Y. 1971) (whether the defendant's conduct was within scope of applicable regulation "is an issue of fact for trial").

### 3.    Plaintiff's MCPA Claims Are Pled with the Requisite Specificity

#### a.    The MCPA Allegations Against the Distributors Are Sufficiently Specific

The Distributors rely on *Meyer v. Citimortgage, Inc.*, No. 11-13432, 2012 WL 511995 (E.D. Mich. Feb. 16, 2012), and *Muneio v. Fed. Nat'l Mortg. Ass'n*, No. 09-12973, 2010 WL 5146328 (E.D. Mich. Dec. 13, 2010), in which courts rejected bare-bones allegations that "the defendant violated the statute."  *See Muneio*, 2010 WL 5146328, at *4; *Meyer*, 2012 WL 511995, at *11. Here, by contrast, Plaintiff's approximately 300-page SAC abounds with particular examples of unfair and unconscionable conduct.  In any event, Plaintiff meets Defendants' proposed standard.

*Meyer* hardly imposes an "obligation" to "'identify which defendant purportedly violated' the MCPA and how."  Dist. Mem. at 18.  Rather, *Meyer* identified the failure to do so as **one** shortcoming in a bare-bones complaint.  In any event, as detailed below, the Distributors **all** knew or should have known that their non-public data was at odds with the general marketing campaign to promote opioids.  In fact, "[t]aken together, the interaction and length of the relationships between and among the Marketing and Distributor Defendants reflects a deep level of interaction and cooperation between two groups in a tightly knit industry."  ¶504; *see also* ¶¶504,678-679.

Nor does *Meyer* stand for the proposition that a MCPA claim must detail the statutory sections at issue.  Regardless, the MCPA claim here does so.  *See* ¶852 (citing MCL §§445.903(1)(a),

(c), (s), (bb)-(cc)).  Moreover, the SAC is replete with examples of the alleged misleading communications as set forth herein.  *See, e.g.*, ¶¶463-480, 488-532.[27]

> **b.** **The MCPA Allegations Against the Marketing and Pharmacy Defendants Are Sufficiently Specific**

The SAC meets any relevant pleading standard.  These Defendants are incorrect that Fed. R. Civ. P. 9(b) applies across the board to Monroe's MCPA claim.  "The MCPA is much broader than . . . fraud, covering not only deceptive practices but also unfair and unconscionable conduct."  *Date v. Sony Elecs., Inc.*, No. 07-cv-15474, 2010 WL 3702599, at *12-*13 (E.D. Mich. Sept. 16, 2010); *see Evans v. Ameriquest Mortg. Co.*, No. 233115, 2003 WL 734169, at *3 (Mich. Ct. App. Mar. 4, 2003) ("While a cause of action under the MCPA has similarities to a fraud claim, the MCPA captures more conduct within its sweep and offers greater protection to consumers.").  "Accordingly, [plaintiffs] need not necessarily allege the elements of fraud and certainly need not plead a claim under the MCPA with the particularity required by Federal Rule of Civil Procedure 9(b)."  *Date*, 2010 WL 3702599, at *13.  Thus, the "contention that Rule 9(b) requires the MCPA claim be pleaded with particularity is contrary to case law."  *BMW*, 2009 WL 2447612, at *7 (citing *Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642 (E.D. Mich. 2003)).[28]

Here, Defendants' conduct extends beyond fraud.  For example, Monroe cites the MCPA provision defining "unfair" or "unconscionable" conduct to include "causing confusion or misunderstanding as to approval or certification of goods."  ¶853 (citing MCL §445.903(1)(a)).

---

[27]  Indeed, these Defendants kept careful track of prescribing data and knew about suspicious orders and prescribers, as detailed in ¶¶514-538.  Yet they used this information, including their "big data" analyses, to "drive market share" (¶520 n.213), when it could have been used to protect consumers.  ¶523.  In fact, they failed to report suspicious orders or otherwise act to prevent diversion.  ¶¶539-559.  "Defendants' obligation to report suspicious prescribing ran head on into their marketing strategy."  ¶530.  In fact, "Defendants ***did*** identify doctors who were their most prolific prescribers, not to report them, but to market to them."  *Id.*

[28]  Although *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607 (N.D. Ohio 2016), did analyze claims under various consumer protection acts under Rule 9(b), it explained that the rule's "purpose is to ensure fair notice to the defendant, not to test a claim's factual allegations," that the "'particularity requirement may be relaxed when certain information is solely within the defendant's knowledge,'" and found that the allegations of a deceptive marketing campaign were sufficient.  *Id.* at 630.  And this case is nothing like *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000 (E.D. Mich. 2015), in which "[a]ll Plaintiff alleges is that '[t]he defendants actively and (or) passively concealed their nonperformance of [the contract] and (or) misled the subrogors with respect to the non-installation of a temperature sensor at the premises.'"  *Id.* at 1008.

Defendants in this case either caused such confusion, or enjoyed its benefits, without setting the record straight.  As just one example, the general pro-opioid marketing campaign consisted in part of establishing or using official-sounding purportedly neutral industry groups to falsely assure the public that opioids were safe and effective for long-term use and that fears of addiction were overblown, anti-scientific "opiophobia."  *See, e.g.*, ¶¶318, 326, 329, 348, 354.  These representations caused confusion and misunderstanding.[29]

Monroe has also adequately alleged actionable omissions.[30]  *See, e.g.*, ¶213 ("physical dependence" can be handled through "tapering," without disclosure of withdrawal effects); ¶217 (omission of hazards associated with dosage increases); ¶247 (failure to disclose hyperalgesia); ¶¶248-249 (risks of competitor class of drugs while omitting disclosure of opioid risks); ¶250 (incomplete list of "adverse effects"); ¶431 (marketing to veterans without disclosure of adverse interactions with the benzodiazepines that are widely prescribed in the VA system).  Moreover, as discussed above and throughout, all of the Defendants had an obligation to correct the misimpressions created by the unbranded campaign once they realized – if they ever did not know – that their rosy assurances were misleading.

---

[29]  Even if, *arguendo*, Fed. R. Civ. P. 9(b) did apply, as explained further below in §III.I.1.  Monroe has alleged more than enough to put Defendants on notice of the claims against them.  For example, the SAC details numerous specific misrepresentations as to the addiction risk of opioids. *See, e.g.*, ¶¶145-164 (Purdue); ¶¶165-172 (Endo);  ¶¶173-181 (Janssen);  ¶¶182-184 (Cephalon);  ¶¶185-188 (Actavis);  ¶¶189-193 (Mallinckrodt); ¶¶194-201 (claims any risk of addiction can be easily identified and managed); ¶¶202-212 (signs of addictive behavior are "pseudoaddiction" requiring more opioids); ¶¶213-216 (opioid withdrawal can be avoided by tapering); ¶¶217-228 (opioid doses can be increased without limit or greater risks); ¶¶229-245 (long-term opioid use improves functioning); ¶¶246-255 (alternative forms of pain relief pose greater risks than opioids).  Plaintiff pleads that these statements were false and that Manufacturers knew they were false when made. *See, e.g.*, ¶137 (statements contradicted scientific studies and FDA warnings).

[30]  "When it comes to claims of fraud by omission or fraudulent concealment, the plaintiff faces a slightly more relaxed pleading burden; the claim 'can succeed without the same level of specificity required by a normal fraud claim.'"  *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751 (E.D. Mich. 2017) (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)).  "The reasons for the disparate burden are straightforward.  Fraudulent acts occur at a specific time, fraudulent omissions occur over a period of time." *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1055 (E.D. Mich. 2018).  "Fraudulent acts can be specifically described, but omissions are, by very definition, more amorphous." *Id.*

### c. The Pharmacies' Assertion that the SAC Claims Are Based on a Single Conclusory Allegation Is Incorrect

Given these detailed and voluminous allegations, there is little plausible argument that Defendants are not on notice of the claims against them. Regardless, the Pharmacies claim that "Plaintiff . . . rests on a single conclusory allegation that identifies no facts or circumstances, and that purports to apply to all defendants without differentiation." Pharm. Mem. at 7. It is not clear what "single conclusory allegation" they are referencing, but the paragraphs in Plaintiff's MCPA count rely upon and reference the detailed allegations throughout the SAC. *See* ¶852 (MCPA count adopts previous paragraphs); ¶856 (Defendants engaged in misleading conduct "as detailed further herein"). The SAC details that the Pharmacies were on notice of and contributed to the diversion of opioids. *See* ¶¶560-612, and specifically ¶¶560, 563, 579, 608-609. These allegations also include specific references to the knowledge imputed to particular Defendants by virtue of the opioid-related enforcement actions against them. *See, e.g.,* ¶¶581-593 (CVS); ¶¶594-602 (Walgreens); ¶¶603-612 (Rite Aid). Further, while the Pharmacies have chosen to file a separate motion to dismiss, they are also Distributors. ¶88.

### d. The Manufacturers' Assertion that Plaintiff Failed to Plead Any Misrepresentations or Omissions in Monroe Is a Red Herring

The Manufacturers implicitly concede that Monroe has spelled out numerous MCPA-violative acts, but argue that "Plaintiff does not provide the particular details of a single alleged misrepresentation or omission ***made in*** Monroe County." Mfr. Mem. at 12. Setting aside the conundrum of how an "omission" could be "made" anywhere, they cite to no authority for the proposition that the misrepresentations or misleading statements need to take place within the plaintiff county's boundaries. This is clearly not the case, as Monroe has been injured by representations made elsewhere and directed at consumers within Monroe. In any event, Defendants' representations in media such as websites and sponsored articles in medical journals have been accessed within, and therefore made in Monroe. Defendants' argument also fails because the unbranded marketing campaign included payments to doctors in Monroe. ¶631.

### 4.    Plaintiff Has Alleged Material Misrepresentations

The Distributors' materiality argument fails for multiple reasons.  First, they implicitly concede it does not apply to Monroe's claim that Defendants "caus[ed] confusion or misunderstanding as to approval or certification of goods" or "represent[ed] that goods have approval, characteristics, uses, and benefits that they do not have."  ¶853 (citing MCL §§445.903(1)(a), (c)).  Second, the representations and omissions were material.  "'[A] material fact for purposes of the MCPA would . . . be one that is important to the transaction or affects the consumer's decision to enter into the transaction.'"  *Laura v. DaimlerChrysler Corp.*, 711 N.W.2d 792, 794 (Mich. Ct. App. 2006).  The issues here were literally life-and-death.

