# EXHIBIT 1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

| | |
|---|---|
| DENNIS W. ARCHER, et al<br><br>Plaintiffs,<br><br>v.<br><br>ARMS TECHNOLOGY, INC., et al.<br><br>Defendants.<br><br>and | Case No. 99-912658 NZ<br>Hon. Jeanne Stempien |
| EDWARD H. MCNAMARA, et al.<br><br>Plaintiffs,<br><br>v.<br><br>ARMS TECHNOLOGY, INC., et al.<br><br>Defendants. | Case No. 99-912662 NZ<br>Hon. Jeanne Stempien |

| | |
|---|---|
| CHARFOOS CHRISTENSEN, P.C.<br>SAMUEL L. SIMPSON (P20515)<br>DAVID R. PARKER (P39024)<br>Attorneys for <u>Archer</u> Plaintiffs<br>5510 Woodward Avenue<br>Detroit, Michigan 48202<br>(313) 875-8080 | THURSWELL, CHAYET & WEINER<br>CY V. WEINER (P26914)<br>ELIZABETH C. THOMSON (P53579)<br>Attorneys for <u>McNamara</u> Plaintiffs<br>1000 Town Center, Suite 500<br>Southfield, Michigan 48075-1221<br>(248) 948-0000 |
| KITCH, DRUTCHAS, WAGNER,<br>DENARDIS & VALITUTTI<br>JOHN PAUL HESSBURG (P39218)<br>Lead Counsel for Manufacturers<br>One Woodward Avenue, Tenth Floor<br>Detroit, Michigan 48226-3499<br>(313) 966-6696 | SECREST, WARDLE, LYNCH,<br>HAMPTON, TRUEX & MORLEY<br>ROBERT B. HOLT, JR. (P31417)<br>Counsel for Wholesalers/Distributors<br>30903 Northwestern Highway<br>Post Office Box 3040<br>Farmington Hills, Michigan 48333<br>(248) 851-9500 |
| KATHLEEN M. KUBICKI (P45929)<br>Lead Counsel for Dealers/Retailers<br>5895 Larkins<br>Detroit Michigan 48210<br>(313) 896-8508 | |

**OPINION**

A.50

This matter is before the court on Defendants' Motion for Summary Disposition. Plaintiffs filed suit individually as well as on behalf of the citizens of Wayne County and the City of Detroit. Plaintiffs' allege public nuisance and negligence. Defendants manufacture, distribute and sell guns. Defendants move for summary disposition pursuant to MCR 2.116(C)(8).

A motion for summary disposition under MCR 2.116(C)(8) questions whether a claim is so clearly unenforceable as a matter of law that no factual development could justify recovery. It tests the legal sufficiency of a claim based on the pleadings alone. Lowman v Karp, 190 Mich App 448 (1991). "Unless the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery, the motion should be denied." Atkinson v Farley, 171 Mich App 784 (1988). Upon review of a (C)(8) motion, the factual allegations in the complaint are to be accepted as true, together with any inferences which can be reasonably drawn therefrom. Mitchell v General Motors Acceptance Corp, 176 Mich App 23 (1989). However, it is important to note that the mere statement of conclusions unsupported by allegations of fact, will not suffice to state a cause of action. Golec v Metal Exchange Corp. 208 Mich App 380, 382 (1995)

For the reasons stated below, Defendants' motion is granted in part and denied in part.

### I. Negligence Claim

To establish a *prima facie* case of negligence the plaintiff must prove: (1) that the defendant owed a duty to plaintiff; (2) that the defendant breached that duty; (3) that

A.51

the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. Krass v Tri-County Security, Inc, 233 Mich App 661 (1999). Plaintiffs' negligence claim fails to state facts sufficient to establish duty, therefore, this claim must fail.

## THE ISSUE OF DUTY

Duty is a necessary element in establishing a negligence cause of action. The issue of duty is one of law for the courts to decide. Krass, supra; Tame v AL Damman Co, 177 Mich App 453, 455 (1989). In determining whether a duty exists, the courts typically look to different variables, including foreseeability of the harm, existence of a relationship between the parties involved, degree of certainty of injury, closeness of connection between the conduct and the injury, moral blame attached to the conduct, policy of preventing future harm, the burdens and consequences of imposing a duty and the resulting liability of the breach. Krass, supra at 668. Only after finding that a duty exists may the factfinder determine, whether in light of the particular facts of the case, there was a breach of duty. Murdock v Higgins, 454 Mich 46, 53 (1997).

