# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*Broward County, Florida v. Purdue Pharma L.P., et al.*, Case No. 18-OP-45332 (N.D. Ohio) | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## PLAINTIFF BROWARD COUNTY, FLORIDA'S OMNIBUS MEMORANDUM IN OPPOSITION TO

## (1) MANUFACTURER DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. # 593);  DEFENDANTS AMERISOURCEBERGEN DRUG CORP., CARDINAL HEALTH, INC., AND MCKESSON CORP.'S MOTION TO DISMISS (FED. R. CIV. P. 12(B)(6)) (DKT. # 591); AND (3) MOTION TO DISMISS BY DEFENDANTS CVS HEALTH CORPORATION, WALGREENS BOOTS ALLIANCE, INC., AND WALMART INC. (DKT. # 582)

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY.................................................................1

LEGAL STANDARD........................................................................................3

ARGUMENT.....................................................................................................3

I.    All of Defendants' Arguments to Dismiss Broward's Claims Must Be
Rejected ........................................................................................................3

    A.    Broward's Claims Are Timely Asserted ...............................................3

        1.    The Delayed Discovery Doctrine Postpones Accrual of
Broward's Claims.......................................................................4

        2.    Defendants' Fraudulent Concealment Tolls the Statute of
Limitation .................................................................................5

        3.    The Continuing Tort Doctrine Tolls the Statute of
Limitations................................................................................7

    B.    Broward's Claims Are Not Preempted ................................................9

    C.    Broward Has Standing to Advance Claims for Harms Defendants
Caused.................................................................................................9

        1.    Broward Has Article III Standing................................................9

        2.    Statewide Concern Does Not Relate to Standing............................ 10

    D.    Broward Has Clearly Alleged Claims Against All Defendants as
Participants in the Opioid Supply Chain. .......................................... 12

    E.    The Municipal Cost Recovery Doctrine Does Not Bar Broward's
Claims ............................................................................................... 14

II.    Broward Has Properly Pleaded Every Claim It Asserted ............................. 16

    A.    Broward Asserted an Actionable Public Nuisance Claim ................... 16

    B.    Broward Properly Pleaded Negligence .............................................. 21

        1.    Broward Properly Pleaded the Existence of a Duty ........................ 21

            a.    Defendants Owed Broward A Common Law Duty of
Care........................................................................... 21

            b.    The Foreseeable Conduct of Others Does Not
Negate Defendants' Duty............................................ 24

        2.    Broward Does Not Seek to Enforce Statutory Duties .................... 27

1583751.17

# TABLE OF CONTENTS
## (continued)

Page

3.   The SAC Sufficiently Pleaded that Broward's Injuries Were Proximately Caused by Defendants' Conduct ................................... 30

   a.   Defendants Misapply the Sole Proximate Cause Doctrine .................................................................................. 31

   b.   Learned Intermediary Doctrine Does Not Disrupt Causation.................................................................................. 34

   c.   An Unbroken Causal Chain Connects Defendants' Acts to Broward's Injuries .............................................. 35

C.   All Elements of Unjust Enrichment Are Satisfied ................................ 37

D.   Broward's FDUTPA Claim is Properly Pleaded ............................... 42

   1.   Broward Has FDUTPA Standing ..................................................... 42

   2.   Broward's FDUTPA Claim Meets Rule 8(a) and Rule 9(b) Requirements ................................................................. 45

   3.   Broward Sufficiently Pleaded Causation ............................... 48

   4.   Broward Alleged Cognizable Remedies Under FDUTPA............... 49

   5.   FDUTPA's Safe-Harbor Provision Does Not Apply...................... 50

E.   Defendants' Challenges to Federal RICO Claims Fail ................................. 51

   1.   Broward Alleged RICO Causation ............................................. 51

   2.   Manufacturer Defendants Are Liable for the Misrepresentations They Disseminated Through Front Groups, KOLs, and Other Means ....................................... 54

   3.   Broward's Specific SAC Allegations Support Its RICO Claims....... 55

   4.   Broward Properly Pleaded Florida RICO Claims ........................... 56

F.   Broward Has Properly Stated a Claim for Fraud ...................................... 57

   1.   Broward Has Pleaded its Fraud Claims with Particularity................ 57

   2.   Broward Was Defrauded by Defendants' Conduct ......................... 59

   3.   Broward Has Shown Both Reasonable Detrimental Reliance and Causation.................................................................. 60

G.   Broward's Claims for Civil Conspiracy Are Properly Pleaded...................... 60

H.   Broward Sufficiently Alleged that Defendants' Actions Merit Punitive Damages................................................................................ 62

**TABLE OF CONTENTS**
**(continued)**

Page

CONCLUSION ................................................................................................................... 64

1583751.17

# TABLE OF AUTHORITIES

**Page**

## Cases

*ADT LLC v. Alarm Prot. Tech. Fla., LLC,*
  No. 12-80898-CIV-Ryskamp/Hopkins, 2013 WL 11276119 (S.D. Fla. Apr. 18, 2013) .................50

*Allapattah Servs., Inc. v. Exxon Corp.,*
  188 F.R.D. 667 (S.D. Fla. 1999), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
  545 U.S. 546 (2005)........................................................................................................................7

*Allocco v. City of Coral Gables,*
  221 F. Supp. 2d 1317 (S.D. Fla. 2002) .............................................................................. 61, 62

*Bailey v. St. Louis,*
  196 So. 3d 375 (Fla. Dist. Ct. App. 2016)......................................................................43, 44, 50

*Baker v. Hickman,*
  969 So. 2d 441 (Fla. Dist. Ct. App. 2007)...........................................................................................8

*Baptista v. JP Morgan Chase Bank, N.A.,*
  640 F.3d 1194 (11th Cir. 2011)....................................................................................................39

*Beale v. Biomet, Inc.,*
  492 F. Supp. 2d 1360 (S.D. Fla. 2007) .......................................................................................35

*Benitez v. Standard Havens Prods.,*
  43 F.3d 1433 (11th Cir. 1995)......................................................................................................32

*Benitez v. Standard Havens Prods.,*
  43 F.3d 1433 (11th Cir. 1995) ("*Benitez II*")...............................................................................32

*Benitez v. Standard Havens Prods.,*
  7 F.3d 1561 (11th Cir. 1993) .................................................................................................. 32, 33

*Bravo v. United States,*
  577 F.3d 1324 (11th Cir. 2009).....................................................................................................14

*Breif v. Wells Fargo Bank, N.A.,*
  No. 13-80215-CIV, 2014 WL 806854 (S.D. Fla. Feb. 28, 2014) ..........................................8

*Brown v. Endo Pharm., Inc.,*
  38 F. Supp. 3d 1312 (S.D. Ala. 2014) .........................................................................................29

*Bruno v. Destiny Transp., Inc.,*
  921 So. 2d 836 (Fla. App. Ct. 2006) ............................................................................................30

*Buell v. Direct Gen. Ins. Agency, Inc.,*
  267 F. App'x 907 (11th Cir. 2008) ...............................................................................................30

*Burgese v. Starwood Hotels & Resorts Worldwide, Inc.,*
  101 F. Supp. 3d 414 (D.N.J. 2015) .............................................................................................57

TABLE OF AUTHORITIES
(continued)

Page

*Byington v. A.H. Robins Co., Inc.,*
  580 F. Supp. 1513 (S.D. Fla. 1984) .................................................................................6

*Byrnes v. Small,*
  142 F. Supp. 3d 1262 (M.D. Fla. 2015) ..........................................................................54

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.,*
  169 So. 3d 164 (Fla. Dist. Ct. App. 2015) ..............................................................43, 44, 50

*Carnival Corp. v. Rolls-Royce PLC,*
  No. 08-23318-CIV, 2009 WL 3861482 (S.D. Fla. Nov. 17, 2009) ......................................8

*Carter v. Brown & Williamson Tobacco Corp.,*
  778 So.2d 932 (Fla. 2000) ............................................................................................5

*Chase v. Novartis Pharm. Corp.,*
  740 F. Supp. 2d 1295 (M.D. Fla. 2006) ..........................................................................35

*Chepstow Ltd. v. Hunt,*
  381 F.3d 1077 (11th Cir. 2004) ....................................................................................15

*Chiron Recovery Ctr., LLC v. AmeriHealth HMO of NJ., Inc.,*
  Case No.: 9:16-CV-82043-Rosenberg/Hopkins, 2017 WL 4390169 (S.D. Fla. Oct. 3,
  2017) ...........................................................................................................................44

*Christopher v. Cutter Labs., Inc.,*
  53 F.3d 1184 (11th Cir. 1995) ......................................................................................52

*Churruca v. Miami Jai-Alai, Inc.,*
  353 So. 2d 547 (Fla. 1977) ..........................................................................................61

*Citadel Commerce Corp. v. Cook Sys., LLC,*
  No. 8:08-cv-1923-T-33TGW, 2009 WL 1230067 (M.D. Fla. May 5, 2009) ......................41

*City of Boca Raton v. State,*
  595 So. 2d 25 (Fla. 1992) .......................................................................................11, 12

*City of Chicago v. Purdue Pharma L.P.,*
  No. 14 CV 4361, 2015 WL 2208423 (N.D. Ill. May 8, 2015) .............................................3

*City of Everett v. Purdue Pharma L.P.,*
  No. C17-209RSM, 2017 WL 4236062 (W.D. Wash. Sept. 25, 2017) ......................3, 27, 53

*City of Miami Beach v. Fleetwood Hotel, Inc.,*
  261 So. 2d 801 (Fla. 1972) ..........................................................................................10

*City of Miami v. Citigroup Inc.,*
  801 F.3d 1268 (11th Cir. 2015) ................................................................................40, 41

*City of Oakland v. City of Detroit,*
  866 F.2d 839 (6th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990) ...................................56

## TABLE OF AUTHORITIES
### (continued)

Page

*Clark v. Boeing Co.*,
  395 So. 2d 1226 (Fla. Dist. Ct. App. 1981) ................................................................33

*Clay Elec. Co-op., Inc. v. Johnson*,
  873 So. 2d 1182 (Fla. 2003) ....................................................................................25

*Cohen v. Office Depot, Inc.*,
  184 F.3d 1292 (11th Cir. 1999) ...............................................................................62

*Cook v. MillerCoors, LLC*,
  829 F. Supp. 2d 1208 (M.D. Fla. 2011) ...................................................................25

*Cty. of Monroe v. Priceline.com, Inc.*,
  No. 09-10004-Moore/Simonton, 2009 WL 4890664 (S.D. Fla. Dec. 17, 2009) ....... 38, 41

*D'Agastino v. City of Miami*,
  220 So. 3d 410 (Fla. 2017) ......................................................................................12

*Davis v. Powertel, Inc.*,
  776 So. 2d 971 (Fla. 1st DCA 2000) ........................................................................45

*deJesus v. Seaboard Coast Line R. Co.*,
  281 So. 2d 198 (Fla. 1973) ................................................................................. 28, 31

*Demelus v. King Motor Co. of Fort Lauderdale*,
  24 So.3d 759 (Fla. Dist. Ct. App. 2009) .............................................................. 22, 26

*Democratic Republic of the Congo v. Air Capital Grp., LLC*,
  614 F. App'x 460 (11th Cir. 2015) ..................................................................45, 49, 50

*Dent v. Dennis Pharm., Inc.*,
  924 So. 2d 927 (Fla. Dist. Ct. App. 2006) ...............................................................25

*Dugas v. 3M Co.*,
  Case No. 3:14-cv-1096-J-39JBT, 2016 WL 1271040 (M.D. Fla. Mar. 29, 2016) ............35

*Egerer v. Woodland Realty, Inc.*,
  556 F.3d 415 (6th Cir. 2009) .....................................................................................7

*Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*,
  983 So. 2d 1175 (Fla. Dist. Ct. App. 2008) .............................................................21

*Estep v. State*,
  156 Fla. 433 (Fla. 1945) ...............................................................................16, 17, 18

*Felix v. Hoffmann-LaRoche*,
  540 So. 2d 102 (Fla. 1989) ................................................................................. 35, 52

*Flatirons Bank v. Alan W. Steinberg L.P.*,
  233 So. 3d 1207 (Fla. Dist. Ct. App. 2017) ..............................................................41

## TABLE OF AUTHORITIES
### (continued)

Page

*Fleetwood Hotel, Inc.,*
  261 So. 2d ...................................................................................................................... 10, 11

*Florida v. Tenet Healthcare Corp.,*
  420 F. Supp. 2d 1288 (S.D. Fla. 2005) .................................................................. 45, 50, 57

*Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.,*
  No. 9:13-CV-2890, 2015 WL 3452517, (M.D. Fla. May 29, 2015) .................................... 62

*Foman v. Davis,*
  371 U.S. 178 (1962) ............................................................................................................ 64

*Friedman v Am. Guardian Warranty Servs.,*
  837 So. 2d 1165 (Fla. Dist. Ct. App. 2003) ....................................................................... 59

*Furmanite Am., Inc. v. T.D. Williamson, Inc.,*
  506 F. Supp. 2d 1134 (M.D. Fla. 2007) ............................................................................. 43

*Gavron v. Weather Shield Mfg.,*
  819 F. Supp. 2d 1297 (S.D. Fla. 2011) .............................................................................. 48

*Gibson v. Avis Rent-A-Car Sys., Inc.,*
  386 So. 2d 520 (Fla. 1980) ........................................................................................... 31, 32

*Glob. Tech LED, LLC v. HiLumz Int'l Corp.,*
  No: 2:15-cv-553-FtM-29CM, 2017 WL 588669 (M.D. Fla. Feb. 14 2017) ........................ 50

*Godelia v. Doe 1,*
  881 F.3d 1309 (11th Cir. 2018) .......................................................................................... 28

*GolTV, Inc. v. Fox Sports Latin Am., Ltd.,*
  Case No. 16-24431-CIV-ALTONAGA/Turnoff, 2018 WL 1393790, (S.D. Fla. Jan. 26,
  2018) ..................................................................................................................................... 6

*Goodwin v. Sphatt,*
  114 So. 2d 1092 (Fla. Dist. Ct. App. 2013) ......................................................................... 8

*Gov't Emp. Ins. Co. v. KJ Chiropractic Ctr., LLC,*
  No. 12-cv-1138 WL 12155947 (M.D. Fla. Oct. 23, 2013) .................................................. 47

*Gritzke v. M.R.A. Holding, LLC,*
  Case No. 4:01cv-495-RH, 2002 WL 32107540 (N.D. Fla. Mar. 14, 2002) .............. 43, 45, 50

*Guerrero v. Target Corp.,*
  889 F. Supp. 2d 1348 (S.D. Fla. Sept. 4, 2012) ........................................................... 39, 45

*Hageman v. Signal L.P. Gas, Inc.,*
  486 F.2d 479 (6th Cir. 1973) ............................................................................................. 64

*Hap v. Toll Jupiter Ltd. P'ship,*
  No. 07-cv-81027, 2009 WL 187938 (S.D. Fla. Jan. 27, 2009) ........................................... 46

# TABLE OF AUTHORITIES
## (continued)

Page

*Harris v. Nordyne, LLC,*
No. 14-CIV-21884-Bloom/Valle, 2014 WL 12516076 (S.D. Fla. Nov. 14, 2014) ...........................46

*Hearndon v. Graham,*
67 So. 2d 1179 (Fla. 2000)...............................................................................................................5

*Helman v. Seaboard Coast Line R. Co.,*
349 So. 2d 1187 (Fla. 1977)......................................................................................................31, 32

*Henry M. Butler, Inc. v. Trizec Props., Inc.,*
524 So. 2d 710 (Fla. Dist. Ct. App. 1998)................................................................................37, 42

*Hill v. State,*
143 So. 3d 981 (Fla. 4th DCA 2014) ...............................................................................................43

*Hunnings v. Texaco, Inc.,*
29 F.3d 1480 (11th Cir. 1994)..........................................................................................................33

*In re Engle Cases,*
No. 3:09-CV-10000-J-32JBT, 2012 WL 4771237, (M.D. Fla. Oct. 5, 2012) ..................................63

*In re Neurontin Marketing & Sales Practices Litig.,*
712 F. 3d 21 (1st Cir. 2013) .............................................................................................................56

*In re New York State Opioid Litig.,*
No. 40000/2017 (N.Y. Sup. Ct. June 18, 2018)....................................................................3, 19, 56

*Intercoastal Realty, Inc. v. Tracy,*
706 F. Supp. 2d 1325 (S.D. Fla. 2010) ............................................................................................47

*James D. Hinson Elec. Contr. Co. v. Bellsouth Telcoms., Inc.,*
No. 3:07-cv-598-J-32MCR, 2008 WL 360803 (M.D. Fla. Feb. 8, 2008) .........................................43

*King v. Order of United Commercial Travelers,*
333 U.S. 153 68 S. Ct. 488, 491 (1948)...........................................................................................44

*Kipnis v. Bayerische Hypo-Und Vereinsbank, AG,*
784 F.3d 771 (11th Cir. 2015)............................................................................................................5

*Knight v. Merhige,*
133 So.3d 1140 (Fla. App. Ct. 2014) ....................................................................................21, 24, 26

*Kohl v. Kohl,*
149 So. 3d 127 (Fla. Dist. Ct. App. 2014).......................................................................................28

*Kopel v. Kopel,*
229 So. 3d 812 (Fla. 2017)................................................................................................................40

*La Grasta v. First Union Secs., Inc.,*
358 F.3d 840 (11th Cir. 2004)............................................................................................................4

TABLE OF AUTHORITIES
(continued)

Page

*Labzda v. Purdue Pharma, L.P.*,
  292 F. Supp. 2d 1346 (S.D. Fla. 2003) ........................................................................ 23, 33

*Ladrilla Santa Fe v. Cessna Aircraft Co.*,
  No. 6:14-cv-1522-Orl-40KRS, 2015 WL 13311285, at *5 (M.D. Fla. Apr. 24, 2015) .................... 49

*Lemy v. Direct Gen. Fin. Co.*,
  559 F. App'x 796 (11th Cir. 2014) ................................................................................ 30

*Licul v. Volkswagen Grp. of Am.*,
  Case No. 13-61686-CIV-Cohn/Seltzer, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ..................... 39

*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*,
  124 F. Supp. 3d 1283 (S.D. Fla. 2015) ............................................................................. 48

*Lombardozzi v. Taminco US, Inc.*,
  Case No. 3:15cv533, 2016 WL 4483856 (N.D. Fla. 2016) ..................................................... 18

*Lowe v. Broward Cty.*,
  766 So. 2d 1199 (Fla. Dist. Ct. App. 2000), *rev. den.*, 789 So.2d 346 (Fla. 2001) .................. 10, 11

*Lutz v. Chesapeake Appalachia, LLC*,
  717 F.3d 459 (6th Cir. 2013) ....................................................................................... 4, 7

*Mahaliza, Inc. v. 7-Eleven, Inc.*,
  No. 16-61754-Civ-Scola, 2017 U.S. Dist. LEXIS 15441 (S.D. Fla. Feb. 2, 2017) ...................... 49

*Markland v. Insys Therapeutics, Inc.*,
  270 F.Supp.3d 1318 (M.D. Fla. 2017) ........................................................................... 29

*Marty v. Anheuser-Busch Cos., LLC*,
  43 F. Supp. 3d 1333 (S.D. Fla. 2014) ............................................................................ 50

*Maurice's Jewelers II, Inc. v. Pandora Jewelry, LLC*,
  No.: 16-25079-CIV-Moreno, 2017 WL 3822056 (S.D. Fla. Aug. 29, 2017) .............................. 38

*McCain v. Fla. Power Corp.*,
  593 So. 2d 500 (Fla. 1992) ...................................................................................... 21, 24

*McFarland v. Conseco Life Ins. Co.*,
  No. 3:09-CV-598-J-32MCR, 2009 WL 3231634, (M.D. Fla. Oct. 2, 2009) .............................. 62

*Melton v. Century Arms, Inc.*,
  243 F. Supp. 3d 1290 (S.D. Fla. Mar. 20, 2017) .............................................................. 39

*Millennium Commc'ns & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*,
  761 So. 2d 1256 (Fla. Dist. Ct. App. 2000) .................................................................... 47

*Missouri ex rel. Hawley v. Purdue Pharma, L.P.*,
  No. 1722-CC10626 (Mo. Cir. Ct. Apr. 25, 2018) ............................................................... 3

# TABLE OF AUTHORITIES
## (continued)

Page

*Montalbano v. Ariad Pharm., Inc.,*
   No. 15-60508-CIV, 2015 WL 11198245 (S.D. Fla. Aug. 4, 2015) ........................................52

*Mosher v. Speedstar Div. of AMCA Int'l, Inc.,*
   979 F.2d 823 (11th Cir. 1992)...............................................................................................33

*New Mexico ex rel. Marron v. Compere,*
   103 P.2d 273 (New Mexico 1940).........................................................................................17

*Nicholas v. Miami Burglar Alarm Co.,*
   339 So. 2d 175 (Fla. 1976)....................................................................................................36

*Nicolodi v. Harley-Davidson Motor Co.,*
   370 So. 2d 68 (Fla. Dist. Ct. App. 1979)...............................................................................24

*Niles Audio Corp. v. OEM Sys. Co.,*
   174 F. Supp. 2d 1315 (S.D. Fla. 2001) .................................................................................43

*Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.,*
   187 So. 3d 868 (Fla. Dist. Ct. App. 2016).............................................................................43

