# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE NATIONAL PRESCRIPTION** | ) | **MDL NO. 2804** |
| **OPIATE LITIGATION** | ) | |
| | ) | **CASE NO. 17-md-2804** |
| **This document relates to:** | ) | |
| **All Cases Not Designated In** | ) | |
| **Paragraphs 2 or 3 of CMO-1** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| | ) | |
| | ) | **ORDER REGARDING** |
| | ) | **PLAINTIFFS' MOTION FOR** |
| | ) | **MODIFICATION OF CMO-1** |

Before the Court is Plaintiffs' Motion For Modification Of CMO-1 Regarding Relation Back And Tolling (docket no. 487).  For the reasons stated below, the motion is **granted in part and denied in part**.

## I.     Background

This Court earlier ordered the United States Drug Enforcement Agency ("DEA") to produce certain opioid-related ARCOS data for all of the States and Territories.  *See* docket nos. 233, 397, 668.  Among other reasons, the Court ordered this production to allow Plaintiffs in MDL cases to amend their complaints to properly name "various entities who *should* be named as defendants" and also to remove claims "against defendants who should *not* be named."  Docket no. 397 at 2.

CMO-1 provides that Plaintiffs whose cases are not designated in paragraphs 2 or 3 of CMO-1 may file amended pleadings by May 25, 2018.  *See* docket no. 232 at 9.  As Plaintiffs

point out, however, any amendments filed on or before May 25, 2018, would not benefit from analysis and review of the ARCOS data, which is ongoing even today.

Plaintiffs ask the Court to stay the May 25, 2018 deadline to file amended pleadings without leave of court. In addition, Plaintiffs invoke Fed. R. Civ. P. 15(c) and the doctrine of equitable tolling and ask the Court to order that, for any civil action which is now or later becomes a part of the MDL Proceedings, there is a rebuttable presumption that amendment of any complaint relates back to the filing date of the original complaint in that civil action. In the alternative, Plaintiffs ask the Court to extend the May 25, 2018 deadline for filing amended complaints without leave of Court by at least ninety (90) days from the date on which production and analysis of the fifty-state ARCOS data is complete.

## II.     Legal Standards and Discussion

### A.     Plaintiffs' Request for Indefinite Stay of Deadline to File Amended Complaints

Plaintiffs first ask the Court to stay the May 25, 2018 deadline to file amended complaints "until there has been an opportunity, in due course and without disrupting the preparation of bellwether cases for trial, for Plaintiffs to review and analyze ARCOS data under the guidance and with the assistance of the Plaintiffs' Executive Committee." Docket no. 487 at 3.

Whether to grant or deny a motion to modify a scheduling order is within the district court's discretion. *Marcilis v. Township of Redford*, 693 F.3d 589, 597 (6th Cir. 2012). "A district court has broad discretion to stay proceedings when appropriate to control its docket." *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Courts consider several factors in determining whether to grant a stay: (1) potential prejudice to the non-moving

2

party; (2) hardship and inequity to the moving party absent a stay; and (3) judicial resources that would be saved. *Emerson v. Lincoln Electric Holdings, Inc.*, 2009 WL 690181 at *1 (W.D. Mo. Mar. 12, 2009) (citing *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)).

Defendants acknowledge that an extension of time to allow Plaintiffs to review the ARCOS data is reasonable. They argue, however, that an indefinite stay would remove any incentive for Plaintiffs to diligently review the ARCOS data and amend their complaints in a timely manner. Plaintiffs respond that a requirement that every MDL Plaintiff must review ARCOS data and then amend their complaint would: (1) create a logistical nightmare, because the PEC would have to respond to hundreds of requests for ARCOS data; and (2) dramatically increase the likelihood that ARCOS data would be leaked to the public, even if only accidentally.

"In complex, multidistrict litigation of this sort, courts must grapple with—indeed, juggle—a host of challenges and considerations. Among the most important of those challenges and considerations is striking the right balance between, on the one hand, protecting and preserving the rights and interests of individual litigants while, on the other hand, ensuring that such solicitude does not undermine the central purpose of MDL consolidation—namely, promoting 'just and efficient' resolution of the parties' disputes." *In re Gen. Motors LLC Ignition Switch Litig.,* 2015 WL 3619584 at *11 (S.D.N.Y. June 10, 2015) (citing 28 U.S.C. § 1407(a)).

