**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*County of Summit, Ohio, et al. v. Purdue*
*Pharma L.P., et al.*
Case No. 18-OP-45090 (N.D. Ohio)

**MDL No. 2804**
**Case No. 17-md-2804**
**Judge Dan Aaron Polster**

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**
**BY DEFENDANTS WALMART INC., CVS INDIANA, L.L.C.,**
**CVS RX SERVICES, INC., RITE AID OF MARYLAND, INC.,**
**AND WALGREENS BOOTS ALLIANCE, INC.**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTORY STATEMENT OF THE ISSUES
    AND SUMMARY OF ARGUMENT ............................................................ 1

ARGUMENT ................................................................................................................ 2

I.     Plaintiffs Lack Article III Standing to Sue the Moving Defendants. ................................. 2

II.    Plaintiffs State No Claims Against the Moving Defendants as Pharmacies. ..................... 4

III.   The Ohio Product Liability Act Abrogates Plaintiffs' Tort Claims. ................................. 4

IV.   Plaintiffs' Negligence Claim is Legally Deficient (Count 7). .......................................... 5

      A.     The Moving Defendants owe no duty to Plaintiffs. ........................................... 5

      B.     Plaintiffs cannot establish proximate cause. .................................................. 10

      C.     The economic loss doctrine precludes liability. ............................................... 13

V.    Plaintiffs' Public Nuisance Claims Fail to Plausibly Allege Any Violation of
      Federal or State Law (Counts 5, 6). ........................................................................ 13

      A.     Statutory public nuisance ............................................................................ 13

      B.     Absolute public nuisance ............................................................................. 16

VI.   Plaintiffs' Unjust Enrichment Claim Fails (Count 10). ............................................... 16

VII.  Plaintiffs Fail to Establish an Actionable Civil Conspiracy Claim (Count 11). .............. 19

VIII. Plaintiffs' Claim Under Ohio Rev. Code § 2307.60 Fails on Multiple Grounds
      (Count 9). ........................................................................................................... 22

CONCLUSION .......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ..................................................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 19, 24

*Ashley Cty., Ark. v. Pfizer, Inc.*,
   552 F.3d 659 (8th Cir. 2009) ............................................................................... 10, 12, 17

*Bank of America v. City of Miami*,
   137 S. Ct. 1296 (2017) .............................................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................. 20

*Bohme, Inc. v. Sprint Int'l Commc'n Corp.*,
   686 N.E.2d 300 (Ohio Ct. App. 1996) .................................................................................8

*California Motor Transport Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972) .............................................................................................................. 21

*Caterpillar Fin. Servs. Corp. v. Harold Tatman & Sons Enters., Inc.*,
   50 N.E.3d 955 (Ohio Ct. App. 2015) ............................................................................... 18

*City of Chicago v. Beretta U.S.A. Corp.*,
   821 N.E.2d 1099 (Ill. 2004) ............................................................................................... 16

*City of Cincinnati v. Beretta U.S.A., Corp.*,
   768 N.E.2d 1136 (Ohio 2002) ...................................................................................... passim

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.*,
   621 F. Supp. 2d 513 (N.D. Ohio 2009) ................................................................6, 12, 13

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.*,
   615 F.3d 496 (6th Cir. 2010) .........................................................................................6, 9

*City of Toledo v. Sherwin-Williams Co.*,
   No. CI 200606040, 2007 WL 4965044 (Ohio Ct. Com. Pl. Dec. 12, 2007) ......................8, 9

*Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*,
   621 F.3d 554 (6th Cir. 2010) ...............................................................................................9

*Cleveland v. JP Morgan Chase Bank, N.A.*,
   No. 98656, 2013 WL 1183332 (Ohio Ct. App. Mar. 21, 2013) ............................................ 12

*Coyne v. Am. Tobacco Co.*,
   183 F.3d 488 (6th Cir. 1999) ...............................................................................................3

*Cromer v. Children's Hosp. Med. Ctr. of Akron*,
   29 N.E.3d 921 (Ohio 2015) ...................................................................................................8

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*DriveTime Car Sales Co. v. Pettigrew*,
No. 2:17-cv-371, 2018 WL 741138 (S.D. Ohio Feb. 7, 2013) ...............................................23

*Dunlap v. Medtronic, Inc.*,
47 F. Supp. 2d 888 (N.D. Ohio 1999).........................................................................................9

*Evans v. Ohio Dep't of Rehab. & Corr.*,
No. 16AP767, 2018 WL 1391617 (Ohio Ct. App. Mar. 20, 2018) ........................................23

*Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*,
560 N.E.2d 206 (Ohio 1990) ...................................................................................................13

*Gosden v. Louis*,
687 N.E.2d 481 (Ohio Ct. App. 1996).....................................................................................19

*Hambleton v. R.G. Barry Corp.*,
465 N.E.2d 1298 (Ohio 1984) ............................................................................................17, 19

*Harris v. Purdue Pharma, L.P.*,
218 F.R.D. 590 (S.D. Ohio 2003).............................................................................................9

*Hoffer v. Cooper Wiring Devices, Inc.*,
No. 1:06-cv-763, 2007 WL 1725317 (N.D. Ohio June 13, 2007) ..........................................18

*Holmes v. Sec. Inv'r Prot. Corp.*,
503 U.S. 258 (1992).................................................................................................6, 10, 12

*In re Asbestos Sch. Litig.*,
46 F.3d 1284 (3d Cir. 1994).....................................................................................................21

*In re Polyurethane Foam Antitrust Litig.*,
152 F. Supp. 3d 968 (N.D. Ohio 2015).....................................................................................21

*In re Travel Agent Comm'n Antitrust Litig.*,
583 F.3d 896 (6th Cir. 2009) ...................................................................................................19

*In re Welding Fume Prods. Liab. Litig.*,
526 F. Supp. 2d 775 (N.D. Ohio 2007).....................................................................................21

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
684 F. Supp. 2d 942 (N.D. Ohio 2009).....................................................................................18

*Jacobson v. Kaforey*,
75 N.E.3d 203 (Ohio 2016) ...............................................................................................22, 23

*Jane v. Patterson*,
No. 1:16-cv-2195, 2017 WL 1345242 (N.D. Ohio Apr. 12, 2017) ..................................22, 23

*Jeffers v. Olexo*,
539 N.E.2d 614 (Ohio 1989) ...................................................................................................10

*Johnson v. Microsoft Corp.*,
834 N.E.2d 791 (Ohio 2005) ...................................................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Little Hocking Water Ass'n, Inc. v. E.I. du Pont Nemours & Co.*,
    91 F. Supp. 3d 940 (S.D. Ohio 2015) ...................................................................17

*MacDonald v. Cleveland Income Tax Bd. of Review*,
    86 N.E.3d 314 (Ohio 2017) .................................................................................15

*McClure v. Owens Corning Fiberglas Corp.*,
    720 N.E.2d 242 (Ill. 1999)..................................................................................21

*Menifee v. Ohio Welding Products, Inc.*,
    472 N.E.2d 707 (Ohio 1984) ................................................................................8

*Moore v. Texaco, Inc.*,
    244 F.3d 1229 (10th Cir. 2001) ..........................................................................17

*Mussivand v. David*,
    544 N.E.2d 265 (Ohio 1989) .........................................................................5, 10

*Nova Health Sys. v. Gandy*,
    416 F.3d 1149 (10th Cir. 2005) ............................................................................3

