**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| *City of Chicago v. Purdue Pharma L.P. et al.,* *Case No. 1:17-op-45169* | Hon. Dan Aaron Polster |

**REPLY IN SUPPORT OF MANUFACTURER DEFENDANTS'**
**JOINT MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.  THE MUNICIPAL FALSE STATEMENT, MUNICIPAL FALSE CLAIMS
    ACT, AND INSURANCE FRAUD CLAIMS FAIL (COUNTS 4-6 AND 8) ................... 2

    A.  The City Fails to Allege a False Claim ................................................ 2

        1.  The 4AC Does Not Adequately Plead Materiality ..................... 3

        2.  The 4AC Does Not Identify Claims for Payment That Made
            "Specific Representations" About Opioids ................................ 8

        3.  The 4AC Does Not Identify Claims That Failed to Comply with
            Contractual or Other Requirements ......................................... 9

    B.  The City Fails to Plead Causation ...................................................... 10

        1.  The City Has Not Pleaded Causation-in-Fact ........................... 10

        2.  The 4AC Fails to Plead Proximate Causation ........................... 14

    C.  The City Fails to Allege Any Cognizable Injury ................................. 17

        1.  The 4AC Does Not Allege Reimbursement of Any Ineffective or
            Harmful Prescriptions .............................................................. 17

        2.  The City Has Not Pleaded Any Cognizable Economic Harm ................. 18

II. THE PUBLIC NUISANCE CLAIM FAILS (COUNT 11) ....................................... 19

    A.  The City Does Not Adequately Plead the Elements of a Public Nuisance .......... 19

    B.  This Claim Is Barred by the Municipal Cost Recovery Rule .............................. 20

    C.  This Claim Is Barred by the Economic Loss Doctrine ........................................ 21

III. THE MUNICIPAL SERVICES CLAIM FAILS (COUNT 7) ................................... 21

IV. THE CONSPIRACY CLAIMS FAIL (COUNTS 6 AND 9) ...................................... 22

    A.  The 4AC Fails to Allege an Agreement to Commit an Illegal Act ..................... 22

    B.  The City Fails to Plead a Conspiracy with Particularity ..................................... 24

V.  THE UNJUST ENRICHMENT CLAIM FAILS (COUNT 10) ..................................... 24

VI. THE UNFAIR PRACTICES CLAIM (COUNT 2) SHOULD BE DISMISSED
    AND STRICKEN ...................................................................................................... 24

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Bank of Am. Corp. v. City of Miami*,
    137 S. Ct. 1296 (2017) ........................................................................................... 14, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 23

*Borsellino v. Goldman Sachs Grp., Inc.*,
    477 F.3d 502 (7th Cir. 2007) ...................................................................................... 22

*Brown v. Pfizer, Inc.*,
    2017 WL 1344365 (E.D. Pa. Apr. 12, 2017) .............................................................. 4

*City of Chi. v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ................................................................................. passim

*City of Chi. v. Purdue Pharma L.P.*,
    211 F. Supp. 3d 1058 (N.D. Ill. 2016) ................................................................ passim

*City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*,
    863 F.3d 474 (6th Cir. 2017) ...................................................................................... 15

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
    719 F.2d 322 (9th Cir. 1983) ...................................................................................... 21

*Cooney v. Rossiter*,
    583 F.3d 967 (7th Cir. 2009) ...................................................................................... 23

*Cty. of Cook v. HSBC N. Am. Holdings Inc.*,
    2018 WL 2431987 (N.D. Ill. May 30, 2018) ............................................................ 15

*Cty. of Cook v. Philip Morris, Inc.*,
    353 Ill. App. 3d 55 (2004) .......................................................................................... 15

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
    784 F. Supp. 2d 508 (D.N.J. 2011) .............................................................................. 7

*Edalatdju v. Guaranteed Rate, Inc.*,
    748 F. Supp. 2d 860 (N.D. Ill. 2010) ........................................................................ 22

*Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers
    Squibb Co.*,
    969 F. Supp. 2d 463 (S.D. W. Va. 2013) .................................................................. 16

*Fifth Third Mortg. Co. v. Kaufman*,
    2016 WL 2851554 (N.D. Ill. May 14, 2016) .............................................................. 5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Hayward v. Cleveland Clinic Found.*,
759 F.3d 601 (6th Cir. 2014) ........................................................................ 1, 24

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) ................................................................................. 24

*In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*,
2012 WL 3154957 (N.D. Cal. Aug. 2, 2012) ...................................................... 19

*In re Neurontin Mktg. & Sales Practices Litig.*,
712 F.3d 21 (1st Cir. 2013) .......................................................................... 16, 18

*In re Plavix Mktg., Sales Practices & Prods. Liab. Litig.*,
123 F. Supp. 3d 584 (D.N.J. 2015) ..................................................................... 10

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*,
2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) ......................................................... 16

*Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP*,
585 F. Supp. 2d 1339 (M.D. Fla. 2008) .............................................................. 16

*Kline v. Mortg. Elec. Sec. Sys.*,
2015 WL 1442842 (S.D. Ohio Mar. 27, 2015) .................................................... 25

*Mason v. Medline Indus. Inc.*,
731 F. Supp. 2d 730 (N.D. Ill. 2010) .................................................................... 9

*Quinones v. Szorc*,
771 F.2d 289 (7th Cir. 1985) ............................................................................... 23

*Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*,
2014 WL 2115498 (E.D. Pa. May 21, 2014) ....................................................... 16

*Rivera v. Wyeth-Ayerst Labs.*,
283 F.3d 315 (5th Cir. 2002) ............................................................................... 14

*Rose v. Stephens Inst.*,
2016 WL 5076214 (N.D. Cal. Sept. 20, 2016) ...................................................... 3

*S. Ill. Laborers' & Empr's Health & Welfare Fund v. Pfizer, Inc.*,
2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ...................................................... 7

*Sergeants Benev. Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
2012 WL 4336218 (E.D.N.Y. Sept. 17, 2012) ..................................................... 17

*Singer v. Progressive Care, SC*,
202 F. Supp. 3d 815 (N.D. Ill. 2016) .................................................................. 22

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Smith v. BOC Grp. PLC*,
2001 WL 477237 (N.D. Ill. May 4, 2001) .......................................................................... 22

*Smith v. Eli Lilly & Co.*,
560 N.E.2d 324 (Ill. 1990) ................................................................................................ 14

*Teamsters Local 237 Welfare Fund v. AstraZeneca Pharm. LP*,
136 A.3d 688 (Del. 2016) .............................................................................................. 18, 19

*Travelers Indem. Co. v. Cephalon, Inc.*,
32 F. Supp. 3d 538 (E.D. Pa. 2014), *aff'd*, 620 F. App'x 82 (3d Cir. 2015) ......................... 14

*Travelers Indem. Co. v. Cephalon, Inc.*,
620 F. App'x 82 (3d Cir. 2015) ....................................................................................... 13

*United States ex rel. Am. Sys. Consulting v. ManTech Advanced Sys. Int'l*,
600 F. App'x 969 (6th Cir. 2015) ..................................................................................... 4

*United States ex rel. Badr v. Triple Canopy, Inc.*,
857 F.3d 174 (4th Cir. 2017) ........................................................................................... 6

*United States ex rel. Brown v. Celgene Corp.*,
2016 WL 7626222, at *13 (C.D. Cal. Dec. 28, 2016) ........................................................ 4

*United States ex rel. Campie v. Gilead Scis., Inc.*,
862 F.3d 890 (9th Cir. 2017) ........................................................................................... 4

*United States ex rel. Escobar v. Universal Health Servs.*,
842 F.3d 103 (1st Cir. 2016) ........................................................................................ 4, 9

*United States ex rel. Forcier v. Comput. Scis. Corp.*,
2017 WL 3616665 (S.D.N.Y. 2017) .................................................................................. 9

*United States ex rel. George v. Fresenius Med. Care Holdings, Inc.*,
2016 WL 5361666 (N.D. Ala. Sept. 26, 2016) .................................................................. 9

