# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION**

**This document relates to:**

*Cleveland Bakers & Teamsters Health &
Welfare Fund and Pipe Fitters Local Union
No. 120 Insurance Fund v. Purdue Pharma
L.P., et al.*
Case No. 18-OP-45432 (N.D. Ohio)

**MDL No. 2804
Case No. 17-md-2804
Judge Dan Aaron Polster**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT BY DEFENDANTS WALMART INC., CVS HEALTH CORP., RITE AID OF MARYLAND, INC., AND WALGREENS BOOTS ALLIANCE, INC.

## INTRODUCTORY STATEMENT OF THE ISSUES
## AND SUMMARY OF ARGUMENT

Rather than draft their own Complaint, Plaintiffs largely cut and paste more than 200 pages of assertions from the *Summit County Second Amended Complaint*.  Doc. #514.  ("Summit County Complaint").  The claims have grown no more persuasive through recycling.  They should be dismissed under Rules 12(b)(1) and 12(b)(6) for all the reasons set out in the *Motion to Dismiss Summit County Second Amended Complaint by Walmart Inc., CVS Health Corp., Rite Aid Corp., and Walgreens Boots Alliance, Inc.*, Doc. #497 at 8-17 ("Summit County Motion to Dismiss").[1]  In addition, Plaintiffs' suit suffers from a fatal defect all its own: It fails under "the settled rule barring direct suits by third parties seeking to recover the costs of medical care paid on behalf of individuals injured as a result of an alleged tortfeasor's conduct."  *SEIU v. Phillip Morris*, 249 F.3d 1068, 1073 (D.C. Cir. 2001).  This suit is virtually identical to a raft of litigation brought two decades ago against tobacco manufacturers by union health funds and other third-party payors.  Those lawsuits failed in the Sixth Circuit (and everywhere else) because the third-party payors' claims were too remote from the alleged harm to individual smokers to sustain.  *See Perry v. Am. Tobacco Co.*, 324 F.3d 845, 849 (6th Cir. 2003) (collecting cases).  This unbroken line of precedent dictates that the court should dismiss Plaintiffs' claims.

## ARGUMENT

Of the eleven causes of action set forth in their Complaint, Plaintiffs attempt to state the same six causes of action as did Summit County against Defendants Walmart Inc., Rite Aid of

---

[1] Case Management Order One directs the parties to coordinate and consolidate briefing on all the motions to dismiss and to avoid duplicative briefing by incorporating similar arguments by reference.  *See* Doc. #232.  Accordingly, the Moving Defendants also incorporate the arguments offered by the Major Distributors—AmerisourceBergen Corporation, McKesson Corporation, and Cardinal Health ("Major Distributors' Brief").

Maryland, Inc., Walgreens Boots Alliance, Inc., and CVS Health Corp. (collectively, the "Moving Defendants"): negligence, unjust enrichment, civil conspiracy, statutory public nuisance, common law absolute public nuisance, and injury through criminal acts under Ohio Revised Code § 2307.60.  All six claims fail.  In addition, Plaintiffs lack standing and fail to state any claims against the Moving Defendants in their capacities as retail pharmacies.

## I.  Plaintiffs Lack Standing to Sue the Moving Defendants.

Plaintiffs' suit relates to an "opioid disaster" that they assert has affected "most Americans . . . either directly or indirectly."  Compl. ¶ 3.  They allege a broad array of public harms, including "severe and far-reaching public health, social services, and criminal justice consequences," *id*. ¶ 20, and sue over payments they allegedly made to fund hospital, emergency care, and pharmaceutical services arising from opioid misuse and addiction.  *See, e.g.*, Compl. ¶¶ 28, 29, 928.  Plaintiffs' claimed harms fail to satisfy the standing requirements of Article III for two reasons: (1) they are derivative of harms suffered by third parties, and (2) they are not fairly traceable to any alleged conduct by the Moving Defendants.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

*First*, "Plaintiffs' injury is not direct or particularized to Plaintiffs, as they seek damages not for any personal injuries, but rather for the injury to others"—namely, individual opioid users.  *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 495 (6th Cir. 1999); *cf. Perry*, 324 F.3d at 848-49 (finding no "standing to bring suit under RICO" to "recover the increased costs of health-related expenses due to smoking" because "the alleged injuries" were "inherently contingent on injury to third-party smokers").

