# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-MD-2804 |
| This document relates to: | Judge Dan Aaron Polster |
| *Track One Cases.* | |

# PHARMACY DEFENDANTS' OBJECTIONS TO
# DISCOVERY RULINGS NO. 2 AND NO. 3

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................................ 2

ARGUMENT .................................................................................................................................... 3

I.      Temporal Scope ................................................................................................................ 4

        A.      Information Pre-Dating the Limitations Period Is Not Relevant. ........................... 5

        B.      Information Pre-Dating the Limitations Period Is Not Proportional. ..................... 8

II.     Geographic Scope ............................................................................................................. 9

III.    Product Scope ................................................................................................................. 11

CONCLUSION ................................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*City of Toledo v. Sherwin-Williams Co.*,
  2007 WL 4965044 (Ohio Comm. Pl. Dec. 12, 2007) ................................................................ 6

*Crystal Lakes v. Bath & Body Works, LLC*,
  2018 WL 533915 (E.D. Cal. Jan. 23, 2018) ............................................................................. 3

*Hager v. Waste Techs. Indus.*,
  2002 WL 1483913 (Ohio Ct. App. 2002) ................................................................................ 7

*Hochstein v. Microsoft Corp.*,
  730 F. Supp. 2d 714 (E.D. Mich. 2010),
  *aff'd* 430 F. App'x 898 (Fed. Cir. 2011) .................................................................................. 3

*Invacare Corp. v. Respironics, Inc.*,
  2006 WL 2038647 (N.D. Ohio Feb. 28, 2006) ........................................................................ 5

*Little Miami R.R. Co. v. Comm'rs of Greene Cty.*,
  31 Ohio St. 338 (1877) ............................................................................................................ 6

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ............................................................................................................ 5, 7

*Owens v. Sprint/United Mgmt. Co.*,
  221 F.R.D. 649 (D. Kan. 2004) ............................................................................................... 9

*Pope v. Ohio Dept. of Trans.*,
  698 N.E.2d 536 (Ohio Ct. Cl. 1998) ....................................................................................... 7

*Thornton v. State Farm Mut. Auto Ins. Co.*,
  2006 WL 3499986 (N.D. Ohio Dec. 5, 2006) ......................................................................... 9

*Waters v. Drake*,
  222 F. Supp. 3d 582 (S.D. Ohio 2016) .............................................................................. 3, 11

**Statutes**

21 U.S.C. 828(a) ......................................................................................................................... 12

OHIO REV. CODE § 2305.09(D) ..................................................................................................... 6

OHIO REV. CODE § 2305.10 ........................................................................................................... 5

OHIO REV. CODE § 2307.71(A)(13) ........................................................................................... 5, 6

**Rules**

Fed. R. Civ. P. 26(b) ................................................................................................... 3, 5, 11

Fed. R. Civ. P. 53(f) ......................................................................................................... 1, 3

**Regulations**

21 C.F.R. § 1301.72 ............................................................................................................ 12

## INTRODUCTION

CVS Indiana, L.L.C.; CVS Rx Services, Inc.; Discount Drug Mart, Inc.; Rite Aid of Maryland, Inc.; Walgreen Co., Walgreen Eastern Co., Inc.; and Walmart Inc. (the "Pharmacies") seek relief from Discovery Rulings No. 2 (ECF No. 693) and No. 3 (ECF No. 762) (the "Rulings") under Federal Rule of Civil Procedure Rule 53(f).

The Rulings dramatically expanded discovery without giving *any* consideration to the following facts unique to the Pharmacies:

- Some of the Pharmacies stopped distributing any relevant prescription opioid nearly four years ago and, in any event, the claims against the Pharmacies are subject to a shorter statute of limitations than the claims against the other defendants, meaning a shorter relevant timeframe for discovery.

- The Pharmacy claims relate to distribution of Schedule II opioids, but some Pharmacies never distributed Schedule II drugs, others distributed a tiny percentage of the opioids included in all nine years of ARCOS data, and all of the Pharmacies only ever distributed to their own stores.

- The Pharmacies were added to the Track One cases months after most other defendants, and none of them has made extensive (if any) prior productions relating to their distribution activity. The Pharmacies have had to start the discovery process from scratch.

