# EXHIBIT 9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

MDL No. 2804
Case No. 17-md-2804
Judge Dan Aaron Polster

### DECLARATION OF ANDREW J. O'CONNOR

1. My name is Andrew J. O'Connor. I am an attorney at Ropes & Gray LLP with an office located at Prudential Tower, 800 Boylston Street, Boston, MA 02199.

2. I represent Mallinckrodt LLC ("Mallinckrodt") in the above-entitled litigation.

3. I submit this declaration in support of the Manufacturer Defendants' Joint Objection to Discovery Rulings No. 2 and 3 (together, the "Discovery Rulings"). The statements herein are based on my personal knowledge, review of the information described herein, or on information provided by Mallinckrodt employees and Ropes & Gray personnel.

4. To date, Mallinckrodt has produced over 900,000 pages of documents and data in response to discovery requests in the Track One cases. Mallinckrodt currently anticipates producing over 27,000 additional pages by the end of this week as part of its intensive rolling production efforts. Mallinckrodt's productions thus far have included the following:

- branded marketing materials;
- unbranded marketing materials;
- sales force training materials;
- visual aids and other sales materials used by sales representatives;
- documents related to product launches;
- talking points for sales representatives;

- marketing strategy plans;
- call logs that include calls to prescribers in the Track One jurisdictions and nationally;
- internal and external communications with sales and marketing leadership regarding opioid products;
- communications with marketing vendors;
- continuing medical education materials;
- published studies;
- scientific research;
- regulatory files for Mallinckrodt's branded and generic opioid products including New Drug Application files for Exalgo and Xartemis;
- communications with FDA;
- communications with DEA;
- IMS prescriber-level data;
- documents reflecting marketing budgets;
- communications with distributor customers;
- policies and procedures for Mallinckrodt's suspicious order monitoring program;
- suspicious order reports;
- diligence files on distributors and pharmacies;
- and others.

5. Mallinckrodt has devoted enormous resources to locate, process, review, and produce these documents.

6. Mallinckrodt has identified thirty document and data custodians, including fifteen individual custodians, that it submits are appropriate targeted sources of information responsive to the Track One Plaintiffs' document requests. It is also collecting and, in many instances has already produced, additional custodial and noncustodial data in response to particular document requests and the court's directives, including for example, prior productions and IMS and transactional data.

7. Mallinckrodt has agreed to prioritize production of custodial files for certain individuals whose depositions have been requested, *see* July 10 Letter from Linda Singer and July 13 Letter from Rocky Tsai in response, and has similarly agreed to locate and prioritize certain types of documents according to specific requests made by Plaintiffs' counsel.

8. Plaintiffs, however, continue to demand more custodians and more search terms and more depositions seriatim. For example, Plaintiffs have proposed exceptionally broad search term lists that include literally thousands of terms. Even under Mallinckrodt's proposed search terms and custodians, it is undertaking a review of hundreds of thousands of documents. If Plaintiffs' proposals were adopted, Mallinckrodt expects that may result in many millions of additional documents for review.

9. The burdens of Plaintiffs' overbroad discovery are especially challenging for Mallinckrodt because its branded opioid sales and marketing group no longer exists, and has not existed for several years. The significant employee turnover that accompanied the dismantling of this business has made it incredibly time-consuming to locate potentially relevant document repositories. In its ongoing search, Mallinckrodt has had to reach out to former employees and independent third party vendors that worked with the branded opioid business when it existed.

10. Discovery Ruling No. 2 greatly expanded the scope of discovery with respect to Mallinckrodt, in particular by ordering that:

> "Defendants shall produce discovery related to all opioid products that are or ever were classified as Schedule II under the Controlled Substances Act. This includes branded, unbranded, and generic drugs"; and

"the manufacturer defendants shall produce Category One Discovery and Category Two Discovery with a cut-off date of one year prior to the launch date of the opioid product in question."

11. Discovery Ruling No. 2 makes it nearly impossible for Mallinckrodt to complete document discovery by August 31, 2018 given the parameters on which Plaintiffs have insisted. Special Master Cohen's Discovery Ruling No. 3 provides some marginal relief relating to geographic scope, but leaves the product and temporal scope of Discovery Ruling No. 2 unchanged.

12. Mallinckrodt began manufacturing and selling generic opioid products in the mid-1990s. Discovery Ruling No. 2, combined with the sheer breadth of Plaintiffs Requests for Production, exponentially increases the number of documents that Mallinckrodt must locate, collect, review, and produce. To comply, Mallinckrodt will need to both seek out new data sources and return to known data sources that have already been subject to an earlier collection.

13. For example, Mallinckrodt previously undertook a time-consuming and complicated collection of transactional data using significant IT resources. Mallinckrodt collected a decade's worth of transactional data back to 2007, adding a three-year buffer onto the time period during which it promoted branded products about which there are allegations in the Track One Complaints. Due to the Discovery Rulings, Mallinckrodt must perform a second time-consuming data extraction to collect an additional decade's worth of transactional data—potentially archived in various separate systems—back to 1996, at great cost to Mallinckrodt.

14. In addition, custodial collections must be supplemented with additional date ranges under the Discovery Rulings. The expanded temporal scope of discovery exacerbates the

challenges related to employee turnover that already make the collections process difficult. Returning to the source of a prior custodial collection in order to collect documents for additional years may not always even be possible.

15. Mallinckrodt is investigating new document sources to address the expanded product and temporal scope of discovery, as well. Many of the new sources present serious logistical or physical challenges, as older materials are less likely to be readily accessible, and are much more likely to be in hard copy only. Due to the wide-ranging nature of Plaintiffs requests – touching marketing, sales, medical affairs, finance, regulatory, compliance, and other departments at Mallinckrodt – collection, let alone review and production, of documents related to opioid products over the course of two decades is a massive and costly undertaking.

16. The Discovery Rulings also compound collection challenges created by Mallinckrodt's corporate history. While Mallinckrodt has existed for 150 years, it has had an active transactional history and thus a series of different organizational, business structure, and record-keeping systems.

17. Mallinckrodt must now turn to documents in storage facilities like Iron Mountain, for example, which presents a host of challenges that are virtually insurmountable in the compressed discovery schedule. Cataloguing and record-keeping related to off-site document storage varies considerably across time and across business units, making the identification and location of relevant materials time-consuming and costly. Once documents are located, review and scanning of paper documents is an enormous project, especially given the incredible breadth of Plaintiffs Requests for Production.

18. Mallinckrodt is working diligently to overcome the obstacles discussed above to locate, collect, review, and produce relevant documents. But the expansive scope of discovery contemplated by Discovery Ruling No. 2, coupled with the extreme over-breadth of Plaintiffs' Requests for Production, is incredibly burdensome for Mallinckrodt and will likely take many months or more to complete.

I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
Andrew J. O'Connor

Executed on July 24, 2018