# EXHIBIT 10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**This document relates to:**<br><br>*The County of Summit, Ohio, et al., v. Purdue Pharma L.P., et al.,* Case No. 18-OP-45090 (N.D. Ohio)<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.,* Case No. 17-OP-45004 (N.D. Ohio); and<br><br>*City of Cleveland v. AmerisourceBergen Drug Corp., et al.,* Case No. 18-OP-45132 (N.D. Ohio). | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## DECLARATION OF THOMAS E. SANCHEZ

1. My name is Thomas E. Sanchez. I am an associate attorney at Morgan, Lewis & Bockius LLP and practice out of the firm's Pittsburgh office.

2. I submit this Declaration in connection with the document collection, review, and production efforts of Defendants Cephalon, Inc., Teva Pharmaceuticals USA, Inc., and Actavis, LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., and Watson Laboratories, Inc. (the "Acquired Actavis Entities") (collectively, the "Teva Defendants") in the above-captioned action. The statements herein are based on my personal knowledge as of the date of this Declaration or based on my review of documents currently available and information provided to me during discussions with employees of the Teva Defendants, Teva's e-discovery vendor, and the attorneys reviewing the documents collected in this action.

3. The Teva Defendants have made seven document productions in this action. To date, they have produced more than 64,500 documents, including more than 850,000 pages.

DB1/ 98678881.1

Additionally, the Teva Defendants are preparing to make a substantial additional production of emails of custodians who have been identified as "priority" fact witness by Plaintiffs (as well as emails of other custodians), during the week of July 23, and subsequent productions on a rolling basis thereafter.

4. In connection with the collection and production of email data in this action, the Teva Defendants initially proposed 10 custodians whose documents would be collected and reviewed. Plaintiffs insisted that 10 custodians were insufficient.

5. Although Plaintiffs initially refused to suggest additional custodians, the Teva Defendants subsequently proposed an additional 10 custodians in the spirit of compromise and in an effort to move forward with discovery. Plaintiffs then proposed an additional 11 custodians. Again, to reach compromise and proceed expeditiously, the Teva Defendants agreed to the additional custodians. The Teva Defendants began collection and review of the custodial email, dating back to 2004.

6. Nevertheless, subsequent to the parties' agreement on the 31 custodians, Plaintiffs proposed three additional custodians. Again, despite the burden and in an effort to compromise and reach a quick resolution, the Teva Defendants agreed to the additional three custodians.

7. Of the custodians the Teva Defendants or Plaintiffs identified, Plaintiffs have requested six "priority" fact witness depositions, in addition to the Rule 30(b)(6) deposition they have requested. Thus, Plaintiffs have requested and the Teva Defendants have agreed to prioritize the review and production of these witnesses' custodial files (even though certain of them were not part of the original 31 agreed-upon custodians and, thus, their data was not collected until recently).

8. The Teva Defendants initially proposed a set of search terms to apply to the custodian email review. The Teva Defendants repeatedly sought Plaintiffs' comments or agreement, but Plaintiffs remained silent for weeks. Consequently, the Teva Defendants began review of the custodial email, using the Teva Defendants' search terms.

9. Finally, after nearly one month, Plaintiffs offered their own list of search terms. Plaintiffs' list was 15 pages long, reflecting 245 separate, complicated search strings.

10. When the Teva Defendants applied Plaintiffs' search terms to the data collected only from the 10 initially-proposed custodians (applying a limited date range), it returned a substantial number of hits, totaling 831,392 total hits (with families).

11. Thus, the Teva Defendants proceeded with review of the custodial email with Plaintiffs' search terms applied, with the exception of 24 impracticable search strings. The Teva Defendants advised Plaintiffs that these specific search terms were not practicable because they were returning an unreasonable number of hits, and invited Plaintiffs to modify those strings.

12. In Discovery Ruling No. 2, Special Master Cohen ruled that the Manufacturer Defendants, including the Teva Defendants, must "produce discovery related to all opioid products that are or ever were classified as Schedule II under the Controlled Substances Act" and must "produce Category One Discovery and Category Two Discovery with a cut-off date of one year prior to the launch date of the opioid product in question" as well as "transactional data (which is otherwise in Category Two) and Suspicious Order Reports (which is otherwise in Category One) with a cut-off date of January 1, 1996."

