# EXHIBIT 13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 Case No. 17-md-2804 Judge Dan Aaron Polster |
| This document relates to: | |
| Track 1 Cases | |

**DECLARATION OF RYAN GUILDS ON BEHALF OF ENDO PHARMACEUTICALS INC. AND ENDO HEALTH SOLUTIONS INC.**

1. I am counsel at the law firm of Arnold & Porter Kaye Scholer LLP (the "Firm"), which has been retained to represent Endo Pharmaceuticals Inc. and Endo Health Solutions Inc. (collectively, "Endo") in relation to this litigation.  I am over 18 years of age, and I make this declaration on behalf of Endo.

2. I am authorized to make this declaration on behalf of Endo.  I either have personal knowledge of the matters stated herein or have made reasonable inquiry regarding them and I am informed and believe that they are true and correct. Further, on information and belief, the projections, estimates, and statistics stated herein are accurate to the best of current knowledge and belief.

**Burden From Current Production Timelines and Efforts**

3. Endo is working diligently to meet the discovery obligations under the Court's scheduling order, which requires the completion of all fact discovery by August 31, 2018. Despite its diligent efforts, as discussed below, much additional work is necessary to meet the August 31, 2018 deadline, even without taking into account any additional documents that will need to be collected and reviewed as a result of Special Master Cohen's June 30, 2018 discovery ruling (the "June 30 Ruling").

4.  I am informed that Endo's productions in these matters to date include more than 500,000 documents and span well in excess of 1 million pages.  Further, consistent with its rolling production schedule, Endo anticipates producing approximately 85,000 additional documents within the next few days, and that production is likely to span hundreds of thousands of additional pages.  Endo further anticipates continuing to make substantial rolling productions of documents responsive to Plaintiffs' discovery requests on a weekly basis.

5.  I am also informed that in connection with these matters, Endo has agreed to collect and review the custodial files of 35 of its home office employees, as well as the custodial files of all of its regional directors and district managers who supervised the promotion of Opana ER in the Track One jurisdictions at any point in time.  In addition, Endo has agreed to collect and review for potential production information from 12 non-custodial data sources.  Without yet accounting for the custodial documents of its regional directors and district managers, whose files Endo is in the process of collecting, Endo has already agreed to review more than 1 million documents for information responsive to Plaintiffs' discovery requests in these matters.  Further, although Endo has agreed to add to its review documents hitting on a number of search terms proposed by Plaintiffs, Plaintiffs also continue to demand that Endo add more than 180 additional complex, multi-part search strings without providing any particularized basis for inclusion of those terms, to which Endo has objected.

6.  More than 150 attorneys are working on a full time basis in an effort to complete review and production of these materials.  This includes a team of contract attorneys retained specifically for these matters and a supervisory team of attorneys employed by my firm

who are overseeing and managing this large scale effort.  Moreover, I am informed that market conditions in the Washington D.C. market for contract attorneys have required Endo to spread this team over two sites, Washington D.C and Philadelphia.  Arnold & Porter does not have an office in Philadelphia, and accordingly this requires significant travel and offsite time for the Arnold & Porter attorneys supervising this process and cost to Endo.

7.  Endo's review team has already dedicated in excess of 16,000 attorney hours to review, at significant cost to Endo.  This review is in addition to the thousands of hours of attorney time and associated cost to Endo to review and produce hundreds of thousands of documents from other opioid-related matters that have now been reproduced to Plaintiffs here.  Despite Endo's diligent efforts, Endo still has a substantial amount of work remaining to complete the review and production of the documents it agreed to review prior to the June 30 Ruling.

8.  I am informed that 4,900 additional attorney hours is a conservative estimate of the hours it will take to complete the current scope of review of only those materials Endo has collected already.  This estimate does not account for time needed to finalize privilege determinations and prepare privilege logs or to address any unexpected issues that may arise in the ongoing review process.  Privilege logging and unexpected issues could substantially expand the number of hours necessary to complete the review.  This estimate also does not account for the additional review of custodial documents from Endo' regional directors and district managers, the scope of which is not known until the ongoing collection of those custodians' files is complete.

