# EXHIBIT B

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PURDUE PHARMA L.P., PURDUE )<br>PHARMA INC., THE PURDUE )<br>FREDERICK COMPANY INC., and )<br>JANE DOES 1-10, )<br>)<br>)<br>Defendants. )<br>)<br>) | Case No. 3AN-17-09966CI |

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT (Case Motion #8)**

I.  **INTRODUCTION**

Defendants Purdue Pharma L.P., et al., move to dismiss State of Alaska's Complaint under Alaska Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.[1] After reviewing the memoranda of the parties and after oral argument on the issues, the court GRANTS IN PART the motion.

II. **BACKGROUND**

The State of Alaska ("the State") filed this action on its own behalf against drug manufacturer Purdue Pharma L.P., et al., ("Purdue") alleging the opioid epidemic and a

---

[1]  Defendant Rhodes Pharmaceuticals, L.P., was dismissed by Plaintiff without prejudice prior to answer.

public health crisis in Alaska was caused, in large measure, by a fraudulent and deceptive marketing campaign intended by Purdue to increase sales of its opioid products. The State alleges it has paid and will pay expenses for the medical care of Alaska's population due to overuse, addiction, injury, overdose, and death. The State seeks damages, injunctive relief, and civil penalties.[2]

The State's complaint asserts six claims: (1) violations of Alaska's Unfair Trade Practices and Consumer Protection Act (AS § 45.50.471 *et seq.*); (2) violations of Alaska's Medical Assistance False Claim and Reporting Act (AS § 09.58.010 *et seq.*); (3) public nuisance; (4) fraud, negligence, and negligent misrepresentation; (5) strict products liability for design defect and failure to warn; and (6) unjust enrichment.

Purdue moves to dismiss the complaint asserting seven grounds: (1) the State's claims are preempted by federal law; (2) the State's claims fail to adequately establish causation; (3) all claims must be dismissed, in part, as time-barred; (4) all claims fail because the State does not adequately plead fraud; (5) the State's allegation of failing to report suspicious orders does not state a claim; (6) the State does not allege a cognizable injury; and (7) other additional grounds.[3]

---

[2] The original complaint was filed under seal. Portions with confidential information have been redacted. The complaint is 85 pages long with 237 points.

[3] Purdue has attached 13 exhibits to its motion and two more to its reply. Purdue requests the court take judicial notice of the exhibits as they are publically available. The exhibits are FDA publications and prescription information sheets. No materials outside of the pleadings have been submitted by the parties.

## III. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted, filed pursuant to Alaska Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint's allegations.[4] Motions to dismiss under CR 12(b)(6) are viewed with disfavor.[5] In determining the sufficiency of the stated claim in a 12(b)(6) motion, it is enough that the complaint set forth allegations of fact consistent with some enforceable cause of action on any possible theory.[6]

In resolving the merits of such motions, the court considers only well pled allegations of the complaint, while ignoring unwarranted factual inferences and conclusions of law.[7] Generally, such a motion is determined solely on the pleadings; however, the court may consider public record, including court files from other proceedings.[8]

The court must construe the complaint in the light most favorable to the non-moving party and presume the pleading's allegations to be true.[9] The court can affirm

---

[4] *Dworkin v. First Nat. Bank of Fairbanks*, 444 P.2d 777, 779 (Alaska 1968).
[5] *State, Dep't of Health & Soc. Services, Div. of Family and Youth Serv. v. Native Village of Curyung*, 151 P.3d 388, 397 (Alaska 2006) (internal citations omitted).
[6] *Id.*
[7] *Dworkin* at 779.
[8] *Nizinski v. Currington*, 517 P.2d 754, 756 (Alaska 1974) (internal citation omitted).
[9] *Valdez Fisheries Development Ass'n, Inc. v. Alyeska Pipeline Service Co.*, 45 P.3d 657, 664 (Alaska 2002) (citing *Kollodge v. State*, 757 P.2d 1024, 1026 (Alaska 1998)).

dismissal for failure to state a claim only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle relief.[10]

## IV. DISCUSSION

### A. Specific Claims

#### 1. The Unfair Trade Practices and Consumer Protection Act

The Unfair Trade Practices and Consumer Protection Act ("UTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."[11] To establish a prima facie case of unfair or deceptive acts, the State must allege facts which if proven would establish: (1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred.[12]

