# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
|  | Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: *County of Monroe, Michigan v. Purdue Pharma L.P.*, et al., Case No. 18-op-45158 | Judge Dan Aaron Polster Magistrate Judge David Ruiz |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY CVS INDIANA, L.L.C., THE KROGER CO., RITE AID OF MARYLAND, INC., D/B/A RITE AID MID-ATLANTIC CUSTOMER SUPPORT CENTER, <u>WALGREEN EASTERN CO., WALGREEN CO., AND WALMART INC.</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.    Plaintiff Lacks Article III Standing to Sue the Moving Defendants....................... 1

II.   Plaintiff Does Not Assert Claims Against the Moving Defendants Based on
      Their Conduct as Pharmacies................................................................................ 2

III.  The Michigan Product Liability Act ("MPLA") Bars Plaintiff's Common
      Law Tort Claims Against the Moving Defendants Because Those Claims
      Relate to the Moving Defendants' "Selling" Activity. ........................................... 3

IV.   Michigan Consumer Protection Act ("MCPA") (Third Claim): Plaintiff Has
      Not Alleged and Cannot State an MCPA Claim Against the Moving
      Defendants Based on Alleged Deceptive Omissions.............................................. 6

V.    Public Nuisance (Fourth Claim): Plaintiff Cannot Surmount Michigan
      Courts' Refusal to Expand Public Nuisance Law into the Area of Product-
      Based Claims. ...................................................................................................... 8

VI.   Negligence (Fifth Claim): Plaintiffs Completely Fail to Allege a
      Relationship with Moving Defendants that Creates a Duty of Care, Relying
      Instead on a Foreseeability Theory that Has No Basis in Michigan Law.............. 11

VII.  Fraud (Sixth Claim): Plaintiff Fails to Adequately Allege – Indeed, Fails to
      Allege *Any* − Misstatements or Detrimental Reliance........................................ 13

VIII. Unjust Enrichment (Seventh Claim): Plaintiff Cannot Point to a Benefit
      Conferred on Defendants. ................................................................................... 15

IX.   Civil Conspiracy (Eighth Claim): There Is No Underlying Tort to Give Rise
      to a Civil Conspiracy Claim Against the Moving Defendants, and Plaintiff
      Once Again Blurs Its Allegations Relating to These and Other Defendants........ 16

CONCLUSION....................................................................................................... 17

## TABLE OF AUTHORITIES

**CASES**

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,*
    670 N.W.2d 569 (Mich. Ct. App. 2003) ................................................................. 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................. 2, 7, 14, 16

*Beard v. State of Michigan,*
    308 N.W.2d 185 (Mich. Ct. App. 1981) ................................................................. 9

*Becker v. Meyer Rexall Drug Co.,*
    367 N.W.2d 424 (Mich. Ct. App. 1985) ................................................................. 3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 555 (2007) ................................................................. 2, 7, 14, 16

*Buczkowski v. McKay,*
    490 N.W.2d 330 (Mich. 1992) ................................................................. 11, 12-13

*Campbell v. Nationstar Mortg.,*
    611 App'x 288 (6th Cir. 2015) ................................................................. 14

*Cataldo v. U.S. Steel Corp.,*
    676 F.3d 542 (6th Cir. 2012) ................................................................. 14

*City of Cincinnati v. Beretta U.S.A. Corp.,*
    768 N.E.2d 1136 (Ohio 2002) ................................................................. 10

*City of Toledo v. Sherwin-Williams Co.,*
    No. CI 200606040, 2007 WL 4965044 (Ohio Ct. Com. Pl., Lucas Cnty. Dec. 12, 2007) ....... 10

*Detroit Bd. of Educ. v. Celotex Corp.,*
    493 N.W.2d 513 (Mich. Ct. App. 1992) ................................................................. 8, 9

*Garcia v. Wyeth-Ayerst Labs.,*
    385 F.3d 961 (6th Cir. 2004) ................................................................. 5

*Gelman Sci., Inc. v. Dow Chem. Co.,*
    508 N.W.2d 142 (Mich. Ct. App. 1993) ................................................................. 9

*Hendricks v. DSW Shoe Warehouse, Inc.,*
    444 F. Supp. 2d 775 (W.D. Mich. 2006) ................................................................. 7

ii

*Home Owners Ins. Co. v. ADT LLC*,
    109 F. Supp. 3d 1000 (E.D. Mich. 2015)................................................................. 6-7

*Hope v. Hewlett-Packard Co.*,
    No. 14-11497, 2016 WL 301950 (E.D. Mich. Jan. 25, 2016) .................................... 13

*Iliades v. Dieffenbacher N. Am. Inc.*,
    No. 154358, 2018 WL 2338911 (Mich. May 23, 2018) ........................................... 6

*In re Certified Question from Fourteenth Dist. Court of Appeals of Tex.*,
    740 N.W.2d 206 (Mich. 2007)................................................................................ 12

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007) ...................................................................................... 10

