**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*City of Chicago v. Cardinal Health, Inc., et al.*<br>Case No. 18-op-45281-DAP | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**REPLY IN SUPPORT**
**OF DISTRIBUTORS' MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

ARGUMENT .................................................................................................................. 2

I.    THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED. ...................................... 2

II.   THE CITY'S NEGLIGENCE CLAIM SHOULD BE DISMISSED. ................................... 4

III.  THE CITY'S CLAIMS FAIL FOR ADDITIONAL REASONS. ...................................... 7

   A.  The City Has Not Adequately Alleged Proximate Cause. ................................... 7

   B.  The Free Public Services Doctrine Bars the City's Claims. ............................... 8

   C.  The Economic Loss Doctrine Bars The City's Claims. ...................................... 9

IV.   THE CONSUMER PROTECTION CLAIM SHOULD BE DISMISSED. ......................... 11

V.    THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. .............................. 12

VI.   THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ................................. 14

VII.  THE DRUG DEALER LIABILITY ACT CLAIM SHOULD BE DISMISSED. ................ 15

CONCLUSION .............................................................................................................. 16

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Allen v. Bruister & Assocs., Inc.*, 2007 WL 2081454 (S.D. Ala. July 13, 2007)..........................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................12

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) ........................................14

*City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058 (N.D. Ill. 2016)....................9, 12

*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011)...........................................12

*County of Erie v. Colgan Air, Inc.*, 711 F.3d 147 (2d Cir. 2013) ....................................9

*Cuyler v. United States*, 362 F.3d 949 (7th Cir. 2004) ...................................................6

*Goldstick v. ICM Realty*, 788 F.2d 456 (7th Cir. 1986)................................................13

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) .........................................12

*In re St. Jude Med., Inc.*, 425 F.3d 1116 (8th Cir. 2005)..............................................11

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods.
Liab. Litig.*, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010) ..............................................12

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris,
Inc.*, 196 F.3d 818 (7th Cir. 1999) ..................................................................13

*Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.*, 2013 WL 3773373
(E.D. Mich. July 17, 2013) .........................................................................14

*Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989 (N.D. Ill. 2017)......................................13

*Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013)...................................................4

*RBS Citizens, N.A. v. Bentley Motors, Inc.*, 2012 WL 1565457
(N.D. Ill. May 2, 2012) .............................................................................13

*Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631 (N.D. Ohio 2012) ........................15

*Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76 (2d Cir. 2017)........................................15

*Smith v. BOC Grp. PLC*, 2001 WL 477237 (N.D. Ill. May 4, 2001) ...........................................14

*State Street Bank & Trust Co. v. UAL Corp.*, 2004 WL 784891
(N.D. Ill. Apr. 9, 2004) ...........................................................................14

*Triumph Packaging Grp. v. Ward*, 2012 WL 5342316 (N.D. Ill. Oct. 29, 2012)..........................12

### STATE CASES

*Burgess v. Abex Corp.*, 725 N.E.2d 792 (Ill. App. Ct. 2000) ........................................15

*City of Chicago v. American Cyanamid Co.*, 823 N.E.2d 126 (Ill. App. Ct. 2005)....................1, 2

*City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004).................................. passim

*Hertz Corp. v. City of Chicago*, 77 N.E.3d 606 (Ill. 2017)............................................11

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672
    (Ill. 1989) ..............................................................................................14

*McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242 (Ill. 1999) ....................................15

*Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982) ...............................................10

*People ex rel. Carey v. Route 53 Drive-In*, 358 N.E.2d 1298 (Ill. App. Ct. 1976).........................3

*Simpkins v. CSX Transportation, Inc.*, 965 N.E.2d 1092 (Ill. 2012), Opp. 13 ..............................6

*Varela ex rel. Nelson v. St. Elizabeth's Hospital of Chicago, Inc.*, 867 N.E.2d 1
    (Ill. App. Ct. 2006)....................................................................................6

*Walker Cnty. v. Tri-State Crematory*, 643 S.E.2d 324 (Ga. Ct. App. 2007) ...............................9

*Widlowski v. Durkee Foods*, 562 N.E.2d 967 (Ill. 1990)..............................................................5

*Young v. Bryco Arms*, 821 N.E.2d 1078 (Ill. 2004) ..............................................................2, 7, 8

### OTHER AUTHORITIES

21 C.F.R. §§ 1303.21–23 ........................................................................................15

21 U.S.C. § 844.....................................................................................................4

740 Ill. Comp. Stat. 57/10(7) ....................................................................................16

Centers for Disease Control and Prevention, Web-based Injury Statistics Query
    and Reporting System, *Nonfatal Injury Reports, 2000 - 2016*,
    https://webappa.cdc.gov/sasweb/ncipc/nfirates.html....................................................3

