UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*<br>Case No. 17-op-45053-DAP | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**REPLY IN SUPPORT
OF DISTRIBUTORS' MOTION TO DISMISS
<u>SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

I. THE RICO CLAIM SHOULD BE DISMISSED. ................................................................ 1

II. THE COUNTY'S PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED. ................... 1

III. THE COUNTY'S NEGLIGENCE CLAIM SHOULD BE DISMISSED. ......................... 2

IV. THE COUNTY'S CLAIMS FAIL FOR ADDITIONAL REASONS. ............................... 4

    A. The Claims Fail for Lack of Proximate Cause .................................................... 4

    B. The County Cannot Recover the Costs of Municipal Services ........................... 5

    C. The Economic Loss Doctrine Bars Recovery. ..................................................... 7

V. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. ................................ 8

VI. THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. .................................. 8

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ............................................... 9

*AttorneyFirst, LLC v. Ascension Entm't, Inc.*, 2007 WL 2733349 (4th Cir. Sept. 20, 2007) ........................................................................................................................ 7

*Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463 (S.D. W. Va. 2013) ............................................................ 8

*Good v. Am. Water Works Co.*, 2015 WL 3540509 (S.D. W. Va. June 4, 2015) ........................... 7

*SilverHorse Racing, LLC v. Ford Motor Co.*, 2016 WL 7137273 (M.D. Fla. Apr. 27, 2016) ................................................................................................................................. 9

*Talley v. Danek Med., Inc.*, 179 F.3d 154 (4th Cir. 1999) ............................................................. 3

*Webb v. Appalachian Power Co.*, 2011 WL 1636944 (S.D. W. Va. Apr. 29, 2011) ...................... 7

*Wenmoth v. Duncan*, 2009 WL 2707579 (N.D. W. Va. Aug. 26, 2009), *aff'd*, 382 F. App'x 271 (4th Cir. 2010) ................................................................................................ 9

## STATE CASES

*Absure, Inc. v. Huffman*, 584 S.E.2d 507 (W. Va. 2003) (per curiam) ......................................... 8

*Aikens v. Debow*, 541 S.E.2d 576 (W. Va. 2000) ..................................................................... 5, 7

*Arbaugh v. Bd. of Educ., Cty. of Pendleton*, 591 S.E.2d 235 (W. Va. 2003) ................................ 3

*Baker v. Smith & Wesson Corp.*, 2002 WL 31741522 (Del. Super. Ct. Nov. 27, 2002) ................................................................................................................................... 7

*Brandon Twp. v. Jerome Builders, Inc.*, 263 N.W.2d 326 (Mich. Ct. App. 1977) ........................ 2

*City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004) .......................................... 7

*Jackson v. Putnam Cty. Bd. of Educ.*, 653 S.E.2d 632 (W. Va. 2007) (per curiam) ...................... 5

*Marcus v. Staubs*, 736 S.E.2d 360 (W. Va. 2012) ........................................................................ 5

*People v. ConAgra Grocery Prod. Co.*, 227 Cal. Rptr. 3d 499 (Cal. Ct. App. 2017) ................................................................................................................................... 2

*Prudential Ins. Co. of Am. v. Couch*, 376 S.E.2d 104 (W. Va. 1988) ........................................... 8

*Robertson v. LeMaster*, 301 S.E.2d 607 (W. Va. 1983) ................................................................4

*Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616 (W. Va. 1985)..........................................1

*State v. Schnectady Chems., Inc.*, 479 N.Y.S.2d 1010 (N.Y. App. 1984) .......................................2

*State v. St. Clair*, 355 S.E.2d 418 (W. Va. 1987) .......................................................................5, 6

*Walker Cty. v. Tri-State Crematory*, 643 S.E.2d 324 (Ga. Ct. App. 2007) .....................................6

*Webb v. Sessler*, 63 S.E.2d 65 (W. Va. 1950).................................................................................5

*Witteried v. City of Charles Town*, 2018 WL 2175820 (W. Va. May 11, 2018).............................2

### OTHER AUTHORITIES

*Dealer Behind Huntington's 26 Overdoses Sentenced to 18 Years in Prison*,
   Herald-Dispatch, Apr. 17, 2017, http://www.herald-
   dispatch.com/_recent_news/dealer-behind-huntington-s-overdoses-sentenced-
   to-years-in-prison/article_4e22304c-2398-11e7-bcd1-97ce0311d81c.html..............................1

W. Va. Code § 7-1-3kk ....................................................................................................................6

W. Va. Code § 55-7-9 ......................................................................................................................3

The County's claims fail as a matter of law, and its contrary arguments are unavailing.

