UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*<br>Case No. 17-op-45053-DAP | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**REPLY IN SUPPORT
OF DEFENDANT CARDINAL HEALTH, INC.'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................ 2

I.  THE COUNTY'S CLAIMS ARE BARRED BY RES JUDICATA. ..................................... 2

   A.  The Claims Are Based on the Same Allegations. ............................................................. 2

   B.  The County Is In Privity With The State. .......................................................................... 3

      1.  The virtual representation doctrine establishes privity. ................................................. 3

      2.  The State's exercise of *parens patriae* authority establishes privity. ........................... 5

II.  THE STATE DIRECTLY RELEASED SOME OF THE COUNTY'S CLAIMS. ................ 7

III.  PAROL EVIDENCE SHOULD NOT BE CONSIDERED. ................................................. 8

CONCLUSION ............................................................................................................................. 8

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982) ............................5

*Badgley v. City of New York*, 606 F.2d 358 (2d Cir. 1979) ...............................................................6

*City of New York v. Beretta*, 315 F. Supp.2d 256 (E.D. N.Y. 2004) ...........................................6, 7

*Hamilton v. Beretta USA Corp.*, 222 F.3d 36 (2d Cir. 2000) ............................................................6

*Keith v. Aldridge*, 900 F.2d 736 (4th Cir. 1990) ................................................................................2

*Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464 (10th Cir. 1993) ....................................7

*West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169 (4th Cir. 2011) ....................5, 6

*Wood County Airport Authority v. Crown Airways, Inc.*, 919 F. Supp. 960
     (S.D. W. Va. 1996) .......................................................................................................................8

## **STATE CASES**

*Beahm v. 7 Eleven, Inc.*, 672 S.E.2d 598 (W. Va. 2008) ......................................................1, 2, 3, 4

*Blake v. Charleston Area Medical Center, Inc.*, 198 S.E.2d 41 (W. Va. 1997) ..............................5

*City of Cincinnati ex rel. Crotty v. City of Cincinnati*, 361 N.E.2d 1340
     (Ohio 1977) ...................................................................................................................................5

*Galanos v. National Steel Corp.*, 358 S.E.2d 452 (W. Va. 1987) .................................................3, 4

*Greene v. Art Institute of Chicago*, 147 N.E. 415 (Ill. App. 1st 1957) ............................................5

*Hamilton v. Beretta USA Corp.*, 96 N.Y.2d 222 (2001) ...................................................................6

*Larew v. Monogahela Power Co.*, 487 S.E.2d 348 (W. Va. 1997) .............................................1, 8

*Morrisey v. West Virginia Office of Disciplinary Counsel*, 764 S.E.2d 769
     (W. Va. 2014) ................................................................................................................................8

*People v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192 (N.Y. App. Div. 2003) .....................................6

*Rowe v. Grapevine Corp.*, 527 S.E.2d 814 (W. Va. 1999) ...............................................................5

*Shafi v. St. Francis Hosp. of Charleston*, 396 S.E.2d 181 (W. Va. 1990) .......................................8

## OTHER AUTHORITIES

Restatement (Second) of Judgments, *Introduction* (1982) .............................................................5

Restatement (Second) of Judgments § 41 (1982) ...........................................................................5

iii

"A plaintiff cannot simply escape … *res judicata* … because [it] was not formally joined as a party in the prior litigation." *Beahm v. 7 Eleven, Inc.*, 672 S.E.2d 598, 602 (W. Va. 2008) (per curiam). Yet that is precisely what the County argues here.[1] It lodges several arguments seeking to show that the State and the County do not have a "mutual … relationship to the same rights" such that the County's interests were not "adequately represented" by the State. *Id.*; *see* Opp. 5–12. But none of those arguments comes to grips with the fundamental reason that there is privity in this case: Both the State's claims (covered by the Release) and the County's claims (alleged here) are derivative of the same personal injury claims.[2] There is privity as a matter of law, not because the State has express constitutional or statutory authority to bring claims on behalf of the County, but because the derivative nature of the claims means that the County and State have a "mutual … relationship to the same rights" such that the County's interests were "adequately represented" by the State. *Beahm*, 672 S.E.2d at 602.

