**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| This document relates to: *County of Monroe, Michigan v. Purdue Pharma, L.P., et al.* Case No. 18-op-45158 | Case No. 17-md-2804  Hon. Dan Aaron Polster |

**DISTRIBUTORS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      THE MPLA BARS THE COUNTY'S COMMON LAW CLAIMS.................................. 1

    A.      The County's Claims Against Distributors are Based on "Selling" Opioids.......... 1

    B.      The "Absolute Defense" for "Selling" FDA-Approved Drugs Applies. ................ 2

    C.      The County's "Combination Product" Argument Is Baseless. ............................... 3

II.     THE RICO CLAIM SHOULD BE DISMISSED. ............................................................... 5

III.    THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED. ................................... 6

    A.      The County Cannot Bring a Products-Based Public Nuisance Claim. .................. 6

    B.      The County Fails Adequately to Allege Interference with a Public Right. ........... 6

    C.      Distributors Did Not Control the Nuisance at the Time of Injury. ........................ 8

IV.     THE COUNTY'S NEGLIGENCE CLAIM SHOULD BE DISMISSED. ........................ 9

V.      THE CONSUMER PROTECTION ACT CLAIM SHOULD BE DISMISSED. ............ 11

VI.     THE COUNTY'S FRAUD CLAIM SHOULD BE DISMISSED................................... 13

VII.    THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. .......................... 15

VIII.   THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ............................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arnold v. Alphatec Spine, Inc.*,
  2014 WL 2896838 (S.D. Ohio June 26, 2014) ......................................................................12

*Attorney Gen. v. Merck Sharp & Dohme Corp.*,
  807 N.W.2d 343 (Mich. Ct. App. 2011) ................................................................................2

*Attorney General v. Diamond Mortgage Co.*,
  327 N.W.2d 805 (Mich. 1982)..............................................................................................12

*Baker v. Arbor Drugs, Inc.*,
  544 N.W.2d 727 (1996) ........................................................................................................12

*Estate of Barney v. PNC Bank, Nat. Ass'n*,
  714 F.3d 920 (6th Cir. 2013) ...............................................................................................12

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
  501 F.3d 493 (6th Cir. 2007) ...............................................................................................13

*Bronson v. Oscoda Tp.*,
  470 N.W.2d 688 (Mich. Ct. App. 1991) ................................................................................7

*Buckman Co. v. Pls.' Legal Comm.*,
  531 U.S. 341 (2001)..............................................................................................................14

*Campbell v. Upjohn Co.*,
  498 F. Supp. 722 (W.D. Mich. 1980) ...................................................................................14

*In re Cardizem CD Antitrust Litigation*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000)...............................................................................15

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004) ...................................................................................................7

*City of Cincinnati v. Beretta U.S.A. Corp.*,
  768 N.E.2d 1136 (Ohio 2002) ...............................................................................................8

*City of Philadelphia v. Beretta U.S.A., Corp.*,
  126 F. Supp. 2d 882 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002)...............................6

*County of Oakland v. City of Detroit*,
  866 F.2d 839 (6th Cir. 1989) .................................................................................................5

*Detroit Bd. of Educ. v. Celotex Corp.*,
    493 N.W.2d 513 (Mich. Ct. App. 1992) .................................................................6, 8

*DiPiero v. Better Business Bureau of W. Mich., Inc.*,
    2014 WL 6679406 (Mich. Ct. App. Nov. 25, 2014)...............................................13

*Fenerjian v. Nongshim Co., Ltd.*,
    72 F. Supp. 3d 1058 (N.D. Cal. 2014) ...................................................................15

*Garcia v. Wyeth-Ayerst Labs.*,
    385 F.3d 961 (6th Cir. 2004) ..................................................................................3

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017).............................................................15, 16

*Gernhardt v. Winnebago Indus.*,
    2005 WL 2562783 (E.D. Mich. Oct. 12, 2005) .....................................................13

*Gibbs v. Bank of Am., N.A.*,
    2015 WL 4645009 (E.D. Mich. Aug. 5, 2015) ......................................................16

*Henry v. Dow Chem. Co.*,
    701 N.W.2d 684 (Mich. 2005).................................................................................11

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) .................................................................................12

*James v. Arms Tech, Inc.*,
    820 A.2d 27 (N.J. Super. Ct. App. Div. 2003)........................................................8

*Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.*,
    2013 WL 3773373 (E.D. Mich. July 17, 2013) ....................................................16

*LaChance v. U.S. Smokeless Tobacco Co.*,
    931 A.2d 571 (N.H. 2007) .....................................................................................13

*Lane v. KinderCare Learning Ctrs., Inc.*,
    588 N.W.2d 715 (Mich. Ct. App. 1998) ...............................................................10

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007).........................................................................................8

*Liss v. Lewiston-Richards, Inc.*,
    732 N.W.2d 514 (Mich. 2007)...........................................................................11, 12

*Livonia Diagnostic Ctr., P.C. v. Neurometrix, Inc.*,
    2012 WL 2324920 (E.D. Mich. June 19, 2012)....................................................16

*Logan v. Charter Twp. of W. Bloomfield*,
  2018 WL 383751 (Mich. Jan. 11, 2018) ................................................................15

*Marsh v. Genentech, Inc.*,
  693 F.3d 546 (6th Cir. 2012) .................................................................................12

*Mayor of Detroit v. Arms Tech., Inc.*,
  669 N.W.2d 845 (Mich. Ct. App. 2003) ..................................................................7

