**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| | **Case No. 17-MD-2804** |
| This document relates to: | **Judge Dan Aaron Polster** |
| *Broward County, Florida v. Purdue Pharma L.P., et al.*, Case No. 18-op-45332 | |

**REPLY IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS CVS, WALGREENS, AND WALMART**

## TABLE OF CONTENTS

ARGUMENT ......................................................................................................................... 2

I.     Plaintiff Lacks Standing............................................................................................. 2

II.    Plaintiff Does Not State a Claim Against the Moving Defendants as Pharmacies............ 2

III.   Plaintiff Still Cannot Establish Proximate Cause. ............................................................ 3

IV.    Plaintiff Cannot Overcome the Municipal Cost Recovery Rule......................................... 5

V.     Plaintiff's Individual Claims Fail as a Matter of Law. ...................................................... 6

       A.    Plaintiff Cannot Identify a Duty to Support Its Negligence Claim......................... 6

       B.    Plaintiff Cannot Support Its Nuisance Claim......................................................... 8

       C.    Plaintiff's Fraud Claim Against the Moving Defendants Fails. ........................... 10

       D.    Plaintiff's FDUTPA Claim Against the Moving Defendants Fails. .................... 12

       E.    Plaintiff Has Not Pleaded a Civil Conspiracy Claim Against the Moving
             Defendants. ...................................................................................................... 14

       F.    Plaintiff Has Not Pleaded an Unjust Enrichment Claim Against the
             Moving Defendants............................................................................................ 14

       G.    There Is No Cause of Action for Punitive Damages Under Florida Law............. 14

CONCLUSION..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................. 11, 14

*Bruner v. Anheuser-Busch, Inc.*,
    153 F. Supp. 2d 1358 (S.D. Fla. 2001),
    *aff'd*, 31 F. App'x 932 (11th Cir. 2002) ................................................................................ 4

*CareerFairs.com v. United Bus. Media LLC*,
    838 F. Supp. 2d 1316 (S.D. Fla. 2011) ................................................................................ 13

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
    719 F.2d 322 (9th Cir. 1984) .................................................................................................. 6

*City of Miami v. Citigroup Inc.*,
    801 F.3d 1268 (11th Cir. 2015) ............................................................................................. 6

*City of Phila. v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002) ................................................................................................... 6

*Combs v. Int'l Ins. Co.*,
    354 F.3d 568 (6th Cir. 2004) ................................................................................................ 10

*Cook v. MillerCoors, LLC*,
    829 F. Supp. 2d 1208 (M.D. Fla. 2011) ................................................................................ 7

*Demelus v. King Motor Co. of Fort Lauderdale*,
    24 So. 3d 759 (Fla. Dist. Ct. App. 2009) .............................................................................. 7

*Dent v. Dennis Pharm., Inc.*,
    924 So. 2d 927 (Fla. Dist. Ct. App. 2006) ............................................................................ 7

*District of Columbia v. Air Florida, Inc.*,
    750 F.2d 1077 (D. D.C. 1984) ............................................................................................... 6

*Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*,
    983 So. 2d 1175 (Fla. Dist. Ct. App. 2008) ......................................................................... 7

*Grunow v. Valor Corp. of Fla.*,
    904 So. 2d 551 (Fla. Dist. Ct. App. 2005) ........................................................................... 7

*Harris v. Nordyne, LLC*,
    2014 WL 12516076 (S.D. Fla. Nov. 14, 2014) .................................................................... 12

*Intercoastal Realty, Inc. v. Tracy*,
    706 F. Supp. 2d 1325 (S.D. Fla. 2010) ................................................................................ 13

*Knight v. Merhige*,
    133 So. 3d 1140 (Fla. App. Ct. 2014) .................................................................................... 7

*Labzda v. Purdue Pharma, L.P.*,
    292 F. Supp. 2d 1346 (S.D. Fla. 2003) ................................................................................. 4

*McCain v. Fla. Power Corp.*,
   593 So. 2d 500 (Fla. 1992) ................................................................. 7

*Miller v. Home Depot, U.S.A., Inc.*,
   199 F. Supp. 2d 502 (W.D. La. 2001) ................................................ 6

*Nicolodi v. Harley-Davidson Motor Co.*,
   370 So. 2d 68 (Fla. Dist. Ct. App. 1979) ........................................... 7

*Penelas v. Arms Tech., Inc.*,
   1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999),
   *aff'd*, 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001).......................... 5, 6, 8, 9

*Porsche Cars N. Am., Inc. v. Diamond*,
   140 So. 3d 1090 (Fla. Dist. Ct. App. 2014) ..................................... 13

