UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*City of Chicago. v. Cardinal Health Inc. et al.*<br>Case No. 18-op-45281 | MDL No. 2804<br>Case No. 17-md-2804<br>Judge Dan Aaron Polster |

**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY
<u>DEFENDANTS WALMART INC. AND CVS INDIANA, LLC</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................... 1
ARGUMENT ........................................................................................................................... 1
I.     The City Lacks Standing to Sue the Moving Defendants ................................................. 1
II.    The City States No Claims Against the Moving Defendants as Pharmacies ..................... 1
III.   The City Cannot Establish the Elements of Public Nuisance (Count 1) ............................ 2
    A.    The Complaint fails to plausibly allege that the Moving Defendants committed any act which unreasonably interfered with any public right .............. 2
    B.    The City cannot establish proximate cause ............................................................ 3
IV.   The City's Negligence Claim is Legally Deficient (Count 2) ............................................ 4
    A.    The Moving Defendants do not owe a common law duty to the City .................... 4
    B.    The learned-intermediary doctrine and economic-loss rule fully apply ................ 5
V.     The City Fails to State a Claim for Unjust Enrichment (Count 3) ..................................... 6
VI.   The City Fails to Establish an Actionable Civil Conspiracy Claim (Count 4) .................. 7
VII.  The City Fails to State a Consumer Fraud Claim (Count 5) ............................................. 7
VIII. The City's Municipal Services Claim Must Be Dismissed (Count 6) ............................... 7
IX.   The City's Drug Dealer Liability Act Claim Must Be Dismissed (Count 7) ..................... 8
CONCLUSION ........................................................................................................................ 9
CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f) ........................................ 11
CERTIFICATE OF SERVICE ............................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 2

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004) ...................................................................................... 1, 2, 8

*City of Chicago v. Purdue Pharma L.P.*,
  211 F. Supp. 3d 1058 (N.D. Ill. 2016) ............................................................................... 7

*Cooper v. Purdue Frederick Co., Inc.*,
  2008 WL 11355004 (E.D. La. Nov. 5, 2008) ..................................................................... 8

*Iseberg v. Gross*,
  879 N.E.2d 278 (Ill. 2007) ................................................................................................. 4

*Kirk v. Michael Reese Hosp. & Med. Ctr.*,
  513 N.E.2d 387 (Ill. 1987) ................................................................................................. 5

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
  435 N.E.2d 443 (Ill. 1982) ................................................................................................. 6

*Muirfield Vill.-Vernon Hills, LLC. V. K. Reinke, Jr. & Co.*,
  810 N.E.2d 235 (Il. App. Ct. 2004) ................................................................................... 6

*Simpkins v. CSX Transp., Inc.*,
  965 N.E.2d 1092 (Ill. 2012) ........................................................................................... 4, 5

*Steed v. Bain-Holloway*,
  356 P.3d 62 (Okla. Civ. App. 2015) .................................................................................. 9

*Widlowski v. Durkee Foods*,
  562 N.E.2d 967 (Ill. 1990) ............................................................................................. 4, 5

**STATUTES**

740 Ill. Comp. Stat. 57/10 ........................................................................................................ 9

740 Ill. Comp. Stat. 57/15 ........................................................................................................ 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

740 Ill. Comp. Stat. 57/25 ....................................................................................................9

740 Ill. Comp. Stat. 57/70 ....................................................................................................9

Chicago Ordinance MCC § 1-20-020 ..............................................................................7, 8

La. Rev. Stat. § 9:2800.61 *et seq*. ........................................................................................8
    La. Rev. Stat. § 9.2800.63 .................................................................................................8

6488050.1

## INTRODUCTION

The City's opposition to the Moving Defendants' motion to dismiss cannot overcome the many fatal deficiencies in its Complaint. The City cannot distinguish the Illinois Supreme Court's dispositive decision in *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004). And even if *Beretta* did not foreclose this suit, the City's own theory of the case, which pinpoints a host of other culprits for its claimed harms, demonstrates that it cannot adequately plead causation as to the Moving Defendants. For these and other reasons offered below and in the Moving Defendants' *Summit County* Reply, the City's suit should be dismissed.

