**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*Broward County, Florida v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45332 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**REPLY IN SUPPORT OF**
**DISTRIBUTORS' MOTION TO DISMISS**
**<u>SECOND AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 1

I.      THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED. ................................... 1

II.     THE NEGLIGENCE CLAIM SHOULD BE DISMISSED. ............................................ 4

III.    THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. ........................... 6

IV.     THE FREE PUBLIC SERVICES DOCTRINE BARS THE COUNTY'S
        CLAIMS. ........................................................................................................... 7

V.      THE COMPLAINT FAILS TO PLEAD PROXIMATE CAUSATION ........................... 8

VI.     THE CONSUMER FRAUD CLAIM SHOULD BE DISMISSED ................................. 8

VII.    THE RICO AND FLORIDA RICO CLAIMS SHOULD BE DISMISSED. ................... 11

VIII.   THE FRAUD CLAIM SHOULD BE DISMISSED. ..................................................... 11

IX.     THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ................................ 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ............................................................................12

*Burlington N. & Santa Fe Ry. Co. v. Grant*,
   505 F.3d 1013 (10th Cir. 2007) ..............................................................................2

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
   273 F.3d 536 (3d Cir. 2001)....................................................................................1

*City of Miami v. Citigroup Inc.*,
   801 F.3d 1268 (11th Cir. 2015) ...........................................................................6, 7

*City of Philadelphia v. Beretta U.S.A., Corp.*,
   126 F. Supp. 2d 882 (E.D. Pa. 2000) ......................................................................1

*City of Philadelphia v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002)....................................................................................1

*Cofield v. Lead Indus. Ass'n, Inc.*,
   2000 WL 34292681 (D. Md. Aug. 17, 2000) ..........................................................2

*Comm'r v. Bosch's Estate*,
   387 U.S. 456 (1967).................................................................................................1

*F.T.C. v. Wash. Data Res.*,
   856 F. Supp. 2d 1247 (M.D. Fla. 2012), *aff'd*, 704 F.3d 1323 (11th Cir. 2013) ....................10

*Gorran v. Atkins Nutritionals, Inc.*,
   464 F. Supp. 2d 315 (S.D.N.Y. 2006), *aff'd*, 279 F. App'x 40 (2d Cir. 2008)........................10

*Guerrero v. Target Corp.*,
   889 F. Supp. 2d 1348 (S.D. Fla. 2012) ...................................................................7

*Hampton Co. Nat'l Sur., LLC v. Tunica County*,
   543 F.3d 221 (5th Cir. 2008) ..................................................................................1

*Harris v. Nordyne, LLC*,
   2014 WL 12516076 (S.D. Fla. Nov. 14, 2014)........................................................8

*Haskin v. R.J. Reynolds Tobacco Co.*,
   995 F. Supp. 1437 (M.D. Fla. 1998).....................................................................12

*Hennegan Co. v. Arriola*,
   855 F. Supp. 2d 1354 (S.D. Fla. 2012) ...................................................................9

*Hummel v. Tamko Bldg. Prods., Inc.*,
    2015 WL 12843907 (M.D. Fla. Nov. 6, 2015) .......................................................................8

*In re Ins. Brokerage Antitrust Litig.*,
    2006 WL 2850607 (D. N.J. Oct. 3, 2006)..........................................................................12

*Labzda v. Purdue Pharma, L.P.*,
    292 F. Supp. 2d 1346 (S.D. Fla. 2003) ...............................................................................5

*Licul v. Volkswagen Grp. of Am., Inc.*,
    2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) .......................................................................7

*Mantz v. TRS Recovery Servs., Inc.*,
    2011 WL 5515303 (S.D. Fla. Nov. 8, 2011).....................................................................10

*Patel v. Catamaran Health Solutions*,
    LLC, 2016 WL 5942475 (S.D. Fla. Jan. 14, 2016)............................................................4

*Randolph v. 9-1-19 Co.*,
    2008 WL 2385230 (M.D. Fla. June 7, 2008)....................................................................10

