**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE NATIONAL PRESCRIPTION** | ) | **CASE NO. 17-MD-2804** |
| **OPIATE LITIGATION** | ) | |
| | ) | **SPECIAL MASTER COHEN** |
| **This document relates to:** | ) | |
| **All Cases** | ) | |
| | ) | **DISCOVERY RULING REGARDING** |
| | ) | **THE "TEAMSTERS MATERIALS"** |

The undersigned has received two letters, one from plaintiffs and one from defendant McKesson Corporation, regarding discovery of materials related to a document titled "McKesson Corporation Board of Directors' Response to the International Brotherhood of Teamsters" (referred to below as the "Board Response"). For the reasons stated below, and as summarized in the Conclusion at page 11, the Special Master **grants plaintiffs' request for discovery in part**.

I.      **Background.**

In April of 2015, McKesson agreed to pay a civil penalty of $150 million to the federal government to settle various claims, including an alleged lack of suspicious order reporting as required by federal law. The International Brotherhood of Teamsters, which is a large McKesson shareholder, then raised questions about whether the McKesson Board and senior management had exercised adequate oversight over McKesson's distribution of prescription opioid medications. In response, McKesson created a Special Review Committee to investigate the Teamsters' concerns.

The Committee retained the law firm of Wilson Sonsini Goodrich & Rosati to assist with the investigation. Wilson Sonsini interviewed forty-six witnesses and collected and reviewed numerous

documents and reported its findings to the Committee. The Committee ultimately produced the Board Response, which concluded that McKesson's oversight procedures could be improved but that the McKesson Board and senior management had not engaged in any serious wrongdoing.

Plaintiffs in this case have obtained McKesson's 40-page Board Response, but now seek production of the following related materials: (1) a list of the forty-six individuals interviewed; (2) any statements collected from the forty-six individuals interviewed; (3) the search terms applied to collect documents for review in creating the Board Response; and (4) the actual documents collected by applying these search terms, if not already produced in discovery. McKesson opposes production of these materials, asserting attorney-client privilege and the work product doctrine. Plaintiffs respond that the materials are not privileged or, if they are, McKesson waived privilege by publishing the Board Response.

## II.    Legal Standards and Discussion.

The attorney-client privilege protects confidential communications between lawyers and their clients, promoting full and frank communication. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The privilege applies if the following essential elements are met: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Fausek v. White*, 965 F.2d 126, 129 (6th Cir.1992) (quoting 8 J. Wigmore, *Evidence in Trials At Common Law* §2292 at 554 (McNaughton rev. 1961)). The party asserting

2

the privilege bears the burden of establishing the existence of the privilege.  *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

The work product doctrine is often asserted in conjunction with the attorney-client privilege, but it "is distinct from and broader than the attorney-client privilege." *United States v. Skeddle*, 989 F.Supp. 917, 921 (N.D. Ohio 1997) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975), and citing *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)).  The work product doctrine, codified in Fed. R. Civ. P. 26(b)(3), protects the confidentiality of all documents prepared by or for an attorney in anticipation of litigation, except upon a showing that the requesting party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(i & ii).

The work product doctrine seeks to protect "the mental processes of the attorney," providing a "privileged area" within which the attorney can analyze and prepare the client's case.  *Nobles*, 422 U.S. at 238*; Randleman v. Fid. Nat'l Title Ins. Co.*, 251 F.R.D. 281, 284 (N.D. Ohio 2008).  Courts construe the work product privilege broadly to cover, among other things, "the tangible and intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions."  *In re Grand Jury Subpoena*, 622 F.2d 933, 935 (6th Cir. 1980).

"Opinion" work product materials, which contain the fruit of an attorney's mental processes, are more carefully protected than "factual" work product materials.  *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994).  "Opinion" work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney." Fed. R. Civ. P. 26(b)(3)(B).  Opinion

3

work product receives near absolute protection and "can be discovered only in very rare and extraordinary circumstances." *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977). "Ordinary fact" work product, *e.g.*, raw factual information, receives a limited level of protection. *See In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir.1986); *Cobble v. Value City Furniture,* 2008 WL 114937 at *2 (W.D. Ky. 2008).

