# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>**All cases**<br><br><br>ALLERGAN FINANCE, LLC,<br><br>      Third-Party Plaintiff,<br><br> v.<br><br>PFIZER INC. and KING PHARMACEUTICALS, INC. n/k/a KING PHARMACEUTICALS LLC,<br><br>      Third-Party Defendants. | **MDL No. 2804**<br><br>**Case No. 17-md-2804**<br><br>**Judge Dan Aaron Polster**<br><br>**THIRD-PARTY COMPLAINT** |

## THIRD-PARTY COMPLAINT

Third-Party Plaintiff Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. ("Allergan") alleges against Third-Party Defendants Pfizer Inc. and King Pharmaceuticals, Inc. n/k/a King Pharmaceuticals LLC as follows:

1. This is an action for indemnification and related claims. It arises out of a December 17, 2008 asset purchase agreement ("APA") between Actavis Elizabeth, LLC ("Actavis") and King Pharmaceuticals, Inc. n/k/a King Pharmaceuticals LLC ("King") under which Actavis acquired the prescription opioid Kadian® from King. The APA is attached to this Complaint as Exhibit A.

2. Third-Party Defendant Pfizer Inc. ("Pfizer") is the successor to King's rights and obligations under the APA.

3. Allergan is the successor to Actavis's rights and obligations under the APA. Actavis transferred the rights to Kadian® to Warner Chilcott plc, which Allergan acquired in a stock-for-stock transaction in 2013.

4. Under Section 12.02(a) of the APA, King agreed to indemnify Actavis and its successors for, among other things, "the use by [King] or its Affiliates of the [Kadian®] Marketing Materials prior to the [December 2008] Closing" and any Third Party Claims "incurred in connection with, arising out of, or resulting from … the ownership and operation of the Purchased Assets [including Kadian®] or the conduct of the Business prior to the [December 2008] Closing."

5. To date, more than a thousand plaintiffs, including state attorneys general, cities, counties, hospitals, third-party payors, Native American tribes, and individuals have filed

lawsuits against manufacturers of prescription opioids alleging that these entities engaged in deceptive marketing practices that caused a nationwide opioid addiction crisis.

6. Even though Allergan sells less than one-tenth of one percent of all prescription opioids in the United States today, Allergan is named in hundreds of these lawsuits, many of which have been included in this multidistrict litigation ("MDL"), with more lawsuits naming Allergan filed every week. These lawsuits allege that Allergan engaged in deceptive marketing practices when selling Kadian®—the prescription pharmaceutical drug that Actavis acquired from King.

7. King had acquired Kadian® when it acquired and merged with Alpharma Inc. ("Alpharma") in late 2008. Alpharma was a New Jersey corporation with its principal place of business in Bridgewater, New Jersey. Alpharma had been responsible for marketing and selling Kadian® before its 2008 merger with King. The Federal Trade Commission had mandated divestment of Kadian® as a condition of approving the merger. Actavis therefore stepped in to acquire Kadian® from King in December 2008.

8. The allegations in the various opioids complaints reveal that the primary basis for the claims against Allergan is the allegedly improper marketing and sale of Kadian® by Alpharma in the months and years before Actavis acquired Kadian® in December 2008. Yet Alpharma, King, and Pfizer are not named in the vast majority of the lawsuits both in this MDL and in dozens if not hundreds of state courts throughout the country.

9. When Actavis purchased Kadian®, it agreed to assume only certain enumerated liabilities; all other liabilities were excluded, including any and all liabilities accruing or arising before the December 2008 closing. King retained, and thus remains solely responsible for, all

3

such excluded liabilities.  Accordingly, King agreed to indemnify Actavis for any liabilities arising out of the pre-2009 marketing and sale of Kadian®.

