# EXHIBIT I

SHORT FORM ORDER

E-FILE

INDEX No. ___400000/2017___

## SUPREME COURT - STATE OF NEW YORK
## NEW YORK STATE OPIOID LITIGATION PART 48 - SUFFOLK COUNTY

*PRESENT*:

Hon. _____JERRY GARGUILO_____
        Justice of the Supreme Court

```
-------------------------------------------------------X
                                          :
                                          :
                                          :
                                          :
IN RE OPIOID LITIGATION                   :
                                          :
                                          :
                                          :
                                          :
-------------------------------------------------------X
```

MOTION DATE __2/7/18   (#008, #012, #016)__
MOTION DATE __3/22/18 (#022, #023)__
ADJ. DATE        __3/21/18 (#008, #012, #016)__
ADJ. DATE        __3/28/18 (#022, #023)__
Mot. Seq. #008 - MD
Mot. Seq. #012 - MD
Mot. Seq. #016 - MD
Mot. Seq. #022 - MD
Mot. Seq. #023 - MD

Upon the reading and filing of the following papers in this matter: (1) Notice of Motion by defendants McKesson Corp., Cardinal Health, Inc., Kinray, LLC, AmerisourceBergen Drug Corp. s/h/a Amerisource Drug Corp., and Bellco Drug Corp. (Mot. Seq. #008), dated November 10, 2017, and supporting papers (including Memorandum of Law); (2) Affirmation in Opposition (Mot. Seq. #008), dated January 19, 2018, and supporting papers (including Memorandum of Law); (3) Reply Memorandum of Law (Mot. Seq. #008), dated February 23, 2018; (4) Notice of Motion by defendant Rochester Drug Cooperative, Inc. (Mot. Seq. #012), dated November 29, 2017, and supporting papers (including Memorandum of Law); (5) Affirmation in Opposition by the plaintiffs (Mot. Seq. #012), dated February 9, 2018, and supporting papers (including Memorandum of Law); (6) Reply Memorandum of Law (Mot. Seq. #012), dated March 16, 2018; (7) Notice of Motion by defendant Kinray, LLC (Mot. Seq. #016), undated; (8) Notice of Motion by defendant PSS World Medical, Inc. (Mot. Seq. #022), dated December 21, 2017, and supporting papers; (9) Affirmation in Opposition by the plaintiffs (Mot. Seq. #022), dated February 14, 2018; (10) Reply Affirmation by defendant PSS World Medical, Inc. (Mot. Seq. #022), dated February 23, 2018; (11) Notice of Motion by defendant American Medical Distributors, Inc. (Mot. Seq. #023), dated January 8, 2018, and supporting papers; and (12) Affirmation in Opposition by the plaintiffs (Mot. Seq. #023), dated March 21, 2018; it is

***ORDERED*** that the motion by defendants McKesson Corp., Cardinal Health, Inc., Kinray, LLC, AmerisourceBergen Drug Corp. s/h/a Amerisource Drug Corp., and Bellco Drug Corp., the motion by defendant Rochester Drug Cooperative, Inc., the motion by defendant Kinray, LLC, the motion by defendant PSS World Medical, Inc., and the motion by defendant American Medical Distributors, Inc., are hereby consolidated for purposes of this determination; and it is

***ORDERED*** that defendants' motions for an order pursuant to CPLR 3211, dismissing as against each and all of them the master form long complaint filed in this action, are denied.

The plaintiffs are counties within the State of New York that have commenced separate actions against certain pharmaceutical manufacturers and distributors for harm allegedly caused by false and misleading marketing campaigns promoting semi-synthetic, opium-like pharmaceutical pain relievers

In re Opioid Litig.
Index No. 400000/2017
Page 2

(hereinafter referred to as prescription opioids or opioids) as safe and effective for long-term treatment of chronic pain, and by the sale and distribution of those medications in such counties. Also named as defendants in those actions are certain individual physicians allegedly "instrumental in promoting opioids for sale and distribution nationally" and in such counties. Briefly stated, the plaintiffs allege that tortious and illegal actions by the defendants fueled an opioid crisis within such counties, causing them to spend millions of dollars in payments for opioid prescriptions for employees and Medicaid beneficiaries that would have not been approved as necessary for treatment of chronic pain if the true risks and benefits associated with such medications had been known. They also allege that the defendants' actions have forced them to pay the costs of implementing opioid treatment programs for residents, purchasing prescriptions of naloxone to treat prescription opioid overdoses, combating opioid-related criminal activities, and other such expenses arising from the crisis.

One such lawsuit was commenced in August 2016 by Suffolk County and assigned to the Commercial Division of the Supreme Court. By order dated July 17, 2017, the Litigation Coordinating Panel of the Unified Court System of New York State directed the transfer of eight opioid-related actions brought by other counties, and any prospective opioid actions against the manufacturer, distributor, and individual defendants, to this court for pre-trial coordination. That same day, the undersigned issued a case management order reiterating that the individual actions are joined for coordination, not consolidated, and directing that a master file, known as "In re Opioid Litigation" and assigned index number 400000/2017, be established for the electronic filing of all documents related to the proceeding. The undersigned further directed the plaintiffs to file and serve a master long form complaint subsuming the causes of action alleged in the various complaints, and directed the manufacturer defendants, the distributor defendants, and the individual defendants to file joint motions pursuant to CPLR 3211, seeking dismissal of the master complaint, all by certain dates.

The master long form complaint filed by the plaintiffs names as defendants the pharmaceutical distributors McKesson Corp., Cardinal Health, Inc., Kinray, LLC, AmerisourceBergen Drug Corp. s/h/a Amerisource Drug Corp., Bellco Drug Corp., Rochester Drug Cooperative, Inc., Kinray, LLC, PSS World Medical, Inc., and American Medical Distributors, Inc. (hereinafter collectively referred to as the distributor defendants). As relevant to the motions that are the subject of this order, the plaintiffs allege in the master long form complaint (hereinafter the complaint) that the distributor defendants, acting in concert with the codefendants to maximize profits, intentionally misrepresented to the public the risks and benefits of prescription opioids for the treatment of chronic pain. More particularly, the plaintiffs allege that the distributor defendants participated in developing deceptive marketing campaigns to reverse the stigma historically associated with opioid use, to create a false body of medical literature, to undermine information on drug labels, and to falsely portray prescription opioids as a preferred treatment option–all the while disguising their roles in such marketing by funding, working through, and hiding behind professional front organizations and key opinion leaders (KOLs). The plaintiffs claim that those representations and campaigns were material to and influenced their decisions to pay claims for prescription opioids, and compelled them, ultimately, to bear the costs of the ensuing opioid epidemic. The plaintiffs further allege that the distributor defendants delivered or allowed to be delivered an excessive and unreasonable amount of opioid pain medications to the plaintiff counties, despite knowing that such substances were particularly susceptible to abuse and diversion, and that they failed to

In re Opioid Litig.
Index No. 400000/2017
Page 3

investigate or take steps necessary to prevent the counties from being flooded with prescription opioids.

The complaint also names as defendants the pharmaceutical manufacturers Purdue Pharma L.P., Purdue Pharma, Inc., and The Purdue Frederick Company, Inc.; Teva Pharmaceuticals USA, Inc. and Cephalon, Inc.; Johnson & Johnson, Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc., n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc., n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions, Inc., and Endo Pharmaceuticals, Inc.; Allergan plc f/k/a Actavis plc, Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; and Insys Therapeutics, Inc. Their motion to dismiss the complaint is the subject of a prior order dated June 18, 2018. In addition, the complaint names as defendants the physicians Russell Portenoy, Perry Fine, Scott Fishman, and Lynn Webster. The court notes that a stipulation discontinuing the claims against Dr. Portenoy without prejudice to any related action was filed by the plaintiffs on March 16, 2018.

The complaint sets forth seven causes of action against all defendants. The first cause of action alleges deceptive business practices in violation of General Business Law § 349, and the second cause of action alleges false advertising in violation of General Business Law § 350. The third cause of action asserts a common-law public nuisance claim, the fourth cause of action asserts a claim for violation of Social Services Law § 145-b, and the fifth cause of action asserts a claim for fraud. The sixth cause of action is for unjust enrichment, and the seventh cause of action is for negligence.

