<pre>
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
 2                        EASTERN DIVISION

 3   ------------------------------X
                                   :
 4   IN RE: NATIONAL PRESCRIPTION   :  MDL No. 2804
     OPIATE LITIGATION             :
 5                                  :  Case No. 1:17-md-2804
                                   :  Cleveland, Ohio
 6   APPLIES TO ALL CASES          :
                                   :  Thursday, August 2, 2018
 7                                  :  9:15 a.m.
     ------------------------------X

 8

 9

               TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
10
             HELD BEFORE THE HONORABLE DAN AARON POLSTER
11
                    UNITED STATES DISTRICT JUDGE
12

13

14

15   Court Reporter:      Donnalee Cotone, RMR, CRR, CRC
                          Realtime Systems Administrator
16                        United States District Court
                          801 West Superior Avenue
17                        Court Reporters 7-189
                          Cleveland, Ohio 44113
18                        216-357-7078
                          donnalee_cotone@ohnd.uscourts.gov
19

20

21

22

23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by computer-aided transcription.
</pre>

1    APPEARANCES (Continued):

2

3    For the Plaintiffs:        **Peter H. Weinberger, Esq.**
                                Spangenberg, Shibley & Liber
4                               1001 Lakeside Avenue, Suite 1700
                                1900 East Ninth Street
5                               Cleveland, Ohio 44114
                                216-696-3232
6                               pweinberger@spanglaw.com

7    For the Plaintiffs:        **Michael J. Fuller, Jr., Esq.**
                                McHugh Fuller Law Group
8                               97 Elias Whiddon Road
                                Hattiesburg, Mississippi 39402
9                               601-261-2220
                                mike@mchughfuller.com
10

     For the Plaintiffs:        **Paul T. Farrell, Jr., Esq.**
11                              Greene Ketchum Farrell, Bailey & Tweel
                                419 Eleventh Street
12                              Huntington, West Virginia 25724
                                304-525-9115
13                              paul@greeneketchum.com

14   For the Plaintiffs:        **Paul J. Hanly, Jr., Esq.**
                                Simmons Hanly Conroy LLC
15                              112 Madison Avenue
                                New York, New York 10016
16                              212-784-6400
                                phanly@simmonsfirm.com
17

     For the Plaintiffs:        **Linda J. Singer, Esq.**
18                              Motley Rice LLC
                                401 Ninth Street NW, Suite 1001
19                              Washington, DC 20004
                                202-386-9626
20                              lsinger@motleyrice.com

21

22

23

24

25

1    APPEARANCES (Continued):

2

3    For the Plaintiffs:        **Hunter J. Shkolnik, Esq.**
                                Napoli Shkolnik
4                               400 Broadhollow Road, Suite 305
                                Melville,New York 11747
5                               212-397-1000
                                hunter@napolilaw.com
6
     For the Plaintiffs:        **Anne McGinness Kearse, Esq.**
7                               Motley Rice LLC
                                28 Bridgeside Boulevard
8                               Mount Pleasant, South Carolina 29465
                                843-216-9140
9                               akearse@motleyrice.com

10   For Defendants             **Mark S. Cheffo, Esq.**
     Purdue Pharma L.P.,        Quinn Emanuel Urquhart & Sullivan, LLP
11   Purdue Pharma Inc.,        51 Madison Avenue, 22nd Floor
     and The Purdue             New York, New York 10010 212-849-7000
12   Frederick Company          212-698-3500
     Inc.:                      markcheffo@quinnemanuel.com
13
     For Defendants             **Enu Mainigi, Esq.**
14   Cardinal Health,           Williams & Connolly LLP
     Inc., Cardinal             725 Twelfth Street, NW
15   Health 110, LLC,           Washington, DC 20005
     Cardinal Health 105,       202-434-5000
16   Inc., Cardinal             emainigi@wc.com
     Health 414, LLC,
17   Cardinal Health 112,
     LLC, Harvard Drug
18   Group, LLC, Cardinal
     Health 108, LLC:
19
     For Defendants Endo        **Carole S. Rendon, Esq.**
20   Health Solutions           Baker & Hostetler LLP
     Inc. and Endo              Key Tower
21   Pharmaceuticals,           127 Public Square, Suite 2000
     Inc:                       Cleveland, Ohio 44114-3485
22                              216-861-7420
                                crendon@bakerlaw.com
23

24

25

```
 1    APPEARANCES (Continued):

 2

 3    For Defendants          Steven A. Reed, Esq.
      Actavis LLC, Actavis    Morgan, Lewis & Bockius LLP
 4    Pharma, Inc.,           1701 Market Street
      Cephalon, Inc., Teva    Philadelphia, Pennsylvania 19103-2921
 5    Pharmaceutical          215-963-5000
      Industries Ltd.,        steven.reed@morganlewis.com
 6    Teva Pharmaceuticals
      USA, Inc. and Watson
 7    Laboratories, Inc.:

 8    For Defendant           Mark H. Lynch, Esq.
      McKesson                Covington & Burling LLP
 9    Corporation:            One CityCenter
                              850 Tenth Street, NW
10                            Washington, DC 20001
                              202-662-5544
11                            mlynch@cov.com

12    For Defendant           Michael N. Ungar, Esq.
      McKesson                Ulmer & Berne, LLP
13    Corporation:            1660 West Second Street
                              Suite 1100
14                            Cleveland, Ohio 44113
                              216-583-7000
15                            mungar@ulmer.com

16    For Defendants CVS      Eric R. Delinsky, Esq.
      Indiana, LLC,           Zuckerman Spaeder LLP
17    Omnicare                1800 M Street NW, Suite 1000
      Distribution Center     Washington, DC  20036-5807
18    LLC, CVS Health         202.778.1800
      Corporation, CVS RX     edelinsky@zuckerman.com
19    Services, Inc., CVS
      Orlando, Florida
20    Distribution, LLC
      and CVS Tennessee
21    Distribution, LLC:

22

23

24

25
```

