**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*State of Alabama v. Purdue Pharma, L.P., et al.,*<br>Case No. 18-OP-45236 | MDL 2804<br><br>Hon. Dan Aaron Polster |

**BRIEF FOR THE STATES OF ARIZONA, ARKANSAS, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, IDAHO, IOWA, MAINE, MARYLAND, MICHIGAN, MINNESOTA, MISSISSIPPI, MONTANA, NEBRASKA, NEVADA, NEW JERSEY, NEW MEXICO, NORTH CAROLINA, NORTH DAKOTA, OHIO, OREGON, PENNSYLVANIA, RHODE ISLAND, SOUTH CAROLINA, TENNESSEE, TEXAS, VIRGINIA, WASHINGTON, WYOMING, AND THE DISTRICT OF COLUMBIA AS AMICUS CURIAE IN SUPPORT OF THE STATE OF ALABAMA'S OPPOSITION TO THE MANUFACTURER DEFENDANTS' JOINT MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTERESTS OF *AMICI* STATES AND INTRODUCTION........................................................1

ARGUMENT ........................................................................................................................3

I. THE MANUFACTURER DEFENDANTS' ARGUMENTS ON THE
DERIVATIVE- INJURY RULE AND CAUSATION FAIL TO CONSIDER
THAT ALABAMA IS ACTING IN ITS *PARENS PATRIAE* CAPACITY.......................3

    A.    *Parens Patriae* Authority.................................................................................3

    B.    The Manufacturer Defendants' arguments about the derivative-injury
rule and causation ignore Alabama's ability to proceed as *parens patriae*. ............5

II. THE MANUFACTURER DEFENDANTS' ARGUMENTS IN SUPPORT
OF DISMISSING ALABAMA'S DECEPTIVE TRADE PRACTICES ACT
CLAIM IMPROPERLY CONFLATE THE ALABAMA ATTORNEY
GENERAL WITH A PRIVATE PLAINTIFF........................................................7

    A.    The History of State UDAP Statutes ........................................................7

    B.    Common Characteristics of State UDAP Statutes .....................................9

    C.    The Manufacturer Defendants' arguments in support of dismissal of
Alabama's claim under its DTPA fundamentally misconstrue the
Attorney General's law enforcement role in protecting the citizens
of the State of Alabama from false, misleading, deceptive, or
unconscionable acts or practices. ..........................................................10

CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
 458 U.S. 592 (1982)................................................................................3, 4, 5, 6

*Fletcher v. Don Foss of Cleveland, Inc.,*
 90 Ohio App. 3d 82, 628 N.E.2d 60 (1993)....................................................10

*Gabelli v. SEC,*
 568 U.S. 442 (2013)........................................................................................11

*Georgia v. Tennessee Copper Co.,*
 206 U.S. 230 (1907)..........................................................................................7

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.,*
 23 F. Supp. 2d 771 (N.D. Ohio 1998)........................................................11, 12

*Louisiana v. Texas,*
 176 U.S. 1 (1900)..............................................................................................5

*Maryland v. Louisiana,*
 451 U.S. 725 (1981)..........................................................................................4

*Massachusetts v. EPA,*
 549 U.S. 497 (2007)..........................................................................................6

*Purdue Pharma, L.P. v. Kentucky,*
 704 F.3d 208 (2d Cir. 2013)..............................................................................5

*State v. Emeritus Corp.,*
 466 S.W.3d 233 (Tex. Ct. App. 2015) ...........................................................11

*Tull v. United States,*
 481 U.S. 412 (1987)........................................................................................11

*In re Zyprexa Prods. Liab. Litig.,*
 671 F. Supp. 2d 397 (E.D.N.Y. 2009) ............................................................11

## STATUTES

15 U.S.C. § 45(a) ......................................................................................................8

ALA. CODE § 8-19-2..............................................................................................8, 10

ALA. CODE § 8-19-5..............................................................................................8, 9

ALA. CODE §§ 8-19-1, *et seq.*..........................................................................................2

ALA. CODE § 8-19-11(b) ...............................................................................................10

ALA. CODE §§ 20-2-1, *et seq.*..........................................................................................1

