# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION ) ) ) THIS DOCUMENT RELATES TO: ) ) West Boca Medical Center, Inc. v. ) AmerisourceBergen Drug Corp., et al., ) Case No. 1:18-op-45330 ) ) | MDL No. 2804 Case No. 1:17 MD 2804 Judge Dan Aaron Polster |

Before the Court are the following two motions:

1. Mississippi Hospital Association's ("MHA") Motion for Leave to File Amicus Curiae Brief in Support of Plaintiff West Boca Medical Center, Inc.'s Opposition to Defendants' Motion to Dismiss, **Doc #: 847**, ("MHA's Motion"); and

2. Motion of 44 Hospital Amici for Leave to File an Amicus Curiae Brief in Support of Plaintiff West Boca Medical Center, Inc.'s Opposition to Defendants' Motion to Dismiss **Doc #: 848** ("44 Hospitals' Motion").

The Court has reviewed these Motions and the Distributors' Opposition to the Motions (Doc #: 852), and **DENIES** the Motions for the following reasons.

**I.**

Plaintiffs in this Multidistrict Litigation ("MDL") are a combination of government entities, Indian tribes, hospitals, third-party payors and individuals from across the nation who have sued the manufacturers, distributors and retailers of prescription opiate drugs, alleging they are liable for the costs Plaintiffs have incurred, and will continue to incur, in addressing the opioid public health crisis. There are now over 1100 cases in this MDL – 64 of which were filed

by hospitals and third-party payors.  In order to achieve the Court's goal of settling the cases in this MDL, it directed the various groups of parties to identify negotiating teams to discuss settlement.  *See, e.g.,* Doc ##: 124, 186, 228.  Later, the Court noted that the parties were making progress in pursuing settlement discussions, but that defendants believed settlement would be more likely if the Court created a ligitation track with the ability of defendants to tee up some threshold legal issues on common claims.  Thus, the Court issued Case Management Order No. 1 which, among other things, identified bellwether cases for dispositive motions and trial. Doc #: 232.  Therein, the Court directed the Hospital Representative of the Plaintiffs' Executive Committee to identify a single MDL case filed by a hospital, the claims of which were governed by the laws of either Ohio, Illinois, West Virginia, Michigan or Florida.  *Id*. at 2-3.  Attorney Don Barrett, the Hospital Representative of the PEC, chose this case.  Doc #: 384.  On May 22, 2018, the Court issued Case Management Order No. 4 which set forth deadlines and page limitations (totalling 1040 pages) for briefing defendants' anticipated motions to dismiss.  Doc #: 485.

On June 29, 2018, the Defendants filed their motions to dismiss.  Doc #: 27, Main Case Doc #: 684 (Distributor Defendants), Doc #: 28, Main Case Doc #: 686 (Pharmacy Defendants), Doc #: 32, Main Case Doc #: 691 (Manufacturer Defendants).  On July 27, 2018, West Boca filed its opposition to the motions.  Doc #: 806.  One week later, the putative Amici filed the pending Motions, asking for leave to file amicus curiae briefs in support of West Boca's opposition to the defendants' motions to dismiss.

In its motion, the MHA states that it "is a trade association of hospitals and healthcare providers in the State of Mississippi that are dedicated to effectively serving the health care needs of Mississippi."  Doc #: 847 at 1.  Further, the MHA "can speak to the impact of the

[opioid] crisis on MHA's hospital members, which are similarly situated to Plaintiff West Boca Medical Center . . . and thereby provide the Court with additional perspective on hospital claims in this litigation." *Id*. Finally, the MHA "seeks to supplement and support the arguments of West Boca with particular focus on Defendants' arguments regarding the ability of hospitals to prove *proximate cause and damages*." *Id*. at 2 (emphasis added).

In its motion, 44 Hospitals state that they are urban and rural hospitals located throughout the United States. Doc #: 848 at 1. Although they are not represented in this MDL, they "have unique information and perspective to offer the Court in deciding *whether and how to apply the tobacco-litigation case law relied upon by the defendants in their motion to dismiss*." *Id*. at 1-2 (emphasis added). They expect to show how the exclusion of the medical community from the tobacco litigation resulted in a fundamental failure of the recoveries in those cases from ever actually reaching those on the frontlines of tobacco healthcare treatment and prevention." *Id*. at 2.

## II.

In *United States v. State of Michigan*, 940 F.2d 143 (6th Cir. 1991) ("*Michigan*"), the Sixth Circuit addressed amicus briefs. The Sixth Circuit explained that, "[h]istorically, 'amicus curiae' was defined as one who interposes 'in a judicial proceeding to assist the court by giving information, or otherwise, or who conduct[s] an investigation or other proceeding on request or appointment therefor by the court.'" *Id.,* 940 F.2d at 164 (citing 4 AM. Jur.2d Am. Cur. §1, at 109 (1962)). "Its purpose was to provide *impartial* information on matters of law about which there was doubt, especially in matters of public interest." *Id*. (citations omitted). "The orthodox view of amicus curiae was, and is, that of an *impartial* friend of the court – *not an adversary party in interest in the litigation*." *Id*. at 164-65. "Classical participation as an amicus to brief

and argue as a friend of the court was, and continues to be, a privilege within the sound discretion of the courts, . . ., depending upon a finding that the proffered information of amicus is timely, useful, or otherwise necessary to the administration of justice. . . ." *Id*. at 165 (inner quotation marks and citations omitted).

