**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| | **Case No. 17-MD-2804** |
| This document relates to: | **Judge Dan Aaron Polster** |
| *West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corporation, et al.*, Case No. 18-op-45530 | |

**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS**
**CVS, KROGER, WALGREENS, AND WALMART**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

ARGUMENT .............................................................................................................................. 1

I.     West Boca Does Not State a Claim Against the Moving Defendants as
Pharmacies ........................................................................................................................ 1

II.    West Boca Cannot Establish Proximate Cause ............................................................... 2

III.   West Boca's Individual Claims Fail as a Matter of Law .................................................. 4

      A.    West Boca Cannot Identify Any Allegations That Would Support a RICO
            Claim Against the Moving Defendants .................................................................. 4

      B.    West Boca Cannot Identify a Duty to Support Its Negligence Claim .................. 6

      C.    West Boca Cannot Support Its Nuisance Claim ..................................................... 8

      D.    West Boca's FDUTPA Claim Against the Moving Defendants Fails................... 8

      E.    West Boca Has Abandoned Its Implied Warranty Claim ...................................... 9

      F.    West Boca Has Not Pleaded an Unjust Enrichment Claim Against the
            Moving Defendants ................................................................................................. 9

CONCLUSION............................................................................................................................ 9

i

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................... 4

*City of Miami v. Bank of Am. Corp.*,
  800 F.3d 1262 (11th Cir. 2015),
  *vacated on other grounds by*
  *Bank of Am. Corp. v. City of Miami, Fla.*,
  137 S. Ct. 1296 (2017).................................................................................................. 9

*City of Miami v. Citigroup Inc.*,
  801 F.3d 1268 (11th Cir. 2015) ................................................................................... 9

*Clay Elec. Coop., Inc. v. Johnson*,
  873 So. 2d 1182 (Fla. 2003) ......................................................................................... 6

*Cook v. MillerCoors, LLC*,
  829 F. Supp. 2d 1208 (M.D. Fla. 2011)....................................................................... 6

*Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*,
  983 So. 2d 1175 (Fla. Dist. Ct. App. 2008) ................................................................ 7

*Grunow v. Valor Corp. of Fla.*,
  904 So. 3d 551 (Fla. Dist. Ct. App. 2005) .................................................................. 7

*McCain v. Fla. Power Corp.*,
  593 So. 2d 500 (Fla. 1992) ........................................................................................... 6

*Traxler v. PPG Indus.*,
  158 F. Supp. 3d 607 (N.D. Ohio 2016)........................................................................ 3

*United States v. Stevens*,
  994 So. 2d 1062 (Fla. 2008) ......................................................................................... 6

*Wallace v. Dean*,
  3 So. 3d 1035 (Fla. 2009) ............................................................................................. 6

**Rules**

Fed. R. Civ. P. 9.................................................................................................................. 6

**Other**

Brief for Petitioners, *Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) (No. 10-779), 2011 WL 661712................................................................ 5

Just like other plaintiffs, Plaintiff West Boca Medical Center, Inc. ("West Boca") has

responded to the Moving Defendants' motion to dismiss through an omnibus brief, evidently

hoping that contentions it has aimed at *other Defendants* will somehow stave off dismissal of its

claims against the *Moving Defendants*, as to whom the Complaint offers only generic allegations

that are patently insufficient to withstand a motion to dismiss.[1]  Whatever Plaintiff has to say

about why its claims against the *Marketing Defendants* or *Distributor Defendants* are properly

pleaded, it is not enough to overcome the reasons why its claims against the *Moving Defendants*

must be dismissed, including the pivotal fact that West Boca—a private hospital with its own

full-service pharmacy—cannot identify a single transaction it ever engaged in with any of the

Moving Defendants.[2]

## ARGUMENT

### I.    West Boca Does Not State a Claim Against the Moving Defendants as Pharmacies.

West Boca does not dispute that it fails to state a claim against the Moving Defendants as

retail pharmacies.  Just the opposite, West Boca characterizes its allegations against the Moving

Defendants as "on all fours with those asserted against the other Distributor Defendants."  Pl. Br.

