UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION, OPIATE LITIGATION | MDL NO. 2804 |
| | Case No. 17-MD-2804 |
| THIS DOCUMENT RELATES TO: | Judge Dan Aaron Polster |

*Rees v. McKesson Corporation, et al.*
S.D. IL, C.A. #18-00511; MDL Case #1:18-OP-45252

*Wood v. Purdue Pharma L.P., et al*
E.D. MO, C.A. #18-00385; MDL Case #1:18-OP-45264

*Salmons v. Purdue Pharma L.P., et al*
S.D. WV, C.A. #18-00385; MDL Case #1:18-OP-45268;

*Ambrosio v. Purdue Pharma L.P., et al*
C.D. CA, C.A. #18-02201; MDL Case #1:18-OP-45375

*Flanagan v. Purdue Pharma L.P., et al*
W.D. TN, C.A. #18-02194; MDL Case #1:18-OP-45405

*Whitley, et al. v. Purdue Pharma L.P., et al*
W.D. TN, C.A. #18-02290; MDL Case #1:18-OP-45598

*Roach v. McKesson Corporation, et al.*
E.D. LA, C.A. #18-04165; MDL Case No. #1:18-OP-45662

*Hunt v. Purdue Pharma L.P., et al*
D. MD, C.A. #18-01349; MDL Case No. #1:18-OP-45681

**MOTION FOR LEAVE TO FILE RENEWED MOTION
FOR SEPARATE NAS BABY TRACK**

Plaintiffs, through the undersigned,[1] respectfully move for leave to file a renewed Motion

and Memorandum in Support to Establish Separate NAS Baby Track.  Unlike every other class

---

[1] The undersigned collectively represent every single NAS baby whose case has been transferred to the MDL.

1

of plaintiff in this litigation, the PEC still has no dedicated representative for the NAS babies and their unique interests in conducting discovery, selecting bellwethers, and negotiating settlement. Meanwhile, the chosen representatives of the NAS babies have been explicitly excluded from the discovery process and deemed as irrelevant and "burdensome" while discovery proceeds under a cloak of secrecy.

Recent events in opioid litigation underscore and have bolstered the need for this Court to create an individualized track for NAS Babies now.  In the ten weeks which have elapsed since Plaintiffs first requested a separate-litigation track to address their claims and concerns over a coming explosion of NAS babies, over 5,000 babies were born with NAS.[2] Another one is born every 15 minutes, 24 hours a day, and according to the Center for Disease Control, nearly 6 in every 1,000 babies born in the United States suffer symptoms from withdrawal. At the same time, as these babies become children and young adults, the window for remedial medical intervention is slammed shut.[3] As reported to the Court previously, as recently as 2010 the use of prescribed opioids among pregnant women was estimated at 14% in the U.S.[4]  Scant data from New South Wales, Australia indicates that mean test scores of NAS children in grade 3 were significantly lower than control and population groups and that by grade 7 these children's scores were lower than other children in grade 5.[5]

Meanwhile, seven class actions on behalf of NAS babies have been transferred to this MDL from West Virginia, Illinois, Tennessee, California, Maryland, Louisiana, and Missouri, and there

---

[2] *See* Patrick, S.W., Davis, M.M., Lehman, C.U., and Cooper, W.O. Increasing incidence and geographic distribution of neonatal abstinence syndrome: United States, 2009 to 2012. *J Perinatol*. 2015; 35: 650–655.
[3] *See* Kocherlakota, P., Neonatal Abstinence Syndrome. Pediatrics Jul 2014, 2013-3524
[4] Pinto SM, et al. Substance Abuse During Pregnancy: Effect on Pregnancy Outcomes. Eur J Obstet Gynecol Report Biol. 2010; 150(2) 137-41.
[5] Ju Lee Oei,et al. Neonatal Abstinence Syndrome and High School Performance. Pediatrics, 207, Vol 139/Issue 2.

