**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| This document relates to: *The Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corp., et al.* Case No. 1:18-op-45749 | Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT**
**OF DISTRIBUTORS' MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT ......................................................................................... 1

LEGAL STANDARD........................................................................................................ 2

ARGUMENT .................................................................................................................... 3

I.      THE RICO CLAIM SHOULD BE DISMISSED................................................... 3

      A.     The Tribe Fails To Allege a Direct Injury. ................................................ 3

      B.     The Tribe May Not Recover for Damages That Flow from Personal Injuries. ................................................................................................... 4

      C.     The Tribe May Not Recover for Damages Incurred as a Sovereign...................... 6

      D.     The Tribe Fails To Allege Predicate Acts by Distributors. .................................. 8

      E.     The Tribe Fails To Allege Participation in an Enterprise. .................................... 12

II.     THE STATE-LAW NUISANCE CLAIMS SHOULD BE DISMISSED. ...................... 14

      A.     The Absolute Nuisance Claim Fails. ................................................................... 14

      B.     The Qualified Nuisance Claim Fails.................................................................... 14

            1.     No connection to a property right ............................................................ 15

            2.     No interference with a public right .......................................................... 16

            3.     No proper pleading of negligence ........................................................... 17

III.    THE FEDERAL NUISANCE CLAIM SHOULD BE DISMISSED. .............................. 18

IV.    THE NEGLIGENCE CLAIM SHOULD BE DISMISSED. ........................................... 20

      A.     The Complaint Fails To Allege a Duty Owed by Distributors to the Tribe. ........ 20

            1.     No private right of action ........................................................................ 21

            2.     No negligence *per se*................................................................................ 22

            3.     No common law duty ................................................................................ 23

      B.     The Complaint Fails Plausibly To Allege That Distributors Breached a Duty..................................................................................................................... 24

V.      THE NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE
        DISMISSED. ...................................................................................................... 25

VI.     THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED. .......................... 26

VII.    THE COMMON LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE
        ADEQUATELY TO ALLEGE PROXIMATE CAUSATION. ...................................... 27

VIII.   THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ............................... 28

IX.     THE CONSUMER PROTECTION ACT CLAIM SHOULD BE DISMISSED. ............ 29

CONCLUSION .................................................................................................................... 31

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aaron v. Durrani*,
   2014 WL 996471 (S.D. Ohio Mar. 13, 2014) ............................................................9

*Agema v. City of Allegan*,
   826 F.3d 326 (6th Cir. 2016) ................................................................................2

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
   458 U.S. 592 (1982).........................................................................................7, 30

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ...........................................................................13

*Am. Elec. Power Co. v. Connecticut*,
   564 U.S. 410 (2011)......................................................................................18, 19

*Am. Trucking & Transp. Ins. Co. v. Nelson*,
   2017 WL 3218097 (D. Mont. July 28, 2017) .........................................................28

*Anctil v. Ally Fin., Inc.*,
   998 F. Supp. 2d 127 (S.D.N.Y. 2014), *aff'd in relevant part sub nom. Babb v.
   Capitalsource, Inc.*, 855 F. App'x 66 (2d Cir. 2015)...............................................13

*Arnold v. Alphatec Spine, Inc.*,
   2014 WL 2896838 (S.D. Ohio June 26, 2014) ........................................................9

*Ayres v. Gen. Motors Corp.*,
   234 F.3d 514 (11th Cir. 2000) ............................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................12

*Bible v. United Student Aid Funds, Inc.*,
   799 F.3d 633 (7th Cir. 2015) ..............................................................................13

*Bonadio v. PHH Mortg. Corp.*,
   2014 WL 522784 (S.D.N.Y. Jan. 31, 2014) ..........................................................13

*Boyle v. United States*,
   556 U.S. 938 (2009)...........................................................................................12

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ................................................................................7

*In re Cardizem CD Antitrust Litig.*,
   332 F.3d 896 (6th Cir. 2003) ...................................................................................5

*City of Chicago v. Beretta U.S.A. Corp.*,
   821 N.E.2d 1099 (Ill. 2004) ...................................................................................16

*City of Cleveland v. Ameriquest Mortg. Secs., Inc.*,
   621 F. Supp. 2d 513 (N.D. Ohio 2009) ...................................................................7

*City of Milwaukee v. Illinois*,
   451 U.S. 304 (1981) ................................................................................................19

*City of New York v. BP P.L.C.*,
   2018 WL 3475470 (S.D.N.Y. July 19, 2018) .........................................................19

*Combs v. Int'l Ins. Co.*,
   354 F.3d 568 (6th Cir. 2004) .................................................................................16

*D.E. & J Ltd. P'ship v. Conaway*,
   284 F. Supp. 2d 719 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir.
   2005) .......................................................................................................................9

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*,
   756 F.3d 917 (6th Cir. 2014) ...................................................................................3

*Doe v. Roe*,
   958 F.2d 763 (7th Cir. 1992) ...................................................................................4

*EEOC v. Nw. Airlines, Inc.*,
   188 F.3d 695 (6th Cir. 1999) ...................................................................................5

*F.T.C. v. Cyberspace.com LLC*,
   453 F.3d 1196 (9th Cir. 2006) ...............................................................................31

*Grubbs v. Sheakley Grp., Inc.*,
   807 F.3d 785 (6th Cir. 2015) ...................................................................................9

*Gucwa v. Lawley*,
   731 F. App'x 408 (6th Cir. 2018) ............................................................................5

*United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
   842 F.3d 430 (6th Cir. 2016) ...................................................................................3

*Haw. Health & Welfare Tr. Fund for Operating Eng'rs v. Philip Morris, Inc.*,
   52 F. Supp. 2d 1196 (D. Haw. 1999) .......................................................................6

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
   668 F.3d 393 (6th Cir. 2012) ...................................................................................9

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010)......................................................................................3, 4

*Hershy the Tin Man v. Avon Prod., Inc.*,
   1999 WL 33457739 (D. Mont. July 8, 1999) .......................................................27

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992)........................................................................................4

*Hot-Shot Motorworks v. Falicon Crankshaft Components*,
   2014 WL 346435 (N.D. Ohio Jan. 30, 2014).........................................................9

*Inyo Cnty. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*,
   538 U.S. 701 (2003)........................................................................................8

*Jackson v. Sedgwick Claims Management Services,*
   731 F.3d 556 (6th Cir. 2013) ...........................................................................5

*Jiaxi Hu v. Chan*,
   2016 WL 4269065 (S.D. Ohio Aug. 15, 2016)........................................................9

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ..............................................................31

*In re Magnesium Oxide Antitrust Litig.*,
   2011 WL 5008090 (D.N.J. Oct. 20, 2011)...........................................................31

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
   1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .........................................................10

*Michigan Dep't of Treasury v. Fawaz*,
   1988 WL 44736 (6th Cir. May 9, 1988) ...........................................................6, 8

*Michigan v. U.S. Army Corps of Eng'rs*,
   758 F.3d 892 (7th Cir. 2014) .....................................................................18, 19

*Native Village of Kivalina v. ExxonMobil Corp.*,
   696 F.3d 849 (9th Cir. 2012) .........................................................................18

*Nordberg v. Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ............................................................13

*O'Brien v. Nat'l Prop. Analysts Partners*,
   719 F. Supp. 222 (S.D.N.Y. 1989).....................................................................10

*Ore. Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris Inc.*,
   185 F.3d 957 (9th Cir. 1999) .........................................................................30

*Paatalo v. J.P. Morgan Chase Bank, N.A.*,
  2011 WL 13130862 (D. Mont. May 18, 2011)..........................................................9

*Pennsylvania v. New Jersey*,
  426 U.S. 660 (1976)......................................................................................30

*Prater v. Livingston Ave. Child Care, LLC*,
  2015 WL 1439322 (S.D. Ohio Mar. 27, 2015).......................................................9

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) ....................................................................13

*Robins v. Global Fitness Holdings, LLC*,
  838 F. Supp. 2d 631 (N.D. Ohio 2012)...........................................................13

*Ruffato v. EOG Res., Inc.*,
  2007 WL 9709796 (D. Mont. Dec. 7, 2007).....................................................14

*Shetiwy v. Midland Credit Mgmt.*,
  15 F. Supp. 3d 437, 443 (S.D.N.Y. 2014)..........................................................9

*Singh v. NYCTL 2009-A Tr.*,
  683 F. App'x 76 (2d Cir. 2017) ....................................................................10

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
  487 F. Supp. 2d 914 (S.D. Ohio 2007) .............................................................5

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ......................................................................10

*United States v. Daniel*,
  329 F.3d 480 (6th Cir. 2003) ......................................................................11

*United States v. Fowler*,
  535 F.3d 408 (6th Cir. 2008) ......................................................................13

*United States v. Prince*,
  214 F.3d 740 (6th Cir. 2000) ......................................................................11

*United States v. Sadler*,
  750 F.3d 585 (6th Cir. 2014) ......................................................................11

*United States v. Veal*,
  23 F.3d 985 (6th Cir. 1994) ......................................................................11

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
  529 U.S. 765 (2000)......................................................................................8

