**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*The Blackfeet Tribe of the Blackfeet Indian*
*Reservation v. AmerisourceBergen Drug*
*Corporation et al.*

Case No. 18-op-45749

**MDL No. 2804**
**Case No. 17-md-2804**
**Judge Dan Aaron Polster**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT BY DEFENDANTS CVS PHARMACY, INC.,**
**CVS INDIANA, L.L.C., WALMART INC., WALGREEN CO.,**
**AND WALGREEN ARIZONA DRUG CO.**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTORY STATEMENT OF THE ISSUES AND
    SUMMARY OF ARGUMENT ..................................................................... 1

LEGAL STANDARDS ........................................................................................................ 2

ARGUMENT ........................................................................................................................ 3

I.      Plaintiff Lacks Standing to Sue the Moving Defendants. ................................................. 3

II.      Plaintiff States No Claims Against the Moving Defendants as Pharmacies ..................... 3

III.      Plaintiff Cannot Establish the Elements of Public Nuisance (Counts 3-5) ....................... 4

     A.      Plaintiff cannot state a claim under federal common law. ..................................... 4

     B.      The Complaint fails to plausibly allege that any of the Moving Defendants
           committed any act that unreasonably interfered with a public right. .................... 6

     C.      Plaintiff cannot establish proximate cause. ........................................................... 6

IV.      Plaintiff's Negligence Claim Is Legally Deficient (Count 6). ......................................... 8

     A.      The Moving Defendants do not owe a common law duty to Plaintiff. .................. 9

     B.      No duty arises from the Controlled Substances Acts .............................................. 9

     C.      Plaintiff Fails to State a Claim for Negligent Misrepresentation ......................... 11

V.      Plaintiff Fails to State a Claim for Unjust Enrichment (Count 8) ................................... 12

VI.      Plaintiff Fails to State a Civil Conspiracy Claim (Count 9). .......................................... 13

VII.      Plaintiff Fails to State a Consumer Fraud Claim (Count 10). ........................................ 15

VIII.      The Free Public Services Doctrine Bars Plaintiff's Claims. .......................................... 19

CONCLUSION ................................................................................................................... 20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f) ......................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Electric Power Co. v. Connecticut,*
   564 U.S. 410 (2011)......................................................................................................4, 5

*Anderson v. ReconTrust Co.,*
   407 P.3d 692 (Mont. 2017)................................................................................................9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)................................................................................................. *passim*

*Ashley County v. Pfizer, Inc.,*
   552 F.3d 659 (8th Cir. 2009) ......................................................................................8, 12

*Associated Mgmt. Servs., Inc. v. Ruff,*
   --- P.3d ---, 2018 WL 3545134 (Mont. July 24, 2018) ...................................................12, 13

*B Bar J Ranch, LLC v. Carlisle Wide Plank Floors, Inc.,*
   288 P.3d 228 (Mont. 2012)...........................................................................................16, 18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................................2, 4, 6, 14

*Brookins v. Mote,*
   292 P.3d 347 (Mont. 2012)...........................................................................................16, 17

*City of Chicago v. Beretta U.S.A. Corp.,*
   821 N.E.2d 1099 (Ill. 2004) ........................................................................................ *passim*

*City of Cleveland v. Ameriquest Mortg. Secs., Inc.,*
   621 F. Supp. 2d 513 (N.D. Ohio 2009)...............................................................................8

*City of Flagstaff v. Atchison, Topeka & Santa Fe Railway Co.,*
   719 F.2d 322 (9th Cir. 1983) ...........................................................................................19

*County of Cook v. Philip Morris, Inc.,*
   817 N.E.2d 1039 (Ill. App. Ct. 2004) ................................................................................8

*Estate of Donald ex rel. Donald v. Kalispell Reg'l Med. Ctr.,*
   258 P.3d 395 (Mont. 2011)...............................................................................................16

*Faust v. Utility Solutions, LLC,*
   173 P.3d 1183 (Mont. 2007)..............................................................................................10

*First Am. Title Co. v. Devaugh,*
   480 F.3d 438 (6th Cir. 2007) ...................................................................................... *passim*

*Gibbs v. Gardner,*
   80 P.2d 370 (Mont. 1938)..................................................................................................4

*Hastie v. Alpine Orthopedics & Sports Med.,*
   363 P.3d 435 (Mont. 2015)................................................................................................17

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Hatch v. State Dept. of Highways*,
    887 P.2d 729 (Mont. 1994) ........................................................................................7

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992).............................................................................................6, 8

*Kiger v. State*,
    802 P.2d 1248 (Mont. 1990) ......................................................................................7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)....................................................................................................3

*Lyshe v. Levy*,
    854 F.3d 855 (6th Cir. 2017) ......................................................................................2

*McClure v. Owens Corning Fiberglas Corp.*,
    720 N.E.2d 242 (Ill. 1999)........................................................................................14

*Morrow v. Bank of America, N.A.*,
    324 P.3d 1167 (Mont. 2014).....................................................................................11

*Native Village of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012) ......................................................................................5

*Northern Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great*
    *Falls/Billings*,
    296 P.3d 450 (Mont. 2013) ...............................................................................12, 13

*Plains Commerce Bank v. Long Family Land & Cattle Co.*,
    554 U.S. 316 (2008)..................................................................................................19

*PNC Bank, N.A. v. Wilson*,
    2015 WL 3887602 (D. Mont. June 23, 2015).........................................................16

