## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*The Muscogee (Creek) Nation v. Purdue*
*Pharma L.P., et al.*, Case No. 18-op-45459

MDL No. 2804

**Case No. 17-MD-2804**

**Judge Dan Aaron Polster**


**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS CAREFIRST PHARMACY, CITY DRUG, CITYPLEX PHARMACY, COUCH PHARMACY, CVS, ECONOMY PHARMACY, ERNIE'S PHARMACY, FREELAND BROWN PHARMACY, GADDY DISCOUNT DRUG, M&D STAR DRUG, MED-ECON DRUG, OMNICARE, PIPPENGER PHARMACIES, REASOR'S, ROGERS DRUG CO., SPOON DRUGS, WALGREENS, AND WALMART**

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................ 2

I.        The Nation Lacks Standing............................................................................. 2

II.       The Complaint Fails to State a Claim Against the Moving Defendants as
          Pharmacies. ................................................................................................... 2

III.      The Complaint Fails to State a Claim Against the Moving Defendants as
          Distributors. ................................................................................................... 4

IV.       The Complaint Fails Because It Cannot Establish Proximate Cause. ............... 4

V.        Each of the Nation's Claims Fail for Other Reasons. ...................................... 7

          A.       The RICO Claim Fails as a Matter of Law (Count II). ......................... 7

          B.       The Nation's Negligence Claim Fails Because the Moving Defendants
                   Do Not Owe It a Duty (Count VIII)..................................................... 8

          C.       The Nation Fails to State a Claim Under the Lanham Act (Count III)............... 11

          D.       Oklahoma Law Does Not Recognize the Nation's Nuisance Claim
                   (Count VII)...................................................................................... 13

          E.       The Nation Fails to State a Civil Conspiracy Claim (Count X). ......................... 13

          F.       Oklahoma Law Does Not Recognize the Nation's Unjust Enrichment
                   Claim (Count IX). .............................................................................. 14

CONCLUSION......................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 3, 4

*Brigance v. Velvet Dove Restaurant, Inc.*,
  725 P.2d 300 (Okla. 1986) .......................................................................................... 5

*Brock v. Thompson*,
  948 P.2d 279 (Okla. 1997) ........................................................................................ 13

*Carista v. Valuck*,
  394 P.3d 253 (Okla. Civ. App. 2016) .............................................................. 3, 5, 10

*Closs v. Goose Creek Consol. Indep. School. Dist.*,
  874 S.W.2d 859 (Tex. App. 1994) ............................................................................. 14

*Combs v. Int'l Ins. Co.*,
  354 F.3d 568 (6th Cir. 2004) .................................................................................... 13

*Dollar Rent A Car Sys., Inc. v. P.R.P. Enters., Inc.*,
  2006 WL 1266515 (N.D. Okla. May 8, 2006) .......................................................... 14

*French Energy, Inc. v. Alexander*,
  818 P.2d 1234 (Okla. 1991) ..................................................................................... 14

*Gaines-Tabb v. ICI Explosives USA, Inc.*,
  995 F. Supp. 1304 (W.D. Okla. 1996) ...................................................................... 10

*Harvell v. Goodyear Tire & Rubber Co.*,
  164 P.3d 1028 (Okla. 2006) ..................................................................................... 14

*Henry v. Merck & Co., Inc.*,
  877 F.2d 1489 (10th Cir. 1989) .................................................................................. 9

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*,
  270 F.3d 298 (6th Cir. 2001) .................................................................................... 12

*Hill v. J.B. Hunt Transport, Inc.*,
  2014 WL 5393040 (E.D. Okla. Oct. 22, 2014) ........................................................ 10

*Hitch Enters., Inc. v. Cimarex Energy Co.*,
  859 F. Supp. 2d 1249 (W.D. Okla. 2012) .......................................................... 13, 14

*Howard v. Zimmer*,
  299 P.3d 463 (Okla. 2013) ....................................................................................... 11

*Hydro Turf, Inc. v. Int'l Fidelity Ins. Co.*,
  91 P.3d 667 (Okla. Civ. App. 2004) ...................................................................... 14

*J.S. v. Harris*,
  227 P.3d 1089 (Okla. Civ. App. 2009) .................................................................... 9

*King v. Modern Music Co.*,
  33 P.3d 947 (Okla. Civ. App. 2001) ........................................................................ 5

*Lefthand v. City of Okmulgee*,
  968 P.2d 1224 (Okla. 1998) ...................................................................................... 6

*Lowery v. Echostar Satellite Corp.*,
  160 P.3d 959 (Okla. 2007) ........................................................................................ 9

*McClelland v. Harvie Kothe-Ed Rieman, Post No. 1201, Veterans of the Foreign Wars of U.S., Inc.*, 770 P.2d 569 (Okla. 1989) ................................................................ 4

*McKee v. Moore*,
  648 P.2d 21 (Okla. 1982) .......................................................................................... 5

*Medtronic v. Lohr*,
  518 U.S. 470 (1996) ................................................................................................ 11

*Murphy v. Royal*,
  875 F.3d 896 (10th Cir. 2017), *cert. granted* 138 S. Ct. 2026 (2018) ..................... 1

