# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FILED**
UNITED STATES DISTRICT CE
ALBUQUERQUE, NEW MEXI
JUL 3 0 2001

CLERK

ACOMA PUEBLO, et al.,

    Plaintiffs,

vs.                                  No. CIV 99-1049M/WWD

THE AMERICAN TOBACCO
COMPANY, et al.,

    Defendants.

RECEIVED JUL 3 1 2001

## MEMORANDUM OPINION AND ORDER

This case comes up on Motion of Certain Defendants to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted. Although this motion was filed prior to Plaintiffs' filing an Amended Complaint, several of Plaintiffs' claims remain the same, and Defendants request the motion be considered as it applies to the Amended Complaint, including new claims.

I have reviewed the motion and all that pertains and find it should be granted. As Plaintiffs request, I dismiss without prejudice.

### Plaintiffs

Plaintiffs are Indian tribes, bands, nations and pueblos seeking declaratory and injunctive relief and money damages against tobacco companies and related corporations involved in tobacco research, marketing and public relations. Plaintiffs allege fraud, intentional and negligent misrepresentation, negligence, civil conspiracy and prima facie tort and also accuse Defendants of manufacturing and marketing "unreasonably dangerous products" and of concealing and misrepresenting the dangerous nature of these products, all causing Plaintiffs to incur


54

overwhelming costs for the treatment of tobacco-caused illnesses and the provision of tobacco-related health care to their individual members. Alleging 5.5 billion dollars spent on Indian health care for tobacco-related illnesses since 1962, Plaintiffs seek reimbursement, as well as punitive damages for allegedly wanton, malicious and fraudulent conduct in the selling and promoting of tobacco-related products to Plaintiffs' individual members.

By the Amended Complaint, Plaintiffs add three claims pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. sec.1962 *et seq.*, alleging that together Defendants constitute an ongoing "enterprise" (i) engaged in maximizing sales of tobacco products, (ii) misleading the public, health care payors and regulators and "the public health establishment" and suppressing information regarding the addictive properties and adverse health effects of smoking and nicotine, (iii) manipulating nicotine levels in tobacco products, (iv) carrying out a scheme to shift the costs of health care for tobacco-smoking diseases onto others, and (v) using illicit proceeds to acquire an interest in Regulatory Enterprises and to make political contributions for the purpose of influencing public officials and political and legal processes. Again, the injury alleged centers on exceptionally high expenditures for provision of tobacco-related health care.

### Defendants

Defendants are 13 corporations which manufacture, test and market tobacco products. Some of these Defendants contend by the present motion that Plaintiffs cannot pursue any case for recoupment of health care costs. First, Defendants argue that Plaintiffs have no right to recoup federal funds. Second, Defendants contend the stated claims are too remote to confer standing on the Plaintiff tribes, bands, nations and pueblos because the injuries alleged are solely

2

derivative of harm to Plaintiffs' individual members rather than direct harm to Plaintiffs. Third, Defendants argue that Plaintiffs' state law claims are preempted by federal law, and that each of them are otherwise fatally defective. Some state claims, Defendants contend, are redundant. Others are without sufficient specificity, are missing essential legal elements, are lacking in proximate cause or are too speculative and attenuated.

### Standards Applied

A motion pursuant to Fed. R. Civ. P. 12 must be limited to issues of law. Wright and Miller, Federal Practice and Procedure: Civil 2d, sec.1356 (1990), 303. "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case." Fed. Prac.& Proc., supra at 294. The inquiry must therefore be restricted to the content of the complaint. Id. at 298. The issue is not whether a plaintiff is likely to prevail, but rather whether the plaintiff is entitled to go forward with evidence. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

A complaint is not subject to dismissal for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1359 (10th Cir.1989), quoting Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986).

All facts are to be considered in the light most favorable to the plaintiff. Id.; Housing Authority of the Kaw Tribe v. City of Ponca City, 952 F. 2d 1183,1187 (10th Cir.1991); Walter

3

v. Morton, 33 F.3d 1240, 1242 (10th Cir.1994). A district court is bound to construe all well-pleaded facts as true. Murrell v. School District No.1, Denver, 186 F.3d 1238 (10th Cir.1999). All reasonable inferences must be drawn in the plaintiff's favor. Breidenback v. Bolish, 126 F.3d 1288, 1293 (10th Cir.1997).

## The Motion to Dismiss

Defendants contend that the funds Plaintiffs seek are not theirs to recover. Defendants maintain that all expenditures for Indian health care have been those of the United States government; and in those instances where monies were provided Plaintiffs by contract, compact or grant, the transfer to a tribe or tribal government could not have changed the federal character of the allocated funds. Thus, Defendants argue that if there exists any legitimate claim to reimbursement, it lies solely with the United States. "[T]he Tribes' administrative responsibilities under the ISDEA [Indian Self-Determination and Education Assistance Act]," state Defendants, citing 25 U.S.C. sec. 450c and sec.1682, "do not include enforcement activities to recover federal funds from third party tortfeasors."

