**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| This document relates to: *The State of Alabama v. Purdue Pharma L.P.*, No. 1:18-op-45236-DAP | Hon. Dan Aaron Polster |

**REPLY IN SUPPORT OF THE MANUFACTURER DEFENDANTS' JOINT MOTION
TO DISMISS THE STATE OF ALABAMA'S FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.      THE STATE'S CLAIMS FOR DAMAGES FAIL FOR SEVERAL REASONS .............2

      A.     The Derivative-Injury Rule Bars the Damages Claims .........................................2

      B.     The State Has Failed To Plead Actual Causation ...................................................5

      C.     The State Cannot Establish Proximate Causation....................................................6

II.     THE STATE'S DRUG-LAW CLAIMS (COUNTS III & IV) FAIL ...............................8

III.    THE STATE'S CLAIM UNDER THE ALABAMA DECEPTIVE TRADE PRACTICES ACT (COUNT II) FAILS ........................................................................8

      A.     The State is Not a "Consumer" Under the ADTPA..................................................8

      B.     The State Has Failed To Plead Any False or Misleading Statements with Particularity..............................................................................................................9

      C.     The State Has Failed To Plead an "Unconscionable Act"......................................9

IV.    THE STATE'S STATUTORY PUBLIC NUISANCE CLAIM (COUNT I) FAILS........10

V.     THE STATE'S COMMON LAW CLAIMS FAIL FOR ADDITIONAL CLAIM-SPECIFIC REASONS ................................................................................................11

      A.     The State's Negligence Claim (Count V) Fails ...................................................11

      B.     Alabama's Wantonness Claim (Count VII) Fails .................................................12

      C.     The State's Unjust Enrichment Claim (Count VI) Fails.......................................12

VI.    THE STATE'S CLAIMS FOR MONETARY RELIEF ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS ...........................................................13

      A.     The *Nullum Tempus* Doctrine Does Not Exempt the State from the Statutes of Limitations .......................................................................................13

      B.     The State Has Failed Adequately To Plead Fraudulent Concealment..................15

CONCLUSION.....................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982)..................................................................................................4, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................2, 10

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
  273 F.3d 536 (3d Cir. 2001)....................................................................................10, 11

*City of Birmingham v. Crow*,
  101 So. 2d 264 (Ala. 1958).......................................................................................3

*City of Chicago v. Beretta*,
  821 N.E. 2d 1099 (Ill. 2004)....................................................................................7, 10

*City of Chicago v. Purdue Pharma, L.P.*,
  No. 14-C-4361, 2015 WL 2208423 (N.D. Ill. May 8, 2015)...................................5

*Colonial Bank v. Ridley & Schweighert*,
  551 So. 2d 391 (Ala. 1989).......................................................................................11

*Cooper v. Bristol-Myers Squibb Co.*,
  No. 07-cv-885, 2009 WL 5206130 (D.N.J. Dec. 30, 2009).....................................9

*Cox v. Bd. of Trs. of Univ. of Alabama*,
  49 So. 814 (Ala. 1909)..............................................................................................13

*Craft v. Triumph Logistics, Inc.*,
  107 F. Supp. 3d 1218 (M.D. Ala. 2015) ..................................................................12

*Georgia v. Tennessee Copper Co..*,
  206 U.S. 230 (1907)..................................................................................................4

*Holmes v. Behr Process Corp.*,
  No. 2:15-cv-0454, 2015 WL 7252662 (N.D. Ala. Nov. 17, 2015)...........................9

*In re Baldwin-United Corp.*,
  770 F.2d 328 (2d Cir. 1985)......................................................................................4

*In re Russell*,
  181 B.R. 616 (M.D. Ala. 1995) ................................................................................9

*Int'l Broth. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*,
196 F.3d 818 (7th Cir. 1999) .................................................................................3

*Layne v. Garner*,
612 So. 2d 404 (Ala. 1992) .................................................................................9

*Lewis v. Cleveland Clinic Found.*,
No. 1:12 CV 3003, 2013 WL 6199592 (N.D. Ohio 2013) .......................................9

*Maryland v. Louisiana.*,
451 U.S. 725 (1981) .................................................................................4

*Massachusetts v. E.P.A.*,
549 U.S. 497 (2007) .................................................................................4, 6

*Miller v. State*,
38 Ala. 600 (1863) .................................................................................14

*Missouri ex rel. Koster v. Harris*,
847 F.3d 646 (9th Cir. 2017) .................................................................................4

