IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*Cleveland Bakers and Teamsters Health and Welfare Fund v. Purdue Pharma L.P.*,<br>No. 18-op-45432 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**REPLY IN SUPPORT OF THE
MANUFACTURER DEFENDANTS' JOINT
MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Introduction ................................................................................................................................. 1

Argument ...................................................................................................................................... 1

I.     Plaintiffs have not alleged any cognizable injuries caused by the manufacturer defendants. ......................................................................................................................... 2

     A.     The costs of plaintiffs' members' injuries are quintessentially indirect harms that are too remote to justify liability here. ................................................. 3

     B.     Plaintiffs have not plausibly alleged that the manufacturer defendants caused them to overpay for opioid prescriptions. .................................................. 5

II.     The economic-loss rule bars the nuisance and negligence claims (Counts 5, 6, and 7). ...................................................................................................................................... 10

III.     Plaintiffs have not pleaded a special injury different from the public's, as their public nuisance claims require (Counts 5 and 6). ............................................................. 11

IV.     Plaintiffs have not pleaded justifiable reliance on their fraud claim with particularity (Count 8). ..................................................................................................................... 12

V.     A criminal conviction is required to support an injury-through-criminal-acts claim (Count 9). ..................................................................................................................... 12

VI.     Plaintiffs have not alleged a direct economic transaction with the manufacturer defendants, defeating the unjust-enrichment claim (Count 10). ...................................... 13

VII.     Plaintiffs have not pleaded an unlawful agreement to support a civil conspiracy claim (Count 11). ................................................................................................................ 13

VIII.     Neither the fraudulent-concealment nor continuing-violation doctrines saves the plaintiffs' untimely claims. ................................................................................................. 14

Conclusion ................................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
  228 F.3d 429 (3d Cir. 2000) ...................................................................................3, 11

*Almanza v. United Airlines, Inc.*,
  851 F.3d 1060 (11th Cir. 2017) ...................................................................................14

*Ashtabula River Corp. Grp. II v. Conrail, Inc.*,
  549 F. Supp. 2d 981 (N.D. Ohio 2008) ......................................................................14

*Assoc. of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*,
  241 F.3d 696 (9th Cir. 2001) .....................................................................................3, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .....................................................................................................14

*Bishop v. Lucent Techs., Inc.*,
  520 F.3d 516 (6th Cir. 2008) .......................................................................................15

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) .......................................................................................................6

*Buddenberg v. Weisdack*,
  2018 WL 3159052 (N.D. Ohio June 28, 2018) ...........................................................12

*Buddenberg v. Weisdack*,
  2018 WL 3949557 (N.D. Ohio Aug. 22, 2018) ...........................................................12

*Chem. Solvents, Inc. v. Advantage Eng'g, Inc.*,
  2011 WL 1326034 (N.D. Ohio Apr. 6, 2011) ..............................................................10

*Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*,
  537 N.E.2d 624 (Ohio 1989) .......................................................................................10

*City of Chicago v. Purdue Pharma L.P.*,
  211 F. Supp. 3d 1058 (N.D. Ill. 2016) ..........................................................................8

*City of Cincinnati v. Beretta U.S.A. Corp.*,
  768 N.E.2d 1136 (Ohio 2002) .......................................................................................4

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*,
  863 F.3d 474 (6th Cir. 2017) .......................................................................................10

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*,
  897 F. Supp. 2d 633 (S.D. Ohio 2012) .................................................................. 10-11

*City of Cleveland v. JP Morgan Chase Bank, N.A.*,
  2013 WL 1183332 (Ohio App. Mar. 21, 2013) ....................................................................4, 7

*City of Miami v. Bank of Am. Corp.*,
  800 F. 3d 1262 (11th Cir. 2015) ...................................................................................13

*Cleveland Hous. Renewal Project, Inc. v. Wells Fargo Bank, N.A.*,
  934 N.E.2d 372 (Ohio App. 2010)...................................................................................11

*Ctr. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*,
  2010 WL 1257790 (D.N.J. Mar. 29, 2010) .......................................................................6

*Evans v. Pearson Enters., Inc.*,
  434 F.3d 839 (6th Cir. 2006) .........................................................................................8

*Eysoldt v. ProScan Imaging*,
  957 N.E.2d 780 (Ohio App. 2011)...................................................................................11

*Gibson v. Park Poultry, Inc.*,
  2007 WL 2358589 (Ohio App. Aug. 13, 2007).................................................................14

*Graham v. Am. Cyanamid Co.*,
  350 F.3d 496 (6th Cir. 2003) .........................................................................................12

*HDM Flugservice GmbH v. Parker Hannifin Corp.*,
  332 F.3d 1025 (6th Cir. 2003) .......................................................................................10

*Hensley v. City of Columbus*,
  557 F.3d 693 (6th Cir. 2009) .........................................................................................15

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
  804 F.3d 633 (3d Cir. 2015)........................................................................................7, 9

*In re Neurontin Mktg. & Sales Practices Litig.*,
  712 F.3d 21 (1st Cir. 2013)..........................................................................................5-6

*In re Schering-Plough Corp. Intron/Temodar Cons. Class Action*,
  2010 WL 2346624 (D.N.J. June 9, 2010) .........................................................................6

