BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: CHILDREN BORN             MDL - _____
OPIOID-DEPENDENT

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs[1] respectfully move that the Judicial Panel on Multidistrict Litigation ("Panel"), pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Panel, transfer the actions on behalf of children born opioid-dependent listed in the attached Schedule of Actions and subsequent tag-along actions to a separate MDL before the Southern District of West Virginia.; alternatively, Plaintiffs request transfer to the Southern District of Illinois.

**I.   Children Born Opioid-Dependent Need A Separate MDL From MDL 2804**

Movants seek transfer and coordination or consolidation of all cases filed on behalf of opioid-dependent infants into a new MDL for the reasons laid out in the *Doyle* plaintiffs' recently filed Motion to Vacate CTO-47 (JPML 2804 Rec. Doc. 2398).[2] As discussed therein, Movants bring unique claims on behalf of opioid-dependent infants, distinct from the claims of the government and corporate plaintiffs in MDL 2804. These suits bring direct claims on behalf of innocent victims for past and future damages suffered, in contrast to claims for reimbursement. Plaintiffs' claims do not wholly

---

[1] Movants are: Deric Rees and Ceonda Rees, individually and as next friend and guardian of Baby T.W.B. on behalf of themselves and all others similarly situated (Illinois Class); Darren and Elena Flanagan, individually and as adoptive parents and next friends of Baby K.L.F., on behalf of themselves and all others similarly situated (Tennessee Class); Rachel Wood, individually and as next friend and adopted mother of Baby O.W., on behalf of themselves and all others similarly situated (Missouri Class); Melissa Ambrosio, individually and as next friend of Baby G.A., and on behalf of themselves and all others similarly situated (California Class); Shannon Hunt, individually and as next friend of Baby S.J., on behalf of themselves and all others similarly situated (Maryland Class); Bobbi Lou Moore on behalf of Baby R.R.C., and all other similarly situated (West Virginia Class); Walter and Virginia Salmons, individually and as the next friend or guardian of Minor W.D. and on behalf of all others similarly situated (National Class).
[2] All arguments in Motion to Vacate CTO-47 (JPML 2804 Rec. Doc. 2398) are adopted in support of this Motion.

sound in public nuisance but also in state medical monitoring and product liability causes of action. Further, Movants have grave concerns that the due process rights of opioid-dependent infants are not being protected in MDL 2804 and that the interests of the governmental and corporate parties represented by the MDL leadership are fundamentally in conflict with those of these infants.

Movants established in their Motion to Vacate that concerns for due process, conflicts of interest, and the protection owed to children under the law compel this Panel to exclude such claims from MDL 2804 as it is presently structured. Movants have also established that despite their counsel's numerous attempts to address these concerns with the leadership of the MDL, the status quo remains. Absent a structural change within the MDL, the question before the Panel is not whether these cases should be held outside of the MDL (they must be), but whether they should be consolidated in their own MDL.

The prospect of a separate MDL for a non-governmental plaintiff group was explicitly and favorably discussed at this Panel's November 30, 2017 hearing:[3]

> **JUDGE BREYER:** Well, there's another option that maybe your colleagues can address for you which is they all go to Judge X. There are common issues. Judge X conducts the discovery with respect to the common issues. And Judge X has the option of addressing the panel, one way or another, or the lawyers do, to create another MDL with this group or that group because the issues aren't really amenable to the MDL that they are in.
> **MR. TELLIS:** I think that is a fine idea.
> **JUDGE BREYER:** You like that idea?
> **MR. TELLIS:** I like that idea.
> **JUDGE BREYER:** I'm glad you came up with that idea.
> …
> **JUDGE VANCE:** It's not infeasible to think there could be a personal injury MDL or a third-party payor.

It has become abundantly clear that MDL 2804 is not amenable to the issues affecting opioid-dependent infants, making a separate MDL for this group of innocent, injured plaintiffs necessary.

---

[3] JPML 2804 Rec. Doc. No. 382 at 16-17, Transcript of November 30, 2017 Hearing.

Presently, there are substantially similar opioid-dependent infant class action suits pending in the Southern District of West Virginia, the Southern District of Ohio, as well as eight cases currently caught up in MDL 2804 in the Northern District of Ohio. These state by state class actions filed to date conservatively represent approximately 40% of the children born opioid-dependent in the country. Undersigned counsel anticipates that several other substantially similar opioid-dependent infant class action suits will be filed across the country in the coming months. The actions on behalf of the opioid-dependent infants assert substantially similar claims and seek substantially similar relief. These suits seek to establish a fund for medical monitoring, damages related to Neonatal Abstinence Syndrome (NAS) treatment and long-term treatment of these innocent victims of the Opioid Crisis.

The medical issues involved in the opioid-dependent infant cases and the relief sought are distinct from those of the governmental and corporate cases of MDL 2804.  The unique issues of these infants' cases require discovery to be undertaken in areas including the following:

- Studies regarding the effect of Defendants' opioid products upon the health of pregnant mothers and their children *in utero*, and effects after birth.
- Knowledge regarding the effects of methadone (and other addiction treatment drugs) taken by pregnant mothers on their children *in utero*.
- Studies regarding which medications are appropriate for pregnant mothers dealing with opioid addiction.
- Knowledge of the diversionary opioid market's impact on pregnant mothers.
- Discovery relevant to Movants' products liability claims.

