**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) ) ) ) ) ) ) | CASE NO. 1:17-MD-2804 |
| | | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*Track One Cases*" | | |
| | | **DISCOVERY RULING NO. 4** |

This *Ruling* addresses the discovery obligations of defendants Teva and Allergan related to the generic opioid drugs they each manufactured, marketed, or sold. In numerous letters to the undersigned, the parties explain that: (1) prior to 2016, Allergan marketed both ***branded*** opioid drugs (e.g., Kadian and Norco) and also ***generic*** opioid drugs (e.g., generic versions of Kadian and Oxycodone); (2) in 2016, Allergan sold its generic opioid business to Teva; and (3) in 2018, Allergan and Teva entered into a contract whereby (a) Teva agreed to "indemnify, defend, and hold [Allergan] harmless" with regard to claims based on generic opioids, and (b) Teva and Allergan also agreed to "cooperate with each other to enable the proper defense" of generic-opioid-related claims.

Relying on their 2018 agreement, Teva and Allergan have sought to limit the scope and methods of MDL plaintiffs' discovery related to generic opioids.[1] For example, Allergan states that,

---

[1] Teva and Allergan, among other defendants, earlier objected to *any* discovery related to generic opioids, but the Court overruled this objection. *See Special Master's Discovery Ruling No. 2* at 3 (docket no. 693) (holding that manufacturer defendants must produce discovery related to "branded, unbranded, and generic drugs"); *Special Master's Discovery Ruling No. 3* at (docket no. 762); (noting that "*Discovery Ruling No. 2* made explicit that discovery regarding generic products is relevant and must be produced"); *Court Order* at 2 (docket no. 868) (overruling objections to these *Discovery Rulings*).

although it has maintained copies of documents related to its prior marketing of generic opioids, most of these documents were transferred to Teva in connection with the 2016 sale; therefore, plaintiffs should now obtain all discovery related to Allergan's pre-2016 marketing of generics from Teva, not Allergan.  Allergan goes so far to insist that, if plaintiffs make discovery requests for information that Allergan has and Teva does not, Allergan will "promptly make that information available to Teva" – not plaintiffs – and Teva can then produce it.  Letter from Donna Welch to Special Master Cohen at 2 (Aug. 29, 2018).  And Allergan and Teva have told plaintiffs that, "when questions about generics are asked of Allergan witnesses at upcoming depositions, Teva will represent the witness, but only for those questions."  Letter from Paul Geller to Special Master Cohen at 4 (Aug. 30, 2018).

Plaintiffs object to this approach, insisting Allergan and Teva must each respond to discovery separately.  The Special Master agrees.[2]

The Federal Rules of Civil Procedure require each party to produce relevant documents in its possession or control.  *See* Fed. R. Civ. P. 34; *In re Bankers Trust Co.*, 61 F.3rd 465, 469 (a party must produce discovery if it "has **actual** possession, custody, or control, ***or*** has the legal right to obtain the documents on demand") (some emphasis added).  This obligation is not normally one that

---

[2] The Special Master issued via email an informal ruling on this matter on September 2, 2018.  Rather than asking the Special Master to formally document the ruling immediately, in order to object, Teva and Allergan asked for time to work out a resolution with plaintiffs.  The Special Master agreed, but the parties did not reach resolution.  Accordingly, this *Ruling* serves to formalize the September 2, 2018 email ruling.  *See Order of Appointment* (docket no. 69) at 5 ("If a Special Master issues an informal ruling or order that is not on the record (such as the resolution of a discovery dispute) either orally, via email, or through other writing, and a party wishes to object to that ruling or order, the party shall ask the Special Master to formalize the ruling or order by filing it on the docket or appearing before a court reporter.  Such request shall be made within three days of issuance of the informal order or ruling, else the opportunity to object shall be waived.").

can be avoided by contract, especially a contract that – like the Teva/Allergan indemnity agreement – does not explicitly address discovery obligations. Teva and Allergan may have agreed that Teva will indemnify Allergan against settlement or judgment, and may even have agreed that Teva will provide money or manpower to support Allergan's discovery obligations; but they cannot agree unilaterally (i.e., without plaintiff assent) that Allergan *has no* discovery obligations related to generic opioids.

Because it is questionable whether the coordinated discovery plan suggested by Teva and Allergan is fully workable, and (more importantly) because discovery obligations under the Federal Rules of Civil Procedure cannot be avoided by agreement amongst defendants, themselves, the Special Master concludes plaintiffs' objections to Allergan's discovery refusals are well-taken. Accordingly, the Special Master concludes that:

- Allergan has a duty to undertake searches for and production of documents related to generic opioids that (a) were manufactured by Allergan-affiliated entities, but (b) are now affiliated with Teva.

- The search terms Allergan must use related to discovery of generic opioids shall be the same as those negotiated between counsel for Plaintiffs and Teva; there will be no separate negotiation of search terms between different counsel for Plaintiffs and Allergan. Plaintiffs and Allergan shall negotiate Allergan custodians. Teva may participate in this custodian negotiation if Teva and Allergan agree.

- This is obvious, but: Allergan must search documents and data that it has in its possession, custody, or control at this time. Any data or documents that are no longer in Allergan's possession, custody, or control need not be searched.

- Allergan also has a duty in discovery to provide interrogatory responses, and fact and 30(b)(6) witnesses, related to generic opioids that (a) were manufactured, marketed, or sold by Allergan-affiliated entities, but (b) are now affiliated with Teva.

- Both Allergan and Teva have separate and independent responsibilities to produce responsive discovery.  To the extent there is some overlap between those productions, and Allergan and Teva wish to review, produce and Bates-stamp one set of documents jointly, in order to avoid duplication, that is acceptable.  But both Allergan and Teva must fully comply with their discovery obligations and ultimately certify that all responsive documents within their possession, custody, and control have been produced.

      **RESPECTFULLY SUBMITTED,**

      /s/ David R. Cohen
      **David R. Cohen**
      **Special Master**

**Dated: September 21, 2018**