# EXHIBIT I



FILED
APR 25 2018
22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
BY _____ DEPUTY

```
STATE OF MISSOURI   )
                    ) SS
CITY OF ST. LOUIS   )
```

**MISSOURI CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**
**(City of St. Louis)**

```
STATE OF MISSOURI, ex rel.    )
JOSHUA D. HAWLEY, in his      )
Official Capacity as          )
Missouri Attorney General,    )   No. 1722-CC10626
                              )
           Plaintiff,         )   Division No. 6
                              )
vs.                           )
                              )
PURDUE PHARMA, L.P., et       )
al.,                          )
                              )
           Defendants.        )
```

ORDER

The Court has before it Defendants Purdue Pharma, L.P., Purdue Pharma, Inc., Purdue Frederick Company, Inc., Endo Health Solutions, Inc., Endo Pharmaceuticals, Inc., Janssen Pharmaceuticals, Inc., and Johnson & Johnson's Joint Motion to Dismiss Plaintiff's Petition for Failure to State a Claim Upon Which Relief Can Be Granted. The Court now rules as follows.

Plaintiff alleges that Defendants engaged in a fraudulent scheme to promote opioids for long term treatment of chronic non-cancer pain, which Plaintiff argues is unsafe and ineffective. Eight of Plaintiff's claims allege violations of the Missouri Merchandising Practices Act ("MMPA"), and the remaining claim is

ENTERED
APR 25 2018
MS

brought pursuant to the Missouri Health Care Payment Fraud and Abuse Act ("HCPFAA"). Plaintiff alleges that Defendants individually and jointly disseminated false and misleading information about opioid treatment, minimizing its risks.

Defendants move to dismiss each of Plaintiff's claims. First, they argue that Plaintiff has improperly utilized "group pleading," or asserting undifferentiated allegations of wrongdoing against multiple distinct defendants as if they were a single actor. Contrary to Defendants' arguments, there is no rule against "group pleading" in Missouri. It has long been accepted that an allegation that "Defendants" did something is an allegation that each defendant collectively referred to as "Defendants" did that thing. There are cases, as Defendants point out, that find that a plaintiff has failed to state a claim for fraud or misrepresentation under the MMPA where the plaintiff has "loosely join[ed] together various defendants" and "generally allege[d]… false representations…." See Gardner v. Bank of Am., N.A., 466 S.W.3d 642, 648 (Mo.App. E.D. 2015). However, these pleadings were deficient not in that they were "group pleadings," but in that they failed to allege "when, where, or who made the false representations at issue." Id. Plaintiff's petition here clearly alleges specific representations made by specific actors at

2

specific times, both by Defendants and others acting in concert with Defendants, and clearly makes claims against each Defendant.

Next, Defendants argue that Plaintiff has failed to set out its claims with the requisite particularity. Rule 55.15 requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A claim alleging violations of the MMPA, however, need not be stated with the same particularity as a claim of common law fraud or mistake. Gardner, 466 S.W.3d at 648; Ullrich v. CADCO, Inc., 244 S.W.3d 772, 778 (Mo.App. E.D. 2008).

Next, Defendants argue that Plaintiff fails to adequately state a claim under the MMPA. The fundamental purpose of the MMPA is the protection of customers and consumers. Berry v. Volkswagen Grp. of Am., Inc., 397 S.W.3d 425, 433 (Mo. banc 2013). "The MMPA is paternalistic legislation designed to protect those that could not otherwise protect themselves." Id. Section 407.100 sets out the cause of action that may be brought by the attorney general for violations of the MMPA:

> 1. Whenever it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, the attorney general may seek and obtain, in an action in a circuit court, an injunction prohibiting such person from continuing such methods, acts, uses, practices, or solicitations, or any

3

combination thereof, or engaging therein, or doing anything in furtherance thereof.

2. In any action under subsection 1 of this section, and pursuant to the provisions of the Missouri Rules of Civil Procedure, the attorney general may seek and obtain temporary restraining orders, preliminary injunctions, temporary receivers, and the sequestering of any funds or accounts if the court finds that funds or property may be hidden or removed from the state or that such orders or injunctions are otherwise necessary.

3. If the court finds that the person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, it may make such orders or judgments as may be necessary to prevent such person from employing or continuing to employ, or to prevent the recurrence of, any prohibited methods, acts, uses, practices or solicitations, or any combination thereof, declared to be unlawful by this chapter.

4. The court, in its discretion, may enter an order of restitution, payable to the state, as may be necessary to restore to any person who has suffered any ascertainable loss, including, but not limited to, any moneys or property, real or personal, which may have been acquired by means of any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter. It shall be the duty of the attorney general to distribute such funds to those persons injured. Such funds may or may not be interest-bearing accounts, but any interest which accrues to any such account shall be sent at least annually by the attorney general to the director of revenue to be deposited in the state treasury to the credit of the state general revenue fund.

5. The court, in its discretion, may appoint a receiver to ensure the conformance to any orders issued under subsection 3 of this section or to ensure the payment of any damages ordered under subsection 4 of this section.

