# EXHIBIT K

**IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA**

STATE OF WEST VIRGINIA
*ex rel.* **PATRICK MORRISEY**,
Attorney General, **JOSEPH THORNTON**,
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT
OF MILITARY AFFAIRS AND PUBLIC SAFETY**,
an agency of the State of West Virginia, and the
**KAREN BOWLING**, in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF
HEALTH & HUMAN   RESOURCES**, an agency
of the State of West Virginia,

       Plaintiffs,

v.

                                    Civil Action No.12-C-140
                                     (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.**
an Ohio corporation doing business in
West Virginia,

       Defendant.

## ORDER DENYING CARDINAL' HEALTH, INC.'S
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

By Order entered on April 17, 2015, the Court denied Cardinal Health Inc.'s ("Cardinal")

first Motion to Dismiss. Thereafter, on August 11, 2015, the State filed a Second Amended

Complaint, adding additional factual allegations and a claim for unjust enrichment. On

September 10, 2015 came the Defendant, Cardinal Health, Inc. ("Cardinal"), and moved to

dismiss the Plaintiffs' Second Amended Complaint.   Thereafter on October 15, 2015, came the

Plaintiff State of West Virginia and two of its agencies, the West Virginia Department of

Military Affairs and Public Safety ("DMAPS"), and the West Virginia Department of Health &

Human Resources ("DHHR") (collectively, "the State"), and responded in opposition to

Cardinal's motion to dismiss.  On November 3, 2015, Cardinal filed a reply to the State's

response. The parties agreed to submit this motion to the Court for decision without oral argument.

In ruling on the first Motion to Dismiss, the Court rejected many of the same arguments Cardinal resubmits in the motion to dismiss the State's Second Amended Complaint. In denying Cardinal's first Motion to Dismiss, the Court specifically concluded the State's allegations, as then pled, "put Defendant on fair notice of the claims being pled against it, is pled sufficiently, and satisfies the notice pleading standard." April 17, 2015 Order ¶ 20. The Order rejected the legal arguments made by Cardinal (many of which adopted the identical arguments earlier made by the defendants in the *AmerisourceBergen* case, Boone County Civil Action No. 12-C-141) regarding standing (*Id.* ¶¶ 21-30), *parens patriae* standing (*Id.* ¶¶ 31-34), the Attorney General's common law powers (*Id.* ¶¶ 35-39), "valid causes of action" (*Id.* ¶¶ 40-44), private cause of action under the Controlled Substances Act (*Id.* ¶¶ 45-53), public nuisance (*Id.* ¶¶ 54-63), proximate cause (*Id.* ¶ 64), foreseeable criminal acts (*Id.* ¶¶ 65-73), the *Arbaugh* case (*Id.* ¶¶ 74-78), the WVCCPA claim (*Id.* ¶¶ 79-84), exhaustion of administrative remedies (*Id.* ¶¶ 85-94), the municipal cost recovery doctrine (*Id.* ¶¶ 95-98), and the economic loss doctrine (*Id.* ¶¶ 99-103).

In ¶¶ 6 through 20 of its Order denying Cardinal's first Motion to Dismiss, the Court summarized the State's core allegations. April 17, 2015 Order at ¶¶ 8-23. The Second Amended Complaint includes the same allegations as those referenced in the April 17, 2015 Order, and added additional factual allegations, including specifying the large volumes of West Virginia distributions of hydrocodone and oxycodone and other addictive controlled substances, and gave specific examples of other alleged wrongful acts the State contends Cardinal committed

in the course of distributing controlled substances to specific pharmacies and locales in West Virginia. Second Amended Complaint at ¶¶ 16-21.

The gist of the State Plaintiffs' claims as alleged in the Second Amended Complaint is that Cardinal and others distributed unusually large quantities of addictive controlled substances to West Virginia pill mill pharmacies, and regularly filled and failed to report "suspicious orders," proximately causing tremendous damage to the State of West Virginia. As alleged by the State, Cardinal distributed much of the fuel for an "epidemic" prescription drug problem in West Virginia. According to the State Plaintiffs, DEA records indicate that in the 5 years beginning January, 2007 and ending December 2012, Cardinal distributed as much as 155,629,101 hydrocodone and 85,493,140 oxycodone pills to West Virginia customers. Second Amended Complaint at ¶16. The Second Amended Complaint specifies amounts of distributions to identified counties and Pill Mill pharmacies.

Thus, as compared to the First Amended Complaint, which the Court found in its April 17, 2015 Order denying Cardinal's Motion to Dismiss to be sufficiently pled in terms of the requirements of *W.Va. R.Civ.P*, 12, the primary difference is that the State has added more specificity to its allegations, and added a claim for unjust enrichment. Cardinal, in turn, has moved to dismiss the Second Amended Complaint largely based on the same grounds previously denied by this Court in the April 17, 2015 Order and/or in the orders denying the motions to dismiss in the *AmerisourceBergen* matter. As explained more fully below, the Court has carefully considered the pleadings, arguments and briefing of the parties, and concludes Cardinal's motion to dismiss the State's Second Amended Complaint meets the State's pleading burden under Rule 12, and **ORDERS** the Motion to Dismiss be **DENIED**.

Case: 1:17-md-02804-DAP Doc #: 1008-11 Filed: 09/28/18 5 of 30. PageID #: 24254

**I     FACTS ALLEGED BY THE STATE**

1.     The State alleges in the Second Amended Complaint that, "Cardinal is the largest distributor of controlled substances to West Virginia customers.   Many of these customers are located in rural or low population areas and order such large quantities that are so much greater than the population that those orders are, at the very least, suspicious. Many of these pharmacies are 'pill mills.'" *Id.* at ¶ 3.   According to the State, Cardinal, "inserted itself as an integral part of the Pill Mill process." *Id.* at ¶ 4.

2.     It is alleged prescription drug abuse is widespread and costs the State hundreds of millions of dollars annually, devastates West Virginia communities and families, reduces the State's economic productivity, adversely affects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the quality of life in the State's cities and towns.   (*Id.* ¶¶ 1, 6).

3.     The State alleges information Cardinal supplied to the DEA shows, "in the 5 years beginning January 2007 and ending December 2012 Defendant Cardinal Health, Inc. distributed at least 155,629,101 hydrocodone and 85,493,140 oxycodone pills to West Virginia customers. . . . the counties  most effected by the prescription drug epidemic received large quantities of controlled substances from Cardinal [including] a huge amount of distribution of controlled substances beyond what the local population legitimated could be expected to need that one amount of distributions should have been identified as suspicious, but were not." *Id.* at ¶ 16.

