**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track One Cases | |

# PLAINTIFFS' OBJECTIONS TO DISCOVERY RULING NO. 5

October 10, 2018

# TABLE OF CONTENTS

*Page*

INTRODUCTION ................................................................................................................. 1

PROCEDURAL BACKGROUND .......................................................................................... 4

   The Interrogatories ................................................................................................... 4

   Plaintiffs' Responses and Defendants' Motions to Compel ................................ 4

   The Ruling .................................................................................................................. 6

      I.    THE SPECIAL MASTER FAILED TO CONSIDER WHEN AND HOW THE
           INFORMATION REQUESTED IN THE INTERROGATORIES SHOULD BE PROVIDED ... 8

      II.   THE INTERROGATORIES ARE CONTENTION INTERROGATORIES AND SEEK
           OPINION TESTIMONY .......................................................................... 10

          A.   The Interrogatories Call for Contentions, Including Contentions
              Plaintiffs Do Not Make ....................................................................... 10

          B.   The Interrogatories Call for Opinions that Will Be the Subject of
              Expert Testimony ................................................................................. 18

          C.   The Special Master's Edits to the Interrogatories Do Not Justify
              Requiring Immediate Answers .......................................................... 20

      III.  THE ANSWERS TO THE INTERROGATORIES ARE EQUALLY AVAILABLE TO
           DEFENDANTS FROM THE UNDERLYING FACTUAL MATERIAL ........................... 20

CONCLUSION ................................................................................................................... 23

## TABLE OF AUTHORITIES

*Page*

### Cases

*Botnick v. Zimmer, Inc.,*
484 F. Supp. 2d 715 (N.D. Ohio 2007)................................................................ 19

*Daiflon, Inc. v. Allied Chem. Corp.,*
534 F.2d 221 (10th Cir. 1976) .......................................................................... 20

*FenF, LLC v. Healio Health Inc.,*
Case No. 5:08CV404, 2008 WL 11379993 N.D. Ohio, 2008).............................. 21

*Francis v. Lakewood Eng'g & Mfg. Co,*
No. 05-2429 MaV, 2006 U.S. Dist. LEXIS 102921 (W.D. Tenn. July 18, 2006)................ 11

*In re Baycol Prods. Litig.,*
321 F. Supp. 2d 1118 (D. Minn. 2004) ............................................................... 19

*In re Neurontin Mktg. & Sales Practices Litig.,*
712 F.3d 21 (1st Cir. 2013)........................................................................... 12, 13

*Lincoln Elec. Co. v. Travelers Cas. & Sur. Co.,*
2013 U.S. Dist. LEXIS 189111 (N.D. Ohio Feb. 5, 2013)................................... 11

*Lunkenheimer Co. v. Tyco Flow Control Pac. Party Ltd.,*
No. 1:11-CV-824 2015 WL 631045 (S.D. Ohio, Feb. 12, 2015) .......................... 21

*Miller v. Pruneda,*
236 F.R.D. 277 N.D.W. Va. 2004)................................................................... 21

*People v. ConAgra Grocery Prod. Co.,*
17 Cal. App. 5th 51 (Cal. Ct. App. 2017) ..................................................... 13, 14

*Ross v. Abercrombie & Fitch Co.,*
Nos. 2:05-cv-0819, 2:05-cv-0848, 2:05-cv-0879, 2:05-cv-0893, 2:05-cv-0913, 2:05-
cv-0959, 2010 U.S. Dist. LEXIS 144383 (S.D. Ohio Feb. 4, 2010)...................... 11

*Silverstein v. Procter & Gamble Mfg. Co.,*
700 F. Supp. 2d 1312 (S.D. Ga. 2009)............................................................. 19

*United States ex rel. Glenda Martin v. Life Care Centers of America, Inc.,*
Nos. 1:08-cv-251, 1:12-cv-64, 2015 WL 10987029, (E.D. Tenn. Feb. 18, 2015)............... 22

*United States v. Quebe,*
No. 3:15-cv-294, 2017 U.S. Dist. LEXIS 9005 (S.D. Ohio Jan. 23, 2017) .......... 11

*Wilkinson v. Greater Dayton Reg'l Transit Auth.,*
No. 3:11CV00247, 2012 WL 3527871 (S.D. Ohio, Aug. 14, 2012) .................... 21

### Rules

Fed. R. Civ. P. 26(a)(2)(A) .............................................................................. 8

Fed. R. Civ. P. 26(a)(2)(B) .............................................................................. 8

ii

Fed. R. Civ. P. 26(a)(2)(D) ........................................................................................ 8

Fed. R. Civ. P. 33 ...................................................................................................... 8

Fed. R. Civ. P. 33(d) ........................................................................................... 9, 20

## INTRODUCTION

Plaintiffs Summit County, City of Akron, Cuyahoga County, and City of Cleveland ("Plaintiffs") hereby object to Discovery Ruling No. 5 ("the Ruling"), issued by Special Master David Cohen on October 6, 2018. (A copy of the Ruling is Ex. 1 hereto.) In the Ruling, the Special Master ordered Plaintiffs to provide additional responses to three interrogatories, numbered 6, 7, and 10, propounded by the Manufacturer Defendants[1] in their First Set of Interrogatories; and to two interrogatories, numbered 2 and 3, propounded by the National Retail Pharmacy Defendants[2] in their First Set of Interrogatories. (Where pertinent, each interrogatory is referred to by its individual number. The five interrogatories that are the subject of the ruling are referred to collectively as the "Interrogatories.") As described more fully below, all of the Interrogatories call for Plaintiffs to identify specific prescriptions they claim were written in reliance on Defendants' marketing, that caused harm to patients, or that were medically unnecessary, and to provide detailed information on each of those prescriptions.

Plaintiffs respectfully submit that the Special Master's ruling was in error and should be overruled by this Court. The Special Master failed to consider that the

---

[1] As set forth in their interrogatories, the propounding Manufacturer Defendants are Endo Pharmaceuticals Inc.; Endo Health Solutions Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc.; Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt LLC; SpecGx LLC; and Insys Therapeutics, Inc.

