# EXHIBIT 7

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, IL 60654

Donna M. Welch, P.C.
To Call Writer Directly:
(312) 862-2425
Donna.welch@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

August 4, 2018

*Via Electronic Mail*

Special Master David Cohen
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44113-1837
david@specialmaster.law

### *CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER*

Re: *In re National Prescription Opiate Litigation*, MDL No. 2804
*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-OP-45090
*City of Cleveland, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-OP-451312
*County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 17-OP-45004

Dear Special Master Cohen:

I write on behalf of Defendant Allergan Finance, LLC (f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.) ("Allergan Finance") and the Manufacturer Defendants[1] regarding the Track 1 Plaintiffs' refusal to provide information in response to Interrogatory Nos. 6, 7 and 10, and their refusal to produce documents responsive to RFP No. 10.  These discovery requests seek information that go to the heart of the Manufacturer Defendants' defenses and, we believe, are also essential to Plaintiffs' claims—namely, whether any prescriber in Plaintiffs' jurisdictions wrote a prescription for any Manufacturer Defendant's prescription opioid in reliance on any alleged misrepresentations, whether any prescriber in Plaintiffs' jurisdictions wrote a prescription for any such opioid that was medically unnecessary, and, if so, what harm resulted.  These requests go to the core elements of Plaintiffs' claims.  Indeed, we have never been involved in a case where plaintiffs asserting fraud-based claims have refused even to identify the parties who supposedly

---

[1] The Manufacturer Defendants include Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc. ("Teva Defendants"); Purdue Pharma LP, Purdue Pharma Inc., and The Purdue Frederick Company Inc. ("Purdue"); Johnson & Johnson ("J&J") and Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. ("Janssen"); Endo Health Solutions Inc. and Endo Pharmaceuticals, Inc. ("Endo"); Insys Therapeutics, Inc. ("Insys"); and Mallinckrodt LLC ("Mallinckrodt").

# KIRKLAND & ELLIS LLP

August 4, 2018
Page 2

received and relied upon the alleged fraudulent statements, much less identify what fraudulent statements were made to them and explain the basis for alleging that that fraud caused plaintiffs harm.  Because this information is critical both to this litigation and to the parties' ongoing settlement discussions, the Manufacturer Defendants request a Ruling requiring Track 1 Plaintiffs to provide it.

*Procedural History.*  Manufacturer Defendants first wrote to Track 1 Plaintiffs on June 22, 2018, to address the wholesale deficiencies in Plaintiffs' responses to Interrogatory Nos. 6, 7 and 10 and RFP No. 10.[2]  Initially, Plaintiffs cited relevance and burden as their reasons for refusing to identify any of the information requested in these Interrogatories.  The parties met and conferred on these issues on June 29, and Plaintiffs suggested the requests were overbroad because they sought information and documents relating to all opioids.  At Manufacturer Defendants' request, Plaintiffs agreed to consider narrowed requests to provide information related to the specific prescriptions written for the Manufacturer Defendants' opioids in their jurisdictions.

On July 6, Plaintiffs contended that they do not have the requested information, but stated generally "[i]t is possible" that some of the requested information is somewhere in the documents Plaintiffs have produced or may produce in the future.[3]  On July 10, Manufacturer Defendants responded, noting that Plaintiffs are either unable or unwilling to identify any specific prescription for any Manufacturer Defendant's FDA-approved medication that they contend was written in reliance on any Defendant's alleged misstatements, was medically inappropriate, and resulted in harm to any of the bellwether jurisdictions—identified by Plaintiffs either during their pre-suit investigations or since.  In response to certain contentions in their July 6 letter, the Manufacturer Defendants also asked Plaintiffs to respond to certain clarifying questions, such as whether:

- Plaintiffs control the information held by the third parties who administer medical insurance and workers' compensation plans for the Plaintiffs' employees and their families;

- Plaintiffs have received the information they requested from their insurers or when they can expect to receive it;

- Plaintiffs or their counsel have received any individual prescription information from third parties;

---

[2] *See* Ex. 1 (June 22, 2018 D. Welch Ltr. to D. Ackerman).

[3] Ex. 2 (July 6, 2018 D. Ackerman Ltr. to D. Welch).

