IN THE DISTRICT COURT OF CLEVELAND COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, ex rel., ) <br> MIKE HUNTER, ) <br> ATTORNEY GENERAL OF OKLAHOMA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> (1) PURDUE PHARMA L.P.; ) <br> (2) PURDUE PHARMA, INC.; ) <br> (3) THE PURDUE FREDERICK COMPANY, ) <br> (4) TEVA PHARMACEUTICALS USA, INC.; ) <br> (5) CEPHALON, INC.; ) <br> (6) JOHNSON & JOHNSON; ) <br> (7) JANSSEN PHARMACEUTICALS, INC, ) <br> (8) ORTHO-MCNEIL-JANSSEN ) <br> PHARMACEUTICALS, INC., n/k/a ) <br> JANSSEN PHARMACEUTICALS; ) <br> (9) JANSSEN PHARMACEUTICA, INC., ) <br> n/k/a JANSSEN PHARMACEUTICALS, INC.; ) <br> (10) ALLERGAN, PLC, f/k/a ACTAVIS PLC, ) <br> f/k/a ACTAVIS, INC., f/k/a WATSON ) <br> PHARMACEUTICALS, INC.; ) <br> (11) WATSON LABORATORIES, INC.; ) <br> (12) ACTAVIS LLC; and ) <br> (13) ACTAVIS PHARMA, INC., ) <br> f/k/a WATSON PHARMA, INC., ) <br> ) <br> Defendants. ) | Case No. CJ-2017-816 <br><br> Judge Thad Balkman |

## ORDER OF SPECIAL DISCOVERY MASTER

**NOW,** on this 10th day of October, 2018, the above and entitled matter comes on for ruling by the undersigned having heard argument on Defendants' Motion To Compel Discovery Regarding Claims Data and State's Response thereto on October 3, 2018.

The undersigned finds as follows:

State argues it proceeds under the Okla. Medicaid False Claims Act (FCA) and will utilize statistical modeling to prove causal connection between Defendant's promotion and marketing conduct and damage to State. As argued, State's proof approach does not require proof of individualized doctor and patient interaction as a global population of individualized

1

proof of each physician's reliance on false and/or misleading promotion and marketing resulting in individual excessive or unnecessary prescriptions. State argues that under this statistical modeling manner of proof, it does not have to establish an individualized and complex chain of causation flowing through thousands of marketing "providers" to thousands of physician "prescribers" ultimately issuing prescriptions to individual patients, many of whom became State Medicaid claims recipients. State chooses to limit this inquiry arguing a proof method that seeks to provide the quantity and quality of proof necessary for the State to carry its burden of proof. While the question of legal sufficiency of State's proof method shall be left for another day, 12 O.S. § 3226(B)(1)(a) requires the undersigned to structure a discovery process based upon reality and in the context of this unique case "… reasonably calculated to lead to the discovery of admissible evidence and proportional to the needs of the case, considering the importance of the issues at stake in the action,…". I also have an obligation to weigh privacy rights against the Defendant's desire to individually personalize their discovery. In the context of this case, proportionality would prohibit individualized discovery as it would not be feasible to allow discovery into approximately 9 million claims, 950,000 patients and 42,000 doctor/prescribers contained in the State data bases.

  The State of Oklahoma is the plaintiff, not individual patients. As such, it is not an individualized proof process which State argues to be unnecessary and in fact would likely result in an unreasonably lengthy and highly burdensome discovery process as Defendants have stated intentions to depose all patients with claims.

  State argues it has produced approximately 9,000,000 pages of prescriber, prescription and patient information with personal information redacted. State in its response to Purdue's First Set of Interrogatories – No. 3(May 8, 2018 Oklahoma Medicaid Claims Data for all opioid prescriptions for 1996-2017), describes these data base information sources and data parameters for what constitutes "unnecessary or excessive" prescriptions to be supplemented subject to ongoing discovery requiring State to produce additional documents, information, reports studies and research gathered as a part of State's ongoing investigation. The record also indicates Defendants do have the doctor/prescriber names but do not have patient names. The data bases do provide individual identifying numbers to allow for tracking of State Medicaid claims through the system while protecting the patient's personal information.

  I am satisfied Defendants have in their possession or have access to prescriber/patient data necessary for complete discovery through a combination of access to data information already in their possession and by way of access to numerous State databases such as the Oklahoma Medicaid Management Information System (MMIS) and Enhanced Code System, Online Query System (ODMHSAS or OOmQues) and the Oklahoma Fatal Unintentional Poisoning Surveillance System which reviews Medical Examiner's Reports. To the extent Defendants do not have access to these data bases, State has been and again is **Ordered** to produce the data base information according to our rolling production process.

  It appears most likely true that through this database information, Defendants' have a fair and proportional way to defend this case and can bring in their own experts, doctors/providers and patients as they choose to defend and test the State's theory. Also, I am not satisfied patient

private information protection is fully waived in this case under the terms of the HIPPA Protective Order.

Defendants argue patient and prescriber identities and personal information are required in order to compare to marketing and promotional activities, to research utilization of services such as treatment facilities, overdose records, law enforcement contact emergency service contacts and State Medical Examiner records. Pursuant to the above findings and scheduling order deadlines, Defendants now have and will receive more specific patient and prescriber information in this manner and as a part of the proposed expert statistical modeling sample, and will be entitled to appropriate discovery.

Regarding Cephalon, State argues evidence of a history of joint promotion efforts and agreements to promote and market drugs generally and specifically even though it appears this Defendant may have a total of 245 prescriptions for either Actiq or Fentora issued in Oklahoma. Regardless, Cephalon is entitled, and it is not unreasonable in scope, to full production of all information relevant to details pled and as referenced in Ex. 3 to State's Petition as to these 245 prescriptions. Again, as found above, Cephalon has in its possession or has the same access to data base information that protects patient private personal information. That personal information protection remains protected here, but State **shall** produce any and all other information that has not yet been produced and consistent with this Order as to these 245 claims (prescriptions).

At this time, I do not agree with Defendants' argument that to deny them full disclosure of all claims data information as requested precludes them from meaningful discovery. An aggregation approach to this case I find to be reasonable and can fairly fit the needs of all parties. Personal individualized discovery is not the only way Defendants can fairly defend this case. A broad view of the factors of this unique case must be taken into consideration and equally weighed in determining the scope and propriety of discovery. Defendants argument that this claims data is "relevant" and discoverable I find to be insufficient to warrant discovery of personal patient and doctor/prescriber information in the scope sought to be compelled by Defendants.

Therefore, Defendant's Motion To Compel Discovery Regarding Claims Data as requested is **Denied** consistent with findings made in this Order.

It is so **Ordered** this 10th day of October, 2018.

_____
William C. Hetherington, Jr.
Special Discovery Master