**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| | Case No. 17-md-2804 |
| **This document relates to:** | |
| *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-op-45090 | Hon. Dan Aaron Polster |
| *City of Cleveland, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-op-451312 | |
| *County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 17-op-45004 | |

**MANUFACTURER DEFENDANTS' RESPONSE TO TRACK ONE PLAINTIFFS'**
**OBJECTION TO DISCOVERY RULING NO. 5**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

I.     PLAINTIFFS CONCEDE THE INTERROGATORIES SEEK RELEVANT, DISCOVERABLE INFORMATION ................................................................ 3

II.    THE SPECIAL MASTER CONSIDERED AND REJECTED EACH OF PLAINTIFFS' ARGUMENTS ........................................................................... 3

III.   PLAINTIFFS MUST ANSWER THESE INTERROGATORIES NOW TO ALLOW DEFENDANTS TO CONDUCT CRITICAL FOLLOW-UP DISCOVERY ..................................................................................................... 4

IV.   THE INTERROGATORIES DO NOT CALL FOR EXPERT OPINIONS ............. 11

V.    RULE 33(d) IS NOT APPROPRIATE FOR THESE INTERROGATORIES ........ 12

CONCLUSION .................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Matter of Arlington Heights Funds*,
   1989 WL 81965 (N.D. Ill. July 11, 1989)..............................................................................5

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
   315 F.R.D. 116 (D. Mass. 2016).......................................................................................8

*City of Cincinnati v. Deutsche Bank Nat'l Tr.*,
   863 F.3d 474 (6th Cir. 2017) ......................................................................................7, 11

*Cleveland Const., Inc. v. Gilbane Bldg. Co.*,
   2006 WL 2167238 (E.D. Ky. July 31, 2006)..................................................................5, 6

*In re Cont'l Capital Inv. Servs., Inc.*,
   2009 WL 1661918 (Bankr. N.D. Ohio Mar. 6, 2009) ..........................................................13

*Davis v. Fendler*,
   650 F.2d 1154 (9th Cir. 1981) ...........................................................................................13

*Ferguson v. Horne*,
   2010 WL 819127 (N.D. Ohio Mar. 9, 2010) .......................................................................7

*Hamilton v. Beretta U.S.A. Corp.*,
   750 N.E.2d 1055 (N.Y. 2001)............................................................................................8

*Ironworkers Local Union 68 v. AstraZeneca Pharms.*,
   634 F.3d 1352 (11th Cir. 2011) (Martin, J., concurring) ........................................................8

*Mooney v. City of Dearborn*,
   2008 WL 4539513 (E.D. Mich. Oct. 8, 2008) ....................................................................13

*Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*,
   264 F.R.D. 233 (W.D.N.C. 2010).....................................................................................13

*In re Nat'l Prescription Opiate Litig.*,
   --- F. Supp. 3d ---, 2018 WL 3616261 (N.D. Ohio 2018) ......................................................7

*In re Neurontin Mktg. & Sales Practices Litig.*,
   257 F.R.D. 315 (D. Mass. 2009), *vacated*, 712 F.3d 60 (1st Cir. 2013)..................................9

*In re Neurontin Mktg. & Sales Practices Litig.*,
   677 F. Supp. 2d 479 (D. Mass. 2010), *rev'd in part*, 712 F.3d 51 (1st Cir.
   2013) ............................................................................................................................9

i

*In re Neurontin Mktg. & Sales Practices Litigation*,
    712 F.3d 21 (1st Cir. 2013)................................................................................8

*S.E.C. v. Blackwell*,
    2004 WL 6829614 (S.D. Ohio Jan. 15, 2004) ......................................................13

*Safety Today, Inc. v. Roy*,
    2014 WL 12749231 (S.D. Ohio Feb. 11, 2014).....................................................13

*Schweinfurth v. Motorola, Inc.*,
    2007 WL 6025288 (N.D. Ohio Dec. 3, 2007) .........................................................4

*Sergeants Benevolent Association Health and Welfare Fund v. Sanofi-Aventis*
    *U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015)................................................................................8

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*,
    873 F.3d 574 (7th Cir. 2017) .............................................................................8

*Southeast Laborers Health & Welfare Fund v. Bayer Corp.*,
    444 F. App'x 401 (11th Cir. 2011) ......................................................................8

*Travelers Indem. Co. v. Pfizer Inc.*,
    No. 3:12-CV-01059 (D. Conn.) ..........................................................................9

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010)...............................................................................8

*United Food & Commercial Workers Health & Welfare Fund v. Amgen, Inc.*,
    400 F. App'x 255 (9th Cir. 2010) ........................................................................8

