# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-MD-2804 |
| This document relates to: | Judge Dan Aaron Polster |
| *Track One Cases* | |

# THE NATIONAL RETAIL PHARMACY DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DISCOVERY RULING NO. 5

**TABLE OF CONTENTS**

Introduction ............................................................................................................................ 2

Background ........................................................................................................................... 3

The Claims Against the Pharmacy Defendants .................................................................... 3

Argument ............................................................................................................................... 5

I.      Calling Interrogatories Nos. 2 and 3 "Contention Interrogatories" Does Not Relieve Plaintiffs of the Obligation to Respond During Fact Discovery ............................ 6

      A.      The Pharmacy Defendants Need Responses to Interrogatories Nos. 2 and 3 Well Before the End of Fact Discovery to Prepare their Defenses ......................... 6

      B.      Plaintiffs' Arguments Do Not Justify Delaying Responses to Interrogatories Nos. 2 and 3 any Further. ................................................................ 7

II.     Plaintiffs' Attempt to Rely on Rule 33(d) Is Unavailing. ................................................. 11

Conclusion ........................................................................................................................... 12

i

**Introduction**

As it pertains to the National Retail Pharmacy Defendants ("Pharmacy Defendants"),[1] Discovery Ruling No. 5 involves two straightforward interrogatories that the Pharmacy Defendants served on the Track One Plaintiffs, seeking to learn critical factual bases for Plaintiffs' inflammatory but, as far as their complaints and other discovery responses reveal, unfounded claims against the Pharmacy Defendants.

Plaintiffs' case against the Pharmacy Defendants rests on the premise that, when the Pharmacy Defendants acted as wholesale distributors of certain prescription opioids to their own pharmacies, they improperly shipped "suspicious orders" of these medications, which medications were then dispensed to patients presenting a physician's prescription, resulting in the harm for which Plaintiffs seek recovery.  Plaintiffs' complaints lack any specific factual allegations that could support such claims.

Accordingly, the Pharmacy Defendants served these two interrogatories:

**Interrogatory No. 2:**  Identify each prescription upon which You base, or which You contend supports, Your claims in this case.  For each prescription, identify the prescriber, dispensing pharmacy, dispensing pharmacist, and dispensing date, and explain how it supports Your claims.

**Interrogatory No. 3:**  Identify each prescription the filling of which caused or led to harm for which You seek to recover in this case.  For each prescription, identify the prescriber, dispensing pharmacy, dispensing pharmacist, and dispensing date, and explain how it supports Your claims.

Plaintiffs no longer dispute the relevance of this information, which goes directly to the causal chain between the alleged misconduct and the injuries at issue in this litigation.  *See* Pls.' Objections to Discovery Ruling No. 5 at 2 (Doc. # 1031) ("Pls.' Objections").  Indeed, Plaintiffs

---

[1]  Following certain voluntary dismissals and motions to add new parties, the Pharmacy Defendants currently named in the Track One cases include CVS Indiana, L.L.C.; CVS Rx Services, Inc.; Walgreen Co., Walgreen Eastern Co., Inc.; and Walmart Inc.

2

Summit County and the City of Akron say that they have responded to Interrogatory No. 2 by identifying documents pursuant to Rule 33(d), *id.* at 6—although, as discussed below, their efforts do not comply with Rule 33(d). Yet Summit County and the City of Akron have still refused to respond to Interrogatory No. 3. And the other Track One Plaintiffs, Cuyahoga County and the City of Cleveland, have refused to respond to either interrogatory.

After the Pharmacy Defendants raised Plaintiffs' failure respond to these interrogatories, Special Master Cohen entered Discovery Ruling No. 5. His ruling strikes a compromise between Defendants' need for the information and Plaintiffs' concerns about the burden and timing of compliance. Special Master Cohen ruled that Plaintiffs must initially respond to Interrogatories 2 and 3 with information about a first group of at least 500 prescriptions (possibly the same 500 prescriptions for each interrogatory). Discovery Ruling No. 5 at 4-5 (Dkt. # 1027). He ruled that Plaintiffs could defer the disclosure of any additional prescriptions that they or their experts intend to rely on at trial until a later, agreed date "substantially in advance" of the close of fact discovery. *Id.* at 6.

