**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*Track One Cases*" | ) ) ) | |
| | ) ) ) | **DISCOVERY RULING NO. 7** |

The Special Master hereby enters rulings that resolve several discovery disputes between the parties.

**Production of Claims Data**

Defendants ask for discovery assistance related to the medical and prescription claims data produced by Plaintiffs. Defendants explain that "patient-identifying data has been removed or otherwise 'de-identified' across all but one of the claims databases that have been produced;" therefore, Defendants are unable to match patients in one database with their corresponding information in other databases and documents." Letter from Donna Welch to Plaintiffs Counsel at 2 (Oct. 3(4), 2018). Defendants further note this circumstance "has made it impossible for Defendants to obtain relevant claims data from third parties, such as Medical Mutual." *Id.* at 3. Accordingly, defendants "request that Plaintiffs immediately reproduce (or produce to the extent the data is outstanding) all medical and prescription claims data associated with opioid prescriptions written in the Track 1 jurisdictions from 1996 to the present in a format that makes it possible for

Defendants to link the patients' information across the multiple databases and data sources." *Id.*

Plaintiffs do not disagree that defendants are currently unable to match patients across databases, but insist the best approach to dealing with this problem is to "provid[e the] identified information to a third party data aggregator who could create a common 'de-identification' numbering scheme that would allow matching prescription claims data with the medical claims data across all of the different claims data sources." Letter from Donna Welch to Plaintiffs Counsel at 3 (Oct. 12, 2018). Defendants respond that this approach has serious problems – including time, cost, and the likelihood that the data aggregator would not supply defendants with everything they need – and the better solution is to simply produce the databases directly to defendants, "on an attorneys' and experts' eyes only basis." *Id.* Defendants add that this approach would sufficiently address plaintiffs' privacy concerns.

The Special Master agrees with defendants that: (1) they are entitled to "match" the information in the databases, (2) the simplest/quickest/cheapest mechanism to allow for this is for plaintiffs to give the databases directly to defendants, and (3) plaintiffs' privacy concerns can be addressed adequately by Court Order, rather than using a third-party aggregator. Accordingly, the Special Master orders as follows.

In the *Discovery Order Regarding Health-Related Information* (docket no. 703) (the "*Claims Data Order*"), the Special Master directed plaintiffs to produce certain prescription and medical claims information, some of which is maintained by third-party benefits administrators. The *Claims Data Order* is hereby **AMENDED** as follows. Plaintiffs shall produce to Defendants as soon as reasonably possible, on an "Identified Basis," all prescription claims data and medical claims data described in the original *Claims Data Order* related to opioid prescriptions that were reimbursed or

denied payment by or on behalf of Plaintiffs, including but not limited to claims made by Plaintiffs' employees, employees' dependents, incarcerated persons, retirees, and pension fund beneficiaries. "Identified Basis" means that the name, address, social security number, and date of birth of the recipients of the prescriptions are included and in a form that readily allows each prescription to be associated with each recipient.

All parties shall safeguard and maintain the confidentiality of this data pursuant to the terms of the HIPAA protective order (*see* docket no. 441, CMO-2 at 32-34), and shall limit disclosure of this identified claims data to attorneys and experts for the parties, unless otherwise ordered by the Court. The limitations set forth in the *Claims Data Order* apply to data produced pursuant to this *Ruling*. Specifically, no person shall, without leave of Court, use any material produced pursuant to this *Ruling* in connection with any formal or informal third-party discovery of individuals or entities revealed in this data, including but not limited to: (i) requests to or about individual patients whose records are produced in the medical insurance claims data; and (ii) requests to health care providers or administrators concerning the treatment of patients described in the medical insurance claims data. In sum, no person shall contact or attempt to contact any individual identified in the claims data, or their family members or medical providers or other related staff, for the purpose of obtaining additional information related to this case, without leave of Court.

