# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Cherokee Nation v. McKesson Corp., et al.*, No. 1:18-OP-45695 | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**DECLARATION OF LORI WHITE IN SUPPORT OF DEFENDANT MCKESSON CORPORATION'S OPPOSITION TO THE CHEROKEE NATION'S MOTION FOR RECONSIDERATION**

I, Lori White, declare as follows:

1.  I am employed by McKesson Corporation's U.S. Pharmaceutical business as Vice President, Government National Accounts.

2.  McKesson contracts with the U.S. Department of Veterans Affairs through the Pharmaceutical Prime Vendor Contract ("PPV Contract") to distribute pharmaceuticals to VA hospitals, providers, and other federal agencies and organizations that participate in the PPV Contract, including the Indian Health Services. I am responsible for managing the PPV Contract on behalf of McKesson.

3.  Publicly available sources show that there are a total of 23 PPV Contract facilities in the fourteen counties[1] that comprise the Cherokee Nation Tribal Jurisdiction Area.[2] A list of those facilities is attached as **Exhibit A**. As shown in **Exhibit A**, seventeen of those 23 PPV Contract facilities are Indian Health Services facilities.

4.  Under the PPV Contract, McKesson distributes a variety of prescription opioid products to federal customers, including some prescription opioid products that are not or have not always been reportable to the DEA's ARCOS data system. For example, McKesson distributes the opioid products Tramadol,[3] Propoxyphene, and other opioid products under the PPV Contract, which are not included in ARCOS data.

---

[1] For purposes of this declaration, these fourteen counties are defined as Adair, Cherokee, Craig, Delaware, Mayes, McIntosh, Muskogee, Nowata, Ottawa, Rogers, Sequoyah, Tulsa, Wagoner, and Washington counties, consistent with the allegations in the Cherokee Nation's Complaint. Complaint, ¶ 11.

[2] *See* Department of Veterans Affairs, PPV Frequently Asked Questions, *available at* https://www.va.gov/opal/nac/ncs/faqPpv.asp#q001, leading to a spreadsheet listing PPV Contract participants, *available at* https://www.va.gov/opal/docs/nac/ncs/ppvEligibilityListing.xls.

[3] Tramadol was not a federally-scheduled drug until August 2014.

2

5. From January 1, 2006 through June 30, 2018, McKesson's total opioid distributions to federal PPV Contract facilities account for 22.48% of McKesson's total opioid shipments in the Cherokee Nation Tribal Jurisdiction Area. A table summarizing the volume of opioids McKesson distributed to PPV Contract facilities in the Cherokee Nation Tribal Jurisdiction Area, compared with McKesson's total opioid distributions to both PPV and non-PPV facilities in the Cherokee Nation Tribal Jurisdiction Area, is attached as **Exhibit B**.

6. As reflected in **Exhibit B**, the total volume of opioids shipped by McKesson to PPV Contract facilities in the Cherokee Nation Tribal Jurisdiction area between 2008 and 2014—the span of time the Cherokee Nation relies on in its Motion—is 48,685,863 dosage units. **Exhibit B** (sum of "PPV volume" column from 2008 through 2014). The total volume of opioids shipped by McKesson to *all* customers in the same area during that time period is 211,474,090 dosage units. *Id.* (sum of "Total volume" column from 2008 through 2014).

7. During that same time period, McKesson's opioid distributions to some of the counties in the Cherokee Nation Tribal Jurisdiction Area were even more pronounced. For example, from January 1, 2006 through June 30, 2018, McKesson's PPV Contract distributions accounted for 35.43% of McKesson's total opioid shipments to Nowata County, 37.49% of McKesson's total opioid shipments to Ottawa County, and 63.25% of McKesson's total opioid shipments to Muskogee County. *Id.*

8. Federal PPV Contract facilities in the Cherokee Nation Tribal Jurisdiction Area, taken collectively, received more opioids from McKesson than any single other McKesson customer in the Cherokee Nation Tribal Jurisdiction Area for each year from 2006 to the present.

9. The Cherokee Nation has submitted an affidavit stating that there are only twelve PPV Contract facilities that it believes are relevant to its claims. *Cherokee Nation v. McKesson*

3

*Corp., et al.*, Dkt. 75-1, Ex. A. If the data is limited to only those twelve ordering facilities, opioid orders for those facilities account for 8.01% of McKesson's total opioid shipments to the Cherokee Nation Tribal Jurisdiction Area. A table summarizing the volume of opioids McKesson distributed to the twelve facilities noted in the Tribe's motion is attached as **Exhibit C.**

10. Even when limited to those twelve ordering facilities, those twelve facilities taken together as a group ordered more opioids than any single other McKesson customer in the Cherokee Nation Tribal Jurisdiction for each year from 2006 to the present.

Pursuant to 28 U.S.C. § 1764, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 22nd day of October, 2018.

_____
Lori White