UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: *"Track One Cases"* | ) ) ) ) ) ) | SPECIAL MASTER COHEN  DISCOVERY RULING NO. 8 |

The Special Master hereby enters a ruling addressing the parties' dispute regarding discovery of "dispensing information."

Plaintiffs assert at least some of the defendants have "improper[ly] narrow[ed] their discovery responses to exclude relevant information" by "refus[ing] to provide what they call 'dispensing' information, on the grounds that the only basis for their liability in this case concerns their role as distributors." Letter to Special Master from Mark Pifko (Oct. 8, 2018).[1] The distinction plaintiffs identify is that "distribution" involves movement of opioid products from (for example) a warehouse to a specific pharmacy, while "dispensing" refers to the "final step" in the distribution process, from the pharmacy to an individual patient. Plaintiffs ask for "a ruling compelling Defendants to: (1) produce documents concerning their dispensing practices, policies, and procedures, including documents reflecting any dispensing violations, as requested in Plaintiffs'

---

[1] Plaintiffs seek dispensing information from undifferentiated "defendants." Plaintiffs then explain they primarily seek this information from the retail pharmacy defendants, but also from any other defendant who may have "'dispensing' information that is responsive to Plaintiffs' document requests." Email from Mark Pifko to Special Master (Oct. 10, 2018).

document requests; and (2) produce documents pursuant to Paragraph 9(k)(ii) of Case Management Order No. 1 concerning their alleged violations of dispensing laws and regulations." *Id.* at 1.

Defendants respond, *inter alia*, that plaintiffs have "specifically disclaimed any claim against the National Retail Pharmacy Defendants based on their retail dispensing [of] opioids." Letter from Tara Fumerton to Special Master at 2 (Oct. 12, 2018) (quoting plaintiffs' objections to *Discovery Ruling No. 5* (docket no. 1031) at 16 n.10); *see also* plaintiffs' omnibus response to motions to dismiss (docket no. 654) at 75 n.47 (stating plaintiffs "do not allege violations of statutes or regulations applicable specifically to retailers who sell opioids," and instead base their claims against the retail pharmacy defendants on "the requirements under the CSA and Ohio law *applicable to distributors*") (emphasis added).  Accordingly, defendants assert, plaintiffs' effort to now obtain all dispensing documents and data, and evidence of all dispensing violations, is overreaching. Defendants add that they *have* produced the increment of dispensing information that is relevant. For example, Walgreens responds:

> Plaintiffs' discovery requests to Walgreens do not ask for dispensing data.  They request dispensing policies, which Walgreens has produced.  Walgreens is also producing documents regarding its evaluation of Opioids orders from its pharmacies, before those orders are placed.  To the extent such an evaluation includes dispensing data, that data is being produced as well.

Email from Kate Swift to Special Master (Oct. 12, 2018); *see also* Letter from John Lavelle to Special Master at 1-2 (Oct. 12, 2018) ("To the extent that [plaintiffs] seek[] dispensing information [from Rite-Aid] directly related to suspicious order monitoring – such as a due diligence report in connection with a request to increase a distribution threshold for a particular pharmacy that included a review of dispensing information – Rite Aid of Maryland has been producing and will continue to produce these documents.").

Finally, defendants note that ¶9(k)(ii) of CMO-1 requires defendants to deliver prior document productions "involving the *marketing or distribution* of opioids" – not the *dispensing* of opioids – and the parties specifically excluded dispensing when they negotiated this provision. Lavelle letter at 3.

The Special Master concludes that some, but not all, of the dispensing information sought by plaintiffs must be produced. As plaintiffs note, many of the retail pharmacy defendants use dispensing data as a component of their suspicious order monitoring programs. Even if plaintiffs are bringing claims against the retail pharmacies only in their role as distributors, and not based on laws that govern retail dispensing of opioids, this "component" dispensing information is still relevant to plaintiffs distribution claims (as defendants essentially concede). On the other hand, plaintiffs' affirmative disavowal of claims premised on dispensing practices, along with the history of their negotiation of CMO-1, show that defendants are correct that giving plaintiffs now all of their requested relief would be too much. (This is especially true in light of the press of imminent Track One deadlines.)

Accordingly, the Special Master rules as follows. The retail pharmacy defendants must produce the following discovery related to dispensing information (both documents and also Rule 30(b)(6) and fact testimony):[2]

- Policies and procedures related to dispensing controlled substances. This includes documents related to (a) procedures, policies, protocols, internal controls, or instructions to (b) identify, prevent, investigate, evaluate, report, or halt (c) the actual or potential

---

[2] It appears at least some of the retail pharmacy defendants have already produced most, if not all, of this discovery.

3

inappropriate or unlawful dispensing of opioids.

- Dispensing-related documents contained in suspicious order monitoring files related to Track One jurisdictions. This includes, for example, due diligence reports made in connection with particular orders, or in connection with requests to increase a distribution threshold for a particular pharmacy.

- Documents regarding evaluation of opioid orders from a particular retail pharmacy in Track One jurisdictions, whether before or after those orders are placed. To the extent such an evaluation includes dispensing data, that data must also be produced.

- Compensation policies for pharmacists in Track One jurisdictions.

- Transactional data showing the volume of opioid products received by each retail pharmacy location in the Track One jurisdictions, on an order-by-order basis.

- Memoranda of Settlement Agreements with the DEA involving dispensing violations.[3]

---

[3] Some of the Settlement Agreements are listed in the letter from Mark Pifko to the Special Master dated October 23, 2018. The retail pharmacy defendants are required to produce only Memoranda of Settlement Agreements, and not any other documents related to these Agreements, including "prior productions" connected to these Settlement Agreements. The Special Master concludes plaintiffs are not entitled to Rite-Aid's 2009 prior production (or any other retail pharmacy's prior production) because, although it may well be relevant, the history of negotiation of ¶9(k)(ii) of CMO-1 shows plaintiffs agreed not to demand this discovery in the Track One cases. That said, it is clear that plaintiffs have obtained (either through discovery from defendants or their own efforts) documents showing that the distribution and dispensing activities of certain retail pharmacies were problematic and may have contributed to diversion of opioids. *See, e.g.*, 2013 Settlement Agreement between Walgreens and DEA (addressing specific Florida pharmacy locations). While the Special Master is not ordering, for example, Walgreens to produce any *prior production* associated with this 2013 Settlement Agreement, plaintiffs may still discover the Settlement Agreement itself. (The Special Master here addresses only the question of discovery and not whether any evidence is admissible.)

Also, plaintiffs' current request for dispensing-related information from the distributor and manufacturing defendants is vague and not adequately reflected in their actual, formal discovery requests.

The Special Master concludes that plaintiffs are not entitled to any other discovery related to dispensing information at this time.

The Special Master repeats two caveats, which he has stated before[4] and which apply to all discovery rulings (prior and future) made in the Track One cases.  First, the ruling above is entered at this particular juncture within the span of the MDL.  At some future juncture (e.g. after the first trial), the balance the Court must weigh under Fed. R. Civ. P. Rule 26(b)(1) may well shift, making plaintiffs' additional requested discovery appropriate.  Accordingly, the Special Master makes clear here that defendants have no present obligation to *produce* the additional requested discovery, but they do have an obligation to *preserve* it.  Second, as a general rule, no party may rely at trial on documents or data they have not produced in discovery or which are otherwise unknown to opposing parties.

                            **RESPECTFULLY SUBMITTED,**

                            /s/ David R. Cohen
                            **David R. Cohen**
                            **Special Master**

**Dated: October 23, 2018**

---

[4] *See* email from Special Master to the parties (Sept. 20, 2018).