# EXHIBIT A-1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*The County of Summit, Ohio, et al. v. Purdue
Pharma L.P., et al.*, Case No. 18-OP-45090

*The County of Cuyahoga v. Purdue Pharma
L.P.*, Case No. 17-OP-45004

*City of Cleveland v. AmerisourceBergen Drug
Corp.*, Case No. 18-OP-45132

MDL No. 2804

Case No. 17-md-2804

Hon. Dan Aaron Polster

# MEMORANDUM IN SUPPORT OF
# THE MANUFACTURER DEFENDANTS' JOINT MOTION TO DISMISS TRACK 1
# PLAINTIFFS' CLAIMS FOR DAMAGES PURSUANT TO RULE 41(b)

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ISSUES AND ARGUMENT ...................... 1

II.  DISMISSAL OF ALL CLAIMS FOR DAMAGES IS WARRANTED .......................... 5

    A.  Plaintiffs' Refusal To Comply With CMO-1 Was Willful ................................. 7

    B.  Plaintiffs' Non-Compliance With CMO-1 Has Severely Prejudiced Defendants' Ability To Prepare For Trial And Defend Against Plaintiffs' Claims. ........................................................................................................ 11

    C.  Plaintiffs Knew And Were Warned That Failure To Identify MU/MI Prescriptions As Required By CMO-1 Would Result In Dismissal Of All Claims For Damages. ........................................................................... 13

    D.  The Requested Relief Is More Than Justified Under The Circumstances ........... 15

    E.  Enforcement Of The CMO And Dismissal Of Plaintiffs' Damages Claims Serves The Public's Interest ................................................................. 16

III.  CONCLUSION ................................................................................................ 16

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
  718 F.3d 236 (3d Cir. 2013)......................................................................................5

*City of Cincinnati v. Deutsche Bank Nat'l Tr.*,
  863 F.3d 474 (6th Cir. 2017) ..................................................................................12

*Dzik v. Bayer Corp.*,
  846 F.3d 211 (7th Cir. 2017) ....................................................................................6

*Freeman v. Wyeth*,
  764 F.3d 806 (8th Cir. 2014) ....................................................................................6

*Funk v. Comm'r of Soc. Sec.*,
  No. 10-CV-14865, 2011 WL 2470999 (E.D. Mich. June 1, 2011), *report and
  recom. adopted*, No. 10-14865, 2011 WL 2470983 (E.D. Mich. June 22,
  2011) ........................................................................................................................15

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*,
  496 F.3d 863 (8th Cir. 2007) .............................................................................5, 6, 15

*Harmon v. CSX Transp., Inc.*,
  110 F.3d 364 (6th Cir. 1997) ..................................................................................12

*Henry v. Gill Indus., Inc.*,
  983 F.2d 943 (9th Cir. 1993) ...........................................................................8, 9, 10

*United States ex rel King v. Solvay Pharm., Inc.*,
  871 F.3d 318 (5th Cir. 2017) ..................................................................................12

*Knoll v. Am. Tel. & Tel. Co.*,
  176 F.3d 359 (6th Cir. 1999) ................................................................................5, 6

*Komaromy v. City of Cleveland*,
  232 F.R.D. 590 (N.D. Ohio 2006) .......................................................................7, 14

*In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
  No. 2:14-CV-0523, 2015 WL 12844944 (D.S.C. Mar. 23, 2015) ............................6

*Little v. Yeutter*,
  984 F.2d 160 (6th Cir. 1993) ....................................................................................6

*Nwatulegwu v.Boehringer Ingelheim Pharms., Inc.*,
  668 F. App'x 173 (7th Cir. 2016) .......................................................................6, 15

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ........................................................................6, 15

*Schafer v. City of Defiance Police Dept., et al.*,
    529 F.3d 731 (6th Cir. 2008) ...............................................................................6

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015)..................................................................................12

*Steward v. Cty. of Jackson, Tenn.*,
    8 F. App'x 294 (6th Cir. 2001) ...............................................................7, 10, 14

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010)................................................................................12

*Vinci v. Consolidated Rail Corp.*,
    927 F.2d 287 (6th Cir. 1991) ..............................................................................14

*United States ex rel Wall v. Vista Hospice Care, Inc.*,
    No. 3:07-cv-00604-M, 2016 WL 3449833 (N.D. Tex. June 6, 2016) ....................12

I.      **INTRODUCTION AND SUMMARY OF ISSUES AND ARGUMENT**

In many respects, the complexity and case management challenges of this massive

multidistrict litigation are unprecedented.  Notwithstanding those challenges, the Court has made

clear its desire both to proceed with the litigation at an accelerated pace and to focus immediately

on prospective measures to address an on-going public health crisis – measures that are

important for all stakeholders to consider, regardless of fault.  If the bellwether cases in Track 1[1]

are to proceed to trial against some or all Defendants consistent with the Court's schedule, the

parties must work to streamline the matters in dispute and to develop a factual record that

permits a fair presentation of the parties' respective claims and defenses.  Particularly given

these circumstances, it is essential that the Court's case management orders be enforced, and that

there be consequences when (as now) Plaintiffs have made a willful decision not to comply

despite a direct warning from the Special Master.

