**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION

This document relates to:

*The Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corporation et al.*

Case No. 18-op-45749

**MDL No. 2804**
**Case No. 17-md-2804**
**Judge Dan Aaron Polster**

**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS CVS PHARMACY, INC., CVS INDIANA, L.L.C., WALMART INC., WALGREEN CO., AND WALGREEN ARIZONA DRUG CO.**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiff Lacks Standing to Sue the Moving Defendants ........ 1

II. Plaintiff States No Claims Against the Moving Defendants as Pharmacies ........ 2

III. Plaintiff Cannot Establish the Elements of Public Nuisance (Counts 3-5) ........ 3

A. Plaintiff cannot state a claim under federal common law ........ 3

B. The Complaint fails to plausibly allege that any of the Moving Defendants committed any act that unreasonably interfered with a public right ........ 5

C. Plaintiff cannot establish proximate cause ........ 5

IV. Plaintiff's Negligence Claim is Legally Deficient (Count 6) ........ 6

A. The Moving Defendants do not owe a duty to Plaintiff ........ 6

B. Plaintiff fails to state a claim for negligent misrepresentation ........ 7

V. Plaintiff Fails to State a Claim for Unjust Enrichment (Count 8) ........ 10

VI. Plaintiff Fails to State a Civil Conspiracy Claim (Count 9) ........ 11

VII. Plaintiff Fails to State a Consumer Protection Claim (Count 10) ........ 13

VIII. The Free Public Services Doctrine Bars Plaintiff's Claims ........ 15

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
458 U.S. 592 (1982)....................1

*American Electric Power Co. v. Connecticut*,
564 U.S. 410 (2011)....................3, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................... *passim*

*Bassett v. Lamantia*,
417 P.3d 299 (Mont. 2018)....................7

*Bishop v. Wood*,
426 U.S. 341 (1976)....................16

*California Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508 (1972)....................13

*City of Flagstaff v. Atchison, Topeka & Santa Fe Railway Co.*,
719 F.2d 322 (9th Cir. 1983)....................16, 17

*City of Miami v. Bank of America Corp.*,
800 F.3d 1262 (11th Cir. 2015),
*vacated and remanded on other grounds*, 137 S. Ct. 1296 (2017)....................11

*Combs v. International Ins. Co.*,
354 F.3d 568 (6th Cir. 2004)....................11, 16, 17

*Dukes v. City of Missoula*,
119 P.3d 61 (Mont. 2005)....................14

*Elk Grove Unified Sch. Dist. v. Newdow*,
542 U.S. 1 (2004)....................16

*Hatch v. State Dept. of Highways*,
887 P.2d 729 (Mont. 1994)....................6

*In re Asbestos Sch. Litig.*,
46 F.3d 1284 (3d Cir. 1994)....................13

*In re Packaged Seafood Prods. Antitrust Litig.*,
No. 15-MD-2670, 2018 WL 4222677 (S.D. Cal. Sept. 5, 2018)....................15

*In re Sclater*
40 B.R. 594 (Bankr. E.D. Mich. 1984)....................15

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
No. MDL 551, 1988 WL 158948 (W.D. Wash. July 14, 1988) ....7

*In re Welding Fume Prods. Liab. Litig.*,
526 F. Supp. 2d 775 (N.D. Ohio 2007)....12

*Kiger v. State*,
802 P.2d 1248 (Mont. 1990)....6

*Louisiana v. Borden, Inc.*,
No. 96-3640, 1995 WL 59548 (E.D. La. Feb. 10, 1995) ....15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....2

*Minnesota v. Ri-Mel, Inc.*,
417 N.W.2d 102 (Minn. Ct. App. 1987)....15

*Morrow v. Bank of America, N.A.*,
324 P.3d 1167 (Mont. 2014)....8

*Native Village of Kivalina v. ExxonMobil Corp.*,
696 F.3d 849 (9th Cir. 2012) ....3

*New York v. Mid Hudson Med. Group, P.C.*,
877 F. Supp. 143 (S.D.N.Y. 1995)....15

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir. 2008) ....3

*White v. Smith & Wesson*,
97 F. Supp. 2d 816 (N.D. Ohio 2000)....10, 11

*Willden v. Neumann*,
189 P.3d 610 (Mont. 2008) ....6

**CONSTITUTIONAL AND STATUTORY AUTHORITIES**

U.S. Constitution Article III....1, 2, 14

Montana Unfair Trade Practices and Consumer Protection Act....13, 14, 15
Mont. Code § 30-14-102....14
Mont. Code § 30-14-111....14
Mont. Code § 30-14-121....14
Mont. Code § 30-14-133....14

