# EXHIBIT 1



* 1 0 3 7 9 2 7 2 5 5 *

## IN THE DISTRICT COURT OF CLEVELAND COUNTY
## STATE OF OKLAHOMA

STATE OF OKLAHOMA, ex rel.,
MIKE HUNTER,
ATTORNEY GENERAL OF OKLAHOMA,

                Plaintiff,

vs.

(1)  PURDUE PHARMA L.P.;
(2)  PURDUE PHARMA, INC.;
(3)  THE PURDUE FREDERICK COMPANY;
(4)  TEVA PHARMACEUTICALS
     USA, INC.;
(5)  CEPHALON, INC.;
(6)  JOHNSON & JOHNSON;
(7)  JANSSEN PHARMACEUTICALS, INC.;
(8)  ORTHO-McNEIL-JANSSEN
     PHARMACEUTICALS, INC., n/k/a
     JANSSEN PHARMACEUTICALS, INC.;
(9)  JANSSEN PHARMACEUTICA, INC.,
     n/k/a JANSSEN PHARMACEUTICALS,
     INC.;
(10) ALLERGAN, PLC, f/k/a ACTAVIS PLC,
     f/k/a ACTAVIS, INC., f/k/a WATSON
     PHARMACEUTICALS, INC.;
(11) WATSON LABORATORIES, INC.;
(12) ACTAVIS LLC; and
(13) ACTAVIS PHARMA, INC.,
     f/k/a WATSON PHARMA, INC.,

                Defendants.

Case No. CJ-2017-816

Honorable Thad Balkman

JURY TRIAL DEMANDED

STATE OF OKLAHOMA⎱
CLEVELAND COUNTY⎰S.S.
**FILED**
SEP 22 2017

In the office of the
Court Clerk MARILYN WILLIAMS

## DEFENDANTS' JOINT MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................2

II.  LEGAL STANDARD ..........................................................................................5

III.  ARGUMENT.......................................................................................................6

    A.  The Petition's Improper Group Pleading Warrants Dismissal. .............................6

    B.  The State Fails to Plead Any Fraudulent Misrepresentation, Let Alone with the Particularity Required by Section 2009(B). ..............................................8

    C.  The State's Allegations Are Premised on Fatal Internal Inconsistencies. ...........10

    D.  Claims Based on Marketing of Extended-Release Opioid Medications for Chronic Non-Cancer Pain Are Preempted by Federal Law. ...............................12

    E.  All Claims Fail Because the State Does Not Adequately Allege Causation. .......16

        1.  The State Fails to Allege Facts That Could Establish That the Purported Misrepresentations Were the Actual Cause of Any Prescribing Decision. ...............................................................................16

        2.  The State Fails to Allege That the Purported Misrepresentations Caused the State to Pay Claims for Opioid Prescriptions. .......................18

        3.  The State Cannot Plead Causation As a Matter of Law Because Its Alleged Injuries Are Too Remote and Depend on Multiple Intervening Events. .................................................................................18

    F.  Each Cause of Action Fails on Additional Grounds............................................21

        1.  The Oklahoma Medicaid False Claims Act Claim (Cause of Action A) Must Be Dismissed...................................................................21

            a.  The State Fails to Plead Any False Claim for Payment. ..............21

            b.  Defendants' Alleged Marketing Efforts Were Not Material to the State's Reimbursement of Any Claim. ...............................23

            c.  The State Fails to Plead Presentment of Any False Claim ("Count 1"). ...............................................................................24

            d.  The State Fails to Plead Any False Statement to Get a False Claim Paid by the Government ("Count 2"). ...............................24

            e.  The OMFCA Claim Is Time-Barred in Part................................26

        2.  The Oklahoma Medicaid Program Integrity Act Claim (Cause of Action B) Must Be Dismissed.....................................................26

        3.  The Oklahoma Consumer Protection Act Claim (Cause of Action C) Must Be Dismissed..............................................................28

            a.  The State Does Not Allege a "Consumer Transaction." ..............28

            b.  The OCPA Claim Is Barred by the Safe-Harbor Provision..........29

            c.  The State Fails to Allege an "Unfair" Trade Practice. .................30

i

**TABLE OF CONTENTS**
**(continued)**

Page

    d.    The State Fails to Allege a "Deceptive" Trade Practice...............31

    e.    The State's Request for Damages and Penalties Fails..................32

4.    The Public-Nuisance Claim (Cause of Action D) Must Be
Dismissed...................................................................................................33

5.    The Common-Law Fraud and Deceit Claim (Cause of Action E)
Must be Dismissed.................................................................................35

6.    The Unjust-Enrichment Claim (Cause of Action F) Must Be
Dismissed...................................................................................................36

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Abraham v. Trail Lanes, Inc.*,
2014 OK CIV APP 107, 352 P.3d 1256 ................................................................34

*Allison Engine Co. v. United States ex rel. Sanders*,
553 U.S. 662 (2008) ...........................................................................................25, 26

*Anderson v. Morgan*,
2016 OK CIV APP 40, 376 P.3d 913 ...................................................................26

*A-Plus Janitorial & Carpet Cleaning v. Emp'rs' Workers' Compensation Ass'n*,
1997 OK 37, 936 P.2d 916 ..................................................................................8

*Arnett v. Mylan, Inc.*,
2010 WL 2035132 (S.D.W. Va. May 20, 2010) ...............................................29, 30

*Baron v. Pfizer, Inc.*,
2006 WL 1623052 (N.Y. Sup. Ct. May 2, 2006) ....................................................17

*Bowman v. Presley*,
2009 OK 48, 212 P.3d 1210 ....................................................................................35

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ................................................................................................11

*Burnett v. Mortg. Elec. Registration Sys., Inc.*,
706 F.3d 1231 (10th Cir. 2013) ...............................................................................6

*Butler v. Okla. City Pub. School Sys.*,
1994 OK CIV APP 22, 871 P.2d 444 ..................................................................19, 20

*Celexa and Lexapro Mkt'g & Sales Practices Litig.*,
779 F.3d 34 (1st Cir. 2015) .....................................................................................13

*Cent. Reg'l Employees Ben. Fund v. Cephalon, Inc.*,
2009 WL 3245485 (D.N.J. Oct. 7, 2009) ................................................................32

*Cerveny v. Aventis, Inc.*,
855 F.3d 1091 (10th Cir. 2017) ...............................................................................13

*City of Chicago v. Purdue Pharma L.P.*,
2015 WL 2208423 (N.D. Ill. May 8, 2015) ..........................................................9, 17

*City of Chicago v. Purdue Pharma, L.P.*,
211 F. Supp. 3d 1062 (N.D. Ill. 2016) ................................................................10, 22

## TABLE OF AUTHORITIES
### (continued)

**Page**

*CNA Ins. Co. v. Ellis,*
  2006 OK 81, 148 P.3d 874 ..................................................................................21, 26

*Craft v. Graebel-Okla. Movers, Inc.,*
  2007 OK 79, 178 P.3d 170 ............................................................................13

*Cytyc Corp. v. Neuromedical Sys., Inc.,*
  12 F. Supp. 2d 296 (S.D.N.Y. 1998) .............................................................10

*Dani v. Miller,*
  2016 OK 35, 374 P.3d 779 ............................................................................6, 8

*Davis v. HSBC Bank Nev., N.A.,*
  691 F.3d 1152 (9th Cir. 2012) ......................................................................30

*Del Valle v. PLIVA, Inc.,*
  2011 WL 7168620 (S.D. Tex. Dec. 21, 2011), *report and recommendation adopted by
  Del Valle v. Qualitest Pharm., Inc.,* 2012 WL 2899406 (S.D. Tex. June 22, 2012), *aff'd
  sub nom. Lashley v. Pfizer, Inc.,* 750 F.3d 470 (5th Cir. 2014) .............................15

*Dobbs v. Wyeth Pharm.,*
  797 F. Supp. 2d 1264 (W.D. Okla. 2011) .............................................................13

*Doe v. First Presbyterian Church U.S.A. of Tulsa, Okla.,*
  2017 OK 15, __ P. 3d __ ..................................................................................2

*Drager v. PLIVA USA, Inc.,*
  741 F.3d 470 (4th Cir. 2014) ..........................................................................15

*Eckert v. Flair Energy, Inc.,*
  1995 OK CIV APP 151, 909 P.2d 1201 ...............................................................18

*Estate of Hicks ex rel. Summers v. Urban E., Inc.,*
  2004 OK 36, 92 P.3d 88 ..................................................................................29

*Estes v. ConocoPhillips Co.,*
  2008 OK 21, 184 P.3d 518 ..............................................................................27

*Fanning v. Brown,*
  2004 OK 7, 85 P.3d 841 ..................................................................................5

*Fed. Trade Comm'n v. Mylan Labs., Inc.,*
  99 F. Supp. 2d 1 (D.D.C. 1999) ......................................................................32

*Felix v. Lucent Techs., Inc.,*
  2007 OK CIV APP 33, 157 P.3d 769 ................................................................13

## TABLE OF AUTHORITIES
### (continued)

Page

*Francis v. Branson,*
  1933 OK 414, 31 P.2d 870 .................................................................................35

*Freightliner Corp. v. Myrick,*
  514 U.S. 280 (1995) ..........................................................................................13

*Gay v. Akin,*
  1988 OK 150, 766 P.2d 985 .....................................................................5, 6, 7, 8

*Gianfillippo v. Northland Cas. Co.,*
  1993 OK 125, 861 P.2d 308 ...................................................................6, 8, 9, 10

*Hall v. Edge,*
  1989 OK 143, 782 P.2d 122 .............................................................................25

*Harrison v. Leviton Mfg. Co.,*
  2006 WL 2990524 (N.D. Okla. Oct. 19, 2006) ................................................33

*Harvell v. Goodyear Tire & Rubber Co.,*
  2006 OK 24, 164 P.3d 1028 .......................................................................28, 36

*Horton v. Bank of Am., N.A.,*
  189 F. Supp. 3d 1286 (N.D. Okla. May 18, 2016) ..........................................36

*Howard Family Charitable Found., Inc. v. Trimble,*
  2011 OK CIV APP 85, 259 P.3d 850 ...............................................................13

*In re Actimmune Mktg. Litig.,*
  614 F. Supp. 2d 1037 (N.D. Cal. 2009).............................................................11

*In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.,*
  2012 WL 3154957 (N.D. Cal. Aug. 2, 2012) ....................................................17

*In re Incretin-Based Therapies Prods. Liab. Litig.,*
  142 F. Supp. 3d 1108 (S.D. Cal. 2015), *appeal filed* (9th Cir.) ......................13

*In re Plavix Mktg., Sales Practices & Prods. Liab. Litig.,*
  123 F. Supp. 3d 584 (D.N.J. 2015).....................................................................21

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,*
  2009 WL 2043604 (D.N.J. July 10, 2009) ........................................................18

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,*
  2010 WL 3119499 (S.D. Ill. Aug. 5, 2010).......................................................20

*In re Zyprexa Prods. Liab. Litig.,*
  671 F. Supp. 2d 397 (E.D.N.Y. 2009)................................................................33

## TABLE OF AUTHORITIES
### (continued)

Page

*Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP*,
585 F. Supp. 2d 1339 (M.D. Fla. 2008) ...................................................20

*Kirby v. Jean's Plumbing Heat & Air*,
2009 OK 65, 222 P.3d 21 ...................................................................6

*Lumber 2, Inc. v. Illinois Tool Works, Inc.*,
2011 OK 74, 261 P.3d 1143 .................................................................32

*McKee v. Moore*,
1982 OK 71, 648 P.2d 21 ...................................................................19

*Miller v. Long*,
1949 OK 186, 210 P.2d 147 .................................................................35

*Mut. Pharm. Co. v. Bartlett*,
133 S. Ct. 2466 (2013) ...................................................................13

*Norman v. Leach*,
1953 OK 17, 252 P.2d 1020 ..................................................................6

