# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| | **Case No. 17-MD-2804** |
| This document relates to: | **Judge Dan Aaron Polster** |
| *The Muscogee (Creek) Nation v. Purdue Pharma L.P., et al.*, Case No. 18-op-45459 | |

**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS CAREFIRST PHARMACY, CITY DRUG, CITYPLEX PHARMACY, COUCH PHARMACY, CVS, ECONOMY PHARMACY, ERNIE'S PHARMACY, FREELAND BROWN PHARMACY, GADDY DISCOUNT DRUG, M&D STAR DRUG, MED-ECON DRUG, OLYMPIA PHARMACY, OMNICARE, PIPPENGER PHARMACIES, REASOR'S, ROGERS DRUG CO., SPOON DRUGS, WALGREENS, AND WALMART**

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................... 2

I.      The Nation Lacks Standing Under Either of Its Theories .................................. 2

II.     The Nation's Group Pleading Fails Under Any Pleading Standard. ................. 2

III.    The Nation Does Not Press Any Claims Against the Pharmacy Defendants as
        Distributors. ........................................................................................................ 3

IV.     Controlling Oklahoma Law Defeats All Claims Against the Pharmacy Defendants
        as Pharmacies. ..................................................................................................... 4

V.      The Complaint Fails Because It Cannot Establish Proximate Cause. .............. 6

VI.     Each of the Nation's Individual Claims Fails as a Matter of Law. .................. 8

        A.      The Nation Cannot Identify Any Allegations That Would Support a
                RICO Claim Against the Pharmacy Defendants (Count II) ................... 8

        B.      The Nation Cannot Identify a Duty to Support Its Negligence Claim
                Against the Pharmacy Defendants (Count VIII) ................................... 10

        C.      The Nation's Lanham Act Claim Against the Pharmacy Defendants
                Fails (Count III). .................................................................................... 11

        D.      The Nation Cannot Support Its Nuisance Claim (Count VII) .............. 14

        E.      The Nation Has Not Pleaded a Civil Conspiracy Claim (Count X). .... 15

        F.      The Nation Cannot State a Claim for Unjust Enrichment Under
                Oklahoma Law (Count IX). .................................................................... 16

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Brigance v. Velvet Dove Restaurant, Inc.*,
   725 P.2d 300 (Okla. 1986) ........................................................................ 6, 7

*Carista v. Valuck*,
   394 P.3d 253 (Okla. Civ. App. 2016) ........................................................ passim

*City of Miami v. Bank of Am. Corp.*,
   800 F.3d 1262 (11th Cir. 2015) ................................................................ 16

*City of Miami v. Citigroup Inc.*,
   801 F.3d 1268 (11th Cir. 2015) ................................................................ 16

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*,
   270 F.3d 298 (6th Cir. 2001) .................................................................... 13

*Hitch Enters., Inc. v. Cimarex Energy Co.*,
   859 F. Supp. 2d 1249 (W.D. Okla. 2012) ................................................ 15, 16

*Howard v. Zimmer, Inc.*,
   299 P.3d 463 (Okla. 2013) ........................................................................ 11

*In re Whirlpool Corp. Front-Loading Washer Prod's. Liab. Litig.*,
   684 F. Supp. 2d 942 (N.D. Ohio 2009) .................................................... 10

*King v. Modern Music Co.*,
   33 P.3d 947 (Okla. Civ. App. 2001) ........................................................ 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................. 2

*Marek v. Navient Corp.*,
   2017 WL 2881606 (N.D. Ohio July 6, 2017) ............................................ 5

*Marie v. Am. Red Cross*,
   771 F.3d 344 (6th Cir. 2014) .................................................................... 3

*McClelland v. Harvie Kothe-Ed Rieman, Post No. 1201,
   Veterans of the Foreign Wars of U.S., Inc.*,
   770 P.2d 569 (Okla. 1989) ........................................................................ 6

*Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dept.*,
   230 P.3d 869 (Okla. 2010) ........................................................................ 11

*Prince v. B.F. Ascher Co., Inc.*,
    90 P.3d 1020 (Okla. Civ. App. 2004) ................................................................. 7, 8

*Sanders v. Crosstown Market, Inc.*,
    850 P.2d 1061 (Okla. 1993) ................................................................................. 7

*Schovanec v. Archdiocese of Okla. City*,
    188 P.3d 158 (Okla. 2008) ................................................................................. 15

*Walden v. Sparkman Bros. Corp.*,
    879 P.2d 153 (Okla. Civ. App. 1994) ................................................................. 7

*Wysong Corp. v. APN, Inc.*,
    889 F.3d 267 (6th Cir. 2018) .............................................................................. 13

**Statutes**

Okla. Stat. Ann. 63 § 465.20 (2001) ......................................................................... 8

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................ 2

Fed. R. Civ. P. 9 .......................................................................................... 2, 3, 9, 11

**Other Authorities**

RESTATEMENT (THIRD) OF TORTS § 8, cmt. g
    (Tentative Draft No. 2, April 7, 2014) ............................................................... 15

Throughout its 149-page opposition brief, the Nation refuses to confront the fact that the moving Pharmacy Defendants[1] are differently situated—both as a matter of fact and as a matter of law—than either the Manufacturer or the Distributor Defendants.  The Court should not make the same mistake.

