# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**DEFENDANTS AMERISOURCEBERGEN DRUG CORPORATION,**
**CARDINAL HEALTH, INC., AND MCKESSON CORPORATION'S**
**MOTION TO CERTIFY QUESTIONS OF LAW TO THE OHIO SUPREME COURT**

Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson

Corporation (collectively, "Distributors") respectfully request that the Court certify the following

questions of law to the Ohio Supreme Court:

- Does the Ohio Product Liability Act, Ohio Rev. Code § 2307.71 *et seq.*, abrogate common law negligence claims against a "supplier" of products, as defined in Ohio Rev. Code § 2307.71(A)(15)(a), where (i) the conduct that forms the basis for the negligence claim concerns the "marketing" of a product and (ii) the damages sought are for purely "economic loss" as defined in Ohio Rev. Code § 2307.71(A)(2) other than damage to the product itself?

- Does the Ohio Product Liability Act abrogate all public nuisance claims, including statutory public nuisance claims, in which it is alleged that the "supply," "marketing," "distribution," "promotion," or "sale" of a product unreasonably interferes with a right common to the general public?

- If the Ohio Product Liability Act does not abrogate statutory public nuisance claims, does Ohio Rev. Code § 4729.35's authorization to "maintain an action in the name of the state to enjoin" violation of regulations concerning drugs of abuse authorize a plaintiff to maintain an action for non-injunctive relief?

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The County of Summit, Ohio, the City of Akron, Summit's Prosecuting Attorney, and Akron's Director of Law (collectively, "the County") filed suit against (i) "Marketing Defendants," which are various entities that manufactured and promoted prescription opioid medications to doctors and patients; (ii) "Distributor Defendants," which ship opioids from manufacturers to retail pharmacies; and (iii) "National Retail Pharmacies," which both distribute opioids and dispense them to patients.  Compl. ¶¶ 28–127, 607.[1]  The County alleges that the Marketing Defendants fraudulently marketed prescription opioids to expand the demand for and sales of the drugs and that all Defendants failed to prevent diversion of prescription opioids by failing to report and halt shipment of "suspicious orders."  *Id.* ¶ 9–14.  The County brings 11 causes of action against Defendants.  Three are relevant here:

- Negligence, based on Defendants' alleged conduct in "[d]istributing and selling" prescription opioids.  *Id.* ¶ 1045.

- Common law absolute public nuisance, based on Defendants' alleged "marketing, distributing, and selling opioids in ways that unreasonably interfere with the public health, welfare, and safety in Plaintiffs' communities."  *Id.* ¶ 1000.

- Statutory public nuisance, based on Defendants' alleged activities in "[d]istributing and selling" prescription opioids in violation of federal and Ohio controlled substance laws, which Ohio Rev. Code § 4729.35 declares a public nuisance.  *Id.* ¶ 985.

The County alleges that Defendants' conduct increased opioid addiction (and, with it, overdose deaths) in the County, which resulted in increased public expenditures by the County. Compl. ¶¶ 2, 4–5, 16, 18, 20, 23–24, 1007, 1064.

Distributors moved to dismiss the County's complaint, arguing that the Ohio Product Liability Act ("OPLA") abrogated the three causes of action listed above and required that they be

---

[1]  Unless otherwise noted, this Motion adds all emphasis in quotations and omits citations and internal quotation marks.

dismissed.  Dkt. 491-1 ("Br.") at 22–26, 32–35.  Distributors also argued that the County could seek only injunctive relief for its statutory nuisance claim.  *Id.* at 31–32.  The Report and Recommendation of the Magistrate Judge determined that the OPLA abrogated the County's common law absolute public nuisance claim, but found that it did not abrogate the statutory public nuisance or negligence claims.  Dkt. 1025 ("R&R") at 57–66.  It further determined that the nuisance statute (Ohio Rev. Code § 4729.35) does not limit the County to injunctive relief.  *Id.* at 68.  Should the Court deny certification of the three issues to the Ohio Supreme Court, Distributors ask the Court to reject the R&R's recommendations as to those issues, for the reasons set forth here and in the Objections, filed contemporaneously.

## DISCUSSION

The Court is familiar with the standard for certification of a question of Ohio law to the Ohio Supreme Court.  It may do so if (1) the question of Ohio law is determinative of the proceeding and (2) there is no controlling Ohio Supreme Court precedent on the issue.  *Buddenberg v. Weisdack*, 2018 WL 3949557, at *1 (N.D. Ohio Aug. 17, 2018) (citing Ohio Sup. Ct. R. Prac. XVIII, § 1).  Distributors' proposed questions satisfy both requirements, and certification would serve principles of comity and judicial economy.

