# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| *The Muscogee (Creek) Nation v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45459 | Hon. Dan Aaron Polster |
| *The Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corp., et al.*<br>Case No. 18-op-45749 | |

# REPLY BRIEF IN SUPPORT OF THE MANUFACTURER DEFENDANTS' JOINT MOTION TO DISMISS THE TRIBES' FIRST AMENDED COMPLAINTS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iv

INTRODUCTION ..........................................................................................1

ARGUMENT .................................................................................................2

I.    FUNDAMENTAL TORT PRINCIPLES FORECLOSE THE TRIBES FROM
      RECOVERING FOR REMOTE AND INDIRECT HARMS ............................................2

      A.    The Tribes Have Failed To Plead Proximate Causation ........................................2

            1.    The Tribes' Alleged Injuries Are Indirect, Derivative, And Remote ..........2

            2.    The *Holmes* Factors Weigh Against Proximate Cause ...............................3

            3.    The Tobacco Cases Confirm The Absence Of Proximate Cause
                  Here .......................................................................................................5

            4.    The Role Of Intervening Doctors And Criminal Actors Further
                  Undermines Proximate Cause ......................................................................6

            5.    Lack Of Proximate Cause Is Fatal To The Tribes' State Claims
                  Too .........................................................................................................8

      B.    The Tribes Fail To Show That The Manufacturers Have Any Duty To
            Prevent The Misconduct Of Third Parties ..............................................................10

II.   THE TRIBES' ALLEGED INJURIES ARE NOT REDRESSABLE AND THEY
      LACK STATUTORY STANDING TO BRING MANY OF THEIR CLAIMS ..............14

      A.    The Tribes Cannot Recover The Costs Of Providing Federally Funded
            Health Care ..............................................................................................................14

      B.    The Tribes Cannot Recover The Costs Of Providing Public Services .................19

      C.    The Tribes Lack Standing To Assert Their RICO Claim Because They
            Cannot Establish Injury To Their "Business or Property" ....................................21

            1.    The Tribes Cannot Recover Under RICO For Injuries That Are
                  Derivative Of Personal Injuries To Tribe Members ................................22

            2.    The Tribes Cannot Recover Under RICO For Their Voluntary
                  Expenditure On Public Services ...............................................................22

            3.    The Tribes Cannot Recover Under RICO For Lost Tax Revenue ............24

D.      The Muscogee Nation's Lanham Act Claim Fails.................................................25

E.      The Blackfeet Tribe's Montana Unfair Trade Practices And Consumer Protection Act Claim Fails..................................................................................25

F.      The Tribes Fail To Allege Any Statutory Violation Sufficient To Support Their Negligence Per Se Claims....................................................................27

   1.      The Blackfeet Tribe Has Not Alleged A Cognizable Negligence Per Se Claim ...........................................................................27

   2.      The Muscogee Nation Has Not Alleged A Cognizable Negligence Per Se Claim ...........................................................................29

III.    THE TRIBES INVOKE COMMON LAW CAUSES OF ACTION THAT DO NOT COVER THE ALLEGED MISCONDUCT ...........................................................30

A.      The Tribes' Public Nuisance Claims Fail ...........................................................30

   1.      Neither Oklahoma Nor Montana Statutory Law Recognizes The Tribes' Novel Theory Of Public Nuisance .................................................30

   2.      The Blackfeet Tribe's Federal And State Common Law Public Nuisance Claims Should Also Be Dismissed ...............................................33

B.      The Unjust Enrichment Claims Fail ....................................................................35

IV.     THE TRIBES' STATE CLAIMS ARE PREEMPTED....................................................38

V.      THE TRIBES' TORT CLAIMS FLOUT FUNDAMENTAL PROCEDURAL REQUIREMENTS..........................................................................................................41

A.      The Tribes' Fraud Allegations Fail To Comply With Rule 9(b)'s Particularity Requirements.............................................................................41

   1.      The Tribes' Fraudulent Marketing Allegations Fail To Comply With Rule 9(b) ...........................................................................43

   2.      The Tribes' Supply Chain Fraud Allegations Fail To Comply With Rule 9(b) ...........................................................................46

B.      The Vast Majority Of The Tribes' Claims Are Time-Barred ...............................47

   1.      The Statutes Of Limitations Apply To The Tribes' Claims .....................48

   2.      The Tribes' Claims Are Facially Time-Barred.........................................50

   3.      The Tribes Have Failed to Establish That An Exception To The Statutes Of Limitations Applies................................................................51

C.     The Tribes Have Failed To Allege Actionable Civil Conspiracy Claims ............55

CONCLUSION..................................................................................................................55

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Alabama Coushatta Tribe v. Am. Tobacco Co.*,
    46 F. App'x 225 (5th Cir. 2002) ................................................................6

*Alaska Native Tribal Health Consortium v. Settlement Funds Held For or To Be
    Paid on Behalf of E.R. ex rel. Ridley*,
    84 P.3d 418 (Alaska 2004)......................................................................15

*Am. Biomedical Grp., Inc. v. Techtrol, Inc.*,
    374 P.3d 820 (Okla. 2016).......................................................................36

*Am. Elec. Power Co. v. Connecticut*,
    564 U.S. 410 (2011)................................................................................33

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)...............................................................................3, 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................44

*Barber Lines A/S v. M/V Donau Maru*,
    764 F.2d 50 (1st Cir. 1985)......................................................................10

*Bd. of Cty. Comm'rs v. Willett*,
    152 P. 365 (Okla. 1915)...........................................................................49

*Bd. of Supervisors v. U.S. Home Corp.*,
    No. 85225, 1989 WL 646518 (Va. Cir. Ct. Aug. 14, 1989) ............................20, 21

*Bergman v. United States*,
    751 F.2d 314 (10th Cir. 1984) ...................................................................53

*Berrington v. Wal-Mart Stores, Inc.*,
    696 F.3d 604 (6th Cir. 2012) ....................................................................31

*Blatchford v. Alaska Native Tribal Health Consortium*,
    645 F.3d 1089 (9th Cir. 2011) ...............................................................17, 18

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
    501 F.3d 493 (6th Cir. 2007) ................................................................42, 47

*Boyle v. ASAP Energy, Inc.*,
    408 P.3d 183 (Okla. 2017).......................................................................13

*Brewer v. Murray*,
 292 P.3d 41 (Okla. Ct. App. 2012) ....................................................................13

*Burlington N. & Santa Fe Ry. Co. v. Grant*,
 505 F.3d 1013 (10th Cir. 2007) ...................................................................52, 54

*Camden Cty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
 123 F. Supp. 2d 245 (D.N.J. 2000), *aff'd sub nom. Camden Cty. Bd. Of
 Chosen Freeholders v. Beretta*, 273 F.3d 536 (3d Cir. 2001) ................................21

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
 273 F.3d 536 (3d Cir. 2001)..............................................................................30

*Canyon Cty. v. Syngenta Seeds, Inc.*,
 519 F.3d 969 (9th Cir. 2008) .............................................................................23

*Caterpillar Tractor Co. v. Dep't of Revenue*,
 633 P.2d 618 (Mont. 1981) ...............................................................................48

*Cerveny v. Aventis, Inc.*,
 855 F.3d 1091 (10th Cir. 2017) .....................................................................38, 39

*Chickasaw Tel. Co. v. Sw. Bell Mobile Sys., Inc.*,
 No. 96-6357, 1997 WL 290951 (10th Cir. May 27, 1997)....................................53

*United States ex rel. Chorches for Bankruptcy Estate of Fabula v. American
 Medical Response, Inc.*,
 865 F.3d 71 (2d Cir. 2017).................................................................................44

*Christian v. Atl. Richfield Co.*,
 358 P.3d 131 (Mont. 2015) .......................................................................52, 53, 54

*City of Boston v. Smith & Wesson Corp.*,
 No. 199902590, 2000 WL 1473568 (Mass. Super. Ct. July 13, 2000) ..................37

*City of Chicago v. Beretta U.S.A. Corp.*,
 821 N.E.2d 1099 (Ill. 2004)......................................................................7, 8, 20

*City of Chicago v. Purdue Pharma L.P.*,
 211 F. Supp. 3d 1058 (N.D. Ill. 2016) ...............................................................46

*City of Chicago v. Purdue Pharma L.P.*,
 No. 14-CV-4361 (N.D. Ill. filed July 17, 2014) ...................................................51

*City of Everett v. Purdue Pharma L.P.*,
 No. C17-209RSM, 2017 WL 4236062 (W.D. Wash. Sept. 25, 2017) ..............20, 37

*City of Flagstaff v. Atchison, Topeka & Santa Fe Railway*,
    719 F.2d 322 (9th Cir. 1983) ................................................................21

*City of Los Angeles v. JPMorgan Chase & Co.*,
    No. 2:14-cv-04168-ODW, 2014 WL 6453808 (C.D. Cal. Nov. 14, 2014) ...........................37

*City of Miami v. Bank of America Corp.*,
    800 F.3d 1262 (2015), *rev'd on other grounds*, 137 S. Ct. 1296 (2017) ................................37

*City of N.Y. v. Lead Indus. Ass'n*,
    190 A.D.2d 173 (N.Y. App. Div. 1993) ................................................37

*City of N.Y. v. Smokes-Spirits.com, Inc.*,
    541 F.3d 425 (2d Cir. 2008), *rev'd and remanded sub nom. Hemi Grp., LLC v.*
    *City of N.Y.*, 559 U.S. 1 (2010) ................................................24

*City of Perry v. Procter & Gamble Co.*,
    188 F. Supp. 3d 276 (S.D.N.Y. 2016)................................................31

*City of Philadelphia v. Beretta U.S.A., Corp.*,
    126 F. Supp. 2d 882 (E.D. Pa. 2000), *aff'd on other grounds*, 277 F.3d 415
    (3d Cir. 2002)................................................20

*City of Spokane v. Monsanto Co.*,
    No. 2:15-CV-00201, 2016 WL 6275164 (E.D. Wash. Oct. 26, 2016) ...................13

*Cole v. Asarco, Inc.*,
    No. 03-CV-327, 2010 WL 711195 (N.D. Okla. Feb. 24, 2010) ........................52, 54

*Combs v. Int'l Ins. Co.*,
    354 F.3d 568 (6th Cir. 2004) ................................................33

*State ex rel. Condon v. City of Columbia*,
    528 S.E.2d 408 (2000) ................................................47

*County of Oakland v. City of Detroit*,
    866 F.2d 839 (6th Cir. 1989) ................................................23

*CSX Transp., Inc. v. McBride*,
    564 U.S. 685 (2011)................................................10

*Cty. of Erie v. Colgan Air, Inc.*,
    711 F.3d 147 (2d Cir. 2013)................................................20

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*,
    756 F.3d 917 (6th Cir. 2014) ................................................20, 29

*Delbrel v. Doenges Brothers Ford, Inc.*,
   913 P.2d 1318 (Okla. 1996) ........................................................................13

*District of Columbia v. Air Florida, Inc.*,
   750 F.2d 1077 (D.C. Cir. 1984) ..................................................................21

*District of Columbia v. Beretta, U.S.A., Corp.*,
   872 A.2d 633 (D.C. 2005) ...........................................................................11

*Dorsett v. Sandoz, Inc.*,
   699 F. Supp. 2d 1142 (C.D. Cal. 2010) ......................................................39

*Doyle v. Clark*,
   254 P.3d 570 (Mont. 2011), *superseded in part by statute on other grounds*,
   *Peterson-Tuell v. First Student Transp., LLC*, 339 P.3d 16 (Mont. 2014) ............................27

*Duffy v. Butte Teachers' Union, No. 332*,
   541 P.2d 1199 (Mont. 1975) ........................................................................54

*Eklund v. Trost*,
   151 P.3d 870 (Mont. 2006) ....................................................................12, 27

*FDIC v. AmFin Fin. Corp.*,
   757 F.3d 530 (6th Cir. 2014) .......................................................................33

*Fisher v. Swift Transportation Co.*,
   181 P.3d 601 (Mont. 2008) ..........................................................................13

*In re Fosamax (Alendronate Sodium) Products Liability Litigation*,
   852 F.3d 268 (3d Cir. 2017)..........................................................................39

*Ganim v. Smith & Wesson Corp.*,
   780 A.2d 98 (Conn. 2001) .............................................................................4

*Gibby v. Noranda Minerals Corp.*,
   905 P.2d 126 (Mont. 1995) ..........................................................................27

*Gourneau v. Hamill*,
   311 P.3d 760 (Mont. 2013) ..........................................................................13

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)......................................................................................29

*Graveley Ranch v. Scherping*,
   782 P.2d 371 (Mont. 1989) ....................................................................52, 54

*Grubbs v. Sheakley Group, Inc.*,
   807 F.3d 785 (6th Cir. 2015) .......................................................................41

vii

*Harwood v. Glacier Elec. Coop., Inc.*,
   949 P.2d 651 (Mont. 1997) ...........................................................................29

*Hawaii v. Standard Oil Co.*,
   405 U.S. 251 (1972) ..........................................................................15, 16, 24

*Hemi Grp., LLC v. City of N.Y.*,
   559 U.S. 1 (2010) ..........................................................................................3

*Hensley v. City of Columbus*,
   557 F.3d 693 (6th Cir. 2009) .......................................................................52

*Heusle v. Nat'l Mut. Ins. Co.*,
   628 F.2d 833 (3d Cir. 1980) .........................................................................18

*United States ex rel. Hirt v. Walgreen Co.*,
   846 F.3d 879 (6th Cir. 2017) .......................................................................42

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) .......................................................................... *passim*

*Howard v. Zimmer, Inc.*,
   299 P.3d 463 (Okla. 2013) ...........................................................................29

*Huddleston v. United States*,
   485 F. App'x 744 (6th Cir. 2012) ................................................................18

*Hunt v. McNeil Consumer Healthcare*,
   6 F. Supp. 3d 694 (E.D. La. 2014) ..............................................................40

*State of Oklahoma ex rel. Hunter v. Purdue Pharma L.P.*,
   No. CJ-2017-816 (Okla. Dist. Ct. Dec. 6, 2017) .......................................32

*Ill. Dep't of Revenue v. Phillips*,
   771 F.2d 312 (7th Cir. 1985) .......................................................................24

*Illinois v. City of Milwaukee*,
   599 F.2d 151 (7th Cir. 1979), *vacated*, 451 U.S. 304 (1981) ...................34

*Illinois v. Life of Mid-America Ins. Co.*,
   805 F.2d 763 (7th Cir. 1986) .......................................................................22

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr.*
   *Fund v. Philip Morris Inc.*,
   196 F.3d 818 (7th Cir. 1999) ..................................................................10, 19

*Inyo Cty. v. Paiute-Shoshone Indians*,
   538 U.S. 701 (2003) .....................................................................................34

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
    23 F. Supp. 2d 771 (N.D. Ohio 1998) .................................................................23

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
    731 F.3d 556 (6th Cir. 2013) ............................................................................22

*Jackson v. State*,
    956 P.2d 35 (Mont. 1998) .................................................................................27

*Johnson v. Columbia Falls Aluminum Co., LLC*,
    No. DA 08-0358, 2009 WL 865308 (Mont. Mar. 31, 2009) ..................................28

*Julian Bakery, Inc. v. Healthsource Int'l, Inc.*,
    No. 16-CV-2594, 2018 WL 1524499 (S.D. Cal. Mar. 28, 2018) ..........................42

*Kiger v. State*,
    802 P.2d 1248 (Mont. 1990) ...............................................................................9

*King v. Order of United Commercial Travelers of Am.*,
    333 U.S. 153 (1948) ..........................................................................................32

*Knight v. City of Missoula*,
    827 P.2d 1270 (Mont. 1992) ...............................................................................52

*Koch v. Consolidated Edison Co.*,
    468 N.E.2d 1 (N.Y. 1984) ..................................................................................21

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999) .................................................................................9

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..........................................................................................25

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
    238 F.3d 363 (5th Cir. 2001) ..............................................................................42

*Lopez v. Great Falls Pre-Release Servs., Inc.*,
    986 P.2d 1081 (Mont. 1999) ...............................................................................12

*Lowery v. Echostar Satellite Corp.*,
    160 P.3d 959 (Okla. 2007) .................................................................................13

*Lutz v. Chesapeake Appalachia, L.L.C.*,
    717 F.3d 459 (6th 2013) .....................................................................................50

*Marshall v. Fenton, Fenton, Smith, Reneau & Moon, P.C.*,
    899 P.2d 621 (Okla. 1995) .................................................................................50

*Martin v. Artis*,
   290 P.3d 687 (Mont. 2012) ..................................................................................................31

*Mason v. SmithKline Beecham Corp.*,
   596 F.3d 387 (7th Cir. 2010) ..............................................................................................39

*State ex rel. Mazurek v. Philip Morris, Inc.*,
   No. CDV-97-306, 1998 Mont. Dist. LEXIS 732 (1st Judicial Dist. Ct. Mont.,
   Lewis & Clark Cty. Sept. 22, 1998).....................................................................................32

*McCarthy v. Olin Corp.*,
   119 F.3d 148 (2d Cir. 1997)................................................................................................11

*McDaniel v. Upsher-Smith Pharm., Inc.*,
   229 F. Supp. 3d 707 (W.D. Tenn. 2017), *aff'd*, 893 F.3d 941 (6th Cir. 2018)......................38

*Miccosukee Tribe of Indians v. Kraus-Anderson Constr. Co.*,
   607 F.3d 1268 (11th Cir. 2010) ..........................................................................................34

