UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br>*Track One Cases* | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster<br><br>Mag. Judge David A. Ruiz |

**PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO FILE THE MANUFACTURER DEFENDANTS' JOINT MOTION TO DISMISS TRACK 1 PLAINTIFFS' CLAIMS FOR DAMAGES PURSUANT TO RULE 41(B)**

**AND CERTAIN DISTRIBUTOR DEFENDANTS' MOTION FOR LEAVE TO FILE MEMORANDUM IN SUPPORT OF THE MANUFACTURER DEFENDANTS' JOINT MOTION**

**INTRODUCTION**

The Track One Plaintiffs 1 file this Opposition to the Motion for Leave to File the Manufacturers Defendants' Joint Motion to Dismiss Track 1 Plaintiffs' Claims for Damages Pursuant to Rule 41(b) (Doc. #1073).[1]  Leave should not be granted.

Defendants seek leave to file a new motion to dismiss, this time aimed only at Plaintiffs' damages claims, based on a purported violation of CMO-1. Defendants contend that Plaintiffs were required, under CMO-1, to identify medically unnecessary prescriptions in order to recover damages of any kind.  Separate and apart from the fact that this is a complete misreading of CMO-1 and that Plaintiffs do not seek damages based on medically unnecessary or inappropriate prescriptions, Defendants' Motion for Leave here should be denied because: (1) the motion Defendants seek to file is moot because Plaintiffs did comply with CMO-1 and the relevant provision of it has been superseded by this Court's ruling concerning Discovery Ruling No. 5 (Doc. # 1047) and/or is duplicative of Defendants' Motion to Compel Compliance with Discovery Ruling No. 5 (Doc. # 1066, "Motion to Compel"); (2) the motion would undermine the overall design of CMO-1 to streamline this litigation; and (3) the extreme sanction Defendants seek in their underlying motion to make—dismissal of plaintiffs' damages claims—is unwarranted.

---

[1] Defendants Cardinal Health, Inc., and McKesson Corporation ("Certain Distributors Defendants") have also filed a Motion for Leave to file Memorandum in Support of the Manufacturer Defendants' Joint Motion (Doc. #1098).  Plaintiffs oppose this motion for leave as well.  This motion does not stand on its own, and fails for the same reasons Plaintiffs oppose the Manufacturers' Motion for Leave.  To the extent the Court denies the Manufacturers' Motion for Leave, the Motion for Leave by Certain Distributor Defendants should be denied as moot.  Further, nothing in Doc. # 1098 provides a separate basis for granting the motion for leave to file this motion for leave or for granting the underlying the Manufacturers' Rule 41 Motion.

2

**FACTUAL BACKGROUND**

On April 11, 2018, this Court entered CMO-1. CMO-1 designated certain cases as Track One for purposes of discovery and trial and a broader list of cases as bellwether cases for purposes of motions to dismiss. CMO-1 also set deadlines and procedures to streamline litigation and ensure prompt resolution. As part of the effort to ensure the "just, speedy, and inexpensive determination" of these proceedings, *cf.* Fed. R. Civ. P. 1, CMO-1 set forth a schedule for certain dispositive motions and provided that motions not expressly authorized could not be filed without leave of Court or agreement of the parties. In addition, CMO-1 contained the following provision:

> No later than, Monday, July 16, 2018, each Plaintiff in cases in Track One that alleges money damages based upon unnecessary prescriptions shall identify: (a) the prescriptions that each Plaintiff asserts were medically unnecessary or medically inappropriate, to whom they were written, and whether Plaintiff reimbursed for them; (b) the physicians or healthcare providers who wrote the prescriptions; and (c) Plaintiff's basis for identifying the prescriptions that it asserts are medically unnecessary or medically inappropriate.

CMO-1, ¶ 9(l)(iii).

On May 18, 2018, Plaintiffs in the *Summit County* action filed their Second Amended Complaint. In that complaint, the *Summit County* Plaintiffs expressly disclaimed "any claim for spending on prescription opioids by their health plans, workers compensation, or other programs." *Summit* SAC at 319 n.224. On May 25, 2018, the *Summit County* Plaintiffs repeated this disclaimer in their omnibus opposition to Defendants' motions to dismiss, expressly stating that they "do not assert any claim for spending on prescription opioids by their health plans, workers' compensation program, or other programs." MTD Opp. at 3 n.2. Thereafter, on July 16, 2018, the *Summit County* Plaintiffs and the Plaintiffs in the other Track One

3

cases wrote to Defendants disclaiming claims for reimbursement for payment of prescriptions based on the contention that the prescription was unnecessary or improper. *See* Defs' Mot. at Exh. 2-4 (Doc. 1073-6 through 1073-8).

