UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.,* Case No. 1:18-cv-45090 | MDL No. 1:17-cv-02804<br><br>Case No. 1:18-op-45090<br><br>Judge Dan Aaron Polster<br><br>Magistrate Judge David A. Ruiz |

**<u>PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE DAVID A. RUIZ</u>**

Defendants have filed three separate sets of objections to Magistrate Judge Ruiz's October 5 Report & Recommendation (R&R) (R. 1078, R. 1079, R. 1082). The Defendants' objections largely rehash arguments made in their respective Motions to Dismiss (R. 491, R. 497, R. 499) and have been fully addressed in Plaintiffs Summit County and City of Akron's Memorandum in Opposition to the Motions to Dismiss (R. 654), and rejected by Magistrate Judge Ruiz in the R&R. (To the extent that Defendants raise new arguments for the first time in their objections, such arguments have been waived and should not be considered by the Court. *See United States v. Waters*, 158 F.3d 933, 936 (6th Cir.1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")); *Murr v. United States*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) (citing *Waters* and *Chater*)). For the Court's convenience, Plaintiffs attach hereto a chart summarizing the arguments raised in the objections, and identifying where each argument was addressed in Plaintiffs' opposition, and considered by the Magistrate Judge.

Because Plaintiffs only have ten pages to respond to all three objections, Plaintiffs do not provide a comprehensive response.[1] Plaintiffs, of necessity, primarily stand on the comprehensive arguments in their opposition memorandum and here only supplement that memorandum with brief responses to specific arguments advanced for the first time in the objections.[2]

## ARGUMENT

We begin with a general observation: Defendants themselves shaped the Magistrate Judge's R&R through their blunderbuss approach, attacking *every* count in the Second Amended Complaint (SAC), through *hundreds* of pages of briefing, rather than focusing on specific, narrow perceived flaws

---

[1] Of course, if the Court desires, Plaintiffs stand ready to provide a more detailed rebuttal to each of Defendants' objections.
[2] For the convenience of the Court, rather than organizing this response objection by objection, Plaintiffs herein track the organization of the Magistrate Judge's R&R itself.

1

in particular causes of action. Yet, they now complain that it is the R&R that is deficient for not appropriately narrowing Plaintiffs' claims (R. 1082 at 1), and for "miss[ing] th[e] forest for the trees," (R. 1078 at 1). As Magistrate Judge Ruiz explains at several points in the R&R, it is Defendants who failed to meet their burden of showing "'that no relief could be granted under any set of facts that could be proved consistent with the allegations'" in the SAC. *See, e.g.,* R&R at 24 (quoting *Trollinger v. Tyson Foods, Inc.,* 370 F.3d 602, 615 (6th Cir. 2004) (quoting *Swierzkiewickz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Nor, contrary to the objections, does the Magistrate Judge suggest that dismissal should be deferred to give the Plaintiffs an opportunity to discover facts to support their claims. Rather, he merely finds that Defendants fell short by choosing to attack the claims as a whole, rather than homing in on particular aspects of specific claims that they viewed as legally insufficient. *See, e.g.,* R&R at 23 ("Defendants fail to meaningfully differentiate among the categories [of claimed damages], contending they are all derivative of residents' personal injuries.").

Defendants also repeatedly argue that the Magistrate Judge has "ignored" arguments raised in their motions to dismiss (R. 1079 at 1, 3, 5; R. 1082 at 1, 12). The Court should not assume that points not mentioned in the R&R were overlooked, but rather that the Magistrate Judge fully considered the arguments of both sides and, to the extent that a particular argument is not mentioned, was unpersuaded by it and/or persuaded by the Plaintiffs' contrary argument. This is especially so where the Magistrate Judge has already diligently devoted more than 100 pages to a thorough consideration of the parties' arguments.

Finally, the Court should reject Defendants' suggestion that the SAC should be narrowed to aid settlement. (R. 1082 at 1). *Any* ruling on the viability of Plaintiffs' claims aids the parties in valuing the case and in assessing the desirability of settlement. Rule 12 permits dismissals only for failure to state a claim; a desire for more compact litigation is no justification for dismissing a well-pleaded claim.

**RICO**

Plaintiffs have already comprehensively briefed why their federal RICO claims are properly pled and how their injuries establish RICO standing and proximate causation (R. 654 at 23-64). Defendants' objections merely rehash their prior arguments that the R&R meticulously and correctly addressed. (R&R at 11-56).

