UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>Track One Cases | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**DISTRIBUTOR AND PHARMACY DEFENDANTS'**
**PARTIAL OBJECTION TO DISCOVERY RULING NO. 7**

Distributor and Pharmacy Defendants object in part to Special Master Cohen's Discovery Ruling No. 7, ECF No. 1051 (Oct. 21, 2018) (the "Ruling"), and request that the Court amend the Ruling to strike the following limitation to the Ruling: "The Special Master adds that plaintiffs' answer to this contention interrogatory does not limit their experts from using different criteria to identify suspicious orders, and therefore from concluding that there exist suspicious orders in addition to those identified by plaintiffs in their response."[1] Ruling at 6.

Distributors' Interrogatory No. 23 and Pharmacy Defendants' Interrogatory No. 7 asked Plaintiffs to identify the pharmacy orders they allege were "suspicious" and to articulate the criteria used to identify such orders. Distributors and Pharmacy Defendants need this information now, not later, so they can take measures needed to prepare their defenses, including pursuing appropriate discovery regarding the legitimacy of the challenged orders. Special

---

[1] Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., McKesson Corporation, Anda, Inc., and H.D. Smith, LLC ("Distributors") and Walgreens, Rite Aid of Maryland, CVS, and Walmart ("Pharmacy Defendants") make this Objection pursuant to Federal Rule of Civil Procedure 53(f)(2) and Paragraph II.D of this Court's Appointment Order, ECF No. 69 (Jan. 11, 2018).

Master Cohen therefore correctly ordered Plaintiffs to respond to the interrogatories (in a slightly modified form).

The Special Master's ruling also stated that Plaintiffs' answers "do[] not limit their experts from using different criteria to identify suspicious orders, and therefore from concluding that there exist suspicious orders in addition to those identified by plaintiffs in their response." Ruling at 6. This proviso has the unintended consequence of undercutting the ruling. If Plaintiffs' experts may use different criteria to identify different "suspicious" orders in February 2019, after the close of fact discovery, then any discovery or other preparation Defendants undertake now—which will be time-consuming, burdensome and expensive—may be rendered incomplete or pointless in whole or in part.

The proviso, by its nature, also invites gamesmanship. If the experts may substitute a different answer based on different criteria later, then Plaintiffs have an incentive now to over-identify suspicious orders, or identify the wrong orders, through a method they have no real intent to use at trial. This is not mere speculation. Indeed, in the answers given to Interrogatory Number 23 pursuant to the Ruling, Plaintiffs have provided meaningless information. Plaintiffs have identified five sets of general criteria which they contend could potentially be used for identifying suspicious orders. Then they have taken one set and derived three "methods" from it for actually identifying suspicious orders, each of which yields vastly different results. Under Method 1, for example, Plaintiffs assert that ▇ of the total shipped orders of Oxycodone within Cleveland by one distributor were suspicious; but under Method 3, Plaintiffs assert that ▇ of the total shipped orders of the *same* drug, by the *same* distributor, in the *same* geographic area were suspicious. In other words, Plaintiffs allege that either ▇ or ▇ of that

2

distributor's Oxycodone orders were suspicious.[2] That is about as helpful as answering that the number of suspicious orders was "a little" or "a lot."

## BACKGROUND

Distributor Defendants' Interrogatory No. 23 asked Plaintiffs to identify the suspicious orders they believe that Distributors shipped:

> Identify each Suspicious Order that you believe was shipped to Your geographic area by a Distributor Defendant during the time period for which you seek damages in this lawsuit. For each order, identify the date the order was shipped, the medication shipped, the number of dosage units shipped, the number of dosage units that you contend would have been permissible to ship, the reason you believe the order was suspicious, the Distributor Defendant that shipped the allegedly Suspicious Order, and the person or entity that placed the order.[3]

The Pharmacy Defendants' Interrogatory 7 sought similar information:

> Identify all Suspicious Orders for Prescription Opioids shipped by any National Retail Pharmacy Defendant in Your geographic area during the Relevant Time Period, including for each the name and location of the pharmacy that placed the order, the distributor to whom it was placed, the respective dates that it was placed and shipped, the manufacturer, name and amount of the medication that was ordered and shipped, and the reason(s) why the order was suspicious.[4]

---

[2] Method 2 alleges that ▮▮▮▮ of these same orders were suspicious. Defendants intend to take appropriate action to address these evasive answers and will raise the matter with Special Master Cohen as necessary.

[3] Interrogatory No. 23, Distributor Defendants' 4th Set of Interrogatories to Plaintiffs (Aug. 1, 2018) at 3 (Ex. A).

[4] Interrogatory No. 7, Pharmacy Defendants' 1st Set of Interrogatories to Plaintiffs (June 21, 2018) at 4 (Ex. B).

