UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*TRACK ONE CASES* | MDL No. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**WALGREENS' OBJECTION TO DISCOVERY RULING NO. 9 REGARDING THE CUSTODIAL FILE OF FORMER EXECUTIVE KERMIT CRAWFORD**

**INTRODUCTION**

Walgreens has produced 120,000 documents—580,000 pages—more documents than all but two other distributors have produced in response to Plaintiffs' discovery requests. Yet Plaintiffs continued to demand much more, including documents from Kermit Crawford, Walgreens' former president of the pharmacy, health, and wellness division and now Chief Operating Officer at Rite Aid. On October 29, Discovery Ruling No. 9 ordered Walgreens to produce documents not just from Mr. Crawford but also from 13 other custodians, adding approximately 150,000 documents to Walgreens' review burden right before Walgreens was slated to substantially complete its document productions on November 9 under CMO 7.

Mr. Crawford's files are cumulative or duplicative of the files of at least six other witnesses. Discovery Ruling No. 9 (Doc. 1065) ignores that fact. It provides no basis for ordering Walgreens to incur the burden of producing Mr. Crawford's documents on an expedited basis at the tail end of document discovery. The ruling will serve no ends other than Plaintiffs' goals of burdening Walgreens and delaying the schedule. Walgreens therefore seeks relief under Federal Rule of Civil Procedure 53(f). Ruling No. 9 should be overruled to the extent that it requires Walgreens to produce documents from Mr. Crawford's files.

**BACKGROUND**

Walgreens has never manufactured or marketed opioids. Plaintiffs' claims against Walgreens relate solely to its distribution of opioids to its own pharmacies, and Walgreens stopped all such distribution into the Track One jurisdictions five years ago. In light of these facts, there was never any reason to suspect that Walgreens would have a large number of document custodians in these cases, at least not compared to Defendants that continue to manufacture, market, and distribute opioids to this day.

1

Plaintiffs served document requests on Walgreens on May 22, 2018. By mid-September, Walgreens had identified 21 custodians and produced a substantial number of documents from their files. Between September 28 and October 1, just one month before Walgreens' production deadline, Plaintiffs requested 26 additional custodians—more than doubling the number of custodial files Walgreens had already collected. On October 18, weeks after the deadline to do so, *see* Doc. 941 at 2, Plaintiffs requested still more custodians, without explaining why they should be added or why they could not have been requested sooner.[1]

Despite the fact that Plaintiffs' requests came late and were disproportionate to the needs of these cases, Walgreens agreed to collect nine more custodians' files, including witnesses from each area of Walgreens that Plaintiffs demanded: the Pharmaceutical Integrity group responsible for Walgreens' controlled substance order-monitoring program, Walgreens' Ohio distribution center, its loss prevention group, its Ohio pharmacy operations, and its audit function.

This was not enough for Plaintiffs. As Walgreens was trying to negotiate a final compromise that would have added five more custodians—for a total of 35—Plaintiffs preemptively went to the Special Master. Instead of recognizing the compromise that Walgreens attempted to make, the Special Master ordered Walgreens to produce **both** the files offered as a compromise **and** Mr. Crawford's files, rewarding Plaintiffs for cutting short the parties' negotiations and rushing to seek relief. *See* Doc. 1065 at 1-2.[2]

---

[1] Plaintiffs asserted that their belated requests were based on new information from Walgreens. But Walgreens' recent productions did not reveal any of Plaintiffs' late-requested custodians for the first time. For example, Plaintiffs asked for Jeff Berkowitz on October 18, but information about his role, going back to 2012, is publicly available on Walgreens' website. *See* https://investor.walgreensbootsalliance.com/leadership-team/jeffrey-berkowitz.

[2] The Special Master also ruled that Plaintiffs could later request additional production from "any custodian for any defendant, if further discovery reveals a very high likelihood of additional nonduplicative discovery," but "the burden [for such additional discovery] is very high, and extremely high for in-house counsel." *Id.*

2

**ARGUMENT**

The scope of discovery must be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b); *Waters v. Drake*, 222 F. Supp. 3d 582, 605 (S.D. Ohio 2016) ("Amended Rule 26(b) brings an end to the days of nearly unlimited discovery and 'encourages judges to be more aggressive in identifying and discouraging discovery overuse'"). "Relevancy alone is, therefore, no longer sufficient to obtain discovery in the absence of proportionality." *Crystal Lakes v. Bath & Body Works, LLC*, 2018 WL 533915, *2 (E.D. Cal. Jan. 23, 2018). The Court "***must*** limit" discovery that is "unreasonably cumulative or ***duplicative***." Fed. R. Civ. P. 26(b)(2)(C) (emphases added).

Plaintiffs have asserted they want Mr. Crawford's files because of his involvement with anti-diversion policies and responses to DEA actions, principally following a regulatory action that settled in 2013. But Mr. Crawford was not in a regulatory compliance role at Walgreens. His role was operational. He oversaw Walgreens' PBM, and then its pharmacy, health and wellness division. And he left Walgreens in 2014.[3]

Walgreens' anti-diversion policies and responses to DEA actions are better covered by document custodians more deeply involved in these issues, such as the members of Walgreens' Pharmaceutical Integrity team that has been responsible for Walgreens' suspicious-order monitoring policies since 2012. Plaintiffs have deposed three members of that team and intend to depose others. But instead of focusing on their knowledge of Walgreens' post-2013 policies and procedures in response to DEA actions, Plaintiffs argued that post-2013 policies were unimportant because, by then, Walgreens was winding down its distribution operations.

---

[3] *See* https://investor.walgreensbootsalliance.com/leadership-team/kermit-crawford.

3

Walgreens has also produced documents from several other custodians with related knowledge, including Rex Swords, vice president for pharmacy and retail operations; Mike Bleser, vice president responsible for pharmaceutical purchasing; Denman Murray and Barb Martin, who work in inventory management and handle orders from Walgreens' pharmacies for prescription opioids; and John Merritello, Steve Bamberg, and Wayne Bancroft, all of whom were involved in developing Walgreens' systems for monitoring suspicious orders.

These custodians' documents cover the issues in these cases. Mr. Crawford was president of Walgreens' pharmacy, health, and wellness division, with a wide scope of responsibilities that go far beyond the issues in these cases. Before that, he was responsible for Walgreens' PBM, an area of the company having ***nothing*** to do with these cases. There is no reason to think that Mr. Crawford's files would contain relevant documents that are not cumulative or duplicative of the documents already being produced from custodians who were much more closely involved with the issues. Walgreens should not be required to undertake such an unnecessary document review project.

## CONCLUSION

Discovery Ruling No. 9 should be overruled to the extent that it requires review and production from Kermit Crawford's custodial file.

Dated:  November 19, 2018             Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street, Ste. 300
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlit-beck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

### CERTIFICATE OF SERVICE

      I hereby certify that this 19th day of November, 2018, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

      /s/ Kaspar J. Stoffelmayr
      Kaspar J. Stoffelmayr

*Counsel for Walgreen Co. and Walgreen Eastern Co.*