# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>**All cases**<br><br>ALLERGAN FINANCE, LLC<br><br>                Third Party Plaintiff,<br><br>            v.<br><br>PFIZER INC. and KING PHARMACEUTICALS, INC., n/k/a KING PHARMACEUTICALS LLC,<br><br>                Third Party Defendants. | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PFIZER INC. AND KING PHARMACEUTICALS LLC'S MOTION TO DISMISS ALLERGAN FINANCE, LLC'S THIRD PARTY COMPLAINT**

---

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................... 4

I.   Allergan's Claim Of Hypothetical Jurisdiction In The Southern District of New
     York Fails As A Matter of Law ............................................................................ 4

II.  The Multidistrict Litigation Transfer Statute Does Not Provide Any Basis For
     Allergan's Venue Claims ....................................................................................... 7

III. *Atlantic Marine* Applies And Mandates Dismissal Of Allergan's Third Party
     Complaint Under The Doctrine Of *Forum Non Conveniens* ............................... 11

     A.   *Atlantic Marine* Is Directly Applicable ..................................................... 11

     B.   Allergan's Complaint Should Be Dismissed Because Allergan Has Failed
          To Show That Public Interest Factors Overwhelmingly Favor
          Disregarding The Forum Selection Clause ................................................. 12

IV.  Allergan Has No Basis At All To Justify Filing Its Indemnity Dispute In Ohio For
     All Cases Arising Outside Of New York ............................................................. 19

CONCLUSION ............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*,
    512 F.3d 800 (6th Cir. 2008) .................................................................................. 7

*Ashley Furniture v. Packaging Corp. of Am.*,
    275 F. Supp. 3d 957 (W.D. Wis. 2017) ................................................................ 16

*Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
    571 U.S. 49 (2013) .................................................................................. 1, 11, 12, 13

*Carnegie-Mellon U. v. Cohill*,
    484 U.S. 343 (1988) ............................................................................................... 6

*City of Dayton v. A.R. Envtl., Inc.*,
    No. 3:11-cv-383, 2012 WL 4108017 (S.D. Ohio Sept. 18, 2012) .......................... 7

*Global Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*,
    No. 16-cv-00920, 2016 WL 4259126 (N.D. Cal. Aug. 12, 2016) ........................ 18

*Grisham v. Guarantee Tr. Life Ins. Co.*,
    No. 1:16-cv-283 ACL, 2018 WL 1725801 (E.D. Mo. Apr. 9, 2018) .................... 18

*In re Cement and Concrete Antitrust Litig.*,
    465 F. Supp. 1299 (M.D.L. 1979) .......................................................................... 8

*In re Disposable Contact Lens Antitrust Litigation*,
    109 F.Supp 3d 1369 (M.D.L. 2015) ..................................................................... 10

*In re Park West Galleries*,
    655 F. Supp. 2d 1378 (M.D.L. 2009) ................................................................... 10

*In re Qualcomm Antitrust Litigation*,
    292 F. Supp. 3d 948 (N.D. Cal. 2017) ................................................................... 9

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ......................................................................... 11, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 13-cv-3349, 2014 WL 1477748 (N.D. Cal. Apr. 14, 2014) ........................... 17

*In re Wells Fargo Residential Mortg. Lending Discrimination Lit.*,
    No. 08-cv-1930, 2010 WL 1459741 (N.D. Cal. Apr. 8, 2010) ............................... 9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-md-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........... 4, 9

*Jack Winter, Inc. v. Koratron Co.*,
    326 F. Supp. 121 (N.D. Cal. 1971) .......................................................................... 9

*Mystic, Inc. Kroy LLC v. Gen. Data Co., Inc.*,
    No. 1:16-cv-147, 2016 WL 5076079 (N.D. Ohio Sept. 20, 2016) ......................................... 18

*Ohio Savings Bank v. Manhattan Mortgage Company*,
    No. 1:04-cv-128, 2006 WL 2045891 (N.D. Ohio July 20, 2006).......................................... 18

Op. and Order, *State of Montana v. Purdue Pharma et al.*,
    No. 1:18-OP-45604, MDL No. 2804 (Dkt. No. 899) .............................................................. 9

*Pinkus v. Sirius XM Radio Inc.*,
    255 F. Supp. 3d 747 (N.D. Ill. 2017) ............................................................................. 13, 18

*United States for Use of D.D.S. Indus., Inc. v. Nauset Constr. Corp.*,
    No. 16-cv-12009-NMG, 2018 WL 5303036 (D. Mass. Oct. 25, 2018)................................. 18

*Wahl v. General Elec. Co.*,
    983 F. Supp. 2d 937 (M.D. Tenn. 2013), *aff'd*, 786 F.3d 491 (6th Cir. 2015) ...................... 7

*Wong v. PartyGaming Ltd.*,
    589 F.3d 821 (6th Cir. 2009) ......................................................................................... 12

**Statutes**

28 U.S.C. § 1367............................................................................................................... 6, 12

28 U.S.C. § 1404....................................................................................................... 8, 11, 18

28 U.S.C. § 1406................................................................................................................... 8

28 U.S.C. § 1407.......................................................................................................... passim

