```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION


 3        -------------------------------X
                                         :
 4        IN RE: NATIONAL PRESCRIPTION    : MDL No. 2804
          OPIATE LITIGATION              :
 5                                        :
                                         : Case No. 1:17-md-2804
 6                                        : Cleveland, Ohio
                                         :
 7                                        :
                                         : Thursday, December 20, 2018
 8        -------------------------------X

 9


10


11


12


13          TRANSCRIPT OF A TELECONFERENCE MOTION HEARING


14          HELD BEFORE THE HONORABLE DAN AARON POLSTER


15                  UNITED STATES DISTRICT JUDGE


16


17


18


19


20    Court Reporter:            Lance A. Boardman, RDR, CRR
                                 United States District Court
21                               801 West Superior Avenue
                                 Court Reporters 7-189
22                               Cleveland, Ohio 44113
                                 216.357.7186
23


24
      Proceedings recorded by mechanical stenography; transcript
25    produced by computer-aided transcription.
```

1    APPEARANCES:

2

     For the Commonwealth of Massachusetts:

3

     Gillian Feiner, Assistant Massachusetts Attorney General

4

5    For the Purdue Defendants:

6    Mark S. Cheffo, Dechert, LLP
     Sheila L. Birnbaum, Dechert, LLP

7

8    Special Masters:

9    Catherine A. Yanni
     David Rosenblum Cohen
10   Francis E. McGovern, II

11

     Also Present:

12

     Katherine King, Courtroom Deputy
13   Mary Hughes, Law Clerk
     Andrew Scott Loge, Law Clerk

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 04:18:40 | 1 | (Proceedings commenced at 12:03 p.m.) |
| 09:09:01 | 2 | THE COURT:  This is a hearing in the opioid |
| 12:03:02 | 3 | MDL, 1:17-md-2804.  It's a hearing on Purdue's emergency |
| 12:03:11 | 4 | motion that was filed late last night. |
| 12:03:13 | 5 | Who do we have present for Purdue? |
| 12:03:16 | 6 | MR. CHEFFO:  Your Honor, it's Mark Cheffo and |
| 12:03:20 | 7 | Sheila Birnbaum. |
| 12:03:21 | 8 | MS. BIRNBAUM:  Good morning, Your Honor. |
| 12:03:23 | 9 | THE COURT:  Good morning, Mark and Sheila. |
| 12:03:26 | 10 | And who do we have for the Massachusetts AG's office? |
| 12:03:29 | 11 | MS. FEINER:  Good afternoon, Your Honor.  This |
| 12:03:31 | 12 | is Gillian Feiner from the Massachusetts AG's office. |
| 12:03:38 | 13 | THE COURT:  All right.  I know there have been |
| 12:03:46 | 14 | some developments since the motion was filed, but as best as |
| 12:03:49 | 15 | I can determine, Purdue's filed a motion to dismiss the |
| 12:03:58 | 16 | allegations in the Massachusetts state case against the |
| 12:04:01 | 17 | individual defendants.  And in response, Massachusetts |
| 12:04:09 | 18 | sought leave to amend its complaint to add a lot of details |
| 12:04:14 | 19 | against the individual defendants, including many members of |
| 12:04:19 | 20 | the Sackler family. |
| 12:04:20 | 21 | Purdue believes that the amended complaint contains a |
| 12:04:27 | 22 | large number, I think the reference was more than 800 |
| 12:04:35 | 23 | statements that are drawn directly from confidential |
| 12:04:39 | 24 | documents produced in the MDL. |
| 12:04:43 | 25 | And Massachusetts received those documents from a -- |

12:04:50  1   by way of a court order, and only those individuals or

12:04:57  2   entities that signed an acknowledgement of the protective

12:05:00  3   order and agreed to abide by its terms could get those

12:05:04  4   documents.  And Massachusetts signed that acknowledgement.

12:05:09  5        And that order provides a fairly detailed protocol

12:05:13  6   that if an entity or a party receiving confidential

12:05:19  7   documents wants to use them, disclose them publicly, and

12:05:26  8   believes that they have been misclassified, they notify the

12:05:33  9   producing party, in this case that would be Purdue.  And

12:05:37  10  there's a one-week period and then there's a second week for

12:05:40  11  discussion.  And after the two weeks, if the parties are

12:05:43  12  unable to work it out, then they submit the issue to the

12:05:46  13  Court and that there's no public disclosure until then.

