**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION | ) | CASE NO. 1:17-MD-2804 |
| OPIATE LITIGATION | ) | |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: | ) | |
| "*Track One Cases*" | ) | |
| | ) | |
| | ) | DISCOVERY RULING NO. 13 |
| | ) | REGARDING VARIOUS MATTERS |

The parties seek rulings, or formalization of earlier informal rulings, on a variety of discovery matters. The Special Master obliges as follows. In some cases, the formal rulings below are different from the informal rulings issued earlier.


**I.      Distributor Defendants' Request that Plaintiffs Supplement Certain Interrogatories.**

Distributors request an order directing Plaintiffs to supplement interrogatories 19, 20, 21, and 29. Distributors explain "[t]hese interrogatories seek factual information that is relevant to whether there is a causal link between Plaintiffs' alleged injuries (expenditures necessitated by their residents' use of opioids) and the Distributor Defendants' alleged breach of duty (fulfilling suspicious pharmacy orders for prescription opioids and/or failing to report them)." Letter from P. Boehm to Special Master at 1. (Nov. 8, 2018). For example, interrogatory 19 ("ROG 19") asks Plaintiffs to "[i]dentify each Person whose use of Prescription Opioids or other drugs resulted in expenditures by You for which you seek damages."

Plaintiffs respond that the responses they have given are sufficient.  For example, in response to ROG 19, Plaintiffs assert they "have already produced thousands of documents identifying individuals whose use or abuse of opioids resulted in governmental expenditures," and that ROG 19 "effectively seeks a subset of information already provided in response Manufacturer Interrogatory 7 and Pharmacy Interrogatory 3."  Letter to P. do Amaral to Special Master at 2 (Dec. 3, 2018).

The Special Master finds well-taken the positions stated in Plaintiffs' Dec. 3, 2018 letter, so no supplementation is required to ROGs 19, 20, 21, or 29.  Plaintiffs existing responses provide defendants with a sufficient understanding of the facts and theories at issue in this case.

If any party chooses to object to this specific ruling, it must: (1) do so on or before December 31, 2018; and (2) provide as exhibits to the Court the three letters to the Special Master on this issue (see Dec. 6, 2018 Discovery Agenda Item no. 3, exhs. 67A-C).


## II.    Additional Deponents.

The parties earlier negotiated a discovery order providing that "[a]ll new requests for depositions of party witnesses (including former employees and independent contractors of a party) . . . should be made as soon as possible, but in any event no later than October 31, 2018, absent agreement of the parties or by order of the Court for good cause."  Order at 8 (docket no. 941).

Subsequently, Special Master Yanni informally extended this deadline to November 19, 2018.  The undersigned then ruled as follows:

> Any party seeking to depose a witness who was identified after 10/31 must show good cause.  The amount of good cause that must be shown increases with each passing day – so that there must be at least some cause shown for identification

2

between the period of 10/31-11/19, and substantial good cause shown thereafter, with the burden increasing on the identifying party as days pass.  Application of that rule is obviously art not science, but the point is that I need more than nothing for every witness identified after 10/31.

Moreover, there will be no identification of any witness for any reason after 12/31; and of course, the burden on 12/30 will have reached a very high measure.

I also note that, while post-10/31 document production may be an aspect of good cause, it is not sufficient by itself; if a party had clear reason to know of a custodian before 10/31, subsequent document production alone does not provide a second chance.  It must be the case that the party requesting a witness after 10/31 has good reasons to not have requested them earlier.

Email to parties (Dec. 6, 2018, 1:02 PM EST).

