UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.,* Case No. 18-op-45090;<br>*The County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P.*, Case No. 17-op-45004;<br>*The City of Cleveland, Ohio, et al. v. Purdue Pharma L.P.*, Case No. 18-op-45132 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**OBJECTION TO SPECIAL MASTER'S DISCOVERY RULING NO. 13**

Distributors[1] object to Part I of the Special Master's Discovery Ruling No. 13 (Dkt. No. 1215) (the "Ruling"), which concerns Distributors' Interrogatory Nos. 19, 20, 21, and 29.  The four Interrogatories request that Plaintiffs identify each person whose use or ingestion of prescription opioids or other drugs resulted in expenditures by Plaintiffs for which they seek damages, a description of how that person's use of opioids resulted in expenditures by Plaintiffs, and how Plaintiffs contend that Distributors' conduct caused the expense that Plaintiffs incurred for that individual.

Plaintiffs objected to responding to each Interrogatory, and after meeting and conferring, Distributors moved to compel Plaintiffs to provide responses to the Interrogatories.  On December 22, 2018, Special Master Cohen denied Distributors' motion to compel, stating only

---

[1] AmerisourceBergen Drug Corporation, Anda, Inc., Cardinal Health, Inc., HBC Service Company, H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co., McKesson Corporation, and Prescription Supply, Inc.

Case: 1:17-md-02804-DAP  Doc #: 1219  Filed: 12/31/18  2 of 8.  PageID #: 29245

that he found "well-taken the positions stated in Plaintiffs' Dec. 3, 2018 letter, so no supplementation is required to ROGs 19, 20, 21, or 29.  Plaintiffs existing responses provide defendants with a sufficient understanding of the facts and theories at issue in this case."  Ruling at 2.  Per Special Master Cohen's direction, we attach as Exhibits 1 through 3 the parties' prior briefing on these Interrogatories.  *See* Ex. 1 (Nov. 4, 2018 Letter from P. Boehm to S.M. Cohen); Ex. 2 (Dec. 3, 2018 Letter from P. do Amaral to S.M. Cohen); Ex. 3 (Dec. 4, 2018 Letter from P. Boehm to S.M. Cohen).

Distributors object to the Ruling because Plaintiffs' "existing responses" do not provide Distributors with a sufficient understanding of the factual basis for Plaintiffs' claims.  First, Plaintiffs contend that they have sufficiently responded to the Interrogatories because they produced documents in which purportedly can be found the names of individuals whose use or abuse of opioids resulted in governmental expenditures, including medical examiner's records, court case files, police reports, EMS incident reports, EMS databases, police, fire, and sheriff emergency response incidence reports, and prosecutor and sheriff's files.  But even if Plaintiffs' generalized reference to their document productions were a proper substitute for answers to specific interrogatories,[2] the fact that an autopsy report, for example, might list prescription opioids (likely in conjunction with additional substances) as a cause of an individual's death does nothing to inform Distributors whether Plaintiffs contend that (i) Distributors' conduct

---

[2] Plaintiffs cannot be permitted simply to fall back on Rule 33(d), which applies when "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records."  That rule does not cover this situation where the answer may be determined from business records only through the exercise of *judgment* by Plaintiffs.  Distributors did not ask for the identity of every individual who was injured from drug abuse in Plaintiffs' jurisdictions.  Distributors asked which of all the individuals injured from drug abuse in Plaintiffs' jurisdictions suffered injuries that allegedly resulted in expenses claimed by Plaintiffs as damages.  That cannot be gleaned from business records.

2

contributed to that death and, regarding that individual, (ii) Plaintiffs spent "resources beyond what they had budgeted to attempt to stop the flow of the excess opioids into local communities and to bear the costs associated with cleaning them up."  Opinion and Order (Dkt. No. 1203) at 9–10.

Second, Plaintiffs contend that they already have responded to these Interrogatories because they provided responses to Pharmacies' Interrogatory No. 3, which asked for identification of prescriptions "the filling of which caused or led to harm for which [Plaintiffs] seek to recover in this case."  But Plaintiffs seek damages for more than just legal prescriptions that allegedly caused harm.  Plaintiffs also claim as damages expenses paid in response to injuries to individuals that allegedly resulted from *illicit* opioids.  Indeed, in denying Distributors' motion to dismiss, the Court described the chain of causation that Plaintiffs have pled as follows:  "(i) RICO Marketing Defendants made deceptive claims in promoting their opioids in order to sell more opioids than the legitimate medical market could support (the conduct); (ii) the excess opioids marketed by the RICO Marketing Defendants and distributed by the RICO Supply Chain Defendants were then diverted into an *illicit, black market*; (iii) Plaintiffs were forced to expend resources beyond what they had budgeted to attempt to stop the flow of the excess opioids into local communities and to bear the costs associated with cleaning them up."  Dkt. No. 1203 at 9–10 (emphasis added).[3]  Neither the documents that Plaintiffs have produced thus far (e.g., autopsy reports, police reports, sheriff's files) nor the identification of prescriptions that allegedly led to increased expenditures by Plaintiffs provides the factual information that is necessary to determine if this alleged chain of causation can be proven:  can

---

[3] This description was part of the Court's analysis of proximate cause under RICO, but Distributors understand that Plaintiffs will attempt to prove this chain of causation in order to prove their other claims, as well.

