LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

PAUL BOEHM
(202) 434-5366
pboehm@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

November 8, 2018

**Via Electronic Mail**

Special Master David Cohen
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44113-1837
david@specialmaster.law

> Re:   *In re: National Prescription Opiate Litigation*, MDL No. 2804

Dear Special Master Cohen,

I write concerning Plaintiffs' refusal to provide a substantive answer to the Distributor Defendants' Interrogatory Nos. 19, 20, 21, and 29. These interrogatories seek factual information that is relevant to whether there is a causal link between Plaintiffs' alleged injuries (expenditures necessitated by their residents' use of opioids) and the Distributor Defendants' alleged breach of duty (fulfilling suspicious pharmacy orders for prescription opioids and/or failing to report them).

Plaintiffs do not allege that the Distributor Defendants' fulfillment of pharmacy orders for prescription opioids ***directly*** caused their injuries. Rather, Plaintiffs claim that the Distributor Defendants filled and/or failed to report suspicious orders and that those orders were, (i) used in part to fill illegitimate prescriptions for opioids, (ii) which led to opioid misuse or abuse by Plaintiffs' residents (iii) that in turn necessitated Plaintiffs incurring significant expenses in providing services (such as first responder costs, healthcare costs, etc.). Each expenditure incurred by Plaintiffs is traceable to particular individuals who used opioids. These interrogatories ask Plaintiffs to identify those individuals whose opioid use resulted in financial harm to Plaintiffs and to describe how Plaintiffs trace those individuals' opioid use on which their damages are based to suspicious orders filled by the Distributor Defendants. The Distributor Defendants need this information now so that they can conduct discovery to rebut the alleged connection between Plaintiffs' claimed damages and the Distributor Defendants' alleged conduct.

WILLIAMS & CONNOLLY LLP

November 8, 2018
Page 2

### A.    Background

Interrogatory Nos. 19, 20, 21, and 29 are contained in the Distributor Defendants' Third and Fourth Sets of Interrogatories, which were served on June 8 and August 1, 2018. *See* Ex. A, B. Each interrogatory asked Plaintiffs to identify the individuals and entities whose use of opioids resulted in Plaintiffs' injuries. Nos. 19 and 20 asked Plaintiffs to identify all individuals whose use or abuse of opioids caused Plaintiffs to incur expenses:

> 19. ***Identify each Person whose use of Prescription Opioids or other drugs resulted in expenditures by You for which you seek damages.*** For each such person, provide the following information: a description of how each Person's use of Prescription Opioids or other drugs resulted in Your expenditures; the date of any such expenditures; the Controlled Substance(s) ingested by such Person; from whom such Person obtained the Controlled Substance(s) that caused his or her injury; which entity manufactured and sold the Controlled Substance(s) used by such Person; which Distributor Defendant, if any, distributed the Controlled Substance(s) used by such Person; and whether the Controlled substance(s) were distributed as part of a Suspicious Order (and if so, what made the order suspicious).

> 20. ***Identify each Person to whom You provided treatment or assistance related to Prescription Opioid addiction, abuse, or overdose during the Timeframe.*** For each such Person, provide the following information: the name of the individual; the date of addiction, abuse, or overdose; the drug or drugs involved; which entity manufactured and sold the Controlled Substance(s) used by such Person which Distributor Defendant, if any, distributed Prescription Opioids used by the Person; and whether the Prescription Opioids used by the Person were distributed as part of a Suspicious Order (and if so what made the order suspicious); the nature of treatment or assistance provided; the cost of treatment or assistance provided; and the source of funding for treatment or assistance provided.

No. 21 asked Plaintiffs to identify children born addicted to opioids who caused Plaintiffs to incur costs:

> 21. ***Identify all children, including infants born addicted to opioids, for whom You incurred costs for which you seek damages.*** For each such Person, please provide the following: the name of such Person; the name of such Person's parent(s); the Controlled Substances possessed or ingested by such Peron's parent(s); which entity manufactured and sold the Controlled Substance(s) used by such Person the source of the

WILLIAMS & CONNOLLY LLP

November 8, 2018
Page 3

> Controlled Substance possessed or ingested by such Person's parents(s);
> the date, nature, and cost of any services incurred as a result of such
> Person; which Distributor Defendant, if any, distributed the Controlled
> Substance possessed or ingested by such Person's parent(s); and whether
> the Controlled Substances were distributed as part of a Suspicious Order
> (and if so what made the order suspicious).

No. 29 asked Plaintiffs to identify what happened to the opioids that were shipped pursuant to orders that they now allege are suspicious orders:

> 29. *For each Suspicious Order that You contend was shipped into Your geographic area by a Distributor Defendant, identify how, if at all, the Prescription Opioids were used following the shipment,* including what percentage of the Prescription Opioids that were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed, and if the Prescription Opioids were diverted, abused, or otherwise used improperly, who was involved in such diversion, abuse, or other improper use.

Each of the Track One Plaintiffs refused to provide the requested discovery.[1]  Plaintiffs objected, *inter alia*, that "[t]his is not a collection of personal injury cases and Plaintiff[s] do[] not seek any personal injury damages suffered by its residents"; that they "will prove causation through aggregate proof"; and that this interrogatory is "contention discovery" and "will be the subject of a fully-supported and detailed expert witness opinion(s)."[2]

The Distributor Defendants met and conferred with counsel for each of the Track One Plaintiffs regarding these interrogatories in August and September.  Counsel declined to reconsider their objections.  Asked whether each Plaintiff *can* provide the requested information at this time (as distinct from whether they will or should do so), counsel refused to answer.

## B.    Argument

Plaintiffs allege a long list of vaguely defined damages implicating virtually every agency and a wide array of governmental operations.[3]  According to Plaintiffs, these alleged damages, which encompass everything from costs incurred by police officers and first responders to the "impact of [the] opioid epidemic on Plaintiffs' vehicle fleets," resulted from the Distributor Defendants' alleged failure to report and halt shipment of suspicious orders of prescription opioids in Plaintiffs' jurisdictions.  But, undisputedly, the Distributor Defendants' alleged

---

[1]    *See* Exs. C, D, E, F, G, H.

[2]    *See e.g.*, Ex. C, at 18–20.

[3]    *See* Second Am. Corr. Compl. of Summit County, ¶ 972; Ex. C, at 15–17.

WILLIAMS & CONNOLLY LLP

November 8, 2018
Page 4

shipment of suspicious orders by itself does not directly cause any of these alleged damages. Rather, Plaintiffs' alleged damages arose only after the involvement of a number of intervening acts by intermediate third parties: to name just a few—the prescribers who wrote the prescriptions, the pharmacies that filled them, the individual users of the opioids, and any individuals who diverted the opioids.

The purpose of this motion is not to debate the legal sufficiency of this attenuated causal chain. Rather, this motion simply seeks an order compelling Plaintiffs to identify the factual information that is necessary to determine if the chain exists—to "connect the dots" between the Distributor Defendants' conduct and Plaintiffs' alleged injuries. *Kanu v. Siemens PLM*, 2018 WL 776274, at *5 (S.D. Ohio Feb. 8, 2018). Interrogatory Nos. 19, 20, 21, and 29 ask Plaintiffs to disclose factual information that is essential to testing whether Plaintiffs can connect (i) their alleged expenditures for services to individuals, (ii) the individuals to misuse of prescription opioids, and (iii) the misuse to pills that were shipped by a particular Distributor Defendant in response to a suspicious pharmacy order. For the reasons explained below, Interrogatory Nos. 19, 20, 21, and 29 are directly relevant and proportional to the parties' claims and defenses.

### 1.    Defendants seek highly relevant information.

Interrogatory Nos. 19, 20, and 21 ask Plaintiffs to identify the individuals who, as a result of opioid use, received government services from Plaintiffs for which Plaintiffs seek recovery in this litigation. With few exceptions, each of Plaintiffs' alleged damages could only have resulted from a particular individual's abuse of opioids. *See State of New Jersey v. Purdue Pharma, L.P.*, 2018 WL 4829660, at *17 (N.J. Super. Ct. Oct. 2, 2018) ("The roots of the State's claimed injuries are the physical effects of the opioids on patients."). For example, when an overdose occurs, a first responder may be called to the victim's home, an ambulance may transport the victim to a hospital, the hospital may administer medical care, and the ADM Board subsequently may provide addiction therapy. All of these costs stem from and are directly traceable to that individual's use of opioids. Plaintiffs cannot connect their alleged injuries to a suspicious order (and, thus, to a specific Distributor Defendant) without first identifying these individuals. *See Kanu v. Siemens PLM*, 2018 WL 776274, at *5 (S.D. Ohio Feb. 8, 2018).

Plaintiffs then need to connect a particular Distributor Defendant's shipment of suspicious orders to these individuals' use of opioids. A suspicious order originates from a specific pharmacy, and, as a general rule, a pharmacy has a customer relationship with ABDC, McKesson *or* Cardinal Health, not all three. Moreover, the mere fact that an order was "suspicious" does not mean that all—or even any—of the medications shipped in response to that order ended up in the wrong hands or were used improperly. Therefore, Interrogatory No. 29 asks Plaintiffs to identify how prescription opioids shipped pursuant to a suspicious order were used. Given that a Distributor Defendant's alleged duty is to report and halt shipment of suspicious **orders** of prescription opioids, a Distributor Defendant is potentially liable **only** for specific expenditures that (1) Plaintiffs incurred providing services (2) that were necessitated by individuals using prescription opioids (3) that had been dispensed using pills that were part of a

WILLIAMS & CONNOLLY LLP

November 8, 2018
Page 5

pharmacy's suspicious order (4) that should not have been shipped or (5) should have been reported to the DEA and the DEA would have investigated and taken regulatory or law enforcement action in connection with that order.  *See City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*, 863 F.3d 474, 480 (6th Cir. 2017) (holding that the City's "failure to tether the damages to nuisance-related problems . . . prevents us from assessing the 'directness' of the relationship between the two.").

        Even if Plaintiffs intend to try to satisfy their burden of proof without (a) identifying the individuals who received government services, (b) connecting Plaintiffs' expenses to opioids used by these individuals, *and* (c) connecting the opioids used by these individuals to suspicious orders shipped by the Distributor Defendants, the Distributor Defendants still are entitled to this relevant discovery to develop a defense showing these connections do not exist.

        The Distributor Defendants are also entitled to this discovery for purposes of preparing their defense to Plaintiffs' assertion of damages resulting, not from misuse of prescription opioids, but from their residents' misuse of *non-prescription, illegal* opioids, such as heroin or carfentanil.  As Plaintiffs concede, the epidemic of opioid abuse is wide-reaching and is hardly limited to prescription opioids that are prescribed, dispensed, and ingested only through legitimate channels.  See Compl. ¶ 723.  Already, discovery has shown that *most* of the drug overdoses necessitating expenditures by Plaintiffs resulted from use of illicit opioids, or from mixing opioids with other substances like alcohol, cocaine, or methamphetamine, where there is no evidence that the individual who overdosed ever used prescription opioids.  *See* Tr. Gary Guenther, Summit County Chief Forensic Examiner, 186:9-10 ("[Y]ou don't need to be a doctor to say don't mix, you know, oxycodone or Oxycontin with alcohol.").  The Distributor Defendants are entitled to learn in discovery the facts necessary to separate (a) the costs that are traceable to use of illicit substances from costs that are traceable to use of prescription opioids, (b) the costs that are traceable to misuse of prescription opioids from costs that are traceable to legitimate use of prescription opioids, and (c) the costs that are traceable to diversion of pills filled by allegedly suspicious orders from the costs that are traceable to pills that were filled by indisputably legitimate orders.  Each of these steps requires at the outset the identification of individuals whose opioid use resulted in Plaintiffs' alleged expenditures.

        The fact that Plaintiffs do not seek "personal injury damages suffered by [their] residents" does not relieve Plaintiffs of providing this discovery because they do seek recovery for damages that they incurred as a result of alleged personal injury damages suffered by their residents.  It is undeniable that none of Plaintiffs' alleged injuries would have occurred if their residents had not used opioids.  Plaintiffs cannot avoid their basic burden to demonstrate, nor impair Defendants' right to explore, whether those individuals' opioid use connects both to the Plaintiffs' alleged injuries and Defendants' alleged conduct.  *Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869, 875 (Ill. App. 2003) ("Acceptance of such a theory . . . would result in an abandonment of the principle that, to be held liable, a causative link must be established between a defendant's tortious acts and the plaintiff's injuries.").

WILLIAMS & CONNOLLY LLP

November 8, 2018
Page 6

     In sum, Plaintiffs should be required either to identify the universe of individuals whose use of opioids resulted in Plaintiffs' alleged injuries and connect that use to suspicious orders filled by the Distributor Defendants, or else disclaim all expenditures resulting from individuals they do not or cannot identify.

### 2.     This request seeks discovery not covered by previous rulings concerning unnecessary prescriptions.

     The Distributor Defendants' requests are different from the Manufacturer and Pharmacy Defendants' requests and are not encompassed by Discovery Ruling No. 5. In Discovery Ruling No. 5, the Special Master ordered Plaintiffs to identify 500 unnecessary or illegitimate prescriptions and 300 individuals who received such an unnecessary or illegitimate prescription. Modifying the Special Master's Ruling, Judge Polster gave Plaintiffs the option to categorically and affirmatively waive their right to assert that any specific prescriptions were unauthorized or medically unnecessary and rely instead "solely on a theory of aggregate proof." Dkt. 1047, at 1–2.

     The Interrogatories at issue here seek a different set of information that is necessary to connect Plaintiffs' expenditures to the Distributor Defendants' alleged conduct. The Distributor Defendants' Interrogatory Nos. 19, 20, and 21 ask Plaintiffs to identify those individuals whose use of prescription opioids resulted in harm *to Plaintiffs*. By contrast, the Manufacturer Defendants' Interrogatory No. 7 asked Plaintiffs to identify who was harmed by "any substance" or "as a result of any prescription opioids." Identifying individuals harmed from "any substance" or opioids may be relevant to connecting the Manufacturing Defendants' representations about prescription opioids to individual users. But that information does not demonstrate the universe of individuals whose use of opioids resulted in Plaintiffs' expenditures, nor does it connect Plaintiffs' expenditures to orders that the Distributor Defendants allegedly shipped improperly. Distributor Defendants need this information to prove their defenses.

     Moreover, identifying individual users whose opioid use caused Plaintiffs' injuries does not present the same practical burdens that Plaintiffs may face in identifying unauthorized or medically unnecessary prescriptions. Plaintiffs objected to Discovery Ruling No. 5 on the basis that they "have very limited amounts of prescription data in their possession, custody, or control." Dkt. 1031, at 11. Even assuming that is correct, the same is not true of the information the Distributor Defendants request. Plaintiffs cannot argue that these records are not in "their possession, custody, or control." When the city and county Plaintiffs spend money or resources as a result of an individual's misuse of opioids, the expenditure and the individual's identity necessarily are memorialized in city or county records, *i.e.*, bills associated with ambulances or hospital care, coroner reports, detoxification intake forms, etc. Nor can Plaintiffs be excused from the obligation of producing essential discovery merely by claiming it is burdensome. Plaintiffs have alleged billions of dollars in damages based on services provided to thousands of individual opioid users, and claims of such magnitude impose some burden. Defendants are

WILLIAMS & CONNOLLY LLP

November 8, 2018
Page 7

entitled to this information in order to conduct any discovery necessary to vet Plaintiffs' claims before the close of fact discovery.

* * * * *

These interrogatories seek information that is vital to plaintiffs' claims – and therefore to the Distributor Defendants' ability to defend against those claims.  Plaintiffs have no legitimate reason for refusing to supply this information, and they should be ordered to do so.

Sincerely,

*Paul E. Boehm* / BDM

Paul E. Boehm

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**THE COUNTY OF SUMMIT, OHIO;**
**AND CITY OF AKRON, OHIO;**
**STATE OF OHIO EX REL. PROSECUTING**
**ATTORNEY FOR SUMMIT COUNTY,**
**SHERRI BEVAN WALSH, AND THE**
**DIRECTOR OF LAW FOR THE CITY OF**
**AKRON, EVE BELFANCE,**

        **Plaintiffs,**

**v.**                                                   **Case No. 1:18-op-45090**
                                                         **Hon. Judge Dan A. Polster**

**PURDUE PHARMA LP; PURDUE**
**PHARMA, INC.; THE PURDUE**
**FREDERICK COMPANY,**
**INC.; TEVA PHARMACEUTICALS USA,**
**INC.; CEPHALON, INC.; JOHNSON &**
**JOHNSON; JANSSEN**
**PHARMACEUTICALS, INC.;**
**ORTHO-MCNEIL–JANSSEN**
**PHARMACEUTICALS, INC. N/K/A**
**JANSSEN PHARMACEUTICALS, INC.;**
**JANSSEN PHARMACEUTICA, INC. N/K/A**
**JANSSEN PHARMACEUTICALS, INC.;**
**ENDO HEALTH SOLUTIONS INC.; ENDO**
**PHARMACEUTICALS, INC.; INSYS**
**THERAPEUTICS, INC.; CARDINAL**
**HEALTH, INC.; MCKESSON CORPORATION;**
**AMERISOURCEBERGEN DRUG CORPORATION;**
**and JANE DOES 1 – 50,**

        **Defendants.**

**DISTRIBUTOR DEFENDANTS' THIRD SET OF**
**INTERROGATORIES TO PLAINTIFFS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as the Case

Management Order in *In re National Prescription Opiate Litigation* (Dkt. No. 232 in No. 1:17-

cv-2804), Distributor Defendants[1] hereby request that each Plaintiff in the above-captioned civil action individually respond to the following Interrogatories in accordance with their obligations under the Federal Rules of Civil Procedure.  Responses to the Interrogatories shall be provided in the manner required by Rule 33, the Local Rules of the Northern District of Ohio, this Court's Case Management Order One entered on April 11, 2018, Doc. No. 232, and any other applicable law or rules, within thirty (30) days of the service of these Interrogatories.

If any Plaintiff finds any term or other aspect of any of the Interrogatories vague, ambiguous, or otherwise objectionable and intends to so object, counsel for the Distributor Defendants offer to promptly meet with counsel for that Plaintiff to endeavor to resolve any issues.

## DEFINITIONS

1.      "Person" means any individual, corporation, firm, partnership, joint venture, unincorporated association, trade association, governmental entity, dealer group, council or other incorporated or unincorporated entity, business entity or group of individuals or entities, singular or plural, as the content may require.

2.      "Prescription Opioid(s)" refers to FDA-approved pain-reducing medications consisting of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in a patient's brain or body to produce an analgesic effect, including, but not limited to, the Prescription Opioids referenced in the Complaint for the wholesale distribution of which Plaintiffs seek to hold the Distributor Defendants liable.

3.      "Plaintiff" means each of the twenty-three individual plaintiffs named in this action, including the executive and legislative branches, agencies, offices, departments,

---

[1] The Distributor Defendants are AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation.

divisions, commissions, agents, employees, boards, instrumentalities, vendors, administrators, and other persons or entities acting on each named plaintiff's behalf or controlled by each named plaintiff. When the pronouns "You" or "Your" are used, their antecedent is each individual responding Plaintiff.

4.     "Suspicious Order(s)" means any order of Prescription Opioids placed by any source that Plaintiff believes, suspects, or contends should have been reported to the DEA or Ohio authorities, including the Ohio Board of Pharmacy. Suspicious Orders are not limited to those placed with the Distributor Defendants, but include those placed with any entity that has a regulatory reporting obligation.

5.     "Timeframe" includes each year during which plaintiff claims any Distributor Defendant engaged in any allegedly wrongful or unlawful conduct that caused damage to the Plaintiff or such other period as the parties may later agree or the Court determines should apply to each side's discovery in this action.

## INSTRUCTIONS

Each Plaintiff must individually respond to each of these Interrogatories.

## INTERROGATORIES

13.     State the date(s) upon and the manner in which You first became aware that Prescription Opioids were being abused in Your geographic boundaries, that Prescription Opioids were being diverted in Your geographic boundaries and/or by Your residents, and that addiction to Prescription Opioids was occurring and/or increasing in Your geographic boundaries.

14.     State the number of pills or other dosage units of Prescription Opioids that were diverted from legitimate medical purposes in Your geographic boundaries, and the number of pills or other dosage units of Prescription Opioids that were dispensed for other than legitimate medical

purposes in Your geographic boundaries for each year during the Timeframe, and describe how each number was calculated.

15.     State the maximum number of pills or other dosage units of Prescription Opioids that should properly have been distributed in Your geographic boundaries for legitimate medical purposes during the Timeframe.  In Your response, explain how You calculated that number, including any per capita, per patient, drug family or other grouping, or any other basis on which you rely.

16.     Identify every specific prescription that You believe, suspect, or contend was diverted or used—in whole or in part—for other than legitimate medical, scientific, research, or industrial purposes in Your geographical area.  Include in your response: the date the prescription was written; the name(s) of the Controlled Substance(s) prescribed; the quantity of Controlled Substance(s) prescribed; the recipient of each prescription; the name of the prescriber; the name of the dispensing pharmacy, hospital, or clinic; the date the prescription was filled; whether any Defendant was involved in the Distribution of that Controlled Substance(s); whether the Controlled Substance(s) were distributed as part of a Suspicious Order (and if so what made the order suspicious); and the reason(s) why you believe, suspect, or contend that all or part of the prescription was diverted.[2]

17.     To the extent not already identified in response to Interrogatory Number 16, identify every pharmacy, clinic, or hospital inside or outside Your geographic boundaries whose conduct with respect to Prescription Opioids You believe, suspect, or contend caused harm within Your

---

[2] Distributor Defendants acknowledge that the Court has required Plaintiffs to provide some of this information by July 16, 2018.  Distributor Defendants' request, however, is broader than the relevant provision of the CMO.  And Defendants need the information they have requested more than one day in advance of the July 17, 2018 deadline for Defendants to add parties without leave of Court. *See* CMO 1 at 9.  Defendants also require this information to conduct further discovery in Track One Cases.

geographic boundaries.  For each such pharmacy, clinic, or hospital, provide all facts You know

that support Your belief, suspicion, or contention, including (without limitation): the name of the

pharmacy, clinic, or hospital; each prescription filled by the pharmacy, clinic, or hospital that

You believe, suspect, or contend caused harm in Your geographic boundaries; the date that each

such prescription was written; the name of the prescriber; the name of the recipient of the

prescription; the name(s) of the Prescription Opioids prescribed; the quantity of Prescription

Opioids prescribed; the date the prescription was filled; whether any Defendant was involved in

the Distribution of that Controlled Substance(s); whether the Controlled Substance(s) were

distributed as part of a Suspicious Order (and if so what made the order suspicious); and the

reason(s) why You believe, suspect, or contend the prescription caused harm within Your

geographic boundaries.

18.     Specify each category of injury (e.g. increased cost of law enforcement, fire, emergency

services, etc.) for which You claim damages in the Litigation and provide a computation of

damages for each category of injury alleged.  For each category of injury, identify all Persons

with knowledge about such damages.

19.     Identify each Person whose use of Prescription Opioids or other drugs resulted in

expenditures by You for which you seek damages.  For each such person, provide the following

information: a description of how each Person's use of Prescription Opioids or other drugs

resulted in Your expenditures; the date of any such expenditures; the Controlled Substance(s)

ingested by such Person; from whom such Person obtained the Controlled Substance(s) that

caused his or her injury; which entity manufactured and sold the Controlled Substance(s) used by

such Person; which Distributor Defendant, if any, distributed the Controlled Substance(s) used

by such Person; and whether the Controlled Substance(s) were distributed as part of a Suspicious

Order (and if so what made the order suspicious).

20.    Identify each Person to whom You provided treatment or assistance related to

Prescription Opioid addiction, abuse, or overdose during the Timeframe.  For each such Person,

provide the following information:  the name of the individual; the date of addiction, abuse, or

overdose; the drug or drugs involved; which entity manufactured and sold the Controlled

Substance(s) used by such Person which Distributor Defendant, if any, distributed Prescription

Opioids used by the Person; and whether the Prescription Opioids used by the Person were

distributed as part of a Suspicious Order (and if so what made the order suspicious); the nature of

treatment or assistance provided; the cost of treatment or assistance provided; and the source of

funding for treatment or assistance provided.

21.    Identify all children, including infants born addicted to opioids, for whom You incurred

costs for which you seek damages.  For each such Person, please provide the following: the name

of such Person; the name of such Person's parent(s); the Controlled Substances possessed or

ingested by such Person's parent(s); which entity manufactured and sold the Controlled

Substance(s) used by such Person the source of the Controlled Substance possessed or ingested

by such Person's parent(s); the date, nature, and cost of any services incurred as a result of such

Person; which Distributor Defendant, if any, distributed the Controlled Substance possessed or

ingested by such Person's parent(s); and whether the Controlled Substances were distributed as

part of a Suspicious Order (and if so what made the order suspicious).

22.    Identify all efforts You have made to recover expenditures related to Prescription Opioid

abuse, misuse, or addiction in Your geographic boundaries from any entities or individuals who

have been charged with criminal offenses relating to or caused by such abuse, misuse, or

addiction, including, without limitation, pharmacists, pharmacies, doctors, clinics, drug dealers, drug traffickers, or drug trafficking organizations.

**AMERISOURCEBERGEN DRUG CORPORATION, CARDINAL HEALTH, INC., and MCKESSON CORPORATION,**

**By counsel**

*/s/ Shannon E. McClure*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH, LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
rnicholas@reedsmith.com
smcclure@reedsmith.com

Alvin L. Emch
aemch@jacksonkelly.com
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
(304) 340-1000

*Counsel for AmerisourceBergen Drug Corporation*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard
Steven M. Pyser
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street NW
Washington, DC 20005
emainigi@wc.com
lheard@wc.com
spyser@wc.com

*Counsel for Cardinal Health, Inc.*

*/s/ Mark Lynch*

Mark H. Lynch
mlynch@cov.com
Geoffrey E. Hobart
ghobart@cov.com
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001-4956
Phone:  (202) 662-6000

Emily Johnson Henn
ehenn@cov.com
**COVINGTON & BURLING LLP**
333 Twin Dolphin Drive
Suite 700
Redwood Shores, CA 94065
Phone:  (650) 632-4700

*Counsel for McKesson Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah B. Johansen, among the liaison counsel for the Distributor Defendants, certify that on June 8 2018, I caused the foregoing to be served via electronic mail on the individuals on the attached service list.


<u>/s/ Sarah B. Johansen</u>

## SERVICE LIST

*Liaison Counsel for Plaintiffs:*

Peter Henry Weinberger, Esq.
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114-1149
(216) 696-3232
pweinberger@spanglaw.com

Steven J. Skikos, Esq.
SKIKOS CRAWFORD SKIKOS & JOSEPH
One Sansome Street, Suite 2830
San Francisco, CA 94104
(415) 546-7300
sskikos@skikoscrawford.com

Troy A. Rafferty, Esq.
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
(805) 435-7000
trafferty@levinlaw.com

*Liaison Counsel for Defendants:*

Mark S. Cheffo, Esq.
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Mark.cheffo@dechert.com

Carole Rendon, Esq.
BAKER HOSTETLER
127 Public Square
Suite 2000
Cleveland, OH 44114
crendon@bakerlaw.com

Enu Mainigi, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
emainigi@wc.com

Shannon McClure, Esq.
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
smcclure@reedsmith.com

Geoffrey E. Hobart, Esq.
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
ghobart@cov.com

Kaspar J. Stoffelmayr, Esq.
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
kaspar.stoffelmayr@bartlit-beck.com

Tina Tabacchi, Esq.
JONES DAY
77 West Wacker Drive
Chicago, IL 60601
tmtabacchi@jonesday.com

Tyler Tarney, Esq.
GORDON & REES LLP
41 South High Street, Suite 2495
Columbus, OH 43215
ttarney@grsm.com

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document applies to:<br><br>*The County of Summit, Ohio. v. Purdue Pharma L.P.*, Case No. 18-OP-45090; | )<br>)<br>)<br>)  **MDL No. 2804**<br>)<br>)  **Case No. 17-md-2804**<br>)<br>)  **Judge Dan Aaron Polster**<br>)<br>)<br>)<br>)<br>) |

**DISTRIBUTOR DEFENDANTS' FOURTH SET OF
INTERROGATORIES TO PLAINTIFFS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as the Case Management Order in *In re National Prescription Opiate Litigation* (Dkt. No. 232 in No. 1:17-cv-2804), Distributor Defendants hereby request that each Plaintiff in the above-captioned civil action individually respond to the following Interrogatories in accordance with their obligations under the Federal Rules of Civil Procedure.  Responses to the Interrogatories shall be provided in the manner required by Rule 33, the Local Rules of the Northern District of Ohio, this Court's Case Management Order One entered on April 11, 2018, Doc. No. 232, and any other applicable law or rules, within thirty (30) days of the service of these Interrogatories.

If any Plaintiff finds any term or other aspect of any of the Interrogatories vague, ambiguous, or otherwise objectionable and intends to so object, counsel for the Distributor Defendants offer to promptly meet with counsel for that Plaintiff to endeavor to resolve any issues.

1

## DEFINITIONS

1.      "Person" means any individual, corporation, firm, partnership, joint venture, unincorporated association, trade association, governmental entity, dealer group, council or other incorporated or unincorporated entity, business entity or group of individuals or entities, singular or plural, as the content may require.

2.      "Prescription Opioid(s)" refers to FDA-approved pain-reducing medications consisting of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in a patient's brain or body to produce an analgesic effect, including, but not limited to, the Prescription Opioids referenced in the Complaint for the wholesale distribution of which Plaintiffs seek to hold the Distributor Defendants liable.

3.      "Plaintiff" means each of the twenty-three individual plaintiffs named in this action, including the executive and legislative branches, agencies, offices, departments, divisions, commissions, agents, employees, boards, instrumentalities, vendors, administrators, and other persons or entities acting on each named plaintiff's behalf or controlled by each named plaintiff.  When the pronouns "You" or "Your" are used, their antecedent is each individual responding Plaintiff.

4.      "Suspicious Order(s)" means any order of Prescription Opioids placed by any source that Plaintiff believes, suspects, or contends should have been reported to the DEA or Ohio authorities, including the Ohio Board of Pharmacy.  Suspicious Orders are not limited to those placed with the Distributor Defendants, but include those placed with any entity that has a regulatory reporting obligation.

5.      "Timeframe" includes each year during which plaintiff claims any Distributor Defendant engaged in any allegedly wrongful or unlawful conduct that caused damage to the

Plaintiff or such other time period as the parties may later agree or the Court determines should apply to each side's discovery in this action.

## INSTRUCTIONS

Each Plaintiff must individually respond to each of these Interrogatories.

## INTERROGATORIES

23      Identify each Suspicious Order that you believe was shipped to Your geographic area by a Distributor Defendant during the time period for which you seek damages in this lawsuit.  For each order, identify the date the order was shipped, the medication shipped, the number of dosage units shipped, the number of dosage units that you contend would have been permissible to ship, the reason you believe the order was suspicious, the Distributor Defendant that shipped the allegedly Suspicious Order, and the person or entity that placed the order.

24.      Identify all false and/or fraudulent information that You allege any Distributor Defendant supplied to the Drug Enforcement Administration about Suspicious Orders as alleged in Paragraph 859 of the Second Amended Complaint.

25.      Identify with specificity each of the predicate acts of racketeering activity You allege each of AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation committed, conspired to commit, and/or aided and abetted the commission of for the time period you seek damages in this lawsuit.  For each predicate act, provide the date, the conduct that constituted the predicate act, the Defendant(s) involved, the reason that conduct constituted a predicate act of racketeering, and any other individuals/entities involved.

26.      Identify all facts and evidence that support Your contention that the Distributor Defendants agreed to implement similar tactics in their refusal to report Suspicious Orders as

alleged in Paragraph 922 of the Second Amended Complaint.

27.  Identify and describe each statement or omission relating to Prescription Opioids that were made or disseminated by any of the Manufacturer Defendants and that You allege the Distributor Defendants knew were false, misleading, unfair, deceptive or otherwise actionable and, for each, identify each specific Distributor Defendant who had such knowledge, explain the basis for your contention that it had such knowledge, state the specific act(s) or omission(s) that each Distributor Defendant took with such knowledge, and describe how such act(s) or omission(s) caused a quantifiable harm to You.

28.  Describe how, if at all, You used the information contained in the Ohio Automated Rx Reporting System (OARRS), to address prescription drug diversion and abuse.

29.  For each Suspicious Order that You contend was shipped into Your geographic area by a Distributor Defendant, identify how, if at all, the Prescription Opioids were used following the shipment, including what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed, and if the Prescription Opioids were diverted, abused, or otherwise used improperly, who was involved in such diversion, abuse, or other improper use.

**DISTRIBUTOR DEFENDANTS,**

**By Liaison Counsel**

_/s/ Shannon E. McClure_
Robert A. Nicholas
Shannon E. McClure
**REED SMITH, LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
rnicholas@reedsmith.com
smcclure@reedsmith.com

Alvin  L.  Emch
JACKSON  KELLY  PLLC
500  Lee  Street,  East,  Suite  1600
P.O.  Box  553
Charleston,  WV  25322
(304)  340-1000
aemch@jacksonkelly.com

*Counsel  for  AmerisourceBergen  Drug
Corporation*

*/s/  Enu  Mainigi*
Enu  Mainigi
F.  Lane  Heard
Steven  M.  Pyser
**WILLIAMS  &  CONNOLLY  LLP**
725  Twelfth  Street  NW
Washington,  DC  20005
emainigi@wc.com
lheard@wc.com
spyser@wc.com

*Counsel  for  Cardinal  Health,  Inc.*

*/s/  Mark  Lynch*
Mark  H.  Lynch
Geoffrey  E.  Hobart
**COVINGTON  &  BURLING  LLP**
One  CityCenter
850  Tenth  Street,  N.W.
Washington,  D.C.  20001-4956
Phone:  (202)  662-6000
mlynch@cov.com

Emily  Johnson  Henn
**COVINGTON  &  BURLING  LLP**
333  Twin  Dolphin  Drive
Suite  700
Redwood  Shores,  CA  94065
Phone:  (650)  632-4700
ehenn@cov.com

*Counsel  for  McKesson  Corporation*

## <u>CERTIFICATE  OF SERVICE</u>

I, Shannon E. McClure, among the liaison counsel for the Distributor Defendants, certify that on August 1, 2018, I caused the foregoing to be served on the individuals on the attached service list in the manner indicated.

*<u>/s/ Shannon E. McClure</u>*

## SERVICE LIST

**BY HAND DELIVERY AND ELECTRONIC MAIL:**

Jodi Westbrook Flowers
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
(843) 216-9163
jflowers@motleyrice.com

**BY ELECTRONIC MAIL:**

*Liaison Counsel for Plaintiffs:*

Peter Henry Weinberger
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114-1149
(216) 696-3232
pweinberger@spanglaw.com

Steven J. Skikos
SKIKOS CRAWFORD SKIKOS & JOSEPH
One Sansome Street, Suite 2830
San Francisco, CA 94104
(415) 546-7300
sskikos@skikoscrawford.com

Troy A. Rafferty
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
(805) 435-7000
trafferty@levinlaw.com

*Counsel for Plaintiffs:*

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9000
jrice@motleyrice.com

Linda Singer

MOTLEY RICE LLC
401 9th Street NW, Suite 1001
Washington, DC 20004
202-232-5504
lsinger@motleyrice.com

Donald W. Davis, Jr.
BRENNAN, MANNA & DIAMOND, LLC
75 East Market Street
Akron, OH 44308
330-253-5060
dwdavis@bmdllc.com

*Liaison Counsel for Defendants:*

Mark Cheffo
Dechert LLP
Three Bryant Park,
1095 Avenue of the Americas,
New York, NY 10036-6797
mark.cheffo@dechert.com

Carol Rendon, Esq.
Baker Hostetler
Key Tower, 127 Public Square
Cleveland, OH 44114
crendon@bakerlaw.com

Enu Mainigi, Esq.
Williams & Connolly
725 Twelfth Street, NW
Washington, DC 20005
emainigi@wc.com

Shannon McClure, Esq.
ReedSmith
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
smcclure@reedsmith.com

Geoffrey E. Hobart, Esq.
Covington & Burling
One CityCenter
850 Tenth Street, NW.
Washington, DC 20001

ghobart@cov.com

Kaspar Stoffelmayr,  Esq.
Bartlit  Beck
54 West Hubbard Street, Ste 300
Chicago, IL 60654
kaspar.stoffelmayr@bartlit-beck.com

Tina  Tabacchi,  Esq.
Jones Day
77 West Wacker Drive
Chicago,  IL 60601
tmtabacchi@jonesday.com

Tyler  Tarney,  Esq.
Gordon & Rees
41 S. High  Street, Suite  2495
Columbus,  OH 43215
ttarney@grsm.com

# Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

### SUMMIT COUNTY AND CITY OF AKRON, OHIO PLAINTIFF'S
### FIRST AMENDED RESPONSES AND OBJECTIONS TO
### DISTRIBUTOR DEFENDANTS' THIRD SET OF INTERROGATORIES

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Case Management Order in *In re National Prescription Opiate Litigation*, No. 1:17-cv-2804 (Dkt. No. 232), the County of Summit, Ohio and the City of Akron, Ohio (collectively "Plaintiff") hereby amend its response to Distributor Defendants'[1] Third Set of Interrogatories (the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

### OBJECTIONS

The following objections apply to each Interrogatory.  To the extent that certain specific objections are cited in response to an individual Interrogatory, those specific objections are provided because they are applicable to that specific Interrogatory and are not a waiver of the other objections applicable to information falling within the scope of such Interrogatory.

1.      Plaintiff objects to each Interrogatory to the extent they are overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seek to impose obligations or require actions beyond those required by the Federal Rules of Civil

---

[1] The Distributor Defendants are AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively "Distributor Defendants").

CONFIDENTIAL

Procedure, the ESI Protocol entered in this matter, or the Local Rules of the United States District Court of the Northern District of Ohio.

2.     Plaintiff objects to each Interrogatory to the extent they seek information restricted from dissemination pursuant to court order, statute, or regulation.  Further, any response made by Plaintiff to the Interrogatories is not intended to waive, and does not constitute any waiver of, any objection to the admissibility, authenticity, competency, or relevance of the information produced or identified.

