# Lieff Cabraser Heimann& Bernstein

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

December 3, 2018

Paulina do Amaral
Partner
pdoamaral@lchb.com

**VIA E-MAIL DAVID@SPECIALMASTER.LAW**

Special David Cohen
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH  44113-1837

RE:  *In re: National Prescription Opiate Litigation, MDL No.* 2804 -
Distributor Defendants' Motion to Compel re: Interrogatories 19-21 & 29

Dear Special Master Cohen:

I write in response to the letter dated November 8, 2018 from Paul Boehm ("Boehm Letter") seeking to compel further answers to Distributor Defendants' Interrogatory Nos. **19, 20, 21,** and **29**.  No further disclosures are required.  Defendants' request attempts to reargue Discovery Ruling No. 1 (Doc. #606) ("DR1"), and Discovery Ruling No. 5  (Doc. #1027) ("DR5"), and ignores the fact that the Bellwether Plaintiffs (hereinafter "Plaintiffs") have already made substantial productions on several of these topics. Moreover, the information sought regarding the identity of children born addicted who were placed in foster care, is barred from disclosure by state and federal protections. Finally, Defendants request regarding Interrogatory 29 is overbroad and unduly burdensome on its face.

**Interrogatory 19**

Distributor Interrogatory 19 asks for identification of persons "whose use of Prescription Opioids or other drugs resulted in expenditures by You for which you seek damages."   Although Plaintiffs stand by their objections to Interrogatory 19, the

1

Special David Cohen
December 3, 2018
Page 2

point is moot because Plaintiffs have already produced thousands of documents identifying individuals whose use or abuse of opioids resulted in governmental expenditures, and also provided the information sought in response to Manufacturer Interrogatory 7, DR5 at 3, and Pharmacy Interrogatory 3, DR5 at 5.

Plaintiffs have made extensive productions of documents identifying individuals, including: medical examiner's records (toxicology reports, autopsy reports, examiner worksheets, death certificates); court records with full case files; police reports; investigators' reports with the full investigative files; EMS incident reports; the medical examiner's database; a dispatch database produced with all relevant incidences for police, fire and sheriff emergency responses; prosecutors' files; sheriff's office files; workers' compensation; department of children and family services spreadsheet; department of health and human services information; and data from the jail management system, among others. Given these productions and the court's previous rulings no further production is required.

Additionally Distributors' Interrogatory No. 19 effectively seeks a subset of information already provided in response Manufacturer Interrogatory 7 and Pharmacy Interrogatory 3. Manufacturer Interrogatory 7 asked for identification of persons "who allegedly became addicted to any substance or was otherwise harmed as a result of any prescription of an opioid(s) in [Plaintiff's jurisdiction]," while Pharmacy Interrogatory 3 asked for identification of prescriptions "the filling of which caused or led to harm for which you seek to recover in this case." Together, these Interrogatories required Plaintiffs to identify persons harmed by opioid prescriptions *and* persons whose

Special David Cohen
December 3, 2018
Page 3

prescriptions resulted in damages incurred and being claimed by Plaintiffs.  In

Discovery Ruling 5, the Special Master modified Manufacturer Interrogatory 7 and

Pharmacy Interrogatory 3, so that, instead of identifying *all* such persons or

prescriptions, Plaintiffs were permitted to identify 300 persons and 500 prescriptions.

These modifications were upheld by the Court. Doc. #1047.[1]  Because Distributor

Interrogatory 19 seeks the same information, the same limitations should apply.

Moreover, because Plaintiffs have already answered these Interrogatories, no further

answers are required.

   The Distributors argue that Distributor Interrogatory 19 is not the same as

Manufacturer Interrogatory 7, because Manufacturer Interrogatory 7 pertains to

persons who were harmed, while Distributor Interrogatory 19 seeks identification of

persons whose harm resulted in expenditures by each Plaintiff.  But Distributors ignore

that, in addition to answering Manufacturer Interrogatory 7, Plaintiffs *also* answered

Pharmacy Interrogatory 3.  Pharmacy Interrogatory 3 specifically asks about

prescriptions that led to harm *for which Plaintiffs seek to recover*.  It is, therefore,

specifically tied to Plaintiffs' damages in a way that, standing alone, Manufacturer

---

[1] Plaintiffs note as well that, through Distributor Interrogatory 19 and 21, Defendants are also seeking to re-litigate the issues decided by the Special Master in the very first discovery ruling, DR1, dated June 11, 2018.  In that ruling, the Special Master addressed Defendants' demand that Plaintiffs produce "highly detailed information related to all individuals who received or were harmed by opioids." The Special Master directed that "if Plaintiffs are correct that statistical and aggregate evidence is sufficient, then Plaintiffs must now produce all available statistical and aggregate evidence, and enough supporting particulars to allow the Court and Defendants and the parties' experts to understand the fundamental bases for those statistics and aggregated data; *but Plaintiffs need not produce all discovery regarding every patient or every opioid prescription.*" DR1 at 4-5 (emphasis added).  Given that you have already held that Plaintiffs need not provide specific information about individuals who were harmed by opioids, Defendants should not be able to obtain indirectly, through Distributor Interrogatory 19, what you have already found they were not entitled to obtain directly.

