**EXHIBIT A**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of Ohio

| In re: National Prescription Opiate Litigation* | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 1:17-MD-2804 |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: State of Ohio Board of Pharmacy, 77 South High Street, Columbus, Ohio 43215

*(Name of person to whom this subpoena is directed)*

☑ **Production:** **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All documents, communications, and electronically stored information identified and described in Attachment A to this subpoena. *This subpoena relates to the following Track One cases in the MDL: The County of Summit 18-OP-45090, The County of Cuyahoga 17-OP-45004, and City of Cleveland 18-OP-45132.

| Place: Ulmer & Berne LLP, 65 East State Street, Suite 1100, Columbus, OH 43215, or another mutually convenient location | Date and Time: 07/26/2018 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/10/2018

CLERK OF COURT

OR

_____        /s/ John M. Alten
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
McKesson Corporation_____, who issues or requests this subpoena, are:
John M. Alten, 1660 West 2nd Street, Suite 1100, Cleveland, OH 44113-1448, jalten@ulmer.com, 216-583-7000

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:17-MD-2804

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Ohio Board of Pharmacy
on *(date)* July 11, 2018.

☒ I served the subpoena by delivering a copy to the named person as follows: Yolanda Freeman, 77 South High Street, 17th Floor, Columbus, Ohio 43215 at 2:25 p.m. on *(date)* July 11, 2018; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00.

I declare under penalty of perjury that this information is true.

Date: 07/11/2018

Teresa F. Scharf
*Server's signature*

Teresa F. Scharf, OSBA CERTIFIED PARALEGAL
*Printed name and title*

65 East State Street, Suite 1100, Columbus, Ohio 43215
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

ATTACHMENT A TO SUBPOENA TO THE
OHIO BOARD OF PHARMACY: DOCUMENT REQUEST

I. Definitions

Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Civil Rules for the District Court of the Northern District of Ohio.

1. "You" and "Your" refers to the Ohio Board of Pharmacy ("the Board") and all others acting or purporting to act on the Board's behalf, including any Board members, committees, subcommittees, working groups, and joint task forces.

2. "Communication" means any transmission of information (whether formal or informal) by one or more persons or entities, and/or between two or more persons or entities, including, but not limited to, telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other computer linkups, written memoranda, and face-to-face conversations.

3. "Document" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a), and means the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, including, but not limited to, all written, typewritten, handwritten, printed, or graphic matter of any kind or nature, however produced or reproduced, any form of collected data for use with electronic data processing equipment, and any mechanical or electronic visual or sound recordings or text messages in the Board's possession, custody, or control. "Documents" include, but are not limited to, books, papers, contracts, memoranda, invoices, correspondence, notes, studies, reports, manuals, photographs, drawings, charts, graphs, data compilations, other writings, microfilm, microfiche, audio recordings, video recordings, electronic mail, and any other information stored in electronic form, and each different version or copy of each Document, including, but not limited to, drafts.

4. "Prescription Opioids" means FDA-approved pain-reducing medications that consist of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including but not limited to prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients in Ohio only through prescriptions filled by dispensers duly licensed and regulated by the Board.

II. Introduction

Should You consider any of the Documents requested to be confidential such that they should not be generally disseminated to the public or released to the press, we ask that You designate them as such under the Protective Order in the MDL (copy attached) and the parties will deal with them accordingly.

Unless otherwise indicated, these requests cover the entire timeframe for which any of the requested Documents have actually been maintained regardless of any applicable records retention policy.

All of the following requests are intended to encompass Documents maintained in electronic or paper form, and "correspondence" or "Communications" include emails, letters or other papers, and memos reflecting oral Communications.

As these Documents will be shared with a large number of counsel and parties, we ask that You produce copies of them in electronic or paper form. Please let the undersigned know if there are charges or fees for searching or copying and, if so, also advise whether You will provide an invoice for the cost after production or if prepayment is required.

