**EXHIBIT I**

# Glynn, Vincent

| | |
|---|---|
| **From:** | Browne, Maureen |
| **Sent:** | Wednesday, December 12, 2018 4:19 PM |
| **To:** | James Wakley |
| **Cc:** | Henry G. Appel; Browne, Maureen; Glynn, Vincent |
| **Subject:** | RE: Ohio BOP Discovery |

Hi James:

We appreciate your efforts in getting us the emails responsive to our search terms. With the January 25th deposition and February 8th/March 26th expert report deadlines approaching, we should agree on a plan now to carry us through these next few weeks of discovery.

We have not heard back from you on the protective order and we need to proceed with obtaining the complete OARRS database at this point, based on the testimony of Mr. Garner. The statistical analyses our expert team needs to run will determine, among other things, how many shipments from McKesson were sold to particular pharmacies and then distributed to particular residents. Because Mr. Garner testified that OARRS could not perform this function if a particular pharmacy purchased from multiple distributors, our forensic team will need to use the information from the database to compile the necessary information instead. Our team will also look to determine whether certain McKesson orders were the result of unusual prescribing practices, another causal analysis that according to Mr. Garner's testimony, OARRS does not currently perform. Mr. Garner also testified that various law enforcement and public health personnel have access to the OARRS prescription data, which includes a prescription level summary of prescriber and patient information. We need as much of the data that is available to those entities in order to understand and analyze the extent of the available information about potential diversion. We understand that Mr. Garner is able to write the code that could generate at least some of the reports our team intends to run, however our experts cannot rely on Mr. Garner's code and ad hoc reports if they are to understand the methodology of how the reports were run. Our team also intends to cross reference the OARRS data and analyses performed with the ARCOS and McKesson order data that we already possess. We are unable to do that if the Board only provides its own analyses and not the complete wholesale and prescription data for the relevant jurisdictions during the time period of the allegations. Can you confirm your client's willingness to produce this critical information? Our tight schedule is only getting tighter, so we need to reach agreement on the substance and date of BOP's remaining production by December 18th or engage in motions practice.

As far as depositions are concerned, we have 31 remaining topics to cover. Do you know which witnesses BOP will produce? Knowing the number of deponents to expect will help us plan moving forward, but I suspect BOP will make available at least two more witnesses—possibly Cameron McNamee, the Director of Policy Communications, to testify regarding topics 8, 9, 10, 12, 13, 14, and 15, and Eric Griffin, the Director of Compliance, to testify regarding topics 11, 20, 21, 23, and 24. At this stage though, we're also very interested in deposing individuals who can testify regarding the specific data requested and specific analyses performed (topics 18, 19, 20, 29, 30), and the Board's knowledge of and activities dedicated to addressing opioid diversion (topics 1, 2, 3, 4, 5, 6, 7, 22, 25, 26, 27, 28, 31). Can you confirm these deponents by December 21st, please?

We are happy to discuss by telephone if that is more convenient, but we look forward to hearing from you and developing an action plan by December 18th.

Regards,
Mo

1