UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br>*This document relates to:*<br>All Cases | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

**RESPONSE OF PLAINTIFFS' EXECUTIVE COMMITTEE TO MOTION OF CERTAIN DEFENDANTS FOR LEAVE TO FILE MOTION FOR GAG ORDER AND RELATED RELIEF**

Certain defendants ("Movants")[1] seek leave from this Court to seek sanctions against certain plaintiffs' lawyers for appearing on a public-affairs television news program and making statements about the opioid epidemic, a public health crisis of unprecedented proportions and concomitant public interest. Leave to file this blatantly self-serving and improper motion (the "Motion") should be denied. The Plaintiffs' Executive Committee ("PEC") submits this memorandum to provide context for the motion for leave. The PEC expects that the three individual lawyers who are the subject of the underlying Motion (only one of whom is affiliated with a PEC firm) will respond for themselves to the underlying motion if the Court grants leave to file it, but the PEC submits that no such motion should be allowed to proceed, because it would be inimical to the Court's orders to date and to its case management plan.

This Court has stayed the filing of motions like this so that the parties and the Court can focus on preparing for trial and exploring settlement possibilities. The

---

[1] Movants are Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc., Allergan Finance, LLC, Allergan PLC, AmerisourceBergen Drug Corporation, H.D. Smith, Cardinal Health, Inc., Discount Drug Mart, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Mallinckrodt LLC, McKesson Corporation, Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company.

proposed Motion is nothing but a distraction from the tasks at hand, and it is precisely to avoid such distraction that this Court has placed a moratorium on the filing of such motions.  That is all the more true here because of the utter lack of merit to Defendants' complaints about the appearance, on *60 Minutes*, of Ohio Attorney General and governor-elect Mike DeWine, Michael Moore (counsel to the State of Ohio), and Burton LeBlanc, one of the lawyers representing the City of Cleveland.

The PEC notes, to begin with, that the statements made by Governor DeWine, and Messrs. Moore and LeBlanc were entirely true, were on a topic of great public importance, and were not protected by court order.  Movants' attempt to show otherwise fails on the face of their motion and on even a cursory review of the *60 Minutes* episode at issue.  Movants attempt to characterize descriptions of what the ARCOS database is and what kinds of data it contains as disclosure of the data itself, but clearly that is not the case.  Indeed, the lawyers (and Governor DeWine) clearly understood—and even openly acknowledged—the limits of what they could disclose, and so didn't disclose what they couldn't (*i.e.*, specific information about the ARCOS data).  Movants' suggestion that discussion of the number of pills shipped to Kermit, West Virginia violated any order of confidentiality is entirely groundless – that information was disclosed before this MDL was created and was unsealed by the state court in West Virginia.[2]

Movants suggest that counsel, including Governor DeWine, was attempting (many months before trial) to influence the jury pool in some improper fashion, but completely

---

[2] The dishonesty of Movants' accusations against Mr. Moore is even more startling.  As their own quotation shows, Mr. Moore stated that he didn't "care one whit about any money in this case.  Not one whit whatsoever about it."  *See* Movants Mem. at 3.  Five pages later, this statement about what Mr. Moore cares about has been recast and distorted by Movants as a suggestion by Mr. Moore that "he would not receive 'one whit' of money from this litigation," *see id.* at 8, a statement (and suggestion) their own quotation shows Mr. Moore never made.  If Movants had legitimate bases to complain of counsel's behavior, they would not have to stoop to inventing them.

ignore that the issues in this case are of such public interest that every educated citizen is aware of this litigation and what defendants stand accused of.  Moreover, citizens of this judicial district in particular have their own direct experience of the opioid epidemic – it is one of the reasons this district was chosen as the appropriate forum for litigation.  Certainly, this Court will need to take steps, at trial, to ensure that juror decisions are based only on the evidence presented in court, but attempting to silence discussion of these issues in the public forum is neither proper nor warranted.  The attempt to do so is especially inappropriate coming from defendants who have been and are engaged in public relations campaigns designed to influence public opinion across the country and who, as this Court has already been informed, have attempted, secretly, to influence opinion specifically in Cuyahoga County through the "Leaders' Quest" trip and the interviews leading up to it, all of which were conducted without disclosure of the participation of certain defendants in planning that trip.

Indeed, McKesson has already responded specifically to the *60 Minutes* episode.  A section on its website entitled "*60 Minutes* Response" states McKesson's view that the program presented a "one-sided story," and goes on to present McKesson's view of the opioid crisis and its own lack of culpability. (A copy of McKesson's *60 Minutes* Response is provided as Exhibit 1.)  It recites McKesson's views of the causes of the crisis and, states that "the increase in overdose deaths in the United States is being driven by abuse of illegal drugs, and not the prescription medications that distributors deliver to DEA-registered and state-licensed pharmacies," without mentioning that that more than 80% of heroin users begin with a prescription pharmaceutical. It reports McKesson's view that "only the DEA has access to" the information in ARCOS. It notes that it "maintain[s] – and continuously enhance[s] – **strong programs** designed to detect and prevent opioid diversion."  *See* Exhibit 1 (emphasis in original).

