**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track One Cases | |

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND THE CASE MANAGEMENT SCHEDULE

## INTRODUCTION

Plaintiffs in the three Track One cases respectfully request that this Court amend the Case Management Schedule as set forth in CMO 7 in order to extend the deadline for Plaintiffs to serve their expert reports and to adjust other dates accordingly.[1]  The reason for the request is straightforward:  although Plaintiffs' expert reports are due on February 8, 2019, discovery is not and will not be complete before that date.  Defendants are still producing documents (and have produced more than 16 million pages since November 9, 2018, with approximately 8 million pages produced after December 1); certain discovery from the federal Drug Enforcement Administration ("DEA") is unable to go forward because of the government shut-down; several important discovery disputes are still pending affecting information important to the experts; depositions are still ongoing (with 121 depositions of important witnesses across nearly every issue in this case taking place in January), and it is now clear that many significant depositions will not be completed by January 25, 2019, but rather will extend well into February, including some after the expert report deadline.  As a result, Plaintiffs'

---

[1] CMO 1, which set forth the original Case Management Schedule, provides that "any party may apply at any time to this Court for a modification or exception to this Order." After the parties unanimously requested extension of the deadlines in CMO 1, this Court issued CMO 7, which extended those deadlines.

experts will not have adequate time to consider or evaluate a very significant amount of evidence in forming their opinions before the February 8 deadline.

Defendants do not, in principle, oppose extending the deadline for expert reports, but the parties have been unable to agree as to the effect of such an extension on the remainder of dates in CMO 7.  Plaintiffs believe that the expert deadline can be extended without moving the trial date of September 3, 2019, set in CMO 7, and, with this motion, present to the Court two different schedules that would accomplish that. Defendants, by contrast, believe that any extension of the expert deadline must be accompanied by an extension of the trial date.  Plaintiffs now ask that the Court extend the expert deadline and resolve the parties' dispute by selecting an appropriate amendment to the Case Management Schedule to implement that extension.

## FACTUAL BACKGROUND

Pursuant to the schedule set forth in CMO 7, document productions by Defendants other than Retail Pharmacies were required to be substantially completed by October 25, 2018; document productions by Retail Pharmacies were to be substantially completed by November 9, 2018.  Depositions were to begin on October 25, 2018 and all fact and 30(b)(6) depositions were to be completed by January 25, 2019. Under this schedule, Plaintiffs' experts were expected to have approximately three months to review and analyze Defendants' documents, three months to receive deposition testimony on a rolling basis, and two weeks after completion of all discovery to finish expert reports.  In a case of this magnitude and complexity, it is perhaps unsurprising that this has not occurred as scheduled.

*First*, document production is significantly behind schedule and not yet complete.  To begin with, millions of pages of documents were produced well after the deadline for substantial completion.  Collectively, the Defendants have produced more than 16 million pages of documents since November 9, 2018, with more than 8 million of those produced in December 2018. Generic manufacturers like Allergan and Teva

have only just begun producing documents and information regarding their generic products, and many defendants have only just recently begun to produce documents related to suspicious order monitoring, and Defendants are still regularly producing documents.  In addition, important third-party discovery is still ongoing, including production of the IQVIA data ordered by the Court on November 21, 2018, the deadline for production of which was December 21, 2018.  As the Court is aware, significant information from the IQVIA data relating to special order monitoring has yet to be produced.  *See* Joint Status Report dated Jan. 10, 2019.

*Second,* depositions will not be complete by January 25 as previously ordered, and of the depositions that will take place by that deadline, a significant percentage were backloaded to the end of the discovery period just prior to expert disclosures. Indeed, 121 depositions are taking place in January, at least 25 depositions are currently scheduled to take place after the January 25 deadline (with the bulk of those scheduled for February), and dozens more noticed but not yet scheduled.  *See* Exhibit A (court reporter's deposition calendar).

The depositions that are being taken in January and February include testimony of witnesses important to various experts, including depositions regarding marketing, sales, pharmacovigilance, regulatory affairs, diversion, compliance and many others, including many high-ranking company officials and officers of the Defendants' companies.  *None* of the Purdue's sales representatives will be deposed before the January 25 deadline.  Other specific examples of depositions that are either not scheduled, or are scheduled for dates after January 25 include:  David Haddox, Purdue's Head of Health Policy, Senior Medical Director (the individual who coined the term "pseudoaddiction"), whose deposition has now been set for January 29, 2019 (the earliest date Purdue offered); Enrique Garcia, Purdue's Senior Medical Director, who will not be deposed until February 1; Richard and Kathe Sackler (Purdue has moved to reconsider the depositions of the Sacklers ordered by the Special Master and have not

yet offered dates for those depositions); eight Mallinckrodt witnesses, all but one of whom were offered no earlier than February, three of whom are scheduled to be deposed after the expert report deadline of February 8, and for all of whom Mallinckrodt will not produce custodial files until five days before their deposition; Endo's 30(b)(6) witness with respect to suspicious order monitoring, whose deposition is now scheduled for January 31; Endo's former vice-president for Regulatory Affairs, whose deposition has not yet been scheduled, but which will take place after January 25; Endo's former heads of compliance and of state government affairs, for whom no dates have yet been offered; Endo's CEO, for whom it offered the date of February 19 (but whose deposition which will in all likelihood take place even later); two Walgreens' witnesses scheduled for February 1 and February 13; and one witness for Discount Drug Mart, now scheduled for February 6.

