# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| | Case No. 17-md-2804 |
| *THIS DOCUMENT RELATES TO: ALL CASES* | JUDGE DAN AARON POLSTER |
| | SPECIAL MASTER DAVID ROSENBLUM COHEN |

## JOHNSON & JOHNSON AND JANSSEN PHARMACEUTICALS, INC.'S MOTION TO COMPEL TIMELY PRODUCTION OF DISCOVERY BY THE OHIO DEPARTMENT OF HEALTH

Defendants Johnson & Johnson and Janssen Pharmaceuticals, Inc., by its undersigned counsel, respectfully move the Court pursuant to Federal Rule 45(d)(2)(B)(i) for an order compelling the Ohio Department of Health's (ODH) timely production of discovery requested in subpoenas served on or about August 7, 2018 for both documents and Rule 30(b)(6) deposition designees. Such evidence is necessary, and the order should issue, because:

1) ODH, as one of the primary state agencies tasked with combatting the opioid crisis, must have documents and files related to the Department's investigation, monitoring, and response to the opioid crisis, as well as the steps taken by a number of sub-Department task forces, which will be essential for the parties to understand the status of the opioid crisis and state and county response during the relevant period;

2) Defendants need this evidence to properly defend against Plaintiffs' claims that they are responsible for injuries sustained as a part of the opioid crisis; and

3) The Department's continuing delay, minimal productions, and unspecified objections to the subpoenas, are inadequate to excuse its production obligations, especially considering that it is a state agency charged with protecting public health.

The reasons for granting this motion are more fully set forth in the attached memorandum. At the direction of Special Master Cohen, this motion is being filed on the public

4053314.3

docket, but is directed in the first instance to him.

January 22, 2019                                   Respectfully submitted,

*/s/ Justin E. Rice*
Justin E. Rice
TUCKER ELLIS LLP
950 Main Avenue
Suite 1100
Cleveland, OH 44113-7213
Telephone:     216.592.5000
Facsimile:      216.592.5009
E-mail:            justin.rice@tuckerellis.com

*Counsel for Johnson & Johnson and
Janssen Pharmaceuticals, Inc.*

4053314.3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) ) MDL No. 2804 ) ) Case No. 17-md-2804 ) |
| *THIS DOCUMENT RELATES TO: ALL CASES* | ) JUDGE DAN AARON POLSTER ) ) SPECIAL MASTER DAVID ROSENBLUM ) COHEN ) |

**JOHNSON & JOHNSON AND JANSSEN PHARMACEUTICALS, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL TIMELY PRODUCTION OF DISCOVERY BY THE OHIO DEPARTMENT OF HEALTH**

**I.  INTRODUCTION**

As is well known to this Court by now, these cases at issue arise from federal and state claims brought by several municipalities against manufacturers and distributors of prescription opioid medications. Plaintiffs blame Defendants for false advertising to expand the market for prescription opioids, and the failure to monitor and/or restrict the distribution of opioids in that market, which they claim led to the opioid crisis.

To ascertain the State's involvement in oversight and responding to the opioid crisis, Defendant served the Ohio Department of Health (ODH) with two subpoenas on or about August 7, 2018. These subpoenas requested the production of documents and the identification of witnesses for deposition. Ex. A, 8-6-2018 Document Subpoena; Ex. B, 8-15-2018 Deposition Subpoena; Ex. C, ODH Objections. Despite assurances of rolling productions, ODH has produced little over the past five months other than empty promises and obfuscation. As of January 22, ODH, the state agency with arguably the longest track record of combatting the

4053314.3

opioid crisis, has made four relatively small productions totaling approximately 1161 documents/files comprising approximately 11,000 pages.  By way of comparison, the Ohio Board of Nursing—an entity with far less involvement in addressing the crisis—has produced documents comprising more than 179,000 pages.

