AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

Case: 1:17-md-02804-DAP Doc #: 1288-1 Filed: 01/22/19 1 of 71. PageID #: 35503

# UNITED STATES DISTRICT COURT

EXHIBIT A

for the

Northern District of Ohio

In re: National Prescription Opiate Litigation*                )
                                                                )
_____                        )
              *Plaintiff*                                       )
                 v.                                             )    Civil Action No.   1:17-cv-02804
                                                                )
                                                                )
_____                        )
              *Defendant*                                       )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

Ohio Department of Health, 246 N. High Street, Columbus, Ohio 43215

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All documents, communications, and electronically stored information identified and described in Attachment A to this subpoena.

*This subpoena relates to the following Track One cases in the MDL: The County of Summit, 199-OP-45090, The County of Cuyahoga, 17-OP-45004, and City of Cleveland 18-OP-46132.

| Place: Tucker Ellis LLP | Date and Time: |
|---|---|
| 950 Main Street, Suite 1100 Cleveland, Ohio 44113-7213 | 09/05/2018 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    08/06/2018

                CLERK OF COURT

                                                         OR

                                                              /s/ Tariq M. Naeem
_____           _____
  *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Johnson & Johnson and Janssen Pharmaceuticals, Inc. _____ , who issues or requests this subpoena, are:

Tariq M. Naeem, 950 Main Ave., Ste. 1100, Cleveland Ohio 44113-7213, tariq.naeem@tuckerellis.com, 216-592-5000

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:17-cv-02804

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Ohio Dept of Health

on *(date)* 8/7/18 .

☒ I served the subpoena by delivering a copy to the named person as follows: by serving
Michelle Webb - Admin. Prof. in the office of Gen. Coun.

on *(date)* 8/8/18 at 1:25pm ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 8/9/18

Erika Cremeans

*Server's signature*

Erika M. Cremeans-Process Server

*Printed name and title*

2862 Johnstown Rd.
Cols, OH 43219

*Server's address*

Additional information regarding attempted service, etc.:

## ATTACHMENT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Track One Defendants[1] ("Defendants") hereby serve the following Requests for Production of Documents on the Ohio Department of Health ("DOH").

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Civil Rules for the District Court of the Northern District of Ohio.

1. "You" and "Your" refers to the Ohio Department of Health ("DOH") and all others acting on the DOH's behalf, including any affiliates, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces.

2. "Chronic Pain" refers to persistent pain that typically lasts more than three months.

3. "Breakthrough Pain" refers to severe pain that erupts while a patient is already receiving opioid therapy for underlying persistent pain.

---

[1]Distributor Defendants named in one or more of the three Track One cases are: Cardinal Health, Inc., McKesson Corporation, AmerisourceBergen Drug Corporation, Rite Aid of Maryland, Inc., CVS Indiana, LLC, CVS RX Services, Inc., Walgreens Boots Alliance, Inc., Walmart Inc. F/KJA Wal-Mart Stores, Inc., H. D. Smith LLC, f/k/a H. D. Smith Wholesale Drug Co., Prescription Supply, Inc., Anda, Inc. and Miami-Luken, Inc. Manufacturer Defendants named in one or more of the three cases styled above are: Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica Inc. f/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc.; Allergan Finance, LLC (f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.); Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; SpecGx LLC; Mallinckrodt LLC; and Insys Therapeutics, Inc.

4.     "Communication" means any transmission of information (whether formal or informal) by one or more Persons and/or between two or more Persons by means including, but not limited to, telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other computer linkups, written memoranda, and face-to-face conversations.

5.     "Document" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a), and means the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, including, but not limited to, all written, typewritten, handwritten, printed, or graphic matter of any kind or nature, however produced or reproduced, any form of collected data for use with electronic data processing equipment, and any mechanical or electronic visual or sound recordings or text messages in the DOH's possession, custody, or control.  "Documents" include, but are not limited to, Communications (as defined above), books, papers, contracts, memoranda, invoices, correspondence, notes, studies, reports, manuals, photographs, drawings, charts, graphs, data compilations, other writings, microfilm, microfiche, audio recordings, video recordings, electronic mail, and any other information stored in electronic form, and each different version or copy of each Document, including, but not limited to, drafts.

6.     "Licensed Medical Professional" means any individual subject to a licensing requirement managed or implemented by the State Medical Board of Ohio, Ohio State Dental Board, or Ohio Board of Nursing (or equivalent licensing bodies in other states), whether or not said individual is permitted to prescribe medication under the terms of his or her license.  For avoidance of doubt, this includes, but is not limited to, licensed medical doctors (MD), doctors of osteopathic medicine (DO), doctors of podiatric medication (DPM), physician's assistants (PA-50 or PA-50 RX), doctors of dental surgery (DDS), doctors of medicine in dentistry (DMD), registered dental hygienists (RDH), licensed practical nurses (LPN), certified nursing assistants (CNA), registered nurses (RN), and advanced practice registered nurses (APRNs).

7.     "Prescription Opioids" means FDA-approved pain-reducing medications that consist of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including but not limited to prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients in Ohio only through prescriptions written by duly licensed and DEA registered prescribers.

8.     "Illicit Opioids" means Prescription Opioids and heroin, fentanyl, carfentanil, other fentanyl-type analogs, and counterfeit opioid medications that are not obtained or used lawfully pursuant to a legitimate prescription from a duly licensed and DEA-registered prescriber.

9.     "Legitimate Opioid Use" means use of Prescription Opioids according to a prescription made in accordance with the respective FDA-approved warning labels by the person to whom the prescription was provided.

10.     "Including" or "Includes" means "including, but not limited to" or "including without limitation."

11.     "Relating to," "Referring to," or "Concerning," when referring to any given subject matter, means any Document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, or refers directly or indirectly to the particular subject matter identified.

12.     The words "and" as well as "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these requests any information that might otherwise be construed as falling outside the scope of these requests.

13.     Words used in the singular shall, when the context permits, be deemed to include the plural, and words used in the plural shall, when the context permits, be deemed to include the singular.   The masculine gender shall, when the context permits, be deemed to include the feminine or neuter genders.

## INSTRUCTIONS

1.     Unless otherwise agreed in writing, all Documents are to be produced to the attention of Tariq Naeem at Tucker Ellis LLP, 950 Main Avenue, Suite 1100, Cleveland, Ohio 44113-7213.

2.     Unless otherwise indicated, these Requests cover the entire timeframe for which any of the requested documents have actually been maintained regardless of any applicable records retention policy.

3.     Each page of every Document must be marked with a unique identifier or "Bates stamp."

4.      Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes or text messages and similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals.   Computer files and similar electronic records should be produced in a readable form.  Please let the undersigned know if there are charges or fees for searching or copying and, if so, also advise whether you will provide an invoice for the cost after production or if prepayment is required.

5.      Please produce password-protected Documents with any applicable passwords.

6.      Should You consider any of the documents requested to be confidential such that they should not be generally disseminated to the public or released to the press, please designate these documents as such under the operative Protective Order in this case (copy attached).

7.      Should You determine that any of the documents requested contain personal health information that may not be disclosed pursuant to HIPAA or analogous state law, please redact that information and assign in its place a unique identifier.

8.      A copy of the relevant Protective Orders entered in this litigation are attached.

## DOCUMENTS TO BE PRODUCED

1.      Organizational charts for the ODH from 1990 to the present.

2.      All Documents relating to analyses by You of Chronic Pain and its impact on public health.

3.      All Documents relating to analyses by You of Breakthrough Pain and its impact on public health.

4.      All Documents relating to analyses by You concerning the use of Prescription Opioids to treat Chronic Pain and Breakthrough Pain, including the creation of prescribing guidelines and any revisions thereto.

5. All Documents relating to the Ohio Pain Advisory Committee, including (a) its formation, (b) its members, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to or from its members, and (g) its budget or expenses.

6. All Documents relating to Your involvement in drafting, assessing, introducing, lobbying for, implementing, administering, and/or monitoring compliance with HB 187 of the 122nd General Assembly, Ohio's Intractable Pain Act, and any amendments thereto.

7. All Documents relating to the Ohio Compassionate Care Task Force, including (a) its formation, (b) its members, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to or from its members, and (g) its budget or expenses.

8. All Documents relating to the creation of, or revisions to, policies governing the availability of Prescription Opioids to Your employees, workers compensation participants, and/or other public assistance program participants, including formulary decisions related to same.

9. All Documents relating to Your identification of the opioid abuse epidemic in the State of Ohio.

10.     All Documents relating to the Ohio Prescription Drug Abuse Task Force, including (a) its formation, (b) its members, including the process, criteria, and guidelines by which its members were selected for inclusion, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to or from its members, and (g) its budget or expenses.

11.     All Documents relating to any investigation conducted by You or on Your behalf concerning opioid abuse in the State of Ohio.

12.     All Documents relating to any investigation conducted by You or on Your behalf concerning marketing, advertising, distribution, or promotional activities of Defendants as a potential cause of the opioid abuse epidemic in the State of Ohio.

13.     All Documents relating to Your identification or investigation of the factors (other than the alleged activities of Defendants) that caused or contributed to the opioid abuse epidemic in the State of Ohio.

14.     All Documents relating to Your response to the opioid abuse epidemic, including the creation of task forces or advisory committees, legislative or regulatory action, interagency collaboration, public or private partnerships, and engagement of outside experts.

15.     All Documents relating to the Prescription Drug Abuse Action Group, including (a) its formation, (b) its members, including the process, criteria, and guidelines by which its members were selected for inclusion, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) Communications to or from its members, and (g) its budget or expenses.

16.     All reports created by You or on Your behalf related to the opioid abuse epidemic, including all data and source materials used to create those reports.

