# UNITED STATES DISTRICT COURT
for the
Northern District of Ohio

| | |
|---|---|
| In re: National Prescription Opiate Litigation* <br> *Plaintiff* <br> v. <br> *Defendant* | ) <br> ) <br> ) Civil Action No. 1:17-cv-02804 <br> ) <br> ) (If the action is pending in another district, state where: <br> ) <br> ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Ohio Department of Health, 246 N. High Street, Columbus, Ohio 43215

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

Pursuant to Fed. R. Civ. P. 30(b)(6)., please designate a witness or witnesses to testify on your behalf about the matters specified in Attachment A to this subpoena. *This subpoena relates to the following Track One cases in the MDL: The County of Summit, 199-OP-45090, The County of Cuyahoga, 17-OP-45004, and City of Cleveland 18-OP-46132.

| Place: Tucker Ellis LLP <br> 175 South Third Street, Suite 520 <br> Columbus, Ohio 43215 | Date and Time: <br> 10/29/2018 9:00 am |
|---|---|

The deposition will be recorded by this method:  The deposition will be recoded by video and stenographically.

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 08/15/2018

*SANDY OPACICH, CLERK OF COURT*

OR

_____  /s/ Tariq M. Naeem
*Signature of Clerk or Deputy Clerk*     *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  Johnson & Johnson and Janssen Pharmaceuticals, Inc. _____ , who issues or requests this subpoena, are:

Tariq M. Naeem, 950 Main Ave., Ste. 1100, Cleveland Ohio 44113-7213, tariq.naeem@tuckerellis.com, 216-592-5000

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:17-cv-02804

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* Ohio Dept. of Health
was received by me on *(date)* 8/20/18 .

☒ I served the subpoena by delivering a copy to the named individual as follows: by serving Brenda Adams- Admin. Prof.
on *(date)* 8/21/18 at 3:03pm ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 8/21/18

Erika Cremeans
*Server's signature*

Erika M. Cremeans- Process Server
*Printed name and title*

2862 Johnstown Rd.
Cols, OH 43219
*Server's address*

Additional information regarding attempted service, etc:

## ATTACHMENT A

Pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, Track One Defendants[1] ("Defendants") hereby request that the Ohio Department of Health ("ODH") designate a witness or witnesses to testify on its behalf on the following topics of examination.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Civil Rules for the District Court of the Northern District of Ohio.

1. "You" and "Your" refers to the ODH and all others acting on its behalf, including any affiliates, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces.

2. "Chronic Pain" refers to persistent pain that typically lasts more than three months.

3. "Breakthrough Pain" refers to severe pain that erupts while a patient is already receiving opioid therapy for underlying persistent pain.

---

[1] Distributor Defendants named in one or more of the three Track One cases are: Cardinal Health, Inc.;, McKesson Corporation; AmerisourceBergen Drug Corporation; Rite Aid of Maryland, Inc.; CVS Indiana, LLC; CVS RX Services, Inc.; Walgreens Boots Alliance, Inc.; Walmart Inc. f/k/a Wal-Mart Stores, Inc.; H. D. Smith LLC, f/k/a H. D. Smith Wholesale Drug Co.; Prescription Supply, Inc.; Anda, Inc.; and Miami-Luken, Inc. Manufacturer Defendants named in one or more of the three cases styled above are: Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Orth-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica Inc. f/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc.; Allergan Finance, LLC (f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.); Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; SpecGx LLC; Mallinekrodt LLC; and Insys Therapeutics, Inc.

4. "Communication" means any transmission of information (whether formal or informal) by one or more Persons and/or between two or more Persons by means including, but not limited to, telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other computer linkups, written memoranda, and face-to-face conversations.

