UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*Track One Cases* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**MOTION TO AMEND THE CASE MANAGEMENT SCHEDULE**

Track One Plaintiffs ("Plaintiffs") come to the Court requesting an eleventh hour extension of their expert disclosure deadlines.  Plaintiffs first approached Defendants with this request, and, in an effort to reach a compromise, Defendants proposed a 45-day extension of the expert disclosure and all subsequent deadlines.  Rather than accept Defendants' proposal and present the Court with a unified request, Plaintiffs now request that the Court enter proposed extensions only on their terms—which would benefit Plaintiffs while severely prejudicing Defendants.  Defendants respectfully request that the Court either extend the expert disclosure and subsequent deadlines by 45-days (or an amount that the Court finds reasonable) or reject Plaintiffs' one-sided request and move this case forward in accordance with the current schedule, as set forth in Case Management Order 7 ("CMO-7").

I.    **INTRODUCTION**

Plaintiffs request that the "Court should select an appropriate case management schedule that provides experts sufficient time to base their opinions on the totality of the evidence disclosed," but then propose to amend the existing schedule in ways that do nothing of the sort. Dkt. No. 1285-1 at 9.

First, Plaintiffs' primary proposal of simultaneous exchanges of expert reports (without any opportunity for rebuttal) is unworkable in this case, violates the structure of the current carefully-negotiated schedule, and is incompatible with Defendants' due process rights.  The Court's current scheduling order requires the staggered exchange of expert reports, similar to what this Court has required in other MDL cases, and for good reason:  Defendants need to have the opportunity to evaluate and respond to Plaintiffs' expert testimony.  Indeed, the need for staggered expert reports is particularly important in this case given Plaintiffs' approach to fact discovery.  Time and again, Plaintiffs have attempted to deflect discovery requests on fundamental issues by stating that the responses "will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case."  *E.g.*, Pls.' Resp. to Distributor Defendants' First Set of Interrogatories No. 1. Staggered deadlines therefore are necessary to allow Defendants' experts adequate time to address Plaintiffs' experts' opinions and methods on critical issues (including those as to which Plaintiffs bear the burden of proof), and upon which Plaintiffs have yet to produce the relevant discovery underlying those opinions.

In contrast, a simultaneous exchange of expert reports such as Plaintiffs seek would force Defendants to guess at what Plaintiffs' experts might say, based upon evidence that Plaintiffs have not yet produced.

Second, Plaintiffs' alternative proposal to shorten the time for other deadlines and truncate this Court's time to consider not just expert-related *Daubert* motions, but dispositive motions as well, is also inappropriate.  Plaintiffs have made clear that they seek to rely on a novel aggregate causation and damages model—the validity of which must be tested as a matter of law through *Daubert* and summary judgment motions.  And, any trial in this case will be significantly streamlined by virtue of the Court's careful consideration of *Daubert* and summary judgment motions.  Issues relating to the scope of permissible expert testimony and summary judgment necessarily need to be resolved sufficiently before trial so that the parties can know what evidence and testimony will be relevant and admissible and what must be excluded— particularly where the Court has limited the trial to three weeks.  Plaintiffs' proposal to keep staggered expert disclosures but shorten the time in other ways would have the hearings on *Daubert* and dispositive motions heard on the same day as the Final Pretrial Hearing—only seven calendar days after the replies on such motions are filed and seven court days before trial. Such a schedule does not allow for the parties and the Court to engage in proper pretrial preparations, which must be predicated on knowing what claims (and defenses) are actually to be tried.  Indeed, the schedule proposed by Plaintiffs does not allow for timely completion of key activities laid out in the Court's standing civil trial order, such as conferring and submitting jury instructions.  *See* Civil Order; Jury Trial, Form Order, Section 8 (noting that counsel must meet and confer regarding jury instructions and interrogatories at least 10 calendar days before Final Pretrial and provide a proposed single set at the Final Pretrial).

