IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*All Track One Cases* | MDL 2804<br><br>JUDGE DAN AARON POSTER<br><br>MAGISTRATE JUDGE DAVID A RUIZ<br><br>**THE ENDO DEFENDANTS' BRIEF IN OPPOSITION TO THE MOTION TO DISQUALIFY CAROLE RENDON FILED BY THE CITY OF CLEVELAND AND JOINED BY CUYAHOGA COUNTY, SUMMIT COUNTY AND THE CITY OF AKRON** |

# TABLE OF CONTENTS

<b>Page</b>

SUMMARY OF ARGUMENT ...................................................................................1

FACTS ................................................................................................................2

LAW AND ARGUMENT .......................................................................................2

I.  A Party Has A Right To Counsel Of Its Choice And Disqualification Requires A
    High Standard Of Proof. ...............................................................................2

II.  It Is Reversible Error To Disqualify Counsel Based On A Mere Appearance Of
     Impropriety. ...............................................................................................3

III.  Ms. Rendon Did Not Violate Any Rule Of Professional Conduct. ..................5

    A.  Ms. Rendon Did Not Violate Rule 1.11(a). ..........................................6

        1.  A "Matter" Must Be Particular and Involve Specific Parties. ...............7

        2.  The Opioid Epidemic Is Not a Rule 1.11 "Matter." ...................8

        3.  Under Ohio Law, a Matter Must Be the Same, Not Just "Substantially
             Related," to Provide a Basis for Disqualification Under Rule 1.11............9

    B.  Ms. Rendon Did Not Violate Rule 1.11(c). ..........................................11

        1.  Insight Into How Police Departments and Medical Examiners Offices
             Operate Does Not Constitute Confidential Government Information. ......11

        2.  Plaintiffs Do Not Identify Any "Confidential Government
             Information" In Ms. Rendon's Possession...................................13

        3.  Two of the Plaintiffs Do Not Even Claim to Have Shared Any
             Information with Ms. Rendon.................................................17

IV.  Plaintiffs' Motion To Disqualify Fails For Additional Reasons.......................18

    A.  Plaintiffs Failed To Prove Correlative Prejudice. ..................................18

    B.  Ms. Rendon Did Not "Switch Sides.".................................................18

    C.  Plaintiffs' Delay Constitutes Waiver. .................................................19

    D.  Plaintiffs Brought Their Motion In Bad Faith. .....................................22

V.  There Is No Legitimate Basis To Depose Ms. Rendon And The Court Should Deny
    The City's Request To Do So. .......................................................................23

VI.     Disqualification Would Prejudice Endo. ...........................................................................25

CONCLUSION.............................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Kaech*,
No. C-3-92-157, 1993 WL 1367440 (S.D. Ohio Dec. 30, 1993)......................................10, 14

*Aetna, Inc. v. Blue Cross Blue Shield of Michigan*,
No. 11-15346, 2015 WL 1646464 (E.D. Mich. Apr. 14, 2015) ...........................................3, 4

*Akron v. Carter*,
190 Ohio App.3d 420, 2010-Ohio-5462, 942 N.E.2d 409.......................................................2

*Alexander v. Primerica Holdings, Inc.*,
822 F. Supp. 1099 (D.N.J. 1993) ................................................................................20, 21, 22

*Alomari v. Ohio Dep't of Pub. Safety*,
626 F. Appx. 558 (6th Cir. 2015).........................................................................................24

*In re Anonymous*,
932 N.E.2d 671 (Ind. 2010) .................................................................................................15

*Arroyo v. City of Buffalo*,
No. 15-CV-753A(F), 2017 WL 3085835 (W.D.N.Y. July 20, 2017)............................5, 6, 12

*Brown v. Dist. of Columbia Bd. of Zoning Adjustment*,
486 A.2d 37 (D.C. 1984) ................................................................................................4, 9, 19

*Conley v. Chaffinch*,
431 F.Supp.2d 494 (D. Del. 2006) .......................................................................................20

*Cooper v. Omni Ins. Co.*,
No. 4:14-cv-706-RBH, 2015 WL 1943802 (D.S.C. 2015)....................................................25

*Duggan v. Village of New Albany*,
No. 2:08-cv-814, 2009 WL 3126555 (S.D. Ohio 2009) ........................................................25

*E.E.O.C. v. Hora, Inc.*,
239 Fed. Appx. 728 (3rd Cir. 2007).....................................................................................18

*Fann v. Floied*,
No. 4:03-CV-042, 2006 WL 849847 (E.D. Tenn. Mar. 28, 2006) .........................................23

*Ferreira v. United States*,
350 F. Supp. 2d 550 (S.D.N.Y. 2004)....................................................................................23

*Franklin v. Clark*,
   454 F. Supp. 2d 356 (D. Md. 2006) ...........................................................................14, 16

*Freeman v. Chicago Musical Instrument Co.*,
   689 F.2d 715 (7th Cir. 1982) ...............................................................................................22

*Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.*,
   No. 2:05-cv-0889, 2007 WL 543929 (S.D. Ohio 2007) ......................................................25

*Gazvoda v. Secy. of Homeland Sec.*,
   No. 15-cv-14099, 2018 WL 1281756 (E.D. Mich. Mar. 13, 2018)......................................25

*State ex rel. Glasgow v. Jones*,
   119 Ohio St. 3d 391, 2008-Ohio-4788, 894 N.E.2d 686 .....................................................14

*Greatbatch Ltd. v. AVX Corp.*,
   No. 13-723-LPS, 2017 WL 3085055 (D. Del. July 20, 2017) ................................................4

*Ike and Sam's Grp., LLC v. Brach*,
   138 A.D.3d 690 (N.Y. App. Div. 2016) ..........................................................................21, 22

*Kala v. Aluminum Smelting & Ref. Co., Inc.*,
   81 Ohio St. 3d 1, 688 N.E.2d 258 (1998) .............................................................................4

*Kitchen v. Aristech Chemical*,
   769 F. Supp. 254 (S.D. Ohio 1991) ..................................................................................3, 18

*Kronberg v. LaRouche*,
   No. 1:09cv947, 2010 WL 1443934 (E.D. Va. Apr. 9, 2010).................................................4

*Laker Airways Ltd. v. Pan Am. World Airways*,
   103 F.R.D. 22 (D.D.C. 1984)........................................................................................ *passim*

*Manning v. Waring, Cox, Sklar & Allen*,
   849 F.2d 222 (6th Cir. 1988) ..................................................................................................3

*Meisel v. F.B.I.*,
   204 F. Supp. 2d 684 (S.D.N.Y. 2002)..................................................................................23

*Nat'l Bonded Warehouse Ass'n, Inc. v. U.S.*,
   718 F. Supp. 967 (Ct. Int'l Trade 1989) ............................................................................5, 8

*In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*,
   No. 2:03-md-1565, 2010 WL 1257598 (S.D. Ohio Mar. 29, 2010) .....................................20

*Nat'l Union Fire Ins. Co. of Pittsburgh Penn v. Alticor, Inc.*,
   466 F.3d 456 (6th Cir. 2006) ..................................................................................................3

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*,
   278 F.3d 621 (6th Cir. 2002) ................................................24

*O'Brien v. Brunner*,
   No. 2:15-cv-2803, 2016 WL 1059683 (S.D. Ohio Mar. 17, 2016) ......................2, 3

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   MDL No. 05-1720 (JG) (JO), 2006 WL 6846702 (E.D.N.Y. Aug. 7, 2006) ................. *passim*

*Phoenix Capital Grp., LLC v. Western Express, Inc.*,
   No: 3:16-0299, 2016 WL 10805745 (M.D. Tenn. Dec. 13, 2016) ..................20, 21

*State ex rel. Plain Dealer Pub. Co. v. Lesak*,
   9 Ohio St.3d 1, 457 N.E.2d 821 (1984) (Celebrezze, C.J., concurring) ..................14

*Prado v. Mazeika*,
   No. 3:16-cv-320, 2016 WL 6947943 (S.D. Ohio Nov. 28, 2016) ...........................3

*Reeves v. Town of Cottageville*,
   No. 2:12-cv-02765, 2014 WL 4231235 (D.S.C. Aug. 26, 2014)...........................20

*In re Scully*,
   No. CIV.A.06-0077(GK), 2006 WL 1523231 (D.D.C. Apr. 11, 2006)......................23

