UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*ALL TRACK ONE CASES* | MDL No. 2804<br><br>Case No. 1:17-md- 2804<br><br>Hon. Dan Aaron Polster |

I, Carole Schwartz Rendon, declare as follows:

1. I have been a partner at BakerHostetler, based in Cleveland, Ohio, since May 1, 2017.

2. From November 16, 2009 – April 30, 2010, I served as the Executive Assistant U.S. Attorney for the U.S. Attorney's Office for the Northern District of Ohio.

3. From May 1, 2010 – February 5, 2016, I served as the First Assistant U.S. Attorney for the U.S. Attorney's Office for the Northern District of Ohio.

4. From February 6, 2016 – March 10, 2017, I served as the United States Attorney for the Northern District of Ohio and was confirmed unanimously by the United States Senate on July 12, 2016.

5. I have never worked for or represented the City of Cleveland, Cuyahoga County, the City of Akron, or Summit County (the "Plaintiffs").

6. I have never represented Dr. Thomas Gilson.

7. In connection with the Consent Decree that was entered by the United States District Court in *United States v. City of Cleveland*, 1:15-CV-01046, I represented the United States government, which was adverse to the City of Cleveland.

8. I do not know any confidential government information about any of the Plaintiffs related to this litigation or to opioids in general.

9. I have never been a member of the Summit County Opiate Task Force or the Cuyahoga County Opiate Task Force.

10. While employed by the U.S. Attorney's Office, I collaborated with federal, state and local law enforcement agencies, community groups, faith-based organizations, judges, elected officials, and private citizens on a myriad of important initiatives and as part of various task forces including: child exploitation, cyber security, business ethics, human trafficking, the opioid abuse crisis, and youth violence.

11. Each of the initiatives and task forces described in Paragraph 10 included private citizens. Information that was shared in support of, or as part of these initiatives and task forces was also shared with these private citizens.

12. I have represented the Endo Defendants since June of 2017.

13. Plaintiffs first raised the issue of potential disqualification in an August 3, 2018 letter to me, written only on behalf of Cuyahoga County. In that letter, Mr. Shkolnik stated that "during our document collection efforts, we have repeatedly come across many instances where you are referenced in emails" and claimed that I could "be called upon as a fact witness in this litigation." A true and accurate copy of that letter from Mr. Shkolnik is attached as **Exhibit 1.**

14. On August 12, 2018, following up on that initial communication, Mr. Shkonik and Mr. Badala, acting again only on behalf of Cuyahoga County, wrote to apprise me that, as of August 12, 2018, they had identified "as many as 1,500 emails" that included my name in some fashion. A true and accurate copy of that letter from Mr. Shkolnik and Mr. Badala is attached as **Exhibit 2.**

15. The next day, I responded to both letters and explained that I am not a "necessary witness" and, even if I were, Rule 3.7 would not disqualify me before trial in any event. A true and accurate copy of my August 13, 2018 letter is attached as **Exhibit 3.**

16. On December 3, 2018, Mr. Pifko, acting only on behalf of the City of Cleveland, sent a *Touhy* request to the U.S. Attorney's Office for the Northern District of Ohio seeking my testimony. The *Touhy* request made no mention of any purported violation of the Ohio Rules of Professional Conduct. Instead, Mr. Pifko claimed that I have "substantial, first-hand knowledge that directly relates to critical issues in the litigation, information that cannot be obtained from any other source." A true and accurate copy of Mr. Pifko's first *Touhy* request letter is attached as **Exhibit 4.**

17. Two days later, at the deposition of Cleveland Police Chief Calvin Williams, Mr. Pifko served me with a subpoena for my deposition. Mr. Pifko then objected to my participation in the Williams deposition. I asked Mr. Pifko to identify the "rule, statute, or other legal authority" that was the basis for his objection. Williams Dep. at 292. Mr. Pifko was unable to do so. Id. at 292-94. Relevant excerpts of Mr. Williams's deposition are attached hereto as **Exhibit 5.**

18. Mr. Pifko sent an updated *Touhy* request to the Department of Justice on December 14, 2018. A true and accurate copy of that correspondence is attached hereto as **Exhibit 6.** There, Mr. Pifko claimed that I am "the only individual who has knowledge of the topics identified" and that my testimony is necessary to determine whether I am "violating ethical rules." In that letter, Mr. Pifko cited Rules 1.9, 3.7 and 1.11(c). He also claimed that I may have violated 18 U.S.C. Section 207 – which would be a crime. This letter – nearly a year after my appointment as liaison counsel, and a month before the discovery deadline – was the first time any of the Plaintiffs mentioned Rule 1.9, Rule 1.11(c) or 18 U.S.C. Section 207.

19. In an email on December 14, 2018, Mr. Pifko sent copies of both *Touhy* letters to Special Master Cohen, Plaintiffs' counsel, and every defense counsel involved in the Track One cases. In that email he asked for a gag order prohibiting **all** defendants from communicating with the Department of Justice in connection with his *Touhy* request to prevent the defendants from "attempt[ing] to influence the decision-making process through [] any connections they may have with the Department of Justice." In support, Mr. Pikfo specifically noted that former Attorney General Eric Holder works for the law firm that represents McKesson in this litigation. A true and accurate copy of that email is attached hereto as **Exhibit 7.** In that email, Mr. Pifko also demanded that I and BakerHostetler "immediately cease from any further involvement in this case."

20. I responded to Mr. Pifko's email and explained that Rule 1.9 (duties to former clients) could not apply because I have never represented the City of Cleveland; that Rule 3.7 (lawyers as witness) did not provide a basis to disqualify me at this stage, if ever; that the City of Cleveland had identified no "confidential government information" that could disqualify me under Rule 1.11(c); and that the assertion that I had potentially committed a crime was outrageous because not a single element of that offense could be met. A true and accurate copy of my December 28, 2018 response to Mr. Pifko is attached hereto as **Exhibit 8.**

21. Despite telling the Department of Justice that I had "unique knowledge" about the facts of this case that could not be obtained from any other source, within a few hours of receiving my response, Mr. Pifko said he would withdraw the subpoena seeking my testimony if I withdrew from this litigation. A true and accurate copy of Mr. Pifko's December 28, 2018 email is attached hereto as **Exhibit 9.**

22. The following day, I rejected Mr. Pifko's "offer." A true and accurate copy of my December 29, 2018 email is attached hereto as **Exhibit 10.**

23. Prior to joining the City of Cleveland's Motion to Disqualify, neither the City of Akron nor Summit County ever sought my disqualification in this matter.

24. Plaintiffs' Motion to Disqualify is the first time Plaintiffs have accused me of violating Rule 1.11(a).

25. I did not participate in any of these matters (i.e., the Plaintiffs' claims against the manufacturers and distributors of prescription opioids) while employed by the U.S. Attorney's Office.

26. Plaintiffs' cases were not even filed during my tenure in the U.S. Attorney's Office.

27. I have not violated any of the Ohio Rules of Professional Conduct.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 1/23/19

_____
Carole S. Rendon