# EXHIBIT 6




800.887.6989
direct 818.839.2325
fax 818.986.9698
email mpifko@baronbudd.com

Encino Plaza
15910 Ventura Blvd.
Suite 1600
Encino, CA 91436

December 14, 2018

**VIA EMAIL**

Ms. Lisa Olson
The United States Department of Justice
Washington, D.C.
lisa.olson@usdoj.gov

Re: *In re National Prescription Opiate Litigation,* Case No. 1:17-MD-2804
Deposition of Carole S. Rendon

Dear Ms. Olson:

I write to provide you with information regarding the request for the deposition testimony of Ms. Carole S. Rendon made by Plaintiff the City of Cleveland ("Plaintiff" or "Cleveland") in connection with the above-captioned case, which is pending in the Northern District of Ohio (the "Opiate MDL").

By way of background, Ms. Rendon was an employee of the United States Attorney's Office for the Northern District of Ohio from 2009 until 2017. As a result of the time she spent in the U.S. Attorney's Office, Ms. Rendon has substantial, first-hand knowledge that directly relates to critical issues in the Opiate MDL litigation, and this information that cannot be gained from any other source.

Specifically, under 28 C.F.R. 16.22(c), Plaintiff seeks testimony on the following topics:

1. Ms. Rendon's personal knowledge about the opioid epidemic in Northern District of Ohio, particularly including the geographic area of the City of Cleveland, Cuyahoga County, and Summit County.[1]

2. Ms. Rendon's personal knowledge about the U.S. Attorney's Heroin and Opioid Task Force, including information about the formation of the task force, its purpose, and information discussed during her tenure as Chair of the Task Force. This task force included meetings with Cleveland and Cuyahoga County officials, among others. In 2016, officials from Cleveland and Cuyahoga County were awarded the Attorney General's Award for their work on this task force.

---

[1] The City of Cleveland, Cuyahoga County, and Summit County are bellwether Plaintiffs slated for the first trials in the Opiate MDL. These trials are scheduled to occur in September 2019.





The DOJ's press release concerning the Attorney General's Award included the following statements from Ms. Rendon: "It is easy to become discouraged about the wave of death and pain that opioids and heroin bring to our community . . . But I know the incredible efforts of all the members of this team make a difference on a daily basis. This approach has become a national model and I know, through hard work, dedication and persistence, we will eventually overcome this threat."[2]

3. Ms. Rendon's personal knowledge about any other programs, working groups, and task forces related to the opioid crisis of which Ms. Rendon was a member. This includes the Ohio High Intensity Drug Trafficking Area (HIDTA) Program, where she served on HIDTA's Executive Committee and had authority to make decisions about money spent in the Northern District of Ohio to assist Cleveland and Cuyahoga County's responses to the opioid crisis. Other groups include Stand Together Against Neighborhood Crime Everyday (STANCE), Northern Ohio Law Enforcement Task Force, Summit County Opiate Task Force, and the National Heroin Initiative for the Summit County Region.

4. Ms. Rendon's personal knowledge about her work with the City of Cleveland's government officials to combat the opioid crisis, including her interactions with the City of Cleveland's Division of Police, Department of Public Health, and City Council. This includes information about any federal assistance, monetary or otherwise, given by the Department of Justice or other federal law enforcement agencies to help the City of Cleveland combat the opioid crisis.

5. Ms. Rendon's personal knowledge about her work with the Cuyahoga County's government officials to combat the opioid crisis, including her close interactions with the Cuyahoga County Board of Health, Cuyahoga Medical Examiner, and Cuyahoga County Sheriff's Department. This includes information about any federal assistance, monetary or otherwise, given by the Department of Justice or other federal law enforcement agencies to help the Cuyahoga County combat the opioid crisis.

6. Ms. Rendon's personal knowledge about her work with Summit County's government officials to combat the opioid crisis, including her interactions with the Summit County Medical Examiner and Summit County Sheriff's Department. This includes information about any federal assistance, monetary or otherwise, given by the Department of Justice or other federal law enforcement agencies to help Summit County combat the opioid crisis.

