# EXHIBIT 8

# BakerHostetler

Baker&Hostetler LLP

Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214

T 216.621.0200
F 216.696.0740
www.bakerlaw.com

Carole S. Rendon
direct dial: 216.861.7420
crendon@bakerlaw.com

December 28, 2018

Special Master David R. Cohen
David R. Cohen Co. LPA
24400 Chagrin Boulevard
Suite 300
Cleveland, Ohio 44122

Mark Pifko, Esq.
Baron & Budd
15910 Ventura Boulevard
Suite 1600
Encinitas, California 91436

Re:  *In re National Prescription Opiate Litig.*, Case No. 1:17-md-2804
     Response to letter and email from Mr. Pifko

Dear Special Master Cohen and Mr. Pifko:

I write to respond to Mr. Pifko's email of December 14, in which he (a) asks that I and BakerHostetler voluntarily "immediately cease [] any further involvement in this case," and (b) seeks an order barring all defendants from contacting the Department of Justice regarding Mr. Pifko's *Touhy* letter seeking my deposition. Attempting to justify these extraordinary requests, in his *Touhy* letter to Ms. Olson at the Department of Justice, which he attached to his email, Mr. Pifko accused me of potentially violating a criminal statute and three Rules of Professional Conduct by representing a client adverse to the City of Cleveland. These allegations are unfounded and outrageous. I and my firm have no intention of ceasing involvement in this case (and there is no motion or request by plaintiffs currently before the Court seeking such relief), and the order that plaintiffs do seek (i.e., barring contacts with the DOJ regarding the *Touhy* letter) is entirely unwarranted.

**I.      The allegations of misconduct are baseless and in no way support disqualification.**

Plaintiffs do not seek my disqualification, or the disqualification of BakerHostetler, but rather our voluntary agreement to cease participating in this litigation "until this issue can be resolved." We refuse to comply with this outrageous request because disqualification, whether via motion or an informal request for our voluntary withdrawal from this litigation, is wholly inappropriate

Special Master David R. Cohen
Mark Pifko, Esq.
December 28, 2018
Page 2

and would prejudice our client. Ohio courts, including federal courts applying Ohio law, view disqualification as a "drastic measure [that] courts should hesitate to impose except when absolutely necessary." *Akron v. Carter*, 942 N.E.2d 409, 416 (Ohio Ct. App. 2010). Disqualification is disfavored because it interferes with a client's right to choose counsel. Motions to disqualify are thus "viewed with extreme caution for they can be used as techniques of harassment." *Kitchen v. Aristech Chemical*, 769 F. Supp. 254, 357 (S.D. Ohio 1991). Both the timing and the content of Mr. Pifko's communications to the Special Master and the Department of Justice demonstrate that this is an effort to harass and distract counsel in the last weeks of critically important fact discovery.

To support a request for disqualification, the movant must show, among other things, a violation of the Ohio Rules of Professional Conduct. *Kitchen*, 769 F. Supp. at 256. None of plaintiffs' arguments reflect anything close to a violation of the Rules of Professional Conduct, and Mr. Pifko's insinuations to the contrary are baseless.

Rule 1.11(c), which Mr. Pifko quotes in his letter, would apply only if I had (1) actual knowledge, (2) of confidential government information, (3) about a "person," (4) that could be used to the material disadvantage of that person. Assuming the City of Cleveland qualifies as a "person" for these purposes (and it certainly is not clear that the "City of Cleveland" could be a "person" in this context), I have no confidential information about the City of Cleveland that is relevant to this case.

Mr. Pifko's sole argument to the contrary—that I am "on private communications from Cleveland disclosing confidential information about the city's struggles and lack of resources to combat the opioid epidemic"—is meritless. Mr. Pifko does not attach a single such "private communication." Moreover, any such communication from an employee of the City of Cleveland to me during my employment by the federal government is a public record under Ohio law, and not a confidential communication. R.C. 149.43. *See also State ex rel. Glasgow v. Jones*, 119 Ohio St. 3d 391, 2008-Ohio-4799, ¶ 21 (finding emails constitute public records). Nor does Mr. Pifko explain how my being "on" these unspecified communications could be "used to the material disadvantage of" his client.

Mr. Pifko's suggestion that I may have violated Rule 1.9: Duties to Former Clients, is even more absurd. As its title suggests, Rule 1.9 prohibits a lawyer "who has formerly represented a client in a matter" from representing another person in the same or a substantially related matter. I have never represented the City of Cleveland, Cuyahoga County[1], the City of Akron, or Summit County, let alone in this or a substantially related matter, and therefore could not possibly have violated Rule 1.9 by representing the Endo defendants in this matter.

