# EXHIBIT B

*Notify*

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                       SUPERIOR COURT
                                                                                   CIV. NO. 1884-01808- BLS2

**COMMONWEALTH OF MASSACHUSETTS,**
**Plaintiff**

**Vs.**

**PURDUE PHARMA INC., et al.**
**Defendants**

### MEMORANDUM OF DECISION AND ORDER
### ON EMERGENCY MOTION TO TERMINATE IMPOUNDMENT

This is a case brought by the Attorney General for the Commonwealth of Massachusetts against Purdue Pharma Inc. and a related company, Purdue Pharma L.P. (collectively, Purdue), as well as seventeen former or current Purdue officers and directors. The case arises from Purdue's promotion and sale of OxyContin and other opioids in Massachusetts. The Commonwealth alleges that Purdue is responsible for an opioid epidemic in this state – specifically, that it deceived Massachusetts doctors into prescribing and Massachusetts patients into using higher and more dangerous doses of opioids for longer periods of time, resulting in addiction and death. The Commonwealth alleges that the defendants profited handsomely from this conduct and seeks among other relief disgorgement of all payments received by defendants and restitution for all those who suffered any ascertainable loss as a result of the conduct.

The original Complaint was filed on June 12, 2018, and was not redacted in any way. On December 3, 2018, the Commonwealth together with Purdue and certain of the individual defendants filed a "joint motion" requesting that a forthcoming Amended Complaint be

impounded.[1] The Court declined to do so without a hearing and without any idea of what the Amended Complaint contained. Ultimately, the Commonwealth was permitted to file a redacted version of the Amended Complaint for the public file and an unredacted version for *in camera* review. Purdue together with certain other defendants filed Motions to Impound with supporting memoranda, and a hearing on those motions was scheduled for December 21, 2018. At that hearing, the Commonwealth joined with the defendants in asking this Court to allow the parties time to negotiate among themselves in order to narrow the areas of disagreement; the Court agreed to this request and continued the matter for further hearing on January 25, 2018. Although agreeing to impound the unredacted version of the Amended Complaint in the meantime, the Court was quite clear as to the standard that it intended to apply in deciding whether to extend the impoundment order and, cognizant of the strong public interest in the subject matter, expressly invited any non-party contesting impoundment to file an appearance as permitted by Rule 6 of the Uniform Rules of Impoundment Procedure.

That invitation was accepted: on January 18, 2019, an Emergency Motion to Terminate Impoundment was filed on behalf of various news organizations, including the New York Times, the Boston Globe, Reuters, the Wall Street Journal and WBUR (the Media Consortium). Joining in that motion was Learn to Cope, Inc., a nonprofit support network offering education and resources to family members in Massachusetts affected by the opioid crisis. Both the Media Consortium and Learn to Cope cited the strong public interest in the material. Although the Court had expressly requested that Purdue submit before the January 25 hearing a memorandum

---

[1] Certain other defendants did not join in the motion but did not oppose it either. As the Court understands it, these defendants did not formally join in the motion (nor did they join in Purdue's later filed motion to impound) because of a concern that they could be deemed to have waived their claim that this Court has no personal jurisdiction over them. As the Court informed counsel for those defendants at the hearing on January 25, 2019, this Court would not regard their participation in Purdue's Motion to Impound as grounds for finding a waiver.

2

further explaining its position as to why impoundment was appropriate, the response that came arrived on the afternoon of January 24, 2018 and (apart from repeating arguments submitted in an earlier memorandum) asked that the hearing be "adjourned." This Court declined to postpone the hearing. After hearing and after a thorough review of the redacted materials, this Court now concludes that the Emergency Motion must be **ALLOWED**, with one narrow exception explained below.

