# Exhibit 29

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| | Case No. 17-md-2804 |
| **This document relates to:** | Hon. Dan Aaron Polster |
| *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-op-45090 | |
| *City of Cleveland, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-op-451312 | |
| *County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 17-op-45004 | |

## ALLERGAN'S VERIFIED RESPONSES TO PLAINTIFFS' ADDITIONAL 30(B)(6) QUESTIONS TO JULIE SNYDER

Allergan offered Julie Snyder as its 30(b)(6) witness to testify about 26 topics. Ms. Snyder offered six and a half hours of 30(b)(6) testimony regarding Kadian®, Norco®, generic opioids, and opioids generally, including the submission of two exhibits totaling 34 pages setting forth the responses to each of the topics for which Ms. Snyder was designated (Snyder Dep. Ex. 3 and 4, attached). Nevertheless, after the deposition, Plaintiffs selected the handful of questions that Ms. Snyder was unable to answer, and complained that the responses were being withheld from them. It is Allergan's position that these specific questions, as they were asked in the deposition, were either beyond the scope of topics upon which Ms. Snyder was designated to discuss or they sought information that was not reasonably available to Allergan at the time of the deposition. However, in the spirit of cooperation and in the interest of expeditiously resolving any remaining disputes regarding this matter, Allergan submits the following verified responses, which address each of the specific additional questions Plaintiffs have posed.

**Affirmation That Discovery Responses Herein Are Submitted On Behalf of All Current Allergan Entities And Include Information Collected About Prior Affiliates No Longer Owned by Allergan**

These responses are made on behalf of Allergan Finance, LLC and Allergan plc -- a foreign corporation which has not been served (collectively Allergan).[1]  Allergan confirms that it's previous and ongoing discovery investigation and production of documents -- regarding Kadian®, Norco®, and generic opioids manufactured and/or sold by the Actavis Generics Entities sold to Teva (and where appropriate, "opioids generally" or unbranded marketing) -- has included all responsive documents and information reasonably accessible to all of its current affiliates, including Allergan plc.

## QUESTION 1 (NOV. 5 A. BAIG LETTER  TO SPECIAL MASTERS YANNI & COHEN):

Did Allergan Finance, LLC book revenues based on the sale of opioids in 2013?

## ALLERGAN RESPONSE TO QUESTION 1:

Currently, Allergan USA, Inc. books revenue related to Norco® and Kadian®.  Prior to August 2016, including in 2013, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.  was the entity that booked any revenues for Kadian®, Norco®, and the generic opioids sold by the Actavis Generic Entities.

## QUESTION 2 (NOV. 5 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):

Did Allergan plc report revenues associated with the sale of generic hydrocodone in 2015?

---

[1]  In an order entered November 9, the Court lifted the stay on service of foreign entities, noting at a telephonic hearing that foreign parents including Allergan plc were deemed to be parties in the case.  Allergan plc objects to the lack of due process and to the Court's refusal to allow briefing contesting personal jurisdiction on behalf of a foreign entity not subject to jurisdiction in this Court.

**ALLERGAN RESPONSE TO QUESTION 2:**

Actavis Pharma, Inc. f/k/a Watson Pharma, Inc. booked revenue for Kadian®, Norco®, and the generic opioids sold by the Actavis Generic Entities in 2015.

**QUESTION 3 (NOV. 5 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

What percentage of Allergan's revenue was generated from the sale of generic opioids in 2014?

**ALLERGAN RESPONSE TO QUESTION 3:**

When Allergan sold the Actavis Generics Entities to Teva in August 2016, Allergan's database of record for financial information was also transferred to Teva. Allergan, therefore, does not have data reasonably available to it that can be used to respond to this question. Nonetheless, transactional data that Teva provided to us from this database can be found at ALLERGAN_MDL_03732865, ALLERGAN_MDL_03729468, ALLERGAN_MDL_03729469, and ALLERGAN_MDL_03729472.

**QUESTION 4 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Who was in charge of marketing generic opioids brought into Actavis, Inc. by Watson Pharmaceuticals?

**ALLERGAN RESPONSE TO QUESTION 4:**

The marketing group, led by Andy Boyer from 2007 to 2016 (at Watson Pharmaceuticals, Inc. and Actavis, Inc.), was responsible for product management, new product marketing, monthly product unit forecast for production planning, financial budget and update on product sales, market research, competitive intelligence, support business development activities, corporate branding, advertising and awareness, tradeshow management and support for the sales team.

**QUESTION 5 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Are you aware of any specific target lists that were developed for the purpose of selling any generic opioid that was sold by Allergan?

**ALLERGAN RESPONSE TO QUESTION 5:**

Allergan has searched for, and not identified, any specific target lists that were developed for the purpose of selling any generic opioid that was sold by Allergan. Rather, Actavis Inc. developed target lists for the purpose of detailing Kadian®. These were the same target lists Actavis Inc. used when the Inventiv sales force informed doctors about the availability of generic Kadian® and oxymorphone. These target lists can be found at ALLERGAN_MDL_00451337 (2011 target list) and ALLERGAN_MDL_00407212 (2012 target list).

**QUESTION 6 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Do you know if Watson Pharmaceuticals, Inc. used incentive compensation for anyone involved in the sale of generic opioids?

**ALLERGAN RESPONSE TO QUESTION 6:**

Based on Allergan's investigation to date, incentive compensation was not tied to any specific product or sale of opioids. Rather, compensation was based in part on the company's overall sales performance and in part on an individual's performance based on portfolio level (not product level) performance goals set by individual managers.

**QUESTION 7 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

When Watson Pharmaceuticals Inc. acquired Actavis Inc. and became Actavis, Inc., are you aware whether anyone within the organization had their compensation based in any part on incentives for the sale of generic opioids?

**ALLERGAN RESPONSE TO QUESTION 7:**

Based on Allergan's investigation to date, incentive compensation was not tied to any specific product or sale of opioids. Rather, compensation was based in part on the company's overall sales performance and in part on an individual's performance based on portfolio level (not product level) performance goals set by individual managers.

**QUESTION 8 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Are you aware of any promotional materials created for generic opioids during the time that Watson Pharmaceuticals, Inc. existed and was selling generic opioids?

**ALLERGAN RESPONSE TO QUESTION 8:**

Generic promotion was limited to product availability announcements and ads that notified customers of drug availability, form of drug and strengths available. Generic promotion materials did not make therapeutic or product efficacy claims. Examples of such product availability announcements issued by Watson Pharmaceuticals, Inc. can be found at ALLERGAN_MDL_01144537, ALLERGAN_MDL_01497607, ALLERGAN_MDL_01683855, and ALLERGAN_MDL_03733546. At this time, Allergan has not identified any other generic opioid product availability announcements used by Watson Pharmaceuticals, Inc.

**QUESTION 9 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Do you know whether Allergan Finance used Cardinal to send e-mail blasts for a drug – any opioid drug aside from oxymorphone and Kadian?

**ALLERGAN RESPONSE TO QUESTION 9:**

Allergan has searched for and not identified email blasts sent by Cardinal for any opioid other than oxymorphone and Kadian®. Allergan has, however, identified documents that reflect Cardinal issued a Service Flash (an advertisement in a hard copy publication issued by Cardinal that goes in pharmacists weekly inventory totes) for oxycodone in June 2009 and that Allergan considered running a Service Flash for its fentanyl patch in October 2009. (Acquired_Actavis_00612504 - Acquired_Actavis_00612507).

**QUESTION 10 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Do you know whether Allergan Finance ever used McKesson to send e-mail blasts to pharmacies regarding any opioid drug other than oxymorphone?

5

**ALLERGAN RESPONSE TO QUESTION 10:**

Allergan has searched for and not identified email blasts sent by McKesson for any opioid other than oxymorphone. Allergan has, however, identified documents that reflect Allergan maintained a banner advertisement for oxymorphone on McKesson's One Stop Order site (ALLERGAN_MDL_00141659).

**QUESTION 11 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Do you know if distributors provided any promotional services concerning the generic opioids that were transferred to Teva prior to their transfer?

**ALLERGAN RESPONSE TO QUESTION 11:**

Generic promotion was limited to product availability announcements and ads that notified customers of drug availability, form of drug and strengths available. Generic promotion materials did not make therapeutic or product efficacy claims. Cardinal and McKesson would occasionally send these product availability announcements to their customers through email blasts, telesales calls, hard copy advertisements, or banner advertisements. (ALLERGAN_MDL_00401025, ALLERGAN_MDL_01211926, Acquired_Actavis_00612504 - Acquired_Actavis_00612507, ALLERGAN_MDL_00141659)

**QUESTION 12 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Who was the person at Actavis primarily responsible for interacting with the DOJ concerning Kadian?

**ALLERGAN RESPONSE TO QUESTION 12:**

Allergan's legal department manages all interactions with the DOJ. For Actavis Inc., the members of the legal department responsible for interacting with the DOJ were John LaRocca and John

Duff. For Actavis, Inc., the members of the legal department responsible for interacting with the DOJ were David Buchen, Bob Bailey, and John Duff.

## QUESTION 13 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):

Who was the person at Actavis primarily responsible for interacting with the DOJ concerning generic opioids?

### ALLERGAN RESPONSE TO QUESTION 13:

Allergan's legal department manages all interactions with the DOJ. For Actavis Inc., the members of the legal department responsible for interacting with the DOJ were John LaRocca and John Duff. For Actavis, Inc., the members of the legal department responsible for interacting with the DOJ were David Buchen, Bob Bailey, and John Duff.

## QUESTION 14 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):

Did Allergan receive information from any third parties related to sales, distribution or prescribing data about the U.S. opioid market prior to 2009?

### ALLERGAN RESPONSE TO QUESTION 14:

The Acquired Actavis Entities had access to IMS data and Wolters Kluwer data.  Although third-party databases may have been used to track retail and prescription data for generic opioids, the Acquired Actavis Entities use of this data was limited to an ad hoc basis to assist in their efforts on general distribution of availability announcements for generic opioids. This data was not used to direct any sales representatives to specific medical professionals or offices. This data may have been used to identify high prescribers of opioids to send mailers on the availability of a particular generic opioid.

**QUESTION 15 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

What are the opioids currently sold under the Allergan plc umbrella, whether branded or generic? Can you just list those for me?

**ALLERGAN RESPONSE TO QUESTION 15:**

Allergan Sales, LLC currently books revenue for three opioids: Kadian® (Schedule II), Norco®

(Schedule II), and Fiorinal with Codeine (Schedule III). No other branded or generic opioids are

currently sold by any other Allergan affiliate, including Allergan plc.

**QUESTION 16 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Did any of them [Jennifer Altier, Nathalie Leitch, or Terri Nataline] work at Watson Pharmaceuticals at any point in time?

**ALLERGAN RESPONSE TO QUESTION 16:**

Jennifer Altier, Nathalie Leitch, and Terri Nataline did not work at Watson Pharmaceuticals, Inc.

**QUESTION 17 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Do you know if the structure of the marketing department at Watson Pharmaceuticals, Incorporated changed over time prior to its merger with the Actavis Group?

**ALLERGAN RESPONSE TO QUESTION 17:**

Marketing and sales departments for generic products operated separately from groups

responsible for branded products. Within the generic sales group there was no division or

distinction in how generic opioids were sold or marketed versus other generic products.

