UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE:  NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*TRACK ONE CASES* | MDL No. 2804<br><br>CASE NO. 1:17-md-2804<br><br>JUDGE DAN AARON POLSTER<br><br>MAGISTRATE JUDGE DAVID A. RUIZ |

<u>**ENDO DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY**</u>

**I.  An Alleged Appearance of Impropriety is Not Grounds for Disqualification.**

Plaintiffs urge the Court to disqualify Ms. Rendon even in the absence of an ethical violation. Reply Br. at 3.  But it is well-settled law that an alleged appearance of impropriety is not a basis for disqualification.  Plaintiffs flirt with a Rule 3.3 violation (Candor to the Tribunal) to suggest otherwise.

When the ABA Commission on Evaluation of Professional Standards replaced the Model Code with the Model Rules of Professional Conduct, they did away with the appearance of impropriety standard altogether.[1]  Most states adopting the Model Rules, including Ohio, followed suit.[2]  Now in all but a handful of holdout jurisdictions, the appearance of impropriety standard is

---

[1] *See Worley v. Moore*, 370 N.C. 358, 368, n.8 (2017) (noting that the ABA Commission viewed the standard as "no longer helpful to the analysis of questions arising under" the rules).

[2] *See*, *e.g*., *State v. Cornick*, 8th Dist. Cuyahoga No. 99609, 2014-Ohio-2049, ¶ 7 (standard inapplicable to attorneys after state's adoption of Model Rule); *O'Brien v. Brunner*, No. 2:15-cv-2803, 2016 WL 1059683, at *3 (S.D. Ohio Mar. 17, 2016); *Worley*, 370 N.C. at 368; *Marcum v. Scorsone*, 457 S.W.3d 710, 71718 (Ky. 2015); *City of Atlantic City v. Trupos*, 201 N.J. 447, 464 (2010) (discussing elimination of standard during state's overhaul of rules); *Armor Screen Corp. v. Storm Catcher, Inc*., 709 F. Supp. 2d 1309, 1320 (S.D. Fla. 2010) ("[A]ppearance of impropriety does not qualify as an independent ground for disqualification"); *Wade v. Nationwide Mut. Fire Ins. Co*., 225 F. Supp. 2d 1323, 1331 (S.D. Ala. 2002) (disqualification of counsel "can no longer be grounded on an appearance of impropriety" because the applicable Professional Conduct Rules "deleted their provisions concerning the appearance of impropriety in favor of the more precise rules governing client confidences, conflicts of interest and other matters.").

extinct.[3]

Plaintiffs know this. Linda Singer, who signed Plaintiffs' Reply Brief, argued this point when she herself faced potential disqualification:

> Where a jurisdiction has adopted the Model Rules, the Model Code no longer applies. *Waters v. Kemp*, 845 F.2d 260, 265 (11th Cir. 1988) (rejecting appearance of impropriety as basis for disqualification where Model Rules were adopted); *Harker v. Comm'r of Internal Rev.*, 82 F.3d 806, 808-09 (8th Cir. 1996) (same). In *Waters*, the court rejected the argument that counsel should be disqualified for an appearance of impropriety because "Model Rules 1.10 and 1.11 eliminate the appearance of impropriety approach to disqualification."

Response of the City of Chicago, Linda Singer, and Cohen Milstein Sellers & Toll PLLC in Opposition to the Purdue Defendants' Motion to Disqualify at 21, *City of Chicago v. Purdue Pharma L.P., et al.*, No. 1:14-cv-04361 (N.D. Ill. Sept. 8, 2014) (Doc # 139). As Ms. Singer further argued, cases that rely on "Canon 9's appearance of impropriety standard are therefore inapposite." *Id.* at 22.

Plaintiffs have not identified a single case disqualifying counsel without a rule violation. Nor can they. Under modern Ohio law, disqualifying counsel based on an appearance of impropriety is reversible error. *State v. Cornick*, 8th Dist. Cuyahoga No. 99609, 2014-Ohio-2049, ¶ 7. Ohio is not alone on this issue—it is the majority view. *See* Charles W. Wolfram, *Former-Client Conflicts*, 10 GEO J. LEGAL ETHICS 667, n.35 (1997) ("Almost every scholarly analysis of the 'appearance' standard has disapproved of its use as an independent basis for finding conflict.").

None of the cases Plaintiffs cite in their Reply suggest that the Court could disqualify without a rule violation. In both *Bank of New York v. Aponte*, 7th Dist. Mahoning No. 12 MA 125, 2013-Ohio-4360, ¶ 23, and *NexGen Energy Partners, LLC v. Reflecting Blue Tech., Inc.*, 94 N.E.3d 924, 2017-Ohio-5855, ¶ 45 (11th Dist.), the court found affirmative violations of Rule 1.9, among others. Moreover, *Bank of New York* (which pre-dates *Cornick*) relies exclusively on *Kala v. Aluminum*

---

[3] Lisa R. Hasday, American Bar Association, *Appearance of Impropriety Insufficient For Disqualification* (2015), available at https://www.americanbar.org/groups/litigation/publications/litigation-news/top-stories/2015/appearance-of-impropriety-insufficient-for-disqualification/.

