IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>*All Track One Cases* | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**DEFENDANTS AMERISOURCEBERGEN DRUG CORPORATION
AND McKESSON CORPORATION'S
POSITION STATEMENT CONCERNING THE MOTION TO
DISQUALIFY CAROLE RENDON**

**I.      PRELIMINARY STATEMENT**

The proliferation of tactical and abusive motions to disqualify opposing counsel has caused courts to treat them with suspicion, especially when the ethics rules are being used as a sword. That is the case here. Disqualification of counsel is drastic and thus is disfavored and should occur only where there is a clear risk of immediate and tangible harm to the movant. That is all the more true when the subject of the motion is a highly respected lawyer with an impeccable reputation for integrity and professionalism and who has devoted years of her career to public service. Disqualification is particularly disfavored when the matter addresses critical issues of public importance and great public interest.[1]

The City of Cleveland ("Cleveland") contends that it "recognizes the gravity of [its] request [for disqualification] but it is compelled to do so under the circumstances … ." Memorandum at

---

[1] There is no question that the outcome of Plaintiff City of Cleveland's Motion to Disqualify Carole Rendon ("Motion") will have an effect on every party to this matter. This is perhaps best exemplified by the fact that the City of Akron and Summit County have joined in the Motion even though they make no claim that their own "confidential governmental information" is at risk.  ECF No. 1246.  (*See also* Cleveland's Memorandum of Points and Authorities in Support of Motion to Disqualify Carole Rendon, ECF No. 1237 ("Memorandum") at 4) (listing members of the Opioid Task Force and identifying witnesses with whom Ms. Rendon allegedly interacted.)

1. Despite this assertion, review of Plaintiffs' arguments under controlling law establishes there are no circumstances that compel disqualification. Indeed, neither the facts nor the law support disqualification.

- Plaintiffs' allegation that Ms. Rendon "switched sides" is flat wrong. (*See, e.g.*, Memorandum at 14.)

- There is no merit to Plaintiffs' assertion that past adversity is a bar to current adversity.

- Plaintiffs try to lower the very high burden their Motion places on them by asking this Court to apply the wrong legal standards.

- Plaintiffs have not carried their burden of proof to demonstrate that Ms. Rendon possesses "confidential government information" or that she is using any "confidential government information" to their detriment.

- Plaintiffs' Motion – even if it contained meritorious arguments, which it does not – is too late. Plaintiffs' Memorandum does not rely on a single fact that they did not know or have the ability to know the day Ms. Rendon entered her appearance.

Defendants AmerisourceBergen Drug Corporation and McKesson Corporation do not intend to present arguments or authority redundant of The Endo Defendants' Brief in Opposition to the Motion to Disqualify Carole Rendon, ECF No. 1296 ("Opposition"). Rather, they offer supplemental authority and arguments further demonstrating why Plaintiffs' Motion is ill-founded – indeed, an effort to hammer a square peg into a round hole – and, if granted, will have a negative effect on not just this case, but the entire Cleveland legal community, and beyond.

**II.     POINTS AND AUTHORITIES**

    **A.     Ms. Rendon Did Not Switch Sides**

Justice Brennan opined in 1985 that "the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern litigation." *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 441 (1985) (Brennan, J., concurring). He went on to say: "When a trial court mistakenly disqualifies a party's counsel as a result of an abusive

disqualification motion, the court in essence permits the party's opponent to dictate his choice of counsel." *Id*. Because of the serious stakes involved on motions to disqualify, it is imperative that movants be scrupulously accurate on the facts and avoid hyperbole or license in their arguments.

Plaintiffs Memorandum repeatedly makes the explicit allegation that Ms. Rendon has somehow "switched sides" (*see, e.g.*, Memorandum at 14) and also contains innuendo to the same effect. (*See generally* Memorandum.) Side-switching occurs when an attorney takes on a new client adverse to a former client. *See Harper v. Everson,* No. 3:15-CV-00575-JHM, 2016 WL 9149652, at *4 (W.D. Ky. May 5, 2016) (quoting *Kala v. Aluminum Smelting & Ref. Co.*, 81 Ohio St.3d 1, 12, 688 N.E. 2d 258, 1998-Ohio-439 (Ohio 1998) (side-switching occurs "where an attorney leaves his or her former employment and becomes employed by a firm representing an opposing party.") (internal quotation marks omitted).

