UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804**<br>**CASE NO.: 1:17-MD-2804**<br>**Judge Dan Aaron Polster** |

*THIS DOCUMENT RELATES TO ALL CASES*

## Defendant Kroger's Motion to Modify CMO-1 to Provide a Mechanism to Dismiss Improperly Named Defendants

Early in this multidistrict litigation, the Court implored all parties to "focus [their] efforts on abatement and remediation of the opioid crisis rather than pointing fingers and litigating legal issues." Doc. No. 70 at 1. Additionally, the Court has instructed parties that it will not entertain substantive filings, placing a moratorium on motions addressing legal questions. *See* Doc. No. 4 at 4; Doc. No. 70 at 2; Doc. No. 1071 at 1. With those instructions in mind, Defendant Kroger (which includes The Kroger Company, Kroger Limited Partnership I, and Kroger Limited Partnership II) moves for a modification of the Court's Case Management Order One (CMO-1) in an effort to resolve threshold jurisdictional issues that will disencumber this mass litigation, streamline key issues, save time and effort of the parties and Court, and move cases toward a resolution.[1]

In this motion, Kroger respectfully seeks to amend CMO-1 to provide deadlines for plaintiffs to dismiss a limited set of distributor defendants: 1) defendants who are named in error by plaintiffs located where the defendant has or had no physical or business presence during the

---

[1] Defendants HBC Service Company, Discount Drug Mart, Inc., and Rite Aid of Maryland, Inc., join in this Motion.

relevant time period; and 2) defendants who are named by plaintiffs located where the defendant is responsible for no more than 5% of the market share of opioids distributed.  In CMO-1, the Court set forth deadlines to proceed with briefing on threshold legal issues as to a selection of cases.  This motion requests an amendment to that order to include a similar management schedule for the threshold legal issues discussed herein.

In ordering disclosure of ARCOS data, this Court recognized the interest in "allowing both the litigation and settlement tracks of this MDL to proceed based on meaningful, objective data, not conjecture or speculation."  *See* Second Order Regarding ARCOS Data p. 2 (May 8, 2018) (Doc. No. 397).  The Court has further expressed its intention with regard to the ARCOS data for plaintiffs to "amend their complaints to properly name various entities who *should* be named as defendants and also to remove claims against defendants who should *not* be named."  *See* Doc. No. 739 at 1 (internal quotations omitted).  On January 18, 2019, the Court entered an order clarifying an earlier amendment to CMO-1 that extended the time in which "Non-Track One and Motions Plaintiffs" may amend their complaints to March 16, 2019.  *See* Doc. No. 1282.  Although these cases are stayed other than the cases selected for Track Two, the affected defendants are encumbered by the obligations and expenses of litigation.  While plaintiffs are free to add defendants to their complaints, Kroger asks in fairness that it be heard on the rational and prudent limitation and elimination of defendants that will ultimately preserve resources and have a large impact in moving this mass litigation forward.  Further, this request comports with the Court's intention to assure that claims are asserted against only the appropriate defendants.

    **I.**    **Kroger Requests that the Court Impose a Deadline for Dismissal of Defendants with No Presence in Plaintiff Locality**

The current tally of cases in this multidistrict litigation is over 1500. Kroger is a named defendant in many of these matters. In each of these complaints, the plaintiff, a local government entity, or locality,[2] asserts various claims against Kroger primarily as a distributor of prescription opioids. In many of these cases Kroger anticipates moving to dismiss or remand based on substantive legal arguments to be made at the appropriate time as the Court determines. However, in at least 100 of these cases, Kroger is a named defendant in a locality where there is simply no Kroger or Kroger-owned pharmacy. Thus, Kroger is over-represented as a defendant in at least 100 cases.[3] This erroneous pleading and over-representation results in a waste of time, money, and resources, and violates Rule 53(a)(3) of the Federal Rules of Civil Procedure. Rule 53(a)(3) requires the Court, in appointing a master to assist in this complex litigation, to consider "the fairness of imposing the likely expenses on the parties" and requires the Court to "protect against unreasonable expense or delay."[4] As a result of Kroger being erroneously named in over 100 cases, Kroger is paying an inflated and arbitrary portion of the Special Master fees. Additionally, until Kroger is dismissed from actions that clearly have no jurisdictional basis for

---

[2] The plaintiffs in this mass litigation include towns, cities, and various communities united by a central form of local government. This motion refers to these plaintiffs as "localities" to convey the relevant point that they encompass a distinct area limited by identifiable boundaries.

