IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


IN RE: NATIONAL              )
PRESCRIPTION                 )
OPIATE LITIGATION,           )
                             )    Civil Action
                             )    Number 1:17MD02804
                             )
  APPLIES TO ALL CASES       )
                             )
                             )


- - - - -

TRANSCRIPT OF PROCEEDINGS HAD BEFORE

JUDGE DAN AARON POLSTER

ON WEDNESDAY, JANUARY 30, 2019

- - - - -


Official Court Reporter:        Shirle M. Perkins, RDR, CRR
                                U.S. District Court
                                801 West Superior, #7-189
                                Cleveland, OH 44113-1829
                                (216) 357-7106


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1      APPEARANCES:

2      For the Plaintiffs:          PETER WEINBERGER, ESQ.,
                                           Spangenberg, Shibley &
3                                            Liber
                                         Suite 1700
4                                          1001 Lakeside Avenue, E
                                         Cleveland, OH 44114
5                                          (216) 696-3232
                                         STEVE SKIKOS, ESQ.,
6                                          JOE RICE, ESQ.,
                                         JAYNE CONROY, ESQ.,

7

8

9      For Defendants             MARK S. CHEFFO, ESQ.,
     Purdue Pharma L.P.,         Dechert - New York
     Purdue Pharma Inc.,         Three Bryant Park
10     And The Purdue                New York, NY 11036
     Frederick Company, Inc.:    (212) 698-3500
11

12                                            TIMOTHY BLANK, ESQ.,
                                         DEBRA GORMAN, ESQ.,

13

14

15      Attorneys General:          GILLIAN FEINER
                                         DEBRA GORMAN

16

17

18

19

20

21

22

23

24

25

1      WEDNESDAY SESSION, JANUARY 30, 2019, AT 4:49 P.M.

2                THE CLERK:  Hi, Judge.  This is Helen.  I have

3      you on the line with David Cohen, Cathy Yanni, Mary Hughes,

4      Robert Pitts, Scott Loge.

17:10:50  5          For the AG's, I have Gillian Feiner and Sandy

6      Alexander.

7          For the PEC, I have Steve Skikos, Joe Rice, Jayne

8      Conroy, and Pete Weinberger.

9          For Purdue -- for Purdue, I have Mark Cheffo, Timothy

17:11:09 10    Blank and Debra Gorman.

11         I would like to remind everyone that there's a Court

12    Reporter on this call.  Please identify yourself before you

13    speak.

14         Go ahead, Judge.

17:11:19 15             THE COURT:  All right.

16         I convened this telephone conference on the record on

17    Purdue's motion to enjoin the Massachusetts Attorney

18    General's Office from violating the MDL protective order,

19    Document 1204.  It's not.  It's Document 2804 that was filed

17:11:51 20    earlier today.

21         I've reviewed it.  I guess for Purdue, Mr. Cheffo,

22    what you're really asking me to do is enjoin Judge

23    Standard's -- she's issued the order.  She's issued an order

24    directing the State AG to file an unredacted copy of their

17:12:25 25    complaint no later than Friday, February 1st.

1          So what you're asking me to do is enjoin the

2     Massachusetts Attorney General from complying with a valid

3     State Court Judge's order.  And have you provided any

4     authority to me that I -- that I can do that?  I didn't see

17:12:50  5     an authority in your motion.

6                    MR. CHEFFO:  Yes, your Honor.

7          It's Mark Cheffo.  Thanks, first of all, for convening

8     on short notice.  I know it's been a lot of paper in a short

9     period of time, but I would kind of respectfully kind of

17:13:05 10     reframe what we are and are not asking for.

11          We are -- let me be very clear both for here and for

12     the State Court Judge, who may get the transcript.  We are

13     absolutely not asking you to do anything with respect to the

14     Massachusetts State Court.  Whether you even have

17:13:21 15     jurisdiction or not it's frankly irrelevant from our

16     perspective because we do not think that this issue relates

17     to anything that the State Court Judge is doing.  She --

18                    THE COURT:  Well, I disagree with you.

19          I'm looking at the last paragraph of the January 28th

17:13:37 20     order.  It says, "It is hereby ordered that unredacted copy

21     of the amended complaint be filed with this court" -- that's

22     Judge Sanders -- "and be made available to the public no

23     later than noon on February 1st.

