**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*Track One Cases*" | ) ) ) | |
| | ) ) ) | DISCOVERY RULING NO. 14, PART 3, REGARDING COMMON INTEREST PRIVILEGE (AGENDA ITEM NO. 154) |

During Track One discovery, plaintiffs served a subpoena on the Healthcare Distribution Alliance ("HDA").  HDA describes itself as a trade organization that represents "primary pharmaceutical distributors — the vital link between the nation's pharmaceutical manufacturers and pharmacies, hospitals, long-term care facilities, clinics and others nationwide."[1]  Several of the defendants in this MDL are members of HDA.

Plaintiffs pursued discovery from HDA because, they allege, the defendants used their HDA membership to advance the conspiracy at the heart of plaintiffs' RICO claim.  Plaintiffs assert, for example, "that the Manufacturers and Distributors used the HDA to jointly increase production quotas, to stymie efforts that would prevent the diversion of opioids, and to coordinate their refusal to report suspicious orders, including those made by direct competitors."  Report and Recommendation (docket no. 1025) at 38 (citing Summit Cty Complaint, docket no. 514 at ¶¶545-552) (Ruiz, M.J.).

In response to plaintiffs' subpoena, HDA: (1) sought to limit the search terms it would use

---

[1] www.hda.org/about.

to locate responsive documents; and (2) invoked the "common interest privilege" as a basis for not producing numerous documents. With the Special Master's assistance, the parties resolved their differences regarding the first of these issues. HDA continues, however, to assert the common interest privilege as a basis for refusing to produce several hundred documents.[2] Plaintiffs insist the privilege does not apply. HDA has consented to the jurisdiction of the MDL Court and the Special Master to resolve this dispute.

For the reasons stated below, the Special Master concludes the common interest privilege does not apply in the circumstances of this case to allow HDA to refuse production of documents. Moreover, the Special Master rejects HDA's assertion that the question of whether the common interest applies must be determined on a document-by-document basis. Accordingly, the Special Master directs HDA to produce to plaintiffs those documents it has withheld based on the common interest privilege.

**I.   Applicable Law.**

The common interest privilege is an "exception to an exception to an exception." Specifically:

1. responsive documents must normally be produced in discovery;[3]

2. an exception to proposition 1 is that documents protected by attorney-client privilege need

---

[2] HDA's privilege log lists 1,924 documents, roughly a third of which are withheld based on the common interest privilege.

[3] *See* Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").

not be produced;[4]

3. an exception to proposition 2 is that documents protected by attorney-client privilege must be produced if the privilege has been waived by disclosing the document;[5] and

4. an exception to proposition 3 is that waiver does not occur if the document is disclosed to a person who shares a "common interest."[6]

In *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 347 (N.D. Ohio 1999) (Carr, J.), this Court explained the contours of the latter proposition: "The 'common interest' arrangement permits the disclosure of a privileged communication without waiving the privilege, provided the parties have '***an identical legal interest*** with respect to the subject matter of the communication.'" (quoting *Duplan Corp. v. Deering Milliken*, 397 F.Supp. 1146, 1164 (D.S.C.1974)) (emphasis added). Concluding that the doctrine should be construed narrowly, the *Libbey Glass* court explained that "confidential communications can be shared [without waiving attorney-client privilege] only if both parties have more than 'merely concurrent legal interests.'" *Id.* at 348. Rather, the parties must have

---

[4] *See Ohio A. Philip Randolph Institute v. Smith*, 2018 WL 6591622 at *2 (S.D. Ohio Dec. 15, 2018) (setting out the essential elements of attorney-client privilege: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by his legal adviser, (8) unless the protection is waived.") (quoting *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).

[5] "The party claiming an attorney-client privilege not only bears the burden of proving that the privilege applies, but must also show that the privilege has not been waived." *Davis v. Drake*, 2014 WL 5795554 at *3-4 (N.D. Ohio Nov. 6, 2014). Attorney-client privilege is waived "by voluntary disclosure of private communications by an individual or corporation to third parties." *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996).

[6] The common interest privilege "permits the disclosure of a privileged communication without waiving the privilege, provided the parties have 'an identical legal interest with respect to the subject matter of the communication.'" *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 347 (N.D. Ohio 1999) (quoting *Duplan Corp. v. Deering Milliken*, 397 F. Supp. 1146, 1164 (D.S.C. 1974)).


