### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*"Track One Cases"* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster<br><br>**DISCOVERY RULING NO. 14, PART 2, REGARDING MALLINCKRODT PRIVILEGE LOG** |

### MALLINCKRODT'S OBJECTION TO
### DISCOVERY RULING NO. 14, PART 2 REGARDING PRODUCTION OF
### MALLINCKRODT'S PRIVILEGED DOCUMENTS

Mallinckrodt LLC and SpecGX LLC ("Mallinckrodt") hereby object in part to the Special Master's Discovery Ruling No. 14, Part 2 (the "Ruling"), finalized on February 9, 2019. The Ruling confirmed that certain documents listed on Mallinckrodt's privilege log were properly withheld, while erroneously concluding that certain documents subject to the attorney-client privilege should be produced. Mallinckrodt respectfully requests that the Ruling be reversed as to those documents, identified as Privilege Nos. 50, 55, 85, 128, and 129 (the "Relevant Documents").

### BACKGROUND

The Ruling pertains to 14 documents provided for the Special Master's *in camera* review to resolve an ongoing dispute with the Plaintiffs' Executive Committee ("PEC") regarding Mallinckrodt's privilege logs for the Track One cases. To date, Mallinckrodt has produced more than 8.5 million pages of documents. Mallinckrodt has withheld a small fraction of that number

because they were subject to the attorney-client and work-product privileges, and appropriately served privilege logs on Plaintiffs.  Since November 2018, the PEC has challenged certain of Mallinckrodt's assertions of these privileges.  Mallinckrodt has cooperated and discussed these issues during meet and confers and voluntarily disclosed certain documents over which it initially claimed privilege.

On December 19, 2018, the PEC wrote to Special Master David Cohen to compel production of a handpicked "sample" of documents recorded on Mallinckrodt's logs.  Ex. A (PEC's Challenge to Mallinckrodt Privilege Claims, December 19, 2018).  The PEC did not provide Mallinckrodt or the Special Master with any explanation of how it arrived at its sample, nor did it meet and confer with Mallinckrodt about it.  Nonetheless, Mallinckrodt provided the selected 20 documents to the Special Master on December 26, 2018.[1]  At that time, Mallinckrodt agreed to fully produce Priv Nos. 16, 22, 144, 153, and 207 and produce Priv No. 109 with redactions, but reaffirmed its claims as to the other documents.

The Special Master issued an initial ruling on the remaining 14 documents on February 7, 2019 and formalized it on February 9.  The Ruling upheld Mallinckrodt's privilege designations for eight of the documents, confirming for each that "privilege applies and the document may be withheld."  Ex. B (Discovery Ruling No. 14, Part 2, Regarding Mallinckrodt Privilege Log) at 3-5. The Ruling ordered several other documents, including the Relevant Documents, be produced.  Mallinckrodt now objects to the Ruling regarding the Relevant Documents, which are protected by the attorney-client privilege and thus properly withheld.[2]

---

[1] Mallinckrodt offers to share these documents in full *in camera* if they will aid this Court's review of the Ruling.

[2] Mallinckrodt does not object to the Special Master's ruling regarding Priv No. 18, with the understanding that the Special Master's ruling as to Priv No. 18 is limited to that document only, and that other documents regarding that subject matter may be privileged.

**ARGUMENT**

The Special Master's Ruling regarding the Relevant Documents relies on an artificially narrow interpretation of the attorney-client privilege that directly conflicts with the law of the Sixth Circuit and this District. In particular, the Ruling errs by failing to recognize that (i) the fundamental *legal* role of "in-house" counsel is to review and opine on business issues, (ii) the inclusion of key business personnel on emails does not render attorney-client communications "non-legal," and (iii) the communication of information *to* counsel for the purpose of obtaining legal advice is privileged.

