# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to: | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## DECLARATION OF ROBERT J. TUCKER, ESQ.

I, Robert J. Tucker, declare:

1. I am an attorney at the law firm of Baker Hostetler LLP. I make this declaration in support of Cardinal Health's response to the September 28, 2018 letter submitted by Plaintiffs' Executive Committee, in which Plaintiffs challenge the assertion of privilege by Cardinal Health over a document that was marked as an exhibit at the August 7, 2018 deposition of Jennifer Norris, Cardinal Health's corporate representative. The document was clawed back by counsel for Cardinal Health on the record at the deposition, shortly after being marked. The information contained herein is based on my personal knowledge, or is the result of a good faith investigation, review of documents, and knowledge gained through interviews of the individuals involved.

2. The document in question was produced to Plaintiffs in the MDL pursuant to Case Management Order No.1 entered on April 11, 2018 ("CMO No. 1"), which required Cardinal Health (and all defendants) to produce all prior productions of documents in governmental actions related to the distribution of opioids. CMO No. 1 set a deadline of June 11, 2018, two months later, for production of all prior productions.

3. One of those prior productions was made in 2007 and 2008 to the United States Drug Enforcement Administration ("DEA") in response to a series of regulatory actions relating

*Highly Confidential—Subject to MDL 2804 Protective Order (CMO No. 2)*

to Cardinal Health's distribution of controlled substances ("2008 DEA Action"). BakerHostetler was retained by Cardinal Health to represent it in the 2008 DEA Action and was responsible for reviewing and producing responsive documents to the DEA.  BakerHostetler currently maintains its files from its representation of Cardinal Health in the 2008 DEA Action in storage and other archives.

4. Following the entry of CMO No. 1, BakerHostetler worked quickly to search for, identify, locate, and call back from storage boxes potentially containing the prior productions from the 2008 DEA Action.

5. The boxes contained hundreds of CDs and/or DVDs, several hard drives, and other hard copy documents. The CDs, DVDs, hard drives, and hard copy documents were generally reviewed to identify whether they contained Bates numbering or other indicia that they had been produced to the DEA in the 2008 DEA Action, such as external markings on the media or confidentiality labels.

6. The belief of the attorneys reviewing the contents of the boxes in May 2018 was that everything on the discs and hard drives identified was produced to the DEA in the 2008 DEA Action.

7. The electronic discovery vendor Cardinal Health retained for purposes of document production in the current opioid litigation visited BakerHostetler's Columbus, Ohio offices and picked up the physical media that had been identified as containing the productions made in the 2008 DEA Action. The attorneys involved believed the media provided to Cardinal Health's electronic discovery vendor exclusively contained productions made to the DEA in the 2008 DEA Action.

8. The vendor extracted and uploaded onto a Relativity database the documents contained on the media. Those documents were then Bates-stamped and produced in this MDL by Cardinal Health without further review for privilege or relevance due to time constraints and the volume of documents contained in those productions. The documents produced in this MDL included electronic files in their native formats and in production load files containing TIFF images.

9. Shortly after Cardinal Health clawed back the privileged document at Ms. Norris's deposition, attorneys from BakerHostetler began investigating the appearance of the privileged document in the production set. BakerHostetler attorneys interviewed their colleagues who had worked on the 2008 DEA Action and conducted further review of historical files and communications.

10. As a result of its investigation, BakerHostetler has concluded that privileged and work-product protected documents were inadvertently included in Cardinal Health's 2018 production.

11. First, within one of the boxes believed to contain media produced to the DEA in 2008 were five discs containing privileged documents that were inadvertently produced to the DEA in 2008, and later clawed back in that matter. The face of these discs suggested they were part of the productions that went to DEA in 2008, but did not indicate they were later clawed back. After further review, BakerHostetler discovered that the binding of the case containing the discs was labeled with a handwritten note that stated "DVDs containing Priv Docs – Removed & Rebranded on Profile DVDs." BakerHostetler understands privileged documents on those discs were clawed back from DEA in 2008 after having been inadvertently produced, and replacement discs excluding the privileged documents were produced to DEA. Both the discs that contained

*Highly Confidential—Subject to MDL 2804 Protective Order (CMO No. 2)*

clawed-back documents and the replacement discs were included in the 2018 production in the MDL.

12. The production of the clawed-back privileged documents again in 2018 as part of the production from the 2008 DEA Action was inadvertent.

