## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION
2804

MDL No. 2804
CASE NO.: 1:17-MD-

Hon. Dan A. Polster

*THIS DOCUMENT RELATES TO ALL CASES*

### RESPONSE TO MOTION TO MODIFY CMO-1
### TO PROVIDEA MECHANISM TO DISMISS IMPROPERLY
### NAMED DEFENDANTS

The PEC files this Response to Kroger's Motion to Modify CMO-1 to Provide a

Mechanism to Dismiss Improperly Named Defendants.[1] [Doc # 1350]  Defendants ask

this Court to amend CMO-1 to provide a deadlines for Plaintiffs to dismiss distributor

defendants: 1) who are named in error by plaintiffs located where the defendant has

or had no physical or business presence during the relevant time period; and 2)

defendants who are named by plaintiffs located where the defendant is responsible

for no more than 5% of the market share of opioids distributed.  For the reasons noted

below, the Motion should be denied.

### PROCEDURAL BACKGROUND

In this Court's November 8, 2018 Order, the Court Ordered that the PEC make

available reports derived from the ARCOS data that list, for every county or county

equivalent,  all  manufacturers,  distributors  and  pharmacies  that  manufactured,

---

[1] Defendants Rite Aid of Maryland, Inc., HBC Service Company and Discount Drug Mart, Inc. joined this Motion
and all moving Defendants will be referred to collectively herein as "Defendants"

distributed or sold of the prescription opioids distributed in that count. [Doc# 1106]. The Court further required the reports include the following:

>     (1)     Manufacturer Reports reflecting the names of all labelers who manufactured and/or labeled more than five percent of the market share of opioids distributed in the relevant county or county-equivalent in at least three of the nine years available in the ARCOS data;

>     (2)     Distributor Reports reflecting the name of each distributor who distributed more than five percent (5%) of the market share of opioids distributed in the relevant county or county-equivalent in at least three of the nine years available in the ARCOS data;

>     (3)     Pharmacy Reports reflecting all opioid shipments to each pharmacy in the relevant county or county equivalent.

*Id.* at 2. The Court set a deadline of March 16, 2019 for Plaintiffs in this MDL to amend their Complaints based on the ARCOS data, including adding named Defendants and/or dismissing Defendants. *Id.* at 2-3.

In its brief, Defendant Kroger asserts that it has already been named in 100 cases where it claims it has no store or Kroger-owned pharmacies. [Doc # 1350 at 3]. Defendant Rite Aid of Maryland, Inc. claims it has been "improperly named in at least 65 cases." *Id.* at fn3. Defendants HBC Service Company and Discount Drug Mart claim to be "improperly named in at least one complaint." *Id.* The Defendants acknowledge that there are currently over 1,500 cases in this multidistrict litigation. *Id.* at 3.

In an attempt to resolve this matter, Plaintiffs have requested that the Defendants identify the specific cases in which they claim to be improperly named so that the Plaintiffs can analyze whether or not to dismiss the Defendants from those

identified cases during the amendment process or if a legal basis exists to maintain the Defendants as parties.  Only Kroger responded.

I.      **This Court Should Deny the Defendants' Request that the Court Impose Deadlines for Dismissal of Defendants with No Presence in Plaintiff Locality as Defendants Proposed Motion Process is an Unnecessary Distraction for the Court and the Parties who are Concentrating on Preparing the Bellwether Cases for Trial.**

A.   **Defendants' Proposal creates an inappropriate bright line test.**

Defendants are asking this Court to create and apply a bright line test in determining whether jurisdiction exists over the Defendants in localities[2] in which it claims there is either no store or store-owned pharmacy. This bright line test is inappropriate as the circumstances require a case-by-case analysis of the geography surrounding each such locality. In many instances, the locality is either rural, with limited resources which necessitates that citizens travel to a neighboring locality to obtain prescriptions. In other instances, the locality shares a border with another locality wherein a store or store-owned pharmacy is located. In such cases, it is feasible that some residents would cross the border in order to fill prescriptions.

For instance, a sample review of Kroger's list reveals instances there was not a Kroger or Kroger Pharmacy within the corporate limits of Plaintiff's locality, but there is a Kroger Pharmacy either actually within the jurisdiction or within a reasonably short travel distance.  For example, Kroger identified San Bernardino County, CA and El Dorado County, CA as two of the cases in which it was improperly

---

[2] For consistency, Plaintiffs adopt the use of Defendants' term "localities" to convey the point that the plaintiffs include towns, cities, and various communities united by a central form of local government that encompass a distinct area limited by identifiable boundaries. [Doc # 1350 at fn2].

named. However, an internet search reveals that there is a Kroger-owned Ralph's which has a pharmacy in Fontana, California which is in San Bernardino County. As for El Dorado County, which includes the city of Lake Tahoe, there is a Kroger-owned Smith's which has a pharmacy in Gardnerville, Nevada which is a mere 13.2 miles away.

