**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 1:17-md-02804 |
| | Hon. Dan Aaron Polster |

**DEFENDANTS' BRIEFING ON VIABILITY OF**
**PUBLIC NUISANCE CLAIMS NATIONWIDE**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .........................................................................................................................5

I.     Numerous States Expressly Reject Public Nuisance Claims to Remedy Harms
       Caused By Products. ..................................................................................................5

II.    Under *Erie,* the Absence of Authority Recognizing Product-based Public
       Nuisance Claims in Other States Forecloses Such Application by a Federal Court..........10

       A.     The Lack of Analogous Case Law in These States Counsels Against
              Extending Public Nuisance Law to the Foreign Context of Products. .................12
       B.     The Latest Restatement Disapproves of the Expansion of Public Nuisance
              Liability Advocated by Plaintiffs.........................................................................13
       C.     The Traditional and Majority Rule Is to Limit Public Nuisance to Its
              Origins in the Land and Environment Context. ....................................................14

III.   Plaintiffs Cannot Satisfy the Elements of a Public Nuisance Cause of Action. ...............15

       A.     There is No Public Right to Be Free From Prescription Medications That
              Allegedly Are Deceptively Marketed, Mis-Prescribed, or Misused.....................17
       B.     Conduct by Manufacturers, Distributors, and Retailers Did Not
              Proximately Cause National Opioid Abuse. ........................................................21
       C.     Manufacturers, Distributors, and Retailers Do Not Maintain Control Over
              the Instrumentality of the Nuisance. ...................................................................22

IV.    Other Aspects of State Laws Present Barriers to Plaintiffs' Public Nuisance
       Claims. ....................................................................................................................24

       A.     Statutes of Limitation Impose Varying Limits on Liability..................................25
       B.     The Remedies Available to Address a Public Nuisance, Even Where
              Available, Are Often Severely Limited. ..............................................................26

CONCLUSION.....................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Cas. & Sur. Co. v. Gulf Res. & Chem. Corp.*,
   600 F. Supp. 797 (D. Idaho 1985) ........................................................................25

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
   228 F.3d 429 (3d Cir. 2000)..............................................................................4, 20

*Am. Fin. Servs. Ass'n v. City of Cleveland*,
   858 N.E.2d 776 (Ohio 2006)................................................................................16

*Ashley Cty., v. Pfizer, Inc.*,
   552 F.3d 659 (8th Cir. 2009) ............................................................................4, 12

*Ass'n of Wash. Public Hosp. Dist. v. Philip Morris, Inc.*,
   241 F.3d 696 (9th Cir. 2001) ..................................................................................4

*Badke v. USA Speedway, LLC*,
   139 So. 3d 1117 (La. Ct. App. 2014)....................................................................10

*Bd. of Water Works Trustees of City of Des Moines v. SAC County Bd. of
   Supervisors*,
   890 N.W.2d 50 (Iowa 2017) .................................................................................23

*Benefield v. Int'l Paper Co.*,
   No. 2:09CV232-WHA, 2009 WL 2601425 (M.D. Ala. Aug. 21, 2009) ................17

*State ex rel. Bowman v. Fipps*,
   146 S.E.2d 395 (N.C. 1966)..................................................................................21

*Branch v. Mobil Oil Corp.*,
   788 F. Supp. 531 (W.D. Okla. 1991) ....................................................................25

*Burlington N. & Santa Fe Ry. Co. v. Grant*,
   505 F.3d 1013 (10th Cir. 2007) ............................................................................23

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
   451 N.E.2d 459 (N.Y. 1983).................................................................................16

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
   273 F.3d 536 (3d Cir. 2001)..............................................................................4, 14

*Citizens for Odor Nuisance Abatement v. City of San Diego*
   213 Cal. Rptr. 3d 538 (2017) ................................................................................21

*City of Bloomington, Ind. v. Westinghouse Elec. Corp.*,
   891 F.2d 611 (7th Cir. 1989) .......................................................................................23

*City of Chicago v. Am. Cyanamid Co.*,
   823 N.E.2d 126 (Ill. App. Ct. 2005) ...........................................................................21

*City of Chicago v. Beretta U.S.A. Corp.*,
   821 N.E.2d 1099 (Ill. 2004) .......................................................4, 5, 6, 19, 20, 26

*City of Cincinnati v. Beretta*,
   2002 WL 34429690 (Ohio Ct. Com. Pl. Aug. 14, 2002) ............................................19

*City of Cincinnati v. Beretta U.S.A. Corp.*,
   768 N.E.2d 1136 (Ohio 2002) ...........................................................................15, 19

*City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*,
   863 F.3d 474 (6th Cir. 2017) .......................................................................................3

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.*,
   621 F. Supp.2d 513 (N.D. Ohio 2009) .......................................................................16

*City of Douglasville v. Queen*,
   514 S.E.2d 195 (Ga. 1999) .........................................................................................18

*City of Everett v. Purdue Pharma L.P.*,
   No. C17-209RSM, 2017 WL 4236062 (W.D. Wash. Sep. 25, 2017) ...........................9

*City of Modesto Redevelopment Agency v. Superior Court*,
   13 Cal. Rptr. 3d 865 (Ct. App. 2004) ........................................................................22

*City of New Haven v. Purdue Pharma, L.P.*,
   No. X07HHDCV176086134S, 2019 WL 423990 (Conn. Super. Jan. 8, 2019) ..........6, 22

*City of New York v. Coll. Point Sports Ass'n, Inc.*,
   876 N.Y.S.2d 409 (App. Div. 2009) ...........................................................................25

*City of Perry v. Procter & Gamble Co.*,
   188 F. Supp. 3d 276 (S.D.N.Y. 2016) .....................................................................9, 13

*City of Philadelphia v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3rd Cir. 2002) ..................................................................................9, 12

*City of Reno v. Purdue Pharma, L.P.*,
   No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev. Nov. 2, 2018) ...............8

*City of St. Louis v. Benjamin Moore & Co.*,
   226 S.W.3d 110 (Mo. 2007) ..................................................................................7, 22

*Cofield v. Lead Indus. Ass'n, Inc.*,
  No. Civ.A. MJG-99-3277, 2000 WL 34292681 (D. Md. Aug. 17, 2000) ..............................24

*Combs v. Int'l Ins. Co.*,
  354 F.3d 568 (6th Cir. 2004) ......................................................................................11, 14

*Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*,
  521 So. 2d 857 (Miss. 1988) ....................................................................................15

*Cooper Indus., LLC v. City of S. Bend*,
  899 N.E.2d 1274 (Ind. 2009) ...................................................................................25

*County of Summit v. Purdue Pharma L.P.*,
  No. 1:18-op-45090-DAP (N.D. Ohio May 18, 2018), ECF No. 8.....................................4, 15

*Cty. Comm'rs of Oakland Cty.v. Oakland Cty. Exec.*,
  296 N.W.2d 621 (Mich. Ct. App. 1980) ..........................................................................16

*Cty. of Santa Clara v. Atl. Richfield Co.*,
  40 Cal. Rptr. 3d 313 (Ct. App. 2006) ...........................................................................22

*Cty. of Santa Clara v. Superior Court*,
  235 P.3d 21 (Cal. 2010) ...........................................................................................17

*Detroit Bd. of Educ. v. Celotex Corp.*,
  493 N.W.2d 513 (Mich. Ct. App. 1992) ...................................................................4, 7, 20

*Diamond X Ranch LLC v. Atl. Richfield Co.*,
  No. 3:13-cv-00570-MMD-WGC, 2017 WL 4349223 (D. Nev. Sept. 29, 2017).....................8

*In re Dicamba Herbicides Litig.*,
  No. MDL 2820, 2019 WL 460500 (E.D. Mo. Feb. 6, 2019)..........................................13, 23

*In re Dow Corning Corp.*,
  778 F.3d 545 (6th Cir. 2015) ......................................................................................9

*Parish of E. Feliciana ex rel. E. Feliciana Parish Police Jury v. Guidry*,
  923 So. 2d 45 (La. Ct. App. 2005).................................................................................10

*Elec. Power Bd. of Chattanooga v. Monsanto Co.*,
  879 F.2d 1368 (6th Cir. 1989) ....................................................................................26

*Erie Railroad Co. v. Tompkins*,
  304 U.S. 64 (1938).....................................................................................................1

*Espinoza v. City of Albuquerque*,
  2018 WL 6381436 (N.M. Ct. App. Dec. 5, 2018) ...........................................................16

*Fielder v. Rice Constr. Co.*,
    522 S.E.2d 13 (Ga. Ct. App. 1999) ................................................................................23

*In re Firearm Cases*,
    24 Cal. Rptr. 3d 659 (Ct. App. 2005) ..........................................................................22

*Flint Hills Res. Alaska, LLC v. Williams Alaska Petrol., Inc.*,
    377 P.3d 959 (Alaska 2016) .........................................................................................25

*People ex rel. Gallo v. Acuna*,
    929 P.2d 596 (Cal. 1997) ............................................................................................15

*Ganim v. Smith & Wesson Corp.*,
    780 A.2d 98 (Conn. 2001) ...........................................................................4, 5, 6, 18, 20

*Germain v. Teva Pharms., USA, Inc. (In re Darvocet, Darvon, & Propoxyphene*
    *Prods. Liab. Litig.)*,
    756 F.3d 917 (6th Cir. 2014) .......................................................................................11

