UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| All Cases | |

BRIEF OF PLAINTIFFS' EXECUTIVE COMMITTEE CONCERNING SURVEY OF STATE NUISANCE LAW

In its order issued on December 31, 2018, this Court directed the parties to submit briefing "addressing the viability of statutory and/or common law claims for public nuisance in each State and territory where any MDL plaintiff is located." Doc. #1218.[1] The Plaintiffs' Executive Committee ("PEC") hereby submits this brief in response to the direction of the Court.

OVERVIEW AND SUMMARY

In virtually every state, municipal governments may bring claims for public nuisance, either at common law or pursuant to statute (or both), and may obtain equitable relief, in the form of abatement and injunction, as well as damages. A substantial majority of states follow the definition for a public nuisance set forth in Restatement Second of Torts § 821B; most of the remaining states have applied similar definitions for public nuisance, even if they have not expressly invoked the standards set forth in the

_____

[1] Based on the most recent information available to the PEC, MDL plaintiffs are located in every state except Delaware, Hawaii, and Vermont. The only U.S. territory in which an MDL Plaintiff has brought suit is Puerto Rico. No case has yet been brought in the MDL on behalf of the District of Columbia.  Although the Court's order does not require it, in the interest of completeness, this brief notes where appropriate how the principles discussed herein apply in Delaware, Hawaii, and Vermont, and in the District of Columbia. For jurisdictions in which at least one MDL plaintiff is located, discussion of nuisance law herein is provided without regard to whether a nuisance claim has actually been asserted in any case in the MDL.

Restatement. Just as this Court has found with respect to Ohio in its ruling on the motions to dismiss in the Summit County case, Op. & Order, Doc. #1203, each of these Plaintiffs may assert a claim for public nuisance under the prevailing law in their jurisdiction.

The PEC does not construe the Court's order to require the parties to address the particulars of the factual allegations asserted in each case in the MDL. Rather, we understand the Court to have asked the parties to address the question whether, assuming adequate factual allegations, the law of the particular jurisdiction would allow the Plaintiffs to proceed with a public nuisance action. We conclude that, in virtually every case, they can.

For similar reasons, the PEC does not construe the Court's order to ask the parties to address whether there is any affirmative defense that Defendants might successfully assert to defeat a public nuisance claim, particularly given that most affirmative defenses will turn on questions of fact that may vary from case to case. Nevertheless, guided by this Court's ruling in the Summit County case, Plaintiffs have chosen to address, briefly, three potential affirmative defenses that some Defendants have alleged would bar claims for public nuisance as a matter of law. Specifically, the PEC herein briefly addresses the affirmative defenses asserted by Defendants related to the statewide concern doctrine, the free public services/municipal cost recovery doctrines, and the economic loss doctrine. We conclude that these affirmative defenses, as properly understood and limited, would not act to bar Plaintiffs' public nuisance claims in virtually any jurisdiction.

Finally, the PEC concludes this memorandum with a brief discussion of jurisdictions in which rulings have already been handed down in lawsuits related to the opioids crisis. Again, virtually all of this recent precedent upholds, and permits plaintiffs to go forward with, claims for public nuisance. The two notable exceptions, trial court

rulings in Connecticut and New Jersey,[2] were not based on a rejection of public nuisance as a viable cause of action. Rather, the Connecticut decision was based on an idiosyncratic view of standing law, while the New Jersey decision concluded that, in this context, the public nuisance cause of action had been subsumed by the state's Products Liability Act. The PEC believes both of these rulings to be erroneous; the Connecticut ruling has been appealed and the New Jersey ruling, which was not a final judgment, remains subject to later appellate review. In any event, the great weight of authority from across the country strongly supports the viability of claims for public nuisance.

DISCUSSION

## I.    THE VIABILITY OF PUBLIC NUISANCE CLAIMS

Section 821B of the Restatement (Second) of Torts sets forth the classic articulation of the common law tort of public nuisance:

> (1) A public nuisance is an unreasonable interference with a right common to the general public.
>
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
>> (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>>
>> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
>>
>> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

---

[2] In Delaware, a nuisance claim brought by the state Attorney General was recently dismissed in the trial court.  *See State ex rel. Jennings v. Purdue Pharma L.P.*, No. N18C-01-223 MMJ CCLD, 2019 WL 446382, at *12-13 (Del. Super. Ct. Feb. 4, 2019).  As noted above, no case pending in the MDL originated in, or implicates the nuisance law of, Delaware.  More significantly, the Delaware court was aware of, and distinguished, this Court's ruling denying Defendants' motions to dismiss Summit County's nuisance claim, on the basis of the particularities of Delaware law. *See id.* at *12.  The PEC believes that the Delaware *Purdue Pharma* is idiosyncratic to Delaware and that, as a trial court ruling it is not, in any event, authoritative.

