# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | Case No. 1:17-MD-2804 |
| *APPLIES TO ALL CASES* | Hon. Dan A. Polster |

### PLAINTIFFS' REPLY TO CARDINAL HEALTH'S OBJECTION TO AMENDMENT TO DISCOVERY RULING NO. 14, PART I, REGARDING PRIVILEGE AND CLAW-BACK

### <u>INTRODUCTION</u>

On January 31, 2019, the Special Master issued Discovery Ruling No. 14, Part 1 ("Ruling"), finding in pertinent part that, with respect to a large set of documents Cardinal inadvertently produced in MDL 2804: Cardinal had previously waived privilege over certain documents ("Category Two" documents - produced to the DEA in 2008 and not attempted to be clawed-back in 2008 or in the years thereafter); and Cardinal did not waive privilege and could assert claw-back claims over certain other documents ("Category One" documents – consisting of claw-backs previously made by Cardinal from the DEA in 2008, and "Category Three" documents – which were never previously produced to the DEA).[1]  A separate portion of the Ruling also found in pertinent part that three documents produced by Cardinal (two substantially similar charts comparing Cardinal's suspicious order monitoring system ("SOM") over the years, and a cover e-mail relating to same) were not entitled to privileged treatment.[2]

On 2/6/2019 Cardinal filed an objection ("CAH Obj. #1") to the Ruling.[3]  However, on 2/8/2019 the Court issued an Order ("2/8/2019 Order"), finding that CAH Obj. #1 "submitted new evidence, case law, and arguments for the first time and not previously provided to Special

---

[1] Doc. #: 1321 at pp. 8-11.
[2] *Id*. at pp. 5-7.
[3] Doc. #: 1344.

Master Cohen", and ordered CAH Obj. #1 to be resubmitted to Special Master Cohen.[4]  The 2/8/2019 Order also warned that "going forward, the Court will strike any party's objection to a special master's ruling that raises, for the first time before the Court, new evidence or legal theories not first provided to the special master for consideration."[5]

On 2/20/2019, after resubmission of CAH Obj. #1, the Special Master issued Amended Discovery Ruling No. 14, Part 1 ("Amended Ruling"), which considered the new evidence and arguments, but affirmed the aforementioned Cardinal-related portions the Ruling.[6]  On 2/28/2019, Cardinal filed another objection ("CAH Obj. #2"), this time to the Amended Ruling.[7] However, in violation of the Court's 2/8/2019 Order, CAH Obj. #2 raises, for the first time, new evidence – covering critical issues involving both Cardinal-related aspects of the Amended Ruling – and as such, CAH Obj. #2 should be stricken in its entirety.  Cardinal again tries to bring forward new evidence, never previously provided to the Special Master or Plaintiffs, as alleged support for finding error with the Amended Ruling.   These repeated attempts to move the goal posts should not be permitted.

In arguing against waiver of privilege over its Category Two documents, Cardinal now claims, **for the first time ever**, that its 2008 claw-backs from the DEA (of 5 separate discs/DVDs containing inadvertently produced documents) involved only a "small number of documents" ("one for certain, 17 at most")[8].  *See* CAH Obj. #2 at pp. 5 & 11.  Cardinal's disregard for the Court's 2/8/2019 Order is motivated by its need to provide evidence that it

---

[4] Doc. #: 1349 at p. 1.

[5] *Id*. at p. 2.

[6] Doc. #: 1380 at pp. 2-7 & 14-18.

[7] Doc. #: 1397.

[8] Cardinal again here attempts to create error in Amended Discovery Ruling No. 14 by creating new facts which simply cannot be true.  It is an undisputed fact that CAH clawed back "5 separate discs/DVDs."  It absolutely defies common sense to suggest as Cardinal does here that 5 separate discs/DVDs only hold one to seventeen documents. This claim by Cardinal is absurd and not support by any evidence.  This is yet another attempt by Cardinal to create, add, or change the facts after a ruling is issued by Special Master Cohen for the benefit of its appeal.  If this Court does not enforce its 2/8/19 Order, we will likely continue to see this course of conduct happen again and again.

should not have been aware (in 2008) of an issue with inadvertent disclosures to the DEA.[9]

Separately, in arguing for privileged treatment (and against disclosure) of the two charts setting-forth its SOMS, Cardinal makes **another new major allegation** – now claiming, **for the first time ever**, that most of the information from the clawed-back charts at issue is contained in an earlier version of the charts (which Cardinal produced to the DEA and eventually to the PEC). *See* CAH Obj. #2 at p. 14.  Cardinal's motivation here is its need to contradict the evidence showing that Plaintiffs have substantial need for charts and are entitled to discover same pursuant to Fed.R.Civ.P. 26(b)(3)(A).[10]  Finally, as the Court can easily see from a brief review of this chart it is nothing more than a factual depiction of Cardinal's SOM systems which the Plaintiffs have been trying to lock into place from the beginning of this litigation. The Court ordered such would not likely be protected by attorney-client privilege during its November 21, 2018 hearing. Therefore, the Court should overrule Cardinal's objections to Amended Discovery Ruling No. 14.

I.     **CARDINAL'S WAIVER OF PRIVILEGE - "CATEGORY TWO" DOCUMENTS**

       A.     **Factual Background**

       The underlying dispute involves Cardinal's claw-back (in this litigation) of 2.8 million pages of documents (approximately 400,000 documents) which it previously produced to the DEA in 2007 and 2008.  Although Cardinal knew most of these documents were not privileged, it clawed-back all of them because the inadvertent productions from 2008 were so significant.

---

[9] As set-forth in Sections I.A. & I.B.2. *infra*, Cardinal should have been aware (in 2008) of an issue with inadvertent disclosure of privileged documents to DEA, as Cardinal previously admitted that in 2008 it had to claw-back from the DEA 5 separate discs/DVDs containing privileged documents.  And as such, Cardinal cannot carry its required burden of proving that it meets the elements of proving inadvertent disclosure.  *See* Fed.R.Evid. 502(b).

[10] As set-forth in Sections II.A. & I.B. *infra*, Plaintiffs have submitted substantial proof that they have a substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent – as required by Fed.R.Civ.P. 26(b)(3)(A).

As for the documents which it claims <u>actually</u> needed to be clawed-back, Cardinal itself grouped those documents into three categories as follows:

> "Category One" documents were produced to DEA in 2008, clawed back by Cardinal in 2008, but produced again in MDL 2804.

> "Category Two" documents were produced to DEA in 2008, were not clawed-back from DEA in 2008 (even though 5 DVDs of other documents were), were not clawed back from DEA thereafter, produced again in MDL 2804, and clawed-back in MDL 2804.

