Exhibit 2

New York | Paris
Northern California | Madrid
Washington DC | Tokyo
São Paulo | Beijing
London | Hong Kong

**Davis Polk**

**Brian S. Weinstein**

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

212 450 4972 tel
212 701 5972 fax
brian.weinstein@davispolk.com

March 5, 2019

Re: In re National Prescription Opiate Litigation U.S. District Court for the Northern District of Ohio, 1:17-md-2804

**Via Email:  David@SpecialMaster.Law**
Special Master David Cohen
U.S. District Court for the Northern District of Ohio
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113

Dear Special Master Cohen:

On behalf of our client Healthcare Distribution Alliance ("HDA"), we submit this objection to the February 12, 2019 Discovery Ruling No. 14, Part 3 (the "Ruling") (ECF No. 1359).  The Ruling concluded that HDA had not presented evidence to support a threshold showing that the common interest privilege might apply to the specific documents over which such privilege had been asserted on HDA's privilege log, or evidence to support the conclusion that steps had been taken to ensure that the confidentiality of such documents had been maintained.  (Ruling at 4.)  In light of Judge Polster's February 8, 2019 Order requiring that any objection based on evidence or legal arguments not presented to the Special Master must first be presented to the Special Master for consideration (ECF No. 1349), HDA is submitting this objection for your consideration, along with a declaration by Elizabeth A. Gallenagh, Esq., General Counsel for HDA (Ex. A), in support of HDA's objection.

Plaintiffs' motion to compel focused primarily on a search term dispute with HDA, with only a cursory legal argument that the common interest privilege did not apply between HDA and its members—an argument that did not rely on assertions of fact regarding the relationship between HDA and its members or how legal advice was shared. HDA's opposition concerning the common interest privilege responded to the legal arguments made by Plaintiffs, but insofar as the Ruling relied on the absence of evidence relating to underlying facts, HDA now provides such evidence, along with a discussion of the relevant caselaw in view of such facts. HDA respectfully submits that those facts satisfy the threshold showing necessary to support the assertion of the common interest privilege between HDA and its members, and that if Plaintiffs believe any particular assertions of such privilege are unsupported, they must identify particular assertions from HDA's privilege log that they are challenging and the basis for such challenge.

## I.  PROCEDURAL BACKGROUND

On December 28, 2018, Plaintiffs filed a letter brief in support of their motion to compel discovery from HDA (the "Motion"), chiefly disputing the search terms for HDA's document collection. They also briefly argued, with a cursory citation to certain cases, that as a matter of law HDA could not assert the common interest privilege with its members. (Mot. at 11–12.) Plaintiffs did not identify specific documents or categories of documents in HDA's privilege log, or question the sufficiency of HDA's privilege log, but instead argued that the common interest privilege could not apply at all.[1] Plaintiffs' short discussion of the

---

[1] Since the time HDA submitted its original privilege log, it has re-examined its assertions of common interest privilege and has de-designated certain of those documents, but has also been reviewing additional documents for production and has identified documents within that set over which it is claiming common interest privilege. The current total number of documents over which HDA asserts common interest privilege is approximately 550 or less. HDA will be in a position to provide an updated privilege log containing entries for the newly reviewed documents within the coming days.

issue focused on the arguments that HDA was not a party to this litigation and did not anticipate litigation against a common adversary; that activities conducted by a trade organization are outside the scope of the common interest privilege; and that sharing copies of legal strategies, memos or briefs with employees of members destroys the privilege. (Mot. at 11–12.)

