<u>Exhibit 2-A</u>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>"Track One Cases" | MDL NO. 2804<br><br>CASE NO. 1:17-MD-2804<br><br>HON. DAN AARON POLSTER<br>SPECIAL MASTER DAVID COHEN |

**DECLARATION OF ELIZABETH A. GALLENAGH, GENERAL COUNSEL
FOR THE HEALTHCARE DISTRIBUTION ALLIANCE**

Elizabeth A. Gallenagh declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true:

1. I am a member of the Bar of Virginia and have been the General Counsel of the Healthcare Distribution Alliance ("HDA") since January 2011. I am familiar with and have participated in communications among HDA, its outside counsel, its member companies in the primary pharmaceutical distribution industry, and their counsel in which legal advice was provided concerning legal matters on which HDA and its member companies have a common legal interest.

2. HDA, formerly known as the Healthcare Distribution Management Association ("HDMA"), is the national organization representing primary pharmaceutical distributors, many of whom are defendants in this litigation.

3. HDA's activities are directed by committees comprised of representatives from its member companies. These include, among others, the Executive Committee, Legal Committee, Public Policy Committee, Regulatory Affairs Committee, Federal Government Affairs Committee, and State Government Affairs Committee.

4. One of the core functions of HDA is to provide legal advice to members on matters of common legal interest, and to facilitate the formulation of common legal strategies and positions on issues affecting members through discussions between HDA, its members, and their respective counsel. I have regularly provided such legal advice as General Counsel of HDA, as have HDA's various outside counsel.

5. HDA and its members have an expectation of confidentiality with respect to the legal advice, and the requests for legal advice, shared between HDA and its members on issues of common legal concern. Such confidentiality is integral to allowing HDA and its members to formulate common legal strategies and positions. Disclosure of such legal advice would undermine the candor and frankness of these communications and hamper HDA's ability to facilitate the formulation of common legal strategies and positions on behalf of its members and to advocate on behalf of and represent its members' interests. It would also hamper HDA members' ability to obtain desired legal advice. When I (or any HDA lawyer) provide legal advice to members, it is my belief that those communications are to remain privileged and confidential. Accordingly, HDA attorneys, including myself, instruct our committee members to maintain the confidentiality of such legal advice, and reminders of the confidential nature of such communications are also regularly provided on written communications. I have no reason to believe that members did not share and follow these expectations of confidentiality.

6. The vast majority of HDA's funding comes from its members. That funding includes amounts to pay HDA's in-house and outside legal counsel. The HDA Executive Committee, which is comprised of members' representatives, must approve

HDA's budget, including amounts spent on outside counsel.  In addition, the Executive Committee approves taking legal action on behalf of HDA members.  The HDA Executive Committee is also involved in the selection of outside counsel, including recommending outside counsel.  The Executive Committee must approve any expenditures for legal services that are not set out in HDA's budget.

7. HDA has a Legal Committee whose function is to monitor and evaluate legal issues of concern to the pharmaceutical distribution industry, in which the participants have common legal interests, and to share legal advice on those matters of common legal concern.  To that end, the Legal Committee holds a monthly conference call regarding legal issues.  Regular topics of discussion include current and pending legislation and regulation, enforcement actions by regulators of the distribution industry, including the Drug Enforcement Administration ("DEA") and Food and Drug Administration ("FDA"), and current and potential litigation affecting the distribution industry.  Counsel employed by several HDA members sit on the HDA Legal Committee.  The HDA Legal Committee also includes HDA's outside counsel from the law firms Olsson Frank Weeda Terman Matz PC and Arent Fox LLP.  In the past, HDA has also hired the firms McDermott Will & Emery LLP, McGuireWoods LLP, and Nossaman LLP, among others.

8. In order to represent its members effectively, HDA must consult with its own attorneys as well as its member companies and their attorneys on certain matters.  Carrying out its role as representative of the pharmaceutical distribution industry's views on pending legislation, regulatory matters, and litigation requires close consultation

3

between HDA's staff and counsel, and counsel and staff for HDA's members, including the members of the Legal Committee.

9. As part of these consultations, HDA and its members share confidential legal advice in order to formulate common legal strategies and positions regarding potential and actual litigation that involves or could involve HDA members or HDA itself (including, for example, the lawsuit relating to New York State's opioid tax recently filed by HDA against New York State on behalf of its members), as well as common legal positions regarding legislative developments (including without limitation proposing legislative language) and regulatory proceedings (including without limitation providing regulatory comments). HDA's counsel and members' counsel have also worked together to submit *amicus curiae* briefs on behalf of the industry regarding litigation in which HDA and its members share a common legal interest.

10. Additionally, since HDA is a trade association funded by its members and whose constituency is its members, counsel for HDA and its members routinely attend meetings of HDA's Board of Directors and Executive Committee. These meetings often include presentations by myself and/or outside counsel containing advice related to legal issues relevant to the distribution industry. In addition, HDA prepares summaries and minutes of these meetings containing descriptions of the legal issues discussed and the legal advice provided. Materials for these meetings sometimes include legal memoranda containing legal advice regarding issues affecting HDA members.

11. Counsel for HDA and its members are often similarly involved in the correspondence and meetings of HDA's other committees, task forces, and working groups, including, but not limited to, its Public Policy Committee, Federal and State

Government Affairs Committees, and Regulatory Affairs Committee—groups that are directly involved in the legislative, regulatory, and litigation issues in which HDA and its members often formulate common legal strategies and positions. Outside counsel are routinely present at HDA committee meetings to provide advice regarding antitrust issues and HDA's own bylaws and procedures, and frequently provide legal advice to HDA's members including interpretation and analysis of statutes, regulations, and other guidance from federal and state agencies.

12. The confidential information discussed above has been shared with the understanding that it will be kept confidential and not be shared with third parties outside of HDA and its membership. It is and has always been HDA's policy to maintain the confidentiality of such communications and not share them with third parties outside of HDA and its membership.

Dated: Arlington, Virginia
March 5, 2019

_____
Elizabeth A. Gallenagh