UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | Case No. 1:17-MD-2804 |
| *APPLIES TO ALL CASES* | Hon. Dan A. Polster |

**PLAINTIFFS' REPLY TO WALGREENS OBJECTION
TO AMENDMENT TO DISCOVERY RULING NO. 14, PART I,
REGARDING PRODUCTION OF WALGREENS' DOCUMENTS**

**Introduction**

On January 31, 2019, the Special Master issued Discovery Ruling No. 14, Part 1 ("Ruling"), finding in relevant part that Walgreens had previously waived privilege over a set of twenty-seven (27) documents it produced to the DEA in 2012.[1]  On 2/6/2019 Walgreens filed an objection ("WAG Obj. #1") to the Ruling.[2]  However, on 2/8/2019 the Court issued an Order ("2/8/2019 Order"), finding that WAG Obj. #1 "submitted new evidence, case law, and arguments not first provided to Special Master Cohen", and ordered WAG Obj. #1 to be resubmitted.[3]

After resubmission of WAG Obj. #1, Plaintiffs submitted to Special Master Cohen a response.  On 2/20/2019 the Special Master issued Amended Discovery Ruling No. 14, Part 1 ("Amended Ruling"), which considered the new evidence and arguments, but affirmed the aforementioned Walgreens-related portion the Ruling.[4]  On 2/28/2019, Walgreens filed an objection ("WAG Obj. #2") to the Amended Ruling.[5]  Plaintiffs hereby file this reply.

---

[1] Doc. #: 1321 at pp. 7-8.
[2] Doc. #: 1343.
[3] Doc. #: 1349 at p. 1.
[4] Doc. #: 1380 at pp. 10-14.
[5] Doc. #: 1398.

1

### A.     Factual Background

The underlying dispute involves Walgreens' waiver of privilege over twenty-seven (27) documents it previously produced to the DEA in 2012 relative to an ongoing DEA investigation. Below is a listing of pertinent facts relative to Walgreens's 2012 productions to the DEA:

- On April 4, 2012, DEA served a subpoena ("DEA Subpoena") on Walgreens in connection with an ongoing DEA investigation.[6]

- Thereafter, the DEA agreed that Walgreens could provide a rolling production of documents in response to the DEA subpoena.[7]

- Walgreens' document production procedures involved two in-house counsel manually reviewing documents for <u>responsiveness</u>, and then one outside counsel (David Weinstein) manually reviewing documents for responsiveness and privilege. No technology assisted tools were noted to be used by the attorney who conducted the privilege review.[8]

- From May 4, 2012 to May 25, 2012 Walgreens produced five sets of documents to the DEA in response to the DEA Subpoena.[9]

- On June 8, 2012, Walgreens made its sixth and final production in response to the April 4, 2012 subpoena in the form of a word-searchable compact disc containing approximately 350 documents.[10]

- In total, Walgreens produced several thousand <u>pages</u> of documents to the DEA from approximately 5/4/12 through 6/8/12, and thereafter produced no privilege log for months.[11]

---

[6] *See In re: Administrative Subpoena*, case no. 12-MC-43 (E.D. Va.), docket no. 34 at p. 12 (Nov. 16, 2012) ("11/16/2012 DEA Filing").
[7] *See* Exhibit B to Attachment 1 to WAG Obj. #2 (9/27/2012 Declaration of David Weinstein) ("Weinstein Decl.") at p. 2, ¶ 4.
[8] Weinstein Decl. at p. 2, ¶ 6 ("Two members of the Walgreens Litigation and Regulatory Law Department, Mr. Dwayne Pinon and Ms. Patricia Zagami, manually reviewed collected materials for responsiveness. Prior to producing this data to DEA, I manually reviewed each individual document (including emails) to determine if the document was responsive to the requests made by DEA in its Administrative Subpoena. I also manually reviewed each document (or email) to determine if it was subject to any claim of privilege.").
[9] *Id*. at pp. 2-3, ¶¶ 5 & 9-12.
[10] *Id*. at p. 3, ¶ 14. *See also*, 11/16/2012 DEA Filing at page #6 (PDF page 12).
[11] Weinstein Decl. at p. 3, ¶ 16 ("produced information equivalent to several thousands of pages of documentation from approximately May 4, 2012 through June 8, 2012"); 11/16/2012 DEA Filing at page #2 (PDF page 8).

