RECEIVED

# —UNDER SEAL—

2012 OCT 16 P 4: 09

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| IN RE ADMINISTRATIVE SUBPOENA | ) | Civil Action No. 1:12-mc-43 |
| | ) | (JCC/IDD) |
| | ) | |
| | ) | REDACTED |

## RESPONDENT DRUG ENFORCEMENT ADMINISTRATION'S OPPOSITION TO MOVANT WALGREEN CO.'S MOTION TO COMPEL RETURN OF DOCUMENTS

*FILED **UNDER SEAL** PURSUANT TO LOCAL CIVIL RULE 5, PENDING DISPOSITION OF WALGREENS CO.'S MOTION TO SEAL (DKT 14).*
*SEE NOTICE OF FILING UNDER SEAL (DKT 16).*

An unredacted copy of this Opposition will be sent to counsel for Walgreens by email today.

Respectfully submitted,

NEIL H. MacBRIDE
UNITED STATES ATTORNEY

By: _____

Bernard Kim
Assistant United States Attorney
Justin W. Williams U. S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3911 (direct)
(703) 299-3983 (fax)
bernard.kim@usdoj.gov
*Attorney for the*
*U.S. Drug Enforcement Administration*

DATED: October 16, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| IN RE: ADMINISTRATIVE SUBPOENA | ) | |
| | ) | |
| | ) | Miscellaneous Action No. 1:12-MC-43 |
| | ) | (JCC/IDD) |
| | ) | |
| | ) | |
| | ) | |

## RESPONDENT DRUG ENFORCEMENT ADMINISTRATION'S OPPOSITION TO MOVANT WALGREEN CO.'S MOTION TO COMPEL RETURN OF DOCUMENTS

TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND ............................................................................ 5

ARGUMENT ..................................................................................................... 9

I.     THIS COURT LACKS JURISDICTION TO DECIDE
MOVANT'S MOTION TO COMPEL ............................................. 9

II.    WALGREENS HAS FAILED TO IDENTIFY A VALID
CAUSE OF ACTION ................................................................... 11

III.   WALGREENS' PRIVILEGE ASSERTION
IS MERITLESS ............................................................................ 16

    A.    WALGREENS HAS WAIVED ITS CLAIM OF
ATTORNEY-CLIENT PRIVILEGE ................................ 17

        1.   Walgreens Selective and Strategic Invocation Of
Privilege Constitutes A Subject Matter Waiver.... 17

        2.   Walgreens' Efforts To Safeguard the Attorney-
Client Privilege Were Not Reasonable. ................ 21

    B.    BECAUSE THE DOCUMENTS AT ISSUE DISCUSS
██████████████████████, THE CRIME-FRAUD EXCEPTION
APPLIES ........................................................................ 27

CONCLUSION ............................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Apostolic Pentecostal Church v. Colbert*,
    169 F.3d 409 (6th Cir. 1998) ........................................................................ 13

*Army & Air Force Exch. Serv. v. Sheehan*,
    456 U.S. 728 (1982) ...................................................................................... 12

*Bobula v. U.S. Dep't of Justice*,
    970 F.2d 854 (Fed. Cir. 1992) ...................................................................... 10

*Bud Antle, Inc. v. Grow-Tech, Inc.*,
    131 F.R.D. 179 (N.D. Cal. 1990) ........................................................... 25, 27

*Cleveland Hair Clinic, Inc. v. Puig*,
    968 F. Supp. 1227 (N.D. Ill. 1996) .............................................................. 28

*Coleman v. Am. Broad Cos.*,
    106 F.R.D. 201 (D.D.C. 1985) ..................................................................... 28

*Cresswell v. Sullivan & Cromwell*,
    922 F.2d 60 (2d Cir. 1990) ........................................................................... 11

*Davis v. Passman*,
    442 U.S. 228 n.18 (1979) ........................................................................ 11, 12

*Emp'rs Ins. of Wausau v. Musick, Peeler & Garrett*,
    954 F.2d 575 (9th Cir. 1992) ........................................................................ 12

*F.D.I.C. v. Marine Midland Realty Credit Corp.*,
    138 F.R.D. 479 (E.D. Va. 1991) .................................................................. 25

*Hunsucker v. Phinney*,
    497 F.2d 29 (5th Cir. 1974) .......................................................................... 10

*In re Grand Jury Proceedings*,
    219 F.3d 175 (2d Cir. 2000) ......................................................................... 19

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982) ..................................................................... 28

*Jones v. Alexander*,
    609 F.2d 778 (5th Cir. 1980) ........................................................................ 10

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
      529 F.3d 371 (7th Cir. 2008)............................................................................. 21

*Kenrose Mfg. Co. v. Fred Whitaker, Inc.*,
      512 F.2d 890 (4th Cir. 1972)............................................................................. 11

*Lee v. Thornton*,
      420 U.S. 139 (1975).......................................................................................... 10

*N.L.R.B. v. Interbake Foods, LLC*,
      637 F.3d 492 (4th Cir. 2011).......................................................................14, 22

*New York News, Inc. v. Kheel*,
      972 F.2d 482 (2d Cir. 1992).............................................................................. 12

*NLRB v. Interbake Foods, LLC*,
      2009 WL 3103819 (D. Md. Sept. 22, 2009)...................................................... 14

*Owen Equip. & Erection Co. v. Kroger*,
      437 U.S. 365 (1978)........................................................................................... 11

*Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*,
      116 F.R.D. 46 (M.D.N.C. 1987) ...................................................................22, 25

*Parrott v. Wilson*,
      707 F.2d 1262 (11th Cir. 1983).......................................................................... 27

*Rambus, Inc. v. Infineon Techs. AG*,
      222 F.R.D. 280 (E.D. Va. 2004) .....................................................................27, 29

*Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*,
      254 F.R.D. 216 (N.D. Cal. 1990)........................................................................ 26

*Richardson v. Morris*,
      409 U.S. 464 (1973)........................................................................................... 10

*Silverstein v. Fed. Bureau of Prisons*,
      2009 WL 4949959 (D. Colo. Dec. 14, 2009)..................................................... 18

*Simanonok v. Simanonok*,
      918 F.2d 947 (Fed. Cir. 1990) ........................................................................... 10

*Simmat v. U.S. Bureau of Prisons*,
      413 F.3d 1225 (10th Cir. 2005).......................................................................... 11

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................................................ 9

*Stephens v. U.S. Dept. of Navy*,
    589 F.2d 783 (4th Cir. 1979) ......................................................................................... 12

*United States v. de la Jara*,
    973 F.2d 746 (9th Cir. 1992) ......................................................................................... 22

*United States v. Lentz*,
    419 F. Supp. 2d 820 (E.D. Va. 2005) ........................................................................... 28

*United States v. Lentz*,
    524 F.3d 501 (4th Cir. 2008) ......................................................................................... 17

*United States v. Mitchell*,
    463 U.S. 206 (1983) ....................................................................................................... 12

*United States v. Testan*,
    424 U.S. 392 (1976) ....................................................................................................... 12

