# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) ) Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) Judge Dan Aaron Polster |
| *All Cases* | ) ) **ORDER** |

Before the Court are Cardinal's and Walgreens' Objections to the Special Master's Amendment to Discovery Ruling No. 14, Part 1. **Doc. ##: 1397, 1398**. The Court has reviewed the Special Master's Amendment, Doc. #: 1380, Cardinal's and Walgreens' Objections, and Plaintiffs' Replies, Doc. ##: 1407, 1418. For the following reasons Cardinal's and Walgreens' Objections are **OVERRULED**. Special Master Cohen's Amendment to Discovery Ruling No. 14, Part 1 is affirmed.

The parties' objections to the Special Master's Amendment concern three primary issues:

1) Whether an email and two attached carts—determined to be attorney work product—should be produced to Plaintiffs under the "substantial need/undue hardship" provision of Federal Rule 26.

2) Whether Cardinal waived privilege of 2.8 million documents originally produced to DEA in 2008 and subsequently reproduced in this litigation.

3) Whether Walgreens waived privilege of 27 documents originally produced to DEA in 2012.

The Court will address each of these issues below.

### Cardinal Charts

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . But, subject

to Rule 26(b)(4), those materials may be discovered if: . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Special Master Cohen determined, and Plaintiffs did not formally object, that the two charts describing Cardinal's Suspicious Order Monitoring System ("SOMS") are attorney work product prepared in anticipation of litigation. The issue is whether Cardinal should be forced to produce those charts despite the privilege.

To override work product protection under Rule 26, "plaintiffs must shoulder the burden of showing that they have substantial need of [the documents] and that they are essentially unable to obtain their equivalent." *Toledo Edison Co. v. G.A. Technologies*, 847 F.2d 335 (6th Cir. 1988). The documents must be "sufficiently unique and important, as compared to other possible sources of the same information." *Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328, 333–34 (N.D. Ohio 2014).

Information regarding SOMS is central to Plaintiffs' case against Cardinal. Despite repeated efforts by Plaintiffs—and orders of this Court—to get SOMS information, Cardinal has not provided anything close to the equivalent of these charts.[1] Cardinal argues that because Plaintiffs withdrew deposition notices for Cardinal's 30(b)(6) deponents, Cameron and Mone, that Plaintiffs cannot meet their burden of showing substantial need. Cardinal's argument might be more compelling had Cardinal ever responded fully to Plaintiffs interrogatories about its SOMS as directed by the Court. Instead, even after the Court ordered Cardinal to respond fully, Cardinal continued to provide inadequate answers. The Court is forced to conclude that Plaintiffs have met

---

[1] *See* the Court's November 21, 2018 Order, Doc. #: 1147 ("All distributor and retail pharmacy defendants ***shall respond fully*** to all discovery seeking information regarding their Suspicious Order Monitoring Systems (SOMS)." (emphasis added)).

2

their burden of establishing that they have a substantial need for the information contained in these documents and are essentially unable to obtain the equivalent of this information any other way.[2]

Cardinal also argues that Special Master Cohen erred by finding that the email and charts are not protected by the attorney-client privilege. In his first ruling, Special Master Cohen correctly lays out the essential elements for finding attorney-client privilege. *See* Doc. #: 1321 at 2. Most important to this analysis is element (3) "the communications relating to that purpose [of seeking legal advice from a legal counselor]." *Id.* (quoting *Ohio A. Philip Randolph Institute v. Smith*, 2018 WL 6591622 at *2 (S.D. Ohio Dec. 15, 2018). Cardinal objects to the Special Master's choice of language: "That the charts are 'devoid of legal advice.'" Doc. #: 1397 at 22. However, the Special Master's meaning was clear: Cardinal has not presented sufficient evidence for the Court to conclude that *the purpose* of the email and attached charts was related to the provision or solicitation of legal advice.

Thus, regarding Cardinal's email and charts, the Court concurs with the Special Master's analysis and affirms his ruling. Cardinal's objection regarding these documents is overruled.

### Cardinal Claw Back of 2.8 Million Documents

Despite the large quantity of briefing done on this issue, the facts remain somewhat opaque. The Court understands, in summary, that Cardinal produced 2.8 million documents in this MDL, which they subsequently clawed back. Those documents have been described as falling into one of three categories: 1) documents that were produced to DEA in 2008 and subsequently clawed back at that time ("Category 1"),[3] 2) documents that were produced to DEA in 2008 and never

---

[2] Plaintiffs contend that Cardinal introduces at least two new arguments: 1) that Cardinal's 2008 claw back only contained a small number of documents, and 2) that most of the information from the clawed-back charts is contained in an earlier chart that has been produced. Neither are new arguments. The first is simply an attempt to clarify statements made in the declaration of Robert J. Tucker, which was before the Special Master. The second was also clearly in front of Special Master Cohen because he refers to it in his Amendment. *See* Doc. #: 1380 at 2.

[3] Confusion remains about the number of Category 1 documents that were clawed back. The Court understands that Cardinal discovered some inadvertently produced privileged documents, retrieved and reviewed five discs worth of

3

clawed back ("Category 2"), and 3) documents that were never produced to DEA in 2008. Only the Category 2 documents are at issue.

Federal Rule of Evidence 502 provides that when a document is disclosed "in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b).

Cardinal argues that the discovery of "*some* privileged documents in 2008" that were inadvertently produced to DEA and subsequently clawed back (Category 1) is insufficient to put it on notice that it should have reviewed its 2018 MDL production. Doc. #: 1397 at 11. Cardinal also states that because the DEA action settled six months later, it did not review the remaining documents in its 2008 DEA production and was not required to do so. The Court assumes that, had the DEA action continued, Cardinal would have conducted its due diligence and reviewed the unreviewed portion of the 2008 DEA production for additional privileged documents.

