UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track One Cases | |

# PLAINTIFFS' OBJECTIONS TO DISCOVERY RULING NO. 17

March 15, 2019

1704745.2

# TABLE OF CONTENTS

Page

**Introduction** ...................................................................................................................**1**

**Procedural Background** ....................................................................................................**2**

I.     The Special Master Did Not Fully Consider the Multitude of Federal and State Statutes That Prevent the Release of the SACWIS Data and Materials. .....................................................................................................7

       A.     Under the Federal Child Abuse Prevention and Treatment Act (CAPTA), Defendants Failed to Establish that the Privileged Information Is "Necessary for the Determination of An Issue Before the Court." .....................................................................................8

       B.     SACWIS Data Is Protected by Other Federal and State Statutes. ............11

II.     Defendants Have Not Demonstrated a Need for Sweeping Access to the Private Information of Ohio's Most Vulnerable Children and their Parents and Caregivers. .......................................................................................14

III.     The Special Master Incorrectly Assumes That Plaintiffs Can Feasibly Comply with their Confidentiality Obligations by Redacting the Records at Issue. ................................................................................................................16

**Conclusion** ......................................................................................................................**18**

# TABLE OF AUTHORITIES

PAGES

**Cases**

*State ex. rel. Cincinnati Enquirer v. Jones-Kelley*,
   886 N.E.2d 206 (Ohio 2008) .......................................................................... 9

**Statutes**

110 Stat. 2166 (1996) ........................................................................................ 11

28 C.F.R. § 20.33 .............................................................................................. 12

34 C.F.R. § 99.31(9) .......................................................................................... 10

42 U.S.C. § 290dd-2(a) ...................................................................................... 9

42 U.S.C. § 5106a(b)(2)(B)(viii) ........................................................................ 8

42 U.S.C. § 671(a)(8) ......................................................................................... 12

42 U.S.C. 1397 .................................................................................................. 11

42 U.S.C. 5101 .................................................................................................. 11

42 U.S.C. 670 .................................................................................................... 11

42 U.S.C. 674(a)(3)(C) ....................................................................................... 11

45 C.F.R. § 205.50 .............................................................................................. 12

5 U.S.C.§ 552a(e)(10) ........................................................................................ 12

Child Abuse Prevention and Treatment Act ("CAPTA") ........................................ 6, 8, 11

Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and
   Rehabilitation Act (CAAAPTRA) ............................................................... 6, 8

Family Educational Rights and Privacy Act ................................................... 8, 10

Federal Foster Care and Adoption Assistance Program (FFCAAP) ...................... 6

Ohio Admin. Code § 5010:2-33-21 ..................................................................... 8

Ohio Rev. Code § 2151.421(I)(1) ........................................................................ 8

Ohio Rev. Code § 2151.421(L)(2) ....................................................................... 8

Ohio Rev. Code § 3107.39 .................................................................................. 8

Ohio Rev. Code § 5101.132(A)(2) ....................................................................... 8

Ohio Rev. Code §§ 109.5721 .............................................................................. 13

Social Security Act of 1967 ................................................................................ 11

The Fair Credit Reporting Act, 15 U.S.C. § 1681 ................................................ 12

The Privacy Act of 1974, 5 U.S.C. § 552a ........................................................... 12

## INTRODUCTION

Plaintiffs Cuyahoga County and Summit County ("Plaintiffs") hereby object to Discovery Ruling No. 17 ("DR 17" or "the Ruling"), issued by Special Master David Cohen on March 10, 2019. (A copy of the Ruling is attached as Exhibit 1[1] hereto.)  In the Ruling, the Special Master ordered Plaintiffs to disclose highly confidential information concerning thousands of children in the counties' care—including full "case files" for ten of these children and their families—notwithstanding the fact that this sensitive data is protected by a host of federal and state privacy laws that explicitly bar its release, and that the State of Ohio supports Plaintiffs' position. Plaintiffs respectfully submit that the Special Master's Ruling did not properly consider the extent to which these statutes prohibit the information's release, and incorrectly concluded that issuance of a court order provides an exception to every one of those federal and state mandates. Beyond determining that the disclosures were permissible, the Special Master also incorrectly concluded that Plaintiffs can feasibly comply with their confidentiality obligations by redacting the records at issue.  Left to stand, the Ruling would allow Defendants sweeping access to the private information of vulnerable children, their caregivers and reporters of abuse without proper justification and require Plaintiffs to violate federal law.

