# EXHIBIT 3



**Driving progress**
through partnership

**Kelly H. Hibbert**
Direct Phone:  +1 202 414 9226
Email:  khibbert@reedsmith.com

Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

January 7, 2019

**Confidential**

**By Electronic Mail**

Special Master David Cohen
Carl B. Stokes United States Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113-1837

Re:    *In re: National Prescription Opiate Litigation*, MDL No. 2804
       **Motion to Compel Production of SACWIS Data and Documents**

Dear Special Master Cohen:

      Distributor Defendants respectfully request an order requiring the County of Cuyahoga, Ohio ("Plaintiff") to produce documents and data from the Statewide Automated Child Welfare Information System ("SACWIS") from 2006 to the present time.[1]  Specifically, Distributors request that Plaintiff produce (1) the SACWIS dataset containing comprehensive client substance use information and (2) the individual case note files and/or activity logs for any client and/or case identified as involving substance abuse.  This information is responsive to Distributor Defendants' Request for Production of Documents No. 7, as it is necessary to determine any potential damages related to substance abuse by participants of the Cuyahoga County Division of Children and Family Services ("DCFS") and, in turn, prepare the Distributors' defense.

     A.    **The Cuyahoga County Division of Children and Family Services Uses SACWIS to Record and Track Client Substance Abuse Information.**

      Distributors first learned of the significance of SACWIS during the deposition of Christopher Cabot, the current Administrator of Extended Services for the DCFS, which took place on November 2, 2018.  During his deposition, Mr. Cabot testified that DCFS first started using SACWIS in "[a]pproximately 2008."  *See* **Ex. 1**, Dep. of Christopher Cabot ("Cabot Dep."), Nov. 2, 2018, at 92:16-23.  He further testified "[s]ince January 1, 2014, we have been keeping data" in SACWIS "on specific types of drugs involved with each of our cases."  *See id*. at 248:13-15.  He explained that the specific type of substance being abused would be reported in the activity logs or the case notes within SACWIS.  *Id.* at 98:11-17.  He then testified that the first place to look to determine what substance was at issue for any given case was the activity logs or the case notes for that case.  *Id.* at 98:18-23.

---

[1]     As explained herein, Cuyahoga County deponents have testified that SACWIS first became available for use to DCFS employee use in 2008.  To the extent that is correct and there is in fact no SACWIS data available prior to 2008, Distributors request documents and data from SACWIS from 2008 to the present time.

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

Special Master David Cohen
January 7, 2019
Page 2



The importance of SACWIS was reaffirmed during the deposition of Cynthia Weiskittel, the current Executive Director of DCFS, which occurred on November 13, 2018.  During Ms. Weiskittel's deposition, she testified that DCFS employees are required by the State of Ohio to enter information reflecting client "drug screen" results into SACWIS.  *See* **Ex. 2**, Dep. of Cynthia Weiskittel ("Weiskittel Dep.") at 54:5 – 55:14.  She further testified that DCFS employees have been required to enter "drug of choice information," *i.e.*, information on the "drug that the parents state that they choose to use," in SACWIS since 2014.  *See id.* at 179:8 – 182:2.  Ms. Weiskittel additionally confirmed that there are ongoing efforts to use SACWIS to assess the impact of opioid abuse.  For example, she testified that DCFS participated in a "caseworker blitz" to "update the information [in SACWIS] as it related to opiates . . . to get a better overall view of what was going on in the state."  *See id.* at 275:12 – 278:1.

Plaintiff has also produced documents in this litigation that demonstrate SACWIS is used to track relevant client substance abuse information.  *See, e.g.*, **Ex. 3**, CUYAH_002453543-45 (April 17, 2014 email forwarding a memo implementing a policy requiring DCFS employees to track all drug of choice information in SACWIS and instructions on how to enter drug of choice information into SACWIS in the person characteristics field); *see also* **Ex. 4**, CUYAH_002450606-07 (April 11, 2014 email forwarding "Drug/Alcohol Abuse Person Characteristics Counts: SACWIS 04/10/2014").

**B.    The Information Stored in SACWIS is Responsive to Distributor Defendants' Request for Production of Documents Number 7 and Not Available through Other Means.**

As alleged by Plaintiff, "Children and Family Services" damages are those damages borne by Plaintiff related to the impact of prescription opioids on children and families, *see* Second Am. Compl. ¶¶ 668-74, or the impact of other substances purportedly abused as a result of prescription opioid addiction (e.g., heroin), *see id.* ¶17.  Plaintiff has claimed these damages include, among other things, the costs associated with an increasing number of cases coming into DCFS involving opioid use, the costs associated with an increasing number of paid placements due to removal of children from households with opioid abusing parents, the costs associated with increased staff required to handle opioid cases, and the costs associated with certain specialized care that is required for children affected by opioid abuse.  *See id.* ¶¶ 668-74.

Distributor Defendants' Request for Production of Documents No. 7 seeks:

All documents and data **referring or relating to Plaintiff expenditures relating to the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids** or the possession, abuse, illegal sale, or addiction to other opioids, including documents relating to healthcare costs paid by Plaintiff or by fully or partially-funded medical insurance plans and workers' compensation programs.  Include in this response any policies governing evaluation or approval of those expenditures' legitimacy.

**Ex. 5**, Distributor Defs.' First Set of Reqs. for Prod. to Pls., at 4 (emphasis added).  According to the testimony of Cuyahoga County DCFS employees, SACWIS contains information regarding which DCFS cases involve substance abuse and the types of substances abused by DCFS clients, *i.e.*, "drug of choice"



Special Master David Cohen
January 7, 2019
Page 3

information reflecting the "drug that the parents state that they choose to use." *See* **Ex. 2**, Weiskittel Dep. at 179:8 – 182:2; *see also* **Ex. 1**, Cabot Dep. at 248:13-15.  Thus, the SACWIS materials are necessary to determine which individual cases involved opioids and what costs may be related to "the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids." As such, this information is clearly responsive to Request for Production No. 7.

