# EXHIBIT 7

**Lieff
Cabraser
Heimann&
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

January 21, 2019

Paulina do Amaral
Partner
pdoamaral@lchb.com

**BY E-MAIL**

Special Master David Cohen
Carl B. Stokes United States Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113-1837

RE:    *In re National Prescription Opiate Litigation*, MDL No. 2804 -
Opposition to Motion to Compel Production of SACWIS Data and
Individual Case Files (Cuyahoga and Summit)

Dear Special Master Cohen:

We write in response to Distributors' December 16, 2018 letters asking you to order that Summit County and Cuyahoga County ("Plaintiffs") produce highly confidential information about thousands of children safeguarded in the State Automated Child Welfare Information System ("SACWIS") database, as well as full case files for each of these foster children and their families.

Plaintiffs oppose this motion for four reasons. ***First***, both the Special Master and Judge Polster have already held that discovery into highly sensitive, personal information about non-party children is unnecessary in this litigation;[1] and Distributors' motion is merely an attempt to circumvent those prior rulings. ***Second***, federal and state laws may prohibit Plaintiffs from disclosing this confidential information except "for the purposes and under the circumstances expressly authorized"—a strict obligation that includes stiff penalties for noncompliance., *see, e.g.*, Compressive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act ("CAPPTR"), 42 U.S.C. § 290dd-2(a)[2]—and with good reason, given the strong public policy reasons for safeguarding deeply personal information about vulnerable children.  We have requested guidance from the Ohio Attorney General's Office on this issue and are waiting for its response, though the Office has cautioned Plaintiffs generally regarding

---

[1] *See* Discovery Ruling No. 13 ("DR 13") Regarding Various Matters [Dkt. 1215] at 2; and Order [non-document] Distributors' objection to Part I of Special Master Cohen's Discovery Ruling No. 13 [Dkt. 1219].
[2] *See also* Child Abuse Prevention and Treatment Act (CAPTA) 42 U.S.C. § 5106a(b)(2)(B)(viii); 42 U.S.C. § 671(a)(8); ORC 5153.17; ORC 2151.421; OAC 5101:2-33-21; ORC 5101.13; OAC 4101:2-33-70; OAC 5101:2-33-23; ORC 2141.421; ORC 5101.29(D), ORC 2151.142;; OAC 5101:2-33-21(E); ORC 3107.17; and OAC 5101:2-48-23.

Special Master Cohen
January 21, 2019
Page 2

constraints on disclosing this information.  ***Third***, Distributors seek sensitive information that goes far beyond any opioid-related harms: they insist on receiving individualized data about families' experiences with alcoholism, methamphetamine use, cocaine, and other topics well beyond the scope of this litigation.  This is improperly invasive of these non-parties' privacy, and serves no legitimate purpose in this litigation.  ***Fourth***, production of individualized, sensitive information is burdensome for Plaintiffs and disproportionate to the needs of the litigation, who would be required to access, review, and meticulously redact every page each individual files—a process that would take months depending on the number of files.  Such an enormous burden is plainly unjustified where Plaintiffs and their experts will rely on aggregate, rather than individualized, proof, where Distributors delayed months before requesting more detailed information, and where Plaintiffs have already produced the relevant, de-identified information in their possession, custody or control.

For these reasons, Distributors' motion should be denied.

## I.      Procedural History

Distributor Defendants' Request for Production of Documents No. 7 seeks:

All documents and data referring or relating to Plaintiff expenditures relating to the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids or the possession, abuse, illegal sale, or addiction to other opioids, including documents relating to healthcare costs paid by Plaintiff or by fully or partially-funded medical insurance plans and workers' compensation programs. Include in this response any policies governing evaluation or approval of those expenditures' legitimacy.

