# EXHIBIT 8



Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

**Kelly H. Hibbert**
Direct Phone: +1 202 414 9226
Email: khibbert@reedsmith.com

February 6, 2019

**Confidential – Subject to Protective Order**

**By Electronic Mail**

Special Master Cohen
Carl B. Stokes United States Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113-1837

Re:   *In re National Prescription Opiate Litigation*, MDL No. 2804
      **Disclosure of SACWIS Data**

Dear Special Master Cohen:

      We write to address certain federal statutory and regulatory provisions which the Office of the Ohio Attorney General (the "State") believes might be implicated by the production of data by Cuyahoga and Summit Counties from the Statewide Automated Child Welfare Information System ("SACWIS"). See **Ex. 1**, Correspondence from Jonathan D. Blanton to K. Hibbert, Feb. 1, 2019. Specifically, in an email to the Parties on February 1, Mr. Blanton described these provisions as potential "barriers [Ohio Department of Jobs and Family Services ("ODJFS")] faces in providing or approving access to information in SACWIS . . . ." *Id.*[1]

      It is worth noting at the outset that in a recent call, the State disclaimed any protectable interest in the production of underlying children's services case files that are within the possession of the Counties. The State clarified that its only potential interest is in data that the Counties have input into the SACWIS database. In addition, with respect to the spreadsheet produced by Cuyahoga County at CUYAH_002442182, which contains no names or other personally identifiable information, and any similar spreadsheet that might be generated by Summit County as requested by Defendants, the State has not yet formulated a position. The State has expressed a desire to consider further the who, what, when and why of the spreadsheets in order to determine whether it has any protectable interest.

      In the hopes that our next call with you will be as productive as possible, we thought it would be useful to brief the purpose and effect of the provisions cited by Mr. Blanton in his February 1 email. In short, regardless of the scope of the State's interest, Defendants respectfully submit that the provisions present no obstacle to disclosure of SACWIS data in this case given that the data would be produced pursuant to a Federal Court Order, subject to the protections of Case Management Order No. 2: Protective

---

[1]   Mr. Blanton cited the following: 42 U.S.C. § 5106a(b)(2)(B)(viii), 42 U.S.C. § 671(a)(8), and 42 C.F.R. § 205.50 (the correct citation for the regulatory provision is 45 C.F.R. § 205.50). Mr. Blanton expressed that these provisions were only a "few of the Federal regulations that JFS must consider" and suggested that there may be others. **Ex. 1**. Defendants would be happy to address any additional provisions that the State wishes to identify.

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

Special Master Cohen
February 6, 2019
Page 2



Order, *see* Dkt. No. 441 ("Protective Order"), and with limited fields (as in the spreadsheets) and/or appropriate redactions to maintain the privacy interests of the participants of the Cuyahoga County Division of Children and Family Services ("DCFS") and Summit County Children Services ("SCCS"). As with other confidential data produced by various parties so far, the protections in place allow production of data that is highly relevant to the claims and defenses of the parties.

First, Section 5106a of Title 42, a provision of the Child Abuse Prevention and Treatment Act ("CAPTA"), explicitly provides that the State must "ensur[e] that reports and records made and maintained pursuant to the purposes of this subchapter and subchapter III of this chapter shall only be made available to . . . (V) *a grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury*." 42 U.S.C. § 5106a(b)(2)(B)(viii)(V) (emphasis added). Thus, production during discovery in a litigation like this one is explicitly contemplated by the provision, and is an explicit exception to its disclosure limitations.

Second, Defendants do not seek information protected by 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50; namely, identifying information of applicants or recipients of foster care, adoption, or other public assistance. As such, disclosure of the information sought by Defendants concerning whether a case involves substance abuse and the impact substance abuse had on that case would not violate these provisions nor put "JFS at risk of losing its Federal funding" under these provisions.

Third, to the extent the information Defendants seek may be tangentially related to applicants or recipients of public assistance under 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50, Courts have permitted disclosure of such information when appropriately redacted and/or produced pursuant to a protective order or other appropriate confidentiality agreement.

