# EXHIBIT 9

**CONFIDENTIAL**



February 11, 2019

**VIA EMAIL**

David R. Cohen
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113-1837
david@specialmaster.law

      Re:    *In Re National Prescription Opioid Litigation*; Case No. 17-md-2804
              Motion to Compel Production of SACWIS Data and Individual Case Files
              (Cuyahoga and Summit)

Dear Special Master Cohen:

    We write on behalf of Plaintiffs Summit County and Cuyahoga County to respond to Defendants' February 6, 2019 letter ("Defendants' February 6 letter") addressing some, but not all, of the federal statutory and regulatory provisions that could be implicated by the production of data by Cuyahoga and Summit Counties from the Statewide Automated Child Welfare Information System ("SACWIS") and related child welfare case files maintained by the Counties.

    As set forth below, Defendants' attempt to discover essentially the entire contents of child welfare case records created and maintained by the Counties' public children services agencies jeopardizes State of Ohio's continued eligibility to receive critical federal funding through the Child Abuse Prevention and Treatment Act. Unlike data sets that the Special Master and/or the parties themselves have considered appropriate for production in de-identified form in this litigation (e.g., health care claims files), the information at issue here (both in the SACWIS database and the Counties' individual case files) comprises a vast and complicated repository of highly sensitive information protected by a host of state and Federal privacy laws and regulations, encompassing not only health care privacy restrictions, but also the protections applicable to educational records, military records, criminal history records, credit reporting, closed adoption proceedings, and other sealed court records, among other things.

    The Counties and the State cannot comply with the thicket of applicable privacy regulations merely by removing a few fields from the data or systematically scrubbing a handful of distinct data elements (e.g., names and addresses) from the entries in each file. Rather, each voluminous case record must be examined in detail by personnel who have sufficient expertise to understand and identify the particular privacy restrictions and procedures applicable to the specific information each file contains. Yet the fruits of this effort remain at best tangential: the Counties' expert witnesses do not rely on the SACWIS data or the information in the underlying case to prove the Counties' damages in this case, and Defendants' only proposed use for the evidence purportedly contained in these files is the cross-examination of Plaintiffs' experts. All of this labor would occur, moreover, without the input, knowledge or consent of the children, parents, foster caregivers, and mandatory reporters whose privacy is at stake. The extreme burden this proposed discovery would impose on the Counties and the State of Ohio, in identifying and protecting all of the highly sensitive and

**CONFIDENTIAL**



highly-regulated information at issue, outweighs any tangential benefit for Defendants in cross-examining Plaintiffs' experts, rendering the discovery inappropriate under Federal Rule of Civil Procedure 26.

### 1. Ohio's Federal Child Abuse Prevention and Treatment Act (CAPTA) Funding May Be Jeopardized by the Disclosure Defendants Seek.

To obtain federal funding via a grant under the Child Abuse Prevention and Treatment Act (CAPTA), a state must provide "an assurance in the form of a certification by the Governor of the State that the State has in effect and is enforcing a State law, or has in effect and is operating a statewide program, relating to child abuse and neglect that includes … methods to preserve the confidentiality of **all records** in order to protect the rights of the child and of the child's parents or guardians." 42 U.S.C. § 5106a(b)(2)(B) (emphasis added). Ohio's eligibility for CAPTA funding thus depends on the State's adoption and enforcement of a statutory and regulatory scheme to protect the confidentiality of child welfare information—including both the case management information tracked in the statewide automated child welfare information system (SACWIS), and the case files maintained by Cuyahoga and Summit Counties. As the Ohio Supreme Court has previously recognized, forcing an overbroad disclosure of the sensitive records maintained in this system "may jeopardize Ohio's eligibility to receive funding for the state's foster-care program and irrevocably destroy the privacy" of the persons whose information is disclosed. *State ex. rel. Cincinnati Enquirer v. Jones-Kelley*, 886 N.E.2d 206, 214 (Ohio 2008) (declining to order full disclosure of the names and addresses of foster caregivers).

