**COVINGTON**

February 14, 2019
Page 4

> o Discharge reason
> o Flag if family assessment (adult functioning section) listed substance abuse as a risk contributor
> o Flag if risk assessment indicates alcohol/substance abuse of caregiver as concern
> o Flag if there was a family assessment within the date parameters
> o Flag if there was a risk assessment within the date parameters

*See* Ex. 1, August 27, 2018 H. Shkolnik Ltr. at 2.

Approximately four months later, in a letter to the Special Master dated January 8, 2019, you again acknowledged the production of the CFS Spreadsheet, stating that the CFS Spreadsheet "pertain[s] to the request for comprehensive client substance use information" and "was produced on August 27, 2018." *See* Ex. 2, January 8, 2019 H. Shkolnik Ltr. at 1. Again, you detailed the contents of the CFS Spreadsheet, as follows:

> This dataset contains all placement removal reasons from 2006 until 2018. It also contains an excel tab that summarizes all of the data such as number of children affected by substance abuse, number of drug abuse children, number of drug abuse parents, and the number of children affected by prenatal drug exposure. Additionally, this dataset contains a tab with character lists such as heroin and opiates. This dataset also contains a tab with the case id, person id, age, characteristic code, and characteristic description. Within these characteristic codes there are descriptions such as "Opiate Abuse" and "Opiate Addiction."

*Id.*

Then in Mr. Shkolnik's letter dated January 15, 2019, he indicated that Plaintiffs "reminded [Defendants] that [the] document was produced five months ago." *See* Ex. 3, January 15, 2019 H. Shkolnik Ltr. at 1. In that letter, Mr. Shkolnik explicitly encouraged the use of the CFS Spreadsheet when Plaintiffs complained that Defendants "did not use the SACWIS dataset at the deposition of Patricia Rideout . . . which took place on January 11, 2019" and did "not use th[e] dataset during . . . any depositions of Children and Family Services representatives. . ." *Id.*

On or around January 22, 2019, you also discussed the CFS Spreadsheet with us. In that discussion, you said that the CFS Spreadsheet should have been used in prior depositions because it had been produced in August. Thus, you engaged in multiple communications regarding the CFS Spreadsheet; each of which weighs against inadvertence.

      **B.    When Defendants Questioned Deponents about the CFS Spreadsheet During at Least Two Depositions, Plaintiffs Failed to Raise Any Objection.**

When we did in fact refer to the CFS Spreadsheet in depositions, marked it as an exhibit, and asked deponents questions regarding its content, as you urged in multiple communications, you failed to raise any objection. District courts have found that where the producing party

COVINGTON

February 14, 2019
Page 5

failed specifically to object to a party's use of potentially protected exhibits at a witness's deposition, and allowed the witness to be questioned about the exhibits for several pages of a transcript, the disclosure was intentional and the failure to seek to preclude the introduction and use of the exhibits constituted a waiver. *See Certain Underwriters at Lloyd's, London,* 218 F. Supp. at 202.

In the present matter, on January 23, 2019, we deposed witness Deborah Forkas, previous director of Cuyahoga County Children and Family Services, and marked the CFS Spreadsheet as Exhibit 12. In using the CFS Spreadsheet, we said in part: "So it was represented to us that this was a printout from the SACWIS database that was run by an employee of Ohio, that was done at the request of somebody at Cuyahoga County to run [ ] a report and generate the data included on the four tabs within Exhibit 12." *See* Ex. 4, Forkas Deposition at 228:16-22. Plaintiffs failed to object to that use and discussion of the CFS Spreadsheet. We then continued, ". . . And if you go forward, keeping in mind that this goes back to 2006, and if you were to flip through, you'd see that -- that this includes cases from the time period when you were the director . . . ." *See* Forkas Dep. at 230: 17-24, 231: 1. Again, you did not object. When we later asked Forkas about information that was not available in the relevant database, Forkas responded, without objection from Plaintiffs. Forkas Dep. at 233: 15-18. Further, when Forkas asked when the CFS Spreadsheet was run, we reiterated the August 2018 date, and you failed to object. Forkas Dep. at 236:1-8. For at least fourteen pages of deposition testimony where Forkas was questioned about the CFS Spreadsheet, including the tabs and information it includes, you failed to make a single objection, let alone sought to claw the CFS Spreadsheet back.

