COVINGTON

February 14, 2019
Page 7

the witness to be questioned about the exhibits for several pages of a transcript. *See Certain Underwriters at Lloyd's, London,* 218 F. Supp. at 202. Given those circumstances, the district court found that the failure to seek to preclude the introduction and use of the exhibits effectively waived potential protection for the exhibits under Federal Rule of Evidence 502(b). *Id.* Thus even if the disclosure of the CFS Spreadsheet were inadvertent, the delay in attempting to rectify the alleged error is unreasonable. Exacerbated by the continued use of the disputed document, the CFS Spreadsheet is subject to waiver of any potential protection.

## II. There Are No Federal Statutory or Regulatory Obstacles to Disclosure of the CFS Spreadsheet, and Underlying SACWIS Data, in this Case.

The CFS Spreadsheet and the SACWIS data that it includes are not protected by any statute or regulation that would prevent its disclosure. This is particularly true given that the data would be produced pursuant to a Federal court order, subject to the protections of the Protective Order, and with limited fields and/or appropriate redactions to maintain the privacy interests of the minor children. We refer you to our February 6, 2019 letter to Special Master Cohen, which details the issue. *See* Ex. 8, February 6, 2019 K. Hibbert Ltr. Without completely repeating the contents of that letter, we advise as follows:

First, Section 5106a of Title 42, a provision of the Child Abuse Prevention and Treatment Act ("CAPTA"), explicitly provides that the State must "ensur[e] that reports and records made and maintained pursuant to the purposes of this subchapter and subchapter III of this chapter shall only be made available to . . . (V) *a grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury.*" 42 U.S.C. § 5106a(b)(2)(B)(viii)(V) (emphasis added). Thus, production during discovery in a litigation like this one is explicitly contemplated by the provision, and is an explicit exception to its disclosure limitations.

To be eligible to receive a grant under this section, a State shall submit to the Secretary a State plan" that meets various criteria, including the requirement that a State plan must "preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians . . . ." *Id.* § 5106a(b)(2)(B)(viii). "[C]ourts considering CAPTA have treated its relevant provisions as a confidentiality requirement, not a federal privilege barring discovery under [Fed. R. Civ. P. 26]."[4] *Steinberg v. Mount Sinai Med. Ctr.*, No. 12 Civ. 51(SLT)(VMS), 2014 WL 1311572, at *3 (E.D.N.Y. Mar. 31, 2014) (collecting cases).

---

[4] "Where, as here, a party seeks discovery relevant to both federal and state civil claims, federal law governs the discovery of information protected by a state confidentiality statute." *Steinberg v. Mount Sinai Med. Ctr.*, No. 12 Civ. 51(SLT)(VMS), 2014 WL 1311572, at *2 (E.D.N.Y. Mar. 31, 2014). Federal Rule of Civil Procedure 26 is clear that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding ***any nonprivileged matter*** that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). By their plain language and according to case law, none of the provisions cited to by the State creates

COVINGTON

February 14, 2019
Page 8

Section 5106a(b)(2)(B)(viii)(V), however, explicitly notes an exception permitting disclosure where a court has found that information from the program's records and reports "is necessary for the determination of an issue before the court . . . ." Section 5106a(b)(2)(B)(viii)(V) provides that the State plan must include "methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians" and that the records "shall only be made available to . . . a grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury . . . ." *Id.* § 5106a(b)(2)(B)(viii)(V); *see Steinberg*, 2014 WL 1311572, at *3-7 (ordering production of records protected by 42 U.S.C. § 5106a(b)(2)(B)(viii) because they were "necessary to a determination of the claims and defenses at issue in this action" and because redactions of identifying information and a confidentiality order "adequately address[ed] confidentiality concerns, while providing Mount Sinai and other Parties with the broad discovery mandated by federal law").

Similar to the records at issue in *Steinberg*, the SACWIS data in the CFS Spreadsheet at issue here, is not tangential to the litigation. *See Steinberg*, 2014 WL 1311572, at *5. Instead, the SACWIS database contains information pertaining to the services provided by the Plaintiffs to the children and families of Cuyahoga county– services for which Plaintiffs seek to recover related expenditures totaling hundreds of millions of dollars. Plaintiffs are seeking to recover for expenses related to child removals, foster placements and other interventions that allegedly were related to opioid abuse; thus Defendants critically need access to the SACWIS data and underlying case files to determine whether in fact, and to what extent, removals and other interventions were caused by opioid abuse, rather than by some other issue such as alcohol or physical abuse, or generalized neglect. Accordingly, the data is "necessary to a determination of the claims and defenses at issue in this action" and should be produced pursuant to the Protective Order with limited fields and/or appropriate redactions. *See id.* As long as the Plaintiffs seek damages related to these expenditures, data from SACWIS is required for the determination of issues in this case and must be subject to appropriate discovery.