Third, the Distributors' suggestion that such materiality requires privity lacks merit.  Nothing in the MCPA or any of the cases cited precludes Monroe from seeking redress under the statute, as long as a "consumer transaction" has taken place.[31]  In fact, such a requirement would be entirely at odds with the MCPA's broadly "remedial" purpose.  *Dell v. Citizens Ins. Co. of Am.*, 880 N.W.2d 280, 289 (Mich. Ct. App. 2015).  Under Defendants' theory, the only possible MCPA claim would be that of a consumer against the entity with whom it directly dealt, such as a retailer or agent.  But Defendants' argument is undermined by the MCPA's definition of "trade or commerce" as including "distribution."  MCL §445.902(d).  Thus, in *BMW*, the court explicitly rejected the theory that privity was required for a MCPA claim.  "Given the statutory language encompassing ***distribution*** and the remedial reach of the statute, this Court finds summary judgment unwarranted

---

[31]    None of Defendants' cases stand for the proposition that the plaintiff must be the consumer who dealt directly with the misleading defendant in order for the misrepresentations to be "material."  *DiPiero v. Better Bus. Bureau of W. Mich., Inc.*, No. 316308, 2014 WL 6679406 (Mich. Ct. App. Nov. 25, 2014), concerned a consumer's MCPA claim against the Better Business Bureau, whose website contained a positive review of a third party window supplier whose craftsmanship ended up disappointing the plaintiff.  It has nothing to do with a case like this, where the sellers themselves engaged in the misleading promotion.  Rather, it would apply if Monroe sued a third-party website with a positive review of one of the Defendants.  Neither does *Wilson v. Citizens Ins. Co. of Am.*, No. 1:13-CV-470, 2015 WL 631978 (M.D.N.C. Feb. 13, 2015), impose a privity requirement.  Rather, it found that there was no "consumer transaction" when an intervening State of Michigan entity selected the allegedly-offending insurance companies on plaintiff's behalf.  *Id.* at *10.  And *Laura* says nothing about the privity concept at all.  In short, while the MCPA requires a consumer transaction, none of these cases stand for the proposition that the plaintiff must be the consumer or that the consumer must deal directly with the misleading defendant in order for the misrepresentations to be "material."

on this ground." *BMW*, 2009 WL 2447612, at *6 (citing MCL §445.902(d); *Janda v. Riley-Meggs Indus., Inc.,* 764 F. Supp. 1223, 1231 (E.D. Mich. 1991)); *see also Gernhardt v. Winnebago Indus.*, No. 03-73917, 2005 WL 2562783, at *5 (E.D. Mich. Oct. 12, 2005) (privity not required for MCPA claim); *Mikos v. Chrysler Corp.*, 404 N.W.2d 783 (Mich. Ct. App. 1987) (MCPA claim was proper where plaintiff brought suit against defendant seller from whom plaintiff purchased vehicle **as well as** against defendant manufacturer); *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571, 577 (N.H. 2007) (consumer actions under similar consumer protection act are not limited to claims "against those from whom they have directly purchased a product," and consumers thus had claim against distributor).

Fourth, Monroe does not need to identify a specific consumer transaction in order to establish that one has occurred.  The SAC discusses the prescription, use and effect of opioids within Monroe at length.  *See, e.g.*, ¶¶82-86 (pharmacies operated in Monroe); ¶¶629-630, 635, 641 (excessive opioid prescriptions in Monroe); ¶¶642-646 (Monroe physicians prosecuted for "pill mill" operations); ¶647 (increase in overdose deaths in Monroe); ¶¶651-664 (additional impacts on Monroe); ¶631 (payments made to Monroe physicians as part of pro-opioid non-branded marketing campaign); ¶858 (illustration of injuries); ¶20 ("The burdens imposed on Plaintiff are not the normal or typical burdens of governmental programs and services.  Rather, these are extraordinary costs and losses that are directly related to Defendants' illegal actions.").  Relevant transactions occurred.

Fifth, materiality is not a basis for dismissal on these pleadings.  *See, e.g.*, *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (materiality is "a mixed question of law and fact," materiality may only be resolved by summary judgment when "reasonable minds cannot differ on the question of materiality").

### 5. Plaintiff Has Alleged a "Consumer Transaction" in Which Consumers Have Been Misled Within the Course of "Trade or Commerce"

When the item purchased is passed onto consumers for "personal, family or household" use, the transaction falls within the realm of trade and commerce contemplated by the MCPA.  *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 635 (Mich. 2003).  In other words, the "transaction" need

not be with the consumer, as long as the goods at issue **are for consumer use**: "the MCPA requires an inquiry into the primary nature of the conduct of a business involved in a transaction, but rather whether the goods, property, or service were sold primarily for personal, family, or household purposes." *Noggles v. Battle Creek Wrecking, Inc.*, 395 N.W.2d 322, 324-25 (Mich. Ct. App. 1986). The reason is simple: the purpose of the statute was to protect consumers. *Id.* In short, "the Michigan statute does not require a transaction between the plaintiff and the defendant that involves the sale of goods primarily for personal, family or household purposes; rather, it requires only that the plaintiff's damages arise from defendant's provision of such goods. In other words, the statute does not require the plaintiff to be the consumer who purchased the goods primarily for personal purposes." *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 495 F. Supp. 2d 1027, 1033 (N.D. Cal. 2007) (third-party payors could bring MCPA claim relating to sales to consumers for which they paid).

Here, there is no question that the end users ultimately acquired the opioids for "personal, family, or household use." Courts have rejected similar arguments regarding governmental agencies' MCPA claims for Medicaid damages related to pharmaceutical products.[32] Defendants' assertion rehashes their privity argument by claiming that, because they were not selling directly to consumers, the transactions fall outside the statute. But all that is required is for the product to ultimately be **used** by a consumer. "Middlemen" are not exempt.[33]

---

[32] *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 48 (D.D.C. 1999). "Defendants' allegation that the MCPA claims should also be dismissed because the drugs were purchased by state agencies and therefore not 'primarily for personal, family or household purposes,' *see* MCL §445.902(d), is similarly denied. The language of the statute does not indicate whether the above-quoted phrase modifies the way in which the drugs were provided or the drugs themselves. Drugs sold to state medicaid programs or drug stores are not outside the scope of personal, family or household purchases." *Id.*

[33] Defendants' cases in which MCPA claims failed are inapposite. They relate not to the Defendants' place in the supply chain, but rather whether the good or services were ultimately consumer or non-consumer. *See, e.g.*, *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 661 (6th Cir. 2013) (law degree was business "product"); *see also Paul v. Glendale Neurological Assocs., PC*, 848 N.W.2d 400, 406 (Mich. Ct. App. 2014) (MRI non-consumer when done for worker's compensation claim); *Zine v. Chrysler Corp.*, 600 N.W.2d 384 (Mich. Ct. App. 1999); *Timber Prods. Inspection, Inc. v. Coastal Container Corp.*, 827 F. Supp. 2d 819 (W.D. Mich. 2011) (dealt with unambiguously commercial products). As Defendants' own case found, "the ultimate purpose for which the product is purchased is determinative in deciding whether a plaintiff has a cognizable claim." *Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 483 (D. Del. 2010).

Defendants also suggest Monroe cannot bring this action because it did not use the opioids. In other words, even if there were "consumers" that engaged in the "transaction," thus bringing it within "trade or commerce," Monroe was not among them. This argument also fails. The MCPA defines "[p]erson" as "a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, or other legal entity." MCL §445.902(1)(d). Monroe falls within this definition. ¶26. MCL §445.911 allows a "person" to take action for injunctive relief or damages. The MCPA's provision that "a person" may bring an action means the same thing as "any person may bring an action." *See Phelps v. Com.*, 654 S.E.2d 926, 927 (Va. 2008) ("[t]he ordinary meaning of the word 'a' means 'any' or 'each'") (citing Webster's Third New International Dictionary 1686 (1993)).[34]

Thus, under the statute's plain language, Monroe may sue, even if it is not a "consumer." *See* MCL §445.911(1) ("Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action . . . ."); MCL §445.911(3) ("A person who suffers loss as a result of a violation of this act may bring a class action . . . ."). This is dispositive. *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 371 (6th Cir. 2007) ("[i]f the language of the statute is clear, then the inquiry is complete, and the court should look no further").

It is thus unsurprising that "several cases have implicitly recognized that the private right of action created by the MCPA is not the exclusive province of the consumer." *John Labatt Ltd. v. Molson Breweries*, 853 F. Supp. 965, 969 (E.D. Mich. 1994). These include *Janda*, 764 F. Supp. 1223, which found that a doctor had a MCPA claim when an advertisement falsely suggested that he had endorsed a product, and *Nintendo of Am., Inc. v. Elcon Indus., Inc.*, 564 F. Supp. 937 (E.D. Mich. 1982), in which the court entered a preliminary injunction in favor of one consumer company against another for false advertising. *See also Safeco Ins. Co. of Am. v. CPI Plastics Grp., Ltd.*, 625 F. Supp. 2d

---

[34] An analogous New Hampshire case is illustrative. By allowing "'**any** person injured' to bring an action, the plain language of [New Hampshire's Consumer Protection Act provision] does not suggest any legislative intent to limit who may bring a CPA claim to persons sustaining direct injuries." *LaChance*, 931 A.2d at 577. Rather, "'[a]ny person injured' is broad" and "does not differentiate between consumers directly and indirectly injured." *Id.*

508, 512 (2008) (allowing an insurance company to bring MCPA claim when insured party was consumer).  "Implicit in the cases finding a right of action in non-consumers under the MCPA is the understanding that the intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events."  *John Labatt*, 853 F. Supp. at 970; *see Mylan Labs.*, 62 F. Supp. 2d at 49 (recognizing that "[d]rugs sold to state medicaid programs or drug stores are not outside the scope of personal, family or household purchases").

Courts have also rejected Defendants' restrictive reading as at odds with the statute's remedial purpose.  "'The MCPA is a remedial statute designed to prohibit unfair practices in trade or commerce and must be liberally construed to achieve its intended goals.'"  *DIRECTV, Inc. v. Cavanaugh*, 321 F. Supp. 2d 825, 838 (E.D. Mich. 2003).  Accordingly, "the 'trade or commerce' requirement has been found to be satisfied, despite the absence of a specific transaction between the parties involving the purchase of consumer goods."  *Id.* (citing *Action Auto Glass v. Auto Glass Specialists*, 134 F. Supp. 2d 897 (W.D. Mich. 2001)).  Thus, "the MCPA does not require a 'transaction' between the parties."  *Id.*; *see also Innovation Ventures, LLC v. N2G Distrib., Inc.*, 779 F. Supp. 2d 671, 681 (E.D. Mich. 2011) ("because Plaintiff is in the business of providing, albeit through various distributors, goods for personal, family, or household purposes, its conduct is 'trade or commerce' as defined by the MCPA") (citing *Florists' Transworld Delivery, Inc. v. Fleutrop-Interflora*, 261 F. Supp. 2d 837, 847-50 (E.D. Mich. 2003)); *Michaels v. Amway Corp.*, 522 N.W.2d 703, 707 (Mich. Ct. App. 1994) (high-level distributors in a multi-level marketing sales structure had a justiciable claim against the company under MCPA).[35]

### 6. All Defendants Had a Duty to Disclose the Emergence of a Public Health Emergency and Misled Consumers by Failing to Do So

The Pharmacies contend that they should escape accountability for their conduct because, even if they failed to report the suspicious orders, they never made a "false or misleading

---

[35] *Dix v. Am. Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206 (Mich. 1987), described the MCPA in terms of consumers but never held that recovery was limited to consumers only.  In fact, it noted that the MCPA "should be construed liberally to broaden the consumers' remedy, especially in situations involving consumer frauds affecting a large number of persons."  *Id.* at 209.

statement." This contention misstates the law: even if the MCPA's disclosure requirements effectively require a showing of "silent fraud," that does not require any showing of an affirmative misrepresentation.