Generally, duty is any obligation that the defendant has to plaintiff to avoid negligent conduct. Simko v Blake, 448 Mich 648, 655 (1995). In Boss v Glaser, 220 Mich App 183, 186 (1996), the court summarized the law on duty as follows:

> Duty is a legally recognized obligation to conform to a particular standard of conduct toward another, Chivas v Koehler, 182 Mich App 467, 475; 453 NW2d 264 (1990). ***Duty comprehends whether the defendant is under any obligation to the plaintiff to avoid negligent conduct, it does not include the nature of the obligation.*** Moning v Alfono, 400 Mich. 425, 437 254 NW2d 759 (1977). If the

A.52

> court determines as a matter of law that a defendant owed no duty to a plaintiff, summary disposition is properly granted under MCR 2.116(C)(8). Dykema v Gus Macker Enterprises, Inc. 196 Mich App 6, 9, 492 NW2d 472 (1992). (Emphasis added)

It is important to note that the question of duty turns on the relationship existing between the actor and the injured. Krass, supra at 668. Plaintiffs' complaint alleges that Defendants manufacture and distribute guns in a manner which ensures that guns will flow into the "illegal secondary market." Plaintiffs maintain that they are injured by the criminal misuse of the guns from this illegal market.

It is well accepted that there is no duty to protect another person from the criminal acts of a third party in absence of special circumstances. Krass, supra; Williams v Cunningham Drug Stores, Inc. 429 Mich 495, 498-499 (1988). Where there is a duty to protect an individual from a harm by a third person, that duty arise arises from a "special relationship" either between the defendant and the victim, or the defendant and the third party who caused the injury. Such a special relationship must be sufficiently strong to require a defendant to take action to benefit the injured party. Murdock, supra at 54.

Defendants' argue that there are no allegations or facts to support the conclusion that there is an existing special relationship between the Defendants and the Plaintiffs or the third party criminal actors. This court agrees. Plaintiffs point to the general duty that Defendants have to use care in the operation of their business, i.e. the distribution of guns. No one would argue against the notion that a manufacturer, wholesaler or retailer has a duty to avoid negligent conduct. But, the duty is owed to their consumers with whom there is unquestionably a relationship. Moning v Alfono, 400 Mich 425, 439 (1977). Plaintiffs,

Page 4

A.53

however, do not bring this suit as a consumer.

The court also notes that no special circumstances exist between these Plaintiffs and these Defendants such that a duty should be imposed. The present case does not illustrate a special relationship, where one entrusts himself to the protection of another and relies upon that person to provide a place of safety, e.g., landlord-tenant innkeeper-guest, common carrier-passenger. Williams, supra; Prosser & Keeton. § 56, p. 383. Nor is this a case of special circumstance where the defendant had knowledge of the assailant's dangerous propensities or control of the premises. Samson v Saginaw Professional Bldg. Inc. 393 Mich 393, 419-420 (1975). Small, "The Landowner/Occupier's Duty to Prevent Assaults by Third Parties", 68 Mich B J 32 (1989). It is also not a case where the custodial circumstances involved imposed a duty to protect the individual against his own propensities. Hickey v Zezulka, 489 Mich 408 (1992); York v Detroit (After Remand), 438 Mich 744 (1991). Finally, unlike many of the other gun litigation cases, this is not a products liability claim where an innocent bystander was injured by a defective product. Piercefield v Remington Arms Co Inc, 375 Mich 85 (1965). MacPherson v Buik Motor Co, 217 NY 382; 111 NE 1050 (1916).[1]

In response to Defendants' argument, Plaintiffs assert that they are not required to establish a special relationship because the Defendants took actions which created or

---

[1]For example, in a recent opinion Judge Donald C. Nugent ruled in favor the City of Cleveland denying defendant gun manufacturer's motion for summary disposition. However, that case is primarily a products liability claim under the Ohio statute, thus is not comparable to the case before this court. See, Mayor Michael R. White, et al, v Smith & Wesson, et al. unpublished opinion of the United States District Court, Northern District of Ohio, Eastern Division, decided March 14, 2000 (Docket No. 1:99CV1134).