*Office of A.G., Dep't of Legal Affairs v. Wyndham Int'l, Inc.,*
   869 So. 2d 592, (Fla. 1st DCA 2004)....................................................................................45

*Omni Healthcare, Inc. v. Health First, Inc.,*
   Case No. 6:13-cv-1509-Orl-37DAB, 2016 WL 4272164 (M.D. Fla. Aug. 13, 2016) .................. 8, 49

*Orlando Sports Stadium, Inc. v. Florida,*
   262 So. 2d 881 (Fla. 1972).......................................................................................2, 16, 17, 19

*Parr v. Maesbury Homes, Inc.,*
   No. 6:09-cv-1268-Orl-19GJK, 2009 WL 5171770 (M.D. Fla. Dec. 22, 2009)..................46

*Pate v. Threlkel,*
   661 So. 2d 278 (Fla. 1995)....................................................................................................25

*Pearson v. Ford Motor Co.,*
   694 So. 2d 61 (Fla. Dist. Ct. App. 1997) ........................................................................... 4, 8

*Penelas v. Arms Tech., Inc.,*
   No. 99-1941 CA-06, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999)...................14, 15, 17

*Penelas v. Arms Technology, Inc.,*
   778 So. 2d 1042 (Fla. Dist. Ct. App. 2001)...............................................................15, 19, 41

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank, N.A.,*
   667 So. 2d 876 (Fla. Dist. Ct. App. 1996).............................................................................40

*Philip Morris USA, Inc. v. Russo,*
   175 So. 3d 681 (Fla. 2015)....................................................................................................61

## TABLE OF AUTHORITIES
### (continued)

Page

*Prior v. White,*
   132 Fla. 1 (Fla. 1938) ........................................................................................................16

*Probias v. Pfizer, Inc.,*
   490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...........................................................................51

*R.J. Reynolds Tobacco Co. v. Ciccone,*
   190 So.3d 1028 (Fla. 2016)................................................................................................5

*Raie v. Cheminova,*
   336 F.3d 1278 (11thCir. 2003).........................................................................................7

*Raimi v. Furlong,*
   702 So. 2d 1273 (Fla. Dist. Ct. App. 1997).....................................................................61

*Razor Capital, LLC v. CMAX Finance LLC,*
   2017 WL 3481761 (S.D. Fla., Aug. 14, 2017)............................................................ 4, 5

*Reilly v. Amy's Kitchen, Inc.,*
   2013 WL 9638985 (S.D. Fla. Dec. 9, 2013) ...................................................................39

*Republic of Venez. ex rel. Garrido v. Philip Morris Cos.,*
   827 So. 2d 339 (Fla. 3d DCA 2002) ...............................................................................37

*Richardson v. Fountain,*
   154 So. 2d 709 (Fla. Dist. Ct. App. 1963).......................................................................29

*Risley v. Nissan Motor Corp. USA,*
   254 F.3d 1296, (11th Cir. 2001).......................................................................................15

*Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC,*
   No. 12-20744-Civ, 2013 WL 5554142 (S.D. Fla. Sep. 3, 2013) ......................................8

*Robinson v. United States,*
   327 Fed. App'x 816 (11th Cir. 2007) ................................................................................8

*Rollins, Inc. v. Butland,*
   951 So. 2d 860 (Fla. Dist. Ct. App.  2006), *rev. den'd*, 962 So.2d 335 (Fla. 2007) ...............46

*Romer v. Stryker Corp.,*
   Case No: 2:18-cv-19-FtM-99MRM, 2018 WL 1496971 (M.D. Fla. 2018)......................29

*Rounds v. Genzyme Corp.,*
   440 F. App'x 753 (11th Cir. 2011) ............................................................................ 51, 52

*Ry. Express Agency, Inc. v. Garland,*
   269 So. 2d 708 (Fla. Dist. Ct. App. 1972).......................................................................30

*Scolieri v. John Hancock Life Ins. Co. (U.S.A.),*
   No. 2:16-cv-690, 2017 WL 700215 (M.D. Fla. Feb. 22, 2017) .........................................59

## TABLE OF AUTHORITIES
### (continued)

Page

*Seaboard Air Line R.R. Co. v. Holt,*
  92 So. 2d 169 (Fla. 1956)...................................................................................................7

*Shurben v. Dollar Rent-A-Car,*
  676 So. 2d 467 (Fla. Dist. Ct. App. 1996)................................................................. 26, 53

*Simon v. Shearson Lehman Bros.,*
  895 F.2d 1304 (11th Cir. 1990).......................................................................................31

*Smith v. Hinkley,*
  123 So. 564 (Fla. 1929) ...................................................................................................21

*Smith v. WM. Wrigley Jr. Co.,*
  663 F. Supp. 2d 1336 (S.D. Fla. 2009) ...........................................................................49

*Sosa v. Coleman,*
  646 F.2d 991 (1981) .................................................................................................. 36, 53

*Spadaro v. City of Miramar,*
  855 F. Supp. 2d 1317 (S.D. Fla. 2012) .............................................................................4

*Spain v. Brown & Williamson Tobacco Co.,*
  363 F. 3d 1183 (11th Cir. 2004) .......................................................................................8

*Speer v. Olson,*
  367 So 2d 207 (Fla. 1978).................................................................................................11

*Star-Brite Dist., Inc. v. Gold Eagle Co.,*
  Case No. 14-61841-CIV-Cohn/Seltzer, 2016 WL 4470093 (S.D. Fla. Jan. 25, 2016) .......8

*Stark v. Nordyne, LLC,*
  No. 14-CIV-21884-BLOOM/Valle, 2014 WL 12516076 (S.D. Fla. Nov. 14, 2014).........39

*State Farm Fire & Cas. Co. v. Silver Star Health & Rehab.,*
  739 F.3d 579 (11th Cir. 2013)..........................................................................................38

*State Farm Mut. Auto. Ins. Co. v. Kugler,*
  No. 11-80041, 2011 WL 4389915 (S.D. Fla. Sept. 21, 2011) ............................................4

*State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla.,*
  103 F. Supp. 3d 1343 (S.D. Fla. 2015) ............................................................................47

*State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, LLC,*
  9 F. Supp. 3d 1303 (M.D. Fla. 2014) .........................................................................38, 42

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.,*
  427 Fed. App'x 714 (11th Cir. 2011).............................................................................39

*State v. Bamber,*
  592 So. 2d 1129 (Fla. Dist. Ct. App. 1991)......................................................................14

## TABLE OF AUTHORITIES
### (continued)

Page

*State v. Broward Cty.*,
   468 So. 2d 965 (Fla. 1985)................................................................................................10

*State v. Purdue Pharma L.P.*,
   No. 2017 CP 04872 (S.C. Ct. Com. Pl. Apr. 12, 2018) ...........................................................3

*Std. Havens Prods. v. Benitez*,
   648 So. 2d 1192 (Fla. 1994).............................................................................................32

*Stevens v. Parke, Davis & Co.*,
   507 P.2d 653 (Cal. 1973) ................................................................................................35

*Sup. Cons. Servs. v. Shaklee Corp.*,
   No. 6:16-cv-2001-Orl-31-GJK, 2018 WL 1791613 (M.D. Fla. April 16, 2018)..................... 49, 50

*Tardif v. PETA*,
   829 F. Supp. 2d 1219 (M.D. Fla. 2011) ............................................................................31

*TBTG, LLC v. Fidelity Brokerage Serv., LLC*,
   No. 8:16-CV-83-T-36TBM, 2016 WL 9383325 (M.D. Fla. Oct. 17, 2016) ..............................4

*Tilton v. Playboy Entm't Grp., Inc.*,
   No. 8:05-cv-692-T-30TGW, 2007 WL 80858, (M.D. Fla. Jan. 8, 2007) ...............................40

*Townsend v. City of Miami*,
   No. 03-21072-CIV-Jordan, 2007 U.S. Dist. LEXIS 103612 (S.D. Fla. Nov. 7, 2007)..............56

*Traxler v. PPG Indus.*,
   158 F. Supp. 3d 607 (N.D. Ohio 2016) .............................................................................46

*True Title, Inc. v. Blanchard*,
   No. 6:06-cv-1871-Orl-19DAB, 2007 WL 430659 (M.D. Fla. Feb. 5, 2007)..........................43

*U.S. v. Stevens*,
   994 So. 2d 1062 (Fla. 2008)..............................................................................24, 26, 27

*United States v. Livdahl*,
   459 F. Supp. 2d 1255 (S.D. Fla. 2005) .............................................................................34

*Vargas v. Glades Gen. Hosp.*,
   566 So. 2d 282 (Fla. Dist. Ct. App. 1990)...........................................................................6

*Vining v. Avis Rent-A-Car Sys., Inc.*,
   354 So. 2d 54 (Fla. 1977)................................................................................................53

*Walker v. Dunne*,
   368 So. 2d 640 (Fla. Dist. Ct. App. 1979)...........................................................................4

*Wallace v. Dean*,
   3 So.3d 1035 (Fla. 2009)................................................................................................21

- xiii -

# TABLE OF AUTHORITIES
## (continued)

Page

*Walls v. Armour Pharm. Co.,*
  832 F. Supp. 1467 (M.D. Fla. 1993) ................................................................. 34, 35

*Washington ex rel. Ferguson v. Purdue Pharma. L.P.,*
  No. 17-2-25505-0, (Wash. Super. Ct. May 14, 2018) .......................................... 3

*Webb v. Glades Elec. Coop., Inc.,*
  521 So. 2d 258 (Fla. Dist. Ct. App. 1988) .......................................................... 24

*West Virginia ex rel. Morrisey v. AmerisourceBergen Drug Corp.,*
  No. 12-C-141 (W.V. Cir. Ct. Dec. 12, 2014) .................................................. 3, 19

*Whitlock v. FSL Mgmt., LLC,*
  843 F.3d 1084 (6th Cir. 2016) ...................................................................... 14, 15

*Williams v. Davis,*
  974 So. 2d 1052 (Fla. 2007) .............................................................................. 24

*Williams v. McDonough,*
  No. 4:03cv264-SPM/AK, 2006 WL 2849714  (N.D. Fla. 2006) ....................... 14

*Wyeth v. Levine,*
  555 U.S. 555 (2009) .......................................................................................... 28

*XP Global, Inc. v. AVM, L.P.,*
  Case No. 16-cv-80905-BLOOM/Valle, 2016 WL 4987618 (S.D. Fla. 2016) ....... 7

*Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.,*
  Case No: 8:16-cv-637, 2017 WL 5202998 (MD Fla. Apr. 19, 2017) ................... 7

*Zlotnick v. Premier Sales Grp., Inc.,*
  480 F.3d 1281 (11th Cir. 2007) ......................................................................... 47

## Statutes

Fla. Stat. § 499.0121 ............................................................................................ 47

Fla. Stat. § 501.201 *et seq.* .................................................................................... 42

Fla. Stat. § 772.104 ............................................................................................... 56

Fla. Stat. § 95.031(2) .............................................................................................. 5

## Rules

Fed. R. Civ. P. 8 ....................................................................................... 4, 38, 45

Fed. R. Civ. P. 9(b) ............................................................................................... 45

## Treatises

7 Am. Law of Torts § 20:5 .................................................................................... 17

- xiv -

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Black's Law Dictionary* (10th ed. 2014) ........................................................................................ 16

Restatement (Second) of Torts § 302B (1965) .......................................................................... 26

Restatement (Second) of Torts § 821B(2)(b) ............................................................................. 17

## INTRODUCTION AND SUMMARY

Broward County ("Broward") seeks to bring the devastating march of the opioid epidemic to a halt and to hold Defendants—manufacturers, distributors, and sellers of opioids—responsible for the crisis they caused.  Broward's complaint[1] provides detailed allegations about Defendants' schemes to increase their profits: selling more and more addictive opioids, while imposing on communities like Broward the social and economic costs of such widespread use of these dangerous drugs.  Broward stands on the front lines, responding to an ever-increasing public health crisis it had no way of knowing was a man-made, profit-driven disaster.  Drawing attention away from the massive crisis they created and perpetuated, Defendants blame the doctors they duped for a four-fold increase in opioid prescriptions and the men, women and children they addicted.  Arguing that only the state or federal executive branch should address this problem, Defendants contend not only that all of Broward's claims should be dismissed, but that this Court may not even hear this case.[2]

---

[1] Because Defendants' actions were a massive scheme to work a sea-change in the prescribing habits of the medical community nationwide and to alter the number of prescription opioids sold and distributed for their own financial benefit, the effect and the injury they caused has necessarily impacted numerous communities. As a result, the bulk of Broward County's allegations are the same as those alleged by sister counties/cities, and Defendants' arguments here overlap across the other motions to dismiss filed pursuant to Case Management Orders ("CMO") One and Four.  Rather than repeat the arguments similarly briefed, Broward County here incorporates the oppositions of its sister counties in their entirety.  *See* Pls. County of Summit, Ohio, and City of Akron, Ohio's Omnibus Memo. in Opp. to (1) Defs. AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp.'s Mot. To Dismiss (Dkt. # 491); (2) Mot. to Dismiss Compl. by Defs. Walmart Inc., CVS Health Corp., Rite Aid Corp., and Walgreens Boots Alliance, Inc. (Dkt. # 497); and (3) Manufacturer Defs.' Joint Mot. to Dismiss Pls.' Second Am. Compl. 499) (hereinafter, "*Summit* Opp.") (Dkt. # 654) as well as the oppositions filed in *Cabell County Commission, West Virginia v. AmerisourceBergen Drug Corp., et al.,* Case No. 17-OP-45053 (N.D. Ohio) (hereinafter "*Cabell* Opp."), *County of Monroe, Michigan v. Purdue Pharma L.P., et al.,* Case No. 18-OP-4515 (N.D. Ohio) (hereinafter "*Monroe* Opp."), and *The City of Chicago, Illinois v. Purdue Pharma L.P.,* Case No. 17-OP-45169 (N.D. Ohio) against Manufacturers (Dkt. # 653) (hereinafter "*Chicago Manu.* Opp.") and Chain Pharmacies "*Chicago Pharm.* Opp.").

[2] Contrary to this Court's instruction in CMO 1, to limit this initial round of motions to dismiss to "those issues [Defendants] believe are most critical and most relevant to the settlement process," CMO 1 ¶ 2.g(5), Defendants took a scattershot approach, attacking every count in Broward County's Second Amended Complaint ("SAC"), on virtually every imaginable ground , often with little or no legal analysis or authority. Many of their arguments also rest on disputes about the accuracy of the facts alleged in the SAC, and thus are not appropriately raised in a motion to dismiss.

- 1 -

Defendants are wrong as a matter of law.  Where factual issues are at stake, dismissal at this stage is inappropriate.  The motions should be denied in their entirety.

Broward has properly alleged statutory and common law claims to redress the extensive pecuniary harm inflicted by Defendants' reckless disregard for the public health and safety.  The public health epidemic Broward faces, with its profound, ongoing harms, is precisely what public nuisance law is designed to remedy through abatement, injunction, and other equitable relief. *Orlando Sports Stadium, Inc. v. Florida*, 262 So. 2d 881, 884 (Fla. 1972).  Similarly, RICO was enacted to contend with the type of broad, intentional, and concerted action Broward has alleged in the Marketing and Supply Chain Enterprises.

Through these and through its other claims, Broward seeks to remedy this crisis, to recover for the unusual costs and the extraordinary burden Defendants imposed on public resources, and to hold Defendants accountable for their ongoing malfeasance.  Contrary to Defendants' suggestion that states, not counties, are the proper plaintiffs, caring for the public health, safety, and welfare of their citizens is particularly the province of local governments such as Broward, which are not only well-positioned to address the crisis at the ground level, but also empowered to do so.  Broward has acted proactively to increase funding for existing services that have been strained by the epidemic and to create new programs to address the crisis.  Because Broward has and will continue to incur these costs, Broward is the proper entity to seek redress here.

The motions filed by Manufacturer, Distributor, and Chain Pharmacy Defendants, while organized quite differently, overlap in many respects.[3]  To avoid duplication, Broward has provided an omnibus response, addressing each topic raised once.  This response is organized into two

---

[3] Mem. of Law in Supp. of the Manufacturer Defs.' Joint Mot. to Dismiss Pl.'s Second Am. Compl. (Dkt. # 593-1); Mem. in Supp. of Distributor Defs.' (AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp.) Mot. to Dismiss Second Am. Compl. (Fed. R. Civ. P. 12(b)(6)) (Dkt. # 591-1); and Mem. in Supp. of Mot. to Dismiss by Defendants CVS Corporation, Walgreens Boots Alliance, Inc., and Walmart Inc. (Dkt. # 582-1) (hereinafter "*Manu. Mot.*", "*Dist. Mot.*", and "*Pharm. Mot.*" respectively).

sections.  Part One responds to Defendants' arguments that cut across multiple claims, including arguments relating to the statute of limitations, standing, preemption, and the municipal cost recovery bar.  Part Two responds to arguments directed at specific claims.

Across the country, courts have rejected many of the arguments raised by Defendants here.[4] Just last month, the court overseeing the consolidated New York state opioid litigation denied defendants' motions to dismiss virtually in their entirety.  *See In re New York State Opioid Litig.,* No. 40000/2017, slip op. (N.Y. Sup. Ct. June 18, 2018).  Defendants' MDL effort should fare no better.

## LEGAL STANDARD

Defendants' motions to dismiss pursuant to Rule 12(b) are subject to the same legal standard applicable to the motions asserted in Summit County.  See *Summit* Opp. at 4-6.

## ARGUMENT

Defendants contend that Broward's claims are so deficient that, even accepting Broward's allegations as true, no set of facts can be envisioned that would allow even a single claim to proceed. Defendants' arguments fail on every front.

## I.    All of Defendants' Arguments to Dismiss Broward's Claims Must Be Rejected

### A.    Broward's Claims Are Timely Asserted

Defendants' attempt to dismiss all of Broward's claims as time-barred should be rejected. Broward's well-pleaded allegations support both the delayed accrual of its claims and the tolling of the limitations period on two separate bases: Defendants' fraudulent concealment of their malfeasance, and the continuing tort doctrine.

---

[4] *See, e.g., West Virginia ex rel. Morrisey v. AmerisourceBergen Drug Corp.,* No. 12-C-141 (W.V. Cir. Ct. Dec. 12, 2014); *City of Chicago v. Purdue Pharma L.P.,* No. 14 CV 4361, 2015 WL 2208423 (N.D. Ill. May 8, 2015); *City of Everett v. Purdue Pharma L.P.,* No. C17-209RSM, 2017 WL 4236062 (W.D. Wash. Sept. 25, 2017); *People v. Purdue Pharma, L.P.,* No. 30-2014-00725287 (Cal. Super. Ct. Feb. 13, 2018); *State v. Purdue Pharma L.P.,* No. 2017 CP 04872 (S.C. Ct. Com. Pl. Apr. 12, 2018); *Washington ex rel. Ferguson v. Purdue Pharma. L.P.,* No. 17-2-25505-0, (Wash. Super. Ct. May 14, 2018); *Missouri ex rel. Hawley v. Purdue Pharma, L.P.,* No. 1722-CC10626 (Mo. Cir. Ct. Apr. 25, 2018).

1583751.17

Given the fact-intensive nature of these inquiries, dismissal is inappropriate at the pleading stage. *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)).  Because the statute of limitations is an affirmative defense,[5] Fed. R. Civ. P. 8(c)(1), it is rarely appropriate for a motion to dismiss.  *Summit* Opp. at p. 123.  *See, e.g., Spadaro v. City of Miramar,* 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) (statute of limitations should be raised as an affirmative defense, rather than in a motion to dismiss).  Where, as here, Broward asserts various tolling exceptions to Florida's statutes of limitation, SAC ¶¶ 697–707, the applicability of those exceptions "are questions for summary judgment or for trial and should not be resolved on a motion to dismiss." *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 476 (6th Cir. 2013).[6]  On this basis alone, Defendants' arguments should be rejected.

### 1. The Delayed Discovery Doctrine Postpones Accrual of Broward's Claims

There can be no doubt that Broward sufficiently alleged facts supporting application of the delayed discovery doctrine.  Because Defendants purposefully concealed their unlawful conduct, their actions delayed Broward's ability to discover Defendants' wrongdoing and the harm caused by it.  SAC ¶¶ 699–707; *see Summit* Opp. at 124.  The delayed discovery doctrine prevents a cause of action from accruing until the plaintiff either knows or reasonably should know of the tortious act

---

[5] "[P]laintiffs are not required to negate an affirmative defense in their complaint." *Razor Capital, LLC v. CMAX Finance LLC*, 17-80388-CIV-Marra, 2017 WL 3481761, at *3 (S.D. Fla. Aug. 14, 2017) (citing *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). Defendants do not make even the most minimal showing of this affirmative defense: they fail to note the date by which the statute limitations had allegedly run.