After fully considering the parties' arguments, the Court concludes as follows. Plaintiffs are entitled to additional time to file amended complaints after reviewing and analyzing the ARCOS data. An indefinite stay, however, would run counter to the obligation of the Court and the parties to "secure the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1. The Court therefore grants in part Plaintiffs' request for a stay of the deadline to file amended complaints. Specifically, on or before July 19, 2018, the PEC shall

file a report derived from the ARCOS data that lists, for every county,[1] all manufacturers, distributors, and pharmacies that contributed directly to the presence of opioids in that county.  The report shall not reveal any data regarding the *amounts or types of opioids* distributed in the counties; rather, the report shall set forth only the *identity* of entities that manufactured, distributed, or sold opioids in the counties.  Plaintiffs in MDL cases[2] may then use this information to amend their complaints, and must do so on or before November 16, 2018 (that is, within 120 days from PEC's filing of the list.)[3]

### B. Plaintiff's Request for Relation Back and Equitable Tolling

Plaintiffs also ask the Court to find a rebuttable presumption that the amendment of any complaint to add additional Defendants relates back, under Fed. R. Civ. P. 15(c) and the doctrine of equitable tolling, to the filing date of the original complaint in that civil action.

The relevant rule for relation back is Fed. R. Civ. P. 15(c)(1)(C):

(c) Relation Back of Amendments

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
. . .
   (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
      (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

---

[1]  The PEC states there are about 3,007 counties and 137 county-equivalents in the United States.

[2]  This Order applies only to those cases not designated in paragraphs 2 or 3 of CMO-1.

[3]  The Court recognizes that the entities who manufactured, distributed, or sold opioids in "County Y" may not be exactly the same entities that manufactured, distributed, or sold opioids in "City X" that is located in "County Y." Because requiring the PEC to create a more granular, city-level report would be extremely burdensome, the Court concludes the county-level report can serve as a reasonable proxy, allowing for fairly accurate identification of appropriately-named defendants.  Amended complaints may then refer to the PEC's report.  If a given MDL case is later set for full discovery and trial, then any necessary corrections – most likely, dropping defendants by a city – can be made at that time.  Finally, the Court reiterates its view that participation by a City or County in any eventual class or aggregate settlement is not contingent on having filed a complaint.

> (ii) knew or should have known that the action would have
> been brought against it, but for a mistake concerning the
> proper party's identity.

The Sixth Circuit has held that when an amendment adds a new party who will be jointly liable

with the original party—as opposed to an amendment that substitutes a party—the amendment will

not relate back.  *See, e.g., Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318-19 (6th

Cir. 2010).  The Sixth Circuit interprets the term "mistake" narrowly, applying only to corrections

or misnomers; thus, lack of knowledge of an intended defendant's identity is not a "mistake"

concerning the party's identity under Rule 15(c).  *Moore v. Tennessee*, 267 F. App'x 450, 455 (6th

Cir. 2008) (citing *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)).

Plaintiffs argue the Supreme Court's ruling in *Krupski v. Costa Crociere S.p.A.,* 560 U.S.

538 (2010), abrogated the Sixth Circuit rule that Rule 15(c) does not allow for addition of new

parties.  In *Krupski*, the plaintiff knew of two potential parties when she filed the lawsuit, but she

sued the wrong party and corrected the mistake after the statute of limitations expired.  *Id*. at 542-

245.  The Supreme Court held that the plaintiff made a "mistake" under Rule 15(c), even though

she knew the identity of the proper party when she filed her complaint. *Id.* at 548-49. "[A] plaintiff

might know that the prospective defendant exists but nonetheless harbor a misunderstanding about

his status or role in the events giving rise to the claim." *Id.* at 549.

Contrary to Plaintiffs' argument, however, it appears *Krupski* did not abrogate the Sixth

Circuit's narrow interpretation of mistake.  *See Smith v. City of Akron,* 476 F. App'x 67, 69-70

(6th Cir. 2012) (plaintiff "did not make a mistake about which defendant to sue; he simply did not

know whom to sue or opted not to find out within the limitations period.").  Two years after the

Supreme Court issued *Krupski*, the Sixth Circuit reiterated that Rule 15(c) "allows relation back

for the mistaken identification of defendants, not for defendants to be named later through 'John Doe,' 'Unknown Defendants' or 'other missing appellations.'" *Id.* at 70.