*Ohio Edison Co. v. Direct Energy Bus., LLC*,
    No. 5:17-cv-746, 2017 WL 3174347 (N.D. Ohio July 26, 2017)..........................18

*Parsons v. U.S. Dep't of Justice*,
    801 F.3d 701 (6th Cir. 2015) ................................................................................3

*Philadelphia Fire & Marine Ins. Co. v. Hirschfield Printing Co.*,
    53 N.E.2d 827 (Ohio Ct. App. 1943)....................................................................6

*Simpson v. Big Bear Stores Co.*,
    652 N.E.2d 702 (Ohio 1995) ................................................................................6

*State ex rel. Carna v. Teays Valley Local Sch. Dist. Bd. of Educ.*,
    967 N.E.2d 193 (Ohio 2012) ..............................................................................15

*State ex rel. DeWine v. Fred's Party Center, Inc.*,
    13 N.E.3d 699 (Ohio Ct. App. 2014)...................................................................15

*State v. Gardner*,
    889 N.E.2d 995 (Ohio 2008) ................................................................................6

*Sun Bldg. Ltd. P'ship v. Value Learning & Teaching Acad.*,
    Nos. C-160789, C-160793, 2017 WL 5903365 (Ohio Ct. App. Nov. 29, 2017)....................23

*Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins.*,
    No. 16AP-742, 2017 WL 1407304 (Ohio Ct. App. April 20, 2017) ......................18

*United States v. Shabani*,
    513 U.S. 10 (1994)..............................................................................................23

*Vadaj v. French*,
    89 N.E.3d 73 (Ohio Ct. App. 2017).....................................................................10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wallace v. Ohio Dep't of Commerce*,
   773 N.E.2d 1018 (Ohio 2002) ............................................................................7, 8

*White v. Smith & Wesson Corp.*,
   97 F. Supp. 2d 816 (N.D. Ohio 2000)........................................................5, 17, 18

*Woodward Const., Inc. v. For 1031 Summit Woods, LLC*,
   30 N.E.3d 237 (Ohio Ct. App. 2015) ....................................................................19

### STATUTES

Ohio Rev. Code § 1.47..........................................................................................15

Ohio Rev. Code § 1.51.....................................................................................14, 15

Ohio Rev. Code § 715.44.................................................................................14, 15

Ohio Rev. Code § 2307.60.................................................................2, 22, 23, 24

Ohio Rev. Code §§ 2307.71 *et seq.* .......................................................................9

Ohio Rev. Code § 3767.03...............................................................................14, 15

Ohio Rev. Code § 4729.35...............................................................................14, 15

### OTHER AUTHORITIES

Fed. R. Civ. P. 9....................................................................................................22

## INTRODUCTORY STATEMENT OF THE ISSUES
## AND SUMMARY OF ARGUMENT

Like their Complaint, Plaintiffs' Brief in Opposition focuses on the conduct of the Manufacturer Defendants (styled "Marketing Defendants" in the Complaint), whose marketing practices purportedly "caused [the] prescribing of opioids . . . to skyrocket," leading the "opioid epidemic" to "become the crisis it is today."  Pls.' Br. 1.  Defendants Walmart Inc., Rite Aid of Maryland, Inc., Walgreens Boots Alliance, Inc., CVS Indiana, L.L.C., and CVS Rx Services, Inc. (collectively, the "Moving Defendants")[1] played no role in the manufacture or marketing of opioids.  Nonetheless, Plaintiffs assert that the Moving Defendants also bear responsibility for the opioid crisis, claiming that "[o]nce Manufacturer Defendants created the mass market for prescription opioids, Distributor Defendants flooded it."  *Id*. at 2.  The Moving Defendants, however, could not have "flooded" this market, because they delivered prescription medication only to their own pharmacies, and the medications they distributed were ultimately dispensed only to fill prescriptions written by licensed physicians who acted independently of the Moving Defendants.

Plaintiffs' real complaint is thus not that the Moving Defendants "flooded" any market, but rather that they failed to detect and stop the misconduct of unrelated third parties, including (according to Plaintiffs) the Manufacturer Defendants who allegedly engaged in deceptive marketing; the prescribing physicians who over-prescribed opioids or ran "pill mills"; the individuals and organizations who obtained and supplied opioids on the black market; and the individuals who abused the drugs.  But the law generally does not hold parties accountable for

---

[1] Walgreens Boots Alliance, Inc. submits this brief without prejudice to its pending motion to dismiss for lack of personal jurisdiction (Doc. 14) and Plaintiffs' unopposed motion to dismiss their claims against Walgreens Boots Alliance, Inc. (Doc. 68).

failing to prevent harms caused by third parties, and for the reasons discussed below, there is no reason to depart from that basic principle here.

The Moving Defendants incorporate the Major Distributors' relevant arguments by reference, and offer this brief only to raise additional arguments and highlight why the Court should dismiss all claims against the Moving Defendants.  In particular, the Moving Defendants will highlight why, notwithstanding the arguments in their Brief, Plaintiffs lack Article III standing, why an order should be entered dismissing any claims based on pharmacy-level (as opposed to distributor) conduct, and how the Complaint fails to state claims for negligence, public nuisance, unjust enrichment, civil conspiracy, or relief under Ohio Code § 2307.60.

## ARGUMENT

### I.  Plaintiffs Lack Article III Standing to Sue the Moving Defendants.

As a threshold matter, Plaintiffs lack standing to sue the Moving Defendants, because their alleged injuries are not fairly traceable to actions the Moving Defendants took, and because the harms they assert are derivative of alleged harms to the public.  *See* Moving Defs.' Br. 4-6.

Plaintiffs assert that "[i]t is ludicrous to suggest that a widespread epidemic of addiction is not . . . 'fairly traceable' to the conduct of Defendants."  Pls.' Br. 108.  But, at least as to the Moving Defendants, that suggestion is not "ludicrous" at all.  Plaintiffs assert that they were injured by having to make increased "payments from the public coffers to address the opioid crisis."  *Id.* at 106.  Even if increased public service costs were traceable to the *Manufacturing* Defendants' alleged misleading marketing of opioids to physicians, physicians' writing of improper prescriptions or operation of "pill mills," individuals' illegal supplying of opioids to third parties, and individuals' abuse of the drugs, such costs are not fairly traceable to the *Moving* Defendants' conduct:  The Moving Defendants ship federally licensed medications from their distribution centers to their own pharmacies for use in filling prescriptions written by duly-

licensed physicians. As noted above, Plaintiffs' main complaint against the Moving Defendants is that they failed to intervene, by "monitoring and reporting suspicious activity," to *stop* the crisis set in motion and perpetuated by these other actors' affirmative acts. *See* Compl. ¶ 611. But it is entirely speculative to suggest that monitoring and reporting "suspicious activity" would have reduced the alleged harms suffered by Plaintiffs as a result of conduct by third parties.

Although traceability need not rise to the level of but-for cause, "causation means more than speculative" cause. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 714 (6th Cir. 2015). Plaintiffs have not identified a single shipment that was distributed improperly, much less one that resulted in increased municipal costs. "[T]he mere possibility that causation is present is not enough" to establish traceability, and "the presence of an independent variable between . . . the harm and the conduct makes causation sufficiently tenuous that standing should be denied." *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015) (internal quotation omitted); *see also Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005) (standing not present when speculative inferences connect injury to conduct).