*United States ex rel. Kalec v. NuWave Monitoring, LLC*,
84 F. Supp. 3d 793 (N.D. Ill. 2015) ................................................................................ 23

*United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*,
2018 WL 1566814 (S.D. Ind. 2018) ................................................................................. 8

*United States ex rel. Lisitza v. Par Pharm. Cos.*,
2013 WL 870623 (N.D. Ill. Mar. 7, 2013) ....................................................................... 23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*United States ex rel. Marcus v. Hess*,
  317 U.S. 537 (1943)................................................................................. 9

*United States ex rel. McGee v. IBM Corp.*,
  81 F. Supp. 3d 643 (N.D. Ill. 2015) ...................................................... 24

*United States ex rel. Miller v. Weston Educ., Inc.*,
  840 F.3d 494 (8th Cir. 2016) .................................................................... 6

*United States ex rel. Petratos v. Genentech Inc.*,
  855 F.3d 481 (3d Cir. 2017)............................................................. 5, 6, 7

*United States ex rel. Poehling v. Unitedhealth Grp., Inc.*,
  2018 WL 1363487 (C.D. Cal. Feb. 12, 2018)......................................... 4

*United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*,
  2018 WL 2770598 (6th Cir. June 11, 2018) ............................................ 6

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
  836 F.3d 770 (7th Cir. 2016) .................................................................. 10

*United States ex rel. Worthy v. E. Maine Healthcare Sys.*,
  2017 WL 211609 (D. Me. Jan. 18, 2017) ................................................ 6

*United States v. Crumb*,
  2016 WL 4480690 (S.D. Ala. Aug. 24, 2016) ......................................... 6

*United States v. IASIS Healthcare LLC*,
  2016 WL 6610675, (D. Ariz. Nov. 9, 2016)............................................. 6

*United States v. Luce*,
  873 F.3d 999 (7th Cir. 2017) .................................................................. 15

*United States v. Quicken Loans Inc.*,
  239 F. Supp. 3d 1014 (E.D. Mich. 2017)................................................ 15

*United States v. Sanford-Brown Ltd.*,
  840 F.3d 445 (7th Cir. 2016) ........................................................... 6, 8, 9

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  136 S. Ct. 1989 (2016) ..................................................................... 7, 8, 9

*Weberg v. Franks*,
  229 F.3d 514 (6th Cir. 2000) .................................................................. 23

*Wells Fargo Bank v. Leafs Hockey Club, Inc.*,
  2014 WL 1017211 (N.D. Ill. Mar. 14, 2014)......................................... 22

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Williams v. Purdue Pharma Co.*,
   297 F. Supp. 2d 171 (D.D.C. 2003) ........................................................................... 18

**STATUTES**

MCC § 1-20-020 .......................................................................................................... 21

**OTHER AUTHORITIES**

Restatement (Second) Torts § 821B cmt. g ............................................................. 19, 20

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................................... 22, 23

## INTRODUCTION[1]

The Manufacturer Defendants' Joint Motion identifies multiple deficiencies in Counts 4 through 11 of the 4AC.[2] As to many of those failings, the City contends that it need not respond because the Court has already ruled on them. The City is wrong: the Transferor Court's prior Orders did not resolve any of the ongoing pleading deficiencies outlined in the Motion in the City's favor. The Motion therefore properly raised those deficiencies and others—none of which the Opposition rebuts. Even where the City responds, it simply reaffirms that dismissal is appropriate.

Despite years of investigation and five complaints, the City's Opposition confirms that the City simply cannot plead causation, a cognizable injury, or other key elements of its claims in Counts 4-11:

- In its Opposition, the City again concedes that it continues to reimburse opioid prescriptions for chronic pain, Opp. 14-15—the same fact that led the Transferor Court to dismiss the City's false claims causes of action for lack of materiality (Counts 4-6 and 8). The City tries to downplay that dispositive fact by asking this Court to adopt a "flexible" approach to materiality. But the U.S. Supreme Court's decision in *Escobar* forbids that approach, and nothing the City offers rebuts the "strong evidence" of non-materiality demonstrated by the City's continued payment for opioids.

- The City also concedes that the 4AC does not identify a single medically inappropriate opioid prescription written by a prescriber who relied on any Manufacturer Defendant's alleged misrepresentations—much less one reimbursed by the City. Opp. 22, 25. At bottom, the City instead asks the Court to *assume* that

---

[1] Unless otherwise noted, all capitalized terms and acronyms are defined in the Memorandum in Support of the Manufacturer Defendants' Joint Motion to Dismiss Plaintiffs' Fourth Amended Complaint (Dkt. #671-1) ("Motion" or "JM"). All emphasis in quotations is added, and internal citations, quotation marks, and alterations are omitted.

[2] The City offers no support for its claim that re-alleging its dismissed, unamended unfair practices claim (Count 2) is "permissible." Opp. 42. Nor can it—many courts, including (contrary to the City's argument) the Sixth Circuit, have rejected that practice as both unnecessary and "illogical." JM 31 (quoting *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 618 (6th Cir. 2014) (collecting cases)). The Court should therefore dismiss Count 2 again and strike it from the 4AC.

certain prescribers listed in the 4AC's exhibits relied upon alleged misrepresentations because, for example, they served as speakers for, and were detailed by, certain Manufacturer Defendants. This is improper—the City must plead ***facts*** demonstrating representative examples of the requisite causal connection. The 4AC's failure to do so defeats Counts 4 through 10.

- The City admits that prescribers may in some circumstances appropriately prescribe opioids for chronic non-cancer pain, Opp. 11 n.8—a point also recognized in the CDC Guideline. To show injury, then, the City must identify instances in which opioids were not, in fact, appropriately prescribed. The 4AC fails to do so—at most, the City asks the Court to ***assume*** that at least some of the prescriptions listed in the 4AC's exhibits ***must*** have caused "real and cognizable economic loss." Opp. 30. The City's failure to plead ***facts*** demonstrating even one instance of such loss also defeats Counts 4 through 10.

- The City fails to show how the 4AC's allegations plead a viable public nuisance claim (Count 11). Among other failures, the 4AC's allegations amount to a collection of alleged ***individual*** wrongs that do not amount to interference with any ***public*** right, as required for public nuisance claims under Illinois law.

After five attempts, the City's inability to plead the fundamental elements of these claims requires dismissal of Counts 4 through 11 with prejudice.

## ARGUMENT

### I. THE MUNICIPAL FALSE STATEMENT, MUNICIPAL FALSE CLAIMS ACT, AND INSURANCE FRAUD CLAIMS FAIL (COUNTS 4-6 AND 8)

#### A. The City Fails to Allege a False Claim

The City does not dispute that it has abandoned its previously dismissed express certification theory. JM 7. Nor does the City rebut the Manufacturer Defendants' showing that it has failed to plead any of the three requirements for an implied certification theory.[3]

---

[3] The City correctly notes that the Transferor Court dismissed Counts 4-6 and 8 for failure to plead one of these requirements (materiality). Opp. 5, 17; JM 8-11; *infra* § I.A.1. But the City is wrong that the Transferor Court "already decided" that its pleading adequately alleges the other two requirements, discussed *infra* at §§ I.A.2.-I.A.3. Opp. 17. To the contrary, the Transferor Court did not even discuss—let alone rule on—the City's failure to plead these requirements. *See City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1079 (N.D. Ill. 2016) ("*Chicago II*"). The Transferor Court's observation that "the City can proceed under a theory of implied false certification" does not show otherwise, *id.*; instead, it merely indicates that the City can

### 1.    The 4AC Does Not Adequately Plead Materiality

The City concedes that it still reimburses opioids prescribed for chronic non-cancer pain. Opp. 14-15. As the Transferor Court held, this concession compels a finding that the Manufacturer Defendants' alleged omissions are not material as a matter of law. *See Chicago II* at 211 F. Supp. 3d at 1079-80; JM 8-9. The City cannot avoid dismissal by casting its continued reimbursement of opioids as just one factor in a "flexible" approach. Opp. 6-7. *Escobar*'s materiality standard is "rigorous" and "demanding," and the City's continued reimbursement is "strong evidence" that the standard cannot be met here. *See* JM 9 & n.11. The City also claims that courts "after [*Escobar*] have recognized that the government's continued payment of claims does not necessarily indicate that a defendant's misrepresentations are not material." Opp. 16. Yet the City all but ignores the many post-*Escobar* cases that dismiss FCA claims for precisely that reason, *see* JM 9 & n.11. Indeed, the City's only response to these cases is that they involved "*qui tam* actions" where the "government declined to intervene." Opp. 12 & n.9. But dismissal in those cases did not turn on that fact; rather, it turned on the fact that the relevant government actors, like the City here, continued to pay allegedly false claims and thus could not meet *Escobar*'s materiality standard. *See* JM 9 & n.11.