*Second*, on the traceability prong of Article III, Plaintiffs must show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the

challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal citation, quotation, and alterations omitted).  Although "the causation need not be proximate," standing "is generally more difficult to establish when the injury is indirect." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 713 (6th Cir. 2015).  And although traceability need not rise to the level of but-for cause, "causation means more than speculative" cause.  *Id*. at 714.  "[T]he mere possibility that causation is present is not enough" to establish traceability; "the presence of an independent variable between . . . the harm and the conduct makes causation sufficiently tenuous that standing should be denied." *Arpaio v. Obama*, 797 F.3d 11, 20 (D.C. Cir. 2015) (internal quotation omitted); *see also Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005) (standing not present when speculative inferences connect injury to conduct).

Here, it is entirely speculative whether the Moving Defendants' alleged misconduct caused Plaintiffs' alleged injuries, and the causal link between the two is interrupted by numerous independent actors.  According to Plaintiffs, the direct causes of the opioid crisis were the deceptive marketing practices of the Marketing Defendants, the prescribing practices of physicians who over-prescribed opioids or ran "pill mills," the individuals who supplied opioids on the black market, and the individuals who abused the drugs.  *See, e.g.*, Compl. ¶¶ 17, 18, 140. Plaintiffs' main complaint against the Moving Defendants is that they failed to intervene, by "monitoring and reporting suspicious activity," to *stop* the crisis set in motion by these other actors' affirmative acts.  *See, e.g.*, Compl. ¶¶ 574, 1009.  But it is pure conjecture to suggest that monitoring and reporting "suspicious activity" (if any such activity even occurred) would have reduced the alleged harms suffered by Plaintiffs as a result of so much independent culpable conduct by third parties.

3

Moreover, as is discussed in more detail in Part IV below, the Sixth Circuit—and every other circuit to have taken up the question—has rejected suits by third-party payors to recover health-care costs incurred by smokers because the chain of causation is too remote.  *Perry*, 324 F.3d at 849 (citing cases).  Although those decisions rested on an analysis of causation under statutory and common law, their reasoning further supports the conclusion that Plaintiffs' claimed injuries are so remote and speculative that they are not even cognizable under Article III. *See S. Illinois Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175KMW, 2009 WL 3151807, at *7 (S.D.N.Y. Sept. 30, 2009) ("The Court finds that Plaintiffs have failed to establish Article III standing for the same reasons the Court finds Plaintiffs have failed to establish standing under RICO—Plaintiffs have not alleged a causal connection between the alleged injury and the challenged act.").

## II.     Plaintiffs State No Claims Against the Moving Defendants as Pharmacies.

The Complaint purports to state claims against the Moving Defendants in their capacities as distributors, not as dispensing pharmacies: It classifies the Moving Defendants as "Distributor Defendants," Compl. ¶ 93, and its claims for relief focus on the marketing, distribution, and sale of opioids by marketers and distributors—not on filling prescriptions or dispensing medications, *id*. ¶¶ 904-1159; *see also, e.g.*, *id*. ¶ 536 (referring to "sales" by a manufacturer).  Yet, presumably in an effort to add color to their distributor claims against the Moving Defendants, Plaintiffs make a handful of vague allegations that refer to some of the Moving Defendants in their role as dispensing pharmacies.  *E.g.*, *id*. ¶¶ 574-89.

To the extent that Plaintiffs intend these allegations to plead claims against the Moving Defendants as dispensing pharmacies rather than distributors, those claims fail and should be dismissed.  The allegations at paragraphs 574-89 of the Complaint are manifestly insufficient

4

under *Iqbal* and *Twombly* because they are vague, conclusory, and generic boilerplate.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56.  Paragraphs 574-81 simply offer context, not allegations of any conduct by the Moving Defendants, while paragraphs 582-589 are exactly the sort of "'naked assertion[s]' devoid of 'further factual enhancement'" that are legally insufficient under *Iqbal* and *Twombly*.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, while Plaintiffs describe dispensing conduct by *some* (though not all) of the Moving Defendants in *other* jurisdictions (Compl. ¶¶ 591-622), such allegations cannot support claims against the Moving Defendants as dispensing pharmacies in this jurisdiction.

## III.    The Ohio Product Liability Act Abrogates Plaintiffs' Tort Claims.

The Court should dismiss Plaintiffs' tort claims because they have been abrogated by the Ohio Product Liability Act ("OPLA").  *See* Major Distributors' Brief Parts III.A & IV.A.

## IV.    Plaintiffs' Negligence Claim is Legally Deficient (Count 7).

Even if Plaintiffs' tort claims were not superseded by OPLA, they would still fail as a matter of law.  Plaintiffs allege that the Moving Defendants have a general common law duty to exercise care in the distribution of opioids, and specifically to detect, identify, or report suspicious orders.  *E.g.*, Compl. ¶¶ 79, 464-65, 469-73, 574-76, 581-82.  That claim fails for the reasons explained in the Summit County Motion to Dismiss at 8-17.