In light of these facts, the massive scope of discovery allowed by the Rulings is not remotely proportional to the needs of these cases. The Rulings impose a burden on the Pharmacies that significantly outweighs any likely benefit to Plaintiffs. The Pharmacies therefore request that the Court overrule the Rulings as to them, and limit the scope of discovery directed to the Pharmacies to materials related to the distribution of Schedule II opioids in Ohio, between April 26, 2015, and the present.[1]

---

[1] The Pharmacies consistently have taken the position in their discovery responses that the appropriate time period for discovery is from April 26, 2015, to the present. In its objections to Discovery Ruling No. 2, CVS proposed to add one year to reflect the longest possible statute of limitations, even though the shorter two-year statute is the applicable statute.

1

## BACKGROUND

Before issuing Discovery Ruling No. 2, Special Master David Cohen asked certain non-Pharmacy defendants to submit letter briefs on a variety of issues, including the proper timeframe, geographic scope, and range of products at issue in discovery *as to those defendants*. "The Special Master did not ask for position papers from the *pharmacy* defendants because 'their meet-and-confers with plaintiffs [were] ongoing.'" Discovery Ruling No. 3, at 7. Therefore, the Pharmacies did not submit briefs to the Special Master prior to Discovery Ruling No. 2. Despite this, Discovery Ruling No. 2 states that Special Master Cohen "expects the pharmacy defendants will adhere to the rulings set out above and will not bring a similar dispute to the undersigned unless there is very good cause for a different outcome." Discovery Ruling No. 2, at 12-13.

Several of the Pharmacies subsequently raised objections with the Special Master as to the application of Discovery Ruling No. 2 to them. *See* Exhibits 1-5, July 2, 2018 Letter from Eric Delinsky to David Cohen; July 2, 2018 Letter from Kelly Moore to David Cohen; July 2, 2018 Letter from Kaspar Stoffelmayr to David Cohen; July 2, 2018 Letter from Tina Tabacchi to David Cohen; July 6, 2018 Letter from Timothy Johnson to David Cohen.

In Discovery Ruling No. 3, Special Master Cohen summarily rejected the Pharmacies' arguments as to timeframe. Ruling No. 3 treats the Pharmacies exactly the same as it treats all other distributors with respect to the timeframe of discovery. It does not even acknowledge, much less address, the unique statute of limitations arguments the Pharmacies raised in their objections to Discovery Ruling No. 2 based on the claims asserted against them, which place them in a significantly different position than the other distributor defendants. Discovery Ruling No. 3 requires the Pharmacies (like the other distributors) to search for and produce

"transactional data" and Suspicious Order Reports going back twenty-two years, to 1996, and for all other discovery, back to 2006.  Discovery Ruling No. 3, at 4.

With respect to the geographic scope of discovery, Discovery Ruling No. 3 requires the Pharmacies to produce documents related to distribution monitoring, diversion, suspicious order reports, and regulatory activity, among other things, nationally, even if those documents have no connection whatsoever to distribution in Ohio.  *See id.* at 2.  With respect to the scope of relevant products, Ruling No. 3 allows discovery related to *all* Schedule II opioids, including during earlier periods of time when those products were listed as Schedule III drugs (e.g., hydrocodone combination products).  *See id.* at 6 n.2.

Finally, Discovery Ruling No. 3 purports to shorten the time for defendants to file objections to the Special Master's Rulings from the 21 days provided under Federal Rule of Civil Procedure 53(f) to a mere seven days.  *See* Discovery Ruling No. 3, at 9.

## ARGUMENT

It is axiomatic that the scope of discovery must be proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b); *Waters v. Drake*, 222 F. Supp. 3d 582, 606 (S.D. Ohio 2016) ("Amended Rule 26(b) brings an end to the days of nearly unlimited discovery and 'encourages judges to be more aggressive in identifying and discouraging discovery overuse'").  "Relevancy alone is, therefore, no longer sufficient to obtain discovery in the absence of proportionality." *Crystal Lakes v. Bath & Body Works, LLC*, 2018 WL 533915, *1 (E.D. Cal. Jan. 23, 2018).  The Court reviews the Special Master's conclusions *de novo*.  *See Hochstein v. Microsoft Corp.*, 730 F. Supp. 2d 714, 717 (E.D. Mich. 2010), *aff'd* 430 F. App'x 898 (Fed. Cir. 2011) ("The Court reviews de novo factual findings and legal conclusions of the Special Master to which a specific objection has been made.  *See* Fed. R. Civ. P. 53(f).").