13. Further, in Discovery Ruling No. 3, Special Master Cohen clarified that all Defendants, including the Teva Defendants, must produce documents "related to Schedule II drugs during earlier periods of time when they were listed as Schedule III drugs (e.g. hydrocodone

combination products). With respect to the Teva Defendants, this ruling implicates approximately 150 products, despite the fact that only two products – Actiq and Fentora – are the focus of Plaintiffs' allegations.

14. These rulings impose a heavy burden on the Teva Defendants and make the prospect of the Teva Defendants completing discovery by August 31, 2018 likely impossible. Discovery Ruling Nos. 2 and 3 would substantially increase the Teva Defendants' costs, expenditure of resources, and burdens.

15. As of July 23, the Teva Defendants have reviewed approximately 200,000 emails (in addition to hundreds of thousands of other documents) and, on July 17, began reviewing approximately 450,000 custodial emails for the six priority fact witnesses (three of whom were only recently requested by Plaintiffs to be added as custodians), but the processing of this and the other voluminous custodial data collected by the Teva Defendants prevented all of the emails from being available for review until later in the week. Specifically, for the six priority custodians alone, the Teva Defendants collected 141 gigabytes in PST containers. After ingestion into the processing database, the PST containers expanded to 234 gigabytes (totaling 857,966 documents). After applying search terms and running analysis for email threading and suppression, the document count decreased to approximately 450,000 documents. Although the Teva Defendants had intended to produce responsive documents of these custodians on or around July 24, as Plaintiffs requested, they will not be in position to do so due to the time it took to process the data. The Teva Defendants intend to make a production of email data of these and other custodians during the week of July 23 (estimated to include more than 30,000 documents), to be followed by a production of additional email custodial data during the next week.

16. In conjunction with and following the completion of the review of the custodial emails of the six priority fact witnesses, the Teva Defendants' review team will review the emails of the other agreed-upon custodians. In an effort to expedite the review and production of these emails, the Teva Defendants have assigned over 200 lawyers solely to review these documents nearly around the clock and at significant cost.

17. The Teva Defendants have so far collected over 750 gigabytes of email data for 32 of the 34 custodians and are expending resources trying to locate and collect the custodial data of two other custodians. The Teva Defendants estimate that a review of this data, even with applying a 2006 date limitation and a limited set of Plaintiffs' search terms, will encompass approximately 2.1 million documents. Were the review to be expanded to include emails pre-dating 2006, the Teva Defendants estimate that well over three million documents will need to be reviewed.[1] In order to complete a first-level review, quality check the responsive documents, and process them for production by the end of August, the Teva Defendants likely would need to more than triple the number of attorney reviewers from 200 to over 600. The efforts associated with this incredibly expansive and time-intensive review and production could cause the Teva Defendants to incur well over $5.0 million in costs solely in connection with the expedited review of the documents.

18. The custodial file document review is in addition to the significant burden the Teva Defendants have undertaken to collect, review and produce non-custodial data Plaintiffs have requested. The Teva Defendants have diligently been collecting, reviewing, and producing substantial volumes of non-custodial documents and are in the process of locating and processing additional documents produced in prior litigations. For example, on July 20, the Teva Defendants made a production of approximately 22,500 documents, comprised primarily of documents

---

[1] The exact number is not known because the Teva Defendants still are in process of collecting pre-2006 emails for certain of the custodians.

previously produced in other relevant matters. Further, the Teva Defendants have collected approximately 330,000 non-email documents and will continue to collect and review additional non-email documents.

19. Given the age of these prior productions, the Teva Defendants have devoted significant time and resources in connection with attempting to locate and process these documents. Specifically, the Teva Defendants have identified 26 prior productions, spanning approximately 14 years, and are investigating whether productions were made in more than 50 actions filed against the Acquired-Actavis Entities. Most of these prior productions, particularly pre-2010 productions, are from databases not currently under the control of the Teva Defendants, thereby significantly complicating the Teva Defendants' ability to locate and process these productions.

20. Notably, the Teva Defendants' re-productions of discovery from prior cases (and anticipated forthcoming re-productions of discovery from other prior cases) has included extensive and voluminous responsive materials, including for the expanded time period contemplated by Discovery Ruling Nos. 2 and 3. The Teva Defendants have been working diligently to locate and re-produce additional such documents and those documents should be sufficiently responsive to many of Plaintiffs' requests.

Dated: July 24, 2018

_____
Thomas E. Sanchez