9.  Thus, for the universe of documents already collected, a monumental task remains to complete Endo's document review and production on or before August 31, 2018.

### Anticipated Burden From the June 30 Ruling

10. The June 30 Ruling substantially expands the number of Endo medications subject to discovery. I am informed that simply by adding the additional names and molecules of its branded and generic Schedule II opioid medications, approximately 90,000 additional documents in Endo's existing collection would need to be reviewed for potential production by August 31.

11. I am also informed that this would require at least an additional 2,000 hours of attorney time simply to complete an initial review, without accounting for any quality check review or privilege review and logging.

12. Moreover, this additional review represents only one small piece of the work that the June 30 Ruling may necessitate.

13. Following the June 30 Ruling, Plaintiffs have demanded that Endo identify and collect from 12 additional *categories* of custodians. In addition to the time needed to investigate the identities of such additional custodians responsible for a number of opioid medications that are not the subject of any substantive allegations in these matters, I am informed that it is reasonable to estimate that each additional custodian could yield tens of thousands of additional documents for further review. On top of this, Plaintiffs also continue to demand that Endo add other custodians or custodian groups, such as unspecified members of Endo's legal department and every individual who has ever held any C-suite level position at Endo, to its review.

4

14. I am also advised that because of the temporal scope of discovery set by the June 30 Ruling investigating the sources and locations of potentially responsive materials will require many attorney hours and dedication of significant resources at Endo. Because the temporal scope now potentially reaches back to Endo's formation in 1997, and in light of substantial turnover at the company since that time, there are few, if any, current Endo employees knowledgeable about the identities of potentially pertinent custodians or other sources of information dating back that far. Additionally, assuming Endo is able to identify sources of information dating back to 1997, it is likely that such information is maintained in old systems no longer in use or in dated versions of current systems, which would make accessing that information difficult or impracticable.

15. I am also informed that it is likely, given the temporal scope, that certain responsive materials may largely be available in hard copy offsite files only. Once the location of potentially responsive hard copy files is determined, I am informed that the process of recalling those materials, confirming that they contain relevant information, scanning them, and processing them so they may be reviewed can take approximately 5 to 7 days for a request of about 10 boxes of material. In other words, even after the location of potentially responsive materials is known, the review team cannot begin its analysis of those materials for approximately one week for a document collection of that size. This timeline may be expanded if the volume of offsite materials is substantial.

16. To the extent additional collections required by the June 30 Ruling include electronic documents, the collection and processing of that data also requires dedicated resources and time before materials are available to Endo's review team. For example, since issuance of the June 30 Ruling, Endo has worked diligently to collect the FDA regulatory

5

submissions folders for its Schedule II opioids falling within the expanded product scope set by the Ruling. That process is ongoing and I am informed that it has required approximately 25 to 30 hours of dedicated Endo employee time thus far.

17. I am also informed that any additional collection of email files necessitated by the June 30 Ruling is work that must be performed to the exclusion of Endo employees ability to attend to necessary email collections for other ongoing litigations, investigations, and internal matters.

18. Finally, the June 30 Ruling potentially requires inclusion of all Schedule II generic opioids that have been sold by Endo's generics affiliates, Par Pharmaceutical Inc. and Par Pharmaceutical Companies, Inc. (collectively, "Par"), notwithstanding the absence of a single substantive allegation about Par in the Track One Complaints. The generics affiliates have also used a number of different systems and databases over time, some which have not been utilized since those entities were acquired by Endo. Investigation into legacy systems and databases would further complicate an already overly burdensome collection process. Based on similar investigation and collection efforts, and given that these products have never been a focus of discovery in these matters, I can attest that collection and production of information from Par about all Schedule II opioids for all subjects in the June 30 Ruling is unachievable by August 31.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on July 16, 2018 in Washington, D.C.

By: _Ryan Guilds (signature)_
Ryan Guilds

6