Whether an act or practice is deceptive is determined simply by asking "whether it has the capacity to deceive."[13] The plaintiff need not prove that the defendant intended to deceive; it is enough to show that the acts and practices were "capable of being interpreted in a misleading way."[14] As a remedial statute intended to provide consumers more protection than its federal counterpart, Alaska's UTPA is applied broadly.[15]

---

[10] Id.
[11] AS § 45.50.471(a).
[12] Kenai Chrysler Center, Inc. v. Denison, 167 P.3d 1240, 1255 (Alaska 2007) (quoting State of Alaska v. O'Neill Inv., Inc., 609 P.2d 520 at 534-35 (Alaska 1980)).
[13] Id.
[14] Id.
[15] Id.

The State claims Purdue has violated the UTPA by engaging in deceptive trade practices through its marketing and advertising of opioids.[16] The State alleges Purdue:

> [M]isrepresents, even today, to Alaska doctors and patients the risk of opioid addiction. Specifically, Purdue affirmatively misrepresents that: (a) pain patients do not become addicted to opioids; (b) its long-acting opioids are steady-state and less addictive; (c) doctors can identify and manage the risk of addiction; (d) patients who seem addicted are merely 'pseudo-addicted,' and should be treated with more opioids; (e) opioid addiction is the product not of narcotic opioids, but problem patients and doctors; and (f) opioid abuse and addiction manifest in snorting and injecting the drugs, when oral abuse is far more common.[17]

Paragraph 162(a)-(i) of the complaint has alleged facts sufficient to establish a prima facie case of deceptive trade practices under the UTPA.

The State also claims Purdue violated the UTPA by engaging in unfair trade practices.[18] An act or practice can be unfair without being deceptive.[19] Unfairness is determined by a variety of factors, including: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise, whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers (or competitors or other businessmen).[20]

---

[16] Complaint ¶ 161; violations of §§ 45.50.471(b)(4), (7), (11), (12). It appears undisputed that Purdue is "engaged in trade or commerce."
[17] Id. at ¶ 45.
[18] Id. at ¶ 164; a violation of § 45.50.471(a).
[19] State v. O'Neill at 535.
[20] Id. (internal citation omitted).

The State alleges Purdue's promotion of addictive drugs was contrary to public policy in Alaska, was immoral and unethical, and caused substantial injury to consumers.[21] For example, the State cites the Governor's "Declaration on Disaster" due to a "public health disaster emergency" as evidence that Alaska policy and facts alleged in paragraph 164(a)-(i) are sufficient to establish a claim for unfair practices.

The State also alleges violations of the UTPA's prohibition of unfair methods of competition.[22] The State alleges Purdue has promoted "OxyContin as providing 12 hours of pain relief and promoted abuse deterrent formulations of its opioids as more difficult to abuse and less addictive as a means of maintaining a competitive advantage against other opioids."[23] The State also alleges Purdue promoted opioids as superior to other analgesics, such as NSAIDS, by exaggerating the risks of NSAIDS, and omitting the risks of opioids.[24]

The State has alleged facts sufficient to establish a claim for unfair methods of competition.

2. The Alaska Medical Assistance False Claim and Reporting Act.

The State's second cause of action raises an issue of first impression. The Alaska Medical Assistance False Claim and Reporting Act ("FCA") was enacted by the Alaska Legislature in 2016 as part of a package of Medicaid reform.[25] The effective date of the

---

[21] *Id.* at ¶ 164.
[22] *Id.* at ¶¶ 165 - 168.
[23] *Id.* at ¶ 165.
[24] *Id.*
[25] Senate Bill 74, SLA 2016, ch. 25, § 18, effective September 19, 2016. AS 09.58.010, *et seq.*

statute is September 19, 2016.[26] The Alaska FCA provides for civil penalties, in addition to criminal penalties, for filing false or fraudulent claims for medical services or products for reimbursement by the State's medical assistance programs.

Purdue raises a number of objections to the State's FCA cause of action, but one is dispositive. Purdue argues the claim must be dismissed as time-barred because a retroactive application of the statute is prohibited. While statute of limitations is usually pled as an affirmative defense, a complaint may be subject to dismissal under Rule 12(b)(6) when "an affirmative defense appears clearly on the face of the pleading."[27] The court will consider whether the statute of limitations subjects the cause of action to dismissal because the issue of retroactivity appears clearly on the face of the pleadings.