*In re Opioid Litig.*,
    No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. Suffolk Cy. June 18, 2018)............... 13

*James v. Arms Tech., Inc.*,
    820 A.2d 27 (N.J. Super. Ct. App. Div. 2003) ......................................................... 9

*Kuznar v. Raksha Corp.*,
    750 N.W.2d 121 (Mich. 2008)............................................................................... 2

*M&D, Inc. v. McConkey*,
    585 N.W.2d 33 (Mich. Ct. App. 1998) ................................................................ 7, 8

*Mayor of Detroit v. Arms Tech., Inc.*,
    669 N.W.2d 845 (Mich. Ct. App. 2003) ................................................................. 10

*Monroe v. Standard Oil Co.*,
    613 F.2d 641 (6th Cir. 1980) .............................................................................. 4-5

*Murdock v. Higgins*,
    559 N.W.2d 639 (Mich. 1997)........................................................................ 11, 12

*Nelson by Carson v. Park Industries, Inc.*,
    717 F.2d 1120 (7th Cir. 1983) .............................................................................. 4

*Samson v. Saginaw Prof. Bldg., Inc.*,
    224 N.W. 2d 843 (Mich. 1975).............................................................................. 11

*Schaendorf v. Consumers Energy Co.*,
    739 N.W.2d 402 (Mich. Ct. App. 2007) ................................................................. 8

*Simmons v. Apex Drug Stores*,
    506 N.W.2d 562 (Mich. Ct. App. 1993) ................................................................. 3

*Smith v. Glenmark Generics, Inc.*,
 No. 315898, 2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014)............................................ 15

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
 501 F.3d 493 (6th Cir. 2007) ........................................................................................... 14

## STATUTES

Mich. Comp. Laws § 600.2945(h) ............................................................................................. 3

Mich. Comp. Laws § 600.2945(i) .............................................................................................. 3

Mich. Comp. Laws § 600.2946(5) ...................................................................................... 3, 5, 6

Mich. Comp. Laws § 600.2946(5)(a) ......................................................................................... 5

Mich. Comp. Laws § 600.2947(2) ........................................................................................... 5-6

In accordance with Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure and Case Management Order One, Defendants CVS Indiana, L.L.C., The Kroger Co., Rite Aid Corporation, Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center, Walgreen Eastern Co., Walgreen Co.,[1] and Walmart Inc. ("Moving Defendants") respectfully submit this reply memorandum in support of their motion to dismiss the Second Amended Complaint ("Complaint" or "SAC") filed by Monroe County, Michigan ("Plaintiff").

## INTRODUCTION

In response to the motions to dismiss filed by the Defendants in this case, Plaintiff has filed an omnibus memorandum ("Opp."). Through this device, Plaintiff repeatedly overstates the strength and specificity of the SAC's allegations against *the Moving Defendants* by blurring critical distinctions between these Defendants – who only distributed opioids to their own pharmacies − and other categorically different Defendants (such as manufacturers and national distributors). Plaintiff's brief also distorts principles of Michigan law beyond recognition to allege claims against the Moving Defendants where Michigan courts have routinely found them not to exist. This Court should dismiss all the SAC's claims against the Moving Defendants.

## ARGUMENT

### I.     Plaintiff Lacks Article III Standing to Sue the Moving Defendants.

As a threshold matter, Plaintiff lacks Article III standing to sue the Moving Defendants because its alleged injuries are not fairly traceable to actions taken by those Defendants and are

---

[1]     CVS Health Corporation, Walgreen Boots Alliance, Inc. and Rite Aid Corporation were parties to the initial motion to dismiss.  Since that time, Plaintiff has voluntarily dismissed its claims against Walgreen Boots Alliance, Inc. and added Walgreen Easter Co. and Walgreen Co. as parties, which step into the shoes of Walgreens Boots Alliance, Inc. for purposes of this motion. Likewise, it has voluntarily dismissed its claims against CVS Health Corporation and added in its place CVS Indiana, L.L.C.  Plaintiff has also voluntarily dismissed its claims against Rite Aid Corporation, leaving Rite Aid of Maryland, Inc. as a movant.

derivative of alleged harms to the public. *See* Moving Defendants' memorandum in support of motion to dismiss ("MTD Mem.") 2 (citing the Moving Defendants' memorandum in support of dismissing the complaint filed by Summit County, Ohio and others ("Summ. Cy. Mem.") 4-7). In response, Plaintiff incorporates the arguments raised by Summit County. Opp. 5 n.10. Accordingly, the Moving Defendants hereby incorporate the arguments they made in reply to Summit County. *See* MDL Doc. No. 742 at 2-4.

## II. Plaintiff Does Not Assert Claims Against the Moving Defendants Based on Their Conduct as Pharmacies.

The Moving Defendants' opening memorandum noted that vague allegations in the SAC might be read as asserting claims against them in their capacity as pharmacies rather than distributors. Out of an abundance of caution, the Moving Defendants moved to dismiss any such claims. *See* MTD Mem. 2.