M.C.C. § 1-20-020...................................................................................................9

M.C.C. § 2-25-090...................................................................................................11

U.S. Dep't of Health & Human Servs., *Facing Addiction in America: The Surgeon General's Report on Alcohol, Drugs, and Health* (2016), https://addiction.surgeongeneral.gov/sites/default/files/surgeon-generals-report.pdf ................................................................................................................1

U.S. Dep't of Justice, DEA, Diversion Control Div., Quota Applications, https://www.deadiversion.usdoj.gov/quotas/ .........................................................................15

The City cannot keep straight what its case is about.  As it seeks to distinguish Illinois case law and dodge dismissal of its claims against Distributors because of the superseding illegal conduct of doctors, dealers, and patients, the City asserts categorically that this case is all about the "legal" use of prescription opioids and "arises largely from the costs borne by the City because residents used addictive opioids legally."  Opp. 16 ("The injury is not dependent on any criminal conduct ….").  At other times, the City reverts to its claim that the case is about the illegal conduct of third parties, asserting that "the City seeks to remedy with this lawsuit" the "public health epidemic" caused, at least in part, by the "black markets for diverted prescription opioids and … heroin and fentanyl abuse by individuals who could no longer legally acquire—or simply could not afford—prescription opioids."  *Id.* at 1.

It matters what the case is about.  If it is about legal use, then the claim that Distributors "deliberately disregarded their legal obligations to maintain effective controls ***against diversion*** of these powerful narcotics," *id.*, makes no sense because legal use means, by definition, that there was no diversion.  "Drug Diversion" is the "transfer of any legally prescribed controlled substance ***from the person for whom it was prescribed to another person for any illicit use***."[1]  If doctors were duped into over-prescribing their drugs by allegedly-deceptive marketing, their prescriptions were nevertheless legitimate; pharmacies acted appropriately in dispensing medications based on those prescriptions; and Distributors acted legitimately in filling the wholesale orders placed by those pharmacies.  If the case is about illegal use—"diversion" to anyone without a valid prescription—dismissal is required under Illinois case law, including *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1106 (Ill. 2004), *City of Chicago v. American Cyanamid Co.*, 823

---

[1]  U.S. Dep't of Health & Human Servs., *Facing Addiction in America: The Surgeon General's Report on Alcohol, Drugs, and Health*, glossary at 2 (2016), https://addiction.surgeongeneral.gov/sites/default/files/surgeon-generals-report.pdf.

N.E.2d 126, 129 (Ill. App. Ct. 2005), *Young v. Bryco Arms*, 821 N.E.2d 1078 (Ill. 2004), and others, as explained in Distributors' opening brief.  *See* Dkt. 571-1 ("Br.").

When all else fails, the City reveals that what it really hopes to do is hold Distributors' liable without reference to any doctors, pharmacies, or patients—in short, without any reference at all to the real-world context in which Distributors operate.  In a remarkable statement, the City claims that "[t]he condition caused by Distributor Defendants here—the oversupply of addictive opioid pills into and within Chicago—is harmful in and of itself ***without any independent act of any third party***."  Opp. 10.  But no matter how many pills Distributors shipped to pharmacies in the City, the pills would sit on shelves causing no harm unless a doctor prescribed them, a patient presented the prescription, a pharmacy dispensed them, and someone used them (whether legally or not).  Distributors' conduct affects no one without the "independent act[s]" of "third part[ies]," *id.*, and the City's Complaint therefore should be dismissed.

## ARGUMENT

## I.  THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED.

The City's public nuisance claim fails for the same reasons as the City's previous attempts to impose public nuisance liability on the firearm and lead paint industries.  *See Beretta*, 821 N.E.2d at 1121; *American Cyanamid*, 823 N.E.2d at 129.  In each case, as here, the City alleged that product manufacturers and distributors interfered with public health and safety. And in each case, Illinois courts rejected the City's attempt to extend the public nuisance doctrine.

The City still has not identified a public right with which Distributors interfered.  Like Summit County, the City asserts that merely alleging interference with public health "meet[s] the definition of 'public right' set forth in the Restatement."  Opp. 6.  But that is what the City alleged in *Beretta*.  821 N.E.2d at 1106–08 (alleging that the gun defendants sold firearms "even when they [knew] or should [have] know[n] that the firearms will be used illegally," and "[t]he ready

availability of guns also contributes to suicides and accidental shootings, particularly of children," and is "injurious to the public health and safety of Chicago residents"). It was not enough. The Illinois Supreme Court found that "there is no authority for the unprecedented expansion of the concept of public rights to encompass the right asserted by plaintiffs." *Id.* at 1116.