## I.     THE RICO CLAIM SHOULD BE DISMISSED.

For the reasons explained in Distributors' prior submissions, the County's RICO claim should be dismissed.  *E.g.*, Summit Reply, Dkt. 744 at Part I; Monroe Reply at Part II.

## II.    THE COUNTY'S PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED.

The County does not dispute that the West Virginia Supreme Court of Appeals has ***never*** recognized a public nuisance claim arising out of a defendant's distribution of a lawful ***product***. *See* Cabell Br., Dkt. 575-1 ("Br.") at 2.  Quoting language from *Sharon Steel Corp. v. City of Fairmont* as defining a nuisance as "anything which interferes with the rights of a citizen, either in person, property, the enjoyment of his property, or his comfort," 334 S.E.2d 616, 621 (W. Va. 1985), the County asks the Court to ignore the fact that *every* example given to illustrate this broad definition is *property*-based.  Opp. 4.

Also, like Summit County and the City of Chicago, the County alleges only a significant interference with public ***health***, which is not the same as an interference with a public ***right*** because the colloquial use of "public health" is not synonymous with the legal meaning of "public right," and not all issues of public health are matters of public right.  The prevalence of obesity in the general population and, as the population ages, the incidence of dementia are public health concerns, but they do not implicate public rights.  Summit Reply, at Part II.B.1; Chicago Reply at Part I; Monroe Reply at Part III.B.[1]

---

[1]   The County claims that surely there is a "'public right' to be free from th[e] nightmare" of the "opioid crisis," citing as an example the tragedy of 26 overdoses in one of its towns in one day.  Opp. 1. Those overdoses were caused by illegal heroin laced with fentanyl, not prescription opioids, and the street dealer who sold that heroin has been sentenced to 18 years in prison.  *See Dealer Behind Huntington's 26 Overdoses Sentenced to 18 Years in Prison*, Herald-Dispatch, Apr. 17, 2017, http://www.herald-dispatch.com/_recent_news/dealer-behind-huntington-s-overdoses-sentenced-to-years-in-prison/article_4e22304c-2398-11e7-bcd1-97ce0311d81c.html.  Even assuming that this had anything to do with the conduct of Distributors—who delivered FDA-approved prescription drugs to

Finally, for the reasons stated in Distributors' opening brief, the County cannot recover as "abatement" the broad category of costs that it seeks.  Br. at Part II.  "An abatement order is an equitable remedy, while damages are a legal remedy.  An equitable remedy's sole purpose is ***to eliminate the hazard that is causing prospective harm*** to the plaintiff."  *People v. ConAgra Grocery Prod. Co.*, 227 Cal. Rptr. 3d 499, 569 (Cal. Ct. App. 2017).  Accordingly, the County may not recover the costs of its public services or of treating addiction for an indefinite period into the future as costs of abatement.  The authority cited by the County is not to the contrary.[2]

### III.  THE COUNTY'S NEGLIGENCE CLAIM SHOULD BE DISMISSED.

The County's argument regarding negligence is flawed in three principal respects.  First, while Distributors undeniably have regulatory obligations pursuant to state and federal law, the law is clear that (i) only the federal and state governments can sue to enforce them and (ii) there is no (express or implied) private right of action.  Br. 5–7; *see also* Summit Reply, Dkt. 744 at Part III.B and n.21.  The County argues that it relies on state and federal regulations, not as establishing Distributors' duties, but to "help establish the standard of care owed by Defendants under the common law."  Opp. 18.[3]  This is a distinction without a difference.  When the Opposition asserts that, "[i]n West Virginia, a violation of a statute is *prima facie* evidence of negligence," *id.*, it simply disregards clear West Virginia law holding that a negligence *per se*

---

licensed retailers—the  County does not cite (and could not cite) even a single case holding that there is a "public right" to be free from such criminal activity.