The County repeatedly points to parol evidence concerning the negotiations leading up to the agreed-upon Release. Opp. 2–3, 11, 14. But that history is irrelevant. As the County finally acknowledges, Opp. 15, parol evidence is inadmissible where, as here, the pertinent contract language is unambiguous. *Larew v. Monogahela Power Co.*, 487 S.E.2d 348, 352 (W. Va. 1997). Because the plain language of the Release shows that the State's interests were the same as those of the County in this case, the *res judicata* doctrine bars the County's claims.

---

[1] Unless otherwise noted, all capitalized terms and acronyms are defined in Cardinal Health's Motion to Dismiss Second Amended Complaint (Dkt. #579-1) ("Br."); emphasis in quotations is added; and internal quotation marks and alterations are omitted.

[2] *See* Summit Br., Dkt. 491-1 at 14–16; Cabell Br., Dkt. 575-1 at 2, 11. For this reason, the premise of nearly all of the County's arguments—that the State lacks constitutional authority to bring claims on the County's behalf—is beside the point. *See* Opp. 5–7, 10.

**ARGUMENT**

**I.      THE COUNTY'S CLAIMS ARE BARRED BY RES JUDICATA.**

The *res judicata* doctrine applies when: (1) there was a final judgment on the merits in the first lawsuit; (2) the current lawsuit asserts claims identical to those in the first lawsuit, or claims that could have been resolved in that action, had they been presented; and (3) the current lawsuit involves the same parties or persons in privity with those parties.  *Beahm*, 672 S.E.2d at 601–02.  The County does not dispute that the first condition is met here, but contends that the other two are not.  The County is mistaken in both respects.

**A.      The Claims Are Based on the Same Allegations.**

The County asserts that its claims are not barred because they are not based on the same causes of action as those of the State.  That plainly is not true.  The fact is—and the County does not show otherwise—that both the State and the County make factual allegations that essentially are the same.  Both allege that (i) Cardinal Health flooded the state and county with such large amounts of pills that it should have known that the drugs were being diverted and also that (ii) Cardinal Health failed to monitor and report suspicious pharmacy orders for opioid medications. *See* Br. at 5–6.  These common factual allegations, in turn, support common causes of action for public nuisance, negligence, and unjust enrichment, as well as the County's new causes of action for RICO and civil conspiracy.  All of the causes of action asserted by the County therefore are barred because they arise out of "the same … series of transactions" that were the subject of the State's lawsuit.  *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) (explaining that under the "transactional approach, … the appropriate inquiry is whether the new claim arises out of [the] same transaction or series of transaction as the claim resolved by the prior judgment").

Given this common factual foundation, the County offers no reason why its claims could not "have been resolved, had [they] been presented, in the prior action," which is the test for *res*

*judicata* purposes. *Beahm*, 672 S.E.2d at 604. Without any support, the County asserts that it is "incumbent upon" the defendant to have joined the subsequent party in the initial litigation. Opp. at 13. That plainly is not the law. *See Beahm*, 672 S.E.2d at 604.

### B. The County Is In Privity With The State.

The County devotes the bulk of its Opposition to arguing that it is not in privity with the State. *See* Opp. 5–12. But it does not address the fact that both of the State's claims (covered by the Release) and the County's claims (alleged here) derive from the personal injury claims that could be brought by individual County residents. The County and State therefore have a "mutual … relationship to the same rights" such that the County's *interests*—not its alleged injuries— were "adequately represented" by the State. *Beahm*, 672 S.E.2d at 602. The County's focus on the fact that its alleged injuries/costs are different from the State's is misplaced because that is typically true in *res judicata* cases involving privity between different plaintiffs. *See, e.g.*, *id.* at 603, 604 (barring claims by subsequent plaintiffs where their "interests" were "decidedly the same" as the initial plaintiffs even though the "damages in the two cases [were] different").