*Mikos v. Chrysler Corp.*,
  404 N.W.2d 783 (Mich. Ct. App. 1987) ................................................................13

*Miller v. Mylan, Inc.*,
  741 F.3d 674 (6th Cir. 2014) ...........................................................................2, 3, 4

*Monroe Beverage Co., Inc. v. Stroh Brewery Co.*,
  568 N.W.2d 687 (Mich. Ct. App. 1997) ..................................................................9

*In re Neurontin Marketing & Sales Practices Litig.*,
  712 F. 3d 21 (1st Cir. 2013) ....................................................................................5

*PCA Minerals, LLC v. Merit Energy Co., LLC*,
  725 F. App'x 342 (6th Cir. 2018) ..........................................................................15

*Ruffin-Steinback v. dePasse*,
  267 F.3d 457 (6th Cir. 2001) .................................................................................15

*Schaendorf v. Consumers Energy Co.*,
  739 N.W.2d 402 (Mich. Ct. App. 2007) ..................................................................6

*Schechner v. Whirlpool Corp.*,
  237 F. Supp. 3d 601 (E.D. Mich. 2017) ...........................................................15, 16

*State Farm Mut. Auto. Ins. Co. v. BMW of N. Am., LLC*,
  2009 WL 2447612 (E.D. Mich. Aug. 7, 2009) .......................................................13

*State v. Lead Indus., Ass'n, Inc.*,
  951 A.2d 428 (R.I. 2008) .........................................................................................6

*Taylor v. Kochanowski*,
  2010 WL 2696675 (Mich. Ct. App. July 8, 2010) .................................................15

*Taylor v. Smithkline Beecham Corp.*,
  658 N.W.2d 127 (Mich. 2003) .................................................................................2

*White v. SmithKline Beecham Corp.*,
  538 F. Supp. 2d 1023 (W.D. Mich. 2008) ...............................................................2

*Wilhite v. Howmedia Osteonics Corp.*,
    833 F. Supp. 2d 753 (N.D. Ohio 2011)...................................................................................4

*Wilson v. Citizens Ins. Co. of Am.*,
    2015 WL 631978 (M.D.N.C. Feb. 13, 2015).........................................................................13

**Statutes**

Mich. Comp. Laws § 445.903.........................................................................................................13

Mich. Comp. Laws § 600.2945.....................................................................................................1, 2

Mich. Comp. Laws § 600.2946(5)................................................................................................2, 3

Mich. Comp. Laws § 600.2947(2)....................................................................................................3

**Other Authorities**

5B Charles Alan Wright et al., *Federal Practice & Procedure* § 1357 (3d ed.
    2004) ...............................................................................................................................12

Restatement (Second) of Torts § 821B cmt. g...........................................................................6, 7

The County's claims fail as a matter of law, and its contrary arguments are unavailing.

## I.     THE MPLA BARS THE COUNTY'S COMMON LAW CLAIMS.

### A.     The County's Claims Against Distributors are Based on "Selling" Opioids.

The County attempts to recharacterize its claims to avoid the MPLA's reach.  While the County acknowledges that the MPLA's definition of "product liability actions" includes all claims based on the "selling" of FDA-approved drugs, Mich. Comp. Laws § 600.2945(h)-(i), it argues that its claims are based not on "selling" opioids but the "failure to identify suspicious opioid orders, investigate such orders, or report such orders to the [DEA]."  Opp. 11.

The County's argument fails for two reasons.  First, the Complaint repeatedly describes the County's claims as being based on Distributors' "selling" opioids.  Many more times it alleges injuries based on Distributors' behavior in "shipping" or "distributing" opioids—which is what a distributor does when it "sells" opioids.[1]

Second, the alleged failure to halt or report suspicious orders is part of Distributors' conduct in "selling" opioids.  The only way that Distributors could possibly violate their alleged obligation to halt suspicious orders would be to sell opioids to pharmacy customers.  When pharmacies order opioids from Distributors, they are asking Distributors to sell them opioids. The processing of orders is part of the "selling" of the product.  The County cannot creatively label Distributors' conduct to escape the MPLA's reach or carve out the component parts of the "selling" process to escape the MPLA's "production" definition, which "extends the protection from suits broadly to a myriad of activities a manufacturer"—or here, a "seller"—"might

---

[1]  *See, e.g.*, Compl. ¶ 14 ("Defendants have contributed substantially to the opioid crisis by *selling* and distributing far greater quantities of prescription opioids than they know could be necessary for legitimate medical uses, while failing to report, and to take steps to halt suspicious orders when they were identified…."); *id.* ¶ 774 (alleging "unlawful goal of *selling* prescription opioids without reporting suspicious orders"); *see id.* ¶¶ 827, 830a, 830b, 866a, 866b, 866g, 877a, 877b, 877g; *see also* Opp. 51 ("[T]he cost of the Defendants' wrongful conduct in *selling* and distributing opioids includes increased healthcare services and addiction treatment for opioid users….").