*Raimi v. Furlong*,
   702 So. 2d 1273 (Fla. Dist. Ct. App. 1997) ..................................... 14

*Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*,
   827 So. 2d 339 (Fla. Dist. Ct. App. 2002) ......................................... 5

*Rhynes v. Branick Mfg. Corp.*,
   629 F.2d 409 (5th Cir. 1980) ............................................................ 10

*Roberts v. Shop & Go, Inc.*,
   502 So. 2d. 915 (Fla. Dist. Ct. App. 1986) ........................................ 3

*Rodriguez v. Recovery Performance & Marine LLC*,
   38 So. 3d 178 (Fla. Dist. Ct. App. 2010) ......................................... 12

*Shurben v. Dollar Rent-A-Car*,
   676 So. 2d 467 (Fla. Dist. Ct. App. 1996) ......................................... 7

*Smith v. 2001 S. Dixie Highway, Inc.*,
   872 So. 2d 992 (Fla. Dist. Ct. App. 2004) ....................................... 12

*Stires v. Carnival Corp.*,
   243 F. Supp. 2d 1313 (M.D. Fla. 2002) ........................................... 12

*Todd v. Societe Bic, S.A.*,
   21 F.3d 1402 (7th Cir. 1994) (en banc) ........................................... 10

*Trespalacios v. Valor Corp. of Fla.*,
   486 So. 2d 649 (Fla. Dist. Ct. App. 1986) ......................................... 7

*United States v. Stevens*,
   994 So. 2d 1062 (Fla. 2008) ............................................................. 7

*United States v. Livdahl*,
   459 F. Supp. 2d 1255 (S.D. Fla. 2005) .............................................. 4

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ....................................................... 13

**Rules**

Fed. R. Civ. P. 9 ...................................................................................................... 11, 12

**Other Authorities**

Restatement (Second) of Torts § 302B .......................................................................... 7

Restatement (Third) of Torts § 8 (Tentative Draft No. 2, April 7, 2014)................................ 9, 10

Having filed a Complaint that relies on 300 pages of impermissible group pleading, Plaintiff Broward County adopts the same strategy in opposing the Moving Defendants' motion to dismiss—hoping that detailed contentions aimed at the Manufacturer Defendants will somehow be sufficient to support causes of action against the Moving Defendants, as to whom the Complaint offers only the most generic allegations.  Indeed, Plaintiff's recent Notice of Supplemental Authority includes exclusively cases that did not name any of the Moving Defendants and just underscores that Plaintiff's theories of liability can survive a motion to dismiss (if at all) only based on allegations of fraudulent and deceptive marketing that have no application to the Moving Defendants.[1]

Thus, while Plaintiff's 65-page opposition brief has a great to deal to say about why Plaintiff believes its claims against the Manufacturer Defendants should survive, it fails to come to grips with the arguments that require dismissal of all claims against the Moving Defendants.[2]

---

[1] In each case that Plaintiff has attached to its Notice, the motion to dismiss was denied based on allegations of fraud and deceit that are not pleaded against the Moving Defendants. *See*, *e.g.*, Notice of Supp. Auth. Ex. A, at 10 (causation based on "alleged misrepresentations" that "served as a proximate cause for the harms the Commonwealth has endured"); *id.* at 15 (public nuisance claim based, in part, on allegation that defendant "misrepresented the effects of its products to physicians"); Notice of Supp. Auth. Ex. B, at 5-7 (unfair trade practices claim based on allegation that defendant "affirmatively misrepresent[ed]" the risks of opioids "through its marketing and advertising"); *id.* at 17 (fraud claim based on allegation that defendant "knowingly misrepresented the efficacy, safety, and risk of its products, through marketing and direct promotion"); *id.* at 17-18 (causation based on allegations of a "very sophisticated fraudulent and deceptive marketing scheme"); Notice of Supp. Auth. Ex. C, at 5-6 (pleading standards met by allegations that defendants "cooperated in an integrated scheme promoting the use of prescription opioids," "engaged in deceptive marketing," and "assisted in . . . scheme by providing funds to front groups"); *id.* at 10-12 (same for deceptive acts or practices claim); *id.* at 15 (same for public nuisance claim); *id.* at 16-17 (same for fraud claim).

[2] The Moving Defendants include CVS Orlando, Florida Distribution, LLC and CVS Vero, Florida Distribution, LLC, Walgreen Co., and Walmart Inc.  Walgreens Boots Alliance, Inc. and CVS Health Corporation were parties to the initial motion to dismiss.  Since that time, Plaintiff has voluntarily dismissed its claims against Walgreens Boots Alliance, Inc. and CVS Health Corporation and added related parties, which step into their shoes for purposes of this motion.