## ARGUMENT

**I.    The City Lacks Standing to Sue the Moving Defendants.**

The City asserts Article III standing on the ground that "it has made, and will be required to make, direct payments from the public coffers to address the opioid crisis." Chi. Br. 3. But even if these alleged costs are traceable to opioid manufacturers and marketers (or others directly responsible for the opioid crisis), they are not fairly traceable to the Moving Defendants; and in any event, these costs cannot confer standing because they are derivative of harms to third parties. *Summit County* Reply 2-4.

**II.    The City States No Claims Against the Moving Defendants as Pharmacies.**

The Moving Defendants' opening brief noted that vague allegations in the Complaint might be read to assert claims against them as dispensing pharmacies rather than distributors and moved to dismiss any such claims. Moving Defs.' Br. 3. The City, apparently conceding the point, offers no response. To avoid confusion, the Court should dismiss any such claims.

**III.     The City Cannot Establish the Elements of Public Nuisance (Count 1).**

   **A.     The Complaint fails to plausibly allege that the Moving Defendants committed any act which unreasonably interfered with any public right.**

As the Moving Defendants' opening brief explained, "the Complaint never identifies any specific act by the Moving Defendants … that violates any law or interferes with any public right," and instead offers "the kind of cursory or conclusory assertions of liability that are patently insufficient to state a claim" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moving Defs.' Br. 4.  In response, the City merely cites some of the Complaint's insufficient allegations, without explaining how they satisfy *Iqbal*.  Chi. Br. 6.  And while the City incorporates the *Summit County* plaintiffs' brief, that brief also offers no substantive response.  *See Summit County* Reply 15.

Moreover, *Beretta*, 821 N.E.2d at 1113-16, forecloses the City's claim that opioid distribution interferes with a "public right."  *See* Major Distributors' Br. 3-5.  Rather than offering a legal argument for why *Beretta* does not apply, the City merely asserts that it is "*factually distinguishable* from this case" because it "involved guns," whereas "[t]his case … involves opioids."  Chi. Br. 6 (emphasis added).  As with any two cases, there are indeed factual distinctions—*Beretta* concerned products designed to kill, while this case concerns government-approved medicines.  But the factual differences do not change the fact that *Beretta*'s legal analysis bars the City's nuisance claim.  *See* 821 N.E.2d at 1116 (finding no "public right to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, a car, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another").

The City's attempt to distinguish *Beretta* on the ground that the opioid epidemic "is not predicated on illegal conduct or crimes committed by others," Chi. Br. 7—a theme that runs throughout the City's brief—is flatly inconsistent with the story the Complaint tells.  The Complaint is replete with references to illegal acts by third parties, including manufacturers (whom

2

the City has sued separately, *see* Chi. Br. 1) who allegedly marketed opioids by falsely minimizing their dangers, Compl. ¶¶ 10-12; physicians who ran "pill mills," *id.* ¶ 15; criminals who diverted prescription opioids to the black market, *id.* ¶ 9; and drug users who abused both illegally obtained prescription opioids and illegal drugs such as heroin and fentanyl, *id.* ¶¶ 17, 19. By the City's own account, the opioid crisis would never have existed *at all* without illegal acts by third parties.

      **B.**      **The City cannot establish proximate cause.**

The City cannot establish proximate cause because the Moving Defendants' alleged acts and omissions are too remote from the alleged harms, the causal chain is severed by the intervening conduct of other actors, and the City's alleged injuries are derivative of harms to third parties. Moving Defs.' Br. 5-6; *see also* Major Distributors' Br. 13-16; *Summit County* Reply 10-12. The City responds that its claim "is not dependent on the illegal conduct of others" and "exists notwithstanding the acts of any third parties (legal or illegal)." Chi. Br. 9. As discussed above, however, it is impossible to square this assertion with the Complaint, which is full of allegations of illegal acts by third parties without which the alleged harms would not have occurred. Indeed, if one ignores the allegations of illegal conduct by third parties (as the City incoherently seeks to do), all that remains is a complaint against the Moving Defendants for distributing government-approved medications in the quantities necessary to fill valid prescriptions written by physicians for their patients' lawful medical use. It may be that prescription opioids sometimes cause harm even when used legally—they would not be controlled substances if they presented no risks—but the task of weighing the costs and benefits in that context falls to manufacturers, government regulators, and prescribing physicians. With or without its allegations of illegal conduct by third parties, the City's Complaint must be dismissed.