*Rowe v. Mentor Worldwide, LLC*,
    297 F. Supp. 3d 1288, 1297 (M.D. Fla. 2018)...................................................................4

*Scolieri v. John Hancock Life Ins. Co.*,
    2017 WL 700215 (M.D. Fla. Feb. 22, 2017) ...................................................................11

*SilverHorse Racing, LLC v. Ford Motor Co.*,
    2016 WL 7137273 (M.D. Fla. Apr. 27, 2016)..................................................................12

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
    984 F.2d 915 (8th Cir. 1993) ............................................................................................2

## STATE CASES

*Clark v. Greenville County*,
    437 S.E.2d 117 (S.C. 1993) ...............................................................................................3

*Dent v. Dennis Pharm., Inc.*,
    924 So. 2d 927 (Fla. App. 2006).....................................................................................5, 6

*Estep v. State ex rel. Caro*,
    23 So. 2d 482 (Fla. 1945)................................................................................................3, 4

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
    1 So. 3d 400 (Fla. App. 2009).............................................................................................6

*Gelman Scis., Inc. v. Dow Chem. Co.*,
    508 N.W.2d 142 (Mich. Ct. App. 1993) (per curiam) .........................................................3

*Patton v. Simone*,
    1992 WL 183064 (Del. Super. Ct. June 25, 1992) ...................................................3

*Penelas v. Arms Technology, Inc.*,
    1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla.
    App. 2001) ...................................................................................................... *passim*

*Peoples National Bank of Commerce v. First Union National Bank of Fla., N.A.*,
    667 So. 2d 876 (Fla. App. 1996) ............................................................................6

*Rodriguez v. Recovery Performance & Marine, LLC*,
    38 So. 3d 178 (Fla. App. 2010) .............................................................................10

*Smith v. 2001 S. Dixie Hwy., Inc.*,
    872 So. 2d 992 (Fla. App. 2004) ...........................................................................11

*State v. Lead Indus. Ass'n, Inc.*,
    951 A.2d 428 (R.I. 2008) ........................................................................................2

*Traube v. Freund*,
    775 N.E.2d 212 (Ill. App. Ct. 2002) .......................................................................2

## OTHER AUTHORITIES

57A Am. Jur. 2d Negligence §136 (2d ed. 1989) ...........................................................5

15 U.S.C. § 45(a) .............................................................................................................10

Fla. Stat. § 501.204(2)......................................................................................................10

The County's Opposition ignores Florida law and fails to overcome the defects identified in Distributors' opening brief.  Its claims against Distributors should be dismissed.

## ARGUMENT

## I.     THE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED.

The thrust of the County's Opposition is that the Court should ignore the common-law principles articulated in *Penelas v. Arms Technology, Inc.*, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla. App. 2001), which held that distributors of lawful products cannot be liable in public nuisance because (1) "[p]ublic nuisance does not apply to the design, manufacture, and distribution of a lawful product," and (2) "a party cannot be held liable for nuisance absent control of the activity which creates the nuisance."

The County argues that *Penelas* lacks persuasive value because it is a trial court opinion. Opp. 15.  This is wrong, first of all, because *Penelas* applies public nuisance principles that are part of nearly every state's common law to a situation similar to the case at hand.  Second, the Florida District Court of Appeal upheld the trial court's dismissal.  *Penelas*, 778 So. 2d at 1045. Third, other courts have found *Penelas*'s nuisance analysis persuasive.[1]  Fourth, as a general matter, a "state trial court … decision may be 'attributed some weight' on interpreting state law," particularly where there is no state appellate court authority on point.  *Hampton Co. Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 226 (5th Cir. 2008) (quoting *Comm'r v. Bosch's Estate*, 387 U.S. 456 (1967)).

The County's efforts to distinguish *Penelas* are unavailing.  It says that, unlike Miami-Dade County's harms in *Penelas*, its harms "do not arise from the ***misuse*** of … products."  Opp.

---

[1]  *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 (3d Cir. 2002); *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001); *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 910 (E.D. Pa. 2000).