Application of the work product doctrine depends upon the nature of the document, the extent to which it may directly or indirectly reveal the attorney's mental processes, the likely reliability of its reflection of witness statements, the degree of danger that it will convert the attorney from advocate to witness, and the degree of availability of the information from other sources. *United States v. Amerada Hess Corp.,* 619 F.2d 980, 987-88 (3rd Cir. 1980); *see In re Aetna Inc. Sec. Litig.*, 1999 WL 354527 at *3 (E.D. Pa. May 26, 1999) (courts must determine work product privilege based on specific facts, focusing on "the extent to which the information discloses an attorney's thought processes" and whether disclosure would reveal the attorney's "'mental impressions, conclusions, opinions, or legal theories'") (quoting Fed. R. Civ. P. 26(b)(3)). While the work product privilege is broad, it may be waived by its holder depending upon the circumstances. *Nobles*, 422 U.S. at 239-40. The level of protection provided by the work product doctrine differs according to the type of material at issue.

As the party asserting the work product privilege, McKesson bears the burden to demonstrate that the materials sought by plaintiffs are protected. *Carr v. C.R. Bard, Inc.,* 297 F.R.D. 328, 332 (N.D. Ohio 2014). If it does so, the burden shift to plaintiffs to show that "the materials sought are relevant and that the materials are sufficiently unique and important, as compared to other possible sources of the same information, to justify overriding work product protection." *Id.* at 333-34.

III.     **Analysis.**

A.     **List of Interviewees.**

Plaintiffs seek production of the identities of the forty-six individuals interviewed for the Special Committee's investigation.  McKesson asserts the witnesses' identities are qualified work product and plaintiffs have not shown a substantial need for the names, nor have they shown they cannot otherwise identify knowledgeable witnesses.

Some courts have applied work product protection to inquiries into "the identity of persons contacted and/or interviewed during an investigation . . . in anticipation of litigation or for trial." *In re Auto. Refinishing Paint Antitrust Litig.,* 2006 WL 1479819 at *5 (E.D. Pa. May 26, 2006); *see BASF Corp. v. Old World Trading Co*., U.S. Dist. LEXIS 951 at *10 (N.D. Ill. Jan. 30, 1992) (work product applies to list of persons interviewed by counsel during investigation).  In contrast, the Third Circuit, in *United States v. Amerada Hess Corp*., 619 F.2d 980 (3rd Cir. 1980), observed that a list of persons interviewed by defendant's counsel did "not directly or indirectly reveal the mental processes of [defendant's attorneys]" and "furnish[ed] no information as to the content of any statement."  *Id.* at 987–88.  After "balancing [the] competing considerations" and finding that a list of interviewees was "of rather minimal substantive content, and presents none of the classic dangers to which the *Hickman v. Taylor* rule is addressed," the *Amerada Hess* court held that the work product doctrine did not preclude production of a witness list.  *Id.* at 988; *see also In re Aetna Inc. Sec. Litig.*, 1999 WL 354527 at *2 (E.D. Pa. May 26, 1999) (names of individuals interviewed by plaintiffs' counsel have "minimal work product content" and are not protected).

Application of the qualified work product protection involves a balancing of competing considerations.  Here, the identification of persons interviewed during the Review Committee's

5

investigation will not disclose the Wilson Sonsini attorneys' thought processes, and thus the substantive work product content is minimal. The witness list by itself furnishes no information regarding the content of any witness statement. Because the work product in question is of minimal substantive content, the showing of need by plaintiffs is much lower. Moreover, the interviewee names should be disclosed by McKesson as part of its Rule 26(a)(1) obligations, in any event. *See Jones v. Illinois Cent. R. Co.*, 617 F.3d 843, 855 (6th Cir. 2010) (holding that "witness statements taken by a claims agent in anticipation of litigation were not discoverable," but the witnesses' "names and phone numbers [sh]ould have already been turned over in Defendant's Rule 26(a)(1) initial disclosures").