10. Pfizer and Allergan succeeded to these contractual rights and obligations under the APA.  But now that more than a thousand lawsuits seek to impose liability for that very marketing and sale, Pfizer has rejected any responsibility to indemnify Allergan.  Even though the complaints explicitly allege wrongful acts by Allergan's "predecessor" and describe supposedly improper marketing activities dating back to the mid-1990s, Pfizer denies that these cases involve any pre-2009 conduct.

11. Accordingly, Allergan brings this Third-Party Complaint against Pfizer and King to ensure that the party actually responsible for the allegedly deceptive marketing of Kadian® before 2009 is a party to these cases and is held solely responsible for any liability associated with that pre-2009 conduct, and to demand that Pfizer honor its obligation under the APA to indemnify Allergan for such liabilities.

## THE PARTIES

12. Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. is a Nevada limited liability company that exists for the purpose of holding shares of other companies that manufacture and distribute prescription pharmaceuticals.  Its sole member is Allergan W.C. Holding Inc. f/k/a Actavis W.C. Holding Inc., a Delaware corporation with its principal place of business in Madison, New Jersey.

13. King Pharmaceuticals, Inc. is a Tennessee corporation with its principal place of business in Bristol, Tennessee.  By virtue of its acquiring Alpharma, King owned the prescription opioid Kadian® until December 17, 2008.  On information and belief, King Pharmaceuticals, Inc. is now known as King Pharmaceuticals LLC, a Delaware company with its

4

principal place of business in New York, New York, and a wholly owned subsidiary of Pfizer Inc.

14. Pfizer Inc. is a Delaware corporation with its principal place of business in New York, New York.  Pfizer acquired King in or around February 2011 and, on information and belief, is the successor to King's and Alpharma's rights and obligations under the APA.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this Third-Party Complaint under 28 U.S.C. § 1367(a).  The claims in this Third-Party Complaint are so related to and intertwined with the claims at issue in the case that they form part of the same case or controversy under Article III of the United States Constitution.

16. Venue is proper in this Court under Rule 14(a) of the Federal Rules of Civil Procedure because Allergan's claims against Pfizer arise directly out of claims asserted by plaintiffs in hundreds of cases pending before this Court.

17. Because of the unique circumstances of this litigation, this Court remains the proper forum for this dispute.  Although the APA contains a forum-selection clause calling for claims arising under the APA to be litigated in the Southern District of New York, more than a thousand cases have been filed against prescription opioid manufacturers in federal courts across the country, including in the Southern District of New York, and the vast majority of them have been consolidated in an MDL before this Court—including at least one SDNY case in which Allergan is a party, *see Laborers 17 Health Benefit Fund v. Purdue Pharma, L.P.*, No. 17-cv-9877 (S.D.N.Y.), No. 18-op-45072 (N.D. Ohio).  At least one more SDNY case naming Allergan is awaiting transfer.  *See Klodzinski v. Purdue Pharma L.P.*, No. 18-cv-3927 (S.D.N.Y.).  Were Allergan to bring this indemnification action in SDNY, it would likewise undoubtedly be transferred to this MDL.  To avoid precisely such unnecessary delay and inefficiency, this Court

has ordered that "any Plaintiff whose case would be subject to transfer to these MDL proceedings may file its case directly in this District." CMO One §6.a (Dkt. 232). The logic and rationale of the Court's order applies equally to third-party plaintiffs such as Allergan.

18. Also, this Court explained that it hopes "to do something meaningful to abate this [opioid] crisis and to do it in 2018"—but to do that, it needed all relevant parties to be present. 1/9/2018 Hearing Transcript at 4-5 (Dkt. 58). Pfizer is precisely such a party.

## GENERAL ALLEGATIONS

### *King Sells Kadian® to Actavis*

19. In or around December 2008, King Pharmaceuticals, Inc. completed its acquisition of Alpharma Inc. In connection with the acquisition, King executed a consent order with the Federal Trade Commission pursuant to which King agreed to divest its rights to Kadian® to Actavis.