The distributor defendants now jointly and separately move, pre-answer, for an order dismissing the complaint pursuant to CPLR 3211 (a) (5) and (7). While the court recognizes that subdivision (e) of CPLR 3211 permits a defendant to make only one motion under subdivision (a), it also recognizes the complexity of this matter as well as its unusual procedural framework; as the plaintiffs have been afforded ample opportunity to respond and have, in fact, submitted substantive opposition to each of the motions, the court will, for current purposes, waive compliance with the single-motion rule.

When considering a motion to dismiss, a court must give the pleading a liberal construction, presume the allegations of the complaint are true, afford the plaintiff the benefit of every favorable inference, and determine only whether the facts as alleged fit within a cognizable legal theory (***EBC I, Inc. v Goldman, Sachs & Co.***, 5 NY3d 11, 19, 799 NYS2d 170 [2005]; ***Leon v Martinez***, 84 NY2d 83, 87-88, 614 NYS2d 972 [1994]). "Whether a plaintiff can ultimately establish [the] allegations is not part of the calculus in determining a motion to dismiss" (***EBC I, Inc. v Goldman, Sachs & Co.***, 5 NY3d at 19, 799 NYS2d at 175).

A party seeking dismissal under CPLR 3211 (a) (5) based on a statute of limitations defense bears the initial burden of establishing a prima facie case that the time to commence the cause of action expired (*see **Texeria v BAB Nuclear Radiology, P.C.***, 43 AD3d 403, 840 NYS2d 417 [2d Dept 2007]). On a motion to dismiss under CPLR 3211 (a) (7), the initial test is whether the pleading states a cause of action, not whether the plaintiff has a cause of action (***Guggenheimer v Ginzburg***, 43 NY2d 268, 401 NYS2d 182 [1977]; ***Sokol v Leader***, 74 AD3d 1180, 904 NYS2d 153 [2d Dept 2010]). If documentary proof is submitted by a party seeking relief under CPLR 3211 (a) (7), the truthfulness of the pleadings

FILED: SUFFOLK COUNTY CLERK 07/17/2018 03:07 PM INDEX NO. 400000/2017

NYSCEF DOC. NO. 1002 Case 1:17-md-02804-DAP Doc #: 790-3 Filed: 07/23/18 5 of 22. PageID #: 18928 RECEIVED NYSCEF: 07/17/2018

In re Opioid Litig.
Index No. 400000/2017
Page 4

need not be assumed. Instead, the test applied by the court is whether the plaintiff has a cause of action, not whether one is stated in the complaint (*Guggenheimer v Ginzburg*, 43 NY2d at 275, 401 NYS2d at 185; *Peter F. Gaito Architecture, LLC v Simone Dev. Corp.*, 46 AD3d 530, 530, 846 NYS2d 368, 369 [2d Dept 2007]; *Rappaport v International Playtex Corp.*, 43 AD2d 393, 395, 352 NYS2d 241, 243 [3d Dept 1974]).

In the analysis that follows, the court will first discuss those issues bearing on multiple causes of action before examining each of the causes of action separately for legal sufficiency.

## Particularity in Pleadings

The distributor defendants argue that the first five causes of action must be dismissed against them, because the county plaintiffs "do not allege with the requisite specificity (or any specificity) that any distributor defendants made any misrepresentations or engaged in any misleading marketing activity." More particularly, they contend that the complaint fails to provide details of any claimed misrepresentations by them or to make specific and separate allegations against them, and instead simply lumps them together in generically crafted paragraphs. They claim that the plaintiffs' failure to plead those causes of action with the requisite specificity warrants dismissal under CPLR 3013 and 3016 (b).

The court disagrees. CPLR 3013 requires, in pertinent part, only that statements in a pleading "be sufficiently particular to give the court and parties notice" of the transactions and occurrences to be proved. And although CPLR 3016 (b) requires that a cause of action based in fraud "must sufficiently detail the allegedly fraudulent conduct, that requirement should not be confused with unassailable proof of fraud. Necessarily, then, the mandate of CPLR 3016 (b) may be met when the facts are sufficient to permit a reasonable inference of the alleged conduct" (*Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 492, 860 NYS2d 422, 425 [2008]). Even in fraud, a plaintiff is not required to allege specific details of an individual defendant's participation where those details are peculiarly within the defendant's knowledge (*id.*; *Jered Contr. Co. v New York City Tr. Auth.*, 22 NY2d 187, 194, 292 NYS2d 98, 103-104 [1968]).

Moreover, the plaintiffs allege that all of the defendants–the manufacturers, the distributors, and the individual physicians–cooperated in an integrated scheme promoting the use of prescription opioids for chronic pain that helped give rise to the current opioid epidemic. They allege, in part, that the defendants engaged in deceptive marketing, geared to both the medical community and the public, about the dangers and benefits of long-term opioid therapy for the treatment of chronic pain, and that the distributor defendants assisted in the unbranded marketing portion of the scheme by providing funds to front groups. Such united efforts to increase the market for prescription opioids, the plaintiffs assert, make all defendants subject to liability under the concerted action theory. "The theory of concerted action 'provides for joint and several liability on the part of all defendants having an understanding, express or tacit, to participate in a common plan or design to commit a tortious act'" (*Rastelli v Goodyear Tire & Rubber Co.*, 79 NY2d 289, 295, 582 NYS2d 373, 375 [1992], quoting *Hymowitz v Eli Lilly & Co.*, 73 NY2d 487, 507, 541 NYS2d 941, 946 [1989]; *see Ravo v Roatnick*, 70 NY2d 305, 309, 520 NYS2d 523, 535 [1987] ["concerted wrongdoers are considered 'joint tort-feasors' and in legal

In re Opioid Litig.
Index No. 400000/2017
Page 5

contemplation, there is a joint enterprise and a mutual agency, such that the act of one is the act of all and liability for all that is done is visited upon each"]; *Herman v Wesgate*, 94 AD2d 938, 464 NYS2d 315 [4th Dept 1983]). As explained in the Restatement (Second) of Torts § 876, a defendant is liable for harm to a third person resulting from the tortious conduct of another if (1) it commits a tortious act in concert with or pursuant to a common design with the other, (2) it knows the other's conduct constitutes a breach of duty and provides substantial assistance or encouragement to the other to commit such conduct, or (3) it gives substantial assistance to the other in achieving a tortious result and its own conduct, separately considered, constitutes a breach of a duty of care owed to the third person (*see Bicher v Eli Lilly & Co.*, 55 NY2d 571, 450 NYS2d 776 [1982]; *see also* Prosser & Keeton, Torts § 46 [5th ed 1984]).

For liability to be imposed under a concerted action theory, it is essential that each defendant charged with acting in concert acted tortiously and that at least one of the defendants "committed an act in pursuance of the agreement which constituted a tort" (*Rastelli v Goodyear Tire & Rubber Co.*, 79 NY2d 289, 295, 582 NYS2d 373, 375; *see Small v Lorillard Tobacco Co.*, 94 NY2d 43, 698 NYS2d 615 [1999]; *Herman v Wesgate*, 94 AD2d 938, 464 NYS2d 315). Here, the plaintiffs allege that the manufacturer defendants, seeking mass-market opportunities for their opioid products, devised and implemented deceptive marketing campaigns designed to eliminate the historic stigma of opioid use so that the medical community and the public would embrace prescription opioid therapy for noncancer-related pain. They allege, among other things, that the manufacturer defendants, through print and digital marketing strategies that included undermining information on branded labels, giving out misleading promotional materials, creating a false body of medical literature, and withholding information, deceived the medical community and the public about the effectiveness and dangers of long-term opioid therapy for the treatment of chronic pain. They further allege that the manufacturer defendants disguised their roles in that scheme by funding, working through, and hiding behind professional organizations, referred to as front groups, and KOLS, supposed experts in the field of pain management. Significantly, the plaintiffs also allege that the distributor defendants conspired with the manufacturer defendants in their unbranded marketing campaigns by joining and funding the same front groups that disseminated deceptive messages about the dangers and benefits of prescription opioids.

Additionally, the plaintiffs allege that the distributor defendants—which are licensed to act as intermediaries between manufacturers and pharmacies, or other persons or entities licensed to accept delivery of Schedule II controlled substances, and which play a carefully defined role in the federal- and state-regulated pharmaceutical distribution system—were integral to the scheme to expand the market for prescription opioids by shipping suspicious orders and by not investigating or taking other actions to prevent the plaintiff counties from becoming oversaturated with these drugs. The court finds these allegations in the complaint, and the inferences that can be drawn therefrom, sufficient for the plaintiffs to proceed against the distributor defendants for misrepresentations and deceptive marketing based on the theory of concerted action (*see Rodriguez v City of New York*, 35 AD3d 702, 827 NYS2d 220 [2d Dept 2006]; *cf. Rastelli v Goodyear Tire & Rubber Co.*, 79 NY2d 289, 582 NYS2d 373; *Hymowitz v Eli Lilly & Co.*, 73 NY2d 487, 541 NYS2d 941).