1    APPEARANCES (Continued):

2

3    For Defendants           **Donna M. Welch, Esq.**
     Actavis LLC, Actavis     Kirkland & Ellis LLP
4    plc, Actavis, Inc.,      300 North LaSalle Street
     Allergan Finance         Chicago, Illinois 60654
5    LLC, Allergan PLC;       312-862-2000
     For Third Party          dwelch@kirkland.com
6    Plaintiff Allergan
     Finance LLC:

7
     For Defendants           **Shannon E. McClure, Esq.**
8    AmerisourceBergen        Reed Smith, LLP
     Corporation,             Three Logan Square, Suite 3100
9    AmerisourceBergen        1717 Arch Street
     Drug Corporation and     Philadelphia, Pennsylvania 19103
10   Bellco Drug Corp.:       215-851-8226
                              smcclure@reedsmith.com
11
     For Defendants           **Kaspar J. Stoffelmayr, Esq.**
12   Walgreen Eastern         Bartlit, Beck, Herman, Palenchar
     Co., Inc., Walgreens     & Scott LLP
13   Boots Alliance Inc.      54 West Hubbard Street, Suite 300
     And Walgreen Co.:        Chicago,Illinois 60654
14                            312-494-4434
                              kaspar.stoffelmayr@bartlit-beck.com
15

16

17   ALSO PRESENT (**Via Telephonically**)- Per Anne E. Rollins of
     ReedSmith LLP:
18
             **DEFENDANTS**                **COUNSEL**
19
     McKesson Corporation     **Geoffrey E. Hobart, Esq.**
20                            Covington & Burling - Washington

21   Keysource Medical,       **Clifford F. Kinney, Jr., Esq.**
     Inc.                     Spilman, Thomas & Battle - Charleston
22
     ABDC                     **Steven J. Boranian, Esq.**
23                            Reed Smith - San Francisco

24   CVS                      **Braeme W. Bush, Esq.**
                              Zuckerman Spaeder LL
25

```
1    APPEARANCES (Continued):

2

3    ALSO PRESENT (Via Telephonically)- Per Anne E. Rollins of
     ReedSmith LLP:
4
          DEFENDANTS                  COUNSEL
5
     HBC Service Company         Robert M. Barnes, Esq.
6                                Marcus & Shapira - Pennsylvania

7    Henry Schein Medical        John P. McDonald, Esq.
     Systems, Inc.               Locke Lord - Dallas
8
     JM Smith Corporation        Paul B. Ricard, Esq.
9    and Prescription            Pelini, Campbell & Williams - Ohio
     Supply Inc.
10
     Miami-Luken, Inc.           Laurie K. Miller, Esq.
11                               Jackson Kelly - Charleston

12   Actavis plc, Anda           James W. Matthews, Esq.
     Pharmaceuticals,            Foley & Lardner - Boston
13   Inc. and Anda, Inc.

14   H. D. Smith Wholesale       Dean T. Barnhard, Esq.
     Drug Co., H.D. Smith        Barnes & Thornburg - Indianapolis
15   Holding Company and
     H. D. Smith Holdings,
16   LLC

17   Rite Aid of                 Elisa P. McEnroe, Esq.
     Maryland, Inc. and          Morgan, Lewis & Bockius - Philadelphia
18   Rite Aid Corporation

19   Rite Aid of                 Kelly A. Moore, Esq.
     Maryland, Inc. and          Morgan, Lewis & Bockius - New York
20   Rite Aid Corporation

21   Masters                     John A. Smith, Esq.
     Pharmaceutical, Inc.        Flaherty, Sensabaugh & Bonasso -
22                               Charleston

23   Wal-Mart Stores             Tina M. Tabacchi, Esq.
     East, LP                    Jones Day - Chicago
24

25   Special Master:             David Rosenblum Cohen, Esq.
```

```
 1              MORNING SESSION, THURSDAY, AUGUST 2, 2018

 2                 (Proceedings commenced at 9:15 a.m. )

 3                              - - -

 4                 DEPUTY CLERK:  All rise.

 5                 THE COURT:  Good morning.  Everyone can be

 6      seated.

 7           Welcome.  We have a number of people present, and a

 8      number on the phone.  I just want to -- I'll speak loudly

 9      and make sure everyone -- you like to stand, but if you're

10      speaking, you need to sit down, stay seated and speak into

11      the microphone.

12           Well, I guess this is a combination.  We had a

13      regularly scheduled sort of biweekly, triweekly discovery

14      telephone conference at noon, and then the parties requested

15      a conference with me, so we've combined them.  So I

16      appreciate the status report.  It is thorough as always.

17           So why don't -- why don't the parties start with what

18      you wanted to raise.

19                    MR. WEINBERGER:  Your Honor --

20                    THE COURT:  I've given a fair amount of

21      thought to things.

22                    MR. WEINBERGER:  Your Honor,

23      Peter Weinberger --

24                    THE COURT:  Yes, Peter.

25                    MR. WEINBERGER:  -- on behalf of the
```

09:15:35
09:15:52
09:16:12
09:16:36
09:16:40

1      plaintiffs.  Good morning.

2                      THE COURT:  Good morning.

3                      MR. WEINBERGER:  I'm going to talk this

4      morning a little bit about the current trial date, and I

5      have some points that I want to make and some suggestions to

6      the Court.