ARIZ. REV. STAT. § 44-1522 .........................................................................................11

Wheeler-Lea Act of 1938, Pub. L. No. 75-447, sec. 3, 52 Stat. 111 ...............................8

## OTHER AUTHORITIES

ABA Section of Antitrust Law, Consumer Protection Handbook (2004) .........................8

Mark E. Budnitz, *The Federalization and Privatization of Public Consumer
    Protection Law in the United States:  Their Effect on Litigation and
    Enforcement*, 24 GA. ST. U. L. REV. 663 (Spring 2008)..............................................9

Prentiss Cox, Amy Widman and Mark Totten, *Strategies of Public UDAP
    Enforcement*, 55 HARV. J. ON LEGIS. 37 (Winter 2018)..............................................10

Glenn Kaplan and Chris Barry-Smith, *Patching the Holes in the Consumer
    Product Safety Net:  Using State Unfair Practices Laws to Make Handguns
    and Other Consumer Goods Safer*, 17 YALE. J. ON REG. 253 (Summer 2000) .......................10

National Consumer Law Center, UNFAIR AND DECEPTIVE ACTS AND PRACTICES
    (9th ed. 2016).........................................................................................................9, 11

Dee Pridgen, *The Dynamic Duo of Consumer Protection:  State and Private
    Enforcement of Unfair and Deceptive Trade Practices Law*, 81 ANTITRUST
    L.J. 911 (2017) ......................................................................................................8, 9

## INTERESTS OF *AMICI* STATES AND INTRODUCTION

State attorneys general have long been both protectors of the health and well-being of their citizens and also the primary enforcers of state consumer protection laws.  All 50 states, the District of Columbia, and six territories have an office of attorney general or its functional equivalent, and a crucial part of an attorney general's work as the state's chief law enforcer involves protecting the public interest.  While state attorneys general protect the public interest in a wide variety of ways, their ability to proceed on behalf of the state in its *parens patriae* capacity and their ability to enforce consumer protection laws under statutes prohibiting unfair and deceptive acts and practices are critically important.  The State of Alabama's claims feature both mechanisms.  First, the State brings a claim for public nuisance (Count I) in its *parens patriae* capacity that seeks to recover government costs flowing from the nuisance Defendants created.  Second, it brings a claim under Alabama's Deceptive Trade Practices Act (Count II) in its law enforcement capacity to recover civil penalties for each violation of the Act.[1]

In urging dismissal of the State of Alabama's claims (Defs.' Br., Dkt. No. 690-1), the Manufacturer Defendants fail to reckon with the unique role the state attorneys general have in seeking relief for the Manufacturer Defendants' role in the opioid crisis, and, in several of their key arguments, ask the Court to treat Alabama, acting through its Attorney General, as a private plaintiff.  For example, Manufacturer Defendants seek to dismiss Alabama's claims as barred under the derivative-injury rule (Defs.' Br. at 2-4), but that request fails not only for the reasons set forth in Alabama's Opposition, but also because it fails to acknowledge that state attorneys general acting in their *parens patriae* capacity do not function as "super plaintiffs" seeking to

---

[1] This brief does not address Alabama's claims brought under the Alabama Controlled Substance Act, ALA. CODE §§ 20-2-1, *et seq.* (Counts III and IV), or Alabama's common law claims (Counts V-VII).

- 1 -

recover the individual damages of all their citizens, but instead act to protect broad "quasi-sovereign" interests such as the health and well-being of citizens in their states.  In a similar vein, the Manufacturer Defendants also claim that Alabama has not sufficiently alleged causation, because the State has not identified the individual physicians who heard and acted upon Defendants' misrepresentations, and because it has alleged injuries purportedly too remote from the relevant harm.  Defs.' Br. at 4-8.  But apart from the fact that, as Alabama's brief demonstrates, Alabama adequately pled that its injuries were a foreseeable result of the Manufacturer Defendants' actions, those arguments also wrongly assume that Alabama is seeking to recover for particular opioid prescriptions filled by Alabamians rather than vindicate the rights of its residents "to be free from conduct that creates an unreasonable jeopardy to the public health, welfare, and safety . . ." by recouping "governmental costs" that have been and will be incurred in abating the nuisance.  *See* First Amended Complaint ("FAC"), ¶¶ 371, 375.