In *Ryan v. Commodity Future Trading Comm'n*, then-Seventh Circuit Chief Judge Posner expounded upon the subject of amicus briefs discussed in *Michigan*. 125 F.3d 1062 (7th Cir. 1997). There, Judge Posner discussed the tendency of many judges to grant motions for leave to file amicus curiae briefs "without careful consideration of 'the reasons why a brief of an amicus curiae is desirable.'" *Id*. at 1063 (quoting Fed. R. App. P. 29, Notes of Advisory Committee on 1998 Amendments, Note to Subdivision (b)). Judge Posner explained,

> The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse. The term "amicus curiae" means friend of the court, not friend of a party. *United States v. Michigan*, 940 F.2d 143, 164-65 (6th Cir. 1991). We are beyond the original meaning now; an adversary role of an amicus curiae has become accepted. *Id*. at 165. But there are, or at least there should be, limits. *Cf. New England Patriots Football Club, Inc. v. University of Colorado*, 592 F.2d 1196, 1198 n.3 (1st Cir. 1979). An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. *See, e.g., Miller-Wohl Co. v. Commissioner of Labor & Industry*, 694 F.2d 203 (9th Cir. 1982) (per curiam). Otherwise, leave to file an amicus curiae brief should be denied. *Northern Securities Co. v. United States*, 191 U.S. 555, 556, 24 S.Ct. 119, 119, 48 L.Ed. 299 (1903) (Chief Justice Fuller, in chambers); *American College of Obstetricians & Gynecologists v. Thornburgh*, 699 F.2d 644 (3d Cir. 1983) (per curiam); *Rucker v Great Scott Supermarkets*, 528 F.2d 393 n.2 (6th Cir. 1976); *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970); *United States v. Gotti*, 755 F.Supp. 1157 (.E.D.N.Y. 1991); *Fluor Corp. v. United States*, 35 Fed. Cl. 284 (1996).

*Id*.

**III.**

The Court has reviewed West Boca's memorandum opposing the defendants' motions to dismiss.  West Boca's brief covers the issues MHA desires to supplement and support in its amicus brief, i.e., proximate cause and damages.  West Boca's brief devotes an entire section to the issue 44 Hospitals desires to elucidate in its amicus brief, i.e., whether and how to apply the tobacco-litigation case law relied upon by the defendants in their motions to dismiss.  In short, the putative Amici seek permission to file amicus briefs that essentially duplicate West Boca's arguments.  Other court have denied permission to file amicus briefs for this reason alone.  *See, e.g., Voices for Choices v. Illinois Bell Telephone Co.*, 339 F.3d 542, 544 (2003); *Yates v. Ortho-McNeil Pharmaceutical Inc.*, 76 F.Supp.3d 680, 690-91 (N.D. Ohio 2015).

Moreover, the putative Amici are not impartial since they are similarly situated to West Boca and seek to assist West Boca in its arguments.  But there is no suggestion, let alone indication, that West Boca's representation, experienced MDL counsel, are incompetent to address the task.

There are good policy reasons for a court to give very careful consideration to the prospect of allowing amicus briefs.  Judges have heavy caseloads and need to minimize extraneous reading.  *Voices for Choices,* 339 F.3d at 544.  Amicus briefs may be used to make an end run around court-imposed limitations on the length of parties' briefs.  *Id.*  And the time and resources used to draft, file and respond to amicus briefs drive up the cost of litigation.  *Id.*

Based on the case law and policy considerations, the Court exercises its discretion to deny leave to file the Amici Motions.  The putative Amici are partial movants who seek to supplement and support West Boca's arguments.  There are over 1100 cases pending in this MDL filed by hundreds of attorneys, most of whom would probably like to chime in on

dispositive motions in other cases as well.  The parties in this case are allotted a total of 1040 pages to brief just these three motions to dismiss.  It is the Court's responsibility to streamline the issues in this MDL, and to conserve the parties' litigation costs and the Court's resources.  Allowing more briefs that duplicate a parties' arguments would needlessly overtax the Court's current workload and the resources of the parties <u>and the movants</u>.

**IV.**

Accordingly, the Court **DENIES** the Amici Motions (**Doc ##: 847, 848**.)

**IT IS SO ORDERED.**

   <u>/s/ Dan A. Polster     August 16, 2018</u>
**Dan Aaron Polster**
**United States District Judge**