22; *see also id.* at 43 (arguing that the Moving Defendants "were just as involved as any of the

Distributor Defendants in the administration and distribution of opioids").  Based on this

---

[1] The Moving Defendants include CVS Orlando, Florida Distribution, LLC; CVS Vero, Florida Distribution, LLC; Kroger Co.; Walgreen Co.; and Wal-Mart, Inc.  Rite Aid of Maryland, Inc.; Walgreens Boots Alliance, Inc.; and CVS Health Corporation were parties to the initial motion to dismiss.  Since that time, West Boca has voluntarily dismissed Rite Aid of Maryland, Inc.; Walgreens Boots Alliance, Inc.; and CVS Health Corporation, and added related parties for the latter two entities, which step into their shoes for purposes of this motion.

[2] The Moving Defendants hereby incorporate the Distributor Defendants' briefing in full, and the Moving Defendants' briefing in *Broward County, Fla. v. Purdue Pharma L.P., et al.*, No. 18-op-45332 (MDL Doc. No. 582-1) ("Moving Defs. Broward County Br."); (MDL Doc. No. 825) ("Moving Defs. Broward County Reply Br.").

concession, to whatever extent the Complaint intended to assert claims against the Moving

Defendants in their roles as retail pharmacies, those claims should now be dismissed.

West Boca's claims against the Moving Defendants as distributors fare no better.

**II.      West Boca Cannot Establish Proximate Cause.**

For the reasons outlined in the Moving Defendants' *Broward County* briefing, West Boca

cannot get around sole proximate cause or the learned intermediary doctrine.  Moving Defs.

Broward County Reply Br. 3-5; Moving Defs. Broward County Br. 3-4.  West Boca barely

responds to the Moving Defendants' arguments or the Florida authority finding no proximate

causation for highly analogous claims.

The only relevant allegation West Boca points to having anything to do with the Moving

Defendants is that they allegedly failed to adequately monitor orders of prescription opioids by

their own retail stores, purportedly contributing to an oversupply of opioids.  *See* Pl. Br. 2-3.

The lengthy and attenuated causal chain between those broad allegations and West Boca's

claimed harms bars any finding of proximate cause.  *See* Moving Defs. Broward County Br. 4-5;

Moving Defs. Br. 2-3 (identifying additional factors complicating causation as to West Boca).[3]

---

[3] West Boca obviously cannot establish proximate causation as to the *Moving Defendants* by
pointing to allegations of fraud and deceptive marketing against the *Marketing Defendants*.  *See*,
*e.g.*, Pl. Br. 13 (relying on "longstanding fraud on physicians and consumers" and discussing the
Marketing and Distributor Defendants); *id.* at 16-17 (misleadingly referring to "Defendants"
collectively for allegations about the Marketing Defendants only); *id.* at 17-18 (arguing that "but-
for Defendants' false and deceptive *marketing* of prescription opioids, Plaintiff never would have
had to treat such an astonishing number of patients with opioid related conditions in the first
place") (emphasis added, emphasis in original omitted); *id.* at 19 ("Defendants' conduct in
*marketing* their products was targeted at physicians, hospitals, and pharmacies (among others)
. . . .") (emphasis added); *id.* at 20 ("Hospitals, their physicians and their pharmacies were
targeted directly by an overwhelming, sustained, multimedia, coordinated, and intense effort by
*Marketing Defendants* to promote the prescription of opioids.") (emphasis added); *id.* at 49 n.141
(relying on the "[*Marketing*] *Defendants'* fraudulent scheme to increase the volume of opioids
prescribed and consumed in the United States and in Plaintiff") (emphasis added).  None of these
allegations involve conduct by the Moving Defendants.