2

are additional cases filed by the undersigned in state and federal courts which have either been designated or will soon be designated for transfer.[6] As Special Master Cohen observed during this Court's May 10, 2018 Status Conference, "[the NAS babies] is a different group *that the Court has not yet worked with.*"[7]

All the while, the current PEC still has no dedicated representative or formal committee representing the NAS Babies' unique interests. In fact, the PEC not only lacks a formal advocate for the NAS Babies, but it is comprised exclusively of lawyers for governments and institutions whose interests are at odds with the NAS Babies. Moreover, it has now become apparent that this litigation will test the financial wherewithal of the certain defendants, exacerbating the internal competition among the MDL plaintiffs including the NAS Babies. Therefore, the current motion for a separate baby track is ripe for consideration.

Discovery is well underway in connection with the bellwether trials set for next year. This includes triple-tracking of corporate and liability depositions by the PEC, and the formal request, exchange, and review of thousands of documents. On July 28, 2018, despite Plaintiffs' entreaties (and in violation of this Court's own deposition protocol order), the PEC formally and officially refused to inform Plaintiffs whether any of this discovery includes or relates to their claims, much less allow Plaintiffs to monitor its progress.[8]

---

[6] Plaintiffs in an OH class action, *Doyle v. Actavis LLC, et al.*, S.D. Ohio, C.A. No. 2:18-cv-00719, recently filed their notice to vacate CTO-47 with the JPML.

[7] See transcript, Exhibit A ("As the Court knows, the case management order, the first case management order went on less than one month ago, on April 11th. And the case management order created a litigation track for sovereigns, which is both states and Indian tribes, Native American Indian tribes, local governmental entities, being counties and cities, hospitals, and third-party payors. Since then, there are other groups or entities that have sought to also join the litigation, and those are litigation issues the Court is going to have to address. For example, there are class actions that have been filed, purported class actions representing babies who suffer from neonatal abstinence syndrome. *That is a different group that the Court has not yet worked with.*")

[8] *See* correspondence between Jayne Conroy and Scott Bickford, Exhibit B.

3

The PEC has deigned to keep off-limits even the *subject matters* of the 30(b)(6) depositions (the notices for which are not being filed into the record),[9] and denied access to its ARCOS database (paid for with common benefits funds) by classifying it as proprietary. The NAS Babies, through their chosen, undersigned court representatives, are thus unable to conduct even the simplest due diligence inquiry into whether and how their interests and rights to due process are being protected in this litigation.[10]

Likewise, Plaintiffs have been unable to assess whether conflicts of interest among the PEC (which does not have any NAS baby cases before this Court) have bled into their handling or prioritizing of the NAS Babies' claims versus the interests of their own clients As the Court will recall, the current PEC was self-selected and approved by the Court when this MDL was comprised of only state and local government claims (and at that time, a few hospitals).  Since then, the Court, in order to assure adequacy of representation, created separate tracks for third-party payors, and Native Americans tribes and created one slot on the PEC for hospitals.  The Court created the Native American track so that they would not be marginalized.  Here the NAS Babies are currently marginalized completely.  Each of these entities, the state and local government, third party payors and Native Americans, hold competing if not conflicting interests in the direction of this litigation. These conflicts will only grow as this litigation tests the financial wherewithal of the defendants and ultimately as specific relief is crafted for the various categories of competing

---

[9] *See id.*

[10] Based on extensive consultation with our retained NAS baby experts, these cases require specific inquiry into warnings, testing, distribution, neonatal testing data in addition to a complex host of information necessary to construct any proposed relief in the form of a hybrid medical monitoring / epidemiologic model.

claimants.[11]

At present, the NAS babies are the largest category of plaintiffs in this MDL and yet the *only* class of plaintiffs denied their own voice.[12] They are also the most unique in terms of medical causation, liability (including corporate knowledge), damages and damage modeling, and potential settlement administration, and are undisputedly free of fault and critically the most vulnerable in this litigation due to their inability to speak for themselves. In conclusion, if there were ever a category of plaintiffs that requires a separate track in this MDL, it is the NAS Babies.