*In re Vertrue Mktg. & Sales Practices Litig.*,
712 F. Supp. 2d 703 (N.D. Ohio 2010), *aff'd*, 719 F.3d 474 (6th Cir. 2013) ..........................5

*Wall v. Mich. Rental*,
852 F.3d 492 (6th Cir. 2017) ...........................................................................................3

*Welborn v. Bank of N.Y. Mellon Corp.*,
557 F. App'x 383 (5th Cir. 2014) (per curiam) .........................................................6

*Young v. Fed. Home Loan Mortg. Corp.*,
2014 WL 5304966 (D. Mont. Oct. 15, 2014) .........................................................24

## STATE CASES

*Abraham v. Nelson*,
46 P.3d 628 (Mont. 2002) ...............................................................................................27

*Anderson v. ReconTrust Co., N.A.*,
407 P.3d 692 (Mont. 2017) ............................................................................................25

*Barnes v. City of Thompson Falls*,
979 P.2d 1275 (Mont. 1999) ..........................................................................................14

*Bellino v. Tomkins*,
2011 WL 1169489 (Conn. Super. Ct. Mar. 7, 2011) .................................................31

*Belue v. State*,
649 P.2d 752 (Mont. 1982) .............................................................................................14

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
3 N.Y.3d 200 (N.Y. 2004) ..............................................................................................30

*State ex rel. Brown v. Buffalo Rapids Club*,
220 P.2d 1014 (Mont. 1950) ..........................................................................................15

*Doyle v. Clark*,
254 P.3d 570 (Mont. 2011), *superseded by statute on other grounds*,
*Peterson-Tuell v. First Student Transp.*, 339 P.3d 16 (Mont. 2014) ......................22

*Fisher v. Swift Transp. Co.*,
181 P.3d 601 (Mont. 2008) .............................................................................................24

*Fusselman v. Yellowstone Valley Land & Irrigation Co.*,
163 P. 473 (Mont. 1917) .................................................................................................20

*Gibbs v. Gardner*,
80 P.2d 370 (Mont. 1938) ...............................................................................................16

*Gourneau ex rel. Gourneau v. Hamill*,
    311 P.3d 760 (Mont. 2013) ...........................................................................20, 23

*Green v. Hagele*,
    595 P.2d 1159 (Mont. 1979) .................................................................................24

*Hatch v. State Dep't of Highways*,
    887 P.2d 729 (Mont. 1994) ............................................................................20, 24

*Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*,
    743 S.E.2d 808 (S.C. 2013) ..................................................................................31

*Hughes v. Pullman*,
    36 P.3d 339 (Mont. 2001) ....................................................................................29

*Jeffers v. Mont. Power Co.*,
    217 P. 652 (Mont. 1923) ......................................................................................14

*Johnson v. Columbia Falls Aluminum Co., LLC*,
    213 P.3d 789 (Mont. 2009) ..................................................................................21

*Kiger v. State*,
    802 P.2d 1248 (Mont. 1990) ..........................................................................27, 28

*Knight v. City of Missoula*,
    827 P.2d 1270 (Mont. 1992) .................................................................................15

*Krieg v. Massey*,
    781 P.2d 277 (Mont. 1989) ..................................................................................24

*Kurtzenacker v. Davis Surveying, Inc.*,
    278 P.3d 1002 (Mont. 2012) ..........................................................................25, 26

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007) .....................................................................................16

*McCollum v. Kolokotrones*,
    311 P.2d 780 (Mont. 1957) ..................................................................................15

*Poole ex rel. Meyer v. Poole*,
    1 P.3d 936 (Mont. 2004) ......................................................................................23

*Schumacker v. Meridian Oil Co.*,
    956 P.2d 1370 (Mont. 1998) ..........................................................................28, 29

*Simmons Oil Corp. v. Holly Corp.*,
    852 P.2d 523 (Mont. 1993) ..................................................................................29

*State v. Lead Indus. Ass'n*,
    951 A.2d 428 (R.I. 2008)..................................................................................16

*Stipe v. First Interstate Bank-Polson*,
    188 P.3d 1063 (Mont. 2008)............................................................................22

*Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*,
    165 P.3d 1079 (Mont. 2007)............................................................................15

*U.S. Fidelity and Guaranty Co. v. Camp*,
    831 P.2d 586 (Mont. 1992)..............................................................................28

*Volk v. Goeser*,
    367 P.3d 378 (Mont. 2016)..............................................................................26

*W. Drug of Great Falls v. Gosman*,
    374 P.2d 507 (Mont. 1962)..............................................................................21

*White v. Montana*,
    2012 WL 12265748 (Mont. Dist. Ct. Feb. 6, 2012).......................................30

## STATUTES

18 U.S.C. § 1961(1)(D)............................................................................................11

18 U.S.C. § 1964(c) ..........................................................................................4, 6, 8

21 U.S.C. § 823(b)...................................................................................................19

21 U.S.C. § 824........................................................................................................19

21 U.S.C. § 843(a)(4)........................................................................................11, 12

42 U.S.C. § 1983........................................................................................................8

M.C.A. § 27-30-101......................................................................................14, 15, 16

M.C.A. § 30-14-103.................................................................................................30

M.C.A. § 30-14-104.................................................................................................31

M.C.A. § 30-14-111.................................................................................................30

M.C.A. § 30-14-133(1)............................................................................................30

M.C.A. § 37-7-601..................................................................................................23

M.C.A. § 50-32-311................................................................................................21

M.C.A. § 50-32-312 ...................................................................................................21

M.C.A., Title 37, Chapter 7 .......................................................................................21

## OTHER AUTHORITIES

21 C.F.R. § 1301.01 ...................................................................................................23

21 C.F.R. § 1301.74(b) ........................................................................................19, 21

21 C.F.R. §§ 1303.21–.23 ..........................................................................................10

Fed. R. Civ. P. 8(a) .......................................................................................................9

Fed. R. Civ. P. 9(b) ...................................................................................................9, 31

Fed. R. Civ. P. 12(b)(6) .................................................................................................2

Mont. Admin. R. 24.174.1201 .....................................................................................21

Restatement (Second) of Torts § 821B cmt. g ............................................................17

15 Wright & Miller, *Federal Practice and Procedure* § 3867 n.32 (4th ed.) ................5

Drug Enf't Admin, Quota Applications,
    https://www.deadiversion.usdoj.gov/quotas/quota_apps.htm ..................................10

Defendants AmerisourceBergen Drug Corporation ("ABDC"), Cardinal Health, Inc., and McKesson Corporation (collectively, "Distributors") move to dismiss the First Amended Complaint ("Complaint"), dated August 3, 2018, and submit this brief in support of the motion.

## PRELIMINARY STATEMENT

The problem of opioid abuse is real, but the attempt by the Blackfeet Tribe of the Blackfeet Indian Reservation (the "Tribe") to fix liability on Distributors—who neither promote opioids to doctors nor provide them to patients—is misplaced.

The gist of the Complaint is that the "Marketing Defendants"—i.e., Manufacturers—allegedly deceived doctors and the public by marketing opioid medications as non-addictive and effective for treating chronic pain.  The vast majority of its allegations are devoted to detailing a "sophisticated and deceptive marketing strategy" on the part of the Manufacturers, who allegedly made "misrepresentations about the risks and benefits of opioids," resulting in a new standard of care for prescribing opioids and, in turn, the over-prescription of opioids by doctors.[1]  Tellingly, however, the Tribe does not allege that ***Distributors*** made any representations to doctors or patients regarding the safety, efficacy, or addictive properties of opioid medicines—nor could it.  Indeed, the Complaint fails to identify with specificity even a single misrepresentation made by any Distributor.  The Tribe's claims against Distributors thus fail as a matter of law for this reason and others, including:

- **RICO**:  The Tribe does not allege a "direct injury" or an injury to its "business or property," and is not a proper RICO plaintiff.  The Complaint also fails to allege predicate acts of "racketeering activity" or a RICO enterprise involving Distributors.

---

[1]    Compl. ¶¶ 2, 11–12, 144–45; *see, e.g.*, *id.* ¶¶ 115–479, 764–98.

- **Nuisance**:  The Tribe's state-law absolute nuisance claim fails because the distribution of prescription opioids is an activity that is carried out subject to express statutory authorization.  Its state-law qualified nuisance claim fails because the Complaint does not adequately allege (i) interference with a property interest, (ii) interference with a public right, or (iii) that Distributors were negligent.  Its federal common-law claim is preempted by the federal regulatory scheme governing the distribution of controlled substances.

- **Negligence and negligent misrepresentation**:  The duty to monitor and report suspicious orders is a regulatory duty for which there is no private right of action and which is unknown at common law.  In addition, Distributors owe no duty to the Tribe. Furthermore, the Complaint fails adequately to allege that Distributors made any false statements on which they intended the Tribe to rely.

- **Unjust enrichment**:  The claim is derivative and inadequately pled; Distributors were not unjustly enriched by selling medications to their pharmacy customers at contracted prices.

- **Civil conspiracy**:  The Tribe has not pled with the requisite specificity either an agreement or unlawful acts.