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) ..............................................................................11, 19

*Rohrer v. Knudson*,
    203 P.3d 759 (Mont. 2009)......................................................................................16

*Schumacker v. Meridian Oil Co.*,
    956 P.2d 1370 (Mont. 1998)....................................................................................13

*Sullivan v. Cherewick*,
    391 P.3d 62 (Mont. 2017)...................................................................................13, 15

*United States v. Sims*,
    511 F. App'x 429 (6th Cir. 2013) ...............................................................................5

*Willden v. Neumann*,
    189 P.3d 610 (Mont. 2008)........................................................................................9

## TABLE OF AUTHORITIES
(continued)

Page(s)

STATUTES

Mont. Code § 27-1-317 ........................................................................................................4

Mont. Code §§ 30-14-101 *et seq.* ........................................................................................15

Mont. Code § 30-14-102 ..............................................................................................15, 16

Mont. Code § 30-14-103 ....................................................................................................15

Mont. Code § 30-14-111 ....................................................................................................15

Mont. Code § 30-14-121 ....................................................................................................16

Mont. Code § 30-14-133 ....................................................................................................16

Mont. Code § 37-7-201 ......................................................................................................10

Mont. Code § 37-7-604 ......................................................................................................10

OTHER AUTHORITIES

Fed. R. Civ. P. 9 ....................................................................................................11, 12, 19

Fed. R. Civ. P. 12 ................................................................................................................2

Mont. Admin. R. 24.174.1201 *et seq.* ..............................................................................10

## INTRODUCTORY STATEMENT OF THE ISSUES
## AND SUMMARY OF ARGUMENT

Although Plaintiff is a tribal entity rather than a county or city, its First Amended Complaint is materially identical to the complaints filed by Summit County, Broward County, Cabell County, Monroe County, and the City of Chicago.  Just like those complaints, Plaintiff's Complaint fails the fundamental requirement of plausibly alleging specific, actionable conduct against Defendants CVS Pharmacy, Inc., CVS Indiana, L.L.C., Walmart Inc., Walgreen Co., and Walgreen Arizona Drug Co. (the "Moving Defendants").  The Moving Defendants incorporate the arguments submitted in the Major Distributors' brief in support of their motion to dismiss the Complaint, as well as the arguments submitted in the Moving Defendants' briefs and the Major Distributors' briefs in support of the motions to dismiss the *Summit County* and *City of Chicago* complaints.[1]  For the reasons explained in those briefs as well as those given below, this Court should dismiss all of Plaintiff's claims against the Moving Defendants.

As a threshold matter, Plaintiff lacks standing because it seeks to recover for generalized grievances and indirect harms that cannot, under Plaintiff's own pleadings, be traced to the Moving Defendants.  And even if it had standing, its claims would fail as a matter of law.  First, Plaintiff has pleaded no facts that could support any purported claim against the Moving Defendants in their capacities as pharmacies rather than as distributors.  Second, even as it pleads them, each of

---

[1] *In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 497-1] ("Moving Defendants' *Summit County* Brief"); *In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 491-1] ("Major Distributors' *Summit County* Brief"); *In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 742] ("Moving Defendants' *Summit County* Reply"); *In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 744] ("Major Distributors' *Summit County* Reply");  *In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 586-1] ("Moving Defendants' *Chicago Brief*"); *In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 571-1] ("Major Distributors' *Chicago* Brief"); *In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 826] ("Moving Defendants' *Chicago* Reply"); *In re National Prescription Opiate Litigation*, No. 17-md-2804 [Dkt. 817] ("Major Distributors' *Chicago* Reply").

Plaintiff's claims fails as a matter of law on its own terms.  Plaintiff does not identify any specific unlawful conduct by any of the Moving Defendants that violated any public right.  It cannot establish proximate cause, because it alleges only a highly attenuated relationship between its generalized, derivative injuries and the Moving Defendants' lawful distribution of opioid medications.  Any possible causal link between the Moving Defendants' conduct and Plaintiff's alleged harms is further broken by numerous intervening acts—including by manufacturers who allegedly engaged in misleading marketing of their drugs, physicians who improperly prescribed drugs, individuals who illegally supplied drugs to third parties, and persons who illegally abused drugs.  And no duty runs from the Moving Defendants to Plaintiff under the common law or any statute.  Finally, Plaintiff cannot establish the required elements of its statute-based claims.  This Court should dismiss the Complaint.

## LEGAL STANDARDS

Because "standing is an issue of the court's subject matter jurisdiction," Plaintiff's lack of standing is appropriately raised through a motion to dismiss "under Federal Rule of Civil Procedure 12(b)(1)."  *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).  On a motion to dismiss under Rule 12(b)(6), a court must dismiss a complaint if the facts alleged fail to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This pleading standard requires more than the assertion of legal conclusions.  *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007).  Cursory or conclusory statements are given no weight, and a complaint that raises only the possibility that a defendant acted unlawfully is insufficient as a matter of law.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## ARGUMENT

Plaintiff asserts claims against the Moving Defendants for public nuisance (Counts 3-5), negligence and negligent misrepresentation (Count 6), unjust enrichment (Count 8), civil conspiracy (Count 9), and violation of the Montana Unfair Trade Practices and Consumer Protection Act (Count 10). But Plaintiff lacks standing to pursue any of these claims. And even if Plaintiff had standing, its claims would fail as a matter of law.