*Nicholson v. Tacker*,
  512 P.2d 156 (Okla. 1973) ........................................................................................ 9

*Pharmcare Okla., Inc. v. State Health Care Auth.*,
  152 P.3d 267 (Okla. Civ. App. 2006) .................................................................... 10

*Prince v. B.F. Ascher Co., Inc.*,
  90 P.3d 1020 (Okla. Civ. App. 2004) ................................................................... 6, 7

*Riegel v. Medtronic, Inc.*,
  552 U.S. 312 (2008) ................................................................................................ 11

*Rose v. Sapulpa Rural Water Co.*,
  631 P.2d 752 (Okla. 1981) ........................................................................................ 8

*Sanders v. Crosstown Market, Inc.*,
  850 P.2d 1061 (Okla. 1993) ...................................................................................... 5

*Schovanec v. Archdiocese of Okla. City*,
  188 P.3d 158 (Okla. 2008) ...................................................................................... 14

iii

*Smith v. City of Stillwater*,
  328 P.3d 1192 (Okla. 2014) ......................................................................... 9

*Thur v. Dunkley*,
  474 P.2d 403 (Okla. 1970) ........................................................................... 6

*Tillman ex rel. Estate of Tillman v. Camelot Music, Inc.*,
  408 F.3d 1300 (10th Cir. 2005) ................................................................ 14

*Traxler v. PPG Indus., Inc.*,
  158 F. Supp. 3d 607 (N.D. Ohio 2016) ...................................................... 8

*Walden v. Sparkman Bros. Corp.*,
  879 P.2d 153 (Okla. Civ. App. 1994) ......................................................... 5

**Statutes**

15 U.S.C. § 1125 ....................................................................................... 12

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................... 8

**Other Authorities**

Restatement (Second) of Torts § 324A ......................................................... 10

Just like other plaintiffs, the Muscogee (Creek) Nation (the "Nation") has filed a complaint based on alleged fraud and deceptive marketing by the Manufacturer Defendants that says little to nothing about any relevant conduct by any of the Moving Defendants.[1]  The Nation has not identified any improper distribution conduct by the Moving Defendants in State of Oklahoma—let alone in or affecting the Nation[2]—or a single specific prescription any of the Moving Defendants filled that allegedly contributed to the Nation's claimed harms.

Instead, the Complaint levels almost all of its allegations against the Moving Defendants as members of large and undifferentiated groups.  Such groups include the "Pharmacy Defendants," a label applied collectively to at least 23 separate defendants—not including related entities—ranging from the world's largest general retailer (Walmart) to the two largest drug store chains (CVS and Walgreens) to small local businesses like Ernie's Pharmacy and Gaddy Discount Drug.  Compl. at 1.  Then there are the 37 "Diversion Defendants," adding two manufacturers and a dozen wholesale distributors to the mix.  *Id.*; *id.* ¶ 14.  Finally, the 43 total

---

[1] The Moving Defendants include CareFirst Pharmacy, Inc.; City Drug Co. and City Drug of Coweta, Inc.; Cityplex Pharmacy; CVS Health Corporation, CVS Pharmacy, Inc., and Oklahoma CVS Pharmacy, LLC (collectively "CVS"); Economy Pharmacy, Inc.; Ernie's Pharmacy & Wellness Center, Inc. ("Ernie's Pharmacy"); Freeland Brown Pharmacy, Inc.; Gaddy Discount Drug, Inc. ("Gaddy Discount Drug"); M&D Star Drug, Inc.; Med-Econ Drug, Inc.; NRF, Inc. d/b/a Couch Pharmacy ("Couch Pharmacy"); Omnicare Distribution Center LLC; Pippenger Pharmacies, LLC; Reasor's LLC; Rogers Drug Co., Inc.; Spoon Drugs, Inc.; Walgreens Boots Alliance, Inc. and Walgreen Co. (collectively "Walgreens"); and Walmart Inc. (named as Wal-Mart Stores, Inc.).

[2] The Nation asserts that its territory covers "4,867 square miles that lie within the state of Oklahoma."  1st Am. Compl. ("Compl.") ¶ 25.  The Nation is relying on a late 2017 decision of the Tenth Circuit that held that Congress had never disestablished the Nation's 1866 boundaries—a decision implicating over 3 million acres.  However, the court stayed its mandate to permit Oklahoma to seek review from the U.S. Supreme Court, which granted the writ and will hear the case this Term.  *See Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017), *cert. granted* 138 S. Ct. 2026 (2018).  A decision reversing the Tenth Circuit's opinion could be relevant to this Court's evaluation of the Nation's alleged injuries and standing to bring this action, and the Moving Defendants reserve the right to move to dismiss on this additional ground.

1

"Defendants," including the Manufacturer Defendants, against whom the Complaint asserts entirely separate claims based on marketing conduct. *Id.* at 1; *id.* at ¶¶ 106-36.

## ARGUMENT

In the Complaint, the Nation asserts six claims against the Moving Defendants: RICO (Count II), Lanham Act (Count III), nuisance (Count VII), negligence and negligence per se (Count VIII), unjust enrichment (Count IX), and civil conspiracy (Count X). Each claim must be dismissed for the reasons set forth below and in the briefs filed by the Manufacturer Defendants and Distributor Defendants, which the Moving Defendants incorporate by reference.