Pointing to the Indian Health Care Act, 25 U.S.C. sec.1601 *et seq.*, and the Federal Medical Care Recovery Act, 42 U.S.C. sec.2651, the Motion to Dismiss also argues that Plaintiffs' claims are preempted by federal law. These statutes, Defendants argue, give the United States "the exclusive right to recover from an alleged tortfeasor the cost of medical care provided to individual Native Americans through IHS [Indian Health Service]."

Defendants also argue lack of a direct injury. Defendants characterize this case as a "third-party payor" lawsuit and insist that all third-party payor cases brought against the tobacco industry thus far have failed. To support this proposition, Defendants cite appellate decisions

4

from three federal circuits, the Second, Ninth and Third, all dated 1999. In each of these cases the circuit courts held that the plaintiffs, labor union health and welfare funds, could not sue to recover tens of millions of dollars spent on tobacco-related health care because the alleged economic injuries were purely derivative of the physical injuries suffered by non-party individuals and were too remote as a matter of law. Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229 (2d Cir.1999); Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912 (3d Cir.1999); Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc., 185 F.3d 957 (9th Cir.1999).

In response, Plaintiffs state generally they "have statutory, quasi-sovereign, and historical rights allowing them to seek recovery of funds expended on smoking-related health care." In explaining more specifically the bases of their argument, Plaintiffs first emphasize an historical right creating a special interrelation and ground their purported right to recover monies spent in the past by the federal government for Indian health care in "a unique relationship between the U.S. government and the Indian Nations." This relationship, Plaintiffs insist, includes the federal government's obligation to provide health care and other services to Indian Nations "*as partial consideration for tribal land cessions.*" From this--the provision of services "in exchange for valuable consideration" and as a matter of right—Plaintiffs infer a vested entitlement that carries with it "a historical right to seek reimbursement of health care expenditures."

Second, while initially subject to a centralized control exercised exclusively by agencies of the federal government, Plaintiffs maintain that current administration of Indian health care services through the Indian Health Service, United States Department of Health and Human Services allows for a "more decentralized control by Indian Nations." This, Plaintiffs assert,

5

comports with legislation governing Indian affairs which expressly encourages a maximum participation among Indian tribes, bands, nations and pueblos in the planning and management of services to their members and further reinforces Plaintiffs' claim to recoupment of health care funds. See, e.g.: 25 U.S.C. sec.1601(b).

Third, Plaintiffs contend that statutes which control the outcome of this case, and in particular the pending motion, are ambiguous and that as a matter of law "ambiguous statutory provisions must be interpreted to the benefit of Native Americans." The provisions Plaintiffs list as ambiguous are 25 U.S.C. sec.1621e and 42 U.S.C. sec. 2651.

The first constitutes a provision of the Indian Catastrophic Health Emergency Fund, 25 U.S.C. sec 1621a *et seq.*, established "solely for the purpose of meeting the extraordinary medical costs associated with the treatment of victims of disasters or catastrophic illnesses who are within the responsibility of the [Indian Health] Service." At section 1621e, this law allows a right to recover

> the reasonable expenses incurred by the Secretary [of Health and Human Services], an Indian tribe, or a tribal organization in providing health services through the Service, an Indian tribe, or tribal organization, to any individual to the same extent that such individual, or any governmental provider of such services, would be eligible to receive reimbursement or indemnification for such expenses if–
> (1) such services had been provided by a nongovernmental provider, and
> (2) such individual had been required to pay such expenses and did pay such expenses. Id. at 1621e(a).

The same law at section 1621e(d) provides a right to damages; and at section 1621e(e) states:

> The United States, an Indian tribe, or a tribal organization may enforce the right of recovery provided under subsection (a) of

6

> this section by--
>
> . . . .
>
> (2) instituting a separate civil action, after providing to such individual, or to the representative or heirs of such individual, notice of the intention of the United States, an Indian tribe, or a tribal organization to institute a separate civil action.

Fourth, Plaintiffs argue that the doctrine of *parens patriae* enables them as sovereign entities possessing "quasi-sovereign interests in the well-being of their populations" to maintain a suit in their own names against the Defendants and to recover and retain monetary damages resulting from Defendants' wrongful acts. Plaintiffs cite the several successful cases brought by individual states against the tobacco companies and adjudge themselves identically situated with regard to vindicating "a cognizable, primary public interest directly ravaged by the conduct of the tobacco industry." According to Plaintiffs, "[t]he Nations have the same direct action as the states had;" and all of the States' Attorneys General actions, except one, survived a motion to dismiss.

## Conclusions

I cannot agree with Plaintiffs' analysis of either the facts or the law. As numerous courts confronted with the same issues, I conclude that Plaintiffs' alleged injuries are too remote as a matter of law and preclude both recovery of damages and the right to proceed. I rely principally on Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992), and Laborers Local 17 v. Philip Morris, Inc., supra, and I consider the reasoning articulated by the Second Circuit in Local 17 completely applicable to the present facts.