*Parker Bldg. Servs. Co., Inc. v. Lightsey ex rel. Lightsey*,
925 So. 2d 927 (Ala. 2005) .................................................................................12

*Purdue Pharma L.P. v. Kentucky*,
704 F.3d 208 (2d Cir. 2013) .................................................................................4

*Regence BlueShield v. Philip Morris, Inc.*,
40 F. Supp. 2d 1179 (W.D. Wash. 1999) .................................................................................3

*Reid v. Unilever U.S., Inc.*,
964 F. Supp. 2d 893 (N.D. Ill. 2013) .................................................................................9

*Reyes v. Wyeth Labs.*,
498 F.2d 1264 (5th Cir. 1974) .................................................................................7

*Sellers v. A.H. Robins Co.*,
715 F.2d 1559 (11th Cir. 1983) .................................................................................15

*Sidney Hillman Health Ctr. v. Abbott Labs.*,
873 F.3d 574 (7th Cir. 2017) .................................................................................5

*State v. Estate of Crocker*,
83 So. 2d 261 (Ala. Ct. App. 1955) .................................................................................13

*State v. Mudd*,
143 So. 2d 171 (Ala. 1962) .................................................................................13

*Stone v. Smith, Kline & French Labs.*,
    447 So. 2d 1301 (Ala. 1984) ...................................................................................7

*Tipler v. McKenzie Tank Lines.*,
    547 So. 2d 438 (Ala. 1989) ...................................................................................11

*United Food & Commercial Workers Unions, Emp'r Health & Welfare Fund. v.*
    *Philip Morris, Inc.*,
    223 F.3d 1271 (11th Cir. 2000) ...............................................................................3

*U.S. v. Dekalb County*,
    729 F.2d 738 (11th Cir. 1984) ...............................................................................12

*Vines v. Plantation Motor Lodge*,
    336 So. 2d 1338 (Ala. 1976) ...................................................................................6

*Wyeth, Inc. v. Weeks*,
    159 So. 3d 649 (Ala. 2014) ...................................................................................11

## Statutes

Ala. Code § 6-5-155 *et seq.* ...................................................................................1

Ala. Code § 8-19-3(2) ...................................................................................14

Ala. Code § 8-19-3(5) ...................................................................................14

Ala. Code § 8-19-5(27) ...................................................................................10

Ala. Code § 8-19-14 ...................................................................................14

## Regulations

Ala.Admin. Code r. 680-X-3-.05(2) ...........................................................................8

## Other Authorities

Restatement (Second) of Torts § 821B cmt. g ...........................................................................10

## INTRODUCTION

The State's Opposition abandons claims and remedies sought in the First Amended Complaint, urges the Court to grant the State special judicial exemptions from causation, direct-injury, and statute-of-limitations requirements, and seeks to bypass baseline pleading requirements. Neither the State's status as a governmental entity nor any public health crisis warrant such an improper lowering of the bar.

The State's Opposition challenges the promotion of opioid medications for their FDA-approved indications and second-guesses the FDA's expert decision to approve opioids for sale in the United States. Opp. 6 ("The opioids *are* the 'injury, disease, or sickness.'"). The State apparently believes Alabama law requires the Manufacturer Defendants to stop selling opioid medications altogether, or at least to prohibit their use to treat chronic pain. But federal law preempts those claims, which impermissibly conflict with the FDA's determinations that opioid medications are safe and effective to treat chronic pain. *See* Mfr. Def. Mot. to Dismiss Mem. in *Summit* (Dkt. No. 499) at 34-36.

The Opposition also confirms that the State's claims are not cognizable as a matter of Alabama law and settled tort principles. The State admits that its claims depend on alleged harms to third parties, which courts repeatedly have held are barred by the derivative-injury rule. The State does not dispute that it continues to reimburse for opioid prescriptions, which forecloses any notion that the Manufacturer Defendants' alleged misrepresentations "caused" the State's alleged losses in reimbursing past prescriptions. And the State concedes that its entire suit depends on criminal wrongdoing by third parties, which breaks any causal chain.