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial
  Proceedings*,
  159 F. Supp. 3d 898 (N.D. Ill. 2016) ...............................................................................6

*Indiana/Kentucky/Ohio Regional Council of Carpenters Welfare Fund v.
  Cephalon, Inc.*,
  2014 WL 2115498 (E.D. Pa. May 21, 2014) .....................................................................7

iii

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*,
   196 F.3d 818 (7th Cir. 1999) ............................................................................3, 5

*Inv'rs REIT One v. Jacobs*,
   546 N.E.2d 206 (Ohio 1989) ..................................................................................15

*Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*,
   634 F.3d 1352 (11th Cir. 2011) ........................................................................ 5, 7-8

*Johnson v. Microsoft Corp.*,
   834 N.E.2d 791 (Ohio 2005) ..................................................................................13

*Lutz v. Chesapeake Appalachia, L.L.C.*,
   717 F.3d 459 (6th Cir. 2013) ..................................................................................15

*Moss v. Columbus Bd. of Educ.*,
   98 Fed. Appx. 393 (6th Cir. 2004) ..........................................................................15

*Perry v. Am. Tobacco Co.*,
   324 F.3d 845 (6th Cir. 2003) ..............................................................................3-4, 7

*Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*,
   653 N.E. 2d 661 (Ohio 1995) ..................................................................................10

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002) ....................................................................................5

*RWP, Inc. v. Fabrizi Trucking & Paving Co.*,
   2006 WL 2777159 (Ohio App. Sept. 28, 2006)......................................................11

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*,
   873 F.3d 574 (7th Cir. 2017) ................................................................................6-7

*Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms., LP*,
   136 A.3d 688 (Del. 2016) ......................................................................................8-9

*Travelers Indem. Co. v. Cephalon, Inc.*,
   32 F. Supp. 3d 538 (E.D. Pa. 2014), *aff'd*, 620 Fed. Appx. 82 (3d Cir. 2015).....................5-6

*Trollinger v. Tyson Foods, Inc.*,
   370 F.3d 602 (6th Cir. 2004) ....................................................................................4

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016)..........................................................................................8-9

*White v. Smith & Wesson*,
   97 F. Supp. 2d 816 (N.D. Ohio 2000)......................................................................13

*Zemcik v. LaPine Truck Sales & Equip. Co.*,
  706 N.E.2d 860 (Ohio App. 1998) ........................................................................................ 15

**Statutes**

Ohio Rev. Code §2305.09(D) ...................................................................................................... 14

Ohio Rev. Code §2307.60 ...................................................................................................... 12-13

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................... 4, 12

## TABLE OF MDL CASE DOCUMENTS

For the Court's convenience, here is a list of case documents cited in this brief.  All docket-entry numbers are in the main MDL case, N.D. Ohio No. 17-md-2804.

| Citation | Docket No. | Full title |
|---|---|---|
| 1AC | Dkt. 635 | Amended Complaint, *Cleveland Bakers and Teamsters Health and Welfare Fund v. Purdue Pharma L.P.*, No. 18-op-45432 (June 18, 2018) |
| MTD | Dkt. 777-1 | Memorandum in Support of the Manufacturer Defendants' Joint Motion to Dismiss the Amended Complaint, *Cleveland Bakers and Teamsters Health and Welfare Fund v. Purdue Pharma L.P.*, No. 18-op-45432 (July 23, 2018) |
| Opp. | Dkt. 893 | Plaintiffs['] … Omnibus Memorandum in Opposition to: (1) Manufacturer Defendants' Joint Motion to Dismiss the Amended Complaint; etc., *Cleveland Bakers and Teamsters Health and Welfare Fund v. Purdue Pharma L.P.*, No. 18-op-45432 (Aug. 20, 2018) |
| CMO One | Dkt. 232 | Case Management Order One, *In re Nat'l Prescription Opiate Litig.* (April 11, 2018) |
| *Chicago* MTD | Dkt. 671-1 | Memorandum of Law in Support of the Manufacturer Defendants' Joint Motion to Dismiss Plaintiffs' Fourth Amended Complaint, *City of Chicago v. Purdue Pharma L.P.*, No. 17-op-45169 (May 25, 2018) |
| *Summit* Opp. | Dkt. 654 | Plaintiffs['] … Omnibus Memorandum in Opposition to … (3) Manufacturer Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint, *County of Summit, Ohio v. Purdue Pharma L.P.*, No. 18-op-45090 (June 22, 2018) |
| *Summit* Reply | Dkt. 746 | Reply in Support of the Manufacturer Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint, *County of Summit, Ohio v. Purdue Pharma L.P.*, No. 18-op-45090 (July 13, 2018) |
| *Summit* Distribs.' Reply | Dkt. 744 | Distributors' Reply in Support of Motion to Dismiss, *County of Summit, Ohio v. Purdue Pharma L.P.*, No. 18-op-45090 (July 13, 2018) |

| Citation | Docket No. | Full title |
|---|---|---|
| *West Boca* MTD | Dkt. 691-1 | Memorandum of Law in Support of the Manufacturer Defendants' Joint Motion to Dismiss Plaintiff's Complaint, *West Boca Med. Ctr., Inc. v. AmerisourceBergen Drug Corp.*, No. 18-op-45530 (June 29, 2018) |
| *West Boca* Reply | Dkt. 891 | Reply in Support of Manufacturer Defendants' Joint Motion to Dismiss Plaintiff's Complaint, *West Boca Med. Ctr., Inc. v. AmerisourceBergen Drug Corp.*, No. 18-op-45530 (Aug. 17, 2018) |