To the extent there is overlap of factual allegations and common issues regarding the opioid drug manufacturers' and distributors' conduct between the opioid-dependent infant lawsuits and the suits in MDL 2804, Movants envision that discovery in the infants' MDL would be coordinated with Judge Polster in MDL 2804 in accord with 28 U.S.C. § 1407.

Absent transfer to a separate MDL, the opioid-dependent infants' unique interests will remain unprotected and these innocent young victims risk losing the opportunity to achieve a productive adulthood.

## II. The Southern District of West Virginia is the Most Appropriate Forum for Transfer and Consolidation or Coordination

The Southern District of West Virginia, where the suit of Bobbi Lou Moore on behalf of Baby R.R.C. v. Purdue Pharma L.P., No. 2:18-cv-01231 (S.D.W. Va.) is currently pending, is the most appropriate forum for Multidistrict Litigation. Southern West Virginia is the epicenter of the Opioid Crisis– where it began and where its most profound impacts are being felt. West Virginia has some of the highest rates of fetal opioid exposure and Neonatal Abstinence Syndrome (NAS) in the country. The West Virginia Department of Health and Human Resources (DHHR) recently released data for 2017 showing the overall incidence rate of NAS was 50.6 cases per 1,000 live births (5.06%) for West Virginia residents, with the rate as high as 106.6 cases per 1,000 live births (10.66%) in one county.[4] According to the CDC, there are many more opioid prescriptions than people in West Virginia– 138 prescriptions for every 100 people.[5] A congressional investigation revealed that from 2008 to 2012, pharmaceutical distributors sent more than 780 million pills of hydrocodone and oxycodone to West Virginia, a state with only 1.8 million people.[6] Southern West Virginia was especially hard hit: 20.8 million opioid pills were shipped from 2006 to 2016 to Williamson (population 2,900).[7] One pharmacy in Kermit (population 400) ranked 22nd in the U.S. in the number of hydrocodone pills it received in 2006.[8] The grave impact of this flood of prescription opioids on southern West Virginia and the children born there cannot be overstated.

The Courts of the Southern District of West Virginia have a proven track record in administering Multidistrict Litigation, as demonstrated by the Pelvic Repair System Products Liability

---

[4] https://dhhr.wv.gov/News/2018/Pages/DHHR-Releases-Neonatal-Abstinence-Syndrome-Data-for-2017-.aspx
[5] CDC, "Opioid Use Disorder Documented at Delivery Hospitalization - United States 1999-2014," August 10, 2018, at 2. "West Virginia, for example, had a prescribing rate estimated at 138 opioid prescriptions per 100 persons in 2012, suggesting that individual persons might receive more than one opioid prescription per year."
[6] https://www.usnews.com/news/politics/articles/2018-05-08/hill-panel-probing-opioids-abuse-targets-distributor-firms
[7] *Id.*
[8] *Id.*

4

Litigation. The Southern District of West Virginia provides a well-prepared, well-staffed, and overall top-notch staff and Clerk's office. As discussed below, the District's judges have a wealth of experience in complex litigation, particularly pharmaceutical litigation. The convenience of the courts, witnesses, parties, and counsel will all be served by transfer of these cases to the Southern District of West Virginia.

Judge Robert C. Chambers has the requisite experience to manage this complex litigation. He previously served as Chief Judge for this District from 2012-2017, and has presided over 500 cases involving pharmaceutical companies. Judge Chambers is currently presiding over products liability actions involving claims against the manufacturer of prescription anticoagulant drugs.[9] He has also presided over a case featuring complex pharmaceutical litigation, *W. Virginia ex rel. Morrisey v. Pfizer, Inc.*, 969 F. Supp. 2d 476, 479 (S.D.W. Va. 2013). Prior to being appointed to the federal bench by President Clinton, Judge Chambers was in private practice in Charleston for twenty years, and served as legal counsel to the West Virginia State Senate.

Senior Judge David A. Faber, appointed to the federal bench in 1991 by President George H.W. Bush, served as Chief Judge at the Southern District of West Virginia from 2002 to 2007. He has served as a Senior Judge in the district since 2008. He has handled 79 cases involving pharmaceuticals, including several opioid cases.[10] Senior Judge Faber also presided over a case involving medical products liability.[11] Prior to becoming a federal judge, Senior Judge Faber worked in both private practice and served in the military as a JAG, and achieved the rank of Colonel. He attended Yale for law school where he was a National Law Scholar, and holds an L.L.M. degree from the University of Virginia.