6. The court may award to the state a civil penalty of not more than one thousand dollars per violation; except that, if the person who would be liable for such penalty shows, by a preponderance of the evidence, that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed.

7. Any action under this section may be brought in the county in which the defendant resides, in which the violation alleged to have been committed occurred, or in which the defendant has his principal place of business.

8. The attorney general is authorized to enter into consent judgments or consent injunctions with or without admissions of violations of this chapter. Violation of any such consent judgment or consent injunction shall be treated as a violation under section 407.110.

Section 407.100 RSMo. Pursuant to §407.020 RSMo, "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice." By the terms of the §407.100 RSMo, it is entirely within the discretion of the attorney general whether to seek injunctive relief or restitution on behalf of the citizens of Missouri. <u>State ex rel. Nixon v. Am. Tobacco Co.</u>, 34 S.W.3d 122, 130 (Mo. banc 2000).

5

Plaintiff alleges numerous facts in its petition relating to unlawful practices, including misrepresentations about addiction which caused physicians to prescribe opioids when they otherwise would not have, and patients to request and obtain opioids when they otherwise would not have. The Court finds that Plaintiff has stated claims under the MMPA.

Defendants next move to dismiss Plaintiff's prayers for punitive damages, arguing that punitive damages are not available in an MMPA claim brought by the Attorney General. The legislature has the authority to choose what remedies will be permitted under a statutorily created cause of action such as the MMPA or the MHRA. Estate of Overbey v. Chad Franklin Nat'l Auto Sales N., LLC, 361 S.W.3d 364, 375 (Mo. banc 2012). Defendant argues that "punitive damages" are specifically included in the remedies a private citizen may seek under the MMPA, see §407.025.1 RSMo, but are not included in §407.100 RSMo for an action brought by the Attorney General. Plaintiff responds that the MMPA nonetheless specifically authorizes punitive damages in State-brought actions, in that it allows the Court to make any "orders or judgments as may be necessary to… prevent the recurrence of any prohibited methods, acts, uses, practices or solicitations, or any combination thereof, declared to be unlawful by this chapter." The purpose of

6

punitive damages is "to deter similar conduct." <u>Hervey v. Mo. Dep't of Corrections</u>, 379 S.W.3d 156, 165 (Mo. banc 2012).

Although there are no published cases directly addressing the issue of whether the Attorney General may seek punitive damages in an MMPA claim, the Supreme Court in <u>Estate of Overbey</u> recognized that the State would not be subject to §510.265 RSMo's cap on punitive damages in a state-brought MMPA action, thereby assuming punitive damages were available:

> The reason the State should not be subject to the cap is self-evident. It sues under the MMPA not for individual damages to itself but in its *parens patrie* role on behalf of its citizens. The legislature rationally could conclude that, because the State represents the interests of all citizens in seeking relief, an exemption from the punitive damages cap would help ensure that the State could obtain an award of sufficient size to punish and deter defendants for their conduct as to the many Missouri citizens the attorney general filed suit to protect.

361 S.W.3d at 379. The State, as the Court recognized, must be able to "obtain an award of sufficient size to punish and deter defendants for their conduct." Defendants have not shown that the prayer for punitive damages should be dismissed.

Finally, Defendants argue that Plaintiff's HCPFAA claim fails because Defendants are not "health care providers" within the meaning of the Act. The HCPFAA provides that it is unlawful for a health care provider to "knowingly make or cause to be made a false

7

statement or false representation of a material fact in order to receive a health care payment." Plaintiff alleges that Defendants, through their false statements, "caused numerous false claims for payment to be submitted to the MO HealthNet Program," and that "Defendants made and caused to be made false statements and false representations in order to receive health care payments."

Section 191.900(7) RSMo defines health care provider, in part, as "any person delivering, or purporting to deliver, any health care." Defendants argue that, as opioid manufacturers, promoters, marketers, advertisers, and sellers, they are not "delivering" health care to Missouri patients. The Court agrees that the Defendants are not "delivering" health care to Missouri patients.

Section 191.900(7)RSMo adds that "health care providers" are ones that "receive health care payments." Missouri's Medicaid reimbursement process involves disbursing funds to nursing homes, pharmacies, outpatient and inpatient hospitals, and physicians; Defendants only indirectly receive funds from Medicaid and other health insurers. Thus, Plaintiffs have failed to state a claim against Defendants under the HCPFAA.

8

THEREFORE, it is Ordered and Decreed that Defendants Purdue Pharma, L.P., Purdue Pharma, Inc., Purdue Frederick Company, Inc., Endo Health Solutions, Inc., Endo Pharmaceuticals, Inc., Janssen Pharmaceuticals, Inc., and Johnson & Johnson's Joint Motion to Dismiss Plaintiff's Petition for Failure to State a Claim Upon Which Relief Can Be Granted is SUSTAINED as to Count IX (HCPFAA claim)only and DENIED as to all other Counts and arguments.

SO ORDERED:

_____
MICHAEL F. STELZER, Judge

Dated: April 25, 2018

9