4.     The State alleges in the Second Amended Complaint that during the 2007-2012 time period, Cardinal distributed *1,042,090* hydrocodone and *431,120* oxycodone to Boone

County, *8,863,310* hydrocodone and *1,844,000* oxycodone to Logan County, *2,382,9900* hydrocodone and *117,400* oxycodone to Mingo County, and *3,052,370* hydrocodone and *1,492,960* oxycodone to McDowell County.  *Id.*  "Statewide the foregoing figures reflect Cardinal alone distributed 154.39 hydrocodone for each man, woman and child in West Virginia over 5 years, and also 84.81 oxycodone for every person in the State. Considering the populations of Logan County (36,743) that amounts to 241.22 hydrocodone for every person in the county and 50.19 oxycodone for each person.  For McDowell County (population 22,113) it is 138.04 per person for hydrocodone and 67.52 per person for oxycodone consumption."  *Id.*  The Second Amended Complaint identifies specific West Virginia locales and Pill Mills to which Cardinal distributed suspicious orders of controlled substances. *Id.* at ¶¶ 16 - 20.

5.      In paragraph 34 of the Second Amended Complaint, the State alleges Cardinal's conduct violates industry customs and standards:

> "Defendant Cardinal is a distributor of controlled substances and must comply both with the laws of the State into which it distributes controlled substances and with industry custom and standards.  In the instant case, the standard of conduct for Defendant's industry requires that it know its customers, which includes, *inter alia,* an awareness of its customer base (including but not limited to population levels of the immediate area), knowledge of the average prescriptions filled each day, the percentage of diverted and/or abused controlled substances distributed as compared to overall purchases, a description of how the dispenser fulfills its responsibility to ensure that prescriptions filled are for legitimate medical purposes, and identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's most frequent prescribers."

6.      In paragraph 35 of the Second Amended Complaint, the State claims:

> "Defendant Cardinal has willfully turned a blind eye towards the foregoing factors by regularly distributing large quantities of commonly-abused

controlled substances to clients who are serving a customer base comprised of individuals who are themselves abusing prescription medications, many of whom are addicted and who reasonably can be expected to become addicted or to engage in illicit drug transactions. The Defendant's negligent acts and omissions in violation of West Virginia's drug laws have led to the dispensing of controlled substances for non-legitimate medical purposes of epidemic proportions, including the operation of bogus pain clinics that do little more than provide prescriptions for addictive controlled substances, thereby creating and continuing addictions to prescription medications."

7.   The State asserts Cardinal was aware of this epidemic of prescription drug abuse in West Virginia, but it nevertheless persisted in a pattern of distributing commonly abused and diverted controlled substances in geographic areas, and in such quantities and with such frequency, that Cardinal knew or should have known these commonly abused controlled substances were not being prescribed and consumed for legitimate medical purposes. *Id.* ¶ 55.

8.   The State alleges that regulations promulgated pursuant to the West Virginia Controlled Substances Act require Cardinal to do the following:

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances [. . . .]" 15 W.Va.C.S.R. § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 W.Va.C.S.R. § 2-4.4.

*Id.* ¶ 25.

9.   The State further alleges Cardinal has not complied with the requirements in the foregoing regulations (*Id.* ¶¶ 26-27), and that by distributing excessive amounts of

–6–

Case: 1:17-md-02804-DAP Doc #: 1008-11 Filed: 09/28/18 8 of 30. PageID #: 24257

controlled substances, Cardinal has violated West Virginia law (15 *WVCSR* § 2-4.2.1 and 15 *WVCSR* § 2-4.4) by failing to implement effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose suspicious orders they fill. *Id.* ¶ 8.

10. The State claims Cardinal profits from the prescription drug epidemic in West Virginia by distributing controlled substances in amounts in excess of the amount of controlled substances legitimately medically required. By distributing these excessive amounts of controlled substances, it is alleged Cardinal violates West Virginia law by failing to implement or more particularly to follow and adhere to effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose suspicious orders they fill. *Id.* ¶ 8.

11. The State claims damages and losses related to the prescription drug epidemic in West Virginia contributed to by Cardinal include costs to the State of as much as $430 Million annually as of the year 2010, with those costs incurred by the State projected to increase to as much as $695 Million annually by 2017. *Id.* ¶ 6(a).

12. The problems related to the prescription drug epidemic in West Virginia alleged by the State to have been caused by Cardinal and others includes a *per capita* death rate from prescription drug overdose that has been either the highest or the second highest of all the States. *Id.* ¶ 6(b).

13. The State asserts that between 2001 and 2008, deaths in West Virginia from overdoses involving prescription drugs quadrupled from 5.1 deaths per 100,000 residents to 21.5. *Id.* ¶ 6(c).

14.     The State asserts the alleged wrongful distribution practices of Cardinal and others contributes to the fact that thirty-five (35)  percent of babies born in West Virginia are born drug-addicted because their mothers are using drugs.  *Id.* ¶ 6(I).

15.     Additionally, the State alleges the problems caused by the prescription drug epidemic in West Virginia contributed by Cardinal includes the fact that twenty (20) percent of patients admitted to Charleston Area Medical Center's hospital trauma service have narcotic usage that contributed to their injuries.   *Id.* ¶ 6(d).

16.     The State alleges West Virginia Prosecuting Attorneys and Judges have estimated that as much as 90% of their criminal docket regularly is made up of matters that are either directly or indirectly related to prescription drug abuse.  *Id.* ¶ 6(h).