[2] As set forth in their interrogatories, the propounding National Retail Pharmacy Defendants are CVS Indiana, LLC; CVS Rx Services, Inc.; Rite-Aid of Maryland, dba as Mid-Atlantic Customer Service Center; Walgreens Boots Alliance, Inc.; and Walmart, Inc. dba Walmart Stores, Inc.

1

Interrogatories all call for Plaintiffs' contentions and/or for expert opinions, inappropriate prior to the completion of fact and expert discovery. The Special Master also failed to consider that, even if the Interrogatories should be answered now, each of them calls for information that requires the examination and analysis of business records (some possessed by Plaintiffs and some by Defendants), and that Plaintiffs have produced (or are in the process of producing) such records to the Defendants. The Special Master did not consider that the examination and analysis could be performed equally by Plaintiffs and Defendants, and, in particular, that it was more appropriate for Defendants to perform the examination and analysis in light of Plaintiffs' repeated representations that the information sought was not relevant to Plaintiffs' claims (because Plaintiffs intend to prove their case with aggregate proof). Thus, the Special Master ordered Plaintiffs to gather, analyze, and produce voluminous data and responses that they do not have and will not develop and on which they do not intend to rely.  Moreover, much of the data underlying the Interrogatories is actually in the possession and/or control of the various defendants such that they can access and analyze it for purposes of developing their defenses. Ironically, some defendants have refused to provide Plaintiffs with the information that is the subject of these Interrogatories, namely, the opioid prescriptions they have filled, on the ground that it is not relevant to Plaintiffs' claims.

Thus, the Special Master erred in failing to consider *when* (if at all) the Interrogatories should be answered and failed to consider *how* and *by whom* the Interrogatories should be answered, in light of the need to examine and analyze business records in order to answer the questions. Yet, these were precisely the issues before him. Plaintiffs did not dispute that the Interrogatories were relevant to Defendants' defenses (although not to Plaintiffs' claims) and did not dispute that they would produce, and to a great extent already have produced, the records from which

2

the answers would, to the extent possible, be derived. The Special Master never addressed these arguments and never considered the underlying questions they raise.

Plaintiffs also note an additional ground for their objection. On October 5, 2018, Magistrate Judge Ruiz issued his Report and Recommendation ("R&R") with respect to Defendants' motions to dismiss Summit County's Second Amended Complaint. Ex. 4. As discussed below, the R&R's clarification of what Plaintiffs must, and need not, allege at the pleading stage is relevant to what information Plaintiffs can properly be required to provide before they receive complete discovery from the Defendants. The Special Master did not have the benefit of the R&R at the time he decided Defendants' motion to compel.[3] His ruling, requiring immediate identification of particular prescriptions, particular doctors, and particular patients, is at odds with the Magistrate Judge's conclusion in the R&R that Summit County was not required to plead these details in its Complaint. It would defeat the purpose of Rules 8 and 9 of the Federal Rules of Civil Procedure if Plaintiffs whose pleadings are deemed sufficient to survive a motion to dismiss could be immediately required to provide details absent from their pleading prior to having an opportunity to take discovery.

For all of these reasons, the Ruling should be reversed and this Court should hold that Plaintiffs may produce their records in lieu of answering the Interrogatories and that, to the extent that the Interrogatories seek Plaintiffs' contentions and or seek to discover opinion testimony as to which Plaintiffs should provide answers, the time for providing those answers should be deferred to the time of expert discovery.

---

[3] The Special Master's decision was originally issued on October 2, 2018. The R&R was issued on October 5, 2018. Thereafter, on October 6, 2018, the Special Master formalized his October 2 ruling as Discovery Ruling No. 5. Thus, even though the Ruling was issued after the R&R, the Special Master did not have the benefit of the R&R when he made the initial ruling; the formalization of the ruling did not change the substance or the basis of the October 2 informal ruling.

PROCEDURAL BACKGROUND

**The Interrogatories**

The full text of each of the Interrogatories is provided in Exhibits 2 and 3. In brief, Interrogatory No. 6 calls for Plaintiffs to "[i]dentify and describe all prescriptions of opioids that were written in [Plaintiff's jurisdiction] in reliance on any alleged misrepresentations, omissions or other alleged wrongdoing by any Defendant," specifying details about each such prescription that must be provided. *See* Ex. 2at 4-5. Interrogatory No. 7 asks Plaintiffs to "[i]dentify every person who allegedly became addicted to any substance or was otherwise harmed as a result of any prescription of an opioid(s) in [Plaintiff's jurisdiction]" and calls for Plaintiffs to provide a wealth of details about each person identified. *Id*. at 5. Interrogatory No. 10 asks Plaintiffs to "[i]dentify and describe all prescriptions of opioid(s) that Plaintiff contends were unauthorized, medically unnecessary, ineffective, or harmful," and as is the case for Nos. 6 and 7, specifies details for each prescription that should be provided. *Id*. at 6.

Interrogatory No. 2 requires Plaintiffs to "Identify each prescription upon which you base, or which you contend supports, Your claims [against the National Retail Pharmacy Defendants] in this case." *See* Ex. 3 at 3. Interrogatory No. 3 calls for Plaintiffs to "[i]dentify each prescription the filling of which caused or led to harm for which you seek to recover in this case." *Id.*

**Plaintiffs' Responses and Defendants' Motions to Compel**

On May 25, 2018, Summit County provided its initial responses and objections to the Manufacturers' First Set of Interrogatories. *See* Ex.  5. Plaintiff objected to Interrogatories No. 6, 7, and 10 on a variety of grounds, including that the interrogatories were overbroad, irrelevant to Plaintiff's claims, were contention interrogatories, and called for information to be provided in expert reports. *Id.* On June 12, 2018, Summit County provided its First Amended Response to these interrogatories. *See* Ex.  6. Plaintiff reiterated its objections, but added a list of prescription opioids at

4

issue in the case and further added the following information: "Plaintiff further responds that the increased volume of opioid prescribing correlates directly to skyrocketing addiction, overdose and death; black markets for diverted prescription opioids; and a concomitant rise in heroin and fentanyl abuse by individuals who could no longer legally acquire or simply could not afford prescription opioids." *See id.* at 36-38. The other Plaintiffs provided similar responses.