# KIRKLAND & ELLIS LLP

August 4, 2018
Page 3

- Plaintiffs can identify a single prescription written for any of the Manufacturer Defendants' opioids that is responsive to Interrogatory Nos. 6 or 10; and

- Plaintiffs can identify a single individual in their jurisdictions harmed by a prescription to a Manufacturer Defendant's opioid, or the allegedly false, misleading or deceptive statement or omission that purportedly caused the healthcare provider to write the prescription.[4]

They have failed to respond.

*Interrogatory Nos. 6, 7 and 10.*  These Interrogatories seek information that goes to the heart of these cases:

- **No. 6:**  Which prescriptions, if any, of each Defendant's opioids were written in Plaintiff's jurisdiction in reliance on any Defendant's alleged misrepresentations, omissions or other alleged wrongdoing?[5]

- **No. 7:**  Who, if anyone, purportedly became addicted or was otherwise harmed as a result of such prescriptions in Plaintiff's jurisdiction?[6]

---

[4] Ex. 3 (July 10, 2018 D. Welch Ltr. to D. Ackerman).

[5] *See, e.g.*, Ex. 4 (Cuyahoga's First Amended Responses and Objections to Manufacturer Defendants' First Set of Interrogatories) at Interrogatory No. 6 ("Identify and describe all prescriptions of opioids that were written in [Plaintiff's jurisdiction] in reliance on any alleged misrepresentations, omissions or other alleged wrongdoing by any Defendant. Include in the response the healthcare provider; the patient; the date of prescription; which opioid or opioids were prescribed; the specific misrepresentation, omission, or wrongdoing that allegedly caused the prescription to be written; the Defendant and the specific sales representative(s), employee(s), or agent(s) of the Defendant that made or committed the alleged misrepresentation, omission, or wrongdoing; the person or persons to whom the alleged misrepresentation or omission was made or to whom the alleged wrongdoing was directed; and whether, by whom, and for how much the prescription was approved for reimbursement.").

[6] *Id.* at Interrogatory No. 7 ("Identify every person who allegedly became addicted to any substance or was otherwise harmed as a result of any prescription of an opioid(s) in [Plaintiff's jurisdiction]. Include in the identification of each such individual: (i) the particular type of healthcare provider; the patient; (ii) the particular opioid(s) that he or she took and/or was prescribed, (iii) when each prescription at issue was written, (iv) the condition for which each prescription was written, and (v) the allegedly false, misleading, or deceptive statement or omission that purportedly caused the healthcare provider to write the prescription.").

# KIRKLAND & ELLIS LLP

August 4, 2018
Page 4

- **No. 10:**  Which prescriptions, if any, were unauthorized, medically unnecessary, ineffective, or harmful?[7]

In response, none of the three Track 1 Plaintiffs has produced any substantive information with respect to any of the separately named Manufacturer Defendants.  None has identified a single wrongful prescription of any Manufacturer Defendant's opioid product connected in any way to that Manufacturer Defendant's alleged wrongdoing.  None has identified a single prescription of any Manufacturer Defendant's opioid that was medically inappropriate.  And none has identified a single individual harmed by any Manufacturer Defendant's opioid medication.  In order to provide concrete examples to illustrate a point that applies equally to all Manufacturer Defendants, Allergan Finance and Teva provided specific information identifying the extremely small number of prescriptions written for their respective opioids in Ohio (for Allergan Finance, there were 617 prescriptions for Kadian® in all of Ohio in 2015, 469 in 2016 and 186 in the first half of 2017; for Teva, based upon its latest data received since the last submission, there were 69 prescriptions for ACTIQ® in Cleveland and Cuyahoga County and 52 in Summit County for the more than seven year period from 2011 through the first half of 2018).[8]  Still, Plaintiffs have not identified a single allegedly unnecessary prescription from even this small set of prescriptions.