*United Oil Co. v. Parts Assocs., Inc.*,
    227 F.R.D. 404 (D. Md. 2005)...........................................................................13

*United States v. Blue Cross Blue Shield of Michigan*,
    2012 WL 12930840 (E.D. Mich. May 30, 2012)....................................................4

*United States v. Elfindepan, S.A.*,
    206 F.R.D. 574 (M.D.N.C. 2002) ......................................................................14

**Rules**

Fed. R. Civ. P. 26.......................................................................................3, 7, 11

Fed. R. Civ. P. 33............................................................................... *passim*

## INTRODUCTION

Each of the Track 1 Plaintiffs' three-hundred-plus page Complaints alleges at its core that through "false and deceptive marketing of prescription opioids," the Manufacturer Defendants sold "far greater quantities of prescription opioids than they know could be necessary for legitimate medical uses."  Cleveland Corrected Second Am. Compl. (Dkt. 508) ¶¶ 9, 14; Summit Corrected Second Am. Compl. (Dkt. 514) ¶¶ 9, 14; Cuyahoga Corrected Second Am. Compl. (Dkt. 521) ¶¶ 9, 14.  Plaintiffs plead 11 counts, including common law fraud and RICO violations, over a time period of more than two decades, and—in total—seek hundreds of billions of dollars for harm they claim resulted from the improper prescribing of Defendants' FDA-approved opioids.

Given the breadth of claims Plaintiffs have chosen to pursue, an undeniably massive discovery burden has been placed on Defendants.  To date, the Manufacturer Defendants alone have produced over 68 million pages of documents in response to Plaintiffs' requests.  Yet despite the burden on Defendants, Plaintiffs have for months resisted responding to three interrogatories, which Plaintiffs themselves readily admit are relevant, and which go to the very heart of this case.

Specifically, Manufacturer Defendants asked Plaintiffs to provide sworn interrogatory responses that identify which of the opioid prescriptions they claim should not have been written (Interrogatory No. 10), what caused them to be written (Interrogatory No. 6), and what, if any, harm they caused to Plaintiffs (Interrogatory No. 7).  Without this basic information, each of the seven Manufacturer Defendants are left to guess which of their specific opioids are alleged to have been prescribed improperly, the basis for the claim that those prescriptions should not have been written, the alleged fraudulent statements that purportedly caused those prescriptions to be written and who made them to whom, and how those specific prescriptions ultimately caused the hundreds of billions in damages alleged collectively by Plaintiffs in this MDL.

Given the nature of Plaintiffs' legal theories, Defendants are entitled to know all prescriptions in the Track One jurisdictions that allegedly were not "necessary for legitimate medical uses," *e.g.*, Summit Corrected Second Am. Compl. (Dkt. 514) ¶ 14, or written in reliance on fraudulent statements, *e.g.*, *id.* ¶ 1081—and which they contend caused the damages they seek. After meet and confers, Plaintiffs supplemented their responses to these interrogatories but again refused to provide responses, leading the Manufacturing Defendants to file a motion to compel. In deciding the motion to compel, the Special Master ordered only that each of the Track One Plaintiffs identify 500 such prescriptions—including at least 10 such prescriptions for each Manufacturer Defendant—and identify 300 persons who allegedly became addicted to or were otherwise harmed by Defendants' opioid medications.[1]   While Plaintiffs have raised several arguments challenging this ruling, they do not claim that responding now is impossible or creates an undue burden.   Nor can they—in complying with the Special Master's direction to meet and confer on a timeframe to comply with his ruling, Plaintiffs proposed that they respond by November 2 if their objections are overruled.

While Defendants believe that these small numbers will prove insufficient to provide critical and undeniably relevant information needed to defend themselves, it is clear the Special Master correctly decided that Defendants are entitled to know at least some of this information now—so that Defendants can start to narrow the focus of this case to the prescriptions actually at issue and to develop evidence critical to their defenses.  Thus, while the Manufacturer Defendants respectfully reserve their rights to seek additional prescription-level data and responses, they

---

[1] The Special Master was not asked to address Plaintiffs' separate obligations to provide the factual basis supporting their claims (all of which sound in fraud) or the appropriate consequences of failure to do so.  Defendants reserve all rights to seek further or additional relief in light of the prejudice that Defendants have suffered and continue to suffer as a result of Plaintiffs' continued refusal to provide this critical information.

request that the Court affirm Special Master Cohen's Discovery Ruling No. 5 requiring Plaintiffs to respond now to the interrogatories as modified.