Despite the Special Master's efforts to craft a reasonable compromise that takes into account Plaintiffs' concerns, they still object. But for the reasons explained below, none of Plaintiffs' complaints about the Special Master's ruling on this discovery issue suggest any error.

## Background
### The Claims Against the Pharmacy Defendants

Plaintiffs' arguments obscure the fact that their claims against the Pharmacy Defendants are entirely different than their claims against the Manufacturer Defendants, whose separate interrogatories are also the subject of Discovery Ruling No. 5. The relevance and importance of the Pharmacy Defendants' discovery requests cannot be decided with reference to Plaintiffs' very different claims against the Manufacturer Defendants.

Plaintiffs' claims against the Manufacturer Defendants turn on allegations of fraud and marketing misconduct. Plaintiffs allege that the Manufacturer Defendants misled the medical community about the appropriate use of prescription opioid medications and their true potential for addiction. It is only on this basis that Plaintiffs can assert that their claims against the Manufacturer Defendants implicate "every prescription" for any opioid medication ever written or filled in Cuyahoga and Summit Counties. Pls.' Objections at 14.

Those fraud and marketing allegations have nothing to do with Plaintiffs' claims against the Pharmacy Defendants. The Pharmacy Defendants never manufactured or marketed prescription opioids, never made representations to the medical community about the safety of prescription opioids, and, indeed, never had any better information about prescription opioids than the general medical community.

Rather, Plaintiffs' primary claim against the Pharmacy Defendants is that, during the time period when they still acted as distributors of prescription opioids to their own stores (which they no longer do), the Pharmacy Defendants improperly shipped certain "suspicious orders" (*e.g.*, of unusual size, pattern, or frequency).[2] Of course, the mere shipment of an unusually large order to a retail pharmacy cannot, by itself, have caused any harm to Plaintiffs. Indeed, there may be any number of legitimate reasons for variability in order quantities, which do not alone support the automatic assumption that the order shipped was "suspicious" or that the product contained in that order was diverted to improper use. Plaintiffs' theory against Pharmacy Defendants appears to be that orders were "suspicious" because they were subsequently dispensed

---

[2] The DEA regulation regarding the design and operation by distributors of a system to disclose suspicious orders, *see* 21 C.F.R. § 1301.74(b), is derivative of the statutory requirement to maintain "controls against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels," 21 U.S.C. § 823(e)(1).

4

improperly in response to a specific prescription (or were otherwise diverted to improper use).  Thus, unless the plaintiffs can identify specific prescriptions that were improperly filled, the extra medication that made the order allegedly "suspicious" could cause no harm to anyone.

And despite their unmistakable focus on "suspicious orders," Plaintiffs now assiduously refuse—no matter how implausibly—to concede any limits on their potential claims against the Pharmacy Defendants.  So, for example, Plaintiffs suggest that they do not limit their claims to "suspicious orders," but also rely on unspecified other supposed "failure[s] to prevent diversion" of prescription opioids.  *Id.* at 16 n.11.  And while "*Summit County* has specifically disclaimed any claim against the National Retail Pharmacy Defendants based on their retail dispensing [of] opioids" in response to the Pharmacy Defendants' bellwether motion to dismiss, *id.* at 16 n.10 (emphasis added), the other Track One Plaintiffs—with virtually identical complaints—are apparently unwilling to admit as much until they have to.  Plaintiffs go so far as to say that there are "particular prescriptions, patients, or doctors that Plaintiffs intend to use as examples" at trial, but then astonishingly refuse to concede that Defendants are entitled to discovery about even those specific prescriptions.  *Id.* at 17 (agreeing only that "it *may* be that Defendants will be entitled to know" about such examples "before trial") (emphasis added).

Thus, whatever Plaintiffs might argue with respect to their claims against the Manufacturer Defendants, their claims and trial strategy against the Pharmacy Defendants squarely implicate the individual prescriptions about which the Pharmacy Defendants have sought discovery through Interrogatories Nos. 2 and 3.

## Argument

5

If Plaintiffs' Objections to Discovery Ruling No. 5 show anything, it is that they do not have any evidence to support their claims against the Pharmacy Defendants, not that there is any error in the Special Master's decision.

### I.    Calling Interrogatories Nos. 2 and 3 "Contention Interrogatories" Does Not Relieve Plaintiffs of the Obligation to Respond During Fact Discovery.