**Defendants' Interrogatories re: Prescriptions and Suspicious Orders**

In *Discovery Ruling No. 5*, the Special Master addressed interrogatories posed ***by the manufacturing defendants*** seeking information about specific prescriptions. *See* docket no. 1027 (*Discovery Ruling No. 5*); docket no. 1047 (Court Order amending this *Ruling*). The distributor and

retail pharmacy defendants have both raised similar issues, asking the Special Master to compel plaintiffs to answer interrogatories seeking information about specific prescriptions and suspicious orders. In particular, plaintiffs have not responded substantively to the following interrogatories – the first two of which are directed at specific prescriptions, and the latter three of which are directed at specific suspicious orders:

> **Pharmacy Interrogatory No. 2**
> Identify each prescription upon which You base, or which you contend supports, Your claims in this case. For each prescription, identify the prescriber, dispensing pharmacy, dispensing pharmacist, and dispensing date, and explain how it supports Your claims.
>
> **Pharmacy Interrogatory No. 3**
> Identify each prescription the filling of which caused or led to harm for which you seek to recover in this case. For each prescription, identify the prescriber, dispensing pharmacy, dispensing pharmacist, and dispensing date, and explain how it supports Your claims.
>
> **Pharmacy Interrogatory No. 7**
> Identify all Suspicious Orders for Prescription Opioids shipped by any National Retail Pharmacy Defendant in Your geographic area during the Relevant Time Period, including for each the name and location of the pharmacy that placed the order, the distributor to whom it was placed, the respective dates that it was placed and shipped, the manufacturer, name and amount of the medication that was ordered and shipped, and the reason(s) why the order was suspicious.
>
> **Pharmacy Interrogatory No. 8**
> Identify the "national comparative benchmarks and indefensible outliers" related to the Track One cases referred to in Paul Farrell's June 13, 2018 email to Mark Lynch.[1]

---

[1] The referenced email, sent to counsel for distributor defendant McKesson, contains the following paragraph: "The PEC has possession of the national ARCOS database. We conducted extensive analysis in an attempt to identify the proper defendants for the CT1 cases. For instance, we reviewed the individual transactions between each distributor and each pharmacy and attempted to identify outliers involving "suspicious orders" of unusual size, unusual frequency and/or deviations from a normal pattern. Each distributor is in exclusive possession of the criteria internally utilized to establish orders of usual size, usual frequency and normal patterns. Discovery related to these unique "metrics" is ongoing. In the absence of public knowledge on each set of metrics, the PEC made recommendations for the CT1 cases based on all information reasonably available including national comparative benchmarks and indefensible outliers."

**Distributor Interrogatory No. 23**
Identify each Suspicious Order that you believe was shipped to Your geographic area by a Distributor Defendant during the time period for which you seek damages in this lawsuit. For each order, identify the date the order was shipped, the medication shipped, the number of dosage units shipped, the number of dosage units that you contend would have been permissible to ship, the reason you believe the order was suspicious, the Distributor Defendant that shipped the allegedly Suspicious Order, and the person or entity that placed the order.

The Special Master now rules as follows. Although the retail pharmacies assert plaintiffs should respond to the two "specific prescription" interrogatories listed above with more information than required by *Discovery Ruling No. 5*, which addressed the manufacturers' "specific prescription" interrogatories, the Special Master disagrees. Accordingly, plaintiffs' responses to *Discovery Ruling No. 5*, as amended by the Court, also satisfy Pharmacy Interrogatories no. 2 and 3.

With regard to Pharmacy Interrogatory No. 8, the email from Farrell to Lynch was written in the context of discussing amendment of complaints. Because the distributor defendants had not produced their own suspicious order criteria and algorithms, Farrell was suggesting he would have to amend complaints to add distributor defendants based on his own criteria and algorithms – a process that has not yet actually occurred. This email conversation between counsel on a tangential issue does not provide the retail pharmacy defendants a valid basis to demand an explanation of opposing counsel's thinking. Moreover, the ruling below granting in large part the motion to compel answers to the interrogatories directed at suspicious orders provides essentially the same information (and more) that is requested by Pharmacy Interrogatory no. 8. Accordingly, defendants' motion to compel an answer to this interrogatory is denied.