The Court imposed an unambiguous requirement—and established a firm deadline—in

Paragraph 9(l)(iii) of CMO-1:

> **No later than, Monday, July 16, 2018**, each Plaintiff in cases in Track One that
> alleges money damages based upon unnecessary prescriptions shall identify: (a)
> the prescriptions that each Plaintiff asserts were medically unnecessary or
> medically inappropriate, to whom they were written, and whether Plaintiff
> reimbursed for them; (b) the physicians or healthcare providers who wrote the
> prescriptions; and (c) Plaintiff's basis for identifying the prescriptions that it
> asserts are medically unnecessary or medically inappropriate.

---

[1]     On April 11, 2018, the MDL Court entered Case Management Order One ("CMO-1")
(ECF No. 232) and selected three "Track 1" cases for discovery and trial: (1) *The County of
Summit, Ohio v. Purdue Pharma L.P.*, Case No. 18-OP-45090 (N.D. Ohio) ("*Summit*"); (2) *The
County of Cuyahoga v. Purdue Pharma L.P.*, Case No. 17-OP-45004 (N.D. Ohio) ("*Cuyahoga*");
and (3) *City of Cleveland v. AmerisourceBergen Drug Corp.*, Case No. 18-OP-45132 (N.D.
Ohio) ("*Cleveland*").  CMO-1 governs practice and procedure in these cases and is binding on all
parties, including Track 1 Plaintiffs.  CMO-1 ¶ 1.b, 3.a.

CMO-1 ¶ 9(l)(iii) (emphasis added).  The Court was entirely justified in imposing this requirement and setting an interim deadline.  Defendants needed this foundational information at the beginning of the discovery period—when there was still an opportunity to develop a factual record to test the Plaintiffs' assertions.  Indeed, Defendants' right to due process requires no less. Plaintiffs' claims sound in fraud, and to make any sense those claims must be premised on the contention that some (but not all) prescriptions would not have been written but for the alleged misstatements or omissions about the safety and efficacy of opioids.  Plaintiffs' allegations of causation and damages must begin with that premise, and thus discovery on that core issue is essential.  At no point did Plaintiffs challenge this provision of CMO-1 or seek clarification of its clear and unambiguous terms.  Instead, they affirmatively opted not to comply.  This intentional and prejudicial gamesmanship should not be tolerated.[2]

The Track 1 Plaintiffs' claims depend upon the existence of medically ***unnecessary*** or medically ***inappropriate*** ("MU/MI") prescriptions—that is, prescriptions that were improper or unsuitable for the patients who received them.  It should go without saying, but the Track 1

---

[2]     Plaintiffs have continued this gamesmanship by refusing to comply with this Court's Order Regarding Discovery Ruling No. 5 (ECF No. 1047), as set forth in the Manufacturer Defendants' pending motion to compel (ECF No. 1066).  Contrary to that Order, Plaintiffs neither made the unambiguous and unequivocal affirmations required by the Court nor agreed to provide the basic prescription-specific information required by Discovery Ruling No. 5.  (*Id.*).  In response to that motion to compel, Plaintiffs amended their responses, yet, contrary to the Court's Order, still continue to hedge their bets by, among other things, agreeing to provide information responsive to some interrogatory responses but not others and reserving the right to introduce individualized evidence at trial.  (ECF No. 1071, at 2, 4; *see also* ECF No. 1071-1).  But putting aside this gamesmanship, the net result is the same:  Defendants do not have and will not have knowledge of the specific prescriptions that are actually at issue in this case.  Plaintiffs' failure to comply with the Order Regarding Discovery Ruling No. 5 only makes Plaintiffs' earlier failure to comply with CMO-1 that much more prejudicial, as Plaintiffs repeatedly have refused to produce basic information necessary for Defendants' ***defenses*** and that would enable Defendants to challenge Plaintiffs' claims.  Regardless of the outcome of the Manufacturing Defendants' motion to compel compliance with Discovery Ruling No. 5, that will not cure the prejudice caused by Plaintiffs' violation of CMO-1.

Plaintiffs could not possibly have a claim against the Manufacturer Defendants based upon medically *necessary* or *appropriate* prescriptions.  After all, the products at issue are FDA-approved medications that serve critical medical needs, and are lawfully available only through a prescription written by trained medical professionals within a closed system that involves (among others) manufacturers, distributors, pharmacies, and prescribers that are heavily regulated by federal and state agencies and medical licensing boards, and in which prescribing and reimbursement decisions are heavily scrutinized by sophisticated health insurers and pharmaceutical benefits managers that have tremendous influence.