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 .......... 8, 9

Fed. R. Civ. P. 9 .......... 8, 14

## INTRODUCTION

Plaintiff's opposition to the Moving Defendants' motion to dismiss cannot overcome the many fatal deficiencies in its Complaint. For the reasons offered in the Moving Defendants' opening brief and the additional reasons set forth below, Plaintiff's suit should be dismissed.[1]

## ARGUMENT

### I. Plaintiff Lacks Standing to Sue the Moving Defendants.

Plaintiff asserts Article III standing on the ground that, "[b]ecause of [Plaintiff's] status as a sovereign tribal nation, it can assert claims in a *parens patriae* capacity." Corr. Opp. Br. 5.[2] But "to have such standing the [plaintiff] must assert an injury to what has been characterized as a 'quasi-sovereign' interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). While Plaintiff claims that it seeks to advance its asserted quasi-sovereign interest in the well-being of its residents, Corr. Opp. Br. 7-8, it primarily seeks to recover for "direct payments" it has allegedly made "from the public coffers to address the opioid crisis," *id.* at 9. Plaintiff's monetary claims based on its own spending in fact implicate its own *proprietary* interests, which are distinct from its quasi-sovereign interests and are not a basis for *parens patriae* standing. *See Alfred L. Snapp*, 458 U.S. at 601 (holding that a state's "proprietary interests" are

---

[1] The Moving Defendants incorporate the arguments submitted in the other Defendants' briefs in this matter, as well as the Defendants' briefs in support of the motions to dismiss the *Summit County* and *City of Chicago* complaints. *See* Opening Br. 1 n.1. The Moving Defendants also incorporate the arguments submitted in Defendants' briefs objecting to the Magistrate Judge's Report and Recommendation on the *Summit County* motions to dismiss.

[2] Plaintiff filed an out-of-time "Corrected" version of its omnibus opposition brief on October 2, four days after the deadline. *See* ECF No. 1017 (Case No. 1:17-md-2804). Plaintiff did not seek leave of the Court or consent of the other parties for the untimely submission. As discussed below, this Court should therefore disregard the material that Plaintiff added in the untimely corrected brief (which is two pages longer than the timely-filed version).

Nonetheless, this Reply cites to the corrected version of the opposition brief for the convenience of the Court. If the Court so requests, the Moving Defendants would provide parallel citations to the original version of the opposition brief.

"nonsovereign interests" that must be distinguished from the interests that may support *parens patriae* standing).

Rather, Plaintiff's monetary claims are subject to the ordinary Article III standing analysis set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). And under that analysis, Plaintiff fares no better than municipal plaintiffs such as Summit County. As is the case with those plaintiffs, even if Plaintiff's alleged costs are traceable to opioid manufacturers and marketers (or others directly responsible for the opioid crisis), they are not fairly traceable to the Moving Defendants; and in any event, these costs cannot confer standing because they are derivative of harms to third parties. *See* Moving Defendants' *Summit County* Reply 2-4.

## II. Plaintiff States No Claims Against the Moving Defendants as Pharmacies.

The Moving Defendants' opening brief noted that vague allegations in the Complaint might be read to assert claims against them as dispensing pharmacies rather than distributors and moved to dismiss any such allegations as "manifestly insufficient to state a claim" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Opening Br. 3-4. Plaintiff concedes that it "does not allege violations of statutes or regulations applicable specifically to retailers who sell opioids." Corr. Opp. Br. 68.

Yet by contrast to other plaintiffs that have filed materially identical complaints in this litigation, Plaintiff goes on to assert that the Moving Defendants "are liable for their role in the supply chain as *retailers* under the same theories as apply to their role as distributors." *Id.* at 69. As the Moving Defendants demonstrated in their opening brief, however, the Complaint does not adequately plead any such claim. Opening Br. 4. In support of its argument to the contrary, Plaintiff points to just three paragraphs of its 1124-paragraph Complaint that fall well short of stating a claim against the Moving Defendants in their role as retail pharmacies, as distinct from distributors. Corr. Opp. Br. 69 (citing Compl. ¶¶ 494, 541, 591). The first simply alleges that

some distributors, "[i]n addition to the actual distribution of pharmaceuticals … offer their pharmacy, or dispensing, customers a broad range of added services" and that "[a]s a result of their acquisition of a diverse assortment of related businesses within the pharmaceutical industry, … Distributor Defendants have a unique insight into the ordering patterns and activities of their dispensing customers." Compl. ¶ 494. The second, as it pertains to pharmacies, simply says that "manufacturers and distributors regularly visit pharmacies and doctors to promote and provide their products and services," allegedly giving these manufacturers and distributors insight into pharmacies' activities. Compl. ¶ 541. And the third paragraph makes only the unremarkable point that pharmacies are subject to certain obligations under the Controlled Substances Act. Compl. ¶ 591. But these are mere "[c]onclusory allegations or legal conclusions masquerading as factual allegations" that "will not suffice" after *Twombly* and *Iqbal*. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008); *see also* Opening Br. 4.