*Nuncio v. Rock Knoll Townhome Vill., Inc.*,
2016 OK CIV APP 83, 389 P.3d 370, *reh'g denied* (July 7, 2016) .........................34

*Owens v. Auto. Eng'rs, Inc.*,
1953 OK 41, P.2d 240 ...................................................................16

*Parks v. AT & T Mobility, LLC*,
2012 WL 4382194 (W.D. Okla. Sept. 25, 2012)...........................................33

*Patel v. OMH Med. Ctr., Inc.*,
1999 OK 33, 987 P.2d 1185 .................................................................35

*Patterson v. Beall*,
2000 OK 92, 19 P.3d 839 ...................................................................30

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011) ...................................................................13

*Prince v. B.F. Ascher Co.*,
2004 OK CIV APP 39, 90 P.3d 1020...........................................................20

*Prohias v. Pfizer, Inc.*,
490 F. Supp. 2d 1228 (S.D. Fla. 2007)..........................................10, 14, 15

*Rheinfrank v. Abbott Labs., Inc.*,
680 Fed. App'x 369 (6th Cir. 2017) ......................................................13

xi

**TABLE OF AUTHORITIES**
(continued)

Page

*Robbins v. Oklahoma,*
519 F.3d 1242 (10th Cir. 2008) ............................................................................. 7

*Rogers v. Brummett,*
1923 OK 711, 220 P. 362 ...................................................................................... 28

*S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer Inc.,*
2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ..................................................... 32

*Scott v. GlaxoSmithKline Consumer Healthcare, L.P.,*
2006 WL 952032 (N.D. Ill. Apr. 12, 2006) ......................................................... 18

*Seufert v. Merck Sharp & Dohme Corp.,*
187 F. Supp. 3d 1163 (S.D. Cal. 2016) ............................................................... 13

*Sinclair Refining Co. v. Roberts,*
1949 OK 103, 206 P.2d 193 ................................................................................... 6

*Sisemore v. Dolgencorp, LLC,*
212 F. Supp. 3d 1106 (N.D. Okla. 2016) ............................................................. 33

*Sonic Indus. LLC v. Halleran,*
2017 WL 239388 (W.D. Okla. Jan. 19, 2017) ..................................................... 29

*Steinbeck v. Dollar Thrifty Auto. Grp., Inc.,*
2008 WL 4279798 (N.D. Okla. Sept. 15, 2008) ................................................... 28

*Stockwell v. Hamm,*
1932 OK 64, 7 P.2d 461 ....................................................................................... 28

*Strayhorn v. Wyeth Pharm., Inc.,*
737 F.3d 378 (6th Cir. 2013) ............................................................................... 15

*Tanner v. W. Pub. Co.,*
1984 OK CIV APP 22, 682 P.2d 239 ..................................................................... 5

*Teel v. Pub. Serv. Co. of Okla.,*
1985 OK 112, 767 P.2d 391 ................................................................................. 36

*Thomas v. Metro. Life Ins. Co.,*
540 F. Supp. 2d 1212 (W.D. Okla. 2008) ............................................................ 29

*TKO Energy Servs., LLC v. M-I L.L.C.,*
539 F. App'x 866 (10th Cir. 2013) ................................................................ 16, 18

*Twyman v. GHK Corp.,*
2004 OK CIV APP 53, 93 P.3d 51 ....................................................................... 16

## TABLE OF AUTHORITIES
### (continued)

Page

*UFCW Local 1776 v. Eli Lilly & Co.,*
  620 F.3d 121 (2d Cir. 2010) ...................................................................17

*United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v.*
  *Amgen, Inc.,*
  400 F. App'x 255 (9th Cir. 2010) ...........................................................20

*United States ex rel. Boggs v. Bright Smile Family Dentistry, P.L.C.,*
  2013 WL 1688898 (W.D. Okla. Apr. 18, 2013) ........................................21

*United States ex rel. Lemmon v. Envirocare of Utah, Inc.,*
  614 F.3d 1163 (10th Cir. 2010) ...............................................................21

*United States ex rel. Morton v. A Plus Benefits, Inc.,*
  139 F. App'x 980 (10th Cir. 2005) ...........................................................25

*United States ex rel. Petratos v. Genentech, Inc.,*
  855 F.3d 481 (3d Cir. 2017) ...............................................................23, 24

*United States ex rel. Polansky v. Pfizer, Inc.,*
  2009 WL 1456582 (E.D.N.Y. May 22, 2009) ..........................................17

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,*
  472 F.3d 702 (10th Cir. 2006) ...........................................................21, 22

*United States ex rel. Thomas v. Black & Veatch Special Projects Corp.,*
  820 F.3d 1162 (10th Cir. 2016) ...............................................................22

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,*
  125 F.3d 899 (5th Cir. 1997) ...................................................................22

*United States v. Caronia,*
  703 F.3d 149 (2d Cir. 2012) ....................................................................11

*United States v. Catholic Health Sys. of Long Island Inc.,*
  2017 WL 1239589 (E.D.N.Y. Mar. 31, 2017) ...........................................23

*United States v. Rivera,*
  55 F.3d 703 (1st Cir. 1995) .....................................................................21

*United States v. Sanford-Brown, Ltd.,*
  840 F.3d 445 (7th Cir. 2016) ...................................................................24

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
  136 S. Ct. 1989 (2016) ............................................................................23

## TABLE OF AUTHORITIES
### (continued)

Page

*Utts v. Bristol-Myers Squibb Co.*,
  2017 WL 1906875 (S.D.N.Y May 8, 2017) ........................................................... 13

*Walkabout v. Midland Funding LLC*,
  2015 WL 2345308 (W.D. Okla. May 14, 2015) .................................................... 28

*Walls v. Am. Tobacco Co.*,
  2000 OK 66, 11 P.3d 626 ..................................................................................... 33

*Wang v. FMC Corp.*,
  975 F.2d 1412 (9th Cir. 1992), *overruled on other grounds by United States ex rel.*
  *Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015) ..................... 25

*Weaver v. Legend Senior Living, LLC*,
  2017 WL 3088416 (W.D. Okla. July 20, 2017) ................................................... 36

*Weaver v. Reagen*,
  886 F.2d 194 (8th Cir. 1989) ............................................................................... 11

*Weston v. Acme Tool, Inc.*,
  1968 OK 7, 441 P.2d 959 ................................................................................ 16, 18

*Williams v. CSC Credit Servs.*,
  2007 WL 1959219 (N.D. Okla. June 29, 2007) ................................................... 29

*Wilson v. Harlow*,
  1993 OK 98, 860 P.2d 793 ................................................................................... 13

*Woodward v. Kinchen*,
  1968 OK 152, 446 P.2d 375 ................................................................................. 18

**Statutes**

15 U.S.C. § 45(n) .................................................................................................... 30

2007 Okla. Sess. Law Serv. Ch. 137 (S.B. 889) (eff. Nov. 1, 2007) ...................... 26

2016 Okla. Sess. Law Serv. Ch. 44 (S.B. 1515) (eff. Nov. 1, 2016) ...................... 21

21 U.S.C. § 355(d) ............................................................................................ 14, 31

21 U.S.C. §§ 321 *et seq.* ........................................................................................ 30

31 U.S.C. §§ 3729 *et seq.* ...................................................................................... 21

OAC § 435:10-7-11 .......................................................................................... 10, 34

OAC § 435:10-7-11(2)-(4) ..................................................................................... 31

## TABLE OF AUTHORITIES
### (continued)

Page

OAC § 475:30-1-2 ...................................................................................................10, 34

Okla. Stat. tit. 12, § 2008(A)(1) ..............................................................................1, 5, 6

Okla. Stat. tit. 12, § 2009(B) ...............................................................................1, 5, 6, 16

Okla. Stat. tit. 12, § 2202(B)(2) .................................................................................2, 14

Okla. Stat. tit. 15, § 752 ...............................................................................................31

Okla. Stat. tit. 15, § 753(20) .........................................................................................30

Okla. Stat. tit. 15, § 754(2) .......................................................................................29, 30

Okla. Stat. tit. 15, § 756.1 .............................................................................................32

Okla. Stat. tit. 50, § 1 ...................................................................................................34

Okla. Stat. tit. 50, § 4 ...................................................................................................34

Okla. Stat. tit. 56, § 1002(3) .........................................................................................27

Okla. Stat. tit. 56, § 1004(B)(1) ....................................................................................26

Okla. Stat. tit. 56, § 1005(A) .........................................................................................27

Okla. Stat. tit. 56, § 1005(A)(2) ....................................................................................27

Okla. Stat. tit. 56, § 1005(A)(3) ....................................................................................27

Okla. Stat. tit. 56, § 1005(A)(4) ....................................................................................27

Okla. Stat. tit. 56, § 1005(A)(5) ....................................................................................27

Okla. Stat. tit. 56, § 1005(A)(6) ....................................................................................27

Okla. Stat. tit. 56, § 1005(A)(7) ....................................................................................27

Okla. Stat. tit. 56, § 1005(E) .........................................................................................26

Okla. Stat. tit. 56, § 1005.1(B)(1) .................................................................................26

Okla. Stat. tit. 56, § 1005.1(B)(2) .................................................................................26

Okla. Stat. tit. 56, § 1005.1(B)(3) .................................................................................26

Okla. Stat. tit. 56, § 1005.1(C) ......................................................................................26

**TABLE OF AUTHORITIES**
(continued)

**Page**

Okla. Stat. tit. 56, § 1006(A) ................................................................26

Okla. Stat. tit. 56, § 1006(B)(1) ............................................................26

Okla. Stat. tit. 56, § 1006(B)(2) ............................................................26

Okla. Stat. tit. 56, § 1007(A) ...........................................................26, 28

Okla. Stat. tit. 56, § 1007(B)(1) ............................................................26

Okla. Stat. tit. 56, § 1007(B)(2) ............................................................26

Okla. Stat. tit. 59, § 353.1 .....................................................................19

Okla. Stat. tit. 59, § 355.1 .....................................................................19

Okla. Stat. tit. 63, § 2-309 .....................................................................19

Okla. Stat. tit. 63, § 5053.1(B)(1) (2007) ........................................22, 24

Okla. Stat. tit. 63, § 5053.1(B)(2) (2007) ........................................24, 25

Okla. Stat. tit. 63, § 5053.6(B)(1) (2007) ..............................................26

**Other Authorities**

FDA, *Draft Revisions to the Food and Drug Administration Blueprint for Prescriber Education for Extended-Release and Long-Acting Opioids*, 2017 WL 1862710 (May 10, 2017) ................................................................................................12

FDA, *Guidance for Industry: Assessment of Abuse Potential of Drugs*, 2010 WL 517765 (Jan. 2010) .........................................................................................11

FDA, TIRF REMS, *available at* http://www.accessdata.fda.gov/drugsatfda_docs/rems/TIRF_SS_2015-12-21_REMS_FULL.pdf ..................................................................................12

FTC Policy Statement on Deception ..................................................31, 32

Letter from the FDA to PROP (Sept. 10, 2013), available at https://www.regulations.gov/document?D=FDA-2012-P-0818-0793 ............................2, 3, 14

OxyContin label, *available at* https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/022272s027lbl.pdf..............14, 15

*Use of Approved Drugs for Unlabeled Indications*, FDA Drug Bulletin, Vol. 12, No. 1 (Apr. 1982) .............................................................................................11

**TABLE OF AUTHORITIES**
(continued)

Page

**Rules**

21 C.F.R. § 201.56 ....................................................................................................... 11

Fed. R. Civ. P. 8 ........................................................................................................... 5

Fed. R. Civ. P. 9(b) .................................................................................................. 6, 21

**Regulations**

79 Fed. Reg. 56,810, 56,810 (Sept. 23, 2014) ........................................................... 10

## **MOTION**

Defendants Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company Inc., Teva Pharmaceuticals USA, Inc., Cephalon Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. (collectively, "Defendants"[1]), by and through their attorneys, file this Motion to Dismiss pursuant to Sections 2008(A)(1), 2009(B), and 2012 of the Oklahoma Pleading Code. Okla. Stat. tit. 12, §§ 2008(A)(1), 2009(B), 2012. Defendants jointly seek dismissal of all claims for the reasons described below.[2] In the alternative, Defendants jointly seek an order that the State make its Petition more definite and certain in compliance with Oklahoma's pleading requirements, and such other and further relief as the Court deems just and proper.