Time and again, the Nation's brief makes clear that its theory and arguments are focused on fraudulent and deceptive marketing allegations that simply do not include any of the 23 Pharmacy Defendants.  It attaches a dozen state court cases that do not name and have nothing to do with any of the Pharmacy Defendants.  It offers little to no response to binding Oklahoma law that forecloses liability against the Pharmacy Defendants.  It relies on theories of causation that work (if at all) only against other defendants.  It simply ignores the Pharmacy Defendants' key arguments or, when it does respond, points to the alleged conduct of the Manufacturer Defendants as if allegations about other parties could support claims against the Pharmacy Defendants.

The Nation is the master of its complaint.  But the Nation's decision to level claims against undifferentiated groups containing dozens of dissimilar defendants does not relieve it of its obligation to plead a legally cognizable claim against each defendant or see those claims

---

[1] Consistent with its failure to plead claims against any of the moving defendants as distributors, the Nation refers to them in its opposition brief exclusively as the "Pharmacies."  *E.g.*, Pl. Br. at 14.  This reply adopts that label.  The "Pharmacy Defendants" include CareFirst Pharmacy, Inc.; City Drug Co. and City Drug of Coweta, Inc.; Cityplex Pharmacy; CVS Pharmacy, Inc. and Oklahoma CVS Pharmacy, LLC (collectively "CVS"); Economy Pharmacy, Inc.; Ernie's Pharmacy & Wellness Center, Inc.; Freeland Brown Pharmacy, Inc.; Gaddy Discount Drug, Inc.; M&D Star Drug, Inc.; Med-Econ Drug, Inc.; NRF, Inc. d/b/a Couch Pharmacy ("Couch Pharmacy"); Olympia Pharmacy; Omnicare Distribution Center LLC; Pippenger Pharmacies, LLC; Reasor's LLC; Rogers Drug Co., Inc.; Spoon Drugs, Inc.; Walgreen Co.; and Walmart Inc. (named as Wal-Mart Stores, Inc.).  As described in its opposition brief, the Nation has filed unopposed motions to dismiss moving defendants CVS Health Corporation and Walgreens Boots Alliance, Inc.  *Id.* at 8 n.33.

1

dismissed.  Neither should the Nation's failure to engage with the Pharmacy Defendants' arguments for dismissal prevent this Court from carefully evaluating the adequacy (or lack thereof) of the Nation's claims against each of the *Pharmacy* Defendants individually—not the "Defendants" as a group.[2]

## ARGUMENT

**I.      The Nation Lacks Standing Under Either of Its Theories.**

As explained in the briefing in the *Blackfeet Tribe* matter, the Nation's attempt to recover costs it has expended to address the abuse of prescription opioids implicates *proprietary* interests rather than a quasi-sovereign interest as required for *parens patriae* standing.  Nor can the Nation establish Article III standing under the traditional test in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  *See generally* Reply in Support of Motion to Dismiss First Amended Complaint by Defendants CVS Pharmacy, Inc., CVS Indiana, L.L.C., Walmart Inc., Walgreen Co. and Walgreen Arizona Drug Co., in *The Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corporation, et al.*, No. 18-op-45749 (MDL Doc. #1085), at 1-2.

**II.     The Nation's Group Pleading Fails Under Any Pleading Standard.**

The Nation defends its improper group pleading by claiming that none of the defendants dispute its pleading under Federal Rule of Civil Procedure 8(a) (rather than Rule 9 (b)).  Pl. Br. at 52, 54.  But the Nation also acknowledges that the Pharmacy Defendants have argued that, "*regardless of the pleading standard*, the Nation does not allege sufficient facts to state a claim that is plausible on its face."  *Id.* at 52 (emphasis added).  The problem with the Nation's claims against the Pharmacy Defendants is not just that the Nation does not provide *enough* detail to

---

[2] The amicus brief filed by 448 tribes advances no legal arguments in response to any of the grounds for dismissal identified in the Pharmacy Defendants' motion to dismiss.

2

satisfy Rule 9(b), but that, as to the Pharmacy Defendants, the Nation's Complaint frequently provides no detail at all.[3]

The Nation's opposition brief only confirms how its unabashed group pleading fails to give notice of the conduct alleged against each defendant.  For example, the Complaint repeatedly alleges that "Defendants"—a group of more than 40 entities ranging from multinational corporations to mom-and-pop stores, including all 23 of a diverse group of Pharmacy Defendants—engaged in false "advertising and promotion of prescription opioids." Am. Compl. ¶ 411; *see also id.* ¶¶ 412, 417.  After the Pharmacy Defendants argued that the Nation has not alleged any such advertising or promotion by any of them, the Nation just abandoned these allegations as to the Pharmacy Defendants and inexplicably called the argument "irrelevant."  Pl. Br. at 146.  By abandoning the allegations of its Complaint that the Pharmacy Defendants, like all other "Defendants," falsely advertised or promoted prescription opioids, the Nation concedes that its group pleading does not give anything like the required fair and reliable notice as to "what the . . . claim is and the grounds upon which it rests."  *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014).  The Nation cannot have its cake and eat it too—insisting that broad group allegations put defendants on notice and then saying "never mind" when particular defendants point out the allegations' infirmity as to them.