## I. THE QUESTIONS ARE DETERMINATIVE OF THE PROCEEDING.

This Court recently held that a question was determinative of the proceeding where resolution of the question in movants' favor required dismissal of particular claims, even if not the entire case.  *Buddenberg*, 2018 WL 3949557, at *1.  If the OPLA abrogates the County's statutory public nuisance and negligence claims, they should be dismissed.  *Evans v. Hanger Prosthetics & Orthotics, Inc.*, 735 F. Supp. 2d 785, 797 (N.D. Ohio 2010); *see also Decker v. GE Healthcare, Inc.* (*In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*), 2013 WL 587655, at *13 (N.D. Ohio Feb. 13, 2013).  Questions concerning the forms of relief available under state law also are

3

determinative of the proceeding.  *E.g.*, *Corbett v. Beneficial Ohio, Inc.*, 2013 WL 526998, at *1 (S.D. Ohio Feb. 1, 2013) (certifying question of "what damages are available").  The questions therefore are determinative of the proceeding.

## II.     THERE IS NO CONTROLLING OHIO SUPREME COURT PRECEDENT.

The resolution of each question concerning the scope of OPLA abrogation requires judicial construction of amendments to the OPLA—one effective in 2005, the other effective in 2007— neither of which has been interpreted by the Ohio Supreme Court.  Because the amendments overrule Ohio Supreme Court decisions that read the OPLA too narrowly, pre-amendment Ohio Supreme Court cases are neither controlling nor useful precedents interpreting the scope of the amendments' abrogation.

The OPLA took effect in 1988, creating "an exclusive statutory basis for all tort based product liability claims." Stephen J. Werber, *An Overview of Ohio Product Liability Law*, 43 Clev. St. L. Rev. 379, 382 (1995).  In the years following the OPLA's enactment, the Ohio Supreme Court repeatedly divided on the Act's scope.  In *LaPuma v. Collinwood Concrete*, 661 N.E.2d 714 (Ohio 1996), a majority of the court held that a claim for damage to the product itself was not abrogated.  *Id.* at 716.  In dicta, the majority noted that causes of action concerning products were not abrogated unless they alleged "damages other than economic ones," *id.*, which prompted concurring Justices to explain that, in their view, the OPLA generally abrogated claims for purely economic losses, *id.* at 716–17 (Cook, J., concurring).  The next year, in *Carrel v. Allied Prod. Corp.*, 677 N.E.2d 795 (Ohio 1997), a majority of the court (over a dissent) declined to find abrogation of negligence claims without an "explicit statement that [the OPLA's 'product liability claim'] definition was meant to abolish common-law actions sounding in negligence." *Id.* at 799; *see id.* at 802–03 (Cook, J., dissenting).  The court again divided in *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), with a majority concluding that plaintiffs' nuisance and

4

negligence claims could proceed, *id.* at 1142, 1146, and a dissent arguing that plaintiffs could not bring products-based negligence or nuisance claims, *id.* at 1156–57 (Cook, J., dissenting).

In the wake of these decisions, the General Assembly passed two amendments to make clear the OPLA's broad application. The General Assembly first added language, effective in 2005, stating that the OPLA is "intended to abrogate *all* common law product liability causes of action." 2004 Ohio Laws File 144 (Am. Sub. S.B. 80) (codified at Ohio Rev. Code § 2307.71(B)). But plaintiffs continued to test the limits of the OPLA. In 2006, the City of Toledo sued several manufacturers of lead paint and, relying on *Beretta*, alleged that they caused a public nuisance and that the City was entitled to recoup increased healthcare and abatement costs resulting from the nuisance. *City of Toledo v. Sherwin-Williams Co.*, 2007 WL 4965044 (Ohio Ct. Com. Pl. Dec. 12, 2007). In the midst of that litigation, the General Assembly amended the OPLA to abrogate all product-based public nuisance litigation. 2006 Ohio Laws File 198 (Am. Sub. S.B. 117) (codified at Ohio Rev. Code § 2307.71(A)(13)). The Ohio Supreme Court has not had occasion to interpret either amendment, and the lower courts have not reached a consensus on the meaning of the amendments.