*Michigan v. U.S. Army Corps of Eng'rs*,
   667 F.3d 765 (7th Cir. 2011) ..............................................................................................34

*Minor v. Zidell Trust*,
   618 P.2d 392 (Okla. 1980)....................................................................................................8

*Mont. Petroleum Tank Release Comp. Bd. v. Capitol Indem. Co.*,
   137 P.3d 522 (Mont. 2006)..................................................................................................35

*State ex rel. Morrisey v. Cardinal Health, Inc.*,
   No. 12-C-140 (W. Va. Cir. Ct., Boone Cty. Apr. 17, 2015)..................................................37

*Nehring v. LaCounte*,
   712 P.2d 1329 (Mont. 1986)...............................................................................................28

*In re Neurontin Marketing & Sales Practices Litigation*,
   712 F.3d 21 (1st Cir. 2013)..................................................................................................44

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*,
   336 F.3d 495 (6th Cir. 2003) ..............................................................................................51

*Newman v. Lichfield*,
   272 P.3d 625 (Mont. 2012)..................................................................................................13

*O'Connor v. Oakhurt Dairy*,
   851 F.3d 69 (1st Cir. 2017)..................................................................................................32

*Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*,
   687 F. App'x 429 (6th Cir. 2017) ........................................................................................41

*Okla. City Mun. Improvement Auth. v. HTB, Inc.*,
  769 P.2d 131 (Okla. 1988) ....................................................................................48, 49

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*,
  498 U.S. 505 (1991) ........................................................................................................34

*Oneida Cty. v. Oneida Indian Nation of N.Y.*,
  470 U.S. 226 (1985) ........................................................................................................49

*In re Opioid Litig.*,
  No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018) ....................21, 37, 54

*Parkhurst v. Lampert*,
  264 F. App'x 748 (10th Cir. 2008) ..................................................................................53

*Pasquantino v. United States*,
  544 U.S. 349 (2005) ..................................................................................................24, 25

*People of the State of Cal. v. Purdue Pharma L.P., et al.*,
  No. 30-2014-00725287-CU-BN-CXC (Cal. Super. Ct. filed May 21, 2014) ....................52

*Pequot Pharm. Network v. Conn. Hospice, Inc.*,
  No. CV-GC-2015-104, 2015 WL 9601099 (Mash. Pequot Tribal Ct. Dec. 10,
  2015) ..........................................................................................................................47, 48

*Perry v. Am. Tobacco Co.*,
  324 F.3d 845 (6th Cir. 2003) ........................................................................................2, 9

*United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*,
  892 F.3d 822 (6th Cir. 2018) ....................................................................................44, 46

*Prindel v. Ravalli County*,
  133 P.3d 165 (Mont. 2006) ............................................................................................12

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639 (2012) ........................................................................................................19

*Robinson v. McNeil Consumer Healthcare*,
  615 F.3d 861 (7th Cir. 2010) ..........................................................................................39

*Rookhuizen v. Blain's Mobile Home Court, Inc.*,
  767 P.2d 1331 (Mont. 1989) ..........................................................................................29

*Samson v. State*,
  69 P.3d 1154 (Mont. 2003) ............................................................................................12

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) ..........................................................................................43

*Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris Inc.*,
   249 F.3d 1068 (D.C. Cir. 2001) ...................................................................4, 5, 6

*Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*,
   83 F. Supp. 2d 70 (D.D.C. 1999), *rev'd in part*, 249 F.3d 1068
   (D.C. Cir. 2001) ...................................................................................................6

*Sewer Dist. v. Garden City Plumbing & Heating, Inc.*,
   200 P.3d 60 (Mont. 2008) ..................................................................................48

*SFS Check, LLC v. First Bank of Del.*,
   774 F.3d 351 (6th Cir. 2014) .............................................................................42

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272 (3d Cir. 1992) ...............................................................................42

*Shors v. Branch*,
   720 P.2d 239 (Mont. 1986) ...........................................................................52, 54

*Sidney Hillman Health Ctr. v. Abbott Labs.*,
   873 F.3d 574 (7th Cir. 2017) ...........................................................................7, 44

*Sierra Club v. Okla. Gas & Elec. Co.*,
   816 F.3d 666 (10th Cir. 2016) ...........................................................................52

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
   532 F.3d 496 (6th Cir. 2008) .............................................................................43

*Starkenburg v. State*,
   934 P.2d 1018 (Mont. 1997) ..............................................................................12

*State Auto Prop. & Cas. Ins. Co. v. Hargis*,
   785 F.3d 189 (6th Cir. 2015) .............................................................................31

*State of Oklahoma v. R.J. Reynolds*,
   No. CJ 96-1499 (Okla. Dist. Ct. Aug. 28, 1998) .............................................32

*State v. Byrne*,
   350 P.2d 380 (Mont. 1960) ................................................................................48

*State v. Purdue Pharma L.P.*,
   No. 3AN-17-09966CI (Alaska Super. Ct. July 12, 2018) .................................37

*Strayhorn v. Wyeth Pharm., Inc.*,
   737 F.3d 378 (6th Cir. 2013) .............................................................................38

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*
   *Coordinated Pretrial Proceedings*,
   No. 14 C 1748, 2017 WL 1836435 (N.D. Ill. May 8, 2017) ..................................................40

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
   451 U.S. 630 (1981)................................................................................................16, 34

*Thornton v. Ford Motor Co.*,
   297 P.3d 413 (Okla. Ct. App. 2012) .................................................................................11, 13

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
   984 F.2d 915 (8th Cir. 1993) .................................................................................................31

*Town of Cyril v. Mobil Oil Corp.*,
   11 F.3d 996 (10th Cir. 1993) .................................................................................................49

*United States v. Largo*,
   775 F.2d 1099 (10th Cir. 1985) .............................................................................................16

*United States v. Philip Morris USA, Inc.*,
   449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part, vacated in part*, 566 F.3d 1095
   (D.C. Cir. 2009) ....................................................................................................................5

*United States v. Standard Oil Co.*,
   332 U.S. 301 (1947)..................................................................................15, 16, 17, 21

*United States v. Wilson*,
   503 U.S. 329 (1992).................................................................................................17

*W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*,
   54 F. Supp. 3d 888 (S.D. Ohio 2014) ...................................................................................51

*Walker Cty. v. Tri-State Crematory*,
   643 S.E.2d 324 (Ga. Ct. App. 2007)................................................................................20, 21

*Ward v. Caulk*,
   650 F.2d 1144 (9th Cir. 1981) ...............................................................................................53

*Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*,
   797 F.2d 668 (8th Cir. 1986) .................................................................................................34

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   684 F. Supp. 2d 942 (N.D. Ohio 2009)..................................................................................46

*White v. Smith & Wesson*,
   97 F. Supp. 2d 816 (N.D. Ohio 2000)..............................................................................20, 37

*Wing v. Lorton*,
   261 P.3d 1122 (Okla. 2011) ............................................................52

*Wombold v. Associates Financial Services Co. of Montana, Inc.*,
   104 P.3d 1080 (Mont. 2004), *overruled in part*, *Essex Ins. Co. v. Moose's*
   *Saloon, Inc.* 166 P.3d 451 (Mont. 2007) ..........................................27

*Yuhasz v. Brush Wellman, Inc.*,
   341 F.3d 559 (6th Cir. 2003) .........................................................45

*Z Techs. Corp. v. Lubrizol Corp.*,
   753 F.3d 594 (6th Cir. 2014) .........................................................53

**STATUTES**

25 U.S.C.
   § 1601(1) ....................................................................................16
   § 1621e .................................................................................*passim*
   § 1621e(a) ...................................................................................15
   § 1621e(c) ...................................................................................18
   § 1621e(e)(3)(A) ...............................................................14, 15, 18
   § 1621e(k) ...................................................................................18

Mont. Civ. Code
   § 4550 (1895) ..............................................................................30
   § 4551 (1895) ..............................................................................30

Mont. Code Ann.
   § 27-2-103 ..................................................................................47
   § 27-30-101 ................................................................................34
   § 27-30-101(2) ............................................................................32
   § 30-14-111(1) ............................................................................26
   § 30-14-121 ................................................................................26
   § 30-14-133(1) ............................................................................26
   § 30-14-142(2) ............................................................................26
   § 37-7-604 ..................................................................................27

Revised Laws of Okla. § 4250 (1910) ...................................................30

Revised Laws of Okla. § 4251 (1910) ...................................................30

**REGULATIONS**

21 C.F.R.
   § 201.100(d)(1) ...........................................................................38
   § 202.1(l)(2) ...............................................................................38
   § 314.70(c) ..................................................................................38
   § 314.70(d) .................................................................................38

## OTHER AUTHORITIES

1-22 *Cohen's Handbook of Federal Indian Law* § 22.02[2]-[3] (2017)........................................16

*Black's Law Dictionary* 1717 (10th ed. 2014).............................................................................18

Restatement (Third) of Torts: Liability for Economic Harm § 7, cmt. a, illus. 1,
    TD No. 2 (2014)........................................................................................................................10

W. Page Keeton et al., *Prosser and Keeton on Law of Torts* § 2 (5th ed. 1984).........................21

## INTRODUCTION

The Tribes' Oppositions stretch the bounds of state and federal law and advance novel legal theories that find no support in traditional doctrine.[1]  Accepting those theories would impose unprecedented liability on legitimate pharmaceutical companies for developing and selling certain FDA-approved opioid medications.  It would also effectively absolve the illegal supply chain and criminal actors who are responsible for a substantial majority of opioid-inflicted harm.

This Court has an important role at the motion-to-dismiss stage.  The Manufacturers respectfully submit that none of the Tribes' claims should be allowed to advance.  But this Court need not adopt an all-or-nothing approach.  In a case this complex, the motion-to-dismiss stage is an opportunity for the Court to narrow the Tribes' claims and provide guidance on what the Tribes will have to prove going forward—including which injuries they can (and cannot) recover for under the various theories asserted.  Narrowing the case will facilitate an efficient discovery process and maximize the chances of bringing the litigation to a fair and expeditious resolution.

---

[1]  Unless otherwise noted, all capitalized terms and acronyms are defined in Manufacturer Defendants' Memorandum of Law in Support of the Manufacturer Defendants' Joint Motion to Dismiss the Tribes' First Amended Complaints (Dkt. #933-1) ("Mot." or "Motion"), and internal citations, quotation marks, and alterations are omitted from quotations.  "Muscogee Opp." refers to the Muscogee (Creek) Nation's Consolidated Opposition to Defendants' Motions to Dismiss the Nation's First Amended Complaint (Dkt. #1008).  "Blackfeet Opp." refers to the Blackfeet Tribe's Corrected Omnibus Opposition to Defendants' Motions to Dismiss (Dkt. #1017).  Defendant Noramco, Inc., a company referenced in the Blackfeet Tribe's First Amended Complaint (*see* Blackfeet 1AC ¶ 53), was inadvertently omitted from footnote 1 of the Motion as a moving Manufacturer Defendant.  Noramco joins in the Motion to the extent applicable.  Noramco does not (and did not at all material times relevant hereto) manufacture, package, brand, market, distribute, or sell the finished drug products at issue in this litigation, and it reserves all rights and defenses specific to it.

**ARGUMENT**

I.    **FUNDAMENTAL TORT PRINCIPLES FORECLOSE THE TRIBES FROM RECOVERING FOR REMOTE AND INDIRECT HARMS**

A.    **The Tribes Have Failed To Plead Proximate Causation**

The Tribes argue (1) that their injuries are direct and not derivative; (2) that the "*Holmes* factors" weigh in favor of finding proximate cause; (3) that the numerous federal cases dismissing analogous claims against tobacco companies are inapposite; (4) that intervening actors do not break the causal chain; and (5) that Oklahoma and Montana law employ a more lenient proximate cause standard than the common law.  Each of these responses is flawed, and all of the Tribes' claims should be dismissed for failure to plead proximate cause.[2]

1.    **The Tribes' Alleged Injuries Are Indirect, Derivative, And Remote**

Common law principles of proximate cause require a "direct relation between the injury asserted and the injurious conduct alleged."  *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992).  This means that a plaintiff whose "harm flow[s] merely from the misfortunes visited upon a third person by the defendant's acts" is considered "to stand at too remote a distance to recover."  *Id.* at 268-69.  Or as the Sixth Circuit put it in a binding decision squarely on point, when a plaintiff's injuries "are purely contingent on harm to [third parties], these injuries are clearly indirect" and thus "too remote" from the alleged wrongdoing to satisfy the proximate cause requirement.  *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003).

Faced with *Holmes* and *Perry*, the Tribes repeatedly insist that their injuries are "direct," not derivative.  Muscogee Opp. 45-46, 114-21; Blackfeet Opp. 45-48.  But rote repetition does not make it so.  Whether an injury is direct for purposes of proximate cause is a legal

---

[2]   The Blackfeet Tribe says the Manufacturers did not "clearly challenge the Tribe's federal nuisance claim on proximate cause grounds."  Blackfeet Opp. 40 n.17.  But the Manufacturers repeatedly said that *all* of the Tribe's claims should be dismissed on this basis (Mot. 4, 6, 15), and the Blackfeet Tribe does not contend that different causation principles apply.

determination for the court to make based on the facts alleged.  *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 13-14 (2010) (rejecting conclusory assertion that defendant "directly caused" plaintiff's harm).  And the facts alleged here make clear that the Tribes' alleged injuries—such as increased medical and police costs and lost tax revenue—are "purely contingent on harm" suffered by individual members of the Tribes.  Put another way, if the individual Tribe members had suffered no harm at all, neither would the Tribes.  Their injuries are thus, by definition, indirect.

The Tribes contend that their injuries are "direct" because they have alleged certain damages that they claim the injured individuals would not be able to recover in tort (such as lost tax revenues).  *See, e.g.*, Muscogee Opp. 48; Blackfeet Opp. 47-48.  But the (alleged) existence of damages unique to the Tribes themselves does not establish a direct injury, as *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), confirms.  There, the plaintiffs alleged that the defendants intentionally failed to charge sales tax in order to maintain lower prices and undercut the plaintiffs' competing business.  *Id.* at 454.  The Supreme Court held that the plaintiffs failed to plead proximate cause because the *directly* injured party was the state taxing authority.  *Id.* at 457-58.  Even though the plaintiffs sought to recover their own business damages, which the taxing authority could not recover, and even though those damages were foreseeable, their injuries were still indirect.  *See id.* at 459-60.  So are the Tribes' injuries.  *See, e.g.*, Muscogee Opp. 119 (alleging damage to "emergency equipment and vehicles"); Blackfeet Opp. 7, 47, 50, 122-23 (alleging lost tax revenues derivative of harm to individual citizens).

## 2.  The *Holmes* Factors Weigh Against Proximate Cause

The Tribes contend that an analysis of the three *Holmes* factors reveals that their injuries are not too remote from the misconduct alleged.  Muscogee Opp. 28-29, 114; Blackfeet Opp. 46; *see Holmes*, 503 U.S. at 269-70.  But the *Holmes* factors, properly applied, weigh heavily against

finding proximate cause based on the facts alleged here.

Both Tribes contend that the first factor weighs in their favor because their "damages may be properly and efficiently apportioned among the Defendants."  Blackfeet Opp. 46; Muscogee Opp. 114.  Notably, they never explain *how*.  What's more, the larger difficulty here is not how to apportion a set damages amount "among the Defendants"; it is how to rationally determine the amount of damages in the first place.  The first *Holmes* factor is precisely about the difficulty of "ascertain[ing] the *amount* of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors."  *Holmes*, 503 U.S. at 269 (emphasis added).  For example, how will this Court ascertain what portion of the Tribes' criminal justice expenditures are attributable to opioid abuse, as opposed to the myriad other causes of crime?  *Cf. Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 124-26 (Conn. 2001) (noting the "enormous difficulty" of disentangling the numerous causes contributing to increased gun violence).  And how will the Court ascertain what sub-portion is attributable to the *tortious* marketing or distribution of opioids, as opposed to the truthful and non-tortious marketing and distribution of these legal products?  This is not a rhetorical factual question to be resolved later—it is a critical component of the legal determination as to whether proximate cause exists.

As for the second and third *Holmes* factors, neither is necessary to the analysis.  *See Anza*, 547 U.S. at 459 (an injury can be too remote "[n]otwithstanding the lack of any appreciable risk of duplicative recoveries"); *Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1075-76 (D.C. Cir. 2001) ("*SEIU Fund*") (third *Holmes* factor is not "a free-standing, independent ground for finding proximate causation").  In any event, the Tribes seek (among other things) the costs of medical care provided to opioid users—who could also bring their own lawsuits—creating a risk of double recovery.  And while the Tribes claim

that their "recovery is necessary to vindicate the purposes underlying RICO and to deter future violations" (Muscogee Opp. 114; Blackfeet Opp. 46), that is not the relevant inquiry. The third *Holmes* factor is not about vindicating the purposes of particular statutes. Nor does it have anything to do with whether any "specific damages" are recoverable by particular plaintiffs. The question is whether misconduct can be adequately deterred by those who are directly injured. *See SEIU Fund*, 249 F.3d at 1076 (noting that the third *Holmes* factor is *not* concerned with "identifying the 'best' plaintiff to assert certain antitrust or RICO claims"). The Tribes fail to explain why "directly injured victims"—*i.e.*, the individuals whose injury or death from opioid misuse was allegedly caused by the Manufacturers' misconduct—are unable to deter "injurious conduct" through suits of their own. *Holmes*, 503 U.S. at 269-70.

### 3. The Tobacco Cases Confirm The Absence Of Proximate Cause Here

The Tribes' efforts to distinguish the tobacco cases cited by the Manufacturers are unavailing.