The parties disagreed about whether these disclaimers relieved Plaintiffs of any obligation under CMO-1 to identify medically unnecessary prescriptions. *Id.* at Exh. 1073-9 and 1073-10. In the meantime, however, on April 25, 2018, the Manufacturer Defendants served their First Set of Interrogatories to Plaintiffs ("First Rogs"). Interrogatory No. 10 asked Plaintiffs to

> Identify and describe all prescriptions of opioid(s) that Plaintiff contends were unauthorized, medically unnecessary, ineffective, or harmful. Include in the response as to each such prescription the healthcare provider; the patient; the date of prescription; which opioid or opioids were prescribed; the basis for your assertion that the prescription was unauthorized, medically unnecessary, ineffective, or harmful; and whether, by whom, and for how much the prescription was approved for reimbursement.

First Rogs at 5-6. Thus, Interrogatory No. 10 called for precisely the same information described in CMO-1.

On May 25, 2018, Plaintiffs responded to the First Rogs. Plaintiffs objected to Interrogatory No. 10 and declined to provide the information called for. (Plaintiffs thereafter twice amended their responses to the First Rogs; in both the first and second amended answers, they continued to object to Interrogatory 10 and declined to answer it.) Thereafter, Defendants moved before Special Master Cohen to compel further answers to several interrogatories, including Interrogatory 10.

On October 6, 2018, in Discovery Ruling 5, Special Master Cohen ruled that Plaintiffs were required to answer a modified version of Interrogatory 10. (Doc. #1027.) Plaintiffs objected to that ruling; Defendants did not. On October 16, 2018,

4

this Court ruled on Plaintiffs' objection.  (Doc. #1047.)  The Court held that Plaintiffs would be required to answer the interrogatory as modified by Discovery Ruling 5, but further held:

> Instead of answering the disputed interrogatories as required by the Discovery Ruling, Plaintiffs may instead elect not to answer them on the condition that Plaintiffs instead categorically and affirmatively respond to the disputed interrogatories by stating that: (1) they will not assert, either in expert opinions or factual presentations at trial, that any specific prescriptions "were unauthorized, medically unnecessary, ineffective, or harmful" or that "the filling of [any specific prescriptions] caused or led to harm for which [Plaintiffs] seek to recover," and (2) Plaintiffs instead will rely, at trial and in expert opinions, solely on a theory of aggregate proof.

Doc. #1047 at 1-2.

On October 24, 2018, Plaintiffs filed their Submissions in Response to Discovery Ruling No. 5 ("Submissions").  In the Submissions, Plaintiffs stated that although they intended to prove their claims by aggregate proof, "Notwithstanding this response, and solely for the purpose of preserving Plaintiffs' right to present additional evidence in expert opinions and at trial to address the harm alleged to Plaintiffs, as opposed to individuals, and to address any contingencies that come to light during discovery, Plaintiffs will identify individuals sufficient to respond to the interrogatory as modified by Discovery Ruling 5, by November 2, 2018."  (Doc. #1058).

After waiting more than 90 days past Plaintiffs' CMO-1 response but without waiting to see Plaintiffs' answers to Interrogatory 10, on October 29, 2018, Defendants moved to compel further answers.  On November 7, 2018, this Court denied the motion to compel, noting, *inter alia,* that "the Motion is premature because it was filed before the deadline for Plaintiffs to provide their responses to

5

Interrogatory Nos. 6, 7 and 10." (Doc. #1101 at 2.)  On November 2, 2018, Plaintiffs responded to Interrogatory No. 10, identifying a list of prescriptions they contend were "unauthorized, medically unnecessary, ineffective, or harmful," and including accompanying details.[2]  In the meantime, on November 1, 2018—like the Motion to Compel filed before the deadline for Plaintiffs to provide their response to Interrogatory No. 10—Defendants filed this motion for leave to file a motion to dismiss Plaintiffs' damages claims for failure to provide the information set forth in CMO-1.

## ARGUMENT

1. **The Underlying Motion Defendants Seek to Make Is Duplicative of their Motion to Compel and Is Moot Because the Provision of CMO-1 at Issue Has Been Superseded by Interrogatory 10**

The Court should deny Defendants' Motion for Leave because the motion is duplicative of Defendants' recent Motion to Compel, is moot, or both.  Whatever obligation Plaintiffs may or may not have had under CMO-1 to identify prescriptions that were medically unnecessary has been superseded by the rulings of the Special Master and this Court with respect to Interrogatory 10, which called for identical information.  In Discovery Ruling No. 5, the Special Master agreed that Plaintiffs should provide this information, but limited the obligation to 500 prescriptions, rather than "all" such prescriptions.  Defendants did not object to the Ruling, which was affirmed by this Court.  Defendants are precluded from seeking relief from it now.  Thus, the question whether Plaintiffs have complied with the provision of CMO-1 calling for this same information is moot.