Defendants contend that, because standing is a threshold question, the R&R incorrectly found that discovery is needed to determine if Plaintiffs' injuries impermissibly "flow from" personal injuries (R. 1079 at 4, R. 1082 at 2). As the R&R states, Plaintiffs' SAC meets that threshold by pleading multiple categories of injuries that do not flow from personal injury, including public expenditures,[3] lost taxes, revenue and funding. These injuries were not "passed on by another party," *see Trollinger v. Tyson Foods, Inc.,* 370 F.3d 602, 615 (6th Cir. 2004), but are injuries directly to Plaintiffs. Opioid users did not suffer these pecuniary injuries and pass them on to Plaintiffs.[4]

Defendants also criticize the R&R for not following the construction of the phrase "business or property" in *Hawaii v. Standard Ohio Co. of Cal.,* 405 U.S. 251, 264 (1972), and instead relying on *Reiter v. Sonotone Corp.,* 442 U.S. 330 (1979) in finding that Plaintiffs properly alleged an injury to business or property. (R. 1079 at 6, R. 1082 at 7.) A close examination of both cases reveals that the R&R correctly used *Reiter's* explanation of "business or property." *Reiter* finds that money is a form of property and that monetary injury can be an injury to one's property. (R&R at 14 *citing Reiter*, 442 U.S. at 338, 340.) And *Reiter* explains that this ruling is not contrary to *Hawaii*, but that the context is crucially different. In *Hawaii*, the state was suing not just for overcharges it paid but for those paid by

---

[3] Contrary to Distributors' assertion, the R&R did not ignore any concession by Plaintiffs that their healthcare expenses flow from personal injury. (R. 1079 at 5.) No such concession was made. Plaintiffs' damages are not due to personal injuries but consist of a wide range of economic losses. (R. 514, at ¶ 902, 934.)

[4] Manufacturers argue that *Perry v. American Tobacco Co.,* 324 F.3d 845 (6th Cir. 2003) is controlling on the issue of whether an injury is "direct" for the purposes of RICO standing. (R. 1082 at 4). But *Perry* only addresses RICO standing in the context of proximate causation, and is inapposite. (*See* R. 654 at 45.)

its citizens, and the Court was concerned, as *Reiter* notes, about duplicative recovery because it was seeking to recover for its citizens' damages. *See Reiter*, 442 U.S. at 342; *Hawaii*, 405 U.S. at 253, 264. *Reiter* **does not** state that a sovereign cannot recover for claims that are derivative of its citizens' injuries (R. 1082 at 7), or that a government may recover only in its capacity as a party to a commercial transaction and not for damage to its general economy[5] (R. 1079 at 6). Instead, *Reiter* explains, "business" and "property" have different meanings which would be rendered redundant if the terms are not given their natural meanings. *Reiter*, 442 U.S. at 338-39. The R&R appropriately construes these words according to *Reiter*, while also recognizing that decisions under the Clayton Act should not be reflexively applied to limit RICO standing. (R&R at 16-17). The Court should not disrupt the R&R's careful analysis in this area.

Defendants' critique of the R&R's treatment of proximate causation is equally unfounded. This Court should accept Magistrate Judge Ruiz's well-supported findings: "Plaintiffs have sufficiently pled that the Defendants' alleged actions were the 'but for' cause of their injuries as required by 18 U.S.C. § 1964(c) and under *Holmes*, 503 U.S. at 268, and *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-61 (2006)" (R&R at 26); "the complaint allege[s] that the opioid addiction epidemic and its attendant injury to government entities were foreseeable to all Defendants" (R&R at 82); and all Defendants took steps to effectuate "a concerted scheme to expand the opioid market, to ensure that distribution quotas remained artificially high and that suspicious orders were not reported." *Id.* Thus, Defendants' second attempt to deflect blame by pointing to physicians, third-parties, and other actors in the supply chain as intervening or superseding cause should again be rejected.[6]

---

[5] In *Hawaii*, the state could not recover for the injury to the general economy because it "is no more than a reflection of injuries to the 'business or property' of consumers, for which they may recover themselves." *Hawaii*, 405 U.S. at 264. Plaintiffs' damages here are not duplicative of those its citizens could recover for themselves and Defendants' reliance on *Hawaii* is misplaced.

[6] At a minimum, these same arguments should be discarded for "rais[ing] significant factual issues not suitable for resolution on a motion to dismiss." R&R at 82.

Manufacturer Defendants simultaneously argue that proximate cause is a policy-based decision to be made independently of the allegations of the complaint. (R. 1082 at 9). This is just another permutation of their remoteness argument that was thoroughly rejected by Judge Ruiz. *See, e.g.*, R&R 26, 79-80. In any case, Judge Ruiz performed a full analysis of the three *Holmes* "policy factors" (*see* R. 1079 at 10) and found Plaintiffs had made the requisite showing. R&R at 26-36.