Plaintiffs initially provided no substantive response to Interrogatory No. 23. Only Cuyahoga and Summit Counties provided information responsive to Interrogatory No. 7, and they merely listed high-dispensing pharmacies and failed to identify suspicious orders.[5]

After efforts to meet and confer failed, the Pharmacy Defendants moved to compel on September 24.[6] Distributors filed a supporting letter-brief on October 4.[7] Plaintiffs did not deny that they could identify suspicious orders; rather, they claimed that they should be permitted to avoid doing so until expert reports are due. As Distributors explained, however, the identification of "suspicious" orders is a starting point for further critical discovery:

> The identification of allegedly suspicious orders will be the springboard for discovery by Distributor Defendants. That discovery will be of at least three types: (1) discovery from the pharmacies that placed the allegedly suspicious orders to show that the orders were not, in fact, suspicious; (2) discovery from the DEA and other regulators to show that they would not have acted even had the order been reported; and (3) discovery to show that the order, even if "suspicious" per certain factors identified in the regulation, cannot be traced to diversion that harmed Plaintiffs.[8]

For this reason, Distributors argued that, "[u]nless Plaintiffs are required to identify all orders ... that are at issue in this case *now*, ... Distributor Defendants will be denied a fair opportunity to defend against Plaintiffs' claims."[9]

In his Ruling, Special Master Cohen noted that "(1) plaintiffs have analyzed the ARCOS data and, to a large degree, identified orders they would contend at trial are suspicious; and

---

[5] 2018.09.24 Letter from K. Stoffelmayr to Special Master Cohen at 3 (Ex. C).

[6] *See id.* at 3–4.

[7] *See* 2018.10.04 Letter from E. Mainigi to Special Master Cohen (Ex. D).

[8] *Id.* at 1.

[9] *Id.* at 2–3.

4

(2) they can produce this information to defendants."[10] This determination meant that answers were long overdue. Special Master Cohen therefore ordered Plaintiffs to answer an interrogatory of his own drafting that combined and slightly modified Interrogatory Nos. 23 and 7:

> Identify each Suspicious Order for Prescription Opioids that you contend was shipped to Your geographic area by any National Retail Pharmacy Defendant or Distributor Defendant during the Relevant Time Period. For each order, identify the date the order was shipped, the manufacturer, name, and amount of the medication that was shipped, the name of the defendant that shipped the order, and the name and location of the person or entity that placed the order. Furthermore, explain the criteria you used to identify these Suspicious Orders.

Ruling at 6. But the Special Master added a proviso that created an unintended escape hatch for Plaintiffs to avoid their obligations: "plaintiffs' answer to this contention interrogatory does not limit their experts from using different criteria to identify suspicious orders, and therefore from concluding that there exist suspicious orders in addition to those identified by plaintiffs in their response." *Id.*

Plaintiffs responded to the revised interrogatory on October 31 by identifying five sets of criteria for "suspicious" orders.[11] In Exhibit A to Plaintiffs' Response, which purported to identify the orders they contend were suspicious, Plaintiffs selected one set of criteria and used those criteria to fashion three methodologies, each of which produced strikingly different results.[12] Depending on the methodology, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Plaintiffs applied the same methodologies and produced a similar

---

[10] Ruling at 5–6.
[11] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
[12] *Id.*

range of results for the Pharmacy Defendants. Depending on the methodology, ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## ARGUMENT

### THE COURT SHOULD REMOVE THE PROVISO FROM THE RULING.

Distributors' Interrogatory No. 23 and Pharmacy Defendants' Interrogatory No. 7 are important for "narrowing and sharpening the issues."[13] To mount a defense, Distributors and Pharmacy Defendants must be able to take factual discovery regarding the allegedly suspicious orders that will be at issue *at trial*. By allowing Plaintiffs to identify different orders through their experts in February 2019, the Ruling undermines Distributors' and Pharmacy Defendants' ability to focus their discovery efforts on the suspicious orders at issue. Distributors and Pharmacy Defendants cannot know whether they are aiming at the duck or a decoy.

Discovery along the following tracks is important to Distributors' defense:

**1. *Are the Orders In Fact Suspicious?*** DEA recognizes that with the current guidance on reporting of "suspicious orders" not all, or even most, orders reported as "suspicious" will in fact prove to be indicative of diversion. Distributors and Pharmacy Defendants are entitled to pursue discovery that will show that to be true for the orders identified by Plaintiffs.

**2. *If the Orders Had Been Reported, Would Regulators Have Taken Action?*** Even assuming that Plaintiffs could meet their burden of proving that a particular order was suspicious, it would remain for Plaintiffs also to prove that the order caused them harm. Distributors and Pharmacy Defendants are entitled to pursue discovery that will show that, even had they reported the order as suspicious, regulators would not have taken any action, breaking

---

[13] *See* Ex. D; Fed. R. Civ. P. 33 advisory committee's note (1970 Amendment, subd. (b)).