**Other Authorities**

Case Management Order One, MDL No. 2804 (Dkt. 232) ..................................................... 3, 5, 8

Fed. R. Civ. P. 12 ................................................................................................................. 12

Fed. R. Civ. P. 14 ........................................................................................................ 3, 6, 7, 12

Third Party Defendants Pfizer and King respectfully submit this reply memorandum of law in further support of Pfizer's motion to dismiss the Third Party Complaint filed by Allergan.[1]

## PRELIMINARY STATEMENT

In direct contravention of the parties' valid, enforceable forum selection clause—which requires that all disputes arising under the Asset Purchase Agreement between Allergan and Pfizer be initiated and tried in state or federal courts within the Southern District of New York—Allergan filed a self-styled Third Party Complaint against Pfizer in this Court that seeks indemnification in relation to "All cases" in this MDL.  *See* Compl. at p. 1.  Allergan does not dispute the validity of the forum selection clause, nor does Allergan contend that its complaint complies with the forum selection clause.  Instead, Allergan's Opposition presents a hodgepodge of convoluted, counter-factual arguments as to why its case is properly before this Court notwithstanding the forum selection clause.  None of these arguments withstand scrutiny.

The Supreme Court has made clear that where, as here, a party files suit in a forum that violates a valid, enforceable forum selection clause and the proper forum under the clause is a state court, the complaint must be dismissed pursuant to the doctrine of *forum non conveniens*, unless the party seeking to set aside the forum selection clause can meet the heavy burden of showing that certain specific public interest factors "overwhelmingly disfavor" dismissal.  *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 67 (2013).  Allergan fails to make such a showing.

---

[1]    Capitalized terms not otherwise defined herein have the same meaning as set forth in the Memorandum of Law in Support of Pfizer Inc. and King Pharmaceuticals LLC's Motion to Dismiss Allergan Finance, LLC's Third-Party Complaint (the "Motion" or "Mot."").  Allergan's Memorandum of Law in Opposition to Pfizer Inc.'s and King Pharmaceuticals LLC's Motion to Dismiss is referenced herein as the "Opposition" or "Opp."

Allergan does not come close to meeting its heavy burden of establishing that public interest considerations overwhelmingly disfavor dismissal.  In fact, Allergan does not even address *any* of the specific factors set forth in *Atlantic Marine*, let alone attempt to rebut the factor-specific analysis presented in Pfizer's Motion.  Instead, Allergan tries to avoid grappling with *Atlantic Marine* by arguing that it does not apply to MDL cases, but Allergan's own cases state the opposite, and there is no support for this proposition.  Allergan also asserts, in a conclusory fashion, that the forum selection clause should be ignored because litigating its indemnification claims in the MDL would purportedly be more efficient and facilitate the resolution of this multidistrict opioid litigation.  To the contrary, importing Allergan's extraneous indemnification claims against Pfizer, which share few factual or legal commonalities with the underlying cases in the MDL, would generate unnecessary complications and distractions that would detract from the efficient and effective administration of this MDL.  Because Allergan has failed to establish an "overwhelming" rationale for why its indemnification claims should not be litigated in the parties' agreed-upon forum, the Third Party Complaint should be dismissed.

In its Opposition, Allergan raises a number of additional arguments based on reality-defying scenarios in an apparent attempt to obscure the basic facts and law requiring dismissal.  Allergan asserts that this case is properly before the MDL because, had two cases originally filed in the Southern District of New York not been transferred here for pretrial purposes, Allergan *could have* filed a Rule 14 third party complaint in the Southern District of New York in those two cases.  Allergan reasons next that, because those two cases were transferred to this Court, Allergan had no choice but to file directly in this Court under this Court's Case Management Order.  Allergan's arguments fail for multiple reasons.

2

First, the simple and undeniable fact is that Allergan filed its self-styled Third Party Complaint relating to "All cases" in this MDL in the Northern District of Ohio. Thus, whatever Allergan might have been able to do had there been no MDL transfer is irrelevant and does not allow it to renege on the parties' agreement. Allergan cites no cases supporting the proposition that MDL transfer allows it to treat this case as if it were pending in SDNY or otherwise obviate the parties' agreed choice of exclusive venue.

Second, even if Allergan's point about hypothetical jurisdiction in the Southern District of New York were relevant, Allergan still could not have filed the Third Party Complaint in the SDNY because the complaint seeks indemnity in connection with all of the "thousands" of other cases brought by different plaintiffs in this MDL. Any such effort would contravene Rule 14 of the Federal Rules of Civil Procedure, which governs third party practice and allows a defendant to file a third party complaint against a third party defendant only as to prospective liability arising from claims actually asserted in the action against the defendant-third party plaintiff. Fed. R. Civ. P. 14(a).

Third, nothing in the Case Management Order requires Allergan to file third party claims in this MDL rather than in New York state court, where it is indisputable that all of its indemnity claims can be resolved.