12:05:50  14       So I understand that the state judge, Judge Janet

12:05:57  15  Sanders, a justice of the Superior Court of Massachusetts,

12:06:04  16  has directed Massachusetts to submit to her proposed amended

12:06:13  17  complaint and also the proposed amended complaint in

12:06:18  18  redacted form, redacting any statements that are drawn from

12:06:23  19  confidential documents.  And Massachusetts is to submit

12:06:26  20  those two documents to Judge Sanders today.  And Judge

12:06:30  21  Sanders is holding a hearing tomorrow, Friday, at 9:30 a.m.,

12:06:37  22  to decide what to do.

12:06:44  23       So the thrust of Purdue's motion is that the state of

12:06:48  24  Massachusetts needs to comply with the terms of my

12:06:50  25  protective order and I should enforce those terms.

12:06:55  1      So have I made any material misstatements in my short

12:07:00  2  summary that anyone wants to correct?

12:07:03  3           MS. FEINER:  I think you've been generally

12:07:06  4  accurate, Your Honor.  This is Gillian from Massachusetts.

12:07:10  5      I think that's generally a fair statement.

12:07:14  6           MR. CHEFFO:  And, Your Honor, this is Mark.  I

12:07:16  7  agree.  I think you, as usual, got to the point.

12:07:19  8           THE COURT:  Well, I'm sure I -- some of the

12:07:22  9  details I haven't covered, but I got the essence.

12:07:26  10     All right.  So I guess, Gillian, I'd like to hear from

12:07:33  11 you as to what you propose to do.

12:07:37  12          MS. FEINER:  Well, we certainly appreciate

12:07:39  13 that you've turned your attention to this so quickly.  We

12:07:42  14 obviously haven't had an opportunity to brief any opposition

12:07:45  15 because the emergency motion was filed last night.  I think

12:07:47  16 that there are a few points that we'd like to make.

12:07:52  17     And you're correct that we do have an order from our

12:07:56  18 state court judge to file -- to submit to her a redacted

12:08:00  19 version of the complaint and an unredacted version for her

12:08:06  20 review.

12:08:06  21     I guess our first position, Your Honor, is that

12:08:09  22 there's really no emergency here.  The state court order

12:08:12  23 doesn't call for us to do anything that impairs Purdue's

12:08:15  24 rights or conflicts with the MDL protective order.  It

12:08:18  25 simply calls for us to submit to her the redacted complaint

12:08:22   1   and unredacted one for in camera review and for the

12:08:26   2   defendants to file motions to impound and related affidavits

12:08:29   3   to the extent that they wish to preserve their

12:08:31   4   confidentiality designations.  The process isn't really very

12:08:36   5   different from what's contemplated by the MDL protective

12:08:40   6   order.

12:08:40   7        The second point that I'd like to make is that Purdue

12:08:43   8   agreed to a state court protective order that expressly

12:08:46   9   states that materials the Commonwealth obtained pursuant to

12:08:49  10   paragraph 33L of the MDL protective order are governed by

12:08:54  11   the state court's order.  I would observe that that seems to

12:08:56  12   be consistent generally with the spirit and the content of

12:09:00  13   the protocol for state and federal court coordination that

12:09:03  14   Your Honor entered a few months ago.

12:09:06  15        Section 4C of that protocol provides that state court

12:09:11  16   plaintiffs do not consent to jurisdiction by the MDL court

12:09:14  17   for their state court cases except as to issues concerning

12:09:17  18   the enforcement of the terms of the MDL protective order and

12:09:20  19   only until such time as the state court enters its own

12:09:26  20   governing protective order.

12:09:27  21        That happened here.  We were not hiding the ball.  The

12:09:29  22   protective order that we obtained in Massachusetts was a

12:09:31  23   heavily negotiated document.  And in the joint motion that

12:09:35  24   Purdue signed and actually submitted and the protective

12:09:41  25   order itself, paragraph 33L of the MDL protective order is

12:09:44   1   specifically referenced.