Plaintiffs have moved for permission to obtain the depositions of various witnesses whom they identified after October 31.  The Special Master has weighed: (1) the dates of identification (e.g. how far past October 31 the witnesses were identified), (2) the reasons plaintiffs assert for not having identified the witnesses earlier (e.g., the amount of good cause shown), (3) the explanation for why plaintiffs need to depose the witness (e.g., the importance of the testimony), (4) agreements between the parties (e.g. agreements to defer the October 31 deadline), and (5) other relevant factors.  Having done so, the Special Master rules as shown in the chart below.

| Defendant | Deponent | Date Depo Requested | Allowed? Y/n |
|---|---|---|---|
| Allergan | 1. Ara Aprahamian | 11/19/2018 | n |
| Allergan | 2. Joyce Delgaudio | 11/19/2018 | YES |
| Allergan | 3. Steven Cohen | 11/19/2018 | YES to Cohen **OR** Pehlke - Ps' choice |
| Allergan | 4. Lisa Pehlke | 11/19/2018 | |
| Allergan | 5. The person with primary responsibility for conducting due diligence re: Allergan's sale of it generic drug business to Teva | 11/19/2018 | n |
| Endo | 1. Bob Barto | June 2018 | YES ** |
| Endo | 2. Colleen Craven | 10/31/2018 | YES |
| Endo | 3. Brian Munroe | 10/31/2018 | YES |
| Endo | 4. Paul Campanelli | 10/31/2018 | YES |
| Endo | 5. George Stevenson | 10/31/2018 | YES |
| Endo | 6. Jon Smollen | 10/31/2018 | YES |
| HD Smith | 1. Doug Robinson | 11/30/2018 | n |

3

| Defendant | Deponent | Date Depo Requested | Allowed? Y/n |
|---|---|---|---|
| HD Smith | 2. Soundaram Vasudevan | 11/30/2018 | n |
| HD Smith | 3. Tom Twitty | 11/30/2018 | n |
| HD Smith | 4. Kyle Reiger | 11/30/2018 | n |
| Insys | 1. Xun (Sean) Yu | 12/10/2018 | n |
| Insys | 2. Jim Doroz | 12/10/2018 | n |
| Insys | 3. Tom Udicious | 12/10/2018 | n |
| Rite Aid | 1. Amy Knisely | 12/2/2018 | YES |
| Rite Aid | 2. John Coster | 12/2/2018 | n |
| Rite Aid | 3. Anthony Belleza | 12/2/2018 | n |
| Rite Aid | 4. Jocelyn Konrad | 12/2/2018 | n |
| Rite Aid | 5. Sarah Everingham | 12/2/2018 | YES |
| Rite Aid | 6. Owen McMahon | 12/2/2018 | n |
| Rite Aid | 7. John Standley | 12/2/2018 | n |
| Rite Aid | 8. Wilson Lester | 12/2/2018 | n |
| Rite Aid | 9. Karyn Kunzig | 12/2/2018 | n |
| Rite Aid | 10. Mark de Bruin | 12/2/2018 | YES |
| Teva | 1. The person with primary responsibility for conducting due diligence re: Teva's purchase of Allergan's generic drug business | 11/19/2018 | n |
| Walmart | 1. Kristy Spruell | 11/19/2018 | YES to 2 of these individuals, Ps' choice |
| Walmart | 2. Jim Sherl | 11/16/2018 | |
| Walmart | 3. Drug Diversion Coordinator (Greg Beam) | 12/3/2018 * | |
| Walmart | 4. Pharmacy AP Manager (Teresa Miller) | 12/3/2018 * | |
| Walmart | 5. Sr. AP Manager of Pharmacy Logistics (Donna Auldridge and James Greer) | 12/3/2018 * | |

 * titles provided 12/3/2018, names provided 12/7/2018.
 ** depo will be in location most convenient to Barto.

If any party chooses to object to this specific ruling, it must: (1) do so on or before December 31, 2018; and (2) provide as exhibits to the Court the communications to the Special Master on this issue (e.g. email dated 12/10/18 from plaintiffs re: "Identification of Additional Deponents;" responsive email dated 12/12/18 from defendants; reply email dated 12/12/18 from plaintiffs).