Plaintiffs "connect the dots" between (i) any "excess opioids" allegedly distributed by Distributors, (ii) an "illicit, black market," and (iii) individual users who participated in that "illicit, black market" and concerning whom and on whose behalf Plaintiffs expended public resources?

Third, Plaintiffs contend that they should not have to answer Interrogatory No. 29, which asks Plaintiffs to identify which "suspicious orders" allegedly shipped by each Distributor were diverted, because they "cannot possibly know which pills were actually abused or destroyed, nor are they required to know this in order to prove their case." Ex. 2 at 9. The parties certainly will dispute the proper way for Plaintiffs to prove their case when the time comes, but for now, no matter how they intend to prove their case, Plaintiffs cannot refuse to provide basic and plainly relevant information.[4] At a minimum, Distributors are entitled to information now, while discovery still may be taken, to test (and rebut) the alleged contention that any "excess opioids" allegedly distributed by Distributors fueled an "illicit, black market" that caused Plaintiffs to expend additional public resources.

Distributors also are entitled in discovery to learn the facts necessary to separate (a) the costs that are traceable to use of illicit substances from costs that are traceable to use of prescription opioids, (b) the costs that are traceable to misuse of prescription opioids from costs that are traceable to legitimate use of prescription opioids, and (c) the costs that are traceable to

---

[4] In their opposition to Distributors' motion to compel, Plaintiffs likened the opioid epidemic to an "oil spill." Ex. 2 at 10–11. Distributors dispute that the claims here are anything like the claims in an oil spill case and dispute that causation will be so easily proven as Plaintiffs contend. But those are issues for summary judgment, not this discovery dispute. For now, the question is whether the requested discovery is relevant and proportional to the needs of the case—which it is for the reasons stated herein and in Exhibits 1 and 3.

diversion of pills filled by allegedly suspicious orders from the costs that are traceable to pills that were filled by indisputably legitimate orders (according to the Second Amended Complaint, the vast majority of orders, because the allegedly deceptive marketing campaign changed the medical orthodoxy for prescribing pain medications).  Each of these steps requires at the outset the identification of individuals whose opioid use resulted in Plaintiffs' alleged expenditures.

Fourth, Plaintiffs raise a host of privacy concerns regarding the identity of individuals for whom they claim to have expended additional resources.  If the Court determines that the information is relevant and should be provided, the Court has the tools to address those concerns and can fashion suitable protections, as it has done with the ARCOS data and other sensitive, otherwise confidential information.

In order to fast-track this dispute for the Court given the impending close of fact discovery, and in order to meet the Special Master's shortened deadline to file this objection,[5] and at his direction to attach the prior briefing to this Objection, Distributors also incorporate their prior briefing to the Special Master on these Interrogatories.  *See* Exs. 1, 3.

For the reasons given herein, and those given in Exhibits 1 and 3, Distributors respectfully request that Plaintiffs be required to provide substantive answers to Interrogatory Nos. 19, 20, 21, and 29.

---

[5] The Special Master shortened the 21-day deadline for objections set by this Court and the Federal Rules of Civil Procedure to only nine days.  *See* Fed. R. Civ. P. 53(f)(2) ("A party may file objections to ... the master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time."); Appointment Order (Dkt. No. 69) at 4 ("Pursuant to Rule 53(f)(2) any party may file an objection to an order, finding, report, ruling, or recommendation by the Special Masters within 21 calendar days of the date it was filed ....").

Dated:  December 31, 2018    Respectfully submitted,

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*


*/s/ Robert A. Nicholas (consent)*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*


*/s/ Geoffrey Hobart (consent)*
Geoffrey Hobart
Mark Lynch
Christian Pistilli
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281

6

ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*

*/s/ James W. Matthews (consent)*
James W. Matthews
Katy E. Koski
Redi Kasollja
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
rkasollja@foley.com

*Counsel for Defendant Anda, Inc.*

*/s/ John J. Haggerty (consent)*
John J. Haggerty
**FOX ROTHSCHILD LLP**
2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel.: (215) 345-7500
Fax: (215) 345-7507
jhaggerty@foxrothschild.com

*Counsel for Prescription Supply, Inc.*

*/s/ William E. Padgett (consent)*
William E. Padgett
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 236-1313
Fax: (317) 231-7433
william.padgett@btlaw.com

*Counsel for H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.*

*/s/ Robert M. Barnes (consent)*
Robert M. Barnes

>Scott D. Livingston
>Joshua A. Kobrin
>**MARCUS & SHAPIRA LLP**
>35th Floor, One Oxford Centre
>301 Grant Street
>Pittsburgh, PA 15219
>Tel: (412) 471-3490
>Fax: (412) 391-8758
>rbarnes@marcus-shapira.com
>livingston@marcus-shapira.com
>kobrin@marcus-shapira.com
>
>*Counsel for HBC Service Company*

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document and supporting papers were served via the Court's ECF system to all counsel of record.

>*/s/ Ashley W. Hardin*
>Ashley W. Hardin