3.     These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained or document provided herein.  All such objections and the grounds therefore are hereby reserved.

4.     No admission of any nature whatsoever is to be implied or inferred in these responses.  The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

5.     Plaintiff objects to each Interrogatory to the extent Plaintiff has not yet completed its investigation of the facts relating to this action and has not yet completed its preparation for trial.   Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

6.     Plaintiff objects to each Interrogatory to the extent they purport to require Plaintiff to produce documents that are in the public domain or otherwise available to Distributor Defendants as easily from other sources as from Plaintiff.

7.     Plaintiff objects to each Interrogatory to the extent they purport to state facts, assumptions, or characterizations that are disputed.

2

CONFIDENTIAL

8.  Plaintiff objects to each Interrogatory to the extent they seek information more appropriately obtained through other methods of discovery.

9.  Plaintiff objects to each Interrogatory to the extent that they seek information that is proprietary or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

10.  Plaintiff objects to each Interrogatory to the extent they seek confidential investigative, personal, or health information in Plaintiff's possession, custody, or control (collectively, "Confidential Information").

11.  Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its general and specific objections and without waiver of any objection.

12.  Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control."

13.  Plaintiff objects to each Interrogatory to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions.  In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

14.  Plaintiff objects to each Interrogatory to the extent they seek information that is not within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff.

CONFIDENTIAL

15.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

16.     Plaintiff intends to complete its responses by the time agreed upon by the parties for the completion of discovery, or by the date ordered by the Court.  Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Interrogatories.  All final decisions regarding whether any information will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of written discovery.

17.     Plaintiff objects to the Distributors Defendants' instruction that: "Each Plaintiff must individually respond to each of these Interrogatories."  No federal rule prevents Plaintiff from submitting collective answers to Distributor Defendants' collective Interrogatories.  Where the responses and objections to these Interrogatories are the same for each Plaintiff, a collective response herein will in no way prejudice the Distributor Defendants.  In each instance where the answers are not the same for each Plaintiff, any differences have been set forth herein with particularity.

## NON-WAIVER

1.     Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.     If Plaintiff, in response to any Interrogatory, inadvertently discloses information that is or could be the subject of the objections stated herein, such disclosure is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information disclosed.

3.     Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

CONFIDENTIAL

4.      Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses.  Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatory 13

State the date(s) upon and the manner in which You first became aware that Prescription Opioids were being abused in Your geographic boundaries, that Prescription Opioids were being diverted in Your geographic boundaries and/or by Your residents, and that addiction to Prescription Opioids was occurring and/or increasing in Your geographic boundaries.

### Response 13

Plaintiff objects to Interrogatory 13 on grounds of vagueness and irrelevance and because it is overbroad.  It is unclear how Defendants define these terms and precisely what information Defendants seek concerning knowledge of abuse, diversion and/or addiction, nor why that information would be in any way relevant to the present case, including but not limited to any statute of limitations defense.  Moreover, it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to state a single date or date(s) and "the manner" in which  each and every instance of  "abuse," "diversion" or "addiction" of opioids occurred or occurring within Plaintiff's geographic boundaries became known to Plaintiff.  Plaintiff objects to this Interrogatory as vague and ambiguous as to the term "being abused."   Plaintiff further objects to the term "awareness" as requiring speculation on the state of mind of the City of Akron or Summit County.

Subject to and without waiver of the foregoing objections, Plaintiff responds that although it has long been aware of individual instances of diversion, abuse, and addiction to opioids within its jurisdiction, as a result of Defendants' knowing and active concealment of the true nature of

CONFIDENTIAL

their conduct, Plaintiff lacked knowledge linking those diversion events to Defendants' improper marketing and distribution practices, including but not limited to denying risks of addiction, the gross over supply and flooding of Ohio with opioid pills, and the nature of Defendants' conduct in marketing and distribution, and failure to report suspicious orders and/or monitor distribution of opioids.

**Interrogatory 14**

State the number of pills or other dosage units of Prescription Opioids that were diverted from legitimate medical purposes in Your geographic boundaries, and the number of pills or other dosage units of Prescription Opioids that were dispensed for other than legitimate medical purposes in Your geographic boundaries for each year during the Timeframe, and describe how each number was calculated.

**Response 14**

Plaintiff objects to "other dosage units" as vague and ambiguous in meaning in that is subject to varying interpretations.  Plaintiff further objects to the term "legitimate medical purposes" as vague, ambiguous, and subject to varying interpretations.  Plaintiff also objects in that this Interrogatory seeks information – to extent it exists – that is presumably uniquely in the possession of Distributor Defendants and third-parties.  To the extent Plaintiff was even able to identify all responsive information – and it cannot – Plaintiff objects that it would be overly burdensome and disproportionate to the needs of the case for Plaintiff to attempt to provide such a calculation for the Defendants.  Plaintiff does not anticipate the "legitimate medical purposes" issue will not be the subject of expert testimony, that expert discovery and analysis of the ARCOS database is ongoing, premature, and improper to demand from Plaintiff.  Relevant data, if any, and underlying data will be produced to the extent experts – if any – will rely or opine on same.

CONFIDENTIAL

As discovery is ongoing, should this information be the subject of fully-supported and detailed expert witness opinion(s) and if so any reliance information or data will be disclosed.

**Interrogatory 15**

State the maximum number of pills or other dosage units of Prescription Opioids that should properly have been distributed in Your geographic boundaries for legitimate medical purposes during the Timeframe.  In Your response, explain how You calculated that number, including any per capita, per patient, drug family or other grouping, or any other basis on which you rely.

**Response 15**

Plaintiff objects to this Interrogatory to the extent the term "other dosage units" is vague, ambiguous, and subject to varying interpretations.  This Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).  Plaintiff objects in that this Interrogatory seeks information already in the possession of Defendants and third-parties. Plaintiff states that it would be unduly burdensome and wholly disproportionate to the needs of the case for Plaintiff to identify the "maximum number" of individual opioid pills or other dosage units of prescription opioids that "should properly" have been distributed in its geographic boundaries for "legitimate medical purposes" during the Timeframe.  Plaintiff will not speculate or opine on the maximum number of pills that should have been distributed "for legitimate medical purposes" and this is not anticipated to be the subject of expert testimony.

As discovery is ongoing, should this information be deemed relevant, it could be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

CONFIDENTIAL

**Interrogatory 16**

Identify every specific prescription that You believe, suspect, or contend was diverted or used – in whole or in part – for other than legitimate medical, scientific, research, or industrial purposes in Your geographical area.  Include in your response:  the date the prescription was written; the name(s) of the Controlled Substance(s) prescribed; the quantity of Controlled Substance(s) prescribed; the recipient of each prescription; the name of the prescriber; the name of the dispensing pharmacy, hospital, or clinic; the date the prescription was filled; whether any Defendant was involved in the Distribution of that Controlled Substance(s); whether the Controlled Substance(s) were distributed as part of a Suspicious Order (and if so what made the order suspicious); and the reason(s) why You believe, suspect, or contend that all or part of the prescription was diverted.

**Response 16**

Plaintiff objects to the term "identify every specific prescription" as overly broad and unduly burdensome with little or no relevance to the claims and defenses in this action.  *See* Discovery Ruling No. 1.

The factual basis for Plaintiff's claims are specific:  the conduct of the Manufacturing Defendants in engaging in a massive false advertising campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor and restrict the improper distribution of opioids, are substantial causes of a public health emergency in Plaintiff's jurisdictions.  This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by its residents; instead, the lawsuit seeks to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.  The burden potentially created by identifying "every specific prescription" would presumably require third-

CONFIDENTIAL

party subpoenas of all pharmacies, something the Defendants can do themselves.  Simply put, the City of Akron and Summit County do not have specific individual prescriptions in its possession or control.[2]

      This case will decide whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that currently exists within Plaintiff's jurisdiction.  The case does not turn on whether each opioid pill, prescription, overdose, or patient is a separate public nuisance or separate "epidemic;" it is not relevant whether particular individuals in specific circumstances with individualized medical conditions abused or misused or were improperly prescribed opioids.  Instead, Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdiction.  Experts will prove causation through aggregate proof demonstrating the link between Defendants' conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms to the City of Akron and Summit County.  The Defendants' actions resulted in the opioid crisis epidemic in the City of Akron and Summit County. Whether a specific resident with a history of specific substance abuse received a specific opioid prescription, is irrelevant.  Defendants' repeated attempts to mischaracterize Plaintiff's legal theories under the guise of their defenses is improper and burdensome to Plaintiff beyond what is a reasonable burden proportionate to the needs of this case.  If the Defendants are convinced, "every specific prescription" is relevant to its defenses, it will have to look elsewhere for that information, Plaintiff does not have it.  Fed. R. Civ. P. 26.  Moreover, discovery about individuals and individual health case and addiction issues is irrelevant to establishing that an opioid epidemic exists and is impermissible.  *See* Fed. R. Evid. 402.

---

[2] Distributor Defendants acknowledge that the Court has required Plaintiffs to provide some of this information by July 16, 2018.  Distributor Defendants' request, however, is broader than the relevant provision of the CMO.  And Defendants need the information they have requested more than one day in advance of the July 17, 2018 deadline for Defendants to add parties without leave of Court.  *See* CMO 1 at 9.  Defendants also require this information to conduct further discovery in Track One Case.

CONFIDENTIAL

Plaintiff states that it does not have information concerning the identity of every person who received an opioid prescription or became addicted to opioids in Summit County and the City of Akron – or whether or not every person received treatment – nor does it have access to the confidential, private health care records of residents who were prescribed opioids or treated for opioid addiction.  In addition, Plaintiff objects to this Interrogatory on the grounds that the information sought is overly broad and vague in that it requests all medical records and all medical information related to every single person who was ever prescribed an opioid that ever made its way into Plaintiff's jurisdictions.  Furthermore, this Interrogatory is so broad as to render it burdensome if not all but impossible to answer within any reasonable time.  Defendants should not be allowed to examine every single prescription record and presumably then depose doctors, pharmacies, family members, treatment facilities, ad nauseum about each specific prescription.

Plaintiff further responds that this Interrogatory is contention discovery more appropriately answered, if at all, once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).

The only conceivable information that Plaintiff may have that would be arguably related to the Interrogatory (though irrelevant to the case) relates only to Plaintiff's employees who received opioid treatment through Plaintiff's sponsored health insurance or worker's compensation programs.  Plaintiff has produced and is producing that claims information as required by the Special Master's Order.

Subject to and without waiving all objections, Plaintiff states that it believes, suspects, or contends that the following distributors and pharmacies dispensed or distributed prescriptions that were diverted or used – in whole or in part – for other than legitimate medical, scientific, research, or industrial purposes in its geographical area:

AmerisourceBergen Drug Corp.;

Anda, Inc.

10

CONFIDENTIAL

Cardinal Health, Inc.;

CVS Health Corp.;

Discount Drug Mart, Inc.;

HBS Service Company;

Henry Schein, Inc.;

McKesson Corp.;

Miami-Luken, Inc.;

Prescription Supply, Inc.;

Rite Aid Corp.;

Rite Aid of Maryland, Inc. (d/b/a/ Rite Aid Mid-Atlantic Customer Support Center);

Walgreens Boots Alliance, Inc.;

Walmart Inc.

Subject to and without waiving all objections, Plaintiff further states that data from the ARCOS database indicates that prescriptions of oxycodone, hydrocodone, hydromorphone, and fentanyl have been diverted or used – in whole or in part – for other than legitimate medical, scientific, research, or industrial purposes in its geographical areas.

Subject to and without waiving all objections, Plaintiff states that it believes, on information and belief, that the following individuals prescribed Controlled Substances that may be part of a Suspicious Order in its geographical area:

Dr. Mark Davis
1622 E. Turkeyfoot Lake Rd.
Ste. 301
Akron, OH 44312

Dr. William Kerek
600 Portrage Trl.
Ste. C
Cuyahoga Falls, OH 44221

CONFIDENTIAL

Dr. Katherine Richmond
405 Tallmadge Rd.
Ste. 120
Cuyahoga Falls, OH 44221

Dr. Clive Sinoff
22200 Halburton Rd.
Beachwood, OH 44122

Dr. Christopher Stegawski
28515 E. Brockway Dr.
Westlake, OH 44145

Plaintiff reserves the right to supplement this response upon further information.

**Interrogatory 17**

To the extent not already identified in response to Interrogatory Number 16, identify every pharmacy, clinic, or hospital inside or outside Your geographic boundaries whose conduct with respect to Prescription Opioids You believe, suspect, or contend caused harm within Your geographic boundaries.  For each such pharmacy, clinic, or hospital, provide all facts You know that support Your belief, suspicion, or contention, including (without limitation):  the name of the pharmacy, clinic, or hospital; each prescription filled by the pharmacy, clinic, or hospital that You believe, suspect, or contend caused harm in Your geographic boundaries; the date that each such prescription was written; the name of the prescriber; the name of the recipient of the prescription; the name(s) of the Prescription Opioids prescribed; the quantity of Prescription Opioids prescribed; the date the prescription was filled; whether any Defendant was involved in the Distribution of that Controlled Substance(s); whether the Controlled Substance(s) were distributed as part of a Suspicious Order (and if so what made the order suspicious); and the reason(s) why You believe, suspect, or contend the prescription caused harm within Your geographic boundaries.

CONFIDENTIAL

## Response 17

Plaintiff objects that this Interrogatory is unduly burdensome to the extent it requests Plaintiff to search for and identify any such pharmacy, clinic, or hospital "inside or outside" Summit County.  Plaintiff further objects to this Interrogatory to the extent it calls for information in the Distributors' possession, custody, or control, or is just as available to Distributors from third-party sources as it may be available to Plaintiff, and thus places an undue and non-proportional burden on Plaintiff to gather.  Plaintiff also objects to the extent that the terms "believe" and "suspect" are overbroad, vague, and not reasonably calculated to lead to discoverable information. Plaintiff further objects to the term "every specific prescription" as overly broad, irrelevant, and highly burdensome.  Plaintiff objects to the extent that this Interrogatory may call for expert opinions or conclusions and the expert discovery period in this litigation has not been commenced, let alone concluded.   Discovery is on-going and Plaintiff will amend its response at the close of discovery.

Subject to and without waiving all objections, Plaintiff states that as alleged in Plaintiff's Corrected Second Amended Complaint, based on information, belief, and facts reasonably known to Plaintiff, the Manufacturers and Distributors of opioids who are listed below and as Defendants in this matter, including retail pharmacy defendants, are the parties whose conduct "with respect to Prescription Opioids [we] believe, suspect, or contend caused harm within [our] geographical boundaries":

> AmerisourceBergen Drug Corp.;
>
> Anda, Inc.
>
> Cardinal Health, Inc.;
>
> CVS Health Corp.;
>
> Discount Drug Mart, Inc.;

CONFIDENTIAL

HBS Service Company;

Henry Schein, Inc.;

McKesson Corp.;

Miami-Luken, Inc.;

Prescription Supply, Inc.;

Rite Aid Corp.;

Rite Aid of Maryland, Inc. (d/b/a/ Rite Aid Mid-Atlantic Customer Support Center);

Walgreens Boots Alliance, Inc.;

Walmart Inc.

Plaintiff directs Defendants to the chart at paragraph 694 of the Corrected Second Amended Complaint for a breakdown of a breakdown of the nearly 239 million units of prescription opioids delivered in Summit County between 2006 and 2014.

Subject to and without waiving all objections, Plaintiff states that while its discovery is ongoing, Plaintiff's understanding and belief is that the Manufacturers and Distributors of opioids who are listed as Defendants in this matter, are the primary, if not sole, parties whose conduct "with respect to Prescription Opioids [Plaintiff] believe[s], suspect[s], or contend[s] caused harm within [its] geographic boundaries."   Additionally, as discovery is ongoing, Plaintiff expects this topic may be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**<u>Interrogatory 18</u>**

Specify each category of injury (e.g. increased cost of law enforcement, fire, emergency services, etc.) for which You claim damages in the Litigation and provide a computation of damages for each category of injury alleged.  For each category of injury, identify all Persons with knowledge about such damages.

14

CONFIDENTIAL

## **Response 18**

Plaintiff objects to this Interrogatory as vague, overly broad, and unduly burdensome to the extent it requests "each category of injury alleged."  Plaintiff also objects to this Interrogatory to the extent that it calls for disclosure of Privileged and Confidential Information.  Plaintiff further objects that this Interrogatory seeks information beyond Plaintiff's possession, custody, and control.

Subject to and without waiving all objections, Plaintiff incorporates the allegations in the Corrected Second Amended Complaint and states that Plaintiff's abatement efforts are under investigation in terms of categories of damages.  Plaintiff's categories of damages in this matter are expected to include, but are not limited to, the following:

- Losses caused by the decrease in funding available for Plaintiff's public services for which funding was lost because it was diverted to other public services designed to address the opioid epidemic;

- Costs for providing healthcare and medical care for patients suffering from opioid-related addiction or disease, including overdoses and deaths;

- Costs of training emergency and/or first responders in the proper treatment of drug overdoses;

- Costs associated with providing police officers, firefighters, and emergency and/or first responders with naloxone – an opioid antagonist used to block the deadly effects of opioids in the context of overdose;

- Costs associated with emergency responses by police officers, firefighters, and emergency and/or first responders to opioid overdoses;

- Costs for providing mental-health services, treatment, counseling, rehabilitation services, and social services to victims of the opioid epidemic and their families;

CONFIDENTIAL

- Costs associated with law enforcement and public safety relating to the opioid epidemic, including but not limited to attempts to stop the flow of opioids into local communities, to arrest and prosecute street-level dealers, to prevent the current opioid epidemic from spreading and worsening, and to deal with the increased levels of crimes that have directly resulted from the increased homeless and drug-addicted population;

- Costs associated with various public safety and health initiatives related to the opioid epidemic;

- Costs associated with increased burden on Plaintiff's drug courts;

- Costs associated with clean-up of public parks, spaces, and facilities of needles and other debris and waste of opioid addiction;

- Loss of tax revenue due to the decreased efficiency and size of the working population in Plaintiff's communities and due to other impacts on property values and other tax generators for Plaintiff;

- Losses caused by decreased business investment and tax revenue;

- Plaintiff's contributions to the Alcohol, Drug Addiction, and Mental Health Services (ADM) board;

- Increased public safety services, including but not limited to, training, investigations, staffing, jail expenses, dispatch services, and task forces as a result of the opioid epidemic;

- Plaintiff's Health Department costs related to the opioid epidemic, which provide services targeted to patients with substance abuse problems including opioid related matters;

- Costs associated with impact of opioid epidemic on Plaintiff's vehicle fleets;

- Costs for Plaintiff to properly and adequately abate the nuisance created by the opioid epidemic; and

CONFIDENTIAL

- Costs for child services and foster care for opioid-dependent babies and foster children.

Subject to and without waiving all objections, Plaintiff identifies the following documents containing information responsive to this Interrogatory:

| AKRON_000000003 | SUMMIT_000015990 | SUMMIT_000019856 |
|---|---|---|
| AKRON_000000576 | SUMMIT_000016568 | SUMMIT_000019857 |
| AKRON_000001104 | SUMMIT_000016569 | SUMMIT_000019858 |
| AKRON_000001620 | SUMMIT_000017896 | SUMMIT_000022510 |
| AKRON_000002119 | SUMMIT_000017903 | SUMMIT_000022583 |
| AKRON_000002535 | SUMMIT_000018430 | SUMMIT_000022656 |
| AKRON_000002874 | SUMMIT_000018440 | SUMMIT_000022730 |
| AKRON_000003228 | SUMMIT_000018601 | SUMMIT_000111606 |
| AKRON_000003930 | SUMMIT_000018966 | SUMMIT_000111607 |
| SUMMIT_000009742 | SUMMIT_000019112 | SUMMIT_000111608 |
| SUMMIT_000010324 | SUMMIT_000019258 | SUMMIT_000111609 |
| SUMMIT_000010936 | SUMMIT_000019388 | SUMMIT_000111610 |
| SUMMIT_000011824 | SUMMIT_000019490 | SUMMIT_000111611 |
| SUMMIT_000014002 | SUMMIT_000019580 | SUMMIT_000111612 |
| SUMMIT_000014151 | SUMMIT_000019668 | SUMMIT_000111613 |
| SUMMIT_000014772 | SUMMIT_000019854 | SUMMIT_000111614 |
| SUMMIT_000015385 | SUMMIT_000019855 | SUMMIT_000111615 |

Plaintiff specifically reserves the right to supplement, modify, and amend this response upon further investigation.  Discovery into these topics is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

CONFIDENTIAL

On persons most knowledgeable on these topics, at this time, Plaintiff identifies Brian Nelsen for Summit County and Steve Fricker for the City of Akron.

**Interrogatory 19**

Identify each Person whose use of Prescription Opioids or other drugs resulted in expenditures by You for which you seek damages.  For each such Person, provide the following information:  a description of how each Person's use of Prescription Opioids or other drugs resulted in Your expenditures; the date of any such expenditures; the Controlled Substance(s) ingested by such Person; from whom such Person obtained the Controlled Substance(s) that caused his or her injury; which entity manufactured and sold the Controlled Substance(s) used by such Person; which Distributor Defendant, if any, distributed the Controlled Substance(s) used by such Person; and whether the Controlled Substance(s) were distributed as part of a Suspicious Order (and if so what made the order suspicious).

**Response 19**

Plaintiff objects to "a description of how each Person's use" of opioids "or other drugs" as overly broad, irrelevant, and unduly burdensome.

The factual basis for Plaintiff's claims are specific: the conduct of the Manufacturing Defendants in engaging in a massive false advertising campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor and restrict the improper distribution of opioids, are substantial causes of a public health emergency in Plaintiff's jurisdictions.  This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by its residents; instead, the lawsuit seeks to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.

18

CONFIDENTIAL

This case concerns whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that currently exists within Plaintiff's jurisdictions. It is not whether each opioid pill, prescription, overdose, or patient is a separate public nuisance or separate "epidemic;" it is not whether particular individuals in specific circumstances with individualized medical conditions abused or misused or were improperly prescribed opioids. Instead, Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdictions. Plaintiff will prove causation through aggregate proof demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis. This will establish that the Defendants' actions were a substantial factor in the epidemic experienced by, and paid for by, Plaintiff. Whether a specific resident with a history of substance abuse received an opioid prescription, for example, is irrelevant because a definable percentage of residents who received opioids were bound to have a history of substance abuse. Discovery about individuals and individual health case and addiction issues is irrelevant to establishing that an opioid epidemic exists and is impermissible. *See* Fed. R. Evid. 402.

Plaintiff states that it does not have information concerning the identity of every person who received an opioid prescription or became addicted to opioids in Summit County and the City of Akron – whether or not they ever received treatment – or access to the confidential, private health care records of residents who were prescribed opioids or treated for opioid addiction. Furthermore, this Interrogatory is so broad as to render trial of this matter all but impossible within any reasonable time within any reasonable time while Defendants examine every "controlled substance" record and then depose patients, residents, doctors, or treatment facilities about each individual case. Even if the Interrogatory was proper and reasonably circumscribed, much of the

CONFIDENTIAL

information that Plaintiff may have that would be arguably related to the Interrogatory (though irrelevant to the case) relates to Plaintiff's employees who received opioid treatment through Plaintiff's sponsored health insurance or worker's compensation programs.

Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).  In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory 20**

Identify each Person to whom You provided treatment or assistance related to Prescription Opioid addiction, abuse, or overdose during the Timeframe.  For each such Person, provide the following information:  the name of the individual; the date of addiction, abuse, or overdose; the drug or drugs involved; which entity manufactured and sold the Controlled Substance(s) used by such Person which Distributor Defendant, if any, distributed Prescription Opioids used by the Person; and whether the Prescription Opioids used by the Person were distributed as part of a Suspicious Order (and if so what made the order suspicious); the nature of treatment or assistance provided; the cost of treatment or assistance provided; and the source of funding for treatment or assistance provided.

**Response 20**

Plaintiff objects to this Interrogatory to the extent it seeks the "identity of each person" to whom the City of Akron or Summit County "provided treatment or assistance" and the "drugs or drugs involved" as overly broad, irrelevant, and unduly burdensome.  Plaintiff further objects to this interrogatory to the extent it seeks production of information that is protected from disclosure pursuant to Title 42, Part 2 of the Code of Federal Regulations.

CONFIDENTIAL

 The factual basis for Plaintiff's claims are specific: the conduct of the Manufacturing Defendants in engaging in a massive false advertising campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor, report and/or restrict the improper distribution of opioids, are substantial causes of a public health emergency in Plaintiff's jurisdictions.  This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by its residents; instead, the lawsuit seeks to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.

 This case concerns whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that currently exists within Plaintiff's jurisdictions.  It is not whether each opioid pill, prescription, overdose, or patient is a separate public nuisance or separate "epidemic;" it is not whether particular individuals in specific circumstances with individualized medical conditions abused or misused or were improperly prescribed opioids.  Instead, Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdictions.  Plaintiff will prove causation through aggregate proof demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis.  This will establish that the Defendants' actions were a substantial factor in the epidemic experienced by, and paid for by, Plaintiff. Whether a specific resident with a history of substance abuse received an opioid prescription, for example, is irrelevant because a definable percentage of residents who received opioids were bound to have a history of substance abuse.  Discovery about individuals and individual health case and addiction issues is irrelevant to establishing that an opioid epidemic exists and is impermissible.  *See* Fed. R. Evid. 402.

21

CONFIDENTIAL

Furthermore, this Interrogatory is so broad as to render trial of this matter all but impossible within any reasonable time within any reasonable time while Defendants examine each and every person and record and then depose individual patients, residents, doctors, or treatment facilities about each person's individual case.

Subject to and without waiver of all objections, Plaintiff refers Defendants to its response to Interrogatory No 18.

**Interrogatory 21**

Identify all children, including infants born addicted to opioids, for whom You incurred costs for which you seek damages.  For each such Person, please provide the following:  the name of such Person; the name of such Person's parent(s); the Controlled Substances possessed or ingested by such Person's parent(s); which entity manufactured and sold the Controlled Substance(s) used by such Person; the source of the Controlled Substance possessed or ingested by such Person's parent(s); the date, nature, and cost of any services incurred as a result of such Person; which Distributor Defendant, if any, distributed the Controlled Substance possessed or ingested by such Person's parent(s); and whether the Controlled Substances were distributed as part of a Suspicious Order (and if so what made the order suspicious).

**Response 21**

Plaintiff objects to this Interrogatory to the extent it seeks to "identify all children" without limitation, "including infants born addicted to opioids" by the infant or child's name, parent name, "controlled substance," who distributed it, when, where, and how.  Plaintiff further objects in that this Interrogatory seeks information in the possession of the Defendants.

The factual basis for Plaintiff's claims are specific: the conduct of the Manufacturing Defendants in engaging in a massive false advertising campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor

22

CONFIDENTIAL

and restrict the improper distribution of opioids, are substantial causes of a public health emergency in Plaintiff's jurisdictions.  This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by its residents; instead, the lawsuit seeks to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.

This case concerns whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that currently exists within Plaintiff's jurisdictions.  It is not whether each opioid pill, prescription, overdose, or NAS patient is a separate public nuisance or separate "epidemic;" it is not whether particular individuals in specific circumstances with individualized medical conditions abused or misused or were improperly prescribed opioids.  Instead, Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdictions.  Plaintiff will prove causation through aggregate proof demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis.  This will establish that the Defendants' actions were a substantial factor in the epidemic experienced by, and paid for by, Plaintiff. Whether a specific infant was born with NAS or had a parent with a history of substance abuse related to an opioid prescription, for example, is irrelevant because a definable percentage of residents who received opioids were bound to have a history of substance abuse.  Discovery about individual infants, persons, individual health and addiction issues are irrelevant to establishing that an opioid epidemic exists and is impermissible.  *See* Fed. R. Evid. 402.

CONFIDENTIAL

Furthermore, this Interrogatory is so broad as to render trial of this matter all but impossible within any reasonable time within any reasonable time while Defendants examine each and every person and record and then depose individual patients, residents, doctors, or treatment facilities about each person's individual case.

Subject to and without waiver of all objections, Plaintiff refers Defendants to its response to Interrogatory No 18.**Interrogatory 22**

Identify all efforts You have made to recover expenditures related to Prescription Opioid abuse, misuse, or addiction in Your geographic boundaries from any entities or individuals who have been charged with criminal offenses relating to or caused by such abuse, misuse, or addiction, including, without limitation, pharmacists, pharmacies, doctors, clinics, drug dealers, drug traffickers, or drug trafficking organizations.

**Response 22**

Plaintiff objects to this Request as vague, ambiguous, and burdensome to Plaintiff in manner not proportional to the needs of the case.  Plaintiff further objects to the following language as overly broad: "any other individual or entity, including (without limitation), any entities or individuals who have been charged with criminal offenses."  As cited in the Corrected Second Amended Complaint at n.224, "Plaintiffs in this action do not assert any claim for spending on prescription opioids by their health plans, workers compensation, or other programs."  Plaintiff further objects to this Interrogatory to the extent that what Plaintiff may or may not have done to recover other expenditures is not relevant to the claims and defenses in this action.

Subject to and without waiving all objections, Plaintiff responds that it has sought grants, State and Federal funding, and tax increases.  Plaintiff has not sued individual criminals or individual drug dealers.  Drug-related civil forfeiture, if any, is not an attempt to "recover

CONFIDENTIAL

expenditures" covered by the opioid epidemic.  Plaintiff reserves its right to amend or supplement

this answer as further discovery continues.

Dated:  August 13, 2018                             */s/  Linda Singer*_____
                                                    Linda Singer
                                                    Joseph F. Rice
                                                    Jodi Westbrook Flowers
                                                    Anne McGinness Kearse
                                                    David I. Ackerman
                                                    Jeffrey C. Nelson
                                                    MOTLEY RICE LLC
                                                    401 9th Street NW, Suite 1001
                                                    Washington, DC 20004
                                                    Tel: (202) 232-5504

CONFIDENTIAL

## **CERTIFICATE OF SERVICE**

I, Colleen Hemelgarn, certify that on August 13, 2018, I caused the foregoing to be served via electronic mail on Defendant's Liaison Counsel pursuant to the Case Management Order in this case (Dkt. No. 232).

_/s/ Colleen Hemelgarn__

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**SUMMIT COUNTY AND CITY OF AKRON, OHIO'S RESPONSES AND OBJECTIONS
TO DISTRIBUTOR DEFENDANTS' FOURTH SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Case Management Order in *In re National Prescription Opiate Litigation*, No. 1:17-cv-2804 (Dkt. No. 232), the County of Summit, Ohio and the City of Akron, Ohio (collectively "Plaintiff") hereby responds to Distributor Defendants'[1] Fourth Set of Interrogatories (the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

**OBJECTIONS**

The following objections apply to each Interrogatory. To the extent that certain specific objections are cited in response to an individual Interrogatory, those specific objections are provided because they are applicable to that specific Interrogatory and are not a waiver of the other objections applicable to information falling within the scope of such Interrogatory.

---

[1] The Distributor Defendants are AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively "Distributor Defendants").

CONFIDENTIAL

1.      Plaintiff objects to each Interrogatory to the extent they are overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seek to impose obligations or require actions beyond those required by the Federal Rules of Civil Procedure, the ESI Protocol entered in this matter, or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      Plaintiff objects to each Interrogatory to the extent they seek information restricted from dissemination pursuant to court order, statute, or regulation.  Further, any response made by Plaintiff to the Interrogatories is not intended to waive, and does not constitute any waiver of, any objection to the admissibility, authenticity, competency, or relevance of the information produced or identified.

3.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained or document provided herein.  All such objections and the grounds therefore are hereby reserved.

4.      No admission of any nature whatsoever is to be implied or inferred in these responses.  The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

5.      Plaintiff objects to each Interrogatory to the extent Plaintiff has not yet completed its investigation of the facts relating to this action and has not yet completed its preparation for trial.   Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

2

CONFIDENTIAL

6.      Plaintiff objects to each Interrogatory to the extent they purport to require Plaintiff to produce documents that are in the public domain or otherwise available to Distributor Defendants as easily from other sources as from Plaintiff.

7.      Plaintiff objects to each Interrogatory to the extent they purport to state facts, assumptions, or characterizations that are disputed.

8.      Plaintiff objects to each Interrogatory to the extent they seek information more appropriately obtained through other methods of discovery.

9.      Plaintiff objects to each Interrogatory to the extent that they seek information that is proprietary or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

10.      Plaintiff objects to each Interrogatory to the extent they seek confidential investigative, personal, or health information in Plaintiff's possession, custody, or control (collectively, "Confidential Information").

11.      Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its general and specific objections and without waiver of any objection.

12.      Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control."

13.      Plaintiff objects to each Interrogatory to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal

CONFIDENTIAL

conclusions.  In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

14.     Plaintiff objects to each Interrogatory to the extent they seek information that is not within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff.

15.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

16.     Plaintiff intends to complete its responses by the time agreed upon by the parties for the completion of discovery, or by the date ordered by the Court.  Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Interrogatories.  All final decisions regarding whether any information will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of written discovery.

17.     Plaintiff objects to the Distributors Defendants' instruction that: "Each Plaintiff must individually respond to each of these Interrogatories."  No federal rule prevents Plaintiff from submitting collective answers to Distributor Defendants' collective Interrogatories.  Where the responses and objections to these Interrogatories are the same for each Plaintiff, a collective response herein will in no way prejudice the Distributor Defendants.  In each instance where the answers are not the same for each Plaintiff, any differences have been set forth herein with particularity.

4

CONFIDENTIAL

## NON-WAIVER

1.     Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.     If Plaintiff, in response to any Interrogatory, inadvertently discloses information that is or could be the subject of the objections stated herein, such disclosure is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information disclosed.

3.     Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.     Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses.  Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatory No. 23

Identify each Suspicious Order that you believe was shipped to Your geographic area by a Distributor Defendant during the time period for which you seek damages in this lawsuit.  For each order, identify the date the order was shipped, the medication shipped, the number of dosage units shipped, the number of dosage units that you contend would have been permissible to ship, the reason you believe the order was suspicious, the Distributor Defendant that shipped the allegedly Suspicious Order, and the person or entity that placed the order.

CONFIDENTIAL

**<u>Response to Interrogatory No. 23</u>**

Plaintiff objects to this Interrogatory to the extent it purports to require Plaintiff to create documents, or gather data, that Plaintiff does not maintain in the ordinary course of business. Because compiling further information, including this information on Suspicious Order Reports ("SORs"), would necessitate the preparation of a compilation or summary of information and the burden or expense of preparing or making it would be substantially the same for Defendants as for Plaintiff, Plaintiff exercises its right under Federal Rule of Civil Procedure 33(d) to produce documents as its response to this portion of the Interrogatory.  Plaintiff will supplement this response to provide relevant Bates numbers.  Plaintiff objects to this Interrogatory as unduly burdensome and not proportional to the needs of this case in calling for Plaintiff to identify "each Suspicious Order [Defendants]shipped to Your Geographic area" "the date shipped, the medication shipped, or the number of dosage units shipped."  Plaintiff objects to the phrases "contend[s] would have been permissible to ship" and "the reason" the order was suspicious as vague and ambiguous in this context.  Plaintiff objects to this Interrogatory because its scope is not limited to individuals either employed by or having an otherwise substantive relationship with Summit County or the City of Akron.  Plaintiff also objects to this Interrogatory because it is not proportional to the needs of the case considering (1) the marginal importance of the materials to the defenses in this litigation and (2) the substantial burden to the Plaintiff to respond.

Subject to and without waiving all objections, Plaintiff responds as follows:  the Controlled Substances Act ("CSA") requires manufacturers and distributors of Schedule II substances like opioids to:  (a) limit sales within a quota set by the DEA for the overall production of Schedule II substances like opioids; (b) register to manufacture or distribute

CONFIDENTIAL

opioids; (c) maintain effective controls against diversion of the controlled substances that they

manufacture or distribute; and (d) design and operate a system to identify suspicious orders of

controlled substances, halt such unlawful sales, and report them to the DEA.

Defendants have several responsibilities under state and federal law with respect to

control of the supply chain of opioids. The DEA provides a series of guidelines on Suspicious

Orders Reporting ("SOR"), contained in the Chemical Handlers Manual, that "are intended to

assist chemical manufacturers, distributors, wholesalers and retailers to be alert to suspicious

orders involving listed chemicals," which include opioids. "The guidelines are intended to apply

to all aspects of commercial chemical manufacturing and distribution."  Defendants must set up a

system to prevent diversion, including excessive volume and other suspicious orders. This

includes reviewing Defendants' own data, relying on their observations of prescribers and

pharmacies, and following up on reports or concerns of potential diversion.  All suspicious

orders must be reported by Defendants to relevant enforcement authorities. Further, distributors

must also stop shipment of any order which is flagged as suspicious and only ship orders which

were flagged as potentially suspicious if, after conducting due diligence, they can determine that

the order is not likely to be diverted into illegal channels.

To ensure that even drugs produced within quota are not diverted, federal regulations

issued under the CSA mandate that all registrants, manufacturers, and distributors alike, "design

and operate a system to disclose to the registrant suspicious orders of controlled substances."  21

C.F.R. § 1301.74(b).  Registrants are not entitled to be passive (but profitable) observers, but

rather "shall inform the Field Division Office of the Administration in his area of suspicious

orders when discovered by the registrant."  *Id.*  Suspicious orders include orders of unusual size,

7

CONFIDENTIAL

orders deviating substantially from a normal pattern, and orders of unusual frequency.  *Id.*  Other red flags may include, for example, "[o]rdering the same controlled substance from multiple distributors."  *Id.*

These criteria are disjunctive and are not all inclusive.  For example, if an order deviates substantially from a normal pattern, the size of the order does not matter and the order should be reported as suspicious.  Likewise, a distributor or manufacturer need not wait for a normal pattern to develop over time before determining whether a particular order is suspicious.  The size of an order alone, regardless of whether it deviates from a normal pattern, is enough to trigger the responsibility to report the order as suspicious.  The determination of whether an order is suspicious depends not only on the ordering patterns of the particular customer but also on the patterns of the entirety of the customer base and the patterns throughout the relevant segment of the industry.  For this reason, identification of suspicious orders serves also to identify excessive volume of the controlled substance being shipped to a particular region.