Special David Cohen
December 3, 2018
Page 4

Interrogatory 7 might not be. Although Pharmacy Interrogatory 7 asks for identification of "prescriptions," while Distributor 19 asks for identification of "persons," the distinction is irrelevant, because each prescription is issued to a person.  Indeed, in responding to Pharmacy Interrogatory 7, Plaintiffs in fact identified persons and, where possible, the prescriptions that caused harm.  Thus, Plaintiffs have already identified 500 persons whose prescriptions led to *Plaintiffs' damages,* precisely the information the Distributors argue they are seeking.  Plaintiffs should not be required to relitigate the same issues and answer the same questions, over and over, because Defendant can come up with slight variations in emphasis or wording.

**Interrogatory 20**

Interrogatory No. 20 instructs Plaintiffs to "[i]dentify each Person to whom You provided treatment or assistance related to Prescription Opioid addiction, abuse, or overdose during the Timeframe."  As noted above, Plaintiffs have produced documents and entire databases identifying individuals whom were treated for opioid overdose by EMS, fire or police personnel.

To the extent Distributor Defendants demand further information regarding Plaintiffs' care of individuals due to their use of opioids, federal regulations bar such disclosure.  Title 42, Part 2 of the Code of Federal Regulations ("Part 2") precludes identification of individuals to whom Plaintiffs "provided treatment or assistance related to Prescription Opioid addiction, abuse, or overdose" outside of these circumstances.  As has been discussed in previous submissions to the Court, Part 2 is a broad regulation barring disclosure of any "records" maintained by a "Part 2 program"

Special David Cohen
December 3, 2018
Page 5

that "[w]ould identify a patient as having or having had a substance abuse disorder either directly, by reference to publicly available information, or through verification of such identification by another person."  42 C.F.R. § 2.12(a).  Unauthorized disclosure can result in criminal penalties.  42 C.F.R. § 2.13.

The regulations define "Part 2 program" to mean "a federally assisted program."  42 C.F.R. § 2.11.  The definition of "federally assisted program" includes substance abuse programs that are "[c]onducted by a . . . local government unit which through general or special revenue sharing or other forms of assistance, receives federal funds which could be (but are not necessarily) spent for the substance use disorder program."  42 C.F.R. § 2.12(b)(3)(ii).  Each of the Bellwether Plaintiffs receive federal assistance, including in the form of SAMHSA grants, and therefore qualify as "Part 2 programs."

Judge Polster already recognized in his November 21 Order that Part 2 precluded disclosure of certain claims data.  Doc. #1147.  Identification of individuals whom received "treatment or assistance related to Prescription Opioid addiction" from the Plaintiffs is no different.  Identifying these individuals would squarely violate the Part 2 regulations barring disclosure of such information.

Tellingly, despite months of conversations concerning this topic and despite briefing in other contexts, Distributor Defendants do not address Part 2 in their November 8 letter.  Instead, they argue that the information is purportedly "highly

Special David Cohen
December 3, 2018
Page 6

relevant." But Part 2 does not contain an exception for "highly relevant" information.[2] Rather, any Court order authorizing disclosure of Part 2 records in a civil case must, among other things, provide the individuals whose records will be disclosed with "adequate notice" and "[a]n opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence" concerning such disclosure.  42 C.F.R. § 2.64(b).  As has been previously argued, it would be administratively impossible to implement such a regime in this case and preserve the trial date.

## Interrogatory 21

Interrogatory No. 21 instructs the Plaintiffs to "[i]dentify all children, including infants born addicted to opioids, for whom You incurred costs for which you seek damages" and then to provide associated information.  As in the case of Interrogatory 19, Interrogatory 21 similarly seeks to relitigate issues already addressed