We respectfully note that the production of the requested information is in the public interest and will contribute significantly to the public's understanding of the Board's role in administering and enforcing laws governing the practice of pharmacy and the legal prescribing and dispensing of Prescription Opioids in the state of Ohio, including its role in licensing and regulating Terminal Distributors of Dangerous Drugs ("TDDDs"), pharmacists, pharmacy interns, and wholesale drug distributors, as well as maintaining, monitoring, evaluating, and utilizing the Ohio Automated Rx Reporting System ("OARRS"). We therefore request that this production be given priority and concluded as thoroughly and expeditiously as feasible.

Any and all references to TDDDs, "pharmacies," "pharmacists," and pharmacy interns is not limited to national chain pharmacies and their employees but also specifically includes regional, state, or local pharmacies[1] and their employees.

### III. Documents to be Produced

1. All Documents constituting or describing the Board's procedures, policies, or protocols regarding its receipt, organization, analysis, utilization, investigation, and handling of suspicious order reports received pursuant to OAC 4729-9-16 and its approach in investigating, sharing, or in any way responding to such suspicious order reports.

2. All Documents constituting or describing the Board's procedures, policies, or protocols regarding its receipt, organization, analysis, utilization, and handling of the information required to be submitted to it by wholesale drug distributors pursuant to OAC 4729-37-04(C).

3. All Documents reflecting or relating to Board standard operating procedures, guidance memos, protocols, or other such instructions regarding its administration and implementation of any requirement that wholesale drug distributors report suspicious orders to the Board pursuant to OAC 4729-9-16.

---

[1] Based on the ARCOS data for pharmacies categorized as "retail" pharmacies as opposed to "chain" pharmacies, regional, state, or local pharmacies include (as examples) but are not limited to: Church Square Pharmacy, Cleveland Clinic, Dave's Supermarket, Center for Families & Children Pharmacy, Ohlinger Drug, Fred Albrecht Grocery, Ritzman Pharmacy, and Klein's Pharmacy. These are exemplars; this is not an exhaustive list.

2

4. All Documents comprising or relating to contacts or Communications between the Board and the Drug Enforcement Administration, or any other state or federal agency, or between the Board and any county or municipal official, regarding suspicious orders or suspicious order reports made pursuant to OAC 4729-9-16.

5. All Documents reflecting or referring to reports, inquiries, or complaints received from any government officials of the City of Cleveland, the City of Akron, Cuyahoga County, or Summit County, or any township, village, or city within Summit County or Cuyahoga County, regarding suspicious order reports pursuant to OAC 4729-9-16, reports under OAC 4729-3704(C), or suspected or actual diversion or misuse of Prescription Opioids by TDDDs, pharmacists, pharmacy interns, doctors, other prescribers or dispensers, or patients.

6. All suspicious order reports received by the Board pursuant to OAC 4729-9-16.

7. All Documents reflecting the Board's analysis, utilization, investigation, and handling of suspicious order reports received by the Board pursuant to OAC 4729-9-16.

8. All Documents reflecting efforts by the Board to compare or otherwise utilize the information received by it pursuant to OAC 4729-9-16 and the information received pursuant to OAC 4729-37-04(C) in an effort to identify TDDDs, pharmacists, or pharmacy interns who might be involved in diversion or misuse of Prescription Opioids.

9. Board files and records relating to diversion or misuse of Prescription Opioids, including but not limited to the following:

    a. Correspondence related to potential or actual diversion, overprescribing, or misuse of Prescription Opioids;

    b. Correspondence from or to the DEA or any other federal agency, any Ohio state officer or agency, or any official of any Ohio county or municipality relating to the diversion, overprescribing, or misuse of Prescription Opioids;

    c. Complaints made to the Board relating to TDDDs, pharmacists, pharmacy interns, or other entities regulated by the Board relating to diversion, overprescribing, or misuse of Prescription Opioids, and correspondence and other records relating to such complaints;

    d. Correspondence and related Documents concerning suspicious activity or concerns raised about TDDDs, pharmacists, pharmacy interns, or other entities regulated by the Board involving Prescription Opioids.