Moreover, McKesson's "*60 Minutes* Response" is part of a larger public relations effort to influence public opinion about the opioid crisis and McKesson's role.  The link to

the *60 Minutes* Response is found on a section of the McKesson website headed "Opioid Abuse – Fighting the Epidemic." (A copy of the main page for "Opioid Abuse – Fighting the Epidemic" is provided as Exhibit 2.) A link to that page appears on McKesson's home page, with the following text: "Learn about McKesson's innovative security programs, order monitoring initiatives and policy recommendations to help curb the opioid epidemic." (A copy of the McKesson home page with this link is Exhibit 3.) McKesson has taken full advantage of its website to present its view of the opioid crisis to the public, and should not complain when Plaintiffs' lawyers and public officials comment as well.

McKesson is, of course, not the only defendant engaged in a campaign to influence public opinion about the opioid crisis. The Purdue defendants have been running full-page advertisements in *The New York Times* and the *Wall Street Journal* for months. These advertisements suggest to the public that Purdue is already doing its part to stem the opioid epidemic and are clearly intended to sway public opinion in favor of Purdue. (Examples of these advertisements are provided as Exhibit 4.) The advertisements state that the opioid crisis "is the result of multiple factors" and suggest that Purdue has been in the forefront of solving it. Apparently, Movants are only too happy to influence the jury pool through large-format advertising, but become concerned when counsel, including a prominent public official, comment on the same issues and present a different perspective.

Some of Purdue's other efforts to sway public opinion have been less transparent. In July, 2018, Purdue and its counsel, Mark Cheffo apparently provided a "background briefing" to *Bloomberg* news that resulted in a story presenting Purdue's perspective and, specifically, attacking co-lead counsel in this MDL. The *Bloomberg* story does not mention Mr. Cheffo, and nowhere suggests that Purdue was a source for any information in the story (mentioning the company only once, in passing, as a defendant in opioid litigation), but an internal Purdue email, produced in discovery, brags that the article "is the result [of] background briefing" provided by the company, including Mr. Cheffo and refers to

4

the story as "[p]art of the comms team effort to broaden the story."  *See* Exhibit 5.  Mr. Cheffo apparently remains free to whisper in the press's ear, while he seeks to gag attorneys on the public side from speaking openly.

It is inevitable, and appropriate, that the opioid epidemic is, and will continue to be, a subject of robust public debate. A public health crisis of this magnitude raises multiple important issues about prescription pharmaceuticals, the control of dangerous substances, how to address and abate this crisis, and how to prevent future epidemics of this type.  In this context, transparency is especially important. The public should hear from all sides of the issue, and should be aware who is saying what at any given time. Nothing in the *60 Minutes* broadcast threatened the integrity of these proceedings, nor undermined the transparency of the public debate. As noted above, Movants have not identified *any* confidential information that was disclosed or any court order that was violated.  It is, rather, the Movants' attempt to gag the Plaintiffs, to prevent the State of Ohio and other public entities from participating in this debate (even as defendants' public relations campaigns continue apace) that undermines these proceedings and the integrity of the public response to the opioid crisis.  This Court should not entertain such a motion.

This is especially true given the very high bar Movants face in overcoming the First Amendment protections for the speech they seek to suppress.  *See, e.g.*, *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."); *accord Cty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002); *In re King World Prods., Inc.*, 898 F.2d 56, 60 (6th Cir. 1990); *see also United States v. Scarfo*, 263 F.3d 80, 92 (3d Cir. 2001) (a gag order is a prior restraint on speech that "raises rights under the First Amendment of the United States Constitution."); *Bailey v. Sys.*

*Innovation, Inc.*, 852 F.2d 93, 98 (3d Cir. 1988) (a gag order carries with it "a heavy presumption against its constitutional validity.").[3]  In light of this heavy burden, Movants should not be permitted to waste the Court's and the parties' time with a motion that can only distract from the real work to be done in these proceedings.

The PEC reserves the right to submit substantive opposition to the motion for the gag order in the event that Movants' motion for leave to file their motion is granted.

## CONCLUSION

For the foregoing reasons, this Court should deny Movants' motion for leave to file their motion for a gag order and other relief.

Respectfully submitted,

*s/Joseph F. Rice*
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
(843)216-9000
(843) 216-9450 (Fax)
*jrice@motleyrice.com*

*s/Paul J. Hanley, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Ave., 7th Floor
New York, NY  10016
(212) 784-6400
(212) 784-213-5949  (Fax)
*phanly@simmonsfirm.com*

---

[3] There is no doubt that what Movants seek is a "gag order"; they themselves so characterize it. *See* Movants' Mem. at 12 *et seq.*

*s/ Paul T. Farrell, Jr.*
Paul T. Farrell, Jr. (Ohio Bar No. 0070257)
GREENE, KETCHUM, FARRELL, BAILEY & TWEEL
419 - 11th Street (25701)/ P.O. Box 2389
Huntington, West Virginia 25724-2389
(800) 479-0053 or (304) 525-9115
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Co-Leads, Plaintiffs' Executive Committee*

s/*Peter H. Weinberger*
Peter H. Weinberger (0022076)
**SPANGENBERG SHIBLEY & LIBER**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*s/Peter H. Weinberger*
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*

7