*Third*, the unanticipated government shut-down has also delayed discovery, and in particular, has delayed depositions of DEA employees and former employees (who require clearance from the government to testify, which clearance cannot now be obtained because of the shut-down).  This discovery may be highly significant to experts opining about the opioid supply-chain and diversion.

Despite the above shortcomings, Plaintiffs note that parties have made substantial progress in discovery.  Over 120 million of pages of documents have been produced; scores of interrogatory answers have been exchanged; and hundreds of depositions have been taken in the last few months.  But in spite of the parties', the experts', and the Special Master's Herculean efforts, delays in completing discovery cannot help but prevent Plaintiffs' experts from synthesizing the evidence in this case, reaching their ultimate opinions, and presenting those opinions in expert reports, by the current deadline, of February 8.

**ARGUMENT**

### I.     THE DEADLINE FOR EXPERT REPORTS SHOULD BE EXTENDED

Rule 26 requires that each party provide for each of its retained experts, an expert report containing, *inter alia,* "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them."  Fed. R. Civ. P. 26(a)(2)(B).  It is these reports from Plaintiffs' experts for which this Court has set a February 8, 2019 deadline.[2]

Plaintiffs have retained experts to offer opinions about (among other topics) Defendants' marketing campaigns, their suspicious order monitoring programs, and the causal connections between Defendants' activities and Plaintiffs' injuries.  These experts have been working intensively to review discovery materials as they have been made available and to begin the process of formulating opinions based on these materials and their own expertise and experience.  Of course, their opinions must be tailored to the facts of the case.  *See, e.g., McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000).

Here, the facts available to the experts prior to the February 8 deadline will, of necessity, be incomplete.  In some instances, this may preclude an expert from offering any opinion at all.  In other instances, any opinion offered would, of necessity, be provisional and subject to possible modification in the face of the numerous additional facts pouring in just before and after the expert disclosures.  It may be that new information, in the form of testimony or additional documents, would not change an expert's previous opinion, but would merely provide new bases for that opinion.  But it

---

[2] Under CMO 7, Defendants' expert reports are due on March 26, 2019, 46 days after Plaintiffs' expert reports are due.  As discussed below, one option for extending the expert deadline without moving the trial date would be to require to exchange expert reports simultaneously.

is also possible that new information may require refinements or alterations to an emerging opinion.   Certainly, it would be impossible for any expert to state unequivocally that no new information of any kind could possibly change his or her opinion, and a steadfast refusal to consider the possible effect of new information could be grounds to question the reliability of such an unwavering opinion.

Thus, even if Plaintiffs' experts were to provide such limited opinions as they can on February 8, the likelihood they would need to supplement those opinions is great and in some instances a near certainty.  Their provisional and incomplete opinions will be of limited benefit to the MDL process.  Moreover, the experts will have been forced, in effect, to disclose draft reports, based on incomplete information, although such drafts are generally protected from disclosure by Rule 26.  *See* Fed. R. Civ. P. 26(b)(4)(B) ("Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2). . .").[3]   In addition, such supplements will in all likelihood have a disruptive effect on the remainder of the Case Management Schedule, as experts who have already been examined in deposition may need to be re-deposed, and opinions formed in rebuttal to incomplete opinions may themselves need to be supplemented. Plaintiffs note as well that it would be fundamentally unfair to require Plaintiffs' experts to prepare their reports prior to the close of discovery, while Defendants' experts, whose reports are due more than six weeks later, will have access to all of the information provided in discovery before producing their reports.

---

[3] Experts do often supplement their opinions in the ordinary course if new information becomes available, and all scientific conclusions are to some extent provisional.  But an opinion based on all of the information available at the time the opinion is formed stands on a different footing from one known to be based on incomplete information when the information lacking prevents the expert from properly assessing the complete evidentiary picture.

This Court should extend the expert deadline so that Plaintiffs' experts can review all of the relevant information obtained in discovery and form opinions based on a complete record before those opinions are provided to the Defendants.

As noted above, Defendants do not disagree that slippages in the discovery schedule warrant an extension of the deadline for Plaintiffs' expert reports.  Where the parties disagree is on the question of how the remainder of the Case Management Schedule should be adjusted following such an extension.  As discussed below, there are several options available to the Court, at least two of which, proposed by Plaintiffs, do not involve moving the date for the Track One trial scheduled to begin on September 3, 2019.