Similarly, although ODH identified a single 30(b)(6) witness for deposition on November 8, 2018—more than a week after the subpoena's October 29 deposition date—it did not identify the topics for which that witness would testify until January 8, 2019. *See* Ex. D.  ODH has yet to identify its remaining witness(es) for the remaining deposition topics requested by Defendants.

Counsel alerted ODH of these deficiencies in letters dated December 5 and 14, 2018.  *See* Exs. E & F.  These letters detailed the shortcomings in ODH's production, highlighting more than 20 categories of production for which ODH had either substantially or wholly failed to produce documents.  As the letters demonstrate, the subpoenas requested *inter alia* documents concerning *multi-year* governmental committees and task forces that likely investigated or oversaw programs related to the opioid crisis, including, for example:

- 7. All Documents relating to the Ohio Compassionate Care Task Force, including (a) its formation, (b) its members, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to or from its members, and (g) its budget or expenses.to the Ohio Prescription Drug Abuse Task Force and the Compassionate Care Task; and

- 8. All Documents relating to the Ohio Prescription Drug Abuse Task Force . . . .

Ex. E at 1–2.  As one of the State's primary Departments (if not the primary Department) tasked with addressing the opioid crisis, it is difficult to believe that ODH would not have access to documents and communications related to or involving such committees and task forces from past years to the present.  Similarly, while ODH has published reports such as its "2017 Drug Overdose Report" (available here: https://odh.ohio.gov/wps/portal/gov/odh/know-our-

2

programs/violence-injury-prevention-program/media/2017_ohiodrugoverdosereport), it has failed to produce the underlying data for the reports necessary to understand individual drug and county-level data.

Nevertheless, ODH responded by letter of December 19, 2018 (Ex. G) stating that it has not found responsive documents for many of the items sought, other than a paltry few internet links to reports and a vague promise of "some paper records" related to the Ohio Pain Advisory Committee. No objections were made to specific requests for production, nor were any details provided—despite repeated requests from defense counsel—regarding the steps ODH has taken to procure responsive documents and/or locate the custodians of any such documents. ODH had no response for the majority of the numerous topics mentioned in the December 5 letter, and it provided no timeline for additional productions. Thus, Defendants reiterated their concerns in a letter dated December 21, 2018 and made clear they would seek the intervention of the Court. Ex. H.

At ODH's request, Defendants also provided search terms to facilitate the identification and production of responsive emails. *See* Ex. H. But ODH never explained why it refused to run its own searches for responsive emails, nor why it waited several months to request search terms from Defendants. To this day, Defendants are unaware of what search terms—if any—ODH utilized to identify responsive electronic documents other than emails.

In a subsequent phone conversation on January 3, 2019, ODH's counsel advised that additional hard copy documents would be produced and that a collection of emails was underway. On January 4, ODH sent its fourth production, consisting of only 13 PDF files comprising 685 pages of material. While these few additional documents are appreciated, ODH has still failed to: (1) provide metadata for all documents as required by Case Management Order

3

3; (2) explain what additional responsive documents remained outstanding and give a time frame for their production; (3) identify the steps taken to locate responsive materials and their custodians; or (4) lodge a proper objection to any of the subpoenas' specific requests for production.  *See* Ex. I.  A complete identification of deposition witnesses also remains outstanding.

In the absence of an explanation of their search efforts and any hardships encountered, it is difficult to believe that ODH—an entity heavily involved with combatting the opioid crisis—simply has essentially *no documents* (or very few) related to these committees, task forces, and more than 20 requests for production of documents on topics related to the opioid crisis.  Thus, despite counsel's good faith efforts to narrow and/or resolve these persistent discovery stalemates, we are still in many ways at square one, mere days away from the close of discovery.

On January 4 and 14, 2019, Defendants sent emails (with an accompanying letter) requesting guidance from Special Cohen as to filing a motion to compel. Counsel for ODH was copied on this correspondence. On January 18, 2019, during one of the MDL parties' routine discovery conference calls, Special Master Cohen directed Defendants to file the motion to compel.