17.     All Documents relating to presentations, lectures, seminars, workshops, symposia, or other similar educational programs made or sponsored by You or on Your behalf related to the opioid abuse epidemic, including all data and source materials used to create the content for any such programs or events.

18.     All Documents containing data relating to Your monitoring or assessment of the opioid epidemic, including health outcomes (e.g., overdoses, deaths), criminal statistics, funds expended to respond to the epidemic, and lost productivity related to the epidemic.

19.     All Communications with Defendants related to Prescription Opioids, including (a) marketing and distribution, (b) risks and benefits, (c) safety outcomes, and (d) abuse, misuse, addiction, or diversion.

20.     All Communications with any other person or entity that relate to Defendants and Prescription Opioids, including (a) marketing and distribution, (b) risks and benefits, (c) safety outcomes, and (d) abuse, misuse, addiction, or diversion.

21.     All Documents relating to any efforts by You to reduce the number of Prescription Opioids, Illicit Opioids, or opioid prescriptions in the State of Ohio.

22.     All Documents containing data or analysis relating to the addictive potential of Prescription Opioids resulting from use in accordance with their FDA-approved warning labels.

23.     All Documents containing data or analysis relating to the number of opioid addicts in the State of Ohio from 1990 to the present, and specifically to those who became addicted as a result of Legitimate Opioid Use.

24.     All Documents containing data or analysis relating to the number of opioid overdoses (both fatal and non-fatal) in the State of Ohio from 1990 to the present, and specifically to those who overdosed on Prescription Opioids.

25.     All Documents containing data or analysis relating to the number of opioid overdoses (both fatal and non-fatal) in the State of Ohio from 1990 to the present, and specifically to those who overdosed on Illicit Opioids.

26.     All Documents containing data or analysis relating to the number of users of Illicit Opioids in the State of Ohio from 1990 to the present, and specifically to those who began using Illicit Opioids following Legitimate Opioid Use.

27.     All Documents containing data or analysis relating to the number of opioid-related deaths in the State of Ohio from 1990 to the present, and specifically to those in patients who became addicted to opioids following Legitimate Opioid Use.

28.     All Documents containing data and/or analysis relating to the number of Licensed Medical Professionals indicted, prosecuted, or disciplined in the State of Ohio from 1990 to the present for illegal or improper prescribing of Prescription Opioids.

29.     All Documents containing data or analysis relating to the number of illegal or improper prescriptions of Prescription Opioids in the State of Ohio from 1990 to the present.

30.     All Documents containing data or analysis relating to the number of patients who obtained opioid prescriptions in the State of Ohio from 1990 to the present through illegal or improper means.

31.     All Documents containing data or analysis relating to the number of Prescription Opioids in the State of Ohio from 1990 to the present that were prescribed off-label or contrary to accepted medical guidelines.

32. All Documents containing data or analysis relating to the illegal manufacture or importation into the State of Ohio from 1990 to the present of Illicit Opioids.

33. All Documents containing data or analysis relating to adverse health outcomes (e.g., addiction, overdose, death) in the State of Ohio from 1990 to the present caused by the use of Illicit Opioids.

34. All Documents containing data or analysis relating to the abuse, misuse, or diversion of Prescription Opioids, broken down by product or chemical substance, in the State of Ohio from 1990 to the present.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **Case No.: 1:17-md-2804-DAP** |
| **This document relates to:** | **Honorable Dan Aaron Polster** |
| ***All Cases*** | |

CASE MANAGEMENT ORDER NO. __2__ : **PROTECTIVE ORDER**

### I.  Scope of Order

1.      Disclosure and discovery activity in this proceeding may involve production of confidential, proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order ("Protective Order" or "Order"). Unless otherwise noted, this Order is also subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods. Unless otherwise stated, all periods of time provided for in this Order are calculated as calendar days

2.      This Protective Order shall govern all hard copy and electronic materials, the information contained therein, and all other information produced or disclosed during this proceeding, captioned as *In re: National Prescription Opiate Litigation* (MDL No. 2804), Case No. 1:17-CV-2804, which includes any related actions that have been or will be originally filed in this Court, transferred to this Court, or removed to this Court and assigned there ("the Litigation").  All materials produced or adduced in the course of

1

discovery, including all copies, excerpts, summaries, or compilations thereof, whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any Party to this Litigation (the "Producing Party") to any other party or parties (the "Receiving Party"). This Protective Order is binding upon all the Parties to this Litigation, including their respective corporate parents, subsidiaries and affiliates and their respective attorneys, principals, agents, experts, consultants, representatives, directors, officers, and employees, and others as set forth in this Protective Order.

3.      Third parties who so elect may avail themselves of, and agree to be bound by, the terms and conditions of this Protective Order and thereby become a Producing Party for purposes of this Protective Order.

4.      The entry of this Protective Order does not preclude any party from seeking a further order of this Court pursuant to Federal Rule of Civil Procedure 26(c).

5.      Nothing herein shall be construed to affect in any manner the admissibility at trial or any other court proceeding of any document, testimony, or other evidence.

6.      This Protective Order does not confer blanket protection on all disclosures or responses to discovery and the protection it affords extends only to the specific information or items that are entitled to protection under the applicable legal principles for treatment as confidential.

**II. Definitions**

7.      Party. "Party" means any of the parties in this Litigation at the time this Protective Order is entered, including officers and directors of such parties. If additional parties are added other than parents, subsidiaries or affiliates of current parties to this Litigation, then their ability to receive Confidential Information and/or Highly Confidential

2

Information as set forth in this Protective Order will be subject to them being bound, by agreement or Court Order, to this Protective Order.

8. Discovery Material. "Discovery Material" means any information, document, or tangible thing, response to discovery requests, deposition testimony or transcript, and any other similar materials, or portions thereof. To the extent that matter stored or recorded in the form of electronic or magnetic media (including information, files, databases, or programs stored on any digital or analog machine-readable device, computers, Internet sites, discs, networks, or tapes) ("Computerized Material") is produced by any Party in such form, the Producing Party may designate such matters as confidential by a designation of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" on the media. Whenever any Party to whom Computerized Material designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL is produced reduces such material to hardcopy form, that Party shall mark the hardcopy form with the corresponding "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" designation.

9. Competitor. Competitor means any company or individual, other than the Designating Party, engaged in the design; development; manufacture; regulatory review process; dispensing; marketing; distribution; creation, prosecution, pursuit, or other development of an interest in protecting intellectual property; and/or licensing of any product or services involving opioids; provided, however, that this section shall not be construed as limiting the disclosure of Discovery Material to an Expert in this Litigation, so long as the notice required under Paragraph 38 is provided to the Designating Party prior to any such disclosure where required, and so long as no Discovery Material produced by one Defendant is shown to any current employee or consultant of a different Defendant,

3

except as provided in Paragraphs 33 or 34.

10. Confidential Information. "Confidential Information" is defined herein as information that the Producing Party in good faith believes would be entitled to protection on a motion for a protective order pursuant to Fed. R. Civ. P. 26(c) on the basis that it constitutes, reflects, discloses, or contains information protected from disclosure by statute or that should be protected from disclosure as confidential personal information, medical or psychiatric information, personnel records, Confidential Protected Health Information, protected law enforcement materials (including investigative files, overdose records, narcane, coroner's records, court records, and prosecution files), research, technical, commercial or financial information that the Designating Party has maintained as confidential, or such other proprietary or sensitive business and commercial information that is not publicly available. Public records and other information or documents that are publicly available may not be designated as Confidential Information. In designating discovery materials as Confidential Information, the Producing Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Court. Nothing herein shall be construed to allow for global designations of all documents as "Confidential."

11. Highly Confidential Information. "Highly Confidential Information" is defined herein as information which, if disclosed, disseminated, or used by or to a Competitor of the Producing Party or any other person not enumerated in Paragraphs 32 and 33, could reasonably result in possible antitrust violations or commercial, financial, or business harm. In designating discovery materials as Highly Confidential Information, the Producing Party shall do so in good faith consistent with the provisions of this Protective

4

Case: 1:17-md-02804-DAP Doc #: 441 Filed: 05/15/18 5 of 38. PageID #: 5803

Order and rulings of the Court. Nothing herein shall be construed to allow for global designations of all documents as "Highly Confidential."

12. Manufacturer Defendant: Manufacturer Defendant means any Defendant in this litigation that manufactures any Opioid Product for sale or distribution in the United States.

13. Distributor Defendant: Distributor Defendant means any Defendant in this litigation that distributes any Opioid Product in the United States other than a product they manufacture or license for manufacture.

14. Retail Defendant: Retail Defendant means any Defendant in this litigation that sells or distributes any Opioid Product directly to consumers in the United States.

15. Receiving Party. "Receiving Party" means a Party to this Litigation, and all employees, agents, and directors (other than Counsel) of the Party that receives Discovery Material from a Producing Party.

16. Producing Party. "Producing Party" means a Party to this Litigation, and all directors, employees, and agents (other than Counsel) of the Party or any third party that produces or otherwise makes available Discovery Material to a Receiving Party, subject to paragraph 3.

17. Protected Material. "Protected Material" means any Discovery Material, and any copies, abstracts, summaries, or information derived from such Discovery Material, and any notes or other records regarding the contents of such Discovery Material, that is designated as "Confidential" or "Highly Confidential" in accordance with this Protective Order.

18. Outside Counsel. "Outside Counsel" means any law firm or attorney who

5

represents any Party for purposes of this litigation.

19. In-House Counsel. "In-House Counsel" means attorney employees of any Party.

20. Counsel. "Counsel," without another qualifier, means Outside Counsel and In- House Counsel.

21. Independent Expert. "Independent Expert" means an expert and/or independent consultant formally retained, and/or employed to advise or to assist Counsel in the preparation and/or trial of this Litigation, and their staff who are not employed by a Party to whom it is reasonably necessary to disclose Confidential Information or Highly Confidential Information for the purpose of this Litigation.