5. "Licensed Medical Professional" means any individual subject to a licensing requirement managed or implemented by the State Medical Board of Ohio, Ohio State Dental Board, or Ohio Board of Nursing (or equivalent licensing bodies in other states), whether or not said individual is permitted to prescribe medication under the terms of his or her license.  For avoidance of doubt, this includes, but is not limited to, licensed medical doctors (MD), doctors of osteopathic medicine (DO), doctors of podiatric medication (DPM), physician's assistants (PA-50 or PA-50 RX), doctors of dental surgery (DDS), doctors of medicine in dentistry (DMD), registered dental hygienists (RDH), licensed practical nurses (LPN), certified nursing assistants (CNA), registered nurses (RN), and advanced practice registered nurses (APRNs).

6. "Prescription Opioids" means FDA-approved pain-reducing medications that consist of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including but not limited to prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients in Ohio only through prescriptions written by duly licensed and DEA registered prescribers.

7. "Illicit Opioids" means Prescription Opioids and heroin, fentanyl, carfentanil, other fentanyl-type analogs, and counterfeit opioid medications that are not obtained or used lawfully pursuant to a legitimate prescription from a duly licensed and DEA-registered prescriber.

8. "Legitimate Opioid Use" means use of Prescription Opioids according to a prescription made in accordance with the respective FDA-approved warning labels by the person to whom the prescription was provided.

9. "Including" or "Includes" means "including, but not limited to" or "including without limitation."

10. "Relating to," "Referring to," or "Concerning," when referring to any given subject matter, means any Document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, or refers directly or indirectly to the particular subject matter identified.

11. The words "and" as well as "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these requests any information that might otherwise be construed as falling outside the scope of these requests.

12. Words used in the singular shall, when the context permits, be deemed to include the plural, and words used in the plural shall, when the context permits, be deemed to include the singular. The masculine gender shall, when the context permits, be deemed to include the feminine or neuter genders.

## TOPICS OF EXAMINATION

1. Your analysis of Chronic Pain and its impact on public health.

2. Your analysis of Breakthrough Pain and its impact on public health.

3. Your analysis of the use of Prescription Opioids to treat Chronic Pain and Breakthrough Pain, including:

    a. Analysis regarding the addictive potential of Prescription Opioids resulting from Legitimate Opioid Use; and

    b. The creation of prescribing guidelines and any revisions thereto.

       4.       The Ohio Pain Advisory Committee, including (a) its formation, (b) its members, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to its members as a whole, and (g) its budget or expenses.

       5.       Your involvement in drafting, assessing, introducing, lobbying for, implementing, administering, or monitoring compliance with HB 187 of the 122nd General Assembly, Ohio's Intractable Pain Act, and any amendments thereto.

       6.       The Ohio Compassionate Care Task Force, including (a) its formation, (b) its members, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to its members as a whole, and (g) its budget or expenses.

       7.       Policies governing the availability of Prescription Opioids to Your employees, workers compensation participants, or other public assistance program participants, including formulary decisions related to same.

       8.       Actions You took to research, investigate, or address the opioid abuse epidemic in the State of Ohio, including:

             a.       Any investigation of the marketing, advertising, distribution, sales, or promotional activities of Defendants as a potential cause of the opioid abuse epidemic in the State of Ohio;

             b.       Any investigation of the factors (other than the alleged activities of Defendants) that caused or contributed to the opioid abuse epidemic in the State of Ohio;

             c.       Any reports created by You or on Your behalf related to the opioid abuse epidemic in the State of Ohio; and

             d.       Communications with Defendants or other individual or entity related to Prescription Opioids, including the (a) marketing and distribution, (b) risks and benefits, (c) safety outcomes, and (d) abuse, misuse, addiction, or diversion.

       9.       The Ohio Prescription Drug Abuse Task Force, including (a) its formation, (b) its members, including the process, criteria, and guidelines by which its members were selected for inclusion, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to its members as a whole, and (g) its budget or expenses.

10. The Prescription Drug Abuse Action Group, including (a) its formation, (b) its members, including the process, criteria, and guidelines by which its members were selected for inclusion, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to its members as a whole, and (g) its budget or expenses.