Lastly, if the Court is inclined to grant Plaintiffs' request to extend their deadline to submit their expert reports, then the only fair and reasonable proposal is for the Court to extend all subsequent case management deadlines.  If Plaintiffs need more time, despite knowing of the

January 25, 2019 discovery deadline and February 8, 2019 expert disclosure deadline since

August 13, 2018, then this is the only fair way to proceed.  Defendants recognize the Court's

desire to avoid undue delay of the Track 1 trials.  Under Defendants' proposal to Plaintiffs, the

trial would move from the beginning of September to the middle of October.  If the Court is not

inclined to grant further extensions or move the trial date, then this decision to hold firm should

apply across the board—including to Plaintiffs' existing February 8 deadline to submit expert

reports.  Anything else would be prejudicial to Defendants and create more inefficiency.

Accordingly, the Court should deny Plaintiffs' motion to modify the schedule in accordance with

their proposals.

## II.      FACTUAL BACKGROUND

### A.      The Court and the Parties Have Consistently Recognized the Need for Staggered Expert Disclosure Deadlines and Sufficient Time to Consider and Resolve *Daubert* and Summary Judgment Motions.

At the outset of this case, the parties spent many weeks negotiating a scheduling order

regarding the Track 1 cases.  *See* Case Management Order One ("CMO-1"), Dkt. No. 232.  That

scheduling order called for the staggered disclosure of expert reports, with Plaintiffs' expert

reports served on September 7, 2018 and Defendants' expert reports served five weeks later, on

October 12, 2018.  *Id.* at 7.  It also allowed for 10 weeks for the Court to consider *Daubert* and

summary judgment motions, between the date such motions were fully briefed and the start of

trial.  *Id.*  On April 11, 2019, the Court entered this scheduling order as part of CMO-1.

On August 13, 2018, the Court extended the dates in the scheduling order.  *See* CMO-7,

Dkt. No. 876.  It again allowed the parties to negotiate a fair and efficient schedule.  Plaintiffs

did not request simultaneous disclosure of expert reports—nor was this issue ever discussed.

Under that current schedule, Plaintiffs' expert reports are due on February 8, 2019, and

Defendants rebuttal expert reports are due on March 26, 2019. *Id.* at 2. These dates were carefully chosen so that Defendants would have time to digest and respond to whatever expert testimony Plaintiffs put forward. In addition, the Court maintained a nearly 10-week time period between the completion of briefing on *Daubert* and dispositive motions until the start of the trial for the Court to consider these important motions. *Id.*

      **B.**     **Plaintiffs' Last Minute Request For Additional Time For Their Expert Reports Should Not Eliminate Core Scheduling Components That Were <u>Carefully Negotiated</u>.**

      On December 31, 2018, this Court entered an order selecting two cases for "Track Two," and ordering the parties to meet and confer regarding scheduling for those matters. Dkt. No. 1218 at 2. On January 11, 2019, the Plaintiffs' Executive Committee ("PEC") and Defendant Liaison Counsel engaged in a telephone conference to discuss a schedule for Track Two cases. During this meeting, the PEC raised their request for an extension regarding the schedule in CMO-7 for the Track One cases. Specifically, the PEC requested an eight-week extension to the deadline to file their expert reports.

      After several rounds of back and forth between PEC and Defendants in an effort to reach a mutually-agreeable proposed schedule, on January 18, 2019, Plaintiffs submitted their Motion to Amend the Case Management Schedule. *See* Dkt. No. 1285. While noting that Defendants do not oppose the request for an 45-day extension of Plaintiffs' expert deadline (provided that all other deadlines are equally extended), Plaintiffs either seek to deny Defendants the due process right to submit expert testimony that responds to Plaintiffs' expert reports (including on issues on which Plaintiffs bear the burden of proof) or to condense other important deadlines in a way that would deny Defendants and the Court adequate time to meaningfully address dispositive and expert-related motions. *See* Dkt. No. 1285-3, Ex. B to Pls' Mot. (Plaintiffs' Proposals).