*Sea Tow Int'l, Inc. v. Pontin*,
   246 F.R.D. 421 (E.D.N.Y. 2007)..............................................24

*Secure Axcess, LLC v. Dell Inc.*,
   No. 6:11-CV-338, 2012 WL 12919543 (E.D. Tex. Feb. 23, 2012).......................12

*Smith v. Cleveland Clinic Found.*,
   151 Ohio App.3d 373, 2003-Ohio-286, 784 N.E.2d 158 (8th Dist.) .................5, 18

*In re Sofaer*,
   728 A.2d 625 (D.C. 1999) .................................................9

*State v. Cornick*,
   8th Dist. Cuyahoga No. 99609, 2014-Ohio-2049 ...................................3

*State ex rel. Strothers v. Wertheim*,
   80 Ohio St.3d 155, 684 N.E.2d 1239 (1997) .......................................14

*U.S. v. Rasco*,
   No. CR408-100, 2009 WL 1873804 (S.D. Ga. June 29, 2009).......................11, 12

*U.S. v. Villaspring Health Care Center, Inc.*,
   No. 3:11-43-DCR, 2011 WL 5330790 (E.D. Ky. Nov. 7, 2011)...........................12

*United States v. Standard Oil,*
   136 F. Supp. 345 (S.D.N.Y.1995) ............................................................................4

*In re Valley-Vulcan Mold Co.,*
   237 B.R. 322 (6th Cir. 1999) ...........................................................2, 3, 20, 21

*Wagner v. Lehman Bros. Kuhn Loeb, Inc.,*
   646 F. Supp. 643 (N.D. Ill. 1986) .............................................................................4

**Statutes**

18 U.S.C. Section 207 ............................................................................................22

Sunshine Laws. R.C. 149.43 ..................................................................................14

**Rules**

Code of Judicial Conduct. Rule 1.2 ..........................................................................3

Ohio Prof. Cond. Rule 1.9 ..........................................................................15, 19, 22

Ohio Prof. Cond. Rule 1.11 ............................................................................ *passim*

Ohio Prof. Cond. Rule 3.7 ......................................................................................22

## SUMMARY OF ARGUMENT

The City of Cleveland,[1] joined later by Cuyahoga and Summit Counties and the City of
Akron (collectively, "Plaintiffs"), argue that Carole Rendon[2] and her firm, BakerHostetler,
should be disqualified for alleged violations of Rules 1.11(a) and 1.11(c) of the Ohio Rules of
Professional Conduct and "to avoid the appearance of impropriety."  There is no basis for
disqualification.

The law is clear: a court may not disqualify a civil litigant's chosen counsel without a
violation of the Ohio Rules of Professional Conduct.  And even when rules have been broken—
which is not the case here—the Court may disqualify counsel only if the violation prejudices the
moving party such that disqualification is absolutely necessary.  Here, none of those conditions
are met.

Ms. Rendon has not violated any ethical rule.  Rule 1.11(a) applies only when a lawyer in
private practice previously participated personally and substantially in the same matter while
working for the government.  Plaintiffs' cases are not the same "matter" as any Ms. Rendon
worked on while a federal prosecutor.  The rule's plain language makes clear that the "opioid
epidemic" is not a matter, and a consent decree between the U.S. Department of Justice and the
City of Cleveland regarding the excessive use of force by police (the "Consent Decree") is not
the same matter as these cases.  Rule 1.11(c) is likewise inapplicable.  The Rule 1.11 definition
of "confidential government information" is very specific.  Plaintiffs have not identified any

---

[1] The City of Cleveland captioned its Motion to Disqualify as applicable to "All Cases" but cites to no authority
whatsoever that would permit the Court to disqualify Ms. Rendon from any case in which the City of Cleveland is
not a party.  To the extent the Court seriously entertains the City of Cleveland's baseless motion, any relief it grants
must be case-specific.  That is, the Court must consider disqualification on a case-by-case basis, with respect to each
Plaintiff's claims.  Two of the four Plaintiffs have not even attempted to explain how any alleged ground for
disqualification could apply to them.  Their joinder amounts to a simple "me too," without any supporting evidence.
[2] Ms. Rendon and BakerHostetler represent Endo Pharmaceuticals Inc. and certain affiliated companies (the "Endo
Defendants") in this MDL.  Without objection, the Court also appointed Ms. Rendon liaison counsel for the
Manufacturer Defendants on December 29, 2017.  Dkt. #24; Non-Document Order, Dec. 29, 2017.

"confidential government information" known by Ms. Rendon about any of them that could provide a basis for disqualification.

Plaintiffs' motion to disqualify (and alternative request to compel Ms. Rendon's testimony) has no basis in law or in fact.  It is a transparent effort to tarnish Ms. Rendon's professional reputation and to harass and distract Endo and its counsel during the crucial final weeks at the close of discovery.  The Court should deny Plaintiffs' motion in its entirety.

## FACTS

From November 16, 2009 through March 10, 2017, Ms. Rendon served as Executive Assistant U.S. Attorney, First Assistant U.S. Attorney and U.S. Attorney in the Northern District of Ohio.  Rendon Decl. ¶¶ 1–4.  In those positions, Ms. Rendon represented only the United States government.  Ms. Rendon has never represented any of the Plaintiffs, and in fact was adverse to the City of Cleveland with respect to the Consent Decree.  *Id.* ¶¶ 5–7.  Ms. Rendon possesses no confidential government information about any of the Plaintiffs that could be used to Plaintiffs' material disadvantage in these cases.  *Id.* ¶ 8.

## LAW AND ARGUMENT

**I.     A Party Has A Right To Counsel Of Its Choice And Disqualification Requires A High Standard Of Proof.**

Disqualification is a "drastic measure [that] courts should hesitate to impose except when absolutely necessary."  *Akron v. Carter*, 190 Ohio App.3d 420, 2010-Ohio-5462, 942 N.E.2d 409, ¶ 19; *In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (6th Cir. 1999).  Every litigant has a right to its choice of counsel.  *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 27 (D.D.C. 1984).  Courts view motions to disqualify with "extreme caution" because the ability to deny one's adversary its choice of counsel "is a potent weapon," which carries significant potential for abuse.  *O'Brien v. Brunner*, No. 2:15-cv-2803, 2016 WL 1059683, at *2 (S.D. Ohio

Mar. 17, 2016) (quoting *Manning v. Waring, Cox, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir.

1988)); *Kitchen v. Aristech Chemical*, 769 F. Supp. 254, 256–57 (S.D. Ohio 1991).

"The party seeking disqualification must carry a 'heavy burden' and must meet a 'high

standard of proof' before a lawyer is disqualified," and "a party's choice of counsel is entitled to

substantial deference." *In re Valley-Vulcan Mold Co*., 237 B.R. at 337 (citations omitted). "The

party seeking disqualification of counsel must identify articulable facts demonstrating a . . .

legitimate basis for disqualification." *Prado v. Mazeika*, No. 3:16-cv-320, 2016 WL 6947943, at

*1 (S.D. Ohio Nov. 28, 2016). As explained below, there is no such basis here.

## II.    It Is Reversible Error To Disqualify Counsel Based On A Mere Appearance Of Impropriety.

Plaintiffs argue that "[t]he mere appearance of impropriety should disqualify Ms.

Rendon,"[3] but they are wrong. Under Ohio law, a party seeking to disqualify counsel must prove

an actual violation of the Ohio Rules of Professional Conduct. The mere "appearance of

impropriety" is not enough. *State v. Cornick*, 8th Dist. Cuyahoga No. 99609, 2014-Ohio-2049,

¶¶ 6–7; *O'Brien v. Brunner*, 2016 WL 1059683 at *3.[4] The Ohio Rules of Professional Conduct

explicitly reject the appearance of impropriety standard. Prof. Cond. Rule 1.11, *cmts*.

(comparing Rule 1.11 to abrogated DR9-101(B)).[5] Disqualifying an attorney on that ground is

reversible error. *State v. Cornick,* 2014-Ohio-2049, ¶ 7.[6]

---

[3] *Plaintiff City of Cleveland's Brief in Support of Motion to Disqualify ("Pl. Br.")* at 3.