7. Ms. Rendon's personal knowledge gained from her time at the United States Attorney's Office about the connection between prescription opioid abuse and illegal drug usage.

---

[2] *See* https://www.justice.gov/usao-ndoh/pr/us-attorneys-heroin-and-opioid-task-force-recognized-attorney-generals-award.





8. Ms. Rendon's personal knowledge gained from her time at the United States Attorney's Office about the effect of opioid abuse and illegal opioid drug usage on the City of Cleveland, Summit County, and Cuyahoga County.

9. Ms. Rendon's personal knowledge about any interactions with any of the Defendants in the current Opiate MDL during her time in the United States Attorney's Office.

10. The basis for Ms. Rendon's public statements regarding the opioid crisis, including her testimony before the Senate Homeland Security Committee in which she testified about "working closely with our Federal, our State, our local law enforcement officers to fight this growing epidemic" and being in "constant communication . . . on a regular basis by e-mail and phone" with representatives from Cleveland and Cuyahoga County.

11. Any speaking engagements or involvement in conferences, working groups, presentations, or panel discussions regarding the opioid crisis Ms. Rendon participated in while employed at the United States Attorney's Office.

12. Any articles, opinion pieces, or other publications authored by Ms. Rendon regarding the opioid crisis, including her articles entitled "Rules for Establishing Causation in Opiate/Opioid Overdose Prosecutions — The Burrage Decision" published March 1, 2017, "An opioid crisis where 'death specification' prosecutions are only one answer" published July 13, 2016 in the *Plain Dealer* newspaper and on Cleveland.com,

13. Ms. Rendon's personal knowledge of any and all efforts of Northern District of Ohio U.S. Attorney's Office to combat diversion, respond to the opioid epidemic in the City Of Cleveland, Cuyahoga County, and Summit County.

In sum, as the former acting chief federal law enforcement officer for the Northern District of Ohio, Ms. Rendon's personal knowledge uniquely qualifies her to testify about the issues the City of Cleveland and surrounding counties faced from opioid abuse and the opioid crisis's connection with crime in the area, including opioid abuse's connection with illicit drugs like heroin. In the document collections produced in the Opiate MDL by Cleveland, Cuyahoga County, and Summit County, Ms. Rendon's name appears frequently, indicating the depth of her direct involvement with the issues at stake. In the Cuyahoga County document collection, Ms. Rendon's name appears in 5,068 documents. In the Cleveland document collection, Ms. Rendon's name appears in 645 documents. In the Summit County document collection, Ms. Rendon's name appears in 227 documents.

Ms. Rendon is the only individual who has knowledge of the topics identified above because Plaintiff seeks the testimony about Ms. Rendon's personal knowledge on the subjects. What Ms. Rendon personally knows about the topics identified above is a critical issue in the litigation because, among other things, Ms. Rendon is currently acting as counsel for Defendants in this case, including serving in a prominent role as Defendants' Liaison Counsel. In doing so, Ms. Rendon has used, and continues to use, her personal knowledge gained during her time at the





United States Attorney's Office to assist her clients in defense of the case. For example, she has questioned witnesses in deposition about meetings which she herself attended while at the United States Attorney's Office. Ms. Rendon is also known to have had one-on-one meetings with members of the Cuyahoga County Medical Examiner's Office. Ms. Rendon also was casting votes as part of the board of the HIDTA regarding expenditures of funds for use in the local communities. Additionally, the Medical Examiner for Plaintiff Cuyahoga County co-authored a manuscript with Ms. Rendon titled, "Rules for Establishing Causation in Opiate/Opioid Overdose Prosecutions — The Burrage Decision."[3] In discussing this manuscript, the Cuyahoga County Medical Examiner referred to Ms. Rendon as "my lawyers."[4]

This request presents an unusual, unique situation because in the interest of fundamental fairness, Plaintiffs should have equal access to the information Ms. Rendon gained during her time as a public servant. Those accused of causing one of the worst public health crises in United States' history should not be allowed to be the sole beneficiaries of Ms. Rendon's public service. Plaintiffs should be afforded the same access to Ms. Rendon's knowledge about issues directly related to this case while working for the United States Attorney's Office. Therefore, information from other sources besides Ms. Rendon about the topics above is not sufficient; Plaintiffs need to know what Ms. Rendon herself knows and has shared with her current clients.