---

[1] Mr. Pifko claims in his letter to Ms. Olson that Cuyahoga County Medical Examiner, Dr. Gilson, referred to the U.S. Attorney's Office as "his lawyers" in a discussion of a manuscript he wrote. Even if Dr. Gilson made that statement as Mr. Pifko claims, that does not make it true.

Special Master David R. Cohen
Mark Pifko, Esq.
December 28, 2018
Page 3

The third rule Mr. Pifko cites, Rule 3.7, simply does not apply to this stage of litigation. It provides that "a lawyer shall not act as an advocate *at a trial* in which the lawyer is likely to be *a necessary witness*" unless one of the enumerated exceptions apply. *Id.* (emphasis added). Any trial in this matter is nearly ten months away, so the issue is not ripe. Moreover, even if I were a necessary fact witness—and as explained below I am not—the Rule could only prohibit my personal service as counsel at trial. It would not prohibit my work on this case, nor the service of another BakerHostetler attorney as trial counsel.

Moreover, there is no basis on which to conclude that I am a necessary witness. "A party's mere declaration of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony." *Akron v. Carter*, 942 N.E.2d 409, 416 (Ohio Ct. App. 2010); *see also Brown v. Spectrum Networks, Inc.*, 904 N.E.2d 576, 581-582 (Ohio Ct. App. 2008) (trial court abused its discretion by disqualifying attorney without first establishing that the attorney's testimony is necessary). To satisfy the "necessary witness" requirement, the proposed testimony must be admissible and also "relevant, material to the determination of the issues being litigated and unobtainable elsewhere." *Brown*, 904 N.E.2d at 580. "Testimony may be relevant and even highly useful but still not strictly necessary." *Akron*, 942 N.E.2d at 416.

Mr. Pifko's assertion that I am "on" some communications with employees of the City of Cleveland in no way renders me a necessary witness. By definition, if I am "on" communications with employees of the City of Cleveland, I am not the sole source of information about those communications. His other assertions are similarly unfounded. In his *Touhy* letter, Mr. Pifko claims that I "have had one-on-one meetings with members of the Cuyahoga County Medical Examiner's Office." Even if such meetings were relevant at trial, members (plural) of the Medical Examiner's Office also attended, as Mr. Pifko himself acknowledged. And as Mr. Pifko knows from the documents that Cuyahoga County produced, several other employees of the U.S. Attorney's Office were also in attendance. As such, I am far from the sole source of information. Nor am I the sole source of information about HIDTA meetings and votes of the HIDTA Executive Committee. In addition, any HIDTA grants to the plaintiffs are a matter of public record, as is the manuscript Mr. Pifko cites on the legal requirements of the *Burrage* decision. Quite simply, Mr. Pifko points to no relevant, material facts which are or could be unobtainable from other witnesses, including his own client and the other plaintiffs.

Finally, Mr. Pifko appears to accuse me of a crime by citing 18 U.S.C. § 207. That statute makes it a crime for a former government employee, with the intent to influence, to knowingly make any communication to or appearance before the government in connection with a particular matter:

> (A) in which the United States or the District of Columbia is a party or has a direct and substantial interest,

Special Master David R. Cohen
Mark Pifko, Esq.
December 28, 2018
Page 4

> (B) in which the [former employee] participated personally and substantially as [an] employee, and
>
> (C) which involved a specific party or specific parties at the time of such participation.

This case does not meet any of these requirements, let alone all of them. The United States is not a party to this case and has no direct and substantial interest in it.[2] Moreover, this case did not exist when I worked in the Department of Justice, so I could not have participated "personally and substantially" in it, nor could it have "involved a specific party or parties" at that time.

Mr. Pifko also references Steven Dettelbach's recusal from this matter as if it is related to his prior service as U.S. Attorney for the Northern District of Ohio.[3] It is not. It is a matter of public record that Mr. Dettelbach was a candidate for Attorney General of Ohio. Because the State of Ohio has separately sued a number of the manufacturer defendants, including Endo, Mr. Dettelbach publicly stated that he would recuse himself from all of these matters to avoid a potential *future* conflict if he was elected.

In light of the foregoing, both I and BakerHostetler decline Mr. Pifko's demand to cease our participation in this case.