## DISCUSSION

Massachusetts has long recognized a common law right of access to judicial records. New England Internet Café, LLC v. Clerk of Superior Court of Criminal Business in Suffolk County, 462 Mass. 76 (2012) (affirming court decision to lift impoundment of affidavits supporting search warrants). The appropriateness of making court files accessible to the public is accentuated when the government is a party: "the public right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." FTC v. Standard Financial Management Corp. 830 F.2d 404, 410 (1st Cir 1987). This public right of access is also grounded in the First Amendment. "Closing a court record is analogous to closing a courtroom during a trial – both deny the public right of access to see what is happening in a judicial case and both restrictions are of constitutional dimension." Globe Newspaper Co, Inc. v. Clerk of Suffolk County Superior Court, 14 Mass.L.Rptr. 315, 2002 WL 202464 at *4 (February 4, 2002) (Gants, J.) (Globe Newspaper) (terminating impoundment orders for five civil cases alleging sexual abuse by clergy). Although this right of access is not absolute, a decision to impound remains the "exception to the rule," with the party seeking impoundment (or seeking to continue an existing impoundment order) bearing the burden of demonstrating "good cause" sufficient to overcoming the general presumption of openness. The

3

Republican Company v. Appeals Court, 442 Mass. 218, 223 (2004). Agreement of the parties that material be impounded is not enough. In the instant case, Purdue and other defendants opposing the termination of the impoundment order have not met their burden of showing good cause.

As to what constitutes "good cause," that is defined by Rule 7(b) of the Uniform Rules of Impoundment Procedure, the procedural mechanism by which the common law and First Amendment rights of access are enforced in Massachusetts courts. That rule requires that a court consider "all relevant factors, including but not limited to (i) the nature of the parties and the controversy, (ii) the type of information and the privacy interests involved, (iii) the extent of the community interest, (iv) constitutional rights, and (v) the reason(s) for the request." In Globe Newspaper, supra, Judge Gants discussed these criteria in determining whether to make public certain previously impounded cases involving allegations of sexual abuse by Catholic priests. The first factor (the nature of the parties and controversy) "focuses on whether the information is of legitimate concern to the public." 2002 WL 202464 at *6. The second factor (the type of information and privacy interests involved) "focuses on the extent to which the information is intensely personal and if revealed, likely to cause emotional or psychological distress or harm." Id. A third factor (the extent of the community interest) "focuses not only on whether the matter is of legitimate concern to the public but also on whether the information or comparable information has already been publicly revealed in some fashion." Id. Applying those factors, Judge Gants lifted the impoundment order even though it necessarily meant that revealing the names of the accused priests would have a "devastating impact on their reputations." 2002 WL 202464 at *8.

4

Here, the answer to the question of whether good cause exists based on these factors is even clearer. First, the nature of the controversy is of tremendous public concern. Opioid use in Massachusetts and elsewhere has indeed reached epidemic proportions, carrying with it real human and economic costs. The Commonwealth alleges that the defendants are responsible for that crisis, and the public has a right to know the basis for its allegations. Second, the redacted information has not been previously disclosed --perhaps explaining why defendants so strenuously object to its being revealed now. Finally, the disclosure of the information – while it may prove embarrassing for some of the defendants—is not intensely personal or private.[2] In essence, the information describes the inner workings of a company and discussions about company business among its directors, officers and employees. Any interest in keeping this information secret is hardly compelling and certainly not enough to overcome the presumption of public access.

Purdue has not even attempted to apply the factors set forth in Rule 7(b) in opposing the Emergency Motion. Rather, its argument has been – and continues to be—that the information should be impounded because it derives from documents that have been designated by Purdue as confidential for discovery purposes in federal litigation. See In re National Prescription Opiate Litigation, No. 17-MD-2804 (N.D.Ohio) (the MDL litigation). The Commonwealth acknowledges that it did indeed use documents obtained in the MDL litigation in amending its complaint, which includes specific document citations. It also agrees that it is bound by the discovery protocols in that litigation.[3] Pursuant to those protocols, the Commonwealth has

---

[2] A single paragraph in the unredacted Complaint (paragraph 370) does contain private medical information which the Commonwealth agrees should not be publicly disclosed. At the end of this Memorandum of Decision, this Court suggests a way of dealing with this.