For the legacy Watson company, sales representatives for generics handled national and

regional accounts and were assigned to a specific geographic region to service.

For the legacy Actavis company, there was a marketing, customer service and contract &

pricing group. The marketing group was responsible for product management, new product

marketing, monthly product unit forecast for production planning, financial budget and update on product sales, market research, competitive intelligence, support business development activities, corporate branding, advertising and awareness, tradeshow management and support for the sales team.  The customer service group was responsible for supporting each customer, managing customer expectations, seeking out opportunities to enhance service levels, and executing on product launches and post launch activities. The contracts & pricing group was responsible for pricing strategy and maintenance, monitoring market pricing and supply, implementing customer contracts, and supporting the sales team.  After 2012, the company added a new product launch group.  Within the sales group there were directors, vice presidents and managers that handled national accounts.  All sales and marketing personnel would report up to their director or Vice President (ALLERGAN_MDL_01021585)

## QUESTIONS 18 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):

So at the time Norco was being detailed, do you have any knowledge about how marketing materials were developed? Were you able to review any of the marketing materials themselves used to detail Norco?

## ALLERGAN RESPONSE TO QUESTIONS 18:

Since the completion of Mr. Snyder's deposition, Allergan has identified documents that reflect a Promotional Review Committee reviewed Norco® promotional materials. (ALLERGAN_MDL_03255590) Allergan has also identified Norco® promotional materials at ALLERGAN_MDL_03255592, ALLERGAN_MDL_03255593, and ALLERGAN_MDL_03255605.

**QUESTION 19 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Did inVentiv ever provide sales representatives to Watson Pharmaceuticals prior to Watson's acquisition of Actavis?

**ALLERGAN RESPONSE TO QUESTION 19:**

Allergan has searched for and not identified any evidence that Inventiv provided sales representatives to Watson Pharmaceuticals, Inc. for the purpose of promoting any branded or generic opioids.

**QUESTION 20 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Do you know if Actavis was aware of the . . . alleged misrepresentations by Alpharma about the safety and efficacy of Kadian at the time Actavis acquired Kadian?

**ALLERGAN RESPONSE TO QUESTION 20:**

Based on Allergan's investigation to date, Actavis Inc.'s sales and marketing teams were not aware of Alpharma's alleged misrepresentations about the safety and efficacy of Kadian® at the time Actavis acquired Kadian®. Actavis Inc.'s sales and marketing teams learned about these alleged misrepresentations when Alpharma's settlement with the DOJ became public in March 2010. Based on Allergan's investigation to date, Actavis Inc.'s in-house and outside counsel were informed about a DDMAC investigation into Alpharma during due diligence when Actavis Inc. acquired Kadian®.

**QUESTION 21 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Was Allergan ever a member of any of the organizations listed from A to Q [front groups listed in 30(b)(6) topic]?

**ALLERGAN RESPONSE TO QUESTION 21:**

Allergan was not a member of any of the organizations listed from A to Q [front groups listed in 30(b)(6) topic] for the purpose of promoting Kadian®, Norco®, generic opioids, or opioids generally.

**QUESTION 22 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Who is Allergan's primary contact for lobbying activities?

**ALLERGAN RESPONSE TO QUESTION 22:**

Allergan's current contact for federal lobbying activities is Robert Lively. Allergan's current contact for state lobbying activities is Loredana Cromarty.

**QUESTION 23 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Do you currently have any contracts with distributors where the per unit price of Kadian reduces due to volume discounts?

**ALLERGAN RESPONSE TO QUESTION 23:**

Allergan does not currently have any contracts with distributors where the per unit price of Kadian reduces due to volume discounts.

**QUESTION 24 (NOV. 14 A. BAIG LETTER TO SPECIAL MASTERS YANNI & COHEN):**

Do you know anything about the generic opioids discounts or rebates before the generic opioids business was sold in 2016 to Teva?

**ALLERGAN RESPONSE TO QUESTION 24:**

Allergan has searched for and identified documents that reflect the Actavis Generics Entities had the following rebate or discount agreements that included generic opioids:

- A rebate agreement with Meijer during Q3 2014 (ALLERGAN_MDL_02967205, ALLERGAN_MDL_02967211)

11

- A rebate agreement Henry Schein Inc. starting on March 20, 2012 (ALLERGAN_MDL_01987459).

- A one-time bill-back allowance with McKesson dated August 7, 2009 (Acquired_Actavis_00391989)

- A rebate agreement with HBC Services Company dated July 20, 2009 (Acquired_Actavis_00393407)

## VERIFICATION

Julie A. Snyder states that she is authorized to sign on behalf of the Allergan Defendants and declares that she has read the responses; that statements made herein were prepared by the Allergan Defendants' counsel based upon available information; that said responses are subject to inadvertent or undiscovered errors, are based in part on personal knowledge and to the extent not based on personal knowledge, are limited by the documents and information still in existence and in the possession of the Allergan Defendants, presently recollected and thus far discovered in the course of the preparation of these responses; that, consequently, the Allergan Defendants reserve the right to make changes to the Responses if it appears at any time that omissions or errors have been made therein, or that more accurate information is available; and that, subject to the limitations set forth therein, the Allergan Defendants believe that such statements are true and correct to the best of their information and belief known at this time. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: December 27, 2018


_Julie A Snyder_
Julie Snyder

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| 3 | The structure of Your sales and/or Marketing departments for Opioid Products, including the job responsibilities for each position in Your sales and Marketing departments, the lines of direct or indirect reporting for each position, and whether the position's compensation is based in whole or in part on levels of sales of Controlled Substances or Opioid Products. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  Allergan Finance further objects to this Topic as overly broad and unduly burdensome to the extent it seeks testimony regarding a number of broadly worded topics over two decades, including detailed information regarding "job responsibilities for each position in Your sales and Marketing departments," "the lines of direct or indirect reporting for each position," and whether the position's compensation is based in whole or in part on levels of sales of Controlled Substances or Opioid Products."  Finally, Allergan Finance objects to this Request to the extent it seeks information more appropriately sought through written interrogatories, document requests, or other forms of discovery that are less burdensome and more appropriate vehicles for the information sought.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to provide testimony regarding a general description of (i) the sales and marketing departments for Allergan Finance with respect to Kadian® and Norco®, (ii) the roles of employees in these departments, and (iii) the lines of reporting for these departments, to the extent this information is reasonably available. | Based on Allergan Finance's investigation to-date, the sales and marketing department for Kadian® (morphine sulfate) consisted of Jennifer Altier and Lisa Miller. These two employees were responsible for developing marketing materials for Kadian®. They reported to Nathalie Leitch, who reported to Terry Fullem.<br><br>Based on Allergan Finance's investigation to-date, the sales and marketing department for Norco® (hydrocodone and acetaminophen) consisted of sales representatives, who reported to Regional Sales Managers. There were at least three Regional Sales Managers (Dirk Pica, Bill Chase, and Jim Wallace). The Regional Sales Managers were responsible for overseeing the activities of the sales representatives. These Regional Sales Managers reported to the Executive Director of Sales, Mike Pusateri.<br><br>Based on Allergan Finance's investigation to date, the sales and marketing department for generic opioids at legacy Actavis consisted of product managers, a Director of Marketing, and a Vice President of Sales and Marketing. Product managers included David Myers (Senior Manager, Products & Communications), and Rachelle Galant (Senior Product Manager). Jinping McCormick was the Director of Marketing, and Michael Perfetto was the Vice President of Sales and Marketing. (ALLERGAN_MDL_00472853, ALLERGAN_MDL_01058583)<br><br>Currently, sales and marketing employees are employed by Allergan USA, Inc., while regulatory, legal, and compliance employees are employed by Allergan Sales, LLC. The Allergan plc Executive Leadership Team is also employed by Allergan Sales, LLC.<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who | ☐ Reviewed deposition transcript of Jennifer Altier<br><br>☐ Discussions with Jennifer Altier, Nathalie Leitch, and Dirk Pica<br><br>☐ Reviewed documents related to sales and marketing of generic opioids |

Exhibit    003

ALLERGAN
WITNESS: SNYDER
DATE: 11/2/18
REPORTER: Amanda Miller CRR

**MDL 30(b)(6) Deposition - November 2, 2018 Deposition**

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 4 | The identities of all Persons in Your sales department whose responsibilities included the Branded or Unbranded Marketing or sales of Opioids or Opioid Products, including the job responsibilities for each Person, their direct or indirect reports, the existence and location of their performance reviews (annual or otherwise) and the existence and location of records of any employment decisions (e.g., the basis for any promotions, demotions, raises, admonitions, disciplinary decisions, hiring, or firing) and for each position, whether their compensation is based, in whole or in part, on levels of sales of Controlled Substances or Opioid Products. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.

Subject to and without waiving its objections, Allergan Finance will designate a witness to testify regarding the identity and a general description of the primary individuals in the sales and marketing departments for Allergan Finance whose responsibilities include(d) the marketing or sales of Kadian® and Norco®, to the extent this information is reasonably available.  For each individual, Allergan Finance agrees to identify, to the extent reasonably available, each individual's job title, whether a personnel file exists that contains performance reviews and employment decisions, and whether the individual's compensation was based on the sale of Kadian® and Norco®. | Based on Allergan Finance's investigation to-date, the following persons were the primary individuals in the sales and marketing departments whose responsibilities included the marketing or sales of Norco® from 1997 - 2003: Dirk Pica (Regional Sales Manager), Bill Chase (Regional Sales Manager), Jim Wallace (Regional Sales Manager), and Mike Pusateri (Executive Director, Sales).

Based on Allergan Finance's investigation to-date, the following persons were or are the primary individuals in the sales and marketing departments whose responsibilities include the marketing or sales of Kadian® from 2009 - 2013: Nathalie Leitch (Associate Marketing Director), Jennifer Altier (Marketing Director - Consultant), and Lisa Miller (Product Manager - Consultant).

Based on Allergan Finance's investigation to-date, the following persons were or are the primary individuals in the sales and marketing departments whose responsibilities include the marketing or sales of Kadian® and Norco® from 2014 to the present: Michael Kuderka (Executive Director, Marketing Established Brands), and Julie Snyder (Associate Vice President, Marketing).