2

*Smelting & Ref. Co., Inc*., 81 Ohio St.3d 1, 688 N.E.2d 258 (1998) in its discussion of an appearance of impropriety.  But as noted in Plaintiffs' other case, *NexGen Energy*, *Kala* was superseded by the Ohio Rules of Professional Conduct.  *NexGen Energy*, 2017-Ohio-5855 at ¶ 28.  And *NexGen Energy* never even considers whether the appearance of impropriety standard applies—it merely concludes that because Rules 1.9 and 1.10 had been violated, there was an appearance of impropriety.  *Id*. at ¶ 45–50.[4]

The current Rules of Professional Conduct explicitly reject the very standard Plaintiffs now ask this Court to apply because the standard "gives no specific guidance to former government lawyers."  Prof. Cond. Rule 1.11, cmt. 10.  Plaintiffs cite no authority that would permit the Court to resurrect this long-dead standard.

## II.     Plaintiffs Still Have Not Established Any Rule Violation.

### A.     "Plaintiffs' response to the opioid crisis within their jurisdictions" is not a disqualifying matter.

Plaintiffs now claim that the "matter" that Ms. Rendon previously worked on is "Plaintiffs' response to the opioid crisis within their jurisdictions."  Reply Br. at 4.  In particular, Plaintiffs point to her work on and then leadership of a community Task Force that included a variety of private citizens and a television news station.[5]  The Task Force provided input on policies and procedures that Plaintiffs claim they followed.  Reply Br. at 8.  Plaintiffs cite no authorities that apply Rule 1.11(a) to such conduct; nor can they.  The comments to Rule 1.11(a) of the Ohio Rules of Professional Conduct make clear that there must be "two particular matters" for there to be a Rule 1.11(a) violation.  "Plaintiffs' response to the opioid crisis within their jurisdictions" is not a

---

[4] The issue in *NexGen Energy* was whether a law firm can avoid a conflict of interest by "screening an attorney in its firm who switched sides after having substantial responsibility for representing an adverse party in the same action." 2017-Ohio-5855 at ¶ 1.  Ms. Rendon never represented any of the adverse parties in this case.

[5] *See* U.S. Attorney's Office, Northern District of Ohio, *The U.S. Attorney's Heroin and Opioid Task Force*, available at https://www.justice.gov/usao-ndoh/heroin-epidemic, last accessed February 2, 2019 (listing participants).  Parker Dec. Ex. A.

3

particular matter—it is policy-making, and not disqualifying.

The Justice Department plainly agrees that involvement in the Task Force is not a "matter." Justin Herdman is recused from consideration of *Touhy* requests in this case "based on his prior employment at Jones Day and his prior representation of Defendant Cardinal Health" on similar matters. Parker Dec. Ex. B. Yet, his prior representation of a defendant in the Track One cases on similar matters does not disqualify Mr. Herdman from presiding over the Task Force, which he publicly does in the same manner as Ms. Rendon once did.

"It is well established that rule-making and policy-making activities do not constitute a 'matter' . . . for the purposes of disqualifying counsel from a subsequent private lawsuit, and they do not become so unless the activity is narrow in scope and is confined to specified issues and identifiable parties such that it may be properly characterized as 'quasi-judicial' in nature." *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 34 (D.D.C.1984); *accord Nat'l Bonded Warehouse Ass'n, Inc. v. United States*, 718 F. Supp. 967, 97172 (C.I.T.1989) (citing *Laker* for same proposition). The Court in *Laker* went on to hold that the counsel's prior participation (as the Director of the BIA) in certain international discussions and negotiations did not constitute a "matter" because those discussions were "broad, policy-oriented activities." 103 F.R.D. at 37.[6]

Secondary sources are in accord. One leading treatise explains:

> When advising government officials involved in rulemaking activities, for example, or general government policy, a government lawyer must deal in broad principles and make assumptions about how the rules or policy will or ought to apply across a broad range of future circumstances; there is little opportunity to favor or disfavor private parties as yet unknown. For [this and other] reasons . . . it is relatively 'safe' to permit former government lawyers to participate in later

---

[6] This interpretation of "matter" is consistent with the definition used in the federal revolving door rules, which explicitly state that "[m]atters of general applicability [are] not covered" under the revolving door statute. 5 C.F.R. § 2641.201(h)(2)(West 2010). The regulation continues: "Legislation or rulemaking of general applicability and the formulation of general policies, standards or objectives, or other matters of general applicability are not particular matters involving specific parties." Subsection (h)(2) offers an illustrative example: "An employee of the National Science Foundation formulated policies for a grant program for organizations nationwide to produce science education programs targeting elementary school age children. She is not prohibited from later representing a specific organization in connection with its application for assistance under the program."