While employed by the Department of Justice ("DOJ") in the U.S. Attorney's Office for the Northern District of Ohio, Ms. Rendon's sole client was the United States. Plaintiffs do not claim that Ms. Rendon ever entered into an attorney-client relationship with a single one of them. Indeed, Cleveland, the initial movant, implicitly concedes that Ms. Rendon was adverse to it in the past. Because Ms. Rendon did not represent any of the Plaintiffs, she cannot be said to have switched sides against them. Yet, Plaintiff declares she has switched sides – an undeserved professional smear in a paper filed in this Court, which was widely and publicly disseminated in articles in the *Plain Dealer* and *Law 360*. *See* attached Exhibit A. Ms. Rendon and, by extension, Baker and Hostetler, don't deserve this, as they have done nothing wrong to warrant a request that they be disqualified.

### B. Past Adversity Presents No Bar to Current Adversity

Cleveland relies on information Ms. Rendon purportedly gained in pursuing an investigation into the Cleveland Division of Police's unconstitutional use of excessive force as a

lever to avoid facing her again as *adverse* counsel.  The idea that past adversity could prevent future adversity has never been the rule.  Under the Plaintiffs' disqualification theory, if a civil rights lawyer successfully sued a police department for violation of a client's rights, that lawyer would be deemed to have gained inside information that disqualifies her from ever bringing an adverse claim against that department again.  Similarly, Plaintiffs' argument would disqualify a medical malpractice lawyer who successfully sued a hospital from serving as counsel in future wrongful death suits against the same hospital.  These results are absurd – and that is why no disciplinary rule says that knowledge acquired during a prior adversity is a basis to disqualify a lawyer from future adversity.  Thus, in the end, Plaintiffs' reliance on prior adversity as a basis to disqualify Ms. Rendon only underscores the weakness in their position.

### C. Plaintiffs Ask the Court to Apply the Wrong Legal Standard

Plaintiffs' motion is just as flawed on the law as it is on the facts.  Plaintiffs' request is not built on the controlling legal standards, and instead invites this Court to apply inaccurate and/or incomplete standards.  Here are just a few examples:

- An appearance of impropriety is *not* a basis for disqualification under Ohio law. (*See* Prof. Cond. R. 1.11 and Opposition at 3–5).

- The term "matter" is far more narrowly defined than Plaintiffs claim.  (*See* Prof. Cond. R. 1.11(e) and Opposition at 7–8).

- Under Ohio law, a matter as defined in Prof. Cond. Rule 1.11(e) must be the "same" not "substantially similar" to trigger disqualification.  (*Compare* Prof. Cond. R. 1.11(a) and Opposition at 9–10).

Critical public policies underlie the narrow and specific terms of Prof. Cond. R. 1.11.  The Professional Conduct Rules strike a careful balance between important and competing interests.  *See* Prof. Cond. R. 1.11, cmt. 4 ("[T]he rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and

from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards.").

Plaintiffs' request for disqualification of Ms. Rendon due to a supposed appearance of impropriety standard is based on an outdated statement of Ohio law. Prior to the Ohio Supreme Court's adoption of the Rules of Professional Conduct in 2007, DR 9-101(B) of the Code of Professional Responsibility included an "appearance of impropriety" standard. The 2007 Code, however, eliminated that standard.[2]

There are sound reasons why the vague "appearance" standard has been almost universally rejected. As Thomas G. Wilkinson, a former co-chair of the Conflicts of Interest Subcommittee of the ABA's Section of Litigation's Ethics and Professionalism Committee has commented: "The appearance standard is too subjective and amorphous to serve as a meaningful guide to assess a lawyer's conduct or to impose the serious sanction of disqualification. . . ." *Id.* Wilkinson went on to note that there is no risk of an increase of improper representations as a consequence of the revision. "States can afford to do away with the appearance standard because there almost always is a specific rule on point to redress conduct that would objectively be viewed as presenting an appearance of impropriety." *Id.*

If there are no clear-cut, easily discernable standards to determine whether or not an ethical conflict exists, it is not hyperbole to say granting a motion like this one threatens chaos and uncertainty. In the present landscape, lawyers fluidly move from firm to firm and back and forth between public service and private practice. Every time a move is made, conflict checks are run

---

[2] Moreover, disqualification based on an appearance of impropriety has been ***rejected*** by virtually every state in this country. "[O]nly a few states, including Arkansas, Indiana and West Virginia still apply the appearance of impropriety doctrine." Lisa R. Hasday, American Bar Association, *Appearance of Impropriety Insufficient For Disqualification* (2015), *available at* https://www.americanbar.org/groups/litigation/publications/litigation-news/top-stories/2015/appearance-of-impropriety-insufficient-for-disqualification/.