[3] Rite Aid of Maryland, Inc., is similarly improperly named in at least 65 cases. HBC Service Company and Discount Drug Mart, Inc., also named as distributors, are similarly improperly named in at least one complaint.

[4] Moreover, under Rule 11 of the Federal Rules of Civil Procedure, there must be a reasonable factual basis for the claims against each defendant. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact[.]"). Plaintiffs have failed to satisfy this rule when they have wholesale copied-and-pasted claims and defendants from one master complaint without an individualized basis for support. *See Roth v. Green*, 466 F.3d 1179, 1189 (10th Cir. 2006) (affirming Rule 11 sanctions against plaintiff where "the majority of the defendants named in the complaint had, at best, only tangential relationships to the [harm alleged], and thus were not properly named as defendants in the complaint").

naming Kroger as a defendant, Kroger is impeded from engaging in meaningful settlement discussions.

This issue should be resolved promptly to avoid further waste. Moreover, this threshold jurisdictional and pleading issue can be remedied easily, and its resolution would advance the Court's goals of focusing on the substantive issues at hand.

In each of the complaints naming Kroger as a defendant, Kroger is alleged to have caused various harms to a city, county, or town due to over-distribution of opioids. In the cases where Kroger is improperly named as a defendant—where it had no pharmacy and thus no distribution in the plaintiff locality—the Court should impose a mechanism to dismiss Kroger and other similarly situated defendants outright. This mechanism would require a deadline by which affected defendants could file a single motion to dismiss based on the complete lack of a pharmacy in the locality and timeframe subject to the complaint. The affected plaintiffs would then have an opportunity to agree to dismissal, or respond to this limited and isolated question of standing and jurisdiction.[5]

Article III of the US Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." To meet the Article III case-or-controversy requirement, the plaintiffs must have standing to bring these matters before the court. The threshold criteria for standing are (1)

---

[5] In its Second Order Regarding ARCOS Data, this Court recognized one of the obvious benefits of the ARCOS data as facilitating the release of improperly-named defendants from claims, citing the example of the voluntary dismissal of Kroger in *Cuyahoga County, Ohio v. Purdue* where Kroger did not sell opioids in Cuyahoga County. *See* Doc. No. 397 at n. 1. Kroger's attempts to seek voluntary dismissal from plaintiffs in similar circumstances have been met with varying responses—silence, refusal, and tentative, yet ultimately unfruitful, consideration. In the interests of uniformity, time, and efficiency, Kroger requests that the Court take this jurisdictional issue up as to all cases.

the plaintiffs must have suffered a "concrete and particularized" injury-in-fact to some legally protected interest; (2) *there must be a causal connection between the injury and the defendant's conduct of which the plaintiffs complain*; and (3) a decision in their favor must be likely to redress the wrong inflicted on the plaintiff. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, where the distributor is wholly absent from the plaintiff locality, there is no causal connection between the plaintiff's injury and the defendant's distribution.

The Superior Court for the Judicial District of Hartford, Connecticut, recently highlighted the difficulties of identifying the causal connection between the actions of the opioid litigation defendants and the plaintiff localities. *See City of New Haven v. Purdue Pharma, L.P., et al*, Memorandum of Decision Dismissing Cases for Lack of Jurisdiction, X07 HHD CV 17-6086134 S (Jan. 8, 2019) (attached hereto as Exhibit A). Following Connecticut law on causation, Judge Moukawsher determined that the alleged injury is too remote from the cause alleged where plaintiffs were unable to calculate the degree of causation attributable to each individual defendant. The court wrote that the factors governing causation assume "a court can rationally measure any given defendant's conduct against any given harm complained of to see whether what each defendant has done was indispensable, foreseeable, and substantial to the harm complained of in the lawsuit." *Id.* at p. 12. This opinion sets out the challenges of tracing causation in any complaint in the opioid litigation, but particularly amplifies the defect in complaints suing pharmacies where the pharmacies did not conduct any business in the plaintiff locality.[6] In these cases, there is no