24                    MR. CHEFFO:  Right.  I am --

17:13:55 25                    THE COURT:  That's in Paragraph 370, which

1    contains private medical indication.  That's what she's

2    ordered.

3         So you're asking me to enjoin the Massachusetts

4    Attorney General from complying with that order.

17:14:08  5              MR. CHEFFO:  I am not.  Your Honor, if you'd

6    just like to --

7                   THE COURT:  Remind me why you're not.  Explain

8    to me.

9                   MR. CHEFFO:  Yes, your Honor.  Absolutely I

17:14:17 10    will.

11         So your Honor heard us, you know, a few weeks ago --

12    here's why we're not.  Let me just lay it out as clearly as

13    I can.  Obviously, the Court will have some questions.

14         We start with the fact that there's no discovery in

17:14:31 15    Massachusetts that's ongoing.  Right?  The discovery stayed.

16    What happened was back in July, Ms. Feiner --

17                   THE COURT:  I don't have time to go back to

18    July.  I want to -- January 28th, Judge Sanders issued this

19    order.  That was Monday.  Now, she's ordered them to do

17:14:53 20    something by Friday.

21                   MR. CHEFFO:  Here's the issue.  The issue is

22    that the -- Ms. Feiner got a lot of, millions of pages, 30

23    millions of pages of documents.  You ordered that none of

24    them should be produced --

17:15:06 25                   THE COURT:  That may -- Mr. Cheffo, that may

1    be.  All right?  She got documents.  She got documents for

2    the MDL.  She may have got documents from some other

3    process.

4        No Massachusetts AG is bound by -- by the MDL

17:15:23  5    protective order, but the CMO says or State Court proceeding

6    only up until the time that the State Court Judge issues its

7    own protective order.  And my understanding is Judge Sanders

8    issued one and Purdue signed off on it as did the Mass AG.

9    But in any event, Judge Sanders has issued this order and

17:15:43  10    you're asking -- you're asking me -- I've read your motion.

11    You're -- you're saying -- you're asking me to enjoin the

12    Massachusetts AG from filing, publicly filing the unredacted

13    complaint.

14        MR. CHEFFO:  What we're asking you to do, your

17:16:04  15    Honor -- we have been -- we've been dealing with this with

16    Special Master Yanni.  In fact, last night, the AG filed --

17        THE COURT:  I know that.  I know that's the

18    process that has been going on for months, but the

19    Massachusetts Judge decided not to wait any longer.

17:16:17  20        MR. CHEFFO:  Right.

21        So what we're basically saying is what we think

22    everyone should have been doing, and I don't think the AG

23    necessarily disagrees with this.  They are required to file

24    an unredacted complaint.  It doesn't mean that they have to

17:16:29  25    violate this Court's protective order.  They could file the

1    complaint any time.  They could comply with that order.

2        What we're saying is that there's a handful of good

3    number of documents that are being considered by Special

4    Master Yanni.  Those documents should work through the

5    process.  There's no requirement.  They're basically trying

6    to confuse the situation, I think, by saying, "Oh, look.  We

7    have no choice."  But the complaint is their instrument.

8    They could file the complaint unredacted, which includes all

9    of the -- their initial complaint, the allegation, plus the

10   ones that we've agreed to.  What we're basically saying is

11   as to the others, we still have an ongoing process that your

12   Honor is put in place with the P.O. in the MDL.  And we're

13   basically saying if you really need to -- either of the two

14   things; go to us and ask the State Court Judge can we have

15   an extra week to work this out, or if you want to file a

16   complaint, you could file any complaint you want as long as

17   it doesn't include the paragraphs that are being considered

18   by Special Master Yanni.

19       So they can comply.  They just can't do it in a way,

20   in our view, respectfully, that basically takes your Honor

21   out of the game and takes Special Master Yanni and basically

22   says, "Oh, forget about it.  The protective order doesn't

23   apply."

24       So this is a very practical solution.  We're basically

25   saying that we went through their complaint, we identified

1    it and basically said we have no issue with the vast number

2    of the confidentiality designations.  In fact, those were

3    refiled and unredacted.  Now, we have a dispute which we

4    expeditiously tee up.  There was a reply filed last night by

17:18:04  5    Ms. Feiner, and Special Master Yanni needs to have an

6    opportunity to basically work through those.  Otherwise,

7    kind of what's the point of the protective order?