"a common legal, as opposed to commercial, interest," such that "the disclosures are made in the course of formulating a common legal strategy." *Id.* (internal quotation marks and citations omitted). Communications that are simply "shared during a business undertaking lose their privileged status, even though such sharing helped address or ameliorate bona fide concerns about the legal implications of some aspect of the business venture." *Id; see also Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) ("the common interest doctrine does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation"); *SR Int'l Bus. Ins. Co. Ltd. V. World Trade Ctr. Props., LLC*, 2002 WL 1334821 at *3 (S.D.N.Y. June 19, 2002). ("The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial."); *In re Grand Jury Subpoena, 89-3 and John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990) (examples of circumstances where the common interest privilege was appropriately interposed include "civil codefendants; companies that have been individually summoned before a grand jury who shared information before any indictment was returned; potential co-parties to prospective litigation; plaintiffs who were pursuing separate actions in different states; and civil defendants who were sued in separate actions") (citations omitted).

The *Libbey Glass* court also noted this "narrow view" made application of the common interest doctrine more predictable: "By disallowing claims of common interest absent clear indication that the parties sought actively to keep the communications confidential, courts can create a benchmark for parties with common legal interests to enjoy the benefits of shared legal advice." *Libbey Glass,* 197 F.R.D. at 348. And, of course, it is HDA's burden to show the common interest privilege applies – "the burden belongs on the party claiming privilege to have avoided uncertainty, and to have taken effective steps to ensure that all participants were aware of the need to maintain confidentiality, and to show that mechanisms were in place to accomplish that objective before the

information was shared." *Id.* at 349; *see Cendant Corp v. Shelton*, 2007 WL 2460701 at *3 (D. Conn. Aug. 24, 2007) ("The party asserting the common interest rule bears the burden of showing that there was an agreement, though not necessarily in writing, embodying a cooperative and common enterprise towards an identical legal strategy.").

Here, the Special Master easily concludes HDA has not met its burden.  First, the HDA was not named as a defendant in any similar opioid case, much less a case also involving one of its members, so it does not have an identical legal interest with any defendant.  Second, even if HDA and its members have a joint *business* strategy concerning the outcome of this or some other litigation – for example, a strategy on how to approach DEA regulations, or how to respond to *In re Masters* – that alone does not give rise to a common interest privilege.  Moreover, to the extent that HDA shared legal strategies, including legal memoranda or briefs, in order to solicit comments from non-lawyer employees of HDA members, that sharing destroyed any attorney-client privilege that HDA may have had with its own attorneys, and therefore destroyed also any common interest privilege.

Notably, cases cited by HDA applying the common interest privilege to trade organizations and its members are all distinguishable.  In *A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, 2013 WL 6044333 (D. Conn. Nov. 14, 2013), the court concluded there was a common interest between a trade association and the member-defendant based on affidavits stating these parties understood their communications were confidential.  HDA has offered no similar evidence of regarding communications with its members.  Further, unlike *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2010 WL 11570865 at *2 (D.D.C. Sept. 28, 2010), HDA has not established its members "specifically" sought legal counsel from HDA or "pool[ed] their funds to hire a lawyer to give them legal advice."  And the parties in *Broessel v. Triad Guar. Ins. Corp.*, 238

F.R.D. 215, 220 (W.D. Ky. 2006), entered into a written joint defense agreement and submitted affidavits stating the parties understood their communications were confidential. The common thread in these cases is that the trade organizations submitted substantial evidence to carry their burden of showing the common interest privilege applied.

HDA also argues the court must assess whether the common interest privilege applies *individually* for each of the roughly 600 documents it lists on its privileged log. *See Hilton-Rorar v. State & Fed. Communics. Inc.*, 2010 WL 1486916 at *7 (N.D. Ohio Apr. 13, 2010) ("a claim of privilege cannot be a blanket claim and, instead, must be made and sustained on a question-by-question or document-by-document basis"). But this is true, if at all, only if HDA makes a colorable showing, based on evidence, that the privilege might apply to any document. Here, HDA has made no such threshold showing.

In sum, HDA does not carry its burden of identifying specific facts that show it took "effective steps to ensure that all [HDA] participants were aware of the need to maintain confidentiality, and to show that mechanisms were in place to accomplish that objective before the information was shared." *Libbey Glass,* 197 F.R.D. at 348. Accordingly, HDA must produce to plaintiffs those documents it has withheld based on the common interest privilege.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: February 12, 2019**