The roles of the in-house attorney cannot neatly be delineated between legal and business matters. This Court has accordingly recognized that, "[a]s legal and business issues are often inextricably intertwined, in determining whether advice is predominately legal or business in nature, ***courts should resolve doubts in favor of the privilege***." *Ganley v. Mazda N. Am. Operations*, No. 1:04 CV 2000, 2007 WL 9706988, at *5 (N.D. Ohio Nov. 15, 2007) (emphasis added) (quotation omitted). *See also Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (recognizing that where both legal and non-legal advice is sought, the court "consider[s] whether the predominant purpose of the communication is to render or solicit legal advice" and that "legal advice of any kind" is privileged) (quoting *In re Cty. of Erie,* 473 F.3d 413, 419 (2d Cir. 2007)); *In re OM Grp. Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005) (noting that under the attorney-client privilege, "documents prepared for the purpose of obtaining or rendering legal advice are protected even though the documents also reflect or include business issues."). In sharp contrast to the Court's guidance in *Ganley*, the Special Master here resolved any doubts regarding the Relevant Documents *against* the privilege.

In addition, the Special Master observed that "many of the emails I reviewed are actually

innocuous" and therefore "it is . . . worth considering whether a fight over any particular document is even worth it." Ex. B at 2. But the fundamental protections of the attorney-client privilege do not depend on whether a document is viewed as "innocuous." *See, e.g.,* Ohio Rules of Prof'l Conduct r. 1.6(a) (2017); Model Rules of Prof'l Conduct r. 1.6(a) (ABA 2018). Indeed, the production of even "innocuous" privileged documents may result in a waiver with respect to other privileged documents regarding the same subject matter. It is error to order them produced.

This Court decides all objections to conclusions of matters of law, including a determination that a document is not privileged, *de novo*. Fed. R. Civ. P. 53(f)(4). *See*, e.g. *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) ("Whether the attorney-client privilege applies to a given situation is a mixed question of law and fact that this court reviews de novo."). For the reasons explained further below, the Court should overturn the Special Master's Ruling regarding the Relevant Documents and affirm Mallinckrodt's privilege claims.

**I. The Review and Approval of Documents and Proposals Is an Essential Part of the In-House Attorney's Legal Role.**

The Special Master found that Priv Nos. 50, 55, and 85 were not privileged because "the mere reference to counsel as having agreed to" or "approved" of certain materials, or "the mere reference to seeking approval" was "insufficient to invoke privilege." Ex. B at 3-4. These determinations misapprehend the nature of the legal advice reflected in the documents and the law of the Sixth Circuit and this District. In fact, these documents are prime examples of the very type of privileged communication this Court has recognized in previous decisions.

**a. Priv No. 50: MNKCTRL0000556872**

While the Special Master's ruling states that "mere reference to counsel's having agreed to the business process outlined is insufficient to invoke privilege," the "business process outlined" is *not* the primary reason for which legal advice was sought. Ex. B at 3. Rather, that process stems

from Mallinckrodt Associate General Counsel Stuart Kim and Associate General Counsel Brian Elsbernd's having reviewed and approved of a draft letter relating to marketing. It is because of their approval of the *letter* that the "business process" – which the email clearly indicates is being suggested for the first time by a non-attorney – can now be implemented. Responding to requests for review and approval of business-related communications (and their subject matter) is an integral part of the in-house counsel role. *See Alomari*, 626 F. App'x at 571 (holding that an attorney's advice on drafting a response to a media inquiry was privileged due to the "important legal implications" resulting from the publication of the statement). As such, any reflection of a request for advice directed to Mallinckrodt's attorneys regarding review of a communication is protected by the attorney-client privilege, even where business and legal issues present themselves simultaneously. *See Ganley*, 2007 WL 9706988, at *4 ("Where legal advice is sought from a professional in his capacity as a legal advisor, the communications relating to that purpose that are made in confidence by the client are protected by the attorney-client privilege."); *In re OM Grp. Sec. Litig.*, 226 F.R.D. at 587 ("[T]he fact that business considerations are weighed in the rendering of legal advice will not vitiate the attorney-client privilege.)." In this case, the document reflects Mallinckrodt attorneys' assessment of legality and liability associated with the letter as requested by other Mallinckrodt employees, and thus is protected by the attorney-client privilege.