13. Second, the 2018 production included media not produced to DEA in 2008. In 2008, DEA received electronic documents in native format only. The 2018 production in the MDL, however, included an inadvertent production of media containing Summation load files with TIFF images that were created and retained in 2008 solely as BakerHostetler's work product.

14. The inadvertently produced media described in Paragraphs 11-13 was labeled consistent with the media produced in 2008, and stored as part of a closed file from a decade ago. Due to time constraints in complying with CMO No. 1 and the large volume of prior productions, it was not feasible to conduct a review of each production disc and hard drive prior to production in 2018, leading to the inadvertent production at issue.

15. Third, additional privileged documents were inadvertently produced in the 2008 DEA Action, despite a good-faith effort to withhold from production any privileged documents at that time. Shortly after the productions to DEA in 2008 were completed, the 2008 DEA Action was resolved, and the documents and files related to that matter were ultimately transferred to storage offsite. BakerHostetler did not discover these additional privileged documents had been inadvertently produced to DEA in 2008 until investigating the contents of the 2008 production to DEA after the deposition of Ms. Norris.

16. Any production of privileged documents to the DEA in 2008 was not intentional and knowing. There has never been an intentional waiver of Cardinal Health' privilege over

*Highly Confidential—Subject to MDL 2804 Protective Order (CMO No. 2)*

these documents. BakerHostetler undertook significant efforts to protect privileged documents from being produced during the 2008 DEA Action.

17. Hard copy documents were reviewed by attorneys in BakerHostetler's New York office. Documents were reviewed for attorney-client privileged communications and attorney work product. Hundreds of hard copy documents were identified as privileged or work product and were withheld from production in 2008.

18. Electronically-stored information was reviewed at four levels. First-level review was conducted by a team of contract review attorneys at Lumen Legal, acting at the direction of BakerHostetler. Second-, third-, and fourth-level review was conducted by BakerHostetler attorneys, with assistance from attorneys from another law firm. All levels of review evaluated and identified potentially privileged and work product documents to be removed from the document production and withheld from disclosure to DEA. And the fourth level of document review was exclusively focused on making final determinations on privilege. Throughout the review, potentially privileged documents were highlighted for reviewers based on a set of search terms.

19. Cover letters enclosing document productions to DEA in 2008 underscore that privileged documents were intended to be removed from the productions and reserved the right to claw back any inadvertently produced documents:

> Please be advised that by producing the above documents and all other documents previously provided to DEA, Cardinal Health does not intend to waive the protection of the attorney work-product doctrine, attorney-client privilege, or any other applicable privilege, protection or immunity. Cardinal Health has screened, and its intention is to continue to screen, all documents produced for privilege, protections, or immunities, including the attorney-client privilege, the attorney work-product doctrine or any other legal privilege, protection, or immunity before they are produced to the Government. Because of the volume of records that have been produced and that will continue to be produced and the speed with which Cardinal Health is attempting to produce them, Cardinal Health requests and expects that DEA will return to Cardinal Health, upon

request, any documents that we later discover to be privileged or otherwise protected and to have been inadvertently produced. This request is consistent with Virginia Bar Ethical Rules which require a lawyer, who "discovers that he has a confidential documents inadvertently transmitted by opposing counsel . . . to notify opposing counsel to honor opposing counsel's instructions about the disposition of the document, and not to use the document in contravention of opposing counsel's request." See, Virginia Legal Ethics Opinion Number 1702 (November 24, 1997). Accordingly, should you identify any material which you believe may be subject to any privilege, protection or immunity, you will know from the terms of this letter that such material was inadvertently produced, and we request that you notify us immediately so we may discuss the matter. We further request that DEA agree not to argue or assert that any inadvertent production of a privileged or protected document constitutes a waiver or a subject matter waiver of any privilege, protection or immunity. We believe these requests to be fair and consistent with the applicable ethical obligation governing attorneys.

20.  In producing documents to the DEA, Cardinal Health sought to achieve the goal of fully cooperating with the DEA investigation while preserving and protecting its attorney-client and work product privileges.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements in this Declaration are true and correct to the best of my knowledge, information, and belief. Executed this 3rd day of October, 2018.

_____
Robert J. Tucker

*Highly Confidential—Subject to MDL 2804 Protective Order (CMO No. 2)*