Defendants' motion requests a "mechanism" by which the Defendants could file a single motion to dismiss based on the complete lack of a pharmacy in the locality and timeframe subject to the complaint and the affected plaintiffs be given the opportunity to agree to dismiss or respond to question of standing and jurisdiction. In support of its request for a "mechanism" to brief the issue, Defendants contend that the Plaintiffs lack standing and the Court lacks jurisdiction based on the argument that "there is no rational causal connection between the harm done to the locality and the filling of prescriptions elsewhere in the country." [Doc # 1350 at 5-6].

Defendants' reliance on *City of New Haven v. Purdue Pharma, L.P., et al*[3] in support of its claim that this Court lacks jurisdiction is misplaced. First, the decision by the Superior Court for the Judicial District of Hartford, Connecticut does not even directly address the issue of whether a Plaintiff would have standing in a case against a pharmacy that is not within the Plaintiff's locality instead the Court merely held, based on state law, that City's claims for damages in the opioid cases were too attenuated and indirect to support its claims. *Id.* at 8-9. Second, the ruling in *City of New Haven* is directly at odds with this Court's ruling on the issue of Article III

---

[3] Memorandum of Decision Dismissing Cases for Lack of Jurisdiction, X07 HHD CV 17-6086134 (Jan. 8, 2019).

standing in *The County of Summit Ohio, et al. v. Purdue Pharma, L.P., et al.,* Case No. 18-op-45090. This Court overruled the Pharmacy Defendants' Objections to the Report and Recommendation of the United States Magistrate Judge. [Doc# 1203 at 2]. The Magistrate Judge rejected the Pharmacies' argument that the Plaintiffs had not suffered an "injury in fact" but only a "generalized grievance" and that Plaintiffs' injuries were not "fairly traceable" to the Pharmacies' conduct. [Doc # 1025 at 100-102]. The Magistrate found that Article III standing requires: "(1) an 'injury in fact' (2) that is 'fairly traceable to the challenged actions of the defendant, and not the result of the independent action of some third party not before the court' and (3) that is 'likely to be redressed by the requested relief.'" *Id.* (quoting *Bank of Am. Corp. v. City of Miami*, 137 S.Ct. 1296, 1302 (2017); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The issue of standing is case specific. Contrary to Defendants' claim, this matter cannot be collectively disposed of by a single motion and response. These cases have been stayed and there is simply no reason to lift the stay to permit the litigation of standing and jurisdiction on some 167 cases.

Additionally, contrary to Defendants' assertion, this Court's Order dismissing Allergan's third-party complaint against Pfizer is not relevant as this Court merely concluded that it would not exercise supplemental jurisdiction over Allergan's state-law claims for contribution and indemnification. [Doc. # 1201 at 4].

**B.    Defendants' proposal does not promote the just and efficient conduct of this litigation, rather, it creates an unnecessary burden and distraction.**

The process suggested by the Defendants would create an unnecessary burden and distraction for not only the counsel but for the Special Masters and this Court. Currently, Plaintiffs are deep in the process of determining whether to amend their complaints to add or dismiss parties. This evaluation may moot some of Defendants' issues with being named in particular cases.

More importantly, however, the parties' efforts are focused on meeting the deadlines in the Track One Cases in which trial is scheduled in seven months. Expert disclosures are due in a month. Expert discovery will commence immediately thereafter. The parties are participating in weekly calls with Special Master Cohen addressing discovery motions and other issues. In addition, discovery will soon begin in the Track Two Cases.

This Court established the scope of CMO-1 in order to "conserve judicial resources, reduce duplicative service, avoid duplicative discovery, serve the convenience of the parties and witnesses, and promote the just and efficient conduct of this litigation." [Doc # 232 at 1]. As part of CMO-1, this Court recognized that the parties and the Court would be unable to meet the deadlines in CMO-1 if there was not a limit on the filing of motions other than those permitted by the CMO-1 motions track. Thus, CMO-1 provided: "No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties." *Id.* at 11, ¶6(g). At the request of the defendants, the Court also set a motion track for "briefing on threshold legal issues on common claims." *Id.* at 19. Extensive briefing was concluded. Magistrate Ruiz now has pending before him motions to

6

dismiss in Cabell County, West Virginia (which is a CT-2 case); Broward County Florida; Monroe County, Michigan; City of Chicago; West Boca, Florida; Cleveland Bakers and Teamsters; State of Alabama; and the tribes of The Muscogee Creek Nation and The Blackfeet Tribe.   Briefing these issues in multiple cases across multiple jurisdictions is not the most efficient use of judicial resources which are best used resolving the pending motions and the other motions that will be made in the Case Track One and Two cases.