*State ex rel. Graeber v. Marion Cty. Landfill, Inc.*,
    76 P.3d 1000 (Kan. 2003) ...........................................................................................17

*Grewal v. Purdue Pharma L.P.*,
    No. ESX-C-245-17, 2018 WL 4829660 (N.J. Super. Ct. Ch. Div. Oct. 2, 2018) ...............7, 19

*Hawks v. City of Coffeyville*,
    No. 93-CV-2555, 1994 WL 566945 (D. Kan. Sept. 8, 1994) .................................................25

*Hedgepath v. Am. Tel. & Tel. Co.*,
    559 S.E.2d 327 (S.C. Ct. App. 2001) .............................................................................25

*Hendricksv. Stalnaker*,
    380 S.E.2d 198 (W.Va. 1989)…....................................................................................10

*Independence Cty. v. Pfizer, Inc.*,
    534 F. Supp. 2d 882 (E.D. Ark. 2008), *aff'd sub nom. Ashley Cty. v. Pfizer,*
    *Inc.*, 552 F.3d 659 (8th Cir. 2009) ...................................................................................8

*Jamail v. Stoneledge Condo. Owners Ass'n*,
    970 S.W.2d 673 (Tex. App. 1998) .................................................................................15

*State ex rel. Jennings v. Purdue Pharma L.P.*,
    No. CVN18C01223MMJCCLD, 2019 WL 446382 (Del. Super. Ct. Feb. 4,
    2019) ..........................................................................................................................6

*Johnson Cty., Tenn. By & Through Bd. of Educ. v. U.S. Gypsum Co.*,
    580 F. Supp. 284 (E.D. Tenn. 1984) ...............................................................................9

*City of Gary ex rel. King v. Smith & Wesson Corp.*,
   801 N.E.2d 1222 (Ind. 2003) .......................................................................15, 21

*In re Lead Paint Litig.*,
   924 A.2d 484 (N.J. 2007).......................................................................2, 4, 7, 14, 20

*Level 3 Commc'ns, LLC v. TNT Constr., Inc.*,
   220 F. Supp. 3d 812 (W.D. Ky. 2016)................................................................11

*Marrero Hernandez v. Esso Standard Oil De Puerto Rico, Inc.*,
   No. CIV. 03-1485JAGGAG, 2005 WL 1213664 (D.P.R. May 20, 2005),
   *judgment vacated in part on reconsideration*, No. CIV. 03-1485JAGGAG,
   2005 WL 1653736 (D.P.R. July 13, 2005) ............................................................25

*Meridian Mut. Ins. Co. v. Kellman*,
   197 F.3d 1178 (6th Cir. 1999) ...........................................................................14

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
   379 F. Supp. 2d 348 (S.D.N.Y. 2005)...................................................................9

*Mills v. Lerner*,
   No. 319644, 2015 WL 1650931 (Mich. Ct. App. Apr. 14, 2015) ..........................25

*Morrison Enters., LLC v. Dravo Corp.*,
   No. 4:08CV3142, 2009 WL 4325749 (D. Neb. Nov. 24, 2009)............................25

*In re Nat'l Prescription Opiate Litig.*,
   No. 1:17-md-02804-DAP (N.D. Ohio Dec. 31, 2018), ECF No. 1218 ....................1

*Nat'l. Roofing, Inc. v. Allstate Steel, Inc.*,
   366 P.3d 276 (N.M. Ct. App. 2015) ....................................................................13

*Overcash v. S.C. Elec. & Gas Co.*,
   614 S.E.2d 619 (S.C. 2005) .................................................................................6

*Penelas v. Arms Tech., Inc.*,
   No. 99-1941 CA-06, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*,
   778 So. 2d 1042 (Fla. Dist. Ct. App. 2001) ....................................................7, 23

*People v. Sturm, Ruger & Co.*,
   761 N.Y.S.2d 192 (App. Div. 2003).....................................................................8

*Petroleum Enhancer, LLC v. Woodward*,
   690 F.3d 757 (6th Cir. 2012) ..............................................................................10

*Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*,
   646 N.W.2d 777 (Wis. 2002)........................................................................15, 21

*Pittman v. Experian Info. Sols., Inc.*,
    901 F.3d 619 (6th Cir. 2018) ...................................................................12, 14

*Rhodes v. E.I. du Pont de Nemours & Co.*,
    636 F.3d 88 (4th Cir. 2011*)* ...........................................................................18

*Rousey v. United States*,
    115 F.3d 394 (6th Cir. 1997) ...........................................................................11

*Sills v. Smith & Wesson Corp.*,
    No. 99C-09-283-FSS, 2000 WL 33113806 (Del. Super. Ct. Dec. 1, 2000) ............................5

*Sinotte v. City of Waterbury*,
    995 A.2d 131 (Conn. App. Ct. 2010)....................................................................5

*State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*,
    488 S.E.2d 901 (W. Va. 1997)........................................................................25

*Sprayberry Crossing P'ship v. Phenix Supply Co.*,
    617 S.E.2d 622 (Ga. Ct. App. 2005)..................................................................21

*State Auto Prop. & Cas. Ins. Co. v. Hargis*,
    785 F.3d 189 (6th Cir. 2015) ....................................................................11, 15

*State v. Lead Indus. Ass'n, Inc.*,
    951 A.2d 428 (R.I. 2008) ................................2, 3, 4, 8, 15, 17, 18, 19, 20, 21, 23

*Sturm, Ruger & Co. v. City of Atlanta*,
    560 S.E.2d 525 (Ga. Ct. App. 2002)...................................................................5

*Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court*,
    858 N.E.2d 699 (Mass. 2006) ........................................................................17

*Sullivan v. Pulte Home Corp.*,
    306 P.3d 1 (Ariz. 2013)..............................................................................13

*Texas v. Am. Tobacco Co.*,
    14 F. Supp. 2d 956 (E.D. Tex. 1997)...................................................................9

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
    984 F.2d 915 (8th Cir. 1993) ...................................................................9, 12, 14

*Tipler v. McKenzie Tank Lines*,
    547 So. 2d 438 (Ala. 1989)........................................................................21, 23

*People ex rel. Van de Kamp v. Am. Art Enters., Inc.*,
    656 P.2d 1170 (Cal. 1983) ..........................................................................26

*Walker Cty. v. Tri-State Crematory*,
    643 S.E.2d 324 (Ga. Ct. App. 2007)............................................................26

*Whaley v. Park City Mun. Corp.*,
    190 P.3d 1 (Utah Ct. App. 2008) ..............................................................21

*White v. Georgia Power Co.*,
    595 S.E.2d 353 (Ga. Ct. App. 2004)..........................................................18

*White v. Vrable*,
    No. 98AP-1351, 1999 WL 771053 (Ohio Ct. App. Sept. 30, 1999)......................24

**STATUTES**

42 Pa. Cons. Stat. § 5524(7) ....................................................................25

Ala. Code § 6-2-38(l) ............................................................................25

Alaska Stat. § 09.10.050 .........................................................................25

Colo. Rev. Stat.
    § 13–80–102(1)(a) ...........................................................................25
    § 13–80–103.8..............................................................................25

Conn. Gen. Stat. § 19a-343 .......................................................................7

Conn. Gen. Stat. § 19a-343b .....................................................................26

Ga. Code Ann. § 41-1-2 ..........................................................................17

Ind. Code § 34–11–2–7(3) ........................................................................25

Kan. Stat. Ann. § 60–513 ........................................................................25

Mich. Comp. Laws § 600.5805(10) .................................................................25

Minn. Stat.
    § 617.81....................................................................................7
    § 617.81(2).................................................................................10

Neb. Rev. Stat. § 25-207 ........................................................................25

Ohio Rev. Code § 4729.35 .........................................................................7

Okla. Stat. tit. 12 § 95(3).......................................................................25

Utah Code § 76-10-806 ...........................................................................26

W.Va. Code § 55-2-12 ............................................................................25

Wash. Rev. Code
    § 7.48.010 ....................................................................................................9
    § 7.48.020 ..................................................................................................26
    § 7.48.130 ..................................................................................................18
    § 7.48.210 ..................................................................................................26
    § 7.48.220 ..................................................................................................26

Wyo. Stat. Ann.
    § 6-6-209 ....................................................................................................11
    § 33-16-536 ................................................................................................11
    § 35-9-111 ..................................................................................................11

## TREATISES

58 Am. Jur. 2d Nuisances § 189 ........................................................................16

Restatement (Second) of Torts (1979)

    § 821B ..........................................................................3, 16, 17, 18, 19, 20

    § 834 ............................................................................................................21

Restatement (Third) of Torts: Liability for Economic Harm § 8 (TD No. 2, 2014).....................13

## OTHER AUTHORITIES

Donald Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin. L.
    Rev. 741, 831 (2003) .......................................................................2, 3, 13, 20, 21

Oliver Wendell Holmes, Jr., *The Common Law* 1, 37 (Dover ed., General
    Publishing Co., Ltd., 1991) (1881) ...........................................................2

Richard O. Faulk & John S. Gray, *Alchemy in the Courtroom? The Transmutation
    of Public Nuisance Litigation*, 2007 Mich. St. L. Rev. 941, 952 (2007)..................................3