3

Restatement (Second) of Torts § 821B (1979). The comments to the Restatement provision elaborate on this definition.  Of particular relevance here, they provide: (1) that it is not necessary "that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large," *comm. g*; (2) "Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land," *comm. h*; and (3) a public nuisance may give rise to both "an action for tort damages and an action for an injunction or abatement," although the standards for imposing liability may differ; in particular, a plaintiff seeking damages for a public nuisance "must have suffered damage different in kind from that suffered by the general public," while "for an injunction harm need only be threatened and need not actually have been sustained at all," *comm. i.*

As both the Court and Magistrate Judge Ruiz recognized in denying Defendants' motions to dismiss Summit County's public nuisance claim under Ohio law (which follows the Restatement, *see City of Cincinnati v. Beretta*, 95 Ohio St. 3d 416, 768 N.E.2d 1136 (2002)), the conduct at issue in this MDL falls well within the bounds of this Restatement definition. Plaintiffs have alleged that Defendants' conduct significantly interferes with public health, public safety, public peace, and public comfort; that at least some of the conduct at issue is prescribed by statutes and regulations; and that Defendants' conduct is both continuing and has produced long-lasting, significant effects upon these public rights. And, as discussed in Part IV, below, numerous other courts have likewise relied on this Restatement definition in denying similar motions to dismiss public nuisance claims in opioids litigation. There can therefore be no doubt, at least in jurisdictions that follow Restatement § 821B, that claims for public nuisance are viable.

A.      **Jurisdictions that Follow Restatement § 821B**

A substantial majority of jurisdictions have made clear that they are guided by Restatement § 821B in applying the law of public nuisance. Exhibit 1, attached to this

4

brief, identifies decisions in thirty-eight of the jurisdictions with cases before this Court in which the courts have invoked the language and/or comments to Restatement § 821B and followed them in assessing public nuisance liability under the law in their state. Specifically, courts in each of the following jurisdictions have indicated that their public nuisance law is consistent with Restatement § 821B: Alabama, Alaska, Arizona, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Virginia, West Virginia, and Wisconsin.[3] *See* Exhibit 1 (citing cases).[4] Thus, there can be little question that, in each of these jurisdictions, public nuisance claims arising from the opioid epidemic are viable.

### B.  Jurisdictions with Similar Definitions of Public Nuisance

None of the remaining ten jurisdictions with cases before this Court have expressly relied upon Restatement § 821B as an interpretative guide to their public nuisance law. Nevertheless, six of these jurisdictions—Minnesota, North Dakota, Oklahoma, South

---

[3] Courts in the District of Columbia and in Vermont have also cited § 821B as describing the contours of nuisance law. *See B&W Mgmt., Inc. v. Tasea Inv. Co.,* 451 A.2d 879, 881-82 (D.C. 1982); *State v. Howe Cleaners, Inc.,* 9 A.3d 276, 297 (Vt. 2010).

[4] In most of these states, the courts were analyzing the availability of nuisance at common law. In the others, courts employed Restatement § 821B in construing statutory provisions that had codified their common law. See Exhibit 2 for a list of such statutes.

In a handful of these states, the only courts to have cited Restatement § 821B are federal courts. In the absence of clear guidance from the state courts, this Court may be guided by precedent from a federal court in that state. *See In re Fair Fin. Co.,* 834 F.3d 651, 671 (6th Cir. 2016) (quoting *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 577 (6th Cir. 2004) (where state appellate courts have not "directly addressed the issue before us . . . we must 'consider all relevant data, including jurisprudence from other jurisdictions.'")).

Dakota, Washington, and Puerto Rico—have codified statutory causes of action for public nuisance that largely parallel the Restatement approach.[5]

In Minnesota, Minn. Stat. § 609.74(1) defines a public nuisance. It provides, in relevant part:

> Whoever by an act or failure to perform a legal duty intentionally does any of the following is guilty of maintaining a public nuisance, which is a misdemeanor: (1) maintains or permits a condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public. . . .

Although this provision treats public nuisance as a criminal offense, Minnesota courts have consistently utilized it when faced with civil public nuisance claims. *See, e.g., City of W. St. Paul v. Krengel*, 748 N.W.2d 333, 341 (Minn. Ct. App. 2008). The similarity between the language of Minn. Stat. § 609.74(1) and the Restatement's reference to "a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience" should be obvious; and Minnesota courts have upheld the viability of public nuisance actions far removed from concerns regarding the use and enjoyment of private property, such as the withholding of names of suspected pedophile priests by the local Archdiocese. *See Doe 1 v. Archdiocese of St. Paul*, No. 62-CV-13-4075, 2013 WL 7218911, at *4 (Minn. Dist. Ct. Dec. 10, 2013) ("The specter of unidentified pedophiles living at undisclosed locations in the community could create a cognizable public nuisance claim"); *see also Doe 37 & 38 v. Diocese of New Ulm*, No. 08-CV-14-863, slip op. (Minn. Dist. Ct. Mar. 27, 2015) (allegations "of exposing children of the communities served by the Diocese to an increased danger of molestation which affects people's

---

[5] While the North Dakota statute expressly replaces and abrogates the common law claim for public nuisance, *Rassier v. Houim*, 488 N.W.2d 635, 636 (N.D. 1992), the Oklahoma statute does not, *see Nichols v. Mid-Continent Pipe Line Co.*, 933 P.2d 272, 276 (Okla. 1996), and Puerto Rico is a civil law jurisdiction with no common law tradition. The continuing status of common law public nuisance in the other three jurisdictions is unclear. The public nuisance jurisprudence largely involves analysis of the statutory causes of action.

enjoyment of life and endangers the safety, health, and morals of the public . . . are sufficient" to plead a public nuisance).

In North Dakota, nuisance is defined by N.D. Cent. Code Ann. § 42-01-01, which provides, in relevant part:

> A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission:
>
> 1. Annoys, injures, or endangers the comfort, repose, health, or safety of others;
>
> 2. Offends decency; . . . or
>
> 4. In any way renders other persons insecure in life . . . .