> "Category Three" documents were created and retained in 2008 solely as the work product of Cardinal's prior counsel, not produced to DEA in 2008, but inadvertently produced in MDL 2804.

Due to Cardinal's strategic decision to withhold facts surrounding its 2008 productions to and claw-backs from the DEA (which facts were specifically and repeatedly requested by Plaintiffs), there is still much unknown. This missing information is fatal to Cardinal providing the necessary "specific and detailed evidentiary material" to satisfy all three sub-elements of Fed. R. Evid. 502(b). Below is a listing of the more pertinent information relative to Cardinal's 2008 productions to and claw-backs from the DEA, along with notations of facts Cardinal has refused or failed to supply:

- Starting in late 2007 and through the first several months in 2008, Cardinal produced documents to the DEA in response to regulatory actions by the DEA regarding Cardinal's distribution of controlled substances.[11] ("2008 DEA production").

- Cardinal produced approximately 400,000 documents to the DEA in various rolling productions over an approximate 6-month period – however, Cardinal has refused or failed to provide any evidence regarding how many productions it made, the dates of each production, the number of documents contained with each production, etc.[12]

- Cardinal's pre-production privilege review of hard copy documents consisted merely of one level of review – and, regarding its hard copy document privilege review, Cardinal refused or failed to provide any evidence regarding: its methodology, when the review occurred, how much time was spent, the nature of the reviewers' experience, how it segregated privileged documents from non-privileged documents, whether <u>all</u> (versus a

---

[11] Declaration of Robert Tucker ¶¶ 3–4 (Ex A to CAH Obj. #2) ("Tucker Decl.").
[12] CAH Obj. #2, Doc. No. 1397 at p.4, fn. 8. *See also*, Tucker Decl.

sampling or some lesser set) of the hard copy documents were reviewed, and many other basic details.[13]

-   Cardinal's pre-production privilege reviews were very different for hard copy documents (1 review) versus electronically stored documents (4 reviews) – and, Cardinal has refused or failed to provide any evidence regarding how many of the documents reviewed were hard copy versus electronically stored, whether the hard copy documents were Category One, Two or Three documents, whether they were a mixture, etc.[14]

-   After its privilege review, Cardinal was still concerned that it was inadvertently producing privileged information to the DEA in 2008, and suggested it would conduct further reviews to discover same.  Cardinal fails to provide any evidence about what if any subsequent steps it took to re-review its productions, re-analyze its procedures, when if at all such work was done, who and how many attorneys were involved in same, what was discovered, etc.[15]

-   After its privilege review, Cardinal clawed-back from the DEA five (5) separate discs containing privileged documents (which it then produced in MDL 2804).  Cardinal failed to provide any evidence regarding how many different rolling productions this involved, how many claw-back requests it provided to the DEA, how many documents were contained on these 5 discs, the exact number of clawed-back documents, the dates when the claw-backs were made, whether privilege logs were provided as required by Fed. R. Evid. 502(b)(3), whether it made additional claw-backs from the DEA (which it did not produce in MDL 2804), whether the DEA agreed to the claw-backs or still has the documents, etc.[16]

-   Thousands of documents were inadvertently produced by Cardinal to the DEA in 2008 – however, other than a vague statement that 5 discs containing privileged documents were clawed-back from the DEA in 2008, Cardinal has failed or refused to provide any other evidence, including: copies of any claw-back letters, the number and dates of claw-back attempts, how many and which documents fall into each of the various categories identified by Cardinal, etc., and Cardinal never confirms that it made no other claw-backs from the DEA (other than the ones involving the 5 discs of material).[17]

---

[13] Tucker Decl. ¶ 17 ("Hard copy documents were reviewed by attorneys in BakerHostetler's New York office. Documents were reviewed for attorney-client privileged communications and attorney work product.").

[14] *Id*. at ¶¶ 17-18.

[15] *Id*. at ¶ 19 ("Because of the volume of records that have been produced and that will continue to be produced and the speed with which Cardinal Health is attempting to produce them, Cardinal Health requests and expects that DEA will return to Cardinal Health, upon request, any documents that we later discover to be privileged or otherwise protected and to have been inadvertently produced.).

[16] *Id*. at ¶ 11 ("within one of the boxes believed to contain media produced to the DEA in 2008 were five discs containing privileged documents that were inadvertently produced to the DEA in 2008, and later clawed back in that matter").

[17] *Id*. at ¶¶ 11-15.  *See also*, Ex. F attached hereto (privilege log of Cardinal's 2008 DEA production documents specifically clawed-back to date in MDL 2804 – which includes over

Cardinal has had months to provide this information. However, because it is treating vagueness as its strategic tool, Cardinal has left the above (and other) important questions unanswered. As outlined below, the use of this tactic should be held and weighed against Cardinal.

**B.    Cardinal Failed to Meet Its Burden of Proving All Three Required Sub-Elements of Fed. R. Evid. 502(b).**

"The party claiming an attorney-client privilege not only bears the burden of proving that the privilege applies, but **must also show that the privilege has not been waived**." *Davis v. Drake*, 2014 WL 5795554, at *4 (N.D. Ohio Nov. 6, 2014) (emphasis added).[18] Pursuant to Fed. R. Evid. 502(b), a party claiming inadvertent disclosure not resulting in privilege waiver must prove that: (1) "the disclosure is inadvertent"; (2) it "took reasonable steps to prevent disclosure"; and (3) it "promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)".[19]

"Under Rule 502(b), an unintentional disclosure constitutes a waiver **unless all three sub-elements are met**." *Irth Solutions, LLC v. Windstream Communications LLC*, No. 2:16-cv-219, 2017 WL 3276021, at *7 (S.D. Ohio Aug. 2, 2017) (emphasis added).[20] "[A]pplication of the privilege will be rejected where the only basis for the claim is an affidavit containing

---

2,000 claw-back claims – less than 100 of which fit the definition of "Category Three" documents).

[18] *See also*, *Liang v. AWG Remarketing, Inc.*, 2015 WL 8958884, *5 (S.D. Ohio 2015) ("As the party seeking protection, [Defendant] bears the burden of establishing the existence of the attorney-client privilege as well as the non-waiver of the privilege.") (Citations omitted); *In re OM Securities Litigation*, 226 F.R.D. 579, 590 (N.D. Ohio 2005) ("The Defendants bear the burden of establishing both the existence of the privilege and the non-waiver of the privilege.").

[19] Fed. R. Evid. 502(b)(1)-(3). CMO 2 (Doc. #: 441) does <u>not</u> apply to Cardinal's <u>2008</u> disclosures.