HDA filed a letter brief in opposition to the Motion on January 11, 2019 (the "Opposition"). With respect to the common interest issue, HDA responded to the legal arguments made by Plaintiffs, arguing that courts have regularly applied the common interest privilege in the context of trade associations; that the common interest privilege does not require that those asserting it be codefendants or even that litigation be anticipated, so long as legal advice is being provided in furtherance of a common legal interest; and that sharing such legal advice with the principals of the entities in that common interest relationship does not destroy the privilege. (Opp. at 7–9.) HDA argued that its assertion of the common interest privilege therefore had to be contested, if at all, on a document-by-document basis. *Id.*[2]

The Ruling concluded that Plaintiffs' challenge to HDA's assertion of common interest privilege need only be made on a document-specific basis "if HDA makes a colorable showing, based on evidence, that the privilege might apply to any document," and that HDA

---

[2] Plaintiffs filed a reply on January 15, 2019, in which they briefly reasserted their legal arguments that the common interest privilege did not apply at all and, for the first time, argued that HDA members had produced certain documents over which HDA was claiming privilege (without identifying any such documents), and therefore had "waived" the common interest privilege over such documents. (Reply at 4.) HDA submitted a short letter in response arguing that the common interest privilege had not been waived, and that if certain documents over which HDA had asserted privilege had been produced by one or more defendants (among the millions of pages produced in this highly expedited litigation), Plaintiffs should "identify such documents so that HDA and the relevant defendant[s] can consider whether HDA's claim of common interest privilege should be withdrawn, or whether the privileged document was inadvertently produced and should be returned." (HDA's Letter to Special Master Cohen, January 16, 2019 at 1–2.)

4                    Special Master David Cohen

had made no such showing.  (Ruling at 6.)  Further, the Ruling concluded that HDA "does not carry its burden of identifying specific facts" showing that efforts were made to maintain confidentiality over the relevant communications with members.  *Id.*  Accordingly, and in light of the foregoing, HDA submits this letter brief and the accompanying declaration of Elizabeth A. Gallenagh, Esq., General Counsel for HDA (Ex. A), which delineates the factual context supporting HDA's assertion of common interest privilege.

II.     FACTUAL BACKGROUND

HDA is the national organization representing primary pharmaceutical distributors, many of whom are defendants in this litigation.  (Ex. A, Gallenagh Decl. ¶ 2.)  HDA's activities are directed by committees comprised of representatives from its member companies.  (*Id.* ¶ 3.)  These include, among others, the Executive Committee, Legal Committee, Public Policy Committee, Regulatory Affairs Committee, Federal Government Affairs Committee, and State Government Affairs Committee.  (*Id.*)  One of the core functions of HDA is to provide legal advice to members on matters of common legal interest, and to facilitate the formulation of common legal strategies and positions on issues affecting members through discussions between HDA, its members, and their respective counsel.  (*Id.* ¶ 4.)

HDA and its members have an expectation of confidentiality with respect to the legal advice, and the requests for legal advice, shared between HDA and its members on issues of common legal concern.  (*Id.* ¶ 5.)  Such confidentiality is integral to allowing HDA and its members to formulate common legal strategies and positions.  (*Id.*)  Disclosure of such legal advice would undermine the candor and frankness of these communications, hamper the formulation of common legal strategies and positions, and hamper HDA members' ability to obtain desired legal advice.  (*Id.*)

5    Special Master David Cohen

When HDA lawyers provide legal advice to members, these communications are made with the expectation that they will remain privileged and confidential. (*Id.*) Accordingly, HDA attorneys instruct their committee members to maintain the confidentiality of such legal advice provided through HDA, and reminders of the confidential nature of such communications are also regularly provided on written communications. (*Id.*) It has always been HDA's policy to maintain the confidentiality of such communications and not share them with third parties outside of HDA and its membership. (*Id.* ¶ 12.) HDA has no reason to believe that members did not share and follow these expectations of confidentiality. (*Id.* ¶ 5.)

The vast majority of HDA's funding comes from its members. (*Id.* ¶ 6.) That funding includes amounts to pay HDA's in-house and outside legal counsel. (*Id.*) The HDA Executive Committee, which is comprised of members' representatives, must approve HDA's budget, including amounts spent on outside counsel, as well as any expenditures for legal services that are not set out in HDA's budget. (*Id.*) In addition, the Executive Committee approves taking legal action on behalf of HDA members. (*Id.*) The HDA Executive Committee is also involved in the selection of outside counsel, including recommending outside counsel. (*Id.*)