- On August 9, 2012, Walgreens received correspondence from the DEA (tantamount to a warning or request for a "double-check") requesting confirmation that Walgreens was not asserting privilege over any documents it had produced to the DEA, specifically identifying and asking about emails involving Mr. Pinon, and requesting that Walgreens provide a privilege log relative to any documents over which it was claiming privilege.[12]

- On August 10, 2012, Walgreens emailed a letter to the DEA advising they would notify the DEA of any privilege issues and provide a privilege log "as soon as possible".[13]

- On September 13, 2012 the DEA issued an Immediate Suspension Order ("ISO") to Walgreens' Jupiter facility, and served the ISO on Walgreens on September 14, 2012.[14]

- On September 14, after Walgreens was served with the ISO, Walgreens' counsel emailed a letter to the DEA seeking to claw-back two emails involving Mr. Pinon, claiming that they were inadvertently produced as part of the June 8, 2012 production, and Walgreens did not thereafter attempt to claw-back any documents other than the two emails.[15]

Over the course of approximately two months during the summer of 2012, Walgreens reviewed and eventually produced several thousand <u>pages</u> of documents to the DEA (in response to an administrative subpoena and ongoing DEA investigation).[16] Walgreens' 2012 pre-production privilege review, conducted manually by a single attorney, did not include any technology assisted tools.[17] Moreover, after Walgreens was put on notice about privilege issues

---

[12] *Id*. at p. 4, ¶ 19 ("On or about August 9, 2012, I received a letter from Mr. Lawson requesting a privilege log for Walgreens' response to DEA's Administrative Subpoena.  The letter also queried whether Walgreens planned to assert any privilege over any of the materials already produced to DEA, including emails sent to or from Mr. Pinon.").
[13] *See* Exhibit 3 to Exhibit B to Attachment 1 to WAG Obj. #2 (8/10/2012 letter from D. Weinstein).
[14] 11/16/2012 DEA Filing at page #s 7-8 (PDF pages 13-14).
[15] *Id*. at page # 8 (PDF page 14) ("On September 14, 2012, after DEA served the ISO on Walgreens-Jupiter, and provided a copy of same to counsel, Walgreens' counsel emailed a letter seeking to claw back two documents, one of which DEA relied on in issuing the ISO, claiming that they were "inadvertently and erroneously produced" on June 8."). While Walgreens claimed to have mailed (via regular U.S. Mail) on September 11, 2012, it actually went out on September 12, 2012, and was not received by the DEA until it was emailed on September 14 – as "[t]he mailed letter Walgreens' counsel sent via U.S. Mail only arrived at DEA on September 17." *Id*.
[16] Weinstein Decl. at p. 3, ¶ 16.  Walgreens failed to specify the number of pages it produced to the DEA in 2012, but it produced 1,859 <u>pages</u> of such documents in MDL 2804.  *See* Ex. 4 attached.
[17] *Id*. at p. 2, ¶ 6.  The pre-production privilege review only details a "manual" review, while the post-production review (conducted after the 8/9/2012 warning letter from the DEA) details use of a computer search tool.  *Id*. at p. 4, ¶¶ 22.

3

relative to its productions (via 8/9/2012 correspondence from the DEA) with specific identification of emails involving Dwayne Pinon, Walgreens did not provide the DEA with any claw-back request for **more than a month**.  And, even then, Walgreens only provided the DEA with the claw-back notice after it was served with the ISO, and only attempted to claw-back two emails (which Walgreens separates out in WAG Obj. #1 and WAG Obj. #2).

As for the two emails, after waiting more than a month before attempting to claw them back from the DEA, and after the DEA disagreed with the claw-back and refused to return them, on October 3, 2012 Walgreens filed (in the U.S. District Court for the Eastern District of Virginia) a Motion to Compel Return of Privileged Material ("10/3/2012 MTC") to seeking these two emails (but not any of the other 27 documents at issue).  In its 10/3/2012 supporting memorandum, Walgreens confirmed that it conducted a post-production privilege review (only after the 8/9/2012 warning letter from the DEA) and that it was only attempting to claw-back the two emails.[18]

In response to the 10/3/2012 MTC, the DEA filed memoranda and exhibits outlining that Walgreens had waived privilege by not clawing-back the two emails earlier, and by disclosing the emails (or their substance) to a third-party (Cardinal Health).[19]  In December of 2012, the Virginia court denied the 10/3/2012 MTC, based upon lack of subject matter jurisdiction.[20]  Walgreens has presented no evidence: a) it made any other attempts to claw-back the two emails from the DEA after its 10/3/2012 MTC was denied, b) it ever attempted to claw-back from the DEA any of the other 27 documents at issue, or c) that the DEA ever returned any of the 27 documents at issue.  It is apparent that the DEA still has all 27 of these documents.