*United States v. Treacy*,
    2009 WL 812033 (S.D.N.Y. Mar. 24, 2009) ................................................................ 19

*Werner v. U.S. Dep't of Interior*,
    581 F.2d 168 (8th Cir. 1978) ......................................................................................... 10

## Statutes

21 U.S.C. § 822 ....................................................................................................................... 6

21 U.S.C. § 824 ..................................................................................................................... 14

21 U.S.C. § 877 ..................................................................................................................... 14

28 U.S.C. § 1346 ............................................................................................................. passim

28 U.S.C. § 2072 ................................................................................................................... 13

### INTRODUCTION

Pursuant to 28 U.S.C. § 1346(a)(2) and Federal Rule of Civil Procedure 26(b)(5)(B), movant Walgreen Company ("Walgreens" or "Movant") has filed this "miscellaneous action" seeking an order compelling respondent Drug Enforcement Administration ("DEA") to return certain documents Walgreens claims are subject to attorney-client privilege. This Court should deny Walgreens' request for three reasons. First, this Court lacks subject matter jurisdiction to adjudicate this matter. Second, Walgreens has failed to identify a valid cause of action. Third, Walgreens' privilege assertion is meritless. For each of these separate and independent reasons, this Court should deny Walgreens' request to compel DEA to return the documents at issue.

Through its network of subsidiaries, Walgreens distributes and dispenses controlled substances. Concerned that Walgreens was not upholding its legal obligation to prevent controlled substances (and in particular the highly addictive painkiller oxycodone) within its control from being diverted into illegal sales, DEA issued a subpoena for documents to Walgreens in April 2012 related to a Walgreens distribution facility in Jupiter, Florida, and six Walgreens retail pharmacies, also in Florida.

On June 8, 2012, Walgreens produced various documents in response to the April subpoena. ████████████████████████████████████

████████ ████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████



Yet, judging from this email chain, Walgreens' █████████████████████

██████████████████████████████████. Equally concerning to

DEA was the fact that the email chain also reflects that Walgreens █████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

Relying "significantly" on the email chain in question, DEA issued an Immediate

Suspension Order ("ISO") on September 13, 2012 to Walgreens' Jupiter facility. *See* Order to

Show Cause and Immediate Suspension of Registration (September 13, 2012) ("Ex. 6").

Although Walgreens strives mightily to blame DEA for its current predicament, Walgreens has

only itself to blame. It produced no privilege log for months after it completed its production in

response to the April subpoena, although an accompanying letter assured DEA that the materials

it had produced (which included 61 documents involving Mr. Pinon) had been screened by three

attorneys for privilege and a privilege log would be provided "in due course." What is more,

when DEA contacted Walgreens to confirm that Walgreens was not claiming privilege over a

narrow category of documents — emails sent to or from Mr. Pinon — Walgreens failed to respond *for over a month*.  Now, after DEA took action based in part on these documents, Walgreens seeks a judicial order essentially excusing it of its numerous missteps.  Through this "miscellaneous action," Walgreens asks this Court to compel DEA to return documents that DEA has already seen and evaluated, and on which it has inarguably relied, based on nothing more than Walgreens' belated privilege assertion.  As explained in more detail below, this relief is unwarranted.

First, this Court lacks jurisdiction to entertain this miscellaneous action in which Movant seeks only injunctive relief.  The Supreme Court and legions of other courts have held that the sole jurisdictional provision Walgreens cites, 28 U.S.C. § 1346(a)(2), does not confer district court jurisdiction over claims for purely injunctive relief.  Although Movant discusses Federal Rules of Civil Procedure 26 and 81 at length, the Federal Rules of Civil Procedure do not confer jurisdiction; they merely regulate the conduct of parties otherwise properly before the court.  Nor has Walgreens identified a valid cause of action.  This is not to suggest that Walgreens has no avenues to litigate its privilege dispute with DEA.  To the contrary, it has two options, both of which it has exercised.  Walgreens may raise the privilege issue in administrative proceedings before the DEA related to its registration suspension — proceedings that are already underway.  Or, Walgreens can litigate the privilege issue in federal court as a subsidiary issue within a broader challenge to the ISO, which Walgreens has recently filed in the D.C. Circuit.  But Walgreens cannot simply file a freestanding action related to the putatively privileged documents without a proper basis for federal court jurisdiction.  Accordingly, this Court must dismiss Walgreens' miscellaneous action.

Second, should the Court elect to reach the merits, Walgreens' privilege assertion would fare equally poorly.  It is important to note that Walgreens does not seek the return of all documents that it has produced to DEA which reflect advice that Mr. Pinon has provided to Walgreens.  Rather, Walgreens seeks to retrieve only the subset of documents involving Mr. Pinon ███████████████████████████████.  Having now reviewed documents produced to DEA involving Mr. Pinon twice — once before the initial production and again after DEA's August 9 "alert" letter — Walgreens is evidently content to allow DEA to retain a subset of documents in which ███████████████████████████████ ███████████████████████.  Such strategic disclosure constitutes a subject matter waiver over all diversion-related communications or information that otherwise could be withheld as privileged.

Next, although Walgreens insists that it acted reasonably in seeking the return of the two documents in question, it never explains why.  Walgreens does not even attempt to argue why the Court should excuse its failure to respond to DEA's alert letter for over a month, let alone cite any authority for this proposition.  Nor does Walgreens attempt to explain why when it finally did respond, Walgreens chose perhaps the slowest form of communication possible.  Having failed to respond for over a month, Walgreens curiously chose this occasion to be the first and only time it communicated with DEA by, and only by, U.S. Mail.  This is hardly the sense of urgency one would expect from a party on notice that it had placed its attorney-client privilege in jeopardy.

Walgreens similarly fails to acknowledge DEA's substantial reliance on the documents in question.  It is undisputed that DEA placed significant weight on these documents; the ISO itself expressly states as much.  Walgreens correctly does not argue that DEA was wrong to rely on

these documents when it issued the ISO, as Walgreens had yet even to convey any claim of privilege to DEA related to these documents. Rather, Walgreens' argument seems to be that DEA cannot rely on them any more. DEA, however, is under no obligation to undo agency action because of Walgreens' belated privilege assertion — particularly given that Walgreens has not even attempted to offer any explanation that could possibly justify its extended delay. In any event, it is unrealistic to think that DEA can simply forget what it has learned from reviewing and considering documents that Walgreens produced.

The reason that these documents are so memorable is immediately apparent from the face of the documents themselves. They indicate a . Accordingly, even if Walgreens had not waived any claim of attorney-client privilege over these materials, they would fall within the well-established "crime-fraud" exception to the privilege. For all of these reasons, this Court should refuse to compel DEA to return the documents at issue in the event that this Court reaches the merits.