Even if the Court agrees that Cardinal was under no obligation to continue to search for additional privileged documents in its 2008 DEA production after that action settled, CMO-1 explicitly ordered that "all Defendants shall review documents previously produced." Even under the expedited production schedule for prior productions, the Category 2 documents at issue here should have been a high priority for a more rigorous privilege review because Cardinal knew that 1) some privileged documents had been produced in 2008, and 2) no privilege review had been subsequently made of those documents due to the settlement of the DEA action.

---

documents (presumably some, but not all, of what would come to be known as Category 2), discovered between one and seventeen additional privileged documents among the five discs (Category 1), removed those privileged documents and then re-produced the discs to DEA. *See* Doc. #: 1397 at 5, n.10.

The Court finds that Cardinal failed to take reasonable steps to prevent inadvertent disclosure because Cardinal knew or should have known that there may be additional privileged documents in the 2008 DEA production that were never reviewed due to that action settling. Although Cardinal may not have been obligated to search for privileged documents after the DEA action settled, Cardinal was ordered by this Court to review them pursuant to CMO-1. While a less rigorous review may constitute a reasonable step to prevent inadvertent disclosure for prior productions generally (as they have presumably been subject to such reasonable steps previously), Cardinal was on notice that this particular cache of documents should have been subject to a higher level of scrutiny.

The Court is further persuaded that Cardinal's actions to mitigate inadvertent disclosure were unreasonable due to the language of the settlement agreement between Cardinal and DEA. The agreement expressly permitts DEA to "seek to admit evidence of the Covered Conduct for proper evidentiary purposes in any other administrative proceeding against the Released parties for non-covered conduct, and DEA shall . . . assist and cooperate with any [other] law enforcement agency that initiates an investigation, action, or proceeding involving the Covered Conduct." Doc. #: 1380 at n.15 (quoting Cardinal Settlement Agreement ¶4 at 7-8). Despite DEA's expressly reserved right to use the documents essentially as it saw fit, Cardinal allowed an unknown number of potentially privileged documents to be held by DEA for a decade. This behavior coupled with clear notice that something may be wrong with the 2018 MDL production convinces the Court that Carinal has waived privilege over the Category 2 documents.

**Walgreens' 27 Documents**

The Court understand the fact to be as follows: In 2012, Walgreens' conducted a privilege review and then produced thousands of documents to DEA. DEA asked Walgreens if it intended to assert privilege over any of the documents, at which time Walgreens re-reviewed the documents

5

and sought to claw back two of them eventually filing an action in a Virginia federal court to do so. This attempt to claw back the documents was procedurally dismissed for lack of jurisdiction. No further attempt to claw back the documents was made. Six months later, Walgreens and DEA settled and none of the 27 documents were ever returned to Walgreens. Now Walgreens asserts privilege over all 27 documents in this MDL.

Walgreens asserts that once their motion to compel the return of the two documents failed in the Virginia federal court, there was nothing more they could do to get those documents back. Doc. #: 1398 at 5. This is plainly not accurate. For example, one of DEA's arguments in contesting the Virginia Court's jurisdiction over Walgreens' motion was that Walgreens should have filed its motion "in the D.C. Circuit or before an administrative law judge." Doc. #: 1380 at n.11 (quoting *In re: Administrative Subpoena*, case no. 12-MC-43 (E.D. Va.), docket no. 37 at 13. Had Walgreens wanted to claw back these documents (or at least had its motion considered on the merits) it could have taken DEA's suggestion to file in a court where DEA appeared to concede the court's jurisdiction. They did not.

Walgreens further argues that "no law supports [the] position" that they should have continued to seek the return of these privileged documents until there was a final resolution of that issue. *Id.* at n.2. The likely reason for the lack of case law on this point is because no reasonable party would be willing to allow its privileged documents to be retained by an opposing party absent a court order. Indeed, Federal Rule of Evidence 502 does not even contemplate that a party might take some steps to rectify an inadvertent production of privileged documents, but then failing to achieve resolution on the issues of privilege and/or waiver, cede any future efforts to rectify its inadvertent disclosure. The Court concludes that Walgreens did not take reasonable steps to prevent disclosure of the two documents it attempted to claw back.

6

Regarding the other 25 documents that Walgreens did not attempt to claw back in the 2012 DEA action, the Court finds the Special Master's reasoning persuasive. Walgreens conducted multiple privilege reviews, was effectively warned by DEA that its production may contain privileged documents, actually found two privileged documents, and then still managed not to identify the 25 privileged documents to DEA. This convinces the Court, as it did the Special Master, that Walgreens did not take reasonable steps to prevent disclosure of the 25 documents.

Additionally, like Cardinal's settlement described above, Walgreens' settlement with DEA contained the same language allowing DEA to use the documents in cooperation with other law enforcement agencies. *See* Doc. #: 1380 at 13. The Court concludes that allowing at least two and an unknown number of other potentially privileged documents to be held by DEA for several years, while not by itself dispositive, is strong evidence that Walgreens failed to take reasonable steps to prevent disclosure of privileged documents. Thus, based on a totality of the circumstances surrounding Walgreens' production of these documents to DEA in 2012, the Court finds that Walgreens has waived privilege with respect to all 27 documents.

Accordingly, Walgreens' and Cardinal's Objections to Special Master Cohen's Amended Discovery Ruling No. 14, Part 1, **Doc. ##: 1397, 1398**, are hereby **OVERRULED**. Special Master Cohen's Amended Discovery Ruling No. 14, Part 1 is affirmed.

     **IT IS SO ORDERED.**

       **/s/ Dan Aaron Polster** *March 11, 2019*
       **DAN AARON POLSTER**
       **UNITED STATES DISTRICT JUDGE**