For these reasons, the Ruling should be reversed and this Court should hold that: (1) the SACWIS data and materials are privileged; (2) Cuyahoga County's clawback of

---

[1] Exhibits are omitted from all discovery letter exhibits out of an abundance of caution, in light of the parties' confidentiality designations.

CUYAH_002442182 was appropriate; (3) Summit County need not produce a similar spreadsheet; and (4) Cuyahoga County and Summit County need not produce any full children's "case files."

PROCEDURAL BACKGROUND

**The Request for Production of Documents and Plaintiffs' Responses**

Distributor Defendants' Request for Production of Documents No. 7 ("RFP 7") seeks:

> [a]ll documents and data referring or relating to Plaintiff expenditures relating to the abuse, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids or the possession, abuse, illegal sale, or addiction to other opioids, including documents related to healthcare costs paid by Plaintiff….

See Ex. 2 at 4.

On January 7, 2019, Defendants sought to compel Cuyahoga County to produce documents and data from the Statewide Automated Child Welfare Information System ("SACWIS"), a database containing comprehensive information (including substance use information) related to children and families assisted by the Cuyahoga County Division of Children and Family Services ("Cuyahoga DCFS"). Defendants also sought "individual case note files and/or activity logs for any client and/or case identified as involving substance abuse." Ex. 3 (Jan. 7, 2019 K. Hibbert Letter Motion). Defendants contended that this information would be responsive to RFP 7, as it is "necessary to determine any potential damages related to substance abuse" by DCFS clients. *Id.*

2
1704745.2

Plaintiff Cuyahoga County responded the following day that it had produced a SACWIS dataset in response to RFP 7 several months before in August 2018 in the form of an Excel spreadsheet (CUYA_002442182) generated by the Cuyahoga DCFS. *See* Ex. 4 (Jan. 8, 2019 H. Shkolnik Letter). The CFS Spreadsheet, though de-identified, contained all placement removal reasons from 2006 until 2018; a tab that summarizes all of the data—such as number of children affected by substance abuse, number of drug abuse children, number of drug abuse parents, and the number of children affected by prenatal drug exposure; a tab with character lists such as heroin and opiates; and a tab including the case ID, person ID, age, characteristic code, and characteristic description. Plaintiffs, however, opposed the request for children's case files, arguing that these contain highly sensitive identifying information, which would require extensive, highly burdensome redactions.[2] *Id*.

On January 16, 2019, Defendants once again sought to compel Cuyahoga County, and this time Summit County as well, to produce highly confidential SACWIS data and full individual children's case files.  *See* Ex. 5 (Jan. 16, 2019 K. Hibbert Letter).  Summit County had already produced de-identified SACWIS documents in its possession (although the set was somewhat different from CUYA_002442182). Those productions included a summary report of Opioid Removal Data from 2012-2017 (SUMMIT_001984434 – SUMMIT_001984435) on November 19, 2018, spreadsheets

---

[2] On January 15, 2019, after conferring with Defendants, Plaintiff Cuyahoga County did offer to request from the State data relating to ten additional characteristics that were arguably opioid-related, but declined to request data relating to non-opioid substance abuse. *See* Ex. 6 Jan. 15, 2018 H. Shkolnik Letter at 2-5.

3

containing child removal information (SUMMIT_001874929 and SUMMIT_001874930) on October 25, 2018, and a spreadsheet with information on Summit County Child Services ("Summit CCS") budgets along with Board minutes and other information requested by Distributors (SUMMIT_002054321), re-produced in January 2019. Defendants, however, considered this data to be insufficient, and sought to compel the production of comprehensive SACWIS data and children's case files. *See* Ex. 5 (Jan. 16, 2019 K. Hibbert Letter).