Moreover, access to SACWIS is the only way to obtain inclusive DCFS client substance abuse information.  That is, while a limited number of summary reports have been produced in this litigation reflecting generalized data regarding DCFS client substance abuse for limited periods of time, this is insufficient. *See Mervyn v. Atlas Van Lines, Inc.*, No. 13-C-3587, 2015 WL 12826474, at \*4-5 (N.D. Ill. Oct. 23, 2015) (holding that the sample of relevant contracts produced was insufficient insofar as they did not allow plaintiff the opportunity to accurately assess the issues, and ordering production of the entire universe of responsive contracts).  SACWIS is the only forum that holds *comprehensive, DCFS-wide* information documenting which DCFS cases involve substance abuse and the type of substance being abused through aggregate data and individual case files. *See* **Ex. 2**, Weiskittel Dep. at 179:8 – 182:2 (describing the policy requiring DCFS employees to enter all drug of choice information *in SACWIS*); *see also* **Ex. 1**, Cabot Dep. at 98:11-23 (noting that the specific type of substance being abused would be reported in the activity logs or the case notes within SACWIS, and the first place to look to determine what substance was at issue for any given case was the activity logs or the case notes for that case). Furthermore, the hard copy case files for DCFS, which would likely contain the same information pertaining to client substance use, have not been produced in this litigation.  As such, access to SACWIS is necessary to obtain the requisite substance abuse information.

**C.**    **Access to SACWIS Is Necessary to Assess the Validity of Plaintiff's Claim for Damages Related to Expenditures Allegedly Resulting From Abuse, Use, Misuse, Prescribing, Dispensing, Sale, Distribution, Addiction To, and/or Diversion Of Prescription Opioids.**

On November 30, 2018, Plaintiff served its Second Supplemental Response to Distributor Defendants' Interrogatory No. 18, along with supporting exhibits. *See* **Ex. 6**, Cuyahoga County Second Supp. Response to Distributor Defs.' Interrog. No. 18.   Exhibit 2, attached to Plaintiff's response to Interrogatory No. 18, identifies the damages that Plaintiff claims in this case and includes a total of $219,000,000 for "Children and Family Services."

In order to assess the validity of Plaintiff's damages claims set forth in its Second Supplemental Response to Interrogatory No. 18, Distributors need to know first and foremost which DCFS cases involve substance abuse and, more specifically, which cases involve *opioid use, abuse, misuse, etc.* and may therefore be included in Plaintiff's alleged *opioid-related* damages calculations.  This unequivocally requires access to SACWIS's comprehensive substance abuse information. *See Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 244 (N.D. Ohio 2017) (requiring defendant to either create a program that would produce all of the relevant data or produce its actual database so plaintiff's expert could perform the requisite analysis given the data's relevance to plaintiff's claim); *see also City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 480 (6th Cir. 2017) (affirming the district court's rejection of plaintiff's public nuisance claim, in part, because plaintiff's damages "were too attenuated to



Special Master David Cohen
January 7, 2019
Page 4

establish proximate cause;" that is, plaintiff's "failure to tether the damages" to the claim "prevent[ed] [the Court] from assessing the 'directness' of the relationship between the two").

### D.  Defendants Previously Requested SACWIS Documents and Data, but Plaintiff Has Failed to Respond.

In light of the testimony regarding SACWIS provided during the depositions of Mr. Cabot and Ms. Weiskittel, counsel for Defendants sent correspondence to counsel for Plaintiff requesting production of documents and data from SACWIS.  Specifically, on December 13, 2018, defense counsel sent Plaintiff's counsel a letter following up on the deposition of Mr. Cabot requesting production of the "activity logs and/or case note files from the SACWIS database" as responsive to Distributor Defendants' Request for Production of Documents No. 7.  *See* **Ex. 7**, Dec. 13, 2018 Ltr. to H. Shkolnik From K. Hibbert re: Follow-Up to the Deposition of Christopher Cabot.  On December 19, 2018, defense counsel sent a letter following up on the deposition of Ms. Weiskittel requesting production of Plaintiff's "SACWIS dataset containing comprehensive client substance use information" as responsive to Distributor Defendants' Request for Production of Documents No. 7.  *See* **Ex. 8**, Dec. 19, 2018 Ltr. to H. Shkolnik From E. Alexander re: Follow-Up to the Deposition of Cynthia Weiskittel.

As of the date of this letter, Plaintiff has not provided a written response to Defendants' December 13 or December 19 correspondence and has not addressed Defendants' outstanding requests for SACWIS data, activity logs, and case notes.[2]

### E.  Conclusion

Given the foregoing, the Distributors respectfully request that the Court enter an order requiring Plaintiff to produce its aggregate SACWIS data and the individual case note files and/or activity logs stored in SACWIS immediately.

Very truly yours,

*Kelly H. Hibbert*
Kelly H. Hibbert

KHH:rf

Attachments

cc:    mdl2804discovery@motleyrice.com
       xALLDEFENDANTS-MDL2804-Service@arnoldporter.com
       Hunter Shkolnik

---

[2]    On December 31, 2018, Plaintiff produced 253 DCFS-related documents in Cuyahoga County Production Volume 082.  Upon review of these documents, it appears that some may be responsive to some of the follow-up items contained in **Ex. 7** and **Ex. 8**.  However, none of the documents produced represent the aggregate SACWIS data or the activity logs and case note files stored in SACWIS.

Special Master David Cohen
January 7, 2019
Page 5



     Salvatore C. Badala
     Joseph L. Ciaccio