In response to this Request, Plaintiff Cuyahoga County produced a robust SACWIS dataset (CUYAH_002442182, described *infra* at Sec. II.C.) on August 27, 2018.  Similarly, Plaintiff Summit County produced responsive de-identified SACWIS documents in its possession, including a summary report of Opioid Removal Data from 2012-2017 (SUMMIT_001984434 – SUMMIT_001984435) on November 19, 2019.  Summit had also produced spreadsheets containing child removal information (SUMMIT_001874929 and SUMMIT_001874930) on October 25, 2018; and re-produced SUMMIT_002054321 which contains information on Summit County Child Services budgets last week, along with  Board minutes and other information following requests made by Distributors.

Despite having this information since August, Distributors first raised the issue of an "aggregate SACWIS dataset" and individual case files for children in the care of Plaintiffs' child welfare agencies (including social workers' foster care, adoptions, child protective services, and family preservation services) only on December 13, 2018 for Cuyahoga and January 2, 2019 for Summit.

Special Master Cohen
January 21, 2019
Page 3

        In a January 7, 2019 letter to the Special Master, Distributors sought to compel further answers and document production based on their belief that the full SACWIS data and all individual case files are "responsive to Distributor Defendants' Request for Production of Documents No. 7, as [they are] necessary to determine any potential damages related to substance abuse by participants of the Cuyahoga County Division of Children and Family Services ("DCFS")."  *See* Jan. 7, 2019 K. Hibbert Letter Motion (attached to Distributors' motion as Ex. A) at 1.  On January 8, 2019, Cuyahoga directed Defense counsel's attention to CUYAH_002442182, the dataset that had been produced in the earlier August 2018 production. This Excel spreadsheet contained all placement removal reasons from 2006 until 2018; a tab that summarizes all of the data – such as number of children affected by substance abuse, number of drug abuse children, number of drug abuse parents, and the number of children affected by prenatal drug exposure; a tab with character lists such as heroin and opiates; and a tab including the case id, person id, age, characteristic code, and characteristic description.

        On January 11, 2019, the parties met and further conferred.  Plaintiffs again clarified that they did not control or possess the full dataset for SACWIS, and that state and federal law prevented them from producing individual case files for children within their care. On January 15, 2019, Plaintiff Cuyahoga County agreed to request from the State data relating to 10 additional characteristics that were arguably opioid-related, but declined to request data relating to non-opioid substance abuse categories such as alcohol, caffeine, methamphetamine, cocaine, and huffing.  *See* **Ex. 1**, Jan. 15, 2018 H. Shkolnik Letter at 2-5.

        The parties intend to continue meeting and conferring before this Wednesday's teleconference as instructed by the Special Master.  Defendants have indicated however that they intend to press their motion to compel in this week's conference.  Consequently, Plaintiffs write to oppose Distributors' motions.   Plaintiffs have already produced the aggregate SACWIS data they possess related to opioids, and absent other instructions from the State, further privacy protections, federal and state law, and prior orders of this Court preclude production of the individual case files which contain data related children in their control and care.

## II.  <u>Argument</u>

        Distributors seek to compel Plaintiffs to produce: (1) a broad set of SACWIS data, and (2) thousands of detailed case files and case notes revealing personal details of foster children and their families, whether stored in SACWIS (in Cuyahoga's case) or SCCS (in Summit's).  *See* Jan. 16, 2019 K. Hibbert Letter Motions.  To the extent Defendants want this information they must seek it from the State of Ohio, as they have with other State-maintained data, such as OARSS, subject to its statutory constraints. In essence, Distributors ask the Special Master to compel the production of information about thousands of non-party foster children and their caregivers, and the specific physical, sexual, and substance abuse issues affecting each child and family—extremely sensitive information that serves no legitimate purpose given that Distributors have long possessed this data related to opioid removals in aggregate or summary form.

Special Master Cohen
January 21, 2019
Page 4

       Moreover, as Plaintiffs have made clear – SACWIS is a state-run database and the full data is not controlled by Plaintiffs.  *See* SACWIS, https://sacwis.ohio.gov/sacwis/logon.do?command.do(overview)=1 (noting it is run by Ohio Department of Jobs and Family Services).  Pursuant to OAC 4101:2-33-70(E), "[t]he public children services agencies (PCSA) shall monitor access to and use of SACWIS."  Thus, Defendants are not asking Plaintiffs to produce information they *have*, which Summit and Cuyahoga have already done, fully and completely, but rather to obtain from the State additional data and case files that Defendants seek.  The request should be denied.