    A.    **The Child Abuse Prevention and Treatment Act Explicitly Permits Disclosure of Child Welfare Information.**

Section 5106a of Title 42 governs "grants to states for child abuse or neglect prevention and treatment programs." 42 U.S.C. § 5106a. "To be eligible to receive a grant under this section, a State shall submit to the Secretary a State plan" that meets various criteria. *Id.* § 5106a(b)(1)-(2). Among these criteria is the requirement that a State plan must "preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians . . . ." *Id.* § 5106a(b)(2)(B)(viii). "[C]ourts considering CAPTA have treated its relevant provisions as a confidentiality requirement, not a federal privilege barring discovery under [Fed. R. Civ. P. 26]."[2] *Steinberg v. Mount Sinai Med. Ctr.*, No. 12 Civ. 51(SLT)(VMS), 2014 WL 1311572, at *3 (E.D.N.Y. Mar. 31, 2014) (collecting cases).

---

[2] "Where, as here, a party seeks discovery relevant to both federal and state civil claims, federal law governs the discovery of information protected by a state confidentiality statute." *Steinberg v. Mount Sinai Med. Ctr.*, No. 12 Civ. 51(SLT)(VMS), 2014 WL 1311572, at *2 (E.D.N.Y. Mar. 31, 2014). Federal Rule of Civil Procedure 26 is clear that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding ***any nonprivileged matter*** that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). By their plain language and according to case law, none of the provisions cited to by the State creates evidentiary "privileges" or impose a complete "bar" to disclosure. Rather, they impose confidentiality requirements. *See Steinberg*, 2014 WL 1311572, at *3; *see also John B. v. Goetz*, 879 F. Supp. 2d 787, 900 (M.D. Tenn. 2010) (noting that 42 U.S.C. § 671

Special Master Cohen
February 6, 2019
Page 3



In his February 1 email, Mr. Blanton noted that "the Department does not see an exception that would allow it to provide, or allow a county to provide, SACWIS information under th[is] provision." **Ex. 1**. However, Section 5106a(b)(2)(B)(viii)(V) explicitly notes an exception where a court has found that information from the program's records and reports "is necessary for the determination of an issue before the court . . . ." Section 5106a(b)(2)(B)(viii)(V) provides that the State plan must include "methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians" and that the records "shall only be made available to . . . a grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury . . . ." *Id.* § 5106a(b)(2)(B)(viii)(V); *see Steinberg*, 2014 WL 1311572, at *3-7 (ordering production of records protected by 42 U.S.C. § 5106a(b)(2)(B)(viii) because they were "necessary to a determination of the claims and defenses at issue in this action" and because redactions of identifying information and a confidentiality order "adequately address[ed] confidentiality concerns, while providing Mount Sinai and other Parties with the broad discovery mandated by federal law"); *Goetz*, 879 F. Supp. 2d at 904 ("[CAPTA] permits disclosures of children's records to a 'court, upon a finding that information in the record is necessary for the determination of an issue before the court.'").

As with the records at issue in *Steinberg*, the SACWIS data that is the subject of Defendants' motions (Agenda Item Nos. 134 & 143) is not tangential to the litigation. *See Steinberg*, 2014 WL 1311572, at *5. Instead, the SACWIS database contains information pertaining to the services provided by the Plaintiffs to the children and families of Cuyahoga and Summit counties – services for which Plaintiffs seek to recover related expenditures totaling hundreds of millions of dollars. Plaintiffs are seeking to recover for expenses related to child removals, foster placements, and other interventions that were allegedly related to opioid use, misuse, and/or abuse; thus Defendants critically need access to the SACWIS data and underlying case files to determine whether in fact, and to what extent, removals and other interventions were caused by opioid use, misuse, and/or abuse, rather than by some other issue such as alcohol or physical abuse, or generalized neglect. Accordingly, the data is "necessary to a determination of the claims and defenses at issue in this action" and should be produced pursuant to the Protective Order with limited fields and/or appropriate redactions. *See id.* As long as the Plaintiffs seek damages related to these expenditures, data from SACWIS is required for the determination of issues in this case and must be subject to appropriate discovery. Plaintiffs, of course, are free instead to drop these claims.