Defendants' attempt to treat the Counties' child welfare case files as an information source independent of the State's SACWIS system (and somehow less subject to confidentiality requirements) ignores Ohio's regulatory scheme governing information relating to child abuse and neglect. The Ohio Department of Job and Family Services (ODJFS) is the state agency that administers the Basic State Grant issued to Ohio under CAPTA. Each county's public children services agency (PSCA) is in turn responsible for administering federal funds provided for children services in that county. Ohio Rev. Code § 5153.16(A)(14), (A)(20). Ohio law *requires* each county's PSCA to enter into SACWIS *any information* related to children and families that state or federal law requires a PCSA to maintain. Ohio Rev. Code § 5101.13(A); 13 Ohio Admin. Code § 5101:2-33-23(A). Thus, as required by law, the Counties' case files at issue here consist of the case management information entered into SACWIS, together with records that cannot be entered info SACWIS such as hard copies of educational and medical records obtained from other agencies, and incidental non-substantive correspondence. *See* Ohio Admin. Code § 5101:2-33-23(A) ("The [PCSA] shall record case information in [SACWIS]. Case information that cannot be recorded in SACWIS shall be maintained as hard copy files, electronic files or as a combination of both."); *see also, e.g.,* Exhibit 1 (Decl. of Elizabeth Magnon) at ¶4 (describing Summit County's case files). As previously discussed, Distributors' attempt to compel the production of the underlying medical, educational, and other collateral records of these children is foreclosed by the Special Master's prior rulings on Interrogatories 19, 20, 21 and 29, which were adopted by Judge Polster over Defendants' objections. *See* Discovery Ruling No. 13 Regarding Various Matters [Dkt. 1215] at 2; and Order on Distributors' objection to Part I of Special Master Cohen's Discovery Ruling No. 13 [Dkt. 1219].

NAPOLILAW.COM

360 LEXINGTON AVENUE, 11TH FLOOR, NEW YORK, NEW YORK 10017 | (212) 397-1000

**CONFIDENTIAL**



Not surprisingly—given the State's commitment to confidentiality as a condition of its federal funding—Ohio has adopted numerous statutory and regulatory protections carefully regulating access to the information and records Defendants seek. Such State limitations on the disclosure of this sensitive information should be considered in ruling on Defendants' motion. *See Steinberg v. Mount Sinai Med. Ctr., Inc.,* 2014 WL 1311572 at *5 (E.D.N.Y. Mar. 31, 2014) (court must determine to what extent state and federal confidentiality laws may limit discovery because "federal provisions allow states to disclose records to courts 'under terms identified in State statute'") (quoting 45 C.F.R. § 1340.14(i)(2)(ii)). In particular,

- Ohio Rev. Code § 5153.17 provides that the "written records of investigations of families, children, and foster homes, and of the care, training, and treatment afforded children. . . shall be confidential."

- Ohio Admin. Code § 5010:2-33-21 provides that "each referral, assessment/investigation and provision of services related to reports of child abuse, neglect, dependency or family in need of services is confidential." Subsection (E) of the rule specifically protects the identity of a person who refers a child to children services, who reports child abuse or neglect, or who provides information during the course of an assessment/investigation, and provides that the identities of such persons may only be released *with their written consent* or in narrowly-defined circumstances set forth in subsection (F) of the rule that do not apply here.

- Ohio Rev. Code § 2151.421(H)(1) provides that "a report [related to child abuse or neglect] made under this section is confidential.

- Ohio Rev. Code § 2151.421(L)(2) mandates that "the [PSCA] shall not disclose any confidential information regarding the child who is the subject of [a report of abuse or neglect]."

- Ohio Rev. Code §§ 3107.17, 3107.171, 3107.39, provide that adoption hearings are closed and the adoption files maintained by ODFJS and/or a PCSA are subject to confidentiality regulations and procedures that strictly limit access to such records.

- Under Ohio Admin. Code § 5101:2-48-23(D), the PCSA's permanent adoption record may *only* be released outside of ODFJS or the PCSA under the supervision of the probate court with jurisdiction over the adoption.