Subsequently, on January 25, 2019, we deposed Richard Weiler and questioned him on the CFS Spreadsheet, which was marked as Exhibit 8. *See* Ex. 5, Weiler Deposition, at 171: 22-174:1. At the time of the Weiler deposition, you failed to object to the use of the CFS Spreadsheet, and certainly did not seek to claw it back.

The repeated use of the CFS Spreadsheet in depositions and your lack of objection to that use, clearly demonstrate an intentional disclosure and/or a clear waiver.

> **C. Plaintiffs Effectively Used the CFS Spreadsheet in Discussions with the State of Ohio, Without Objection.**

The CFS Spreadsheet was provided to counsel for the State of Ohio, preceded by a request from Defendants as to whether Plaintiffs had any objection to providing it. Plaintiffs had no such objection. *See* Ex. 6, Haller email dated January 29, 2019.

> **D. Plaintiffs Discussed the CFS Spreadsheet with the Special Master, and Never Complained About its Disclosure.**

In a letter to the Special Master dated January 21, 2019, you highlighted your production of the CFS Spreadsheet as one reason why, in your view, no additional discovery of child removals and other interventions should be permitted. Specifically, you explained that in response to the Distributor Defendants' Request for Production of Documents No. 7, "Plaintiff Cuyahoga County produced a robust SACWIS dataset (CUYAH_002442182, described infra at

COVINGTON

February 14, 2019
Page 6

Sec. II.C.) on August 27, 2018." Moreover, you detailed the contents of the CFS Spreadsheet as follows:

> Cuyahoga produced a robust de-identified dataset that included all prescription opioid products and generic categories, using a list of 41 characteristics to capture all cases that involve prescription opioids. It produced this data in August 2017, both as a spreadsheet and in native format (CUYAH_002442182). The dataset contains all placement removal reasons from 2006 until 2018, numerous tabs summarizing all of the data (such as number of children affected by substance abuse, number of drug abuse children, number of drug abuse parents, and the number of children affected by prenatal drug exposure), and a tab with the case ID, person ID, age, characteristic code, and characteristic description.

*See* Ex. 7, Jan. 21, 2019 P. do Amaral Ltr., at 7. Approximately two days later, on the date of the Forkas deposition, you discussed the CFS Spreadsheet at the Special Master conference. Thus, your repeated use and acknowledgement of the CFS Spreadsheet indicates that its disclosure was intentional rather than inadvertent.

### E. Plaintiffs' Continued Use, Failure to Object, and Delay in Addressing the Disclosure is Unreasonable and Constitute a Waiver.

Even assuming *arguendo*, that your disclosure was inadvertent, you did not promptly take reasonable steps to rectify the disclosure following the repeated use of the CFS Spreadsheet, thus removing the document from any potential protection under Federal Rule of Evidence 502.

District courts have found that sending a clawback letter six days, seven weeks, and even eight weeks after discovering disclosure, is not reasonable under Rule 502(b)(3). *See e.g. Mycone Dental Supply Co Inc v. Creative Nail Design Inc.*, No. C-12-00747-RS (DMR), 2013 WL 4758053, at *3 (N.D. Cal. Sept. 4, 2013) (denying a clawback where producing party took 49 days to send clawback letter after discovering that at least one of the disputed documents was disclosed during a Rule 30(b)(6) deposition). *Skansgaard v. Bank of Am., N.A.*, C11–0988 RJB, 2013 WL 828210 at *3 (W.D. Wash. Mar. 6, 2013) (two-month delay between deposition in which disputed document was used and clawback request was unreasonable) (referencing *Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 165 (E.D.N.Y. 2005)(six-day delay to rectify alleged disclosure error weighed against producing party)).[3] As you are aware, you initially produced the CFS spreadsheet in August 2018 and sent us written notice of the claw back request over five months later, which is longer than the time periods that the *Mycone Dental* and *Skansgard* courts found unreasonable.

Moreover, courts consider the continued use of a document and failure to object as indication of waiver. In *Certain Underwriters at Lloyd's* for example, the producing party failed specifically to object to a party's use of potentially privileged exhibits at a deposition and allowed

---

[3] Even where there is a protective order in place, the requirements of 502(b) still apply. *See irth Sols., LLC*, 2017 WL 3276021, at *10-13.