Second, Defendants do not seek information protected by 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50; particularly, identifying information of applicants or recipients of foster care, adoption, or other public assistance. Defendants seek information concerning "whether substance abuse was an issue in a particular DCFS case and whether the substance abuse had any impact on the case." Ltr. to Special Master Cohen re Motion to Compel Production of SACWIS Data and Documents, Jan. 16, 2019; see also Ltr. to Special Master Cohen re Motion to Compel Production of SACWIS Data and Documents, Jan. 7, 2019. As such, disclosure of the information sought by Defendants concerning whether a case involves substance abuse and the impact substance abuse had on that case would not violate these provisions nor put "JFS at risk of losing its Federal funding" under these provisions.

_____

evidentiary "privileges" or impose a complete "bar" to disclosure. Rather, they impose confidentiality requirements. *See Steinberg*, 2014 WL 1311572, at *3. The Protective Order in this case specifically envisions that certain "confidential" information may be produced subject to various protections outlined in the Protective Order. *See* Dkt. No. 441, Case Mgmt. Order No. 2.

COVINGTON

February 14, 2019
Page 9

Section 671(a)(8) requires that the State's plan provide "safeguards which restrict the use of or disclosure of information *concerning individuals assisted under the State plan* to purposes directly connected with" certain tasks related to the administration of the State's plan. *Id.* § 671(a)(8) (emphasis added). Meanwhile, under 45 C.F.R § 205.50, "[a] State plan for financial assistance under title IV–A of the Social Security Act, must provide that . . . [t]he use or disclosure of information *concerning applicants and recipients* will be limited to purposes directly connected with" the administration of such plan. 45 C.F.R § 205.50(a)(1)(i)(A)-(G) (emphasis added). Title IV-A of the Social Security Act, which governs block grants to states for "temporary assistance for needy families," is particularly focused on protecting the *identities* of "applicants and participants" of public assistance. *See id.* § 205.50(a)(1)(iii).

The plain language of these provisions and the related case law make clear that 42 U.S.C. § 671 and 45 C.F.R. § 205.05 are intended to protect from disclosure information that identifies "applicants and recipients" of public assistance. But Defendants seek no such information here. Indeed, removals and other interventions, including those purportedly caused by opioid addiction, might affect upper class and middle class families as well as families on public assistance. If the SACWIS data includes fields identifying families on public assistance, Defendant have not sought and have no interest in that data, which can be redacted. Thus, Defendants' request is similar to the request upheld in *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 886 N.E.2d 206, 210-11 (Ohio 2008). In that case, relator requested a list of "the names and addresses of all foster caregivers certified by the state," and the State of Ohio argued that the information was protected from disclosure pursuant to 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50, among others. The Court held that the list was not protected from disclosure. *Id.* at 214.

Third, to the extent the information Defendants seek may be tangentially related to applicants or recipients of public assistance under 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50, Courts have permitted disclosure of such information when appropriately redacted and/or produced pursuant to a protective order or other appropriate confidentiality agreement.

Multiple courts have ordered children and family services departments to produce such information as appropriately redacted and/or pursuant to protective order. In *John B. v. Goetz*, plaintiffs sought information from the Tennessee Department of Children Services ("TDCS"), including various TDCS case management records and reports, and data from the TNKids database, originally developed for TDCS as its SACWIS database. 879 F. Supp. 2d 787, 899 – 900. The Court acknowledged that the information sought could include information deemed confidential pursuant to 42 U.S.C. § 671(a)(8), but nonetheless held that Federal law did not bar production of the information and ordered defendants to produce the data and documents. *Id.* at 901, 904. In doing so, the Court acknowledged that redaction of information relating to protected persons and "[a]n appropriate protective order for discovery and trial c[ould] avoid disclosures of the identities of the children, doctors and other protected person[s]" and mitigate the privacy concerns expressed by TDCS. *Id.* at 903-04.

Similarly, in *Clark K. et al. v. Michael Willden, Director of the Nevada DHHS et al.*, plaintiffs sought "(1) case records for all foster children who have been the subject of an abuse or neglect while in the custody of Clark County; and (2) case records for children who have died or suffered abuse while in the custody of Clark County." No. 2:06-cv-01068, 2008 WL 11449387, at *2 (D. Nev. Mar. 12, 2008). Defendants objected to production of this information, in part,