The Pharmacies cite *Hendricks v. DSW Shoe Warehouse Inc.*, 444 F. Supp. 2d 775 (W.D. Mich. 2006), for the proposition that "[a]n omission is actionable under the MCPA only when a duty to disclose arises from the making of a false or misleading statement." Pharm. Mem. at 8. But *Hendricks* was simply articulating the standards for a silent fraud claim, which it read into the MCPA prohibition against "'[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.'" 444 F. Supp. 2d at 781 (citing MCL §445.903(1)(s)). The court found that while a claim for "'silent fraud'" requires "'some type of misrepresentation,'" it could be "'by words *or action*.'" *Id.* at 782 (quoting *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 39 (1998)); *see also Clement-Rowe v. Mich. Health Care Corp.*, 538 N.W.2d 20 (Mich. Ct. App. 1995) (issue is whether defendant had duty to disclose withheld facts). An affirmative representation is not required for a silent fraud claim where it is the silence that renders the Defendants' conduct misleading.

Regardless, the SAC *does* allege misleading affirmative representations. The Pharmacies cite to ¶857, which alleges omissions, but ignore ¶856, which summarizes the relevant affirmative misrepresentations. Even if the Pharmacies did not engage in the affirmative misrepresentations, they knew about them and benefited from them, and had a duty to correct them once they knew or should have known that they were false and that the use of opioids was actually leading to what would become a devastating crisis.

Moreover, the existence of a duty to disclose is a fact-intensive inquiry inappropriate for dismissal on the pleadings. *See Valcaniant v. Detroit Edison Co.*, 679 N.W.2d 689 (2004) (discussing factors); *see also Hand v. Dayton-Hudson*, 775 F.2d 757, 759 (6th Cir. 1985) (silent fraud claim requires consideration of the "'circumstances surrounding a particular transaction are such as to require the giving of information'").

### 7.      Plaintiff Does Not Need to Prove Reasonable Reliance

"[O]nly two of the MCPA's thirty-three 'unfair, unconscionable, or deceptive methods, acts or practices' expressly require some form of reasonable reliance by the consumer." *Cormier v. PF Fitness-Midland, LLC*, No. 331286, 2017 WL 2390691, at *7 (Mich. Ct. App. June 1, 2017) (citing MCL §§445.903(1)(s), (bb)), *vacated in part on other grounds*, 909 N.W.2d 266 (Mich. 2018).  The SAC cites three provisions that do not require reliance.  ¶853.

Regardless, reliance on the Defendants' misrepresentations was reasonable.  Consumers were reasonable in relying upon medical professionals.  Likewise, doctors were reasonable in relying upon front group marketing materials Defendants were underwriting, the continuing medical education programs they were offering, and the "key opinion leaders" within the medical community whom they were paying.  *See, e.g.*, ¶¶198-200 (continuing medical education); ¶¶357, 364, 363 (key opinion leaders).  In short, it was not up to patients to look beyond their doctors, or up to the doctors to look beyond the purported experts in their fields.[36]  Moreover, as discussed in the *Summit* briefing, reasonable reliance is a fact issue that cannot be the basis for dismissal on the pleadings.

### 8.      Plaintiff Need Not Allege Damages but Has Done So Anyway

The Manufacturers claim that Plaintiff's claim must be dismissed because it has failed to show a loss under the MCPA.  This argument fails for multiple reasons.

First, Monroe has pled substantial losses.  *See, e.g.*, ¶¶20, 31-32, 663, 858, 878-879.  *See also* §III.A.4., *supra*.  Second, while recovery of damages requires a showing of a loss, injunctive relief is available even in the absence of such a showing.  As *Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*, 182 F.R.D. 500 (W.D. Minn. 1998), relied on by Defendants, makes clear, "[t]he MCPA explicitly allows declaratory relief as to the acts and practices of a defendant."  *Id.* at 509 (citing MCL §445.911).  This injunctive relief is available "[w]hether or not [the plaintiff] seeks damages," and

---

[36]   For similar reasons, the "learned intermediary" doctrine – that drug manufacturers have a duty to warn doctors but not consumers – does not apply.  The doctrine applies to products liability claims, not MCPA claims.  *See, e.g.*, *Mowery v. Crittenton Hosp.*, 400 N.W.2d 633 (Mich. Ct. App. 1986).  As set forth throughout, Defendants failed to warn not just patients, but also doctors.  *See also* §§III.B.3., III.F.7., *supra*.

"does not require that a plaintiff stating a claim under the MCPA suffer a 'loss' before bringing an action for injunctive relief." *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09 C 7670, 2010 WL 2742310, at \*11 (N.D. Ill. July 8, 2010) (citing MCL §445.911(1)(b)).  "[T]he MCPA does not require that actual damages be proven to allow recovery."  *Love v. Ciccarelli*, No. 221993, 2002 WL 44327, at \*4 (Mich. Ct. App. Jan. 4, 2002) (citing MCL §445.911(2)).[37]  Regardless, because Monroe is not bringing this claim as a class action, it is entitled to at least $250 in damages and attorneys' fees upon a showing of liability.  *Kentucky Grilled*, 2010 WL 2742310, at \*11 (citing MCL §445.911(2)).[38]

The Manufacturers rely upon *Van Vels* for the proposition that "consumers may only obtain 'the difference between the actual value of the property when the contract was made and the value that it would have possessed if the representations had been true.'"  182 F.R.D. at 509 (citing *Mayhall v. A.H. Pond Co., Inc.*, 341 N.W.2d 268, 271 (1983)).  But the underlying *Mayhall* case found that any frustration of consumer expectations was sufficient to establish a "loss": just as "the plaintiff's expectations constitutes an injury for the purposes of proving common-law fraud, so too it constitutes a 'loss' under . . . §11 of the MCPA.  Thus, a person may bring an action . . . if he has suffered such a loss as a result of a statutory violation."  *Mayhall*, 341 N.W.2d at 271-72.  A calculable determination of the loss is not required; ultimately, the calculation of damages will be a fact issue for trial.

---

[37]  The Manufacturers' argument conflates the "loss" required under a RICO claim with the loss required for standing under the MCPA.  In any event, as explained in Plaintiff's response to the *Summit* motion to dismiss, plaintiffs there have shown a loss under RICO.  The same is true for Plaintiff here.

[38]  Defendants conflate "loss" with "damages," and show instead that the MCPA's framework is akin to Michigan's common law contract rule that the "loss" or "injury" from a breach is distinct from the resulting "damage."  *See, e.g.*, *Vandenberg v. Slagh*, 114 N.W. 72, 75 (1907) ("In actions for breach of contract, nominal damages are recoverable upon proof of the breach."); *4041-49 W. Maple Condo. Ass'n v. Countrywide Home Loans, Inc.*, 768 N.W.2d 88, 92 (Mich. Ct. App. 2009) ("Nominal damages are . . . recoverable where plaintiff's rights have been violated by breach of contract . . . but no actual damages have been sustained or none can be proved.").

### G. Plaintiff Adequately Pleads Its Negligence Claim Against All Defendants

Under Michigan law, "[n]egligence is conduct involving an unreasonable risk of harm." *Moning v. Alfono*, 254 N.W.2d 759, 762 (Mich. 1977). The elements of negligence are: (1) defendant owed a legal duty to plaintiff; (2) defendant breached or violated that duty; (3) plaintiff suffered damages; and (4) the breach proximately caused the damages. *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 177 (Mich. 1993); *see also Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co.*, 727 F.3d 633, 638 (6th Cir. 2013). The SAC's allegations plausibly establish the existence of these elements and the claim should be upheld.[39]

The New York Supreme Court's recent decision in *Opioid* is instructive. There, the court upheld plaintiff counties' negligence claims against a subset of the Defendants here based on their failure to: (1) disclose the actual risks and benefits of prescription opioids; and (2) to establish and operate a system to disclose suspicious orders and notify regulators. *Opioid*, 2018 WL 3115102, at *25-*27. Though the claim was brought under New York law, dismissal there failed for the same reasons it fails here.

#### 1. Plaintiff Does Not Seek to Enforce Statutory Duties

Distributor Defendants assert that the negligence claim should be dismissed because there is no private right of action under the CSA. Dist. Mem. at 9-10. The assertion, which misconstrues the SAC, is addressed at length in the *Summit* Omnibus Mem. at 74-78. To summarize, while the SAC references the CSA and similar Michigan law governing the manufacture, marketing, and distribution of prescription opioids, it does so to inform the duty of care and the foreseeability of

---

[39] The Marketing Defendants assert that the MPLA provides an absolute defense; the SAC fails to plead actual and proximate causation; the claim is preempted; the claim is barred by the municipal cost recovery rule; the absence of any duty to monitor or report suspicious orders; and the failure to meet Rule 9(b) pleading requirements. Mfr. Mem. at 17. Each of these assertions fail for reasons explained in other sections of this brief. *See* §III.C. (MPLA); §III.D. (free public services doctrine); *Summit* Omnibus Mem. at §I.C.2 (actual and proximate causation); *id.* at §I.C.1. (duty to monitor and report suspicious orders); *see generally id.* at §I.C. (sufficiency of pleading). Distributor and Pharmacy Defendants assert the negligence claim fails because it does not adequately allege a duty owed by them to Plaintiff. Dist. Mem. at 9-13; Pharm. Mem. at 10-13. The Distributor Defendants also assert that the negligence claim must be dismissed because the SAC fails to allege a "present physical injury." Dist. Mem. at 13.

the harm that flowed from the breaches of their duty.  Defendants' liability arises from their failure to use reasonable care under the circumstances, not their failure to abide by federal or state policy.