A.54

increased the risk of harm. It is Plaintiffs' position that they need not demonstrate a special relationship to establish duty where the damages are caused by a defendant's misfeasance. Plaintiffs cite Murdock v Higgins, supra, 54 (1997) and Williams v Cunningham Drugs, supra, 498 -99 (1988) as support for their contention.[2] Contrary to Plaintiffs' assertion, these case do not support their position. Instead, both cases clearly hold that a special relationship is required to establish a duty to protect an individual from harm by a third person. Murdock, supra at 54; Cunningham, supra at 499.[3] The Cunningham court only discusses the issue of misfeasance and nonfeasance with respect to determining the standard of care or conduct. See Cunningham, supra at 498.[3] The standard of conduct that must be employed by a defendant is only an issue once a duty is established. As noted earlier, "duty comprehends whether the defendant is under any obligation to the plaintiff to avoid negligent conduct; it does not include the nature of the obligation." Krass, supra 668. As such, the court finds this argument to be without merit.

---

[2] The Plaintiffs also rely Ross, supra to support their claim. In Ross, the court found a sufficient relationship between the defendant actor who supplied a gun to his son when defendant knew or should have known that his son would use the firearm in a long standing feud with a neighbor. Ross found that a sufficient relationship between the parties existed. If Ross has any application to gun litigation, it would be in a case factually similar to Ceriale v Smith & Wesson Corp, unpublished opinion of the Circuit Court of Cook County, Illinois, decided November 30, 1999 (Docket No 99L5628) wherein the plaintiffs were victims of gunshot wounds from illegally sold weapons. The plaintiffs in Ceriale prevailed on a motion for summary disposition.

[3] The Murdock court found no duty existed because there was no special relationship between the plaintiff and defendant such that the defendant owed the plaintiff a duty to protect him from harm by a third party. In contrast, the Cunningham court found that a duty existed to protect based on the invitor-invitee relationship between the parties, but the standard of conduct was not as extensive as the plaintiffs claimed.

A.55

A review of the pleadings leads to the conclusion that the actual duty advanced by Plaintiffs is essentially one of crime prevention. According to Plainfiffs' complaint, the Defendants manufacture, sell a distribute guns in a manner that ensures that they will ultimately be purchased by criminals youth or otherwise irresponsible persons for use in the commission of crime. (See Plaintiffs' complaint, p. 3). Plaintiffs maintain that Defendants negligently or intentionally create and maintain the illegitimate secondary gun market by way of open illegal sales[4] or through a process they have termed "willful blindness." (See Plaintiffs' complaint, ¶¶ 5, 6). Plaintiffs assert that after these guns are diverted into the illegal secondary market to unauthorized buyers, they are then used in the commission of crime which has caused Plaintiffs and their citizens harm in the form of loss of life, serious injury, increased law enforcement costs, health care costs, and other damages. (pp 2, 7, 8). It becomes clear, after reading Plainfiffs' complaint, that the crime that results from the use of guns in the illegal secondary market causes the harms delineated. Crime prevention, however, is simply not a cognizable legal duty owed by these Defendants to these Plaintiffs.[5] Based on the foregoing, the Plaintiffs have failed to establish an existing duty.

A determination of whether a duty exists may include an analysis of other factors

---

[4] Defendants argue that Plaintiffs fail to plead an illegal sale. Instead, Plaintiffs' complaint alleges numerous "straw man sales." These sales, however, are sufficient evidence, though circumstantial, that illegal sales are made. Circumstantial evidence may be used to support a fact. S 112nd 3.10. If this is accepted as true for this motion, it is evidence of a pattern. MRE 404(b).

[5] Plaintiffs concede that the Defendants owe no legal duty to prevent crime. See Plaintiffs Response to Supplemental Briefs, p. 14.

A.56

in addition to the relationship between the parties. The concept of a duty also includes consideration of the allocation of losses arising out of human behavior. The court may consider the burdens and consequences of imposing a duty and the resulting liability of finding a breach of that duty. Krass, supra at 668. In this case, a finding of an existing duty would mean that each single breach is actionable by these Plaintiffs. Thus, a negligent act or omission in the sale of a single firearm would subject Defendants to liability for Plaintiffs' damage claims absent a special relationship.