[6] *See also State Farm Mut. Auto. Ins. Co. v. Kugler,* No. 11-80041, 2011 WL 4389915 (S.D. Fla. Sept. 21, 2011) (delayed discovery doctrine and equitable tolling doctrine implicate factual issues the court cannot resolve on a motion to dismiss); *Walker v. Dunne,* 368 So. 2d 640 (Fla. Dist. Ct. App. 1979) (holding that when a question exists as to whether there has been fraudulent concealment sufficient to toll the statute of limitations, even summary judgment is improper and such questions should be left for the jury); *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 67–68 (Fla. Dist. Ct. App. 1997) (stating that "[w]hether the continuing torts doctrine applies to the facts of a case is for a trier of fact to decide"); *TBTG, LLC v. Fidelity Brokerage Serv., LLC,* No. 8:16-CV-83-T-36TBM, 2016 WL 9383325, *6 (M.D. Fla. Oct. 17, 2016) (continuing tort doctrine presents fact-intensive questions not suitable for disposition on a motion to dismiss).  Unless otherwise noted, this Memorandum adds all emphasis in quotations and omits citations and internal quotation marks.

giving rise to the claim. *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 779 (11th Cir. 2015). This doctrine specifically applies to claims arising out of fraudulent conduct, such as the fraud and RICO claims asserted here. *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000) (citing *Hillsborough Comm. Mental Health Ctr. v. Harr*, 618 So. 2d 187, 189 (Fla. 1993)); *see also* § 95.031(2), Fla. Stat. (discussing the application of delayed discovery to claims arising out of fraud); *Kipnis*, 784 F. 3d at 778 n.4 (court assumed applicability of the delayed discovery rule to plaintiff's fraud-based and civil RICO claims).

Broward made detailed allegations that Defendants misrepresented or concealed facts that were material to understanding the dangers posed by their opioids. (SAC at ¶¶ 146–317). Because Broward has alleged that it could not have known of the causal connection between Defendants actions and the harm for which it now seeks relief (Dkt. # 32 ¶ 703),[7] the claims could not have accrued. *See, e.g., Carter v. Brown & Williamson Tobacco Corp.*, 778 So.2d 932, 937 (Fla. 2000) (quashing summary judgment on statute of limitations grounds where questions of fact existed about whether plaintiff could have known his injuries were caused by the defendant's product); *R.J. Reynolds Tobacco Co. v. Ciccone*, 190 So.3d 1028, 1037 (Fla. 2016) ("[I]t is both illogical and unfair for the statute to begin to run before the plaintiff knows or should have known of the causal connection that is the basis for his suit."). What Broward knew or when it should have known about the facts that gave rise to its claims must be explored through discovery and decided by the jury. *See, e.g., Razor Capital, LLC*, 2017 WL 3481761 at *5.

### 2.  Defendants' Fraudulent Concealment Tolls the Statute of Limitation

Broward has adequately pled that Defendants are equitably estopped from asserting a statute of limitations defense because they intentionally concealed their unlawful conduct and defrauded the

---

[7] *See also Summit* Opp. at 124–25 (discussing factual allegations regarding Defendants' efforts to prevent discovery of their fraudulent conduct).

public.  Florida recognizes the fraudulent concealment equitable tolling principle, under which the statute of limitations is tolled to prevent the courts from participating in the defendant's fraud.  *See, e.g., Vargas v. Glades Gen. Hosp.,* 566 So. 2d 282 (Fla. Dist. Ct. App. 1990); *see also In re Takata Airbag Prods. Liab. Litig.,* 255 F. Supp. 3d 1241, 1258 (S.D. Fla. 2017) (statute of limitations tolled where plaintiff alleged manufacturer made misleading statements).  Broward has alleged both concealment of the cause of action and fraudulent means to achieve that concealment.  *See GolTV, Inc. v. Fox Sports Latin Am., Ltd.,* Case No. 16-24431-CIV-ALTONAGA/Turnoff, 2018 WL 1393790, *23 (S.D. Fla. Jan. 26, 2018) (quoting *Nardone v. Reynolds,* 333 So. 2d 25, 37 (Fla. 1976)).  *Summit* Opp. at 124–25.[8]

To prove their defense that the fraudulent concealment ended, Defendants must demonstrate that they took adequate steps to re-educate the same medical community they previously spent millions of dollars to mislead.  *Cf. Byington v. A.H. Robins Co., Inc.,* 580 F. Supp. 1513 (S.D. Fla. 1984).  While Defendants may argue that they changed their ways belatedly to disclose the massive malfeasance they covered up for years, that factual burden cannot be met by legal argument on a Rule 12(b) motion.

Broward has alleged each of the elements of equitable estoppel based on fraudulent concealment.  Defendants deprived Broward of actual or implied knowledge of facts sufficient to put it on notice of potential claims; Broward did not discover the nature and magnitude of Defendants' misconduct nor could it have acquired such knowledge earlier through the exercise of reasonable diligence.  SAC ¶¶ 772–73; *see also Summit* Opp. at 124–25.  Manufacturer Defendants do not dispute that Broward made these allegations, but rather contend that they are not "sufficient to support application" of the doctrine.  *Manu. Mot.* at 16.  That argument improperly seeks to shift the

---

[8] Broward's allegations regarding the common actions of Defendants that impacted governmental entities across the country in similar ways are the same for the purposes of this analysis.  The following paragraphs of the SAC contain the parallel allegations cited in the *Summit* opposition.  SAC ¶¶ 276–316, 320–363, 342–44, 364–396, 376, 498, 516, 543, 562–563, 563 n. 232, 564–67, 756–61, 815–18.

burden to Broward on this motion to dismiss. Even the authorities on which Defendants rely recognize that, "these are questions . . . [that] should not be resolved on a motion to dismiss." *Lutz,* 717 F.3d at 476; *see also Egerer v. Woodland Realty, Inc.,* 556 F.3d 415 (6th Cir. 2009) (affirming *summary judgment* on statute of limitations grounds).[9]

### 3. The Continuing Tort Doctrine Tolls the Statute of Limitations

Broward's claims are also tolled under the continuing tort or continuing violation doctrine, which allows Broward to recover for injuries based on the continuing acts of the defendant. *See, e.g., Seaboard Air Line R.R. Co. v. Holt,* 92 So. 2d 169, 170 (Fla. 1956); see *Summit* Opp. at 126–28. The critical question in determining whether this doctrine applies is "whether the plaintiff complain[s] of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does." *XP Global, Inc. v. AVM, L.P.,* Case No. 16-cv-80905-BLOOM/Valle, 2016 WL 4987618 at *3, (S.D. Fla. 2016) (citing *Robinson v. U.S.*, 327 Fed. App'x 816, 818 (11th Cir. 2007).

Under this doctrine, the limitations period remains tolled until the date when the tortious conduct ceases. *Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 679 (S.D. Fla. 1999), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 (2005). Where a plaintiff has alleged continuing conduct, a jury must decide whether the facts show continuing tort has occurred and, thus, at the motion to dismiss stage, a complaint may only be dismissed "if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *XP Global, Inc.,* 2016 WL 4987618 at *4 (citing *Spadaro*, 855 F. Supp. 2d at 1330). Until it has, defendants' ongoing conduct

---

[9] The other cases upon which Defendants rely are readily distinguishable, both factually and procedurally. *Raie v. Cheminova*, 336 F.3d 1278, 1282 n.1 (11thCir. 2003), involved a wrongful death claim, where the court found that the plaintiff had not alleged *any* specific act of misrepresentation or concealment to support a claim of fraudulent concealment. Likewise, in *Zainulabeddin v. University of South Florida Board of Trustees*, the court determined *on summary judgment*, that equitable estoppel did not apply because plaintiff's failure to file suit was not attributable to the defendant's conduct. *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, Case No: 8:16-cv-637, 2017 WL 5202998 at *11 (MD Fla. Apr. 19, 2017).

extends the limitations period.  *Robinson v. United States*, 327 Fed. App'x 816, 818 (11th Cir. 2007).  In tobacco cases, for example, courts have held that each new sale of cigarettes extends the application of the continuing tort doctrine to the plaintiff's claims.  *See Spain v. Brown & Williamson Tobacco Co.*, 363 F. 3d 1183, 1190 (11th Cir. 2004).  The continuing tort doctrine has been applied to some of the very same claims pled in the SAC.[10]

Continuing tortious activity is exactly what Broward alleged in the SAC: a decades-long, concerted, and intentional effort by Defendants to increase their revenue that created and perpetuated the opioid crisis.  Indeed, a one-time violation would not have created this wide-spread public health epidemic and, critically, Defendants' deceptive acts have continued to the present.  SAC ¶¶ 698, 927, 962.  Marketing Defendants did not cease their misrepresentations as the opioid crisis began to spread.  Instead, they simply adapted their messaging: blaming "bad apples," professing their cooperation with law enforcement, and promoting so-called abuse-deterrent opioids.

Again, ignoring Broward's broad allegations of coordinated action, Defendants contend that their discrete acts cannot support application of the continuing tort doctrine.  *Manu. Mot.* at 17.  Defendants' argument mischaracterizes Broward's allegations.  The specific acts alleged in the SAC were representative examples of a complex and far-reaching fraudulent scheme, not isolated acts.  Defendants' deceptive campaign was well-orchestrated and continuous, and it continues in Broward.

---

[10] *See, e.g., Star-Brite Dist., Inc. v. Gold Eagle Co.,* Case No. 14-61841-CIV-Cohn/Seltzer, 2016 WL 4470093 (S.D. Fla. Jan. 25, 2016) (false advertising and FDUTPA); *Omni Healthcare, Inc. v. Health First, Inc.,* Case No. 6:13-cv-1509-Orl-37DAB, 2016 WL 4272164 (M.D. Fla. Aug. 13, 2016) (FDUTPA, tortious interference); *Breif v. Wells Fargo Bank, N.A.,* No. 13-80215-CIV, 2014 WL 806854 (S.D. Fla. Feb. 28, 2014) (negligence); *Roberta L. Marcus, Inc. v. New Cingular Wireless PCS, LLC,* No. 12-20744-Civ, 2013 WL 5554142 (S.D. Fla. Sep. 3, 2013) (unjust enrichment, conversion); *Carnival Corp. v. Rolls-Royce PLC,* No. 08-23318-CIV, 2009 WL 3861482 (S.D. Fla. Nov. 17, 2009) (fraud, misrepresentation, FDUTPA, negligence, false, misleading and deceptive advertising and civil conspiracy); *Goodwin v. Sphatt,* 114 So. 2d 1092, 1095 (Fla. Dist. Ct. App. 2013) (fraud); *Baker v. Hickman,* 969 So. 2d 441, 445 (Fla. Dist. Ct. App. 2007) (nuisance); *Pearson v. Ford Motor Co.,* 694 So. 2d 61 (Fla. Dist. Ct. App. 1997) (fraud) (questions about application of the continuing torts doctrine are for trier of fact).

SAC ¶¶ 645–662.  The opioid epidemic may have started as a slow-burning fire, but as Defendants created and advanced the Opioid Marketing and Supply Chain Enterprises, they continually poured more fuel into the flames.

Even today, Defendants continue to misrepresent the safety and effectiveness of their product and continue to fail to meet their obligations to monitor and control this closed system of opioid distribution.  *See, e.g.*, SAC ¶¶ 691–96, 777, 803.  Broward has specifically alleged that Defendants continue to act tortiously, and that Broward continues to suffer harm as a result.  SAC ¶¶ 697–707.  Broward has properly asserted that the continued conduct by Defendants caused "repeated" or "continuous" injuries and that, since the conduct has not ceased, the statute of limitations cannot bar these claims.  *Id.* at ¶ 698.  Questions about which actions were taken by each of Defendants, and how that may have led to the harm complained of by Broward are, again, not proper questions to be addressed at the pleading stage.  SAC ¶ 698.  In sum, the motion to dismiss the SAC based on the statute of limitations should be denied.

### B. Broward's Claims Are Not Preempted

Defendants' preemption argument is advanced in a half page with reference to the Summit County briefing.  *Manu. Mot.* at 5.  Defendants cite Broward's allegations related to the Marketing Defendants' false misrepresentations and one federal case from the Eastern District of North Carolina, asserting that claims based on off-label promotion are preempted.  This argument fails for the same reasons set forth by Summit County.  *See Summit* Opp. at 76–77 n.49, 90, 111, 144–22.

### C. Broward Has Standing to Advance Claims for Harms Defendants Caused

#### 1. Broward Has Article III Standing

Defendants make even less effort to differentiate their Article III standing argument, citing the Summit briefing without more.  *Pharms. Mot.* at 2.  Broward similarly incorporates the Summit briefing in response.  *See Summit* Opp. at 105–109.

### 2.     Statewide Concern Does Not Relate to Standing

Separately, Manufacturer Defendants argue that since Broward is a subdivision of the State of Florida, it may not infringe on the State's power to address matters of statewide concern by filing suit now that the State has filed its own lawsuit in Florida state court. *Manu. Mot.* at 2–3.

Manufacturer Defendants' position is based on the statewide concern doctrine, which provides that if a matter is truly one of statewide concern, a local government exceeds its constitutional authority by *enacting legislation* in the area. *See City of Miami Beach v. Fleetwood Hotel, Inc.*, 261 So. 2d 801 (Fla. 1972). Manufacturer Defendants' attempt to expand this doctrine by arguing that this litigation is a matter "reserved to the state" is without merit. There is no Florida authority supporting application of the statewide concern doctrine to preclude Broward from pursuing this litigation to enforce its own legal rights and remedies.

The Florida Constitution specifically provides that counties are political subdivisions of the state and have all powers of local self-government not inconsistent with general law (and special law for counties not operating under county charters). Art. VIII, § 1(a) (f) (g), Fla. Const.; *see also* § 125.01(b). The Florida Legislature has accorded counties broad self-governing powers. *Speer v. Olson*, 367 So. 2d 207, 211 (Fla. 1978). The Florida Supreme Court has "broadly interpreted the self-governing powers granted charter counties under article III, section 1(g)." *State v. Broward Cty.*, 468 So. 2d 965, 968 (Fla. 1985).

Manufacturer Defendants rely on *Fleetwood Hotel, Inc.*, 261 So. 2d at 803, and *Lowe v. Broward Cty.*, 766 So. 2d 1199, 1205 (Fla. Dist. Ct. App. 2000), *rev. den.*, 789 So.2d 346 (Fla. 2001). *Manu. Mot.* at 2–3. The questions before those courts had nothing to do with the local governments' standing to pursue litigation.[11] Rather, both cases involved constitutional challenges to *legislation* enacted by

---

[11] Indeed, in both cases, the local governments were defendants.

the local governments. *Lowe,* 766 So. 2d at 1205.[12]  In contrast, here, Broward is suing to enforce its legal rights under federal and state statutory and common law. *Fleetwood Hotel, Inc.* and *Lowe* have no bearing on Broward's standing to pursue this litigation.

Manufacturer Defendants' try to manufacture an issue of statewide concern by noting that the Florida Attorney General initiated her own lawsuit in state court. *Manu. Mot.* at 2.  Even if the statewide concern doctrine applied to litigation—it does not—Defendants have not identified any conflict between the respective litigation positions of the State and Broward that would justify precluding Broward's claims.  The SAC alleged the constitutional and statutory authority authorizing Broward to initiate and pursue this litigation. *SAC* at ¶¶ 30–31.  And, Florida courts have uniformly held that the county governing body has full authority to exercise its home rule power unless the legislature has preempted a particular subject relating to county government by either general or special law. *See, e.g., Speer,* 367 So 2d at 211; *see also City of Boca Raton v. State,* 595 So. 2d 25, 27 (Fla. 1992) (Florida Supreme Court re-emphasized "vast breadth of municipal home rule power" and that local governments do not require specific authorization to act).  The burden is thus on Manufacturer Defendants to identify any general or special laws enacted by the Florida Legislature preempting Broward from pursuing this litigation.  They have not.

Finally, Manufacturer Defendants assert that no Florida authority "permit[s] a political subdivision to maintain an action that is duplicative of one by the Florida Attorney General[.]" *Manu. Mot.* at 3.  Once again, Manufacturer Defendants offer no authority for this proposition that, if accepted, would extinguish Broward's right to seek recovery for its own damages.  The fact that Manufacturer Defendants' misconduct harmed many communities throughout Florida does not justify curtailing Broward's access to court to seek relief for harm suffered by Broward itself.  The

---

[12] In *Miami Beach, Fleetwood Hotel, Inc.,* the court held the city's enactment of a rent control ordinance exceeded the powers afforded under the state constitution.  261 So. at 804.  In *Lowe,* the court held that the county's enactment of a domestic partnership ordinance did not legislate in a zone reserved for the state. 766 So. 2d at 1205.

Florida Supreme Court has cautioned that courts "must be careful and mindful in attempting to impute intent to the Legislature to preclude a local elected governing body from exercising its home rule powers." *D'Agastino v. City of Miami,* 220 So. 3d 410, 421 (Fla. 2017).

The statewide concern doctrine is inapplicable here. Broward has not enacted any legislation that addresses an area of statewide concern. And its lawsuit—seeking redress based on harms to Broward itself—does not exceed "the vast breadth of municipal home rule power." *City of Boca Raton,* 595 So. 2d at 28.

**D.**     **Broward Has Clearly Alleged Claims Against All Defendants as Participants in the Opioid Supply Chain.**

Broward is suing the National Retail Pharmacies in their capacity as retailers and participants in the supply chain, not as dispensing pharmacies. Although the SAC classifies them as "Distributor Defendants" (as opposed to Marketing Defendants), it is clear from the remainder of the allegations that, in this context, "Distributors" includes all participants in the supply chain other than the Marketing Defendants, *see, e.g.*, Broward SAC ¶ 95 ("Collectively, Defendants CVS, Health Mart, H. D. Smith, Walgreens, and Wal-Mart are referred to as 'National Retail Pharmacies.' Cardinal, McKesson, AmerisourceBergen, and the National Retail Pharmacies are collectively referred to as the 'Distributor Defendants.'"); *Summit* SAC ¶ 513 ("Distributor and Marketing Defendants alike possess and are expected to possess specialized and sophisticated knowledge, skill, information, and understanding of both the market for scheduled prescription narcotics and of the risks and dangers of the diversion of prescription narcotics when the supply chain is not properly controlled"); ¶ 518 ("Defendants breached these duties by failing to: (a) control the supply chain; (b) prevent diversion; (c) report suspicious orders; and (d) halt shipments of opioids in quantities they knew or should have known could not be justified and were indicative of serious problems of overuse of opioids"), and that the National Retail Pharmacies are being sued for their particular role in that supply chain. *See, e.g.,* SAC ¶ 572 ("Each participant in the supply chain of opioid distribution, including the

National Retail Pharmacies, is responsible for preventing diversion of prescription opioids into the illegal market by, among other things, monitoring, and reporting suspicious activity."); SAC ¶ 583 ("the National Retail Pharmacies also failed to adequately use data available to them to identify doctors who were writing suspicious numbers of prescriptions and/or prescriptions of suspicious amounts of opioids, or to adequately use data available to them to do statistical analysis to prevent the filling of prescriptions that were illegally diverted or otherwise contributed to the opioid crisis."); SAC ¶ 587 ("The National Retail Pharmacies were, or should have been, fully aware that the quantity of opioids being distributed and dispensed by them was untenable, and in many areas patently absurd; yet, they did not take meaningful action to investigate or to ensure that they were complying with their duties and obligations under the law with regard to controlled substances.").

The SAC is clear that Broward's claims arise from Defendants' role in the distribution and *sale* of opioids. *See, e.g.,* SAC ¶ 984 (defendants violated Florida law "[i]n the distribution and sale of opioids in Plaintiff's communities"); SAC ¶ 471 ("First, under the common law, the Defendants had a duty to exercise reasonable care in delivering dangerous narcotic substances. By flooding Florida with more opioids than could be used for legitimate medical purposes and by filling and failing to report orders that they knew or should have realized were likely being diverted for illicit uses, Defendants breached that duty and both created and failed to prevent a foreseeable risk of harm."); SAC ¶ 700 ("The Defendants were deliberate in taking steps to conceal their conspiratorial behavior and active role in the deceptive marketing and the oversupply of opioids through overprescribing and suspicious sales, all of which fueled the opioid epidemic."). It is the common law and statutory duties applicable to all participants in the supply chain for these dangerous substances that give rise to Broward's claims, rather than any obligations imposed specifically on dispensaries.

As Broward alleged, the National Retail Pharmacies were well positioned, "from the catbird seat of their retail pharmacy operations," to recognize the "disproportionate flow of opioids into

Florida" and elsewhere around the country. SAC ¶ 614. As retailers, they are an essential part of the supply chain that knowingly deposited excessive quantities of opioids in Broward's Community. Broward has properly sued them for that role and for their failure to properly carry out the duties imposed on all participants in that supply chain.

### E. The Municipal Cost Recovery Doctrine Does Not Bar Broward's Claims

Defendants urge dismissal of Broward's claims based on the municipal cost recovery doctrine. *Pharm. Mot.* at 5, *Dist. Mot.* at 15–16 and *Manu. Mot.* at 7. Contrary to Defendants' arguments, there is no Florida precedent or persuasive authority supporting application of the municipal cost recovery doctrine to bar Broward's recovery here.

The *only* Florida case cited by Defendants involving the municipal cost recovery rule is *Penelas v. Arms Tech., Inc.*, No. 99-1941 CA-06, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999). *Penelas* is a Florida trial court case and therefore lacks any precedential value. *See Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089 (6th Cir. 2016) (federal court applying state law does so in accordance with the controlling decisions of state's highest court); *see also Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009) (same). Notably, decisions of Florida trial courts are not binding on fellow trial courts. *State v. Bamber*, 592 So. 2d 1129, 1132 (Fla. Dist. Ct. App. 1991) (trial court rulings not precedent "even in the adjacent courtroom"); *Williams v. McDonough*, No. 4:03cv264-SPM/AK, 2006 WL 2849714 *2 n.2 (N.D. Fla. 2006).