Even if an MDL Plaintiff can establish it made a "mistake" about which defendant to sue, Plaintiffs must also establish under Rule 15(c)(1)(C)(ii) that "the prospective defendant knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii); *see Krupski* 560 U.S. at 548; *Beverly v. MEVA Formwork Sys., Inc.*, 500 F. App'x 391, 394 (6th Cir. 2012) (relation back issue turns on whether the new defendant received sufficient notice of the lawsuit, and whether it knew or should have known that, but for mistake of identity, it would have been named in original complaint). The Sixth Circuit has suggested several factors for courts to consider in deciding whether a new defendant had constructive notice of the suit: "the relationship of the new defendants to the defendant(s) originally named, whether the same attorney represented both original and new defendants, and whether the new defendants are officials of the original defendant." *Ham v. Sterling Emergency Servs. of the Midwest, Inc*., 575 F. App'x 610, 617-18 (6th Cir. 2014) (citations omitted).

Here, the highly publicized opioid crisis and the filing of the lawsuits now included in this MDL arguably put potential new defendants on constructive and even actual notice of the fact that they would have been named as defendants if Plaintiffs had access to the information contained in ARCOS.[4]  Nonetheless, at this point, Plaintiffs have not named the new defendants and therefore

---

[4]  The Court has recognized that, without access to non-public data contained in the ARCOS database, Plaintiffs "do not know: (a) which manufacturers (b) sold what types of pills (c) to which distributors; nor do they know (d) which distributors (e) sold what types of pills (f) to which retailers (g) in what locations.  In any given case, therefore, the Plaintiff still cannot know for sure who are the correct defendants, or the scope of their potential liability."  Docket no. 233 at 6.  "Discovery of precisely which manufacturers sent which drugs to which distributors, and which distributors sent which drugs to which pharmacies and doctors, is critical . . . to all of Plaintiffs' claims." *Id*. at 8.

the Court cannot examine whether any particular yet-to-be-named defendant had actual notice. Nor can the Court begin to examine the factors weighing on whether potential defendants had constructive notice of the suit during the Rule 4(m) period for service.  *See Smith*, 476 F. App'x at 69.  Further, Defendants correctly point out that Plaintiffs carry the burden to establish relation back under Rule 15(c).  *See Covey v. Assessor of Ohio Cty.*, 666 F. App'x 245, 248 (4th Cir. 2016); *Cooper v. Montgomery Cty.*, 199 F. Supp.3d 1189, 1197 (S.D. Ohio 2016).  Plaintiffs have not met this burden at this juncture.  In sum, the Court will determine whether amendment of a given complaint relates back in a particular case if and when that issue becomes ripe.

Plaintiffs also ask the Court to apply the doctrine of equitable tolling to their yet-to-be-filed amended complaints.  The doctrine of equitable tolling allows a "plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing."  *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 561 (7th Cir. 1996) (*further citation omitted*).

The Sixth Circuit cautions that courts should apply equitable tolling sparingly and only for compelling equitable reasons.  *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *see Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). Moreover, it appears that state law equitable tolling principles apply to Plaintiffs' state law claims, and those state laws vary concerning.[5]  Accordingly, the Court declines to address the issue of

---

[5]  *Compare Noel v. Hoover*, 12 P.3d 328, 330 (Colo. App. 2000) (under Colorado law, equitable tolling is limited to situations where: (1) defendant's wrongful conduct prevented plaintiff from asserting claims in a timely manner, or (2) "truly exceptional circumstances" prevented the plaintiff from filing a claim despite "diligent efforts"); *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008) (under Delaware law, equitable tolling is available only until the plaintiff is on inquiry notice of facts giving rise to the alleged wrong); *Clay v. Kuhl*, 189 Ill.2d 603, 614 (2000) (under Illinois law, equitable tolling may be appropriate if: (1) defendant actively misled plaintiff; or (2) plaintiff was "prevented from asserting his or her rights in some extraordinary way;" or  (3) plaintiff mistakenly asserted her rights in the wrong forum); *Redwing v. Catholic Bishop for*

equitable tolling at this time.  Again, the Court will determine whether equitable tolling applies in a particular case if and when that issue becomes ripe.

   **IT IS SO ORDERED**.

   /s/ *Dan Aaron Polster*
   **DAN AARON POLSTER**
   **UNITED STATES DISTRICT JUDGE**

   **Dated: July 13, 2018**

---

*Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012)  ("[U]nlike other state courts and the federal courts, [Tennessee courts] have declined to recognize the doctrine of equitable tolling in civil cases" but recognize doctrines of "equitable estoppel and fraudulent concealment to toll the running of the statute of limitations").