What is more, all of Plaintiffs' asserted harm "flow[s] merely from the misfortunes visited upon . . .third person[s]"—individual opioid users—and is therefore "too remote" a basis on which to recover. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 495 (6th Cir. 1999) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268-69 (1992)). To be sure, the plaintiffs in *Coyne* sued in their capacities as taxpayers, rather than as elected officials, and so the court there discussed their taxpayer status in rejecting their claims. *See* Pls.' Br. 107 (discussing *Coyne*). But *Coyne*'s general statements of law regarding remoteness and the requirement of direct injury, cited in the Moving Defendants' opening brief, apply fully here. And *Coyne* relied on the

derivative nature of the plaintiffs' claims, not just their taxpayer status, in dismissing the case. That binding precedent requires dismissal.

The other case on which Plaintiffs rely, *Bank of America v. City of Miami*, 137 S. Ct. 1296 (2017), has little bearing on this case.  In *Bank of America*, the Supreme Court concluded that the City of Miami's claims of financial injury satisfied the "cause-of-action" requirement for *statutory standing* under the Fair Housing Act.  *Id.* at 1303.  The Supreme Court's analysis thus focused on the scope of the FHA's statutory purpose of addressing racial discrimination.  This case, in contrast, is not brought under any statute, *see infra* Part IV, and does not implicate any zone of interest as broad as remedying racial discrimination.

## II.     Plaintiffs State No Claims Against the Moving Defendants as Pharmacies.

The Moving Defendants previously noted that vague allegations in the Complaint might be read as asserting claims against them in their capacities as dispensing pharmacies rather than as distributors and, out of an abundance of caution, moved to dismiss any such claims.  Moving Defs.' Br. 7-8.  Plaintiffs' only response to that argument is to state: "Plaintiffs do not allege violations of statues or regulations applicable specifically to retailers who sell opioids.  To the extent that Pharmacy Defendants also act as distributors, however, they may be subject to requirements under the CSA and Ohio law applicable to distributors."  Pls.' Br. 75 n.47.  To avoid any confusion, the Court should grant the motion to dismiss with respect to any claims against the Moving Defendants in their retail pharmacy capacity.

## III.    The Ohio Product Liability Act Abrogates Plaintiffs' Tort Claims.

For the reasons set forth in the Major Distributors' opening and reply briefs, the Court should dismiss Plaintiffs' tort claims because they have been abrogated by the Ohio Product Liability Act (OPLA).  *See* Major Distributors' Br. Parts III.A & IV.A; Major Distributors' Reply Part II.A & III.A.

4

## IV.    Plaintiffs' Negligence Claim is Legally Deficient (Count 7).

As the Major Distributors and the Moving Defendants explained in their opening briefs, Plaintiffs' negligence claim fails as a matter of law.  Among other things, Plaintiffs fail to identify any duty the Moving Defendants owed to Plaintiffs, either at common law or under statute, and fail to adequately plead proximate cause.  Their claims are also barred by the economic loss doctrine.  *See* Major Distributors' Br. Parts III & IV; Major Distributors' Reply Part III & V; Moving Defs.' Br. Part IV.

### A.    The Moving Defendants owe no duty to Plaintiffs.

Whether the Moving Defendants owe Plaintiffs a duty is a question for this court, not the jury.  *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989).[2]  In their Brief, Plaintiffs disclaim any intent to enforce any statutory duty, including any arising from the federal or Ohio Controlled Substances Act (CSA).  *See, e.g.,* Pls.' Br. 74-75 ("Plaintiffs do not seek to enforce Defendants' statutory and regulatory duties.").  Plaintiffs are therefore left to argue common-law duty, to no avail.  They assert that all Defendants—including the Moving Defendants—have a general duty of care in the distribution and marketing of opioids, and (more specifically) a duty to identify or report suspicious orders and diversion.  Compl. ¶¶ 107, 502, 611.  But Plaintiffs identify no case law or other authority specifically recognizing a common-law duty to monitor

---

[2] Plaintiffs incorrectly assert, relying on *City of Cincinnati v. Beretta U.S.A., Corp.*, 768 N.E.2d 1136, 1145 (Ohio 2002), that the existence of a duty is a jury question.  Pls.' Br. 70.  The language Plaintiffs cite in *City of Cincinnati* is itself a quote from a federal district court opinion discussing duty and breach simultaneously, and it does not state that the existence of duty must be a jury question.  *See White v. Smith & Wesson Corp.*, 97 F. Supp. 2d 816, 829 (N.D. Ohio 2000).  Moreover, the procedural posture of *City of Cincinnati* shows that the existence of a duty is a question of law: the trial court had dismissed the City's action for failure to state a claim, and the Court then evaluated the existence of a duty as a purely legal matter.  768 N.E.2d at 1145.

pharmacy orders or halt or report suspicious orders—let alone one that would run to municipalities indirectly injured by harms caused by the misuse of those orders.

Unable to cite such a case, Plaintiffs fall back on general principles, invoking a general duty "to use reasonable care to avoid injuring another person."  Pls.' Br. 70.  But citing this broad principle does nothing to explain whether it applies in a particular case, what "reasonable care" means in any given situation, or to whom such a duty might run.  Nothing about the facts of the case Plaintiffs cite for this duty—which involved a defendant whose employee lit a match near gasoline and set a nearby car on fire—supports recognizing a duty here.  *Philadelphia Fire & Marine Ins. Co. v. Hirschfield Printing Co.*, 53 N.E.2d 827, 828 (Ohio Ct. App. 1943).[3]

Recognizing a duty running between the Moving Defendants and Plaintiffs here would upend fundamental principles of tort law.  *See* Moving Defs.' Br. 8-9.  As noted earlier, Plaintiffs in essence ask the Court to recognize a duty on the part of the Moving Defendants to prevent an indirect harm to Plaintiffs caused by the conduct of the third parties—including prescribing doctors, opioid users and dealers, and (allegedly) manufacturers—who (Plaintiffs say) are directly responsible for the opioid epidemic.  But the rule in Ohio is that there is no duty to prevent a third party from causing harm to another absent a legally-recognized special relationship between the parties.  *Simpson v. Big Bear Stores Co*., 652 N.E.2d 702, 705 (Ohio 1995).  Because Plaintiffs effectively concede that no such special relationship exists here, *see* Pls.' Br. 73, the Court should decline to recognize this alleged duty.

---

[3] Plaintiffs also rely on model jury instructions and the Restatement to establish a supposed duty.  *See* Pls.' Br. 70.  These are not binding authority.  At most, and only when they are accurate, jury instructions and the Restatement summarize or restate the law.  *See State v. Gardner*, 889 N.E.2d 995, 1016 (Ohio 2008) (jury instructions); *City of Cleveland v. Ameriquest Mortg. Sec*., *Inc*., 621 F. Supp. 2d 513, 523 (N.D. Ohio 2009), *aff'd sub nom. City of Cleveland v. Ameriquest Mort. Sec.*, *Inc*., 615 F.3d 496 (6th Cir. 2010) (Restatement).