By contrast, the City's handful of supposedly contrary cases are inapposite.[4] *See, e.g.*, *Rose v. Stephens Inst.*, 2016 WL 5076214, at *6 (N.D. Cal. Sept. 20, 2016) (U.S. Department of Education had engaged in extensive "corrective actions" and "***did not always pay the claims*** 'in full'"). Indeed, most of the City's cases involved a government actor that did ***not***—like the City here—have "actual knowledge" that "particular claims [it reimbursed] were non-compliant and

---

pursue this theory ***only if*** it adequately pleads all the *Escobar* requirements, which the City fails to do.

[4] The cases decided before *Escobar*'s clarification of the materiality requirement for false claims liability are irrelevant. *See* Opp. 14 & 16 n.12.

reimbursed them anyway." *United States ex rel. Brown v. Celgene Corp.*, 2016 WL 7626222, at *13 (C.D. Cal. Dec. 28, 2016). For example, in *Celgene*, the government not only lacked such knowledge, but also ***refused*** to reimburse certain allegedly false claims. *Id.* Similarly, in *United States ex rel. Campie v. Gilead Scis., Inc.*, the government reimbursed claims "[o]nce the unapproved and contaminated drugs" at issue "were ***no longer*** being used." 862 F.3d 890, 906 (9th Cir. 2017). In such circumstances, of course, the "decision to ***keep paying for compliant*** drugs does not have the same significance as if the government continued to pay despite continued noncompliance." *Id.* And in *United States ex rel. Escobar v. Universal Health Servs.*, 842 F.3d 103, 112 (1st Cir. 2016) ("*Escobar II*"), on remand from the Supreme Court, the First Circuit found that there was "no evidence" that the government "had actual knowledge of the violations at the time it paid the claims at issue" because the allegedly false claims were from three years ***before*** the government discovered the violations. *Id.* In the City's remaining cases, the plaintiffs alleged that the government was "unaware of the false or fraudulent nature" of the conduct and nothing indicated otherwise.[5]

By contrast, the 4AC alleges that claims for opioid prescriptions were "non-compliant" because they were not medically necessary or reasonably required. *See* JM 8-11. But the City

---

[5] *United States ex rel. Brown v. Pfizer, Inc.*, 2017 WL 1344365, at *11 (E.D. Pa. Apr. 12, 2017); *see also United States ex rel. Poehling v. Unitedhealth Grp., Inc.*, 2018 WL 1363487, at *13 (C.D. Cal. Feb. 12, 2018). *Brown* and *Campie* are distinguishable for a second reason: both addressed the "fraudulent inducement" theory of FCA liability not at issue here. *Escobar*'s "analysis of when [claims for payment] can be actionably misleading is ***irrelevant***" to that theory, because "the fraud that matters [in a fraudulent inducement case] is whatever initially induced the government to enter into the ongoing relationship, not any misrepresentations— implicit or explicit—in the claims for payment." *Brown*, 2017 WL 1344365, at *9. Unlike in *Escobar*, in the fraudulent inducement context, courts have declined "to read too much into" continued payment of claims to prevent such payments from being used "as a shield against liability" for the initial, fraudulent transaction. *Campie*, 862 F.3d at 906. *Cf. United States ex rel. Am. Sys. Consulting v. ManTech Advanced Sys. Int'l*, 600 Fed. App'x 969, 977-78 (6th Cir. 2015).

cannot reasonably deny that it has had actual knowledge of alleged non-compliance at least since it filed suit, has continued to reimburse for such opioid prescriptions, and fails to cite even one instance in which it refused to do so. *See id.* This mandates dismissal of Counts 4-6 and 8 for lack of materiality. *See id.*

The City nonetheless says it does not have "full knowledge" of paid claims because the City uses "outside vendors" to review all claims. Opp. 9. But this ignores that, under Illinois law, an agent's knowledge is imputed to the principal. *See Fifth Third Mortg. Co. v. Kaufman*, 2016 WL 2851554, at *6 (N.D. Ill. May 14, 2016). The City's claim that it "relies on prescribers' judgment regarding whether prescriptions are medically necessary" is similarly irrelevant. Opp. 8. The City admits that its health plan administrators must conduct the same analysis—they too review claims to "determine whether treatments are 'medically necessary.'" *Id.* 9. And in the FCA context, "the Government will always be the recipient of the misrepresentation" and "it is the *Government's* materiality decision that ultimately matters." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 491-92 (3d Cir. 2017). Although "[t]he alleged fraud's effect on physicians is relevant to the extent that it caused claims eventually to reach [the government]," "the materiality analysis begins after a claim has been submitted." *Id.*

Nor can the City avoid dismissal by citing "practical considerations" that make it "impossible to expect" the City's reimbursement practices "to simply 'turn on a dime.'" Opp. 14. Far from "turn[ing] on a dime," the City has had over four years to change its reimbursement practices, yet it continues to pay for opioid prescriptions that it alleges are medically inappropriate. And the City does not dispute that its "practical considerations" are irrelevant at best and, indeed, militate against a finding of materiality. *Compare* JM 9-11, *with* Opp. 14-15.

Finally, apart from being legally inapplicable, Opp. 6-13,[6] the three factors the City cites for its "flexible" approach do not change this result. As to the first factor, the mere assertion that payment is "expressly condition[ed] . . . on compliance with the medical necessity" provision at issue, *id.* 7, is unavailing where the government actor nevertheless chooses to reimburse claims despite its knowledge about purported noncompliance with the provision. *See United States v. Sanford-Brown*, 840 F.3d 445, 445, 447-48 (7th Cir. 2016) (holding plaintiff could not show materiality where government continued to pay defendant; "[T]he most [plaintiff] has shown is that [defendant's] supposed noncompliance and misrepresentations would have entitled the government to decline payment. Under [*Escobar*], that is not enough."); *Petratos*, 855 F.3d at 490 (same). As to the second factor, the same is necessarily true even if the provision at issue forms "the essence of the bargain." Opp. 9-10. And as to the third factor, a government actor cannot credibly claim it has "signaled [a] change in position" on reimbursement practices where, as here, it has continued to reimburse allegedly false claims for years. *Id.* 6, 10.

The City attempts to show a "change in position," but all of its points lack merit. The City argues that it recently requested its health plan administrators "to adopt the CDC Guideline to govern the City's benefits . . . ." Opp. 11 (quoting 4AC ¶ 702). But the City does not dispute that it waited, at minimum, nearly ***two years*** after filing suit to make any such request—which alone establishes lack of materiality to its reimbursement decisions. *See id.*; JM 11. The City also

---

[6] None of the City's cases on this point involve this situation, where, as here, a government actor continued to reimburse false claims despite its knowledge of their alleged noncompliance with statutory or contractual requirements. *See United States ex rel. Badr v. Triple Canopy, Inc.*, 857 F.3d 174, 178-79 (4th Cir. 2017); *United States ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494, 505 (8th Cir. 2016); *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 2018 WL 2770598, at *8-9 (6th Cir. June 11, 2018); *United States ex rel. Worthy v. E. Maine Healthcare Sys.*, 2017 WL 211609, at *25-27 (D. Me. Jan. 18, 2017); *United States ex rel. Fisher v. IASIS Healthcare LLC*, 2016 WL 6610675, at *14 (D. Ariz. Nov. 9, 2016); *United States v. Crumb*, 2016 WL 4480690, at *24 (S.D. Ala. Aug. 24, 2016).

nowhere alleges that any prescription at issue would have violated the CDC recommendations, or even that enforcement of those recommendations would have caused the City to decline to reimburse any prescriptions. *See* Opp. 11. As such, the City's belated request to adopt the CDC Guideline has no bearing on whether the Manufacturer Defendants' alleged omissions were material to the City's reimbursement decisions. *See* JM 9-11.