Plaintiffs' negligence claim also fails because they cannot establish proximate causation. To begin with, as noted above, the actions of numerous third parties acting entirely independently of the Moving Defendants break the causal chain between the Moving Defendants' alleged misconduct and Plaintiffs' alleged injuries.  *See* Part I *supra.*  That alone requires dismissal of Plaintiffs' negligence claim.  *See, e.g.*, *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 670 (8th Cir. 2009).

5

In addition, Plaintiffs' inability to show proximate cause is exacerbated by the fact that Plaintiffs are private union insurance plans alleging that the Moving Defendants' conduct caused them to lose money by paying for medical care.  In strikingly similar litigation brought by union insurance plans and related parties against tobacco companies for costs allegedly incurred as a result of injuries caused to smokers, all nine of the federal courts of appeals to consider the issue "uniformly concluded that such claims must fail because the alleged injuries are too remote." *Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 849 (6th Cir. 2003).[2]  As the Third Circuit explained, "[t]he tortured path that one must follow from the tobacco companies' alleged wrongdoing to the Funds' increased expenditures demonstrates that the plaintiffs' claims are precisely the type of indirect claims that the proximate cause requirement is intended to weed out."  *Steamfitters Local*, 171 F.3d at 930 (citing *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339 (1928) (Andrews, J., dissenting)).

The courts in these cases recognized that they were applying "[t]he usual common law rule . . . that a health-care provider has no direct cause of action in tort against one who injures the provider's beneficiary, imposing increased costs upon the provider."  *United Food*, 223 F.3d at 1274; *see also id.* at 1274 n.7 ("the principles of proximate cause in federal RICO and antitrust cases are borrowed largely from the general common law of proximate cause").  As explained in

---

[2] *See also Laborers Local 17 Health and Benefit Fund v. Philip Morris Inc.*, 191 F.3d 229 (2d Cir. 1999); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris Inc.*, 171 F.3d 912 (3d Cir. 1999); *Int'l Brotherhood of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc.*, 196 F.3d 818 (7th Cir. 1999); *Ore. Laborers-Employers Health & Welfare Fund v. Philip Morris Inc.*, 185 F.3d 957 (9th Cir. 1999); *Tex. Carpenters Health Benefit Fund v. Philip Morris Inc.*, 199 F.3d 788, 789-90 (5th Cir. 2000); *Lyons v. Philip Morris Inc.*, 225 F.3d 909 (8th Cir. 2000); *United Food and Commercial Workers Unions, Employers Health and Welfare Fund v. Philip Morris Inc.*, 223 F.3d 1271, 1273-74 (11th Cir. 2000); *Serv. Employees International Union Health and Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068 (D.C. Cir. 2001).

the Seventh Circuit's rejection of one of the claims, "[f]or more than 100 years state and federal courts have adhered to the principle (under both state and federal law) that the victim of a tort is the proper plaintiff, and that insurers or other third-party providers of assistance and medical care to the victim may recover only to the extent their contracts subrogate them to the victim's rights." *Int'l Brotherhood of Teamsters*, 196 F.3d at 822.

The Sixth Circuit has applied this rule outside the context of RICO suits against tobacco manufacturers. *See, e.g., Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884 (6th Cir. 2000) (contractual coal brokerage commissions); *Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir. 1992) (estate beneficiaries); *see also City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 621 F. Supp. 2d 513, 532–33 (N.D. Ohio 2009) (dismissing the City of Cleveland's subprime loan suit against mortgage lenders on similar reasoning), *aff'd sub nom. City of Cleveland v. Ameriquest Mort. Sec., Inc.*, 615 F.3d 496 (6th Cir. 2010) (relying on *Perry* to find no proximate cause to support nuisance claim). So have other courts. *See, e.g., S. Illinois Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175KMW, 2009 WL 3151807, at *7 (S.D.N.Y. Sept. 30, 2009) (holding that health care and welfare funds lacked Article III and RICO standing to sue pharmaceutical company). And the Sixth Circuit has recognized that the Ohio Supreme Court follows these same proximate cause principles under Ohio tort law. *See Ameriquest*, 615 F.3d at 503.