In his Rulings, the Special Master acknowledged that the balancing of burden, relevance, and need "requires imposition of different, tailored cut-off dates for discovery of different categories of information from different defendants." Discovery Ruling No. 2, at 10. Nevertheless, his Rulings fail to apply that principle to the unique circumstances of the Pharmacies.

The claim against the Pharmacies in the Track One cases is that, when they engaged in distribution, they failed to adequately monitor for, detect, report, and stop "suspicious orders" placed by the Pharmacies' own retail locations, and thereby contributed to the opioids crisis in the Track One jurisdictions, Cuyahoga and Summit County, Ohio. Unlike the other distributor defendants, however, the Pharmacies were captive distributors: At most, they only ever distributed controlled substances to their own stores. The Pharmacies were therefore in a much different position than the other distributor defendants in terms of the obligation to know their customers, because they are (or were) their own (and only) customers.

None of the Pharmacies has ever distributed opioids to independent pharmacies or "pill mills." Moreover, CVS, Discount Drug Mart, and Rite-Aid have never distributed Schedule II opioids at all; and Walgreens stopped distributing opioids several years ago. None of the Pharmacies distributes Schedule II opioids today.

These unique circumstances require that the Pharmacies be treated differently with respect to the timeframe, geographic reach, and product scope of discovery, in order to ensure that discovery will be proportional to the needs of these cases.

### I. Temporal Scope

Whatever the merits of the Rulings regarding the temporal scope of discovery for the manufacturers and major distributors, they should not apply to the Pharmacies. The Pharmacies

4

are subject to a different—and shorter—statute of limitations than the other defendants, rendering older information irrelevant to any claim against them.

In Discovery Ruling No. 3, Special Master Cohen ignored the relevant statutes of limitations and how they interact with the discovery rules.  Discovery Ruling No. 2 did address the statute of limitations, although not with respect to the Pharmacies, whose input was not sought (and in fact was discouraged) prior to that Ruling.  Ruling No. 2 rejects the general proposition that "the cut-off date should be set by strict reference to statutes of limitations." Discovery Ruling No. 2, at 8-9.  Even if that is true, it is unheard of to measure the temporal scope of discovery without *any* reference to the applicable limitations periods, as the Rulings have done.

Long before the 2015 amendments to Rule 26, the Supreme Court held that "it is proper to deny discovery of matter that is relevant only . . . to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978); *see also Invacare Corp. v. Respironics, Inc.*, 2006 WL 2038647, *5 (N.D. Ohio Feb. 28, 2006) (denying motion to compel discovery outside the limitations period on the ground that it would "impos[e] a significant burden on the respondent not commensurate with any benefit").  Today, there can be no doubt that the permissible scope of discovery is limited to information that is both "***relevant* to any party's claim or defense *and proportional to the needs of the case***." Fed. R. Civ. P. 26(b)(1) (emphases added).

### A. Information Pre-Dating the Limitations Period Is Not Relevant.

All of Plaintiffs' claims against the Pharmacies arise under Ohio law.  The applicable limitations period under the Ohio Products Liability Act, which subsumes Plaintiffs' claims against the Pharmacies, is two years.  *See* OHIO REV. CODE § 2305.10; *e.g.*, *id*. § 2307.71(A)(13)

5

(defining "product liability claim" to include "any public nuisance claim or cause of action at common law in which it is alleged that the . . . supply, marketing, distribution . . . or sale of a product unreasonably interferes with a right common to the general public"). That period is shorter than the limitations period applicable to the other major distributors, against whom Plaintiffs have alleged different, additional claims.