In Alaska, a statutory presumption is that "[n]o statute is retrospective unless expressly declared therein."[28] The Alaska Supreme Court has held that "[a]bsent clear language indicating legislative intent to the contrary, a law is presumed to operate prospectively only[.]"[29] The court will "presume that statutes only have prospective effect 'unless a contrary legislative intent appears by express terms or necessary implication.'"[30] There is neither an express statement nor a necessary implication in AS § 09.58.010 which would lead the court to automatically apply it retroactively.

---

[26] Id.
[27] *Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 152 (Alaska 1987) (internal citation omitted).
[28] AS § 01.10.090.
[29] *State, Dep't. of Rev. v. Alaska Pulp America, Inc.*, 674 P.2d 268, 272 (Alaska 1983) (internal citation omitted).
[30] *Thompson v. U.P.S.*, 975 P.2d 684, 688 (Alaska 1999) (quoting *Pan Alaska Trucking, Inc. v. Crouch*, 773 P.2d 947, 948 (Alaska 1989)).

The State argues for application of the FCA because the State alleges Purdue's conduct consists of an ongoing course of deceptive activities that began at least ten years ago, and continues today.[31] After review of the Complaint, the court cannot find specific allegations of conduct occurring after September 16, 2016.[32] Accordingly, the court finds the State's cause of action for violations of Alaska's FCA is time-barred. The State will be granted leave to amend, should it so wish, to allege violations occurring after the effective date of the statute.

3. Public Nuisance

The State's third claim for relief alleges Purdue has created a public nuisance.[33] The Alaska Supreme Court has indicated its agreement with federal common law defining a public nuisance as an unreasonable interference with a right common to the general public, such as a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience.[34]

---

[31] Plaintiff's *Amended Response in Opposition to Purdue Defendants' Motion to Dismiss Plaintiff's Complaint*, p. 27.
[32] Complaint at ¶ 186. The State cites data from 2013-2016.
[33] *Id.* at ¶ 192.
[34] *Friends of Willow Lake, Inc. v. State, Dept. of Transp. & Public Fac., et al.*, 280 P.3d 542, 548 (Alaska 2012) (quoting Restatement (Second) of Torts §821B(1) (1979) (defining public nuisance)). *See also, Taha v. State*, 366 P.3d 544, 547 (Alaska Ct App. 2016) (defining public nuisance according to Black's Law Dictionary (10th ed. 2014) as "[a]n unreasonable interference with a right common to the general public, such as a condition dangerous to health, offensive to community moral standards, or unlawfully obstructing the public in the free use of public property").

The State alleges Purdue's conduct, as described in the complaint, has "been a substantial factor" in creating a public health crisis and state of emergency in Alaska.[35] The State alleges opioid use, overuse, and addiction has injured the State by causing deaths,[36] overwhelming medical resources and emergency rooms,[37] increasing illegal activity and law enforcement activities,[38] increasing costs for medical care of infants born with neonatal abstinence syndrome and requiring foster treatment,[39] and incurring significant expenses in addiction treatment.[40]

The court finds the facts as alleged could reasonably be construed as demonstrating a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience and therefore an interference with a right common to the general public.

The State has alleged facts sufficient to state a claim for public nuisance.

4. Fraud and Negligence/Negligent Misrepresentation

*a. Negligence*

The State has pled claims for strict products liability and negligence. Even if Purdue were found strictly liable for its products, Alaska permits a claim of negligence if

---

[35] Complaint at ¶ 196.
[36] Id. at ¶ 9.
[37] Id. at ¶ 10.
[38] Id. at ¶ 11.
[39] Id. at ¶¶ 13-14.
[40] Id. at ¶ 156.

a plaintiff shows that a defendant breached a duty owed to the plaintiff, and that the breach caused the plaintiff harm.[41]

The State argues Purdue had a duty to the State and its residents: (1) to exercise due care in the advertising, marketing, promotion, and sale of opioid drugs; (2) not to make false, misleading, or deceptive statements about opioids and treatment for chronic pain; and (3) to report suspicious prescribers.[42] The State alleges Purdue breached those duties through its misrepresentations, causing the State to pay not only for the opioids, but also costs to mitigate the public health crisis.[43]

The State alleges facts sufficient to support a claim of negligence.