Plaintiff's opposition confirms that the SAC does *not* assert such claims. Plaintiff does not argue that the SAC's vague allegations about pharmacy-level conduct are sufficient to state a claim under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, it focuses exclusively on a distributor's duty to report suspicious orders. Indeed, Plaintiff does not *say* that it is asserting pharmacy claims.[2]

---

[2]    Plaintiff does argue that it was not required to submit an affidavit of merit in support of its claims against Moving Defendants. Opp. 6. Such an affidavit is not required *if*, as Plaintiff appears to have conceded, the Moving Defendants are sued only as distributors. If Plaintiff were suing the Moving Defendants as pharmacies, however, an affidavit would be required. Plaintiff claims that a pharmacy is not a licensed healthcare provider subject to Michigan Medical Malpractice law, citing *Kuznar v. Raksha Corp.*, 750 N.W.2d 121 (Mich. 2008). But that case merely held that if the underlying actions giving rise to claims against a pharmacy are performed by a *non-pharmacist* (as in that case), the pharmacy cannot independently be deemed a licensed healthcare provider and claims against it lie in ordinary negligence. 750 N.W.2d at 128. Where, as in this case, a licensed pharmacist (recognized in *Kuznar* as a licensed healthcare provider under Michigan's medical malpractice law, *id.* at 127-128) committed the alleged misconduct,

2

To the contrary, Plaintiff affirmatively distinguishes its claims from pharmacy claims, stating that it would be "inapt" to analogize the defendants to pharmacists. Opp. 46. And Plaintiff repeatedly explains that its claims against the Moving Defendants are based on their duty *as distributors* "to identify and report suspicious orders of prescription opioids." Opp. 57 ("Here, Plaintiff alleges that Defendants, including Distributor and Pharmacy Defendants, had a duty under the CSA and its implementing regulations to identify and report suspicious orders of prescription opioids, yet failed to do so . . . ."); *see also id.* at 59 (same). Plaintiff's opposition therefore leaves no doubt that the claims are based on the Moving Defendants' filling of *orders* as distributors, not on their filling of *prescriptions* as pharmacies.

Nevertheless, to avoid any confusion, the Court should grant the motion to dismiss with respect to any claims against the Moving Defendants in their retail pharmacy capacity.

### III. The Michigan Product Liability Act ("MPLA") Bars Plaintiff's Common Law Tort Claims Against the Moving Defendants Because Those Claims Relate to the Moving Defendants' "Selling" Activity.

The MPLA broadly precludes common law tort liability for "product liability action[s]" against manufacturers or sellers of FDA-approved drugs. Mich. Comp. Laws § 600.2946(5). The statute defines "product liability action[s]" to include "action[s] based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product." *Id.* § 600.2945(h). "Production" is in turn defined to include "selling." Mich. Comp. Laws § 600.2945(i). Thus, the MPLA bars Plaintiff's common law claims against Moving Defendants because those claims

---

claims against the pharmacy employing the pharmacist for vicarious liability are treated under Michigan medical malpractice laws, including by implication the affidavit of merit requirement. *See, e.g.*, *Simmons v. Apex Drug Stores*, 506 N.W.2d 562, 564 (Mich. Ct. App. 1993); *Becker v. Meyer Rexall Drug Co.*, 367 N.W.2d 424, 426 (Mich. Ct. App. 1985).

relate to those Defendants' "selling" of FDA-approved products. MTD Mem. 4-6. Plaintiff's arguments to the contrary are unavailing.

*First*, Plaintiff insists its claims against Moving Defendants do not relate to "selling" of opioids, but rather to what they insist is separate conduct that is actionable notwithstanding the MPLA – *i.e.*, the alleged "failure to identify suspicious opioid orders, investigate such orders, or report such orders to the United States Drug Enforcement Agency ('USDEA')." Opp. 11. Plaintiff claims the MPLA's failure to specifically mention suspicious orders means claims based on the handling of such orders are not precluded. But Plaintiff's central theory of liability is that Moving Defendants distributed opioid products pursuant to orders they should not have filled and should have reported to the DEA. SAC ¶ 560 (alleging that "instead of taking any meaningful action to stem the flow of opioids into communities, [Moving Defendants] continued to participate in the oversupply and profit from it."). Such claims relate unambiguously to Moving Defendants' allegedly improper *sales* of opioids and fall squarely within the MPLA. *See Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1124 n.5 (7th Cir. 1983) (noting the verb "to process" includes "the actions of a distributor[], *i.e.*, purchasing *and selling* goods in the ordinary course of trade in a distribution system") (emphasis added). That the MPLA does not specifically refer to handling "suspicious orders" means only that the Michigan legislature thought it unnecessary and impractical to detail every type of sales activity covered by the MPLA when it could use a catch-all term like "selling." *See Monroe v. Standard Oil Co.*, 613 F.2d 641, 645 (6th Cir. 1980) (noting in the context of interpreting "incident or advantage of employment" in the Vietnam Era Veterans Readjustment Assistance Act that the statute "does not enumerate the incidents or advantages of employment that it safeguards" and "is

4

intentionally framed in general terms to encompass the potentially limitless variation in benefits of employment that are conferred by an untold number and variety of business concerns.").