This conclusion is especially noteworthy given that gun violence, unlike opioid use, arguably could interfere with public rights. *See* Summit Reply, Dkt. 744, at 20–21. That the Supreme Court nevertheless described the City's claim as involving "a public right so broad and undefined that the presence of any potentially dangerous instrumentality in the community could be deemed to threaten it," removes any doubt that Illinois law would not equate injury from opioid use with the invasion of a public right. *Beretta*, 821 N.E.2d at 1116; *see also People ex rel. Carey v. Route 53 Drive-In*, 358 N.E.2d 1298, 1300 (Ill. App. Ct. 1976) ("It is well established that the mere fact that a nuisance may have injured a number of persons does not make it a public nuisance, where the injury is to a private right and not to the public generally.").

Attempting to distinguish *Beretta*, the City argues that the difference between guns and opioids is that guns "generally pose no threat to public safety unless used illegally," whereas the opioid epidemic "is not predicated on illegal conduct or crimes committed by others." Opp. 6–7.[2]

---

[2]  The City's assertion that guns pose no threat unless used illegally is at odds with what the City itself told the court in *Beretta*. *See* City of Chicago 2d Amended Compl., ¶ 14 (Ill. Cir. Ct. Mar. 27, 2000), *available at* 2000 WL 34611548 (claiming that the "interference with public safety and health caused by firearms" includes the mere "presence of guns in the home," irrespective of criminal activity.); *see also id.* ("introducing a gun into the home is dangerous to the people who live there and to their family, friends, and associates, because it is demonstrably much more likely to be used against them," such as by "accidental shootings (most often involving children)").

The City's assertion here that guns pose no threat unless used illegally is also untrue. There are more than 17,800 accidental shootings each year and more than 22,000 suicides. Centers for Disease Control and Prevention, Web-based Injury Statistics Query and Reporting System, *Nonfatal Injury Reports, 2000 - 2016*, https://webappa.cdc.gov/sasweb/ncipc/nfirates.html. Regarding opioid medications, the assertion that they threaten public health "even when used legally" directly challenges the FDA's conclusion that prescription opioids are safe and effective when used properly. That conclusion

But the question whether injury results from illegal conduct of third parties goes to the separate element of proximate cause.  It says nothing about whether the conduct interferes with public rights, like the right to potable water, clean air, or unobstructed highways.  The prescribing, dispensing, and distribution of opioids interfere, at most, with the private rights of those who use them, not the "community at large."  *See Beretta*, 821 N.E.2d at 1111, 1116.

By admitting that its public nuisance claim "is not predicated on illegal conduct or crimes committed by others," Opp. 7, the City concedes its claim against ***Distributors***.  If the prescriptions that doctors wrote were legal—i.e., for a legitimate medical need—then pharmacists had a responsibility to dispense the medications, and the orders they placed with Distributors were not suspicious.  The City has not alleged, and could not plausibly allege, that Distributors owe a duty to prevent individuals who lawfully obtain valid prescriptions from receiving their medication.  It is not Distributors' role to second-guess medical judgment, and certainly not their legal duty.  Rather, Distributors' alleged duties concern reporting suspected ***diversion***, Compl. ¶ 47, which by definition involves criminal acts.[3]  Thus, because the City's public nuisance claim is not predicated on the illegal conduct of others, it is not predicated on the diversion of opioids, or on any alleged unlawful conduct of Distributors.

## II.    THE CITY'S NEGLIGENCE CLAIM SHOULD BE DISMISSED.

The Opposition's "duty" argument is flawed.  First, while the City argues that it relies on state and federal regulations only to "identify an appropriate standard of care, not to create a duty,"

---

preempts state-law challenges to the design of the drug.  *See Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2475 (2013).

[3]    *See supra* at 1 & n.1 (definition of "Drug Diversion"); 21 U.S.C. § 844 ("It shall be unlawful for any person … to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice ….").

Opp. 14, that is not what the Complaint says.  The Complaint cites federal and state statutes and regulations for the "duties" they allegedly create.  *E.g.*, Compl. ¶ 180.  That problem aside, like Summit County, the City cannot identify a preexisting, parallel common-law duty to report or halt shipment of suspicious orders.  As Distributors explained in the *Summit County* reply, a duty to report suspicious orders to the DEA or to prevent diversion of legally-prescribed opioids has never existed at common law; a duty to report to a government agency is, after all, inherently a creature of statute and regulation.  *See* Summit Reply, Dkt. 744, at Part III.B.  Were there a common-law duty, the City would simply cite an Illinois case recognizing it, yet the Opposition cites none.