[2]  *See, e.g.*, *Witteried v. City of Charles Town*, 2018 WL 2175820, at *3 (W. Va. May 11, 2018) (allowing recovery of costs of demolition of building determined to be public nuisance); *Brandon Twp. v. Jerome Builders, Inc.*, 263 N.W.2d 326 (Mich. Ct. App. 1977) (allowing recovery of costs of repairing dam as restitution for abating public nuisance); *State v. Schnectady Chems., Inc.*, 479 N.Y.S.2d 1010 (N.Y. App. 1984) (allowing abatement costs for "cleaning up the site" contaminated by chemical wastes).

[3]  In fact, the Complaint cites statutes and regulations not to "help establish" a common law standard of care but for the "duties" they allegedly create.  Compl. ¶ 81 (Distributors have a "fundamental duty … to detect and warn of diversion of dangerous drugs"); *id.* ¶ 481 (similar).

2

claim based on violation of a statute is not cognizable *if the relevant statute lacks a private right of action*. *See Talley v. Danek Med., Inc.*, 179 F.3d 154, 158 (4th Cir. 1999); Br. 7 n.7.[4]

To be sure, the County can sue in negligence if there is a pre-existing common law duty that parallels the statutory or regulatory duty (and that duty runs to the County). The County's problem is that it cannot identify a preexisting, parallel common law duty to report and halt shipment of suspicious orders because such a duty has never existed at common law—a duty to report *to a government agency* is inherently a creature of statute and regulation. The Opposition insists that it is "irrelevant" that "the duty to monitor and report suspicious orders was unknown" under common law, because "Defendants were under the obligation to use reasonable care just like everyone else in West Virginia." Opp. 16. But if the general "obligation to use reasonable care" had ever been construed to impose the duty the County imagines, it would be a simple matter for the County to cite a West Virginia case recognizing it, yet the Opposition cites none.

Second, the question is not whether Distributors owed a duty to someone, but whether they owed a duty to the County. Br. 7–8. "Defendants owed a duty to the County *directly*," it claims, because the harm the County purportedly suffered was "foreseeab[le]." Opp. 14, 16. But the Complaint (and specifically the paragraphs the Opposition cites) pleads no facts that would support the conclusion that the County's alleged injuries were a foreseeable consequence of Distributors' alleged conduct. *See* Summit Reply, Dkt. 744 at 26–27.[5] Foreseeability, moreover,

---

[4] Cases applying W. Va. Code § 55-7-9 have similarly acknowledged that "[w]henever a violation of a statute is the centerpiece of a theory of liability, the question arises whether the statute creates an implied private right of action." *See, e.g.*, *Arbaugh v. Bd. of Educ., Cty. of Pendleton*, 591 S.E.2d 235, 239 (W. Va. 2003).

[5] The Opposition also asserts that even if "[the County] were not owed [a] duty directly, West Virginia law is replete with examples of cases in which a duty running to a third party can give rise to liability." Opp. 16. The cited cases, including *Robertson*, turn on conduct by defendants *toward the parties to whom they owed duties* that foreseeably caused harm to third parties. The Complaint pleads no facts supporting an argument that Distributors' conduct toward the DEA or the West Virginia BOP foreseeably gave rise to the County's purported injuries. *See, e.g.*, Summit Reply, Dkt. 744 at 2627.

3

is not the sole determinant of duty. "[B]eyond the question of foreseeability, the existence of duty also involves policy considerations underlying the core issue of the scope of the legal system's protection." *Robertson v. LeMaster*, 301 S.E.2d 607, 612 (W. Va. 1983). One such consideration is "the consequences of placing that burden on the defendant." *Id.* Distributors play a vital role in ensuring that the medications doctors prescribe are available at the pharmacy when patients need them. Holding that Distributors owe a duty beyond those imposed by the comprehensive federal and state regulatory framework that governs controlled substances would put at risk that reliable availability. For this reason, it is the charge of state and federal regulators to determine and enforce Distributors' duties, not the courts.

Finally, the County asserts that its allegations against Distributors "do not rely on the existence of criminal conduct." Opp. 17. But diversion is, by definition, illegal, and when the County looks to cite an example of how the opioid epidemic has affected it, it cites the overdosing of 26 people on *illegal* heroin laced with fentanyl. *See supra* n.1. And, if the County's claim is not predicated on diversion, then it is predicated on injuries arising from the *lawful* prescription and use of opioids, which do not give rise to "suspicious" orders and which Distributors have no duty to prevent. In other words, if the County's claim is that manufacturers deceptively marketed the drugs and that doctors were duped into over-prescribing them, then doctors prescribed the drugs in the exercise of well-intentioned professional judgment; pharmacies acted legitimately in dispensing the prescribed medications; and Distributors acted legitimately in filling the pharmacy orders. *See* Chicago Reply at 1, 4.