#### 1. The virtual representation doctrine establishes privity.

The County is in privity with the State by way of the "virtual representation" doctrine, which bars re-litigation of a claim "that has once been adequately tried by a person sharing a **substantial identity of interests** with a nonparty." *Id.* at 603. The doctrine does not require a perfect identity of interests, but a "substantial" identity.

The County cites *Galanos v. National Steel Corp.*, 358 S.E.2d 452 (W. Va. 1987), for the proposition that the virtual representation doctrine applies in only three circumstances not

3

present here. Opp. 10–11.³ But *Galanos* did not limit the doctrine to those three circumstances; it listed them as examples of recognized applications of the doctrine, distinct from the "radical" theory of virtual representation sought in *Galonos*, which would have "equat[ed] the interests of two or more persons who, by happenstance, suffer[ed] injury in a common mishap" (an explosion at their place of work). 358 S.E.2d at 454–55. The court rejected that theory, holding that the first person's lawsuit, seeking recovery for his own injuries, did not amount to "virtual representation" of the second person, who later sought recovery for his own injuries. *Id.* at 455.

That is far a cry from the County' relationship to the State. Unlike the different personal injuries at issue in *Galanos*, the claims alleged by the County and the State derive from the same injury—namely, the personal injuries (in the form of addiction) allegedly suffered by County residents.⁴ The claims also would "advance substantially the same proof in both cases." *Beahm*, 672 S.E.2d at 603 (the parties were "injured by the same release of gasoline" and rely on "the very same fact witnesses, documents, and exhibits"). The only difference is one of scale. The State's claims are derivative of personal injuries suffered by residents of the entire state; the County's claims, of personal injuries suffered by its residents (who are, of course, also residents of the State). The State's interest in the injuries suffered by its residents therefore completely encompasses the County's interest. It follows that the State and the County shared a "substantial identity of interests" in the State's lawsuit against Cardinal Health. *Id.* Because the State already has "adequately" litigated those interests, the County was in privity with the State. *Id.*

---

3   The County asserts that the doctrine applies only where a nonparty "actively participated in and exercised control over the conduct of the prior litigation"; "impliedly consented to abide by a prior judgment"; or engaged in "deliberate maneuvering or manipulation in an effort to avoid the preclusive effects of a prior judgment." Opp. 10–11.

4   Summit Br. 14–16; Cabell Br. 2, 11. In this way, the State and County are like third-party payors (only, unlike insurers, without contractual subrogation rights).

## 2. The State's exercise of *parens patriae* authority establishes privity.

The County also is in privity with the State because the State sued, and settled with, Cardinal Health in its *parens patriae* capacity. Br. 8. Indeed, the State expressly released all claims that "the State has asserted or could have asserted … in its *parens patriae* capacity." Release ¶ 1. This language plainly shows the State was litigating in a representative capacity.

A plaintiff is bound by a judgment if it has "a legal relationship that is derivative from one who was a party" to that judgment "independent of the litigation leading to the judgment." Restatement (Second) of Judgments, *Introduction* at 1 (1982).[5] Such a relationship exists where a public official, such as an Attorney General, "ha[s] authority to maintain … litigation on behalf of individuals or a collective public interest." *Id.* § 41, cmt. d. Thus, "[w]here the interest to be protected is one held by members of the public at large, an action by a public official [o]n behalf of that interest" is "preemptive of" constituents' remedies such that "preclusive effect[]" is "given to a judgment in an action involving the official." *Id.* § 41, reporter's note on cmt. d.[6]

The State's prior *parens patriae* litigation meets that standard. The *parens patriae* doctrine permits a state to bring claims to protect "quasi-sovereign" interests of the public, such as "the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982); *see also West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 172 (4th Cir. 2011) (recognizing

---

[5] *See also* Restatement (Second) of Judgments § 41 (collecting cases); *Blake v. Charleston Area Medical Center, Inc.*, 198 S.E.2d 41, 49 (W. Va. 1997) (relying on the Restatement).