- 1 -

perform related to the product."  *White v. SmithKline Beecham Corp.*, 538 F. Supp. 2d 1023, 1030 (W.D. Mich. 2008); *see also Attorney Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343, 347 (Mich. Ct. App. 2011) ("[A] court is not bound by a party's choice of labels.  Rather, we determine the gravamen of a party's claim by reviewing the entire claim….").  The County's common law claims are product liability claims under the MPLA.[2]

**B.    The "Absolute Defense" for "Selling" FDA-Approved Drugs Applies.**

Because the County's common law claims are based on Distributors' "selling" of FDA-approved drugs, the MPLA provides Distributors with an absolute defense against the County's claims.  Mich. Comp. Laws § 600.2946(5); Dkt. 572-1 (hereinafter, "Br.") at Part I.B.  The County argues that this absolute defense is ambiguous and that "any ambiguity regarding the MPLA's application must be construed in Monroe's favor."  Opp. 12.[3]  There is nothing ambiguous about the absolute immunity provided to sellers of FDA-approved drugs under the MPLA.  As the Michigan Supreme Court has held, a "***seller of a drug*** that has been approved by the FDA has an ***absolute defense*** to a products liability claim if the drug and its labeling were in compliance with the FDA's approval at the time the drug left control of the manufacturer or seller."  *Taylor v. Smithkline Beecham Corp.*, 658 N.W.2d 127, 131 (Mich. 2003).  The County's real argument is not that the MPLA's absolute defense is "ambiguous," but rather that (in its opinion) the MPLA's plain meaning and the clear holdings of the Michigan Supreme Court "make little sense."  Opp. 12.  But it is perfectly sensible for the Michigan Legislature to confer immunity to ensure that the availability of FDA-approved drugs (including controlled substance

---

[2]    Other portions of the MPLA's broad "production" definition also encompass the failure to investigate and report suspicious orders, including "development of standards," "processing," and "warning." Mich. Comp. Laws § 600.2945(i).

[3]    The County relies on *Miller v. Mylan, Inc.*, 741 F.3d 674 (6th Cir. 2014), the holding of which, as discussed below, refers to ambiguity of the MPLA's use of the term "drug" as applied to so-called "combination products."

medications) is regulated only by expert agencies and not through common law suits by myriad plaintiffs.  In fact, Michigan law separately prohibits plaintiffs like the County from attempting to enforce DEA regulations through common law causes of action.  *See* Br. Part IV.A.1.

The County argues that an exception to this absolute defense applies because "***all*** Defendants" defrauded the FDA.  Opp. 13-14.  This is wrong both factually and legally.  First, the County does not allege that ***Distributors*** made misrepresentations to the FDA or engaged in misleading non-branded promotional efforts—it alleges facts pertaining only to ***Manufacturers***. *Id.*  Second, the fraud-on-the-FDA exception applies only if "the ***FDA itself*** determines that a fraud has been committed on the agency."  *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 966 (6th Cir. 2004) (emphasis in original).  The exception is "unconstitutional" where, as here, the plaintiff alleges "fraud on the FDA but d[oes] not offer any federal findings."  *Id.*

Nor is there an exception to Distributors' absolute defense because misuse of opioids was reasonably foreseeable.  Opp. 15.  The MPLA contains multiple limitations on liability.  One is the absolute defense for sellers of FDA-approved drugs.  Mich. Comp. Laws § 600.2946(5). Another is a qualified limitation on liability for "harm caused by misuse of a product" that applies "unless the misuse was reasonably foreseeable."  *Id.* § 600.2947(2).  Contrary to the County's contention, the second "misuse" limitation does not undermine the first defense; it supplements it.  Because the absolute defense for sales of FDA-approved drugs applies here, the Court need not consider whether the second limitation also applies.

### C.    The County's "Combination Product" Argument Is Baseless.

Citing *Miller v. Mylan, Inc.*, 741 F.3d 674 (6th Cir. 2014), the County argues that "the MPLA does not cover many of the opioid ***products*** at issue in this case" because "[m]any of the opioid products sold, distributed, and manufactured by Defendants are best categorized as 'combination products.… [that] innovatively (and disastrously) offered new ***delivery***

- 3 -

*mechanisms* for opioids."  Opp. 14.

In *Miller*, the plaintiff "carefully crafted her complaint to make clear that it [was] the manner in which the patch deliver[ed] [the drug] that she allege[d] was defective and unreasonably dangerous," and thus the ***delivery mechanism*** formed "the basis for the negligence and other claims."  *Miller*, 741 F.3d at 678 (Gibbons, J. concurring).  In contrast, the County's 913-paragraph Complaint makes no mention of "combination" drug-device products or new opioid "delivery mechanisms," much less asserts that the delivery mechanism of any opioid product caused the County's injuries.  Instead, it was the active ingredients of opioid products that are alleged to have caused injury.  Precedent bars the County's effort to amend its complaint through an opposition brief.  *See, e.g.*, *Wilhite v. Howmedia Osteonics Corp.*, 833 F. Supp. 2d 753, 762 (N.D. Ohio 2011) (rejecting "component parts" argument on ground that plaintiffs "cannot amend their complaint by means of the argument in their opposition to Defendant's motion").

Even if asserted in the Complaint, the County's theory would fail.  All FDA-approved drugs need to be delivered to patients somehow—whether in the form of a pill, a lozenge, a liquid syrup, or an injection.  Thus, the County's assertion that opioids are "combination products" because they are sometimes delivered by lollipops or "oral delivery systems" (such as pills and liquids) is absurd; by that logic, every medicine would be a "combination product" because all medicines have to be delivered somehow, and thus the MPLA's broad immunity provisions would be a dead letter.  Rather, *Miller* stands, at most, for the narrow proposition that MPLA immunity is inapplicable where the gist of the complaint relates to the delivery mechanism itself, not the underlying drug being delivered.  Because the County's claim necessarily turns on the alleged impacts of the opioid medicines themselves, the narrow

exception articulated in *Miller* cannot save its claims.