## ARGUMENT

### I.      Plaintiff Lacks Standing.

The Article III standing issue has been fully briefed in the *Summit County* case.  Broward County's brief adds nothing on this point.

### II.      Plaintiff Does Not State a Claim Against the Moving Defendants as Pharmacies.

Rather than concede the obvious—that the Complaint offers no allegations that could support claims against the Moving Defendants acting as pharmacies rather than as distributors, *see* Moving Defs. Br. 2-3—Plaintiff offers this bit of wordplay: "Broward is suing the National Retail Pharmacies in their capacity as retailers . . . not as dispensing pharmacies." Pl. Br. 12.

But, of course, acting "as dispensing pharmacies" is the *only* way in which the Moving Defendants could ever act "as retailers" of prescription opioids.  Whatever Plaintiff means with its repeated references to "the opioid supply chain," the only claims against the Moving Defendants even arguably at issue in this litigation relate to their participation in the supply chain as distributors to their own stores, not as retailers dispensing prescription opioids to individual patients who present prescriptions to pharmacists.

Plaintiff cites a single off-hand allegation about the Moving Defendants' supposed information regarding unidentified doctors writing excessive prescriptions.  Pl. Br. 13.  But Plaintiff does not acknowledge that even this most generic allegation is made entirely "on information and belief"—*i.e.*, concededly unsupported by any evidence actually known to Plaintiff.  *Compare id.* (partially quoting 2d Am. Compl. ¶ 583) *with* 2d Am. Compl. ¶ 583. Otherwise, the allegations that Plaintiff relies on to support its claims against the Moving Defendants as "retailers" (but somehow not as dispensing pharmacies) are based exclusively on the notion that the Moving Defendants did not sufficiently identify or react to an excessive

volume of prescription opioids going into Broward County.  *See* Pl. Br. 12-14.  That is exactly their claim against all of the named distributors of prescription opioids.

### III.     Plaintiff Still Cannot Establish Proximate Cause.

To begin with, causation is not a jury question, as Plaintiff suggests, just because it can be complicated.  *See* Pl. Br. 30-31.  It is well established in Florida as elsewhere that a plaintiff who fails to properly plead proximate cause is subject to dismissal.  *See*, *e.g.*, *Roberts v. Shop & Go, Inc.*, 502 So. 2d. 915, 917 (Fla. Dist. Ct. App. 1986).  And the Moving Defendants have identified three separate reasons why Plaintiff has failed to do so here.  Moving Defs. Br. 3-5.

*Sole proximate cause.*  Plaintiff cannot avoid Florida's doctrine of sole proximate cause as it applies to the *Moving Defendants*, *see* Moving Defs. Br. 3, merely by repeating references to allegations of fraud and deception against the *Manufacturer Defendants*.  *See* Pl. Br. 31 (relying on "deceptive conduct in marketing and selling opioids"); *id*. at 32 ("deceptively marketing and selling pharmaceutical opioids"); *id.* at 33 n.26 ("fraudulent scheme to increase the volume of opioids prescribed and consumed"); *id.* at 33 n.27 (attempting to distinguish case law based on allegation of "decades hiding the true dangers of" opioids).  Whatever the legal significance of these allegations against the Manufacturer Defendants, they cannot establish causation with respect to claims against the Moving Defendants, who had no part in the Manufacturers' alleged scheme.  *See* 2d Am. Compl. ¶¶ 143-464 (detailed description of the Manufacturer Defendants' alleged "multi-pronged scheme" that does not mention any of the Moving Defendants).

Nor does it do Plaintiff any good to insist incorrectly that Florida's sole proximate cause doctrine does not apply to negligence cases.  Pl. Br. 32.  As an initial matter, Plaintiff's proximate cause problem extends to all causes of action asserted against the Moving Defendants,

not just the negligence claim.  Moreover, Plaintiff's argument fails to recognize that *Labzda* itself was a negligence case, in which the court explained that "Florida courts routinely apply the doctrine of sole proximate cause when the user intentionally misuses a product to his detriment." *Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1356 (S.D. Fla. 2003).