3

**IV.     The City's Negligence Claim is Legally Deficient (Count 2).**

   **A.     The Moving Defendants do not owe a common law duty to the City.**

The Moving Defendants have demonstrated that they lack both common law and statutory duties to the City. Moving Defs.' Br. 7-11. The City now disclaims any reliance on statutory duty, resting its claim on common law duty alone. Chi. Br. 12. But the City identifies no case law or other authority concluding that companies such as the Moving Defendants have a common law duty to monitor pharmacy orders—let alone a duty that would run to municipalities indirectly injured by the misuse of those orders. The City instead relies on the general principle that a person owes a duty of ordinary care to others foreseeably harmed by the person's conduct. Chi Br. 13. Yet the Illinois Supreme Court has refused to recognize a common law duty where the relationship between parties is so attenuated that the recognition of a duty "would create … practical difficulties" with respect to "defining the parameters of [the] obligation." *Iseberg v. Gross*, 879 N.E.2d 278, 291 (Ill. 2007). Recognizing a duty here would create many such "practical difficulties." Courts would have to determine whether this duty applies in a particular case, what "reasonable care" means in a given situation, and to whom such a duty might run. *See Summit County* Reply 6. The City does not even acknowledge, much less attempt to answer, these difficult questions.

The City claims that the existence of a duty under Illinois law turns on four factors: foreseeability, the likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. Chi. Br. 13 (citing *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1098 (Ill. 2012)). These factors counsel against imposing a duty here. First, the foreseeability of the injury deserves little weight, because Illinois courts have recognized that "[i]t can be said, with the benefit of hindsight, that virtually every occurrence is foreseeable." *Widlowski v. Durkee Foods*, 562 N.E.2d 967, 969 (Ill. 1990). In any event, the

4

City's injuries were not a foreseeable result of the Moving Defendants' conduct here.  Second, the City identifies no facts—only a conclusory allegation in the complaint—suggesting that the injury here was "likely."  *See* Chi Br. 13.  Finally, the burden sought to be imposed on the Moving Defendants is "heavy": On the City's theory, the Moving Defendants would potentially be liable "to the world at large"—including entities (like the City) *indirectly* affected by injuries to individual opioid users caused by the affirmative acts of third parties.  *Widlowski*, 562 N.E.2d at 969.  And the burden of guarding against the injury would likewise be enormous, particularly because it was directly caused by third parties acting independently of the Moving Defendants.

The City's allegations against the Moving Defendants boil down to the claim that the Moving Defendants failed to intervene (by reporting alleged "suspicious orders" to the DEA) to *stop* harms caused by third parties.  But the City's cases acknowledge that, generally, defendants "do not owe an affirmative duty to protect or rescue a stranger."  *Simpkins*, 965 N.E.2d at 1097.  The City's theory of duty would upend this foundational principle.

>   **B.**     **The learned-intermediary doctrine and economic-loss rule fully apply.**

The Moving Defendants have explained that the learned-intermediary doctrine precludes recognition of a common law duty on the part of distributors.  Moving Defs.' Br. 8.  The City responds that the "learned intermediary doctrine is … *principally* a defense in personal injury failure to warn cases against drug manufacturers," and that this is not a failure-to-warn case.  Chi. Br. 16 (emphasis added and deleted).  But regardless of whether the doctrine is *principally* applicable in failure-to-warn cases, the City never denies that it *also* applies in negligence cases such as this one.  More to the point, the doctrine reflects the principle that a distributor of a drug owes no duty to the ultimate user where a physician has an intervening duty to exercise medical judgment and to "decid[e] which available drug best fits the patient's needs."  *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 393 (Ill. 1987).  That principle applies here.

5

The Moving Defendants have also shown that the economic-loss rule forecloses the City's claims. Moving Defs.' Br. 8. The City responds that that rule "does not bar recovery in tort." Chi. Br. 18. But the Illinois Supreme Court has expressly ruled that it covers products-liability tort cases. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448 (Ill. 1982). The City also claims that it has brought a "negligence claim," "not a products-liability" claim. Chi Br. 19. But under Illinois law, "recovery for solely economic losses *in relation to a product* may not be had *upon a tort theory of negligence*." *Muirfield Vill.-Vernon Hills, LLC. V. K. Reinke, Jr. & Co.*, 810 N.E.2d 235, 247 (Il. App. Ct. 2004) (emphasis added). The City's "tort theory of negligence" is "in relation to a product." Claims resting on purely economic losses are therefore barred.