18 (emphasis in original).[2]  But the Complaint says the opposite: "This case arises from … the *misuse*, abuse, and over-prescription of opioids."  Compl. ¶ 5.  The County now argues that its claim is based on the lawful use of opioids.  Opp. 18.  But it cannot state a claim ***against Distributors*** for harms caused by opioid medications that were legitimately prescribed, legitimately dispensed, and legitimately used by patients.  In a case about the lawful use of opioid medications, no diversion occurred, and there is no basis for liability against Distributors. Where the allegation is deceptive marketing, the County's dispute is with Manufacturers.[3]

The County's attempt to distinguish *Penelas*'s control requirement is equally flawed. The County says that Distributors "had complete control over their own behavior, but instead they allowed the vastly increased supply of prescription opioids to wreak havoc in Broward and elsewhere."  Opp. 20.  But "control" over one's own behavior is not the standard.  The same could have been said of the gun distributors in *Penelas*—they controlled their own actions and "allowed" the supply of guns to exist in Miami-Dade County (because they supplied them).  The court rightly focused instead on whether the defendants had "***control of the activity which creates the nuisance***," which it defined as "the criminal or reckless misuse of firearms." *Penelas*, 1999 WL 1204353, at *4.  *Penelas*—like numerous other cases[4]—demonstrates that a

---

[2]  Unless otherwise noted, all emphases are added.

[3]  Opp. 18 ("The use of opioids—by law-abiding, non-negligent pain patients, in precisely the manner intended *by the Manufacturer Defendants*—itself gives rise to addiction ….").  The County goes on to say that it has alleged "an intentional, systematic fraudulent scheme by Defendants that was intended to misrepresent the safety risks of prescription opioids and foster widespread and excessive opioid prescribing."  *Id.*  But the only allegations concerning the scheme relate to the Manufacturer Defendants.

[4]  *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1026 (10th Cir. 2007) (an "individual[] may be held liable to the extent he was responsible for the maintenance of a nuisance that was under his *possession or control*"); *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) ("[N]uisance [liability] turns on whether the defendant is in control of the instrumentality alleged to constitute a nuisance, since without control a defendant cannot abate the nuisance."); *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 449 (R.I. 2008) (same); *Traube v. Freund*, 775 N.E.2d 212, 216 (Ill. App. Ct. 2002) (same); *Cofield v. Lead Indus. Ass'n, Inc.*, 2000 WL 34292681, (continued…)

2

party does not control the activity that creates a nuisance by distributing a product that is (i) subsequently used (ii) by someone else (iii) not under the control of the defendant (iv) in a manner that causes harm.  Applied here, the "activity which creates the nuisance" is diversion (the transfer of the medications to someone not authorized to have them), misuse (the taking of the pills for improper purposes), or, as the County now insists, legal use (resulting from the marketing that allegedly deceived doctors into over-prescribing opioids).  But, just as the gun distributors had no control over the persons who misused guns, Distributors have no control over the individuals who misuse or divert, or the doctors who mis-prescribe (whether as a result of deceptive marketing or for some other reason), opioid medications.

The County's argument that it is not attempting to regulate prescription opioids through judicial action likewise fails to withstand scrutiny.  The County expressly seeks to enforce controlled substances regulations through the mechanism of public nuisance.  Compl. ¶ 935.  Just as the County is not permitted to enforce those regulations directly, or through negligence *per se*, Broward Br., Dkt. 591-1 ("Br.") at Part IV.A–B, it may not enforce them through the "guise" of public nuisance.  *Penelas*, 778 So. 2d at 1045.

The County cites *Estep v. State ex rel. Caro*, 23 So. 2d 482 (Fla. 1945), a case with wildly different facts that has never been cited by any court.  That case, which held that the **unlicensed** practice of medicine is a nuisance *per se*, *id.* at 483, cuts against the County.  This suit is against **licensed** Distributors, whose licenses are reviewed and renewed annually by federal and state regulatory agencies.  That renewal turns on Distributors' compliance with the