Accordingly, the Special Master rules that McKesson shall produce to plaintiffs the list of the forty-six individuals interviewed as part of the Special Review Committee's investigation.

### B.    Statements Collected from the Forty-Six Interviewees.

Plaintiffs also seek production of the statements collected from the forty-six individuals whom Wilson Sonsini interviewed. McKesson responds that no such written statements exist; rather, McKesson possesses only attorney interview memoranda and notes from the interviews. Of course, McKesson cannot produce statements that do not exist. But McKesson also argues that the attorney memoranda discussing the witness interviews, and attorney notes taken during the interviews, were prepared by counsel for the purpose of rendering legal advice to the Special Review Committee, so they are non-discoverable opinion work product.

Case law strongly supports McKesson's argument. *See Upjohn*, 449 U.S. at 401-02 (witness interview notes and memoranda are opinion work product); *Hobart Corp. v. Dayton Power & Light*

6

*Co.*, 2017 WL 3668848 at *4 (S.D. Ohio May 24, 2017) (attorney interview summaries are opinion work product and not discoverable); *In re OM Group Sec. Litig.*, 226 F.R.D. 579, 587-88 (N.D. Ohio 2005) (notes, outlines, and memoranda summarizing the interviews of current and former employees in connection with a derivative lawsuit are protected by attorney-client privilege); *Sandra T.E. v. South Berwyn Sch. Dist.,* 600 F.3d 612, 622 (7th Cir. 2010) (witness interview notes and memoranda compiled by counsel in connection with an internal investigation are protected).  Plaintiffs do not cite any cases suggesting otherwise.

Accordingly, the Special Master rules that the notes and memoranda created by Wilson Sonsini in connection with witness interviews are protected work product and cannot be discovered.

### C.     Search Terms and Documents Reviewed.

Plaintiffs also seek to discover the search terms applied by McKesson's counsel and the documents collected using those terms.  McKesson asserts that the terms and documents are privileged work product.  Plaintiffs do not challenge the asserted privilege, but argue they have a substantial need to discover the search terms and documents, and they cannot obtain equivalent information without undue hardship. *See* Fed. R. Civ. P. 26(b)(3).  Specifically, plaintiffs assert they need to examine the search terms used earlier by Wilson Sonsini to confirm the present workability of the terms offered by McKesson for discovery in this litigation.

McKesson points out that counsel's selection of documents and use of search terms to isolate those documents are "opinion work product."  The search terms used and documents selected as most relevant to the Special Review Committee's investigation necessarily reflect counsel's mental impressions, opinions, judgments, and legal theories about their investigation.  Case law establishes

7

that this type of reasoned attorney selection process "falls within the highly-protected category of opinion work product."  S*porck v. Peil*, 759 F.2d 312, 316 (3rd Cir. 1985) (vacating an order compelling discovery of counsel's selection of documents for review with his client during deposition preparation); *see also Shelton v. American Motors Corp.,* 805 F.2d 1323, 1328-29 (8th Cir. 1986) (attorney selection of documents is privileged work product).  The undersigned concludes that the search terms and documents selected in conducting the investigation are opinion work product entitled to protection.

Furthermore, even if the search terms are merely fact work product, plaintiffs fail to demonstrate the required substantial need and undue hardship to obtain theme through discovery.  *See* Fed. R. Civ. P. 26(b)(3) (discovery of work product is permitted only if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue burden, obtain their substantial equivalent by other means.").  McKesson offered proposed search terms for discovery in this case on June 5, 2018; ten days later, after reviewing McKesson's proposal, plaintiffs requested modification and broadening of the search terms, and McKesson agreed to most of plaintiffs' requests.  Plaintiffs do not and cannot suggest this interaction leaves them bereft of pointed discovery.  These circumstances do not support substantial need and undue hardship.

Accordingly, the Special Master rules that the search terms used by Wilson Sonsini to locate documents are protected work product and cannot be discovered.