20. Kadian® is an extended release morphine sulfate product used to treat moderate to severe pain when a continuous around-the-clock opioid analgesic is needed for an extended period of time.

21. The December 17, 2008 APA between King and Actavis (attached as Exhibit A) sets out the terms of the divestiture of Kadian®.

22. The APA states that King remains responsible for "Excluded Liabilities" concerning Kadian®, which includes claims related to marketing Kadian® before December 2008. *See* APA §§ 1.01, 3.01, 3.02.

23. Specifically, Section 3.01 of the APA states: "Subject to the terms and conditions of this Agreement, as of the Closing Date, Buyer agrees to assume, satisfy, perform, pay and discharge only the Assumed Liabilities."

24. The APA preamble defines "Buyer" as Actavis Elizabeth, L.L.C.

25. Section 3.02 of the APA states: "Seller shall retain and remain solely responsible for, and shall satisfy, perform, pay and discharge when due, any and all Excluded Liabilities."

26. Section 1.01(jjjj) of the APA defines "Seller" as "King and, from and after the Closing, shall also include Alpharma and any subsidiary of Alpharma owning or controlling assets or having liabilities relating to the Business, jointly and severally, or if the context so requires individually."

27. Section 1.01(*l*) of the APA defines "Assumed Liabilities" narrowly to include only those liabilities that "Buyer has expressly assumed or agreed to assume or perform under this Agreement."

28. In contrast, Section 1.01(kk) of the APA defines "Excluded Liabilities" broadly to include "any and all Liabilities of Seller accruing or arising prior to the Closing, including Liabilities with respect to any claim or action asserted after the Closing to the extent the conduct giving rise to such claim or action occurred prior to the Closing."

29. The APA also specifies Buyer's right to indemnification from Seller. Section 12.02(a) states:

> [F]rom and after the Closing, Seller shall indemnify, reimburse, defend and hold harmless Buyer, its Affiliates, and their respective officers, directors, employees, agents, successors and assigns (the 'Buyer Indemnified Parties') from and against any and all costs, losses, Liabilities, damages, lawsuits, deficiencies, claims, fines, demands, penalties, interest and expenses (including reasonable fees and disbursements of attorneys) (collectively, the 'Damages'), incurred in connection with, arising out of, or resulting from … (iii) the failure of Seller to assume, pay, perform and discharge any Excluded Liabilities, (iv) the ownership and operation of the Purchased Assets or the conduct of the Business prior to the Closing, (v) the ***use by Seller or its Affiliates of the Marketing Materials prior to the Closing*** ….

30. Section 1.01(hhh) of the APA defines "Marketing Materials" to include:

> all market research, marketing plans and strategies, media plans, advertising, form letters, sales force training materials, advertising,

7

promotional and marketing data and materials (including competitor information, product data, market intelligence reports and marketing and sales statistical programs), advertising and promotional materials and literature, mailing lists, sales data and detailing reports, reimbursement data, customer information (including customer sales information, sales forecasting models, medical educational materials, website content and advertising and display materials and speakers lists), packaging artwork and television masters in each case (i) owned by Seller [Pfizer] and used exclusively in connection with the marketing, advertising and promotion of [Kadian®] ….

31. APA Section 12.02(a) specifies that the Buyer's right to indemnification from Seller also applies to Buyer's "successors and assigns."

32. The APA details the procedures for Buyer to follow to exercise its right to indemnification from Seller. Section 12.02(c) requires that a person entitled to indemnification (the "Indemnified Party") give the Indemnifying Party notice of the claims.

33. Under Section 12.02(d), which governs indemnifiable Third Party Claims, the Indemnifying Party has the option to defend the claims. If the Indemnifying Party chooses to defend, it is no longer liable to the Indemnified Party for the subsequent legal expenses of the Indemnified Party.