In re Opioid Litig.
Index No. 400000/2017
Page 6

Municipal Cost Recovery Rule

The distributor defendants' assertion that the plaintiffs are barred under the municipal cost recovery rule from recovering the costs of governmental services incurred in connection with the opioid crisis is rejected. The municipal cost recovery rule, also known as the free public services doctrine, precludes municipalities from recovering as damages from a tortfeasor the cost of public services, such as police and fire protection, required as a consequence of an accident or emergency (*see Koch v Consolidated Edison Co. of N.Y.*, 62 NY2d 548, 560, 479 NYS2d 163 [1984]; *Austin v City of Buffalo*, 182 AD2d 1143, 586 NYS2d 841 [4th Dept 1992]; *City of Buffalo v Wilson*, 179 AD2d 1079, 580 NYS2d 679 [4th Dept 1992]; *see also e.g. County of Erie, New York v Colgan Air, Inc.*, 711 F3d 147 [2d Cir 2013]; *City of Flagstaff v Atchison, Topeka & Santa Fe Ry. Co.*, 719 F2d 322 [9th Cir 1983]). In *Koch*, the Court of Appeals held that New York City could not recover as damages from Consolidated Edison the costs it incurred "for wages, salaries, overtime and other benefits of police, fire, sanitation and hospital personnel from whom services (in addition to those which would normally have been rendered) were required" as a consequence of a 25-hour blackout caused by the company's gross negligence, holding "[t]he general rule is that public expenditures made in the performance of governmental functions are not recoverable" (*Koch v Consolidated Edison Co. of N.Y.*, 62 NY2d at 560, 479 NYS2d at 170). And in *City of Flagstaff*, a seminal case for the municipal cost recovery rule, the Ninth Circuit held that the cost of providing police, fire, and emergency services "from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the services," reasoning that a rule allocating such expenses to the tortfeasor who caused an accident or other public emergency would upset "[e]xpectations of individuals and businesses, as well as their insurers," and that the legislature, not the court, is the appropriate forum in which to address whether the costs related to public emergencies should be shifted to the responsible party (*City of Flagstaff v Atchison, Topeka & Santa Fe Ry. Co.*, 917 F2d at 323-324). The municipal cost recovery rule, however, does not bar a cause of action for public nuisance (*see County of Erie, New York v Colgan Air, Inc.*, 711 F3d 147; *see also State of New York v Schenectady Chems.*, 117 Misc 2d 960, 459 NYS2d 971 [Sup Ct, Rensselaer County 1983]), and an exception exists permitting recovery for public expenses authorized by statute or regulation (*Koch v Consolidated Edison Co. of N.Y.*, 62 NY2d at 561, 479 NYS2d at 170).

The plaintiffs allege, among other things, they were harmed by having to pay the costs of prescription opioid therapy for employees and Medicaid beneficiaries complaining of chronic, non-cancer pain when such treatment was not medically necessary or reasonably required, and that, but for the misrepresentations made by the defendants and their front groups about the benefits and risks of long-term prescription opioid therapy, they would not have approved payment for such therapy. A review of the current state of the law reveals no case law supporting the contention that the municipal cost recovery rule bars recovery for expenses incurred, not by reason of an accident or an emergency situation necessitating "the normal provision of police, fire and emergency services" (*City of Flagstaff v Atchison, Topeka & Santa Fe Ry. Co.*, 719 F2d at 324), but to remedy public harm caused by an intentional, persistent course of deceptive conduct.

The court now turns to an examination of the legal sufficiency of the plaintiffs' causes of action.

In re Opioid Litig.
Index No. 400000/2017
Page 7

First Cause of Action/General Business Law § 349

      General Business Law § 349 (a) provides that it is unlawful to perform "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Although the statute's scope is broad, applying to virtually all types of economic activity (***Karlin v IVF Am., Inc.***, 93 NY2d 282, 290, 690 NYS2d 495, 498 [1999]), its application is strictly limited to deceptive acts or practices leading to consumer transactions in New York (*see **Goshen v Mutual Life Ins. Co. of N.Y.**,* 98 NY2d 314, 746 NYS2d 858 [2002]). Enacted in 1970 to protect New York consumers and to secure "'an honest market place where trust prevails between buyer and seller'" (***Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank***, 85 NY2d 20, 24-25, 623 NYS2d 529, 532 [1995], quoting Mem of Governor Rockefeller, 1970 Legis Ann, at 472), the statute initially was enforceable only by the Attorney General. Subsequently, recognizing that the Attorney General's resources only allowed for limited enforcement of the consumer protection provisions of General Business Law article 22-A, the Legislature amended the statute to allow private plaintiffs to bring consumer fraud actions (General Business Law § 349 [h]; ***Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.***, 3 NY3d 200, 205, 785 NYS2d 399, 402 [2004]; ***Goshen v Mutual Life Ins. Co. of N.Y.***, 98 NY2d 314, 324, 746 NYS2d 858, 863; ***Karlin v IVF Am., Inc.***, 93 NY2d 282, 690 NYS2d 495, 499).

      To state a cause of action under General Business Law § 349, a plaintiff must allege (1) that the defendant engaged in an act that was directed at consumers, (2) that the act engaged in was materially deceptive or misleading, and (3) that the plaintiff was injured as a result (***Stutman v Chemical Bank***, 95 NY2d 24, 29, 709 NYS2d 892, 895 [2000]; ***Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank***, 85 NY2d at 24-25, 623 NYS2d at 532). As to the first element, for pleading purposes, the claim of consumer-oriented conduct must be premised on allegations of facts sufficient to show the challenged acts or practices are "directed at the consuming public" (***Gaidon v Guardian Life Ins. Co. of Am.***, 94 NY2d 330, 343, 704 NYS2d 177, 182 [1999]) or have a broad impact on consumers at large (*see **Karlin v IVF Am., Inc.**,* 93 NY2d 282, 690 NYS2d 495; ***Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank***, 85 NY2d 20, 623 NYS2d 529). "Consumer-oriented conduct does not require a repetition or pattern of conduct" (*id.* at 25, 623 NYS2d at 533; *see **New York Univ. v Continental Ins. Co.**,* 87 NY2d 308, 639 NYS2d 283 [1995]). Sufficient consumer-oriented conduct has been found where a defendant employed "multi-media dissemination of information to the public" (***Karlin v IVF Am., Inc.***, 93 NY2d at 293, 690 NYS2d at 500), or employed an "extensive marketing scheme" that had a broad impact on consumers (***Gaidon v Guardian Life Ins. Co. of Am.***, 94 NY2d at 344, 704 NYS2d at 182). And though the term "consumers" has been construed to mean those who purchase goods and services for personal, family or household use (*see **Benetech, Inc. v Omni Fin. Group, Inc.**,* 116 AD3d 1190, 984 NYS2d 186 [3d Dept 2014]), courts have recognized the standing of business entities and business-like entities to sue under General Business Law § 349 for actions and practices which were "directed at or had a broader impact on consumers at large" and caused them harm (*see **Accredited Aides Plus, Inc. v Program Risk Mgt., Inc.**,* 147 AD3d 122, 46 NYS3d 246 [3d Dept 2017]; ***Pesce Bros., Inc. v Cover Me Ins. Agency of NJ, Inc.***, 144 AD3d 1120, 43 NYS3d 85 [2d Dept 2016]; ***North State Autobahn, Inc. v Progressive Ins. Group Co.***, 102 AD3d 5, 953 NYS2d 96 [2d Dept 2012]; *see also **Securitron Magnalock Corp. v Schnabolk**,* 65 F3d 256, 265 [2d Cir 1995]). "The

In re Opioid Litig.
Index No. 400000/2017
Page 8

critical question [] is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer" (*id.* at 265; *see North State Autobahn, Inc. v Progressive Ins. Group Co.*, 102 AD3d 5, 953 NYS2d 96).