7          But before I begin my remarks, I think it's clear that

8      all of the parties understand that the Court is very firm

9      with this trial date in March of 2019.  You've made that

10     clear to us repeatedly.

11         And I know that the Court feels that maintaining the

12     trial date will drive the parties towards resolution, and

13     that resolution is the Court's highest priority to provide a

14     solution to the opioid epidemic in this country.

15         I think I can speak for both sides in saying to you

16     that we have worked diligently on the settlement front, and

17     we are a long way from resolution.  Particularly we've had

18     discussions on behalf of the PEC with -- in collaboration

19     with most of the Attorney Generals across this country, and

20     we've had some significant discussions, particularly with

21     the manufacturing defendants, including discussions within

22     the last week or ten days.

23         The Court has recognized that litigation -- a

24     litigation track was a necessary component towards meeting

25     your settlement goals, and as part of that, the defendants

1    persuaded the Court to allow motions to dismiss to be filed,

2    and the issues have been joined, and --

3                    THE COURT:  Well, I don't think I could have

4    prevented motions -- anyone from filing a motion.

09:18:51  5                    MR. WEINBERGER:  Certainly.

6                    THE COURT:  So it's --

7                    MR. WEINBERGER:  At one point, you were

8    discouraging it, but then --

9                    THE COURT:  I can discourage it.  I can

09:18:58 10    encourage it, discourage it.  But I don't think I can

11    prevent anyone -- it's a free country.

12                    MR. WEINBERGER:  Right.

13                    THE COURT:  And free courts.

14                    MR. WEINBERGER:  Well, just as importantly, in

09:19:09 15    our mind, in achieving fruitful discussions, is the

16    plaintiffs', the PEC's need on behalf of over 900 cities and

17    counties and other nongovernmental entities to do the

18    necessary document discovery to -- and once obtaining the

19    documents -- to do targeted and efficient deposition work in

09:19:34 20    this case, to do it expediently and effectively.

21        But in order to do that in, you know, complex

22    litigation that's probably one of the largest this country

23    has ever seen, we need to do it effectively by seeing at

24    least some of the really important documents that we have

09:20:01 25    not yet received.

1          And the reason why that's important to us, as we take

2    on this immense fiduciary responsibility to the public

3    entities that we represent, is because we need the documents

4    and the testimonial evidence to provide the foundation for

09:20:21  5    our liability, causation, and damage experts to be able to

6    render expert opinions in this case.  And we are not there

7    yet, Your Honor.

8          The document flow -- and I'm not -- there's no blame

9    here being cast on anybody, but the document flow,

09:20:42  10    particularly from certain groups of the defendants, has been

11    slow.

12          We have outstanding disputes, which the Court knows

13    we've been dealing very effectively with, among ourselves as

14    well as with the help of Special Master Cohen, and you have

09:21:00  15    objections pending with -- before you with respect to

16    Discovery Orders 2 and 3.

17          So what I'm about to propose is based upon discussions

18    that we've had with the manufacturing defendants, and we've

19    also had some discussions with the distributors, but have

09:21:22  20    not reached any agreement as to a proposal.  But we've had

21    discussions, which have resulted in a compromise.  We wanted

22    an earlier date; they wanted later dates.  But we came up

23    with a compromise proposal -- which we would ask that you

24    consider -- of starting the trial date sometime between

09:21:50  25    July 29th and September 1st.

1        And as I said, there's not complete consensus, by any

2    means.  This is the result of discussions that we've had

3    principally with the manufacturers, and every point along

4    the way that we've had those discussions, we have -- we

09:22:14  5    understand that first and foremost, it is your intent to

6    hold the trial date.

7        And the purpose of this request is not to allow the

8    litigators, hundreds of them on both sides, to pile up more

9    time on this case.

09:22:36 10        Rather, we view -- well, I'll just speak on behalf of

11    the plaintiffs.  We view the ability to have the time to do

12    limited additional discovery, document discovery and

13    depositions, as an integral part of the Court's goal of

14    moving the parties towards resolution.

09:23:10 15        And so that's why we asked to be able to be here

16    before you, Your Honor.  We think that these discussions are

17    better had in person rather than over the phone.  And I

18    certainly -- we certainly are interested in the Court's

19    reaction to this.

09:23:35 20        You know, we think we can, in a few additional months

21    beyond this trial date, then work back with Special Master

22    Cohen and in conjunction with all the parties to work out a

23    schedule of deadlines that will move this case forward in an

24    appropriate manner.

09:23:56 25        Thank you, Your Honor.

```
 1              THE COURT:  All right.  Thank you, Pete.

 2          Anyone else from the plaintiffs' side want to add

 3      anything?  And then I'll turn to the defendants.

 4          I figured you were the designated spokesperson, but I

 5      didn't want to preclude anyone else.

 6          Okay.  Mark?

 7              MR. CHEFFO:  Yes, Your Honor.  Thank you.  And

 8      thanks for kind of entertaining us here today.  We do

 9      appreciate it.

10          I don't have much to add, because I think as Pete,

11      Mr. Weinberger, indicated, this is essentially a compromise

12      request from -- on behalf of a core group of defendants.

13      I'm choosing my words, because, as you say, you know,

14      there's a lot of defendants.  Not everyone agrees exactly.

15      Some people think it should be shorter, sooner.  But I think

16      it's fair to say that you have a core group of folks who

17      are -- who think that this is very important to move the

18      trial date as suggested.

19          I think -- you know, we both agreed that we would kind

20      of talk in good faith.  I know you've encouraged us to do

21      that.  As you see, all of us have gotten here today to not

22      kind of quibble about discovery issues, right, and I take

23      Pete's point.  They have some concerns, we have some

24      concerns.  We think that moving it to as suggested does a

25      few things:
```

1          It absolutely does not interfere with any ongoing

2      resolution discussions.  In fact, to some extent, I think

3      the crush of these deadlines on both sides has made it very

4      difficult and challenging, and in some regards, perhaps

09:25:30  5      created some acrimony that's kind of maybe gotten in the way

6      of some of our efforts.