Relatedly, the Manufacturer Defendants seek to dismiss Count II of Alabama's First Amended Complaint (advanced under its Deceptive Trade Practices Act, ALA. CODE §§ 8-19-1, *et seq*.), on grounds including that, in order to plead fraud with particularity, Alabama must identify specific Alabama prescribers who received the Manufacturer Defendants' misrepresentations, were deceived by them, and therefore wrote prescriptions based on those misrepresentations.  *See* Defs' Br. at 14-15.  As they do with their causation arguments, Manufacturer Defendants improperly assume that Alabama is seeking to recover particular damages incurred by particular Alabama residents, where Alabama is instead acting to enforce the State's consumer protection laws by seeking civil penalties.

Because the *Amici* States have or are considering bringing similar claims against one or more of the Manufacturer Defendants, they have a significant interest in the outcome of the

Court's decision on the Manufacturer Defendants' motion to dismiss.  Moreover, a ruling in this action that fails to account for the unique authority of state attorneys general to pursue their claims would be inconsistent with policy and law.  While the *Amici* States are not parties to this proceeding and are not bound by the Court's decision in this matter, a state's ability to protect the health and well-being of her citizens must not be infringed no matter the venue. For these reasons, the *Amici* States respectfully submit this brief in support of the State of Alabama limited to these specific issues, and ask that the Court deny the Manufacturer Defendants' joint motion.

## ARGUMENT

### I. THE MANUFACTURER DEFENDANTS' ARGUMENTS ON THE DERIVATIVE- INJURY RULE AND CAUSATION FAIL TO CONSIDER THAT ALABAMA IS ACTING IN ITS *PARENS PATRIAE* CAPACITY

Alabama brought its action against the Manufacturer Defendants, by and through its Attorney General, Steve Marshall, "in its sovereign capacity in order to protect the interests of the State of Alabama and its citizens as *parens patriae*."  FAC ¶ 17.  In addition to the specific reasons articulated in Alabama's Opposition, the Manufacturer Defendants' arguments that Alabama's claims are barred by the "derivative-injury rule," or should be dismissed because of Alabama's alleged failure to plead causation, also miss the mark because they disregard the capacity in which Alabama brings certain of its claims.

### A. *Parens Patriae* Authority

Alabama has brought its public nuisance claim (Count I) in its *parens patriae* capacity. The "prerogative of *parens patriae*," literally meaning "parent of the country," is "inherent in the supreme power of every State" and allows each State to pursue litigation aimed at protecting "the well-being of its populace."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600, 602 (1982) (quoting *Mormon Church v. United States*, 136 U.S. 1, 57 (1890)).  While "[a] state is not permitted to enter a controversy as a nominal party in order to forward the claims

of individual citizens . . . it may act as the representative of its citizens in original actions where the injury alleged affects the general population of a state in a substantial way."  *Maryland v. Louisiana*, 451 U.S. 725, 737-39 (1981) (holding States could bring lawsuit against Louisiana for imposing tax on natural gas because, in addition to direct injury of consumers who paid the tax, each State possessed an interest "in protecting its citizens from substantial economic injury presented by imposition" of the [tax].").  Consequently, a State's *parens patriae* authority gives the State, through its attorney general, an independent interest of its own in redressing behavior that adversely affects a substantial number of the State's citizens.[2]

The United States Supreme Court has characterized the nature of the interests pursued by a State in its *parens patriae* capacity as "quasi-sovereign" interests.  In *Snapp*, Puerto Rico sued numerous individuals and companies engaged in the apple industry in Virginia, alleging the defendants had violated certain federal statutes by failing to provide employment for qualified Puerto Rico migrant farmworkers and subjecting those workers to conditions not imposed on workers from other States.  In holding Puerto Rico had *parens patriae* to protect its quasi-sovereign interests—there, the protection of its economy and the health and well-being of its citizens—the Court identified what are *not* quasi-sovereign interests, including State "attempt[s] to pursue the interests of a private party . . . for the sake of the real party in interest" where the State "is no more than a nominal party."  458 U.S. at 602.  According to the Court, therefore, a quasi-sovereign interest is *by definition* an interest *separate from* injuries suffered by individual citizens.  *Id.*