Indeed, West Boca's opposition brief makes clear that any role played by the Moving

Defendants is decidedly more attenuated from West Boca's alleged harms than the role West

Boca itself played, acting both as an employer of health care providers who wrote medically

inappropriate opioid prescriptions and as an operator of an in-house pharmacy that filled those

prescriptions.[4]

West Boca's attempts to shift its own responsibility for writing and filling improper

prescriptions to those who marketed or sold opioids directly to West Boca do not apply to the

Moving Defendants.  West Boca does not (and could not) allege any marketing by the Moving

Defendants, which are chain pharmacies.  Nor has it identified even a single purchase of

prescription opioids from any of the Moving Defendants, relying instead on vague allegations

and misplaced arguments:

- West Boca first points to the vaguest of allegations that it purchased opioids from "Defendants" generally, without supplying information about even one such transaction. Pl. Br. 37 & n.117 (citing Compl. ¶ 52).  Elsewhere, West Boca itself acknowledges that any allegation of purchases from *all* Defendants is implausible. *See id.* at 55 (stating that it interacted with "sales personnel" and regularly dispensed the products of "at least *some* of the Defendants") (emphasis added).

- Recognizing the deficiency of its pleadings, West Boca (bizarrely) argues that the identity of "any specific prescriptions for which it paid"—that is, West Boca's *own* purchases—is information "solely" within Defendants' knowledge. *Id.* at 61 (quoting *Traxler v. PPG Indus.*, 158 F. Supp. 3d 607, 630 (N.D. Ohio 2016)). Putting aside the fact that the details of its purchases are at least equally within

---

[4] *See, e.g.*, Pl. Br. 13 ("As a result of Defendants' longstanding fraud on physicians and consumers, the Hospital was made an unwitting part of the opioid supply chain."); *id.* at 15 ("Defendants' wrongful conduct has jeopardized the ability of Plaintiff and other hospital purchasers to properly limit their purchasing and dispensing of opioids . . . ."); *id.* at 19 ("[H]ealth care providers and hospital pharmacies served as part of [Defendants'] marketing and distribution infrastructure."); *id.* at 20 ("Hospitals are part of the distribution chain of opioid products . . . ."); *id.* at 37 ("Plaintiff directly purchased opioids from the Defendants, and dispensed opioids to its own patients as treatment for their medical conditions."); Compl. ¶ 52 ("Plaintiff . . . continues to purchase and administer opioids marketed and sold by Defendants.").

West Boca's own knowledge, the federal ARCOS data—to which West Boca has access—do not show a single purchase from any of the Moving Defendants.

- Finally, West Boca never explains why—as a hospital with its own "full-service pharmac[y]," *id.* at 4—it would ever have purchased prescription opioids from the Moving Defendants' retail pharmacy locations.  Moving Defs. Br. 5 n.6.

In short, West Boca's opposition brief only confirms that there is no proximate causation as to any of the Moving Defendants.  The few conclusory allegations to which it points are plainly inadequate to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**III.    West Boca's Individual Claims Fail as a Matter of Law.**

**A.    West Boca Cannot Identify Any Allegations That Would Support a RICO Claim Against the Moving Defendants.**

The Marketing and Distributor Defendants—both in *Summit County* and in this case— have explained in detail why the RICO claims asserted here must fail.

Moreover, in their opening brief, the Moving Defendants explained that West Boca's RICO claims against them are even *more* implausible than those against other Defendants because they rely entirely on copied-and-pasted allegations from other complaints that exclude the Moving Defendants from any RICO claims.  Moving Defs. Br. 3-4.  West Boca offers no defense for its egregious group pleading.  Instead, it simply ignores the Moving Defendants' argument and brazenly cites allegations from its Complaint that, by their own terms, have nothing to do with the Moving Defendants.