For all of these reasons, Plaintiffs' motion for leave should be granted.

Respectfully submitted,

/s/ Scott R. Bickford
**MARTZELL, BICKFORD & CENTOLA**
Scott R. Bickford (LA 1165)
Spencer R. Doody (LA 27795)
338 Lafayette Street
New Orleans, LA 70130
Telephone: 504-581-9065
Facsimile: 504-581-7635
sbickford@mbfirm.com
srd@mbfirm.com
usdcndoh@mbfirm.com

---

[11] "Even though dissenting outsiders can act as a safety net for adequaterepresentation, they cannot substitute for representative leadership." *See* Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71, 95-97 (2015). "Separate representation matters less in certain leadership positions, like liaison counsel…. But adequate representation is critically important in conducting discovery, choosing bellwether cases, and negotiating settlement." Id at fn. 258

[12] *Compare* fn 1. and https://www.nlc.org/number-of-municipal-governments-population-distribution (number of NAS babies vs. number of states, counties and municipalities in U.S., respectively.

5

/s/ Celeste Brustowicz
**COOPER LAW FIRM, LLC**
Celeste Brustowicz (LA 16835)
Barry J. Cooper, Jr.
Stephen H. Wussow (LA 35391)
Victor Cobb
1525 Religious Street
New Orleans, LA 70130
Telephone: 504-399-0009
Cbrustowicz@sch-llc.com


/s/ Kevin W. Thompson
**THOMPSON BARNEY LAW FIRM**
Kevin W. Thompson
David R. Barney, Jr.
2030 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: 304-343-4401
Facsimile: 304-343-4405
Kwthompsonwv@gmail.com

/s/ James F. Clayborne
**CLAYBORNE, SABO & WAGNER, LLP**
Sen. James F. Clayborne (IL 45627)
525 West Main Street, Suite 105
Belleville, Il 62220
Telephone:   618-239-0187
Facsimile:   618-416-7556
jclayborne@cswlawllp.com


/s/ Jack W. Harang
**LAW OFFICES OF JACK W. HARANG**
Jack W. Harang (LA 15083)
2433 Taffy Drive
Kenner, LA 70065
Telephone: 504-810-4734
jwharang@gmail.com

6

/s/ Kent Harrison Robbins
**THE LAW OFFICES OF KENT HARRISON ROBBINS, P.A.**
Kent Harrison Robbins (FL 275484)
242 Northeast 27th Street
Miami, FL 33137
Telephone: 305-532-0500
Facsimile: 305-531-0150
Primary: Khr@khrlawoffices.com
Secondary: ereyes@khrlawoffices.com
Tertiary: assistant@khrlawoffices.com


/s/ Donald Creadore
**THE CREADORE LAW FIRM, P.C.**
Donald Creadore (NY 2090702)
450 Seventh Avenue - 1408
New York, NY 10123
Telephone: 212-355-7200
Facsimile: 212-583-0412
Primary: donald@creadorelawfirm.com
Secondary: donald@aol.com


/s/ Warren Perrin
**PERRIN, LANDRY, deLAUNAY**
Warren Perrin
251 La Rue France
P. O. Box 53597
Lafayette, LA 70505
Telephone: 337-233-5832
Perrin@plddo.com


/s/ Kevin Malone
**KRUPNICK CAMPBELL MALONE ET AL**
Kevin Malone
12 SE 7th St #801
Ft. Lauderdale, FL 33301
Telephone: 954-763-8181
Kmalone@krupnicklaw.com

7

## CERTIFICATE OF SERVICE

  I hereby certify that on this 21st day of August, 2018, a copy of the above and foregoing has been electronically filed with the Clerk of Court using the CM/ECF system, which provides an electronic service notification to all counsel of record registered as CM/ECF users.

                /s/SCOTT R. BICKFORD