- **Deceptive Trade Practices**: The Tribe lacks standing and asserts no actionable violation of Montana's consumer fraud statute.

## LEGAL STANDARD

The Court should grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where "a litigant" fails to "allege enough facts to make it plausible that the defendant bears legal liability."  *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016).  Mere

2

"conclusory statements" or "naked assertions devoid of further factual enhancement" do not meet this standard, *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 932 (6th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), nor do "legal conclusions masquerading as factual allegations," *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 435 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 69 (2017).

For claims sounding in fraud, the burden is higher.  To meet Rule 9(b)'s particularity requirement for pleading fraud, a plaintiff must allege "the time, place, and content of the alleged misrepresentation."  *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017).

## ARGUMENT

### I.    THE RICO CLAIM SHOULD BE DISMISSED.

#### A.    The Tribe Fails To Allege a Direct Injury.

The Tribe does not plead that Distributors' alleged conduct was a ***direct*** cause of its purported injuries—nor could it.  Under established precedent, that failure forecloses its RICO claims.  *See* Summit Br., Dkt. 491-1 at Part I.B.

A RICO plaintiff must allege that a RICO "predicate act" was the proximate cause of the plaintiff's injury.  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).  This means that a plaintiff must allege a "direct relation between the injury asserted and the injurious conduct alleged."  *Id.*  "A link that is too remote, purely contingent, or indirec[t] is insufficient."  *Id.* (alteration in original).  Theories of causation cannot "***go beyond the first step***."  *Id.* at 10–11.[2]

---

[2]    Unless otherwise noted, this Memorandum adds all emphasis in quotations and omits citations and internal quotation marks.

The Tribe does not allege the required "direct causal connection" between its claimed injury and the Distributors' purported predicate acts.  *Id.* at 17–18.  The Tribe's damages allegedly consist of healthcare costs, emergency response costs, and lost tax revenue.  *See, e.g.*, Compl. ¶ 883.  But the Complaint contains no allegations suggesting that Distributors' alleged predicate acts (i.e., purported failures of reporting to state and federal regulators) were the ***direct*** cause of the Tribe's harm—nor could it.  No injury to any individual opioid user, and thus no costs to the Tribe, could possibly be incurred unless—sometime after Distributors delivered the medicines to pharmacies—a doctor wrote a prescription that should not have been written, a pharmacist dispensed the drug without presentation of a legitimate prescription, a patient sought to obtain the drug without a legitimate medical need, or a third party improperly obtained the drug from a patient.  Thus, the link between the Tribe's unreimbursed costs—which were "purely contingent on the harm suffered by" the prescription opioid users—and Distributors' alleged non-reporting of pharmacy orders "is too remote."  *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 271 (1992).

For substantially the reasons explained in Distributors' *Summit County* brief, the remote and derivative injuries alleged in the Hospital's Complaint fail to satisfy the direct injury requirement applicable to its RICO claims.  *See* Summit Br., Dkt. 491-1 at Part I.B.

### B.    The Tribe May Not Recover for Damages That Flow from Personal Injuries.

RICO creates a cause of action only for injury to "business or property."  18 U.S.C. § 1964(c).  "[C]ourts construing this language" unanimously hold that "[t]he terms 'business or property' are … words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom."  *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992).

The Sixth Circuit's en banc decision in *Jackson v. Sedgwick Claims Management Services* embraced this principle and is controlling.  *See* 731 F.3d 556, 562 (6th Cir. 2013).[3] There, the plaintiffs alleged that defendants were participants in a scheme to deny workers' compensation benefits to employees who suffered on-the-job injuries.  *Id.* at 565.  The Court rejected the argument that the plaintiffs' economic injuries, i.e., the loss of workers' compensation benefits, constituted an injury to "business or property," holding that "both personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under [RICO]."  *Id.* at 565–66.  Because the plaintiffs' pecuniary losses were "a consequence of their personal injuries," those losses did not give plaintiffs a basis to sue under RICO.  *Id.* at 566.

*Jackson* compels the same result here:  The Tribe's claimed damages flow from the alleged personal injuries of its members.  *See, e.g.*, Compl. ¶ 883.  But for those individuals' use or misuse of prescription opioids, the Tribe would not suffer the increased health care, law enforcement, or other expenses that constitute its claimed injuries.  Under established law, because such damages flow from personal injuries, they are not injuries to "business or property" for purposes of RICO.  *See, e.g.*, *Gucwa v. Lawley*, 731 F. App'x 408, 412 (6th Cir. 2018) ("Even though personal injuries may lead to monetary damages, such personal injuries and their associated pecuniary losses—including medical expenses—do not confer relief under

---

[3]  The law of the Sixth Circuit applies to the Tribe's federal RICO claim.  *See, e.g.*, 15 Wright & Miller, *Federal Practice and Procedure* § 3867 n.32 (4th ed.) (collecting cases); *see also In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 912 n.17 (6th Cir. 2003) (applying law of the transferee court in an MDL); *EEOC v. Nw. Airlines, Inc.*, 188 F.3d 695, 700 (6th Cir. 1999) (adopting "the prevailing view … that the venue of appeal determines choice of law on federal issues"); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 487 F. Supp. 2d 914, 920 (S.D. Ohio 2007) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."); *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 712 n.4 (N.D. Ohio 2010) ("In an MDL proceeding, the transferee court applies the federal law of the circuit in which it is located."), *aff'd*, 719 F.3d 474 (6th Cir. 2013).

§ 1964(c)."); *Haw. Health & Welfare Tr. Fund for Operating Eng'rs v. Philip Morris, Inc.*, 52 F. Supp. 2d 1196, 1200 (D. Haw. 1999) (increased costs to third-party payors arising out of their members' tobacco use was not an injury to "business or property" because "the injury is, in all material respects, personal injury to the smokers").[4]

> **C.     The Tribe May Not Recover for Damages Incurred as a Sovereign.**

A claim under RICO may be brought only by a "person injured in [its] business or property."  18 U.S.C. § 1964(c).  The Tribe's claim to recover monies spent in its sovereign capacity on items such as health care or law enforcement is not cognizable under RICO for two reasons.  First, injuries sustained by the Tribe in performing governmental functions or to vindicate its sovereign or quasi-sovereign interests do not constitute injuries to business or property under RICO.  Second, the Tribe is not a "person" for purposes of such a claim.

"When a government sues under the civil RICO statute, the 'business or property' element requires that the injury 'refer to *commercial* interests or enterprises.'"  *Welborn v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383, 387 (5th Cir. 2014) (per curiam) (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264 (1972)).  When the government acts in its sovereign capacity, it lacks standing to sue under RICO.  Thus, a "government cannot claim damages for general injury to the economy or 'to the Government's ability to carry out its functions.'"  *Id.*  In other words, the alleged injury must arise from "commercial activity," not "the provision of a public service."  *Id.*

---

[4]     The Tribe also seeks to recover lost tax revenue, Compl. ¶ 883(k), but the Sixth Circuit has held that is not a cognizable injury to business or property.  *See Michigan Dep't of Treasury v. Fawaz*, 1988 WL 44736, at *2 (6th Cir. May 9, 1988) (holding that tax revenue is not RICO "property" lest district courts become "collection agencies for unpaid state taxes").

*Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008), is instructive. There, a county alleged an illegal scheme of hiring undocumented workers and asserted as a RICO injury "additional monies … expended on public health care and law enforcement services for [those] undocumented immigrants." *Id.* at 971. The Ninth Circuit rejected that assertion, explaining that when "a governmental body acts in its sovereign or quasi-sovereign capacity, seeking to enforce the laws or promote the public well-being, it cannot claim to have been 'injured in [its] … property' for RICO purposes.'" *Id.* at 976 (alterations in original).

The reasoning of these cases applies with full force here. The Tribe's claimed injuries are identical to those alleged in *Canyon County*—increased healthcare and law enforcement costs. *Compare* 519 F.3d at 971, *with* Compl. ¶ 883 (identifying "injuries" as including "costs" for "medical care" and "law enforcement"). These alleged injuries do not arise from the Tribe's participation in a market or commercial transaction, but from the performance of governmental functions. As in *Canyon County*, the gist of the Tribe's Complaint is that it was forced to "spend money" on providing additional public services as a result of Distributors' alleged misconduct. *Id.* at 975. Thus, the Tribe "may not claim th[os]e costs as damages to its property for purposes of civil RICO standing." *Id.* at 979. "[T]he very nature of [the Tribe's] claim—which seeks relief for an alleged public nuisance—betrays any contention that its lawsuit is aimed at vindicating the [Tribe's] private interests …." *City of Cleveland v. Ameriquest Mortg. Secs., Inc.*, 621 F. Supp. 2d 513, 519 (N.D. Ohio 2009) (emphasis in original); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601–02 (1982) (distinguishing quasi-sovereign interests from "proprietary interests" such as "own[ing] land or participat[ing] in a business venture").