## I.     Plaintiff Lacks Standing to Sue the Moving Defendants.

Plaintiff sues over an array of alleged public harms that it attributes to prescription opioids, including "public health, social services, and criminal justice consequences." Compl. ¶ 19. But as discussed more fully in the Moving Defendants' *Summit County* Brief (Part I), these harms are textbook "generalized grievance[s]" that are not justiciable under Article III of the U.S. Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575 (1992). In asserting injury, Plaintiff has alleged nothing to set itself apart from the public at large, and the harms it claims are at most the consequence of injury to others (individual opioid users), not direct injuries to itself. *See, e.g.*, Compl. ¶¶ 945, 1075. The Complaint should therefore be dismissed for lack of standing.

## II.    Plaintiff States No Claims Against the Moving Defendants as Pharmacies.

The Complaint purports to state claims against the Moving Defendants in their capacities as distributors, not dispensing pharmacies. It classifies them as "distributors," *see, e.g.*, Compl. ¶ 3, and "wholesale distributors," *see, e.g.*, *id.* ¶ 514; and its claims for relief focus on the distribution and sale of opioids—not on filling prescriptions or dispensing medications, *see, e.g.*, *id.* ¶¶ 474-504, 513-63, 888-1050, 1070-1123. Nonetheless, like the plaintiffs in *Summit County*, Plaintiff makes a handful of vague allegations that refer to the Moving Defendants in their role as retail pharmacies. *E.g.*, *id.* ¶¶ 494, 586-89, 605.

To the extent that Plaintiff intends these allegations to plead claims against the Moving Defendants as retail pharmacies, its threadbare, vague, and generic assertions are manifestly insufficient to state a claim.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56.  And while Plaintiff describes dispensing conduct by some (but not all) of the Moving Defendants in *other* jurisdictions (Compl. ¶¶ 606-35), such allegations cannot support claims against even those Moving Defendants as pharmacies in Montana or on the Blackfeet Indian Reservation.

### III.  Plaintiff Cannot Establish the Elements of Public Nuisance (Counts 3-5).

Plaintiff purports to plead claims for public nuisance under federal common law (Count 3), Montana common law (Count 4), and Montana statutory law (Count 5).  "A nuisance is … public where it affects rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled."  *Gibbs v. Gardner*, 80 P.2d 370, 373 (Mont. 1938).  In any tort case, the plaintiff must establish proximate causation connecting the defendant's alleged breach to the plaintiff's damages.  Mont. Code § 27-1-317.  For a variety of reasons, Plaintiff's claims fail.

*First*, any federal common law claim that might otherwise have existed has been clearly displaced by congressional regulation in this field through the federal Controlled Substances Act.  *Second*, the Complaint fails to allege that the Moving Defendants unreasonably interfered with any public right.  *Third*, Plaintiff has not adequately alleged that any action by the Moving Defendants proximately caused an injury to Plaintiff.  *See also* Moving Defendants' *Summit County* Brief (Part V); Major Distributors' *Summit County* Brief (Part II); Moving Defendants' *Chicago* Brief (Part III); Major Distributors' *Chicago* Brief (Part I).

#### A.  Plaintiff cannot state a claim under federal common law.

Count 3 of the Complaint purports to state a claim for public nuisance under federal common law.  Compl. ¶¶ 888-912.  Among other defects (including those discussed below), the claim is foreclosed by the Supreme Court's decision in *American Electric Power Co. v.*

4

*Connecticut*, 564 U.S. 410 (2011). In that decision, the Court unanimously rejected Connecticut's attempt to invoke federal common law for a public nuisance claim against power companies alleged to have contributed to global warming. *Id.* at 415. The Court held that, regardless of whether federal common law would otherwise have allowed the claim, any such claim was "displaced by the federal legislation authorizing [the Environmental Protection Agency] to regulate carbon-dioxide emissions." *Id.* at 423.

Under *American Electric Power*, "[t]he test for whether congressional legislation excludes the declaration of federal common law is simply whether the statute 'speak[s] directly to [the] question' at issue." *Id.* at 424 (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)); *see also id.* at 423 ("'[W]hen Congress addresses a question previously governed by a decision rested on federal common law,' … 'the need for such an unusual exercise of law-making by federal courts disappears'" (quoting *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981))); *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 856 (9th Cir. 2012) ("If Congress has addressed a federal issue by statute, then there is no gap for federal common law to fill."). Here, there is no doubt that the federal Controlled Substances Act speaks directly to the question at issue—the appropriate conduct of the distribution of prescription medications. Indeed, Plaintiff expressly alleges that the Controlled Substances Act governs the conduct at issue. *See, e.g.*, Compl. ¶¶ 653, 800. Thus, under *American Electric Power*—and by Plaintiff's own allegations— the Act displaces any federal common law claim that might otherwise have existed. *See also United States v. Sims*, 511 F. App'x 429, 431 (6th Cir. 2013). The Court should dismiss Plaintiff's claim.