## I.      The Nation Lacks Standing.

As explained in the Moving Defendants' *Summit County* brief,[3] the Nation's assertion of only derivative injuries and generalized grievances common to the public means that the Nation lacks standing under Article III.  *See* Moving Defs. Summit County Br. 4-7.

## II.     The Complaint Fails to State a Claim Against the Moving Defendants as Pharmacies.

Unlike plaintiffs in each of the other bellwether motions cases, the Nation purports to state allegations against some of the Moving Defendants in their roles as retail pharmacies. In substance, they allege that licensed pharmacists employed by the Pharmacy Defendants filled

---

[3] Mem. of Law in Supp. of Mot. to Dismiss Compl. by Defs. Walmart Inc., CVS Health Corp., Rite Aid Corp., and Walgreens Boots Alliance, Inc. filed in *County of Summit, Ohio v. Purdue Pharma L.P., et al.*, No. 18-op-45090 (MDL Doc. No. 497-1) ("Moving Defs. Summit County Br."). This brief also incorporates arguments from the briefing in *Broward County* and *West Boca*. *See* Mem. in Supp. of Mot. to Dismiss by Defs. CVS Health Corp., Walgreens Boots Alliance, Inc., and Walmart Inc. filed in *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332 (MDL Doc. No. 582-1) ("Moving Defs. Broward County Br."); Reply in Supp. of Mot. to Dismiss by Defs. CVS, Walgreens, and Walmart filed in *Broward County, Florida v. Purdue Pharma L.P., et al.*, No. 18-op-45332 (MDL Doc. No. 825) ("Moving Defs. Broward County Reply"); Reply in Supp. of Mot. to Dismiss by Defs. CVS, Kroger, Walgreens, and Walmart filed in *West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corporation, et al.*, No. 18-op-45530 (MDL Doc. No. 890) ("Moving Defs. West Boca Reply").

certain unidentified opioid prescriptions that the Nation claims the pharmacists, in the exercise of their professional judgment, should have refused to fill. *See* Compl. ¶¶ 170-77, 186-99. While conceding that prescription opioids "can have benefits when used properly," *id.* ¶ 96, and that many prescriptions are proper and result in no diversion, *see id.* ¶ 13 (asserting only that a "substantial number" of opioid prescriptions are diverted), the Nation alleges that the Pharmacy Defendants, when presented with prescriptions for opioids, "regularly" failed to differentiate between proper and improper prescriptions, *id.* ¶ 259-60.

The Nation does not, however, identify a single prescription that any Pharmacy Defendant failed to adequately vet, that they filled despite red flags, and that harmed the Nation. Not a single one. In short, the Nation attempts to assert pharmacy malpractice against all 23 Pharmacy Defendants without identifying a single act of malpractice by any one of them. Such claims are the very type of claim that the Supreme Court has rejected outright. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They simply do not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation omitted).

This is especially so in light of Oklahoma's learned intermediary doctrine. Because "the determination of whether a particular medication is medically necessary for a patient lies with the treating physician or other appropriate individual," a pharmacist is immune from suit under Oklahoma law except in instances where a prescription is "unreasonable on its face"—such as prescribing "bizarre quantities," "dosages clearly outside of any acceptable range," or "clearly inappropriate drugs"—or where the prescribed drug is "clearly contraindicated" and the pharmacist has reason to know. *Carista v. Valuck*, 394 P.3d 253, 256-57 (Okla. Civ. App. 2016) (applying the doctrine to bar a claim against a pharmacy for the allegedly improper dispensing of prescription painkillers). The Nation pleads no facts even suggesting that any Pharmacy

Defendant engaged in such conduct in filling even one prescription that allegedly caused the Nation harm.

Because they lack factual content and are thus patently insufficient to state a claim, any claims against the Moving Defendants as retail pharmacies must be dismissed.[4]

## III.    The Complaint Fails to State a Claim Against the Moving Defendants as Distributors.

The Complaint also includes some (though not all) of the Moving Defendants in its references to "Distributor Defendants"—a group that includes 14 different defendants.  Compl. at 1.  It is, therefore, not surprising that the Complaint fails to make any specific allegations about any of the Moving Defendants' conduct as distributors, relying exclusively on improper group pleading and allegations about *other* defendants.  Compl. ¶¶ 200-23, 230-36.  To whatever extent the Nation intends to assert distributor claims against the Moving Defendants, those claims, too, must be dismissed under *Iqbal*.  *See* Moving Defs. Summit County Br. 7-8.

## IV.    The Complaint Fails Because It Cannot Establish Proximate Cause.

Each of the Nation's causes of action fails because the Nation cannot establish that the alleged conduct of the Moving Defendants is the proximate cause of its alleged injuries.