Clearly, standing to sue under RICO requires both a direct injury and proximate causation. Id. Yet, I see neither in this case; and Plaintiffs are without the elements necessary to go forward. "[W]here a plaintiff complains of injuries that are wholly derivative of harm to a

7

third party, plaintiff's injuries are generally deemed indirect and as a consequence too remote, as a matter of law, to support recovery." Id. at 235-236. "Holmes emphasized that although the direct injury test 'is not the sole requirement of [proximate] causation, it has been one of its central elements.'" Id. at 235, citing Holmes v. Securities Investor Protection Corp., supra at 269.

I also reject Plaintiffs' argument they are entitled to recover monies expended on their behalf by the federal government. Plaintiffs' reasoning that an entitlement to health care which results from a past exchange for "valuable consideration" carries with it a right to direct reimbursement whenever the need generating the health care has been tracked to third-party tortfeasors does not account for either the essential character of the funds expended or federal statutes which allow only the United States to sue for recovery. The argument as an academic or logical exercise is insufficient to convert federal money to tribal funds or circumvent federal schemes; and Plaintiffs present nothing beyond the proposition itself to support it.

I see the right on which Plaintiffs rely not as a right to any set amount of federal funds, to be used for whatever purposes arise, but as provision of what is needed or occasioned by particular circumstances. Initially, then, I wonder whether the monies Plaintiffs seek to recover would have been available at all had it not been for the specific needs of tobacco-related illnesses.

Plaintiffs do not address the point. Plaintiffs, of course, unilaterally interpret historical documents and precedent to their advantage. In so doing, they place a specific dollar value on their treaty rights that may or may not reflect what would have been spent on Indian health care had there been little tobacco-related need. Yet, neither I nor Plaintiffs can assume that had monies not been provided specifically with regard for a prevalence of tobacco-related illnesses,

8

the same allocations would have been made available for other uses, or in other words, whether there would exist any dollars to claim. Thus, regardless of the terms by which Plaintiffs attempt to characterize the present action, they very plainly seek a direct reimbursement for the supposedly traceable expenses paid by the federal government for tobacco-related health care and not for any predetermined amount of dollars owed them for lands granted, and the arguments advanced to support receipt of federal funds does nothing to change the fact that while Plaintiffs are entitled to the health care, they present nothing which evidences a right to receive unconstrained distribution of federal funds as if the latter were in payment of a money debt.

I also reject Plaintiffs' arguments that current trends in the administration of Indian health care allow for a "more decentralized control by Indian Nations" and justify a return of federal expenditures to Plaintiffs rather than the United States. Plaintiffs' argument contradicts federal statutes which rest the bottom line for Indian health care generally in the federal government and specifically in the Indian Health Service, and contrary to what Plaintiffs suggest, I find nothing ambiguous in the pertinent statutes. Plaintiffs state what they wish were the case, but which, at best, exists as little more than a superficial or apparent reality. The federal government alone stands responsible for and in control of federal money; and contracts, grants and other considerations aside, Plaintiffs can point to nothing which indicates real abrogation of that control.

I also agree with Defendants that federal law preempts the field of Indian health care, and the right to reimbursement from Defendants, if any, resides exclusively in the United States. Pursuant to 42 U.S.C. sec. 2651, only the United States can bring an action to recover the value of health services paid for or furnished by the federal government. In addition, Title 25 U.S.C.

9

sec.1682 provides that "the Indian Health Service may seek subrogation of claims including but not limited to . . . disease, or disability claims, . . . the proceeds of which shall be credited to the funds established by . . . the Indian Health Care Improvement Act." Again, I see no ambiguity in the statutes which direct the Indian health care responsibility. I conclude, as well, that the Indian Health Service is expressly authorized to subrogate personal injury claims of individual members of Indian tribes, bands, nations and pueblos who received health care for tobacco-related injuries and illnesses, and no other person or entity is so authorized or entitled.

### State Law Claims

These conclusions also bar all of Plaintiffs' state law claims. New Mexico holds to the principles which bar recovery without a direct injury. Loucks v. Albuquerque National Bank, 76 N.M.735, 746-747, 418 P.2d 191, ____ (1966). Plaintiffs' fraud, civil conspiracy and other state claims, whether or not deficient of proximate cause, are absent the required direct injury, the same as Plaintiffs' federal claims. See: Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, supra at 967-968.

Finally, without specific authority to the contrary, I do not see any support for the position that Plaintiffs' sovereignty should make a difference. A direct injury and proximate cause are applicable to all claims alleged, irrespective of Plaintiffs' status as sovereign governments, and Plaintiffs point to no statutory basis which enables them to act in a capacity equivalent to state attorneys general.

For all of these reasons, I conclude that Plaintiffs can prove no set of facts which will allow the recovery sought, and Defendants are entitled to a dismissal. I dismiss without prejudice, as requested by Plaintiffs in their response to the motion.

10

NOW, THEREFORE, IT IS ORDERED that the Motion of Certain Defendants to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted is hereby granted, and

IT IS FURTHER ORDERED that all of Plaintiffs' claims are dismissed without prejudice.

_____
SENIOR UNITED STATES JUDGE

11