The State also now abandons its count under Alabama's drug-related nuisance statute, Ala. Code § 6-5-155 *et seq*., and does not dispute that it has no claim for damages under the Alabama Controlled Substances Act. Opp. 37. The State fails to address—and therefore has

1

waived—arguments that it is not a "consumer" that can bring an action for civil damages under the Alabama Deceptive Trade Practices Act, and in any case, the State has failed to plead the claim with particularity (arguing instead that it is exempt from the usual particularity requirements). The State urges the Court to expand Alabama public nuisance law in an unprecedented manner that would expand that doctrine beyond all reasonable limits. And it urges the Court to ignore statutes of limitations that apply to its claims. The Court should apply settled principles of law and dismiss the First Amended Complaint in its entirety.

## <u>ARGUMENT</u>

## I.      The State's Claims for Damages Fail for Several Reasons

### A.      The Derivative-Injury Rule Bars the Damages Claims

The derivative-injury rule bars the claims here because, as the State admits, "***most of the State's damages would not exist but-for its citizens being injured by Defendants' bad acts***." Opp. 4 (emphasis added). The State contends it was damaged when it incurred costs: (1) to reimburse allegedly inappropriate opioid prescriptions for individuals (1AC ¶ 358); (2) to treat individuals suffering from Neonatal Abstinence Syndrome (*id.* ¶ 360); and (3) to treat individuals for addiction and/or overdose (*id.* ¶¶ 361-63). Each of these claimed losses depends on alleged harm to others. Simply labeling those purported losses "direct, independent" injuries (Opp. 4-5) does not make it so. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The State tries, but fails, to distinguish decisions barring similar claims under the derivative-injury rule. The State argues that "the Plaintiff [in each of those cases] sued a tortfeasor to recover monies that Plaintiff ***owed or paid to the injured party***," while here the State paid health care providers. Opp. 5 (emphasis added). But that is a distinction without a difference. Whether the State paid health care providers for opioid medications that allegedly

2

harmed third parties, or the State reimbursed the third parties directly, the claimed injury still derives from alleged harm to others. Indeed, courts have rejected the very distinction relied on by the State here. *See Int'l Broth. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 826-27 (7th Cir. 1999) (holding that, although "plaintiffs may pay the resulting bills directly to hospitals and physicians, [] this does not produce a direct injury"); *Regence BlueShield v. Philip Morris, Inc.*, 40 F. Supp. 2d 1179, 1183-84 (W.D. Wash. 1999) (rejecting health plan's claims as derivative even though they "purchase[d] health care services directly from providers, unlike either traditional insurers or union trust funds").

Even the State's own cases do not support its argument. In *City of Birmingham v. Crow*, the plaintiff city sought recovery of the salary it paid to an injured police officer, but also the "medical, surgical, and hospital expenses paid by the [c]ity for the treatment of said policeman." 101 So. 2d 264, 264-65 (Ala. 1958). As to both types of expenditures, the Alabama Supreme Court held that the city could not recover damages directly against the third-party tort-feasor "on account of an injury to a police officer." *Id.* at 264-65.

Similarly, in *United Food & Commercial Workers Unions, Employers Health & Welfare Fund v. Philip Morris, Inc.*, the Eleventh Circuit affirmed dismissal of a health plan's Alabama-law claims seeking to recover from tobacco manufacturers losses arising from "Plaintiff's obligation to provide medical treatment to plan participants afflicted with tobacco-related illnesses." 223 F.3d 1271, 1272 (11th Cir. 2000). The Eleventh Circuit concluded: "absent subrogation[,] a health-care provider has no cause of action against a defendant who injures the health-care provider's ward, causing the health-care provider to incur increased expenses." *Id.* at 1273 n.5.

The *amici* States argue that the *parens patriae* doctrine somehow saves the damages claims. Not so. *Parens patriae* is a standing doctrine that recognizes a state's "quasi sovereign" interests in "the well-being of its populace" and in "the terms under which it participates in the federal system." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 602-08 (1982). The doctrine does nothing to satisfy the substantive requirements of a cause of action, and in no way transforms claims arising from harms to others into direct claims for damages.[1] Indeed, a quasi-sovereign interest is one that stands "apart from the interests of particular private parties, that is, the State must be more than a nominal party." *Id.*; *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017) ("[P]arens patriae standing is inappropriate where an aggrieved party could seek private relief."); *In re Baldwin-United Corp.*, 770 F.2d 328, 341 (2d Cir. 1985) ("[W]hen the state merely asserts the personal claims of its citizens, it is not the real party in interest and cannot claim *parens patriae* standing.").[2]