## INTRODUCTION

Plaintiffs' opposition brief confirms that, as many courts across the country have held, neither of plaintiffs' alleged injuries—"payments for [their members'] opioid-related treatments" and "payments for prescription opioids," Opp. 3-4—is cognizable under federal or state law.  The first fails because it is derivative of injuries to plaintiffs' members, and the second fails as a matter of law because plaintiffs do not allege that they paid for prescription opioids that were medically inappropriate, let alone ones tied to any allegedly false marketing practices.  As third-party payors, plaintiffs allege injuries that are even more attenuated and indirect than those of the municipal plaintiffs in this MDL.  And their allegations resemble the unsuccessful ones pressed by third-party payors against tobacco companies years ago, and, more recently, against pharmaceutical manufacturers in cases that have been repeatedly dismissed.  Plaintiffs' claims for relief are squarely foreclosed by precedent in the Sixth Circuit, in Ohio, and elsewhere, and this Court should dismiss the amended complaint with prejudice.

## ARGUMENT

Plaintiffs largely recycle—by incorporation or by repetition—the arguments in Summit County's opposition brief (Dkt. 654).  Therefore, in accordance with CMO One §2(g), this brief incorporates the following responses on each claim:

| Argument / Claim | Incorporated Responses |
|---|---|
| RICO—Marketing (Count 1) | *Summit* Reply §§II.A, IV; *West Boca* Reply §II |
| RICO—Supply Chain (Count 2) | *Summit* Reply §§II.B, V |
| Preemption (Counts 3-10) | *Summit* Reply §III; *West Boca* Reply §IV |
| OCPA (Counts 3, 4) | *Summit* Reply §VI |
| OPLA abrogation (Counts 5, 6) | *Summit* Distribs.' Reply §II.A |

| Argument / Claim | Incorporated Responses |
| --- | --- |
| Nuisance (Counts 5, 6) | *Summit* Reply §VII |
| Negligence (Count 7) | *Summit* Reply §VIII |
| Fraud (Count 8) | *Summit* Reply §IX |
| Injury through criminal acts (Count 9) | *Summit* Reply §X |
| Unjust enrichment (Count 10) | *Summit* Reply §XI |
| Civil conspiracy (Count 11) | *Summit* Reply §XII |
| Statutes of limitations (Counts 1-11) | *Summit* Reply §XIII |

Also in accordance with CMO One §2(g), the manufacturer defendants reply below *only* to the additional arguments in plaintiffs' brief that were not in Summit County's brief or that are unique to their status as third-party payors.

## I. Plaintiffs have not alleged any cognizable injuries caused by the manufacturer defendants.

Plaintiffs acknowledge they are alleging two distinct forms of injury: (1) "injury in the form of payments for [their members'] opioid-related treatments, hospitalizations, and illnesses," and (2) "injuries from payments for prescription opioids."  Opp. 3-4.  Yet plaintiffs spend the remainder of their brief opportunistically switching between these two types of injuries, distinguishing case law that squarely forecloses one by claiming that they, by contrast, allege the other—and vice versa.  The Court should not be fooled by this shell game.  Plaintiffs have not plausibly alleged that either injury—to the extent one exists at all—was directly and proximately caused by the manufacturer defendants, and both of their theories are foreclosed by governing precedent.

**A.**  **The costs of plaintiffs' members' injuries are quintessentially indirect harms that are too remote to justify liability here.**

The first type of injury the plaintiffs allege—the costs of treating their members' opioid-related injuries—is precisely the sort of indirect, derivative harm that was rejected as too remote by every court of appeals in the tobacco litigation.  *See West Boca* MTD §I; *West Boca* Reply §I. That includes the Sixth Circuit, which held that alleged injuries that were "purely contingent on harm to the third-party smokers" were "clearly indirect" and thus "too remote to afford standing under any of the asserted [state and federal] causes of action."  *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003).

Plaintiffs' attempts to distinguish *Perry* and the mountain of other authority on this point are unpersuasive.  First, they argue that the plaintiffs in *Perry* were plan *members*, not the plan itself, and claim that this factual distinction was "[c]entral to the Court's holding."  Opp. 6.  Wrong. The Sixth Circuit said that this fact made the injuries "*even more* removed" from the alleged misconduct than in other tobacco cases, but the court clearly did *not* think it was dispositive.  *Perry*, 324 F.3d at 849 (emphasis added).  Indeed the Sixth Circuit expressly agreed with the holdings of numerous other tobacco decisions, including cases brought by third-party payors and hospitals, that rejected similar claims for lack of proximate causation.  *Ibid.* (citing, among other cases, *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999), and *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000)); *see also Assoc. of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 703 (9th Cir. 2001).