---

[9] *Knight v. Boehringer Ingelheim Pharm., Inc.*, 2018 WL 3037442 (S.D.W. Va. June 19, 2018).
[10] *See, e.g., City of Huntington v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2017 WL 3317300 (S.D.W. Va. Aug. 3, 2017); *The Town of Clendenin, West Virginia v. AmerisourceBergen Drug Corporation et al.*, No. 2:18-CV-01284, (S.D.W. Va. Sept. 10, 2018); *Adkins v. Purdue Pharma, L.P. et al.*, No. 18-CV-00477, (S.D.W. Va. Mar. 23, 2018).
[11] *Walker v. Medtronic, Inc.*, No. CIV.A. 2:07-00317, 2010 WL 4822135 (S.D.W. Va. Nov. 24, 2010), *aff'd*, 670 F.3d 569 (4th Cir. 2012).

Chief Judge Thomas E. Johnston in the Charleston Division has over a decade of experience as a federal judge. He oversees some of the suite of cases collected in the MDL related to the Pelvic Repair System Products Liability Litigation.[12] Chief Judge Johnston has extensive experience presiding over medical cases, including 216 cases involving health care, and 28 cases specifically involving pharmaceuticals, as well as products liability claims.[13] He had previously served as U.S. Attorney for the Northern District of West Virginia from 2001 to 2006 before being appointed to the bench by President George W. Bush.

In the alternative, Movants would propose transfer and consolidation in the Southern District of Illinois before the Judge Staci M. Yandle. Judge Yandle was appointed to the federal bench in 2014 after an illustrious career in private practice and a distinguished record of public service, including serving on the Illinois Advisory Committee to the United States Commission on Civil Rights. This Panel has previously commended the Southern District of Illinois as convenient due in part to its geographically central location.[14]

**III. Conclusion**

For the above-stated reasons and the reasons stated in the Motion to Vacate filed by the *Doyle* plaintiffs, Movants respectfully request that the Panel transfer the actions on behalf of opioid-dependent infants recited on the attached Schedule and all subsequently filed tag-along cases for coordinated and consolidated pretrial proceedings in a separate MDL in the Southern District of West Virginia. Alternatively, Movants request transfer to the Southern District of Illinois, and assignment to Judge Staci M. Yandle.

---

[12] *See* MDL No. 2187, In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation.
[13] *See, e.g., Raab v. Smith & Nephew, Inc.*, 150 F. Supp. 3d 671 (S.D.W. Va. 2015).
[14] *In re: Pradaxa (dabigatran etexilate) Prod. Liab. Litig.*, 883 F. Supp. 2d 1355, 1356 (U.S. Jud. Pan. Mult. Lit. 2012) ("The Southern District of Illinois' geographically central location and accessibility also commend it for this nationwide products liability litigation.").

Respectfully submitted,

/s/ Scott R. Bickford
**MARTZELL, BICKFORD & CENTOLA**
Scott R. Bickford (LA 1165)
Spencer R. Doody (LA 27795)
338 Lafayette Street
New Orleans, LA 70130
Telephone: 504-581-9065
Facsimile: 504-581-7635
sbickford@mbfirm.com
srd@mbfirm.com
usdcndoh@mbfirm.com


/s/ Celeste Brustowicz
**COOPER LAW FIRM, LLC**
Celeste Brustowicz (LA 16835)
Barry J. Cooper, Jr. (LA 27202)
Stephen H. Wussow (LA 35391)
Victor Cobb (LA 36830)
1525 Religious Street
New Orleans, LA 70130
Telephone: 504-399-0009
Cbrustowicz@sch-llc.com
swussow@sch-llc.com


/s/ Kevin W. Thompson
**THOMPSON BARNEY LAW FIRM**
Kevin W. Thompson
David R. Barney, Jr.
2030 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: 304-343-4401
Facsimile: 304-343-4405
Kwthompsonwv@gmail.com


/s/ James F. Clayborne
**CLAYBORNE, SABO & WAGNER,** LLP
Sen. James F. Clayborne (IL 45627)
525 West Main Street, Suite 105
Belleville, Il 62220
Telephone:  618-239-0187
Facsimile:  618-416-7556

7

jclayborne@cswlawllp.com

/s/ Jack W. Harang
**LAW OFFICES OF JACK W. HARANG**
Jack W. Harang (LA 15083)
2433 Taffy Drive
Kenner, LA 70065
Telephone: 504-810-4734
jwharang@gmail.com


/s/ Kent Harrison Robbins
**THE LAW OFFICES OF KENT HARRISON**
ROBBINS, P.A.
Kent Harrison Robbins (FL 275484)
242 Northeast 27th Street
Miami, FL 33137
Telephone: 305-532-0500
Facsimile: 305-531-0150
Primary: Khr@khrlawoffices.com
Secondary: ereyes@khrlawoffices.com
Tertiary: assistant@khrlawoffices.com


/s/ Donald Creadore
**THE CREADORE LAW FIRM, P.C.**
Donald Creadore (NY 2090702)
450 Seventh Avenue - 1408
New York, NY 10123
Telephone: 212-355-7200
Facsimile: 212-583-0412
Primary: donald@creadorelawfirm.com
Secondary: donald@aol.com


/s/ Warren Perrin
**PERRIN, LANDRY, deLAUNAY**
Warren Perrin
251 La Rue France
P. O. Box 53597
Lafayette, LA 70505
Telephone: 337-233-5832
Perrin@plddo.com

8