17.     The State alleges in ¶¶ 56 - 58 of the Second Amended Complaint that,

> "56.     As the result of the above-described conduct the Defendant negligently, recklessly and/or intentionally, and acting with blind indifference to the facts, created and continued propagate a public nuisance.   More particularly, the public nuisance so created, injuriously, and in many areas pervasively, affects West Virginia communities and the State, and endangers the public health and safety and inconveniences the citizens of the State, *inter alia,* in the following ways:

> ·     Areas in certain communities have become congested with persons who gather in large groups outside of "clinics, pharmacies and physician offices" that in fact are component parts of Pill Mills that exist only to prescribe and deliver drugs for illicit, non-medical purposes;

> ·     Crimes and other dangerous activities committed by those addicted to controlled substances have increased dramatically;

> ·     Hospital services, especially those services provided by emergency rooms, are being consumed by persons with prescription drug abuse issues;

> ·   Law enforcement and prosecutorial resources are being exhausted and consumed by having to address prescription drug abuse issues to the exclusion of other matters;
>
> ·   Public resources are being unreasonably consumed in efforts to address the prescription drug abuse epidemic, thereby eliminating available resources which could be used to benefit the public at large;
>
> ·   Court dockets are congested by prescription drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our courts by others;
>
> ·   Jails and prisons suffer from overcrowding.
>
> 57.   As a direct result of the acts and omissions of Defendant in creating, perpetuating substantially contributing to and maintaining the public nuisance herein above described, the public nuisance described herein has damaged the health and safety of West Virginia citizens in the past and will continue to do so in the future unless the nuisance is abated.
>
> 58.   The State has sustained economic harm in the expenditure of massive sums of monies and will in the future continue to suffer economic harm unless the above-described public nuisance is abated."

18.   The State alleges also that , "[i]n 2008 Cardinal paid a $34 million to the DEA to resolve allegations that Cardinal failed to notify the DEA about suspicious orders it filled. In 2012 Cardinal agreed to a two-year suspension of its license to ship controlled substances from its Lakeland, Florida operation for having improperly distributed prescription pain pills." *Id.* at ¶ 9.

**II     THE MOTION-TO-DISMISS STANDARD**

FILED: SUFFOLK COUNTY CLERK 01/19/2018 09:15 PM    INDEX NO. 400000/2017

NYSCEF DOC. NO. 291    Case 1:17-md-02804-DAP  Doc #: 1008-11  Filed: 09/28/18  11 of 30. PageID #: 24260    RECEIVED NYSCEF: 01/19/2018

19.  "A complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff

can prove no set of facts in support of [her] claim which would entitle [her] to relief.' "

*Conrad v. ARA Szabo*, 198 W. Va. 362, 369–70, 480 S.E.2d 801, 808–09 (1996).

20.  "Although entitlement to relief must be shown, a plaintiff is not required to set out facts

upon which the claim is based." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick,*

*Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995).

21.  "In view of the liberal policy of the rules of pleading with regard to the construction of

plaintiff's complaint, and in view of the policy of the rules favoring the determination of

actions on the merits, the motion to dismiss for failure to state a claim should be viewed

with disfavor and rarely granted. The standard which plaintiff must meet to overcome a

Rule 12(b)(6) motion is a liberal standard, and few complaints fail to meet it." *John W.*

*Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 606, 245 S.E.2d 157, 159

(1978).

22.  "Complaints are to be read liberally as required by the notice pleading theory underlying

the West Virginia Rules of Civil Procedure." *State ex rel. Smith v. Kermit Lumber &*

*Pressure Treating Co.*, 200 W. Va. 221, 227, 488 S.E.2d 901, 907 (1997) (quoting *Scott*

*Runyan*, 194 W.Va. at 776, 461 S.E.2d at 522).

23.  "In reviewing a motion to dismiss, this Court is required to accept all the well-pleaded

allegations in the complaint as true and draw all reasonable inferences in favor of the

plaintiff." *Murphy v. Smallridge*, 196 W. Va. 35, 36, 468 S.E.2d 167, 168 (1996).

24.  A complaint should not be dismissed unless "it appears beyond doubt that the plaintiff

can prove no set of facts in support of [her] claim which would entitle [her] to relief."

Syl. Pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957).

25. For the reasons stated herein, the Court concludes application of the appropriate standards recited above leads to the conclusion that Cardinal's motion to dismiss the Second Amended Complaint should be denied.

## III    LAW AND ANALYSIS

26. In its motion to dismiss the Second Amended Complaint, Cardinal re-argues its earlier motion to dismiss on the following topics: 1) The Board of Pharmacy's allegedly "exclusive" jurisdiction to bring the State's claims; 2) the application of the so-called "free public services doctrine"; 3) unjust enrichment; and 4) whether the Complaint meets the notice pleading requirement of Rule 8 of the *W.Va. Rules of Civil Procedure*. The Court addressed these arguments in its April 17, 2015 Order denying Cardinal's first motion to dismiss and concludes there is no reason to change the previous holding.

### 1    This Court Already Has Held the State Has Authority to Bring the Instant Claims

27. The Court previously addressed the issue of the State's authority to bring the instant claims in its April 17, 2015 Order. Cardinal reargues its earlier position that the statute establishing the West Virginia Board of Pharmacy bars the State from bringing suit for damages against Cardinal. In the April 17, 2015 Order, this Court held that the Board of Pharmacy does not have "exclusive jurisdiction" such that the State's claims are barred, and that the State was not required to "exhaust administrative remedies." *Id.* at ¶¶ 85-94.

–11–

> **A    The West Virginia Board of Pharmacy Does Not Have Exclusive Authority Over the CSA**

28.    This Court already has held that, "Article 5 [of the CSA] explicitly recognizes   the Board

of Pharmacy is not the exclusive administrative body charged with enforcement of the

CSA."   *Id.* at ¶ 86.

29.    While the BOP generally oversees the licensing requirements in Article 8, Article 5 of the

West Virginia Controlled Substances Act, entitled "Enforcement and Administrative

Provisions," requires the Attorney General to "assist in the enforcement of the act" and

"cooperate with all agencies charged with the enforcement of the laws . . . of this state[.]"

*W.Va. Code* § 60A-5-501(c).

30.    The full text of the statutory subsection is as follows:

> "[T]he attorney general, or any of their assistants, shall assist in the
> enforcement of all provisions of this act and shall cooperate with all
> agencies charged with the enforcement of the laws of the United States, of
> this state, and of all other states relating to controlled substances."

*Id.*    The Attorney General "shall" assist and cooperate with "*all* agencies" charged with

the enforcement of West Virginia law.   Here, Plaintiffs DHHR and DMAPS are charged

with enforcement of West Virginia law.   When DHHR and DMAPS, at the request of the

Governor, joined the lawsuit and are seeking the assistance and cooperation of the

Attorney General, he, as the State's lawyer, has authority to bring this lawsuit on their

behalf.[1]

_____

[1] In the April 17, 2015 Order this Court further noted, "[t]he fact that West Virginia
Governor Earl Ray Tomblin requested and authorized the State's claims on behalf of the

31.     This Court also held in the April 17, 2015 Order that: "because there is no express statutory restriction or limitation on the Attorney General's common law powers, the Attorney General has standing to bring the instant claims on behalf of the State[.]" *Id.* at ¶ 39; *see also id.* ¶¶ 35-38, citing, *inter alia*, Syl. Pt. 3, *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W.Va. 227, 744 S.E.2d 625 (2013).