On August 4, 2018, the Manufacturer Defendants wrote to the Special Master seeking a ruling compelling Plaintiffs to provide further answers to Interrogatories No. 6, 7, and 10. Ex. 7. On August 17, 2018, Plaintiffs responded to the August 4 letter. Ex. 8. In connection with their August 17 letter, Plaintiffs provided Defendants another set of amended responses to the Manufacturers' First Set of Interrogatories. Ex. 9. Consistent with the position set forth in the August 17 letter, the amended responses invoked Rule 33(d) and identified records that had been, or would be, produced, from which the answers to the Manufacturers' questions could be derived. *See id.* at 49, 52.

On August 24, 2018, the Manufacturer Defendants wrote to the Special Master again, rejecting Plaintiffs' amended responses, reiterating their request for a ruling, and seeking oral argument on their motion to compel. Ex. 10.

In the meantime, on July 23, 2018, Summit County provided its initial responses to the National Retail Pharmacy Defendants' first set of interrogatories. Ex. 11. In the response, Summit County objected to Interrogatories 2 and 3 on the grounds, *inter alia*, that they were contention interrogatories and that the information was equally available to the defendants from business records in their possession or from records produced by the Plaintiffs. *Id.* at. 6. In response to Interrogatory No. 3, Summit County provided a list of pharmacies that had suspicious orders for opioids within Summit County, Ohio, and a separate list of pharmacies that the largest shipments of opioids into Summit County. *Id.* at 8-12.

On September 24, 2018, counsel for the National Retail Pharmacy Defendants wrote to the Special Master seeking a ruling compelling Plaintiffs to provide further answers to Interrogatories 2, 3, and 7 posed by the National Retail Pharmacy Defendants. Ex. 12. On September 26, 2018, Plaintiffs amended their responses to the National Retail Pharmacy Defendants' first set of interrogatories. Ex. 13. Plaintiffs continued their objections to Interrogatories 2 and 3, but provided, in response to Interrogatory No. 2, a list of documents, identified by Bates numbers, that contained responsive information. *See, e.g.*, Ex. 13 at 7.

On September 25, 2018, the Special Master set for hearing on September 28, 2018, the motion to compel with respect to the five Interrogatories at issue here.[4] Ex. 14.

**The Ruling**

The Special Master held a hearing on both the Manufacturers' and the National Retail Pharmacies' motions to compel on September 28, 2018 (the "Hearing"). (A transcript of the Hearing is Exhibit 15.) On October 2, 2018, the Special Master issued an informal ruling in an email. Ex. 16. On October 5, 2018, Plaintiffs requested that the Special Master issue a formal ruling. Ex. 17. On October 6, 2018, the Special Master filed Discovery Ruling No. 5, formalizing his October 2 order. Ex. 1.

In the Ruling, the Special Master did not address whether the Interrogatories were contention Interrogatories, nor did he address whether Plaintiffs could respond by producing their underlying documents. Instead, the Ruling re-wrote the Interrogatories and ordered Plaintiffs to respond promptly to the reformulated questions.

---

[4] The National Retail Pharmacy Defendants' motion with respect to their Interrogatory 7 was deferred for argument in connection with similar issues raised by the Distributor Defendants. Over Plaintiffs' objection, the Special Master decided to include the motion to compel with respect to Interrogatories 2 and 3 in the September 28 hearing, despite the fact that the National Retail Pharmacy Defendants had first raised the issue only four days previously and Plaintiffs had not had an opportunity to respond in writing to the motion.

In particular, where Interrogatory No. 6 called for identification of all prescriptions of opioids that were written in Plaintiff's jurisdiction in reliance on any alleged misrepresentations, omissions or other alleged wrongdoing by any Defendant, the Special Master instead required Plaintiffs to identify 500 such prescriptions, at least 10 for each manufacturer. *Id*. at 2-3. Instead of identifying every person who allegedly became addicted to any substance or was otherwise harmed as a result of any prescription of an opioid(s) in Plaintiff's jurisdiction, as requested in Interrogatory No. 7, the Special Master ordered Plaintiffs to identify 300 such persons, again specifying that at least 10 must have been prescribed an opioid made by each of the Manufacturers. *Id*. at 3. Similarly, for Interrogatory No. 10, the Special Master modified Defendants' demand that Plaintiffs "[i]dentify and describe all prescriptions of opioid(s) that Plaintiff contends were unauthorized, medically unnecessary, ineffective, or harmful," instead requiring Plaintiffs to identify 500 such prescriptions, at least ten for each Defendant. *Id*. at 4. The Special Master made similar edits to Interrogatories No. 2 and 3, calling for Plaintiffs to identify 500 prescriptions (instead of "each prescription") that Plaintiffs contend support their claims against the National Retail Pharmacies and 500 prescriptions (instead of "each prescription") "the filling of which caused or led to harm for which you seek to recover in this case." *Id*. at 4-5.

In addition, the Special Master ruled that Defendants could amend the Interrogatories to require Plaintiffs to state their contentions with respect to prescriptions and persons identified by the Defendants. Thus, the Ruling permits the Defendants to provide their own lists of 200 prescriptions (for Interrogatories No. 6 and 10) and 100 persons (for Interrogatory No. 7) and requires Plaintiffs to state whether each of the 200 prescriptions was written in reliance on Defendants' wrongdoing (for Interrogatory No. 6) or was medically unnecessary, ineffective, or harmful (for Interrogatory No. 10), or whether each person (for Interrogatory No. 7) became

addicted to any substance or was otherwise harmed as a result of any prescription of an opioid(s). *Id.* at 2-5.

Plaintiffs now object to the Ruling.