As an initial matter, if Plaintiffs cannot at this time identify a single prescription of a Manufacturer Defendant's opioid that was improper and connected in some way to that Defendant's conduct, they are required to say so in their sworn responses.  *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").  We believe that Plaintiffs' refusal to identify a single instance where any Manufacturer Defendant's act or omission caused harm in their geographic territory is not only an abdication of their discovery responsibilities under the Federal Rules, but also evidences a fatal flaw in their underlying case against each Defendant.  As Judge Polster recognized in CMO-1 and you recognized in Discovery Ruling No. 1, this is undoubtedly true for Track 1 Plaintiffs' claims that "allege[] money damages based upon unnecessary prescriptions."[9]  Because Plaintiffs have already failed to identify this information required under CMO-1 ¶ 9(l)(iii),[10] they have "forfeit[ed]

---

[7] *Id.* at Interrogatory No. 10 ("Identify and describe all prescriptions of opioid(s) that Plaintiff contends were unauthorized, medically unnecessary, ineffective, or harmful. Include in the response as to each such prescription the healthcare provider; the patient; the date of prescription; which opioid or opioids were prescribed; the basis for your assertion that the prescription was unauthorized, medically unnecessary, ineffective or harmful; and whether, by whom, and for how much the prescription was approved for reimbursement..").

[8] Ex. 1 (June 22, 2018 D. Welch Ltr. to D. Ackerman).

[9] CMO-1 (Dkt. 232) ¶ 9(l)(iii); Discovery Ruling No. 1 (Dkt. 606) at 6.

[10] *See* Exs. 5-7 (July 16, 2018 letters from each Track 1 Plaintiff contending that CMO-1 ¶ 9(l)(iii) does not apply to their claims); Ex. 8 (July 27, 2018 Response from Manufacturing Defendants).

# KIRKLAND & ELLIS LLP

August 4, 2018
Page 5

any claim for money damages based upon unnecessary prescriptions," as you warned them they would.[11]

But regardless of Plaintiffs' apparent decision to forfeit their damages claims, this information is plainly relevant to the Manufacturer Defendants' defenses in these cases, and thus we are entitled to it.  Indeed, you clarified this when you sent the parties an email stating, Discovery Ruling No. 1 (Dkt. 606) "was not intended to preclude defendants' from obtaining specific, well-defined discovery needed to address and challenge plaintiffs' experts or method of analysis of damages, or ***discovery necessary to support or challenge plaintiffs' claims or defendants' defenses***." (emphasis added).[12]  As you also recognized, Defendants will be able to argue "that the lack of this evidence also breaks a necessary link in the chain of causation for some or all claims."[13]  Indeed, there can be no other conclusion.[14]  And while a lack of any evidence sustaining the causal chain is fatal to Plaintiffs' claims, a corollary is equally true:  the requested discovery, and other evidence it may lead to, can disprove causation (and other elements of Plaintiffs' claims).  Under Fed. R. Civ. P. 26, the Manufacturer Defendants are entitled to this discovery and all other discovery that is relevant to our defenses: "[T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim ***or defense***…." (emphasis added).

This is a fundamental point that Plaintiffs miss.  While Defendants cannot dictate to Plaintiffs how they might try to go about attempting to prove their claims, Plaintiffs cannot dictate to Defendants how they get to defend themselves.  For example, Plaintiffs cannot avoid inconvenient facts (including the inconvenient fact that they lack evidence to support their claims) simply by declaring that they intend to pursue a novel theory of causation that depends on inferences rather than proof.  Defendants are still entitled to discovery, including answers to interrogatories, that will refute Plaintiffs' inferences.  To conclude otherwise would read out one half of the standard for relevant discovery and deprive Manufacturer Defendants of Due Process.

Put simply, even if Plaintiffs are allowed to try to prove causation with statistical or aggregate proof, Manufacturer Defendants still are entitled to explore, and potentially use at summary judgment or trial, the evidence concerning the chain of causation between any allegedly wrongful conduct by each Manufacturer Defendant, on the one hand, and any injury or damages suffered by Plaintiffs, on the other, to demonstrate that the Manufacturer Defendant's conduct

---

[11] Discovery Ruling No. 1 at 6.

[12] *See* Ex. 9 (June 22, 2018 Email from Special Master Cohen).

[13] *Id.*

[14] *See infra* nn. 15-16.