## I.   PLAINTIFFS CONCEDE THE INTERROGATORIES SEEK RELEVANT, DISCOVERABLE INFORMATION

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Plaintiffs, in their own words, "did not [and do not] dispute that the Interrogatories were [and are] relevant." Plaintiffs' Objection to Discovery Ruling No. 5 (Dkt. 1031) at 2 [hereinafter "Objection"]. Nor could they, given that such Interrogatories are highly relevant to Plaintiffs' claims and the Manufacturer Defendants' defenses, including testing Plaintiffs' highly attenuated theories of but-for and proximate causation. Plaintiffs also have failed to establish any burden— let alone that the burden is not proportional in the context of this massive litigation. Indeed, Plaintiffs have indicated that they are poised to respond in less than *three weeks* if the Special Master's ruling is affirmed.

Having conceded that the interrogatories satisfy the fundamental prerequisites to discovery under the Federal Rules, Plaintiffs instead argue that they should be permitted to (1) wait at least until the close of expert discovery to provide written answers or (2) respond only by referring to documents they have produced. Both arguments rest on faulty premises and should be rejected.

## II.   THE SPECIAL MASTER CONSIDERED AND REJECTED EACH OF PLAINTIFFS' ARGUMENTS

Plaintiffs are wrong that Special Master Cohen did not consider these arguments. Indeed, they concede "these were precisely the issues before him." Objection at 2. In particular, the Special Master heard, considered and rejected Plaintiffs' arguments that:

- These are contention interrogatories they should not be forced to answer. *See* Aug. 17, 2018 Hanly Ltr. (Dkt. 1031-8) at 6 & n.8; Tr. Hearing on Manufacturer Defs.' Mot. to Compel (Dkt. 1011) at 18.

- Plaintiffs may attempt to prove their case through aggregate proof from an expert and therefore should be absolved of their discovery duty to provide relevant and proportional information. *See* Aug. 17, 2018 Hanly Ltr. (Dkt. 1031-8) at 2-4; Tr. Hearing on Manufacturer Defs.' Mot. to Compel (Dkt. 1011) at 29.

- Defendants should answer the interrogatories for them pursuant to Rule 33(d). *See* Aug. 17, 2018 Hanly Ltr. (Dkt. 1031-8) at 4-6; Tr. Hearing on Manufacturer Defs.' Mot. to Compel (Dkt. 1011) at 44.

The arguments supposedly "not considered" by Special Master Cohen were, to the contrary, each before him and the subject of argument—and each was soundly rejected when he properly ruled that Defendants are entitled to this information now.

## III.  PLAINTIFFS MUST ANSWER THESE INTERROGATORIES NOW TO ALLOW DEFENDANTS TO CONDUCT CRITICAL FOLLOW-UP DISCOVERY

Plaintiffs' argument—that they should not be required to answer these interrogatories during fact discovery—rests on a number of demonstrably incorrect premises and should be rejected.

*First*, Plaintiffs' argument that answers to contention interrogatories "are best resolved after much or all of the other discovery has been completed," Objection at 11 (internal quotation marks omitted), is wrong as a matter of law and especially inapplicable here. As Plaintiffs' own authority makes clear, Rule 33 simply *allows* a court to delay contention interrogatory answers, it does not require it. Fed. R. Civ. P. 33(a)(2) ("the court may order"). Courts often require parties to answer contention interrogatories earlier in the discovery period when, as here, the answers "will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." *Schweinfurth v. Motorola, Inc.*, 2007 WL 6025288, at *4–5 (N.D. Ohio Dec. 3, 2007); *United States v. Blue Cross Blue Shield of*

*Michigan*, 2012 WL 12930840, at \*5 (E.D. Mich. May 30, 2012); *Cleveland Const., Inc. v. Gilbane Bldg. Co.*, 2006 WL 2167238, at \*7–8 (E.D. Ky. July 31, 2006); *Matter of Arlington Heights Funds*, 1989 WL 81965, at \*1 (N.D. Ill. July 11, 1989) ("In this instance the limited Contention Interrogatories posed by [defendant] (limited both in number and in scope) are well calculated to narrow the issues appropriately at an early stage, given the nature of [plaintiff's] claims.").

With discovery deadlines fast approaching, it cannot credibly be argued that the Order comes too early in the process—and Plaintiffs have already successfully delayed providing substantive responses to Defendants' requests for months.  Moreover, as recognized by the Special Master, the three interrogatories at issue are critical to further the objectives identified in the decisions cited above, focusing this massive case so that Defendants know what they are defending against while fact discovery remains open.  Plaintiffs must identify the prescriptions that form the basis of their claims now—and indeed should have done so long ago—so Manufacturer Defendants can investigate, and pursue additional discovery regarding, any such prescriptions.