Plaintiffs' main argument is to characterize Interrogatories Nos. 2 and 3 as "contention interrogatories" that seek "opinions." *See* Pls.' Objections 10-20.  But Plaintiffs are forced to acknowledge, *id.* at 8, that "[a]n interrogatory is *not objectionable merely because it asks for an opinion or contention* that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2) (emphasis added).  Plaintiffs are therefore left to argue that the Special Master should nevertheless have exercised discretion under the rules to defer Plaintiffs' response deadline until some unspecified point in the future, perhaps even after the close of fact discovery.

None of Plaintiffs' arguments justify their demand that the Special Master should have let them put off responses to Interrogatories Nos. 2 and 3 until it is too late for the Pharmacy Defendants to test Plaintiffs' allegations or develop responsive evidence during fact discovery.

### A.    The Pharmacy Defendants Need Responses to Interrogatories Nos. 2 and 3 Well Before the End of Fact Discovery to Prepare their Defenses.

Completely missing from Plaintiffs' 23-page brief is any analysis of the Pharmacy Defendants' need for information responsive to Interrogatories Nos. 2 and 3.  The Pharmacy Defendants require this information now, during fact discovery, to prepare their defenses.

There can be no serious dispute that each of the Pharmacy Defendants is entitled to know which prescriptions Plaintiffs had in mind when they made serious allegations about misconduct they say contributed to significant harm to the citizens of Cuyahoga and Summit Counties.  The Pharmacy Defendants are entitled to investigate the circumstances surrounding the filling of those prescriptions, including by soliciting testimony from the prescribing doctors about the

6

reasons for and legitimacy of the prescriptions that, according to Plaintiffs, resulted in the diversion of prescription opioids.  The Pharmacy Defendants are similarly entitled to employ the tools available through fact discovery to investigate the "particular prescriptions, patients, or doctors that Plaintiffs intend to use as examples" at trial.  Pls.' Objections at 17.  And the Pharmacy Defendants are entitled to know to what extent the prescriptions to which Plaintiffs attribute their injuries were filled by Defendants' own pharmacies rather than, as is more likely the case, independent and other pharmacies that operate in Cuyahoga and Summit Counties outside the umbrella of a major chain.

Plaintiffs cannot avoid the importance of such discovery by insisting that they may—or may not—revert to "aggregate" and "statistical" methods of proof at trial.  Even if the Court were inclined to allow such an approach (which is not proper under governing Sixth Circuit law), Plaintiffs' "aggregate" or "statistical" analyses would still need to be based on data of some kind, including, of necessity, data about prescriptions filled at pharmacies.  Plaintiffs cannot wait until expert reports to reveal the data that underlies their claims, denying Defendants any opportunity to test the data's accuracy during fact discovery and giving Defendants' experts a scant six weeks to conduct their own analysis of Plaintiffs' data before their own expert reports are due.  *See* CMO 7 at 2 (Doc. # 876).   And, of course, Defendants remain entitled to probe the facts behind the concrete "examples" that Plaintiffs hope to use to bolster their novel statistical evidence.[3]

      **B.**      **Plaintiffs' Arguments Do Not Justify Delaying Responses to Interrogatories Nos. 2 and 3 any Further.**

---

[3]  Neither of Plaintiffs' two cases, *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21 (1st Cir. 2013), and *People v. ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th 51 (Cal. Ct. App. 2017), *see* Pls.' Objections at 12-14, involved either facts remotely like those at issue here or claims remotely like those asserted against the Pharmacy Defendants.

Discovery in these cases has been underway since April 2018, *see* CMO 1 at 6 (Doc. #232), and is set to conclude in January 2019, *see* CMO 7 at 2. Especially at this late date, Plaintiffs' laundry list of arguments do not show that the Special Master was required to permit still further delay before Plaintiffs finally respond to Interrogatories Nos. 2 and 3.

First, Plaintiffs say that they have only limited prescription data in their possession. Pls.' Objections at 11. But unless Plaintiffs mean to confess a violation of Rule 11, they must have had *some* evidence in hand before filing their complaints against the Pharmacy Defendants. However limited Plaintiffs' pre-filing investigation, it is no excuse for refusing to provide immediately whatever information that they *do* have, subject to supplementation as the rules require if Plaintiffs later develop additional evidence. And if Plaintiffs in fact have no information to support their claims, the Pharmacy Defendants are entitled to sworn interrogatory responses that say so.