Finally, with regard to the other two interrogatories directed at suspicious orders – Pharmacy Interrogatory No. 7 and Distributor Interrogatory No. 23, which ask for essentially the same information – counsel for plaintiffs stated during oral argument that: (1) plaintiffs have analyzed the

ARCOS data and, to a large degree, identified orders they would contend at trial are suspicious; and (2) they can produce this information to defendants. Accordingly, the Special Master orders plaintiffs to respond to the following rewritten interrogatory, which combines and slightly amends Pharmacy Interrogatory No. 7 and Distributor Interrogatory No. 23:

> Identify each Suspicious Order for Prescription Opioids that you contend was shipped to Your geographic area by any National Retail Pharmacy Defendant or Distributor Defendant during the Relevant Time Period. For each order, identify the date the order was shipped, the manufacturer, name, and amount of the medication that was shipped, the name of the defendant that shipped the order, and the name and location of the person or entity that placed the order. Furthermore, explain the criteria you used to identify these Suspicious Orders.

The Special Master adds that plaintiffs' answer to this contention interrogatory does not limit their experts from using different criteria to identify suspicious orders, and therefore from concluding that there exist suspicious orders in addition to those identified by plaintiffs in their response. Plaintiffs shall respond to this Interrogatory within ten calendar days of the date of this *Ruling*.

**Defendants' Interrogatories re: Dosage Units**

The retail pharmacy defendants also ask for a ruling that compels plaintiffs to answer interrogatories that are even more granular than those seeking specific orders or specific prescriptions. The pharmacy defendants explain as follows:

> [Plaintiffs have asserted we] suppl[ied] opioids in plaintiffs' jurisdictions in quantities greater than those appropriate for legitimate medical uses. To evaluate and test this contention, [we] are entitled to know the basic facts on which it necessarily rests: the quantities of opioids that could legitimately have been supplied for legitimate purposes and the amounts by which those quantities were exceeded.

Letter to Special Master from Laura Wu at 5 (Sept. 25, 2018). Accordingly, the retail pharmacy defendants pose the following two interrogatories seeking plaintiffs' contentions about *specific pills*.

**Pharmacy Interrogatory No. 14**

State the number of pills or other dosage units of Prescription Opioids that were diverted from legitimate medical purposes in Your geographic boundaries, and the number of pills or other dosage units of Prescription Opioids that were dispensed for other than legitimate medical purposes in Your geographic boundaries for each year during the Timeframe, and describe how each number was calculated.

**Pharmacy Interrogatory No. 15**

State the maximum number of pills or other dosage units of Prescription Opioids that should properly have been distributed in Your geographic boundaries for legitimate medical purposes during the Timeframe.  In Your response, explain how You calculated that number, including any per capita, per patient, drug family or other grouping, or any other basis on which you rely.

The Special Master concludes the pharmacy defendants will obtain sufficient information regarding whether a given pill was "medically legitimate" by virtue of plaintiffs' answers to the interrogatories addressing specific suspicious orders.  While the two categories are not entirely congruent, most or all orders identified as suspicious by plaintiffs will necessarily include at least some pills they believe were dispensed for other than legitimate medical purposes.  The pharmacy defendants' insistence that they need more exactitude now, before plaintiffs produce their expert reports, is not well-taken.  Accordingly, the Special Master denies defendants' motion to compel answers to Pharmacy Interrogatory Nos. 14 & 15.

**30(b)(6) Deponents**

Finally, the Special Master adds that, to the extent defendants already earlier requested it, plaintiffs shall produce 30(b)(6) witnesses in conformity with all rulings contained in this *Ruling* and in *Discovery Ruling No. 5*, as amended by the Court.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen
Special Master**

**Dated: October 21, 2018**