Accordingly, for Defendants to defend themselves against Plaintiffs' claims, and to challenge Plaintiffs' purported proof of causation and any damages they might seek, Defendants must know which prescriptions Plaintiffs assert are MU/MI, and have the opportunity to test that characterization through discovery.  This includes third-party discovery to find out why the prescribing physician wrote a particular prescription and whether that prescription was indeed inappropriate or unnecessary under the circumstances in which it was written.  Magistrate Judge Ruiz recognized the undisputable relevance of such evidence—and assumed Defendants would get the facts that they needed—in his Report & Recommendation in the *Summit County* case. *See* ECF No. 1025 at 25 n.20 ("Defendants will certainly have the opportunity to request the identity of these doctors [who allegedly wrote improper prescriptions as a result of the purported fraud] during discovery, and Plaintiffs will need to support their theories with evidence to withstand a motion for summary judgment or persuade the trier of fact."); *see also id.* 42 n.30

("Defendants will have ample opportunity to ascertain the identity of these doctors in discovery.").[3]

Given the tight deadlines in the Track 1 cases, time is and has always been of the essence. Yet, the Track 1 Plaintiffs chose not to comply with the clear and unambiguous requirements of the Court's Order, even after a pointed warning from the Court's Special Master.  *See* Discovery Ruling No. 1 (ECF No. 606), attached as Ex. 1, at 6.  The Track 1 Plaintiffs' strategic decision to disregard the Court's Order has prejudiced (and continues to prejudice) Defendants, frustrating their ability to prepare their defenses and challenge Plaintiffs' basic theory of liability.  Plaintiffs have attempted to justify their choice by rewriting the Court's Order to require them only to identify prescriptions for which they paid and as to which they seek reimbursement, asserting that the Court's Order "does not apply" to them because they do not seek that particular type of money damages.  *See* Exs. 2-4 (July 16, 2018 letters from each Track 1 Plaintiff).  This is a transparent and untenable attempt by Plaintiffs to avoid their basic obligations in this litigation.  Not only is the Court's Order clear and unambiguous, but the Track 1 Plaintiffs' alternative "interpretation" makes no sense.  The Court expressly required Plaintiffs to provide specifically-enumerated categories of facts regarding prescriptions, including "***whether*** [Plaintiff] had reimbursed for [the MU/MI prescriptions]"—a requirement that would be unnecessary if

---

[3]     As the above-quoted language shows, Magistrate Judge Ruiz's recommendation that the Court deny the Manufacturer Defendants' motion to dismiss—which asserted, among other arguments, that Summit County failed to plead but-for causation or to provide the required particularity to support its fraud-based claims—was based in part on his assumption that Defendants would receive in discovery the facts they need for summary judgment.  Even if that denial recommendation was correct as a matter of law (it is not), the assumption on which it is based has been thwarted by Plaintiffs' willful refusal to comply with CMO-1 or provide substantive responses to discovery requests that the Manufacturer Defendants have actively pursued since the requests were served on April 25, 2018.

Plaintiffs were **only** required to identify MU/MI prescriptions for which they reimbursed.  *See* Ex. 5 (Man. Defs.' July 27, 2018 letter to Track 1 Plaintiffs).

In light of Plaintiffs' failure to comply with the Court's Order, Defendants move to dismiss under Rule 41(b).  While the Court would be justified in dismissing the Track 1 Plaintiffs' complaints in their entirety, Defendants only seek through this Motion an order dismissing the Track 1 Plaintiffs' claims for damages.  Such an order is necessary to enforce CMO-1.  It also will assist in streamlining these cases for trial and will focus the litigation on prospective relief.

## II.      DISMISSAL OF ALL CLAIMS FOR DAMAGES IS WARRANTED

Rule 41(b) of the Federal Rules of Civil Procedure provides that if a plaintiff fails to comply with "a court order, a defendant may move to dismiss the action or any claim against it." FED. R. CIV. P. 41(b).  The rule "is intended to allow judges to enforce orders pertaining to the progress of their cases.  Nowhere is this more important, in terms of the degree of difficulty and the impact, than in multidistrict litigation cases, where the very purpose of the centralization before the transferee judge is the efficient progress of the cases in preparation for trial."  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 248 (3d Cir. 2013).  The dismissal of claims through Rule 41(b) is "available to the district court as a tool to effect 'management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (citation omitted).  As the Sixth Circuit has made clear, "[a] district court must be given substantial discretion in serving these tasks."  *Id.*

An MDL court has broad authority to decide how to structure proceedings before it; this includes requiring dismissal of claims for failure to comply with a CMO.  *See In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings,

***including the dismissal of cases for failure to comply with its orders***.") (emphasis added);

*accord Freeman v. Wyeth*, 764 F.3d 806, 809-10 (8th Cir. 2014).  Because of the complexity and

case management challenges with multidistrict litigation, "[s]trict adherence to case management

orders is necessary to manage [such cases]." *Nwatulegwu v.Boehringer Ingelheim Pharms., Inc.*,

668 F. App'x 173, 175 (7th Cir. 2016).

Applying this principle, courts repeatedly have granted Rule 41(b) motions and "***affirmed***

***dismissals with prejudice based on noncompliance***" with CMOs in multidistrict litigation.  *Id.*

(affirming dismissal for failure to comply with CMO requiring factsheets and production of

medical records) (emphasis added); *see also Dzik v. Bayer Corp*., 846 F.3d 211, 216 (7th Cir.