## III. Plaintiff Cannot Establish the Elements of Public Nuisance (Counts 3-5).

### A. Plaintiff cannot state a claim under federal common law.

In their opening brief, the Moving Defendants explained that Plaintiff cannot state a claim for public nuisance under federal common law because any such claim has been displaced by the Controlled Substances Act (CSA). Opening Br. 4-5. "The test for whether congressional legislation excludes the declaration of federal common law is simply whether the statute 'speaks directly to the question' at issue." *American Electric Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)). The CSA speaks directly to the questions at issue in this case—questions concerning the appropriate conduct of the distribution of controlled substances such as prescription drugs—and so "there is no gap for federal common law to fill." *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 856 (9th Cir. 2012). Plaintiff's arguments to the contrary fail.

Plaintiff first argues that the CSA does not displace federal common law because, in Plaintiff's view, the CSA is not an adequate law for regulating controlled substances. Corr. Opp. Br. 73 ("If it were, we would probably not find ourselves where we are now"). But the test is simply whether the legislation speaks to an issue, not whether it addresses that issue to a particular plaintiff's satisfaction.[3]

Plaintiff next makes the irrelevant point that the CSA does not *preempt* all *state* regulation of controlled substances. Corr. Opp. Br. 73. The test for federal preemption of state law is entirely different from, and much stricter than, the test for legislative displacement of federal common law. *See American Electric Power*, 564 U.S. at 423 ("[l]egislative displacement of federal common law does not require the 'same sort of evidence of a clear and manifest congressional purpose' demanded for preemption of state law" (quoting *City of Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981))).

Finally, Plaintiff argues that the CSA does not displace federal common law because the statute does not provide a private right of action. Corr. Opp. Br. 75-76. But the Supreme Court's test for legislative displacement of federal common law does not require Congress to provide a private right of action—a decision which properly belongs to Congress, not to the federal courts. Rather, the Supreme Court simply asks whether Congress has spoken to the question at issue. *American Electric Power*, 564 U.S. at 424; *see also* Opening Br. 4-5.

---

[3] Plaintiff also asserts that "the CSA does not at all speak to the reckless and national marketing scheme of the type Defendants engaged in here." Corr. Opp. Br. 73; *see also id.* at 75. But Plaintiff does not allege that the Moving Defendants—as distinct from the Marketing Defendants (that is, the manufacturers of prescription opioids)—engaged in any such marketing.

### B. The Complaint fails to plausibly allege that any of the Moving Defendants committed any act that unreasonably interfered with a public right.

As the Moving Defendants' opening brief explained, "the Complaint never identifies any specific act by any of the Moving Defendants … that violated any law or interfered with any public right," as necessary to support any of Plaintiff's nuisance claims, but instead offers only "the kind of cursory assertions of liability that are patently insufficient to state a claim" under *Iqbal*, 556 U.S. at 678. Opening Br. 6. In response, Plaintiff cites some of the Complaint's insufficient allegations, without explaining how they satisfy *Iqbal*. Corr. Opp. Br. 77-78. And it does Plaintiff no good to insist that the Moving Defendants' "argument would require the Court to ignore all the factual allegations in Plaintiff's three hundred page First Amended Complaint detailing each Defendant's violations of a myriad of state and federal laws," when Plaintiff then points only to allegations against Manufacturer Defendants, McKesson, and Cardinal—not any of the Moving Defendants. Corr. Opp. Br. 80. Indeed, the overwhelming majority of Plaintiff's bulky Complaint is focused on defendants other than the Moving Defendants. Plaintiff's few and conclusory assertions against the Moving Defendants are "devoid" of the "further factual enhancement" required by *Iqbal* and cannot support a claim. 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Summit County* Reply 15.