---

[1] The Defendants include not only the various companies that manufactured and marketed the medications in issue but also their corporate parents and, for some, their predecessors and/or affiliates. *See* Pet. ¶¶ 13-20. For convenience, this brief refers to Defendants as follows: Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company Inc. ("Purdue"); Teva Pharmaceuticals USA, Inc. ("Teva") and Cephalon Inc. ("Cephalon"); Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica Inc. ("Janssen"); and Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. ("Watson/Actavis"). Named defendants Allergan plc f/k/a Actavis plc and Allergan Finance LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. do not join in this motion because neither of them has been served.

[2] In addition to this Joint Memorandum, each Defendant has also submitted a supplemental memorandum addressing issues specific to it, including additional grounds for dismissal of all claims as to them under section 2012.

## BRIEF IN SUPPORT

In support of this Motion, Defendants show the following:

## I.    INTRODUCTION

The Food and Drug Administration ("FDA") and other organizations recognize that "[c]hronic pain is a serious and growing health problem: it 'affects millions of Americans; contributes greatly to national rates of morbidity, mortality, and disability; and is rising in prevalence.'"[3] Defendants' prescription opioid medications serve a critical public-health role. As the FDA has determined, "[w]hen prescribed and used properly, opioids can effectively manage pain and alleviate suffering—clearly a public health priority."[4] The key is proper use. It has long been known that "[o]pioids also have grave risks, the most well-known of which include addiction, overdose, even death."[5] As the FDA has acknowledged, "the labeling for these products contains prominent warnings about these risks. Moreover, the boxed warning states that all patients should be 'routinely monitor[ed] . . . for signs of misuse, abuse, and addiction.'"[6]

These known risks of opioid therapy have led some to contend that opioid therapy for chronic pain should be available only for treatment of cancer or other end-of-life pain. But the FDA has rejected this proposed limitation, explaining that it "kn[ew] of no physiological or pharmacological basis upon which to differentiate the treatment of chronic pain in a cancer set-

---

[3] *See* Letter from the FDA to PROP (Sept. 10, 2013) ("FDA Response") at 2 & nn.4-6, available at https://www.regulations.gov/document?D=FDA-2012-P-0818-0793. Defendants request that the Court take judicial notice of this document because it is publicly available via the FDA website and thus is "[c]apable of accurate and ready determination by . . . sources whose accuracy cannot reasonably be questioned." Okla. Stat. tit. 12, § 2202(B)(2); *see also Doe v. First Presbyterian Church U.S.A. of Tulsa, Okla.*, 2017 OK 15, ¶ 8, n.11, __ P. 3d __ (taking judicial notice at motion-to-dismiss stage).

[4] FDA Response at 2.

[5] *Id.*

[6] *Id.*

ting or patient from the treatment of chronic pain in the absence of cancer."[7]

The State now tries to turn this scientific dispute into a lawsuit. Challenging, at base, the FDA's determination that opioids are safe and effective for the treatment of chronic non-cancer pain, the State not only seeks to hold Defendants liable for promoting opioid medications for this FDA-approved purpose, Pet. ¶ 51, but attempts to blame Defendants for the entire spectrum of public and private costs associated with Oklahoma's current opioid crisis, ranging from State reimbursement of allegedly "unnecessary and excessive" opioid prescriptions to policing heroin addiction on the streets. *Id.* ¶ 6. For the reasons discussed below, the Complaint is facially deficient and subject to dismissal on multiple grounds.

*First*, the Petition tramples Oklahoma's rule against "group pleading"—that is, asserting undifferentiated allegations of wrongdoing against multiple distinct defendants as if they were a single agglomerated entity. Although the Petition asserts claims against multiple independent pharmaceutical companies that sold multiple different and non-interchangeable medicines—some long-acting medications for chronic pain, some short-acting medications for acute pain—the Petition repeatedly purports to attribute virtually all the alleged wrongdoing to "Defendants," plural. This style of pleading fails to give *any* Defendant fair notice of the claims against it and renders the Petition fundamentally defective.

*Second*, in the few instances where the Petition purports to single out a given defendant by name—for some Defendants only *one* sentence in the 134-paragraph Petition, for others no more than a handful of sentences—it utterly fails to allege the facts constituting any alleged fraud with particularity, as Oklahoma law requires. Nor does it tie any alleged fraud to any allegedly improper prescription or claim in Oklahoma. This too renders the Petition fundamentally

---

[7] *Id.* at 9.

defective.

*Third*, the State's claims are premised on inherent contradictions that defeat its central theory. At base, the State accuses Defendants of improperly concealing the risks of the use of opioids in treating chronic pain. Yet the State also acknowledges, as it must, that Defendants' FDA-approved labeling discloses those known risks, Pet. ¶ 70, and the State cannot dispute that Oklahoma law authorizes physicians to prescribe opioids to treat a range of serious issues, including chronic pain, or that the FDA has expressly approved long-acting opioids as safe and effective for that indication.

*Fourth*, the State's claims alleging that Defendants misleadingly promoted prescription opioid medications as safe and effective for long-term use in treating chronic non-cancer pain are preempted by federal law. These claims ignore the FDA's longstanding approval of opioid medications for chronic pain and the extensive FDA-approved risk information that accompanies them. At its core, the Petition seeks to challenge the FDA's decision balancing the benefits and risks of certain opioid medications because the Oklahoma Attorney General disagrees with those decisions. Under principles of federal preemption, this Court can and should reject the State's effort to hold Defendants liable for promoting opioid medications for uses approved by the FDA.

*Fifth*, the State fails to plead adequately the essential element of causation. Attributing all of Oklahoma's opioid-related problems to supposedly fraudulent marketing materials and other publications, many of which are over a decade old, the State misconstrues a complex public-health crisis involving a host of different actors and intervening causes. The Petition claims that Defendants somehow deceived the State into reimbursing opioid prescriptions, but alleges no facts showing how the State was deceived or showing that any State representative was exposed to, let alone relied on, a supposed misrepresentation by any Defendant. Similarly, the Petition

claims that Defendants deceived Oklahoma physicians, but fails to identify a single such physician who received a supposed misrepresentation or relied on it in prescribing opioids. The Petition also ignores the many events that break any alleged causal connection between any such supposed misrepresentations and the litany of social costs and harms the State seeks to attribute to Defendants, including physicians' exercise of professional judgment as applied to individual patients and multiple intervening (sometimes criminal) acts.

*Finally*, each cause of action suffers from additional claim-specific deficiencies, as discussed below. These deficiencies, alone or together, require dismissal of the Petition under section 2012 of the Oklahoma Pleading Code.

## II.    LEGAL STANDARD

Section 2008 of the Oklahoma Pleading Code tracks its federal counterpart, Rule 8 of the Federal Rules of Civil Procedure,[8] and requires that every petition set forth at minimum a "short and plain statement of the claim showing that the pleader is entitled to relief." Okla. Stat. tit. 12, § 2008(A)(1). A court considering the sufficiency of a petition must consider "only the well-pleaded facts and reasonable inferences emanating from them"; all "conclusions are to be ignored." *Tanner v. W. Pub. Co.*, 1984 OK CIV APP 22, ¶ 11, 682 P.2d 239, 241. Accordingly, a petition must plead facts sufficient to give each Defendant "notice of what [the] claims [a]re and the grounds upon which they rest." *Fanning v. Brown*, 2004 OK 7, ¶ 21, 85 P.3d 841. A petition can be dismissed "for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory." *Kirby v. Jean's Plumbing Heat & Air*, 2009 OK 65, ¶ 4,

---

[8] Oklahoma courts often look to federal courts' interpretation of the Federal Rules of Civil Procedure when interpreting Pleading Code provisions—like sections 2008(A) and 2009(B)—that track their federal counterparts. *See Gay v. Akin*, 1988 OK 150, ¶ 8 & n.18, 766 P.2d 985, 990 & n.18.

222 P.3d 21, 24.

In addition, like Federal Rule 9(b), Oklahoma law requires that a plaintiff plead "the circumstances" of any alleged fraud "with particularity." Okla. Stat. tit. 12, § 2009(B); *see also Dani v. Miller*, 2016 OK 35, ¶ 25, 374 P.3d 779, 791 (requiring "sufficient particularity to enable the opposing party to prepare his or her responsive pleadings and defenses"). The Oklahoma Supreme Court has instructed that "the particularity requirement extends to *all* averments of fraud, regardless of the theory of legal duty—statutory, tort, contract or fiduciary." *Gay*, 1988 OK 150, ¶ 8, 766 P.2d at 990. To plead a fraud-based claim, a plaintiff must plead factual allegations showing "the time, place, and content of an alleged false representation." *Id.* ¶ 18, 766 P.2d at 993; *Gianfillippo v. Northland Cas. Co.*, 1993 OK 125, ¶ 11, 861 P.2d 308, 310-11; *see also Norman v. Leach*, 1953 OK 17, ¶ 8, 252 P.2d 1020, 1022 (requiring plaintiff to "set forth material facts constituting the alleged fraudulent . . . conduct"). "[M]ere conclusions are insufficient." *Sinclair Refining Co. v. Roberts*, 1949 OK 103, ¶ 16, 206 P.2d 193, 197.

## III. ARGUMENT

All of the State's claims are based on the same sweeping fraud-based allegations—namely, that Defendants allegedly conducted "massive" marketing campaigns that understated the risks and overstated the benefits of opioid therapy for chronic non-cancer pain. Yet the Petition does not come close to satisfying even the basic notice pleading requirements of section 2008(A)(1), let alone the particularized pleading requirements of section 2009(B) for claims sounding in fraud.

### A. The Petition's Improper Group Pleading Warrants Dismissal.

In a fraud-based action involving multiple defendants, "a plaintiff must plead facts from which fraud may reasonably be inferred *as to each defendant*." *Gay*, 1988 OK 150, ¶ 8, 766 P.2d at 990; *see also Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th

6

Cir. 2013) (affirming dismissal "because [complaint] attribute[d] actions to a large group of collective 'defendants'" and the court could not "tell which defendant is alleged to have done what"); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (affirming dismissal because "the complaint's use of . . . the collective term 'Defendants' . . . [made it] impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed"). A petition must be dismissed where, as here, a plaintiff merely lumps all defendants together and asserts that all defendants committed all of the alleged improprieties. *See Gay*, 1988 OK 150, ¶¶ 8-9, 766 P.2d at 990.

The vast majority of the State's allegations are allegations about the conduct of "Defendants"—thirteen companies in four unrelated corporate groups—as if they were a single agglomerated whole, without differentiation among the Defendants, their products, or their promotional practices. *See, e.g.*, Pet. ¶¶ 3, 4, 21, 23, 31, 34, 40, 41, 45, 46, 49-52, 54, 56-63, 65-68, 70-72, 75-91, 94-101, 104-115, 117-120, 122-132. This basic pleading violation defeats all claims. The operating companies (within the four Defendant corporate groups) manufactured and sold different, often competing, opioid medications—with different approved indications, product labeling, and promotional strategies at different times. *Id.* ¶¶ 13-20. Their medications are not interchangeable. They range from relatively less potent Schedule III opioids to Schedule II opioids 100 times more potent than morphine. *See id.* They include both extended-release formulations approved for the treatment of chronic pain and immediate-release formulations approved for the treatment of acute pain in patients who are already opioid-tolerant. And some are administered orally, while others by transdermal patch. *See id.*

The Petition does not and cannot allege that these unrelated and often competing pharmaceutical companies acted together in any purported fraud. In failing to distinguish among the

7

multiple distinct Defendants, the Petition fails to give *any* named Defendant fair notice of the claims against it, and it violates the particularity requirement for claims sounding in fraud. *Gay*, 1988 OK 150, ¶ 8, 766 P.2d at 990. Given its improper and pervasive group pleading, the Petition fails to state a claim and must be dismissed.