## III.    The Nation Does Not Press Any Claims Against the Pharmacy Defendants as Distributors.

As the Pharmacy Defendants' motion to dismiss explained, the Complaint fails to make out any claims against any of the Pharmacy Defendants as distributors—never mentioning even one of the Pharmacy Defendants in any of its allegations against the "Distributor Defendants."

---

[3] The Pharmacy Defendants address the Complaint's shortcomings under Rule 9(b) below, with reference to the specific claims sounding in fraud, including the Nation's RICO claims.

*See* Pharmacy Defs. Br. at 4.  Unable to dispute those facts, the Nation says nothing in response.  Thus, all claims against the Moving Defendants in their capacities as distributors should be dismissed.[4]

## IV. Controlling Oklahoma Law Defeats All Claims Against the Pharmacy Defendants as Pharmacies.

The Nation makes no effort to explain how it can assert what are effectively pharmacy malpractice claims against all 23 of the Pharmacy Defendants without identifying a single act of malpractice by a single one of them.  Pharmacy Defs. Br. at 3.  This deficiency in the Nation's pleading, underscored by its silence in response to the Pharmacy Defendants' brief, requires dismissal of all remaining claims against the Pharmacy Defendants.

In addition, the Nation cannot avoid Oklahoma's learned intermediary doctrine.  While agreeing that "Oklahoma courts will . . . shield pharmacies from liability" unless the prescription was "unreasonable on its face," *see* Pl. Br. at 32 (quoting *Carista v. Valuck*, 394 P.3d 253, 256 (Okla. Civ. App. 2016)), the Nation tries to avoid the clear consequence of this legal rule with allegations of deceptive advertising and promotion by the "Marketing Defendants," *see id.* at 31-32.  The Nation argues that doctors' prescribing decisions are not an intervening cause because they are the "foreseeable, . . . known and intentional consequences of Defendants' actions."  Pl. Br. at 117.  But the only "Defendants" for whom that could be true are the *Marketing Defendants*.  The allegations of marketing by manufacturers to doctors—conduct in which the Nation concedes the Pharmacy Defendants played no part—have no relevance to the learned intermediary doctrine's application to the Nation's claims against the Pharmacy Defendants, who

---

[4] The Pharmacy Defendants ostensibly included in the Nation's claims against the "Distributor Defendants" are Walgreens and Walmart.  As arguments in the alternative, Walgreens and Walmart continue to incorporate by reference the Distributor Defendants' briefing.

are barred under Oklahoma law from substituting their judgment for that of the prescribing doctor. *Carista*, 394 P.3d at 259 & n.5.[5]

The Nation can point to no allegation of a single prescription dispensed by any of the Pharmacy Defendants in Oklahoma that would fall under an exception to Oklahoma's learned intermediary doctrine.[6] Such an exception requires a prescription that is "unreasonable on its face," such as prescriptions for "bizarre quantities," "dosages clearly outside of any acceptable range," "clearly inappropriate drugs," or for a drug that the pharmacist has reason to know is "clearly contraindicated" for the specific patient. *Id.* at 256-57.

Rather than plead these essential facts to avoid the learned intermediary doctrine, the Nation relies on general allegations that the Pharmacy Defendants failed to identify and respond appropriately to "red flags." Pl. Br. at 34 & n. 90. But even if that were true, filling a prescription in the face of an alleged "red flag" is hardly the same thing as filling a prescription that is unreasonable on its face. Rather, the evaluation of "red flags" involves the exercise of a pharmacist's professional judgment, including, for example, (1) evaluating whether a prescription has handwriting that is "too legible," Am. Compl. ¶ 194; (2) deciding what to make of the fact that a 30-day prescription is being refilled before a full 30 days has passed, *id.*; (3) evaluating a prescription combining drugs that are commonly abused together even if not medically contraindicated, *id.* ¶ 195; (4) determining whether a particular doctor writes

---

[5] Because the Nation correctly acknowledges that the test in *Carista* dictates whether or not a pharmacist filling a prescription is shielded from liability under Oklahoma law, *see* Pl. Br. at 32, its more general analysis of superseding or intervening causes is unnecessary.

[6] The existence of settlement agreements from actions brought almost exclusively in other states, involving only a few of the Pharmacy Defendants, and with no alleged connection to the Nation or its alleged injuries, does not bump the Nation's claims from the "possible" to the "plausible." *Marek v. Navient Corp.*, 2017 WL 2881606, *2 (N.D. Ohio July 6, 2017) (Polster, J.).