The 2005 amendment has been interpreted in dozens of cases, but those cases are divided on the first question presented for certification: whether the amendment's stated intent to "abrogate all common law product liability causes of action" applies to common law product liability causes of action *for purely economic loss*. A number of courts have held that the OPLA abrogates common law negligence claims where "the actionable conduct that formed the basis for such claim was the same conduct the OPLA defined as giving rise to a products liability claim"— regardless of whether the plaintiff pleads a physical or economic injury. *CCB Ohio LLC v. Chemque, Inc.*, 649 F. Supp. 2d 757, 764 (S.D. Ohio 2009) (citing *Stratford v. SmithKline Beecham*

*Corp.*, 2008 WL 2491965, at \*5 (S.D. Ohio June 17, 2008)); *accord Meta v. Target Corp.*, 74 F. Supp. 3d 858, 864 (N.D. Ohio 2015) ("[The plaintiff] may not carve out a common law product liability claim for economic loss only where … the facts underpinning his common law claims constitute the same conduct that … gives rise to [a] 'products liability claim'."); *Mitchell v. Proctor & Gamble*, 2010 WL 728222, at \*4 (S.D. Ohio Mar. 1, 2010) ("Courts in this jurisdiction have found that common law negligence actions may also be preempted by the OPLA where the actionable conduct that forms the basis of the negligence claim—negligent research, manufacturing, testing, marketing, and failure to warn—is the same conduct that the OPLA defines as giving rise to a 'products liability claim.'"); *see Piskura v. Taser Int'l*, 2012 WL 5378805, at \*17–19 (S.D. Ohio Oct. 29, 2012) (rejecting plaintiff's argument that "claims seeking compensatory damages for economic loss are not subject to, nor preempted by, the OPLA"), *report and recommendation adopted*, 2013 WL 1329704 (S.D. Ohio Mar. 29, 2013).  But at least one court has held that a common law product liability cause of action is not abrogated so long as plaintiffs seek relief for only economic loss—even when non-economic harms also resulted from the conduct underpinning the claim.  *Great N. Ins. Co. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 649 (S.D. Ohio 2015) ("Plaintiffs are permitted to argue in the alternative, and bring their OPLA claims for compensatory damages, and their common implied warranty claim for purely economic damages, under the same set of facts.").[2]

---

[2]    Other cases have held more narrowly that the OPLA does not abrogate common law claims for economic loss where the loss is damage to the product itself. *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents., Inc.*, 50 N.E.3d 955, 966 (Ohio Ct. App. 2015); *Parillo v. Werner Co.*, 2015 WL 4556257, at \*2 (S.D. Ohio July 28, 2015); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F. Supp. 3d 706, 719 (N.D. Ohio 2014); *In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, 2014 WL 2738680, at \*3 (N.D. Ga. June 17, 2014); *Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875, 881 (N.D. Ohio 2013).  The County does not seek to recover for damage to the products (i.e., opioid medications), so Distributors' proposed first question refers to economic loss other than damage to the product.

The R&R (at 60) relied on the Ohio Supreme Court's 1996 *LaPuma* ruling to define the scope of the 2005 amendment.  But the language in *LaPuma* quoted in the R&R (while "a cause of action may concern a product, it is not a product liability claim within the purview of [the OPLA] unless it alleges damages other than economic ones"), is not controlling Ohio Supreme Court precedent.  It was dicta because the case required resolution of only the narrower question of whether the OPLA abrogates claims for damages to a product itself, and the Ohio Supreme Court has not determined whether that dicta survives the 2005 amendment.  *See LaPuma*, 661 N.E.2d at 716–17 (Cook, J., dissenting); *Mohat v. Mentor Exempted Vill. Sch. Dist. Bd. of Educ.*, 2010 WL 359693, at \*3 (N.D. Ohio Jan. 29, 2010) (dicta is not "controlling precedent" and certification is proper where the only Ohio Supreme Court precedent is dicta in a non-unanimous opinion).  At least one court has suggested that the 2005 amendment overruled the dicta.  *Meta*, 74 F. Supp. 3d at 863 (noting that the language "predates the 2005 amendment to the OPLA abrogating all product liability claims," without determining whether it remains good law).  Furthermore, the numerous cases identified above that have ruled that claims for economic damages may fall within the scope of the OPLA are directly contrary to the *LaPuma* dicta, suggesting that it does not survive the 2005 amendment.

Unlike the 2005 amendment, only one case has "squarely addressed the operation of the 2007 amendment."  R&R 64.  That case, *City of Toledo v. Sherwin-Williams Co.*, is an Ohio trial court case that involved a common law nuisance claim.  2007 WL 4965044.  No court has answered the question that Distributors ask this Court to certify:  whether the 2007 amendment, which extends to "any public nuisance claim or cause of action at common law in which it is alleged that the … marketing, distribution, promotion, … or sale of a product unreasonably interferes with a right common to the general public," abrogates ***statutory*** public nuisance claims.

7

Again, prior Ohio Supreme Court precedents are an especially unhelpful guide to resolving this question—the General Assembly passed the amendment to overturn Ohio Supreme Court cases narrowly interpreting the scope of OPLA's abrogation.  This question, therefore, is the kind "most appropriate" for certification—"the question is new and state law is unsettled." *Antioch Co. Litig. Tr. v. Morgan*, 633 F. App'x 296, 304 (6th Cir. 2015).