The Blackfeet Tribe first argues that all of the cases are irrelevant because they predate the "landmark" district court decision in *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part, vacated in part*, 566 F.3d 1095 (D.C. Cir. 2009). Blackfeet Opp. 49. But that case had nothing to do with proximate cause. Indeed, the term "proximate cause" is nowhere to be found in that decision. *Philip Morris* was an action brought by the United States that *did not seek damages*—only prospective injunctive relief. *See* 449 F. Supp. 2d at 31-34. Neither the district court's nor the D.C. Circuit's decision discusses, much less casts doubt on, any of the earlier tobacco cases—*one of which was decided by the D.C. Circuit. See SEIU Fund*, 249 F.3d 1068.

Both Tribes also argue that their suits are distinguishable because, unlike the tobacco plaintiffs, they are suing to recover for their own injuries. Muscogee Opp. 47-48; Blackfeet Opp.

50.  But that was true in a number of the tobacco cases as well.  In *SEIU Fund*, for instance, the plaintiff healthcare trust funds claimed "injuries to their infrastructure and financial health and stability, to their ability to invest in smoking cessation/reduction programs for their participants, and programs designed to improve the general health and well-being of their participants"— damages, they said, individual smokers could not recover.  *Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*, 83 F. Supp. 2d 70, 86 (D.D.C. 1999), *rev'd in part*, 249 F.3d 1068 (D.C. Cir. 2001).  That case also involved claims by sovereign foreign governments who sought damages for "economic harms to their treasuries" that their citizens could not recover. 249 F.3d at 1071.  And the plaintiff in *Alabama Coushatta Tribe* alleged "damage to the Tribe itself" "as a sovereign entity."  Brief of Appellant 9-10, *Alabama Coushatta Tribe v. Am. Tobacco Co.*, 46 F. App'x 225 (5th Cir. 2002) (No. 01-41198), 2002 WL 32180513.  But the courts still concluded that all of these claims failed on proximate cause grounds because the harms were still fundamentally derivative of (*i.e.*, contingent on) the harms suffered by those more directly injured by the defendants—just like the harms alleged by the Tribes here.[3]

### 4. The Role Of Intervening Doctors And Criminal Actors Further Undermines Proximate Cause

The Tribes argue that the intervening acts of doctors and criminal actors do not break the causal chain because they were foreseeable.  Muscogee Opp. 30-34, 117; Blackfeet Opp. 41-44, 51.  The Manufacturers address the Tribes' erroneous fixation on foreseeability as the sole measure of proximate cause in more detail below (*see infra* § I.A.5), but with respect to the role

---

[3]  The tobacco cases also show why the Tribes' invocation of *parens patriae* standing (if it can stand at all) cannot solve their causation problem.  As the D.C. Circuit explained, "such status" does not "eliminate[] or adequately substitute[] for proximate cause."  *SEIU Fund*, 249 F.3d at 1073.  "[T]he doctrine of *parens patriae* is merely a species of prudential standing and does not create a boundless opportunity for governments to seek recovery for alleged wrongs against them or their residents."  *Id.*; *see also Alabama Coushatta Tribe*, 46 F. App'x 225, 2002 WL 1939835, at *1 (concluding that "the Tribe's sovereign status and their 'direct injury' argument do not make this case distinguishable").

of intervening actors, the Tribes also fail to grapple with the crucial fact that they are alleging *aggregate* injuries.

The Tribes allege that the Manufacturers proximately caused *all* the aggregate harms stemming from opioid misuse.  That theory requires believing that *all* doctors were duped and that *none* of the alleged harm flows from prescriptions written by doctors who were not influenced by the alleged misconduct.  Although the Blackfeet Tribe embraces this extreme position (Blackfeet Opp. 58), it is implausible.  As the Seventh Circuit explained, doctors conduct their own research and do not base their prescribing decisions solely on marketing materials.  *Sidney Hillman Health Ctr. v. Abbott Labs.*, 873 F.3d 574, 577 (7th Cir. 2017).  Moreover, the doctors had access to and would have reviewed the relevant FDA-approved labels, which provided the pertinent risk information.  Therefore, even accepting that allegedly fraudulent marketing might foreseeably cause *some* doctors to write harmful prescriptions they would not otherwise write, "some physicians doubtless were proof against the campaign of disinformation."  *Id.*  The Tribes offer no explanation for their untenable position.

The same logic applies to the intervening role of criminal actors.  The Tribes seek to recover for broad swaths of social spending connected to crime, without offering any theory of how to separate out the many criminal acts that were completely independent of the Manufacturers' alleged wrongdoing.  The same problem led the Illinois Supreme Court to conclude that firearms dealers could not be found to have proximately caused the aggregate harms of gun violence in Chicago.  *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1132-38 (Ill. 2004).  As the court explained, it would be one thing to hold a particular dealer liable "for negligently entrusting a weapon to an individual buyer when it is foreseeable that the buyer might allow a third party to possess or use the gun illegally."  *Id.* at 1137.  But

Chicago (much like the Tribes here) was proposing liability based on "the aggregate effect of numerous sales transactions occurring over time and in multiple different locations operated by businesses with no ties to each other." *Id.* The court rejected the idea that the dealers' alleged misconduct "can be deemed a legal cause of a nuisance that is the result of the aggregate of the criminal acts of many individuals over whom they have no control." *Id.* at 1138. So too here.

### 5. Lack Of Proximate Cause Is Fatal To The Tribes' State Claims Too

Both Tribes argue that even if the Tribes' *federal* claims fail for lack of proximate cause (they do), that does not mean their state-law claims fail as well. This is so, the Tribes say, because under Montana and Oklahoma law, proximate cause is (1) a question for the jury and (2) simply a matter of foreseeability. Muscogee Opp. 25-30; Blackfeet Opp. 36-41. Neither argument withstands scrutiny.[4]

*First*, Oklahoma and Montana courts recognize that proximate cause can be decided by the court as a matter of law when there are no material factual disputes. For instance, in *Minor v. Zidell Trust* (cited at Muscogee Opp. 30), the Oklahoma Supreme Court held that the alleged negligence of the defendants "was not—*as a matter of law*—the proximate cause of [the plaintiff's] injuries." 618 P.2d 392, 393 (Okla. 1980) (emphasis added); *see also id.* at 394 n.10 ("[W]hen the facts are not in dispute . . . proximate cause is a question for the court."). Likewise, under Montana law, proximate cause "may be determined as a matter of law" by the court where the undisputed facts make the answer clear. *E.g.*, *Kiger v. State*, 802 P.2d 1248,

---

[4]  As the Muscogee Nation notes, an Oklahoma trial court recently declined to dismiss claims brought by the State of Oklahoma against opioid manufacturers. Muscogee Opp. 9 & Ex. C. It did so, however, in a one-paragraph order that does not mention (much less analyze) proximate cause—and accordingly deserves no weight. The Blackfeet Tribe cites (without discussion) several other state court decisions that supposedly "rejected Defendants' proximate cause argument." Blackfeet Opp. 36 n.16. None of those decisions is binding, and to the extent their proximate cause analyses are more than perfunctory conclusions, they are unpersuasive for the reasons the Manufacturers explain here.

1251 (Mont. 1990) (holding that "too many 'what ifs'" broke the causal chain as a matter of law). Here, taking all of the complaints' factual allegations as true, the Manufacturers cannot be deemed to have proximately caused the Tribes' harms as a matter of Oklahoma and Montana law because the asserted harms are indirect and remote. Under Oklahoma and Montana law, *that* issue can be resolved by the Court.

*Second*, the Tribes are mistaken in arguing that state-law proximate cause is different from, and more easily satisfied than, the proximate cause standard described in *Holmes*. *Holmes* did not set forth a special federal- or RICO-specific version of proximate cause—its analysis was expressly grounded in the "common law." 503 U.S. at 268; *see also id.* at 267 (noting statute "incorporate[d] common-law principles of proximate causation"). Any doubt that *Holmes* concerned common law proximate cause is resolved by the Sixth Circuit's binding decision in *Perry*, which held—citing *Holmes*—that "the RICO statute incorporates general common law principles of proximate causation." 324 F.3d at 850. For that reason, once the Sixth Circuit concluded that the plaintiffs' RICO claim failed for lack of proximate causation, it deemed it unnecessary "to conduct a claim-specific inquiry" before dismissing plaintiffs' state-law claims on the same ground. *Id.* The Tribes simply ignore this key aspect of *Perry*.

While the Oklahoma and Montana cases cited by the Tribes treat foreseeability as the measure of proximate cause, none stands for the proposition that mere foreseeability is enough *even where the plaintiff's harm is indirect or derivative of another's injury*. *Cf. Perry*, 324 F.3d at 850 ("Though foreseeability is an element of the proximate cause analysis, it is distinct from the requirement of a direct injury."); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999) ("As a general rule, proximate cause requires that both [foreseeability and direct injury] be present."). And such a rule would radically upend tort law.

It may be foreseeable that a tortfeasor who injures a victim will cause harm to the victim's insurer (who must pay for his care) and employer (who will lose his services). But, nonetheless, it is well-established that these downstream victims cannot directly sue the tortfeasor. *See Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 822-23 (7th Cir. 1999) (insurers can sue only through subrogation); Restatement (Third) of Torts: Liability for Economic Harm § 7, cmt. a, illus. 1, TD No. 2 (2014) (employer cannot sue).[5] Likewise, "a negligent driver who crashes into another car in a tunnel . . . is not thought liable for all the inevitable *(and foreseeable)* financial losses resulting from the delays that he has caused." *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 52 (1st Cir. 1985) (Breyer, J.) (emphasis added). None of the cases the Tribes cite indicates that Oklahoma or Montana courts have embraced a conception of proximate cause that would reach different results.[6]

### B.  The Tribes Fail To Show That The Manufacturers Have Any Duty To Prevent The Misconduct Of Third Parties

The Tribes do not dispute that they have alleged neither a special relationship nor special circumstances sufficient to create a duty on the part of the Manufacturers to protect against the criminal, intentional, or reckless misconduct of third parties. Nor do they dispute that duty is a question of law that can be decided on a motion to dismiss. *See* Blackfeet Opp. 90 ("Duty is a legal issue . . . ."); *see also Thornton v. Ford Motor Co.*, 297 P.3d 413, 428 (Okla. Ct. App.

---

[5]  There are a few specialized tort claims—such as loss of consortium and negligent infliction of emotional distress—that authorize recovery for derivative injuries. *See* Muscogee Opp. 28 n.74. But these are notable as exceptions to the general rule.

[6]  The Muscogee Nation also argues that common law principles of proximate cause should not apply to its claim of public nuisance because the remedy is abatement rather than damages. Muscogee Opp. 28. The Nation cites no authority for this proposition, and it makes no sense. The proximate cause requirement embodies "the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 701 (2011). If the Manufacturers' alleged conduct is not a legally cognizable cause of the Tribes' injuries that justifies damages (and it is not), it is likewise not a legally cognizable cause of those same injuries that justifies abatement.

2012) (duty is a "question of law").  Instead, they argue that (1) they are not seeking to hold Defendants liable for the misconduct of third parties; (2) foreseeability alone is enough to create a legally enforceable duty; and (3) various statutory and regulatory provisions are relevant to the standard of care.  Each argument fails.

*First*, the Tribes argue that their claims are not premised on the criminal, intentional, or reckless conduct of third parties.  *See* Muscogee Opp. 89-90, 94 n.247; Blackfeet Opp. 90, 93. For a significant portion of the Tribes' claims, however, there would be no injury *but for* the wrongful acts of others.  *See* Muscogee 1AC ¶¶ 208-10, 213-25, 230, 232, 237, 241-62, 278, 282, 287, 290-91, 436(c); Blackfeet 1AC ¶¶ 81, 469-73, 482-83, 494, 501, 566-77, 586-647.  Just like the plaintiffs in *District of Columbia v. Beretta, U.S.A., Corp.*, the Tribes are seeking to hold the Manufacturers liable for injuries caused by the intervening criminal acts of third parties.  872 A.2d 633, 639-45 (D.C. 2005) (declining to find a duty in distribution of firearms case); *see also McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997) (same for negligent marketing of ammunition).[7]

*Second*, the Tribes claim that the Manufacturers have a duty to prevent the foreseeable misconduct of third parties.  Muscogee Opp. 90-92; Blackfeet Opp. 92-94.  The law is clear, however, that foreseeability alone is insufficient to create such a duty.  And neither Tribe alleges that the necessary "special relationship" or "special circumstances" exist here.

The Montana Supreme Court has held that, "[a]s a general rule, there is no duty to protect others against harm from third parties," and a "person is not liable for the actions of another and

---

[7]  The Tribes also rely on orders from trial courts in four other states declining to dismiss negligence claims against opioid manufacturers.  Muscogee Opp. 92-94; Blackfeet Opp. 96-99. The Nation argues that some of these orders found a duty to prevent diversion of opioids (Muscogee Opp. 92-93), but the Nation has made clear it is not bringing diversion claims against the Manufacturers.  *Id.* at 5.  More generally, these decisions are neither binding nor persuasive for the reasons set forth above.

is under no duty to protect another from harm in the absence of a *special relationship of custody or control*." *Lopez v. Great Falls Pre-Release Servs., Inc.*, 986 P.2d 1081, 1086 (Mont. 1999). Although *Lopez* also discusses foreseeability, it makes clear that a court must first find such a "special relationship" before determining whether the harm was sufficiently foreseeable to create a duty. *Id.* at 1086-87 (reaching the issue of foreseeability only after finding a special relationship of custody or control). Similarly, in *Prindel v. Ravalli County*, the Montana Supreme Court explained that "to determine whether [defendant] owed [plaintiff] a duty to protect him from harm by [a third party] we must first consider whether a 'special relationship of custody' existed between [the third party] and [defendant]. *If so*, we must then ascertain whether [plaintiff] qualifies as a foreseeable plaintiff." 133 P.3d 165, 177 (Mont. 2006) (emphasis added). The Blackfeet Tribe cites both cases but ignores that predicate requirement. *See* Blackfeet Opp. 92, 99-100.

Instead, the Tribe relies on proximate cause cases to support its foreseeability test. *See* Blackfeet Opp. 93-94 (citing cases). Those cases do not support the Tribes' proximate cause arguments, for the reasons set forth above. *See supra* § I.A. Nor do they speak to the separate question of whether a legal duty exists for negligence purposes. All of the cases that actually address the issue of "duty" involved precisely the type of special relationship of custody or control that must exist before a duty can be found—and that is lacking here. *See Lopez*, 986 P.2d at 1085-86 (detention center-felon); *Starkenburg v. State*, 934 P.2d 1018, 1020-23, 1027 (Mont. 1997) (parole officer-parolee); *Samson v. State*, 69 P.3d 1154, 1156-57 (Mont. 2003) (youth group home-juvenile offender); *Eklund v. Trost*, 151 P.3d 870, 874, 878-79 (Mont. 2006) (detention center-detainee).[8] In sum, the Montana Supreme Court has expressly held that a

---

[8] The other cases cited by the Tribe are likewise inapposite. *Newman v. Lichfield*, 272 P.3d

12

defendant has no duty to prevent the criminal, intentional, or reckless actions of another absent a special relationship of custody or control—and the Tribe does not point to a single Montana case holding otherwise.

Oklahoma law is similar in this respect.  "[A]bsent either *special relations* or *special circumstances*, a defendant has neither a duty of care to the plaintiff nor a duty to anticipate or control the intentional and criminal acts of a third person against that plaintiff."  *Thornton*, 297 P.3d at 428.  The Nation relies primarily on *Brewer v. Murray*, but that case was about the rape of a minor in the custody of an adult and, not surprisingly, the court found the requisite "special relationship" because the adult had "assumed custody" of the child.  292 P.3d 41, 50 (Okla. Ct. App. 2012) (cited at Muscogee Opp. 91).  That case further confirms that "ordinarily, one has no duty to protect another from the criminal conduct caused by a third party."  *Id.* at 47.  *Brewer* discusses four exceptions to that rule, but none of those exceptions applies here and the Nation does not argue otherwise.[9]

*Third*, the Tribes' insistence that statutory and regulatory provisions can be used as evidence of the standard of care is beside the point.  *See* Muscogee Opp. 90 & n.237; Blackfeet

_____

625, 627-29, 630-32 (Mont. 2012), concerned a suicide and appeared to assume a special relationship of custody in the context of a boarding school for troubled teenagers.  *Gourneau v. Hamill*, only confirms the rule that absent a relationship of "custodial care," which "typically involves hospitals or prisons," a defendant has no duty to prevent the acts of others.  311 P.3d 760, 763 (Mont. 2013); *id.* at 764 (plaintiff had not established "the existence of a special relationship that would support a duty to prevent" the intervening act).  And *Fisher v. Swift Transportation Co.* involved only *negligent* intervening acts.  181 P.3d 601, 607 (Mont. 2008).

[9]  The Nation's other cases also do not support its position.  *Lowery v. Echostar Satellite Corp.*, did not opine on the question of duty in the context of intervening acts of third parties. 160 P.3d 959, 965 (Okla. 2007).  *Delbrel v. Doenges Brothers Ford, Inc.* involved a *negligent* intervening act.  913 P.2d 1318, 1319-20 (Okla. 1996).  *Boyle v. ASAP Energy, Inc.* arose in the "special circumstance" of dramshop liability, and the duty imposed on a commercial vendor of alcohol not to sell alcohol *directly* to a noticeably intoxicated customer for consumption off premises.  408 P.3d 183, 194-95 (Okla. 2017).  And *City of Spokane v. Monsanto Co.* arose under Washington law and did not address the duty question.  No. 2:15-CV-00201, 2016 WL 6275164, at *8-*9 (E.D. Wash. Oct. 26, 2016).