---

[2] Plaintiffs note they have repeatedly sought and have yet to obtain Defendants' disclosure of the same information.

6

To the extent that Defendants contend that Plaintiffs' responses to Interrogatory 10, which provides the information called for in CMO-1, as modified by Discovery Ruling No. 5, are inadequate, the motion to dismiss is entirely duplicative of the Motion to Compel.  Defendants have *already* argued in their Motion to Compel that Plaintiffs' responses are inadequate and this Court has correctly rejected that argument as premature because the motion was made before the answers were received and before the parties had met and conferred with regard to any deficiencies Defendants may perceive.  The underlying motion Defendants seek leave to file makes exactly the same argument—that Plaintiffs have failed to identify prescriptions they contend were medically unnecessary—and, as was the case with the Motion to Compel, was filed before Defendants had received Plaintiffs' answers or met and conferred about them.

Nor can the motion Defendants seek to make be justified by any purported distinction between ¶ 9(l)(iii) of CMO-1 and Interrogatory No. 10.  The two call for the same information.  This Court has adjudicated Plaintiffs' obligation to identify prescriptions they contend are medically unnecessary.  It would be an absurd elevation of form over substance, and waste of time, to lift the stay on unauthorized motions to permit Defendants to seek relief for Plaintiffs' purported failure to provide information under the CMO when the information has actually been provided in response to Interrogatory 10 and when the Court has already had the opportunity to consider the extent to which such information is an appropriate subject of discovery at this time.

## 2. Leave To File A Second, Unauthorized Motion to Dismiss Should Not Be Granted For the Reasons CMO-1 Stays Motions Not Expressly Authorized.

The Motion for Leave should also be denied because it would unnecessarily delay this litigation. Defendants argue that their Motion serves the Courts' effort to streamline this litigation when in fact, the opposite is true: Defendants' Motion would subvert the Court's effort to limit motion practice and keep the litigation on track for trial in September, 2019.

CMO-1 places a moratorium on all substantive filings other than those expressly authorized therein. CMO-1 section 6(g).[3] Defendants here concede that their motion to dismiss is not authorized by CMO-1. (Doc. #1073 at 2.) In implementing CMO-1, the Court provided that motions to dismiss would be filed in the Track One cases on the Defendants' choice of "threshold legal issues" that were "most critical and most relevant to the settlement process . . . ."  *Id.* at 2. Thus, CMO-1 recognized that the purpose of motions to dismiss at this stage of the case would be to assess the legal viability of Plaintiffs' claims, in order to assist the parties in the settlement process and/or in preparation for trial.

Those motions were filed and fully briefed; one of them, in the *Summit County* case, was ruled upon by Magistrate Judge Ruiz in a Report and Recommendation on October 5, 2018. While CMO-1 notes that defenses not addressed in these initial motions are deemed preserved, *see* CMO 1, section 2(j), neither CMO-1 nor any

---

[3] Rather than repeat the discussion of the moratorium contained in Plaintiffs' Opposition to Motion for Leave to File Motion to Certify Questions of Law to the Ohio Supreme Court filed November 9, 2018 (Doc. # 1111) at 2-3, Plaintiffs respectfully refer the Court to that discussion.

8

subsequent order contemplates the filing of additional motions to dismiss in the Track One cases.

Moreover, the motion to dismiss Defendants seek to file does not raise "threshold legal issues" that are "most critical and most relevant to the settlement process." The filing of such a motion at this stage would necessarily be disruptive to the schedule carefully worked out by the Court, as it would distract the parties from their settlement discussions and trial preparations. It would also be inefficient, as Defendants will no doubt perceive additional deficiencies in Plaintiffs' discovery efforts before the close of discovery.  CMO-1 wisely envisions that any motions seeking to limit any party's proofs based on discovery deficiencies will be assessed all at once after the completion of discovery, in connection with motions for summary judgment or pretrial proceedings. As noted above, Defendants have had the opportunity to raise these same issues through discovery motion practice. There is no need to disrupt the case schedule with an additional motion to dismiss not envisioned in the CMO.