Manufacturer Defendants attempt to say that the R&R was wrongly decided because it favorably referenced the use of aggregate proof, such as that allowed in *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21 (1st Cir. 2013), which they argue has "virtually nothing in common with the case before this Court." (R. 1082 at 9-11). In *Neurontin*, the Court of Appeals held that defendants were responsible for fraudulently marketing their drug because of misrepresentations made to doctors about the effectiveness of the drug for specific indications; sponsoring misleading informational supplements and CME programs; and suppressing negative information about the drug while publishing articles in medical journals that reported positive information about its off-label effectiveness. *Id.* at 28. Here, Plaintiffs claim that Defendants created a fraudulent enterprise to get thousands of physicians to foster widespread use of, and resulting addiction to, prescription pharmaceuticals through use of a web of entities including KOLs and CMEs. (R. 654 at 25). The obvious similarities in the unlawful conduct make it fair for Judge Ruiz to find the persuasive authority of *Neurontin* "instructive" and "compelling," (R&R at 31, 35), and uphold Plaintiffs' ability to employ a theory of aggregate proof, like that used in the *Neurontin* plaintiff's RICO claims. (R&R at 26-28).[7]

Lastly, Distributor Defendants' demand for an "individualized" RICO conspiracy analysis for each Defendant rests on unpersuasive authority from outside the circuit, and a factual distinguishable

---

[7] While *Neurontin* has not been cited in the Sixth Circuit, it has been used favorably by the Third, Fourth, Fifth, and Federal Circuits. *See In re Avandia Marketing, Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633 (3rd Cir. 2015); *Kane v. Lewis*, 604 Fed. App'x 229 (4th Cir. 2015); *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015); *Changzhou Trina Solar Energy Co., Ltd. v. U.S. Int'l Trade Comm'n*, 879 F.3d 1377 (Fed. Cir. 2018).

case from Michigan. *See, e.g., Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 602 (E.D. Mich. 2015) (citing *Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y. 2009)); *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 685 (N.D. Ill. 2002). Indeed, Plaintiffs provided—and the R&R found there were—"voluminous factual allegations in the over 300 page complaint" (R&R at 3 n.5) including allegations of settlements and civil penalties paid by the Defendants to the United States and West Virginia for the same conduct as alleged in the SAC. (R&R at 43). None of Defendants' cases stand for the proposition that detailed allegations about each category of defendants, in addition to specific allegations of wrongdoing by individual defendants, is insufficient at the pleading stage. (R&R at 39 (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 2009 WL 5064468, at *18 (D. Conn. Dec. 15, 2009)); R&R at 40 (citing *Ford v. Pa. Higher Educ. Assist. Agency*, 2018 WL 1377858 at *4 (N.D. Ohio Mar. 19, 2018) (Lioi, J.))). To the extent that they are merely repackaging their particularity argument, that too was rejected by Magistrate Ruiz "[g]iven the detailed allegations of the complaint." (R&R at 42).

**Statute of Limitations**

Magistrate Judge Ruiz correctly concluded that a claim may be dismissed on statute-of-limitation grounds only where the undisputed facts "conclusively establish" the defense as a matter of law; where, as here, the relevant facts are disputed, a statute of limitations defense "is more appropriately addressed in the context of a summary judgment motion or at trial." (R&R at 54-55 (citing 6th Circuit precedent)). Manufacturer Defendants nevertheless object, contending that Plaintiffs have not adequately pled fraudulent concealment under Rule 9(b), or Plaintiffs' due diligence to discover the fraud, nor that the continuing violation doctrine applies to Plaintiffs' claims. (R. 1082 at 12-13). Some of these arguments are new, and therefore waived; others rehash arguments Judge Ruiz persuasively rejected. In the end, Judge Ruiz properly found that Plaintiffs' extensive allegations in the SAC are more than sufficient "to raise a plausible inference that the applicable limitations

6

periods" are tolled. (R&R at 55-56 (citing R. 514, ¶¶ 715, 718, 724, 727, 729, 744, 767-777, 780, 818, 827)).