6

the chain of causation. It has been the experience of Distributors that even when they terminate a customer for suspicious-ordering activity, DEA does not revoke the pharmacy's registration.

**3. *Were the Allegedly Suspicious Orders Diverted?*** Even if Plaintiffs could prove that an order was "suspicious," suspicion does not equal diversion; Plaintiffs would also have to prove that the order was diverted and that such diversion factually and proximately caused them legally cognizable damages. Distributors and Pharmacy Defendants are entitled to pursue discovery that will show that the pharmacies Plaintiffs accuse were well-run and that their pharmacists performed their obligations diligently and with appropriate safeguards to prevent diversion.

This discovery is vital to Distributors' and Pharmacy Defendants' cases. But Plaintiffs have identified five sets of criteria for identifying suspicious orders, selected one (for now), and purportedly applied those criteria to generate three lists of allegedly suspicious orders.[14] And the Ruling's proviso permits them to change the criteria, abandon the current lists of allegedly suspicious orders, and produce later (after the close of fact discovery) a different list of orders that will be at issue at trial. It is bad enough that Plaintiffs have produced three lists—lists that range from identifying few orders to identifying almost all. But it does Distributors and Pharmacy Defendants no good to focus on even the current lists when Plaintiffs are perfectly free to rely, without notice and after discovery closes, on an entirely different list(s).

In sum, Plaintiffs have served responses that provide no reliable information that would allow Distributors and Pharmacy Defendants to do the analysis or take the discovery they need. And the proviso creates the risk that some or all of the discovery and effort that Distributors and

---

[14] Plaintiffs should be barred from introducing any evidence at trial that relies on a process for determining suspicious orders that was not applied and identified in the existing interrogatory responses.

7

Pharmacy Defendants might pursue now will be wasted and that the real discovery/work can begin only when Plaintiffs submit expert reports, jeopardizing the Court's trial date. Distributors and Pharmacy Defendants submit that Special Master Cohen was correct to order Plaintiffs to answer the revised interrogatory and that he erred only by including the proviso. Certainly, Plaintiffs are not forever bound to the criteria and orders they identify. If new information comes to their attention, the Rules permit (indeed, obligate) Plaintiffs to amend their answers. *See, e.g., Pulliam v. Continental Cas. Co.*, 2003 WL 1085939, at *5 (D.D.C. Jan. 24, 2003) (ordering party to "respond to the question with the information it currently has" and noting that it "may supplement its responses as appropriate" as discovery progresses); Fed. R. Civ. P. 26(e). The problem with the proviso is that it allows Plaintiffs to use new criteria and provide a different list—whether or not new information comes to their attention. Thus, the proviso gives Plaintiffs an automatic "out."

For the above reasons, Distributors and Pharmacy Defendants request that the Court enter an order amending Discovery Ruling 7 by striking the statement, "The Special Master adds that plaintiffs' answer to this contention interrogatory does not limit their experts from using different criteria to identify suspicious orders, and therefore from concluding that there exist suspicious orders in addition to those identified by plaintiffs in their response."

Dated: November 13, 2018

Respectfully submitted,

/s/ *Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

/s/ *Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
EMainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

/s/ *Geoffrey Hobart*
Geoffrey Hobart
Mark Lynch
Christian Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*

/s/ *James W. Matthews*
James W. Matthews
Katy E. Koski
Redi Kasollja
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
rkasollja@foley.com

*Counsel for Anda, Inc.*

(counsel continued on next page)

9

/s/ William E. Padgett
William E. Padgett (IN No. 18819-49)
Kathleen Matsoukas (IN No. 31833-49)
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 236-1313
Fax: (317) 231-7433
william.padgett@btlaw.com
kmatsoukas@btlaw.com

*Counsel for H.D. Smith, LLC f/k/a/ H.D. Smith Wholesale Drug Co.*

/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW, Ste. 1000
Washington, DC 20036
Tel: (202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Indiana, L.L.C. and CVS Rx Services, Inc.*

/s/ Matthew W. Brewer
Matthew W. Brewer
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
54 West Hubbard Street, Ste. 300
Chicago, IL 60654
Tel: (312) 494-4400
matthew.brewer@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co., Inc.*

/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
**JONES DAY**
77 West Wacker
Chicago, IL 60601
Tel: (312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Elisa P. McEnroe (with consent)
Elisa P. McEnroe
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
elisa.mcenroe@morganlewis.com

Kelly A. Moore
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
kelly.moore@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc.*

## CERTIFICATE OF SERVICE

I, J. Philip Calabrese, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

<i>/s/ J. Philip Calabrese</i><br>
J. Philip Calabrese