Allergan also contends that it properly filed its Third Party Complaint in this Court because, had Allergan instead filed in the SDNY, the parties' forum selection clause purportedly would not have prevented the Judicial Panel on Multidistrict Litigation (the "JPML" or the "Panel") from transferring the complaint to the MDL pursuant to 28 U.S.C. § 1407. Of course, whether the JPML *would have* transferred Allergan's hypothetical third party complaint to the MDL is irrelevant because Allergan did not file its complaint in another court and seek

transfer, but instead opted to file the Third Party Complaint directly in this MDL.  But even if Allergan is correct that the Panel would have transferred Allergan's hypothetical complaint to the MDL notwithstanding the forum selection clause (which it would not have), this argument overlooks the basic fact that it is not the JPML's role to adjudicate disputes over forum selection clauses.  Instead, the Panel's statutorily mandated task is to consider whether transfer would be appropriate under the particular standards set forth in Section 1407.  As such, had the Panel transferred Allergan's hypothetical complaint to this MDL, Allergan would still have to meet its heavy burden of demonstrating that the forum selection clause should be set aside.  That is a question that would still fall on this Court (as the transferee court) to decide.  *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK, 2017 WL 3727318, at *52 (N.D. Cal. Aug. 30, 2017).  And absent such a showing, a transferee court would be compelled either to dismiss or, where there is jurisdiction in the originating court, to transfer the case back to the originating court.  *See* pp. 8-9, *infra*.

The parties to this litigation bargained for a forum selection clause that requires that any litigation arising out of the Agreement be initiated and tried in New York, and Allergan has not provided any reason—let alone an overwhelming one—why the parties' bargain should be set aside.  Accordingly, the Third Party Complaint should be dismissed.

## ARGUMENT

### I.  Allergan's Claim Of Hypothetical Jurisdiction In The Southern District of New York Fails As A Matter of Law

Allergan's hypothetical and counter-factual arguments with respect to the two cases in this MDL originally filed in the Southern District of New York do nothing to establish that its indemnification claims are properly before this Court.

Specifically, Allergan contends that while it "could have filed its third-party complaint in [SDNY]," because the two SDNY cases were transferred to the MDL, Allergan "appropriately filed its third-party complaint [in the MDL] (and could not have filed it anywhere else)." Opp. at 2; *see also id.* at 5. Allergan is plainly incorrect that it could not have pursued its indemnification claims anywhere but in the MDL. To the contrary, Allergan neglects to mention that, if it wished to abide by the parties' forum selection clause, it could have filed its state law indemnification claims in New York state court. Allergan offers no explanation for why that would not have been possible.

In an effort to manufacture an excuse for dealing in this hypothetical world rather than current reality, Allergan contends that it "was required to file . . . in this Court" by this Court's Case Management Order. Opp. at 5. This is wrong on several counts. This Court's Case Management Order *permits*, but does not *require*, a "Plaintiff" whose case would be subject to transfer to this MDL to file directly in this court. Case Management Order One, MDL No. 2804 (Dkt. 232) ¶ 6(a). And Allergan is not a Plaintiff as that term is used in the Case Management Order (referring to personal injury claimants). *Id.* ¶ 2.

The two SDNY actions do not allege pre-2009 conduct for which Allergan claims Pfizer and King are allegedly obligated to indemnify Allergan under the Asset Purchase Agreement, belying Allergan's claim that supplemental jurisdiction does or would exist in the Southern District of New York as to Allergan's hypothetical third party complaint. The fleeting sentences cited by Allergan from the *Klodzinski v. Purdue Pharma L.P.*, No. 18-op-45938 (S.D.N.Y.) and *Laborers 17 Health Benefit Fund v. Purdue Pharma, L.P.,* No. 18-op-45072 (S.D.N.Y.) complaints (*see* Opp. at 4-5) merely describe documents that plaintiffs allege Allergan (not Pfizer or King) used to market Kadian *after* the Closing Date. *See, e.g.*, Compl.

¶ 71, *Klodzinski v. Purdue Pharma L.P.*, No. 18-op-45938 (S.D.N.Y.) ("[B]ased on Actavis's acquisition of its predecessor's marketing materials along with the rights to Kadian, Actavis continued to use this brochure in 2009 and beyond."). Even if pre-2009 claims were asserted, any potential liability stemming from pre-2009 conduct is foreclosed by the relevant New York and federal statutes of limitations, the longest of which is six years. Indeed, Allergan makes that point itself in motions to dismiss filed in this MDL. *See, e.g.,* Mem. of Law in Support of Mfr. Defs.' Joint Mot. to Dismiss Pl.'s Second Am. Compl. at 53-54, *County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, No. 18-op-45090 (Dkt. 499-1). Because the complaints in *Klodzinski* and *Laborers 17* were filed in 2018 and 2017, respectively, any potential liability for pre-2009 conduct is time-barred.