12:09:45   2       So we feel that we've been very transparent with

12:09:49   3   Purdue.

12:09:49   4       Another point that I'd like to make, Your Honor, is

12:09:52   5   that our state court judge, Judge Sanders, she set up a

12:09:57   6   reasonable process for handling the confidentiality issues.

12:09:59   7   She's given Purdue and the other defendants the opportunity

12:10:02   8   to establish good cause if they wish to preserve any of the

12:10:06   9   redactions at issue.

12:10:08  10       I'd like to note for the Court that we've made real

12:10:12  11   strides at narrowing the issues with the other defendants,

12:10:14  12   including the Sacklers.  And as a result, we don't -- the

12:10:18  13   Sacklers' counsel have confirmed that they are not going to

12:10:22  14   be filing any motion to impound today.

12:10:25  15       So we are working in good faith with the defendants in

12:10:29  16   this matter, and we think that that's reflected in the

12:10:31  17   agreement that we've been able to reach and the issues we've

12:10:35  18   been able to narrow.

12:10:35  19       I guess, you know, the last kind of major point that

12:10:40  20   I'd like to make for the Court is that I think -- you know,

12:10:45  21   you've seen me in Cleveland a number of times now.

12:10:47  22   Cooperation between the state AGs and the MDL really matters

12:10:52  23   to us.  We're heavily invested in the national process.

12:10:55  24       If the way that the process is going to work is that a

12:10:59  25   state AG can't file a redacted complaint in its own state

12:11:02   1   court where there are adequate protections in place for the

12:11:04   2   defendants to which the defendants have themselves agreed,

12:11:07   3   then I'm concerned that that process that we worked so hard

12:11:10   4   to work towards -- and frankly, you know, you've been

12:11:15   5   critical in creating an environment where we can do it by

12:11:18   6   entering these -- the protective order and the protocol,

12:11:21   7   then the process is going to break down.  And I think that

12:11:23   8   that would be a shame.  I think we're making good progress

12:11:28   9   there.

12:11:29   10  So, you know, I guess ultimately our position is that

12:11:33   11  discovery if used in our state court litigation should be

12:11:35   12  resolved in our state court.  We think our judge is totally

12:11:39   13  capable of doing that.  And we haven't -- you know, we

12:11:42   14  haven't taken any steps to violate the MDL protective order

12:11:47   15  at all, contrary to some of the assertions made in the

12:11:49   16  emergency motion.

12:11:52   17  We take our obligations seriously.  Purdue is going to

12:11:55   18  get a fair opportunity, if it wishes to engage in the

12:11:57   19  process, to seek to preserve its designations.

12:12:01   20  And I think I've probably taken up enough of Your

12:12:04   21  Honor's time, but those are kind of some of the key points.

12:12:09   22  Obviously, you know, if you'd like us to file something in

12:12:11   23  writing, we're happy to do that.  But the -- you know, it

12:12:15   24  hasn't been, I think, even just about 12 hours since they

12:12:19   25  filed their brief, so we don't have anything together yet.

12:12:23    1              MR. CHEFFO:  Your Honor, may I respond to

12:12:25    2    that?

12:12:25    3              THE COURT:  Yes, Mark.  Go ahead.

12:12:26    4              MR. CHEFFO:  So let me say a few things.

12:12:28    5         I actually agree with some of it, but I really think

12:12:32    6    that's a material mischaracterization of what's going on.

12:12:36    7         I think as Ms. Feiner said -- and we, you know, have

12:12:38    8    worked well with her and other AGs.  And I think we're not

12:12:41    9    in the business of making lots of emergency motions.

12:12:45   10         So we don't think this is just as simple and a

12:12:48   11    nonissue.  We clearly don't think this is an interference

12:12:50   12    with anything -- and I think what you need to understand

12:12:54   13    what you're not getting are kind of -- it's a little bit of

12:12:57   14    a gotcha and a bait and switch here, what's going on.

12:12:59   15         So it is true that there is a protective order in the

12:13:00   16    state court.  We think it's consistent with this.  It's also

12:13:04   17    true -- and counsel say, well, you know, if there was an

12:13:07   18    existing order, then somehow the MDL provisions don't apply.