## III. Specific Prescriptions and Persons.

The issue of plaintiffs' responses to certain of the manufacturers' and pharmacies interrogatories, which the Special Master addressed in Discovery Ruling No. 5 ("DR-5"), continues to be vexing.  DR-5 "addresse[d] Interrogatories propounded by defendants that ask plaintiffs to identify (1) specific, inappropriate opioid prescriptions, and (2) specific persons who became

4

addicted due to those prescriptions." DR-5 at 1 (docket no. 1027). The Special Master ruled that plaintiffs did have to identify specific exemplars of prescriptions and persons. Specifically, plaintiffs had to:

- Identify and describe 500 prescriptions of opioids – including at least 10 prescriptions for an opioid sold by each manufacturing defendant – that were written in Plaintiff's jurisdiction in reliance on any alleged misrepresentations, omissions or other alleged wrongdoing by any Defendant. (Manufacturer ROG 6)
- Identify 300 persons who allegedly became addicted to any substance or was otherwise harmed as a result of any prescription of an opioid(s) in Plaintiff's jurisdiction. (Manufacturer ROG 7)
- Identify and describe 500 prescriptions of opioid(s) – including at least 10 prescriptions for an opioid sold by each manufacturing defendant – that Plaintiff contends were unauthorized, medically unnecessary, ineffective, or harmful. (Manufacturer ROG 10)
- Identify 500 prescriptions – including at least 10 prescriptions for an opioid sold by each manufacturing defendant – upon which Plaintiff bases, or which Plaintiff contends supports, its claims in this case. (Pharmacy ROG 2)
- Identify 500 prescriptions – including at least 10 prescriptions for an opioid sold by each manufacturing defendant – the filling of which caused or led to harm for which Plaintiff seeks to recover in this case. (Pharmacy ROG 3)

Plaintiffs objected to DR-5, asserting they should not have to identify the specific prescriptions and persons required, because they intended to prove their case using only aggregate proof. The Court left DR-5 in place, but amended it as follows:

> Instead of answering the disputed interrogatories as required by the Discovery Ruling, Plaintiffs may instead elect not to answer them **on the condition** that Plaintiffs instead categorically and affirmatively respond to the disputed interrogatories by stating that: (1) they will not assert, either in expert opinions or factual presentations at trial, that any specific prescriptions "were unauthorized, medically unnecessary, ineffective, or harmful" or that "the filling of [any specific prescriptions] caused or led to harm for which [Plaintiffs] seek to recover," and (2) Plaintiffs instead will rely, at trial and in expert opinions, solely on a theory of aggregate proof.

5

Order at 1-2 (docket no. 1047) (footnote omitted; emphasis in original).

Plaintiffs have since tried to answer the Interrogatories several times, but defendants objected to every attempt.  With their most recent responses, Plaintiffs identified specific prescriptions and persons in response to Manufacturer ROGs 7 & 10 and Pharmacy ROGs 2 & 3, but did not identify specific prescriptions in response to Manufacturer ROG 6.  Plaintiffs explained:

> With respect to Interrogatory Nos. 7 and 10, which call for the collection and publication of personal medical records and the assertion of damages on the part of individuals, Plaintiffs stated that, while they intend to rely on aggregate proof, they would also provide additional information.  For Interrogatory No. 6, Plaintiffs elected to rely solely on aggregate proof.

Letter from Mark Dearman to Special Master at 2 (Nov. 26, 2018).

Defendants object that the Court's amendment required Plaintiffs to respond with particularity to *all* or *none* of the five Interrogatories – Plaintiffs cannot "skip" a complete response to ROG 6.  Defendants further complain that plaintiffs did not provide the explanations required by some of the ROGs.  *See* letter to Special Master from D. Welch (11.23.18).

The Special Master rules as follows.  Plaintiffs have two choices, and as to ALL FIVE of the interrogatories discussed in DR-5 (as amended), they must make a single, uniform choice, being either: (a) answer them all fully; or (b) "elect not to answer them [all] and state that: (1) they will not assert, either in expert opinions or factual presentations at trial, that any specific prescriptions 'were unauthorized, medically unnecessary, ineffective, or harmful' or that 'the filling of [any specific prescriptions] caused or led to harm for which [Plaintiffs] seek to recover,' and (2) Plaintiffs instead will rely, at trial and in expert opinions, solely on a theory of aggregate proof."  Order at 1-2 (docket no. 1047).