Subject to and without waiver of the foregoing objections, Plaintiff states that although it has been aware of individual instances of diversion within its jurisdiction, as a result of Defendants' knowing and active concealment of the true nature of their conduct, Plaintiff lacked knowledge linking those diversion events to Defendants' improper marketing and distribution practices.

Subject to and without waiving all objections, Plaintiff answers with the following list of prescription opioids at issue in the case:

CONFIDENTIAL

| OxyContin | MS Contin |
|---|---|
| Dilaudid | Dilaudid-HP |
| Butrans | Hysingla ER |
| Targiniq ER | Kadian |
| Norco | Actiq |
| Fentora | Duragesic |
| Nucynta | Nucynta ER |
| Opana ER | Opana |
| Percodan | Percocet |
| Generic Oxycodone | Generic Oxymorphone |
| Generic Hydromorphone | Generic Hydrocodone |
| Fentanyl | Exaglo |
| Roxicodone | Xartemis XR |
| Methadose | Generic Methadone Hydrochloride |
| Generic Morphine Sulfate Oral Solution | Generic Fentanyl Transdermal System |
| Generic Oral Transmucosal Fentanyl Citrate | Generic Oxycodone and Acetaminophen |
| Generic Hydrocodone Bitartrate and Acetaminophen | Generic Hydromorphone Hydrochloride |
| Generic Hydromorphone Hydrochloride ER | Generic Naltrexone Hydrochloride |
| Generic Oxymorphone Hydrochloride | Generic Methadone Hydrochloride |
| Generic Oxycodone Hydrochloride | Generic Buprenorphine and Naloxone |

Subject to and without waiver of the foregoing objections, Plaintiff further responds that the increased volume of opioid prescribing correlates directly to skyrocketing addiction, overdose and death; black markets for diverted prescription opioids; and a concomitant rise in heroin and fentanyl use by individuals who could no longer legally acquire or simply could not afford prescription opioids.  Plaintiff states that Plaintiff's current knowledge of this subject is detailed at length in paragraphs 498-606 of Plaintiff's Corrected Second Amended Complaint, which provides a more than adequate detail on the facts at issue. Plaintiff also responds that this Interrogatory is contention discovery more appropriately answered once written discovery is completed.  *See* FRCP 33(a)(2).  Plaintiff will produce a trial witness list and expert reports pursuant to the scheduling orders in this case and the Federal Rules of Civil Procedure. Pursuant

9

CONFIDENTIAL

to Federal Rule of Civil Procedure 33(d), Plaintiff reserves the right to further answer this Interrogatory by producing non-privileged, responsive documents, if any, from centrally located databases or from the files of designated custodians – or the DEA's production – after conducting a reasonably diligent search using predetermined keyword searches and reviewing the results, and subject to a determination that producing such records would not be unduly burdensome.  Plaintiff reserves the right to amend, supplement or modify this response as discovery proceeds.  As discovery is ongoing, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 24**

Identify all false and/or fraudulent information that You allege any Distributor Defendant supplied to the Drug Enforcement Administration about Suspicious Orders as alleged in Paragraph 859 of the Second Amended Complaint.

**Response to Interrogatory No. 24**

Plaintiff objects to this Interrogatory to the extent the term "all false and/or fraudulent information" is vague and ambiguous and subject to varying interpretations.  Plaintiff objects to this Interrogatory as unduly burdensome and not proportional to the needs of this case because it would be virtually, if not literally, impossible for Plaintiff to identify "all false and/or fraudulent information" that Defendants "supplied to the Drug Enforcement Administration."  Plaintiff is not privy to the Defendants' communications with the DEA.  Plaintiff objects in that this Interrogatory seeks information in the possession of Defendants and/or third-parties.  To the extent Plaintiff were able to identify all responsive information, Plaintiff objects that it would be unduly burdensome

CONFIDENTIAL

and disproportionate to the needs of the case for Plaintiff to be asked to identify all false and/or fraudulent information that the Distributor Defendants supplied to the Drug Enforcement Administration ("DEA") about Suspicious Orders.  Plaintiff objects to this Interrogatory as vague, ambiguous, and overly broad in its use of the phrase "all false and/or fraudulent information" as subject to varying interpretations.

This Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).  Subject to and without waiving all objections, Plaintiff states that Plaintiff's current knowledge of this subject is reflected in Plaintiff's Corrected Second Amended Complaint, and any additional information will be amended and supplemented as discovery proceeds.  Plaintiff incorporates its answer and objections to Interrogatory 23 by reference.

Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff reserves the right to further answer this Interrogatory by producing non-privileged, responsive documents, if any, from centrally located databases or from the files of designated custodians after conducting a reasonably diligent search using predetermined keyword searches and reviewing the results, and subject to a determination that producing such records would not be unduly burdensome.

As discovery is ongoing, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure.

**Interrogatory No. 25**

Identify with specificity each of the predicate acts of racketeering activity You allege each of AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation

11

CONFIDENTIAL

committed, conspired to commit, and/or aided and abetted the commission of for the time period you seek damages in this lawsuit. For each predicate act, provide the date, the conduct that constituted the predicate act, the Defendant(s) involved, the reason that conduct constituted a predicate act of racketeering, and any other individuals/entities involved.

**<u>Response to Interrogatory No. 25</u>**

Plaintiff objects to this Interrogatory to the extent the term "predicate acts of racketeering activity" is vague and ambiguous and subject to varying interpretations.  Plaintiff also objects in that this Interrogatory seeks information already in the possession of Defendants and/or third-parties.  To the extent Plaintiff were able to identify all responsive information, Plaintiff objects that it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to identify each predicate act of racketeering that AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation committed, conspired to commit, and/or aided and abetted.  This Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waiving all objections, Plaintiff states that Plaintiff's current knowledge of this subject is detailed at length in paragraphs 814-877 and 906-938 of  Plaintiff's Corrected Second Amended Complaint, and any additional information will be provided as discovery proceeds.

As discovery is ongoing, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure.

CONFIDENTIAL

**Interrogatory No. 26**

Identify all facts and evidence that support Your contention that the Distributor Defendants agreed to implement similar tactics in their refusal to report Suspicious Orders as alleged in Paragraph 922 of the Second Amended Complaint.

**Response to Interrogatory No. 26**

Plaintiff objects to this Interrogatory to the extent the terms "agreed to implement similar tactics" in "refusal to report" are vague and ambiguous and incapable of precise meaning in this context.  Plaintiff also objects in that this Interrogatory seeks information in the possession of Defendants and/or third-parties.  To the extent Plaintiff were able to identify all responsive information, Plaintiff objects that it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to identify all of the facts and evidence that show that the Distributor Defendants implemented similar tactics in their refusal to report Suspicious Orders. This Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waiving all objections, Plaintiff states that it believes, suspects, or contends that chronic diversion the number of Suspicious Orders increased dramatically over time but were never reported accurately and no serious attempt to control them was made by the Distributor Defendants. Plaintiff states that Plaintiff's current knowledge of this subject is detailed at length in paragraphs 498-606, 814-877 and 906-938 of Plaintiff's Corrected Second Amended Complaint, which provides a more than adequate response, and any additional information will be provided as discovery proceeds.

13

CONFIDENTIAL

Subject to and without waiving all objections, Plaintiff states that the ARCOS database

identifies the following pharmacies as having Suspicious Orders for Prescription Opioids within

Summit County:

| # | PHARMACY/BUYER NAME | CITY/STATE |
|---|---|---|
| 1 | Dr. A. J. GINGO | AKRON, OH |
| 2 | THE FRED W ALBRECHT GROCERY CO | STOW, OH |
| 3 | RITZMAN PHARMACY #107 | AKRON, OH |
| 4 | SUMMIT PAIN SPECIALISTS PHARMACY | STOW, OH |
| 5 | RITZMAN PHARMACY #106 | NORTON, OH |
| 6 | THE FRED W ALBRECHT GROCERY | AKRON, OH |
| 7 | SKILLED CARE PHARMACY-CLEV | TWINSBURG, OH |
| 8 | WALGREEN CO. | CUYAHOGA FALLS, OH |
| 9 | RITZMAN PHARMACY #101 | AKRON, OH |
| 10 | OHIO CVS STORES, L.L.C. | AKRON, OH |
| 11 | ACME PHARMACY #11 | TALLMADGE, OH |
| 12 | WALGREEN CO. | AKRON, OH |
| 13 | MARC GLASSMAN INC | AKRON, OH |
| 14 | RITE AID OF OHIO, INC. | BARBERTON, OH |
| 15 | TARGET STORES A DIV. OF TARGET CORP. | AKRON, OH |
| 16 | KLEIN'S PHARMACY | CUYAHOGA FALLS, OH |
| 17 | GIANT EAGLE PHARMACY #4036 | CUYAHOGA FALLS, OH |
| 18 | CHILDRENS HOSPITAL MED CTR | AKRON, OH |
| 19 | FRED W ALBRECHT GROCERY CO | AKRON, OH |
| 20 | GLASSMAN INC | SAGAMORE HILLS, OH |
| 21 | RITE AID OF OHIO, INC. | AKRON, OH |
| 22 | RITE AID OF OHIO, INC. | TALLMADGE, OH |
| 23 | SUMMA HEALTH SYSTEM | AKRON, OH |
| 24 | GIANT EAGLE PHARMACY #5878 | CUYAHOGA FALLS, OH |

CONFIDENTIAL

| 25 | THE FRED W ALBRECHT GROCERY | AKRON, OH |
|---|---|---|
| 26 | AKRON PHARMACY | AKRON, OH |
| 27 | GIANT EAGLE PHARMACY #6299 | NORTHFIELD, OH |
| 28 | KLEIN'S COMMUNITY HEALTH | AKRON, OH |
| 29 | MARCS CHAPEL HILL INC | CUYAHOGA FALLS, OH |
| 30 | TARGET STORES A DIV.OF TARGET CORP. | FAIRLAWN, OH |
| 31 | KMART PHARMACY #7383 | BARBERTON, OH |
| 32 | THE FRED W ALBRECHT GROC CO | NORTON, OH |
| 33 | RITZMAN PHARMACY #105 | AKRON, OH |
| 34 | THE FRED W ALBRECHT GROCERY | HUDSON, OH |
| 35 | RITE AID OF OHIO, INC. | FAIRLAWN, OH |
| 36 | THE FRED W ALBRECHT GROCERY | STOW, OH |
| 37 | RITE AID OF OHIO, INC. | AKRON, OH |
| 38 | THE FRED W ALBRECHT GROCERY | CUYAHOGA FALLS, OH |
| 39 | GIANT EAGLE PHARMACY #4031 | BARBERTON, OH |
| 40 | GIANT EAGLE PHARMACY #4030 | TALLMADGE, OH |
| 41 | RITE AID OF OHIO, INC. | AKRON, OH |
| 42 | COLONIAL PHARMACY | BATH, OH |
| 43 | MARC | AKRON, OH |
| 44 | NEW CHOICE PHARMACY | CUYAHOGA FALLS, OH |
| 45 | VA OUTPATIENT CLINIC | AKRON, OH |
| 46 | RITE AID OF OHIO, INC. | AKRON, OH |
| 47 | GIANT EAGLE PHARMACY #4124 | AKRON, OH |
| 48 | GIANT EAGLE PHARMACY #4029 | AKRON, OH |

Plaintiff incorporates its answer and objections to Interrogatory 23 by reference.  Plaintiff

reserves the right to modify, amend or supplement this answer as discovery is ongoing and this

information will be the subject of fully-supported and detailed expert witness opinion(s) that will

15

CONFIDENTIAL

be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure.

**Interrogatory No. 27**

Identify and describe each statement or omission relating to Prescription Opioids that were made or disseminated by any of the Manufacturer Defendants and that You allege the Distributor Defendants knew were false, misleading, unfair, deceptive or otherwise actionable and, for each, identify each specific Distributor Defendant who had such knowledge, explain the basis for your contention that it had such knowledge, state the specific act(s) or omission(s) that each Distributor Defendant took with such knowledge, and describe how such act(s) or omission(s) caused a quantifiable harm to You.

**Response to Interrogatory No. 27**

Plaintiff objects to this Interrogatory as vague, ambiguous and overly broad in its use of the phrases "each statement or omission" that were "false, misleading, unfair, deceptive or otherwise actionable" and "the specific act(s) or omissions that each Distributors took with such knowledge" as phrases that are subject to varying meanings and interpretations.  Plaintiff further objects to this Interrogatory as unduly burdensome and not proportional because it would be virtually, if not literally, impossible for Plaintiff to identify each and every "statement or omission" by Defendants that were "false, misleading, unfair, deceptive or otherwise actionable" and "the specific act(s) or omission(s)" each Distributor "took with such knowledge."  Plaintiff objects to the terms "statement or omission" as vague and ambiguous.  Plaintiff objects to the terms "knowledge" and "quantifiable harm" as vague, ambiguous and subject to varying meanings and interpretations.  Plaintiff objects to this Interrogatory to the extent it calls for information in the

16

CONFIDENTIAL

Manufacturer Defendants' and/or Distributors' possession, custody, or control.  This Interrogatory calls for a premature contention interrogatory, more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waiving all objections, Plaintiff states that Plaintiff's current knowledge of this subject is reflected in Plaintiff's Corrected Second Amended Complaint, and any additional information will be supplemented as Defendants produce documents and discovery proceeds pursuant to scheduling orders in this case and the Federal Rules of Civil Procedure. Plaintiff further directs Distributor Defendants to the following statements or omissions relating to Prescription Opioids that were made or disseminated by any of the Manufacturer Defendants that were false, misleading, unfair, deceptive or otherwise actionable:

| Falsehood | Explanation |
|---|---|
| The risk of addiction from chronic opioid therapy is low | When it launched OxyContin, Purdue cited in promotional and educational materials a single paragraph from a letter published in 1980 by Dr. Hershel Jick and Jane Porter in the New England Journal of Medicine as evidence of the low risk of addiction to opioids.  In fact, Purdue included reference to this letter in a 1998 promotional video entitled, "I got my life back," in which Dr. Alan Spanos states, "In fact, the rate of addiction amongst pain patients who are treated by doctors is much less than 1%."<br><br>Until April 2012, Endo stated on its website that "…patients treated with prolonged opioid medicines usually do not become addicted;" a statement echoed on the website of its close affiliate, APF.  Endo also published and distributed multiple pamphlets and brochures downplaying addiction as it related to opioids, including but not limited to "Pain: Opioid Facts," "Understanding Your Pain: Taking Oral Opioid Analgesics" and "Pain: Opioid Therapy."<br><br>Janssen claimed on its unbranded website – www.PrescribeResponsibility.com – that concerns about opioid addiction are "overestimated" and that "true addiction occurs only in a small percentage of patients."  Janssen also published a patient education guide entitled "Finding Relief: Pain Management for Older Adults" describing opioid addiction as a myth and that "many studies show opioids are *rarely* addictive…" which, until recently, was available online. |

CONFIDENTIAL

| Falsehood | Explanation |
|---|---|
| | Cephalon sponsored a 2007 publication from APF entitled "Treatment Options: A Guide for People Living with Pain" which taught that opioid addiction is rare. |
| | Actavis published material that claimed it is "less likely" to become addicted to opioids in those who "have never had an addiction problem."  The same publication notes that a need for a "dose adjustment" is the result of tolerance, and "not addiction."  A 2007 guide for prescribers published under Actavis's copyright states that Kadian is more difficult to abuse and less addictive than other opioids. |
| | Mallinckrodt created the C.A.R.E.S. (Collaborating and Acting Responsibly to Ensure Safety) Alliance in 2010 which promoted a book entitled "Defeat Chronic Pain Now!" in which opioids were stated to "rarely" cause addiction. |
| To the extent there is a risk of addiction, it can be easily identified and managed | Purdue and Cephalon sponsored the APF's publication, "Treatment Options: A Guide for People Living with Pain" in 2007, which falsely reassured patients that opioid agreements between doctors and patients can "ensure that you take the opioid as prescribed."  Janssen stated on its website – www.PrescribeResponsibly.com – that opioid addiction "can usually be managed" through tools such as opioid agreements between patients and doctors.  Purdue also sponsored a 2011 webinar taught by Dr. Lynn Webster entitled "Managing Patient's Opioid Use: Balancing the Need and Risk" wherein prescribers were told that screening tools, urine tests, and patient agreements have the effect of preventing "overuse of prescriptions" and "overdose deaths."  Endo paid for a 2007 supplement for continuing education credit in the "Journal of Family Practice" entitled "Pain Management Dilemmas in Primary Care: Use of Opioids" which recommended screening patients and the use of the Opioid Risk Tool. |
| Signs of addictive behavior are "psuedoaddiction," requiring more opioids | Cephalon, Endo and Purdue sponsored the Federation of State Medical Board's ("FSMB") publication entitled "Responsible Opioid Prescribing" in 2007 which stated that such behaviors as "requesting drugs by name," "demanding or manipulative behavior," seeing more than one doctor to obtain opioids and hoarding are all signs of "pseudoaddiction" (not genuine addiction).  Purdue published an unbranded pamphlet entitled "Clinical Issues in Opioid Prescribing" in 2005 which was circulated through 2007 and available on its website through 2013.  This pamphlet stated that "illicit drug use and deception" were not evidence of true addiction, but rather "pseudoaddiction."  Endo sponsored a CME program in 2009 entitled "Chronic Opioid Therapy: Understanding Risk While Maximizing Analgesia," which promoted pseudoaddiction.  Janssen |

18

CONFIDENTIAL

| Falsehood | Explanation |
|---|---|
| | sponsored, funded and edited a website entitled "Let's Talk Pain" which in 2009 stated that pseudoaddiction "…refers to patient behaviors that may occur when pain is undertreated…" |
| Opioid withdrawal can be avoided by tapering | Endo sponsored an educational program entitled "Persistent Pain in the Older Adult" which claimed that withdrawal symptoms could be avoided by simply tapering a patient's opioid dose over ten days.  Similarly, Purdue sponsored APF's publication "A Policymaker's Guide to Understanding Pain & Its Management" which taught that "[s]ymptoms of physical dependence can often be ameliorated by gradually decreasing the dose of medication during discontinuation."  Neither Defendant explained the significant hardships associated with cessation of use. |
| Opioid doses can be increased without limit or greater risks | Purdue omitted the increased risk of respiratory distress and death from increasing opioid dosage from its 2010 "Risk Evaluation and Mitigation Strategy" for OxyContin.  Endo published on its website a patient education pamphlet entitled "Understanding Your Pain: Taking Oral Opioid Analgesics" that responds to the question, "If I take the opioid now, will it work later when I really need it?" with "The dose can be increased…You won't 'run out' of pain relief."  Purdue and Cephalon also sponsored APF's 2007 "Treatment Options: A Guide for People Living with Pain" which taught patients that opioids have "no ceiling dose" and are therefore safer than NSAIDs. |
| Long-term opioid use improves functioning | Janssen promoted Duragesic through an ad campaign as improving a patient's functioning and work productivity.  Janssen's "Let's Talk Pain" website featured a video interview claiming that opioids were what allowed a patient to "continue to function."  Similarly, Purdue ran a full-page ad for OxyContin in the Journal of the American Medical Association stating, "There Can Be Life With Relief" and implying that OxyContin would help users' function; however the FDA noted that Purdue failed to warn that patients could die from taking OxyContin.  Purdue also ran advertisements in medical journals in 2012 touting that OxyContin would help a "writer with osteoarthritis of the hands" work more effectively.  Since May 2011, Endo has distributed and made available on its website – www.Opana.com – a pamphlet implying that patients with physically demanding jobs would achieve long-term pain relief and functional improvement.  Mallinckrodt's website claims that "[t]he effective pain management offered by our [opioids] helps enable patients to stay in the workplace, enjoy interactions with family and friends, and remain an active member of society." |
| Alternative forms of pain relief pose greater risks than opioids | Purdue and Cephalon sponsored APF's publication entitled "Treatment Options: A Guide for People Living with Pain" warning of increased risks if NSAIDs are "taken for more than a period of months;" falsely attributing 10,000 to 20,000 deaths |

CONFIDENTIAL

| Falsehood | Explanation |
|---|---|
| | annually to NSAID overdoses when the figure is closer to 3,200. In 2009, Janssen sponsored a publication entitled, "Finding Relief: Pain Mangement for Older Adults" which listed dose limitations as "disadvantages" of other pain medicines.  It also listed a number of serious health effects as disadvantages of NSAIDs while only listing "upset stomach or sleepiness" and constipation as disadvantages of opioids.  Purdue and Endo sponsored a CME issued by the AMA in 2003, 2007, 2010 and 2013 entitled "Overview of Management Options" which taught that NSAIDs and other drugs, but not opioids, are unsafe at high doses. |
| OxyContin provides twelve hours of pain relief | In 2000, Purdue advertised that OxyContin provides "Consistent Plasma Levels Over 12 Hours;" however the oxycodone does not enter the body at a linear rate, releasing a greater proportion upon administration and gradually tapering over 12 hours.  These 12-hour dosing advertisements ran in the *Journal of Pain* in February 2005 and the *Clinical Journal of Pain* in 2006. |
| New formulations of certain opioids successfully deter abuse | Purdue presented an article in 2013 based on a review of data from poison control centers concluding that its ADF OxyContin can reduce abuse, but failed to acknowledge that abuse merely shifted to other drugs and that there were actually more harmful exposures to opioids after the reformulation.  In 2016, Dr. J. David Haddox, VP of Health Policy for Purdue, falsely claimed that the evidence does not show Purdue's ADF opioids are being abused in large numbers.

Endo's promotion of its Opana ER also tended to omit material facts according to a May 2012 letter from the FDA to Endo. Endo submitted a citizen petition asking the FDA for permission to label Opana ER as abuse-resistant, and also went so far as to sue the FDA to force expedited consideration of this change. Endo falsely promoted Opana ER as having been designed to be crush-resistant, knowing that this would (falsely) imply that it was actually crush-resistant and less likely to be abused (as stated in a June 14. 2012 press release).  Endo initiated journal advertisements that appears in April 2013 stating Opana ER was "designed to be crush resistant."

Likewise, Actavis copyrighted a guide for prescribers representing that Kadian is more difficult to abuse and less addictive than other opioids.  Mallinckrodt promoted both Exalgo and Xartemis XR as specifically formulated to reduce abuse, going so far as to state, "XARTEMIS XR has technology that requires abusers to exert additional effort to extract the active ingredient from the large quantity of inactive and deterrent ingredients." |

CONFIDENTIAL

Additionally, as Plaintiff's investigation is ongoing, Plaintiff expects this topic will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with scheduling orders in this case and the Federal Rules of Civil Procedure.

**Interrogatory No. 28**

Describe how, if at all, You used the information contained in the Ohio Automated Rx Reporting System (OARRS), to address prescription drug diversion and abuse.

**Response to Interrogatory No. 28**

Plaintiff objects to this Interrogatory as vague, overly broad, and unduly burdensome to the extent it requests the County of Summit and the City of Akron to identify how the Ohio Automated Rx Reporting System (OARRS) is "used" to "address prescription drug diversion" and "abuse." Plaintiff objects to the terms "used," "address" and "abuse" as vague and subject to varying interpretations. Plaintiff objects to this Interrogatory to the extent that it calls for disclosure of Privileged or Confidential Information, information protected by HIPAA, or information more readily accessible to third parties. Plaintiff objects to this Interrogatory to the extent it purports to require Plaintiff to create documents, or gather data, that Plaintiff does not maintain in the ordinary course of business.

Subject to and without waiving all objections, Plaintiff states that certain City and County employees, including but not limited to law enforcement and the medical examiner's office, use the Ohio Automated Rx Reporting System (OARRS) to make requests for Prescription Opioid history reports; identify prescribers linked to Prescription Opioid overdose deaths; identify, report or prosecute doctors or pharmacies that may have engaged in diversion of opioids and allow its drug courts to track participants' use of controlled substances.

21

CONFIDENTIAL

Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff reserves the right to answer this Interrogatory by producing non-privileged, responsive documents, if any, from centrally located databases or from the files of designated custodians after conducting a reasonably diligent search.  Plaintiff specifically reserves the right to supplement, modify or amend this response as discovery proceeds.  Further, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure.

**Interrogatory No. 29**

For each Suspicious Order that You contend was shipped into Your geographic area by a Distributor Defendant, identify how, if at all, the Prescription Opioids were used following the shipment, including what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed, and if the Prescription Opioids were diverted, abused, or otherwise used improperly, who was involved in such diversion, abuse, or other improper use.

**Response to Interrogatory No. 29**

Plaintiff objects to this Interrogatory as overly broad, vague and ambiguous in its use of the phrases "identify how, if at all, the Prescription Opioids were used following the shipment" and "what percentage of the Prescription Opioids were "diverted, abused, used" for "legitimate medical purposes, used in some other manner or destroyed" as overly broad, vague and ambiguous phrases that are subject to varying interpretations.  Plaintiff also objects to the terms "diverted," "abused" and "used for legitimate medical purposes" in this context as overly broad, vague, ambiguous and unduly burdensome as drafted.  Plaintiff objects to "used in some manner" and

22

CONFIDENTIAL

"otherwise used improperly" as vague and ambiguous.  Plaintiff objects to this Interrogatory to the extent it purports to require Plaintiff to create documents, or gather data, that Plaintiff does not maintain in the ordinary course of business.  Plaintiff objects to this interrogatory as overly burdensome and not proportional to the needs of the case in asking Plaintiff to identify for the Distributors —who are in a far better position to provide this information — exactly where they distributed opioids or "who was involved in such diversion, abuse, or other improper use."

Subject to and without waiving all objections, the factual basis for Plaintiff's claims are specific and detailed: the conduct of the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor, regulate or restrict the improper distribution of opioids, are substantial causes of a public health crisis in Plaintiff's jurisdictions.  This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by its residents; instead, the lawsuit seeks, *inter alia,* to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for its losses caused by Defendants' conduct and from which each profited.

Subject to and without waiving all objections, this case concerns whether the cumulative effect of Defendants' distribution practices created the opioid public health crisis that exists within Plaintiff's jurisdictions.  Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdictions.  Plaintiff will prove its case through aggregate proof demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis.  The Defendants' actions were a substantial factor in the opioid epidemic.

CONFIDENTIAL

Subject to and without waiving all objections, Plaintiff answers that it does not have complete information concerning how Prescription Opioids were used following shipment, including the exact percentage of the Prescription Opioids diverted, "used in some other manner," or "destroyed," or whether any given order was diverted or "otherwise used improperly," nor exactly who was involved in such diversion. Even if this Interrogatory was proper and reasonably circumscribed, much of the information that would be arguably related to this Interrogatory relates to Defendants' conduct and Defendants' documents on Suspicious Order Reports, recently produced by the DEA in this action and equally available to the parties. Plaintiff incorporates its answer and objections to Interrogatory 23 by reference.

Subject to and without waiving all objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff states that Plaintiff's current knowledge of this subject is reflected in Plaintiff's Corrected Second Amended Complaint. Pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff reserves the right to further answer this Interrogatory by producing non-privileged, responsive documents, if any, from centrally located databases or from the files of designated custodians after conducting a reasonably diligent search using predetermined keyword searches and reviewing the results, and subject to a determination that producing such records would not be unduly burdensome. In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with scheduling orders in this case and the Federal Rules of Civil Procedure.

24

CONFIDENTIAL

Dated:  August 31, 2018

*/s/  Linda Singer*

Linda Singer
Joseph F. Rice
Jodi Westbrook Flowers
Anne McGinness Kearse
David I. Ackerman
Jeffrey C. Nelson
MOTLEY RICE LLC
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: (202) 232-5504

CONFIDENTIAL

## <u>CERTIFICATE OF SERVICE</u>

I, Richard Cashon, certify that on August 31, 2018, I caused the foregoing to be served via electronic mail on Defendant's Liaison Counsel pursuant to the Case Management Order in this case (Dkt. No. 232).

<u>_/s/ Richard Cashon__</u>

# Exhibit E

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| This document relates to: | Judge Dan Aaron Polster |
| Case No. 17-OP-45004 (N.D. Ohio) | |
| THE COUNTY OF CUYAHOGA, OHIO, and STATE OF OHIO EX REL., PROSECUTING ATTORNEY OF CUYAHOGA COUNTY, MICHAEL C. O'MALLEY, | PLAINTIFFS THE COUNTY OF CUYAHOGA, OHIO AND THE STATE OF OHIO *EX REL.* PROSECUTING ATTORNEY OF CUYAHOGA COUNTY, MICHAEL C. O'MALLEY'S FIRST AMENDED RESPONSES AND OBJECTIONS TO DISTRIBUTOR DEFENDANTS' THIRD SET OF INTERROGATORIES |
| Plaintiffs, | |
| vs. | |
| PURDUE PHARMA L.P., PURDUE PHARMA INC., THE PURDUE FREDERICK COMPANY, INC., ENDO HEALTH SOLUTIONS INC., ENDO PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC., NORAMCO, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON, TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., CEPHALON, INC., ALLERGAN PLC f/k/a ACTAVIS PLC, ALLERGAN FINANCE LLC, f/k/a ACTAVIS, INC., f/k/a WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ACTAVIS LLC, ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC., INSYS THERAPEUTICS, INC., MALLINCKRODT PLC, MALLINCKRODT LLC, CARDINAL HEALTH, INC., McKESSON | |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CORPORATION, AMERISOURCEBERGEN
CORPORATION, HEALTH MART
SYSTEMS, INC., H. D. SMITH, LLC d/b/a
HD SMITH, f/k/a H.D. SMITH
WHOLESALE DRUG CO., H. D. SMITH
HOLDINGS, LLC, H. D. SMITH HOLDING
COMPANY, CVS HEALTH
CORPORATION, WALGREENS BOOTS
ALLIANCE, INC. a/k/a WALGREEN CO.,
and WAL-MART INC. f/k/a WAL-MART
STORES, INC.,

                    Defendants.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Case

Management Order in *In re National Prescription Opiate Litigation*, No. 1:17-cv-2804 (Dkt. No. 232),

The County of Cuyahoga, Ohio and the State of Ohio *Ex Rel.* Prosecuting Attorney of Cuyahoga

County, Michael C. O'Malley, ("Plaintiff") hereby responds to Distributor Defendants'[1] Third Set of

Interrogatories (the "Interrogatories" and, each individually, a "Interrogatory"), as follows:

## OBJECTIONS

The following objections apply to each Interrogatory. To the extent that certain specific

objections are cited in response to an individual Interrogatory, those specific objections are provided

because they are applicable to that specific Interrogatory and are not a waiver of the objections

applicable to information falling within the scope of such Interrogatory.

1.        Plaintiff objects to each Interrogatory to the extent they are overly broad, vague,

unduly burdensome, seeks information that is not relevant to any party's claim or defense, or seeks

to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the

---

[1] The Distributor Defendants are AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and
McKesson Corporation.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

ESI Protocol entered in this matter or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      Plaintiff objects to each Interrogatory to the extent they seek information restricted from dissemination pursuant to court order, statute, or regulation. Further, Plaintiff's responses to the Interrogatories are not intended to waive, and does not constitute any waiver of, any objection to the admissibility, authenticity, competency or relevance of the information identified.

3.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained provided herein. All such objections and the grounds therefore are hereby reserved.

4.      The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

5.      Plaintiff objects to each Request to the extent Plaintiff has not yet completed its investigation of the facts relating to this action and has not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

6.      Plaintiff objects to each Interrogatory to the extent they purport to require Plaintiff to provide information that is in the public domain or otherwise available to Manufacturers as easily from other sources as from Plaintiff.

7.      Plaintiff objects to each Interrogatory to the extent they purport to state facts, assumptions, or characterizations that are disputed.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

8.      Plaintiff objects to each Interrogatory to the extent they seek information more appropriately obtained through other methods of discovery.

9.      Plaintiff objects to each Interrogatory to the extent that they seek information that is proprietary or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

10.      Plaintiff objects to each Interrogatory to the extent they seek confidential investigative, personal, or health information in Plaintiff's possession, custody, or control (collectively, "Confidential Information").

11.      Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its objections and without waiver of any objection.

12.      Any response stating that Plaintiff will produce information shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control."

13.      Plaintiff objects to each Interrogatory to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions.  In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

14.      Plaintiff objects to each Interrogatory to the extent they seek information that is not within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

15.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

16.     Plaintiff intends to complete its production by the time agreed upon by the parties for the completion of discovery, or by the date ordered by the Court. Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Interrogatories. All final decisions regarding whether any information will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of written discovery.

## NON-WAIVER

1.     Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this Action or any other action.

2.     If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of objections stated herein, such information is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.     Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.     Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses.  Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 13:**

State the date(s) upon and the manner in which You first became aware that Prescription Opioids were being abused in Your geographic boundaries, that Prescription Opioids were being diverted in Your geographic boundaries and/or by Your residents, and that addiction to Prescription Opioids was occurring and/or increasing in Your geographic boundaries.

**Response to Interrogatory No. 13:**

Plaintiff objects to this Interrogatory as vague and ambiguous as to the term "being abused." Plaintiff further objects to the term "awareness" as requiring speculation on the state of mind of the County of Cuyahoga. It is unclear how defendants define these terms and precisely what information defendants seek concerning knowledge of abuse, diversion and/or addiction, nor why that information would be in any way relevant to the present case, including but not limited to any statute of limitations defense. Moreover, it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to state a single date or date(s) and "the manner" in which each and every instance of "abuse," "diversion" or "addiction" of opioids occurred or occurring within Plaintiff's geographic boundaries became known to Plaintiff.

Plaintiff also objects to this Interrogatory as it seeks information already in the possession of the Distributor Defendants. Plaintiff further objects that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waiver of the foregoing objections, Plaintiff responds that although it has long been aware of individual instances of diversion, abuse, and addiction to opioids within its jurisdiction, as a result of Defendants' knowing and active concealment of the true nature of their conduct, Plaintiff lacked knowledge linking those diversion events to defendants' improper

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

marketing and distribution practices, including but not limited to denying risks of addiction, the gross over supply and flooding of Ohio with opioid pills, and the nature of Defendants' conduct in marketing and distribution, and failure to report suspicious orders and/or monitor distribution of opioids.

**Interrogatory No. 14:**

State the number of pills or other dosage units of Prescription Opioids that were diverted from legitimate medical purposes in Your geographic boundaries, and the number of pills or other dosage units of Prescription Opioids that were dispensed for other than legitimate medical purposes in Your geographic boundaries for each year during the Timeframe, and describe how each number was calculated.

**Response to Interrogatory No. 14:**

Plaintiff objects to this Interrogatory to the extent it contains references to several ambiguous phrases and terms, namely, "diverted," and "legitimate medical purposes."

Plaintiff also objects in that this Interrogatory seeks information already in the possession of Defendants and third-parties.  To the extent Plaintiff were able to identify all responsive information, Plaintiff objects that it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to provide the dates and manner of each and every instance of diversion within Plaintiff's geographic boundaries. Plaintiff states that discovery and analysis of the ARCOS database is ongoing related to these issues.

As discovery is ongoing, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Interrogatory No. 15:**

State the maximum number of pills or other dosage units of Prescription Opioids that should properly have been distributed in Your geographic boundaries for legitimate medical purposes during the Timeframe. In Your response, explain how You calculated that number, including any per capita, per patient, drug family or other grouping, or any other basis on which you rely.

**Response to Interrogatory No. 15:**

Plaintiff objects to this Interrogatory to the extent the term "other dosage units" is vague and ambiguous and subject to varying interpretations. This Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff also objects in that this Interrogatory seeks information already in the possession of Defendants and third-parties.

Plaintiff objects that it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to identify the maximum number of pills or other dosage units of prescription opioids that should properly have been distributed in its geographic boundaries for legitimate medical purposes during the Timeframe. Plaintiff states that discovery and analysis of the ARCOS database is ongoing related to these issues.

As discovery is ongoing, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 16:**

Identify every specific prescription that You believe, suspect, or contend was diverted or used—in whole or in part—for other than legitimate medical, scientific, research, or industrial purposes in Your geographical area. Include in your response: the date the prescription was written; the name(s)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

of the Controlled Substance(s) prescribed; the quantity of Controlled Substance(s) prescribed; the recipient of each prescription; the name of the prescriber; the name of the dispensing pharmacy, hospital, or clinic; the date the prescription was filled whether any Defendant was involved in the Distribution of that Controlled Substance (s); whether the Controlled Substance(s) were distributed as part of a Suspicious Order (and if so what made the order suspicious); and the reason(s) why you believe, suspect, or contend that all or part of the prescription was diverted.[2]

**Response to Interrogatory No. 16:**

Plaintiff objects to the term "identify every specific prescription" as overly broad and unduly burdensome with little or no relevance to the claims and defenses in this action.

The factual basis for Plaintiff's claims are specific:  the conduct of the Manufacturing Defendants in engaging in a massive false advertising campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor and restrict the improper distribution of opioids, are substantial causes of a public health emergency in Plaintiff's jurisdiction. This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by their residents; instead, the lawsuit seeks to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.

This case concerns whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that currently exists within Plaintiff's jurisdiction.  It

---

[2] Distributor Defendants acknowledge that the Court has required Plaintiff to provide some of this information by July 16, 2018. Distributor Defendants' request, however, is broader than the relevant provision of the CMO. And Defendants need the information they have requested more than one day in advance of the July 17, 2018 deadline for Defendants to add parties without leave of Court. *See* CMO 1 at 9. Defendants also require this information to conduct further discovery in Track One Cases.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

is not whether each opioid pill, prescription, overdose, or patient is a separate public nuisance or separate "epidemic;" it is not whether particular individuals in specific circumstances with individualized medical conditions abused or misused or were improperly prescribed opioids. Instead, Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdiction.

Plaintiff will prove causation through aggregate proof demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis. This will establish that the Defendants' actions were a substantial factor in the epidemic experienced by, and paid for by, Plaintiff. Whether a specific resident with a history of substance abuse received an opioid prescription, for example, is irrelevant because a definable percentage of residents who received opioids were bound to have a history of substance abuse. Discovery about individuals and individual health case and addiction issues is irrelevant to establishing that an opioid epidemic exists and is impermissible.  *See* Fed. R. Evid. 402.