---

[2] Despite their protestations to the contrary, Defendants again attempt to relitigate the question of proximate cause and whether individualized proof is appropriate.  *Boehm Ltr.* at 4.  Defendants argue Plaintiffs must first identify the each particular individual's abuse of opioids and "connect the dots" between those individuals and each suspicious order, citing to cases addressing causation questions on motions to dismiss.  *Id.*  Of course, in doing so, Defendants ignore the Report and Recommendation of Magistrate Judge Ruiz.  Doc. #1025.  *Kanu v. Siemens* is a particularly strange choice to support their discovery requests given that *Kanu* is a *pro se* case in which the court *sua sponte* inquired whether plaintiffs' *in forma pauperis* status should be revoked because the complaint was without basis.  2018 WL 776274 (S.D. Ohio Feb. 8, 2018).  The court ultimately deemed dismissal appropriate where the complaint was "'totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open for discussion.'" *Id.* at *6 (citing *Apple v. Glenn*, 183 F.3d 477, 479).  Given Magistrate Judge Ruiz's ruling, it cannot be said that Plaintiffs in their 300+ page complaints here, have "fail[ed] to connect the dots, in any plausible way" as the court found in *Kanu.  Id.* at *6.  Nor does *Grewal v. Purdue Pharma, LP,* 2018 WL 4829660 (NJ Super. Oct. 2) provide support Defendants' position that "each of plaintiffs' alleged damages [in Ohio] could only have resulted from a particular individual's abuse of opioids."  *Boehm Ltr.* at 4.  In *Grewal*, also decided on motions to dismiss, the court confronted only *New Jersey* law claims and concluded that the New Jersey Product Liability Act subsumed the plaintiffs' public nuisance claims.  2018 WL 4829660 at *17. Again, Distributors fail to acknowledge the distinct procedural posture here in which Magistrate Judge Ruiz has concluded that Plaintiffs' nuisance claims survive under *Ohio* law. *Grewal* provides no basis to eschew his ruling.

Special David Cohen
December 3, 2018
Page 7

by this Court in Discovery Rulings 1 and 5.  But beyond that, the particular information sought here regarding the identification of addicted children is specifically barred from disclosure by state and federal statutes and regulations.

As discussed above with respect to Interrogatory 20, identifying children who have been diagnosed with and received treatment for NAS would violate Part 2 as a substantive response would require identification of individuals who received addiction treatment.  Further, and in a similar vein, compelling Plaintiffs to make the disclosure sought, such as the names and identities of foster children and caregivers, would jeopardize the Plaintiffs eligibility to receive federal funding for foster-care programs and irrevocably destroy the privacy of foster children and caregivers whose identities are required under federal and state law to remain confidential.

As noted, beyond Part 2 discussed above, federal statutory law and additional regulations also preclude the disclosures sought.  Under Title IV-E of the Social Security Act, states are eligible to receive federal funds if they adopt a state plan for foster care and adoption assistance.[3]  However, to qualify for federal funds, state plans must also provide for the protection of program applicants' or recipients' information.  42 U.S.C. § 671(a)(8);[4] 42 U.S.C. § 5106a(b)(2)(B)(viii); see also 42 U.S.C.

---

[3] This plan must provide for foster care maintenance payments, such as "payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation." 42 U.S.C. § 675(4)(A).

[4] At a minimum, state plans must provide "safeguards which restrict the use of, or disclosure of information, concerning individuals assisted under the State plan" to very limited circumstances. *Id.* *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St. 3d 81, 88 (OH 2008).

Special David Cohen
December 3, 2018
Page 8

§ 290dd-2(a).  Additionally, disclosing the information sought by Defendants would violate confidentiality provisions of the Child Abuse Prevention and Treatment Act (CAPTA),[5] 42 U.S.C. 5101 as well as the Compressive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act (CAPPTR), 42 U.S.C. § 290dd-2(a).  With regard to state law, the following statutes also preclude such disclosures:  ORC 5153.17; 2151.421; OAC 5101:2-33-21; ORC 5101.13; OAC 4101:2-33-70, 5101:2-33-23; ORC 2151.421, 5153.17; ORC 2141.421. 5153.17; R.C. 5101.29(D), 5153.17; R.C. 2151.142; R.C. 2151.421, 5153.17; OAC 5101:2-33-21(E); R.C. 3107.17; and OAC 5101:2-48-23.

  Finally, Plaintiffs also object on the grounds that public policy requiring the protection and confidentiality of those most vulnerable, newborns and children

---

[5] The Child Abuse Prevention and Treatment Act (CAPTA) also requires that states adopt a state plan that includes assurances that state programs will preserve the confidentiality of records made under CAPTA, and specifies a limited list of individuals and agencies who may access these records. 42 U.S.C. § 5106a(b)(2)(B)(viii). States must assure that programs related to child abuse and neglect include

> methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians, including requirements ensuring that reports and records ... shall only be made available to—
>
> > **(I)** individuals who are the subject of the report;
> > **(II)** Federal, State, or local government entities, or any agent of such entities...;
> > **(III)** child abuse citizen review panels;
> > **(IV)** child fatality review panels;
> > **(V)** a grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury; and
> > **(VI)** other entities or classes of individuals statutorily authorized by the State to receive such information pursuant to a legitimate State purpose;

*Id.* Ohio has such a state plan in place as well. *See A.A. v. Cty. of Riverside*, 2015 WL 13648571, at *2 (C.D. Cal. Sept. 11, 2015).