10. Board files and records relating to Board licensed TDDDs, pharmacists, and pharmacy interns that are (a) located or practicing in Cuyahoga County, Summit County, the City of Cleveland, or the City of Akron and (b) that are named or otherwise implicated in any actual or potential diversion or misuse of Prescription Opioids anywhere in the state of Ohio, including but not limited to the following:

    a.    Files related to their license applications and the investigation/processing of those applications;

    b.    Files related to renewal applications and the investigation/processing of those applications;

    c.    Board inspection reports and notes (including any photographs or other items collected during inspections) relating to licensees;

    d.    Correspondence related to the licenses;

    e.    Correspondence related to Prescription Opioids;

    f.    Correspondence related to inspections of premises of licensees and licensee records;

    g.    Correspondence from or to the DEA or any other federal agency, any Ohio state agency, or any Ohio county or municipal official related to TDDDs, pharmacists, or pharmacy interns;

    h.    Complaints made to the Board relating to TDDDs, pharmacists, or pharmacy interns and correspondence and other records relating to such complaints;

    i.    Correspondence related to suspicious activity or concerns raised about TDDDs, pharmacists, or pharmacy interns located or practicing anywhere in Cuyahoga County, Summit County, the City of Cleveland, or the City of Akron.

11.    All Documents reflecting the Board's receipt of data or information from the Ohio Automated Rx Reporting System ("OARRS") related to Prescription Opioids.

12.    All Documents reflecting or describing efforts of any kind (including any processes involving review of OARRS data) by the Board to identify, investigate, and report to other Ohio state agencies, federal agencies, or to federal, state, or local law enforcement any of the following regarding Prescription Opioids in Ohio: doctors or other prescribers who appear to be overprescribing; patients who appear to be doctor shopping or counterfeiting prescriptions; or TDDDs, pharmacists, or pharmacy interns who appear to be improperly dispensing Prescription Opioids.

13.    All Documents describing or relating to efforts made by the Board to utilize the OARRS program to identify TDDDs, pharmacists, pharmacy interns, doctors or other prescribers, or patients who might be diverting Prescription Opioids.

14.    All Documents constituting or discussing studies, reports, investigations, or analyses regarding actual or suspected diversion, overprescription, or misuse of Prescription Opioid medications that were prepared by, received by, or participated in by the Board.

15. All Documents reflecting or relating to enforcement actions (including but not limited to fines, suspensions, revocations, and letters or other formal warnings or notices) taken by You against any licensee relating to diversion or misuse of Prescription Opioids.

16. All Documents reflecting or relating to Communications, discussions, meetings, correspondence, or other interaction by the Board with the Attorney General of Ohio, other officials or agencies of the state of Ohio, officials of the governments of Cuyahoga County, the City of Cleveland, Summit County, the City of Akron, or any township, city, or village within Summit or Cuyahoga Counties, the DEA or other federal agencies, or any United States Attorney concerning suspicious order reports pursuant to OAC 4729-9-16, reports under OAC 4729-37-04(C), or diversion, overprescription, or misuse of Prescription Opioids.

17. All Documents relating to the diversion, overprescription, or misuse of Prescription Opioids in Ohio that have been produced, provided, or made public by the Board in response to any Ohio Public Records Act requests; in reports or submissions to the Ohio legislature, Ohio Governor, or Ohio Attorney General; in reports or submissions to any agency or official of the Ohio state or federal government; or to any commission, task force, or other entity that was studying, investigating, or evaluating Prescription Opioid addiction or abuse.

18. All Documents reflecting or referring to complaints, investigations, disciplinary actions and Communications related to the refusal or failure of a TDDD, pharmacist, or pharmacy intern to dispense Prescription Opioids.

19. All Documents reflecting or relating to problems, concerns, or harm resulting from the refusal or failure of a TDDD, pharmacist, or pharmacy intern to dispense Prescription Opioids.

20. All Documents discussing TDDDs that were found to be dispensing significantly fewer dosage units or quantities of Prescription Opioids than they were receiving from wholesale drug distributors.

21. All Documents reflecting or relating to contacts, requests, inquiries, meetings, or other Communications between any official of Cuyahoga County, the City of Cleveland, Summit County, the City of Akron, or any township, city, or village existing in Summit or Cuyahoga Counties, and the Board regarding Prescription Opioid addiction, abuse, or overdoses in their respective geographic areas.