## II.     EXPERT DISCOVERY CAN BE EXTENDED WITHOUT MOVING THE TRIAL DATE

Plaintiffs have proposed two possible schedules that would extend the deadline for expert disclosure without affecting the September 3 trial date.  The two schedules are shown in Exhibit B. In the first of these alternatives, the deadline for Plaintiffs' expert reports would be extended by 60 days to April 8, 2019.  This extension would ensure that the experts had time to meaningfully review and incorporate the significant amount of recent discovery into their opinions, and would allow Plaintiffs the same preparation period anticipated by the original CMO 7 substantial completion deadline. To make up a portion of the time, this schedule would call for simultaneous, instead of staggered, exchange of expert reports, so that expert reports for both Plaintiffs and Defendants would be served on that date.  Defendants would disclose experts slightly later than their original March 26, 2019 deadlines.   Such simultaneous exchange would allow the parties to compress the period for expert depositions and allow *Daubert* motions to be filed by July 12, 2019, 32 days later than under the existing schedule.  The Court's time to consider and rule on the *Daubert* motions would be shortened, with briefing completed on August 2, 2019.  Any hearing on the motions, if the Court

7

deemed such a hearing necessary, would be held two weeks later on August 16, six days before the final Pretrial Hearing scheduled for August 22 (which would not be moved).  Trial would still commence on September 3.

In the alternative, the Court could extend the deadline for Plaintiffs' expert reports by only 45 days, to March 25, 2019.  This extension would allow the experts additional time to review the voluminous discovery from January and February, but unforeseen delays in production or deposition scheduling could result in some amount of information being unavailable.  The 45-day extension would maintain a staggered exchange of expert reports but would further compress the time period for the Court's consideration of *Daubert* motions.  Under this proposed modification, Defendants' expert reports would be due on May 10, 2019, 46 days after Plaintiffs' expert reports, the same interval as under CMO 7.  *Daubert* briefing would be moved a full 45 days from the deadline under the existing schedule, with *Daubert* motions due on June 27, 2019. The Court's time to consider the motions would be more compressed than under the 60-day proposal (or under the existing schedule), with briefing completed on August 15, and any *Daubert* hearing, if one were deemed necessary, conducted at the same time as the final Pretrial Hearing on August 22, 2019.

Either schedule would allow the parties to complete discovery before Plaintiffs' experts are required to provide their reports, and either schedule would preserve the existing trial date.  Either schedule would afford Plaintiffs' experts more time to consider the evidence pouring in at the end of the discovery period.

Plaintiffs proposed the first schedule set forth above to Defendants (60-day extension and simultaneous disclosure of experts).  Defendants rejected that proposal, but were not opposed to an extension of deadlines.  The parties then conducted several meet and confer discussions on the issue.  Defendants have offered a proposed schedule of their own, in which the deadline for Plaintiffs' expert reports would be extended by 45 days, other dates would be moved by similar (but not identical) amounts, and the

trial date would be extended by 55 days, to October 28, 2019. After Plaintiffs rejected this proposal, on January 18, 2018, the Manufacturer Defendants offered a modified version.  Their latest proposal still provides for a 45-day extension of the deadline for Plaintiffs' experts' reports, and still calls for moving the trial date.  Under this variation, however, some of the intervening intervals are adjusted, with the result that this proposal calls for the trial date to be moved by 41 days, to October 14, 2019. (Defendants' proposals are set forth in Exhibit C.) Plaintiffs continue to believe, however, that the deadline can be extended without moving the trial date.

## III.   THIS COURT SHOULD SELECT AN APPROPRIATE CASE MANAGEMENT SCHEDULE THAT PROVIDES THE EXPERTS SUFFICIENT TIME TO BASE THEIR OPINIONS ON THE TOTALITY OF THE EVIDENCE DISCLOSED

Plaintiffs respectfully suggest that extending the expert deadline is paramount, as Plaintiffs' experts ought not be required to provide expert reports prior to the effective close of discovery, especially when so much of the outstanding discovery pertains directly to the subjects of expert opinion.  How such an extension will affect the rest of the schedule, however, is properly a subject of this Court's discretion, though constrained by the urgency of the bellwether's and nation's ongoing opioid epidemic, as this Court repeatedly has recognized.  Plaintiffs therefore ask that this Court select an appropriate case management schedule that will allow sufficient time for Plaintiffs' experts to complete their reports following the actual close of discovery and that is otherwise acceptable to the Court.

## CONCLUSION

For the foregoing reasons, this Court should extend the deadline for Plaintiffs' expert reports and should select an appropriate case management schedule to accommodate that extension.

Dated: January 18, 2019                    Respectfully submitted,


                                           s/ *Peter H. Weinberger*
                                           Peter H. Weinberger (0022076)
                                           **SPANGENBERG SHIBLEY & LIBER**
                                           1001 Lakeside Avenue East, Suite 1700
                                           Cleveland, OH  44114
                                           (216) 696-3232
                                           (216) 696-3924 (Fax)
                                           *pweinberger@spanglaw.com*

                                           *Plaintiffs' Liaison Counsel*



## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

                                           s/*Peter H. Weinberger*
                                           Peter H. Weinberger

                                           *Plaintiffs' Liaison Counsel*