## II.     DISCOVERY STANDARD

The Federal Rules provide a liberal standard for discovery to ensure that parties have access to all potentially relevant information needed for litigation.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of

4

4053314.3

discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The Federal Rules also permit parties to subpoena nonparties to acquire pertinent evidence. *See* Fed. R. Civ. P. 45(a)(1). "A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials." *Id.* 45(a)(1)(D).

ODH, as the party served with the subpoenas, has a duty to (1) "produce the [requested documents] as they are kept in the ordinary course of business or . . . organize and label them to correspond to the categories in demand"; (2) produce electronic information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form"; and (3) identify electronically stored information that is "not reasonably accessible because of undue burden or cost." *Id.* 45(e)(1)(A), (B), & (D). And even if ODH can show certain documents to be "not reasonably accessible," the Court "may nonetheless order discovery from such sources" upon a showing of good cause. *Id.* 45(e)(1)(D).

Thus, Rule 45 places the burden of showing undue burden or cost upon the party refusing to comply with the subpoena. 9A Wright & Miller, Fed. Prac. & Proc. Civ. § 2463.2. It is no answer for ODH to ignore the specific requests for production in the subpoena. *Trust us, we are looking* is not a satisfactory explanation. *See* Fed. R. Civ. P. 37(a)(4) (explaining that an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond"). "At any time, on notice to the commanded person," the serving party may move the court . . . for an order compelling production or inspection," Fed. R. Civ. P. 45(d)(2)(B)(i), and the Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena," *id.* 45(g).

### III. ARGUMENT

Despite promises of rolling discovery and more than five months of unspecified best

5

4053314.3

efforts, as well as extensive correspondence with defense counsel to resolve the deficiencies, ODH has failed to provide responsive documents to the vast majority of requests for production included with the subpoenas—reflected by the more than 20 categories itemized in the December 5, 2018 letter to ODH.  *See* Ex. E.  And its modest offerings so far—with no explanation of its search efforts or relevant document custodians—yield little insight as to what information/files/documents/etc. remain outstanding.

Defendants' belief that ODH possesses vastly more responsive documents is not unfounded. Discovery involving the Track One Plaintiffs—which comprise only *two* of Ohio's eighty-eight counties—has revealed at least the following opioid-related activities involving ODH. Surely, ODH's *statewide* efforts are even greater:

- ODH and CDC collaboration starting in 2015 regarding fentanyl overdoses, including meetings with Cuyahoga County. No documents (e.g. agenda's, meeting minutes, notes, communications) produced.

- Weekly calls between ODH and local health departments, including discussions of the opioid epidemic. No documents produced.

- Bi-monthly Project DAWN conference calls. Some information for calls in 2014-2018 were produced, but the vast majority are missing, including agendas, minutes, and/or call notes.

- July 2018 ODH conference called "Opioids and Ohio Children: Tools for School Nurses." No documents produced.

- 2016 Project DAWN survey. Although the survey questions were produced, the survey results and related documents, communications, etc. were not produced.

- Opioid-related communications between ODH (including from its Violence and Injury Prevention Program) and Summit County. Essentially no email communications have been produced to date.

- Opioid overdose data for Ohio and Cuyahoga County for the period 2007 to 20015 provided by ODH to Cuyahoga County. No documents were produced.

- 2017 Project DAWN conference. No documents were produced.

- Prescription Drug Abuse Action Group (PDAAG) Annual Reports. Only the 2015

6

   and 2016 reports were produced. No other reports or related documents were produced.

- Take Charge Ohio Program (a comprehensive awareness campaign to help Ohioans manage pain safely and create safer pain medication practices) – discussed on ODH website. No meeting agendas, minutes, program membership information, etc. were produced.

- ODH Drug Overdose Reports. No underlying data for the reports were produced.

Defendants cannot fathom ODH having *no* documents (or very few) related to opioid activities such as those mentioned above, including multi-year task forces it formed to investigate the opioid crisis, meetings with county health departments, annual reports, education programs, etc. And failing to track data and keep records over the past decade concerning the opioid abuse epidemic would demonstrate gross incompetence.