22. This Litigation. "This Litigation" means all actions in MDL No. 2804, *In re: National Prescription Opiate Litigation* or hereafter subject to transfer to MDL No. 2804.

## III. Designation and Redaction of Confidential Information

23. For each document produced by the Producing Party that contains or constitutes Confidential Information or Highly Confidential Information pursuant to this Protective Order, each page shall be marked "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER", or "HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" or comparable notices.

24. Specific discovery responses produced by the Producing Party shall, if appropriate, be designated as Confidential Information or Highly Confidential Information by marking the pages of the document that contain such information with the notation "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER", or "HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" or comparable notices.

25. Information disclosed through testimony at a deposition taken in connection with this Litigation may be designated as Confidential Information or Highly Confidential Information by designating the portions of the transcript in a letter to be served on the court reporter and opposing counsel within thirty (30) calendar days of the Producing Party's receipt of the certified transcript of a deposition. The court reporter will indicate the portions designated as Confidential or Highly Confidential and segregate them as appropriate. Designations of transcripts will apply to audio, video, or other recordings of the testimony. The court reporter shall clearly mark any transcript released prior to the expiration of the 30-day period as "HIGHLY CONFIDENTIAL—SUBJECT TO FURTHER CONFIDENTIALITY REVIEW." Such transcripts will be treated as Highly Confidential Information until the expiration of the 30-day period. If the Producing Party does not serve a designation letter within the 30-day period, then the entire transcript will be deemed not to contain Confidential Information or Highly Confidential Information and the "HIGHLY CONFIDENTIAL—SUBJECT TO FURTHER CONFIDENTIALITY REVIEW" legend shall be removed.

26. In accordance with this Protective Order, only the persons identified under Paragraphs 33 and 34, below, along with the witness and the witness's counsel may be present if any questions regarding Confidential Information or Highly Confidential are asked. This paragraph shall not be deemed to authorize disclosure of any document or information to any person to whom disclosure is prohibited under this Protective Order.

27. A Party in this Litigation may designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" any document, material, or other information produced by, or testimony given by, any other person or entity that the designating Party reasonably believes

7

qualifies as the designating Party's Confidential Information or Highly Confidential Information pursuant to this Protective Order. The Party claiming confidentiality shall designate the information as such within thirty (30) days of its receipt of such information. Any Party receiving information from a third party shall treat such information as Highly Confidential during this thirty (30) day period while all Parties have an opportunity to review the information and determine whether it should be designated as confidential. Any Party designating third party information as Confidential Information or Highly Confidential Information shall have the same rights as a Producing Party under this Protective Order with respect to such information.

28.     This Protective Order shall not be construed to protect from production or to permit the "Confidential Information" or "Highly Confidential Information" designation of any document that (a) the party has not made reasonable efforts to keep confidential, or (b) is at the time of production or disclosure, or subsequently becomes, through no wrongful act on the part of the Receiving Party or the individual or individuals who caused the information to become public, generally available to the public through publication or otherwise.

29.     In order to protect against unauthorized disclosure of Confidential Information and Highly Confidential Information, a Producing Party may redact certain Confidential or Highly Information from produced documents, materials or other things. The basis for any such redaction shall be stated in the Redaction field of the metadata produced pursuant to the Document Production Protocol or, in the event that such metadata is not technologically feasible, a log of the redactions.     Specifically, the Producing Party may redact:

8

(i) Personal Identifying Information. The names, home addresses, personal email addresses, home telephone numbers, Social Security or tax identification numbers, and other private information protected by law of (a) current and former employees (other than employees' names and business contact information) and (b) individuals in clinical studies or adverse event reports whose identity is protected by law.

(ii) Privileged Information. Information protected from disclosure by the attorney-client privilege, work product doctrine, or other such legal privilege protecting information from discovery in this Litigation. The obligation to provide, and form of, privilege logs will be addressed by separate Order.

(iii) Third Party Confidential Information. If agreed to by the Parties or ordered by the Court under Paragraph 78, information that is protected pursuant to confidentiality agreements between Designating Parties and third parties, as long as the agreements require Designating Parties to redact such information in order to produce such documents in litigation.

30. To the extent any document, materials, or other things produced contain segregated, non-responsive Confidential or Highly Confidential Information concerning a Producing Party's non-opioid products (or, in the case of Plaintiffs, concerning programs, services, or agencies not at issue in this litigation), the Producing Party may redact that segregated, non-responsive, Confidential or Highly Confidential information except (a) that if a Producing Party's non-opioid product is mentioned in direct comparison to the Producing Party's opioid product, then the name and information about that product may not be redacted or (b) if the redaction of the name and information about the Producing Party's non-opioid product(s) would render the information pertaining to Producing Party's opioid product meaningless or would remove the context of the information about

9

Producing Party's opioid product, the name and information about the other product may not be redacted. Nothing in this paragraph shall restrict Plaintiffs' right and ability to request information about such other products nor restrict Defendants' right to object to or otherwise seek protection from the Court concerning any such request.

31.    Pursuant to 21 C.F.R. §§ 314.430(e) & (f) and 20.63(f), the names of any person or persons reporting adverse experiences of patients and the names of any patients who were reported as experiencing adverse events that are not redacted shall be treated as confidential, regardless of whether the document containing such names is designated as CONFIDENTIAL INFORMATION. No such person shall be contacted, either directly or indirectly, based on the information so disclosed without the express written permission of the Producing Party.

### IV. Access to Confidential and Highly Confidential Information

32.    General. The Receiving Party and counsel for the Receiving Party shall not disclose or permit the disclosure of any Confidential or Highly Confidential Information to any third person or entity except as set forth in Paragraphs 33 and 34.

33.    In the absence of written permission from the Producing Party or an order of the Court, any Confidential Information produced in accordance with the provisions of this Protective Order shall be used solely for purposes of this Litigation (except as provided by Paragraph 33.l) and its contents shall not be disclosed to any person unless that person falls within at least one of the following categories:

- a. Outside Counsel and In-House Counsel, and the attorneys, paralegals, stenographic, and clerical staff employed by such counsel;
- b. Vendor agents retained by the parties or counsel for the parties, provided

10

that the vendor agrees to be bound by this Protective Order and completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound;

c. Individual Parties;

d. Present or former officers, directors, and employees of a Party, provided that former officers, directors, or employees of the Designating Party may be shown documents prepared after the date of his or her departure only to the extent counsel for the Receiving Party determines in good faith that the employee's assistance is reasonably necessary to the conduct of this Litigation and provided that such persons have completed the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound. Nothing in this paragraph shall be deemed to permit the showing of one defendant's Confidential Information to an officer, director, or employee of another defendant, except to the extent otherwise authorized by this Order;

e. Stenographic employees and court reporters recording or transcribing testimony in this Litigation;

f. The Court, any Special Master appointed by the Court, and any members of their staffs to whom it is necessary to disclose the information;

g. Formally retained independent experts and/or consultants, provided that the recipient agrees to be bound by this Protective Order and completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound;

h. Any individual(s) who authored, prepared, or previously reviewed or received the information;

11

i.   To the extent contemplated by Case Management Order One, dated April 11, 2018 (Dkt. No. 232), those liability insurance companies from which any Defendant has sought or may seek insurance coverage to (i) provide or reimburse for the defense of the Litigation and/or (ii) satisfy all or part of any liability in the Litigation.

j.   State or federal law enforcement agencies, but only after such persons have completed the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound. Disclosure pursuant to this subparagraph will be made only after the Designating Party has been given ten (10) days' notice of the Receiving Party's intent to disclose, and a description of the materials the Receiving Party intends to disclose. If the Designating Party objects to disclosure, the Designating Party may request a meet and confer and may seek a protective order from the Court.

k.   Plaintiff's counsel of record to any Plaintiff with a case pending in MDL 2804 shall be permitted to receive the Confidential Information of any Producing Party regardless of whether that attorney is counsel of record in any individual action against the Producing Party and there shall be no need for such counsel to execute such acknowledgement because such counsel is bound by the terms of this Protective Order;

l.   Counsel for claimants in litigation pending outside this Litigation and arising from one or more Defendants' manufacture, marketing, sale, or distribution of opioid products for use in this or such other action in which the Producing Party is a Defendant in that litigation, provided that the proposed recipient agrees to be bound by this Protective Order and completed the certification

contained in Exhibit A, Acknowledgment and Agreement to Be Bound. Plaintiffs' Liaison Counsel shall disclose to all Defendants at the end of each month a cumulative list providing the identity of the counsel who have executed such acknowledgements and will receive Confidential and Highly Confidential Information pursuant to this Order and a list of the case name(s), number(s), and jurisdiction(s) in which that counsel represents other claimants. Neither the receipt of information pursuant to this paragraph nor the provision of the certification shall in any way be deemed a submission, by the claimant represented by counsel in such outside litigation, to the jurisdiction of this Court or any other federal court or a waiver of any jurisdictional arguments available to such claimant, provided, however, that any such recipient of documents or information produced under this Order shall submit to the jurisdiction of this Court for any violations of this Order.; or

m. Witnesses during deposition, who may be shown, but shall not be permitted to retain, Confidential Information; provided, however, that, unless otherwise agreed by the relevant Parties or ordered by the Court, no Confidential Information of one defendant may be shown to any witness who is a current employee of another defendant who is not otherwise authorized to receive the information under this Order.