11. Any other response by You to the opioid abuse epidemic in the State of Ohio, including the creation of task forces or advisory committees, legislative or regulatory action, interagency collaboration, public or private partnerships, collaboration or information sharing with local, state, or federal law enforcement, research and data collection, and engagement of outside experts.

12. Presentations, lectures, seminars, workshops, symposia, or other similar educational programs made or sponsored by You or on Your behalf related to the opioid abuse epidemic, including all data and source materials used to create the content for such programs or events.

13. Your monitoring of opioid abuse, misuse, addiction, and diversion in the State of Ohio, including data and analysis related to:

   a. The number of opioid addicts in the State of Ohio from 1990 to the present, and specifically to those who became addicted as a result of Legitimate Opioid Use;

   b. The number of opioid overdoses (both fatal and non-fatal) in the State of Ohio from 1990 to the present, and specifically to those who overdosed on Prescription Opioids;

   c. The number of opioid overdoses (both fatal and non-fatal) in the State of Ohio from 1990 to the present, and specifically to those who overdosed on Illicit Opioids.

   d. The number of users of Illicit Opioids in the State of Ohio from 1990 to the present, and specifically those who first began using Illicit Opioids following Legitimate Opioid Use;

   e. The number of opioid-related deaths in the State of Ohio from 1990 to the present, and specifically those of patients who became addicted to opioids following Legitimate Opioid Use;

   f. The number of Licensed Medical Professionals indicted, prosecuted, or disciplined in the State of Ohio from 1990 to the present for illegal or improper prescribing of Prescription Opioids;

   g. The number of illegal or improper prescriptions of Prescription Opioids in the State of Ohio from 1990 to the present;

    h.    The number of opioid-related arrests by local, state, or federal law enforcement in the State of Ohio from 1990 to the present;

    i.    The number of patients who obtained Prescription Opioids in the State of Ohio from 1990 to the present through illegal or improper means;

    j.    The number of Prescription Opioids in the State of Ohio from 1990 to the present that were prescribed off-label and/or contrary to accepted medical guidelines;

    k.    The abuse, misuse, addiction, or diversion of Prescription Opioids, broken down by product or chemical substance, in the State of Ohio from 1990 to the present;

    l.    Adverse health outcomes (e.g., addiction, overdose, death) in the State of Ohio from 1990 to the present caused by the use of Prescription Opioids;

    m.    Adverse health outcomes (e.g., addiction, overdose, death) in the State of Ohio from 1990 to the present caused by the use Illicit Opioids; and

    n.    The illegal manufacture or importation into the State of Ohio from 1990 to the present of Illicit Opioids and adverse health outcomes (e.g., addiction, overdose, death) caused by same.

14. Any efforts by You to reduce the number of Prescription Opioids, Illicit Opioids, or opioid prescriptions in the State of Ohio.

15. Project DAWN (Deaths Avoided With Naloxone), including (a) its formation, (b) its members, including the process, criteria, and guidelines by which its members were selected for inclusion, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to its members as a whole, and (g) its budget or expenses.

16. The Prescription for Prevention campaign, including (a) its formation, (b) its members, including the process, criteria, and guidelines by which its members were selected for inclusion, (c) its meetings, (d) any reports or recommendations it created, (e) any materials reviewed by its members to prepare its reports or recommendations, including any data or research provided for its deliberations, (f) communications to its members as a whole, and (g) its budget or expenses.

17. Prescription drug take-back and prescription drug disposal initiatives undertaken within Cuyahoga County, Summit County, or City of Cleveland.

18. Any analysis of the impact of the opioid abuse epidemic on the expenses or effectiveness of the provision of any service provided by You.

19. Any analysis of the effect of any efforts by You to combat the opioid abuse epidemic, including an effect on any of the enumerated subjects within Topic 13 above.

3854865.1