Plaintiffs' proposals should be rejected and the Court should either:  (a) enter a uniform extension for all deadlines for all parties; or (b) order Plaintiffs to comply with the existing deadlines set forth in CMO-7.

## III.  <u>ARGUMENT</u>

"Modification of a scheduling order is governed by [Federal] Rule [of Civil Procedure] 16(b)(4), which permits modification 'only for good cause and with the judge's consent.'" *Renewable Lubricants, Inc. v. United Bio Lube*, No. 5:10-CV-0042, 2010 WL 4365518, at *1 (N.D. Ohio Oct. 27, 2010) (citing *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003)).  "The party seeking amendment of the scheduling order '***must*** show good cause for its failure to comply with the original schedule by showing that despite their diligence they could not meet the original deadline." *Id*.  The Court's determination of whether the good cause standard is met "***must*** include the consideration of whether the party opposing the motion will be prejudiced by it." *Id*. (citing *Korn v. Paul Revere Life Ins. Co.*, 2010 WL 2587947 at *5 (6th Cir. 2010) (emphasis added).

> **A.      Plaintiffs' Proposed Amendments to the Scheduling Order Would Be Grossly Inefficient and Would Severely Prejudice Defendants' Ability to Prepare For Trial and Challenge Plaintiffs' Experts.**
>
> > 1.      *Plaintiffs' Proposal Of Simultaneous Expert Disclosures Is Fundamentally Flawed, Contrary To Expert Scheduling In Similar Cases, and Should Be Rejected*.

Courts routinely require a Plaintiff to "name its experts and produce their reports ***before*** the Defendants must respond in kind." *Cohabaco Cigar Co. v. U.S. Tobacco Co.*, No. 98 C 1580, 1999 WL 966980, *4 (N.D. Ill. Oct. 4, 1999) (emphasis added); *see also In re Shell Oil Refinery*, No. CIV. A. 88-1935, 1992 WL 211670, at *1 (E.D. La. Aug. 14, 1992) ("The exchange of expert reports is always staggered because an expert report is part of the evidence that a party gathers to support his position.  The plaintiff, having the burden of proof, submits his

expert reports first."); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys. Inc.*, No. C 01-20418 JW, 2005 WL 1459572, at *2 (N.D. Cal. June 21, 2005) ("Since Plaintiffs have the burden of proof, Plaintiffs have the burden of presenting the evidence first."); *Brinks' Home Sec., Inc. v. Caliber Holdings Co., LLC*, No. CV-06-02365, 2007 WL 778419, at *1 (D. Ariz. Mar. 12, 2007) ("staggered expert disclosure is more fair and will less likely result in requests for modifications of [ ] deadlines").

This has been consistently true in MDL proceedings.  For instance, in *In re: Gadolinium-Based Contrast Agents Products Liability Litigation*, MDL No. 1909, Case No. 1:08-GD-50000, this Court entered an order requiring the staggered disclosure of expert reports.  *In re: Gadolinium*, CMO-8 ¶ 6.  Implicit in this conclusion is recognition of the unfairness to defendants if they have to guess at what plaintiffs' experts might say and then submit expert reports without first being able to evaluate and review the opinions of plaintiffs' experts.  So too here.

The need for staggered exchanges of expert reports is particularly compelling in this case, given Plaintiffs' heavily reliance on experts to attempt to meet their burden of proof on critical issues in this case.

Plaintiffs already have told this Court that they intend to prove their claims, including on the core issues of damages and causation, with statistical modeling and aggregate proof proffered by their experts.  *See* Pls.' Response to Discovery Order No. 5, attached as **Exhibit A**. In addition, Plaintiffs have taken their reliance on their expert reports many steps further by refusing to provide Defendants with necessary fact discovery and improperly arguing, on numerous occasions, that they would instead provide fundamental facts that Defendants repeatedly have requested (and are entitled to), through their expert reports.  Indeed, at ***every***

juncture of discovery, and on *every* key topic, Plaintiffs have refused to provide critical facts and inappropriately told Defendants to wait until submission of their expert reports.