[4] In *O'Brien*, the Southern District of Ohio distinguished the Ohio Code of Judicial Conduct. Rule 1.2 of the Ohio Code of Judicial Conduct requires judges to "avoid impropriety and the appearance of impropriety." That standard used to apply to lawyers, too, under Canon 9 of the Code of Professional Responsibility. But Canon 9 has been superseded and the new Rule contains no such limitation on a lawyer's conduct.

[5] *See* Prof. Cond. Rule 1.11, cmts. (explaining that Rule 1.11 rejected the "appearance of impropriety" standard in former DR9-101(B) because a prohibition "based on avoiding the appearance of impropriety . . . gives no specific guidance to former government lawyers."); *see also Nat'l Union Fire Ins. Co. of Pittsburgh Penn v. Alticor, Inc*., 466 F.3d 456, 457–58 (6th Cir. 2006) (instructing courts to apply the Rules of Professional Conduct rather than common law ethics because the codified Rules "will lead to greater uniformity and predictability.").

[6] If the Court were concerned about an "appearance of impropriety" arising from the unlikely possibility that Ms. Rendon's name appears on a document presented to the jury, that problem is easily solved. The court can simply order redaction of Ms. Rendon's name from any document provided to the jury and order the litigants not to reference Ms. Rendon's prior government service during trial. *See Aetna, Inc. v. Blue Cross Blue Shield of*

- 3 -

Policy considerations inform this approach:

> If service with the government will tend to sterilize an attorney in too large an area of law . . . or will prevent [her] from engaging in practice of the very specialty for which the government sought [her] service— and if that sterilization will spread to the firm with which [s]he becomes associated—the sacrifices of entering government service will be too great for most . . . to make.

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 05-1720 (JG) (JO), 2006 WL 6846702, at *7 (E.D.N.Y. Aug. 7, 2006) (quoting *United States v. Standard Oil*, 136 F. Supp. 345, 363 (S.D.N.Y.1995)).  Rule 1.11 strikes an appropriate balance and avoids these disincentives by limiting disqualification to certain specifically enumerated circumstances, none of which is present here.  *Id.*

Plaintiffs cite several cases for the proposition that an "appearance of impropriety" can justify disqualification, but none of them disqualified counsel without first finding an actual violation of an ethical rule.[7]  Moreover, several of the cases are outdated cases and no longer good law.  For example, in *Kala v. Aluminum Smelting & Ref. Co., Inc*., the Ohio Supreme Court discussed the "appearance of impropriety" in the context of Canon 9 of the then-in-force Ohio Disciplinary Rules, which required attorneys to avoid "even the appearance of impropriety."  81 Ohio St. 3d 1, 5, 668 N.E.2d 258 (1998).  But Ohio no longer uses those rules; it adopted the ABA's Model Rules of Professional Conduct (which reject the appearance of impropriety standard) in 2007.

---

*Michigan*, No. 11-15346, 2015 WL 1646464 (E.D. Mich. Apr. 14, 2015).  In *Aetna*, the court ordered the parties to redact the names of government attorneys from trial documents to avoid giving the appearance that one side was "on the 'same team' as the United States and the State of Michigan."  2015 WL 1646464 at *15.  *See also Greatbatch Ltd. v. AVX Corp.*, No. 13-723-LPS, 2017 WL 3085055, at *1 (D. Del. July 20, 2017) (ordering redactions "to prevent the jury from learning that the document includes the name of any trial counsel").

[7] *Kala v. Aluminum Smelting & Ref. Co., Inc.*, 81 Ohio St. 3d 1, 14, 688 N.E.2d 258 (1998) (violation of then-existing DR 5-105); *Kronberg v. LaRouche*, No. 1:09cv947, 2010 WL 1443934 (E.D. Va. Apr. 9, 2010) (violation of Rule 1.11); *Brown v. Dist. of Columbia Bd. of Zoning Adjustment*, 486 A.2d 37 (D.C. 1984) (no disqualification); *Wagner v. Lehman Bros. Kuhn Loeb, Inc.*, 646 F. Supp. 643 (N.D. Ill. 1986) (violation of then-existing DR 9-101).

Under current Ohio law, the Court may not disqualify Ms. Rendon from any case without finding that she violated the Ohio Rules of Professional Conduct—which she has not done.  And the Court would also need to find resulting prejudice to a Plaintiff such that disqualification from that Plaintiff's case is absolutely necessary.  *Smith v. Cleveland Clinic Found.*, 151 Ohio App.3d 373, 2003-Ohio-286, 784 N.E.2d 158, ¶ 10 (8th Dist.) (abuse of discretion to disqualify despite demonstrated Disciplinary Rule violation because no correlative prejudice).

### III.    Ms. Rendon Did Not Violate Any Rule Of Professional Conduct.

Consider the following fact patterns:

- **Scenario 1:**  Farmer, a DOJ antitrust attorney, conducted an investigation into price-fixing among airlines.  As part of that investigation, Pan American provided "trade secret information, IATA materials, and attorney-client communications in response to grand jury subpoenas" to Farmer.  After leaving the DOJ, Farmer filed an antitrust lawsuit against Pan American.[8]

- **Scenario 2:**  Wolfgang, also a DOJ antitrust attorney, investigated MasterCard for antitrust violations.  His investigation included extensive written and document discovery about "every aspect of Mastercard's structure and operations."  Privilege logs show he received a legal memo prepared by DOJ economists concerning credit card matters.  After leaving the DOJ, Wolfgang filed an antitrust lawsuit against MasterCard.[9]

Federal courts rejected disqualification in both cases because the prior investigations and the later litigation were not the same "matter" and the lawyers did not possess confidential government information that could be used to the material disadvantage of the defendants.  As a result, both courts held that the former DOJ attorney had not violated Rule 1.11(a) or Rule 1.11(c).  *See also Nat'l Bonded Warehouse Ass'n, Inc. v. U.S.*, 718 F. Supp. 967 (Ct. Int'l Trade 1989) (same result even though the former U.S. Customs attorney there had "switched sides" and sued the government; his previous, general activities were not a "matter"); *Arroyo v. City of Buffalo*, No. 15-CV-753A(F), 2017 WL 3085835, *13 (W.D.N.Y. July 20, 2017) (same matter,

---

[8] *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22 (D.D.C. 1984).
[9] *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 05-1720(JG)(JO), 2006 WL 6846702, at *4 (E.D.N.Y. Aug. 7, 2006).

but no disqualification despite switching sides; the attorney's declaration that he had no confidential information trumped movants' vague and unspecific claims that attorney had "intimate knowledge").[10]

Plaintiffs have even less of a basis to establish a Rule 1.11 violation than did the parties in *Laker Airways* and *In re Payment Card*. Plaintiffs identify no prior government matter, or specific confidential government information, to support the alleged Rule 1.11 violation. Rather, they argue that given Ms. Rendon's experience and community engagement, and her familiarity with some of the witnesses, there must be something that disqualifies her. They are wrong. The *Laker* court rejected an identical argument[11] as absurd:

> If advocating views, fostering a policy, or establishing a framework for competition were sufficient to disqualify counsel, every government attorney holding a position of authority in an executive department or an administrative agency would be disqualified from the practice of law in his field for a very long time. . . . **That is not, that cannot be, the law.**

*Laker*, 103 F.R.D. at 27, 35 (emphasis added).

### A. Ms. Rendon Did Not Violate Rule 1.11(a).

Rule 1.11(a)(2) generally prohibits a former government lawyer from representing "a client in connection with a matter in which the lawyer participated personally and *substantially* as a public officer or employee." (Emphasis in original). Plaintiffs' cases are not "matter[s] in

---

[10] In *Arroyo*, an assistant district attorney interviewed a police officer and reviewed a "warrant, the warrant application information and 'ops plan'" and "other internal Police Department documents concerning" the execution of a warrant in which an officer shot plaintiff's dog. 2017 WL 3085835 at *11. Two years later he represented plaintiff in a lawsuit against the police department but was not disqualified. Id. at *13.

[11] "In connection with this motion, [movants] have evidently scoured the government files for references to Farmer's name and for activities for which he may have ever had some responsibility. On the basis of these efforts, they then provided the Court with a roll of activities which allegedly bar him, and all associated counsel, from representing plaintiff in this case. This broad, wide-ranging and scattershot effort is undoubtedly designed to persuade the Court that where there is this much smoke there must be some fire. Yet, when the various claims are analyzed in detail, it becomes clear that there is no fire—there is only smoke." *Laker*, 103 F.R.D. at 41.

which" Ms. Rendon previously participated at all.  Indeed, Plaintiffs' lawsuits did not even exist at the time that Ms. Rendon served in the Department of Justice.  Rendon Decl. ¶ 26.