In addition to the importance of Ms. Rendon's testimony to this litigation, her testimony is also be necessary to determine if Ms. Rendon is violating ethical rules given her involvement with many opioid related matters in the U.S. Attorney's Office and her current role as defense liaison counsel in the Opiate MDL. Rule 1.11(c) of the Ohio Rules of Professional Conduct Ohio states as follows:

> Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person.

*See also* Ohio Rules of Professional Conduct 1.9, 3.7. Ms. Rendon is on private communications from Cleveland disclosing confidential information about the City's struggles and lack of resources to combat the opioid epidemic. Furthermore, the Department of Justice Regulations place prohibitions on former employees working on matters in which they were involved during their time in government service. *See* 18 USC § 207. Notably, Ms. Rendon's predecessor as U.S.

---

[3] Gilson, Rendon, Pinjuh, *Rules for Establishing Causation in Opiate/Opioid Overdose Prosecutions — The Burrage Decision*, https://journals.sagepub.com/doi/full/10.23907/2017.010, March 1, 2017.

[4] *See* CUYAH_001646202.





Attorney for the N.D. Ohio, Steve Dettlebach, has recused himself from this case and works at the same firm as Ms. Rendon (BakerHostetler). Ms. Rendon's successor as U.S. Attorney for the N.D. Ohio has also recused himself from any involvement in this case because of his prior work at Jones Day, which represents a Defendant in the Opioid MDL.

All of the factors codified at 28 C.F.R. 16.26 weigh in favor of allowing the deposition testimony of Ms. Rendon. Importantly, the 28 C.F.R. 16.26(c) mandates consideration of "(1) The seriousness of the violation or crime involved, (2) The past history or criminal record of the violator or accused, (3) The importance of the relief sought, (4) The importance of the legal issues presented." Here, the Opiate MDL is one of the largest and most consequential legal matters currently in this country. As the Department of Justice has stated in its Statement of Interest in this case, the United States has "a significant interest in addressing the opioid epidemic." *See* Opiate MDL, Dkt. 161. The defendants in the action have already been subject to numerous criminal and civil penalties and the relief sought has direct bearing on the enormous public health crisis of opioid abuse. The legal, public policy, and public health stakes could not be higher. Ms. Rendon's testimony about her involvement in the issues is critical given her work in the public sector.

Since Plaintiff's original request for Ms. Rendon's testimony was sent on December 3, 2018, The Department of Justice has authorized several Drug Enforcement Agency (DEA) agents to provide factual testimony related to their former positions at DEA. *See* Opiate MDL Dkt. 1176-1. The Department of Justice should likewise recognize the important and unique nature of the testimony sought from Ms. Rendon and authorize her testimony as well.

The requested topics of testimony sought are consistent with ordinary subpoena practice and do not seek disclosure of information prohibited by statute, rule, or regulation; information that is classified or that would reveal the source of an informant or confidential source; information that that would interfere with ongoing enforcement proceedings; or, information that would improperly reveal trade secrets without the owner's consent. *See* 28. C.FR. 16.26(b). In addition, to avoid any concern that disclosure "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired," the Department of Justice has the option to provide information as highly confidential pursuant to the protective order governing this matter, a copy of which can be provided at your request.

Furthermore, Plaintiff only seeks testimony and does not seek any documents from the United States Attorney's Office. Additionally, Plaintiff does not seek any privileged testimony.





The period for fact discovery for this case closes on January 25, 2019 and Ms. Rendon's deposition was noticed for January 10, 2019. Thus, the Department of Justice's prompt attention to this matter and response by the end of December 2018 is appreciated.

Please do not hesitate to ask me any questions you may have.

Best regards,

*/s/ Mark Pifko*

Mark Pifko

cc: Will Powers