### II. The City of Cleveland has waived any objection to my involvement in this case.

I have served as liaison counsel for the manufacturing defendants since January 1, 2018.[4] At all times, my service in the United States Attorney's Office, including my participation in the U.S. Attorney's Heroin and Opioid Task Force, was a matter of public record and was known by the plaintiffs, whose representatives served on that same task force. In addition, in prior communications on this subject, I have explained to plaintiffs how none of their objections has any merit. They did nothing in response to those prior communications. It is only now—a month before the fact discovery deadline and ten months before trial—that plaintiffs bring this issue to the attention of the Court.

The City of Cleveland's objection comes too late. "Courts have disallowed disqualification on the basis of waiver or estoppel where the moving party has failed to move for disqualification in a timely manner." *In re Valley-Vulcan Mold Co.*, 5 Fed.Appx. 396, 401 (6th Cir. 2001). *See also Conley v. Chaffinch*, 431 F.Supp.2d 494, 499 (D. Del. 2006) (delay of nine months was too long). The waiver doctrine prevents litigants from using disqualification motions as "procedural

---

[2] On April 2, 2018, the Department of Justice filed a motion asking to participate in settlement discussions and to participate as a friend of the court by providing information that might facilitate effective non-monetary remedies as part of a potential settlement agreement. Dkt. No. 212. The DOJ's limited friend of the court status does not create a direct and substantial interest in this litigation.
[3] In particular, Mr. Pifko states: "Notably, Ms. Rendon's predecessor as U.S. Attorney for the N.D. Ohio, Steve Dettelbach, has recused himself from this case and works at the same firm as Ms. Rendon (BakerHostetler)."
[4] Dkt. No. 501. As plaintiffs know, I also served as counsel to the Endo defendants since well before that date.

Special Master David R. Cohen
Mark Pifko, Esq.
December 28, 2018
Page 5

weapons." Ohio Rules of Professional Conduct, Preamble, ¶ 20; *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) ("[C]ourts must guard against the tactical use of motions to disqualify counsel."). Mr. Pifko offers no justification for the delay in raising this issue. Raising this issue now is a blatant attempt to divert Endo's resources and hinder its ability to prepare a defense.

### III. The requested order related to Mr. Pifko's *Touhy* request is unfounded and should be denied.

Mr. Pifko seeks what amounts to a gag order, preventing all of the defendants from contacting the Department of Justice about his *Touhy* request for my testimony. As a matter of procedure, the Special Masters are not authorized to issue any such order. *See* Dkt. No. 69, Jan. 11, 2018 (defining the powers of the Special Masters).

In any event, there is no basis for any such extraordinary order. Mr. Pifko states that it would be "improper" for me or any of the defendants to "attempt to influence the decision-making process" at the Department of Justice. He cites no statute, rule, case, or other legal authority suggesting this is so, nor can he. I am aware of no legal authority holding that it is improper for a party to litigation or the recipient of a subpoena to communicate with the Department of Justice regarding a pending *Touhy* request. In the absence of any such authority, we are entitled to speak to the Department of Justice just like any other citizen.

Mr. Pifko's not-so-subtle implication—that I, or former Attorney General Eric Holder, or some other counsel for the defendants will exert *illegitimate* influence over the Department—is as outrageous as it is unfounded.

### IV. Briefing schedule.

Depositions of opposing counsel are not allowed except under extreme circumstances not present here. Mr. Pifko's blatant effort to take my deposition for the purpose of determining if he can find some basis to seek my disqualification is wholly improper.

There is no reason to set a briefing schedule upon the assumption that the deposition, if one ever occurred, will take place on January 10, the date for which it is noticed. Mr. Pifko failed to provide even the professional courtesy of checking with me regarding my availability before issuing the subpoena, and I have a conference with Judge Polster that day. Plaintiffs should immediately withdraw their patently improper deposition subpoena. Only if the plaintiffs refuse to do so should a briefing schedule be set for a motion to quash.

### V. Conclusion.

Without any legal or factual basis, Mr. Pifko proposes a fishing expedition with the hopes of uncovering some violation of the Rules of Professional Conduct that could lead to my disqualification. His suggestion that BakerHostetler and I should cease involvement in this case

Special Master David R. Cohen
Mark Pifko, Esq.
December 28, 2018
Page 6

until his baseless, manufactured "issue" is "resolved" is ridiculous and would prejudice my client. As set forth above, there is no issue to be resolved. You should deny the requests Mr. Pifko made in his December 14, 2018 correspondence.

 Sincerely,

*Carole Schwartz Rendon*

Carole S. Rendon