[3] Whether the Commonwealth violated those protocols in using these documents to amend its complaint is not for this Court to decide. Nor is it relevant to the issue of impoundment. In an attempt to disentangle itself from the MDL litigation, this Court has ordered Purdue to produce as part of the discovery in this case the 581 documents the

5

challenged Purdue's confidentiality designations and briefing on those issues is ongoing before a federal discovery master.[4] Purdue urges this Court to delay any impoundment decision until the discovery master has ruled on that challenge. It acknowledges that a ruling may be weeks or even months away, however. Given the constitutional dimensions of the issue before me, such a delay is simply not acceptable. See Globe Newspaper Co., v. Pokaski, 868 F.2d 497, 507 (1st Cir. 1989) (even a one to two day delay in releasing information that should be public "impermissibly burdens the First Amendment"). More important, any ruling that the discovery master makes would not change this Court's analysis, much less its ultimate conclusion.

The reasons that Purdue has given for designating these documents as confidential --and for impounding the information they contain-- bring this point home. Attached as Exhibit 2 to the Commonwealth's Pre-Hearing Memorandum is a list of the redactions from the Amended Complaint that remained as of January 15, 2018. Also included in that list are the reasons that Purdue has given to back up its claim of confidentiality. Those reasons include "mischaracterization of documents," "misleading" and "irrelevant" – clearly not sufficient to keep this information out of the public file. Purdue repeats this as a basis in its memorandum in support of its Motion to Impound, stating that the inclusion of the information in the Amended Complaint is "an attempt to embarrass individuals and spark public outrage" against Purdue. But the case law is clear that this cannot support impoundment. George Prescott Pub. Co. v Register of Probate for Norfolk County, 395 Mass. 274, 279 (1985) ("potential embarrassment, or the fear of unjustified adverse publicity are not sufficient" to constitute good cause for impoundment);

---

Commonwealth used to amend the complaint. The non-parties do not seek access to these underlying documents, however.

[4] The memorandum that the Commonwealth submitted to the discovery master explaining why the information should not be classified as "confidential" is attached as Exhibit 1 to the Memorandum of Law that the Commonwealth submitted prior to the January 25 Hearing.

6

Joy v. North, 692 F.2d 880, 894 (2d Cir. 1982); see also Siedle v. Putnam Investments, Inc., 147 F.3d 7, 9-10 (1st Cir. 1998). Paragraphs 699 through 753 of the Amended Complaint have been designated confidential – and thus redacted from the Amended Complaint-- because they pertain to Russell Gasdia, a defendant in this case. But at the January 25 hearing, Gasdia's counsel acknowledged that there was no good faith basis for seeking impoundment of this information, even as Purdue itself seeks to preserve this Court's impoundment order.[5]

Purdue claims that many paragraphs should be designated as confidential because they reflect "Board of Directors Decision Making" – an argument that it also makes in its Motion to Impound. In support, however, Purdue cites cases concerning the rights of shareholders to access board minutes and other documents. That there may be limits on statutory shareholder rights of access to corporate board materials has no bearing on whether those materials should be kept from public view, particularly where the Commonwealth alleges that this decision-making process shows the defendants' complicity in unlawful conduct. Purdue has also designated as confidential all compensation information, and certain individual defendants have joined in Purdue's Motion to Impound this information to the extent it relates to their compensation.[6] The Commonwealth has included this information, however, in an effort to show that the defendants had a financial incentive to participate in an unlawful scheme to promote highly addictive drugs, including OxyContin. That the size of an individual defendant's

---

[5] Gasdia's counsel did express grave concerns about the accuracy of the information contained in the Amended Complaint. The Commonwealth agreed that there could be some mistakes and that it was willing to correct them. Although inaccuracies are not a basis for impoundment, this Court agreed at the January 25 hearing to give the Commonwealth an opportunity to make corrections by delaying by a few days the public filing of the unredacted Amended Complaint.

[6] Defendants Craig Landau, John Stewart and Mark Timney filed their own motion requesting that information concerning their compensation that appears in Exhibit 2 of the Amended Complaint be impounded based on their asserted privacy interests. At the December 20 hearing, this Court allowed that motion pending further hearing on January 25, 2019. In today allowing the non parties' Emergency Motion to Terminate Impoundment, this Court also terminates the impoundment order with regard to the compensation information in Exhibit 2.

7

compensation might prove to be embarrassing for him or her is not grounds for impounding this information.