Based on Allergan Finance's investigation to date, the following persons were the primary individuals in the sales and marketing departments whose responsibilities included the marketing or sale of generic opioids: Michael Perfetto (Vice President, Sales and Marketing), Jinping McCormick (Director of Marketing), David Myers (Senior Manager, Products & Communications), and Rachelle Galant (Senior Product Manager).
(ALLERGAN_MDL_00472853, ALLERGAN_MDL_01058583)

Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals | ☐ Reviewed deposition transcript of Jennifer Altier

☐ Discussions with Jennifer Altier, Nathalie Leitch, Dirk Pica, and Andrea Alfano

☐ Reviewed documents related to sales and marketing of generic opioids |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case.<br><br>Allergan Finance does have a personnel file for Dirk Pica, Julie Snyder, Jim Wallace, and Mike Pusateri. Dirk Pica's personnel file contains performance reviews, employment decisions, and compensation information. Dirk Pica's personnel file shows that he received a bonus which was 75% based on objective market share and market share change for his portfolio of products, and the remaining 25% was based on his manager's assessment of his performance. Julie Snyder's personnel file contains performance reviews, employment decisions, and compensation information. Julie Snyder's compensation is not tied to the performance of opioids. Jim Wallace's personnel file does contain performance reviews, employment decisions, and compensation information. There was no compensation information in Jim Wallace's personnel file that showed that his compensation was tied to the performance of opioids. Mike Pusateri's personnel file contains performance reviews and employment decisions, but not compensation information.<br><br>Allergan Finance does not have personnel files for Michael Perfetto, Jinping McCormick, Rachelle Galant, David Myers, Nathalie Leitch, Jennifer Altier, Lisa Miller, Michael Kuderka, or Bill Chase. Because these are former employees without personnel files, Allergan Finance is unable to confirm or deny whether these individual's compensation was based on the sale of opioids. | |
| 8 | The identity of the Persons responsible for developing or implementing training for Your sales and Marketing departments, including for developing or implementing any written materials or instructions to Your Marketing or sales people regarding promoting or selling Opioids or Opioid Products or for developing or implementing any training on identifying, reporting, or investigating the possible | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  Allergan Finance objects to this Request to the extent it seeks information more appropriately sought through written interrogatories, document requests, or | Based on Allergan Finance's investigation to date, the following persons provided training to Norco® sales representatives: Brian Russell (Watson, Sales Representative, Region 1300), Jeff Young (Watson, Sales Representative, Region 1500), Dirk Pica (Watson, Regional Sales Manager), and Joel Moerer | ☐  Reviewed documents discussing Norco® sales rep awards<br><br>☐  Reviewed Inventiv training agendas (2009-2012) |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | Diversion of Opioids or Opioid Products or identifying, investigating, or reporting Suspicious Orders. | other forms of discovery that are less burdensome and more appropriate vehicles for the information sought.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to testify regarding the identity of the primary individuals who provided training to (i) individuals who promoted Kadian® and Norco® (to the extent there were any) and (ii) individuals who were involved in the suspicious order monitoring program for Kadian® and Norco®, to the extent reasonably available. | (Watson, Sales Representative, Region 2200). (ALLERGAN_MDL_01679057)<br><br>The following persons are identified on agendas as presenters at training sessions for the sales representatives who promoted Kadian® and informed doctors about the availability of certain generic opioids: Ben Allen (Area Business Manager (OR,WA, ID, MT, AK, Northern CA) - inVentiv), Jennifer Altier (Marketing Manager - Actavis), Ara Aprahamian (Director, Pricing & Contracting - Actavis), Lou Bonomo (Associate Director, Electronic Data Management - inVentiv), David Chidley (Director, Managed Markets - inVentiv), Gerard Cignarella (Marketing - Actavis), Sandra Connon (Area Business Manager (IN, MI, and OH) - inVentiv), Charles Florio, Jr. (Training Manager - inVentiv), Tricia Glover (Chief Compliance Officer - inVentiv), Chris Hepp (Regional Business Director, West Region - inVentiv), Mike Hilton (Consultant - Actavis), Mark Killion (Midwest Region Business Director - inVentiv), Nathalie Leitch (Director, Specialty Rx Products - Actavis), John Librie (Consultant - Actavis), Scott Miller (Director of Compliance - inVentiv), Patrick McClanahan (Regional Business Director, Southeast Region - inVentiv), Joelle Novak (Project Manager - inVentiv), Jim Picioccio (Training Manager - inVentiv), Lori Petrovsky (Senior Rebate Specialist - inVentiv), Sandra Russo (Project Manager - inVentiv), Mike Shepherd (Regional Business Director - inVentiv), Richie Sonatag (Area Business Manager (OK, CO, KS, IA, and NE) - inVentiv), Sandra Tanga (Project Manager - inVentiv). (*See e.g.*, ALLERGAN_MDL_01479007; ALLERGAN_MDL_01479008; ALLERGAN_MDL_01740551; ALLERGAN_MDL_01740619; ALLERGAN_MDL_02779512; ALLERGAN_MDL_02779516).<br><br>Jim Picioccio (Inventiv, Training Manager) led the Kadian® Corrective Message Training in August 2010, after Actavis's receipt of the FDA Warning Letter. (ALLERGAN_MDL_01051294)<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan | ☐  Reviewed documents related to sales and marketing of generic opioids<br><br>☐  Discussion with Dirk Pica |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 9 | The identity of all Persons responsible for setting compensation for Your sales force and the components of that compensation for each year. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  Allergan Finance objects to this Request to the extent it seeks information more appropriately sought through written interrogatories, document requests, or other forms of discovery that are less burdensome and more appropriate vehicles for the information sought.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to testify regarding the identity of the primary Persons involved with setting compensation for individuals who promoted Kadian® and Norco® (to the extent there were any) and the components of that compensation, to the extent reasonably available. | Allergan Finance's predecessor Actavis Kadian LLC retained Ventiv Commercial Services, LLC to market and sell Kadian® from May 1, 2009 to December 31, 2012. Base salaries for sales representatives were agreed upon in contracts between Actavis and Ventiv. Bonuses were determined by Actavis and Ventiv and were based upon a methodology found in the Master Services Agreement between Actavis and Ventiv. (ALLERGAN_MDL_00988613) The sales incentive program provided for bonuses to be paid based on individual territory Kadian® Capsule sales as a percentage of a pre-determined annual sales quota. Target payout for 100% quota attainment was $20,000 for sales reps and $32,000 for regional managers. No bonus was earned until 85% of the quota was met.<br><br>The Ventiv sales force also received compensation for informing doctors about the availability of generic oxymorphone in 2011. In the four regions with the highest oxymorphone sales, the top five sales reps with the highest individual sales within the region received a bonus, of $1,250, $850, $700, $600, or $500. The top sales rep in the nation received a bonus of $1,500, and the second top sales rep in the nation received a bonus of $1,000. The top Regional Business Director in the nation received a bonus of $2,000. (ALLERGAN_MDL_00186509)<br><br>In 2001, Watson Pharmaceuticals, Inc. had a bonus plan for Regional Sales Managers promoting Norco®. Dirk Pica's personnel file shows that 75% of his compensation was based on objective market share and market share change for his portfolio of products, and the remaining 25% was based on his manager's assessment of his performance. | ☐  Reviewed Inventiv contract and amendments (amendments included increasing duration of contract, changes in # of reps, etc)<br><br>☐  Reviewed documents related to compensation for Inventiv sales reps<br><br>☐  Discussions with Dirk Pica and Andrea Alfano |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 10 | Identification of Your policies and procedures for, and the identity of all Persons responsible for, interacting with the U.S. Food and Drug Administration ("FDA"), the DEA, the U.S. Department of Justice, or other state and federal government agencies. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  Allergan Finance also objects to the extent this Topic calls for information, including that regarding "interacting with . . . the U.S. Department of Justice" as well as numerous other "state and federal government agencies" that is irrelevant to Plaintiffs' claims.  Allergan Finance objects to this Request to the extent it seeks information more appropriately sought through written interrogatories, document requests, or other forms of discovery that are less burdensome and more appropriate vehicles for the information sought.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to identify current written policies and procedures regarding Allergan Finance's interaction with the FDA and the DEA relating to Kadian® and Norco® as well as the identity of the primary individuals involved with Allergan Finance's interaction with the FDA and the DEA relating to Kadian® and Norco®, to the extent reasonably available. | Allergan Finance's current written policy regarding communications with regulatory agencies, including the FDA, can be found at ALLERGAN_MDL_03367352.<br><br>The primary individual who interacted with the FDA regarding Kadian® and generic opioids was Terri Nataline. (J. Altier Dep., 61:21-62:1) (ALLERGAN_MDL_01396751, ALLERGAN_MDL_01399387)<br><br>Based on Allergan Finance's investigation to date, Allergan Finance has not identified the primary individual who interacted with the FDA regarding Norco®.<br><br>Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | ☐ Reviewed deposition transcript of Jennifer Altier<br><br>☐ Reviewed documents related to communications with the FDA<br><br>☐ Review policy regarding communication with the FDA<br><br>☐ Discussion with Terri Nataline |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| 11 | Your relationship with, compensation paid by You to, and the identity of the Persons who interacted with, the following Person(s)/entity(s) regarding Opioids or Opioid Products:<br><br>(a) American Academy of Pain Medicine;<br><br>(b) American Pain Society;<br><br>(c) American Pain Foundation;<br><br>(d) American Geriatrics Society;<br><br>(e) American Chronic Pain Association;<br><br>(f) American Society of Pain Educators;<br><br>(g) The National Pain Foundation;<br><br>(h) Pain and Policy Studies Group;<br><br>(i) Federation of State Medical Boards;<br><br>(j) American Society of Pain Management Nursing;<br><br>(k) Academy of Integrative Pain Management;<br><br>(l) U.S. Pain Foundation;<br><br>(m) Cancer Action Network;<br><br>(n) Washington Legal Foundation;<br><br>(o) The Center for Practical Bioethics;<br><br>(p) The Joint Commission;<br><br>(q) Pain Care Forum;<br><br>(r) Russell Portenoy, M.D.;<br><br>(s) Perry Fine, M.D.;<br><br>(t) Scott Fishman, M.D.;<br><br>(u) Lynn Webster, M.D.;<br><br>(v) Mitchell Max, M.D.;<br><br>(w) J. David Haddox, M.D.; | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to testify regarding a general description of its relationship with the listed individuals and entities (to the extent a relationship exists) for the purpose of promoting Kadian® and Norco®, to the extent reasonably available. | Allergan does not have a relationship with the listed individuals or entities for the purpose of promoting Kadian® or Norco®.<br><br>Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | ☐  Reviewed deposition transcript of Jennifer Altier |