4

>matters that begun as rulemaking proceedings or policy development, as opposed to discrete 'matters' in the narrow sense.

1 Geoffrey C. Hazard Jr. et al., *The Law of Lawyering* § 16.05 (4th ed. 2015 Suppl.).

None of Plaintiffs' authorities suggest otherwise. *Gen. Motors Corp. v. City of New York*, 501 F.2d 639, 651 n.22 (2d Cir.1974), applied the "appearance of evil" standard (which predates the now defunct appearance of impropriety standard) and disqualified where a former DOJ attorney, in the hopes of collecting a contingency fee, filed a nearly identical complaint against the same defendants he had investigated and sued as a DOJ lawyer. The two actions were the same matter because "virtually every overt act of attempted monopolization alleged in the City's complaint is lifted in haec verba from the Justice Department complaint." *Id*. at 650.

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd*., No. 10-1067-LPS, 2011 WL 2692968 (D.Del. June 22, 2011), is also inapposite. In *Checkpoint*, the Court disqualified a law firm for a Rule 1.9 violation (Duties to Former Clients), because the law firm in question handled all of Intellectual Ventures ("IV")'s intellectual property work for a period of six years, billing more than $2.6 million and involving more than 20 partners. *Id.* at *3, *11. After dropping IV as a client, the firm then sought to represent a defendant in a patent prosecution matter brought by IV. *Id.* at *4. In contrast, as Plaintiffs concede in their Reply, they have never been clients of Ms. Rendon.

Grasping at straws, Plaintiffs seize on the words "controversy" and "investigation" to argue that their response to the opioid crisis is somehow a "matter." But even those terms are inapplicable to the actual conduct Plaintiffs describe. Ms. Rendon's work chairing the Task Force was not a "controversy" involving "specific parties"—there was nothing quasi-judicial about it. And Plaintiffs identify no specific "investigation" that Ms. Rendon conducted. *Cf. In re Sofaer*, 728 A.2d 625, 646–47 (D.C. 1999) (noting that it could not define the matter as "terrorism, or even Libyan terrorism. Such broad definitions of the 'matter' here would be analogous to defining the 'matter' in

5

*Brown*[7] as the property at issue, or the developer's goal of maximizing the value permitted under the zoning laws applicable to the property. . .. In contrast, the bombing of Pan Am 103 is a discrete event, and the legal activities flowing from the government's efforts to address it are an isolatable set of transactions.")  Plaintiffs have not identified any discrete event.  "Plaintiffs' response to the opioid crisis within their jurisdictions" is more akin to "Libyan terrorism," than it is to the bombing of Pan Am 103, and is thus not a matter for Rule 1.11(a) purposes.

Even if "Plaintiffs' response to the opioid crisis within their jurisdictions" could possibly be considered a matter, it is not the same matter as any of the Track One cases.  During Ms. Rendon's time as U.S. Attorney, Plaintiffs' response to the opioid epidemic never involved the investigation or prosecution of any opioid distributors or manufacturers.  If Plaintiffs' novel theory were true, then government attorneys would be unemployable in the private sector and Ms. Rendon would be barred from handling innumerable types of cases including human trafficking, public corruption, cyber security, child pornography and others.  Likewise, attorneys moving from private practice into the public sector would be barred from fulfilling their everyday duties.  Plaintiffs' interpretation of Rule 1.11(a) makes no sense.

### B. Information shared with the Task Force is not confidential government information.

According to Plaintiffs, "[t]he Opioid Task Force, which Ms. Rendon formed and chaired, was the forum where all the knowledge about the opioid crisis was shared." Reply Br. at 8.  On this statement alone, Plaintiffs' Rule 1.11(c) claim fails.[8]

Information shared with the Task Force is not confidential government information.  Task

---

[7] *Brown v. Dist. of Columbia Bd. of Zoning* Adjustment, 486 A.2d 37 (D.C. 1984).  Another case cited in Plaintiffs' Opening Brief, *Brown* further illustrates this point.  There, the court refused to disqualify counsel for a real estate developer who worked as a government lawyer on three separate matters involving the same parties and same parcel of real estate.

[8] Despite more than 40 pages of briefing, Summit County and Akron have not even attempted to identify any information Ms. Rendon is purported to possess that constitutes "confidential government information" she received from either of these Plaintiffs.  The Court should deny disqualification in their cases on the briefs alone.