- 5 -

and, as necessary, ethical walls are constructed and observed. As a consequence, many different clients benefit from a lawyer's talents and expertise. The process depends on clear, objective rules and the certainty that flows from them. Should Plaintiffs' formulation of vague and amorphous subject matter conflicts untethered to *specific* matters and *specific* parties become the rule, many very fine lawyers will question whether a career in government service is worth the chilling effect that it may have on the rest of their careers.

### D. Plaintiffs Have Failed to Demonstrate that Ms. Rendon Possesses Confidential Governmental Information

Plaintiffs contend Ms. Rendon's possession of confidential government information threatens them with harm. While they acknowledge that they bear the burden of proof on this issue, they have not carried that burden. The linchpin for disqualification under Prof. Cond. R. 1.11(c) is the existence of "confidential government information." The rule defines "confidential government information" as "information that has been obtained under government authority and that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public." Prof. Cond. R. 1.11(c).

The exhibits that the City of Cleveland submitted do not demonstrate that Ms. Rendon acquired information concerning plaintiffs' claims "under government authority," or that the information she acquired is "prohibited by law" from disclosure, is covered by any legal privilege, or "is not otherwise available to the public." Nor do the declarations submitted by the city in support of its motion satisfy these requirements. Instead, Plaintiffs rely on publicly available information which Plaintiffs themselves have turned over to Defendants in discovery. Material produced freely in discovery is obviously not evidence of a threat of improper use of confidential government information by opposing counsel.

### E. Plaintiffs Have Known About the Facts on Which the Motion Is Based Since Inception of This Case

Ms. Rendon has been counsel in this matter since June 2017 and has served in her role as Court-appointed liaison counsel for the Manufacturer Defendants since December 2017. It is well-settled that "any delay between the time the movant learns of the lawyer's misconduct and the filing of the motion to disqualify often results in a 'waiver' of the movant's right to seek disqualification." Keith Swisher, *The Practice and Theory of Lawyer Disqualification*, 27 Geo. J. Legal Ethics 71, 89 (Winter, 2014).

In seeking to disqualify Ms. Rendon a year after the Court appointed her (without objection) as liaison counsel for the Manufacture Defendants, Plaintiffs rely entirely on documents produced by *them* in discovery and *their own* witnesses' assertions – information that was known to them even before they filed suit. Plaintiffs cite no newly discovered evidence. They and their declarants knew every fact on which their disqualification motion is based on the day Ms. Rendon entered her appearance as counsel in this matter. Every day Plaintiffs waited to bring their Motion increased the significant harm and disruption resulting from Ms. Rendon's disqualification. Even if Plaintiffs had presented a legitimate basis to disqualify Ms. Rendon – which they have not – their decision (strategic or otherwise) they waived this issue by sitting on it for more than a year.

### III. CONCLUSION

Motions to disqualify counsel are subject to scorching scrutiny both because of: (1) their effect on counsel and his/her clients; and (2) the potential for their abuse, especially when the ethics rules are used as swords. No motion to disqualify should be filed unless it has a solid basis both in fact and law. Plaintiffs' Motion to Disqualify Carole Rendon has neither, and it should be denied.

- 8 -

Dated: February 4, 2019                               Respectfully submitted,

/s/ Robert A. Nicholas                               /s/ Michael N. Ungar
Robert A. Nicholas                                    Michael N. Ungar
Shannon E. McClure                                    **ULMER & BERNE LLP**
**REED SMITH LLP**                                    1660 West 2nd Street, Suite 1100
Three Logan Square                                    Cleveland, OH  44113
1717 Arch Street, Suite 3100                          Tel: (216) 583-7000
Philadelphia, PA  19103                               Fax: (216) 583-7001
Tel: (215) 851-8100                                   mungar@ulmer.com
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
                                                      /s/ Geoffrey E. Hobart
*Counsel for AmerisourceBergen*                       Geoffrey E. Hobart
*Corporation and AmerisourceBergen*                   Mark H. Lynch
*Drug Corporation*                                    **COVINGTON & BURLING LLP**
                                                      One City Center
                                                      850 Tenth Street NW
                                                      Washington, DC  20001
                                                      Tel: (202) 662-5281
                                                      Fax: (202) 662-6291
                                                      ghobart@cov.com
                                                      mlynch@cov.com

                                                      *Counsel for McKesson Corporation*

- 9 -

## **CERTIFICATE OF SERVICE**

I, Michael N. Ungar, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

                                            */s/ Michael N. Ungar*

                                            *Counsel for McKesson Corporation*