---

[6] The court went on to justify its decision, stating, "It might be tempting to wink at this whole thing and add to the pressure on parties who are presumed to have lots of money and possible moral responsibility. Maybe it would make them pay up and ease straining municipal fiscs across the state. But it's bad law." *Id.* at 15.

rational causal connection between the harm done to the locality and the filling of prescriptions elsewhere in the country.

Thus, the plaintiffs lack standing against these defendants and the Court lacks jurisdiction to proceed with respect to these complaints. S*ee Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993) ("[S]tanding is a threshold, jurisdictional issue, and courts should attempt to resolve such issues as soon as possible. 'The rule in federal cases is that an actual controversy must be extant at all stages of review.'" (*quoting Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974)).

As this Court recently recognized in its Order dismissing Allergan's third-party complaint against Pfizer, without subject matter jurisdiction the Court cannot rule on any claims. *See* Doc. No. 1201 (Dec. 17, 2018). The Supreme Court has long held that "without proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998) (Scalia, J.) (collecting cases). In *Steel Co.*, Justice Scalia denounced the exercise of "hypothetical jurisdiction," equating the resolution of questions of law when jurisdiction is in doubt to advisory opinions, disapproved by the Court. *Id.* at 101.

In addition to the standing issue, ridding the complaints of claims against defendants who are at best erroneously named, and at worst named in bad faith, will promote efficiency by resolving unnecessary litigation and narrowing the issues. *See* Manual for Complex Litigation, Fourth, § 11.3.1 (2004) ("Probably the judge's most important function in the early stages of litigation management is to press the parties to identify, define, and narrow the issues."); *In re Mortg. Elec. Registration Sys. (MERS) Litig.*, No. MDL 09-2119-JAT, 2011 WL 13143579,

at *1 (D. Ariz. Jan. 25, 2011) (noting that "the Court and public have a strong interest in judicial efficiency and the prompt resolution of litigation"); *accord* 28 U.S.C. § 1407(a) (establishing MDLs with the purpose of "promot[ing] the just and efficient conduct" of suits).

Resolving this simple and discrete jurisdictional issue will not frustrate the other deadlines or discovery efforts, but will instead serve the interests of efficiency, fairness, and equitable resolution.

### II. Kroger Requests that the Court Impose a Deadline for Dismissal of Defendants with No More Than 5% of Market Share in Plaintiff Locality

The second part of this request to modify CMO-1 arises from Plaintiff's Motion for Modification of CMO-1 Regarding ARCOS Market Share Data and Amending Complaints (Doc. No. 1077), the Court's order granting that motion (Doc. No. 1106), and the Court's more recent order granting Plaintiffs' Motion for Approval of Short-Form Complaint (Doc. No. 1282).

On November 2, 2018, Plaintiffs moved for an order modifying the Court's Case Management Order to extend time for the plaintiffs to amend complaints (Doc. No. 1077). The reasoning for this modification was so that the plaintiffs could benefit from the disclosure of ARCOS data that could focus their claims against defendants who they deemed to have caused the most harm.

By order of the Court in July 2018 (Doc. No. 739), the PEC was permitted to file a report using the ARCOS data naming the entities that manufactured, distributed, or sold opioids in each county across the country. The Plaintiffs, in their November 2 motion, complained of an unintended consequence of this report, which was that it would capture hundreds of defendants "with *de minimis* market share" and result in "more than a thousand amended complaints." Doc.

7

No. 1077 at 2.  To avoid this over-inclusion, Plaintiffs requested the Court amend its July order to permit the report to identify only manufacturing and distributing parties who were responsible for more than 5% of the market share of opioids in each relevant county in at least three of the nine years available in the ARCOS data.