8         So to the extent that the State wants to file

9    something where they have two very practical solutions which

17:18:18  10    will not in any way get in their way:  One is they can

11    jointly ask the Judge for another week or so to work this

12    out; or they can file their complaint but they just can't

13    file documents that have not been determined to be

14    unredacted.  And --

17:18:35  15             THE COURT:  That's not what the order said.

16    I'm not very happy with the Massachusetts AG either.  All

17    right?  We had a hearing on December 20th.  I thought there

18    was a process -- there was a process put in place.  It's

19    been going on.  All right?  And I don't -- I, you know,

17:18:55  20    Judge Sanders has a right to do what she wants to in her

21    case.  But, I don't see where the Massachusetts AG asked to

22    hold off and let the MDL process take its course while it's

23    being done.

24             MR. CHEFFO:  Well, your Honor, except for the

17:19:12  25    fact that --

1          THE COURT:  Look.  I know -- that was close to

2   the Massachusetts AG people.  You want to respond to that?

3          MS. FEINER:  This is Gillian Feiner.

4       We have been engaged with Purdue in this process for a

5   month now.  We've been going back and forth with Special

6   Master Yanni.

7       The motion the State Court Judge ultimately ruled upon

8   was a motion filed by a consortium of media companies, not

9   the Massachusetts AG's Office.

10      Having said that, you know, I don't think that this

11  issue anymore is properly before the MDL Court.  The

12  Court --

13         THE COURT:  Wait.  It is before me.  It is

14  before me.  It's my job to maintain the integrity of this

15  process.

16         MS. FEINER:  I understand that, your Honor.

17         THE COURT:  I can do it.  And I'll do it, and

18  I can order anyone to do anything I want.  Maybe they can

19  challenge it.  Maybe they can appeal.  But I can order you

20  to do anything I want.  I can order a State Court Judge to

21  do anything.  Whether it will be upheld or not, I don't

22  know.

23         MS. FEINER:  Your Honor, the State Court Judge

24  ordered Purdue to produce the 500 documents that we --

25         THE COURT:  I understand that.  I understand

1    that.  But, I don't see where, anywhere here where you took

2    the position that it is a process in which you were

3    participating in.  Special Master Yanni and you thought --

4                    MS. FEINER:  Your Honor -- I'm sorry.

17:20:48  5          THE COURT:  Something is going on that makes

6    it hard to hear in the background.  Everyone's got to put

7    their phone on mute unless you're talking.  There's no way

8    the Court Reporter can hear this.

9                    MS. FEINER:  Sorry, your Honor.  I lost you.

17:21:13 10          MR. WEINBERGER:  Somebody has their speaker

11    on.  Please put your speaker -- please put your phone on

12    mute.

13                   THE COURT:  All right.  All right.

14        Ms. Feiner, I'd like you to respond, please.

17:21:30 15          MS. FEINER:  Your Honor, I sort of lost you in

16    all of the noise.  I'm not sure what I was responding to

17    you.

18                   MR. WEINBERGER:  Somebody has their phone on

19    speaker.  Please put your phone on mute.

17:21:53 20          MS. FEINER:  Everyone still there?

21                   THE COURT:  Yes.  Yes.

22                   MS. FEINER:  I'm sorry, your Honor.  I had

23    trouble hearing you.

24                   THE COURT:  All right.

17:22:04 25        Well, I couldn't hear anything.  So it's not your

1    fault.  All right.

2         What troubles me is that I don't see where the

3    Massachusetts Attorney General urged Judge Sanders to wait

4    until the MDL process had run its course.  It was active

17:22:29  5    discussion between your office and Purdue that Special

6    Master Yanni was coordinating, and she was trying to either

7    work something out or she would have made a ruling as to --

8    and then someone could have appealed it if they didn't like

9    it to me.  And that was the process we discussed on December

17:22:52 10    20th, and it was ongoing.  And obviously, Judge Sanders

11    could do what she chose to do.  She's an independent Judge,

12    but I don't see where your office very clearly took the

13    position that the MDL process should conclude and she

14    shouldn't jump the gun.