### b. Priv No. 55: MNKCTRL0000559947

The Special Master designated this document "not privileged" after erroneously concluding that it contained a "mere reference to counsel's having approved certain agreements" and that such references were "insufficient to invoke privilege." Ex. B at 4. The document reflects solicitation of attorney advice on legal implications of a third-party engagement, which *is* the type of communication protected by the attorney-client privilege. *See*, *e.g. Alomari*, 626 F. App'x at

571; *Ganley*, 2007 WL 9706988, at *5 (holding that attorney-client privilege protects "documents [that] reflect legal advice given to" defendant by its attorneys). Indeed, the document describes far more than the approval of the agreement itself. The document notes that Mallinckrodt Associate General Counsel Stuart Kim and the Mallinckrodt Legal Department are in the process of developing certain contracts, revealing the request for legal advice related to the relevant engagement of third-party services. As discussed previously, reviewing documents and business processes are at the heart of the attorney-client privilege in the in-house attorney context. *See Ganley*, 2007 WL 9706988, at *4 ("Clients may communicate confidentially with their business lawyers, as much as with their litigation counsel….") (citation omitted); *In re OM Grp. Sec. Litig.*, 226 F.R.D. at 589 (finding that emails containing confidential communications "made, at least in part, for the purpose" of obtaining legal advice were privileged "even though these communications may contain information pertaining to business advice").

### c. Priv No. 85: MNKCTRL0000702746

The Special Master erroneously found that this document was not privileged because it "simply asks [its recipients] to 'provide approval'" and the "mere reference to seeking approval is insufficient to invoke privilege." Ex. B at 4. Here, as the email itself shows, the request to the attorney was not for a blanket "approval" but rather a *review* of the communications planned for the field. Such a request inherently involves the seeking of legal advice, and is therefore protected by the attorney-client privilege. In other words, the "reference to seeking approval" *by an attorney* is privileged. *See Ganley*, 2007 WL 9706988, at *5 (observing that the seeking of legal advice from business lawyers is "protected by the attorney-client privilege"). By way of example, if counsel had approved the compensation plan at issue in this document, Mallinckrodt would be

able to point to that approval as a basis for believing the plan was legally sound. That is to say, an approval can constitute the "advice of counsel."

## II. The Mere Presence of Multiple Recipients Does Not Undermine the Claim of Privilege.

The Special Master also erred when he held that Priv No. 85 was not privileged because "the email is sent to numerous non-attorney recipients and simply asks them to 'provide approval'" and "seeking approval is insufficient to invoke privilege, and receipt by non-attorney[s] undercuts the claim of privilege." Ex. B at 4. First, as just discussed, a request for legal "approval" is a request for legal advice. Second, the Special Master's analysis ignores the practical realities of working in a corporation with nearly 4,000 employees, particularly one as heavily regulated as Mallinckrodt. The Special Master writes, "[w]here an email regarding a business matter is sent to a group of folks, one or a few of whom are attorneys, for the purpose of keeping everyone in the loop (my phrase), and without requesting or containing legal advice, the email is not privileged." Ex. B at 2. But the email identified as Priv No 85 was not sent merely to keep "a group of folks" "in the loop." Rather, this document was sent to several recipients because they needed to review and provide their approval. And requests for approval by an attorney, including for planned business-related communications to sales representatives, constitute a request for legal advice concerning these communications' compliance with applicable laws. *See Alomari*, 626 F. App'x at 592 (citing *Rush v. Columbus Mun. Sch. Dist.*, No. 99-60910, 2000 WL 1598021, at *2 (5th Cir. Sept. 28, 2000) (holding that communications between a school board and its attorney were privileged, "even those communications not addressed directly to the attorney")); *In re OM Grp. Sec. Litig.*, 226 F.R.D. at 589 (holding that emails at issue were privileged even where the law firm "did not actively participate in these [company] employee communications," as "counsel was

indirectly involved because [law firm] members were recipients of the communications").[3]

### III. The Special Master Incorrectly Concluded that Mallinckrodt Asserted the Attorney Client Privilege for the "Mere Recitation" of Facts.