## C.   Defendants are not prejudiced by CMO-1 and the modification requested is unnecessary.

Finally, Defendants' claims that it is prejudiced by being named a Defendant in localities where there is no store or store-owned pharmacy because they are "paying an inflated and arbitrary portion of the Special Master fees" and "is impeded from engaging in meaningful settlement discussions." [Doc # 1350 at 3-4]. As set forth above, the mere fact that there is no store or pharmacy in a certain locality does not preclude a claim against the Defendants. A determination as to whether a particular Plaintiff has standing to proceed against a particular Defendant is case specific.

Federal Rule of Civil Procedure 53(a)(3) merely provides that "in appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Defendants' claim that they pay inflated and arbitrary portions of the Special Master fees is based on an agreement among Defendants as to how to split the Special Master fees. This Court merely ordered that Defendants shall bear 50% of the cost of the Special Master and plaintiffs shall bear 50% of the cost. [Doc # 140]. This Court did not determine

how the Defendants split the cost amongst themselves. In fact, this Court ordered the Defendants to come to an agreement regarding each Defendants' share. [Doc # 229]. The defendants advised this Court that they had "agreed upon the allocation of 'shares' to fund the account, recognizing that those shares might be adjusted over time for various reasons, including as new parties are added or the number of cases in which existing defendants are named increase." [Doc # 357].

Thus, the remedy Defendants seek to address any perceived prejudice is not the proper subject of motion practice or the creation of a bright line dismissal rule for Defendants. Rather, any problem is an administrative matter that should be resolved by the Defendants' Executive Committee and the Special Masters with input from the Court if necessary. Finally, Defendants provide no rationale as to how the potential uncertainty of a minimal number of cases [100 for Kroger, 65 for Rite-Aid, and 1 each for HBC and DDM] out of some 1,500 impedes them from engaging in meaningful settlement discussions.

## II.     This Court Should Deny the Defendants' Request that the Court Impose a Deadline for Dismissal of Defendants with No More than 5% of Market Share in Plaintiff Locality.

The Defendants claim that the Plaintiffs should be required to "identify the defendants responsible for *no more than 5%* of the share of opioids manufactured, distributed, or sold according to the ARCOS data" and "set a deadline for a motion to dismiss based on the isolated and limited issue of defendants' *de minimis* liability." [Doc # 1350 at 8]. In essence, the Defendants are asking this Court to lift the stay on these cases and permit motions for summary judgment on the issue of causation without the benefit of discovery.

First, the moving Defendants are Pharmacy Defendants. Plaintiffs note that this Court's Order did not impose a 5% threshold on ARCOS data relating to Pharmacy Reports. [Doc # 1106 at 2-3]. Second, while this Court set forth a 5% threshold on ARCOS data for the PEC Report pertaining to Manufacturer Reports and Distributor Reports [*id.*], the Court in no way limited the Plaintiff's naming of Defendants to those identified by the 5% threshold. The Court merely noted that "Plaintiffs in MDL cases may then use this information to amend their complaints…." [*Id.* (footnotes omitted)]. This Court has already rejected a similar argument made by the Defendants in opposition to the Short Form Complaint when it ruled that it "did not intend for its order to be read so narrowly" and that "[o]f course, stating that MDL plaintiffs **may** use the report to amend their complaints should not and does not imply that they **must** use the report, or that they may use **only** the ARCOS data to amend their pleadings." [Doc. # 1282 at 2 (emphasis in original)]. Additionally, this Court rejected the Defendants' request that the Plaintiffs should be required to

9

disclose the ARCOS data on which their decision to add new defendants is based as unnecessary because the Defendants already have the ARCOS data. [*Id.*]

The Defendants have provided no compelling reason as to why this Court should lift the stay on upward of 1,500 cases for the express purpose of summary judgment briefing on causation in cases in which discovery has not been conducted.

### CONCLUSION

Wherefore, for all of the above stated reasons, Plaintiffs respectfully request this Court deny the Defendants' request for modification of CMO-1 to include deadlines for the dismissal of Defendants with no presence in a Plaintiff's Locality and Defendants with no more than 5% of the market share in Plaintiffs' localities.

Respectfully submitted,

 /s/Anthony J. Majestro
Anthony J. Majestro, Esquire (WV Bar #5165)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P1200
Charleston, West Virginia 25301
(304) 346-2889
Fax: (304) 346-2895
amajestro@powellmajestro.com

Paul T. Farrell, Jr.
**Greene, Ketchum, Farrell,**
**Bailey & Tweel, LLP**
419 - 11th Street (25701)/ P.O. Box 2389
Huntington, West Virginia 25724-2389
800.479.0053 or 304.525.9115
Fax:     304.529.3284
paul@greeneketchum.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

 /s/Anthony J. Majestro_____
Anthony J. Majestro, Esquire (WV Bar #5165)