Victor E. Schwartz & Phil Goldberg, *The Law of Public Nuisance: Maintaining
    Rational Boundaries on a Rational Tort*, 45 Washburn L.J. 541, 552 (2006).........................3

## INTRODUCTION

The Court "direct[ed] the parties to submit briefing addressing the viability of statutory and/or common law claims for public nuisance in each State and territory where any MDL plaintiff is located" "[i]n order to better understand the State-specific variations in the law."  Order, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio Dec. 31, 2018), ECF No. 1218.  Defendants submit that the public nuisance claims alleged by Plaintiffs in this MDL are not viable in any jurisdiction.  Plaintiffs advance an expansive theory of public nuisance never recognized by the vast majority of states.  As several states and their attorneys general recognized in an amicus brief to the United States Supreme Court, "in recent years, state and local governments have sought to use public nuisance lawsuits for a new purpose:  to regulate broad societal problems through litigation or failing that, to enable mass transfers of wealth from industry to preferred groups."  *ConAgra Products Company v. California*, Nos. 18-84 & 18-86, at 3 (U.S. Aug. 16, 2018) (attached as Ex. 1).  "These new regulatory nuisance lawsuits drift far afield of the original common law understanding of public nuisance doctrine" and "distort the traditional purpose of civil lawsuits in the Anglo-American tradition."  *Id.* at 3–4, 15.  Overwhelmingly, courts across the country have resisted these efforts to stretch the centuries-old common law doctrine to new frontiers, like product liability.

That is because the tort of public nuisance, though at times vaguely defined as an unreasonable interference with a public right, has long been limited to claims involving land or property—not products.  Accordingly, a number of states (and federal courts applying state law) have explicitly rejected public nuisance claims resembling those here.  Many other states have had no occasion even to consider such a transformation of the tort—and this silence forecloses the recognition of such claims in federal court under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).  Plaintiff cannot satisfy the fundamental requirements that they allege the invasion of a

1

public, as opposed to a private, right. Nor can they satisfy the other core elements of public nuisance (e.g., causation, cognizable injury, control over the instrumentality of the nuisance).

Regardless of any interstate differences in public nuisance law, Plaintiffs' claims are untenable everywhere. This brief notes at least one reason why Plaintiffs' public nuisance claims are not viable in each jurisdiction in which an MDL Plaintiff is located.

## BACKGROUND

Plaintiffs in this litigation are not the first to try to use the tort of public nuisance to recover costs allegedly associated with a social problem. Courts that have grappled with these claims have noted the importance of understanding the history and underpinnings of the tort in determining the viability of the claim, and the same understanding informs the scope of public nuisance doctrine today and its application to the claims here. *See, e.g.*, *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 443 (R.I. 2008) ("Mindful of the admonition of United States Supreme Court Justice Oliver Wendell Holmes, Jr. that '[i]n order to know what [the law] is, we must know what it has been, and what it tends to become' . . . we begin our analysis by retracing the history of public nuisance at common law." (quoting Oliver Wendell Holmes, Jr., *The Common Law* 1, 37 (Dover ed., General Publishing Co., Ltd., 1991) (1881))); *In re Lead Paint Litig.*, 924 A.2d 484, 494 (N.J. 2007) ("By carefully examining the historical antecedents of public nuisance and by tracing its development through the centuries, clear and consistent parameters that define it as a cognizable theory of tort law become apparent.").

For centuries, public nuisance law principally has protected rights connected to property. In fact, "when one reads hundreds of nuisance cases from medieval times to the present, one is struck by the reality that public nuisance almost always involves land, not injuries that occur in a variety of other factual contexts such as collisions between vehicles, business or professional settings, or other personal injuries." Donald Gifford, *Public Nuisance as a Mass Products Liability*

*Tort*, 71 U. CIN. L. REV. 741, 831 (2003); *see also* Restatement (Second) of Torts § 821B, cmts. a, b (1979).  While nuisance originated as a criminal writ in 12th century English common law as a means to protect the Crown's land, it was expanded over the subsequent four centuries to cover rights common to the public—like access to public ways—and to allow for private parties to bring public nuisance claims when they "suffered a 'particular' or 'special' injury."  *Lead Indus.*, 951 A.2d at 444 (citing Richard O. Faulk & John S. Gray, *Alchemy in the Courtroom? The Transmutation of Public Nuisance Litigation*, 2007 MICH. ST. L. REV. 941, 952 (2007)); *see also City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*, 863 F.3d 474, 477 (6th Cir. 2017); Restatement (Second) of Torts § 821B, cmt. a (1979).  After U.S. courts adopted the English common law, public nuisance remained unchanged and continued to focus on invasions of public lands, although some cases involved land itself used in a manner that conflicted with public morals or social welfare.  *Id.* (citing Faulk & Gray, *supra*, at 953).

It was not until the 20th century that plaintiffs' lawyers began trying to repurpose public nuisance as a tort against product manufacturers.  *See* Gifford, *supra*, at 745.  Although states had, by this point, developed large bodies of law on products liability, governmental plaintiffs brought public nuisance claims against the disfavored product of the day (i.e., handguns, tobacco, lead paint) in an attempt to solve policy problems through the medium of the judiciary.  *Id.* at 744–45; Victor E. Schwartz & Phil Goldberg, *The Law of Public Nuisance: Maintaining Rational Boundaries on a Rational Tort*, 45 WASHBURN L.J. 541, 552 (2006).  These plaintiffs turned to public nuisance as a way to overcome defenses to product liability claims or stricter causation requirements, as plaintiffs argued that public nuisance—with its undefined character—did not require them to prove causation or other limiting elements.  Faulk & Gray, *supra*, at 958.  Similarly, plaintiffs argued that public nuisance allowed them to seek aggregate relief without having to

account for the role of the alleged tortfeasor and others may have played in the harm from misuse of the product (as an individual plaintiff would in a normal products liability suit). *See id.* But, as courts recognized, the tort did not fit, and these efforts generally failed in many different contexts against many sorts of manufacturers, distributors, and retailers.[1]

The public nuisance claims in this MDL are the latest front in that largely unsuccessful endeavor. Though the claims are not all the same, Plaintiffs essentially plead a similar theory: opioid abuse—whether abuse of prescription opioid medications by persons to whom they were lawfully prescribed, or abuse of such medications by other persons, or abuse of heroin or other illicit drugs—is a public nuisance created by opioid manufacturers' marketing practices and opioid distributors' and pharmacies' distribution practices. *E.g.*, 2d Am. Compl. ("*Summit Cty.* Compl.") ¶¶ 45, 1002–04, *County of Summit v. Purdue Pharma L.P.*, No. 1:18-op-45090-DAP (N.D. Ohio May 18, 2018), ECF No. 8; 1st Am. Compl. ¶¶ 142, 420–25, 452–54, *Muscogee (Creek) Nation v. Purdue Pharma, L.P.*, No. 18-op-45459-DAP (N.D. Ohio July 9, 2018), ECF No. 19. That is, Plaintiffs in this MDL contend that Defendants are liable for a public nuisance because (1) manufacturers marketed prescription opioid medications in a way that "flooded Plaintiffs' communities with opioids" and distributors and retailers "facilitated and encouraged the flow and diversion of opioids" through their unreasonable distribution practices (the alleged unreasonable interference), and (2) this "flood[]" of opioid medications interfered with public health and safety

---

[1] *See, e.g.*, *Lead Indus.*, 951 A.2d 428 (R.I. 2008) (lead paint); *In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007) (same); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004) (handguns); *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001) (same); *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) (same); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000) (tobacco); *Ass'n of Wash. Public Hosp. Dist. v. Philip Morris, Inc.*, 241 F.3d 696 (9th Cir. 2001) (same); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513 (Mich. Ct. App. 1992) (asbestos); *Ashley Cty., v. Pfizer, Inc.*, 552 F.3d 659, 671–72 (8th Cir. 2009) (cold medicine).

(the alleged public right).  *Summit Cty.* Compl. ¶¶ 1002–04.  The question presented, then, is whether such a theory is viable based on a reasonable understanding of public nuisance law in each State within which an MDL Plaintiff is located.  For the reasons stated below, it is not.

**ARGUMENT**

## I.    NUMEROUS STATES EXPRESSLY REJECT PUBLIC NUISANCE CLAIMS TO REMEDY HARMS CAUSED BY PRODUCTS.

Many states hold that public nuisance claims cannot be asserted in situations where products have allegedly caused harm.  Although the reasoning in these cases varies, their bottom line is the same:  public nuisance was not intended to apply to products and to hold otherwise would upend fundamental principles of tort law.

*First*, some states have rejected claims similar to those in this litigation and have maintained the traditional bounds of public nuisance to cases involving property.[2]

- **Connecticut**: *Sinotte v. City of Waterbury*, 995 A.2d 131, 142 (Conn. App. Ct. 2010) (listing as an element of public nuisance that "the use of the land was unreasonable or unlawful"); *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 114–15 (Conn. 2001) (rejecting a public nuisance claim against gun manufacturers and distributors where the municipality "alleged that the defendants unreasonably use land, including retail stores and the streets of Bridgeport, for the purpose of marketing and selling handguns" because the misconduct alleged was too remote from any injury)

- **Delaware**: *Sills v. Smith & Wesson Corp.*, No. 99C-09-283-FSS, 2000 WL 33113806, at *7 (Del. Super. Ct. Dec. 1, 2000) ("Delaware has yet to recognize a cause of action for public nuisance based upon products.  Delaware public nuisance claims have been limited to situations involving land use.")