N.D. Cent. Code Ann. § 42-01-06, in turn, defines a "public nuisance" as "one which at the same time affects an entire community or neighborhood or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." While case law interpreting these provisions is limited, the similarity to the language of both the Minnesota statute and Restatement § 821B is obvious and should lead to a similar construction.

Both Oklahoma and South Dakota's statutory codifications of the law of public nuisance are virtually verbatim of that in North Dakota, Okla. Stat. tit. 50, §§ 1, 2; S.D. Codified Laws §§ 21-10-1 and 21-10-3, and should be interpreted in the same manner.

Washington's nuisance statute is somewhat more general on its face, defining an actionable nuisance as "whatever is injurious to health or indecent or offensive to the senses," Wash. Rev. Code § 7.48.010, and a public nuisance as "one which affects equally the entire community or neighborhood, although the extent of the damage is unequal." Wash. Rev. Code § 7.48.130. Its pattern jury instructions, however, track identically with the North and South Dakota and Oklahoma statutes, *see* Wash. Pattern Jury Instr. Civ. 380.05, and should be interpreted in like manner. *See State v. Purdue Pharma L.P.*, No. 17-2-25505-0 SEA, slip op. at 3 (King Cty. Super. Ct. May 14, 2018) (denying motion to dismiss public nuisance claim, finding "that the statute is quite clear that it applies to

interference with life *or* property, and that interference with real property is not required"); *but see City of Everett v. Purdue Pharma L.P.*, Case No. C17-209RSM, 2017 WL 4236062, at *9 (W.D. Wash. Sept. 25, 2017) (dismissing, with leave to amend, public nuisance claim for failure to allege a connection to property).

Finally, in this group, Puerto Rico has enacted a largely similar nuisance statute.[6] P.R. Laws Ann. tit. 32, § 2761 provides, in relevant part:

> Anything which is injurious to health, indecent, or offensive to the senses, . . . so as to interfere with the comfortable enjoyment of life or property, or that is a nuisance to the well being of a neighborhood, or to a large number of persons . . . constitute a nuisance and the subject of an action.

Puerto Rico courts read an "unreasonableness" requirement into the statute. *Arcelay v. Sánchez*, 77 P.R. Dec. 824, (1955). Thus, as in the other jurisdictions in this category, conduct that is unreasonably "injurious to health . . . so as to interfere with the comfortable enjoyment of life . . . or that is a nuisance . . . to a large number of persons" constitutes a nuisance. Defendants' alleged conduct in the marketing and distribution of opioids falls well within this statutory definition. *See Gobierno de Puerto Rico v. Cardinal Health, Inc.*, No. SJ2018CV03958, slip op. at 7 (Super. Ct. of Bayamon Dec. 10, 2018) (denying motion to dismiss nuisance claim in opioids suit).

### C.   Jurisdictions Adopting Other Approaches

The four remaining jurisdictions—Arkansas, Idaho, South Carolina, and Wyoming—have only limited case law discussing public nuisance, and none in contexts at all similar to the present litigation. We briefly summarize the state of the law in each state.

---

[6] The statute does not on its face distinguish between public and private nuisances. P.R. Laws Ann. tit. 32, § 2761. Puerto Rico, as a civil law jurisdiction, does not recognize public nuisances not based on statute. *People v. Escambrón Beach Club, Inc.*, 63 P.R. Dec. 761 (1944).

Arkansas recognizes the common law cause of action for public nuisance. The Arkansas Supreme Court has defined a "common or public nuisance" broadly as:

> that which affects the people and is a *violation of a public right*, either by a direct encroachment upon public property or *by doing some act which tends to a common injury*, or by the omitting of that which it is the duty of a person to do. *Public nuisances are founded upon wrongs that arise* from the unreasonable, unwarrantable, or unlawful use of property, or *from improper, indecent, or unlawful conduct, working an* obstruction or *injury to the public* and producing material annoyance, inconvenience, and discomfort founded upon a wrong.

*Incr. Town of Lonoke v. Chicago, R.I. & P.R. Co.*, 92 Ark. 546, 123 S.W. 395, 398 (1909) (internal quot. marks and cit. om.; emphasis added); *see also Ozark Poultry Prod., Inc. v. Garman*, 251 Ark. 389, 390–91, 472 S.W.2d 714, 715–16 (1971) ("[P]ublic nuisance involves a violation of a public right held in common by the community as a whole"). This definition is clearly broad enough to encompass conduct not involving misuse of real property, such as the misconduct alleged here. The Eighth Circuit Court of Appeals did reject a public nuisance cause of action under Arkansas law against the manufacturers of drugs containing ephedrine or pseudoephedrine for selling their products through legal channels, which resulted in the use of those products in the illegal manufacture of methamphetamines, *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009), but that ruling was based on a determination of no proximate cause as a matter of law, *id.* at 671, a conclusion this Court has already rejected in the opioids litigation. R. & R., Doc #: 1025 at 81-82.[7]

Idaho defines nuisance by statute as "*anything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so*

---

[7] The district court in the pseudoephedrine litigation had rejected the public nuisance claim on the purported ground that Arkansas limited nuisance claims to misconduct by landowners, citing two state court cases involving *private* nuisances. *Indep. Cty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 890 (E.D. Ark. 2008) (citing *Milligan v. Gen. Oil Co.*, 738 S.W.2d 404 (Ark. 1987) (citing *Ark. Rel. Guidance Fdn. v. Needler*, 477 S.W.2d 821 (Ark. 1972)). The Eighth Circuit did not address this conclusion, which is flatly inconsistent with the Arkansas Supreme Court's definition of "common or public nuisance" in *Town of Lonoke*.