[20] *See also*, *Barnett v. Hospital*, No. 5:11 CV 399, 2012 WL 12886505, at *2 (N.D. Ohio Apr. 17, 2012) ("Failure to establish all three elements results in a conclusion of waiver.").

conclusory statements."[21]  Rather the proponent of the privilege must submit "**specific and detailed evidentiary material**" such as "affidavits made on personal knowledge, depositions, or answers to interrogatories."[22]  "The risk of non-persuasion arising from a failure to establish facts supporting a claim of privilege falls upon the party asserting it."[23]

These legal standards (e.g., burdens of proof, requirements for specific and detailed evidentiary materials, and risk of failure to establish facts – all falling upon Cardinal as the proponent of the privilege) are well established and have not been challenged by Cardinal. Moreover, these standards are critical in the analysis of Cardinal's claw-back claim at issue. This is because Cardinal has repeatedly attempted to use vagueness, conclusory statements, and selective fact-telling to its advantage.  The applicable rules and jurisprudence require more, and do not allow for these tactics to be employed, and Cardinal's submissions (particularly their lack of required specifics and details) should be viewed through the lens of these legal standards.

Since Cardinal unquestionably produced the Category Two documents to the DEA in 2008, it will be found to have waived any claim of privilege if it does not carry its burden of proving that the 2008 production of these documents was inadvertent.  The Sixth Circuit has squarely decided this issue, finding that voluntary production or disclosure of documents to a government agency constitutes a complete waiver of any privilege – including for subsequent civil litigation with other parties.  *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002).  Thus, Cardinal has the burden of proving, with specific and detailed evidence, that its 2008 DEA production of Category Two documents meets all elements of Fed. R. Evid. 502(b).

---

[21] *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir.2009) (quoting *U.S. v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006) (emphasis added).
[22] *Id.* at 381-382.
[23] *Lewis v. U.S.*, No. 02–2958B, 2005 WL 1926655 (W.D.Tenn. June 20, 2005) (quoting *Amway Corp. v. Proctor & Gamble Co.*, 2001 WL 1818698, at *4 (W.D. Mich. Apr. 3, 2001)).

Cardinal has failed to show that it "took reasonable steps to prevent disclosure." Fed.R.Evid. 502(b)(2).  Cardinal has also failed to show that it "promptly took reasonable steps to rectify the error." Fed.R.Evid. 502(b)(3).  <u>Either</u> of these failures preclude Cardinal from invoking the protections of Rule 502(b) to avoid a finding that it has waived any privilege that might have attached to the Category Two documents.

> 1. <u>Cardinal has failed to prove that it took reasonable steps to prevent disclosure relative to its 2008 DEA production of Category Two *hard copy* documents</u>.

Cardinal must also prove that it "took reasonable steps to prevent disclosure".  See Fed. R. Evid. 502(b)(2).  Consequently, Cardinal needs to set forth specific and detailed proof, through sworn affidavits or other similar evidence, relative to the steps taken to prevent disclosure. *Williams v. District of Columbia*, 806 F. Supp. 2d 44, 48-49 (D.D.C. 2011) (finding waiver because "most importantly, the [party claiming inadvertent production] has utterly failed to explain its 'methodology' for review and production. … [as it] does not indicate when its review occurred, how much time it allocated to the review of documents, the nature of the reviewer's experience, the extent of the alleged supervision of an attorney, whether it conducted multiple rounds of review, how it segregated privileged documents from non-privileged documents, and other basic details of the review process.").[24]

The evidence submitted by Cardinal as to the methodology for review and production of Category Two <u>hard copy</u> documents is scant and does not carry the burden required for proving

---

[24] *See also*, *Peterson v. Bernardi*, 262 F.R.D. 424, 429 (D.N.J.2009) (finding waiver where the privilege holder set-forth that he "engaged in a privilege review", but "does not state when his review occurred, how much time he took to review the documents, what documents were reviewed, and other basic details of the review process."); *United States ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11–cv–58, 2014 WL 5767042, *7 (S.D. Ga. Nov. 5, 2014) (finding waiver where affidavit was generalized, as "the mere statement of a privilege review is insufficient to establish that Defendants took 'reasonable steps to prevent an inadvertent production.'").

that reasonable steps were taken to prevent disclosure.[25]  Moreover, Cardinal's hard copy review was clearly insufficient - as illustrated by a comparison to what Cardinal has set-forth relative to its review of electronically stored information.[26]  Regarding its Category Two hard copy review, Cardinal "utterly failed" to prove or even identify "when its review occurred, how much time it allocated to the review of documents, the nature of the reviewer's experience, the extent of the alleged supervision of an attorney, whether it conducted multiple rounds of review, how it segregated privileged documents from non-privileged documents, and other basic details of the review process", and thus has waived privilege.[27]

> 2.  <u>Cardinal has failed to prove that it took reasonable steps to rectify the error</u>.

Cardinal must <u>also</u> prove that it "promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)" relative to its 2008 DEA production.  *See* Fed. R. Evid. 502(b)(3).  While "the rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake", it "**does require the producing party to follow up on <u>any</u> obvious indications that a protected communication or information has been produced inadvertently.**"[28]  "As a result, once a party is on notice that 'something [i]s amiss with its document production and privilege review [,]' that party must "promptly re-assess its procedures and re-check its production."  *D'Onofrio v. Borough of*

---

[25] Tucker Decl. ¶ 17 ("Hard copy documents were reviewed by attorneys in BakerHostetler's New York office. Documents were reviewed for attorney-client privileged communications and attorney work product.").

[26] Tucker Decl. ¶ 18 ("Electronically-stored information was reviewed at four levels.  First-level review was conducted by a team of contract review attorneys at Lumen Legal, acting at the direction of BakerHostetler. Second-, third-, and fourth-level review was conducted by BakerHostetler attorneys, with assistance from attorneys from another law firm.").

[27] *Williams*, 806 F. Supp. 2d at 48-49.

[28] Fed. R. Evid. 502, Advisory Committee Notes (Nov. 28, 2007) cmt. b.  (Emphasis added).

*Seaside Park*, No. 09–6220, 2012 WL 1949854, at *15 (D.N.J. May 30, 2012) (citing *U.S. v. Sensient Colors, Inc.*, 2009 WL 2905474, at *5 (D.N.J. 2009).[29]

In analyzing Cardinal's burden of proof, it is again important to note that Cardinal has either failed or refused to provide specific details regarding its claim of inadvertent production. Importantly, while we know there were thousands of documents which Cardinal inadvertently produced to the DEA in 2008, and while we know that Cardinal clawed-back from the DEA five (5) discs containing privilege documents, Cardinal's evidence stops at this point.[30]  This lack of specificity works against Cardinal, and further supports a finding that its inadvertent disclosures to and claw-backs from the DEA in 2008 were numerous and significant.[31]

Relative to its 2008 DEA production, Cardinal was aware, <u>at that time</u>, that it had significant inadvertent production issues.  First and foremost, Cardinal claims that during its production in 2008, it clawed-back "five <u>discs</u> containing privileged documents that were inadvertently produced to the DEA".[32]  Further, Cardinal's lack of evidence or specificity supports a finding that the claw-backs occurred on various occasions and involved significant numbers of documents.  Either way, this was an "obvious indication" to Cardinal in 2008 that "something was amiss with its document production and privilege review" requiring it to

---

[29] *See also*, *Preferred Care Partners Holding Crop v. Humana, Inc.*, 258 F.R.D. 684, 700 (S.D.Fla. 2009) ("In light of the fact that Humana was aware that it inadvertently produced a number of documents which it believed to contain privileged information, Humana had an obligation ... to ensure that no additional privileged documents were divulged.").