HDA has a Legal Committee whose function is to monitor and evaluate legal issues of concern to the pharmaceutical distribution industry, in which the participants have common legal interests, and to share legal advice on those matters. (*Id.* ¶ 7.) To that end, the Legal Committee holds a monthly conference call regarding legal issues. (*Id.*) Regular topics of discussion include current and pending legislation and regulation, enforcement actions by regulators of the distribution industry, including the Drug Enforcement Administration ("DEA") and Food and Drug Administration ("FDA"), and current and potential litigation

affecting the distribution industry. (*Id.*) Counsel employed by several HDA members sit on the HDA Legal Committee. (*Id.*) HDA's outside counsel from the law firms Olsson Frank Weeda Terman Matz PC and Arent Fox LLP also participate in HDA's Legal Committee.[3] (*Id.*)

In order to represent its members effectively, HDA must consult with its own attorneys as well as its member companies and their attorneys on certain matters. (*Id.* ¶ 8.) Carrying out its role as representative of the pharmaceutical distribution industry's views on pending legislation, regulatory matters, and litigation requires close consultation between HDA's staff and counsel, and counsel and staff for HDA's members, including the members of the Legal Committee. (*Id.*) As part of these consultations, HDA and its members share confidential legal advice in order to formulate common legal strategies and positions regarding potential and actual litigation that involves or could involve HDA members or HDA itself (including, for example, the lawsuit relating to New York State's opioid tax recently filed by HDA on behalf of its members),[4] as well as common legal positions regarding legislative developments (including without limitation proposing legislative language) and regulatory proceedings (including without limitation providing comments to regulators). (*Id.* ¶ 9.)

Additionally, because HDA is a trade association funded by its members and whose constituency is its members, counsel for HDA and its members routinely attend meetings of HDA's Board of Directors and Executive Committee. (*Id.* ¶ 10.) These meetings often

---

[3] Other outside counsel paid for by HDA with member dues to provide members with legal advice on various issues affecting the industry and help them formulate common legal strategies have included McDermott Will & Emery LLP, McGuireWoods LLP, and Nossaman LLP, among others. (*See id.* ¶¶ 6, 7.)

[4] *See Healthcare Distribution Alliance v. Zucker*, No. 18 Civ. 6168 (KPF), 2018 WL 6651682 (S.D.N.Y. Dec. 19, 2018), *appeal docketed*, No. 19-199 (2d Cir. Jan. 17, 2019).

include presentations by HDA counsel containing advice related to legal issues relevant to the distribution industry, summaries of which are distributed. (*Id.*)  Materials for these meetings sometimes include legal memoranda containing legal advice regarding issues affecting HDA members. (*Id.*)

Counsel for HDA and its members are often similarly involved in the correspondence and meetings of HDA's other committees, task forces, and working groups, including, but not limited to, its Public Policy Committee, Federal and State Government Affairs Committees, and Regulatory Affairs Committee—groups that are directly involved in the legislative, regulatory, and litigation issues in which HDA and its members often formulate common legal strategies and positions. (*Id.* ¶ 11.)  Outside counsel are routinely present at HDA committee meetings to provide advice regarding antitrust issues and HDA's own bylaws and procedures, and frequently provide legal advice to HDA's members including interpretation and analysis of statutes, regulations, and other guidance from federal and state agencies. (*Id.*)

### III.   LEGAL BACKGROUND

The common interest doctrine is an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party. *See, e.g.*, *Falana v. Kent State Univ.*, No. 5:08 CV 720, 2012 WL 6084630, at *4 (N.D. Ohio Dec. 6, 2012) (citing *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219 (W.D. Ky. 2006)).  The doctrine "encourages parties working with a common purpose to benefit from the guidance of counsel, and thus avoid pitfalls that otherwise might impair their progress toward their shared objective." *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 347–48 (N.D. Ohio 1999).  Under the common interest doctrine, parties may share legal advice without waiving any underlying privilege if the parties have a common legal interest and intend that the communication will remain confidential. *See, e.g.*, *id.* at 348–49.