---

[18] *See* Attachment 1 to WAG Obj. #2 ("10/3/2012 MTC") at pp. 1-2.
[19] *See* Exhibit 1 attached hereto (10/18/2012 DEA Opposition to 10/3/2012 MTC with Exs. A-D attached thereto); Exhibit 2 attached hereto (11/16/2012 DEA Opposition to 10/3/2012 MTC).
[20] *See In re: Administrative Subpoena*, docket no. 32 (11/9/2012 Magistrate Judge's Report and Recommendation ("R&R") that Walgreens' 10/3/2012 MTC be denied) and docket no. 44 (12/21/2012 Order adopting the R&R following oral argument).

4

**B.    Walgreens Failed to Meet Its Burden of Proving All Three Required Sub-Elements of Fed. R. Evid. 502(b).**

"The party claiming an attorney-client privilege not only bears the burden of proving that the privilege applies, but **must also show that the privilege has not been waived**." *Davis v. Drake*, 2014 WL 5795554, at *4 (N.D. Ohio Nov. 6, 2014) (emphasis added).[21]  Pursuant to Fed. R. Evid. 502(b), a party claiming inadvertent disclosure not resulting in privilege waiver must prove that: (1) "the disclosure is inadvertent"; (2) it "took reasonable steps to prevent disclosure"; and (3) it "promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)".[22]

"Under Rule 502(b), an unintentional disclosure constitutes a waiver **unless all three sub-elements are met**." *Irth Solutions, LLC v. Windstream Communications LLC*, No. 2:16-cv-219, 2017 WL 3276021, at *7 (S.D. Ohio Aug. 2, 2017) (emphasis added).[23]  "[A]pplication of the privilege will be rejected where the only basis for the claim is an affidavit containing conclusory statements."[24]  Rather the proponent of the privilege must submit "**specific and detailed evidentiary material**" such as "affidavits made on personal knowledge, depositions, or answers to interrogatories."[25]  "The risk of non-persuasion arising from a failure to establish facts supporting a claim of privilege falls upon the party asserting it."[26]

---

[21] *See also*, *Liang v. AWG Remarketing, Inc.*, 2015 WL 8958884, *5 (S.D. Ohio 2015) ("As the party seeking protection, [Defendant] bears the burden of establishing the existence of the attorney-client privilege as well as the non-waiver of the privilege.") (Citations omitted); *In re OM Securities Litigation*, 226 F.R.D. 579, 590 (N.D. Ohio 2005).
[22] Fed. R. Evid. 502(b)(1)-(3).  CMO 2 (Doc. #: 441) is not applied to Walgreens' 2012 disclosures.
[23] *See also*, *Barnett v. Hospital*, No. 5:11 CV 399, 2012 WL 12886505, at *2 (N.D. Ohio Apr. 17, 2012) ("Failure to establish all three elements results in a conclusion of waiver.").
[24] *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir.2009) (quoting *U.S. v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006) (emphasis added).
[25] *Id*. at 381-382.
[26] *Lewis v. U.S.*, No. 02–2958B, 2005 WL 1926655 (W.D.Tenn. June 20, 2005) (quoting *Amway Corp. v. Proctor & Gamble Co.*, 2001 WL 1818698, at *4 (W.D. Mich. Apr. 3, 2001)).

These legal standards (e.g., burdens of proof, requirements for specific and detailed evidentiary materials, and risk of failure to establish facts – all falling upon Walgreens as the proponent of the privilege) are well established and have not been challenged by Walgreens. Moreover, these standards are critical in the analysis of Walgreens's claw-back claims at issue. This is because Walgreens fails to provide many necessary details. The applicable rules and jurisprudence require more, and Walgreens's submissions (particularly their lack of required specifics and details) should be viewed through the lens of these legal standards.

Since Walgreens unquestionably produced all 27 documents at issue to the DEA in 2012, and <u>as there was no claw-back order governing that 2012 production</u>, Walgreens will be found to have waived any claim of privilege if it fails to carry its burden of proving that the 2012 production of these documents was inadvertent. The Sixth Circuit has squarely decided that voluntary production of documents to a government agency constitutes a complete waiver of any privilege – including for subsequent civil litigation with other parties. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002). Thus, Walgreens must prove that its 2012 production to the DEA of the 27 documents at issue, as well as its failure to claw-back the documents, meets all elements of Fed. R. Evid. 502(b).