## FACTUAL BACKGROUND

For several years, controlled substances — and oxycodone in particular — have been diverted to the black market for illegitimate use in alarming quantities. By law, every entity that

---

[1]     To be clear, DEA is not in any way suggesting that Walgreens' outside counsel had any knowledge of or involvement with any aspect of the conduct discussed in the documents in question.

distributes or dispenses controlled substances must maintain a DEA registration. *See* Declaration

of Scott Lawson (October 15, 2012) ("Lawson Decl." attached as Ex. A) ¶ 2 (citing 21 U.S.C. §

822). Among other obligations, all DEA registrants must take adequate precautions to safeguard

against diversion. *Id.* ¶ 4. Troubled that Walgreens appeared to have failed to have taken

adequate precautions to prevent diversion, DEA served a subpoena to Walgreens on April 4,

2012 in connection with its investigation into a Walgreens distribution facility and six Walgreens

retail pharmacies. *See* Lawson Decl. ¶ 6; DEA subpoena (March 19, 2012) ("Ex. 1"). The

distribution facility is located in Jupiter, Florida; all of the retail stores are also located in Florida.

On June 8, 2012, Walgreens made its fifth and final production in response to the April 4,

2012 subpoena in the form of a word-searchable compact disc containing approximately 350

documents, all but approximately 10 of which were an email or string of emails in either .pdf or

Microsoft Outlook format. *See* Lawson Decl. ¶¶ 8, 9; Letter from D. Weinstein to S. Langston

and S. Lawson (June 8, 2012) ("Ex. 2") at 1. Walgreens produced no privilege log with this

production. *See* Lawson Decl. ¶ 9; Ex. 2 at 1. But an accompanying cover letter stated that two

Walgreens' in-house attorneys and an outside counsel had conducted a review of the produced

materials "to verify that the materials were non-privileged and responsive to the four (4)

categories of requests set forth in [the subpoena]" and promised a privilege log "in due course."

Ex. 2 at 3, ¶ 6. One of the documents Walgreens produced was an email chain involving various

Walgreens personnel, including a Walgreens corporate attorney, Mr. Pinon. *See* Lawson Decl. ¶

10; E-mail from D. Pinon to E. Svihra (May 17, 2011) ("Ex. 3") at 004.



This email chain discussed a ███████████████████████████████

██████████████████████████████████████████████

████████ Ex. 3.



         . Ex. 3 at 004.

         *Id.*

         Ex. 3 at 003.

         *Id.*

On August 9, 2012, DEA wrote a letter to Walgreens requesting that Walgreens produce a privilege log, and also wrote to confirm that, in view of Walgreens' privilege certification letter that accompanied the June 8 production, that "Walgreens is not asserting any privilege over the materials [it] ha[s] provided [in response to the subpoena], to include emails sent to or from Dwayne Pinon." Letter from S. Lawson to D. Weinstein and A. Fisher (August 9, 2012) ("Ex. 4") at 1. *See* Lawson Decl. ¶ 11.

Walgreens' outside counsel responded the following day by letter dated August 10, emailed to DEA on that date. *See* Lawson Decl. ¶ 12. The letter stated that "[a]s to your questions regarding the privilege log and related privilege issues that you raised in your letter, we are currently processing this information and will send you a privilege log, along with any qualifying information, as soon as possible." Letter from A. Fisher, P. Perry, and D. Weinstein to S. Lawson (August 10, 2012) ("Ex. 5") at 1.

For more than a month, DEA heard nothing from Walgreens. *See* Lawson Decl. ¶ 13. On September 13, 2012, the Administrator signed an ISO for Walgreens' Jupiter facility. *See* Ex. 6. In this order, the Administrator noted that



*Id. See also id.* ¶¶ 18, 22 (also discussing allegedly privileged email).

On September 14, 2012, after DEA served the ISO on Walgreens-Jupiter, and provided a copy of same to counsel, Walgreens' counsel emailed a letter seeking to claw back two documents, one of which DEA relied on in issuing the ISO, claiming that they were "inadvertently and erroneously produced" on June 8. *See* Lawson Decl. ¶ 15; E-mail from A. Fisher to S. Lawson (September 14, 2012) ("Ex. 7"). Walgreens has not asserted a claim of attorney-client privilege as to any other documents involving Mr. Pinon that it has produced to DEA. Furthermore, prior to this email, DEA did not have any indication that Walgreens was asserting any claim of privilege as to these materials. *See* Lawson Decl. ¶ 16. Walgreens' claw-back letter is dated September 10, 2012, but it is undisputed that DEA did not have this letter when the Administrator signed the ISO on September 13. *Id.* Although the letter is dated September 10, it was postmarked September 12th. *See* Lawson Decl. ¶ 17; Letter from D. Weinstein to S. Lawson (Sept. 10, 2012) ("Ex. 9"). Walgreens did not email this letter to DEA prior to September 14, nor did it send a contemporaneous copy via expedited carrier. *See* Lawson Decl. ¶ 16; E-mail from S. Lawson to A. Fisher (September 14, 2012) ("Ex. 8"). The mailed letter Walgreens' counsel sent via U.S. Mail only arrived at DEA on September 17. *See* Lawson Decl. ¶ 17; Ex. 9.

On October 3, 2012, Movant filed this "miscellaneous action" seeking an order compelling DEA to return the putatively privileged documents.

On October 10, 2012, Movant filed a petition for review of the ISO in the D.C. Circuit. *See* Walgreens' Petition for Review (October 10, 2012) ("Ex. 17"). In that petition, Walgreens stated that it "intends to contest the allegations in the ISO during an administrative hearing regarding permanent revocation of the Jupiter registration." Ex. 17 at 4 n.1. Administrative proceedings are already underway, and a hearing before a DEA ALJ is scheduled for November 13, 2012. Ex. 6 at 1; Walgreens' Motion to Continue (October 12, 2012) ("Ex. 13") at 1. On October 12, 2012, Walgreens sought to continue the ALJ hearing by almost a month, until at least December 4, 2012. Ex. 13 at 1.

## ARGUMENT

## I.    THIS COURT LACKS JURISDICTION TO DECIDE MOVANT'S MOTION TO COMPEL

As the Supreme Court has recognized, this Court cannot address the merits of Movant's motion unless and until it has determined that Article III jurisdiction is proper. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). Movant identifies a single jurisdictional provision, 28 U.S.C. § 1346(a)(2), which it argues confers jurisdiction on this Court to compel DEA to return the putatively privileged documents. Mov's. Mem. at 4.

Section 1346(a)(2), commonly known as the Little Tucker Act, provides in pertinent part that:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

* * *

> Any other civil action or claim against the United States, not exceeding $10,000
> in amount, founded either upon the Constitution, or any Act of Congress, or any
> regulation of an executive department, or upon any express or implied contract
> with the United States, or for liquidated or unliquidated damages in cases not
> sounding in tort, except that the district courts shall not have jurisdiction of any
> civil action or claim against the United States founded upon any express or
> implied contract with the United States or for liquidated or unliquidated damages
> in cases not sounding in tort which are subject to sections 7104(b)(1) and
> 7107(a)(1) of title 41.