Plaintiffs Cuyahoga County and Summit County opposed this motion in a January 21, 2019 letter, arguing that: (1) Defendants' motion to compel was an effort to circumvent this Court's prior determinations that highly sensitive information about children need not be produced; (2) more than 15 federal and state laws prohibit the requested disclosure; (3) Distributors' requests were overbroad and unjustified; and (4) the requested production would have an outsized burden on the Counties, and limited probative value. *See* Ex. 7 (Jan. 21, 2019 P. do Amaral Letter). Defendants argued that some of the federal laws cited by Plaintiffs did not bar disclosure of the SACWIS data at issue (see Ex. 8 (Feb. 6, 2019 K. Hibbert Letter)). Plaintiffs countered that Defendants failed to even address the vast majority of statutes and regulations Plaintiffs had identified, among other key deficiencies (see Ex. 9 (Feb. 11, 2019 H. Shkolnik Letter)).

**Plaintiffs' Subsequent Clawback**

On February 1, 2019, prompted by the motion practice regarding the SACWIS data, a conference call was scheduled with the Ohio Attorney General (OAG) to discuss the additional production. The OAG then informed the Counties of the State's position

4

that the CFS Spreadsheet previously produced by Plaintiff Cuyahoga County likely disclosed information protected under state and federal confidentiality provisions and requested that Plaintiffs claw back this information. That same day, Plaintiff Cuyahoga County notified Defendants that it was clawing back CUYA_002442182 pursuant to paragraph 53 of Case Management Order 2 ("CMO 2").  *See* Ex. 10, (Feb. 1, 2019 H. Shkolnik Letter).  Plaintiff stated that production of this document inadvertently disclosed Privileged Information and asked Defendants to destroy it completely, pursuant to paragraph 55 of CMO 2.

On February 14, 2019, Defendants informed Plaintiffs that they did not intend to destroy the CFS spreadsheet.  *See* Ex. 11 (Feb. 14, 2019 D. Haller Letter).  The following day, on February 15, 2019, Defendants sent a substantively identical letter to the Special Master seeking a determination that Plaintiffs' disclosure was not inadvertent, and that the underlying information was not protected from disclosure, or that the protection was waived.  *See* Ex. 12 (Feb. 15, 2019 S. Boranian Letter). On February 22, Plaintiffs opposed Defendants' motion, arguing that Plaintiffs' request to claw back the CFS Spreadsheet represented a good faith claim of privilege, properly and promptly asserted under CMO 2 and that underlying information was, indeed, protected from disclosure.

**Special Master Cohen's Ruling**

On February 27, 2019, the Special Master issued an informal ruling, denying Defendants' motion to compel production of the complete SACWIS database for the families in Summit and Cuyahoga Counties impacted by opioid use, and instead found

5

that the production of the de-identified spreadsheet produced by Cuyahoga with an additional production of a sample of ten case files would be sufficient.  Ex. 13 (February 27, 2019 Informal Ruling). By finding that the spreadsheet was "appropriate and sufficient," however, the Special Master effectively denied Plaintiff Cuyahoga's request to claw back production of the SACWIS spreadsheet (CUYA_002442182).  *Id.*  On March 1, 2019, Plaintiffs asked the Special Master to formalize this Ruling in a written order. Ex. 14 (Plaintiffs' Request for Formal Ruling). On March 10, 2019, the Special Master issued Discovery Ruling No. 17 Regarding SACWIS Data, formalizing his February 27 order.  Ex. 1.

The Special Master's Discovery Ruling mirrors his informal ruling, concluding that Cuyahoga County's production of the SACWIS spreadsheet (CUYA_002442182) "was an appropriate and sufficient production of SACWIS data fields by Cuyahoga County." It further requires Summit County to produce "a similar spreadsheet containing the same data fields." *Id.* at 2.  Further, it compels Cuyahoga and Summit Counties to produce ten case files of defendants' choosing, with any identifying information for minors or their families redacted. "The counties' redactions shall be as limited as possible while fulfilling this directive." *Id.* at 2.