### A.    <u>Under Existing Rulings, Highly Sensitive Information Concerning Children Need Not Be Produced</u>

       Distributors' attempt to compel the production of such sensitive information is foreclosed by the Special Master's prior ruling on Interrogatories 19, 20, 21 and 29, which were adopted by Judge Polster over Defendants' objections.  *See* DR 13 at 2 (objections summarily overruled Jan. 14, 2019).

       Specifically, Interrogatory No. 21 sought the identities of "all children, including infants born addicted to opioids, for whom You incurred costs for which you seek damages" and requested detailed information about these children.  Opposing a similar defense motion to compel, Plaintiffs argued that: "compelling Plaintiffs to make the disclosures sought, such as the names and identities of foster children and caregivers, would jeopardize the Plaintiffs eligibility to receive federal funding for foster-care programs and irrevocably destroy the privacy of foster children and caregivers whose identities are required under federal and state law to remain confidential," and that "public policy requiring the protection and confidentiality of those most vulnerable, newborns and children whose lives have been devastated by opioids, far outweighs any imaginable relevance or need Defendants would have for this information."  Plaintiffs' Dec. 3, 2018 Letter to Special Master at 7-9.

       The Special Master found these arguments "well taken," and required no supplementation of Plaintiffs' responses to these interrogatories.  DR 13 at 2.  Judge Polster adopted this ruling and overruled Defendants' objections in full.

       Distributors now invoke Request for Production No. 7 to obtain this material rather than Interrogatory 21, but they are still seeking the same information they sought previously: the identities of "children … for whom [Plaintiffs] incurred costs for which [Plaintiffs] seek damages."  The Court has already held that production of specific, detailed information about children *will not be compelled* in this litigation, and the Special Master should not deviate from that ruling simply because the format of the discovery request has changed.  Distributors' motion to compel the production of individual children's case files should be denied.

Special Master Cohen
January 21, 2019
Page 5

### B.    Federal and State Laws Prohibit the Counties from Sharing this Information

The Court held that specific, detailed information about children need not be produced in this litigation because individual case files related to child welfare interventions *cannot be* disclosed under both federal and state law.  Additionally, compelling Plaintiffs to make the disclosure sought, such as the names and identities of foster children and caregivers, would jeopardize the Plaintiffs' eligibility to receive federal funding for foster-care programs and irrevocably destroy the privacy of foster children and caregivers whose identities are required under federal and state law to remain confidential.

As Plaintiffs previously stated in our letter dated December 3, 2018, many federal restrictions prohibit the disclosure of identifying data related to minors, including 42 U.S.C § 671; 42 CFR § 1356.22; 42 U.S.C. § 5106a; the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. § 5101, as well as the Compressive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act (CAPPTR), 42 U.S.C. § 290dd-2(a).  With regard to state law, numerous Ohio statutes likewise prevent such disclosures: ORC 5153.17 (ordering that the records of public children services agencies shall be kept confidential); ORC 2151.421(H)(1)(noting " a report [related to child abuse or neglect] made under this section is confidential"); ORC 2151.421(L)(1)(further noting "the agency shall not disclose any confidential information regarding the child who is the subject of the report"); OAC 5101:2-33-21 (ordering that "[e]ach referral, assessment/investigation and provision of services related to reports of child abuse, neglect, dependency, or family in need of services (FINS) is confidential" and that child welfare contained in SACWIS is "confidential pursuant to section 5101.131 of the Revised Code"); ORC 5101.13;[3] OAC 5101:2-33-23 (providing that "[a]ll case records prepared, maintained, and permanently kept by the PCSA are confidential"); ORC 5101.29(D)(noting