**B.    Defendants Do Not Seek Information Protected By 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50, Particularly Identifying Information of Public Assistance Recipients.**

Section 671 of Title 42, the Adoption Assistance and Child Welfare Act ("AACWA"), governs "State[s'] plan[s] for foster care and adoption assistance." 42 U.S.C. § 671; *see also Goetz*, 879 F. Supp. 2d at 900. Under Section 671, a State may be eligible to receive Federal funds if it administers a plan that provides for certain foster care and adoption assistance, and meets various criteria. *See* 42 U.S.C. §§ 671(a)(1)-(36). Section 671(a)(8) requires that the State's plan provide "safeguards which restrict the use of or disclosure of information *concerning individuals assisted under the State plan* to purposes directly

---

imposes certain "confidentiality requirements"); 45 C.F.R § 205.50(a)(2)(ii) (permitting disclosure when certain "standards of confidentiality" are imposed). The Protective Order in this case specifically envisions that certain "confidential" information may be produced subject to various protections outlined in the Protective Order. *See* Dkt. No. 441, Case Mgmt. Order No. 2.

Special Master Cohen
February 6, 2019
Page 4



connected with" certain tasks related to the administration of the State's plan. *Id.* § 671(a)(8) (emphasis added).

Under 45 C.F.R § 205.50, "[a] State plan for financial assistance under title IV–A of the Social Security Act, must provide that . . . [t]he use or disclosure of information *concerning applicants and recipients* will be limited to purposes directly connected with" the administration of such plan. 45 C.F.R § 205.50(a)(1)(i)(A)-(G) (emphasis added). Title IV-A of the Social Security Act governs block grants to states for "temporary assistance for needy families," otherwise known as TANF. *See* 42 U.S.C. §§ 601 – 619. The regulation is particularly focused on protecting the *identities* of "applicants and participants" of public assistance. *See id.* § 205.50(a)(1)(iii) ("Disclosure of any information that identifies by name or address any applicant or recipient to any Federal, State, or local committee or legislative body other than in connection with any activity under paragraph (a)(1)(i)(E) of this section is prohibited."); *see also id.* § 205.50(a)(1)(iv) ("Publication of lists or names of applicants and recipients will be prohibited.").

As just noted, the plain language of these provisions and the related case law make clear that 42 U.S.C. § 671 and 45 C.F.R. § 205.05 are intended to protect from disclosure information that identifies "applicants and recipients" of public assistance. But Defendants seek no such information here. Indeed, removals and other interventions, including those purportedly caused by opioid addiction, might affect upper class and middle class families as well as families on public assistance. If the SACWIS data includes fields identifying families on public assistance, Defendant have not sought and have no interest in that data, which can be redacted. Thus, Defendants' request is similar to the request upheld in *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 886 N.E.2d 206, 210-11 (Ohio 2008). In that case, relator requested a list of "the names and addresses of all foster caregivers certified by the state," and the State of Ohio argued that the information was protected from disclosure pursuant to 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50, among others**.** In holding that the list was not protected from disclosure, the Court reasoned:

> [F]ederal and state law except from disclosure information concerning individuals assisted under the state foster-care plan and public-assistance recipients, *but absent evidence showing that a list of the names and addresses of certified foster caregivers discloses which, if any, of those caregivers is a public-assistance recipient*, the list is not excepted from disclosure under federal and state law.

*Id.* at 214 (emphasis added) (citing 42 U.S.C. § 671(a)(8), 45 C.F.R. § 205.50, and Ohio Rev. Code. 5101.27(A)); *see also Charlie H. v. Whitman*, 213 F.R.D. 240, 249 n.8 (D. N.J. 2003) (noting that the information protected from disclosure by 42 U.S.C. § 671(a)(8) is "[a]ny information which *identifies by name or address, or could reasonably lead to the disclosure of the name or address* of any applicant for or recipient of child welfare, foster care or adoption assistance services" and that information protected from disclosure by 45 C.F.R. § 205.50 is information related to a "*particular individual applicant for or recipient of* child welfare, foster care or adoption assistance services") (emphasis added).