Under the State's regulatory scheme, the Counties, moreover, do not have "possession, custody or control" of the information in SACWIS for purposes of Federal Rule of Civil Procedure 34, as Defendants contend. The information contained in SACWIS is of such a highly confidential nature that it may be accessed by a PCSA *only* if access is "directly connected with assessment, investigation or services regarding a child or family," or as permitted by state or federal law, rule or regulation. Ohio Rev. Code §§ 5101.131 and 132. Even when permitted by state or federal law, rule or

**CONFIDENTIAL**



regulation, access may only occur "in a manner, to the extent, and **for the purposes** authorized by rules adopted by [ODFJS]." Ohio Rev. Code § 5101.132(A)(2) (emphasis added). Defendants have identified no rule, regulation, or law that would permit the Counties to access SACWIS to obtain information for the purpose of answering discovery requests in civil litigation that is only tangentially connected to the assessment, investigation, or services regarding the children and families whose information would be disclosed.

### 2. Defendants Seek Access to a Vast and Complex Trove of Sensitive Child Welfare Information.

Defendants' notion that the Counties (or the State) can feasibly comply with their confidentiality obligations (even for a small number of case files) merely by redacting the names of child welfare clients and their parents or foster parents disregards the complex and comprehensive nature of each case record. SACWIS contains "case management" data tracking "all work related to a SACWIS family as defined by participation in a family case. A family case is a record comprised of members for the purpose of providing, recording, and supervising [child welfare] services." Exhibit 2 (SACWIS User Guide Excerpt) at 41. In particular, for each child, family member, foster and adoptive parent, household member, and caregiver associated with a child welfare case, the SACWIS data may include the following categories of information, significant portions of which may be subject to statutory and/or regulatory confidentiality obligations above and beyond the general protections given to child welfare services records under Ohio law:

- Basic person profile. This includes an individual's name, address, identifying information, demographics, marital information, reference ID's, paternity information, criminal history, personal characteristics, and hazardous behavior.
- Education profile. This includes a history of school districts and schools a child attended, as well as a child's academic performance and school attendance by grade level. It may also contain special education needs, including the existence of Multi-Factored Evaluations (MFE) and Individualized Education Plans (IEP). Additionally, [the system contains] graduation and school activity information.
- Medical profile. This includes information about a child's health care providers, medications, immunizations, medical history, treatments, health insurance, and birth or pregnancy information.
- Financial profile. This includes income, expense, resource, and employment and health insurance information …
- Other profile information. [The system also contains] SACWIS work history, legal and delinquency information, and military history.

*Id.* at 8. And the information recorded in SACWIS goes far beyond the profiles maintained for these individuals, encompassing every aspect of the Counties' assessment, investigation, and child welfare services:

- Each case may have associated records in SACWIS on "assessments, court activities, case services, case plans, placements, and so on." *Id.* at 41.

**CONFIDENTIAL**



- SACWIS tracks "all of the legal actions associated with [each] case. Such actions include motions, hearings, subpoenas, rulings for court jurisdiction transfer and legal status, and so on." *Id.* at 61.
- SACWIS tracks financial information relating to each case, including information used to determine eligibility for foster care maintenance and adoption placement assistance, child benefit payments (child support, SSI, etc.) and the accounts into which these funds can be deposited, Medicaid and HMO reimbursement, and disbursements paid in connection with the case. *Id.* at 103.
- SACWIS tracks "all activities related to adoptive cases, for example, recruitment, case plans, Ohio Adoption Photo Listing (OAPL) registration, the child study inventory, adoptive placement, and finalization." *Id.* at 121.