"[V]iolations of duties imposed by . . . rules and regulations are evidence of negligence" under Michigan law.  *Douglas v. Edgewater Park Co.*, 119 N.W.2d 567, 571 (Mich. 1963); *see In re Air Crash Disaster*, 86 F.3d 498, 523 (6th Cir. 1996) (Michigan jury permitted to consider the violation of regulations passed under Federal Aviation Act as evidence of negligence); *Restatement* §285 Cmt. c ("Even where a legislative enactment contains no express provision that its violation shall result in tort liability, and no implication to that effect, the court may, and in certain types of cases customarily will, adopt the requirements of the enactment as the standard of conduct necessary to avoid liability for negligence.").[40]  As such, statutory and regulatory requirements inform the standard of care, and violations of those standards constitute evidence of negligence.[41]

Distributor Defendants rely on cases that address claims arising solely from statutes from which there is no private right of action.  Most do not assert a claim for negligence.  *See Grain v. Trinity Health*, 431 F. App'x 434, 448 (6th Cir. 2011) (upholding dismissal of a claim brought under the Michigan Public Health Code on the ground that the code does not create a private right of action; no negligence claim); *McLiechy v. Bristol W. Ins. Co.*, 474 F.3d 897, 898 (6th Cir. 2007) (affirming dismissal of claims brought under the Michigan Insurance Code because it does not create private rights of action; no negligence claim).  Plaintiff does not bring claims under the CSA or similar Michigan law.  Rather, it brings a negligence claim grounded in the common law and, as explained below, the CSA and Michigan regulations inform Defendants' common law duty of care.

Defendants' reliance on *Monroe Beverage Co., Inc. v. Stroh Brewery Co.*, 568 N.W.2d 687 (Mich. Ct. App. 1997), is misplaced.  Plaintiff sought to maintain a negligence claim against the supplier based on violation of the Liquor Control Act.  *Id.* at 688.  The court held that because the Liquor

---

[40]  Notably, even the cases Defendants rely on hold that regulatory violations constitute evidence of negligence.  *Zeni v. Anderson*, 243 N.W.2d 270, 282 (Mich. 1976); *Pavia v. Ellis-Don Mich., Inc.*, No. 224327, 2001 WL 1511837, at *4 (Mich. Ct. App. Nov. 27, 2001).

[41]  *See also Opioid*, 2018 WL 3115102, at *26 (upholding negligence claim for failure to abide by state suspicious order requirement; violation of the regulation constituted "'some evidence of negligence'").

Control Act provided a cause of action explicitly to wholesalers only, non-wholesalers could not make use of the Act's duties in negligence.  *Id.* at 689.  Plaintiff was not a wholesaler, so its negligence claim was dismissed.  Further, a subsequent Michigan Supreme Court opinion clarified that "[t]he proposition articulated in *Monroe Beverage* does not serve to eliminate **preexisting** duties, rights, and remedies."  *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 244 (Mich. 2010) (emphasis in original).  The duties owed by Defendants here under a negligence theory – the duty to market prescription opioids without false and misleading representations, and the duty to make reasonably diligent efforts to avoid the diversion of highly addictive prescription opioids – preexisted the regulatory regime at issue.  *Summit* Omnibus Mem. at 75.

Defendants' reliance on *McClements v. Ford Motor Co.*, 702 N.W.2d 166 (Mich. 2005), is similarly inapt.  There, the court upheld dismissal of a negligent retention claim against an employer because the statute providing the right for a worker to be free from sexual harassment "accord[ed] an aggrieved worker the remedy of 'a civil action for appropriate injunctive relief or damages, or both.'"  *Id.* at 171.  But here, as the Distributor Defendants themselves acknowledge, there is no private right of action to enforce the federal or Michigan CSA.  Dist. Mem. at 9-10.[42]

## 2. Defendants Owe Plaintiff a Common Law Duty of Reasonable Care

In Michigan, "'"[d]uty" comprehends whether the defendant is under any obligation to the plaintiff to avoid negligent conduct.'"  *Estate of Gallivan by Gallivan v. DBMJ Rehab. Servs., PLLC*, No. 331832, 2017 WL 5013279, at *3 (Mich. Ct. App. Nov. 2, 2017) (quoting *Moning*, 254 N.W.2d at 762).  Neither privity nor a fiduciary relationship between the parties is required.  *Cleveland Indians*, 727 F.3d at 638.  Rather, a party owes a "common law duty of care to all those whom the party knew or reasonably should have foreseen would be injured by the party's negligent acts or omissions."  *Id.* at 638-39.  Once a duty is established, the common law standard of conduct in a

---

[42]  *McLeichy* is inapt for the same reasons explained above.  First, it is based on the reading of *Monroe Beverage* subsequently clarified by *Appletree*.  *McLeichy*, 474 F.3d at 900.  Second, like *McClements* (on which it relies), *McLeichy* concerns a negligence claim seeking to rely on a statutory duty where the statute provides a private right of action.  *Id.*

Michigan negligence case is "'the conduct of a reasonable man under like circumstances.'" *Torno v. 2SI, LLC*, No. 03-74091, 2006 WL 1791392, at *4 (E.D. Mich. June 27, 2006) (quoting *Lowe v. Estate Motors Ltd.*, 410 N.W.2d 706, 713 (Mich. 1987)).

The sale and distribution of opioids are closely monitored and regulated because of the clear danger presented by these drugs. *See* ¶¶468-476. Given the recognition of the dangers of those products, it was entirely foreseeable that, if not marketed, distributed, and sold with requisite care, opioids could cause serious harm. *Id.* Thus, each Defendant knew or reasonably should have foreseen the possibility that Plaintiff would be damaged by the marketing and distribution of prescription opioids, and each Defendant owed Plaintiff a common law duty.[43]

The duty of care owed by Defendants is addressed at length in the *Summit* Omnibus Mem. at 70-78, and the explanation in the context of Ohio law applies with similar weight here.

The results of the Marketing Defendants' false and misleading representations and all Defendants' failure to monitor, report, and halt suspicious orders – the flooding of Monroe with millions of prescription opioids, increased prescription and overdose death rates, an "overwhelming" strain on County services, and significant financial consequences (¶¶626-650, 656-664) – were eminently foreseeable. Indeed, they were specifically foreseen: in 2006 the DEA reminded registrants of their obligations and the need to prevent abuses and diversion, advising that their responsibility was critical because "'the illegal distribution of controlled substances has a substantial and detrimental effect on the health and general welfare of the American people'" and that "'even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm.'" ¶486.

The SAC alleges that Defendants themselves also foresaw these harms. *See, e.g.*, ¶¶534-542 ("[M]anufacturers were keenly aware of the doctors who were writing large quantities of opioids.

---

[43] The standard of care owed by Defendants is heightened because the act of marketing and distributing prescription opioids involves substantial risks to the harm to others, through addiction, diversion, overdose, and the social and economic harms associated with opioid abuse. *See Moning*, 254 N.W.2d at 770 (citing *Restatement* §291 for the proposition that an act is negligent where the risk is of such magnitude as to outweigh the act's utility or the manner in which it is done).

But instead of investigating or reporting those doctors, Defendants were singularly focused on maintaining, capturing, or increasing their sales."); ¶560 ("National retail pharmacy chains . . . were keenly aware of the oversupply of prescription opioids through the extensive data and information they developed and maintained as both distributors and dispensaries."); ¶681 ("[Marking and Supply Chain] Defendants were aware, both individually and collectively . . . of the suspicious orders that flowed directly from Defendants' facilities."); ¶773 ("Supply Chain Defendants were aware of suspicious orders of prescription opioids and the diversion of their prescription opioids into the illicit market.").

The cases cited by Distributor Defendants concern circumstances where the ultimate harm suffered by the plaintiff was not reasonably foreseeable due to facts far removed from those alleged here.  *See Buczkowski v. McKay*, 490 N.W.2d 330, 334 (Mich. 1992) (plaintiff sued for injury caused by shotgun slug criminally fired by another person who acquired the slug from the defendant); *In re Certified Question from the Fourteenth Dist. Ct. of App. of Tex.*, 740 N.W.2d 206, 219 (Mich. 2007) (plaintiff sued for mesothelioma contracted when she washed her stepfather's clothes after he wore them home from his job for an independent contractor at defendant's property); *Graves v. Warner Bros.*, 656 N.W.2d 195, 198 (Mich. Ct. App. 2002) (decedent's estate sued for wrongful death where murderer was purportedly motivated to kill decedent by surprise revelation on defendant's television show that decedent had a crush on the murderer).

Indeed, *Certified Question* militates in favor of finding a duty here.  There, the court found the harm not foreseeable because the risks of "take home" asbestos exposure were not then known. 740 N.W.2d at 218.  While the Occupational Health and Safety Administration would later promulgate regulations prohibiting employers from allowing workers exposed to asbestos to wear their work clothes home, those regulations had not yet been proposed.  *Id.*  In contrast, the dangers of prescription opioids were widely known; they were listed as Schedule II drugs with a "high potential for abuse" and regulation already existed to combat risks of diversion, which, if unabated, would have deleterious impacts on communities.

Distributor Defendants also attempt to analogize their position to pharmacists, relying on cases holding that pharmacists have no common law duty to refuse to dispense lawful prescriptions. Dist. Mem. at 11-12. But the analogy is inapt. In contrast to the cases Defendants cite, Plaintiff here pleads facts supporting an inference that alleges that Defendants maintained data demonstrating clear patterns of suspicious orders emanating from certain doctors and healthcare providers and that, despite their access to such data, refused to identify, investigate, or report suspicious orders. ¶¶518-525. Further, as the Distributor Defendants' own cases point out, pharmacists face liability in tort for any breach of their duty to **fill** lawful prescriptions. *Adkins v. Mong*, 425 N.W.2d 151, 152 (Mich. Ct. App. 1988). In contrast, Defendants here must operate consistent with regulations requiring them to "design and operate a system to disclose to the registrant suspicious orders of controlled substances" and to inform the Field Division Office of the Administration in their area of suspicious orders when discovered by the registrant. ¶¶466, 829, 876; *see Masters Pharm., Inc. v. Drug Enforcement Admin.*, 861 F.3d 206, 221 (D.C. Cir. 2017) (construing the suspicious order requirement).[44]

### 3. Plaintiff Pleads Its Injuries Were Proximately Caused by Defendants' Acts and Omissions

Defendants assert that proximate cause fails for the reasons raised in their motions to dismiss the *Summit* complaint. Mfr. Mem. at 17; Pharm. Mem. at 13. As summarized above and explained thoroughly in the *Summit* Omnibus Mem., proximate cause is established. *Summit* Omnibus Mem. at 78-85. Plaintiff incorporates Summit County's arguments herein and provides additional analysis of Michigan law below.