## II. Public Nuisance

Plaintiffs' complaint also alleges a count of public nuisance. At the outset it is important to note that Defendants assert that Plaintiffs' claim of public nuisance is dependent upon a finding of negligence. According to Defendants, summary disposition of Plaintiffs' negligence claim would necessitate summary disposal of this claim. Although negligence can be the cause, a constituent or a factor of nuisance, it is merely one type of conduct which can give rise to a nuisance.

> Thus, liability for nuisance does not depend upon the existence of negligence, except where such nuisance is one based upon negligence in which circumstances the nuisance is sometimes referred to as a "qualified nuisance," *and, with this exception in mind, negligence is not an essential or material element of a cause of action for nuisance, and need not be pleaded or proven, especially where the thing complained of is* a nuisance per se, or *a public nuisance* ... 58 Am Jur 2d, Nuisances, §82, p 734. (Emphasis added).
>
> Negligence is not necessary to nuisance, though many wrongs thus denominated are made so through the defendants omitting to perform a duty ... Awad v McColgan, 357 Mich 386 (1959), overruled on other grounds by Mobil Oil Corp v Thorn 401 Mich 306 (1977).

A.57

Instead, it is said that where the origin of the complaint is negligence then negligence needs to be proven 58 Am Jur 2d, Nuisance, § 82, p 735. However, in the present case, the origin of the public nuisance complaint also lies in Plaintiffs' allegation of willful misconduct on behalf of the Defendants and not only negligence. As such, the court finds that Plaintiffs' public nuisance claim does not depend on a finding of negligence.

Restatement of Torts.

### Public Nuisance

(1) A public nuisance is an unreasonable interference with a right common to the general public.

(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

    (a) whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or

    (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

    (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right. Restatement of Torts, 2d at § 821B.

A public nuisance is an unreasonable interference with a common right enjoyed by the general public. Cloverleaf Car Company v Phillips Petroleum, 213 Mich App 186,190 (1995). Therefore, a complaint alleging public nuisance must allege and present supporting facts of both an unreasonable interference and a common right. The term

A.58

unreasonable interference includes conduct that: (1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights. <u>Cloverleaf</u>, <u>supra</u> *citing* <u>Wagner</u> v <u>Regency Inn Corp</u>, 186 Mich App 158, 163 (1990).

Defendants assert a number of reasons why Plaintiffs' complaint fails. First, Defendants note that the typical nuisance case generally involves the conditions of property and not products. <u>Detroit Board of Education</u> v <u>Celotex Corporation</u>, 196 Mich App 694, 711 (1993), *app den*, 4, Mich 908 (1993). Plaintiffs attempt to distinguish their case on the basis that their claim is one of public nuisance and not private nuisance. This distinction is determinative.

While the court could not find cases alleging claims of public nuisance for products, it also could not find any cases which disavow such a claim. At its most basic level, claims such as the one alleged by Plaintiff may be properly termed to be a "public nuisance." Prosser and Keaton note that:

> A public or common nuisance, on the other hand, is a species of catch-all criminal offenses, consisting of an interference with the rights of the community at large. Prosser, Torts (5th ed), § 86, p 618.

The authors further note that:

> Public nuisances may be considered as offenses against the public by either doing a thing which tends to the annoyance of all the King's subjects, or by neglecting to do a thing which the common good requires, <u>Id</u>. *citing* Russel, *Crimes & Misdemeanors*, (8th ed, 1923) p1691.

A.59

This would be consistent with McDonell v Brozo, 285 Mich 38. 43 (1938) which holds that nuisance involves not only a defect, but threatening or impending danger to the public, or if a private nuisance, to the property rights or health of persons. As the McDonell court notes "running through all of these cases is the element of wrongful, continuous, impending danger to the lives, limbs, or health of the public, or to the legitimate property or personal rights of private persons peculiarly subject to danger." (emphasis added) McDonell, supra *citations omitted*. A fair reading of these sources suggests that claims of public nuisance(s) do not exclusively involve real property as the right claimed to be disturbed or as the condition causing the disturbance.[6] Interestingly, Prosser and Keaton later note:

> Then, there are those activities that are "public nuisance' *because the defendant is engaged in a continuing course of conduct that is calculated to result in physical harm or economic loss to so many persons* as to become a matter of serious concern. (Emphasis added). Prosser, Torts (5th ed), § 90, pp 651 -652.