In *Penelas*, Miami-Dade County sued gun manufacturers seeking to recover costs incurred in providing police, fire, emergency, court, prison, and other related services as a result of widespread shootings in the county. *Penelas*, 1999 WL 1204353 at *1. The county also sought damages for lost tax revenues and property value, as well as permanent injunctive relief requiring defendants to change the design of their products and the manner in which they were distributed. *Id.* The trial court granted the defendants' motions to dismiss the amended complaint with prejudice based

principally on standing, preemption, and failure to state claims for product liability, negligence and nuisance. *Id.* at *2–4. The order included a three-sentence paragraph that stated an additional basis for dismissal was "[n]o Florida statute authorizes the County to seek recovery for its costs of services provided," citing two non-Florida cases. *Id.* at *2. The paragraph did *not* refer to or identify the "municipal cost recovery rule."

Florida's Third District Court of Appeal—an intermediate state court of appeal—affirmed dismissal on the grounds that the county failed to state a claim for strict liability, finding the firearm manufacturers and dealers had no duty to prevent the sale of firearms, and that the county's request for injunctive and declaration relief was proscribed by a Florida statute that expressly reserved to the state legislature the entire field of firearm and ammunition regulation. *Penelas v. Arms Technology, Inc.*, 778 So. 2d 1042, 1045 (Fla. Dist. Ct. App. 2001). The appellate court did *not* mention, let alone address, the trial court's additional basis for dismissal of plaintiff's request for the costs of services provided. *Id.*

Since neither the Florida Supreme Court nor any Florida intermediate appellate court has addressed this issue—and the sole trial court order does not offer any meaningful analysis—there is no binding or persuasive authority that Florida law would foreclose Broward's request for relief based on the municipal cost recovery rule. *See Whitlock,* 843 F.3d at 1089; *Bravo,* 577 F.3d at 1325; *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004); *Risley v. Nissan Motor Corp. USA*, 254 F.3d 1296, 1299 (11th Cir. 2001).

But even if the Court deemed the Municipal Cost Recovery Rule applicable under Florida law, it would not bar Broward's claims for relief here. As discussed extensively in *Cabell*, neither equitable or statutory damages are affected by the Rule and the damages sought here are so unusual and beyond that which Broward would normally have been expected to anticipate that barring such relief would be inappropriate. This is particularly so at the pleading stage, before the parties have an

- 15 -

opportunity to put forward evidence on the question of damages.  *See Cabell* Opp. at § 2.C; *Monroe*

Opp. at § III.D; *Chicago Manu.* Opp. at 36–37; *Chicago Pharm.* Opp. at § II.C.2.

## II.    Broward Has Properly Pleaded Every Claim It Asserted

### A.    Broward Asserted an Actionable Public Nuisance Claim

A public nuisance is an "unreasonable interference with a right common to the general

public, such as a condition dangerous to health, offensive to community moral standards, or

unlawfully obstructing the public in the free use of public property." *Nuisance*, *Black's Law Dictionary*

(10th ed. 2014).  A public nuisance violates public rights, subverts public order, decency or morals or

causes inconvenience or damage to the public generally.  *Orlando Sports Stadium, Inc. v. Florida*, 262 So.

2d 881, 884 (Fla. 1972).  Florida courts have repeatedly held that the determination of what

constitutes a public nuisance is fact-intensive and must be made on a case-by-case basis.  *Id.* (citing

66 C.J.S. Nuisances § 102) ("It has been said that an attempt to enumerate all nuisances would be

almost the equivalent as an attempt to classify the infinite variety of ways in which one may be

annoyed or impeded in the enjoyment of his rights.").

Florida law recognizes that anything that threatens the public health and welfare—including

a medical epidemic—can be a public nuisance.  The Florida Supreme Court has declared that public

nuisance doctrine can be employed to "protect the public health, morals, safety and welfare." *Estep*

*v. State*, 156 Fla. 433, 434 (Fla. 1945) (citing, *inter alia*, *State v. Howard*, 214 Iowa 60 (Iowa 1932)

("Whatever is injurious to health . . . is a nuisance . . . . Death, insanity, great bodily injury, or the

spread of epidemics may result from the care of a patient by a physician who is unskilled.  The very

purpose and object of the law under consideration is to promote the public health and protect the

public generally[.]"); *see also Prior v. White*, 132 Fla. 1, 20 (Fla. 1938) ("Laws in substance define

a nuisance to consist in unlawfully doing an act or in omitting to perform a duty which either

annoys, injures or endangers the comfort, health, repose or safety of the citizen, or which unlawfully

interferes with or tends to obstruct, or in any way render unsafe and insecure other persons in life or in the use of their property.  Such commission or omission becomes a public nuisance when it affects an entire community or any considerable number of persons.") (quoting 3 *McQuillin on Municipal Corporations* 122 (2d ed. 1934)).

Broward alleged that Defendants created, perpetuated, and maintained the opioid epidemic public health crisis.  *See* SAC ¶¶ 141–42.  Broward thus pleads a cognizable nuisance claim.

Contrary to Defendants' first argument, a public nuisance need not have any connection to the use and enjoyment of property.  *Estep*, 156 Fla. at 434 (declaring the practice of medicine without a license to be a public nuisance) (citing, *inter alia*, *New Mexico ex rel. Marron v. Compere*, 103 P.2d 273 (New Mexico 1940) ("[I]t is generally held that an injunction will be granted to restrain acts amounting to a public nuisance if they affect the civil or property rights or privileges of the public or the public health, whether such acts be denounced as crimes or not.")); Restatement (Second) of Torts § 821B(2)(b), cmt. h ("Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land.");[13] 7 Am. Law of Torts § 20:516

 (citing *Freeman v. Grain Processing Corp.*, 848 N.W.2d 58, 66–67 (Iowa 2014), *cert. denied*, 135 S. Ct. 712 (Dec. 1, 2014)).

Nor are Defendants correct that their actions, which created and fueled a major public health epidemic, cannot constitute a public nuisance as a matter of law.  Defendants again rely only on *Penelas*, in which the Florida trial court held that a products liability case cannot simultaneously allege nuisance under Florida law.  Central to that court's conclusion was that the gun manufacturers had no control over the criminal acts of third parties, using the manufacturers' lawful products.  *Penelas*, 1999 WL 1204353, at *4.  Not only does that case lack any precedential or persuasive value,

---

[13] While the term "nuisance" is often loosely used to encompass both public nuisance and private nuisance actions, the two claims are distinct. As explained in *Orlando Sports Stadium, Inc.*: "A public nuisance violates public rights, subverts public order, decency or morals or causes inconvenience or damage to the public generally." *Orlando Sports Stadium, Inc.*, 262 So. 2d at 884.

*see, supra*, Sec. I.E, but the allegations in this case are manifestly distinguishable: the harms arising from Defendants' fraudulent promotion and improper distribution and sale of opioids do not arise from *misuse* of these products by unforeseen actors, as is the case with the criminal misuse of firearms.  The use of opioids—by law-abiding, non-negligent pain patients, in precisely the manner intended by Manufacturer Defendants—itself gives rise to addiction and all of the associated ills (including abuse and diversion) that afflict Broward's community.  Moreover, Broward does not assert a products liability claim.  Rather, Broward alleged an intentional, systematic fraudulent scheme by Defendants that was intended to misrepresent the safety risks of prescription opioids and foster widespread and excessive opioid prescribing and addiction to inflate Defendants' revenues.  The prescription drugs at issue in this case, and the third parties whose acts are alleged in the Complaint—doctors, pharmacists, and prescription drug users—are mere instrumentalities of the fraud.  *See, e.g.*, ¶¶ 14–19, 119, 146, 148–49, 181, 219, 227, 262, 441, 481.  Nothing in *Penelas* precludes the assertion of a nuisance claim where the nuisance was caused by widespread fraud.

Defendants' second contention—that Broward cannot bring a nuisance action involving a regulated industry—is likewise mistaken.  *Dist. Mot.* at 9; *Manu. Mot.* at 6.  Defendants have manufactured this purported "safe harbor" out of whole cloth: they cite no case that uses that term. *Manu. Mot.* at 6.  On the contrary, Florida courts recognize that an "activity can constitute a judicially abatable nuisance notwithstanding full compliance with either legislative mandate or administrative rule." *Lombardozzi v. Taminco US, Inc.*, Case No. 3:15cv533, 2016 WL 4483856, *11 (N.D. Fla. 2016). Indeed, in *Estep*, the Florida Supreme Court held that a defendant's failure to comply with a regulatory scheme—medical licensing—was a nuisance *per se* because it could lead to the spread of disease, interfering with public health.  *Estep*, 156 Fla. at 434–35.  Under Florida law, a nuisance claim can clearly be asserted against a regulated industry.

Unlike the gun manufacturers in *Penelas*, meanwhile, Broward does not ask this Court to regulate Defendants' otherwise lawful conduct through the back door of litigation. 778 So. 2d at 1045. Instead, Broward seeks to hold Defendants accountable for their illegal and fraudulent acts, already in violation of numerous regulations,[14] which interfered with a public right by creating and fueling an epidemic of opioid addiction. These actions in fostering an addiction epidemic violate public rights, subvert public order, decency and morals, and cause inconvenience or damage to the public generally—notwithstanding the fact that they involve an otherwise lawful, regulated activity (*i.e.*, the production and distribution of pharmaceuticals). *See Orlando Sports Stadium*, 262 So. 2d at 884–85 (allegations that a sports stadium was being used as a meeting place for drug users were sufficient to state a cause of action for public nuisance). Under Florida law, it is appropriate to bring claims against the party alleged to have created a nuisance; here, the action is brought against the perpetrators of a fraudulent scheme that involves legal pharmaceuticals manufactured and distributed in an unlawful manner.

Third, Broward has alleged interference with a public right, notwithstanding Defendants' arguments to the contrary. *Dist. Mot.* at 10. The SAC details a series of acts and omissions causing an epidemic that unreasonably interferes with the public health—a recognized public right under Florida law. *See* SAC ¶¶ 455, 643, 710, 932. Defendants' arguments have been rejected in two other opioid cases and should be likewise rejected here.[15]

---

[14] *See infra* section V.B.3.b.4. on negligence *per se*.

[15] *See In re: Opioid Litig.*, Index No. 40000/2017, *slip op* at 28, (N.Y. Sup. Ct. June 18, 2018), where the court rejected the argument that the plaintiffs failed to allege interference with a public right. Explaining that "it suffices to note the defendants' failure to establish why public health is not a right common to the general public, nor why such continuing, deceptive conduct as alleged would not amount to interference; it can scarcely be disputed, moreover, that the conduct at the heart of this litigation, alleged to have created or contributed to a crisis of epidemic proportions, has affected a considerable number of persons." *See also West Virginia, ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, No. 12-C-141 (W. Va. Cir. Ct. Dec. 12, 2014), at 19 (finding that the State's allegations that Defendants interfered with West Virginians' common right "to be free from unwarranted injuries, addictions, diseases and sicknesses and have caused ongoing damage, hurt or inconvenience to West Virginia residents exposed to the risk of addiction to prescription drugs, who have

1583751.17

Fourth, Defendants' claim that they cannot be held liable for nuisance because they do not have "control of the activity that creates the nuisance" relies on a contorted reading of Broward's SAC and Florida case law.  *Dist. Mot.* at 10; *Pharm. Mot.* at 9–10; and *Manu. Mot.* at 6–7.  This is not a case in which Broward alleged "criminal or reckless misuse of [products] by third parties who are beyond the control of the defendants," *Penelas*, 1999 WL 1204353, at *4, nor did the *Penelas* plaintiffs contend that the firearms manufacturers and others defendants engaged in a fraudulent and deceptive scheme to misrepresent the safety and risks of firearms.  Here, in contrast, the Complaint specifically alleged that the Marketing Defendants both affirmatively misrepresented and withheld crucial information regarding the addictive nature of the drugs they sold, leading directly to a vast increase in prescribing and use.  Even now, despite having the ability to change course, the Marketing Defendants have failed to provide complete, accurate information about the addictive nature of their drugs.  *See, inter alia,* SAC ¶¶ 18, 698, 701–705.  Similarly, the Supply Chain Defendants have had complete control over their own behavior, but instead they allowed the vastly increased supply of prescription opioids to wreak havoc in Broward and elsewhere.  Broward alleged that the Supply Chain Defendants were required to serve as gatekeepers of the closed system designed to restrict those controlled substances they were entrusted with.  Broward claimed that Defendants failed to monitor and restrict that flow as required.  *See* SAC ¶¶ 458, 466, 475, 523, and 539.  Defendants cannot credibly argue that they did not control their own actions.  *Id.* at 544 ("[G]iven the closeness with which Defendants monitored prescribing patterns through IMS Health data, it is highly improbable that they were 'fooled.'").  And to the extent they made such an argument, they would only raise a factual issue, not a basis for dismissal.

---

become addicted, and/or have suffered other adverse consequences from the use of the addictive prescription drugs distributed by Defendants, and countless others who will suffer the same fate in the future as Defendants' conduct is continuing" sufficiently alleged a right "common to the general public" and public nuisance.).

Broward's public nuisance claim is properly pled under Florida law, under which any nuisance determination is inherently fact-bound and a public health epidemic can constitute a public nuisance as a matter of law.  Dismissal of this fact-intensive claim at the pleading stage would be improper.

### B.  Broward Properly Pleaded Negligence

#### 1.  Broward Properly Pleaded the Existence of a Duty

Defendants argue that they had no duty of reasonable care at common law and no duty under any federal or state enactments.  They are wrong on both accounts.

##### a.  Defendants Owed Broward A Common Law Duty of Care

Negligence is "a failure to exercise the degree of care demanded by the circumstances." *Smith v. Hinkley*, 123 So. 564, 566 (Fla. 1929).  In Florida, duty turns on whether a defendant's action creates a "generalized and foreseeable risk of harming others."  *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502–03 (Fla. 1992) ("The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others.") (citing *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989)).

A legal duty can ordinarily arise from four sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case."  *Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1180 (Fla. Dist. Ct. App. 2008).  The Florida Supreme Court has emphasized flexibility, cautioning that changes in society may give rise to new conceptions of duty.  *Williams v. Davis*, 974 So. 2d 1052, 1061 (Fla. 2007); *see Knight v. Merhige*, 133 So.3d 1140, 1149–50 (Fla. App. Ct. 2014).  Duty is a "*minimal* threshold legal requirement for opening the courthouse doors."  *Wallace v. Dean*, 3 So.3d 1035, 1046 (Fla. 2009).  And while duty is a

question of law, questions of foreseeability "are fact-dependent." *Demelus v. King Motor Co. of Fort Lauderdale*, 24 So.3d 759, 766 (Fla. Dist. Ct. App. 2009).

Defendants contend they did not owe a duty to Broward. This is incorrect. The Complaint explains at great length the duty of care Defendants' owed to Broward as a result of their creation of an unreasonable risk of harm, including by (1) creating a foreseeable opportunity for wrongful conduct by third parties, (2) occupying a special relationship as manufacturers, distributors, or dispensers, respectively, of pharmaceutical opioids purchased by Broward, and (3) having superior and exclusive knowledge of the dangerous and addictive properties of opioids. *See* SAC ¶¶ 557, 567, 682, 785, 949–51. Broward alleged that the sale and distribution of prescription opioids are closely monitored and regulated because of the clear public health danger presented by the manufacturing and distribution of these drugs. *See* SAC at ¶¶ 701, 743, 777–79. Given the widespread recognition of these dangers, it was entirely foreseeable that if not marketed, distributed, and sold with requisite care, opioids could cause serious harm to third parties. *Id.*

In fact, the potential that opioids could cause widespread harms to communities was so foreseeable that federal and state laws were enacted in an effort to prevent harms such as including addiction, abuse, and diversion from occurring. Indeed, the DEA repeatedly reminded Defendants of their obligations and the need to prevent abuses and diversion and advised them that their responsibility was critical as "the illegal distribution of controlled substances has a substantial and detrimental effect on *the health and general welfare of the American people*" and that "even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm." *See* SAC ¶ 493.

Broward alleged that Defendants were in fact aware of the risk associated with their oversupply of prescription opioids and of the likelihood of diversion but chose instead to disregard it in favor of greater profits. *See, e.g.,* SAC ¶ 542 ("[M]anufacturers were keenly aware of the doctors

- 22 -

who were writing large quantities of opioids.  But instead of investigating or reporting those doctors, Defendants were singularly focused on maintaining, capturing, or increasing their sales."); ¶ 568 ("National retail pharmacy chains . . . were keenly aware of the oversupply of prescription opioids through the extensive data and information they developed and maintained as both distributors and dispensaries."); ¶ 693 ("[Marketing and Supply Chain] Defendants were aware, both individually and collectively aware of the suspicious orders that flowed directly from Defendants' facilities."); ¶ 786 ("Supply Chain Defendants were aware of suspicious orders of prescription opioids and the diversion of their prescription opioids into the illicit market.").[16]

Broward plausibly pleaded that Defendants' duty of care arises from the foreseeability of the risk of harm to Broward, the special position they occupy, and their superior knowledge of the risks of pharmaceutical opioids when marketed and distributed without due care.  Because Broward alleged that Defendants owe it a common law duty to use reasonable care in the marketing, manufacture, distribution, and sale of opioids, the negligence claims alleged in counts 7, 8, and 9 should not be dismissed.

---

[16] Defendants' reliance on *Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1354 (S.D. Fla. 2003), is misplaced.  In *Labzda*, the court rejected parent plaintiffs' attempt to demonstrate Purdue's negligence arising from the Oxycontin prescribing practices of a specific physician, leading to the overdose death of their adult son.  The differences between that case and this one are legion.  First, *Labzda* was decided at summary judgment, when the "fact-intensive" existence of a duty could be evaluated on a full record, not dismissed at the pleading stage, as Defendants request here.  Second, the plaintiffs in *Labzda* argued that a special relationship existed between a pharmaceutical company and a doctor, such that the pharmaceutical company "had a duty to control his activities."  The Magistrate Judge rejected that argument, holding that the pharmaceutical defendants had no "duty to the public" to "police their products.  Broward does not make the same argument.  Rather, it alleged a deliberately broad organized scheme to defraud doctors, the medical community in general, and the public by misrepresenting the safety risks of prescription opioids and fostering widespread opioid prescribing and addiction to inflate Defendants' revenues.  Had the *Labzda* plaintiffs proffered evidence that Purdue knowingly and intentionally created a scheme to deceive well-meaning doctors and patients into, respectively, prescribing and taking opioids, the duty analysis would be substantially different.  Finally, the *Labzda* plaintiffs did not appear to argue, and the Court did not consider, the Restatement (Second) § 302B approach under which an actor who creates a foreseeable risk of harm has a duty of care corresponding to that harm.  *Labzda* involves the same product but vastly different allegations, actors, and legal arguments—and was ruled on in a significantly more advanced procedural posture.

### b. The Foreseeable Conduct of Others Does Not Negate Defendants' Duty

When defendants' conduct creates a foreseeable risk, the law will recognize a duty to either lessen the risk or a duty to see take sufficient precautions to protect others from the harm that the risk poses. *McCain*, 593 So. 2d at 503 (citing *Kaisner,* 543 So. 2d at 735 (citing *Stevens v. Jefferson,* 436 So. 2d 33, 35 (Fla. 1983))[17]; *see Webb v. Glades Elec. Coop., Inc.,* 521 So. 2d 258 (Fla. Dist. Ct. App. 1988). The law imposes a duty in order "to ensure that the underlying threatening conduct is carried out reasonably." *U.S. v. Stevens*, 994 So. 2d at 1066–67 (citing *McCain*).

Defendants have a duty to anticipate and guard against foreseeable risks, whether those risks involve negligent and reckless acts of third parties, *see, e.g.*, *Nicolodi v. Harley-Davidson Motor Co.*, 370 So. 2d 68, 70 (Fla. Dist. Ct. App. 1979), or foreseeable intentional and criminal acts of third parties, *see, e.g.*, *Knight*, 133 So.3d at 1148–49 (noting that a third party's criminal conduct will be foreseeable if "the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a . . . crime." (citing Restatement (Second) of Torts § 448 (1965))). Here, the risks of addiction—and the ills that flow from it—were an entirely foreseeable consequence of Manufacturer Defendants' fraudulent promotion of opioids, and, in particular, of their misrepresentations specifically about the risks of addiction. Because even lawful use of opioids as prescribed so frequently leads to addiction, no negligent or reckless conduct of anyone (other than Defendants) was necessary to cause the harms for which Broward seeks redress. Nor can there be any claim that diversion is an unforeseeable consequence of the failure properly to control the supply chain—the entire structure of regulation for opioids exists precisely because such diversion is a foreseeable concern.

---

[17] "[R]eliance on the *McCain* foreseeability test [is] appropriate because [the Florida Supreme Court] had intended *McCain* to function as a restatement of the law of negligence." *Williams v. Davis*, 974 So. 2d 1052, 1058 (Fla. 2007) (quoting *Whitt v. Silverman*, 788 So. 2d 210, 218 (Fla. 2001)).

Defendants argue that they have no duty of care to Broward and no duty to control third parties in the absence of a special relationship. *Dist. Mot.* at 12–13; *Pharm. Mot.* at 6–8. This ignores well-settled Florida law which instead evaluates duty based on the foreseeability of harm to others and the risk of the defendants' conduct. As Broward has alleged in the SAC, because of Defendants' widespread scheme to create, expand, and fail to monitor the market for both legal and illegal, addictive opioids, such criminal conduct was not only foreseeable, but in fact, it was made more likely. Defendants created the very addiction problems that Broward has been forced to solve. *See, e.g.,* SAC ¶¶ 12, 20, 33–35, 168, 259, 292, 358, 475–487; *see also Summit* Opp. at 82–85.