Plaintiffs resist this conclusion by suggesting that their municipal fund expenditures were caused not by third parties, but rather by Defendants' own negligent conduct.  *See* Pls.' Br. 73-74.  But at least as to the Moving Defendants, this claim is incorrect.  As Plaintiffs themselves assert, there would have been no opioid crisis in the first place if no manufacturer had (allegedly) misled doctors about opioids, no doctor had written improper prescriptions or operated a pill mill, and no dealers or users had improperly obtained opioids.  *See id.* at 1.  Plaintiffs allege that the Moving Defendants should have intervened to stop this misuse of opioids and "harms result[ing] from the over-prescribing and over-use of opioid[s]" by identifying and reporting suspicious orders, thereby preventing the distribution of opioids that indirectly caused Plaintiffs to expend additional municipal funds.  Pls.' Br. 2, 12, 17, 74.  But even assuming this action would have reduced Plaintiffs' harm (a highly speculative, conclusory assertion), it would represent a paradigmatic case of intervening to stop a harm caused by third parties—something the law does not require absent the kind of special relationship that Plaintiffs concede does not exist here.  And Plaintiffs identify no principle that would prevent their argument from extending to *any* activity, even a lawful one, that would indirectly increase municipal expenditures.

Plaintiffs also suggest that recognizing a duty is appropriate because of the supposed foreseeability of the injury at issue in this case.  *See* Pls.' Br. 71-74.  For several reasons, this argument likewise fails.  *First*, none of the cases Plaintiffs cite suggests that foreseeability can—contrary to the principle discussed above—create a duty to prevent harm caused by third parties absent a special relationship between the parties.  Those cases thus cannot lead to any different conclusions that the ones discussed above.  *Second*, the Ohio Supreme Court has made clear that foreseeability is only one aspect of the "sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."  *Wallace v. Ohio Dep't of*

7

*Commerce*, 773 N.E.2d 1018, 1026 (Ohio 2002). Plaintiffs do not address other considerations, including the relationship between the parties, *id.*, which, as discussed, is too attenuated to support a finding of duty here. *Third*, even if it is true that in some instances Ohio courts have looked to foreseeability in finding a duty, Plaintiffs identify no case whose facts suggest that this Court should recognize a duty here. Indeed, in Plaintiffs' lead case on foreseeability, *Menifee v. Ohio Welding Products, Inc.*, the Ohio Supreme Court ruled that the designer of a compressed air system could *not* have foreseen that employees would be exposed to nitrogen gas due to the actions of another entity, and held the designer not liable. 472 N.E.2d 707, 710 (Ohio 1984). That holding in no way suggests that the Court should recognize a duty here.[4] Finally, it was not foreseeable that the Moving Defendants' distribution of prescription medications to their own pharmacies, to fill prescriptions issued by licensed physicians, would result in an epidemic of illegal opioid abuse that caused indirect economic injury to a government entity.

Plaintiffs also suggest that the court's sharply divided opinion in *City of Cincinnati v. Beretta U.S.A., Corp.*, 768 N.E.2d 1136 (Ohio 2002), supports the proposition that a duty can run between prescription medication distributors and municipalities with which they have no special relationship. *See* Pls.' Br. 71-74. That too is incorrect, for multiple reasons. *First*, *City of Cincinnati* has been abrogated by the Ohio state legislature and the product liability statute that subsumes products-related tort claims. *See generally City of Toledo v. Sherwin-Williams Co.*, No. CI 200606040, 2007 WL 4965044, at n.2 (Ohio Ct. Com. Pl. Dec. 12, 2007) (unpublished)

---

[4] The other cases Plaintiffs cite in their discussion relied on factors other than foreseeability in reaching their conclusions. *Bohme, Inc. v. Sprint International Communications Corporation* held that the defendant owed a duty of care in maintaining a rooftop air conditioning unit because plaintiff and defendant were co-tenants and had a special relationship. 686 N.E.2d 300, 304 (Ohio Ct. App. 1996). *Cromer v. Children's Hospital Medical Center of Akron*, similarly, concerned the duty medical professionals owe to their patients. 29 N.E.3d 921, 929 (Ohio 2015).

(noting abrogation); Ohio Rev. Code §§ 2307.71 *et seq*.[5]  *Second*, *City of Cincinnati* was an outlier even when it was decided, *see* Major Distributors' Br. 22-23 & n.18, and its reasoning remains unpersuasive.  As discussed further in Part IV.B, other courts' analyses of tort claims in mortgage lending and methamphetamine lawsuits are better guides to resolution of this case.  *Third*, the factual context here distinguishes this case from *City of Cincinnati*.  The firearms at issue in *City of Cincinnati* were distributed for sale directly to consumers, with no intervening actions by third parties, and no limits (beyond the criminal law) on how the firearms could be used after purchase.  The opioids the Moving Defendants distributed, in contrast, could only be sold to consumers who first obtained a valid prescription from a licensed physician responsible for their treatment.  Thus, unlike in the case of the firearms at issue in *City of Cincinnati*, the connection between the distribution of opioids and their ultimate use is interrupted by prescribing physicians, whom Ohio law recognizes as learned intermediaries with a duty to know their patients' medical needs and take responsibility for their patients' treatment.[6]  *Dunlap v. Medtronic, Inc*., 47 F. Supp. 2d 888, 898 (N.D. Ohio 1999); *Harris v. Purdue Pharma, L.P*., 218 F.R.D. 590, 598 (S.D. Ohio 2003).  Imposing a duty in this case—holding that distributors are

---

[5] Rather than suggesting that the Court of Common Pleas has the authority to overrule the Ohio Supreme Court, the Moving Defendants cite *City of Toledo*, 2007 WL 4965044, at n.2, because that case notes the abrogation by the product liability statute.  And although Plaintiffs correctly note that *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co*., 621 F.3d 554, 565 (6th Cir. 2010), and *City of Cleveland v. Ameriquest Mortgage Securities, Inc*., 615 F.3d 496, 505 (6th Cir. 2010), have cited *City of Cincinnati* for basic legal principles, no court has done so in the context of a product liability action like this one, where the OPLA supersedes the decision.  *See* Pls.' Br. 81 n.51.

[6] The learned intermediary doctrine operates as a shield against liability when the warning to a physician is adequate.  *Dunlap v. Medtronic, Inc*., 47 F. Supp. 2d 888, 898 (N.D. Ohio 1999).  Here, there is no dispute that the prescription drugs came with federally-required warnings.  Plaintiffs argue that the marketing tactics of the Manufacturer Defendants somehow overcame those clear warnings, Pls.' Br. 84, but Plaintiffs point to no action by the Moving Defendants that would cause physicians to overprescribe or illegally prescribe medications.

legally responsible for the misuse of prescription medications despite the intervening medical judgment of patients' prescribing physicians—would therefore expand negligence liability beyond even that recognized in *City of Cincinnati*.  For all these reasons, there is no basis to impose a duty on the Moving Defendants for Plaintiffs' alleged injury, and the negligence claim should be dismissed.[7]

**B.  Plaintiffs cannot establish proximate cause.**

Plaintiffs also fail to adequately allege a "direct relation between the injury asserted and the injurious conduct alleged," *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992), and thus cannot establish proximate cause, *Vadaj v. French*, 89 N.E.3d 73, 77 (Ohio Ct. App. 2017).

First, the actions of third parties acting entirely independently of the Moving Defendants break the causal chain between the Moving Defendants and Plaintiffs' alleged municipal expenditures.  *See* Moving Defs' Br. Part IV.B.  Plaintiffs themselves acknowledge that, as a general matter, the acts of third parties break the chain when those acts are not foreseeable and are "fully independent of Defendants' negligence."  Pls.' Br. 82; *see also Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 670 (8th Cir. 2009) (actions of methamphetamine cooks broke chain because they were independent of distributor drug companies who sold cold medicine to retail stores).  But they attempt to sidestep this principle by arguing that the actions of "physicians who wrote prescriptions for opioids and third-parties who engaged in criminal diversion of opioids" were foreseeable and "specifically triggered" by the Defendants.  Pls.' Br. 82.