Next, the City cites its efforts to "educate residents and healthcare providers about opioid addiction," including by "disseminat[ing]" and "promot[ing]" the CDC Guideline. Opp. 11-12. But here, too, the City fails to explain when these efforts began or how efforts to influence ***prescribing decisions*** have any bearing on the City's ***reimbursement decisions***. *See* JM 10; *Universal Health Servs., Inc. v. United States ex. rel. Escobar*, 136 S. Ct. 1989, 1996 (2016) ("A misrepresentation . . . must be material ***to the Government's payment decision*** . . . .").[7] The City will continue to reimburse opioids prescribed for chronic pain even if its health plan administrators adopt and physicians follow the CDC Guideline.[8] *See* JM 10-11.

Equally flawed is the City's suggestion that the Court should leave the "materiality assessment" to the jury. Opp. 17 n.13. As the City itself admits, *Escobar* expressly ***rejected*** the argument that materiality is "too fact intensive" to decide "on a motion to dismiss." Opp. 17 n. 13; 136 S. Ct. at 2004 n.6. So did the Transferor Court. *See supra* n.3. Under *Escobar*, a plaintiff

---

[7] *See Petratos*, 855 F.3d at 492   (the "focus here should not be whether the alleged fraud deceived the prescribing physicians, but rather whether it affected CMS's payment decision"); *S. Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer, Inc.*, 2009 WL 3151807, at *5-8 (S.D.N.Y. Sept. 30, 2009) (dismissing claims where plaintiffs failed to tie any alleged misrepresentations to "Pharmacy Benefit Decision Makers"); *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 525 (D.N.J. 2011) (same).

[8] The same point holds for the City's proposals to increase its "spending on opioid addiction treatment" and establish a "pharmaceutical representative license," as well as for the City's mere decision to file this suit. Opp. 11-13. Those actions are irrelevant to reimbursement decisions.

must "plead[] facts to support allegations of materiality" and must do so with both "plausibility and particularity." 136 S. Ct. at 2004 n.6.[9] The City has failed to do so.

### 2. The 4AC Does Not Identify Claims for Payment That Made "Specific Representations" About Opioids

The City concedes that it must plead "specific representations" about the good or services that were the subject of an alleged false claim. Opp. 17. The City incorrectly argues, however, that its allegation that Defendants made misrepresentations *to prescribers* is sufficient to meet this standard. *Id.* *Escobar* forecloses this argument. Under *Escobar*, the implied certification theory is available only where "*the claim* . . . makes specific representations about the goods or services provided." 136 S. Ct. at 2001; *see also Sanford-Brown.*, 840 F.3d at 447 (7th Cir. 2016) (rejecting implied certification theory where defendants made no "representations at all *in connection with its claims for payment*"); *United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Indiana, Inc.*, 2018 WL 1566814, at *6-7 (S.D. Ind. Mar. 30, 2018) (dismissing FCA claim on same ground). Because the City fails to identify any representations made on claims for reimbursement, *see* JM 11-12, its implied certification theory must be rejected. *See Escobar*, 136 S. Ct. at 2001; *Sanford-Brown*, 840 F.3d at 447.

The City tries to cure this defect by premising its legal theory on an alleged omission—namely, that claims allegedly failed to disclose that opioid prescriptions were not medically necessary and therefore "implicitly represent[ed]" the opposite. *Id.* 17. The City concedes, as it must, that it is not claiming all opioid prescriptions are *per se* medically unnecessary, Opp. 11 n.8, yet the City nonetheless pursues its implied certification theory. But under *Escobar*,

---

[9] Under *Escobar*, the burden to plead such facts plainly falls on the plaintiff. The City's unsupported suggestion that the Manufacturer Defendants must "point to [] evidence that the City [] decided to pay for a particular opioid prescription that the City actually knew was medically unnecessary," Opp. 7, would, if accepted, turn this standard on its head.

omissions can only support an implied certification theory if they "render the defendant's *representations*" in a claim misleading. 136 S. Ct. at 1999. In other words, pure omissions are not actionable under this theory; only omissions that create "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable." *Id.* at 2000; *see United States ex rel. Forcier v. Computer Scis. Corp.*, 2017 WL 3616665, at *13 (S.D.N.Y. Aug. 10, 2017) (dismissing FCA claim, holding it was "not clear how Defendants' failure to disclose its regulatory noncompliance with respect to its fee structure rendered *the cited statements—or anything else in its claims*—actionable misrepresentations").[10] As noted above, the 4AC fails to identify a single representation in a reimbursement claim that was misleading because of an omission.[11] This deficiency also defeats the City's implied certification theory.

### 3.     The 4AC Does Not Identify Claims That Failed to Comply with Contractual or Other Requirements

Finally, the City fails to explain how the 4AC establishes that any City-reimbursed prescriptions did not comply with statutory, regulatory, or contractual requirements. *See* JM 12.

---

[10] The City's four cases do not say otherwise: two precede *Escobar*, *see United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943), *Mason v. Medline Indus., Inc.*, 731. F. Supp. 2d 730 (N.D. Ill. 2010); another *dismissed* an FCA claim on materiality grounds, making its statements about *Escobar*'s other requirements dicta, *see United States ex rel. George v. Fresenius Medical Care Holdings, Inc.*, 2016 WL 5361666, at *18 (N.D. Ala. Sept. 26, 2016); and the last *did* involve misleading "half-truths" (misrepresentations as to provider expertise and licensure based on National Provider Identification numbers) in the defendant's claims for payment, *see Escobar II*, 842 F.3d at 108.

[11] In *Escobar*, the Supreme Court declined to "resolve whether all claims for payment implicitly represent that the billing party is legally entitled to payment." 136 S. Ct. at 2000. Post-*Escobar* decisions have foreclosed that expansive theory of implied certification. *See Sanford-Brown*, 840 F.3d at 447 (limiting implied certification theory to cases "where [the] two conditions" stated in *Escobar* are met). Under these authorities, the City's argument that claims submitted to the City's health plans "impliedly certify compliance with the material terms of the controlling plan documents and provider agreements, including the requirement of 'medical necessity,'" Opp. 18, is legally insufficient to state a claim.

Critically, the City once again concedes that it "***does not*** allege that opioids ***may never*** be prescribed to treat chronic pain." Opp. 11 n.8 (emphasis added). This concession means that to prove the implied certification theory, the City would have to show that health care providers and/or agents "impliedly certified to the City that opioids were medically necessary and reasonably required to treat chronic pain" when they were not. *See, e.g.*, 4AC ¶ 808. But the City does not identify any City-reimbursed prescriptions that were written, and not appropriate, to treat chronic non-cancer pain, so the City has again failed to plead noncompliance with legal or contractual requirements. *See* JM 12-13.

This pleading failure is all the more pronounced because prescriptions for on-label uses— like the vast majority at issue here—are "by definition . . . medically reasonable." *See* JM 12 (quoting *In re Plavix Mktg., Sales Practices & Prods. Liab. Litig.*, 123 F. Supp. 3d 584, 604 (D.N.J. 2015)). The City's attempt to expand false-claims liability to ***on***-label prescriptions is illogical, unprecedented, and in conflict with the FDA's expert assessment that opioids are safe and effective for the treatment of chronic non-cancer pain. *See* JM 13. Courts repeatedly reject allegations "provid[ing] no medical, technical, or scientific context which would enable a reader of the complaint to understand why [the claims or bills identified reflected] unnecessary care." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 779 (7th Cir. 2016). This Court should do the same and dismiss the City's claims here.