Recognition of proper proximate cause principles exposes Plaintiffs' lawsuit for what it is: "an illegitimate end-run around principles of subrogation." *Tex. Carpenters Health*, 199 F.3d at 790. Without subrogation (which Plaintiffs never even purport to plead), "a health-care provider has no cause of action against a defendant who injures the health-care provider's ward,

causing the health-care provider to incur increased expenses." *United Food*, 223 F.3d at 1273 n.5.  Proximate cause is not present, and Plaintiffs' claims fail.

## V.      Plaintiffs' Public Nuisance Claims Fail to Plausibly Allege Any Violation of Federal or State Law (Counts 5, 6).

Plaintiffs allege that all "Defendants" as a group violated or aided and abetted the violation of state and federal law in their distribution and sale of prescription opioids.  Compl. ¶ 1008.  Specifically, Plaintiffs claim that Defendants facilitated and encouraged the flow of drugs into an illegal market; failed to maintain effective controls against diversion; failed to monitor, investigate, or report suspicious orders; failed to suspend shipments of suspicious orders; and distributed to "pill mills." *Id.* ¶¶ 1009, 1033.

As an initial matter, Plaintiffs lack authority to maintain this statutory nuisance claim.  Ohio law provides that only "the attorney general, the prosecuting attorney of any county in which the offense was committed or in which the person committing the offense resides, or the state board of pharmacy may maintain" a statutory nuisance action for a controlled-substances nuisance.  Ohio Rev. Code § 4729.35.  Plaintiffs, which are union healthcare insurers, do not fall within any of these categories.

In any event, Plaintiffs' public nuisance claims also fail for the reasons explained in the Summit County Motion to Dismiss.  *See* Summit County Motion to Dismiss at 17-21.

## VI.     Plaintiffs' Unjust Enrichment Claim Fails Because Plaintiffs Conferred No Benefit on the Moving Defendants (Count 10).

Plaintiffs allege that all "Defendants" as a group profited and benefited from the increase in the distribution and purchase of opioids within Plaintiffs' communities, including from opioids foreseeably and deliberately diverted within and into Plaintiffs' communities.  Compl. ¶ 1131.  That claim fails for the reasons explained in the Summit County Motion to Dismiss (at

8

21) and in *Perry*.  To the extent Plaintiffs argue that, "by bearing a portion of the increased health expenses resulting from [the Moving] Defendants' conduct, Plaintiffs . . . unjustly enrich[ed the Moving] Defendants for costs that [the Moving] Defendants should be forced to bear," "such unjust enrichment claims should be dismissed on remoteness grounds." *Perry*, 324 F.3d at 851.  Moreover, just as the defendants in *Perry* had "no legal duty to smokers to pay their medical costs," so too the Moving Defendants had no duty to pay any medical costs derived from opioid use.  *Id*.  Thus, the decision by third-party payors to cover those costs did not enrich the Moving Defendants.  *See id*.

## VII.    Plaintiffs Fail to Establish an Actionable Civil Conspiracy Claim (Count 11).

Plaintiffs allege a civil conspiracy to "commit fraud and misrepresentation" in conjunction with their unlawful distribution of opioids.  Compl. ¶¶ 1146, 1148, 1154.  That claim fails for the reasons explained in the Summit County Motion to Dismiss.  *See* Summit County Motion to Dismiss at 21-23.

## VIII.   Plaintiffs' Claim Under Ohio Rev. Code § 2307.60 Fails on Multiple Grounds (Count 9).

Plaintiffs allege that all "Defendants" as a group knowingly induced or caused members of Plaintiffs' communities to use a controlled substance by deception, flooded the market with opioids, and deliberately disregarded their obligations to maintain effective controls against diversion in violation of R.C. § 2925.02(A)(1) and (A)(3).  Compl. ¶¶ 1115-16.  That claim fails for the reasons explained in the Summit County Motion to Dismiss.  *See* Summit County Motion to Dismiss at 23-24.

## CONCLUSION

For the foregoing reasons, all claims against the Moving Defendants should be dismissed with prejudice.


Dated:  23 July 2018

Respectfully submitted,


/s/   Tara A. Fumerton

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

/s/   Eric R. Delinsky (consent)

Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Health Corporation*

/s/    Kelly A. Moore (consent)

Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc.*

/s/    Kaspar Stoffelmayr (consent)

Kaspar Stoffelmayr
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorney for Walgreens Boots Alliance, Inc.*

11

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

Pursuant to Local Rule 7.1(f), I hereby certify that this Court has ordered that length

limitations applicable to complex cases apply to this matter, ECF No. 232 at 4 (No. 1:17-MD-

2804), and that the foregoing Memorandum of Law is 12 pages in length and within Rule 7.1(f)'s

30-page limit for a complex case.

/s/   Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com