Even if Plaintiffs' claims somehow survive the Ohio Product Liability Act, as they assert, the claims would still be subject to a limitations period of no greater than four years. *See id*. § 2305.09(D). But the Rulings would allow discovery going back decades before even that lengthier period.

Discovery Ruling No. 2 refers generally to the possibility of "tolling," relying on a 140-year-old nuisance case involving an asserted adverse possession of a public highway. *See* Discovery Ruling No. 2, at 9 (citing *Little Miami R.R. Co. v. Comm'rs of Greene Cty.*, 31 Ohio St. 338, 349 (1877)). But such tolling could have no application to the claims against the Pharmacies. The plain text of the Ohio Product Liability Act abrogates public nuisance claims involving the distribution of a product, such as Plaintiffs' claims here. *See* OHIO REV. CODE § 2307.71(A)(13); *City of Toledo v. Sherwin-Williams Co.*, 2007 WL 4965044 (Ohio Comm. Pl. Dec. 12, 2007). But even if *Little Miami* were still relevant to certain of Plaintiffs' claims, tolling could apply only in the case of an ***ongoing*** nuisance. *See Little Miami*, 31 Ohio St. at 350-51; Pls. Omnibus Mem. in Opp. to Mots. to Dismiss (ECF No. 654), at 126-27 ("Pls. Omnibus Mem.") (acknowledging that the limitations period for a continuing tort "generally runs from the date of the last tortious act" and that "to apply the continuing tort exception, there must be . . . a continuing course of misconduct"). Since the Pharmacies (unlike other defendants) no

6

longer distribute Schedule II opioids—and in some cases never did—the Special Master's tolling argument could not apply to them.

Moreover, even if an ongoing nuisance were established, a plaintiff can recover only for injuries sustained within the limitations period, regardless of whether its injuries began earlier. *See Pope v. Ohio Dept. of Trans.*, 698 N.E.2d 536, 538 (Ohio Ct. Cl. 1998); *Hager v. Waste Techs. Indus.*, 2002 WL 1483913, *3 at ¶ 29 (Ohio Ct. App. 2002).

What Plaintiffs will have to show, then, is that the Pharmacies improperly shipped suspicious orders (which then contributed to the opioids crisis in their regions) during the two-year period between April 26, 2016, and April 25, 2018, when Plaintiffs sued four of the Pharmacies,[2] or, at most, during the four-year period going back to April 26, 2014.

Plaintiffs have said repeatedly in other contexts, when attempting to avoid discovery, that they intend to prove their cases entirely with statistical evidence, in which case they would need no information from the Pharmacies. *See* Ex. 6, June 5, 2018 Letter from Paul Hanly to David Cohen at 19. But even assuming that Plaintiffs are entitled to discovery from the Pharmacies about suspicious-order monitoring and related policies and procedures during the limitations period, discovery into what the Pharmacies were doing five or ten or twenty-two years earlier will have no bearing on Plaintiffs' actual claims related to conduct during the limitations period.

Nor have Plaintiffs ever sufficiently explained how discovery predating the limitations period could be "otherwise relevant to issues in the case" against the Pharmacies. *Oppenheimer Fund*, 437 U.S. at 352. In this regard, the ***only*** argument Plaintiffs have made is that they need distribution data going back to the mid-1990s to establish a "baseline" for later data. This is

---

[2] Discount Drug Mart was not served with a complaint in any of the Track One cases until June 4, 2018.

7

nonsensical.  It is a matter of public record that the production (and thus distribution) of prescription opioid medications has increased over time as the DEA has raised production quotas, and treatment guidelines and physicians' prescribing practices have changed.  Information about shipments that any given Pharmacy's distribution center made to any one of its own retail stores 20+ years ago simply cannot inform a claim that the Pharmacy improperly shipped suspicious orders of opioids within the past two years, or even within the past four years.  Quite the opposite, the potentially relevant "baseline" for considering whether an order is out of the ordinary would be other orders placed by similarly situated stores *at the same time*.