### b. Fraud and Negligent Misrepresentation

The torts of fraud and negligent misrepresentation are similar in many ways. To prevail on a claim of fraud, a plaintiff must establish: (1) misrepresentation; (2) made fraudulently; (3) for the purpose of inducing another to act in reliance on it; (4) justifiable reliance by the recipient; and (5) causing loss.[44] A statement can be literally true and still be a fraudulent misrepresentation if the maker knows the statement is materially misleading.[45]

---

[41] *Cusack v. Abbott Lab. Inc., et al.*, 2017 WL 3688149 (D. Alaska 2017) (citing *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000)).
[42] Complaint at ¶¶ 204, 205, 206.
[43] *Id.* at ¶ 208.
[44] *Asher v. Alkan Shelter, LLC.*, 212 P.3d 772, 781 (Alaska 2011) (abrogated on other grounds, *Shaffer v. Bellows*, 260 P.3d 1064 (2011) (citing *Lightle v. State, Real Estate Comm'n*, 146 P.3d 980, 983 (Alaska 2006)).
[45] *Id.* (citing *Lightle* at 986).

A claim of negligent misrepresentation requires showing that: (1) defendant made the statement in the course of his business, profession or employment, or in any other transaction in which he had a pecuniary interest; (2) the representation supplied false information; (3) plaintiff justifiably relied on that false information; and (4) defendant failed to exercise reasonable care or competence in obtaining or communicating the information.[46] In both causes of action, the alleged misrepresentation must relate to a past or present fact "susceptible of exact knowledge" at the time it was made.[47]

The State alleges Purdue engaged in false representation and concealment of material facts about the use of opioids to treat chronic pain.[48] The State alleges Purdue knew "its statements about the risks and benefits of opioids to treat chronic pain were false or misleading," that Purdue intended to induce reliance among doctors, knowing doctors would rely on the misrepresentations, leading to damages caused by overuse of opioids.[49]

The State alleges facts sufficient to support a claim of fraud and negligent misrepresentation.

### 5. Strict Products Liability, Design Defect and Failure to Warn

In Alaska, "a manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a

---

[46] *Bubbell v. Wien Air Alaska, Inc.*, 682 P.2d 374, 380 (Alaska 1984) (quoting Restatement (Second) of Torts §552(1) 1977).
[47] *Cousineau v. Walker*, 613 P.2d 608, 611 n.4 (Alaska 1980).
[48] Complaint at ¶ 200.
[49] *Id.* at ¶¶ 201-214.

defect that causes injury to a human being."[50] The defect can be a manufacturing defect, a design defect, or a failure to provide adequate warnings.[51] The State alleges design defect and failure to warn.

Strict liability claims against manufacturers of prescription drugs for design defect and failure to warn are allowed in Alaska.[52] In *Shanks v. Upjohn*, the Alaska Supreme Court established "that a prescription drug is defectively designed and strict liability should be imposed on its manufacturer if the prescription drug failed to perform as safely as an ordinary doctor would expect, when used by the patient in an intended and reasonably foreseeable manner."[53] Regarding failure to warn, the Court found "the warnings should be sufficient to put the physician on notice of the nature and extent of any scientifically knowable risks or dangers inherent in the use of the drug."[54] Strict liability may also attach to the inadequacy of the directions or instructions for the safe use of the product.[55]

---

[50] *Shanks v. The Upjohn Co.*, 835 P.2d 1189, 1194 (Alaska 1992) (internal citation omitted).
[51] *Id.*
[52] *Id.* at 1198: "Alaska recognizes such claims and makes no exception for prescription drugs. Neither policy nor reason supports the approach taken by some courts in barring such claims."
[53] *Id.* at 1195. The Court noted that in some cases, the ordinary consumer standard may apply, instead of the ordinary doctor standard.
[54] *Id.* at 1200 (quoting *Polley v. Ciba-Geigy Corp.*, 658 F.Supp. 420 (D. Alaska 1987)).
[55] *Id.* (quoting *Gosewisch v. American Honda Motor Co.*, 737 P.2d 376 (1987)).