*Second*, Plaintiff claims the broad immunity conferred on sellers of FDA-approved products does not apply to Moving Defendants because they allegedly made misrepresentations to FDA. Opp. 13-14 (citing Mich. Comp. Laws § 600.2946(5)(a)). But this exception applies only where *FDA* has found a defendant made misrepresentations. *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 966 (6th Cir. 2004). As to Moving Defendants, there has been no such finding, a fact Plaintiff concedes by listing only FDA findings as to *opioid manufacturers* – a categorically different set of Defendants from Moving Defendants − in invoking this exception. Opp. 13 (listing alleged misrepresentations by manufacturers Endo, Janssen, Purdue, and Cephalon).

*Third*, Plaintiff claims some of the opioid products at issue are drug/device combination products not covered under the MPLA's FDA-related immunity provisions. Opp. 14-15. That this argument is simply a makeweight is evidenced by the fact that, while Plaintiff baldly asserts in its brief that "[m]any of the opioid products sold, distributed, and manufactured by Defendants are best categorized as 'combination products'" (Opp. 14), it provides *no* example of such "combination" products and cites to *no* allegation in the SAC supporting this contention.

*Finally*, Plaintiff insists it has alleged that misuse of opioids was "reasonably foreseeable," removing the MPLA's protection for FDA-approved drugs. Opp. 15-16. This argument conflates two separate provisions of the MPLA. One section (Mich. Comp. Laws § 600.2946(5)) provides broad immunity, subject to certain enumerated exceptions not relevant here, against liability in "product liability" actions relating to FDA-approved drugs. That provision contains no exception for "reasonably foreseeable" uses. A *separate* section (Mich. Comp. Laws § 600.2947(2)) also provides immunity (not limited to FDA-approved products)

5

*unless* misuse was reasonably foreseeable. That is, the specific immunity provision relevant here – Mich. Comp. Laws § 600.2946(5) – is not subject to an exception contained in an unrelated, broader immunity provision elsewhere in the statute. The lone case Plaintiff cites in support of its position – which did not involve an FDA-approved product or interpret the MPLA's FDA immunity provision – gets it nowhere. *See Iliades v. Dieffenbacher N. Am. Inc.*, No. 154358, 2018 WL 2338911 (Mich. May 23, 2018).

### IV. Michigan Consumer Protection Act ("MCPA") (Third Claim): Plaintiff Has Not Alleged and Cannot State an MCPA Claim Against the Moving Defendants Based on Alleged Deceptive Omissions.

Plaintiff has not stated a claim against the Moving Defendants for any affirmative misrepresentations under the MCPA. While Plaintiff's opposition brief insists that "the SAC *does* allege misleading affirmative representations" giving rise to an MCPA claim (Opp. 38 (emphasis added)), the SAC paragraph it points to refers expressly and exclusively to statements by "the Marketing Defendants," who do not include the Moving Defendants. *See* SAC ¶ 856. The lone basis for Plaintiff's MCPA claims against *the Moving Defendants* is its generalized allegation that "Defendants have engaged in unfair and/or deceptive acts or practices by omitting the material facts of its [sic] failure to monitor, report, and stop the filling of suspicious orders of controlled substances." *Id.* ¶ 857. As explained in Moving Defendants' opening memorandum (MTD Mem. 6-9), this claim fails as a matter of law for several reasons. *See also* Distributors' Mem. 15-20. Moving Defendants raise only two additional points here.

First, in its opposition brief, Plaintiff insists that the particularity requirements of Fed. R. Civ. P. 9(b) do not apply to MCPA claims and therefore that its failure to plead the alleged "silent fraud" with the required particularity – a failure it essentially concedes – does not matter. Opp. 30-31. But even if Plaintiff were correct (it is not – *see Home Owners Ins. Co. v. ADT LLC*,

109 F. Supp. 3d 1000, 1008 (E.D. Mich. 2015)),[3] Plaintiff's generalized and conclusory allegations of omissions *also* fail the lesser pleading standard of Fed. R. Civ. P. 8, articulated by the Supreme Court in *Iqbal* and *Twombly*.  It is not enough, under any pleading standard, merely to recite the elements of a "silent fraud" claim and add conclusory factual allegations related to "the Defendants" generally. *See* SAC ¶ 856.

Second, Plaintiff's opposition brief also ignores that Moving Defendants had no cognizable legal duty to disclose *to Plaintiff* their alleged failure to monitor suspicious orders. *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775 (W.D. Mich. 2006), could not be clearer that a "silent fraud" claim under the MCPA requires a "legal or equitable duty of disclosure." *Id.* at 782 (quoting *M&D, Inc. v. McConkey*, 585 N.W.2d 33, 39 (Mich. Ct. App. 1998)). *See also McConkey*, 585 N.W.2d at 37 ("Michigan courts have recognized that silence cannot constitute actionable fraud *unless* it occurred under circumstances where there was a legal duty of disclosure.") (citation omitted).