Second, the Opposition fails to identify a duty running from Distributors **to the City**.  The City, citing *Widlowski v. Durkee Foods*, 562 N.E.2d 967, 968 (Ill. 1990), Opp. 13–14, asserts that Distributors owed a duty to everyone "not to oversupply a market with highly addictive opioids and … to prevent diversion and report and reject suspicious orders," *id.* 12.  But this argument assumes illegal conduct.  If doctors wrote prescriptions based on their good faith (even if mistaken) medical judgment, there can be no question of "oversupplying" the amounts doctors prescribed and pharmacies ordered.  In any event, *Widlowski* held that the defendant did **not** owe the plaintiff a duty, stating that, while "[i]t can be said, with the benefit of hindsight, that virtually every occurrence is foreseeable," "[t]he court has thus far been unwilling to say there is a duty unless the parties stood in such a relationship where one party is obliged to conform to a certain standard of conduct **for the benefit of the other**."  *Widlowski*, 562 N.E.2d at 969–70.  Distributors owe no duty to the City, and "proof of negligence in the air, so to speak, will not do."  *Id.* at 970.

Third, while the City argues that the Complaint adequately alleges that the City's injuries were "foreseeable," Opp. 13–14, the Complaint's "foreseeability" allegations are wholly conclusory as they relate to Distributors.  The City pleads no **facts** showing that an unreasonable

5

risk of harm to anyone was the foreseeable result of supplying licensed pharmacies with quantities of the medications that were within DEA-established quotas and based on legal prescriptions.  The very case cited by the City, *Simpkins v. CSX Transportation, Inc.*, 965 N.E.2d 1092, 1098, 1099 (Ill. 2012), Opp. 13, holds that mere conclusions, without a supporting factual basis, are insufficient.  For these reasons and the additional reasons explained in Distributors' *Summit County* reply, diversion was not the foreseeable result of Distributors' alleged conduct.  *See* Summit Reply, Dkt. 744 at 26–27.

Fifth, the Opposition asserts that the Complaint adequately alleges that "the harm to the City was likely."  Opp. 13.  Again, the Complaint's boilerplate "likelihood" allegations plead no facts related to Distributors, and the lengthy and attenuated chain of actors and events between Distributors and the City's alleged injuries leads to the opposite conclusion.  Br. at 13–16.  Finally, the City argues that *Varela ex rel. Nelson v. St. Elizabeth's Hospital of Chicago, Inc.*, 867 N.E.2d 1 (Ill. App. Ct. 2006), is not controlling because, while the court held that the defendant owed no duty to the plaintiff, "here, … the City has alleged that [Distributors] owed it a common-law duty." Opp. 15.  But the *Varela* plaintiffs made the exact same conclusory allegation:  "[Plaintiffs] contend the Reporting Act is not at issue and that the premise of their case is the defendants' negligent 'violation of a common law duty.'"  867 N.E.2d at 8.[4]  The allegation was insufficient there, as it is here.

---

[4]   The Complaint alleges negligence *per se* and gross negligence, neither of which are recognized under Illinois law.  Chicago Br., Dkt. 571-1 at 11–12 & n.5; *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004).  The Opposition does not discuss either doctrine, and the City has therefore abandoned these unrecognized claims.

### III. THE CITY'S CLAIMS FAIL FOR ADDITIONAL REASONS.

#### A. The City Has Not Adequately Alleged Proximate Cause.

The Illinois Supreme Court dismissed the City's claims against retail gun dealers—the counterpart in the firearm supply chain of retail pharmacies—for lack of proximate causation. *Beretta*, 821 N.E.2d at 1137–38. For the same reason, the Supreme Court also dismissed claims against retail gun dealers brought by an individual plaintiff who was ***directly*** injured by gun violence. *Young v. Bryco Arms*, 821 N.E.2d 1078 (Ill. 2004). The guiding rule behind these holdings is simple: "If a defendant's breach of duty furnishes a condition by which injury is made possible and a third person, acting independently, subsequently causes the injury, the defendant's creation of the condition is not a proximate cause of the injury." *Beretta*, 821 N.E.2d at 1133. Even assuming that the stocking of pharmacy shelves with prescription opioids furnishes a condition by which injury is made possible, injury occurs subsequently, only after the intervening criminal acts of persons who divert the drugs—i.e., sell or barter them to persons who are not authorized to have them—precisely like the intervening criminal conduct in *Beretta*.