## IV. THE COUNTY'S CLAIMS FAIL FOR ADDITIONAL REASONS.

### A. The Claims Fail for Lack of Proximate Cause.

Like Summit County and the City of Chicago, the County barely attempts to explain how Distributors' conduct could be the proximate cause of the opioid epidemic, much less injury to

4

the County. For the reasons explained in those replies, the County's claims should be dismissed. Summit Reply, Dkt. 744 at Part IV; Chicago Reply, Dkt. ___ at Part III.A.

The County's suggestion that mere foreseeability creates a fact question regarding proximate cause ignores West Virginia law. *Aikens v. Debow*, 541 S.E.2d 576, 583 (W. Va. 2000) (mere "logical connection" between defendant's conduct and harm cannot support liability").[6] Where, as here, the defendant's conduct is too remote from the harm to support liability—even if the harm is logically foreseeable—dismissal is required as a matter of law. The County, quoting *Marcus v. Staubs*, argues that acts of third parties do not break the chain of causation unless those acts "constitute[] a new effective cause and operate[] independently of any other act, making it and it only, the proximate cause of the injury." 736 S.E.2d 360, 372 (W. Va. 2012). But that is exactly what happens when a doctor prescribes opioid medications without a legitimate medical purpose, when a pharmacy dispenses opioids without a valid prescription, or when an individual obtains a prescription on false pretenses or diverts opioids into illicit channels. All three actions are not just independent, but illegal. Distributors are too remote, as a matter of law.

### B. The County Cannot Recover the Costs of Municipal Services.

The County offers no meaningful response to *State v. St. Clair*, 355 S.E.2d 418 (W. Va. 1987), in which West Virginia's highest court barred recovery for the costs of municipal services. The County describes *St. Clair* as though it were limited to cases involving criminal fines, but nothing in the opinion permits it to be read so narrowly.[7] Rather, the case concerned

---

[6] *See also Jackson v. Putnam Cty. Bd. of Educ.*, 653 S.E.2d 632, 642 (W. Va. 2007) (per curiam) (board of education's failure to provide transportation to school function not proximate cause of student's car accident returning from function); *Webb v. Sessler*, 63 S.E.2d 65, 69 (W. Va. 1950) (airport owners' allegedly negligent siting of airport near two highways too remote from airplane crash into car on highway to be the proximate cause).

[7] The County's attempts to dismiss *St. Clair* focus on several irrelevant details. First, *St. Clair* is not

5

expenditures for housing a prisoner in a county jail, which, like those the County alleges here, were "a public charge on the county." *Id.* at 420. According to the court, "[a]llowance and recovery of costs was unknown at common law, and therefore only costs specifically allowed by statute may be recovered." *Id.* By statute, the county was entitled only to "expenses incident to the prosecution" of a criminal offense, which "do not include charges for room and board in the county jail." *Id.* Without any statutory basis for recovery, the Supreme Court reversed the trial court's award. *Id.* The same result is warranted here, where the County has likewise failed to identify a statutory basis for its claims.

The County argues that there is an exception for public nuisance claims. First, the controlling *St. Clair* decision does not suggest a public nuisance exception to the common law rule.[8] Second, if accepted, the exception would "swallow[] the rule, because many expenditures for public services could be re-characterized by skillful litigants as expenses incurred in abating a public nuisance." *Walker Cty. v. Tri-State Crematory*, 643 S.E.2d 324, 328 (Ga. Ct. App. 2007). The court should reject the County's reliance on this purported exception. S*ee* Chicago Reply at Part III.B.[9]

The County also asserts that the doctrine does not apply where the plaintiffs alleges "a repeated course of conduct on defendants' part." Opp. 38. But numerous courts have rejected

---

principally about "criminal fines," Opp. 37, but about an everyday cost (housing a prisoner) that citizens expect the government to pay. Second, the opinion contains no suggestion that the Supreme Court construed the statute strictly based on the rule of lenity, Opp. 37 & n.43, and in any event, the Court construed the statute only after announcing the threshold common law rule that recovery of costs is not allowed absent statutory authorization. *St. Clair*, 355 S.E.2d at 631.