[6] *See, e.g.*, *Rowe v. Grapevine Corp.*, 527 S.E.2d 814, 826 (W. Va. 1999) ("[J]udgment in an action in which a government agency or officer represents private individuals is binding on those individuals."); *City of Cincinnati ex rel. Crotty v. City of Cincinnati*, 361 N.E.2d 1340, 1341 (Ohio 1977) ("[A] judgment for or against a governmental body … is binding and conclusive as res judicata … with respect to matters adjudicated which are of general and public interest."); *Greene v. Art Institute of Chicago*, 147 N.E. 415, 418 (Ill. App. 1st 1957) (holding that "a member of the general public" was "properly represented" in "former proceedings by the Attorney General" that "represent[ed] the public").

that the State's exercise of *parens patriae* is "intended to vindicate quasi-sovereign interests and the individual interests of its citizens"). Because a state's *parens patriae* claims seek to vindicate its citizens' interests and redress the public harm implicated by those interests, a judgment binds those who would seek to do the same, at least where, as here, their rights "are derivative" of the state and "subject to change by the laws of that state" such that they "cannot exceed those of [the state] itself." *Badgley v. City of New York*, 606 F.2d 358, 364–65 (2d Cir. 1979).

This principle controls here. The County's claims represent a subset of the State's *parens patriae* claims that sought to redress public harm. Insofar as they are derivative of personal-injury claims that could be brought by County residents, the claims are coextensive with the State's claims to "vindicate" its resident's "individual interests," *McGraw*, 646 F.3d at 172, and the County therefore is in privity with the State.

The County cites *City of New York v. Beretta*, 315 F. Supp.2d 256 (E.D. N.Y. 2004), for the proposition that "privity does not exist" where "the claims of two overlapping governmental entities are involved." Opp. 9. But that federal court decision—which disdained and refused to follow New York state law[7]—made no such holding and contains no such rule. To the contrary, the *Beretta* court explicitly stated that its "decision not to find the City in privity with the State is confined to the circumstances of [that particular] case" and "does not stand for the proposition that the City may bring suit any time the State has not prevailed on a similar claim." *Id.* at 274. The particular circumstances of *Beretta*, moreover, are readily distinguishable from the present case. There, the City's interests in gun violence were distinct from the State's because the City

---

[7] When the Second Circuit was faced with nearly identical claims and factual allegations, it certified questions on the merits to the New York Court of Appeals, which roundly rejected the plaintiffs' theories that handgun distributors could be held liable for the injuries and death caused by the use of handguns. *See Hamilton v. Beretta USA Corp.*, 222 F.3d 36 (2d Cir. 2000), *certifying question to* 96 N.Y.2d 222 (2001); *see also People v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 204 (N.Y. App. Div. 2003) (affirming dismissal of similar claims).

6

had "promulgate[d] a layer of firearms regulation on top of the framework established by the State." *Id.* at 273. Here, by contrast, the County has not adopted regulations governing controlled substances generally, or opioid medications specifically. Nor could it.[8] Its interests thus match those of the State acting in its *parens patriae* capacity.[9]

## II. THE STATE DIRECTLY RELEASED SOME OF THE COUNTY'S CLAIMS.

Issues of privity aside, the State directly released the negligence and public nuisance claims brought by the County inasmuch as it released all claims in its *parens patriae* authority for "each and every" State agency, department and instrumentality, including "any agency, person, or **other entity claiming by or through them or any of them**." Release at 1; *see also* Br. 9–10. The County feebly asserts that it "is not suing to enforce the WVCSA and is not acting through the [BOP]." Opp. 13.[10] Yet that is precisely the function of its negligence claim, which is premised on alleged violations of the WVCSA, a statute that expressly grants exclusive enforcement authority to the BOP such that any action by the County is necessarily "through"

---

[8] *See* Summit Br. 30 (explaining that wholesale distribution of opioids is "subject to comprehensive regulation at the federal and state levels"); *id.* at 34–38; Cabell Br. 4–8.