## II.    THE RICO CLAIM SHOULD BE DISMISSED.

The County asserts that its purported RICO injury was the "intentional" and "foreseeable" result of Defendants' alleged conduct.  Opp. 53.  Even if that were true, under settled Supreme Court precedent, an "intentional" and "foreseeable" injury is not actionable under RICO unless it was also the ***direct*** result of the defendants' conduct.  Summit Reply, Dkt. 744 at Part I.B.1.  The County's allegations fail this *Holmes* direct-injury test.  *Id.*

The County also asserts that it suffered injury when it "paid for opioids" in its capacity as a self-insurer of employee benefits and that it would not have made these payments but for "Defendants'" alleged fraud.  Opp. 54.  The County fails to plead this alleged fraud with the particularity required by Rule 9(b): it does not identify even one fraudulent prescription for which the County paid—let alone attempt to tie that prescription to a Distributor.  Nor does it identify a specific misrepresentation by any Distributor on which the County relied.

The Opposition also fails to explain how the County's payments were the direct result of ***Distributors'*** purported failure to report suspicious orders.  The County cites *In re Neurontin Marketing & Sales Practices Litig.*, 712 F. 3d 21, 37 (1st Cir. 2013), but that opinion involved the alleged conduct of ***manufacturer*** defendants.  Here, even if the County had adequately pled that Manufacturers' allegedly deceptive marketing campaign caused doctors to over-prescribe opioids, Distributors are not alleged to have played any role in that purported scheme.  Summit Reply, Dkt. 744 at pp. 1–2, 11, 26–28, 30–32.[4]

For these reasons, and as further explained in the *Summit County* reply, the County's

---

[4]    *County of Oakland v. City of Detroit*, 866 F.2d 839 (6th Cir. 1989), is also clearly inapposite.  The Sixth Circuit did not address proximate causation *at all*.  In that case, a purchaser of sewer services sued the party from whom it purchased those services, alleging that the defendants' fraud caused it to over-pay, *id.* at 844—a direct injury.

RICO claim fails as a matter of law.  *See* Summit Reply, Dkt. 744 at Part I.

**III.    THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED.**

      **A.    The County Cannot Bring a Products-Based Public Nuisance Claim.**

Even if not barred by the MPLA, the public nuisance claim fails because Michigan common law refuses to recognize product liability claims brought in the guise of nuisance.  *See Schaendorf v. Consumers Energy Co.*, 739 N.W.2d 402, 408 (Mich. Ct. App. 2007); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992).

The County claims that this principle does not apply to it because its claims are premised on Defendants' "promotion" and "distribution" of opioids.  Opp. 24.  But under the MPLA, a product liability action is an action for injury caused by, *inter alia*, "marketing, selling, [or] advertising" a product—terms that encompass "promotion" and "distribution."  *See supra* Part I.  The County fares no better with the argument that *Celotex* and *Schaendorf* involved only private nuisance claims.  In fact, the plaintiffs in those cases did not label their nuisance claims as public or private, and the courts' analyses apply equally to both.  And *Celotex* is routinely cited as support for rejecting products-based ***public*** nuisance claims.  *See City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 910 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 457 (R.I. 2008).  This court should do the same.

      **B.    The County Fails Adequately to Allege Interference with a Public Right.**

The County fails to satisfy the public right requirement.  First, the County is wrong that "the number of people affected … alone can establish that a public nuisance exists."  Opp. 20.  Were that true, a fire or explosion that injured a large number of people at a private factory or office building would constitute a public nuisance.  "Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons.  ***There must be some interference with a public right***."  Restatement (Second) of Torts § 821B

- 6 -

cmt. g.[5]

Second, like Summit County and the City of Chicago, the County alleges only a significant interference with public **health**, which is not the same as an interference with a public **right**; not all issues of public health are matters of public right, and the colloquial use of "public health" is not synonymous with the legal meaning of "public right." For example, the prevalence of obesity in the general population is a public health concern, but it does not implicate a public right. The latter is the threshold requirement for a public nuisance. Summit Reply, Dkt. 744 at Part II.B.1; City of Chicago Reply at Part I; *see also Bronson v. Oscoda Twp.*, 470 N.W.2d 688, 690 (Mich. Ct. App. 1991) (finding that sand bars (1) "interfere[d] with the public's right to use Lake Huron," but (2) did not "constitute[] an unreasonable, significant interference with the public's right to safely and comfortably use Lake Huron.").

The misuse of opioids certainly constitutes a "public health" problem, as "public health" is commonly used, but the problem arises from private decisions that, in the first instance, cause private injury. This is true even though addiction may be "widespread" and the County may pay costs associated with addiction. *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004).[6] Thus, by asserting a right to be free from the costs of conduct that interferes with only **private** rights, the County fails to state a claim for public nuisance.[7]

---

[5] Some states have enacted statutes that "defin[e] a public nuisance to include interference with 'any considerable number of persons;' and under these statutes no public right as such need be involved." Restatement (Second) of Torts § 821B cmt. g. But Michigan has not adopted any such statute.

[6] The County attempts to reframe its claims as not being "based on … personal injuries of individual residents." Opp. 20. This contradicts the County's own pleadings. *See, e.g.*, Opp. 49 ("Plaintiff is asserting present injuries to … its population."); Compl. ¶ 19 (alleging the County bears the costs of "addiction, overdose, and death").

[7] The County relies on *Mayor of Detroit v. Arms Tech., Inc.*, 669 N.W.2d 845 (Mich. Ct. App. 2003), as dispositive. It is not. The Court of Appeals dismissed the nuisance case on other grounds; the validity of that claim was not addressed.