And while Plaintiff is correct that other courts have identified dissimilar factual circumstances where the sole proximate cause doctrine may not apply (*e.g.*, not involving the misuse of intoxicants), *Labzda* makes perfectly clear the doctrine's application to this case, holding that it barred claims against the manufacturer of the prescription opioid OxyContin for injuries caused by the drug's misuse.  *Id.* at 1356 ("[T]he intentional misuse of an intoxicating product is the sole proximate cause of the injury under Florida law."); *see also*, *e.g.*, *Bruner v. Anheuser-Busch, Inc.*, 153 F. Supp. 2d 1358, 1361 (S.D. Fla. 2001), *aff'd*, 31 F. App'x 932 (11th Cir. 2002) ("In Florida . . . voluntary drinking of alcohol is the proximate cause of an injury, rather than the manufacture or sale of those intoxicating beverages to that person.").[3]

***The learned intermediary doctrine.***  In their opening brief, the Moving Defendants explained why the learned intermediary doctrine breaks the chain of causation between their alleged conduct and Plaintiff's claimed injuries.  Moving Defs. Br. 4.  Plaintiff's entire response is to say that the *Manufacturer Defendants'* alleged efforts to mislead physicians about the risks of using opioids means that the learned intermediary doctrine should have no application to Plaintiff's claims against them.  Pl. Br. 34-35.  Be that as it may, it has nothing to do with Plaintiff's claims against the *Moving Defendants*.  Plaintiff does not seriously dispute that, under

---

[3] Plaintiff's brief does not mention *Bruner*.  And Plaintiff cannot get around the clear statement of law in *Labzda* by citing *Livdahl*, a criminal case in which the court noted that "civil tort concepts such as duty of care, comparative negligence and *proximate cause* are, in a word, irrelevant."  *United States v. Livdahl*, 459 F. Supp. 2d 1255, 1265 (S.D. Fla. 2005) (emphasis added).

4

the doctrine, the physician's prescribing decision—whether or not improperly influenced by the other Defendants—interrupts causation with respect to claims against the Moving Defendants.

      ***The attenuated chain of alleged causation.***  Without revisiting the points fully briefed in the *Summit County* case, *see* Moving Defs. Summit County Br. 14-17; Moving Defs. Summit County Reply Br. 10-12, suffice it to note here—once again—that Plaintiff cannot rely on the allegation that the *Manufacturer Defendants* perpetrated a scheme to mislead the medical community to resuscitate its claims against the *Moving Defendants* or to distinguish the court's holding in *Penelas v. Arms Tech., Inc.*, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001).  *See* Pl. Br. 35-37.  And Plaintiff's attempt to distinguish *Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. Dist. Ct. App. 2002), on the grounds that Plaintiff supposedly is not seeking healthcare-related expenses is baffling.  Pl. Br. 37.  Plaintiff's Complaint expressly pleads that its injuries include the "[c]osts for providing healthcare and medical care," the costs of acquiring naloxone to treat opioid overdoses, and the "[c]osts associated with emergency responses . . . to opioid overdoses."  2d Am. Compl. ¶¶ 895(b), 895(d), 895(e).

## IV.    Plaintiff Cannot Overcome the Municipal Cost Recovery Rule.

      Faced with Florida authority soundly rejecting its theory of recovery—and unable to muster any Florida authority of its own—Plaintiff is left to quibble about the precedential weight of the on-point holding in *Penelas* that, under Florida law, the municipal cost recovery rule bars a plaintiff from seeking "reimbursement for expenditures made in its performance of governmental functions" absent "express legislative authorization."  1999 WL 1204354, at *2. Plaintiff's insistence that *Penelas* does not possess even "persuasive value," Pl. Br. 14-15, 17, is belied by the fact that multiple federal courts, including the Eleventh Circuit, have pointed to

*Penelas* as persuasive authority under Florida law.  *See, e.g., City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277 (11th Cir. 2015); *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 (3d Cir. 2002); *Miller v. Home Depot, U.S.A., Inc.*, 199 F. Supp. 2d 502, 509 (W.D. La. 2001).

Moreover, any claimed exception to the municipal cost recovery rule in suits to abate a nuisance, *see* Pl. Br. 15, would be inapplicable to Plaintiff's claims for damages here.  The exception is narrow, one of several "distinct, well-defined categories *unrelated to the normal provision of police, fire, and emergency services*."  *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 324 (9th Cir. 1984) (emphasis added) (citing cases involving the remediation of land).  Here, Plaintiff seeks recovery directly related to its general governmental functions in responding to third parties' misuse and abuse of opioids and criminal misconduct.  Such an attempted use of litigation to shift the burden of ordinary governmental costs from taxpayers to individual defendants is exactly what the municipal cost recovery rule prohibits.

Finally, Plaintiff's suggestion that the costs it has incurred are so unusual and unexpected as to fall outside the scope of the municipal cost recovery rule is mistaken.  *See* Pl. Br. 15.  The rule's application does not turn on whether there is an unanticipated budget shortfall but on the nature of the services provided.  *City of Flagstaff*, 719 F.2d at 324; *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077 (D. D.C. 1984) (no recovery for municipal costs incurred responding to an airplane crash).  Whether the government is seeking to recoup costs incurred responding to gun violence (as in *Penelas*) or the misuse of opioids, such a recovery requires statutory authorization.