## V. The City Fails to State a Claim for Unjust Enrichment (Count 3).

The Moving Defendants' opening brief explained that the City fails to allege that the Moving Defendants received any benefit, as required to state a claim for unjust enrichment. Moving Defs.' Br. 11-12; *see also* Major Distributors' Br. 24-26. In response, the City stakes its unjust enrichment claim on the novel and far-reaching proposition that a plaintiff confers a benefit on a defendant and may sue for disgorgement whenever the plaintiff pays for some of the negative externalities allegedly created by the defendant's business, even though those payments do not enrich the defendant. Chi. Br. 21-22. The City offers no authority for this proposition.[1] It merely incorporates the arguments of the *Summit County* plaintiffs, which fail for the reasons given in the Moving Defendants' *Summit County* reply. *See Summit County* Reply 16-19.

---

[1] The City cites one case for the proposition that a plaintiff may recover on a theory of "'negative unjust enrichment' consisting of the unjust avoidance of a loss," Chi. Br. 22, and it argues that "Defendants were aware that they saved costs and expenses that allowed them to distribute more opioids, and make more money, than if they had internalized the actual cost of their activities." *Id.* at 21. But there is no reason to suppose that the Moving Defendants would have paid "expenses for police, emergency, health, addiction treatment, prosecution, corrections, rehabilitation, hospitalization, and other services," *id.*, if the City had not done so. The City accordingly cannot identify any "loss" that its expenditures allowed the Moving Defendants to avoid.

**VI.     The City Fails to Establish an Actionable Civil Conspiracy Claim (Count 4).**

As the Moving Defendants have already explained, the City's civil conspiracy claim should be dismissed because the City fails to allege either an agreement joined by the Moving Defendants or an unlawful overt act committed in furtherance of that agreement.  Moving Defs.' Br. 12-14; *see also* Major Distributors' Br. 29.  The City (Chi. Br. 23-25) does not respond to or even acknowledge these deficiencies, including the Moving Defendants' arguments that the City fails to allege that they were affiliated with the trade groups at the core of its allegations, that coming together to influence the government is protected by the First Amendment, and that Defendants' alleged behavior is equally consistent with non-conspiratorial parallel conduct.  Instead, the City's response simply repeats the arguments made in the *Summit County* plaintiffs' brief, and it fails to persuade for the same reasons.  *See Summit County* Reply 19-22.

**VII.    The City Fails to State a Consumer Fraud Claim (Count 5).**

The City's consumer fraud claim should be dismissed because the Moving Defendants' alleged conduct is not "unfair" as a matter of law.  Moving Defs.' Br. 14-15; *see also* Major Distributors' Br. 21-24 (additional grounds for dismissal).  While the City acknowledges (Chi. Br. 30 n.27) that the federal district court in Chicago dismissed the analogous "unfair practices" claim that it asserted against the Manufacturer Defendants, *see City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1074-76 (N.D. Ill. 2016), the City makes no attempt to explain why "that decision was incorrect" or why its claim here is distinguishable.  Instead, the City simply rehashes the arguments rejected in *Purdue Pharma*.  *Compare* Chi. Br. 30-32, *with* 211 F. Supp. 3d at 1074-76.  Those arguments remain meritless.

**VIII.   The City's Municipal Services Claim Must Be Dismissed (Count 6).**

The Moving Defendants have shown that the City's claim under Chicago Ordinance MCC § 1-20-020 fails.  Moving Defs.' Br. 15-16; *see also Purdue Pharma*, 211 F. Supp. 3d at 1083

7

(dismissing the City's § 1-20-020 claim against the Manufacturer Defendants on causation grounds). The City's claim is also barred by the free public services doctrine, or "municipal cost recovery rule," adopted in *Beretta*, 821 N.E.2d at 1144-47. Moving Defs.' Br. 16; *see also* Major Distributors' Br. 18-20.

In response, the City contends that *Beretta* recognizes an exception that renders the doctrine inapplicable when the recovery is authorized by statute. Chi. Br. 19-20, 33. According to the City, its claim "fit[s] squarely" (*id.* at 20) within this exception because MCC § 1-20-020 allows for recovery of such costs. But *Beretta*, which held that the free public services doctrine precluded the City from recovering law enforcement and medical services expenditures allegedly incurred as a result of gun violence, was decided in 2004. 821 N.E.2d at 1144-47. MCC § 1-20-020, formerly codified at MCC § 8-28-020, has been on the books since 1990. Far from supporting the City's position, *Beretta* forecloses it.