---

at *7 (D. Md. Aug. 17, 2000) (holding a distributor cannot be liable for nuisance because it lacks control over products after sale); *Gelman Scis., Inc. v. Dow Chem. Co.*, 508 N.W.2d 142, 144 (Mich. Ct. App. 1993) (per curiam); *Clark v. Greenville County*, 437 S.E.2d 117, 119 (S.C. 1993); *Patton v. Simone*, 1992 WL 183064, at *13 (Del. Super. Ct. June 25, 1992).

same regulations on which the County's claim is based.  A tort claim based on conduct reviewed and passed on by regulatory bodies is the definition of "an attempt to regulate … through the medium of the judiciary."  *Penelas*, 778 So. 2d at 1045.[5]

Finally, the County's conclusory statement that it has alleged interference with a public right is incorrect for the reasons stated in the *Summit County* and *City of Chicago* replies. Summit Reply, Dkt. 744 at Part II.B; Chicago Reply, at Part I.

## II.      THE NEGLIGENCE CLAIM SHOULD BE DISMISSED.

The Opposition's argument regarding negligence is flawed in three principal respects. First, for substantially the reasons explained in Distributors' *Summit County* reply, because the law prohibits a private right of action to enforce Distributors' regulatory reporting obligations, the County can maintain a negligence claim for violating those obligations only if it can point to a preexisting, parallel common-law duty to report or halt suspicious orders.  *See* Summit Reply, Dkt. 744 at Part III.B; *Patel v. Catamaran Health Sols.*, LLC, 2016 WL 5942475, at *8 (S.D. Fla. Jan. 14, 2016) ("Florida law is clear that no private right of action exists for alleged statutory violations, ***even on common law theories***, unless the text or legislative history … confirms that the Legislature intended to confer such a right.").[6]

Second, the Opposition fails to identify a duty running from Distributors ***to the County***. According to the County, a duty runs to it merely because its harm was "foreseeable."  However,

---

[5]  The County says "[t]he Florida Supreme Court has declared that public nuisance doctrine can be employed to 'protect the public health, morals, safety and welfare,'" citing *Estep* as the source of the quoted language.  Opp. 16.  That language does not appear in *Estep* or any case cited by the County.

[6]  Allegations of negligence *per se* do not fix this problem.  Under Florida law, "violation of a federal regulation does not create civil liability based upon a theory of negligence *per se* in the absence of evidence of a legislative intent to create a private cause of action."  *Rowe v. Mentor Worldwide, LLC*, 297 F. Supp. 3d 1288, 1297 (M.D. Fla. 2018).  The Opposition fails to identify any such evidence, just as it fails to identify any case that has recognized a preexisting common-law duty to report suspicious activity.

4

> [*F*]*oreseeability should not be confused with duty.*  If there is no duty, the principle of foreseeability to determine the scope of duty is inapplicable.  And foreseeability should not be employed as the sole means to create a duty where none existed before.

57A Am. Jur. 2d Negligence § 136 (2d ed. 1989).  For this reason and those explained in the *Summit County* reply, Distributors owed no duty to the County.  Summit Reply, Dkt. 744 at Part III.B.

Finally, the County's effort (at Opp. 23 n.16) to distinguish *Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346 (S.D. Fla. 2003), is unavailing.  In *Labzda*, the court held that (i) under Florida law, pharmaceutical manufacturers had no duty to control a doctor's practice of prescribing OxyContin, and (ii) the Controlled Substances Act imposed no duty on manufacturers to police the activities of physicians:  "Florida law does not impose a duty on the defendants to interfere with the physician-patient relationship, even if they were aware that the product may have been prescribed inappropriately." *Id*. at 1355.  If, as the court found, there was not a "special relationship" between the manufacturers and the doctor—even where the manufacturers deal directly with the doctor by providing instructions for use, warnings, and marketing material—then *a fortiori* Distributors had no such "special relationship" with doctors or other downstream actors with whom Distributors had no dealings.  The County speculates that, had the plaintiff in *Labzda* proffered evidence "that Purdue knowingly and intentionally created a scheme to deceive well-meaning doctors … into prescribing … opioids, the duty analysis would be substantially different."  Opp. 23 n.16.  But that speculation, even if it had any basis, is irrelevant *as to Distributors*.  For this reason, and the additional reasons given in the *Summit County* reply, Distributors did not have a duty to control the intentional (and likely criminal) conduct of third parties further down the chain of distribution.[7]