### D.      Waiver.

Finally, plaintiffs argue that, by publishing the Teamsters Report, McKesson waived any attorney-client or work-product privileges as to the attorney interview notes, the search terms, and

documents reviewed by Wilson Sonsini.  Plaintiffs assert the Teamsters Report disclosed much of the substance of interviews conducted and documents collected in conducting the investigation, so any privilege is waived.  *See In re Grand Jury,* 78 F.3d 251, 254-55 (6th Cir. 1996) (attorney-client privilege waived as to specific communications disclosed and other communications related to the same subject matter, where party disclosed to third parties the legal conclusions and facts upon which those conclusions were based, but did not reveal the attorney's advice); *see also In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2nd Cir. 1993) (finding waiver of work product privilege by party's decision to selectively disclose confidential materials in order to achieve other beneficial purposes).

McKesson counters it did not waive any privilege.  It correctly points out the Board Response did not disclose the *specific* contents of any of the attorney interview notes or the search terms used in the investigation.  Further, the few documents identified in the Board Response either have been or will be produced in this litigation.

The undersigned agrees there has been no waiver in the circumstances of this case, because the Board Response did not disclose privileged communications or work product relating to the investigation.  *See In re Vioxx Prod. Liab. Litig.*, 2007 WL 854251 at *5 (E.D. La. Mar. 6, 2007) (publication of a final investigative report did not waive work product protection for underlying drafts and materials reviewed); *In re Trasylol Prod. Liab. Litig.*, 2009 WL 2575659 at *6 (S.D. Fla. Aug. 12, 2009) (same); s*ee also United States v. White,* 887 F.2d 267, 270-71 (D.C. Cir. 1989) ("A general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege.").  Discovery of witness statements made to an attorney is generally not allowed if the witness is available to the other party and the sought-after

9

information may be obtained by other methods of discovery, such as by taking the deposition of the witness. *Baker v. GMC*, 209 F.3d 1051, 1054 (8th Cir. 2000); *Cobble v. Value City Furniture*, 2008 WL 114937 at *2 (W.D. Ky. Jan. 10, 2008).  As noted above, the names of the interviewees are discoverable and thus plaintiffs may obtain information from the interviewees directly.

In sum, the undersigned agrees with McKesson that mere release of the Board Report did not waive any privilege.  Therefore, *at this time*, plaintiffs are not entitled to discovery of attorney notes or memoranda of interviews, the search terms counsel used to find documents, or which documents they chose for review based on those search terms.[1]  Plaintiffs also assert, however, that, if McKesson seeks to introduce evidence of Wilson Sonsini's investigation outlined in the Board Response (for example, to show McKesson's due diligence), then doing so would waive any asserted privilege.  *See In re Kidder Peabody Sec. Litig.,* 168 F.R.D. 459, 471 (S.D.N.Y. 1996) (holding it is unfair for a party to assert privilege to shield a report and then use the same report as sword).  McKesson has not (yet) attempted to use the Board Response offensively in this litigation. But if it seeks to do so, the Court will reconsider whether plaintiffs are entitled to discover the information they have asked for but which this Ruling denies.  *See In re Vioxx,* 2007 WL 854251 at *5. ("If things change, however, and the Martin Report is sought to be used offensively in this litigation, or if Mr. Martin seeks to testify, the Court will have to reconsider whether the Plaintiffs are entitled to discover the materials underlying the investigation.").

---

[1]  Of course, this ruling does not *immunize* any documents from production if otherwise discoverable, which is highly likely; it only stands for the proposition that McKesson need not identify *which* documents Wilson Sonsini reviewed in connection with its investigation.

**E.      Conclusion.**

The Special Master rules that McKesson shall produce the names of the forty-six individuals interviewed as part of the Special Review Committee's investigation.  Plaintiffs' request for discovery of the search terms used by the Committee, the identity of documents examined by the Committee, and any witness statements (or attorney notes and memoranda regarding witness statements) is denied at this time.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: August 1, 2018**

11