34. Otherwise, the Indemnifying Party must advance the Indemnified Party's legal costs during the pendency of the litigation. Section 12.02(e) states:

> [T]he reasonable and verifiable costs and expenses, including fees and disbursements of counsel, incurred by the Indemnified Party in connection with any claim shall be reimbursed on a quarterly basis by the Indemnifying Party, without prejudice to the Indemnifying Party's right to contest the Indemnified Party's right to indemnification and subject to refund in the event the Indemnifying Party is ultimately held not to be obligated to indemnify the Indemnified Party.

35. Actavis did not market or sell Kadian® until 2009, after it completed its acquisition of Kadian® from King.

### *Allergan Is Sued for Conduct Regarding Kadian® That Occurred Before December 2008*

36. State attorneys general, cities, counties, hospitals, third-party payors, Native American tribes, and individuals across the country have filed more than a thousand lawsuits against manufacturers of prescription opioids. Allergan has been named in hundreds of these lawsuits, with more lawsuits naming Allergan filed every week. As of July 2018, at least 927 are federal cases that have been consolidated in this Court as part of the national prescription opiate MDL.

37. These lawsuits allege that Allergan engaged in deceptive marketing practices when selling Kadian®.

38. The complaints indicate that the primary basis for the claims against Allergan is allegedly improper conduct that occurred before Actavis acquired Kadian® from King in December 2008 and commenced marketing it in 2009. Representative examples of such allegations include:

(a) "***Actavis's predecessor*** created a patient brochure for Kadian ***in 2007*** that stated, 'Over time, your body may become tolerant of your current dose. You may require a dose adjustment to get the right amount of pain relief. This is not addiction.'" *E.g.*, Compl. ¶¶85.a, 98.a, *Lewis v. Purdue Pharma, L.P.*, No. 17-op-45076.

(b) "Kadian sales representatives promoted Kadian as being less addictive than other Schedule II opioids at least ***between 2006 and 2008. In specific instances in 2007 and 2008***, these sales representatives also made these claims to nurse practitioners." *E.g.*, Fourth Am. Comp. ¶301, *City of Chicago v. Purdue Pharma, L.P.*, No. 17-op-15469.

(c) Allegan allegedly made false claims in brochures circulated in ***2003 and 2007***. *See*, *e.g.*, Complaint ¶¶121, 132, *City of Birmingham v. Purdue Pharma L.P.*, No. 17-op-45088.

(d) Allergan engaged in a "sophisticated and highly deceptive and unfair marketing campaign that ***began in the late 1990s*** [and] ***deepened around 2006***." *E.g.*, Compl. ¶12, *City of Dayton v. Purdue Pharma L.P.*, No. 17-op-45032; Compl. ¶11, *City of Lorain v. Purdue Pharma L.P.*, No. 17-op-45000; Compl. ¶12, *City of Parma v. Purdue Pharma L.P.*, No. 17-op-45001.

   (e) In thirty-six separate lawsuits filed by Kentucky counties, the Plaintiffs allege that "***Actavis's predecessor*** caused a patient education brochure, Managing Chronic Back Pain, to be distributed ***beginning in 2003*** that admitted that opioid addiction is possible, but falsely claimed that it is 'less likely if you have never had an addiction problem.'" *E.g.*, Am. Compl. ¶117.a, *Fiscal Ct. of Campbell Cnty. ex rel. Campbell Cnty. v. Amerisourcebergen Drug Corp.*, 17-op-45022.

   (f) Actavis made misrepresentations in brochures regarding pain management and addiction risk which were ***copyrighted in 2007***, before Actavis purchased Kadian® from King. *E.g.*, Second Am. Compl. ¶534, *Cabell Cnty Comm'n v. Amerisourcebergen Drug Corp.*, No. 17-op-45053; Second Am. Compl. ¶¶227, 569, *Cnty. of Summit, Ohio et. al. v. Purdue Pharma L.P.*, No. 18-op-45090; Second Am. Compl. ¶529, *Cnty. of Monroe, Michigan v. Purdue Pharma L.P.*, No. 18-op-45158; Second Am. Compl. ¶537, *Broward Cnty, Fla. v. Purdue Pharma L.P.*, No. 18-op-45332 (U.S. District Court, Northern District of Ohio).