As to the second element, a plaintiff must allege the challenged act or practice was "misleading in a material way" (*Stutman v Chemical Bank*, 95 NY2d at 29, 709 NYS2d at 895). "In determining whether a representation or omission is a deceptive act, the test is whether such act is 'likely to mislead a reasonable consumer acting reasonably under the circumstances'" (*Andre Strishak & Assoc. v Hewlett Packard Co.*, 300 AD2d 608, 609, 752 NYS2d 400, 402 [2d Dept 2002], quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 26, 623 NYS2d at 533; *see Amalfitano v NBTY, Inc.*, 128 AD3d 743, 9 NYS3d 372 [2d Dept 2015]). The statutory phrase "deceptive acts or practices" does not apply to "the mere invention of a scheme or marketing strategy, but [to] the actual misrepresentation or omission to a consumer" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d at 325, 746 NYS2d at 865). Thus, General Business Law § 349 is limited to conduct which undermines a consumer's ability "to evaluate his or her market options and to make a free and intelligent choice" in the marketplace (*North State Autobahn, Inc. v Progressive Ins. Group Co.*, 102 AD3d at 13, 953 NYS2d at 102). And while businesses are not required to guarantee that a consumer has all the relevant information specific to its particular situation, an omission-based claim under section 349 is appropriate "where the business alone possesses material information that is relevant to the consumer and fails to provide this information" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 26, 623 NYS2d at 533; *see Bildstein v Mastercard Intl., Inc.*, 2005 WL 1324972 [SD NY 2005]). Significantly, while the evidence must show a representation or omission by the offending party likely to mislead a reasonable consumer acting reasonably under the circumstances, the conduct need not rise to the level of common-law fraud to be actionable (*Stutman v Chemical Bank*, 95 NY2d at 29, 709 NYS2d at 896; *Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d at 343, 704 NYS2d at 182), and no proof of intent to defraud by the defendant or justifiable reliance by a consumer is required (*see Koch v Acker, Merrall & Condit Co.*, 18 NY3d 940, 944 NYS2d 422 [2012]; *Small v Lorillard Tobacco Co.*, 94 NY2d 43, 698 NYS2d 615 [1999]; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 623 NYS2d 529; *Valentine v Quincy Mut. Fire Ins. Co.*, 123 AD3d 1011, 1 NYS3d 161 [2d Dept 2014]).

As to the third element, a plaintiff is required to allege and prove "actual injury," though not necessarily pecuniary harm, to such plaintiff as a result of the defendant's deceptive act or practice (*City of New York v Smokes-Spirits.Com, Inc.*, 12 NY3d 616, 623, 883 NYS2d 772 [2009]; *Stutman v Chemical Bank*, 95 NY2d at 29, 709 NYS2d at 896; *Small v Lorillard Tobacco Co.*, 94 NY2d at 55-56, 698 NYS2d at 620; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 26, 623 NYS2d at 533; *see Wilner v Allstate Ins. Co.*, 71 AD3d 155, 893 NYS2d 208 [2d Dept 2010]). A plaintiff need not quantify the amount of harm to the public at large or specify consumers who suffered pecuniary loss due to the defendant's alleged deceptive conduct (*see North State Autobahn, Inc. v Progressive Ins. Group Co.*, 102 AD3d 5, 953 NYS2d 96). The courts, however, have rejected efforts to expand the scope of General Business Law § 349 to include recovery for derivative or indirect injuries, finding that a plaintiff asserting such a claim must establish an actual loss or harm that is separate from the deception (*see City of New York v Smokes-Spirits.Com, Inc.*, 12 NY3d 616, 883

In re Opioid Litig.
Index No. 400000/2017
Page 9

NYS2d 772; ***North State Autobahn, Inc. v Progressive Ins. Group Co.***, 102 AD3d 5, 953 NYS2d 96; ***Smith v Chase Manhattan Bank, USA***, 293 AD2d 598, 741 NYS2d 100 [2d Dept 2002]). Stated differently, a plaintiff lacks standing to bring an action under General Business Law § 349 if the claimed loss "arises solely as a result of injuries sustained by another party" (***Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.***, 3 NY3d 200, 207, 785 NYS2d 399, 404 [2004]). Thus, an insurer or third-party payor of medical expenditures may not recover derivatively, but must proceed by way of an equitable subrogation action for injuries allegedly suffered by its insured due to a violation of General Business Law § 349 (*id.* at 206, 785 NYS2d at 403).

Initially, contrary to the assertions by the distributor defendants, the strict pleading requirements imposed by CPLR 3016 are inapplicable to a cause of action premised on General Business Law § 349 (*see **Joannou v Blue Ridge Ins. Co.***, 289 AD2d 531, 735 NYS2d 786 [2d Dept 2001]; ***McGill v General Motors Corp.***, 231 AD2d 449, 647 NYS2d 209 [1st Dept 1996]). Moreover, like its sister statute General Business Law § 350, General Business Law § 349 is a remedial statute (***Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.***, 3 NY3d at 207, 785 NYS2d at 403; *see **Morelli v Weider Nutrition Group***, 275 AD2d 607, 712 NYS2d 551 [1st Dept 2000]). Thus, it should be "liberally construed to carry out the reforms intended and to promote justice" (McKinney's Cons Laws of NY, Book 1, Statutes § 321).

The allegations in the complaint are legally sufficient to state a cause of action under General Business Law § 349 as against the distributor defendants. The plaintiffs allege that the defendants, acting in concert, employed assiduously crafted, multi-pronged marketing strategies that targeted the general public through websites, print advertisements, and educational materials and publications as part of their scheme to change the perception of the risks associated with prescription opioids and to de-stigmatize and normalize the long-term use of opioids for chronic nonmalignant pain. According to the complaint, marketing strategies designed to affect physicians' prescribing practices included advertising in print journals and online, sponsoring continuing medical education courses, and hiring KOLs to act as consultants and serve as lecturers.

The plaintiffs further allege that the defendants' marketing scheme included funding so-called front groups, such as the American Pain Foundation and the American Academy of Pain Medicine, which wrote and disseminated favorable educational materials, published "scientific literature" without scientific bases, and created opioid treatment guidelines supporting opioid therapy for chronic pain. They allege that the distributor defendants collaborated with the manufacturer defendants in their unbranded marketing efforts by funding and joining front groups, like the Pain Care Forum, a coalition of manufacturers, distributors, healthcare providers, patient advocacy groups, and others created to influence public opinion and policies regarding prescription opioids. The plaintiffs assert that, in addition to providing substantial funding to the front groups, the defendants exercised significant influence over the written materials, such as journal articles and treatment guidelines, and the educational programs presented by front groups and KOLs. Moreover, the plaintiffs allege that the defendants sponsored websites created by front groups and accessible by the public that promoted prescription opioids as a means for improving patients' normal daily functions and quality of life. Such allegations are sufficient to plead consumer-oriented conduct within the scope of General Business Law

In re Opioid Litig.
Index No. 400000/2017
Page 10

§ 349 (*see Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 704 NYS2d 177; *Karlin v IVF Am., Inc.*, 93 NY2d 282, 690 NYS2d 495; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 623 NYS2d 529; *Accredited Aides Plus, Inc. v Program Risk Mgt., Inc.*, 147 AD3d 122, 46 NYS3d 246 [3d Dept 2017]).

The plaintiffs also sufficiently allege materially deceptive acts and practices by the distributor defendants that undermined consumers' ability to assess the benefits and dangers of prescription opioids and to make informed decisions as to the efficacy and safety of opioid therapy for chronic pain (*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 746 NYS2d 858; *Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 704 NYS2d 177; *Goldman v Simon Prop. Group, Inc.*, 58 AD3d 208, 869 NYS2d 125 [2d Dept 2008]). Among the allegations of materially deceptive practices set forth in the complaint are claims that the distributor defendants, acting in concert with the manufacturer defendants, made and disseminated statements online, in advertisements, in publications, and in educational materials that misrepresented the risks of opioid addiction and falsely portrayed prescription opioids as a preferred treatment option for chronic pain, in particular by depicting such drugs as appropriate for long-term use and effective in improving patients' quality of life and ability to function on a day-to-day basis. The plaintiffs also allege that the distributor defendants, together with the manufacturer defendants, employed front groups and KOLs to disseminate misleading information through educational forums, publications, and websites that reinforced such marketing messages, and to deceive the medical community and the public about the effectiveness of opioids in treating chronic pain, the proper dosing and titration of opioids, and the danger of addiction. In addition, the plaintiffs allege that the misleading communications by the defendants, the front groups, and the KOLs were made or disseminated within the plaintiff counties or were posted on public websites.