7          The second is, you know, I think we all agree that

8      while the Court obviously wants to press ahead, that the

9      case needs to be prepared in the most kind of effective and

09:25:47 10      efficient way on both sides, and having this modest

11      extension of time, I think, will give the parties -- you

12      know, assuming that we all continue to proceed in good faith

13      and get everything done that we need to -- the ability to

14      present the Court with, you know, a trial-ready case that, I

09:26:03 15      think, will be benefited by some of the time.

16          You know, and as I said, I think that these are dates

17      that are important to allow us to kind of move forward, and

18      were the Court to entertain this and adopt it, we would work

19      expeditiously with the plaintiffs and the other defendants

09:26:21 20      and try to put in place some interim dates that -- I don't

21      think we need to take up the Court's time today -- but I

22      have a high level of confidence that we would do this in a

23      way that the Court would be pleased and would avoid some of

24      the interim disputes.  There still will be some, but I think

09:26:38 25      we can avoid many of them if we had a little more time,

1    Your Honor.

2              THE COURT:  Okay.  Thank you.

3         Anyone -- again, I figure, Mark, you're the designated

4    spokesperson, but particularly since you said there was some

09:26:54  5    disagreement -- anyone else from the defense side want to

6    add anything, or any comments?

7         All right.  Well, I've obviously been thinking about

8    the same subject.  I know everyone has been working

9    extremely hard.  It's clear that discovery cannot be

09:27:22  10   completed by July 31st or August 1st, the current deadline.

11        The plaintiffs wanted to take 800 depositions.  I

12   trimmed you down to 420.  I think I authorized, I don't

13   know, 140 for the defendants.  You've taken a handful, but

14   they obviously can't be completed in a month, and this is a

09:27:45  15   complex case.

16        I've got two concerns about your proposal:

17        First is, you know, that you're essentially suggesting

18   a trial in August, and that's the hardest time to pick

19   jurors because everyone is taking vacations, and I just

09:28:08  20   don't -- I don't think I've ever started a complex trial in

21   August in my 20 years on the Bench for that reason.  So I

22   don't think it's a great idea to start -- to do a trial in

23   August.

24        Second, I think it is, not only desirous but

09:28:31  25   appropriate, and I would almost say imperative, that if

1   there are any trials anywhere in the country, the first

2   trial be in the MDL.  And, again, that's not to slight any

3   of my state court colleagues, but I just think that's the

4   way it ought to be.  The MDL is the center of this.

09:29:00  5   Everyone is looking to -- all of us -- to take the lead.

6       I've asked -- I've encouraged my state court

7   colleagues to cooperate and coordinate so no one has to

8   duplicate work, them or the lawyers, and I think they're

9   expecting I'd have the first trial.  If I were a state court

09:29:21  10   judge, I would certainly expect that the MDL judge would

11   have the first trial, if there are any trials.

12       There is one trial now set for April the 30th.  It's a

13   county case in West Virginia, and I appreciate every -- the

14   status reports have been very good, because I've highlighted

09:29:39  15   the trials that have been set.  It's West Virginia versus

16   McKesson.  McKesson is the only defendant in that case.

17   That's set for April 30th.

18       And then the State of California, on behalf of Santa

19   Clara County and Orange County, has a big case, multiple

09:29:58  20   defendants, set for June 18th.  And, you know, I can't ask a

21   state court judge to postpone his trial or her trial, so I'm

22   reluctant to essentially what -- to start a trial that --

23   you know, on Labor Day.

24       And then September 23rd, The State of Washington has a

09:30:26  25   big case set.

1          So, I mean, did you -- did you talk about that?

2          Was that an issue in your discussions?

3              MR. CHEFFO:  Your Honor, so I don't -- sorry.

4          I don't know that we've specifically talked about that

09:30:42  5   with the plaintiffs, but, as you might expect, we -- you

6          know, we understood that that might be a consideration for

7          the Court, or likely would be.  So here's what -- I guess I

8          can't speak to the McKesson only case.

9              THE COURT:  Right.

09:30:54 10             MR. CHEFFO:  I think that, you know, the way

11         the Court -- and I don't mean to be presumptuous -- would

12         likely -- that you essentially would want to have the first

13         case that has, you know, crosscutting issues, right?  So to

14         the extent there's a one state court case with one

09:31:08 15   defendant, that would be different.

16             THE COURT:  That one is a little different,

17         Mark.

18             MR. CHEFFO:  So the June case, here's what I

19         would say about that, and just for the -- before you

09:31:15 20   ultimately make a determination on this, because I know the

21         Court is open minded about that, certainly, you know, I

22         cannot represent that that date will move or, you know, is

23         going to stay.  I think there's a few factors that I would

24         just suggest to the Court.

09:31:31 25        One is we have a new judge.  We just had a call with

1      him yesterday.  He has indicated, and I think the parties

2      have indicated a willingness and a desire, and, in fact, how

3      important it is to cooperate and coordinate with this Court.

4      Obviously, he has his own issues.  There are only

09:31:46  5      distributors -- I'm sorry -- only manufacturers in that

6      case, no distributors.  It's a Bench trial.