"[Quasi-sovereign interests] are not sovereign interests, proprietary interests, or private interests pursued by the State as a nominal party. They consist of a set of interests that the State

---

[2] Arizona has *parens patriae* authority only with respect to certain claims.

has in the well-being of its populace." *Id*.[3]  For that reason, the *Snapp* Court required that, to

maintain a *parens patriae* action, "the State must articulate an interest apart from the interests of

particular private parties, *i.e.*, the State must be more than a nominal party":

> The State must express a quasi-sovereign interest. Although the articulation of
> such interests is a matter for case-by-case development neither an exhaustive
> formal definition nor a definitive list of qualifying interests can be presented in
> the abstract-certain characteristics of such interests are so far evident. These
> characteristics fall into two general categories. First, *a State has a quasi-sovereign
> interest in the health and well-being—both physical and economic—of its
> residents in general.* Second, a State has a quasi-sovereign interest in not being
> discriminatorily denied its rightful status within the federal system.

458 U.S. at 607 (emphasis added).[4]

A State's *parens patriae* authority is therefore particularly appropriate for seeking relief

for substantial and serious harms—like the ones Manufacturer Defendants are alleged to have

inflicted here—to a State's citizenry.  *See Purdue Pharma, L.P. v. Kentucky*, 704 F.3d 208, 217

(2d Cir. 2013) (noting "the Attorney General is granted 'statutory authority to sue in *parens*

*patriae* and need not demonstrate standing through a representative injury'").

**B.      The Manufacturer Defendants' arguments about the derivative-injury rule
and causation ignore Alabama's ability to proceed as *parens patriae*.**

Alabama has unquestioned ability to proceed with its claims in a *parens patriae* capacity

to protect its quasi-sovereign interests in ensuring the physical and economic health and well-

---

[3] *See also Louisiana v. Texas*, 176 U.S. 1, 19 (1900) ("It is in this aspect that the bill before
us is framed. Its gravamen is not a special and peculiar injury such as would sustain an action by
a private person, but the state of Louisiana presents herself in the attitude of *parens patriae*,
trustee, guardian, or representative of all her citizens. . . . [T]he cause of action must be regarded,
not as involving any infringement of the powers of the state of Louisiana, or any special injury to
her property, but as asserting that the state is entitled to seek relief in this way because the
matters complained of affect her citizens at large.").

[4] Particularly relevant for the State of Alabama's case and others like it against these same
defendants also brought by state attorneys general, the Court explained that "[a]lthough there are
numerous examples of such *parens patriae* suits . . . *parens patriae* interests extend well beyond
the prevention of such traditional public nuisances." *Id.* at 604-05.

being of its citizens.  *Snapp*, 458 U.S. at 607.  For this reason, the derivative-injury rule is inapplicable here.  As set forth above, by definition Alabama's claims are *not*, as Manufacturer Defendants claim, seeking recovery for injuries to third parties.  *See id.* at 602 (distinguishing quasi-sovereign interests from actions in which state acts "for the sake of the real party in interest" where "the State is no more than a nominal party").  In addition to seeking direct costs the State was required to pay as a result of the over-supply of the Manufacturer Defendants' opioid medications (which likewise place Alabama's claims outside the derivative-injury rule), the State can also protect the well-being of its citizenry through its *parens patriae* capacity.  Doing so does not convert the State's claims into subrogation claims on behalf of particular citizens.