To start with, West Boca misleadingly suggests that the *Moving Defendants* are included in its allegations about the *Distributor Defendants*.  *See* Pl. Br. 22-23 & n.66 (citing Compl. ¶¶ 509-514, 519-569).[5]  But West Boca's Complaint defines the "Distributor Defendants" as

---

[5] Paragraphs 509 to 514 are about "The Distributor Defendants' Unlawful Distribution of Opioids."  Compl. at 171.  Paragraphs 519 to 569 are about the Distributor Defendants, *id.* ¶¶ 526-32, 534-43, the Marketing Defendants, *id.* ¶ 533, and the relationship between the two, *id.* ¶¶ 544-69; *see, e.g., id.* ¶ 560 ("Taken together, the interaction and length of the relationship

"Cardinal, McKesson, and AmerisourceBergen."  Compl. ¶ 148; *see also* Pl. Br. 2 n.4.  It refers

to the Moving Defendants as the "National Retail Pharmacies," Compl. ¶ 154, and refers to the

Distributor Defendants and Moving Defendants collectively as the "Supply Chain Defendants,"

*id*.[6]

     The only allegations West Boca cites that identify any of the Moving Defendants by

name involve prior enforcement actions.  *See* Pl. Br. 23 n.66 (citing Compl. ¶¶ 663-707).  West

Boca identifies no facts tying those general allegations to the purported "False Narrative"

enterprise or to West Boca's claimed injury.  Nor could it.  The cited allegations identify only

some of the Moving Defendants by name, and many of those allegations involve conduct outside

Florida and/or conduct by the Moving Defendants as retail pharmacies.  *See* Compl. ¶ 684-707.

Other allegations are broad and conclusory, alleged "on information and belief."  *E.g., id.* ¶ 666.[7]

---

between and among the Marketing and Distributor Defendants reflect a deep level of interaction
and cooperation between two groups in a tightly knit industry."); *id.* ¶ 564 ("The Defendants'
scheme had a decision-making structure driven by the Marketing Defendants and corroborated
by the Distributor Defendants."); *id.* ¶ 565 ("The Marketing and Distributor Defendants [worked
together to influence the government] through their participation in the PCF and HDA.").

[6] The two lone references to the "Supply Chain Defendants" in the paragraphs cited by West
Boca come in a sea of allegations discussing only the Marketing and Distributor Defendants.
*Compare* Compl. ¶ 553 (alleging that "[t]he HDA and the Supply Chain Defendants used
membership in the HDA as an opportunity to create interpersonal and ongoing organizational
relationships and 'alliances' between the Manufacturers and Supply Chain Defendants"), *with id.*
¶ 552 (alleging that "the HDA website confirms that each of the Distributor Defendants and the
Marketing Defendants, including Actavis, Endo, Purdue, Mallinckrodt and Cephalon, were
members of the HDA," with no mention of any of the Moving Defendants); *see also id.* at 194
n.329 (referring to "Supply Chain Defendants" attempting to "drive market share" but citing a
Supreme Court brief discussing the conduct of "pharmaceutical manufacturers," *see* Brief for
Petitioners, *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) (No. 10-779), 2011 WL 661712, *9-
10).

[7] Elsewhere, Plaintiff replaces "information and belief" with the equivalent "[i]n consideration of
a reasonable opportunity for further investigation and discovery."  Compl. ¶¶ 677-81, 683.

West Boca has not pleaded a viable RICO claim against the Moving Defendants, much less with the particularity required by Rule 9(b).  Moving Defs. Br. 3-4.

Given the weakness of its RICO claim against the Moving Defendants, West Boca reverts to its RICO conspiracy claim.  Pl. Br. 23 n.67 ("[E]ven if there were not a viable independent §§ 1962(a) or (c) claim against the National Retail Pharmacy Defendants . . . , they also conspired with the other Defendants.").  But the same deficiencies that plague West Boca's RICO claim also doom its attempt to tag the Moving Defendants with conspiracy.  West Boca cannot rely on allegations about the *Marketing Defendants* and *Distributor Defendants* to show that the *Moving Defendants* "entered into express and/or implied agreements . . . to subvert the public's knowledge and understanding of the health effects and addictive nature of opioids."  Pl. Br. 30; *id.* 30 & n.89 (incorrectly suggesting, for the second time, that the Moving Defendants are "include[ed]" in allegations about "Distributor Defendants" and citing allegations about the Marketing and Distributor Defendants); *id.* at 31 (relying on allegations about the Marketing and Distributor Defendants' participation in trade groups).