This conclusion is reinforced by RICO's requirement that claims for business or property injury be brought by "person[s]." 18 U.S.C. § 1964(c). The Tribe alleges that it is a sovereign. Compl. ¶ 30. The Supreme Court has established a "presumption that 'person' does not include [a] sovereign," which may be "disregarded only upon some affirmative showing of statutory intent to the contrary." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 766 (2000). Moreover, "qualification of a sovereign as a 'person' who may maintain a particular claim for relief depends not upon a bare analysis of the word 'person,' but on the legislative environment in which the word appears." *Inyo County v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 711 (2003). Thus, for example, a government may qualify as a person where it brings a claim as a participant in a commercial transaction, i.e., as a "purchaser," but not where it seeks to vindicate a "sovereign" interest. *See id.* (holding that an Indian tribe is not a "person" for purposes of 42 U.S.C. § 1983). Here, the Tribe does not seek to recover damages it incurred in its capacity as a market participant. Rather, as discussed above, it seeks to recover in its sovereign capacity, for monies spent providing governmental services to its members.[5]

### D. The Tribe Fails To Allege Predicate Acts by Distributors.

The Tribe alleges that Distributors committed RICO predicate acts of (1) mail and wire fraud, and (2) violations of the CSA. For the reasons explained below, none of those allegations has merit.

***Mail and Wire Fraud.*** The principal RICO predicate acts alleged in the Complaint are mail and wire fraud. *See, e.g.*, Compl. ¶¶ 861, 864, 866. Under established law, "predicate acts

---

[5]  The Tribe may rely on *Fawaz*, 1988 WL 44736, at *1, to argue that it is a RICO "person" because it is "capable of holding a legal or beneficial interest in property," but *Fawaz* predates the Supreme Court *Inyo County* decision.

of mail or wire fraud must be pled with particularity pursuant to Rule 9(b)."  *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 804 n.5 (6th Cir. 2015).  Because the Complaint does not satisfy this requirement, the mail and wire fraud allegations fail as a matter of law.

To plead RICO predicate acts of mail or wire fraud with sufficient particularity, "a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012); *see also Aaron v. Durrani*, 2014 WL 996471, at *6 (S.D. Ohio Mar. 13, 2014).  The Complaint, however, wholly fails to identify by date, speaker, or content even one alleged predicate act, as Rule 9(b) requires.[6]  Moreover, it fails to attribute any of the alleged predicate acts to any specific defendant, instead resorting entirely to impermissible "group pleading."[7]  The Tribe "cannot satisfy Rule 9(b) by masking the lack of factual allegations

---

[6]  *See, e.g.*, *Paatalo v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 13130862, at *10 (D. Mont. May 18, 2011) ("pleader must state the time, place, and specific content of the false representations as well as the parties to the misrepresentation"); *Heinrich*, 668 F.3d at 404 (dismissing complaint for failure to identify fraudulent statement or indicate "where and when the [fraudulent] statements were made"); *Prater v. Livingston Ave. Child Care, LLC*, 2015 WL 1439322, at *5 (S.D. Ohio Mar. 27, 2015) (same); *Arnold v. Alphatec Spine, Inc.*, 2014 WL 2896838, at *12 (S.D. Ohio June 26, 2014) (same); *Hot-Shot Motorworks v. Falicon Crankshaft Components*, 2014 WL 346435, at *5 (N.D. Ohio Jan. 30, 2014) (dismissing complaint for failure to indicate "who made the allegedly false statements" or where and when they were made (emphasis omitted)).

[7]  *D.E. & J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir. 2005). Group pleading "fails to meet … [Rule] 9(b)'s specificity requirements." *Id.*; *see also Jiaxi Hu v. Chan*, 2016 WL 4269065, at *6 (S.D. Ohio Aug. 15, 2016) ("Plaintiffs cannot meet their burden under Rule 9(b) by relying, as they do, on group pleading."); *Arnold v. Alphatec Spine, Inc.*, 2014 WL 2896838, at *4 (S.D. Ohio June 26, 2014) ("Plaintiffs' reference to 'Defendants' collectively fails to specify the conduct attributable to each party and is, therefore, insufficient to meet Rule 8's notice requirement."); *Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 443 (S.D.N.Y. 2014) ("When bringing a RICO claim against multiple defendants, the plaintiff must allege that *each defendant* committed two or more predicate acts.").

9

against each defendant through broad allegations which combine the acts of several defendants to create the impression that all engaged in every aspect of the alleged fraud." *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989). Indeed, even the less onerous "Rule 8(a) pleading requires plaintiffs to identify the specific defendant charged with committing a particular predicate act, rather than collectivizing a group of defendants as [the Tribe has] done here." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 WL 88129, at *15 (S.D.N.Y. Mar. 15, 1994). Under settled law, the Tribe's generic and undifferentiated allegations of mail and wire fraud are insufficient.

The Complaint alleges in conclusory fashion that Distributors lobbied the federal government to increase the quota for prescription opioids and failed to report suspicious orders to DEA, *e.g.*, Compl. ¶¶ 803, 807, 813(*l*), but those allegations cannot give rise to a RICO claim against Distributors for several reasons. First, Distributors play no role in the setting of quotas for controlled substances; those quotas are set by DEA based upon applications submitted by Manufacturers.[8] Second, lobbying, the filing of amicus briefs, and other activities designed to influence the government are immunized under the *Noerr-Pennington* doctrine and cannot serve as RICO predicate acts.[9] Third, regulatory reporting failures—such as Distributors' alleged failure to report suspicious orders to DEA—cannot be the basis of a civil RICO claim.[10] And,

---

[8]  21 C.F.R. §§ 1303.21–.23; *see generally* Drug Enf't Admin, Quota Applications, https://www.deadiversion.usdoj.gov/quotas/quota_apps.htm.

[9]  *See, e.g.*, *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017) (*Noerr Pennington* "protects efforts to influence governmental action through litigation and lobbying."); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) (allegedly false statements in made in the course of petitioning activity cannot serve as RICO predicate acts of mail or wire fraud).

[10]  *See Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 521–25 (11th Cir. 2000) (alleged failure to make required Safety Act reports to government not actionable under mail and wire fraud statutes).

finally, the Complaint wholly fails to identify even a single pharmacy that ever placed a "suspicious order"—let alone to tie that order to any harm suffered by the Tribe.

The Tribe's fraud allegations also fail for a separate reason:  the mail and wire fraud statutes only "punish[] … schemes intended 'to deprive [people] of their money or property.'" *United States v. Sadler*, 750 F.3d 585, 590 (6th Cir. 2014); *accord United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (explaining that wire fraud requires "intent to deprive a victim of money or property"); *United States v. Prince*, 214 F.3d 740, 748 (6th Cir. 2000) (same).  The Complaint contains no well-pled factual allegation that any Distributor used the mail or wires to deprive someone of money or property—let alone does it identify such person or entity.  For this reason, too, the County has failed to allege predicate acts of mail or wire fraud.

*Controlled Substances Act Violations.*  The Tribe's assertion that violations of 21 U.S.C. § 843(a)(4) constitute RICO predicate acts, *see* Compl. ¶¶ 864, 866, borders on the frivolous. Section 843(a)(4) makes it unlawful to "furnish false or fraudulent material information in, or omit any material information from, ***any application, report, record, or other document required to be made, kept, or filed***."  The Tribe asserts that a violation of that record-keeping provision falls within the RICO statute's ambit, which includes among its enumerated predicate acts the "felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance."  18 U.S.C. § 1961(1)(D).  But violations of Section 843(a)(4) do not fall within that language because they consist only of "furnish[ing]" false information in, or "omit[ting]" material information from, certain "report[s]" or "record[s]"—not "buying, selling, or otherwise dealing" in controlled substances.  21 U.S.C. § 843(a)(4).  While Section 1961(1)(D) includes felonious concealment, that provision relates to the concealment of drugs themselves, not to alleged recordkeeping violations.  *See United States v. Veal*, 23 F.3d

985, 988 (6th Cir. 1994) (holding that ultimate fate of controlled substances, i.e., whether they were diverted to illegal use, has no bearing on Section 843(a)(4) "recordkeeping charges").

### E.    The Tribe Fails To Allege Participation in an Enterprise.

In order to plead the existence of an enterprise, a plaintiff must allege (1) a shared "purpose" and (2) "relationships among those associated with the enterprise."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  While the Complaint alleges that the Manufacturers conspired with one another to increase the demand for opioids, it does not allege that ***Distributors*** did so. *E.g.*, Compl. ¶ 10.[11]  The Complaint also alleges that Distributors sought to increase their profits by distributing an "increased volume of opioid[s]," *id.* ¶ 858, but allegations of parallel, profit-seeking activity among competitors is insufficient to establish the existence of a RICO enterprise.[12]    Nor   do   the   mere   allegations   that   Distributors   shared   a   trade

---

[11]    The Tribe strains to assert that Distributors "[a]betted" the Manufactures' "[m]arketing [s]cheme," relying on highly confidential documents that it conspicuously fails to attach to the Complaint. *See* Compl. p. 150 & nn. 190-92.  Distributors respectfully submit that the Court should not credit allegations based upon documents that the Tribe has failed to provide to the Court.  This is especially so here because the Tribe has misrepresented the contents of the documents, Redacted

In the event that the Court elects to consider the Tribe's allegations relating to these documents, Distributors respectfully request that the Court first review the documents themselves in camera, and would be happy to arrange for that review upon request.