**B.      The Complaint fails to plausibly allege that any of the Moving Defendants committed any act that unreasonably interfered with a public right.**

Plaintiff alleges that Defendants interfered with the health and safety of the public by violating state and federal laws regulating the distribution of controlled substances.  *See, e.g.*, Compl. ¶¶ 931-32.  But the Complaint never identifies any specific act by any of the Moving Defendants that violated any law or interfered with any public right.  Instead, Plaintiff makes the kind of cursory assertions of liability that are patently insufficient to state a claim.  *Iqbal*, 556 U.S. at 678-79; *see also* Moving Defendants' *Summit County* Brief (Part V).  Plaintiff does not allege that any of the Moving Defendants control which medications doctors prescribe, how patients use medications after they are dispensed, or any illegal means that drug users might use to obtain opioids.  Nor does Plaintiff allege that any of the Moving Defendants manufactured or marketed the medications at issue.  Indeed, it does not even identify a single instance in which any of the Moving Defendants purportedly failed to keep records or inventory lists, fulfill licensing obligations, store drugs appropriately, or allow inspectors access to records in Montana—much less on the Blackfeet Indian Reservation.  At most, Plaintiff points to enforcement actions related to other kinds of conduct (mainly pharmacy rather than distributor conduct) against just some of the Moving Defendants in other jurisdictions.  *See* Compl. ¶¶ 606-28.  There are no factual assertions as to any conduct by any of the Moving Defendants in particular affecting Plaintiff.  Therefore, the Complaint's allegations do not suffice under *Iqbal*, 556 U.S. at 678-79, or *Twombly*, 550 U.S. at 555-56, and must be dismissed.

**C.      Plaintiff cannot establish proximate cause.**

To establish proximate cause—a critical element of any tort claim—a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged."  *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992).  The law does not recognize claims for injuries

6

that are too remote from the alleged conduct, particularly where intervening acts by third parties caused the injury at issue.  "Stated differently, proximate cause is an act or omission which, 'in a natural and continuous sequence, unbroken by any new, independent cause, produces injury.'" *Hatch v. State Dept. of Highways*, 887 P.2d 729, 732 (Mont. 1994) (quoting *Bickler v. Racquet Club Heights Assoc.*, 850 P.2d 967, 970 (Mont. 1993)).  Here, the Complaint does not plausibly allege an unbroken connection between any alleged action of any one of the Moving Defendants and the sweeping, generalized public harms that Plaintiff alleges.  *See, e.g.*, Compl. ¶¶ 3, 19, 945, 1075.  Indeed, by Plaintiff's own account, the causal chain is severed by the intervening conduct of other actors, much of it criminal, outside of the Moving Defendants' control, and its injuries are derivative of harms to third parties.  *Cf.* Moving Defendants' *Summit County* Brief (Part IV.B).

Plaintiff expressly pleads that intervening criminal acts broke the alleged causal chain between the Moving Defendants' alleged conduct and Plaintiff's alleged harms.  These intervening acts were committed not only by individuals seeking to obtain opioids illegally, but also by physicians who participated in illegal "pill mills" and drug cartels that distributed "black market" opioids.  Compl. ¶¶ 16-17, 632, 988.  These allegations alone are enough to warrant dismissal, because proximate cause is lacking as a matter of law where the criminal acts of third parties break the connection between a defendant's act and a plaintiff's injury.  *See, e.g.*, *Kiger v. State*, 802 P.2d 1248, 1251 (Mont. 1990) ("In this case there are too many 'what ifs' that are superseding events that break the chain of causation.").

The Complaint also alleges too many intervening causes—criminal and otherwise—to permit a finding of proximate cause against the Moving Defendants.  Plaintiff does not allege that the Moving Defendants ever sold or distributed anything to Plaintiff, or caused it any direct harm. Instead, it alleges that its injuries are attributable to—at the least—the prescribing practices of

physicians who improperly prescribed opioids (whether with criminal intent or just unnecessarily), the acts of persons who illegally or improperly supplied prescription opioids to third parties, and the behavior of persons who abused prescription drugs and illicit drugs such as heroin. *See* Compl. ¶¶ 6, 16, 19, 632, 988, 999. Just such a multiplicity of intervening causes was a key reason why various Arkansas counties' complaint against drug manufacturers and distributors for costs related to the methamphetamine epidemic failed, *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 667-73 (8th Cir. 2009); why Chicago's lawsuit against firearms dealers was dismissed, *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004); why Cook County failed to establish claims against tobacco companies, *County of Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039, 1043 (Ill. App. Ct. 2004); and why Cleveland's foreclosure-crisis lawsuit failed, *City of Cleveland v. Ameriquest Mortg. Secs., Inc.*, 621 F. Supp. 2d 513, 516, 533-34 (N.D. Ohio 2009). *See* Major Distributors' *Chicago* Brief (Part III.A.). In all of these cases, local government entities failed to establish that the defendants' conduct could be "deemed a legal cause of a nuisance that is the result of the aggregate of the criminal acts of many individuals over whom they have no control." *Beretta U.S.A. Corp.*, 821 N.E.2d at 1138.

Finally, the required "direct relation between the injury asserted and injurious conduct alleged" is absent because Plaintiff's own allegations show that its injuries are derivative of harms suffered by third parties—namely, the individuals harmed directly by opioid abuse and addiction. *See Holmes*, 503 U.S. at 268; Compl. ¶¶ 3, 19, 995. As previously explained, derivative claims fail as a matter of law for lack of causation. *See* Moving Defendants' *Summit County* Brief (Part IV.B); Major Distributors' *Chicago* Brief (Part III.A).