*First*, under Oklahoma's "sole efficient legal cause" rule, the intentional misuse of an intoxicating product is, as a matter of law, the only legally relevant cause of resulting injuries. *McClelland v. Harvie Kothe-Ed Rieman, Post No. 1201, Veterans of the Foreign Wars of U.S., Inc.*, 770 P.2d 569, 572 (Okla. 1989) ("By force of law, voluntary consumption effectively and completely insulates the seller, as the original actor, from all civil liability."); *id.* at 572 n.10

---

[4] It is of course not remotely enough for the Nation to rely on allegations about enforcement actions against some (though not all) of the Moving Defendants.  *See* Compl. ¶¶ 246-56.  Almost all of these actions were brought in other states, all involved settlements, and none has any alleged connection to the Nation and its claimed injuries.  *Id.*

("The causal barrier imposed . . . insulates the vendor from civil accountability regardless of whether the vendor could foresee harm to the vendee or others."). Any injuries that the Nation might try to connect to the Moving Defendants' conduct necessarily stem from the intentional misuse of prescription opioids, the "sole efficient legal cause" under Oklahoma law. *See also* Moving Defs. Broward County Br. 3; Moving Defs. Broward County Reply 3-4.[5]

*Second,* as in other jurisdictions, the learned intermediary doctrine under Oklahoma law precludes a finding of proximate cause. *McKee v. Moore*, 648 P.2d 21, 24-25 (Okla. 1982) ("[T]he physician . . . acts as a learned intermediary between the manufacturer and the consumer, because he is in the best position to evaluate the patient's needs, assess the benefits and risks of a particular therapy, and to supervise its use."); *Carista*, 394 P.3d at 256-57 (applying the doctrine to improper dispensing claim against a pharmacy). Thus, where a prescription opioid falls into the wrong hands, the doctor's independent prescribing decision supersedes and breaks any causal link back to the distributor or pharmacy. *See id.* at 259 (holding that pharmacists are not required "to second-guess the judgment of a doctor in prescribing drugs" and noting that "[p]harmacists are neither physicians nor counselors on the use of illegal drugs" and are "statutorily prohibited from any attempt at diagnosis or treatment that might infringe upon the

---

[5] The Oklahoma Supreme Court has modified Oklahoma's common law causation rule based on public policy by creating a "narrow exception" in cases involving the sale of alcohol to a noticeably intoxicated customer who goes on to injure an innocent third party. *Sanders v. Crosstown Market, Inc.*, 850 P.2d 1061, 1062-63 (Okla. 1993) (discussing *Brigance v. Velvet Dove Restaurant, Inc.*, 725 P.2d 300 (Okla. 1986)). Since that time, "Oklahoma appellate courts have extended *Brigance* only in carefully defined circumstances." *King v. Modern Music Co.*, 33 P.3d 947, 954 (Okla. Civ. App. 2001); *see also Walden v. Sparkman Bros. Corp.*, 879 P.2d 153, 153 (Okla. Civ. App. 1994) ("The holding in *Brigance* was . . . limited to its factual scenario and went no further. . . . Nor did *Brigance* abrogate more than its own corner of the common law.").

legally constituted right or obligation of any practitioner of the healing arts"); *see also* Moving Defs. Broward County Br. 4; Moving Defs. Broward County Reply 4-5.[6]

*Third*, the causal chain between the alleged conduct of the Moving Defendants and the Nation's injuries is far too attenuated to sustain a finding of proximate cause.  *See* Moving Defs. Summit County Br. 14-17; Moving Defs. Broward County Br. 4-5; Moving Defs.  Broward County Reply 3-5.  The causal chain includes the intentional misuse and diversion of prescription opioids by third parties, which necessarily involves both criminal and tortious misconduct.  *See* Compl. ¶¶ 8, 12, 20-22, 472.  Oklahoma law does not recognize proximate causation on these facts.  *See*, *e.g.*, *Lefthand v. City of Okmulgee*, 968 P.2d 1224, 1226 (Okla. 1998) ("Generally, the act of a third person in committing an intentional tort or crime is a supervening cause which relieves the initial negligent actor from liability for resulting harm or injuries."); *Thur v. Dunkley*, 474 P.2d 403, 405 (Okla. 1970) (no proximate cause where "the negligence complained of merely furnishes *a condition* by which the injury was made possible and a subsequent independent act caused the injury") (emphasis added).

Applying these familiar principles, the court in *Prince v. B.F. Ascher Co., Inc.*, 90 P.3d 1020 (Okla. Civ. App. 2004), held there was no proximate causation, as a matter of law, against manufacturers of a nasal inhaler and decongestant called Benzedrex®, the active ingredient of which the decedent (Ballard) had habitually abused as a stimulant.  *Id.* at 1028-29.  The court held that Ballard's misuse "was certainly independent of [defendants'] . . . sale of the product as a nasal inhaler, and unquestionably sufficient in and of itself to bring about Ballard's death."  *Id.*

---

[6] In *Carista*, the Oklahoma Court of Appeals discussed the learned intermediary doctrine as part of its inquiry into the scope of a pharmacist's threshold duty of care.  But because the question of duty under Oklahoma law involves issues of remoteness, foreseeability, and public policy, the learned intermediary doctrine is necessarily relevant to proximate causation as well.

at 1029.  Nor were the defendants "required to anticipate Ballard's criminal acts," *id.*, despite the plaintiff's allegations that "Ballard's misuse of Benzedrex® was foreseeable because, as early as the 1970s, [defendants] were aware . . . of the potential for abuse" and that, "despite knowing their product was addictive and subject to abuse, [defendants] continued to sell Benzedrex® in a container easily dismantled by hand," *id.* at 1024.  These same proximate cause principles, as applied by the court in *Prince*, require dismissal of the Nation's claims here.