---

[1]  The cases cited by the *amici* States' did not involve claims for damages. *Alfred L. Snapp & Son, Inc. v. Puerto Rico* permitted the plaintiff territory to seek injunctive and declaratory relief against an employer. 458 U.S. at 608-09. *Massachusetts v. EPA* allowed the plaintiff commonwealth to challenge the EPA's denial of a petition to make rules regarding greenhouse gases. 549 U.S. 497, 518-26 (2007). *Maryland v. Louisiana* allowed eight states to seek to enjoin a Louisiana use tax on natural gas as unconstitutional. 451 U.S. 725, 735-39 (1981). *Georgia v. Tennessee Copper Co.* allowed the plaintiff state to seek injunctive relief to prevent copper companies from discharging noxious gases from Tennessee into its territory. 206 U.S. 230, 238-39 (1907). *Louisiana v. Texas* recognized that Louisiana would have standing to seek an injunction. 176 U.S. 1, 19-23 (1900). Finally, *Purdue Pharma L.P. v. Kentucky* merely held that the Kentucky attorney general was not, when exercising his *parens patriae* authority to seek "equitable and injunctive relief based on 'quasi-sovereign interests' in protecting the health and safety of citizens," bringing a class action for purposes of federal jurisdiction under the Class Action Fairness Act. 704 F.3d 208, 215-17 (2d Cir. 2013).

[2]  The State (joined by *amici* States) additionally argues that there is an exception to the derivative-injury rule for statutory civil penalties and the abatement of a public nuisance. Opp. 5; *see also Amici* Br. 6 (discussing public nuisance claim). But this misses the point:  the State's other claims are barred by the derivative-injury rule.

Finally, the State argues that it can recover its expenditures on opioid prescriptions written for the treatment of chronic pain because the "opioids *are* the 'injury, disease, or sickness.'"  Opp. 6. But any claim premised on the theory that all opioid prescriptions for chronic pain are harmful is preempted under federal law. Mot. 6. And  that theory, too, depends on alleged injury to others and is thus barred under the derivative-injury rule.  *Sidney Hillman Health Ctr. v. Abbott Labs.*, 873 F.3d 574, 576-78 (7th Cir. 2017) (affirming dismissal of the health plan's claims because the patients who took the allegedly harmful drug were the "initially injured parties").

### B.    The State Has Failed To Plead Actual Causation

The State argues that it has met its burden to plead but-for causation by identifying allegedly deceptive statements made to Alabama "physicians and the public." Opp. 19. That is not enough. The First Amended Complaint fails to link the alleged deceptive statements to the alleged harms. The State does not allege *how* those statements *caused* any medically inappropriate prescriptions to be written, or any instance of addiction or overdose. Nor does it identify any doctors who supposedly were misled into writing unnecessary opioid prescriptions (Opp. 4-6) or offer any other means to distinguish allegedly improper from proper prescriptions. Opp. 6-8.  Nor does the State dispute that it continues to reimburse for opioid medication prescriptions (1AC ¶ 358), so the Manufacturer Defendants' statements could not have been the cause of the State's purported losses.

The State acknowledges that the court in *City of Chicago v. Purdue Pharma, L.P.*, No. 14-C-4361, 2015 WL 2208423, at *14 (N.D. Ill. May 8, 2015), dismissed opioid-related claims where the city failed, as here, to identify any physician who wrote improper prescriptions based on the alleged misrepresentations of manufacturers. Opp. 20 n.14. The State argues that the decision is "inapposite" because it involved different causes of action than those here. *Id.* But at

a minimum, the State's claims for damages under the ADTPA must be pled with particularity (*see infra* Part III.B.) and in this respect are just like the fraud-based claims in *Chicago*. And in any event, under *Twombly* the State must make factual allegations rendering all its damages claims plausible, and it fails to do so by not identifying a single doctor who claims to have been misled by any false statement. *Summit* Mfr. Mot. 11-12 & n.15 (Dkt. No. 499).[3]

### C.     The State Cannot Establish Proximate Causation

The State does not dispute that it must adequately allege proximate causation and that its theory of damages involves an attenuated chain of causation. Mot. 7; Opp. 21-22. Nor does the State dispute that physicians and criminals are intervening actors in that causal chain. Mot. 7-8; Opp 21. Instead, the State argues that any intervening acts are irrelevant to the causation analysis because they were supposedly foreseeable. Opp. 21-22. This is wrong.