Next, plaintiffs claim that "the causal connection between opioid use and … medical care" is more direct than the connection between smoking and medical care.  Opp. 7.  But *Perry* did not rest on any uncertainty about whether smoking *caused* the smokers' injuries; it rested on the simple fact that the claims were "inherently contingent on injury to thir[d] part[ies]."  324 F.3d at 849.

So too here.  The relevant issue is not the link between opioid use and third-party medical care but rather the link between the *allegedly tortious conduct* and the third-party medical care.  Plaintiffs' assertion that an unidentified patient's opioid overdose was "no doubt" caused by opioids, Opp. 7, says *nothing* about whether it was caused by the manufacturer defendants' allegedly false marketing—much less with the particularity required by Rule 9(b).  Tellingly, plaintiffs do not dispute that their claims of injury are separated from those activities by the attenuated causal chain described in the manufacturer defendants' opening brief.  *See* MTD 1-2.

Finally, plaintiffs try but fail to find support in *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004), and *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002).  Opp. 8.  *Trollinger* held that unionized workers whose wages were suppressed by the defendant-employer's misconduct had suffered a direct injury, not an injury "exclusively derivative" of any injury to the union.  370 F.3d at 615.  But here, the parties analogous to the workers in *Trollinger* are plaintiffs' *members*—the individuals directly experiencing medical harms—not plaintiffs themselves.  And plaintiffs' invocation of *Beretta* rests on sheer obfuscation.  Plaintiffs claim that, as in *Beretta*, they "are not seeking remuneration for harms to insureds but only for their own losses."  Opp. 8.  With respect to this first category of injury, however, that is *exactly* what plaintiffs are seeking: the alleged "opioid-related treatments, hospitalizations, and illnesses," Opp. 4, are harms to plaintiffs' insureds.

The indirect, derivative character of this first type of injury is fatal not just to plaintiffs' federal claims, *see Perry*, 324 F.3d at 850-851, but to their state claims too, for the federal direct-injury test "is the common law proximate cause test" under Ohio law as well.  *City of Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *5 (Ohio App. Mar. 21, 2013).  Indeed, "[f]or more than 100 years state and federal courts have adhered to the principle (under both state

4

and federal law) that the victim of a tort is the proper plaintiff, and that insurers or other third-party providers of assistance and medical care to the victim may recover only" through subrogation. *Teamsters*, 196 F.3d at 822; *see also id.* at 827 (all but three states "enforce the normal rule that a third-party payor may recover as subrogee or not at all"). Like the unsuccessful tobacco plaintiffs, plaintiffs made a strategic choice to forswear subrogation in a transparent effort to "to strip their adversaries of all defenses" through "the device of an insurers' direct suit." *Id.* at 823. And as in those cases, "[t]his is exactly why plaintiffs must lose." *Ibid.*

> **B.  Plaintiffs have not plausibly alleged that the manufacturer defendants caused them to overpay for opioid prescriptions.**

The second type of injury plaintiffs allege—that they paid more for opioid medications than they should have—fares no better than the first. That is true notwithstanding plaintiffs' assertion that the manufacturer defendants made misrepresentations to plaintiffs directly.

To start, even in a case of allegedly direct misrepresentations, "the purchased drugs must have been either unsafe or ineffective for their prescribed use." *Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1360 (11th Cir. 2011); *see also In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 47-49 (1st Cir. 2013) (reviewing evidence of safety and effectiveness). Unless the opioid prescriptions that plaintiffs paid for were medically inappropriate, they received "the benefit of [their] bargain" and have not been injured. *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002); *see also Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 547-548 (E.D. Pa. 2014), *aff'd*, 620 Fed. Appx. 82 (3d Cir. 2015). Yet plaintiffs do not identify even a single prescription they paid for that was medically inappropriate. This alone defeats their second theory of injury.

Nor do they identify a *class or type* of opioid prescription they reimbursed that was medically inappropriate. That failure, among others, distinguishes this case from *Neurontin*, in

which the plaintiffs sought recovery for certain types of *off-label* prescriptions they could at least plausibly allege were unsafe *as a category*. *See* 712 F.3d at 25 ("four categories of off-label Neurontin prescriptions"); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 159 F. Supp. 3d 898, 903 (N.D. Ill. 2016) (alleging certain types of off-label uses were unsafe). Here, by contrast, plaintiffs primarily challenge the *FDA-approved* indication of opioid medicines for long-term treatment of non-cancer pain, with no allegation (which would in any event be preempted) that such on-label use is *categorically* unsafe. This alone makes *Neurontin* inapposite.

And to the extent they allege off-label usage, plaintiffs do not identify which such prescriptions they paid for were medically inappropriate or unsafe, or even how they could hope to identify them. That is particularly important because "[o]ff-label use … often is essential to giving patients optimal medical care," *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351 n.5 (2001) (citation omitted), and off-label promotion—which is neither "unlawful" nor "in and of itself false or misleading," *United States v. Caronia*, 703 F.3d 149, 165-166 (2d Cir. 2012)—helps physicians make "informed and intelligent treatment decisions," *id.* at 166. For that reason, courts frequently dismiss false-marketing claims by third-party payors seeking to recover payments for off-label prescriptions. *See*, *e.g.*, *Travelers*, 32 F. Supp. 3d at 547-549, 553; *In re Schering-Plough Corp. Intron/Temodar Cons. Class Action*, 2010 WL 2346624, at *7-9 (D.N.J. June 9, 2010); *Ctr. Reg'l Emps. Benefit Fund v. Cephalon, Inc.*, 2010 WL 1257790, at *3 (D.N.J. Mar. 29, 2010). Plaintiffs' claims thus fail even under *Neurontin*.