32.     The Court finds that Article 5 of the Controlled Substances Act confers enforcement authority and various other responsibilities upon the State Police (a subdivision of Plaintiff DMAPS). *W.Va. Code* § 60A-5-501(a)(5), *W.Va. Code* § 60A-5-501(c)(3)-(6).

33.     The Court further finds Article 5 provides a judicial remedy.   *Id.* § 60A-5-503(a). Article 5  does not limit this judicial remedy to actions brought by the BOP.   *Id.*

34.     The Court concludes the West Virginia Board of Pharmacy does not have "exclusive authority" over the Controlled Substances Act.

**B      The State is Not Required to "Exhaust Administrative Remedies"**

35.     This Court held in the April 17, 2015 Order that, "the State Plaintiffs were not required to exhaust any administrative remedies before filing this case in circuit court." *Id.* at ¶ 94. This Court already has addressed and rejected that argument made here again by Cardinal, and sees no reason to change those holdings.

36.     The Court's rationale earlier stated in paragraphs 85-94 of the April 17, 2015 Order continues to apply to Cardinal's arguments:   [1] "there is no administrative remedy available to the State Plaintiffs in this case"; [2] "if these sections in Article 8 somehow

Department of Military Affairs and Public Safety and the Department of Health and Human Resources in writing confirms the named Plaintiffs are authorized to bring the instant claims in the name of the State." *Id.*  ¶ 27.

–13–

can be construed to allow for an administrative remedy for the Attorney General, DMAPS, and/or DHHR, it would be (at most) *permissive, not mandatory or exclusive*"; [3] "there can be no exhaustion requirement, absent an express statement by the Legislature," (of which there is none) where, as here, there is a judicial remedy available; [4] "the inadequacy exception to the doctrine applies"; and [5] "the futility exception to the doctrine applies as well." *Id.* ¶¶ 88-93 (emphasis in original).

37. As for Cardinal's contention that this lawsuit impermissibly interferes with the Board of Pharmacy's enforcement of the Controlled Substances Act, that argument was addressed previously. The Court previously found and concludes again that the State Plaintiffs are not barred from bringing the claims in the Second Amended Complaint as a result of the Board of Pharmacy's power to regulate the licensing of the drug distributors.

38. Cardinal also argues the fact that the Board of Pharmacy renewed its distribution license bars the State's claims. Again, that same argument was rejected in the April 17, 2015 Order:

> "Defendants also contend that because W. Va. Code § 60A-8-7(b)(3) indicates the Board of Pharmacy may not issue a license to a drug distributor "unless the distributor operates in a manner prescribed by law," their licenses issued by the Board somehow amounts to conclusive proof that Defendants have complied with all laws. While Defendants offer the Board of Pharmacy's renewal of their licenses as having some sort of res judicata or collateral estoppel effect, the Court concludes the renewals are not conclusive proof that Defendants have complied with all laws and regulations for all of time which or warrant dismissal of the case. The Amended Complaint alleges Defendants violated state law, and the Court must accept those allegations as true at this stage of litigation."

April 17, 2015 Order at p. 31, n. 18. In its reply, Cardinal acknowledges it is not arguing that the BOP's renewal of its license "proves that Cardinal Health has 'complied with *all*

–14–

Case: 1:17-md-02804-DAP  Doc #: 1008-11  Filed: 09/28/18  16 of 30. PageID #: 24265

laws and regulations *for all of time*.'" Cardinal Reply at 3.

39.     For the reasons stated in the April 17, 2015 Order denying Cardinal's first motion to dismiss based on the alleged failure to exhaust administrative remedies, the Court concludes Cardinal's exhaustion of administrative remedies argument in its motion to dismiss the Second Amended Complaint likewise should be **DENIED**.[2]

40.     Cardinal also reargues its assertion from the first motion to dismiss that the State is powerless to bring any of the claims asserted (except for the WVCCPA claim). This Court rejected those same arguments in the April 17, 2015 Order (¶¶ 35-44) as follows:

"35.     In *Syllabus* Point 3 of *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W. Va. 227, 744 S.E.2d 625, 627 (2013), the Supreme Court of Appeals affirmed that the Office of Attorney General retains inherent common law powers:

> "The Office of Attorney General retains inherent common law powers, when not expressly restricted or limited by statute. The extent of those powers is to be determined on a case-by-case basis. Insofar as the decision in *Manchin v. Browning,* 170 W.Va. 779, 296 S.E.2d 909 (1982), is inconsistent with this holding, it is expressly overruled."

36.     "Under the common law, the attorney general has the power to bring any action which he or she thinks necessary to protect the public interest, a broad grant of authority which includes the power to enforce the state's statutes. In the exercise of these common law powers, an attorney general may [] control and manage all litigation on behalf of the state[.]" 7 Am.Jur.2d *Attorney General* § 6 at 11 (2007).

37.     "Pursuant to his or her statutory, constitutional, or common-law powers as the chief law officer of the state, the attorney general may institute,

_____

[2]Cardinal further reargues the case must be dispensed if the Board of Pharmacy is not the plaintiff for the State. The Court rejected this same argument made by Miami-Luken in the *AmerisourceBergen* case. See Civil Action No. 12-C-141 September 8, 2015 Order at ¶¶ 50-52. Again, the Court concludes there is no new case law or argument cited that warrants reversal of the previous holding.

–15–

conduct and maintain all such suits and proceedings as he or she deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights." *Id.* § 21 at 26.

38. It is acknowledged generally an attorney general is the proper party to determine the necessity and advisability of undertaking or prosecuting actions on the part of the state[.]" *Id.* § 23 at 27.

39. Defendants do not argue the Attorney General's common law power to bring this suit is "expressly restricted or limited by statute," as required by *State ex rel. Discover Fin. Servs., Inc. v. Nibert, supra.* Instead, they assert the Attorney General's common law authority has been limited *impliedly.* The Court concludes that because there is no *express* statutory restriction or limitation on the Attorney General's common law powers, the Attorney General has standing to bring the instant claims on behalf of the State, and Defendants' arguments to the contrary fail."