## I. THE SPECIAL MASTER FAILED TO CONSIDER WHEN AND HOW THE INFORMATION REQUESTED IN THE INTERROGATORIES SHOULD BE PROVIDED

In Discovery Ruling No. 5, the Special Master ordered Plaintiffs to provide further responses to the Interrogatories without conducting the analyses required by Rule 33 of the Federal Rules of Civil Procedure, or considering the provisions of Rule 26 pertaining to expert disclosure which pertain to when and how information requested in interrogatories must be provided.

Two provisions of the Federal Rules are relevant to the issue of *when* particular information must be provided. First, Rule 33(a)(2) provides that, although "an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact," the court may "order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33. In addition, Rule 26 requires that information about opinion testimony including "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them" must be disclosed "(i) at least 90 days before the date set for trial or for the case to be ready for trial; or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(A), (B), (D). The question whether Plaintiffs are required to answer the Interrogatories now or at some later date is thus governed by these provisions, but the Special Master failed in his Ruling to consider either of them.

Similarly, where information must be culled from records, Rule 33(d) provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d). As was the case with respect to the question of timing, the Special Master failed to consider in his Ruling *who* should do the work of analyzing the underlying information provided in discovery, by both sides, to determine, to the extent possible, the answers to the Interrogatories.

Because the Special Master failed to consider the effect of Rules 26 and 33 on when and how the interrogatories should be answered, this Court should undertake that analysis now. With respect to the timing of any answers, the Court should conclude that the Interrogatories in question are contention interrogatories and seek opinion testimony, and therefore Plaintiffs should not be required to answer them now, but, to the extent required, only at the close of discovery and/or in accordance with the deadlines set by the Court for the disclosure of expert opinion testimony. To the extent the Court believes, however, that the Interrogatories should be answered now, pursuant to Rule 33(d), the Court should find that Plaintiffs satisfied their discovery responsibilities by providing (and agreeing to continue to provide) to Defendants the records in their possession, custody, or control with the information from which the answers to the Interrogatories can be determined.

## II.  THE INTERROGATORIES ARE CONTENTION INTERROGATORIES AND SEEK OPINION TESTIMONY

### A.  The Interrogatories Call for Contentions, Including Contentions Plaintiffs Do Not Make

Each of the Interrogatories calls for Plaintiffs to state their contentions. Two of them—Interrogatories 10 and 2—explicitly use the term "contend." *See* Ex. 2 at 6, No. 10: ("Identify and describe all prescriptions of opioid(s) that Plaintiff *contends* were unauthorized, medically unnecessary, ineffective, or harmful") (emphasis added); Ex. 3 at 3, No. 2 ("Identify each prescription upon which you base, or which *you contend* supports, Your claims in this case.") (emphasis added). Although the word "contend" is absent from the other three, they similarly seek Plaintiffs' contentions. Interrogatory No. 7, for example, uses the term "allegedly" to seek Plaintiffs' contentions, asking that Plaintiff identify persons "who *allegedly* became addicted to any substance or was otherwise harmed as a result of any prescription of an opioid(s) in [Plaintiff's jurisdiction]." Ex. 2 at 5 (emphasis added.) Similarly, "[i]dentify and describe . . . prescriptions of opioids that were written in [Plaintiff's jurisdiction] in reliance on any alleged misrepresentations, omissions or other alleged wrongdoing by any Defendant" (Interrogatory No. 6) is clearly a request to identify prescriptions that Plaintiffs *contend* were made in reliance. *Id.* at 4-5. Similarly, Interrogatory 3 calls for Plaintiffs to "[i]dentify each prescription the filling of which caused or led to harm for which you seek to recover in this case" and further requires Plaintiffs to "explain how [each identified prescription] supports Your claims."[5] Ex. 3 at 3.

---

[5] *See also*, Exhibit 7 at 7 where defendants state: "Plaintiffs have the capability to identify instances of opioid addiction and opioid overdoses and/or deaths in their jurisdiction and cross reference that information with state reimbursement data, medical records, and other information in Plaintiffs' possession to determine whether that individual was ever prescribed or abused a prescription opioid and if so, whether Plaintiffs claim that prescription was medically unnecessary or written by a prescriber that was misled by one of the Manufacturer Defendants."

Thus, not one of the Interrogatories calls for Plaintiffs to provide *factual* information to the Defendants. Indeed, that the Interrogatories all call for Plaintiffs' contentions is clear from Defendants' objections to Plaintiffs' invocation of Rule 33(d). In response to the proposition that the information was equally available to both parties and could be discovered by Defendants through examination of the records provided by Plaintiffs, the Defendants responded, in effect, that such a procedure would not tell them what Plaintiffs contend. *See* Ex. 10 at 4 (arguing that Rule 33(d) procedure was not appropriate because "Manufacturer Defendants cannot discern which, if any, opioid prescriptions Plaintiffs claim were medically unnecessary or written in reliance on an alleged misstatement."). Thus, the thrust of Defendants' argument is that they need Plaintiffs to provide answers in order to learn Plaintiffs' contentions.

The Federal Rules of Civil Procedure allow courts to defer answers to contention interrogatories because they "may create disputes between the parties which are best resolved after much or all of the other discovery has been completed." *Francis v. Lakewood Eng'g & Mfg. Co.*, No. 05-2429 MaV, 2006 U.S. Dist. LEXIS 102921, at *7-8 (W.D. Tenn. July 18, 2006); *see also United States v. Quebe*, No. 3:15-cv-294, 2017 U.S. Dist. LEXIS 9005, at *43 (S.D. Ohio Jan. 23, 2017) (*citing* Fed. R. Civ. P. 33(b) Advisory Committee's Note (1970)). The primary purpose of contention interrogatories, "is to narrow the issues for trial rather than providing the foundation for substantial follow-on discovery." *Lincoln Elec. Co. v. Travelers Cas. & Sur. Co.*, 2013 U.S. Dist. LEXIS 189111, at *188-89 N.D. Ohio Feb. 5, 2013) (*quoting Ross v. Abercrombie & Fitch Co.*, Nos. 2:05-cv-0819, 2:05-cv-0848, 2:05-cv-0879, 2:05-cv-0893, 2:05-cv-0913, 2:05-cv-0959, 2010 U.S. Dist. LEXIS 144383, at *10 (S.D. Ohio Feb. 4, 2010)).