KIRKLAND & ELLIS LLP

August 4, 2018
Page 6

could not have caused the harm Plaintiffs claim. Even ignoring intervening illegal acts like diversion, that causal chain necessarily includes: (i) an alleged misstatement to a prescriber; (ii) the prescriber's reliance on that misstatement; (iii) a prescription for opioids that Plaintiffs claim should not have been written, (iv) a physician or other prescriber who wrote that prescription, (v) an individual who was purportedly harmed by that prescription, and (vi) resulting harm to Plaintiffs.[15] While now is not the time to decide definitively whether Plaintiffs are able to use aggregate evidence and statistics to prove causation in these cases (as you've noted), the Court cannot allow Plaintiffs' novel causation theory to artificially limit relevant discovery, particularly when the weight of relevant authority—in our view, controlling precedent—requires more

---

[15] *See, e.g.*, *City of Cincinnati v. Deutsche Bank Nat'l Tr.*, 863 F.3d 474, 480 (6th Cir. 2017) ("Proximate cause requires some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered. In addition to foreseeability, it requires some direct relation between the injury and the injurious conduct…. The failure to tether the damages to nuisance-related problems on Wells Fargo's properties prevents us from assessing the 'directness' of the relationship between the two. That is particularly true for the City's attenuated theories of damage: decreased tax revenue, increased police and fire expenditures, and increased administrative costs. When tied only to a general 'policy' of non-conformance, these damages are difficult to connect to Wells Fargo's actions and nearly impossible to disaggregate from other potential causes of these costs.") (internal quotation marks and citations omitted); *City of Cleveland v. Ameriquest Mort. Sec., Inc.*, 615 F.3d 496, 502–03 (6th Cir. 2010) ("[T]he Supreme Court's application of *Holmes* in its subsequent decision *Anza* is instructive and consistent with how we believe the Ohio Supreme Court would consider this matter because the Ohio Supreme Court has previously adopted the directness requirement precedent of the United States Supreme Court…. [In *Anza*] [t]he Court held that the complaint did not satisfy the directness requirement because the [defendant's] alleged violation [of law] did not lead directly to the plaintiff's injuries."); *see also Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1062 (N.Y. 2001) ("Such broad liability, potentially encompassing all gunshot crime victims, should not be imposed without a more tangible showing that defendants were a direct link in the causal chain that resulted in plaintiffs' injuries, and that defendants were realistically in a position to prevent the wrongs. Giving plaintiffs' evidence the benefit of every favorable inference, they have not shown that the gun used to harm plaintiff Fox came from a source amenable to the exercise of any duty of care that plaintiffs would impose upon defendant manufacturers.").

# KIRKLAND & ELLIS LLP

August 4, 2018
Page 7

particularized proof of causation.[16]  The Manufacturer Defendants are entitled to full discovery regarding each step in that causal chain.[17]

Plaintiffs have suggested in prior discussions that it would be impossible for them to supply the requested data and information—we disagree.  Plaintiffs have the capability to identify instances of opioid addiction and opioid overdoses and/or deaths in their jurisdiction and cross reference that information with state reimbursement data, medical records, and other information in Plaintiffs' possession to determine whether that individual was ever prescribed or abused a prescription opioid and if so, whether Plaintiffs claim that prescription was medically unnecessary or written by a prescriber that was misled by one of the Manufacturer Defendants.

Notwithstanding Plaintiffs' counsel's posturing, during the recent deposition of Dr. Lisa Kohler, the Summit County Chief Medical Examiner, Dr. Kohler testified the Medical Examiner's Office maintains detailed information about all overdose deaths that enable them to identify whether a person's overdose involved prescription opioids or, as in the vast majority of cases, illegal opioids such as heroin and illicit fentanyl.  *See* Ex. 10 (Kohler Dep. Tr.) at 52:9-53:6; *id.* at Ex. 1.  With this information, Plaintiffs are easily able to dispel the claim that a death was caused by a prescription opioid.  In the small percentage of deaths where prescription opioid medications are detected in toxicology reports, Dr. Kohler also testified that her office reviews a person's