Moreover, Plaintiffs' repeated assertion that the Special Master's ruling would require Plaintiffs "to provide details absent from their pleading prior to having an opportunity to take discovery" is disingenuous.  Objection at 3, 12.  Discovery in these cases has been proceeding at a breakneck pace for the past six months.  As noted above, Plaintiffs have already received over 68 million pages from Manufacturer Defendants alone, and document discovery is currently scheduled to be substantially complete in just two weeks.  *See* CMO-7 (Dkt. 876).  What's more, Plaintiffs filed their sweeping fraud-based lawsuit against each Manufacturer Defendant alleging that ***millions*** of opioid prescriptions in their jurisdictions were improper.  It is inconceivable that each Plaintiff still cannot identify even a tiny fraction of these prescriptions—including even the

bare-minimum of 10 per Manufacturer Defendant required by Special Master Cohen (as part of the 500 aggregate per Plaintiff).  The information sought is the kind Plaintiffs were obligated to gather, and claimed they did gather,[2] during pre-suit investigations.  *See Cleveland Const., Inc.*, 2006 WL 2167238, at *7 ("Defendants are expected to have, even at an early stage, some good faith basis in fact and law for such claim and defense. *See* Fed. R. Civ. P. 11(b)(2), (3). Accordingly, Plaintiff's Interrogatories which primarily seek the basis for the defense and related counterclaim, even if they are assumed to be contention interrogatories, should be answered at this time.").  Ultimately, whether or not Plaintiffs should have answered these interrogatories when Manufacturer Defendants propounded them in April is beside the point today: they should answer them now during the fact discovery period so that Defendants have at least some opportunity to investigate and pursue their defenses to these assertions, and they undoubtedly can.  In fact, Plaintiffs have represented that if their objections are overruled, "[they] will be able to provide [their] responses no later than 11/2." Ex. 1 (Oct. 11, 2018 L. Singer Email to M. Cheffo et al.).

**Second**, Plaintiffs cannot rely on Magistrate Judge Ruiz's recent motion to dismiss R&R in the Summit County case to avoid the ordered discovery.  Plaintiffs repeatedly claim the "clarification of what Plaintiffs must, and need not, allege at the pleading stage is relevant to what information Plaintiffs can properly be required to provide" in discovery, because "it would circumvent and undermine the federal pleading standards" if Plaintiffs were required "to provide by interrogatory answer what they are not required to plead." Objection at 3, 12.  Plaintiff cite no support for this novel argument, which would turn the entire sequence of litigation on its head. Indeed, they confuse the sufficiency of allegations in a complaint with the discoverability of

---

[2] *See, e.g.*, Summit Corrected Sec. Am. Compl. (Dkt. 514) ¶ 675 ("Interviews with Summit County doctors confirm that sales representatives carried the same deceptive messages to local prescribers as described above.").

information relevant to their claims and Manufacturer Defendants' defenses.  As the R&R itself makes clear, the absence of particular critical facts in a complaint does not make those facts undiscoverable.  *See* Dkt. 1025 at 25 n.20 ("Defendants will certainly have the opportunity to request the identity of these doctors during discovery, and Plaintiffs will need to support their theories with evidence to withstand a motion for summary judgment or persuade the trier of fact."); *id.* at 42 n.30 ("Defendants will have ample opportunity to ascertain the identity of these doctors in discovery.").

**Third**, Plaintiffs' objection conflates the sufficiency of proof at trial with the discoverability of information.  Although the Manufacturer Defendants believe Plaintiffs are wrong that they "are not required to identify specific prescriptions, doctors, or patients in order to prove their case," Objection at 12, that is not at issue for purposes of this discovery dispute.  Under the rules, discovery is undoubtedly broader than what Plaintiffs believe is necessary to prove their claims.  Fed. R. Civ. P. 26 ("[T]he scope of discovery" is any "matter that is relevant to any party's claim or defense . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable."); *In re Nat'l Prescription Opiate Litig.*, --- F. Supp. 3d ---, 2018 WL 3616261, at \*2-3 (N.D. Ohio 2018) ("Rule 26(b)(1) addresses the expansive scope of discovery."); *Ferguson v. Horne*, 2010 WL 819127, at \*1 (N.D. Ohio Mar. 9, 2010) ("As the Supreme Court has instructed, because discovery itself is designed to help define and clarify the issue, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.") (internal quotation marks omitted).  And Plaintiffs cannot preempt Defendants' ability to obtain admittedly relevant discovery because they intend to proceed on a flawed theory[3] of aggregate proof.