Second, Plaintiffs rely on Magistrate Judge Ruiz's findings about what they were and were not required to plead to avoid dismissal at the pleadings stage. *Id.* at 12. Plaintiffs cite only portions of the Report and Recommendation concerning fraud allegations against the Manufacturer Defendants, which have nothing to do with Plaintiffs' very different claims against the Pharmacy Defendants. *See id.* But more to the point, federal notice pleading standards plainly do not set the outer bounds of permissible fact discovery.

Third, Plaintiffs insist again that they intend to prove their cases against the Pharmacy Defendants through some sort of "aggregate proof." *Id.* at 12-14. Setting aside the legal infirmity and practical implausibility of such proof in these cases, Plaintiffs cannot unilaterally define the scope of discovery available to Defendants with general statements about how they intend to present their cases to the jury. The information called for by Interrogatories Nos. 2 and

8

3 remains critical to the Pharmacy Defendants' defenses for the reasons discussed above.  Fed. R. Civ. P. 26(b)(1) (scope of discovery includes "any nonprivileged matter that is relevant to any party's claim *or defense*") (emphasis added).  Plaintiffs themselves do "not dispute that the Interrogatories are relevant to Defendants' defenses."  Pls.' Objections at 2.  And Plaintiffs carefully avoid saying that they will use *only* aggregate proof at trial, leaving themselves the bait-and-switch option to present other evidence as well, including evidence of specific prescriptions that Plaintiffs will say should not have been filled.

Fourth, Plaintiffs say that the interrogatories at issue involve contentions of Defendants rather than of Plaintiffs.  *Id.* at 14-16.  This argument involves only the Manufacturer Defendants' interrogatories, an objection to the Manufacturers' use of the term "medically unnecessary," and Plaintiffs' theory that the Manufacturer Defendants (but not the Pharmacy Defendants) made misrepresentations that affected all opioid prescriptions in Cuyahoga and Summit Counties.  *See id.* at 14-15.  As to the Pharmacy Defendants' interrogatories, Plaintiffs argue only that the Pharmacy Defendants supposedly have not provided sufficient information about opioid prescriptions filled at their pharmacies.  *Id.* at 16.  This statement is both incorrect[4] and irrelevant.  The Special Master's ruling requires Plaintiffs to provide the information responsive to Interrogatories Nos. 2 and 3 that Plaintiffs already have and on which they base their claims, not information they are seeking but have not yet received, as to which they can supplement their responses later.

---

[4] As "evidence" on this point, Plaintiffs' brief cites only the inaccurate statements of Plaintiffs' counsel at a hearing before Special Master Cohen.  *See* Pls.' Objections at 16 (citing Ex. 15 at 7:13-23).  In fact, the Pharmacy Defendants have provided the relevant information that Plaintiffs have requested.  If Plaintiffs think the Pharmacy Defendants' responses are deficient, that is a matter for them to raise with the Special Master but not grounds to shirk their own discovery obligations.

Fifth, Plaintiffs say, without any explanation, that Defendants "can develop this evidence on their own." *Id.* at 17.  But the interrogatories seek information about the prescriptions that form basis for *Plaintiffs'* own claims, which is outside of any Defendant's knowledge.  None of the Pharmacy Defendants is aware of prescriptions filled by their pharmacists—much less prescriptions filled with medications that were part of a "suspicious order"—that supports Plaintiffs' claims or that could have led to the harm for which Plaintiffs seek recovery.  As to the relevant prescriptions filled by other pharmacies, the Pharmacy Defendants could have no information about those.  These are Plaintiffs' claims, and it is up to Plaintiffs to substantiate them.

Finally, Plaintiffs say that the Special Master should have let them wait until the expert disclosure deadline before responding to the Pharmacy Defendants' interrogatories.  *Id.* at 18-20.  As explained above, that is far too late to allow Defendants the investigation they are entitled to conduct into the data underlying Plaintiffs' "aggregate" proof and the particular prescriptions that Plaintiffs intend to hold out as examples to lend plausibility to their aggregate claims.