2017) (affirming dismissal with prejudice for failure to comply with CMO); *In re Guidant Corp.*,

496 F.3d at 867 (applying Rule 41(b)(2) to dismiss for failure to comply with CMO regarding

fact sheets); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir.

2006) (same); *In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,

No. 2:14-CV-0523, 2015 WL 12844944, at *2 (D.S.C. Mar. 23, 2015) (same).

The Sixth Circuit has directed courts to weigh a number of factors in ruling on Rule 41(b)

motions: (1) whether failure to comply was a result of willfulness, bad faith, or fault; (2) whether

the adversary was prejudiced by the dismissed conduct; (3) whether the dismissed party was

warned that failure to comply could lead to dismissal; (4) whether less drastic sanctions were

imposed or considered before dismissal; and (5) the public's interest in expeditious resolution of

litigation.  *See, e.g., Schafer v. City of Defiance Police Dept., et al.*, 529 F.3d 731, 737 (6th Cir.

2008); *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999); *Little v. Yeutter*, 984 F.2d

160, 162 (6th Cir. 1993).  Although none of these factors is dispositive, "[p]rior notice to the

party that his failure to cooperate may result in dismissal is important to support the sanction."

*Komaromy v. City of Cleveland*, 232 F.R.D. 590, 592 (N.D. Ohio 2006).

Here, each of the above factors overwhelmingly weighs in favor of dismissal of the Track 1 Plaintiffs' damages claims for failure to comply with the Court's express directives in CMO-1 ¶ 9(1)(iii).  As CMO-1 makes clear, information about MU/MI prescriptions is plainly relevant to Plaintiffs' claims; indeed, it is basic information that Plaintiffs should have obtained ***before*** deciding to file their complaints.  Yet, despite the fact that both their obligations and the consequence of dismissal of their damages claims for failing to comply with CMO-1 have long been clear, Track 1 Plaintiffs have willfully defied this Court's Order.  As a result, Defendants have been materially prejudiced.  Plaintiffs have known since CMO-1 was entered more than 5 months ago that they were required to provide this information, but they have chosen not to do so.  That decision must have consequences.

With only a few months remaining before the close of fact discovery, Defendants have been denied the ability effectively to prepare their defenses to the Track 1 Plaintiffs' claims.  If the Track 1 suits are permitted to proceed in this manner without affording Defendants their fundamental due process rights, any judgment the Plaintiffs might obtain could not be enforced on post-trial motions or appeal, thereby delaying significantly a fair and final adjudication on the merits.  This would defeat the purpose of the bellwether process the Court has put in place, and frustrate the Court's goal of facilitating a prompt resolution of the claims at issue in this MDL.

A.    **Plaintiffs' Refusal To Comply With CMO-1 Was Willful.**

Track 1 Plaintiffs' obligations under Paragraph 9(l)(iii) of CMO-1 are clear, and Plaintiffs' responses to Defendants' efforts to get them to comply with the Order establish that their non-compliance was willful.  *See Steward v. Cty. of Jackson, Tenn.*, 8 F. App'x 294, 296 (6th Cir. 2001) (concluding that a plaintiff's failure to comply with a court's order was willful

and justified dismissal); *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)

("'disobedient conduct not shown to be outside the control of the litigant' is all that is required to

demonstrate willfulness, bad faith, or fault.").  There is no justification.

As noted, CMO-1 required in relevant part:

> **No later than, Monday, July 16, 2018**, each Plaintiff in cases in Track One that alleges money damages based upon unnecessary prescriptions shall identify: (a) the prescriptions that each Plaintiff asserts were medically unnecessary or medically inappropriate, to whom they were written, and whether Plaintiff reimbursed for them; (b) the physicians or healthcare providers who wrote the prescriptions; and (c) Plaintiff's basis for identifying the prescriptions that it asserts are medically unnecessary or medically inappropriate.

CMO-1 ¶ 9(l)(iii) (emphasis added).

Track 1 Plaintiffs' claims are all subject to this requirement because they all "allege[]

money damages based upon unnecessary prescriptions . . ."  *Id.*  Not one of the Track 1 Plaintiffs

will concede that there were no "unnecessary prescriptions" in its jurisdiction, and each seeks

damages (in addition to injunctive relief) that it contends was caused by those prescriptions.  In

particular, Plaintiffs have filed claims sounding in fraud seeking to recover damages based on:

(a) the "false and deceptive marketing of prescription opioids"; and (b) the failure to "identify

suspicious orders of prescription opioids, maintain effective controls against diversion, and halt

suspicious orders."  *Summit* Corrected Sec. Am. Compl. (ECF No. 514) ¶ 9; *accord Cleveland*

Corrected Sec. Am. Compl. (ECF No. 508) ¶ 9; *Cuyahoga* Corrected Sec. Am. Compl. (ECF No.