### C. Plaintiff cannot establish proximate cause.

As the Moving Defendants explained in their opening brief, the Complaint alleges so many intervening acts by third parties—both criminal and otherwise—that any connection between the Moving Defendants' alleged actions and the alleged harm to Plaintiff is so remote and attenuated as to vitiate proximate causation as a matter of law. *See* Opening Br. 6-8; Moving Defendants' *Summit County* Reply 10-12; Moving Defendants' *City of Chicago* Reply 3. Plaintiff responds that the one and only criterion for proximate causation under Montana law is "foreseeability" and

that the intervening acts were all so foreseeable as to render the remoteness of the connection irrelevant to the analysis. Corr. Opp. Br. 36-44. But Montana law is clear that "proximate cause is an act or omission which, 'in a natural and continuous sequence, *unbroken by any new, independent cause*, produces injury.'" *Hatch v. State Dept. of Highways*, 887 P.2d 729, 732 (Mont. 1994) (quoting *Bickler v. Racquet Club Heights Assoc.*, 850 P.2d 967, 970 (Mont. 1993)) (emphasis added). Plaintiff's Complaint does not plausibly allege an unbroken connection between any alleged action of any one of the Moving Defendants and the sweeping, generalized public harms that Plaintiff alleges. *See* Opening Br. 7. "In this case there are too many 'what ifs' that are superseding events that break the chain of causation." *Kiger v. State*, 802 P.2d 1248, 1251 (Mont. 1990).

**IV. Plaintiff's Negligence Claim is Legally Deficient (Count 6).**

Plaintiff's negligence claim fails because, as discussed in Part III.C above, Plaintiff has failed to adequately allege proximate cause. *See also* Opening Br. 8-9. The claim also fails for the independently sufficient reason that the Moving Defendants do not owe any relevant duty to Plaintiff. And Plaintiff's negligent misrepresentation claim fails on numerous grounds.

**A. The Moving Defendants do not owe a duty to Plaintiff.**

Plaintiff concedes that the question of the existence of a "[d]uty is a legal issue" to be decided by this Court. Corr. Opp. Br. 90; *see also Willden v. Neumann*, 189 P.3d 610, 613 (Mont. 2008) ("The threshold question of whether the defendant owed a legal duty to the plaintiff is a question of law reserved for the district court."). In their opening brief, the Moving Defendants explained why, whatever the Moving Defendants' separate statutory or regulatory obligations, they have no general common law duty *to Plaintiff* specifically to detect and warn of diversion of prescription medication and to monitor and report suspicious activity. Opening Br. 9; *see also*

Moving Defendants' *Summit County* Brief (Part IV.A.2). Plaintiff identifies no Montana case law imposing such a duty or any analogously far-reaching duty—let alone a duty that would run to tribal entities indirectly injured by harms caused by third parties' misuse of diverted pharmaceuticals. *See also* Moving Defendants' *Summit County* Reply (Part IV.A); Moving Defendants' *City of Chicago* Reply (Part IV.A); Major Distributors' *City of Chicago* Reply (Part II).

While the Complaint relies heavily on state and federal controlled substances laws, Plaintiff correctly concedes that those laws do not create a cause of action. Corr. Opp. Br. 90-91 ("the Tribe has not pleaded that federal or state laws or regulations create a private right of action"); *id.* at 91 ("Plaintiff is not seeking to enforce the statutes or regulations"). Instead, Plaintiff merely argues that the controlled substances laws "define the standard of care applicable under common law negligence." *Id.* Even if that were correct, a standard of care is not a duty. *See, e.g.*, *Bassett v. Lamantia*, 417 P.3d 299, 310 (Mont. 2018) (distinguishing between the question of whether a duty is owed and the logically subsequent question of the standard of care); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, No. MDL 551, 1988 WL 158948, at *21 (W.D. Wash. July 14, 1988) ("the applicable standard of care does not affect whether or not a duty is owed … but rather comes into the analysis only after it is determined that there is a duty"). Rather, the contours of the standard of care become relevant only when there is already a common law or statutory duty owed to Plaintiff—which is not the case here. Finally, even if the Moving Defendants did owe Plaintiff a duty, Plaintiff has failed to adequately allege that the Moving Defendants in any way breached their ostensible duties. *See also* Opening Br. (Part III.B).

**B. Plaintiff fails to state a claim for negligent misrepresentation.**

The Moving Defendants' opening brief set forth the elements of negligent misrepresentation under Montana law and explained that Plaintiff fails to adequately allege (a) any

supposed representations (much less *mis*representations) by the Moving Defendants; (b) that any of the Moving Defendants intended to induce Plaintiff to rely on any such unidentified representations; (c) that Plaintiff in fact relied on such representations in any way; or (d) that Plaintiff incurred loss as a result of its reliance on such representations. Opening Br. 11-12. In response, Plaintiff principally contends that its negligent misrepresentation claim is governed only by Federal Rule of Civil Procedure 8(a)(2) rather than Rule 9(b)'s heightened pleading standard for allegations of fraud. Corr. Opp. Br. 105-07. But the claim must be dismissed even under Rule 8 and *Iqbal*, resting as it does only on the most generic boilerplate legal conclusions. *See also* Opening Br. 11.