### B.    The State Fails to Plead Any Fraudulent Misrepresentation, Let Alone with the Particularity Required by Section 2009(B).

The Petition also must be dismissed because it fails to plead the circumstances of any alleged fraudulent misrepresentation with particularity, even in the handful of instances where it mentions a Defendant by name. Because all the State's claims rest upon allegations that Defendants fraudulently misrepresented the risks and benefits of opioids, *see, e.g.*, Pet. ¶¶ 3-5, 75, 78-79, 82-83, 85-90, 94, 99, 105, 107-08, 110-12, 118-19, 121-26, 131, this failing also demands dismissal of the Petition in its entirety. *See Dani*, 2016 OK 35, ¶ 25, 374 P.3d at 791; *Gianfillippo*, 1993 OK 125, ¶ 11, 861 P.2d at 311.[9]

Section 2009(B) requires a plaintiff to allege with particularity "the time, place, and content of an alleged false representation." *Gianfillippo*, 1993 OK 125, ¶ 11, 861 P.2d at 310-11. The allegations here fail that requirement. Although the State makes broad and conclusory allegations about Defendants' opioid marketing, Pet. ¶¶ 52-66, it fails to connect any purported misrepresentation to any specific Oklahoma patient, prescription, physician, claim, or reimbursement decision:

- The State fails to identify *who* made or *who* received any alleged false statements in Oklahoma. It does not allege the facts of any interaction between a Defendant and either the State itself or any Oklahoma physician who purportedly prescribed any of the opioids at issue, including which of the Defendants allegedly had contact with that

---

[9] Alternatively, the State should be compelled to provide the requisite factual details of each of its claims, which all sound in fraud. *See A-Plus Janitorial & Carpet Cleaning v. Emp'rs' Workers' Compensation Ass'n*, 1997 OK 37, ¶ 36, 936 P.2d 916, 931.

physician.

- The State fails to identify *what* supposedly false statements each Defendant allegedly made to the State or to Oklahoma physicians who wrote opioid prescriptions for which the State paid, or *why* any such statement was allegedly false.

- The State fails to identify *what* opioids it reimbursed that were allegedly improper because they were medically inappropriate.

- The State fails to identify *where* in Oklahoma any allegedly false statement was made.

- The State fails to identify *when* any specific Oklahoma physician, consumer, or government employee received any false statement or *when* the State reimbursed prescriptions on the basis of any Defendant's alleged fraud.

- The State fails to allege *how* any alleged fraudulent act by any Defendant affected any of the prescriptions for which the State paid or which the State otherwise contends are at issue in this case. In fact, the State does not allege the specifics about any prescriptions it paid for, such as *why* the unidentified physicians prescribed the opioids in question, *what* conditions the opioids were prescribed to treat, or whether the prescriptions were medically necessary.

- The State fails to identify *how* any patient was injured.

These pleading failures are fatal. Absent particularized allegations, there is nothing to connect any State-reimbursed prescription (or any other Oklahoma prescription) to *anything* false or misleading that any Defendant allegedly said or did. *See Gianfillippo*, 1993 OK 125, ¶ 11, 861 P.2d at 311 (affirming dismissal where the fraud "allegations fail to specify the time, place, and content of the alleged false representations" and the unconnected parties were complete "strangers"); *see also City of Chicago v. Purdue Pharma L.P.*, 2015 WL 2208423, at *14 (N.D. Ill. May 8, 2015) (dismissing fraud-based claims similar to those here for failure to allege identities of physicians who prescribed opioids paid for by plaintiff in reliance on manufacturers' alleged misrepresentations).

Even though its Petition contains more than 130 paragraphs, only Paragraph 53 attempts to plead an "example" of a purported misrepresentation by each Defendant—and that Paragraph

is legally insufficient to support any of the State's claims. As with its more generalized allegations elsewhere, Paragraph 53 fails to allege the "time, place, and content" of any purported misrepresentation. *Gianfillippo*, 1993 OK 125, ¶ 11, 861 P.2d at 311. And none of the purported misrepresentations listed in that paragraph—or elsewhere—is connected to an Oklahoma patient, physician, prescription, claim, or reimbursement decision.[10] Because the Petition omits all details in violation of section 2009(B), it should be dismissed.

## C. The State's Allegations Are Premised on Fatal Internal Inconsistencies.

The Petition also must be dismissed because its central fraud theory is inherently self-contradictory. As an initial matter, the State does not and cannot dispute that Oklahoma law explicitly permits physicians to prescribe controlled substances—like many of Defendants' opioid products—for the treatment of pain, including chronic non-cancer pain. *See* OAC § 435:10-7-11; 475:30-1-2. Nor does the Petition dispute that the FDA has approved long-acting opioids for that same indication.[11] Nowhere does the State explain how it can be fraudulent to market medications for their lawfully approved indications. The reason for this omission is simple: as a matter of law, it cannot be. Statements that "generally comport with [a medication's] approved label" are "not misleading as a matter of law." *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1235 (S.D. Fla. 2007); *see also Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 299, 301

---

[10] As described below and in each Defendant's individual supporting memorandum, the allegations that do mention particular Defendants fail to plead facts sufficient to state a claim.

[11] *See, e.g.*, Development and Regulation of Abuse Deterrent Formulations of Opioid Medications, 79 Fed. Reg. 56,810, 56,810 (Sept. 23, 2014) ("Opioid analgesics (e.g., hydrocodone, oxycodone, morphine, and fentanyl) play a vital role in treating both chronic and acute pain"); *City of Chicago v. Purdue Pharma, L.P.*, 211 F. Supp. 3d 1062-63 nn.1, 3 & 4 (N.D. Ill. 2016) (noting that Oxycontin, Opana ER, and Opana are "indicated for the 'management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate'" and that Duragesic and Nucynta ER have the same indication "in opioid tolerant patients").

(S.D.N.Y. 1998) (dismissing false advertising claims because challenged statements were "similar enough to the [FDA-]approved statements . . . that they are neither false nor misleading" "as a matter of law"). And to the extent the State alleges that any Defendants promoted opioids for unapproved or "off-label" conditions, such allegations still fail as a matter of law to plead fraud.[12]

Likewise, the Petition acknowledges that Defendants' FDA-approved labels—the primary means by which both the FDA and manufacturers communicate risks to prescribing physicians—disclose the very risks of opioid treatment that Defendants supposedly concealed. *See* Pet. ¶ 70 (noting that labels "acknowledged the risk of abuse and addiction"); *see also id.* ¶¶ 53, 67, 124. The FDA has long recognized that a drug's labeling is the primary channel for communicating risk information to prescribing physicians and their patients. *See, e.g.*, 21 C.F.R. § 201.56 (prescription drug labeling must include "the essential scientific information needed for the safe and effective use of the drug," including indications, contraindications, and warnings).[13]

Tellingly, the Petition does not and cannot allege that Defendants' labels or product-specific promotion failed to include the FDA-mandated risk information. It ignores, nearly entirely, the role of the FDA and of FDA-approved product labeling, which disclosed the risks of

---

[12] "[C]ourts and the FDA have recognized the propriety and potential public value of unapproved or off-label drug use." *United States v. Caronia*, 703 F.3d 149, 153 (2d Cir. 2012); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351 n.5 (2001) (off-label prescribing "'often is essential to giving patients optimal medical care'"); *Use of Approved Drugs for Unlabeled Indications*, FDA Drug Bulletin, Vol. 12, No. 1, at 4-5 (Apr. 1982) ("accepted medical practice often includes drug use that is not reflected in approved drug labeling") (quoted in *Weaver v. Reagen*, 886 F.2d 194, 198 (8th Cir. 1989)). As a result, off-label promotion is not inherently false or misleading. *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051 n.6 (N.D. Cal. 2009) ("off-label marketing of an approved drug is itself not inherently fraudulent").

[13] *See also, e.g.*, FDA, *Guidance for Industry: Assessment of Abuse Potential of Drugs*, 2010 WL 517765, at *16 (Jan. 2010) ("Information on the abuse potential of a drug is generally conveyed to healthcare professionals and patients through appropriate labeling . . . . Labeling is the cornerstone of risk minimization efforts for most of the drugs approved by FDA.").

addiction and abuse. And it ignores all of Defendants' product-specific promotion, which was legally required to convey the same risk information.[14] Indeed, in addition to conceding that Defendants' labels did disclose the risks of abuse and addiction, Pet. ¶ 70, the Petition acknowledges that physicians have long known that opioids "are highly addictive, habit-forming drugs," *id.* ¶ 1, and it does not identify a single Oklahoma physician who was somehow deceived into prescribing an opioid. Put simply, the State's legal theory that Defendants somehow concealed opioids' risks from Oklahoma physicians cannot survive these concessions and omissions—which together make clear that no deception occurred as a matter of law.

### D. Claims Based on Marketing of Extended-Release Opioid Medications for Chronic Non-Cancer Pain Are Preempted by Federal Law.

To the extent the Petition seeks to impose liability under state law for the marketing of prescription opioids for the treatment of long-term chronic pain, an FDA-approved use, the State's claims are preempted under the Supremacy Clause of the U.S. Constitution. Whether claims are preempted is a question of law that may be resolved at the pleading stage. *See, e.g.,*

---

[14] The Petition also ignores that the FDA has mandated a risk evaluation and mitigation strategy ("REMS") for extended-release/long-acting ("ER/LA") opioid pain relievers to provide additional training and education for physicians on how to use the drugs safely. *See* FDA, *Draft Revisions to the Food and Drug Administration Blueprint for Prescriber Education for Extended-Release and Long-Acting Opioids*, 2017 WL 1862710 (May 10, 2017). "The goal of the REMS is to reduce serious adverse outcomes resulting from inappropriate prescribing, misuse, and abuse of ER/LA opioid analgesics while maintaining patient access to pain medications." *Id.* Moreover, since March 2012, physicians have had to comply with the stringent requirements of a unique FDA-approved REMS—tailored to a narrow class of transmucosal immediate-release fentanyl ("TIRF") opioids (like Actiq and Fentora)—*before* writing a prescription. FDA, TIRF REMS, *available at* http://www.accessdata.fda.gov/drugsatfda_docs/rems/TIRF_SS_2015-12-21_REMS_FULL.pdf. This includes passing a knowledge assessment to become eligible to prescribe TIRF medicines, reviewing FDA-approved medication guides and other educational materials about the TIRF medicine with the patient, and signing an agreement that the prescriber understands and has counseled her patient about the risks and approved uses of the TIRF medicine. *Id.* At each follow-up visit, the prescriber must assess the patient for appropriateness of the prescription and for signs of misuse and abuse. *Id.* These REMS programs defeat the State's assertions of deception and causation.

*Wilson v. Harlow*, 1993 OK 98, ¶¶ 18-22, 860 P.2d 793, 798-800; *Howard Family Charitable Found., Inc. v. Trimble*, 2011 OK CIV APP 85, ¶ 20, 259 P.3d 850, 857-59; *Felix v. Lucent Techs., Inc.*, 2007 OK CIV APP 33, ¶ 7, 157 P.3d 769, 772-74.

The doctrine of implied preemption arises "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (internal quotation marks and citations removed); *Craft v. Graebel-Okla. Movers, Inc.*, 2007 OK 79, ¶ 18, 178 P.3d 170, 175. Applying preemption principles, the U.S. Supreme Court has made clear that state law cannot impose a duty to alter drug labeling in a way that conflicts with federal law. *See Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2471 (2013); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613-15 (2011). Courts have thus repeatedly held that state-law claims are preempted where, as here, they would require a prescription drug manufacturer to make statements about safety or efficacy that are inconsistent with what the FDA has required after it evaluated the available data. *See, e.g., Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1105 (10th Cir. 2017); *Rheinfrank v. Abbott Labs., Inc.*, 680 Fed. App'x 369, 386 (6th Cir. 2017); *Celexa and Lexapro Mkt'g & Sales Practices Litig.*, 779 F.3d 34, 42-43 (1st Cir. 2015); *Utts v. Bristol-Myers Squibb Co.*, 2017 WL 1906875, at *20 (S.D.N.Y May 8, 2017); *Seufert v. Merck Sharp & Dohme Corp.*, 187 F. Supp. 3d 1163, 1173-74 (S.D. Cal. 2016); *In re Incretin-Based Therapies Prods. Liab. Litig.*, 142 F. Supp. 3d 1108, 1123-24 (S.D. Cal. 2015), *appeal filed* (9th Cir.); *Dobbs v. Wyeth Pharm.*, 797 F. Supp. 2d 1264, 1276-77 (W.D. Okla. 2011).