"significantly more" prescriptions than other practitioners, *id.* ¶ 194; (5) identifying prescriptions with the name of a legitimate doctor but an altered callback number, *id.* ¶ 193; (6) assessing a customer new to the store or community, *id.* ¶ 195; or (7) evaluating the significance of a customer's decision to pay with cash instead of through insurance, *id.*

The Nation's only remaining defense of its claims against the Pharmacy Defendants is to baldly assert that whether any of the Pharmacy Defendants filled "unreasonable" prescriptions is a "question[] for the jury" and "not appropriate on a motion to dismiss."  Pl. Br. at 32.  But *Carista* itself upheld dismissal of pharmacy claims where the plaintiff failed to identify prescriptions that overcame the learned intermediary bar.  *See* 394 P.3d at 255, 259.  Because the Nation likewise has not identified any qualifying prescriptions in this case, dismissal must also follow here.

**V.     The Complaint Fails Because It Cannot Establish Proximate Cause.**

Beyond its failure to overcome the learned intermediary bar applied in *Carista*, the Nation also cannot escape Oklahoma's "sole efficient legal cause" doctrine, under which the intentional misuse of an intoxicating product is the only legally relevant cause of resulting injuries.  *See McClelland v. Harvie Kothe-Ed Rieman, Post No. 1201, Veterans of the Foreign Wars of U.S., Inc.*, 770 P.2d 569, 572 (Okla. 1989).

The Nation tries to suggest, with no explanation, that the selling of alcohol and the dispensing of opioids—both regulated intoxicating substances with the potential for abuse—represent "completely different fact pattern[s]."  Pl. Br. at 25 n.68.  Inconsistently, the Nation next asks the Court to ignore the sole efficient legal cause doctrine as to prescription opioids because Oklahoma modified this common law rule on public policy grounds specifically for sellers of alcohol in *Brigance v. Velvet Dove Restaurant, Inc.*, 725 P.2d 300 (Okla. 1986).  But the Nation has nothing to say about the numerous cases cited by the Pharmacy Defendants

describing the *Brigance* exception as "narrow," *Sanders v. Crosstown Market, Inc.*, 850 P.2d 1061, 1062-63 (Okla. 1993), extending it only in "carefully defined circumstances," *King v. Modern Music Co.*, 33 P.3d 947, 954 (Okla. Civ. App. 2001), and holding that the traditional rule remains in full force outside *Brigance*'s "own corner of the common law," *Walden v. Sparkman Bros. Corp.*, 879 P.2d 153, 154 (Okla. Civ. App. 1994). *See* Pharmacy Defs. Br. at 5 n.5.

Thus, the Nation cannot distinguish the on-point holding of *Prince v. B.F. Ascher Co., Inc.*, 90 P.3d 1020 (Okla. Civ. App. 2004), where the court applied these principles of Oklahoma law and held that there was no proximate causation—as a matter of law—for the intentional misuse of an intoxicating and addictive substance, despite allegations that the defendants in that case knew the product was addictive and easily abused and that the misuse was foreseeable. *Id.* at 1024, 1028-29.

It is no consequence that the Nation is not bringing a wrongful death claim. Pl. Br. at 33 n.86. The Nation cannot explain why its use of different labels for its tort claims would relax the proximate cause analysis, which is even *more* attenuated here than it was in *Prince*. *See* Pharmacy Defs. Br. at 6.

It is similarly irrelevant that the decedent in *Prince* did not use the drug in that case— propylhexedrine, the active ingredient for a nasal inhaler—for its "intended purpose." Pl. Br. at 33 n.86. The Nation concedes, as it must, that prescription opioids have a legitimate medical purpose, including for the treatment of pain. Am. Compl. ¶ 1. But just as in *Prince*, the harm alleged by the Nation stems from the intentional use of these product not for their "intended purpose" but for illegitimate or "non-medical" uses as an intoxicant. *See id.* ¶¶ 6-8.

The Nation's last effort to distinguish *Prince* is to argue that the product in that case only became dangerous due to "after-purchase changes"—namely, opening an easily disassembled

7

plastic container and ingesting or injecting the active drug.  Pl. Br. at 33 n.86.  Although "after-purchase modifications" were relevant to the substantive analysis of the products liability claim in *Prince*, *see* 90 P.3d at 1026-27, they had nothing to do with the court's holding on proximate cause, which turned on the decedent's intentional misuse of the product, *see id.* at 1028 (the decedent's "criminal use of the propylhexedrine . . . as a stimulant was the supervening cause of his death"); *id.* at 1029 (defendants "were not required to anticipate [the decedent's] criminal acts").  The court's reasoning applies with full force to the Nation's claims here, which are based on the intentional non-medical use of prescription opioids.  *See id.* at 1026 n.4 (citing 63 O.S. 2001 § 465.20, which "prohibits consumption of substances (excluding liquor) to achieve an intoxicating effect, unless done under the direction or prescription of a doctor").[7]

## VI.  Each of the Nation's Individual Claims Fails as a Matter of Law.

### A.  The Nation Cannot Identify Any Allegations That Would Support a RICO Claim Against the Pharmacy Defendants (Count II).

The Nation does not dispute that its RICO claims are focused on distribution and not retail dispensing.  *See* Pharmacy Defs. Br. at 7-8 n.8.  As the Nation has not pleaded a single relevant fact about any of the Pharmacy Defendants acting as a distributor, this concession alone requires dismissal of the Nation's RICO claims as to each of the Pharmacy Defendants.