Concerning the final question for certification, no Ohio Supreme Court case addresses the remedies available under Ohio Rev. Code § 4729.35.  The statute has been cited only in two opinions (both issued the same day), neither of which considers whether the statute authorizes non-injunctive relief.  *State ex rel. DeWine v. Shadyside Party Ctr.*, 13 N.E.3d 684, 690 n.1 (Ohio Ct. App. 2014); *State ex rel. DeWine v. Fred's Party Ctr., Inc.*, 13 N.E.3d 699, 705 n.1 (Ohio Ct. App. 2014).  This question therefore is appropriate for certification.  *Morgan*, 633 F. App'x at 304.

## III.     COMITY AND JUDICIAL ECONOMY FURTHER COUNSEL FOR CERTIFICATION.

Certification is appropriate where, as here, "the interests of comity and cooperative judicial federalism" suggest that a state's Supreme Court should be given the opportunity to answer a critical question.  *Id.* at 305.  The General Assembly passed the 2005 and 2007 amendments in an attempt to subject all product-based litigation to a common set of rules and to eliminate the confusion and needless complexity that results from casting essentially the same claim that a product caused injury as one in strict liability, negligence, gross negligence, nuisance, unjust enrichment, etc.  There is no question that the claims in the *Summit County* case, like the many other Ohio cases consolidated as part of this MDL proceeding, are product-based claims.  The issue is how the County's damages claims should be characterized and whether the Act applies to the kind of economic loss alleged—loss that indisputably would not have occurred but for the increased number of County residents addicted to opioids.  Because the Ohio Supreme Court has

not yet had the occasion to rule on the scope of these significant amendments, it would be appropriate to give it an opportunity to do so, particularly given the number of actions that will be affected by resolution of the questions.

Certification of this question would help the judicial system realize another benefit of certification—saving "time, energy, and resources." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  There are currently dozens of cases pending before this Court that will turn on resolution of these questions.  It is most efficient to get a definitive answer from the Ohio Supreme Court now, not after appeal to the Sixth Circuit of any adverse jury verdict, when the Sixth Circuit itself may certify the questions.

*     *     *

Based upon the foregoing, Distributors respectfully request that the Court enter an Order certifying the following questions of law to the Ohio Supreme Court:

- Does the Ohio Product Liability Act, Ohio Rev. Code § 2307.71 *et seq.*, abrogate common law negligence claims against a "supplier" of products, as defined in Ohio Rev. Code § 2307.71(A)(15)(a), where (i) the conduct that forms the basis for the negligence claim concerns the "marketing" of a product and (ii) the damages sought are for purely "economic loss" as defined in Ohio Rev. Code § 2307.71(A)(2) other than damage to the product itself?

- Does the Ohio Product Liability Act abrogate all public nuisance claims, including statutory public nuisance claims, in which it is alleged that the "supply," "marketing," "distribution," "promotion," or "sale" of a product unreasonably interferes with a right common to the general public?

- If the Ohio Product Liability Act does not abrogate statutory public nuisance claims, does Ohio Rev. Code § 4729.35's authorization to "maintain an action in the name of the state to enjoin" violation of regulations concerning drugs of abuse authorize a plaintiff to maintain an action for non-injunctive relief?

9

Dated:  November 2, 2018                           Respectfully submitted,


*/s/ Robert A. Nicholas*                           */s/ Enu Mainigi*
Robert A. Nicholas                                 Enu Mainigi
Shannon E. McClure                                 F. Lane Heard III
**REED SMITH LLP**                                 Steven M. Pyser
Three Logan Square                                 Ashley W. Hardin
1717 Arch Street, Suite 3100                       **WILLIAMS & CONNOLLY LLP**
Philadelphia, PA 19103                             725 Twelfth Street, NW
Tel: (215) 851-8100                                Washington, DC 20005
Fax: (215) 851-1420                                Tel: (202) 434-5000
rnicholas@reedsmith.com                            Fax: (202) 434-5029
smcclure@reedsmith.com                             EMainigi@wc.com
                                                   lheard@wc.com
*Counsel for AmerisourceBergen Drug*               spyser@wc.com
*Corporation*                                      ahardin@wc.com


                                                   *Counsel for Cardinal Health, Inc.*

*/s/ Geoffrey Hobart*
Geoffrey Hobart
Mark Lynch
Christian Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com


*Counsel for McKesson Corporation*

10

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document and supporting papers were served via the Court's ECF system to all counsel of record.

/s/ Ashley W. Hardin
Ashley W. Hardin