Opp. 91, 99-105.  The Manufacturers moved to dismiss the negligence claim on the ground that no duty exists to protect the Tribes from the criminal, intentional, or reckless conduct of third parties.  The statutory provisions relied on by the Tribes have no bearing on the threshold legal question whether a duty exists in the first place.

## II.  THE TRIBES' ALLEGED INJURIES ARE NOT REDRESSABLE AND THEY LACK STATUTORY STANDING TO BRING MANY OF THEIR CLAIMS

### A.  The Tribes Cannot Recover The Costs Of Providing Federally Funded Health Care

As the Manufacturers explained, the Tribes cannot recover the costs of any opioid-related healthcare provided to their members through the IHS or through federally funded compacts (or contracts) under the ISDEAA.[10]  The Tribes concede the first point and disclaim any effort to recover those costs.  Muscogee Opp. 36; Blackfeet Opp. 11-12.  As for the ISDEAA, the Manufacturers explained that recovery is governed by 25 U.S.C. § 1621e, which requires the Tribes to identify and subrogate the claims of particular individuals whose costs they want to recoup, which they have not done.  Mot. 21-23.  The Tribes do not dispute (1) that § 1621e provides for recovery of funds at issue here; (2) that they did not bring a claim under § 1621e; (3) that § 1621e(e)(3)(A) would require them to identify the specific individuals whose healthcare costs they seek to recover; or (4) that they have failed to identify *any* individual patient.  Instead, they argue that § 1621e is just an alternative remedy that does not preempt or preclude recovery in this case.  Muscogee Opp. 36-45; Blackfeet Opp. 11-15.  That argument reflects a fundamental misunderstanding of the statutory regime.

The statutory history sets the current dispute in its proper context.  In 1992, Congress

---

[10]  Both Tribes imply that some (unidentified) aspects of their healthcare programs might be funded by non-IHS and non-ISDEAA sources.  Muscogee Opp. 37-38; Blackfeet Opp. 11 n.5.  The argument above of course would not apply to recovery of those costs.  But it is undisputed that the Tribes seek to recover healthcare covered by ISDEAA contracts or compacts, and the Court should make clear that those costs cannot be recovered.

amended 25 U.S.C. § 1621e to allow tribes to recover "reimbursement[] or indemnification" from insurers, but not damages for third-party tortfeasors. Mot. 21; *see also Alaska Native Tribal Health Consortium v. Settlement Funds Held For or To Be Paid on Behalf of E.R. ex rel. Ridley*, 84 P.3d 418, 424 (Alaska 2004) (§ 1621e addresses tribal "rights to *insurance-funded* recoveries from tort actions" (emphasis added)). That statute was then further amended in 2010 to allow tribes to recover "*damages*, reimbursement, or indemnification" directly from "third-party tortfeasor[s]." 25 U.S.C. § 1621e(a) (emphasis added). Recovery against third-party tortfeasors, however, was permitted only "to the same extent and under the same circumstances as the United States may recover under [the Medical Care Recovery Act (MCRA)]." *Id.* § 1621e(e)(3)(A). And to recover under MCRA, the United States must identify, in the complaint, the specific individuals whose treatment costs it seeks to recoup. Mot. 22-23. The statutory history thus makes clear that recovery of ISDEAA-funded healthcare costs from third-party tortfeasors became possible only in 2010 and only through § 1621e.

Key to understanding this point is *United States v. Standard Oil Co.*, 332 U.S. 301 (1947), the decision that ultimately spurred the enactment of MCRA. In *Standard Oil*, the United States sought to recover the cost of healthcare it provided to a soldier from a third-party tortfeasor who injured the soldier. *Id.* at 302. The Supreme Court held that the government could not recover. Its reasoning proceeded in two steps: (1) the government's ability to recover from third-party tortfeasors was necessarily and exclusively a question of *federal* law (*id.* at 305-11); and (2) such liability should not be decided as a matter of federal common law, but should instead be left for Congress to address through legislation (*id.* at 311-17). Congress eventually did permit such liability by enacting MCRA.

The Muscogee Nation attempts to brush aside *Standard Oil* as irrelevant because there

15

"the government was not attempting to pursue claims under state common law." Muscogee Opp. 44. That completely misses the point of the first step of *Standard Oil*. The government could *not* pursue claims under state law because, as the Court held, its ability to recover was necessarily governed by *federal* law. And the Muscogee Nation's discussion of ordinary preemption cases is likewise irrelevant. *Standard Oil* did not conclude that state law was inapplicable because Congress had intended to displace it through legislation (the standard preemption inquiry); it concluded that state law was inherently inapplicable, even in the *absence* of federal legislation. That was so because the government-soldier relation was "distinctively federal in character," its characteristics were "fundamentally derived from federal sources and governed by federal authority," and "the Government's purse [was] affected." 332 U.S. at 305-06.

The same is true here. The relationship between the United States and recognized Indian tribes is "distinctively and exclusively a creation of federal law." *Id.* at 310. And the United States has important "duties . . . as sovereign" (*Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981)) with respect to the provision of healthcare for Indians. *See* 25 U.S.C. § 1601(1). Although the goal of ISDEAA is to give tribes a central role in the administration of those health services, there remains broad federal oversight of ISDEAA compacts and contracts. *See* 1-22 *Cohen's Handbook of Federal Indian Law* § 22.02[2]-[3] (2017); *see also id.* at [5] ("[w]hile the Self-Determination Act transfers control over programs to tribes, financial responsibility remains with the federal government"). Moreover, "federal grant money does not lose its federal character simply because it is administered by a nonfederal agency such as [a tribal organization]." *United States v. Largo*, 775 F.2d 1099, 1101 n.3 (10th Cir. 1985). The fate of such funding therefore implicates distinctively federal interests and affects "the Government's

purse." *Standard Oil*, 332 U.S. at 306.  Accordingly, the question whether a tribe can recover ISDEAA-funded healthcare costs from third-party tortfeasors is necessarily governed by federal law.  And the answer is yes, it can recover such costs—but only because Congress permitted such recovery through its 2010 amendment of § 1621e.[11]

If the Tribes' contrary view were correct—if they have been able to recover ISDEAA funds from third-party tortfeasors under state law even prior to 2010—then that would render the 2010 amendment pointless.  That cannot be right, for it is a "familiar maxim that, when Congress alters the words of a statute, it must intend to change the statute's meaning."  *United States v. Wilson*, 503 U.S. 329, 336 (1992).  And sure enough, the Tribes cannot identify any pre-2010 cases where an Indian tribe recovered federally-funded healthcare costs from a third-party tortfeasor.  The Muscogee Nation says that "[b]oth before and after that amendment, Tribes have routinely availed and continue to avail themselves of state common law remedies," but it ultimately concedes it cannot point to a single case that "relate[s] to healthcare costs specifically"—an important caveat, given that the Manufacturers' argument is *only* about healthcare costs.  Muscogee Opp. 43 & n.119.

The savings clause in § 1621e(k) does not undermine the Manufacturers' argument.  *See* Muscogee Opp. 39-40; Blackfeet Opp. 14.  At the outset, under *Standard Oil*, Indian tribes had *no* cause of action, under state or federal law, to recover ISDEAA healthcare costs from third party tortfeasors until the 2010 amendments, which granted tribes a new and exclusive remedy in § 1621e(e)(3)(A).  The savings clause could not create new authorities that did not previously exist.  Moreover, as applied to § 1621e(e)(3)(A), the purpose of the savings clause is merely to

---

[11] In arguing otherwise, the Muscogee Nation relies on *Blatchford v. Alaska Native Tribal Health Consortium*, 645 F.3d 1089 (9th Cir. 2011) (cited at Muscogee Opp. 43), but that decision did not address a tribe's ability to recover directly from a third-party tortfeasor, did not explain the purpose of the 2010 amendments to § 1621e, and did not grapple with *Standard Oil*.

preserve the substantive bases of tort liability that tribes may invoke under that provision. Section 1621e(e)(3)(A), after all, does not itself create a substantive law of tort; it merely creates a procedural vehicle to bring a tort claim where one would not otherwise be available.  In this respect, it is like MCRA and the Federal Tort Claims Act (FTCA), both of which incorporate state substantive tort law into a federal cause of action.  *See, e.g.*, *Huddleston v. United States*, 485 F. App'x 744, 745 (6th Cir. 2012); *Heusle v. Nat'l Mut. Ins. Co.*, 628 F.2d 833, 837 (3d Cir. 1980).  Section 1621e(k)'s savings clause simply means that § 1621e does not limit the substantive bases of tort liability that a tribe can invoke.[12]

To the extent healthcare costs are recoverable at all through RICO or the Lanham Act, § 1621e also governs how such claims must proceed.  The Muscogee Nation argues that § 1621e "applies only to claims against tortfeasors."  Muscogee Opp. 44 n.120.  But the ordinary meaning of "tort" easily encompasses such federal claims.  *See Black's Law Dictionary* 1717 (10th ed. 2014) ("A civil wrong, other than breach of contract, for which a remedy may be obtained, usu. in the form of damages . . . .").  Because § 1621e (as amended in 2010) was enacted later and more specifically addresses tribal recovery of federally funded healthcare costs, its requirements—including the identification of specific injured individuals—apply to the Tribes' federal claims as well.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (noting that a specific authorization controls over a general one).

---

[12] The Muscogee Nation is also wrong about § 1621e(c) (Muscogee Opp. 40), which simply ensures that states and contracting parties do not interfere with Congress's rules governing this necessarily federal issue.  Weaker still is the Muscogee Nation's assertion that subsections (a) and (e) of § 1621e create two *separate* causes of action, such that the Tribes are free to proceed under subsection (a), even if not under subsection (e).  Muscogee Opp. 39 n.105, 45 n.121.  As their headings make plain, subsection (a) describes the Tribes' "Right of recovery," and subsection (e) explains how Tribes may "Enforce[]" that right.  Together, they identify a single cause of action.  *See Blatchford*, 645 F.3d at 1092 n.3 ("[T]he listed methods of enforcement [in subsection (e)] are the *exclusive* means of enforcing the right established in subsection (a)." (emphasis added)).

18

Finally, the Blackfeet Tribe argues that its action "is not an aggregation of thousands of personal injury claims," but instead seeks to recover "for the opioid epidemic inflicted on its community."  Blackfeet Opp. 15.  But insofar as the Tribes wish to recover the costs of opioid-related medical care that their members have incurred, they *are* seeking to aggregate thousands of personal injury claims.  They hope to do so without actually having to prove that the Manufacturers are liable for any particular claims.  But this attempt "to strip their adversaries of all defenses" by dodging the normal rules of subrogation—including the requirement under MCRA to identify the specific injured individuals—"is exactly why plaintiffs must lose." *Teamsters*, 196 F.3d at 823.

### B.      The Tribes Cannot Recover The Costs Of Providing Public Services

Among their claims for damages, the Tribes seek to recover the costs of providing a variety of public services to their members allegedly as a result of the opioid crisis.  But the common law "free public services doctrine" does not allow governmental entities to recover public expenditures made in the performance of government functions, absent legislative authorization.  Mot. 23-25.  None of the Tribes' reasons for departing from that doctrine here is persuasive.

*First*, the Tribes argue that because Montana and Oklahoma courts have not explicitly adopted the "free public services doctrine," the doctrine does not apply in those states. Muscogee Opp. 48-49; Blackfeet Opp. 35-36.  That has things exactly backwards.  Neither Tribe disputes that (1) the doctrine reflects generally-accepted common law principles (Mot. 23-25); (2) Montana and Oklahoma courts generally adhere to the common law; and (3) no court in either state has ever *rejected* application of the doctrine.  In these circumstances, the Court should conclude that Montana and Oklahoma would likely apply the common law rule.  Indeed, the Sixth Circuit has been clear that "federal courts must be cautious when making

pronouncements about state law," and that "[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, *we should choose the narrower and more reasonable path*." *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) (emphasis added).[13] That instruction supports applying the free public services doctrine here.

*Second*, the Muscogee Nation argues that the doctrine is subject to an exception for "costs caused by a public nuisance or other long-term tortious conduct." Muscogee Opp. 49; *see also* Blackfeet Opp. 35-36 (similar). That argument fails because the Tribes have not stated a cognizable public nuisance claim. Mot. 34-39; *infra* § III.A. In any event, a "long-term tortious conduct" exception does not reflect the baseline common law rule for any of the Tribes' claims, and such an exception has been routinely rejected by courts across the country.[14] As the Second Circuit explained, if such an exception were recognized, "it would be the exception that swallows the rule, since many expenditures for public services could be re-characterized by skillful litigants as expenses incurred in abating a public nuisance." *Cty. of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 152-53 (2d Cir. 2013). The free public services doctrine "does not vary with the type of action claimed." *Bd. of Supervisors v. U.S. Home Corp.*, No. 85225, 1989 WL 646518, at *2 (Va. Cir. Ct. Aug. 14, 1989). Rather, "it is the identity of the claimant and the

---

[13] In contrast, the cases relied on by the Muscogee Nation were based on state-court precedent *rejecting* the doctrine. *See White v. Smith & Wesson*, 97 F. Supp. 2d 816, 821-23 & n.9 (N.D. Ohio 2000) (citing state cases and noting that free public services doctrine is "not the law in Ohio"); *City of Everett v. Purdue Pharma L.P.*, No. C17-209RSM, 2017 WL 4236062, at *7 (W.D. Wash. Sept. 25, 2017) (rejecting doctrine because plaintiff "has presented sufficient case law to create a facially plausible basis for all of its claims").

[14] *See, e.g., Cty. of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 152-53 (2d Cir. 2013); *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 888, 894-95 (E.D. Pa. 2000), *aff'd on other grounds*, 277 F.3d 415 (3d Cir. 2002); *City of Chicago*, 821 N.E.2d at 1146-47; *Walker Cty. v. Tri-State Crematory*, 643 S.E.2d 324, 328 (Ga. Ct. App. 2007); *Bd. of Supervisors v. U.S. Home Corp.*, No. 85225, 1989 WL 646518, at *2 (Va. Cir. Ct. Aug. 14, 1989).

nature of the cost that combine to deny recovery." *Id.*[15]

*Third*, the Muscogee Nation argues that the bar should not apply because Manufacturers have not cited a case in which a court barred recovery by an Indian tribe. Muscogee Opp. 48-49. But the bar is the general common law rule, and the Nation has given no reason why they should be treated differently from other sovereigns. *See Standard Oil*, 332 U.S. at 314-16 (federal government); *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1079 (D.C. Cir. 1984) (District of Columbia); *Koch v. Consolidated Edison Co.*, 468 N.E.2d 1, 3 (N.Y. 1984) (public benefit corporations as well as municipality); *Walker Cty. v. Tri-State Crematory*, 643 S.E.2d 324, 325 (Ga. Ct. App. 2007) (county); *see generally* W. Page Keeton et al., *Prosser and Keeton on Law of Torts* § 2, at 7 (5th ed. 1984) (noting that common law barred such suits due to the plaintiff's "political or governmental capacity"). Their claims should accordingly be dismissed to the extent they seek to recover the costs of providing public services.

## C.  The Tribes Lack Standing To Assert Their RICO Claim Because They Cannot Establish Injury To Their "Business or Property"

None of the Tribes' alleged injuries qualify as injuries to business or property sufficient to confer standing under RICO. The alleged injuries all ultimately fall into one of three categories: (1) harm to Tribe members, which the Tribes seek to recover for in their sovereign capacity; (2) expenditures the Tribes incurred in voluntarily providing public services in

---

[15] The Muscogee Nation cites *City of Flagstaff v. Atchison, Topeka & Santa Fe Railway*, 719 F.2d 322 (9th Cir. 1983), and two trial court decisions to support its exception. But as the Georgia Court of Appeals has recognized, *Flagstaff*'s acknowledgement that some other courts have permitted recovery for public nuisance claims was *dicta* and cited only cases "ar[ising] in the unique context of the federal common law of nuisance regarding interstate waterways or also involved a state statute authorizing recovery of the damages at issue." *Walker Cty.*, 643 S.E.2d at 329 n.3. And the trial court decisions appeared to rest on principles of New Jersey and New York law, respectively—not on generally-applicable common law principles. *See Camden Cty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 256 (D.N.J. 2000), *aff'd sub nom. Camden Cty. Bd. Of Chosen Freeholders v. Beretta*, 273 F.3d 536 (3d Cir. 2001); *In re Opioid Litig.*, No. 400000/2017, 2018 WL 3115102, at *10 (N.Y. Sup. Ct. June 18, 2018).

response to the opioid crisis; and (3) hypothetical taxes that the Tribes say they would have collected if the use of opioids had not depressed investment, property value and economic productivity.  Recovery of each of these categories under civil RICO is *unprecedented*.