### 3. **Defendants' Rule 41(b) Motion to Dismiss is without Basis**

Defendants' Rule 41 Motion to Dismiss Plaintiffs' Damages Claims provides no viable justification whatsoever for imposing such a heavy sanction on Plaintiff, either factually or as a matter of law.  While opposition of this Motion for Leave does not call for a full response to Defendants' Motion to Dismiss, Plaintiffs contend that the extreme nature of the sanction sought and the utter lack of factual basis justifying it also make clear the motion for leave should be denied.[4]

---

[4] To the extent the Court sees fit to grant Defendants' motion for leave, Plaintiffs reserve the right to provide a full response to Defendants' Rule 41(b) motion to dismiss.  For these purposes, however, it is of note, that beyond the lack of factual basis, the underlying motion for sanctions is utterly without legal basis. As justification for it, Defendants cite to inapposite cases that involve dismissal of the claims of individual personal-injury plaintiffs, who repeatedly ignored the Court's orders to provide discovery. *See, e.g.*, *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006) (dismissed without prejudice for failure to produce PFS); *In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2:14-CV-0523, 2015 WL 12844944 (D.S.C. Mar. 23, 2015) (same); *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 496 F.3d 863 (8th Cir. 2007) (dismissed for failure to provide PFS, current email address, medical disclosure).  Alternately, they cite cases that involve egregious conduct causing delays or prejudice to the defendants. *See, e.g.*, *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359 (6th Cir. 1999) (dismissed without prejudice after repeated violations of court orders that culminated in the plaintiff's attorney showing up on the day of trial unwilling and unprepared to proceed); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364 (6th Cir. 1997)(dismissed because "stubbornly disobedient and willfully contemptuous" counsel failed to comply with multiple court orders and failed to respond to the motion to dismiss until eighteen days after the deadline—which had already been extended by the court twelve days after the original due date); *Henry v. Gill Indus., Inc.*, 983 F.2d 943 (9th Cir. 1993) (dismissed because of "repeated and flagrant" discovery abuses including cancelling depositions at the last moment and the plaintiff twice failing to appear for his deposition); *Freeman v. Wyeth*, 764 F.3d 806 (8th Cir. 2014)(dismissed because the attorney never registered for CM/ECF when the case was transferred to the MDL as ordered by the court, and the attorney failed to even appear in the case until after the case was dismissed); *Dzik v. Bayer Corp.*, 846 F.3d 211 (7th Cir. 2017) (dismissed because counsel ignored a discovery request for more than a year, flouted the requirements of a case management order, failed to respond to a motion to dismiss, and lied to the court); *Komaromy v. City of Cleveland*, 232 F.R.D. 590 (N.D. Ohio 2006) (dismissed because attorney did not appear for status conference, did not return the court's calls to reschedule, failed to respond to discovery requests, did not propound any discovery, did not submit expert reports, and did not submit initial disclosures). Again, nothing remotely similar has been alleged to have occurred here.  Thus, even if the Court found that Plaintiffs needed to supplement their Interrogatory responses, it certainly would not justify the extreme penalty Defendants advocate.

10

Defendants argue that Plaintiffs violated section 9(l)(iii) of CMO-1 by purposefully failing to provide information regarding medically unnecessary prescriptions to Defendants by July 16, 2018.  They also claim the failure was intentional.  However, Plaintiffs did comply with CMO-1.  On July 16, 2018, as noted above and in Defendants' Motion, each Track One Plaintiff notified defense counsel that it would forego reimbursement for medically unnecessary or medically inappropriate opioid prescriptions.  *See* Defs' Mot. at Exh. 2-4 (Doc. 1073-6 through 1073-8).  But whether Plaintiffs correctly assessed that CMO-1 was no longer applicable to them at that point or whether Defendants' motion is rendered moot by Discovery Ruling 5, Plaintiffs did not ignore this Court's order.  As a result, no sanction is warranted, let alone dismissal with prejudice of all of Plaintiffs' damages claims[5].

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Manufacturers Defendants' Motion for Leave to File Manufacturers Defendants' Joint Motion to Dismiss Track 1 Plaintiffs' Claims for Damages Pursuant to Rule 41(b) (Doc. #1073) and the Cardinal Health, Inc. and McKesson Corporation's Motion for Leave to File Memorandum in Support of the Manufacturer Defendants' Joint Motion (Doc. #1098) should be denied.

---

[5] Note that Defendants request dismissal of all of plaintiffs' claims for money damages regardless of whether they are "based upon unnecessary prescriptions" as delineated by section 9(l)(iii) of CMO-1 or not.

Dated:  November 12, 2018

Respectfully submitted,

s/*Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
pweinberger@spanglaw.com

*Plaintiffs' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of November 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

*s/Peter H. Weinberger*
Peter H. Weinberger
Plaintiffs' Co-Liaison Counsel