**OPLA Abrogation**

Defendants' objections that OPLA abrogates Plaintiffs' common-law claims and statutory public nuisance claim (R. 1078 at 4-5, R. 1079 at 12-13) are entirely duplicative of arguments raised on the motion to dismiss and are comprehensively addressed by both Plaintiffs' earlier memorandum and the R&R itself. Judge Ruiz correctly concluded that Plaintiffs' negligence claim seeks recovery for economic losses neither covered nor abrogated by OPLA. (R&R at 58-60). His conclusion that OPLA does not abrogate the statutory public nuisance claim, (R&R 61-62), is likewise correct.[8]

**Statutory Public Nuisance**

Pharmacy Defendants' objections to Judge Ruiz's recommendation that the statutory public nuisance claim should not be dismissed (R. 1078 at 5-7) likewise replicate arguments fully briefed and properly rejected by the Magistrate Judge.

**Negligence**

Distributor Defendants object to Magistrate Ruiz's reliance on *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), to find that Plaintiffs have plausibly pleaded that Defendants owed them a duty of care in "marketing, monitoring, reporting, and selling their opioids," (R&R at 78), contending that *Beretta* was "effectively overruled" by OPLA and, in any event, only applies to manufacturers. (R. 1079 at 14-15 & n.19). Defendants can point to no case law agreeing with their view that *Beretta* has been overruled. *Beretta*, itself, rejects the latter argument. *See* 768 N.E.2d at 1144 ("the issue is whether appellees are themselves negligent by manufacturing, marketing, and *distributing* firearms in a way that creates an illegal firearms market . . .") (emphasis supplied).

---

[8] Plaintiffs have, however, objected to his determination that their nonstatutory absolute public nuisance claim is abrogated by OPLA. (R. 1080 at 1-8).

Distributor Defendants' separate argument that the economic loss doctrine bars Plaintiffs' negligence claim, (R. 1079 at 15), is equally deficient. It simply ignores Judge Ruiz's holding that "the economic loss rule does not apply—and the plaintiff who suffered only economic damages can proceed in tort—if the defendant breached a duty that did not arise solely from a contract," (R&R at 84 (internal quotations omitted)), and is foreclosed by *Beretta,* wherein the Ohio Supreme Court upheld Cincinnati's negligence claim to recover municipal expenditures resulting from the illegal distribution and sale of firearms. 768 N.E.2d at 1144.

**Injury through Criminal Acts**

The Magistrate Judge rejected Defendants' arguments that Plaintiffs' claim pursuant to R.C. § 2307.60(A)(1) for injuries caused by criminal acts should be dismissed. (R&R at 88-90 (citing *Jacobson v. Kaforey*, 75 N.E.3d 203 (Ohio 2016), and *Chem. Bank v. Kausmeyer*, 2016 WL 7178662, at *7 (N.D. Ohio Dec. 9, 2016))). Defendants object to that conclusion, primarily contending that a criminal conviction is a prerequisite to liability under § 2307.60. (R. 1078 at 7-10).

As Defendants note, at the request of this Court, the Ohio Supreme Court recently agreed to answer the certified question: "Does 2307.60's creation of a civil cause of action for injuries based on a 'criminal act' require an underlying criminal conviction?" *Buddenberg v. Weisdack,* No. 2018-1209 (Ohio Oct. 24, 2018). Given that a definitive answer to this question will soon be forthcoming from the Ohio Supreme Court, the most sensible and economical approach would be to uphold Judge Ruiz's recommendation at this time, while awaiting clarification from the state court.

**Unjust Enrichment**

Pharmacy Defendants' arguments opposing Judge Ruiz's refusal to dismiss Plaintiffs' unjust enrichment claim are largely a rehash of their motion to dismiss arguments and should be rejected for the reasons set forth in Plaintiffs' opposition thereto.  (R. 654 at 98-99; R&R at 91-95). Defendants' one new argument is that even if the Defendants were aware that they were not internalizing the actual

8

cost of their activities (i.e. the costs of the opioid crisis), it somehow "does not follow that they knew that Plaintiffs were doing so." (R. 1078 at 14). As Defendants recognize, the R&R found that *White v. Smith & Wesson*, 97 F. Supp. 2d 816 (N.D. Ohio 2000), upheld "[a]n identical allegation … as adequately supporting the unjust enrichment element of knowledge at the pleading stage." (R&R at 94). Moreover, the nature of the externalities pled in detail in the SAC—such as costs for police, ambulance, social services, loss of taxes, etc.—easily lead to the plausible conclusion that Pharmacy Defendants knew that the Plaintiffs were paying for these services.[9]