Even assuming *arguendo* that *Klodzinski* and *Laborers 17* do involve pre-Closing allegations that may trigger Allergan's alleged entitlement to indemnification, that would do nothing to confer either the Southern District of New York or this Court with subject matter jurisdiction over Allergan's indemnification claims with respect to all of the hundreds of cases in this MDL. *See* 28 U.S.C. § 1367; *Carnegie-Mellon U. v. Cohill*, 484 U.S. 343, 349 (1988) (supplemental jurisdiction over state-law claims requires a "common nucleus of operative fact" with claims for which there is a basis for federal jurisdiction). As pled in its own Third Party Complaint, Allergan's indemnity claims arise from and relate to each of the thousands of underlying MDL complaints pending in this Court, which are encompassed by Allergan's Third Party Complaint. As a basic procedural matter, under Rule 14, Allergan may only assert claims against "a nonparty who is or may be liable to it for all or part of the claim against it," Fed. R. Civ. P. 14(a), which would preclude Allergan from claiming indemnity in SDNY other than for those damages alleged in the *Klodzinski* or *Laborers 17* complaints. *See City of Dayton v. A.R.*

*Envtl., Inc.*, No. 3:11-cv-383, 2012 WL 4108017, at *2 (S.D. Ohio Sept. 18, 2012) (citing *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008)) ("Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim.").[2]  The liability alleged in actions elsewhere throughout the country is not dependent on the outcome of the claims alleged in *Klodzinski* and *Laborers 17* and thus could not properly be included in a third party complaint in either of the two Southern District of New York actions.

## II.   The Multidistrict Litigation Transfer Statute Does Not Provide Any Basis For Allergan's Venue Claims

Continuing its hypothetical explorations, Allergan argues next that had it filed its complaint in the Southern District of New York, the action would have been transferred here by the JPML notwithstanding the parties' agreement to exclusive venue in New York, asserting that the APA's forum selection clause "does not preclude the transfer of this action to this Court *if Allergan had filed it in New York*."  Opp. at 5 (emphasis added).  Of course, Allergan did not file its Third Party Complaint in the SDNY and seek transfer, but instead filed directly in the MDL, so the MDL transfer statute (28 U.S.C. § 1407) and the related case law discussed in Allergan's Opposition are irrelevant.  Where, as here, a party files an action directly in an MDL (especially a third party plaintiff), the JPML—which is charged with adjudicating transfers to multidistrict litigations under Section 1407—plays no role whatsoever.  *See Wahl v. General Elec. Co.*, 983 F. Supp. 2d 937, 940 (M.D. Tenn. 2013), *aff'd*, 786 F.3d 491 (6th Cir. 2015) (explaining procedures

---

[2]   Rule 14 also required Allergan to obtain, by motion, leave of this Court before filing a third party complaint more than 14 days after serving its original answer.  Fed. R. Civ. P. 14(a) ("But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.").  Allergan apparently disregarded this rule.

for direct filing in a multidistrict litigation); Case Management Order One, MDL No. 2804 (Dkt. 232) ¶ 6(a) (providing that, at the appropriate time, the Court may transfer cases filed directly in the MDL to the proper district court pursuant to 28 U.S.C. §1404(a) or §1406).  In any event, Allergan's arguments rest on a fundamental misunderstanding of the role of the JPML and mischaracterizations of the case law upon which Allergan relies.

Allergan cites various cases it characterizes as supporting its claim that the JPML could have transferred the Third Party Complaint to the MDL notwithstanding the parties' forum selection clause.  *See* Opp. at 5-6.  This precedent from the JPML, however, is inapposite, as it concerns the authority of, and standards applied by, the Panel when it considers transferring actions originating in other districts for consolidation in a multidistrict litigation.  To be clear, none of Allergan's cases stand for or provide support for the proposition that a third party plaintiff such as Allergan is entitled to directly file and litigate a complaint in an MDL in contravention of a valid and enforceable forum selection clause that requires a different forum.

Furthermore, Allergan misunderstands the role of the JPML versus the role of a transferee court in determining whether a forum selection clause should be enforced.  Pursuant to 28 U.S.C. § 1407, "transfers shall be made by the [JPML] authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  Accordingly, the Panel must consider whether to transfer a case within the contours of these requirements, and is not in the same position as the transferee district court to consider many factors that may render transfer improper.  In fact, the Panel itself has recognized that it may transfer actions that may subsequently be dismissed by the transferee court.  *See In re Cement and Concrete Antitrust*

*Litig.*, 465 F. Supp. 1299, 1301 (M.D.L. 1979) ("These motions [to dismiss] can be presented to and decided by the transferee court following transfer.").

Even if Allergan had asserted its third party indemnification claims in SDNY in the first instance and the Panel had transferred those claims to the MDL, the forum selection clause would still be subject to enforcement by this Court.  Indeed, the Panel has transferred cases to this MDL that this Court subsequently determined should not be in the MDL.  *See, e.g.*, Op. and Order, *State of Montana v. Purdue Pharma et al.*, Case No. 1:18-OP-45604, MDL No. 2804 (Dkt. No. 899) (granting motion to remand to state court for lack of subject matter jurisdiction).[3]  Simply put, that the JPML has determined that a transfer is appropriate under Section 1407 does nothing to preclude the transferee court from dismissing an action pursuant to a forum selection clause.  *See, e.g.*, *In re Yahoo!*, 2017 WL 3727318, at *52; *Jack Winter, Inc. v. Koratron Co.*, 326 F. Supp. 121, 127 (N.D. Cal. 1971).