12:13:11   19         She signed this acknowledgement -- Ms. Feiner signed

12:13:16   20    this acknowledgement in the month of November.  And Pete

12:13:19   21    Weinberger did what he's supposed to:  He sent us a note

12:13:22   22    saying it's been signed.  You've read the language.  It's

12:13:24   23    pretty specific.  It says, you know, I solemnly promise that

12:13:26   24    I will not disclose in any manner any information or item

12:13:29   25    that's subject to the protective order to any person or

12:13:31    1    entity except in strict compliance with the provisions of

12:13:34    2    this protective order.

12:13:36    3        So that has to mean something.  That was signed just a

12:13:38    4    month or so ago.

12:13:39    5        And here's the problem where I think you're not

12:13:41    6    getting the whole story here.  If counsel is basically

12:13:44    7    saying, well, you know, don't interfere with the state court

12:13:47    8    and this is -- they're similar provisions.  But that's not

12:13:51    9    true because -- and obviously the state court judge can do

12:13:54    10    whatever she wants.  We're not looking to get this court to

12:13:57    11    interfere with the practice.

12:13:59    12        And in fact, what happened initially, just because I

12:14:02    13    think it's important, there were documents produced directly

12:14:04    14    to the state AG, right?  Then they filed a 79-page

12:14:10    15    complaint.  That's not what this is about, right?  That's

12:14:12    16    already been on file.  They then said that they want to

12:14:15    17    amend their complaint.  They then didn't tell us that they

12:14:17    18    were going to be using any of these documents.

12:14:19    19        They came on December 13 with a 279-page complaint,

12:14:26    20    relying on over 800 MDL documents, and said, oh, by the way,

12:14:33    21    here's what we're going to file.

12:14:34    22        Now, what you didn't hear is that they actually agreed

12:14:36    23    to make a joint impoundment motion to the state, basically

12:14:40    24    saying we want to file this under seal.  Right?  As I

12:14:46    25    understand it.

| | | |
|---|---|---|
| 12:14:46 | 1 | And, you know, the Court then -- again, which is the |
| 12:14:49 | 2 | state Court's prerogative -- she basically said, you know, |
| 12:14:51 | 3 | for whatever reason, I'm not, you know, kind of a fan of |
| 12:14:54 | 4 | having these under seal.  And I want you to now make a |
| 12:15:00 | 5 | showing as to these, all these.  All right.  That was |
| 12:15:04 | 6 | December 13. |
| 12:15:04 | 7 | So part of the issue, as counsel said, as Ms. Feiner |
| 12:15:07 | 8 | said, we all -- we actually had people working literally all |
| 12:15:10 | 9 | night last night.  We sent them a list of, you know, some of |
| 12:15:13 | 10 | the things that we will be designating, looking at them. |
| 12:15:16 | 11 | So part of what I asked Ms. Feiner three times, right, |
| 12:15:19 | 12 | in writing and two phone calls, was we're not saying -- |
| 12:15:22 | 13 | we're not looking to claw back these documents.  We're not |
| 12:15:25 | 14 | saying they can't be used in joint depositions.  We're not |
| 12:15:28 | 15 | saying you can't ask us discovery for them.  We're not |
| 12:15:31 | 16 | saying that they shouldn't be used. |
| 12:15:32 | 17 | Really all we're saying, Your Honor, is you can't |
| 12:15:35 | 18 | basically just take a 279 completely hyperbolic over-the-top |
| 12:15:40 | 19 | complaint that reads more like a press release than a |
| 12:15:42 | 20 | complaint and just file it and say -- because the burden is |
| 12:15:47 | 21 | very different.  It's very different in state court. |
| 12:15:49 | 22 | And I think what the state court and what the |
| 12:15:51 | 23 | protective order contemplates is that if you get documents |
| 12:15:53 | 24 | in the MDL, right, and we're going to -- we could do this |
| 12:15:56 | 25 | very expeditiously.  If they have challenges to |

12:15:59  1   confidentiality, we'll address those.  Either Special Master

12:16:03  2   Yanni or David Cohen or anyone that you assign will then

12:16:07  3   call balls and strikes, or Your Honor.  And then the

12:16:10  4   procedures about filing and impoundment are governed by the

12:16:15  5   state court.