The Special Master adds three additional points:

6

First, as Plaintiffs suggest, they are certainly free to rely solely on aggregate proof in motions and at trial even if they choose to answer fully all five interrogatories.

Second Plaintiffs are correct that, "[t]o the extent Manufacturers offer proof of individual prescriptions they say contradict Plaintiffs' aggregate theories with respect to reliance, . . . Plaintiffs [are] not . . . precluded from offering specific evidence pertaining to *those same prescriptions* in order to rebut Manufacturers' evidence." Docket no. 1071 at 4 (emphasis added) (noting this would be rebuttal evidence).  For example, there may be a scenario where Plaintiffs elect not to answer the five Interrogatories and the Court still allows them to present purely rebuttal evidence regarding specific prescriptions or specific individuals that were initially raised by defendants.  But that rebuttal evidence probably would not include *other* prescriptions or persons.

Third, with regard to arguments that the responses Plaintiffs did give to Interrogatories 7 and 10 are incomplete:

(a) defendants' request that Plaintiffs should be ordered to "identify[] the alleged misstatement that purportedly caused each prescription that they have identified as unauthorized, unnecessary, and harmful" is overruled.  Letter to Special Master from Donna Welch at 4 (Nov. 23, 2018).  Plaintiffs have sufficiently identified the connections between the prescriptions and misstatements at issue.

and

(b) Plaintiffs shall take steps to address the issues raised by defendants in Sections III-V of Welch's 11/23/18 letter, some (but not all) of which are well-taken.  The parties should meet and confer on these issues.

If any party chooses to object to this specific ruling, it must do so on or before December 31,

2018. If Plaintiffs do not object, their responses to the five interrogatories are due by December 31, 2018.

## IV.     Intervening, Supervening, and Superseding Causes.

Plaintiffs Interrogatory 26 asks Purdue whether it "contend[s] that there were intervening or supervening or superseding causes between Your conduct and any of the Jurisdictions' injuries." Purdue responded that

> [n]umerous intervening and superseding causes will demonstrate that any alleged chain of causation between [defendant's] conduct and the harms described in the Complaint is broken by, among other things, [i] Plaintiffs' failure to exercise due care or properly discharge their duties in the assessment and decision of whether to reimburse for medical services or medications, [ii] criminal drug trafficking, [iii] illegal drug sales, [iv] illegal drug purchases, [v] failure to follow physician's directions for use, [vi] wrongful conduct of prescribers, [vii] wrongful conduct of retail pharmacies, and [viii] use of other drugs including other opioids.

Plaintiffs earlier asked the Special Master to direct Purdue to supplement its response, and the Special Master agreed. Specifically, the Special Master ruled that, "[i]f Purdue intends in any way to rely on any of the [above-listed] intervening or supervening causes . . . in dispositive motions or at trial, then Purdue must state *how* that cause intervened or supervened." Email Ruling (Dec. 11, 2018).

Plaintiffs have asked for reconsideration, asserting that Purdue should – like Plaintiffs were, pursuant to DR-5 – *also* be required to give specific examples.

Upon reconsideration, the Special Master agrees. Accordingly, in addition to stating **how** each above-listed cause intervened or supervened, Purdue is also required to **provide ten specific examples** (including names and addresses if available) of each above-listed intervening or

8

supervening cause.

If any party chooses to object to this specific ruling, it must do so on or before December 31, 2018.  Regardless of whether Purdue chooses to object to this ruling, it must state how each above-listed cause intervened or supervened on or before December 31, 2018.  If Purdue does not object, its ten examples of each intervening or supervening cause are due by January 8, 2018.  If it does object but the objection is overruled, its ten examples of each intervening or supervening cause will be due two days after its objection is overruled.  If its objection is sustained, then of course it will not need to provide any examples.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: December 22, 2018**

9