Plaintiff states that it does not have information concerning the identity of every person who received an opioid prescription or became addicted to opioids in Cuyahoga County – whether or not they ever received treatment – or access to the confidential, private health care records of residents who were prescribed opioids or treated for opioid addiction. In addition, Plaintiff objects to this Interrogatory to the extent it seeks Confidential Information.

The information sought is overly broad and vague in that it requests all medical records and all medical information related to every single person who was ever prescribed an opioid that ever made its way into Plaintiff's jurisdiction.  Furthermore, this Interrogatory is so broad as to render resolution of this matter all but impossible to resolve within any reasonable amount of time while

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Defendants examine every record and then depose residents, doctors, treatment facilities, and the like about each individual case.  Even if the Interrogatory was proper and reasonably circumscribed, the information that Plaintiff may have that would be arguably related to the Interrogatory (though irrelevant to the case) relates to Plaintiff's employees who received opioid treatment through Plaintiff's sponsored health insurance or worker's compensation programs.

Plaintiff further responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).  In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

Subject to and without waiving all objections, Subject to and without waiving all objections, Plaintiff states that it believes, suspects, or contends that the following distributors and pharmacies dispensed or distributed prescriptions that were diverted or used – in whole or in part – for other than legitimate medical, scientific, research, or industrial purposes in its geographical area:

- AmerisourceBergen Drug Corp.;

- Anda, Inc.

- Cardinal Health, Inc.;

- CVS Health Corp.;

- Discount Drug Mart, Inc.;

- HBC Service Company;

- McKesson Corp.;

- Prescription Supply, Inc.;

- Rite Aid Corp.;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- Rite Aid of Maryland, Inc. (d/b/a/ Rite Aid Mid-Atlantic Customer Support Center);

- Walgreens Boots Alliance, Inc.; and

- Walmart Inc.

Subject to and without waiving all objections, Plaintiff further states that data from the ARCOS database indicates that prescriptions of oxycodone, hydrocodone, hydromorphone, and fentanyl have been diverted or used – in whole or in part – for other than legitimate medical, scientific, research, or industrial purposes in its geographical areas.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

**Interrogatory No. 17:**

To the extent not already identified in response to Interrogatory Number 16, identify every pharmacy, clinic, or hospital inside or outside Your geographic boundaries whose conduct with respect to Prescription Opioids You believe, suspect, or contend caused harm within Your geographic boundaries. For each such pharmacy, clinic, or hospital that You know that support Your belief, suspicion, or contention, including (without limitation): the name of the pharmacy, clinic, or hospital; each prescription filled by the pharmacy, clinic, or hospital that You believe, suspect, or contend caused harm in Your geographic boundaries; the date that each such prescription was written; the name of the prescriber; the name of the recipient of the prescription; the name(s) of the Prescription Opioids prescribed; the quantity of Prescription Opioids prescribed; the date the prescription was filled; whether any Defendant was involved in the Distribution of that Controlled Substance(s); whether the Controlled Substance(s) were distributed as part of a Suspicious Order (and if so what made the order suspicious); and the reason(s) why You believe, suspect, or contend the prescription caused harm within Your geographic boundaries.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Interrogatory No. 17:**

Plaintiff objects that this Interrogatory is unduly burdensome to the extent it requests Plaintiff to search for and identify any such pharmacy, clinic, or hospital.  Plaintiff further objects to this Interrogatory to the extent it calls for information in the Distributors' possession, custody, or control, or is just as available to Distributors from third-party sources as it may be available to Plaintiff, and thus places an undue burden on Plaintiff to gather.  Plaintiff also objects to the extent that the terms "believe" and "suspect" are overbroad, vague, and burdensome to Plaintiff beyond any need proportional to this case. Plaintiff further objects to the term "every specific prescription" as overly broad, irrelevant, and highly burdensome.  Plaintiff objects to the extent that this Interrogatory calls for expert opinions or conclusions and the expert discovery period in this litigation has not been commenced, let along concluded.  Finally, Plaintiff objects to this Interrogatory because it is a premature contention interrogatory, discovery and investigation are on-going and Plaintiff will amend its response at the close of discovery.

Subject to and without waiving all objections, Plaintiff states that as alleged in Plaintiff's Corrected Second Amended Complaint, based on information, belief, and facts reasonably known to Plaintiff, the distributors and pharmacies who are listed below and as Defendants in this matter, including retail pharmacy defendants, are the parties whose conduct "with respect to Prescription Opioids [we] believe, suspect, or contend caused harm within [our] geographical boundaries":

- AmerisourceBergen Drug Corp.;

- Anda, Inc.

- HBC Service Company;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- Cardinal Health, Inc.;

- CVS Health Corp.;

- Discount Drug Mart, Inc.;

- McKesson Corp.;

- Prescription Supply, Inc.;

- Rite Aid Corp.;

- Rite Aid of Maryland, Inc. (d/b/a/ Rite Aid Mid-Atlantic Customer Support Center);

- Walgreens Boots Alliance, Inc.; and

- Walmart Inc.

Plaintiff directs Defendants to the chart at paragraph 705 of Plaintiff's Second Amended Complaint for a breakdown of prescription opioids delivered in Cuyahoga County between 2006 and 2014.

Subject to and without waiving all objections, Plaintiff states that while its investigation is ongoing, Plaintiff's understanding and belief is that the Manufacturers and Distributors of opioids who are listed as Defendants in this matter, are the primary, if not sole, parties whose conduct "with respect to Prescription Opioids [Plaintiff] believe[s], suspect[s], or contend[s] caused harm within [its] geographic boundaries."

Additionally, as said investigation is ongoing, Plaintiff expects this topic will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Interrogatory No. 18:**

Specify each category of injury (e.g. increased cost of law enforcement, fire, emergency services, etc.) for which You claim damages in the Litigation and provide a computation of damages for each category of injury alleged. For each category of injury, identify all Persons with knowledge about such damages.

**Response to Interrogatory No. 18:**

Plaintiff objects to this Interrogatory to the extent that it calls for disclosure of Privileged and Confidential Information. Also, the Interrogatory is overly broad and unduly burdensome and seeks information beyond Plaintiff's possession, custody, and control. Further objecting, the Interrogatory contains a reference to the ambiguous phrase "category of injury."

Subject to and without waiving all objections, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will produce documents that identify Plaintiff's categories of injury.  In addition, Plaintiff's investigation of its costs, expenditures, damages, losses or harms caused by the Defendants is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

Further subject to and without waiving all objections, Plaintiff identifies the following non-exhaustive list of programs and other expenditures either that have been initiated because of the opioid crisis or which have experienced increased funding needs because of the opioid crisis. Such programs and expenditures include, but are not limited to, the following:

- Cuyahoga County Opiate Task Force;

- ADAMHS Board of Cuyahoga County;

- Cuyahoga County Opiate Collaborative/Project DAWN

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- Cuyahoga County Heroin Initiative;

- Cuyahoga County Drug Court;

- Cuyahoga County Prosecutor's Office;

- Cuyahoga County Homeless Services;

- Cuyahoga County Foster Care Services;

- Cuyahoga County Emergency Medical Services;

- Cuyahoga County Sherriff's Offices;

- Cuyahoga County Health Department;

- Cuyahoga County Medical Examiner's Office;

- Cuyahoga County Health and Human Services/Children and Family Services; and

- Cuyahoga County Jail/Regional Corrections.

Also, Plaintiff has already produced budget information identifying such expenditure, such as:

CUYAH_000000001- CUYAH_000000064

CUYAH_000000065 - CUYAH_000000132

CUYAH_000000133 - CUYAH_000000199

CUYAH_000000200 - CUYAH_000000718

CUYAH_000000719 - CUYAH_000000747

CUYAH_000000748 - CUYAH_000000819

CUYAH_000000820 - CUYAH_000001135

CUYAH_000001136 - CUYAH_000001646

CUYAH_000001647 - CUYAH_000001730

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CUYAH_000001731 - CUYAH_000001811

CUYAH_000001812 - CUYAH_000001874

CUYAH_000001875 - CUYAH_000001931

CUYAH_000001932 - CUYAH_000002439

CUYAH_000002440 - CUYAH_000002502

CUYAH_000002503 - CUYAH_000002563

CUYAH_000002564 - CUYAH_000003072

CUYAH_000003073 - CUYAH_000003099

CUYAH_000003100 - CUYAH_000003172

CUYAH_000003173 - CUYAH_000003436

CUYAH_000003437 - CUYAH_000003508

CUYAH_000003509 - CUYAH_000004006

CUYAH_000004007 - CUYAH_000004036

CUYAH_000004037 - CUYAH_000004294

CUYAH_000004295 - CUYAH_000004374

CUYAH_000004375 - CUYAH_000004523

CUYAH_000004524 - CUYAH_000004552

CUYAH_000004553 - CUYAH_000004798

CUYAH_000004799 - CUYAH_000004968

CUYAH_000004969 - CUYAH_000005145

CUYAH_000005146 - CUYAH_000005327

CUYAH_000005328 - CUYAH_000005496

CUYAH_000005497 - CUYAH_000005739

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CUYAH_000005740 - CUYAH_000006329

CUYAH_000006330 - CUYAH_000006573

CUYAH_000006574 - CUYAH_000006844

CUYAH_000006845 - CUYAH_000006986

CUYAH_000006987 - CUYAH_000007216

CUYAH_000007217 - CUYAH_000007427

CUYAH_000007428 - CUYAH_000007466

CUYAH_000007467 - CUYAH_000007687

CUYAH_000007688 - CUYAH_000007711

CUYAH_000007712 - CUYAH_000007929

CUYAH_000007930 - CUYAH_000008002

CUYAH_000008003 - CUYAH_000008640

CUYAH_000008641 - CUYAH_000008680

CUYAH_000008681 - CUYAH_000008907

CUYAH_000008908 - CUYAH_000009206

CUYAH_000009207 - CUYAH_000009269

CUYAH_000009270 - CUYAH_000009290

CUYAH_000009291 - CUYAH_000009316

CUYAH_000009317 - CUYAH_000009326

CUYAH_000009327 - CUYAH_000009345

CUYAH_000009346 - CUYAH_000009367

CUYAH_000009368 - CUYAH_000009613

CUYAH_000009614 - CUYAH_000009831

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CUYAH_000010261 - CUYAH_000010288

CUYAH_000012351 - CUYAH_000014730

CUYAH_000010320 - CUYAH_000010329

CUYAH_000010330 - CUYAH_000010367

CUYAH_000010368 - CUYAH_000010423

CUYAH_000010424 - CUYAH_000010826

CUYAH_000010827 - CUYAH_000010845

CUYAH_000010846 - CUYAH_000010896

CUYAH_000010897 - CUYAH_000010909

CUYAH_000010910 - CUYAH_000011080

CUYAH_000011081 - CUYAH_000011251

CUYAH_000011252 - CUYAH_000011262

CUYAH_000011263 - CUYAH_000011318

CUYAH_000011319 - CUYAH_000011347

CUYAH_000017939 - CUYAH_000018600

CUYAH_000011403 - CUYAH_000011443

CUYAH_000011444 - CUYAH_000011492

CUYAH_000011493 - CUYAH_000011525

CUYAH_000011526 - CUYAH_000011570

CUYAH_000011596 - CUYAH_000011615

CUYAH_000011616 - CUYAH_000011623

CUYAH_000011642 - CUYAH_000011797

CUYAH_000011799 - CUYAH_000011884

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CUYAH_000011885 - CUYAH_000011982

CUYAH_000011997 - CUYAH_000012044

CUYAH_000012351 - CUYAH_000012362

CUYAH_000012363 - CUYAH_000012370

CUYAH_000012371 - CUYAH_000012382

CUYAH_000012383 - CUYAH_000012396

CUYAH_000012397 - CUYAH_000012408

CUYAH_000012409 - CUYAH_000012420

CUYAH_000012421 - CUYAH_000012432

CUYAH_000012433 - CUYAH_000012444

CUYAH_000012445 - CUYAH_000012456

CUYAH_000012457 - CUYAH_000012480

CUYAH_000012481 - CUYAH_000012496

CUYAH_000012497 - CUYAH_000012512

CUYAH_000012513 - CUYAH_000012528

CUYAH_000012529 - CUYAH_000012544

CUYAH_000012545 - CUYAH_000012560

CUYAH_000012561 - CUYAH_000012576

CUYAH_000012577 - CUYAH_000012592

CUYAH_000012593 - CUYAH_000012594

CUYAH_000012595 - CUYAH_000012943

CUYAH_000013464 - CUYAH_000013479

CUYAH_000013806 - CUYAH_000013812

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CUYAH_000013813 - CUYAH_000013817

CUYAH_000013818 - CUYAH_000013820

CUYAH_000018030 - CUYAH_000018037

CUYAH_000018038 - CUYAH_000018066

CUYAH_000018067 - CUYAH_000018072

CUYAH_000018073 - CUYAH_000018075

CUYAH_000018076 - CUYAH_000018078

CUYAH_000018079 - CUYAH_000018115

CUYAH_000018116 - CUYAH_000018118

CUYAH_000018119 - CUYAH_000018141

CUYAH_000018142 - CUYAH_000018154

CUYAH_000018155 - CUYAH_000018161

CUYAH_000018162 - CUYAH_000018174

CUYAH_000018175 - CUYAH_000018177

CUYAH_000018178 - CUYAH_000018178

CUYAH_000018179 - CUYAH_000018179

CUYAH_000018180 - CUYAH_000018199

CUYAH_000018200 - CUYAH_000018219

CUYAH_000018220 - CUYAH_000018232

CUYAH_000018233 - CUYAH_000018248

CUYAH_000018249 - CUYAH_000018264

CUYAH_000018265 - CUYAH_000018277

CUYAH_000018278 - CUYAH_000018281

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CUYAH_000018282 - CUYAH_000018294

CUYAH_000018295 - CUYAH_000018322

CUYAH_000018323 - CUYAH_000018327

CUYAH_000018328 - CUYAH_000018355

CUYAH_000018356 - CUYAH_000018360

CUYAH_000018361 - CUYAH_000018488

CUYAH_000018489 - CUYAH_000018509

CUYAH_000018510 - CUYAH_000018533

CUYAH_000018534 - CUYAH_000018549

CUYAH_000018550 - CUYAH_000018577

CUYAH_000018578 - CUYAH_000018582

CUYAH_000018613 - CUYAH_000018627

CUYAH_000018676 - CUYAH_000018726

CUYAH_000020380 - CUYAH_000020439

Plaintiff's damages in this matter are expected to include at least the following:

- Losses caused by the decrease in funding available for Plaintiff's public services for which funding was lost because it was diverted to other public services designed to address the opioid epidemic;

- Costs for providing healthcare and medical care for patients suffering from opioid-related addiction or disease, including overdoses and deaths;

- Costs of training emergency and/or first responders in the proper treatment of drug overdoses;

22

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- Costs associated with providing naloxone – an opioid antagonist used to block the deadly effects of opioids in the context of overdose;

- Costs associated with the Sherriff's Office's responses to opioid overdoses;

- Costs for providing mental-health services, treatment, counseling, rehabilitation services, and social services to victims of the opioid epidemic and their families;

- Costs associated with law enforcement and public safety relating to the opioid epidemic, including but not limited to attempts to stop the flow of opioids into local communities, to arrest and prosecute street-level dealers, to prevent the current opioid epidemic from spreading and worsening, and to deal with the increased levels of crimes that have directly resulted from the increased homeless and drug-addicted population;

- Costs associated with various public safety and health initiatives related to the opioid epidemic;

- Costs associated with increased burden on Plaintiff's drug court;

- Costs associated with clean-up of public parks, spaces and facilities of needles and other debris and detritus of opioid addiction;

- Loss of tax revenue due to the decreased efficiency and size of the working population in Plaintiff's community and due to other impacts on property values and other tax generators for Plaintiff;

- Losses caused by decreased business investment and tax revenue;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- Plaintiff's contributions to the Alcohol, Drug Addiction, and Mental Health Services (ADAMHS) board;

- Increased public safety services, including but not limited to, training, investigations, staffing, jail expenses, dispatch services, task force as a result of the opioid epidemic;

- Plaintiff's Health Department costs related to the opioid epidemic;

- Costs associated with impact of opioid epidemic on Plaintiff's vehicle fleet; and

- Costs for Plaintiff to properly and adequately abate the nuisance created by the opioid epidemic.

Plaintiff will continue to produce documents that identify costs, expenditures, damages, losses, or harm for which Plaintiff seeks equitable or monetary relief by continuing to collect reports, memoranda, summaries, budgets, annual reports, audits, and analyses done regarding such identifying information.

Discovery into these topics is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

**<u>Interrogatory No. 19:</u>**

Identify each Person whose use of Prescription Opioids or other drugs resulted in expenditures by You for which you seek damages. For each such person, provide the following information: a description of how each Person's use of Prescription Opioids or other drugs resulted in Your expenditures; the Controlled Substance(s) ingested by such Person; from whom such Person

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

obtained the Controlled Substance(s) that caused his or her injury; which entity manufactured and sold the Controlled Substance(s) used by such Person; which Distributor Defendant, if any, distributed the Controlled Substance(s) used by such Person; and whether the Controlled Substance(s) were distributed as part of a Suspicious Order (and if so what made the order suspicious).

**Response to Interrogatory No. 19:**

Plaintiff objects to "a description of how each Person's use" of opioids "or other drugs" as overly broad, irrelevant, and unduly burdensome.

The factual basis for Plaintiff's claims are specific:  the conduct of the Manufacturing Defendants in engaging in a massive false advertising campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor and restrict the improper distribution of opioids, are substantial causes of a public health emergency in Plaintiff's jurisdiction.  This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by their residents; instead, the lawsuit seeks to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.

This case concerns whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that currently exists within Plaintiff's jurisdiction.  It is not whether each opioid pill, prescription, overdose, or patient is a separate public nuisance or separate "epidemic;" it is not whether particular individuals in specific circumstances with individualized medical conditions abused or misused or were improperly prescribed opioids. Instead, Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdiction.  Plaintiff will prove causation through aggregate proof

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis. This will establish that the Defendants' actions were a substantial factor in the epidemic experienced by, and paid for by, Plaintiff. Whether a specific resident with a history of substance abuse received an opioid prescription, for example, is irrelevant because a definable percentage of residents who received opioids were bound to have a history of substance abuse.  Discovery about individuals and individual health case and addiction issues is irrelevant to establishing that an opioid epidemic exists and is impermissible.  *See* Fed. R. Evid. 402.

Plaintiff states that it does not have information concerning the identity of every person who received an opioid prescription or became addicted to opioids in Cuyahoga County – whether or not they ever received treatment – or access to the confidential, private health care records of residents who were prescribed opioids or treated for opioid addiction.  In addition, Plaintiff objects to this Interrogatory to the extent it seeks Confidential Information.  The information sought is overly broad and vague in that it requests all medical records and all medical information related to every single person who was ever prescribed an opioid that ever made its way into the jurisdiction.

Furthermore, this Interrogatory is so broad as to render resolution of this matter all but impossible to resolve within any reasonable amount of time while Defendants examine every record and then depose residents, doctors, treatment facilities, and the like about each individual case.  Even if the Interrogatory was proper and reasonably circumscribed, much of the information that Plaintiff may have that would be arguably related to the Interrogatory (though irrelevant to the case) relates to Plaintiff's employees who received opioid treatment through Plaintiff's sponsored health insurance or worker's compensation programs.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Plaintiff further responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).  In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 20:**

Identify each Person to whom You provided treatment or assistance related to Prescription Opioid addiction, abuse, or overdose during the Timeframe. For each such Person, provide the following information: the name of the individual; the date of addiction, abuse, or overdose; the drug or drugs involved; which entity manufactured and sold the Controlled Substance(s) used by such Person which Distributor Defendant, if any, distributed Prescription Opioids used by the Person; and whether the Prescription Opioids used by the Person were distributed as part of a Suspicious Order (and if so what made the order suspicious); the nature of treatment or assistance provided; the cost of treatment or assistance provided; and the source of funding for treatment or assistance provided.

**Response to Interrogatory No. 20**

Plaintiff objects to this Interrogatory to the extent it seeks the "identity of each person" and the "drugs or drugs involved" as overly broad, irrelevant, and unduly burdensome. Plaintiff further objects to this interrogatory to the extent it seeks production of information that is protected from disclosure pursuant to Title 42, Part 2 of the Code of Federal Regulations.

The factual basis for Plaintiff's claims are specific:  the conduct of the Manufacturing Defendants in engaging in a massive false advertising campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor and restrict the improper distribution of opioids, are substantial causes of a public health emergency

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

in Plaintiff's jurisdiction. This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by their residents; instead, the lawsuit seeks to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.

This case concerns whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that currently exists within Plaintiff's jurisdiction. It is not whether each opioid pill, prescription, overdose, or patient is a separate public nuisance or separate "epidemic;" it is not whether particular individuals in specific circumstances with individualized medical conditions abused or misused or were improperly prescribed opioids. Instead, Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdiction. Plaintiff will prove causation through aggregate proof demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis. This will establish that the Defendants' actions were a substantial factor in the epidemic experienced by, and paid for by, Plaintiff. Whether a specific resident with a history of substance abuse received an opioid prescription, for example, is irrelevant because a definable percentage of residents who received opioids were bound to have a history of substance abuse. Discovery about individuals and individual health case and addiction issues is irrelevant to establishing that an opioid epidemic exists and is impermissible. *See* Fed. R. Evid. 402.

Furthermore, this Interrogatory is so broad as to render trial of this matter all but impossible within any reasonable time within any reasonable time while Defendants examine each and every person and record and then depose individual patients, residents, doctors, treatment facilities about each individual's case.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiver of all objections, Plaintiff refers Defendants to its response to Interrogatory No 18.

**Interrogatory No. 21:**

Identify all children, including infants born addicted to opioids, for whom You incurred costs for which you seek damages. For each such Person, please provide the following: the name of such Person; the name of such Person's parent(s); the Controlled Substances possessed or ingested by such Peron's parent(s); which entity manufactured and sold the Controlled Substance(s) used by such Person the source of the Controlled Substance possessed or ingested by such Person's parents(s); the date, nature, and cost of any services incurred as a result of such Person; which Distributor Defendant, if any, distributed the Controlled Substance possessed or ingested by such Person's parent(s); and whether the Controlled Substances were distributed as part of a Suspicious Order (and if so what made the order suspicious).

**Response to Interrogatory No. 21**

Plaintiff objects to this Interrogatory to the extent it seeks to "identify all children" without limitation, "including infants born addicted to opioids" by the infant or child's name, parent name, "controlled substance," who distributed it, when, where, and how.  Plaintiff further objects in that this Interrogatory seeks information in the possession of the Defendants.

The factual basis for Plaintiff's claims are specific:  the conduct of the Manufacturing Defendants in engaging in a massive false advertising campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor and restrict the improper distribution of opioids, are substantial causes of a public health emergency in Plaintiff's jurisdiction.  This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by their residents; instead, the lawsuit seeks to abate a public

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.

This case concerns whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that currently exists within Plaintiff's jurisdiction. It is not whether each opioid pill, prescription, overdose, or patient is a separate public nuisance or separate "epidemic;" it is not whether particular individuals in specific circumstances with individualized medical conditions abused or misused or were improperly prescribed opioids. Instead, Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdiction. Plaintiff will prove causation through aggregate proof demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis. This will establish that the Defendants' actions were a substantial factor in the epidemic experienced by, and paid for by, Plaintiff. Whether a specific resident with a history of substance abuse received an opioid prescription, for example, is irrelevant because a definable percentage of residents who received opioids were bound to have a history of substance abuse. Discovery about individuals and individual health case and addiction issues is irrelevant to establishing that an opioid epidemic exists and is impermissible. *See* Fed. R. Evid. 402.

Plaintiff states that it does not have information concerning the identity of every person who received an opioid prescription or became addicted to opioids in Cuyahoga County – whether or not they ever received treatment – or access to the confidential, private health care records of residents who were prescribed opioids or treated for opioid addiction. In addition, Plaintiff objects to this Interrogatory to the extent it seeks Confidential Information. The information sought is overly

broad and vague in that it requests all medical records and all medical information related to every single person who was ever prescribed an opioid that ever made its way into the jurisdiction.

Furthermore, this Interrogatory is so broad as to render resolution of this matter all but impossible to resolve within any reasonable amount of time while Defendants examine every record and then depose residents, doctors, treatment facilities, and the like about each individual case.  Even if the Interrogatory was proper and reasonably circumscribed, the information that Plaintiff may have that would be arguably related to the Interrogatory (though irrelevant to the case) relates to Plaintiff's employees who received opioid treatment through Plaintiff's sponsored health insurance or worker's compensation programs.

Plaintiff further responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).  In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

Subject to and without waiver of all objections, Plaintiff refers Defendants to its response to Interrogatory No 18.

**Interrogatory No. 22:**

Identify all efforts You have made to recover expenditures related to Prescription Opioid abuse, misuse, or addiction in Your geographic boundaries from any entities or individuals who have been charged with criminal offenses relating to or caused by such abuse, misuse, or addiction, including, without limitation, pharmacists, pharmacies, doctors, clinics, drug dealers, drug traffickers, or drug trafficking organizations.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Interrogatory No. 22**

Plaintiff objects to this Request as vague, ambiguous, and burdensome to Plaintiff in a manner not proportional to the needs of the case.  Plaintiff further objects to the following language as overly broad: "any other individual or entity, including (without limitation), any entities or individuals who have been charged with criminal offenses."

Plaintiff further objects to this Interrogatory to the extent that what Plaintiff may or may not have done to recover other expenditures is not relevant to the claims and defenses in this action. Subject to and without waiving, Plaintiff states that it has sought grants, State and Federal funding, and tax increases. Plaintiff has not sued criminals or drug dealers, and drug-related, if any, civil forfeiture, is not an attempt to "recover expenditures" covered by the opioid epidemic.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Dated:  August 13, 2018

Respectfully submitted,
Plevin & Gallucci

*/s Frank Gallucci*
Frank Gallucci (0072680)
55 Public Square, Suite 2222
Cleveland, Ohio 44113
fgallucci@pglawyer.com
Phone: (216) 861-0804
Napoli Shkolnik PLLC

*/s Hunter J. Shkolnik*
Hunter J. Shkolnik (admitted *pro hac vice*)
Salvatore C. Badala (admitted *pro hac vice*)
Joseph L. Ciaccio (admitted *pro hac vice*)
360 Lexington Avenue
New York, New York 10017
hunter@napolilaw.com
sbadala@napolilaw.com
jciaccio@napolilaw.com
Phone: (212) 397-1000

Scott Elliot Smith L.P.A.

*/s Scott Elliot Smith*
Scott Elliot Smith (0003749)
5003 Horizons Dr., Suite 200
Columbus, Ohio 43220
Phone: (614) 846-1700
ses@sestriallaw.com
Thrasher Dinsmore & Dolan L.P.A.

*/s Leo M. Spellacy, Jr.*
Leo M. Spellacy, Jr. (0067304)
1111 Superior Avenue
Suite 412
Cleveland, Ohio 44114
Phone: (216) 255-5450

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## <u>CERTIFICATE OF SERVICE</u>

I, Salvatore C. Badala, certify that on this 13th day of August 2018, I caused the foregoing to be served via electronic mail on Defendant's Liaison Counsel pursuant to the Case Management Order. *See* Dkt. No. 232.

<em><u>s/ Salvatore C. Badala</u></em>

# Exhibit F

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| This document relates to: | Judge Dan Aaron Polster |
| Case No. 17-OP-45004 (N.D. Ohio) | |
| THE COUNTY OF CUYAHOGA, OHIO, and STATE OF OHIO EX REL., PROSECUTING ATTORNEY OF CUYAHOGA COUNTY, MICHAEL C. O'MALLEY, | PLAINTIFFS THE COUNTY OF CUYAHOGA, OHIO AND THE STATE OF OHIO *EX REL.* PROSECUTING ATTORNEY OF CUYAHOGA COUNTY, MICHAEL C. O'MALLEY'S  RESPONSES AND OBJECTIONS TO DISTRIBUTOR DEFENDANTS' FOURTH SET OF INTERROGATORIES |
| Plaintiffs, | |
| vs. | |
| PURDUE PHARMA L.P., PURDUE PHARMA INC., THE PURDUE FREDERICK COMPANY, INC., ENDO HEALTH SOLUTIONS INC., ENDO PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC., NORAMCO, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON, TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., CEPHALON, INC., ALLERGAN PLC f/k/a ACTAVIS PLC, ALLERGAN FINANCE LLC, f/k/a ACTAVIS, INC., f/k/a WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ACTAVIS LLC, ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC., INSYS THERAPEUTICS, INC., MALLINCKRODT PLC, MALLINCKRODT LLC, CARDINAL HEALTH, INC., McKESSON | |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| CORPORATION, AMERISOURCEBERGEN CORPORATION, HEALTH MART SYSTEMS, INC., H. D. SMITH, LLC d/b/a HD SMITH, f/k/a H.D. SMITH WHOLESALE DRUG CO., H. D. SMITH HOLDINGS, LLC, H. D. SMITH HOLDING COMPANY, CVS HEALTH CORPORATION, WALGREENS BOOTS ALLIANCE, INC. a/k/a WALGREEN CO., and WAL-MART INC. f/k/a WAL-MART STORES, INC., |
| --- |
| Defendants. |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Case Management Order in *In re National Prescription Opiate Litigation*, No. 1:17-cv-2804 (Dkt. No. 232), The County of Cuyahoga, Ohio and the State of Ohio *Ex Rel.* Prosecuting Attorney of Cuyahoga County, Michael C. O'Malley, ("Plaintiff") hereby responds to Distributor Defendants'[1] Fourth Set of Interrogatories (the "Interrogatories" and, each individually, a "Interrogatory"), as follows:

## OBJECTIONS

The following objections apply to each Interrogatory. To the extent that certain specific objections are cited in response to an individual Interrogatory, those specific objections are provided because they are applicable to that specific Interrogatory and are not a waiver of the objections applicable to information falling within the scope of such Interrogatory.

1.     Plaintiff objects to each Interrogatory to the extent they are overly broad, vague, unduly burdensome, seeks information that is not relevant to any party's claim or defense, or seeks to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the

---

[1] The Distributor Defendants are AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

ESI Protocol entered in this matter or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      Plaintiff objects to each Interrogatory to the extent they seek information restricted from dissemination pursuant to court order, statute, or regulation. Further, Plaintiff's responses to the Interrogatories are not intended to waive, and does not constitute any waiver of, any objection to the admissibility, authenticity, competency or relevance of the information identified.

3.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained provided herein. All such objections and the grounds therefore are hereby reserved.

4.      The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

5.      Plaintiff objects to each Request to the extent Plaintiff has not yet completed its investigation of the facts relating to this action and has not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

6.      Plaintiff objects to each Interrogatory to the extent they purport to require Plaintiff to provide information that is in the public domain or otherwise available to Manufacturers as easily from other sources as from Plaintiff.

7.      Plaintiff objects to each Interrogatory to the extent they purport to state facts, assumptions, or characterizations that are disputed.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

8.     Plaintiff objects to each Interrogatory to the extent they seek information more appropriately obtained through other methods of discovery.

9.     Plaintiff objects to each Interrogatory to the extent that they seek information that is proprietary or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

10.     Plaintiff objects to each Interrogatory to the extent they seek confidential investigative, personal, or health information in Plaintiff's possession, custody, or control (collectively, "Confidential Information").

11.     Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its objections and without waiver of any objection.

12.     Any response stating that Plaintiff will produce information shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control."

13.     Plaintiff objects to each Interrogatory to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions.  In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

14.     Plaintiff objects to each Interrogatory to the extent they seek information that is not within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

15.    Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

16.    Plaintiff intends to complete its production by the time agreed upon by the parties for the completion of discovery, or by the date ordered by the Court. Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Interrogatories. All final decisions regarding whether any information will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of written discovery.

## NON-WAIVER

1.    Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this Action or any other action.

2.    If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of objections stated herein, such information is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.    Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.    Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses.  Plaintiff reserves its right to amend and/or supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 23:**

Identify each Suspicious Order that you believe was shipped to Your geographic area by a Distributor Defendant during the time period for which you seek damages in this lawsuit. For each order, identify the date the order was shipped, the medication shipped, the number of dosage units shipped, the number of dosage units that you contend would have been permissible to ship, the reason you believe the order was suspicious, the Distributor Defendant that shipped the allegedly Suspicious Order, and the person or entity that placed the order.

**Response to Interrogatory No. 23:**

Plaintiff further objects to this Interrogatory as unduly burdensome and not proportional to the needs of this case because it would be virtually, if not literally, impossible for Plaintiff to identify "each Suspicious Order shipped to Your Geographic area" or "the date shipped, the medication shipped, or the number of dosage units shipped" that Plaintiff "contend[s] would have been permissible to ship" and "the reason" the order was suspicious, the "Distributor Defendant that shipped allegedly Suspicious Order" as well as "the person or entity that placed the order."

Plaintiff further objects to this request in that it calls for information in the possession or control of the Defendants, and more readily and efficiently available to Defendants from their own business records or third-party sources than available to Plaintiff, and thus places an undue burden on Plaintiff. Plaintiff further respond that this Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2)

Subject to and without waiving all objections, Plaintiff responds as follows:  the Controlled Substances Act ("CSA") requires manufacturers and distributors of Schedule II substances like opioids to:  (a) limit sales within a quota set by the DEA for the overall production of Schedule II

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

substances like opioids; (b) register to manufacture or distribute opioids; (c) maintain effective controls against diversion of the controlled substances that they manufacture or distribute; and (d) design and operate a system to identify suspicious orders of controlled substances, halt such unlawful sales, and report them to the DEA.

Defendants have several responsibilities under state and federal law with respect to control of the supply chain of opioids. The DEA provides a series of guidelines on Suspicious Orders Reporting ("SOR"), contained in the Chemical Handlers Manual, that "are intended to assist chemical manufacturers, distributors, wholesalers and retailers to be alert to suspicious orders involving listed chemicals," which include opioids. "The guidelines are intended to apply to all aspects of commercial chemical manufacturing and distribution." Defendants must set up a system to prevent diversion, including excessive volume and other suspicious orders. This includes reviewing Defendants' own data, relying on their observations of prescribers and pharmacies, and following up on reports or concerns of potential diversion. All suspicious orders must be reported by Defendants to relevant enforcement authorities. Further, distributors must also stop shipment of any order which is flagged as suspicious and only ship orders which were flagged as potentially suspicious if, after conducting due diligence, they can determine that the order is not likely to be diverted into illegal channels.

To ensure that even drugs produced within quota are not diverted, federal regulations issued under the CSA mandate that all registrants, manufacturers, and distributors alike, "design and operate a system to disclose to the registrant suspicious orders of controlled substances." 21 C.F.R. § 1301.74(b). Registrants are not entitled to be passive (but profitable) observers, but rather "shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant." *Id.* Suspicious orders include orders of unusual size, orders deviating

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

substantially from a normal pattern, and orders of unusual frequency.  *Id.*  Other red flags may include, for example, "[o]rdering the same controlled substance from multiple distributors."  *Id.*

These criteria are disjunctive and are not all inclusive.  For example, if an order deviates substantially from a normal pattern, the size of the order does not matter and the order should be reported as suspicious.  Likewise, a distributor or manufacturer need not wait for a normal pattern to develop over time before determining whether a particular order is suspicious.  The size of an order alone, regardless of whether it deviates from a normal pattern, is enough to trigger the responsibility to report the order as suspicious.  The determination of whether an order is suspicious depends not only on the ordering patterns of the particular customer but also on the patterns of the entirety of the customer base and the patterns throughout the relevant segment of the industry.  For this reason, identification of suspicious orders serves also to identify excessive volume of the controlled substance being shipped to a particular region.

Subject to and without waiving all objections, Plaintiff states that its current knowledge of this subject is reflected in Plaintiff's Corrected Second Amended Complaint, and any additional information will be amended and supplemented as discovery proceeds.

As discovery is ongoing, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling order in this case and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

**Interrogatory No. 24:**

Identify all false and/or fraudulent information that You allege any Distributor Defendant supplied to the Drug Enforcement Administration about Suspicious Orders as alleged in Paragraph 889 of the Second Amended Complaint.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Response to Interrogatory No. 24:**

Plaintiff objects to this Interrogatory to the extent the term "all false and/or fraudulent information" is vague and ambiguous and subject to varying interpretations. Plaintiff objects in that this Interrogatory seeks information in the possession of Defendants and/or third-parties.

To the extent Plaintiff were able to identify all responsive information, Plaintiff objects that it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to be asked to identify all false and/or fraudulent information that the Distributor Defendants supplied to the Drug Enforcement Administration ("DEA") about Suspicious Orders. Plaintiff is not privy to the Defendants' communications with the DEA.

Plaintiff further respond that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waiving all objections, Plaintiff states that its current knowledge of this subject is reflected in Plaintiff's Corrected Second Amended Complaint, and any additional information will be amended and supplemented as discovery proceeds.

As discovery is ongoing, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling order in this case and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

**Interrogatory No. 25:**

Identify with specificity each of the predicate acts of racketeering activity You allege each of AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation committed, conspired to commit, and/or aided and abetted the commission of for the time period you seek damages in this lawsuit. For each predicate act, provide the date, the conduct that

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

constituted the predicate act, the Defendant(s) involved, the reason that conduct constituted a predicate act of racketeering, and any other individuals/entities involved.

**Response to Interrogatory No. 25:**

Plaintiff objects to this Interrogatory to the extent the term "predicate acts of racketeering activity" is vague and ambiguous and subject to varying interpretations. Plaintiff also objects in that this Interrogatory seeks information already in the possession of Defendants and/or third-parties. To the extent Plaintiff were able to identify all responsive information, Plaintiff objects that it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to identify each predicate act of racketeering that AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation committed, conspired to commit, and/or aided and abetted. This Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waiving all objections, Plaintiff states that its current knowledge of this subject is found in Plaintiff's Second Amended Complaint at ¶¶ 844 – 907 and 936 – 967.

As discovery is ongoing, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling order in this case and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

**Interrogatory No. 26:**

Identify all facts and evidence that support Your contention that the Distributor Defendants agreed to implement similar tactics in their refusal to report Suspicious Orders as alleged in Paragraph 951 of the Second Amended Complaint.