Special David Cohen
December 3, 2018
Page 9

whose lives have been devastated by opioids, far outweighs any imaginable relevance or

need Defendants would have for this information.

Thus, even if there were a basis to require discovery regarding this

category of damages which the Plaintiffs have disclaimed, there are numerous legal and

public policy barriers to disclosure which Defendants have not so much as

acknowledged.

**Interrogatory 29**

Interrogatory 29 asks Plaintiffs to identify, for each suspicious order the

Distributor Defendants shipped, "how, if at all, the Prescription Opioids were used following the

shipment, including what percentage of the Prescription Opioids that were diverted, abused,

used for legitimate medical purposes, used in some other manner, or destroyed, and if the

Prescription Opioids were diverted, abused, or otherwise used improperly, who was involved in

such diversion, abuse, or other improper use."

This Interrogatory is clearly overbroad and much of the information it calls for is

both unknowable and of no possible relevance in this case.  Moreover, to the extent that the

Interrogatory does call for information that may be relevant and discoverable, Plaintiffs cannot

provide this information unless and until the Pharmacy Defendants provide the detailed

prescription records Plaintiffs have requested.

Distributor Defendants contend that they are entitled to know whether Plaintiffs

can connect their harms to diversion of pills shipped by particular distributors.  But

Interrogatory 29 goes well beyond asking for information connecting Defendants' shipment of

suspicious orders to actual diversion.  Plaintiffs cannot possibly know which pills were actually

abused or destroyed, nor are they required to know this in order to prove their case.

Defendants' obligation was to maintain a system to prevent diversion, to exercise due care to

Special David Cohen
December 3, 2018
Page 10

keep the dangerous controlled substances in their possession within the "closed system" of

distribution.   The harms associated with diversion are well known – the Controlled Substances

Act and the controlled system exists because those harms are well understood and were

described in the legislative history of that statute.  Moreover, those harms are not created by the

individual trajectories of particular pills, but by the existence of illegal markets for and illegal

supplies of these dangerous substances.  Indeed, the presence of diverted pills and the

concomitant existence of illegal markets through which these pills may be distributed is

sufficient to create a nuisance and to harm Plaintiffs' communities, separate and apart from

whether any individual in Plaintiffs' communities became addicted or suffered from an

overdose.

    To the extent that Defendants are arguing that Plaintiffs must be able to trace the

path of particular pills in order to prove their case, that argument should be rejected.  It is based

on a misconception of how the harms to Plaintiffs' communities were created as well as on a

misconception of the requirements of proof for Plaintiffs' claims.  If Plaintiffs are provided the

aggregate prescription records of the Pharmacy Defendants' stores, Plaintiffs will be in a positon

to identify suspicious orders from pharmacy customers that were the locus of diversion.[6]  If

Plaintiffs can show that the oil on the ground came from Defendants' pipeline, it is not Plaintiffs'

burden to find the exact location of the leak.  Indeed, after these Defendants refused, for years,

---

[6] The information necessary to show that Prescription Opioids were diverted from particular pharmacies
supplied by the Distributor Defendants is contained in the prescribing records of the pharmacies, the vast
majority of which are retail stores operated by one of the Pharmacy Defendants.  If these records were
provided, Plaintiffs expect they would be able to demonstrate that particular likely channels of diversion
drove the high demand that resulted in suspicious orders to particular pharmacies. Plaintiffs expect they
would also be able to identify the percentage of orders to that pharmacy that were dispensed through such
channels of diversion.  This evidence would, in all likelihood, include identification of particular
prescribers whose high-volume prescribing is indicative of diversion. This information, Plaintiffs submit,
would be sufficient to meet any possible burden Plaintiffs might have to show that Defendants' shipment
of suspicious orders resulted in actual diversion.  Of course, without the detailed prescribing information
in the possession of the Pharmacy Defendants, Plaintiffs cannot make these identifications.

Special David Cohen
December 3, 2018
Page 11

to look for the location of the leak, even when they knew diversion was occurring, and that the

"oil" was spilling indiscriminately on the ground, they should not be heard to say that Plaintiffs'

claims depend on *Plaintiffs'* ability precisely to pinpoint the leak.  Because Plaintiffs need not

show the ultimate disposition of specific pills, it is unduly burdensome to require them to do so

in discovery.

**<u>Conclusion</u>**

For the reasons stated above, Plaintiffs oppose Distributor Defendants motion to

compel further answers to Interrogatories 19-21 and 29 and request that the motion be denied.

Sincerely,

Paulina do Amaral

1670912.2

11