22. All Communications or correspondence between the Board and any of the Defendants.[2]

---

[2] Defendants include: Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals, Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc.; Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutical, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Johnson & Johnson; Teva Pharmaceutical Industries Ltd.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Allergan PLC f/k/a Actavis PLC; Allergan Finance LLC, f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Insys Therapeutics, Inc.; Mallinckrodt PLC; Mallinckrodt LLC; SpecGx LLC; Cardinal Health, Inc.; McKesson Corporation; AmerisourceBergen Drug Corporation; Anda,

5

4843-9841-3677.v1

23. All documents reflecting any visits to any of Defendants' facilities.

24. All documents relating to Your licensing of any of the Defendants.

25. Documents showing the first dates that the licenses of each Defendant were publicly available on a Board, State, or other government website.

26. All Documents constituting, discussing, or summarizing reports of theft or significant loss of Prescription Opioids received by the Board pursuant to OAC 4729-9-15 from wholesale drug distributors, TDDDs, pharmacists, pharmacy interns, or others.

27. All Documents created or received at any time by the Board discussing, analyzing, or otherwise addressing the number of pills or other dosage units, or the quantity in grams or morphine equivalent units, of any Prescription Opioid that was required on a daily, monthly, yearly, or other time basis to fulfill legitimate medical needs in the state of Ohio, Cuyahoga County, the City of Cleveland, Summit County, the City of Akron, or any township, city, or village existing in Summit or Cuyahoga Counties.

28. All Documents reflecting, summarizing, discussing, or otherwise addressing the number of prescriptions dispensed for Prescription Opioids in Cuyahoga County, the City of Cleveland, Summit County, the City of Akron, or any township, city, or village existing in Summit or Cuyahoga Counties for each year from 1996 through the present.[3]

29. All Documents relating to the Board's efforts to assess or track the illegal entry, distribution, or use of opioids, including heroin, illegal fentanyl or carfentanyl, counterfeit opioid pills, or stolen Prescription Opioids.

30. All Documents created, received, or relied upon by the Board in determining its definition of "diversion" as it applies to Prescription Opioids distributed in the legal closed system.

31. All Documents reflecting or referring to discussions, conclusions, or speculation of or to the Board about when, where, and by whom Prescription Opioids were diverted from duly Board licensed and DEA registered entities to non-licensed and non-registered entities who misused, abused, or illegally transferred them.

32. All Documents relating to the legitimate need for and/or use of Prescription Opioids, including studies, reports, investigations, or analyses regarding the benefits and/or

---

Inc.; Health Mart Systems, Inc.; H.D. Smith Wholesale Drug Co.; H.D. Smith, LLC d/b/a HD Smith, f/k/a H.D. Smith Wholesale Drug Co.; H.D. Smith Holdings, LLC; H.D. Smith Holding Company; Miami-Luken, Inc.; CVS Indiana, LLC; CVS Rx Services, Inc.; Rite Aid Of Maryland, Inc.; Rite Aid Corp.; Walgreens Boots Alliance, Inc.; Wal-Mart, Inc. f/k/a Wal-Mart Stores, Inc.; Discount Drug Mart, Inc.; Prescription Supply, Inc.; HBC Service Company; Henry Schein, Inc.; and Henry Schein Medical Systems, Inc.

[3] Defendants are requesting information responsive to this category from 1996 to the present in accordance with Discovery Ruling No. 2, entered by the Special Master on June 30, 2018. In that order, the Special Master ordered the Defendants to produce, over their objections, opioid prescription and distribution transactional data from January 1, 1996. Should the Court enter an order reducing the applicable time period for discovery, Defendants are willing to reduce the time period covered by these requests.

4843-9841-3677.v1

medical uses of prescription opioid medications that were prepared by, received by, or participated in by the Board.

33. All Communications or correspondence with all Board licensees relating to or discussing prescription opioids, including guidance, publications, and notices.

34. All Documents identifying members of the Board, how or why the members were selected for service, and the application process for members of the Board.

35. All Documents constituting or reflecting guidance, publications, notices, or other Communications from the Board to licensees regarding Prescription Opioids.

36. All minutes of Board meetings discussing Prescription Opioids.

37. All Documents concerning this civil action (captioned above) or any other lawsuit (regardless of whether criminal or civil, and regardless of whether brought or pending in state or federal court in the United States) relating to the diversion, overprescribing, or misuse of Prescription Opioids.