Defendants need this information—including the county-level data underlying any of ODH's reports—to assess both the extent of the opioid crisis in Ohio and the state and county response to the crisis. While Defendants have seen glimpses of ODH's opioid-related activities during Track 1 discovery and through ODH's website, only ODH knows the extent of its efforts, programs, communications, and data analyses employed to address opioid issues in Ohio. ODH's claim that it needs additional criteria from Defendants to identify and produce these obviously responsive documents is at best a delay tactic, if not simply an excuse for refusing to comply with the subpoena.

Indeed, ODH has yet to explain the steps it has taken to locate responsive documents and/or identify likely document custodians. Its lack of candor in this area suggests that its efforts to date have been unorganized and incomplete. Even its productions to date have not included metadata, contrary to Case Management Order No. 3's requirements. It has not provided a timeline for any remaining productions—which must be complete before the close of discovery later this month. And, despite repeated correspondence with defense counsel, it has yet to offer

7

4053314.3

specific objections to more than 20 of the subpoenas' requests for production; it thus has fallen well short of its burden to show any of that information—let alone all of it—to be "not reasonably accessible" because of undue burden or cost. After all these months, such evasive behavior "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

The time has come for ODH to either comply with the subpoenas or provide a persuasive justification for its stonewalling. Defendants are entitled to this potentially relevant information, which will be necessary to their defense.

## IV. CONCLUSION

For these reasons, Defendants Johnson & Johnson and Janssen Pharmaceuticals, Inc. move for an order compelling timely compliance with the subpoenas served on or about August 7, 2018. Specifically, Defendants respectfully request that the Court order ODH to (1) produce all outstanding responsive documents within seven days of the Court's order, (2) produce all responsive documents in compliance with the Court's Case Management Order No. 3 and Fed. R. Civ. P. 45, (3) demonstrate the completeness of its productions through disclosure of its search terms, document custodians, and files/servers/hard drives searched, and (4) complete the identification of its 30(b)(6) deposition designee(s) and topics, with sufficient time to depose the witness(es) after the document productions are complete.

January 22, 2019　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Justin E. Rice*
　　　　　　　　　　　　　　　　　　　Justin E. Rice
　　　　　　　　　　　　　　　　　　　TUCKER ELLIS LLP
　　　　　　　　　　　　　　　　　　　950 Main Avenue
　　　　　　　　　　　　　　　　　　　Suite 1100
　　　　　　　　　　　　　　　　　　　Cleveland, OH 44113-7213
　　　　　　　　　　　　　　　　　　　Telephone:　216.592.5000
　　　　　　　　　　　　　　　　　　　Facsimile:　216.592.5009
　　　　　　　　　　　　　　　　　　　E-mail:　justin.rice@tuckerellis.com

　　　　　　　　　　　　　　　　　　　*Counsel for Johnson & Johnson and*
　　　　　　　　　　　　　　　　　　　*Janssen Pharmaceuticals, Inc.*

9

4053314.3

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2019, the foregoing *Motion to Compel* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Additionally, notice has been sent to Counsel for the Ohio Department of Health as indicated below:

James T. Wakley
james.wakley@ohioattorneygeneral.gov
Senior Assistant Attorney General
Regulatory Board Unit Coordinator
Health & Human Services Section
Office of Ohio Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio 43215

Yvonne Tertel
yvonne.tertel@ohioattorneygeneral.gov
Principal Assistant Attorney General
Health & Human Services Section
Office of Ohio Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio 43215

/s/ Justin E. Rice
Justin E. Rice
TUCKER ELLIS LLP
950 Main Avenue
Suite 1100
Cleveland, OH 44113-7213
Tel:       216.592.5000
Fax:       216.592.5009
E-mail:    justin.rice@tuckerellis.com

*Counsel for Johnson & Johnson and Janssen Pharmaceuticals, Inc.*

4053314.3