34.     In the absence of written permission from the Producing Party or an order of the Court, any Highly Confidential Information produced in accordance with the provisions of this Protective Order shall be used solely for purposes of this Litigation (except as provided by Paragraph 34.j) and its contents shall not be disclosed to any person unless

13

that person falls within at least one of the following categories:

    a. Outside Counsel and In-House Counsel of any Plaintiff, and the attorneys, paralegals, stenographic, and clerical staff employed by such counsel. Information designated as Highly Confidential by any Defendant may be disclosed to one In-House counsel of another Defendant, provided that the In-House counsel (i) has regular involvement in the Litigation, (ii) disclosure to the individual is reasonably necessary to this Litigation, and (iii) the individual completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound. Except as otherwise provided in this Order or any other Order in this Litigation, no other Employees of a Defendant may receive the Highly Confidential information of another. Any information designated as Highly Confidential shall be disclosed to an In-House Counsel for any Plaintiff only to the extent Outside Counsel for that Plaintiff determines in good faith that disclosure to the In-House Counsel is reasonably necessary to the Litigation;

    b. Vendor agents retained by the parties or counsel for the parties, provided that the vendor agrees to be bound by this Protective Order and completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound;;

    c. Individual Parties that have produced the designated information;

    d. Stenographic employees and court reporters recording or transcribing testimony in this Litigation;

    e. The Court, any Special Master appointed by the Court, and any members of their staffs to whom it is necessary to disclose the information;

f.  Formally retained independent experts and/or consultants, provided that the recipient agrees to be bound by this Protective Order and completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound;

g.  Any individual(s) who authored, prepared or previously reviewed or received the information;

h.  State or federal law enforcement agencies, but only after such persons have completed the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound. Disclosure pursuant to this subparagraph will be made only after the Designating Party has been given ten (10) days' notice of the Receiving Party's intent to disclose, and a description of the materials the Receiving Party intends to disclose. If the Designating Party objects to disclosure, the Designating Party may request a meet and confer and may seek a protective order from the Court.

i.  Plaintiff's counsel of record to any Plaintiff with a case pending in MDL 2804 shall be permitted to receive the Confidential Information of any Producing Party regardless of whether that attorney is counsel of record in any individual action against the Producing Party and there shall be no need for such counsel to execute such acknowledgement because such counsel is bound by the terms of this Protective Order;

j.  Counsel for claimants litigation pending outside this Litigation and arising from one or more Defendants' manufacture, marketing, sale, or distribution of opioid products for use in this or such other action in which the Producing Party is a Defendant in that litigation, provided that the proposed recipient

15

agrees to be bound by this Protective Order and completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound. Plaintiffs' Liaison Counsel shall disclose to all Defendants at the end of each month a cumulative list providing the identity of the counsel who have executed such acknowledgements and will receive Confidential and Highly Confidential Information pursuant to this Order and a list of the case name(s), number(s), and jurisdiction(s) in which that counsel represents other claimants. Neither the receipt of information pursuant to this paragraph nor the provision of the certification shall in any way be deemed a submission, by the claimant represented by counsel in such outside litigation, to the jurisdiction of this Court or any other federal court or a waiver of any jurisdictional arguments available to such claimant; or

k. Witnesses during deposition, who may be shown, but shall not be permitted to retain, Highly Confidential Information; provided, however, that, unless otherwise agreed by the relevant Parties or ordered by the Court, no Highly Confidential Information of one defendant may be shown to any witness who is a current employee of another defendant who is not otherwise authorized to receive the information under this Order.

35. With respect to documents produced to Plaintiffs, documents designated as "HIGHLY CONFIDENTIAL" will be treated in the same manner as documents designated "CONFIDENTIAL," except that Plaintiffs may not disclose Highly Confidential Information to In-House Counsel (or current employees) of any Competitor of the Producing Party, except as otherwise provided in this Order or any other Order in this Litigation.

36.     In the event that In-House Counsel (or current employees) of any Competitor of the Producing Party is present at the deposition of an employee or former employee of the Producing Party, prior to a document designated as Highly Confidential being used in the examination, such In-House Counsel (current employees) of any Competitor of the Producing Party shall excuse himself or herself from the deposition room without delaying or disrupting the deposition.

## V. Confidentiality Acknowledgment

37.     Each person required under this Order to complete the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound, shall be provided with a copy of this Protective Order, which he or she shall read, and, upon reading this Protective Order, shall sign an Acknowledgment, in the form annexed hereto as Exhibit A, acknowledging that he or she has read this Protective Order and shall abide by its terms. These Acknowledgments are strictly confidential. Unless otherwise provided in this Order, Counsel for each Party shall maintain the Acknowledgments without giving copies to the other side. The Parties expressly agree, and it is hereby ordered that, except in the event of a violation of this Protective Order, there will be no attempt to seek copies of the Acknowledgments or to determine the identities of persons signing them. If the Court finds that any disclosure is necessary to investigate a violation of this Protective Order, such disclosure will be pursuant to separate court order. Persons who come into contact with Confidential Information or Highly Confidential Information for clerical or administrative purposes, and who do not retain copies or extracts thereof, are not required to execute Acknowledgements, but must comply with the terms of this Protective Order.

17

## VI. Litigation Experts and Consultants.

38.     Formally Retained Independent Experts and Consultants.     Subject to the provisions of this Protective Order, all Confidential Information or Highly Confidential Information may be disclosed to any formally retained independent expert or consultant who has agreed in writing pursuant to Paragraph 37 or on the record of a deposition to be bound by this Protective Order. The party retaining an independent expert or consultant shall use diligent efforts to determine if the independent expert or consultant is currently working with or for a Competitor of a Producing Party in connection with a Competitor's opioid product. Prior to the initial disclosure of any information designated as Confidential Information or Highly Confidential Information to an expert or consultant who is currently working with or for a Competitor of the Producing Party in connection with a Competitor's opioid product, the party wishing to make such a disclosure ("Notifying Party") shall provide to counsel for the Producing Party in writing, which may include by e- mail, a statement that such disclosure will be made, identifying the general subject matter category of the Discovery Material to be disclosed, providing the nature of the affiliation with the Competitor entity and name of the Competitor entity, and stating the general purpose of such disclosure; the specific name of the formally retained independent expert or consultant need not be provided. The Producing Party shall have seven (7) days from its receipt of the notice to deliver to the Notifying Party its good faith written objections (if any), which may include e-mail, to such disclosure to the expert or consultant.

39.     Absent timely objection, the expert or consultant shall be allowed to receive Confidential and Highly Confidential Information pursuant to the terms of this Protective Order. Upon and pending resolution of a timely objection, disclosure to the expert or

consultant shall not be made. If the Notifying Party desires to challenge to the Producing Party's written objection to the expert or consultant, the Notifying Party shall so inform the Producing Party in writing, within ten (10) days of receipt of the Producing Party's written objection, of its reasons for challenging the objection. The expert or consultant shall then be allowed to receive Confidential and Highly Confidential Information pursuant to the terms of this Protective Order after seven (7) days from receipt of the Producing Party's timely challenge to the written objection to the expert or consultant, unless within that seven day period, the Producing Party seeks relief from the Court pursuant to the procedures for discovery disputes set forth in Section 9(o) of Case Management Order One, or the Parties stipulate to an agreement. Once a motion is filed, disclosure shall not occur until the issue is decided by the Court and, if the motion is denied, the appeal period from the Court order denying the motion has expired. In making such motion, it shall be the Producing Party's burden to demonstrate good cause for preventing such disclosure.

## VII. Protection and Use of Confidential and Highly Confidential Information

40.     Persons receiving or having knowledge of Confidential Information or Highly Confidential Information by virtue of their participation in this proceeding, or by virtue of obtaining any documents or other Protected Material produced or disclosed pursuant to this Protective Order, shall use that Confidential Information or Highly Confidential Information only as permitted by this Protective Order. Counsel shall take reasonable steps to assure the security of any Confidential Information or Highly Confidential Information and will limit access to such material to those persons authorized by this Protective Order.

41.     Nothing herein shall restrict a person qualified to receive Confidential

Information and Highly Confidential Information pursuant to this Protective Order from making working copies, abstracts, digests and analyses of such information for use in connection with this Litigation and such working copies, abstracts, digests and analyses shall be deemed to have the same level of protection under the terms of this Protective Order. Further, nothing herein shall restrict a qualified recipient from converting or translating such information into machine-readable form for incorporation in a data retrieval system used in connection with this Litigation, provided that access to such information, in whatever form stored or reproduced, shall be deemed to have the same level of protection under the terms of this Protective Order.

42.     All persons qualified to receive Confidential Information and Highly Confidential Information pursuant to this Protective Order shall at all times keep all notes, abstractions, or other work product derived from or containing Confidential Information or Highly Confidential Information in a manner to protect it from disclosure not in accordance with this Protective Order, and shall be obligated to maintain the confidentiality of such work product and shall not disclose or reveal the contents of said notes, abstractions or other work product after the documents, materials, or other thing, or portions thereof (and the information contained therein) are returned and surrendered pursuant to Paragraph 46. Nothing in this Protective Order requires the Receiving Party's Counsel to disclose work product at the conclusion of the case.

43.     Notwithstanding any other provisions hereof, nothing herein shall restrict any Party's Counsel from rendering advice to that Counsel's clients with respect to this proceeding or a related action in which the Receiving Party is permitted by this Protective Order to use Confidential Information or Highly Confidential Information and, in the course thereof, relying upon such information, provided that in rendering such advice, Counsel

20

shall not disclose any other Party's Confidential Information or Highly Confidential Information other than in a manner provided for in this Protective Order.

44.     Nothing contained in this Protective Order shall prejudice in any way the rights of any Party to object to the relevancy, authenticity, or admissibility into evidence of any document or other information subject to this Protective Order, or otherwise constitute or operate as an admission by any Party that any particular document or other information is or is not relevant, authentic, or admissible into evidence at any deposition, at trial, or in a hearing

45.     Nothing contained in this Protective Order shall preclude any Party from using its own Confidential Information or Highly Confidential Information in any manner it sees fit, without prior consent of any Party or the Court.