In their responses to Interrogatories, Plaintiffs refused to provide key facts and represented that the following subjects "will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case":

- Identification of purported suspicious orders that were allegedly shipped.  *See* Pls.' Resp. to Manufacturers' Interrog. No. 27; Pls.' Resp. to Distributors' Interrog. No. 23.

- Plaintiffs' calculation of damages.  *See* Pls.' Resp. to Manufacturers' Interrog. No. 4; Pls.' Resp. to Distributors' Interrog. No. 18.

- Plaintiffs' abatement efforts and/or costs.  *See* Pls.' Resp. to Manufacturers' Interrog. No. 27; Pls.' Resp. to Distributors' Interrog. No. 23.

- Identification of persons who allegedly became addicted to or were harmed as a result of a prescription of opioids.  *See* Pls.' Resp. to Manufacturers' Interrog. No. 7.

- Identification of prescriptions of opioids Plaintiffs contend were unauthorized, medically unnecessary, infective or harmful. *See* Pls.' Resp. to Manufacturers' Interrog. No. 10.

- Whether Plaintiffs contend that opioid-containing products are always medically inappropriate for the treatment of chronic non-cancer pain or acute or breakthrough non-cancer pain.  *See* Pls.' Resp. to Manufacturers' Interrog. No. 24-25.

- And many more.[1]

---

[1]      Pls.' Resp. to Manufacturers' Interrog. No. 11 (identification of individuals with knowledge concerning the subject matter of the complaint); Pls.' Resp. to Manufacturers' Interrog. No. 12 (identification of medical or scientific research, data, information, literature and other documents that support, underlie, or form the basis for Plaintiffs' claims); Pls.' Resp. to Manufacturers' Interrog. No. 20 (identification of "pill mills"); Pls.' Resp. to Manufacturers' Interrog. No. 21 (description of the risks Plaintiffs contend were not adequately disclosed); Pls.' Resp. to Manufacturers' Interrog. No. 28 (identification and description of specific efforts or activities of Manufacturer Defendants to "work[] together to inflate the quotas of opioids," as alleged.); Pls.' Resp. to Manufacturers' Interrog. No. 29 (identification of alleged payments from Manufacturers to physicians); Pls.' Resp. to Distributors' Interrog. No. 1 (the years during which Plaintiffs' claim damages); Pls.' Resp. to Distributors' Interrog. Nos. 2-3 (the pharmacies that placed suspicious orders or diverted suspicious); Pls.' Resp. to Distributors' Interrog. Nos. 13-15 (the date on which Plaintiffs became aware prescription opioids were being abused in their geographic boundaries, the number of pills that were diverted, and the number of pills that should have been distributed); Pls.' Resp. to Distributors' Interrog. Nos. 16-17, 19, 20-22, 29 (the purported causal connection between Distributors' distribution of prescription opioids and Plaintiffs' alleged damages); Pls.' Resp. to Distributors' Interrog. No. 24 (the allegedly false and/or fraudulent information

Plaintiffs reaffirmed their position that these various subjects are matters for expert discovery in briefs and communications to Special Master Cohen.[2]  And Plaintiffs' corporate designees on the topic of claimed damages have all explicitly disclaimed any knowledge of how Plaintiffs' damages computations were calculated, or what costs or categories of costs are included in those figures, stating that this was done entirely by experts.  *See* 30(b)(6) Deposition Transcript of Diane Miller-Dawson, *The County of Cuyahoga v. Purdue Pharma, et al.*, Case No. 17-OP-45004, Jan. 17, 2019; 30(b)(6) Deposition Transcript of Margaret Keenan , *The County of Cuyahoga v. Purdue Pharma, et al.*, Case No. 17-OP-45004, Jan 18, 2019.[3]

In order for Defendants' experts to properly and meaningfully address and rebut any issues related to causation or damages, or to offer any opinion that depends on one of the various missing key facts that Plaintiffs have delayed in revealing, they will need to review and evaluate Plaintiffs' experts' reports.  For example, if Plaintiffs try to utilize an aggregate proof approach to causation, Defendants must be entitled to explain, through their own experts, why both the methodology and results of that model are flawed.  Of course, that cannot be done unless Defendants are able to first analyze and review that report and take the deposition of Plaintiffs' experts.  Plaintiffs' proposal simply ignores all of these due process considerations.