The most Plaintiffs can muster is a vague claim that during her government service "Ms. Rendon was involved in many matters involving the opioid crisis and the Track One jurisdictions."[12]  They cite Ms. Rendon's public-facing activities in the U.S. Attorney's Office related to opioids generally, such as speeches she gave at public conferences, public testimony before the U.S. Senate, and panel presentations at schools, community centers, and elsewhere.[13]  Plaintiffs focus in particular on her involvement with the U.S. Attorney's Heroin and Opioid Task Force ("Task Force"), a community partnership which counts private citizens, including doctors, people in recovery, and educators among its members.[14]  None of these activities is a "matter" within the meaning of Rule 1.11.

    1.    <u>A "Matter" Must Be Particular and Involve Specific Parties.</u>

Rule 1.11(e) defines "matter" narrowly to mean a "judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other ***particular*** matter involving a ***specific*** party or parties."  Prof. Cond. Rule 1.11(e) (emphasis added).  Whether an activity is "a matter" turns on whether the activity is a "discrete and isolatable transaction or set of transactions between identifiable parties."  *In re Payment Card*, 2006 WL 6846702, at *11 (applying New York's version of rule).  General activities do not count:

> The same lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the same situation or conduct is the same matter.  By contrast, work as a government employee in

---

[12] *Pl. Br.* at 3.
[13] *Pl. Br.* at 8; *Pifko Decl. Ex. 13* (Ms. Rendon participated in public conference entitled *Heroin: A Crisis Facing Our Entire Community*); *Ex. 14* (Ms. Rendon participated in a Drug Diversion Summit).  Ms. Rendon's comments at both conferences were limited to prefatory remarks.  *Id. Pl. Br.* at 5; *Pifko Decl. Ex. 5* (Ms. Rendon testified before Senate Committee on Homeland Security and Governmental Affairs).
[14] *Pl. Br.* at 3–8.

> drafting, enforcing, or interpreting government or agency procedures, regulations, or laws, or in briefing abstract principles of law, does not disqualify the lawyer.

ABA Comm. on Ethics and Prof. Resp., Formal Op. 342 (1975), reprinted in 62 A.B.A.J. 517 (1976);[15] *see also Nat'l Bonded Warehouse Ass'n Inc. v. United States*, 718 F. Supp. 967 (Ct. Int'l Trade 1989) (same).

### 2. The Opioid Epidemic Is Not a Rule 1.11 "Matter."

Plaintiffs appear to consider the opioid abuse crisis a "matter," but courts have rejected attempts to define "matter" so broadly.  *See, e.g., Laker*, 103 F.R.D. 22.[16]  In *Laker*, the court refused to disqualify a former DOJ attorney who had investigated certain airlines for antitrust violations from representing a start-up charter air carrier in a lawsuit alleging antitrust violations against those same airlines.  *Id.* at 30–31, 42.  A "matter" within the meaning of Rule 1.11(a), the *Laker* court held, must be "narrow in scope and is confined to specified issues and identifiable parties such that it may be properly characterized as 'quasi-judicial' in nature."  *Id.* at 34.  The court explained that the definition is "limited to government actions focusing on particular, distinct, and identifiable sets of facts with reasonably measurable implications and consequences involving specific parties" rather than "a general area of activity."  *Id.* (citation omitted).

The Task Force is not a "matter" either.  Task Force initiatives included such projects as:

> working to make Narcan more readily available; presentations to tens of thousands of parents, students and other members of the community at hundreds of town hall meetings and schools; increased training for doctors and other medical professionals about the dangers of opioids; the creation of a heroin-involved death investigation team that treats overdoses as crime scenes, with the goal of filing enhanced criminal charges for dealers when

---

[15] Ohio Rule 1.11(e) mirrors ABA Model Rule 1.11(e)—which codified the definition of matter set out in this ABA formal opinion.
[16] The *Laker* court was interpreting the District of Columbia's disciplinary rules which are slightly different from Ohio's rules of professional conduct.  The definition of "matter" in both rules, however, is the same.

appropriate; and working to increase the availability of drug treatment. [17]

The Task Force's initiatives did not include litigation against, or investigation of, manufacturers or distributors of prescription opioid medications.  In short, the opioid abuse crisis and the Task Force are not "matters" as defined in Rule 1.11.

3.  Under Ohio Law, a Matter Must Be the Same, Not Just "Substantially Related," to Provide a Basis for Disqualification Under Rule 1.11.

Plaintiffs also incorrectly assert that they need only show that their cases are "substantially related" to a "matter" on which Ms. Rendon worked while in the U.S. Attorney's Office.  Pl. Br. at 16.  They are dead wrong.  The cases on which they rely—*Brown*[18] and *Sofaer*[19]—applied the District of Columbia's version of Rule 1.11, which explicitly extends to "substantially related" matters.[20]  In contrast, Ohio Rule 1.11(a), which tracks Model Rule 1.11(a), requires that the matters be the same; the phrase "substantially related" is absent.  *See* Ohio Prof. Cond. Rule 1.11, cmt. 10 ("In determining whether two particular matters are *the same*, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed.") (emphasis added); 2 *ABA/BNA Lawyers' Manual on Professional Conduct* § 91:4008 (2009) ("Rule 1.11 differs from the general rule on former-client conflicts because it does not operate at all unless the subsequent representation . . .

---

[17] Dept. of Justice, U.S. Attorney's Office, *U.S. Attorney's Heroin and Opioid Task Force Recognized with Attorney General's Award*, https://www.justice.gov/usao-ndoh/pr/us-attorneys-heroin-and-opioid-task-force-recognized-attorney-generals-award.
[18] *Brown v. Dist. of Columbia Bd. of Zoning Adjustment*, 486 A.2d 37 (D.C. 1984) (three transactions involving the same parties and the same piece of real estate were not the same "matter" for Rule 1.11 purposes).
[19] *In re Sofaer*, 728 A.2d 625, 646–47 (D.C. 1999) (noting that it could not properly define the matter as "terrorism, or even Libyan terrorism. . . . In contrast, the bombing of Pan Am 103 is a discrete event, and the legal activities flowing from the government's efforts to address it are an isolatable set of transactions.").
[20] At the time of *Brown*, courts read the substantially-related test into the District of Columbia's DR 9-101(B). *See Brown*, 486 A.2d at 42.  And when *Sofaer* was decided, the District of Columbia's ethics rules expressly barred a lawyer from "accept[ing] other employment in connection with a matter which is the same as, **or substantially related to**, a matter in which the lawyer participated personally and substantially as a public offer or employee." *Sofaer*, 728 A.2d at 626 (quoting D.C. Rule of Prof. Conduct 1.11(a)) (emphasis added).

would be in the *same* matter.").[21]

Thus, to establish a Rule 1.11(a) violation, Plaintiffs must show "that the issues in the two cases are 'identical' or 'essentially the same,' and that the relationship between them is 'patently clear.'"  *In re Payment Card*, 2006 WL 6846702, at *9 (applying New York DR 9-101(B), which tracks Ohio Rule 1.11) (citations omitted); *accord Adams v. Kaech*, No. C-3-92-157, 1993 WL 1367440, at *2 (S.D. Ohio Dec. 30, 1993) (a "matter" is "the same issue of fact involving the same parties and the same situation or conduct.").  Here, Plaintiffs do not and cannot identify "two cases," let alone two cases that present the same issues and involve the same parties, situation and conduct.

The only particularized "matter" Plaintiffs point to is the Consent Decree between the federal government and the City of Cleveland.  But the Consent Decree had nothing to do with the opioid abuse crisis; it did not even have anything to do with police activities related to drugs. Pifko Decl. Ex. 3, 226:27, Testimony of Police Chief Calvin Williams.  Rather, the Consent Decree resolved an investigation into the Cleveland Division of Police's unconstitutional use of excessive force.  The word "opioid" appears but once in the 103-page document (on page 100, in the definition of "Individual in crisis"). Pifko Decl. Ex. 17.  The findings of the investigation, the Consent Decree, and the City of Cleveland's ongoing efforts to comply with the decree are all a matter of public record and are readily available, including on the Monitor's website at www.clevelandpolicemonitor.net.  Ms. Rendon's work on the matter that culminated in the Consent Decree cannot justify disqualifying her from representing the Endo Defendants in this wholly unrelated matter.