Finally, certain paragraphs in the Amended Complaint have been designated by Purdue as confidential because they allegedly involve ""proprietary confidential studies" or "confidential business negotiations." This Court's review of those designated paragraphs, however, shows that they do not involve trade secrets but rather appear to be discussions of tactics that could be used to promote the sales of OxyContin (particularly in higher doses), to encourage doctors to prescribe the drug over longer periods of time, and to circumvent safeguards put in place to stop illegal prescriptions – conduct that the Commonwealth alleges to be unfair and deceptive in violation of Chapter 93A. Purdue has been given ample opportunity to explain why this information should be regarded as legitimately proprietary or as a trade secret deserving of this Court's protection. No such explanation has been offered, even though six weeks have gone by since Purdue first became aware of what the Amended Complaint contained.

Purdue points out that the discovery master in the MDL litigation has not yet had the chance to determine if Purdue's classifications of the documents upon which the Amended Complaint relies are in fact deserving of confidentiality and that this Court – regardless of its own views regarding the propriety of those designations – should defer ruling on the issue of impoundment in order to avoid interfering with the federal discovery process. That argument might have some merit if the discovery master's rulings on these designations were important to this Court's decision under Rule 7(b) of the Uniform Rules of Impoundment. This Court concludes that they are not. In the Protective Order that governs this case (an order drafted by the parties themselves), the parties specifically acknowledged that, in determining whether to

impound any material submitted as part of any pleading, this Court is not bound by the parties' designation of information or documents as confidential. Protective Order dated October 18, 2018, ¶12. Moreover, "any such designation does not create a presumption that documents or information so designated are entitled to confidential treatment pursuant to Mass.R.Civ. P. 26(c) or impoundment pursuant to the Uniform Rules of Impoundment Procedure." Id. For purposes of this decision, this Court is even prepared to assume that all of Purdue's confidentiality designations are appropriate. But there is a "stark difference" between protective orders entered pursuant to the discovery provisions of Rule 26 and an order to seal court records. Shane Group, Inc. v. Blue Cross Blue Shield of Michigan, 825 F.3d 299, 305 (6th Cir. 2016) (holding that lower court erred in impounding amended complaint and other documents in class action). As the Sixth Circuit pointed out in Shane Group, "secrecy is fine" at the discovery stage since the material has not become part of the public record. Id. at 305, quoting Baxter International, Inc. v. Abbott Labs, 297 F.3d 544, 545 (7th Cir. 2002). Once a party seeks to place that material in the court record, then the court must consider the public's interest and make its impoundment decision with due regard for the strong presumption of access. Shane Group, Inc., 825 F.3d at 305. Having considered the strong public interest at stake in the instant case, this Court concludes that its earlier order to impound the Amended Complaint must be terminated.

## CONCLUSION AND ORDER

At the conclusion of the January 25 hearing, Purdue asked that this Court stay any order that it issues so as to give Purdue and other defendants an opportunity to exercise their appellate rights. This Court declines to do so. Its decision that impoundment of the Amended Complaint is not appropriate is one that lies within its sound discretion, reversible only upon an abuse of discretion. This Court is convinced that any interlocutory appeal from this Court's order has

little likelihood of success. Still, it is only fair that defendants have a chance to seek a stay at the appellate level. Moreover, there is a single paragraph (370) in the unredacted version of the Amended Complaint which should not be released. See fn. 2, supra. In addition, the Commonwealth has indicated that it may very well withdraw certain of the paragraphs in the Amended Complaint that pertain to Russell Gasdia after further discussions with his counsel as to the accuracy of those allegations. See fn. 5, supra.

Accordingly, it is hereby **ORDERED** that an unredacted copy of the Amended Complaint be filed with this Court and be made available to the public **no later than noon on February 1, 2019**, such copy redacting paragraph 370 containing private medical information. To the extent that the Commonwealth by agreement of counsel wishes to withdraw certain allegations relating to Russell Gasdia (or any other defendant), then it may file a **corrected version** of the Amended Complaint. If it does so, it is suggested that the Commonwealth simply eliminate paragraph 370 so that a wholly unredacted version of the Amended Complaint is part of the public file.

Janet L. Sanders
Justice of the Superior Court

Dated: January 28, 2019