MDL 30(b)(6) Deposition - November 2, 2018 Deposition

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | (x)  Barry Cole, M.D.;<br><br>(y)  Joseph Pergolizzi, M.D.;<br><br>(z)  Willem Scholten; and<br><br>(aa)  Alan Spanos, M.D. | | | |
| 12 | The identity of any Person or entity, including any third party or any Defendant in this Action, who provided You with sales, distribution or prescribing data about Opioids or Opioid Products and the Person(s) who were the point of contact for each entity and the type of data provided by each. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  In addition, Allergan Finance objects to this Topic as overly broad and unduly burdensome to the extent it seeks testimony regarding "any" such individual or entity; Allergan Finance agrees to provide information regarding the primary such entities or individuals.  Further, Allergan Finance objects to the phrase "sales, distribution, or prescribing data" as vague and ambiguous in this context; Allergan Finance interprets these terms to refer to data regarding prescriptions of Kadian® and Norco®.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to identify any Person or entity, including any third party or any Defendant in this Action, who provided Allergan Finance with sales, distribution or prescribing data about Kadian® and Norco® and the Person(s) who were the point of contact for each entity and the type of data provided by each, to the extent reasonably available. | See separate Chart for Topic 12 listing the identity of the Persons or entities who provided Allergan Finance with sales, distribution, or prescribing data about opioids, the point person for each entity, and the type of data provided by each entity.<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | ☐  Discussions with Jennifer Altier and Nathalie Leitch<br><br>☐  Reviewed contracts and exemplar data sets from IMS, Wolters Kluwer, MediMedia, ValueCentric, and Tegra Analytics |
| 13 | The identity of all Persons who received, reviewed, analyzed, or prepared reports for You using sales, distribution or prescribing data about Opioids or Opioid Products, from the following entities: IQVIA Holdings, Inc.; IMS Health; QuintilesIMS; IQVIA; Pharmaceutical Data Services; Source Healthcare Analytics; NDS Health Information Services; Verispan; Quintiles; SDI Health; ArcLight; Scriptline; Wolters Kluwer; and/or PRA Health Science, and all of their predecessor or successor companies, subsidiaries, or affiliates. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  Allergan Finance objects to this Topic as overly broad and unduly burdensome to the extent it seeks testimony regarding "all" such "Persons" who "received, reviewed, or analyzed or prepared reports" using data from a large number of sources.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to identify Persons who received, reviewed, analyzed, or prepared reports for Allergan Finance using sales, distribution or prescribing data about Kadian® and Norco® from the entities identified in this topic, to the extent reasonably available. | Actavis obtained data about opioids from IMS Health and Wolters Kluwer during the time period it promoted Kadian®. The persons who received, reviewed, analyzed, or prepared reports for Actavis using this data include: Alana Dundas (Actavis - Senior Marketing Sales Analyst), Andrew Boyer (Actavis - Senior VP, Sales and Marketing), Ara Aprahamian (Actavis - Director, Pricing & Contracting), Bob Miranda (Actavis - Sr. Financial Analyst, Revenue Accounting), Cheryl De La Cruz (Actavis - Pricing & Marketing Specialist), Christine Maiolo (Actavis - Manager, Pricing and Business Analytics), Daniel Motto (Actavis - SVP, Business Development & Portfolio Management), Doug Boothe (Actavis - Chief Executive Officer), Ivan Shaw (Actavis - Medical Director, Medical Affairs), James Williamson (Actavis - Global Vice President, Finance and Operations), Jeannette Barrett (Actavis - Senior Medical Director), Jennifer Altier, Jinping | ☐  Discussions with Jennifer Altier and Nathalie Leitch<br><br>☐  Reviewed documents reflecting analysis of data from IMS and Wolters Kluwer |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | McCormick (Actavis - Director of Marketing),  John Reed, Lisa Miller (Actavis - Product Manager, Consultant), Lorraine Rogalsi, Marc Falkin (Actavis - VP, Marketing, Pricing & Contracts, US Generics), Mark Palmisano, Michael Perfetto (Actavis - Vice Presicent, Sales and Marketing), Michael Turnamian (Actavis - Manager, US Generic Portfolio), Nancy Baran (Actavis - Executive Director, Customer Relations Operations), Nat Caserta, Nathalie Leitch (Director, Specialty Rx Products), Patrick LaClair, Peter Shubiak, Ravi Vatsyayan, Renata Degady (Actavis - Associate Director, Portfolio Management, Generic Pharmaceutical), Richard Devivo (Actavis - Senior Market Research Analyst, Generics), Robert Reid (Actavis - Director of Managed Markets), Samuel Oliver (Actavis - Sr. Systems Analyst), Soojung Chung (Actavis - Contracts Specialist), Stephen Gallagher (Actavis - VP, Finance), Terrence Fullem (Actavis - VP, Commercial Development), Umesh Solanki, and Inventiv. (ALLERGAN_MDL_02081791, ALLERGAN_MDL_02081804, ALLERGAN_MDL_02081825, ALLERGAN_MDL_02081838, ALLERGAN_MDL_01150590, ALLERGAN_MDL_00679014, ALLERGAN_MDL_01215787, ALLERGAN_MDL_01215830)<br><br>Based on Allergan Finance's investigation to-date, Allergan and its predecessor companies did not purchase sales, distribution, or prescribing data about opioids from the other entities identified in Topic 13.<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance | |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 14 | The identity of any Defendants or third parties to whom You provided sales, distribution, or prescribing data about Opioids or Opioid Products, the Person(s) who provided that information to Defendants and third parties, and the Person(s) who was the point(s) of contact for each of those Defendants or third parties. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  Allergan Finance further objects to the term Defendants, in this context, as vague and ambiguous, because Allergan Finance was previously affiliated with several Defendants with which it is no longer affiliated; accordingly, Allergan Finance will interpret the term "Defendants" in this context to include only entities with whom Allergan Finance has never been affiliated. Allergan Finance objects to this Topic as overly broad and unduly burdensome to the extent it seeks testimony regarding "any" such "Defendants or third parties" as well as the "Person(s) who was the point(s) of contact for each of those entities."

Subject to and without waiving its objections, Allergan Finance will designate a witness to identify Defendants or third parties to whom Allergan Finance provided sales, distribution, or prescribing data about Kadian® and Norco®, the Person(s) who provided that information to Defendants and third parties, and the Person(s) who was the point(s) of contact for each of those Defendants or third parties, to the extent reasonably available. | Allergan Finance provided data about Kadian® to Ventiv Commercial Services, LLC. The individual who provided this information was Nathalie Leitch (Director, Specialty Rx Products). The persons who received this data were Mark Killion (Midwest Region Business Director), Todd Forman (Associate Director of Data Services), Sandra Russo (Project Manager), and Michael Shepherd (Regional Business Director). (ALLERGAN_MDL_01736583 ALLERGAN_MDL_01104029)

Allergan Finance also provided data about Kadian® to Technekes, LLC. The individuals who provided this information were Nathalie Leitch (Director, Specialty Rx Products) and Jennifer Altier (Marketing Manager). The persons who received this data were Erin Faucette (Marketing Operations Manager), Alex Dowlin (VP, Healthcare Practice - Marketing Services), and Bobbie Montgomery (SVP, Healthcare Practice). (ALLERGAN_MDL_01746512, ALLERGAN_MDL_01002706)

Allergan Finance also provided data about Kadian® to TMS Health. The individual who provided this information was Nathalie Leitch (Director, Specialty Rx Products). The person who received this data was Betty DeSantis (Senior Program Manager, Client Services). (ALLERGAN_MDL_01104303)

Allergan Finance also provided data about Kadian® to Tegra Analytics. The individual who provided this information was Nathalie Leitch (Director, Specialty Rx Products). The person who received this data was Matthew Hutcheson. (ALLERGAN_MDL_00444936)

Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers | ☐ Discussions with Jennifer Altier and Nathalie Leitch

☐ Reviewed documents/emails showing Allergan Finance's transfer of data to others |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 15 | The identity of any data vendors, miners, or providers that You had or have a relationship with Concerning Controlled Substances, Opioids, or Opioid Products and identification of the services or data vendor, miner, or provider provided to You or You provided to the data vendor, miner, or provider. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  Allergan Finance further objects to this Request, particularly the terms "data vendors, miners, or providers," as vague and ambiguous in this context.<br><br>Subject to and without waiving its objections, Allergan Finance is interpreting this request as seeking testimony regarding the entities who do or have provided Allergan Finance with data about Kadian® and Norco®.  Allergan Finance agrees to designate a witness to identify the entities who do or have provided Allergan Finance with data about Kadian® and Norco®. | Allergan Finance does or has obtained data about opioids from the following providers of data: IQVIA and its predecessors (including IMS Health), MediMedia, ValueCentric, and Wolters Kluwer. (See Chart for Topic 12)<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | ☐ Discussions with Jennifer Altier and Nathalie Leitch |
| 19 | The surveys, focus groups, market research, or other similar research or investigation that You performed, had performed on Your behalf, or that you received or reviewed, regarding physician or public perceptions of the safety, efficacy, and/or addictive nature of Your Opioid Products, other Opioid Products, or Opioids and Your use of focus groups, research, or investigations in developing a sales and Marketing strategy and/or a strategy on how to effect, change, or influence those perceptions. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.<br><br>Subject to and without waiving its objections, Allergan Finance agrees to provide testimony regarding surveys, focus groups, and market research Allergan Finance performed, had performed on its behalf, or that Allergan Finance received or reviewed, regarding physician or public perceptions of the safety, efficacy, and/or addictive nature of Kadian® and Norco®, and Allergan Finance's use of focus groups, research, or investigations in developing a sales and Marketing strategy and/or a strategy on how to effect, change, or influence those perceptions, to the extent reasonably available. | The following studies were prepared for Alpharma when Alpharma owned Kadian® and were sent to Allergan Finance when it acquired Kadian®:<br><br>• GfK conducted studies about physician/pharmacist reactions to promotional pieces (ALLERGAN_MDL_01054604), physician/pharmacist perceptions of Kadian® (ALLERGAN_MDL_01054634; ALLERGAN_MDL_01054736), and physician reactions to the Kadian® sales force (ALLERGAN_MDL_00447107; ALLERGAN_MDL_00447549);<br><br>• CMR analyzed which promotional messages most resonate with physicians (Feb. 2008) (ALLERGAN_MDL_00446986); and<br><br>• Empirics Medical Marketing Research prepared a study on physician interests in new formulations and new strengths of Kadian® to determine which one offered the best potential for growth (34 interviews August 2005) (ALLERGAN_MDL_00447643) | ☐ Reviewed documents related to market research studies |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | The following studies were conducted on behalf of Allergan Finance related to Kadian®: | |
| | | | ☐  HPR conducted a study about the impact of promotion on sales of Kadian® (March 2009) (ALLERGAN_MDL_01729977, ALLERGAN_MDL_00448421) | |
| | | | ☐  KGC conducted a study to understand better why prescribers might switch to Kadian® from other opioids (Jan. 2011) (ALLERGAN_MDL_01199084) | |
| | | | ☐  Genesis conduct a study about perceptions of Kadian® and drivers of product selection as well as desired dose strengths (Oct. 2011) (ALLERGAN_MDL_00420577) | |
| | | | Finally, PAINWeek conducted a survey about practioners practices when prescribing opioids (ALLERGAN_MDL_01049188). | |
| | | | Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 21 | The role of wholesalers, distributors, and pharmacies, including, but not limited to, Defendants, in the supply chain for Your Opioid Products and the responsibilities of each with respect to Marketing, sales, supply, Suspicious Order monitoring, and potential diversion. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.<br><br>Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to testify regarding the general roles and responsibilities of wholesalers, distributors, UPS, and pharmacies in the supply chain for Kadian and Norco®, to the extent reasonably available. | In general, wholesalers and distributors order product from Allergan finance and then fulfill orders to pharmacies via UPS.  Pharmacies then provide product to patients. Allergan Finance monitors available inventory at wholesalers and distributors to ensure product is available to make these sales.<br><br>With regards to Kadian® and Norco®, Teva currently manufactures these products and UPS ships these products to wholesalers.<br><br>With regards to marketing, Allergan Finance would occasionally use Cardinal to send email blasts to retail pharmacies regarding Kadian®. (*See e.g.*, | ☐  Reviewed documents related to Cardinal and McKesson email blasts and telesales |