Force membership includes: representatives from ADAMHS Board, Cleveland Clinic Foundation, Cleveland Division of Police, Cuyahoga County Board of Health, Cuyahoga County Court of Common Pleas, MetroHealth Medical Center, Orca House, Robby's Voice, St. Vincent Charity Medical Center, University Hospitals, VA Medical Center, WKYC Channel 3 News, and private individuals like Aaron Marks, a member of the recovery community.[9]

A narrow or hyper-technical reading of the Rule is not necessary to conclude that information shared with this broad group of non-profits, private citizens, and a news channel cannot possibly qualify as confidential government information. Plaintiffs point to no specific confidential government information and concede that what they are talking about is the information Ms. Rendon may have gleaned from her work with the Task Force.

Tellingly, Plaintiffs make no attempt to apply the actual language of Rule 1.11(c) to their factual allegations. They have not identified any information that is supposedly confidential government information. Nor do they dispute that anything Ms. Rendon might possibly have gleaned, that is pertinent to these cases, has or should have been produced in discovery. And they point to no authorities that would prohibit the United States government from disclosing (the unidentified) "confidential" government information. Unable to establish any rule violation, Plaintiffs offer no legitimate basis on which to disqualify Ms. Rendon.

Plaintiffs' authorities offer no support. Plaintiffs rely on *Dugar v. Bd. of Educ. of City of Chicago, Dist. 299* to argue that Ms. Rendon has "confidential government information" about them. No. 92 C 1621, 1992 WL 142302 (N.D. Ill. June 18, 1992).[10] But in that case, unlike this one, the

---

[9] See Department of Justice press release announcing "U.S. Attorney's Heroin and Opioid Task Force recognized with Attorney General's Award" for Outstanding Contributions to Community Partnerships for Public Safety and listing participants. Available at https://www.justice.gov/usao-ndoh/pr/us-attorneys-heroin-and-opioid-task-force-recognized-attorney-generals-award, last accessed on February 2, 2019.

[10] Plaintiffs also continue to cite to *United States v. Villaspring Health Care Ctr., Inc.*, No. 3:11-43-DCR, 2011 WL 5330790 (E.D. Ky. Nov. 7, 2011), but that case is likewise distinguishable. There, a court ordered the disqualification of defense counsel in a federal lawsuit that grew out of a state investigation of the very same parties led by the very same lawyer. The facts here are in no way analogous: Ms. Rendon never investigated the companies that are now her clients. Also, to the extent *Villaspring* applies the appearance of impropriety standard, it

attorney brought a class action against her former client, and the former client proved that the attorney knew attorney-client privileged information concerning the same subject matter as the lawsuit. *Id*. at *5. Plaintiffs do not, and could not, point to any such information here—Ms. Rendon has never represented them. By definition, the "discussions, ideas, and analyses" that Plaintiffs allegedly shared with Ms. Rendon could not be privileged, and thus *Dugar* is inapposite.

### III. Plaintiffs' Waiver.

Plaintiffs' position on waiver merits only two brief points. First, Plaintiffs concede that the alleged Rule 1.11 violations are waivable by the U.S. government—*i.e.*, that Plaintiffs' Motion could be mooted by a letter from the Department of Justice waiving Ms. Rendon's participation in these cases. Second, even if Plaintiffs cannot waive for the United States government, they can waive a conflict for themselves. Put differently, if Plaintiffs have substantive rights, those rights can be waived. In fact, Plaintiffs were willing to do just that when they attempted to settle "the conflict." Reply Br. at 14. Nothing Plaintiffs cite in their reply brief suggests otherwise.

### IV. CONCLUSION

Plaintiffs cling to their appearance of impropriety argument and call Endo "hyper-technical" because the Plaintiffs cannot establish any rule violation. It is not "hyper-technical" to ask the Court to apply the applicable rules to the actual facts. It is the minimum that justice requires.

Respectfully submitted,

*/s/ John D. Parker*
John D. Parker (0025770)
Carole S. Rendon (0070345)
Tera N. Coleman (0090544)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000

---

was abrogated by *Marcum v. Scorsone*, 457 S.W.3d 710, 717–18 (Ky. 2015), in which the Kentucky Supreme Court joined the majority view and rejected the appearance of impropriety standard.

8

Cleveland, OH  44114-1214
Telephone:    216.621.0200
jparker@bakerlaw.com
crendon@bakerlaw.com
tcoleman@bakerlaw.com


Jonathan L. Stern
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
(202) 942-5000
Jonathan.Stern@arnoldporter.com

Sean Morris
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
Sean.Morris@arnoldporter.com

Attorneys for the Endo Defendants

9

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 4, 2019, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system and will be served via the Court's CM/ECF filing system on all attorneys of record.

DATED: February 4, 2019  */s/ John D. Parker*
John D. Parker