The Court granted Plaintiffs' motion on November 8, 2018, ordering the report derived from the ARCOS data to include manufacturers, labelers, and distributors who were responsible for more than 5% of the market share of opioids in the counties and timeframes set forth in Plaintiffs' motion.  The Court ordered that this report be made available by the Plaintiffs' Executive Committee (PEC) on or before November 19, 2018.

As of this filing, the report has not been made available to Kroger.  The date by which Plaintiffs are to amend their complaints using the information from the report is March 16, 2019.  In its recent order, the Court concluded that Plaintiffs need not disclose the specific ARCOS data that forms the bases of their amendments.  *See* Doc. No. 1282 at 2.

Respecting the Court's decision on Plaintiffs' duty to disclose the details of this data, Kroger asks that a minimum disclosure be made in the interests of narrowing the issues and focusing on the harm alleged by Plaintiffs.  Kroger requests that CMO-1 be further modified to require that Plaintiffs identify the defendants responsible for *no more than* 5% of the share of opioids manufactured, distributed, or sold according to the ARCOS data and corresponding PEC, and set a deadline for a motion to dismiss based on the isolated and limited issue of defendants' *de minimis* liability.

Five percent volume responsibility—which the plaintiffs themselves have identified as *de minimis* in this litigation—is minimal volume compared to the volume of opioids

8

entering each community. Permitting the dismissal of parties who fall under this threshold will eliminate the burden of discovery and pretrial litigation with respect to those who have nominal liability, if any, for the damages claimed by plaintiffs.[7] This would also allow the Court and the parties to concentrate efforts and resources on the claims that go to the heart of this mass litigation.

## CONCLUSION

Modifying CMO-1 to include deadlines for the dismissal of defendants that fall within the specific and circumscribed classes set out above will promote fairness and efficiency, and serve the purposes of this multidistrict litigation as well as settlement negotiations. To advance and make manifest the goals of this MDL proceeding, the Court is respectfully urged to grant the relief requested in this Motion.

Respectfully submitted,

*/s/ Ronda L. Harvey*
Ronda L. Harvey (WVSB No. 6326)
rharvey@bowlesrice.com
Fazal A. Shere (WVSB No. 5433)
fshere@bowlesrice.com
Unaiza Riaz (WVSB No. 13253)
uriaz@bowlesrice.com
Gabriele Wohl (WVSB No. 11132)
gwohl@bowlesrice.com
Bowles Rice LLP
Post Office Box 1386
Charleston, West Virginia 25325-1386
(304)-347-1100
*Counsel for Defendant Kroger*

---

[7] Plaintiffs have indicated that they may choose to dismiss defendants on these *de minimis* grounds, see Doc. No. 1142, but Kroger is requesting that this issue be resolved by the Court as to all complaints and defendants.

9

*/s/ Robert M. Barnes*
Robert M. Barnes
rbarnes@marcus-shapira.com
Joshua A. Kobrin
kobrin@marcus-shapira.com
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 471-3490
Facsimile: (412) 391-8758
*Counsel for Defendant HBC Service Company*


/s/ *Timothy D. Johnson*
Timothy D. Johnson (0006686)
Cavitch, Familo & Durkin Co. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, Ohio 44114
Telephone: 216-621-7860
DD: 216-472-4611
Facsimile: 216-621-3415
E-mail: tjohnson@cavitch.com
*Attorney for Defendant*
*Discount Drug Mart, Inc.*


/s/ *Kelly A. Moore*
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001
Elisa P. McEnroe
elisa.mcenroe@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001

10

*Counsel for Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center*

## Certificate of Service

I, Ronda L. Harvey, hereby certify that on this 8th day of February, 2019, the foregoing **Defendant Kroger's Motion to Modify CMO-1 to Provide a Mechanism to Dismiss Improperly Named Defendants** was served via the Court's ECF system to all counsel of record.

*/s/ Ronda L. Harvey*
Ronda L. Harvey (WVSB No. 6326)
Bowles Rice LLP
Post Office Box 1386
Charleston, West Virginia 25325-1386
(304)-347-1100
rharvey@bowlesrice.com