17:23:17 15         MS. FEINER:  So you -- I'm not sure exactly

16    what you have before you at this point.  Unfortunately, we

17    have not had a chance to fully brief this request for

18    injunction, which was just filed today.  But, I will tell

19    you that we have been -- we had been fully engaged in the

17:23:34 20    process with Special Master Yanni.  We submitted a

21    prehearing memo to our State Court Judge outlining the

22    progress that we had made with Purdue through that process

23    and proposing a schedule in March for motions to -- for

24    Purdue's motions to impound to be filed and heard.

17:23:58 25         Subsequent to that prehearing memo, several third

1    parties filed motions to terminate the impoundment and made

2    arguments in the court of those motions at the last hearing,

3    which our Judge, Judge Sanders, invited.

4         She heard from them, and she ultimately concluded that

17:24:17  5    although Purdue made its arguments in the two hours of that

6    hearing, that she should let the MDL process conclude, she

7    concluded that even if the Special Master were to find that

8    the documents had properly been designated confidential for

9    purposes of discovery, that was not dispositive as to her

17:24:44  10   obligations under the Massachusetts Rules of Impoundment.

11   And so she acted accordingly.

12        She made that ruling, and she ordered Purdue to

13   produce those records to sort of -- and I think she said

14   this expressly in her order to disentangle herself from the

17:25:04  15   MDL proceedings.  She felt that she needed -- I think I

16   inferred this from her order -- that the public interest

17   outweighed Purdue's interests in protecting itself from

18   embarrassment.

19        I think she also had real concerns about the fact that

17:25:19  20   there was significant delay in this process, in the State

21   Court process and the --

22             THE COURT:  Well, I don't need to

23   characterize.

24        What position did the Massachusetts Attorney General

17:25:29  25   take when the third party filed the motion terminating

1    impoundment?  What position --

2                    MS. FEINER:  She --

3                    THE COURT:  -- what position did the

4    Massachusetts AG take?

17:25:40  5                    MS. FEINER:  We did not file a written

6    opposition to Purdue's motion to impound.  We have suggested

7    that the Court bump out the hearing on that because of the

8    ongoing MDL process, but the Court ultimately found that,

9    you know, her constitutional reason she couldn't wait for

17:26:02 10    that process to conclude.

11                    THE COURT:  All right.

12                    MR. CHEFFO:  That's just not true.  We asked

13    for an adjournment, Gillian, and you said no, so.

14                    MS. FEINER:  The Court -- actually we don't

17:26:14 15    have the power to say no.  We wanted the hearing to go on so

16    that we could apprise the Court of the status of -- this is

17    State AG litigation, and we want the Court to know what's

18    going on, and we have an interest in moving it forward.

19    But, ultimately, that adjournment was rejected by the Judge,

17:26:32 20    and also the other parties who sought to terminate the

21    impoundment filed letters.

22            So I think that characterization -- informing the

23    Court of what's going on and seeking to be heard is

24    different than actively seeking to terminate the

17:26:49 25    impoundment.  That was something that was done by members of

1    the press and a nonprofit group called Learn to Cope.

2              MR. CHEFFO:  This is where the gamesmanship is

3    so frustrating.  I've never seen, frankly, a situation where

4    someone affirmatively avoids a Judge's ruling.

17:27:04  5        When you start with a -- this is where we start.

6    There was a lot of benefit when the AG's office was able to

7    get our 35 million pages of documents.  Frankly, there's no

8    discovery right now in Massachusetts.  They're not producing

9    anything --

17:27:19 10              THE COURT:  Hold on.  Mark Cheffo, I want to

11   go back to my first question.

12              MR. CHEFFO:  Yes.

13              THE COURT:  You were asking me to tell a

14   countermand a State Court Judge's order.

17:27:31 15              MR. CHEFFO:  I'm not --

16              THE COURT:  Well, I don't -- you haven't

17   explained why you're not.

18              MR. CHEFFO:  Let me tell you.

19              THE COURT:  It was very clear.  All right?

17:27:38 20              MR. CHEFFO:  Let me tell your Honor what I am

21   asking specifically.

22              THE COURT:  Well, you --

23              MR. CHEFFO:  I'm sorry.

24              THE COURT:  -- you answered the question

17:27:46 25   before.  You said well, the Massachusetts AG cannot fully

1    comply or they can jointly go in with you and ask Judge

2    Sanders for a postponement.  Okay?

3                    MR. CHEFFO:  They can, your Honor --

4                    THE COURT:  They can't.

17:28:04  5                    MR. CHEFFO:  I'm sorry.  I apologize for

6    talking over you.  I'm on a speaker phone, too.