The Special Master incorrectly ruled that Priv Nos. 128 and 129 involved a "mere listing of facts disclosed at a press conference" and a "mere recitation of the results of a medication-inactivation study." Ex. B at 4-5. The documents at issue here are neither a "mere" sharing of facts, nor a mere recitation of study results in a vacuum. Rather, the documents reflect the sharing of information for a specific purpose: the provision of legal advice, including for the finalization of an agreement. Such communications are privileged. *See Alomari*, 626 F. App'x at 570-71 (holding that information shared with an attorney to obtain legal advice is privileged); *In re OM Grp. Sec. Litig.*, 226 F.R.D. at 587-588 (holding that notes and memoranda taken from interviews of a client's employees were privileged because the purpose of the fact-gathering was to enable a law firm to provide legal advice). Indeed, the ability to confidentially communicate information *to an attorney* is at the very core of the privilege. *In re Perrigo Co.*, 128 F.3d 430, 436 (6th Cir. 1997) ("The privilege rests on the belief that in an adversary system, a client's full disclosure to an attorney is a necessary predicate to skillful advocacy and fully informed legal advice.") (quoting *Chase Manhattan Bank, N.A. v. Turner & Newall*, 964 F.2d 159, 164-165 (2d Cir. 1992)).

#### a. Priv No. 128: MNKCTRL0000716917

Similarly, in concluding that "[t]he mere listing of facts disclosed at a press conference to numerous employees, one of whom is an attorney, is insufficient to invoke privilege," the Ruling ignores the reason those facts were shared with Mallinckrodt's in-house counsel: the provision

---

[3] The alternative reality in which such group emails are not privileged would be entirely unworkable. Were attorneys segregated from group conversations, they may be deprived of information necessary to render legal advice or fall behind in the review of rapidly developing documents or events. It is essential to keep attorneys and non-attorneys quite literally on the same page.

information necessary to obtain legal advice. Ex. B at 4. The information shared at an FDA teleconference, for example, may inform potential labeling changes regarding Mallinckrodt products. Mallinckrodt Associate General Counsel Stuart Kim was informed of such developments so that he could advise the company on how to interpret, assess and apply the new FDA guidelines—a plainly legal function. *See Alomari*, 626 F. App'x at 570-71 ("Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct….").

Mr. Kim does, in fact, provide legal advice precisely on these types of labeling changes, and the information in this document was, in fact, provided to Mr. Kim to inform him of areas of potential legal risk and importance so that he could advise the Company accordingly. It does not matter that Mr. Kim's legal advice itself is not reflected on the face of the document. The provision of this necessary and material information, a precursor to Mr. Kim's legal analysis, is protected. *Alomari*, 626 F. App'x at 571 ("[T]he privilege protects communications necessary to *obtain* legal advice. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) . . . . No caselaw suggests that communications are privileged only when they are *utilized* to dispense legal advice.") (quotation omitted).

### b. Priv No. 129: MNKCTRL0000748825

The Special Master's determination that "[t]he mere recitation of the results of a medication-inactivation study to numerous employees, some of whom are attorneys, is insufficient to invoke privilege" likewise ignores the significance of the "recitation." Reciting such information to three Mallinckrodt attorneys regarding the results of a study on Xartemis XR disposal pouches was necessary to obtain legal advice regarding the next steps in the project, including finalizing an agreement with the manufacturer of the pouches. Ex. B at 5. As discussed

*supra*, such communications made for the purpose of soliciting advice are protected by the attorney client privilege. *See Alomari*, 626 F. App'x at 570-71 (observing that the privilege applies regardless of whether communications made to obtain legal advice were actually "utilized to dispense legal advice"); *In re OM Grp. Sec. Litig.*, 226 F.R.D. at 589 (finding that interview notes, outlines, and memoranda prepared by accountants in order to assist attorneys in their work were privileged because they were "reasonably related" to the purpose of guiding the attorneys' advice to the client).

## CONCLUSION

For the reasons stated above, Mallinckrodt requests that this Court affirm Mallinckrodt's claim of privilege over the documents identified as Priv Nos. 50, 55, 85, 128, and 129 and that the Ruling be overruled in pertinent part.

Dated: February 13, 2019

Respectfully submitted,

/s/ *Andrew J. O'Connor*
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
(617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Attorneys for Defendants Mallinckrodt LLC and SpecGx LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019, a copy of the foregoing **Objection to Discovery Ruling No. 14, Part 2 Regarding Mallinckrodt Privilege Log** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: February 13, 2019

Respectfully submitted,

/s/ *Andrew J. O'Connor*
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
(617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Attorneys for Defendants Mallinckrodt LLC and SpecGx LLC*