- **Illinois**: *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004) (dismissing "products liability claim repackaged as [a] public nuisance" claim against firearm manufacturer)

---

[2] The Court of Appeals of Georgia also has indicated (but not yet held) that it would reject such a claim.  *Sturm, Ruger & Co. v. City of Atlanta*, 560 S.E.2d 525, 532 (Ga. Ct. App. 2002) (citing favorably decisions in other jurisdictions that have refused to allow public nuisance claims against product manufacturers).

5

- **South Carolina**: *Overcash v. S.C. Elec. & Gas Co.*, 614 S.E.2d 619, 622 (S.C. 2005) (dismissing public nuisance claim that did not involve injury to "real or personal property")

In fact, the Delaware Superior Court just recently dismissed the State's public nuisance claim against opioid manufacturers and distributors—a claim that is identical to those brought by the MDL Plaintiffs—because "[i]n Delaware, public nuisance claims have not been recognized for products." *State ex rel. Jennings v. Purdue Pharma L.P.*, No. CVN18C01223MMJCCLD, 2019 WL 446382, at *12 (Del. Super. Ct. Feb. 4, 2019); *see also City of New Haven v. Purdue Pharma, L.P.*, No. X07HHDCV176086134S, 2019 WL 423990, at *7–8 (Conn. Super. Jan. 8, 2019) (relying on *Ganim*, 780 A.2d 98, to dismiss public nuisance claims against opioid manufacturers on remoteness grounds).

Similarly, the Illinois Supreme Court, in rejecting a public nuisance claim against gun manufacturers, "found no Illinois case in which a public nuisance was found in the absence of . . . two conditions:" "the use of land, or the . . . violation of a statute or ordinance." *City of Chicago v. Beretta*, 821 N.E.2d at 1117.  To allow the claims in that case to go forward "would . . . expand the law of nuisance to encompass a third circumstance—the effect of lawful conduct that does not involve the use of land," leading the court to ultimately reject the claim.  *Id.*  The South Carolina Supreme Court also explained that public nuisance has long been understood to apply only to "injury to the individual's real or personal property," while other "well developed tort-based doctrines [] can redress wrongs resulting in personal injuries sustained by an individual." *Overcash*, 614 S.E.2d at 622.  And so "[t]he addition of personal injury to public nuisance actions in South Carolina would perpetuate the erosion of any semblance of doctrinal consistency in the common law of nuisance." *Id.*  Thus, to maintain appropriate boundaries in tort law and ensure that a single tort (public nuisance) does not devour every other tort, states recognize that public nuisance should not extend beyond its traditional tethering to property. *See Jennings*, 2019 WL

446382, at *12 ("There is a clear national trend to limit public nuisance to land use.") (collecting cases).[3]

*Second*, other states have held that products liability and public nuisance are separate areas of tort law, and courts must enforce a distinction between the two, or have otherwise restricted public nuisance to achieve the same result.

- **Florida**: *Penelas v. Arms Tech., Inc.*, No. 99-1941 CA-06, 1999 WL 1204353, at *1, *4 (Fla. Cir. Ct. Dec. 13, 1999) ("Public nuisance does not apply to the design, manufacture, and distribution of a lawful product."), *aff'd*, 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001)

- **Michigan**: *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992) (holding that "manufacturers, sellers, or installers of defective products may not be held liable on a nuisance theory for injuries caused by the defect" because "[t]o hold otherwise would significantly expand, with unpredictable consequences, the remedies already available to persons injured by products")

- **Missouri**: *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 114–15 (Mo. 2007) (dismissing public nuisance suit against product manufacturers where plaintiff could not identify which manufacturer made or sold particular products that caused harm)

- **New Jersey**: *In re Lead Paint Litig.*, 924 A.2d 484, 503–05 (N.J. 2007) (holding that the New Jersey Products Liability Act ("PLA"), which created "one unified, statutorily defined theory of recovery for harm caused by a product" barred a public nuisance claim against lead paint manufacturers because that claim "sound[ed] in products liability" and must be brought pursuant to the PLA (citation omitted)); *Grewal v. Purdue Pharma L.P.*, No. ESX-C-245-17, 2018 WL 4829660, at *17 (N.J. Super. Ct. Ch. Div. Oct. 2, 2018) (relying on *In re Lead Paint* and dismissing a public nuisance action against an opioid manufacturer because the "roots of the State's claimed injuries are the physical effects of the opioids on patients" and "the PLA [therefore] subsumes the State's public nuisance claim")

---

[3] Even those states with specific public nuisance statutes that might apply to prescription opioid medications generally require a connection to some land or property. *See, e.g.*, Minn. Stat. § 617.81 (defining public nuisances to include certain illegal actions committed in connection with "controlled substances," but only insofar as such acts are "committed … within the building"); Conn. Gen. Stat. § 19a-343 (identifying as a public nuisance "[o]ffenses for the sale of controlled substances," but only when a person "erects, establishes, maintains, uses, owns or leases any real property" in connection with such offenses). *But see* Ohio Rev. Code § 4729.35 (defining public nuisance to include a "violation by a pharmacist or other person of any laws of Ohio or of the United States … or of any rule of the board of pharmacy controlling the distribution of a drug of abuse").

- **New York**: *People v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 196 (App. Div. 2003)

- **Rhode Island**: *State v. Lead Indus.*, 951 A.2d 428, 452 (R.I. 2008) ("This Court has recognized that the existence of a nuisance depends in large part on its location, and, to date, the actions for nuisance in [Rhode Island] have been related to *land*.") (emphasis in original)

As the Rhode Island Supreme Court explained when refusing to hold lead paint manufacturers liable under a public nuisance theory, "[t]he law of public nuisance never before has been applied to products, however harmful." *Lead Indus.*, 951 A.2d at 456. The court further explained that, while "[p]ublic nuisance focuses on the abatement of annoying or bothersome activities[,] [p]roducts liability law, . . . has its own well-defined structure, which is designed specifically to hold manufacturers liable for harmful products that the manufacturers have caused to enter the stream of commerce." *Id.* "Undoubtedly," the court continued, "public nuisance and products liability are two distinct causes of action, each with rational boundaries that are not intended to overlap." *Id.*; *see also People v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 196 (App. Div. 2003) (reasoning that permitting such public nuisance claims would "likely open the courthouse doors to a flood of limitless, similar theories . . . against a wide and varied array of other commercial and manufacturing enterprises and activities").

*Finally*, federal courts have rejected product-based public nuisance claims—like those raised by the MDL Plaintiffs—applying the laws of Arkansas, Iowa, Nevada, New Hampshire, North Dakota, Pennsylvania, Tennessee, Texas, and Washington.

- **Arkansas**: *Independence Cty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 890 (E.D. Ark. 2008) (rejecting claim against medicine manufacturers on ground that "Defendants [did] not own the land on which the alleged nuisance occurred"), *aff'd sub nom. Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 672–73 (8th Cir. 2009) (affirming on the grounds that causation is too attenuated in public nuisance claims directed at products)

- **Nevada**: *Diamond X Ranch LLC v. Atl. Richfield Co.*, No. 3:13-cv-00570-MMD-WGC, 2017 WL 4349223, at *11 (D. Nev. Sept. 29, 2017) ("[I]n Nevada there is no private right of action for a public nuisance."), *cited by City of Reno v. Purdue Pharma, L.P.*, No. 3:18-

cv-00454-MMD-WGC, 2018 WL 5730158, at *1, *2 n.1 (D. Nev. Nov. 2, 2018) (noting same when remanding case filed by Nevada municipality against "various entities that make up the opioid supply chain")

- **North Dakota**: *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (rejecting claim under North Dakota law against asbestos-containing product manufacturer in part because "North Dakota cases applying the state's nuisance statute all appear to arise in the classic context of a landowner or other person in control of property conducting an activity on his land in such a manner as to interfere with the property rights of a neighbor")

- **Pennsylvania**: *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3rd Cir. 2002) (rejecting claim against gun manufacturer and holding that "Pennsylvania precedent does not support the public nuisance claim plaintiffs advance here, and we cannot predict that the Pennsylvania Supreme Court will choose to expand state public nuisance law in the manner plaintiffs urge")

- **New Hampshire**: *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 416–17 (S.D.N.Y. 2005) (applying New Hampshire law in rejecting claim against gasoline manufacturers, because "plaintiffs seek to recover from defendants in their capacity as manufacturers, and not as property owners or users")

- **Iowa**: *City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 291 (S.D.N.Y. 2016) (rejecting claim against toilet-wipe manufacturer because "[t]he parties do not cite, and the Court is not aware of, any cases applying Iowa law that recognize a nuisance claim arising out of the sale or use of a product as opposed to the use of property")

- **Tennessee**: *Johnson Cty., Tenn. By & Through Bd. of Educ. v. U.S. Gypsum Co.*, 580 F. Supp. 284, 294 (E.D. Tenn. 1984) (holding that, in an action under Tennessee law involving asbestos products in a county school, the plaintiff failed to state a claim because "allowing the plaintiff to bring this action under a nuisance theory would convert almost every products liability action into a nuisance claim")

- **Texas**: *Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 973 (E.D. Tex. 1997) ("The overly broad definition of the elements of public nuisance urged by the State is simply not found in Texas case law and the Court is unwilling to accept the state's invitation to expand a claim for public nuisance beyond its ground in real property")

- **Washington**: *City of Everett v. Purdue Pharma L.P.*, No. C17-209RSM, 2017 WL 4236062, at *27 (W.D. Wash. Sep. 25, 2017) (dismissing public nuisance claims against opioid manufacturers in reliance on Wash. Rev. Code § 7.48.010, which defines an actionable nuisance as an "interfere[nce] with the comfortable enjoyment of the life and property")

Those holdings should control here, particularly as *Erie* courts "usually defer to . . . sister circuits' analyses of the law of the states within their respective borders." *In re Dow Corning*

*Corp.*, 778 F.3d 545, 548–49 (6th Cir. 2015) (citation omitted); *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 770–71 (6th Cir. 2012) (collecting federal cases, including from district courts, applying different states' laws, in order to demonstrate the rule recognized by other jurisdictions).