*as to interfere with the comfortable enjoyment of life* or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, stream, canal, or basin, or any public park, square, street, or highway." Idaho Code § 52–101 (emphasis added). A nuisance is a public nuisance when it "affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Idaho Code § 52-102. There is little, if any, case law interpreting this statute outside of the context of property-based nuisances, but the language is on its face clearly broad enough to encompass the public nuisances alleged by plaintiffs herein.

The South Carolina Supreme Court has declared that "[a] public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights." *State v. Turner*, 18 S.E.2d 372, 375 (S.C. 1942) (quoting 20 R.C.L. (Nuisances), § 7, p. 384). In the same opinion, the Court also observed that whatever "affects the health of the community . . . is generally, at common law, a public nuisance." *Id.* (quoting Clark's Criminal Law, 2d ed., Hornbook Series, § 115, p. 346). Here, too, this judicial definition is unquestionably broad enough to reach the conduct of the Defendants before this Court.

Wyoming recognizes a common law cause of action for public nuisance, but has not defined its parameters. *Knight v. City of Riverton,* 259 P.2d 748 (Wyo. 1953). For the same reasons that public nuisance actions against manufacturers and distributors of prescription opioids are viable in other jurisdictions, so too should they be in Wyoming.[8]

---

[8] As noted, there are at present no cases in the MDL from Hawaii. That state, too, has little jurisprudence articulating the scope of its public nuisance doctrine. In *Littleton v. State*, 656 P.2d 1336 (Haw. 1982), the Supreme Court of Hawaii defined nuisance to mean "that which unlawfully annoys or does damage to another, anything that works hurt, inconvenience, or damage, . . . and anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights." *Id.* at 1344 (quoting 58 Am. Jur.2d Nuisances § 1 at 555 (1971)). This definition is also capacious enough to include the misconduct at issue here.

**D.**     **Jurisdictions Recognizing Additional Statutory Nuisance Causes of Action**

Even in jurisdictions recognizing common law claims for public nuisance, there may also be statutory bases for public nuisance claims. While some nuisance statutes are specific to particular conduct or circumstances far removed from the issues before this Court, many others may well apply and give rise to statutory causes of action. These statutory causes of action tend to fall into two categories: first, statutes that broadly define and prohibit public nuisances and, second, narrowly tailored nuisance statutes that would appear to apply to the conduct at issue in this litigation, such as Ohio Rev. Code § 4729.35 (concerning violation of laws controlling the distribution of a drug of abuse), which this Court has already upheld against a motion to dismiss.

Rather than belabor the Court with a lengthy discussion of each of these specific public nuisance statutes, some of which were discussed in the foregoing sections, the PEC simply includes, as Exhibit 2, a chart listing both such general and specific statutory provisions that plaintiffs contend should give rise to causes of action in this litigation.[9]

## II.   REMEDIES AVAILABLE

Traditionally, at common law, both an action for damages and an equitable action for abatement and/or injunction were available to remedy a public nuisance, though the requirements for legal and equitable relief might differ. *See* Restatement § 821B, *comm. i.* Damage awards are "retroactive, applying to past conduct," while equitable relief seeks to prevent or abate future harm from the nuisance; because of this distinction, an award of damages required that a plaintiff incur significant harm from the nuisance, while "for an injunction harm need only be threatened and need not actually have been sustained at all." *Id.*

---

[9] There are numerous state statutory provisions concerning public nuisances and the PEC does not contend that the list included in Exhibit 2 is comprehensive. For this reason, the absence of any state nuisance statute from that list should not be understood by the Court as a concession by the PEC that the statute does not give rise to a cause of action that may be applicable to Defendants' conduct here.

In many jurisdictions, the availability of both legal and equitable relief has been made explicit either by statute or by case law. But, even in jurisdictions where there is no express statute or case holding, the availability of damages, abatement, and injunctive relief should be presumed, absent an express statement to the contrary.

In Exhibit 3, Plaintiffs identify jurisdictions in which the availability of both legal and equitable remedies has been expressly stated. The PEC knows of no jurisdiction in which either form of relief has been categorically rejected for public nuisance claims.[10]

In many instances, public nuisance claims for damages may also be brought by private parties. Restatement (Second) of Torts, § 821C, "Who Can Recover for Public Nuisance" (1979), explains that private parties seeking to recover damages for public nuisance "must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference." Numerous states (over thirty) have adopted or cited this provision with approval. Other states reach the same result in their common law without reference to the Restatement. *See, e.g., Strickland v. Lambert*, 109 So.2d 664, 665 (Ala. 1959); *Ozark Poultry Prods., Inc. v. Garman*, 472 S.W.2d 714, 716 (Ark. 1971). Still others have enacted statutes that provide private plaintiffs the right to pursue public nuisance claims if they can prove a "special injury." *See, e.g.,* Cal. Civil Code § 3493; Ga. Code Ann. § 41-1-3. Whatever the precise formulation and source of law – whether through the adoption of the Restatement § 821C, application of common law principles, or by statute – every state provides that a private party may sue under tort for public nuisance upon proof of a special, different-in-kind, injury from that incurred by the general public.