[30] *See* Ex. F attached hereto (privilege log of Cardinal's 2008 DEA production documents specifically clawed-back to date in MDL 2804 – which includes over 2,000 claw-back claims – less than 100 of which fit the definition of "Category Three" documents).

[31] *Schaengold*, 2014 WL 5767042, *6 ("Of over 30,000 documents produced, Defendants' current motion asks the Court to find that only one document was privileged.  However, the Court notes that it cannot say for certain the number of potentially privileged documents that were actually disclosed and, unsurprisingly, Defendants do not reveal just how many potentially privileged documents they suspect might have been disclosed.  As such, the Court will not assume that only one potentially privileged document was disclosed.").

[32] Tucker Decl. ¶ 11.  (Emphasis added).

"promptly re-assess its procedures and re-check its production."[33]  Second, Cardinal's 2008 production cover letters stated obvious issues and concerns regarding inadvertent disclosures to the DEA, and specifically contemplated following-up to notify the DEA of same.[34]  Accordingly, Cardinal "should have taken prompt and diligent steps to re-assess its document production", and in failing to do so, it did not satisfy its burden under Rule 502(b)(3) and waived privilege.[35]

In its 2/28/2019 Objection, Cardinal makes another new allegation – now claiming, **for the first time ever**, that its 2008 claw-backs from the DEA involved only a "small number of documents" ("one for certain, 17 at most").  *See* CAH Obj. #2 at pp. 5 & 11.  This new assertion is an attempt by Cardinal to "fill in the gap" that exists for its burden of proving non-waiver, and it should be rejected (and CAH Obj. #2 stricken) for several reasons.

First and foremost, Cardinal's new allegation is in direct violation of this Court's 2/8/2019 Order [Doc. #: 1349] ("2/8/2019 Order"), which stated in pertinent part that: "going forward, the Court will strike any party's objection to a special master's ruling that raises, for the first time before the Court, new evidence or legal theories not first provided to the special master for consideration."  *See* 2/8/2019 Order at p. 2.  Second, on multiple prior occasions, Cardinal was requested (and even warned) to come forth with the specific facts relative to its claw-back claims,[36]  and it should not be allowed to now come forth with "after the fact" allegations.[37]

---

[33] Fed. R. Evid. 502, Advisory Committee Notes (Nov. 28, 2007) cmt. b.  *See also, Sensient*, 2009 WL 2905474, at *5.

[34] Tucker Decl. ¶ 19 ("Cardinal Health requests and expects that DEA will return to Cardinal Health, upon request, any documents that we later discover to be privileged or otherwise protected and to have been inadvertently produced.).

[35] *Sensient*, 2009 WL 2905474, at *5. (After failing to take prompt and diligent steps to re-assess its document production and privilege issues within approximately 2 months of learning of its first set of inadvertent disclosures, the court held that "plaintiff did not take reasonable precautions to rectify its error. Therefore, since plaintiff did not satisfy its burden under Rule 502(b)(3), it waived its privilege and work product [claims]").

[36] *See* Ex. B to CAH Obj. #1 (Doc. No. 1344) (incorporated by reference) (submitted *in camera*) - 9/29/2018 Letter from M. Fuller at fn. 1. *See also,* Ex. D to CAH Obj. #1 (submitted *in camera*) - 1/26/2019 Letter from M. Fuller at pp. 2-6 & fns. 21 & 33.

Third, Cardinal has not provided any evidence supporting this brand-new bald assertion (that its 2008 claw-backs involved only a small number of documents).[38]  This is particularly problematic because Cardinal has had about half a year to provide such evidence, and has refused or failed to do so.  Finally, it defies logic that Cardinal would claw-back 5 separate discs/DVDs (which would contain over 400,000 pages of documents) when it only had to claw-back "a handful" of documents.[39]

### C.    Special Master Cohen's Findings Are Supported by the Law and the Facts (or Cardinal's Failure to Establish Required Facts).

Cardinal alleges that Special Master Cohen's Amended Ruling is "mistaken in three respects" as follows: 1) "insofar as he cites these **three** alleged failures to prevent disclosure as the basis for his finding of waiver, he considered two factors that are irrelevant", 2)  "the Special Master misapplied *D'Onofrio v. Borough of Seaside Park*, 2012 WL 1949854 (D.N.J. May 30, 2012)", and 3) "the Amended Ruling mistakenly counts against Cardinal Health the fact that its settlement with DEA in 2008 allowed the agency to keep and use the documents produced by the company".[40]  Cardinal's arguments fail for several reasons.

1.    The Amended Ruling was properly based on the finding that Cardinal failed to carry its burden of proving all elements of Fed. R. Evid. 502(b) relative to its 2008 DEA production and failure to follow-up at the time.

---

[37] *Columbia Gas Transmission Corp. v. Rockwell Enterprises, Inc.*, No. 1:06 CV 2989, 2007 WL 3353565, at *3 (N.D. Ohio Nov. 9, 2007) (New evidence not allowed and Rule 72 objection overruled.  "Although the affidavit purportedly bolsters [Defendant's] claim that a certain sub-set of the documents at issue are privileged, [Defendant] did not see fit to provide the affidavit, or the information contained therein, to Magistrate [], despite the fact that it had at least two opportunities to do so.").

[38] *See* CAH Obj. #2 at p. 5.  Cardinal has submitted no actual <u>evidence</u>.  There are no quantities or specifics discussed in the Tucker Declaration or anywhere else.  No prior claw-back letters or 2008 privilege logs have been provided.  In fact, there are no quantities or facts set-forth or even alleged in Cardinal's prior briefing on this matter.

[39] *See* Ex. E to CAH Obj. #1 (submitted *in camera*) - 1/14/2019 Cardinal letter brief at Attachment 1 thereto (4/25/2008 cover letter for Cardinal production to DEA – enclosing 4 discs containing 346,000+ pages of documents).

[40] *Id*. at pp. 8-12.