> **A.    The common interest privilege can apply to the sharing of legal advice between a trade association and its members on matters of mutual legal concern.**

For the doctrine to apply, the parties must have "a *common legal*, as opposed to commercial, interest." *Libbey Glass*, 197 F.R.D. at 348 (internal citation omitted). The key consideration is that the interest be legal and not solely commercial; however, that the parties may share a commercial interest does not itself exclude the existence of a common legal interest. *Libbey Glass*, 197 F.R.D. at 348–49 (citing *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) ("The fact that there may be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest." (internal citation omitted)). For example, in *Libbey Glass*, the court concluded that the common interest privilege did not apply because the legal elements of the communications at issue were only "ancillary to the principal activity in which [the parties] were engaged: namely, the negotiation of an agreement . . . to buy and distribute glassware." 197 F.R.D. at 349.

Parties may share a common legal interest "[even] if it is unlikely that they will ever be parties to the same litigation," and "outside of the litigation context altogether." *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 WL 314435, at *6–7 (N.D. Ohio Feb. 9, 2006); *see also Dura Glob., Techs., Inc. v. Magna Donnelly Corp.*, No. 07-CV-10945-DT, 2008 WL 2217682, at *3 (E.D. Mich. May 27, 2008) ("The weight of authority holds that litigation need not be actual or imminent for communications to be within the common interest doctrine." (internal citation omitted)).

Federal courts consistently have applied the common interest privilege to protect the communications of trade association attorneys who are "advis[ing] the members and coordinat[ing] their legal efforts with respect to proposed legislation, regulation, and potential

litigation."[5] *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07CV929 (WWE), 2013 WL 6044333, at *10–11 (D. Conn. Nov. 14, 2013) (concluding that the common interest rule applies where the third party "shares a common legal goal with the party" possessing the privilege); *Blair v. Prof'l Transp. Inc.*, No. 3:14-cv-18-RLY-WGH, 2015 WL 1013566, at *3 (S.D. Ind. March 9, 2015) (applying the common interest privilege to trade association "united for the same purpose: advancing their collective legislative and public policy positions"); *Broessel*, 238 F.R.D. at 220 (finding that the trade organization and its members had a common legal interest "that extend[ed] to legislative and regulatory matters, as well as in matters in litigation or which could lead to litigation"); *United States v. Ill. Power Co.*, No. 99-cv-0833-MJR, 2003 WL 25593221, at *1, *4 (S.D. Ill. Apr. 24, 2003) (holding that a trade association that served its members by "explaining and analyzing regulatory developments, authoring draft comments to proposed rulemakings, participating in litigation challenging EPA regulations, and participating in administrative proceedings before the EPA" shared a common legal interest with its members). As the District Court for the District of Columbia has explained:

> Oddly, "[t]here is very little authority as to whether members of a trade association may be treated as clients for privilege purposes." The absence of any case law may be because the proposition that association members have an attorney-client relationship with an attorney whom they have hired to provide them with legal services is intuitively correct. When persons join together for a common goal and pool their funds to hire a lawyer to give them legal advice, how could it not be true that they each share with that lawyer an attorney-client privilege

---

[5] Because there is little Sixth Circuit precedent regarding the common interest privilege, this court has previously relied on the decisions of federal courts outside the Sixth Circuit when deciding common interest privilege questions. *See MPT*, 2006 WL 314435, at 6 n.5 ("Considering that Sixth Circuit precedent is rather scant and does not diverge from the law of other Circuits, these [patent-specific common interest privilege cases outside the Sixth Circuit] can be instructive to the extent other courts have addressed similar factual circumstances."). This approach is particularly appropriate here, given the dearth of Sixth Circuit precedent regarding the application of the common interest privilege to trade associations such as HDA.

> when she guides them as to legal issues that confront them as an association? Had those same persons created a corporation for the purpose of achieving a common goal and constituted themselves into a board of directors, the common law surely would acknowledge an attorney-client privilege between that board and the lawyer retained to advise them.
>
> Denying those persons that privilege when they choose to do their business as an association literally exalts the form of their association over the substance of the lawyer's work and defeats, for no good reason, their expectation that the lawyer will maintain their confidences and secrets as she is obliged to do. It cannot seriously be suggested that a lawyer accused of violating those confidence[s] or disclosing those secrets could defend herself on the ground that there was no privilege between her and the members of the association that hired her.