Walgreens has failed to show that its production of 25 of the documents at issue (i.e., all but the 2 emails it attempted to claw-back in 2012) was truly an "inadvertent disclosure." Fed.R.Evid. 502(b)(1). With respect to all 27 of the documents at issue, Walgreens has also failed to show that it "took reasonable steps to prevent disclosure" or "promptly took reasonable steps to rectify the error." Fed.R.Evid. 502(b)(2)-(3). <u>Any</u> of these failures precludes Walgreens from invoking the protections of Rule 502(b) to avoid a finding that it waived privilege that might have attached to the respective documents at issue.

> 1. <u>Walgreens has failed to prove its 2012 DEA production of 25 of the 27 documents at issue was truly "inadvertent".</u>

Walgreens must first prove that its 2012 production to the DEA of the documents at issue was an inadvertent. *See* Fed. R. Evid. 502(b)(1). "When a producing party claims inadvertent disclosure, it has the burden of proving that the disclosure was truly inadvertent."[27] The question for Fed. R. Evid. 502(b)(1) is "whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake."[28]

Walgreens has failed to carry its burden of proving that its 2012 production to the DEA of 25 of the documents at issue (i.e., all those other than the two emails it attempted to claw-back in 2012) was "truly inadvertent". The evidence suggests that counsel for Walgreens in 2012, for whatever reason, did not wish to claw-back anything more than the two emails.[29] In fact, even after it conducted a post-production privilege review (resulting from the DEA's 8/9/2012 alert letter), Walgreens only continued to assert privilege claw-back claims over the two emails.[30] Moreover, Walgreens has refused or failed to come forth with a declaration (or any evidence) outlining that, in 2012, it did not intend to produce to the DEA any documents other than the two emails.[31] Walgreens fails to carry its burden of proving inadvertence for all but the two emails.

---

[27] *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-CV-116, 2012 WL 3731483, at *1 (S.D. Ohio Aug. 28, 2012) (quoting *Fox v. Massey–Ferguson, Inc.*, 172 F.R.D. 653, 671 (E.D. Mich. 1995)). *See also*, *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 850 (E.D. Mich. 2010) (same).
[28] *Coburn Group, LLC v. Whitecap Advisors, LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009).
[29] It is conceivable that, with respect to the 25 documents at issue it did not claw-back, Walgreens: a) wanted to appear to be fully cooperating with the DEA's investigation, b) did not want to seem (to the Virginal court hearing the 10/3/2012 MTC) sloppy with its production, and/or c) wanted to disclose certain documents which it believed at the time assisted its case with the DEA.
[30] *See* 10/3/2012 MTC at pp. 1-2.
[31] *Irth Solutions*, 2017 WL 3276021 at *8-9 ("Defense counsel represented to this Court multiple times, under oath, that the productions at issue were unintentional. However, the individuals best equipped to explain the allegedly unintentional productions were not available to the Court for questioning.").

2. <u>Walgreens has failed to prove that it took reasonable steps to prevent disclosure relative to its 2012 DEA production</u>.

Walgreens must <u>also</u> prove that it "took reasonable steps to prevent disclosure". *See* Fed. R. Evid. 502(b)(2). Consequently, Walgreens needs to set forth specific and detailed proof, through sworn affidavits or other similar evidence, relative to the steps taken to prevent disclosure.[32] Moreover, Walgreens needs to prove that these pre-production steps were sufficiently reasonable to prevent disclosure of privileged materials.[33]

Walgreens has not carried its burden of proving that its 2012 pre-production privilege review constituted "reasonable steps to prevent disclosure". First and second, Walgreens only conducted a one-level pre-production privilege review by a single attorney, and had no apparent quality control testing.[34] Third, Walgreens pre-production privilege review inexplicably did not employ any technology assistance, even though such measures were recommended, available, and used for many years.[35] Fourth, the disclosure of the documents at issue appear to have been from Walgreens' June 8, 2012 production (of 350 documents) to the DEA – representing a relatively large percentage (approximately 8%) of inadvertent productions.[36]