It is difficult to imagine a less applicable jurisdictional provision. Movant does not and cannot explain how a statutory provision that authorizes federal courts to hear certain claims for money damages could afford jurisdiction here, where Movant seeks purely injunctive relief. *See Richardson v. Morris*, 409 U.S. 464, 465 (1973) ("The Tucker Act plainly gives district courts jurisdiction over claims against the United States for money damages of less than $10,000 that are 'founded . . . upon the Constitution.' But the Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States."); *Simanonok v. Simanonok*, 918 F.2d 947, 952 (Fed. Cir. 1990) ("[I]njunctive claims . . . are not cognizable in a Little Tucker Act or Tucker Act case, absent a concurrent colorable claim for monetary recovery.").[2] Nor does Movant explain why the Court of Federal Claims — which similarly "has no power to grant equitable relief," *Richardson*, 409 U.S. at 465 — should have concurrent jurisdiction over this dispute, as § 1346(a) provides. It is therefore unsurprising that Movant cites no case in which any court has adjudicated a subpoena-related dispute pursuant to

---

[2]    *See also Lee v. Thornton*, 420 U.S. 139, 140 (1975) ("The Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief.") (citing *Richardson*, 409 U.S. 464 (1973)); *Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 859 (Fed. Cir. 1992) ("Without a claim for monetary damages, there was no basis for district court jurisdiction pursuant to § 1346(a)(2)."); *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980) (the Tucker Act "only applies to suits for money damages.") (citing *Hunsucker v. Phinney*, 497 F.2d 29, 36 (5th Cir. 1974)); *Werner v. U.S. Dep't of Interior*, 581 F.2d 168, 171 (8th Cir. 1978) ("Under the Tucker Act, the jurisdiction of a district court has long been construed as limited to actions for money judgments and not to include suits for equitable relief.") (citing *Lee*, 420 U.S. at 140).

28 U.S.C. § 1346(a)(2).[3]  Because Movant has failed to carry its burden to show that federal

jurisdiction is proper, this Court must dismiss this action.

## II.     WALGREENS HAS FAILED TO IDENTIFY A VALID CAUSE OF ACTION

Walgreens' action must be dismissed for the separate and independent reason that

Walgreens has not identified a valid cause of action.  Even if Movant had identified a valid basis

for federal court jurisdiction, "jurisdiction is not enough.  To bring suit, a plaintiff must also state

a claim upon which relief may be granted, what used to be called stating a cause of action."

*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005).  Whereas "jurisdiction

is a question of whether a federal court has the power, under the Constitution or laws of the

United States, to hear a case," a "cause of action is a question of whether a particular plaintiff . . .

appropriately invoke[s] the power of the court."  *Davis v. Passman*, 442 U.S. 228, 239 n.18

(1979).[4]

Movant cites a litany of cases for the uncontroversial proposition that "[d]istrict courts

have authority to protect recipients of administrative subpoenas from undue burden, harassment,

or unreasonable conduct."  Mov's. Mem. at 3.  But insofar as the cause of action issue is

---

[3]     Walgreens correctly does not argue the Federal Rules of Civil Procedure confer
jurisdiction, "since it is axiomatic that the Federal Rules of Civil Procedure do not create or
withdraw federal jurisdiction."  *Owen Equipment & Erection Co. v. Kroger*,
437 U.S. 365, 370 (1978); *Kenrose Mfg. Co. v. Fred Whitaker, Inc.,* 512 F.2d 890, 893 (4th Cir.
1972) ("By express provision the [Federal Rules of Civil Procedure] are not to be read as a
source of jurisdiction.") (citing Fed. R. Civ. P. 82); *Cresswell v. Sullivan & Cromwell,* 922 F.2d
60, 70 (2d Cir. 1990) ("The Rules do not provide an independent ground for subject matter
jurisdiction over an action for which there is no other basis for jurisdiction."); *accord* Fed. R.
Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue
of actions in those courts.").

[4]     Whether Movant has stated a valid cause of action is separate and distinct inquiry from
whether it has Article III standing.  *See Davis*, 442 U.S. at 239 n.18 (distinguishing between
Article III standing and a cause of action and observing that "[a] plaintiff may have a cause of
action even though he be entitled to no relief at all").

concerned, Movant's assertion is beside the point. "Whether petitioner has asserted a cause of action, however, depends not on the quality or extent of her injury, but on whether the class of litigants of which petitioner is a member may use the courts to enforce the right at issue." *Davis*, 442 U.S. at 239 n.18. Because jurisdiction is premised on the Little Tucker Act, Walgreens bears the burden to "demonstrate that the source of substantive law [it] relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983). Section 1346(a)(2) itself is not a source of substantive law. The Supreme Court has stated that § 1346(a)(2) is only a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *Army & Air Force Exchange Serv. v. Sheehan*, 456 U.S. 728, 738 (1982) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)); *Stephens v. U.S. Dept. of Navy*, 589 F.2d 783, 783 (4th Cir. 1979) (§ 1346(a)(2) does not create a cause of action). To sue under § 1346(a)(2), a plaintiff must have a federal cause of action against the United States for money damages, which action must arise from some independent source. *Sheehan*, 456 U.S. at 739-40 ("[T]he Tucker Act provides a remedy only where damages claims against the United States have been authorized explicitly.").

Walgreens evidently believes that the Federal Rules of Civil Procedure confer substantive rights in the form of a cause of action, having filed this miscellaneous action "[p]ursuant to Federal Rule of Civil Procedure 26(b)(5)(B)." Mov's. Mem. at 1. Movant is wrong on several levels. Rule 26, "like all of the Federal Rules of Civil Procedure, is purely procedural. It does not create or modify any substantive rights," let alone specifically authorize the recovery of money damages against the United States. *Employers Ins. of Wausau v. Musick, Peeler & Garrett*, 954 F.2d 575, 577 (9th Cir. 1992); *New York News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d

Cir. 1992) ("The Federal Rules of Civil Procedure are procedural in nature and do not provide

substantive rights.") (citing the Rules Enabling Act, 28 U.S.C. § 2072 ("The Supreme Court shall

have the power to prescribe general rules of practice and procedure and rules of evidence" but

"[s]uch rules shall not abridge, enlarge or modify any substantive right.")).  Plaintiff furthermore

fails to explain how Federal Rule of Civil Procedure 26 could conceivably give rise to an

actionable claim under the Little Tucker Act.  Section 1346(a)(2) is inoperative absent a claim

"founded either upon the Constitution, or any Act of Congress, or any regulation of an executive

department, or upon any express or implied contract. . . ."  28 U.S.C. § 1346(a)(2).  Rule 26 is

plainly none of these.  *See, e.g.*, *Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409, 414-15

(6th Cir. 1998) ("Federal Rules [of Civil Procedure] are not a statute . . . [but rather] are issued

by the Supreme Court . . . [and are] not affirmatively adopted by the legislature, as all statutes

must be.") (citations omitted)).[5]

Movant has cited no authority to the contrary.  None of the cases Walgreens cites

suggests that a recipient of an administrative subpoena who produces documents in response to

that subpoena can then file a freestanding action in federal court seeking return of those

documents, particularly where, as here, administrative review is available.  As the Fourth Circuit

has recognized, "Congress authorized ALJs, in the first instance, to evaluate privilege objections

to subpoenaed documents — through *in camera* review if necessary — and that judicial review

[of an ALJ's determination] is available only after objections are considered and denied by the

---

[5]     Indeed, the very nature of this litigation confirms that Walgreens has no valid cause of
action.  Had Movant filed a civil action, it would have had to identify its cause of action in its
Complaint; it could not have simply filed a Complaint alleging a violation of Federal Rule of
Civil Procedure 26.  Walgreens seeks to obscure this deficiency by filing a "miscellaneous
action" and going directly into motion practice, thereby attempting to avoid the service
requirements of Federal Rule of Civil Procedure 4, and significantly shortening the time that the
United States would otherwise have to respond under Federal Rule of Civil Procedure 12.