The Ruling directs the Ohio Department of Jobs and Family Services to coordinate with Cuyahoga and Summit Counties to facilitate their production of the SACWIS data and materials.  In so doing, DR 17 disregards the numerous federal and state statutes and regulations cited by Plaintiffs that prevent the release of SACWIS data—among them, the Child Abuse Prevention and Treatment Act ("CAPTA"), the

Federal Foster Care and Adoption Assistance Program (FFCAAP), and the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act (CAAAPTRA) — summarily concluding without analysis that the statutes and regulations all "contain provisions allowing for release pursuant to Court order in appropriate circumstances."  Plaintiffs file this objection because that is not the case.

**I.**    **THE SPECIAL MASTER DID NOT FULLY CONSIDER THE MULTITUDE OF FEDERAL AND STATE STATUTES THAT PREVENT THE RELEASE OF THE SACWIS DATA AND MATERIALS.**

In DR No. 17, the Special Master concluded that the host of federal and state statutes and regulations protecting the SACWIS data at issue here from disclosure all "contain provisions allowing for release pursuant to Court order in appropriate circumstances." The Ruling, the Special Master found, "fits within those provisions." Disclosure of the SACWIS data and materials, however, implicates a plethora of state and federal laws, several of which do not contain any such provisions. Moreover, the statutes cited by Plaintiffs that provide for court-ordered disclosure also establish a high threshold to apply such exceptions. The Special Master's Ruling, however, failed to analyze the applicability of these statutes and the exceptions therein or to determine whether Defendants had met those high standards. The Special Master's conclusion that his Ruling "fits within th[e] [statutory] provisions" "allowing for release pursuant to Court order in appropriate circumstances" is therefore unsupported, Ex. at 1 (DR 17), and this Court should overrule it.

A.    **Several Applicable Statutes and Regulations Do Not Allow for Release Pursuant to Court Order.**

Plaintiffs have identified more than fifteen statutes and regulations that prohibit disclosure of highly confidential information such as the SACWIS data and materials, encompassing health care privacy restrictions and protections applicable to educational records, military records, criminal history records, credit reporting, closed adoption proceedings, and other sealed court records, among other things. Despite the Special Master's conclusion that these statutes and regulations all "allow[] for release pursuant to Court order," Plaintiffs have not found (nor have Defendants or the Special Master identified) any such exceptions in several of the cited statutes.[3] For this reason alone, the Special Master's ruling should be overruled.  Moreover, even for statutes that *do* permit release pursuant to court order, Defendants failed to establish that the circumstances required to permit release are present here.

B.    **Under the Federal Child Abuse Prevention and Treatment Act ("CAPTA"), Defendants Failed to Establish that the Privileged Information Is "Necessary for the Determination of An Issue Before the Court."**

Even where relevant statutes allow some exceptions for court-ordered disclosure, such as the Child Abuse Prevention and Treatment Act, the Comprehensive Alcohol Abuse and Alcoholism Present Treatment and Rehabilitation Act, and the Family Educational Rights and Privacy Act Regulations, an analysis of these exceptions reveals that they are not applicable here.

---

[3] Such statutes and regulations include Ohio Admin. Code § 5010:2-33-21; Ohio Rev. Code § 2151.421(I)(1); Ohio Rev. Code § 2151.421(L)(2); Ohio Rev. Code § 3107.39; Ohio Rev. Code § 5101.132(A)(2).

1704745.2

The Child Abuse Prevention and Treatment Act ("CAPTA") prohibits the disclosure of identifying data concerning programs related to child abuse and neglect. This federal statute requires states to adopt programs "to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians." 42 U.S.C. § 5106a(b)(2)(B)(viii). While CAPTA does contain a narrow provision allowing for discovery of otherwise privileged information when mandated by a court under particular circumstances, this provision is not applicable here. CAPTA allows for privileged reports and records to be made available to "a grand jury or court, upon a finding that information in the record is **necessary for the determination of an issue** before the court or grand jury." *Id.* (emphasis added). No such finding has been made here. Indeed, the Special Master failed to conduct the requisite analysis to determine if the requirements of this provision had been met.