---

[3] *See, e.g.,*

> (A) The statewide automated child welfare information system (SACWIS) shall be established and maintained in accordance with the requirements of 42 U.S.C. 674(a)(3)(C) (2008). Access to and use of data in SACWIS shall be limited to the extent necessary to carry out the child welfare program under Title IV-B of the Social Security Act of 1967, P.L. 109-288, 120 Stat. 1244 (2006), the Child Abuse Prevention and Treatment Act, 110 Stat. 3064 (1996), 42 U.S.C. 5101, Title IV-E of the Social Security Act of 1967, 110 Stat. 2166 (1996), 42 U.S.C. 670, and Title XX of the Social Security Act, 124 Stat. 803 (2010), 42 U.S.C. 1397.

> (B) The data in SACWIS is confidential and access to any child welfare information shall be pursuant to this rule or section 5101.132 of the Revised Code.

> (C) The data in SACWIS is confidential and release of any child welfare information shall be pursuant to rule 5101:2-33-21 of the Administrative Code and sections 5101.13 to 5101.134 of the Revised Code.

ORC 5101.13(A-C).

Special Master Cohen
January 21, 2019
Page 6

records not subject to public records law); ORC 2151.142 (mandating that "residential addresses [] contained in public records kept by a public children services agency, private child placing agency, juvenile court, or law enforcement agency [shall not be] subject to inspection or copying as part of a public record" and are confidential); OAC 5101:2-33-21(E)(providing that" [t]he PCSA shall not release the identities of the referent/reporter, and any person providing [child welfare] information during the course of an assessment/investigation shall remain confidential. The identities of these individuals shall not be released or affirmed by the PCSA to any party without the written consent of the individual(s) involved, except to those individuals outlined in paragraph (F) of this rule."); ORC 3107.17(requiring the confidentiality of records related to adoption); and OAC 5101:2-48-23 (describing how after an adoption is final, an adoptive child case record is marked "confidential and permanently secure such record from release or inspection of any information, except under the following conditions . . . .").

Under many of these laws, Plaintiffs would lose vital federal funding for the individuals whose identities Distributors seek should any such information is disclosed.  For example, under Title IV-E of the Social Security Act, to qualify for federal funds for foster care and adoption assistance, plans must also provide for the protection of program applicants' or recipients' information.  *See* 42 U.S.C. § 671(a)(8);4 42 U.S.C. § 5106a(b)(2)(B)(viii); *see also* 42 U.S.C. § 290dd-2(a).

Even if there were a reason to require discovery regarding production of the individual case files, there are numerous legal, privacy, and public policy barriers to disclosure which Defendants have not acknowledged, let alone addressed. Violating patient privacy is always a concern under federal law. These concerns are magnified in the context of children. Public policy requiring the protection and confidentiality of those most vulnerable far outweighs any imaginable relevance or need Defendants would have for the individual case files.

## C.    <u>Much of the Requested Information Is Irrelevant and Unnecessary</u>

Distributors' motions seek SACWIS data that is plainly irrelevant to Plaintiffs' allegations in this litigation, including statistics on foster care placement removals involving alcohol, marijuana, cocaine, caffeine, cigarettes, and huffing.  None of this data is even responsive to Distributors' Request for Production No. 7, which is by its terms limited to "Prescription Opioids."  *See* **Ex. 1**, Jan. 15, 2018 H. Shkolnik Letter at 3-4.  Distributors' attempt to compel responses relating to "all substance abuse" thus exceeds the scope of the discovery Distributors originally requested.

In any event, Plaintiffs have already produced sufficient aggregate data to allow Distributors' experts to evaluate Plaintiffs' experts' conclusions.4  In responding to Distributors'

---

4 To the extent that Distributors seek materials relied upon by experts, as indicated the request is improper. Plaintiffs will produce everything our experts rely upon in due course consistent with the CMO provisions. With that in mind, Plaintiffs note that their experts do not rely upon the individual case files being requested nor any dataset from the SACWIS database.