As mentioned, Defendants are not seeking identities of the recipients of public assistance, which are protected by 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50. Rather, Defendants seek information concerning "whether substance abuse was an issue in a particular DCFS case and whether the substance abuse had any impact on the case." Ltr. to Special Master Cohen re Motion to Compel Production of SACWIS Data and Documents, Jan. 16, 2019; *see also* Ltr. to Special Master Cohen re Motion to Compel Production of SACWIS Data and Documents, Jan. 7, 2019 ("Distributors request that Plaintiff produce

Special Master Cohen  
February 6, 2019  
Page 5



(1) the SACWIS dataset containing comprehensive client substance use information and (2) the individual case note files and/or activity logs for any client and/or case identified as involving substance abuse."). Production of this information would not implicate 42 U.S.C. § 671(a)(8) and/or 45 C.F.R. § 205.50.

Further, as Defendants repeatedly have reiterated to the State and Plaintiffs, to alleviate any concerns about fields in SACWIS that do contain these identities, Defendants are amenable to production of SACWIS data without those fields in a de-identified manner. This would maintain the usefulness of the data without revealing the names or addresses of applicants or recipients of Federal public assistance, or other information that would lead to their identification. As such, the cited provisions would not be a basis for avoiding production.

    **C.**    **Courts Have Expressly Permitted Disclosure of Information Related to Public Assistance Recipients Subject to 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50.**

Even if the information Defendants seek is deemed to be tangentially related to applicants or recipients of public assistance, thereby implicating 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50 upon production of the SACWIS data, disclosure is nevertheless permitted. Multiple courts have ordered children and family services departments to produce such information as appropriately redacted and/or pursuant to protective order. In *John B. v. Goetz*, plaintiffs sought information from the Tennessee Department of Children Services ("TDCS"), including various TDCS case management records and reports, and data from the TNKids database, originally developed for TDCS as its SACWIS database. 879 F. Supp. 2d at 899 – 900. The Court acknowledged that the information sought could include that which was deemed confidential pursuant to 42 U.S.C. § 671(a)(8), but nonetheless held that Federal law did not bar production of the information and ordered defendants to produce the data and documents. *Id.* at 901, 904. In doing so, the Court acknowledged that redaction of information relating to protected persons and "[a]n appropriate protective order for discovery and trial c[ould] avoid disclosures of the identities of the children, doctors and other protected persons" and mitigate the privacy concerns expressed by TDCS.[3] *Id.* at 903.

Similarly, in *Clark K. et al. v. Michael Willden, Director of the Nevada DHHS et al.*, plaintiffs sought "(1) case records for all foster children who have been the subject of an abuse or neglect while in the custody of Clark County; and (2) case records for children who have died or suffered abuse while in the custody of Clark County." No. 2:06-cv-01068, 2008 WL 11449387, at *2 (D. Nev. Mar. 12, 2008). Defendants objected to production of this information, in part, pursuant to 42 U.S.C. § 671(a)(8). *Id.* at *1-2. After requiring the parties to enter into a "confidentiality agreement," the Court ordered production of the case records. *Id.* at *2. Other cases are in accord. *See Jones-Kelley*, 886 N.E.2d at 210 (ordering production of the "names and addresses of all foster caregivers certified by the state" as appropriately

---

[3] In ordering production of the child welfare-related data sought, the *Goetz* Court also considered several state law provisions that defendants argued barred disclosure. *Id.* at 901-04. While the Court acknowledged the state's interests in protecting this information, it reasoned that a Federal court had authority nonetheless to require production of such information, even if such information was deemed confidential and/or otherwise protected by state law. *Id.* at 901-03 (collecting cases). The Court ultimately concluded: "Defendants cannot rely upon these state statutes as bars to discovery of this ESI data from DMHDD or the DCS's incident reporting data or the TNKids database." *Id.* at 903; *see also Whitman*, 213 F.R.D. at 248 ("[T]he Court finds that the Defendants need to do more than assert non-binding state confidentiality statutes to support their contention that release of case records may compromise the privacy interests.").