As illustrated in the training materials attached as Exhibit 2, the information entered by the Counties into SACWIS is sufficiently complex and detailed that it is not subject to de-identification merely by excluding certain data fields, as could potentially the case for simpler datasets such as prescription drug claim files. Indeed, many of the potentially relevant data fields contain free-form text entries, each of which would have to be reviewed and redacted even if all narrative fields were excluded from production. Even for a small volume of case files, such an effort would impose Herculean burdens upon the Counties and the only specialized County personnel who have sufficient expertise to identify all of the confidential information that would actually require redaction. In this context, the Court should not lose sight of the fact that every hour spent reviewing and redacting the child welfare case files to satisfy Defendants' discovery demands is an hour directly diverted from their responsibilities in protecting the State's most vulnerable population of abused and neglected children.

### 3. Defendants' Request for SACWIS Data and Child Welfare Case Files Implicates a Plethora of State and Federal Laws Beyond Those Cited in the Ohio Attorney General's February 1st Email.

As demonstrated by the comprehensive nature of the information contained in SACWIS, the statutes and regulations cited in Defendants' February 6 letter—42 U.S.C. § 5106a and 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50—are not the only laws implicated by Defendants' discovery demands. In addition to the Ohio statutes specifically protecting the confidentiality of information maintained by the State's child welfare agencies—and the HIPAA regulations governing access to the protected healthcare information maintained in these files—statutes and regulations implicated by Defendants' demand include, among others, the following federal laws (and their Ohio counterparts):

- The Compressive Alcohol Abuse and Alcoholism Present Treatment and Rehabilitation Act. *See* 42 U.S.C. § 290dd-2(a) (limiting the disclosure of records relating to substance abuse treatment).

- The Family Educational Rights and Privacy Act Regulations (FERPA) protecting the privacy of students' educational records. *See* 34 C.F.R. Part 99.

**CONFIDENTIAL**



- The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., which protects the privacy of consumer credit reports, including both financial information and criminal background checks.

- The Privacy Act of 1974, 5 U.S.C. § 552a, protecting (among other things) military service records. *See, e.g.,* 5 U.S.C.§ 552a(e)(10) (requiring agencies to safeguard the confidentiality of records maintained by the Federal government on government employees); and

- Federal regulations limiting the dissemination of criminal history information that the State obtains in connection with its child abuse and neglect investigations and foster care and adoption placement services, such as information obtained through the National Instant Criminal Background Check System and information obtained from the Ohio Bureau of Criminal Identification and Investigation. *See, e.g.,* 28 C.F.R. § 20.33(d)(limiting criminal history records to use "only for the purpose requested") and 28 C.F.R. § 20.33(b) (providing that an agency's unauthorized dissemination of such information to third parties may be grounds for cancelling the Federal government's exchange of information with the agency); Ohio Rev. Code §§ 109.5721(E), (G) (limiting use of Ohio BCI's retained fingerprint database to the purposes solely for which the database was created, including approval for adoption).

Moreover to the extent SACWIS and the underlying case files contain information from sealed court records, even a "de-identified" production risks placing the Counties (and ODFJS) in violation of existing court orders limiting disclosure of the litigation-related information maintained in individual case files. In sum, the complexity and scope of the information contained in SACWIS makes it nearly impossible to identify all of the relevant statutory and regulatory protections other than on a case-by-case basis that would take into account the information in *each* case file.

4. **Defendants Cannot Justify Sweeping Access to the Private Information of Ohio's Most Vulnerable Children and their Parents and Caregivers.**

Although Defendants argue that CAPTA explicitly permits disclosure of child welfare data when it is "necessary for determination of an issue before the court," *see* 42 U.S.C.§ 5106a(b)(2)(B)(viii)(V), Defendants have failed to meet the high bar of establishing the necessity for this highly sensitive information in determining any issue here.  Such evidence should not be admitted in Defendants' case in chief under Rule 403 because the probative value of any case-by-case presentation of information on individual opioid-related child abuse and neglect cases would be far outweighed by the inherent risk of prejudice and the danger of needlessly presenting cumulative evidence.  As the Counties have repeatedly informed Defendants, they and their experts intend to rely on aggregate data to prove their damages and will not rely on the SACWIS data or individual case files. But Defendants already have ample grounds to cross-examine plaintiffs' experts and their reliance on aggregate data, in the same manner that parties routinely cross-examine other experts who rely on aggregate data (e.g., morbidity and mortality statistics, financial and economic data, etc.) without