---

[44] The Distributor Defendants' reliance on *Kintigh v. Abbott Pharm.*, 503 N.W.2d 657 (Mich. Ct. App. 1993), and *Stebbins v. Concord Wrigley Drugs, Inc.*, 416 N.W.2d 381 (Mich. Ct. App. 1987), is even less persuasive. *Kintigh* is a three-paragraph opinion in which the court held that defendant pharmacies and pharmacists owed no duty to refrain from dispensing Schedule V, over-the-counter, codeine-based cough syrup, stating that the claim was "clearly unenforceable." 503 N.W.2d at 658. Here, in contrast, Schedule II prescription drugs distributed under a regulatory regime requiring the monitoring and reporting of suspicious sales is at issue. *Stebbins* is wholly inapt, holding only that there is no duty for a pharmacist to warn a patient of potential drug side effects where neither the physician nor the manufacturer has required such warning. 416 N.W.2d at 388.

a. **Defendants' Negligence Foreseeably Caused Plaintiff's Injuries**

Under Michigan law, "[p]roximate cause requires determining whether the defendant's negligence foreseeably caused the plaintiff's injuries" and exists where "the harm caused to plaintiff 'was the general kind of harm the defendant negligently risked.'" *Ray v. Swager*, 903 N.W.2d 366, 371, 382 (Mich. 2017). The defendant's action need not be the sole cause of the plaintiff's injury; rather, "there may be more than one proximate cause." *Brisboy v. Fibreboard Corp.*, 418 N.W.2d 650, 653 (Mich. 1988). "'Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence.'" *Moning*, 254 N.W.2d at 766.[45]

Here, Plaintiff's allegations are sufficient to allege that their injuries were proximately caused by Defendants' acts and omission. Broadly, Defendants have engaged in two categories of actions, each a foreseeable cause of Plaintiff's harms: (1) the Marketing Defendants dramatically increased demand for prescription opioids and the number of such prescriptions by disseminating false and misleading information about their risks and benefits, including by underplaying the risk of addiction; and (2) all Defendants failed to monitor and report suspicious orders of these dangerous Schedule II drugs. Plaintiff alleges that it has incurred municipal costs due to Defendants' conduct that caused, exacerbated, and prolonged the opioid crisis: monetary damages including costs expended for substance abuse treatment services, emergency medical care, law enforcement, the judicial system, and lost productivity to its workforce. ¶879; *see also* ¶¶19, 31-32, 663-664, 884. Those damages were clearly the kind of harm Defendants' conduct risked and were a foreseeable result of Defendants' negligence. *Ray*, 903 N.W.2d at 371; *Moning*, 254 N.W.2d at 765. Thus, the SAC adequately pleads proximate cause. *Cf. Summit* Omnibus Mem. at 78-85 (addressing proximate cause under Ohio law).

---

[45] The consideration of proximate cause overlaps with the consideration of duty. *Moning*, 254 N.W.2d at 765 ("The questions of duty and proximate cause are interrelated because . . . both depend in part on foreseeability . . . .").

### b.  Third-Party Actions Do Not Break the Causal Chain

Defendants also incorrectly contend that third party actions break the causal chain between Defendants' conduct and Plaintiff's injuries.  As the *Summit* Omnibus Mem. details, the conduct of doctors in prescribing opioids was not independent of Defendants' wrongs, nor do physicians' roles as "learned intermediaries" or the actions of individuals in the illegal secondary market break the causal chain or make it too attenuated.[46]  Rather, these were "'[f]oreseeable intervening forces'" and "'are within the scope of the original risk, and hence of the defendant's negligence.'"  *Moning*, 254 N.W.2d at 766; *Summit* Omnibus Mem. at 82-85.

Monroe does not allege that Defendants failed to protect it from harm caused by others. Rather, it alleges that Defendants ***themselves*** engaged in conduct the foreseeable result of which was to cause harm to Plaintiff. *See, inter alia*, ¶¶313-389 (by spreading deceptive messaging about the safety and addictiveness of opioids through front groups and "key opinion leaders"); ¶¶390-402 (by funding continuing medical education programs to encourage and remunerate doctors for increasing their prescriptions of opioids); ¶¶530-534 (providing incentives to sales representatives with pill mills in their territories and ignoring red flags of diversion during regular visits to pharmacies and doctors); ¶¶539-559 (failing to report suspicious orders or otherwise act to prevent diversion).

### 4.  Plaintiff Plausibly Pleads Factual Causation

The Marketing Defendants also assert that the SAC fails to plead actual causation.  Mfr. Mem. at 17.  Factual causation "requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred."  *Ray*, 903 N.W.2d at 371.  The SAC clearly pleads that the

---

[46]  Michigan and Ohio law on the learned intermediary doctrine are the same in all material respects.  The doctrine "is an exception to the axiomatic principle that a manufacturer has a duty to warn the user of known dangers inherent to its product." *Tice v. Zimmer Holdings, Inc.*, No. 1:15-cv-134, 2015 WL 4392985, at *5 (W.D. Mich. July 15, 2015).  It requires manufacturers of prescription drugs to provide product warnings only to the prescribing physician, not the end user.  *Id.*  As such, it requires manufacturers to provide an adequate warning to the physician; where that warning is inadequate, the doctrine does not shield the manufacturer from tort liability.  *Id.*; *see Nichols v. Clare Cmty. Hosp.*, 476 N.W.2d 493, 496 (Mich. Ct. App. 1991) (causation satisfied if plaintiff could show that adequate warning to doctor would have prevented plaintiff's injury); *Reeder v. Hammond*, 336 N.W.2d 3, 5 (Mich. Ct. App. 1983) (plaintiff stated actionable claim against drug manufacturers for failing to adequately warn physician); *see also Muilenberg v. Upjohn Co.*, 320 N.W.2d 358, 366 (Mich. Ct. App. 1982) ("The drug manufacturer does have a continual duty to warn the medical profession of the side effects of drugs.").

Marketing Defendants' false and misleading messaging was an actual cause of the opioid crisis in and resulting damages to Monroe.  ¶¶626-664, 875, 879.  The same is true of Defendants' failure to monitor, report, and refuse to ship suspicious orders of prescription opioids.  ¶¶626-664, 876, 879. Had either not acted negligently, substantially fewer opioids would have been distributed in Monroe, the effects of the opioid crisis on Monroe would have been lessened, and Monroe's damages would have been substantially minimized.

### 5.    Plaintiff Need Not Plead Physical Injury

Distributor Defendants incorrectly argue that the holding in *Henry* bars Plaintiff's claims. 701 N.W.2d at 688.  The *Henry* case addressed whether Plaintiffs were entitled to recovery through a medical monitoring program for injuries that had not yet been sustained.  Plaintiff is asserting present injuries to its property and to its population.  ¶879.  Even the Michigan Supreme Court opinion on which the Distributor Defendants rely holds that is enough: "Michigan law requires an actual injury to person or property" to recover under negligence.  *Henry*, 701 N.W.2d at 689.[47]

### H.    Plaintiff Has Properly Pled Its Unjust Enrichment Claim

The Manufacturer Defendants and Distributor Defendants contend that Plaintiff's claim for unjust enrichment must be dismissed because it is duplicative.  Mfr. Mem. at 17-18; Dist. Mem. at 24.  But "nothing prohibits a plaintiff from pleading multiple claims when there are, in fact, multiple theories of liability that are legally viable and consistent with the facts; where a plaintiff has a contract claim, tort claim, and a claim for statutory violation, all may be pled."  *PCA Minerals, LLC v. Merit Energy Co., LLC*, 725 F. App'x 342, 349 (6th Cir. 2018); *see also In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000) (declining to dismiss unjust enrichment claim); *Logan v. Charter Twp. of W. Bloomfield*, No. 333452, 2018 WL 383751, at *3 (Mich. Ct. App. Jan. 11, 2018)

---

[47]    The Michigan Supreme Court has long held that "[m]oney is property."  *Sears v. Cottrell*, 5 Mich. 251, 274 (1858); *cf. In re Louisville Nat. Banking Co.*, 158 F. 403, 404 (6th Cir. 1908) ("Money is property in its most available and efficient form.").

(declining to dismiss unjust enrichment claim as duplicative; "'[i]nconsistent claims or defenses are not objectionable'").[48]

All Defendants contend that Plaintiff may not maintain a claim for unjust enrichment in the absence of a direct, transactional relationship between the parties. Mfr. Mem. at 18; Dist. Mem. at 24-25; Pharm. Mem. at 15-16. Equity does not require such a relationship. "Unjust enrichment is defined as the unjust retention of "'money or benefits which in justice and equity belong to another.'"'" *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010). To succeed on a claim of unjust enrichment, "a plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Midfield Concession Enters., Inc. v. Areas USA, Inc.*, 130 F. Supp. 3d 1122, 1149 (E.D. Mich. 2015) (citing *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003)).

The critical inquiry is not whether the benefit is conferred directly on the defendant, but whether the plaintiff can establish that his detriment and the defendant's benefit are related and flow from the challenged conduct. *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 864 (E.D. Mich. 2014). "'[W]henever one person adds to the other's advantage in any form, whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other.'" *Cardizem*, 105 F. Supp. 2d at 671. Where a defendant engages in wrongdoing directed at a plaintiff and thereby causes the plaintiff to convey money that ultimately benefits the defendant, Michigan courts allow unjust enrichment claims to proceed. *See, e.g.*, *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 614-15 (E.D. Mich. 2015) ("'[N]umerous cases have held that a benefit may be unjustly obtained by a defendant through an intermediary, especially if there is some wrongdoing on the defendant's part.'"); *accord Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017)

---

[48] Defendants rely on *Taylor v. Kochanowski*, No. 289660, 2010 WL 2696675, at *3 (Mich. Ct. App. July 8, 2010), but *Taylor* addresses the viability of unjust enrichment claims premised on commercial misappropriation where a patent has preempted any claim to commercial appropriation. *Taylor*'s holding is limited to that context. *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 462-63 (6th Cir. 2001), similarly does not support Manufacturer and Distributor Defendants' position that a claim must be dismissed simply because it is "duplicative or derivative" of other claims, and instead involves the dismissal of such a claim where the underlying claims were also specifically dismissed.

("Thus, to state a claim for unjust enrichment, Michigan law requires a direct benefit or some sort of direct interaction between [p]laintiffs and [defendant].").  Michigan courts do not bar unjust enrichment claims simply because the benefit flows through an intermediary.[49]

Here, Plaintiff has sufficiently alleged that it suffered a detriment, that Defendants retained a benefit, that such detriment and benefit are related, and that both flow from the challenged conduct. Plaintiff alleges that Defendants' fraudulent marketing practices and failure to prevent diversion of opioids caused Plaintiff to dramatically increase its spending on opioids for the treatment of chronic pain, and that such spending led to record profits for Defendants.  ¶¶10-15, 626-636, 639-642, 647-650, 882-885; *see also* SAC, §§I.D.-I.E.[50]  The SAC alleges that Plaintiff was a focus of Defendants' fraudulent marketing schemes and reckless supply chain practices, and that Monroe providers prescribed opioids as a result of those efforts.  ¶¶626-650.