This is exactly the essence of Plaintiffs' complaint.

Specifically, Plaintiffs maintain that the "Defendants employ a careful strategy which couples manufacturing decisions, marketing schemes, and distributions patterns with a carefully constructed veil of deniability regarding particular point of sale transactions." This mechanism is termed by Plaintiffs as "willful blindness" and allows for and helps to divert guns into the "illegal secondary market" causing substantial and ongoing harm to

---

[6] Examples referenced in the Comments to the Restatement include shooting of fireworks, indecent exhibitions, loud and disturbing noises. These are acts of misfeasance that are not necessarily related to the use of land.

A.60

Plaintiffs' citizens in the form of fear of crime and danger to persons and property, loss of life, and significant costs to the County and City itself to enforce the laws, arm its police force and treat victims of firearm crime. (See Plaintiffs' complaint ¶¶ 2-8, 107, 123, 124). Plaintiffs' complaint further states that it has a "clearly ascertainable right to abate conduct that perpetuates this nuisance" and that "stemming the flow of firearms into the illegitimate firearm market will help to alleviate this problem, will save lives, prevent injuries" and make the City and County a safer place to live. (See Plaintiffs' complaint, ¶¶ 126, 127). Defendants rebut, arguing that they comply with a complex set of federal and state rules and regulations regarding the manufacturing, distribution and sale of weapons. But, as Plaintiffs note, the conduct creating the public nuisance may be entirely lawful. Rental Property Owners Association v City of Grand Rapids, 455 Mich 246, 246-65 (1997).

Plaintiffs' nuisance case is not nuisance *per se*, but nuisance *per accidens* or nuisance in fact.[7] In other words, the guns in this case are not in and of themselves a nuisance, nor are the Defendants' businesses, but they are alleged to be a nuisance because of the manner in which they are operated, and by which firearms are manufactured and distributed. (See Plaintiffs' complaint, ¶ 2).

In Michigan, our courts have held that the appropriate remedy for a nuisance *per accidens* is regulation. Cullum v Topps-Stillman's Inc, 1 Mich App 92, 97 (1965) *citing* Adams v Kalamazoo Ice Fuel Company, 245 Mich 261, 264 (1938). In this case, there are existing federal and state regulations already addressing the manufacture, sale and

---

[7]This is further supported in 58 Am Jur 2d Nuisance § 165 (A business that is itself legal cannot be negligence per se, and, generally, a legitimate industry is not a nuisance).

distribution of firearms and ammunition More importantly, however, the state legislature has specifically prohibited regulation of firearms and ammunition. MCL 123.1102 provides:

> A local unit of government shall not impose special taxation on, enact or enforce any ordinance or regulation pertaining to, or *regulate in any other manner* the ownership, registration, *purchase, sale, transfer, transportation, or possession* of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms, except as otherwise provided by federal law or a law of this state. (Emphasis added).

It is important to note, however, that regulation is not the only available remedy. The Cullum court notes that abatement is appropriate in cases where regulation cannot be made. Cullum, supra at 97. The Michigan court recognized that abatement is not synonymous with regulation.

Although Plaintiffs have maintained that they do not seek abatement (even in the form of injunctive relief), Plaintiffs clearly seek reimbursement for the costs associated with the abatement of the nuisance allegedly caused by Defendants. This is a type of abatement. City of Evansville v Kentucky Liquid Recycling, Inc, 604 F2d 1008 (CA 7, 1979); United States v Illinois Terminal Railroad Co, 501 F Supp 18 (ED Mo 1980). To the extent that injunctive relief and/or regulation is not requested or permissible, the remaining question is whether Plaintiffs may maintain their cause of action seeking only monetary damages.

## MUNICIPAL COSTS RECOVERY RULE

Defendants contend that Plaintiffs may not recoup municipal costs as damages. As such, Defendants argue that Plaintiffs claim fails for want of recoverable damages.