Florida law recognizes a legal duty even when defendants who have no direct relationship with the plaintiff engage in conduct that "pose[s] a threat of harm to unidentified third parties." *Dent v. Dennis Pharm., Inc.*, 924 So. 2d 927, 929 (Fla. Dist. Ct. App. 2006) (citing *McCain*, 593 So. 2d at 502); *accord Estate of Johnson ex rel. Johnson*, 983 So. 2d at 1186.[18] Key to this analysis is "the defendant's exclusive knowledge of the risk and the inability of potential victims to protect themselves." *Cook v. MillerCoors, LLC*, 829 F. Supp. 2d 1208, 1217 (M.D. Fla. 2011). No special relationship is required. *See, e.g., Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995) (observing that "lack of privity does not necessarily foreclose liability if a duty of care is otherwise established" (listing cases)).

Indeed, Florida imposes a duty of reasonable care to guard against criminal conduct by third parties—even unknown third parties—where the criminal conduct is foreseeable to the defendant. The Restatement explicitly notes that a defendant's conduct may be negligent if "the defendant realizes, or should realize, that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, *even though such conduct is*

---

[18] *See also Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1192 (Fla. 2003) (Pariente, J., concurring) ("The principle that the obligation to exercise reasonable care in the performance of a contractual duty extends to third parties who may be foreseeably injured and not just to those in privity of contract is a bedrock principle of modern tort jurisprudence.").

*criminal.*" Restatement (Second) of Torts § 302B (1965); *U.S. v. Stevens,* 994 So. 2d at 1067; *Knight*, 133 So.3d at 1148.

Florida also imposes a duty to guard against foreseeable illegal conduct by unknown third parties when one actor simply has superior knowledge to the other. In *Shurben v. Dollar Rent-A-Car*, the appellate court found that a rental car company had a duty to warn a British tourist visiting Miami of foreseeable criminal conduct—namely that in certain areas of the city, unknown criminals were targeting rental car drivers—even though they had no "special relationship" with each other. 676 So. 2d 467 (Fla. Dist. Ct. App. 1996). The court held a duty of ordinary care arose with respect to third-party criminal conduct because the rental car company had superior knowledge of the situation and actual knowledge of the crime problems. *Id.*; *see Demelus v. King Motor Co. of Fort Lauderdale*, 24 So.3d 759, 764 (Fla. Dist. Ct. App. 2009).

Even absent a "special relationship" or superior knowledge, Florida imposes an ordinary duty of reasonable care on a company that creates an unreasonable risk of harm by creating a foreseeable opportunity for third-party criminal conduct, consistent with the Restatement's approach. *Stevens*, 994 So. 2d at 1067 (citing Restatement (Second) of Torts §§ 302–302B (1965)); *see also* Restatement (Second) of Torts § 302B, cmt. e (providing examples of actions sufficient to sustain liability, including where "the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account"); *Knight*, 133 So.3d at 1148–49 (recognizing the Restatement § 302B "creation of risk" approach but holding on public policy grounds that extended family members do not owe each other a legal duty to guard against foreseeable criminal acts of other family members).

In *Stevens*, the Florida Supreme Court answered a certified question from the Eleventh Circuit, finding that a laboratory that worked with anthrax owed an ordinary duty of care even to unknown members of the general public to avoid the unauthorized access and dissemination of

anthrax by criminals.  Florida law "clearly recognize[es] that negligence liability may be imposed on the basis of affirmative acts which create an unreasonable risk of harm by creating a foreseeable opportunity for third party criminal conduct, even though there is no 'special relationship' between the parties that independently imposes a duty to warn or guard against that misconduct."  994 So. 2d at 1068.  Where a company takes steps that create an unreasonable risk of harm, it creates a foreseeable opportunity for criminal conduct by unknown third parties—precisely the fact pattern alleged in Broward's Complaint, which sets out myriad affirmative acts by Defendants that foreseeably created a risk of third-party criminal conduct.  *See, e.g.*, SAC ¶¶ 557–72, 628, 776, 949–51.

Another federal district court recently rejected an opioid Defendant's attempt to evade liability on similar "no duty" grounds in a motion to dismiss.  In *City of Everett v. Purdue Pharma L.P.*, the Court found that the City of Everett, Washington "adequately pled that Purdue engaged in an affirmative act which created or exposed Everett to a high degree of risk of harm.  If Everett is able to prove these allegations, they trigger a legal duty under [Restatement] Section 302B and Washington law."  No. C17-209RSM, 2017 WL 4236062, at *4 (W.D. Wash. Sept. 25, 2017). Broward has likewise alleged the existence of a common-law duty under § 302B and Florida law and should be permitted to prove its claim.

## 2. Broward Does Not Seek to Enforce Statutory Duties

All Defendants argue that Broward's claims should be dismissed because there is no private right of action to enforce the statutes and regulations referred to in the SAC.  But Broward does not seek to enforce Defendants' statutory and regulatory duties.  Rather, as explained above, Defendants' duty is grounded in traditional Florida common law principles.

It is true that the SAC references the federal CSA and similar Florida statutes governing the manufacture, marketing, and distribution of opioids.[19] But the SAC references such statutes and regulations as informing the standard of care, *see, e.g.*, SAC ¶ 482, and to show the foreseeability of the harms that flowed from Defendants' breach of their duties, *see, e.g., id* ¶ 20, 471, 834. Defendants' liability here arises from their failure to use reasonable care under the circumstances, not from their specific failure to abide by these federal or state statutes.  Moreover, and contrary to Defendants' suggestion, the existence of a parallel statutory duty does not in any way undermine an existing common law claim; it would be illogical for a party to gain immunity for otherwise actionable negligence because the legislature has also recognized, and chosen to regulate, the same dangers the common law requires him to protect against.[20]

Instead, the statutes provide a standard of care for the underlying common law duty by establishing how a reasonable manufacturer or distributor of dangerous drugs would and should behave under the circumstances.  Violations of statutes or ordinances may either prove negligence *per se* or can be utilized as evidence of negligence.  *deJesus v. Seaboard Coast Line R. Co.*, 281 So. 2d 198, 201 (Fla. 1973); *accord Godelia v. Doe 1*, 881 F.3d 1309, 1318 (11th Cir. 2018); *see also* Fl. Jury Instr. 401.9 (Violation of Statute, Ordinance, or Regulation as Evidence of Negligence); *see also Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. Dist. Ct. App. 2014) ("Florida courts permit proof of a statutory violation to serve as *prima facie* evidence of negligence because 'the standard of conduct or care embraced within such [a] legislative . . . measure [ ] represent[s] a standard of at least reasonable care which

---

[19] Broward does not allege violations of statutes or regulations applicable specifically to retailers who sell opioids. To the extent that Pharmacy Defendants also act as distributors, however, they may be subject to requirements under the CSA and Florida law applicable to distributors.

[20] Significantly, Defendants may be liable in negligence even if they *did* meet their statutory guidelines. Pharmaceutical personal injury cases present a helpful analogy. Persons injured by a drug manufacturer's failure to provide adequate warnings may sue even if the manufacturer met its FDA labeling obligations, because state common law may set higher standards of care than the one set by the FDA. *See Wyeth v. Levine*, 555 U.S. 555 (2009).

- 28 -

should be adhered to in the performance of any given activity.'")[21]  This is not an unusual

proposition: at least one Manufacturer Defendant has previously argued that its duties in a state-law

negligence case are "squarely controlled" by statute.  *See Brown v. Endo Pharm., Inc.*, 38 F. Supp. 3d

1312, 1319 n.5 and accompanying text (S.D. Ala. 2014) (distinguishing *Labzda*).

Defendants' arguments also betray their misunderstanding of Broward's assertion of

negligence *per se*.  *See Summit* Opp. at 77–78.  In Florida, negligence *per se* has long been recognized as

"a violation of [a] statute which establishes a duty to take precautions to protect a particular class of

persons from a particular injury or type of injury."  *Romer v. Stryker Corp.*, Case No: 2:18-cv-19-FtM-

99MRM, 2018 WL 1496971, at *3 (M.D. Fla. 2018) (citing *deJesus*, 281 So. 2d at 200).  Broward is not

seeking to directly enforce the statutory or regulatory obligations that Defendants' conduct has

violated, as Defendants suggest.  *See Dist. Mot.* at 12; *Manu. Mot.* at 8.[22]  It instead seeks to prove that

Defendants' conduct in violating these statutes breached its common law duty of care and was *per se*

negligence.

The Court cannot determine at this time whether Defendants' breaches of their statutory

duties, such as those under the CSA or Florida's CSA, conclusively establish negligence *per se* or are

merely evidence of Defendants' breach of their common law duties.  Florida courts are "especially

cautious" about making determinations at law regarding negligence because ordinarily such

questions are left for the trier of facts.  *Bruno v. Destiny Transp., Inc.*, 921 So. 2d 836, 840 (Fla. App.

---

[21] *See also* cmt. 1 to Fl. Jury Instr.401.8 ("When the legislative authority enacts such a statute or ordinance, it thereby prescribes a minimum standard of reasonable care to which every reasonably careful person will adhere.  The jury is not at liberty to determine that the violation of such a standard is not negligence.") (citing, inter alia, *Richardson v. Fountain*, 154 So. 2d 709 (Fla. Dist. Ct. App. 1963)).

[22] Manufacturer Defendants' reliance on the *Markland v. Insys* case is also not persuasive.  *Manu. Mot.* at 8; *Markland v. Insys Therapeutics, Inc.*, 270 F. Supp. 3d 1318, 1331 (M.D. Fla. 2017).  Again, Broward does not seek recovery for the violations of the FDCA regarding off-label promotion, but for Defendants' fraudulent and/or negligent conduct in marketing and selling their dangerous and addictive products.  Defendants' violations of the FDCA serve as evidence of their failure to follow the applicable duty of care.

Ct. 2006); see also 49 Fla. Jur 2d Summ. J. § 21 at fn. 1–4 (citing cases).  Thus, dismissal is not warranted.[23]

### 3. The SAC Sufficiently Pleaded that Broward's Injuries Were Proximately Caused by Defendants' Conduct

Florida law defines proximate cause in the context of a negligence action[24] as an act or failure to act that "directly and in natural and continuous sequence produces or contributes substantially to producing" a loss, "so that it can reasonably be said that, but for the negligence, the [loss] would not have occurred."  Fla. Civ. Jury Instr. 401.12(a).  To be a legal cause of a plaintiff's loss, "negligence need not be the only cause.  Negligence may be a legal cause of [the loss] even though it operates in combination with [the act of another] if the negligence contributes substantially to producing [the loss]."  *Id.* 401.12(b).  This includes an intervening cause: negligence may be a legal cause of injury "even though it operates in combination with [some other cause] occurring after the negligence occurs if such other cause was itself reasonably foreseeable and the negligence contributes substantially to producing [the loss] or the resulting [loss] was a reasonably foreseeable consequence of the negligence and the negligence contributes substantially to producing it."  *Id.* 401.12(c); *Ry. Express Agency, Inc. v. Garland*, 269 So. 2d 708 (Fla. Dist. Ct. App. 1972) (Where an intervening act is probable or foreseeable, the causal connection is not broken.).[25]

Under Florida law, questions of proximate cause and whether a defendant's negligence was a substantial factor in causing injury are questions for the jury, unless reasonable people could not

---

[23] Defendants cite distinguishable insurance-law cases that do not discuss negligence *per se* nor implicate a statute that protects the public health and welfare.  *See, e.g.*, *Lemy v. Direct Gen. Fin. Co.*, 559 F. App'x 796, 799 (11th Cir. 2014) (upholding dismissal of common-law claims seeking to enforce violations of insurance regulations) and *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 910 (11th Cir. 2008) (same).

[24] Defendants also argue that their proximate cause arguments justify dismissal of Broward's nuisance claim. *See Manu. Mot.* at 6; *Dist. Mot.* at 16–17; *Pharm. Mot.* at 3–5.  Thus, Broward also adopts this argument as applicable to the nuisance claim.

[25] The same causation instructions also govern a products liability action. While Defendants repeatedly attempt to characterize this case as a products liability action, it is not pleaded as such.  The Complaint pleads a fraudulent scheme intended to deceive and foster addiction to increase drug sales, not a product design or manufacturing defect. *See* Fla. Civ. Jury Instr. 403.12 (Legal Cause in a Products Liability Action).

- 30 -

differ. *Simon v. Shearson Lehman Bros.*, 895 F.2d 1304, 1316 (11th Cir. 1990) ("Issues of causation are problematic and, under most circumstances, should be left to the jury"); *Tardif v. PETA*, 829 F. Supp. 2d 1219 (M.D. Fla. 2011); *deJesus*, 594 F. Supp. (quoting *McCain*, 593 So. 2d at 503–04) ("The question of foreseeability as it relates to proximate causation must be left to the fact-finder to resolve.").

Defendants argue that Broward cannot establish that the alleged conduct of Defendants is the proximate cause of Broward's injuries because: (1) Florida's "sole proximate cause" doctrine requires that the misuse of a product is the only legally relevant proximate cause, *Pharms. Mot.* at 3; (2) the learned intermediary doctrine precludes a finding of proximate cause, *id.* at 4; and (3) the asserted causal chain is too attenuated. *Id.* at 4–5; *Manu. Mot.* at 6. Each argument fails as a matter of law, and is premature at the pleading stage.

### a. Defendants Misapply the Sole Proximate Cause Doctrine

The Florida Supreme Court has held that applying the sole proximate cause doctrine requires evidence of such a conclusive nature that reasonable minds could *only* find the plaintiff was the sole cause of harm. *Helman v. Seaboard Coast Line R. Co.*, 349 So. 2d 1187, 1190 (Fla. 1977) (holding it was an error for a lower court to apply this doctrine to displace a jury verdict when the defendant may have been partially responsible). This doctrine is the very limited exception to the rule that "one who is negligent is not absolved of liability when his conduct 'sets in motion' a chain of events resulting in injury to the plaintiff." *Gibson v. Avis Rent-A-Car Sys., Inc.*, 386 So. 2d 520, 522 (Fla. 1980).

Defendants mischaracterize Broward's case as a products liability action and then misapply the sole proximate cause rule outlandishly, claiming that—as a matter of law—their deceptive conduct in marketing and selling opioids can *never* be a legal cause of *any* plaintiff's injuries because their products were sometimes intentionally misused. Tort law does not immunize corporations

from accountability in this way, in Florida or elsewhere, and certainly not at the pleading stage. *Gibson*, 386 So. 2d at 522–23 (where the Florida Supreme Court quashed lower court's directed verdict for sole proximate cause and remanded with instructions for the trier of fact to apply comparative fault standards); *see also Helman*, 349 So. 2d at 1189 ("[T]he question of whether defendant's negligence was the proximate cause of injury is generally one for the jury unless reasonable men could not differ in their determination of that question.").

First, Broward's claims sound in nuisance, negligence, and collective fraud, not strict products liability. The Eleventh Circuit has held that the sole proximate cause doctrine does *not* apply to negligence actions or to actions sounding in negligence. In *Benitez v. Standard Havens Prods.*, 7 F.3d 1561, 1565 (11th Cir. 1993) ("*Benitez I*"), the Eleventh Circuit certified a question to the Florida Supreme Court: "Does a plaintiff's knowing misuse of a product in a manner neither intended nor foreseeable by the defendant manufacturer bar recovery, as a matter of law, on a products liability claim sounding in negligence?" The Florida Supreme Court readily concluded that under a long line of Florida cases, "product misuse is not an absolute bar to a products liability claim sounding in negligence." *Std. Havens Prods. v. Benitez*, 648 So. 2d 1192, 1197 (Fla. 1994) ("*Benitez II*"). Instead, the Court confirmed that "product misuse merges into the defense of comparative negligence" whereby the plaintiff's potential recovery is considered "in proportion to his or her own comparative fault. *Id.* Thereafter, the Eleventh Circuit affirmed a verdict in favor of the plaintiffs. *Benitez v. Standard Havens Prods.*, 43 F.3d 1433, 1434 (11th Cir. 1995) ("*Benitez III*"). In Florida, then, even *unforeseeable* misuse of a product does not bar recovery by a plaintiff.

Here, Broward alleged that its losses were *knowingly* and *foreseeably* caused by Defendants' conduct in deceptively marketing and selling pharmaceutical opioids. Broward's purported negligence—or some third party's negligence—is properly considered by the jury only in its comparative fault determination. *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 979 F.2d 823, 825 (11th

Cir. 1992) ("Florida law does not suggest that misuse will 'negate liability' as the district court instructed.  Instead, misuse is simply to be considered as part of the comparative fault calculus.") (Tjoflat, J.) (citing *Auburn Mach. Works Co. v. Jones*, 366 So. 2d 1167, 1171–72 (Fla.1979) and *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla.1976)); *accord Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1487 (11th Cir. 1994).[26]

Defendants point to a small handful of product defect cases that are factually and legally distinguishable, are procedurally inapposite, and have been rejected by courts under analogous circumstances.  *Clark v. Boeing* was rejected by the Eleventh Circuit in *Benitez I* because its "sole proximate cause" discussion concerned a claim of strict liability, not negligence, and its holding was "based on the particular facts of the case[,] . . . not on an absolute bar to recovery for knowing misuse." *Benitez I*, 7 F.3d at 1565; *Clark v. Boeing Co.*, 395 So. 2d 1226, 1229 (Fla. Dist. Ct. App. 1981).[27]  Writing an opinion concurring only in the judgment, one judges in *Clark* noted that the majority both misconstrued the complaint and misstated the law in concluding that knowing misuse of a product bars recovery.  Fortunately, the concurrence noted, the statement was "simply dictum." *Clark*, 395 So. 2d at 1230 n.1 (Schwartz, J., concurring).

The *Labzda* decision held–on a full record at summary judgment–that a decedent's *intentional* misuse of the defendant's product, *despite being warned previously against doing so,*  barred recovery under Florida's wrongful death statute.  *Labzda,* 292 F. Supp. at 1356.  It has never been cited approvingly for this proposition. The same Magistrate Judge who authored the *Labzda* Report and

---

[26] Moreover, as discussed above, patients may become addicted to opioids without any misuse by them whatsoever.  Once that occurs, all of the ills that accompany this addiction follow.  Defendants' fraudulent scheme to increase the volume of opioids prescribed and consumed in the United States and in Broward alone caused an increase in the number of persons addicted to these drugs, leading inevitably and foreseeably to the other harms associated with addiction.

[27] Importantly, as in all cases Defendants cite for this proposition, the *Clark* court found that the intentional misuse was the sole cause of injury because the misuse occurred after being warned of that particular danger. *Id.* at 1229. This is the exact opposite of Defendants' actions in this case as they spent decades hiding the true dangers of their products.

Recommendation later specifically limited *Labzda* to wrongful death cases, finding the case had "no bearing [on] the instant case for the obvious reason that [it] involve[s] the interpretation of state wrongful death statutes, not criminal violations of federal statutes dealing with fraud and misbranding of drugs. . . . The crimes alleged in this case are fraud and misbranding for monetary gain; the defendants are not charged with inflicting physical harm on, or causing the death of, any individual." *United States v. Livdahl*, 459 F. Supp. 2d 1255, 1265 (S.D. Fla. 2005) (distinguishing *Labzda*).  Here, much like the factual scenario underlying *Livdahl*, Broward alleged harms to itself caused by the Defendants' fraudulent conduct in violation of federal mail and wire fraud statutes. *Labzda* is plainly inapposite, particularly at the pleading stage.  None of these cases supports dismissal.

### b. Learned Intermediary Doctrine Does Not Disrupt Causation

Defendants argue that that the learned intermediary doctrine precludes a finding of proximate cause because a prescribing physician bears the burden of using proper judgment when prescribing medication to a patient and "has the task of weighing the benefits of any medication against its potential dangers." *Pharms. Mot.* at 4.  Other Plaintiffs have responded to this argument and Broward hereby incorporates those arguments.  *See Summit* Opp. at 45–50, 83–84; *Chicago Manu.* Opp. at 27–31; *Chicago Pharm.* Opp. at § II.B.3; *Monroe* Opp. at § III.G.7.b.

Moreover, Florida law recognizes that the learned intermediary doctrine does not prevent a plaintiff from advancing claims premised on misleading marketing.  In *Walls v. Armour Pharm. Co.*, 832 F. Supp. 1467, 1483–84 (M.D. Fla. 1993), the court explained that where the learned intermediary relied on a manufacturer's negligent misstatements and failures to disclose in forming the opinions related to the risks associated with the product, "the presence of misstatements in the manufacturer's literature heightened the evidentiary threshold which the manufacturer must cross in order to show that the physician was 'an intermediary sufficiently informed to interrupt the causal

link of liability between the manufacturer and the plaintiff.'"  832 F. Supp. at 1483–84 (citing *Zanzuri v. G.D. Searle & Co.,* 748 F. Supp. 1511, 1518 (S.D. Fla. 1990)); *see also Beale v. Biomet, Inc.,* 492 F. Supp. 2d 1360, 1368, 1374–75 (S.D. Fla. 2007) (reasoning that the learned intermediary doctrine does not shield a manufacturer or other company in its advertisements directly to the ultimate consumer).