---

[7] Even assuming the federal and Ohio CSAs might demonstrate a standard of care, Plaintiffs do not argue that those laws themselves, or any other statute, create any duty.  Without either a common law or statutory duty, Plaintiffs' claim, whether posed as negligence or negligence *per se*, fails.  *Jeffers v. Olexo*, 539 N.E.2d 614, 616 (Ohio 1989); *Mussivand*, 544 N.E.2d at 271-72.  To the extent Plaintiffs' argue at footnote 50 that the lack of a statutory duty does not preclude a common law duty, that argument misses the point:  Neither duty exists.

As to Moving Defendants, this assertion is false.  With respect to the intervening conduct of physicians—without whose prescriptions none of the opioids distributed by the Moving Defendants could have been dispensed—Plaintiffs do not even *claim* that the Moving Defendants "triggered," or could have foreseen, unnecessary prescriptions or the operation of "pill mills." Indeed, Plaintiffs assert that these prescription decisions were an "entirely foreseeable result of the *Manufacturer Defendants*' [allegedly] fraudulent conduct." *Id*. at 83 (emphasis added). They say nothing about the Moving Defendants—effectively conceding that the intervening conduct of prescribing physicians breaks the causal change as to the Moving Defendants.  That alone requires dismissal of Plaintiffs' negligence claim.[8]

With respect to the intervening acts by those who criminally diverted opioids, Plaintiffs suggest that these acts were "entirely foreseeable consequence[s]" of Defendants' "failure to control the opioid supply chain." *Id*. at 84.  But as noted earlier, criminal diversion of opioids was not a foreseeable result of the Moving Defendants' distribution of opioids to their own pharmacies for dispensing pursuant to valid prescriptions.  *See supra* Part IV.A.  Moreover, as also discussed above, it is entirely speculative whether the Moving Defendants' alleged failure to report suspicious orders exacerbated the indirect harms suffered by Plaintiffs, and unclear what effect reporting such orders would have had on the opioid epidemic.  *See supra* Part I.

Second, with respect to directness, it remains true that Plaintiffs' injuries are both derivative and attributable to a multiplicity of potential intervening causes—characteristics that

---

[8] Plaintiffs further suggest that the doctor's role as "learned intermediary" does not "break the causal chain."  Their argument, however, again focuses on the Manufacturer Defendants' alleged conduct, asserting that "the warnings [to doctors] in opioid labeling were overcome by Manufacturer Defendants' aggressive and deceptive marketing of their drugs." Pls.' Br. 84.  This argument does not apply to the Moving Defendants.  And in any event, the primary significance of the learned intermediary doctrine here is its confirmation of the special duty physicians owe to oversee and take responsibility for the care of their patients.

defeat proximate causation as a matter of law.  *See* Moving Defs.' Br. 15-17.  To counter this

conclusion, Plaintiffs again turn to *City of Cincinnati v. Beretta*, arguing that it supports a finding

of proximate cause notwithstanding the independent, superseding acts of third parties.  As

previously noted, however, *City of Cincinnati* was wrongly decided and is not binding on this

court.  In addition, the proximate cause analysis in *City of Cincinnati* does not control the

analysis of proximate cause as to the Moving Defendants, because intervening causes exist here

that were absent in *City of Cincinnati*.  *See* Major Distributors' Br. 23-26; *cf. City of Cincinnati*,

768 N.E.2d at 1148 (suggesting that the alleged harm in Cincinnati was a "direct result" of the

manufacturers' misconduct).  For example, there was no analogue in *City of Cincinnati* to the

prescribing physicians in this case.  And unlike the defendants in *City of Cincinnati*, the Moving

Defendants here played no role in the *marketing* of the product at issue—conduct that Plaintiffs

allege was a critical additional cause of their injuries.  See Pls.' Br. 1; *cf. City of Cincinnati*, 768

N.E.2d at 1140 (noting that appellees "manufactured, marketed, and distributed their firearms").

The presence of these additional intervening causes of Plaintiffs' alleged injury, combined with

the speculative nature of the assertion that Moving Defendants *could* have acted to reduce

Plaintiffs' alleged injuries, would make it "difficult . . . to ascertain the amount of [Plaintiffs']

damages attributable to the [Moving Defendants' alleged] violation, as distinct from other,

independent, factors."  *Holmes*, 503 US at 269.   As a result, the mortgage lending and

methamphetamine cases cited in the Moving Defendants' opening brief, in which courts

dismissed on proximate cause grounds due to the "potential number of intervening causes,"

should guide this case.  *See City of Cleveland*, 621 F. Supp. 2d 513; *Cleveland v. JP Morgan

Chase Bank, N.A.*, No. 98656, 2013 WL 1183332 (Ohio Ct. App. Mar. 21, 2013); *Ashley Cty.*,

552 F.3d 659.

### C.      The economic loss doctrine precludes liability.

The economic loss rule in Ohio also bars Plaintiffs' negligence claim.  "[T]he general rule is there is *no duty to exercise reasonable care* to avoid intangible *economic loss* or losses to others that do not arise from tangible physical harm to persons and tangible things." *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 208 (Ohio 1990) (emphasis added) (quotation omitted).  Plaintiffs assert that the economic loss doctrine is limited to "disputes between parties in a commercial relationship," Pl. Br. at 86.  But Ohio law applies the doctrine broadly, as demonstrated by the district court's dismissal of the City of Cleveland's negligence and nuisance claims seeking economic damages related to the subprime loans and securities litigation.  *City of Cleveland*, 621 F. Supp. 2d at 521-26.  Here, Plaintiffs request relief from their indirect and purely economic injuries, derivative of the harms felt by others.  *See* Compl. ¶¶ 20, 728-45, 1062-63.  Because of this, and as explained by the Major Distributors' Reply Part V, the economic loss rule bars these claims.

### V.      Plaintiffs' Public Nuisance Claims Fail to Plausibly Allege Any Violation of Federal or State Law (Counts 5, 6).

The Major Distributors and Moving Defendants explained in their opening briefs that even if Plaintiffs' public nuisance claims were not abrogated by OPLA, they would fail on their own terms.  Nothing in Plaintiffs' Brief changes this conclusion.

### A.      Statutory public nuisance

The Moving Defendants explained that Ohio law does not permit Plaintiff cities, including Akron, to maintain their statutory public nuisance claims and that, in any event, Plaintiffs' vague and conclusory allegations fail to state any claim.  Moving Defs.' Br. 17-19.  Plaintiffs' arguments to the contrary are unpersuasive.

*First*, the Ohio statute authorizing nuisance suits based on violations of drug distribution laws, Ohio Rev. Code § 4729.35, permits only a handful of listed plaintiffs to bring suit, including the Ohio attorney general and county prosecuting attorneys.  The list does not include municipalities or their agents.  *Id.*  Plaintiffs argue that Akron is nonetheless authorized to pursue its nuisance claim by two broader, more general statutes. Pls.' Br. 16-17.[9]  The first, § 3767.03, permits a suit to abate a nuisance by the Ohio attorney general, a city director of law, a county prosecuting attorney, or "any person who is a citizen of the county in which the nuisance exists." The second, § 715.44—which is part of the chapter setting forth the general powers of municipalities—says that a municipality may "[a]bate any nuisance."  But contrary to Plaintiffs' arguments, neither of these general statutes nullifies the General Assembly's decision in § 4729.35 to limit nuisance suits based on violations of the drug distribution laws to the plaintiffs actually listed in that provision.