**B.     The City Fails to Plead Causation**

**1.     The City Has Not Pleaded Causation-in-Fact**

To overcome the pleading failures identified in Judge Alonso's prior orders dismissing Counts 4-10, the City must identify the "prescribers who heard the misrepresentations" and allege facts showing both that "the same prescribers [] ***subsequently*** prescribed defendants'

drugs" and "*relied* on defendants' misrepresentations *when* they prescribed defendants' drugs."[12] *Chicago II*, 211 F. Supp. 3d at 1080; JM 14-17. It has not done so, and nothing in the City's opposition can correct this dispositive pleading error.

The City claims that this time, it adequately pleaded causation because it revised the 4AC's exhibits to match the named prescribers "with the letter designation used to refer to that prescriber in the 4AC." Opp. 20. But despite the multiple complex exhibits, lettering systems, and sweeping allegations of a 20-year fraudulent scheme, *id.* 19-23, the 4AC still fails to tie any listed prescription to a prior alleged misrepresentation or omission on which the listed physician relied. Indeed, the City admits that its exhibits do not even address Mallinckrodt, much less identify a physician who allegedly received a false or misleading statement by Mallinckrodt. Opp. 20 n.17. And the City's arguments are equally deficient as to the other Manufacturer Defendants:

- *Cephalon*.  Remarkably, the City identifies just *three* prescribers as to Cephalon on Exhibit A.2 (which purports to identify prescribers who allegedly received misstatements from Cephalon and wrote a prescription paid for by the City), and concedes that of those three prescribers the 4AC makes allegations about only one. The 4AC alleges that Prescriber R was "targeted and detailed in 2010, 2011, and 2013" by Cephalon, Opp. 21 (citing 4AC ¶ 394), but the City does not identify a single detail about any of these interactions. In fact, Prescriber R wrote prescriptions of Fentora for only one patient, and started doing so in 2007—years *before* any alleged detailing by Cephalon. Ex. A.2.[13]

- *Allergan*.  The City apparently concedes that it has no plausible allegations regarding four of the eight prescribers identified in 4AC ¶ 302. Opp. 20. For three others (B, E, and H), the City cannot say *when*, *where*, or *from whom* any of them supposedly heard any misrepresentations about Kadian, or whether any of the prescriptions identified in Exhibit A.1 immediately postdated the unspecified misrepresentations. *See id.* The remaining one, Prescriber F, was supposedly detailed sometime between

---

[12] Despite the City's implicit suggestion that the Court should ignore the word "subsequently," it has provided no basis for rewriting the prior order's express terms. Opp. 23 n.23.

[13] Of course, it is not possible, let alone plausible, that a prescriber wrote an opioid prescription because of some conduct by the Teva Defendants that occurred *after* the prescription was written.

2005 and 2007, *see* 4AC ¶ 302d—yet wrote just two prescriptions (to the same patient) in August and September 2011, *see* Ex. A.1. It is utterly implausible that Prescriber F wrote those scripts in reliance on something said in a sales visit at least *four years earlier*, as opposed to the information contained in the FDA-approved labeling. At all events, the City does not allege that *any* of the prescriptions in 4AC ¶ 302 or Exhibit A.1 were medically inappropriate.

- *Endo*. For all seven prescribers that the City identifies as having heard misrepresentations by Endo and written prescriptions for Endo's Opana ER, the City makes no allegations as to when and by whom the statements were made or whether the prescriptions were harmful. While the City does identify an alleged misstatement and includes an entirely conclusory allegation of reliance as to Prescribers B and D, 4AC ¶¶ 488c & g, it does not allege whether or to what extent their prescriptions predated the alleged misrepresentations, and again, it does not allege facts that would demonstrate the prescriptions were medically inappropriate. And the City ignores entirely the showing that the City's allegations about Prescriber V are entirely speculative and that several of his City-covered prescriptions clearly pre-dated the supposed misrepresentation, JM 15.

- *Janssen*. The City points to its claims that prescribers who purportedly received misrepresentations from Janssen also wrote prescriptions for Janssen opioids that the City reimbursed. Opp. 21. But it admits that it has mixed in those who prescribed Nucynta IR, which is not at issue in this litigation because it is indicated and prescribed only for acute pain, not chronic pain. *Id*. And the City still cannot overcome its failure to show that any prescriber relied on an alleged misrepresentation in prescribing a City-reimbursed Janssen opioid, or that any of these prescriptions were medically inappropriate. Nor can it overcome its failure to allege *when* these prescribers were exposed to the alleged misrepresentations, *what* misrepresentations were actually made, or *how* any such misrepresentation would mislead medically trained licensed prescribers.

- *Purdue*. The City has still failed to plead that any prescriber relied on a misrepresentation by Purdue when prescribing a Purdue medication for a patient. The City does not dispute it failed to allege that it actually paid for any prescription written by seven of the eighteen prescribers identified in the 4AC. Opp. 21-22. Nor has the City alleged any facts that would demonstrate any of the remaining prescriptions were medically inappropriate. The City alleges Prescriber DD was told that OxyContin would provide 12 hours of pain relief. But that statement is entirely consistent with the FDA-labeling and is not a misrepresentation. 4AC ¶¶ 640, 646i. Nowhere does the City allege that Prescriber DD wrote any specific prescription in reliance on that representation. Similarly, there is no allegation that Prescribers B, D, or J made any medically inappropriate prescriptions, let alone any prescriptions in reliance on statements made by Purdue.

Contrary to the City's claim, these pleading failures are not "merely technical," Opp. 2; they are fatal.[14]

Recognizing the absence of any ***actual*** allegations that could demonstrate causation, the City insists that prescribers surely must have heard and relied on misrepresentations solely because they "served on one of Defendants' speakers bureaus," "attended lunch talks," or were "visited by sales representatives." Opp. 25. But the Transferor Court's prior rulings make clear that this is not enough. *Chicago II*, 211 F. Supp. 3d at 1079-84. And it ignores each doctor's duty to know the risks of the medicines she prescribes—risks that, as the City acknowledges, are disclosed through "black box warnings." JM 16-17. That is why "[a]llegations that physicians attended presentations and interacted with [] sales representatives do not sufficiently demonstrate that these interactions caused the physicians to write the prescriptions at issue." *Travelers v. Cephalon, Inc*., 620 F. App'x 82, 87 (3d Cir. 2015). If the City had a plausible basis for claiming that specific prescribers actually relied upon particular misrepresentations when writing medically inappropriate prescriptions paid for by the City, it should have alleged so in the 4AC—or one of its four prior pleadings.

Recognizing that it cannot meet its burden, the City tries to avoid it entirely, claiming it is sufficient to have alleged only that "Defendants' misrepresentations and omissions were misleading to a prescriber." Opp. 25. This is incorrect. The City's burden requires, at minimum, a plausible allegation that a misrepresentation ***caused*** a doctor's decision to prescribe an opioid medication (and which one, at which dosage). *Chicago II*, 211 F. Supp. 3d at 1080. Likewise, if a prescriber wrote a medically appropriate prescription, there is no causation; the City got the

---

[14] The City's reference to Prescriber SS cannot save its claim, as the City fails to tie SS to a City-reimbursed opioid or any particular Defendant, and instead makes only a single vague reference to AAPM/APS Guidelines as "one source of his support" for SS's "opinions about opioids." Opp. 25 n.26; 4AC ¶ 730.

exact bargained-for benefit. *See, e.g.*, *Rivera v. Wyeth-Ayerst Labs*., 283 F.3d 315, 320 (5th Cir. 2002) (plaintiff who "paid for an effective pain killer, and . . . received just that" got "the benefit of her bargain" and could not allege any injury); *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 555-56 (E.D. Pa. 2014), *aff'd*, 620 F. App'x 82 (3d Cir. 2015) (same).