### B. Information Pre-Dating the Limitations Period Is Not Proportional.

In addition, the extraordinary burden of discovery going back more than two decades—where more than 90% of that timeframe falls outside the limitations period—is patently out of proportion to the needs of this case.  Unlike many of the other defendants, the Pharmacies were not added to these cases before April 25, 2018, and did not receive discovery requests until late May or early June.[3]  Many of the other defendants were served with discovery before the Pharmacies were even added to these cases.  In addition, many of those other defendants have produced large amounts of discovery in other cases involving the marketing and distribution of opioids, and that prior discovery has given them a significant leg up on the discovery in these cases.  The same cannot be said of the Pharmacies, which started discovery in the Track One cases from scratch.  The burden of producing decades of discovery under such a compressed schedule is therefore uniquely onerous to the Pharmacies.

Meanwhile, the benefit to Plaintiffs of such extensive discovery would necessarily be *de minimis*, because the Pharmacies' potential contribution to the injuries for which Plaintiffs seek

---

[3] Discount Drug Mart was not added to the Track One cases until early June and did not receive discovery requests until several weeks later.

recovery is minimal.  Again, Plaintiffs' claims against the Pharmacies relate to the Pharmacies' *distribution* of opioids, not their retail dispensing of those drugs.  *See, e.g.*, Pls. Omnibus Mem., at 75 n.47 (explaining that Plaintiffs "do not allege violations of statutes or regulations applicable specifically to retailers who sell opioids," and that claims against the Pharmacies are based on the "requirements under the CSA and Ohio law applicable to distributors").  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Walgreens stopped distributing *all* Schedule II opioids into Ohio in 2014.  CVS, Discount Drug Mart, and Rite-Aid have *never* distributed Schedule II opioids, and stopped distributing hydrocodone combination products in October 2014, when they were reclassified from Schedule III to Schedule II.

There is no justification for allowing discovery to date back twenty years before the start of the relevant limitations period.

## II. Geographic Scope

In addition to limiting the timeframe of discovery in accordance with the statute of limitations, the requirement that discovery be "proportional" to the needs of the case means that discovery must be appropriate in its geographic scope.  Courts usually "limit the geographic scope of the [discovery] request" to materials "within the relevant geographic region."  *Thornton v. State Farm Mut. Auto Ins. Co.*, 2006 WL 3499986, *3 (N.D. Ohio Dec. 5, 2006).  In other words, courts should "limi[t] the geographic scope of discovery" to the region that is "the source of the complained[-of]" injury.  *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 653 (D. Kan. 2004).

9

In this case, the "source" of the complained-of injury lies entirely within Summit and Cuyahoga Counties. As the Special Master explained, the "plaintiffs in the Track One cases are all located in the Northern District of Ohio." Discovery Ruling No. 2, at 3. As a result, "proportional" discovery would focus on the jurisdictions of those plaintiffs. It would encompass documents that were used within those jurisdictions. It would also encompass documents that were used throughout the entire country—and thus were necessarily used within the Track One jurisdictions. But it would go no further.

The Special Master, however, went much further. He ordered the defendants, as part of "Category One Discovery," to "produce *on a national basis* all documents related to marketing and promotion, brand planning, and strategy, sales training and sales bulletins, prescriber educational materials, distribution monitoring, advocacy groups, speakers bureau programs, continuing medical education, diversion, suspicious order reports, adverse event reports, and regulatory activity." *Id.* at 4 (emphasis added); *accord* Discovery Ruling No. 3, at 4 ("The national scope for Category One Discovery is unchanged").

These Rulings violate the requirement that discovery must be "proportional" to the needs of the case. They contemplate production of nationwide materials pertinent to expansive subject areas—like "diversion" and "regulatory activity"—even if those materials have no connection or application to the Track One jurisdictions.

This broad geographic scope imposes severe burdens on the Pharmacies. At the same time, it yields little benefit: Documents regarding distribution monitoring in Los Angeles, diversion in Seattle, suspicious orders from Miami, or regulatory activity in Boston will not help Plaintiffs prove their claims regarding the Pharmacies' distribution of opioids to their own stores

10

in Ohio. The Rulings on geographic scope are wholly disproportionate to the needs of the case, "especially in light of the Court's tight trial schedule." Discovery Ruling No. 3, at 4.