The State alleges Purdue's opioid products are defectively designed because they fail to perform as safely as an ordinary consumer would expect.[56] The State alleges Purdue's opioids failed to perform safely because they "carry a far greater risk and actual rate of addiction" than the public was led to believe, failed to provide "functional improvement" in patients, and OxyContin failed to provide the promised 12 hour relief.[57]

The State also alleges Purdue failed to "provide adequate warnings that clearly indicate the scope of the risk" and used "misrepresentations and omissions that contradicted and undermined its drug label."[58]

The State has alleged facts sufficient to state a claim for strict products liability.

6. Unjust Enrichment

In *Alaska Sales and Service v. Millet*, the Alaska Supreme Court explained unjust enrichment as follows:

> [a] person who has been unjustly enriched at the expense of another is required to make restitution to that person. A person is enriched if he receives a benefit; a person is unjustly enriched if the retention of the benefit without paying for it would be unjust.[59]

The Court then set forth three elements of unjust enrichment: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of such benefit; and (3)

---

[56] Complaint at ¶ 217. The State has used the consumer as the standard. However, the Court in *Shanks* uses the ordinary doctor standard. The Court did note that in some cases, the ordinary consumer standard might apply, instead of the ordinary doctor standard. See *Shanks*, fn7.
[57] Complaint at ¶ 217.
[58] Complaint at ¶¶ 218-219.
[59] 735 P.2d 745, 746 (Alaska 1987).

SOA v. Purdue Pharma, L.P.
Page 13 of 19

acceptance and retention by the defendant of such benefit under circumstances that it would be inequitable for the defendant to retain it without paying the value thereof.[60] Additionally, "[t]he courts are in accord in stressing that the most significant requirement for recovery in quasi-contract is that the enrichment to the defendant must be unjust; that is, the defendant must receive a true windfall or something for nothing."[61] Unjust enrichment is an equitable doctrine, which ordinarily falls within the court's broad discretion.[62] Whether there has been unjust enrichment is generally a question of fact.[63]

In the instant case, the State argues that Purdue has unjustly retained a benefit, in revenue, while the State absorbed the cost of healthcare, addiction, and illegal activity related to the opioid epidemic.[64]

The State has alleged facts sufficient to state a claim for unjust enrichment.

### B. Purdue's Objections

Purdue moved to dismiss the Complaint under CR 12(b)(6) on seven grounds, as outlined above in Section II. Because a Rule 12(b)(6) motion is only intended to

---

[60] Id.
[61] Id. (the Court uses the term quasi-contract, explaining "[c]ourts generally treat actions brought upon theories of unjust enrichment, quasi-contract, contracts implied in law, and quantum meruit as essentially the same.").
[62] Id. at 747.
[63] State, Dep't of Rev. Child Sup. Enfc't Div. v. Wetherelt, 931 P.2d 383, 390 fn. 11 (Alaska 1997).
[64] Complaint at ¶ 223.

test the sufficiency of a Complaint's allegations, not all of Purdue's arguments are properly considered at this stage of proceedings.[65]

As previously discussed, the court did consider Purdue's argument that the statute of limitations barred the State's cause of action for violations of the False Claims Act.[66]

The court will also consider Purdue's arguments relating to the applicability of Alaska Rule of Civil Procedure 9(b) as these relate directly to sufficiency of complaint.

Purdue argues for dismissal of all claims because the State does not adequately plead fraud. Because the State centers its claims around Purdue's alleged "deceptive and fraudulent" marketing, Purdue argues the State must plead all claims to the heightened standard of CR 9(b).

Rule 9(b) provides: "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be pled with particularity." This standard is not high.[67] The rule "simply requires a claim of fraud to specify the time and place where the fraud occurred; it seeks to prevent conclusory pleading by requiring a complaint to

---

[65] Though presented as grounds for failure to state a claim, Purdue's remaining arguments, specifically, Purdue's objections on the grounds of federal preemption, as well as objections to the State's method of proving injury, are premature. Purdue may properly renew their arguments in further motion practice.

[66] The court will not consider the statute of limitations regarding the State's UTPA claim, as it does not appear clearly on its face from the Complaint that the claim is time-barred. Purdue may raise it an affirmative defense or renew the argument by further motion practice.