*Hendricks* involved a consumer's claim that the defendant retailer omitted disclosing information about the retailer's failure to protect the consumer's personal information from identity theft. The district court dismissed plaintiff's "silent fraud" claim under Fed. R. Civ. P. 12(b) because, *inter alia*, the MPLA "does not impose any duty on sellers to provide data security information to customers, and no allegation is made that [defendant] assumed a duty to provide its customers with such information." 444 F. Supp. 2d at 782 (citation omitted). Here too, Moving Defendants neither owed in the first instance nor assumed any duty to Plaintiff – or any local government – to disclose information regarding suspicious order monitoring. As noted

---

[3]    Plaintiff's attempts to distinguish *ADT* on its facts (Opp. 30, n.28) does nothing to get it around the court's holding on the relevant pleading standard.

in *McConkey*, 585 N.W.2d at 38, a duty to disclose arises "when the vendor and purchaser have generally discussed the condition at issue . . . and the seller fails to fully disclose the material facts within the seller's knowledge related to the condition" or fails to disclose "substantially acquired information which he recognizes as rendering untrue, or misleading, previous representations . . ." (citations omitted). Here, Plaintiff does not allege any discussion, much less a discussion creating a duty to disclose, between Plaintiff and the Moving Defendants.

## V. Public Nuisance (Fourth Claim): Plaintiff Cannot Surmount Michigan Courts' Refusal to Expand Public Nuisance Law into the Area of Product-Based Claims.

Plaintiff's public nuisance claim fails for the basic reason that, notwithstanding Plaintiff's efforts to end-run the clear case law, Michigan courts have steadfastly refused to allow public nuisance claims based on harms caused by use of consumer products − such as the opioids at issue here. *See* Distributors' Mem. 6-8.

Michigan appellate courts have expressly recognized that broadening public nuisance liability to include product-based claims "would significantly expand, with unpredictable consequences, the remedies already available to persons injured by products . . . ." *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992). *See also Schaendorf v. Consumers Energy Co.*, 739 N.W.2d 402, 408 (Mich. Ct. App. 2007) (concluding that "[s]ellers or installers of defective equipment generally cannot be liable for nuisance, because this would significantly expand the scope of nuisance law beyond its origins.") (citation omitted). And consistent with that general view, Michigan courts have repeatedly and expressly denied product-based public nuisance claims where the defendant engaged in a commercial transaction relinquishing control of the nuisance-generating instrumentality before the nuisance occurred. That includes instances where, as here, an allegedly dangerous product is sold to consumers and

8

*then* causes harm. *E.g.*, *Celotex*, 493 N.W.2d at 522 (rejecting public nuisance claim based on exposure to asbestos in schools because defendants "gave up ownership and control of their products when the products were sold to plaintiffs."); *Gelman Sci., Inc. v. Dow Chem. Co.*, 508 N.W.2d 142, 144 (Mich. Ct. App. 1993) ("If a commercial transaction is involved, control of the nuisance at the time of injury is required."); *Beard v. State of Michigan*, 308 N.W.2d 185, 186-187 (Mich. Ct. App. 1981) ("Liability [for public nuisance] cannot extend to where an object constituting part of the nuisance or the dangerous condition is removed from defendants' premises and thus out of their control."). These and other cases doom Plaintiff's public nuisance claim against the Moving Defendants, who relinquished control of the alleged nuisance-causing opioid products long before Plaintiff suffered the injuries alleged in the SAC.

None of Plaintiff's arguments in its opposition brief can overcome these clear precedents.

*First*, Plaintiff suggests the "control doctrine" is limited to public nuisance claims involving *defective* products. Opp. 23. Not so. In *Beard*, for example, the nuisance-causing product was a hand grenade that exploded after being removed from defendants' premises – just as it was designed to do. The court of appeals held that "there is no authority for expanding liability for nuisance to where a dangerous [*not* defective] object is removed from the premises and results in damages elsewhere." 308 N.W.2d at 186. This holding applies no less to dangerous opioids than to dangerous hand grenades.

*Second*, Plaintiff argues that courts in other jurisdictions have rejected the "control" doctrine. Opp. 22-23. As an initial matter, this is incorrect. For example, while Plaintiff relies on a New Jersey lower court decision, *James v. Arms Tech., Inc.*, 820 A.2d 27 (N.J. Super. Ct. App. Div. 2003), five years later the *New Jersey Supreme Court* expressly declined to permit government plaintiffs alleging a public nuisance arising out of their citizens' exposure to lead