The City again attempts to distinguish *Beretta* and *Young* on the basis that its claims against Distributors are "not dependent on the illegal conduct of others," but "exist[] as a direct result of Distributor Defendants' conduct and exist[] ***notwithstanding the acts of any third parties (legal or illegal)***." Opp. 9. This suggestion that the distribution of prescription opioids is inherently and directly harmful is nonsense. First, the medications are approved by the FDA as safe and effective for their indicated uses. If the City is seeking payment for costs associated with the side effects (addiction) of legally-prescribed FDA-approved drugs, such a claim would have to be based on failure-to-warn allegations, which the City has not made here and which would not properly be directed at Distributors in any event. Second, no matter how many pills a distributor ships to a community's pharmacies, they sit under lock and key until (i) a patient obtains a prescription from

(ii) a physician, who determines the drugs are medically necessary, following which (iii) a pharmacist verifies the prescription and dispenses the drugs.  The City's remarkable suggestion that "the oversupply of addictive opioid pills … is harmful in and of itself *without* any independent act of any third party," Opp. 10, is plainly wrong.

Thus, either way, the City's argument fails.  As explained above, if the City's alleged injuries are predicated not on diversion but on injuries to residents who "use[] addictive opioids legally," Opp. 16, then Distributors **cannot** have proximately caused the City's claims because Distributors have no duty to prevent the legal receipt and use of opioids.  And if the City's claims **are** predicated on diversion, which is illegal conduct by third parties, then *Beretta*, and especially *Young*, leave no doubt that the City has failed to establish proximate cause.  If the Supreme Court deemed retail gun dealers' conduct too remote from both the City's and a victim's injury, then Distributors—who are one link further removed from retail pharmacies in the chain of causation— cannot have proximately caused the City's injuries.

### B.    The Free Public Services Doctrine Bars the City's Claims.

The City concedes that the Illinois Supreme Court—like the vast majority of courts to consider the question—has adopted the free public services doctrine, Opp. 19, under which "public expenditures made in the performance of governmental functions are not recoverable in tort." *Beretta*, 821 N.E.2d at 1144.  That doctrine bars the City's claim for "police, emergency, health, prosecution, corrections, rehabilitation, and other" costs.  Compl. ¶¶ 281, 315.

The City invokes a purported exception to the doctrine where the plaintiff seeks to abate a nuisance.  In *Beretta*, the court acknowledged the exception but did not adopt it, instead holding that—because the damages sought by the plaintiff did "not represent the cost of abatement"—the exception did not apply by its own terms.  821 N.E.2d at 1144.  Here, as in *Beretta*, the costs the City seeks to recover do not represent the costs of abatement; rather (the City's conclusory

allegations notwithstanding), they represent quintessential money damages. The exception proposed by the City "would be the exception that swallows the rule, since many expenditures for public services could be re-characterized by skillful litigants as expenses incurred in abating a public nuisance." *Walker Cnty. v. Tri-State Crematory*, 643 S.E.2d 324, 328 (Ga. Ct. App. 2007); *see County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 152 (2d Cir. 2013) (same).[5]

The City next argues that it qualifies for an exception where the "legislature" enacts a statute "expressly authorizing" it to recover the costs in question. Opp. 20; *see Beretta*, 821 N.E.2d at 1146–47. But Municipal Code of Chicago (M.C.C.) § 1-20-020 does not expressly authorize recovery of the costs that the City seeks.[6] Under that municipal ordinance, the City may (at most) recover costs incurred "to provide services reasonably related to [the] violation of any federal, state or local law." *Id.* Here, the Complaint wholly fails to identify any violations of law by Distributors that "caused the City to incur costs." *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1083 (N.D. Ill. 2016) (dismissing claim under M.C.C. § 1-20-020 because the City failed to allege facts showing that alleged misconduct "caused the City to incur costs"); *see also supra* Part III.A.[7]

## C.    The Economic Loss Doctrine Bars the City's Claims.

The City's economic loss argument goes wrong in at least two ways. First, the City argues that the doctrine does not apply because the City's public nuisance claim is "seeking abatement,

---

[5]    Nor could the City obtain all of its claimed damages under the guise of abatement. *See* Cabell Reply (filed contemporaneously herewith) at 6 n.9.

[6]    Nor may the City create for itself a cause of action for violation of DEA reporting regulations when federal law prohibits any private right of action to enforce its regulations. *See* Summit Br., Dkt. 491-1 at Part III.B.1.

[7]    For substantially the same reason, the City's free-standing claim under M.C.C. § 1-20-020 fails.

not compensatory damages."  Opp. 18.  But the Complaint expressly states that the City seeks "compensatory and punitive damages" in connection with its public nuisance claim.  Compl. ¶ 293. The City sought the same categories of damages in *Beretta*, 821 N.E.2d at 1139, and the Illinois Supreme Court held that the economic loss doctrine barred the City's claims.