[8] The County strains to divine statutory authorization in a provision authorizing it to take "actions for the elimination of hazards to public health and safety and to abate … a public nuisance." W. Va. Code § 7-1-3kk. Again, abatement is an equitable remedy. *See* p. 2, *supra*. But nothing in that provision purports to abrogate the municipal cost recovery rule or to authorize money damages in the form of increased municipal expenses.

[9] Even if this exception existed, the County cannot sneak all costs through the backdoor of nuisance, because recovery under public nuisance is limited to "abatement costs." *Supra* Part II.

6

that distinction "as a meaningful basis for abrogating the [municipal cost recovery] rule."[10] This Court should do the same.

Finally, the County is wrong that there is a "trend" of cases permitting recovery of municipal costs. Opp. 36. The handful of cases and law review articles the County cites as support are outliers. The vast majority of jurisdictions to consider this question do not allow recovery. *See* Chicago Br., Dkt. 571-1 at 19 n.7. More importantly, these minority rulings are irrelevant in West Virginia in light of *St. Clair*.

### C. The Economic Loss Doctrine Bars Recovery.

In *Aikens v. Debow*, West Virginia's highest court held that the plaintiff in a tort case could not recover for "economic damages" unless "a special relationship exists between the plaintiff and the alleged tortfeasor." 541 S.E.2d 576, 590 (W. Va. 2000). The County does not assert that it has a "special relationship" with Distributors; it alleges no relationship at all, not even a contractual one. Instead, the County argues that *Aikens* should be limited to cases involving "economic loss from an interruption in commerce." Opp. 39. But there is no principled basis for adopting that limitation, which has not been adopted by courts applying *Aikens*.[11] For this additional reason, the County's negligence claim should be dismissed.

---

[10] *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1146–47 (Ill. 2004) ("we reject the distinction between single, discrete disasters, such as fires and explosions, and the unfortunately frequent incidents of handgun violence"); *see Baker v. Smith & Wesson Corp.*, 2002 WL 31741522, at *6 (Del. Super. Ct. Nov. 27, 2002) ("[T]here is little basis for distinguishing between 'normal' municipal costs and other municipal costs. A cost is either a municipal cost or it is not.").

[11] *See, e.g.*, *AttorneyFirst, LLC v. Ascension Entm't, Inc.*, 2007 WL 2733349, at *1 (4th Cir. Sept. 20, 2007) (citing *Aikens* as "holding that in the absence of personal or property damage or a contractual relationship, a party alleging negligence resulting only in economic loss must establish a special relationship between the plaintiff and the tortfeasor"); *Good v. Am. Water Works Co.*, 2015 WL 3540509, at *3 (S.D. W. Va. June 4, 2015) (similar); *Webb v. Appalachian Power Co.*, 2011 WL 1636944, at *4 (S.D. W. Va. Apr. 29, 2011) (similar).

7

## V. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The County concedes that it lacks a direct, transactional relationship with Distributors and mistakenly contends that West Virginia law does not require such a relationship. Opp. 26. The courts have made clear that it does. *See* Br. 8; *see also, e.g.*, *Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 475 (S.D. W. Va. 2013) (dismissing unjust enrichment claim that did "not satisfy the 'direct relation' test"). Contrary to the County's suggestion, the court in *Absure, Inc. v. Huffman*, 584 S.E.2d 507 (W. Va. 2003) (per curiam), did not hold that third parties may assert free-floating claims for unjust enrichment; it held that when a buyer was unjustly enriched in its direct, transactional relationship with a seller, and "a third party connected with [the] transaction … satisf[ied the] obligation of the unjustly enriched party," the third party could recover from the buyer. *Id.* at 511. That case is inapposite here, where the County seeks restitution for public services it allegedly provided to its residents, who themselves had no direct, transactional relationship with Distributors.

For the reasons explained in the *Chicago* reply, Distributors have no obligation to pay for "negative externalities." *See* Chicago Reply at Part V; *Prudential Ins. Co. of Am. v. Couch*, 376 S.E.2d 104, 109 (W. Va. 1988) (holding that unjust enrichment claim against "nonpayees" fails unless the plaintiff's "payment satisfied an obligation that was the responsibility of [the defendant]").