[9] *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464 (10th Cir. 1993), cited at Opp. 12–13, is not apposite here for two reasons. First, the plaintiffs complained of property damage, not from the mining activity targeted by the State's lawsuit, but from clean-up that resulted from the State's consent decree. *Id*. at 1467. Second, because the State's common law claims were dismissed, it proceeded solely under CERCLA, which "does not cover private property." *Id*. at 1469. Nor does *parens patriae* cover "the interests of particular private parties." *Id*. Thus, the court held, "[t]he State could not have recovered under either CERCLA or the *parens patriae* doctrine for injuries to Plaintiffs' private interests." *Id*. at 1470. Here, both the State and County are asserting the same quasi-sovereign interest in government costs that derive from their residents' injuries.

[10] Apart from this assertion, the County relies almost entirely on inadmissible parol evidence. *See* Opp. 14; *supra* Part III.

the BOP.  *See* Br. 10.  And the substance of the County's public nuisance claim mirrors that of the State's.  *See id.* 9–10 (comparing the claims).[11]  Both claims are thus barred by the Release.

### III.     PAROL EVIDENCE SHOULD NOT BE CONSIDERED.

The Opposition repeatedly calls on parol evidence and claims that the State refused to accept language in the Release that would have released the County's claims.  Opp. at 2–3, 11, 14.  Yet parol evidence is barred when interpreting unambiguous contract language.[12]  The County does not identify specific language that is ambiguous, much less explain what about that language renders it ambiguous.  The pertinent provision could not be plainer:  The State expressly released all claims "the State has asserted or could have asserted … in its *parens patriae* capacity."  Release ¶ 1.  Outside evidence indicating that one of the parties sought additional or different terms—terms that here would have functioned only as a belt to the final language's suspenders—does not undermine the otherwise plain language of an agreed-upon contract.  *Shafi v. St. Francis Hosp. of Charleston*, 396 S.E.2d 181, 185 (W. Va. 1990).  Thus, the Court should neither open discovery to rule on this motion, nor consider any of the parol evidence.

### CONCLUSION

For these reasons, the claims against Cardinal Health should be dismissed with prejudice.

---

[11] The County suggests that it escapes the Release's binding effect through its power to abate nuisances. Yet the principal case on which it relies has nothing to do with *res judicata* or *parens patriae*.  *See* Opp. at 7–8 (citing *Morrisey v. West Virginia Office of Disciplinary Counsel*, 764 S.E.2d 769 (W. Va. 2014)).  It concerns only the Attorney General's standing to prosecute criminal cases in the first instance.  *Morrisey*, 764 S.E.2d at 775–76.

[12] *See Larew*, 487 S.E.2d at 352 ("It is well-settled … that prior or contemporaneous statements that contradict clear, unambiguous language of a written contract are inadmissible" because "[p]arol evidence may be admitted only to explain uncertain, incomplete, or ambiguous terms"); *Wood County Airport Authority v. Crown Airways, Inc.*, 919 F. Supp. 960, 965 (S.D. W. Va. 1996).

8

Dated: July 30, 2018

Respectfully submitted,

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
EMainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com
*Counsel for Cardinal Health, Inc.*


*/s/ Dean T. Barnhard*
Dean T. Barnhard
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 231-7501
Fax: (317) 231-7433
dean.barnhard@btlaw.com

*Counsel for H.D. Smith*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to the July 17, 2018 Order entered by Magistrate Judge Ruiz, Cardinal Health is permitted to file a reply of up to eight pages in support of its motion to dismiss Cabell County's claims on the basis of res judicata. This brief adheres to the limits set forth in the July 17th Order because it does not exceed eight pages.

/s/ Ashley W. Hardin
Ashley W. Hardin

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Ashley W. Hardin
Ashley W. Hardin