## C.    Distributors Did Not Control the Nuisance at the Time of Injury.

The County fails to come to terms with Michigan precedent that requires the defendant to be in control of the nuisance-creating activity when it causes injury.  The County starts by quoting two out-of-state cases—one abrogated by its state's legislature as it relates to public nuisance[8]; the other, effectively overruled by a subsequent state Supreme Court decision[9]—both of which are contrary to the great weight of authority across numerous jurisdictions.[10]  Michigan law follows that authority: plaintiffs cannot bring a public nuisance claim unless the defendants had "control over [the] nuisance at the time of injury."  *Celotex*, 493 N.W.2d at 522.  Thus, where the defendant has sold the product, thereby giving up "ownership and control of their products," a nuisance claim does not lie.  *Id.*  The County argues that the *Celotex* rule does not apply because the County alleges "continuing wrongdoing."  Opp. 23.  But *Celotex* contains no "continuing wrongdoing" exception, and such an exception defies the decision's reasoning.  In *Celotex*, the defendants had sold the offending asbestos, and lost control of the product, years before the lawsuit.  But, by the very nature of the product, it posed a continuing harm.  If "continuing wrongdoing" were an exception to the control requirement, *Celotex* would have come out the other way.  The County does not dispute that Distributors did not have control over prescription opioids when they were diverted to persons for whom they were not prescribed.

---

[8]    *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002) was abrogated by amendments to the Ohio Products Liability Act.  *See Summit* Reply, Dkt. 744 at Part II.

[9]    The County quotes *James v. Arms Tech, Inc.* for the proposition that "[t]here is no requirement that a defendant have the kind of control defendants suggest—actual control over the instrumentality of the nuisance at the time and place it does harm."  820 A.2d 27, 52 (N.J. Super. Ct. App. Div. 2003).  But the Supreme Court of New Jersey rejected that analysis in *In re Lead Paint Litigation*, 924 A.2d 484, 499 (N.J. 2007) (an actor is liable only for "conduct, performed in a location within the actor's control"); *see id.* at 488 (rejecting Appellate Division rule that parties "may be liable for a public nuisance even if those parties do not control, at the time the nuisance is created or exists, the instrumentality causing the nuisance or the property where the nuisance is found").

[10]    *See* Broward Reply at 2 n.3 (filed concurrently herewith) (collecting cases).

- 8 -

## IV.    THE COUNTY'S NEGLIGENCE CLAIM SHOULD BE DISMISSED.

The County's argument regarding negligence is flawed.  First, while Distributors undeniably have regulatory obligations pursuant to state and federal law, the law is clear that (i) only the federal and state governments can sue to enforce their respective regulations, and (ii) there is no (express or implied) private right of action.  Br. at 9–11; *see also* Summit Reply, Dkt. 744 at Part III.B & n.21.  The Opposition argues that the County relies on state and federal regulations, not as establishing Distributors' duties, but to "inform the duty of care and the foreseeability of the harm that flowed from the breaches of [Defendants'] duty."  Opp. 41–42. This argument cannot be reconciled with what the Opposition says 20 pages earlier, when, denying the MPLA's applicability, the County admits that its claims depend on the duties imposed by the federal CSA.  *See, e.g.*, Opp. 11–12 (arguing that County's claims are based on the "specific obligations imposed on defendants by the Controlled Substances Act").

The duties created by the CSA cannot be enforced by a private right of action.  Summit Br., Dkt. 491-1 at Part III.B.1.  Thus, the County can sue in negligence if there is a pre-existing common law duty (owed to the County) that parallels the statutory or regulatory duty.  *See Monroe Beverage Co., Inc. v. Stroh Brewery Co.,* 568 N.W.2d 687, 688 (Mich. Ct. App. 1997). The County's problem is that it cannot identify a preexisting, parallel common law duty to report suspicious orders to a government agency (and halt shipment), because such a duty has never existed at common law.  A duty to report to a ***government agency*** is inherently a creature of statute and regulation.  The Opposition insists that "the duty to make reasonably diligent efforts to avoid the diversion of highly addictive prescription opioids … preexisted the regulatory regime at issue."  Opp. 43.  If so, it would be a simple matter for the County to cite a Michigan case recognizing such a duty, but it cites none.  Michigan law is clear: where, as here, statutes and regulations create new rights not previously known at common law, "the remedy provided

- 9 -

by the statute to enforce the right, or for nonperformance of the duty, is exclusive." *Lane v. KinderCare Learning Ctrs., Inc.,* 588 N.W.2d 715, 718 (Mich. Ct. App. 1998).

Second, the question is not whether Distributors owed a duty to someone, but whether they owed a duty ***to the County***. Br. 12–13. The County says that "each Defendant owed [the County] a common law duty" merely because "each Defendant knew or reasonably should have foreseen the possibility that [the County] would be damaged by the marketing and distribution of prescription opioids." Opp. 44. But the Complaint—including the paragraphs the Opposition cites—pleads no facts that would support the conclusion that injury to the County was a foreseeable consequence of either wholesale distribution to pharmacies or reporting orders to federal and state agencies. Distributors had no reason to foresee harm ***to the County*** by supplying FDA-approved drugs to licensed pharmacies in order to fill prescriptions written by licensed physicians. *See* Summit Reply, Dkt. 744 at Part III.B. The County's attempt to distinguish, on narrow factual grounds, the cases Distributors cite does not alter this reality.