## V.  Plaintiff's Individual Claims Fail as a Matter of Law.

### A.  Plaintiff Cannot Identify a Duty to Support Its Negligence Claim.

Plaintiff correctly concedes that it can show no "special relationship" that would create a duty on the part of the Moving Defendants to protect Plaintiff from the misconduct of third

parties.  Pl. Br. 23 n.16; *see* Moving Defs. Br. 7-8.  Plaintiff also recognizes that the Complaint's references to statutory and regulatory obligations cannot create tort law duties that do not otherwise exist.  Pl. Br. 27-30; *see* Moving Defs. Br. 8.  Instead, Plaintiff says it can satisfy the duty element of its negligence claim with allegations that the third-party misconduct that directly caused Plaintiff's injuries was somehow especially foreseeable to the Moving Defendants.  The theory appears to be that, because the diversion of prescription opioids is allegedly a foreseeable consequence of a "failure" to properly "control the supply chain," the Moving Defendants had a common law tort duty to protect Plaintiff from the consequences of the abuse of both prescription and illicit opioids by third parties and associated third-party criminality.  Pl. Br. 24.

That is not Florida law.  Plaintiff's authorities either found that no duty existed, are not binding, or involve fact patterns not relevant to Plaintiff's claims against the Moving Defendants.[4]  In fact, in case after case, courts applying Florida law have held that there is no duty to prevent the third-party misuse of a lawfully sold product—even when the product's dangerous properties are well known and the misuse is foreseeable.  *Cook v. MillerCoors, LLC*, 829 F. Supp. 2d 1208, 1217 (M.D. Fla. 2011); *Grunow v. Valor Corp. of Fla.*, 904 So. 2d 551 (Fla. Dist. Ct. App. 2005); *Trespalacios v. Valor Corp. of Fla.*, 486 So. 2d 649, 651 (Fla. Dist.

---

[4] *See*, *e.g.*, *Knight v. Merhige*, 133 So. 3d 1140 (Fla. App. Ct. 2014) (finding no duty); *Demelus v. King Motor Co. of Fort Lauderdale*, 24 So. 3d 759 (Fla. Dist. Ct. App. 2009) (same); *Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175 (Fla. Dist. Ct. App. 2008) (same); *Dent v. Dennis Pharm., Inc*., 924 So. 2d 927 (Fla. Dist. Ct. App. 2006) (same); *see also United States v. Stevens*, 994 So. 2d 1062 (Fla. 2008) (distinguished by *Cook*, 829 F. Supp. 2d at 1217); *McCain v. Fla. Power Corp*., 593 So. 2d 500, 502-03 (Fla. 1992) (distinguished by *Cook*, 829 F. Supp. 2d at 1217); *Shurben v. Dollar Rent-A-Car*, 676 So. 2d 467 (Fla. Dist. Ct. App. 1996) (distinguished by *Knight*, 133 So. 3d at 1149); *Nicolodi v. Harley-Davidson Motor Co*., 370 So. 2d 68 (Fla. Dist. Ct. App. 1979) (involving the "crashworthiness doctrine" as applied to manufacturer of motorcycles); Restatement (Second) of Torts § 302B (involving situations where the "known character, past conduct, and tendencies of the person whose intentional conduct causes the harm" are such that harm should have been foreseen).

Ct. App. 1986).  And to the extent Plaintiff means to base its claim on the notion that certain

Defendants had "exclusive knowledge" of the risks of prescription opioids, Pl. Br. 22, 25, the

assertion does not apply to the Moving Defendants.  The Moving Defendants have never had

access to better information about the risks of prescription opioids than the medical community

generally, including Plaintiff's own public health officials.[5]

       **B.**       **Plaintiff Cannot Support Its Nuisance Claim.**

*Penelas* demonstrates that Florida courts will reject a novel claim for public nuisance

based on the distribution and sale of a lawful product, especially when the defendant had no

control over the product at the time when it created the alleged nuisance.  Both the trial court in

*Penelas* and the appellate court, in a published opinion, flatly rejected under Florida law the

nuisance theory that Plaintiff advances here.  *See Penelas*, 1999 WL 1204353, at *4 ("Public

nuisance does not apply to the design, manufacture, and distribution of a lawful product");

*Penelas*, 778 So. 2d at 1045 ("The County's request that the trial court . . . declare that the

appellees' business methods create a public nuisance, is an attempt to regulate firearms and

ammunition through the medium of the judiciary. . . .  The power to legislate belongs not to the

judicial branch of government, but to the legislative branch.").