## IX. The City's Drug Dealer Liability Act Claim Must Be Dismissed (Count 7).

The Moving Defendants' opening brief explained why the City's claim under the Drug Dealer Liability Act ("DDLA")—a law that targets illegal drug markets, not legitimate distributors of prescription drugs—should be dismissed. The City's arguments to the contrary fail.

*First*, the City attempts to distinguish *Cooper v. Purdue Frederick Co.*, 2008 WL 11355004 (E.D. La. Nov. 5, 2008), by stating that the DDLA uses the term "drug dealer" only in its title. Chi. Br. 34 n.32. But the statute at issue in *Cooper* uses the term "drug dealer" just once: in the legislative intent section. *See* La. Rev. Stat. § 9:2800.61 *et seq*. Its operative provisions, like those of the DDLA, are keyed to persons who knowingly participate in an illegal drug market. *See*, *e.g.*, *id.* § 9:2800.63. And there can be no doubt that drug dealers were the target of the DDLA. Its legislative findings speak of "first-time, casual dealer[s]," "small dealers . . . who are not usually

8

the focus of criminal investigations," and how "small dealers . . . are the people who become large dealers." 740 Ill. Comp. Stat. 57/10.

*Second*, the City's discussion of the DDLA's knowledge requirement (Chi. Br. 33, 35) only confirms that it has failed to state a claim. The City alleges that the Moving Defendants failed to detect, report, and reject suspicious orders, but not that they did so *knowingly*.[2]

*Third*, the City cannot escape the DDLA's requirement that a claim be based on a specific individual user. Chi. Br. 34 n.32. The DDLA defines "'[i]ndividual drug user'" as "the individual whose illegal drug use *is the basis of an action* brought under this Act." 740 Ill. Comp. Stat. 57/15 (emphasis added). And such users are at the heart of how the DDLA operates. A cause of action accrues based on the "illegal drug use that is the basis for the cause of action." 740 Ill. Comp. Stat. 57/70. The recovery provisions are similarly tied to an individual drug user, allowing, for example, an employer *of an individual drug user* to recover damages. *Id.* 57/25(a). In the same way, whether a defendant knowingly participated in the illegal drug market depends on the location, type of drug, and time period of drug use for the individual drug user. *Id.* 57/25(b). Relying on multitudes of unnamed drug users is contrary to the statute.

Finally, the City never addresses the Moving Defendants' argument that the DDLA's causation presumption violates both federal and state due process. *See Steed v. Bain-Holloway*, 356 P.3d 62, 68 (Okla. Civ. App. 2015).

## CONCLUSION

All claims against the Moving Defendants should be dismissed with prejudice.

---

[2] In any event, knowingly failing to establish a monitoring system for suspicious orders, or knowingly failing to report and reject such orders, would not amount to knowing participation in an *illegal* drug market, which is what the DDLA requires. Knowingly violating regulatory duties is not the same as knowingly participating in an illegal drug market. 740 Ill. Comp. Stat. 57/10(9) (stating that the DDLA imposes liability on "those who intentionally join the illegal drug market").

9

Dated:  30 July 2018

      Respectfully submitted,

/s/    Tara A. Fumerton

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

/s/    Eric R. Delinsky (consent)

Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Indiana, LLC*

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

This Court has ordered that length limitations applicable to complex cases apply to this matter.  ECF No. 232 at 4 (No. 1:17-MD-2804).  The foregoing Reply is 9 pages in length and within Rule 7.1(f)'s limit for a complex case.

This Court has further ordered that the Moving Defendants' reply briefs in five matters—*Summit County*, *City of Chicago*, *Broward County*, *Cabell County*, and *Monroe County*—should be limited to a total of 60 pages.  ECF. No. 485 at 2-3 (No. 1:17-MD-2804).  The 24-page reply in *Summit County* was filed on July 13, 2018, leaving 36 pages for the remaining four briefs.  This Reply is 9 pages in length, one quarter of that amount.

/s/    Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on July 30, 2018, this Reply was filed electronically on the master docket for this matter.  This Court has ordered that "[e]lectronic case filing of a document, other than an initial pleading, in the master docket shall be deemed to constitute proper service on all parties."  ECF No. 232 at 8 (No. 1:17-MD-2804).

      / s/   Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com