---

[7]  Cases cited by the County similarly undercut its argument.  For example, in *Dent v. Dennis Pharm.,* (continued…)

## III.     THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The County concedes that, to state a claim for unjust enrichment, the benefit allegedly conferred by the plaintiff on the defendant "must be direct."  Opp. 40.  The County's argument that it "ma[de] payments for opioids" goes only halfway to meeting the requirement, because it did not allege that it made the payments **to Distributors**.  *Id.*  For example, in *Peoples National Bank of Commerce v. First Union National Bank of Florida, N.A.*, 667 So. 2d 876, 878 (Fla. App. 1996), the plaintiff alleged that the defendants were unfairly enriched by receiving payments that should have gone to the plaintiff.  The court dismissed the claim, explaining that "if any benefit was conferred upon [defendants] in the form of overpayments, it could only have been conferred upon them by [a third party], not [plaintiff]."  *Id.* at 879; *see Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. App. 2009) (no claim for unjust enrichment where plaintiff made payments to third party and not to defendant).  Similarly, the County alleges that it paid for opioids, but it fails to allege that it paid any money directly to Distributors.  This failure is fatal.[8]

Even less direct is the benefit allegedly conferred on Distributors by reason of the County's expenditures on "health insurance, treatment services and other categories."  Opp. 40. These payments were made to, or on behalf of, County residents, not Distributors.  This argument based on "externalities" is foreclosed by *City of Miami v. Citigroup Inc.*, 801 F.3d

---

*Inc.*, 924 So. 2d 927, 929 (Fla. App. 2006), the Court held that a pharmacy owed no duty to an unidentifiable third party harmed by a customer who had received drugs from the pharmacy.  The court held that, "[w]hether [the customer] would take the medication and then drive, or even take the medication at all, was beyond the pharmacy's control," *id.*, just as, here, the actions of others in the opioid supply chain were beyond Distributors' control.

[8]  The claim also fails because the Opposition does nothing to explain how it is unjust or in violation of good conscience for Distributors to supply FDA-approved medicines to licensed pharmacies at an agreed-upon price.  Both Distributors and their customers received the benefits for which they bargained.  If the County paid for medicines that were mis-prescribed or over-prescribed (whether due to an allegedly (continued…)

6

1268 (11th Cir. 2015).  There, the Eleventh Circuit observed that neither the court nor the parties identified "a single Florida case supporting an unjust enrichment claim" where a plaintiff allegedly was "forced to pay for [the defendant's] externalities," and held that the "City's claims do not fit within an unjust enrichment framework."  *Id.* at 1274, 1277.  Contrary to the County's argument (Opp. 40), the Court's holding was not limited to "missing tax revenue":  the Eleventh Circuit squarely held that "[m]unicipal expenditures" are "not a benefit directly conferred on the [defendant], as is required for an unjust enrichment claim under Florida law."  *Id.* at 1277.  For this reason, and the reasons given in Distributors' *City of Chicago* reply, the Court should reject the County's "externalities" argument.  Chicago Reply, at Part V.[9]

## IV.  THE FREE PUBLIC SERVICES DOCTRINE BARS THE COUNTY'S CLAIMS.

The County does not dispute that the ***only*** Florida case to consider the question held that "[m]unicipal costs of providing public services are not recoverable as a matter of law" because "[n]o Florida statute authorizes the County to seek recovery" of such costs.  *Penelas*, 1999 WL 1204353, at *2; *accord City of Miami*, 801 F.3d at 1277 ("Municipal expenditures … do not appear to be among the types of benefits that can be recovered … under Florida law.")  Nor does it dispute that, absent express statutory authorization, the "dominant rule throughout the country is that local governments are precluded from asserting claims for damages against private entities

---

deceptive marketing campaign or some other reason), its complaint is not with Distributors.