39. Despite each complaint's containing specific allegations regarding improper conduct related to Kadian® at the time Kadian® was owned by Pfizer's predecessors (Alpharma and/or King), Pfizer is not named as a defendant in any of the lawsuits in this MDL.

### *Allergan Seeks Indemnification from Pfizer*

40. On November 10, 2017, Allergan, in compliance with Section 12.02(c) of the APA, notified Pfizer of the claims filed against Allergan that included allegations and claims related to allegedly deceptive marketing of Kadian® before December 2008.

41. On November 29, 2017, Pfizer responded to Allergan, disclaiming any obligation to indemnify Allergan in connection with these actions and declining its option to defend these actions.

42. Since then, as the lawsuits have continued to mount, Allergan has periodically and timely notified and continues to notify Pfizer under Section 12.02(c) of the APA of the claims filed against Allergan that include allegations related to the allegedly deceptive marketing of Kadian® before December 2008. Pfizer has continued to disclaim any obligation to indemnify Allergan in connection with these actions and to decline its option to defend these actions.

## **FIRST CLAIM FOR RELIEF**

### **CONTRACTUAL INDEMNIFICATION**

43. Allergan re-alleges and incorporates each of the foregoing allegations as if fully set forth herein.

44. The APA by and between King and Actavis is a binding agreement between the parties.

45. The obligations contained in the APA, including the obligation of Seller to indemnify Buyer, flow to any successors-in-interest the parties might have.

46. Allergan serves as a successor-in-interest to Actavis, the Buyer, and Pfizer serves as a successor-in-interest to King, the Seller.

47. Under the clear terms of the APA, Pfizer must indemnify Allergan for pre-Closing liabilities related to the marketing and sale of Kadian®.

48. Allergan has fully performed its obligations under the agreement.

49. Despite Section 12.02(a) of the APA, which requires Seller to indemnify, reimburse, and defend Buyer, Pfizer has refused to indemnify Allergan for the attorney's fees and expenses Allergan has incurred and continues to incur in the lawsuits based on the pre-2009 marketing and sale of Kadian®, as well as any other "costs, losses, Liabilities, damages, deficiencies, claims, fines, demands, penalties, interest and expenses" that Allergan may incur in these cases based on the pre-2009 marketing and sale of Kadian®.

50. Allergan's damages to date include the costs and legal fees that Allergan has expended defending the claims in the lawsuits and civil investigations based on pre-2009 marketing and sale of Kadian®.

51. Allergan will continue to accrue damages as it continues to defend these claims.

## SECOND CLAIM FOR RELIEF

## DECLARATORY JUDGMENT

52. Allergan re-alleges and incorporates each of the above allegations as if set forth in this cause of action.

53. Allergan seeks a judicial determination and declaration of its contractual rights under the APA under 28 U.S.C. § 2201.

54. Specifically, Allergan is entitled to a declaratory judgment that (i) Allergan is entitled to, and Pfizer is obligated to provide, indemnification against any and all costs, losses, Liabilities, damages, lawsuits, deficiencies, claims, fines, demands, penalties, interest and expenses (including reasonable fees and disbursements of attorneys) that have been, or will be in the future, incurred in the lawsuits arising out of or resulting from Alpharma's pre-2009 marketing and sale of Kadian®; (ii) Allergan is entitled to, and Pfizer is obligated to reimburse, on a quarterly basis reasonable and verifiable costs and expenses, including fees and disbursements of counsel incurred by Allergan in defending the claims and allegations in these lawsuits arising out of or resulting from Alpharma's pre-2009 marketing and sale of Kadian®; and (iii) Pfizer is solely responsible for any and all liabilities for pre-2009 conduct related to the marketing and sale of Kadian®.