Moreover, the plaintiffs adequately allege that they suffered direct injuries as a result of the defendants' alleged materially deceptive acts or practices (*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 746 NYS2d 858; *North State Autobahn, Inc. v Progressive Ins. Group Co.*, 102 AD2d 5, 953 NYS2d 96; *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 2007 WL 1051642 [D Mass 2007]). It is sufficiently alleged that the plaintiffs, as a result of the deceptive marketing campaigns regarding opioid effectiveness, misuse, and addiction, paid for medications that were not medically necessary and that would not have been approved for the treatment of chronic, non-cancer pain if all the relevant facts about such medications had been known by them. For example, the plaintiffs allege that they paid for brand-name opioid prescriptions, such as OxyContin, Opana, Nucynta, and Kadian, for employees covered by county-funded health insurance plans and for residents receiving Medicaid benefits based on material misrepresentations disseminated by the defendants to the public and the health care community that such products had lower potential for abuse and addiction based on their supposed "long-acting" or "steady-state" properties, and that they paid for brand-name prescriptions of "rapid-onset" or short-acting opioids, such as Actiq, Fentora, and Duragesic, based on material misrepresentations that such medications are safe for treating non-cancer, chronic-pain patients complaining of "breakthrough" pain episodes (*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 746 NYS2d 858; *cf. Baron v Pfizer, Inc.*, 42 AD3d 627, 840 NYS2d 445 [3d Dept 2007]). Further, it can be inferred from the allegations in the complaint that the plaintiffs, having been deceived by the defendants about the risks associated with long-term prescription opioid use, were injured by

In re Opioid Litig.
Index No. 400000/2017
Page 11

having to pay for more prescriptions than would have otherwise been necessary as patients, particularly
county employees and Medicaid beneficiaries, became addicted to such painkillers (*see Wilner v Allstate
Ins. Co.*, 71 AD3d 155, 893 NYS2d 208 [2d Dept 2010]). In addition, it is alleged that the defendants'
deceptive marketing scheme created a public health crisis within the plaintiff counties, leading to
substantial increases in opioid addiction, abuse, overdose, and death among residents, and that such
crisis has forced the plaintiffs to allocate substantial resources to implement measures to reduce opioid
abuse and opioid-related crimes, and to combat opioid addiction and overdoses with medications, such
as naltrexone, naloxone, and buprenorphine, and with treatment programs. Thus, the plaintiffs here are
not simply seeking to recoup medical and drug costs incurred by their employees and Medicaid
beneficiaries (*cf. Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d 200, 785
NYS2d 399). The court, therefore, finds that the plaintiffs' allegations that the distributor defendants
participated in the deceptive marketing scheme to promote prescription opioids as an effective and safe
long-term treatment option for chronic pain, evidenced by their joining and funding of front groups
promoting prescription opioids for such use, are sufficient to state a General Business Law § 349 claim
against them based on concerted action (*see Rodriguez v City of New York*, 35 AD3d 702, 827 NYS2d
220 [2d Dept 2006]; *Weldon v Rivera*, 301 AD2d 934, 754 NYS2d 698 [3d Dept 2003]; *see also
Prough v Olmstead*, 201 AD2d 603, 619 NYS2d 404 [3d Dept 1994]).

Second Cause of Action/General Business Law § 350

Having a scope as broad as that of General Business Law § 349 (*Karlin v IVF Am., Inc.*, 93
NY2d at 290, 690 NYS2d at 498), the statute defines false advertising as "advertising, including
labeling, of a commodity" which is "misleading in a material respect." As with a General Business Law
§ 349 claim, a plaintiff asserting a claim under this statute must establish that the alleged false
advertisement had an impact on consumers at large, was deceptive or misleading in a material way, and
caused injury (*Andre Strishak & Assoc. v Hewlett Packard Co.*, 300 AD2d at 609, 752 NYS2d at 402;
*Scott v Bell Atl. Corp.*, 282 AD2d 180, 183-184, 726 NYS2d 60, 63 [1st Dept 2001], *lv granted in part,
dismissed in part* 97 NY2d 698, 739 NYS2d 95, *mod* 98 NY2d 314, 747 NYS2d 858 [2002]). General
Business Law § 350-a (1) provides that, in determining whether advertising is misleading, "there shall be
taken into account (among other things) not only representations made by statement, word, design,
device, sound or any combination thereof, but also the extent to which the advertising fails to reveal
[material facts] in the light of such representations with respect to the commodity . . . to which the
advertising relates under the conditions prescribed in said advertisement, or under such conditions as are
customary or usual." The defendant's conduct need not rise to the level of a fraud to be actionable
(*Matter of People v Applied Card Sys., Inc.*, 27 AD3d 104, 107, 805 NYS2d 175, 178 [3d Dept 2005]).
Further, a claim of false advertising must be premised on an advertisement published within the state
that "is likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Oswego
Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 26, 623 NYS2d at 533).
Reliance by the plaintiff on an advertisement is not a required element of a General Business Law § 350
claim (*Koch v Acker, Merrall & Condit Co.*, 18 NY3d 940, 941, 944 NYS2d 452, 453 [2012]; *Goshen
v Mutual Life Ins. Co. of N.Y.*, 98 NY2d at 324 n. 1, 746 NYS2d 858, 865; *but see Pesce Bros., Inc. v
Cover Me Ins. Agency of NJ, Inc.*, 144 AD3d 1120, 43 NYS3d 85); rather, the plaintiff must show the
false advertisement caused it to suffer injury or loss (*cf. Stutman v Chemical Bank*, 95 NY2d 24, 709

In re Opioid Litig.
Index No. 400000/2017
Page 12

NYS2d 892).

The plaintiffs sufficiently allege that the defendants, by way of branded and unbranded print advertisements, public websites, and patient education materials, made materially misleading statements regarding the benefits of prescription opioid therapy for chronic pain and the risks associated with opioid use, particularly the potential for abuse (*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 746 NYS2d 858; *Karlin v IVF Am., Inc.*, 93 NY2d 282, 290, 690 NYS2d 495). They allege that, as marketing research showed physicians are more likely to prescribe a drug if specifically requested by a patient, the defendants published misleading advertisements for both the general consuming public and prescribers. According to the complaint, the manufacturer and distributor defendants collaboratively engaged in false advertising through unbranded advertisements, public websites, and various publications issued by front groups that they funded and controlled. It alleges, for example, that the defendants falsely represented on public websites aimed at patients and prescribers that warnings about the risks of opioid addiction were "overstated," and promoted the concept of pseudoaddiction, for which there is no scientific basis. Significantly, the plaintiffs allege that the false advertisements materially misled consumers and prescribers about the benefits and risks of prescription opioid therapy for chronic pain, including by failing to reveal that opioids pose a higher risk of abuse and addiction than other analgesics and that there was no scientific basis for many of the claims contained therein.

As to the "impact on consumers" element of General Business Law § 350, it may be inferred from the allegations in the complaint that defendants' false advertising dramatically increased consumer demand for and consumption of prescription opioids, and that it created public misperception about the safety and efficacy of such prescription drugs. As to the causation element, it likewise may be inferred that the opioid epidemic allegedly spawned in part by such false advertising caused the plaintiffs to suffer extraordinary losses, including the costs related to the care and treatment of residents suffering from prescription opioid addiction, and the costs of opioid prescriptions for employees receiving county-funded health insurance benefits and residents receiving Medicaid benefits that would not have been approved had the risks associated with long-term opioid therapy for chronic, non-cancer related pain been known (*see Karlin v IVF Am., Inc.*, 93 NY2d 282, 690 NYS2d 495; *cf. Stutman v Chemical Bank*, 95 NY2d 24, 709 NYS2d 892).

Third Cause of Action/Public Nuisance

The distributor defendants contend that the plaintiffs' third cause of action, alleging public nuisance, is deficient as a matter of law for failure to plead either proximate causation or substantial interference with a public right; that the plaintiffs' theory, as pleaded, would improperly expand public nuisance law to lawful, commercial activity; and that the plaintiffs cannot bring a public nuisance claim, as here, predicated on the violation of a statute–the New York State Controlled Substances Act (Public Health Law art 33)–that does not authorize a private right of action to enforce its terms.

A public or "common" nuisance is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency (*Copart Indus. v Consolidated Edison Co. of N.Y.*, 41 NY2d 564, 394 NYS2d 169 [1977]). It consists of conduct or omissions which offend,

In re Opioid Litig.
Index No. 400000/2017
Page 13

interfere with or cause damage to the public in the exercise of rights common to all, in a manner such as
to offend public morals, interfere with use by the public of a public place or endanger or injure the
property, health, safety or comfort of a considerable number of persons (*id.*).