7           I think most importantly is, you know, we have a

8      discovery -- I think the next conference in that case is

9      going to be to set some discovery in September.  I believe

09:31:58 10      that the Court has indicated -- I wasn't on the call

11      yesterday, but there was a call yesterday.  One of the

12      issues was that the Court recognize that there was the 400

13      depositions and that there would be some synergies, as you

14      suggested, and benefits, and his desire not to reinvent, as

09:32:13 15      all of the parties and I think any rational court would want

16      to do.

17           So my suggestion, Your Honor, would be, if that is a

18      significant impediment for the Court, while you, obviously,

19      cannot direct Judge Wilson to change or move or keep his

09:32:27 20      date, is that the Court would, perhaps, reach out to

21      Judge Wilson -- because, as I said, he was just appointed

22      last month.  There was another judge who was in charge.  It

23      was reassigned to him, and, you know, I think everyone has

24      recognized that -- I think Mr. Robinson, who I've worked

09:32:41 25      with with other cases, is a, you know, a very fine lawyer,

1    he's indicated that, in fact, that discovery might go into

2    the spring or the fall.

3         So to the extent that the Court's decision is at least

4    influenced, if not more than that, by that June date, I

09:32:57  5    would respectfully request that the Court have a

6    conversation with Judge Wilson and determine if he would be

7    willing to accommodate this Court's schedule.

8         I've agreed with the plaintiffs to ask and support a

9    request for July 29th to September 1st.  So September 1st is

09:33:16  10    within the date that would kind of get us past the August

11    issue that Your Honor has suggested.  So I think it's all

12    workable, and it's important.  And even if there's another

13    case in Washington -- again, I can't speak to every one of

14    these cases -- but I think everybody in the country

09:33:33  15    recognizes that Your Honor is going to be doing the lion's

16    share of the work and everyone will benefit it.

17         So to the extent that you were to have a date on

18    September 1st, or thereabouts, I think that it would still

19    be consistent with what Your Honor is trying to achieve and

09:33:50  20    would also give the parties what we need.

21              THE COURT:  So the --

22              MS. SINGER:  Your Honor.  Your Honor.

23              THE COURT:  -- Judge Wilson's case is just

24    against the manufacturers and it's a Bench trial.  So, what,

09:34:04  25    it's like a public nuisance theory?  There are no jury

1    claims?

2             MS. SINGER:  Your Honor, Linda Singer.

3             THE COURT:  Yes, Linda.

4             MS. SINGER:  And I have been involved in the

09:34:13 5    Santa Clara case.  I would simply point out, and as

6    Mr. Weinberger referenced, the proposal to this Court

7    reflected a compromise among the parties.

8        But I would simply note that the Santa Clara case was

9    filed in May 2014, and so that is a case that has had a very

09:34:30 10    long genesis.  It is, as the Court points out, a Bench

11    trial.  It is a public nuisance claim, as well as consumer

12    protection and false advertising claims under California

13    law.

14             THE COURT:  Well, Linda, it's four years ago.

09:34:47 15    There hasn't been much action on the case, I take it?

16             MS. SINGER:  There has been much action,

17    little movement, Your Honor.

18             THE COURT:  I should have -- that's -- okay.

19    There hasn't been much discovery; is that --

09:34:59 20             MS. SINGER:  That is correct.  There has been

21    no discovery.  There have been multiple demurs.  In the

22    California court, the case has moved through a number of

23    judges, quite frankly, would stay for a period of time --

24             THE COURT:  You mean my colleagues there

09:35:13 25    weren't eager to hang on to the case?

1       No comments necessary.

2                   MS. SINGER:  Thank you.  I appreciate that.

3                   MR. REED:  Your Honor, Steve Reed, if I may.

4                   THE COURT:  Yes, Steve.

09:35:25  5         MR. REED:  So Teva is in that case, and I was

6   on that call yesterday, and the purpose of that call was to

7   address an *ex parte* motion that the plaintiffs had filed

8   because they were not ready yet to participate in a

9   deposition that was scheduled to be taken in this case and

09:35:40  10  cross-noticed in that case.

11      I want to be fair when I say "they were not ready."  I

12  don't want to get into the merits of that argument.  But the

13  point was, that they were looking for more time to be

14  prepared to take depositions, and the statements that

09:35:52  15  Mr. Robinson made suggested that their discovery was going

16  to take quite some time.

17      I respect Miss Singer, and I often agree with her, but

18  she's incorrect when she says there's been no discovery.

19  We've been producing documents there.  The reason why that

09:36:09  20  case has a four-year shelf life is in part because the Court

21  had stayed the action and only relatively recently revived

22  it.

23      But the judge, as Mr. Cheffo said, the judge was just

24  reassigned last month.  We had our very first conversation

09:36:28  25  with him about the case yesterday.  We're going to be

1    talking in more detail with him on September 6th.  He

2    obviously is the master of his calendar and will decide when

3    the trial is going to go forward.

4         But there was every indication on that call that he

09:36:41  5    would be looking to coordinate with Your Honor, and my view

6    is that he would be receptive to a call with you or

7    Special Master Yanni if the trial date is being driven, in

8    part, by his.

9              THE COURT:  All right.  Well, again, it's --

09:36:57 10    his case is not as extensive in terms of it only --

11    obviously, it can't encompass a lot of the legal theories.

12    So I -- you know, I don't have any power or desire to direct

13    any state court judge what to do.

14         I may reach out to Judge Wilson if I decide to

09:37:22 15    postpone this trial and tell him what I've done, and, you

16    know, tell him, Look, if you want me to be the first, you

17    can move your trial back.  If you want to be the first in

18    the country, well, that's -- he's got a right to do it.