The fact that Alabama is proceeding is part in its *parens patriae* capacity also pulls the legs from underneath many of Defendants' causation arguments.  The Manufacturer Defendants contend that Alabama should have to identify the name of each Alabama prescriber who received Defendants' representations, the representations given to that prescriber, and how the prescriber was deceived by those statements, and then identify the prescription(s) that prescriber wrote as a result of those misrepresentations.  *See* Defs.' Br. at 5.  This argument, again, wrongly assumes without stating that Alabama's claims are brought to recover damages on behalf of individual Alabamians, when it is instead acting in *parens patriae*.  While a State proceeding in that capacity is not, of course, relieved of all pleading requirements, it is entitled to "special solicitude" in alleging that it was "adversely affected by the challenged behavior."  *See Snapp*, 458 U.S. at 607; *Massachusetts v. EPA*, 549 U.S. 497, 518, 520 (2007) (holding Massachusetts had standing to challenge EPA order denying petition for rulemaking to regulate greenhouse gas emissions for motor vehicles because "[i]t is of considerable relevance that the party seeking

review here is a sovereign State and not . . . a private individual" and "given . . . Massachusetts' stake in protecting its quasi-sovereign interests, the Commonwealth is entitled to special solicitude in our standing analysis.").

Similarly, the Manufacturer Defendants contend Alabama has not pled proximate causation because the State's injuries are too remote. *See* Defs.' Br. at 6-8. As explained in Alabama's Opposition, Alabama has pleaded and can prove both but-for and proximate causation. Alabama Opp. at 19-23. In addition to having many other defects identified in Alabama's Opposition, the Manufacturer Defendants' argument likewise assumes that the relevant injuries to the State are *only* the State's payment for excessive opioid prescriptions. But, as set forth above, the quasi-sovereign interests Alabama is pursuing in its *parens patriae* capacity are independent of those injuries. Like the ability to pursue another state for its adverse treatment of migrant workers (*Snapp*) and the ability to challenge the EPA's refusal to initiate rulemaking on regulations that would limit greenhouse gases (*Massachusetts*), the injuries to Alabama's quasi-sovereign interests are likewise sufficiently direct. *See also Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 238-39 (1907) (observing the sufficiency of claims that "sulphurous flames cause and threaten damage[s] on so considerable a scale to the forests and vegetable life, if not to health, within the plaintiff State [as to allege an injury to a quasi-sovereign interest]").

II.    **THE MANUFACTURER DEFENDANTS' ARGUMENTS IN SUPPORT OF DISMISSING ALABAMA'S DECEPTIVE TRADE PRACTICES ACT CLAIM IMPROPERLY CONFLATE THE ALABAMA ATTORNEY GENERAL WITH A PRIVATE PLAINTIFF**

A.    **The History of State UDAP Statutes**

Unfair Deceptive Acts and Practices statutes ("UDAP" laws) are a central component—in some cases the only component—of every state's consumer protection enforcement. They

were developed as an alternative to common law remedies in tort and contract when those remedies proved inadequate for addressing fraud in a growingly complex marketplace.  *See* ABA Section of Antitrust Law, Consumer Protection Handbook (2004), at 68 ("[State consumer protection statutes] contain general language that enables enforcers to respond to innovative or anticipated tactics.").   For that reason, they are construed in favor of the remedial purposes for which they were enacted.  *See, e.g., See* ALA. CODE § 8-19-2 ("The public health, welfare and interest require a strong and effective consumer protection program to protect the interest of both the consuming public and the legitimate businessperson.").

Congress passed the first UDAP statute in 1938, which gave the Federal Trade Commission (FTC) the enforcement power to prohibit "unfair or deceptive acts or practices in commerce."  Wheeler-Lea Act of 1938, Pub. L. No. 75-447, sec. 3, 52 Stat. 111, 111 (codified as amended at 15 U.S.C. § 45(a)(1)).  Then, beginning in the 1960s, States began, with the encouragement of the FTC, to adopt similar laws.  The Unfair Trade Practices and Consumer Protection Law (UTPCPL), a piece of legislation developed by the FTC in collaboration with the Council of State Governments and published in 1970, became the prevailing model.  Dee Pridgen, *The Dynamic Duo of Consumer Protection:  State and Private Enforcement of Unfair and Deceptive Trade Practices Law*, 81 ANTITRUST L.J. 911, 913 (2017).  The UTPCPL had three variations, two of which have been adopted by certain states.  *Id.*  The first adopted variation, known as the "little FTC Act," prohibits both "unfair methods of competition and unfair or deceptive acts or practices."  *See* 15 U.S.C. § 45(a).  The second adopted version—the version adopted by Alabama (ALA. CODE § 8-19-5)—enumerates specific prohibited practices along with a catch-all ban on "any act or practice which is unfair or deceptive to the consumer." *Dynamic Duo*, 81 ANTITRUST L.J. at 914 & n.22.  In addition, a few states adopted "consumer