### B.      West Boca Cannot Identify a Duty to Support Its Negligence Claim.

West Boca cannot distinguish the on-point Florida authority holding that there is no duty to prevent the intentional misuse of a legal product by a third party, even when that misuse is foreseeable.  Moving Defs. Br. 4; Moving Defs. Broward County Reply 6-8; Moving Defs. Broward County Br. 6-9.  Instead, West Boca reaches for cases involving fact patterns nothing like its claims here, or cases expressly distinguished by the Moving Defendants' authorities.[8]

---

[8] *See*, *e.g.*, *McCain v. Fla. Power Corp.*, 593 So. 2d 500 (Fla. 1992) (distinguished by *Cook v. MillerCoors, LLC*, 829 F. Supp. 2d 1208, 1217 (M.D. Fla. 2011)); *United States v. Stevens*, 994 So. 2d 1062 (Fla. 2008) (distinguished by *Cook*, 829 F. Supp. 2d at 1217); *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003) (applying the "undertaker's doctrine" to an electric utility's maintenance of street lights); *Wallace v. Dean*, 3 So. 3d 1035 (Fla. 2009) (applying

6

West Boca's reliance on cases standing for the unremarkable proposition that statutory violations can serve as "prima facie evidence" of negligence is similarly misplaced.  Pl. Br. 42-43.  As Florida courts have explained, "such evidence only becomes relevant to a breach of a standard of care *after the law has imposed a duty of care*."  *Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1181-82 (Fla. Dist. Ct. App. 2008) (emphasis added).[9]

To the extent West Boca tries to argue that a legal duty arises out of superior or exclusive knowledge, Pl. Br. 41, the argument fails as to the Moving Defendants, who obviously possess no greater expertise on the medical risks of opioids than a hospital like West Boca, much less a hospital that operates its own in-house pharmacy.

Finally, West Boca cannot sidestep the fact that Florida does not recognize a cause of action for "negligent distribution" of a non-defective product.  *See*, *e.g.*, *Grunow v. Valor Corp. of Fla.*, 904 So. 3d 551, 554 (Fla. Dist. Ct. App. 2005).  West Boca does not even mention the Florida Court of Appeals' decision in *Grunow*—much less distinguish it—instead citing two unpublished federal trial court decisions that mention "negligent distribution" without discussion, a district court decision involving the negligent transportation of cargo, and a law review article.  *See* Pl. Br. 45-46.[10]

---

"undertaker's doctrine" to sheriff's deputies who responded to a 911 call and wrongly assured the decedent's family not to call an ambulance).

[9] Notably, Plaintiff has entirely abandoned any assertion of negligence *per se* (Claim 8).  *See* Pl. Br. 40 ("Plaintiff is Not Asserting a Statutory Cause of Action under the regulatory regimes cited in the Complaint (but, rather, cites the violation of statutory obligations as evidence of negligence)"); *id.* at 42-43 (same).  Claim 8 must be dismissed on that basis alone.

[10] To the extent Plaintiff now seeks to frame its negligent distribution claim as a type of garden-variety negligence (Claim 6), there is still no legal duty or proximate causation.

7

C.       **West Boca Cannot Support Its Nuisance Claim.**

With respect to its nuisance claim, West Boca largely incorporates the arguments advanced in the *Broward County* briefing.  *Id.* at 31-32.  The Moving Defendants do likewise. West Boca provides no basis for this Court to adopt an expansive view of Florida law in the teeth of contrary Florida authority, vastly expanding tort liability beyond anything previously recognized by the Florida courts.  Moving Defs. Broward County Reply 8-10.  Therefore, its claim must fail.

D.       **West Boca's FDUTPA Claim Against the Moving Defendants Fails.**

West Boca's FDUTPA claim fails for all of the reasons identified by the Moving Defendants in *Broward County*.  Moving Defs. Broward County Br. 12-15; Moving Defs. Broward County Reply 12-13.  West Boca still has not provided any basis for interpreting FDUTPA to impose liability on any business that does not affirmatively announce all alleged regulatory missteps to every private customer.  Moving Defs. Br. 5.  Moreover, as explained above, West Boca has not identified a single transaction it entered into with any of the Moving Defendants that would support a FDUTPA claim—information that would be well within its knowledge if any such transactions existed.  They do not.