[12]    *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (allegations of "parallel conduct" and "conclusory allegation[s] of agreement" are insufficient absent "some further factual (continued…)

association,[13] or had routine business relationships with Manufacturers,[14] give rise to a plausible inference that they were participants in a criminal enterprise.

Moreover, to plead an enterprise, a plaintiff must allege with particularity that each defendant played "some part in *directing* the enterprise's affairs."  *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008).  Here, the Tribe alleges in conclusory terms that the Defendants "worked together" to increase profits by "exponentially expanding a market that the law intended to restrict."  Compl. ¶¶ 475, 799.  But the Complaint is entirely devoid of well-pled factual allegations relating to the conduct of each Distributor that, if true, would support the bare assertion that Distributors "ma[de] decisions on behalf of" an association-in-fact enterprise or "knowingly carr[ied] them out."  *Fowler*, 535 F.3d at 418.

---

enhancement"); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 n.3 (11th Cir. 2016) (noting that because "making money is the purpose of every for-profit corporation," a mere commercial relationship to make profits "is wholly insufficient to establish an association-in-fact enterprise"); *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655–56 (7th Cir. 2015) (distinguishing between "a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest, versus a truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest").

[13] *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295–96 (11th Cir. 2010) ("[P]articipation in trade organizations provides no indication of conspiracy."); *Anctil v. Ally Fin., Inc.*, 998 F. Supp. 2d 127, 142 (S.D.N.Y. 2014) ("[M]embership in a trade association hardly renders plausible the conclusion that … members are functioning as an ongoing, organized, structured [RICO] enterprise."), *aff'd in relevant part sub nom. Babb v. Capitalsource, Inc.*, 855 F. App'x 66, 68 (2d Cir. 2015).

[14] *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 653 (N.D. Ohio 2012) (Polster, J.) ("[R]outine business relationships, without more, are insufficient to establish a RICO claim."); *see Bonadio v. PHH Mortg. Corp.*, 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014) (dismissing RICO claim where plaintiff's "only factual allegations relating to the enterprise are that its members had ongoing business relationships"); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1092 (N.D. Cal. 2006) (enterprise allegations insufficient where based "upon the existence of routine contractual relationships").

## II.    THE STATE-LAW NUISANCE CLAIMS SHOULD BE DISMISSED.

The Tribe brings two Montana state-law nuisance claims—for absolute nuisance and qualified nuisance.  Both fail as a matter of law.

### A.    The Absolute Nuisance Claim Fails.

Distributors cannot be held liable for absolute nuisance because "[n]othing that is done or maintained under the express authority of a statute may be deemed a public or private nuisance." M.C.A. § 27-30-101(2); *Barnes v. City of Thompson Falls*, 979 P.2d 1275, 1279 (Mont. 1999) ("[A] statutorily authorized activity or facility cannot constitute an absolute nuisance as a matter of law"); *see also Ruffato v. EOG Res., Inc.*, 2007 WL 9709796, at *4 (D. Mont. Dec. 7, 2007) (granting summary judgment on absolute nuisance claim because "Defendant properly constructed, used, closed and restored the reserve pits according to … regulations"); *Jeffers v. Mont. Power Co.*, 217 P. 652, 659 (Mont. 1923) (operation of reservoir was "authorized by statute and is a lawful business," thus requiring that plaintiff prove "negligent operation" to recover).  The distribution of prescription opioids is an activity that is carried out subject to express statutory authorization.  Distributors must be registered with the DEA to distribute controlled substances, and can supply only pharmacies that are themselves registered with the DEA and licensed by the State.  Accordingly, licensed distributors, such as defendant Distributors, can be sued, if at all, only for qualified nuisance.  *See also* Summit Br. at Part II.B.2.

### B.    The Qualified Nuisance Claim Fails.

Montana has codified common-law public nuisance.  M.C.A. § 27-30-101 *et seq.*; *Belue v. State*, 649 P.2d 752, 754 (Mont. 1982) (recognizing that Montana's nuisance statutes are "but crystallizations of the common law and are consistent with the general rules which have long been recognized by the courts").  Under these statutes, a nuisance involves conduct that

14

"interfere[s] with the comfortable enjoyment of life or property," M.C.A. § 27-30-101(1), and a plaintiff alleging nuisance must be a "person whose property is injuriously affected or whose personal enjoyment is lessened." *id.* § 27-30-103. Montana's codification of common-law nuisance principles also means that a public nuisance must concern interference with public rights. The Tribe's qualified nuisance claim should be dismissed because it does not involve interference with property or public rights and, in addition, does not rest on well-pled allegations of negligence.

### 1. No connection to a property right

Montana's nuisance statute defines the claim in terms of interference with the "enjoyment of … property," M.C.A. § 27-30-101, and requires a plaintiff to be one whose "property" has been "injuriously affected" by the defendant's actions, *id.* § 27-30-103. The Complaint does not allege, however, that any property of the Tribe has been "injuriously affected" by Distributors' conduct; nor would any such allegation make sense given the nature of Distributors' business, which is to deliver boxes of pharmaceuticals to retail pharmacies.

The Tribe pleads that it has suffered "non-physical property damage, and damage to its proprietary interests," Compl. ¶ 946, by which it means that it has spent money. But Montana case law makes plain that interference with property entails interference with the right of an individual or the public to safely and productively occupy one's own property or make use of public land, rights of way, etc.—for example, (1) noxious land uses, *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1084 (Mont. 2007) (injury caused by benzene spill); (2) public access, *Knight v. City of Missoula*, 827 P.2d 1270, 1272–73 (Mont. 1992) (suit seeking to close poorly maintained street); (3) unsanitary animal enclosures, *McCollum v. Kolokotrones*, 311 P.2d 780, 780 (Mont. 1957) (chicken houses); and (4) locations promoting vice, *State ex rel. Brown v. Buffalo Rapids Club*, 220 P.2d 1014, 1014 (Mont. 1950) (maintenance of illegal slot machines).

Expenditure of money does not satisfy this requirement.  In this respect, Montana is like most states.  Monroe Br., Dkt. 572-1 at Part III; Cabell Br., Dkt. 575-1 at Part II; Broward Br., Dkt. 591-1 at Part III.[15]

What the Tribe alleges is not injury traceable to the misuse of property or interference with its own property, but injury traceable to a ***product*** that was allegedly marketed deceptively.  But there is no Montana precedent for bringing a product-based nuisance claim.  As courts around the country have recognized, such an expansive conception of public-nuisance law would invade the province of products liability and create a "cause of action as to which there are apparently no bounds."  *In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007); *see also, e.g.*, *State v. Lead Indus. Ass'n*, 951 A.2d 428, 456 (R.I. 2008); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004); Summit Br., Dkt. 491-1 at 25 & n.21 (collecting cases).  This court, exercising diversity jurisdiction, should not stretch Montana law to cover new ground.  *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) ("Federal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law.").

### 2.    No interference with a public right

The Tribe acknowledges that a public nuisance claim requires an "unreasonable interference with a right common to the general public."  Compl. ¶ 916; *see Gibbs v. Gardner*, 80 P.2d 370, 373 (Mont. 1938) ("A nuisance is common or public where it affects rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled.").

---

[15]  To be sure, the nuisance statute refers to "interfere[nce] with the comfortable enjoyment *of life* or property."  MCA § 27-30-101.  But the Tribe is not a living being and so cannot claim damages for interference with its "life" or "personal enjoyment."  Although the Tribe's members are "alive" and capable of "personal enjoyment," it disclaims asserting rights derivative of any individual.  Compl. ¶ 954.

Here, however, as in the previous bellwether-briefing cases, the Tribe sues to recover costs that derive solely from the personal injury (in the form of opioid addiction) suffered by some number of its members.  Some level of drug abuse is common to the Tribe, as it is to every community, and the Tribe has expected and budgeted for the public outlays for dealing with that level of abuse.  The "war on drugs," after all, was first declared by President Nixon almost a half-century ago.  What the Tribe complains about is different—the over-prescribing of opioid medications by doctors who, as a community, adopted a new standard of care for prescribing opioids because of allegedly deceptive marketing by the manufacturers of opioids and the resulting, increased levels of addiction by individuals for whom opioids were mis-prescribed at the outset, or prescribed for too long or in too high a dose.  This injury resulting from the mis-prescription of drugs, whether because the drugs lack adequate warnings or are deceptively marketed, is a quintessentially personal injury and, thus, an injury that represents the invasion of a private right.  *See* Restatement (Second) of Torts § 821B cmt. g (defining a private right as "the individual right that everyone has not to be assaulted or defamed or defrauded ***or negligently injured***").

Although the Complaint adopts the verbiage of public right, disclaims recovery of personal injury damages, and denies that its injuries are derivative, the fact is inescapable that the Tribe would have no injury but for the increased number of its members who have suffered personal injury in the form of addiction.  It is the costs flowing from interference with the ***private*** right not to be negligently injured that the Tribe seeks to recover.  Public rights are different, and they are not implicated here.  *See* Summit Br. at Part II.B.1; Monroe Br. at Part III.B.