## IV.  Plaintiff's Negligence Claim Is Legally Deficient (Count 6).

Under Montana law, "the essential elements of a negligence claim are the existence of a legal duty of care owed by the tortfeasor to the claimant, breach of that duty, causation of harm,

and resulting damages." *Anderson v. ReconTrust Co.*, 407 P.3d 692, 699 (Mont. 2017).  The Complaint fails to adequately allege these elements.  Most notably, the Moving Defendants do not owe Plaintiff any relevant duty, either at common law or by statute, and Plaintiff fails to plausibly plead that any conduct by the Moving Defendants proximately caused its alleged injuries.  The lack of proximate cause, which is fatal to any tort claim, was discussed in Part III.C above.  The absence of duty, which is also fatal to Plaintiff's claim, is discussed here.  *See also* Moving Defendants' *Summit County* Brief (Part IV); Major Distributors' *Summit County* Brief (Part III); Moving Defendants' *Chicago* Brief (Part IV); Major Distributors' *Chicago* Brief (Part II).

### A.      The Moving Defendants do not owe a common law duty to Plaintiff.

"The threshold question of whether the defendant owed a legal duty to the plaintiff is a question of law reserved for the district court." *Willden v. Neumann*, 189 P.3d 610, 613 (Mont. 2008).  Plaintiff alleges that the Moving Defendants had a general common law duty to exercise care in the distribution of opioids, and specifically to detect and warn of diversion of prescription medication and to monitor and report suspicious activity.  *See, e.g.*, Compl. ¶¶ 978-80, 982, 988. But no such duty exists at common law.  As discussed more fully in the Moving Defendants' *Summit County* Brief (Part IV.A.2), none of the Moving Defendants owed any common law duty to Plaintiff because the highly attenuated connection between the Moving Defendants' alleged conduct and Plaintiff's alleged harm forecloses the existence of any duty; industry standards provide no independent basis for inferring duty; and the learned intermediary doctrine precludes recognition of any such duty.

### B.      No duty arises from the Controlled Substances Acts.

Plaintiff also asserts that Defendants breached their duties under the federal and Montana statutes regulating controlled substances.  Compl. ¶¶ 1007-23.  But as explained in the Moving Defendants' *Summit County* Brief (Part IV.A.2), Plaintiff cannot bring a negligence action based

on alleged breaches of duties created by the statutes because (1) any duty the Moving Defendants owed under the statutes (if one exists) would be to the Montana and federal governments, not to Plaintiff, and (2) Plaintiff lacks a cause of action under the statues.

*First*, the federal and Montana statutes do not impose on the Moving Defendants any duty of care *toward Plaintiff*.  Both the federal and state governments extensively regulate the production, distribution, and sale of prescription opioid medications.  *See* Moving Defendants' *Summit County* Brief (Part IV.A.2).  This is true in Montana as it is in Ohio.  The statute that Plaintiff relies on, Mont. Code § 37-7-604, imposes requirements on distributors—on top of those imposed by federal law—through a comprehensive regulatory scheme administered by the Montana Board of Pharmacy.  *See id.* § 37-7-201(2) (directing the Board to "regulate the practice of pharmacy in this state, including but not limited to … examining applicants and issuing and renewing licenses of … wholesale distributors"); Mont. Admin. R. 24.174.1201 *et seq.* (regulating the licensing of wholesale distributors).  Indian tribes have no role in this comprehensive scheme, and there is no basis for inferring that the statutes create a special duty to Plaintiff.

*Second*, neither the federal Controlled Substances Act nor its Montana counterpart provides tribal entities with a cause of action.  *Cf.* Major Distributors' *Chicago* Brief (Part II.A); Moving Defendants' *Summit County* Brief (Part IV.A.2).  The Montana statute creates no express right of action, and courts are cautious about inferring an implied right of action, paying close attention to "the intent of the legislature."  *Faust v. Utility Solutions, LLC*, 173 P.3d 1183, 1187-88 (Mont. 2007).  Affording tribal entities a cause of action would be entirely inconsistent with the comprehensive statutory scheme established by the Montana Legislature, because the statute empowers the Board—not tribal entities or other entities outside the state government—to promulgate regulations and implement and enforce the statutory provisions.  None of the statutory

10

provisions envisions, much less establishes, a separate enforcement mechanism based on damages lawsuits by myriad third parties.  There is thus no basis to infer a cause of action.  And Plaintiff cannot sidestep these principals by styling its lawsuit a "negligence *per se*" action, Compl. ¶ 1021. *See* Moving Defendants' *Summit County* Brief (Part IV.A.2).  Plaintiff's negligence claim should be dismissed.

### C.     Plaintiff Fails to State a Claim for Negligent Misrepresentation.

Plaintiff tacks an assertion of negligent misrepresentation onto the end of its negligence claim.  Compl. ¶¶ 1037-50.  The assertion fails.  Montana law imposes six requirements on claims for negligent misrepresentation: "a) the defendant made a representation as to a *past* or *existing* material fact; b) the representation must have been untrue; c) regardless of its actual belief, the defendant must have made the representations without any reasonable ground for believing [them] to be true; d) the representation must have been made with the intent to induce the plaintiff to rely on it; e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation; [and] f) the plaintiff, as a result of its reliance, must sustain damage."  *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1180 (Mont. 2014).