## V.     Each of the Nation's Claims Fail for Other Reasons.

Beyond the general defects described above, each of the Nation's individual causes of action is also deficient as a matter of Oklahoma law, federal pleading standards, or both.

### A.     The RICO Claim Fails as a Matter of Law (Count II).

The Manufacturer and Distributor Defendants have explained at length why the Nation's RICO claims fail as a matter of law.[7]  Those arguments apply with equal force to any RICO claim against the Moving Defendants.

The Nation's RICO claim against the Moving Defendants also fails as a simple matter of proper pleading.  The Nation's theory is predicated on a fraudulent scheme of intentionally refusing to report and halt suspicious orders of opioids.  *See* Compl. ¶¶ 349, 401-02, 404-05.[8]

---

[7] *See* Mem. of Law in Supp. of the Mfr. Defs. Joint Mot. to Dismiss Pls. 2d Am. Compl., filed in *County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, No 18-op-45090 (MDL Doc. No. 499-1), at 9-34; Mem. in Supp. of Distribs. Mot. to Dismiss 2d Am. Compl., filed in *County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, No. 18-op-45090 (MDL Doc. No. 491-1), at 7-21; Reply in Supp. of the Mfr. Defs. Joint Mot. to Dismiss Pls. 2d Am. Compl., filed in *County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, No 18-op-45090 (MDL Doc. No. 746), at 14-24; Distribs. Reply in Supp. of Mot. to Dismiss, filed in *County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, No 18-op-45090 (MDL Doc. No. 744), at 3-16.

[8] While the Nation purports to assert a RICO claim against all of the "Diversion Defendants"—including the 23 "Pharmacy Defendants"—its theory and allegations make clear that its sole target is distribution.  The Complaint does not allege any RICO conduct by any defendant acting as a retail pharmacy, focusing instead on the duty to report and halt suspicious orders.  Elsewhere, the Nation clearly distinguishes between distribution conduct and dispensing

Because it sounds in fraud, the Nation's RICO claim is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b).  Moving Defs. Broward County Br. 10-11.  As one of the few complaints trying to shoehorn any of the *Moving Defendants* into RICO claims against the *Manufacturer* and *Distributor Defendants*, the Nation's allegations are manifestly lacking.

Far from pleading with particularity any fraudulent conduct on the part of the Moving Defendants, the Complaint's "Opioid Supply Chain Enterprise" allegations never even *mention* the Moving Defendants, let alone identify a single fraudulent statement or omission by any one of them.[9]  The Nation's assertion that certain information has been "hidden" by Defendants, Compl. ¶ 394, does not excuse its failure even to attempt to comply with Rule 9(b).  A general assertion that information is within the control of defendants does not excuse broad allegations of fraud that provide no notice as to the "who, what, where, when, and how" of the supposedly fraudulent statements or omissions.  *See Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 630-31 (N.D. Ohio 2016).

### B. The Nation's Negligence Claim Fails Because the Moving Defendants Do Not Owe It a Duty (Count VIII).

In addition to the lack of proximate cause, the Nation's negligence claim founders on the threshold requirement of a legal duty running from any of the Moving Defendants to the Nation. *Rose v. Sapulpa Rural Water Co.*, 631 P.2d 752, 756 (Okla. 1981) ("The threshold question in any suit based on negligence is whether defendant had a duty to the particular plaintiff alleged to

---

conduct.  *Compare* Compl. ¶ 468(h) ("failing to report suspicious orders or refuse to fill them"), *with id.* ¶ 468(g) ("failing to review prescription orders for red flags").

[9] The only statements by any of the Moving Defendants identified in the Complaint are about their duties as pharmacies under federal and state law, their recognition of the dangers of opioids, and their efforts as retailers to address the crisis.  Compl. ¶ 240-43.  The Nation pleads no fact that would support a finding that these statements were somehow fraudulent, let alone that they were in any way connected to the alleged RICO scheme involving *distribution*.

have been harmed."); *Nicholson v. Tacker*, 512 P.2d 156, 158 (Okla. 1973) ("Just because the defendant has created a risk which harmed the plaintiff does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable.").  Whether a duty exists is a question of law.  *Smith v. City of Stillwater*, 328 P.3d 1192, 1200 (Okla. 2014).