As a threshold matter, the State ignores that the many criminal acts of diversion and abuse by independent third parties render the State's resulting harms too far removed from the Manufacturer Defendants' alleged conduct to be "reasonably foreseeable" as a matter of law. In *Vines v. Plantation Motor Lodge*, 336 So. 2d 1338, 1339-40 (Ala. 1976), for instance, a truck owner left his vehicle in a high-crime area with the keys in the ignition, and someone stole the truck and collided with a motorcycle causing injury and death. The court held that as a matter of law "the consequences of the theft were too remote to be reasonably foreseeable by the

---

[3] *Amici* argue the State need not plead and prove causation because it relies on the *parens patriae* doctrine to assert a claim. *Amici* Br. 3, 7, 12. But as noted above this is simply a standing doctrine. *Amici*'s cases do not support ignoring causation. *See Alfred L. Snapp*, 458 U.S. 592 (holding that Puerto Rico could maintain a *parens patriae* lawsuit seeking injunctive and declaratory relief; no holding that Puerto Rico was exempt from pleading essential elements of its claims by virtue of its status as *parens patriae*); *Massachusetts v. E.P.A.*, 549 U.S. at 520 (holding that, in the context of challenging the EPA's denial of a petition for rulemaking, Massachusetts as a sovereign state was "entitled to special solicitude *in our standing analysis*") (emphasis added).

defendant" and served to "break the chain of causation." *Id.* at 1340; *accord City of Chicago v. Beretta*, 821 N.E. 2d 1099, 1137 (Ill. 2004) (holding on a motion to dismiss that gun dealers did not proximately cause injury from illegal guns because criminal conduct "is several times removed from the initial sale of individual weapons by these defendants."). Here, too, third-party misconduct—several times removed from a manufacturer's sale of a medication—likewise breaks the causation chain.

Beyond that, the role of physicians in the prescribing process independently breaks the chain. "As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative." *Stone v. Smith, Kline & French Labs.*, 447 So. 2d 1301, 1305 (Ala. 1984) (quoting *Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1276 (5th Cir. 1974)). Alabama law thus places the responsibility for determining whether an individual prescription is appropriate in the hands of the prescribing physician.

The State glosses over this responsibility by claiming that physicians were "duped" by the Manufacturer Defendants and thus "not learned." Opp. 22. But there is no support in Alabama law for this proposition; the State cites only a case from the Northern District of Illinois (incorrectly) interpreting Illinois law. And  the product labeling for opioid medications warned of the very risks allegedly withheld from prescribing physicians. As a matter of law, a manufacturer cannot be the purported "cause" of a prescription issued by a physician who ignored the FDA-mandated warning label.

## II.        The State's Drug-Law Claims (Counts III & IV) Fail

The State concedes that its "drug-related-nuisance claim should be dismissed." Opp. 33 ("[T]he State does not oppose dismissal of Count 3"). The State further abandons any claim for damages under the Alabama Controlled Substances Act (Count IV). Opp. 37.

Thus, all that is left is the State's request for "declaratory relief" that the Manufacturer Defendants had a "duty" to monitor downstream suspicious orders made by pharmacies. Opp. 37. But the State ignores  (*see* Opp. 36) that the comprehensive federal regulatory framework governing the distribution of controlled substances places that duty on distributors, not manufacturers.[4] Mot. 9-10.

The State suggests that Alabama Administrative Code r. 680-X-3-.05(2) provides the duty. But that regulation requires manufacturers to make reports of suspicious orders as "required by the Drug Enforcement [A]dministration." Ala. Admin. Code r 680-X-3-.05(2). The applicable DEA regulations impose no obligation on manufacturers to monitor downstream orders. Mot. 9-10. The Court should dismiss Count III and Count IV in their entirety.

## III.       The State's Claim Under the Alabama Deceptive Trade Practices Act (Count II) Fails

### A.        The State is Not a "Consumer" Under the ADTPA

The State fails to answer the Manufacturer Defendants' argument (Mot. 13-14) that the State is not a "consumer" as defined by the ADTPA and thus cannot recover compensatory damages under the statute. Accordingly, the State has conceded the point, and its ADTPA

---

[4] The State suggests for the first time—in *argument* in its Opposition—that an allegedly Endo-owned company violated suspicious order monitoring requirements by purportedly distributing the second most opioid pills to two pharmacies in Alabama. Opp. 1-2 (citing 1AC ¶ 403). Contrary to what the State suggests, paragraph 403 of the First Amended Complaint does not at all support this assertion.  In fact, the First Amended Complaint does not contain any factual allegations that plausibly support this assertion.