More fundamentally, *Neurontin* has been widely disapproved and stands in "disagreement with [at least] four circuits." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs*., 873 F.3d 574, 578 (7th Cir. 2017). That is because it elides a crucial link in the causal chain: the independent

medical judgment of prescribing physicians.  The majority position, held by at least the Second, Third, Seventh, Ninth, and Eleventh Circuits, is "that improper representations made to physicians do not support a RICO claim by Payors, several levels removed in the causal sequence."  *Ibid.* (collecting cases).  This simple point is illustrated by *Indiana/Kentucky/Ohio Regional Council of Carpenters Welfare Fund v. Cephalon, Inc.*, 2014 WL 2115498 (E.D. Pa. May 21, 2014), which plaintiffs attempt to distinguish on the ground that it involved "vague and incomplete pleading." Opp. 28.  Of course, the amended complaint here does too, failing to include the details of any misrepresentation by any manufacturer defendant to any physician who wrote an opioid prescription that plaintiffs reimbursed.  More important, *Carpenters* expressly held that, *pleading deficiencies aside*, the plaintiff could not establish causation because prescribers are presumed to have knowledge of the risks of the medicines they prescribe as clearly disclosed in FDA-approved labeling.  2014 WL 2115498, at *6.  And because causation under RICO reflects traditional proximate-cause principles, *see Perry*, 324 F.3d at 850-851; *City of Cleveland*, 2013 WL 1183332, at *5, the *Sidney Hillman* and *Carpenters* analysis defeats all of plaintiffs' claims here.

Finally, plaintiffs do not allege or argue that they paid an inflated price for any opioid medication.  Instead, they seem to argue (in conclusory fashion) that they paid for *too many* prescriptions.  That fundamentally distinguishes this case from *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 640 (3d Cir. 2015), where it was "crucial" that the plaintiffs' theory of injury rested on alleged price inflation.  What's more, as in *Ironworkers*, plaintiffs do not identify "any facts to suggest plausibly that they did not charge their enrollees premiums or, in turn, adjust those premiums to compensate for this known risk" of having too many members fill prescriptions for opioid medications.  634 F.3d at 1364.  Rather, plaintiffs "consciously exposed themselves to pay for all prescriptions," along with any derivative costs,

"even if such prescriptions were birthed by fraud." *Id.* at 1360.  As a result, plaintiffs' claims here—which do not allege that plaintiffs' members obtained and filled fraudulent prescriptions, much less ones caused by the manufacturer defendants—are foreclosed.

Plaintiffs also face a second insurmountable problem: "TPPs who claim that false advertising injured them, but continue to cover the allegedly falsely advertised drug on their formularies and reimburse members for prescriptions cannot, as a matter of law, establish that they were injured by reason of or were victims of the false advertising." *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms., LP*, 136 A.3d 688, 696 (Del. 2016).  This is the same "common sense notion," *ibid.*, that the Supreme Court of the United States has recognized in the False Claims Act context—and has said is properly addressed at the motion to dismiss stage.  *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016) ("if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material"); *see also id.* at 2003-2004 & n.6.  And it is fatal to plaintiffs' claims of injury here, for plaintiffs "do *not* allege that they would have disallowed coverage of prescription opioids for long-term treatment of chronic non-cancer pain but for the alleged marketing activities."  MTD 4.  Indeed, the transferor court in the City of Chicago's lawsuit dismissed the complaint for precisely this reason.  *See Chicago* MTD 8-9 (citing *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1079 (N.D. Ill. 2016)).

Plaintiffs respond that "this case is in its infancy" and that they, "like the rest of the nation, have only recently realized the degree and breadth of Defendants' scheme."  Opp. 9.  The first point is irrelevant: even at the pleading stage, a plaintiff must "explain with particularity how she detrimentally relied on the alleged fraud."  *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852-853

(6th Cir. 2006).  The second point is implausible: other plaintiffs filed public (and publicized) lawsuits containing fundamentally the same allegations more than four years ago.  *See City of Chicago v. Purdue Pharma L.P.*, No. 14-cv-4361 (N.D. Ill. July 17, 2014), ECF No. 76 *People ex rel. Santa Clara Cnty. Counsel & Orange Cnty. Dist. Att'y v. Purdue Pharma L.P.*, No. 30-2014-00725287-CU-BN-CXC (Cal. Super. Ct. May 21, 2014), Dkt No. 2.  Plaintiffs here are sophisticated entities that by their own admission employ a committee of medical experts, who are charged with knowing the risks of prescription opioid medicines (as disclosed in FDA-approved labeling) and who would presumably keep abreast of such important developments, "to make decisions concerning formulary development."  1AC ¶685.  The only reasonable inference from plaintiffs' own allegations is that the allegedly false marketing had no impact on plaintiffs' decision to provide coverage for FDA-approved opioid medications.