41. The Court further concludes there is no "plainly manifested legislative intent" that might allow any statute to be construed as altering or changing the Attorney General's common law authority to bring these claims. Unlike the inapposite *SER. Morrisey v. West Va. O.D.C.,* 234 W.Va. 238, 764 S.E.2d 769 (2014)(*W.Va. Constitution* and statute abolished AG's common law authority to prosecute criminal cases), neither the *W.Va. Constitution* nor any legislation empowers the BOP to bring the instant claims for the State and its agencies.

42. In the April 17, 2015 Order this Court addressed the other arguments of Cardinal that the State lacks authority to bring common law claims:

"40. The State asserts claims for, *inter alia*, negligence.

41. "'The liability to make reparation for an injury, by negligence, is founded upon an original moral duty, enjoined upon every person, so to conduct himself, or exercise his own rights, as not to injure another.'" *Syllabus* Point 1, *Robertson v. LeMaster*, 171 W. Va. 607, 301 S.E.2d 563 (1983) (internal citation omitted).

—16—

Case: 1:17-md-02804-DAP  Doc #: 1008-11  Filed: 09/28/18  18 of 30.  PageID #: 24267

42.    "One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." *Id. Syl.* Pt. 2.

43.    The Court concludes the State's negligence claims constitute valid claims. The State alleges Defendants engaged in affirmative conduct, that is, the heavy distribution and sale of addictive controlled substances to Pill Mill pharmacies in unusually large amounts for the population base, when they knew or should have known that the distribution of addictive controlled substances in such amounts in such areas would be diverted and/or improperly used thereby creating an unreasonable risk of harm and damage to others, in the form of increased crimes and other public health and safety dangers in West Virginia communities. (*See, e.g.,* Am. Compl. ¶¶ 3, 29). *Syl. Pts.* 1 and 2, *Robertson v. LeMaster,* 171 W. Va. 607, 301 S.E.2d 563 (1983).

44.    Moreover, questions of negligence are for the jury, not for the Court on a motion to dismiss. "'The questions of negligence and contributory negligence are for the jury when the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them.'" *Id. Syl.* Pt. 5 (internal citation omitted). Thus, questions of negligence presented by the State's Amended Complaint are for a jury, not for a court on a motion to dismiss."

43.    For the same reasons stated in the April 17, 2015 Order, then, the Court concludes the State has authority to bring the instant claims.

**2    Separation of Powers**

44.    Cardinal next argues the instant lawsuit constitutes a violation of "separation of powers" clause of Article V, § 1 of the *West Virginia Constitution.* This argument was not made in its first motion to dismiss. Cardinal now argues that by filing of the State's lawsuit the plaintiffs have unconstitutionally encroached upon the powers of the West Virginia Legislature. Memo. at 9. The State plaintiffs have not passed any legislation or rewritten any laws as Cardinal asserts. The Court disagrees that the filing of the instant

–17–

lawsuit violates the "separation of powers" clause of Article V, § 1 of the *West Virginia Constitution*, and concludes the State plaintiffs have brought a lawsuit on behalf of the State, as this Court previously determined they have the right to do:

> "36.    "Under the common law, the attorney general has the power to bring any action which he or she thinks necessary to protect the public interest, a broad grant of authority which includes the power to enforce the state's statutes. In the exercise of these common law powers, an attorney general may [] control and manage all litigation on behalf of the state[.]" 7 Am.Jur.2d *Attorney General* § 6 at 11 (2007).
>
> 37.    "Pursuant to his or her statutory, constitutional, or common-law powers as the chief law officer of the state, the attorney general may institute, conduct and maintain all such suits and proceedings as he or she deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights." *Id.* § 21 at 26.
>
> 38.    It is acknowledged generally an attorney general is the proper party to determine the necessity and advisability of undertaking or prosecuting actions on the part of the state[.]" *Id.* § 23 at 27."

April 17, 2015 Order at ¶¶ 21 - 39. This Court further found that, "[e]ven if the Attorney General lacked common law authority, he would have standing under *W.Va. Code* § 60A-5-501(c), both independently and pursuant to the request of the State Police – he is not expressly restricted to taking only such actions on behalf of the State as requested by the Board of Pharmacy, as asserted by Defendants." *Id.* at p. 11, n.4.

45.    The Court concludes the filing of the State's lawsuit is not an invasion of Legislative powers, and does not violate the separation of powers clause. The State by filing suit against Cardinal is not rewriting laws, it is asserting its legal claims as sovereign, something well within the powers of the state agencies and the Attorney General in this

case. *See supra.* Cardinal's "separation of powers" argument cites no caselaw suggesting the filing of a lawsuit by a State's Attorney General or state agencies violates the separation of powers clause of the West Virginia *Constitution*. Because the Court finds no merit to Cardinal's argument in this regard, its motion to dismiss the Second Amended Complaint based upon Article V, § 1 of the *West Virginia Constitution* is **DENIED**.

### 3    The State's Claims satisfy the *Hurley* standard

46    Cardinal reargues its position from the first motion to dismiss that the State cannot pursue a cause of action under the Controlled Substances Act by virtue of *Hurley v. Allied Chemical Corp.*, 262 S.E.2d 757 (W.Va. 1980). The Court concluded as follows in the April 17, 2015 Order denying the same argument:

> "45.    *West Virginia Code* § 55-7-9 permits the recovery of damages stemming from a violation of a statute:
>
>> "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."
>
> 46.    A violation of a statute or ordinance can constitute actionable negligence. *Syllabus* Point 4, *State Rd. Comm'n v. Ball,* 138 W. Va. 349, 350, 76 S.E.2d 55 (1953) ("The violation of a statute or ordinance, which is the proximate cause of an injury or contributed thereto, constitutes actionable negligence.").
>
> 47.    Even if the State had not presented valid negligence claims pursuant to *Robertson v. LeMaster, supra,* the violation of a statute also is *prima facie* evidence of negligence, provided such violation is the proximate cause of injury. *See, e.g., Powell v. Mitchell,* 120 W.Va. 9, 196 S.E. 153 (1938); *Porterfield v. Sudduth,* 117 W.Va. 231, 185 S.E. 209 (1936). *See also Syl.* Pt. 1,

*Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990) ("Violation of a statute is *prima facie* evidence of negligence.").