Here, it is especially inappropriate to require Plaintiffs to provide their contentions at this stage of the case, for four reasons. First, Plaintiffs have very limited amounts of prescription data in their possession, custody, or control. Much of the information about prescriptions remains in the hands of the Defendants or third parties.

11

*See, e.g.,* Ex. 15 at 33:19-36:25. Second, as explained by Magistrate Judge Ruiz in the R&R, Plaintiffs are not required to have this information at this stage of the case. *See* ex. 4 at 25 n.20, 30-31.[6] To require Plaintiffs to provide by interrogatory answer what they are not required to plead, without first allowing them to take discovery, would circumvent and undermine the federal pleading standards set forth in Rules 8 and 9.

Third, Plaintiffs are not required to identify specific prescriptions, doctors, or patients in order to prove their case. Rather, in analogous situations, courts have permitted aggregate proof, recognizing that conduct broadly directed at a community at large cannot be atomized into a series of individual decisions in order to obscure the larger picture. For example, in *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 29 (1st Cir. 2013), the First Circuit noted that "no physician in this case, or in the Neurontin MDL as a whole, testified that he or she prescribed Neurontin because of defendants' fraudulent off-label marketing." Instead, the plaintiffs in *Neurontin* relied on statistical, aggregate proof, explaining that plaintiffs' experts' "regression analysis found a causal connection between the fraudulent marketing and the quantity of prescriptions written for off-label indications." *Id.* at 29-30. The court further noted that such aggregate proof could in fact be "preferable" to individualized, prescription-by-prescription analysis:

> Dr. Rosenthal testified as to the well-recognized unreliability in the field of healthcare economics of asking doctors individually whether they were influenced by the many methods of off-label marketing. She said that self-reporting from physicians about patterns of practice that may be controversial shows both conscious reluctance and unconscious bias,

---

[6] Although the R&R suggests that "Defendants will certainly have the opportunity to request the identity of [specific doctors alleged in the complaint to have confirmed the deceptive marketing] during discovery, and Plaintiffs will need to support their theories with evidence to withstand a motion for summary judgment or persuade the trier of fact." Ex. 4 at 25 n.20, nothing in the R&R can be read to suggest that Plaintiffs ought to be required to make any such showing before receiving discovery from the Defendants and third-parties as needed.

> which lead them to deny being influenced. As a result, it is preferable "[t]o examine objectively the causal association between promotion and sales using … econometric models." Dr. Rosenthal utilized the standard practice of using "aggregate data and . . . statistical approaches to link patterns in promotional spending to patterns in prescribing for the drug." Dr. Rosenthal testified that it was "neither standard nor appropriate to look physician by physician."

*Id.* at 30. Notably, in the R&R, Magistrate Judge Ruiz cited and relied on *Neurontin*, specifically with respect to whether Plaintiffs were required to identify individual prescriptions at the pleading stage. *See* Ex. 4 at 30-31. Indeed, the R&R specifically finds "the rationale of *In re Neurontin* more compelling" than the authority cited by Defendants to support their claim that Plaintiffs ought to have identified individual prescriptions to the outset.[7]

While *Neurontin* involved claims by a third-party payor of fraudulent behavior by a pharmaceutical manufacturer, the court in *People v. ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th 51 (Cal. Ct. App. 2017), *reh'g denied* (Dec. 6, 2017), *review denied* (Feb. 14, 2018), examined the issue of aggregate proof in the context of a nuisance claim. The court found that it was proper for each plaintiff to prove the existence of a nuisance in its jurisdiction by using aggregate data concerning the number of homes in each jurisdiction constructed before lead paint was banned, the number of housing units in each entity with lead paint hazards, and the total number of children who were

---

[7] At the Hearing, one of the lawyers for the Defendants argued that some individual depositions were taken of some individual doctors in the *Neurontin* litigation and that some individualized proof was offered (at least by the defendants). *See* Ex. 15 at 18:16-19:10. The actual scope of this discovery does not appear in the transcript, nor is it mentioned in the *Neurontin* court opinion. But nothing in the record suggests that plaintiffs were required to provide defendants with lists of prescriptions and patient and provider related data, so that defendants could pursue that individualized proof. Here, defendants are certainly free to rely on the voluminous information in their possession to depose health care providers to whom they marketed or who wrote prescriptions for their drugs and from they can submit expert opinions on the impact of their marketing and the appropriateness of their prescriptions. .

poisoned by lead in each jurisdiction. *See id.* at 113-16. The court also rejected the argument that plaintiffs must prove the location and identity of each coat of lead paint that was applied to any surface in the jurisdictions in order to succeed in their public nuisance claim. As these cases show, it is perfectly proper for Plaintiffs to prove their case through aggregate proof and to articulate a causal chain that recognizes the aggregate nature of the harms Defendants have caused.

Finally, it is especially inappropriate to require Plaintiffs to provide their contentions at this stage of the case because, for the most part, the Interrogatories pertain to *Defendants*' contentions, not Plaintiffs'. As already discussed, Plaintiffs intend to prove their case through aggregate proof. Moreover, in their opposition to the Motion to Compel, Plaintiffs expressly stated:

> Plaintiffs contend that Defendants' misrepresentations affected every prescription for opioid therapy, because, in light of Defendants' concealment of the truth, no doctor was able to perform a proper risk/benefit assessment without accurate information about either the risks or the benefits. *See* Summit SAC ¶¶ 146, 155-160, 174-76, 178, 351-56, 488-94, 714.[8] This does not mean that no prescriptions would have been written, but rather that every prescription was affected in some form by Defendants' misrepresentations and omissions—in whether to prescribe opioids, at what dosages, and for what length of time. Defendants' conduct also impacted what cautions were conveyed to patients, how patients were monitored, and how and whether doctors identified signs of addiction. *See, e.g.*, Summit SAC at ¶ 177.