---

[16] *See, e.g.*, *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 487 (6th Cir. 2013) ("The Supreme Court has repeatedly held that plaintiffs attempting to assert an injury 'by reason of' a RICO violation must demonstrate both but-for causation and proximate causation."); *Uland v. S.E. Johnson Companies*, 1998 WL 123086, at *5 (Ohio Ct. App. Mar. 13, 1998) ("A qualified nuisance derives from negligence. To be actionable, the harm must be proximately caused by the defendant's act. Similarly, nuisance *per se* requires proximate causation."); *see also Chance v. BP Chemicals, Inc.*, 1995 WL 143827, at *5 (Ohio Ct. App. Mar. 30, 1995) (plaintiffs failed to prove that defendants' actions "constituted extreme or outrageous conduct which proximately caused" the injuries); *Frey v. Novartis Pharmaceuticals Corp.*, 642 F. Supp. 2d 787, 792 (S.D. Ohio 2009) (recovery under the OPLA requires a showing that the product defect "was a proximate cause of harm for which the plaintiff seeks to recover compensatory damages."); *In re Zyprexa Products Liability Litig.*, 254 F.R.D. 50, 52 (E.D.N.Y. 2008) (in states' action stemming from alleged unlawful marketing, "[i]t is plainly evident that, given the disputed issue of causation, disclosure of the medical records is 'reasonably calculated to lead to the discovery of admissible evidence.'") (citation omitted).

[17] *See City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1054 (C.D. Cal. 2014) ("The City's lengthy Complaint relies on a regression analysis to support its claims and theory of causation…. In contrast to the City, Defendants describe the alleged causal chain as having seven 'links' …. While the issues raised by Defendants' causal chain may be subject to proof at a later stage in the litigation, the pleading standards for Article III standing are not so burdensome.  The City must be afforded an opportunity to conduct discovery and obtain more property-specific information to meet its burden of actually proving its claims."); *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 827 (N.D. Cal. 2016) ("How far the actual causal link stretches for each category of damages plaintiffs' allege is something that will need to be developed in discovery and tested on summary judgment."); *In re Zyprexa Products Liability Litigation*, 254 F.R.D. at 51 (in states' action stemming from alleged unlawful marketing, "[i]t bears repeating, then, that the [medical] records are in fact relevant to [Defendant's] defenses.").

# KIRKLAND & ELLIS LLP

August 4, 2018
Page 8

relevant medical records and checks the Ohio Automated Rx Reporting System ("OARRs") database to determine whether the decedent was properly prescribed the medication. *See* Ex. 10 (Kohler Dep. Tr.) at 53:12-54:2. This is critically important information that is already contained in the Medical Examiner records that Plaintiffs have in their possession, custody, and control.

Furthermore, to the extent that Plaintiffs claim a decedent previously was prescribed or abused a prescription opioid that led to their larger opioid addiction, Dr. Kohler also testified that when investigating suspected drug overdose deaths, the Medical Examiner's office is supposed to, and does, inquire into a person's medical and prescription history, including (1) obtaining recent medical records, (2) consulting with healthcare providers, (3) interviewing a decedent's friends and family, and (4) checking the OARRs database to determine whether the individual has a history of being prescribed prescription opioids or possibly abusing them. *See* Ex. 10 (Kohler Dep. Tr.) at 41:12-23 ("If we know there was a physician treating that person, we can request records from that office. We can make inquiries to the local hospitals and ask if they have discharge summaries available."); *id.* at 125:2-15 ("In practice what we do is we request a list of medications and the problem list and the recent progress notes and evaluate it based upon the information that's provided to us to assess the cause and the manner of death of that individual."); *see also id.* at Ex. 7 (memo from Dr. Kohler to staff instructing them to investigate various aspects of a person's "medication history" in instances involving "overdose deaths").

While the Medical Examiner's office is not responsible for determining whether or not a past opioid prescription was medically necessary, Dr. Kohler's testimony confirms that Plaintiffs are at least able to readily identify a discrete sub-set of individuals whose deaths were allegedly associated with either prescription or illicit opioids. In 2015, for example, there were 213 overdose deaths in Summit County, which have all been investigated and tracked by Dr. Kohler's office at the time of death. Therefore, for each of those 213 individuals, Plaintiffs and their experts have the capacity—and in many instances, already have the information—to determine a decedent's relevant medical and prescription history. This discernable universe of overdose victims confirms that Plaintiffs are capable, and required to, pursue information concerning these individuals' opioid prescription and abuse history as part of Plaintiffs' discovery obligations. Plaintiffs cannot claim that the Manufacturer Defendants caused an epidemic in Summit or Cuyahoga County leading to numerous overdose deaths while at the same time refusing to use readily available information to connect an allegedly improper prescription to a single death that took place in those communities.