---

[3] *See, e.g.*, *City of Cincinnati v. Deutsche Bank Nat'l Tr.*, 863 F.3d 474, 480 (6th Cir. 2017) ("Proximate cause requires some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.

The case on which Plaintiffs heavily rely, *In re Neurontin Mktg. & Sales Practices Litigation*, 712 F.3d 21 (1st Cir. 2013), is a red herring, as it did not address what Defendants are entitled to in the discovery process. Instead, it concerned the sufficiency of the evidence presented at trial. While *Neurontin* is otherwise distinguishable from this case for a number of reasons,[4] in the *Neurontin* case itself the Court allowed non-aggregate discovery like that at issue here. For

---

In addition to foreseeability, it requires some direct relation between the injury and the injurious conduct…. The failure to tether the damages to nuisance-related problems on Wells Fargo's properties prevents us from assessing the 'directness' of the relationship between the two. That is particularly true for the City's attenuated theories of damage: decreased tax revenue, increased police and fire expenditures, and increased administrative costs. When tied only to a general 'policy' of non-conformance, these damages are difficult to connect to Wells Fargo's actions and nearly impossible to disaggregate from other potential causes of these costs.") (internal quotation marks and citations omitted); *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1062 (N.Y. 2001) ("Such broad liability, potentially encompassing all gunshot crime victims, should not be imposed without a more tangible showing that defendants were a direct link in the causal chain that resulted in plaintiffs' injuries, and that defendants were realistically in a position to prevent the wrongs. Giving plaintiffs' evidence the benefit of every favorable inference, they have not shown that the gun used to harm plaintiff Fox came from a source amenable to the exercise of any duty of care that plaintiffs would impose upon defendant manufacturers.").

[4] To name a few: First, the claims there concerned promotion of off-label use—***all of which*** the *Neurontin* Plaintiffs argued were medically unnecessary. In other words, all of the relevant prescriptions were alleged to be medically unnecessary and the only question was whether the one defendant's promotion caused that medically unnecessary use. Here, in contrast, Plaintiffs have refused to identify which, if any, prescriptions Plaintiffs contend were medically unnecessary. Second, more generally, Plaintiffs' claims here are much more complex and contain many more variables than *Neurontin*: there are multiple defendants (and defendant groups) for different marketing and other conduct at different times and for numerous different products with different approved indications, dosages and formulations; Plaintiffs seek to recover the downstream municipal costs associated with addressing post-prescription (often illegal) conduct; and Plaintiffs are going to have to try to measure the impact of particular defendant-specific alleged fraudulent statements not only on the quantity of particular opioid prescriptions written by medical professionals, but also on any downstream costs they seek to recover. Third, in *Neurontin*, there was evidence of direct reliance by plaintiffs on alleged misstatements and omissions that purportedly reached them (and their pharmacy benefit managers). 712 F.3d at 32-33, 40. Lastly, courts have repeatedly rejected the *Neurontin* approach of using expert analyses (including regression analyses) to prove causation in cases about misrepresentations in marketing to doctors—even in much less complex contexts than we have here, such as where a third-party payor is attempting to isolate the impact of particular fraudulent marketing on a particular prescription. *See, e.g.*, *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 873 F.3d 574, 578 (7th Cir. 2017) ("The implication of *Neurontin* may be short of a holding, but to the extent there is a conflict the Second Circuit has this right. Like it, we hold that improper representations made to physicians do not support a RICO claim by Payors, several levels removed in the causal sequence.") (citing *Sergeants Benevolent Association Health and Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71 (2d Cir. 2015), and *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010)); *United Food & Commercial Workers Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010); *Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 444 F. App'x 401, 410 (11th Cir. 2011); *Ironworkers Local Union 68 v. AstraZeneca Pharms.*, 634 F.3d 1352, 1370 (11th Cir. 2011) (Martin, J., concurring); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 315 F.R.D. 116, 129 (D. Mass. 2016) (it is a flawed assumption that "the relationship between all promotions and all sales" is a sufficient proxy for the "relationship between fraudulent promotions and fraudulently induced sales"). Certainly *Neurontin*'s outlier approach has not been adopted by the Sixth Circuit.