In support of their position, Plaintiffs offer a complicated and unclear argument that applies only to the Manufacturer Defendants' interrogatories, *id.* at 18-19, and then simply assert that it is a "matter[] of opinion" whether "particular prescriptions ought not to have been filled," *id.* at 19.  What the Pharmacy Defendants' Interrogatories Nos. 2 and 3 actually asked, however, is what prescriptions support Plaintiffs' claims and what prescriptions caused their alleged injuries.  These are simple matters of fact that should be well known to Plaintiffs if there is anything to their claims—indeed, should have been well known to Plaintiffs before they filed complaints laden with serious accusations of misconduct against the Pharmacy Defendants

10

The bottom line is that if Plaintiffs have identified prescriptions that support their claims or caused their injuries—whether or not as a "matter of opinion"—Defendants are entitled to know about them. And if it turns out that Plaintiffs were aware of no such prescriptions when they filed their complaints against the Pharmacy Defendants and today still have not identified a single prescription that supports their claims, Defendants are entitled to know that as well.

## II. Plaintiffs' Attempt to Rely on Rule 33(d) Is Unavailing.

Plaintiffs' last argument is that the Special Master should have recognized that Plaintiffs, despite all of their other arguments, already have provided complete responses to the Pharmacy Defendants' Interrogatories Nos. 2 and 3 by specifying documents under Rule 33(d). *Id.* at 20-23.

Nothing could be further from the truth. Rule 33(d) permits a party to respond to an interrogatory by specifying the party's own business records from which the requested information may be obtained, but only when "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). Plaintiffs have not done any such thing.

To begin with, Plaintiffs Cuyahoga County and the City of Cleveland have never even purported to offer responses to either interrogatory under Rule 33(d). And Summit County and the City of Akron have never even purported to offer a response to Interrogatory No. 3 under Rule 33(d). *See* Pls.' Objections at 6. That is, Plaintiffs' Rule 33(d) argument could only apply, even in theory, to the response offered by only Summit County and the City of Akron to just Interrogatory No. 2.

And even the response to Interrogatory No. 2 by Summit County and the City of Akron does not represent any meaningful effort to specify documents from which the Pharmacy Defendants could hope to derive which prescriptions Plaintiffs think support their claims. The

11

documents to which Summit County and the City of Akron refer, *see* Pls.' Objections Ex. 13 at 7, include, for example:

- A sign-in list for a subcommittee meeting of the Summit County Opiate Task Force (document SUMMIT_001474839-41);

- A list of members of Congress who represent citizens in the Akron-Canton area (document SUMMIT_001474842);

- A glossy brochure for an adolescent substance abuse and mental health treatment program (document SUMMIT_001474864-65);

- A business card (document SUMMIT_001474847); and

- A document that appears to show over 1.2 million individual medical procedures relating to substance abuse treatment, without providing information about the patient, the substances abused by that patient, or any prescriptions ever filled by that patient or otherwise related to his or her need for treatment (document SUMMIT_001146952).

While a few of the specified documents are spreadsheets that include actual prescription-level information, the prescriptions appear to have been collected with no particular rationale in mind, including low-dose and/or short-term prescriptions of opioid painkillers and also prescriptions for medications used to treat opioid addiction.

Thus, the two Plaintiffs (out of four) who purport to have responded under Rule 33(d) to one (out of two) of the interrogatories at issue, have still fallen far short of what the rules require. No amount of analysis of these sign-in sheets, brochures, business cards, and spreadsheets could permit the Pharmacy Defendants to divine what prescriptions Summit County and the City of Akron think support their claims that they suffered harm because the Pharmacy Defendants allegedly shipped "suspicious orders" to Summit County or otherwise failed to do enough to prevent the diversion of prescription opioid medications in Summit County.

## Conclusion

The Court should affirm Special Master Cohen's Discovery Ruling No. 5 requiring Plaintiffs to respond to the Pharmacy Defendants' Interrogatories Nos. 2 and 3 as modified by the Special Master.

Dated: October 15, 2018

Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Ste. 300
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co., Inc.*

/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Ste. 1000
Washington, DC 20036
(202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Indiana, L.L.C. and CVS Rx Services, Inc.*

/s/ Elisa P. McEnroe (with consent)
Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
elisa.mcenroe@morganlewis.com

Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
(212) 309-6000
kelly.moore@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc.*


/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, this 15th day of October, 2018, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreen Co. and Walgreen Eastern Co., Inc.*