521) ¶ 9.  This alleged conduct, according to Plaintiffs, led to the issuing and distribution of

MU/MI prescriptions—that is, "illicit or inappropriate prescribing" by prescribers who had

purportedly been misled, and the "selling and distributing [of] far greater quantities of

prescription opioids than . . . could be necessary for legitimate medical uses."  *Id.* ¶¶ 14, 549.

Plaintiffs seek damages for the purported consequences of these unidentified MU/MI

prescriptions.  *Id.* ¶¶ 20-21.

8

But despite the clear import and applicability of this requirement in CMO-1, which Plaintiffs ***never challenged***, none of the Track 1 Plaintiffs have provided the required information.  No Track 1 Plaintiff has identified a single MU/MI prescription of any Manufacturer Defendant's opioid product—nor identified to whom that prescription was written, the physician or healthcare provider who wrote the prescription, or the Plaintiffs' basis for claiming that the prescription was unnecessary, inappropriate, or somehow improper.

Not only have Track 1 Plaintiffs failed to identify any MU/MI prescriptions or the other relevant details required by CMO-1, but they have conceded that their failure was intentional.  *See* Exs. 2-4 (July 16, 2018 letters from each Track 1 Plaintiff).  In their July 16, 2018 letters to Defendants, Track 1 Plaintiffs sought to justify their non-compliance by asserting that CMO No. 1 ¶ 9(l)(iii) "does not apply" to them because they purportedly are "not seeking reimbursement for opioid prescriptions for which [they] paid . . ."  *Id.*  But that claim ignores the plain language of CMO-1, which is expressly not limited to claims for reimbursement of prescription costs. Whether each Track 1 Plaintiff reimbursed for an allegedly MU/MI prescription is merely one of multiple categories of discrete information the Court ordered them to provide.  The Court's Order plainly contemplates that there would be some allegedly MU/MI prescriptions for which Plaintiffs did not reimburse but as to which they nevertheless claim money damages.  *See* CMO-1 ¶ 9(l)(iii) ("Plaintiff in cases in Track One … shall identify . . .  the prescriptions that each Plaintiff asserts were medically unnecessary or medically inappropriate . . . ***and whether Plaintiff reimbursed for them*** . . .") (emphasis added).

The clear and plain meaning of this provision was reinforced by Special Master Cohen in his June 11, 2018 Order, in which the Court reminded Plaintiffs of their obligations under CMO-1 ¶ 9(l)(iii) and warned them of the consequences of ignoring it.  Discovery Ruling No. 1 (ECF

9

No. 606), Ex. 1, at 6 ("A plaintiff who fails to fulfill this requirement: (1) forfeits any claim for money damages based upon unnecessary prescriptions . . .").  There is simply no ambiguity. CMO-1 expressly applies to "each Plaintiff in Track One that alleges money damages based upon unnecessary prescriptions."  Each of the Track 1 Plaintiffs easily meets that description. *See Summit* Corrected Sec. Am. Compl. ¶¶ 9, 14, 20-21, 902, 933-934, 947-948, 970, 972, 995-996, 1038, 1071, 1089, 1107, 1120-1121, 1136; *accord Cleveland* Corrected Sec. Am. Compl. ¶¶ 9, 14, 19-20, 841, 861-862, 892-894, 907-908, 931-932, 951, 960, 980, 998, 1023, 1033, 1043, 1052, 1063, 1070, 1072, 1074, 1100, 1109, 1123-1124; *accord Cuyahoga* Corrected Sec. Am. Compl. ¶¶ 9, 14, 19-20, 932, 962-963, 976-977, 1000-1001, 1030-1031, 1067, 1084, 1092, 1119, 1136, 1138, 1145, 1164.  Plaintiffs' willful non-compliance is inexcusable and merits dismissal of their damages claims.  *See Steward*, 8 F. App'x at 296 (6th Cir. 2001); *see also Henry*, 983 F.2d at 948 (9th Cir. 1993).

Plaintiffs cannot rewrite this provision by deleting the actual terms the Court used in CMO-1 – "money damages based upon unnecessary prescriptions" – and replacing them with Plaintiffs' preferred phrase – "money damages incurred in the payment of the *cost of opioid prescriptions.*"  Yet that is the import of the position Plaintiffs took when pressed to comply with the Court's Order.  (Pls.' July 31, 2018 Letter, Ex. 6).  Remarkably, in the briefing on Defendants' motion to compel discovery responses with respect to MU/MI prescriptions, Plaintiffs varyingly and inconsistently claimed that ***no*** particular prescription was inappropriate (and thus they have nothing to disclose) while at the same time hypothesizing that ***every***

prescription might have been (because the alleged misrepresentation purportedly "affected" every prescription).