The allegations to which Plaintiff points on the element of misrepresentation—the element with respect to which Plaintiff's Complaint has the most to say—are plainly insufficient to state a claim against the Moving Defendants. *See* Corr. Opp. Br. 108-09 (citing Compl. ¶¶ 574-85, 616, 726, 799-827). Paragraphs 574-85 allege that various statements were made by McKesson, Cardinal, AmerisourceBergen, Mallinckrodt, and Purdue, but they say nothing about any of the Moving Defendants. Compl. ¶¶ 574-85. Plaintiff cites ¶ 616 for its allegation that, as part of a settlement, CVS "acknowledged that its retail pharmacies had a responsibility to dispense only those prescriptions that were issued based on legitimate medical need." *See* Corr. Opp. Br. 108; Compl. ¶ 616. But this is a statement of law rather than a factual statement, and at any rate Plaintiff does not suggest that it was a misrepresentation of any kind (presumably Plaintiff considers it to be correct)—and a true statement obviously cannot be a negligent misrepresentation. *See Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1180 (Mont. 2014) (a plaintiff claiming negligent misrepresentation must identify "a representation as to a *past* or *existing* material fact," not a matter of law, and "the representation must have been untrue"). Paragraph 726 asserts that "Defendants

also concealed from Plaintiff the existence of Plaintiff's claims by hiding their lack of cooperation with law enforcement and affirmatively seeking to convince the public that their legal duties to report suspicious sales had been satisfied through public assurances that they were working to curb the opioid epidemic." Compl. ¶ 726. Even setting aside the impermissible group pleading, *Iqbal* makes clear that such naked assertions devoid of further factual enhancement do not suffice under Rule 8(a)(2). *See* 556 U.S. at 678. Finally, Paragraphs 799-827 pertain only to the "RICO Supply Chain Defendants," which Plaintiff specifically defines to exclude the Moving Defendants. *See* Compl. ¶ 799.

Even if Plaintiff had adequately alleged that the Moving Defendants made misrepresentations, Plaintiff does not come close to alleging that it relied on those representations to its detriment. Plaintiff's only allegations with respect to the element of reliance are as follows:

- "Plaintiff, Plaintiff's agents, Plaintiff's Community, the public, physicians and persons on whom Plaintiff and its agents relied, did in fact rightfully, reasonably, and justifiably rely on Defendants' representations and/or concealments, both directly and indirectly. As the Defendants knew or should have known Plaintiff was directly and proximately injured as a result of this reliance, Plaintiff's injuries were directly and proximately caused by this reliance."
- "Plaintiff's reliance on Defendants' misrepresentations caused Plaintiff's pecuniary losses, as outlined above."
- "As a result of these misrepresentations and/or omissions, Plaintiff proceeded under the misapprehension that the opioid crisis was simply a result of conduct by persons other than Defendants. As a consequence, these Defendants prevented Plaintiff from a more timely and effective response to the opioid crisis."

Compl. ¶¶ 1044-46. These allegations are textbook examples of conclusory boilerplate. Conspicuously absent from the conclusory assertions is any description of *how* Plaintiff allegedly relied on the supposed misrepresentations—that is, how would Plaintiff would have behaved differently if not for the alleged misrepresentations—and how that reliance is supposed to have caused Plaintiff's alleged losses. Plaintiff does not even plausibly allege that it was *aware* of any of the supposed misstatements. In short, Plaintiff fails to adequately plead most of the elements of negligent misrepresentation against the Moving Defendants, and its claim must be dismissed.

## V. Plaintiff Fails to State a Claim for Unjust Enrichment (Count 8).

The Moving Defendants' opening brief explained that Plaintiff fails to allege that the Moving Defendants received any benefit, as required to state a claim for unjust enrichment under Montana law. Opening Br. 12-13. In response, Plaintiff stakes its unjust enrichment claim on the far-reaching proposition that a plaintiff confers a benefit on a defendant and may sue for disgorgement whenever the plaintiff pays for "negative externalities" allegedly created by the defendant's business, even though those payments do not enrich the defendant. Corr. Opp. Br. 109-12. Plaintiff offers no authority for this proposition, which directly conflicts with Plaintiff's own acknowledgement that "[u]nder Montana law, '[u]njust enrichment … requires proof that a party unjustly gained something of value.'" *Id.* at 109 (quoting *Associated Management Services, Inc. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018)). Plaintiff cannot point to any thing of value that the Moving Defendants gained as a result of the social spending in which Plaintiff allegedly engaged to help third parties.