Central to the State's claims is its allegation that Defendants misrepresented the safety and effectiveness of opioids "in treating chronic non-cancer related pain." Pet. ¶ 51; *see also id.*

¶¶ 3, 53, 59, 63, 67, 122. Yet the FDA has *approved* almost all of the Defendants' opioid medications for treatment of chronic pain, including chronic non-cancer pain. *See, e.g.*, OxyContin label at § 9.2.[15] This approval means that the FDA has found that there is "substantial evidence that the drug will have the effect it purports or is represented to have" and that opioid medications are safe and effective for the treatment of chronic pain, including chronic non-cancer pain. 21 U.S.C. § 355(d).

Significantly, despite the State's claims, the FDA has addressed the question of what physicians should be told about the risks and benefits of chronic opioid treatment. Specifically, in response to a 2012 citizen petition (the "PROP Petition"), the FDA recently reviewed whether scientific evidence supports the use of opioids for the treatment chronic pain, and the agency concluded that it did.[16] *See supra* note 1, FDA Response at 6, 9, 14. For this reason, any claim seeking to hold Defendants liable for the promotion of opioids as safe and effective for their FDA-approved indications necessarily conflicts with FDA determinations and is preempted. *See Prohias*, 490 F. Supp. 2d at 1234 (holding that state-law claims are preempted when they "conflict[] with the FDA's jurisdiction over drug labeling, and specifically its approval of [certain indications]").

The same preemption principles mean that many other alleged misrepresentations are not actionable. The State alleges that Defendants "falsely downplay[ed] the risk of opioid addiction."

---

[15] The Oxycontin label is available on the FDA website at https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/022272s027lbl.pdf; other drug labels are available on the FDA website at https://labels.fda.gov/. Defendants request that the Court take judicial notice of the labels of extended-release opioid medications cited in the Petition because they are "[c]apable of accurate and ready determination by . . . sources whose accuracy cannot reasonably be questioned." Okla. Stat. tit. 12, § 2202(B)(2).

[16] The PROP Petition is discussed further in Defendants' concurrently filed primary-jurisdiction motion.

Pet. ¶ 3; *see also id.* ¶¶ 4, 51, 53-54, 56, 59, 61-64, 67-72, 75, 77, 85, 96, 106-112, 122-24, 131. Yet the State concedes that Defendants' FDA-approved labels "acknowledge[] the risk of abuse and addiction." *Id.* ¶ 70. Likewise, the State claims that Defendants (without specifying which Defendants) promoted the concept of "pseudoaddiction"—drug-seeking behavior that mimics addiction occurring in patients receiving inadequate pain relief—to diminish concerns about addiction by falsely implying this concept is substantiated by scientific evidence. Pet. ¶¶ 4, 53, 62, 67-68, 122. But the FDA has approved labeling for Defendants' medicines that embodies this concept, including after its recent evidentiary review in response to the PROP Petition. Specifically, the FDA-approved labeling for extended-release opioids discusses "[d]rug-seeking behavior" amongst "addicts and drug abusers" but also recognizes that "[p]reoccupation with achieving adequate pain relief can be appropriate behavior in a patient with poor pain control." *See, e.g.*, OxyContin label at § 9.2.

This preemption analysis applies to Defendants' marketing and promotional statements just as it applies to Defendants' labeling. "In essence, virtually all communication with medical professionals concerning a drug constitutes labeling" under federal law. *Del Valle v. PLIVA, Inc.*, 2011 WL 7168620, at *4 (S.D. Tex. Dec. 21, 2011), *report and recommendation adopted by Del Valle v. Qualitest Pharm., Inc.*, 2012 WL 2899406 (S.D. Tex. June 22, 2012), *aff'd sub nom. Lashley v. Pfizer, Inc.*, 750 F.3d 470 (5th Cir. 2014). Thus, "[b]ecause . . . advertising and promotional materials are considered labeling, and because labeling is limited by federal law to the information contained in the [FDA-approved] labeling," claims based on advertising are similarly preempted. *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 394 (6th Cir. 2013); *accord Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 479 (4th Cir. 2014); *Prohias*, 490 F. Supp. 2d at 1234. For all these reasons, the State's claims are preempted and must be dismissed.

### E.    All Claims Fail Because the State Does Not Adequately Allege Causation.

The Petition alleges that Defendants' purported misrepresentations altered physicians' prescribing decisions and influenced State reimbursement decisions. *See, e.g.*, Pet. ¶¶ 3, 99. Yet, the State fails to allege adequately a causal connection between any supposed misrepresentation and any prescription or reimbursement decision in Oklahoma. *See Twyman v. GHK Corp.*, 2004 OK CIV APP 53, ¶ 52, 93 P.3d 51, 61 (holding that causation is required for public-nuisance claims); *Weston v. Acme Tool, Inc.*, 1968 OK 7, ¶ 17, 441 P.2d 959, 963 (dismissing fraud claim for failure to plead causation); *TKO Energy Servs., LLC v. M-I L.L.C.*, 539 F. App'x 866, 873 (10th Cir. 2013) (applying Oklahoma law and affirming dismissal of fraud-based claims where complaint failed to allege actual reliance).

> 1.    **The State Fails to Allege Facts That Could Establish That the Purported Misrepresentations Were the Actual Cause of Any Prescribing Decision.**

The State alleges that Defendants improperly "convince[d] medical professionals to prescribe more opioids to a broader range of patients." Pet. ¶ 3; *see id.* ¶ 75. But the State does not identify any Oklahoma physician who prescribed an opioid for chronic pain—let alone one who did so improperly or *as a result* of any Defendant's conduct.

Indeed, the State does not even allege any facts that show *any* Oklahoma physician *ever* heard, read, or otherwise received—let alone relied on—any Defendant's purported misrepresentations, much less that any physician did so before prescribing any Defendant's medication. Under well-settled Oklahoma law, the State's failure to connect any Defendant's purported misrepresentations to any allegedly improper prescription defeats all of its claims. *See, e.g.*, *Twyman*, 2004 OK CIV APP 53, ¶ 52, 93 P.3d at 61; *Owens v. Auto. Eng'rs, Inc.*, 1953 OK 41, ¶ 35, P.2d 240, 247; *Weston*, 1968 OK 7, ¶ 17, 441 P.2d at 963; *see generally* Okla. Stat. tit. 12, § 2009(B).

Consistent with Oklahoma law, other courts across the country regularly dismiss claims

premised on allegedly false or misleading pharmaceutical marketing that "lack[] specific allegations regarding whether [a particular] physician either received or relied upon any information from [the] defendant" in making a prescribing decision. *Baron v. Pfizer, Inc.*, 2006 WL 1623052, at *4-*5 (N.Y. Sup. Ct. May 2, 2006), *aff'd*, 840 N.Y.S.2d 445 (2007).[17] In fact, one court recently did so in an analogous lawsuit brought by the City of Chicago against many of the Defendants the State sues here. *See City of Chicago*, 2015 WL 2208423, at *14 (dismissing claims because "the City d[id] not allege . . . the identities of doctors who, as a result of one or more of defendants' alleged misrepresentations, prescribed opioids for chronic pain to a City-insured patient or worker's compensation recipient whose claim for that prescription the City paid, or any other details about such claims").

The State cannot satisfy its pleading burden by alleging a statewide "increas[e in the] number of opioid prescription claims that have been submitted to and paid by Oklahoma Medicaid." Pet. ¶ 125. Just because opioid prescriptions allegedly increased during unidentified times does not mean that any false statements or omissions by Defendants caused those additional prescriptions to be written. Indeed, courts have repeatedly rejected similar attempts to cite generalized data in lieu of factual allegations that particular defendants' statements influenced particular physicians. *See, e.g.*, *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 133 (2d Cir. 2010) (rejecting market causation theory and holding that "reliance on a misrepresentation made as part of a nationwide marketing strategy 'cannot be the subject of general proof'"); *In re Bextra*, 2012 WL 3154957 at *4 (dismissing fraud and consumer-protection claims premised on an attempt to

---

[17] *See also, e.g.*, *In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*, 2012 WL 3154957, at *8-*9 (N.D. Cal. Aug. 2, 2012); *United States ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *9-*10 (E.D.N.Y. May 22, 2009).

"create an inference of causation" from statistical "quantity effect[s]").[18] This Court should too.

2.  **The State Fails to Allege That the Purported Misrepresentations Caused the State to Pay Claims for Opioid Prescriptions.**

The State also alleges that Defendants' purported misconduct caused it to reimburse prescriptions it otherwise would not have reimbursed. Pet. ¶ 99. But here, too, the State fails to allege the requisite but-for causal link. The Petition does not allege, for example, that *any* employee or agent of the Health Care Authority ever read, heard, or otherwise received a single purported misrepresentation made by any Defendant. Nor does it allege any instance in which the State reasonably relied upon, or was even influenced by, any purported misrepresentation in deciding to reimburse an opioid prescription. And the Petition fails to identify even a single State-reimbursed opioid prescription that it claims was improper. Thus, as a matter of law, all claims fail. *See supra* § III.E.1; *see also TKO Energy Servs.*, 539 F. App'x at 873; *Weston*, 1968 OK 7, ¶ 17, 441 P.2d at 963; *Eckert v. Flair Energy, Inc.*, 1995 OK CIV APP 151, ¶ 7, 909 P.2d 1201, 1204.

3.  **The State Cannot Plead Causation As a Matter of Law Because Its Alleged Injuries Are Too Remote and Depend on Multiple Intervening Events.**

The State's claims also fail on proximate causation grounds. Under Oklahoma law, "liability cannot be predicated on a prior and remote cause which merely furnishes the condition for an injury resulting from an intervening, unrelated and efficient cause." *Woodward v. Kinchen*, 1968 OK 152, 446 P.2d 375, 377-78. Conduct proximately causes an injury only if it, "in a natural and continuous sequence, unbroken by any independent cause, produces the [injury]," and if

---

[18] *See also, e.g., In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at *25 (D.N.J. July 10, 2009) (similar); *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, 2006 WL 952032, at *3 (N.D. Ill. Apr. 12, 2006) (similar).

"without [it] the [injury] would not have occurred." *Butler v. Okla. City Pub. School Sys.*, 1994 OK CIV APP 22, 871 P.2d 444, 446.

Here, any connection between Defendants' alleged misconduct and the State's alleged injuries depends on multiple independent, intervening events and actors. These include: (1) the prescribing physician's exercise of independent medical judgment in diagnosing and treating individual patients, each of whom presents with his or her own medical needs and treatment preferences; (2) each patient's decision whether and how to use a prescribed medication; (3) each patient's response to the medication; and (4) the State's decision to reimburse an opioid prescription.

The prescribing physician plays a particularly important role given the closely regulated prescription medications at issue. Under Oklahoma law, a physician may only prescribe a "dangerous drug"—meaning any prescription drug—"for the expressed purpose of serving the best interests and promoting the welfare of such [practitioner's] patients." Okla. Stat. tit. 59, § 355.1; *see also id.* tit. 59, § 353.1 (defining "dangerous drug" synonymously with "prescription drug"); *id.* tit. 63, § 2-309. As a learned intermediary, the physician has a "duty to inform himself of the qualities and characteristics of those products which he administers or prescribes for use of his patients, and to exercise his judgment, based on his knowledge of the patient as well as the product." *McKee v. Moore*, 1982 OK 71, ¶ 8, 648 P.2d 21, 24. Those "qualities and characteristics" include risks of abuse and addiction that are prominently disclosed in all opioid medications' FDA-approved labels. Pet. ¶ 70.