---

[7] Even if after-purchase tampering was relevant to the proximate cause analysis in *Prince*, the result would be the same.  As plaintiffs in the MDL litigation have repeatedly alleged, the abuse of prescription opioids frequently involves modification of the drugs.  *See*, *e.g.*, Second Am. Compl. in *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, No. 18-op-45090 (MDL Doc. #477) ¶ 315 (alleging opioid deaths associated with "injection" of OxyContin and "snorting the drug"); *id.* ¶ 318 (describing "a variety of ways to tamper with OxyContin and Hysingla ER, including through grinding, microwaving then freezing, or drinking soda or fruit juice in which a tablet is dissolved"); *id.* ¶ 334 (alleging that Opana ER was subject to abuse by "cutting, grinding, or chewing" and could be "readily prepared for injections and more easily injected").  These are some of many examples, of which this Court can take judicial notice.  *See* Pl. Br. at 9 n.36 (explaining that the Court "may take judicial notice" of claims advanced in other court proceedings, even those falling outside the MDL).

It is easy enough to understand the Nation's decision not to address further the inadequacy of its RICO claim against the Pharmacy Defendants.  The Nation cites no authority for the proposition that Rule 9(b) can be satisfied by group pleading with no specific allegations about a particular defendant.  In fact, even as to the group of so-called "Diversion Defendants," the Nation does not even attempt to argue its claims are "detailed" or "specific."  *Compare* Pl. Br. at 56-57 (describing purportedly "detailed and specific" examples of fraud by "Marketing Defendants," "Generic Manufacturers," and "Brand-Name Manufacturers"), *with id.* at 56-57 (dropping any such adjectives in addressing claims against the "Diversion Defendants").  While the Nation's RICO allegations discuss the Manufacturer and Distributor Defendants by name, they do not mention any of the Pharmacy Defendants even once.  Pharmacy Defs. Br. at 8.

The Nation asserts that other courts addressing claims against the Manufacturer or Distributor Defendants have found no pleading deficiencies in cases with similar fraud-based claims.  Pl. Br. at 59.  But *not one* of those cases involved, much less approved, a claim against any of the Pharmacy Defendants, which is the entire point of the Pharmacy Defendants' motion to dismiss.  *See* Pharmacy Defs. Br. at 8 (explaining that the Nation's complaint is "one of the few . . . trying to shoehorn any of the *Moving Defendants* into RICO claims against the *Manufacturer* and *Distributor Defendants*").  Nor is there any comparison between the level of detail in the hundreds of paragraphs devoted to allegations about the Manufacturer Defendants in those cases and, here, the utter lack of any specific allegations about any of the Pharmacy Defendants.  *See Mo. Litig.* at 2-3 (Pl. Br. Ex. I) ("Plaintiff's petition here clearly alleges *specific* representations made by *specific* actors at *specific* times . . . and clearly makes claims against *each* Defendant.") (emphasis added); *Ohio Litig.* at 5 (Pl. Br. Ex. E) ("The complaint contains *over 40 pages* which explain *in detail* the marketing tactics utilized by Defendants . . .  [T]he

complaint adequately sets forth the representations made [and] how those representations were distributed *to physicians and citizens of Ohio. . . .*") (emphasis added).

Finally, the Nation argues that it need not specify the time, place, and content of a fraudulent omission "as precisely" as for a false representation claim.  Pl. Br. at 57 (quoting *In re Whirlpool Corp. Front-Loading Washer Prod's. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009)).  But the problem with the Nation's RICO allegations against the Pharmacy Defendants is not just a lack of precision— it is that there are no specific allegations at all about any of the Pharmacy Defendants.

## B.    The Nation Cannot Identify a Duty to Support Its Negligence Claim Against the Pharmacy Defendants (Count VIII).

*Carista* also demonstrates why the Pharmacy Defendants owe no duty of care, which is fatal to the Nation's negligence claim.  *See* 394 P.3d at 256-57 ("*Carista*'s petition alleges that pharmacists filling prescriptions in Oklahoma have a broad range of duties not currently established by the state's courts.").[8]  The Nation does not dispute the obvious relevance of *Carista* to its claims against the Pharmacy Defendants, insisting that its pleadings manage to clear *Carista*'s bar for purposes of proximate causation.  Pl. Br. at 32.  And yet the Nation's arguments about the duty of care completely ignore *Carista*'s dispositive holding regarding the duties owed by pharmacists, relying instead on generic statements about duty under Oklahoma law and citing cases from other jurisdictions that did not involve claims against pharmacies.  *See id.* at 87-94.  Because the Nation has not alleged a single prescription falling outside the scope of

---

[8] As explained in the Pharmacy Defendants' opening brief, *Carista* used the learned intermediary doctrine to define a pharmacist's duty of care under Oklahoma law.  Pharmacy Defs. Br. at 6 n.6. But the rule necessarily informs the analysis of proximate cause as well.  *See id.*

the learned intermediary doctrine, it has failed to assert a duty under *Carista* on the part of any of

the Pharmacy Defendants.[9]