**1.     The Tribes Cannot Recover Under RICO For Injuries That Are Derivative Of Personal Injuries To Tribe Members**

Because personal injury is not an injury to "business or property," any monetary damage resulting from personal injuries is not a "proprietary type of damage" sufficient to confer RICO standing.  *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 n.2, 564-65 (6th Cir. 2013).  And the Tribes clearly cannot recover derivatively for personal injuries to their members, when those members would not be able to recover for them in their own right.  It is thus well-settled that a governmental entity does not suffer an injury to "business or property" when it sues on behalf of its citizens in a *parens patriae* capacity.  *Illinois v. Life of Mid-America Ins. Co.*, 805 F.2d 763, 767 (7th Cir. 1986).  Although their complaints included such claims, the Tribes now appear to disclaim any attempt to recover for so-called "sovereign" injuries that are derivative of personal injuries suffered by Tribe members.  Blackfeet Opp. 123 ("Plaintiff pleads categories of damages that are direct and not derivative of personal injuries."); Muscogee Opp. 126 (disclaiming that the Tribe is seeking to recover under RICO "for its sovereign interests, such as in its *parens patriae* capacity or for injury to its economy").  Accordingly, at an absolute minimum, this Court should hold that the Tribes cannot recover for derivative or *parens patriae* injuries under RICO.

**2.     The Tribes Cannot Recover Under RICO For Their Voluntary Expenditure On Public Services**

The Blackfeet Tribe appears to implicitly concede that voluntary public expenditures to combat the opioid crisis do not injure its "business or property."  Blackfeet Opp. 120-24 (declining to argue that public expenditures constitute "business or property").  The Muscogee

22

Nation, by contrast, continues to assert that it suffered injury to "business or property" by virtue of the fact it had "to increase its expenditures" to "bear[] the costs of the opioid epidemic, including emergency and treatment services . . . and other medical costs." Muscogee Opp. 119.

But as the Ninth Circuit has explained, "[a] government does not possess a property interest in the law enforcement or health care services that it provides to the public." *Canyon Cty. v. Syngenta Seeds, Inc*., 519 F.3d 969, 977 (9th Cir. 2008). "[T]he ordinary meaning of the term 'property' does not include the interests of local governments in performing functions such as policing, caring for the indigent sick, and otherwise protecting the well-being of the public." *Id.*

The Muscogee Nation cannot identify a *single case* where any court has held that voluntary public expenditures by a governmental entity is an injury to "business or property." The Nation cites *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, a case involving compulsory payouts of ERISA funds in response to claims by injured smokers. 23 F. Supp. 2d 771, 777, 791 (N.D. Ohio 1998). But compulsory payouts from a fixed pool of money by an ERISA fund is a circumstance far afield from voluntary expenditures by a government entity.

The Nation also relies on *County of Oakland v. City of Detroit*, a case that directly undermines its theory. 866 F.2d 839 (6th Cir. 1989). There, a municipality brought a claim against the city for an illegal scheme under which it was overcharged for sewage services provided by the city. The court held that the municipality had suffered injury to its "business or property" because it was a "direct purchaser[] in [its] own right" of the services for which it was overcharged. *Id.* at 844. That is a classic "commercial injury" and demonstrates precisely the capacity in which a government entity *can* recover under RICO. It in no way supports the

conclusion that the Tribes can recover for their voluntary public expenditures.  They cannot.

### 3.      The Tribes Cannot Recover Under RICO For Lost Tax Revenue

Finally, both Tribes assert that they have suffered an injury to their "business or property" based on a purported decline in their "tax revenue" or, more cryptically, their "revenue-generating functions."  Muscogee Opp. 120; Blackfeet Opp. 123.  The Tribes' theory of lost tax revenue is that the Manufacturers' marketing of opioids is "killing citizens within [the Tribes'] jurisdiction, driving down the cost of property, and decreasing business investment" and, as a result, the Tribes are losing tax revenues they would otherwise have been paid by these citizens and (theoretical) investors.  Blackfeet Opp. 123.  In other words, the lost tax revenue flows from, and is a by-product of, a general economic decline.  That theory is irreconcilable with the Supreme Court's holding that "business or property" does not include injuries to a government's "general economy."  *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264-65 (1972). The Tribes have not cited a single case to support their radical approach.

The Tribes rely exclusively on a series of cases in which courts have held that municipalities have suffered injury to "business or property" when they are defrauded out of taxes that they are specifically owed.  *City of N.Y. v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 441 (2d Cir. 2008) (injury to the government "flow[ed] from [a] scheme to defraud the City of use taxes"), *rev'd and remanded sub nom. Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1 (2010); *Ill. Dep't of Revenue v. Phillips*, 771 F.2d 312, 313 (7th Cir. 1985) (scheme involving the "mailing of nine fraudulent tax returns to the Illinois Department of Revenue").  But there is a critical difference between uncollected taxes owed to the government and hypothetical taxes that the government may one day assess under a counterfactual circumstance in which citizens might have generated more economic activity but for the alleged misconduct.  As the Supreme Court has held, a "right to uncollected . . . taxes" constitutes a legal "entitlement to collect money," the

"possession of which is 'something of value' to the [g]overnment." *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005). Such "[v]aluable entitlements . . . are 'property' as that term ordinarily is employed." *Id.* That is not true of hypothetical taxes that a government may (or may not) assess against hypothetical people who may (or may not) incur the taxes, based on hypothetical economic activity they may (or may not) undertake were it not for the allegedly unlawful marketing or distribution of opioids. The Tribes have no present legal "entitlement" to that theoretical (and unascertainable) "tax revenue," and it is not their current "property" under any recognizable definition of the word.

### D.    The Muscogee Nation's Lanham Act Claim Fails

The Muscogee Nation defends its Lanham Act claim by arguing that it suffered commercial harm insofar as the Manufacturers' marketing efforts "cause[s] more people to seek opioids, rather than to seek more traditional care at a hospital [such as those operated by the Nation]." Muscogee Opp. 144-45. But the Nation fails to allege that the Manufacturers' conduct caused the Nation to serve fewer patients or otherwise to lose business or sales. Indeed, any such allegation would violate settled principles of proximate causation even more so than the already-too-attenuated causation assertions that *are* made in the complaint. *See supra* § I.A (discussing proximate causation); *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134-40 (2014) (limiting Lanham Act standing to plaintiffs who allege that commercial harm was proximately caused by defendant's misrepresentations). Nor does the Nation's complaint allege any harm to its commercial reputation. Without any plausible assertion of lost business, sales, or reputation, the Nation fails to state a Lanham Act claim under *Lexmark*.

### E.    The Blackfeet Tribe's Montana Unfair Trade Practices And Consumer Protection Act Claim Fails

The Blackfeet Tribe defends its MCPA claim in three sentences and a footnote.

Blackfeet Opp. 8 & n.3. And the points it offers in that thin response are unpersuasive.

The Blackfeet Tribe does not dispute that it is not a "consumer" under the MCPA and thus cannot sue the Manufacturers in that capacity. *See* Mot. 30-31. Instead, the Tribe argues that it enjoys *parens patriae* authority, and thus can sue the Manufacturers for harms suffered by Tribe members who *do* qualify as MCPA "consumers." That theory is unprecedented; the Tribe cites no Montana decision supporting it. And, as far as the Manufacturers are aware, no court has *ever* held that a tribe has *parens patriae* authority to enforce the MCPA on behalf of tribal members.

More fundamentally, the MCPA itself makes clear that the Tribe's *parens patriae* theory does not hold water. The MCPA expressly authorizes the Montana Department of Justice and district attorneys to bring claims for injunctive relief on behalf of the State of Montana; it makes no mention of any analogous authority for tribes. Mont. Code Ann. §§ 30-14-111(1), 30-14-121. The express inclusion of such authority for the Department and district attorneys without a similar provision for tribes is strong evidence that tribes lack such authority under settled Montana precedent. Mot. 30-31 (citing cases). The Tribe does not even address the Montana case law cited by the Manufacturers; instead, it relies entirely on four cases from outside of Montana that were not brought by tribes and have nothing to do with the MCPA. Blackfeet Opp. 8 n.3.

Moreover, the Tribe fails to explain how it can recover money damages and a host of other remedies under the MCPA (*see* Blackfeet 1AC ¶¶ 1110, 1119) when the State of Montana itself is limited to injunctive relief and civil fines. Mont. Code Ann. §§ 30-14-111(1), 30-14-142(2). The Tribe also ignores the fact that the MCPA allows only "individual" actions (Mont. Code Ann. 30-14-133(1)), not the sort of collective action brought "on behalf of its consumer

citizens" (Blackfeet Opp. 8) it advances here.  The Tribe's MCPA claim should be dismissed.

**F.  The Tribes Fail To Allege Any Statutory Violation Sufficient To Support Their Negligence Per Se Claims**

The Blackfeet Tribe has failed to state a viable negligence per se claim because, under Montana law, (1) the predicate statutes must provide a private right of action and none do here, and (2) violation of a regulation is insufficient.  Mot. 31-33.  Moreover, both Tribes have failed to sufficiently plead negligence per se because the Tribes are not the intended beneficiaries of the statutes on which they rely, and, even if they were, those statutes were not designed to prevent the types of harms the Tribes allege.  *Id.*  In response, the Tribes advance an expansive view of negligence per se doctrine that misstates the governing law.

**1.  The Blackfeet Tribe Has Not Alleged A Cognizable Negligence Per Se Claim**

Under Montana law, only statutes that provide a private right of action can give rise to a negligence per se claim.  *Doyle v. Clark*, 254 P.3d 570, 577 (Mont. 2011) (negligence per se includes "the requirement that the statute allegedly violated allows a private right of action"), *superseded in part by statute on other grounds*, *Peterson-Tuell v. First Student Transp., LLC*, 339 P.3d 16, 22 (Mont. 2014).  The Blackfeet Tribe does not dispute that none of the statutes it relies on creates a private right of action.  Blackfeet Opp. 99 (Tribe "does not contend that the cited enactments and regulations create a private cause of action").  That should end the matter.  *See* Mot. 31-33.[16]

Nevertheless, the Tribe argues that a private right of action is not required.  Blackfeet Opp. 100-02.  As an initial matter, the Tribe confuses what may be relevant to the standard of care for a negligence claim with the separate question of what statutes can be relied on for a

---

[16] The Tribe now concedes that its negligence per se claim is based only on the Controlled Substance Act and Mont. Code Ann. § 37-7-604.  *See* Blackfeet Opp. 103 & n.51.

*negligence per se* claim.  Indeed, most of the cases it cites are simple negligence cases.  *See Eklund*, 151 P.3d at 878; *Jackson v. State*, 956 P.2d 35, 49 (Mont. 1998); *Gibby v. Noranda Minerals Corp.*, 905 P.2d 126, 132 (Mont. 1995) (cases cited in Blackfeet Opp. 100-01).  The Tribe relies on *Wombold v. Associates Financial Services Co. of Montana, Inc.*, 104 P.3d 1080, 1086-87 (Mont. 2004), *overruled in part*, *Essex Ins. Co. v. Moose's Saloon, Inc.* 166 P.3d 451 (Mont. 2007), but that case says nothing about whether Montana law recognizes a negligence per se claim when the statute does not recognize *any* private right of action—express *or* implied.  Even the Tribe's description of the unpublished, non-precedential decision in *Johnson v. Columbia Falls Aluminum Co., LLC*, No. DA 08-0358, 2009 WL 865308 (Mont. Mar. 31, 2009), makes clear that it does not stand for the proposition that "an express contradiction in the statutory language is *required* before a claim based on negligence *per se* will be prohibited."  Blackfeet Opp. 102-03 (emphasis added).  In the end, *Doyle*'s express holding controls: a negligence per se claim cannot be premised on a statute that does not, itself, provide for a private right of action.  Because it is undisputed that none of the statutes at issue here provides for one, the Tribe's negligence per se claim should be dismissed.

But the Tribe also fails to plead other necessary elements of a negligence per se claim— namely that (1) the Tribe is an intended beneficiary of the predicate statutes, and (2) they were designed to prevent the types of harms that the Tribe is alleging.  On the first factor, the most the Tribe can say is that "these laws were intended to protect *inter alia* the health and welfare of the Tribe."  Blackfeet Opp. 103.  But that would render the intended beneficiary limitation meaningless.  And, as a case cited by the Tribe itself makes clear, that the statutes "were intended to protect the people of the state generally and the interests of the state" is insufficient to establish intended beneficiary status.  *See Nehring v. LaCounte*, 712 P.2d 1329, 1333 (Mont.

1986) (cited at Blackfeet Opp. 100).  As for the second factor, the Tribe makes no effort to explain why its injuries are of the sort protected by those statutes.  And they are not.  Mot. 31-33.

Finally, the Tribe claims that it is not relying on "the regulations cited" for its negligence per se claim.  Blackfeet Opp. 104.  That is well-advised because, as the Manufacturers explained (Mot. 33), a negligence per se claim in Montana cannot be premised on violation of a regulation.  In arguing otherwise (Blackfeet Opp. 104), the Tribe cites a Montana case about *simple* negligence.  *See Rookhuizen v. Blain's Mobile Home Court, Inc.*, 767 P.2d 1331, 1333-34 (Mont. 1989) (no duty existed for common law negligence claim).  It has no response to the controlling Montana case cited by the Manufacturers.  *See* Mot. 33 (citing *Harwood v. Glacier Elec. Coop., Inc.*, 949 P.2d 651, 656 (Mont. 1997)).  And the other sources it relies on do not speak to Montana law.  *See, e.g.*, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318-19 (2005).

### 2. The Muscogee Nation Has Not Alleged A Cognizable Negligence Per Se Claim

The Muscogee Nation makes no effort to show that the federal CSA or any of the cited regulations were intended to prevent the injuries it alleges.  *See, e.g.*, Mot. 31-32.  As for the Oklahoma CSA, the Nation states only that the statute "imposes on Defendants requirements to prevent the illegal diversion of opioids."  Muscogee Opp. 96.  But the Nation does not bring a diversion-based negligence per se claim against the Manufacturers.  *Id.* at 5.  That alone is reason enough to dismiss these claims.  In any event, the Nation has also failed to establish that it is a member of the class protected by the statutes or regulations.  Like the Tribe, the Nation argues that the statutes were "enacted for the benefit of the public at large."  Muscogee Opp. 96.  But the Nation makes no argument that the statutes were designed to protect the Nation itself from economic injuries contingent upon harm to opioid users.  *See* Mot. 31-32.

As for the FDCA, the Nation relies on an Oklahoma Supreme Court case holding that a negligence per se claim can be premised on a violation of that statute.  *See* Muscogee Opp. 97 (citing *Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013)).  But that is not the end of the analysis.  The Sixth Circuit has held that analogous state law claims premised on violations of the FDCA are preempted by federal law—a point the Nation does not even address.  *See Darvocet*, 756 F.3d at 936.  Federal law controls whether a state-law claim is preempted.[17]

## III.    THE TRIBES INVOKE COMMON LAW CAUSES OF ACTION THAT DO NOT COVER THE ALLEGED MISCONDUCT

### A.    The Tribes' Public Nuisance Claims Fail

#### 1.    Neither Oklahoma Nor Montana Statutory Law Recognizes The Tribes' Novel Theory Of Public Nuisance

The Tribes' public nuisance claims rest on a novel and expansive theory of public nuisance that threatens to "devour in one gulp the entire law of tort."  *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001).    The Tribes defend that theory by relying on (1) the literal (and essentially boundless) text of the relevant state statutes, and (2) a handful of trial court decisions from both states and other jurisdictions.  Muscogee Opp. 75-82; Blackfeet Opp. 81-86.  Neither aspect of their response has merit.

The Tribes first invoke the literal text of the Oklahoma and Montana public nuisance statutes to argue that essentially *any* type of harm inflicted on any "considerable number of persons" constitutes a public nuisance.  Muscogee Opp. 75-76; Blackfeet Opp. 76-77.  But they fail to acknowledge that in the roughly 125 years that those statutes have been in effect (*see* Revised Laws of Okla. §§ 4250, 4251 (1910); Mont. Civ. Code §§ 4550, 4551 (1895)), no Oklahoma or Montana appellate court has ever interpreted them to impose liability against

---

[17]  For the reasons set forth above, a negligence per se claim premised on a violation of the CSA is not cognizable under Oklahoma law.  But even if it were cognizable, such a claim would be preempted for similar reasons.  *See* Mot. 32.

manufacturers for marketing and selling allegedly harmful products. Instead, as the Manufacturers have established, those statutes have been interpreted and applied almost invariably to protect against interference with the use and enjoyment of real property. Mot. 35-36 (citing cases). That interpretation of Oklahoma and Montana public nuisance law is consistent with appellate decisions from many other jurisdictions, which have likewise recognized that public nuisance and products liability are distinct torts that must be treated differently from one another. *Id.* at 36-38 (citing cases).

The Tribes' interpretation of the Oklahoma and Montana statutes would significantly expand public nuisance law in both States. This Court's role is to predict how the State's highest courts would interpret their respective public nuisance statutes. *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015). And in doing so, the Court "should be extremely cautious about adopting substantive innovation in state law." *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 608 (6th Cir. 2012). Here, the Tribes cannot point to any "authoritative signal from the state's legislature or judiciary" that the highest court in either State would recognize the Tribes' public nuisance claims. *Hargis*, 785 F.3d at 195.

If anything, the case law suggests the opposite. For example, the Montana Supreme Court has refused to apply the literal language of the public nuisance statute to encompass the harm inflicted by a tree growing from one property owner's land onto that of another. *Martin v. Artis*, 290 P.3d 687, 690 (Mont. 2012). Moreover, courts around the country have recognized that the longstanding *absence* of precedential authority applying a state's public nuisance statute to a particular type of conduct is reason to believe that the statute does not apply to such conduct—even when the text sweeps broadly.[18] And although the Tribes note the absence of any

---

[18] *See, e.g.*, *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir.

Oklahoma or Montana Supreme Court decision *rejecting* product-based nuisance claims or holding that a nuisance claim must relate to real property (Muscogee Opp. 75, 80; Blackfeet Opp. 81, 84-86), their reasoning has it backwards:  The Tribes are the ones seeking to invoke a novel theory of public nuisance, and *they* must show that the States' highest courts would embrace that theory.