**Civil Conspiracy**

Contrary to the Distributors' claims, the R&R found sufficient allegations of fact to support the Plaintiffs' conspiracy claim that the Distributors conspired not to report "the unlawful distribution practices of their competitors to the authorities." (R. 1079 at 3). The R&R correctly cited to the allegations in the SAC (R. 514 at ¶¶ 534-553) which include the allegations that the Manufacturers and Distributors used the HDA to jointly increase production quotas, to stymie efforts that would prevent the diversion of opioids, and to coordinate their refusal to report suspicious orders, including those made by direct competitors. (R&R at 38). The R&R correctly concluded that the Distributors did not meaningfully explain how these relationships were insufficient as a matter of law. *Id.*

The R&R did not err in concluding that the allegations in the SAC were significantly more detailed than a mere assertion that because the Defendants were members of a trade association they must have been part of an illicit enterprise. *Id.* (R. 1079 at 3-4). The Distributors' objection that the

---

[9] Pharmacy Defendants' alternative argument that the unjust enrichment claim is abrogated by OPLA, (R. 1078 at 11), fails for the reasons discussed above. The uncontested ruling on which Defendants rely, *Leen v. Wright Med. Tech., Inc.*, No. 3:15-cv-125, 2015 WL 5545064, at *2 (S.D. Ohio Sept. 18, 2015), is inconsistent with other rulings that have expressly or impliedly rejected this argument. *See Meta v. Target Corp.,* 74 F. Supp. 3d 858, 866 (N.D. Ohio 2015) (expressly rejecting OPLA abrogation of unjust enrichment claim); *cf. Delahunt v. Cytodyne Techs.,* 241 F. Supp. 2d 827, 844–45 (S.D. Ohio 2003) (denying dismissal of unjust enrichment claims while granting dismissal of other common law claims based on OPLA); *Roshong v. Fitness Brands Inc.*, No. 3:10CV2656, 2012 WL 1899696, at *3–4 (N.D. Ohio May 24, 2012) (same).

allegations regarding the HDA are "wholly conclusory" cites to one paragraph in the SAC (R. 514 at ¶ 541) and omits reference to the other paragraphs cited by the R&R (R. 514 at ¶¶ 534-553) which detailed, *inter alia*, the existence of "Webinars and other meetings designed to exchange detailed information regarding their prescription opioid sales, including purchase orders, acknowledgements, ship notices, and invoices (R. 514 at ¶ 542); and publications and guidelines issued, including the Industry Compliance Guidelines: Reporting Suspicious Orders and Preventing Diversion of Controlled Substances which were developed by HDA members. (R. 514 at ¶¶ 545, 546). Nor did the R&R limit its ruling on the conspiracy claim to the allegations pertaining to activities related to the HDA and PCF, as asserted by the Pharmacy Defendants. (R. 1078 at 15). Rather, the R&R included specific reference to other allegations in the SAC which directly involved the Pharmacy Defendants, including, *inter alia,* R. 514 at ¶¶ 611-619, 760-766, and 1130, and noted that it had "also discussed above the many allegations that the three sets of Defendants acted in concert . . . ." (R&R at 97-98).[10]

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' Memorandum in Opposition to the Motions to Dismiss (R. 654), Plaintiffs respectfully urge the Court to reject Defendants' objections to the R&R and to adopt the conclusions of Magistrate Judge Ruiz's R&R on these issues.

---

[10] Distributors argue that the R&R completely ignored the *Noerr-Pennington* doctrine, which precludes any liability for conduct based on lobbying. (R. 1079 at 8, n.2). This argument was waived, *Sims v. Piper,* 2008 WL 3318746, at *5 (E.D. Mich. Aug. 8, 2008) (citing 6th Cir. cases)*,* as it was raised for the first time in their Reply in connection with the RICO claims and not developed there (R. 744 at 21).  In any event, Distributors have not met their burden of showing that *Noerr-Pennington* is applicable or that the elimination of these allegations render the remaining conspiracy allegations insufficient.

Dated:  November 12, 2018	Respectfully submitted,

By:  /s/ *Linda Singer*

Joseph F. Rice
Lisa Saltzburg
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
jrice@motleyrice.com
lsaltzburg@motleyrice.com

Linda Singer
Louis Bograd
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com
lbograd@motleyrice.com

Donald W. Davis, Jr.
Adam D. Fuller
Elizabeth Shively Boatwright
**BRENNAN, MANNA & DIAMOND, LLC**
75 East Market Street
Akron, OH 44308
Tel: 330-253-5060
dwdavis@bmdllc.com
adfuller@bmdllc.com
esboatwright@bmdllc.com

*Attorneys for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of November 2018, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF System. The foregoing will be served on counsel of record.

　　/s/ *Linda Singer*
Linda Singer

*Attorney for the Plaintiffs*