Even if Section 1407 transfer cases are appropriate to consider, the cases cited by Allergan also do not support the proposition that the JPML routinely disregards valid and enforceable forum selection clauses in making transfer decisions.  Allergan claims that in *In re Qualcomm Antitrust Litigation*, 292 F. Supp. 3d 948, 962 n.1 (N.D. Cal. 2017), rather than the action having been "excluded from the MDL because of a forum selection clause," the Panel "did exactly the opposite."  Opp. at 6.  But, as Allergan admits two sentences thereafter, the

---

[3]   In the same vein, while Allergan contends that the JPML would consider whether there are one or more common questions of fact between the Third Party Complaint and the underlying complaints in the MDL such that it would be efficient to coordinate or consolidate pretrial proceedings (Opp. at 6), courts overseeing multidistrict litigations have concluded that third party indemnification complaints like Allergan's do not share sufficiently common questions of fact to warrant inclusion in such litigation.  *See, e.g.*, *In re Wells Fargo Residential Mortg. Lending Discrimination Lit.*, No. 08-cv-1930, 2010 WL 1459741, at *2 (N.D. Cal. Apr. 8, 2010).

Panel did not do "exactly the opposite," as it *refused* to transfer the action in question, in part because of the forum selection clause.  The other cases Allergan cites are also distinguishable.  First and foremost, none of Allergan's cases involve the prospective transfer of a *third party* complaint to a multidistrict litigation.

In addition, the forum selection clause in the APA—which requires lawsuits stemming from the Agreement to be initiated and tried in state or federal courts within the Southern District of New York—is far broader than the forum selection clauses in any of the cases cited by Allergan.  For instance, in *In re Park West Galleries*, 655 F. Supp. 2d 1378, 1379 (M.D.L. 2009), the Panel declined to enforce the forum selection clause in part because "transfer is for pretrial purposes only, [and] our denial of this motion to vacate in no way precludes [defendant] from seeking enforcement of the forum selection clauses for purposes of trial."  This decision must be understood in the context of the forum selection clause at issue, which only required that the action be "litigated" in Florida.  *See* Def. Royal Caribbean Cruises Ltd.'s Mot. to Dismiss at 9, *Alleman v. Park West Galleries, Inc.*, No. 09-cv-12896 (Dkt. 11) (E.D. Mich. Oct. 29, 2009).  The forum selection clause in *Park West Galleries* specified nothing about where an action must be initiated; by contrast, the forum selection clause agreed to by Allergan and Pfizer specifically requires that all disputes arising under the Asset Purchase Agreement be initiated (and tried) in New York.

Finally, *In re Disposable Contact Lens Antitrust Litigation* is distinguishable because the defendant freely waived any right to seek enforcement of its forum selection clause at oral argument.  109 F.Supp 3d 1369, 1371 (M.D.L. 2015).  Here, the opposite is true—Pfizer has vigorously sought to enforce the parties' agreed-to forum selection clause at every step.

**III.**     ***Atlantic Marine* Applies And Mandates Dismissal Of Allergan's Third Party Complaint Under The Doctrine Of *Forum Non Conveniens***

    **A.**     ***Atlantic Marine* Is Directly Applicable**

Allergan is wrong that *Atlantic Marine*, 571 U.S. 49, is inapposite "[b]ecause the instant case concerns transfers under [28 U.S.C. § 1407] rather than transfers under [28 U.S.C. § 1404]."  Opp. at 7.  As an initial matter, this case does not concern transfer under Section 1407.  To the contrary, instead of following the procedural requirements of Section 1407 by filing its complaint in a district court outside of this MDL and then moving the JPML for an order transferring the action, Allergan has improperly attempted to circumvent the requirements of Section 1407 by filing in the MDL in the first instance.  Indeed, Allergan does not even attempt to explain how Section 1407 could be applicable in proceedings that are not before the JPML.

In addition, while Allergan relies on *In re Rolls Royce Corp.*, 775 F.3d 671, 682 (5th Cir. 2014), for the proposition that *Atlantic Marine* does not, "[s]trictly speaking," implicate Section 1407 transfer decisions, Allergan does not mention, much less grapple with, the Fifth Circuit's ultimate conclusion in the block-quoted paragraph Allergan cites (Opp. at 7): "Nonetheless, because Congress set similar considerations to guide treatment of transfer motions in both contexts, *we believe that* <u>*Atlantic Marine's*</u> *reasoning informs MDL practice*."  *Rolls Royce*, 775 F.3d 671 at 682 (emphasis added).

Allergan's Opposition is misguided for the further reason that Pfizer's Motion does not seek a change of venue pursuant to Section 1404.  It seeks dismissal of Allergan's Third Party Complaint for lack of subject matter jurisdiction, under the doctrine of *forum non conveniens* and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As to *forum non conveniens*, while Allergan claims that it could have brought this action in the Southern District of New York and had the action transferred to this MDL, any complaint

11

Allergan initiated in the Southern District of New York would have been dismissed for lack of subject matter jurisdiction, and Allergan is not entitled to bring this action directly in the MDL. And as explained above, a third party complaint brought in the SDNY could only allege indemnity over liability alleged in a particular action pending in SDNY—not all of the actions in the MDL that Allergan's Third Party Complaint encompasses.  *See* 28 U.S.C. § 1367; Fed. R. Civ. P. 14(a).  Accordingly, because the APA establishes state and federal courts within the Southern District of New York as the exclusive forum for Allergan's claims, and because the Southern District of New York would not have subject matter jurisdiction over Allergan's Third Party Complaint, Pfizer appropriately seeks dismissal under the doctrine of *forum non conveniens*, which is "the appropriate way to enforce a forum-selection clause pointing to a state . . . forum[.]"  *Atlantic Marine*, 571 U.S. at 60.