12:16:16  6        What we're basically saying is what you can't do.  We

12:16:20  7   think it would be wholly inappropriate, it would blow this

12:16:22  8   entire MDL up, and the protective order, if somebody could

12:16:25  9   go and just get -- we've produced 45 million pages of

12:16:27  10  documents.  Take all of those, give us a complaint on a

12:16:30  11  week's notice and say, all the provisions from the

12:16:33  12  protective order somehow don't apply --

12:16:37  13       And one footnote, Your Honor, too, just to understand

12:16:39  14  this, right?  We agree that the lawyers for other

12:16:42  15  municipalities should get this.  We're not looking to

12:16:45  16  create -- it's good for us, it's good for the system, it's

12:16:47  17  good for the MDL.

12:16:48  18       But as the Court knows, the discovery that was

12:16:50  19  produced into the MDL frankly is far broader than I think

12:16:54  20  would be required in any state, right?  And there's a reason

12:16:57  21  for that:  Because you have a thousand and plus

12:17:00  22  municipalities across the entire country.

12:17:02  23       But the reason why that makes sense is that at least

12:17:05  24  there's some protections in place that if someone tries to

12:17:08  25  do what the state or Ms. Feiner is doing, we could actually

12:17:11  1  say, well, wait a minute, you know, here's some protections.

12:17:15  2       So all we're asking for, Your Honor, is that it can't

12:17:18  3  be that you could sign something, you can go and take this

12:17:21  4  stuff to state court, you could pretend like all of the

12:17:24  5  protective order doesn't apply, we have to rush and file

12:17:27  6  emergency motions on literally a moment's notice in

12:17:32  7  Christmas week.

12:17:32  8       You know, so what we're asking for is two things, Your

12:17:35  9  Honor, is that -- and the last thing I'll say is, there

12:17:37  10  really -- you know, counsel's saying there's no emergency?

12:17:40  11  I guess I would agree.  What's the emergency that they --

12:17:43  12  and I said, why don't we go jointly to the judge and

12:17:46  13  let's -- in state court?  Let's ask for a week adjournment

12:17:49  14  so we could -- they refused to do that.

12:17:51  15       There is no emergency why someone needs to file a

12:17:56  16  279-page amended complaint a week before Christmas, you

12:18:00  17  know, without giving us any notice.

12:18:02  18       So our ask, and then I'll stop, Your Honor, is we

12:18:04  19  think the protective order means something.  We want to have

12:18:08  20  the AG have access to appropriate documents, or I think all

12:18:11  21  the documents.  And we want an opportunity to try and work

12:18:14  22  with her and her colleagues.  And if there are any

12:18:16  23  allegations here that they think they need to make or use

12:18:20  24  for jurisdictional purposes, we want to talk to them about

12:18:23  25  that.

12:18:24    1    I think the vast majority of these are -- again, are

12:18:27    2    outside the scope.  And hopefully we can come to an

12:18:30    3    agreement or at least now -- and I do agree -- I'll stop by

12:18:33    4    saying I do agree with Ms. Feiner that I think just within

12:18:36    5    the last half hour we sent, you know, a lot of stuff to them

12:18:39    6    saying we have no problem with this, we have no problem with

12:18:41    7    that.  And the reason why some of the lawyers for the

12:18:44    8    individuals have it -- are also working cooperatively.

12:18:48    9    So we just need a little time to try and work it out.

12:18:50   10    If it turns out that there's a handful or more of documents

12:18:53   11    that we think should still be maintained as confidential --

12:18:56   12    And as a footnote also, they attached, I believe,

12:19:01   13    2,000 documents to a complaint, 2,000 pages of documents,

12:19:04   14    which I've never, frankly, seen in 30 years of practice.  So

12:19:09   15    this goes far beyond interfering with a state court.  This

12:19:12   16    is an unprecedented effort to really try and embarrass a lot

12:19:17   17    of these individual people.  And unless they have some

12:19:19   18    relief now in a week or so to kind of stop this and try and

12:19:22   19    work through and cooler minds prevail, we're going to be

12:19:26   20    irreparably harmed, Your Honor.