**Response to Interrogatory No. 26:**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Plaintiff objects to this Interrogatory to the extent the term "agreed to implement similar tactics in their refusal to report Suspicious Orders" is vague and ambiguous and subject to varying interpretations.  Plaintiff also objects in that this Interrogatory seeks information in the possession of Defendants and/or third-parties.  To the extent Plaintiff were able to identify all responsive information, Plaintiff objects that it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to identify all of the facts and evidence that show that the Distributor Defendants implemented similar tactics in their refusal to report Suspicious Orders. This Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waiving all objections, Plaintiff states that it believes, suspects, or contends that chronic diversion the number of Suspicious Orders increased dramatically over time, but were never reported accurately and no serious attempt to control them was made by the Distributor Defendants. Additionally, Plaintiff states that its current knowledge of this subject is found in Plaintiff's Second Amended Complaint at ¶¶ 466 – 568; 844 – 907; and 936 – 967.

As discovery is ongoing, this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling order in this case and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

**Interrogatory No. 27:**

Identify and describe each statement or omission relating to Prescription Opioids that were made or disseminated by any of the Manufacturer Defendants and that You allege the Distributor Defendants knew were false, misleading, unfair, deceptive or otherwise actionable and, for each, identify each specific Distributor Defendant who had such knowledge, explain the basis for your

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

contention that it had such knowledge, state the specific act(s) or mission(s) that each Distributor

Defendant took with such knowledge, and describe how such act(s) or omission(s) caused a

quantifiable harm to You.

**Response to Interrogatory No. 27:**

Plaintiff objects to this Interrogatory as vague, ambiguous and overly broad in its use of the

phrases "each statement or omission" that were "false, misleading, unfair, deceptive or otherwise

actionable" and "the specific acts or omissions that each Distributors "took with such knowledge"

as phrases that are subject to varying meanings and interpretations.

Plaintiff further objects to this Interrogatory as unduly burdensome and not proportional to the

needs of this case because it would be virtually, if not literally, impossible for Plaintiff to identify

each and every "statement or omission" by Defendants that were "false, misleading, unfair,

deceptive or otherwise actionable" and "the specific acts or omissions" each Distributor "took with

such knowledge."

Plaintiff objects to the terms "statement or omission" as vague and ambiguous.  Plaintiff objects

to the terms "knowledge" and "quantifiable harm" as vague, ambiguous and subject to varying

interpretations.  Plaintiff objects to this Interrogatory to the extent it calls for information in the

Manufacturer Defendants' and/or Distributors' possession, custody, or control.  This Interrogatory

calls for a premature contention interrogatory, more appropriately answered once discovery is

complete.  *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waiving all objections, Plaintiff states that its current knowledge of this

subject is reflected in Plaintiff's Corrected Second Amended Complaint, and any additional

information will be supplemented as Defendants produce documents and discovery proceeds

pursuant to scheduling orders in this case and the Federal Rules of Civil Procedure.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Plaintiff further directs Distributor Defendants to the following statements or omissions relating to Prescription Opioids that were made or disseminated by any of the Manufacturer Defendants that were false, misleading, unfair, deceptive or otherwise actionable:

| Falsehood | Explanation |
|---|---|
| The risk of addiction from chronic opioid therapy is low | When it launched OxyContin, Purdue cited in promotional and educational materials a single paragraph from a letter published in 1980 by Dr. Hershel Jick and Jane Porter in the New England Journal of Medicine as evidence of the low risk of addiction to opioids.  In fact, Purdue included reference to this letter in a 1998 promotional video entitled, "I got my life back," in which Dr. Alan Spanos states, "In fact, the rate of addiction amongst pain patients who are treated by doctors is much less than 1%." |
| | Until April 2012, Endo stated on its website that "…patients treated with prolonged opioid medicines usually do not become addicted;" a statement echoed on the website of its close affiliate, APF.  Endo also published and distributed multiple pamphlets and brochures downplaying addiction as it related to opioids, including but not limited to "Pain: Opioid Facts," "Understanding Your Pain: Taking Oral Opioid Analgesics" and "Pain: Opioid Therapy." |
| | Janssen claimed on its unbranded website – www.PrescribeResponsibility.com – that concerns about opioid addiction are "overestimated" and that "true addiction occurs only in a small percentage of patients."  Janssen also published a patient education guide entitled "Finding Relief: Pain Management for Older Adults" describing opioid addiction as a myth and that "many studies show opioids are *rarely* addictive…" which, until recently, was available online. |
| | Cephalon sponsored a 2007 publication from APF entitled "Treatment Options: A Guide for People Living with Pain" which taught that opioid addiction is rare. |
| | Actavis published material that claimed it is "less likely" to become addicted to opioids in those who "have never had an addiction problem."  The same publication notes that a need for a "dose adjustment" is the result of tolerance, and "not addiction."  A 2007 guide for prescribers published under Actavis's copyright states that Kadian is more difficult to abuse and less addictive than other opioids. |
| | Mallinckrodt created the C.A.R.E.S. (Collaborating and Acting Responsibly to Ensure Safety) Alliance in 2010 which promoted a book entitled "Defeat Chronic Pain Now!" in |

13

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Falsehood | Explanation |
|---|---|
|  | which opioids were stated to "rarely" cause addiction. |
| To the extent there is a risk of addiction, it can be easily identified and managed | Purdue and Cephalon sponsored the APF's publication, "Treatment Options: A Guide for People Living with Pain" in 2007, which falsely reassured patients that opioid agreements between doctors and patients can "ensure that you take the opioid as prescribed."  Janssen stated on its website – www.PrescribeResponsibly.com – that opioid addiction "can usually be managed" through tools such as opioid agreements between patients and doctors.  Purdue also sponsored a 2011 webinar taught by Dr. Lynn Webster entitled "Managing Patient's Opioid Use: Balancing the Need and Risk" wherein prescribers were told that screening tools, urine tests, and patient agreements have the effect of preventing "overuse of prescriptions" and "overdose deaths."  Endo paid for a 2007 supplement for continuing education credit in the "Journal of Family Practice" entitled "Pain Management Dilemmas in Primary Care: Use of Opioids" which recommended screening patients and the use of the Opioid Risk Tool. |
| Signs of addictive behavior are "psuedoaddiction," requiring more opioids | Cephalon, Endo and Purdue sponsored the Federation of State Medical Board's ("FSMB") publication entitled "Responsible Opioid Prescribing" in 2007 which stated that such behaviors as "requesting drugs by name," "demanding or manipulative behavior," seeing more than one doctor to obtain opioids and hoarding are all signs of "pseudoaddiction" (not genuine addiction).  Purdue published an unbranded pamphlet entitled "Clinical Issues in Opioid Prescribing" in 2005 which was circulated through 2007 and available on its website through 2013.   This pamphlet stated that "illicit drug use and deception" were not evidence of true addiction, but rather "pseudoaddiction."  Endo sponsored a CME program in 2009 entitled "Chronic Opioid Therapy: Understanding Risk While Maximizing Analgesia," which promoted pseudoaddiction.  Janssen sponsored, funded and edited a website entitled "Let's Talk Pain" which in 2009 stated that pseudoaddiction "…refers to patient behaviors that may occur when pain is undertreated…" |
| Opioid withdrawal can be avoided by tapering | Endo sponsored an educational program entitled "Persistent Pain in the Older Adult" which claimed that withdrawal symptoms could be avoided by simply tapering a patient's opioid dose over ten days.  Similarly, Purdue sponsored APF's publication "A Policymaker's Guide to Understanding Pain & Its Management" which taught that "[s]ymptoms of physical dependence can often be ameliorated by gradually decreasing the dose of medication during discontinuation."   Neither |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Falsehood | Explanation |
|---|---|
| | Defendant explained the significant hardships associated with cessation of use. |
| Opioid doses can be increased without limit or greater risks | Purdue omitted the increased risk of respiratory distress and death from increasing opioid dosage from its 2010 "Risk Evaluation and Mitigation Strategy" for OxyContin.  Endo published on its website a patient education pamphlet entitled "Understanding Your Pain: Taking Oral Opioid Analgesics" that responds to the question, "If I take the opioid now, will it work later when I really need it?" with "The dose can be increased…You won't 'run out' of pain relief."  Purdue and Cephalon also sponsored APF's 2007 "Treatment Options: A Guide for People Living with Pain" which taught patients that opioids have "no ceiling dose" and are therefore safer than NSAIDs. |
| Long-term opioid use improves functioning | Janssen promoted Duragesic through an ad campaign as improving a patient's functioning and work productivity.  Janssen's "Let's Talk Pain" website featured a video interview claiming that opioids were what allowed a patient to "continue to function."   Similarly, Purdue ran a full-page ad for OxyContin in the Journal of the American Medical Association stating, "There Can Be Life With Relief" and implying that OxyContin would help users' function; however the FDA noted that Purdue failed to warn that patients could die from taking OxyContin.  Purdue also ran advertisements in medical journals in 2012 touting that OxyContin would help a "writer with osteoarthritis of the hands" work more effectively.  Since May 2011, Endo has distributed and made available on its website – www.Opana.com – a pamphlet implying that patients with physically demanding jobs would achieve long-term pain relief and functional improvement.   Mallinckrodt's website claims that "[t]he effective pain management offered by our [opioids] helps enable patients to stay in the workplace, enjoy interactions with family and friends, and remain an active member of society." |
| Alternative forms of pain relief pose greater risks than opioids | Purdue and Cephalon sponsored APF's publication entitled "Treatment Options: A Guide for People Living with Pain" warning of increased risks if NSAIDs are "taken for more than a period of months;" falsely attributing 10,000 to 20,000 deaths annually to NSAID overdoses when the figure is closer to 3,200.   In 2009, Janssen sponsored a publication entitled, "Finding Relief: Pain Mangement for Older Adults" which listed dose limitations as "disadvantages" of other pain medicines.  It also listed a number of serious health effects as disadvantages of NSAIDs while only listing "upset stomach or |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Falsehood | Explanation |
|---|---|
| | sleepiness" and constipation as disadvantages of opioids. Purdue and Endo sponsored a CME issued by the AMA in 2003, 2007, 2010 and 2013 entitled "Overview of Management Options" which taught that NSAIDs and other drugs, but not opioids, are unsafe at high doses. |
| OxyContin provides twelve hours of pain relief | In 2000, Purdue advertised that OxyContin provides "Consistent Plasma Levels Over 12 Hours;" however the oxycodone does not enter the body at a linear rate, releasing a greater proportion upon administration and gradually tapering over 12 hours. These 12-hour dosing advertisements ran in the *Journal of Pain* in February 2005 and the *Clinical Journal of Pain* in 2006. |
| New formulations of certain opioids successfully deter abuse | Purdue presented an article in 2013 based on a review of data from poison control centers concluding that its ADF OxyContin can reduce abuse, but failed to acknowledge that abuse merely shifted to other drugs and that there were actually more harmful exposures to opioids after the reformulation. In 2016, Dr. J. David Haddox, VP of Health Policy for Purdue, falsely claimed that the evidence does not show Purdue's ADF opioids are being abused in large numbers. Endo's promotion of its Opana ER also tended to omit material facts according to a May 2012 letter from the FDA to Endo. Endo submitted a citizen petition asking the FDA for permission to label Opana ER as abuse-resistant, and also went so far as to sue the FDA to force expedited consideration of this change. Endo falsely promoted Opana ER as having been designed to be crush-resistent, knowing that this would (falsely) imply that it was actually crush-resistant and less likely to be abused (as stated in a June 14. 2012 press release). Endo initiated journal advertisements that appears in April 2013 stating Opana ER was "designed to be crush resistant." Likewise, Actavis copyrighted a guide for prescribers representing that Kadian is more difficult to abuse and less addictive than other opioids. Mallinckrodt promoted both Exalgo and Xartemis XR as specifically formulated to reduce abuse, going so far as to state, "XARTEMIS XR has technology that requires abusers to exert additional effort to extract the active ingredient from the large quantity of inactive and deterrent ingredients." |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Additionally, as Plaintiff's investigation is ongoing, Plaintiff expects this topic will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with scheduling orders in this case and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

**Interrogatory No. 28:**

Describe how, if at all, You used the information contained in the Ohio Automated Rx Reporting System (OARRS) to address prescription drug diversion and abuse.

**Response to Interrogatory No. 28:**

Plaintiff objects to this Interrogatory as vague, overly broad, and unduly burdensome to the extent it requests information on how Plaintiff "used the information contained in the Ohio Automated Rx Reporting System (OARRS), to address prescription drug diversion and abuse." Plaintiff objects to this Interrogatory to the extent that it calls for disclosure of Privileged or Confidential Information, information protected by HIPAA, or information more readily accessible to expert than fact witnesses.

Subject to and without waiving all objections, Plaintiff directs Defendants to the 1,263 documents produced by Plaintiff, as of the date of this response, which identify the term Ohio Automated Rx Reporting System ("OARRS"). (*See* attached Exhibit 1, identifying the 1, 263 documents by Bates number.)

Plaintiff specifically reserves the right to supplement, modify, and amend this response upon further discovery.  In addition, discovery is ongoing and this subject will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Interrogatory No. 29:**

For each Suspicious Order that You contend was shipped into Your geographic area by a Distributor Defendant, identify how, if at all, the Prescription Opioids were used following the shipment, including what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed, and if the Prescription Opioids were diverted, abused, or otherwise used improperly, who was involved in such diversion, abuse, or other improper use.

**Response to Interrogatory No. 29:**

Plaintiff objects to this Interrogatory as vague and ambiguous in its use of the phrases "identify how, if at all, the Prescription Opioids were used following the shipment" and "what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner" as phrases that are subject to many interpretations.

Plaintiff also objects to the terms "diverted," "abused" and "used for legitimate medical purposes" as overly broad and unduly burdensome. Plaintiff objects to "used in some manner" and "otherwise used improperly" as vague and ambiguous. Plaintiff further objects to the Interrogatory as unduly burdensome and not proportional to the needs of this case because it would be virtually, if not literally, impossible for Plaintiff to "identify how, if at all, the Prescription Opioids were used following the shipment" and to determine "what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed." Plaintiff objects to this interrogatory as overly burdensome and not proportional to the needs of the case in asking Plaintiff to identify for the Distributors —who are in a far better position to provide this information — exactly where they distributed opioids or "who was involved in such diversion, abuse, or other improper use."

18

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

The factual basis for Plaintiff's claims are specific and detailed: the conduct of the Manufacturing Defendants in engaging in a massive and misleading marketing campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor, regulate or restrict the improper distribution of opioids, are substantial causes of a public health crisis in Plaintiff's jurisdictions.  This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by its residents; instead, the lawsuit seeks, *inter alia*, to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.

This case concerns whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that exists within Plaintiff's jurisdictions.  Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdictions.  Plaintiff will prove its case through aggregate proof demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis.  The Defendants' actions were a substantial factor in the opioid epidemic.

Subject to and without waiving all objections, Plaintiff answers that it does not have complete information concerning how Prescription Opioids were used following shipment, including what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed, and if the Prescription Opioids were diverted, abused, or otherwise used improperly, who was involved in such diversion, abuse, or other improper use.  Even if the Interrogatory was proper and reasonably circumscribed, much of the information that would

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

be arguably related to this Interrogatory relates to Defendants' conduct and Defendants' documents on Suspicious Order Reports have yet to be produced.

Subject to and without waiving all objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* Fed. R. Civ. P. 33(a)(2).

Plaintiff states that Plaintiff's current knowledge of this subject is reflected in Plaintiff's Corrected Second Amended Complaint.  In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with scheduling orders in this case and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Dated:  August 31, 2018

Respectfully submitted,
Plevin & Gallucci

*/s Frank Gallucci*
Frank Gallucci (0072680)
55 Public Square, Suite 2222
Cleveland, Ohio 44113
fgallucci@pglawyer.com
Phone: (216) 861-0804
Napoli Shkolnik PLLC

*/s Hunter J. Shkolnik*
Hunter J. Shkolnik (admitted *pro hac vice*)
Salvatore C. Badala (admitted *pro hac vice*)
Joseph L. Ciaccio (admitted *pro hac vice*)
360 Lexington Avenue
New York, New York 10017
hunter@napolilaw.com
sbadala@napolilaw.com
jciaccio@napolilaw.com
Phone: (212) 397-1000

Scott Elliot Smith L.P.A.

*/s Scott Elliot Smith*
Scott Elliot Smith (0003749)
5003 Horizons Dr., Suite 200
Columbus, Ohio 43220
Phone: (614) 846-1700
ses@sestriallaw.com
Thrasher Dinsmore & Dolan L.P.A.

*/s Leo M. Spellacy, Jr.*
Leo M. Spellacy, Jr. (0067304)
1111 Superior Avenue
Suite 412
Cleveland, Ohio 44114
Phone: (216) 255-5450

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

<u>**CERTIFICATE OF SERVICE**</u>

I, Salvatore C. Badala, certify that on this 31st day of August 2018, I caused the foregoing to be served via electronic mail on Defendant's Liaison Counsel pursuant to the Case Management Order. *See* Dkt. No. 232.

<u>*s/ Salvatore C. Badala*</u>

## **VERIFICATION**

I, Joseph W. Boatwright, IV, declare:

I am Chief Corporate Counsel for the County of Cuyahoga, Ohio. I am authorized to make this verification on behalf of the Plaintiffs the County of Cuyahoga, Ohio and the State of Ohio *Ex Rel.* Prosecuting Attorney of Cuyahoga County, Michael C. O'Malley (together, "Plaintiff").

The foregoing Plaintiff's Responses and Objections to Distributor Defendants' Fourth Set of Interrogatories represents a municipal corporate response, based on information, in part, assembled by Plaintiff's employees and/or representatives. Because the matters stated in the document identified above constitute a corporate response, they are not all necessarily within my personal knowledge, or within the personal knowledge of any single individual. Subject to these limitations, the information contained in the foregoing response is, to the best of Plaintiff's knowledge, true and correct. Plaintiff reserves the right to make any changes should it appear that any omissions or errors have been made.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Cuyahoga, Ohio on this ___31___st day of August, 2018.