46.     To the extent that a Producing Party uses or discloses to a third party its designated confidential information in a manner that causes the information to lose its confidential status, the Receiving Party is entitled to notice of the Producing Party's use of the confidential information in such a manner that the information has lost its confidentiality, and the Receiving Party may also use the information in the same manner as the Producing Party.

47.     If a Receiving Party learns of any unauthorized disclosure of Confidential Information or Highly Confidential Information, it shall immediately (a) inform the Producing Party in writing of all pertinent facts relating to such disclosure; (b) make its best effort to retrieve all copies of the Confidential Information or Highly Confidential Information; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order; and (d) request such person or persons execute the Acknowledgment that is attached hereto as Exhibit A.

21

48.     Unless otherwise agreed or ordered, this Protective Order shall remain in force after dismissal or entry of final judgment not subject to further appeal of this Litigation.

49.     Within ninety (90) days after dismissal or entry of final judgment not subject to further appeal of this Litigation, or such other time as the Producing Party may agree in writing, the Receiving Party shall return all Confidential Information and Highly Confidential Information under this Protective Order unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the Parties agree to destruction to the extent practicable in lieu of return;[1] or (3) as to documents bearing the notations, summations, or other mental impressions of the Receiving Party, that Party elects to destroy the documents and certifies to the producing party that it has done so.

50.     Notwithstanding the above requirements to return or destroy documents, Plaintiffs' outside counsel and Defendants' outside counsel may retain (1) any materials required to be retained by law or ethical rules, (2) one copy of their work file and work product, and (3) one complete set of all documents filed with the Court including those filed under seal, deposition and trial transcripts, and deposition and trial exhibits. Any retained Confidential or Highly Confidential Discovery Material shall continue to be protected under this Protective Order. An attorney may use his or her work product in subsequent litigation, provided that the attorney's use does not disclose or use Confidential Information or Highly Confidential Information.

---

[1] The parties may choose to agree that the Receiving Party shall destroy documents containing Confidential Information or Highly Confidential Information and certify the fact of destruction, and that the Receiving Party shall not be required to locate, isolate and return e-mails (including attachments to e-mails) that may include Confidential Information or Highly Confidential Information, or Confidential Information or Highly Confidential Information contained in deposition transcripts or drafts or final expert reports.

22

## VIII. Changes in Designation of Information

51.     If a Party through inadvertence produces any Confidential Information or
Highly Confidential Information without labeling or marking or otherwise designating it as
such in accordance with the provisions of this Protective Order, the Producing Party may
give written notice to the Receiving Party that the document or thing produced is deemed
"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and should be treated as such in
accordance with the provisions of this Protective Order, and provide replacement media,
images, and any associated production information to conform the document to the
appropriate designation and facilitate use of the revised designation in the production. The
Receiving Party must treat such documents and things with the noticed level of protection
from the date such notice is received. Disclosure, prior to the receipt of such notice of
such information, to persons not authorized to receive such information shall not be
deemed a violation of this Protective Order. Any Producing Party may designate as
"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or withdraw a "CONFIDENTIAL" or
"HIGHLY CONFIDENTIAL" designation from any material that it has produced consistent
with this Protective Order, provided, however, that such redesignation shall be effective
only as of the date of such redesignation. Such redesignation shall be accomplished by
notifying Counsel for each Party in writing of such redesignation and providing
replacement images bearing the appropriate description, along with the replacement
media, images, and associated production information referenced above. Upon receipt of
any redesignation and replacement image that designates material as "CONFIDENTIAL"
or "HIGHLY CONFIDENTIAL", the Receiving Party shall (i) treat such material in
accordance with this Protective Order; (ii) take reasonable steps to notify any persons
known to have possession of any such material of such redesignation under this

23

Protective Order; and (iii) promptly endeavor to procure all copies of such material from any persons known to have possession of such material who are not entitled to receipt under this Protective Order. It is understood that the Receiving Party's good faith efforts to procure all copies may not result in the actual return of all copies of such materials.

52.     A Receiving Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed. If the Receiving Party believes that portion(s) of a document are not properly designated as Confidential Information or Highly Confidential Information, the Receiving Party will identify the specific information that it believes is improperly designated and notify the Producing Party, in writing or voice-to-voice dialogue, of its good faith belief that the confidentiality designation was not proper and must give the Producing Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain, in writing within seven (7) days, the basis of the chosen designation.     If a Receiving Party elects to press a challenge to a confidentiality designation after considering the justification offered by the Producing Party, it shall notify the Producing Party and the Receiving Party shall have seven (7) days from such notification to challenge the designation by commencing a discovery dispute under the procedures set forth in Section 9(o) of Case Management Order One. The ultimate burden of persuasion in any such challenge proceeding shall be on the Producing Party as if the Producing Party were seeking a Protective Order pursuant to Fed. R. Civ. P. 26(c) in the first instance. Until the Court rules on the challenge, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation. In the even that a designation is changed by the Producing Party or by Court Order, the Producing Party shall provide replacement media,

24

images, and associated production information as provided above.

## IX. Inadvertent Production of Documents

53.     Non-Waiver of Privilege.  The parties agree that they do not intend to disclose information subject to a claim of attorney-client privilege, attorney work product protection, common-interest privilege, or any other privilege, immunity or protection from production or disclosure ("Privileged Information"). If, nevertheless, a Producing Party discloses Privileged Information, such disclosure (as distinct from use) shall be deemed inadvertent without need of further showing under Federal Rule of Evidence 502(b) and shall not constitute or be deemed a waiver or forfeiture of the privilege or protection from discovery in this case or in any other federal or state proceeding by that party (the "Disclosing Party").  This Section shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

54.     Notice of Production of Privileged Information. If a Party or non-Party discovers that it has produced Privileged Information, it shall promptly notify the Receiving Party of the production in writing, shall identify the produced Privileged Information by Bates range where possible, and may demand that the Receiving Party return or destroy the Privileged Information. In the event that a Receiving Party receives information that it believes is subject to a good faith claim of privilege by the Designating Party, the Receiving Party shall immediately refrain from examining the information and shall promptly notify the Designating Party in writing that the Receiving Party possesses potentially Privileged Information.  The Designating Party shall have seven (7) days to assert privilege over the identified information. If the Designating Party does not assert a claim of privilege within the 7-day period, the information in question shall be deemed non-privileged.

55.     Recall of Privileged Information. If the Designating Party has notified the Receiving Party of production, or has confirmed the production called to its attention by the Receiving Party, the Receiving Party shall within fourteen (14) days of receiving such notification or confirmation: (1) destroy or return to the Designating Party all copies or versions of the produced Privileged Information requested to be returned or destroyed; (2) delete from its work product or other materials any quoted or paraphrased portions of the produced Privileged Information; and (3) ensure that produced Privileged Information is not disclosed in any manner to any Party or non-Party. The following procedures shall be followed to ensure all copies of such ESI are appropriately removed from the Receiving Party's system:

i.  Locate each recalled document in the document review/production database and delete the record from the database;

ii.  If there is a native file link to the recalled document, remove the native file from the network path;

iii.  If the database has an image load file, locate the document image(s) loaded into the viewing software and delete the image file(s) corresponding to the recalled documents. Remove the line(s) corresponding to the document image(s) from the image load file;

iv.  Apply the same process to any additional copies of the document or database, where possible;

v.  Locate and destroy all other copies of the document, whether in electronic or hardcopy form. To the extent that copies of the document are contained on write-protected media, such as CDs or DVDs, these media shall be discarded, with the exception of production media received from the recalling party, which shall be treated as

26

described herein;

vi. If the document was produced in a write-protected format, the party seeking to recall the document shall, at its election, either (i) provide a replacement copy of the relevant production from which the document has been removed, in which case the receiving party shall discard the original production media; or (ii) allow the receiving party to retain the original production media, in which case the receiving party shall take steps to ensure that the recalled document will not be used; and

vii. Confirm that the recall of ESI under this procedure is complete by way of letter to the party seeking to recall ESI.

56. Notwithstanding the above, the Receiving Party may segregate and retain one copy of the clawed back information solely for the purpose of disputing the claim of privilege. The Receiving Party shall not use any produced Privileged Information in connection with this Litigation or for any other purpose other than to dispute the claim of privilege. The Receiving Party may file a motion disputing the claim of privilege and seeking an order compelling production of the material at issue; the Designating Party may oppose any such motion, including on the grounds that inadvertent disclosure does not waive privilege.

57. Within 14 days of the notification that such Privileged Information has been returned, destroyed, sequestered, or deleted ("Clawed-Back Information"), the Disclosing Party shall produce a privilege log with respect to the Clawed-Back Information. Within 14 days after receiving the Disclosing Party's privilege log with respect to such Clawed-Back Information, a receiving party may notify the Disclosing Party in writing of an objection to a claim of privilege or work-product protection with respect to the Clawed-Back Information. Within 14 days of the receipt of such notification, the Disclosing Party

27

and the objecting party shall meet and confer in an effort to resolve any disagreement concerning the Disclosing Party's privilege or work-product claim with respect to such Clawed-Back Information. The parties may stipulate to extend the time periods set forth in this paragraph.

58.     If, for any reason, the Disclosing Party and Receiving Party (or parties) do not resolve their disagreement after conducting the mandatory meet and confer, the Receiving Party may request a conference with the Court pursuant to the procedures set forth in Case Management Order One. The Disclosing Party bears the burden of establishing the privileged or protected nature of any Privileged Information.

59.     Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Nothing in this Order shall limit the right to request an in-camera review of any Privileged Information.

60.     In the event any prior order or agreement between the parties and/or between the parties and a non-party concerning the disclosure of privileged and/or work product protected materials conflicts with any of the provisions of this Order, the provisions of this Stipulated Order shall control.