While the parties disagreed about many points during negotiation of the scheduling

---

that Distributors allegedly supplied to DEA); Pls.' Resp. to Distributors' Interrog. No. 25 (the Distributors' allegedly predicate acts of racketeering); Pls.' Resp. to Distributors' Interrog. No. 26 (the "similar tactics" (as Manufacturers) that Distributors allegedly committed as part of the RICO enterprise); Pls.' Resp. to Distributors' Interrog. No. 27 (the fraudulent statements or omissions that Distributors allegedly knew were false, misleading, deceptive, etc.); Pls.' Resp. to Distributors' Interrog. No. 28 (how Plaintiffs' used the information contained in OARRS to address prescription drug diversion and abuse).

[2]     *See* Email from Weinberger to SM Cohen, Oct. 5, 2018; Plaintiffs letter to SM Cohen, Dec. 19, 2018; Plaintiffs' letter to SM Cohen, Oct. 20, 2018

[3]     The 30(b)(6) deposition transcripts are currently designated confidential and therefore have not been submitted as exhibits to this Opposition.  Defendants will file them under seal at the Court's request.

orders for the Track 1 cases, they always agreed on the need for staggered expert disclosure deadlines.  It would be fundamentally unfair and prejudicial to allow Plaintiffs to do away with this core requirement simply because they cannot meet the current expert disclosure deadline that they have known about for months.

> 2.  *Plaintiffs' Proposal of Shortening Other Deadlines Should Be Rejected.*

Plaintiffs' alternative proposal to keep the trial date but truncate the time for this Court to consider *Daubert* and summary judgment motions is also inappropriate.  Plaintiffs' concession that the Court's time to review and consider the parties' *Daubert* and summary judgment motions under their proposed amendment would be "more compressed" is a gross understatement.  Pls.' Mot at 8.  Under Plaintiffs' proposed amendment, hearings on the parties' *Daubert,* summary judgment, and any other dispositive pre-trial motions must occur just one week after briefing is completed (and they all must be completed by the same day).  *See* Dkt. No. 1285-3, Ex. B to Pls.' Mot.  Worse yet, while the existing CMO-7 schedule set the hearing for *Daubert* and summary judgment more than one month before the date of the final pre-trial hearing, Plaintiffs' alternative proposal now combines *Daubert*, summary judgment, and the pre-trial hearings on the exact same date—all of which are scheduled to take place just ***10 days before the start of trial***.  *See id.*  Such a compressed schedule for dispositive motions that may either effectively end this litigation or streamline remaining claims for trial and settlement purposes is inappropriate at best.

As discussed above, Plaintiffs are expected to submit expert reports on, among other things, the topics of causation and damages, including through aggregate proof.  *See* Pls.' Response to Discovery Order No. 5, Ex. A. ("Plaintiffs intend to rely, at trial and in expert opinions, on a theory of aggregate proof in asserting that Defendants' conduct violated the law and caused their damages and/or created a public nuisance").  Whether they can provide expert

testimony through aggregate proof is a question of law that will need to be addressed through *Daubert*, and whether such testimony, to the extent it is held admissible, is sufficient to create a genuine issue of material fact is also a question of law that will be decided through summary judgment.  *See In re: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2502, 145 F. Supp. 3d 573 (D. S. C. 2015) (rejecting statistical analysis of plaintiffs' causation experts under *Daubert* in MDL against pharmaceutical manufacturer); *In re: Zoloft (Sertraline Hydrochloride) Products Liability Litigation*, MDL No. 2342, 2015 WL 7776911 (E.D. Pa. Dec. 2, 2015) (same); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) (rejecting plaintiffs' attempt to show class-wide causation through generalized proof and granting summary judgment as to pharmaceutical manufacturer); *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 135 (2d Cir. 2010) (same).