---

[21] *See also Laker*, 130 F.R.D. at 29 (distinguishing cases on this basis); 1 Geoffrey C. Hazard, Jr. et al, *The Law of Lawyering* § 16.07 (4th ed. 2015) ("[Model] Rule 1.11(a) applies . . . only if the new matter is one *in which* [the attorney] had previously participated while in government. Thus, the ultimate inquiry is whether the enforcement 'matters' [that the attorney] handled while in the government are 'the same' as the [subsequent matter].").

### B.  Ms. Rendon Did Not Violate Rule 1.11(c).

Rule 1.11(c) prohibits a former government lawyer from using "information that the lawyer *knows* is confidential government information about a person" from "represent[ing] a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person."  Prof. Cond. Rule1.11(c) (emphasis in original).  Even assuming each Plaintiff is a "person," nothing Plaintiffs cite in their motion comes close to meeting this standard.

1.  <u>Insight Into How Police Departments and Medical Examiners Offices Operate Does Not Constitute Confidential Government Information.</u>

A party moving for disqualification must state "exactly what information [opposing counsel] possesses that is currently confidential and specifically how she obtained that information."  *U.S. v. Rasco*, No. CR408-100, 2009 WL 1873804, *4 (S.D. Ga. June 29, 2009); *see also Laker*, 103 F.R.D. at 40 (party cannot prove a rules violation "by asserting, without elaboration, that confidences [were] imparted").

Plaintiffs do not identify any specific information that they claim is "confidential government information"—rather, they complain generally that Ms. Rendon is familiar with the "inner workings" of government entities, such as police departments and medical examiner offices.  Pl. Br. at 20.  In support of these claims, Plaintiffs rely heavily on Cuyahoga County Medical Examiner Dr. Thomas Gilson and Cleveland Police Commander Gary Gingell, both of whom submitted conclusory and identically-worded declarations that were plainly drafted by counsel.[22]  In them, each declarant claims to have shared:

---

[22] Plaintiffs try to imply that Ms. Rendon has somehow injected her prior government service into this litigation.  But the evidence they cite shows precisely the opposite.  Of the hundreds of depositions taken in this case, Plaintiffs cite just four witnesses who mentioned Ms. Rendon during their depositions.  Read in context, the witnesses' references to Ms. Rendon are irrelevant and wholly contrived by the witnesses to manufacture support for this motion.  *See, e.g.*, *Pl. Br.* at 7. (testimony of Garry Gingell regarding the composition of the Task Force, "Am I missing anybody Carole?").  None of the testimony Plaintiffs cite establishes any improper conduct by Ms. Rendon.

> information about [how that Plaintiff handles] activities and
> investigations, the resources of [Cuyahoga County (Gilson) or
> Cleveland (Gingell)] to combat the opioid crisis and strategies
> related to prosecutions. The confidential information shared
> included [Gilson's or Gingell's] strategic insights into [Cuyahoga
> County's (Gilson) or Cleveland's (Gingell)] multi-faceted efforts to
> combat the opioid crisis.

Pl Br. Ex. 1; 2.  These declarations are precisely the sort of "generalized allegations" that are

insufficient to support disqualification.[23]  *Rasco*, 2009 WL 1873804, at *4.  *See also Laker*

*Airways*, 103 F.R.D. at 40; *Arroyo*, 2017 WL 3085835, *13; *Secure Axcess, LLC v. Dell Inc.*,

No. 6:11-CV-338, 2012 WL 12919543, *5 (E.D. Tex. Feb. 23, 2012) (declarations amounting to

"mere conjecture" that confidential information was shared were insufficient).   And as

insufficient as these allegations are, the City of Akron and Summit County offer even less.

Neither of these Plaintiffs attempts to offer any factual support for its disqualification request.

Plaintiffs' argument that "strategic insights" can be confidential information is absurd in

this context.  Plaintiffs cite to *U.S. v. Villaspring Health Care Center, Inc.*, No. 3:11-43-DCR,

2011 WL 5330790 (E.D. Ky. Nov. 7, 2011), but *Villaspring* involved an attorney who

participated twice on opposite sides ***of the very same matter***.  *Id.* at *4–5.  The court there thus

used the phrase "strategic insights" to mean "insights into the strengths and weaknesses of the

Government's evidence" in a case involving the exact same party and the exact same misconduct

the attorney had investigated during his government employment.  *Id.* at *6.  Nothing Plaintiffs

have alleged here even approximates those facts.

Here, Plaintiffs plainly use "strategic insights" to mean general insights into how police

---

[23] The declarations are also not credible in light of Dr. Gilson's recent testimony.  At deposition, Dr. Gilson admitted

████████████████████████████████████████████████████████████████████

████████████████████████████████ which subsequently was widely and publicly shared in an article
Dr. Gilson co-authored with Ms. Rendon and Assistant U.S. Attorney Joseph Pinjuh.  *Hartman Decl.* ¶ 16-24, Ex. 3
(Cheffo Questions); *Pifko Decl. Ex.* 15.

departments and medical examiners offices conduct investigations.  If such knowledge were disqualifying, no former government prosecutor could ever represent a private client in a suit against a public entity.  *See Laker*, 103 F.R.D. at 35.

The fact that some of Ms. Rendon's communications touched on the topic of opioids does not change the analysis.  Ms. Rendon also worked extensively with the Collaborative to End Human Trafficking, partnering with federal, state and local law enforcement and the community to address that on-going crisis.  Rendon Decl. ¶¶ 10–11.  She spoke publicly about human trafficking and testified before the Ohio Civil Rights Commission.  Yet no one could seriously suggest Ms. Rendon is precluded from ever representing a defendant charged with human trafficking.

      2.    <u>Plaintiffs Do Not Identify Any "Confidential Government Information" In Ms. Rendon's Possession.</u>

The term "confidential government information" has a specific meaning under Rule 1.11(c): it means "information that has been obtained under governmental authority and that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public."  Prof. Cond. Rule 1.11(c).

Each part of this definition is important.  First, the information at issue must have been obtained "under governmental authority"—that is, compelled by the government:

> A subpoena or search warrant is the most obvious example of government authority, but many government regulations impose reporting and filing requirements. **On the other hand, the government acquires much information by collecting it from open sources, in which case the former government lawyer will have no special advantage as against third parties. Accordingly, there is no bar against subsequent use of such information.**

1 Geoffrey C. Hazard, Jr. et al, *The Law of Lawyering* § 16.12 (4th ed. 2015) (emphasis added).

Plaintiffs do not identify any information obtained by the U.S. Attorney's Office under

governmental authority.[24]  To the contrary, as explained below, Plaintiffs shared the information

they now call "confidential" voluntarily, widely, and with private citizens and the public.

Second, for Rule 1.11(c) to be violated, the information must still be confidential "at the

time the rule is applied."  In Ohio, government records, including emails, are presumptively

public under the Sunshine Laws.  R.C. 149.43; *State ex rel. Glasgow v. Jones*, 119 Ohio St. 3d

391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 21 (public records include anything "which serve[s] to

document the organization, functions, policies, decisions, procedures, operations, or other

activities of the office[,]" including emails of public employees).  While Ohio's Sunshine Laws

include some limited exceptions, Plaintiffs make no attempt to show how any special privilege

applies to the emails and documents attached as exhibits to their motion.[25]

Likewise, information produced or available through discovery, is not confidential

government information, even if it once was.  *See, e.g., Adams v. Kaech*, 1993 WL 1367440

(S.D. Ohio Dec. 30, 1993).  In *Adams*, the defendants alleged that the plaintiff's attorney had

acquired confidential information via "numerous interviews and meetings with [defendants']

officials and employees[,]" but there was "no assertion that [he] obtained any information from

these interviews and meetings which is not available . . . through discovery."  *Adams,* 1993 WL

1366440 at *5 n.5.  The Court found that the information was not "confidential," and refused to

disqualify counsel.  *Id*.; *see also Franklin v. Clark*, 454 F. Supp. 2d 356, 358 (D. Md. 2006)

---

[24] In fact, Dr. Gilson testified yesterday that █████████████████████████████████████
████████████ *Hartman Decl.* ¶ 17, Ex. 3 (Hartman Cross).
    [25] Nor can they.  Exceptions to Ohio's Sunshine laws, such as the confidential law enforcement investigatory records exception ("CLEIRs"), are entity-specific. *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 157–58, 684 N.E.2d 1239 (1997) (only the agency with the legal authority to conduct the investigation can invoke the exemption; the person or agency being investigated cannot raise it); *State ex rel. Plain Dealer Pub. Co. v. Lesak*, 9 Ohio St.3d 1, 3–4, 457 N.E.2d 821 (1984) (Celebrezze, C.J., concurring) (CLEIRS exemption did not apply to school district simply because it asked the prosecutor to investigate).