| No. | Topic | Objections | Response | Materials Reviewed |
|-----|-------|-----------|----------|-------------------|
| | | | ALLERGAN_MDL_01198262, ALLERGAN_MDL_01197667, ALLERGAN_MDL_01192443, ALLERGAN_MDL_01001415) Allergan Finance would also occasionally use Cardinal and McKesson to send email blasts and make telesales calls to pharmacies regarding oxymorphone. (ALLERGAN_MDL_00401025, ALLERGAN_MDL_01211926)<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 27 | Any formal or informal investigations, inquiries, or enforcement actions conducted by any federal or state law enforcement or regulatory authority, and any remedial measures or actions taken by You as a result of such investigations, inquiries, or enforcement actions (including any settlements, deferred prosecution agreements, consent decrees, or other resolutions), Concerning Your Opioid Products. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  Allergan Finance further objects to this Topic as calling for information that is protected by the attorney work product doctrine and attorney-client privilege.  In addition, Allergan objects to this Request as vague, ambiguous, overly broad and unduly burdensome to the extent it does not specify the "formal or informal investigations, inquiries, or enforcement actions conducted by any federal or state law enforcement or regulatory authority, and any remedial measures or actions taken by You as a result." Allergan Finance objects to this Request to the extent it seeks information more appropriately sought through written interrogatories, document requests, or other forms of discovery that are less burdensome and more appropriate vehicles for the information sought.<br><br>Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to identify governmental investigations regarding Kadian® and Norco® of which Allergan Finance is aware.  Allergan Finance further agrees to designate a witness to identify | The following entities have issued subpoenas to Allergan Finance seeking information regarding the marketing or sale of opioids: City of Chicago (4/10/2013), Tennessee Department of Commerce and Insurance (9/12/2014), State of New Hampshire (8/23/2017), Missouri Attorney General's Office (8/31/2017), New York Attorney General (9/18/2017), State of Washington (10/3/2017), Indiana Attorney General (11/8/2017), Kentucky Attorney General (1/9/2018), S.D. Florida U.S. Attorney (1/24/2018), South Carolina Attorney General (2/15/2018), and the New Jersey Division of Consumer Affairs (5/5/2018). Allergan Finance has not entered any settlements, deferred prosecution agreements, or consent decrees with these governmental entities related to these subpoenas.<br><br>With regards to the FDA Warning Letter, Actavis received a warning letter from the DDMAC division of the FDA on February 18, 2010. (ALLERGAN_MDL_00795835) | ☐ Reviewed subpoenas issued to Allergan Finance, the FDA Warning Letter, correspondence between Actavis Inc. and the FDA, and internal correspondence regarding the FDA Warning Letter<br><br>☐ Discussion with Terri Nataline |

| No. | Topic | Objections | Response | Materials Reviewed |
|-----|-------|------------|----------|--------------------|
| | | any settlements, deferred prosecution agreements, or consent decrees with governmental entities related to Kadian® and Norco® of which Allergan Finance is aware.  In addition, and in response to this Topic as well as Topic No. 29, Allergan Finance agrees to designate a witness to testify regarding the FDA Warning Letter received by Allergan Finance's predecessor in February 2010, as well as written responses to that letter and corrective action performed in response to that letter, to the extent reasonably available. | In response to this letter, Actavis immediately ceased distributing the materials identified in the FDA Warning Letter as well as any other materials identified as containing similar language.  They also requested that the sales force return the pieces identified in the letter to warehouse for destruction as well as replacing the website with an under construction message. (ALLERGAN_MDL_01869494, ALLERGAN_MDL_01869510)<br><br>On March 4, 2010, Actavis responded to the FDA, acknowledging receipt of the Warning Letter.  For the next several months, Actavis and the FDA communicated back and forth, laying out a corrective-action plan.  Ultimately, Actavis committed to: (i) retraining its sales force with corrective information; (ii) sending Dear Healthcare Professional Letters to each prescriber who received promotional materials or sales calls containing language referenced in the Warning Letter; (iii) sending Dear Consumer letters to patients who received Co-Pay cards who were identified as having registered via the website or telephone; and (iv) hiring a sales force to distribute Dear Consumer letters to prescribers' offices (100 copies per office for 90 days on a stand). (ALLERGAN_MDL_01396751, ALLERGAN_MDL_01875871, ALLERGAN_MDL_01866384, ALLERGAN_MDL_01399387, ALLERGAN_MDL_01874806, ALLERGAN_MDL_01875958, ALLERGAN_MDL_01868671, ALLERGAN_MDL_01399410, ALLERGAN_MDL_01869099, ALLERGAN_MDL_01237743, ALLERGAN_MDL_01238281)<br><br>Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers | |

14

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 29 | Warning letters sent to You by the FDA and the DEA regarding Your Marketing of Your Opioid Products, Your response to the these letters, all subsequent actions you took in response to those Communications, and all budgets for any such actions, by year. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions. Allergan Finance further objects to this Request as vague and ambiguous to the extent it does not specify what "[w]arning letters" it is referring to. Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to testify regarding the FDA warning letter received by Allergan Finance's predecessor in February 2010 regarding Kadian® as well as written responses to that letter and corrective action performed in response to that letter, to the extent reasonably available. | Actavis received a warning letter from the DDMAC division of the FDA on February 18, 2010. (ALLERGAN_MDL_00795835) In response to this letter, Actavis immediately ceased distributing the materials identified in the FDA Warning Letter as well as any other materials identified as containing similar language. They also requested that the sales force return the pieces identified in the letter to warehouse for destruction as well as replacing the website with an under construction message. (ALLERGAN_MDL_01869494, ALLERGAN_MDL_01869510) On March 4, 2010, Actavis responded to the FDA, acknowledging receipt of the Warning Letter. For the next several months, Actavis and the FDA communicated back and forth, laying out a corrective-action plan. Ultimately, Actavis committed to: (i) retraining its sales force with corrective information; (ii) sending Dear Healthcare Professional Letters to each prescriber who received promotional materials or sales calls containing language referenced in the Warning Letter; (iii) sending Dear Consumer letters to patients who received Co-Pay cards who were identified as having registered via the website or telephone; and (iv) hiring a sales force to distribute Dear Consumer letters to prescribers' offices (100 copies per office for 90 days on a stand). (ALLERGAN_MDL_01396751, ALLERGAN_MDL_01875871, ALLERGAN_MDL_01866384, ALLERGAN_MDL_01399387, ALLERGAN_MDL_01874806, ALLERGAN_MDL_01875958, ALLERGAN_MDL_01869099, ALLERGAN_MDL_01399410, ALLERGAN_MDL_01869099, ALLERGAN_MDL_01237743, ALLERGAN_MDL_01238281) The budget for this corrective-action plan was $1,306,995.31. (ALLERGAN_MDL_00452018) Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for | ☐ Reviewed the FDA Warning Letter, correspondence between Actavis Inc. and the FDA, and internal correspondence regarding the FDA Warning Letter ☐ Discussion with Terri Nataline |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 30 | Whether, from 2007 onward, You or anyone on Your behalf or any trade organization, group, or professional association of which You were a member, made any of the following representations through either Branded or Unbranded Marketing and, if the answer is yes, the specific basis for those representations:<br><br>(a)    The risk of addiction from chronic opioid therapy is low;<br><br>(b)    To the extent there is a risk of addiction, it can be easily identified and managed;<br><br>(c)    Signs of addictive behavior are 'pseudoaddiction,' requiring more Opioids;<br><br>(d)    Opioid withdrawal can be avoided by tapering;<br><br>(e)    Opioid doses can be increased without limit or greater risks;<br><br>(f)    Long-term Opioid use improves functioning;<br><br>(g)    Alternative forms of pain relief pose greater risks than Opioids; or<br><br>(h)    New formulations of certain Opioids successfully deter abuse. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  Allergan Finance further objects to the extent this Request purports to call for information regarding a number of discrete subparts.  In addition, Allergan Finance objects to this Request to the extent it purports to call for information regarding statements made by "any trade organization, group, or professional association of which [Allergan Finance was] a member," regardless of whether those representations were made on Allergan Finance's behalf or with Allergan Finance's knowledge, as vague, ambiguous, unduly burdensome and overly broad.<br><br>Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to provide testimony regarding statements of the type listed in (a) through (h) that Allergan Finance or its representatives disseminated on Allergan Finance's behalf in connection with the promotion of Kadian® and Norco®, to the extent reasonably available. | From 2007 onwards, the only persons hired by Allergan Finance to promote opioids were Inventiv's sales representatives and TMS Health and Technekes telesales representatives.<br><br>Before disseminating marketing materials and messages, the content of these marketing materials and messages was reviewed by the Promotional Review Committee.  The Regulatory Affairs Department also compiled and submitted all drug advertisements and promotional labeling to the Division of Drug Marketing, Advertising & Communications (DDMAC) as applicable within 5 business days of final release. (ALLERGAN_MDL_00626198)<br><br>The statements in these marketing materials and messages were based on scientific research (contained in the Kadian® NDA or specifically cited in the marketing piece) and information in the FDA-approved Kadian® label. I did not see the specific statements identified by Plaintiffs in the materials I reviewed. Statements I saw included the following:<br><br>☐  "World Health Organization (WHO) guidelines recommend treating chronic pain with a long-acting opioid" (ALLERGAN_MDL_00540328)<br><br>☐  "Kadian® contains morphine sulfate, an opioid agonist and a Schedule II controlled substance, with an abuse liability similar to other opioid analgesics." (ALLERGAN_MDL_00423856)<br><br>☐  "Flexibility to dos q12h or q24h" (ALLERGAN_MDL_01287834)<br><br>In addition to Kadian®, the Inventiv sales representatives informed doctors about the availability | ☐  Reviewed documents related to Promotional Review Committee, marketing materials, and call notes<br><br>☐  Reviewed deposition transcript of Jennifer Altier |

| No. | Topic | Objections | Response | Materials Reviewed |
|-----|-------|-----------|----------|-------------------|
| | | | of generic oxymorphone and generic Kadian®. The statements in marketing materials used for these products informed the reader of the availability of the drug, the available dosages, the unit size, and contained the black box warning from the drug's label. (ALLERGAN_MDL_00401504, ALLERGAN_MDL_00401025, ALLERGAN_MDL_00478888)<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 32 | Your Marketing budget, by year, for Your Opioid Products from 2007 to the present and the categories of expenditures contained in that budget. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  In addition, Allergan Finance objects to this Request as overly broad and unduly burdensome to the extent it purports to call for detailed information over more than a 10-year period.<br><br>Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to provide testimony regarding its budget for the promotion of Kadian® and Norco®, to the extent reasonably available. | Based on Allergan Finance's investigation to date, no money was spent for the promotion of Schedule II branded opioids from 2007 - 2008, and 2014 to the present.<br><br>In 2009, Allergan Finance's marketing budget for Kadian® was $8,110,190.86. This budget included the following categories of expenditures: Co-pay Assistance Program, Patient Assistance Program, Data, Marketing Consultants, Promotional Materials Fulfillment, Website, Direct Sales, Telesales, Patient Adherence, and Other. (ALLERGAN_MDL_00452470)<br><br>In 2010, Allergan Finance's marketing budget for Kadian® was $12,416,508.36. This budget included the following categories of expenditures: Co-pay Assistance Program, Patient Assistance Program, Patient Adherence, Data, Consultants, New Campaign, Promotional Materials Fulfillment, Website, Direct Sales, Corrective Action, Telesales, and Market Research. (ALLERGAN_MDL_00452018) | ☐  Reviewed marketing budgets |