7        Look.  Here's the thing.  If you'll give me 30

8    seconds, I'll tell you why we're not asking for any

9    disobeying of any orders or any injunctions.

17:28:15 10        But Ms. Feiner signed the protective order, said, "I

11   solemnly promise that I will not to disclose in any manner

12   any information or item that is subject to protective order

13   to any person or entity, except in strict compliance with

14   the provisions of the protective order."

17:28:29 15        And then it goes on.  And then there's a dispute

16   resolution process.  Right?  So they have put this

17   information voluntarily into a complaint.  We've now

18   basically said --

19                    THE COURT:  Hold it.  The CMO also says that

17:28:43 20   once -- if it's in the State Court litigation, once the

21   State Court Judge issues his or her own protective order,

22   those are the rules that apply to that court in that case.

23   And that's what Judge Sanders has done.  But I don't -- back

24   to the last sentence, Judge Sanders has ordered them to file

17:29:05 25   an unredacted copy of this complaint and make it public no

1    later than noon on Friday.

2              MR. CHEFFO:  Right.  File an unredacted copy

3    of the complaint that doesn't include these provisions until

4    Special Master Yanni just has to do with --

17:29:20  5              THE COURT:  No, then it's not unredacted.

6    Then it's redacted.

7              MR. CHEFFO:  No, no, no.  She can file an

8    unredacted but not including these complaints.  Take -- use

9    the Word processor, take it out.  And if it turns out in a

17:29:34  10   week that --

11             THE COURT:  Well, no, no, no.  Then you're

12   rewriting -- then they're filing a new document.  It's not

13   the amended complaint.  They've already lodged the amended

14   complaint with Judge Sanders.  She knows the documents.

17:29:48  15   She's seen it.

16        What you're now -- they've got to file a second

17   amended complaint that takes out sections of their amended

18   complaint.

19             MR. CHEFFO:  Your Honor, that's the only --

17:30:00  20   that's the only fair result here because otherwise your

21   order essentially --

22             THE COURT:  That isn't what this Judge has

23   ordered.  All right.

24             MR. CHEFFO:  They could comply with it by

17:30:12  25   doing that.  They can easily comply with both her order and

17

1    with your order if they basically -- look. A lot of these

2    documents would never have been produced in Massachusetts,

3    for example, per se. Right? There's 30 million documents

4    that the MDL lawyers, who were very aggressive, as you know,

17:30:27  5    have gotten.

6         Ms. Feiner said, "Look, I will follow the rules," and

7    then basically in our view, didn't follow the rules. And

8    now basically saying, "Because we didn't follow the rules,

9    we voluntarily put this information into a complaint, that

17:30:40 10   oh, my gosh we have nothing to do about it." So --

11              THE COURT: Apparently these documents,

12   there's a protective order. I haven't even seen it.

13   There's a protective order that Judge Sanders has entered,

14   and apparently you -- Purdue signed off on it and so did the

17:30:57 15   Massachusetts AG and --

16              MR. CHEFFO: We did.

17              THE COURT: -- determined that, you know,

18   these documents, that there's no violation of her protective

19   order for Massachusetts to file this amended complaint.

17:31:13 20              MR. CHEFFO: Your Honor, here's what's

21   different, though.

22        We're not arguing about documents. Those initial

23   conference -- it was a lot of documents that were produced

24   in connection with the civil investigation. Right? And

17:31:23 25   those are all subject and produced pursuant.

1        And this is the problem, which is where we're going to

2   run into this across the country if you allow Massachusetts

3   to do this.  Because we did not produce these documents to

4   the Massachusetts AG.  They said when these are special

17:31:39   5   circumstance, they didn't file any document requests.  We

6   didn't produce them.  We would not have produced a lot of

7   these.  They're not relevant to those claims, but we

8   basically said, Gillian --

9            THE COURT:  Are you saying the protective --

17:31:52  10   the protective order that Judge Sanders has for her

11   litigation?

12            MR. CHEFFO:  I think those apply to documents

13   that are produced or documents that are appropriately within

14   the scope of the MDL protective order.