## II. UNDER *ERIE,* THE ABSENCE OF AUTHORITY RECOGNIZING PRODUCT-BASED PUBLIC NUISANCE CLAIMS IN OTHER STATES FORECLOSES SUCH APPLICATION BY A FEDERAL COURT.

Because the historic, common-law understanding of public nuisance has never extended to product-related injuries, more than half of all state appellate courts have never had occasion to decide whether public nuisance laws could be applied to suits involving a products-based theory such as those asserted by the MDL Plaintiffs.[4]  No appellate court in those jurisdictions ever has applied common law or statutory public nuisance to such a context, and a review of many of these states' public nuisance jurisprudence reveals that nearly every public nuisance case has involved some connection to property, land, or the environment.[5]  For Plaintiffs to succeed on a public

---

[4] Those states include Alabama, Alaska, Arizona, Colorado, Georgia, Idaho, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Montana, Nebraska, New Mexico, North Carolina, Oklahoma, Oregon, Puerto Rico, South Dakota, Utah, Virginia, West Virginia, and Wyoming.

[5] These states include Louisiana, Minnesota, Mississippi, Montana, Oklahoma, Virginia, West Virginia, and Wyoming.  *See, e.g.*, *Hendricksv. Stalnaker*, 380 S.E.2d 198, 201 (W.Va. 1989) ("[W]e have made explicit that an examination of the reasonableness or unreasonableness of the *use of property* in relation to the particular locality is a fair test to determine the existence of a public nuisance.") (emphasis added and citation omitted).  And, of note, public nuisance law in Louisiana, Minnesota, and Wyoming is governed mainly by a public nuisance statute, and the plain terms of those statutes demonstrate that those states conceive of public nuisance only as applying to land or property.  *See Parish of E. Feliciana ex rel. E. Feliciana Parish Police Jury v. Guidry*, 923 So. 2d 45, 52 (La. Ct. App. 2005) (explaining that Louisiana Civil Code articles 667–669 establish that "no one may use his property so as to cause damage to another or to interfere substantially with the enjoyment of another's property"); *Badke v. USA Speedway, LLC*, 139 So. 3d 1117, 1125–26 (La. Ct. App. 2014) (explaining "[w]e sometimes use the word nuisance in describing the type of conduct which violates the pronouncements embodied in La. C.C. arts. 667–669"); Minn. Stat. § 617.81(2) (requiring the governmental plaintiff to provide evidence of certain

nuisance claim in those states, then, they must necessarily advocate for an expansion of state law—and of liability.  The Court must decline that invitation because, as a federal court applying state law under *Erie*, it should not extend liability when addressing state-law issues of first impression.

It is well settled that "[w]ithout some authoritative signal from the state's legislature or judiciary . . . federal courts in diversity cases should be extremely cautious about adopting substantive innovation in state law."  *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015) (citation and internal quotation marks omitted); *see also Germain v. Teva Pharms., USA, Inc. (In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.)*, 756 F.3d 917, 937 (6th Cir. 2014) (same).  Thus, "[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [courts] should choose the narrower and more reasonable path."  *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (citation omitted).  Moreover, "[a]bsent some authoritative signal from the legislature or the courts of the state," there is "no basis for even considering the pros and cons of innovative theories."  *Id.* (citation and alternation omitted).

To predict how the state's highest courts would rule on Plaintiffs' proposed expansion of public nuisance law, the Court may rely on "pertinent or analogous legal principles, policies, precedents, and doctrinal trends embraced by [the respective state's] appellate courts."  *Rousey v. United States*, 115 F.3d 394, 397 (6th Cir. 1997); *see also Level 3 Commc'ns, LLC v. TNT Constr., Inc.*, 220 F. Supp. 3d 812, 817–18 (W.D. Ky. 2016) (looking to, among other things, the "common threads running through the cases").  Further, in the absence of case law on point from a state, the Court also may rely on "restatements of law, law review commentaries, and other jurisdictions on

---

enumerated "behavioral incidents" that qualify as a nuisance "committed within the previous 12 months *within the building*" (emphasis added)); Wyo. Stat. Ann. §§ 6-6-209, 35-9-111, 33-16-536 (defining public nuisance in each instance with reference to forms of land, property, or vehicles).

the 'majority' rule in making this determination." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 636 (6th Cir. 2018) (citation omitted).  Each of these sources leads to the same conclusion: states are highly likely to reject attempts to expand public nuisance doctrine to claims involving products.

 **A.**   **The Lack of Analogous Case Law in These States Counsels Against Extending Public Nuisance Law to the Foreign Context of Products.**

*First*, the simple fact that, in the long history of public nuisance, these states never have recognized a products-based public nuisance cause of action counsels against recognizing a public nuisance claim in a federal diversity case as applied to opioid medications.  Indeed, *Erie* principles have led other federal courts to reason that a lack of any state precedents recognizing a products-based theory, along with a focus on property in a state's nuisance cases, indicates that a state supreme court would reject a products-based theory of public nuisance.  *See, e.g.*, *Ashley Cty.*, 552 F.3d at 673 (rejecting public nuisance claim against cold medicine manufacturers because "[i]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent" (quoting *City of Philadelphia v. Beretta*, 277 F.3d at 421)); *Tioga*, 984 F.2d at 919–20 ("When one considers the fact that the [public nuisance] statute is over a hundred years old, the absence of analogous cases supports an inference that the statute was neither intended nor has it been understood to extend to cases such as the present case [regarding asbestos].").  This especially is true in states where nearly every case addressing public nuisance has involved property or the environment—or that have phrased their tests for public nuisance in terms that focus narrowly on land use.  *See, e.g.*, *Tioga*, 984 F.2d at 920 (refusing to recognize a public nuisance claim against manufacturers of asbestos-containing products because "North Dakota cases applying the state's nuisance statute all appear to arise in the classic context of a landowner or other person in control of property conducting an activity on his land in such a manner as to interfere with the property

rights of a neighbor."); *In re Dicamba Herbicides Litig.,* No. MDL 2820, 2019 WL 460500, at *10 (E.D. Mo. Feb. 6, 2019) ("[C]ourts appear to agree that product manufacturers are not liable for nuisance caused by post-sale use of their products."); *City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 291 (S.D.N.Y. 2016) (refusing to recognize a public nuisance claim against manufacturers of toilet wipes because "[t]he parties do not cite, and the Court is not aware of, any cases applying Iowa law that recognize a nuisance claim arising out of the sale or use of a product as opposed to the use of property."); *see also* Gifford, *supra*, at 800–01 (noting that in hundreds of nuisance cases from medieval times to the present, "public nuisance almost always involves land").  This Court should follow the same reasoning here.

## B.     The Latest Restatement Disapproves of the Expansion of Public Nuisance Liability Advocated by Plaintiffs.

*Second*, the draft Restatement (third) of Torts expressly recognizes that "the common law of public nuisance is an inapt vehicle for addressing the conduct at issue" in product-based cases. Restatement (Third) of Torts: Liability for Economic Harm § 8, cmt. g, (TD No. 2, 2014).  "The traditional office of the tort," the Restatement explains, was "narrower" than the expansive theories advocated by modern plaintiffs, and the majority of "contemporary case law has made clear that [the tort's] reach remains more modest."  *Id.*  The Restatement is clear: "[m]ass harms caused by dangerous products are better addressed through the law of products liability, which has been developed and refined with sensitivity to the various policies at stake."  *Id.*  States that have yet to address products-based public nuisance claims are likely to continue following the well-reasoned approach of the Restatement.  *See, e.g.*, *Sullivan v. Pulte Home Corp.*, 306 P.3d 1, 2 (Ariz. 2013) (citing approvingly to Restatement (Third) of Torts); *Nat'l. Roofing, Inc. v. Allstate Steel, Inc.*, 366 P.3d 276, 281 (N.M. Ct. App. 2015) (same).