---

[10] Certain statutory provisions, however, do limit the remedies available for particular forms of nuisance. *See, e.g.,* Ohio Rev. Code § 4729.35 (providing for only injunctive relief for statutory public nuisance based on violation of laws concerning distribution of drugs of abuse).

## III.  POTENTIAL DEFENSES

Defendants will no doubt contend that various affirmative defenses bar plaintiffs in numerous jurisdictions from pursuing public nuisance claims.[11] Plaintiffs cannot fully anticipate and respond to every possible affirmative defense they might assert in each and every jurisdiction, nor do we understand this Court's order to have asked us to do so. Nevertheless, based on the motions to dismiss that were previously filed in the *Summit County* case, we anticipate that Defendants may assert at least three affirmative defenses as a basis for barring public nuisance causes of action in a large number of jurisdictions: the statewide concern doctrine, the municipal cost recovery/free public services doctrine, and the economic loss doctrine. The PEC therefore anticipatorily responds.

None of these three doctrines should provide a basis for dismissing public nuisance causes of action in the vast majority of jurisdictions. Black letter principles underlying each of these three doctrines are largely inapplicable to public nuisance claims. Moreover, limitations placed on each doctrine in the jurisprudence of particular jurisdictions, summarized in the charts accompanying this brief, conclusively establish that these doctrines are inapplicable to public nuisance claims in most states.

### A.  Statewide Concern Doctrine

In their motions to dismiss the *Summit County* case, Defendants asserted that the "statewide concern" doctrine barred Plaintiffs' claims, including nuisance. They described the doctrine as a "fundamental principle" that "a municipality may not, in the regulation of local matters, infringe on matters of statewide concern." *See* R. & R., Doc #: 1025 at 98. In rejecting this argument under Ohio law, Magistrate Judge Ruiz recognized that the doctrine traditionally acts as a limitation only on a municipal government's regulatory authority, not its ability to vindicate its rights through litigation. *Id.* Moreover,

---

[11] Defendants' capacity to dream up potential affirmative defenses is virtually unlimited, as demonstrated by their collective assertion of well over 800 affirmative defenses (covering more than 150 distinct subjects) in their answers to the CT1 amended complaints.

especially in light of the express statutory authority conferred on municipalities by the legislature, including the police power to "protect the public health, safety, or morals, or the general welfare of the public," the Magistrate Judge declined to rule that "statewide concern doctrine bars locally-originated municipal or county lawsuits seeking to remedy alleged injuries within their borders." *Id.* at 100.[12]

In the majority of the jurisdictions with cases before this Court, state statutes expressly authorize municipal governments to bring actions to abate public nuisances within their boundaries. This express state authorization necessarily negates any argument that the statewide concern doctrine bars plaintiffs' nuisance actions. In other jurisdictions, case law has applied the doctrine solely as a constraint on municipal legislative power. Exhibit 4 identifies many of those jurisdictions in which one or the other of these bases precludes a statewide concern affirmative defense to a public nuisance action.[13] Taken together, authority in a substantial majority of the jurisdictions with cases before this Court clearly rejects this affirmative defense.

### B.    Municipal Cost Recovery/Free Public Services Doctrines

In the *Summit County* motions to dismiss, Defendants also argued that the municipal cost recovery doctrine (also sometimes referred to as the free public services doctrine) barred Plaintiffs' claims. That doctrine generally provides that "absent specific statutory authorization or damage to government-owned property, a county cannot recover the costs of carrying out public services from a *tortfeasor* whose conduct caused the need for the services." R. & R., Doc #: 1025 at 17 (quoting 32 A.L.R. 6th 261 (2008)). Magistrate Judge Ruiz properly rejected application of the doctrine for multiple reasons. First, following precedent from Ohio and elsewhere, he held that the doctrine did not

---

[12] Defendants did not object to the Magistrate Judge's ruling concerning the statewide concern doctrine and it was therefore adopted by the Court. *See* Op. & Order, Doc #: 1203 at 2.

[13] Once again, the PEC does not assert that the list of jurisdictions in Exhibit 4 is comprehensive. In particular, Plaintiffs did not attempt to capture every state statute authorizing public entities to bring nuisance actions.

apply to shield from liability "chronic wrongdoers engaged in a pattern of conduct that creates great public expense." *Id.* at 19. Second, as even the case that first articulated the doctrine, *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322 (9th Cir. 1983), recognized, the municipal cost recovery doctrine does not apply to nuisance abatement actions: "recovery by a governmental entity is allowed 'where the acts of a private party create a public nuisance which the government seeks to abate.'" *Id.* at 20 (quoting *Flagstaff*, 719 F.2d at 324).

At least a dozen jurisdictions have expressly rejected the application of the municipal cost recovery doctrine to cases such as those before this Court for either one or both of the reasons articulated by Magistrate Judge Ruiz. Other courts have simply held that the doctrine is not recognized in their jurisdiction. We have compiled a list of these rulings in Exhibit 5 hereto.