Relative to waiver of privilege over Category Two documents, the basis for the Amended Ruling was that Cardinal failed to follow-up (in 2008 or at any time thereafter) on an obvious indication that it had inadvertently produced privileged documents – and thus failed to carry its burden of proving all three elements of Fed. R. Evid. 502(b).[41]  The bases for this finding focus upon Cardinal's failure or refusal to provide detailed evidence, and Cardinal's 2008 claw-backs from the DEA of 5 separate discs containing privileged documents.[42]  The Amended Ruling only refers to Cardinal's three failures of preventing disclosure as a matter of overall context, not as the basis for the decision.  Nonetheless, the Amended Ruling is factually accurate when it mentions Cardinal's three failures, and Plaintiffs still maintain that all three failures are relevant.[43]

### 2. Special Master Cohen Properly Applied the Applicable Caselaw/Standard.

Cardinal alleges that "in concluding that Cardinal Health should have discovered the inadvertent production of privileged documents in 2008, the Special Master misapplied *D'Onofrio v. Borough of Seaside Park*, 2012 WL 1949854 (D.N.J. May 30, 2012)".[44]  This claim

---

[41] Amended Ruling at pp. 16-18 (outlining reasons and ending with: "The Special Master concludes Cardinal has failed to show it met all three prongs of Rule 502(b).  Accordingly, Cardinal has waived privilege over all of the Category Two documents.").  *See also*, Fed. R. Evid. 502(b), including Advisory Committee Notes (Nov. 28, 2007).

[42] *Id*. at p. 17, including fns. 16 & 17.

[43] The first two failures (in 2008) are addressed in Sections I.A. and I.B. *supra* (and incorporated by reference).  As for its 2018 failure, although CMO #2, ¶53 provides maximum protection allowed under Fed. R. Evid. 502(b), "where there is a protective order with a clawback provision, inadvertent production of a document does not constitute waiver **unless the document production process itself was 'completely reckless'**" – i.e., when a party "did not appear to have conducted any privilege review of the documents it ultimately produced".  *Irth Solutions,* 2017 WL 3276021 at *7 (emphasis supplied).  Also, CMO #1, ¶9(k)(ii) required Cardinal to conduct a privilege review and produce privilege logs (for the type of documents at issue) on a rolling basis.  However, Cardinal's 2008 DEA production were "produced in this MDL by Cardinal Health without further review for privilege or relevance …"  *See* Tucker Decl. ¶ 8.  Finally, Cardinal's 2018 production process was so reckless, it produced 5 discs of media even though their casing was marked as "DVDs containing Priv Docs - Removed & Rebranded on Profile DVDs".  *Id*. at ¶ 11.

[44] CAH Obj. #2 at p. 9.

misrepresents and/or misunderstands the citation to the *D'Onofrio* case.   Moreover, Cardinal's argument ignores Fed. R. Evid. 502(b), the facts (and Cardinal's failure to provide details and specifics) relative to the underlying issue, and the other cases cited to by the Special Master.

The Amended Ruling's citation to the *D'Onofrio* case was <u>not</u> (as Cardinal implies) made to draw direct analogies between the precise facts of the matter at hand.  Rather, Special Master Cohen referenced the *D'Onofrio* case (as well as ample other legal support) to set-forth a well-accepted standard relative to Fed. R. Evid. 502(b) – that once a producing party is "on notice that something [i]s amiss with its document production and privilege review[,] then that party has an obligation to promptly re-assess its procedures and re-check its production."[45]  Special Master Cohen then properly analyzed the facts of the instant matter, including (among other things) that Cardinal's 2008 claw-backs from the DEA involved five (5) <u>discs</u> of privileged documents, and determined that Cardinal needed to follow-up on this obvious indication.  *See* Amended Ruling at pp. 16-17.

As for the facts, Cardinal attempts to now claim (in its briefing) that clawing-back 5 discs containing privilege documents occurred in one fell swoop - equating only to one mistake or "one strike".[46]  However, as outlined in Sections I.A. & I.B.2. *supra*, the facts do not support this claim, Cardinal's failure or refusal to provide the required specifics and details do not allow this claim to be made, and the Special Master reasonably did not agree with Cardinal when making his factual findings.  Considering that the facts (or lack of specifics from Cardinal) indicate that many inadvertent disclosures were made to the DEA in 2008, and multiple significant claw-backs were asserted by Cardinal to the DEA in 2008, Cardinal knew or should have known of its

---

[45] Amended Ruling at p. 9.  In fact, the *D'Onofrio* quote at issue is referenced by the Amended Ruling (at p. 9) as originating from *Sensient*, 2009 WL 2905474, at *5.  Moreover, this standard is wholly consistent with Fed. R. Evid. 502(b) which "does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently."  *See* Fed. R. Evid. 502(b), Advisory Committee Notes (Nov. 28, 2007).

[46] CAH Obj. #2 at p. 11.

production problems and should have followed-up.  This is consistent with Fed. R. Evid. 502(b), the *D'Onofrio* case, as well as the *Sensient* and *Preferred Care* cases cited to by Special Master Cohen.[47]

3.    Special Master Cohen Necessarily and Accurately Addressed Cardinal's 2008 DEA Settlement.

Cardinal claims "the Amended Ruling mistakenly counts against Cardinal Health the fact that its settlement with DEA in 2008 allowed the agency to keep and use the documents produced by the company".[48]  The irony here is that the Special Master addressed the 2008 settlement with the DEA because of a misleading and/or false argument <u>raised by Cardinal</u>.  Specifically, Cardinal claimed that the 2008 DEA settlement ended all matters between the parties, and as such, it "never had a need to make any further determinations regarding privilege".  *See* CAH Obj. #1 at p. 6.  As set forth below, Cardinal's argument was contrary to the facts surrounding the DEA settlement, and Special Master Cohen necessarily and accurately addressed same.

Cardinal's 10/2/2008 settlement with the DEA ("DEA settlement") was not some kind of tort settlement where the parties agreed to go their separate ways and release all present and future claims.  Indeed, the settlement agreement itself dictated that Cardinal would have <u>several extra</u> ongoing obligations to the DEA – in some instances for years.[49]  Moreover, and maybe most notably, the settlement ***reserved the DEA's right to seek to introduce evidence of***

---

[47] Amended Ruling at pp. 9 & 17.  *See also*, *Sensient*, 2009 WL 2905474, at *5 (finding waiver occurred by not meeting requirement of Fed. R. Evid. 502(b)(3) because party failed to reassess its document production and privilege review after first inadvertent disclosure - 53 of 10,000 documents); *Preferred Care*, 258 F.R.D. 684, 690 & 699-700 (S.D.Fla. 2009) (finding waiver occurred by not meeting requirement of Fed. R. Evid. 502(b)(3) because party failed to reassess its document production and privilege review after learning, over the span of 5 weeks, that 4 documents (from 10,000 pages produced) were inadvertently produced).