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, Misc. No. 07-489 (PLF/JMF/AK), 2010 WL 11570865, at *2 (D.D.C. Sept. 28, 2010) (citing 1 Edna Selen Epstein, *The Attorney-Client and the Work-Product Privilege* 190 (2007)).

    **B.**    **The common interest privilege applies to communications the parties expect to remain confidential.**

The common interest privilege applies where parties take "deliberate and meaningful steps to protect the confidential nature of the communications." *Libbey Glass*, 197 F.R.D. at 348. Communications need not be explicitly designated as privileged or confidential. *See, e.g.*, *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 301 (D. Utah 2002) ("It is not necessary that a document be labeled as privileged in order for it to be subject to an Attorney/Client or work product privilege, if the document otherwise fits within such a privilege."). Moreover, "[i]t is clear that no written agreement is required" to demonstrate that the parties understood their communications to be confidential. *Ellis v. J.P. Morgan Chase & Co.*, No. 12-cv-03897-YGR (JCS), 2014 WL 1510884, at *6 (N.D. Cal. Apr. 1, 2014) (citing *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012)); *see also North Am. Rescue Prods., Inc. v. Bound Tree Med., LLC*, No. 2:08-cv-101, 2010 WL 1873291, at

*4 (S.D. Ohio May 10, 2010) (recognizing that a written agreement is not a prerequisite to the application of the common interest privilege); Restatement (Third) of the Law Governing Lawyers § 76 cmt. c (2000) (hereinafter, "Restatement") (observing that a formal confidentiality agreement "is not required").  Rather, communications are protected by the common interest privilege if there is "no evidence that [the] communications [had] been disclosed to any persons other than [the parties]" and the parties "shared the expectation that their communications between themselves and their counsel would be maintained in confidence."  *Travelers Cas. & Sur. Co. v. Excess Ins. Co.*, 197 F.R.D. 601, 604, 607 (S.D. Ohio 2000).  Even if one party has disclosed communications protected by the common interest privilege, the privilege is not waived for parties that share the privilege absent their consent.  *See, e.g.*, *United States v. BDO Seidman, LLP*, 492 F.3d 806, 817 (7th Cir. 2007) ("[P]rivileged status of communications falling within the common interest doctrine cannot be waived without the consent of all of the parties."); *Dura Glob., Techs.*, 2008 WL 2217682, at *2 (same); *Holland v. Island Creek Corp.*, 885 F. Supp. 4, 7 (D.D.C. 1995) (same).

Parties with a common legal interest need not share the information directly through attorneys to maintain confidentiality.  As the common interest privilege is an exception to waiver of the work product and attorney-client privileges, privileged documents can be shared among any of the clients and attorneys without breaking the common interest privilege, regardless of whether the communicating client's own counsel is present, or even between clients when no attorney is present.  *See, e.g.*, *MPT*, 2006 WL 314435, at *3, *7 (concluding that the common interest privilege protected communications made by either the client patent holder or its counsel to a nonexclusive licensee); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95-C-0673, 1996 WL 514997, at *1 (N.D. Ill. Sept. 6, 1996) ("Of necessity, communications between [companies'] respective counsel – *and*

*between themselves as communicators of their counsels' opinions* are well within the common legal interest extension of the attorney-client privilege." (emphasis added)); Restatement § 76 cmt. d ("[U]nder the privilege, any member of a client set—a client, the client's agent for communication, the client's lawyer, and the lawyer's agent—can exchange communications with members of a similar client set."). Accordingly, sharing a lawyer's advice among members of a trade association does not waive the privilege. *See, e.g.*, *A & R Body*, 2013 WL 6044333, at *11 (holding the common interest privilege applied to communications "convey[ing] or seek[ing] legal advice" that were shared between a trade association and its members); *Rail Freight*, 2010 WL 11570865, at *1–2 (holding the common interest privilege applied to legal advice provided to committees and individual committee members by trade association counsel); *Broessel*, 238 F.R.D. at 220 (holding the common interest privilege applied to sharing of legal advice among non-lawyer trade association members); *accord Jones v. Tauber & Balser, P.C.*, 503 B.R. 510, 518 (N.D. Ga. 2013) (relying on *Broessel* in rejecting an argument that the common interest privilege only protects against waiver of those communications shared directly with the attorney of another member of the community of interest).