---

[32] *Williams v. District of Columbia*, 806 F. Supp. 2d 44, 48-49 (D.D.C. 2011). *See also*, *Peterson v. Bernardi*, 262 F.R.D. 424, 429 (D.N.J. 2009) (waiver found where privilege holder stated he "engaged in a privilege review", but "does not state when his review occurred, how much time he took to review the documents, what documents were reviewed, and other basic details").
[33] *Id*.
[34] *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 508 (Fed. Cl. 2009) (denying protection under Rule 502(b) where the defendant showed only that he reviewed the relevant material twice); *Rhoads Industries v. Building Materials Corp. of America*, 254 F.R.D. 216, 224 (E.D. Pa. 2008) (only one level of privilege review with no QC factors against finding reasonable steps were taken).
[35] *See* Fed. R. Evid. 502, Advisory Committee Notes (Nov. 28, 2007) cmt. b. ("Depending on the circumstances, a party that uses advanced analytical software applications and linguistic tools in screening for privilege and work product may be found to have taken 'reasonable steps' to prevent inadvertent disclosure."). *See also*, *Victor Stanley, Inc. v. Creative Pipe, Inc*., 250 F.R.D. 251, 260 (D. Md. 2008) ("keyword searches have long been recognized as appropriate and helpful").
[36] *United States ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11–cv–58, 2014 WL 5767042, *6 (S.D. Ga. Nov. 5, 2014) (inadvertent disclosure of 1 document out of 30,000 produced waived

Finally, Walgreens did not even provide the DEA with a privilege log as required by Federal Rule of Civil Procedure 26(b)(5)(B).[37] In the context of a party claiming applicability R. Evid. 502(b), such failure to timely submit a privilege log weighs in favor of finding that the producing party did not take reasonable steps to prevent disclosure.[38] Thus, for these various reasons, Walgreens has failed to carry its burden of proving that its 2012 pre-production efforts were sufficiently reasonable to prevent disclosure of privileged materials.

> 3. <u>Walgreens has failed to prove that it took prompt reasonable steps to rectify the error</u>.

Walgreens must <u>also</u> prove that it "promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)" relative to its 2012 DEA production. *See* Fed. R. Evid. 502(b)(3). While "the rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake", it "**does require the producing party to follow up on <u>any</u> obvious indications that a protected communication or information has been produced inadvertently.**"[39] "As a result, once a party is on notice that 'something [i]s amiss with its document production and privilege review [,]' that party must "promptly re-assess its procedures and re-check its production." *D'Onofrio v. Borough of Seaside Park*, No. 09–6220,

---

privilege, as court not willing to assume only one document was inadvertently disclosed). *See also*, *Evenflo Co. v. Hantec Agents Ltd.*, 2006 WL 2945440, *6 (S.D. Ohio Oct.13, 2006) (inadvertent disclosure of 134 pages in a 10,085-page production waived privilege); *Dyson v. Amway Corp.*, No. G88–CV–60, 1990 WL 290683 (W.D.Mich. Nov.15, 1990) (inadvertent disclosure of 93 documents out of 15,000 documents waived privilege).

[37] Weinstein Decl. at p. 4, ¶ 19 ("On or about August 9, 2012, I received a letter from Mr. Lawson requesting a privilege log for Walgreens' response to DEA's Administrative Subpoena.").

[38] *EEOC v. Office Concepts*, 2015 WL 9308268, at *6 (N.D. Ind. Dec. 22 2015) ("The Court notes that in order to claim the protections offered by attorney-client privilege, the producing party must produce a timely and adequate privilege log.").

[39] Fed. R. Evid. 502, Advisory Committee Notes (Nov. 28, 2007) cmt. b. (Emphasis added).

2012 WL 1949854, at *15 (D.N.J. May 30, 2012) (citing *U.S. v. Sensient Colors, Inc.*, 2009 WL 2905474, at *5 (D.N.J. 2009).[40]

Relative to its 2012 DEA production, Walgreens was aware, back in 2012, that it had significant inadvertent production issues.  On 8/9/2012 the DEA alerted Walgreens to privilege issues with the production, including documents specifically involving Walgreens in-house counsel (Dwayne Pinon), and requested Walgreens to provide a privilege log.[41]  This was an "obvious indication" to Walgreens in 2008 that "something was amiss with its document production and privilege review" requiring it to "promptly re-assess its procedures and re-check its production."[42]  In fact, Walgreens admits that this 8/9/2012 letter alerted it to such a degree that it conducted a <u>post-production</u> privilege review.[43]  From that point, what Walgreens did (or did not do) relative its inadvertent production issues can be separated by the two emails it attempted to claw back, and the remaining 25 documents it never attempted to claw-back.