Board." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 494-95 (4th Cir. 2011).[6]  Walgreens

therefore remains free to pursue its privilege claim in the administrative forum that DEA is

statutorily obligated to provide.  *See* 21 U.S.C. § 824(d) (requiring DEA to commence

administrative proceedings "simultaneously" with issuance of ISO).  Walgreens seemingly plans

to do just that.  *See* Letter from P. Perry to DEA (October 12, 2012) ("Ex. 12"); Ex. 13.

Walgreens has stated that it "intends to contest the allegations in the ISO during an

administrative hearing regarding permanent revocation of the Jupiter registration."  Ex. 17 at 4,

n.1.  And if Walgreens is dissatisfied with the outcome of administrative proceedings, it has the

right to seek federal judicial review those of proceedings upon their conclusion pursuant to 21

U.S.C. § 877.

Walgreens has also challenged the ISO in federal court, as is its right to do under 21

U.S.C. § 824(d).  *See* Ex. 17.  Should it elect to do so, Walgreens may raise the privilege issue as

part of its larger challenge to the validity of the ISO.  *See* 21 U.S.C. § 824(d) (ISO must be

supported by evidence sufficient to support DEA's determination that the registrant's continued

operation would pose an "imminent danger to the public health or safety," which determination

is subject to review by a "court of competent jurisdiction").  What Walgreens may not do, and

what it has done here, is to disregard statutorily-prescribed avenues by which it can seek relief in

favor of filing a "miscellaneous action" pursuant to a wholly inapplicable jurisdictional

---

[6]      In arguing to the contrary, Movant cites the *Interbake* district court for the proposition
that "federal courts are the appropriate forum for assessing privilege claims in response to federal
agency subpoenas." Mov's. Mem. at 3 (citing *NLRB v. Interbake Foods, LLC*, 2009 WL
3103819 at *2 (D. Md. Sept. 22, 2009)).  But as the Fourth Circuit recognized in partially
vacating the *Interbake* district court decision, such judicial review is only available after an
aggrieved party has exhausted its administrative avenues for redress.  *See Interbake Foods, LLC*,
No. 09-2081, 637 F.3d at 499 ("We do not say that an ALJ does not have authority to rule on a
claim of privilege.  He can make such a ruling just as he could rule on any issue of evidence
presented to him during the course of a hearing.").

provision.  Because Movant has failed to carry its burden to show that subject matter jurisdiction

is proper, and because Movant has not cited a valid cause of action, this Court must dismiss

Movant's miscellaneous action.

Walgreens also argues that DEA has an obligation to return the putatively privileged

material, "[r]egardless of whether the Privileged Material is, in fact, protected by privilege."

Mov's. Mem. at 6.  According to Walgreens, the simple fact of Walgreens' claim of privilege

"triggers DEA's obligations under the Federal Rules of Civil Procedure" to return the

documents.  *Id.* (citing Fed. R. Civ. P. 26(b)(5)(B)).  Walgreens is mistaken on several levels.

To begin with, and as discussed previously, the Federal Rules of Civil Procedure neither

confer jurisdiction nor provide a cause of action.  Neither Rule 26(b)(5)(B) nor any other rule of

civil procedure applies unless and until Walgreens demonstrates (i) that this Court has

jurisdiction; (ii) to hear a valid cause of action, neither of which it has done.  In addition to these

threshold failures, the Federal Rules of Civil Procedure apply only when the parties are engaged

in federal district court, which they were not at the time Walgreens produced the materials in

question.  The Federal Rules of Civil Procedure do not somehow apply retroactively to govern

disclosures made outside the context of any federal court proceeding.  Walgreens responds that

Rule 26 "applies in the context of an administrative subpoena," and suggests that the

requirements of Rule 26 apply here by virtue of the operation of Federal Rule of Civil Procedure

81(a)(5).  Mov's. Mem. at 6 n.3.  That, too, is mistaken.  Federal Rule of Civil Procedure

81(a)(5) states that the Federal Rules of Civil Procedure "apply to *proceedings to compel

testimony or the production of documents* through a subpoena issued by a United States officer

or agency under a federal statute, except as otherwise provided by statute, by local rule, or by

court order in the proceedings."  Fed. R. Civ. P. 81(a)(5) (emphasis added).  The problem for

Movant is that this is not a subpoena enforcement proceeding. DEA is not seeking to "compel testimony or the production of documents," nor is Walgreens seeking to quash an administrative subpoena that DEA has sought to enforce. Federal Rule of Civil Procedure 81(a)(5) is therefore inapposite.[7]

Even if Walgreens were somehow correct that Federal Rule 26(b)(5)(B) applied, it still would not follow that DEA has any obligation to return the documents in question. As Walgreens correctly notes, Rule 26(b)(5)(B) requires DEA to "promptly return, sequester, *or* destroy the specified information and any copies it has." Mov's. Mem. at 6 (emphasis added). Before Walgreens filed this action, DEA informed Walgreens that it had sequestered the documents in question. *See* Lawson Decl. ¶ 20; E-mail from S. Lawson to A. Qureshi (October 3, 2012) ("Ex. 11"). Having done so, the disjunctive phrasing of Rule 26 makes clear that DEA has no further obligation to return the documents to Walgreens.[8]

## III.   WALGREENS' PRIVILEGE ASSERTION IS MERITLESS

In the Fourth Circuit, the attorney-client privilege "applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the

---

[7]   Movant tellingly cites no case in which a court applied Rule 81(a)(5) outside of the context of a subpoena enforcement proceeding. And, in every one of the subpoena enforcement actions Movant cites, there was an independent statutory basis for federal jurisdiction separate and apart from the Federal Rules of Civil Procedure.

[8]   To the extent Walgreens wishes to challenge DEA's use of the putatively privileged documents in support of its suspension decision — which decision, it bears repeating, DEA made prior to Walgreens registering any objection with DEA — Walgreens can either pursue its administrative remedies before the DEA or seek immediate federal judicial review of the ISO. DEA has previously represented to Walgreens that it will not affirmatively use the allegedly privileged material further pending a privilege determination in an appropriate forum. *See* Lawson Decl. ¶ 20; Ex. 11.

attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose

of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some

legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege

has been (a) claimed and (b) not waived by the client." *United States v. Lentz*, 524 F.3d 501, 523

(4th Cir. 2008). Walgreens' privilege assertion fails under this standard for two reasons. First,

Walgreens has waived any claim of attorney-client privilege it might otherwise have had over

these documents. Second, and notwithstanding the waiver issue, the documents are not

privileged because they fall within the crime-fraud exception to the attorney-client privilege.