The Special Master failed to consider the high bar that Defendants must meet to establish that disclosure of child welfare data is "necessary" here. As described in more detail below (*see infra* Sec. II), information on individual opioid-related child abuse and neglect cases has limited probative value and would be far outweighed by the risk of prejudice and cumulative evidence. Plaintiffs and their experts intend to rely on aggregate data to prove their damages, rather than relying on the SACWIS data at issue or on children's individual case files, and Defendants already have access to ample publicly available, systematically de-identified case-level data.[4] Indeed, even when there is a court order, the Supreme Court of Ohio has recognized that forcing an

---

[4] *See* https://www.acf.hhs.gov/cb/research-data-technology/reporting-systems/afcars.

overbroad disclosure of the sensitive records maintained in this system "may jeopardize Ohio's eligibility to receive funding for the state's foster-care programs and irrevocably destroy the privacy" of the persons whose information is disclosed. *State ex. rel. Cincinnati Enquirer v. Jones-Kelley*, 886 N.E.2d 206, 214 (Ohio 2008) (declining to order full disclosure of the names and addresses of foster caregivers).

Similarly, the Comprehensive Alcohol Abuse and Alcoholism Present Treatment and Rehabilitation Act ("CAAPTRA") mandates that information be confidential, *see* 42 U.S.C. § 290dd-2(a), but allows for disclosure where "authorized by an appropriate order of a court of competent jurisdiction granted *after application showing good cause therefor*, including the need to avert a substantial risk of death or serious bodily harm." 42 U.S.C. § 290dd-2(b)(1)(2)(C) (emphasis added). The statute directs the Courts to "weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." *Id.* Here, disclosure is certainly not necessary to avoid risk of death or bodily harm, and as established *infra*, Defendants have not established any need for disclosure.

The Family Educational Rights and Privacy Act Regulations (FERPA) also allows for disclosure of "personally identifiable information from an education record of a student" without consent from the parents or student where "disclosure is to comply with a judicial order or lawfully issued subpoena." 34 C.F.R. § 99.31(9)(i). Such disclosure, however, is only allowed "if the agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of the

compliance, so that the parent or eligible student may seek protective action." *Id.* at (9)(ii). No such efforts have been undertaken here.

### C. SACWIS Data Is Protected by Other Federal and State Statutes.

The statutes above are not the only laws implicated by the Special Master's discovery ruling. Several Ohio statutes similarly prevent disclosure of the data at issue, protecting the privacy interests of children and their caregivers, as well as those who report abuse: ORC 5153.17 (ordering that the records of public children services agencies shall be kept confidential); ORC 2151.421(I)(1)(noting "a report [related to child abuse or neglect] made under this section is confidential[,]" and providing for disclosure); ORC 2151.421(L)(2) (further noting "the agency shall not disclose any confidential information regarding the child who is the subject of the report"); OAC 5101:2-33-21 (ordering that "[e]ach referral, assessment/investigation and provision of services related to reports of child abuse, neglect, dependency, or family in need of services (FINS) is confidential" and that child welfare contained in SACWIS is "confidential pursuant to section 5101.131 of the Revised Code"); ORC 5101.13;[5] OAC

---

[5] See, e.g.,

(A) The statewide automated child welfare information system (SACWIS) shall be established and maintained in accordance with the requirements of 42 U.S.C. 674(a)(3)(C) (2008). Access to and use of data in SACWIS shall be limited to the extent necessary to carry out the child welfare program under Title IV-B of the Social Security Act of 1967, P.L. 109-288, 120 Stat. 1244 (2006), the Child Abuse Prevention and Treatment Act, 110 Stat. 3064 (1996), 42 U.S.C. 5101, Title IV-E of the Social Security Act of 1967, 110 Stat. 2166 (1996), 42 U.S.C. 670, and Title XX of the Social Security Act, 124 Stat. 803 (2010), 42 U.S.C. 1397.