Special Master Cohen
January 21, 2019
Page 7

initial request, Cuyahoga produced a robust de-identified dataset that included all prescription opioid products and generic categories, using a list of 41 characteristics to capture all cases that involve prescription opioids.  It produced this data in August 2017, both as a spreadsheet and in native format (CUYAH_002442182).  The dataset contains all placement removal reasons from 2006 until 2018, numerous tabs summarizing all of the data (such as number of children affected by substance abuse, number of drug abuse children, number of drug abuse parents, and the number of children affected by prenatal drug exposure), and a tab with the case ID, person ID, age, characteristic code, and characteristic description.  *See generally id.*  Cuyahoga agreed to request from the State a supplemental production with placement removal data relating to 10 additional characteristics that are arguably related to opioids.  Summit, for its part, produced a data summary of "Opioid Removal Data" from 2012-2017.  Distributors have not explained why this data is insufficient, or why if they want more data than Plaintiffs possess, they did not subpoena it from the state directly.

Distributors' insistence on compelling Plaintiffs to produce State data on non-opioid substance abuse should be rejected.  Information on marijuana, cocaine, caffeine, and alcohol is irrelevant and exceeds the scope of Request for Production No. 7, and Distributors have not shown why Plaintiffs' existing productions are insufficient.

D.  **Placing Such a Heavy Burden on Plaintiffs Is Unjustified When Plaintiffs Do Not Rely on Individual Case Data to Support Their Claims**

Distributors' motions to compel the production of thousands of individual children's case files should be rejected due to the overwhelming burden it would place on the public county Plaintiffs.  Were the Special Master and Court to compel the production of thousands of confidential files, Plaintiffs would be forced to hand-review millions of pages of documents meticulously so that the names, addresses, and sensitive personal information of children, family members, and others are properly redacted.  **Ex. 1**, Jan. 15, 2019 H. Shkolnik Letter at 5.  Indeed, Plaintiffs estimate that it would take two weeks simply to obtain and review 25 case files—a painstaking review effort that Cuyahoga and Summit County officials would insist on personally supervising given the sensitive nature of the data involved—meaning it would take many months to review the hundreds or thousands of case files at issue here.  If Distributors wanted such a time- and labor-intensive, granular level of individualized case data, they should not have delayed four months before seeking it.

Placing this burden on Plaintiffs is particularly unjustified where, as here, Plaintiffs have already confirmed that they "intend to rely only on aggregate data and the information as provided in the dataset referenced above, not individual case files."  *Id.* at 6.  Moreover, the Special Master has previously held that Plaintiffs need only produce aggregate data to support their claims.  In Discovery Ruling No. 1 (June 11, 2018) ("DR 1"), the Special Master addressed Defendants' demand that Plaintiffs produce "highly detailed information related to all individuals who received or were harmed by opioids."  The Special Master directed that "if Plaintiffs are correct that statistical and aggregate evidence is sufficient, then Plaintiffs

Special Master Cohen
January 21, 2019
Page 8

must now produce all available statistical and aggregate evidence, and enough supporting particulars to allow the Court and Defendants and the parties' experts to understand the fundamental bases for those statistics and aggregated data; but *Plaintiffs need not produce all discovery regarding every patient or every opioid prescription.*"  DR 1 at 4-5 (emphasis added).  Defendants did not object to DR 1.  Given that DR1 already held that Plaintiffs need not provide specific information about individuals who were harmed by opioids, Distributors should not be able to obtain indirectly, through Request for Production No. 7, what they could not obtain directly—particularly in light of the immense, time-consuming burden associated with this request.

## III.     Conclusion

For all of these reasons, Distributors' January 16, 2019 motions to compel Plaintiffs to produce all of the highly confidential information about thousands of children in the SACWIS database, as well as full case files for each of these foster children and their families, should be denied.

Very truly yours,

Paulina do Amaral

PdA/wp

cc:     Kelly H. Hibbert
        Plaintiffs' Liaison Counsel
        Defendants' Liaison Counsel
        Mdl2804discovery@motleyrice.com
        xALLDEFENDANTS-MDL-2804-Service@arnoldporter.com

1687006.5