Special Master Cohen
February 6, 2019
Page 6



redacted and which did not disclose whom of the caregivers identified were public welfare recipients, even in light of the protections afforded by 42 U.S.C. § 671 and 45 C.F.R. § 205.50); *see also Whitman*, 213 F.R.D. at 250-51 (ordering disclosure of certain, appropriately redacted information produced by the New Jersey Division of Youth and Family, despite it being identified as protected under 42 U.S.C. § 671 and 45 C.F.R. § 205.50 in the corresponding confidentiality agreement between the parties).

In line with these decisions, the Court should order that SACWIS data be produced subject to the protections already in place in Case Management Order No. 2. These protections should give more than adequate cover to the State.

    **D.**    **Productions by Cuyahoga County and Summit County of Other Documents Containing Information Pertaining to Services Provided to Children and Families Illustrate Plaintiffs' Selective Objections to Producing Confidential Information.**

Recently and following its privilege review, Cuyahoga County produced multiple incident and intake reports disclosing sensitive information such as allegations of child abuse, dates of previous children's services investigations, custody status of siblings, parental identification, parental dates of birth, ages of children, addresses, etc. *See, e.g.*, **Ex. 2**, CUYAH_016488000, CUYAH_016487415. Summit County has produced similar reports. *See, e.g.*, **Ex. 3**, SUMMIT_001918051. These reports demonstrate the inconsistency in Plaintiffs' positions regarding production of data from SACWIS and the underlying children's services case files. The sensitive information disclosed in these produced documents mirrors information within the SACWIS database. Further, the only information that appears to be consistently redacted is the names of the minor children that are the subjects of the reports.[4] The production of these reports following a privilege review illustrates that Plaintiffs are selectively choosing when to disclose sensitive information related to children's services and that there is, in fact, no applicable privilege that would protect such information from disclosure in this case.

Production of relevant information pertaining to children's services should not be piecemeal, determined only by what the Plaintiffs feel is appropriate at the time. Instead, Defendants should be allowed full access to the relevant information within the SACWIS database and underlying case files in order to present their defense in this case.

    **E.**    **Conclusion**

Defendants understand the State's interest in the SACWIS data and appreciate the State's good faith efforts to protect those individuals whose information would be disclosed. Nonetheless, case law and the plain language of the regulation and statutes cited by the State make clear that SACWIS data may be produced in a de-identified fashion pursuant to the comprehensive Protective Order in this case in a manner that renders the State's concerns moot. *See* Dkt. No. 441, Case Mgmt. Order No. 2. As long as Plaintiffs seek the damages they do, the data from SACWIS is discoverable and critical. Given that the only argument raised as to its production relates to confidentiality, production can be ordered immediately on terms that preserve confidentiality as set out above.

---

[4] The practice of redacting only children's names is consistent with Ohio law, which protects the identities of the minor children, not the parents or any other individuals involved. *See* In re C.T., 895 N.E.2d 527 (Ohio 2008) (disclosing the identities of parents and guardians).



Special Master Cohen
February 6, 2019
Page 7

      We look forward to discussing the foregoing with you and the State further.

Very truly yours,

*Kelly H. Hibbert*
Kelly H. Hibbert

KHH

cc:    Plaintiffs' Liaison Counsel
       Defendants' Liaison Counsel
       xALLDEFENDANTS-MDL2804-Service@arnoldporter.com
       Mdl2804discovery@motleyrice.com
       David Ackerman
       Hunter Shkolnik
       Joseph Ciaccio
       Salvatore Badala
       Jodi Westbrook Flowers
       Frank Galluci