**CONFIDENTIAL**



discovery into individual anecdotal case examples relating to the same topic.[1] A substantial volume of publicly-available, systematically de-identified case-level data derived from the State's SACWIS system is already available through public information requests for the Adoption and Foster Care Analysis Reporting System (AFCARS).[2] Further, to the extent Defendants require case-level or anecdotal information to present an alternative view of the facts, Defendants have already had the opportunity to depose, at length, County employees who have extensive knowledge both of the impact of the opioid epidemic on the workload of their child welfare services, and of the Counties' record-keeping pertaining to the impact of opioid drugs.

The authorities upon which Defendants rely, in an attempt to make a showing of necessity, are distinguishable. In *Steinberg v. Mount Sinai Med. Ctr., Inc.,* for example, the plaintiff, a minor, sued a medical center for failing to report his disclosure of child abuse to the New York Administration for Children's Services. No. 12 CIV. 51 SLT VMS, 2014 WL 1311572 (E.D.N.Y. Mar. 31, 2014). Defendant sought to compel discovery related to the plaintiff's New Jersey child and family services records. The Court found, in this case that (unlike the present litigation) directly concerned **child abuse allegations**, that these records were directly related to his stay at the medical center. *Id.* at *6. This is a much higher threshold of what is "necessary to a determination of the claims and defenses at issue" than the information here, which Defendants have not shown they need. Moreover, the minor plaintiff had provided the defendant hospital with an authorization to release the records, "suggesting that the often-present concern that a record release may further harm a victim is not present in this case." *Id.* at *6. Here, the children who are the subject of these records have not given permission for their release and have had no opportunity to assert their own privacy interests. Nor, given the disadvantaged circumstances of these children, is it likely that they could in any meaningful way intervene in this proceeding to assert their privacy rights even if they had notices of the potential disclosure. Moreover, the *Steinberg* court acknowledged that "federal courts must balance [a party's] interest in disclosure against the state's legitimate concern [for] protecting the confidentiality of the requested information. *Id.* at *3 (citation om.).

Similarly, in *John B. v. Goetz*, the plaintiffs moving to compel the production of the records were the minors who were themselves the subject of the information—not parties in civil litigation unrelated to the child abuse and neglect cases. 879 F. Supp. 2d 787, 819-820 (M.D. Tenn. 2010). The court did not analyze section 5106a(b)(2)(B)(viii)(V) in depth but instead examined whether the applicable state laws could constitute a cognizable privilege. *Id.* at 899-903. The court found that **"[t]he confidentiality granted child abuse records under Tennessee law may not be invoked as a shield with which to block scrutiny of governmental practices**." *Id.* at 902 (emphasis in original) (cit. om) Given the governmental defendants' repeated violations of federal law, the court held they could not rely on these statutes as bars to discovery of incident report data. *Id.* at 903.

---

[1] With respect to Defendants' claim that they need the children's files to formulate their defenses, one need only look at their affirmative defenses to recognize the fallacy here. There is nothing unique to children's data that is necessary for the Defendants to argue that the statute of limitations has run, that illegal actions are to blame, or that poverty, race, religion, income, socio-economics, the recession, intervening causes, or multiple use disorders are to blame (to name but a few defenses being advanced).

[2] *See* https://www.acf.hhs.gov/cb/research-data-technology/reporting-systems/afcars.

NAPOLILAW.COM

360 LEXINGTON AVENUE, 11TH FLOOR, NEW YORK, NEW YORK 10017 | (212) 397-1000

**CONFIDENTIAL**



Here, by contrast, the practices of the Counties' PSCAs are not even indirectly at issue in the litigation.