Moreover, the cost of the Defendants' wrongful conduct in selling and distributing opioids includes increased healthcare services and addiction treatment for opioid users, to name but a few categories.  ¶¶19, 661-664, 884-885.  These costs are "not the normal or typical burdens of

---

[49]   *See, e.g.*, *Miller v. MSX-IBS Holding, Inc.*, No. 16-CV-10596, 2016 WL 4138238, at *7 (E.D. Mich. Aug. 4, 2016) ("Plaintiffs are correct that Michigan law does not require a direct link between defendants' benefit and plaintiffs' detriment."); *Auto. Parts*, 50 F. Supp. 3d at 864-65 (the lack of direct contact between auto dealer and end-payor plaintiffs and manufacturer and seller defendants does not "doom[] the unjust enrichment claims"); *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*, 504 N.W.2d 635, 640-41 (Mich. 1993) (allowing equitable relief where school district acted to the subcontractor plaintiff's detriment by assuring it of payment bond, which it knew was fraudulent, and the district was indirectly benefited by plaintiff subcontractor's construction on school grounds); *Cardizem*, 105 F. Supp. 2d at 670-71 (rejecting drug manufacturer defendants' arguments that drug buyer plaintiffs "must allege, as an essential element of their unjust enrichment claims, facts showing that they directly conferred a benefit on [the manufacturers]").

[50]   Distributor Defendants contend that the SAC does not sufficiently allege that Plaintiff purchased opioids directly from Distributor Defendants because it fails to identify a specific distributor from which it purchased the opioid medications.  Dist. Mem. at 25.  The SAC, however, sufficiently alleges that Plaintiff purchased opioids from all Distributor Defendants, including the Pharmacy Defendants.  ¶¶77-89, 882-883.  To the extent such purchases were made pursuant to a contract, the mere existence of such contracts are not fatal to Plaintiff's unjust enrichment claim premised on such purchases.  *Miller*, 2016 WL 4138238, at *7 (holding that at the pleading stage, "plaintiffs are entitled to plead in the alternative and the fact that plaintiff seeks to recover under both [contract and unjust enrichment] theories is of no moment at [such] early juncture").  Distributor Defendants' contention that the SAC does not "identify any facts suggesting that it would be unjust for [Plaintiff] to pay the contractually agreed price for a lawful product," Dist. Mem. at 25, misstates Plaintiff's burden.  Plaintiff must plausibly allege that Defendants' retention of the benefit results in inequity to Plaintiff.  It has.

governmental programs and services."  ¶20.[51]  The SAC plausibly alleges that by using Plaintiff to pay for the Defendants' negative externalities – the cost of the harms caused by their wrongful practices – the Defendants knowingly saved costs and expenses that allowed them to sell and distribute more opioids, and make more money, than if they had internalized the actual cost of their activities.  SAC, §§I.E., I.H.

Defendants' authority does not support a different conclusion.  *Lipov v. Louisiana-Pacific Corp.*, No. 1:12-CV-439, 2013 WL 3805673, at *6 (W.D. Mich. July 22, 2013), S*mith v. Glenmark Generics, Inc.,* No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014), and *Storey v. Attends Healthcare Prods., Inc.,* No. 15-CV-13577, 2016 WL 3125210, at *13 (E.D. Mich. June 3, 2016), are each inapposite because they involve claims by consumer plaintiffs against remote manufacturers that did not directly target or have any sort of direct interaction with plaintiffs.  By contrast, Plaintiff here has plausibly alleged that Defendants directly targeted Monroe, its providers, and its citizens.  ¶¶626-650; *W.C. Ducomb Co., Inc. v. Ann Arbor Machine Co.*, No. 301988, 2012 WL 516089, at *3-*4 (Mich. Ct. App. Feb. 16, 2012), and *Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 572-73 (6th Cir. 2014), are distinguishable because they involve claims where plaintiffs did not demonstrate that they conferred any benefit whatsoever upon defendants.  As explained above, the SAC plausibly alleges that Plaintiff has conferred a benefit upon Defendants.  And *Iverson Indus. v. Metal Mgmt. Ohio, Inc.*, 525 F. Supp. 2d 911, 921-22 (E.D. Mich. 2007), where the court entered summary judgment in favor of defendants because plaintiff failed to introduce evidence that defendants' retention of the benefit was inequitable, is inapplicable here because the SAC sufficiently alleges facts that demonstrate the inequity resulting to Plaintiff because of Defendants' retention of the alleged benefit.  ¶¶10-15, 19, 626-636, 639-642, 647-650, 661-664, 882-884; *see also* SAC, §§I.D., I.E., I.H.

## I.     Plaintiff Has Properly Pled Its Federal RICO Claims

Plaintiff has properly pled its RICO "Marketing Enterprise" and RICO "Supply Chain Enterprise" claims.  While the Manufacturers argue that Plaintiff "cannot plead the elements of a

---

[51]   The Distributor Defendants' contention to the contrary, Dist. Mem. at 25 n.15, amounts to a factual dispute that should be resolved at a later stage in the proceeding.

RICO claim based on Michigan law," Defendants' arguments are unpersuasive and include misstatements of the law.  Mfr. Mem. at 20.  For the reasons below and the reasons set forth in the *Summit* Omnibus Mem., Defendants' motion to dismiss should be denied.

>    1.    **Causation**

Manufacturers' argument that Plaintiff failed to plead causation for its RICO claims because "Plaintiff's causal theory depends on alleged acts of diversion by patients, doctors, and pharmacies that violation both federal and Michigan law" (Mfr. Mem. at 20), is the same argument Defendants raised in the Memorandum of Law in Support of the Manufacturer Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 20-1 in Case No. 18-op-45090) ("*Summit* Mfr. Mem.") at 11-17.  As explained in the *Summit* Omnibus Mem., Defendants have failed to consider relevant Sixth Circuit precedent, Plaintiff's RICO allegations, and have improperly employed an inflexible causation test at a premature stage of the litigation.

Defendants' position that intervening acts by patients, doctors, and pharmacies cause Plaintiff's causation theory to fail is a misstatement of the law.  Where, as here, the original tortfeasor's intentional acts **contemplated and caused the intervening acts**, the original tortfeasor remains liable for the consequences of its actions – even if the intervening actors negligently or intentionally cause injury.  *See In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 39 (1st Cir. 2013) ("Pfizer now argues that because doctors exercise independent medical judgment in making decisions about prescriptions, the actions of these doctors are independent intervening causes.  But Pfizer's scheme relied on the expectation that physicians would base their prescribing decisions in part on Pfizer's fraudulent marketing."); *Restatement* §447.   Plaintiff alleges that Defendants ***knowingly and intentionally*** caused the very actions they hide behind as "intervening causes" involving "illegal conduct" (*Summit* Omnibus Mem. at 42); doctors overprescribing opioids, pharmacies over-dispensing opioids, patients becoming addicted to opioids, all of which caused Plaintiff to suffer pecuniary loss.  Plaintiff's "alleged injury . . . is the direct result of [Defendants'] fraud.  It was a foreseeable and natural consequence of [Defendants'] scheme." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656-58 (2008) (holding that a RICO plaintiff need not even show

reliance in order to satisfy the direct injury requirement).  Increased costs to Plaintiff are direct and foreseeable harms caused by the criminal enterprises alleged in the SAC.

Plaintiff's injuries not only include those discussed in the *Summit* Omnibus Mem. (§I.B.2.b), but Plaintiff also alleges that it is self-insured (¶28); that it paid for opioids distributed by Defendants for sale in Monroe (¶¶882-883); and that but for the opioid addiction epidemic created by Defendants' conduct, Plaintiff would not have lost money or property.  ¶¶817, 848.[52]  *See Neurontin*, 712 F.3d at 37 (holding that manufacturer's fraudulent marketing proximately caused injury to third-party payor that paid for prescriptions); *City of Oakland*, 866 F.2d at 847 (finding that counties suffered a RICO injury when they overpaid for sewage services allegedly resulting from price fixing conspiracy between Detroit and others); *see also Opioid*, 2018 WL 3115102, at *19 (finding that, "as a result of the manufacturer defendants' deceptive marketing campaigns regarding opioid effectiveness, misuse and addiction," the plaintiffs suffered direct injuries in paying for "medications that were not medically necessary and that would not have been approved for the treatment of chronic, non-cancer pain if all the relevant facts about such medications had been known by them").

### 2.    Actionable Racketeering Activity

Manufacturers also confusingly misstate Plaintiff's RICO predicate act allegations.  Mfr. Mem. at 20-21.  They argue that there is no actionable racketeering activity because "Plaintiff's theory [is that Defendants] misrepresent[ed] their compliance with state law duties to monitor, report, and halt suspicious orders" and "Michigan imposes no independent statutory or common law duties to do so."  *Id.*  In support of their position, Defendants cite a single case for the general proposition that "[g]enerally, an individual has no duty to protect another who is endangered by a third person's conduct."  *Id.* (citing *Murdock v. Higgins*, 559 N.W.2d 639, 642 (Mich. 1997)).

First, Plaintiff's SAC includes a long list of predicate acts that give rise to a RICO claim and how the RICO Marketing Defendants' "use of the U.S. Mail and interstate wire facilities to

---

[52]   Such damages will be established on an aggregate basis by showing that a reasonable, estimable percentage of sales of opioids is for inappropriate use and that this percentage can be applied to the opioid prescriptions for which Plaintiff paid and by which Plaintiff was damaged.

perpetrate the opioids marketing scheme involved thousands of communications, publications, representations, statements, electronic transmissions, payments." ¶757. The SAC then goes on to detail the specific examples of this conduct. *Id.* Further, additional allegations of the predicate acts are found throughout the SAC. *See* ¶¶757, 785, 787-788, 803-804, 806, 812, 826, 830, 836-837, 846. Surely, Plaintiff's allegations of predicate acts are not simply that Defendants misrepresented their compliance with state law duties, but that Defendants took actual steps to perpetuate the scheme. ¶¶757, 804, 826, 830. Specifically, Plaintiff has alleged that Defendants committed predicate acts of racketeering by committing Mail Fraud (18 U.S.C. §1341) and Wire Fraud (18 U.S.C. §1343). ¶¶803-804, 806, 826, 830.