A.62

In <u>District of Columbia</u> v <u>Air Florida Inc</u>, 750 F2d 1077, 1080 (DC Cir 1984), the court found that:

> The general common-law rule in force in other jurisdictions provides that, absent authorizing legislation, "the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service." (Citations omitted)

The court further notes that "we are especially reluctant to reallocate risks where a governmental entity is the injured party ... it is within the power of the government to protect itself from extraordinary emergency services by passing statutes or regulations that permit recovery from negligent parties." <u>Air Florida</u>, supra. Based on this statement, the Defendants maintain that the damages requested are not allowable.

However, there is authority for the proposition that public entities may be allowed damages for the costs of abating public nuisances. In <u>City of Flagstaff</u> v <u>Atchison, Topeka & Santa Fe</u>, 719 F2d 322, 324 (CA 9, 1983) the court notes that governmental entities have been allowed to recover the cost of its services where it is authorized by statute or regulation and in cases where the government incurs expenses to protect its own property. Government entities have also been allowed to recoup costs when required to effect the intent of federal legislation and where the acts of a private party created a public nuisance which the government seeks to abate. There is no Michigan case which prohibits monetary damages in a public nuisance case. Therefore, the damages sought by Plaintiff are not barred by the municipal cost recovery rule in claims involving allegations of public nuisance.

A.63

It is important to note, however, that the court states that:

> These cases fall into distinct, well-defined categories unrelated to the normal provision of police, fire, and emergency services, and none are applicable here. City of Flagstaff, supra.

Plaintiffs' complaint asserts damages for loss of life, serious injuries, increased law enforcement costs and health care costs. In a nutshell, Plaintiffs' complaint. ¶ 127, surmises that they have sustained costs to "enforce the law, arm its police force and treat victims of firearm crimes." While it is arguable that some of the damages sought qualify as costs associated with the normal provision of police, fire and emergency services, it cannot be said as a matter of law that no facts could be developed to demonstrate that these costs are beyond normal police, fire or emergency services. It is plausible that Plaintiffs could prove that the costs of the public nuisance constitute a "distinct, well-defined" category unrelated to the normal provision of police, fire and emergency services. City of Flagstaff, supra. As such, summary disposition pursuant to MCR 2.116(C)(8) is inappropriate.

### REMOTENESS OF DAMAGES

Defendants also maintain that Plaintiffs' damages are too remote. According to Defendant, the doctrine of remoteness completely bars Plaintiffs' claim as a matter of law. Defendants' remoteness argument is twofold. First, Defendants argue that Plaintiffs' alleged damages for municipal costs are derivative of actual or potential injuries to Plaintiffs' citizens. Defendants argue that because the damages claimed by Plaintiffs are purely contingent on actual or potential injury or harm to third parties and not plaintiffs, the

A.64

damages sought are too remote.

It is well accepted that a plaintiff may not recover derivative damages for injuries to third parties. Holmes v Securities Investor Protection Corp. 503 US 258, 112 S Ct 1311, 117 L Ed 2d 532 (1992). Plaintiffs do not debate this well established rule of law, but assert that some of the alleged damages are not derivative. The concept of derivative liability is not always clear, but generally refers to a claim in which the plaintiff seeks damages for a wrong done to the plaintiff that is proximately caused by a wrong done to another. Burchett v RX Optical, 232 Mich App 174,184; 691 NW2d 652 (1999). A common example of derivative liability is that of loss of consortium, which cannot exist without a prior injury to a spouse. Id. Plaintiffs state that there are many instances where a gun is illegally possessed or used and no one but Wayne County or the City of Detroit is injured. As an illustration, Plaintiffs cite examples such as the unlawful gun possession by a juvenile that ends with an arrest before tragedy occurs. Plaintiffs contend that they still incur costs and lose revenues from every shooting, as well as other gun crimes, regardless of whether a citizen is injured.

It is important to note that this motion is based on MCR 2.116(C)(8). The question before the court is whether Plaintiffs' have alleged facts, which if accepted as true state, a cause of action. Mitchell, supra. Defendants contend that Plaintiffs fail to state a cause of action for lack of recoverable damages. If, however, Plaintiffs' factual allegation that they experience harm outside of those incurred by third party citizens is accepted as true, it cannot be said that they fail to state a claim for damages. The test is based on the pleadings alone and Plaintiffs are not required to prove the specific damages incurred at

A.65

this stage of the proceedings. Instead, summary disposition is properly granted only if the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. Simko v Blake, 448 Mich 648, 654 (1995).