Moreover, absent unusual circumstances, in Florida the learned intermediary doctrine cannot be applied without a developed factual record: it is subject to a reasonableness test.  Under the doctrine, "the critical inquiry is whether the manufacturer was reasonable" in its reliance on the learned intermediary.  *Dugas v. 3M Co.,* Case No. 3:14-cv-1096-J-39JBT, 2016 WL 1271040, at *10 (M.D. Fla. Mar. 29, 2016) (quoting *Aubin v. Union Carbide Corp.,* 177 So. 3d 489, 515 (Fla. 2015); *Chase v. Novartis Pharm. Corp.,* 740 F. Supp. 2d 1295, 1296–97 (M.D. Fla. 2006).  This test and exception present questions of fact such that the applicability of the learned intermediary defense cannot be adjudicated by a motion to dismiss.  *See Dugas* at *32; *see also, Felix* at *105*.

Here, Broward has alleged that the warnings in opioid labeling were overcome by Manufacturer Defendants' aggressive and deceptive marketing of their drugs, *see, e.g.,* SAC ¶¶ 149– 349; this fraudulent overpromotion, which overstated the benefits and understated the risks of opioids, negated the adequacy and effectiveness of any label warnings.  *Cf. Stevens v. Parke, Davis & Co.,* 507 P.2d 653 (Cal. 1973) (warnings may be rendered inadequate by overpromotion).  Because physicians were foreseeably misled by Defendants' misrepresentations, the learned intermediary doctrine does not break the chain of causation.

### c. An Unbroken Causal Chain Connects Defendants' Acts to Broward's Injuries

Finally, Defendants argued that the causal chain between Defendants' conduct and Broward's injuries is too attenuated to support a finding of proximate cause, and that intervening third-party criminal misconduct broke the chain of causation, pointing to both physicians who wrote

prescriptions for opioids and criminals engaged in diverting opioid medication as superseding causes of Broward's harm.  *Pharms. Mot.* at 4–5.  But, as Defendants concede, *id.* at 5, Florida law is clear: "where the intervening act is itself probable or foreseeable, causal connection is not broken."  *Sosa v. Coleman*, 646 F.2d 991, 993 (1981) (citing *Railway Express Agency, Inc. v. Garland,* 269 So. 2d 325 (Fla. App. 1972, *cert. denied*, 275 So. 2d 14 (Fla. 1973); *see also, Nicholas v. Miami Burglar Alarm Co.*, 339 So. 2d 175, 177 (Fla. 1976).[28]  Here, Broward specifically alleged that Manufacturer Defendants developed a massive fraudulent scheme to mislead prescribing doctors by misrepresenting the risks and benefits of opioids.  *See, e.g.* SAC ¶¶ 148, 342, 367, 397–409 and 410; *see also* SAC ¶¶ 566, 700–702, and 893.  Physicians' decisions to prescribe opioids were not *independent* of Defendants' wrongdoing: those decisions were the intended, actual, and entirely foreseeable *result* of Manufacturer Defendants' fraudulent conduct.  Similarly, Broward alleged that any criminal diversion or other negligent or unlawful conduct was foreseeable to all Defendants, who had special knowledge about the dangerous nature of their pharmaceuticals but misrepresented and concealed it in an intentional bid to increase addiction and, as a result, increase Defendants' profits.  Whether intervening actors' conduct was foreseeable cannot be decided as a matter of law on a motion to dismiss.

Defendants cite the trial court ruling in *Penelas*, 1999 WL 1204353, at *2, in claiming that Broward's injuries are too attenuated.  But *Penelas* involved the ordinary sale of guns, not a scheme to increase profits by misrepresenting their risks of their products.  The *Penelas* court did not consider whether intervening criminal acts were foreseeable to the defendant, merely stating that

---

[28] The Florida rule conforms with the approach taken in the Restatement (Second) of Torts.  *See* Restatement (Second) § 448 (explaining that "[t]he act of a third person committing an intentional tort or crime" will not supersede the original actor's negligence if "the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime").

there was no "special relationship" between the defendant and any party.  It is not only factually distinguishable, then, but omits the relevant legal analysis for this case.

Nor does Broward seek to recover for harms that are "derivative" of its citizens' costs or better addressed through subrogation, as in *Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. 3d DCA 2002).  There, Venezuela was not permitted to sue the tobacco companies to recover for "smoking-related medical expenses incurred by its citizens."  *Id.* (citing *Service Employees Int'l Union Health and Welfare Fund v. Philip Morris Inc.,* 346 U.S. App. D.C. 74, 249 F. 3d 1068 (D.C. Cir. 2001).  The costs Broward has incurred as a result of Defendants' fraudulent enterprises are not derived from the physical injury to any particular persons, but constitute direct injuries to its revenue-generating functions and, in addition, the collective harm imposed on the community.  Defendants' conduct was designed to and did create an increased demand for and overabundant supply of their products on a national scale, which generated an opioid crisis in Broward and across the country.  It is that crisis which has caused Broward to incur direct costs.  Broward's injuries here are not personal injuries incurred by individuals suffering as a result of over-prescription, overuse, and addiction.  The harm is the pecuniary injury Broward incurred specifically to address the opioid crisis.[29]

### C.     All Elements of Unjust Enrichment Are Satisfied

Broward asserted an equitable claim for unjust enrichment.  SAC ¶¶ 964–69.  A claim for unjust enrichment "exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity."  *Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So. 2d 710, 711–12 (Fla. Dist. Ct. App. 1998) (quoting *Challenge Air Transp., Inc. v. Transportes Aereos Nacionales, S.A.*, 520 So. 2d 323 (Fla. Dist. Ct.

---

[29] In a footnote, Distributor Defendants claim that Broward fails to allege but-for causation.  *Dist. Mot* at 17. However, for the reasons explained herein, Broward's harms were directly caused by Defendants' conduct in an unbroken chain of causation.  *See* Sec. II.B.3*, supra; see also Summit* Opp. 13–14, 38–45.

App. 1988)).  "According to the Eleventh Circuit, Florida law supports a cause of action for unjust enrichment upon a defendant's acceptance and retention of a benefit 'that it is not legally entitled to receive in the first place.'"  *State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, LLC*, 9 F. Supp. 3d 1303, 1311–12 (M.D. Fla. 2014) (quoting *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab.*, 739 F.3d 579 (11th Cir. 2013)).  Under Florida law, a claim for unjust enrichment consists of the following elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.  *Cty. of Monroe v. Priceline.com, Inc.*, No. 09-10004-Moore/Simonton, 2009 WL 4890664, at *5 (S.D. Fla. Dec. 17, 2009) (quoting *Golden v. Woodward*, 15 So. 3d 664, 670 (Fla. Dist. Ct. App. 2009)).

Defendants advanced four arguments in support of dismissal of Broward's unjust enrichment claim.  They argue that: (1) the claim is derivative of other claims and therefore falls within other claims, *Dist. Mot.* at 14; *Manu. Mot.* at 13; (2) Broward did not directly confer a benefit on Defendants; *Pharm. Mot.* at 16, *Dist. Mot.* at 15; *Manu. Mot.* at 13; (3) there is no allegation of knowing and voluntary acceptance of the benefit; *Manu. Mot.* at 13; and (4) a municipality cannot recover expenses through an unjust enrichment claim because the benefits are conferred on the residents of the municipality, rather than the Defendant.  *Dist. Mot.* at 15; *Manu. Mot.* at 13.

Federal Rule of Civil Procedure 8(d) permits the pleading of a claim for unjust enrichment in the alternative, rendering dismissal at the pleading stage premature based on the existence of other claims pleaded in the complaint.  Fed. R. Civ. P. 8(d); *Maurice's Jewelers II, Inc. v. Pandora Jewelry, LLC*, No.: 16-25079-CIV-Moreno, 2017 WL 3822056, at *4 (S.D. Fla. Aug. 29, 2017).

Defendants rely on *Baptista v. JP Morgan Chase Bank, N.A.*, 640 F.3d 1194, 1197 (11th Cir. 2011); *Licul v. Volkswagen Grp. of Am.,* Case No. 13-61686-CIV-Cohn/Seltzer, No. 13-61686-CIV,

2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013); and *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348,

1356–57 & n.7 (S.D. Fla. Sept. 4, 2012).  These cases are inapposite.  *Baptista* did not hold that

plaintiff's claim for unjust enrichment failed because it was duplicative or derivative.  640 F.3d at

1198.  It held that the unjust enrichment claim was preempted because it relied on the identical facts

as the state statutory claim that was preempted by the National Bank Act.  *Id.*  In *Licul*, the court

dismissed an unjust enrichment claim as "duplicative" where the defendant *conceded* the existence of

the express warranty governing the relationship between the parties regarding a defective door lock.

*Licul*, 2013 WL 6328734, at *8.[30]  *But see*, *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1306–07

& n.6 (S.D. Fla. Mar. 20, 2017) (distinguishing *Licul* where plaintiff alleged all elements of unjust

enrichment).  In *Guerrero*, the court dismissed the unjust enrichment claim because it was duplicative

of and based on the identical facts underpinning the plaintiff's FDUTPA claim.  889 F. Supp. 2d at

1356–57.  But more recent decisions demonstrate that dismissal of an unjust enrichment claim under

Florida law is **not** proper merely because legal remedies may exist.  *See Stark v. Nordyne, LLC*, No.

14-CIV-21884-BLOOM/Valle, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) ("It is generally

true that equitable remedies are not available under Florida law when adequate legal remedies exist.

However, that rule does not apply to unjust enrichment claims."  *State Farm Mut. Auto. Ins. Co. v.*

*Physicians Injury Care Ctr., Inc.*, 427 Fed. App'x 714, 722 (11th Cir. 2011).  Thus, the availability of

Broward's FDUTPA claim does not compel dismissal of this unjust enrichment claim.  *See Reilly v.*

*Amy's Kitchen, Inc.*, 2013 WL 9638985, at *7 & n.3 (S.D. Fla. Dec. 9, 2013).

　　　Broward expressly alleged that it conferred a benefit on each Marketing Defendant and each

Distributor Defendant.  *See, e.g.,* SAC ¶ 967.  Defendants nevertheless argue that the SAC fails to

include such allegations, relying on *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017); *Peoples Nat'l Bank of*

*Commerce v. First Union Nat'l Bank, N.A.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996); *Tilton v.*

---

[30] Defendants have not conceded the availability of any legal remedy here.

*Playboy Entm't Grp., Inc.*, No. 8:05-cv-692-T-30TGW, 2007 WL 80858, at *3, (M.D. Fla. Jan. 8, 2007);
and *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277 (11th Cir. 2015). All four cases are easily
distinguished.

      *Kopel* involved an evidentiary question following a trial, rather than a determination whether
a pleading was sufficient. *Kopel*, 229 So. 3d at 818. In *Peoples Nat'l Bank*, the court concluded that it
was not the plaintiff who conferred the benefit. 667 So. 2d at 879. Here, Broward alleged that it
conferred a benefit by, *inter alia*, making payments for opioids manufactured for distribution and sale
in Broward. SAC at ¶ 966–67. *Tilton* merely restated the general proposition that the benefit must
be direct. *Tilton*, 2007 WL 80858, at *3. And in *City of Miami*, the unjust enrichment claim was
dismissed because the court concluded that "missing tax revenue" resulting from alleged Fair
Housing Act violations by three banks was not a benefit conferred on the defendants. Unlike *City of
Miami*, Broward alleged that it conferred a benefit on Defendants including, *inter alia*, by making
payments made for opioids manufactured for sale and distribution in the county and seeks recovery
of out-of-pocket expenses it actually paid for the substantial costs in health insurance, treatment
services and other categories that are the direct result of the benefit Broward conferred on
Defendants, and the costs Defendants intentionally externalizes onto Broward and other
government entities. SAC ¶¶ 964–69. These allegations are not remotely similar to the "missing tax
revenue" that underpinned the unjust enrichment claim dismissed in *City of Miami*.

      Defendants further argue that Broward failed to allege there was a voluntary and knowing
acceptance of the benefit by Defendants. *Pharm. Mot.* at 16*, Dist. Mot.* at 14, *Manu. Mot.* at 13–14.
Although Broward believes that element was satisfactorily pleaded, SAC ¶¶ 964–69, if the court
concludes otherwise it is easily cured in an amended pleading.

      Defendants rely on *Flatirons Bank v. Alan W. Steinberg L.P.*, 233 So. 3d 1207, 1212 (Fla. Dist.
Ct. App. 2017). *Flatirons Bank* involved an appeal taken from an order entered after an evidentiary

hearing which turned on the factual question of whether there was knowledge or voluntary acceptance of a benefit. *Id.* at 1212. *Flatirons Bank* does not stand for the proposition that questions of knowledge or voluntariness of acceptance can be determined at the pleading stage. *See also Citadel Commerce Corp. v. Cook Sys., LLC*, No. 8:08-cv-1923-T-33TGW, 2009 WL 1230067, at *8 (M.D. Fla. May 5, 2009) (reasoning regarding a complaint that did not expressly plead knowing or voluntary acceptance, "[i]f Defendants honestly contend that they had no knowledge of the benefits conferred by Broward, Defendants can present this factual argument in a motion for summary judgment").

Finally, Defendants argue that Broward cannot recover expenses through an unjust enrichment claim because the benefits it conferred were on the residents of the municipality, rather than on Defendants. Defendants rely on *City of Miami* for the principle that "[m]unicipal expenditures, meanwhile, do not appear to be among the types of benefits that can be recovered in an unjust enrichment action under Florida law," which cited *Penelas.* 801 F.3d 1277–78. As discussed previously, *Penelas* is a state trial court order that is neither precedent nor persuasive, *see* Sec. I.E, *supra,* and the state intermediate appellate court's affirmance in *Penelas* did not address that specific issue. 778 So. 2d 1042. Therefore, Defendants' reliance on the foregoing quote from *City of Miami*, that speculated that municipal expenditures "do not appear" to be recoverable, is misplaced because that statement was not the holding of the case and is not applicable here, where the sums Broward seeks to recover include, *inter alia*, benefits conferred on Defendants associated with expenses paid out on behalf of its own county employees. SAC ¶¶ 964–69. *See also County of Monroe v. Priceline.com, Inc.*, No. 09-10004-MOORE/SIMONTON, 2009 WL 4890664, at *5 (S.D. Fla. Dec. 17, 2009) (finding a county adequately pleaded claim for unjust enrichment, even though defendants' profits were earned from consumers in the county, because the county had conferred the benefit of allowing the defendant to do business within the county).

As discussed, *supra*, an action for unjust enrichment "exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, *in violation of good conscience and fundamental principles of justice or equity*." *Henry M. Butler*, 524 So. 2d at 711–12. And Florida law supports a claim for unjust enrichment upon a defendant's acceptance and retention of a benefit 'that it is not legally entitled to receive in the first place.'" *State Farm Mut. Auto. Ins. Co.*, 9 F. Supp. 3d at 1311–12. Broward alleged that Defendants were not legally entitled to receive the benefits conferred because of their false and misleading marketing and omissions of and failure to disclose material facts, failure to operate a system to report suspicious orders as required by law, and failure to exercise the required care in filling suspicious orders. SAC ¶¶ 964–69. Therefore, it would be in violation of good conscience and fundamental principles of justice or equity to allow Defendants to be so enriched, and Broward has sufficiently alleged the acceptance or retention of a benefit to which Defendants were not legally entitled in the first place. *Id.*

### D. Broward's FDUTPA Claim is Properly Pleaded

None of the arguments advanced by Defendants support dismissal of Broward's well-pleaded claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 *et seq.* ("FDUTPA"). SAC ¶¶ 920–930.

#### 1. Broward Has FDUTPA Standing

Manufacturer and Pharmacy Defendants first argue Broward is not a "consumer." *Manu. Mot.* at 11; *Pharm. Mot.* at 13. But Broward clearly alleged its status as a proper claimant under FDUTPA *via* its extensive opioid purchases. SAC ¶¶ 808, 908, 911. Moreover, Florida courts have concluded that FDUTPA is not limited to consumers in any event.

Courts are directed to construe FDUTPA liberally to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices." Fla. Stat. § 501.202(2). *See also Bailey v. St.*

*Louis,* 196 So. 3d 375, 382 (Fla. Dist. Ct. App. 2016).  FDUTPA's protection policies are "to be construed liberally to promote [that] policy," and an aggrieved party affected by a defendant's FDUTPA violations is permitted to seek damages and injunctive relief.  *Id.*

As Florida courts recognize, there is no requirement that a FDUTPA plaintiff be a "consumer." *See, e.g., Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.,* 187 So. 3d 868, 869 n.2 (Fla. Dist. Ct. App. 2016); *Bailey,* 196 So. 3d at 383; *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.,* 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015);  *see also James D. Hinson Elec. Contr. Co. v. Bellsouth Telcoms., Inc.,* No. 3:07-cv-598-J-32MCR, 2008 WL 360803, at *1 (M.D. Fla. Feb. 8, 2008); *Furmanite Am., Inc. v. T.D. Williamson,* Inc., 506 F. Supp. 2d 1134, 1145–47 (M.D. Fla. 2007); *True Title, Inc. v. Blanchard,* No. 6:06-cv-1871-Orl-19DAB, 2007 WL 430659, at *3 (M.D. Fla. Feb. 5, 2007); *Gritzke v. M.R.A. Holding, LLC,* CASE NO. 4:01cv-495-RH, 2002 WL 32107540, at *4 (N.D. Fla. Mar. 14, 2002); *Niles Audio Corp. v. OEM Sys. Co.,* 174 F. Supp. 2d 1315, 1319–20 (S.D. Fla. 2001).

Indeed, *Bailey* clarified that a prior version of FDUTPA limited an aggrieved party to injunctive relief, while consumers could seek damages too.  "However, effective July 1, 2001, the legislature amended section 501.211(2), Florida Statutes (2001), by inserting the word 'person' in place of the word 'consumer'" *Bailey,* 196 So. 3d at 383.  "[T]he Florida Legislature's replacement of the word consumer with the word person, demonstrates an intent to allow a broader base of complainants . . . to seek damages." *Id.*

The Florida's Legislature's replacement of "consumer" with "person" should not be ignored because, as one Florida appellate court aptly explained:

> "It is a well-established presumption that the legislature intends to change the law
> when it amends a statute." *Hill v. State,* 143 So. 3d 981, 986 (Fla. 4th DCA 2014).
> Therefore, the legislative change regarding the claimant able to recover under
> FDUTPA from a 'consumer' to a 'person' must be afforded significant meaning.
> This change indicates that the legislature no longer intended FDUTPA to apply to
> only consumers, but to other entities able to prove the remaining elements of the

claim as well.

*Caribbean Cruise Line, Inc., Inc.,* 169 So. 3d at 169. Analyzing FDUTPA's amended definitions and case law, the *Caribbean Cruise Line* court held:

> Although these definitions discuss harm in the context of consumers, neither definition requires that the entity has to be a consumer to have standing to bring a FDUTPA claim. Therefore, while the claimant would have to prove that there was an injury or detriment to consumers in order to satisfy all of the elements of a FDUTPA claim, the claimant does not have to be a consumer to bring the claim.

*Id.* Here, Broward has alleged an injury or detriment to consumers, both as a consumer in its many purchases of opioids, as well as to other consumers inflicted with addiction at Defendants' hands. SAC ¶¶ 808, 908, 911, 913, 917, 928.

Defendants rely for their contrary argument on cases from the Southern District of Florida suggesting that "only" a consumer-to-consumer transaction may bring a claim under the FDUTPA, but those cases are not authoritative and are less well-reasoned and persuasive than the cases that have held otherwise. "When a state supreme court has not ruled on an issue, federal district courts interpreting state law 'are bound to follow any decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently.'" *Chiron Recovery Ctr., LLC v. AmeriHealth HMO of NJ., Inc.,* Case No.: 9:16-CV-82043-Rosenberg/Hopkins, 2017 WL 4390169, at *6 (S.D. Fla. Oct. 3, 2017) (quoting *McMahan v. Toto,* 311 F.3d 1077, 1080 (11th Cir. 2002)); *accord King v. Order of United Commercial Travelers,* 333 U.S. 153, 158, 68 S. Ct. 488, 491 (1948). As *Chiron* recognized, all of "the state appellate courts that have ruled on the issue have determined that non-consumers have standing under FDUTPA." 2017 WL 4390169, at *6 (citing *Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.,* 187 So. 3d 868, 869 n.2 (Fla. Dist. Ct. App. 2016); *Bailey,* 196 So. 3d at 383; *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.,* 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015)). Lacking any persuasive evidence that the Florida Supreme Court would disagree with the consensus of the three Florida intermediate

appellate courts that have decided the issue, this Court is bound by their statutory interpretation that non-consumer plaintiffs—including Broward here—may seek damages under FDUTPA.

Defendants also ignore precedent for a government entity's standing to seek relief under FDUTPA as a party with a consumer injury.  *See Democratic Republic of the Congo v. Air Capital Grp., LLC,* 614 F. App'x 460, 469 (11th Cir. 2015) ("We see no reason why standing should not extend to government bodies when they engage in consumer transactions the way private actors do."). Because Broward has alleged that it was injured by Defendants' deceptive and unfair practices in the context of its own opioid purchases, Broward has standing to pursue damages.  Broward has sufficiently pled its status as a consumer, SAC ¶¶ 808, 908, 911, and its status as an aggrieved "person." *See Democratic Republic of the Congo,* 614 F. App'x at 468; *Gritzke,* 2002 WL 32107540 at *4 (citing 2001 FDUTPA amendment).