Plaintiffs suggest that § 3767.03 permits any of the persons it names to bring a nuisance suit for violation of the drug distribution laws.  If that were true, however, then § 4729.35's express authorization of such suits by the attorney general or a county prosecuting attorney (but *not* by municipal employees or citizens of the affected county) would be superfluous, because those two types of plaintiffs could already sue to abate any nuisance, including one related to drug distribution, under § 3767.03.  Such an implausible interpretation would violate "the cardinal rule," which Plaintiffs themselves recognize, that "if possible, effect shall be given to every clause and part of a statute."  Pls.' Brief 17 n.13 (quotation omitted); *see also* Ohio Rev.

---

[9] In a footnote, Plaintiffs assert that "Defendants concede that Akron and Summit County have the authority to bring a claim under R.C. § 4729.35."  Pls.' Br. 16 n.11.  The footnote is in error; as the body of Plaintiffs' brief recognizes, Defendants do not concede that Akron has authority to sue under § 4729.35 (it clearly does not) or any other provision.

14

Code § 1.51; Ohio Rev. Code § 1.47; *State ex rel. Carna v. Teays Valley Local Sch. Dist. Bd. of Educ.*, 967 N.E.2d 193, 198 (Ohio 2012).  The same reasoning applies to § 715.44.

In contrast, the Moving Defendants' interpretation of § 4729.35 gives effect to all of the relevant statutory language.  Moving Defs.' Br. 17-18.  Under this interpretation, § 4729.35 identifies the plaintiffs who may sue to abate a drug distribution nuisance and excludes other plaintiffs (including Akron) from doing so, while the more general authorizations in §§ 3767.03 and 715.44 are not nullified and continue to apply outside the specific context of drug nuisances governed by § 4729.35—in keeping with both the canon against superfluity and the established principle of statutory interpretation that the specific controls the general.  *See, e.g.*, *MacDonald v. Cleveland Income Tax Bd. of Review*, 86 N.E.3d 314, 321 (Ohio 2017).  Because the alleged nuisance arises out of the distribution of drugs, § 4729.35 controls and Akron may not maintain its statutory nuisance claim.[10]

*Second*, all Plaintiffs fail to state a claim because they offer only vague, generalized factual allegations and unsupported legal conclusions in their Complaint.  Moving Defs.' Br. 18-19.  Plaintiffs merely assert, in conclusory fashion, that their Complaint "includes specific, detailed allegations of Defendants' misconduct that [constitutes a nuisance] . . . ."  Pls.' Br. 17.  And the large sections of the Complaint that Plaintiffs cite without further argument or discussion, *id.*, contain no such "specific, detailed" allegations as to the Moving Defendants. .

---

[10] Plaintiffs' argument also implies that *any citizen* of the county in which an alleged drug distribution nuisance exists could sue for abatement under § 3767.03.  Such a broad authorization cannot be reconciled with the General Assembly's deliberate decision in § 4729.35 to specify only a narrow class of potential plaintiffs.

Moreover, Plaintiffs' reliance on *State ex rel. DeWine v. Fred's Party Center, Inc.*, 13 N.E.3d 699 (Ohio Ct. App. 2014), is unavailing.  Pls.' Br. 16.  The plaintiff in that case was the Attorney General, who is clearly authorized to sue for drug distribution nuisances under § 4729.35.  The case (which did not discuss the issue) does not even "implicitly" suggest that a plaintiff who is not so authorized could maintain such a suit.

### B.     Absolute public nuisance

In their opening brief, the Moving Defendants explained that Plaintiffs' absolute public nuisance claim must be dismissed on two grounds: (1) Plaintiffs fail to adequately allege that the Moving Defendants engaged in an "inherently dangerous activity" or intentionally violated the Controlled Substances Act, and (2) Plaintiffs allege no interference with a "public right." Moving Defs.' Br. 19-20.

Plaintiffs do not meaningfully respond to the first argument.  They simply assert that their Complaint is "replete with allegations of intentional and unlawful conduct by *Manufacturer* Defendants," Pls.' Br. 15 (emphasis added), but they point to no such intentional and unlawful conduct by the Moving Defendants, and the Complaint does not allege any in a manner that even comes close to meeting federal pleading standards.  Moving Defs.' Br. 20.  And Plaintiffs do not allege that the Moving Defendants engaged in any inherently dangerous activity.  *Id.* at 19-20.

Plaintiffs likewise fail to come to terms with the problem that they fail to allege interference with a "public right," because there is no common law right to be free from an otherwise legal product being used in a manner that might create risk.  Moving Defs.' Br. 20. Plaintiffs argue at length about the severity of the opioid epidemic, Pls.' Br. 6-7, but that severity does not distinguish this case from *City of Chicago v. Beretta U.S.A. Corp.*, which rejected a public nuisance suit premised on Chicago's epidemic of gun violence, 821 N.E.2d 1099, 1116 (Ill. 2004).  And while Plaintiffs rely heavily on *City of Cincinnati v. Beretta*, that decision has been abrogated by the Legislature and not controlling.  *See supra* Parts IV.A-B.

### VI.     Plaintiffs' Unjust Enrichment Claim Fails (Count 10).

Plaintiffs concede that an unjust enrichment claim requires "a benefit conferred by a plaintiff upon a defendant."  Pls.' Br. 96 (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).  To that end, Plaintiffs observe that "[u]njust enrichment arises not

only where an expenditure by one party adds to the property of another, but also where the expenditure saves the other from expense or loss." *Id.* (quoting *White v. Smith & Wesson*, 97 F. Supp. 2d 816, 829 (N.D. Ohio 2000)).  But here, Plaintiffs' alleged expenditures did not save the Moving Defendants from any "expense or loss."  Rather, Plaintiffs argue that they spent money to assist third parties through "increased healthcare services and addiction treatment for opioid users." *Id.* at 98.  Such spending confers a benefit on the third parties who receive the increased healthcare services and addiction treatment, not on the Moving Defendants, who "cannot be said to be the beneficiaries of the services provided by" Plaintiffs. *Ashley Cty.*, 552 F.3d at 666.

Plaintiffs cite case law purportedly establishing that a plaintiff confers a benefit on a defendant whenever the plaintiff spends money to remedy the defendant's "negative externalities," even if the defendant is not actually enriched by that spending.  Pls.' Br. 96-98.  But all but one of the cited cases dealt with situations in which the defendant *did* receive a concrete financial benefit—for instance, because it discharged wastewater onto the plaintiff's land (saving itself the cost of disposing of the water by legitimate means), or because it had a statutory duty to take the remedial steps taken by the plaintiff (saving the cost of taking those steps). *See, e.g.*, *Little Hocking Water Ass'n, Inc. v. E.I. du Pont Nemours & Co.*, 91 F. Supp. 3d 940, 984-86 (S.D. Ohio 2015); *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1233 (10th Cir. 2001).

The one case decided under Ohio law that is even arguably analogous to the current dispute, *White*, 97 F. Supp. 2d at 829; *see* Pls.'Br. 96-97, is a 2000 federal decision that cannot be reconciled with the law as stated by the Supreme Court of Ohio, which requires "a benefit conferred by a plaintiff *upon a defendant*." *Hambleton*, 465 N.E.2d at 1302 (emphasis added) (quotation omitted).  Indeed, even where a plaintiff's action benefitting a third party also assists the defendant in some tenuous way, Ohio state courts have held that such assistance "is too

indirect to constitute a 'benefit conferred' for purposes of a common law claim of unjust enrichment." *Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins.*, No. 16AP-742, 2017 WL 1407304, at *6 (Ohio Ct. App. April 20, 2017).[11]  In any event, *White* was effectively overruled by the Ohio Supreme Court's 2005 decision in *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (requiring a benefit conferred on the defendant by the plaintiff).