The City tries to sidestep this pleading failure by arguing it "need only plead illustrative examples of [Defendants'] systemic fraud." Opp. 24. But neither the 4AC nor any of the City's exhibits present a single example of a Defendant's misleading a prescriber to write a medically inappropriate City-reimbursed opioid prescription. Thus, Counts 4-10 should be dismissed.[15]

### 2.     The 4AC Fails to Plead Proximate Causation

The Supreme Court's recent decision in *Bank of America Corp. v. City of Miami* confirms that proximate cause requires a "direct relation between the injury asserted and the injurious conduct alleged"— foreseeability is not enough. 137 S. Ct. 1296 (2017).[16] Critically, the City does not dispute that any connection between its alleged injury (i.e., paying for purportedly medically inappropriate prescriptions) and the alleged conduct by the Marketing Defendants (i.e., fraudulent marketing) is, at most, indirect. JM 18-20. Nor does the City address the many cases that have found that no proximate causation exists for these exact claims. JM 18 & n.19 (collecting cases). As a result, Counts 4-10 fail.

Rather than address the weight of authority undermining its claims, the City argues that it can meet its burden on its **MFCA claims** (Counts 4-5) by pleading foreseeability. Opp. 26. As an

---

[15] The City argues that because it asserts conspiracy claims, each Manufacturer Defendant can be liable for the costs and claims associated with others' products. Opp. 19 n.14. But as discussed in Section IV, *infra*, the City's conspiracy claims fail. Moreover, as Manufacturer Defendants have shown, the City fails to identify actionable misconduct by *any* Manufacturer Defendant. Nor has the City overcome (or even addressed) *Smith v. Eli Lilly & Co.*, which rejected market share liability, requiring plaintiffs to identify the product causing their injuries. 560 N.E.2d 324, 329, 337 (Ill. 1990).

[16] *Chicago II*'s discussion of foreseeability has been superseded by *City of Miami*.

initial matter, this ignores the common law and statutory claims in Counts 6-10, for which the City does not even attempt to argue that a foreseeability standard is sufficient. Nor can it, given that Illinois law makes clear that proximate cause "is essential in every tort," *Cty. of Cook v. Philip Morris, Inc.*, 353 Ill. App. 3d 55, 60 (2004), and exists "only if the defendant's conduct is **so closely tied** to the plaintiff's injury that he should be held legally responsible for it." *City of Chi. v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395 (2004). Likewise, the Sixth Circuit and other federal courts applying *City of Miami*'s "direct relation" standard have held that foreseeability alone cannot demonstrate proximate cause and have dismissed claims where, as here, a plaintiff alleges "injuries . . . too attenuated . . . to satisfy the proximate cause requirement." *E.g.*, *City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*, 863 F.3d 474, 480 (6th Cir. 2017); *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 2018 WL 2431987, at *6-7 (N.D. Ill. May 30, 2018); JM 18 (collecting cases).

The City's foreseeability argument also falls flat as to its MFCA claims. Opp. 26-27. Indeed, the City's own cases make clear that the federal FCA incorporates common-law principles of proximate cause. *See, e.g.*, *United States v. Luce*, 873 F.3d 999, 1012-14 (7th Cir. 2017) ("common law" standard for proximate cause applies to FCA because "we should assume that Congress did not stray far from the established common law").[17] And while *City of Miami* addressed Fair Housing Act violations, the Supreme Court expressly noted that its decision was rooted in common-law proximate cause principles, which "require[] some direct relation between the injury asserted and the injurious conduct alleged." *City of Miami*, 137 S. Ct. at 1305-06. Because the MFCA incorporates common-law principles of causation and is interpreted in harmony with the federal FCA, the City cannot avoid its "direct injury" burden.

---

[17] The City also relies on *United States v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014 (E.D. Mich. 2017), but that case predates *City of Miami*.

The City also argues, without citation to any authority, that the "learned intermediary" doctrine applies only to failure to warn claims. Opp. 27. But numerous courts have recognized the learned intermediary principles applicable in a failure-to-warn case also apply to the claims asserted here, and make it impossible to show proximate causation as a matter of law. *See, e.g.*, *Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 475-76 (S.D. W. Va. 2013); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 3119499, at *6-9 (S.D. Ill. Aug. 5, 2010); *Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP*, 585 F. Supp. 2d 1339, 1345 (M.D. Fla. 2008); *see also Indiana/Kentucky/Ohio Reg'l Council of Carpenters Welfare Fund* v. *Cephalon, Inc.*, 2014 WL 2115498, at *7 (E.D. Pa. May 21, 2014) (dismissing false marketing claims regarding opioid medicine because prescribers are presumed to have knowledge of a drug label's contents).[18]

Moreover, apart from (1) the prescriber's independent medical judgment, the City also ignores the many other intervening acts that weaken or cut any link between an alleged misrepresentation and any purported injury, including (2) the patient's preferences; (3) the pharmacist's decision to fill the allegedly inappropriate prescription; (4) the patient's decision whether and how to use the medication; and (5) the City's decision to cover the drug for the particular indication and to reimburse the particular prescription. The City does not, and cannot, dispute that these intervening acts further attenuate any causal link between Manufacturer Defendants' conduct and the City's alleged payment for medically inappropriate opioid prescriptions.

Finally, the City argues that *Beretta* does not extinguish manufacturer liability for costs

---

[18] *In re Neurontin Marketing & Sales Practices Litigation*, 712 F.3d 21 (1st Cir. 2013), is inapposite for reasons discussed in the Manufacturer Defendants' *Summit* MTD Reply at 9.

associated with secondary market opioids and heroin because that case turned on "the *criminal* conduct of third parties." Opp. 28. But that is precisely why *Beretta* applies. By law, Manufacturer Defendants' prescription medicines can *only* be sold legally to patients who have a prescription written by a physician who authorized the medication to be sold to that patient. Any "secondary market for opioids and/or heroin" or the "crimes" resulting from that secondary market *must* result from "the criminal acts of third parties," exactly as in *Beretta*. *See* 821 N.E. 2d at 1134-35. Counts 4-10 thus fail for lack of proximate cause. JM 18-19.

### C.    The City Fails to Allege Any Cognizable Injury

#### 1.    The 4AC Does Not Allege Reimbursement of Any Ineffective or Harmful Prescriptions

The City claims that Manufacturer Defendants' conduct caused it to suffer "real and cognizable" economic loss through increased spending on opioids, including "more than $13.9 million to pay for more than 320,000 prescriptions," as well as increased costs associated with addiction and abuse. But the City failed to identify even *a single one* of these 320,000 prescriptions that was purportedly harmful, ineffective, or medically inappropriate. JM 21-22. The City asks the Court to assume that at least one of these prescriptions *must* have resulted from a false or misleading representation. Opp. 30 n.30 ("The argument that *none* of these claims is based on the false and misleading representations of Defendants is inexplicable."). But it is the City's burden to plead facts sufficient to support its claims—not Defendants' burden to disprove the negative. And speculation based on the City's say-so is not enough. *See Sergeants Benev. Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 2012 WL 4336218, at *6 (E.D.N.Y. Sept. 17, 2012) (assertion that "absent Defendants' alleged misrepresentations and

omissions, physicians would not have prescribed" the drug was too speculative).[19] The City's failure to plead a single instance of a harmful, ineffective, or medically unnecessary opioid prescription dooms its claims. *See Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003).

### 2.     The City Has Not Pleaded Any Cognizable Economic Harm

The City also fails to plead an injury because it continues to pay for opioids prescribed to treat chronic pain. *See Teamsters Local 237 Welfare Fund v. AstraZeneca Pharm. LP*, 136 A.3d 688, 695-96 (Del. 2016) (payor that continues to pay for an allegedly falsely advertised drug "cannot, as a matter of law," show an injury). The City claims that *Teamsters* is inapposite because the payors there could have removed the drug at issue from their formularies. Opp. 31. But the City affirmatively asked its benefits administrators to adopt the CDC Guidelines, 4AC ¶¶ 699-702, which **expressly permit** opioids prescriptions to treat chronic pain. And in any event, the City's conclusory argument that it "cannot simply end its coverage of chronic opioid therapy" does not permit it to bring a claim that would otherwise be disallowed by law. Its continued payment of these claims—and apparent intent to continue payment for the foreseeable future—is therefore fatal.