### III. Product Scope

Discovery Rulings 2 and 3 also extend the scope of discovery to encompass all Schedule II opioid products, including when such drugs were listed on Schedule III. *See* Discovery Ruling No. 2, at 3; Discovery Ruling No. 3, at 6 n. 2. Plaintiffs' theory of liability as to the Pharmacies is that they improperly distributed "opioids classified as Schedule II drugs by the DEA" that "were known to be highly dangerous" (Pls. Omnibus Mem., at 72). Thus, discovery related to these drugs when they appeared on Schedule III is irrelevant. The burden of collecting, reviewing, and producing such discovery would significantly outweigh any benefit, particularly given the severely condensed discovery schedule. This discovery is not proportional to the needs of the case, as required by Rule 26(b). *See Waters*, 222 F. Supp. 3d at 605.

For example, with respect to hydrocodone combination products, which have only appeared on Schedule II since October 2014, the Rulings would require production of materials stretching back more than two decades during which the products did not appear on Schedule II. For all of that time, hydrocodone combination products were classified as Schedule III drugs precisely because the federal government did not consider them to be highly dangerous. In fact, in March 2008, the Department of Health and Human Services recommended to the DEA that such products remain classified as Schedule III, based on the FDA's assessments, as well as the concurrence of the National Institute on Drug Abuse/National Institutes of Health, that they had less potential for abuse than Schedule II drugs.

The Special Master has acknowledged that Schedule III drugs have "a lower potential for abuse than substances in Schedule II." Discovery Ruling No. 2, at 3. Accordingly, federal law imposes different requirements on distributors with respect to Schedule II drugs—such as

11

hydromorphone, oxycodone, fentanyl and morphine—than it does to Schedule III drugs. In particular, the Controlled Substances Act prohibits distribution of Schedule II controlled substances except in response to a written order from the purchaser on a form DEA issues (Form 222) or an electronic equivalent. *See* 21 U.S.C. 828(a). No such requirement applies to Schedule III products. Similarly, Schedule II controlled substances are subject to strict storage requirements that do not apply to Schedule III controlled substances. *See* 21 C.F.R. § 1301.72.

These significant differences in the obligations imposed on distributors with respect to Schedule II controlled substances are reflected in the Pharmacies' historic business practices. For example, Walmart distributed all Schedule II controlled substances out of one distribution center with its own set of policies and procedures, but it distributed Schedule III controlled substances separately out of multiple different distribution centers. Expansion of the scope of discovery to include Schedule III hydrocodone combination products would significantly increase Walmart's burden of searching for and producing relevant documents with limited-to-no benefit to plaintiffs. Rite Aid, CVS and Drug Mart never distributed Schedule II products. Most of the Pharmacies terminated distribution of hydrocodone combination products when they were reclassified as Schedule II in October 2014, making it especially burdensome to reconstruct and locate information concerning historical distribution of these products.

## CONCLUSION

The Court should limit discovery of the Pharmacies so that the burden imposed on them is proportional to the claims asserted against them. Such discovery should be restricted to Schedule II opioids, to the period from April 26, 2015 to April 25, 2018—a full year beyond the relevant limitations period—and to the specific jurisdictions at issue in the Track One cases.

Dated:  July 24, 2018	Respectfully submitted,


    /s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Ste. 300
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlit-beck.com
kate.swift@bartlit-beck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co., Inc.*


    /s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Ste. 1000
Washington, DC  20036
(202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Indiana, L.L.C. and CVS Rx Services, Inc.*


    /s/ Timothy D. Johnson (with consent)
Timothy D. Johnson
CAVITCH, FAMILO & DURKIN CO., L.P.
1300 East Ninth Street, 20th Floor
Cleveland, OH 44114
(216) 621-7860
tjohnson@cavitch.com

*Counsel for Discount Drug Mart, Inc.*


    /s/ Elisa P. McEnroe (with consent)
Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP

13

1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5917
elisa.mcenroe@morganlewis.com

Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
(212) 309-6612
kelly.moore@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc.*


/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

14

## CERTIFICATE OF SERVICE

I hereby certify that, this 24th day of July, 2018, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreen Co. and Walgreen Eastern Co., Inc.*