[67] *Asher v. Alkan Shelter*, LLC, 212 P.3d 772, 778 (Alaska 2009).

do more than 'recit[e] without specificity that fraud existed.'"[68] The rule does not prevent plaintiffs from filing complaints based on available information and belief.[69]

The State's complaint meets the requirement of CR 9(b). It alleges Purdue knowingly misrepresented the efficacy, safety, and risk of its products, through marketing and direct promotion to doctors, for the purpose of increasing sales. The State alleges Purdue intended doctors to rely on their misrepresentations, knew doctors did rely on the misrepresentations, causing prescriptions for medically unnecessary opioids to be paid for by the State. The State has alleged all the elements of fraud with sufficient specificity.[70]

The court will also address Purdue's argument concerning causation because Purdue contends that all of the State's claims fail as a matter of law because the State has not and cannot adequately plead a causal nexus between Purdue's alleged misconduct and the State's alleged injuries.

In essence, Purdue argues the State's injuries are too remote from Purdue's alleged activities to ascribe any liability to Purdue. Holding Purdue liable for the "opioid epidemic disregards many intervening actors and superseding events in the casual chain."[71] Purdue urges this court to find "proximate cause cannot be established

---

[68] Id. (internal citation omitted).
[69] Id.
[70] Purdue asserts the State must identify, for example, specific doctors who relied on Purdue marketing materials, or specific sale representatives who allegedly made misleading statements. Such a level of detail is not required; the State may through discovery develop its evidence through any method of proof it chooses.
[71] Purdue's *Memorandum of Law in Support of the Purdue Defendants' Motion to Dismiss Plaintiff's Complaint* at p.19.

as a matter of law because the chain of causation is too attenuated, too indirect, too remote, and speculative…"[72] and to reject a "fraud on the market theory."[73]

The State opposes, arguing that Purdue should not escape liability simply because Purdue has developed a "sophisticated and deceptive marketing scheme." The State's point is well taken and the court is not persuaded to dismiss the complaint for lack of causation.

The State's main argument is that Purdue created a market for long term opioid use for non-acute pain where none existed before, and then filled that market with its products. The State alleges a very sophisticated fraudulent and deceptive marketing scheme to influence the medical community, which included direct marketing of its products to doctors. The State alleges Purdue helped to change the perception of opioid risk and benefit and promoted its use to general practitioners through marketing materials, medical literature, articles, symposia, and direct approach to doctors.

It is sufficient that the complaint alleges there is a connection between Purdue's marketing of its opioid products and the injuries to the State. In Alaska, the issue of proximate cause is usually reserved for the trier of fact.[74]

The State has alleged adequate facts to support its theory of causation.

---

[72] Id. at p. 21.
[73] Id. at p. 22.
[74] See Winschel v. Brown, 171 P.3d 142, 148 (Alaska 2017) (holding fact questions as to proximate cause and superseding causation precluded summary judgment).

SOA v. Purdue Pharma, L.P.
Page **17** of 19

## V. CONCLUSION

In order to prevail against the Rule 12(b)(6) motion, the State would have to set forth allegations of fact consistent with some enforceable cause of action on any possible theory. With the exception of the claim for violations of Alaska's False Claim Act, the State has done so. It does not appear beyond doubt that the State can prove no set of facts which would entitle relief for unfair trade practices, public nuisance, fraud, negligence, negligent misrepresentation, strict products liability, and unjust enrichment.[75]

Therefore, the *Motion to Dismiss* is GRANTED IN PART. The State's second cause of action for violations of Alaska's Medical Assistance and False Claims Act is DISMISSED, with LEAVE TO AMEND.

The *Motion to Dismiss* is DENIED in all other respects.

**Defendants' Answer to the Complaint is due TWENTY DAYS from the date of this order.**

IT IS SO ORDERED.

DATED at Anchorage, Alaska this 12 July 2018.

Dani Crosby
Superior Court Judge

---

[75] Purdue also argued the State's allegation for reporting suspicious orders did not state a claim. The Complaint did not include a cause of action for the alleged violations; the allegations were made to support the State's claim of unfair and deceptive trade practices. Complaint at ¶ 147.

SOA v. Purdue Pharma, L.P.
Page 18 of 19

I certify that on  7/12/18  a copy of the above was mailed to each of the following at their address of record:
L. SINGER / M. MICHALETZ / D. GROSS / C. FRANKLIN / K. PARKER
R. RICHMOND

_____
Judicial Assistant