9

paint in their homes to "supplant an ordinary product liability claim with a separate [public nuisance] cause of action as to which there are apparently no bounds." *In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007). The court concluded that, if it were to take the approach urged by plaintiffs in that case (and Plaintiff here), "nuisance law would become a monster that would devour in one gulp the entire law of tort." *Id.* (citation omitted). Plaintiff also refers to Ohio law, but the case it relies on, *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), was abrogated by legislation passed five years later barring product-based common law public nuisance claims. *See City of Toledo v. Sherwin-Williams Co.*, No. CI 200606040, 2007 WL 4965044 (Ohio Ct. Com. Pl., Lucas Cnty. Dec. 12, 2007) (rejecting common law public nuisance claim brought by Toledo to abate harms caused by presence of lead paint products in citizens' homes based on 2007 Ohio legislation). Even if Plaintiff were correct about other jurisdictions' treatment of product-based public nuisance claims, however, there is no escaping that *Michigan* courts have consistently (1) expressed an unwillingness to expand public nuisance law to cover claims relating to products and (2) manifested this unwillingness by applying the control doctrine strictly to preclude product-based public nuisance claims.[4]

*Third*, Plaintiff attempts to sidestep the "control" doctrine by arguing that the alleged nuisance-causing instrumentalities in this case are not opioids themselves, but rather the product distribution systems Moving Defendants maintain. Opp. 22. This sleight-of-hand runs directly contrary to Plaintiff's own characterization of its claims. *See, e.g.*, Opp. 15 ("Monroe's claim is

---

[4]     Plaintiff's opposition brief (at 20-21) mentions one lower court decision allowing a product-based public nuisance claim to withstand a motion to dismiss, but that case was dismissed on appeal on other grounds, without any discussion of the control issue. *See Mayor of Detroit v. Arms Tech., Inc.*, 669 N.W.2d 845, 852 (Mich. Ct. App. 2003). Plaintiff does not discuss the trial court's reasoning in its brief, and in any event, the trial court decision was contrary to Michigan appellate courts' well-developed jurisprudence in this area.

based upon widespread use [fn. omitted], misuse and abuse of *opioid products*.") (emphasis added)). The harms Plaintiff alleges are the costs and expenses it incurred dealing with the "use, misuse, and abuse" of opioid *products*, without which there is no nuisance to allege, regardless of what distribution systems Moving Defendants employed. The alleged harm and the alleged nuisance are tied to use of the products, not to the process that conveyed the product to market. In short, this case falls squarely within the fact pattern that has caused Michigan courts to consistently dismiss product-based nuisance claims, and this Court should follow suit here.

**VI.    Negligence (Fifth Claim): Plaintiffs Completely Fail to Allege a Relationship with Moving Defendants that Creates a Duty of Care, Relying Instead on a Foreseeability Theory that Has No Basis in Michigan Law.**

Plaintiff's common law negligence claim fails because Plaintiff cannot, as a matter of law, identify a legal duty owed it by the Moving Defendants. MTD Mem. 10-13.

Plaintiff argues that because the harms it attributes to Moving Defendants were allegedly foreseeable, those Defendants owed it a duty of care. Opp. 43-44 (claiming that because "each Defendant knew or reasonably should have foreseen the possibility that Plaintiff would be damaged by the marketing and distribution of prescription opioids . . . each Defendant owed Plaintiff a common law duty."). But this reasoning ignores well-established Michigan case law holding that "the mere fact that an event may be foreseeable *does not* impose a duty upon the defendant to take some kind of action accordingly." *Samson v. Saginaw Prof. Bldg.*, *Inc.*, 224 N.W. 2d 843, 849 (Mich. 1975) (emphasis added). *See also Buczkowski v. McKay*, 490 N.W.2d 330, 333 (Mich. 1992). Rather, for a legally cognizable duty to exist, there must be a "special relationship" between the defendant and the victim (or the defendant and the third party that caused the injury, where, unlike in this case, those are not alleged to be the same). *Murdock v. Higgins*, 559 N.W.2d 639, 643 (Mich. 1997) (citation omitted). "Such a special relationship must

11

be sufficiently strong to require a defendant take action to benefit the injured party." *Id.* (citation omitted). Only where this relationship exists do Michigan courts consider the foreseeability of the harm (as well as other factors). Where no relationship exists, they do not. *In re Certified Question from Fourteenth Dist. Court of Appeals of Tex.*, 740 N.W.2d 206, 212 (Mich. 2007).

The kinds of "special relationships" giving rise to potential negligence claims include relationships where one entity is entrusted to the care of another – *e.g.*, relationships between invitors and invitees, common carriers and passengers, innkeepers and guests, landlords and tenants, employers and employees, and doctors/psychiatrists and their patients. *Murdock*, 559 N.W.2d at 643 n.11 (citing cases).[5] There is no such "special relationship" – indeed, no relationship at all – between product distributors and a local government that has no direct contacts with the distributor and claims harm as a result of citizens' general uses of the distributed products. Indeed, if a company distributing products for use in a locality were deemed to owe the local government a duty of care for every foreseeable consequence of the use of these products, there would be no limit to negligence claims by localities against those businesses.