The City next argues that the doctrine does not apply because "the City's negligence claim is predicated on breaches by Distributor Defendants of an independent tort duty, not a contractually-created duty."  Opp. 18.  There are two lines of authority relevant to the economic loss doctrine, and the Opposition conflates them.[8]  The line of cases relevant here holds that the doctrine is a complete bar to tort suits seeking purely economic damages in the absence of "physical harm to … property or other direct injury."  *Beretta*, 821 N.E.2d at 1143.  As the Supreme Court explained in *Beretta*, Illinois law "does not permit an award of solely economic damages" in tort or public nuisance actions like this one.  *Id.* at 1143.

The City argued in *Beretta*, as it does here, that its claim was not "based on the type of commercial interests" for which *Moorman* barred recovery.  *Id.* at 1139.  The court rejected this argument, explaining that "because the economic consequences of any single accident are 'virtually endless,' a defendant who could be held liable for every economic effect of its tortious conduct would face virtually uninsurable risks, far out of proportion to its culpability."  *Id.* at 1140. Here, as in *Beretta*, the "economic loss rule operates to prevent such open-ended tort liability."  *Id.*

---

8    The inapposite line of cases relied on by the City reflects a concern that tort law not be used to circumvent contractual remedies when contractual duties lie at the heart of the dispute.  *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 451–52 (Ill. 1982) ("[C]laims regarding 'qualitative defects' in products 'are best handled by contract, rather than tort,' whether the tort theory asserted is strict liability or negligence.").

## IV.    THE CONSUMER PROTECTION CLAIM SHOULD BE DISMISSED.

The Opposition abandons any claim for costs under M.C.C. § 2-25-090.  Opp. 27 n.22 ("The City hereby no longer seeks 'costs' … but rather only statutory penalties.").  The Court should therefore dismiss that portion of the claim.

The City's assertion that it has properly pled a claim for civil penalties is unavailing.  As the basis for the City's penalty claim, the Complaint asserts that Distributors (1) failed to report suspicious orders and maintain adequate controls against diversion; (2) publicly claimed to maintain effective controls against diversion;[9] and (3) filled suspicious or invalid pharmacy orders for opioids.  Compl. ¶ 362.[10]  Distributors' opening brief demonstrated that the City's claims as to (1) and (2) fail because they do not allege actionable misconduct that occurred "in the city."  Br. 22–23 (quoting M.C.C. § 2-25-090(a)).  The Opposition ignores this argument.  It makes no effort to explain how a municipal ordinance can provide the basis for imposing civil penalties on a non-resident corporation based on (i) alleged statements that were not made in or directed at Chicago or its residents or (ii) the failure to make reports that, if made, would have been made to entities other than the City.  Under established law, the City's failure to allege actionable conduct *in Chicago* is fatal.  Br. 23 (collecting cases); *see Hertz Corp. v. City of Chicago*, 77 N.E.3d 606, 609–11 (Ill. 2017) (warning against "unrestrained extraterritorial exercise of home rule powers"); *see also In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) ("[S]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one

---

[9]    The City's claim relating to these alleged public statements also fails because they are not pled with Rule 9(b) particularity.  *See* Br. 23.  While the City asserts that Rule 9(b) does not apply to unfair (as opposed to deceptive) trade practice claims, Opp. 29–30, this allegation plainly sounds in fraud.

[10]    Insofar as the City seeks civil penalties based on Distributors' lobbying efforts and purported efforts to inflate DEA quotas, *see* Opp. 26 n.21, it is not entitled to them for the reasons explained herein and for additional reasons explained elsewhere.  *See* Summit Reply at 13 & n.9.

state's law to sales in other states with different rules." (quoting *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002))).

To be sure, the City separately seeks to hold Distributors liable "for opioids that they distributed 'in the City.'"  Opp. 29 n.26.  But that portion of the City's claim fails for a different reason—namely, the Complaint's wholesale failure to identify even a single pharmacy in the City that placed a "suspicious or invalid" order, much less to identify a single such order that any Distributor filled in Chicago.  *Purdue Pharma L.P.*, 211 F. Supp. 3d at 1075 (dismissing unfair practices claim against manufacturers because "the Court does not find that the City has alleged enough to connect [their conduct] with prescriptions that were covered by the City").  Especially here, where the City was allowed to review extensive data regarding Distributors' shipments into Chicago prior to filing the Complaint, the Court should not countenance its "shoot-first-ask-questions-later [pleading] stratagem."[11]