## VI. THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

The County does not dispute that the elements of civil conspiracy include (1) the commission of an intentional tort (negligence is not sufficient), and (2) an intent to engage in unlawful conduct through concerted action. *See* Opp. 28–32. Nor does the County dispute that, where the underlying tort sounds in fraud, the circumstances of the fraud must be pled with

8

specificity.[12] The County's assertion that it met these standards, however, does not withstand scrutiny *as to Distributors*. The Complaint alleges that Distributors failed to report and halt suspicious orders. But even if that were true, and even if the alleged conduct were tortious, it still would not support a conspiracy claim because a regulatory reporting failure is not an *intentional* tort. *See* Summit Reply, Dkt. 744 at 1–2, 26–28, 31–32.[13]

The County also asserts that "Defendants[] combined efforts to inflate the opioid quotas." Opp. 31. But that assertion is wholly conclusory and implausible *as to Distributors*, who play no role in the quota-setting process. *See* Chicago Reply at Part VI. Finally, the County argues that Defendants acted "against their commercial interests in not reporting the unlawful distribution practices of their competitors." Opp. 31. But the Opposition fails to identify any well-pled factual allegations indicating that *Distributors* had access to information that would enable them to determine what orders were filled by their competitors or whether those orders were "suspicious." There is no reason to believe that any Distributor had this closely-guarded information about its competitors—information that, when reported to DEA, is treated by the agency as confidential.[14]

---

[12] Opp. 29 (conceding that "fraud" must be "stated with particularity"); *see Wenmoth v. Duncan*, 2009 WL 2707579, at *5 (N.D. W. Va. Aug. 26, 2009) (plaintiff must "come forward with *specific* [allegations] that each member of the alleged conspiracy shared the same conspiratorial objective," going beyond "mere speculation and conjecture"), *aff'd*, 382 F. App'x 271 (4th Cir. 2010).

[13] The Opposition points to an amicus brief filed by Distributors' trade association, Opp. 31 (citing Compl. ¶¶ 557–558), but participation in a trade association does not establish a conspiracy, and the joint filing of an amicus brief is protected First Amendment activity that cannot give rise to a conspiracy claim. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) ("it was well-settled before *Twombly* that participation in trade organizations provides no indication of conspiracy"); *SilverHorse Racing, LLC v. Ford Motor Co.*, 2016 WL 7137273, at *2–3 (M.D. Fla. Apr. 27, 2016) (discussing rule that "[j]oint efforts to influence public officials do not violate the antitrust laws").

[14] *See, e.g.*, United States of America's Brief in Support of Objections to Disclosure of ARCOS Data, Dkt. 717 at 4 ("[T]he ARCOS data contains law enforcement sensitive and Privacy Act information, and is treated as trade secrets and confidential business records … .").

Dated:  July 30, 2018                                       Respectfully submitted,

*/s/ Robert A. Nicholas*                                    */s/ Enu Mainigi*
Robert A. Nicholas                                          Enu Mainigi
Shannon E. McClure                                          F. Lane Heard III
**REED SMITH LLP**                                          Steven M. Pyser
Three Logan Square                                          Ashley W. Hardin
1717 Arch Street, Suite 3100                                **WILLIAMS & CONNOLLY LLP**
Philadelphia, PA 19103                                      725 Twelfth Street, N.W.
Tel: (215) 851-8100                                         Washington, DC 20005
Fax: (215) 851-1420                                         Tel: (202) 434-5000
rnicholas@reedsmith.com                                     Fax: (202) 434-5029
smcclure@reedsmith.com                                      emainigi@wc.com
                                                            lheard@wc.com
*Counsel for AmerisourceBergen Corporation*                 spyser@wc.com
*and AmerisourceBergen Drug Corporation*                    ahardin@wc.com

*/s/ Geoffrey Hobart*                                       *Counsel for Cardinal Health, Inc.*
Geoffrey Hobart
Mark Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order Number Four (Dkt. 485, May 22, 2018), Distributors are permitted to file replies in support of their joint motions to dismiss totaling 90 pages across the following five local government cases set for briefing:

- *Summit County, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090;
- *City of Chicago, Illinois v. Cardinal Health, Inc., et al.*, No. 18-op-45281;
- *Cabell County Comm'n, West Virginia v. AmerisourceBergen Drug Corp. et al.*, No. 17-op-45053;
- *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, No. 18-op-4515;
- *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332;

This brief adheres to the limits set forth in Case Management Order Number Four, as the combined reply briefing in those five cases is 89 pages.

*/s/ Ashley W. Hardin*
Ashley W. Hardin

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Ashley W. Hardin*
Ashley W. Hardin