The diversion of prescription opioids to persons who are not authorized to possess them inherently involves illegal conduct. Yet the County contends that the acts of third parties, even illegal acts of diversion, do not "break the causal chain between [Distributors'] conduct and [the County's] injuries." Opp. 48. The County is engaged in word-play. When it asserts that it "does not allege that Defendants failed to protect it from harm caused by others," only "that Defendants themselves engaged in conduct the foreseeable result of which" was harm to the County, it is not denying that there were intervening actors (doctors, pharmacies, drug dealers, and prescription recipients) who diverted the drugs to persons who did not have a legitimate medical need for them. Such illegal conduct breaks the chain of causation between wholesale distribution of the pills to a pharmacy and an individual's misuse of the pills. Br. 13; *see also* City of Chicago

- 10 -

Reply at 3–10.

In arguing that harm to the County was foreseeable, the Opposition consistently lumps all defendants together.  But it is one thing to allege that Manufacturers encouraged doctors to over-prescribe the drugs and, therefore, Manufacturers should have foreseen over-use, including increased addiction.  It is quite another thing to say that Distributors should have foreseen harm to the County from supplying orders to licensed pharmacies, or from supplying quantities that increased year by year (when DEA was increasing the annual quota on the basis that legitimate medical need for the drugs was increasing), or from failing to report suspicious orders (when Distributors were reporting all shipments of prescription opioids to DEA, enabling it to see the very information—increasing total volume—that the County claims was a red flag).

Finally, the County incorrectly argues that it "need not plead physical injury" to recover on its negligence claims.  Opp. 49.  Michigan law is clear:  "a ***present physical*** injury is required in order to state a claim based on negligence."  *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 689 (Mich. 2005).  The County says that *Henry* is distinguishable because the plaintiffs there had not suffered any injury at all.  Not so.  The *Henry* court acknowledged that the plaintiffs had sustained a "present ***financial*** injury," but held that "[a] financial 'injury' is simply not a present physical injury, and thus not cognizable under [Michigan's] tort system."  *Id.* at 691 (emphasis in original).  As the County apparently concedes, it is "asserting present injuries," but those present injuries are ***financial*** injuries that are not cognizable under Michigan law.  *See* Compl. ¶ 879 (alleging the County sustained purely financial injuries).

## V.     THE CONSUMER PROTECTION ACT CLAIM SHOULD BE DISMISSED.

The County does not dispute that Michigan law broadly exempts conduct governed by an extensive licensing and regulatory regime, irrespective "of whether the specific misconduct alleged is prohibited."  *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 518 (Mich. 2007).

Instead, the Opposition argues that its "allegations specifically concern unregulated conduct: the deceptive unbranded marketing campaign, deceptive off-label marketing, and the failure to disclose their falsity." Opp. 27. But those allegations solely concern Manufacturers. The allegation concerning Distributors is that they failed "to monitor, report, and stop the filling of suspicious orders of controlled substances," Compl. ¶ 857—conduct that the Opposition does not and could not argue "fall[s] outside the statutory exception." Br. 17.[11] This exception is a basis for dismissal because "[a] motion to dismiss can be premised on an affirmative defense" where, as here, the "'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.'" *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554–55 (6th Cir. 2012) (quoting 5B Charles Alan Wright et al., *Federal Practice & Procedure* § 1357 at 713 (3d ed. 2004)).[12]

The MCPA claim also fails because it is not pled with the requisite specificity against Distributors. The Opposition—like the Complaint—focuses almost exclusively on an allegedly fraudulent marketing campaign conducted by the Manufacturers. The Complaint does not allege that Distributors played any role in this campaign.[13] The Opposition asserts only that they "knew

---

[11]  The cases cited by the County are not to the contrary. In *Attorney General v. Diamond Mortgage Co.*, 327 N.W.2d 805 (Mich. 1982), the exception did not apply because "the plaintiff's claims concerned mortgage writing," and the defendant "had no statutory authorization to engage in mortgage writing." *Liss*, 732 N.W.2d at 518 n.23 (discussing *Diamond Mortgage*). Similarly, in *Baker v. Arbor Drugs, Inc.*, 544 N.W.2d 727, 732 (1996), the claims against the defendant pharmacist concerned false advertising, a subject that "falls outside the realm of" the Board of Pharmacy.

[12]  *See also Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) ("[I]f the plaintiffs' complaint contains facts which satisfy the elements of the defendant's affirmative defense, the district court may apply the affirmative defense."); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("There is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law."). Here, the Complaint demonstrates the applicability of the exception by describing Distributors' "responsibilities under state and federal law with respect to control of the supply chain of opioids," Compl. ¶ 474, including registration, reporting requirements, and constraints on the distribution of controlled substances. *See, e.g.*, Compl. ¶¶ 463–77.

[13]  The Opposition (at 24) asserts that "Defendants" engaged in "unlawful conduct through a broad 'unbranded' marketing campaign in support of opioids as a drug class and through off-label marketing." This group pleading violates even the notice pleading rules, let alone the applicable

- 12 -

or should have known that their non-public data was at odds with the general marketing campaign," Opp. 29, whatever that means.  This curious assertion is neither a well-pled allegation nor a plausible violation of the MCPA.[14]

Finally, to the extent that the County bases its claim on purported omissions, it fails because claims under the relevant provisions of the MCPA must arise from "business conducted *between the parties*."  *DiPiero v. Better Business Bureau of W. Mich., Inc.*, 2014 WL 6679406, at *3 (Mich. Ct. App. Nov. 25, 2014) (paragraphs (s) and (bb)); *see Wilson v. Citizens Ins. Co. of Am.*, 2015 WL 631978, at *10 (M.D.N.C. Feb. 13, 2015) (paragraph (cc)); Br. 19–20.  The cases cited by the Opposition (at 33–34) do not address the three MCPA provisions in question.[15]