       Plaintiff cannot avoid *Penelas* by reframing its Complaint.  Plaintiff suggests, in turn,

that: (i) its alleged harms somehow do not stem from the misuse of opioids by third parties

beyond Moving Defendants' control, Pl. Br. 18, 20; (ii) the alleged nuisance in this case is not

the abuse of opioids (or related criminal acts) but simply the Moving Defendants' own actions,

---

[5] The Florida Department of Health-Broward County is "responsible for protecting, promoting and improving the health of the county's 1.8 million residents and over 10 million annual visitors," with a budget exceeding $46 million annually and a staff of 550, including physicians, pharmacists, and epidemiologists, among others.  http://broward.floridahealth.gov/about-us/index.html.

over which they had control, *id.* at 20; and (iii) *Penelas* did not involve allegations of a fraudulent scheme to deceive the public about the dangers of firearms, *id.* at 18, 20.  The first two points are belied both by common sense and by a cursory examination of the Complaint.[6]  At the risk of stating the obvious, there would be no opioids crisis and no alleged nuisance in Broward County if third parties over whom the Moving Defendants have no control did not use and/or sell opioids illicitly.  Meanwhile, Plaintiff's third point is unsupported by any legal authority and, in any event, relies exclusively on allegations of fraud against the *Manufacturer Defendants*, not the *Moving Defendants*.  *See id.* at 18 (arguing that Manufacturer Defendants misrepresented the "safety risks of prescription opioids"); *id.* at 20 (arguing that the "Marketing Defendants" and "Supply Chain Defendants"[7] engaged in "a fraudulent and deceptive scheme").

Unable to distinguish *Penelas* or identify any Florida authority upholding an analogous claim, Plaintiff is left to seize upon broad language in inapposite cases, inviting this Court to ignore *Penelas* and expand tort liability well beyond anything previously known in Florida law.  *See* Pl. Br. 16-17.[8]  But the Sixth Circuit has warned against "speculat[ing] on any trends of state

---

[6] *E.g.*, 2d Am. Compl. ¶ 32 (defining the "public nuisance" as "opioid abuse, addiction, morbidity and mortality" and alleging that "the diversion of legally produced controlled substances into the illicit market causes or contributes to this public nuisance"); *id.* ¶ 17 (alleging that the oversupply of prescription opioids "fuel[ed] an illegal secondary market"); *id.* ¶ 19 (alleging that "opioid pill mills and rogue prescribers . . . channel opioids for illicit use"); *id.* ¶ 22 (alleging "severe and far-reaching . . . criminal justice consequences" including "addiction, overdose, and death from illicit drugs such as heroin"); *see also*, *e.g.*, Pl. Br. 58 ("Pharmacy Defendants . . . fail[ed] to report the obvious diversion of opioids to criminals and addicts.").

[7] The Moving Defendants are excluded from the Complaint's allegations against the "Supply Chain Defendants."  2d Am. Compl. ¶ 95 n.14; *id.* ¶ 776; *id.* at 261.

[8] Courts and commentators have recognized that the broad language used in certain public nuisance cases can be misleading.  In 2014, the American Law Institute issued a draft of the Restatement (Third) of Torts, which observes that liability for public nuisance based on "products that have caused harm" has been "rejected by most courts."  Restatement (Third) of Torts § 8, cmt. g (Tentative Draft No. 2, April 7, 2014).  While "the term 'public nuisance' has

law," noting that federal courts "should be extremely cautious about adopting 'substantive innovation' in state law." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577-78 (6th Cir. 2004) (quoting *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. 1980)).  "[W]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [courts] should choose the narrower and more reasonable path." *Id.* at 577 (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc)).  These concerns are only heightened in an area of law like public nuisance, and where the clearest state authority points decidedly the other way.

### C.   Plaintiff's Fraud Claim Against the Moving Defendants Fails.

In their motion to dismiss, the Moving Defendants pointed out that Plaintiff's Complaint failed to plead with particularity any fraudulent statement or omission by any of the Moving Defendants, pleaded "no facts" showing the existence of a fiduciary relationship or relation of trust and confidence between Plaintiff and any of the Moving Defendants, and failed to adequately allege causation by failing to identify any transaction between Plaintiff and any of the Moving Defendants.  Moving Defs. Br. 11-12.