[9]  The County is also wrong that pleading in the alternative allows it to bring an unjust enrichment claim where the claim "relies upon the same factual predicates as … [the] legal causes of action."  *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013).  Under these circumstances, the unjust enrichment claim "is not a true alternative theory of relief but rather is duplicative of those legal causes of action."  *Id.*; *see also Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012) (same).  The County says *Licul* is distinguishable because the defendants conceded the existence of a legal cause of action.  Opp. 39.  That is half right.  While *Licul* held that an unjust enrichment claim should be dismissed in part because the defendant conceded that there was an express contract governing the subject of the dispute, it separately held that the claim failed because the misconduct underlying the unjust enrichment claim was indistinguishable from the misconduct (continued…)

7

seeking reimbursement for police, medical and other costs incurred in the performance of public duties." Br. 16. For these reasons, and the additional reasons set forth in Distributors' *Cabell County* reply, the free public services doctrine bars the County's claims. Cabell Reply, at Part IV.B.

## V.  THE COMPLAINT FAILS TO PLEAD PROXIMATE CAUSATION.

In order to plead proximate causation, the County concedes it must allege facts suggesting that Distributors were the "direct[]" cause of their injury. Opp. 30; *see* Br. 16–17. As explained in Distributors' *Summit County* reply, the Complaint fails adequately to allege that Distributors' purported wrongdoing **directly** injured the County. Summit Reply, Dkt. 744 at Part IV. Even if the County were correct that "[p]hysicians' decisions to [over-]prescribe opioids" were a foreseeable consequence of the Manufacturers' alleged "scheme to mislead prescribing doctors by misrepresenting the risks and benefits of opioids," Opp. 36, that does not explain how ***Distributors'*** alleged misconduct (i.e., the non-reporting of suspicious orders to state and federal agencies) was the direct cause of harm to patients—let alone to the County.

## VI.  THE CONSUMER FRAUD CLAIM SHOULD BE DISMISSED.

Distributors' opening brief demonstrated that the County failed to state a FDUTPA claim against Distributors. None of the County's contrary arguments has merit.

First, the County fails to plead a FDUTPA violation with the particularity required by Rule 9(b).[10] *E.g.*, *Hummel v. Tamko Bldg. Prods., Inc.*, 2015 WL 12843907, at *2–3 (M.D. Fla.

---

underlying the plaintiffs' FDUTPA claim. 2013 WL 6328734, at *7–8.

[10] The County's contention that Rule 9(b) does not apply to FDUTPA claims, Opp. 45 n.31, is contrary to the great weight of authority. *See* Br. 3 (citing cases). In any event, the County does not respond to Distributors' argument that pleading with particularity is required "when the facts underlying the misrepresentation at stake in the claim are said to be part of a fraud claim." Br. 4 (citing cases). Here, the County's FDUTPA claim arises from the same course of conduct as its fraud claims. *Compare* Compl. ¶¶ 970–90 *with* Compl. ¶¶ 920–30; *see also* Br. 4. *Harris v. Nordyne*, *LLC*, 2014 WL 12516076, at *2 (continued…)

Nov. 6, 2015) (dismissing FDUTPA claim for failure to plead misstatements and omissions with particularity).  The allegations to which the Opposition points as sufficiently particular either (1) relate exclusively to non-Distributor defendants, *e.g.*, Compl. ¶¶ 146–423, 568–79, 581–83, 585–87, 590, 603–06, 713, or (2) fail to describe actionable conduct with particularity, *e.g.*, *id*. ¶¶ 473–94, 522–60, 644–76, 724–30.  As to Distributors, the Complaint's sole allegation is the conclusory assertion that they omitted "the material fact of [their] failure to design and operate a system to disclose suspicious orders of controlled substances" and failed "to actually disclose such suspicious orders."  *Id*. ¶ 926.  But the Complaint does not identify any pharmacy in the County that placed a suspicious order or any specific order that a Distributor allegedly shipped to the County—let alone tie any such order to the County's claimed damages.