55. There is an actual controversy within the jurisdiction of this Court between Allergan and Pfizer with respect to this matter because Allergan has asserted, and Pfizer has denied, Allergan's indemnification and duty to defend rights under the APA.

## THIRD CLAIM FOR RELIEF

## EQUITABLE INDEMNIFICATION

56. Allergan re-alleges and incorporates each of the foregoing allegations as if fully set forth herein.

57. Any loss that Allergan suffers in connection with pre-acquisition conduct, including but not limited to any judgment, settlement, attorneys' fees, costs, or other liability, is directly attributable to the conduct of Pfizer, King, and/or Alpharma, and not any conduct of Allergan. Pfizer, King, and/or Alpharma, therefore, are the only parties actively at fault in bringing about any injury plaintiffs might have suffered based on pre-acquisition conduct.

58. Under principals of equity, Allergan is entitled to indemnification from Pfizer, King, and/or Alpharma in an amount sufficient to reimburse Allergan for any judgment, settlement, attorneys' fees, costs, or other liability Allergan incurs in connection with the lawsuits that is attributable to the Pfizer, King, and/or Alpharma.

## FOURTH CLAIM FOR RELIEF

### CONTRIBUTION

59. Allergan re-alleges and incorporates each of the foregoing allegations as if fully set forth herein.

60. In the event that Allergan is found liable on any of the claims in any opioid lawsuit, Allergan is entitled to contribution from Pfizer, King, and/or Alpharma for the portion of any liability that Allergan has to plaintiffs for damages for any injury caused by the conduct of Pfizer, King, and/or Alpharma.

61. Pfizer, King, and/or Alpharma is liable to Allergan for any payment Allergan is required to make to plaintiffs beyond Allergan's proportional responsibility to plaintiffs based on Allergan's actual conduct.

## PRAYER FOR RELIEF

62. Allergan respectfully requests that this Court enter an order of judgment granting all relief requested in this Third-Party Complaint, and/or allowed at law or in equity, including:

  (a) the costs and legal fees that Allergan has expended defending the claims in all lawsuits and civil investigations based on pre-2009 marketing and sale of Kadian®;

  (b) a declaratory judgment stating (i) Allergan is entitled to, and Pfizer is obligated to provide, indemnification against any and all costs, losses, Liabilities, damages, lawsuits, deficiencies, claims, fines, demands, penalties, interest and expenses (including reasonable fees and disbursements of attorneys) that have been, or are in the future, incurred in the lawsuits arising out of or resulting from Pfizer's pre-2009 marketing and sale of Kadian®; (ii) Allergan is entitled to, and Pfizer is obligated to reimburse, on a quarterly basis reasonable and verifiable costs and expenses, including fees and disbursements of counsel incurred by Allergan in defending the claims and allegations in these lawsuits arising out of or resulting from Pfizer's pre-2009 marketing and sale of Kadian®; and (iii) Pfizer is solely responsible for any and all liabilities for pre-2009 conduct related to the marketing and sale of Kadian®;

  (c) Allergan's expenses, including its legal fees and costs; and

  (d) such other further relief as this Court deems appropriate.

            Respectfully submitted,

            */s/ John R. Mitchell*
            John R. Mitchell (#0066759), Trial Attorney
            \*\*Primary Responsibility from Thompson Hine LLP
            Andrea B. Daloia (#0074106)
            THOMPSON HINE LLP
            3900 Key Center
            127 Public Square
            Cleveland, OH 44114-1291
            Telephone: 216-566-5500
            Facsimile: 216-566-5800
            John.Mitchell@ThompsonHine.com

            *Attorneys for Defendant Allergan Finance LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 1, 2018, a true and correct copy of the foregoing has been served upon all parties so registered via the Court's electronic filing system.

                                      */s/ John R. Mitchell*
                                      *One of the Attorneys for Defendant Allergan Finance LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*