Section 821B of Restatement (Second) of Torts provides:

(1) A public nuisance is an unreasonable interference with a right common to the general
public.

(2) Circumstances that may sustain a holding that an interference with a public right is
unreasonable include the following:

(a) Whether the conduct involves a significant interference with the public health,
the public safety, the public peace, the public comfort or the public convenience,
or

(b) whether the conduct is proscribed by a statute, ordinance or administrative
regulation, or

© whether the conduct is of a continuing nature or has produced a permanent or
long-lasting effect, and, as the actor knows or has reason to know, has a
significant effect upon the public right.

The distributor defendants' arguments are insufficient to warrant dismissal. Initially, with
respect to their claim that the plaintiffs have failed to plead substantial interference with a public right, it
suffices to note the defendants' failure to establish why public health is not a right common to the
general public, nor why such continuing, deceptive conduct as alleged would not amount to interference;
it can scarcely be disputed, moreover, that the conduct at the heart of this litigation, alleged to have
created or contributed to a crisis of epidemic proportions, has affected "a considerable number of
persons" (*Copart Indus. v Consolidated Edison Co. of N.Y.*, 41 NY2d at 568, 394 NYS2d at 172).
Regarding the claimed lack of proximate causation, the defendants rely primarily on *People v Sturm,
Ruger & Co.* (309 AD2d 91, 761 NYS2d 192 [1st Dept], *lv denied* 100 NY2d 514, 769 NYS2d 200
[2003]), a case involving public nuisance claims against handgun manufacturers, wholesalers, and
retailers. There, the plaintiff alleged, in part, that despite the defendants having been placed on notice
that the guns sold, distributed, and marketed by them were being used in crimes, they were deliberately
designing and marketing their product in a way that placed a disproportionate number of guns in the
possession of people who use them unlawfully. In dismissing the public nuisance claims, the court,
based on its reading of *Hamilton v Beretta U.S.A. Corp.* (96 NY2d 222, 727 NYS2d 7 [2001]
[involving a negligent marketing claim against handgun makers]), relied primarily on a proximate cause
analysis, noting that the harms alleged were too indirect and remote from the defendants' conduct and
expressing a general reluctance to "open the courthouse doors to a flood of limitless, similar theories of
public nuisance" in matters involving commercial activity (*People v Sturm, Ruger & Co.*, 309 AD2d at
96, 761 NYS2d at 196). The court did, however, recognize that public nuisance might be an appropriate

In re Opioid Litig.
Index No. 400000/2017
Page 14

tool, in other contexts, to address consequential harm from commercial activity. And the court also
noted, as in *Hamilton*, a break in the causative chain by the criminal activity of intervening third parties,
i.e., that the parties most directly responsible for the unlawful use of handguns were the individuals
unlawfully using them.

Here, by contrast, it is alleged that the plaintiffs have been damaged not only by the illegal use of
opioids but also by their legal use, consistent with the concerted efforts of all the defendants to market
and promote their products for sale and distribution. As to such legal use, it is at least arguable that the
distributor defendants were in a position to anticipate or prevent the claimed injuries; it does not seem
unfair, therefore, to hold them potentially accountable. The court is doubtful, in any event, whether a
discussion of proximate cause in a case based on negligence should even apply in a case based on public
nuisance. "[W]here the welfare and safety of an entire community is at stake, the cause need not be so
proximate as in individual negligence cases" (*City of New York v A-1 Jewelry & Pawn, Inc.*, 247 FRD
296, 347-348 [ED NY 2007]).

Finally, and contrary to the assertions of the distributor defendants, it suffices to note that this
cause of action is not premised solely on alleged violations of the New York State Controlled Substances
Act but also on their deceptive conduct, in concert with their codefendants, to mislead the plaintiffs and
the public about the risks and benefits of prescription opioids; whether, then, the statute does not provide
for a private right of action but vests enforcement authority exclusively with the New York State
Department of Health, as they contend, is immaterial for purposes of this analysis. "Mere overlap"
between the common law on the one hand, and a statute and its implementing regulations on the other,
"is not enough to extinguish the common-law remedies" (*Assured Guar. (UK) Ltd. v J.P. Morgan Inv.
Mgt. Inc.*, 18 NY3d 341, 353, 939 NYS2d 274, 279-280 [2011]).

Fourth Cause of Action/Social Services Law § 145-b

The distributor defendants contend that the plaintiffs' fourth cause of action, alleging violation of
Social Services Law § 145-b, must be dismissed for failure to plead that the defendants made a "false
statement or representation" of any type listed in the statute.

Social Services Law § 145-b states that "[i]t shall be unlawful for any person, firm or corporation
knowingly by means of false statement or representation, or by deliberate concealment of any material
fact, or other fraudulent scheme or device, on behalf of himself or others, to attempt to obtain or to
obtain payment from public funds for services or supplies furnished or purportedly furnished" under the
Social Services Law. A "statement or representation" includes, but is not limited to

> a claim for payment submitted to the State, a political subdivision
> of the state, or an entity performing services under contract to the
> state or a political subdivision of the state; an acknowledgment,
> certification, claim, ratification or report of data which serves as
> the basis for a claim or a rate of payment[;] financial information
> whether in a cost report or otherwise[;] health care services available

In re Opioid Litig.
Index No. 400000/2017
Page 15

or rendered[;] and the qualifications of a person that is or has
rendered health care services.

(Social Services Law § 145-b [1] [b]; *see generally State of New York v Lutheran Ctr. for the Aging,
Inc.*, 957 F Supp 393 [ED NY 1997]). A person, firm or corporation "has attempted to obtain or has
obtained" payment from public funds "when any portion of the funds from which payment was
attempted or obtained are public funds, or any public funds are used to reimburse or make prospective
payment to an entity from which payment was attempted or obtained" (Social Services Law § 145-b [1]
[c]).

The court finds no basis to warrant an order of dismissal. To the extent the distributor
defendants claim that this cause of action is deficient for want of specific allegations that they
participated in any of the marketing campaigns or promotional efforts underlying the complaint, the
court notes that all issues pertaining to particularity requirements for pleadings have already been
addressed and squarely rejected in this order. The defendants do not explain, moreover, why the
allegedly false statements and representations underlying the plaintiffs' other causes of action would not
serve to support this cause of action as well.

Fifth Cause of Action/Fraud

The elements of a cause of action for fraud are (1) a misrepresentation or material omission of
fact, (2) which was false and known to be false by the defendant, (3) made for the purpose of inducing
the plaintiff to rely upon it, (4) upon which the plaintiff justifiably relied, (5) causing injury (*Pasternack
v Laboratory Corp. of Am. Holdings*, 27 NY3d 817, 37 NYS3d 750 [2016]; *Eurycleia Partners, LP v
Seward & Kissel, LLP*, 12 NY3d 553, 883 NYS2d 147 [2009]; *Lama Holding Co. v Smith Barney*, 88
NY2d 413, 646 NYS2d 76 [1996]; *Ozelkan v Tyree Bros. Envtl. Servs., Inc.*, 29 AD3d 877, 815
NYS2d 265 [2d Dept 2006]; *Clearview Concrete Prods. Corp. v S. Charles Gherardi, Inc.*, 88 AD2d
461, 453 NYS2d 750 [2d Dept 1982]). A cause of action rooted in fraud must meet the pleading
requirement set forth in CPLR 3016 (b) that "the circumstances constituting the wrong shall be stated in
detail." Although "unassailable proof" is not required at the pleading stage, a complaint alleging fraud
must set forth "the basic facts to establish the elements of the cause of action" (*Pludeman v Northern
Leasing Sys., Inc.*, 10 NY3d 486, 492, 860 NYS2d 422, 425 [2008]). And while conclusory language
may be insufficient (*see Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 883 NYS2d
147; *Heffez v L & G Gen. Constr., Inc.*, 56 AD3d 526, 867 NYS2d 198 [2d Dept 2008]; *Friedman v
Anderson*, 23 AD3d 163, 803 NYS2d 514 [1st Dept 2005]), CPLR 3016 (b) requires only that the
complaint set forth the alleged misconduct "in sufficient detail to clearly inform a defendant with respect
to the incidents complained of and is not to be interpreted so strictly as to prevent an otherwise valid
cause of action in situations where it may be impossible to state in detail the circumstances constituting a
fraud" (*Lanzi v Brooks*, 43 NY2d 778, 780, 402 NYS2d 384, 385 [1977] [internal quotation marks
omitted]; *see Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 860 NYS2d 422).