19         Well, I had contemplated moving the trial back, but

09:37:45 20    not that far.  But if that's the -- you know, this is

21    what --

22         I also want to say this:  It was not my idea or desire

23    to have this litigation track, because I knew how expensive

24    it would be, but more important, you know, I don't think

09:38:11 25    it's going to accomplish much.

 1          I mean, you know, Pete, and Paul, and Paul, I assume

 2    you're going to try very hard win this trial, right, and --

 3    whenever it is, March, August, September, whenever it is,

 4    right?

09:38:31  5                    MR. WEINBERGER:  Yes, Your Honor.

 6                    MR. HANLY:  Yes, Your Honor.

 7                    THE COURT:  Okay.  Obviously.  What do you

 8    think will happen if you win?

 9                    MR. WEINBERGER:  Well, one of two things:

09:38:42 10    It --

 11        One of two things:  It will drive the parties toward

 12    the resolution table, or there will be an appeal.

 13                    THE COURT:  Well, it will be appealed no

 14    matter -- they'll -- it will be appealed.

09:38:57 15        But this is my prediction:  If you were to win --

 16    remember, your clients are not -- this is not the typical

 17    MDL where the plaintiffs are a disparate group of

 18    individuals around the country who -- you know, they're just

 19    individuals, all right, and candidly, in those cases, the

09:39:19 20    lawyers drive the train.  I know that.  I've been around.

 21        Your clients are not a disparate group of individuals.

 22    They are elected, political officials.  They are mayors of

 23    cities, they are county executives and/or county

 24    commissioners.

09:39:39 25        On the stateside, they're State Attorneys General, all

1    right?  They have constituencies.  And my prediction is, if

2    you were to win, every other mayor, governor, attorney

3    general, county executive, is going to say, Not only is my

4    case worth as much as Cleveland or Akron or Cuyahoga County

09:40:05  5    or Summit County, but it's worth more because of this, this,

6    and this, and there wouldn't be enough money in the world to

7    settle it, and there's no way that the cases could be

8    resolved because those officials couldn't resolve it for a

9    realistic and fair amount politically.

09:40:24  10        So if you win, the result is that we're going to be

11    trying -- I won't, because I can only try the handful in the

12    Northern District of Ohio.  I will have to send these

13    thousand cases around the country to all of my colleagues,

14    and they'll be trying these things long after all of us have

09:40:46  15    retired.  So while you want to win, you don't want to win.

16        And that's equal the problem with the defendants,

17    because, you know, if the plaintiffs win, you got to go to

18    the mat against every city, county, state, and ultimately,

19    the federal government, and your clients are regulated -- in

09:41:12  20    a regulated industry.  And guess what?  You go to war with

21    every government in this country, you're not going -- your

22    clients won't be around.  Maybe Walmart will, but no one

23    else will be.

24        So everyone is going to go into bankruptcy, and then

09:41:28  25    no one gets money other than bankruptcy lawyers.  So -- and

1      if the defendants win, plaintiffs will say, you know, All

2      right.  We'll just keep trying one until we win.  And, of

3      course, you will win some.

4          So that's why I didn't want this litigating track.

09:41:47  5    That's why in my other MDL I kept having bellwethers and

6      they all settled right -- some of them on the midnight

7      before trial.

8          It was your group, Pete.

9          And I finally figured out after three years what was

09:42:03 10    happening.  So I didn't want this litigating track.  The

11     defendants insisted they wanted to file all these motions.

12     I said, All right.  We're not going to just do it in the

13     abstract.  There will be concrete cases and we'll proceed to

14     trial.

09:42:14 15        So what I'm strongly requesting is that all these

16     great lawyers which we have -- who we have in this room and

17     on the phone, start exercising some client control.

18         On the plaintiffs' side, your clients who represent

19     most of the citizens in this country want and need two

09:42:39 20    things:  They want us collectively to implement the

21     procedural reforms, which everyone has been working very

22     hard over the last number of months to put together.

23         I know with the PEC and the AGs and the manufacturers,

24     those are pretty much in place, all right?  And they're not

09:43:04 25    quite as far along with the distributors, but it's getting

1    there.  And implementing those procedural reforms will do a

2    tremendous amount to reduce the number of people who are

3    getting addicted, which is the best thing.

4        All right.  So cities, counties, states, the public,

09:43:25  5    that's what they need, and so do those people.  It will save

6    them from getting addicted.

7        And then, of course, we need to come up with some

8    amount of money -- it's not going to solve it or

9    provide -- we're not talking about all the money necessary

09:43:39  10    for drug treatment, but some meaningful amount to help treat

11    the people who are addicted so that they don't die.  Because

12    if we wait five or ten years until we try a bunch of these

13    cases and it goes up to the Sixth Circuit and then the

14    U.S. Supreme Court, guess how many people are going to die.

09:44:00  15    You just keep multiplying the 40-, 50,000 a year who are

16    dying now.  Because everyone knows that if you're a drug

17    addict and you're on street drugs, you're playing Russian

18    roulette every day.  So that's what's needed.

19        So, you know, all this discovery and depositions and

09:44:20  20    whatever, and a trial, will accomplish zero.  But I know it,

21    and you know it, and I think you've got to, again, exercise

22    some client control.

23        But I have no problem moving the case back.  Again, I

24    just don't think it makes sense to try and -- it's going to

09:44:39  25    be hard enough picking a jury in this case, but to try and

1    pick it in August is impossible.

2         So I -- what I'm considering -- I looked at the

3    calendar.