fraud acts" which only prohibit deceptive or unconscionable acts or practices and consumer

fraud.  *Id.* at 915.  Regardless of the variation, however, by 1981 every state had a consumer

protection act,[5] and, in the vast majority of states and the District of Columbia, the attorney

general has exclusive public enforcement power under the state's UDAP statute.[6]

### B.    Common Characteristics of State UDAP Statutes

Although each state's UDAP statute varies in some ways, they have common

characteristics.  First, they are generally applicable to consumer transactions involving products

and services.[7]  Second, they prohibit unfair or deceptive practices, but can use other words to

describe the prohibited conduct, including "unconscionable," "untrue," "misleading,"

"fraudulent," "false," "confusing," or "abusive."[8]  Third, state UDAP laws usually designate the

state attorney general as the public enforcement authority entitled to enforce their provisions, and

authorize attorneys general to seek multiple remedies, including injunctive relief and civil

penalties.[9]

---

[5] *See* Mark E. Budnitz, *The Federalization and Privatization of Public Consumer Protection Law in the United States:  Their Effect on Litigation and Enforcement*, 24 GA. ST. U. L. REV. 663, 674-75 (Spring 2008); National Consumer Law Center, UNFAIR AND DECEPTIVE ACTS AND PRACTICES (9th ed. 2016), *updated at* www.nclc.org/library (hereinafter "NCLC") § 1.1 ("All fifty states, the District of Columbia, Puerto Rico, Guam and the Virgin Islands have enacted at least one statute with broad applicability to most consumer transactions, aimed at preventing consumer deception and abuse in the marketplace.").

[6] NCLC § 13.1.

[7] *See* NCLC §§ 2.1.5, 2.1.6, and 2.1.7.

[8] *See, e.g.,* ALA. CODE § 8-19-5(27) (prohibiting "any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce").

[9] *See* NCLC § 13.5.1.1 (injunctive relief) (all 50 states "allow government officials to seek a cease and desist order or injunction to prevent merchants from engaging in deceptive practices"); § 13.5.3.1 (most states allow enforcement authorities to seek civil or criminal penalties for initial UDAP violations).

The combination of these attributes means that conduct prohibited under UDAP statutes can encompass a variety of types of conduct, making state attorneys general able to respond to ever-changing practices that may harm consumers.  *See* Prentiss Cox, Amy Widman and Mark Totten, *Strategies of Public UDAP Enforcement*, 55 HARV. J. ON LEGIS. 37, 45 (Winter 2018); Glenn Kaplan and Chris Barry Smith, *Patching the Holes in the Consumer Product Safety Net: Using State Unfair Practices Laws to Make Handguns and Other Consumer Goods Safer*, 17 YALE. J. ON REG. 253, 276 (Summer 2000); *see also, e.g., Fletcher v. Don Foss of Cleveland, Inc.,* 90 Ohio App. 3d 82, 87, 628 N.E.2d 60, 63 (1993) ("[W]e hold that some overlap may occur as a result of broadly interpreting the listed violations in R.C. 1345.02.  A broad interpretation is warranted, however, due to human inventiveness in engaging in deceptive or misleading conduct. The Ohio legislature did not intend its express purpose of protecting consumers from false trade practices to be circumvented by those who seek loopholes in the Act's provisions.").  Consequently, attorneys general possess broader authority to pursue UDAP claims than private plaintiffs have in pursuing their own claims under the same statutes.