And again, as with its RICO claim, all that West Boca points to for support are general allegations about prior enforcement actions involving the Moving Defendants that have nothing to do with Plaintiff.  *See* Pl. Br. 60 & n.161 (citing Compl. ¶¶ 683-717).  Besides the fact that the cited allegations involve conduct outside Florida and/or by the Moving Defendants in their roles as retail pharmacies—conduct irrelevant to West Boca's FDUTPA claim—none of those allegations identifies a single fraudulent omission by any of the Moving Defendants that caused a substantial *consumer* injury or was likely to mislead *consumers* to their detriment.

West Boca's novel and unwarranted FDUTPA claim must therefore be dismissed.

8

**E.      West Boca Has Abandoned Its Implied Warranty Claim.**

Plaintiff mounts no defense of its implied warranty claim.  Therefore, the claim should be dismissed.

**F.      West Boca Has Not Pleaded an Unjust Enrichment Claim Against the Moving Defendants.**

Finally, West Boca's inability to identify a single specific instance in which it purchased a prescription opioid from any of the Moving Defendants also dooms its unjust enrichment claim.  *See* Moving Defs. Broward County Reply 14.  West Boca cannot save its claim by citing a handful of non-Florida cases that have treated the amelioration of "externalities" as conferring a direct benefit.  Pl. Br. 51, 53-55, 57-58.  No Florida case has ever recognized such a theory. That is why the Eleventh Circuit rejected a similar claim—brought by a plaintiff citing some of the same out-of-state cases that West Boca relies on—as unsupported by Florida law.  *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287-89 (11th Cir. 2015), *vacated on other grounds by Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296 (2017) ("[G]iven the complete lack of supporting Florida caselaw, we decline to invent a novel basis for unjust enrichment under Florida law today."); *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277-78 (11th Cir. 2015).

## CONCLUSION

All claims of Plaintiff West Boca against the Moving Defendants should be dismissed.

9

Dated:  August 17, 2018                    Respectfully submitted,


                                           /s/ Kaspar J. Stoffelmayr
                                           Kaspar J. Stoffelmayr
                                           BARTLIT BECK HERMAN
                                             PALENCHAR & SCOTT LLP
                                           54 West Hubbard Street, Ste. 300
                                           Chicago, IL 60654
                                           (312) 494-4400
                                           kaspar.stoffelmayr@bartlit-beck.com

                                           *Counsel for Walgreen Co.*


                                           /s/ Eric R. Delinsky (consent)
                                           Eric R. Delinsky
                                           Alexandra W. Miller
                                           ZUCKERMAN SPAEDER LLP
                                           1800 M Street, NW, Ste. 1000
                                           Washington, DC 20036
                                           (202) 778-1800
                                           edelinsky@zuckerman.com
                                           smiller@zuckerman.com

                                           *Counsel for CVS Orlando, Florida
                                           Distribution, LLC and CVS Vero, Florida
                                           Distribution, LLC*


                                           /s/ Ronda L. Harvey (consent)
                                           Gerald R. Stowers
                                           Ronda L. Harvey
                                           BOWLES RICE LLP
                                           600 Quarrier Street
                                           Charleston, WV 25326
                                           (304) 347-1100
                                           gstowers@bowlesrice.com
                                           rharvey@bowlesrice.com

                                           *Counsel for The Kroger Co.*

/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

11

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing

Reply in Support of Motion to Dismiss by Defendants CVS, Kroger, Walgreens, and Walmart is

within the page limitations agreed to among the parties pursuant to CMO-4.


/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreen Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that this 17th day of August, 2018, I electronically filed a copy of the

foregoing with the Clerk of the Court using the ECF system, which sent notification of such

filing to all counsel of record.


/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreen Co.*