### 3. No proper pleading of negligence

To sustain a qualified nuisance claim, the Tribe must demonstrate that Distributors acted negligently.  As explained in Part IV, *infra*, it has failed to do so.

17

III.    **THE FEDERAL NUISANCE CLAIM SHOULD BE DISMISSED.**

The Tribe also asserts a claim for nuisance under federal law.  That claim should be dismissed, for any such claim based on the distribution of prescription opioids has been displaced by the Controlled Substances Act.[16]

Federal statutes "displace" federal common law in much the same way that they can preempt state law, except that the standard for displacement is lower.  "Legislative displacement of federal common law does not require the same sort of evidence of a clear and manifest congressional purpose demanded for preemption of state law."  *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 423 (2011).  Instead, a federal statute displaces federal common law if "the statute speaks directly to the question at issue."  *Id.* at 424; *see also Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 856 (9th Cir. 2012) ("If Congress has addressed a federal issue by statute, then there is no gap for federal common law to fill.").

Here, there can be no doubt that the CSA "speaks directly to" Distributors' anti-diversion duties; indeed, it creates them.  The CSA sets forth a comprehensive scheme for regulating the business of controlled substance distribution.  It requires that distributors register with the Department of Justice and sets forth criteria they must meet to achieve and maintain registration.  21 U.S.C. § 823(b).  To sell a controlled substance, a distributor must use certain packaging and labeling, *id.* § 825, and, for Schedule II substances, must use particular order forms, *id.* § 828.  Distributors are obligated under the statute to maintain detailed records of their inventory.  *Id.*

---

[16]    Even if the CSA did not displace any federal common law cause of action, that claim would have to be dismissed for the same reasons the nuisance claim based on state law should be dismissed.  Both federal common law and Montana law are grounded in the same principles.  Compl. ¶ 890; *see supra* Part II; *Michigan v. U.S. Army Corps of Eng'rs*, 758 F.3d 892, 900 (7th Cir. 2014) (recognizing that the "Restatement definition" of public nuisance "has been a common reference point for courts considering cases arising under federal common law").  .

§ 827.  DEA's regulations impose other requirements as well, including the requirement to create a suspicious order monitoring system.  21 C.F.R. § 1301.74(b).  It is the alleged violation of these very duties, along with DEA guidance interpreting them, that frame the Tribe's complaint against Distributors.  *See, e.g.*, Compl. ¶¶ 489, 503–504 (detailing requirements of suspicious order monitoring regulation, 21 C.F.R. § 1301.74(b), and DEA guidance on suspicious order systems).

Given both the breadth of the CSA's regulatory scheme and the fact that it addresses specifically the failings alleged by the Tribe, the test for displacement is met.  In *City of New York v. BP P.L.C.*, 2018 WL 3475470, at *5 (S.D.N.Y. July 19, 2018), the court held that federal common law nuisance claims based on greenhouse gas emissions were displaced because "Congress has expressly delegated to the EPA the determination as to what constitutes a reasonable amount of greenhouse gas emission under the Clean Air Act."  Congress has just as clearly delegated to the Attorney General and, through him, to the DEA the determination of what safeguards wholesale distributors must implement and the aggregate amount of prescription opioids they may sell in order to reduce the risk of diversion.

The CSA also provides a comprehensive set of criminal, civil, and administrative penalties for violation of the Act and its regulations.  *See* 21 U.S.C. § 824 (regulating suspension or revocation of registration); *id.* §§ 841–43 (civil and criminal penalties).  That fact, too, militates in favor of displacement.  *See. Am. Elec. Power*, 564 U.S. at 425 (displacement where Clean Air Act "provides multiple avenues for enforcement" of pollution regulations); *City of Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981) (nuisance claims displaced by Clean Water Act because Congress "has occupied the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency").

19

This comprehensive statutory scheme of the CSA directly addresses distributors' duties and displaces any otherwise applicable federal common law that may exist.

## IV. THE NEGLIGENCE CLAIM SHOULD BE DISMISSED.

A Montana plaintiff must prove four elements to sustain a negligence claim: "(1) duty; (2) breach of duty; (3) causation; and (4) damages." *Hatch v. State Dep't of Highways*, 887 P.2d 729, 732 (Mont. 1994); *see also Gourneau ex rel. Gourneau v. Hamill*, 311 P.3d 760, 762 (Mont. 2013). "It is not sufficient to charge negligence in the abstract," *Fusselman v. Yellowstone Valley Land & Irrigation Co.*, 163 P. 473, 476 (Mont. 1917), and "[w]hether a legal duty is owed is a question of law." *Gourneau*, 311 P.3d at 762. The Tribe's negligence-based claims should be dismissed because the Complaint fails adequately to identify (1) a duty that Distributors owe to the Tribe or (2) any breach by Distributors.[17]

### A. The Complaint Fails To Allege a Duty Owed by Distributors to the Tribe.

The gravamen of the Tribe's Complaint is that Distributors breached a duty to monitor and report suspicious pharmacy orders. *See* Compl. ¶¶ 1006–22. As explained in Distributors' *Summit County* brief, this duty is the exclusive creation of a federal regulation, and there is no private right of action to enforce it. *See* Dkt. 491-1 at Part III.B.1. Thus, only if there is a pre-existing, parallel common-law duty to report or halt shipment of suspicious orders can the Tribe sue in negligence. But no such duty has ever been recognized under Montana law. As such, the Tribe's negligence claim is an improper attempt to circumvent the prohibition on private enforcement of the Controlled Substances Act ("CSA")—a prohibition that reflects the

---

[17] For substantially the reasons explained below, the Tribe also fails to plead proximate causation. *See infra* Part VII.

determination of Congress that enforcement should be exercised solely by the Attorney General and the DEA.

### 1.    No private right of action

The source of Distributors' alleged duty to report or halt suspicious orders is 21 C.F.R. § 1301.74(b), an implementing regulation of the federal CSA.  The Tribe also purports to base its claims on the Montana analogue to the federal CSA, alleging that the federal suspicious order reporting requirement is incorporated into Montana law by reference.  Compl. ¶¶ 1008–10, 1021–22.  While the Pharmacy chapter of the Montana Code contains laws governing wholesale distributors of prescription pharmaceuticals, neither that Chapter nor any of its implementing regulations contains a suspicious order reporting requirement.  *See* M.C.A., Title 37, Chapter 7. Even if they did, there is no private right of action to enforce Montana's Pharmacy Chapter or Controlled Substances Laws.[18]

The Tribe cannot plead around these prohibitions on private rights of action.  *See, e.g.*, *Johnson v. Columbia Falls Aluminum Co., LLC*, 213 P.3d 789, at *2 (Mont. 2009) (rejecting plaintiff's effort to bring a civil claim based on Montana's Medical Marijuana Act, concluding that "the MMA does not provide an employee with an express or implied private right of action against an employer").  As such, the Tribe can pursue its negligence claim only if it can identify a preexisting common-law duty that mirrors a statutory or regulatory duty.  The Tribe does not

---

[18]   The Montana CSA vests the Montana Board of Pharmacy ("BOP") with sole authority to enforce the statute's provisions by revoking BOP registrations.   *See* M.C.A. §§ 50-32-311, 50-32-312; *see also* Mont. Admin. R. 24.174.1201 (requiring that wholesale distributors be licensed with the BOP, without providing mechanism for private enforcement or suspicious order reporting requirement); *W. Drug of Great Falls v. Gosman*, 374 P.2d 507, 508 (Mont. 1962) (describing procedure whereby BOP suspended a pharmacy's license via a complaint and prosecution filed by the BOP's secretary, which led to an order to show cause hearing and ensuing license suspension, and in which the pharmacy ultimately appealed the Board's decision to the Montana district court).

and cannot do this because the duties it references were created by Congress and the DEA.  For this reason, the negligence claim fails.

### 2.    No negligence *per se*

Nor can the Tribe save its negligence claim by alleging that Distributors were *per se* negligent.  Compl. ¶¶ 1016–28.  Under Montana law, a plaintiff can pursue a claim for negligence *per se* only if there is a private right of action to enforce the statute the defendant allegedly violated.  *See, e.g., Doyle v. Clark*, 254 P.3d 570, 577 (Mont. 2011), *superseded by statute on other grounds*, *Peterson-Tuell v. First Student Transp*., 339 P.3d 16 (Mont. 2014).  "In other words, if the statute in question may be enforced only by the state, a private individual may not attempt to recover for violation of the statute under a negligence per se claim."  *Id.*  As explained, there is no private right of action to enforce the regulations the Tribe cites.