In addition to the reasons discussed above, Plaintiff cannot state a claim for negligent misrepresentation because Plaintiff does not point to any representations by any of the Moving Defendants to Plaintiff.  Plaintiff also does not adequately allege that any of the Moving Defendants intended to induce Plaintiff's reliance through any such unidentified representations, that Plaintiff relied on such representations in any way, or that Plaintiff sustained damage as a result of such reliance.  Rather than provide factual allegations supporting its claim, Plaintiff offers only boilerplate legal conclusions, which are insufficient to state a claim under either *Iqbal* or Federal Rule of Civil Procedure 9(b), *see Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683

F.3d 239, 248 (6th Cir. 2012) (applying "Rule 9(b)'s heightened pleading standard" to "negligent-misrepresentation claims").

## V.    Plaintiff Fails to State a Claim for Unjust Enrichment (Count 8).

Under Montana law, "[t]he essential elements of an unjust enrichment claim are: (1) a benefit conferred on one party by another; (2) the other's appreciation or knowledge of the benefit; and (3) the other's acceptance or retention of the benefit under circumstances that would render it inequitable for the other to retain the benefit without compensating the first party for the value of the benefit." *Associated Mgmt. Servs., Inc. v. Ruff*, --- P.3d ---, 2018 WL 3545134, at *17 (Mont. July 24, 2018); *see also Northern Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great Falls/Billings*, 296 P.3d 450, 457 (Mont. 2013) (same). The Complaint fails to adequately allege these required elements. *See also* Moving Defendants' *Summit County* Brief (Part VI); Major Distributors' *Summit County* Brief (Part V); Moving Defendants' *Chicago* Brief (Part V); Major Distributors' *Chicago* Brief (Part V).

Plaintiff's main complaint is that it has allegedly spent money "in an effort to remedy or mitigate the societal harms caused by Defendants' conduct." Compl. ¶ 1074; *see also id.* ¶ 1075. Yet even if that were true, such spending in no way enriched *the Moving Defendants*. The "societal harms" that Plaintiff purportedly mitigated were not harms to the Moving Defendants (as Plaintiff implicitly concedes by labeling the harms Defendants' "externalities," *id.* ¶ 1077). Rather, it was unrelated third parties who benefitted from Plaintiff's alleged social spending. The Moving Defendants, like the manufacturers of cold medicine sued in *Ashley County*, "cannot be said to be the beneficiaries of the services provided by" Plaintiff. 552 F.3d at 666. While Plaintiff alleges, without explanation, that "[t]hese expenditures have helped sustain Defendants' businesses," Compl. ¶ 1076, such a "'naked assertion[]' devoid of 'further factual enhancement'" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Nor can Plaintiff state a cause of action based on the "benefit" that Plaintiff supposedly conferred on the Moving Defendants stemming from "the distribution and purchase of opioids within Plaintiff's Community."  Compl. ¶ 1071.  A claim for unjust enrichment lies only where one party confers a benefit on the other.  *See, e.g.*, *Associated Mgmt.*, --- P.3d ---, 2018 WL 3545134, at *17; *Northern Cheyenne Tribe*, 296 P.3d at 457.  Plaintiff does not allege that it purchased opioids from the Moving Defendants or offer any other explanation as to how the distribution of opioids in Plaintiff's community could constitute the requisite benefit conferred upon the Moving Defendants *by Plaintiff*.

## VI.    Plaintiff Fails to State a Civil Conspiracy Claim (Count 9).

"A valid civil conspiracy claim requires that each of the following elements be established: '(1) two or more [conspiring] persons …; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'"  *Sullivan v. Cherewick*, 391 P.3d 62, 68 (Mont. 2017) (quoting *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373 (Mont. 1998)).  As discussed above, Plaintiff has not adequately alleged that it has suffered any damages as the proximate result of any action by any of the Moving Defendants, as the fifth element requires.  Plaintiff also fails to adequately allege the third and fourth elements.  *See also* Moving Defendants' *Summit County* Brief (Part VII); Major Distributors' *Summit County* Brief (Part VI); Moving Defendants' *Chicago* Brief (Part VI); Major Distributors' *Chicago* Brief (Part VII).

*First*, Plaintiff fails to adequately allege any "meeting of the minds" among the Moving Defendants.  Compl. ¶ 1088.  Plaintiff's allegations of an agreement are mere "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements," which "do not suffice" to state a claim.  *Iqbal*, 556 U.S. at 678; *see* Compl. ¶¶ 1088-89, 1092-93, 1096, 1099; *see also Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1374 (Mont. 1998) (finding circumstantial

evidence of wrongdoing "insufficient to create an inference" of wrongdoing "on the essential meeting of the minds element").

Plaintiff asserts that an agreement can be inferred because "each Defendant acted directly against their commercial interests in not reporting the unlawful distribution practices of their competitors to the authorities." Compl. ¶ 1099. But Plaintiff never explains how one Defendant could be expected to know about suspicious orders filled by competitors. (It alleges that Defendants could "track" competitors' sales, *id.* ¶ 545, but not how they could know whether the orders filled by such sales were suspicious.) Nor does Plaintiff say what incentive any one Defendant would have to expend resources monitoring its competitors for "suspicious" orders.[2] And even if any of the Moving Defendants was aware that competitors were filling suspicious orders and neglected to disclose this fact to the authorities, that allegation would not state a claim for conspiracy, because it is equally consistent with non-conspiratorial parallel conduct. *See, e.g.*, *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) ("Mere knowledge of the fraudulent or illegal actions of another is … not enough to show a conspiracy."). Finally, it does Plaintiff no good that it also incorporates by reference its RICO allegations, Compl. ¶ 1095, because those allegations do not apply to the Moving Defendants.