The Moving Defendants owe no duty to the Nation under Oklahoma law.  To begin with, *all* of the Nation's alleged injuries occurred only *after* third parties illegally diverted prescription opioids to improper use.  Compl. ¶¶ 8, 12, 20-22, 472.  But in Oklahoma, as in most jurisdictions, a defendant generally has "no duty of care to the plaintiff for the intentional and criminal acts of a third person."  *J.S. v. Harris*, 227 P.3d 1089, 1092 (Okla. Civ. App. 2009).  And while there may be exceptions where a defendant's own acts foreseeably create a "high degree of risk" to an identifiable plaintiff, *see Henry v. Merck & Co., Inc.*, 877 F.2d 1489, 1493 (10th Cir. 1989), here the Nation is far too many steps removed from any of the allegedly negligent conduct.  The Nation does not (and cannot) allege that any of its injuries were caused directly by any of the Moving Defendants.  Conclusory allegations that the Nation was a foreseeable victim of downstream effects of diversion do not change that fact.  Under Oklahoma law, "[f]oreseeable risk of harm that will lead the law to say a particular plaintiff is entitled to protection will not generally be extended beyond reason and good sense."  *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007).

In addition, Oklahoma law precludes any finding of a duty in a case like this, which involves the distribution and sale of a lawful medication prescribed by a learned intermediary.  In *Carista*, as noted above, the Oklahoma Court of Appeals rejected a negligence claim brought against a pharmacy for dispensing prescription painkillers, holding that any duty of care on the part of a pharmacy is "limited by the principles and exceptions of the learned intermediary

doctrine." 394 P.3d at 259.  Under that doctrine, "the determination of whether a particular medication is medically necessary for a patient lies with the treating physician or other appropriate individual." *Id.* at 257 (quoting *Pharmcare Okla., Inc. v. State Health Care Auth.*, 152 P.3d. 267, 273 (Okla. Civ. App. 2006)).  The duty of the pharmacist is limited to instances where a prescription is "unreasonable on its face" or where the drug is "clearly contraindicated." *Id.* at 256.  Anything more, the court held, would improperly "place the responsibility on a pharmacist to act as a virtual 'second medical opinion' when filling an otherwise facially valid prescription," and "radically change the accepted duties of a pharmacist." *Id.* at 259.

Again, the Nation has not identified a single specific prescription filled by any of the Moving Defendants that would qualify as an exception to the learned intermediary rule.  Nor can it rely on the aggregate quantity of prescription opioids distributed and dispensed in Oklahoma, Compl. ¶¶ 13, 468(a), which is the direct consequence of prescriptions written by doctors.  As the court noted in *Carista*, pharmacists in Oklahoma are "statutorily prohibited from any attempt at diagnosis or treatment that might infringe upon the legally constituted right or obligation of any practitioner of the healing arts."  394 P.3d at 259; *id.* at 259 n.5.[10]

---

[10] The Nation's vague allegations of other purported duties—based on "special knowledge and special skills," Compl. ¶ 471, "the dangers involved in selling dangerous controlled substances," *id.* ¶ 473, or "industry standards," *id.* ¶¶ 196, 198—are likewise foreclosed by the learned intermediary doctrine and the limited duties of pharmacists under Oklahoma law.  *See Pharmcare*, 152 P.3d at 273 ("A pharmacist's duty . . . is clearly defined and limited . . . ."); *Carista*, 394 P.3d at 255 (rejecting claim that pharmacy failed to follow "proper prescription filling procedures for dangerous medications"); *id.* at 259 (rejecting any duties that could "enmesh pharmacists in the practice of medicine").  Nor does the Nation plead any facts to support a finding that the Moving Defendants' public statements, Compl. ¶¶ 240-43, "engender[ed] reliance" or are otherwise sufficient to create a duty to the Nation.  *See Hill v. J.B. Hunt Transport, Inc.*, 2014 WL 5393040, *1 (E.D. Okla. Oct. 22, 2014) (applying Oklahoma law and citing the Restatement (Second) of Torts § 324A).  Finally, the Nation cannot overcome the attenuation between the alleged duties and its alleged injuries.  *See, e.g., Gaines-Tabb v. ICI Explosives USA, Inc.*, 995 F. Supp. 1304, 1328 n.19 (W.D. Okla. 1996) (plaintiffs failed to state

Finally, the Nation cannot manufacture a duty to support its negligence claim by pointing to various laws and regulations related to the diversion of controlled substances.  Compl. ¶ 475. For one, negligence per se does not create a legal duty where, as here, none otherwise exists, but only works to "substitute statutory standards for parallel common law, reasonable care duties." *Howard v. Zimmer*, 299 P.3d 463, 467 (Okla. 2013).  For another, even if a duty did arise from any of the cited statutes or regulations, that duty would run to the federal government or the State of Oklahoma, not to the Nation.  *See* Moving Defs. Summit County Br. 12.  The Nation has not alleged—or pleaded facts that would support a finding—that its claimed harms are of the type the laws at issue were intended to prevent or that the Nation is a member of the class they were designed to protect.  *Howard*, 299 P.3d at 467.[11]

### C.    The Nation Fails to State a Claim Under the Lanham Act (Count III).

Any claim against the Moving Defendants under the Lanham Act is entirely unfounded. The crux of the Nation's claim is that "Defendants" (again, collectively) engaged in false advertising designed to deceive doctors and the public about the safety of opioids for treating chronic pain.  Compl. ¶¶ 411, 417.  But the *only* allegations having anything to do with advertising or promotion are about the *Manufacturer Defendants*.  Because the Nation has not

---

a negligence claim "because it is apparent from their complaint that they cannot show that the violation of [the alleged duty] was the direct or proximate cause of the Plaintiffs' injuries").