damages claim should be dismissed for failure to state a claim. *See Lewis v. Cleveland Clinic Found.*, No. 1:12 CV 3003, 2013 WL 6199592, at *4 (N.D. Ohio 2013) (Polster, J.) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### B. The State Has Failed To Plead Any False or Misleading Statements with Particularity

The State asserts it was not required to plead ADTPA claims with particularity, relying on a decision applying New York's general business law. The State ignores the decisions cited by the Manufacturer Defendants concluding that *ADTPA* claims must be pleaded with particularity. *See* Mot. 14; *Holmes v. Behr Process Corp.*, No. 2:15-cv-0454, 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013); *Cooper v. Bristol-Myers Squibb Co.*, No. 07-cv-885, 2009 WL 5206130, at *7 (D.N.J. Dec. 30, 2009). The State cites no authority to the contrary addressing ADTPA claims.

The State fails to identify any Alabama prescriber who received and was misled by a statement made by the Manufacturer Defendants when prescribing an opioid medication for a patient.  Accordingly, the State's ADTPA claims should be dismissed.

### C. The State Has Failed To Plead an "Unconscionable Act"

A party claiming unconscionability must allege: (1) one party to a transaction was unsophisticated or uneducated; (2) there was an "absence of meaningful choice on one party's part;" (3) the "contractual terms [we]re unreasonably favorable to one party;" (4) there was "unequal bargaining power among the parties;" and (5) there were "oppressive, one-sided, or patently unfair terms in the contract." *See In re Russell*, 181 B.R. 616, 623 (M.D. Ala. 1995) (citing *Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992)). The First Amended Complaint fails to

plead these elements, and the State does not argue otherwise. Instead, the State argues that the ADTPA's proscription at Alabama Code § 8-19-5(27) should be read disjunctively to allow for any allegedly misleading or deceptive act to qualify as an "unconscionable act." Such a reading would render the first 26 provisions of Alabama Code § 8-19-5 mere surplusage and should be rejected.  Accordingly, the State's claim under § 8-19-5(27) should be dismissed.

## IV.    The State's Statutory Public Nuisance Claim (Count I) Fails

The State concedes that Alabama public nuisance law requires proof of an unreasonable interference with a public, as opposed to private, right. Mot. 15-16; Opp. 24. The State argues that the First Amended Complaint's references to "health, safety, and welfare" are sufficient to assert a public right. Opp. 24. That is incorrect.  For one, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the State ignores that the Restatement specifies that the "right that everyone has not to be . . .  defrauded," is inherently individual. Restatement (Second) of Torts § 821B cmt. g.

The State suggests that its claims invoke "public" rights because the misuse of opioid medications has "caused public injuries" such as increased healthcare expenditures. Opp. 24. But that theory would allow public nuisance to swallow products liability law, unduly "permit[ting] nuisance liability to be imposed on an endless list of manufacturers, distributors, and retailers of manufactured products." *City of Chicago v. Beretta U.S.A. Corp.* 821 N.E.2d 1099, 1116 (Ill. 2004) (no public right "to be free from the threat that some individuals may use an otherwise legal product . . . in a manner that may create a risk of harm."); *see also Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) ("courts have enforced the boundary between the well-developed body of product liability law and public nuisance law").

Further, the alleged "public injuries" here arise only through unlawful acts by parties over whom the Manufacturer Defendants have no control. Mot. 16-17. The State does not dispute this point. Instead, the State again argues that the Manufacturer Defendants can be held liable because such criminal conduct is "foreseeable." Opp. 25. The State's theory runs headlong into *Tipler v. McKenzie Tank Lines*, which rejected a public nuisance claim against Exxon because the company did not control the independent contractor who created a "very dangerous condition."  547 So. 2d 438, 441 (Ala. 1989).

The State quibbles about immaterial differences between this lawsuit and *Tipler* (Opp. 24-25), but the decision is in line with prevailing public nuisance law. For example, courts have held that harm from criminal diversion and misuse of guns is too remote to hold manufacturers liable notwithstanding allegations that the misuse was foreseeable. *See Camden Cty. Bd. of Chosen Freeholders*, 273 F.3d at 541 (the plaintiff county "failed to allege that the manufacturers exercise sufficient control over the source of the interference with the public right."). The State simply ignores these decisions. As in those cases, the Manufacturer Defendants' lack of control over those who engage in criminal diversion and abuse of opioid medications prevents them from being held liable for the alleged public nuisance.