And the Court need not rely on inference at all, for plaintiffs themselves have affirmatively alleged that, *even now*, they "will continue to purchase and/or provide reimbursement for opioids in the foreseeable future."  1AC ¶¶28-29.  In light of that admission, plaintiffs' invocation of *Avandia*—where the court declined to "'assume, in the absence of contrary allegations, that plaintiffs did not change their coverage' after learning of the defendants' fraud," Opp. 9 (quoting *Avandia*, 804 F.3d at 644)—is misguided.  Here, plaintiffs have provided precisely such "contrary allegations":  to this day, they continue to purchase and reimburse the manufacturer defendants' products.  1AC ¶¶28-29.  That is "very strong evidence" indeed that the manufacturer defendants' alleged conduct was completely immaterial to plaintiffs' reimbursement decisions.  *Escobar*, 136 S. Ct. at 2003.  If plaintiffs were injured at all, "[t]hey were injured by their own conduct." *Teamsters Local 237*, 136 A.3d at 696.

## II.      The economic-loss rule bars the nuisance and negligence claims (Counts 5, 6, and 7).

Plaintiffs argue that their negligence and nuisance claims are not barred by the economic loss rule for two reasons: (1) no privity exists between plaintiffs and the manufacturer defendants; and (2) the manufacturer defendants' alleged nuisance-creating conduct was intentional.  Opp.  44. Both arguments fail.

*First*, the economic loss rule does not require privity.  *See City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 477 (6th Cir. 2017); *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E. 2d 661, 669 (Ohio 1995).  As the Supreme Court of Ohio has explained, in general "there is no … duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." *Queen City Terminals*, 653 N.E. 2d at 667-668.  To be sure, that court (in a case predating *Queen City Terminals*) mused in *dicta* that the economic-loss rule might require privity for claims *of strict liability or breach of warranty* (not negligence or nuisance), yet expressed doubt even on that score.  *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 634-635 & n.7 (Ohio 1989).  Accordingly, the Sixth Circuit has recognized that "based on the cautionary dicta in *Chemtrol*, … parties lacking privity might be subject to the economic loss rule." *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1029-1030 (6th Cir. 2003).

Even if privity were required for the economic-loss rule to apply, it would be required only for *consumer* plaintiffs, not "commercial parties," as the Sixth Circuit has made clear.  *Ibid.* (Ohio law); *see also Chem. Solvents, Inc. v. Advantage Eng'g, Inc.*, 2011 WL 1326034, at *12 (N.D. Ohio Apr. 6, 2011) ("commercial parties—both in and out of privity—are subject to the economic loss rule").  Ohio courts thus routinely apply the economic-loss rule to sophisticated commercial entities like plaintiffs here without requiring privity.  *See*, *e.g.*, *City of Cincinnati v. Deutsche Bank*

*Nat'l Tr. Co.*, 897 F. Supp. 2d 633, 641 (S.D. Ohio 2012); *RWP, Inc. v. Fabrizi Trucking & Paving Co.*, 2006 WL 2777159, at *4 (Ohio App. Sept. 28, 2006).

*Second*, plaintiffs argue that the economic loss rule does not apply to intentional torts. *See* Opp. 44. That is a red herring. Though it requires intent, an absolute nuisance is not an intentional tort (like trespass or battery) immune from the economic-loss rule. Tellingly, plaintiffs do not cite *a single case* declining to apply the economic-loss rule to an absolute nuisance claim on this ground; instead, they cite only *Eysoldt v. ProScan Imaging*, 957 N.E.2d 780 (Ohio App. 2011), which involved conversion, not nuisance. *See* Opp. 44. No surprise; courts routinely apply the economic-loss rule to absolute nuisance claims under Ohio law. *E.g.*, *Cincinnati*, 897 F. Supp. 2d at 641; *RWP*, 2006 WL 2777159, at *4. This Court should follow suit.

## III.    Plaintiffs have not pleaded a special injury different from the public's, as their public nuisance claims require (Counts 5 and 6).

Plaintiffs lack standing to bring their nuisance claims because they allege an injury no different from that suffered by the public: paying for externalities purportedly caused by opioid abuse, misuse, and addiction. *See* 1AC ¶¶1012, 1023. Plaintiffs retort that they have suffered unique harms because they were "specifically targeted … [and] misled." Opp. 34. But that is an argument about the manufacturer defendants' alleged *conduct*; it says nothing about whether plaintiffs' alleged *harm*—that "their medical costs increased," *ibid.*—is "different in kind rather than degree from that suffered by other members of the public exercising the same public right," *Cleveland Hous. Renewal Project, Inc. v. Wells Fargo Bank, N.A.*, 934 N.E.2d 372, 380 (Ohio App. 2010).