48.    Whether a private cause of action exists based on a violation of a statute is determined by applying the four-part test set forth in *Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980). *Syllabus* Point 1 of *Hurley, supra,* states:

> "The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government."

49.    The Court concludes the State and its agencies are Plaintiffs in this case as representatives of the State and the public, for whose benefit the statute and accompanying regulations was enacted, so the first prong of the *Hurley* test is satisfied.

50.    As for the second factor of "legislative intent," our Supreme Court has cautioned that, "state statutes often have sparse legislative history or none at all . . . and in its absence, a state court would be unable to utilize the second factor. *Hurley, supra,* 262 S.E.2d at 762. Such is the case here, as no "legislative history" exists.

51.    As for the third *Hurley* factor, it has been held that, "a private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute. *Hurley,* 262 at 762, *quoting Cort v Ash,* 441 U.S. at 703. The Court concludes the State's causes of action are helpful to the statutory purpose – it is alleged by the State that there is an epidemic of prescription drug abuse in West Virginia, and that the Defendants put their desire for profits above and beyond their duty to put in place effective controls and procedures to prevent diversion of controlled substances and

–20–

Case 1:17-md-02804-DAP Doc #: 1008-11 Filed: 09/28/18 22 of 30. PageID #: 24271

wholly failed in their duties to design and implement a system to disclose suspicious orders. The Court agrees the remedies sought by the State here, including damages, will be "helpful" to accomplish the statutory purposes of putting in effective controls against controlled substance diversions and reporting suspicious orders. Therefore, the Court concludes the third prong of *Hurley* is satisfied.

52. As to the fourth factor, the pending matter is not an area delegated exclusively to the federal government; thus, the factor is satisfied.

53. On balance under *Hurley*, the private cause of action plead by the State exists."

April 17, 2015 Order, ¶¶ 45 - 53 (footnotes omitted.).

47. For the same reasons the Court articulated in the April 17, 2015 Order denying Cardinal's first Motion to Dismiss based on *Hurley, supra*, the Court concludes the motion to dismiss the Second Amended Complaint also should be, and hereby is, **DENIED**.

48. Cardinal's citation to *General Pipeline Constr., Inc. v. Hairston,* 765 S.E.2d 163 (W.Va. 2014) does not change the Court's earlier conclusion. The Supreme Court in *General Pipeline* reiterated that,"'[i]t is a firmly established rule in West Virginia that a defendant's disregard of a statute is *prima facie* negligence.' *Hersh v. E-T Enterprises Ltd. Partnership*, 232 S.E.2d 305, 311, 752 S.E.2d 336, 343 (2013)[.]'" That firmly-established rule applies here. *General Pipeline* is inapposite because it is a case wherein the Supreme Court found no private cause of action on behalf of the next of kin for a statutory claim of "grave desecration[,]" and (unlike the CSA) the grave desecration statute speaks explicitly to protecting the interests of those who are engaged in the scientific study of ancient historic graves, not next of kin, so it clearly was not meant to create a private cause of action for next of kin. Unlike the CSA, the grave desecration

–21–

FILED: SUFFOLK COUNTY CLERK 01/19/2018 09:15 PM INDEX NO. 400000/2017

NYSCEF DOC. NO. 291    Case: 1:17-md-02804-DAP  Doc #: 1008-11  Filed: 09/28/18  23 of 30.  PageID #: 24272    RECEIVED NYSCEF: 01/19/2018

statute vests recovery of civil damages in the Director of the Historic Preservation Section, and how such damages may be used. The CSA has no similar provision, and thus the *General Pipeline* case is inapposite and does not change the Court's conclusion in its April 17, 2015 Order.

### 4    The Municipal Cost Recovery Doctrine[3]

49.    In this Court's Order denying the first motion to dismiss, this Court previously concluded "the 'municipal cost recovery doctrine' does not bar any of the State's claims as alleged." 4-17-15 Order ¶ 98.

50.    This Court adopts its rationale in paragraphs 95-98 of its previous order, where it was noted the doctrine [1] has "never before been extended to   claims made by a State"; [2] has never been recognized by any court in West Virginia, [3] has been altogether rejected as a doctrine by courts in, at least, Indiana and New Jersey, and [4] when applied, has been, by and large, applied only to discrete, one-time events and not to ongoing public problems. *Id.* ¶¶ 95-98 (citing, *inter alia*, *State v. Lead Ind. Assn., Inc.*, 99-5226, 2001 WL 345830, *5 (R.I. Super. Apr. 2, 2001) (unpublished) ("To adopt the free public services rule and dismiss this action thereby, particularly in the absence of controlling case law requiring such a rule, would ignore existing authority of the Attorney General [to redress public wrongs]. . . ."); *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind. 2003); *James v. Arms Tech., Inc.*, 359 N.J.Super. 291, 820 A.2d 27, 49 (N.J. App.Div.2003); *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 428,

---

[3]The common law "municipal cost recovery doctrine" is also referred to as the "free public services doctrine."

FILED: SUFFOLK COUNTY CLERK 01/19/2018 09:15 PM INDEX NO. 400000/2017

NYSCEF DOC. NO. 291    Case: 1:17-md-02804-DAP  Doc #: 1008-11  Filed: 09/28/18  24 of 30.  PageID #: 24273    RECEIVED NYSCEF: 01/19/2018

768 N.E.2d 1136, 1149-50 (Ohio 2002); *City of Boston v. Smith & Wesson Corp.*, 199902590, 2000 WL 1473568 (Mass. Super. July 13, 2000)).

51.    Moreover, the courts that have engaged in significant analysis of the issue have rejected the doctrine outright for policy reasons. The Indiana Supreme Court found:

> "[T]he mere fact that the City provides services as part of its governmental function does not render the costs of those services unrecoverable as a matter of law. We do not agree that the City . . . is necessarily disabled from recovering costs from tortious activity. Rather, we agree with those courts that have rejected the municipal cost doctrine as a complete bar to recovery."