Ex. 8 at 2-3. Thus, not only did the Special Master require Plaintiffs to provide their contentions at this stage of the case, he rejected, as inadequate, Plaintiffs' *actual* contention (that every prescription was influenced by the Defendants' misrepresentations). Requiring Plaintiffs to pick a set of 500 or 300 prescriptions from

---

[8] As set forth in Plaintiffs' letter opposition, each of the Plaintiffs had already disclaimed any intention of seeking reimbursement from the Defendants for prescriptions paid for by the Plaintiff based on the contention that the prescription for which reimbursement is sought was improper or not medically necessary. *See* Exhibit 8 at 2 n.4.

all of the prescriptions written in the jurisdictions, particularly when Defendants already have this data, and Plaintiffs do not, would do little to advance discovery.

The problem is even more significant in the context of Interrogatory No. 10. There, Defendants request that Plaintiffs identify prescriptions that "Plaintiff contends were unauthorized, medically unnecessary, ineffective, or harmful." Ex. 2 at 6. As the R &R recognized, Plaintiffs' claims do not turn on the contention that specific prescriptions were unauthorized, medically unnecessary, or ineffective. Indeed, at the Hearing, Plaintiffs specifically explained that they made no such contention and, indeed, that the term "medically unnecessary" does not appear anywhere in the Amended Complaints. *See* Ex. 15 at 28:12-17, 50:7-13. (In this way, the claims in this case are distinct from those in the *City of Chicago* opioid litigation as originally pleaded. In that case, the claims include false claims allegations, which turned on whether a claim for medical reimbursement was false because the prescription was not medically necessary or appropriate, as required under the reimbursement plan. No such claims are asserted here.)[9] The National Retail Pharmacy Defendants' interrogatories are no

---

[9] Defendants argued, at the hearing, that even if Plaintiffs did not use the term "medically unnecessary," they did use the term "legitimate medical uses." *See* Ex. 15. at 56:21-57:7. But review of the Summit Second Amended Complaint shows that the term "legitimate medical use" has nothing whatsoever to do with the concept of "medical necessity." The term "legitimate medical use" appears in the SAC in two contexts, neither of which pertains to actual prescriptions. First, in the context of diversion, Plaintiffs allege that more opioids were shipped into particular jurisdictions than could be justified by legitimate medical use. *See* Ex. 18at ¶¶ 14, 396, 502, 555. These allegations do not suggest that particular prescriptions were influenced by the Manufacturers or were "medically unnecessary," but rather than the volume of pills was so great that it could be inferred that some of them were not for medical use at all. Second, Plaintiffs allege that *Defendants* assured doctors that addiction was rare in patients taking opioids for "legitimate medical use." *See, e.g., id.* at ¶¶ 15, 189, 196, 216, 219, 221, 230, 748. In this context, it would be more appropriate to ask Defendants what they meant by the term "legitimate medical use." In any event, the Interrogatories do not use the term "legitimate medical use" and thus do not seek Plaintiffs' contentions with respect to the term that does appear in the complaints.

better. Interrogatories 2 and 3 seek, respectively, identification of prescriptions that form the basis for, or support Plaintiffs' claims and prescriptions the filling of which led to harm for which Plaintiffs seek to recover. Ex. 3 at 3. These same defendants have refused to provide information about the opioid prescriptions they have filled, on the basis that the information is not relevant to Plaintiffs' claims. *See* Ex. 15 at 51-53. To the extent that Plaintiffs intend to prove that the National Retail Pharmacy Defendants filled prescriptions they should not have,[10] Plaintiffs should be able to obtain information in discovery about what prescriptions were filled before identifying particular problematic prescriptions.

As the Manufacturer Defendants made clear at the Hearing, they intend to defend these cases by demonstrating that particular individual prescriptions were necessary and beneficial; by presenting testimony of doctors who did not prescribe in reliance on Defendants' misrepresentations; and by demonstrating that individuals who were harmed by opioids were not harmed by any of Defendants' products. *See* Ex.15 at 7:13-23. The National Retail Pharmacy Defendants intend to show that even when they shipped suspicious orders, those suspicious orders did no harm. *Id.* at 26:16-27:9.[11] Defendants are, of course, entitled to mount these defenses.

What they are not entitled to do is to require Plaintiffs to create a strawman for them to knock down. The contentions Defendants seek are not Plaintiffs' contentions in this case, at least not at this stage of the case, based on the discovery so far available.

---

[10] Summit County has specifically disclaimed any claim against the National Retail Pharmacy Defendants based on their retail dispensing opioids. *See* Ex. 19 at 75 n.47.

[11] Plaintiffs' claims against distributors, including the National Retail Pharmacy Defendants in their capacity as distributors, are not limited to the shipment of "suspicious orders," but arise more generally from the distributors' obligation and failure to prevent diversion of dangerous opioid products. *See, e.g.,* Ex. 18 Summit SAC ¶¶ 499, 502, 507, 524-25; Ex. 4 at 9, 77, 81.

Plaintiffs should not be required to make identifications that are not part of their case and do not reflect Plaintiffs' actual contentions, just so that Defendants can refute them.