Furthermore, any burden to provide substantive responses is also lessened by the Manufacturer Defendants' agreement to narrow the requests to information regarding prescriptions written for their opioids—for example, as discussed above, there is a very limited number of

# KIRKLAND & ELLIS LLP

August 4, 2018
Page 9

prescriptions of Allergan Finance's and Teva's opioids in Ohio and the Track 1 jurisdictions.[18]  In any event, Plaintiffs should be held to no less than their own recently articulated standard:

> [I]f the time-period is too short for [Plaintiffs] to disclose the relevant information . . . the solution is not to deny [Defendants] vital discovery.  If the Court finds the burden of discovery in the time remaining to be undue, Plaintiffs believe that the proper solution is a short extension of the deadline for production (and related deadlines). Such an extension, and not a truncation of the scope of discovery that would deny [Defendants] information critical to [defending] [Plaintiffs'] claims, would be the proper approach to burden arguments [Plaintiffs] raise.[19]

Each Manufacturer Defendant is entitled to information regarding which of the prescriptions for its specific FDA-approved opioids—if any—Plaintiffs contend were improper, and how, if at all, each specific Manufacturer Defendant's conduct was connected to those prescriptions.  If there were no such prescriptions with respect to Allergan Finance, Teva, or any other Manufacturer Defendant, Plaintiffs are obligated simply to state that in a sworn interrogatory response.  If there were, Plaintiffs must identify them now so Manufacturer Defendants can investigate, and, if necessary, pursue additional discovery, including third-party discovery, regarding any such prescriptions

In light of the aggressive schedule in this case, Plaintiffs' continued delay and refusal to provide substantive responses is depriving Manufacturer Defendants of our right to defend ourselves.[20]  Manufacturer Defendants need this information promptly in order to engage in meaningful discovery with respect to Plaintiffs' claims, including pursuing potential third-party discovery.  As you have recognized, heavy production burdens have been placed on Defendants in this case, and we are expending enormous effort to get Plaintiffs the documents and information they requested as expeditiously as possible.  Manufacturer Defendants' efforts stand in stark

---

[18] Plaintiffs cannot avoid their discovery obligations by arguing that the number of prescriptions at issue is too large. As the examples provided by Allergan Finance and Teva illustrate, that is not the case at all—and it is certainly not true for every Defendant.  In any event, it is Plaintiffs, not Defendants, who chose to file the expansive claims that they did against the long list of defendants they sued (based upon whatever pre-suit investigation they did).  And, at least one of the purposes of setting bellwether trials was to test the ability of a small subset of plaintiffs to prove their claims.

[19] Dkt. 812 at 8.

[20] *See, e.g.*, *In re Textron, Inc.*, 2012 WL 12876091, at *2 (D.R.I. Apr. 11, 2012) ("Plaintiffs have shown no compelling reason for relieving them of the duty to review the interrogatories and provide Textron with the most complete answers they can at this time.  Furthermore, having basic information regarding the elements of a plaintiff's claim may very well provide the defendants with a 'roadmap' for further discovery decreasing the time and cost of litigation." (citations, internal quotation marks, and bracket omitted)).

# KIRKLAND & ELLIS LLP

August 4, 2018
Page 10


contrast to Plaintiffs' flat refusal to identify discrete sets of critical information that we expect will refute the allegations in their complaints. "Discovery, of course, is not a one-way proposition,"[21] nor is it dictated by what Plaintiffs want to try to prove their claims and nothing more.