example, in ruling on motions for class certification and summary judgment, the *Neurontin* court analyzed deposition testimony from numerous treating physicians. *See In re Neurontin Mktg. & Sales Practices Litig.*, 257 F.R.D. 315, 330 (D. Mass. 2009) ("[T]he testimony of the prescribing physicians . . . indicates that only one of them . . . was ever detailed by defendants about Neurontin."), *vacated*, 712 F.3d 60 (1st Cir. 2013); *In re Neurontin Mktg. & Sales Practices Litig.*, 677 F. Supp. 2d 479, 495 (D. Mass. 2010) ("Many doctors have not met with Pfizer sales representatives or attended its educational seminars. Even those that have been detailed deny reliance . . . ."), *rev'd in part*, 712 F.3d 51 (1st Cir. 2013). Moreover, in a related case, the Special Master ordered the plaintiff insurer to "produce 384 randomly selected claim files" regarding workers compensation claimants who had been prescribed Neurontin. *See* Dkt. 186-1, Tr. at 31:13-16, *Travelers Indem. Co. v. Pfizer Inc.*, No. 3:12-CV-01059 (D. Conn.). In other words, as Plaintiffs readily admit, the interrogatory responses are undeniably relevant. Plaintiffs do not even attempt to explain, much less cite authority supporting, why the way they might attempt to prove their cases is any basis for them to ***continue to delay*** providing (or refuse to provide) undeniably relevant discovery ordered by the Special Master and thereby prevent Manufacturer Defendants from testing Plaintiffs' allegations and preparing their defenses.

Plaintiffs have gone to great lengths to try to distance themselves from their own allegations that specific prescriptions were improper—that is, medically unnecessary or inappropriate for patients. However, it is apparent from Plaintiffs' Complaints that they necessarily contend that (1) specific prescriptions were medically unnecessary or improper; (2) doctors wrote these prescriptions in reliance on a particular misrepresentation by a Manufacturer Defendant, and (3) some of these prescriptions caused individuals to become addicted or harmed, which in turn caused Plaintiffs harm. Whether or not Plaintiffs used the precise term "medically

unnecessary" is beside the point, as they explicitly claim that Manufacturer Defendants "have contributed substantially to the opioid crisis by selling . . . far greater quantities of prescription opioids than they know could be necessary for legitimate medical uses."  Cleveland Corrected Second Am. Compl. (Dkt. 508) ¶ 14; Summit Corrected Second Am. Compl. (Dkt. 514) ¶ 14; Cuyahoga Corrected Second Am. Compl. (Dkt. 521) ¶ 14.  Indeed, their claims are all predicated on the contention that many opioid prescriptions ***should not have been written***; and surely they therefore recognize that many opioid prescriptions were perfectly legitimate (as have the federal government agencies that authorized their sale).  The Manufacturer Defendants are entitled to know which are which so that these cases and the parties' efforts can focus on those prescriptions actually at issue.

Plaintiffs argue that their "allegations do not suggest that particular prescriptions were . . . 'medically unnecessary,' but rather than the volume of pills was so great that it could be inferred ***that some of them were not for medical use at all***."  Objection at 15 n.9 (emphasis added).  But this is internally inconsistent and cannot be squared with their theories of liability and damages.  If there were no improper prescriptions, there can be no liability; put another way, the Manufacturer Defendants cannot be liable for hundreds of billions of dollars in damages for lawful, medically appropriate prescriptions that were medically appropriate for the patients who received them.  Even if Plaintiffs attempt to prove their claims with aggregate evidence, it is necessarily the aggregate of individual purportedly unlawful prescriptions, and Defendants are entitled to understand now—during the fact discovery period—what criteria Plaintiffs claim distinguish lawful from unlawful prescriptions.  Similarly, Plaintiffs' contention that the Defendants' (unspecified) misrepresentations "affected" every opioid prescription is not the question Manufacturer Defendants asked or the relevant question under the fraud-based claims ***Plaintiffs***

chose to pursue.  It is inconceivable, for example, that some alleged misrepresentation about a different prescription opioid product, to a different prescriber, in a different location, at a different time, had a meaningful "affect" on every prescription opioid ever written anywhere.  Such an attenuated connection certainly is insufficient to hold a Manufacturer Defendant liable under controlling law, *see, e.g.*, *City of Cincinnati*, 863 F.3d at 480, and the Court should reject Plaintiffs' attempt to reframe the question so they can avoid answering the relevant question actually asked.

## IV.    THE INTERROGATORIES DO NOT CALL FOR EXPERT OPINIONS

It is no answer that these interrogatories may address information that will be the subject of expert discovery.  Rule 26(a)(2) does not insulate underlying facts from discovery; rather, it merely says that an expert *must* identify the facts considered.  Plaintiffs offer no support for their unsupported assertion that whether a prescription is medically improper "can only be determined by expert testimony."  Objection at 18.  While answers to these interrogatories are undoubtedly subjective determinations about which the parties will not fully agree, Plaintiffs surely had some criteria in mind when they alleged that millions of prescriptions were improperly written. Defendants are entitled to know (among other things) what those criteria are and to test how those criteria are applied to the specific prescriptions in the Track One jurisdictions from which Plaintiffs' harm allegedly stemmed.  Such information is critical for Defendants to be able to test and defend against Plaintiffs' claims, including their theory of causation.