Plaintiffs certainly did not articulate those strained and untenable positions when CMO-1 was entered—nor did they object to this provision of the Court's Order despite ample opportunity to do so. Even now, Plaintiffs have refused to say expressly that none of the prescriptions for the FDA-approved medications at issue would have been written but for the alleged fraud—or that no patient who received those medications benefitted from them. Thus, Plaintiffs' position leaves Defendants with the exact same unanswered question that they had when Plaintiffs first filed their complaints: which prescriptions are actually at issue? The Court required the Track 1 Plaintiffs to answer this basic question by July 16, 2018—yet, with just a few months left in discovery, Defendants still do not have an answer.[4]

### B. Plaintiffs' Non-Compliance With CMO-1 Has Severely Prejudiced Defendants' Ability To Prepare For Trial And Defend Against Plaintiffs' Claims.

Regardless of Plaintiffs' carefully-worded representations about their intent to rely on a theory of "aggregate proof," identifying the alleged MU/MI prescriptions on which Track 1 Plaintiffs base those claims is critically important to the Defendants' ability to defend against Plaintiffs' claims of causation and damages. As a result, Defendants have been prejudiced by

---

[4]     It is does not matter what label Plaintiffs wish to apply to these prescriptions. At oral argument on Defendants' motion to compel, Plaintiffs argued that they do not use the terms "medically unnecessary" or "medically inappropriate" in their complaints, and do not know what "medically necessary" means because "it's not our term." ECF No. 1011 at 49:24-50:13. Special Master Cohen saw through that argument when he issued Discovery Order No. 5 requiring each Track 1 Plaintiff to identify at least 500 such prescriptions, an Order which the Court affirmed as amended. And, during the scheduling negotiations required by Special Master Cohen's Order, Plaintiffs represented that they could comply Discovery Order No. 5 within weeks, by November 2nd. *See* Ex. 8 (Oct. 11, 2018 email from L. Singer). In any event, all of Plaintiffs' claims are founded on the assertion that some prescriptions were written that should not have been written. CMO-1 required them to identify those prescriptions.

Plaintiff's non-compliance with CMO-1 ¶ 9(l)(iii).  *See Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) (holding that the defendant was prejudiced by the plaintiff's failure to cooperate in discovery because the defendant "waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide").

The Track 1 Plaintiffs' claims require a showing of causation.  *See Summit* Joint MTD, ECF No. 499-1, Part II(B), III(B), VII(B), & X; s*ee also City of Cincinnati v. Deutsche Bank Nat'l Tr.*, 863 F.3d 474, 480 (6th Cir. 2017) ("Proximate cause requires some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered . . . ***That is particularly true for the City's attenuated theories of damage***: decreased tax revenue, increased police and fire expenditures, and increased administrative costs.  When tied only to a general 'policy' of non-conformance, these damages are difficult to connect to Wells Fargo's actions and nearly impossible to disaggregate from other potential causes of these costs.") (emphasis added) (internal quotation marks and citations omitted).  Identifying the MU/MI prescriptions at issue is required even if Track 1 Plaintiffs attempt to rely on statistical sampling and regression analyses to prove their claims.  *See United States ex rel King v. Solvay Pharm., Inc.,* 871 F.3d 318, 329 (5th Cir. 2017); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 97 (2d Cir. 2015); *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 135 (2d Cir. 2010); *United States ex rel Wall v. Vista Hospice Care, Inc.*, No. 3:07-cv-00604-M, 2016 WL 3449833, at *12-13 (N.D. Tex. June 6, 2016).  Such aggregation models are no substitute for Plaintiffs' required showing of but-for and proximate causation, and they do not provide Defendants with the facts to which Defendants are entitled in order to challenge Plaintiffs' claims.

Indeed, Track 1 Plaintiffs must identify alleged MU/MI prescriptions to establish any claim for damages.  Opioids are FDA-approved medicines, and cannot lawfully be obtained without a valid prescription.  As a matter of law and logic, Plaintiffs cannot establish a causal connection between the Manufacturer Defendants' alleged conduct and their alleged damages unless they can show that the Defendants' conduct led to the prescribing of MU/MI prescriptions.  This is a necessary first link in Plaintiffs' alleged theory of causation, though it is far from sufficient.  Indeed, Plaintiffs will also face additional (and insurmountable) hurdles to establishing the many other links in the causation chain leading to their alleged harm.  The fact that Plaintiffs' claims are indirect and many steps removed from the alleged misconduct certainly does not relieve Plaintiffs of the burden of proving the first link in the causal chain.

Plaintiffs' failure to provide the information in a timely manner as required by CMO-1 has left Defendants with insufficient time under the Court's schedule to conduct the type of discovery that they need to defend themselves.[5]

### C. Plaintiffs Knew And Were Warned That Failure To Identify MU/MI Prescriptions As Required By CMO-1 Would Result In Dismissal Of All Claims For Damages.