Plaintiff also incorporates the arguments of the *Summit County* plaintiffs. *See* Corr. Opp. Br. 109-10 & n.56. Those plaintiffs expressly relied on a district court's decision purporting to apply *Ohio* law, *White v. Smith & Wesson*, 97 F. Supp. 2d 816, 829 (N.D. Ohio 2000). *White*'s suggestion that paying for the defendant's externalities confers a benefit on the defendant was

unaccompanied by any citation and finds no support in the decisions of the Ohio courts. *See also City of Miami v. Bank of America Corp.*, 800 F.3d 1262, 1288 (11th Cir. 2015) (criticizing *White*'s unjust enrichment analysis), *vacated and remanded on other grounds*, 137 S. Ct. 1296 (2017). But even assuming *arguendo* that *White* correctly stated the law of Ohio, Plaintiff offers no authority suggesting that Montana has adopted *White*. Just the contrary, as discussed above, Montana law is directly at odds with *White*. To rewrite Montana's law of unjust enrichment on the basis of a questionable Ohio law decision would conflict with the rule that "when given a choice between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability," a federal court sitting in diversity "should choose the narrower and more reasonable path." *Combs v. International Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc)).

## VI. Plaintiff Fails to State a Civil Conspiracy Claim (Count 9).

As the Moving Defendants have explained, Plaintiff's civil conspiracy claim should be dismissed because Plaintiff fails to allege either an agreement joined by the Moving Defendants or an unlawful overt act committed in furtherance of that agreement. Opening Br. 13-15. Plaintiff's arguments to the contrary fail. Corr. Opp. Br. 113-15.

First, Plaintiff asserts that "each Defendant acted directly against their commercial interests in not reporting the unlawful distribution practices of their competitors to the authorities." Corr. Opp. Br. 114 (quoting Compl. ¶ 1099). But Plaintiff offers no argument in support of that assertion, much less any response to the Moving Defendants' opening brief, which explained at length why Plaintiff's conclusory assertion is nonsensical. Opening Br. 14 & n.2.

Second, Plaintiff points to Defendants' supposed "participation in trade associations" called the Pain Care Forum and the HDA. Corr. Opp. Br. 114. In fact, however, Plaintiff does not allege that any of the Moving Defendants (who simply distributed prescription opioids to their

own pharmacies) participated in these organizations, much less explain what that participation involved. *See* Compl. ¶ 520 & n.205 (alleging that "[e]ach of the Marketing Defendants worked together through the [Pain Care Forum]" and that the HDA's members include representatives of the Major Distributors, but making no reference to the Moving Defendants); *see also* Compl. ¶ 521 n.206 (pointing to the membership section of the HDA's website, which lists 36 distributor members, including the Major Distributors but *not* any of the Moving Defendants). Anyhow, even if the Moving Defendants had participated in these organizations, there is nothing untoward about belonging to a trade group or sharing information. "[C]ircumstances that are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy, and it is certainly lawful to associate with other industry participants in trade organizations." *In re Welding Fume Prods. Liab. Litig.*, 526 F. Supp. 2d 775, 805 (N.D. Ohio 2007) (internal quotation marks omitted); *see also* Moving Defendants' *Summit County* Reply 20-21.

Third, Plaintiff refers to allegations about all "Defendants' combined efforts to inflate the opioid quotas." Corr. Opp. Br. 114 (citing Compl. ¶¶ 489, 513-72). The allegations are conclusory and devoid of the factual enhancement required by *Iqbal*, 556 U.S. at 678. They also make only generalized references to the large and heterogeneous group of Distributor Defendants, never to the Moving Defendants either individually or as a group. And while Plaintiff makes allegations about the activities of two trade associations—the Pain Care Forum and the HDA—as discussed above, it never alleges that any of the Moving Defendants ever played a role in either of those organizations. And even setting all these defects aside, Plaintiff simply cannot rest a conspiracy claim on the notion that Defendants lobbied the government to "inflate" government opioid quotas or shape state policy on opioid use. Petitioning the government to change its policies is not unlawful misconduct—it is core constitutionally protected activity under the First Amendment.

*See, e.g.*, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 509-11 (1972) (explaining that the *Noerr-Pennington* doctrine protects entities from antitrust liability for their lobbying efforts); *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994).