Given physicians' critical role, courts routinely dismiss complaints where the plaintiffs' allegations—like the State's allegations here—would require courts to perform an unworkable "inquiry into the specifics of each doctor-patient relationship implicated by the lawsuit." *Iron-*

*workers Local Union No. 68 v. AstraZeneca Pharm. LP*, 585 F. Supp. 2d 1339, 1344 (M.D. Fla. 2008); *see also United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 3119499, at *7-*9 (S.D. Ill. Aug. 5, 2010).

Causation is even further attenuated here because the State seeks to hold Defendants liable not just for the reimbursement of allegedly improper (but unidentified) opioid prescriptions, but also for the "social and economic costs" of addressing the "opioid abuse and addiction epidemic," including costs associated with "increased health care, criminal justice, and lost work productivity expenses, among others," Pet. ¶ 31, along with costs associated with the illegal use and trafficking of "illicit opioids such as heroin," *id.* ¶ 29. But these alleged costs are entirely too attenuated to attribute to alleged unidentified marketing statements by Defendants, and they depend upon numerous intervening actions by third parties. This concern is particularly acute as to the State's nuisance claim, which depends entirely on these attenuated alleged injuries and on intervening third-party criminal acts. *Cf. Prince v. B.F. Ascher Co.*, 2004 OK CIV APP 39, ¶ 20, 90 P.3d 1020, 1028 (there is no duty to "anticipate and prevent the intentional or criminal acts of a third party"); *Butler*, 1994 OK CIV APP 22, 871 P.2d at 446 (proximate cause exists only if conduct causes injury "in a natural and continuous sequence, unbroken by any independent cause").

**F.** **Each Cause of Action Fails on Additional Grounds.**

    1.    **The Oklahoma Medicaid False Claims Act Claim (Cause of Action A) Must Be Dismissed.**

The State's claim under the Oklahoma Medicaid False Claims Act ("OMFCA")[19] fails for multiple additional reasons, as explained below.

    a.    **The State Fails to Plead Any False Claim for Payment.**

First, the OMFCA claim fails in its entirety because the Petition does not plead any false claim for payment. Like the federal False Claims Act ("FCA"),[20] the OMFCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) ("[l]iability under the FCA requires a false claim"). To allege a false claim, a petition "must provide details . . . [such as those] concerning the dates of the claims, the content of the forms or the bills submitted, their identification numbers, the amount of money charged to the government, the particular goods and services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices." *Sikkenga*, 472 F.3d at 727; *see also United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010) (applying Fed. R.

---

[19] The OMFCA was significantly amended on November 1, 2016. *See* 2016 Okla. Sess. Law Serv. Ch. 44 (S.B. 1515) (eff. Nov. 1, 2016). Because the State does not allege any conduct post-dating that amendment, the previous version of the OMFCA applies. *See CNA Ins. Co. v. Ellis*, 2006 OK 81, ¶ 13, 148 P.3d 874, 877 (statutes generally do not apply retroactively).

[20] The OMFCA echoes nearly verbatim the FCA, 31 U.S.C. §§ 3729 *et seq.*, and so courts construe the two in accord. *See, e.g., In re Plavix Mktg., Sales Practices & Prods. Liab. Litig.*, 123 F. Supp. 3d 584, 616 (D.N.J. 2015) ("Neither party has argued that any of these statutes should be read differently than the federal statute"); *United States ex rel. Boggs v. Bright Smile Family Dentistry, P.L.C.*, 2013 WL 1688898, at *3 (W.D. Okla. Apr. 18, 2013). Given the paucity of caselaw applying the OMFCA, this brief cites caselaw applying the federal statute.

Civ. P. 9(b) to False Claims Act claims).

Conspicuously absent from the Petition are *any* allegations of actual claims for payment—much less the details required by *Sikkenga*. The State does not identify the details of even a single instance of a physician or pharmacy submitting a claim for reimbursement for opioids to the Oklahoma Medicaid agency. The State alleges only that "the number of prescriptions" for opioids was "wrongly increas[ed]." Pet. ¶ 75. But a plaintiff may not "merely . . . allege simply and without any stated reason for his belief that claims requesting illegal payment must have been submitted, were likely submitted or should have been submitted to the Government." *Sikkenga*, 472 F.3d at 727; *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (affirming dismissal where complaint pleaded only a statistical probability that claims were submitted). In a parallel case, the Northern District of Illinois dismissed FCA claims based on Defendants' marketing of prescription opioids for similar reasons. *See City of Chicago*, 211 F. Supp. 3d at 1080.

The State also fails to allege that any claim was "false or fraudulent," as required by Okla. Stat. tit. 63, § 5053.1(B)(1) (2007). "To prove a false or fraudulent claim the plaintiff may rely on either a legally or factually false request for payment." *United States ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1168 (10th Cir. 2016). The Petition fails to plead legal falsity because it does not allege that any claim contained a false assertion of "compliance with a regulation or contractual provision" (or even anyone's non-compliance with a regulation or contractual provision). *Id.* It also fails to plead factual falsity because it does not allege that any claim contained an "incorrect description of goods or services provided" or sought "reimbursement for goods or services never provided." *Id.* The State thus fails to allege falsity of any kind.

22

       b.      **Defendants' Alleged Marketing Efforts Were Not Material to the State's Reimbursement of Any Claim.**

Second, the OMFCA claim fails in its entirety for another reason: the Petition does not adequately plead materiality, another essential element of any such claim. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016). Under the FCA's "rigorous" and "demanding" materiality standard, a misrepresentation is material only if the government actually would have withheld payment had it known the statement was false. *Id.* at 2002-04 & n.6.

Here, the State's own Petition demonstrates that any alleged misrepresentations were not material to State reimbursement decisions. Exhibits 1 and 4 to the Petition indicate that the State continued to reimburse Medicaid claims for extended-release opioids into 2017. "If the Government regularly pays a particular type of claim in full despite actual knowledge [of the alleged falsities], and has signaled no change in position, that is strong evidence that the [falsities] are not material." *Escobar*, 136 S. Ct. at 2003-04. Here, the State's continued payments defeat its Petition. *See id.*[21]

In addition, the Petition contains no allegations that, had the State known of the addiction and abuse risks of opioids, it would have refused to reimburse physicians, pharmacists, and other healthcare providers under the Medicaid program. That omission is fatal. *See Petratos*, 855 F.3d at 492; *cf. Escobar*, 136 S. Ct. at 2002-04.

---

[21] *See also United States ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) (affirming dismissal of FCA claims for failure to plead materiality where complaint "essentially concede[d] that [the government] would consistently reimburse these claims with full knowledge of the purported noncompliance"); *United States v. Catholic Health Sys. of Long Island Inc.*, 2017 WL 1239589, at *23 (E.D.N.Y. Mar. 31, 2017) (dismissing FCA claim for lack of materiality where government "continued to reimburse" defendant "despite understanding that [defendant] was using an outdated rate" for reimbursement).

The State's only allegation of materiality is that Defendants' purported misrepresentations may have influenced *healthcare providers*. *See* Pet. ¶¶ 80, 88. But materiality here requires a misrepresentation to have influenced *the government*. *See Petratos*, 855 F.3d at 491-92 (under *Escobar*, courts must "focus [their] materiality inquiry on the Government's payment decision," and not on "the *physicians'* determinations"); *see also United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016). The State does not even attempt to connect Defendants' marketing to the State's Medicaid payment decisions, meaning that it does not allege materiality.

### c.   The State Fails to Plead Presentment of Any False Claim ("Count 1").

Fourth, Count 1 of the OMFCA claim fails because the State nowhere alleges that any false claim was *presented* to an officer or employee of the State; indeed, it does not allege presentment of any false claim at all. This glaring defect necessarily defeats Count 1, which targets alleged violations of the pre-amendment OMFCA bar on "[k]nowingly . . . caus[ing] to be *presented*, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval." Okla. Stat. tit. 63, § 5053.1(B)(1) (2007); Pet. ¶ 75.

### d.   The State Fails to Plead Any False Statement to Get a False Claim Paid by the Government ("Count 2").

Fifth, Count 2 of the OMFCA claim fails because the Petition does not adequately plead either [1] a false statement or [2] the requisite purpose and intent—two elements of the pre-amendment OMFCA bar (targeted in Count 2) on "[k]nowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state." Okla. Stat. tit. 63, § 5053.1(B)(2) (2007); *see* Pet. ¶ 83.

With respect to false statements, the only remotely specific allegations regarding Defendants' alleged misstatements are in Paragraph 53 of the Petition. As discussed above, even those statements are not pled with the requisite particularity or adequately tied to the State's claims.

*See supra* § III.B. Moreover, none of those statements is actionably *false*. For example:

- Some of the statements—like the Purdue video stating "our best, strongest pain medicines are the opioids," Pet. ¶ 53—are nonactionable statements of opinion. "Generally, the false representation must be a statement of existing fact and not a mere expression of opinion." *Hall v. Edge*, 1989 OK 143, 782 P.2d 122, 126.

- Other statements were allegedly made by a Defendant to its *own* sales representatives, but not alleged to have been disseminated elsewhere (by anyone).

- Other statements were allegedly "unsupported" or "unsubstantiated," but, even if this is true, a lack of evidence supporting a statement does not necessarily make it *false*.

- Other statements—like that OxyContin may have helped a "54-year old writer with osteoarthritis" or that addiction is "less likely if you have never had an addiction problem," Pet. ¶ 53—are not alleged to be false and, at most, represent "scientific judgments [and] statements as to conclusions about which reasonable minds may differ," which cannot be "false" under the FCA. *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980, 983 (10th Cir. 2005).[22]

The Petition also fails to plead the requisite purpose and intent as to any Defendant. Liability under the pre-amendment OMFCA provision for Count 2 requires intent "to get a false or fraudulent claim paid or approved by the state." Okla. Stat. tit. 63, § 5053.1(B)(2) (2007). Interpreting identical language in the FCA, the U.S. Supreme Court has held that a defendant must have "the *purpose* of getting a false or fraudulent claim 'paid or approved by the Government'" and "must *intend* that the Government itself pay the claim" to be liable. *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 668-69 (2008). Thus, a statement made "to a private entity [without the intent that] the Government . . . rely on that false statement as a condition of payment" cannot support an FCA violation. *Id.* at 671-72. Here, the State fails to allege that any Defendant acted with the *purpose* of getting a false or fraudulent claim paid by the State or *intended* that the State either pay such a claim or rely on any alleged misrepresentation as a condi-

---

[22] *See also Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992), *overruled on other grounds by United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015) (similar).

tion of payment. The State's allegation that Defendants acted to increase their own profits, Pet. ¶ 21, is beside the point and cannot support an OMFCA claim. *Allison Engine*, 553 U.S. at 668-72.

### e.    The OMFCA Claim Is Time-Barred in Part.

Finally, the OMFCA claim is based, at least in part, on time-barred conduct. Most of the few dates listed in the Petition predate the OMFCA's enactment on November 1, 2007. *See 2007 Okla. Sess. Law Serv. Ch. 137 (S.B. 889) (eff. Nov. 1, 2007); see, e.g.*, Pet. ¶¶ 53, 55. Defendants' conduct predating the OMFCA's enactment is plainly non-actionable. *See CNA Ins. Co*, 2006 OK 81, ¶ 13, 148 P.3d at 877 (statutes generally do not apply retroactively). So is their conduct predating June 30, 2011 under the OMFCA's six-year statute of limitations. *See* Okla. Stat. tit. 63, § 5053.6(B)(1) (2007).