For its negligence per se claim, the Nation repeatedly cites *Howard v. Zimmer, Inc.*, 299

P.3d 463 (Okla. 2013), without addressing its express limitation—that the doctrine of negligence

per se never creates a duty that does not otherwise exist but simply fleshes out the standard of

care for existing "parallel common law, reasonable care duties." *Id.* at 467 (quoted by Pharmacy

Defs. Br. at 11); *see also Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dept.*,

230 P.3d 869, 878 (Okla. 2010) ("The standard of care prescribes how a person must act or not

act in order to satisfy the duty of care.").  The Nation also glosses over the fact that the

Oklahoma Supreme Court's reasoning in *Howard* was premised on two facts absent here: the

Court's view that the U.S. Supreme Court had blessed the availability of parallel state claims

under a federal statute regarding medical devices that has no relevance here and its determination

that the same statute implied a private right of action—which courts have uniformly held the

CSA does not.  *See* Pharmacy Defs. Br. at 11 n.11.

### C.    The Nation's Lanham Act Claim Against the Pharmacy Defendants Fails (Count III).

The Nation first claims that "[a]ll of Defendants' arguments for dismissal regarding the

Lanham Act are premised on the mistaken assumption that the heightened Rule 9(b) pleading

requirements apply to Lanham Act false advertising claims."  Pl. Br. at 140.  Not so.  The

Pharmacy Defendants' motion to dismiss nowhere relies on Rule 9(b), pointing instead to the

---

[9] It is not enough for the Nation to point to conclusory allegations of duty and breach in the
Complaint.  Pl. Br. at 95.  In fact, the court in *Carista* upheld dismissal of similar allegations as
inadequate under the learned intermediary doctrine.  *See* 394 P.3d at 255-56.

myriad ways that the Nation's allegations against the Pharmacy Defendants are insufficient to make out a plausible claim under any pleading standard.  *See* Pharmacy Defs. Br. at 11-12.

Notably, the Nation's characterization if its Lanham Act claim in its opposition brief bears little resemblance to the actual claim pleaded in the Complaint.  The Nation's Complaint bases the claim on the "advertising and promotion *of prescription opioids*."  Am. Compl. ¶ 411 (emphasis added); *see also id.* ¶ 412 ("These false or misleading descriptions and representations of fact misrepresented the nature, characteristics, or qualities *of the prescription opioids*.") (emphasis added); *id.* ¶ 417 ("[T]he Defendants engaged in systemic false and misleading advertising . . . designed to deceive doctors and the public into believing *that opioids were safe for the treatment of chronic pain*.") (emphasis added).  But after the Pharmacy Defendants pointed out that the Nation has not alleged any such advertising or promotion by any of the Pharmacy Defendants, the Nation now suggests that each of the Pharmacy Defendants only made false statements about their "commercial activities" to prevent diversion.  Pl. Br. at 146.[10]

But even if the Nation's reformulation resembled its pleading, the reformulated claim remains untenable.  The Nation concedes that Sixth Circuit precedent requires a Lanham Act claim to allege that the asserted false statements materially deceived a substantial portion of the consumer audience.  *See* Pl. Br. at 146-47 & n.399 (citing Am. Compl. ¶¶ 415-17).  But even a cursory examination of the allegations that the Nation cites reveals their inadequacy.  The first paragraph that the Nation cites alleges only deceptions by the "Marketing Manufacturer Defendants."  Am. Compl. ¶ 415.  The second paragraph refers to "false statements" by the

---

[10] As noted above, by acknowledging that the Pharmacy Defendants have not falsely advertised or promoted prescription opioids themselves, the Nation admits that its group pleading does not give reliable notice as to which claims it is asserting against the individual defendants.

"Diversion Defendants," but does not allege that those statements were material or deceived anyone.  *Id.* ¶ 415.  And while the third paragraph accuses all "Defendants," in blanket terms, of "false and misleading advertising . . . designed to deceive doctors and the public into believing that opioids were safe for the treatment of chronic pain," *id.* ¶ 417, the Nation now acknowledges that the "Pharmacies did not advertise about the characteristics of 'prescription opioids themselves,'" Pl. Br. at 146.  And, in any event, an allegation that advertising was "designed" to deceive is *not* an allegation that the statement had its intended effect and actually deceived anyone.

Even if the Nation had alleged that the statements by some of the Pharmacy Defendants had deceived members of the public, nothing in the Complaint could support a "plausible inference" that those statements "in fact misled a significant number of reasonable consumers." *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018).  The deceit must both mislead a "substantial portion" of the consuming public and be "material" to the deceived consumers' purchasing decisions.  *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001).  But none of the Complaint's allegations support a finding that a significant number of consumers were even *aware* of purportedly false statements by any of the Pharmacy Defendants, much less that those statements materially misled them.  A reasonable consumer's decision to purchase prescription opioids is based on their medical condition, their doctor's prescribing decision, and factors like insurance, cost, and convenience—not their perception of how highly a pharmacy chain prioritizes anti-diversion efforts as a matter of policy.