Without any appellate authority, the Tribes fall back on three decisions by Oklahoma and Montana *trial* courts.  Muscogee Opp. 76-77; Blackfeet Opp. 85.  But those decisions say nothing about the issues now in dispute and are not binding on this Court in any event.  Most importantly, none of the decisions contains any analysis—let alone any rejection—of the Manufacturers' core point that public nuisance and products liability are distinct branches of law that must not be conflated.  The Oklahoma trial court's order in *State of Oklahoma ex rel. Hunter v. Purdue Pharma L.P.*, No. CJ-2017-816 (Okla. Dist. Ct. Dec. 6, 2017) (Muscogee Opp., Ex. C) does not specifically mention the public nuisance claim, declaring only "that the State's Petition sufficiently states its claims" without further discussion.  The Oklahoma trial court's decision in *State of Oklahoma v. R.J. Reynolds*, No. CJ 96-1499 (Okla. Dist. Ct. Aug. 28, 1998) (Muscogee Opp., Ex. L) does not appear to address any public nuisance claim *at all*.  And the Montana trial court's decision in *State ex rel. Mazurek v. Philip Morris, Inc.*, No. CDV-97-306, 1998 Mont. Dist. LEXIS 732 (1st Judicial Dist. Ct. Mont., Lewis & Clark Cty. Sept. 22, 1998), focuses exclusively on defendants' argument that authorized activities are immune from nuisance

---

1993) (rejecting application of North Dakota public nuisance statute to manufacturer of asbestos-containing products because, "[w]hen one considers the fact that the statute is over a hundred years old, the absence of analogous cases supports an inference that the statute was neither intended nor has it been understood to extend to cases such as the present case"); *City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 291-92 (S.D.N.Y. 2016) (rejecting application of Iowa public nuisance statute to a products-based claim because the plaintiff could not provide any authoritative Iowa cases showing that the statute had been applied in such a way).

liability under Mont. Code Ann. § 27-30-101(2).  *Id.* at \*30-\*31.  None of these decisions addresses the Manufacturers' argument in this case.

In any event, the Supreme Court has made clear that federal courts are not bound by interpretations of state law set forth by state trial courts.  *See King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 160-62 (1948); *see also, e.g.*, *O'Connor v. Oakhurt Dairy*, 851 F.3d 69, 72 (1st Cir. 2017).  And even less probative are the outlier decisions the Tribes cite from other jurisdictions.  *See generally Combs v. Int'l Ins. Co.*, 354 F.3d 568, 596 (6th Cir. 2004); Mot. 37-38 & n.11 (citing cases, commentary, and the Third Restatement of Torts criticizing many of those decisions).

### 2.    The Blackfeet Tribe's Federal And State Common Law Public Nuisance Claims Should Also Be Dismissed

The Blackfeet Tribe also alleges a federal common law public nuisance claim (Count III) and a separate Montana common law public nuisance claim (Count IV).  Neither cause of action exists.  Mot. 38-39.

As to the federal claim, the Blackfeet Tribe does not deny that "federal common law constitutes an unusual exercise of lawmaking which should be indulged only in *a few restricted instances*" and only where "there is a *significant conflict* between some federal policy or interest and the use of state law."  *FDIC v. AmFin Fin. Corp.*, 757 F.3d 530, 535 (6th Cir. 2014) (emphasis added).  Instead, it asserts that a federal common law cause of action is warranted because of the "transboundary" harm generated by the manufacture and sale of opioids. Blackfeet Opp. 71-72.  But the mere fact that a product is marketed nationwide can hardly be a sufficient basis for imposing a "single federal standard" and displacing state law, as the Tribe apparently envisions.  Blackfeet Opp. 71 (arguing that a federal standard should apply "rather than rely on a patchwork of separate state nuisance standards").  The Tribe has failed to identify

any "significant conflict" between any "federal policy or interest and the use of state law" that would warrant recognition of a federal cause of action here. *AmFin Fin. Corp.*, 757 F.3d at 535.[19]

Nor is such a federal cause of action justified by the fact that the plaintiffs here are Indian tribes. *See* Blackfeet Opp. 71. The Supreme Court and federal appellate courts have repeatedly rejected similar attempts to invoke federal common law jurisdiction simply because a party to the case is an Indian tribe.[20] *See Inyo Cty. v. Paiute-Shoshone Indians*, 538 U.S. 701, 712 (2003); *Miccosukee Tribe of Indians v. Kraus-Anderson Constr. Co.*, 607 F.3d 1268, 1274 (11th Cir. 2010); *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 672 (8th Cir. 1986). Indeed, the mere fact that Indian tribes are sovereign entities does not create the "significant conflict" with state law needed to require application of federal common law. Neither of the Tribe's cases hold to the contrary. *See* Blackfeet Opp. 71 (citing *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (2001) (no reference to Indian tribes)); *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505 (1991) (no reference to federal common law)).

---

[19] The Supreme Court has only recognized a federal common law public nuisance claim in "suits brought by one State to abate pollution emanating from another State," and it has been careful to limit even that application. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 422 (2011) (noting that the Court has not decided who may bring such a claim and whether they can do so for "any and all manner of pollution"). Both cases the Tribe invokes likewise involved water pollution or its functional equivalent. *See* Blackfeet Opp. 70 (citing *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 771 (7th Cir. 2011) (introduction of Asian Carp into the Great Lakes); *Illinois v. City of Milwaukee*, 599 F.2d 151 (7th Cir. 1979) (water pollution), *vacated*, 451 U.S. 304 (1981)).

[20] By contrast, federal law governs recovery of federal funding of tribal healthcare because that funding is provided in furtherance of the federal government's trust responsibilities to Indian tribes. *See supra* § II.A. Thus, to the extent the Tribes seek recovery of healthcare costs provided either directly or pursuant to ISDEAA compacts as a remedy for their public nuisance claims, that recovery is governed by 25 U.S.C. § 1621e—and is foreclosed for the reasons previously explained.

As to the Montana common law public nuisance claim, the Tribe provides no authority for the proposition that the common law provides a cause of action independent of Montana's longstanding nuisance statutes.  And the Manufacturers are aware of none.  That said, it is certainly true that Montana's nuisance statute adopts and is interpreted in accordance with common law principles.  Indeed, the Tribe's own complaint cites cases explaining the state "common law" of "public nuisance" with reference to the statutory definition and scheme of nuisance under Mont. Code Ann. § 27-30-101.  *See* Blackfeet 1AC ¶¶ 920-21.  The Tribe is fully entitled to invoke common law principles in connection with its statutory public nuisance claim (Count V), but its freestanding common law claim (Count IV) must be dismissed.

### B.  The Unjust Enrichment Claims Fail

Relying almost exclusively on non-binding trial court authority from other jurisdictions, the Tribes argue that the Manufacturers were unjustly enriched because the Tribes provided public services to remedy the negative externalities of their pharmaceutical business.  Muscogee Opp. 99-103; Blackfeet Opp. 109-12.  But the Tribes' negative-externality theory is foreclosed by Montana and Oklahoma law.

The Montana Supreme Court has made clear that "[o]ne cannot be unjustly enriched by failing to pay a debt one does not owe."  *Mont. Petroleum Tank Release Comp. Bd. v. Capitol Indem. Co.*, 137 P.3d 522, 529 (Mont. 2006); *see* Mot. 40.  But the Manufacturers never incurred any "debt" to pay the Blackfeet Tribe for any alleged externalities flowing from its sale of opioids.  The Tribe has independently chosen to provide certain public services to its members, and its decision to make such payments does not impose a payment obligation on the Manufacturers.  For similar reasons, the Tribe's provision of such services provides benefits to its members, but it does *not* provide benefits to the Manufacturers.  The Tribe describes *Montana Petroleum* as a "convoluted subrogation case," but fails to explain how that distinction

undermines the court's clear (and controlling) explanation of Montana law on unjust enrichment. Blackfeet Opp. 110.  Nor does the Tribe try to explain how its choice to provide certain public services satisfies *Montana Petroleum* by creating a "debt . . . owe[d]" by the Manufacturers. *Mont. Petroleum*, 137 P.3d at 529.

Similarly, the Oklahoma Supreme Court has explained that "[o]ne is not unjustly enriched . . . by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution." *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 828 (Okla. 2016).  Even if the Muscogee Nation's decision to provide public services to its citizens somehow bestowed a benefit on the Manufacturers, it was bestowed without any voluntary action by the Manufacturers and "without any obligation on [their] part to make restitution." *Id.*  The Nation's independent policy decision to address the alleged externalities of opioid sales does not automatically create a legal requirement that the Manufacturers reimburse the Nation for the associated costs.  The Nation completely ignores *American Biomedical*.

Even beyond Montana and Oklahoma, the clear weight of authority is heavily against the Tribes.  Indeed, the Tribes fail to rebut *any* of the decisions that the Manufacturers cited from four federal courts of appeals rejecting similar unjust enrichment theories where plaintiffs sought reimbursement for medical costs or municipal services benefiting third parties allegedly incurred as a consequence of practices by products-makers or banks.  *See* Mot. 40-42.  And although the Blackfeet Tribe tries to distinguish those cases on their facts, even a cursory reading of the decisions makes clear they all reject the notion that a defendant is unjustly enriched simply because a government entity provides public services to address negative externalities created by that party's conduct.

36

To defend their negative-externality theory, the Tribes invoke the Oklahoma trial court's decision to allow an unjust enrichment claim to proceed in *State of Oklahoma ex rel. Hunter v. Purdue Pharma L.P.* (Muscogee Opp., Ex. C), and a handful of state trial court decisions from other jurisdictions.  Muscogee Opp. 100 & n.270, 102-03; Blackfeet Opp. 109-10.  But the order in *State of Oklahoma ex rel. Hunter* does not specifically mention the unjust enrichment claim at all, declaring only "that the State's Petition sufficiently states its claims" without any further analysis.  Muscogee Opp., Ex. C.  That order is unpersuasive and provides no basis for concluding that the Oklahoma Supreme Court would embrace the negative-externality theory.

None of the other trial court cases cited by the Tribes rest on Oklahoma or Montana law.[21]  And the Tribes fail to mention that many of those exact same cases were expressly addressed—and rejected—by the Eleventh Circuit in *City of Miami v. Bank of America Corp.*, 800 F.3d 1262, 1288 (2015), *rev'd on other grounds*, 137 S. Ct. 1296 (2017).  There, the court declined to "invent a novel basis for unjust enrichment under Florida law."  *Id.* at 1289.  This

---

[21]  Most of those decisions contain little reasoning and are unpersuasive on their own terms.  *See, e.g.*, *City of Everett v. Purdue Pharma L.P.*, No. C17-209RSM, 2017 WL 4236062, at *18 (W.D. Wash. Sept. 25, 2017) (one sentence of conclusory analysis); *White*, 97 F. Supp. 2d at 829 (no application of Ohio case law to facts); *State v. Purdue Pharma L.P.*, No. 3AN-17-09966CI (Alaska Super. Ct. July 12, 2018) (Muscogee Opp., Ex. F at 14) (one sentence of conclusory analysis); *In re Opioid Litig.*, No. 400000/2017, 2018 WL 3115102, at *24-*25 (N.Y. Sup. Ct. June 18, 2018) (permitting unjust enrichment claim because, in part, plaintiffs themselves paid for opioid medications); *In re Opioid Litig.*, No. 400000/2017 (N.Y. Sup. Ct. July 17, 2018) (Muscogee Opp., Ex. G at 17) (same); *State ex rel. Morrisey v. Cardinal Health, Inc.*, No. 12-C-140 (W. Va. Cir. Ct., Boone Cty. Apr. 17, 2015) (Muscogee Opp., Ex. J) (no discussion of unjust enrichment); *State ex rel. Morrisey v. Cardinal Health, Inc.*, No. 12-C-140 (W. Va. Cir. Ct., Boone Cty. Feb. 19, 2016) (Muscogee Opp., Ex. K at 25-26) (permitting claim on "constructive trust" theory not pleaded by the Tribes here); *City of Los Angeles v. JPMorgan Chase & Co.*, No. 2:14-cv-04168-ODW (RZx), 2014 WL 6453808, at *10 (C.D. Cal. Nov. 14, 2014) (relying on three out-of-jurisdiction lower court decisions to recognize externalities theory); *City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *18 (Mass. Super. Ct. July 13, 2000) (two sentences of conclusory analysis); *City of N.Y. v. Lead Indus. Ass'n*, 190 A.D.2d 173, 177 (N.Y. App. Div. 1993) (allowing restitution claim for "reasonable costs of [lead] abatement" to survive motion to dismiss because recovery for costs of abatement had been recognized previously in the state).

Court should likewise decline to "invent a novel basis for unjust enrichment" under Montana and Oklahoma law.

## IV.     THE TRIBES' STATE CLAIMS ARE PREEMPTED

The Tribes effectively *concede* that the Manufacturers *cannot* be liable for simply representing that opioids can be safe and effective for the treatment of chronic, non-cancer pain. Blackfeet Opp. 17 ("Plaintiff's claims do not turn on the contention that these Defendants should not have marketed their opioids products for non-cancer chronic pain."); Muscogee Opp. 19 (claiming that the Nation seeks only to hold Manufacturers liable for "misrepresenting the benefits and risks of opioid use").  Accordingly, the Court should dismiss the Tribes' claims on preemption grounds to the extent they seek to hold the Manufacturers liable for marketing opioid medications as safe and effective for the treatment of chronic, non-cancer pain.  That would clarify the scope of this dispute to the benefit of all parties.[22]

The Tribes' responses to the Manufacturers' other preemption arguments are unpersuasive.  *First*, the Tribes attempt to distinguish between "label changes" (which would be preempted) and "misrepresentations" in the Manufacturers' "marketing" materials (which, they argue, are not).  *See, e.g.,* Blackfeet Opp. 17; Muscogee Opp. 18-19.  But that is a false dichotomy.[23]  Federal law defines *all* branded advertising as "labeling," including all "brochures,

---

[22] Such clarification is important because, despite the Tribes' disclaimers, they continue to make statements that *do* suggest the Manufacturers should be liable for marketing opioid medications for their FDA-approved uses—namely, the treatment of long-term chronic pain. *See, e.g.*, Muscogee Opp. 3 (referring to medical consensus that opioids are "unsafe for the treatment of chronic pain"); Blackfeet Opp. 25 ("[O]pioids are only rarely the right choice for chronic pain").

[23] Relatedly, the Muscogee Nation tries to distinguish between a "failure-to-warn" claim (which could be preempted) and a "misrepresentation" claim (which, they suggest, cannot). Muscogee Opp. 18-19.  For reasons already explained, that asserted distinction does not hold up. *See* Mot. 45.  The cases cited by the Nation (Muscogee Opp. 19 n.61) are not the contrary.  In *Cerveny v. Aventis, Inc.*, the court remanded to the district court to analyze in the first instance

booklets, mailings, catalogues, films, sound recordings, and literature" advertising a product. *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 394 (6th Cir. 2013) (citing 21 C.F.R. § 202.1(l)(2)). All of these forms of advertising must be "consistent with" the specific pre-approved label submitted to the FDA. *See* 21 C.F.R. §§ 201.100(d)(1), 314.70(c), (d). Any state law claim that seeks to impose liability on the Manufacturers for failing to include statements on *any* of their advertising regarding the "correct" dosage or duration of opioid treatment—or otherwise make statements inconsistent with an opioid medication's FDA-approved uses—is preempted.

*Second*, the Tribes assert that the FDA's rejection of the PROP petition does not constitute "clear evidence" that the FDA would have rejected an *identical change* by the Manufacturers under an *identical standard*. That makes no sense. Indeed, the Seventh and Tenth Circuits have both held that rejection of a citizen petition *alone* can constitute "clear evidence" that the FDA would have rejected an identical manufacturer-initiated change. *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1103 (10th Cir. 2017) (rejecting argument that "denial of a citizen petition, by itself, cannot constitute clear evidence"); *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 873 (7th Cir. 2010) ("The 'clear evidence' in this case is the agency's refusal to require a [labeling change] when it had been asked to do so in the submission to which the agency was responding."). The Tribes seek to distinguish these cases because they were decided at summary judgment. But neither case relied on any evidence adduced in discovery. Instead, they relied on a document this Court can indisputably take judicial notice of right now:

---

whether the plaintiffs' other claims were preempted but expressly stated that it was not "foreclos[ing] the possibility that these claims might be preempted." 855 F.3d, 1091, 1109 (10th Cir. 2017). And *McDaniel v. Upsher-Smith Pharm., Inc.*, 229 F. Supp. 3d 707, 712-13 (W.D. Tenn. 2017), *aff'd*, 893 F.3d 941 (6th Cir. 2018), does not have anything to do with *Wyeth* preemption.

the FDA's denial of a citizen petition.

By contrast, the cases cited by the Blackfeet Tribe are readily distinguishable.[24]  In two of the cases, the FDA's rejection of the citizen petition occurred years (and, in one case, more than a decade) before the alleged injury.  *See Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 395 (7th Cir. 2010) ("Even the latest of these findings was made several years before Tricia's suicide."); *Dorsett v. Sandoz, Inc.*, 699 F. Supp. 2d 1142, 1157 (C.D. Cal. 2010) ("FDA's rejections of citizen petitions in the 1990s do not constitute clear evidence [as to what FDA would do] in July 2004").  In a third case, the citizen petition involved warnings that were completely different than those the plaintiffs based their claims on.  *Hunt v. McNeil Consumer Healthcare*, 6 F. Supp. 3d 694, 701 (E.D. La. 2014) ("The FDA did not clearly reject *any* of the[] warnings [at issue here].").  And in the final case, the FDA's response itself suggested that it may not have rejected a later petition by the manufacturer.  *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 WL 1836435, at *10 (N.D. Ill. May 8, 2017).  None of these cases remotely stands for the proposition the Tribes' assert: that *Wyeth*'s "clear evidence" standard can *never* be satisfied at the motion to dismiss stage.