> **B.** **Allergan's Complaint Should Be Dismissed Because Allergan Has Failed To Show That Public Interest Factors Overwhelmingly Favor Disregarding The Forum Selection Clause**

Allergan's alternative contention that *Atlantic Marine* supports setting aside the forum selection clause is equally meritless.  Its conclusory contentions are insufficient to meet its "burden of showing that public-interest factors *overwhelmingly disfavor*" dismissal—a burden that squarely falls on Allergan, "[a]s the party acting in violation of the forum-selection clause." *Atlantic Marine*, 571 U.S. at 67 (emphasis added); *see also Wong v. PartyGaming Ltd.*, 589 F.3d 821, 826 (6th Cir. 2009) ("A forum selection clause should be upheld absent a strong showing that it should be set aside.").  Given the tremendous showing required to defeat dismissal or transfer in light of a valid and enforceable forum selection clause—where public interest factors are the only relevant factors—the Supreme Court has made clear that it expects parties seeking to enforce such clauses to prevail in almost all instances:

12

> Because [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Although it is conceivable in a particular case that the district court would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, . . . such cases will not be common.

*Atlantic Marine*, 571 U.S. at 64 (internal quotation marks and citation omitted).

### 1. The Public Interest Factors, Including Efficient Administration Of The MDL, Favor Dismissal

Allergan has not come close to identifying the "extraordinary circumstances" that must exist to defeat dismissal. *Id.* at 52. Glaringly, Allergan fails to address any of the specific public interest factors that the Supreme Court has held are relevant to the inquiry, let alone attempt to meaningfully rebut the discussion in Pfizer's Motion of each of the relevant factors. *See* Mot. at 7-8. As explained in Pfizer's opening brief, there is no basis to disregard the forum selection clause because the administrative difficulties in litigating this extraneous contract dispute could delay and interrupt the proceedings in the MDL; none of the parties are based in Ohio; New York courts are best able to apply New York law, which governs the dispute; any choice of law issues favor the New York forum given New York courts' familiarity with New York choice of law rules; and the unfairness of burdening citizens in an unrelated forum with jury duty counsels against imposing on Ohio jurors to decide this dispute between two corporations headquartered and incorporated in other states. Allergan skips these factors altogether. Given the high burden it bears, Allergan's failure to respond to the specific points raised by Pfizer in its Motion alone warrants dismissal. *See Pinkus v. Sirius XM Radio Inc.*, 255 F. Supp. 3d 747, 752 (N.D. Ill. 2017) (concluding, where one public interest factor weighed against enforcing forum selection clause, one was neutral, and the rest favored enforcement, that "[o]n balance then, the public interest factors favor enforcing the clause and thus dismissing [the]

13

third-party claims . . . ; at a minimum, it cannot be said that the public interest factors so strongly weigh against dismissal as to overcome the force of the forum selection clause").

        Instead of offering any meaningful analysis of each of the relevant public interest factors, Allergan contends that the forum selection clause should be set aside because it would be "more efficient to permit this Court to supervise the pretrial proceedings, discovery, and any potential global resolution that would include Allergan's third-party claims against Pfizer and King than if Allergan's third-party complaint was sent to another court with no knowledge of the thousands of other related cases and no ability to coordinate discovery, evidentiary rulings, or facilitate a global resolution."  Opp. at 8-9.  Setting aside that "efficiency" is, of course, not the be-all and end-all of the public interest, the most "efficient" path is to enforce the forum selection clause at this juncture to have all of Allergan's indemnification claims litigated in state court in New York, the parties' agreed-upon forum.   The alternative is that each of Allergan's indemnification claims would be transferred for trial to the myriad of district courts in which each case now in the MDL will be tried.  It will be exponentially more complicated to try this issue over and over in individual cases than to have it resolved in a single action in New York.

        In addition, the task of efficiently and effectively coordinating and managing discovery and other pretrial activities as to the thousands of existing cases brought by personal injury claimants is a gargantuan one, and importing extraneous issues and disputes concerning Allergan's indemnity claims will inevitably result in complications and distractions that will hamper the efficient conduct of proceedings in the MDL.  While Allergan glosses over them, the differences between the indemnification claims in its Third Party Complaint and the claims in the personal injury complaints that are properly in the MDL are stark and belie Allergan's utopic vision of a seamless integration of its claims in the MDL.  Allergan's claims concern whether

and to what extent Pfizer and King are required by a contract to indemnify Allergan for pre-2009 conduct concerning a particular opioid medication, while the MDL plaintiffs' claims concern whether manufacturers and distributors of opioids engaged in false and deceptive conduct in connection with the marketing and sale of a multitude of different opioids over a period of decades.  This contrast is all the more evident when one considers the relief Allergan seeks in the Third Party Complaint—namely, costs and legal fees expended defending claims as to which Allergan contends Pfizer owes it indemnity and a declaratory judgment concerning the scope of Pfizer's indemnity obligations—which have nothing to do with the core factual and legal issues this MDL was created to navigate and would only distract from the central issues at hand.  *See* Compl. ¶ 62.  That Allergan's claims would also have to be litigated under New York law applying New York conflict of laws principles would only further complicate proceedings in this MDL.