12:19:29   21    MS. FEINER:  Your Honor, if I may just respond

12:19:31   22    for a moment.

12:19:32   23    I mean, we have an amendment as of right -- I think

12:19:35   24    what Purdue is really asking for is an opportunity to edit

12:19:39   25    our amended complaint, and we just don't feel that under any

12:19:43 1  circumstances that that is an appropriate ask.

12:19:48 2      I guess I would also just --

12:19:51 3          THE COURT:  Well, wait.  I -- no one's -- the

12:19:55 4  Massachusetts AG can file whatever complaint she wants.  The

12:20:00 5  issue is what can be disclosed publicly now.

12:20:03 6          MS. FEINER:  We totally agree with you, Your

12:20:05 7  Honor.

12:20:06 8          THE COURT:  No one can control, I can't and

12:20:10 9  Purdue can't control what the chief law enforcement officer

12:20:15 10 of Massachusetts, what cases she seeks to bring and how she

12:20:20 11 characterizes those cases.  No one has the power to do that,

12:20:23 12 so no one's going to do that.

12:20:28 13         MS. FEINER:  Thank you, Your Honor.

12:20:29 14     I mean, we have at every step assured Purdue, I think,

12:20:33 15 that what we would be filing would be consistent with our

12:20:39 16 obligations under the protective order.  And that means that

12:20:43 17 all of the references to materials that they've designated

12:20:47 18 confidential or highly confidential and which are now

12:20:49 19 governed by our state's protective order has been redacted.

12:20:54 20     But at the end of the day, just as they would have to

12:20:57 21 do in your court, also under our state -- under our state's

12:21:02 22 protective order, they have to substantiate their legal

12:21:05 23 basis for many of those redactions.  That's just their

12:21:11 24 burden.

12:21:11 25     And they don't like the timing of how it's worked out.

12:21:15 1 And I understand that. But really all we're proposing to

12:21:20 2 file and all we proposed to file last week in front of our

12:21:23 3 court and all we've been discussing with them when we filed

12:21:26 4 our joint motion to impound was a redacted version of our

12:21:32 5 amended complaint for public inspection and a provisionally

12:21:37 6 impounded unredacted version so that our court could make

12:21:42 7 assessments about the propriety of their designations.

12:21:47 8 MR. CHEFFO: See, that's a problem because

12:21:49 9 that's just not -- that's not the way -- because counsel

12:21:52 10 knows -- and again, we have a good -- I don't want to be

12:21:54 11 pejorative or anything, but the reason why they're pushing

12:21:57 12 this is because the judge -- what you're not hearing, Your

12:21:59 13 Honor, is the judge has basically said, we have a different

12:22:02 14 standard. Right? You basically have to show that it's a

12:22:06 15 trade secret, and it's a different standard. She said, I'm

12:22:10 16 not inclined.

12:22:10 17 So what Ms. Feiner knows is that we're going to get

12:22:13 18 there on Friday, and basically there's a very good

12:22:15 19 likelihood that the judge will apply a different standard

12:22:17 20 not knowing all of this.

12:22:18 21 And what you're not -- what I think Your Honor hit the

12:22:21 22 nail on the head here is that they -- we didn't force them

12:22:24 23 to take these documents, right? They could have served

12:22:26 24 discovery. They basically said, we want -- we want to

12:22:29 25 sidetrack that. We want access to 45 million pages, and

12:22:32  1    we're going to play by the rules.

12:22:34  2         And the rules require that this discussion of whether

12:22:37  3    something is protected or not get played out under the

12:22:42  4    auspices of Your Honor's Court because it's Your Honor that

12:22:46  5    we produce these documents under.  It's --

12:22:48  6              THE COURT:  All right.  I understand -- this

12:22:53  7    is a -- this is a very delicate subject, but this is how I

12:22:56  8    come out:

12:22:59  9         If Judge Sanders wants to review in camera the

12:23:04  10   unredacted version, she has every right to do that.  But

12:23:13  11   it's ultimately my control over whether confidential

12:23:18  12   documents that started in the MDL and that were produced to

12:23:25  13   other parties pursuant to my order can be made public.  So

12:23:29  14   everyone has to follow the protocol that was set up in the

12:23:32  15   protective order that I signed and I issued.  And the

12:23:36  16   parties are doing that.  They just haven't finished.