_____
Joseph W. Boatwright, IV

Exhibit 1

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_000010289 | CUYAH_000010298 |
| CUYAH_000011630 | CUYAH_000011632 |
| CUYAH_000012072 | CUYAH_000012075 |
| CUYAH_000013000 | CUYAH_000013089 |
| CUYAH_000018265 | CUYAH_000018277 |
| CUYAH_000018361 | CUYAH_000018488 |
| CUYAH_000097414 | CUYAH_000097414 |
| CUYAH_000098281 | CUYAH_000098321 |
| CUYAH_000117300 | CUYAH_000117301 |
| CUYAH_000119796 | CUYAH_000119797 |
| CUYAH_000124701 | CUYAH_000124711 |
| CUYAH_000134417 | CUYAH_000134417 |
| CUYAH_000404649 | CUYAH_000404649 |
| CUYAH_001363900 | CUYAH_001363907 |
| CUYAH_001367546 | CUYAH_001367553 |
| CUYAH_001367557 | CUYAH_001367564 |
| CUYAH_001368367 | CUYAH_001368375 |
| CUYAH_001368849 | CUYAH_001368859 |
| CUYAH_001370401 | CUYAH_001370410 |
| CUYAH_001373303 | CUYAH_001373305 |
| CUYAH_001374669 | CUYAH_001374669 |
| CUYAH_001374674 | CUYAH_001374681 |
| CUYAH_001374690 | CUYAH_001374696 |
| CUYAH_001386976 | CUYAH_001386977 |
| CUYAH_001387038 | CUYAH_001387045 |
| CUYAH_001392449 | CUYAH_001392488 |
| CUYAH_001394028 | CUYAH_001394029 |
| CUYAH_001394410 | CUYAH_001394442 |
| CUYAH_001396710 | CUYAH_001396710 |
| CUYAH_001422604 | CUYAH_001425987 |
| CUYAH_001431795 | CUYAH_001431796 |
| CUYAH_001431797 | CUYAH_001431801 |
| CUYAH_001431839 | CUYAH_001431842 |
| CUYAH_001431843 | CUYAH_001431844 |
| CUYAH_001431876 | CUYAH_001431876 |
| CUYAH_001431877 | CUYAH_001431879 |
| CUYAH_001431887 | CUYAH_001431889 |
| CUYAH_001431896 | CUYAH_001431896 |
| CUYAH_001431899 | CUYAH_001431899 |
| CUYAH_001431904 | CUYAH_001431906 |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001432159 | CUYAH_001432159 |
| CUYAH_001432160 | CUYAH_001432162 |
| CUYAH_001432234 | CUYAH_001432236 |
| CUYAH_001432237 | CUYAH_001432237 |
| CUYAH_001432240 | CUYAH_001432242 |
| CUYAH_001432366 | CUYAH_001432366 |
| CUYAH_001432367 | CUYAH_001432368 |
| CUYAH_001432451 | CUYAH_001432454 |
| CUYAH_001432457 | CUYAH_001432457 |
| CUYAH_001432458 | CUYAH_001432460 |
| CUYAH_001432474 | CUYAH_001432481 |
| CUYAH_001432483 | CUYAH_001432483 |
| CUYAH_001432484 | CUYAH_001432486 |
| CUYAH_001433096 | CUYAH_001433096 |
| CUYAH_001433690 | CUYAH_001433694 |
| CUYAH_001433702 | CUYAH_001433706 |
| CUYAH_001433707 | CUYAH_001433722 |
| CUYAH_001433746 | CUYAH_001433748 |
| CUYAH_001433761 | CUYAH_001433762 |
| CUYAH_001433774 | CUYAH_001433781 |
| CUYAH_001433782 | CUYAH_001433784 |
| CUYAH_001433814 | CUYAH_001433815 |
| CUYAH_001433819 | CUYAH_001433819 |
| CUYAH_001433820 | CUYAH_001433940 |
| CUYAH_001433941 | CUYAH_001433941 |
| CUYAH_001434075 | CUYAH_001434078 |
| CUYAH_001434141 | CUYAH_001434144 |
| CUYAH_001434145 | CUYAH_001434147 |
| CUYAH_001434149 | CUYAH_001434152 |
| CUYAH_001434154 | CUYAH_001434157 |
| CUYAH_001434159 | CUYAH_001434162 |
| CUYAH_001396711 | CUYAH_001396711 |
| CUYAH_001397330 | CUYAH_001397330 |
| CUYAH_001432168 | CUYAH_001432168 |
| CUYAH_001350086 | CUYAH_001350086 |
| CUYAH_001350087 | CUYAH_001350087 |
| CUYAH_001350088 | CUYAH_001350088 |
| CUYAH_001350089 | CUYAH_001350089 |
| CUYAH_000515015 | CUYAH_000515015 |
| CUYAH_000745116 | CUYAH_000745116 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_000791471 | CUYAH_000791471 |
| CUYAH_000858893 | CUYAH_000858936 |
| CUYAH_000951322 | CUYAH_000951347 |
| CUYAH_000958243 | CUYAH_000958275 |
| CUYAH_001002231 | CUYAH_001002326 |
| CUYAH_001036634 | CUYAH_001036669 |
| CUYAH_001061097 | CUYAH_001061149 |
| CUYAH_001077965 | CUYAH_001078007 |
| CUYAH_001093184 | CUYAH_001093252 |
| CUYAH_001110591 | CUYAH_001110668 |
| CUYAH_001124158 | CUYAH_001124226 |
| CUYAH_001124592 | CUYAH_001124761 |
| CUYAH_001126434 | CUYAH_001126466 |
| CUYAH_001126890 | CUYAH_001126933 |
| CUYAH_001133719 | CUYAH_001133743 |
| CUYAH_001135102 | CUYAH_001135151 |
| CUYAH_001180949 | CUYAH_001181012 |
| CUYAH_001216820 | CUYAH_001217137 |
| CUYAH_001221687 | CUYAH_001221743 |
| CUYAH_001225628 | CUYAH_001225781 |
| CUYAH_001240630 | CUYAH_001240711 |
| CUYAH_001244993 | CUYAH_001245093 |
| CUYAH_001246308 | CUYAH_001246377 |
| CUYAH_001246849 | CUYAH_001246923 |
| CUYAH_001248454 | CUYAH_001248754 |
| CUYAH_001253223 | CUYAH_001253666 |
| CUYAH_001266929 | CUYAH_001267004 |
| CUYAH_001274701 | CUYAH_001274778 |
| CUYAH_001298266 | CUYAH_001298347 |
| CUYAH_001337520 | CUYAH_001337669 |
| CUYAH_001342822 | CUYAH_001342896 |
| CUYAH_001347236 | CUYAH_001347314 |
| CUYAH_001435124 | CUYAH_001435131 |
| CUYAH_001435771 | CUYAH_001435787 |
| CUYAH_001436230 | CUYAH_001436238 |
| CUYAH_001498456 | CUYAH_001498463 |
| CUYAH_001504487 | CUYAH_001504497 |
| CUYAH_001505489 | CUYAH_001505498 |
| CUYAH_001547636 | CUYAH_001547636 |
| CUYAH_001547662 | CUYAH_001547725 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001549761 | CUYAH_001549804 |
| CUYAH_001550685 | CUYAH_001550766 |
| CUYAH_001552156 | CUYAH_001552157 |
| CUYAH_001553684 | CUYAH_001553722 |
| CUYAH_001556955 | CUYAH_001560338 |
| CUYAH_001574129 | CUYAH_001574132 |
| CUYAH_001583459 | CUYAH_001583571 |
| CUYAH_001603478 | CUYAH_001603479 |
| CUYAH_001610685 | CUYAH_001610686 |
| CUYAH_001610687 | CUYAH_001610691 |
| CUYAH_001610984 | CUYAH_001610984 |
| CUYAH_001610986 | CUYAH_001610987 |
| CUYAH_001610988 | CUYAH_001610992 |
| CUYAH_001610996 | CUYAH_001610997 |
| CUYAH_001610998 | CUYAH_001611002 |
| CUYAH_001611007 | CUYAH_001611008 |
| CUYAH_001611009 | CUYAH_001611013 |
| CUYAH_001611019 | CUYAH_001611020 |
| CUYAH_001611021 | CUYAH_001611025 |
| CUYAH_001611087 | CUYAH_001611088 |
| CUYAH_001611140 | CUYAH_001611144 |
| CUYAH_001611309 | CUYAH_001611313 |
| CUYAH_001611318 | CUYAH_001611320 |
| CUYAH_001611327 | CUYAH_001611327 |
| CUYAH_001611364 | CUYAH_001611364 |
| CUYAH_001611365 | CUYAH_001611367 |
| CUYAH_001611493 | CUYAH_001611493 |
| CUYAH_001611494 | CUYAH_001611496 |
| CUYAH_001611505 | CUYAH_001611506 |
| CUYAH_001611716 | CUYAH_001611716 |
| CUYAH_001611717 | CUYAH_001611719 |
| CUYAH_001611726 | CUYAH_001611729 |
| CUYAH_001611734 | CUYAH_001611734 |
| CUYAH_001611735 | CUYAH_001611737 |
| CUYAH_001612078 | CUYAH_001612081 |
| CUYAH_001612104 | CUYAH_001612104 |
| CUYAH_001612109 | CUYAH_001612111 |
| CUYAH_001612147 | CUYAH_001612149 |
| CUYAH_001612150 | CUYAH_001612150 |
| CUYAH_001612755 | CUYAH_001612755 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001612756 | CUYAH_001612758 |
| CUYAH_001612821 | CUYAH_001612824 |
| CUYAH_001612843 | CUYAH_001612846 |
| CUYAH_001612847 | CUYAH_001612849 |
| CUYAH_001612857 | CUYAH_001612860 |
| CUYAH_001612861 | CUYAH_001612863 |
| CUYAH_001612885 | CUYAH_001612888 |
| CUYAH_001612889 | CUYAH_001612891 |
| CUYAH_001612897 | CUYAH_001612900 |
| CUYAH_001613511 | CUYAH_001613511 |
| CUYAH_001613512 | CUYAH_001613513 |
| CUYAH_001613522 | CUYAH_001613525 |
| CUYAH_001614481 | CUYAH_001614484 |
| CUYAH_001614782 | CUYAH_001614789 |
| CUYAH_001614798 | CUYAH_001614799 |
| CUYAH_001614803 | CUYAH_001614803 |
| CUYAH_001614804 | CUYAH_001614805 |
| CUYAH_001614849 | CUYAH_001614850 |
| CUYAH_001614866 | CUYAH_001614873 |
| CUYAH_001614893 | CUYAH_001614900 |
| CUYAH_001614903 | CUYAH_001614910 |
| CUYAH_001614945 | CUYAH_001614952 |
| CUYAH_001614969 | CUYAH_001614976 |
| CUYAH_001615462 | CUYAH_001615463 |
| CUYAH_001615471 | CUYAH_001615472 |
| CUYAH_001615522 | CUYAH_001615529 |
| CUYAH_001615530 | CUYAH_001615532 |
| CUYAH_001615557 | CUYAH_001615558 |
| CUYAH_001615680 | CUYAH_001615681 |
| CUYAH_001616636 | CUYAH_001616638 |
| CUYAH_001616651 | CUYAH_001616652 |
| CUYAH_001616834 | CUYAH_001616851 |
| CUYAH_001616928 | CUYAH_001616929 |
| CUYAH_001617147 | CUYAH_001617149 |
| CUYAH_001617717 | CUYAH_001617721 |
| CUYAH_001617722 | CUYAH_001617737 |
| CUYAH_001617780 | CUYAH_001617795 |
| CUYAH_001618416 | CUYAH_001618416 |
| CUYAH_001619291 | CUYAH_001619295 |
| CUYAH_001619296 | CUYAH_001619311 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001619490 | CUYAH_001619494 |
| CUYAH_001619495 | CUYAH_001619510 |
| CUYAH_001620312 | CUYAH_001620312 |
| CUYAH_001620313 | CUYAH_001620313 |
| CUYAH_001620314 | CUYAH_001620316 |
| CUYAH_001620317 | CUYAH_001620317 |
| CUYAH_001620318 | CUYAH_001620320 |
| CUYAH_001620321 | CUYAH_001620321 |
| CUYAH_001620322 | CUYAH_001620324 |
| CUYAH_001620325 | CUYAH_001620325 |
| CUYAH_001620326 | CUYAH_001620328 |
| CUYAH_001620329 | CUYAH_001620329 |
| CUYAH_001620330 | CUYAH_001620332 |
| CUYAH_001620333 | CUYAH_001620333 |
| CUYAH_001620334 | CUYAH_001620336 |
| CUYAH_001620337 | CUYAH_001620337 |
| CUYAH_001620338 | CUYAH_001620340 |
| CUYAH_001620341 | CUYAH_001620341 |
| CUYAH_001620342 | CUYAH_001620343 |
| CUYAH_001620505 | CUYAH_001620505 |
| CUYAH_001620568 | CUYAH_001620568 |
| CUYAH_001620612 | CUYAH_001620612 |
| CUYAH_001620628 | CUYAH_001620628 |
| CUYAH_001620713 | CUYAH_001620713 |
| CUYAH_001621209 | CUYAH_001621220 |
| CUYAH_001621260 | CUYAH_001621260 |
| CUYAH_001621316 | CUYAH_001621316 |
| CUYAH_001621317 | CUYAH_001621319 |
| CUYAH_001621371 | CUYAH_001621373 |
| CUYAH_001621502 | CUYAH_001621502 |
| CUYAH_001621503 | CUYAH_001621505 |
| CUYAH_001621547 | CUYAH_001621548 |
| CUYAH_001621584 | CUYAH_001621585 |
| CUYAH_001621595 | CUYAH_001621605 |
| CUYAH_001621933 | CUYAH_001621934 |
| CUYAH_001622161 | CUYAH_001622161 |
| CUYAH_001622162 | CUYAH_001622162 |
| CUYAH_001622188 | CUYAH_001622190 |
| CUYAH_001622195 | CUYAH_001622197 |
| CUYAH_001622198 | CUYAH_001622198 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001622199 | CUYAH_001622201 |
| CUYAH_001622466 | CUYAH_001622466 |
| CUYAH_001622482 | CUYAH_001622484 |
| CUYAH_001622504 | CUYAH_001622507 |
| CUYAH_001622516 | CUYAH_001622516 |
| CUYAH_001622528 | CUYAH_001622528 |
| CUYAH_001622618 | CUYAH_001622623 |
| CUYAH_001622653 | CUYAH_001622655 |
| CUYAH_001622657 | CUYAH_001622661 |
| CUYAH_001622665 | CUYAH_001622669 |
| CUYAH_001622675 | CUYAH_001622676 |
| CUYAH_001622677 | CUYAH_001622681 |
| CUYAH_001622696 | CUYAH_001622698 |
| CUYAH_001622721 | CUYAH_001622725 |
| CUYAH_001622755 | CUYAH_001622758 |
| CUYAH_001622766 | CUYAH_001622769 |
| CUYAH_001622914 | CUYAH_001622915 |
| CUYAH_001623224 | CUYAH_001623228 |
| CUYAH_001623229 | CUYAH_001623229 |
| CUYAH_001623230 | CUYAH_001623235 |
| CUYAH_001623279 | CUYAH_001623295 |
| CUYAH_001623581 | CUYAH_001623597 |
| CUYAH_001624328 | CUYAH_001624330 |
| CUYAH_001624337 | CUYAH_001624339 |
| CUYAH_001624559 | CUYAH_001624560 |
| CUYAH_001624561 | CUYAH_001624563 |
| CUYAH_001624623 | CUYAH_001624625 |
| CUYAH_001624782 | CUYAH_001624785 |
| CUYAH_001624812 | CUYAH_001624812 |
| CUYAH_001625010 | CUYAH_001625013 |
| CUYAH_001625127 | CUYAH_001625127 |
| CUYAH_001625749 | CUYAH_001625749 |
| CUYAH_001625767 | CUYAH_001625767 |
| CUYAH_001625800 | CUYAH_001625801 |
| CUYAH_001625818 | CUYAH_001625819 |
| CUYAH_001625980 | CUYAH_001625981 |
| CUYAH_001626162 | CUYAH_001626163 |
| CUYAH_001626167 | CUYAH_001626168 |
| CUYAH_001626173 | CUYAH_001626176 |
| CUYAH_001626185 | CUYAH_001626185 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001626186 | CUYAH_001626188 |
| CUYAH_001626197 | CUYAH_001626200 |
| CUYAH_001626201 | CUYAH_001626203 |
| CUYAH_001626204 | CUYAH_001626204 |
| CUYAH_001626254 | CUYAH_001626258 |
| CUYAH_001626282 | CUYAH_001626287 |
| CUYAH_001626376 | CUYAH_001626380 |
| CUYAH_001626398 | CUYAH_001626401 |
| CUYAH_001626411 | CUYAH_001626417 |
| CUYAH_001626425 | CUYAH_001626430 |
| CUYAH_001626432 | CUYAH_001626437 |
| CUYAH_001626447 | CUYAH_001626455 |
| CUYAH_001626472 | CUYAH_001626475 |
| CUYAH_001626487 | CUYAH_001626491 |
| CUYAH_001626513 | CUYAH_001626517 |
| CUYAH_001626518 | CUYAH_001626519 |
| CUYAH_001626530 | CUYAH_001626538 |
| CUYAH_001626543 | CUYAH_001626550 |
| CUYAH_001626592 | CUYAH_001626595 |
| CUYAH_001626599 | CUYAH_001626601 |
| CUYAH_001626617 | CUYAH_001626620 |
| CUYAH_001626813 | CUYAH_001626813 |
| CUYAH_001627028 | CUYAH_001627032 |
| CUYAH_001627033 | CUYAH_001627046 |
| CUYAH_001627229 | CUYAH_001627229 |
| CUYAH_001627243 | CUYAH_001627244 |
| CUYAH_001627245 | CUYAH_001627245 |
| CUYAH_001627267 | CUYAH_001627267 |
| CUYAH_001627299 | CUYAH_001627301 |
| CUYAH_001628112 | CUYAH_001628113 |
| CUYAH_001628144 | CUYAH_001628144 |
| CUYAH_001628185 | CUYAH_001628187 |
| CUYAH_001628188 | CUYAH_001628189 |
| CUYAH_001628190 | CUYAH_001628191 |
| CUYAH_001628192 | CUYAH_001628192 |
| CUYAH_001628193 | CUYAH_001628193 |
| CUYAH_001628238 | CUYAH_001628240 |
| CUYAH_001628241 | CUYAH_001628242 |
| CUYAH_001628638 | CUYAH_001628638 |
| CUYAH_001628672 | CUYAH_001628672 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001628759 | CUYAH_001628799 |
| CUYAH_001629050 | CUYAH_001629092 |
| CUYAH_001629147 | CUYAH_001629189 |
| CUYAH_001629241 | CUYAH_001629283 |
| CUYAH_001629455 | CUYAH_001629497 |
| CUYAH_001629518 | CUYAH_001629560 |
| CUYAH_001629771 | CUYAH_001629771 |
| CUYAH_001630054 | CUYAH_001630055 |
| CUYAH_001630090 | CUYAH_001630092 |
| CUYAH_001630096 | CUYAH_001630099 |
| CUYAH_001630100 | CUYAH_001630103 |
| CUYAH_001630230 | CUYAH_001630230 |
| CUYAH_001630712 | CUYAH_001630713 |
| CUYAH_001630719 | CUYAH_001630720 |
| CUYAH_001630818 | CUYAH_001630819 |
| CUYAH_001630867 | CUYAH_001630869 |
| CUYAH_001630877 | CUYAH_001630878 |
| CUYAH_001630901 | CUYAH_001630905 |
| CUYAH_001630913 | CUYAH_001630915 |
| CUYAH_001630941 | CUYAH_001630945 |
| CUYAH_001630970 | CUYAH_001630973 |
| CUYAH_001631369 | CUYAH_001631369 |
| CUYAH_001631562 | CUYAH_001631562 |
| CUYAH_001631589 | CUYAH_001631590 |
| CUYAH_001631591 | CUYAH_001631591 |
| CUYAH_001631800 | CUYAH_001631800 |
| CUYAH_001631851 | CUYAH_001631851 |
| CUYAH_001632068 | CUYAH_001632069 |
| CUYAH_001632377 | CUYAH_001632378 |
| CUYAH_001632412 | CUYAH_001632412 |
| CUYAH_001632607 | CUYAH_001632608 |
| CUYAH_001632611 | CUYAH_001632612 |
| CUYAH_001632616 | CUYAH_001632617 |
| CUYAH_001632673 | CUYAH_001632674 |
| CUYAH_001632676 | CUYAH_001632676 |
| CUYAH_001632677 | CUYAH_001632677 |
| CUYAH_001632789 | CUYAH_001632790 |
| CUYAH_001632791 | CUYAH_001632791 |
| CUYAH_001632796 | CUYAH_001632797 |
| CUYAH_001632803 | CUYAH_001632805 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001633399 | CUYAH_001633399 |
| CUYAH_001633486 | CUYAH_001633486 |
| CUYAH_001633505 | CUYAH_001633505 |
| CUYAH_001633648 | CUYAH_001633650 |
| CUYAH_001633749 | CUYAH_001633750 |
| CUYAH_001637461 | CUYAH_001637463 |
| CUYAH_001637646 | CUYAH_001637648 |
| CUYAH_001637802 | CUYAH_001637802 |
| CUYAH_001637804 | CUYAH_001637805 |
| CUYAH_001637806 | CUYAH_001637806 |
| CUYAH_001637807 | CUYAH_001637808 |
| CUYAH_001637809 | CUYAH_001637810 |
| CUYAH_001637811 | CUYAH_001637812 |
| CUYAH_001637813 | CUYAH_001637814 |
| CUYAH_001637857 | CUYAH_001637857 |
| CUYAH_001637872 | CUYAH_001637874 |
| CUYAH_001637911 | CUYAH_001637911 |
| CUYAH_001637938 | CUYAH_001637938 |
| CUYAH_001637942 | CUYAH_001637942 |
| CUYAH_001637960 | CUYAH_001637960 |
| CUYAH_001637994 | CUYAH_001637994 |
| CUYAH_001638063 | CUYAH_001638064 |
| CUYAH_001638091 | CUYAH_001638092 |
| CUYAH_001638097 | CUYAH_001638098 |
| CUYAH_001638150 | CUYAH_001638150 |
| CUYAH_001638227 | CUYAH_001638230 |
| CUYAH_001638233 | CUYAH_001638235 |
| CUYAH_001638306 | CUYAH_001638309 |
| CUYAH_001638362 | CUYAH_001638362 |
| CUYAH_001638394 | CUYAH_001638394 |
| CUYAH_001638395 | CUYAH_001638395 |
| CUYAH_001638730 | CUYAH_001638745 |
| CUYAH_001638757 | CUYAH_001638757 |
| CUYAH_001638783 | CUYAH_001638784 |
| CUYAH_001638973 | CUYAH_001638974 |
| CUYAH_001638984 | CUYAH_001638985 |
| CUYAH_001638990 | CUYAH_001638991 |
| CUYAH_001639057 | CUYAH_001639058 |
| CUYAH_001639059 | CUYAH_001639060 |
| CUYAH_001639102 | CUYAH_001639103 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001639167 | CUYAH_001639168 |
| CUYAH_001639434 | CUYAH_001639438 |
| CUYAH_001639459 | CUYAH_001639459 |
| CUYAH_001639477 | CUYAH_001639478 |
| CUYAH_001639480 | CUYAH_001639481 |
| CUYAH_001639482 | CUYAH_001639483 |
| CUYAH_001639487 | CUYAH_001639488 |
| CUYAH_001639506 | CUYAH_001639507 |
| CUYAH_001639533 | CUYAH_001639533 |
| CUYAH_001639534 | CUYAH_001639534 |
| CUYAH_001639922 | CUYAH_001639923 |
| CUYAH_001639924 | CUYAH_001639928 |
| CUYAH_001640566 | CUYAH_001640567 |
| CUYAH_001640580 | CUYAH_001640580 |
| CUYAH_001640581 | CUYAH_001640582 |
| CUYAH_001640600 | CUYAH_001640601 |
| CUYAH_001640604 | CUYAH_001640605 |
| CUYAH_001640615 | CUYAH_001640618 |
| CUYAH_001640623 | CUYAH_001640624 |
| CUYAH_001640658 | CUYAH_001640658 |
| CUYAH_001640659 | CUYAH_001640660 |
| CUYAH_001640661 | CUYAH_001640662 |
| CUYAH_001640664 | CUYAH_001640665 |
| CUYAH_001640678 | CUYAH_001640679 |
| CUYAH_001640952 | CUYAH_001640953 |
| CUYAH_001641481 | CUYAH_001641482 |
| CUYAH_001641492 | CUYAH_001641502 |
| CUYAH_001641631 | CUYAH_001641631 |
| CUYAH_001641632 | CUYAH_001641634 |
| CUYAH_001642028 | CUYAH_001642028 |
| CUYAH_001642029 | CUYAH_001642029 |
| CUYAH_001642443 | CUYAH_001642443 |
| CUYAH_001642506 | CUYAH_001642507 |
| CUYAH_001642513 | CUYAH_001642514 |
| CUYAH_001642528 | CUYAH_001642528 |
| CUYAH_001642530 | CUYAH_001642531 |
| CUYAH_001642535 | CUYAH_001642536 |
| CUYAH_001642546 | CUYAH_001642556 |
| CUYAH_001642922 | CUYAH_001642922 |
| CUYAH_001642944 | CUYAH_001642944 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001643453 | CUYAH_001643454 |
| CUYAH_001645073 | CUYAH_001645073 |
| CUYAH_001645368 | CUYAH_001645370 |
| CUYAH_001646058 | CUYAH_001646058 |
| CUYAH_001646182 | CUYAH_001646182 |
| CUYAH_001646282 | CUYAH_001646290 |
| CUYAH_001646501 | CUYAH_001646511 |
| CUYAH_001646607 | CUYAH_001646608 |
| CUYAH_001647128 | CUYAH_001647130 |
| CUYAH_001647457 | CUYAH_001647460 |
| CUYAH_001648491 | CUYAH_001648493 |
| CUYAH_001648616 | CUYAH_001648618 |
| CUYAH_001649850 | CUYAH_001649851 |
| CUYAH_001649863 | CUYAH_001649863 |
| CUYAH_001650257 | CUYAH_001650258 |
| CUYAH_001650481 | CUYAH_001650483 |
| CUYAH_001650502 | CUYAH_001650504 |
| CUYAH_001650505 | CUYAH_001650505 |
| CUYAH_001650516 | CUYAH_001650517 |
| CUYAH_001650527 | CUYAH_001650527 |
| CUYAH_001650528 | CUYAH_001650528 |
| CUYAH_001650597 | CUYAH_001650597 |
| CUYAH_001650692 | CUYAH_001650692 |
| CUYAH_001650759 | CUYAH_001650798 |
| CUYAH_001650915 | CUYAH_001650915 |
| CUYAH_001650941 | CUYAH_001650941 |
| CUYAH_001650959 | CUYAH_001650961 |
| CUYAH_001650974 | CUYAH_001650976 |
| CUYAH_001651259 | CUYAH_001651261 |
| CUYAH_001651603 | CUYAH_001651604 |
| CUYAH_001651877 | CUYAH_001651879 |
| CUYAH_001651889 | CUYAH_001651919 |
| CUYAH_001651984 | CUYAH_001652001 |
| CUYAH_001652444 | CUYAH_001652446 |
| CUYAH_001652535 | CUYAH_001652587 |
| CUYAH_001652935 | CUYAH_001652939 |
| CUYAH_001653177 | CUYAH_001653178 |
| CUYAH_001653218 | CUYAH_001653219 |
| CUYAH_001653247 | CUYAH_001653248 |
| CUYAH_001653287 | CUYAH_001653292 |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001653328 | CUYAH_001653333 |
| CUYAH_001653336 | CUYAH_001653338 |
| CUYAH_001653439 | CUYAH_001653445 |
| CUYAH_001653449 | CUYAH_001653449 |
| CUYAH_001653450 | CUYAH_001653456 |
| CUYAH_001653457 | CUYAH_001653459 |
| CUYAH_001653715 | CUYAH_001653715 |
| CUYAH_001653790 | CUYAH_001653791 |
| CUYAH_001654103 | CUYAH_001654104 |
| CUYAH_001654156 | CUYAH_001654164 |
| CUYAH_001654235 | CUYAH_001654235 |
| CUYAH_001654237 | CUYAH_001654246 |
| CUYAH_001654303 | CUYAH_001654303 |
| CUYAH_001654304 | CUYAH_001654317 |
| CUYAH_001654423 | CUYAH_001654423 |
| CUYAH_001654428 | CUYAH_001654429 |
| CUYAH_001654525 | CUYAH_001654525 |
| CUYAH_001654531 | CUYAH_001654532 |
| CUYAH_001654575 | CUYAH_001654575 |
| CUYAH_001654742 | CUYAH_001654748 |
| CUYAH_001654749 | CUYAH_001654751 |
| CUYAH_001654796 | CUYAH_001654799 |
| CUYAH_001654836 | CUYAH_001654840 |
| CUYAH_001654934 | CUYAH_001654935 |
| CUYAH_001654967 | CUYAH_001654976 |
| CUYAH_001655178 | CUYAH_001655219 |
| CUYAH_001655578 | CUYAH_001655578 |
| CUYAH_001655635 | CUYAH_001655635 |
| CUYAH_001655843 | CUYAH_001655843 |
| CUYAH_001656435 | CUYAH_001656436 |
| CUYAH_001656480 | CUYAH_001656481 |
| CUYAH_001656512 | CUYAH_001656514 |
| CUYAH_001656515 | CUYAH_001656517 |
| CUYAH_001656729 | CUYAH_001656732 |
| CUYAH_001656795 | CUYAH_001656806 |
| CUYAH_001656807 | CUYAH_001656824 |
| CUYAH_001656827 | CUYAH_001656830 |
| CUYAH_001656831 | CUYAH_001656999 |
| CUYAH_001657077 | CUYAH_001657088 |
| CUYAH_001657455 | CUYAH_001657457 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001657458 | CUYAH_001657458 |
| CUYAH_001657460 | CUYAH_001657482 |
| CUYAH_001657575 | CUYAH_001657575 |
| CUYAH_001657722 | CUYAH_001657778 |
| CUYAH_001657857 | CUYAH_001657858 |
| CUYAH_001657912 | CUYAH_001657914 |
| CUYAH_001657916 | CUYAH_001657917 |
| CUYAH_001657943 | CUYAH_001657946 |
| CUYAH_001658297 | CUYAH_001658300 |
| CUYAH_001658348 | CUYAH_001658380 |
| CUYAH_001658783 | CUYAH_001658786 |
| CUYAH_001658922 | CUYAH_001658925 |
| CUYAH_001658945 | CUYAH_001658945 |
| CUYAH_001658957 | CUYAH_001658961 |
| CUYAH_001658963 | CUYAH_001658965 |
| CUYAH_001658966 | CUYAH_001658968 |
| CUYAH_001658969 | CUYAH_001658969 |
| CUYAH_001658982 | CUYAH_001658984 |
| CUYAH_001658985 | CUYAH_001658988 |
| CUYAH_001658991 | CUYAH_001658991 |
| CUYAH_001659068 | CUYAH_001659071 |
| CUYAH_001659081 | CUYAH_001659082 |
| CUYAH_001659088 | CUYAH_001659088 |
| CUYAH_001659132 | CUYAH_001659135 |
| CUYAH_001659138 | CUYAH_001659138 |
| CUYAH_001659139 | CUYAH_001659139 |
| CUYAH_001659155 | CUYAH_001659157 |
| CUYAH_001659168 | CUYAH_001659177 |
| CUYAH_001659195 | CUYAH_001659197 |
| CUYAH_001659206 | CUYAH_001659207 |
| CUYAH_001659227 | CUYAH_001659227 |
| CUYAH_001659252 | CUYAH_001659252 |
| CUYAH_001659253 | CUYAH_001659259 |
| CUYAH_001659262 | CUYAH_001659263 |
| CUYAH_001659267 | CUYAH_001659269 |
| CUYAH_001659270 | CUYAH_001659270 |
| CUYAH_001659283 | CUYAH_001659285 |
| CUYAH_001659286 | CUYAH_001659286 |
| CUYAH_001659301 | CUYAH_001659302 |
| CUYAH_001659368 | CUYAH_001659370 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001659375 | CUYAH_001659377 |
| CUYAH_001659378 | CUYAH_001659378 |
| CUYAH_001659388 | CUYAH_001659388 |
| CUYAH_001659407 | CUYAH_001659407 |
| CUYAH_001659454 | CUYAH_001659456 |
| CUYAH_001659474 | CUYAH_001659474 |
| CUYAH_001659483 | CUYAH_001659483 |
| CUYAH_001659487 | CUYAH_001659488 |
| CUYAH_001659503 | CUYAH_001659509 |
| CUYAH_001659511 | CUYAH_001659511 |
| CUYAH_001659513 | CUYAH_001659556 |
| CUYAH_001659609 | CUYAH_001659618 |
| CUYAH_001659619 | CUYAH_001659623 |
| CUYAH_001659631 | CUYAH_001659633 |
| CUYAH_001659742 | CUYAH_001659742 |
| CUYAH_001659777 | CUYAH_001659782 |
| CUYAH_001659796 | CUYAH_001659800 |
| CUYAH_001659839 | CUYAH_001659840 |
| CUYAH_001659986 | CUYAH_001659990 |
| CUYAH_001659996 | CUYAH_001659997 |
| CUYAH_001659998 | CUYAH_001660002 |
| CUYAH_001660153 | CUYAH_001660153 |
| CUYAH_001660393 | CUYAH_001660393 |
| CUYAH_001661003 | CUYAH_001661005 |
| CUYAH_001661461 | CUYAH_001661462 |
| CUYAH_001661684 | CUYAH_001661688 |
| CUYAH_001661769 | CUYAH_001661769 |
| CUYAH_001661932 | CUYAH_001661933 |
| CUYAH_001663444 | CUYAH_001663447 |
| CUYAH_001663534 | CUYAH_001663534 |
| CUYAH_001663537 | CUYAH_001663541 |
| CUYAH_001663549 | CUYAH_001663553 |
| CUYAH_001663555 | CUYAH_001663555 |
| CUYAH_001663581 | CUYAH_001663585 |
| CUYAH_001663643 | CUYAH_001663648 |
| CUYAH_001663662 | CUYAH_001663663 |
| CUYAH_001663679 | CUYAH_001663683 |
| CUYAH_001663764 | CUYAH_001663771 |
| CUYAH_001663778 | CUYAH_001663778 |
| CUYAH_001663779 | CUYAH_001663784 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001663785 | CUYAH_001663788 |
| CUYAH_001663868 | CUYAH_001663872 |
| CUYAH_001663875 | CUYAH_001663884 |
| CUYAH_001664086 | CUYAH_001664095 |
| CUYAH_001664193 | CUYAH_001664193 |
| CUYAH_001664203 | CUYAH_001664203 |
| CUYAH_001664220 | CUYAH_001664225 |
| CUYAH_001664263 | CUYAH_001664264 |
| CUYAH_001664670 | CUYAH_001664671 |
| CUYAH_001664794 | CUYAH_001664795 |
| CUYAH_001664797 | CUYAH_001664806 |
| CUYAH_001664818 | CUYAH_001664818 |
| CUYAH_001665042 | CUYAH_001665042 |
| CUYAH_001665085 | CUYAH_001665085 |
| CUYAH_001665093 | CUYAH_001665093 |
| CUYAH_001665095 | CUYAH_001665095 |
| CUYAH_001665132 | CUYAH_001665132 |
| CUYAH_001665153 | CUYAH_001665154 |
| CUYAH_001665199 | CUYAH_001665199 |
| CUYAH_001665204 | CUYAH_001665204 |
| CUYAH_001665205 | CUYAH_001665205 |
| CUYAH_001665207 | CUYAH_001665207 |
| CUYAH_001665389 | CUYAH_001665389 |
| CUYAH_001665406 | CUYAH_001665406 |
| CUYAH_001665408 | CUYAH_001665471 |
| CUYAH_001665766 | CUYAH_001665766 |
| CUYAH_001665827 | CUYAH_001665828 |
| CUYAH_001665830 | CUYAH_001665834 |
| CUYAH_001666088 | CUYAH_001666088 |
| CUYAH_001666429 | CUYAH_001666429 |
| CUYAH_001666527 | CUYAH_001666528 |
| CUYAH_001666679 | CUYAH_001666681 |
| CUYAH_001666693 | CUYAH_001666697 |
| CUYAH_001666873 | CUYAH_001666874 |
| CUYAH_001668001 | CUYAH_001668001 |
| CUYAH_001668082 | CUYAH_001668082 |
| CUYAH_001668692 | CUYAH_001668692 |
| CUYAH_001668751 | CUYAH_001668751 |
| CUYAH_001668753 | CUYAH_001668753 |
| CUYAH_001668951 | CUYAH_001668951 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001668954 | CUYAH_001668956 |
| CUYAH_001669002 | CUYAH_001669002 |
| CUYAH_001669763 | CUYAH_001669764 |
| CUYAH_001669909 | CUYAH_001669910 |
| CUYAH_001669914 | CUYAH_001669916 |
| CUYAH_001669938 | CUYAH_001669938 |
| CUYAH_001670055 | CUYAH_001670055 |
| CUYAH_001670208 | CUYAH_001670210 |
| CUYAH_001670225 | CUYAH_001670225 |
| CUYAH_001670245 | CUYAH_001670246 |
| CUYAH_001670277 | CUYAH_001670277 |
| CUYAH_001670897 | CUYAH_001670900 |
| CUYAH_001670928 | CUYAH_001670928 |
| CUYAH_001670952 | CUYAH_001670954 |
| CUYAH_001670955 | CUYAH_001670957 |
| CUYAH_001670958 | CUYAH_001670960 |
| CUYAH_001670961 | CUYAH_001670962 |
| CUYAH_001670963 | CUYAH_001670964 |
| CUYAH_001670979 | CUYAH_001670979 |
| CUYAH_001670988 | CUYAH_001670988 |
| CUYAH_001671053 | CUYAH_001671054 |
| CUYAH_001671059 | CUYAH_001671059 |
| CUYAH_001671342 | CUYAH_001671343 |
| CUYAH_001671347 | CUYAH_001671383 |
| CUYAH_001672994 | CUYAH_001672994 |
| CUYAH_001673003 | CUYAH_001673005 |
| CUYAH_001673006 | CUYAH_001673007 |
| CUYAH_001673008 | CUYAH_001673009 |
| CUYAH_001673012 | CUYAH_001673013 |
| CUYAH_001674059 | CUYAH_001674059 |
| CUYAH_001674196 | CUYAH_001674202 |
| CUYAH_001676064 | CUYAH_001676065 |
| CUYAH_001676097 | CUYAH_001676098 |
| CUYAH_001680926 | CUYAH_001680928 |
| CUYAH_001680943 | CUYAH_001680945 |
| CUYAH_001681011 | CUYAH_001681012 |
| CUYAH_001684398 | CUYAH_001684399 |
| CUYAH_001684462 | CUYAH_001684463 |
| CUYAH_001684525 | CUYAH_001684526 |
| CUYAH_001684555 | CUYAH_001684555 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001684990 | CUYAH_001684993 |
| CUYAH_001689554 | CUYAH_001689556 |
| CUYAH_001689705 | CUYAH_001689708 |
| CUYAH_001689733 | CUYAH_001689736 |
| CUYAH_001689753 | CUYAH_001689756 |
| CUYAH_001689848 | CUYAH_001689850 |
| CUYAH_001689864 | CUYAH_001693247 |
| CUYAH_001693306 | CUYAH_001693309 |
| CUYAH_001693382 | CUYAH_001693388 |
| CUYAH_001695805 | CUYAH_001695813 |
| CUYAH_001695814 | CUYAH_001695817 |
| CUYAH_001696669 | CUYAH_001696673 |
| CUYAH_001696748 | CUYAH_001696750 |
| CUYAH_001696785 | CUYAH_001696792 |
| CUYAH_001696793 | CUYAH_001696796 |
| CUYAH_001697411 | CUYAH_001697417 |
| CUYAH_001697433 | CUYAH_001697436 |
| CUYAH_001697459 | CUYAH_001697490 |
| CUYAH_001697529 | CUYAH_001697530 |
| CUYAH_001697538 | CUYAH_001697539 |
| CUYAH_001697548 | CUYAH_001697549 |
| CUYAH_001697596 | CUYAH_001697601 |
| CUYAH_001697636 | CUYAH_001697638 |
| CUYAH_001697709 | CUYAH_001697711 |
| CUYAH_001697882 | CUYAH_001697885 |
| CUYAH_001698040 | CUYAH_001698041 |
| CUYAH_001698130 | CUYAH_001698130 |
| CUYAH_001699097 | CUYAH_001699098 |
| CUYAH_001699117 | CUYAH_001699119 |
| CUYAH_001699337 | CUYAH_001699340 |
| CUYAH_001699470 | CUYAH_001699472 |
| CUYAH_001699488 | CUYAH_001699490 |
| CUYAH_001699491 | CUYAH_001699492 |
| CUYAH_001699636 | CUYAH_001699637 |
| CUYAH_001699670 | CUYAH_001699686 |
| CUYAH_001699761 | CUYAH_001699801 |
| CUYAH_001699914 | CUYAH_001699914 |
| CUYAH_001700010 | CUYAH_001700010 |
| CUYAH_001700467 | CUYAH_001700475 |
| CUYAH_001700904 | CUYAH_001700906 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001701203 | CUYAH_001701204 |
| CUYAH_001701461 | CUYAH_001701462 |
| CUYAH_001701551 | CUYAH_001701551 |
| CUYAH_001701771 | CUYAH_001701773 |
| CUYAH_001703854 | CUYAH_001703856 |
| CUYAH_001704117 | CUYAH_001704119 |
| CUYAH_001706245 | CUYAH_001706246 |
| CUYAH_001706434 | CUYAH_001706435 |
| CUYAH_001707403 | CUYAH_001707409 |
| CUYAH_001708666 | CUYAH_001708667 |
| CUYAH_001709118 | CUYAH_001709119 |
| CUYAH_001709175 | CUYAH_001709176 |
| CUYAH_001709210 | CUYAH_001709211 |
| CUYAH_001709320 | CUYAH_001709321 |
| CUYAH_001709342 | CUYAH_001709343 |
| CUYAH_001709355 | CUYAH_001709357 |
| CUYAH_001709363 | CUYAH_001709365 |
| CUYAH_001709374 | CUYAH_001709374 |
| CUYAH_001709379 | CUYAH_001709381 |
| CUYAH_001709383 | CUYAH_001709384 |
| CUYAH_001709385 | CUYAH_001709386 |
| CUYAH_001709387 | CUYAH_001709388 |
| CUYAH_001709631 | CUYAH_001709631 |
| CUYAH_001709667 | CUYAH_001709674 |
| CUYAH_001709675 | CUYAH_001709676 |
| CUYAH_001709693 | CUYAH_001709695 |
| CUYAH_001709756 | CUYAH_001709759 |
| CUYAH_001709817 | CUYAH_001709817 |
| CUYAH_001709818 | CUYAH_001709819 |
| CUYAH_001709829 | CUYAH_001709829 |
| CUYAH_001709830 | CUYAH_001709830 |
| CUYAH_001709880 | CUYAH_001709883 |
| CUYAH_001709886 | CUYAH_001709886 |
| CUYAH_001709887 | CUYAH_001709889 |
| CUYAH_001709924 | CUYAH_001709925 |
| CUYAH_001709940 | CUYAH_001709947 |
| CUYAH_001709970 | CUYAH_001709970 |
| CUYAH_001709971 | CUYAH_001709973 |
| CUYAH_001709992 | CUYAH_001709993 |
| CUYAH_001710087 | CUYAH_001710091 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001710097 | CUYAH_001710098 |
| CUYAH_001710102 | CUYAH_001710103 |
| CUYAH_001710116 | CUYAH_001710117 |
| CUYAH_001710201 | CUYAH_001710203 |
| CUYAH_001710216 | CUYAH_001710217 |
| CUYAH_001710246 | CUYAH_001710247 |
| CUYAH_001710331 | CUYAH_001710332 |
| CUYAH_001710369 | CUYAH_001710369 |
| CUYAH_001711106 | CUYAH_001711109 |
| CUYAH_001711183 | CUYAH_001711183 |
| CUYAH_001711246 | CUYAH_001711246 |
| CUYAH_001711334 | CUYAH_001711335 |
| CUYAH_001711721 | CUYAH_001711721 |
| CUYAH_001711776 | CUYAH_001711776 |
| CUYAH_001711778 | CUYAH_001711778 |
| CUYAH_001711791 | CUYAH_001711791 |
| CUYAH_001711792 | CUYAH_001711792 |
| CUYAH_001711793 | CUYAH_001711794 |
| CUYAH_001711842 | CUYAH_001711842 |
| CUYAH_001711846 | CUYAH_001711846 |
| CUYAH_001711861 | CUYAH_001711861 |
| CUYAH_001711869 | CUYAH_001711869 |
| CUYAH_001711870 | CUYAH_001711870 |
| CUYAH_001711881 | CUYAH_001711881 |
| CUYAH_001711901 | CUYAH_001711901 |
| CUYAH_001711906 | CUYAH_001711906 |
| CUYAH_001711921 | CUYAH_001711922 |
| CUYAH_001711927 | CUYAH_001711928 |
| CUYAH_001711932 | CUYAH_001711932 |
| CUYAH_001711992 | CUYAH_001711993 |
| CUYAH_001711995 | CUYAH_001711995 |
| CUYAH_001711997 | CUYAH_001711997 |
| CUYAH_001712005 | CUYAH_001712005 |
| CUYAH_001712006 | CUYAH_001712006 |
| CUYAH_001712051 | CUYAH_001712054 |
| CUYAH_001712056 | CUYAH_001712059 |
| CUYAH_001712151 | CUYAH_001712152 |
| CUYAH_001712167 | CUYAH_001712170 |
| CUYAH_001712186 | CUYAH_001712191 |
| CUYAH_001712220 | CUYAH_001712220 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
| --- | --- |
| CUYAH_001712230 | CUYAH_001712233 |
| CUYAH_001712416 | CUYAH_001712416 |
| CUYAH_001712423 | CUYAH_001712423 |
| CUYAH_001712424 | CUYAH_001712424 |
| CUYAH_001712453 | CUYAH_001712453 |
| CUYAH_001712483 | CUYAH_001712488 |
| CUYAH_001712494 | CUYAH_001712497 |
| CUYAH_001712498 | CUYAH_001712500 |
| CUYAH_001712523 | CUYAH_001712528 |
| CUYAH_001712558 | CUYAH_001712558 |
| CUYAH_001712561 | CUYAH_001712561 |
| CUYAH_001712575 | CUYAH_001712578 |
| CUYAH_001712582 | CUYAH_001712585 |
| CUYAH_001712590 | CUYAH_001712591 |
| CUYAH_001712593 | CUYAH_001712596 |
| CUYAH_001712601 | CUYAH_001712601 |
| CUYAH_001712604 | CUYAH_001712604 |
| CUYAH_001712606 | CUYAH_001712607 |
| CUYAH_001712608 | CUYAH_001712608 |
| CUYAH_001712624 | CUYAH_001712625 |
| CUYAH_001712646 | CUYAH_001712647 |
| CUYAH_001712648 | CUYAH_001712648 |
| CUYAH_001712658 | CUYAH_001712663 |
| CUYAH_001713138 | CUYAH_001713139 |
| CUYAH_001713201 | CUYAH_001713202 |
| CUYAH_001713213 | CUYAH_001713217 |
| CUYAH_001713240 | CUYAH_001713241 |
| CUYAH_001713293 | CUYAH_001713297 |
| CUYAH_001713300 | CUYAH_001713301 |
| CUYAH_001713302 | CUYAH_001713303 |
| CUYAH_001713319 | CUYAH_001713320 |
| CUYAH_001713324 | CUYAH_001713326 |
| CUYAH_001713401 | CUYAH_001713405 |
| CUYAH_001713453 | CUYAH_001713454 |
| CUYAH_001713455 | CUYAH_001713459 |
| CUYAH_001713628 | CUYAH_001713629 |
| CUYAH_001713630 | CUYAH_001713634 |
| CUYAH_001713679 | CUYAH_001713742 |
| CUYAH_001713783 | CUYAH_001713787 |
| CUYAH_001713902 | CUYAH_001713902 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001713958 | CUYAH_001713959 |
| CUYAH_001714086 | CUYAH_001714087 |
| CUYAH_001716024 | CUYAH_001716032 |
| CUYAH_001719692 | CUYAH_001719693 |
| CUYAH_001719698 | CUYAH_001719707 |
| CUYAH_001721648 | CUYAH_001721655 |
| CUYAH_001732198 | CUYAH_001732211 |
| CUYAH_001732266 | CUYAH_001732272 |
| CUYAH_001732294 | CUYAH_001732300 |
| CUYAH_001732352 | CUYAH_001732358 |
| CUYAH_001751863 | CUYAH_001751868 |
| CUYAH_001754208 | CUYAH_001754216 |
| CUYAH_001758246 | CUYAH_001758251 |
| CUYAH_001758568 | CUYAH_001758569 |
| CUYAH_001758574 | CUYAH_001758583 |
| CUYAH_001758741 | CUYAH_001758750 |
| CUYAH_001758972 | CUYAH_001758982 |
| CUYAH_001760254 | CUYAH_001760260 |
| CUYAH_001769674 | CUYAH_001769674 |
| CUYAH_001775063 | CUYAH_001775112 |
| CUYAH_001775123 | CUYAH_001775172 |
| CUYAH_001778902 | CUYAH_001778999 |
| CUYAH_001783629 | CUYAH_001783636 |
| CUYAH_001783736 | CUYAH_001783743 |
| CUYAH_001787453 | CUYAH_001787464 |
| CUYAH_001787530 | CUYAH_001787541 |
| CUYAH_001790237 | CUYAH_001790245 |
| CUYAH_001792366 | CUYAH_001792371 |
| CUYAH_001792480 | CUYAH_001792481 |
| CUYAH_001792486 | CUYAH_001792495 |
| CUYAH_001793121 | CUYAH_001793130 |
| CUYAH_001793270 | CUYAH_001793280 |
| CUYAH_001794902 | CUYAH_001794910 |
| CUYAH_001797763 | CUYAH_001797769 |
| CUYAH_001802268 | CUYAH_001802278 |
| CUYAH_001802330 | CUYAH_001802340 |
| CUYAH_001802659 | CUYAH_001802669 |
| CUYAH_001802671 | CUYAH_001802681 |
| CUYAH_001805409 | CUYAH_001805415 |
| CUYAH_001807565 | CUYAH_001807570 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001814569 | CUYAH_001814579 |
| CUYAH_001814726 | CUYAH_001814736 |
| CUYAH_001830297 | CUYAH_001830309 |
| CUYAH_001830529 | CUYAH_001830531 |
| CUYAH_001830535 | CUYAH_001830537 |
| CUYAH_001830553 | CUYAH_001830554 |
| CUYAH_001830852 | CUYAH_001830852 |
| CUYAH_001830853 | CUYAH_001830853 |
| CUYAH_001830854 | CUYAH_001830854 |
| CUYAH_001830855 | CUYAH_001830855 |
| CUYAH_001830856 | CUYAH_001830856 |
| CUYAH_001830857 | CUYAH_001830857 |
| CUYAH_001830859 | CUYAH_001830859 |
| CUYAH_001830860 | CUYAH_001830860 |
| CUYAH_001830861 | CUYAH_001830861 |
| CUYAH_001830862 | CUYAH_001830862 |
| CUYAH_001830863 | CUYAH_001830863 |
| CUYAH_001830864 | CUYAH_001830864 |
| CUYAH_001830865 | CUYAH_001830865 |
| CUYAH_001830866 | CUYAH_001830866 |
| CUYAH_001830867 | CUYAH_001830867 |
| CUYAH_001830868 | CUYAH_001830868 |
| CUYAH_001830869 | CUYAH_001830869 |
| CUYAH_001830870 | CUYAH_001830870 |
| CUYAH_001830871 | CUYAH_001830871 |
| CUYAH_001830872 | CUYAH_001830872 |
| CUYAH_001830873 | CUYAH_001830873 |
| CUYAH_001830875 | CUYAH_001830875 |
| CUYAH_001830876 | CUYAH_001830876 |
| CUYAH_001830877 | CUYAH_001830877 |
| CUYAH_001830878 | CUYAH_001830878 |
| CUYAH_001830879 | CUYAH_001830879 |
| CUYAH_001830882 | CUYAH_001830882 |
| CUYAH_001830884 | CUYAH_001830884 |
| CUYAH_001830885 | CUYAH_001830885 |
| CUYAH_001830886 | CUYAH_001830886 |
| CUYAH_001830888 | CUYAH_001830888 |
| CUYAH_001830891 | CUYAH_001830891 |
| CUYAH_001830892 | CUYAH_001830892 |
| CUYAH_001830895 | CUYAH_001830895 |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001830896 | CUYAH_001830896 |
| CUYAH_001830904 | CUYAH_001830904 |
| CUYAH_001830971 | CUYAH_001830973 |
| CUYAH_001830996 | CUYAH_001830998 |
| CUYAH_001831002 | CUYAH_001831004 |
| CUYAH_001831044 | CUYAH_001831046 |
| CUYAH_001831049 | CUYAH_001831052 |
| CUYAH_001831064 | CUYAH_001831065 |
| CUYAH_001831081 | CUYAH_001831081 |
| CUYAH_001831107 | CUYAH_001831170 |
| CUYAH_001833581 | CUYAH_001833624 |
| CUYAH_001834940 | CUYAH_001835021 |
| CUYAH_001836382 | CUYAH_001836383 |
| CUYAH_001836977 | CUYAH_001836979 |
| CUYAH_001837033 | CUYAH_001837036 |
| CUYAH_001837040 | CUYAH_001837042 |
| CUYAH_001837174 | CUYAH_001837174 |
| CUYAH_001839204 | CUYAH_001839242 |
| CUYAH_001841332 | CUYAH_001844715 |
| CUYAH_001855430 | CUYAH_001855433 |
| CUYAH_001857438 | CUYAH_001857494 |
| CUYAH_001865463 | CUYAH_001865575 |
| CUYAH_001885609 | CUYAH_001885610 |
| CUYAH_001894443 | CUYAH_001894444 |
| CUYAH_001894445 | CUYAH_001894449 |
| CUYAH_001894736 | CUYAH_001894736 |
| CUYAH_001894738 | CUYAH_001894739 |
| CUYAH_001894740 | CUYAH_001894744 |
| CUYAH_001894750 | CUYAH_001894751 |
| CUYAH_001894752 | CUYAH_001894756 |
| CUYAH_001894826 | CUYAH_001894827 |
| CUYAH_001894886 | CUYAH_001894890 |
| CUYAH_001895717 | CUYAH_001895721 |
| CUYAH_001895726 | CUYAH_001895728 |
| CUYAH_001895735 | CUYAH_001895735 |
| CUYAH_001895772 | CUYAH_001895772 |
| CUYAH_001895773 | CUYAH_001895775 |
| CUYAH_001896709 | CUYAH_001896709 |
| CUYAH_001896710 | CUYAH_001896712 |
| CUYAH_001896759 | CUYAH_001896760 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001897410 | CUYAH_001897410 |
| CUYAH_001897411 | CUYAH_001897413 |
| CUYAH_001897420 | CUYAH_001897423 |
| CUYAH_001897429 | CUYAH_001897429 |
| CUYAH_001897430 | CUYAH_001897432 |
| CUYAH_001898693 | CUYAH_001898696 |
| CUYAH_001898714 | CUYAH_001898714 |
| CUYAH_001898719 | CUYAH_001898721 |
| CUYAH_001898757 | CUYAH_001898759 |
| CUYAH_001898760 | CUYAH_001898760 |
| CUYAH_001899384 | CUYAH_001899385 |
| CUYAH_001899386 | CUYAH_001899387 |
| CUYAH_001899428 | CUYAH_001899428 |
| CUYAH_001899429 | CUYAH_001899431 |
| CUYAH_001899481 | CUYAH_001899484 |
| CUYAH_001899496 | CUYAH_001899499 |
| CUYAH_001899500 | CUYAH_001899502 |
| CUYAH_001899510 | CUYAH_001899513 |
| CUYAH_001899514 | CUYAH_001899516 |
| CUYAH_001899527 | CUYAH_001899530 |
| CUYAH_001899531 | CUYAH_001899533 |
| CUYAH_001899539 | CUYAH_001899542 |
| CUYAH_001900156 | CUYAH_001900156 |
| CUYAH_001900157 | CUYAH_001900158 |
| CUYAH_001900167 | CUYAH_001900170 |
| CUYAH_001901136 | CUYAH_001901139 |
| CUYAH_001902613 | CUYAH_001902620 |
| CUYAH_001902629 | CUYAH_001902630 |
| CUYAH_001902634 | CUYAH_001902634 |
| CUYAH_001902635 | CUYAH_001902636 |
| CUYAH_001902680 | CUYAH_001902681 |
| CUYAH_001902697 | CUYAH_001902704 |
| CUYAH_001902724 | CUYAH_001902731 |
| CUYAH_001902734 | CUYAH_001902741 |
| CUYAH_001902780 | CUYAH_001902787 |
| CUYAH_001902804 | CUYAH_001902811 |
| CUYAH_001903871 | CUYAH_001903872 |
| CUYAH_001903880 | CUYAH_001903881 |
| CUYAH_001903980 | CUYAH_001903987 |
| CUYAH_001903988 | CUYAH_001903990 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001904015 | CUYAH_001904016 |
| CUYAH_001904044 | CUYAH_001904045 |
| CUYAH_001904992 | CUYAH_001904994 |
| CUYAH_001905007 | CUYAH_001905008 |
| CUYAH_001905205 | CUYAH_001905222 |
| CUYAH_001905330 | CUYAH_001905331 |
| CUYAH_001905564 | CUYAH_001905566 |
| CUYAH_001906311 | CUYAH_001906315 |
| CUYAH_001906316 | CUYAH_001906331 |
| CUYAH_001906374 | CUYAH_001906389 |
| CUYAH_001907014 | CUYAH_001907014 |
| CUYAH_001907916 | CUYAH_001907920 |
| CUYAH_001907921 | CUYAH_001907936 |
| CUYAH_001908115 | CUYAH_001908119 |
| CUYAH_001908120 | CUYAH_001908135 |
| CUYAH_001908942 | CUYAH_001908942 |
| CUYAH_001908943 | CUYAH_001908943 |
| CUYAH_001908944 | CUYAH_001908946 |
| CUYAH_001908947 | CUYAH_001908947 |
| CUYAH_001908948 | CUYAH_001908950 |
| CUYAH_001908951 | CUYAH_001908951 |
| CUYAH_001908952 | CUYAH_001908954 |
| CUYAH_001908955 | CUYAH_001908955 |
| CUYAH_001908956 | CUYAH_001908958 |
| CUYAH_001908959 | CUYAH_001908959 |
| CUYAH_001908960 | CUYAH_001908962 |
| CUYAH_001908963 | CUYAH_001908963 |
| CUYAH_001908964 | CUYAH_001908966 |
| CUYAH_001908967 | CUYAH_001908967 |
| CUYAH_001908968 | CUYAH_001908970 |
| CUYAH_001908971 | CUYAH_001908971 |
| CUYAH_001908972 | CUYAH_001908973 |
| CUYAH_001911374 | CUYAH_001911377 |
| CUYAH_001911382 | CUYAH_001911385 |
| CUYAH_001911386 | CUYAH_001911389 |
| CUYAH_001912670 | CUYAH_001912671 |
| CUYAH_001912905 | CUYAH_001912911 |
| CUYAH_001913116 | CUYAH_001913130 |
| CUYAH_001914509 | CUYAH_001914509 |
| CUYAH_001914619 | CUYAH_001914630 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001917233 | CUYAH_001917237 |
| CUYAH_001918034 | CUYAH_001918038 |
| CUYAH_001918039 | CUYAH_001918043 |
| CUYAH_001919730 | CUYAH_001919731 |
| CUYAH_001921950 | CUYAH_001921952 |
| CUYAH_001921953 | CUYAH_001921953 |
| CUYAH_001921954 | CUYAH_001921954 |
| CUYAH_001921955 | CUYAH_001921956 |
| CUYAH_001921957 | CUYAH_001921958 |
| CUYAH_001921959 | CUYAH_001921960 |
| CUYAH_001921965 | CUYAH_001921967 |
| CUYAH_001921976 | CUYAH_001921977 |
| CUYAH_001921978 | CUYAH_001921979 |
| CUYAH_001921980 | CUYAH_001921981 |
| CUYAH_001921982 | CUYAH_001921983 |
| CUYAH_001922023 | CUYAH_001922026 |
| CUYAH_001922030 | CUYAH_001922032 |
| CUYAH_001922240 | CUYAH_001922261 |
| CUYAH_001928006 | CUYAH_001928028 |
| CUYAH_001929683 | CUYAH_001929683 |
| CUYAH_001932827 | CUYAH_001932833 |
| CUYAH_001932974 | CUYAH_001932978 |
| CUYAH_001939482 | CUYAH_001939483 |
| CUYAH_001939884 | CUYAH_001939885 |
| CUYAH_001939898 | CUYAH_001939898 |
| CUYAH_001940469 | CUYAH_001940489 |
| CUYAH_001942777 | CUYAH_001942777 |
| CUYAH_001943006 | CUYAH_001943007 |
| CUYAH_001948018 | CUYAH_001948035 |
| CUYAH_001952756 | CUYAH_001952826 |
| CUYAH_001953159 | CUYAH_001953159 |
| CUYAH_001959150 | CUYAH_001959158 |
| CUYAH_001980155 | CUYAH_001981013 |
| CUYAH_001987442 | CUYAH_001987442 |
| CUYAH_001991317 | CUYAH_001991317 |
| CUYAH_001991758 | CUYAH_001991758 |
| CUYAH_001993031 | CUYAH_001993031 |
| CUYAH_001993047 | CUYAH_001993047 |
| CUYAH_001993171 | CUYAH_001993171 |
| CUYAH_001993234 | CUYAH_001993234 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_001994963 | CUYAH_001994963 |
| CUYAH_001995315 | CUYAH_001995316 |
| CUYAH_001997299 | CUYAH_001997299 |
| CUYAH_002003506 | CUYAH_002003506 |
| CUYAH_002003507 | CUYAH_002003507 |
| CUYAH_002006797 | CUYAH_002006797 |
| CUYAH_002006839 | CUYAH_002006839 |
| CUYAH_002013191 | CUYAH_002013192 |
| CUYAH_002013571 | CUYAH_002013572 |
| CUYAH_002013632 | CUYAH_002013633 |
| CUYAH_002015155 | CUYAH_002015156 |
| CUYAH_002017172 | CUYAH_002017172 |
| CUYAH_002017604 | CUYAH_002017606 |
| CUYAH_002017639 | CUYAH_002017642 |
| CUYAH_002017841 | CUYAH_002017843 |
| CUYAH_002017844 | CUYAH_002017846 |
| CUYAH_002019865 | CUYAH_002019866 |
| CUYAH_002021931 | CUYAH_002021933 |
| CUYAH_002032461 | CUYAH_002032463 |
| CUYAH_002034838 | CUYAH_002034839 |
| CUYAH_002040764 | CUYAH_002040838 |
| CUYAH_002041814 | CUYAH_002041830 |
| CUYAH_002042044 | CUYAH_002042044 |
| CUYAH_002043082 | CUYAH_002043101 |
| CUYAH_002044394 | CUYAH_002044395 |
| CUYAH_002045936 | CUYAH_002045936 |
| CUYAH_002045962 | CUYAH_002045962 |
| CUYAH_002045963 | CUYAH_002045969 |
| CUYAH_002046095 | CUYAH_002046095 |
| CUYAH_002046138 | CUYAH_002046138 |
| CUYAH_002046170 | CUYAH_002046171 |
| CUYAH_002046172 | CUYAH_002046173 |
| CUYAH_002046174 | CUYAH_002046177 |
| CUYAH_002046197 | CUYAH_002046198 |
| CUYAH_002046199 | CUYAH_002046200 |
| CUYAH_002046201 | CUYAH_002046204 |
| CUYAH_002046319 | CUYAH_002046321 |
| CUYAH_002048021 | CUYAH_002048022 |
| CUYAH_002048285 | CUYAH_002048286 |
| CUYAH_002048324 | CUYAH_002048326 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_002048327 | CUYAH_002048327 |
| CUYAH_002048328 | CUYAH_002048328 |
| CUYAH_002048785 | CUYAH_002048801 |
| CUYAH_002048824 | CUYAH_002048825 |
| CUYAH_002050819 | CUYAH_002050871 |
| CUYAH_002051314 | CUYAH_002051338 |
| CUYAH_002051373 | CUYAH_002051374 |
| CUYAH_002052790 | CUYAH_002052864 |
| CUYAH_002053235 | CUYAH_002053235 |
| CUYAH_002053573 | CUYAH_002053575 |
| CUYAH_002053743 | CUYAH_002053744 |
| CUYAH_002055773 | CUYAH_002055847 |
| CUYAH_002055873 | CUYAH_002055947 |
| CUYAH_002056318 | CUYAH_002056318 |
| CUYAH_002056416 | CUYAH_002056416 |
| CUYAH_002056417 | CUYAH_002056423 |
| CUYAH_002056442 | CUYAH_002056443 |
| CUYAH_002056444 | CUYAH_002056445 |
| CUYAH_002056446 | CUYAH_002056449 |
| CUYAH_002056637 | CUYAH_002056639 |
| CUYAH_002115922 | CUYAH_002115923 |
| CUYAH_002116533 | CUYAH_002116542 |
| CUYAH_002116850 | CUYAH_002116857 |
| CUYAH_002116951 | CUYAH_002116958 |
| CUYAH_002117371 | CUYAH_002117378 |
| CUYAH_002117768 | CUYAH_002117768 |
| CUYAH_002117941 | CUYAH_002117942 |
| CUYAH_002118191 | CUYAH_002118191 |
| CUYAH_002120409 | CUYAH_002120409 |
| CUYAH_002120414 | CUYAH_002120416 |
| CUYAH_002120900 | CUYAH_002120902 |
| CUYAH_002121944 | CUYAH_002121944 |
| CUYAH_002122244 | CUYAH_002122244 |
| CUYAH_002122717 | CUYAH_002122717 |
| CUYAH_002122738 | CUYAH_002122738 |
| CUYAH_002124622 | CUYAH_002124624 |
| CUYAH_002124634 | CUYAH_002124635 |
| CUYAH_002124649 | CUYAH_002124651 |
| CUYAH_002125048 | CUYAH_002125049 |
| CUYAH_002125323 | CUYAH_002125325 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_002125383 | CUYAH_002125383 |
| CUYAH_002125994 | CUYAH_002125996 |
| CUYAH_002126001 | CUYAH_002126003 |
| CUYAH_002127847 | CUYAH_002127848 |
| CUYAH_002127973 | CUYAH_002127973 |
| CUYAH_002128940 | CUYAH_002128941 |
| CUYAH_002129587 | CUYAH_002129587 |
| CUYAH_002130476 | CUYAH_002130478 |
| CUYAH_002130587 | CUYAH_002130588 |
| CUYAH_002130597 | CUYAH_002130599 |
| CUYAH_002130602 | CUYAH_002130604 |
| CUYAH_002131052 | CUYAH_002131054 |
| CUYAH_002131087 | CUYAH_002131108 |
| CUYAH_002131875 | CUYAH_002131892 |
| CUYAH_002132430 | CUYAH_002132430 |
| CUYAH_002132727 | CUYAH_002132728 |
| CUYAH_002133963 | CUYAH_002133965 |
| CUYAH_002133976 | CUYAH_002133977 |
| CUYAH_002134226 | CUYAH_002134227 |
| CUYAH_002134259 | CUYAH_002134259 |
| CUYAH_002134918 | CUYAH_002134920 |
| CUYAH_002134921 | CUYAH_002134923 |
| CUYAH_002134943 | CUYAH_002134944 |
| CUYAH_002135009 | CUYAH_002135010 |
| CUYAH_002135018 | CUYAH_002135018 |
| CUYAH_002135019 | CUYAH_002135019 |
| CUYAH_002135024 | CUYAH_002135024 |
| CUYAH_002139206 | CUYAH_002139206 |
| CUYAH_002139608 | CUYAH_002139608 |
| CUYAH_002140456 | CUYAH_002140457 |
| CUYAH_002140460 | CUYAH_002140461 |
| CUYAH_002140735 | CUYAH_002140735 |
| CUYAH_002140829 | CUYAH_002140829 |
| CUYAH_002140903 | CUYAH_002140903 |
| CUYAH_002140904 | CUYAH_002140904 |
| CUYAH_002140908 | CUYAH_002140908 |
| CUYAH_002140932 | CUYAH_002140935 |
| CUYAH_002140949 | CUYAH_002140951 |
| CUYAH_002140952 | CUYAH_002140954 |
| CUYAH_002140957 | CUYAH_002140957 |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Bates BegControl | Bates EndControl |
|---|---|
| CUYAH_002141173 | CUYAH_002141174 |
| CUYAH_002141209 | CUYAH_002141210 |
| CUYAH_002141217 | CUYAH_002141221 |
| CUYAH_002141222 | CUYAH_002141224 |
| CUYAH_002141227 | CUYAH_002141228 |
| CUYAH_002141261 | CUYAH_002141261 |
| CUYAH_002141321 | CUYAH_002141322 |
| CUYAH_002141337 | CUYAH_002141337 |
| CUYAH_002141374 | CUYAH_002141389 |
| CUYAH_002141414 | CUYAH_002141418 |
| CUYAH_002141443 | CUYAH_002141458 |
| CUYAH_002141481 | CUYAH_002141484 |
| CUYAH_002141513 | CUYAH_002141516 |
| CUYAH_002141525 | CUYAH_002141526 |
| CUYAH_002141639 | CUYAH_002141642 |
| CUYAH_002141671 | CUYAH_002141672 |
| CUYAH_002141677 | CUYAH_002141679 |
| CUYAH_002141694 | CUYAH_002141695 |
| CUYAH_002141707 | CUYAH_002141708 |
| CUYAH_002141741 | CUYAH_002141743 |
| CUYAH_002141752 | CUYAH_002141754 |
| CUYAH_002142122 | CUYAH_002142122 |
| CUYAH_002142125 | CUYAH_002142125 |
| CUYAH_002142127 | CUYAH_002142128 |
| CUYAH_002142138 | CUYAH_002142138 |
| CUYAH_002142175 | CUYAH_002142177 |
| CUYAH_002142762 | CUYAH_002142766 |
| CUYAH_002143493 | CUYAH_002143498 |
| CUYAH_002143532 | CUYAH_002143537 |
| CUYAH_002144497 | CUYAH_002144497 |
| CUYAH_002144677 | CUYAH_002144681 |
| CUYAH_002144749 | CUYAH_002144752 |
| CUYAH_002145350 | CUYAH_002145351 |
| CUYAH_002150828 | CUYAH_002150829 |
| CUYAH_002342766 | CUYAH_002342840 |
| CUYAH_002342889 | CUYAH_002342963 |
| CUYAH_002343882 | CUYAH_002343882 |
| CUYAH_002345429 | CUYAH_002345503 |
| CUYAH_002346014 | CUYAH_002346038 |
| CUYAH_002346073 | CUYAH_002346074 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Bates BegControl | Bates EndControl |
| --- | --- |
| CUYAH_002348686 | CUYAH_002348686 |
| CUYAH_002350547 | CUYAH_002350547 |
| CUYAH_002350571 | CUYAH_002350571 |
| CUYAH_002350946 | CUYAH_002350989 |
| CUYAH_002351132 | CUYAH_002351139 |
| CUYAH_002351140 | CUYAH_002351147 |
| CUYAH_002351169 | CUYAH_002351169 |
| CUYAH_002351174 | CUYAH_002351174 |
| CUYAH_002351192 | CUYAH_002351192 |
| CUYAH_002351196 | CUYAH_002351196 |
| CUYAH_002351199 | CUYAH_002351199 |
| CUYAH_002352742 | CUYAH_002352749 |
| CUYAH_002353932 | CUYAH_002353932 |
| CUYAH_002353952 | CUYAH_002353952 |
| CUYAH_002353954 | CUYAH_002353954 |
| CUYAH_002353958 | CUYAH_002353958 |
| CUYAH_002354121 | CUYAH_002354121 |
| CUYAH_002354202 | CUYAH_002354202 |
| CUYAH_002354513 | CUYAH_002354515 |
| CUYAH_002354571 | CUYAH_002354584 |
| CUYAH_002481811 | CUYAH_002481812 |
| CUYAH_002489290 | CUYAH_002489333 |
| CUYAH_002492118 | CUYAH_002492119 |