61.     Nothing in this Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

## X. Filing and Use at Trial of Protected Material

62.     Only Confidential or Highly Confidential portions of relevant documents

28

are subject to sealing. To the extent that a brief, memorandum, or pleading references any document designated as Confidential or Highly Confidential, then the brief, memorandum or pleading shall refer the Court to the particular exhibit filed under seal without disclosing the contents of any confidential information. If, however, the confidential information must be intertwined within the text of the document, a party may timely move the Court for leave to file both a redacted version for the public docket and an unredacted version for sealing.

63.     Absent    a    Court-granted    exception    based    upon    extraordinary circumstances, any and all filings made under seal shall be submitted electronically and shall be linked to this Stipulated Protective Order or other relevant authorizing order. If both redacted and unredacted versions are being submitted for filing, each version shall be clearly named so there is no confusion as to why there are two entries on the docket for the same filing.

64.     If the Court has granted an exception to electronic filing, a sealed filing shall be placed in a sealed envelope marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER." The sealed envelope shall display the case name and number, a designation as to what the document is, the name of the party on whose behalf it is submitted, and the name of the attorney who has filed the sealed document. A copy of this Stipulated Protective Order, or other relevant authorizing order, shall be included in the sealed envelope.

65.     A Party that intends to present Confidential Information or Highly Confidential Information at a hearing shall bring that issue to the Court's and Parties' attention without disclosing the Confidential Information or Highly Confidential Information. The Court may thereafter make such orders, including any stipulated orders, as are necessary to govern the use of Confidential Information or Highly Confidential Information

29

at the hearing. The use of any Confidential Information or Highly Confidential Information at trial shall be governed by a separate stipulation and/or court order.

## XI. Information or Highly Confidential Information Requested by Third Party; Procedure Following Request.

66.     If any person receiving Discovery Material covered by this Protective Order (the "Receiver") is served with a subpoena, a request for information, or any other form of legal process that purports to compel disclosure of any Confidential Information or Highly Confidential Information covered by this Protective Order ("Request"), the Receiver must so notify the Designating Party, in writing, immediately and in no event more than five (5) court days after receiving the Request. Such notification must include a copy of the Request.

67.     The Receiver also must immediately inform the party who made the Request ("Requesting Party") in writing that some or all the requested material is the subject of this Protective Order. In addition, the Receiver must deliver a copy of this Protective Order promptly to the Requesting Party.

68.     The purpose of imposing these duties is to alert the interested persons to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to protect its Confidential Information or Highly Confidential Information. The Designating Party shall bear the burden and the expense of seeking protection of its Confidential Information or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging the Receiver in this Litigation to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the Receiver has in its possession, custody or control Confidential Information or Highly Confidential Information by the other Party in this Litigation.

30

69.    Materials that have been designated as Confidential or Highly Confidential Discovery Material shall not be provided or disclosed to any third party in response to a request under any public records act, or any similar federal, state or municipal law (collectively, the "Public Disclosure Laws"), and are exempt from disclosure pursuant to this Protective Order. If a Party to this Litigation receives such a request, it shall (i) provide a copy of this Protective Order to the Requesting Party and inform it that the requested materials are exempt from disclosure and that the Party is barred by this Protective Order from disclosing them, and (ii) promptly inform the Designating Party that has produced the requested material that the request has been made, identifying the name of the Requesting Party and the particular materials sought.  If the Designating Party seeks a protective order, the Receiving Party shall not disclose such material until the Court has ruled on the request for a protective order.  The restrictions in this paragraph shall not apply to materials that (i) the Designating Party expressly consents in writing to disclosure; or (ii) this Court has determined by court order to have been improperly designated as Confidential or Highly Confidential Discovery Material. The provisions of this section shall apply to any entity in receipt of Confidential or Highly Confidential Discovery Material governed by this Protective Order. Nothing in this Protective Order shall be deemed to (1) foreclose any Party from arguing that Discovery Material is not a public record for purposes of the Public Disclosure Laws; (2) prevent any Party from claiming any applicable exemption to the Public Disclosure Laws; or (3) limit any arguments that a Party may make as to why Discovery Material is exempt from disclosure.

31

## XII. HIPAA-Protected Information

70.     General.  Discovery in this Litigation may involve production of "Protected Health Information" as that term is defined and set forth in 45 C.F.R. § 160.103, for which special protection from public disclosure and from any purpose other than prosecuting this Action is warranted

71.     "Protected Health Information" shall encompass information within the scope and definition set forth in 45 C.F.R. § 160.103 that is provided to the Parties by a covered entity as defined by 45 C.F.R. § 160.103 ("Covered Entities") or by a business associate of a Covered Entity as defined by 45 C.F.R. § 160.103 ("Business Associate") in the course of the Litigation, as well as information covered by the privacy laws of any individual states, as applicable.

72.     Any Party who produces Protected Health Information in this Litigation shall designate such discovery material "Confidential Protected Health Information" in accordance with the provisions of this Protective Order.

73.     Unless otherwise agreed between counsel for the Parties, the designation of discovery material as "Confidential Protected Health Information" shall be made at the following times: (a) for documents or things at the time of the production of the documents or things; (b) for declarations, correspondence, expert witness reports, written discovery responses, court filings, pleadings, and other documents, at the time of the service or filing, whichever occurs first; (c) for testimony, at the time such testimony is given by a statement designating the testimony as "Confidential Protected Health Information" made on the record or within thirty (30) days after receipt of the transcript of the deposition. The designation of discovery material as "Confidential Protected Health

Information" shall be made in the following manner: (a) or documents, by placing the notation "Confidential Protected Health Information" or similar legend on each page of such document; (b) for tangible things, by placing the notation "Confidential Protected Health Information" on the object or container thereof or if impracticable, as otherwise agreed by the parties; (c) for declarations, correspondence, expert witness reports, written discovery responses, court filings, pleadings, and any other documents containing Protected Health Information, by placing the notation "Confidential Protected Health Information" both on the face of such document and on any particular designated pages of such document; and (d) for testimony, by orally designating such testimony as being "Confidential Protected Health Information" at the time the testimony is given or by designating the portions of the transcript in a letter to be served on the court reporter and opposing counsel within thirty (30) calendar days after receipt of the certified transcript of the deposition.

74.     Pursuant to 45 C.F.R. § 164.512(e)(1), all Covered Entities and their Business Associates (as defined in 45 C.F.R. § 160.103), or entities in receipt of information from such entities, are hereby authorized to disclose Protected Health Information pertaining to the Action to those persons and for such purposes as designated in herein.   Further, all Parties that are entities subject to state privacy law requirements, or entities in receipt of information from such entities, are hereby authorized to disclose Protected Health Information pertaining to this Action to those persons and for such purposes as designated in herein.  The Court has determined that disclosure of such Protected Health Information is necessary for the conduct of proceedings before it and that failure to make the disclosure would be contrary to public interest or to the detriment of one or more parties to the proceedings.

33

75.     The Parties shall not use or disclose Protected Health Information for any purpose other than the Litigation, including any appeals. The Parties may, inter alia, disclose Protected Health Information to (a) counsel for the Parties and employees of counsel who have responsibility for the Litigation; (b) the Court and its personnel; (c) Court reporters; (d) experts and consultants; and (e) other entities or persons involved in the Litigation.

76.     Within sixty days after dismissal or entry of final judgment not subject to further appeal, the Parties, their counsel, and any person or entity in possession of Protected Health Information received pursuant to this Order shall destroy or return to the Covered Entity or Business Associate such Protected Health Information.

77.     Nothing in this Order authorizes the parties to obtain Protected Health Information through means other than formal discovery requests, subpoenas, depositions, pursuant to a patient authorization, or any other lawful process.

## XIII. Information Subject to Existing Obligation of Confidentiality Independent of this Protective Order.

78.     In the event that a Party is required by a valid discovery request to produce any information held by it subject to an obligation of confidentiality in favor of a third party, the Party shall, promptly upon recognizing that such third party's rights are implicated, provide the third party with a copy of this Protective Order and (i) inform the third party in writing of the Party's obligation to produce such information in connection with this Litigation and of its intention to do so, subject to the protections of this Protective Order; (ii) inform the third party in writing of the third party's right within fourteen (14) days to seek further protection or other relief from the Court if, in good faith, it believes such information to be confidential under the said obligation and either objects to the Party's

34

production of such information or regards the provisions of this Protective Order to be inadequate; and (iii) seek the third party's consent to such disclosure if that third party does not plan to object.     Thereafter, the Party shall refrain from producing such information for a period of fourteen (14) days in order to permit the third party an opportunity to seek relief from the Court, unless the third party earlier consents to disclosure. If the third party fails to seek such relief, the Party shall promptly produce the information in question subject to the protections of this Protective Order, or alternatively, shall promptly seek to be relieved of this obligation or for clarification of this obligation by the Court.

## XIV.   Miscellaneous Provisions

79.     Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make any orders that may be appropriate with respect to the use and disclosure of any documents produced or use in discovery or at trial.

80.     Nothing in this Protective Order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action to seek a modification or amendment of this Protective Order.

81.     In the event anyone shall violate or threaten to violate the terms of this Protective Order, the Producing Party may immediately apply to obtain injunctive relief against any person violating or threatening to violate any of the terms of this Protective Order, and in the event the Producing Party shall do so, the respondent person, subject to the provisions of this Protective Order, shall not employ as a defense thereto the claim that the Producing Party possesses an adequate remedy at law.

82.     This Protective Order shall not be construed as waiving any right to assert a claim of privilege, relevance, or other grounds for not producing Discovery

35

Material called for, and access to such Discovery Material shall be only as provided for by separate agreement of the Parties or by the Court.

83.     This Protective Order may be amended without leave of the Court by agreement of Outside Counsel for the Parties in the form of a written stipulation filed with the Court. The Protective Order shall continue in force until amended or superseded by express order of the Court, and shall survive and remain in effect after the termination of this Litigation.