Having sufficient time to consider summary judgment and *Daubert* motions on causation and other core issues is critical.  In its review of *Daubert* motions in pharmaceutical prescription and medical device MDLs, the American Bar Association recently recognized that "[i]n some recent drug and device MDLs, the transferee courts have excluded Plaintiffs' causation experts (sometimes after allowing repeated opportunities to proffer new experts and/or new opinions), which have led to the wholesale demise of the litigation."  American Bar Association, *A Review of Notable Daubert Opinions from Recent Drug and Medical Device MDLs,* October 27, 2016, *accessible at* https://webcache.googleusercontent.com/search?q=cache:DqbEFIVjK0IJ:https://www.americanbar.org/content/dam/aba/administrative/litigation/materials/2016_bio_pharma/102716_a_review_of_notable_daubert.pdf+&cd=3&hl=en&ct=clnk&gl=us.  At a minimum, because resolution of

these issues will dictate what testimony, if any, can be presented at trial, sufficient time must be allotted for the resolution of summary judgment and *Daubert* motions prior to trial.

In *In re: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation*, for instance, Defendants moved to exclude the testimony of Dr. Nicholas Jewell, a statistician, on the issue of causation.  145 F. Supp. 3d at 575.  Notably, all of Plaintiffs' causation experts had relied upon Dr. Jewell's analysis in their initial expert reports.  *Id.* Applying *Daubert* and reviewing Dr. Jewell's methodology, the court ruled that Dr. Jewell's proposed testimony regarding two out of four drug trial data sets that he relied upon was inadmissible.  *Id.* at 594.  The Court found that Dr. Jewell's analysis of the two data sets at issue was "results driven."  *Id.*  Additionally, Dr. Jewell ignored and excluded from his report his own analyses that did not support his ultimate opinion.  *Id.*  Thus, the Court found it "apparent" that Dr. Jewell had "formed an opinion first, sought statistical evidence that would support his opinion and ignored his own analyses and methods that produced contrary results."  *Id.*  As a result, the Court barred Dr. Jewell from testifying regarding the two data sets at issue.  *Id.*; *see also In re: Zoloft (Sertraline Hydrochloride) Products Liability Litigation*, MDL No. 2342, 2015 WL 7776911 (E.D. Pa. Dec. 2, 2015) (granting defendant's *Daubert* motion because, among other things, the methodology employed by plaintiffs' causation expert was not reliable, and subsequently granting summary judgement as to defendants as plaintiffs had failed to introduce evidence of causation).

As these cases show, the Court and the parties will require ample time to consider and resolve complex issues as to causation and damages—and these will need to be resolved in advance of trial, so that the parties may know what testimony can or cannot be introduced.

**B.**     **If The Court Is Inclined to Give Plaintiffs More Time for Their Expert Reports, It Should Extend the Time for All Deadlines.**

If the Court is inclined to grant Plaintiffs' request to extend their deadline to submit their expert reports, then Defendants respectfully request that the Court extend all subsequent case management deadlines, including the trial date. A modest global extension is the only way to avoid unfair prejudice to Defendants and make sure that sufficient time is allocated for the resolution of summary judgment and *Daubert* motions. This is the proposal Defendants made to Plaintiffs (*i.e.*, moving the trial date and related deadlines by approximately 45 days), and it strikes a balance of proceeding with the trial on a date just a few weeks after the current start date, while also providing Plaintiffs with the time they say they need to complete their expert reports.