(formerly attorney-client privileged memorandum produced without any effort to claw back the memorandum was no longer confidential, and thus it "would be inappropriate to disqualify" the attorney based on knowledge memorialized within the memorandum).

Citing *In re Anonymous*, 932 N.E.2d 671, 674 (Ind. 2010), Plaintiffs make the absurd argument that it does not matter whether the information Ms. Rendon supposedly possesses is actually confidential. But by its terms Rule 1.11(c) turns on the knowing possession of "confidential government information." And *In re Anonymous* concerned whether an attorney may reveal a *current client's* confidences, which invokes different considerations wholly inapplicable to Rule 1.11(c).[26] Moreover, under Rule 1.11(c), the confidentiality of information does not turn simply on whether the information is actually available to the public. Rather, the government entity must be "prohibited by law from disclosing [the information] to the public," or must possess a legal privilege not to share it. Prof. Cond. Rule 1.11(c). Plaintiffs have completely failed to meet this burden.

In any event, most types of information referenced in Plaintiffs' brief are readily available from public sources and thus not confidential.[27] To the extent such information is not public, but is relevant to Plaintiffs' claims, it has or should have been produced in discovery and is thus no longer "confidential government information" for that additional reason.

In particular, Plaintiffs allege: (1) witnesses "met with Ms. Rendon in her capacity as Chair of the Opioid and Heroin Task Force," (2) Ms. Rendon was involved in the Task Force, (3) Ms. Rendon communicated with representatives from Plaintiff jurisdictions, (4) Ms. Rendon

---

[26] Case law interpreting Rule 1.9 on this point is irrelevant because Rule 1.11 uses the term "confidential government information," whereas Rule 1.9 simply says "information."

[27] Plaintiffs' own exhibits make clear that the information Plaintiffs raise in their brief is not confidential. *See, e.g.*, *Pifko Decl. Ex.* 2 at 225:3-22 (describing the Task Force: "It's a whole forum of people. Sometimes there could be forty people sitting in there."); *Pifko Decl. Ex.* 9 (listing people who received the Task Force information, including various doctors and private entities).

received information from local law enforcement regarding their efforts to combat opioid abuse

and the City of Cleveland's difficulty responding to same, (5) Ms. Rendon "reached out to gather

information on things like overdose deaths," (6) Ms. Rendon was part of STANCE[28] and

"facilitated meetings where crime statistics . . . were discussed," and that (7) Ms. Rendon

participated in "conferences addressing the opioid crisis" and "wrote articles about the Opioid

Crisis."[29]

These allegations fall far short of establishing a violation of Rule 1.11(c) because none of

them reference any specific "confidential government information."  For example:

- Most of Plaintiffs' allegations relate to Task Force activities.  But the Task Force has among its members doctors, educators, legislators, treatment providers, individuals in recovery and other private citizens.  Information shared with these organizations, by definition, cannot be "confidential government information."

- The overdose statistics Plaintiffs reference are publicly available on the Medical Examiner's website and have been produced in discovery in this litigation.  *See* http://medicalexaminer.cuyahogacounty.us/pdf_medicalexaminer/en-US/StatisticalRpts/2017StatisticalReport.pdf.

- Other allegations are wholly irrelevant to the facts and issues in this litigation.  For example, STANCE[30] has nothing to do with the opioid abuse crisis.  STANCE focuses on ending youth violence, and its project director is a private individual who heads the Partnership for a Safer Cleveland.

Plaintiffs' focus on the number of times Ms. Rendon's name appears on emails with City

and County employees[31] highlights the flaws in their argument.  First, documents produced in

discovery are not "confidential government information."  *See Franklin v. Clark*, 454 F. Supp.

2d 356, 358 (D. Md. 2006).  Second, of the 5,638 emails that contain Ms. Rendon's name, only

---

[28] STANCE (Stand Together Against Neighborhood Crime Everyday) "consists of more than 40 representatives, including public officials, community leaders, educators, public safety and law enforcement, foundations, faith-based organizations and members of the private sector" whose mission is to work to end youth violence. See www.justice.gov/usao-ndoh/law-enforcement-initiatives.

[29] *Pl. Br.* at 5 (witnesses had met Ms. Rendon through the Task Force); *id*. at 3–8 (Task Force generally); *id*. at 3–4 (communications with representatives) *id*. at 7–8 (local law enforcement); *id*. at 8 (overdose deaths); *id*. (facilitated meetings); *id*. at 8–9 (conferences and articles).

[30] *Pl. Br.* at 8; *Pifko Decl. Ex.* 13 (Ms. Rendon served on board of Stand Together Against Neighborhood Crime Everyday (STANCE)).

[31] *Pl. Br.* at 7, 8; *Pifko Decl.* 7–11, 17 (Ms. Rendon received various emails from City and County employees).

1,908 are unique; the remaining 3750 are duplicates.  Of the unique emails, 471 do not concern

opioids in any fashion; 139 are related to planning meetings for a heroin summit; 106 are

newspaper articles that contain Ms. Rendon's name; 195 are about general community

educational events or panels; and 515 relate to the Task Force.  Hartman Decl. at ¶¶ 4–6.  Of the

emails regarding the Task Force, the vast majority are non-substantive emails on which dozens

of individuals are copied, including private citizens, mostly to remind the Task Force members

about upcoming meetings or other community events.  *Id.* at ¶ 7–8.  None of the 1,908 emails

were marked as confidential by the sender of the email, and none contains confidential

government information about any plaintiff.  *Id.* at 9–11.

### 3.  Two of the Plaintiffs Do Not Even Claim to Have Shared Any Information with Ms. Rendon.

Finally, there are four separate Plaintiffs in the Track One cases.  Two, the City of Akron

and Summit County, make no effort to argue that they shared *any* confidential government

information with Ms. Rendon—much less  "confidential government information" within the

meaning of Rule 1.11(c).  These Plaintiffs have not even proffered the type of insufficient, bare-

bones, generalized assertions made by the City of Cleveland and Cuyahoga County.[32]  There is

no basis whatsoever on which to disqualify Ms. Rendon from their cases.

Plaintiffs have failed to satisfy even a single component of the "confidential government

information" definition, which is a prerequisite to any disqualification under Rule 1.11(c).

Accordingly, Rule 1.11(c) does not provide a basis to disqualify Ms. Rendon.

---

[32] Prior to filing their "me-too" motion to join the City of Cleveland's Motion to Disqualify, Summit County and the City of Akron never even raised a question about Ms. Rendon's involvement in these cases.  *Rendon Decl.*, ¶ 23.

## IV.  Plaintiffs' Motion To Disqualify Fails For Additional Reasons.

### A.  Plaintiffs Failed To Prove Correlative Prejudice.

Even if Plaintiffs could establish an ethical violation—which the foregoing analysis

conclusively establishes they cannot—it would be an abuse of discretion for this Court to

disqualify Ms. Rendon absent evidence that Plaintiffs have suffered correlative prejudice. *Smith*,

2003-Ohio-286, ¶ 10 (finding abuse of discretion and explaining: "[C]ourts are uniform in

holding that disqualification is improper where the moving party demonstrated a Disciplinary

Rule violation but failed to demonstrate correlative prejudice")[33]; *Kitchen v. Aristech Chem.*, 769

F. Supp. 254, 258–59 (S.D. Ohio 1991) (rejecting disqualification absent proof of prejudice).

Here Plaintiffs have provided no evidence of any alleged prejudice.[34]  *See E.E.O.C. v.*

*Hora, Inc.*, 239 Fed. Appx. 728, 731 (3rd Cir. 2007) (finding abuse of discretion after district

court disqualified attorney: "all of the information that Barnett received from Richardson was

disclosed during discovery, [and] Defendants accordingly were not prejudiced").[35]

### B.  Ms. Rendon Did Not "Switch Sides."

Throughout their brief, Plaintiffs suggest that Ms. Rendon somehow "switched sides"[36]

---

[33] In *Smith*, an attorney violated then DR 7-104 by conducting ex parte interviews of Cleveland Clinic employees knowing she planned to sue.  2003-Ohio-286, ¶ 12.  Despite the flagrant rule violation, the Court of Appeals reversed disqualification because the Clinic failed to prove prejudice. "[O]btaining information, per se, does not result in prejudice. Rather, the key inquiry is whether the information will likely prevent the fair administration of justice . . . We emphasize this point: absent prejudice, a violation of DR 7-104 does not necessitate the extraordinary remedy of disqualification." *.Id.* ¶¶ 13, 17.