| No. | Topic | Objections | Response | Materials Reviewed |
|-----|-------|------------|----------|--------------------|
|  |  |  | In 2011, Allergan Finance's marketing budget for Kadian® was $16,864,513.67. This budget included the following categories of expenditures: Co-pay Assistance Program, Patient Assistance Program, Data, Consultants, Agency, Promotional Materials Fulfillment, Website, Direct Sales, Telesales, MediMedia, Kadian® Materials, and Other. (ALLERGAN_MDL_00394919) The same year, Allergan Finance spent $20,000 on the Inventiv sales team for their work informing doctors about the availability of generic oxymorphone. (ALLERGAN_MDL_00186509)<br><br>In 2012, Allergan Finance's marketing budget for Kadian® was $13,095,479. This budget included the following categories of expenditures: Co-pay Assistance Program, Patient Assistance Program, Data, Consultants, Agency, Promotional Materials Fulfillment, Website, Direct Sales, Telesales, MediMedia, IMS Health, Kadian® Materials, and Other. (ALLERGAN_MDL_00452491)<br><br>In 2013, Allergan's marketing budget for Kadian® was $1,811,760. This budget included the following categories of expenditures: Co-pay Assistance Program, Data, Agency, Promotional Materials Fulfillment, Telesales, Kadian® Materials, and Other. (ALLERGAN_MDL_01611542)<br><br>Based on Allergan Finance's investigation to date, Allergan Finance has not identified budgets for the marketing of Norco®.<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. |  |

| No. | Topic | Objections | Response | Materials Reviewed |
|-----|-------|-----------|----------|--------------------|
| 33 | Your annual sales of each Opioid Product from 2007 to present and what percentage of Your annual sales revenue those sales numbers accounted for. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.<br><br>Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to provide testimony regarding its annual sales for Kadian® and Norco®, as well as an approximation of the percentage of Allergan Finance's overall revenue for which those sales accounted, to the extent reasonably available. | A review of Allergan Finance's forecast files reflects anticipated annual revenue of Kadian® and Norco® for 2014 and 2015. In 2014, Kadian® forecasted revenue was $8.5 million, and Norco® forecasted revenue was $18.0 million. In 2015, Kadian® forecasted revenue was $18.7 million, and Norco® forecasted revenue was $22.9 million.<br><br>Allergan Finance's official ERP system identifies revenue of Kadian® and Norco® for 2016 and 2017. In 2016, Kadian® revenue was $19.6 million, and Norco® revenue was $21.6 million. In 2017, Kadian® revenue was $11.3 million, and Norco® revenue was $20.4 million.<br><br>Because Allergan Finance itself has never manufactured or sold generic opioids, and all affiliated entities that once did were sold to Teva, Allergan Finance does not have revenue information for generic opioids in its official ERP system. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case.<br><br>As a holding company, Allergan Finance itself does not have "sales." However, the revenue of Kadian® and Norco® accounted for the following percent of net revenue for Allergan plc (as reported in Allergan plc's annual 10-K) since Allergan acquired Actavis, Inc.: 0.33% of Allergan plc's net revenue in 2015, 0.28% of Allergan plc's net revenue in 2016, and 0.20% of Allergan plc's net revenue in 2017. | ☐ Discussions with Tom Reilly<br><br>☐ Reviewed Allergan plc's 2017 10-K |
| 35 | Your analysis of the effectiveness of Your Marketing, promotions, and advertising related to Your Opioid Products, your return on investment ("ROI") of Marketing activities related to Your Opioid Products. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.<br><br>Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to provide testimony regarding analysis Allergan Finance undertook, if any, of the effectiveness of promotional activities related to the | Actavis did not conduct a formal ROI analysis to assess its return on investment for all promotional efforts regarding Kadian®.<br><br>Rather, prior to retaining a sales force to promote Kadian®, Actavis hired Health Products Research to understand the impact of discontinuing field-based promotion of Kadian®. Using physician-level | ☐ Reviewed documents related to marketing efforts that identify an ROI<br><br>☐ Reviewed deposition transcript of Jennifer Altier |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | promotion of Kadian® and Norco®, to the extent reasonably available. | prescribing data and patient-level data, HPR concluded that if Actavis did not detail Kadian®, sales would drop 34-47% (ALLERGAN_MDL_01729974, ALLERGAN_MDL_01729977, ALLERGAN_MDL_00448419, ALLERGAN_MDL_00448421).<br><br>Additionally, Adheris, the company Actavis retained to manage its Patient Adherence program, expected a ROI of 19.9:1 in May 2009 and an ROI of 15.9:1 in April 2010. (ALLERGAN_MDL_00450169; ALLERGAN_MDL_00450170, ALLERGAN_MDL_00221532, ALLERGAN_MDL_00221533)<br><br>Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 36 | Your analysis and use of data from any database in connection with the sale, marketing, or distribution of Opioid Products, including the identity of any periodic reports generated for use by You, the analysis done with those reports, and who received those reports or analysis, including, but not limited to, data from the following entities: IQVIA Holdings, Inc.; IMS Health; QuintilesIMS; IQVIA; Pharmaceutical Data Services; Source Healthcare Analytics; NDS Health Information Services; Verispan; Quintiles; SDI Health; ArcLight; Scriptline; Wolters Kluwer; and/or PRA Health Science, and all of their predecessor or successor companies, subsidiaries, or affiliates. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  In addition, Allergan Finance objects to this Request to the extent it purports to call for detailed information regarding "analysis and use of data from any database" as overly broad and unduly burdensome.<br><br>Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to provide testimony regarding a general description of analysis and use of data, in connection with the promotion or sales of Kadian® and Norco®, obtained from the listed entities, if any, to the extent reasonably available. | Actavis obtained opioid sales and prescribing data from IMS Health and Wolters Kluwer.<br><br>Actavis obtained prescription-level data from Wolters Kluwer. The purpose of obtaining this data was to identify targets for Kadian® and track sales of Kadian®. This data was provided to the Inventiv sales force to track their progress for compensation purposes. This data was also provided to the Inventiv Regional Business Managers to congratulate high-performing reps and guide lower-performing reps. This data was also provided to Tegra Analytics so Tegra could identify targets.<br><br>Actavis began purchasing IMS data in 2012. The IMS data was used in the same manner as Wolters Kluwer.<br><br>Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies | ☐  Discussions with Jennifer Altier and Nathalie Leitch |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 37 | The process used to determine which medical professionals or offices Your sales representatives (including contracted sales representatives) would individually contact (in-person or otherwise) with respect to Your Opioid Products, including any database or other sources of information You used to direct or suggest medical professionals or offices to contact, directions or guidelines to sales representatives Concerning which medical professionals or offices to contact, and databases, reports, or other information made available to Your sales representatives Concerning prescribing histories or propensities of medical professionals. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to testify regarding the process used to determine which medical professionals or offices Allergan Finance's sales representatives (including contracted sales representatives) would individually contact (in-person or otherwise) with respect to Kadian® and Norco®, to the extent reasonably available. | Prescriber data from Wolters Kluwer would be provided to Tegra Analytics. (ALLERGAN_MDL_00215056) Tegra Analytics would use this data to develop target lists for Inventiv, TMS Health, and Technekes. (ALLERGAN_MDL_00443993, ALLERGAN_MDL_00402769, ALLERGAN_MDL_00403654)<br><br>Tegra's target lists identified top Kadian®, branded morphine, and generic morphine prescribers. If these prescribers were within the territories of Inventiv sales representatives, the sales representatives would be assigned these prescribers. If these prescribers were not within the territories of Inventiv sales representatives, Actavis would send these names to TMS Health and Technekes so that a telesales representative could call the prescriber. (ALLERGAN_MDL_00403654, ALLERGAN_MDL-00402220) Based on its investigation to date, Allergan Finance has not identified any separate target list for generic opioids.<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | ☐ Reviewed documents related to Tegra Analytics, Wolters Kluwer, and training decks regarding targets for sales representatives<br><br>☐ Reviewed deposition transcript of Jennifer Altier<br><br>☐ Discussion with Jennifer Altier and Nathalie Leitch |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | Based on its investigation to date, Allergan Finance has not identified how prescribers were identified for Norco® sales representatives. | |
| 38 | Compensation for members of Your sales department (including sales representatives, district-level managers, regional-level managers, and national-level managers, regardless of title), including any formula or methods used to determine compensation, the extent to which any such compensation was based in whole or in part on levels of sales of one or more Opioid Products, the personnel involved in determining compensation, and the records of the compensation determination process. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  In addition, Allergan Finance objects to this Topic to the extent it purports to call for information regarding "[c]ompensation" for individuals beyond sales representatives as overly broad, unduly burdensome and as calling for information that is not proportional to the needs of this case.  Finally, Allergan Finance objects to this Topic as duplicative of Topic 9 and refers Plaintiffs to the testimony offered in response to Topic 9.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to testify regarding the identity of the <mark>primary Persons involved with setting compensation</mark> for individuals who promoted Kadian® and Norco® (to the extent there were any) and the <mark>components of that compensation</mark>, to the extent reasonably available. | Allergan Finance's predecessor Actavis Kadian LLC retained Ventiv Commercial Services, LLC to market and sell Kadian® from May 1, 2009 to December 31, 2012. Base salaries for sales representatives were agreed upon in contracts between Actavis and Ventiv. Bonuses were determined by Actavis and Ventiv and were based upon a methodology found in the Master Services Agreement between Actavis and Ventiv. (ALLERGAN_MDL_00988613) The sales incentive program provided for bonuses to be paid based on individual territory Kadian® Capsule sales as a percentage of a pre-determined annual sales quota. Target payout for 100% quota attainment was $20,000 for sales reps and $32,000 for regional managers. No bonus was earned until 85% of the quota was met.<br><br>The Ventiv sales force also received compensation for informing doctors about the availability of generic oxymorphone in 2011. In the four regions with the top oxymorphone sales, the top five sales reps with the highest individual sales within the region received a bonus, of $1,250, $850, $700, $600, or $500. The top sales rep in the nation received a bonus of $1,500, and the second top sales rep in the nation received a bonus of $1,000. The top Regional Business Director in the nation received a bonus of $2,000. (ALLERGAN_MDL_00186509)<br><br>In 2001, Watson Pharmaceuticals, Inc. had a bonus plan for Regional Sales Managers promoting Norco®. Dirk Pica's personnel file shows that 75% of his compensation was based on objective market share and market share change for his portfolio of products, and the remaining 25% was based on his manager's assessment of his performance.<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or | ☐  Reviewed Inventiv contract and amendments (amendments included increasing duration of contract, changes in # of reps, etc)<br><br>☐  Reviewed documents related to compensation for Inventiv sales reps<br><br>☐  Discussions with Dirk Pica and Andrea Alfano |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 39 | The process used to distribute Marketing Communications throughout the nation, and specifically in the State of Ohio and the Marketing distributed into Ohio through this process. This topic includes the steps that occur from the time a Marketing plan, program, or campaign is initiated to the step evaluating its effectiveness in the State of Ohio. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to testify regarding the process used to distribute Marketing Communications regarding Kadian® and Norco® throughout the nation and in Ohio, to the extent reasonably available. | The Marketing Department develops prescription drug advertising and provides proposed pieces and/or advertisements to the Legal and Regulatory Committee for internal review (Promotional Review Committee, PRC). Individuals from Legal, Regulatory, and Medical sit on the PRC. The PRC reviews all drug advertising for compliance with all applicable regulations and policies and determines whether the piece is approved or needs to be amended and re-circulated. If the piece is approved, no further revisions are permitted without the review of the PRC. At any time, the PRC can request additional consultation as deemed necessary, *i.e.* medical advice or an expert consultant opinion. The Marketing Department authorizes the piece for use/distribution once Regulatory releases it. The Regulatory Affairs Department compiles and submits all drug advertisements and promotional labeling to the Division of Drug Marketing, Advertising & Communications (DDMAC) as applicable within 5 business days of final release. (ALLERGAN_MDL_00626198)<br><br>For Kadian®, marketing materials were then provided to Inventiv, a third party Actavis retained to promote Kadian®. These sales representatives would then meet with doctors in Ohio to share these marketing materials and messages. (ALLERGAN_MDL_01890663) Telesales representatives from TMS Health and Technekes also contacted doctors across the country to discuss Kadian®. (ALLERGAN_MDL_00436591) Executive dashboards were created to track the sales and market share of Kadian® nationally. (ALLERGAN_MDL_00018756)<br><br>For generic oxymorphone and generic Kadian®, materials were also provided to Inventiv sales representatives to use when they would inform doctors that these two drugs were available. (ALLERGAN_MDL_00478887) | ☐ Reviewed documents related to Promotional Review Committee, marketing materials, and call notes<br><br>☐ Reviewed deposition transcript of Jennifer Altier |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 40 | The process for determining the accuracy, completeness, and legality of any sales, Marketing, promotional, or educational information You made available to medical professional, patients, or the public concerning any one or more Opioid Products in any format, including printed materials, videos, websites, and in-person messaging or "detailing" by sales representatives. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  In addition, Allergan Finance objects to the extent this Topic purports to call for information protected by the attorney work product doctrine or attorney-client privilege.  By agreeing to present a witness on this topic Allergan Finance does not waive any attorney-client privilege or work product protection over such information.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to testify regarding its Promotional Review Committee for Kadian® and Norco®, to the extent reasonably available. | The Marketing Department develops prescription drug advertising and provides proposed pieces and/or advertisements to the Legal and Regulatory Committee for internal review (Promotional Review Committee, PRC).  Individuals from Legal, Regulatory, and Medical sit on the PRC. The PRC reviews all drug advertising for compliance with all applicable regulations and policies and determines whether the piece is approved or needs to be amended and re-circulated. If the piece is approved, no further revisions are permitted without the review of the PRC. At any time, the PRC can request additional consultation as deemed necessary, *i.e.* medical advice or an expert consultant opinion. The Marketing Department authorizes the piece for use/distribution once Regulatory releases it. The Regulatory Affairs Department compiles and submits all drug advertisements and promotional labeling to the Division of Drug Marketing, Advertising & Communications (DDMAC) as applicable within 5 business days of final release. (*See* ALLERGAN_MDL_00626198)<br><br>Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or | ☐ Reviewed documents related to Promotional Review Committee |