17:32:06  15        So what we -- we agree that, again, the Judge can

16   apply her protective order to documents that are

17   appropriately produced there, but otherwise, you didn't say,

18   right, if the doc -- someone finds, you know, this

19   incredibly clear document and takes their documents to some

17:32:22  20   other court that had some other protective order, that

21   everything in the MDL goes away.  I mean that's --

22            THE COURT:  The only -- I can't control what a

23   State Court Judge does in his or her case.  All right?

24   They've got a right to do what they want.

17:32:41  25            MR. CHEFFO:  Right.  But you can control

1    the --

2              THE COURT:  Judge Sanders has a different

3    protective order.  And apparently, these documents that you

4    feel should not be disclosed, Judge Sanders had -- a

17:32:57  5    disclosure doesn't violate her protective order.  She's made

6    that determination.

7              MR. CHEFFO:  Judge, here's the difference.

8    This is kind of like, you know, if this was a criminal case,

9    we'd be talking about fruit of the forbidden tree.  These

17:33:09 10    are not documents.  We're not coming to you in connection

11    with a production we made in Massachusetts.  These were

12    documents that the Massachusetts AG only has because you

13    have them in your court, and you set some rules about using

14    those documents.

17:33:22 15        And if someone could take those documents and all the

16    rules and then just put them in some other litigation and

17    then say, "Judge Polster no longer has anything to say and

18    nothing to do with these," then kind of what's the point of

19    the protective order?

17:33:35 20        So that's the issue here.  We are only saying you have

21    jurisdiction over Ms. Feiner and you have jurisdiction over

22    the 30-plus million documents, and what we're saying is --

23              THE COURT:  No, I don't have -- I don't have

24    jurisdiction over Judge Sanders.  And my order clearly said

17:33:51 25    that if in the case of the State Court lawsuit, once that

1    State Court Judge issues a protective order, that's what

2    governs the documents in that case.  They take --

3                MR. CHEFFO:  I don't think that --

4                THE COURT:  Well, that's the only way that I

17:34:12  5    can -- that's the only clear -- the only way I interpret my

6    order.

7                MR. WEINBERGER:  Your Honor, this is Pete

8    Weinberger.

9         I think it should be pointed out that that provision

17:34:22 10    in the Federal Court regarding State Court, state/federal

11    coordination was a negotiating document, negotiated with

12    Purdue's counsel, that ultimately got entered in by you in

13    the MDL.

14         So it wasn't that Purdue and Mr. Cheffo and his team

17:34:44 15    did not have input into that state/federal coordination

16    order.  They indeed did.

17                MR. CHEFFO:  We we're not saying it was jammed

18    down our throat, Pete.  We know that we signed it.

19         I'm just saying when you read it fairly and look at

17:34:59 20    the consequence, there's no way -- I don't think anyone

21    could argue this would be a fair result.  Right?  That you

22    could take 30 million documents, take them out of the court,

23    go put them in the complaint, and then, you know -- if

24    that's true, why did the state even file their response with

17:35:14 25    Special Master Yanni?  Why are we going through the process?

1    Why did your Honor rule on December 20th that counsel should

2    not disclose any of these orders --

3              THE COURT:  Mr. Cheffo, it's because no one

4    wanted to be in this position.  All right?  Where it

17:35:32  5    looked -- where they were trying to comply with the MDL

6    protocol and what the State Court Judge wanted to do.  And

7    again, if there could have been an agreement, there wouldn't

8    have been any dispute, but a Judge decided not to wait.

9    That's her call.

17:35:54  10              MR. CHEFFO:  Because the State didn't oppose

11    it.

12              THE COURT:  She chose not to wait.  Well --

13              MR. CHEFFO:  The State didn't ask for any

14    time, and the State now basically -- the State.

17:36:04  15              THE COURT:  The State initially asked for

16    March.  I mean whether the State, you know, as I said, I

17    would have preferred for Massachusetts to be a little more

18    vigorous in pushing back against Judge Sanders.  Whether it

19    would have made a difference or not, I don't know.  But, she

17:36:19  20    didn't.