**C.**     **The Traditional and Majority Rule Is to Limit Public Nuisance to Its Origins in the Land and Environment Context.**

*Third*, the traditional, majority rule (discussed *supra* Part I) is to refuse application of public nuisance doctrine to product manufacturers, distributors, and retailers, because such application is well outside the bounds of a doctrine tied to land.  *See In re Lead Paint Litig.*, 924 A.2d at 494–96.  Though a small minority of state courts, identified *infra* Section III n.13, may have interpreted their state laws expansively to include public nuisance claims against product manufacturers, distributors, and retailers, these decisions are outliers and do not warrant an *Erie* court's reliance in predicting the rule states would adopt.  *See Pittman*, 901 F.3d at 636 (instructing federal courts to consult "other jurisdictions on the 'majority' rule" (quoting *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999))); *Combs*, 354 F.3d at 596 ("Although a few state judiciaries have interpreted their borrowing statutes somewhat progressively, Plaintiff's references to the law in other jurisdictions are too equivocal to form a sound basis for an *Erie* guess.").

At bottom, there are good reasons why federal courts applying state law have refused to expand public nuisance in the way advocated by Plaintiffs—and should continue to do so.  Allowing a products-based claim to proceed under a nuisance theory would flout key, time-tested requirements that states have developed to regulate products liability.  *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) (rejecting public nuisance claim against gun manufacturers under New Jersey law because "courts have enforced the boundary between the well-developed body of product liability law and public nuisance law").  Freed from such traditional constraints on liability, "[n]uisance law would thus become a monster that would devour in one gulp the entire law of tort." *Tioga*, 984 F.2d at 921.  And a doctrine that focused on land use for over a century is not well-suited to regulate the marketing and sale of

14

goods on a national market by highly regulated entities.  The "enormous leap" in public nuisance law advocated by Plaintiffs "is wholly inconsistent with the widely recognized principle that the evolution of the common law should occur gradually, predictably, and incrementally."  *Lead Indus.*, 951 A.2d at 454.  The concern for a gradual, predictable, and incremental evolution of public nuisance law is all the more important when a federal court is applying state law and is obligated to predict how the highest court in that state would rule on the issue.  *See State Auto Prop. & Cas. Ins. Co.*, 785 F.3d at 195.  Under *Erie*, there simply is not enough authority from the aforementioned states, *supra* n.6, to recognize the novel public nuisance claims alleged by Plaintiffs.

## III.  PLAINTIFFS CANNOT SATISFY THE ELEMENTS OF A PUBLIC NUISANCE CAUSE OF ACTION.

While there are differences between public nuisance law from state to state, *see infra* Section IV, all states recognize that plaintiffs must demonstrate that an unreasonable interference with a right common to the public caused the alleged harm.  *See, e.g.*, *People ex rel. Gallo v. Acuna*, 929 P.2d 596, 604–05 (Cal. 1997); *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1229–30 (Ind. 2003); *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857, 860 (Miss. 1988); *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002);[6] *Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App. 1998); *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 646 N.W.2d 777, 788–89 (Wis. 2002);

---

[6] While this Court allowed the common law public nuisance claims to proceed in *County of Summit v. Purdue Pharma L.P.,* No. 1:18-op-45090-DAP, (N.D. Ohio Dec. 19, 2018), ECF No. 114, the Court had occasion to review only the question of whether the common law public nuisance claim was abrogated by the Ohio Product Liability Act.  The Magistrate Judge's Report and Recommendation focused on abrogation, and thus the Court also focused on the statutory structure and did not analyze the merits of the arguments fully briefed in the motions to dismiss regarding the County's failure to satisfy fundamental elements of a public nuisance claim.

Restatement (Second) of Torts § 821B (1979); 58 Am. Jur. 2d Nuisances § 189.[7] Moreover, many states also require that the defendant control the instrumentality that causes the interference. Thus, even in those states that might permit a public nuisance claim to proceed against a product manufacturer,[8] Plaintiffs' public nuisance claims are not viable.

The gravamen of the numerous public nuisance claims filed against manufacturers, distributors, and retailers of opioids is that manufacturers created a vastly expanded market for opioid medications through manufacturers' alleged misleading statements regarding the addictiveness of these medications and that distributors and retailers then "flooded" that market by failing to adhere to their regulatory duties, all of which resulted in injury to those individual patients who misused, abused, or became addicted to prescription opioid medications and/or heroin or other illegal drugs.[9] In no jurisdiction could there be allegations that would satisfy the fundamental elements of public nuisance. *First*, despite Plaintiffs' claims, there is no public right to be free from allegedly deceptive marketing materials or the widespread distribution of a lawful medication. Such a conception of a public right would be a seismic shift in tort law, with unforeseeable consequences. *Second*, the causal chain between the conduct of the manufacturers,

---

[7] Some states also recognize that the economic loss doctrine or statewide concern doctrine bar nuisance claims. *See City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 621 F. Supp.2d 513, 522 (N.D. Ohio 2009) (economic loss doctrine); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 469 (N.Y. 1983) (same); *Espinoza v. City of Albuquerque*, 2018 WL 6381436, at *4 (N.M. Ct. App. Dec. 5, 2018) (statewide concern doctrine); *Am. Fin. Servs. Ass'n v. City of Cleveland*, 858 N.E.2d 776, 781 (Ohio 2006) (same); *Cty. Comm'rs of Oakland Cty.v. Oakland Cty. Exec.*, 296 N.W.2d 621, 629 (Mich. Ct. App. 1980) (same).

[8] Such states may include California, Indiana, Ohio, and Wisconsin. Although, in an amicus brief, Indiana notably expressed strong disapproval of extending public nuisance doctrine in the way advocated by Plaintiffs. *See ConAgra Products Company*, Nos. 18-84 & 18-86, at 3 (Ex. 1).

[9] *See, e.g.*, 2d Am. Compl. ¶¶ 19-20, 140, 666-67, 691, 899, 913, *Cabell Cty Comm'n v. AmerisourceBergen Drug Corp.*, No. 1:17-op-45053-DAP (N.D. Ohio May 30, 2018), ECF No. 133).

distributors, and retailers and the alleged harm to Plaintiffs is too remote and attenuated to satisfy any conception of proximate cause.  *Third*, even if such a public right could exist, once prescription opioid medications are manufactured, distributed, or sold, the manufacturers, distributors, and retailers neither control the alleged instrumentality of the nuisance (the opioid medications)—a traditional element of the claim in many states—nor have the ability to abate opioid abuse.

### A.   There is No Public Right to Be Free From Prescription Medications That Allegedly Are Deceptively Marketed, Mis-Prescribed, or Misused.

"From its earliest incarnation in the common law, public-nuisance law proscribed an 'interference with the interests of the community at large—interests that were recognized as rights of the general public entitled to protection.'"  *Cty. of Santa Clara v. Superior Court*, 235 P.3d 21, 32 n.9 (Cal. 2010) (citation omitted).  Interference with a "public right" is the "*sine qua non*" of public nuisance, a defining element that sets it apart from private nuisance.  *Lead Indus.*, 951 A.2d at 447.

A public right is "one common to all members of the general public" and "collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured."  Restatement (Second) of Torts § 821B cmt. g. (1979).  A public right is defined qualitatively, not quantitatively:  it is a collective right that is affected when a harm "deprive[s] all members of the community of a right to some resource to which they otherwise are entitled."  *Lead Indus.*, 951 A.2d at 453.  Thus "[a] public nuisance is one which annoys an entire community"—not just some or even many members of the community.  *State ex rel. Graeber v. Marion Cty. Landfill, Inc.*, 76 P.3d 1000, 1010 (Kan. 2003).[10]  A public right is "an interest shared

---

[10] *See also Benefield v. Int'l Paper Co.*, No. 2:09CV232-WHA, 2009 WL 2601425, at *3 (M.D. Ala. Aug. 21, 2009) ("Alabama law is clear that if an entire community is affected, the nuisance is public . . . .");  *Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court*, 858 N.E.2d 699, 715 (Mass. 2006) (public nuisance must "encroach[] on public property" or "caus[e] a common injury");  Ga. Code Ann. § 41-1-2 ("A public nuisance is one which damages all persons who come

equally by members of the public," and whether it has been interfered with "depends on the nature of the interest affected by the defendant's conduct;" it "is not simply a matter of tallying the number of people affected by a defendant's allegedly tortious conduct." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011*); see also Ganim*, 780 A.2d at 132 ("The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights."); *see also* Restatement (Second) of Torts § 821B cmt. g (1979) ("Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons.  There must be some interference with a public right.").  Because of the collective nature of a public right, a public nuisance necessarily injures "all members of the public who come into contact with it, [and] . . . evidence to the contrary effectively erase[s] . . . [a] public nuisance cause of action."  *White v. Georgia Power Co.*, 595 S.E.2d 353, 357 (Ga. Ct. App. 2004) (quoting *City of Douglasville v. Queen*, 514 S.E.2d 195, 199 (Ga. 1999)).

Here, however, the purported rights with which the manufacturers, distributors, and retailers allegedly interfered are individual, not collective—private, not public.[11]  The allegations concern the right not to be misled or negligently injured in connection with the provision and use of prescription opioid medications.  An individual's decision to use or abuse an opioid medication—even if that decision related to an alleged misrepresentation or failure to act by a manufacturer, distributor, or some other third party—is nonetheless a private choice by an individual (and his or her physician) made in the private sphere.  *See Lead Indus.*, 951 A.2d at 448

---

within the sphere of its operation, though it may vary in its effects on individuals."); Wash. Rev. Code § 7.48.130 (A public nuisance is "one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal.").