### C. Economic Loss Doctrine

Finally, in the *Summit County* motions, Defendants contended that, because plaintiffs only sought recovery for economic losses, their tort claims were barred by the economic loss doctrine. This Court had little difficulty rejecting the argument, recognizing that the doctrine was far more narrow than Defendants suggested:

> The economic loss rule recognizes that the risk of consequential economic loss is something that the parties can allocate by agreement when they enter into a contract. This allocation of risk is not possible where, as here, the harm alleged is caused by involuntary interactions between a tortfeasor and a plaintiff. Thus, courts have noted that in cases involving only economic loss, the rule "will bar the tort claim if the duty arose only by contract." *Campbell v. Krupp*, 961 N.E.2d 205, 211 (Ohio Ct. App. 2011). By contrast, "the economic loss rule does not apply—and the plaintiff who suffered only economic damages can proceed in tort—if the defendant breached a duty that did not arise solely from a contract." *Id.*; *see also Corporex*, 835 N.E.2d. at 705 ("When a duty in tort exists, a party may recover in tort. When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract."); *Ineos USA LLC v. Furmanite Am., Inc.*, 2014 WL 5803042, at *6 (Ohio Ct. App. Nov. 10, 2014) ("[W]here a tort claim alleges that a duty was breached independent of the contract, the economic loss rule does not apply.").

15

Op. & Order, Doc #: 1203 at 35 (quoting R. & R., Doc #: 1025 at 84).

Like Ohio, numerous other jurisdictions have similarly expressly held that the reach of the economic loss doctrine is narrowly circumscribed, limiting it only to particular tort causes of action or to tort claims between contracting parties. The PEC collects these rulings, from twenty-five jurisdictions, in Exhibit 6. Because the public nuisance claims in this MDL all arise from Defendants' alleged breaches of legal duties that do not arise from, and exist independent of, any contractual relationship, they are not barred by the economic loss doctrine.

## IV.  PRIOR RULINGS

### A.  Jurisdictions Where Opioid Nuisance Claims Have Been Upheld

In addition to this MDL, there are numerous proceedings in state courts across the country involving similar claims against the manufacturers and distributors of opioids. In a significant number of these cases, motions to dismiss have been considered and decided. In virtually every one of these cases, motions to dismiss public nuisance claims have been denied. This includes rulings upholding the viability of public nuisance claims in Alaska, Kentucky, New Hampshire, New York, Ohio, Puerto Rico, Washington,[14] and West Virginia.

We attach, as Exhibit 7 hereto, a chart listing each of these rulings of which we are aware. While some of these rulings are brief minute orders, others contain more substantive analysis. We here briefly present the reasoning from those more substantive rulings:

---

[14] Although a Washington state court judge upheld the State's nuisance claim arising from the opioid epidemic last year, a prior ruling from a federal court in Washington dismissed a similar claim brought by the City of Everett. *See* discussion, *supra,* p. 8. The PEC contends that the reasoning in the state court decision is both more persuasive and more predictive of how the Washington Supreme Court would rule on this question, both because it is a later decision and because it is a decision from a state court. *See In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016) (in the absence of controlling authority from a state's highest court, federal court must predict how that court would rule if presented with the issue).

In Alaska, the trial court denied defendants' motion to dismiss the public nuisance claim in *State v. Purdue Pharma L.P.*, No. 3AN-17-09966CI, 2018 WL 4468439 (Alaska Super. Ct. July 12, 2018). The court reasoned:

> The Alaska Supreme Court has indicated its agreement with federal common law defining a public nuisance as an unreasonable interference with a right common to the general public, such as a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience. The State alleges Purdue's conduct, as described in the complaint, has "been a substantial factor" in creating a public health crisis and state of emergency in Alaska. . . . The court finds the facts as alleged could reasonably be construed as demonstrating a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience and therefore an interference with a right common to the general public.
>
> The State has alleged facts sufficient to state a claim for public nuisance.

*Id.* at *4 (citations omitted).

In Kentucky, the Circuit Court rejected Endo's challenge to the Attorney General's public nuisance claim in *Commonwealth v. Endo Health Solutions Inc.*, No. 17-CI-1147, 2018 WL 3635765 (Ky. Cir. Ct. July 10, 2018). As the Court held:

> the Commonwealth has sufficiently pled its public nuisance claim. The Kentucky Supreme Court adopted the Restatement Second of Torts' definition of public nuisance. The opioid crisis in Kentucky has caused a public health crisis and crime crisis throughout the Commonwealth. The Commonwealth's pleadings have alleged a claim that Defendants have interfered with public health, Defendants have violated a Kentucky statute, and Defendants misrepresented the effects of its products to physicians in the Commonwealth. The Court holds that the Attorney General has clearly pled that Defendants' conduct allegedly violates a public right in the state and may proceed with the public nuisance claim.

*Id.* at *6.

In *State v. Purdue Pharma Inc.*, No. 217-2017-CV-00402, 2018 WL 4566129 (N.H. Super. Ct. Sep. 18, 2018), the New Hampshire Superior Court rejected Purdue's argument that state law limited public nuisance to claims involving real property and upheld the State's public nuisance claim:

In *Robie v. Lillis*, 112 N.H. 492, 495 (1972), the New Hampshire Supreme Court explained that "[a] public nuisance … is 'an unreasonable interference with a right common to the general public'" and "is *behavior* which unreasonably interferes with the health, safety, peace, comfort or convenience of the general community." (Quoting Restatement (Second) of Torts § 821 B(1)) (emphasis added). The use of "behavior" in this context suggests Purdue's position, *i.e.* that the origin of a public nuisance must arise from the use of real property, is a too narrow reading of the law. Indeed, numerous other jurisdictions that, like the New Hampshire Supreme Court, look to the Restatement (Second) of Torts to guide their analysis of public nuisance claims have expressly concluded that "[a]n action for public nuisance may lie even though neither the plaintiff nor the defendant acts in the exercise of private property rights."