[48] CAH Obj. #2 at p. 12.

[49] *See* Ex. B attached hereto – 10/2/2008 Cardinal/DEA Settlement, at pp. 3-6, ¶¶ 1.a - 1.i (e.g. providing reports directly to DEA HQ for 5 years, conducing a retrospective analysis of controlled substance distributions, etc.).

***Cardinal's pre-settlement conduct in any other administrative proceeding against Cardinal for non-covered conduct***.[50]   Additionally, this reservation covered all government agencies, allowing the DOJ, any State attorney general, etc. to initiate any proceeding/action against Cardinal, <u>and</u> allowed the DEA to cooperate with any such agency.[51]   Contrary to its allegation, Cardinal had many reasons to continue privilege review efforts after the settlement.

## II.   CHARTS CLAWED BACK BY CARDINAL

### A.   Factual Background

The pertinent clawed-back documents at issue are two Cardinal-produced charts containing simple and detailed facts regarding its SOMS – over three distinct timeframes – Nov. 2005 to Dec. 2007, Dec. 2007 to Dec. 2011, and Dec. 2011 thereafter.   These clawed-back documents outline (over these timeframes) various sets of facts about Cardinal's SOMS – the central issue in this litigation - including but not limited to: personnel resources, suspicious order monitoring system and KYC (know your customer), anti-diversion organizational structure, and training.[52]   Importantly, as detailed further below, the information provided in the clawed-back documents is significantly different (and much more detailed and comprehensive) than the responses (or non-responses) provided in Cardinal's discovery responses and depositions. Consequently, the Amended Ruling determined that although the charts constitute work product, Plaintiffs met their burden of demonstrating a substantial need for the clawed-back charts and are entitled to same.[53]

In CAH Obj. #2, Cardinal makes <u>another</u> new major allegation – now claiming, **for the first time ever**, that two-thirds of the information from the charts at issue is contained in an

---

[50] *See* Ex. B at pp. 7-8, ¶ 4.
[51] *Id*.
[52] *See* Ex. F to CAH Obj. #1 (submitted *in camera*) - 12/8/2018 PEC letter brief at Attachments 2 & 3 thereto (the 2 Charts).
[53] Amended Ruling at p. 5-6.

earlier version of the charts ("the 2-column chart") which Cardinal produced to the DEA and eventually to the PEC.  *See* CAH Obj. #2 at p. 14.  This brand-new allegation from Cardinal is in direct violation of the 2/8/2019 Order,[54] and as such, Cardinal's objection should be stricken.  It can separately be rejected consistent with jurisprudence disallowing such after the fact submissions.[55]  Cardinal has also not supported this new evidence and assertion (providing only conclusory statements).  *See* CAH Obj. #2 at p. 14.

Aside from these procedural violations, Cardinal's new argument should also be rejected for substantive reasons.  First, by Cardinal's own (bald) assertion, the 2-column chart "compared only the November 2005–December 2007 period with the post-December 1, 2007–pre-2012 period."  *See* CAH Obj. #2 at p. 14.  Thus, Plaintiffs still have a substantial need for information in the clawed-back charts that is not provided in the 2-column chart.  Finally, as outlined in Section II.D. *infra*, since Cardinal made use of the 2-column chart in the company's discussions with the DEA, it has waived any privilege over the clawed-back charts pursuant to Fed. R. Evid. 502(a).

### B.    The Charts Are Not Protected from Disclosure

Fed.R.Civ.P. 26(b)(3)(A) addresses obtaining documents (from an opposing party) which are otherwise legitimately subject to protection under the work product doctrine.  Work product documents prepared in anticipation or in the course of litigation are still subject to discovery if certain requirements can be met by the party seeking their production.  These requirements are set-forth in Fed.R.Civ.P. 26(b)(3)(A), which states:

---

[54] *See* 2/8/2019 Order at p. 2 ("[G]oing forward, the Court will strike any party's objection to a special master's ruling that raises, for the first time before the Court, new evidence or legal theories not first provided to the special master for consideration.").

[55] *Columbia Gas*, 2007 WL 3353565, at *3 (N.D. Ohio Nov. 9, 2007) (New evidence not allowed and Rule 72 objection overruled.  "Although the affidavit purportedly bolsters [Defendant's] claim that a certain sub-set of the documents at issue are privileged, [Defendant] did not see fit to provide the affidavit, or the information contained therein, to Magistrate [], despite the fact that it had at least two opportunities to do so.").

Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4) [involving experts], those materials may be discovered if:

> (i) they are otherwise discoverable under Rule 26(b)(1) [i.e., are relevant]; and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Consistent with Fed.R.Civ.P. 26(b)(3)(A), the 6th Circuit allows an opposing party to discover "fact" work product "upon a showing of substantial need and inability to otherwise obtain without material hardship."  *Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. June 10, 2002) (citing *Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339–40 (6th Cir.1988)).

Cardinal does not contest that the charts at issue are relevant, and thus, satisfaction of Fed.R.Civ.P. 26(b)(3)(A)(i) is undisputed.  Rather, Cardinal argues that "[t]he charts do not contain unique information about Cardinal Health's SOM system."[56]  However, Plaintiffs have shown that the charts are "sufficiently unique and important", and that neither the equivalent of the charts nor all of the information in the charts can be obtained "without undue hardship".[57]  Plaintiffs outline below some key points which have been proven:

> 1) The charts at issue outline factual details of Cardinal's suspicious order monitoring system (SOMS) – and these facts are at the heart of the litigation – so much so that the Court ordered all defendants (including Cardinal) to "respond **fully** to all discovery seeking information regarding their Suspicious Order Monitoring Systems (SOMS)" and for defendants to produce "discovery of **all details** of their SOMS".[58]

---

[56] CAH Obj. #1 at p. 13.

[57] *See* 12/9/2018 PEC letter brief at pp. 2-3.  *See also*, *Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328, 333–34 (N.D. Ohio 2014) (A party seeking discovery can show the documents are "sufficiently unique and important, as compared to other possible sources of the same information, to justify overriding work product protection."); Fed.R.Civ.P. 26(b)(3)(A)(ii).

[58] *See* 11/21/2018 Order (Doc No. 1147), at p. 1, ¶1 (emphasis added).  *See also*, 12/6/2018 Order (Doc. No. 1169), at p. 2 (applying the order to all defendants).