### IV.     ARGUMENT

HDA respectfully submits that, for the reasons set forth in the accompanying Gallenagh Declaration (Ex. A) and this letter brief, the common interest privilege can apply to communications among HDA and its members that include legal advice provided by counsel for HDA or its members, and that challenges to such assertions of privilege on HDA's privilege log, if any, must therefore be made on a document-by-document basis. HDA's general counsel and outside counsel communicated with members and their counsel to provide legal advice concerning matters of common legal (and not merely commercial)

interest, and to formulate common legal positions.  This legal advice was intended to remain confidential and steps were taken to maintain such confidentiality.

### A. HDA shares a common legal interest with its members because HDA's counsel advises its members on legal issues of common concern to the industry, and the formulation of common legal strategies and positions.

As set forth in the Gallenagh Declaration, HDA provides legal advice to members on matters of common legal (and not simply commercial) interest and does so in connection with formulating common legal strategies and positions.  In doing so, HDA's counsel are paid through member funds, and the advice they provide is intended to remain confidential.  The facts and circumstances described in the Gallenagh Declaration bring these communications within the common interest privilege just as other courts have held to be the case in similar situations involving trade associations and their members.

Providing legal advice to members on matters of common legal interest, and facilitating the formulation of common legal strategies and positions, is one of the core functions of HDA.  (Ex. A, Gallenagh Decl. ¶ 4.)  HDA's Legal Committee, on which counsel employed by several individual HDA members sit along with HDA's counsel, monitors and evaluates legal issues of mutual concern to the pharmaceutical distribution industry, and shares legal advice on those matters.  (*Id.* ¶¶ 7, 8.)  Among the issues on which HDA's counsel provides legal advice to members, and works with members' counsel to formulate common legal positions, are:  potential and actual litigation that involves or could involve HDA and its members (including, for example, HDA's suit—following member approval—challenging New York's opioid tax bill (*see Healthcare Distribution Alliance v. Zucker*, No. 18 Civ. 6168 (KPF), 2018 WL 6651682 (S.D.N.Y. Dec. 19, 2018)); legislative developments (including without limitation joint efforts to propose legislative language); and regulatory proceedings (including without limitation joint efforts to provide comments to

regulators and to ensure that members understand their regulatory obligations).  (*Id.* ¶ 9.)  HDA's counsel regularly provide legal advice, as well as accompanying written legal memos, during Board of Directors and Executive Committee meetings.  (*Id.* ¶ 10.)  HDA's counsel and members' counsel have also worked together to submit *amicus curiae* briefs on behalf of the industry regarding litigation in which HDA and its members share a common legal interest.  (*Id.* ¶ 9.)

In all of these communications, HDA and its members have a common legal purpose and "demonstrate actual cooperation toward a common legal goal."  *JP Morgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2010 WL 11545362, at *5 (E.D. Mich. Dec. 10, 2010) (citation omitted).  Applying the common interest privilege in such circumstances is consistent with its aim of "encourag[ing] parties working with a common purpose to benefit from the guidance of counsel, and thus avoid pitfalls that otherwise might impair their progress toward their shared objective."  *Libbey Glass*, 197 F.R.D. at 347–48 (holding that parties did not have identical legal interests because the shared interest—the negotiation of a purchase and distribution contract—was commercial, not legal); *Travelers Cas. & Sur. Co.*, 197 F.R.D. at 607 (noting that common interests "create a need for full and frank communications between and among counsel and their clients").  "The fact that there may be an overlap of a commercial and legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest."  *Bank Brussels Lambert*, 160 F.R.D. at 447 (internal citation omitted); *see also Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003) ("The common enterprise must be for a legal purpose, and not solely commercial, although it may possibly serve both purposes." (citing *Bank Brussels Lambert*, 160 F.R.D. at 447)).