With respect to the two emails which it did attempt to claw-back, Walgreens waited **more than a month** after receiving the DEA's 8/9/2012 alert letter.  This alone provides ample support for a finding that Walgreens did not "promptly t[ake] reasonable steps to rectify the error".  Courts require a party aware of an inadvertent production to assert a claw-back claim sooner than a month

---

[40] *See also*, *Preferred Care Partners Holding Crop v. Humana, Inc.*, 258 F.R.D. 684, 700 (S.D.Fla. 2009) ("In light of the fact that Humana was aware that it inadvertently produced a number of documents which it believed to contain privileged information, Humana had an obligation ... to ensure that no additional privileged documents were divulged.").

[41] Weinstein Decl. at p. 4, ¶ 19 ("On or about August 9, 2012, I received a letter from Mr. Lawson requesting a privilege log for Walgreens' response to DEA's Administrative Subpoena.  The letter also queried whether Walgreens planned to assert any privilege over any of the materials already produced to DEA, including emails sent to or from Mr. Pinon.").

[42] Fed. R. Evid. 502, Advisory Committee Notes (Nov. 28, 2007) cmt. b.  *See also, Sensient*, 2009 WL 2905474, at *5.

[43] Weinstein Decl. at p. 4, ¶ 21 ("After receiving Mr. Lawson's letter, I began to perform a second review of Walgreens' document production for any potentially privileged materials.").

after of notice.⁴⁴ As a comparison, the case management order in this litigation allows the producing party seven (7) days to assert a claw-back claim, and deems the privilege waived if not made within such time period.⁴⁵ In fact, Walgreens' steps to rectify the error were late to a point that the DEA issued the September 13, 2012 ISO (relying in part on the two emails) prior to receiving Walgreens claw-back claim. However, Walgreens' other conduct relative to the two emails provide even further support for a finding that it did not satisfy Fed. R. Evid. 502(b)(3).

After the 9/13/2012 ISO was issued, Walgreens did bring the 10/3/2012 MTC. However, by December 21, 2012, Walgreens was aware that its 10/3/2012 MTC was denied (for lack of subject matter jurisdiction) and that it would need to bring a different action in order to properly claw-back the two emails.⁴⁶ Before, during or after the 12/21/2012 denial of its 10/3/2012 MTC, Walgreens had the opportunity to pursue relief in either of two <u>valid</u> forums (before an Administrative Law Judge, or in the D.C. Circuit where Walgreens was contesting the ISO), yet

---

⁴⁴ *See e.g., Williams v. Allstate Fire and Cas. Ins. Co.*, No. CIV–13–828–D, 2015 WL 1602054, *5 (W.D. Okla. 2015) (After waiting 19 days from discovery of the inadvertent disclosure, "[p]laintiff failed to act in a timely manner to 'claw back' the documents and prevent a waiver of privilege and work product protection."); *Preferred Care*, 258 F.R.D. at 699–700 (waiver of privilege found where party claiming privilege waited three-weeks to assert a privilege claim); *United States v. Ary*, 518 F.3d 775, 785 (10th Cir.2008) (finding assertion of privilege six weeks after learning of disclosure to be untimely); *MG Capital LLC v. Sullivan*, No. 01-C-5815, 2002 WL 1424560, *4 (N.D. Ill. 2002) ("[W]aiting almost a month [to seek court intervention] after having knowledge that [opposing party] had possession of a privileged document, and that [opposing party] refused to return such document, was not a reasonable and appropriate response to rectify the error in a timely manner.").

⁴⁵ *See* MDL 2804 Protective Order (Doc. #: 441) at p. 25, ¶ 54 ("In the event that a Receiving Party receives information that it believes is subject to a good faith claim of privilege by the Designating Party, the Receiving Party shall immediately refrain from examining the information and shall promptly notify the Designating Party in writing that the Receiving Party possesses potentially Privileged Information. The Designating Party shall have seven (7) days to assert privilege over the identified information. If the Designating Party does not assert a claim of privilege within the 7-day period, the information in question shall be deemed non-privileged.").