## A. WALGREENS HAS WAIVED ITS CLAIM OF ATTORNEY-CLIENT PRIVILEGE

### 1. Walgreens Selective and Strategic Invocation Of Privilege Constitutes A Subject Matter Waiver.

Citing Federal Rule of Evidence 502, Walgreens argues that the attorney-client privilege

applies to the documents in question despite Walgreens' inadvertent production of these

documents.

To begin with, Walgreens' assertion that its disclosures were inadvertent is difficult to

reconcile with the facts of this case. By letter dated September 10, 2012, Walgreens stated that it

had "determined that two (2) documents for which Walgreens claims an attorney client privilege

were inadvertently and erroneously included in the production package." Ex. 7 at 2. Walgreens

has therefore failed to assert — even now — any claim of privilege over other documents

produced to DEA in which Mr. Pinon is providing legal advice. For example, Walgreens has

failed to claim privilege over an email from Mr. Pinon dated March 20, 2012 with the subject

line ████████████████████████████ which is part of a longer email string

among Walgreens personnel between March 20 and March 26, 2012. *See* E-mail from D. Pinon

17

to K. Atwell (March 20, 2012) ("Ex. 14") at 3. By email dated March 20, a Walgreens



*Id.* at 4.

*Id.* at 3. This is unquestionably legal advice.

*See*

Lawson Decl. ¶ 4. It bears repeating that Walgreens has neither asserted a claim of privilege

over this document in connection with its initial June 8 production, nor in response to its re-

evaluation of the very limited set of documents specifically involving Mr. Pinon following

DEA's August 9 letter. *See* Letter from D. Weinstein to S. Lawson (September 27, 2012) ("Ex.

10") (attaching privilege log). Thus, Walgreens has twice had the opportunity to assert a claim

of privilege, and has twice declined to do so. Under these circumstances, it is difficult to see

how Walgreens' failure to assert attorney-client privilege could be anything other than

intentional. *See Silverstein v. Fed. Bureau of Prisons*, 2009 WL 4949959, *13 (D. Colo. Dec.

14, 2009) (upholding subject-matter waiver because "failure to cure the disclosure" of previously

privileged document "lends support to an inference of intentional waiver."). As explained

below, this constitutes a subject matter waiver over all otherwise privileged materials related to Walgreens' anti-diversion measures and related compliance efforts.

Federal Rule of Evidence 502(a) provides that an intentional disclosure of privileged material will operate as a subject matter waiver as to undisclosed communications or information if "the disclosed and undisclosed communications or information concern the same subject matter;" and if "they ought in fairness to be considered together." Fed. R. Evid. 502(a). Rule 502(a) allows finding of subject-matter waiver of attorney-client privilege "in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *United States v. Treacy,* 2009 WL 812033, *2 (S.D.N.Y. Mar. 24, 2009) (quoting Advisory Note to FRE 502(a)). "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000).

Here, in the course of a DEA investigation into Walgreens' handling of controlled substances, Walgreens has produced certain documents reflecting legal advice provided by Mr. Pinon; at the same time, Walgreens seeks the return of other documents in which Mr. Pinon is also providing legal advice. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████ ███████████████████████

███████████████████████████████ ███████████████

███████████████████████████████████████████████

███████████████████████████████ .



Ex. 3 at 004.

*Id.*

*See* Ex. 18; Ex. 6 ¶ 24. Walgreens'

. Accordingly, this

Court should deny Walgreens' request for the return of the documents in question because

Walgreens has waived attorney-client privilege over all communications dealing with

Walgreens' anti-diversion measures and related regulatory compliance efforts.[9]

    2.  <u>Walgreens' Efforts To Safeguard the Attorney-Client Privilege Were Not Reasonable.</u>

    Even if this Court disagrees, and concludes that Walgreens' partial waiver of the

attorney-client privilege does not effect a subject matter waiver under Federal Rule of Evidence

502(a), Walgreens still cannot demonstrate that the attorney-client privilege should survive as to

the documents at issue. Rule 502(b) provides that a disclosure made to a federal agency "does

not operate as a waiver in a federal or state proceeding if:

    (1) the disclosure is inadvertent;

    (2) the holder of the privilege or protection took reasonable steps to prevent
    disclosure; and

    (3) the holder promptly took reasonable steps to rectify the error, including (if
    applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

 In determining whether the party asserting the privilege took "reasonable steps to prevent

disclosure" and "to rectify the error," courts apply a multi-factor balancing test. No factor is

dispositive. *See* Fed. R. Civ. P. 502, Advisory Note. "Under the balancing approach, a court

generally considers: "(1) the reasonableness of the precautions taken to prevent disclosure; (2)

the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure;

and (5) the overriding issue of fairness." *Judson Atkinson Candies, Inc. v. Latini-Hohberger*

*Dhimantec* 529 F.3d 371, 388 (7th Cir. 2008). But, where, as here, "disclosure is complete," the

---

[9]    As regards the specific documents in question, Rule 502 does not appear to contemplate
this precise situation. Rule 502(a) addresses whether and under what circumstances a party that
discloses certain materials subject to the attorney-client privilege or the attorney work product
privilege should, by virtue of that disclosure, also be compelled to forfeit any claim of privilege
as to "undisclosed communication[s] or information" that might also be subject to those
privileges. Here, the issue is what significance Walgreens' partial and, in DEA's view,
intentional waiver should have for other communications that Walgreens has *already* disclosed.

party asserting privilege can only prevail upon "a very strong showing with respect to the other factors." *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 116 F.R.D. 46, 52 (M.D.N.C. 1987). As the party asserting attorney-client privilege, Walgreens "has the burden of demonstrating its applicability." *Interbake Foods, LLC*, 637 F.3d at 501.

In this regard, Walgreens' arguments are most notable for what they do *not* say. Walgreens does not even attempt to explain why its delay of more than a month in responding substantively to DEA's "alert" letter is reasonable, nor could it. On August 9, 2012, DEA emailed Walgreens' counsel a letter informing Walgreens that it had produced communications involving Mr. Pinon that might have been privileged. *See* Lawson Decl. ¶ 11; Ex. 4. Walgreens responded the following day, stating that it would respond "as soon as possible" regarding the privilege issues DEA raised. Ex. 5 at 2. The next time DEA heard anything from Walgreens on this issue was on September 14, 2012, after DEA had served the ISO. *See* Lawson Decl. ¶ 15; Exs. 7, 8. Walgreens tellingly cites no case in which courts have excused a delay of this magnitude, nor is undersigned counsel aware of any. *Cf. United States v. de la Jara*, 973 F.2d 746, 749-50 (9th Cir. 1992) (party claiming inadvertent disclosure must "immediately attempt[ ] to recover" the documents in question).