(B) The data in SACWIS is confidential and access to any child welfare information shall be pursuant to this rule or section 5101.132 of the Revised Code.

*Footnote continued on next page*

11

5101:2-33-23 (providing that "[a]ll case records prepared, maintained, and permanently kept by the PCSA are confidential"); ORC 5101.29(D)(noting records are not subject to public records law); ORC 2151.142 (mandating that "residential addresses [] contained in public records kept by a public children services agency, private child placing agency, juvenile court, or law enforcement agency [shall not be] subject to inspection or copying as part of a public record" and are confidential); OAC 5101:2-33-21(E)(providing that "[t]he PCSA shall not release the identities of the referent/reporter, and any person providing [child welfare] information during the course of an assessment/investigation shall remain confidential. The identities of these individuals shall not be released or affirmed by the PCSA to any party without the written consent of the individual(s) involved, except to those individuals outlined in paragraph (F) of this rule."); ORC 3107.17(requiring the confidentiality of records related to adoption); and OAC 5101:2-48-23 (describing how after an adoption is final, an adoptive child case record is marked "confidential and permanently secure such record from release or inspection of any information," with narrow exceptions).

In addition, the following federal laws are also applicable here:

- The Federal Foster Care and Adoption Assistance Program, under Title IV-E of the Social Security Act (limiting disclosure of information of individuals

---

*Footnote continued from previous page*

(C) The data in SACWIS is confidential and release of any child welfare information shall be pursuant to rule 5101:2-33-21 of the Administrative Code and sections 5101.13 to 5101.134 of the Revised Code.

ORC 5101.13(A-C).

receiving public assistance, defined broadly to include most social services). *See* 42 U.S.C. § 671(a)(8); 45 C.F.R. § 205.50.

- The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., which protects the privacy of consumer credit reports, including both financial information and criminal background checks.

- The Privacy Act of 1974, 5 U.S.C. § 552a, protecting (among other things) military service records. *See, e.g.*, 5 U.S.C.§ 552a(e)(10) (requiring agencies to safeguard the confidentiality of records maintained by the Federal government on government employees); and

- Federal regulations limiting the dissemination of criminal history information that the State obtains in connection with its child abuse and neglect investigations and foster care and adoption placement services, such as information obtained through the National Instant Criminal Background Check System and information obtained from the Ohio Bureau of Criminal Identification and Investigation. *See, e.g.*, 28 C.F.R. § 20.33(d) (limiting criminal history records to use "only for the purpose requested") and 28 C.F.R. § 20.33(b) (providing that an agency's unauthorized dissemination of such information to third parties may be grounds for cancelling the Federal government's exchange of information with the agency); Ohio Rev. Code §§ 109.5721(E), (G) (limiting use of Ohio BCI's retained fingerprint database to the purposes solely for which the database was created, including approval for adoption).

13

Several of these statutes do not include provisions for court-ordered disclosure, and even where they do, these are not blanket exceptions of privilege (*see* section I.A. and I.B. *supra*). The Special Master therefore incorrectly disregarded a host of relevant statutes in his Ruling.

## II. DEFENDANTS HAVE NOT DEMONSTRATED A NEED FOR SWEEPING ACCESS TO THE PRIVATE INFORMATION OF OHIO'S MOST VULNERABLE CHILDREN AND THEIR PARENTS AND CAREGIVERS.

Both Special Master Cohen and this Court have acknowledged that discovery into highly sensitive, personal information about non-party children is unnecessary in this litigation.[6][7]  Indeed, Plaintiffs have repeatedly argued that the evidence at issue here should not be admitted in Defendants' case in chief under Rule 403 because the probative value of any case-by-case presentation of information on individual opioid-related child abuse and neglect cases would be far outweighed by the inherent risk of

---

[6] *See* Discovery Ruling No. 13 ("DR 13") Regarding Various Matters [Dkt. 1215] at 2; and Order [nondocument] Distributors' objection to Part I of Special Master Cohen's Discovery Ruling No. 13 [Dkt. 1219].