Defendants further state that they are not seeking identification of information covered by 42 U.S.C. § 671(a)(8) and 45 CFR § 205.50, which safeguard against the disclosure of information about individuals who receive public assistance through the foster care system. But Defendants define public assistance too narrowly, arguing that removals and interventions might affect upper class and middle class families, and that some of the children are therefore not public assistance recipients, and that they are not seeking information on which children received "public assistance" which they seem to define as recipients of TANF, or temporary assistance for needy families. (Defendants Feb. 6 letter at 4.) In fact, "public assistance" has a broader definition than financial assistance and includes most social services such as the removals and interventions at issue, regardless of class, and that therefore the information Defendants request **necessarily** concerns public assistance recipients. *See* Ohio Rev. Code § 5101.26(E).[3] Moreover, section 671(a)(8) requires that a state's plan for adoption and foster care assistance must provide safeguards to restrict the disclosure of information related to individuals assisted *under that State plan*, and does not involve TANF or other monetary assistance.

In an effort to avoid the restrictions of section 671(a)(8), Defendants again cite *Goetz, supra*, but the court there disregarded the section 671(a)(8) argument because the Plaintiffs were minors requesting their own records, and therefore the records at issue were not confidential as to the plaintiffs themselves. 879 F. Supp. 2d at 904. Here, of course, the subjects of the records at issue have no interest whatsoever in the litigation, no notice of the potential disclosure of their confidential information, and no opportunity to advocate for their own privacy interests. Nor do Defendants provide the entire context of the ruling by the court in *State ex. rel. Cincinnati Enquirer v. Jones-Kelley*, 886 N.E.2d 206, 210-11 (Ohio 2008). While the court held that the requested information could be disclosed, it explained that the list of names and addresses could only be released after the ODFJS had an opportunity to limit the disclosure only to foster caregivers whose information met an exception to confidentiality:

> We believe that the proper course is to allow the director to establish which information fits into this exception to disclosure, which had been undefined before

---

[3] This statute defines public assistance as:

> financial assistance or **social services** that are provided under a program administered by the department of job and family services or a county agency pursuant to Chapter 329., 5101. [Job and Family Services Department], 5104.[Child Day Care], 5107. [Ohio Works First Program], or 5108.[Prevention, Retention, and Contingency Program] of the Revised Code or an executive order issued under section 107.17 of the Revised Code. "Public assistance" does not mean medical assistance provided under a medical assistance program, as defined in section 5160.01 [Medicaid Department) of the Revised Code."

Ohio Rev. Code Ann. § 5101.26(E).

NAPOLILAW.COM

360 LEXINGTON AVENUE, 11TH FLOOR, NEW YORK, NEW YORK 10017 | (212) 397-1000

**CONFIDENTIAL**



> our analysis. **Forcing the director to make full disclosure of the names and addresses of all foster caregivers may jeopardize Ohio's eligibility to receive federal funding for the state's foster-care program and irrevocably destroy the privacy of foster caregivers whose identities are required under federal and state law to remain confidential**.

*Id*. at 213-14. There, the court's interest in protecting a list of adults who are certified foster caregivers (not all of whom are actually fostering a child) was important, though less profound and pressing than the State's and Counties' interest in protecting the SACWIS data maintained on all abused and/or neglected children who have received government services, particularly as a result of opioid addiction.

## CONCLUSION

The Court has already decided this issue and repeatedly and correctly ruled that the type of information Defendants seek now would not be produced.  *See* Discovery Ruling No. 13 Regarding Various Matters [Dkt. 1215] at 2; and Order on Distributors' objection to Part I of Special Master Cohen's Discovery Ruling No. 13 [Dkt. 1219].  The extreme burden Defendants' proposed discovery would impose on the Counties and the State of Ohio, in identifying and protecting the highly sensitive and highly-regulated information at issue, vastly outweighs any tangential benefit for Defendants in cross-examining Plaintiffs' experts, rendering the discovery inappropriate under Federal Rule of Civil Procedure 26.  The Counties therefore urge the Special Master to deny Defendants' Motion to Compel.

Sincerely,

*/s/ Hunter J. Shkolnik*
NAPOLI SHKOLNIK PLLC
Hunter J. Shkolnik
Salvatore C. Badala
Joseph L. Ciaccio