Further, Manufacturers' argument and their case law, which does not even involve RICO, fail when considered in the context of RICO predicate acts. For example, a "'RICO claim does not require proof of affirmative misrepresentations because the omission of material facts suffices to prove the predicate acts of mail or wire fraud.'" *Duramax*, 298 F. Supp. 3d at 1083. Plaintiff must only allege its "theory of fraudulent omissions with enough specificity to provide Defendants with fair notice of the claims." *Id.* at 1056.

Even if Plaintiff's predicate act claims solely alleged that Defendants misrepresented compliance with state law duties, which they do not, Defendants' argument is still unconvincing. The Sixth Circuit, in analyzing Michigan precedent, concluded that "'[W]here a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him, that third party can maintain a tort action against the party making the false statements for the damages resulting from the fraud.'" *Nernberg v. Pearce*, 35 F.3d 247, 251 (6th Cir. 1994) (quoting *Cormack v. Am. Underwriters Corp.*, 288 N.W.2d 637 (Mich. Ct. App. 1979)).

### 3.    Attributable Third-Party Statements

Finally, Manufacturers suggest that Plaintiff's RICO claims fail because there are no attributable third-party statements. Mfr. Mem. at 21. Specifically, Defendants argue that Plaintiff has "fail[ed] to plead a predicate act based on allegedly false statements made by third parties

because, in Michigan, '[t]he test of whether an agency has been created is whether the principal has a right to control the actions of the agent.'  Plaintiff has failed to plead facts sufficient to establish such control."  Mfr. Mem. at 21.  The Manufacturer Defendants proffered the same arguments in the *Summit* motion to dismiss.  *See Summit* Mfr. Mem. at 26 (arguing that "[Summit plaintiffs] have not pleaded the existence of an agency relationship here" and that the Summit complaint "alleges no facts explaining how any Manufacturer Defendant controlled the content of third-party statements, or how any Manufacturer Defendant's purported control led to the specific statements that [Summit plaintiffs] challenge").  Here, the Manufacturing Defendants have cited two cases that simply provide the common law definition of "agency" under Michigan law.  These two cases, a mortgage foreclosure case and an unfair labor practices case, provide no additional guidance nor do they involve similar facts to those alleged by Plaintiff.  *See Meretta v. Peach*, 491 N.W.2d 278, 280 (Mich. Ct. App. 1992); *St. Clair Intermediate Sch. Dist. v. Intermediate Ed. Ass'n*, 581 N.W.2d 707 (Mich. 1998).

As explained in the *Summit* Omnibus Mem., Plaintiff has alleged "that the Manufacturer Defendants maintained control over the Front Groups and KOLs and had the right to direct their activities, including 'funding, directing, editing, approving,' etc."  *Summit* Omnibus Mem. at 55; *see also* ¶¶313, 315-324, 326-331, 333, 339-346, 350-351, 352-359, 362-364, 731-734, 744-745, 749-751.  The agreements between the Manufacturer Defendants and their KOLs and Front Groups allowed them to exercise control over what was published, spoken or disseminated.  The allegations in Plaintiff's SAC are detailed and fully explain the editorial control the Manufacturer Defendants had over the KOLs and Front Groups.

### J.    Plaintiff Has Stated a Claim for Fraud

As a threshold matter, Manufacturer Defendants assert that the fraud claim fails for reasons addressed elsewhere in the parties' briefs: because the MPLA bars Plaintiff's state law claims, the free public services doctrine precludes recovery, and for the reasons set for in §X of the *Summit* Mfr. Mem.  Mfr. Mem. at 18.  For the reasons addressed in §§III.B.-D. and III.I. herein, these assertions are unfounded.  As set forth below, Defendants' remaining objections regarding Plaintiff's fraud claim are similarly meritless.

1.      **Plaintiff Alleges Fraudulent Misrepresentations with Sufficient Particularity**

The Distributor and Pharmacy Defendants contend that Plaintiff's fraud claim is deficient because Plaintiff does not allege that they have made any misrepresentations and, even if the SAC includes such allegations, Plaintiff has failed to include the requisite particularity under Rule 9(b). Dist. Mem. at 20-22; Pharm. Mem. at 13-15.  The detailed allegations in the SAC contradict this conclusion for substantially similar reasons as those set forth in the *Summit* Omnibus Mem. at 5, 23-35.

Here, Plaintiff alleges that Defendants, including Distributor and Pharmacy Defendants, had a duty under the CSA and its implementing regulations to identify and report suspicious orders of prescription opioids, yet failed to do so, in order to increase and maintain high quotas for the manufacture and distribution of their drugs, thereby unlawfully expanding the market.  ¶¶87-89, 458-546, 564-612, 763-773.  Plaintiff details the instances where Distributor and Pharmacy Defendants made misrepresentations in furtherance of the common purpose of this scheme.  ¶¶87-89, 547-559, 690, 767, 769-770, 773-775, 781, 784.[53]  Plaintiff alleges the total number of pills that were diverted into Monroe (¶¶635-640) and the fact of known diversion routes throughout various regions of the country, including one between Michigan, West Virginia, Ohio, and Kentucky that affected counties like Monroe in Michigan.  ¶¶613-621.[54]

Distributor and Pharmacy Defendants rely on distinguishable authority that purportedly requires Plaintiff to identify the speaker of the fraudulent statements, state where and when each

---

[53]  Distributor Defendants contend that the County cannot premise its fraud claim on Distributor Defendants' "affirmative statements that they maintain 'state-of-the-art' anti-diversion systems and are committed to helping to prevent diversion" because, *inter alia*, Plaintiff does not allege that these statements are false.  Dist. Mem. at 21.  This is patently untrue.  ¶559.

[54]  Furthermore, because Plaintiff's allegations rest on information within Distributor and Pharmacy Defendants' knowledge – for example, where or when they made statements about their compliance with the CSA, failed to report suspicious orders, or submitted quota applications based on incomplete suspicious order reports – that information need not be alleged with particularity.  *See JAC Holding Enters., Inc. v. Atrium Capital Partners, LLC*, 997 F. Supp. 2d 710, 727-28 (E.D. Mich. 2014) ("At this stage of the case, where a major part of the surviving evidence that would affirm or negate the individual culpability of each defendant is in the hands of those defendants themselves, it is appropriate to allow the plaintiffs [sic] claims to proceed.").

statement was made, and why each was fraudulent. *Republic Bank Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 244-46, 253 (6th Cir. 2012); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877-79 (6th Cir. 2006); *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993); *Leoni v. Rogers*, 719 F. Supp. 555, 569 (E.D. Mich. 1989). These cases involve a small number of fraudulent acts occurring in a relatively short amount of time (*Republic Bank*) or barebones allegations that fail to plausibly allege that defendant's conduct amounted to fraudulent misrepresentation (*Sanderson; Coffey; Leoni*). Here, Distributor and Pharmacy Defendants' fraudulent statements do not fit neatly into a small time period; rather, they involve misrepresentations about Defendants' compliance with their duty to identify and report suspicious orders. Defendants furnished these misrepresentations during their years-long failures to report hundreds, if not thousands (or more) of suspicious orders. This complex and broad-ranging fraudulent scheme is exactly the kind of situation where plaintiffs are excused from pleading each and every detail about a fraudulent scheme. *United States ex. rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509-10 (6th Cir. 2007).

Pharmacy Defendants rely on *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551-52 (6th Cir. 2012), to contend that Plaintiff's fraud claim is deficient under Rule 9(b) because Plaintiff fails to "differentiate among the many defendants." Pharm. Mem. at 14. In *Cataldo*, the Sixth Circuit held that plaintiff's "vague[]" reference that "defendants" made the alleged misrepresentations was insufficient under Rule 9(b) because there were many defendants in the case. Unlike the plaintiff in *Cataldo*, however, Plaintiff here has separated allegations against each group of Defendants. Plaintiff has alleged specific examples of Manufacturer Defendants who made misrepresentations regarding their duty to identify and report. ¶¶115-119, 137-146. Plaintiff likewise alleges the specific misrepresentations made by each of the Distributor and Pharmacy Defendants. ¶¶87-89, 547-559, 690, 767, 769-770, 773-775, 781, 784. These allegations satisfy the "who, what, when, where and why" for a group of Defendants whose specific wrongful conduct has been amply documented in other litigation, including with the DEA. *Id.*

## 2. Plaintiff States a Claim for Silent Fraud with Sufficient Particularity

Distributor Defendants attempt to cast Plaintiff's silent fraud claim as an attempt to recover for the Distributor Defendants' failure to "confess[] [their] wrongdoing" by announcing their negligence.  Dist. Mem. at 22.  This contention misapprehends the gravamen of Plaintiff's silent fraud claim that Distributor Defendants failed to disclose information which they were under a legal or equitable duty to disclose.  *See MacDonald*, 724 F.3d at 665 (silent fraud requires that defendant had "'a legal duty to make a disclosure'").

Defendants argue that Plaintiff fails to allege that: (1) they were under a legal duty to disclose suspicious pharmacy orders; and (2) such duty was based upon incomplete or misleading statements they made in response to Plaintiff's specific inquiry.  Dist. Mem. at 22-23; Pharm. Mem. at 14 n.6.  The SAC's detailed allegations and the applicable law, however, render both arguments untenable.  Plaintiff specifically alleges that Distributor and Pharmacy Defendants had a duty under the CSA and its implementing regulations to identify and report suspicious orders of prescription opioids, yet failed to do so, in order to increase and maintain high quotas for the manufacture and distribution of their drugs, thereby unlawfully expanding the market.  ¶¶87-89, 458-546, 564-612, 763-773.[55]  Distributor Defendants contend that, as a matter of law, they "have no legal duties that run to" Plaintiff.  Dist. Mem. at 23.  For the reasons addressed in §§III.G.1.-2. herein, this assertion is unfounded.

Distributor and Pharmacy Defendants contend that they should escape accountability for their conduct because, even if they failed to report suspicious orders, they never made a false, incomplete, or misleading statement in response to a specific inquiry by Plaintiff.  Dist. Mem. at 23 n.14; Pharm. Mem. at 14 n.6.  For the reasons addressed in §III.F.6. herein, this contention misstates

---

[55] As explained *supra*, n.28, a more relaxed pleading standard applies here, because Plaintiff alleges specific examples of Distributor and Pharmacy Defendants' material omissions, including their awareness of specific orders, awareness of competing Distributor Defendants' orders, and their failure to report them, including that the Defendants had a duty to make a full and complete disclosure regarding their compliance with the CSA, and failed to do so while allowing millions of pills to be diverted into Monroe.  *See* ¶¶87-89, 463-468, 481-487, 498-499, 515-552, 687-688, 693, 763-786.

the law: a silent fraud claim does not **require** a showing of an affirmative misrepresentation made in response to a specific inquiry by Plaintiff.  Regardless, as discussed in §III.J.1. herein, the SAC **does** allege that Distributor and Pharmacy Defendants made misleading affirmative representations such that they have assumed a duty to disclose.  Notwithstanding, and as discussed in §III.F.6. herein, the existence of a duty to disclose is a fact-intensive inquiry inappropriate for dismissal on the pleadings.