Second, Defendants' maintain that Plaintiffs' alleged damages are too remote from the named Defendants' conduct to allow recovery. Defendants assert that the Plaintiffs' damages are caused by the misuse use of guns by non-defendant wrongdoers. This raises an issue of proximate cause. In general, proximate cause is a question of fact for the jury unless reasonable minds would not differ as to whether defendant's breaches of duty were not the cause in fact of plaintiff's injuries or were too insignificantly connected to defendant's breach. Mills v White 167 Mich App 202, 209 (1988). The rule also applies to public nuisance. See, Kinsey v Lake Odessa Machine Products, 368 Mich 666, 670 (1962).

Foreseeability is often times used as a precursor to imposing a duty. However, the concept of foreseeability is also used in describing proximate cause. Whether a described consequence was proximately caused by an act or omission involves an evaluation of causation in fact and the limitations placed on the causal connection, that is, was the consequence reasonably anticipated, or in other words, foreseeable.

The Supreme Court in Buczkowski v McKay, 441 Mich 96 (1992)[8] recognized that

---

[8] Defendants relied on Buczkowski in discussing Plaintiffs' negligence claim. The court assumes that Defendants would apply the case to the public nuisance theory, also. The Supreme Court in Buczkowski declined to impose a duty. Its ruling was predicated on an analysis of the relationship of the parties. The Court clearly limited its ruling in two manners. The Supreme Court noted that it was dealing with ammunition as opposed to a firearm. Further, the Court announced it favored the line of cases that
(continued...)

A.66

illegal gun sales may foreseeably lead to criminal acts. The Supreme Court distinguished the facts in Buczkowski from cases that recognize a cause of action against suppliers where a gun was misused when the seller violated a state or federal firearm statute.

> In those cases, the courts reason that where a legislature identifies certain classes of people as incompetent to possess weapons, *it is foreseeable that such persons will commit crimes if allowed weapons in violation of the statute.* Buczkowski, at pg. 107 (emphasis added).

Reasonable minds could find that the costs incurred by the taxpayers for the apprehension and prosecution of criminals may be reasonably anticipated and, thus, proximately caused by the public nuisance.

It is important to note there may be more than one proximate cause of a plaintiff's damages. Ross, supra, holds that a criminal act following the wrongful supply of a firearm is not, as a matter of law, a superceding intervening event which breaks the chain of causation. Intervening misuse of a firearm may be an issue for the jury. Williams v Johns, 157 Mich App 115, 120 (1987).

It cannot be said that reasonable men would agree that Defendants' willful distribution of firearms into the "illegal secondary market" as alleged by Plaintiffs' complaint was not a proximate cause of Plaintifffs' injury. As such, the damages claimed are matters properly decided by a jury.

---

[a](... continued)
refused to impose liability absent a statutory violation. The court noted that the ammunition sale in Buczkowski was not prohibited by the legislature. The opposite is true in Plaintiffs' public nuisance claim.

A.67

### III. Individual Plaintiffs

MCR 2.201 (C)(5) provides that an officer who sues in his or her official capacity may be described as a party by official title and not by name. It further provides that the court may require the name to be added. Plaintiffs' complaint contains the names of the public officials. The claim of public nuisance is solely for the government subdivisions and no cause of action is stated for damages for individuals outside of their capacity to sue on behalf of the public entities.

### IV. Conclusion

The court finds that Plaintiffs have failed to state a cause of action on a theory of negligence.

Plaintiffs have stated a cause of action for public nuisance. The factual allegations in the complaint establish that the Defendants are engaged in a continuing and systematic course of conduct that is proscribed by statute and calculated to result in harm and economic loss to the citizens of the City of Detroit and Wayne County. The damages sought are non-derivative economic losses and are recoverable in a public nuisance cause of action.

Defendants' motion for summary disposition is denied in part and granted in part.

MAY 16 2000                              JEANNE STEMPIEN

DATE                                            Circuit Court Judge

A.68