### 2. Broward's FDUTPA Claim Meets Rule 8(a) and Rule 9(b) Requirements

Regardless of whether the Court analyzes Broward's FDUTPA claim under Rule 8(a) or Rule 9(b),[31] Broward has properly pleaded its FDUTPA claim against all Defendants.  Broward's

---

[31] *Harris* evaluated Florida state and federal court rulings on this issue and held that Fed. R. Civ. P. 9(b)'s particularity requirements "categorically do not apply" to FDUTPA claims. *Harris v. Nordyne, LLC*, No. 14-CIV-21884-Bloom/Valle, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014).  This Court should apply the same reasoning to reject Defendants' argument that Rule 9(b) applies:

> FDUTPA claims seek a remedy for conduct distinct from traditional common law torts such as fraud. As such, the uniqueness of the cause of action places it outside the ambit of Rule 9(b). ... "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud," *Guerrero v. Target Corp.,* 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012); *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005), which is why a FDUTPA "plaintiff need not prove the elements of fraud to sustain an action under the statute." *Davis v. Powertel, Inc.,* 776 So. 2d 971, 974 (Fla. 1st DCA 2000). And, as Florida courts explain, "[a] deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Office of A.G., Dep't of Legal Affairs v. Wyndham Int'l, Inc.,* 869 So. 2d 592, 598 (Fla. 1st DCA 2004). Therefore, even where a FDUTPA claim includes allegations which implicate fraudulent conduct, it need not meet the heightened pleading requirements of Rule 9(b).

particularized allegations detailed in the SAC more than suffice.  Broward alleged known

misrepresentations and omissions, when and where they were made, the misleading content and the

consequences.  *Traxler v. PPG Indus.,* 158 F. Supp. 3d 607, 630 (N.D. Ohio 2016) (Polster, J.)

(examining various state consumer protection claims and concluding that Rule 9(b)'s requirements

are relaxed when information is solely within defendant's knowledge).

A FDUTPA damages claim requires allegations of: "(1) a deceptive act or unfair practice; (2)

causation; and (3) actual damages."  *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. Dist. Ct. App.

2006), *rev. den'd,* 962 So.2d 335 (Fla. 2007).  A FDUTPA violation occurs in two ways:  "(1) a *per se*

violation premised on the violation of another law proscribing unfair or deceptive practice; and/or

(2) adopting an unfair or deceptive practice."  *Hap v. Toll Jupiter Ltd. P'ship,* No. 07-cv-81027, 2009

WL 187938, at *9 (S.D. Fla. Jan. 27, 2009) (citing Fla. Stat. §§ 501.204(1), 501.203(3)).

A *per se* violation is established: (1) if the law expressly constitutes a FDUTPA predicate; or

(2) the law "proscribes . . . unfair, deceptive, or unconscionable acts or practices," Fla. Stat.

§ 501.203(3)(c), and therefore "operates as an implied FDUTPA predicate."  *Parr v. Maesbury Homes,*

*Inc.,* No. 6:09-cv-1268-Orl-19GJK, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009).  When a law

is not an express FDUTPA predicate, the Court should look at whether that law proscribes

deceptive or unfair practices.  *Id.*  While a statute may not define "unfair and deceptive act or

---

. . .

Furthermore, requiring Plaintiff to plead FDUTA claims with particularity would not
advance the primary goals of Rule 9(b).  FDUTPA's elements are more particularized than
those of common law fraud.

*Id.* at *4-5.  *Harris* involved claims of deceptive omission by failure to disclose.

The court noted the defendant knew the claim's contours, and held it was unnecessary to require
amendments to better inform the defendant of "when and how broadly Defendant declined to inform its
consuming public."  *Id.* at *13 n.1.  Like *Harris*, Broward's FDUTPA claim encompasses allegations outside
of traditional common law fraud, including Defendants' failure to comply with Florida's Drug and Cosmetic
Act ("FDCA").  Accordingly, Rule 9(b)'s particularity requirements do not apply to Broward's FDUTPA
claim.

practice," the provisions are to be "construed liberally." *Intercoastal Realty, Inc. v. Tracy,* 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010) (quoting Fla. Stat. § 501.202(2)).

An unfair practice "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* (internal quotation omitted).  A deceptive act is "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.,* 480 F.3d 1281, 1284 (11th Cir. 2007).  Significantly, "deception may be accomplished by innuendo" and through omissions "rather than outright false statements." *Millennium Commc'ns & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs,* 761 So. 2d 1256, 1264 (Fla. Dist. Ct. App. 2000).  Here, Broward alleged that the FDCA and CSA, 12 C.F.R. §§ 1301.74(b)-12, create the requisite implied FDUTPA predicates to allege Defendants' *per se* FDUTPA violations.  Alternatively, Broward alleged that Defendants adopted unfair and deceptive practices actionable under FDUTPA.

The FDCA, which incorporates the CSA, proscribes deceptive and unfair practices, as its purpose is "to protect the public health, safety, and welfare," and the FDCA required Defendants to assess orders, consider the location and population served, and promptly report suspicious orders. Fla. Stat. § 499.0121(15)(b).  Failing to design and operate a system to disclose suspicious orders of controlled substances "offends established public policy" and is immoral and unethical.  *Intercoastal Realty, Inc.,* 706 F. Supp. 2d at 1333.  Although Distributor Defendants attempt to trivialize explicit FDCA responsibilities, arguing no private right of action can exist, *Dist. Mot.* at 11–12, Florida courts allow FDUTPA claims premised on predicate laws that lack private rights of action.  *See, e.g., State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla.,* 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) (FDUTPA claim premised on violation of Florida law requiring licensure of health care clinic); *Gov't Emp. Ins. Co. v. KJ Chiropractic Ctr., LLC,* No. 12-cv-1138, 2013 WL 12155947, at *6 (M.D. Fla. Oct. 23, 2013) (FDUTPA claim based on violations of insurance fraud statute). The FDCA and CSA

directly link Defendants' failure to operate a system to disclose suspicious orders of controlled substances with the statutory goal of protecting the public health, safety and welfare of consumers.

The SAC's detailed descriptions of Defendants' conduct confirmed that Broward has sufficiently alleged *per se* FDUTPA violations.  *See* SAC ¶¶ 146–432, 473–94, 522–60, 568–79, 581–83, 585–87, 590, 603–06, 644–76, 713, 724–30, 926.  That conduct also independently supports Broward's claim that Defendants adopted unconscionable, unfair and deceptive practices.

### 3. Broward Sufficiently Pleaded Causation

Defendants argue Broward's causation theory is "too remote and speculative to establish causation," *Manu. Mot.* at 12, because the damages do not "directly flow" from the deceptive acts, *Dist. Mot.* at 8, or that the causation theory rests solely on assumptions, *Pharm. Mot.* at 12. Manufacturer Defendants cite *Lombardo v. Johnson & Johnson Consumer Companies*, in which a Johnson & Johnson entity was sued for deceptive pricing practices, although it had no role in setting retail prices.  124 F. Supp. 3d 1283 (S.D. Fla. 2015).  Here, Broward alleged that it directly relied on Manufacturer Defendants' deceptive and unfair acts of creating, developing, and disseminating falsehoods throughout the supply chain when making its opioids purchases.  SAC ¶¶ 146–432; 644–662; 663–676.  Moreover, Broward alleged that it directly relied on Distributor Defendants' deceptive and unfair acts of failing to identify, control or report opioid diversion and abuse.  SAC ¶¶ 481–83, 549–560, 665–68, 724–30.  Absent those deceptive and unfair acts, Broward alleged it would not have made those purchases.  SAC ¶ 809.  Broward explicitly alleged it would not have paid for opioid prescriptions to treat chronic pain had Pharmacy Defendants, who were involved in the Opioid Supply Chain Enterprise, disclosed the true addictive effects, their efforts to increase supply, and their shirking of their respective responsibilities.  SAC ¶¶ 809, 913; *see also*, § IV.B. Broward has sufficiently pleaded causation for damages.  *See, e.g., Gavron v. Weather Shield Mfg.,* 819 F. Supp. 2d 1297, 1301 (S.D. Fla. 2011) (holding that misleading representations that would deceive an

objectively reasonable person are sufficient to plead causation); *Smith v. WM. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1340 (S.D. Fla. 2009) (finding sufficient causation allegation based on defendant's advertising claims leading plaintiff to purchase product).

### 4. Broward Alleged Cognizable Remedies Under FDUTPA

FDUTPA permits recovery of actual damages as well as declaratory and injunctive relief to any person aggrieved by a defendant's unconscionable, deceptive, or unfair acts. *See Democratic Republic of the Congo*, 614 F. App'x at 468; *Gritzke*, 2002 WL 32107540, at *4; *Sup. Cons. Servs. v. Shaklee Corp.*, No. 6:16-cv-2001-Orl-31-GJK, 2018 WL 1791613, at *6–7 (M.D. Fla. April 16, 2018). Here, Broward explicitly alleged that it would not have paid for opioid prescriptions to treat chronic pain had Defendants disclosed the true nature of their efforts to increase supply and shirk their respective responsibilities. SAC § IV.B; SAC ¶ 809. That is direct harm to Broward for which it is entitled to actual damages. SAC ¶¶ 913, 917, 928–29. At this stage, applying Rule 8(a), Broward should be permitted to pursue both the market-value and other approaches to measuring Broward's actual damages for purchasing opioids. *See, e.g., Omni Healthcare, Inc. v. Health First, Inc.*, No. 6:13-cv-1509-Orl-37DAB, 2015 WL 275806, at *14 n.25 (M.D. Fla. Jan. 22, 2015) (declining at pleadings stage to pass on which FDUTPA damages plaintiffs will ultimately be entitled to, noting plaintiffs also requested declaratory and injunctive relief); *Ladrilla Santa Fe v. Cessna Aircraft Co.*, No. 6:14-cv-1522-Orl-40KRS, 2015 WL 13311285, at *5 (M.D. Fla. Apr. 24, 2015) ("question of whether these costs are actual damages which can be recovered will depend upon evidence adduced during discovery"); *Mahaliza, Inc. v. 7-Eleven, Inc.*, No. 16-61754-Civ-Scola, 2017 U.S. Dist. LEXIS 15441, at *13–14 (S.D. Fla. Feb. 2, 2017) ("Whether the actual evidence the Plaintiffs have to support this claim will stand up at trial or even at the summary judgment stage remains to be seen.")

Additionally, Broward's claim for health care and law enforcement costs, though connected to harm to consumers, is itself not a personal injury nor wrongful death claim, which could only be

brought by the opioid-addicted victims or their estates.  Damages need not be proved using the market-value approach often required in FDUTPA cases—as demonstrated by cases brought by competitors after the 2001 FDUTPA amendments.  *See, e.g., ADT LLC v. Alarm Prot. Tech. Fla., LLC,* No. 12-80898-CIV-Ryskamp/Hopkins, 2013 WL 11276119, at *5 (S.D. Fla. Apr. 18, 2013) (noting that actual damages could include lost profits and lost business instead of applying the market-value or valueless product approaches); *Glob. Tech LED, LLC v. HiLumz Int'l Corp.*, No: 2:15-cv-553-FtM-29CM, 2017 WL 588669, at *9 (M.D. Fla. Feb. 14 2017) (past lost profits are proper form of actual damages).  Construing FDUTPA liberally, forcing application of the market-value approach is unnecessary, and Broward's claim should proceed.

Defendants also ignore that Broward is an aggrieved party and, therefore, may otherwise seek declaratory and injunctive relief under FDUTPA.  *Democratic Republic of the Congo*, 614 F. App'x at 468; *Gritzke*, 2002 WL 32107540, at *4; *Sup. Cons. Servs.*, 2018 WL 1791613, at *7.  Notably, causation is not required for declaratory or injunctive relief.  *See Caribbean Cruise Line, Inc.*, 169 So. 3d at 166–67.  This is a liberal standard to protect the consuming public from those who, like Defendants, engage in unconscionable, deceptive and unfair acts.  *Bailey*, 196 So. 3d at 382.

## 5.  FDUTPA's Safe-Harbor Provision Does Not Apply

Manufacturer Defendants' attempt to cast their deceptive and unfair acts as being advertisers and marketers simply complying with FDA labeling requirements.  It is Defendants' burden to demonstrate the safe-harbor provision applies by proving the FDA affirmatively authorized them to engage in the conduct alleged in the SAC—which  they cannot do.  *See Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1343–44 (S.D. Fla. 2014) (*Fla. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005).  It is premature to decide that defense at the pleading stage: the safe-harbor provision is inapplicable based on the allegations in the Complaint because the misrepresentations and omissions are not based on any of Manufacturing Defendant's proffered

FDA determinations about opioid safety and effectiveness.  Instead, the SAC identified nine categories of falsehoods, alleging that Manufacturer Defendants misrepresented the addiction risk, ease of withdrawal, increase dosages without increased risks, improved functionality with long-term use, and the relative, greater risk of other drugs compared to opioids.  SAC ¶¶ 146–317.  The SAC meticulously alleged the "who, what, when, where and how" of these deceptive and unfair acts.  Thus, the safe-harbor defense is no basis to dismiss under Rule 12(b)(6). [32]

### E.   Defendants' Challenges to Federal RICO Claims Fail

For the reasons explained in the *Summit* opposition brief, Broward sufficiently alleged federal RICO claims against the RICO Marketing Defendants (Purdue, Cephalon, Janssen, Endo, and Mallinckrodt) and the RICO Supply Chain Defendants (Purdue, Cephalon, Endo, Mallinckrodt, Actavis, McKesson, Cardinal, and AmerisourceBergen) and hereby incorporates those arguments.  *Summit* Opp. at § I.B.1–4.

In a perfunctory fashion, Manufacturer Defendants recycle certain of their unavailing arguments made in *Summit* and cite Florida law purportedly in support of such arguments.  *Manu. Mot.* at 4.  As explained below, each of the cases they cite is inapposite.

### 1.   Broward Alleged RICO Causation

First, as discussed *supra* in Section B.3.c, the learned intermediary doctrine does not apply here.  However, even if *arguendo* the learned intermediary rule were applicable, Manufacturer Defendants' arguments could not be resolved in a motion to dismiss.  The doctrine is inapplicable unless the warning to the intermediary is accurate, clear, and unambiguous.  *Rounds v. Genzyme Corp.*, 440 F. App'x 753, 756 (11th Cir. 2011).  But, as discussed in the *Summit* opposition brief, the

---

[32] *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1232–34 (S.D. Fla. 2007), cited by Manufacturer Defendants, actually supports Broward.  The court rejected the safe harbor defense at the pleading stage because the plaintiff alleged an advertising scheme for Lipitor contrary to that sanctioned by the FDA.  Broward is not seeking an order that the Manufacturing Defendants cease the sale of their products to comply with FDA requirements; rather, Broward seeks to prevent future deceptive and unfair marketing via declaratory and injunctive relief, and redress for damages directly caused by that marketing.

warning labels upon which Manufacturer Defendants rely were revised and not approved by the FDA until **December 2016**. Therefore, they provide no basis for any assertion that they adequately informed prescribers of the risks. *See Summit* Opp. at I.B.2.c.

Additionally, Broward have pled that the Marketing Defendants' purported warnings on their labels were insufficient given their deceptive descriptions of the risks and benefits of opioids. *See, e.g.,* SAC ¶¶ 45, 165, 566, 700–02, 720, 722, 816, 834, 884–85; *Summit* Opp. at § I.B.2.c; *see also Montalbano v. Ariad Pharm., Inc.,* No. 15-60508-CIV, 2015 WL 11198245, at *5–6 (S.D. Fla. Aug. 4, 2015) (rejecting arguments that warning label was adequate as a matter of law where plaintiff alleged that defendant knew substantially more about the risks and made misrepresentations and omissions regarding safety).

Each of the cases Manufacturer Defendants cite is readily distinguishable. Unlike here, none of the plaintiffs in those cases allege that defendants were actively contradicting the labels through a deceptive, multi-pronged marketing strategy. *See, e.g.,* SAC ¶¶ 318–430. Moreover, both *Felix v. Hoffmann-LaRoche* and *Christopher v. Cutter Labs., Inc.* were decided at summary judgment, and in each, there was evidence procured during discovery that the prescribing physicians had independent knowledge of the side effects of the drugs at issue, which was obtained through sources not alleged to be misleading. *See Felix v. Hoffmann-LaRoche,* 540 So. 2d 102, 104 (Fla. 1989) (prescribing physician stated that "he had prior knowledge of the teratogenic propensities of Accutane from independent research and reading and from seminars he had attended"); *Christopher v. Cutter Labs., Inc.,* 53 F.3d 1184, 1190 (11th Cir. 1995) ("Armour introduced evidence that Dr. Barbosa, a board-certified pediatric hematologist/oncologist, kept informed about new developments in his specialty by reading medical journals, going to medical meetings, and conferring with colleagues."). And in *Rounds v. Genzyme Corp.,* 440 F. App'x 753, 756 (11th Cir. 2011), unlike here, the plaintiff did not allege that doctor was otherwise misled by the defendant.

Manufacturer Defendants contend that third-party criminal acts, such as street-level drug dealing and heroin usage, negate proximate cause under Florida law.  Yet, as noted by both cases Defendants cite, the chain of causation is not broken when the intervening act is probable or foreseeable, and critically, such determination is for the jury.  *See* Sec. B.3.c*; see also Vining v. Avis Rent-A-Car Sys., Inc.,* 354 So. 2d 54, 56 (Fla. 1977) (complaint presented jury question about whether car rental agency leaving keys in ignition in high-crime area was proximate cause of damage resulting from collision between thief and plaintiff), *Sosa v. Coleman,* 646 F.2d 991, 993–94 (5th Cir. 1981) (reversing judgment of district court that found the criminal misuse of a firearm was unforeseeable as a matter of law in a wrongful death case, when it should have been a question for the jury), *Shurben*, 676 So. 2d 467 (rental car company had a duty to warn tourist of foreseeable criminal danger).

Here, Broward alleged that by flooding Florida with more opioids than could be used for legitimate medical purposes and by failing to report suspicious orders, Defendants created and failed to prevent a foreseeable risk of harm.  *See, e.g.,* SAC ¶¶ 20, 471, 834–37, 863, 865, 867, 869.  A reasonable person could foresee excess prescription opioids being sold on the street and those addicted to prescription opioids transitioning to (substantially cheaper) heroin resulting from Defendants' actions.  Thus, as discussed in the *Summit* Opp. at § I.C.2.b., these criminal acts were foreseeable, but nevertheless raise fact issues inappropriate for determination at this stage in the proceedings.

Indeed, a federal court recently rejected a similar argument made by Purdue, finding "it is it is facially plausible that the involvement of third parties, even criminals, was reasonably foreseeable given the extensive facts of Purdue's knowledge in the pleadings."  *Everett*, 2017 WL 4236062, at *6.  As in *Everett,* the SAC sufficiently alleged that intervening third-party criminal acts were foreseeable and did not break the chain of proximate causation.

### 2. Manufacturer Defendants Are Liable for the Misrepresentations They Disseminated Through Front Groups, KOLs, and Other Means

Manufacturer Defendants contend that Broward's unlawful marketing claims fail to the extent they rely on alleged misrepresentations by third parties.  This contention is unsupported by citation to any Florida law.  Regardless, as explained in *Summit*, Broward alleged sufficient facts to establish that the purported third parties Manufacturer Defendants point to here, the key opinion leaders ("KOLs") and Front Groups, are part of the Opioid Marketing Enterprise and furthered the common purpose thereof acting as agents of defendants.  *See Summit* Opp. at 53–54 n.34.

The Florida case *Byrnes v. Small* is instructive here.  *Byrnes v. Small*, 142 F. Supp. 3d 1262 (M.D. Fla. 2015).  There, the court found the plaintiff sufficiently established an agency relationship between the defendant and third party "opinion leaders" whom the defendant paid to issue false statements regarding the off-label use of a bone graft device.  The court stated that the allegations provided "at least 'some of the tell-tale signs of a principal-agent relationship, such as the ability of the principal to hire, fire, or supervise.'"  *Byrnes*, 142 F. Supp. 3d at 1271.  Broward's SAC provided "tell-tale signs" of a principal-agent relationship between Manufacturer Defendants and the KOLs and Front Groups, among other things, "funding, directing, editing, and approving" and controlling their activities and messaging.  SAC ¶¶ 320–363 (for allegations related to specific Front Groups); 364–396 (for allegations related to certain KOLs); 744–47, 757–59, 762–64.  *See also*, *Summit* Opp. at § I.B.3.b; *Monroe* Opp. at III.I.3.  Manufacturer Defendants specifically funded the KOLs and Front Groups in order to generate supportive messages for their products that would be made more effective because they seemingly originated from neutral and credible third parties.  SAC ¶ 320. Marketing Defendants made *millions* of dollars' worth of contributions to various Front Groups and KOLs in order to effectuate their own objective.  SAC ¶ 321.  Accordingly, Manufacturer Defendants' argument fails.