Moreover, as the Major Distributors explained in their opening brief, the rule in Ohio is that "[t]o show that a plaintiff conferred a benefit upon a defendant, 'an economic transaction must exist between the parties.'"  *Ohio Edison Co. v. Direct Energy Bus., LLC*, No. 5:17-cv-746, 2017 WL 3174347, at *3 (N.D. Ohio July 26, 2017) (quoting *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Sons Enters., Inc.*, 50 N.E.3d 955, 967 (Ohio Ct. App. 2015)); *see also* Major Distributors' Br. 50-51; *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942, 952 (N.D. Ohio 2009); *Hoffer v. Cooper Wiring Devices, Inc.*, No. 1:06-cv-763, 2007 WL 1725317, at *4 (N.D. Ohio June 13, 2007).  Plaintiffs' unsupported assertion that this "is not the law," Pls.' Br. 96, does nothing to refute the clear (and recent) statements of this principle in *Johnson*, *Ohio Edison*, *Caterpillar*, *Whirlpool*, and *Hoffer*.  Instead, they attempt to distinguish *Ohio Edison* on the ground that "the court was concerned about the inability to match up benefits and losses in a complicated marketplace with multiple actors buying and selling to each other." Pls.' Br. 98.  But nothing in *Ohio Edison*'s straightforward declaration—"[t]o show that a plaintiff conferred a benefit upon a defendant, 'an economic transaction must exist between the parties'"—limits that legal rule to a "complicated marketplace."  Nor does *Whirlpool*, which *Ohio Edison* quotes and Plaintiffs never address at all.

---

[11] The other cases that Plaintiffs claim "agree[d]" with *White* were decided in other states and did not purport to apply Ohio law.  Pls.' Br. 97 & n.68.

Finally, Plaintiffs fail to rebut the Major Distributors' arguments on the second and third elements of an unjust enrichment claim: the defendant's knowledge of the benefit and unjust retention of that benefit. *Hambleton*, 465 N.E.2d at 1302. Regarding knowledge, Plaintiffs say only that they paid Defendants' externalities and that Defendants were aware that they were saving costs and expenses. Pls.' Br. 98. But even if Defendants were aware that they were not "internaliz[ing] the actual cost of their activities," it does not follow that they knew that Plaintiffs were doing so. Plaintiffs' conclusory assertion is exactly the sort of "'naked assertion[]' devoid of 'further factual enhancement'" that must be disregarded under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). And regarding the third element—retention of the benefit where it would be unjust to do so—Plaintiffs offer no response to the Major Distributors at all. *See* Major Distributors' Br. 52.

## VII.  Plaintiffs Fail to Establish an Actionable Civil Conspiracy Claim (Count 11).

The Moving Defendants' opening brief explained that "Plaintiffs' civil conspiracy claim fails because the Complaint contains no legally cognizable allegations that the Moving Defendants engaged in any conspiracy." Moving Defs.' Br. 21; *see also* Major Distributors' Br. 52-54. Under Ohio law, a plaintiff alleging civil conspiracy "must at least show 'a common understanding or design, even if tacit, to commit an unlawful act.'" *Woodward Const., Inc. v. For 1031 Summit Woods, LLC*, 30 N.E.3d 237, 243 (Ohio Ct. App. 2015) (quoting *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996)) (holding that the defendants were entitled to a directed verdict on a civil conspiracy claim); *see also Gosden*, 687 N.E.2d at 496 (the parties to the alleged conspiracy must "come to a mutual understanding that they will accomplish the unlawful design" (quotation omitted)). And, as Plaintiffs concede, civil conspiracy must be pleaded with specificity. Pls.' Br. 99; *see In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (bare conspiratorial allegations insufficient).

19

Plaintiffs respond with a bullet-point list summarizing allegations that purportedly evince Defendants' common design "to illegally flood the market with prescription opioids, thereby increasing their bottom line."  Pls.' Br. 103-04.  But these allegations do not state a viable claim. Most of them merely allege parallel individual wrongdoing, not a common understanding. Plaintiffs claim that each of the Defendants had parallel incentives to increase the sales of its own products and took parallel steps to do so, for instance by "supply[ing] . . . more opioids than could have been justified to serve [the] market" and by "fail[ing] to report suspicious orders" or "identify doctors who were writing suspicious orders."  *Id.* at 103 (quotation omitted).  But Plaintiffs do not allege, and could not plausibly allege, that each Defendant sought to maximize *its competitors'* sales.  And, of course, for each company to take similar steps to maximize *its own* sales is the sort of parallel conduct that is standard in a competitive marketplace and will not support a claim for conspiracy.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007).

Plaintiffs also allege that Defendants "worked together through their participation in organizations such as the Pain Care Forum [PCF] and the HDA" to "influence state and federal governments to pass legislation" and "to engage in the unlawful sale of prescription opioids." Pls.' Br. 103 (quotation omitted).  These allegations are insufficient for three reasons.

*First*, Plaintiffs never allege that any of the Moving Defendants (whose involvement in the prescription opioid industry was limited to distributing to their own pharmacies) participated in these organizations, much less explain what that participation involved.  *See* Compl. ¶ 534 & n.152 (alleging that "[e]ach of the Marketing Defendants worked together through the PCF" and that the HDA's members include representatives of the Major Distributors); *see also id.* ¶ 535 n.153 (citing the membership lists on the HDA's website, which lists 36 distributor members, including the Major Distributors but not the Moving Defendants).

*Second*, even if the Moving Defendants did participate in these organizations, there is nothing untoward about belonging to a trade group like the HDA.  "[C]ircumstances that are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy, and it is certainly lawful to associate with other industry participants in trade organizations."  *In re Welding Fume Prods. Liab. Litig.*, 526 F. Supp. 2d 775, 805 (N.D. Ohio 2007) (internal quotation marks omitted); *see also McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 266 (Ill. 1999).  *In re Polyurethane Foam Antitrust Litigation*, on which the Plaintiffs rely, is not to the contrary.  That case held that, "[s]tanding alone," evidence that defendants were members of a trade association, purportedly had opportunities to conspire, and regularly communicated did "nothing to explain whether the parallel pricing was achieved by agreement or mere interdependent decisions."  152 F. Supp. 3d 968, 992 (N.D. Ohio 2015) (quotation omitted).

*Third*, Plaintiffs complain at length that Defendants allegedly "worked together . . . to influence policymakers to enact laws and regulations supporting the use of opioids."  Pls.' Br. 104.  But coming together to lobby the government to pass legislation is not actionable misconduct.  On the contrary, it is core First Amendment activity.  *See, e.g.*, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 509-11 (1972) (noting the *Noerr-Pennington* doctrine protects entities from liability under antitrust laws for their lobbying efforts); *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994).

Finally, as the Major Distributors argued in their opening brief, Plaintiffs have failed to adequately plead the last element of a civil conspiracy claim, an underlying unlawful act.  Major Distributors' Br. 54.  Plaintiffs respond by referencing the other claims in their Complaint.  Pls.' Br. 105.  Plaintiffs, however, cannot rely on their nuisance and negligence-based claims, because

civil conspiracy must be based on an intentional tort.  *See* Major Distributors' Br. 52-53.