The City's theory of economic harm also fails because it concedes that before December 2009 and throughout 2012 and 2013, it paid fixed premiums for HMO plans that did not depend on the number of opioid prescriptions filled. *See* 4AC ¶ 663. In its opposition, the City argues that those "fixed rate" premiums "reflected the rising cost of prescriptions for Defendants' drugs," Opp. 31, but it has pleaded zero facts linking Manufacturer Defendants'

---

[19] The City's reliance on *In re Neurontin Mktg.* is misplaced. The plaintiff in that case presented evidence showing that it directly received and relied upon the alleged misrepresentations at issue. 712 F.3d at 28, 40-41; *see also Summit* MTD Reply at 9. The City has not even come close to making such a showing here.

- 18 -

purported misconduct to rising premiums. *See In re Bextra & Celebrex Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2012 WL 3154957, at *8 (N.D. Cal. Aug. 2, 2012) ("inflated price" injuries are "too speculative" to avoid dismissal and "do not adequately connect the plaintiffs to the alleged misconduct"). And for the limited period during which the City claims to have reimbursed opioid-prescription costs directly, *see* 4AC ¶ 663, the allegedly concealed risks were already well-known. Indeed, any purported payments would have been made more than a decade *after* Manufacturer Defendants allegedly began their "deceptive and unfair" marketing campaign, *id.*, and *after* the FDA mandated rigorous REMS programs both for short-acting and long-acting opioids—national programs imposing specific educational and other requirements meant "to communicate the risks of opioids to prescribers and patients," 4AC ¶ 72, 210 & n.69-70. These facts preclude the City from adequately pleading any injury as a matter of law. *See Teamsters*, 136 A.3d at 695-96.

## II.     THE PUBLIC NUISANCE CLAIM FAILS (COUNT 11)

### A.     The City Does Not Adequately Plead the Elements of a Public Nuisance

The City does not dispute that its public nuisance claim requires it to allege an unreasonable interference with a public right that proximately caused the City's harms. Opp. 32-36. The City claims to have met these requirements. It has not.

***No public right.***   Rather than address its failure to allege interference with a public right—i.e., "one common to the general public" and not "merely an assertion, on behalf of the entire community, of [an] individual right," *Beretta.*, 821 N.E.2d at 1111, 1116—the City responds with a non sequitur: "this lawsuit" concerns "the deceptive, and thus unlawful marketing of opioids." Opp. 33. This sidestep is an admission that the City does not seek to protect any common right different from "the individual right that everyone has not to be . . . ***defrauded***." Restatement (Second) Torts § 821B cmt. g.

The City's reliance on a New York trial court decision in *In re Opioid Litigation* does not change the result. Opp. 33 n.32. That court, applying New York law, equated a collection of individual rights with a public right. Opp. Ex. 1 at 28 (reasoning that plaintiffs had pleaded a public right because the alleged conduct "affected a considerable number of persons"). But even if that was correct under New York law, under Illinois law, allegations that a collection of individuals suffer from opioid addiction does not demonstrate a public right. *Beretta*, 821 N.E.2d at 1116; Restatement (Second) of Torts § 821B cmt. g (conduct does not implicate a public right simply because it affects "a large number of persons"); *see also Summit* MTD Reply at n.23 (Dkt. #746).

***No Unreasonable Interference.***  The City concedes that, under established Illinois law, the extensive federal and state regulation over the manufacture, distribution, sale, and promotion of opioids means that the City cannot plead an "unreasonable interference" by any Manufacturer Defendant unless it pleads a violation of those regulations or negligent conduct. JM 24; Opp. 34. The City has not adequately done so, for the reasons fully discussed in the Manufacturer Defendants' opening brief and this reply. *See* JM §§ I, III, VI; *supra* §§ I; *infra* §§ III, VI.

***No Causation.***  The City attempts to argue that it has sufficiently pleaded causation by referencing the flawed arguments it raises in connection with its false claim counts. Opp. 26. For the reasons discussed above, these arguments fail. *See supra* § I.B.

### B.    This Claim Is Barred by the Municipal Cost Recovery Rule

The parties agree: the City cannot recover "public expenditures" related to opioids "made in the performance of governmental functions," *Beretta*, 821 N.E.2d at 1144, except to the extent authorized by statute or incurred to remediate a public nuisance. JM 25; Opp. 36-37. Nor would there be any basis to adopt an exception for expenses incurred due to ongoing intentional conduct—the Illinois Supreme Court already strongly rejected such an exception:

> It defies common sense to suggest that the more predictable the expense, the greater the ability of the city to recover its costs in tort. The potential unintended consequences of such a rule are staggering. We agree with defendants that when the need for emergency services in response to an alleged nuisance is ongoing, the municipal cost recovery rule is stronger.

*Beretta*, 821 N.E.2d at 1147. Accepting the applicable rule, the City argues that its own ordinance, MCC § 1-20-020, serves as a required legislative abrogation of common law. Opp. 36-37. But that ordinance only authorizes recovery of costs reasonably required by a person's alleged violation of law, which the City has failed to plead. JM §§ I, III; *supra* § I; *infra* § III. And the City's effort to construe its costs as part of an abatement of a public nuisance ignores *Beretta*'s rule that such abatement costs must be "unrelated to the normal provision of police, fire, and emergency services.'" 821 N.E. at 1144-45 (quoting *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 324 (9th Cir. 1983) (Kennedy, J.)). Having failed to adequately plead any exception to the municipal cost recovery rule, the City's public nuisance claim cannot stand.

Even if the Court were to allow this absolute public nuisance claim at this stage, which it should not, Manufacturer Defendants respectfully suggest the Court should, at a minimum, limit the damages request to prospective abatement of the alleged nuisance.

### C. This Claim Is Barred by the Economic Loss Doctrine

The economic loss rule, like the municipal cost recovery rule, bars the City's claim for damages. And the City offers the same response, attempting to construe its damages as reimbursement for its abatement of a public nuisance. Opp. 37-38. This argument fails here too.

## III. THE MUNICIPAL SERVICES CLAIM FAILS (COUNT 7)

Count 7 fails on three grounds: the City fails to plead an underlying statutory violation, causation, or expenditures not barred by the municipal cost recovery rule. JM 26. Plaintiffs respond to these points by relying on their same flawed arguments discussed above. Opp. 38-39.

Because none (let alone all) of those arguments has merit, Count 7 should be dismissed.

## IV.     THE CONSPIRACY CLAIMS FAIL (COUNTS 6 AND 9)

The City wrongly suggests that the Transferor Court "rejected" Manufacturer Defendants' argument that the conspiracy claims are legally deficient. *See* Opp. 39. In actuality, the City's claims were so deficient that the Transferor Court dismissed them without even reaching the merits of Manufacturer Defendants' arguments. *See Chicago II*, 211 F. Supp. 3d at 1082-83 (dismissing the City's false claims conspiracy claim for failure to plead an underlying false claim, and dismissing the City's civil conspiracy claim for failure to plead causation). Because the City has not rectified its pleading failures, the conspiracy claims must still be dismissed.