Rather than argue the existence of a special relationship between itself and Moving Defendants, Plaintiff claims it can establish the duty independently by virtue of the alleged foreseeability of the harm. Opp. 43-44. As discussed above, however, Michigan law clearly says otherwise. *See also Buczkowski*, 490 N.W.2d at 335 ("To say that a duty should be imposed here

---

[5]  Plaintiff notes, unremarkably, that a special relationship for purposes of a negligence claim does not require a defendant to owe a fiduciary duty to, or be in privity with, the plaintiff. Opp. 43. But that hardly means that *any* non-fiduciary, non-privity relationship constitutes the required "special relationship" under Michigan law. And any link between any Moving Defendant and a government entity that has no relationship with it is clearly insufficient under Michigan law.

because the harm was foreseeable is a fiction . . . .").[6] Plaintiff's total failure to allege a "fundamental" element of a negligence claim (*Hope v. Hewlett-Packard Co.*, No. 14-11497, 2016 WL 301950, at \*5 (E.D. Mich. Jan. 25, 2016) (citation omitted)) means this claim in the SAC should be dismissed as to the Moving Defendants.

Finally, Plaintiff also fails to address the Moving Defendants' argument or authorities that recovery under a negligence theory is barred by the "economic loss" doctrine. MTD Mem. 12. This fatal concession by Plaintiff supplies another basis for dismissal of its negligence claim.

## VII.    Fraud (Sixth Claim): Plaintiff Fails to Adequately Allege – Indeed, Fails to Allege *Any* − Misstatements or Detrimental Reliance.

Section III, above, addresses Plaintiff's allegations of "silent fraud" in connection with its claim under the MCPA. The arguments raised in that context apply with equal force to Plaintiff's common law fraud claim. The Moving Defendants add here only a discussion of Plaintiff's claim they made affirmative misrepresentations amounting to common law fraud. Its argument is meritless, for at least two reasons.

*First*, as pointed out in the Moving Defendants' opening brief (MTD Mem. 13-15), Plaintiff fails to identify a single allegedly fraudulent statement by any of the Moving Defendants, thoroughly failing to meet its burden under Fed. R. Civ. P. 9(b). In response, Plaintiff contends that the SAC "details the instances where Distributor and [Moving] Defendants made misrepresentations" (Opp. 57). This is simply untrue as to any Moving Defendant. The SAC paragraphs Plaintiff cites in support of this claim on pages 57-58 of its

---

[6]    Plaintiff relies on a decision by a New York State trial court, but that case does not apply Michigan law or any analogous New York law requirements that there be a "special relationship" between the plaintiff and defendant giving rise to a duty of care, or that foreseeability be considered only after that relationship has been determined to exist. *See In re Opioid Litig.*, No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. Suffolk Cy. June 18, 2018), at \*25-26.

opposition brief make this clear: some (*i.e.*, ¶¶ 87-89) do not mention any misstatement at all; others (¶¶ 547-59, 690) generally allege misstatements by "the Defendants" (*e.g.*, ¶ 690) or "the Distributor Defendants" (*e.g.*, ¶ 549), but include only specific examples of statements made by Defendants *other than* the Moving Defendants; and the remainder (¶¶ 767, 769-70, 773-75, 781, and 784) refer generally to conduct by the "RICO Supply Chain Defendants," which do not include the Moving Defendants. In short, most of the allegations in the SAC regarding misrepresentations do not encompass the Moving Defendants at all, and those that do lack any detail whatsoever, failing to identify which Defendant − much less which (if any) Moving Defendant − made any particular misrepresentation. These allegations thus thoroughly fail the test set forth in *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551-52 (6th Cir. 2012) (affirming dismissal of fraud claim based on Plaintiff's undifferentiated reference to "the defendants" as having made fraudulent statements).[7]

*Second*, Plaintiff fails to adequately allege reliance on any alleged misstatements by the Moving Defendants, merely citing the SAC's unsupported, conclusory allegation that "Plaintiff relied on Defendants' representations and/or concealments" (Opp. 60 (quoting SAC ¶ 893)). This is clearly insufficient under *Iqbal* and *Twombly*. *E.g.*, *Campbell v. Nationstar Mortg.*, 611 App'x 288, 291 (6th Cir. 2015) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting *Iqbal*, 556 U.S. at 678)).

---

[7] The lone case Plaintiff cites in support of its position, *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007), in fact supports *dismissal* of the fraud claim here.  In that case, while the Sixth Circuit held in the context of a claim under the False Claims Act that Rule 9(b) does not require the individual speaker of each alleged false claim to be identified (*id.* at 505), it also held that Rule 9(b) does require each claim itself to be identified with particularity, with the *time, place, and content* of the false claim specified. *Id.* at 503-05. Plaintiff in this case fails this test in every respect as to the Moving Defendants.