## V.    THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The City concedes that its unjust enrichment claim is based on the same conduct alleged in its other claims.  Opp. 21–22.  The claim therefore fails because, as explained above, "the underlying claim[s] upon which it is based [are] deficient."  *Triumph Packaging Grp. v. Ward*, 2012 WL 5342316, at *7 (N.D. Ill. Oct. 29, 2012).[12]

---

[11]   *Allen v. Bruister & Assocs., Inc.*, 2007 WL 2081454, at *2 (S.D. Ala. July 13, 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("Because [plaintiff's] complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, 2010 WL 3937414, at *7 (S.D. Ill. Oct. 4, 2010) ("The law cannot tolerate lawsuits by prospecting plaintiffs who sue multiple defendants on speculation that their products may have caused harm … and who thereafter try to learn through discovery whether their speculation was well-founded.").

[12]   The City incorrectly asserts that *Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011), contradicts Distributors' argument.  Even assuming that Illinois recognizes unjust enrichment as an independent claim (an open question), *Cleary* holds that where "an unjust enrichment claim rests on the same … conduct alleged in another claim," the claim "stand[s] or fall[s] with the related claim."  *Id.* at 517.

The City also fails to offer any coherent justification for its sweeping assertion that it may recover from Distributors for purported "externalities."  To begin with, the externalities for which the City seeks to recover are its expenditures related to opioid use and misuse, not externalities specific to the business of wholesale distribution.  The City alleges that it provided government services to opioid users and that all of these services somehow benefitted Distributors.  But "a party who performs services … cannot sue third parties for unjust enrichment merely because they benefit from that performance."  *RBS Citizens, N.A. v. Bentley Motors, Inc.*, 2012 WL 1565457, at *3 (N.D. Ill. May 2, 2012).  As Distributors' opening brief explained, virtually every business creates externalities—for example, the "food industry puts refined sugar in many products, making them more tasty; as a result some people eat too much (or eat the wrong things) and suffer health problems and early death"—but there is no free-floating right on the part of the City to recover the externalities created by candy stores.  *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 196 F.3d 818, 823 (7th Cir. 1999).  That an economist can trace a cost incurred by A to the activities of B—and labels it an "externality"—does not mean that A's cost benefitted B.  Nor does it mean that B has a legal duty to reimburse A.  This is because "no rule of law requires persons whose acts cause harm to cover all of the costs, unless these acts were legal wrongs."  *Id.*

The City counters that Illinois law is unsettled on the question whether a claim for unjust enrichment invariably requires that the defendant had a duty to act, *see* Opp. 22 n.16 (citing *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1004 n.5 (N.D. Ill. 2017)), but that is beside the point.  Where, as here, a third party gratuitously undertakes to pay for a business's alleged "externalities," the third party has no cause of action against the business unless the business itself had an independent legal obligation to pay.  *See Local 734*, 196 F.3d at 823; *accord Goldstick v. ICM*

13

*Realty*, 788 F.2d 456, 467 (7th Cir. 1986) ("the doctrine of restitution does not make altruism a paying proposition").  Without an independent legal obligation to pay for its externalities, a business receives no benefit when someone else pays for them.

*State Street Bank & Trust Co. v. UAL Corp.*, 2004 WL 784891 (N.D. Ill. Apr. 9, 2004), is not to the contrary.  That case merely recognizes that a benefit may be conferred either by "add[ing] to the property of another" or saving "the other from expense or loss."  *Id.* at *2.  Distributors do not dispute that proposition.  But the City did not save Distributors from any "expense" that they were obligated to pay.  Distributors transacted business solely with the pharmacies, which received the medications they ordered and paid the agreed-upon price.  Neither party to that arms-length transaction was unjustly enriched.[13]

## VI.    THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

The City does not dispute that its civil conspiracy claim must be pled with particularity.  *See, e.g.*, *Smith v. BOC Grp. PLC*, 2001 WL 477237, at *6 (N.D. Ill. May 4, 2001) ("conspiracy to defraud must be pleaded with particularity").[14]  The City likewise does not dispute that "'participation in trade organizations and conferences' and 'industry organizations' is insufficient to allege an 'agreement to violate the law.'"  Opp. 24.  Instead, the City cites a handful of allegations purportedly pleading that Distributors "worked together as a united entity to inflate the

---

[13]   The City's citation to *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672 (Ill. 1989), is even further afield.  That case holds merely that a third party's payment to a defendant may be recovered where the plaintiff was entitled to the funds but the defendant "engaged in wrongful conduct in procuring [the] payment" from the third party.  *Id.* at 680.  Distributors received no payment that the City was entitled to receive.  *HPI* thus does nothing to establish that the City conferred a benefit on Distributors.