## VI.     THE COUNTY'S FRAUD CLAIM SHOULD BE DISMISSED.

The County's fraud claim fails for three independent reasons.  First, the County has failed to plead the alleged fraud with particularity, as required by Rule 9(b).  Br. 20–22.  The County protests that its conclusory allegations—for example, the allegation that "Defendants failed to report suspicious orders, prevent diversion, or otherwise control the supply of opioids following [sic] into communities across America," Compl. ¶ 539—suffice.  The very authority the County relies on demonstrates otherwise.  In *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501

---

requirements of Rule 9(b).  *Arnold v. Alphatec Spine, Inc.*, 2014 WL 2896838, at *4 (S.D. Ohio June 26, 2014) ("Plaintiffs' reference to 'Defendants' collectively fails to specify the conduct attributable to each party and is, therefore, insufficient to meet Rule 8's notice requirement.").  In any event, the County's specific allegations make clear that this alleged marketing campaign was conducted by Manufacturers.  Opp. 25 (canvassing allegations in the Complaint).

[14]   The Opposition asserts that the Complaint "is replete with examples of the alleged misleading communications."   Opp. 30.   But the cited paragraphs all either relate exclusively to the Manufacturers or do not describe anything remotely resembling a false or misleading statement.  *See* Compl. ¶¶ 463–80, 488–532.

[15]   *See Gernhardt v. Winnebago Indus.*, 2005 WL 2562783 (E.D. Mich. Oct. 12, 2005) (citing paragraphs (n) and (y) of Mich. Comp. Laws § 445.903(1)); *State Farm Mut. Auto. Ins. Co. v. BMW of N. Am., LLC*, 2009 WL 2447612 (E.D. Mich. Aug. 7, 2009) (not citing any paragraph of Mich. Comp. Laws § 445.903(1)); *Mikos v. Chrysler Corp.*, 404 N.W.2d 783 (Mich. Ct. App. 1987) (paragraph (y)); *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571, 577 (N.H. 2007) (citing New Hampshire law).

F.3d 493 (6th Cir. 2007) (cited at Opp. 58), the court held that it would be "ungainly, if not impossible," for a *qui tam* relator to plead "every instance of fraud"; as a result, it permitted the relator to satisfy Rule 9(b) by "provid[ing] ***examples of specific false claims*** submitted to the government pursuant to that scheme." *Id.* at 509–10. The County, however, has failed to identify even one example of a ***specific*** false statement by a Distributor.[16]

Second, the County has failed to establish the necessary predicate for a "silent fraud" claim—the existence of a duty to disclose ***running to the County***. While the County asserts in general terms that Distributors made "misrepresentations during their years-long failures [sic] to report hundreds, if not thousands (or more) of suspicious orders," Opp. 58, a failure to speak is actionable fraud only if there was a duty to disclose to the County. Br. 22–23. The County, however, points only to "a duty under the CSA and its implementing regulations to identify and report suspicious orders of prescription opioids," Opp. 59, which is a duty running only to the DEA.[17] The County offers no authority whatsoever for the proposition that it can assert a "silent fraud" claim based on a duty to disclose ***owed to a third party***.[18]

Finally, the County's fraud claim fails because it has not adequately alleged reasonable reliance. The sole allegation is "that 'Plaintiff relied on Defendants' representations and/or concealments, both directly and indirectly[,] [and that its] injuries were approximately [sic]

---

[16]    As Distributors explained, and the County does not dispute, "the mere denial of wrongdoing" is not actionable as fraud. Br. 22 (quoting *Campbell v. Upjohn Co.*, 498 F. Supp. 722, 728 (W.D. Mich. 1980)). The County's defense—that it did "allege that these statements are false," Opp. 57 n.53— adds nothing: true or false, the statements are not actionable as a matter of law.

[17]    Insofar as the County rests its fraud claim on allegations that Distributors defrauded the DEA by not submitting suspicious-order reports, the claim is preempted. *See Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 350 (2001).

[18]    The Opposition refers back to "the reasons addressed in §§ III.G.1-2." Opp. 59. But those sections, respectively, (1) deny that the County is relying on any duty arising under the CSA; and (2) allege a "common law duty of reasonable care." Opp. 41–46. Michigan law, however, is that the "common law duty of reasonable care" does not impose a duty to disclose except in limited circumstances (such as a fiduciary relationship) that the County does not contend apply here. Br. 22–23.

caused by reliance.'"  Opp. 60 (quoting Compl. ¶ 893).  This conclusory assertion does not say what actions the County did (or did not) take in reliance on any given representation.  Nor could it, as the County could not have relied on confidential reports made only to the DEA.  Br. 23–24.