While conceding that its fraud claim must clear these hurdles to survive, Plaintiff's response confirms each deficiency.  Rather than pinpoint even one fraudulent statement or omission by any of the Moving Defendants, Plaintiff simply gestures at 38 paragraphs of the Complaint about the "Pharmacy Defendants."  Pl. Br. 58.  Many are made on "information and belief."  Even then, they describe conduct by only *some* of the Moving Defendants—most of which took place outside of Florida.  None involves a transaction with Plaintiff.  And none

---

sometimes been defined in broad language," the ALI drafters explain, "[t]he traditional office of the tort . . . has been narrower than those formulations suggest, and contemporary case law has made clear that its reach remains more modest." *Id.*  The fact is that "the common law of public nuisance is an inapt vehicle for addressing the conduct at issue." *Id.*

involves an alleged fraudulent misrepresentation or omission to Plaintiff.  Thus, Plaintiff's allegations do not come close to satisfying the particularity requirements under Rule 9(b).

Moreover, rather than identifying facts that would support the existence of a "fiduciary relation" or a "confidence . . . reposed" and a "trust accepted," as necessary to support an omission-based fraud claim, Moving Defs. Br. 12, Plaintiff relies on astoundingly broad and conclusory allegations that *every* participant in the prescription opioid supply chain is "in a position of special trust and responsibility" with Broward County, *see* Pl. Br. 59 (quoting 2d Am. Compl. ¶ 142).  Plaintiff cannot sidestep the clear requirements of Florida law with such "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, and most egregiously, in an effort to argue that it has sufficiently pleaded causation as to the Moving Defendants, Plaintiff points to allegations that expressly *exclude* the Moving Defendants.  Plaintiff argues that "Broward explicitly alleged that it would not have paid for particular opioids prescriptions to treat chronic pain had *Defendants involved in the Opioid Supply Chain Enterprise* disclosed the true nature of the drugs' addictive effects and Defendants' efforts to increase supply while shirking their respective legal responsibilities."  Pl. Br. 60 (citing 2d Am. Compl. ¶ 809, § IV.B) (emphasis added).  But the Complaint expressly excludes the Moving Defendants from the definition of the "Opioid Supply Chain Enterprise."  *See* 2d Am. Compl. ¶ 843 (defining "Opioid Supply Chain Enterprise" as "consist[ing] of the RICO Supply Chain Defendants"); *id.* ¶ 95 n.14 & ¶ 776 (defining "RICO Supply Chain Defendants").

11

### D.      Plaintiff's FDUTPA Claim Against the Moving Defendants Fails.

Plaintiff's FDUTPA claim, which is based on the same alleged fraud by *the*

*Manufacturer Defendants*, suffers all of the same deficiencies (and more) as the fraud claim.[9]

First, Plaintiff misleadingly argues again that it has adequately pleaded causation and

damages for its FDUTPA claim as to the Moving Defendants based on allegations about the

"Opioid Supply Chain Enterprise."  Pl. Br. 48.  As noted above, the Moving Defendants are not

among the Defendants that Plaintiff says are part of that "enterprise."

Second, Plaintiff's theory of causation could apply only if Plaintiff itself is the

"consumer."  *See id.* (defending "causation theory" based solely on allegations about its own

"opioids purchases").  But Plaintiff still does not point to any specific allegation that it purchased

prescription opioids from any of the Moving Defendants.[10]

---

[9] Plaintiff suggests that FDUTPA claims are categorically exempt from the heightened pleading requirements of Rule 9(b).  Pl. Br. 45 n.31.  Plaintiff relies on *Harris v. Nordyne, LLC*, which acknowledges the "line of cases" that "hold that Rule 9(b) applies to the extent that the FDUTPA claim at issue is based in fraud."  2014 WL 12516076, *4 (S.D. Fla. Nov. 14, 2014); *see*, *e.g.*, *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b).").  *Harris* adopted a different view by reasoning that a typical FDUTPA claim seeks a remedy for "conduct distinct from traditional common law torts such as fraud."  2014 WL 12516076, at *4.  In stark contrast, Plaintiff's FDUTPA claim here is a rehash of its overarching theory of fraud against the Manufacturer Defendants and bears no resemblance to a traditional FDUTPA claim.

[10] Plaintiff's damages claim is also barred because it seeks special or consequential damages that are unavailable to FDUTPA plaintiffs.  Moving Defs. Br. 14-15.  Plaintiff argues that the 2001 amendments to FDUTPA allow for damages other than market-value loss, citing two federal district courts allowing a specific exception for *competitor* suits based on lost profits.  Pl. Br. 50.  Plaintiff is obviously not a competitor.  Moreover, those cases are contradicted by multiple decisions of the Florida appellate courts confirming that, after the 2001 amendments, "actual damages" under FDUTPA are still limited to market-value loss.  *See*, *e.g.*, *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. Dist. Ct. App. 2004) (rejecting recovery of monetary damages related to a loss of employment as "actual consequential" damages that are not recoverable under FDUTPA); *Rodriguez v. Recovery Performance & Marine LLC*, 38 So. 3d 178, 180-81 (Fla. Dist. Ct. App. 2010) (rejecting recovery of damages for a car down payment, payments on the loan, interest, and the balance of a loan as improper "consequential damages").