Second, whether labeled a *per se* violation or a free-floating unfair trade practice, the County fails to establish that its claimed injuries "directly flow" from Distributors' alleged violations.  *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012); *see also* Br. 7–8.  According to the County, it "would not have made [opioid] purchases" but for Distributors' "acts of failing to identify, control or report opioid diversion and abuse."  Opp. 48.  But that assertion makes no sense.  The County complains about the total volume of opioid medications supplied to pharmacies in the County, calling it a "flood[]," *e.g.*, Opp. 53, but Distributors consistently reported the total volume to DEA, and that reporting had no effect on the County's purchases.[11]  The Opposition makes no effort to explain how or why Distributors' alleged failure to file suspicious order reports with the DEA affected in any way the County's decision to

---

(S.D. Fla. Nov. 14, 2014) is fully consistent with this rule, as the allegations there concerned only FDUTPA and unjust enrichment claims, not fraud claims.

[11]  The Complaint does not allege otherwise; indeed, the MDL plaintiffs rely on the ARCOS data, which is a compilation of that very reporting.

purchase opioid medications—nor could it plausibly do so.

The Opposition likewise does not explain how Distributors' alleged failure to file confidential, non-public reports with state and federal regulators was likely to mislead **consumers**.  For this reason, too, the FDUTPA claim should be dismissed.  *See F.T.C. v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1272 (M.D. Fla. 2012) ("unfair or deceptive acts or practices in or affecting commerce" under 15 U.S.C. § 45(a) require likelihood of "mislead[ing] consumers"), *aff'd*, 704 F.3d 1323 (11th Cir. 2013); Fla. Stat. § 501.204(2) (affording "great weight" to judicial interpretations of 15 U.S.C. § 45(a)).

Third, the County has not adequately pled actual damages cognizable under FDUTPA. As a threshold matter, the County does not dispute that the statute bars recovery for "medical expenses incurred as a result of … personal injuries." Br. 8 (quoting *Randolph v. 9-1-19 Co.*, 2008 WL 2385230, at *2 (M.D. Fla. June 7, 2008)).  Accordingly, the County's claim for medical and similar expenses is barred by FDUTPA.

The County's claim for damages relating to its alleged purchases of opioid medications also fails.  FDUTPA authorizes only "actual damages"—measured by the difference in market value between the product as delivered and the product as contracted—not consequential damages.  *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. App. 2010); *see* Br. 6–7.  Neither the Complaint nor the Opposition explains how Distributors' "alleged unfair or deceptive practices caused a diminution in the value of the [opioids] that [the County] purchased." *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 329 (S.D.N.Y. 2006), *aff'd*, 279 F. App'x 40 (2d Cir. 2008).  The County's FDUTPA claim should thus be dismissed.  *Mantz v. TRS Recovery Servs., Inc.*, 2011 WL 5515303, at *2 (S.D. Fla. Nov. 8, 2011) ("If a plaintiff fails to allege a recoverable loss under FDUTPA, the complaint fails to state

10

a claim." (citing *Smith v. 2001 S. Dixie Hwy., Inc.*, 872 So. 2d 992, 994 (Fla. App. 2004))).[12]

## VII.  THE RICO AND FLORIDA RICO CLAIMS SHOULD BE DISMISSED.

For the reasons explained in Distributors' *Summit County* and *Monroe County* replies, Broward County's RICO and Florida RICO claims fail as a matter of law.  Summit Reply, Dkt. 744 at Part I; Monroe Reply, at Part II.

## VIII.  THE FRAUD CLAIM SHOULD BE DISMISSED.

The County's fraud claim fails for two independent reasons.  First, the County failed to plead the alleged fraud with particularity, as Rule 9(b) requires.  Br. 13–14.  The County's response—which focuses on statements by everyone **but** Distributors—proves the point.  Opp. 57–58.  As to Distributors, the County focuses on alleged misconduct—"fraudulent behavior," according to the County.  Opp. 58; *see also id.* at 59 ("Thus, Broward has alleged fraudulent activity with sufficient particularity.").  But fraud requires a false **statement**.  *Scolieri v. John Hancock Life Ins. Co.*, 2017 WL 700215, at *3–4 (M.D. Fla. Feb. 22, 2017).