Here, the allegations in the complaint are sufficient to set forth a cognizable claim for fraud
against the distributor defendants. The plaintiffs allege that the distributor defendants, acting in concert

In re Opioid Litig.
Index No. 400000/2017
Page 16

with their codefendants, purposefully misrepresented that opioids improve function and quality of life, that addiction risks can be managed, that withdrawal is easily managed, that higher doses of opioids pose no greater risks to patients, and that the defendants deceptively minimized the adverse effects of opioids while overstating the risks of NSAIDs (nonsteroidal anti-inflammatory drugs). The plaintiffs further allege that the defendants, working together to maximize their profits from the sale of opioids, created a body of false, misleading, and unsupported medical and popular literature about opioids; that they disguised their roles in the deceptive marketing of opioid therapy for chronic pain by funding and working through patient advocacy and professional front organizations; that they funded false and misleading marketing campaigns to improperly influence individual prescribers; and that they omitted material information related to the dangers of long-term opioid use. In addition, the plaintiffs allege that the strategies employed by the defendants "were intended to, and did, knowingly and intentionally distort the truth regarding the risks, benefits and superiority of opioids for chronic pain relief resulting in distorted prescribing patterns." They also allege that the defendants' "misrepresentations were material to, and influenced, the plaintiffs' decisions to pay claims for opioids for chronic pain (and, therefore, to bear its consequential costs in treating overdose, addiction, and other side effects of opioid use)."

To the extent the distributor defendants contend that the rule barring recovery of indirect or derivative injuries sustained by others bars this cause of action, the court reiterates that the plaintiffs are not simply seeking to recoup medical and drug costs incurred by their employees and Medicaid beneficiaries (*cf. Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d 200, 785 NYS2d 399 [2004]).

Sixth Cause of Action/Unjust Enrichment

The distributor defendants contend that the plaintiffs' sixth cause of action, sounding in unjust enrichment, must be dismissed because it is premised on the same factual allegations as those underlying their tort and statutory claims and does not provide an independent basis for liability. The distributor defendants further contend that this cause of action is an improper attempt to circumvent the absence of a private right of action under the New York State Controlled Substances Act and its implementing regulations, and that the parties lack a sufficiently close relationship to support a cause of action for unjust enrichment.

In order to adequately plead a cause of action for unjust enrichment, it must be alleged that the defendant was enriched, at the plaintiff's expense, and that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered (***Mandarin Trading Ltd. v Wildenstein***, 16 NY3d 173, 919 NYS2d 465 [2011]). The theory of unjust enrichment "lies as a quasi-contract claim" and contemplates "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties" (***Georgia Malone & Co., Inc. v Rieder***, 19 NY3d 511, 516, 950 NYS2d 333, 336 [2012] [internal quotation marks omitted]). "Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated" (***Mandarin Trading Ltd. v Wildenstein***, 16 NY3d at 182, 919 NYS2d at 472; *accord **Sperry v Crompton Corp.***, 8 NY3d 204, 831 NYS2d 760 [2007]).

In re Opioid Litig.
Index No. 400000/2017
Page 17

Here, the plaintiffs plead that the distributor defendants, as an expected and intended result of their conscious wrongdoing alleged elsewhere in the complaint, were enriched from opioid purchases made by the plaintiffs. They also allege that it would be unjust and inequitable to permit them to enrich themselves at the plaintiffs' expense.

The court finds the pleading sufficient to withstand the distributor defendants' claims. It does not appear, for purposes of this determination, that this cause of action is either derivative or duplicative of any other cause of action. As pleaded, it is the only cause of action by which the plaintiffs seek disgorgement of profits and other monetary benefits resulting from the distributor defendants' alleged misconduct; moreover, as New York law specifically allows for the pleading of alternative causes of action and alternative forms of relief (CPLR 3014, 3017), the plaintiffs need not elect any theory over another at this preliminary stage. To the extent the distributor defendants urge the application of the rule barring recovery of indirect or derivative injuries sustained by others, the court notes, as discussed elsewhere in this order, that the plaintiffs here are not simply seeking to recoup medical and drug costs incurred by their employees and Medicaid beneficiaries (*cf. Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d 200, 785 NYS2d 399). The distributor defendants have also failed to explain why, as a pleading matter, the retention of profits wrongfully obtained would not be unjust. As for the relationship between and among the parties, the plaintiffs allege, in relevant part, that the distributor defendants helped to create a body of false and misleading literature intended to shape the perceptions of third-party payors such as the plaintiffs, encouraging them to pay for long-term opioid prescriptions and effectively depriving them of the chance to exercise informed judgment; implicit in those allegations is that the distributor defendants knew that the plaintiffs were to be the source of a significant portion of their profits. Accepting those facts as true and according the plaintiffs the benefit of every favorable inference (*Leon v Martinez*, 84 NY2d 83, 614 NYS2d 972 [1994]), it is evident that the plaintiffs have pleaded a relationship–or "at least an awareness" by the distributor defendants of the plaintiffs' existence (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d at 182, 919 NYS2d at 472)–sufficient to maintain their cause of action. And since the cause of action, as pleaded, is not premised solely on violations of the New York State Controlled Substances Act, whether a private right to enforce that statute exists is irrelevant for purposes of this determination (*see Assured Guar. (UK) Ltd. v J.P. Morgan Inv. Mgt. Inc.*, 18 NY3d 341, 939 NYS2d 274).

Seventh Cause of Action/Negligence

Before addressing the substantive issues raised by the distributor defendants, the court finds, to the extent it is claimed that this cause of action is barred by the three-year statute of limitations, that the defendants' arguments are insufficient to warrant dismissal.

"To dismiss a cause of action pursuant to CPLR 3211 (a) (5) on the ground that it is barred by the statute of limitations, a defendant bears the initial burden of establishing prima facie that the time in which to sue has expired. Only if such prima facie showing is made will the burden then shift to the plaintiff to aver evidentiary facts establishing that the case falls within an exception to the statute of limitations. In order to make a prima facie showing, the defendant must establish, inter alia, when the plaintiff's cause of action accrued" (*Swift v New York Med. Coll.*, 25 AD3d 686, 687, 808 NYS2d 731,

In re Opioid Litig.
Index No. 400000/2017
Page 18

732-733 [2d Dept 2006] [internal citations and quotation marks omitted]; *accord Pace v Raisman & Assoc., Esqs., LLP*, 95 AD3d 1185, 945 NYS2d 118 [2d Dept 2012]).

"In general, a cause of action accrues, triggering commencement of the limitations period, when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief" (*Gaidon v Guardian Life Ins. Co. of Am.*, 96 NY2d 201, 210, 727 NYS2d 30, 35 [2001]).   While a claim for breach of contract accrues on the date of the breach, irrespective of the plaintiff's awareness of the breach (*Ely-Cruikshank Co. v Bank of Montreal*, 81 NY2d 399, 599 NYS2d 501 [1993]), a tort claim accrues only when it becomes enforceable, that is, when all the elements of the tort can be truthfully alleged in the complaint (*Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 595 NYS2d 931 [1993]).   When damage is an essential element of the tort, the claim is not enforceable until damages are sustained (*id.*).   Actual damages are an essential element of a negligence claim (*e.g. IGEN, Inc. v White*, 250 AD2d 463, 672 NYS2d 867 [1st Dept], *lv denied* 92 NY2d 818, 684 NYS2d 489 [1998]).   A cause of action sounding in negligence, therefore, accrues not at the time of the alleged breach but only when the claimed negligence causes a plaintiff to sustain damages (*see Brooks v AXA Advisors, LLC*, 104 AD3d 1178, 961 NYS2d 648 [4th Dept], *lv denied* 21 NY3d 858, 970 NYS2d 748 [2013]).

Here, the distributor defendants have failed to establish when the cause of action accrued. Instead, they argue that the plaintiffs knew of the facts underlying their claims (i.e., the existence of the opioid epidemic and the role of the distributor defendants in the supply chain) "since at least 2012"–an argument they apparently seek to extend to the plaintiffs' other causes of action as well–as if discovery of facts is somehow tantamount to sustainment of injury.   Even a cause of action for fraud, which is subject to a discovery rule (*see* CPLR 203 [g]; 213 [8]), cannot accrue until every element of the claim, including injury, can truthfully be alleged (*Carbon Capital Mgt., LLC v American Express Co.*, 88 AD3d 933, 932 NYS2d 488 [2d Dept 2011]).   While they also claim that the plaintiffs knew they were experiencing increased costs relating to the epidemic more than three years prior to the commencement of this action, this bears only on the extent of the plaintiffs' recovery, the plaintiffs having alleged a continuing wrong in allowing the counties to be flooded with suspiciously large amounts of opioids (*see generally Affordable Hous. Assoc., Inc. v Town of Brookhaven*, 150 AD3d 800, 54 NYS3d 122 [2d Dept 2017]).   And while some recovery of damages may be time-barred, dismissal–even partial dismissal–is not appropriate at this juncture, as the court is not yet able to determine the precise nature and timing of the plaintiffs' respective claims (*see Airco Alloys Div. v Niagara Mohawk Power Corp.*, 76 AD2d 68, 430 NYS2d 179 [1980]).

As to the substantive issues raised, it is settled law that to plead a cause for negligence, a plaintiff must allege the existence of a duty, a breach of that duty, and that the breach of such duty was a proximate cause of his or her injuries (*see Pulka v Edelman*, 40 NY2d 781, 390 NYS2d 393 [1976]; *Miglino v Bally Total Fitness of Greater N.Y., Inc.*, 92 AD3d 148, 937 NYS2d 63 [2d Dept 2011], *affd* 20 NY3d 342, 961 NYS2d 364 [2013]).   A duty of reasonable care owed by the alleged tortfeasor to the plaintiff is essential to any recovery in negligence (*Eiseman v State of New York*, 70 NY2d 175, 187, 518 NYS2d 608, 613 [1987]; *see Espinal v Melville Snow Contrs.*, 98 NY2d 136, 746 NYS2d 120 [2002]).

In re Opioid Litig.
Index No. 400000/2017
Page 19

The distributor defendants contend that the plaintiffs' cause of action for negligence must be dismissed because they do not owe a duty running directly to the plaintiffs, and that they do not have a duty to control the actions of third persons. They further contend that the plaintiffs failed to adequately plead that their acts or omissions are the proximate cause of plaintiffs' injuries, and that the plaintiffs are barred from recovering for indirect or derivative injuries.  To the extent it is argued that the distributor defendants have no control over the eventual distribution of pharmaceutical products to individuals once they deliver those products to pharmacies, and that they have no way of knowing the total number of opioid prescriptions dispensed in any given county, the court finds such arguments are not appropriate in the context of a CPLR 3211 motion.

"A critical consideration in determining whether a duty exists is whether 'the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm'" (*Davis v South Nassau Communities Hosp.*, 26 NY3d 563, 572, 26 NYS3d 231, 236 [2015], quoting *Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 233, 727 NYS2d 7 [2001]). Unlike *Hamilton*, where the Court of Appeals found that gun manufacturers were not in the best position to protect against the risk of harm from the misuse of its product by third parties, here the plaintiffs allege facts sufficient to support the existence of a duty of care owed to them by the distributor defendants.  Specifically, the plaintiffs allege that the distributor defendants had knowledge, which they did not disclose, of the actual dangers associated with the long-term use of the prescription opioids they were distributing–particularly their addictive nature.  They allege that such defendants, as suppliers to retail pharmacies and healthcare facilities, were in the best position to protect the plaintiffs both against the expenses incurred for opioids prescribed for their employees and for Medicaid beneficiaries that would not have been approved for payment, and against the extraordinary amounts expended to combat the opioid crisis allegedly caused by the defendants' deceptive marketing campaigns.

> [W]henever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he [or she] did not use ordinary care and skill in his [or her] own conduct with regard to the circumstances he [or she] would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger . . . [W]hile the existence of a duty involves scrutiny of the wrongfulness of a defendant's action or inaction, it correspondingly necessitates an examination of an injured person's reasonable expectation of the care owed and the basis for the expectation and the legal imposition of a duty.

(*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 585, 611 NYS2d 817, 820 [1994] [internal quotation marks omitted]).

Here, the plaintiffs have adequately pled the existence of a duty owed by the distributor defendants by alleging that societal expectations required different behaviors on their part, including, but not limited to, refusing to fill suspicious orders for opioids (*id.*). The plaintiffs also allege sufficient facts to support a separate duty not to deceive (*see Tomasino v American Tobacco Co.*, 23 AD3d 546,

In re Opioid Litig.
Index No. 400000/2017
Page 20

807 NYS2d 603 [2d Dept 2005]; *Miele v American Tobacco Co.*, 2 AD3d 799, 803, 770 YS2d 386 [2d Dept 2003]; *see also Cipollone v Liggett Group, Inc.*, 505 US 504, 112 S Ct 2608 [1992]; *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369 [SD NY 2015]). In addition, the court having determined in its June 18, 2018 order that the allegations in the complaint are sufficient to state a negligence cause of action against the manufacturer defendants, the plaintiffs' claims of concerted action suffice to state a basis to support the existence of yet another breach of duty by the distributor defendants. "The concerted action theory of liability for injury to a third party will attach when one knows that another's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other, and '[t]his is true both when the act done is an intended trespass . . . and when it is merely a negligent act'" (*Miele v American Tobacco Co.*, 2 AD3d 799, 805, 770 NYS2d 386, 392, quoting Restatement [Second] of Torts § 876 [b], Comment d, Illustration 6; *see also Silvercreek Mgt., Inc. v Citigroup, Inc.*, 248 F Supp 3d 428 [SD NY 2017]).

The distributor defendants' contention that the plaintiffs have failed to adequately allege "but for" causation is without merit, as the test for legal causation is proximate cause (*see Burlington Ins. Co. v NYC Tr. Auth.*, 29 NY3d 313, 57 NYS3d 85 [2017]). Similarly, the distributor defendants' contention that the plaintiffs have failed to adequately allege causation in a general sense is not dispositive herein. "Generally, issues of proximate cause are for the fact finder to resolve" (*Adams v Lemberg Enters., Inc.*, 44 AD3d 694, 695, 843 NYS2d 432, 433 [2d Dept 2007]). Even at the more advanced stage of litigation, "the absence of direct evidence of causation [does] not necessarily compel a grant of summary judgment in favor of the defendant, as proximate cause may be inferred from the facts and circumstances underlying the injury, the evidence must be sufficient to permit a finding based on logical inferences from the record and not upon speculation alone" (*Hartman v Mountain Val. Brew Pub*, 301 AD3d 570, 570, 754 NYS2d 31, 32 [2003]; *see also Schneider v Kings Hwy. Hosp. Ctr.*, 67 NY2d 743, 500 NYS2d 95 [1986]; *Mitchell v Mongoose, Inc.*, 19 AD3d 380, 796 NYS2d 421 [2d Dept 2005]). Here, the allegations in the complaint support an inference that the distributor defendants' breach was a proximate cause of the plaintiffs' injuries.

The distributor defendants also contend that the cause of action for negligence must be dismissed, because the plaintiffs may not enforce the New York State Controlled Substances Act. This argument is rejected, as the cause of action is not predicated solely on a violation of the statute (*Assured Guar. (UK) Ltd. v J.P. Morgan Inv. Mgt. Inc.*, 18 NY3d 341, 353, 939 NYS2d 274, 279 [2011]). "It is well settled that when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute" (*id.* at 350-351, 939 NYS2d at 278 [internal quotation marks omitted]).

Finally, the plaintiffs allege that the distributor defendants' negligence caused them direct injury, as they have incurred costs related to opioid addiction and abuse, including health care costs, criminal justice and victimization costs, social costs, and lost productivity costs. To the extent the distributor defendants urge the application of the rule barring recovery of indirect or derivative injuries sustained by others, the court again notes that the plaintiffs are not simply seeking to recoup medical and drug costs incurred by their employees and Medicaid beneficiaries (*cf. Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d 200, 205, 785 NYS2d 399). Accordingly, the branch of the distributor

In re Opioid Litig.
Index No. 400000/2017
Page 21

defendants' motion which seeks dismissal of the plaintiffs' seventh cause of action is denied.

Conclusion

In accordance with the foregoing analysis, the distributor defendants' motions are denied.

The distributor defendants shall serve their answer(s) to the complaint within 10 days after the date on which this order is uploaded on the NYSCEF site (*see* CPLR 3211 [f]).

Dated: July 17, 2018

J.S.C.

HON. JERRY GARGUILO