4         September 1st is a Sunday.  We're obviously not

09:45:16  5    starting on a Sunday.

6         September 2nd is Labor Day.

7         Potentially, we could do it -- start September 3rd.

8                   MR. SHKOLNIK:  Your Honor.

9                   THE COURT:  September 3rd.

09:45:26  10                   MR. SHKOLNIK:  Your Honor, if I could be

11    heard.

12         Your Honor, if I could be heard.

13                   THE COURT:  Yes.

14                   MR. SHKOLNIK:  Hunter Shkolnik.  Do you want

09:45:31  15    me to go to the podium?

16                   THE COURT:  Yes, Hunter.

17                   MR. SHKOLNIK:  I didn't want to interrupt the

18    conversations, but given the time that we're talking about

19    in September, especially we know the holidays, September 3rd

09:45:48  20    would be the earliest, we have -- for many attorneys and

21    many clients as well -- and I've been focusing primarily on

22    representing Cuyahoga County -- but there are Jewish

23    holidays in that time frame.

24                   THE COURT:  Well, I looked.

09:46:04  25         Rosh Hashanah doesn't start until September -- I've

1    got it September 29th.  I looked it up.

2              MR. SHKOLNIK:  Okay.  I just wanted to make --

3    I didn't have a chance to look at a calendar --

4              THE COURT:  Well, I did --

09:46:08  5              MR. SHKOLNIK:  -- if that is a scheduling

6    issue.

7              THE COURT:  -- because, obviously, I don't

8    want to -- I looked, and according to my calendar, it starts

9    Sunday, September 29th.

09:46:08 10              MR. SHKOLNIK:  I must not have --

11              THE COURT:  So that gives -- so that gives --

12    you know, again, I said a three-week trial, and I meant

13    that.

14         I mean, by then, you know, obviously, we're not going

09:46:29 15    to have 20 or 30 defendants.  Many will settle.  Some will

16    be dismissed.  Some will file for bankruptcy.  The

17    plaintiffs are going to streamline this case.  They're

18    obviously not going to try all the theories in a 200-page

19    complaint.  But I meant it.  It's going to be a three-week

09:46:51 20    trial.  So that means we'll be completed before the Jewish

21    holiday.

22         So I could -- you know, I suppose I could start the

23    trial on, you know, August 26th or 27th, too.  I mean, so

24    I'm -- you know, either the last week of August or the day

09:47:13 25    after Labor Day.  I don't have a -- I don't have a problem

1    with that.  And we can, you know, adjust the schedule

2    accordingly.

3        I will say this: That, you know, in terms of Daubert

4    motions, everyone knows it's virtually impossible to get an

09:47:37  5    expert disqualified.  I don't think either side is going to

6    propose experts or theories that are junk science.  You are

7    all experienced lawyers.  You're not going to push the

8    envelope out.

9        I don't think I've ever actually completely

09:47:53 10   disqualified an expert.  What I have done is when an expert

11   sort of strayed from his or her field of expertise, I've

12   cabined the opinion to just that, the expertise that that

13   person is qualified to give, that part of the opinion.

14   But -- so people can save a lot of trees.

09:48:13 15      Also, in terms of summary judgment motions, I'm

16   dealing with these legal issues now, and the theories that

17   go forward are going to go forward, and I'll let the jury

18   decide what the facts are.

19       So, you know, I'm going to focus -- if we have the

09:48:30 20  trial -- focus on trying the case and have intelligible jury

21   instructions.  So I'm directing both sides to be very

22   sparing with their dispositive motions.

23       So I -- again, I had thought, in my mind, that there

24   was clearly a necessity to postpone, move the trial back at

09:48:53 25  least a couple of months, but this is substantially longer.

1    But I want to be fair to both sides.  If we have a trial, I

2    certainly want both sides to be prepared, and no one to say,

3    Well, we didn't have enough time to prepare our case or our

4    defense.  That doesn't help, and then it's a real waste --

09:49:12  5    or we didn't have time to do adequate discovery on either

6    side.

7        So, I mean, why don't you all confer.  I'm not -- you

8    know, the last week of August or the day after Labor Day.

9    Obviously, if we start the last week of August, we're off on

09:49:28 10    Labor Day, so I'm not sure that's a great idea.  Some people

11    might be on vacation.  So it may be best to do it September

12    the 3rd.  That gives -- that gives plenty of time, you know,

13    even for jury deliberations before the Jewish holidays.

14        So why don't you all confer and, you know, come up

09:50:01 15    with a new schedule.  I'll obviously look at it.  But if

16    that's the consensus, then, I don't have a problem with it.

17        But, again, I -- the -- by doing this, I don't want to

18    be essentially encouraging the parties to spend all their

19    efforts on this litigating track, because that is going

09:50:26 20    to -- you know, it is -- not only isn't going to solve

21    anything, I think it's going to make resolution virtually

22    impossible.

23        And, again, you know, an MDL judge, I only have

24    jurisdiction over a handful of cases in the Northern

09:50:42 25    District of Ohio.  I mean, if I try a case and that doesn't

1    produce a settlement, I'm just going to have to send the

2    other thousand or so around the country.  Guess what?  You

3    know, you think that's going to be helpful for resolution,

4    to have, you know, 400 different judges with this, plus 200

09:51:01  5    state court judges?  That would be the end of the MDL, and

6    at that point, you know, any opportunity will be lost.

7         So that would be an absolute insanity.  But, again,

8    that's the law.  I only have jurisdiction over the hand- --

9    to try the handful of ones here, and I've got the four main

09:51:19 10    ones in terms of the public entities.

11         So I want everyone to be mindful of that, and,

12    obviously, I'm going to be actively working on the

13    settlement track with my three expert Special Masters, as I

14    have been doing.

09:51:34 15         All right.  And then what -- I've carefully read, you

16    know, Special Master Cohen's discovery orders in Opinions 2

17    and 3.  I've read everyone's objections.  I think he did a

18    very good job balancing things.  The main objection that

19    everyone had on the defense side was there is no way that we

09:52:04 20    could get that discovery completed, let alone get it

21    completed and prepare our witnesses and meet the schedule

22    that we've got.

23         Well, the schedule is now moved back several months,

24    so that allows a whole -- a number of months more to both

09:52:24 25    produce the documents, prepare your witnesses, and have them

1    deposed.

2         So I think his -- the balance he struck was a pretty

3    good one, and so I'm going to overrule all of the

4    objections, and many of them are moot.

09:52:44  5         And there were a few -- in a few cases, the

6    plaintiffs, in their filings, conceded they would make some

7    additional limitations, and they've done that.  So those

8    are -- those are in place.

9         But, again, the main argument behind the objections

09:53:04 10  was the time, and we've taken care of that.  So many of them

11   are moot, and the rest I'm going to overrule, and we'll

12   leave those -- we'll leave that in place.

13        Obviously, the plaintiffs are mindful -- they're

14   spending their time and money, and they're not going to take

09:53:23 15  420 depositions if they don't need them, and --

16        But this is a very complex case.  The problem began

17   more than 20 years ago, and while I'm not sure, you know,

18   you're going to find dramatically useful evidence 20 years

19   ago, it's possible you might in some cases.  So I'm not

09:53:50 20  going to, you know, just say you can't try and see if maybe

21   there's something that would resinate with a juror from 20

22   years ago.

23        So I think that covers that subject.

24        So I think we're pretty well concluded, other than

09:54:13 25  usually at the end I set a time for our next -- I guess

1    we've been calling them discovery telephone conferences,

2    and -- but we've generally been doing them two, three weeks

3    apart, and I think that's a good idea.  Sometimes there's

4    not a lot to say, but, I mean, I did it with my last MDL.  I

09:54:36  5    thought it was useful to have them.

6        So I'm thinking three weeks rather than two, unless,

7    you know, people think something critical is likely to occur

8    in two weeks.

9        What do you -- what do you think?

09:55:37 10                MR. HANLY:  Judge, for the plaintiffs.  I

11    think three weeks would be preferable to two weeks.  The

12    two-week time frame seems to come upon us --

13                THE COURT:  Well, that's the thing, and while

14    it may create more work -- the idea wasn't to create work

09:55:51 15    for people.  It was to have a regular -- just to touch in,

16    and so if there are issues, that they get dealt with in a

17    timely way, but -- so let's look at --

18                SPECIAL MASTER COHEN:  Judge?

19                THE COURT:  Yes.

09:56:03 20                SPECIAL MASTER COHEN:  I know that we have

21    meetings scheduled with you on August 23rd and 24th.

22                THE COURT:  Right.

23                SPECIAL MASTER COHEN:  I think maybe we can

24    combine them.

09:56:12 25                THE COURT:  Well, that's what I was thinking.

1    That's what I was thinking, which is about three weeks.  And

2    so a number of people are going to be here, and so that

3    makes things efficient.  So -- and these are generally

4    pretty quick.  So maybe at noon on Thursday, the 23rd, which

09:56:33  5    is three weeks from today.

6         How does that sound?

7              MR. HANLY:  It's fine with us, Judge.

8              MR. CHEFFO:  Yes, Your Honor.  That sounds

9    good.  Thank you.

09:56:43  10              THE COURT:  And, again, a number of people are

11    going to be here that day, so that makes it efficient.

12         Okay.  We'll send call-in instructions.  The people

13    who are here, obviously, will do it in person.  The people

14    who aren't can call in on the phone.

09:57:03  15         Okay.  Anything else that anyone wanted to raise?

16         I know there's an agreement that we wouldn't raise

17    additional subjects, but there may be something on these

18    subjects that I haven't covered.

19         Again, I want to -- you know, I know everyone has been

09:57:19  20    working extraordinarily hard on both the settlement track

21    and the litigating track.  A lot of the work -- the main

22    work is done by the people on the phone, but there's hard

23    work being done by people who aren't on the phone, the

24    lawyers, the clients.

09:57:37  25         And, obviously, Judge Ruiz is working extremely hard

1     and my Special Masters and my staff, too, to keep up.

2          Okay.

3                    ALL:  Thank you, Your Honor.

4                    THE COURT:  Well, maybe I think -- is a week

09:58:05   5     sufficient to -- for you to come up with a revised schedule

6     and submit it to me?  And then I'll just take a look at it

7     and make sure that any hearing dates work out.

8                    MR. HANLY:  Yes, that's fine, Your Honor.

9                    MR. CHEFFO:  I think that should be fine,

09:58:20  10     Your Honor.

11          It's a week from today, Your Honor; is that right?

12                    THE COURT:  Right.  Why don't we just say by

13     noon a week from today, so that's the 9th.

14          Okay.  Thank you.

09:58:35  15                    ALL:  Thank you, Your Honor.

16                         - - -

17          (Proceedings adjourned at 10:00 a.m.)

18

19               C E R T I F I C A T E

20

21          I certify that the foregoing is a correct transcript

22     from the record of proceedings in the above-entitled matter.

23

24     /s/ Donnalee Cotone          7th of August, 2018
       DONNALEE COTONE, RMR, CRR, CRC                 DATE
25     Realtime Systems Administrator