> **C.     The Manufacturer Defendants' arguments in support of dismissal of Alabama's claim under its DTPA fundamentally misconstrue the Attorney General's law enforcement role in protecting the citizens of the State of Alabama from false, misleading, deceptive, or unconscionable acts or practices.**

The Manufacturer Defendants' arguments that Alabama has purportedly failed to plead but-for causation or proximate causation are not only inapplicable for claims prosecuted in Alabama's *parens patriae* capacity, but likewise fail to account for the Alabama Attorney General's role in enforcing its DTPA.  *See* ALA. CODE § 8-19-2.  As with Alabama's claims brought in a *parens patriae* capacity, Alabama is not seeking recovery on behalf of particular individual Alabamians; instead, it is enforcing the Act's provisions on behalf of the State (FAC, ¶ 383), including the imposition of civil penalties under ALA. CODE § 8-19-11(b).  And, because

Alabama is proceeding in this capacity, it does not follow that Alabama should be required, as

Manufacturer Defendants contend (Defs.' Br. at 14-15), to identify at the pleadings stage

individual physicians who received Defendants' misrepresentations, were deceived by those

misrepresentations and wrote prescriptions as a result of those misrepresentations.[10]  Civil

penalties are not damages sought to compensate the State; they are intended to punish those who

inflict harms on consumers.  *See Gabelli v. SEC*, 568 U.S. 442, 451-52 (2013) ("In a civil

penalty action, the Government is not only a different kind of plaintiff, it seeks a different kind

of relief. . . . which go[es] beyond compensation, [and is] intended to punish, and label

defendants wrongdoers.") (citation omitted); *Tull v. United States*, 481 U.S. 412, 422 (1987)

(Civil penalties are "intended to punish culpable individuals, as opposed to . . . extract

compensation"); *State v. Emeritus Corp.*, 466 S.W.3d 233 (Tex. Ct. App. 2015) (requirement to

produce expert report applies only to claims that seek damages, which does not include civil

penalties); *see also* NCLC § 13.4.3 ("Since civil penalties are not damages, preconditions

applicable to damage suits do not apply to attorney general suits seeking civil penalties.").[11]

　　　　With regard to proximate causation, the purpose of determining whether an injury is

sufficiently direct is to "decide if a tort plaintiff is within the orbit of those protected against a

defendant's wrongful conduct."  *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris,*

---

[10] Further, the UDAP statutes of certain signatories to this brief do not even require the state
to prove proximate cause in order to establish a UDAP violation.  *See* ARIZ. REV. STAT. § 44-
1522 (declaring as an unlawful practice the "act, use or employment by any person of any
deception, deceptive or unfair act or practice, fraud, false pretense, false promise,
misrepresentation, or concealment, suppression or omission of any material fact with intent that
others rely on such concealment, suppression or omission, in connection with the sale or
advertisement of any merchandise **whether or not any person has in fact been misled, deceived
or damaged thereby**") (emphasis added).

[11] In Reply, Manufacturing Defendants may rely on *In re Zyprexa Prods. Liab. Litig.*, 671 F.
Supp. 2d 397, 434, 449 (E.D.N.Y. 2009), but that summary judgment decision discussing how
the State of Mississippi *proved* (not pled) civil penalties in an off-label marketing case does not
apply to what Alabama must plead at the pleadings stage.

*Inc.*, 23 F. Supp. 2d 771, 779 (N.D. Ohio 1998).  That inquiry simply has no place when analyzing an attorney general's law enforcement action, where, because of his broad authority to protect the public interest, the Manufacturer Defendants' actions were by definition within the scope of the State's "orbit" because they committed acts that affected the health and well-being of Alabamians and the state as a whole.

## CONCLUSION

For the above reasons in addition to the reasons set forth by Alabama, the *Amici* States respectfully request the Court deny the Manufacturer Defendants' Joint Motion to Dismiss Alabama's First Amended Complaint.

Respectfully submitted this 10th day of August, 2018.

MIKE DEWINE
OHIO ATTORNEY GENERAL

_____
JONATHAN R. FULKERSON
Ohio State Bar No. 0068360
Deputy Chief Counsel
30 E. Broad Street, 17th Floor
Columbus, Ohio 43215
Tel: 614-466-4320
Jonathan.Fulkerson@ohioattorneygeneral.gov

JONATHAN D. BLANTON
Ohio State Bar No. 0070035
Chief – Consumer Protection Section
30 E. Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-7878
Jonathan.Blanton@ohioattorneygeneral.gov

*Counsel for Amicus Curiae*
*State of Ohio*

MARK BRNOVICH
*Attorney General*
*State of Arizona*
1275 W. Washington St.
Phoenix, AZ 85007

GEORGE JEPSEN
*Attorney General*
*State of Connecticut*
55 Elm St.
Hartford, CT 06106

MICHAEL VILD
*Director of Fraud and Consumer*
*Protection Division*
*Office of the Delaware Attorney General*
Carvel State Office Bldg.
820 N. French St.
Wilmington, DE 19801

KARL A. RACINE
*Attorney General*
*District of Columbia*
441 4th Street, NW, Suite 1100S
Washington, DC 20001

PAMELA JO BONDI
Florida Attorney General
PL-01, The Capitol
Tallahassee, FL 32399

CHRIS CARR
*Attorney General*
*State of Georgia*
40 Capitol Square, SW
Atlanta, GA 30334

RUSSELL A. SUZUKI
*Attorney General*
*State of Hawaii*
425 Queen St.
Honolulu, HI 96813

LAWRENCE WASDEN
*Attorney General*
*State of Idaho*
700 W. Jefferson Street, Suite 210,
P.O. Box 83720
Boise, ID 83720

TOM MILLER
*Attorney General*
*State of Iowa*
Hoover State Office Bldg.,
1305 E. Walnut
Des Moines, IA 50319

BILL SCHUETTE
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

LORI SWANSON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

TIM FOX
*Attorney General*
*State of Montana*
Justice Building
215 N. Sanders
Helena, MT 59620

DOUG PETERSON
*Attorney General*
*State of Nebraska*
State Capitol
P.O. Box 98920
Lincoln, NE 68509

ADAM PAUL LEXALT
*Attorney General*
*State of Nevada*
100 N. Carson St.
Carson City, NV 89701

GURBIR S. GREWAL
*Attorney General*
*State of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 080
Trenton, NJ 08625

JANET MILLS
*Attorney General*
*State of Maine*
State House Station 6
Augusta, ME 04333

BRIAN FROSH
*Attorney General*
*State of Maryland*
Saint Paul Plaza
200 Saint Paul Place
Baltimore, MD 21202

JOSH STEIN
*Attorney General*
*State of North Carolina*
Dept. of Justice
P.O. Box 629
Raleigh, NC 27602

WAYNE STENEHJEM
*Attorney General*
*State of North Dakota*
State Capitol
600 E. Boulevard Ave.
Bismarck, ND 58505

HECTOR H. BALDERAS
*Attorney General*
*State of New Mexico*
201 3rd. St. NW, Suite 300
Albuquerque, NM 87102

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street N.E.
Salem, OR 97301

JOSH SHAPIRO
*Attorney General of Pennsylvania*
Strawberry Square
Harrisburg, PA 17120

PETER F. KILMARTIN
*Attorney General*
*State of Rhode Island*
150 S. Main St.
Providence, RI 02903

ALAN WILSON
*Attorney General*
*State of South Carolina*
Rembert C. Dennis Office Bldg.
P.O. Box 11549
Columbia, SC 29211

HERBERT SLATERY III
*Attorney General*
*State of Tennessee*
425 5th Avenue North
Nashville, TN 37243

KEN PAXTON
*Attorney General*
*State of Texas*
Capitol Station
P.O. Box 12548
Austin, TX 78711

MARK HERRING
*Attorney General*
*Commonwealth of Virginia*
202 North Ninth Street
Richmond, VA 23219

BOB FERGUSON
*Attorney General*
*State of Washington*
1125 Washington St. SE
PO Box 40100
Olympia, WA 98504

PETER K. MICHAEL
*Attorney General*
*State of Wyoming*
State Capitol Bldg.
Cheyenne, WY 82002

JIM HOOD
*Attorney General*
*State of Mississippi*
P.O. Box 220
Jackson, MS 39205

LESLIE RUTLEDGE
*Attorney General*
*State of Arkansas*
323 Center Street, Suite 200
Little Rock, AR 72201

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2018 the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ *Steve W. Berman*
Steve W. Berman