Moreover, the Tribe cannot satisfy the elements of negligence *per se*.  Under Montana law, "[a] plaintiff must establish five elements to bring a negligence per se claim: (1) that the defendant violated a particular statute; (2) that the statute was enacted to protect a specific class of persons; (3) that the plaintiff is a member of the class; (4) that the plaintiff's injury is the kind of injury that the statute was enacted to prevent; and (5) that the statute was intended to regulate members of the defendant's class."  *Stipe v. First Interstate Bank-Polson*, 188 P.3d 1063, 1066 (Mont. 2008).  Other than a conclusory allegation, *see* Compl. ¶ 1021, the Complaint does not and cannot demonstrate that the federal and state regulations it cites—which provide general schemes for the licensing of wholesale distributors and which are enforced and administered only by the DEA or the Montana Board of Pharmacy—were enacted to protect an Indian tribe from medical, law enforcement, and other costs incurred as a result of drug addiction, overdose,

and death by its own members.[19]  For these reasons, the Tribe fails to state a viable claim for

negligence *per se* under Montana law.

### 3.      No common law duty

Because the Tribe cannot base its negligence claim on Distributors' alleged violations of

regulations, it can pursue this claim only if it can identify a pre-existing, parallel common-law

duty to monitor pharmacy orders and to report or halt suspicious opioid orders.  It cannot identify

any such duty or any case recognizing such a duty.

Under Montana law, "[w]hether a party owes a legal duty depends largely on whether the

allegedly negligent act was foreseeable."  *Gourneau*, 311 P.3d at 762.  "[I]t is axiomatic that in

the absence of foreseeability, there is no duty and in the absence of duty, there is no negligence."

*Poole ex rel. Meyer v. Poole*, 1 P.3d 936, 939 (Mont. 2004).  The Complaint fails to allege any

harm to the Tribe that was "foreseeable" to Distributors, nor could it.  As explained above, the

Tribe contends that Manufacturers' marketing campaign altered the way the medical community

understood opioid medications and prescribed them.  *See supra* pp. 1, 17.  Allegedly deceived

into believing that opioids could be prescribed for chronic pain on a long-term basis, and at

increasingly higher doses, doctors over-prescribed the medications.  The DEA, in turn, viewed

the upward trajectory of opioid prescriptions as reflecting a greater legitimate medical need for

the drugs, and it increased the production quota.  If harm to the Tribe was not foreseeable to the

DEA—if, indeed, the DEA understood increased prescriptions and increased pharmacy orders as

---

[19]  *See, e.g.*, 21 C.F.R. § 1301.01 (describing scope of controlled substances regulations as to
provide "[p]rocedures governing the registration of manufacturers, distributors, dispensers,
importers, and exporters of controlled substances" generally); M.C.A. § 37-7-601 ("The
purpose of this part is … provid[e] minimum standards, terms, and conditions for licensing
by the department of persons or entities engaged in the wholesale distribution, third-party
logistics, manufacturing, or repackaging of prescription drugs.").

a sign of increased legitimate medical need—then it was not foreseeable to Distributors, *according to the Tribes' own theory of liability*.

In addition, while "the common law may impose additional, special duties," those duties are imposed only "based upon [a] relationship" between the parties.  *Fisher v. Swift Transp. Co.*, 181 P.3d 601, 606 (Mont. 2008).  The Complaint makes clear that there is no relationship between any Distributor and the Tribe, and there is thus no basis for imposing any "special" duty.  *See, e.g.*, *Young v. Fed. Home Loan Mortg. Corp.*, 2014 WL 5304966, at *4 (D. Mont. Oct. 15, 2014) (finding that real estate agent owed no common-law duty of care in premises liability action where the defendants "had no discernable relationship with either the Property or Plaintiff").

Finally, the Complaint asserts that the Tribe's alleged injuries are the direct result of the conduct of other parties in the opioid distribution chain:  physicians who unscrupulously prescribed opioids to Tribe members, pharmacies that dispensed those prescriptions, and manufacturers that allegedly engaged in a misleading marketing campaign.  Distributors have no duty to control the conduct of any of these entities.  *See, e.g., Green v. Hagele*, 595 P.2d 1159, 1161 (Mont. 1979) ("It is not negligence to fail to anticipate injury which can come about only as a result of the negligence of another."); *Krieg v. Massey*, 781 P.2d 277, 279 (Mont. 1989) ("[A] person is not liable for the actions of another and is under no duty to protect another from harm in the absence of a special relationship of custody or control").  And, without that conduct, there would be no injury to the Tribe.

### B.     The Complaint Fails Plausibly To Allege That Distributors Breached a Duty.

As an element of its negligence claim, the Tribe must establish that Distributors breached a duty to it.  *Hatch*, 887 P.2d at 732.  The Complaint fails to allege any facts suggesting that Distributors breached their purported duty to report and halt suspicious opioid orders:  it does not

24

identify any pharmacy that placed excessive orders, and it does not identify any specific order that Distributors should have reviewed or refused to fill, let alone tie any such order to the Tribe's alleged injuries.  For this reason, too, the negligence claim fails as a matter of law.

## V.     THE NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED.

To state a claim for negligent misrepresentation under Montana law, a plaintiff must demonstrate that:

> 1) the defendant made a representation as to a past or existing material fact;
>
> 2) the representation must have been untrue;
>
> 3) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;
>
> 4) the representation must have been made with the intent to induce the plaintiff to rely on it;
>
> 5) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation, and it must have been justified in relying on the representation;
>
> 6) the plaintiff, as a result of his or her reliance, sustained damage.

*Kurtzenacker v. Davis Surveying, Inc.*, 278 P.3d 1002, 1007–08 (Mont. 2012); *see also Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 699–700 (Mont. 2017).

Here, while the Complaint sometimes refers generically to "Defendants," it elsewhere makes clear that Manufacturers—not Distributors—are the parties that allegedly made misrepresentations regarding the "risks" and "benefits" of opioid medications.  *E.g.*, Compl. ¶ 1038.  The Complaint does not identify even a single misrepresentation by Distributors, let alone a misrepresentation directed at the Tribe by Distributors.  The Tribe thus fails adequately to allege either an "untrue" representation by Distributors or a representation on which

Distributors intended the Tribe to rely.  Moreover, the Tribe fails to allege that its purported injuries occurred "as a result of [its] reliance" on Distributors' alleged misrepresentations.  *See Kurtzenacker*, 278 P.3d at 1008.  For all these reasons, the negligent misrepresentation claim should be dismissed.

## VI.     THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

The elements of a claim for unjust enrichment are "(1) a benefit conferred upon a defendant by another; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under such circumstances that would make it inequitable for the defendant to retain the benefit without payment of its value." *Volk v. Goeser*, 367 P.3d 378, 389 (Mont. 2016).  The Complaint fails adequately to plead this claim against Distributors.

First, the Complaint does not plausibly allege that the Tribe conferred any benefit upon Distributors.  Instead, the Complaint relies on vague statements about "Defendants" as a group, asserting that the Tribe "has expended substantial amounts of money in an effort to remedy or mitigate the societal harms caused by Defendants' conduct," including on "the provision of healthcare services and treatment services to people who use opioids," and that "[t]hese expenditures have helped sustain Defendants' businesses."  Compl. ¶¶ 1074–76.  These allegations are entirely conclusory, and they fail to distinguish between Distributors and other parties in the supply chain or to elucidate any benefit that the Tribe allegedly conferred upon Distributors.

Second, the crux of the Tribe's unjust enrichment clam is that the Tribe "conferred a benefit" on Distributors "by paying for [their] externalities."  *Id.* ¶ 1077.  For the reasons explained in Distributors' prior briefs, the Tribe's "externality" theory fails as a matter of law. *See, e.g.*, Chicago Br., Dkt. 571-1 at Part V; Chicago Reply, Dkt. 817 at Part V.

Third, the Tribe's unjust enrichment claim is entirely derivative of its other, legally deficient claims, and so should be dismissed along with those claims. *See, e.g.*, *Hershy the Tin Man v. Avon Prod., Inc.*, 1999 WL 33457739, at *2, *6 (D. Mont. July 8, 1999) (describing plaintiff's "claim for unjust enrichment [as] derivative of the trademark infringement claim" and therefore dismissing the unjust enrichment claim for the same reasons:  "Since all other claims are derivative of the trademark or trade-dress infringement claims, I likewise find them to be without merit.").

## VII.  THE COMMON LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE ADEQUATELY TO ALLEGE PROXIMATE CAUSATION.

The Tribe's common-law claims require the Tribe to allege causation.  To meet this requirement, the Tribe must allege both that the Distributors' conduct was a cause-in-fact of its injuries, *Abraham v. Nelson*, 46 P.3d 628, 631 (Mont. 2002), and that the intervening unlawful and negligent conduct of numerous other actors—conduct alleged by the Tribe itself—was reasonably foreseeable to Distributors.  *Kiger v. State*, 802 P.2d 1248, 1251 (Mont. 1990). Causation may be determined as a matter of law when "reasonable minds could reach but one conclusion" on whether the required elements exist.  *Id.*

Here, the Complaint fails both requirements.  First, for the reasons explained above, *supra* Part IV, the Tribe fails to allege that the Distributors' conduct was a cause-in-fact of its harm.  What allegedly caused the economic burden on the Tribe was an increase in addiction, which in turn was allegedly caused by a dramatic increase in the prescribing of opioid medications, which in yet another turn was caused by the sea-change in prescribing practices, which in final turn was allegedly caused by Manufacturers' allegedly deceptive marketing campaign.  Compl. ¶¶ 10–13, 115, 144–146.  If that campaign misled doctors to prescribe the medications to more patients for longer durations at higher doses, but they did so in good faith

27

(as the Complaint suggests), then neither the pharmacies' conduct in filling the prescriptions nor Distributors' conduct in supplying the pharmacies was the cause-in-fact of the Tribe's injury.

Second, to the extent that diversion of prescriptions, not simply over-prescribing pursuant to a new standard of care, accounts for some measure of the Tribe's injury, then the intervening unlawful acts of others break the chain of causation.  When a Distributor delivers a medicine to a licensed pharmacy, the medicine sits on the shelf.  It has the capacity to help, or to harm, only after a doctor prescribes it and a pharmacy dispenses it.  When diversion (i.e., the drug's transfer to someone other than the person for whom it was prescribed) occurs, it does so only after multiple actors intervene—a thief steals the medicine, a legitimate patient illicitly sells it, or a patient's relative grabs it out of the medicine cabinet.  Given this chain of events, "there are too many 'what ifs' that are superseding events that break the chain of causation."  *Kiger*, 802 P.2d at 1251 (state's actions not proximate cause of parolee's criminal assault); *see also U.S. Fidelity and Guaranty Co. v. Camp*, 831 P.2d 586, 590 (Mont. 1992) (negligent actions by inmate on work release who starting fire "were not reasonably foreseeable and act as supervening causes of appellant's injury").  Accordingly, the Tribe's common-law claims should be dismissed.  *See* Summit Br., Dkt. 491–1 at Part IV.C.

## VIII.   THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

The essential elements of a civil conspiracy under Montana law are "(1) two or more persons … ; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373 (Mont. 1998); *accord Am. Trucking & Transp. Ins. Co. v. Nelson*, 2017 WL 3218097, at *10 (D. Mont. July 28, 2017).  The Tribe's civil conspiracy claim fails because the Complaint does not adequately allege the existence of a meeting of the minds; the performance of unlawful, overt acts; or proximate causation.

28

First, the Tribe fails to allege plausibly that the defendants had a "meeting of the minds" on the alleged conspiracy.  *Schumacker*, 956 P.2d at 1373.  The Tribe alleges that Distributors and other defendants participated in a so-called "Supply Chain Enterprise" designed to increase the distribution and use of opioids.  Compl. ¶ 799.  But the allegations in the Complaint are wholly consistent with parallel conduct and raise no inference of conspiracy.  *See supra* Parts I.D & I.E; *Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 530 (Mont. 1993) ("If the object of an alleged 'conspiracy' is lawful, and the means used to attain that object are lawful, there can be no civil action for conspiracy.").  Accordingly, the Tribe's claim of an unlawful agreement fails.

Second, the Tribe fails to plead any underlying unlawful acts.  *Hughes v. Pullman*, 36 P.3d 339, 344 (Mont. 2001) (dismissing claim for want of an "underlying tort action forming a basis for civil conspiracy").  The Tribe purports to base its conspiracy claim on nuisance and fraud.  Compl. ¶¶ 1088, 1092.  But the Tribe does not assert a fraud claim against Distributors, has not adequately pled that Distributors conspired with the Manufacturers to commit fraud, *see* Summit Br. at Part VI, and, as explained above, does not adequately plead its nuisance claim, *see supra* Parts II & III.

Third, this claim fails because the Tribe has failed to plead proximate causation.  *Schumacker*, 956 P.2d at 1373; *see supra* Parts I.A & VII.

## IX.    THE CONSUMER PROTECTION ACT CLAIM SHOULD BE DISMISSED.

The gravamen of the Tribe's Montana Consumer Protection Act ("MCPA") claim is that Manufacturers made misrepresentations to doctors and patients regarding the safety, efficacy, and addictive properties of opioids.  *E.g.*, Compl. ¶ 1112.  The Complaint, however, does not allege that Distributors made any such misrepresentations.  *Id.*  For several reasons, the Tribe has failed to state a claim against Distributors.

29

First, the Tribe lacks standing. The only parties authorized under the MCPA to assert claims are (1) the Montana Department of Justice; and (2) a "***consumer*** who suffers any ascertainable loss of money or property." *See, e.g.*, M.C.A. §§ 30-14-111, 30-14-133(1). The MCPA defines a "consumer" as "a person who purchases or leases goods … primarily for personal, family, or household purposes." *Id.* § 30-14-102(1). Because the Tribe does not allege that it purchased opioids for personal, family, or household use, its MCPA claim fails as a matter of law. *See, e.g.*, *White v. Montana*, 2012 WL 12265748, at *1 (Mont. Dist. Ct. Feb. 6, 2012) (dismissing MCPA claim because plaintiff was not purchaser of product for personal, family, or household use).[20] Nor can the Tribe salvage its claim by invoking its "*parens patriae* authority." Compl. ¶ 1110. Under settled authority, the Tribe may not invoke its *parens patriae* authority to "litigat[e] as a volunteer the personal claims of its [members]"—such as the claims of any members who were consumers of opioids. *Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976); *see also Alfred L. Snapp & Son, Inc.*, 458 U.S. at 601–02.

Second, the Tribe fails to allege a violation of the MCPA by Distributors. The MCPA prohibits only unfair or deceptive trade practices that occur "in the conduct of any trade or commerce." *See* M.C.A. § 30-14-103. The sole alleged basis for the Tribe's MCPA claim against Distributors is that they fraudulently "omitt[ed] the material fact of [their] failure to monitor, report, and stop the filing of suspicious orders." Compl. ¶ 1113. That allegation does not give rise to an MCPA claim because Distributors' alleged wrongdoing relates not to any

---

[20] *See generally Ore. Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 968 (9th Cir. 1999) ("Th[e] emphasis on direct protection of consumers suggests that the [Oregon] UTPA, like the other statutes that we have discussed, is not intended to provide a cause of action to a non-consumer that is wholly derivative of injury to consumers."); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 208 (N.Y. 2004) (third-party payor lacked standing to bring consumer-protection claim because claimed injury was too remote from the defendant's conduct).

30

business or consumer transaction involving the Tribe, but instead to Distributors' regulatory reporting obligations to DEA.[21]  The claim also fails because the Complaint does not identify **with particularity** even a single misleading statement by Distributors[22]—let alone tie any purported misstatement to an impact on trade or commence **in Montana**, as the MCPA requires.[23]  Finally, the claim fails because the Complaint does not allege that Distributors' purported omissions were "likely to mislead consumers."[24]  Nor could it, given that (i) consumers have no access to Distributors' confidential "suspicious order" reports to DEA, and (ii) it is wholly implausible that Distributors' alleged omissions would have any impact on a consumer's decision whether or not to purchase an opioid medication.

## CONCLUSION

The Tribe's claims against Distributors should be dismissed with prejudice.

---

[21]  *See, e.g.*, *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 743 S.E.2d 808, 816 (S.C. 2013) (holding that identically worded statutory provision applies only to "business or consumer transactions," not regulatory activities); *Bellino v. Tomkins*, 2011 WL 1169489, at *2 (Conn. Super. Ct. Mar. 7, 2011) (holding that plaintiff under identically worded statutory provision "must allege either a business or consumer relationship with the defendant").

[22]  *See, e.g.*, *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 957–58 (C.D. Cal. 2012) (applying Rule 9(b) to MCPA claim "based on defendants' allegedly fraudulent conduct in concealing a purported defect in [a product]").

[23]  *See, e.g.*, *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *25 (D.N.J. Oct. 20, 2011) (holding that the "unlawful conduct [must] affect trade and commerce" *in Montana* for the MCPA to apply).

[24]  *See, e.g.*, *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006) ("As we have previously explained, a practice falls within this prohibition (1) if it is likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material."); *see also* M.C.A. § 30-14-104 ("due consideration and weight shall be given to the interpretations of the federal trade commission and the federal courts relating to section 5(a)(1) of the Federal Trade Commission Act").

Dated:  August 31, 2018

Respectfully submitted,

/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Corporation
and AmerisourceBergen Drug Corporation*

/s/ Geoffrey Hobart
Geoffrey Hobart
Mark Lynch
Christian J. Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*

/s/ Enu Mainigi
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
EMainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

**LOCAL RULE 7.1(F) CERTIFICATION**

Pursuant to Case Management Order Number Six (Dkt. 770, July 23, 2018) and the
Court's subsequent Order Regarding Page Limitations for Briefing on Motions to Dismiss (Dkt.
791, July 26, 2018), Distributors are permitted to file motions to dismiss totaling 50 pages in
each of the Tribal Track Cases.  This brief adheres to that limit.

*/s/ Geoffrey Hobart*
Geoffrey Hobart

**CERTIFICATE OF SERVICE**

I, Geoffrey Hobart, hereby certify that the foregoing document was served via the Court's
ECF system to all counsel of record.

*/s/ Geoffrey Hobart*
Geoffrey Hobart