---

[2] Plaintiff's own assertions are internally inconsistent: If, as Plaintiff contends, Defendants were knowingly filling suspicious orders, then increasing the authorities' focus on such orders by monitoring and reporting their competitors would run directly *against* their individual commercial interests. Thus, Plaintiff is wrong to say that such failures to report would go against Defendants' individual interests and therefore suggest concerted action. *See Twombly*, 550 U.S. at 566 ("[E]ven if the [defendants] flouted the 1996 Act in all the ways the plaintiffs allege, … there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway."); *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 267 (Ill. 1999) ("Plaintiffs showed separate acts by the alleged conspirators, but the evidence failed to show that these acts were connected by an agreement.").

*Second*, Plaintiff never points to any unlawful overt act that any Moving Defendant supposedly took in furtherance of the alleged conspiracy.  *See Sullivan*, 391 P.3d at 68.  Even if Plaintiff had adequately alleged that the Moving Defendants filled suspicious orders of opioids, which it has not, such an act would not advance the conspiracy, but merely the individual interests of the particular party filling the order.  And even if Plaintiff had adequately alleged that the Moving Defendants refrained from reporting each other to the authorities for filling suspicious orders, such an omission is not an "overt act."

The civil conspiracy claim should be dismissed.  *See Sullivan*, 391 P.3d at 69 (rejecting civil conspiracy claim where the plaintiffs failed to "establish[] both that [the defendants] committed an unlawful act and that they suffered damages as the proximate result thereof").

## VII.  Plaintiff Fails to State a Consumer Fraud Claim (Count 10).

The Montana Unfair Trade Practices and Consumer Protection Act of 1973 (MCPA), Mont. Code §§ 30-14-101 *et seq.*, provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Mont. Code § 30-14-103. The vast majority of Plaintiff's allegations under the MCPA address only the Marketing Defendants.  Compl. ¶¶ 1111-12, 1118.  Regarding other Defendants, including the Moving Defendants, Plaintiff makes only the generic allegation that "Defendants have engaged in unfair and/or deceptive acts or practices by omitting the material fact of its [sic] failure to monitor, report, and stop the filling of suspicious orders."  *Id.* ¶ 1113.  Plaintiff's barebones claim should be dismissed on this basis alone.  *See also* Major Distributors' *Chicago* Brief (Part IV).  Even so, there are additional and independent reasons why this claim should be dismissed.

*First*, the claim fails at the threshold because the MCPA does not give Plaintiff a cause of action.  The MCPA allows enforcement actions by the Montana Department of Justice in the name of the State of Montana, Mont. Code §§ 30-14-102(2), 30-14-111(1), and by county attorneys

under certain circumstances, *id.* § 30-14-121.  Plaintiff is neither, and the MCPA does not authorize enforcement actions by tribal entities.

While "the MCPA provides a private cause of action," *Rohrer v. Knudson*, 203 P.3d 759, 763 (Mont. 2009) (citing Mont. Code § 30-14-133), that private cause of action only permits suit by a "consumer," Mont. Code § 30–14–133.  *See also B Bar J Ranch, LLC v. Carlisle Wide Plank Floors, Inc.*, 288 P.3d 228, 231 (Mont. 2012) ("the MCPA was designed to protect consumers"). The MCPA defines "Consumer" to mean "a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes."  Mont. Code § 30-14-102(1); *see also, e.g.*, *PNC Bank, N.A. v. Wilson*, 2015 WL 3887602, at \*8 (D. Mont. June 23, 2015).  Plaintiff is not a consumer vis-à-vis the Moving Defendants.  In fact, the Moving Defendants distributed pharmaceuticals only to their own pharmacies, not directly to any consumer and certainly not to Plaintiff.  *See Estate of Donald ex rel. Donald v. Kalispell Reg'l Med. Ctr.*, 258 P.3d 395, 401 (Mont. 2011) (affirming judgment for the defendant where "[n]either the Estate, nor the Donalds personally, were clients of" the defendant); *B Bar J Ranch*, 288 P.3d at 230 ("For B Bar J to be a consumer under the MCPA, the lodge had to be used primarily for personal, family, or household purposes. If, instead, the jury found that B Bar J had used the lodge for business purposes, then it would not be a consumer under the MCPA and its claim would fail.").

*Second*, under Montana law, "conduct by health-care providers in the 'actual practice' of the profession" is "exempted from the [M]CPA."  *Brookins v. Mote*, 292 P.3d 347, 359 (Mont. 2012).  In *Brookins*, the Montana Supreme Court rejected an MCPA lawsuit against a hospital that had allegedly failed to vet a doctor sufficiently before approving him to use its facilities.  *Id.* at 360.  The court reasoned that "[t]he process undertaken by a hospital to determine if a doctor is medically qualified to use its facilities implicates the 'actual practice' of medicine" and is thus not

16

regulated by the MCPA. *Id.* Here, Plaintiff seeks to use the MCPA to regulate the Moving Defendants' vetting of pharmaceutical orders attributable to pharmacists and, ultimately, to doctors' prescriptions. Compl. ¶ 1113. That vetting is analogous to a hospital's vetting of a doctor and equally implicates the actual practice of medicine. *See also Hastie v. Alpine Orthopedics & Sports Med.*, 363 P.3d 435, 440 (Mont. 2015) ("In *Brookins*, we distinguished between a hospital's credentialing of a doctor and a hospital's billing or advertising practices, and found that the former was not [subject to suit under the MCPA], while the latter were."). Accordingly, the MCPA does not apply here.

*Third*, the MCPA does not require pharmaceutical distributors to disclose (either to consumers or to Plaintiff) whether they have monitored, reported, or stopped the filling of suspicious orders. Plaintiff's sole allegation against the Moving Defendants—that they violated the MCPA "by omitting the material fact of its [sic] failure to monitor, report, and stop the filling of suspicious orders," Compl. ¶ 1113—is therefore insufficient to support an MCPA claim.

Plaintiff asserts that state regulations define the following to be unfair or deceptive acts or practices:

- making a false representation as to the source, sponsorship, approval, or certification of merchandise;

- making a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of merchandise, or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; and

- representing that merchandise is of a particular standard, style, or model, if it is of another.

17

Compl. ¶ 1108 (internal citations omitted).  A distributor's alleged failure to disclose its failure to monitor, report, or stop the filling of suspicious orders does not fall into any of these categories. Each of the regulatory categories pertains to the qualities of the merchandise being sold.  But Plaintiff does not allege that the opioids distributed by the Moving Defendants were anything other than the government-approved pharmaceuticals they purported to be.  Rather than question the *merchandise* itself—the focus of the regulatory categories—Plaintiff claims that the Moving Defendants should have disclosed that they were allegedly failing to monitor the *purpose* for which buyers were likely to use the merchandise.  The MCPA does not require such disclosures.

The absence of such a requirement follows from the purposes of the MCPA.  As discussed above, "the MCPA was designed to protect consumers."  *B Bar J Ranch*, 288 P.3d at 231.  The "characteristics" of merchandise, its "source," or any of the other attributes encompassed by the regulatory categories above may well be relevant to a consumer who is deciding whether to purchase a product.  But whether the product's distributor has monitored orders and stopped orders of the product that are for potentially improper (that is, suspicious) purposes is immaterial to a consumer taking medicine prescribed by his or her doctor.  Plaintiff's allegation that the allegedly omitted fact was a "material fact" must therefore be rejected.  Compl. ¶ 1113.

Indeed, if Plaintiff's theory were accepted, it would transform the MCPA into a requirement that every distributor disclose to Plaintiff (and, presumably, every other other tribal or municipal entity) potential noncompliance with any and all applicable statutes, rules, or regulations, without regard for whether the noncompliance would be of any relevance to the consumers the law is meant to protect.  There is no basis for such a rule in either Montana law or common sense.

*Fourth*, and in any event, Plaintiff has not adequately alleged that any of the Moving Defendants failed "to monitor, report, and stop the filling of suspicious orders."  Compl. ¶ 1113. Because Plaintiff's claim is based on an allegation that the Moving Defendants made a "material omission," it is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Republic Bank & Trust*, 683 F.3d at 248 (Rule 9(b) applies to misrepresentation claims that "require[] an allegation of duplicity").  Under Rule 9(b), Plaintiff "must specify 'the who, what, when, where, and how' of the alleged omission."  *Id.* at 256 (quoting *Carroll v. Ft. James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)).  Plaintiff's Complaint falls far short of this standard, failing to allege a single suspicious order that any of the Moving Defendants filled in Montana (or elsewhere) or to identify even one consumer who relied on the Moving Defendants' alleged omissions.  Indeed, Plaintiff's allegations are insufficient even under the less demanding standard imposed by *Iqbal*, much less the requirements of Rule 9(b).

*Finally*, while basing its claim on the MCPA, Plaintiff also refers to provisions of its own tribal Consumer Protection law regarding consumer sales.  Compl. ¶¶ 1115-17.  These provisions are facially inapplicable: They refer only to "consumer transactions," whereas Plaintiff sues the Moving Defendants for their distribution of prescription opioids to pharmacies, not to consumers. Moreover, Plaintiff lacks regulatory jurisdiction to enforce its laws against the Moving Defendants.  *See, e.g.*, *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 328 (2008) ("[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." (quoting *Montana v. United States*, 450 U.S. 544, 565 (1981))).

## VIII.  The Free Public Services Doctrine Bars Plaintiff's Claims.

Plaintiff's claims are also barred by the free public services doctrine.  *See, e.g.*, *City of Flagstaff v. Atchison, Topeka & Santa Fe Railway Co.*, 719 F.2d 322. 323 (9th Cir. 1983); Major Distributors' *Chicago* Brief (Part III.C); Moving Defendants' *Chicago* Brief (Part VIII).

19

## CONCLUSION

All claims against the Moving Defendants should be dismissed with prejudice.


Dated:  31 August 2018                Respectfully submitted,

/s/   Tara A. Fumerton

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*


/s/   Eric R. Delinsky (consent)

Eric R. Delinsky
Alexandra W. Miller
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Pharmacy, Inc. and
CVS Indiana, L.L.C.*

/s/    Kaspar Stoffelmayr (consent)

Kaspar Stoffelmayr
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorneys for Walgreen Co. and*
*Walgreen Arizona Drug Co.*

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing brief complies with the

50-page limit imposed by this Court.  *See* ECF No. 791 at 2 (No. 1:17-MD-2804).


/s/    Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com