[11] In *Howard*, the Oklahoma Supreme Court held that Oklahoma law did not bar a negligence per se claim based on a violation of a federal regulation under the Medical Device Amendments ("MDA") to the Food, Drug, and Cosmetics Act.  Crucial to *Howard*'s reasoning was its conclusion that the U.S. Supreme Court had "blessed" the availability of parallel state claims under the MDA.  *See* 299 P.3d at 470-71, 473 (relying on *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) and *Medtronic v. Lohr*, 518 U.S. 470 (1996)).  The court likewise noted that the MDA satisfied the test for implying a private right of action under Oklahoma law.  *Howard*, 299 P.3d. at 472 & n.38.  In contrast, courts have uniformly rejected any private cause of action under the federal Controlled Substances Act.  *See* Moving Defs. Summit County Br. 12-13.

alleged any "commercial advertising or promotion" by any of the Moving Defendants, 15 U.S.C.

§ 1125 (a)(1)(B), its Lanham Act claim against the Moving Defendants must be dismissed.

Nor can the Nation make out a Lanham Act claim against the Moving Defendants on the

theory that they falsely represented that they were taking steps to prevent diversion.  Compl.

¶ 413.  As a threshold matter, the purported misrepresentations were *not* about the "nature,

characteristics [or] qualities" of the goods (*i.e.*, prescription opioids) themselves—as required for

a false advertising claim, 15 U.S.C. § 1125(a)(1)(B)—but about the Moving Defendants' internal

policies and practices, *see* Compl. ¶¶ 240-43.  Even setting that deficiency aside, the Nation

makes no allegations that would support a finding of deception or materiality.  *See Herman*

*Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (a claim for

damages based on false advertising requires, among other elements, that the false statement

actually deceive a "substantial portion" of the consumer audience and that it is "material," which

means "likely [to] influence the deceived consumer's purchasing decisions").

Finally, the Nation's nonsensical attempt to plead causation for its Lanham Act claim

only underscores the fatal flaws in the Nation's claims against the Moving Defendants.  The

Nation alleges that, but for the Moving Defendants' *statements* about preventing diversion,

patients somehow would not even have been *able* to fill improper opioid prescriptions and so

would not have sought treatment from doctors who improperly prescribed opioids.  Compl.

¶ 416.  Unexplained (and inexplicable) is the notion that *statements* about anti-diversion

efforts—as opposed to actual efforts—could have had any effect on the ability of hypothetical

patients to divert opioids by seeking prescriptions from dishonest physicians.

12

### D. Oklahoma Law Does Not Recognize the Nation's Nuisance Claim (Count VII).

The Nation's nuisance claim fails for all the same reasons outlined in prior briefing. Moving Defs. Broward County Br. 9-10; Moving Defs. Broward County Reply 8-10.

No Oklahoma court has ever recognized a public nuisance claim based on the distribution and sale of a lawful product, where the claimed injury was the result of the misuse of that product only *after* it had passed into the hands of third parties and was no longer within the defendant's control.  It is not for this Court to break such new ground.  *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577-78 (6th Cir. 2004) (warning against "speculat[ing] on any trends of state law" and noting that federal courts "should be extremely cautious about adopting substantive innovation in state law") (quotation omitted); *id.* at 577 ("[W]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [courts] should choose the narrower and more reasonable path."); *see also* Moving Defs. Broward County Reply 9-10 (discussing relevant Sixth Circuit case law).

### E. The Nation Fails to State a Civil Conspiracy Claim (Count X).

The Nation's conspiracy claim fails.  Under Oklahoma law, "civil conspiracy itself does not create liability."  *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997).  Rather, "[t]o be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means."  *Id.*  Because the Nation has failed to state any viable underlying claim, its civil conspiracy claim likewise must be dismissed.

Moreover, even if the Nation had managed to plead a viable underlying claim, it has nonetheless failed to allege any facts that could show the "essential element of *agreement*" as to the Moving Defendants.  *Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1268 (W.D. Okla. 2012) (emphasis added).  A claim for civil conspiracy requires "a meeting of minds

on the object or course of action."  *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175

(Okla. 2008) (quoting *Closs v. Goose Creek Consol. Indep. School. Dist.*, 874 S.W.2d 859, 872

(Tex. App. 1994)).  But all the Complaint offers are vague generalizations, such as that "[t]he

Defendants agreed with each other to accomplish the unlawful purposes of marketing, selling,

distributing, and retailing prescription opioids through violations of law and misrepresentations."

Compl. ¶ 491.  Such conclusory pleading is plainly insufficient.  *Hitch Enters.*, 859 F. Supp. 2d

at 1268 (plaintiffs' "sole conclusory statement" alleging agreement was insufficient under

*Twombly* to state a claim for civil conspiracy under Oklahoma law).

F.  **Oklahoma Law Does Not Recognize the Nation's Unjust Enrichment Claim (Count IX).**

The Nation's unjust enrichment claim fails because the Complaint does not allege that the

Nation conferred any payment or other benefit on any of the Moving Defendants.  *See Dollar*

*Rent A Car Sys., Inc. v. P.R.P. Enters., Inc.*, 2006 WL 1266515, at *27 (N.D. Okla. May 8, 2006)

(citing *French Energy, Inc. v. Alexander*, 818 P.2d 1234, 1237 (Okla. 1991)).[12]  Instead, the

Nation anchors its unjust enrichment claim to a theory found nowhere in Oklahoma law: that the

Nation's expenditures to respond to various "negative externalities" created by the Moving

Defendants' alleged conduct is a "benefit" conferred directly on the Moving Defendants.

Compl. ¶ 449.  No Oklahoma court has ever recognized such a theory.  Neither should this one.

*See* Moving Defs. West Boca Reply Br. 9 (citing federal cases rejecting an "externalities" theory

of unjust enrichment as unsupported by state law); Moving Defs. Broward County Reply 9-10

(discussing Sixth Circuit cases warning against expanding liability under state law).

---

[12] Under Oklahoma law, unjust enrichment also requires the absence of a remedy at law.  *See*
*Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006); *Tillman ex rel.*
*Estate of Tillman v. Camelot Music, Inc.*, 408 F.3d 1300, 1309 (10th Cir. 2005) (citing *Hydro*
*Turf, Inc. v. Int'l Fidelity Ins. Co.*, 91 P.3d 667, 673 (Okla. Civ. App. 2004)).  Thus, any viable
claim for damages would foreclose an equitable award based on unjust enrichment.

## CONCLUSION

All claims against the Moving Defendants should be dismissed with prejudice.

Dated:  August 31, 2018

Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Ste. 300
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlit-beck.com

*Counsel for Walgreens Boots Alliance, Inc.
and Walgreen Co.*

/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Ste. 1000
Washington, DC  20036
(202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Health Corporation, CVS
Pharmacy Inc., Oklahoma CVS Pharmacy,
LLC, and Omnicare Distribution Center LLC*

/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

15

/s/ Ralph Streza (consent)
Ralph Streza
CRITCHFIELD, CRITCHFIELD &
  JOHNSTON - MEDINA
54996 Foote Road
Medina, Ohio 44256
(330) 723-6404
streza@ccj.com

*Counsel for Cityplex Pharmacy*


/s/ Gregory O'Brien (consent)
Gregory O'Brien
CAVITCH FAMILO & DURKIN
1300 East Ninth Street, 20th Floor
Cleveland, Ohio 44114
(216) 621-7860
gobrien@cavitch.com

*Counsel for Rogers Drug Co., Inc.*


/s/ C. Richard McDonald (consent)
C. Richard McDonald (0017537)
Brian Lange (0080627)
BONEZZI SWITZER POLITO
  & HUPP CO. L.P.A.
1300 East Ninth Street, Suite 1950
Cleveland, Ohio 44114
(216) 875-2767
rmcdonald@bsphlaw.com
blange@bsphlaw.com

*Counsel for Economy Pharmacy, Inc.*

/s/ Sean H. McKee (consent)
Sean H. McKee, OBA #14277
Matthew B. Free, OBA #18055
Benjamin D. Reed, OBA #22696
Steven W. Simcoe, OBA #15349
BEST & SHARP
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, Oklahoma  74103
(216) 875-2767
smckee@bestsharp.com
mfree@bestsharp.com
breed@bestsharp.com
ssimcoe@bestsharp.com

*Counsel for Reasor's LLC, City Drug Co.,
City Drug of Coweta, Inc., Spoon Drugs, Inc.,
CareFirst Pharmacy, Inc., Ernie's Pharmacy
& Wellness Center, Inc., Gaddy Discount
Drug, Inc., M&D Star Drug, Inc., Med-Econ
Drug, Inc., Pippenger Pharmacies, LLC,
Freeland Brown Pharmacy, Inc.*


/s/ Brian D. Kerns (consent)
Brian D. Kerns (0037015)
William A. Peseski (0095235)
BONEZZI SWITZER POLITO
  & HUPP CO. L.P.A.
46 Public Square, Suite 230
Medina, Ohio 44256
(330) 952-0440
bkerns@bsphlaw.com
wpeseski@bsphlaw.com

Edward D. Papp (0068574)
BONEZZI SWITZER POLITO
  & HUPP CO. L.P.A.
1300 East Ninth Street, Suite 1950
Cleveland, Ohio 44114
(216) 875-2767
epapp@bsphlaw.com

*Counsel for NRF, Inc. d/b/a
Couch Pharmacy*

17

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing Memorandum in Support of Motion to Dismiss First Amended Complaint by Defendants CareFirst Pharmacy, City Drug, Cityplex Pharmacy, Couch Pharmacy, CVS, Economy Pharmacy, Ernie's Pharmacy, Freeland Brown Pharmacy, Gaddy Discount Drug, M&D Star Drug, Med-Econ Drug, Omnicare, Pippenger Pharmacies, Reasor's, Rogers Drug Co., Spoon Drugs, Walgreens, and Walmart is within the pages limitations agreed to among the parties pursuant to CMO-6.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreens Boots Alliance, Inc. and Walgreen Co.*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that this 31st day of August, 2018, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreens Boots Alliance, Inc. and Walgreen Co.*