## V.     The State's Common Law Claims Fail for Additional Claim-Specific Reasons

### A.     The State's Negligence Claim (Count V) Fails

The State has not identified a recognized duty owed to it by the Manufacturer Defendants. The State quotes Alabama's general common-law duty of care, but fails to address that the duty extends only to third parties (like the State) under select circumstances not present here. *See* Mot. 17-19; *Wyeth, Inc. v. Weeks*, 159 So. 3d 649, 676 (Ala. 2014); *Colonial Bank v. Ridley & Schweighert*, 551 So. 2d 391, 395 (Ala. 1989). Accordingly, the State's common law negligence claim should be dismissed.

11

The State's statutory negligence claim fares no better. While the State is correct that a statute can create a duty, it can only form the basis of a negligence claim brought by "a class of persons, of which the plaintiff is a member." *Parker Bldg. Servs. Co., Inc. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 931-32 (Ala. 2005). A cause of action does not arise from statutes that were designed to protect the public at large. *See* Mot. 18-19. The State ignores these principles, stating without support that the CSA and ACSA created a duty of care owed to the State, notwithstanding the presumption that criminal statutes designed to protect the general public do not create a private right of action. Mot. 18-19 & n.8.

To the extent the State argues that Manufacturer Defendants owed a contractual duty to the State (Opp. 43), it has not identified any specific contract. If there are contracts between the Alabama Medicaid Agency and Manufacturer Defendants that create a duty of care that was allegedly breached, the State is obligated to identify those contracts. It has not done so.

### B.      Alabama's Wantonness Claim (Count VII) Fails

As the Manufacturer Defendants have shown (Mot. 17; *supra* Part V.A.), the State has failed to plead a cognizable negligence claim, let alone plead facts to establish that the Manufacturer Defendants "engaged in conduct conscious, or in knowing disregard, that it was likely to cause injury." *Craft v. Triumph Logistics, Inc*., 107 F. Supp. 3d 1218, 1221 (M.D. Ala. 2015).  Accordingly Count VII of the State's Complaint should also be dismissed.

### C.      The State's Unjust Enrichment Claim (Count VI) Fails

The State has not identified any specific funds improperly paid to Manufacturer Defendants, as required to state an unjust enrichment claim, *U.S. v. Dekalb County*, 729 F.2d 738, 742 (11th Cir. 1984). To the extent the State alleges that its claims are based on "the cost of harms caused by Defendants' actions but paid for by the Government" (Opp. 44), those costs are

12

not recoverable on an unjust enrichment theory because they are not payments to the Manufacturer Defendants by the State.

## VI. The State's Claims for Monetary Relief Are Barred by the Applicable Statutes of Limitations

The State argues that it is exempt from the governing limitations periods under the ancient *nullum tempus occurit reipublicae* doctrine. Alternatively, the State asserts that it was unaware until recently of its claims because the Defendants purportedly "fraudulently concealed" the opioid crisis. Neither argument saves the State's time-barred claims.

### A. The *Nullum Tempus* Doctrine Does Not Exempt the State from the Statutes of Limitations

The *nullum tempus* doctrine is based on the antiquated premise that "no time runs against the king." Unsurprisingly, Alabama courts have been quick to apply exceptions to the dated principle, and the State does not cite a single Alabama decision that uses *nullum tempus* to save State claims that would otherwise have been time barred.

Indeed, courts repeatedly have refused to apply *nullum tempus* where the legislature "expressly or by necessary implication" intends the State to be subject to a statutory limitation period. *State v. Estate of Crocker*, 83 So. 2d 261, 262 (Ala. Ct. App. 1955); *see also State v. Mudd*, 143 So. 2d 171 (Ala. 1962); *Cox v. Bd. of Trs. of Univ. of Alabama*, 49 So. 814, 820 (Ala. 1909). In *Estate of Crocker*, for example, the court held that the State could not escape time bar where the probate code contained its own limitation period applying to "[a]ll claims against the estate of a decedent." 83 So. 2d at 262 (quoting Tit. 61, § 211 (1940)). Although that provision did not expressly reference the State, the court found the language broad and general enough "to bar the State of Alabama from presenting a claim after the time allowed by statute." *Id.* at 264.

Like the probate statute in *Crocker*, ADTPA contains its own limitations period. Ala. Code § 8-19-14. And like *Crocker*, the statute uses broad and inclusive language: "***No action***

may be brought under this chapter more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action . . . ." *Id.* (emphasis added). "No action" means what it says, and the statute reflects an intent that an action by a State or anyone else is subject to a one-year limitations period.

The State argues that the legislature did not intend to apply the ADTPA limitation period to the State because the statute references a "person bringing the action." Opp. 15-17. But the term "person" under the statute is broadly defined to include "corporations, trusts, partnerships, incorporated or unincorporated associations and ***any other legal entity***." Ala. Code § 8-19-3(5) (emphasis added); *see also id.* § 8-19-3(2). When the legislature intended provisions to apply to only to "natural persons" it said so specifically. *See id.*

While the State relies on a few instances in which the ADTPA specifically "treat[s] the Attorney General differently" than natural or other "persons" (Opp. 16), that only reinforces that the legislature intended the limitation period to apply to all actions brought under the statute: when the legislature intended to treat the Attorney General differently, it did so expressly. Yet the ADTPA's limitation provision makes no specific exceptions for the Attorney General. Rather, it provides that "no action" shall proceed outside the one-year period.

Finally, putting aside the intent of ADTPA, the *nullum tempus* doctrine does not apply when a State seeks damages based on harms suffered by others. *Miller v. State*, 38 Ala. 600, 604 (1863) (holding that the doctrine does not apply in action by State on behalf of one of its townships). The State here seeks relief for alleged injuries that are derivative of harms to its residents. Those claims are subject to the traditional two-year limitation period, which in this case bars all damages claims that accrued before February 6, 2016.

### B.    The State Has Failed Adequately To Plead Fraudulent Concealment

The State cannot plausibly assert that it was unaware of the allegations here two years ago. Indeed, the State does not contest that it was aware, as early as February 2013, of the rate of prescriptions for opioid medications in Alabama. Opp. 15. "A person exercising due diligence would have" made an inquiry, *Sellers v. A.H. Robins Co.*, 715 F.2d 1559, 1562 (11th Cir. 1983), and the State failed to do so here.

Charged with that duty, the State says it is "untenable" that it would have discovered its claims before February 6, 2016 had it only looked. Opp. 15. But that is belied by the public record, including that more than two years before the State commenced this action, other governmental entities had already made the same allegations of promotional misconduct as the State advances here.  *See* Mot. App'x A. The State would have discovered the allegations if it had exercised similar diligence.

### CONCLUSION

For all the foregoing reasons, the Court should dismiss the claims against the Manufacturer Defendants in their entirety.


Dated: September 7, 2018                    Respectfully submitted,


                                           By: */s/ Jonathan L. Stern*

                                           Jonathan L. Stern
                                           Arnold & Porter Kaye Scholer LLP
                                           601 Massachusetts Ave. NW
                                           Washington, DC 20001
                                           Tel: (202) 942-5000
                                           jonathan.stern@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Tel: (213) 243-4000
sean.morris@arnoldporter.com

*Attorneys for Defendants Endo Health Solutions
Inc. and Endo Pharmaceuticals Inc.*

By: */s/ Mark S. Cheffo* (consent)
Mark S. Cheffo
Sheila L. Birnbaum
Hayden A. Coleman
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com
Sheila.Birnbaum@dechert.com
Hayden.Coleman@dechert.com

*Attorneys for Defendants Purdue Pharma L.P.,
Purdue Pharma Inc., and The Purdue Frederick
Company*

By: */s/ Steven F. Napolitano* (consent)

Steven F. Napolitano
Skarzynski Black
One Battery Park Plaza 32nd Floor
New York, New York 10004
Tel: (212) 820-7746
snapolitano@skarzynski.com
*Attorneys for Defendant Rhodes Pharmaceuticals
L.P.*

## LOCAL RULE 7.1(F) CERTIFICATION

I certify that this case has been assigned to the "litigation track" pursuant to CMO One and that this Memorandum adheres to the page limitations set forth in CMO One § 6(f), Order Granting Plaintiff's Motion to Permit Sharing of Alabama's Amended Complaint at 2, and L.R. 7.1(f).

Dated: September 7, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 7, 2018, a copy of the foregoing **Reply in Support of the Manufacturer Defendants' Joint Motion to Dismiss the State of Alabama's First Amended Complaint** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_/s/ Jonathan L. Stern_