Here, plaintiffs' alleged harms are not "different in kind" from those "suffered by other members of the public"; to the contrary, as described above, they are entirely derivative of the public's alleged injuries. *See*, *e.g.*, *Allegheny Gen. Hosp.*, 228 F.3d at 446 ("the Hospitals did not

sufficiently allege that they suffered a harm different from and of greater magnitude than the harm suffered by the general public … [because their] injuries are derivative of the nonpaying patients' injuries"); *Assoc. of Wash. Pub. Hosp. Dists.*, 241 F.3d at 706-707 (same).  And in any event plaintiffs' argument is belied by the amended complaint, which actually alleges that the manufacturer defendants broadly "targeted" the public at large, not merely plaintiffs.  *See*, *e.g.*, 1AC ¶316 ("The Marketing Defendants … targeted the medical community … [and] patients who experience chronic pain"); *see also* 1AC ¶¶431-437.

## IV.  Plaintiffs have not pleaded justifiable reliance on their fraud claim with particularity (Count 8).

Justifiable reliance is an essential element of an Ohio fraud claim, *see Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003), and plaintiffs must plead it with particularity under Rule 9(b).  They do not.  Plaintiffs identify only ¶¶1103-1104 of the 1AC, *see* Opp. 45, but both of those paragraphs are entirely conclusory and contain no facts describing plaintiffs' reliance (reasonable or otherwise) on any allegedly fraudulent statement or omission.  That alone defeats plaintiffs' fraud claim.

## V.  A criminal conviction is required to support an injury-through-criminal-acts claim (Count 9).

This Court has aptly observed:  "There is authority from this district that the state statute requires a plaintiff to allege and prove that the defendant was criminally convicted" to support civil liability under Ohio Rev. Code §2307.60.  *Buddenberg v. Weisdack*, 2018 WL 3159052, at *5-6 (N.D. Ohio June 28, 2018).  Plaintiffs urge the Court to buck this trend, *see* Opp. 47-48, but unless the Supreme Court of Ohio expresses a contrary view (and this Court has certified that question in another case, *see Buddenberg v. Weisdack*, 2018 WL 3949557, at *2-3 (N.D. Ohio

Aug. 22, 2018)), the Court should follow the case law in this district and hold that a criminal conviction is required to support a claim under Ohio Rev. Code §2307.60.

## VI. Plaintiffs have not alleged a direct economic transaction with the manufacturer defendants, defeating the unjust-enrichment claim (Count 10).

Plaintiffs concede that they have *not* alleged a direct economic transaction with any manufacturer defendant, but argue that they need only have paid some portion of the "negative externalities" allegedly created by the manufacturer defendants' conduct. *See* Opp. 48-50. Yet the principal case they rely on, *White v. Smith & Wesson*, 97 F. Supp. 2d 816 (N.D. Ohio 2000), predates the Supreme Court of Ohio's decision to the contrary in *Johnson v. Microsoft Corp.*, 834 N.E.2d 791 (Ohio 2005), and has been criticized as inconsistent with Ohio law. *See City of Miami v. Bank of Am. Corp.*, 800 F. 3d 1262, 1288 (11th Cir. 2015); *Summit* Reply 34.

Bearing the cost of "negative externalities" might be a benefit conferred on society at large, but is not a benefit conferred on *defendants*; plaintiffs thus "cannot establish that [any manufacturer defendant] retained any benefit 'to which it is not justly entitled.'" *Johnson*, 834 N.E.2d at 799. And plaintiffs' attempt to cabin *Johnson* as an antitrust case is unconvincing; federal courts routinely apply *Johnson* outside the antitrust context to dismiss unjust enrichment claims where, as here, there is no direct economic relationship between the parties. *See Summit* Reply 33-34.

## VII. Plaintiffs have not pleaded an unlawful agreement to support a civil conspiracy claim (Count 11).

An unlawful agreement is an essential element of a conspiracy, yet plaintiffs do not identify any non-conclusory facts in the amended complaint alleging such an agreement; instead, they say only that manufacturer defendants pursued a "common design to promote prescription opioids through misrepresentations and omissions." Opp. 52. But that is nothing more than parallel

conduct, and parallel conduct—even consciously parallel conduct—is insufficient as a matter of law to state a claim for conspiracy.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  And plaintiffs' assertion that the manufacturer defendants' alleged "marketing conduct" is inconsistent "with ordinary and rational business behavior," Opp. 53, is belied by the amended complaint, which alleges that the marketing conduct "was designed to dramatically increase the demand for and sale of opioids," 1AC ¶9—the very definition of a rational business goal.

Similarly, plaintiffs' assertion that "participation in industry-wide trade association goes well beyond routine commercial activities," Opp. 53, is hard to credit—and anyway "[m]ere participation in trade organizations does not render plausible the existence of a conspiratorial agreement."  *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1072 (11th Cir. 2017).  Were the rule otherwise, every trade association would be a *de facto* conspiracy, thereby bringing an end to such associations.  Absent a plausible allegation that the manufacturer defendants entered into an unlawful *agreement*, plaintiffs cannot maintain a civil conspiracy claim.

## VIII.  Neither the fraudulent-concealment nor continuing-violation doctrines saves the plaintiffs' untimely claims.

With one exception, plaintiffs concede that each of their claims is subject to a limitations period of between one and five years.  (Plaintiffs' objection that a six-year limitations period applies to their nuisance claim, *see* Opp. 58, overlooks the express language of Ohio Rev. Code §2305.09(D), which specifies a four-year limit, *see Gibson v. Park Poultry, Inc.*, 2007 WL 2358589, at *2 (Ohio App. Aug. 13, 2007); *Ashtabula River Corp. Grp. II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 984 (N.D. Ohio 2008).)  So to rescue their claims, plaintiffs invoke the fraudulent-concealment and continuing-violation doctrines.  *See* Opp. 58-61.  Neither applies here.

Fraudulent concealment is inapplicable because the right to rely on it "never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discovered the

facts at issue." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013) (citation omitted).  "No more than a reasonable opportunity to discover the misrepresentation is required to start the period of limitations."  *Zemcik v. LaPine Truck Sales & Equip. Co.*, 706 N.E.2d 860, 865 (Ohio App. 1998).  And allegations of "mere concealment are not sufficient … to toll" a limitations period; instead, plaintiffs must set forth "direct and specific allegations of fact showing fraud." *Inv'rs REIT One v. Jacobs*, 546 N.E.2d 206, 211 (Ohio 1989) (citation omitted).  Plaintiffs do not allege that they were unaware of the facts underlying their complaint before April 13, 2013, or explain how they lacked a reasonable opportunity to exercise diligence to discover them.  *See* Opp. 59-60.  And "plaintiffs may not simply rely on the bare assertion that they were unaware of the facts underlying their cause of action," as plaintiffs have attempted to do here.  *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520-521 (6th Cir. 2008).

As for the continuing-violation doctrine, there is a difference between "continued action"—required to invoke tolling—and "simply continuing harm"—which will not toll the limitations period.  *Moss v. Columbus Bd. of Educ.*, 98 Fed. Appx. 393, 396 (6th Cir. 2004).  Yet plaintiffs allege only the latter:  "Plaintiffs allege that *the harms* from the opioid epidemic are ongoing."  Opp. 60 (emphasis added).  The failure to plead continued *action* defeats tolling here. *See Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009); *Moss*, 98 Fed. Appx. at 396.

## CONCLUSION

All claims in the amended complaint against the manufacturer defendants should be dismissed with prejudice.

Dated: September 10, 2018

Respectfully submitted,

/s/ *Donna M. Welch*

Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

*Attorney for Defendant Allergan Finance, LLC*
*f/k/a Actavis, Inc. f/k/a Watson*
*Pharmaceuticals, Inc.*

/s/ *Steven A. Reed* (consent)

Steven A. Reed
Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5603
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000
brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals, USA,*
*Inc.; Cephalon, Inc.; Watson Laboratories,*
*Inc.; Actavis LLC; and Actavis Pharma, Inc.*
*f/k/a Watson Pharma, Inc.*

/s/ *Mark S. Cheffo* (consent)
Mark S. Cheffo
Sheila L. Birnbaum
Hayden A. Coleman
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com
Sheila.Birnbaum@dechert.com
Hayden.Coleman@dechert.com

*Attorneys for Defendants Purdue Pharma L.P.;*
*Purdue Pharma Inc.; and The Purdue*
*Frederick Company*

/s/ *Charles C. Lifland* (consent)
Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
clifland@omm.com
sstrong@omm.com

Daniel M. Petrocelli
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
dpetrocelli@omm.com

*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc.; Johnson & Johnson;*
*Janssen Pharmaceutica, Inc. n/k/a Janssen*
*Pharmaceuticals, Inc.; and Ortho-McNeil-*
*Janssen Pharmaceuticals, Inc. n/k/a Janssen*
*Pharmaceuticals, Inc.*

/s/ *Jonathan L. Stern* (consent)

Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 942-5000
jonathan.stern@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Tel: (213) 243-4000
sean.morris@arnoldporter.com

*Attorneys for Defendants Endo Health
Solutions Inc.; Endo Pharmaceuticals Inc.;
Par Pharmaceutical, Inc.; and Par
Pharmaceuticals Companies, Inc.*

/s/ *Brien T. O'Connor* (consent)

Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
Tel: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Attorneys for Defendants Mallinckrodt LLC
and SpecGx LLC*

/s/ *Eric. H. Zagrans* (consent)

Eric H. Zagrans (0013108)
ZAGRANS LAW FIRM LLC
6100 Oak Tree Boulevard, Suite 200
Cleveland, Ohio 44131
Tel: (216) 771-1000
eric@zagrans.com

J. Matthew Donohue
Joseph L. Franco
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Tel: (503) 243-2300
matt.donohue@hklaw.com
joe.franco@hklaw.com

Nicholas A. Sarokhanian
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
Tel: 214.964.9500
nicholas.sarokhanian@hklaw.com

*Attorneys for Insys Therapeutics, Inc.*

## LOCAL RULE 7.1(f) CERTIFICATION

I certify that this case has been designated a "complex case" under CMO One §2(h) [Dkt. 232], and that this memorandum adheres to the page limitations for complex cases set forth in Local Rule 7.1(f).

Dated: September 10, 2018

/s/ *Donna M. Welch*
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2018, a copy of foregoing Reply in Support of the Manufacturer Defendants' Joint Motion to Dismiss the Amended Complaint was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

/s/ *Donna M. Welch*
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com