*City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind. 2003) (citing, *inter alia*, *James v. Arms Tech., Inc.*, 820 A.2d 27, 49 (N.J. App.Div.2003)). The New Jersey Appellate Court explained that the doctrine is misguided and rejected it altogether for the following policy reasons: (1) it shields tortfeasors from liability and thus constitutes a tort subsidy to defendants and shifts burden onto taxpayers; (2) it favors tortfeasors who harm government as compared to those who harm private parties; (3) it is inequitable and fundamentally unfair to the municipality with an otherwise worthy claim because they are then without a remedy; and (4) it provides no incentives for potential tortfeasors to obtain liability insurance or take reasonable measures to eliminate or reduce the risk of harm. *James*, 359 N.J. Super. at 326-28, 820 A.2d at 48-49.

52.    Lastly, this case fits into the two exceptions to the doctrine – first, where the acts of Cardinal are alleged to have created a public nuisance which the State seeks to abate, and second, there is statutory authority for recovery of the losses alleged. 4-17-15 Order at 34, n. 21, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 428, 768 N.E.2d

1136, 1149-50 (Ohio 2002)); *see also* W. Va. Code §§ 60A-5-501(c), 60a-5-503(a), 46A-7-108, 46A-7-110, 46A-7-111(2).

53.     The West Virginia cases cited by Cardinal are inapposite. Based upon readings of the applicable statutes, namely W.Va.Code § 62-5-7 and its predecessor, the West Virginia Supreme Court concluded that a county could not charge room-and-board to a convicted criminal for time he/she spent previously awaiting trial "as a cost incident to the prosecution." Syl. Pt., *State v. St. Clair*, 177 W. Va. 629, 355 S.E.2d 418 (1987); *State v. Chanze*, 178 W. Va. 309, 310, 359 S.E.2d 142, 143 (1987)(*per curiam*); *Sears v. Fisher*, 101 W. Va. 157, 158 (1926). That issue of statutory interpretation has nothing to do with this common law doctrine or whether it may bar the State's claims in this case.[4]

**5      Unjust Enrichment**

54.     The Court previously denied the companion drug distributor defendants' attempt in the *AmerisourceBergen* case to dismiss the Unjust Enrichment claim. *See* 9-8-15 *AmerisourceBergen* Order ¶¶ 20-23.

55.     In doing so, this Court noted the elements of a claim for unjust enrichment in West Virginia are articulated in *Shanks v. Wilson*, 86 F.Supp. 789 (E.D.Va. 1949), a diversity case in which the federal court applied West Virginia law. 9-8-15 *AmerisourceBergen* Order ¶ 20. The *Shanks* court stated:

        "As to unjust enrichment, this principle is applicable only in those cases in

---

[4]For the first time in this litigation, Cardinal also cites to *United States v. Standard Oil of Cal.*, 332 U.S. 301, 314-15 (1947). It does not change the Court's previous analysis. In *Standard Oil*, the Court noted that Congress had not conferred power on the governmental plaintiff to sue as the West Virginia Legislature has done here. The Court refused to exercise its power to establish new liability. *Id.* at 316. It does not even mention the doctrine of the "municipal cost recovery" doctrine.

which one person has in his possession money or property which has come
into his hands under circumstances which make it unjust for him to retain
it, and which in equity and good conscience belongs to some other
person."

*Id.* at 794 (citing *Johnson v. National Bank of Wheeling*, 124 W.Va. 157, 19 S.E.2d 441
(1942) and *Lockard v. City of Salem*, 130 W.Va. 287, 43 S.E.2d 239 (1947)).

56.   As this Court noted, *Shanks*'s explication of the elements of a claim for unjust enrichment

is echoed in *Annon v. Lucas*, 155 W.Va. 368, 185 S.E.2d 343 (1971), where the Supreme

Court of Appeals of West Virginia stated:

"A constructive trust is substantially an appropriate remedy against unjust
enrichment. It is raised by equity in respect of property which has been
acquired by fraud, or where, although acquired originally without fraud, it
is against equity that it should be retained by the person holding it. The
availability of a constructive trust as a mode of relief against unjust
enrichment is not, in general, affected by the fact that the plaintiff has a
cause of action at law, as distinguished from equity, for damages or other
relief. Generally, any transaction may be the basis for creating a
constructive trust where for any reason the defendant holds funds which in
equity and good conscience should be possessed by the plaintiff."

9-8-15 *AmerisourceBergen* Order ¶ 21, quoting *Annon.* at 382, 185 S.E.2d at 352.

57.   The Court again concludes that in order to properly plead a claim for unjust enrichment

against the defendants, the State must plead that (1) Defendants have in their possession

money (2) that in equity or good conscience (3) belongs to (or should be possessed by)

the State or other party.  9-8-15 *AmerisourceBergen* Order ¶ 22, citing *Annon v. Lucas*,

155 W. Va. 368, 185 S.E.2d 343 (1971); *Shanks v. Wilson*, 86 F. Supp. 789, 794 (E.D.

Va. 1949) (applying West Virginia law and citing *Johnson v. National Bank of Wheeling*,

124 W. Va. 157, 19 S.E.2d 441 (1942); *Lockard v. City of Salem*, 130 W. Va. 287, 43

S.E.2d 239 (1947)).  Nothing more is required to properly state a claim under West

Virginia law.[5]  *Id.*

58.    The Court concludes the Second Amended Complaint sufficiently pleads a "constructive

trust" unjust enrichment theory of relief as provided for in *Annon* and *Shanks*, as the State

Plaintiffs seek their share of allegedly ill-gotten gains of Cardinal from unlawful

distributions of controlled substances.  9-8-15 *AmerisourceBergen* Order ¶ 23.  The

Court thus concludes the State Plaintiffs' claim for unjust enrichment is sufficiently

pleaded and is an unjust enrichment claim recognized in West Virginia.  Therefore, the

Motions to Dismiss the State Plaintiffs' unjust enrichment claim is again **DENIED**.

**6       The State has pled facts entitling it to relief**

59.    In denying Cardinal's first Motion to Dismiss, the Court concluded that, "the State has

met its pleading burden and its claims satisfy Rule 12.  The Amended Complaint's

allegations put Defendants on fair notice of the claims being pled against them, is pled

sufficiently and satisfies the notice pleading standard."  April 17, 2015 Order at ¶¶ 6 -

17, 20.  The Court finds the Second Amended Complaint has added factual allegations to

the State's claims – allegations the Court already determined were sufficient to meet the

---

[5]None of the cases cited by Cardinal overrule *Shanks* or *Annon* or otherwise change the
law in West Virginia and thus do not change the analysis this Court conducted previously in the
companion *AmerisourceBergen* case.  Cardinal relies on *Hill v. Stowers*, 224 W. Va. 51, 60, 680
S.E.2d 66, 75 (2009)(*per curiam*) where the plaintiff-loser in an election for Circuit Court Clerk
sued the defendant-winner after the winner was found guilty of vote buying.  Unlike the State
here, the plaintiff in that case did not pay any money as a result of the defendant's misconduct.
Cardinal selectively quotes from *Am. Heartland Port, Inc. v. Am. Port Holdings, Inc.*, 53 F.
Supp. 3d 871, 879 (N.D. W.Va. 2014), which, in fact, relies on *Annon*.  Nor does Cardinal
mention in *Johnson v. Ross*, 419 Fed. App'x 357, *6-7 (4th Cir. 2011) (unpublished), that the
decision was based on the failure to pierce the corporate veil rather than on the scope of an
Unjust Enrichment claim.  Last, the case of *Ashley County Ark. v. Pfizer, Inc.*, 552 F.3d 659,
665-666 (8th Cir. 2009) implicated Arkansas law, not West Virginia law.

requirements of Rule 8 by putting Cardinal on fair notice of the claims against it.

60.     In the April 17, 2015 Order denying the first Motions to Dismiss, the Court found the State sufficiently stated claims for Counts I (Injunctive Relief for Violations of CSA), II (Damages for Negligence and Violations of CSA), III (WVCCPA), IV (Public Nuisance) and V (Negligence). (*See, e.g.*, 4-17-15 Order ¶¶ 43, 53, 59, 84b).   In terms of its argument on Rule 12(b)(6), Cardinal offers nothing new.   For the same reasons the Court rejected first motion to dismiss in the April 17, 2015 Order, the motion to dismiss the Second Amended Complaint on that basis is **DENIED** here as well.

61.     Cardinal argues the State's claims "include no factual allegations." Memo. at 18.   The Court concludes the State has included numerous material factual allegations at, *inter alia*, ¶¶ 1 - 10, 14, 16 - 21, 53 - 58 of the Second Amended Complaint.   The State's allegations are not general or conclusory allegations, and they exceed the requirements of West Virginia's notice pleading standard. The Court concludes the State's Second Amended Complaint is sufficiently pled and meets the requirements of Rule 8.

62.     In regard to the issue of proximate cause and damages, the Court previously ruled on this issue and rejected Cardinal's argument that the State has not pleaded proximate causation sufficiently:

> "Under West Virginia law, questions of negligence and proximate cause are questions of fact for a jury to determine. *Aikens v. Debow*, 541 S.E.2d 576, 580 (W.Va. 2001); *Wehner v. Weinstein*, 444 S.E.2d 27, 32 (W.Va. 1994); *see Chapman*, 236 S.E.2d at 211-212. "A party in a tort action is not required to prove that the negligence of one sought to be charged with an injury was the sole proximate cause of an injury." *Syllabus* Point 2, in part, *Everly v. Columbia Gas of West Virginia, Inc.*, 171 W.Va. 534, 301 S.E.2d 165 (1982). Defendants' argument for dismissal on this basis is denied."

April 17, 2015 Order at ¶ 64.

63.     The Court concludes proximate cause is a jury issue. *Aikens v. Debow*, 541 S.E.2d 576,

580 (W.Va. 2001); *Wehner v. Weinstein*, 444 S.E.2d 27, 32 (W.Va. 1994); *see Chapman*,

236 S.E.2d at 211-212.   Cardinal has not provided anything new on this issue in its

motion to dismiss the Second Amended Complaint, the State has pled facts sufficient to

show Cardinal's alleged wrongful conduct proximately caused it damage, and for the

same reason the Court rejected Cardinal's first motion to dismiss concerning the State's

allegations of proximate cause in its April 17, 2015 Order, the instant motion on that

basis is **DENIED**.

64.     To the extent Cardinal argues Rule 9(g) is unsatisfied by the State's Second Amended

Complaint, Memo. at 20, the Court finds this same argument was made by Defendant

J.M. Smith in the *AmerisourceBergen* matter.   The Court rejected that argument in its

September 8, 2015 Order, as follows:

> "32.    Defendant J.M. Smith argues it should be dismissed because the
> State has not suffered actionable damages.  The State Plaintiffs
> assert that all they must do at this pleading stage of the litigation is
> allege they have suffered damages, as they have alleged in the
> Second Amended Complaint.  The State Plaintiffs further assert
> they have a variety of potential damage models available, including
> for statutory penalties under the WVCCPA.
>
> 33.    The Court concludes that at this stage of the litigation the State has
> sufficiently pled the existence of damages. *See, e.g., Associated
> Mut. Hosp. Serv. of Michigan v. Health Care Serv. Corp. of
> Illinois*, 71 F. Supp. 2d 750, 754 (W.D. Mich. 1999).  The State
> has so alleged. (*See, e.g.*, 2nd Am. Compl. ¶¶ 1, 6-8, 24-25, 32,
> 39-40, 44-53, 57).  Therefore, the Court concludes J.M. Smith's
> Motion to Dismiss based on a lack of actionable "damages" should
> be and hereby is **DENIED**."

–28–

65.     For the same reasons here, the Court concludes Cardinal's motion made on the same

grounds should be denied.   The State's damages are not unusual for the type of claim

made and a jury reasonably may conclude that the damages pled were foreseeable.   Even

if Rule 9(g) applied to the State's claims, which the Court concludes it does not, the State

only would be obliged to adequately notify Cardinal of the nature of its alleged damages,

which it has done.   ("Rule 9(g) is satisfied if the complaint adequately notifies the

defendant and the court of the nature of the claimed damages in order to avoid surprise.")

*Shoshone Indian Tribe of Wind River Reservation, Wyoming v. United States*, 52 Fed. Cl.

614, 627 (2002).   The Court concludes Cardinal is able to prepare its responsive pleading,

and thus Rule 9(g) would not be violated even if it applied.   Therefore, Cardinal's motion

to dismiss the Second Amended Complaint based upon Rule 9(g) is **DENIED**.

## IV     CONCLUSION

For all of the foregoing reasons, the Cardinal's motion to dismiss the State's Second

Amended Complaint is **DENIED**.

**ENTERED:** February 19, 2016

W. S. [signature]

**Hon. William S. Thompson, Judge**