Defendants do not need to know which prescriptions Plaintiffs believe were written in reliance on Defendants' misrepresentations, or which ones, if any, Plaintiffs believe were "medically unnecessary" in order to present evidence (if they can) that some prescriptions were not influenced or were proper or helpful. They can develop this evidence on their own, from the factual information provided by Plaintiffs in discovery, or already in their possession, or obtained from third-parties (or other Defendants) during discovery. It may be that Defendants will be entitled to know, before trial, whether there are particular prescriptions, patients, or doctors that Plaintiffs intend to use as examples. It may be that, at the close of fact discovery, Defendants will be entitled to know whether, after reviewing the evidence amassed in discovery, Plaintiffs still contend that all prescriptions were affected by Defendants' misrepresentations, or whether there is a more specific category of prescriptions Plaintiffs believe were not medically necessary. It may be that, before trial, the National Retail Pharmacy Defendants will be entitled to know which of the orders they shipped Plaintiffs contend should not have been shipped. But such information falls squarely within Rule 33's recognition that this kind of contention information is more appropriately provided at the close of discovery than in response to initial interrogatories. Nor should Plaintiffs be limited, at summary judgment or trial, to prescriptions or patients they happen to have information about now.[12]

---

[12] Plaintiffs note that the Advisory Committee Notes to the "contention interrogatory" provision of Rule 33 suggest that premature contention answers are not binding in any event. The Advisory Committee noted concerns about parties being "chained to misconceived contentions or theories," but found this not a significant concern in part because "[t]he general rule governing the use of answers to interrogatories is that under ordinary circumstances they do not limit proof." Advisory Committee Note, Fed. R. Civ. P. 33(b) (1970). The Advisory Committee further elaborated that "the interrogating party will ordinarily not be entitled to rely on the unchanging character of the answers (footnote continues on next page)

B.       **The Interrogatories Call for Opinions that Will Be the Subject of Expert Testimony**

The Interrogatories also call for expert opinion, which pursuant to this Court's scheduling orders, need not be provided until February 8, 2019. The question whether a prescription is "medically necessary" is, for example, quintessentially a matter of opinion that can only be determined by expert testimony. Indeed, at the Hearing, counsel for the Manufacturers argued that Plaintiffs can "look at the prescriptions for which they've reimbursed . . . [a]nd they can tell us for those reimbursed prescriptions, which ones do they *think* should not have been written." Ex. 15 at 11:6-11 (emphasis added). Counsel further argued that "when you're talking about medically appropriate or medically proper prescriptions, there are criteria that one might use to determine based on [a person's] medical history whether the prescription written for two months or three months of opioids was appropriate given the medical circumstances." *Id.* at 14:21-25. She further argued that "We can't do that for them" because "*we don't know what criteria they're using*." *Id.* at 15:1-5 (emphasis added)[13]; *see also id.* at 10:17-22 ("There are prescriptions out there that everyone should be able to agree were fine, were medically appropriate, were written for a person who needed them by a doctor exercising their judgment . . . and we're entitled to know which ones are and which ones aren't."). These arguments make clear that what Defendants seek is expert, opinion testimony.

---

he receives" and that "[t]he rule does not affect the power of a court to permit withdrawal or amendment of answers to interrogatories." *Id.*  Thus, forcing Plaintiffs to identify their contentions now does not commit them to those contentions in any event, and thus is of little use to Defendants in preparing for summary judgment motions or trial. Answers provided at the end of discovery are, by contrast, more likely to reflect the actual contentions that will be at issue at summary judgment or trial.

[13] As noted above, this argument was especially problematic because Plaintiffs have not used the term "medically necessary" and thus have not had occasion to develop criteria for this.

Similarly, the question whether a particular individual was harmed by prescription opioids (the information called for in Interrogatory No. 7) is well recognized to be the subject of expert opinion testimony. Certainly an individual who brings a personal injury claim involving a prescription drug must present expert evidence to establish that he was harmed and that the harm was caused by the drug in question. *See, e.g., Botnick v. Zimmer, Inc.*, 484 F. Supp. 2d 715, 724 (N.D. Ohio 2007); *In re Baycol Prods. Litig.*, 321 F. Supp. 2d 1118, 1126 (D. Minn. 2004); *Silverstein v. Procter & Gamble Mfg. Co.*, 700 F. Supp. 2d 1312, 1316 (S.D. Ga. 2009). Plaintiffs' claims here do not turn on proof that a specific drug caused harm to a specific individual, but the Interrogatories do, and to the extent they seek information about the relation between Defendants' conduct and harms experienced in and by Summit County, that information is no less a matter of expert opinion than it would be in a personal injury case. Finally, as the First Circuit recognized in Neurontin, the question whether doctors were influenced by a pharmaceutical company's marketing is the subject of expert testimony; indeed, the court noted that expert testimony was the preferred method of addressing this question. *In re Neurontin*, 712 F.3d at 29-30.

The Interrogatories posed by the National Retail Pharmacy Defendants also call for opinions and expert conclusions. The National Retail Pharmacy Defendants argued that they needed to know which prescriptions were medically unnecessary in order to refute Plaintiffs' arguments that these defendants shipped suspicious orders. But whether particular orders shipped by these defendants as distributors ought not to have been shipped or whether particular prescriptions ought not to have been filled are matters of opinion.

The deadline for expert disclosures is still months away. To the extent that Plaintiffs experts will opine about medically unnecessary prescriptions, Plaintiffs should not be required to answer interrogatories on those subjects before their experts have had an opportunity to complete their analysis. In this respect, the Special Master

erred in requiring Plaintiffs to answer the Interrogatories now, rather than deferring the time to answer until the deadline for expert disclosures, as Rule 33 expressly permits.

      C.    **The Special Master's Edits to the Interrogatories Do Not Justify Requiring Immediate Answers**

The Special Master's edits to Defendants' Interrogatories does not make immediate answers any more appropriate. Although the Special Master relieved Plaintiffs of the burden to identify *every* prescription and *every* patient affected, he nonetheless required Plaintiffs to state their contentions with respect to 500 prescriptions, and 300 patients, of their own choosing. The questions still call for contentions and expert opinions and the answers are no less premature for being narrower in scope. Moreover, the Special Master *added* to the Interrogatories by permitting the Defendants to identify to Plaintiffs 200 prescriptions, and 100 patients, as to which Plaintiffs are required to formulate detailed contentions that do not now exist.

## III.    THE ANSWERS TO THE INTERROGATORIES ARE EQUALLY AVAILABLE TO DEFENDANTS FROM THE UNDERLYING FACTUAL MATERIAL

In their Second Amended Responses, Plaintiffs invoked the provisions of Rule 33(d), which permit them to respond to interrogatories by providing the records from which the information can be culled (to the extent it can be at all) so that Defendants could perform for themselves the analysis the Interrogatories called for. Ex. 9 at 49, 52. As noted above, Rule 33(d) permits a responding party to provide its records in lieu of extracting information from them "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Rule 33(d). The rule provides an *option* at the election of the responding party. *See Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 225 (10th Cir. 1976) (Rule 33 "gives the party served the option of producing records from which the answer can be obtained instead of preparing a direct answer"); Advisory Committee Notes, Fed. R. Civ. P. 33(c) (1970) ("The subdivision gives the

party an option to make the records available and place the burden of research of the party who seeks the information.").

"Interrogatories cannot require the responding party to make extensive investigations or conduct complex research." *Miller v. Pruneda*, 236 F.R.D. 277, 282 (N.D.W. Va. 2004). Rule 33(d) provides a mechanism by which the burden of such research can be placed on the party who will benefit from it. *See* Advisory Committee Notes, Fed. R. Civ. P. 33(c) (1970) ("without undermining the liberal scope of interrogatory discovery, [Rule 33(c)] places the burden of discovery upon its potential benefittee."). *See also Wilkinson v. Greater Dayton Reg'l Transit Auth.*, No. 3:11CV00247, 2012 WL 3527871, at *9 (S.D. Ohio, Aug. 14, 2012) (under FRCP 33(d), producing party was not required to perform analysis of a "gigantic number of documents" to provide individualized information based on requesting parties theory of the case); *Lunkenheimer Co. v. Tyco Flow Control Pac. Party Ltd.*, No. 1:11-CV-824 2015 WL 631045, at *2 (S.D. Ohio, Feb. 12, 2015) (answer to interrogatory not required when burden to derive answer was the same for both sides); *FenF, LLC v. Healio Health Inc.*, Case No. 5:08CV404, 2008 WL 11379993, at *3 (N.D. Ohio, 2008) (FRCP 33(d) satisfied when the "burden of reviewing those records would be equal upon Plaintiff as it would be on Defendants").

The only limit on the use of Rule 33(d) is the requirement that "the burden of ascertaining the answer be substantially the same for both sides." Advisory Committee Notes, Fed. R. Civ. P. 33(c) (1970). Here, Defendants' only argument that the burden was not substantially the same for both sides was that the Interrogatories seek Plaintiffs' *contentions*, not underlying factual information. *See* Ex. 7 at 7; *see also* Ex. 15. at 15:1-5. To the extent this is true, Plaintiffs should not be required to answer the Interrogatories until the close of discovery. But, to the extent Defendants seek factual information about prescriptions and patients to be derived from records in Plaintiffs' possession, there is no basis to conclude that the information is not equally available to the Defendants.

This is especially true because, as discussed above, the Interrogatories pertain to Defendants' defenses, not to Plaintiffs' claims, making it especially appropriate to impose the burden on them.

Indeed, in nearly identical circumstances, a district court in Tennessee rejected a nursing home's request to require the government to identify individual false claims. *United States ex rel. Glenda Martin v. Life Care Centers of America, Inc*., Nos. 1:08-cv-251, 1:12-cv-64, 2015 WL 10987029, (E.D. Tenn. Feb. 18, 2015). In *Life Care*, the court had held (twice) that the government could prove its case through statistical sampling and extrapolation. *d*. at *2. Defendant subsequently sought to compel the Department of Justice to identify "each of the alleged claims, records or statements on which the Government intends to establish liability and damages" and "those submitted claims that resulted from, or were caused by Life Care's alleged corporate pressure." *Id*. at *1. In denying the motion, the court noted that: "Defendant is not simply requesting that the Government disclose discovery, they are essentially requesting that the Court impose an affirmative burden on the Government to identify each claim in the total universe of claims which could be categorized as false." *Id*. at *3. Like Defendants here, the nursing home claimed that the discovery was critical to its ability to investigate and develop its factual defenses. *Id*. "Simply because the Defendant may choose, among these options, to pursue a litigation strategy that relies on a claim-by-claim review does not justify placing the burden on the Government to be the party that performs that review." *Id*. Because the government produced the underlying claims data, defendant had the information to perform the analysis itself. *Id*. The court noted that defendant's complaints regarding the burden of conducting such a review "seems to reinforce the Court's earlier observation that insistence on such an individualized review by either party is not justified in this case." *Id*.

For the same reasons, this Court should reject the Special Master's rulings and, to the extent the Court believes the Interrogatories should be answered now, the Court

should hold that the answers already provided, including the designation of records from which the answers can be derived, is sufficient and no further answers are required.

## CONCLUSION

For the foregoing reasons, this Court should overrule the Ruling of the Special Master and should deny Defendants' motion to compel further answers to the Interrogatories. To the extent the Court believes further answers are appropriate at a later date, the Court should set that date no sooner than the deadline for Plaintiffs to provide expert reports.

Respectfully submitted,

*/s/ Elizabeth J. Cabraser*

Elizabeth J. Cabraser
Paulina do Amaral
Abby Wolf
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
275 Battery Street
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008
ecabraser@lchb.com
pdoamaral@lchb.com
awolf@lchb.com

Linda Singer
Louis Bograd
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com
lbograd@motleyrice.com

Paul Hanly
Jayne Conroy

23

Andrea Bierstein
**SIMMONS HANLY CONROY** 112 Madison Avenue, 7th floor New York, New York 10016-7416
phanly@simmonsfirm.com JConroy@simmonsfirm.com ABierstein@simmonsfirm.com

Ann Saucer
**BARON & BUDD**
Ste. 1100
3102 Oak Lawn Avenue
Dallas, TX 75219
asaucer@baronbudd.com

Paul Thomas Farrell Jr.
**GREENE, KETCHUM, FARRELL, BAILEY & TWEEL LLP**
419 Eleventh Street
Huntington, WV 25701
paul@greeneketchum.com

Joe Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
jrice@motleyrice.com

*Attorneys for Plaintiffs*