    *RFP No. 10.* Manufacturer Defendants also have requested "[a]ll Documents and communications relating to any evaluation, assessment, analysis, modeling, or review of any cost or financial or economic impact associated with the alleged improper prescribing of Opioids." Plaintiffs have limited their production thus far to evaluations, assessments, analyses, and reviews "performed by Plaintiff[s]," although they subsequently agreed to produce any such responsive documents in their custody and control.[22] Plaintiffs, however, have never confirmed whether they are still withholding responsive communications related to the evaluations, assessments, analyses, models or reviews themselves, and have never provide details regarding the custodial and non-custodial sources of documents they are searching for responsive records, as requested.

*          *          *

    For these reasons, Manufacturer Defendants respectfully request a Ruling requiring Track 1 Plaintiffs to **(i)** respond fully to Interrogatory Nos. 6, 7 and 10 within 10 days; and **(ii)** produce all documents in their possession, custody or control responsive to RFP No. 10, including communications, and provide Manufacturer Defendants with detail about the custodial sources they are searching for responsive documents.

                                 Sincerely,

                                 */s/ Donna M. Welch*
                                 Donna M. Welch

                                 *Counsel for Defendant Allergan Finance,*
                                 *LLC (f/k/a Actavis, Inc. f/k/a Watson*
                                 *Pharmaceuticals, Inc.)*

---

[21] *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

[22] *See* Ex. 11 (June 28, 2018 D. Ackerman Letter to D. Welch).

## KIRKLAND & ELLIS LLP

August 4, 2018
Page 11

**<u>Electronic Service List</u>**

*Plaintiffs' Executive Committee*

Don Barrett
Barrett Law Group, P.A.
donbarrettpa@gmail.com

Elizabeth J. Cabraser
Lieff Cabraser Heimann & Bernstein
ecabraser@lchb.com

James E. Cecchi
Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.
jcecchi@carellabyrne.com

Erin Dickinson
Crueger Dickinson LLC
ekd@cruegerdickinson.com

James R. Dugan, II
The Dugan Law Firm, APLC
jdugan@dugan-lawfirm.com

Paul J. Geller
Robbins Geller Rudman & Dowd LLP
pgeller@rgrdlaw.com

Michael J. Fuller
McHugh Fuller
mike@mchughfuller.com

R. Eric Kennedy
Weisman Kennedy & Berris Co.
ekennedy@weismanlaw.com

Mark Lanier
Lanier Law Firm
wml@lanierlawfirm.com

## KIRKLAND & ELLIS LLP

August 4, 2018
Page 12


Peter J. Mougey
Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, PA
pmougey@levinlaw.com

Ellen Relkin
Weitz & Luxenberg, P.C.
erelkin@weitzlux.com

Lynn Sarko
Keller Rohrback
lsarko@kellerrohrback.com

Hunter J. Shkolnik
Napoli Shkolnik PLLC
hunter@napolilaw.com

Christopher A. Seeger
Seeger Weiss LLP
cseeger@seegerweiss.com

Roland Tellis
Baron & Budd, P.C.
rbudd@baronbudd.com

James D. Young
Morgan & Morgan
jyoung@forthepeople.com

*Liaison Counsel for Plaintiffs*

Peter Henry Weinberger
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 44114-1149
(216) 696-3232
pweinberger@spanglaw.com

Steven J. Skikos
SKIKOS CRAWFORD SKIKOS & JOSEPH

KIRKLAND & ELLIS LLP

August 4, 2018
Page 13


One Sansome Street, Suite 2830
San Francisco, CA 94104
(415) 546-7300
sskikos@skikoscrawford.com

Troy A. Rafferty
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR PA
316 S. Baylen Street
Suite 600
Pensacola, FL 32502
(805) 435-7000
trafferty@levinlaw.com


*Counsel for Plaintiff City of Cleveland*

Peter H. Weinberger (Ohio Bar No. 0022076)
Dustin Herman (Ohio Bar No. 0093163)
SPANGENBERG SHIBLEY &
LIBER, LLP
1001 Lakeside Ave East, Suite 1700
Cleveland, OH 44114
Tel: 216-696-3232
Fax: 216-696-3924
pweinberger@spanglaw.com
dherman@spanglaw.com

Paul T. Farrell, Jr. (Ohio Bar No. 0070257)
Bert Ketchum
GREENE, KETCHUM, FARRELL,
BAILEY & TWEEL, LLP
419 - 11th Street (25701)/ P.O. Box 2389
Huntington, West Virginia 25724-2389
Tel.: 800-479-0053 or 304-525-9115
Fax: 304-529-3284
paul@greeneketchum.com
bert@greeneketchurn.com

Anthony J. Majestro
POWELL & MAJESTRO, PLLC

## KIRKLAND & ELLIS LLP

August 4, 2018
Page 14


405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel.: 304-346-2889
Fax: 304-346-2895
amajestro@powellmajestro.com

Michael J. Fuller, Jr. (Ohio Bar No. 0090250)
Amy Quezon (Ohio Bar No. 0091798)
McHUGH FULLER LAW GROUP, PLLC
97 Elias Whiddon Rd.
Hattiesburg, MS 39402
Tel.: 601-261-2220
Fax: 601-261-2481
mike@mchughfuller.com
amy@mchughfuller.com

Peter J. Mougey
Troy Rafferty
Page A. Poerschke
Laura S. Dunning
Neil E. "Ned" McWilliams
Jeffrey Gaddy
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY &
PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Tel.: 850-435-7068
Fax: 850-436-6068
pmougey@levinlaw.com
trafferty@levinlaw.com
ppoerschke@levinlaw.com
ldunning@levinlaw.com
nmcwilliams@levinlaw.com
jgaddy@levinlaw.com

Russell W. Budd
J. Burton LeBlanc, IV
Laura J. Baughman
S. Ann Saucer

## KIRKLAND & ELLIS LLP

August 4, 2018
Page 15


Christine C. Mansour
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 11 00
Dallas, TX 752 19
Tel.: 214-521-3605
Fax: 214-520-1181
rbudd@baronbudd.com
bleblanc@baronbudd.com
lbaughman@baronbudd.com
asaucer@baronbudd.com
cmansour@baronbudd.com

*Counsel for Plaintiff County of Cuyahoga*

Robert J. Triozzi, Director
Cuyahoga County Department of Law
2079 East 9th Street, 7th floor
Cleveland, Ohio 44115
Telephone: (216) 698-6464
Facsimile: (216) 698-2744
rtriozzi@cuyahogacounty.us

Robin M. Wilson
County Administrative Headquarters
2079 East 9th Street, 7th Floor
Cleveland, Ohio 44115
Phone: (216) 443-7042 / (216) 698-2744 (Fax)
rwilson@cuyahogacounty.us

Frank Gallucci
PLEVIN & GALLUCCI COMPANY, L.P.A.
55 Public Square
Suite 2222
Cleveland, Ohio 44113
FGallucci@pglawyer.com

Paul J. Napoli
Joseph L. Ciaccio
Salvatore C. Badala
NAPOLI SHKOLNIK, PLLC

## KIRKLAND & ELLIS LLP

August 4, 2018
Page 16


400 Broadhollow Road - Suite 350
Melville, New York 11747
pnapoli@napolilaw.com

Scott Elliot Smith
SCOTT ELLOT SMITH LP A
5003 Horizons Dr. Ste. 200
Columbus Oh. 43220
614-846-1700
ses@sestriallaw.com

Leo M. Spellacy, Jr., Esq.
THRASHER DINSMORE & DOLAN LPA
1111 Superior Avenue, Suite 412
Cleveland, OH 44114
Telephone: (216) 255-5431
Fax: (216) 255-5450
lspellacy@tddlaw.com

*Counsel for Plaintiffs County of Summit and City of Akron*

Joseph F. Rice
Lisa Saltzburg
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
jrice@motleyrice.com
lsaltzburg@motleyrice.com

Linda Singer
Louis Bograd
MOTLEY RICE LLC
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com
lbograd@motleyrice.com

## KIRKLAND & ELLIS LLP

August 4, 2018
Page 17

Donald W. Davis, Jr.
Adam D. Fuller
Elizabeth Shively Boatwright
BRENNAN, MANNA & DIAMOND,
LLC
75 East Market Street
Akron, OH 44308
Tel: 330-253-5060
dwdavis@bmdllc.com
adfuller@dmdllc.com
esboatwright@bmdllc.com