Further undercutting their argument that this information need not be presented now, Plaintiffs will not even say whether their experts will address these issues.  Objection at 19 ("To the extent that Plaintiffs experts will opine about medically unnecessary prescriptions, Plaintiffs should not be required to answer interrogatories on those subjects before their experts have had an opportunity to complete their analysis.").  Instead, they ask the Court to delay their responses until

expert discovery if they decide to address those responses through expert discovery, which Defendants will find out at expert discovery. Plaintiffs' circular response betrays their true motives here: To delay a response until it is too late for Defendants to investigate and test their contentions through fact discovery. But as the Special Master correctly recognized, it is imperative that Defendants have the ability in the context of the massive scope of these cases to know and interrogate the facts underlying Plaintiffs' contentions so that Defendants have some ability to prepare the necessary defenses in tightly constrained discovery. By the time the parties are engaged in expert discovery, it will be too late for Defendants to challenge the underlying inputs from which Plaintiffs' experts will presumably extrapolate. Plaintiffs' footnote contending that they can change their answers at their whim portends their impermissible attempt to insulate their case from challenge and preclude Defendants from building a defense. *See* Objection at 17 n.12.

## V.  RULE 33(d) IS NOT APPROPRIATE FOR THESE INTERROGATORIES

Plaintiffs also argue that they should not have to provide written responses, but instead should be permitted to rely on Federal Rule of Civil Procedure 33(d) and simply refer to documents they have produced. Objection at 20-23. Plaintiffs' reliance on Rule 33(d) is misplaced for two independent reasons.

***First***, Plaintiffs incorrectly assert that the "only limit on the use of Rule 33(d) is the requirement that 'the burden of ascertaining the answer be substantially the same for both sides.'" Objection at 21. This wholly ignores the most fundamental limitation on Rule 33(d); it applies only "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . ." In other words, to rely on Rule 33(d),

the answer to the interrogatory must be found in **the responding party's business records**.  *See*,

*e.g.*, *S.E.C. v. Blackwell*, 2004 WL 6829614, at *2 (S.D. Ohio Jan. 15, 2004).[5]

That is not the case here.  Indeed, Plaintiffs repeatedly argue that ***Plaintiffs' business***

***records*** do not hold the answers to these interrogatories:  "[E]ach of the[ interrogatories] calls for

information that requires the examination and analysis of business records (some possessed by

Plaintiffs and some by Defendants)."  Objection at 2.  Thus, by Plaintiffs' own argument, Rule

33(d) is unavailable for this reason alone.[6]

***Second***, Rule 33(d) is unavailable to Plaintiffs because these Interrogatories "require the

exercise of particular knowledge and judgment on the part of the responding party."  *United Oil*

*Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 419 (D. Md. 2005).  Put simply, Defendants are unable

to divine what Plaintiffs contend were improper prescriptions, what caused those prescriptions, or

what harm resulted from them.  *See, e.g.*, *In re Cont'l Capital Inv. Servs., Inc.*, 2009 WL 1661918,

at *4 (Bankr. N.D. Ohio Mar. 6, 2009) ("[T]he production of business records is wholly

unresponsive to SLK's eighth and ninth interrogatories asking the Trustee to state the facts

supporting his position that each transfer is recoverable as a fraudulent transfer and the grounds

upon which he believes the transfer to be fraudulent."); *Safety Today, Inc. v. Roy*, 2014 WL

12749231, at *2 (S.D. Ohio Feb. 11, 2014) ("Rule 33(d) may not be used as a substitute for

---

[5] *Davis v. Fendler*, 650 F.2d 1154, 1158 n. 3 (9th Cir. 1981) ("It is apparent that the records of [various state offices] do not qualify as appellant's 'business records.' A party cannot, under the guise of Rule 33(c) [now Rule 33(d)], resort to such tactics."); *Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233, 239 (W.D.N.C. 2010) ("The rule does not provide for a reference to documents in the custody of another."); *Mooney v. City of Dearborn*, 2008 WL 4539513, at *2 (E.D. Mich. Oct. 8, 2008) ("[W]hen an answer to an interrogatory may be derived or ascertained from the business records of the party on whom the interrogatory has been served . . . .").

[6] Plaintiffs also represented to the Special Master that they have "provided [Defendants] . . . not just with prescription claims data, but medical claims records that can be matched up."  Tr. Hearing on Manufacturer Defs.' Mot. to Compel (Dkt. 1011) at 46.  This was inaccurate.  As Plaintiffs now recognize, "Plaintiffs . . . *are in the process* of producing[] such records to the Defendants," Objection at 2, and "the identifiers are not consistent between" certain medical and prescription claims data. Ex. 2 (10/10/2018 Ltr. from D. Ackerman to D. Welch).

13

answering such interrogatories.  Only plaintiff can identify its own contentions and the burden on defendants to try and divine plaintiff's contentions from documents obviously imposes a greatly unequal burden on defendants."); *United States v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002) ("Documents themselves rarely, if ever, reveal contentions of fact or law.").

Indeed, Plaintiffs themselves argue that the answers to these Interrogatories are "quintessentially a matter of opinion."  Objection at 18.  Only Plaintiffs can provide this basic information critical to their claims and Manufacturer Defendants' defenses—that is, which prescriptions they contend are medically unnecessary or improper, which were supposedly caused by Defendants' alleged misstatements, and which resulted in the alleged harms for which they seek to recover.  Thus, even if the Court were to ignore Rule 33(d)'s requirement that the answer be found in Plaintiffs' business records, Rule 33(d) is not an available option for Plaintiffs to respond to these Interrogatories because Defendants are incapable of answering these questions for Plaintiffs.

## CONCLUSION

For all of these reasons, the Court should confirm that Manufacturer Defendants are entitled to the responses ordered in Discovery Ruling No. 5 immediately.

Dated: October 15, 2018

Respectfully submitted,

/s/ *Donna M. Welch*

Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

*Attorney for Defendant Allergan Finance, LLC*
*f/k/a Actavis, Inc. f/k/a Watson*
*Pharmaceuticals, Inc.*

/s/ *Steven A. Reed* (consent)

Steven A. Reed
Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5603
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000
brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals, USA,*
*Inc.; Cephalon, Inc.; Watson Laboratories,*
*Inc.; Actavis LLC; and Actavis Pharma, Inc.*
*f/k/a Watson Pharma, Inc.*

/s/ *Mark S. Cheffo* (consent)

Mark S. Cheffo
Sheila L. Birnbaum
Hayden A. Coleman
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com
Sheila.Birnbaum@dechert.com
Hayden.Coleman@dechert.com

*Attorneys for Defendants Purdue Pharma L.P.;*
*Purdue Pharma Inc.; and The Purdue*
*Frederick Company*


/s/ *Charles C. Lifland* (consent)

Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
clifland@omm.com
sstrong@omm.com

Daniel M. Petrocelli
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
dpetrocelli@omm.com

*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc.; Johnson & Johnson;*
*Janssen Pharmaceutica, Inc. n/k/a Janssen*
*Pharmaceuticals, Inc.; and Ortho-McNeil-*
*Janssen Pharmaceuticals, Inc. n/k/a Janssen*
*Pharmaceuticals, Inc.*

/s/ *Jonathan L. Stern* (consent)
Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 942-5000
jonathan.stern@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Tel: (213) 243-4000
sean.morris@arnoldporter.com

*Attorneys for Defendants Endo Health*
*Solutions Inc.; Endo Pharmaceuticals Inc.;*
*Par Pharmaceutical, Inc.; and Par*
*Pharmaceuticals Companies, Inc.*

/s/ *Brien T. O'Connor* (consent)
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
Tel: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Attorneys for Defendants Mallinckrodt LLC*
*and SpecGx LLC*

/s/ *Eric. H. Zagrans* (consent)
Eric H. Zagrans (0013108)
ZAGRANS LAW FIRM LLC
6100 Oak Tree Boulevard, Suite 200
Cleveland, Ohio 44131
Tel: (216) 771-1000
eric@zagrans.com

J. Matthew Donohue
Joseph L. Franco
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Tel: (503) 243-2300
matt.donohue@hklaw.com
joe.franco@hklaw.com

Nicholas A. Sarokhanian
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
Tel: 214.964.9500
nicholas.sarokhanian@hklaw.com

*Attorneys for Insys Therapeutics, Inc.*

## LOCAL RULE 7.1(f) CERTIFICATION

I certify that this case has been designated a "complex case" under CMO One §2(h)

[Dkt. 232], and that this memorandum adheres to the page limitations for complex cases set forth

in Local Rule 7.1(f).


Dated: October 15, 2018

/s/ *Donna M. Welch*
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

## **Certificate of Service**

I hereby certify that on October 15, 2018, a copy of the foregoing Manufacturer Defendants' Response to Track One Plaintiffs' Objection to Discovery Ruling No. 5 was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

/s/ *Donna M. Welch*
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com