Importantly, the Track 1 Plaintiffs knew and were expressly warned that the failure to identify MU/MI prescriptions as required by CMO-1 would result in dismissal of their damages

---

[5] This prejudice is not just hypothetical.  Without knowing which prescriptions the Track 1 Plaintiffs assert were MU/MI and which physicians wrote them, the Manufacturer Defendants cannot investigate what information those physicians relied on in writing the prescriptions, what (if any) statements from Manufacturer Defendants reached those physicians, the particular circumstances that led to the patient receiving the prescription (which might well reveal that the patient had a critical need for the medication and that her doctor prescribed it appropriately), or the damages (if any) that flowed from these prescriptions.  The answers to all of these questions would likely require additional third party discovery, which would be impossible to do in the time remaining under the Court's schedule even if Plaintiffs were now to identify the MU/MI prescriptions that serve as the basis for their claims.

claims.  *See* CMO-1 ¶ 9(l)(iii); Discovery Ruling No. 1 (ECF No. 606) at 6 (filed June, 11 2018).

This advance notice of the consequences of non-compliance strongly supports dismissal.  *See*

*Komaromy v. City of Cleveland*, 232 F.R.D. 590, 592 (N.D. Ohio 2006) ("Prior notice to the

party that his failure to cooperate may result in dismissal is important to support the sanction.")

(citing *Vinci v. Consolidated Rail Corp.*, 927 F.2d 287, 288 (6th Cir. 1991)); *Steward v. City of

Jackson, Tenn.*, 8 F. App'x 294, 296 (6th Cir. 2001) ("Prior notice, or lack thereof, is the key

consideration when determining whether a district court abuses its discretion in dismissing a case

for failure to comply with a court order.").

On June 11, 2018, in the context of addressing a discovery dispute over Plaintiffs'

objections to Manufacturer Defendants' first set of requests for production (which sought, among

other things, further information related to Plaintiffs' allegations of MU/MI prescriptions),

Special Master Cohen reminded Track 1 Plaintiffs of the then-upcoming deadline and the

consequences of failing to comply with CMO-1:

> [T]he Special Master notes that ¶9.l.iii of CMO-1 sets out the following
> requirement: each Plaintiff in a Track One case "that alleges money damages based
> upon unnecessary prescriptions shall identify: (a) the prescriptions that each
> Plaintiff asserts were medically unnecessary or medically inappropriate, to whom
> they were written, and whether Plaintiff reimbursed for them; (b) the physicians or
> healthcare providers who wrote the prescriptions; and (c) Plaintiff's basis for
> identifying the prescriptions that it asserts are medically unnecessary or medically
> inappropriate." ***This requirement remains in place. A plaintiff who fails to fulfill
> this requirement***: (1) ***forfeits any claim for money damages based upon
> unnecessary prescriptions***; and (2) may face argument that the lack of this evidence
> also breaks a necessary link in the chain of causation for some or all claims.

Discovery Ruling No. 1 (ECF No. 606), Ex. 1, at 6 (emphasis added).  Just as they did not

challenge CMO-1 when it was issued, Plaintiffs did not appeal Discovery Ruling No. 1.  Nor did

they claim that they could not comply with, or did not understand, CMO-1's requirements.

Perhaps Plaintiffs did not believe the Court would follow through with this admonition.

Regardless, Special Master Cohen's warning that *failure to comply with CMO-1 by the July 16 deadline would result in dismissal of their damages claims* could not have been more clear.

> ### D.      The Requested Relief Is More Than Justified Under The Circumstances.

The relief Defendants request here – an order dismissing or striking the Track 1 Plaintiffs' damages claims, while leaving intact any claim Plaintiffs have for prospective injunctive relief—is more than justified.  No lesser alternative measure need be considered. Indeed, the Court would be justified in dismissing Plaintiffs' complaints in their entirety.  *See, e.g., In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006) (explaining that "explicit discussion of alternatives is not necessary for a dismissal order to be upheld" and that "[w]arning that failure to obey a court order will result in dismissal can itself meet the 'consideration of alternatives' requirement").

Courts routinely grant motions to dismiss for failure to comply with case management orders where, as here, the plaintiffs were expressly warned that non-compliance would result in dismissal.  *See Nwatulegwu*, 668 F. App'x at 175 (applying principle); *In re Guidant Corp.*, 496 F.3d at 867 (same); *see also Funk v. Comm'r of Soc. Sec.*, No. 10-CV-14865, 2011 WL 2470999, at *1 (E.D. Mich. June 1, 2011) (affirming dismissal of claims where "Plaintiff was specifically warned that the case may be dismissed should she fail to file a motion and brief by May 9, 2011 . . ." as "Defendant should not be further prejudiced by Plaintiff's failure to pursue his claims . . . " and noting that "this outcome is consistent with the prevailing practice throughout this circuit"), *report and recom. adopted*, No. 10-14865, 2011 WL 2470983 (E.D. Mich. June 22, 2011).

The Track 1 Plaintiffs concede that their failure to comply with CMO-1 was intentional and they have made no attempt to cure it.  *See* Exs. 2-4.  Further, as described above, there is no question that Plaintiffs were warned that their failure to comply would result in dismissal and chose to ignore that warning rather than comply or appeal.  Despite multiple subsequent requests

15

by Manufacturer Defendants to produce this Court-required information, Track 1 Plaintiffs have continued to refuse to comply with their obligations. *See* Man. Defs.' July 27, 2018 Letter, Ex. 5; Pls.' July 31, 2018 Letter, Ex. 6. Accordingly, this factor also weighs heavily in favor of dismissing the Track 1 Plaintiffs' damages claims.

### E. Enforcement Of The CMO And Dismissal Of Plaintiffs' Damages Claims Serves The Public's Interest.

Dismissal is also justified by the final factor considered by the Sixth Circuit—it will serve the public's interest in expeditious resolution of this litigation. Indeed, that factor is particularly compelling in this multidistrict litigation.

First, it will allow the Court and the parties to focus on Plaintiffs' claims for prospective injunctive relief with respect to an ongoing public health crisis – getting to an answer, one way or the other, as to who (if any defendant) is responsible for doing what to address that crisis at the earliest practicable point. Second, and relatedly, it will provide an important first step in streamlining for trial what is an otherwise unmanageable collection of claims and parties. As this Court recognized during its August 2, 2018 conference, Plaintiffs are "obviously not going to try all the theories in a 200-page complaint" and will be required to "streamline this case." Aug. 2, 2018 Status Conf. Tr., Ex. 7, at 27. Dismissal of the Track 1 Plaintiffs' damages claims would clearly help in that regard; particularly given the Court's stated goal of limiting the trial to 3 weeks. *Id.*

## III. CONCLUSION

For all the foregoing reasons, the Manufacturer Defendants respectfully request that the Court enforce CMO-1 and dismiss and/or strike the Track 1 Plaintiffs' claims for damages in each of their complaints.

16

Dated:  November 1, 2018          Respectfully submitted,

/s/ Steven A. Reed

Steven A. Reed
Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Brian Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL 33131
Telephone: (305) 415-3000
Facsimile: (305) 415-3001
brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals U.S.A., Inc.,
Cephalon, Inc., Watson Laboratories, Inc., Actavis
LLC, and Actavis Pharma, Inc.*

/s/ Charles C. Lifland (consent)

Charles C. Lifland
Sabrina Heron Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
clifland@omm.com
sstrong@omm.com

*Attorney for Defendants Janssen
Pharmaceuticals, Inc., Johnson &
Johnson, Janssen Pharmaceutica, Inc.
n/k/a Janssen Pharmaceuticals, Inc., and*

17

*Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

/s/ Mark S. Cheffo (consent)

Sheila L. Birnbaum
Mark S. Cheffo
Hayden A. Coleman
DECHERT
Three Bryant Park
1095 Avenue of the Americas
New York, NY
Telephone: (212) 698-3500
Fax: (212) 698-3599
sheila.birnbaum@dechert.com
mark.cheffo@dechert.com
hayden.colemen@dechert.com

*Counsel for Defendants Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company*

/s/ Jonathan L. Stern (consent)

Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Phone: 202-942-5000
Fax: 202-942-5999
Email: jonathan.stern@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Phone: 213-243-4000
Fax: 213-243-4199
Email: sean.morris@arnoldporter.com

*Attorneys for Endo Health Solutions Inc. and Endo Pharmaceuticals Inc., as well as Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc.*

18

/s/ Donna M. Welch (consent)

Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North Lasalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com

*Counsel for Allergan Finance LLC f/k/a Actavis,
Inc. f/k/a Watson Pharmaceuticals, Inc.*

/s/ J. Matthew Donohue (consent)

J. Matthew Donohue
Joseph L. Franco
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300
matt.donohue@hklaw.com
joe.franco@hklaw.com

Nicholas A. Sarokhanian
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
Telephone: 214.964.9500
nicholas.sarokhanian@hklaw.com

*Counsel for Insys Therapeutics, Inc.*

/s/ Brien T. O'Connor (consent)

Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
(617) 235-4650
Brien.O'Connor@ropesgray.com

19

Andrew.O'Connor@ropesgray.com

*Attorneys for Defendant Mallinckrodt LLC and SpecGX LLC*

/s/ Daniel G. Jarcho (consent)

Daniel G. Jarcho
ALSTON & BIRD LLP
950 F Street, N.W.
Washington, D.C. 200004-1404
(202) 239-3254
Daniel.jarcho@alston.com

*Counsel for Noramco, Inc.*

## LOCAL RULE 7.1(f) CERTIFICATION

I certify that this case has been designated as a "complex case" under CMO One § 2(h) [ECF No. 232], and that this memorandum adheres to the page limitations for complex cases set forth in Local Rule 7.1(f).

Dated: November 1, 2018

/s/ Steven A. Reed

Steven A. Reed

MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
steven.reed@morganlewis.com

21