Finally, Plaintiff fails to address the Moving Defendants' argument that, even if it had been sufficiently pleaded, a party's failure to report a competitor's wrongdoing is neither an act in furtherance of a conspiracy nor an "overt act." *See* Opening Br. 15.

**VII. Plaintiff Fails to State a Consumer Protection Claim (Count 10).**

The Moving Defendants' opening brief set forth *four* independently sufficient reasons why Plaintiff's claim under the Montana Unfair Trade Practices and Consumer Protection Act (MCPA) should be dismissed. Opening Br. 15-19. Plaintiff ignored these arguments entirely in its opposition brief, adding a response only later in its untimely "Corrected" opposition. *See* n.2, *supra*. This Court should enforce its briefing schedule and disregard the addition.

Even if the late additions are considered, however, the MCPA claim should be dismissed. The passage added to the "Corrected" brief asserts that Plaintiff's alleged "*parens patriae* standing extends … to its claim under the" MCPA, Corr. Opp. Br. 8 & n.3, apparently in an attempt to rebut the first of the four reasons for dismissal advanced in the Moving Defendants' opening brief.

Even Plaintiff's late "Corrected" brief fails to offer any response to the second, third, and fourth reasons for dismissing this claim described in the Moving Defendants' opening brief: that conduct that "implicates the 'actual practice' of medicine" is exempted from the MCPA by Montana law; that the MCPA does not remotely require pharmaceutical distributors to disclose (either to consumers or to Plaintiff) whether they have monitored, reported, or stopped the filing of suspicious orders; and that Plaintiff's underlying allegations are insufficient under either *Iqbal*

or Federal Rule of Civil Procedure 9(b). *See* Opening Br. 16-19.[4] Plaintiff has indisputably conceded these arguments.

Moreover, even if the Court were to consider Plaintiff's late response to the Moving Defendants' first argument, that response fails, too. The Moving Defendants explained that the MCPA permits only two types of action by two classes of plaintiff: (1) an enforcement action by the Montana Department of Justice in the name of the State of Montana, or, in specified circumstances, by Montana county attorneys, *see* Mont. Code §§ 30-14-102(2), 30-14-111(1), 30-14-121; and (2) a private action by a "consumer," *id.* § 30-14-133. Opening Br. 15-16. Plaintiff does not argue that it falls into either group. Instead, it appears to contend that it may use "its *parens patriae* authority to assert the claims on behalf of its consumer citizens who were deceived by Defendants' pervasive marketing, distribution, and dispensing schemes." Corr. Opp. Br. 8. But the issue of *parens patriae* standing under Article III of the U.S. Constitution has nothing to do with who has a *cause of action* under the MCPA as a matter of Montana state law. The issue here is simply whether the Montana Legislature decided to allow tribal entities to sue for violations of the MCPA. And the answer is clear from the text of the MCPA: only the Montana Department of Justice, county attorneys, and consumers may sue. By specifying certain categories of permissible plaintiffs, the Montana Legislature made clear that no other plaintiff may sue. *See Dukes v. City of Missoula*, 119 P.3d 61, 64-65 (Mont. 2005) ("Under the canon *expressio unius est exclusio alterius*, we interpret the expression of one thing in a statute to imply the exclusion of another.").

[4] Plaintiff concedes that its MCPA claim is subject to Rule 9(b)'s heightened pleading standard and asserts in conclusory fashion that it meets that standard. Corr. Opp. Br. 53-55. But Plaintiff nowhere explains *why* it thinks that claim satisfies the applicable standards. As the Moving Defendants have explained, it does not. Opening Br. 19.

None of the cases from other jurisdictions that Plaintiff cites in a footnote suggests that a tribal entity may sue on behalf of its citizens under the MCPA or any other Montana statute. *See* Corr. Opp. Br. 8 n.3. Rather, these out-of-state cases all simply illustrate the authority of the state attorney general (not a tribal entity) to enforce certain laws. *See In re Sclater* 40 B.R. 594 (Bankr. E.D. Mich. 1984) (Michigan attorney general had Article III standing under the *parens patriae* doctrine to enforce the Michigan Consumer Protection Act in federal court); *Minnesota v. Ri-Mel, Inc.*, 417 N.W.2d 102 (Minn. Ct. App. 1987) (allowing enforcement of a Minnesota statute by the Minnesota attorney general); *Louisiana v. Borden, Inc.*, No. 96-3640, 1995 WL 59548 (E.D. La. Feb. 10, 1995) (Louisiana attorney general could enforce Louisiana statutes); *New York v. Mid Hudson Med. Group, P.C.*, 877 F. Supp. 143 (S.D.N.Y. 1995) (New York attorney general had Article III standing to sue under federal law as *parens patriae*).

And Plaintiff does not cite the case law actually addressing tribal authority to sue under a state statute like the MCPA, which in fact contradicts Plaintiff's position. *See In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670, 2018 WL 4222677, at *16 (S.D. Cal. Sept. 5, 2018) ("Plaintiff [Cherokee Nation]'s Attorney General does not have *parens patriae* standing to bring claims based on the laws of other states. Simply because citizens of the Cherokee Nation live in other states, the Nation's Attorney General cannot borrow other sovereign State's laws.").

While the Moving Defendants' opening brief offered four independently sufficient reasons why Plaintiff's MCPA claim must be dismissed, Plaintiff offers no response to three of them and only an untimely and insufficient response to the other.

## VIII. The Free Public Services Doctrine Bars Plaintiff's Claims.

As the Moving Defendants contended in their opening brief, Plaintiff's claims are also barred by the free public services doctrine, which says that government entities cannot seek recovery from alleged tortfeasors for the costs of public services allegedly provided in response to

the alleged torts. Opening Br. 19. Plaintiff responds that the doctrine does not apply here because Defendants did not cite Montana state-court decisions holding that the doctrine applies in Montana. Corr. Opp. Br. 35. True enough, but Plaintiff is equally unable to cite Montana decisions holding that it does not apply. As this appears to be a matter of first impression under Montana law, this Court must decide it. *See Combs*, 354 F.3d at 577. For two reasons, the Court should apply the doctrine and bar Plaintiff's claims.

First, while neither party cites Montana case law on this point, the Moving Defendants do point to *City of Flagstaff v. Atchison, Topeka & Santa Fe Railway Co.*, 719 F.2d 322 (9th Cir. 1983). *See* Opening Br. 19. *Flagstaff* is the leading case on the free public services doctrine, and the author of the unanimous opinion was then-Circuit Judge (and later Justice) Anthony Kennedy. Although the Ninth Circuit was addressing a case from Arizona rather than Montana, nothing in its reasoning turns on any aspect of Arizona law. To the contrary, then-Judge Kennedy acknowledged that "the issue appears to be one of first impression" under Arizona law. 719 F.2d at 323. He looked to a broad range of legal authorities in holding that the default rule in American law is that a government entity may not sue to recover costs incurred in providing public services as a result of the defendant's allegedly tortious conduct. *Id.* at 323-24. Because the Ninth Circuit reached this holding as a matter of Arizona law without relying on any Arizona authority (there was none), it stands to reason that the Ninth Circuit would reach the same result as a matter of Montana law, which provides no basis for distinguishing this case from *Flagstaff*. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 16 (2004) (noting Supreme Court's "custom on questions of state law ordinarily is to defer to the interpretation of the Court of Appeals for the Circuit in which the State is located"); *see also Bishop v. Wood*, 426 U.S. 341, 346-47 & n.10 (1976) ("'In dealing with issues of state law that enter into judgments of federal courts, we are

hesitant to overrule decisions by federal courts skilled in the law of particular states unless their conclusions are shown to be unreasonable.'" (citation omitted)). This Court should therefore follow the Ninth Circuit in resolving the open issue in favor of the free public services doctrine.

Second, it is a fundamental principle that "when given a choice between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability," a federal court sitting in diversity "should choose the narrower and more reasonable path." *Combs*, 354 F.3d at 577 (quoting *Todd*, 21 F.3d at 1412). The path followed by *Flagstaff* is "the narrower and more reasonable path," and this Court should follow Justice Kennedy's lead.

## CONCLUSION

All claims against the Moving Defendants should be dismissed with prejudice.

Dated: 2 November 2018

Respectfully submitted,

/s/ Tara A. Fumerton

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

/s/ Eric R. Delinsky (consent)

Eric R. Delinsky
Alexandra W. Miller
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Pharmacy, Inc. and CVS Indiana, L.L.C.*

/s/ Kaspar Stoffelmayr (consent)

Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorneys for Walgreen Co. and*
*Walgreen Arizona Drug Co.*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing Reply complies with the 25-page limit imposed by this Court. *See* ECF No. 791 at 2 (No. 1:17-MD-2804).

/s/ Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2018, this Reply was filed electronically on the master docket for this matter. This Court has ordered that "[e]lectronic case filing of a document, other than an initial pleading, in the master docket shall be deemed to constitute proper service on all parties." ECF No. 232 at 8 (No. 1:17-MD-2804).

/ s/ Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com