### 2.    The Oklahoma Medicaid Program Integrity Act Claim (Cause of Action B) Must Be Dismissed.

The State's claim under the Oklahoma Medicaid Program Integrity Act ("OMPIA") fails for additional reasons, too. First, the OMPIA is a criminal statute that does not authorize a civil claim against Defendants. Indeed, section 1006 of the OMPIA provides that violators of the Act "shall be deemed *guilty* of Medicaid fraud." Okla. Stat. tit. 56, § 1006(A). Some illegal payments constitute a misdemeanor; others a felony. *Id.* §§ 1006(B)(1), (2). Other OMPIA provisions similarly provide that violators are "guilty" of misdemeanors or felonies. *Id.* §§ 1004(B)(1), 1005(E), 1005.1(B)(1)-(3), (C), 1006(A), (B)(1)-(2). While section 1007 permits recovery of certain relief without the need for a criminal action, that section applies only to someone "who receives payment for furnishing goods or services under the Oklahoma Medicaid Program." *Id.* §§ 1007(A), (B)(1), (B)(2). And here, the State does not and cannot allege that any Defendant received Medicaid payments for furnishing goods or services. Section 1007 therefore does not apply here. *See Anderson v. Morgan*, 2016 OK CIV APP 40, ¶ 9, 376 P.3d 913, 916 ("the mention of one thing

in a statute impliedly excludes another thing").

Second, even if the State could pursue a civil action against Defendants under the OM-PIA, the Petition fails to plead the elements of any offense. As a threshold matter, the OMPIA requires a defendant to have acted both knowingly and "willfully." Okla. Stat. tit. 56, § 1005(A). Interpreting another statute, the Oklahoma Supreme Court has held that "willfully" means "not only conscious, purposeful violations of the [statute], but also deliberate disregard of the law by those who know, or should have known, of the requirements of the" statute. *Estes v. ConocoPhillips Co.*, 2008 OK 21, ¶ 22, 184 P.3d 518, 527. Nowhere does the State allege that Defendants' marketing efforts were "conscious, purposeful violations of" the OMPIA, or that in distributing their marketing materials Defendants showed "deliberate disregard" of the OMPIA. These omissions are fatal to any OMPIA cause of action.

Moreover, while the State does not identify which paragraphs of section 1005(A) Defendants allegedly violated, it fails to state a claim under any of them. For example, paragraph 1 requires the existence of a false "claim," Okla. Stat. tit. 56, § 1005(A)(2), which the OMPIA defines as "a communication . . . which is utilized to identify a good, item or service as reimbursable . . . , or which states income or expense and is or may be used to determine a rate of payment" under the State's Medicaid program, *id.* § 1002(3). The Petition contains no allegations that Defendants' marketing communications satisfied this definition. Causes of action based on the remaining operative provisions of the OMPIA fare no better.[23]

---

[23] Paragraph 2, for example, requires a false statement "for use in obtaining or seeking to obtain *authorization to provide* a good or service." *Id.* § 1005(A)(2). The State does not and cannot allege that Defendants, through their marketing efforts, ever sought authorization to provide goods or services. The other paragraphs are similarly inapposite. *See id.* §§ 1005(A)(3) ("obtaining a good or service"), (A)(4) ("for use in qualifying as a provider of a good or a service"), (A)(5) ("[c]harge any recipient . . . in excess of rates of remuneration"), (A)(6) ("[s]olicit or accept a . . . kickback"), (A)(7) ("fail to maintain or destroy . . . records as required by law").

Finally, the State demands "restitution," "penalties," "costs," and "attorney's fees" pursuant to the OMPIA. Pet. ¶ 101. But under the OMPIA, these remedies are available *only* against a "person who *receives payment for furnishing goods or services* under the Oklahoma Medicaid Program." Okla. Stat. tit. 56, § 1007(A). The State does not and cannot allege that any Defendant ever received payment from the Medicaid Program for furnishing goods or services.

### 3. The Oklahoma Consumer Protection Act Claim (Cause of Action C) Must Be Dismissed.

The State claims that Defendants violated the Oklahoma Consumer Protection Act ("OCPA") by engaging in "unfair" and "deceptive" trade practices. Pet. ¶¶ 105-106. This claim must be dismissed because the State fails to plead a consumer transaction, much less an unfair act or deceptive conduct, and because it is barred under the OCPA's safe-harbor provision. Moreover, the State's claim for damages and penalties under the OCPA fails as matter of law.[24]

### a. The State Does Not Allege a "Consumer Transaction."

"The OCPA prohibits the use of certain false and misleading practices in *consumer transactions*." *Walkabout v. Midland Funding LLC*, 2015 WL 2345308, at *2 (W.D. Okla. May 14, 2015) (dismissing claim because transaction at issue was not a "consumer transaction"). The consumer transaction must occur *in Oklahoma* to trigger the OCPA. *See Steinbeck v. Dollar Thrifty Auto. Grp., Inc.*, 2008 WL 4279798, at *3 (N.D. Okla. Sept. 15, 2008); *cf. Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶¶ 23-24, 164 P.3d 1028, 1037.

Here, the State fails to plead facts about a single transaction involving an Oklahoma consumer. It does not allege a single Oklahoma prescription written because of some false or mis-

---

[24] The State's OCPA claim relies upon allegations of "false or misleading misrepresentations" and "mislead[ing]" conduct. *E.g.*, Pet. ¶¶ 107, 112. Such claims are quintessentially claims of fraud and, as discussed *supra* at § III.B, must be plead with particularity. *See Stockwell v. Hamm*, 1932 OK 64, 7 P.2d 461, 462; *Rogers v. Brummett*, 1923 OK 711, 220 P. 362, 363.

leading statement about opioids, a single Oklahoma resident who paid for any such prescription, or a single Oklahoma patient who was harmed by such a prescription. Because the State pleads no facts about any particular consumer transaction in Oklahoma, the OCPA claim must be dismissed.

### b.    The OCPA Claim Is Barred by the Safe-Harbor Provision.

OCPA liability cannot be premised on conduct "regulated under laws administered by . . . any . . . regulatory body . . . acting under statutory authority of this state or the United States." Okla. Stat. tit. 15, § 754(2); *see also Estate of Hicks ex rel. Summers v. Urban E., Inc.*, 2004 OK 36, ¶¶ 25-26, 92 P.3d 88, 94. Importantly, the applicability of this safe-harbor exemption turns "solely on whether there is regulation [covering an action or transaction], *not whether there is compliance.*" *Arnett v. Mylan, Inc.*, 2010 WL 2035132, at *3 (S.D.W. Va. May 20, 2010).

Applying this exemption, courts have repeatedly dismissed OCPA claims based upon false and misleading marketing in regulated industries. In *Estate of Hicks*, for instance, a plaintiff alleged that a nursing home had engaged in fraudulent marketing. 2004 OK 36, ¶ 26, 92 P.3d at 94. The Supreme Court held that the plaintiff's OCPA claim was barred "because the provision of care and medical services by nursing homes is regulated under laws administered by the Oklahoma Department of Health under the Nursing Home Care Act." *Id.* ¶ 33, 92 P.3d at 95.[25]

The safe-harbor exemption has also been applied to bar OCPA claims based upon allegedly fraudulent marketing of prescription medicines. In *Arnett*, a plaintiff brought an OCPA

---

[25] *See also Sonic Indus. LLC v. Halleran*, 2017 WL 239388, at *6 (W.D. Okla. Jan. 19, 2017) (barring OCPA claim in franchisee-franchisor dispute because the FTC regulated the conduct at issue); *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1228-29 (W.D. Okla. 2008) (barring OCPA claim in light of the "Oklahoma Insurance Commissioner['s authority] to regulate the kinds of acts alleged as wrongful in this action"); *Williams v. CSC Credit Servs.*, 2007 WL 1959219 (N.D. Okla. June 29, 2007) (barring claim based upon fair credit reporting for similar reason).

claim against the manufacturers of an opioid patch, alleging that the manufacturers failed to disclose its risks. 2010 WL 2035132, at *1. The court held that the claim was barred because "the marketing, distribution, and sale of pharmaceuticals" "is certainly 'regulated by a regulatory body . . . acting under the statutory authority . . . of the United States.'" *Id.* at *3 (quoting Okla. Stat. tit. 15, § 754(2)).

The Court should reach the same conclusion here. The State's OCPA claim is based upon the marketing and sale of prescription medicines—conduct that is regulated by the FDA. *See id.* at *1; *see also* 21 U.S.C. §§ 321 *et seq.* The OCPA claim thus fails as a matter of law.

c.    **The State Fails to Allege an "Unfair" Trade Practice.**

The State fails to plead an "unfair" trade practice under Okla. Stat. tit. 15, § 753(20). Pet. ¶ 106. Although the statute does not "specifically define what constitutes an unfair trade practice," *Patterson v. Beall*, 2000 OK 92, ¶ 34, 19 P.3d 839, 847, the FTC Act—on which the OCPA is based—provides that an act is not unfair unless it "is likely to cause substantial injury to consumers which is *not reasonably avoidable* by consumers themselves and *not outweighed by countervailing benefits* to consumers or to competition." 15 U.S.C. § 45(n).

Here, the Petition makes clear that any claimed injury was in fact *reasonably avoidable*. The State concedes that labels disclose the "risk of abuse and addiction." Pet. ¶ 70. And, as discussed in Section III.E.3 above, every patient who legally obtains an opioid is given the label, and every physician is has a duty to know the risks disclosed in the label. Thus, any physician or consumer could thus avoid potential injury by adhering to the label's cautionary statements or by not prescribing or taking opioids altogether. *Cf. Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012) (dismissing claim on grounds that injury was avoidable where terms and conditions of credit-card application disclosed fee plaintiff alleged to have been hidden).

The State also does not—and cannot—allege that any purported injury to an unidentified

30

Oklahoma consumer is *not outweighed by countervailing benefits* to consumers. The State ignores that Oklahoma law recognizes that opioids are appropriate for the treatment of pain relief, including chronic pain, and requires physicians to be aware of and advise patients of the risks associated with such use, create a treatment plan, and review the course of pain treatment. OAC § 435:10-7-11(2)-(4). The State also ignores that the FDA's approval of opioids for the treatment of chronic pain represents a determination that they are effective and safe for that use. 21 U.S.C. § 355(d). That some patients suffered the risks disclosed in the labels for those medications cannot render the statements unfair. Defendants' challenged conduct thus is not "unfair" as a matter of law.

### d. The State Fails to Allege a "Deceptive" Trade Practice.

The State also fails to plead that Defendants engaged in any "deceptive" trade practice under the OCPA. Pet. ¶ 105. Oklahoma law defines such practices as including "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." Okla. Stat. tit. 15, § 752. Although the State alleges that Defendants' alleged misrepresentations "deceived or could reasonably be expected to deceive or mislead *consumers*," Pet. ¶ 105 (emphasis added), *physicians* are the relevant target group of the alleged misrepresentations and thus should be the focus of the inquiry. *See* FTC Policy Statement on Deception at 2-3 (a "prescription drug advertisement to doctors[] would be judged in light of the knowledge and sophistication of that group"). The State's complete failure to allege that any physician was deceived or was reasonably expected to be deceived by the alleged misrepresentations —much less that any patient suffered a subsequent detriment—defeats its OCPA claim. Nor has the State identified any Oklahoma consumer that has been misled by Defendants.

Moreover, the determination of whether challenged conduct is likely to mislead must be

viewed not in isolation but in the context of the totality of information available to the person

allegedly misled. *Id.* at 2 & n. 7 (Oct. 14, 1983) ("The entire advertisement, transaction or course

of dealing will be considered"; claims must be examined in the context of the "entire document"

and the "nature of the transaction"). Here, as discussed in Section III.C above, the totality of that

information shows that there was no deception as a matter of law.

e.     **The State's Request for Damages and Penalties Fails.**

The State seeks to recover actual damages and penalties. Pet. ¶ 115. But it may do so un-

der the OCPA only "on behalf of an aggrieved consumer, in an individual action." Okla. Stat. tit.

15, § 756.1. The State's OCPA claim fails to meet that standard for multiple reasons.

*First*, the State cannot recover any alleged damages or penalties on its own behalf be-

cause it is not a "consumer"—*i.e.*, "one who consumes or uses economic goods." *Lumber 2, Inc.

v. Illinois Tool Works, Inc.*, 2011 OK 74, ¶ 20, 261 P.3d 1143, 1149; *see also Cent. Reg'l Em-

ployees Ben. Fund v. Cephalon, Inc.*, 2009 WL 3245485, at *3 (D.N.J. Oct. 7, 2009) (dismissing

New Jersey consumer-protection claim against pharmaceutical manufacturer and holding that

"[b]ecause third-party payors do not use or consume prescription medications themselves, they

are not 'consumers'"); *S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer Inc.*, 2009

WL 3151807, at *9 (S.D.N.Y. Sept. 30, 2009) (same under Texas consumer-protection statute).

*Second*, the State seeks to pursue alleged damages or penalties on behalf of unidentified

"*residents* of the State of Oklahoma," Pet. ¶ 103, but the statute precludes the State from seeking

relief on behalf of multiple individuals at once. The OCPA authorizes the Attorney General to

seek relief only on behalf of "an aggrieved consumer"—not "consumer*s*." And relief must be

pursued in an "individual action only" on behalf of that particular consumer. The Petition vio-

lates these requirements. *See Fed. Trade Comm'n v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 9

(D.D.C. 1999) (applying principle to dismiss damages claim brought by State on behalf of multi-

32

ple purchasers).

*Third*, the State has not alleged that any consumer is "aggrieved"—meaning that he suffered "actual injury or damage caused by a violation of the OCPA." *Walls v. Am. Tobacco Co.*, 2000 OK 66, ¶ 13, 11 P.3d 626, 630. Even if the State could be considered a "consumer," it alleges only that it paid the purchase price of a product (purportedly inappropriate medications), which does not satisfy this standard. *Id.*; *see also Sisemore v. Dolgencorp, LLC*, 212 F. Supp. 3d 1106, 1110 (N.D. Okla. 2016).[26] The State also fails to identify any consumer harmed by an opioid prescription resulting from any purported misrepresentation.

*Lastly*, the individualized-proof rule defeats the State's OCPA claim for alleged damages and penalties. Although Oklahoma courts have not yet addressed the rule's applicability to the OCPA, other courts have applied it to dismiss similar claims brought under analogous consumer-protection statutes, and the reasoning of those decisions applies equally here. *See, e.g., In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 456, 458-59 (E.D.N.Y. 2009) (rejecting Mississippi's "request[] [that] a penalty . . . be assessed for each of almost a million estimated Zyprexa prescriptions in Mississippi" on the ground that a proper assessment of the claimed penalties "would require individualized consideration of the circumstances of each prescription alleged to be in violation of the statute").

### 4. The Public-Nuisance Claim (Cause of Action D) Must Be Dismissed

Through its sweeping public-nuisance claim, the State seeks to hold Defendants responsible for a variety of secondary social ills that it alleges were caused by Defendants' "misrepre-

---

[26] *See also Parks v. AT & T Mobility, LLC*, 2012 WL 4382194, at *11 (W.D. Okla. Sept. 25, 2012) (applying rule); *Harrison v. Leviton Mfg. Co.*, 2006 WL 2990524, at *5 (N.D. Okla. Oct. 19, 2006) (same).

sentations and omissions." Pet. ¶ 118.[27] In Oklahoma, "[a] nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either . . . [a]nnoys, injures or endangers the comfort, repose, health, or safety of others . . . ." Okla. Stat. tit. 50, § 1. The State's nuisance claim fails because it does not adequately allege that Defendants engaged in unlawful activity or failed to perform a duty. *See Nuncio v. Rock Knoll Townhome Vill., Inc.*, 2016 OK CIV APP 83, ¶ 8, 389 P.3d 370, 374, *reh'g denied* (July 7, 2016); *Abraham v. Trail Lanes, Inc.*, 2014 OK CIV APP 107, ¶ 13, 352 P.3d 1256, 1262.

Indeed, the State points to no act committed by Defendants in Oklahoma which was unlawful or breached any duty. Oklahoma law expressly permits the use of controlled substances—like Defendants' FDA-approved medicines—for the treatment of chronic pain. OAC § 435:10-7-11; *see also id.* § 475:30-1-2 (permitting physicians to prescribe controlled substances). As discussed in Section III.C above, the State does not and cannot explain how it is unlawful to market medications for their lawful indications.[28] Similarly, the State fails to allege any facts to show that Defendants promoted opioids for unapproved or "off-label" conditions in Oklahoma: it does not plead a single interaction between Defendants and a single Oklahoma physician, a single Oklahoma patient, or the State itself. Moreover, the State acknowledges that Defendants' FDA-approved labels disclose the very risks of opioid treatment that Defendants supposedly concealed. Pet. ¶ 70; *see also id.* ¶¶ 53, 67, 124. Thus, the State fails to allege that any Defendant engaged in any unlawful activity or failed to perform a duty in Oklahoma.

---

[27] As discussed above (§ III.B), the State must plead its public-nuisance claims based on alleged "misrepresentations and omissions" with particularity.

[28] Indeed, Oklahoma law provides that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." Okla. Stat. tit. 50, § 4.

5.  **The Common-Law Fraud and Deceit Claim (Cause of Action E) Must be Dismissed.**

The State also fails to adequately plead the elements of its common-law fraud and deceit claim. Fraud and deceit are synonymous, and fraud may be actual or constructive. *Francis v. Branson*, 1933 OK 414, 31 P.2d 870, 881. The State alleges neither actual nor constructive fraud.

To maintain a claim for actual fraud, the State must plead with particularity "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) own detriment." *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218. The absence of any of the elements is "fatal to recovery." *Miller v. Long*, 1949 OK 186, ¶ 14, 210 P.2d 147, 150. Here, the State does not adequately plead factual support for any of these elements. As set forth in Section III.B above, the State fails to plead a material misrepresentation that any Defendant made as a positive assertion in Oklahoma, let alone the particular details of any such misrepresentation. And the State fails to identify any State official who relied on an alleged misrepresentation to the State's detriment, as required to state a fraud claim. The State's actual fraud claim thus fails.

The State also appears to assert a constructive fraud theory, which consists of a "breach of a duty which . . . gains an advantage for the actor by misleading another to his prejudice." *Patel v. OMH Med. Ctr., Inc.*, 1999 OK 33, ¶ 34, 987 P.2d 1185, 1199. But the State's allegations as to constructive fraud are wholly conclusory and thus cannot support a claim. *See, e.g.*, Pet. ¶ 123 ("Defendants, having chosen to speak and make representations to healthcare providers working for the State regarding their opioids, were under a duty to disclose the whole truth, and not disclose partial and misleading truths."). The State does not identify a single interaction made by any Defendant with any healthcare provider; does not identify a single omission or "partial"

truth made to any particular healthcare provider; and does not connect any such statement or omission to any prescription for which the State paid.

> ### 6. The Unjust-Enrichment Claim (Cause of Action F) Must Be Dismissed.

The State's unjust-enrichment claim is derivative of the State's other claims and thus fails for the same reasons outlined above. *See Weaver v. Legend Senior Living, LLC*, 2017 WL 3088416, at *4 (W.D. Okla. July 20, 2017) (dismissing as "duplicative" unjust-enrichment claim premised on same conduct as other dismissed claims).

In addition, unjust enrichment exists only where there is some inequity that must be rectified. *See Harvell*, 2006 OK 24, ¶ 18, 164 P.3d at 1035 (holding that unjust enrichment arises "from the failure of a party to make restitution in circumstances where it is inequitable" or from one party's holding of property "that, in equity and good conscience, it should not be allowed to retain"); *Teel v. Pub. Serv. Co. of Okla.*, 1985 OK 112, 767 P.2d 391, 398 (requiring showing of "enrichment to another coupled with a resulting injustice") (superseded by statute on other grounds). Here, the State alleges no such an inequity because it fails to allege that it suffered any cognizable harm or that Defendants caused any such harm. *See supra* § III.E.

Finally, the State's unjust-enrichment claim also fails because the State nowhere alleges, as it must, that it has no adequate remedy at law. Instead, the State alleges the opposite—that it has a legal remedy through its other claims. *See Harvell*, 2006 OK 24, ¶ 18, 164 P.3d at 1035 ("Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment."); *Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286, 1289 (N.D. Okla. May 18, 2016).

Dated September 22, 2017

By: _Sanford C. Coats_

Sanford C. Coats, OBA No. 18268
Cullen D. Sweeney, OBA No. 30269
CROWE & DUNLEVY, P.C.
Braniff Building
324 N. Robinson Ave., Ste. 100
Oklahoma City, OK 73102
Tel: (405) 235-7700
Fax: (405) 272-5269
sandy.coats@crowedunlevy.com
cullen.sweeney@crowedunlevy.com

*Counsel for Defendants Purdue Pharma L.P.,
Purdue Pharma Inc., and The Purdue Frederick
Company Inc.*

Of Counsel:

Sheila Birnbaum
Mark S. Cheffo
Hayden A. Coleman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
sheilabirnbaum@quinnemanuel.com
markcheffo@quinnemanuel.com
haydencoleman@quinnemanuel.com

Patrick J. Fitzgerald
R. Ryan Stoll
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Tel: (312) 407-0700
Fax: (312) 407-0411
patrick.fitzgerald@skadden.com
ryan.stoll@skadden.com

Dated: September 22, 2017

By:  *Robert McCampbell*

Robert G. McCampbell, OBA No. 10390
Travis V. Jett, OBA No. 30601
GABLEGOTWALS
One Leadership Square, 15th Fl.
211 North Robinson
Oklahoma City, OK 73102-7255
T:  +1.405.235.5567
Email:  RMcCampbell@Gablelaw.com
Email:  TJett@Gablelaw.com

OF COUNSEL:

Steven A. Reed
Harvey Bartle IV
Jeremy A. Menkowitz
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
T:  +1.215.963.5000
Email:  steven.reed@morganlewis.com
Email:  harvey.bartle@morganlewis.com
Email:  jeremy.menkowitz@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL  33131
T:  +1.305.415.3416
Email:  brian.ercole@morganlewis.com

*Attorneys for Defendants Cephalon, Inc., Teva
Pharmaceuticals USA, Inc., Watson Laboratories,
Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a
Watson Pharma, Inc.*

{S412680;}

By: _____

Benjamin H. Odom, OBA No. 10917
ODOM, SPARKS & JONES PLLC
HiPoint Office Building
2500 McGee Drive Ste. 140
Oklahoma City, OK 73072
Telephone: (405) 701-1863
Facsimile:   (405) 310-5394
Email: odomb@odomsparks.com

*Counsel for Defendants Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a/ Janssen Pharmaceuticals, Inc.*

Of Counsel:

Charles C. Lifland
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-60000
Facsimile: (213) 430-6407
Email: clifland@omm.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing was mailed, postage prepaid, this 22nd day of September, 2017 to:

Mike Hunter
Abby Dillsaver
Ethan A. Shaner
Attorney General's Office
313 N.E. 21st Street
Oklahoma City, OK  73105
Attorneys for Plaintiff

Bradley E. Beckworth
Jeffrey J. Angelovich
Nix, Patterson & Roach, LLP
512 North Broadway Avenue, Suite 200
Oklahoma City, OK  73102
Attorneys for Plaintiff

Robert G. McCampbell
Travis V. Jett
GableGotwals
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, OK  73102
Attorneys for Teva Pharmaceuticals USA, Inc. and Cephalon, Inc.

Michael Burrage
Reggie Whitten
Whitten Burrage
512 North Broadway Avenue, Suite 300
Oklahoma City, OK  73102
Attorneys for Plaintiff

Glenn Coffee
Glenn Coffee & Associates, PLLC
915 North Robinson Avenue
Oklahoma City, OK  73102
Attorney s for Plaintiff

John H. Sparks
Odom, Sparks & Jones, PLLC
Suite 140
HiPoint Office Building
2500 McGee Drive
Norman, OK  73072
Attorneys for Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.