Finally, the Nation's Lanham Act claim against the Pharmacy Defendants independently fails for lack of causation.  The Nation argues that the Pharmacy Defendants "favorably influenced patients to use the chain Pharmacies' services rather than the competing facilities and

13

treatment options offered by the Nation's hospitals and clinics."  Pl. Br. at 147.[11]  Putting aside

the problems noted above, the Complaint nowhere draws any connection, much less alleges any

competition, between the Pharmacy Defendants' pharmacies and the Nation's own hospitals and

clinics.  On the contrary, the Nation states that the *Manufacturer Defendants*' false advertising

"diverted patients from hospitals and clinics run by the Nation" to "doctors and clinics who

prescribed high dosages of opioids."  Am. Compl. ¶ 415.  There is no plausible connection along

the same lines between any statement by one of the Pharmacy Defendants about its anti-

diversion efforts and a patient's ability to obtain or fill an excessive opioid prescription.

### D.      The Nation Cannot Support Its Nuisance Claim (Count VII).

The Nation acknowledges that the Oklahoma Supreme Court has never approved a

product-based claim for public nuisance and that this Court must "predict" how it might rule.  Pl.

Br. at 77.  But under controlling Sixth Circuit precedent, a federal court's presumption must

always be *against* a new or speculative theory that expands state tort liability.  *See* Pharmacy

Defs. Br. at 13 (collecting authority).  In fact, no Oklahoma court has ever recognized a public

nuisance claim like the one asserted against the Pharmacy Defendants, based on the sale of a

lawful product, much less based on the sale of a lawful product where the claimed injury only

results from the misuse of that product *after* the product has passed into the hands of third

parties.  *See* Pharmacy Defs. Br. at 13.  The Nation's citation to a single Oklahoma trial court

order in a case involving marketing claims against one of the Manufacturer Defendants—

providing no legal analysis or citation to authority—is not grounds to sanction a dramatic

---

[11] This argument—expressly limited to "chain" pharmacies, Pl. Br. at 147—makes clear that the
Nation makes no claims against any of the independent pharmacies under the Lanham Act,
despite purporting to include them in its allegations against the undifferentiated group of
"Diversion Defendants."  Once again, the Nation's own statements confirm that its group
pleading fails to give fair notice of its claims against the Pharmacy Defendants.

expansion of Oklahoma nuisance law to permit suits against any member of the supply chain of a legal product that can be abused or misused.[12]

For similar reasons, the drafters of the Restatement (Third) of Torts have warned that the broad language used in some public nuisance cases and statutes is misleading and should not be read to support expansive theories like that put forward by the Nation here. *See* RESTATEMENT (THIRD) OF TORTS § 8, cmt. g (Tentative Draft No. 2, April 7, 2014). The Nation's only response is to argue that Oklahoma has not yet adopted the Third Restatement. Pl. Br. at 81 n.200. But, of course, neither has Oklahoma adopted the Nation's broad theory of public nuisance. The Nation has no response to the persuasive force of the Third Restatement's reasoning.

### E. The Nation Has Not Pleaded a Civil Conspiracy Claim (Count X).

The Nation defends its civil conspiracy claim by arguing that it need not plead an agreement under Oklahoma law. Pl. Br. at 107. To advance this surprising position, the Nation relies exclusively on cases decided before 1950—including one from 1918. *Id.* In contrast, the Pharmacy Defendants have cited controlling Oklahoma Supreme Court authority from this century that unequivocally requires "a meeting of minds on the object or course of action." *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008); *see also Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1268 (W.D. Okla. 2012) (discussing the "essential element of agreement" for a civil conspiracy claim under Oklahoma law).

Moreover, the Complaint's only allegation about a supposed agreement is that "Defendants agreed with each other to accomplish the unlawful purposes of marketing, selling, distributing, and retailing prescription opioids through violations of law and misrepresentations."

---

[12] The Nation claims that another Oklahoma trial court has recognized a product-based nuisance claim, but the order it attaches as an exhibit says nothing about public nuisance claims. *See* Pl. Br. at 77 (citing Ex. L).

Am. Compl. ¶ 491.  That is just the kind of "sole conclusory statement" that is plainly

insufficient under Oklahoma law and federal pleading standards.  *See Hitch Enters.*, 859 F. Supp.

2d at 1268.

     **F.**     **The Nation Cannot State a Claim for Unjust Enrichment Under Oklahoma**
               **Law (Count IX).**

     The Nation does not dispute the Pharmacy Defendants' argument that no Oklahoma court

has ever recognized an "externalities" theory of benefit to permit an unjust enrichment claim.

The fact that a handful of state courts in other jurisdictions have adopted that theory provides no

basis for a federal court to speculate on such an expansion of liability of under Oklahoma law.

Pharmacy Defs. Br. at 14; *see also City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287-89

(11th Cir. 2015), *vacated on other grounds by Bank of Am. Corp. v. City of Miami, Fla.*, 137 S.

Ct. 1296 (2017) (rejecting invitation to recognize "externalities" theory based on some of the

same out-of-state cases the Nation cites and holding that, "given the complete lack of supporting

Florida caselaw, we decline to invent a novel basis for unjust enrichment under Florida law");

*City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277-78 (11th Cir. 2015) (same).

**CONCLUSION**

     All claims against the Pharmacy Defendants should be dismissed with prejudice.

16

Dated:  November 2, 2018                    Respectfully submitted,


                                            /s/ Kaspar J. Stoffelmayr
                                            Kaspar J. Stoffelmayr
                                            BARTLIT BECK LLP
                                            54 West Hubbard Street
                                            Chicago, IL 60654
                                            (312) 494-4400
                                            kaspar.stoffelmayr@bartlitbeck.com

                                            *Counsel for Walgreens Co.*


                                            /s/ Eric R. Delinsky (consent)
                                            Eric R. Delinsky
                                            Alexandra W. Miller
                                            ZUCKERMAN SPAEDER LLP
                                            1800 M Street, NW, Ste. 1000
                                            Washington, DC  20036
                                            (202) 778-1800
                                            edelinsky@zuckerman.com
                                            smiller@zuckerman.com

                                            *Counsel for CVS Pharmacy Inc.,Oklahoma
                                            CVS Pharmacy, LLC, and Omnicare
                                            Distribution Center LLC*


                                            /s/ Tina M. Tabacchi (consent)
                                            Tina M. Tabacchi
                                            Tara A. Fumerton
                                            JONES DAY
                                            77 West Wacker
                                            Chicago, IL 60601
                                            (312) 782-3939
                                            tmtabacchi@jonesday.com
                                            tfumerton@jonesday.com

                                            *Counsel for Walmart Inc.*


                                            17

/s/ Ralph Streza (consent)
Ralph Streza
CRITCHFIELD, CRITCHFIELD &
  JOHNSTON - MEDINA
54996 Foote Road
Medina, Ohio 44256
(330) 723-6404
streza@ccj.com

*Counsel for Cityplex Pharmacy*


/s/ Gregory O'Brien (consent)
Gregory O'Brien
CAVITCH FAMILO & DURKIN
1300 East Ninth Street, 20th Floor
Cleveland, Ohio 44114
(216) 621-7860
gobrien@cavitch.com

*Counsel for Rogers Drug Co., Inc.*


/s/ C. Richard McDonald (consent)
C. Richard McDonald (0017537)
Brian Lange (0080627)
BONEZZI SWITZER POLITO
  & HUPP CO. L.P.A.
1300 East Ninth Street, Suite 1950
Cleveland, Ohio 44114
(216) 875-2767
rmcdonald@bsphlaw.com
blange@bsphlaw.com

*Counsel for Economy Pharmacy, Inc.*

/s/ Sean H. McKee (consent)
Sean H. McKee, OBA #14277
Matthew B. Free, OBA #18055
Benjamin D. Reed, OBA #22696
Steven W. Simcoe, OBA #15349
BEST & SHARP
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, Oklahoma  74103
(216) 875-2767
smckee@bestsharp.com
mfree@bestsharp.com
breed@bestsharp.com
ssimcoe@bestsharp.com

*Counsel for Reasor's LLC, City Drug Co.,
City Drug of Coweta, Inc., Spoon Drugs, Inc.,
CareFirst Pharmacy, Inc., Ernie's Pharmacy
& Wellness Center, Inc., Gaddy Discount
Drug, Inc., M&D Star Drug, Inc., Med-Econ
Drug, Inc., Pippenger Pharmacies, LLC,
Freeland Brown Pharmacy, Inc.*


/s/ Brian D. Kerns (consent)
Brian D. Kerns (0037015)
William A. Peseski (0095235)
BONEZZI SWITZER POLITO
 & HUPP CO. L.P.A.
46 Public Square, Suite 230
Medina, Ohio 44256
(330) 952-0440
bkerns@bsphlaw.com
wpeseski@bsphlaw.com

Edward D. Papp (0068574)
BONEZZI SWITZER POLITO
 & HUPP CO. L.P.A.
1300 East Ninth Street, Suite 1950
Cleveland, Ohio 44114
(216) 875-2767
epapp@bsphlaw.com

*Counsel for NRF, Inc. d/b/a
Couch Pharmacy*

19

/s/ David C. Youll (consent)
David C. Youll (16553)
WELSH & McGOUGH, PLLC
2727 East 21st Street, Ste. 600
Tulsa, Oklahoma 74114
(918) 585-8600
david@tulsafirm.com

*Counsel for Olympia Pharmacy*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing Reply in Support of Motion to Dismiss First Amended Complaint by Defendants CareFirst Pharmacy, City Drug, Cityplex Pharmacy, Couch Pharmacy, CVS, Economy Pharmacy, Ernie's Pharmacy, Freeland Brown Pharmacy, Gaddy Discount Drug, M&D Star Drug, Med-Econ Drug, Olympia Pharmacy, Omnicare, Pippenger Pharmacies, Reasor's, Rogers Drug Co., Spoon Drugs, Walgreens, and Walmart is within the pages limitations agreed to among the parties pursuant to CMO-6.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreens Co.*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this 2nd day of November, 2018, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreens Co.*