Notably, the Tribes do not engage with the substance of FDA's response.  While the Tribes allude to the need for an evidentiary "record" to determine what the FDA might have

---

[24] The Muscogee Nation, for its part, does not cite any cases involving the FDA's consideration of a citizen petition.  Instead, it cites *In re Fosamax (Alendronate Sodium) Products Liability Litigation*, 852 F.3d 268, 286 (3d Cir. 2017), for the proposition that the "clear evidence" standard is "demanding," and asserts that it is thus "quixotic" for the Manufacturers to even attempt to meet this standard on a motion to dismiss.  Muscogee Opp. 20.  Leaving aside the fact that the Supreme Court has granted certiorari in *Fosamax*, the mere fact that a standard is "demanding" says nothing about the *type* of evidence that may be used to meet  it.  No rule of law suggests that a "demanding" standard cannot be met through a judicially noticeable and publicly available document—especially when, as here, that document is direct evidence of what the FDA would do.

done (Blackfeet Opp. 20; Muscogee Opp. 20-21), they do not identify a single piece of evidence that might bear on this question.  Indeed, the only evidence either Tribe mentions is "the specific phrasing of the citizens' petition and the specific nature and basis of FDA's rejection of the petition" (Blackfeet Opp. 20)—both of which are already before this Court.[25]

In the end, this Court should reject the Tribes' attempt to delay the preemption inquiry.  The Court should hold that the Tribes' claims are generally preempted and that, at a minimum, they are preempted to the extent that they seek to impose liability for the Manufacturers' marketing of opioids (1) for the treatment of chronic pain, and (2) without limitations on dosages or duration of treatment.

## V.    THE TRIBES' TORT CLAIMS FLOUT FUNDAMENTAL PROCEDURAL REQUIREMENTS

### A.    The Tribes' Fraud Allegations Fail To Comply With Rule 9(b)'s Particularity Requirements

Neither Tribe disputes that the complaints fail to identify a single doctor who was exposed to (let alone relied on) a single misstatement to prescribe a single opioid.  Instead, the Tribes quibble about which claims are subject to Rule 9(b) and argue that they have satisfied the heightened pleading standard because (1) they have pleaded enough to provide "fair notice"; (2) they have pleaded the misstatements themselves with enough detail; (3) it would be "impossible"

---

[25] The Muscogee Nation points to other opioid cases in which preemption arguments have been rejected.  Muscogee Opp. 21.  But those orders were either unreasoned, did not involve any assessment of the PROP petition, and/or addressed a preemption argument broader than the one the Manufacturers are making here.  And the Manufacturers' arguments based on the FDA's rejection of the PROP petition were also not presented in the *Summit County* case, and thus are not addressed in the *Summit County* R&R.  To date, no court has ruled on whether a state law claim that seeks to hold the Manufacturers liable for failing to limit the dose and duration of opioid treatment is preempted.  In any event, the Tribes expressly concede that they do not seek to hold the Manufacturers liable for representing that opioids can be safe and effective for the long-term treatment of chronic pain.  The Manufacturers' request that the Court enter an order to that effect does not depend on any arguments that may or may not have been considered in prior cases.

to identify "every" doctor who heard the misrepresentations and, in any event, that is not required because "*all* doctors" were misled; (4) prohibitions on "group pleading" apply only to small securities cases; and (5) other courts in the opioid cases have refused to dismiss claims for similar pleading failures.  *See* Muscogee Opp. 53-60; Blackfeet Opp. 51-64.  None of these arguments withstands scrutiny.

As an initial matter, there is no dispute that the RICO, common law fraud, and Montana Consumer Protection Act claims must be pleaded with particularly under Rule 9(b).  There is also no dispute that the other claims must comply with Rule 9(b) to the extent they sound in fraud.  Muscogee Opp. 53-54; Blackfeet Opp. 53.[26]  For the reasons set forth in the Motion, the other claims sound at least in part in fraud.  Mot. 55.  If the Court concludes (as it should) that the complaints fail to satisfy the Rule 9(b) standard, the Tribes should be required to replead these remaining claims to omit any allegations of fraud.  *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("A district court need not rewrite such a deficient complaint.  It may dismiss, without prejudice, placing that responsibility upon counsel."); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992) (requiring repleading where "the actionable allegations are intermingled with the inactionable").

When it comes to actually applying Rule 9(b), the Tribes' key refrain is that Rule 9(b) is intended simply to give notice to a defendant so that it can prepare a responsive pleading.

---

[26] The Muscogee Nation argues that its Lanham Act claim is not subject to Rule 9(b), and cites *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 792 (6th Cir. 2015), and *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 687 F. App'x 429, 433-34 (6th Cir. 2017), in support. Muscogee Opp. 140.  But neither case addresses whether Rule 9(b) applies to all or any Lanham Act claims.  As with the other claims, the test is ultimately whether the allegations sound in fraud.  Some Lanham Act claims—such as trademark infringement—generally do not.  *See, e.g.*, *Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, No. 16-CV-2594, 2018 WL 1524499, at *4 (S.D. Cal. Mar. 28, 2018).  But the Nation's claim—a false advertising claim grounded in allegations of fraud—plainly does.  *Id.* (noting "an abundance of relevant and persuasive case law" supporting this view).

Muscogee Opp. 53-54; Blackfeet Opp. 51-52.  But fair notice is only one of Rule 9(b)'s purposes.  Its broader aim is "to prevent . . . casual allegations of fraud."  *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 882 (6th Cir. 2017).  Rule 9(b) is intended to "prevent[] prospective plaintiffs from engaging in fishing expeditions to uncover moral wrongs, and it protects defendants' reputations against damage stemming from accusations of immoral conduct."  *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 n.11 (6th Cir. 2007); *see also SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014) (same).  For this reason too, the Court must enforce Rule 9(b)'s "demand[]" for "specifics," not just "inferences and implications."  *Walgreen Co.*, 846 F.3d at 881.  That is precisely where the Tribes' complaints fall short.

### 1.     The Tribes' Fraudulent Marketing Allegations Fail To Comply With Rule 9(b)

The Tribes claim that their allegations concerning the Manufacturers' supposed campaign of fraudulent marketing satisfy Rule 9(b).  But the Tribes make several important legal errors.

To start, the Tribes believe that they need only identify particular misrepresentations that the Manufacturers allegedly *made*, without any details about who actually *heard* those misrepresentations.  Muscogee Opp. 56-57; Blackfeet Opp. 56.  That is wrong.  Rule 9(b) requires a plaintiff to identify not just the *content* of the alleged misrepresentation, but also "the identities of the parties to the misrepresentation."  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (holding fraud allegations insufficient for failing to identify who received misrepresentations).  Thus, in *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, the Sixth Circuit held that even though the plaintiff adequately pleaded the existence of false statements, it failed to plead that those statements were received by anyone who was induced to act as a result. 532 F.3d 496, 505-06 (6th Cir. 2008).  Although both Tribes cite *SNAPP* (Muscogee Opp. 53, 58

n.154; Blackfeet Opp. 52), they ignore its teaching: that Rule 9(b) requires a plaintiff to plead specifics about who *heard* misrepresentations, not just who *made* them.  As the Manufacturers explained, this means that the Tribes were required by Rule 9(b) to identify examples of doctors who were exposed to the Manufacturers' alleged misrepresentations and prescribed opioids as a result.  Mot. 51-54.

Contrary to the Tribes' assertions, the Manufacturers never argued that the Tribes needed to "identify each and every doctor."  Muscogee Opp. 57; *see* Blackfeet Opp. 56.  The Manufacturers said only that the Tribes must at least plead "representative samples."  Mot. 52.  And that requirement comes straight from governing precedent: "If the complaint alleges a complex and far-reaching fraudulent scheme, then that scheme must be pleaded with particularity *and the complaint must also provide examples of specific fraudulent conduct that are representative samples of the scheme*."  *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 830 (6th Cir. 2018) (emphasis added) (quoted at Mot. 52).  The Muscogee Nation ignores *Prather*.  The Blackfeet Tribe at least acknowledges *Prather*, but claims that *Prather* is "especially inapplicable here . . . because it recognizes the applicable pleading standard here."  Blackfeet Opp. 57 n.28.  The Manufacturers fully agree with the second half of that non-sequitur.  It is that applicable standard—under which the Tribes must plead representative examples of doctors who have heard and been influenced by the alleged misrepresentations—that the Tribes have failed to meet.[27]

---

[27]  The various out-of-circuit district court cases the Blackfeet Tribe cites (Blackfeet Opp. 56) are irrelevant in light of controlling Sixth Circuit precedent like *Prather*.  And *United States ex rel. Chorches for Bankruptcy Estate of Fabula v. American Medical Response, Inc.*, 865 F.3d 71 (2d Cir. 2017) (cited at Blackfeet Opp. 56), is perfectly consistent with the Manufacturers' position: The plaintiff there *did* identify specific examples of fraudulent conduct that were representative of the overall scheme alleged.  *Id.* at 76-77, 83-84.  Finally, *In re Neurontin Marketing & Sales Practices Litigation*, 712 F.3d 21 (1st Cir. 2013), says nothing about pleading

The Blackfeet Tribe asserts that it need not identify examples of particular doctors who were misled because "*all* doctors" and, indeed, the "*entire* medical community" were deceived and "no prescription was unaffected by the [Manufacturers'] falsehoods."  Blackfeet Opp. 58 (second emphasis added).  That is implausible on its face and ignores doctors' legal obligation to be aware of the risks of the medicines they prescribe.  *See Sidney Hillman*, 873 F.3d at 577 ("[S]ome physicians doubtless were proof against the campaign of disinformation."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (courts should draw on "judicial experience and common sense" in determining whether a claim is plausible).  And it is certainly no excuse for not complying with Rule 9(b).  If "all doctors" were deceived, then it should have been easy for the Tribes to identify examples of doctors whom the Manufacturers supposedly misled.  That they have not only casts further doubt on their generalized assertions and underlines exactly why Rule 9(b)'s particularity requirement exists and must be enforced.[28]

Moreover, the Tribes cannot circumvent the pleading requirements by leveling allegations against the various defendants as if they were an undifferentiated group.  Mot. 54-55.  The Tribes claim that concerns about "group pleading" are misplaced because this is not a securities case (Muscogee Opp. 59) and does not involve "a relatively small number of defendants who are charged with making a relatively small number of misrepresentations" (*id.*; Blackfeet Opp. 64).  But Rule 9(b), including its prohibition on group pleading, is not limited to the securities context.  And concerns about group pleading do not dissipate as the number of

---

requirements and never once mentions 9(b).  And it conflicts with decisions from multiple circuits.  *See Sidney Hillman*, 873 F.3d at 578.

[28] The Muscogee Nation further argues (Muscogee Opp. 58) that it need not provide examples of doctors who were influenced by the alleged misrepresentations because Rule 9(b) permits "conditions of a person's mind [to] be alleged generally."  Not so.  The Tribes are free to allege the doctors' states of mind generally—but not before alleging their identities in the first place.

defendants and alleged misrepresentations go up—they *increase*. The Tribes' suggestion that the larger the alleged scheme, the less detail they must provide about who exactly did what is both wrong and emblematic of the problems with the claims at issue here. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003) (plaintiff cannot "avoid the specificity requirements of Rule 9(b) by relying upon the complexity of the edifice which he created").[29]

Finally, the Muscogee Nation falls back on the argument that other courts addressing motions to dismiss in the opioid cases "have found that similarly situated plaintiffs satisfied the particularity requirement when reviewing similar allegations." Muscogee Opp. 55-56 & n.142. All but one are state court decisions which provide little or no reasoning on this issue and do not respond to the arguments the Manufacturers have made here. And the sole federal decision the Nation cites (Muscogee Opp. 56 n.142)—*City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058 (N.D. Ill. 2016)—supports the Manufacturers, not the Tribes. The court there found Rule 9(b) satisfied because, among other specifics, "the City has identified to which Chicago-area prescribers defendants' representatives made alleged misstatements." 211 F. Supp. 3d at 1071. That is, the court there found that the City of Chicago did exactly what the Tribes have *not* done here: allege who was on the receiving end of the supposed misrepresentations.[30]

### 2. The Tribes' Supply Chain Fraud Allegations Fail To Comply With Rule 9(b)

The Tribes have also failed allege with the requisite particularity instances of fraud underlying the supposed RICO "Supply Chain Enterprise." Mot. 55-57. The Tribes' primary

---

[29] The Blackfeet Tribe says that *Yuhasz* is distinguishable because the Manufacturers are to blame for the complexity of the schemes alleged. Blackfeet Opp. 57 n.28. But that of course is exactly what the plaintiff in *Yuhasz* said as well. *See* 341 F.3d at 564.

[30] The Manufacturers disagree with the discussion of Rule 9(b) in the *Summit County* R&R for the reasons explained above and in their Motion. In particular, the R&R does not address key Sixth Circuit precedents (such as *SNAPP*, *Prather*, and *Yuhasz*) that make clear plaintiffs must plead specific examples of who heard the alleged misrepresentations.

response is to stress that this was a scheme of fraud-by-*omission*.  Muscogee Opp. 57 (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009)); Blackfeet Opp. 60-62 (also citing *Whirlpool*).  But the only thing the Tribes allege the Manufacturers fraudulently "omitted" were reports of suspicious orders.  Even if the Tribes did not have to identify the exact time and place of the omitted reports, they must at least provide some specific examples of suspicious orders that are "representative samples of the scheme." *Prather*, 892 F.3d at 830.  Despite the length of their complaints, the Tribes never actually do that—they never identify concrete examples of orders that particular Manufacturers knew to be suspicious and yet did not report.  The contention that the Manufacturers intentionally ignored possible violations of controlled substance laws should only be credited as plausible if supported by specific facts.  *Bledsoe*, 501 F.3d at 503-04.  The Tribes have not met that standard.

### B.     The Vast Majority Of The Tribes' Claims Are Time-Barred

The vast majority of the Tribes' claims are untimely on their face and should be dismissed.  Mot. 58-66.  The Tribes do not dispute that their claims are governed by two- to four-year statutes of limitations.  Although complaining that the Manufacturers' limitations defense is premature, the Tribes do not seriously dispute that this Court may grant a motion to dismiss on statute of limitations grounds.  Instead, the Tribes argue that (1) they are not subject to any statute of limitations at all; (2) the complaints do not themselves plead stale claims; and (3) there are exceptions to the statutes of limitations that save their claims.  Each argument fails.  At the very least, though, this Court should make clear that the Tribes cannot recover for any alleged injury incurred more than two to four years before these suits were filed.

### 1. The Statutes Of Limitations Apply To The Tribes' Claims

The Tribes claim that the statutes of limitations do not apply to them based on the doctrine of *nullum tempus occurit regi*. Muscogee Opp. 61-62; Blackfeet Opp. 29-30. That is not the law.[31]

Montana does not recognize the *nullum tempus occurit regi* doctrine at all. Indeed, the Montana Legislature has made clear that the statutes of limitations "apply to actions brought in the name of the state or for the benefit of the state in the same manner as to actions by private parties." Mont. Code Ann. § 27-2-103.[32] The only Montana case that has even discussed the doctrine specifically declined to address or adopt it. *State v. Byrne*, 350 P.2d 380, 382 (Mont. 1960). And Montana courts have applied statutes of limitations to preclude claims brought by a sovereign. *See, e.g.*, *Caterpillar Tractor Co. v. Dep't of Revenue*, 633 P.2d 618, 622 (Mont. 1981) (applying statute of limitations to Montana Department of Revenue because "the statutes of limitations are applicable to the State of Montana"); *Tin Cup County Water and/or Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 68 (Mont. 2008) (applying statute of limitations to bar county water and sewer district's claims). That should be the end of the matter.

Unlike in Montana, the *nullum tempus* doctrine does exist in Oklahoma. But no Oklahoma court has ever applied the doctrine to an Indian tribe. Nor have the courts of any other state. The Nation cites one case where a tribal court has determined that the doctrine *could* apply to a tribe but, even there, the court did not apply the doctrine because factual questions

---

[31] The Tribes make this argument under Montana and Oklahoma law, respectively. They do not argue that the *nullum tempus occurit regi* doctrine applies to the federal claims (RICO and Lanham Act).

[32] The out-of-state cases cited by the Tribes only confirm the basic proposition that statutes of limitations apply to the sovereign when the legislature so provides. Blackfeet Opp. 29-30 (citing *Pequot Pharm. Network v. Conn. Hospice, Inc.*, No. CV-GC-2015-104, 2015 WL 9601099, at *6-*7 (Mash. Pequot Tribal Ct. Dec. 10, 2015); *State ex rel. Condon v. City of Columbia*, 528 S.E.2d 408, 412 (2000)).

remained as to its applicability.  *Pequot Pharm. Network, Inc.*, 2015 WL 9601099, at *10 (defendant could seek to assert the statute of limitations later in the case).  Thus, no court has ever found a tribe immune from a limitations period based on the *nullum tempus* doctrine.

Even if the doctrine were otherwise applicable to tribes, the Nation still could only benefit from the doctrine if it were "acting in its sovereign capacity to vindicate public rights." *Okla. City Mun. Improvement Auth. v. HTB, Inc.,* 769 P.2d 131, 134 (Okla. 1988).  Here, the Nation is not suing in its "sovereign capacity to vindicate public rights."  *See id.* at 133 (question is "whether the right is such as to affect the public generally or to merely affect a class of individuals within the political subdivision").  Instead, it seeks to recoup *derivative* costs (*e.g.*, healthcare expenses, police costs, lost tax revenue) flowing from *discrete* harms to a *subset* of individuals who have suffered as a result of themselves or others misusing or abusing opioids (*e.g.*, Muscogee 1AC ¶¶ 22, 351, 431, 443).  And the Nation itself claims that it is seeking to recover for "injuries to its own proprietary interests."  Muscogee Opp. 16; *see*, *e.g.*, *Bd. of Cty. Comm'rs v. Willett*, 152 P. 365 (Okla. 1915) (statute of limitations applied in suit by county to recover excess money paid in salary).

None of the cases the Nation cites applies the *nullum tempus* doctrine to claims that look anything like those advanced by the Nation here.  *See*, *e.g.*, Muscogee Opp. 61-62 (citing *HTB, Inc.*, 769 P.2d at 136 (addressing "[d]elivery of adequate drinking water" that is "fundamental to existence" and a "necessity [that] entitles the general public to expect an adequate water supply"); *Town of Cyril v. Mobil Oil Corp.*, 11 F.3d 996, 997-98 (10th Cir. 1993) (similarly dealing with water supply and citing to *HTB, Inc.*[33]  Unlike *HTB, Inc.*—the Nation's *only*

---

[33] The Nation also cites *Oneida County*, but that case involved property rights, federal legislation regarding whether a New York statute of limitations applied to a tribe's claims, and the federal government's failure "to live up to its responsibilities as trustees for the Indians"—

Oklahoma case—this is not a case where "every single person who resides in or travels through the" Nation is affected.  *HTB, Inc.,* 769 P.2d at 136.  Because the Nation is not suing to vindicate a public right, but is instead seeking to recover its own derivative expenses,[34] the statutes of limitations apply to the Nation's claims.

### 2.    The Tribes' Claims Are Facially Time-Barred

The Nation claims that the Manufacturers "make no attempt to illustrate precisely how the Nation's claims are facially time-barred; they just say that is the case."  Muscogee Opp. 63.  That is demonstrably false.   The Motion spends five pages walking through the Tribes' complaints and quoting excerpts that show the Tribes' claims are untimely; indeed, the Manufacturers attached a chart of the complaints' allegations which provides even more detail.  *See* Mot. 61-66 & Addendum B.  The Nation also argues that its claims cannot accrue until it incurs the "full scope" of its damages and, remarkably, asserts that it "still does not believe its claims have accrued" even today.   Muscogee Opp. 65.   But as the Manufacturers already explained (Mot. 58-61), that is not the law.   Rather, a claim accrues when "any" injury has occurred and it is "the *fact* that damages have been sustained and not . . . the *amount* of damages" that is relevant.  *Marshall v. Fenton, Fenton, Smith, Reneau & Moon, P.C.*, 899 P.2d 621, 623 (Okla. 1995) (cited at Muscogee Opp. 64, 67).   Notably, neither Tribe even suggests that it started to suffer the alleged injuries only within the last two to four years.   Accordingly, unless an exception applies, the vast majority of the Tribes' claims are time-barred.

---

none of which is at issue here.  *Oneida Cty. v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 240-44 (1985) (cited at Muscogee Opp. 61).

[34] To the extent there is any ambiguity as to whether the Nation is seeking to vindicate public versus private rights, that question should not be resolved at the motion to dismiss stage.

     **3.**     **The Tribes Have Failed to Establish That An Exception To The Statutes Of Limitations Applies**

The crux of the parties' dispute is whether an exception to the limitations period saves the Tribes' otherwise stale claims. Here, the Tribes claim that the statutes of limitations have not run or are otherwise tolled under the discovery rule, the doctrine of fraudulent concealment, and/or the continuing violation doctrine. They are mistaken and have not met their burden. *See*, *e.g.*, *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th 2013) ("[T]he burden shifts to the plaintiff to establish an exception to the statute of limitations.").

*First*, the Tribes assert that state-specific discovery rules tolled the statutes of limitations until they knew, or should have known, of their claims. Muscogee Opp. 64-68; Blackfeet Opp. 31-34. But, as the Manufacturers detailed in the Motion, the complaints affirmatively plead facts showing that the Tribes knew, or should have known, of their claims many years ago. Mot. 62-66. Even the Nation's own examples prove the Manufacturers' point. The Nation claims that it "could not have known they had even been harmed by a third party until the veracity of Marketing Defendants' misleading statements had been impugned by those with the knowledge and authority to do so." Muscogee Opp. 69. But then the Nation concedes that the "veracity" of some of the statements had been so "impugned" when some of the "Marketing Defendants settled a claim for nearly a billion dollars and admitted that certain employees had misstated the addictive dangers of OxyContin." *Id.* at 70 (citing Muscogee 1AC ¶ 139). *That settlement was entered into in 2007*—more than ten years before this lawsuit was filed. And, indeed, both Tribes' complaints are replete with facts showing that the Tribes had information sufficient to be on notice of their claims years ago, including public findings and statements made by the FDA, the DOJ, the CDC, medical journals, and news outlets. Mot. 62-66.

The Manufacturers also showed that the substantially similar lawsuits brought by the City

of Chicago and Santa Clara and Orange Counties in 2014 provide an independent basis to find that the Tribes should have discovered their claims before the statutory periods.  Mot. 66.  In response, the Nation argues that an earlier filed lawsuit cannot be considered at the dismissal stage and cannot support dismissal.  Muscogee Opp. 66 n.166.  The Sixth Circuit disagrees.  In *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003), the court of appeals held that a court "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice" and that a prior complaint was therefore "properly a part of the record."[35]  And, contrary to the Nation's assertion (Muscogee Opp. 66 n.166), the 2014 cases involved precisely the same types of allegations regarding the marketing and sale of opioids that the Tribes raise here.  *Compare* Complaint ¶¶ 1-29, 34-260, 273, *City of Chicago v. Purdue Pharma L.P.*, No. 14-CV-4361 (N.D. Ill. filed July 17, 2014), ECF No. 76, *and* Complaint ¶¶ 1-17, 26-252, 254, 256, 258, 260-61, *People of the State of Cal. v. Purdue Pharma L.P., et al.*, No. 30-2014-00725287-CU-BN-CXC (Cal. Super. Ct. filed May 21, 2014) (attached as Exhibit A), *with* Muscogee 1AC ¶¶ 1-24, 28-40, 96-161, 263-73, 295-352.

*Second*, neither the continuing wrong nor the continuing nuisance doctrines applies here because the alleged misconduct here is not "continuing" in the relevant sense.  A continuing tort is one that "is an active, progressive and continuing occurrence.  It is taking place at all times." *Christian v. Atl. Richfield Co.*, 358 P.3d 131, 140 (Mont. 2015).  For this reason, cases addressing the doctrine often arise in the context of an ongoing invasion to land, pollution, or

---

[35] Even the district court case relied on by the Nation found that a court can "take notice of the prior lawsuits" and that those lawsuits "may constitute 'storm warnings' triggering a duty to investigate." *W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 903 (S.D. Ohio 2014) (cited at Muscogee Opp. 66 n.166).

contamination—as the Tribes' cases show.[36]  In contrast, the Tribes' alleged damages do not

flow from one "active, progressive and continuing occurrence."  Rather, the Tribes' complaints

allege that (1) specific representations (2) were made by different manufacturers (3) at discrete

points in time (4) to some, but not all, of a host of recipients (5) who allegedly relied on

particular representations (6) resulting in specified harms (7) that accrued at discrete and

identifiable moments in time.  And virtually all of these misrepresentations occurred outside the

applicable limitations periods.  *See* Mot., Addendum B.  Thus, at most, the Tribes are seeking to

recover for the continuing effects flowing from discrete misrepresentations in the past.

But a continuing wrong does not exist where plaintiff's "asserted rights were . . . injured,

it was aware of the alleged injury, and nothing prevented it from pursuing a cause of action."

*Chickasaw Tel. Co. v. Sw. Bell Mobile Sys., Inc.*, No. 96-6357, 1997 WL 290951, at *5 (10th Cir.

May 27, 1997).  Instead, "[s]ubsequent alleged injuries . . . constitute damages from the original"

misconduct, "not continuing harms from which new causes of action accrue."  *Id.*; *see also Ward

v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by

continual unlawful acts, not by continual ill effects from an original violation."); *Parkhurst v.

Lampert*, 264 F. App'x 748, 749 (10th Cir. 2008) (same); *Bergman v. United States*, 751 F.2d

---

[36] *See* Blackfeet Opp. 30, 34, 35 (citing *Christian*, 358 P.3d at 136-37 (arsenic contamination at Superfund site); *Knight v. City of Missoula*, 827 P.2d 1270, 1272, 1274-75 (Mont. 1992) (creation and use of a dirt road); *Graveley Ranch v. Scherping*, 782 P.2d 371, 372, 374-75 (Mont. 1989) (continuing presence of lead batteries left on property); *Shors v. Branch*, 720 P.2d 239, 242 (Mont. 1986) (physical barrier that obstructed access to land)); Muscogee Opp. 71 (citing *Cole v. Asarco, Inc.*, No. 03-CV-327, 2010 WL 711195, at *1, *4-5 (N.D. Okla. Feb. 24, 2010) (contamination from mining operations); *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1018 (10th Cir. 2007) (contamination from adjacent land)).  The Nation also cites several other cases that found the claims time-barred or did not apply the continuing violation doctrine. Muscogee Opp. 71 (citing *Wing v. Lorton*, 261 P.3d 1122, 1126 n.1 (Okla. 2011) (offering "no opinion as to the application" of the continuous tort rules); *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671, 673-75 (10th Cir. 2016) (claims were time-barred); *Hensley v. City of Columbus*, 557 F.3d 693, 697-98 (6th Cir. 2009) (The continuing violation doctrine was not applicable, and the claim was time-barred)).

314, 317 (10th Cir. 1984) (same); *see also Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014) (continuing violation doctrine inapplicable where new claim for damages is merely based on "the abatable but unabated inertial consequences of some pre-limitations action," *i.e.*, the "'ripples' caused by the initial injury, not . . . distinct injuries themselves"). At most, this case is about the "continual ill effects from an original violation" outside the limitations periods.

Moreover, at least in Montana, even if the alleged harm were ongoing and reasonably abatable, the continuing wrong doctrine does not apply when "abatement is only possible through the payment of money for past wrongs." *Christian*, 358 P.3d at 151. Were it otherwise, "any suit seeking damages would arguably qualify as a continuing tort. This is not consistent with the policies underlying the doctrine as an exception to statutes of limitation." *Id.*; *see also id.* at 157. Here, the Tribe's claims are for the "payment of money for past wrongs," and as such they do not qualify as a continuing wrong that justifies "an exception to statutes of limitation."

If the Court nonetheless concludes that the continuing wrong doctrine might apply, it should make clear the Tribes can only seek damages for injuries incurred during the two- to four-year periods immediately preceding the filing of the Tribes' complaints. *See Grant*, 505 F.3d at 1028 ("Under Oklahoma law," damages for "continuing temporary nuisance" limited to "injuries incurred within the two years immediately preceding the filing of the lawsuit"); *Cole*, 2010 WL 711195, at *4-*5 & n.2 (same); *Christian*, 358 P.3d at 507-08 (Under Montana law, "recovery may [only] be had for damages accruing within the statutory period next preceding the commencement of the action."); *Graveley Ranch v. Scherping*, 782 P.2d 371, 373 (Mont. 1989) (same); *Shors v. Branch*, 720 P.2d 239, 243 (Mont. 1986) (same). Indeed, both Tribes rely on a trial court decision from the Supreme Court of New York in one of the opioid cases, which held

exactly that.  *See In re Opioid Litig.*, No. 400000/2017, 2018 WL 3115102, at *12 (N.Y. Sup. Ct. June 18, 2018) (holding that "damages are recoverable only to the extent they were sustained during the three years [*i.e.*, the statutory period applicable there] prior to the commencement of the action"); *see also id.* at *13.

### C.    The Tribes Have Failed To Allege Actionable Civil Conspiracy Claims

The Tribes do not dispute that their civil conspiracy causes of action are purely derivative claims that require a properly pleaded underlying tort, and the Muscogee Nation does not dispute that the underlying tort cannot be based on negligent conduct.  Mot. 67-68; Muscogee Opp. 109-10; Blackfeet Opp. 113 & n.59.[37]  Because the Tribes have not properly pleaded any tort (let alone one based on intentional or knowing conduct), their civil conspiracy claims must be dismissed.

### CONCLUSION

For the foregoing reasons, the Tribes' complaints should be dismissed on the pleadings.

Dated: November 2, 2018                          Respectfully submitted,

                                                 By: */s/ Jonathan L. Stern*
                                                 Jonathan L. Stern
                                                 Arnold & Porter Kaye Scholer LLP
                                                 601 Massachusetts Ave. NW
                                                 Washington, DC 20001
                                                 Tel: (202) 942-5000
                                                 jonathan.stern@arnoldporter.com

                                                 Sean O. Morris
                                                 Arnold & Porter Kaye Scholer LLP
                                                 777 S. Figueroa St., Suite 4400
                                                 Los Angeles, CA 90017

---

[37] The Blackfeet Tribe suggests that "negligence in furtherance" of a conspiracy is actionable but cites no authority for this proposition.  *See* Blackfeet Opp. 113 n.59.  Nor could it.  Montana law requires "a meeting of minds on the object or course of action."  *Duffy v. Butte Teachers' Union, No. 332*, 541 P.2d 1199, 1202 (Mont. 1975); *see* Mot. 67-68.

Tel: (213) 243-4000
sean.morris@arnoldporter.com

Carole S. Rendon
BAKER HOSTETLER
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Tel: (216) 621-0200
crendon@bakerlaw.com

*Attorneys for Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Par Pharmaceutical, Inc. and Par Pharmaceuticals Companies, Inc.*

By: */s/ Steven A. Reed* (consent)
Steven A. Reed
Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5603
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000
brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals, USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

By: */s/ Mark S. Cheffo* (consent)
Mark S. Cheffo
Sheila L. Birnbaum
Hayden A. Coleman
DECHERT LLP
Three Bryant Park

1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com
Sheila.Birnbaum@dechert.com
Hayden.Coleman@dechert.com

*Attorneys for Purdue Pharma L.P.,*
*Purdue Pharma Inc., and The Purdue Frederick*
*Company*


By: */s/ Charles C. Lifland* (consent)
Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
clifland@omm.com
sstrong@omm.com

Daniel M. Petrocelli
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067-6035
Tel: (310) 553-6700
dpetrocelli@omm.com

*Attorneys for Janssen Pharmaceuticals, Inc.,*
*Johnson & Johnson, Janssen Pharmaceutica, Inc.*
*n/k/a Janssen Pharmaceuticals, Inc., and Ortho-*
*McNeil-Janssen Pharmaceuticals, Inc. n/k/a*
*Janssen Pharmaceuticals, Inc.*


By: */s/ Brien T. O'Connor* (consent)
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
Tel: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

57

*Attorneys for Defendants Mallinckrodt LLC and SpecGx LLC*

By: */s/ Donna M. Welch* (consent)
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

*Attorney for Allergan Finance, LLC f/k/a/ Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*

By: /s/ *J. Matthew Donohue* (consent)
J. Matthew Donohue
Joseph L. Franco
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Tel: (503) 243-2300
matt.donohue@hklaw.com
joe.franco@hklaw.com

Nicholas A. Sarokhanian
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
Tel: (214) 964-9500
nicholas.sarokhanian@hklaw.com

*Attorneys for Insys Therapeutics, Inc.*

By: /s/ *Daniel G. Jarcho* (consent)
Daniel G. Jarcho
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Tel: (202) 239-3254
daniel.jarcho@alston.com

Cari K. Dawson
Jenny A. Mendelsohn
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel: (404) 881-7000
cari.dawson@alston.com
jenny.mendelsohn@alston.com

*Attorneys for Noramco, Inc.*

## <u>LOCAL RULE 7.1(f) CERTIFICATION</u>

I certify that these cases have been assigned to the "Tribal Track Cases" pursuant to

CMO Six and that this Reply Brief adheres to the page limitations set forth in the Court's

July 26, 2018 Order Regarding Page Limitations, Dkt. 791, and L.R. 7.1(f).


Dated: November 2, 2018               By: *<u>/s/ Jonathan L. Stern</u>*
                                    Jonathan L. Stern
                                    Arnold & Porter Kaye Scholer LLP
                                    601 Massachusetts Ave. NW
                                    Washington, DC 20001
                                    Tel: (202) 942-5000
                                    jonathan.stern@arnoldporter.com

                                    *Attorneys for Endo Health Solutions*
                                    *Inc., Endo Pharmaceuticals Inc., Par*
                                    *Pharmaceutical, Inc. and Par Pharmaceuticals*
                                    *Companies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2018, a copy of the foregoing Reply Brief in Support of the Manufacturer Defendants' Joint Motion to Dismiss the Tribes' First Amended Complaints was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Dated: November 2, 2018

By: */s/ Jonathan L. Stern*
Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 942-5000
jonathan.stern@arnoldporter.com

*Attorneys for Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Par Pharmaceutical, Inc. and Par Pharmaceuticals Companies, Inc.*