### 2. Litigating The Third Party Complaint In The MDL Would Complicate The Resolution Of The Underlying MDL Actions

Allergan's contention that dismissing its Third Party Complaint would somehow impede a "global resolution" of the MDL plaintiffs' claims against the manufacturer and distributor defendants similarly cannot withstand scrutiny.  The scope of Pfizer's purported indemnity obligations to Allergan has nothing to do with the merits of the underlying claims against Allergan and of course bears no connection to the vast majority of claims in the MDL, which involve other parties.  As such, resolution in a separate court of the separate question of Allergan's request for indemnification from Pfizer should not impede resolution of the MDL opioid litigation.  If anything, this indemnity dispute would be resolved more efficiently in the context of discrete proceedings in New York state court interpreting New York law than before

15

an MDL that is already responsible for thousands of almost-entirely unrelated cases, parties, and issues.

### 3. The Overwhelming Weight Of Authority Compels Enforcement Of The Forum Selection Clause

Allergan's Opposition runs from the simple and undeniable fact that courts routinely enforce forum selection clauses in multidistrict litigation.  Allergan's reliance on *Rolls Royce* is instructive.  There, the Fifth Circuit reversed the district court's refusal to honor a forum selection clause involving the plaintiff and only one of several defendants in the case against whom similar claims were pending.  The court ordered the district court to sever and transfer the claims against such defendant to the forum specified in the agreement with plaintiff, rejecting the contention that the multi-party nature of the litigation warranted setting aside the relevant parties' agreed-upon forum.  *See Rolls Royce*, 775 F.3d at 681-83.  Moreover, the Fifth Circuit did so in circumstances where the parties and claims were far more intertwined than Allergan's indemnification claims against Pfizer vis-à-vis the parties and claims in the MDL.[4]

The other cases Allergan cites for the proposition that forum selection clauses purportedly apply with lesser force when courts are "faced with multi-party disputes" (Opp. at 8) are similarly inapposite and readily distinguishable.  In *Ashley Furniture v. Packaging Corp. of Am.*, a multi-defendant case involving allegations that defendants co-conspired to fix prices, the court opted not to enforce a forum selection clause to sever and transfer plaintiff's claims against a single defendant because doing so "would mean litigating plaintiff's claims against [that co-

---

[4]     Although, as Allergan points out, the Fifth Circuit also commented in dicta that *Atlantic Marine*'s "independent force is much dissipated in the world of MDL," the court made clear that *Atlantic Marine* may still "mandate against consolidation" in the MDL context and that transfer to an MDL docket was not before the court.  The same is true here—it is not for this Court to decide how the JPML would have decided a hypothetical transfer motion.

16

defendant] separately, while plaintiff would be simultaneously litigating in a different forum nearly identical claims against all of the other defendants," resulting in inefficiency and the potential for inconsistent results.  275 F. Supp. 3d 957, 964 (W.D. Wis. 2017).  By contrast, Allergan's third party indemnification claims against Pfizer are contractually based and only against Pfizer, and bear no direct relation to the claims of the thousands of first-party litigants in the MDL.  Similarly, *In re TFT-LCD (Flat Panel) Antitrust Litig.* also involved "an array of [alleged] conspiratorial conduct by multiple defendants[,] . . . the vast majority of [which] is not governed by the agreement," leading the court to conclude that it would be unduly burdensome and inefficient to transfer a subset of claims against a single defendant to the venue called for by the forum selection clause in the agreement.  No. 13-cv-3349, 2014 WL 1477748, at *1-2 (N.D. Cal. Apr. 14, 2014).  Again, no comparable circumstances are present here that would warrant setting aside the forum selection clause in the APA.

Allergan contends that *Atlantic Marine* is "even less instructive" in the context of Rule 14 third party complaints because of considerations of judicial economy and cites two unreported cases in support.  *See* Opp. at 7 n.2.  These two cases, however, are clearly against the weight of authority; in reality, courts routinely enforce forum selection clauses in the context of third-party practice, with many explicitly rejecting the argument that such clauses apply with less force in this context—and for good reason.  As one court explained in rejecting the outlier approach taken in the two unreported decisions Allergan relies upon:

> The court agrees with those decisions [rejecting *American Licorice*]. Although judicial efficiency is important, the Supreme Court has instructed that forum selection clauses should be enforced in all but the most exceptional cases.  And because considerations of judicial economy alone do not permit courts to ignore a presumptively valid forum selection clause, a forum selection clause is enforceable even when invoked by a third-party defendant against a third-party plaintiff.

17

*Pinkus*, 255 F. Supp. 3d at 751; *see also United States for Use of D.D.S. Indus., Inc. v. Nauset Constr. Corp.*, No. 16-cv-12009-NMG, 2018 WL 5303036, at *4-5 (D. Mass. Oct. 25, 2018); *Grisham v. Guarantee Tr. Life Ins. Co.*, No. 1:16-cv-283 ACL, 2018 WL 1725801, at *5 (E.D. Mo. Apr. 9, 2018); *Global Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-cv-00920, 2016 WL 4259126, *5 (N.D. Cal. Aug. 12, 2016).[5]

        Finally, Allergan fails to meaningfully distinguish the cases cited by Pfizer that conclusively hold that a third party complaint in an MDL should be dismissed when it is subject to a valid forum selection clause. *Compare* Mot. at 7-8, *with* Opp. at 6 n.1. Instead, Allergan again insists that all of these cases should be discounted because they do not involve transfer under 28 U.S.C. § 1407. But Allergan is not seeking transfer pursuant to Section 1407. Nor does Allergan point to a single case where a valid and enforceable forum selection clause was set aside in the context of a third party indemnification complaint brought directly in an MDL. Having failed to carry its burden of showing that this is an extraordinary case where public interest considerations overwhelmingly favor setting aside the parties' forum selection clause, *Atlantic Marine* compels dismissal of Allergan's Third Party Complaint.

---

[5]     Allergan also cites *Mystic, Inc. Kroy LLC v. Gen. Data Co., Inc.*, No. 1:16-cv-147, 2016 WL 5076079, at *3 (N.D. Ohio Sept. 20, 2016), for the proposition that "third parties may be added" to proceedings "without regard to venue." Opp. at 7 n.2. *Mystic*, in which the Northern District of Ohio denied a motion to dismiss a third party complaint under the doctrine of *forum non conveniens*, has not been cited by another court and is against the weight of authority—including the case the court cites for its conclusion, *Ohio Savings Bank v. Manhattan Mortgage Company*, No. 1:04-cv-128, 2006 WL 2045891, at *2 (N.D. Ohio July 20, 2006). In that pre-*Atlantic Marine* case, the Northern District of Ohio in fact stated that, although third party defendants may be brought in without regard to venue, "a third-party defendant could bring a motion for transfer of venue based upon the doctrine of *forum non conveniens* under 28 U.S.C. § 1404(a)." The *Ohio Savings Bank* court then transferred the action on those grounds. *See id.*

18

## IV.     Allergan Has No Basis At All To Justify Filing Its Indemnity Dispute In Ohio For All Cases Arising Outside Of New York

Allergan only explicitly defends in its Opposition the filing of a Third Party Complaint in the two actions that originated in the SDNY, yet its Third Party Complaint is clearly improper with respect to the thousands of cases in this MDL that originated outside of the SDNY.  Allergan's Third Party Complaint was filed in "All cases" in the MDL, but the focus of Allergan's Opposition is only on the SDNY cases, *Klodzinski* and *Laborers 17*, a tacit acknowledgement that the valid forum selection clause precludes what Allergan attempts here— the filing of Third Party Complaints in actions originating in non-SDNY courts.  Allergan's chief argument that the Third Party Complaint is proper because it could somehow have been originally filed in the SDNY is not only wrong, but applies by its terms only to the two SDNY actions.  Allergan fails to articulate any reason why its Third Party Complaint should not be dismissed as to all of the cases filed in other jurisdictions comprising the vast majority of the MDL.

## CONCLUSION

For the reasons set forth above and in Pfizer's Motion, Allergan's Third Party Complaint should be dismissed in its entirety.

Dated: December 14, 2018

SIMPSON THACHER & BARTLETT LLP

By:   /s/ *Lynn K. Neuner*
Lynn K. Neuner (lneuner@stblaw.com)
George S. Wang (gwang@stblaw.com)
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Third Party Defendants*
*Pfizer Inc. and King Pharmaceuticals, Inc.*
*n/k/a King Pharmaceuticals LLC*

19

## <u>LOCAL RULE 7.1(F) CERTIFICATION</u>

I certify that this Memorandum adheres to the page limitations set forth in Case

Management Order One §§ 6(f), 2(h), and L.R. 7.1(f).


Dated: December 14, 2018                    SIMPSON THACHER & BARTLETT LLP

By:   /s/ *Lynn K. Neuner*
       Lynn K. Neuner (lneuner@stblaw.com)
       George S. Wang (gwang@stblaw.com)
       425 Lexington Avenue
       New York, New York 10017-3954
       Telephone: (212) 455-2000
       Facsimile: (212) 455-2502

       *Attorneys for Third Party Defendants*
       *Pfizer Inc. and King Pharmaceuticals, Inc.*
       *n/k/a King Pharmaceuticals LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2018, a copy of the foregoing **Reply Memorandum Of Law In Further Support Of Pfizer Inc. And King Pharmaceuticals LLC's Motion To Dismiss Allergan Finance, LLC's Third Party Complaint** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Dated: December 14, 2018

SIMPSON THACHER & BARTLETT LLP

By:  /s/ *Lynn K. Neuner*
    Lynn K. Neuner (lneuner@stblaw.com)
    George S. Wang (gwang@stblaw.com)
    425 Lexington Avenue
    New York, New York 10017-3954
    Telephone: (212) 455-2000
    Facsimile: (212) 455-2502

    *Attorneys for Third Party Defendants*
    *Pfizer Inc. and King Pharmaceuticals, Inc.*
    *n/k/a King Pharmaceuticals LLC*

21