12:23:40  17        So until they've finished, that unredacted version

12:23:46  18   cannot be filed.  I'm not going to permit Massachusetts to

12:23:49  19   file it publicly.  Judge Sanders, of course, can review it,

12:23:55  20   but Massachusetts can't file it publicly until this process

12:23:59  21   is over.

12:24:00  22        And I understand the Sacklers apparently don't have

12:24:07  23   any objection to any of the -- any of the redacted portions.

12:24:12  24   And Purdue has withdrawn its objection to a lot, and they're

12:24:15  25   still going through the process.

12:24:17  1    And it's not an unlimited -- you know, there's a

12:24:20  2    specific timetable that started, and it has another -- well,

12:24:23  3    I don't know, about another week and a half to go.  And then

12:24:27  4    if there's still some dispute, then it's going to go to

12:24:33  5    Special Master Cohen and/or Yanni to resolve.  And

12:24:36  6    ultimately, if the parties still disagree, then it will go

12:24:39  7    to me and I'll call it and that will be it.

12:24:41  8    So I think that's -- I want the parties to continue to

12:24:48  9    do exactly what they're doing.  And when that process is

12:24:52  10   over, then ultimately there will be a document filed in

12:24:57  11   public in Massachusetts.

12:25:01  12   And this process will be over the first part of

12:25:03  13   January, and hopefully there won't be any disagreement.  If

12:25:08  14   there is, we've got the protocol that establishes it.

12:25:13  15   And I really can't tell for sure if the Massachusetts

12:25:17  16   protective order is the same or different than mine.  And

12:25:24  17   when I issued that protective order, I made it clear that I

12:25:28  18   would -- there would be uniform rules over the use of those

12:25:33  19   confidential documents.  And I think that's the only way to

12:25:37  20   do it is if I make sure that everyone follows the protocol.

12:25:42  21   So that's what we're doing, and I'll issue an order

12:25:48  22   accordingly.  And if at the end of this short period there

12:25:53  23   still is disagreement between the state of Massachusetts and

12:25:57  24   Purdue over disclosure of confidential documents, then

12:26:01  25   present that very succinctly to Special Masters Cohen and

12:26:08  1    Yanni and they'll make a decision.  And again, if someone

12:26:12  2    disagrees with that, they can appeal it to me.

12:26:15  3                    MR. CHEFFO:  Thank you, Your Honor.

12:26:16  4                    THE COURT:  All right?

12:26:17  5                    MS. FEINER:  Thank you, Your Honor.

12:26:18  6         Can I just ask for one sort of clarification?  Because

12:26:22  7    I want to make sure that I'm complying with everybody today.

12:26:26  8                    THE COURT:  Right.

12:26:27  9                    MS. FEINER:  Our current plan, and I think

12:26:29  10   it's consistent with what you just outlined, is to file a

12:26:36  11   totally sort of redacted version of the complaint, redacting

12:26:39  12   all of the designated information, and at the same time to

12:26:47  13   submit to Judge Sanders a provisionally impounded version

12:26:50  14   for her review.

12:26:55  15                    THE COURT:  Well, I mean, I don't know what

12:26:56  16   "provisionally impounded" means, Gillian.  If she wants to

12:27:00  17   see it -- she wants to see it, she's a judge, she can see

12:27:02  18   it.  But you make clear that it -- you may not and will not

12:27:07  19   be filing that until the conclusion of the process that was

12:27:15  20   set up in my protective order and that you and Purdue are

12:27:18  21   actively engaged in that process now.  And the end of that

12:27:27  22   process will be the filing of an unredacted document.  Or

12:27:34  23   there may be a couple redactions.  I don't know.  It will be

12:27:38  24   a largely unredacted document --

12:27:40  25                    MS. FEINER:  Great.

20

| | | |
|---|---|---|
| 12:27:41 | 1 | THE COURT:  -- at the end of that process. |
| 12:27:43 | 2 | MS. FEINER:  Okay. |
| 12:27:44 | 3 | THE COURT:  And AG Healey will be the one |
| 12:27:47 | 4 | filing it.  But you're not going to be filing anything more |
| 12:27:50 | 5 | until that process is concluded. |
| 12:27:54 | 6 | MS. FEINER:  Right.  So I am within your order |
| 12:28:00 | 7 | if I file a redacted version of the complaint today? |
| 12:28:04 | 8 | THE COURT:  Right.  But you've got to make |
| 12:28:05 | 9 | sure that you tell Judge Sanders that that document can't go |
| 12:28:13 | 10 | anywhere but to her office. |
| 12:28:14 | 11 | MS. FEINER:  You mean the unredacted one? |
| 12:28:15 | 12 | THE COURT:  The unredacted one. |
| 12:28:17 | 13 | MS. FEINER:  Correct. |
| 12:28:19 | 14 | THE COURT:  Right. |
| 12:28:19 | 15 | MS. FEINER:  I fully understand that. |
| 12:28:20 | 16 | And, Your Honor, just for the record -- |
| 12:28:22 | 17 | THE COURT:  I assume, Mr. Cheffo, you're not |
| 12:28:27 | 18 | objecting to the file of the redacted complaint.  Is that |
| 12:28:29 | 19 | right? |
| 12:28:29 | 20 | MR. CHEFFO:  No, Your Honor, I'm not.  I think |
| 12:28:32 | 21 | that we -- you know, we take at good faith that the |
| 12:28:35 | 22 | redaction -- I mean, I haven't gotten -- pored through it, |
| 12:28:38 | 23 | but, you know, again, I take at good faith that Gillian will |
| 12:28:41 | 24 | redact the issues that are in dispute, and we'll work, as |
| 12:28:44 | 25 | you said, in good faith. |

12:28:44  1      So if they feel like they need to do that, again, I

12:28:47  2  don't want to micromanage how they're going to handle it.

12:28:49  3  One way might be to jointly call up the judge and basically

12:28:51  4  just say can we -- you know, we've now had this and the

12:28:54  5  intervention of the Court and some instruction, can we do

12:28:57  6  that.  I'm not sure what the point is, but again, if

12:28:59  7  Ms. Feiner feels like she needs to file something, then I

12:29:04  8  don't object to a redacted version.

12:29:05  9            THE COURT:  All right.  Well, again, that's

12:29:07  10  strictly up to the Massachusetts AG.  I mean, she's the

12:29:11  11  chief law enforcement officer of the state, and it's not for

12:29:13  12  me to tell her what to do or not to do in terms of filing

12:29:17  13  that.

12:29:18  14      But I'm not prohibiting you, Gillian, in any way from

12:29:24  15  filing the redacted version if that's what you want.

12:29:27  16            MS. FEINER:  Thank you very much, Your Honor.

12:29:28  17  We really appreciate your time and your focus on this.

12:29:31  18            THE COURT:  All right.  Well, that's my -- I'm

12:29:34  19  on this 24/7.  If anyone doubted that, I think I've

12:29:41  20  demonstrated it.

12:29:41  21            MR. FEINER:  That makes two of us.

12:29:41  22            MR. CHEFFO:  We never doubted it.  But we

12:29:43  23  thank you, Your Honor.

12:29:44  24      And thank you, Ms. Feiner.

12:29:45  25            MS. FEINER:  Thank you.

12:29:46  1                    THE COURT:  All right.  Good holidays to

12:29:47  2      everyone.

12:29:47  3                    MS. FEINER:  You as well.

12:29:48  4                    MR. CHEFFO:  Thanks.

12:29:52  5                    (Proceedings adjourned at 12:29 p.m.)

6                         *  *  *  *  *

7                    **C E R T I F I C A T E**

8

9           I certify that the foregoing is a correct transcript

10      of the record of proceedings in the above-entitled matter

11      prepared from my stenotype notes.

12

13                */s/ Lance A. Boardman*_____  *12/20/2018*
                  Lance A. Boardman, RDR, CRR              DATE
14

15

16

17

18

19

20

21

22

23

24

25