# Exhibit G

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*City of Cleveland v. AmerisourceBergen Drug Corporation, et al.*<br>Case No. 1:18-op-45132 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**PLAINTIFF CITY OF CLEVELAND'S
RESPONSES AND OBJECTIONS TO DISTRIBUTOR
DEFENDANTS' THIRD SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Case Management Order in *In re National Prescription Opiate Litigation*, No. 1:17-cv-2804 (Dkt No. 232), the City of Cleveland, ("Plaintiff") hereby responds to Distributor Defendants'[1] Second Set of Interrogatories (the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

**OBJECTIONS**

The following objections apply to each Interrogatory.  To the extent that certain specific objections are cited in response to an individual Interrogatory, those specific objections are provided because they are applicable to that specific Interrogatory and are not a waiver of the objections applicable to information falling within the scope of such Interrogatory.

1.      Plaintiff objects to each Interrogatory to the extent they are overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seeks to impose obligations or require actions beyond those required by the Rules of Civil

---

[1] The Distributor Defendants are AmerisourceBergen Drug Corporation, Cardinal Health, and McKesson Corporation (collectively, "Distributors").

Procedure, the ESI Protocol entered in this matter or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      Plaintiff objects to each Interrogatory to the extent they seek information restricted from dissemination pursuant to court order, statute or regulation. Further, Plaintiff's responses to the Interrogatories are not intended to waive, and does not constitute any waiver of, any objection to the admissibility, authenticity, competency or relevance of the information identified.

3.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement provided herein. All such objections and the grounds therefore are hereby reserved.

4.      The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

5.      Plaintiff objects to each Interrogatory to the extent Plaintiff has not yet completed its investigation of the facts relating to this action and has not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

6.      Plaintiff objects to each Interrogatory to the extent they purport to require Plaintiff to provide information that is in the public domain or otherwise available to Distributors as easily from other sources as from Plaintiff.

7.      Plaintiff objects to each Interrogatory to the extent they purport to state facts, assumptions, or characterizations that are disputed.

8.     Plaintiff objects to each Interrogatory to the extent they seek information more appropriately obtained through other methods of discovery.

9.     Plaintiff objects to each Interrogatory to the extent that they seek information that is proprietary or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

10.    Plaintiff objects to each Interrogatory to the extent they seek confidential investigative, personal, or health information in Plaintiff's possession, custody, or control (collectively, "Confidential Information").

11.    Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its objections and without waiver of any objection.

12.    Any response stating that Plaintiff will provide information shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control."

13.    Plaintiff objects to each Interrogatory to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions.  In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

14.    Plaintiff objects to each Interrogatory to the extent they seek information that is not within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff.

15.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

16.     Plaintiff intends to complete its responses by the time agreed upon by the parties for the completion of discovery, or by the date ordered by the Court. Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Interrogatory. All final decisions regarding whether any information will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of written discovery.

## NON-WAIVER

1.     Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this Action or any other action.

2.     If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of the objections stated herein, such information is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.     Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.     Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses.  Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 13**:

State the date(s) upon and the manner in which You first became aware that Prescription Opioids were being abused in Your geographic boundaries, that Prescription Opioids were being diverted in Your geographic boundaries and/or by Your residents, and that addiction to Prescription Opioids was occurring and/or increasing in Your geographic boundaries.

**Response to Interrogatory No. 13**:

Plaintiff objects to this Interrogatory in that the term "first became aware" is vague and ambiguous. Plaintiff cannot answer this question as posed.

**Interrogatory No. 14**:

State the number of pills or other dosage units of Prescription Opioids that were diverted from legitimate medical purposes in Your geographic boundaries, and the number of pills or other dosage units of Prescription Opioids that were dispensed for other than legitimate medical purposes in Your geographic boundaries for each year during the Timeframe, and describe how each number was calculated.

**Response to Interrogatory No. 14**:

Plaintiff objects to this Interrogatory as overly broad and unduly burdensome and because the term "legitimate medical purposes" is ambiguous.  Further responding, Plaintiff incorporates its amended response to Interrogatory No. 2, states that discovery and the ARCOS database analysis is ongoing related to this issue, and that Plaintiff will be producing expert reports pursuant to CMO No. 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 15:**

State the maximum number of pills or other dosage units of Prescription Opioids that should properly have been distributed in Your geographic boundaries for legitimate medical purposes during the Timeframe. In Your response, explain how You calculated that number, including any per capita, per patient, drug family or other grouping, or any other basis on which you rely.

**Response to Interrogatory No. 15:**

Plaintiff objects to this Interrogatory as calling for an expert opinion. Plaintiff's investigation is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 16:**

Identify every specific prescription that You believe, suspect, or contend was diverted or used—in whole or in part—for other than legitimate medical, scientific, research, or industrial purposes in Your geographical area. Include in your response: the date the prescription was written; the name(s) of the Controlled Substance(s) prescribed; the quantity of Controlled Substance(s) prescribed; the recipient of each prescription; the name of the prescriber; the name of the dispensing pharmacy, hospital, or clinic; the date the prescription was filled; whether any Defendant was involved in the Distribution of that Controlled Substance(s); whether the Controlled Substance(s) were distributed as part of a Suspicious Order (and if so what made the

order suspicious); and the reason(s) why you believe, suspect, or contend that all or part of the prescription was diverted.[2]

**Response to Interrogatory No. 16:**

Plaintiff objects to this Interrogatory as calling for an expert opinion. Plaintiff's investigation is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 17:**

To the extent not already identified in response to Interrogatory Number 16, identify every pharmacy, clinic, or hospital inside or outside Your geographic boundaries whose conduct with respect to Prescription Opioids You believe, suspect, or contend caused harm within Your geographic boundaries. For each such pharmacy, clinic, or hospital, provide all facts You know that support Your belief, suspicion, or contention, including (without limitation): the name of the pharmacy, clinic, or hospital; each prescription filled by the pharmacy, clinic, or hospital that You believe, suspect, or contend caused harm in Your geographic boundaries; the date that each such prescription was written; the name of the prescriber; the name of the recipient of the prescription; the name(s) of the Prescription Opioids prescribed; the quantity of Prescription Opioids prescribed; the date the prescription was filled; whether any Defendant was involved in the Distribution of that Controlled Substance(s); whether the Controlled Substance(s) were

---

[2] Distributor Defendants acknowledge that the Court has required Plaintiffs to provide some of this information by July 16, 2018. Distributor Defendants' request, however, is broader than the relevant provision of the CMO. And Defendants need the information they have requested more than one day in advance of the July 17, 2018 deadline for Defendants to add parties without leave of Court. *See* CMO 1 at 9. Defendants also require this information to conduct further discovery in Track One Cases

distributed as part of a Suspicious Order (and if so what made the order suspicious); and the reason(s) why You believe, suspect, or contend the prescription caused harm within Your geographic boundaries.

**Response to Interrogatory No. 17:**

Plaintiff objects that this Interrogatory is unduly burdensome to the extent it requests Plaintiff to identify each such pharmacy, clinic, or hospital. Plaintiff further objects to this request to the extent it calls for information in the Distributors' possession or control, or just as available to Distributors from third-party sources as it may be available to Plaintiff, and thus places an undue burden on Plaintiff to gather.

Subject to and without waiving all objections, Plaintiff just recently obtained the ARCOS database information and is still analyzing this information. Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will identify such pharmacies, clinics, or hospitals. In addition, Plaintiff's investigation of the wrongful conduct of Distributors including the identification of wrongful diversion of prescription opioids within the County and Plaintiffs' municipalities and townships is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 18:**

Specify each category of injury (e.g. increased cost of law enforcement, fire, emergency services, etc.) for which You claim damages in the Litigation and provide a computation of damages for each category of injury alleged. For each category of injury, identify all Persons with knowledge about such damages.

**<u>Response to Interrogatory No. 18</u>:**

Plaintiff objects to this Interrogatory to the extent that it calls for disclosure of Privileged and Confidential Information. Also, the Interrogatory is overly broad and unduly burdensome and seeks information beyond Plaintiff's possession, custody, and control. Further objecting, the Interrogatory contains a reference to the ambiguous phrase "category of injury."

Subject to and without waiving all objections, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will produce documents that identify Plaintiff's equitable and monetary relief.  In addition, Plaintiff's investigation of its costs, expenditures, damages, losses or harms caused by the Defendants is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO No. 1 and the Federal Rules of Civil Procedure.

Subject to and without waiving objections, Plaintiff identifies the following:

- Losses caused by the decrease in funding available for Plaintiff's public services for which funding was lost because it was diverted to other public services designed to address the opioid epidemic;

- Costs for providing healthcare and medical care for patients suffering from opioid-related addiction or disease, including overdoses and deaths;

- Costs of training emergency and/or first responders in the proper treatment of drug overdoses;

- Costs associated with providing police officers, firefighters, and emergency and/or first responders with naloxone – an opioid antagonist used to block the deadly effects of opioids in the context of overdose;

- Costs associated with emergency responses by police officers, firefighters, and emergency and/or first responders to opioid overdoses;

- Costs for providing mental-health services, treatment, counseling, rehabilitation services, and social services to victims of the opioid epidemic and their families;

- Costs associated with law enforcement and public safety relating to the opioid epidemic, including but not limited to attempts to stop the flow of opioids into local communities, to arrest and prosecute street-level dealers, to prevent the current opioid epidemic from spreading and worsening, and to deal with the increased levels of crimes that have directly resulted from the increased homeless and drug-addicted population;

- Costs associated with various public safety and health initiatives related to the opioid epidemic, such as:

    o Plaintiff's Division of Police's participation in the High Intensity Drug Trafficking Area (HIDTA), which tracks opioid use in the City;

    o Plaintiff's Division of Police's involvement in the Northern Ohio Law Enforcement Task Force (one Commander and three detectives from Plaintiff), which focuses on the heroin dealing;

    o The Drug Enforcement Agency (DEA) task force (including one narcotics officer from Plaintiff who specializes in pill investigations), which monitors heroin and fentanyl use in the region;

- o  The Homeland Security Investigations Task Force (one employee from Plaintiff, who has special FBI credentials);

- o  Plaintiff's participation, along with the ADAMHS Board, in a Law Enforcement Assisted Detox (LEAD) program. Partnering with Stella Maris, Rosary Hall and the Salvation Army, the ADAMHS Board began to pay the health insurance for drug overdose victims who could not afford their medical stay;

- o  Plaintiff's partnership with Metrohealth on Project DAWN.

- Costs associated with increased burden on Plaintiff's drug court;

- Costs associated with clean-up of public parks, spaces and facilities of needles and other debris and detritus of opioid addiction;

- Loss of tax revenue due to the decreased efficiency and size of the working population in Plaintiff's community and due to other impacts on property values and other tax generators for Plaintiff;

- Losses caused by decreased business investment and tax revenue;

- Plaintiff's contributions to the Alcohol, Drug Addiction, and Mental Health Services (ADAMHS) board, such as its $250,000 for substance abuse beds (in conjunction with Cuyahoga County);

- Increased public safety services, including but not limited to, training, investigations, staffing, jail expenses, dispatch services, task force as a result of the opioid epidemic;

- Plaintiff's Health Department costs related to the opioid epidemic, such as the Centerpoint Program, which provides services targeted to patients with substance abuse problems including opioid related matters;

- Costs associated with impact of opioid epidemic on Plaintiff's vehicle fleet;

- Costs need for the City to properly and adequately abate the nuisance created by the opioid epidemic.

As referenced above, Plaintiff's investigation of its damages caused by the Defendants is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO No. 1 and the Federal Rules of Civil Procedure.

Plaintiff will continue to produce documents that identify costs, expenditures, damages, losses, or harm for which Plaintiff seeks equitable or monetary relief.

Plaintiff reserves the right to supplement and amend this response upon further investigation.

**Interrogatory No. 19:**

Identify each Person whose use of Prescription Opioids or other drugs resulted in expenditures by You for which you seek damages. For each such person, provide the following information: a description of how each Person's use of Prescription Opioids or other drugs resulted in Your expenditures; the date of any such expenditures; the Controlled Substance(s) ingested by such Person; from whom such Person obtained the Controlled Substance(s) that caused his or her injury; which entity manufactured and sold the Controlled Substance(s) used by such Person; which Distributor Defendant, if any, distributed the Controlled Substance(s) used by

such Person; and whether the Controlled Substance(s) were distributed as part of a Suspicious Order (and if so what made the order suspicious).

**Response to Interrogatory No. 19:**

Plaintiff objects to this Interrogatory as grossly over-broad and unduly burdensome as propounded. Plaintiff objects because this Interrogatory seeks information not relevant to any party's claim or defense or the legal theories in this case. Subject to and without waiving objections, Plaintiff responds that Plaintiff is not representing the interests of any individuals who were harmed by opioids or the interests of any payor of opioid prescription costs; nor has Plaintiff alleged any False Claims Act counts or other claims that justify the burden of an Interrogatory this broad in scope.

Plaintiff objects to this Interrogatory because it is not proportional to the needs of the case considering (1) the lack of relevance or importance of the materials to the claims and defenses in this litigation, as described above, and (2) the substantial cost and burden to identify and describe responsive materials, which would cause substantial harm to the privacy interests and rights held by the individuals whose private medical files are the subject of this request. Plaintiff further objects to the extent this Interrogatory calls for Confidential Information not in the Plaintiff's possession and protected by privacy laws, including but not limited to, the federal Health Insurance Portability and Accountability Act ("HIPAA").

**Interrogatory No. 20:**

Identify each Person to whom You provided treatment or assistance related to Prescription Opioid addiction, abuse, or overdose during the Timeframe. For each such Person,

provide the following information: the name of the individual; the date of addiction, abuse, or overdose; the drug or drugs involved; which entity manufactured and sold the Controlled Substance(s) used by such Person which Distributor Defendant, if any, distributed Prescription Opioids used by the Person; and whether the Prescription Opioids used by the Person were distributed as part of a Suspicious Order (and if so what made the order suspicious); the nature of treatment or assistance provided; the cost of treatment or assistance provided; and the source of funding for treatment or assistance provided.

**Response to Interrogatory No. 20**:

Plaintiff objects to this Interrogatory as grossly over-broad and unduly burdensome as propounded. Plaintiff objects because this Interrogatory seeks information not relevant to any party's claim or defense or the legal theories in this case. Subject to and without waiving objections, Plaintiff responds that Plaintiff is not representing the interests of any individuals who were harmed by opioids or the interests of any payor of opioid prescription costs; nor has Plaintiff alleged any False Claims Act counts or other claims that justify the burden of an Interrogatory this broad in scope.

Plaintiff objects to this Interrogatory because it is not proportional to the needs of the case considering (1) the lack of relevance or importance of the materials to the claims and defenses in this litigation, as described above, and (2) the substantial cost and burden to identify and describe responsive materials, which would cause substantial harm to the privacy interests and rights held by the individuals whose private medical files are the subject of this request. Plaintiff further objects to the extent this Interrogatory calls for Confidential Information not in the Plaintiff's possession and protected by privacy laws, including but not limited to, the federal Health Insurance Portability and Accountability Act ("HIPAA").

**Interrogatory No. 21:**

Identify all children, including infants born addicted to opioids, for whom You incurred costs for which you seek damages. For each such Person, please provide the following: the name of such Person; the name of such Person's parent(s); the Controlled Substances possessed or ingested by such Person's parent(s); which entity manufactured and sold the Controlled Substance(s) used by such Person the source of the Controlled Substance possessed or ingested by such Person's parent(s); the date, nature, and cost of any services incurred as a result of such Person; which Distributor Defendant, if any, distributed the Controlled Substance possessed or ingested by such Person's parent(s); and whether the Controlled Substances were distributed as part of a Suspicious Order (and if so what made the order suspicious).

**Response to Interrogatory No. 21:**

Plaintiff objects to this Interrogatory as grossly over-broad and unduly burdensome as propounded. Plaintiff objects because this Interrogatory seeks information not relevant to any party's claim or defense or the legal theories in this case. Subject to and without waiving objections, Plaintiff responds that Plaintiff is not representing the interests of any individuals who were harmed by opioids or the interests of any payor of opioid prescription costs; nor has Plaintiff alleged any False Claims Act counts or other claims that justify the burden of an Interrogatory this broad in scope.

Plaintiff objects to this Interrogatory because it is not proportional to the needs of the case considering (1) the lack of relevance or importance of the materials to the claims and defenses in this litigation, as described above, and (2) the substantial cost and burden to identify and describe responsive materials, which would cause substantial harm to the privacy interests

and rights held by the individuals whose private medical files are the subject of this request. Plaintiff further objects to the extent this Interrogatory calls for Confidential Information not in the Plaintiff's possession and protected by privacy laws, including but not limited to, the federal Health Insurance Portability and Accountability Act ("HIPAA").

**Interrogatory No. 22:**

Identify all efforts You have made to recover expenditures related to Prescription Opioid abuse, misuse, or addiction in Your geographic boundaries from any entities or individuals who have been charged with criminal offenses relating to or caused by such abuse, misuse, or addiction, including, without limitation, pharmacists, pharmacies, doctors, clinics, drug dealers, drug traffickers, or drug trafficking organizations.

**Response to Interrogatory No. 22:**

Plaintiff objects that this Interrogatory is overly broad and unduly burdensome and seeks information beyond Plaintiff's possession, custody, and control. Subject to and without waiving all objections, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will produce documents that identify such investigations, arrests, or prosecutions.

Respectfully submitted,

*/s/Peter J. Mougey*
Peter J. Mougey
Jeff Gaddy
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
    RAFFERTY & PROCTOR, P.A.

16

316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Tel.: 850-435-7068
Fax: 850-436-6068
pmougey@levinlaw.com
jgaddy@levinlaw.com

Paul T. Farrell, Jr. (Ohio Bar No. 0070257)
GREENE, KETCHUM, FARRELL,
   BAILEY & TWEEL, LLP
419 - 11th Street (25701)/ P.O. Box 2389
Huntington, West Virginia 25724-2389
Tel.: 800-479-0053 or 304-525-9115
Fax: 304-529-3284
paul@greeneketchum.com

Peter H. Weinberger (Ohio Bar No. 0022076)
SPANGENBERG SHIBLEY & LIBER, LLP
1001 Lakeside Ave East, Suite 1700
Cleveland, OH 44114
Tel: 216-696-3232
Fax: 216-696-3924
pweinberger@spanglaw.com

Michael J. Fuller, Jr. (Ohio Bar No. 0090250)
MCHUGH FULLER LAW GROUP, PLLC
97 Elias Whiddon Rd.
Hattiesburg, MS  39402
Tel.: 601-261-2220
Fax: 601-261-2481
mike@mchughfuller.com

R. Edison Hill
HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC
NorthGate Business Park
500 Tracy Way
Charleston, WV  25311
Tel.: 304-345-5667
Fax: 304-345-1519
rehill@hpcbd.com

J. Burton LeBlanc, IV
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel.: 214-521-3605

Fax: 214-520-1181
bleblanc@baronbudd.com

Anthony J. Majestro
POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel.: 304-346-2889
Fax: 304-346-2895
amajestro@powellmajestro.com

*Counsel for Plaintiff City of Cleveland*


Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER, LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114-1149
Tel.: 216-696-3232
pweinberger@spanglaw.com

Steven J. Skikos
SKIKOS CRAWFORD SKIKOS & JOSEPH
One Sansome Street, Suite 2830
San Francisco, CA 94104
Tel: 415-546-7300
sskikos@skikoscrawford.com

Troy A. Rafferty
LEVIN PAPANTONIO THOMAS MITCHELL
   RAFFERTY & PROCTOR P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Tel: 805-435-7000
trafferty@levinlaw.com

*Liaison Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was served via electronic mail on the

individuals on the attached service list this 25th day of July, 2018.


*/s/Peter J. Mougey*
Attorney at Law

## SERVICE LIST

***Counsel for Defendants***

Robert A. Nicholas
Shannon E. McClure
REED SMITH, LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
rnicholas@reedsmith.com
smcclure@reedsmith.com

Alvin L. Emch
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
aemch@jacksonkelly.com

*Counsel for Defendant AmerisourceBergen Drug Corporation*

Enu Mainigi
F. Lane Heard
Steven M. Pyser
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
emainigi@wc.com
lheard@wc.com
spyser@wc.com

*Counsel for Defendant Cardinal Health, Inc.*

Mark H. Lynch
Geoffrey E. Hobart
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
mlynch@cov.com
ghobart@cov.com

Emily Johnson Henn
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
ehenn@cov.com

*Counsel for Defendant McKesson Corporation*

Steven A. Reed
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
steven.reed@morganlewis.com
*Counsel for Defendants Teva Pharmaceuticals USA, Inc.; Teva Pharmaceutical Industries, Ltd.;*
*Cephalon, Inc.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a*
*Watson Pharma, Inc.*

Charles C. Lifland
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
clifland@omm.com
*Counsel for Defendants Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals,*
*Inc.; n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen*
*Pharmaceuticals, Inc.; and Johnson & Johnson*

Mark S. Cheffo
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
mark.cheffo@dechert.com
*Counsel for Defendants Purdue Pharma L.P.; Purdue Pharma Inc.; and The Purdue Frederick*
*Company*

Daniel G. Jarcho
ALSTON & BIRD
950 F Street, NW
Washington, DC 20004
daniel.jarcho@alson.com
*Counsel for Defendant Noramco, Inc.*

Jonathan L. Stern
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
jonathan.stern@arnoldporter.com
*Counsel for Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*

Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
donna.welch@kirkland.com
*Counsel for Defendants Allergan PLC f/k/a Actavis PLS; Actavis, Inc.; and Watson Pharmaceuticals, Inc. n/k/a Actavis, Inc.*

Brien T. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
brien.oconnor@ropesgray.com
*Counsel for Mallinckrodt LLC; and Mallinckrodt PLC*


**<u>Liaison Counsel for Distributor Defendants</u>**

Enu Mainigi
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
emainigi@wc.com

Shannon McClure
REED SMITH, LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
smcclure@reedsmith.com

Geoffrey E. Hobart
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
ghobart@cov.com

**_Liaison Counsel for Manufacturer Defendants_**

Mark S. Cheffo
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
markcheffo@dechert.com

Carole Rendon
BAKERHOSTETLER
127 Public Square, Suite 2000
Cleveland, OH 44114
crendon@bakerlaw.com

**_Liaison Counsel for Chain Pharmacies_**

Kaspar J. Stoffelmayr
BARTLIT, BECK, HERMAN, PALENCHAR & SCOTT
54 West Hubbard Street, Suite 300
Chicago, IL 60654
kaspar.stoffelmayr@bartlit-beck.com

**_Liaison Counsel for Physician Defendants_**

Tyler Tarney
GORDON & REES, LLP
41 South High Street, Suite 240
Columbus, OH 43215
ttarney@grsm.com

# Exhibit H

# IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT CLEVELAND

|  |  |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL No. 2804 |
|  | ) |
|  | ) Case No. 17-md-2804 |
|  | ) |
| This document applies to: | ) Judge Dan Aaron Polster |
|  | ) |
| *City of Cleveland v. AmerisourceBergen Drug Corp.*, Case No. 18-OP-45132 | ) |
|  | ) |
|  | ) |

## *THE CITY OF CLEVELAND'S RESPONSES AND OBJECTIONS TO DISTRIBUTOR DEFENDANTS' FOURTH SET OF INTERROGATORIES TO PLAINTIFF*

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Case Management Order in *In re National Prescription Opiate Litigation*, No. 1:17-cv-2804 (Dkt No. 232), the City of Cleveland, ("Plaintiff") hereby responds to Distributor Defendants[1]' Fourth Set of Interrogatories (the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

## OBJECTIONS

The following objections apply to each Interrogatory. To the extent that certain specific objections are cited in response to an individual Interrogatory, those specific objections are provided because they are applicable to that specific Interrogatory and are not a waiver of the objections applicable to information falling within the scope of such Interrogatory.

1.     Plaintiff objects to each Interrogatory to the extent they are overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seeks to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the ESI Protocol entered in this matter or the Local Rules of the United States District Court of the Northern District of Ohio.

---

[1] The Distributor Defendants are AmerisourceBergen Drug Corporation, Cardinal Health, and McKesson Corporation (collectively, "Distributors")

2.      Plaintiff objects to each Interrogatory to the extent they seek information restricted from dissemination pursuant to court order, statute or regulation. Further, Plaintiff's responses to the Interrogatories are not intended to waive, and does not constitute any waiver of, any objection to the admissibility, authenticity, competency or relevance of the information identified.

3.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement provided herein. All such objections and the grounds therefore are hereby reserved.

4.      The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

5.      Plaintiff objects to each Interrogatory to the extent Plaintiff has not yet completed its investigation of the facts relating to this action and has not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

6.      Plaintiff objects to each Interrogatory to the extent they purport to require Plaintiff to provide information that is in the public domain or otherwise available to Distributors as easily from other sources as from Plaintiff.

7.      Plaintiff objects to each Interrogatory to the extent they purport to state facts, assumptions, or characterizations that are disputed.

8.      Plaintiff objects to each Interrogatory to the extent they seek information more appropriately obtained through other methods of discovery.

2

9.      Plaintiff objects to each Interrogatory to the extent that they seek information that is proprietary or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

10.     Plaintiff objects to each Interrogatory to the extent they seek confidential investigative, personal, or health information in Plaintiff's possession, custody, or control (collectively, "Confidential Information").

11.     Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its objections and without waiver of any objection.

12.     Any response stating that Plaintiff will provide information shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control."

13.     Plaintiff objects to each Interrogatory to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions. In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

14.     Plaintiff objects to each Interrogatory to the extent they seek information that is not within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff.

15.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

3

16.     Plaintiff intends to complete its responses by the time agreed upon by the parties for the completion of discovery, or by the date ordered by the Court. Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Interrogatory. All final decisions regarding whether any information will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of written discovery.

### NON-WAIVER

1.     Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this Action or any other action.

2.     If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of the objections stated herein, such information is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.     Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.     Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses. Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

### INTERROGATORIES

23.     Identify each Suspicious Order that you believe was shipped to Your geographic area by a Distributor Defendant during the time period for  which you seek damages in this lawsuit.  For each

order, identify the date the order was shipped, the medication shipped, the number of dosage units

shipped, the number of dosage units that you contend would have been permissible to ship, the reason

you believe the order was suspicious, the Distributor Defendant that shipped the allegedly Suspicious

Order, and the person or entity that placed the order.

**RESPONSE:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "each" "suspicious order[]" of opioids that each Distributer Defendant shipped. Plaintiff further objects that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

Subject to and without waiving objections, Plaintiff states that it continues to analyze the ARCOS data that has been produced in this litigation in multiple iterations and will provide liability expert reports in accordance with CMO 1 and the Federal Rules of Procedure.

24.    Identify all false and/or fraudulent information that You allege any Distributor Defendant

supplied to the Drug Enforcement Administration about Suspicious Orders as alleged in Paragraph 819

of the Second Amended Complaint.

**RESPONSE:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all false and fraudulent information" that each Distributor Defendant "supplied to the Drug Enforcement Administration about Suspicious Orders." Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the Distributor Defendants and/or third parties. Plaintiff further objects that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

Subject to and without waiving all objections, and as stated in the Second Amended Complaint, Distributor Defendants were aware of suspicious orders of prescription opioids and the diversion of prescription opioids into the illicit market and failed to report this information to the DEA in their mandatory reports and applications for production quotas.  Additionally, Plaintiff's investigation of Defendants' misconduct is ongoing and subject to Defendants' discovery responses, and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO No. 1 and the Federal Rules of Civil Procedure. Plaintiff further responds that although it has long been aware of individual instances of diversion, abuse, and addiction to opioids within its jurisdiction, as a result of Defendants' knowing and active concealment of the true nature of their conduct, Plaintiff lacked knowledge linking those diversion events to Defendants' improper marketing and distribution practices,

including but not limited to denying risks of addiction, the gross over supply and flooding of Ohio with opioid pills, and the nature of Defendants' conduct in unscrupulous marketing and distribution, and failure to report suspicious orders and/or monitor distribution of opioids.

25.     Identify with specificity each of the predicate acts of racketeering activity You allege each of AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation committed, conspired to commit, and/or aided and abetted the commission of for the time period you seek damages in this lawsuit.  For each predicate act, provide the date, the conduct that constituted the predicate act, the Defendant(s) involved, the reason that conduct constituted a predicate act of racketeering, and any other individuals/entities involved.

**RESPONSE:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "each of the predicate acts of racketeering activity" that each Distributor Defendant "committed, conspired to commit, and/or aided and abetted the commission of." Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the Distributor Defendants. Plaintiff further objects that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

Subject to and without waiving all objections, Plaintiff incorporates the allegations in its Second Amended Complaint and states that Plaintiff's investigation of Defendants' misconduct is ongoing and subject to Defendants' discovery responses, and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO No. 1 and the Federal Rules of Civil Procedure.

26.     Identify all facts and evidence that support Your contention that the Distributor Defendants agreed to implement similar tactics regarding their distribution of Prescription Opioids and in their refusal to report Suspicious Orders as alleged in Paragraph 882 of the Second Amended Complaint.

**RESPONSE:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "similar tactics regarding their distribution" without any definition of what is meant by "similar tactics."  Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the Distributor Defendants. Plaintiff further objects that

this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

Subject to and without waiving all objections, Plaintiff incorporates the allegations in its Second Amended Complaint and states that Plaintiff's investigation of Defendants' misconduct is ongoing and subject to Defendants' discovery responses, and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO No. 1 and the Federal Rules of Civil Procedure.

27.     Identify and describe each statement or omission relating to Prescription Opioids that were made or disseminated by any of the Manufacturer Defendants and that You allege the Distributor Defendants knew were false, misleading, unfair, deceptive or otherwise actionable and, for each, identify each specific Distributor Defendant who had such knowledge, explain the basis for your contention that it had such knowledge, state the specific act(s) or omission(s) that each Distributor Defendant took with such knowledge, and describe how such act(s) or omission(s) caused a quantifiable harm to You.

**RESPONSE:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "each statement or omission" that were made or disseminated by any of the Manufacturer Defendants. Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the Distributor and Manufacturer Defendants. Plaintiff further objects that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

Subject to and without waiving all objections, Plaintiff incorporates the allegations in its Second Amended Complaint and states that Plaintiff's investigation of Defendants' misconduct is ongoing and subject to Defendants' discovery responses. Plaintiff further directs Distributor Defendants to the following statements or omissions relating to Prescription Opioids that were made or disseminated by any of the Manufacturer Defendants that were false, misleading, unfair, deceptive or otherwise actionable:

| Falsehood | Explanation |
|---|---|
| The risk of addiction from chronic opioid therapy is low | When it launched OxyContin, Purdue cited in promotional and educational materials a single paragraph from a letter published in 1980 by Dr. Hershel Jick and Jane Porter in the New England Journal of Medicine as evidence of the low risk of addiction to opioids. In fact, Purdue included reference to this letter in a 1998 promotional video entitled, "I got my life back," in which Dr. Alan Spanos states, "In fact, the rate of addiction amongst pain patients who are |

| Falsehood | Explanation |
|---|---|
| | treated by doctors is much less than 1%." |
| | Until April 2012, Endo stated on its website that "…patients treated with prolonged opioid medicines usually do not become addicted;" a statement echoed on the website of its close affiliate, APF.  Endo also published and distributed multiple pamphlets and brochures downplaying addiction as it related to opioids, including but not limited to "Pain: Opioid Facts," "Understanding Your Pain: Taking Oral Opioid Analgesics" and "Pain: Opioid Therapy." |
| | Janssen claimed on its unbranded website – www.PrescribeResponsibility.com – that concerns about opioid addiction are "overestimated" and that "true addiction occurs only in a small percentage of patients."  Janssen also published a patient education guide entitled "Finding Relief: Pain Management for Older Adults" describing opioid addiction as a myth and that "many studies show opioids are *rarely* addictive…" which, until recently, was available online. |
| | Cephalon sponsored a 2007 publication from APF entitled "Treatment Options: A Guide for People Living with Pain" which taught that opioid addiction is rare. |
| | Actavis published material that claimed it is "less likely" to become addicted to opioids in those who "have never had an addiction problem."  The same publication notes that a need for a "dose adjustment" is the result of tolerance, and "not addiction."  A 2007 guide for prescribers published under Actavis's copyright states that Kadian is more difficult to abuse and less addictive than other opioids. |
| | Mallinckrodt created the C.A.R.E.S. (Collaborating and Acting Responsibly to Ensure Safety) Alliance in 2010 which promoted a book entitled "Defeat Chronic Pain Now!" in which opioids were stated to "rarely" cause addiction. |
| To the extent there is a risk of addiction, it can be easily identified and managed | Purdue and Cephalon sponsored the APF's publication, "Treatment Options: A Guide for People Living with Pain" in 2007, which falsely reassured patients that opioid agreements between doctors and patients can "ensure that you take the opioid as prescribed."  Janssen stated on its website – www.PrescribeResponsibly.com – that opioid addiction "can usually be managed" through tools such as opioid agreements between patients and doctors.  Purdue also sponsored a 2011 webinar taught by Dr. Lynn Webster entitled "Managing Patient's Opioid Use: Balancing the Need and Risk" wherein prescribers were told that screening |

| Falsehood | Explanation |
|---|---|
| | tools, urine tests, and patient agreements have the effect of preventing "overuse of prescriptions" and "overdose deaths." Endo paid for a 2007 supplement for continuing education credit in the "Journal of Family Practice" entitled "Pain Management Dilemmas in Primary Care: Use of Opioids" which recommended screening patients and the use of the Opioid Risk Tool. |
| Signs of addictive behavior are "psuedoaddiction," requiring more opioids | Cephalon, Endo and Purdue sponsored the Federation of State Medical Board's ("FSMB") publication entitled "Responsible Opioid Prescribing" in 2007 which stated that such behaviors as "requesting drugs by name," "demanding or manipulative behavior," seeing more than one doctor to obtain opioids and hoarding are all signs of "pseudoaddiction" (not genuine addiction).    Purdue published an unbranded pamphlet entitled "Clinical Issues in Opioid Prescribing" in 2005 which was circulated through 2007 and available on its website through 2013.    This pamphlet stated that "illicit drug use and deception" were not evidence of true addiction, but rather "pseudoaddiction." Endo sponsored a CME program in 2009 entitled "Chronic Opioid Therapy: Understanding Risk While Maximizing Analgesia," which promoted pseudoaddiction.    Janssen sponsored, funded and edited a website entitled "Let's Talk Pain" which in 2009 stated that pseudoaddiction "…refers to patient behaviors that may occur when pain is undertreated…" |
| Opioid withdrawal can be avoided by tapering | Endo sponsored an educational program entitled "Persistent Pain in the Older Adult" which claimed that withdrawal symptoms could be avoided by simply tapering a patient's opioid dose over ten days.    Similarly, Purdue sponsored APF's publication "A Policymaker's Guide to Understanding Pain & Its Management" which taught that "[s]ymptoms of physical dependence can often be ameliorated by gradually decreasing the dose of medication during discontinuation."    Neither Defendant explained the significant hardships associated with cessation of use. |
| Opioid doses can be increased without limit or greater risks | Purdue omitted the increased risk of respiratory distress and death from increasing opioid dosage from its 2010 "Risk Evaluation and Mitigation Strategy" for OxyContin.    Endo published on its website a patient education pamphlet entitled "Understanding Your Pain: Taking Oral Opioid Analgesics" that responds to the question, "If I take the opioid now, will it work later when I really need it?" with "The dose can be increased…You won't 'run out' of pain relief."    Purdue and Cephalon also sponsored APF's 2007 |

9

| Falsehood | Explanation |
|---|---|
| | "Treatment Options: A Guide for People Living with Pain" which taught patients that opioids have "no ceiling dose" and are therefore safer than NSAIDs. |
| Long-term opioid use improves functioning | Janssen promoted Duragesic through an ad campaign as improving a patient's functioning and work productivity. Janssen's "Let's Talk Pain" website featured a video interview claiming that opioids were what allowed a patient to "continue to function."  Similarly, Purdue ran a full-page ad for OxyContin in the Journal of the American Medical Association stating, "There Can Be Life With Relief" and implying that OxyContin would help users' function; however the FDA noted that Purdue failed to warn that patients could die from taking OxyContin.  Purdue also ran advertisements in medical journals in 2012 touting that OxyContin would help a "writer with osteoarthritis of the hands" work more effectively.  Since May 2011, Endo has distributed and made available on its website – www.Opana.com – a pamphlet implying that patients with physically demanding jobs would achieve long-term pain relief and functional improvement.  Mallinckrodt's website claims that "[t]he effective pain management offered by our [opioids] helps enable patients to stay in the workplace, enjoy interactions with family and friends, and remain an active member of society." |
| Alternative forms of pain relief pose greater risks than opioids | Purdue and Cephalon sponsored APF's publication entitled "Treatment Options: A Guide for People Living with Pain" warning of increased risks if NSAIDs are "taken for more than a period of months;" falsely attributing 10,000 to 20,000 deaths annually to NSAID overdoses when the figure is closer to 3,200.  In 2009, Janssen sponsored a publication entitled, "Finding Relief: Pain Mangement for Older Adults" which listed dose limitations as "disadvantages" of other pain medicines.  It also listed a number of serious health effects as disadvantages of NSAIDs while only listing "upset stomach or sleepiness" and constipation as disadvantages of opioids.  Purdue and Endo sponsored a CME issued by the AMA in 2003, 2007, 2010 and 2013 entitled "Overview of Management Options" which taught that NSAIDs and other drugs, but not opioids, are unsafe at high doses. |
| OxyContin provides twelve hours of pain relief | In 2000, Purdue advertised that OxyContin provides "Consistent Plasma Levels Over 12 Hours;" however the oxycodone does not enter the body at a linear rate, releasing a greater proportion upon administration and gradually tapering over 12 hours.  These 12-hour dosing |

| Falsehood | Explanation |
|---|---|
| | advertisements ran in the *Journal of Pain* in February 2005 and the *Clinical Journal of Pain* in 2006. |
| New formulations of certain opioids successfully deter abuse | Purdue presented an article in 2013 based on a review of data from poison control centers concluding that its ADF OxyContin can reduce abuse, but failed to acknowledge that abuse merely shifted to other drugs and that there were actually more harmful exposures to opioids after the reformulation.  In 2016, Dr. J. David Haddox, VP of Health Policy for Purdue, falsely claimed that the evidence does not show Purdue's ADF opioids are being abused in large numbers.

Endo's promotion of its Opana ER also tended to omit material facts according to a May 2012 letter from the FDA to Endo.  Endo submitted a citizen petition asking the FDA for permission to label Opana ER as abuse-resistant, and also went so far as to sue the FDA to force expedited consideration of this change.  Endo falsely promoted Opana ER as having been designed to be crush-resistent, knowing that this would (falsely) imply that it was actually crush-resistant and less likely to be abused (as stated in a June 14. 2012 press release).  Endo initiated journal advertisements that appear in April 2013 stating Opana ER was "designed to be crush resistant."

Likewise, Actavis copyrighted a guide for prescribers representing that Kadian is more difficult to abuse and less addictive than other opioids.  Mallinckrodt promoted both Exalgo and Xartemis XR as specifically formulated to reduce abuse, going so far as to state, "XARTEMIS XR has technology that requires abusers to exert additional effort to extract the active ingredient from the large quantity of inactive and deterrent ingredients." |

Additionally, as Plaintiff's investigation is ongoing, Plaintiff expects this topic will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with scheduling orders in this case and the Federal Rules of Civil Procedure.

28.     Describe how,  if at all,  You used the information contained in the Ohio Automated Rx Reporting System (OARRS), to address prescription drug diversion and abuse.

**RESPONSE:**

11

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests information on how Plaintiff "used the information contained in the Ohio Automated Rx Reporting System (OARRS), to address prescription drug diversion and abuse." Plaintiff objects to this Interrogatory to the extent that it calls for disclosure of Privileged or Confidential Information, information protected by HIPAA, or information more readily accessible to expert than fact witnesses. Moreover, the request potentially seeks information protected by attorney-work product or privilege.

Subject to and without waiving all objections, Plaintiff uses the Ohio Automated Rx Reporting System (OARRS) to assist with investigations of suspicious and/ or criminal activities by prescribers and patients. Specifically, upon making a valid request to the Ohio Board of Pharmacy, certain law enforcement personnel could obtain limited information from OARRS for use in connection with an active or open investigation. The information provided by the Ohio Board of Pharmacy includes information such as prescriber and prescription history. Law enforcement's access and use of information from OARRS is governed by statute and regulation. In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with scheduling orders in this case and the Federal Rules of Civil Procedure.

29.  For each Suspicious Order that You contend was shipped into Your geographic area by a Distributor Defendant, identify how, if at all, the Prescription Opioids were used following the shipment, including what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed, and if the Prescription Opioids were diverted, abused, or otherwise used improperly, who was involved in such diversion, abuse, or other improper use.

**RESPONSE:**

Plaintiff objects to this Interrogatory as vague and ambiguous in its use of the phrases "identify how, if at all, the Prescription Opioids were used following the shipment" including "what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner" as phrases that are subject to many interpretations. Plaintiff further objects to the Interrogatory as unduly burdensome and not proportional to the needs of this case because it would be virtually, if not literally, impossible for Plaintiff to "identify how, if at all, the Prescription Opioids were used following the shipment" including "what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed." Plaintiff objects to this interrogatory as overly burdensome and not proportional to the needs of the case in asking Plaintiff to identify for the Distributors —who are in a far better position to provide this information — exactly where they distributed opioids or "who was involved in such diversion,

abuse, or other improper use." Plaintiff further objects that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

The factual basis for Plaintiff's claims are specific and quite detailed: the conduct of the Manufacturing Defendants in engaging in a massive and misleading marketing campaign about opioids, coupled with the Distributor Defendants and National Retail Pharmacy Defendants' conduct in failing to monitor, regulate or restrict the improper distribution of opioids, are substantial causes of a public health crisis in Plaintiff's jurisdictions. This is not a collection of personal injury cases and Plaintiff does not seek any personal injury damages suffered by its residents; instead, the lawsuit seeks *inter alia* to abate a public nuisance affecting the communities as a whole and to compensate Plaintiff for the additional expenses caused by Defendants' conduct and from which each profited.

This case concerns whether the cumulative effect of Defendants' marketing and distribution practices created the opioid public health crisis that exists within Plaintiff's jurisdictions. Plaintiff's claims center on the aggregate effect of opioids on the public health, safety, and welfare within Plaintiff's jurisdictions. Plaintiff will prove its case through aggregate proof demonstrating the link between Defendants' unlawful and tortious conduct and the exponential increase in prescribing and diversion of opioids and the resulting harms on a jurisdiction-wide basis. The Defendants' actions were a substantial factor in the opioid epidemic.

Subject to and without waiving all objections, Plaintiff answers that it does not have complete information concerning how Prescription Opioids were used following shipment, including what percentage of the Prescription Opioids were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed, and if the Prescription Opioids were diverted, abused, or otherwise used improperly, who was involved in such diversion, abuse, or other improper use. Even if the Interrogatory was proper and reasonably circumscribed, much of the information that Plaintiff may have that would be arguably related to the Interrogatory relates to Defendants' conduct and Defendants' documents on Suspicious Order Reports that have yet to be produced.

Subject to and without waiving all objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff states that Plaintiff's current knowledge of this subject is reflected in Plaintiff's Corrected Second Amended Complaint. In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with scheduling orders in this case and the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ Ami J. Patel*
Stephen S. Zashin (Ohio Bar No. 0064557)
Ami J. Patel (Ohio Bar No.0078201)

13

Christopher S. Caspary (Ohio Bar No. 0091350)
ZASHIN & RICH CO. LPA
950 Main Avenue, 4th Floor
Cleveland, Ohio 44113
Tel: 216-696-4441
Fax: 216-696-1618
ssz@zrlaw.com
ajp@zrlaw.com
cdc@zrlaw.com

Paul T. Farrell, Jr. (Ohio Bar No. 0070257)
GREENE, KETCHUM, FARRELL,
BAILEY & TWEEL, LLP
419 - 11th Street (25701)
P.O. Box 2389
Huntington, WV 25724-2389
Tel.: 800-479-0053 or 304-525-9115
Fax: 304-529-3284
paul@greeneketchum.com

Peter J. Mougey
Jeff Gaddy
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
RAFFERTY & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Tel.: 850-435-7068
Fax: 850-436-6068
pmougey@levinlaw.com
jgaddy@levinlaw.com

Michael J. Fuller, Jr. (Ohio Bar No. 0090250)
MCHUGH FULLER LAW GROUP, PLLC
97 Elias Whiddon Rd.
Hattiesburg, MS  39402
Tel.: 601-261-2220
Fax: 601-261-2481
mike@mchughfuller.com

R. Edison Hill
HILL, PETERSON, CARPER,
BEE & DEITZLER, PLLC
NorthGate Business Park 500 Tracy Way
Charleston, WV 25311
Tel.: 304-345-5667
Fax: 304-345-1519

14

rehill@hpcbd.com

J. Burton LeBlanc, IV
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel.: 214-521-3605
Fax: 214-520-1181
bleblanc@baronbudd.com

Mark Pifko
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Los Angeles, CA 91436
Tel.: 818-839-2333
Fax: 214-520-1181
mpifko@baronbudd.com

Anthony J. Majestro
POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel.: 304-346-2889
Fax: 304-346-2895
amajestro@powellmajestro.com

*Counsel for Plaintiff City of Cleveland*

Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER, LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114-1149
Tel.: 216-696-3232
pweinberger@spanglaw.com

Steven J. Skikos
SKIKOS CRAWFORD SKIKOS & JOSEPH
One Sansome Street, Suite 2830
San Francisco, CA 94104
Tel: 415-546-7300
sskikos@skikoscrawford.com

Troy A. Rafferty
LEVIN PAPANTONIO THOMAS MITCHELL
RAFFERTY & PROCTOR P.A.
316 S. Baylen Street, Suite 600

15

Pensacola, FL 32502
Tel: 805-435-7000
trafferty@levinlaw.com

*Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served via electronic mail

on the individuals on the attached service list this 31st day of August, 2018.


*/s/ Ami J. Patel*_____
Ami J. Patel (Ohio Bar No.0078201)


## SERVICE LIST

***Counsel for Defendants***

Robert A. Nicholas
Shannon E. McClure
REED SMITH, LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
rnicholas@reedsmith.com
smcclure@reedsmith.com

Alvin L. Emch
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
aemch@jacksonkelly.com

*Counsel for Defendant AmerisourceBergen*
*Drug Corporation*

Enu Mainigi
F. Lane Heard
Steven M. Pyser
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
emainigi@wc.com
lheard@wc.com
spyser@wc.com

*Counsel for Defendant Cardinal Health, Inc.*

Mark H. Lynch
Geoffrey E. Hobart
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
mlynch@cov.com
ghobart@cov.com


Emily Johnson Henn
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
ehenn@cov.com

*Counsel for Defendant McKesson
Corporation*


Steven A. Reed
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
steven.reed@morganlewis.com
*Counsel for Defendants Teva
Pharmaceuticals
USA, Inc.; Teva Pharmaceutical Industries,
Ltd.; Cephalon, Inc.; Watson Laboratories,
Inc.; Actavis LLC; and Actavis Pharma, Inc.
f/k/a Watson Pharma, Inc.*


Charles C. Lifland
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
clifland@omm.com
*Counsel for Defendants Janssen
Pharmaceuticals, Inc.; Ortho-McNeil-
Janssen Pharmaceuticals, Inc.; n/k/a
Janssen Pharmaceuticals, Inc.; Janssen
Pharmaceutica, Inc. n/k/a Janssen
Pharmaceuticals, Inc.; and Johnson &
Johnson*

18

Mark S. Cheffo DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
mark.cheffo@dechert.com
*Counsel for Defendants Purdue Pharma*
*L.P.; Purdue Pharma Inc.; and The Purdue*
*Frederick Company*

Daniel G. Jarcho
ALSTON & BIRD
950 F Street, NW
Washington, DC 20004
daniel.jarcho@alson.com
*Counsel for Defendant Noramco, Inc.*

# Exhibit I

MotleyRice®
LLC
ATTORNEYS AT LAW
www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

401 9th St. NW, Suite 1001
Washington, DC 20004
**o.** 202.232.5504   **f.** 202.384.9622

**Linda Singer**
*Licensed in DC, NY*
direct:  202.386.9626
lsinger@motleyrice.com

October 3, 2018

**VIA E-MAIL**

Paul Boehm (pboehm@wc.com)
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC 20005-5901

     Re:     Distributor Defendants' Fourth Set of Interrogatory Nos. 23, 29, 24, 25, 26, 27
           (CT1 Bellwether Response)

Dear Paul:

We write on behalf of the CT1 bellwethers County of Summit, City of Akron, County of Cuyahoga and City of Cleveland ("Plaintiffs") in response to your September 10, 2018 letter ("Sept. 10, 2018 Letter") on behalf of the Distributor Defendants and further to our meet-and-confer efforts.  By responding below, Plaintiffs explicitly reserve all objections made in their Responses to the Distributor Defendants' Fourth Set of Interrogatories.  For ease of reference, our responses track the format of your letter.

**Interrogatory No. 23**:  **Identify each Suspicious Order that you believe was shipped to Your geographic area by a Distributor Defendant during the time period for which you seek damages in this lawsuit. For each order, identify the date the order was shipped, the medication shipped, the number of dosage units shipped, the number of dosage units that you contend would have been permissible to ship, the reason you believe the order was suspicious, the Distributor Defendant that shipped the allegedly Suspicious Order, and the person or entity that placed the order.**

**Interrogatory No. 29**:  **For each Suspicious Order that You contend was shipped into Your geographic area by a Distributor Defendant, identify how, if at all, the Prescription Opioids were used following the shipment, including what percentage of the Prescription Opioids that were diverted, abused, used for legitimate medical purposes, used in some other manner, or destroyed, and if the Prescription Opioids were diverted, abused, or otherwise used improperly, who was involved in such diversion, abuse, or other improper use.**

Paul Boehm, Esquire
October 3, 2018
Re: Distributor Defendants' Fourth Set of Interrogatory Nos. 23, 29, 24, 25, 26, 27 (CT1
    Bellwether Response)
Page 2

As a preliminary matter, the Distributor Defendants' requests demanding identification of suspicious orders are premature and should be deferred until closer to the end of discovery because Plaintiffs' responses necessarily require discovery from Defendants and expert opinion. *See Lincoln Elec. Co. v. Travelers Cas. & Sur. Co.*, No. 1:11CV2253, 2013 U.S. Dist. LEXIS 189111, at *188-89 (N.D. Ohio Feb. 4, 2013) ("There is considerable authority for the view that the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period."). Distributor Defendants "must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 338-39 (N.D. Cal. 1985). Distributor Defendants have failed to do so.

The Federal Rules of Civil Procedure allow courts to defer answers to contention interrogatories because they "may create disputes between the parties which are best resolved after much or all of the other discovery has been completed." *Francis v. Lakewood Eng'g & Mfg. Co. v. Lakewood Eng'g & Mfg. Co.*, No. 05-2429 MaV, 2006 U.S. Dist. LEXIS 102921, at *7-8 (W.D. Tenn. July 18, 2006); *see also United States v. Quebe*, No. 3:15-cv-294, 2017 U.S. Dist. LEXIS 9005, at *43 (S.D. Ohio Jan. 23, 2017) (citing Fed. R. Civ. P. 33(b) Advisory Committee's Note (1970)). The primary purpose of contention interrogatories, such as Interrogatory Nos. 23 and 29, "is to narrow the issues for trial rather than providing the foundation for substantial follow-on discovery." *Lincoln Elec.*, 2013 U.S. Dist. LEXIS 189111, at *188-89 (quoting *Ross v. Abercrombie & Fitch Co.*, Nos. 2:05-cv-0819, 2:05-cv-0848, 2:05-cv-0879, 2:05-cv-0893, 2:05-cv-0913, 2:05-cv-0959, 2010 U.S. Dist. LEXIS 144383, at *10 (S.D. Ohio Feb. 4, 2010)). Deferring responses is particularly appropriate here given Defendants' failure to produce many of the documents that would likely to be responsive to these Interrogatories.

Notwithstanding the above, Plaintiffs identified approximately 40 drugs that they believe may have been shipped to their geographic areas as part of a suspicious order and identified numerous pharmacies within their respective jurisdictions that they believe made suspicious orders. To the extent Distributor Defendants seek additional information, as we have repeatedly explained, Plaintiffs do not have within their possession, custody, or control many, if not most, of the documents that show the information the Distributor Defendants seek in Interrogatory Nos. 23 and 29. It was (and remains) the responsibility of Defendants, including the Distributor Defendants, to identify suspicious orders. Despite this, Plaintiffs understand that Defendants have failed to produce much of this information. As these documents are produced to Plaintiffs, we will work to identify documents responsive to these Interrogatories and supplement our responses in a timely manner. The sooner Defendants, including the Distributor Defendants, produce documents

Paul Boehm, Esquire
October 3, 2018
Re:  Distributor Defendants' Fourth Set of Interrogatory Nos. 23, 29, 24, 25, 26, 27 (CT1
      Bellwether Response)
Page 3

responsive to Plaintiffs' document requests that go to this issue, the sooner Plaintiffs will be able
to amend their responses.

With respect to documents and information obtained by Plaintiffs from persons or entities other
than Defendants, Plaintiffs' views regarding what may or may not constitute suspicious orders are
Plaintiffs' opinions, not facts, and are thus outside the scope of fact discovery.  Nor are Plaintiffs
pursuing claims on behalf of individuals.  Plaintiffs will prove their case using statistical modelling
and aggregate data, which will be provided to the Distributor Defendants accordingly.  Far from
being "irrelevant," Sept. 10, 2018 Letter 2, courts routinely permit aggregate proof in this format.
*See In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 42 (1st Cir. 2013) ("[C]ourts have
long permitted parties to use statistical data to establish causal relationships.").

Finally, contrary to your assertion that Plaintiffs "cannot wait until the close of fact discovery to
reveal the factual basis of its claims," Sept. 10, 2018 Letter 2, Distributor Defendants are fully
aware of the factual bases of the allegations through the operative complaint, the dismissal of
which has been fully briefed.  Plaintiffs have never stated that they will only produce additional
documents responsive to these Interrogatories only after the close of fact discovery.  To the
contrary, to the extent documents responsive to this Interrogatory have been or will be produced
to Plaintiffs, Plaintiffs have produced and will continue to produce those documents to Distributor
Defendants and have or will supplement their Responses to identify responsive documents by
Bates number as soon as possible.  To demand production prior to collection, much less analysis,
is contrary to the purposes of the MDL.

**Interrogatory No. 24: Identify all false and/or fraudulent information that You allege any
Distributor Defendant supplied to the Drug Enforcement Administration about Suspicious
Orders as alleged in Paragraph 819 of the Second Amended Complaint.**

For the reasons described above, Distributor Defendants' request that Plaintiffs identify false
and/or fraudulent information is premature.  Accordingly, Distributor Defendants' assertion that
by objecting to this Interrogatory Plaintiffs are failing to "identify[] the factual basis of its claim
after the close of discovery," Sept. 10, 2018 Letter 3, is false.  The Distributor Defendants are fully
aware of the factual bases of the claims asserted through the operative complaint and briefing
thereon.

As with Interrogatory Nos. 23 and 29, Plaintiffs are not waiting until the close of discovery to
respond to this Interrogatory.  To the contrary, Plaintiffs have provided Distributor Defendants
with the information reasonable available to them and will continue to update their responses as
discovery proceeds.  What Plaintiffs cannot do is provide complete responses without document

Paul Boehm, Esquire
October 3, 2018
Re:  Distributor Defendants' Fourth Set of Interrogatory Nos. 23, 29, 24, 25, 26, 27 (CT1
      Bellwether Response)
Page 4

production from Defendants, and Plaintiffs believe that many of documents and information responsive to this Interrogatory are in the possession, custody, or control of Defendants and have not yet been produced to Plaintiffs.   The sooner such documents are produced, the sooner they will be identified in response to this Interrogatory. In addition, Plaintiffs are in the process of reviewing the ARCOS database and has already provided or will provide responsive, non-privileged documents or information responsive to this Interrogatory and will supplement their responses to this Interrogatory by identifying responsive documents by Bates number accordingly. Combined with Plaintiffs' expert report, the Distributor Defendants will have the access to the information they seek in this Interrogatory in due course.

**Interrogatory No. 25: Identify with specificity each of the predicate acts of racketeering activity You allege each of AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation committed, conspired to commit, and/or aided and abetted the commission of for the time period you seek damages in this lawsuit. For each predicate act, provide the date, the conduct that constituted the predicate act, the Defendant(s) involved, the reason that conduct constituted a predicate act of racketeering, and any other individuals/entities involved.**

The Complaint goes to great length to identify in detail the predicate acts of the Distributor Defendants.  That said, as we have explained, Plaintiffs reiterate their objections to the use of the term "predicate acts of racketeering activity" in Interrogatory No. 25 to extent it calls for a legal conclusion as opposed to an allegation of predicate acts.

Defendants maintain that they are entitled to responses to these interrogatories because they need to know what they are being sued for so they can mount a defense.  That argument rings hollow.  Defendants are attempting to use the discovery process to circumvent the motion to dismiss process.  Defendants' argument on RICO predicate acts (No. 25) and false statements or omissions (No. 27, supra) are nothing more than a re-hash of the specificity arguments they raised in their motions to dismiss under Rule 9(b).  As Plaintiffs argued in response to those motions, the complaint is sufficiently particular and it certainly provides what is necessary for them to comprehend and defend against the allegations.  The Court will resolve that dispute when a ruling is issued.  If the Court denies Defendants' arguments, the Court will have found that the pleading was sufficient to put Defendants on notice of the claims.  To demand additional details on predicate acts or false statements or omissions – prior to fact discovery – ignores the requirements of federal rules.

Paul Boehm, Esquire
October 3, 2018
Re: Distributor Defendants' Fourth Set of Interrogatory Nos. 23, 29, 24, 25, 26, 27 (CT1
Bellwether Response)
Page 5

**Interrogatory No. 26: Identify all facts and evidence that support Your contention that the Distributor Defendants agreed to implement similar tactics in their refusal to report Suspicious Orders as alleged in Paragraph 882 of the Second Amended Complaint.**

Notwithstanding, as detailed above, Plaintiffs believe that documents and information responsive to this Interrogatory are in the possession, custody, or control of Defendants, much of which has yet to be produced to Plaintiffs. Plaintiffs have already provided or will provide responsive, non-privileged documents or information responsive to these Interrogatories and will supplement their responses accordingly by identifying responsive documents by Bates number. Given it is Defendants who have failed to produce the documents that would allow an even more detailed response to this Interrogatory than that provided, Defendants should be required to prioritize document productions that contain documents responsive to these Interrogatories so they may be reviewed by Plaintiffs and responses to these Interrogatories amended accordingly.

**Interrogatory No. 27: Identify and describe each statement or omission relating to Prescription Opioids that were made or disseminated by any of the Manufacturer Defendants and that You allege the Distributor Defendants knew were false, misleading, unfair, deceptive or otherwise actionable and, for each, identify each specific Distributor Defendant who had such knowledge, explain the basis for your contention that it had such knowledge, state the specific act(s) or omission(s) that each Distributor Defendant took with such knowledge, and describe how such act(s) or omission(s) caused a quantifiable harm to You.**

Despite the premature nature of this Interrogatory (*see supra*), this Interrogatory is improper because it calls for a legal conclusion and for the reasons stated in response to No. 25. It is well settled that opinions and legal conclusions cannot be required by interrogatory. *Payer, Hewitt & Company v. Bellanca Corp.*, 26 F.R.D. 219, 222 (D. Del. 1960). *See also Zinsky v. New York Central R.R. Co.*, 36 F.R.D. 680, 681 (N.D. Ohio 1964) ("[I]nterrogatories may not extend to issues of 'pure law.'").

Despite this, Plaintiffs have directed Defendants to numerous statements and omissions that they allege were false, misleading, unfair, deceptive or otherwise actionable and that were made or disseminated by the Manufacturer Defendants and the reasons why those statements and omissions were false, misleading, unfair, deceptive or otherwise actionable. With respect to Distributor Defendants' request that Plaintiffs identify which specific Distributor Defendants had knowledge of whether any statements were false, misleading, unfair, deceptive or otherwise actionable, the Interrogatory asks for information within the possession, custody, or control of the Defendants. As discussed above, Distributor Defendants continue to put the cart before the horse in requesting

Paul Boehm, Esquire
October 3, 2018
Re:  Distributor Defendants' Fourth Set of Interrogatory Nos. 23, 29, 24, 25, 26, 27 (CT1
     Bellwether Response)
Page 6

Plaintiffs identify documents and information before Defendants have produced responsive documents to Plaintiffs.  As with the other disputes addressed herein, this is largely a dispute over timing:  Plaintiffs have already represented they will amend their response to this Interrogatory as discovery proceeds and Defendants produce the documents that will enable Plaintiffs to make a more substantive response.

Finally, to the extent the Interrogatory seeks information about how the acts and omissions "caused harm to the City," Sept. 10, 2018 Letter 4, the computation of damages, monetary sums, and the like is a topic uniquely for expert discovery.  Plaintiffs will provide its expert report(s) at the relevant time.

Sincerely,

/s/ Linda Singer

Linda Singer
Jodi Flowers
Anne Kearse
*Counsel for Plaintiffs the County of Summit, Ohio
and the City of Akron, Ohio*

Mark P Pifko
Jeff Gaddy
*Counsel for Plaintiffs the City of Cleveland, Ohio*

Hunter Shkolnik
Salvatore Badala
Frank Gallucci
*Counsel Plaintiffs the City of Cuyahoga, Ohio*

cc:    Peter Mougey. Esq.
       All Plaintiffs' Counsel
       All Defendants' Counsel