84.     Notwithstanding any other provision in the Order, nothing in this Protective Order shall affect or modify Defendants' ability to review Plaintiffs' information and report such information to any applicable regulatory agencies.

85.     This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any documents or information designated as Confidential or Highly Confidential by counsel or the parties is subject to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

**IT IS SO ORDERED.**

Dated:___5/15/18_____                    /s/Dan Aaron Polster

                                               Honorable Dan Aaron Polster
                                               United States District Judge

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **Case No.: 1:17-md-2804-DAP** |
| **This document relates to:** | **Honorable Dan Aaron Polster** |
| *All Cases* | |

## EXHIBIT A TO CASE MANAGEMENT ORDER NO. _____

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

The undersigned agrees:

I declare under penalty of perjury that I have read in its entirety and understand the Protective Order (CMO No. __) that was issued by the United States District Court for the Northern District of Ohio on_____, 2018 in *In re: National Prescription Opiate Litigation* (the "Protective Order").

I agree to comply with and to be bound by all the terms of the Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to the Protective Order to any person or entity except in strict compliance with the provisions of the Protective Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of Ohio for the purposes of enforcing terms of the Protective Order, even if such enforcement proceedings occur after termination of these proceedings.

Date:_____

City and State where sworn and signed:_____

Printed Name:_____

Signature:_____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| All Cases | Judge Dan Aaron Polster |

## CASE MANAGEMENT ORDER NO ___3___
## REGARDING DOCUMENT AND ELECTRONICALLY STORED INFORMATION PRODUCTION PROTOCOL

### 1. PURPOSE

This Order will govern production of Documents and ESI (as defined below) by Plaintiffs and Defendants (the "Parties") as described in Federal Rules of Civil Procedure 26, 33, and 34. This Order shall apply to the production of hard-copy and electronic documents by the Parties in this litigation.

The production of documents and ESI by the Parties also shall be subject to the provisions of orders concerning confidentiality, privilege, and/or protected health information as agreed to among the Parties and/or entered by the Court.

The Parties reserve all objections under the Federal Rules of Civil Procedure and applicable decision authority other than concerning matters that are addressed in this Order.

Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of documents

1

or ESI. Nothing in this Order shall be interpreted to supersede the provisions of orders governing confidentiality, privilege, and/or protected health information entered by the Court in this litigation, unless expressly provided for in such an order.

## 2. DEFINITIONS

a. **"Confidentiality Designation"** means the legend affixed to Documents or ESI for confidential or highly confidential information as defined by, and subject to, the terms of the order concerning confidentiality agreed to an/or entered by the Court in this litigation.

b. **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "document" shall include hard-copy documents, electronic documents, and ESI as defined herein.

c. **"Electronic Document or Data"** means documents or data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer slide presentations (e.g., PowerPoint or Keynote slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

d. **"Electronically stored information"** or **"ESI,"** as used herein, has the same meaning as in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes Electronic Documents or Data, and computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or virtualized devices or media.

e. **"Extracted Full Text"** means the full text that is extracted electronically from native electronic files, and includes all header, footer, and document body

2

information.

f.    **"Hard-Copy Document"** means documents existing in paper form at the time of collection.

g.    **"Hash Value"** is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.

h.    **"Load files"** means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or native format files, as well as the corresponding Extracted Full Text or OCR text files, and containing agreed-upon extracted or user-created metadata, as well as information indicating unitization (i.e., document breaks and document relationships such as those between an email and its attachments) used to load that production set into the document review platform of the Party receiving a production ("Receiving Party"), and correlate its data within that platform. A load file is used to import all image, native, and text files and their corresponding production information into a document database. The Producing Party shall produce a load file for all produced documents with each particular production in accordance with specifications provided herein.

i.    **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

3

j.     **"Metadata"** means: (i) information embedded in or associated with a native file that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, redaction status, privilege status, or confidentiality status created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected.  Nothing in this order shall require any party to manually populate the value for any metadata field.

k.     **"Native Format" or "native file"** means the format of ESI in which it was generated and/or used by the Party Producing ESI or documents (the "Producing Party") in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xslx file.

l.     **"Optical Character Recognition" or "OCR"** means the optical character recognition technology used to read the text within electronic images of paper Documents and create a file containing a visible, searchable text format of such Documents.

m.     **"Searchable Text"** means the native text extracted from an electronic document and any Optical Character Recognition text ("OCR text") generated from the electronic image of a paper Document.

4

## 3. E-DISCOVERY LIAISON

The Parties will identify to each other liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI ("E-discovery Liaisons"). Each Party's designated E-discovery Liaison(s) will be, or will have access to those who are, familiar with their Party's respective electronic systems and capabilities and knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4. IDENTIFICATION OF DOCUMENTS AND ESI

a.      The Parties agree to meet and confer to discuss (i) the identification of the custodial and noncustodial data sources containing potentially relevant ESI for potential collection, review, and production; (ii) additional parameters for scoping the review and production efforts (e.g., application of date ranges, de-NIST'ing, etc.); (iii) potential use and identification of search terms, tools, or techniques; (iv) the identification and production of documents and ESI from custodial and non-custodial sources that do not require the use of search terms, tools, or techniques; (v) the method each Party proposes to use to identify and de-duplicate duplicate documents, and any exceptions to such de-duplication the Party proposes to implement; and (vi) the treatment of non-responsive documents within parent-child families. The meet and confer between Plaintiffs and each Defendant will take place by the later of seven (7) calendar days following entry of this Order, or ten (10) days after the particular Defendant is served with a first document request herein.

b.      The Parties further agree to meet and confer to the extent that this Order imposes any undue burden or expense on any Plaintiff or Defendant with respect to its response to any particular discovery request.

c.      Nothing in this order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements).

## 5. DEDUPLICATION

a.      To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall produce only a single, deduplicated copy of a responsive document. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches; so-called "near duplicates" will not be included within this definition.

b.      To the extent a party de-duplicates its documents, it shall de-duplicate stand-alone documents or entire document families in their ESI sources by the use of MD5, SHA-1, or SHA256 hash values. Where any such documents have attachments, hash values must be identical for both the document plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

c.      A Producing Party shall de-duplicate documents across custodians and populate a field of data that identifies each custodian who had a copy of the produced document (the "Duplicate Custodian" field) in addition to a separate field of data identifying the custodian whose document is produced; such de-duplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A Producing Party

6

shall use a uniform description of a particular custodian across productions. Multiple custodians in the "Duplicate Custodian" field shall be separated by a semicolon. Entity/departmental custodians should be identified with a description of the entity or department to the extent applicable.

d.  No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

e.  Hard-Copy Documents shall not be eliminated as duplicates of ESI.

f.  If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the "Duplicate Custodian" field. The overlay file shall include all custodians listed in the "Duplicate Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

## 6. PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

a. Standard Format.  Unless otherwise specified in Section 6(b) or pursuant to Section 6(j) below, the Parties shall produce documents in tagged image file format ("TIFF"). TIFFs of ESI shall convey the same information and image as the original document, including all commenting, versioning, and formatting that is visible in any view of the document in its native application. All hidden text will be expanded, extracted, and rendered in the TIFF file and, to the extent possible, the Producing Party will instruct its vendor to force off Auto Date. Any TIFFs produced shall be single-page, 300 DPI, Group IV TIFF files. After initial production in image file format is complete, a party must demonstrate particularized need for production of ESI in its native format.

b. Native Format. Except as provided by Section 6(j) below, the Parties shall produce all spreadsheets, computer slide presentations, audio files, video files, and other file types that cannot be accurately represented in TIFF format in native format, provided, however, that the Parties will meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Access, Oracle, or other proprietary databases). For each document produced in native format, a responding Party shall also produce a corresponding cover page in TIFF image format, specifying that the document has been "produced in native format" and endorsed with the Bates Number and Confidentiality Designation, if applicable, which will be inserted into the image population in place of the native file. When the native file is produced, the Producing Party shall preserve the integrity of the electronic document's contents, i.e., its original formatting and metadata.

c. Color. Documents containing color need not be produced in color, except that (i) word processing documents that contain hidden text, and (ii) certain redacted documents, as further provided in Section 6(j), shall be produced in color in TIFF format. The Producing Party will honor reasonable requests for a color image of a document, if production in color is necessary to understand the meaning or content of the document.

d. Embedded Objects. If documents contain embedded objects, the Parties shall extract the embedded objects as separate documents and treat them like attachments to the document to the extent reasonably possible. To the extent reasonably possible, images embedded in emails shall not be extracted and produced separately.

8

e. Load Files. Each production of ESI and Documents shall be accompanied by Concordance or comma delimited load files (.dat and .opt) containing a field with the full path and filename to files produced in native format and also containing metadata fields identified in Appendix A, to the extent the information is available in the original ESI file and can be extracted without unreasonable burden using standard litigation support processing platforms (except for vendor-generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality Designations).

f. .Txt Files. For all documents containing extracted full text or OCR text, the Producing Party shall provide searchable document level .txt files (named using the Bates start/"BEGDOC"), which shall reside in the same file directory as the images for such documents.

g. Bates Numbering and Other Unique Identifiers. Every item or file of ESI that is produced shall be identified by a unique page identifier ("Bates Number") and a Production Volume Number for any storage device (e.g., CD, USB, hard drive) containing such files. All Bates numbers will consist of an Alpha Prefix, followed by a numeric page index. There must be no spaces in any Bates number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. If a member of a document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible

9

password-protected document), those technical problems shall be identified and disclosed to the Receiving Party by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed," along with a log identifying each such file; the associated metadata for the file with the technical problem shall be produced if technically possible. A Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

h. Hard-Copy Documents. Except as otherwise set forth in this paragraph, the Parties agree that responsive paper documents shall be converted to single-page TIFF files, and produced following the same protocols set forth in Section 6(a) above, including the production of OCR text that is generated to make such documents searchable. Generally, all paper documents will be scanned and produced electronically, unless a Party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing Party to review the documents directly. In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized. Accordingly, distinct documents should not be merged into a single record, and single documents should not be split into multiple records. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending documents and attachment fields. The Parties will make their best efforts to unitize the documents correctly. Producing Hard-Copy Documents as provided herein does not

change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following metadata fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN," "SOURCE," "CONFIDENTIAL," "REDACTION," and "COMPANY" fields, as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

    i. Confidentiality Designation. To the extent any Document or ESI (or portion thereof) produced as a TIFF image in accordance with this Order is designated as confidential or highly confidential under the order concerning confidentiality agreed and/or entered in this litigation, the Producing Party will brand the required Confidentiality Designation in a corner of any TIFF images representing the produced item and in a consistent font type and size that does not obscure any part of the underlying image or Bates number, to the extent possible.

    j. Redactions. A Party may use redactions to protect attorney-client or work product privileges consistent with the order concerning privilege agreed and/or entered in this litigation. Other than as permitted by this Order or the order concerning confidentiality agreed and/or entered in this litigation, no redactions for relevance may be made within a produced document or ESI item. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for redaction (e.g. "A/C Privilege"). Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions.

Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. Redacted versions of spreadsheets, computer slide presentations, and word processing files containing hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) shall be produced in color in TIFF format. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.

k. <u>Parent-Child Relationships.</u> The Parties acknowledge and agree that parent-child relationships within a document family (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved. Responsive non-privileged electronic documents attached to an e-mail or embedded within other electronic documents and hard-copy documents attached or appended to hard-copy documents must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent documents and ending number of the last attachment must be populated for each child and parent document.

l. <u>OCR.</u> OCR software shall be set to the highest quality setting during processing.

m. Deviation from Production Specifications.  If a particular document or category of documents warrant a different format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

n. Productions From Other Proceedings Pursuant to CMO 1.  The production of documents made by Defendants in other civil investigations, litigations, and/or administrative actions by federal (including Congressional), state, or local government entities pursuant to CMO 1 shall be made in the format in which they were previously produced, including any previously produced metadata, load files, and accompanying text files.

o. Password Protection.  In the event any Document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the document or ESI.

p. Use at Deposition.  Any document produced in native that a party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding cover page in TIFF image format, endorsed with document's Bates Number and Confidentiality Designation, as described in Section 6(a), above.

## 7. PRODUCTION MEDIA

The Producing Party shall produce documents on readily accessible, computer or electronic media, including CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic media as the Parties may agree (the "Production Media").  Each piece of Production Media shall be encrypted and assigned a production number or other unique

identifying label ("Production Volume Number") corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production, and shall include (a) the name of the litigation and the case number; (b) the identity of the Producing Party; (c) the production date; (d) the Bates Number range of the materials contained on such Production Media item; and (e) the Production Volume Number of the Production Media. The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates number the documents produced. If the Producing Party produces documents via secure FTP site, the Producing Party shall specify the date through which the materials will remain available via the secure FTP site and the Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that documents be reposted to the FTP site.

## 8. COST SHIFTING

The costs of production pursuant to this Order shall be borne by the Producing Party. However, in agreeing to this Order, no Party waives or relinquishes any right or interest it may have under the Federal Rules of Civil Procedure to seek cost shifting or apportionment for the costs of electronic discovery.

## 9. THIRD-PARTY ESI

a. A Party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this Order and the order concerning confidentiality agreed and/or entered in this litigation with the subpoena and state that the Parties in the litigation have requested that third-Parties produce documents in accordance with the specifications set forth herein.

b. The Issuing Party shall produce a copy to all other Parties of any

14

documents and ESI (including any metadata) obtained under subpoena to a non-Party.

c.      If the non-Party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

## 10. BEST EFFORTS COMPLIANCE AND DISPUTES

The Parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision/s of this Order. If a Producing Party cannot comply in a particular circumstance with this Order, such Party shall promptly inform the Receiving Party in writing why compliance with the Order is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

## 11. MODIFICATION

This Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

IT IS SO ORDERED.

Date:_____5/15/18_____          _____/s/Dan Aaron Polster_____
                                                      Hon. Dan Aaron Polster
                                                      United States District Judge

## Appendix A: ESI Metadata and Coding Fields

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegDoc | Bates number of the first page of the document. | All | Prefix-0000000001 |
| EndDoc | Bates number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Bates number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Bates number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| PageCount | Number of printed pages in the document. | All | 2 |
| Confidential | Confidentiality designation, if any, of the document | All | Confidential<br>Highly Confidential |
| Custodian | Names of all custodians who possessed the document, including deduplicated values, in format: Lastname, Firstname.<br><br>Where multiple individuals share first and last name, individuals should be distinguished by an initial which is kept constant between productions. For instance: Smith, John A. and Smith, John B.<br><br>For documents from centralized repositories where custodian name(s) are unavailable, identifying source information should be provided. | All | Doe, John; Smith, John; Smith, Jane |
| Duplicate Custodian | Names of all other custodians who possessed the document. | ESI | |
| Duplicate Custodian File Name | The names of unproduced duplicate copies of files. | ESI | |
| Duplicate Custodians | The file path/directory path correlating to the unproduced | ESI | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Directory Path | duplicate copies of files. | | |
| Source | Source shall be used in connection with document obtained from third-Parties and identify the third-Party having provided the particular material.  If the third-Party's production of documents included individual custodian information, such information shall also be included in the "CUSTODIAN" field. | | |
| Subject/E-Subject | Subject line of an e-mail. | E-mails | Text of the subject line |
| To | All recipients that were included on the "To" line of the e-mail. | E-mails | John.Doe@e-mail.com |
| From | The name and e-mail address of the sender of the e-mail. | E-mails | Jane.Doe@e-mail.com |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | Bill.Black@email.com |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceo-gs@email.com |
| DateSent | Date an e-mail was sent. | E-mails | 01/01/2015 |
| TimeSent | Time an e-mail was sent. | E-mails | 12:30:00 |
| DateModified | Date the document was last modified. | E-attachments; Electronic documents | 01/01/2015 |
| TimeModified | Time the document was last modified. | E-attachments; Electronic documents | 12:30:00 |
| DateCreated | Date the document was created. | E-attachments; Electronic documents | 01/01/2015 |

17

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| TimeCreated | Time the document was created. | E-attachments; Electronic documents | 12:30:00 |
| Family Date | Date last modified or, for e-mails, sent date of the parent | Electronic documents; E-attachments | 01/01/2015 |
| Family Time | Time last modified or, for e-mails, sent time of the parent | Electronic documents; E-attachments | 12:30:00 |
| DateReceived | Date email was received. | E-mails | 01/01/2015 |
| TimeReceived | Time email was received. | E-mails | 12:30:00 |
| DateAccessed | Date document last accessed | Electronic documents; E-attachments | 01/01/2015 |
| Date Last Printed | Date the document was last printed. | E-attachments; Electronic documents | 01/01/2015 |
| Time Last Printed | Time the document was last printed. | E-attachments; Electronic documents | 12:30:00 |
| Date Last Saved | Date the document was last saved. | E-attachments; Electronic documents | 01/01/2015 |
| Importance | Level assigned by creator | E-mails | High |
| Conversation | E-mail conversation designation | E-mail | Re: Smith Summary |
| Conversation Index | | E-mail | |
| Title/E-Title | Title of document | E-attachments; Electronic documents | Smith Summary |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Redaction | Basis for redactions in document. | E-attachments; Electronic documents | |
| FileName | File name of original document | Electronic documents; E-attachments | Microsoft Word 2007/2010 |
| File Type | Application type | Electronic documents; E-attachments | Word |
| File Size | Size of file | All | 40 gb |
| File Extension | The file extension of the document. | E-attachments; Electronic documents | .doc |
| NativeLink | Relative file path to each native file on the production media. | All documents produced in native format | \Natives\Document_12345.doc |
| Author | Document author/creater | E-attachments; Electronic documents | John Doe |
| Company | Party making the production | All | Company X |
| Title | Document Title | E-attachments; Electronic documents | Text of the title line |
| HASH | MD5 or SHA-1 Hash value | Electronic documents; E-attachments; E-mails | |
| Prod Volume | Production Volume | All | Defendant X Volume 1 |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| File Path | | | |
| AttachDocID | | Electronic documents; E-attachments; E-mails | |
| ATTACHNAME | | | |
| ATTACHRANGE | | | |
| FOREIGN LANGUAGE | | | |
| TIME ZONE PROCESSED | | | |
| E-LAST MODIFIED BY | | | |
| MESSAGE TYPE | | | |
| CALENDAR MEETING STOP/START | | | |
| RECORD TYPE | | | |
| HAS HIDDEN DATA | | | |
| HIDDEN COLUMNS | | | |
| HIDDEN NOTES | | | |
| HIDDEN ROWS | | | |
| HIDDEN SHEETS | | | |
| HIDDEN SHEETS COUNT | | | |
| HIDDEN SLIDES | | | |
| HIDDEN TEXT | | | |
| HIDDEN TRACK CHANGES | | | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| HIDDEN VERY HIDDEN SHEETS | | | |
| HIDDEN VERY HIDDEN SHEETS COUNT | | | |
| HIDDEN WHITE TEXT | | | |
| HIDDEN WORKBOOK | | | |
| HIDDEN WORK BOOK WRITE PROTECTED | | | |
| MESSAGE ID | | | |
| NUMBER OF ATTACHMENTS | | | |
| ORIGINAL FOLDER PATH | | | |
| IS EMBEDDED | | | |
| TextPath | Relative file path to each extracted text/OCR text file on the production media. | All | \Text\Document_12345.txt |