Defendants made this proposal to Plaintiffs in good faith, and as a potential way to resolve in a fair manner the issue that Plaintiffs raised. Rather than work with Defendants and jointly request such relief from the Court, Plaintiffs brought this motion, asserting that their need for the additional time was Defendants' fault (as a result of purported discovery failures). While Plaintiffs are correct that there is additional discovery to be done, their efforts to assign blame to Defendants is entirely misplaced. Defendants have put in tremendous effort to provide all necessary discovery, including among other things producing an enormous amount of data and documents, each Defendant producing large numbers of company and other witnesses for depositions, and submitting written discovery responses to voluminous requests. Given the aggressive schedule and unique breadth of this litigation, the need for some additional follow up discovery is neither unusual nor surprising. And, without belaboring the point, significant discovery failures by Plaintiffs that have come to light and are being addressed by Special

Master Cohen have significantly prejudiced Defendants;[4] and much of the third party discovery that Defendants require has been needlessly delayed by Plaintiffs' continued refusal to provide adequate responses to Defendants' discovery requests.  Additionally, the government shutdown has frustrated Defendants' ability to get necessary discovery from the DEA, including depositions to which the DEA had previously agreed.  However, the answer is not to simply give Plaintiffs more time, at the expense of Defendants' rights and the Court's other deadlines, as Plaintiffs propose.

Of course, if the Court is not inclined to grant further extensions or move the trial date, then Plaintiffs' motion should be denied in its entirety.  Defendants note that other than listing reasons why they would like to be able to submit their expert reports after the close of fact discovery, Plaintiffs do not and cannot allege that they are incapable of submitting expert reports pursuant to this Court's deadline—which already has been amended once and which Plaintiffs have long known about.  *See Renewable Lubricants, Inc.*, 2010 WL 4365518, at *1 ("The party seeking amendment of the scheduling order 'must show good cause . . . by showing that . . . they could not meet the original deadline.'"); *Fairway 16 Heatherridge Ass'n v. Am. Family Mut. Ins. Co.*, No. 14-CV-02717-WJM-NYW, 2016 WL 74937, at *1 (D. Colo. Jan. 7, 2016) ("Good cause is not simply inconvenience to counsel").

## IV.   <u>CONCLUSION</u>

Defendants respectfully request that this Court deny Plaintiffs' motion to amend the scheduling order in accordance with Plaintiffs' proposals or, alternatively, that the Court grant a

---

[4]     As but one example, the City of Cleveland has now admitted there was an error in the original collection of nearly all of its document custodians.  Cleveland has represented just this month that it was in the process of re-collecting documents from at least 18 custodians, and that it had not yet completed re-collection of another 7 or 8 custodians.  Cleveland has offered to make certain affected witnesses available for re-deposition in light of the collection errors.

45-day extension to all remaining deadlines, so as to avoid any unfair prejudice to Defendants.

Dated: January 22, 2019                                    Respectfully submitted,


                                                           */s/ Steven A. Reed*
                                                           Steven A. Reed
                                                           Eric W. Sitarchuk
                                                           Rebecca J. Hillyer
                                                           MORGAN, LEWIS & BOCKIUS LLP
                                                           1701 Market Street
                                                           Philadelphia, PA  19103-2921
                                                           Telephone:  +1.215.963.5000
                                                           Facsimile:    +1.215.963.5001
                                                           steven.reed@morganlewis.com
                                                           eric.sitarchuk@morganlewis.com
                                                           rebecca.hillyer@morganlewis.com

                                                           Wendy West Feinstein
                                                           MORGAN, LEWIS & BOCKIUS LLP
                                                           One Oxford Centre, Thirty-Second Floor
                                                           Pittsburgh, PA 15219-6401
                                                           Telephone:  +1.412.560.7455
                                                           Facsimile:  +1.412.560.7001
                                                           wendy.feinstein@morganlewis.com

                                                           Brian M. Ercole
                                                           MORGAN, LEWIS & BOCKIUS LLP
                                                           200 S. Biscayne Blvd., Suite 5300
                                                           Miami, FL 33131-2339
                                                           Telephone:  +1.305.415.3000
                                                           Facsimile:  +1.305.415.3001
                                                           brian.ercole@morganlewis.com

                                                           *Counsel for Teva Pharmaceuticals USA, Inc,
                                                           Cephalon, Inc., Watson Laboratories, Inc.,
                                                           Actavis LLC, and Actavis Pharma, Inc. f/k/a
                                                           Watson Pharma, Inc.*

*/s/ Mark S. Cheffo*
Mark S. Cheffo
Sheila L. Birnbaum
Hayden A. Coleman
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com
Sheila.Birnbaum@dechert.com
Hayden.Coleman@dechert.com

*Counsel for Purdue Pharma L.P.,*
*Purdue Pharma Inc., and The Purdue*
*Frederick Company*


*/s/ Charles C. Lifland*
Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
clifland@omm.com
sstrong@omm.com

*Counsel for Janssen Pharmaceuticals, Inc.,*
*Johnson & Johnson, Janssen Pharmaceutica,*
*Inc. n/k/a Janssen Pharmaceuticals, Inc., and*
*Ortho-McNeil-Janssen Pharmaceuticals, Inc.*
*n/k/a Janssen Pharmaceuticals, Inc.*

*/s/ Jonathan L. Stern*
Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202)-942-5999
jonathan.stern@arnoldporter.com

*Counsel for Endo Health Solutions Inc., Endo
Pharmaceuticals Inc., Par Pharmaceutical,
Inc., and Par Pharmaceutical Companies, Inc.*


*/s/ Brien T. O'Connor*
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
Tel: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Counsel for Mallinckrodt LLC*


*/s/ Donna M. Welch*
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

*Counsel for Allergan Finance, LLC
f/k/a/ Actavis, Inc. f/k/a Watson
Pharmaceuticals, Inc.*

*/s/ Eric H. Zagrans*
Eric H. Zagrans (0013108)
ZAGRANS LAW FIRM LLC
6100 Oak Tree Boulevard, Suite 200
Cleveland, Ohio 44131
Tel: (216) 771-1000
eric@zagrans.com

J. Matthew Donohue
Joseph L. Franco
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Tel: (503) 243-2300
matt.donohue@hklaw.com
joe.franco@hklaw.com

Nicholas A. Sarokhanian
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201
Tel: 214.964.9500
nicholas.sarokhanian@hklaw.com

*Counsel for Insys Therapeutics, Inc.*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
EMainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

- 18 -

*/s/ Geoffrey Hobart*
Geoffrey E. Hobart
Mark H. Lynch
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com

*Counsel for McKesson Corporation*

*/s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Indiana, L.L.C. and
CVS Rx Services, Inc.*

*/s/ Kelly A. Moore*
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6612
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001
elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc., d/b/a
Rite Aid Mid-Atlantic Customer Support
Center*

*/s/ John J. Haggerty*
John J. Haggerty
FOX ROTHSCHILD LLP
2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel.: (215) 345-7500
Fax: (215) 345-7507
jhaggerty@foxrothschild.com

*Counsel for Prescription Supply, Inc.*


*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug
Corporation*


*/s/ Kaspar Stoffelmayr*
Kaspar Stoffelmayr
BARTLIT BECK HERMAN PALENCHAR &
SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4434
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlit-beck.com

*Counsel for the Walgreen Co. and Walgreen
Eastern Co.*

*/s/ John P. McDonald*
John P. McDonald
C. Scott Jones
Brandan J. Montminy
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8000
jmcdonald@lockelord.com
sjones@lockelord.com
brandan.montminy@lockelord.com

*Counsel for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.*

*/s/ Tara A. Fumerton*
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

*/s/ James W. Matthews*
James W. Matthews
Katy E. Koski
Jaclyn V. Piltch
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Telephone: (617) 342-4000
jmatthews@foley.com
kkoski@foley.com
jpiltch@foley.com

*Counsel for Anda Pharmaceuticals, Inc.*

*/s/ Robert M. Barnes*
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35TH Floor, One Oxford Center
301 Grant Street
Pittsburgh, PA 15219
rbarnes@marcus-shapira.com
livingston@marcus-shapira.com
kobrin@marcus-shapira.com

*Counsel for HBC Service Company*


*/s/ William E. Padgett*
William E. Padgett
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 236-1313
Fax: (317) 231-7433
william.padgett@btlaw.com

*Counsel for H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.*