[34] Notably, neither declaration plaintiffs rely upon asserts that the "prosecutions" referenced have anything to do with the parties or to issues in this litigation.  Moreover, Dr. Gilson testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Hartman Decl.* ¶ 16-24, Ex. 3

*See also In re Payment Card*, 2006 WL 6846702 at*24 ("[T]here is virtually nothing that can possibly put MasterCard at a disadvantage given the information available to every other attorney in this case.").

[36] Plaintiffs insist that the recusals of Ms. Rendon's predecessor, Steven Dettelbach and successor, Justin Herdman, prove that her appearance in this case is somehow improper.  They do not.  It is a matter of public record that Mr. Dettelbach was a candidate for Attorney General of Ohio.  Because the State of Ohio separately sued a number of the manufacturer defendants, including Endo Defendants, Mr. Dettelbach publicly stated that he would recuse himself from all of these matters to avoid a potential *future* conflict if he were elected.  Mr. Herdman's former law firm, Jones Day, is counsel for Walmart in this litigation. As a result, his recusal from the defendants' (including Walmart's) *Touhy* request seeking testimony from various federal agents is standard practice under DOJ guidelines because a decision on that request would directly benefit or harm his former client.

when she began representing the Endo Defendants. But the authority cited by the Plaintiffs defines "switching sides" as "improperly taking legal action against a former client." *Brown v. Dist. of Columbia Bd. of Zoning Adjustment*, 486 A.2d 37, 42 (D.C. 1984). Ms. Rendon never represented the Plaintiffs and, in fact, was adverse to the City of Cleveland with respect to the Consent Decree. Rendon Decl. ¶¶ 5–7. Moreover, Plaintiffs' argument assumes that all government entities are on one side, and anyone they happen to oppose is on the other. That's not how conflicts analysis works. If plaintiffs could have made a Rule 1.9 (Duties to Former Clients) claim in their motion to disqualify, surely they would have done so. They did not and cannot because Ms. Rendon has never represented any of them.

### C. Plaintiffs' Delay Constitutes Waiver.

Plaintiffs have known about Ms. Rendon's involvement in these cases and her prior public service, including activities related to opioids and the Task Force, for over a year. Yet Plaintiffs waited until the last few weeks of discovery, at a time when there are literally dozens of depositions happening every week, to bring their motion to disqualify. In the interim, they harassed Endo with ever-changing theories of why Ms. Rendon should be disqualified and/or deposed—revealing the tactical motives underlying their conduct.[37] Plaintiffs long ago waived any possible objection they might have to Ms. Rendon's participation in these cases, and their gamesmanship lays bare their improper motives.

To determine whether a party has waived any objection to opposing counsel, courts in the Sixth Circuit consider: "(1) the length of the delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred, and (5) whether disqualification would result in prejudice to

---

[37] See Declaration of Carole Rendon and accompanying exhibits which detail Plaintiffs' delay and unsupportable and evolving disqualification theories.

the non-moving party." *In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337–38 (6th Cir. 1999)

(quoting *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1115 (D.N.J. 1993)). Courts

also consider "whether the motion was delayed for tactical reasons." *Id.* All of these factors

support a waiver finding here.

First, the Plaintiffs waited nearly a year to raise this alleged conflict.[38] Courts routinely

find waiver in light of shorter delays. *See In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*,

No. 2:03-md-1565, 2010 WL 1257598, at *10 (S.D. Ohio Mar. 29, 2010) (waiver due to five-

month delay); *Conley v. Chaffinch*, 431 F.Supp.2d 494, 499 (D. Del. 2006) (nine months);

*Phoenix Capital Grp., LLC v. Western Express, Inc.*, No: 3:16-0299, 2016 WL 10805745, at *1

(M.D. Tenn. Dec. 13, 2016) (three months).

Second, Ms. Rendon's public service is a matter of public record that Plaintiffs claim to

have known about before ever filing their cases.[39] Counsel for the City argues that "[t]he full

extent of Ms. Rendon's involvement in the case only became known . . . in late November

[2018]," but that is not credible in light of her entry of appearance for Endo Defendants in the

summer of 2017 and her appointment by the Court as the manufacturers' liaison counsel a year

ago without objection. Pl. Br. at 22; Rendon Decl. ¶ 12. Furthermore, the very emails attached

to their motion were produced by the Plaintiffs in July, August and October of last year.[40]

Plaintiffs cannot avoid waiver by failing to perform even basic due diligence. *Valley-Vulcan*,

237 B.R. at 338 (upholding waiver because counsel "should have been aware" of the alleged

conflict of interest long before the motion was filed); *Reeves v. Town of Cottageville*, No. 2:12-

---

[38] Ms. Rendon has been representing the Endo Defendants since June of 2017, and the Court appointed her liaison counsel for the Manufacturer Defendants in December of 2017. *Rendon Decl.*, ¶ 12; Dkt. #24; Non-Document Order, Dec. 29, 2017.
[39] Plaintiffs also could have discovered Ms. Rendon's public service by Googling her name and clicking on the first Result. *Hartman Decl.* ¶ 15.
[40] As early as August 2017, Plaintiffs claimed to have identified 1500 email communications in their possession involving Ms. Rendon in some fashion. *Rendon Decl.*, 14.

cv-02765, 2014 WL 4231235, at *3 (D.S.C. Aug. 26, 2014); *Ike and Sam's Grp., LLC v. Brach*, 138 A.D.3d 690, 692 (N.Y. App. Div. 2016).

Plaintiffs point out that ten months remain before trial, but that is not a factor in the *Valley-Vulcan* test.  237 B.R. at 337–38.  Courts are more likely to find improper motive for motions made on the eve of trial, but proximity to trial has no bearing on whether the City unreasonably delayed in filing its motion.  *Id.; Phoenix Capital*, 2016 WL 10805745, at *1 ("Although it is true that this case is not at the eve of trial, nevertheless I find no substantial reason why [movant] did not raise this issue at a much earlier point in the proceedings.").

Third, the Plaintiffs had counsel during the delay, and fourth, the Plaintiffs offer no justification for their delay.  *Valley-Vulcan*, 237 B.R. at 338.

Fifth, disqualification would substantially prejudice the Endo Defendants.  In *Primerica*, the court refused to disqualify a firm that had "engaged in substantial pre-trial preparation," and had "singular familiarity with the issues."  822 F. Supp. at 1117.  Specifically, the firm had "(1) reviewed and produced thousands of documents, (2) taken twenty depositions of Plaintiffs' fact witnesses and preliminary depositions of Plaintiffs' two expert witnesses, (3) served and responded to two sets of interrogatories and five separate requests for document production, (4) sought and, in many cases, received the production of documents from deponents, and (5) served expert interrogatories on Plaintiffs."  *Id.*  In this case, BakerHostetler has conducted substantially more discovery than the firm in *Primerica*.  BakerHostetler and Ms. Rendon have been directly and substantially involved in legal analysis, motions practice, factual development (including serving and responding to multiple sets of interrogatories, reviewing hundreds of thousands of documents, and participating in dozens of depositions), settlement efforts, and trial preparation. As a result, disqualification would be correspondingly more prejudicial.

Moreover, "it is doubtful that [the client] could find capable substitute counsel without substantial delay." *Id.* at 1118.  *See also Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 719–20 (7th Cir. 1982).  Virtually every major law firm in Cleveland is either already participating in this case or has been conflicted out of it.

### D.      Plaintiffs Brought Their Motion In Bad Faith.

The circumstances also suggest that the Plaintiffs brought this motion in bad faith. Plaintiffs knew about the alleged conflict for over a year but delayed bringing their motion until just before the discovery deadline.  *See Ike & Sam's Grp.*, 138 A.D.3d at 692 (finding improper motive where party waited to move despite knowledge of alleged conflict).  And Plaintiffs' basis for seeking Ms. Rendon's disqualification has been shifting for months.  Rendon Decl. ¶¶ 13–24, Ex. 1–10; *see Primerica*, 822 F. Supp. at 1119 (inconsistent basis for disqualification suggests motion is made for tactical purposes).  Plaintiffs originally argued that Ms. Rendon violated Rule 3.7 (lawyer as witness) but abandoned that theory when she pointed out that Rule 3.7 would only disqualify her from trial, if at all.  Rendon Decl. Ex. 1–3.  They then raised and abandoned Rule 1.9 (duties to former clients) and an outrageous claim that Ms. Rendon committed a crime in violation of 18 U.S.C. Section 207, before shifting theories again to allege a violation of Rule 1.11.  Rendon Decl. Ex. 6.

The City of Cleveland's *Touhy* letter, seeking authorization from the Department of Justice to take Ms. Rendon's deposition, confirms that Plaintiffs' motion is pure gamesmanship. Rendon Decl. Ex. 4.  At the time of the letter, the City of Cleveland was still pursuing its Rule 3.7 theory, claiming Ms. Rendon had "substantial, first-hand knowledge that directly relates to critical issues" unavailable from "any other source."  *Id.* at 1.  Yet, after Ms. Rendon disputed that claim, Mr. Pifko immediately offered to withdraw the subpoena if Ms. Rendon would cease involvement in the case.  Rendon Decl. Ex. 9.

The Plaintiffs' shifting theories and tactical maneuverings demonstrate that this motion is not a principled objection to an ethical violation, but an opportunistic ploy.  In fact, because Endo has spent significant resources fighting this motion in the midst of the final and busiest weeks of discovery—when literally dozens of depositions are occurring each week, additional documents are being produced and must be reviewed, and the parties are addressing numerous discovery disputes—the Plaintiffs already have accomplished their objective even if they lose. The Court should not reward this gamesmanship.

**V.  There Is No Legitimate Basis To Depose Ms. Rendon And The Court Should Deny The City's Request To Do So.**

Plaintiffs also ask the Court to order Ms. Rendon to sit for a deposition—but only if "the Court determines that the record presented by this motion is currently insufficient to disqualify Ms. Rendon."  Pl. Br. at 3, 23.  This "alternative" request is improper for several reasons.

As a threshold matter, the Court lacks jurisdiction to consider the Plaintiffs' *de facto* motion to compel Ms. Rendon's deposition because, as the Plaintiffs acknowledge, Mr. Pifko's *Touhy* request remains pending with the Department of Justice.  *Ferreira v. United States*, 350 F. Supp. 2d 550, 558 (S.D.N.Y. 2004) ("Ferreira has not received such final agency action [under the DOJ *Touhy* regulations], and therefore this Court lacks jurisdiction to address the merits of Ferreira's application under this procedure."); *Meisel v. F.B.I.*, 204 F. Supp. 2d 684, 690 (S.D.N.Y. 2002) (same); *see also Fann v. Floied*, No. 4:03-CV-042, 2006 WL 849847, at *4 (E.D. Tenn. Mar. 28, 2006) ("Floied's motion to compel is procedurally defective in that Floied failed to seek appropriate APA review of the Department of Justice's decision to limit former AUSA Rich's testimony."); *In re Scully*, No. CIV.A.06-0077(GK), 2006 WL 1523231, at *1 (D.D.C. Apr. 11, 2006) (same).

The Court's lack of jurisdiction is dispositive.  But even if the Court had jurisdiction, the Plaintiffs' request to depose Ms. Rendon would be improper because the Plaintiffs have not made the showing required to obtain this extraordinary discovery.  In the Sixth Circuit, "a party can depose opposing counsel only where it has 'shown that (1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'"  *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. Appx. 558, 573 (6th Cir. 2015) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir.2002)).  The Plaintiffs have not come close to meeting this heavy burden.

To the contrary, Plaintiffs have repeatedly acknowledged that Ms. Rendon's deposition is not "crucial to the preparation of the case."  Mr. Pifko offered to withdraw the deposition subpoena if Ms. Rendon would withdraw from the case—a clear indication that the subpoena was intended to harass, and not a good faith effort to obtain discovery unobtainable from any other source.  Plaintiffs now freely admit that they want to depose Ms. Rendon only if the Court does not grant their motion to disqualify, and even then, only in the hopes a deposition may "disclose additional information relevant to this motion."  Pl. Br. at 23.[41]  Plaintiffs cannot seriously contend that their conditional request for a deposition is aimed at discovering information crucial to any claim or defense.  *Nationwide Mut. Ins. Co.*, 278 F.3d at 629 (deposition of opposing counsel not proper where proponent "has not explained why the information is crucial to the preparation of its case."); *see also Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 428 (E.D.N.Y. 2007) ("The alleged 'need' to depose Stein [opposing counsel] appears to be nothing more than another attempt by defendants to bootstrap Stein as a fact witness in the hopes of disqualifying him from this litigation entirely.").

---

[41] The Plaintiffs' candor in the motion about their motivation for seeking Ms. Rendon's deposition stands in contrast to Mr. Pifko's *Touhy* request, where he represented to the DOJ that the Plaintiffs need a deposition because, according to Mr. Pifko, "Ms. Rendon has substantial, first-hand knowledge that directly relates to critical issues in the [Opiate MDL] litigation, information that cannot be gained from any other source."  *Rendon Decl. Ex.* 4.

Nor do Plaintiffs seek any information uniquely within Ms. Rendon's possession.  If Plaintiffs seek information about meetings, activities, or conversations in which Ms. Rendon took part, they can depose the other participants—or, in many instances, simply interview their own employees.  *See, e.g., Duggan v. Village of New Albany*, No. 2:08-cv-814, 2009 WL 3126555, at *3 (S.D. Ohio 2009) ("If any of the conversations in meetings which he attended were not privileged, the other attendees can also be deposed about those conversations. In short, the Duggans have not identified one single piece of information that only Mr. Banchefsky possesses."); *Gazvoda v. Secy. of Homeland Sec.*, No. 15-cv-14099, 2018 WL 1281756, *7 (E.D. Mich. Mar. 13, 2018) (same); *Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.*, No. 2:05-cv-0889, 2007 WL 543929, at *5 (S.D. Ohio 2007) (same); *see also Cooper v. Omni Ins. Co.*, No. 4:14-cv-706-RBH, 2015 WL 1943802, at *7 (D.S.C. 2015) ( "The mere fact that Defendant desires to get Attorney Mullis's 'version of events' is not enough to meet Defendant's burden.").  The Plaintiffs' request to depose Ms. Rendon should be denied.

## VI.    Disqualification Would Prejudice Endo.

More than a year into these cases, after motions to dismiss, extensive document discovery, hundreds of depositions, dozens of court hearings and status conferences, numerous discovery conferences, and substantial settlement efforts, Plaintiffs now seek to disqualify Ms. Rendon and her entire law firm.  With expert discovery, dispositive motions and potentially a trial on the near horizon, the prejudice to Endo of losing one of its lead lawyers and her entire law firm is impossible to quantify.  With every major law firm in Cleveland already involved in these cases or otherwise conflicted out, it is not clear how Endo could even seek to replace Ms. Rendon and BakerHostetler.  The potential prejudice to Endo is substantial, could necessitate a substantial delay in the court's current schedule, and would result in irreparable injury.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' unfounded motion should be denied.

DATED: January 23, 2019

/s/ John D. Parker
John D. Parker (0025770)
Carole S. Rendon (0070345)
Tera N. Coleman (0090544)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
(216) 621-0200
jparker@bakerlaw.com
crendon@bakerlaw.com
tcoleman@bakerlaw.com

Jonathan L. Stern
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC  20001-3743
(202) 942-5000
Jonathan.Stern@arnoldporter.com

Sean Morris
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
Sean.Morris@arnoldporter.com

Attorneys for the Endo Defendants

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 23, 2019, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system, and will be served via the Court's CM/ECF filing system on all attorneys of record.

DATED: January 23, 2019          */s/ John D. Parker*
                                 John D. Parker