**MDL 30(b)(6) Deposition - November 2, 2018 Deposition**

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 42 | Marketing or educational messages that You distributed or caused to be distributed in Ohio, including those distributed into Cuyahoga and Summit Counties and the Cities of Cleveland and Akron, regarding Your Opioid Products and the dates of distribution of those messages, including whether the following messages or similar messages were contained in Marketing or educational materials or sales detailing in the State of Ohio:<br><br>(a)    The risk of addiction from chronic Opioid therapy is low;<br><br>(b)    To the extent there is a risk of addiction, it can be easily identified and managed;<br><br>(c)    Signs of addictive behavior are 'pseudoaddiction,' requiring more Opioids;<br><br>(d)    Opioid withdrawal can be avoided by tapering;<br><br>(e)    Opioid doses can be increased without limit or greater risks;<br><br>(f)    Long-term Opioid use improves functioning;<br><br>(g)    Alternative forms of pain relief pose greater risks than Opioids; or<br><br>(h)    New formulations of certain Opioids successfully deter abuse. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  In addition, Allergan Finance objects to this Topic to the extent it purports to call for detailed information regarding a number of discrete subject areas.<br><br>Subject to and without waiving its objections, Allergan Finance will designate a witness to testify regarding a general description of promotional activities Allergan Finance directed to Cuyahoga and Summit Counties as well as the Cities of Cleveland and Akron relating to Kadian® and Norco®, to the extent reasonably available. | For part of 2009 to 2013, Kadian® was promoted by Inventiv's sales representatives (ended in 2012) and TMS Health and Technekes telesales representatives. These sales representatives marketed Kadian® and no other Schedule II branded opioid.<br><br>Plaintiffs can review Allergan's production to identify the specific marketing materials and messages these representatives shared with health care providers (nationally and in Ohio). (*See e.g.*, ALLERGAN_MDL_00992370, ALLERGAN_MDL_00423856)<br><br>The statements in these marketing materials and messages were based on scientific research (contained in the Kadian® NDA or specifically cited in the marketing piece) and information in the FDA-approved Kadian® label. I did not see those specific statements in the materials I reviewed. Statements I saw included the following:<br><br>☐    "World Health Organization (WHO) guidelines recommend treating chronic pain with a long-acting opioid" (ALLERGAN_MDL_00540328)<br><br>☐    "Kadian® contains morphine sulfate, an opioid agonist and a Schedule II controlled substance, with an abuse liability similar to other opioid analgesics." (ALLERGAN_MDL_00423856)<br><br>☐    "Flexibility to dos q12h or q24h" (ALLERGAN_MDL_01287834)<br><br>In addition to Kadian®, the Inventiv sales representatives informed doctors about the availability of generic oxymorphone and generic Kadian®. The statements in marketing materials used for these products informed the reader of the availability of the drug, the available dosages, the unit size, and contained the black box warning from the drug's label. (ALLERGAN_MDL_00401504, | ☐  Reviewed deposition transcript of Jennifer Altier<br><br>☐  Reviewed marketing materials and call notes |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | ALLERGAN_MDL_00401025, ALLERGAN_MDL_00478888) | |
| | | | Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics Companies or left the companies altogether prior to or at the time of the transaction.  Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| | | | Call notes produced by Allergan identify the specific dates sales representatives met with health care providers in-person in Ohio. (ALLERGAN_MDL_01890663) | |
| | | | Based on its investigation to date, Allergan Finance has not identified examples of such statements used in Norco® promotional materials. | |
| 44 | Whether the Marketing and educational materials produced by You in this matter, or materials containing similar messages, were distributed into the State of Ohio. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.  In addition, Allergan Finance objects to this Topic as vague, ambiguous, unduly burdensome and overly broad.  Among other reasons, this Topic fails to specify about which "Marketing and educational materials" it is requesting testimony.  Finally, Allergan Finance objects to this Topic as duplicative of Topic 42 and refers Plaintiffs to the testimony offered in response to Topic 42.

Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to testify regarding whether the Marketing and educational materials produced by Allergan Finance in this matter related to Kadian® and Norco®, or materials containing similar messages, were distributed into the State of Ohio. | Allergan Finance trained its sales representatives and developed promotional materials at a national level. (ALLERGAN_MDL_00990555, ALLERGAN_MDL_00402220) Allergan Finance sales representatives met with doctors in Ohio. (ALLERGAN_MDL_01890663) Based on Allergan Finance's investigation to date, Allergan Finance used the same promotional materials in Ohio that were used nationwide.

Based on its investigation to date, Allergan Finance has not identified whether Norco® sales representatives met with prescribers in Ohio.

Information about generic opioids is based on searching documents that are in Allergan Finance, LLC's possession that belong to the Actavis Generics Companies that were sold to Teva. Based on Allergan Finance, LLC's investigation to date, the individuals with primary responsibility for Actavis generic opioids either remained with the Actavis Generics | ☐ Reviewed Inventiv training documents and call notes

☐ Reviewed deposition transcript of Jennifer Altier |

| No. | Topic | Objections | Response | Materials Reviewed |
|---|---|---|---|---|
| | | | Companies or left the companies altogether prior to or at the time of the transaction. Allergan Finance, LLC, therefore, has not been able to locate any current or former business person at Allergan Finance, LLC who had primary responsibility for generic opioids and who has information responsive to this Request. For further information about this topic, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | |
| 47 | Identification of all financial and accounting information you maintain in the ordinary course of Your business regarding Your Marketing, promotional, and advertising expenditures, and all financial and accounting regarding the effectiveness of Your Marketing, promotion, and advertising expenditures. | Allergan Finance incorporates by reference the General Objections, Objections to Instructions and Objections to Definitions.<br><br>Subject to and without waiving its objections, Allergan Finance agrees to designate a witness to testify regarding a general description of the types of financial and accounting information relating to Kadian® and Norco® that Allergan Finance currently maintains. | Allergan Finance's internal P&L (profit and loss) statements reflect the types of financial data currently maintained regarding Kadian® and Norco®: gross sales, net sales, total costs of goods sold, direct selling expense, direct marketing expense, indirect selling expense, indirect marketing expense, freight & distribution, and pharma fee.<br><br>Allergan Finance does not currently market or sell generic opioids. Accordingly, Allergan Finance does not currently maintain financial or accounting information related to generic opioids. For this information, Allergan Finance refers Plaintiffs to the existing Actavis Generics Companies, which are named defendants in this case. | ☐   Discussion with Tom Reilly |

**MDL 30(b)(6) Deposition - November 2, 2018 Deposition**
**Topic 12**

| Entity | Point of Contact | Type of Data Provided |
|---|---|---|
| IQVIA and its predecessors (including IMS Health) | Robert Dichuara<br>Vice President, MMS<br><br>John Herley<br>(position unknown)<br><br>Dave Lucey<br>GM CIMA | Based on Allergan Finance's investigation to date, Actavis purchased physician office and retail tracking data and hospital tracking data for Schedule II narcotics. The specifics of the contract included:<br><br>Retail data:<br><br>• IMS SOW #3, dated April 8, 2012, states that Actavis purchased data related to "physician office and retail tracking data for CII narcotics." (ALLERGAN_MDL_01890770) The cost of this data was $75,000. The SOW describes this data as:<br><br>   • "CMS-1500 medical claims (history from September 1999) completed for patients seen in physician offices. SDI receives approximately 1 billion claims per year submitted by over 570,000 physicians. This data is available in near real-time and is the largest ongoing tracking program of outpatient office visit data. This data is also the source for tracking injectable use and procedures in the physician office setting."<br><br>   • "NCPDP prescription claims (history from April 2001) - submitted for patients receiving a prescription via retail pharmacy. The NCPDP prescription claims represent over 2 billion annual dispensed prescriptions. Data is available in near real-time; all data is patient level and linkable longitudinally across time and other SDI data channels."<br><br>Reporting metrics in this analysis included "Diagnosis, Physician specialty, Any associated procedures, [and] Differences based on product strength. IMS will also provide the number of patients who fill a CII narcotic in the retail setting, the number of their associated office visits, and the distributions of diagnosis and in-office procedures."<br><br>Hospital data:<br><br>• IMS SOW #4, dated April 8, 2012, states that Actavis purchased data related to "hospital tracking of patient administered CII narcotics." |

Exhibit 004
ALLERGAN
WITNESS: SNYDER
DATE: 11/2/18
REPORTER: Amanda Miller CRR

**MDL 30(b)(6) Deposition - November 2, 2018 Deposition**
**Topic 12**

| Entity | Point of Contact | Type of Data Provided |
|---|---|---|
| | | (ALLERGAN_MDL_01890777) The cost of this data was $70,000. The SOW describes this data as:<br><br>• ". . . anonymized patient-level views and analysis of specific drug and medical device use by diagnosis and procedure within and between the hospital inpatient and outpatient settings. Hospital Analytics provides comprehensive and accurate utilization measurements (location of initiation within the hospital, sequencing of care, etc.), as well as spillover analyses from hospital initiation of therapy into the retail care setting<br><br>Specifically, this data integration enables our clients to:<br><br>• Track initiation of therapy and sequencing of drug utilization, procedures, and medical devices at the patient level during a patient's hospital encounter (in either the inpatient or outpatient setting).<br><br>• Track drug "loading" dose by brand, including hospital and post-hospitalization modulation of therapy."<br><br>Reporting metrics in this analysis included "Diagnosis, Procedures, [and] Duration of product usage in hospital setting."<br><br>• IMS SOW #5, dated April 8, 2012, states that Actavis purchased data related to "hospital and retail tracking for CII narcotics." (ALLERGAN_MDL_01890783) The cost of this data was $20,000. The SOW describes this data in the same manner as the data purchased in SOW #4. Reporting metrics in this analysis included "Patient Age [and] Patient Gender." |
| MediMedia | Tom Langan<br>President, Triple I Division of<br>MediMedia USA, Inc. | There were two types of data sets from MediMedia. One related to co-pay utilization and one related to managed care data.<br><br>According to the Adjudicated Discount Coupon Program Agreement between Triple I Division of MediMedia USA, Inc. ("MediMedia") and Actavis Kadian LLC ("Actavis |

2

**MDL 30(b)(6) Deposition - November 2, 2018 Deposition**
**Topic 12**

| Entity | Point of Contact | Type of Data Provided |
|---|---|---|
| | | Kadian"), MediMedia provided Actavis Kadian with a monthly co-pay coupon utilization report, which cost up to $1,500 per month. (ALLERGAN_MDL_01401188) |
| | | According to the Agreement between Actavis, Inc. ("Actavis") and MediMedia Information Technologies, LLC ("MMIT"), Actavis obtained a license for data from the following data sets related to the pain market: Formulary Compass, FormTrak on Demand, and Medicare Compass Database. The license to these data sets cost $88,500. Formulary Compass "contains formulary information for greater than 5,000 US managed care organizations: Employers, Insurers, Medical Groups, HMO's, PPO's, PBM's, POS's, Medicare Part D and State Medicaid plans." FormTrack on Demand allows users to "create a card for their geographic area, choosing the plans and instantly viewing the statuses for those plans" of a specific or set of drugs. (ALLERGAN_MDL_01447712) |
| Tegra Analytics | Matthew C. Hutcheson Partner | According to the Services Agreement between between Tegra Analytics, LLC ("Tegra") and Actavis Kadian LLC ("Actavis Kadian"), dated August 1, 2009, Tegra provided Actavis Kadian with the following data: |

• "Weekly prescription reporting at the territory, regional and national levels. These reports will display a summary of key statistics (the "Dashboard"), performance measurements, TRx data and prescriber information and will be used by sales management and the field sales team to track performance."

• "Weekly Company Management Reporting: This weekly report will be used by Company's management to monitor trends in key territory, regional and national TRx trends. A report template will be provided by an authorized representative of Company and finalized with Provider."

• "Incentive Compensation Reporting: This report will display results for the second and third trimesters of 2009 corresponding to the Incentive Compensation timeline and will be used as the basis for which to calculate incentive compensation payouts." (ALLERGAN_MDL_01752677)

The Master Services Agreement between between Tegra Analytics, LLC ("Tegra") and Actavis Inc. ("Actavis"), dated January 27, 2012, states that the scope of services to be

**MDL 30(b)(6) Deposition - November 2, 2018 Deposition**
**Topic 12**

| Entity | Point of Contact | Type of Data Provided |
|---|---|---|
| | | provided by Tegra to Actavis will be set forth in Work Orders. (ALLERGAN_MDL_01451428) According to Work Order No. ACTA-0001, dated January 27, 2012, Tegra provided Actavis Kadian with the following data: <br><br> • "Monthly prescription reporting at the territory, regional and national levels. These reports will display a summary of key statistics (the "Dashboard"), performance measurements, TRx data and prescriber information and will be used by sales management and the field sales team to track performance." This service cost $8,000 per month. <br><br> • "Weekly management reporting: This weekly report will be used by Actavis' management to monitor trends in key territory, regional and national TRx trends. A report template will be provided by an authorized representative of Actavis and finalized with Service Provider." This service cost $2,000 per cycle. <br><br> • "Ad-hoc services include one-time requests from Actavis such as a TMS target list extract, matching prescribers from disparate data sow-ces, generating special targets lists for a market event (FDA ruling), etc." This service cost $3,000 per month. <br><br> • "Incentive Compensation Reporting: This report will display results for the first, second and third trimesters of 2012 corresponding to the Incentive Compensation timeline and will be used as the basis for which to calculate incentive compensation payouts." This service cost $4,000 per quarter. (ALLERGAN_MDL_01447837) |
| ValueCentric | David Janca CEO <br><br> Scott C. Terhaar CFO | According to an Agreement between ValueCentric, LLC ("ValueCentric") and Actavis Kadian, LLC ("Actavis Kadian") dated February 26, 2009, Actavis Kadian purchased the following modules from ValueCentric: Base 852 Monitoring and Scorecarding, and Base 867 Detailed Sales Analysis for 8 SKUs. The cost of the Base 852 data was $2,550 monthly (plus a $20,000 initiation fee). The cost of the Base 867 data was $1,700 monthly (plus a $15,000 initiation fee). (ALLERGAN_MDL_01447847). |

4

**MDL 30(b)(6) Deposition - November 2, 2018 Deposition**
**Topic 12**

| Entity | Point of Contact | Type of Data Provided |
|---|---|---|
| | | On March 19, 2010, the number of SKUs for which Actavis Kadian received data was increased from 8 SKUs to 38 SKUs. This increase in SKUs increased the monthly fee by $1,800. (ALLERGAN_MDL_01900424)<br><br>According to Amendment #1, dated February 10, 2011, the number of SKUs for which Actavis Kadian received data was increased from 38 SKUs to 158 SKUs (8 branded SKUs and 150 generics SKUs). This increases in SKUs increased the monthly fee to a total of $9,750. (ALLERGAN_MDL_01451449).<br><br>According to Amendment #2, dated December 28, 2011, Actavis Kadian purchased the "Safe & Secure Supply Chain" module. The cost of this module was $850 monthly (plus an $11,000 initiation fee). (ALLERGAN_MDL_01451450).<br><br>According to Amendment #3, dated February 26, 2012, the number of SKUs for which Actavis Kadian received data was increased to 165 SKUs (12 branded SKUs and 153 branded SKUs). This increase in SKUs increased the monthly fee by $510. (ALLERGAN_MDL_01451452)<br><br>According to Amendment #4, dated August 31, 2012, Actavis Kadian purchased the Market Visibility module. The cost of this module was $4,000 monthly (plus a $10,000 initiation fee). (ALLERGAN_MDL_00041967)<br><br>According to a new Hosted Services Agreement between Actavis LLC and ValueCentric, LLC dated May 24, 2015, Actavis purchased the following modules: ValueTrak SAP-Integrated Order Management System (and 852); Sales Detail (867) with Class of Trade (COT); Market Visibility; and Chargebacks. The cost of these data sets was $46,600 per month (plus a $239,500 initiation fee). (ALLERGAN_MDL_02075683)<br><br>According to my research and understanding, 852 data includes information at the wholesaler or distribution center or product level that allows you to look at days on hand to mitigate potential for stock outs and monitor potential for returns.  867 data monitors sales from distribution centers to pharmacies. |

**MDL 30(b)(6) Deposition - November 2, 2018 Deposition**
**Topic 12**

| Entity | Point of Contact | Type of Data Provided |
|---|---|---|
| Wolters Kluwer | Carol Livingston<br>VP, Customer Operations<br><br>Michelle Woker<br>SVP, Operations & Data Strategy | According to the Second Amendment to Service Agreement between Source Healthcare Analytics, Inc. ("Wolters Kluwer") and Actavis Inc. ("Actavis"), dated March 16, 2009, Actavis purchased Pharmaceutical Audit Suite and Source Projected LaunchTrac data for Kadian®. Source Projected LaunchTrac provides "weekly reports detailing prescriber name, address and specialty as well as prescription activity for requested products (newly launched and mature products). Prescription activity can be rated as high, medium and low or reported with actual prescription counts. Mail Order prescriptions can be integrated into LaunchTrac and Projected LaunchTrac for an additional fee to provide a more complete picture of product performance. . . . Projected Launch Trac is based on a projected data set." The cost for this data was $170,393. (ALLERGAN_MDL_01447763)<br><br>According to the Third Amendment to Service Agreement between Wolters Kluwer and Actavis, dated June 1, 2009, Actavis purchased Projected LaunchTrac for Oxycontin, MS Contin, generic morphine sulfate, Oramorph, Avinza, and Opana ER. The cost for this data was $33,546. (ALLERGAN_MDL_01447774)<br><br>According to the Fourth Amendment to Service Agreement between Wolters Kluwer and Actavis, dated October 1, 2009, Actavis purchased Monthly Source Prescriber Services for Kadian®, Oxycontin, Oxycodone, MS Contin, generic morphine sulfate, Oramorph SR, Avinza, Opana ER, and Embeda. Source Prescriber is "projected prescription information for Client's markets of interest linked to the originating prescriber. The data used for Source Prescriber is based on the projection of Pharmacy Terminal Data collected by SHA Source MailMax mail order data can be integrated into Prescriber deliverables for an additional fee, or delivered as a separate Mail Order only Prescriber deliverable for an additional fee. Data is summarized by product and market and reported at the Prescriber level." There was no additional cost for this data. (ALLERGAN_MDL_01447783)<br><br>According to the Fifth Amendment to Service Agreement between Wolters Kluwer and Actavis, dated January 4, 2010, Actavis stopped purchasing Monthly Source Prescriber Services for any drug other than Kadian® and Embeda. (ALLERGAN_MDL_01447792)<br><br>According to the Sixth Amendment to Service Agreement between Wolters Kluwer and Actavis, dated June 8, 2010, Actavis purchased Monthly Source Prescriber Services for Kadian®, Embeda, Avinza, Opana ER, Exalgo, Oxycontin, oxycodone, MS Contin, |

**MDL 30(b)(6) Deposition - November 2, 2018 Deposition**
**Topic 12**

| Entity | Point of Contact | Type of Data Provided |
|--------|------------------|------------------------|
|  |  | morphine sulfate, and Oramorph. There was no additional cost for this data. (ALLERGAN_MDL_01897634)<br><br>According to the Eighth Amendment to Service Agreement between Wolters Kluwer and Actavis, dated March 21, 2011, Actavis purchased one-time Dynamic Claims ad hoc reports. The Dynamic Claims database "offers an adjudicated pharmacy claim rather than patient view. In addition to co-payments paid, total patient out of pocket expense, and payer reimbursement to pharmacy, [the Dynamic Claims database] offers claim approval, reversal and rejection rates along with the reason claims were rejected. . . . [The Dynamic Claims database] captures each electronic transaction or message between the processor / payor and the pharmacy . . . ." There was no additional cost for this data. (ALLERGAN_MDL_00404839) |