21              MR. CHEFFO:  Your Honor --

22              THE COURT:  And so --

23              MR. WEINBERGER:  Your Honor --

24              MR. CHEFFO:  Another thing I'll say, your

17:36:26  25    Honor, it sounds like Mr. -- I apologize, you know, just the

1   consequence, you know, I said pretty much, you know, you're

2   going to rule obviously in the way you think is best as you

3   always do, and we'll, you know, honor that ruling.  But I'm

4   going to tell you once this -- if this happens, it's going

17:36:41  5   to be exactly an incredible news cycle.  We've already had

6   the Mass AG all over the news and the press

7   mischaracterizing the documents, frankly, and saying

8   horrible things about the individual Defendants.  And that's

9   what this is all about.  And you're going to wake up

17:36:56  10   probably tomorrow and see, you know, lots of news stories

11   about this.  And that's really what this is all about.  And

12   it's, frankly, very frustrating and inherently unfair

13   because, you know, there are supposed to be rules that we

14   all abide by.  And I think this is just not -- again,

17:37:12  15   respectfully, kind of a fair resolution to keep these -- you

16   know, because the other reality is we can't respond, right,

17   because they now have those allegations, kind of half --

18   they're talking about it on the press now.  Then we have

19   confidential documents.  So that's why we have protective

17:37:28  20   orders, and that's, frankly -- I apologize -- why I'm a

21   little animated today.  But it's very frustrating because I

22   think we're kind of doing ends around, you know, the spirit

23   and letter of what your Honor intended.

24                    THE COURT:  Well, I'm not -- I'm not happy

17:37:42  25   either, Mr. Cheffo.  I didn't expect we'd be at this point,

1    but I don't -- I can issue the order, but I won't -- I don't

2    expect any court, any court, any Federal Court would uphold

3    me if I enjoin Judge Sanders.  That would not be -- I can

4    issue the order, but I don't think the Sixth Circuit would

17:38:12  5    uphold me.

6                MR. CHEFFO:  Well especially --

7                THE COURT:  What authority do you have to jump

8    in and tell a State Court Judge what she can do in running

9    her trial, her case?

17:38:27 10                MR. CHEFFO:  You can order Ms. Feiner not to

11    do it.  She signed the protective order.

12                THE COURT:  I can't order Ms. Feiner not to

13    comply with Judge Sanders' order.  That's the same thing as

14    enjoining Judge Sanders' order.

17:38:42 15                MR. CHEFFO:  Well --

16                THE COURT:  That's my point.

17                MR. CHEFFO:  You also have --

18                THE COURT:  That's what you're asking me to

19    do.  I would suspect you can circumvent Judge Sanders' order

17:38:51 20    by filing a second amended complaint that's different than

21    your amended complaint of Judge Sanders' order to be filed.

22         So I -- you know; as I said, I could issue that order,

23    but I do not at all expect it will be affirmed, as I don't

24    think I have the authority to do it.  And I'm not -- I'm not

17:39:14 25    ordinarily issuing orders that I don't think I have the

1    authority to issue.

2        I don't think any Federal Judge is in that -- does

3    that.

4                MS. FEINER:  Your Honor, I filed a petition

5    for a stay in our appeal court, and obviously, that's how it

6    will play out.

7                THE COURT:  Well, obviously, a Massachusetts

8    Appellate Court has jurisdiction over Judge Sanders, the

9    same as the Sixth Circuit has jurisdiction over me.  And if

10   I issue an order and someone's not happy, they can seek a

11   stay from the Court of Appeals.  And if the stay is issued,

12   then it stays.  That's how things work.  But you don't have

13   Federal Judges essentially jumping in and trying to, you

14   know, stay or invalidate State Court orders, in the same way

15   Judge Sanders has no authority to enjoin one of my orders.

16   It's federalism.

17       So I'm going to deny Purdue's motion for Emergency

18   Order to Enjoin the Massachusetts Attorney General, and

19   basically because the effect of that would be to enjoin

20   order of the State Court Judge, and I don't believe I have

21   the authority to do that.

22       So I appreciate everyone's -- everyone's time.  It's a

23   lot later where you are than it is where I am, and I

24   appreciate it because I needed to do this today.

25       So thank you very much.

1      MR. CHEFFO:  All right.  Thank you, your

2   Honor.

3      (Proceedings adjourned at 5:41 p.m.)

4              C E R T I F I C A T E

5          I certify that the foregoing is a correct

6   transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11   s/Shirle Perkins_____
     Shirle M. Perkins, RDR, CRR
12   U.S. District Court - Room 7-189
     801 West Superior Avenue
13   Cleveland, Ohio 44113
     (216) 357-7106
14

15

16

17

18

19

20

21

22

23

24

25