[11] Frequently, complaints in the MDL do not even expressly state what the alleged public right is because to do so would expose how far removed they are from the public rights recognized at common law: rights shared equally by all members of the public.

("Products generally are purchased and used by individual consumers, and any harm they cause—even if the use of the product is widespread and the manufacturer's or distributor's conduct is unreasonable—is not an actionable violation of a public right." (citation omitted)).  Multiple private choices do not transform individual harms into a public nuisance, nor does the volume of alleged violations transform a collection of private, individual injuries into a public injury, an interference with a public right.  *See* Restatement (Second) of Torts § 821B cmt. g (1979).

The existence of a public health crisis does not indicate that a public right is at issue; rather, such a crisis is actionable under nuisance law ***only if*** it results from the invasion of public rights.  For example, the Rhode Island Supreme Court held that paint companies' marketing and distribution of lead-based paint did not interfere with a public right even though the court acknowledged that "lead poisoning constitutes a public health crisis that has plagued and continues to plague this country, particularly its children."  *Lead Indus.*, 951 A.2d at 436; *see also City of Chicago*, 821 N.E.2d at 1116 (rejecting public nuisance claim against firearms manufacturers, distributors, and dealers, and finding no authority for an alleged public right to be free from the threat that someone may use a product in a way that creates a risk of harm to another).[12]  Many other courts have similarly rejected public nuisance claims in the face of undisputed and significant public health and safety crises relating to lead paint, asbestos, and firearms, among others.  *See,*

---

[12] Although the Ohio Supreme Court in *City of Cincinnati v. Beretta*, 768 N.E.2d 1136, held that widespread possession of guns by criminals could interfere with a common right "to be free from conduct that creates a disturbance and reasonable apprehension of danger to person and property," (*City of Cincinnati v. Beretta*, 2002 WL 34429690 (Ohio Ct. Com. Pl. Aug. 14, 2002), Compl. ¶ 110), the lethal danger to be in public (or in schools) among any and all members of the community present in *City of Cincinnati v. Beretta* is not alleged here, nor did those alleged injuries "arise from a failure to adequately warn or instruct a consumer about the product," *Grewal*, 2018 WL 4829660, at *17 (dismissing a public nuisance action against an opioid manufacturer).  Moreover, *City of Cincinnati v. Beretta* is a decision that the General Assembly abrogated when it amended the Ohio Product Liability Act in 2005 and 2007.

*e.g.*, *In re Lead Paint Litigation*, 924 A.2d 484 (lead paint); *Celotex Corp.*, 493 N.W.2d 513 (asbestos); *Ganim*, 780 A.2d 98 (firearms); *Allegheny General Hosp.*, 228 F.3d 429 (tobacco). These holdings recognize that the threshold question of the public nuisance doctrine is whether the alleged conduct interferes with a public right.   Only after that question is answered in the affirmative is the court to consider whether that interference is unreasonable, the test for which is whether "the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public inconvenience."  Restatement (Second) of Torts § 821B (1979).

Public rights are also not coextensive with the "public interest"; what might benefit (or harm) the public interest is a vastly broader category of conduct than only the conduct that violates a public right and it is the court's duty to maintain the distinction.  *See Lead Indus.*, 951 A.2d at 448 (citing Gifford, *supra*, at 815).  Otherwise, the concept of a "public right" would be "so broad and undefined that the presence of any potentially dangerous instrumentality in the community could be deemed to threaten it."  *City of Chicago v. Beretta*, 821 N.E.2d at 1116.

Opioid abuse indisputably is a pressing social issue, but there is nonetheless no public right to be free from its consequences.   Restatement (Second) of Torts § 821B cmt. g (1979) (distinguishing a public nuisance from "the individual right everyone has not be assaulted or defamed or defrauded or negligently injured"); *City of Chicago*, 821 N.E.2d at 1116 ("[W]e are reluctant to state that there is a public right to be free from the threat that some individuals may use an otherwise legal product . . . in a manner that may create a risk of harm to another.").  A "court's desire to promote the public interest in an ideal state of health and well-being should not be sufficient to state a public nuisance claim against a manufacturer whose products, though harmful, do not violate a public right and do not otherwise satisfy the criteria for liability under a

public nuisance theory."  Gifford, *supra*, at 815–16; *Lead Indus.*, 951 A.2d at 448 ("Unlike an interference with a public resource, 'the manufacture and distribution of products rarely, if ever, causes a violation of a public right as that term has been understood in the law of public nuisance.'" (quoting Gifford, *supra*, at 817) (alteration omitted)).

### B.      Conduct by Manufacturers, Distributors, and Retailers Did Not Proximately Cause National Opioid Abuse.

Like all torts, a public nuisance cause of action requires a demonstration of legal causation as a threshold element of the claim.  *See* Restatement (Second) of Torts § 834 cmt. d (1979).[13] Moreover, when there are numerous possible causes for a particular harm, an individual defendant's participation in causing the harm must be substantial for liability to accrue.  *Id.* at § 834.  As has been briefed extensively in the MDL, the claims and allegations at issue suffer fatal deficiencies in the chain of causation, including intervening acts by patients, doctors, and third parties over whom Defendants have and had no control—some of whom diverted medications for illegal purposes in violation of both state and federal law.  The chain of causation also is broken by the role of doctors who are presumed to have read and understood the warning labels on the opioids, but nonetheless in some instances improperly prescribed them.  Thus, no Plaintiff will be able to satisfy the proximate cause element of a public nuisance claim.

---

[13] *See, e.g.*, *Sprayberry Crossing P'ship v. Phenix Supply Co.*, 617 S.E.2d 622, 624 (Ga. Ct. App. 2005); *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 646 N.W.2d 777, 794 (Wis. 2002); *King*, 801 N.E.2d at 1235 ("The essence of a nuisance claim is the foreseeable harm unreasonably created by the defendants' conduct."); *Tipler*, 547 So. 2d at 441 (but-for causation was not a sufficient nexus between the defendant's conduct and the ultimate events and circumstances of the attenuated harm); *City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126, 139 (Ill. App. Ct. 2005) (finding causation lacking when the defendant produced a lawful product years prior that was then used by third parties); *Citizens for Odor Nuisance Abatement v. City of San Diego*, 213 Cal. Rptr. 3d 538, 545–47 (Ct. App. 2017); *State ex rel. Bowman v. Fipps*, 146 S.E.2d 395, 397 (N.C. 1966); *Whaley v. Park City Mun. Corp.*, 190 P.3d 1, 6 (Utah Ct. App. 2008).

In *In re Firearm Cases*, 24 Cal. Rptr. 3d 659, 663 (Ct. App. 2005), for example, political subdivisions sued manufacturers, distributors, and retailers of handguns claiming that the defendants distributed firearms in a manner that enabled criminals to acquire them.  Ultimately, the public nuisance claim failed for lack of causation because the plaintiffs "attempt[ed] to reach too far back in the chain of distribution when [plaintiffs] target[ed] the manufacturer of a legal, non-defective product that lawfully distribute[d] its product only to those buyers licensed by the federal government."  *Id.* at 682–83; *see also City of Modesto Redevelopment Agency v. Superior Court*, 13 Cal. Rptr. 3d 865, 875 (Ct. App. 2004) (dismissing public nuisance claim against manufacturer, because a failure to warn is analogous to the manufacture, distribution, and supply of materials, and "does not fall within the context of nuisance but is better analyzed through the law of negligence or products liability, which have well-developed precedents to determine liability for failure to warn.").[14]

Moreover, to the extent that Plaintiffs might seek to circumvent traditional rules of proximate cause, such efforts have been flatly rejected.  *See, e.g.*, *Benjamin Moore*, 226 S.W.3d at 114–15 (dismissing public nuisance suit, because plaintiff could not identify which manufacturer made or sold particular products that caused harm); *City of New Haven*, 2019 WL 423990, at *7 (dismissing suits against opioid manufacturers, while finding causation lacking and it "fanciful to pretend [courts] can credibly quantify the actual harm to cities and attribute that harm by individual percentage to over two-dozen defendants.").

C.      **Manufacturers, Distributors, and Retailers Do Not Maintain Control Over the Instrumentality of the Nuisance.**

---

[14] *Cf.* Cty. of Santa Clara v. Atl. Richfield Co., 40 Cal. Rptr. 3d 313, 328-29 (Ct. App. 2006) (holding that *City of Modesto* decision was limited to requests for damages, but not for abatement).

In many states, "the essential element of nuisance is control over the cause of the harm." *Fielder v. Rice Constr. Co.*, 522 S.E.2d 13, 16 (Ga. Ct. App. 1999); *see also Bd. of Water Works Trustees of City of Des Moines v. SAC County Bd. of Supervisors*, 890 N.W.2d 50, 62 (Iowa 2017) (Public nuisance "[l]iability follows control."); *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1026 (10th Cir. 2007) ("[An] individual[] may be held liable to the extent he was responsible for the maintenance of a nuisance that was under his possession or control."); *Penelas v. Arms Tech., Inc.*, No. 99-1941 CA-06, 1999 WL 1204353, at *4 (Fla. Cir. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla. 3d Dist. App. 2001) (A "party cannot be held liable for nuisance absent control of the activity which creates the nuisance.").  This is because the historical purpose underlying public nuisance doctrine has been to assure a legal remedy is available to terminate a nuisance interfering with a public right.  *Lead Indus.*, 951 A.2d at 449 ("[L]iability for nuisance— both public and private—is premised not on the creation of a nuisance but rather on the defendant's current control of the instrumentality causing the nuisance." (citation omitted)).  Thus, inherent to the doctrine of public nuisance is the requirement that the defendant have control over the instrumentality of the public nuisance at the time the nuisance forms, such that a court could order the defendant to abate the nuisance.  *See, e.g.*, *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) (applying Indiana law in dismissing a public nuisance claim against a manufacturer when another was "in control of the product purchased and was solely responsible for the nuisance it created by not safely disposing of the product"); *Tipler v. McKenzie Tank Lines*, 547 So. 2d 438, 441 (Ala. 1989) (a party "cannot be charged and held liable either for maintaining, or for failing to prevent, a chain of events and circumstances over which it had no reasonable means of control"); *Dicamba,* 2019 WL 460500, at *10 ("This rule"—that product manufacturers are not liable for nuisance caused by post sale use of their products—"is all the

more sensible when viewed in the context that no injunctive relief is available to abate a nuisance if the defendant has no control."); *Cofield v. Lead Indus. Ass'n, Inc.*, No. Civ.A. MJG-99-3277, 2000 WL 34292681, at *7 (D. Md. Aug. 17, 2000) (applying Maryland law in holding, "an action for either public or private nuisance requires the plaintiff to plead and prove that the defendant has control over the alleged nuisance."); *White v. Vrable*, No. 98AP-1351, 1999 WL 771053 (Ohio Ct. App. Sept. 30, 1999) (dismissing negligence claims against a pharmacy for alleged mishandling of prescription medications because they were stolen by plaintiff's father and illegally ingested by plaintiff).

The underlying harm from the misuse and abuse of opioids occurs not when opioid medications are under the possession or control of manufacturers, distributors, or retailers, but only afterward when patients misuse or abuse such medications or illegal drugs such as heroin. Manufacturers, distributors, and retailers relinquish possession over opioid medications upon sale, and they certainly do not control what the patient does with the medications after the pharmacist dispenses them: use them as instructed or misuse, give away, or sell them.  None of the manufacturers or distributors ultimately exercised control over the opioid medications after delivery to patients, which is when the medications allegedly created the public nuisance. Furthermore, opioid abuse—the underlying harm—is far outside of the control of manufacturers, distributors, and retailers, particularly when considering the wide array of complex societal issues opioid abuse encompasses, including individual prescribing decisions, addiction, criminal activity (including the use or heroin and other illegal drugs), and public services response.

## IV.    OTHER ASPECTS OF STATE LAWS PRESENT BARRIERS TO PLAINTIFFS' PUBLIC NUISANCE CLAIMS.

There are other state-specific reasons Plaintiffs public nuisance claims are not viable, including statutes of limitation, state-specific public nuisance statutes and regulations, and

limitations on available remedies.  These aspects of state law presents additional insurmountable challenges to Plaintiffs' public nuisance claims.

### A.      Statutes of Limitation Impose Varying Limits on Liability.

Many states maintain strict statutes of limitation for public nuisance claims that would require dismissal of Plaintiffs' public nuisance claims outright or at least substantially limit the claims to a particular time period.  These periods range from, for example, one year in West Virginia to six years in Indiana.[15]  Some states have different limitation periods for common law public nuisance claims as compared to statutory.  *Compare* Colo. Rev. Stat. § 13–80–102(1)(a) (two-year limitation period for common law claims), *with* Colo. Rev. Stat. § 13–80–103.8 (five-year limitation period for statutory claims).  And whatever the length of the applicable statute of

---

[15] *See, e.g.*, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901, 922 (W. Va. 1997) (citing W.Va. Code § 55-2-12) (one-year limitation period); *Marrero Hernandez v. Esso Standard Oil De Puerto Rico, Inc.*, No. CIV. 03-1485JAGGAG, 2005 WL 1213664, at *5 (D.P.R. May 20, 2005), *judgment vacated in part on reconsideration*, No. CIV. 03-1485JAGGAG, 2005 WL 1653736 (D.P.R. July 13, 2005) (one-year limitation period); Ala. Code § 6-2-38(l) (two-year limitation period); *Hawks v. City of Coffeyville*, No. 93-CV-2555, 1994 WL 566945, at *1 (D. Kan. Sept. 8, 1994) (citing Kan. Stat. Ann. § 60–513) (two-year limitation period); 42 Pa. Cons. Stat. § 5524(7) (two-year limitation period); *Branch v. Mobil Oil Corp.*, 788 F. Supp. 531, 536 (W.D. Okla. 1991) (citing Okla. Stat. tit. 12 § 95(3)) (two-year limitation period); *City of New York v. Coll. Point Sports Ass'n, Inc.*, 876 N.Y.S.2d 409, 422 (App. Div. 2009) (three-year limitation period); *Mills v. Lerner*, No. 319644, 2015 WL 1650931, at *2 (Mich. Ct. App. Apr. 14, 2015) (citing Mich. Comp. Laws § 600.5805(10)) (three-year limitation period); *Hedgepath v. Am. Tel. & Tel. Co.*, 559 S.E.2d 327, 336 (S.C. Ct. App. 2001) (three-year limitation period for damages); *Morrison Enters., LLC v. Dravo Corp.*, No. 4:08CV3142, 2009 WL 4325749, at *10 (D. Neb. Nov. 24, 2009) (citing Neb. Rev. Stat. § 25-207) (four-year limitation period); *Aetna Cas. & Sur. Co. v. Gulf Res. & Chem. Corp.*, 600 F. Supp. 797, 799 (D. Idaho 1985) (four-year limitation period); Ind. Code § 34–11–2–7(3) (six-year limitation period); *Flint Hills Res. Alaska, LLC v. Williams Alaska Petrol., Inc.*, 377 P.3d 959, 971 (Alaska 2016) (citing Alaska Stat. § 09.10.050) (six-year limitation period for damages); *Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1279 (Ind. 2009) (citing Ind. Code § 34–11–2–7(3)) (six-year limitation period for damages).

limitations, the fact-finder would have to make particularized legal and factual findings about the knowledge (actual and constructive) of each claimant in each jurisdiction.[16]

**B.**    **The Remedies Available to Address a Public Nuisance Are Often Severely Limited.**

Some states outright bar state actors from suing for damages in a public nuisance case,[17] while others explicitly bar certain types of damages.[18]   In addition to being limited to abatement explicitly, state actors are very often are limited to abatement by negative implication or by authorizing only limited forms for such actions.  *See, e.g.*, Conn. Gen. Stat. § 19a-343b (limiting the available remedies to those "reasonably necessary to abate the nuisance"); Utah Code § 76-10-806 (requiring a public nuisance action to conform with the "Rules of Civil Procedure of the State of Utah for injunctions.").  Thus, even if Plaintiff's public nuisance claims could survive (and they should not), in some jurisdictions there would be no recovery for alleged damages, even if—and it is a big if indeed—an order for abatement could be obtained.

---

[16] *See, e.g.*, *Elec. Power Bd. of Chattanooga v. Monsanto Co.*, 879 F.2d 1368, 1376 (6th Cir. 1989) (finding injury was discovered by a public agency on the basis *inter alia* of a Task Force report from 17 years before the opinion date, and upholding summary judgment against plaintiff).

[17] *See, e.g.*, *People ex rel. Van de Kamp v. Am. Art Enters., Inc.*, 656 P.2d 1170, 1173 n.11 (Cal. 1983) (California law "does not grant a damage remedy in actions brought on behalf of the People to abate a public nuisance."); *compare* Wash. Rev. Code § 7.48.020 and Wash. Rev. Code § 7.48.210 (authorizing damages for an individual harmed by a public nuisance), *with* Wash. Rev. Code § 7.48.220 (authorizing only abatement by public body or officer);

[18] *See, e.g.*, *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1143-47 (Ill. 2004) (finding public expenditures made in the performance of governmental functions, such as emergency services, are not recoverable) and *Walker Cty. v. Tri-State Crematory*, 643 S.E.2d 324, 327 (Ga. Ct. App. 2007) (same).

## CONCLUSION

The Court directed the parties to submit briefing addressing the viability of public nuisance claims wherever MDL Plaintiffs are located.  For all the reasons stated above, Defendants submit that the public nuisance claims alleged here are not viable in any jurisdiction.

DATED:  March 1, 2019

/s/ Carole S. Rendon
Carole S. Rendon
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 621-0200
crendon@bakerlaw.com

*Liaison Counsel for the Manufacturer Defendants*

/s/ Enu Mainigi
Enu Mainigi
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
(202) 434-5000
emainigi@wc.com

*Liaison Counsel for the Distributor Defendants*

/s/ Kaspar Stoffelmayr
Kaspar Stoffelmayr
BARTLIT BECK LLLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlit-beck.com

*Liaison Counsel for the Pharmacy Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 1, 2019, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system, and will be served via the Court's CM/ECF filing system on all attorneys of record.

DATED:  March 1, 2019                                    */s/ Carole S. Rendon*
                                                              Carole S. Rendon