*Id.* at *13 (other citations omitted).

In New York, a state trial court denied the manufacturer defendants' motion to dismiss public nuisance claims in *In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018). The court expressly held that plaintiffs had adequately pled a substantial interference with a public right:

A public or "common" nuisance is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency. It consists of conduct or omissions which offend, interfere with, or cause damage to the public in the exercise of rights common to all, in a manner such as to offend public morals, interfere with use by the public of a public place, or endanger or injure the property, health, safety or comfort of a considerable number of persons. . . . As for the manufacturer defendants' claim that the plaintiffs have failed to plead substantial interference with a public right, it suffices to note the defendants' failure to establish why public health is not a right common to the general public, nor why such continuing, deceptive conduct as alleged would not amount to interference; it can scarcely be disputed, moreover, that the conduct at the heart of this litigation, alleged to have created or contributed to a crisis of epidemic proportions, has affected "a considerable number of persons."

*Id.* at *21-22.

In the earliest of these opioids rulings, the Circuit Court of West Virginia denied AmerisourceBergen Drug Corporation's motion to dismiss a nuisance claim brought by the State. *State ex rel. Morrisey v. AmerisourceBergen Drug Co.*, No. 12-C-141, 2014 WL 12814021 (W.Va. Cir. Ct. Dec. 12, 2014). The West Virginia court concluded:

18

the Amended Complaint's allegations fit squarely within the definition of a public nuisance under West Virginia law. The State alleges Defendants "failed to do something," that is, they failed to provide effective controls against the diversion of controlled substances and failed to design and operate a system that discloses suspicious orders of controlled substances, failed to live up to industry standards – each one a failure that "injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public." . . . The Court concludes the State's public nuisance claim sufficiently alleges the safety and health and morals of the people of West Virginia has been compromised due to Defendants' alleged wrongful influx of addictive, controlled substances into West Virginia, thereby causing substantial injury to West Virginia citizens and taxpayers.

*Id.,* at *9-10.

Finally, this Court has already held that Summit County and Akron have adequately pled a viable public nuisance claim under Ohio law. The state Court of Common Pleas agreed with this conclusion in a case brought by the Ohio Attorney General:

This Court finds that *Cincinnati vs Beretta*, 95 Ohio St. 3d 416, is not substantially distinguishable and applies to the case at bar. In *Beretta*, supra, the Ohio Supreme Court adopted a broader definition of public nuisance. The court determined that the restatement of the law of torts (2nd) sets forth a broad definition of public nuisance allowing an action to be maintained "for injuries caused by a product if the facts establish that the design, manufacturing, marketing, or sale of the product unnecessarily interferes with a right common to the general public." Under the broad definition of public nuisance and the liberal pleading rules of the state of Ohio, this Court finds that the Plaintiff has adequately pled public nuisance under Ohio common law and the Ohio Product Liability Act.

*State, ex rel. Dewine v. Purdue Pharma L.P.*, No. 17 CI 261, 2018 WL 4080052, at *4 (Ohio C.P. Aug. 22, 2018).

### B.    Jurisdictions Where Opioid Nuisance Claims Have Been Dismissed

By contrast, the PEC is aware of only two decisions from jurisdictions – Connecticut and New Jersey – with cases before this Court in which a public nuisance

claim was dismissed by a state trial court; both are grounded in the particularities of state law and neither is authoritative concerning that law in any event.[15]

In Connecticut, the trial judge dismissed all the claims brought by Connecticut municipalities arising from the opioid epidemic, ruling that, under state law, the municipal plaintiffs lacked standing because their injuries were too "remote."  *See City of New Haven v. Purdue Pharma L.P.*, No. X07 HHD CV 176086134 S, 2019 WL 423990 (Conn. Super. Ct. Jan. 8, 2019). The ruling contains no discussion of the Connecticut law of public nuisance and was not specific to the plaintiffs' nuisance claims. Rather, the case is grounded entirely in Connecticut standing law and an idiosyncratic view of "remoteness" that is directly at odds with this Court's ruling denying Defendants' motion to dismiss in the *Summit County* case.  The decision is being appealed.  *See, e.g., City of Bridgeport  v. Purdue Pharma L.P.*, AC 42503 (Conn. App. Ct.)

The PEC submits that the *City of New Haven* case is wrongly decided and that, if presented with the issue, this Court should and would reach a different conclusion with respect to Connecticut cases in this MDL.  The  decision in *City of New Haven* is based on the Connecticut trial court's application of a Connecticut precedent, *Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 780 A.2d 98 (2001).  But *Ganim* does not compel the result the *City of New Haven* court reached.  In *Ganim,* the Connecticut Supreme Court found that the City of Bridgeport lacked standing to sue gun manufacturers and sellers because the City's injuries were too remote.  In reaching this result, the Connecticut Supreme Court adopted the framework used by the United States Supreme Court in *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992) for assessing the remoteness of a plaintiff's claim. Although the *Ganim* court's prescription of the *Holmes* factors as a prerequisite for

---

[15] As discussed above, a trial court in Delaware also dismissed an opioid nuisance claim *See State ex rel. Jennings v. Purdue Pharma L.P.*, No. N18C-01-223 MMJ CCLD, 2019 WL 446382, at *12-13 (Del. Super. Ct. Feb. 4, 2019). As noted above, however, no plaintiff in this MDL is located in Delaware.

standing in Connecticut is binding, its particular application of those factors to the gun case in *Ganim* does not require the same result in claims arising from the opioid epidemic. As the *Ganim* court itself recognized, "the question of remoteness must be determined on a case-by-case basis." 258 Conn. at 361 n.14.     The issue here, then, is how those factors apply in the context of the claims in the opioid litigation.

This Court has already ruled on that question:  in its ruling denying the motions to dismiss in the *Summit County* case, this Court applied the *Holmes* analysis to claims nearly identical to those asserted in the *City of New Haven* case, but came to the opposite conclusion.  *See* Op. & Order, Doc. 1203 at 7-10.  Indeed, this Court held that "none of the *Holmes* concerns are implicated in this case." *Id.* at 10.  Thus, this Court has already found that proper application of the *Holmes* analysis favors upholding a municipalities' claims arising from the opioid epidemic.  This Court's ruling is fully consistent with *Ganim* in that it applies the *Holmes* factors to test the plaintiff's standing, and more properly assesses those factors to reach the conclusion that the claims asserted by municipalities arising from the opioid epidemic are not too remote to proceed.

Other factors further demonstrate that the *City of New Haven* case is wrongly decided.  First, since *Ganim*, the Connecticut Supreme Court has fundamentally altered notions of proximate cause and remoteness under Connecticut law.  *See Sullivan v. Metro-N. Commuter R. Co.*, 292 Conn. 150, 167, 971 A.2d 676, 686-87 (2009) (abolishing the doctrine of superseding cause with respect to subsequent negligent acts); *see also Ruiz v. Victory Props., LLC*, 315 Conn. 320, 346, 107 A.3d 381, 298 (2015) (recognizing that intervening acts do not break the causal chain where it is foreseeable that "the direct cause of the harm might, not improbably but in the natural and ordinary course of things, follow [the original] act of negligence"); *Doe v. Saint Francis Hosp. & Med. Ctr.*, 309 Conn. 146, 179, 72 A.3d 929, 950 (2013) (an "actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where … the actor's own affirmative act has created or exposed the

21

other to a recognizable high degree of risk of harm through such misconduct").  The trial court in *City of New Haven* failed to take account of these more recent rulings and the extent to which they affect the *Holmes* analysis.

Second, the decision in *City of New Haven* is grounded throughout in the trial court's belief that the issues presented by the opioid epidemic are non-justiciable and beyond the competence of the Court.  *See, e.g.,* 2019 WL 423990, at *1-2, 8.  This Court, again, has reached a different conclusion on this subject in these cases.  For this reason, as well, the PEC believes that nuisance claims on behalf of Connecticut municipalities are viable in these MDL proceedings.

In New Jersey, the trial court dismissed the State's public nuisance claim on the ground that it was a "product liability action" subsumed by the state's Product Liability Act.  *See Grewal v. Purdue Pharma L.P.*, No. ESX-C-245-17, 2018 WL 4829660, at *16-18 (N.J. Super. Ch. Div. Oct. 02, 2018).  The court permitted the remainder of the State's claims to proceed.  *Id.* at *23-24.  Plaintiffs believe that the nuisance issue was wrongly decided in *Grewal*. As this Court recognized in its reliance on the Ohio *Beretta* decision in ruling on the Summit motions to dismiss, the facts of this case are far more analogous to the handgun cases, which New Jersey courts had held not to be subsumed by the state Product Liability Act, *see Camden Cty. Bd. Of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 253 (D.N.J. 2000), *aff'd,* 273 F.3d 536 (3d Cir. 2001); *James v. Arms Tech., Inc.,* 820 A.2d 27, 50 (N.J. App. Div. 2003), than to precedents involving lead paint, on which the *Grewal* court relied. Plaintiffs do not assert products liability claims; rather, they challenge Defendants' misconduct in their marketing and in their failure to control the distribution of their drugs.

Neither the Connecticut decision nor the New Jersey ruling is authoritative, as both are decisions at the trial court level.  *See In re Fair Fin. Co.*, 834 F.3d 651, 671 (when resolving issues of state law, federal court looks first to final decisions of state's highest

court; if there is no decision on point, court looks to intermediate appellate decisions and then to all relevant data, including jurisprudence from other states).

## CONCLUSION

Based on this review of the law of public nuisance in each of the 48 jurisdictions with cases currently pending in this MDL, the PEC urges the Court to conclude that there is a viable basis for proceeding with a public nuisance claim—whether statutory, common law, or both—in each and every jurisdiction.

Dated:  March 1, 2019

Respectfully Submitted,

/s/ Linda Singer
Linda Singer
**MOTLEY RICE LLC**
401 9TH Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com

*Member of the Plaintiffs' Executive Committee*

Paul T. Farrell, Jr.
**GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP**
419 11th Street
Huntington, West Virginia 25701
Tel: 800-479-0053 or 304-525-9115
Fax: 304-529-3284
paul@greeneketchum.com

Paul J. Hanly, Jr.
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th floor
New York, NY 10016
Tel: 212-784-6400
Fax: 212-213-5949
phanly@simmonsfirm.com

Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel:  843-216-9000
Fax:  843-216-9450
jrice@motleyrice.com

*Co-Leads, Plaintiffs' Executive Committee*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of March, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

/s/Linda Singer
Linda Singer
**MOTLEY RICE LLC**
401 9TH Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com

*Member of the Plaintiffs' Executive Committee*