2) Even after the 11/21/2018 Order from Judge Polster, Cardinal's 11/30/2018 discovery responses (which should have provided <u>all details</u> of their SOMS over the years) do not come close to providing the SOMS facts set-forth in the charts.[59]

3) Plaintiffs have been forced to bring numerous motions with Special Master Cohen as part of ongoing and extensive efforts to obtain from other sources the type of information contained within the charts, and as such, the Special Master is keenly aware of not only the need for the facts from the charts, but also the efforts and inability of Plaintiffs to obtain their substantial equivalent.[60]

4) Cardinal's 30(b)(6) and other testimony on this topic significantly lacked much of the information contained within the charts.  Cardinal's 30(b)(6) witness testified, with respect to Cardinal's SOM-related actions during a critical 2006-2007 time period, that Cardinal "does not have present knowledge about the actions and timing of the actions that were taken during that period presently."[61]  This is especially important, as this "unknown" factual information is detailed in the charts.

Even Cardinal's recent 1/24/2019 written response to <u>supplement</u> its 30(b)(6) testimony does <u>not</u> contain nearly the details outlined in the charts.[62]  This is particularly noteworthy because it further proves that: a) Plaintiffs' hardship has resulted in having to agree to written 30(b)(6) responses in order to <u>try</u> and obtain the information, b) the factual information contained in the charts is sufficiently unique and important (such that it cannot even be obtained through supplemental written discovery responses), c) after many months, Plaintiffs <u>still</u> cannot obtain the equivalent of the information provided in the charts, and d) whatever arguments Cardinal make relative to information which may be obtained (from past or potential future depositions) of Cardinal employees, it is a fact that Cardinal's recent written 30(b)(6) responses – which should be more thorough than (or at least as comprehensive as) any employees'

---

[59] *See* Ex. F to CAH Obj. #1 (incorporated by reference) (submitted *in camera*) - 12/8/2018 PEC letter brief at pp. 2-3, and Attachment 5 thereto (Cardinal's 11/30/2018 discovery responses).

[60] *See e.g.*, Discovery Teleconference Agenda Nos. 84 (Plaintiffs' Motion regarding Cardinal's SOM productions from 3rd parties or interference with 3rd party productions), 122 (Plaintiffs' request for Cardinal Health to produce details of its Suspicious Order Monitoring Systems), 123 (Request to Re-open 30(b) Deposition of Cardinal Health).

[61] *See* Ex. C attached hereto – Excerpt of Cardinal's 30(b)(6) testimony at pp. 292-295.

[62] *See* Ex. D attached hereto – Cardinal's 1/24/2019 written response to supplement 30(b)(6) testimony.

depositions – still do not provide the information contained in the charts. Accordingly, Plaintiffs have met all requirements of Fed.R.Civ.P. 26(b)(3)(A), and the charts can be discovered – even as work product.[63]

As for Cardinal's allegation that "the charts contain attorneys' advocacy in a comparison of the features of the system at different times",[64] it does not satisfy Cardinal's burden of proving same.[65] Indeed, the charts speak for themselves – and clearly outline facts about Cardinal's suspicious order monitoring system over different periods.[66] The charts contain simple and straightforward SOMS details about: "Personnel Resources", "Suspicious Order Monitoring System", "KYC" [know your customer], anti-diversion organizational structure, and training.[67] Moreover, the charts provide SOMS details during the 2006-2007 time period – a period (with respect to its SOMS details) that Cardinal "does not have present knowledge about".[68]

### C. The Charts Are Not Privileged

"The burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir.2000). "Claims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information

---

[63] *Stampley v. State Farm Fire & Cas. Co.*, 23 Fed. Appx. 467, 471 (6th Cir. 2001) ("Substantial need consists of the relative importance of the information in the documents to the party's case and the ability to obtain that information by other means."). Moreover, Cardinal's reliance on *Stampley* is inapposite as Plaintiffs herein could not have deposed the person who created the clawed-back charts at issue (Plaintiffs herein did not know the person's identity, could not have reasonably discovered same prior to the deposition cut-off date, and based on Cardinal's representation, said person appears to have had a purely administrative role in the creation). *Id.*

[64] CAH Obj. #1 at p. 14.

[65] *Biegas*, 573 F.3d at 382. *See also, Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 296 (W.D. Mich. May 30, 1995) ("Opinion work product protection is not triggered unless 'disclosure creates a real, non-speculative danger of revealing the lawyer's mental impressions' and the attorney had 'a justifiable expectation that the mental impressions revealed by the materials will remain private.'") (quoting *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1015–16 (1st Cir.1988)).

[66] *See* Ex. F to CAH Obj. #1 (submitted *in camera*) - 12/8/2018 PEC letter brief at Attachments 2 & 3 thereto (the 2 Charts).

[67] *Id.*

[68] *See* Ex. C attached hereto at pp. 292-295.

discoverable during the course of a lawsuit.'" *Columbia/HCA*, 293 F.3d at 294 (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir.1997)).  "The privilege cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose."  *United States v. Skeddle*, 989 F.Supp. 890, 900 (N.D.Ohio 1997) (citing *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2nd Cir.1991)).

On November 21, 2018, the Court entered an order which, among other things, required as follows:

> **Defendants shall not interpose attorney-client privilege as a reason for not producing discovery of <u>all details</u> of their SOMS**.  The Court will not allow defendants to rely at trial, in any motion, or for any other reason, upon any evidence of the existence or method of operation of a SOMS that is not produced by this date.[69]

Considering this 11/21/2018 Order, the PEC respectfully suggests that the documents at issue contain precisely the type of SOMS details which the Court has ordered to be disclosed, regardless of whether attorneys were involved in creating, learning or compiling those details.

Cardinal has not carried its burden of proving fundamental prerequisites for considering the applicability of the privilege – the confidentiality of the material.   The following criteria must be satisfied in order to hold that a communication is protected under the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived.[70]

---

[69] *See* Doc No. 1147, at p. 1, ¶1 (emphasis added).
[70] *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998).

Here, Cardinal cannot prove that the communications were permanently protected or that the protection was not waived.  As outlined in Section II.D. *infra*, Cardinal did not protect the information from the charts, and in fact intentionally waived it.  Moreover, the facts contained within the charts are not protected by the attorney-client privilege.[71]  As such, even if the charts themselves are found to be privilege, Cardinal is obligated to provide written discovery responses setting forth facts <u>all</u> details of its SOMS.

### D.    Cardinal Has Waived Any Potential Privilege Claim

Plaintiffs also submit that Cardinal has waived the privilege over the charts as significant portions of the charts were part of and/or underlying Cardinal's April 12, 2013 Investigation Report of the Special Demand Committee ("2013 Report").  Importantly, this 2013 Report was published to the public at large.[72]  Additionally, Cardinal also (newly) claims that it used two-thirds of the charts in discussions with the DEA,[73] providing further support for waiver.  Fed. R. Evid. 502(a) governs whether an intentional waiver by a party of a document protected by the attorney-client privilege or work-product doctrine constitutes a general subject matter waiver as to other similar documents.

> When the disclosure is made in a federal proceeding ... and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal ... proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or

---

[71] *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *50 (S.D. Ohio Nov. 13, 2012) ("Neither the attorney-client privilege nor the work product doctrine applies to prevent the disclosure of underlying facts, regardless of who obtained those facts.");  *Clevenger v. Dillard's Dep't Stores, Inc.*, No. 1:02–CV–558, 2006 U .S. Dist. LEXIS 67322, at *9 (N.D.Ohio Sept. 20, 2006) (attorney notes based on a meeting with a third party not privileged, even where attorney "may have then later communicated [to his client] about the notes and given a legal opinion thereon [because doing so] does not convert the notes themselves into attorney-client communication").

[72] https://www.cardinalhealth.com/content/dam/corp/web/documents/Report/CH-Report-of-Special-Demand-Committee-April-12-2013-Redacted.pdf (last visited 3/4/2019).

[73] CAH Obj. #2 at p. 14, fn 24.

information concern the same subject matter; and (3) they ought in fairness to be considered together.[74]

The instant facts fit the requirements of Rule 502(a), as: 1) Cardinal unquestionably waived privilege regarding the 2013 Report and in discussions with the DEA, 2) the charts at issue concern the same subject matter as the 2013 Report and the 2-column chart, and 3) fairness requires for the charts to be disclosed.

"The waiver extends beyond the document initially produced out of concerns for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not."[75] As recently articulated by the Sixth Circuit, "the privilege may be implicitly waived when defendant asserts a claim that in fairness requires examination of the protected communications." *United Shore Financial Services, LLC*, 2018 WL 2283893 at *2 (6th Cir. Jan. 3, 2018) (quoting *Bilzerian*, 926 F.2d at 1292).[76]

In *Graff v. Haverhill North Coke Co*., No. 1:09-cv-670, 2012 WL 5495514 (S.D. Ohio 2012), the court was faced with a nearly identical set of facts as is present here, and in determining that waiver had occurred, the court held:

> The undersigned finds that it would be unfair to permit defendants to produce the final version of the ERM audit which concludes that HNCC was compliant with regulatory requirements, yet withhold the draft versions of the audit **and other communications that may undermine or help explain the factual basis for this conclusion**. While defendants disclaim any tactical advantage by voluntarily disclosing the final ERM audit because they "have not put the audit at issue" in this case, the absence of such a tactical use does not essentially mandate a finding

---

[74] Fed.R.Evid. 502(a).

[75] *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed.Cir.2005).

[76] *See also*, *Proctor & Gamble Co. v. Team Technologies, Inc.*, No. 12–cv–552, 2013 WL 3778740, at *2 (S.D. Ohio July 18, 2013) ("When a party makes a knowing and intentional waiver of the attorney-client privilege for its own purposes, fundamental fairness dictates that the party be required to produce all communications related to the same subject matter of the disclosed communications."); *Koumoulis v. Independent Financial Marketing Group, Inc., LPL*, 295 F.R.D. 28, 4041 (E.D.N.Y.2013) ("Both the attorney-client privilege and work product privilege may be waived if a party puts the privileged communications at issue by relying on it to support a claim or defense. Such a waiver may be implied in circumstances where it is called for in the interests of fairness.") (Internal quotations and citations omitted).

of no waiver.  *See In re OM Securities Litigation*, 226 F.R.D. 579, 590–91 (N.D.Ohio 2005) ("The Court must consider, not only whether there is a tactical benefit, but whether it is fair to uphold the privilege considering the nature of the disclosure."). Although the "audit" itself may not be "at issue," whether HNCC has been compliant with state and federal regulations during the relevant time frame in this lawsuit is at issue—an issue the final version of the ERM audit specifically addresses.  Additionally, **defendants' affirmative defenses assert that HNCC has been in substantial compliance with federal, state, and local statutes and regulations,** and by making the subject matter of the final ERM audit (compliance with regulatory requirements) a defense in this action**, defendants have placed the subject matter of the audit at issue**.  *See New Phoenix Sunrise Corp. v. C.I.R.*, 408 F. App'x 908, 919 (6th Cir.2010).[77]

Consistent with the documents at issue in *Graff*, the clawed-back documents at issue herein "undermine or help explain the factual basis" for the conclusion of the 2013 report.[78] Cardinal gained a tactical benefit by publicly releasing the 2013 report, and by continuing to maintainin it on its website, and purportedly benefited by using the 2-column chart with the DEA.  Moreover, Cardinal has put the clawed-back charts at issue in this matter by asserting affirmative defenses that it "has been in substantial compliance with federal, state, and local statutes and regulations" relative to distributing controlled substances.[79]

Although Cardinal argues that the Discovery Ruling Regarding the "Teamsters Materials," Dkt. No. 835, Aug. 1, 2018 ("8/1/2018 Ruling") is on point, there are significant differences between the two situations.  Unlike the underlying facts relating to the 8/1/2018 Ruling, the current facts prove that Plaintiffs have a substantial need for the documents and have not been able to obtain the information.  Moreover, the charts at issue do not include "opinion work product" or other close-call materials such as the search terms, interviews, etc. at issue in the 8/1/2019 Ruling.  Finally, unlike the facts surrounding the 8/1/2018 Ruling (where no

---

[77] *Graff v. Haverhill North Coke Co*., 2012 WL 5495514, at 17.  (Emphasis added).
[78] *Id*.
[79] *Id*.  *See also*, Exhibit E attached hereto – Cardinal's Affirmative Defenses at pp, 138-142 (54th, 60th & 76th Affirmative Defenses).

affirmative defense had been filed), Cardinal's affirmative defenses assert that they have been in substantial compliance with all applicable regulatory requirements.[80]

## CONCLUSION

Based on the foregoing reasoning and argument, Cardinal's Objections to Amended Discovery Ruling No. 14 should be stricken and/or overruled.

Respectfully Submitted,

Dated:  March 5, 2019

/s/Michael J. Fuller, Jr.
Michael J. Fuller, Jr. (0090250)
**McHugh Fuller Law Group**
97 Elias Whiddon Road
Hattiesburg, MS  39402
(601) 261-2220
(601) 261-2481 (FAX)
mike@mchughfuller.com

*Member of the Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of March, 2019, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System. Exhibits will be served separately under seal.

/s/Michael J. Fuller, Jr.
Michael J. Fuller, Jr. (0090250)
**McHugh Fuller Law Group**
97 Elias Whiddon Road
Hattiesburg, MS  39402
(601) 261-2220
(601) 261-2481 (FAX)
mike@mchughfuller.com

*Member of the Plaintiffs' Executive Committee*

---

[80] *See* Ex. E at pp. 138-142.