As described in the Gallenagh Declaration, the legal advice at issue was in pursuit of common legal goals and strategies and did not involve "solely commercial" interests.  The communications concern matters involving litigation or which could lead to litigation, and matters involving legislation or regulations that affect members' legal obligations and their compliance with such obligations so as to avoid liability.  *See* (Ex. A, Gallenagh Decl. ¶ 7, 9).

Communications of this type have repeatedly been held to justify application of the common interest privilege to trade associations and their members.  In *Broessel*, the court held that a mortgage insurance trade association and its members shared a common legal interest in "legislative and regulatory matters, as well as matters in litigation or which could lead to litigation," that was sufficient to invoke the privilege.  *Broessel*, 238 F.R.D. at 220.  Similarly, in *A & R Body*, the court evaluated whether the common interest privilege applied to communications between the Insurance Association of Connecticut ("IAC"), a nonparty trade association representing insurers conducting business in Connecticut, and its members, one of which was a named party.  *A & R Body*, 2013 WL 6044333, at *1, *10.  Much like HDA, IAC is a trade association that "provide[s] government and public relations services . . . and . . . advance[s] the legislative and regulatory agenda and lobbying efforts of [its] members."  *Id.* at *1; *see* (Ex. A, Gallenagh Decl. ¶¶ 2, 4, 7, 9.)  The court held that IAC's attorneys "advised the members and coordinated their legal efforts with respect to proposed legislation, regulation, and potential litigation," which demonstrated "clear 'cooperation in formulating a common legal strategy.'"  *A & R Body*, 2013 WL 6044333, at *11 (citing *Bank Brussels Lambert*, 160 F.R.D. at 447).  Thus, the court held that the common interest privilege applied to protect IAC's communications with its members from disclosure.  *Id.*; *see also Ill. Power Co.*, 2003 WL 25593221, at *4 (applying the common interest privilege to communications between companies that "were likely all concerned with the same issue of

how the EPA was interpreting regulations and rulings, and together as [a trade association] sought legal advice on these matters"); *Blair*, 2015 WL 1013566, at *4 (examining communications between trade association counsel and its members "indicat[ing] that they shared common *legal* interests, including: understanding their liabilities and obligations under proposed changes to the law[,] . . . complying with the law as it stood[,] . . . and complying with the law in . . . conducting their lobbying efforts").

Critically, application of the common interest privilege turns on the provision of legal advice on issues of common concern, and does not require that the members of the common interest relationship be involved in or anticipate the same or similar litigation; indeed, the common interest privilege can apply outside the litigation context entirely. *See, e.g.*, *MPT*, 2006 WL 314435, at *6–7 ("[E]ntities can have a common legal interest even if it is unlikely that they will ever be parties to the same litigation[, and] . . . parties can have common legal interests *outside of the litigation context altogether*." (emphasis added)); *see also Dura Glob., Techs.*, 2008 WL 2217682, at *3 ("The weight of authority" does not require litigation for the common interest privilege to apply). For example, in *A & R Body*, the court applied the common interest privilege to communications between the trade organization's attorneys and its members even though no party was involved in litigation or anticipated litigation at the time. *A & R Body*, 2013 WL 6044333, at *11.

Finally, not only did HDA members regularly seek legal advice from HDA's counsel, but insofar as the vast majority of HDA's funding comes from its members, members were the ones who paid for such advice. (Ex. A, Gallenagh Decl. ¶ 6.) As the court asked in *Rail Freight*, "[w]hen persons join together for a common goal and pool their funds to hire a lawyer to give them legal advice, how could it not be true that they each share with that

lawyer an attorney-client privilege when she guides them as to legal issues that confront them as an association?" 2010 WL 11570865, at *2.

### B. The common interest privilege applies because HDA and its members shared an understanding that the legal advice provided through HDA would remain confidential.

HDA and its members have an expectation of confidentiality with respect to the legal advice provided through HDA relating to common legal issues and positions. (Ex. A, Gallenagh Decl. ¶ 5.) Accordingly, HDA attorneys instruct their committee members to maintain the confidentiality of legal advice provided through HDA, and reminders of the confidential nature of such communications are also regularly provided on written communications. (*Id.*) Such confidentiality is integral to allowing HDA and its members to have frank and candid communications as they formulate common legal strategies. (*Id.*) In light of this expectation of confidentiality, the common interest privilege applies, *see, e.g.*, *Libbey Glass*, 197 F.R.D. at 348; *Travelers Cas. & Sur. Co.*, 197 F.R.D. at 607, just as other courts have held with respect to other trade associations that exchanged legal advice confidentially with members, *see supra* Section IV.A. As recognized by these courts, disallowing the assertion of the common interest privilege in such circumstances would hamper the ability of trade associations to represent their members' interests by helping to formulate common legal strategies and positions, while also hampering the ability of members to obtain desired legal advice.

### C. Sharing privileged communications with non-lawyer employees of HDA's members did not break the privilege.

HDA and its members did not lose the common interest privilege by sharing legal strategies with their non-lawyer employees. Courts have regularly held that privileged documents can be shared among any of the clients and attorneys within the common interest relationship without breaking the privilege, regardless of whether counsel is present or is

copied on the communications. So long as legal advice is provided in furtherance of a common legal interest, the fact that one client conveys the advice to another does nothing to vitiate the privilege. *See supra* Section III.B; *MPT*, 2006 WL 314435, at *3, *7; *Heidelberg Harris*, 1996 WL 514997, at *1; Restatement § 76(1) & cmt. d; *see also, e.g.*, *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 460 F. Supp. 2d 915, 919–20 (S.D. Ind. 2006) (holding that the common interest privilege applied to co-parties' communications held outside of counsel's presence because the communications implicated "counsel's legal advice or mental impressions"); *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 584 (D. S.D. 2006) (holding that the common interest privilege applied to plaintiffs' communications with a nonparty regarding plaintiffs' counsel's advice, "even if these communications occurred outside the [counsel's] presence"); *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs.*, No. Civ. A. 97 C 5827, 1999 WL 617842, at *6 (N.D. Ill. Aug. 12, 1999) (holding that common interest applies where a party is seeking or relaying confidential information to another party on behalf of an attorney); *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of Am.*, No. 94 C 7568, 1995 WL 410979, at *2 (N.D. Ill. July 11, 1995) (holding that the common interest doctrine protected co-party communications conveying one party's attorney's opinions for evaluation by the other party's counsel even though the communications were not "to or from counsel").

For the same reason, courts have explicitly held that sharing a lawyer's advice among members of a trade association like HDA does not waive the privilege, regardless of whether counsel was included on the particular communication. *See A & R Body*, 2013 WL 6044333, at *11 (holding the common interest privilege applied to communications "convey[ing] or seek[ing] legal advice" that were shared between a trade association and its members); *Rail Freight*, 2010 WL 11570865, at *1–2 (same). Each member of the association necessarily

would "consider that the lawyer the association had retained owed each of them the same duty of fealty and would never expect that disseminating among themselves the advice the lawyer gave them would perversely defeat the privilege that each of them shared with that lawyer." *Rail Freight*, 2010 WL 11570865, at *2. "Such dissemination cannot possibly be described as a purposeful and knowing surrender of the privilege." *Id.*

## V.     CONCLUSION

For the reasons set forth above, HDA requests that the Special Master rule that HDA has satisfied the threshold showing for the common interest privilege to apply to its confidential legal communications with members in furtherance of common legal interests, and that if Plaintiffs wish to challenge any particular assertions of such privilege on HDA's privilege log, this must be done on a document-by-document basis.


Respectfully submitted,

Brian S. Weinstein

Enclosures

Cc w/ encl.:   Mark Pifko and Sterling Cluff, Baron & Budd, P.C.
               Plaintiffs' Counsel
               Defendants' Counsel