⁴⁶ *See In re: Administrative Subpoena*, docket no. 32 (11/9/2012 Magistrate Judge's Report and Recommendation ("R&R") that Walgreens' 10/3/2012 MTC be denied) and docket no. 44 (12/21/2012 Order adopting the R&R following oral argument).

chose not to do so.[47] Rather than rectify its error, Walgreens abandoned its efforts, and abandoned its ability to carry its burden of proving it took reasonable steps to rectify the error.

With respect to the 25 documents it never attempted to claw-back, Walgreens should have been on notice of these documents after the 8/9/2012 DEA alert letter. However, Walgreens either purposefully chose to do nothing, or negligently failed to realize the issues. If it was a purposeful decision (and the evidence indicates that it was), then Walgreens fails to meet Fed. R. Evid. 502(b)(1), and no further analysis is required. If the failure to claw-back the 25 documents was from a failure to realize the issues, then Walgreens did not take reasonable precautions to rectify the inadvertent production errors once it was on notice of the overall problem by 8/9/2012.[48] Walgreens' post-production privilege review may have been too narrow, or not thorough enough, however, the lack of specifics and details is to Walgreens' detriment, as it has the burden of proof.[49] Moreover, in the context of Fed. R. Evid. 502(b)(3), "hiding one's head in the sand is not a basis for non-waiver." *United States v. HCA Holdings Inc.*, 2015 WL 11198933, *7 (S.D. Fla. 2015). Finally, Walgreens failed in 2012 to produce a timely privilege log relative to any documents – which Fed. R. Evid. 502(b) specifically mentions as a factor, and which is considered by courts.[50]

---

[47] *See* Ex. 2 attached hereto (11/16/2012 DEA Filing) at p. 14 ("Walgreens therefore remains free to pursue its privilege claim in the administrative forum that DEA is statutorily obligated to provide. … Walgreens has also challenged the ISO in federal court ... Should it elect to do so, Walgreens may raise the privilege issue as part of its larger challenge to the validity of the ISO.").
[48] *Sensient*, 2009 WL 2905474, at *5. (After failing to take prompt and diligent steps to re-assess its document production and privilege issues within approximately 2 months of learning of its first set of inadvertent disclosures, the court held that "plaintiff did not take reasonable precautions to rectify its error. Therefore, since plaintiff did not satisfy its burden under Rule 502(b)(3), it waived its privilege and work product [claims]").
[49] *Irth Solutions*, 2017 WL 3276021, at *7.
[50] *See* Weinstein Decl. at p. 4, ¶ 19 ("On or about August 9, 2012, I received a letter from Mr. Lawson requesting a privilege log for Walgreens' response to DEA's Administrative Subpoena."). *See also*, *Office Concepts*, 2015 WL 9308268, at *6 ("The Court notes that in order to claim the protections offered by attorney-client privilege, the producing party must produce a timely and adequate privilege log.").

### C. Additional/Supplemental Bases for Waiver

There also exist two additional and/or supplemental bases for finding that, prior to MDL 2804, Walgreens had waived any potential privilege over the documents at issue. First, Walgreens' June 11, 2013 settlement with the DEA provided even more reason for Walgreens to follow-up on its inadvertent production issues and/or allowed the DEA to keep the two emails at issue in the privilege dispute. Second, Walgreens waived privilege over the two emails when it disclosed the substance of same to a third party – Cardinal Health. Finally, aside from these additional and/or supplemental bases, Walgreens' argument regarding the implications (in MDL 2804) of the Amended Ruling are inapplicable.

#### 1. Special Master Cohen Necessarily and Accurately Addressed Walgreens's 2008 DEA Settlement.

As an initial matter, prior to its June 2013 settlement with the DEA, Walgreens had almost 6 months to make initial efforts (relative to the 25 documents) or further attempts (relative to the 2 emails) to claw-back the documents at issue. Walgreens either chose or failed to do so. Moreover, Walgreens' need to further pursue inadvertent privilege issues did not disappear after the DEA settlement. In fact, Walgreens' 6/11/2013 settlement with the DEA ("DEA settlement") dictated that Walgreens would have several extra ongoing obligations to the DEA – in some instances for years.[51] Moreover, and maybe most notably, the settlement **reserved the DEA's right to seek to introduce evidence of Walgreens's pre-settlement conduct in any other administrative proceeding against Walgreens for non-covered conduct**.[52] Additionally, this reservation covered all government agencies, allowing the DoJ, any State attorney general, etc. to initiate any proceeding/action against Walgreens, and allowed the DEA to cooperate with any such

---

[51] *See* Ex. 3 attached hereto – 6/11/2013 Walgreens/DEA Settlement, at pp. 5-7.
[52] *Id*. at p. 8, ¶ 7.

13

agency.[53]  Contrary to its suggestion, Walgreens plenty of time to claw-back the documents before the settlement, and it had many reasons to continue privilege review efforts after the settlement.

Separately, and specific to the two emails which Walgreens sued the DEA over, the DEA settlement released the DEA from any and all relevant claims – thus allowing the DEA to keep the two emails.  Walgreens fully released all claims against the DEA, including any "which Walgreens has asserted, could have asserted, or may assert in the future" related to the DEA's "investigation and prosecution" of Walgreens.[54]  Since Walgreens knew that the DEA had retained the two emails and refused to return them, the DEA settlement foreclosed any of Walgreens' legal rights to seek return of those documents – thereby further waiving any privilege claim.

        2.    <u>Walgreens waived privilege over the two emails when it provided or disclosed them (or their substance) to Cardinal</u>.

"The attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties."  *United States v. Dakota*, 197 F.3d 821, 825-26 (6th Cir.2000).  "The party claiming an attorney-client privilege not only bears the burden of proving that the privilege applies, but must also show that the privilege has not been waived."[55]

As outlined by the DEA in its filing of 10/18/2012 (including the declaration and exhibits A-D submitted therewith),[56] "Walgreens voluntarily disclosed to a competitor, Cardinal Health, the September 13, 2012 Immediate Suspension Order ('ISO') DEA issued to Walgreens'

---

[53] *Id*.

[54] *Id*. at p. 9, ¶ 8 ("Walgreens fully and finally releases the United States of America, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which Walgreens has asserted, could have asserted, or may assert in the future against the United States of America, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.").

[55] *Davis*, 2014 WL 5795554, at *4.

[56] *See* Exhibit 1 attached hereto (adopted and incorporated by reference).

14

distribution facility in Jupiter, Florida."[57] And, "[t]he ISO contains the putatively privileged materials at issue in this litigation [Walgreen's original action in the Eastern District of Virginia to compel the return of the documents]."[58] Thus, there exists an additional basis for determining that Walgreens had waived any privilege over the 2 clawed-back emails – because Walgreens voluntarily provided those materials to a competitor outside of any litigation (making any proof of "inadvertence" unnecessary and ending the inquiry).

        3.    <u>Walgreens' argument about the implications of the Amended Ruling is inapplicable</u>.

Walgreens argues that the instant litigation "illustrates the untenable consequences of the Special Master's ruling" as it would have detrimental consequences on the parties herein.[59] Such an argument is inapplicable for several reasons. First, while there was no claw-back order in place relative to the 2012 DEA investigation, there is such an order in MDL 2804 – providing "maximum protection" under Fed. R. Evid. 502(b).[60] The Amended Order is based on Walgreens' waiver in 2012, not on its MDL 2804 production in 2018. Second, Walgreens' document production to the DEA in 2012 (of less than 2,000 <u>pages</u>) is not analogous to the parties' productions (of millions of <u>documents</u>) in MDL 2804. Third, if one were to use MDL 2804 as a guide, Walgreens should have clawed-back the two emails within 7 days of receiving the DEA's 8/9/2012 alert letter.[61]

## CONCLUSION

Based on the foregoing reasoning and argument, Walgreens' Objections to Amended Discovery Ruling No. 14 should be overruled.

---

[57] *Id.* at p. 1. *See also*, Exhibit 1A, at ¶¶8-9.
[58] *Id.*
[59] *See* WAG Obj. #1 at p. 4; WAG Obj. #2 at p. 6.
[60] MDL 2804 Protective Order (Doc. #: 441) at pp. 25-28.
[61] *Id.* at p. 25, ¶ 54.

Dated: March 6, 2019					Respectfully submitted,


							/s/ Hunter J. Shkolnik_____
							Hunter J. Shkolnik (admitted pro hac vice)
							Salvatore C. Badala (admitted pro hac vice)
							Joseph L. Ciaccio (admitted pro hac vice)
							Napoli Shkolnik PLLC
							360 Lexington Avenue
							New York, New York 10017
							Phone: (212) 397-1000
							hunter@napolilaw.com
							sbadala@napolilaw.com
							jciaccio@napolilaw.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of March, 2019, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.


							/s/ Hunter J. Shkolnik_____

16