Walgreens cannot claim that it did not understand the urgency of the situation. In addition to the normal urgency that a party would presumably have upon learning that it had produced documents that may have been privileged, the disclosures here occurred in the context of a DEA investigation that could — and did — lead to swift and significant consequences. ■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

████████████████████████████████████████████████

███████████████████████████████████████    ████████

███████████████████████████████████████   Walgreens

unquestionably knew the potential consequences.

Nor can Walgreens' delay in responding be attributed to the large volume of documents

Walgreens produced involving Mr. Pinon, or in the difficulty of searching those documents.  Mr.

Pinon's name appears in only 61 documents produced to DEA, which Walgreens could have

quickly and easily confirmed by running a computer search for Mr. Pinon's name.  *Accord*

Mov's Mem. Ex. B ("Weinstein Decl.") ¶ 22 ("The computer search identified approximately 61

documents [involving Mr. Pinon]."). [10]  Yet for reasons that Walgreens does not even attempt to

explain, this computer-aided re-review process took three attorneys more than a month.  This fact

alone says more than anything DEA could possibly say about Walgreens' lack of effort to rectify

its error.

And when Walgreens did finally respond, the manner in which it chose to respond

reflected no effort to promptly rectify the alleged error.  Notably, throughout the course of

correspondence since DEA first served Walgreens with a subpoena in April 2012, Walgreens'

counsel's uniform practice was to communicate by phone or email, or when it communicated via

letter, to send any letter via expedited carrier (such as Federal Express) and to

---

[10]      In its review of the documents Walgreens produced in response to the April subpoena,
DEA counts only 42 documents involving Mr. Pinon, slightly lower than Walgreens' calculation
of 61 documents. *See* Lawson Decl. ¶ 19.  It is unclear whether Walgreens' calculation includes
materials it withheld as privileged in addition to materials it produced.  Also, given that Mr.
Pinon's name occurs multiple times in various email chains, this difference may also be
attributable to whether an email chain is treated as one document or as multiple documents.  In
any case, because this difference is not material, DEA has used Walgreens' calculation for
purposes of this litigation.

contemporaneously email a copy of that letter to DEA. *See* Lawson Decl. ¶ 16; Ex. 8. In this instance, fully aware that Walgreens had failed to respond to DEA's alert letter for over a month, Walgreens' counsel inexplicably elected to communicate exclusively via one of the slowest forms of modern communication — a letter mailed via the United States Postal Service.[11]

Walgreens similarly fails to address the final factor, "the overriding issue of fairness." Having received no objection to DEA considering the materials Walgreens now claims are privileged, DEA issued the ISO on September 13, 2012. In support of her imminent danger determination, and having considered the putatively privileged materials, the Administrator

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ Ex. 6 ¶ 23. The Administrator concluded that ██████████████████████

███████████████████████████████████████████ *Id.* It is undisputed that at the time DEA issued the ISO on September 13, 2012, the Administrator was unaware — nor could she have been aware — that Walgreens intended to assert attorney-client privilege. Thus, DEA considered the materials in question and concluded that they indicated that Walgreens was engaged in ███████████████████████████ *See id.* at ¶¶ 23-24. Walgreens is free to put its own gloss on these emails, but DEA cannot and should not, in the name of "overriding fairness," be forced to pretend that it has not seen the evidence it has seen,

█████████████████████████████████████ ████████████

██████████████████████████ ████████████████████████

████████████████████████ *Id.* ¶ 24. Under these

---

[11] Furthermore, Walgreens' counsel apparently failed to mail the letter right away, assuming the accuracy of the letter's September 10, 2012 date. *Cf.* Mov's Mem. Weinstein Decl. ¶ 30 (letter prepared "[o]n or about September 10, 2012"). The letter is postmarked September 12. Ex. 9 at 2.

circumstances, and particularly in light of DEA's "significant" reliance on the materials in

issuing the ISO, fundamental fairness supports a finding of waiver.  *See F.D.I.C. v. Marine*

*Midland Realty Credit Corp.,* 138 F.R.D. 479, 483 (E.D. Va. 1991) (judicial order "could not

force [party receiving documents] to forget what has already been learned") (citing *Parkway*

*Gallery,* 116 F.R.D. at 52 ("[w]hen disclosure is complete, a court order cannot restore

confidentiality and, at best, can only attempt to restrain further erosion.")); *Bud Antle, Inc. v.*

*Grow-Tech, Inc.*, 131 F.R.D. 179, 183-84 (N.D. Cal. 1990) ("Defendants have analyzed the

Letter, have possibly disclosed it to experts, and have indicated a strong reliance on it for

purposes of their defense in this lawsuit.  Under the circumstances, the bell has already been

rung, and the court cannot now unring it by denying defendants access to the Letter.").

As to the reasonableness of the precautions taken to prevent disclosure, Walgreens argues

that "two in-house attorneys at Walgreens reviewed collected materials for responsiveness, and a

third outside attorney performed a second review for both responsiveness and privilege."  Mov's.

Mem. at 6.  Whatever the appropriateness of such review in theory, it appears to have failed even

after DEA had specifically flagged its concern over a very limited subset of documents involving

Mr. Pinon.  *See supra* at 18-19 (discussing legal advice Walgreens has produced to DEA and

failed to claw back); Lawson Decl. ¶ 19 (discussing scope and ease of privilege re-review).[12]

---

[12]     It is worth noting that even now Walgreens has failed to specify accurately the documents
over which it is claiming attorney-client privilege.  In its clawback letter dated September 10,
2012, Walgreens asserts attorney-client privilege over two documents ███████████████████████
███████████████████████████████████  Ex. 7 at 2.  Neither of these documents actually contains
the complained-of material used by DEA in the ISO.  That material is contained in a separate
email entitled ███████████████████  Ex. 3 at 001.

Moreover, while Walgreens' clawback letter asserts privilege with regard to the
document entitled ██████████████████████████████  Walgreens does not assert the
privilege over the materially similar document entitled ████████████████████

One would assume that Walgreens would now be screening material it produces to DEA with the highest level of care, particularly those involving Mr. Pinon. But incredibly, Walgreens has recently produced to DEA *yet again* more documents in a separate but related investigation in which Mr. Pinon is providing legal advice. E-mail from D. Pinon to B. Dancy and L. Hora (November 7, 2001) ("Ex. 15"). And given the resources Walgreens claims to have invested in reviewing documents in response to DEA's subpoena, it is hard to understand why, despite repeated requests, Walgreens failed to produce a privilege log until September 27, almost four months after Walgreens' counsel had first promised to provide one on June 8. *See* Ex. 2 at 1; Ex. 10. *See also Rhoads Industries, Inc. v. Building Materials Corp. of America*, 254 F.R.D. 216, 226 (N.D. Cal. 1990) (finding delay of 4 ½ months in preparing privilege log to be "too long and inexcusable").[13]

As to the scope of the discovery and the extent of the disclosure, Walgreens notes "only two documents out of a several thousand page production were privileged documents that were inadvertently produced." *See* Mov's. Mem. at 6. To begin with, Walgreens mistakenly assumes that the extent of the disclosure inquiry is something that can be measured in strictly quantitative terms. *See id.* at 5-6 (discussing extent of disclosure relative to overall size of document production). In so arguing, Walgreens essentially conflates the scope of discovery inquiry with the extent of discovery inquiry. Unlike the scope of discovery, it is clear that courts do not regard the extent of disclosure as something that can be stated purely in terms of page counts. In

---

████████         Although DEA believes that it understands the documents over which Walgreens has claimed privilege, Walgreens' carelessness in identifying these documents, combined with its failure to provide a Bates-stamped copy to DEA, further highlights Walgreens' failure to take reasonable action to safeguard the putatively privileged material.

[13]     Although Walgreens' privilege log contains Bates-numbered references, that is essentially useless to DEA, because Walgreens has never produced to DEA a Bates-stamped copy of its production. *See* Lawson Decl. ¶ 9.

evaluating the significance of the disclosure, courts consider whether "the contents of the document were fully disclosed, and whether copies of the documents were actually turned over before the privilege was asserted." *Bud Antle*, 131 F.R.D. at 183-84. Here, it is undisputed that Walgreens has disclosed the contents of, as well as copies of, the putatively privileged communications.

With respect to the scope of discovery, Walgreens' assertion as to the size of the document production is misleading. In terms of the page volume, much of what Walgreens produced was clearly non-privileged, such as corporate policies and operating procedures, and therefore should have required no privilege review whatsoever.[14] *See* Lawson Decl. ¶ 19. Excluding such documents, Walgreens produced approximately 465 files — many of which were duplicates. *Id.* ¶ 9.

For these reasons, Walgreens has failed to carry its burden to show that it took reasonable precautions to safeguard against the loss of attorney-client privilege.

### B. BECAUSE THE DOCUMENTS AT ISSUE DISCUSS ███████████████ ███████████████ THE CRIME-FRAUD EXCEPTION APPLIES

Walgreens' assertion of attorney-client privilege fails for the separate and independent reason that it falls within the well-established crime-fraud exception to the privilege. As courts in this jurisdiction and elsewhere have recognized, "[t]he term 'crime/fraud exception' . . . is a bit of a misnomer, as many courts have applied the exception to situations falling well outside of the definitions of crime or fraud." *Rambus, Inc. v. Infineon Technologies AG*, 222 F.R.D. 280, 288 (E.D. Va. 2004) (citations omitted); *Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983)

---

[14] Because Walgreens has never given DEA a Bates-numbered production, DEA does not know precisely what volume of responsive material should not have required Walgreens to conduct any privilege review.

(stating that crime/fraud exception applies to work product created as result of lawyer's "unprofessional conduct"); *Coleman v. Am. Broad Cos.*, 106 F.R.D. 201, 209 (D.D.C. 1985) ("obstruct[ion of] the discovery process").[15]

"The rationale for the crime-fraud exception is closely tied to the policies underlying the attorney-client privilege. Whereas confidentiality of communications facilitates the rendering of sound legal advice, which is to be encouraged, it cannot be said that advice in furtherance of a fraudulent or unlawful goal is sound, nor is it to be encouraged." *United States v. Lentz*, 419 F. Supp. 2d 820, 830 (E.D. Va. 2005).

In evaluating the applicability of the crime-fraud exception here, it bears emphasizing the immense scope of DEA's responsibility with respect to the regulation of controlled substances. Among numerous other obligations, DEA regulates approximately 1.4 million registrants involved in the importation, distribution, and/or dispensation of controlled substances. *See* Lawson Decl. ¶ 2. DEA relies on the regulated community to produce transactional information regarding controlled substances that is timely, comprehensive, and accurate. Only with this cooperation can DEA can determine how best to marshal its scare resources to safeguard against diversion. Where such cooperation is lacking the regulatory regime cannot function effectively.

This conduct furthermore  Ex. 18 at Section III, ¶ 4(a).

---

[15]    *See also Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983) (stating that crime/fraud exception applies to work product created as result of lawyer's "unprofessional conduct"); *Cleveland Hair Clinic, Inc. v. Puig*, 968 F. Supp. 1227, 1241 (N.D. Ill. 1996) (holding crime/fraud exception applicable to communications made in furtherance of "bad faith litigation conduct"); *In re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982) ("misconduct fundamentally inconsistent with the basic premises of the adversary system").



Ex. 3 at 004, Walgreens

Ex.

Ex. 18 at Section III, ¶ 4(a). *See* Ex. 6 ¶ 24.

Ex. 3 at 004 (emphasis added).

That is not all.

Ex. 3 at 003.

Ex. 3 at 003 (emphasis added).

It is "inconceivable" that evidence of such conduct merits the protection of the attorney-client privilege. *Rambus*, 222 F.R.D. at 288 (observing that "[e]vidence destruction impedes the search for truth because it creates inaccuracy if the fact of destruction is unknown and uncertainty if the fact of destruction is revealed, [and that] [d]estruction of evidence is unfair because it potentially creates inequality of access to information."). Accordingly, Walgreens' communications related

to this misconduct would fall within the crime-fraud exception to the attorney-client privilege even had such privilege been properly preserved.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Walgreens' motion to compel DEA to return documents.

Dated: October 16, 2012

Washington, D.C.                    Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

NEIL H. MacBRIDE
United States Attorney

ARTHUR R. GOLDBERG
Assistant Branch Director
United States Department of Justice
Civil Division, Federal Programs Branch

C. LEE REEVES, II
HECTOR G. BLADUELL
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7308
Washington, D.C. 20530
Tel: (202) 514-4805
Fax: (202) 616-8470

/s/
_____
Bernard Kim
Assistant United States Attorney
Justin W. Williams U. S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3911 (direct)
(703) 299-3983 (fax)
bernard.kim@usdoj.gov

*Counsel for U.S. Drug Enforcement Administration*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2012, I will file the foregoing under seal with the Clerk of Court, and send a true unredacted copy of such filing by electronic mail to the following:

Abid Riaz Qureshi
Latham & Watkins LLP
555 11th St NW
Suite 1000
Washington, DC 20004-1304
(202) 637-2200
Email: abid.qureshi@lw.com
*Attorney for Walgreen Co.*

_____/s/_____
Bernard Kim
Assistant U.S. Attorney
*Attorney for the*
*U.S. Drug Enforcement Administration*

### CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2012, I will file the foregoing using the CM/ECF system, which will send a true and correct copy of such filing by electronic means to the following:

Bernard Kim
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3911 (direct)
(703) 299-3983 (fax)
bernard.kim@usdoj.gov
*Counsel for U.S. Drug Enforcement Administration*

and that on November 17, 2012 I will serve a true and correct copy of the foregoing via Federal Express on:

Clifford Lee Reeves
Hector G. Bladuell
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 7308
Washington, DC 20530

_____*/s/ Abid R. Qureshi*_____
Abid R. Qureshi (VSB No. 41814)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2240 (T)
(202) 637-2201 (F)
abid.qureshi@lw.com

Attorney for Movant Walgreen Co.