[7] Specifically, one of Defendants' interrogatories sought the identities of "all children, including infants born addicted to opioids, for whom You incurred costs for which you seek damages" and requested detailed information about these children.  Opposing a similar defense motion to compel, Plaintiffs argued that: "compelling Plaintiffs to make the disclosures sought, such as the names and identities of foster children and caregivers, would jeopardize the Plaintiffs eligibility to receive federal funding for foster-care programs and irrevocably destroy the privacy of foster children and caregivers whose identities are required under federal and state law to remain confidential," and that "public policy requiring the protection and confidentiality of those most vulnerable, newborns and children whose lives have been devastated by opioids, far outweighs any imaginable relevance or need Defendants would have for this information."  Plaintiffs' Dec. 3, 2018 Letter to Special Master at 7-9. The Special Master found these arguments "well taken," and required no supplementation of Plaintiffs' responses to these interrogatories.  DR 13 at 2.  Judge Polster adopted this ruling and overruled Defendants' objections in full.

14
1704745.2

prejudice and the danger of needlessly presenting cumulative evidence. And the Counties have repeatedly informed Defendants that the Counties and their experts intend to rely on aggregate data to prove their damages and will not rely on the SACWIS data or children's case files. Defendants already have ample grounds to cross-examine Plaintiffs' experts and their reliance on aggregate data, in the same manner that parties routinely cross-examine other experts who rely on aggregate data (e.g., morbidity and mortality statistics, financial and economic data, etc.) without discovery into individual anecdotal case examples relating to the same topic.[8]

Moreover, Defendants can obtain equivalent discovery by less invasive means than combing through foster children's case files. A substantial volume of publicly-available, systematically de-identified case-level data derived from the State's SACWIS system is already available through public information requests for the Adoption and Foster Care Analysis Reporting System ("AFCARS").[9] Further, to the extent Defendants require case-level or anecdotal information to present an alternative view of the facts, Defendants have already had the opportunity to depose, at length, County employees who have extensive knowledge both of the impact of the opioid epidemic on the workload of their child welfare services, and of the Counties' record-keeping pertaining

---

[8] With respect to Defendants' claim that they need the children's files to formulate their defenses, one need only look at their affirmative defenses to recognize the fallacy here. There is nothing unique to children's data that is necessary for the Defendants to argue that the statute of limitations has run, that illegal actions are to blame, or that poverty, race, religion, income, socio-economics, the recession, intervening causes, or multiple use disorders are to blame (to name but a few defenses being advanced).

[9] *See* https://www.acf.hhs.gov/cb/research-data-technology/reporting-systems/afcars.

15

1704745.2

to the impact of opioid drugs. Defendants have yet to articulate any valid justification that would explain the extreme burden Defendants' proposed discovery would impose on the Counties and the State of Ohio, and the potential intrusion on the privacy of vulnerable minors and their families. In the absence of any compelling need for the highly confidential information at issue, the Special Master erred by directing Plaintiffs to risk federal funds by disclosing the SACWIS data and materials.

III.    THE SPECIAL MASTER INCORRECTLY ASSUMES THAT PLAINTIFFS CAN FEASIBLY COMPLY WITH THEIR CONFIDENTIALITY OBLIGATIONS BY REDACTING THE RECORDS AT ISSUE.

The Special Master directed Cuyahoga County and Summit County to produce ten "case files" selected by Defendants, redacting from the case files any identifying information about the minors and their families. The Special Master's assumption that the Counties (or the State) can feasibly comply with their confidentiality obligations (even for a small number of case files) merely by redacting the names of child welfare clients and their parents or foster parents disregards the complex and comprehensive nature of each case record.

SACWIS contains "case management" data tracking "all work related to a SACWIS family as defined by participation in a family case. A family case is a record comprised of members for the purpose of providing, recording, and supervising [child welfare] services." Ex. 15 (SACWIS Training Materials) at 41. In particular, for each child, family member, foster and adoptive parent, household member, and caregiver associated with a child welfare case, the SACWIS data may include the following categories of information, significant portions of which may be subject to statutory

16
1704745.2

and/or regulatory confidentiality obligations above and beyond the general protections given to child welfare services records under Ohio law:

- **Basic person profile.** This includes an individual's name, address, identifying information, demographics, marital information, reference ID's, paternity information, criminal history, personal characteristics, and hazardous behavior.
- **Education profile.** This includes a history of school districts and schools a child attended, as well as a child's academic performance and school attendance by grade level. It may also contain special education needs, including the existence of Multi-Factored Evaluations (MFE) and Individualized Education Plans (IEP). Additionally, [the system contains] graduation and school activity information.
- **Medical profile.** This includes information about a child's health care providers, medications, immunizations, medical history, treatments, health insurance, and birth or pregnancy information.
- **Financial profile.** This includes income, expense, resource, and employment and health insurance information ...
- **Other profile information.** [The system also contains] SACWIS work history, legal and delinquency information, and military history.

*Id.* at 8.

And the information recorded in SACWIS goes far beyond the profiles maintained for these children and their families, encompassing every aspect of the Counties' assessment, investigation, and child welfare services:

- Each case may have associated records in SACWIS on "assessments, court activities, case services, case plans, placements, and so on." *Id.* at 41.

- SACWIS tracks "all of the legal actions associated with [each] case. Such actions include motions, hearings, subpoenas, rulings for court jurisdiction transfer and legal status, and so on." *Id.* at 61.

- SACWIS tracks financial information relating to each case, including information used to determine eligibility for foster care maintenance and adoption placement assistance, child benefit payments (child support, SSI, etc.) and the accounts into

17

which these funds can be deposited, Medicaid and HMO reimbursement, and disbursements paid in connection with the case. *Id.* at 103.

- SACWIS tracks "all activities related to adoptive cases, for example, recruitment, case plans, Ohio Adoption Photo Listing (OAPL) registration, the child study inventory, adoptive placement, and finalization." *Id.* at 121.

The information entered by the Counties into SACWIS is sufficiently complex and detailed that it is not subject to de-identification merely by excluding certain data fields, as could potentially be the case for simpler datasets such as prescription drug claim files. *See* Ex. 15 (SACWIS training materials).  Indeed, many of the potentially relevant data fields contain free-form text entries, each of which would have to be reviewed and redacted even if all narrative fields were excluded from production. Even for a small volume of case files, such an effort would impose Herculean burdens upon the Counties and the only specialized County personnel who have sufficient expertise to identify all of the confidential information that would actually require redaction. In this context, the Court should not lose sight of the fact that every hour spent reviewing and redacting the child welfare case files to satisfy Defendants' discovery demands is an hour directly diverted from their responsibilities in protecting the State's most vulnerable population of abused and neglected children.

## CONCLUSION

For the foregoing reasons, this Court should overrule the Ruling of the Special Master and deny Defendants' motion to compel production of SACWIS spreadsheets and case files.

18

*/s/ Elizabeth J. Cabraser*

Elizabeth J. Cabraser
Paulina do Amaral
**LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP**
275 Battery Street
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008
ecabraser@lchb.com
pdoamaral@lchb.com

Linda Singer
Louis Bograd
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com
lbograd@motleyrice.com

Paul Hanly
Jayne Conroy
Andrea Bierstein
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th floor
New York, New York 10016-7416
PHanly@simmonsfirm.com
JConroy@simmonsfirm.com
ABierstein@simmonsfirm.com

Ann Saucer
**BARON & BUDD**
3102 Oak Lawn Avenue, Ste. 1100
Dallas, TX 75219
asaucer@baronbudd.com

Paul Thomas Farrell Jr.
**GREENE, KETCHUM, FARRELL,
BAILEY & TWEEL LLP**
419 Eleventh Street
Huntington, WV 25701
paul@greeneketchum.com

Joe Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
jrice@motleyrice.com

*Attorneys for Plaintiffs*