### 3.     Plaintiff Adequately Alleges Reliance

Defendants contend that the fraud claim cannot proceed because Plaintiff has failed to plausibly allege reliance.  Mfr. Mem. at 18; Dist. Mem. at 23; Pharm. Mem. at 15.  This is untrue. The SAC expressly alleges that "Plaintiff relied on Defendants' representations and/or concealments, both directly and indirectly[,] [and that its] injuries were approximately caused by reliance."  ¶893.  Additionally, Plaintiff alleges that Defendants' fraudulent conduct: (1) deepened the crisis of opioid abuse, addiction, and death in Monroe; and (2) caused a substantial increase of prescription opioids and corresponding damages to Monroe.  ¶¶559, 649-650, 690.  The Defendants' contentions to the contrary amount to a factual dispute that should be resolved at a later stage in the proceeding.  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 516-17 (6th Cir. 1999) (noting that reliance is a factual issue and reversing dismissal of fraud claim for lack of justifiable reliance as a matter of law).

Manufacturing Defendants contend that a fraud claim cannot be predicated on alleged misrepresentations made to third parties.  Mfr. Mem. at 18.  This is not an accurate statement of Michigan law, under which "a plaintiff may maintain an action for fraud even when a misrepresentation has not been made directly to the plaintiff but had instead been made to a third party with the intent and expectation that the misrepresentation would be repeated to induce reliance by a principal participant to a business undertaking."  *Nernberg*, 35 F.3d at 251; *see also Arrowood Indem. Co. v. City of Warren*, No. 13-13938, 2015 WL 58679, at *6 (E.D. Mich. Jan. 5, 2015) (a "'fraud claimant may rely upon misrepresentations made by a defendant to a third party with the intent to induce reliance by the claimant'"), *aff'd sub nom. Arrowood Indem. Co. v. Cristini*, 630 F. App'x 512 (6th Cir. 2015).  Accordingly, Plaintiff here has sufficiently alleged a fraud claim predicated on

misrepresentations made to third parties.  ¶¶140, 282, 559, 687, 689-690, 730.  The case Manufacturing Defendants cite does not disagree that a fraud claim can be based on a plaintiff's justifiable reliance on a defendant's misrepresentations to a third party.  *Int'l Bhd. of Elec. Workers, Local Union No. 58 v. McNulty*, 543 N.W.2d 25, 30 (Mich. Ct. App. 1995).  In that case, however, unlike here, there was no evidence or discussion of any such reliance by the plaintiffs.  *Id.*

The Manufacturer Defendants also contend that because their product labels contained the FDA-required warning information, doctors have a duty to be familiar with these labels, and the Manufacturer Defendants' misrepresentations and omissions regarding their products and prescription opioids are not misleading when viewed within this context.  Mfr. Mem. at 18-19.  This contention is refuted in the *Summit* Omnibus Mem., and the explanation provided in context of Ohio law applies with similar weight here.  *Summit* Omnibus Mem. at 46-50; *see also* §III.F.7., *supra*.

### K.  Plaintiff Has Properly Alleged Its Civil Conspiracy Claim

In Michigan, a conspiracy is "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means."  *Temborius v. Slatkin*, 403 N.W.2d 821, 827-28 (Mich. Ct. App. 1986).  While a conspiracy standing alone without the commission of unlawful acts is not actionable, *Roche v. Blair*, 9 N.W.2d 861, 864 (Mich. 1943), Plaintiff has pled the underlying unlawful acts sounding in fraud with the requisite particularity.  *See* §III.I.-J., *supra*.[56]  Although an agreement must be shown, "[d]irect proof of agreement is not required . . . nor is it necessary that a formal agreement be proven.  It is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact.  Furthermore, conspiracy may be established by circumstantial evidence and may be based on inference."  *Temborius*, 403 N.W.2d at 828; *see also Vincent v. Raglin*, 318 N.W.2d 629, 633 (Mich. Ct.

---

[56]  Accordingly, the cases cited by the Defendants are inapposite, because the plaintiffs in those cases either did not sufficiently allege the underlying claims, or, in the case of *Roche*, the underlying cause of action was barred by the statute of limitations.  Mfr. Mem. at 19 (citing *Roche*, 9 N.W.2d at 864; *Saloka v. Shelby Nursing Ctr. Joint Venture*, No. 255954, 2005 WL 3304596, at *8 (Mich. Ct. App. Dec. 6, 2005); *Kerrigan*, 112 F. Supp. 3d at 616)); Dist. Mem. at 26 (citing *Brintley v. St. Mary Mercy Hosp.*, 904 F. Supp. 2d 699, 733 (E.D. Mich. 2012)).

App. 1982); *Cole v. Jackson Nat'l Life Ins. Co.*, No. 1:11-CV-221, 2012 WL 360285, at *7 (W.D. Mich. Feb. 2, 2012).

Plaintiff has met its burden here.  The SAC provides ample evidence of an agreement among all Defendants to commit fraud and misrepresentation in conjunction with their unlawful distribution and diversion of opioids into and around Monroe.  ¶898.  The SAC contains numerous paragraphs setting forth evidence of the Defendants' concerted action to illegally flood the market with prescription opioids, which furthered the conspiracy's goal to increase demand and, in turn, profits to all Defendants.  *See, e.g.*, ¶¶560-579, 678-684, 763-791, 820-851, 897-913.

Plaintiff also sufficiently alleges that the Marketing Defendants led a nationwide conspiracy to bribe medical practitioners to unnecessarily prescribe opioids.  ¶901; *see also* ¶¶665-677, 728-762. The SAC contains detailed allegations showing that the Manufacturer Defendants conspired to establish, develop, and fund a network to promote the use of opioids for the management of pain through misrepresentations and omissions regarding the appropriate uses, risks, and safety of opioids (¶¶136-310) with the intent of misleading physicians, patients, health care providers, and health care payors to increase sales, revenue, and profit from their opioid products.  ¶¶448-457.  To accomplish this goal, the Manufacturer Defendants collectively used unbranded marketing materials, such as KOLs, scientific literature, CMEs, patient education materials, and Front Groups.  ¶¶311-425.

None of the cases cited by Defendants contains allegations as detailed as those here.  *Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.*, No. 2:12-cv-14405, 2013 WL 3773373, at *5 (E.D. Mich. July 17, 2013), dismissed plaintiff's claim as nothing but "bare conclusions" absent any allegations demonstrating an agreement.[57]  *Roller v. Litton Loan Servicing*, No. 10-cv-13847, 2011 WL

---

[57]    The Manufacturer Defendants incorrectly attribute the quoted language in *Knight Indus.* to *Admiral Ins. Co. v. Columbia Cas. Ins. Co.,* 486 N.W.2d 351, 358 (Mich. Ct. App. 1992).  Mfr. Mem. at 19.  In fact, the court in *Knight Indus.* quoted *Admiral Ins.* for the proposition that "'[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means.'" *Knight Indus.*, 2013 WL 3773373, at *5.  The citation referenced by Defendants was to *Fremont,* 811 F. Supp. 2d at 1341, where the court found the plaintiff's civil conspiracy claim was inadequately pled because the plaintiff did not allege any actions by the defendant tending to show an agreement.  As explained above, such is not the case here.

2490597, at *7 (E.D. Mich. June 21, 2011), is distinguishable because the court there found that the plaintiffs had not pled their fraud claims with the particularity required by Rule 9(b), which is not the case here.  *E.g.*, *Summit* Omnibus Mem. at §I.B.1., §§III.J.1.-2.; *Wiggins v. Argent Mortg. Co., LLC*, 945 F. Supp. 2d 817, 824-25 (E.D. Mich 2013), *aff'd* No. 13-1797, 2014 U.S. App. LEXIS 24958 (6th Cir. Mar. 31, 2014), is similarly distinguishable because the plaintiff there failed to establish the underlying tort of fraud.  Finally, *Hanover Exch. v. Metro Equity Grp. LLC*, No. 2:08-cv-14897, 2009 WL 2143866, at *5 (E.D. Mich. July 14, 2009), is inapt because the court found that the complaint was devoid of any allegation of fraudulent intent relevant to the conspiracy claim.  Because Plaintiff has adequately pled both the conspiracy and the underlying claims forming the basis for the conspiracy, this Court should deny Defendants' motions.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motions to dismiss.[58]

DATED:  July 9, 2018                  Respectfully submitted,

                                      ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                      AELISH M. BAIG
                                      MATTHEW S. MELAMED


                                      _s/ Aelish M. Baig_
                                      AELISH M. BAIG

                                      Post-Montgomery Center
                                      One Montgomery Street, Suite 1800
                                      San Francisco, CA  94104
                                      Telephone:  415/288-4545
                                      415/288-4534 (fax)
                                      aelishb@rgrdlaw.com
                                      mmelamed@rgrdlaw.com

---

[58]    Should the Court determine that the SAC is in any way deficient, Plaintiff respectfully requests leave to amend.  Pursuant to Fed. R. Civ. P. 15(a), leave to amend a complaint shall be freely given when justice so requires.  *See Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

ROBBINS GELLER RUDMAN
 & DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
DOROTHY P. ANTULLIS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
dantullis@rgrdlaw.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
THOMAS E. EGLER
CARISSA DOLAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com
cdolan@rgrdlaw.com

THE MILLER LAW FIRM, P.C.
E. POWELL MILLER (P39487)
SHARON S. ALMONRODE (P33938)
DEVON P. ALLARD (P71712)
DENNIS A. LIENHARDT (P81118)
950 West University Drive, Suite 300
Rochester, MI  48307
Telephone:  248/841-2200
248/652-2852 (fax)
epm@millerlawpc.com
ssa@millerlawpc.com
dpa@millerlawpc.com
dal@millerlawpc.com

*Counsel for Plaintiff*

SPANGENBERG SHIBLEY & LIBER LLP
PETER H. WEINBERGER (0022076)
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
Telephone:  216/696-3232
216/696-3924 (fax)
pweinberger@spanglaw.com

*Plaintiffs' Co-Liaison Counsel*

MONROE COUNTY
 CORPORATION COUNSEL

LENNARD, GRAHAM & GOLDSMITH, P.L.C.
PHILIP D. GOLDSMITH (P37650)
W. THOMAS GRAHAM (P26548)
222 Washington Street
Monroe, MI  48161
Telephone:  734/242-9500
734/242-9509 (fax)
pgoldsmith@lggplc.com

*Counsel for Plaintiff County of Monroe*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 9th day of July, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

*s/Aelish M. Baig*
AELISH M. BAIG