### 3.    Broward's Specific SAC Allegations Support Its RICO Claims

The SAC contains certain allegations specific to Broward to support its RICO claims.  For example, Broward alleged the total number of pills that were sold in Broward.  SAC ¶¶ 665–67.  Broward also alleged that Cardinal Health admitted that it had violated the CSA between January 1, 2009 and May 14, 2012 in Florida (SAC ¶ 552), and that McKesson paid a $150 million monetary penalty for failing to report suspicious orders of drugs, including opioids, and that, as a result, the DEA required it to suspend sales of controlled substances from distribution centers in Florida.  SAC ¶¶ 86, 729.  Additionally, Broward alleged that when authorities in states such as Ohio and Kentucky cracked down on opioid suppliers, out-of-state suppliers from Florida filled the gap for so-called "prescription tourists," as evidenced by the criminal prosecution of sixteen individuals involved in an "oxycodone pipeline between Ohio and Florida."  *Id.* at ¶¶ 620–21, 624, 628.  Further, Broward's allegations identify a specific pill mill within the County that generated over $10 million in profits.  *Id.* at ¶ 623.  Each of these facts support Broward's contentions that Defendants knew about suspicious orders in Broward and in Florida but yet failed to report those orders as required by the CSA.

Broward also alleged that Manufacturer Defendants made thousands of payments to prescribers in Florida for activities such as participating on speakers' bureaus and providing consulting services, *see, e.g.,* SAC ¶¶ 43, 48, 52, 59, 62, 68, 72, 81; that sales representatives marketed Manufacturer Defendants' drugs in Broward and surrounding areas, *id.* at ¶ 805; and that Defendant Purdue paid $100,000 to the Federation of State Medical Boards to help print and distribute its guidelines on the use of opioids to treat chronic pain to 700,000 practicing doctors, *id.* at ¶ 806.  These allegations provide additional evidence of the Opioid Marketing Enterprise's racketeering activity in Broward and Florida.

1583751.17

Contrary to Distributor Defendants' assertion, *Dist. Mot.* at 2, Broward sufficiently alleged that it has suffered direct injuries. Not only do these injuries parallel those discussed in the *Summit* opposition brief, *see Summit* Opp. at § I.B.2.b, but Broward also alleged a direct injury in the processing and payment of fraudulent prescriptions, SAC ¶ 810, and alleged that it would not have paid for opioid prescriptions for chronic pain but for Defendants' misstatements and omissions and the scheme employed by the Opioid Marketing Enterprise and the Opioid Supply Chain Enterprise, SAC ¶ 809.[33]  *See In re Neurontin Marketing & Sales Practices Litig.,* 712 F. 3d 21, 37 (1st Cir. 2013) (holding that manufacturer's fraudulent marketing proximately caused injury to third-party payor which paid for prescriptions); *City of Oakland v. City of Detroit*, 866 F.2d 839, 847 (6th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990) (finding that counties suffered a RICO injury when they overpaid for sewage services allegedly resulting from price-fixing conspiracy between Detroit and others); *see also In re Opioid Litig.,* 2018 Slip. Op. 31228(U), 2018 WL 3115102, at *19 (N.Y. Sup. Ct. 2018) (finding that, as a result of the manufacturer defendants' deceptive marketing campaigns regarding opioid effectiveness, misuse and addiction, the plaintiffs suffered direct injuries in paying for medications that were not medically necessary and that would not have been approved for the treatment of chronic, non-cancer pain if all the relevant facts about such medications had been known by them).

### 4.  Broward Properly Pleaded Florida RICO Claims

To state a civil claim under the Florida Rico statute, a plaintiff must allege: (1) a violation of Fla. Stat. § 772.103, and (2) an injury as a result of that violation.[34]  Fla. Stat. § 772.104(1); *Townsend v. City of Miami,* No. 03-21072-CIV-Jordan, 2007 U.S. Dist. LEXIS 103612, at 7 (S.D. Fla. Nov. 7, 2007).  Interpretation of Florida RICO is informed by case law interpreting the federal RICO statute

---

[33] Such damages will be established on an aggregate basis by showing that a reasonable, estimable percentage of sales of opioids is for inappropriate use, and that this percentage can be applied to the opioid prescriptions for which Broward paid and by which Broward was damaged.

[34] The Manufacturing Defendants are correct that Broward erroneously referred to Florida Revised Code §§ 2923.31 *et seq.* in the heading of its Third Claim for Relief, SAC at 273, when it intended to refer to Fla. Stat. § 772.101, *et seq.* ("Florida RICO").  Broward will correct this error at the appropriate time.

on which chapter 772 is patterned.  *See, e.g., Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1299 n.8 (S.D. Fla. 2005).  Thus, the analysis discussed, *supra*, § V.F.1, regarding federal RICO and in the *Summit* opposition brief applies equally to Broward's Florida RICO claims.

The above aside, Florida RICO differs from its federal counterpart in a **_critical_** respect: like the Ohio RICO statute ("OCPA") (Ohio Rev. Code § 2923.34(A)), Florida RICO is not limited to "business or property" injuries.  *Townsend v. City of Miami*, 2007 U.S. Dist. LEXIS 103612, at *7; *see also Burgese v. Starwood Hotels & Resorts Worldwide, Inc.,* 101 F. Supp. 3d 414, 420–21 (D.N.J. 2015) (stating that "[u]nlike the federal RICO statute, the Florida RICO Act by its plain language does not restrict injuries to 'business or property' injuries").  As a result, like OCPA, Florida RICO enables Broward to recover every aspect of its damages, including governmental expenditures and all other damages flowing from Defendants' wrongful conduct.  *See Summit* Opp. at § I.B.5.a.  For the reasons discussed in the *Summit* opposition brief, Distributor Defendants' argument that Broward failed to allege mail and wire fraud with the particularity required under 9(b) fails.  *Summit* Opp. at § I.B.1. Further, Distributor Defendants' argument that CSA violations that are not predicate acts under RICO fail for the reasons discussed in the Summit opposition brief, *Summit* Opp. at § I.B.4.b. Finally, because Broward has successfully alleged federal and state RICO violations, Distributor Defendants are wrong in their contention that its conspiracy count fails for the reasons discussed herein and in the Summit opposition brief.  *See infra* § V.F. (RICO); § V.G. (civil conspiracy); and *Summit* Opp. at § I.B.

## F.     Broward Has Properly Stated a Claim for Fraud

### 1.     Broward Has Pleaded its Fraud Claims with Particularity

Broward has pleaded its allegations of fraud with particularity against all of the Defendant groupings.  Broward's allegations address Manufacturers' roles in creating and spreading a deception to hide the true nature of, and safety concerns posed by, their products, and the SAC connected that

deception to the harms suffered by Broward.  SAC ¶¶ 644–662; 663–676.  The SAC specified nine categories of falsehoods that Manufacturer Defendants advanced to further their fraud.  SAC ¶¶ 146–317.  The SAC also included details about how they were disseminated, SAC ¶¶ 318–432, the "front groups" who were used to deceptively promote opioid use, SAC ¶¶ 318–363, payments to KOLs to deceptively promote opioid use, SAC ¶¶ 364–396, disseminating the misrepresentations through continuing medical education programs, SAC ¶¶ 397–409, advertising to promote opioids to doctors and consumers without FDA review, SAC ¶¶ 410–413, the widespread funding, editing, and distributing of publications that supported the misrepresentations, SAC ¶¶ 414–419, and the misrepresentations made downstream, SAC ¶¶ 420–432.  The SAC delineated that Distributor Defendants bound by the CSA deliberately disregarded their legal obligations to monitor and report suspicious activity, ignored the blatant criminal diversion of opioids, and ignored their own procedures designed to prevent diversion.  SAC ¶¶ 724–30.  Distributor Defendants engaged in further fraudulent behavior by refusing to report and halt the suspicious orders, instead increasing the rate of filling prescriptions and, in turn, the volume of their profits.  SAC ¶ 804.  As alleged in Broward's SAC, Distributor Defendants' concealment and omissions of material information including, but not limited to, the failure to detect and control suspicious orders, as well as the risk of addiction to opioids, caused injury to Broward.  SAC ¶¶ 971–975.  The SAC further details how Pharmacy Defendants permitted the widespread diversion to occur by omission and failure to report the obvious diversion of opioids to criminals and addicts, as well as how Pharmacy Defendants' refusal to monitor and report suspicious orders contributed to the opioid crisis.  SAC ¶¶ 580–617.

In addition to these allegations, Broward describes in detail how Distributor Defendants, along with Marketing Defendants, set up sophisticated ordering systems with pharmacies and other entities to fraudulently increase the quotas of distributed opioids.  This generated economies of scale through increased purchasing power and enabled prescriptions to be filled at lower costs, while these

Defendants remained indifferent to the suspicious nature of the filled prescriptions.  SAC ¶¶ 495–521.  Thus, Broward has alleged fraudulent activity with sufficient particularity to meet Rule 9(b) for the claims brought against each Defendant.

### 2. Broward Was Defrauded by Defendants' Conduct

Defendants also argue the SAC fails to allege any relationship of trust, which is required for an omission-based fraud claim.  *Pharm. Mot.* at 11–12; *Friedman v Am. Guardian Warranty Servs.*, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003).  To the contrary, Broward alleged that, as a distributor "in the supply chain" under the CSA, Pharmacy Defendants were "placed in a position of special trust and responsibility . . . to act as the last line of defense" in safely and appropriately dispensing opioids.  SAC ¶ 142.  The SAC affirmed this responsibility, alleging, "companies who are entrusted with permission to operate within [the controlled substance] system cannot simply operate as competitive in an 'anything goes' profit-maximizing market.  Instead, the statute tasks them to watch over each other *with a careful eye for suspicious activity*," and that Pharmacy Defendants subverted the CSA "to conduct their own enterprise for evil."  SAC ¶ 777.  Broward has sufficiently pled its claim for fraud.

Distributor Defendants briefly cite *Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, No. 2:16-cv-690, 2017 WL 700215, at *3–4 (M.D. Fla. Feb. 22, 2017), to assert that omissions cannot support a fraud claim because they had no duty to report the omissions.  Defendants, however, fail to provide the full context of the law, including exceptions to the rule.  "Mere nondisclosure of material facts in an arm's length transaction is not [an] actionable misrepresentation unless some artifice or trick is employed to prevent an independent investigation."  *Id.* (citing *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. Dist. Ct. App. 2003)).  Broward alleged throughout the SAC that Distributor Defendants not only omitted material information, but also actively concealed their failure to detect and control suspicious orders, as well as the addictive nature of opioids.  SAC

¶¶ 971–75.  As with Pharmacy Defendants, Distributor Defendants' omissions and misrepresentations caused Broward to purchase opioids, SAC ¶¶ 808, 908, 911, and increased Broward's costs of services, SAC ¶ 984, demonstrating Broward's detrimental reliance.  SAC ¶ 985.

### 3. Broward Has Shown Both Reasonable Detrimental Reliance and Causation

Defendants' also argue—incorrectly—that Broward failed to allege reliance.  *Pharm. Mot.* at 12; *Manu. Mot.* at 12.  Broward alleged it relied on the representations made by Defendants, which caused its opioid purchases.  SAC ¶¶ 807–811, 908, 911, 977–78, 985, 987, and 988.  Broward also alleged that its reliance caused it harm by purchasing dangerously addictive opioids, SAC ¶¶ 808, 908, 911, increasing costs of health insurance, treatment services, autopsies, emergency room visits, medical care, treatment for related illness and accidents, payments for fraudulent or medically unnecessary prescriptions, and lost productivity to Broward's workforce and community.  SAC ¶ 984.  These allegations describe Broward's detrimental reliance on Defendants' fraud and are more than sufficient to survive a motion to dismiss.

Defendants argue Broward did not identify "any specific transactions Broward would have declined had it known of Pharmacy Defendants' fraud.  *Pharm. Mot.* at 12.  This is incorrect.  Broward explicitly alleged that it would not have paid for particular opioid prescriptions to treat chronic pain had Defendants involved in the Opioid Supply Chain Enterprise disclosed the true nature of the drugs' addictive effects and Defendants' efforts to increase supply while shirking their respective legal responsibilities.  SAC ¶ 809; SAC § IV.B.  Accordingly, this Court should deny Defendants' Motion as it relates to Broward's fraud claim.

### G. Broward's Claims for Civil Conspiracy Are Properly Pleaded

As previously argued, Broward has pled its claims sounding in fraud with particularity.  While there is no dispute Florida law does not recognize a wholly independent action for conspiracy, and "a civil conspiracy is derived from the underlying claim that forms the basis of the conspiracy."

*Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1361 (S.D. Fla. 2002); *see also Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977).  Moreover, the "gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the plaintiff." Civil conspiracy requires the following: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy.  *Philip Morris USA, Inc. v. Russo,* 175 So. 3d 681 (Fla. 2015); *see also, Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997).

Broward sufficiently pleaded its Conspiracy claim.  Specifically, Broward alleged Manufacturer, Distributor, and Pharmacy Defendants entered into express and/or implied agreements—among themselves and with the other Defendants in this case—to subvert the public's knowledge and understanding of the health effects and addictive nature of opioids.  SAC ¶¶ 971–75.  Manufacturer Defendants performed overt acts and/or omissions by engineering the nine categorized falsehoods outlined in the SAC as well as ensuring their dissemination, SAC ¶¶ 146–432.  Distributor and Pharmacy Defendants performed overt acts by deliberately disregarding their responsibilities of monitoring and reporting suspicious activity, maintaining performance metrics and bonuses that incentivized pharmacists to disregard safety concerns and violations of the law, failing to safely and appropriately dispense the opioids, all of which furthered the conspiracy's goal to increase demand and, in turn, profits to all Defendants.  SAC ¶¶ 568–90, 603–606.  Finally, Broward suffered damages as a result of Defendants' conspiracy in the form of increased health insurance costs, treatment services, autopsies, emergency room visits, medical care, treatment for related illnesses and accidents, payments for fraudulent or medically unnecessary prescriptions for which Broward was financially obligated, and the lost productivity to Broward's workforce.  SAC ¶¶ 662, 810, 836, 868, 895, 917, 936, 944, 956, 963, 968, 984, 999.  Consequently, Broward has

sufficiently pleaded the requisite elements to its civil conspiracy claim as well as the underlying

claims that form the basis for the alleged conspiracy.  *Allocco*, 221 F. Supp. 2d at 1361; *Russo,* 175 So.

3d at 686.

### H.    Broward Sufficiently Alleged that Defendants' Actions Merit Punitive Damages

Manufacturer and Pharmacy Defendants seek to dismiss Broward's request for punitive

damages in this case because it is pleaded as a separate count in the complaint or because

Defendants contend the imposition of punitive damages is not justified.  *Pharm. Mot.* at 16; *Manu.*

*Mot.* at 15.

Punitive damages do not need to be pleaded as a separate count, but it is not fatal to a

complaint to do so.  Broward submits that the Court should simply treat the request for punitive

damages as a remedy for the intentional, wrongful conduct detailed elsewhere in the SAC.  *See, e.g.,*

Fl. Jury Instr. 503.1 (Punitive Damages – Bifurcated Procedure) (describing punitive damages as an

additional claim for the jury to decide); *Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.*, No. 9:13-CV-2890,

2015 WL 3452517, (M.D. Fla. May 29, 2015) (construing punitive damages "count" as a request for

a remedy for the other substantive claims set forth in the complaint).

The SAC adequately sets forth grounds for punitive damages.  A plaintiff in a federal

diversity action is permitted to assert a request for punitive damages in the complaint without the

need to comply with the procedural requirements of Fla. Stat. § 768.72.  *See, e.g., Cohen v. Office Depot,*

*Inc.*, 184 F.3d 1292, 1298 (11th Cir. 1999).  Further, punitive damages are warranted where the

egregious wrongdoing of the defendant(s) constitutes a "public wrong."  *Id.* at 1295 (quoting *Chrysler*

*Corp. v. Wolmer*, 499 So. 2d 823 (Fla. 1986)).  Such a claim is proper if the plaintiff sets forth "fact

specific allegations relating to the intentional misconduct and gross negligence of the defendant[s]."

*McFarland v. Conseco Life Ins. Co.*, No. 3:09-CV-598-J-32MCR, 2009 WL 3231634, (M.D. Fla. Oct. 2,

2009).  The law simply requires Broward to put Defendants on notice of "the alleged conduct

underlying the claims for punitive damages." *See In re Engle Cases*, No. 3:09-CV-10000-J-32JBT, 2012 WL 4771237, (M.D. Fla. Oct. 5, 2012).

Here, Defendants completely ignore the detailed facts giving rise to the claims for punitive damages set forth in the SAC. *See, e.g.*, SAC ¶¶ 708–40.  Broward has detailed Defendants' "deliberate," "willful," and "knowing" actions, which demonstrated "malice," "conscious disregard for the rights and safety of others," and "egregious fraud." *Id.*  Broward has set forth "sufficient factual matter" in connection with its claims which, if accepted as true (at this stage of the proceedings), states a claim for punitive damages that is "plausible on its face." *Id.* at 2 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* SAC ¶¶ 708–40.

In the *Engle* progeny tobacco cases, the court found that similar allegations about the addictive nature of nicotine were sufficient to state a valid claim upon which a punitive award could be based, given the defendants' knowledge regarding nicotine and their actions to ensure that cigarettes contained sufficient amounts of nicotine to keep the smoker addicted while still knowing the serious health risks of smoking. *In re Engle Cases,* 2012 WL 477123, at *2.  Similarly, here, the SAC is replete with references to Defendants' knowledge of the risks of opioid addiction and the intentional acts taken to mislead patients, physicians, and the public, that caused or contributed to this public health crisis.  Indeed, the SAC set many illustrative falsehoods that were promoted by Defendants, detailed the way in which that misleading information was distributed, explained how certain vulnerable groups were targeted, and further described how these actions created a public health epidemic. *See* SAC ¶¶ 146–317 (nine falsehoods); ¶¶ 318–432 (channels used to disseminate the deceptive scheme); ¶¶ 433–439 (targeting elderly and veterans); ¶¶ 465–571 (disregarding controls and suspicious use).  Any question about whether there is sufficient evidence to tie each Defendant's alleged conduct with the ultimate harm complained of is "either a question for the jury or the trial judge." *In re Engle Cases,* 2012 WL 477123, at 3.  Further, much like in the tobacco

- 63 -

litigation, these Defendants are "undeniably familiar" with the facts that Broward alleged entitle it to recover punitive damages, and there is no surprise; nor any prejudice in allowing this request to proceed. *See, e.g.*, *Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1232-33 (Fla. 2016) (no surprise or prejudice to defendants where plaintiff was allowed to amend complaint to seek punitive damages).

## **CONCLUSION**

Based on the foregoing, Broward County respectfully requests that Defendants' motions to dismiss be denied in their entirety.  In the alternative, should the Court determine the SAC is in any way deficient, Broward respectfully requests the opportunity to cure any defects in an amended pleading.[35]

Dated: July 9, 2018                          Respectfully submitted,

By:  _____
       Elizabeth J. Cabraser

Attorney for Plaintiff, Broward County, Florida

By:  */s/ Elizabeth J. Cabraser*
       LIEFF, CABRASER, HEIMANN &
       BERNSTEIN, LLP
       ELIZABETH J. CABRASER
       MARK P. CHALOS
       PAULINA DO AMARAL
       KENNY S. BYRD
       250 Hudson Street, 8th Floor
       New York, NY 10013
       Tel: 212/355-9500

By:  */s/ Paul J. Geller*
       ROBBINS GELLER RUDMAN
        & DOWD LLP
       PAUL J. GELLER
       FL BAR NO. 984795
       MARK J. DEARMAN
       FL BAR NO. 982407
       AELISH M. BAIG
       DOROTHY P. ANTULLIS
       FL BAR NO. 890421

---

[35] Defendants will suffer no substantial prejudice, nor is there any other reason Broward should not be freely given leave to amend. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100*, 698 F.2d 250, 256 (6th Cir. 1983); *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

- 64 -

ecabraser@lchb.com
mchalos@lchb.com
pdoamaral@lchb.com
kbyrd@lchb.com

120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: 561/750-3000
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
abaig@rgrdlaw.com
dantullis@rgrdlaw.com

By: /s/ James D. Young
    MORGAN & MORGAN COMPLEX
    LITIGATION GROUP
    JAMES D. YOUNG
    FL BAR NO. 567507
    76 South Laura Street
    Suite 1100
    Jacksonville, FL 32202
    Tel: 904/361-0012
    jyoung@forthepeople.com

By: /s/ Robert C. Gilbert
    KOPELOWITZ OSTROW FERGUSON
    WEISELBERG GILBERT
    ROBERT C. GILBERT
    FL BAR NO. 561861
    SCOTT WEISELBERG
    FL BAR NO. 122701
    2800 Ponce de Leon Boulevard, Suite 1100
    Coral Gables, FL 33134
    Tel: 305/384-7269
    gilbert@kolawyers.com
    weiselberg@kolawyers.com

By: /s/ Andrew J. Meyers
    BROWARD COUNTY, FLORIDA
    ANDREW J. MEYERS
    FL BAR NO. 709816
    ANGELA F. BENJAMIN
    FL BAR NO. 015914
    Governmental Center, Suite 423
    115 South Andrews Avenue
    Fort Lauderdale, Florida 33301
    Telephone:  954.357.7600
    Fascimile: 954.357.7641
    ameyers@broward.org
    abenjamin@broward.org

By: /s/ Eugene K. Pettis
    HALICZER PETTIS & SCHWAMM, P.A.
    EUGENE K. PETTIS
    FL BAR NO. 508454
    DEBRA P. KLAUBER
    FL BAR NO. 055646
    One Financial Plaza
    100 SE 3rd Avenue, 7th Floor
    Fort Lauderdale, FL 33394
    Tel: 954/523-9922
    service@hpslegal.com

*Attorneys for Plaintiff Broward County, Florida*