Accordingly, the only causes of action asserted by Plaintiffs that could even potentially support a

claim of conspiracy sound in fraud and thus must be pleaded with particularity.  *See* Fed. R. Civ.

P. 9(b).  Nor can any parties other than Manufactures be held responsible for the alleged

fraudulent marketing scheme to increase the number of opioid prescriptions—the Moving

Defendants played no alleged in that alleged conspiracy.  *See* Pls.' Br. 101-02 (describing

"*Manufacturer Defendants'* conspiracy to fraudulently market prescription opioids" (emphasis

added)).  For all these reasons, the civil conspiracy claim must be dismissed.

## VIII.  Plaintiffs' Claim Under Ohio Rev. Code § 2307.60 Fails on Multiple Grounds (Count 9).

The Moving Defendants' opening brief identified three deficiencies (in addition to the

lack of proximate cause, addressed above) that are independently fatal to Plaintiffs' claim under

Ohio Rev. Code § 2307.60.  Moving Defs.' Br. 23-24.  *First*, that statute imposes civil liability

only where the defendant has previously been convicted of a crime, yet Plaintiffs never allege

that any Moving Defendant has been convicted of any relevant crime.  *Second*, § 2307.60

permits recovery only for an "injur[y]" to the plaintiff's "person or property," but Plaintiffs

allege no injury to their person or property.  *Third*, the Moving Defendants are "specifically

excepted by law," § 2307.60, from liability for their conduct.  On each of these three points,

Plaintiffs' response falls short.

*First*, Plaintiffs concede that the judges of this district have repeatedly held that claims

under § 2307.60 "are not viable in the absence of a criminal conviction," which is absent here.

*Jane v. Patterson*, No. 1:16-cv-2195, 2017 WL 1345242, at *4 (N.D. Ohio Apr. 12, 2017)

(quotation omitted); *see* Pls.' Br. 92 & n.64.  Plaintiffs assert that those decisions are inconsistent

with *Jacobson v. Kaforey*, 75 N.E.3d 203 (Ohio 2016), but *Jacobson* addressed an unrelated

issue and casts no doubt on this district's case law.  The question presented in *Jacobson*, which

had divided the Ohio courts, was whether § 2307.60 creates a cause of action.  75 N.E.3d at 205.

It does: The statute provides that "[a]nyone injured in person or property by a criminal act has,

and may recover full damages in, a civil action unless specifically excepted by law."  Ohio Rev.

Code § 2307.60(A)(1).  But in holding that the statute created a cause of action, *Jacobson* did not

address the issue here: whether such a cause of action is available even absent a criminal

conviction.   It remains the case, as courts in this district have held both before and after

*Jacobson*, that claims under § 2307.60 "are not viable in the absence of a criminal conviction."

*Jane*, 2017 WL 1345242, at *4 (quotation omitted); *see* Moving Defs.' Br. 23-24.[12]

 *Second*, although § 2307.60 permits recovery only for persons "injured in person or

property," § 2307.60(A)(1), Plaintiffs allege only economic loss, and not injury to their person or

property.  Plaintiffs' only response to this point is to repeat, in a footnote, their general assertion

that "the economic loss doctrine" does not apply outside the context of contracts or intentional

torts.  Pls.' Br. 95 n.65.  But even assuming the economic loss doctrine is so limited (and it is

---

[12] Plaintiffs state that "[t]here is no suggestion [in *Jacobson*] that any of the defendants had ever been charged with, let alone convicted of, any of the[] crimes" that the plaintiff accused them of.  Pls.' Br. 93-94.  But *Jacobson*'s failure to address that issue does not transform it into a ruling that (contrary to *Jane* and this district's other cases) a claim under § 2307.60 does not require a prior conviction.  The short opinion in *Jacobson* resolved only "the straightforward question certified to [the court] by the court of appeals," which had nothing to do with whether a prior conviction is necessary.  75 N.E.3d at 205.  In fact, the court specifically noted, "[a]ny ensuing issues regarding how the statute operates or what a plaintiff must do to prove a claim under R.C. 2307.60(A)(1) are beyond the scope of this appeal." *Id.* at 206.  Other cases that Plaintiffs rely on similarly do not address whether a prior conviction is necessary.  *See DriveTime Car Sales Co. v. Pettigrew*, No. 2:17-cv-371, 2018 WL 741138 (S.D. Ohio Feb. 7, 2013); *Evans v. Ohio Dep't of Rehab. & Corr.*, No. 16AP767, 2018 WL 1391617 (Ohio Ct. App. Mar. 20, 2018); *Sun Bldg. Ltd. P'ship v. Value Learning & Teaching Acad.*, Nos. C-160789, C-160793, 2017 WL 5903365, at *6 (Ohio Ct. App. Nov. 29, 2017).  It is axiomatic that "questions which merely lurk in the record are not resolved , and no resolution of them may be inferred." *United States v. Shabani*, 513 U.S. 10, 16 (1994) (quotation omitted).

not), it is clear that § 2307.60 in particular does not allow recovery for purely economic losses—it provides a cause of action only to recover for injuries to the plaintiff's "person or property." *See* Moving Defs.' Br. 24 ("Section 2307.60 does not provide for recovery for purely economic loss in the absence of injury to 'person or property'").  This defect alone mandates dismissal.

*Third*, Plaintiffs offer little response to the Moving Defendants' argument that they have not adequately alleged that the Moving Defendants failed to comply with the specified chapters of the Ohio Revised Code, which means that the Moving Defendants are "specifically excepted by law" from liability under § 2307.60(A)(1).  Moving Defs.' Br. 24 (noting that Plaintiffs' "unsupported and generic legal conclusions" on this point "should be disregarded" under *Iqbal*, 556 U.S. at 678).  Plaintiffs baldly assert that Defendants have been involved in criminal proceedings or entered into agreements with federal agencies.  *See* Pls.' Br. 95.  But Plaintiffs still never allege that any of the Moving Defendants has been indicted or has pleaded guilty to any crime.  And while Plaintiffs allege that some (but not all) of the Moving Defendants have entered into settlement agreements with the government, a company's decision to agree to a such a settlement cannot establish wrongdoing.  Moving Defs.' Br. 24.

## CONCLUSION

All claims against the Moving Defendants should be dismissed with prejudice.

Dated:  13 July 2018

Respectfully submitted,


/s/    Tara A. Fumerton

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*


/s/    Eric R. Delinsky (consent)

Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Indiana, L.L.C. and CVS Rx
Services, Inc.*


/s/    Kelly A. Moore (consent)

Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc.*


/s/    Kaspar Stoffelmayr (consent)

Kaspar Stoffelmayr
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorney for Walgreens Boots Alliance, Inc.*

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

Pursuant to Local Rule 7.1(f), I hereby certify that this Court has ordered that length limitations applicable to complex cases apply to this matter, ECF No. 232 at 4 (No. 1:17-MD-2804), and that the foregoing Reply is within Rule 7.1(f)'s page limit for a complex case.


/s/   Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2018, this Reply was filed electronically on the master docket for this matter.  Case Management Order One provides that "[e]lectronic case filing of a document, other than an initial pleading, in the master docket shall be deemed to constitute proper service on all parties."  ECF No. 232 at 8 (No. 1:17-MD-2804).

/ s/   Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com