### A.     The 4AC Fails to Allege an Agreement to Commit an Illegal Act

A "necessary and important element" of any conspiracy to defraud claim is an agreement between the alleged co-conspirators, with allegations sufficient to detail "the nature of the purported agreement," as required by Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007); *see also Wells Fargo Bank v. Leafs Hockey Club, Inc.*, 2014 WL 1017211, at *6 (N.D. Ill. Mar. 14, 2014) (dismissing conspiracy to defraud claim for failure to set forth any allegations that an agreement existed between the alleged co-conspirators); *Smith v. BOC Grp. PLC*, 2001 WL 477237, at *7 (N.D. Ill. May 4, 2001) (same). The City attempts to evade this strict requirement by arguing that it "need only supply circumstantial evidence from which a conspiracy may be inferred." Opp. 40 n.36. This argument fails, however, because Rule 9(b)'s heightened pleading standards apply to claims alleging a conspiracy to defraud. *Singer v. Progressive Care, SC*, 202 F. Supp. 3d 815, 828 (N.D. Ill. 2016). *Edalatdju v. Guaranteed Rate, Inc.*, on which the City relies, supports this conclusion. 748 F. Supp. 2d 860, 866-68 (N.D. Ill. 2010) ("Defendants are correct in asserting that Rule 9(b) applies" to claims for conspiracy to

- 22 -

defraud). The City's other cases are inapposite because they did not involve conspiracies to defraud. *See* Opp. 40 n.36 (citing *Weberg v. Franks*, 229 F.3d 514 (6th Cir. 2000), and *Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985)).

Despite this heightened pleading standard, the City fails to allege ***any*** specific facts alleging an agreement between Cephalon, Endo, Janssen, Purdue, and the non-parties identified in the 4AC. Indeed, the City even admits that the purportedly conspiring entities actually had different interests. Opp. 40 ("[T]he coconspirators may have had different motives."). In apparent recognition of this pleading defect, the City argues the alleged relationships between Manufacturer Defendants and non-party trade associations show an "agree[ment] to further their overlapping goals by working together." Opp. 40. But the separate funding of third-party groups by Defendants in a highly competitive space is nothing more than "parallel conduct and a bare assertion of conspiracy," which does not satisfy the City's pleading burden on *Twombly*, much less Rule 9(b). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (dismissing complaint where it was "otherwise detailed, [but] bereft of any suggestion, beyond a bare conclusion, that the [] defendants were leagued in a conspiracy").

In addition, although the City must plead facts sufficient to show an agreement to violate the law, the 4AC's conclusory allegations are insufficient to satisfy this burden. *See* 4AC ¶¶ 831-35; *United States ex rel. Kalec v. NuWave Monitoring, LLC*, 84 F. Supp. 3d 793, 805 (N.D. Ill. 2015) (dismissing conspiracy claim where plaintiffs failed to allege facts "suggest[ing] the existence of an agreement to violate the law"); *United States ex rel. Lisitza v. Par Pharm. Companies, Inc.*, 2013 WL 870623, at *7 (N.D. Ill. Mar. 7, 2013) (same). For these reasons, the City's conspiracy claims fail.

### B.     The City Fails to Plead a Conspiracy with Particularity

As Manufacturer Defendants demonstrated in their opening brief, the City did not plead its conspiracy claim with sufficient particularity. JM 29-30. In lieu of a substantive response, the City simply asserts that the 4AC "contains particularized allegations detailing Defendants' conspiracies with various front groups" and cites a handful of assorted paragraphs. Opp. 41. This is insufficient for the reasons previously briefed. *See Summit* MTD § XIII; JM § IV; *United States ex rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 666 (N.D. Ill. 2015).

## V.     THE UNJUST ENRICHMENT CLAIM FAILS (COUNT 10)

Because the Transferor Court previously dismissed the City's unjust enrichment claim for failure to plead causation, the City incorrectly assumes that all it needs to do here is supply the "missing [causation] link" for its claim to "proceed." Opp. 41. Not so. The Transferor Court's dismissal of this claim on causation grounds, of course, does not bless the claim's other fatal deficiencies—none of which the City meaningfully addresses.[20] *See id.*; JM 30-31. And the City still fails to provide the missing causal link for the reasons stated *supra* § I.B. All of these deficiencies compel dismissal of Count 10. *See* JM 30-31.

## VI.    THE UNFAIR PRACTICES CLAIM (COUNT 2) SHOULD BE DISMISSED AND STRICKEN

The City cites no support for its contention that repleading a dismissed claim solely for the purposes of appellate review is "permissible." Opp. 42. It is not. *See* JM 31. Restating dismissed claims is both unnecessary and "illogical," *Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601, 618 (6th Cir. 2014), and needlessly "creates the impression that they are still

---

[20] For example, the City asserts that the 4AC's "allegations are neither 'bare' nor 'formulaic,'" Opp. 41-42, yet supports that assertion by citing conclusory allegations that are both, *id.*, and a case that *dismissed* an unjust enrichment claim for failure "to allege specific facts in support of [the] claim." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 680 (Ill. 1989).

viable and works against what must be a common goal of the Court and the parties: to diminish the complexity of th[e] litigation." *Kline v. Mortg. Elec. Sec. Sys.*, 2015 WL 1442842, at *7 (S.D. Ohio Mar. 27, 2015) (directing amended complaint "not restate claims that have been dismissed"). The Court should thus strike the unamended, previously dismissed unfair practices claim from the 4AC.

## CONCLUSION

For the foregoing reasons, the Court should dismiss counts 4 through 11 of the 4AC with prejudice and grant such other and further relief as it deems just and proper.

Dated:  July 13, 2018                    Respectfully submitted,

By: /s/ Charles C. Lifland (consent)
Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
clifland@omm.com
sstrong@omm.com

Daniel M. Petrocelli
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
dpetrocelli@omm.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

/s/ Mark S. Cheffo (consent)
Mark S. Cheffo
Sheila L. Birnbaum
Hayden A. Coleman
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com
Sheila.Birnbaum@dechert.com
Hayden.Coleman@dechert.com

*Attorneys for Defendants Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company*

s/ Jonathan L. Stern (consent)
Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Phone: 202-942-5000
Fax: 202-942-5999
Email: jonathan.stern@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Phone: 213-243-4000
Fax: 213-243-4199
Email: sean.morris@arnoldporter.com

*Attorneys for Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*

*Attorneys for Par Pharmaceutical, Inc. and Par Pharmaceuticals Companies, Inc. (not yet served or appearing)*

/s/ Steven A. Reed (consent)
Steven A. Reed
Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
T: 215.963.5603
F: 215.963.5001
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
(305) 415-3000
brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc.*

/s/ Donna M. Welch (consent)
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com

*Counsel for Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*

/s/ Brien T. O'Connor (consent)
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
(617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Attorneys for Defendant Mallinckrodt LLC*

## LOCAL RULE 7.1(F) CERTIFICATION

I certify that this case has been assigned to the "litigation track" pursuant to CMO One

and that this reply brief adheres to the page limitations set forth in CMO Four at 3.


Dated: July 13, 2018                              /s/ Charles C. Lifland

                                                  Charles C. Lifland
                                                  Sabrina H. Strong
                                                  O'MELVENY & MYERS LLP
                                                  400 S. Hope Street
                                                  Los Angeles, CA 90071
                                                  Telephone: (213) 430-6000
                                                  Facsimile: (213) 430-6407
                                                  clifland@omm.com
                                                  sstrong@omm.com

                                                  Daniel M. Petrocelli
                                                  O'MELVENY & MYERS LLP
                                                  1999 Avenue of the Stars
                                                  8th Floor
                                                  Los Angeles, CA 90067
                                                  Telephone: (310) 553-6700
                                                  Facsimile: (310) 246-6779
                                                  dpetrocelli@omm.com

                                                  *Attorneys for Defendants Janssen*
                                                  *Pharmaceuticals, Inc., Johnson &*
                                                  *Johnson, Janssen Pharmaceutica, Inc.*
                                                  *n/k/a Janssen Pharmaceuticals, Inc., and*
                                                  *Ortho-McNeil-Janssen Pharmaceuticals,*
                                                  *Inc. n/k/a Janssen Pharmaceuticals, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2018, a copy of the foregoing **Reply in Support of the Manufacturer Defendants' Joint Motion to Dismiss Plaintiff's Fourth Amended Complaint** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: July 13, 2018                         /s/ Charles C. Lifland

Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
clifland@omm.com
sstrong@omm.com

Daniel M. Petrocelli
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
dpetrocelli@omm.com

*Attorneys for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc..*

1