## VIII.  Unjust Enrichment (Seventh Claim): Plaintiff Cannot Point to a Benefit Conferred on Defendants.

The fatal flaw in Plaintiff's unjust enrichment claim is that Plaintiff cannot plausibly allege any direct benefit flowing from Plaintiffs to the Moving Defendants, as required under Michigan law.  *E.g.*, *Smith v. Glenmark Generics, Inc.*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) ("[T]he first element of unjust enrichment requires a finding that defendant *directly* benefited from plaintiff . . . .") (emphasis added). Plaintiff alleges that Moving Defendants' wrongdoing caused it to incur increased costs related to the opioid epidemic, including costs related to addiction treatment, law enforcement, and other *government services provided to County residents*. Plaintiff does not and cannot allege, as required to state an unjust enrichment claim, that its incurring of these *government* expenses directly benefited *the Moving Defendants*—either as consumers of these services (which they were not) or because they would incur these government expenses absent any alleged wrongdoing (which they would not).

The best Plaintiff can do is to contend in its opposition brief, without citing to any specific allegation in the SAC, that "by using Plaintiff to pay for the Defendants' negative externalities – the cost of the harms caused by their wrongful practices – the Defendants knowingly saved costs and expenses that allowed them to sell and distribute more opioids, and make more money, than if they had internalized the actual cost of their activities." Opp. 52 (citing, in general, Sections I.E and I.H of the SAC). Plaintiff does not explain in either its brief or the SAC itself (1) what "costs and expenses" were saved by the Moving Defendants; (2) how Plaintiff's increased costs were related to, or resulted in, these savings; or (3) how, or to what degree, these savings allowed the Moving Defendants to "distribute more opioids and make more money." *Id*. In short, Plaintiff alleges no relationship – much less a direct relationship – between

15

the alleged wrongdoing and the harm it allegedly caused Plaintiff and any alleged benefit to the Moving Defendants. Nor does it cite any case suggesting that the relationships between the harms and benefits it alleges give rise to an unjust enrichment claim.

## IX.   Civil Conspiracy (Eighth Claim): There Is No Underlying Tort to Give Rise to a Civil Conspiracy Claim Against the Moving Defendants, and Plaintiff Once Again Blurs Its Allegations Relating to These and Other Defendants.

A civil conspiracy claim requires proof of underlying intentional tortious conduct that defendants allegedly conspired to commit. *E.g.*, *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 670 N.W.2d 569, 580 (Mich. Ct. App. 2003). Having failed for the reasons outlined above to state any such claims, Plaintiff also fails to state a civil conspiracy claim.

Moreover, to tie the Moving Defendants to an alleged conspiracy, Plaintiff's opposition brief (again) misleadingly associates these Defendants with conduct the SAC alleges was committed by *other* Defendants. For example, SAC paragraphs 763-791 and 820-851, which Plaintiff insists support their claim of civil conspiracy against *all* Defendants, relate exclusively to the "RICO Supply Chain Defendants," which do *not* include the Moving Defendants. And allegations that Plaintiff points to that do specifically reference the Moving Defendants – such as SAC ¶¶ 560-579 – in no way discuss any concerted action by those Defendants, either among themselves or with anyone else. Any remaining allegations of conspiracy are mere conclusory statements pled against "the Defendants" generally, with no specificity either as to the substance of the alleged agreement or the role of particular Defendants in the agreement. This is insufficient to state a claim of civil conspiracy against the Moving Defendants under *Iqbal* and *Twombly*, the latter of which also rejected a claim of conspiracy (there under the Sherman Act) as insufficiently pled under Fed. R. Civ. P. 8.  *See Twombly*, 550 U.S. at 564-69.

16

## CONCLUSION

For the foregoing reasons, all claims against the Moving Defendants should be dismissed with prejudice.

Dated: July 30, 2018

Respectfully submitted,

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Indiana, L.L.C.*

/s/ Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

/s/ Kelly A. Moore
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc.*

/s/ Kaspar Stoffelmayr
Kaspar Stoffelmayr
BARTLIT BECK HERMAN
    PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com


*Attorneys for Walgreen Eastern Co. and Walgreen Co.*

/s/ Ronda Harvey
Gerard R. Stowers
Ronda L. Harvey
Fazal A. Shere
BOWLES RICE LLP
600 Quarrier Street
Charleston, WV 25301
Phone: (304) 347-1701
Fax: (304) 347-1746
E-mail: gstowers@bowlesrice.com
E-mail: rharvey@bowlesrice.com
E-mail: fshere@bowlesrice.com

*Attorneys for The Kroger Co.*

18

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

In accordance with Local Rule 7.1(f), I hereby certify that the foregoing Reply in Support of Motion to Dismiss Complaint is within the page limitations permitted by CMO 1 and CMO 4 in this matter, subject to a pending motion for additional pages.

*/s/ Eric R. Delinsky*
Eric R. Delinsky

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2018, this Reply was filed electronically on the master docket for this matter. Case Management Order One provides that "[e]lectronic case filing of a document, other than an initial pleading, in the master docket shall be deemed to constitute proper service on all parties." ECF No. 232 at 8 (No. 1:17-MD-2804).

*/s/ Eric R. Delinsky*
Eric R. Delinsky