[14]   *See also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (affirming dismissal of conspiracy claim under Rule 9(b)); *Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.*, 2013 WL 3773373, at *5 (E.D. Mich. July 17, 2013) ("conspiracy claims must be pled with some degree of specificity").

quotas of opioids they could distribute and sell." *Id.* Distributors, however, play no role whatsoever in setting government quotas for opioids. Those quotas are set by the federal government based on information submitted by manufacturers alone.[15] Neither Distributors' routine business relations with manufacturers nor their (alleged) parallel, profit-seeking motive to "sell more opioids" establishes the sort of illicit agreement required to state a claim for civil conspiracy. *See Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 653 (N.D. Ohio 2012) (Polster, J.) ("routine business relationships, without more, are insufficient to establish a RICO claim"); *Burgess v. Abex Corp.*, 725 N.E.2d 792, 795 (Ill. App. Ct. 2000) ("Implicit agreement, at least an agreement implicitly shown by parallel conduct, is not sufficient to show a conspiracy."); *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 262 (Ill. 1999) ("basic economic principles dictate" that companies "will often act in a highly similar manner").[16]

For these reasons, and those set forth in the Pharmacy Defendants' *Summit County* reply, the City's civil conspiracy claim should be dismissed as to Distributors. *See* Dkt. 742 at Part VII.

## VII. THE DRUG DEALER LIABILITY ACT CLAIM SHOULD BE DISMISSED.

The City's repeated assertion that its claims have nothing to do with illegal drug use, *see, e.g.*, Opp. 16, cannot be reconciled with its DDLA claim. That inconsistency aside, the Opposition does nothing to refute the arguments in Distributors' opening brief. The City asserts, without citing any authority, that lawful prescription drugs distributed by those licensed to distribute them

---

[15] *See* 21 C.F.R. §§ 1303.21–23; *see generally* U.S. Dep't of Justice, DEA, Diversion Control Div., Quota Applications, https://www.deadiversion.usdoj.gov/quotas/ quota_apps.htm.

[16] To the extent that the City's conspiracy allegations are based on Distributors' purported efforts to "'influence state and federal governments,'" *see* Opp. 25 (quoting Compl. ¶ 94), they also fail for the additional reason that concerted efforts to influence government actions are immunized under the First Amendment. *See, e.g.*, *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017) (*Noerr Pennington* "protects efforts to influence governmental action through litigation and lobbying").

can be rendered "illegal" based on a distributor's regulatory non-compliance.  Opp. 35.  But that assertion is belied by the Act's definition of "illegal drug," which on its face does not encompass lawful prescription opioids distributed by those licensed to distribute them.[17]  The City also claims that the definition of "illegal drug market" does not require "clandestine" activity.  But that claim, too, ignores the Act's legislative intent:  "***Unlike the chain of distribution for legal products***, in which records identifying the parties to each transaction in the chain are made and shared among the parties, ***the distribution of illegal drugs is clandestine***.  Its participants expend considerable effort to keep the chain of distribution secret." 740 Ill. Comp. Stat. 57/10(7) ("Legislative findings").

## CONCLUSION

The City of Chicago's claims against Distributors should be dismissed with prejudice.

---

[17]  The City claims that prescription opioids must be illegal drugs because surely the Act is intended to reach "a street dealer" that distributes OxyContin.  Opp. 34 n.33.  Surely it does, but "a street dealer" is not licensed by the DEA to distribute OxyContin, as Distributors are, so the distribution of prescription opioids by street dealers is in violation of state law.  Plaintiffs' lawyers are fond of rhetoric likening licensed wholesale distributors to street drug dealers, but the two are not comparable.

Dated:  July 30, 2018

Respectfully submitted,


*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Corporation*
*and AmerisourceBergen Drug Corporation*


*/s/ Geoffrey Hobart*
Geoffrey Hobart
Mark Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*


*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order Number Four (Dkt. 485, May 22, 2018),

Distributors are permitted to file replies in support of their joint motions to dismiss totaling 90

pages across the following five local government cases set for briefing:

- *Summit County, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090;
- *City of Chicago, Illinois v. Cardinal Health, Inc., et al.*, No. 18-op-45281;
- *Cabell County Comm'n, West Virginia v. AmerisourceBergen Drug Corp. et al.*, No. 17-op-45053;
- *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, No. 18-op-4515;
- *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332;

This brief adheres to the limits set forth in Case Management Order Number Four, as the

combined reply briefing in those five cases is 89 pages.

*/s/ Ashley W. Hardin*
Ashley W. Hardin

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the

Court's ECF system to all counsel of record.

*/s/ Ashley W. Hardin*
Ashley W. Hardin

2