## VII.  THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The unjust enrichment claim fails for at least three reasons.  First, it is duplicative.  The County concedes both that the claim is based on the same conduct alleged in its other claims, Opp. 49, and that *Taylor v. Kochanowski*, 2010 WL 2696675 (Mich. Ct. App. July 8, 2010), and *Ruffin-Steinback v. dePasse*, 267 F.3d 457 (6th Cir. 2001), dismissed unjust enrichment claims as duplicative.  The Opposition asserts that those cases are limited to their contexts, Opp. 50 n.48, but fails to cite any authority supporting that assertion.[19]

Second, the Complaint alleges no direct relationship between the County and Distributors.  While the County argues that a direct relationship is not required, Opp. 50, numerous cases hold otherwise.  *E.g.*, *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017) ("[T]o state a claim for unjust enrichment, Michigan law requires a direct benefit or some sort of direct interaction between Plaintiffs and [Defendants].");  Br. 24–25 (collecting cases).[20]  Absent a direct benefit, Michigan law "[a]t most" allows recovery where "the plaintiff is a subcontractor and the defendant is the party that hired the general contractor" and "the defendant and the plaintiff had some sort of direct interaction."  *In re Gen. Motors LLC*

---

[19]  The cases cited by the County are not to the contrary.  *See, e.g.*, *PCA Minerals, LLC v. Merit Energy Co., LLC*, 725 F. App'x 342, 349 (6th Cir. 2018) (remanding to district court to "determine whether the unjust-enrichment claim is a distinct claim or is simply a recasting of the conversion claim"); *Logan v. Charter Twp. of W. Bloomfield*, 2018 WL 383751, at *3 (Mich. Jan. 11, 2018) (unjust enrichment claim premised on violation of one statute not duplicative of claim asserting private right of action under a different statute).

[20]  The County cites *In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618 (E.D. Mich. 2000), but "*Cardizem* is not instructive because did it not cite any Michigan state authority involving indirect purchasers or transactions."  *Fenerjian v. Nongshim Co., Ltd.*, 72 F. Supp. 3d 1058, 1088 (N.D. Cal. 2014).

*Ignition Switch Litig.*, 257 F. Supp. 3d 372, 427–28 (S.D.N.Y. 2017). The handful of cases cited by the County that appear to stray from these principles "do not withstand close scrutiny." *Id.* at 427; *see Schechner*, 237 F. Supp. 3d at 617 (not requiring a direct benefit is "unjustifiable").

Third, for the reasons explained in the *City of Chicago* reply, the County's far-reaching assertion that it may recover for "externalities" is baseless. *See* City of Chicago Reply at Part V; *see also Gibbs v. Bank of Am., N.A.*, 2015 WL 4645009, at *2 (E.D. Mich. Aug. 5, 2015) ("the mere fact that a third person benefits from a contract between two other persons does not make such third person liable [for] … unjust enrichment").[21]

## VIII.   THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

First, the County does not dispute that its civil conspiracy claim is dependent on the viability of its fraud claim. Because the fraud claim against Distributors fails, *see supra* Part VI, the civil conspiracy claim should likewise be dismissed. Second, the claim should also be dismissed for failure to plead with the requisite particularity that Distributors made "an agreement to achieve the objective of the conspiracy." *See Knight Indus. & Assocs., Inc. v. Euro Herramientas, S.A.U.*, 2013 WL 3773373, at *5 (E.D. Mich. July 17, 2013). While the County asserts that "the Manufacturer Defendants conspired … to promote the use of opioids for the management of pain through misrepresentations and omissions," Opp. 62, it does not plead any facts showing that Distributors played a role in that alleged scheme. Because no well-pled allegation ties Distributors to any purported fraudulent scheme to over-promote opioids to doctors or the public, the conspiracy claim should be dismissed as to Distributors.

---

[21]   The County's conclusory allegation that it made "payments for opioids distributed by Defendants," *see* Compl. ¶ 883, cannot save its claim, *inter alia*, because the County does not allege that it made payments *to Distributors*. *See* Broward Reply at Part III; *see also Livonia Diagnostic Ctr., P.C. v. Neurometrix, Inc.*, 2012 WL 2324920, at *6 (E.D. Mich. June 19, 2012) (dismissing unjust enrichment claim that pled merely that "Defendant received a benefit of money from Plaintiff").

Dated:  July 30, 2018                                Respectfully submitted,


*/s/ Robert A. Nicholas*                           */s/ Enu Mainigi*
Robert A. Nicholas                                 Enu Mainigi
Shannon E. McClure                                 F. Lane Heard III
**REED SMITH LLP**                                 Steven M. Pyser
Three Logan Square                                 Ashley W. Hardin
1717 Arch Street, Suite 3100                       **WILLIAMS & CONNOLLY LLP**
Philadelphia, PA 19103                             725 Twelfth Street, NW
Tel: (215) 851-8100                                Washington, DC 20005
Fax: (215) 851-1420                                Tel: (202) 434-5000
rnicholas@reedsmith.com                            Fax: (202) 434-5029
smcclure@reedsmith.com                             emainigi@wc.com
                                                   lheard@wc.com
*Counsel for AmerisourceBergen Corporation*        spyser@wc.com
*and AmerisourceBergen Drug Corporation*           ahardin@wc.com


*/s/ Geoffrey Hobart*                              *Counsel for Cardinal Health, Inc.*
Geoffrey Hobart
Mark Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com


*Counsel for McKesson Corporation*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order Number Four (Dkt. 485, May 22, 2018), the Distributors are permitted to file reply briefs in support of their motions to dismiss totaling 90 pages across the following five local government cases set for briefing:

- *Summit County, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090;
- *City of Chicago, Illinois v. Cardinal Health, Inc., et al.*, No. 18-op-45281;
- *Cabell County Comm'n, West Virginia v. AmerisourceBergen Drug Corp. et al.*, No. 17-op-45053;
- *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, No. 18-op-45158;
- *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332;

This brief adheres to the limits set forth in Case Management Order Number Four, as the combined briefing in those five cases is 89 pages.

*/s/ Robert A. Nicholas*
Robert A. Nicholas

## CERTIFICATE OF SERVICE

I, Robert A. Nicholas, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Robert A. Nicholas*
Robert A. Nicholas