Third, Plaintiff points out that declaratory and injunctive relief, as well as money damages, may be available under FDUTPA.  *Id.* at 50.  But a FDUTPA claim for declaratory or injunctive relief still requires an underlying unfair or deceptive act or practice.  *See CareerFairs.com v. United Bus. Media LLC*, 838 F. Supp. 2d 1316, 1324 (S.D. Fla. 2011).  And both require a consumer injury.  An "unfair act" must cause a substantial consumer injury that the consumer could not reasonably have avoided.  *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. Dist. Ct. App. 2014).[11]  A "deceptive act" requires "'probable, not possible, deception' that is 'likely to cause injury to a reasonably relying consumer.'"  *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007).

The only deceptive or unfair act or practice asserted against the Moving Defendants is a supposed failure to disclose alleged noncompliance with regulatory reporting requirements.  *See* 2d Am. Compl. ¶ 926.  Beyond seeking to impose an expansive and implausible duty on every single business entity in Florida, Moving Defs. Br. 13-14, Plaintiff pleads no facts and provides no explanation how the claimed failure to inform governmental entities about noncompliance causes substantial *consumer* injury or is likely to mislead consumers to their detriment.  The Complaint's conclusory allegations suggest no facts that would support a finding that the alleged omissions by the Moving Defendants had an effect on any individual consumer's decision about whether or where to fill prescriptions for opioid medications.

---

[11] Plaintiff relies on an outdated definition of what constitutes an "unfair practice" under FDUTPA.  *See* Pl. Br. 47 (defining "unfair practice" as one that "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," quoting *Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010)).  Florida courts have expressly rejected that definition in favor of the test outlined in Moving Defendants' motion to dismiss.  *See Porsche Cars*, 140 So. 3d at 1096-98.

### E.  Plaintiff Has Not Pleaded a Civil Conspiracy Claim Against the Moving Defendants.

Of the multiple pleading defects that the Moving Defendants identified in connection with Plaintiff's civil conspiracy claim, *see* Moving Defs. Br. 15-16, Plaintiff attempts to address only one: its failure to allege any *agreement* involving the Moving Defendants, which is the heart of any conspiracy claim. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997) ("civil conspiracy requires . . . an agreement between two or more parties").  Yet of all the allegations of the Complaint that Plaintiff cites in an effort to sidestep this failure, *see* Pl. Br. 61, not one asserts any sort of relevant agreement involving any of the Moving Defendants.

### F.  Plaintiff Has Not Pleaded an Unjust Enrichment Claim Against the Moving Defendants.

The Moving Defendants pointed out that Plaintiff's massive Complaint fails to allege a single specific instance in which Plaintiff purchased a prescription opioid from any one of the Moving Defendants.  Moving Defs. Br. 16.  Plaintiff does not disagree.  Instead it relies entirely on the implausible blanket allegation that it purchased prescription opioids from every single distributor named as a defendant in the entire case, without providing any information about even one such transaction.  Pl. Br. 39 (citing 2d Am. Compl. ¶ 967).  Such boilerplate and "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

### G.  There Is No Cause of Action for Punitive Damages Under Florida Law.

Plaintiff concedes that its Claim 13 attempts to plead a cause of action that does not exist. *See* Pl. Br. 62.

## CONCLUSION

All claims of Plaintiff Broward County against the Moving Defendants should be dismissed.

Dated:  July 30, 2018                  Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Ste. 300
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlit-beck.com

*Counsel for Walgreen Co.*

/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Ste. 1000
Washington, DC 20036
(202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Orlando, Florida*
*Distribution, LLC and CVS Vero, Florida*
*Distribution, LLC*

/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

15

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing Reply in Support of Motion to Dismiss by Defendants CVS, Walgreens, and Walmart is within the pages limitations permitted by CMO 1 and CMO 4 in this matter, subject to a pending motion for additional pages.

/s/ Kaspar J. Stoffelmayr

Kaspar J. Stoffelmayr

*Counsel for Walgreen Co.*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this 30th day of July, 2018, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.


                           /s/ Kaspar J. Stoffelmayr
                           Kaspar J. Stoffelmayr

                           *Counsel for Walgreen Co.*