Second, the County relies on allegedly misleading omissions, but a fraudulent omission requires a duty to speak, and the County has not identified any such duty that Distributors owed **to the County**.  Br. 14.  Distributors' suspicious order reporting obligations run to the DEA, **not** the County.[13]  Nor has the County identified any other source of a duty to disclose.  Instead, the County simply identifies more information it believes Distributors should have disclosed, such as

---

[12]  While the County points to cases authorizing FDUTPA damages based on allegations of lost profits or lost business opportunities, Opp. 49–50, those cases all involve business competitors, and are thus plainly inapposite here.  The County cites no case—and Distributors are aware of none—holding that a purchaser need not plausibly allege a diminution in value in order to satisfy the actual damages requirement.

[13]  Distributors also submit detailed reports regarding *every* shipment of opioids to the DEA.  Thus, the County's suggestion that a duty to disclose arises where "some artifice or trick is employed to prevent an independent investigation," Opp. 59, is not only legally irrelevant (because the duty would still flow to the DEA, not the County), but factually unsupported (as there is no allegation that Distributors failed to provide the DEA with information that would permit "an independent investigation").

"the addictive nature of opioids."  Opp. 59.  But without an affirmative duty to speak, the lack of disclosure on any subject remains non-actionable.

## IX.    THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

The Opposition makes no attempt to address the authorities cited by Distributors and the other defendants; all it does is identify paragraph numbers from its Complaint and declare them, without explanation, to be sufficient.  The County's conspiracy claim fails for two reasons.

First, the Complaint pleads no facts suggesting that Distributors agreed to engage in unlawful activity.  The County's allegations of conspiracy amount to assertions that defendants had commercial relationships, Compl. ¶¶ 496–99, were members of and participated in trade associations, *id*. ¶¶ 500–15, and petitioned government bodies for legislative change, *id*. ¶¶ 516–18.  None of that conduct remotely suggests a conspiratorial agreement.[14]

Second, the County has not established an underlying tort or act in furtherance of the alleged conspiracy.  The County cannot rely on its negligence or nuisance claims as a predicate for the purported conspiracy.  *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1440 (M.D. Fla. 1998) (dismissing conspiracy claim predicated on allegations of negligence and recklessness because conspiracy requires "an intentional act").  Nor can the County rely on its RICO or fraud-based causes of action, which have not been pled with particularity and fail for the reasons given above.  *Id.* (dismissing conspiracy claim insofar as it was inextricably linked to fraud claim, which court dismissed).  The conspiracy claim should thus be dismissed.

---

[14]  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) ("[I]t was well-settled before *Twombly* that participation in trade organizations provides no indication of conspiracy."); *In re Ins. Brokerage Antitrust Litig.*, 2006 WL 2850607, at *16 (D.N.J. Oct. 3, 2006) ("The mere allegations that the Defendants did business with one another or contracted together does not suffice to establish the existence of an enterprise."); *SilverHorse Racing, LLC v. Ford Motor Co.*, 2016 WL 7137273, at *2–3 (M.D. Fla. Apr. 27, 2016) (discussing rule that "[j]oint efforts to influence public officials do not violate the antitrust laws").

Dated:  July 30, 2018

Respectfully submitted,


/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Corporation*
*and AmerisourceBergen Drug Corporation*


/s/ Geoffrey E. Hobart
Geoffrey E. Hobart
Mark H. Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
Tel: (202) 662-6000
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*

/s/ Enu Mainigi
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order Number Four (Dkt. 485), Distributors are permitted to file reply briefs totaling 90 pages across the following five local government cases set for briefing:

- *Summit County, Ohio, et al. v. Purdue Pharma, L.P., et al.*, No. 18-op-45090;
- *City of Chicago, Illinois v. Cardinal Health, Inc., et al.*, No. 18-op-45281;
- *Cabell County Comm'n, West Virginia v. AmerisourceBergen Drug Corp. et al.*, No. 17-op-45053;
- *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, No. 18-op-4515; and
- *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332.

This brief adheres to the limits set forth in Case Management Order Number Four, as the combined reply briefing in those five cases is 89 pages.

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart

## CERTIFICATE OF SERVICE

I, Geoffrey E. Hobart, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart