# EXHIBIT 12



Steven J. Boranian
Direct Phone:  +1 415 659 5980
Email:  sboranian@reedsmith.com

Reed Smith LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
+1 415 543 8700
Fax +1 415 391 8269
reedsmith.com

**By Email**

February 15, 2019

Special Master David Cohen
Carl B. Stokes United States Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113-1837
david@specialmaster.law

Re:  *In Re National Prescription Opioid Litigation*,
       **Case No. 17-md-2804 (N.D. Ohio) - Attempted Clawback of
       CFS Spreadsheet**

Dear Special Master Cohen:

As you know, the parties currently are engaged before you with a dispute concerning Defendants' effort to obtain discovery of facts underlying the extensive damages Cuyahoga and Summit Counties are seeking for child removals and other child-related interventions that allegedly were caused by opioid addiction or abuse.  During the course of your adjudication of that discovery dispute, there has been much discussion with you about a spreadsheet containing certain non-sensitive fields of data from the Cuyahoga Department of Child and Family Services, which was produced on August 27, 2018 (the "CFS Spreadsheet").  *See* **Ex. 1** (spreadsheet bearing production designation CUYAH_002442182).  Defendants have pressed for production of a broader spreadsheet showing other available de-identified fields of information, a similar spreadsheet from Summit County, and certain casefiles or narrative fields underlying the spreadsheets with children's names redacted.  The dispute has been fully briefed and submitted, and you have it under advisement.

The CFS Spreadsheet was one of the few useful documents that we had received on this topic, and was a foothold that the parties and you were using to discuss and move toward necessary, more complete disclosures.  In the midst of the dispute resolution process, however, rather than engaging in good faith discussions to produce additional necessary discovery, Plaintiffs instead decided to take two steps back and strategically try to withdraw the one useful piece of information that had been produced deliberately five months earlier.  Specifically, on February 1, 2019, counsel for Cuyahoga County sent a letter to Defendants (but not other Plaintiffs), attempting to claw back the CFS Spreadsheet, claiming it had been inadvertently produced and presumably that it is privileged or otherwise protected from disclosure (the "Clawback Request").  *See* **Ex. 2** (Letter from H. Shkolnik to Defendants, dated Feb. 1, 2019).

By today's application, Defendants seek a determination that the CFS Spreadsheet was not in fact inadvertently disclosed, and in any event is not protected from disclosure or such protection has been waived.

*First*, there was no conceivable inadvertence in the production of the CFS Spreadsheet. This document was produced deliberately and with every intention that Defendants would rely on it – which they have in fact done.  Plaintiffs initially produced the CFS Spreadsheet more

NY: 1166846-4

ReedSmith

Special Master David Cohen
February 15, 2019
Page 2

than five months ago, under a detailed cover letter that explained the contents of the CFS Spreadsheet; it was not produced mistakenly in a mass of other documents. Nor was any timely effort made to claw it back. To the contrary, Plaintiffs wrote about the CFS Spreadsheet on multiple occasions, taking Defendants to task for not questioning witnesses about it during depositions. When Defendants did mark the CFS Spreadsheet as an exhibit during two depositions, no objection or clawback request was made. When Defendants asked Plaintiffs if they had any objection to providing the CFS Spreadsheet to counsel for the State of Ohio, they had none. The CFS Spreadsheet was discussed in argument before you, and again no objection or clawback request was voiced. It was only after the parties submitted draft orders referencing and concerning the CFS Spreadsheet that the Clawback Request was sent. There can be no possible question here of either genuine inadvertence or a timely effort to remedy any inadvertence that might have existed.

*Second,* there is no basis for any privilege or other protection from discovery. As we already have described in connection with the dispute you now have under advisement, the CFS Spreadsheet and the data that it includes are not protected by any statute or regulation that would prevent their disclosure. This is particularly true given that the data would be produced pursuant to a Federal court order, subject to the protections of the Protective Order, and with limited fields and/or appropriate redactions to maintain the privacy interests of affected minor children.

Apart from the lack of any legal foundation for the Clawback Request, we note various procedural and practical difficulties with the request. The CFS Spreadsheet has been marked at and made a part of the record at two depositions, and has been provided to counsel for the State of Ohio, such that actually obtaining and destroying the distributed copies from numerous parties and non-parties would be particularly complicated. We are not aware of precedent that supports the clawing back of marked deposition exhibits after a deposition has concluded. Further, we do not see how deposition testimony concerning the exhibit could be understood without the exhibit, or how testimony concerning the exhibit would be excised.

Defendants communicated their written objections concerning the Clawback Request to Plaintiffs yesterday, offering promptly to meet and confer to discuss these issues. **Ex. 3** (Letter from D. Haller to H. Shkolnik, dated Feb. 14, 2019). Plaintiffs have not yet responded. However, given the related dispute that you have under advisement, we believe that an agreed resolution between the parties is unlikely. Under the circumstances, and given that the Protective Order would require destruction or return of copies of the document by today, we are filing this letter application now. As part of this application, we request a determination that steps that might be necessary to be taken to obtain the document back from court reporters and counsel for the State of Ohio, and to remove it from deposition records, need not be taken during the pendency of this issue before you or the Court.

I.      **There Was No Possible Inadvertence in Plaintiffs' Disclosure of the
        CFS Spreadsheet; In any Event, There Has Been a Waiver.**

Although Plaintiffs' Clawback Request asserts that the CFS Spreadsheet "was inadvertently produced," there was no possible inadvertence in fact. As the record reflects,

# ReedSmith

Special Master David Cohen
February 15, 2019
Page 3

Plaintiffs produced the CFS Spreadsheet almost six months ago under a cover letter that detailed its contents. Thereafter, Plaintiffs explicitly pointed to and highlighted the CFS Spreadsheet, questioning why Defendants had not used it more extensively in depositions. Then, when Defendants repeatedly introduced the CFS Spreadsheet at depositions, and questioned witnesses about it, no privilege or other objection was raised by Plaintiffs.

Under the Federal Rules of Evidence, if a privileged or protected document is disclosed, the disclosure "does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."[1] Fed. R. Evid. 502(b). *See irth Sols., LLC v. Windstream Commc'ns, LLC*, No. 2:16-CV-219, 2018 WL 575911, at *2 (S.D. Ohio Jan. 26, 2018).

In determining whether a disclosure is intentional, rather than inadvertent, courts consider the circumstances surrounding the disclosure. *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) (quoting *Harmony Gold U.S.A. v. FASA Corp.*, 169 F.R.D. 113, 116 (N.D. Ill. 1996)) ("Courts have not established a bright-line rule for determining whether a document was inadvertently produced; instead, courts look at the circumstances surrounding the disclosure"). In particular, in circumstances where the producing party failed to object to the use of the disputed document at a deposition, courts have found that disclosure was intentional. *See e.g., Braun v. Medtronic Sofamor Danek, Inc.*, No. 2:10-CV-01283, 2013 WL 5563897, at *3 (D. Utah Oct. 7, 2013) (producing party's disclosure not inadvertent where disputed document was introduced and used during deposition); *Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 203 (E.D.N.Y. 2016) (finding intentional disclosure where producing party failed to object to introduction and use of disputed document at deposition); *Francisco v. Verizon S., Inc.*, 756 F. Supp. 2d 705, 719 (E.D. Va. 2010) (finding intentional disclosure where producing party "did not accidentally include a single document, known to be privileged, in a large collection of otherwise non-privileged documents[,]" but rather knew that it was producing the disputed document and "after apparent analysis," determined that the document could be produced in redacted form and marked "confidential").

Plaintiffs' disclosure of the CFS Spreadsheet was clearly intentional from the outset, Plaintiffs affirmatively encouraged Defendants to use the document, and did not object when Defendants did. Even if there had been initial inadvertence – which there clearly was not – subsequent use, non-objection and delay in seeking a clawback would constitute a waiver.

---

[1] The parties have agreed to a protective order that addresses the interplay of Federal Rule of Evidence 502(b). *See* **Ex. 4** (Case Management Order No. 2: Protective Order, see Dkt. No. 441) ("Protective Order"). The Protective Order loosens or removes the requirement that producing parties prove that they took reasonable steps to prevent disclosure. But the Protective Order does not change the normal standard for intentional production and use.

**ReedSmith**

Special Master David Cohen
February 15, 2019
Page 4

### A. Plaintiffs Wrote About the CFS Spreadsheet on at Least Three Separate Occasions During Discovery, and Complained About Why Defendants Had Not Questioned Witnesses on the Document.

Plaintiffs deliberately used and discussed the document they now seek to claw back.  It was not produced mistakenly within a large batch of produced documents.  For example, in Plaintiffs' production cover letter, dated August 27, 2018, Plaintiffs not only identified the CFS Spreadsheet in question, but also described its contents as follows:

> [The] spreadsheet . . .includes information for placement episodes occurring from January 1, 2006 through August 15, 2018. This spreadsheet includes the following information:
>
> o Person id
> o Case id
> o Removal date
> o Primary removal reason
> o Discharge date
> o Discharge reason
> o Flag if family assessment (adult functioning section) listed substance abuse as a risk contributor
> o Flag if risk assessment indicates alcohol/substance abuse of caregiver as concern
> o Flag if there was a family assessment within the date parameters
> o Flag if there was a risk assessment within the date parameters

*See* **Ex. 5** (Letter from H. Shkolnik to Defendants, dated August 27, 2018) at 2.

Approximately four months later, in a letter to the Special Master dated January 8, 2019, Plaintiffs again acknowledged the production of the CFS Spreadsheet, stating that the CFS Spreadsheet "pertain[s] to the request for comprehensive client substance use information" and "was produced on August 27, 2018." *See* **Ex. 6** (Letter from H. Shkolnik to Special Master Cohen, dated Jan. 8, 2019) at 1. Again, Plaintiffs detailed the contents of the CFS Spreadsheet, as follows:

> This dataset contains all placement removal reasons from 2006 until 2018.  It also contains an excel tab that summarizes all of the data such as number of children affected by substance abuse,  number of drug abuse children, number of drug abuse parents, and the number of children affected by prenatal drug exposure.  Additionally, this dataset contains a tab with character lists such as heroin and opiates. This dataset also contains a tab with the case id, person id, age, characteristic code, and characteristic description.  Within these characteristic codes there are descriptions such as "Opiate Abuse" and "Opiate Addiction."

*Id.*

**ReedSmith**

Then, in a letter from Mr. Shkolnik dated January 15, 2019, he indicated that Plaintiffs "reminded [Defendants] that [the] document was produced five months ago." *See* **Ex. 7** (Letter from H. Shkolnik to K. Hibbert, dated Jan. 15, 2019) at 1. In that letter, Mr. Shkolnik explicitly encouraged the use of the CFS Spreadsheet, complaining that Defendants "did not use the SACWIS dataset at the deposition of Patricia Rideout . . . which took place on January 11, 2019" and did "not use th[e] dataset during . . . any depositions of Children and Family Services representatives. . . ." *Id.*

On or around January 22, 2019, Plaintiffs also discussed the CFS Spreadsheet with us. In that discussion, Plaintiffs said that the CFS Spreadsheet should have been used in prior depositions because it had been produced in August.

**B.    When Defendants Questioned Deponents about the CFS Spreadsheet During at Least Two Depositions, Plaintiffs Failed to Raise Any Objection.**

When we did in fact use the CFS Spreadsheet in depositions, marked it as an exhibit, and asked deponents questions regarding its content, as Plaintiffs urged in multiple communications, Plaintiffs failed to raise any objection. District courts have found that where the producing party failed specifically to object to a party's use of potentially protected exhibits at a witness's deposition, and allowed the witness to be questioned about the exhibits for several pages of a transcript, the disclosure was intentional and the failure to seek to preclude the introduction and use of the exhibits constituted a waiver. *See Certain Underwriters at Lloyd's, London,* 218 F. Supp. at 202.

On January 23, 2019, we deposed witness Deborah Forkas, previous director of Cuyahoga County Children and Family Services, and marked the CFS Spreadsheet as Exhibit 12. In using the CFS Spreadsheet, we said in part: "So it was represented to us that this was a printout from the SACWIS database that was run by an employee of Ohio, that was done at the request of somebody at Cuyahoga County to run [ ] a report and generate the data included on the four tabs within Exhibit 12." *See* **Ex. 8** (Forkas Dep. Tr. Excerpts) at 228:16-22. Plaintiffs offered no objection. We then continued, ". . . And if Plaintiffs go forward, keeping in mind that this goes back to 2006, and if Plaintiffs were to flip through, you'd see that -- that this includes cases from the time period when Plaintiffs were the director . . . ." *See* **Ex. 8** at 230: 17-24, 231: 1. Again, Plaintiffs did not object. When we later asked Forkas about information that was not available in the relevant database, Forkas responded, without objection from Plaintiffs. **Ex. 8** at 233: 15-18. Further, when Forkas asked when the CFS Spreadsheet was run, we reiterated the August 2018 date, and Plaintiffs did not object. **Ex. 8** at 236:1-8. Over at least fourteen pages of deposition testimony where Forkas was questioned about the CFS Spreadsheet, Plaintiffs failed to make a single objection, let alone seek to claw the CFS Spreadsheet back.

On January 25, 2019, we deposed Richard Weiler and questioned him on the CFS Spreadsheet, which was marked as Exhibit 8. *See* **Ex. 9** (Weiler Dep. Tr. Excerpts) at 171: 22-174:1. Again, Plaintiffs neither objected nor sought to claw the document back.

**ReedSmith**

Special Master David Cohen
February 15, 2019
Page 6

C.      **Plaintiffs Effectively Used the CFS Spreadsheet in Discussions
        with the State of Ohio, Without Objection.**

The CFS Spreadsheet was provided to counsel for the State of Ohio, preceded by a request from Defendants as to whether Plaintiffs had any objection to providing it.  Plaintiffs offered no such objection.  *See* **Ex. 10** (Email chain from D. Haller, dated Jan. 29, 2019).

D.      **Plaintiffs Discussed the CFS Spreadsheet with the Special
        Master, and Never Complained About its Disclosure.**

In a letter to the Special Master dated January 21, 2019, Plaintiffs highlighted Plaintiffs' production of the CFS Spreadsheet as one reason why, in Plaintiffs' view, no additional discovery of child removals and other interventions should be permitted.  Specifically, Plaintiffs explained that in response to the Distributor Defendants' Request for Production of Documents No. 7, "Plaintiff Cuyahoga County produced a robust SACWIS dataset (CUYAH_002442182, described infra at Sec. II.C.) on August 27, 2018."  Moreover, Plaintiffs detailed the contents of the CFS Spreadsheet as follows:

> Cuyahoga produced a robust de-identified dataset that included all prescription opioid products and generic categories, using a list of 41 characteristics to capture all cases that involve prescription opioids.  It produced this data in August 2017, both as a spreadsheet and in native format (CUYAH_002442182).  The dataset contains all placement removal reasons from 2006 until 2018, numerous tabs summarizing all of the data (such as number of children affected by substance abuse, number of drug abuse children, number of drug abuse parents, and the number of children affected by prenatal drug exposure), and a tab with the case ID, person ID, age, characteristic code, and characteristic description.

*See* **Ex. 11** (Letter from P. do Amaral to Special Master Cohen, dated Jan. 21, 2019) at 7. Approximately two days later, on the date of the Forkas deposition, Plaintiffs again discussed the CFS Spreadsheet at a discovery hearing, without objection.

E.      **Plaintiffs' Continued Use, Failure to Object, and Delay in
        Addressing the Disclosure Was Unreasonable and Constituted
        a Waiver.**

Even assuming *arguendo*, that Plaintiffs' original disclosure of the document was inadvertent, Plaintiffs did not promptly take reasonable steps to rectify the disclosure following the repeated use of the CFS Spreadsheet, thus removing the document from any potential protection under Federal Rule of Evidence 502.

District courts have found that sending a clawback letter six days, seven weeks, and even eight weeks after discovering the disclosure is not reasonable under Rule 502(b)(3).  *See e.g. Mycone Dental Supply Co Inc v. Creative Nail Design Inc.*, No. C-12-00747-RS (DMR), 2013 WL 4758053, at *3 (N.D. Cal. Sept. 4, 2013) (denying a clawback where producing party took 49 days to send clawback letter after discovering that at least one of the disputed documents was

# ReedSmith

Special Master David Cohen
February 15, 2019
Page 7

disclosed during a Rule 30(b)(6) deposition). *Skansgaard v. Bank of Am., N.A.,* C11–0988 RJB, 2013 WL 828210 at *3 (W.D. Wash. Mar. 6, 2013) (two-month delay between deposition in which disputed document was used and clawback request was unreasonable) (referencing *Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.,* 232 F.R.D. 160, 165 (E.D.N.Y. 2005) (six-day delay to rectify alleged disclosure error weighed against producing party)).[2]  Plaintiffs initially produced the CFS Spreadsheet in August 2018, engaged in multiple discussions of the document thereafter, but delayed in sending any claw back request until over five months later. This delay was unreasonable under any standard.

Courts consider the continued use of a document and failure to object as proof of waiver. In *Certain Underwriters at Lloyd's* for example, the producing party failed specifically to object to a party's use of potentially privileged exhibits at a deposition and allowed the witness to be questioned about the exhibits for several pages of a transcript. *See Certain Underwriters at Lloyd's, London,* 218 F. Supp. at 202.  Given those circumstances, the district court found that the failure to seek to preclude the introduction and use of the exhibits effectively waived potential protection for the exhibits under Federal Rule of Evidence 502(b). *Id.*  Thus, even if the disclosure of the CFS Spreadsheet were inadvertent, the delay in attempting to rectify the alleged error is unreasonable. Exacerbated by the continued use of the disputed document, including in letters and arguments to you, the CFS Spreadsheet is subject to waiver of any potential protection.

## II.  There Are No Federal Statutory or Regulatory Obstacles to Disclosure of the CFS Spreadsheet, and Underlying SACWIS Data, in this Case.

The CFS Spreadsheet and the data it includes are not protected by any statute or regulation that would prevent its disclosure here. This is particularly true given that the data would be produced pursuant to a Federal court order, subject to the protections of the Protective Order, and with limited fields and/or appropriate redactions to maintain the privacy interests of the minor children. As you might recall, Defendants addressed this issue in Defendants' February 6, 2019 letter to Special Master Cohen. *See* **Ex. 12** (Letter from K. Hibbert to Special Master Cohen, dated Feb. 6, 2019). Without completely repeating the contents of that letter, we address the statutory provisions that were initially raised by counsel to the State of Ohio:

*First,* Section 5106a of Title 42, a provision of the Child Abuse Prevention and Treatment Act ("CAPTA"), explicitly provides that the State must "ensur[e] that reports and records made and maintained pursuant to the purposes of this subchapter and subchapter III of this chapter shall only be made available to . . . (V) *a grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury.*" 42 U.S.C. § 5106a(b)(2)(B)(viii)(V) (emphasis added). Thus, production during discovery in a litigation like this one is explicitly contemplated by the provision, and is an explicit exception to its disclosure limitations.

---

[2] Even where there is a protective order in place, the requirements of 502(b) still apply. *See irth Sols., LLC,* 2017 WL 3276021, at *10-13.

**ReedSmith**

Special Master David Cohen
February 15, 2019
Page 8

To be eligible to receive a grant under this section, a State shall submit to the Secretary a State plan" that meets various criteria, including the requirement that a State plan must "preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians . . . ." *Id.* § 5106a(b)(2)(B)(viii). "[C]ourts considering CAPTA have treated its relevant provisions as a confidentiality requirement, not a federal privilege barring discovery under [Fed. R. Civ. P. 26]."[3]  *Steinberg v. Mount Sinai Med. Ctr.*, No. 12 Civ. 51(SLT)(VMS), 2014 WL 1311572, at *3 (E.D.N.Y. Mar. 31, 2014) (collecting cases).

Section 5106a(b)(2)(B)(viii)(V), however, explicitly notes an exception permitting disclosure where a court has found that information from the program's records and reports "is necessary for the determination of an issue before the court . . . ."  Section 5106a(b)(2)(B)(viii)(V) provides that the State plan must include "methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians" and that the records "shall only be made available to . . . a grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury . . . ." *Id.* § 5106a(b)(2)(B)(viii)(V); *see Steinberg*, 2014 WL 1311572, at *3-7 (ordering production of records protected by 42 U.S.C. § 5106a(b)(2)(B)(viii) because they were "necessary to a determination of the claims and defenses at issue in this action" and because redactions of identifying information and a confidentiality order "adequately address[ed] confidentiality concerns, while providing Mount Sinai and other Parties with the broad discovery mandated by federal law").

Similar to the records at issue in *Steinberg*, the SACWIS data in the CFS Spreadsheet at issue here, is not tangential to the litigation. *See Steinberg*, 2014 WL 1311572, at *5.  Instead, the SACWIS database contains information pertaining to the services provided by the Plaintiffs to the children and families of Cuyahoga county– services for which Plaintiffs seek to recover related expenditures totaling hundreds of millions of dollars.  Plaintiffs are seeking to recover for expenses related to child removals, foster placements and other interventions that allegedly were related to opioid abuse; thus, Defendants critically need access to the SACWIS data and underlying case files to determine whether in fact, and to what extent, removals and other interventions were caused by opioid abuse, rather than by some other issue such as alcohol or physical abuse, or generalized neglect.  Accordingly, the data is "necessary to a determination of the claims and defenses at issue in this action" and should be produced pursuant to the

---

[3] "Where, as here, a party seeks discovery relevant to both federal and state civil claims, federal law governs the discovery of information protected by a state confidentiality statute." *Steinberg v. Mount Sinai Med. Ctr.*, No. 12 Civ. 51(SLT)(VMS), 2014 WL 1311572, at *2 (E.D.N.Y. Mar. 31, 2014).  Federal Rule of Civil Procedure 26 is clear that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding *any nonprivileged matter* that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added).  By their plain language and according to case law, none of the provisions cited to by the State creates evidentiary "privileges" or impose a complete "bar" to disclosure.  Rather, they impose confidentiality requirements. *See Steinberg*, 2014 WL 1311572, at *3. The Protective Order in this case specifically envisions that certain "confidential" information may be produced subject to various protections outlined in the Protective Order. *See* **Ex. 4.**

**ReedSmith**

Protective Order with limited fields and/or appropriate redactions. *See id.* As long as the Plaintiffs seek damages related to these expenditures, data from SACWIS is required for the determination of issues in this case and must be subject to appropriate discovery.

*Second*, Defendants do not seek information protected by 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50; particularly, identifying information of applicants or recipients of foster care, adoption, or other public assistance. Defendants seek information concerning "whether substance abuse was an issue in a particular DCFS case and whether the substance abuse had any impact on the case." **Ex. 13** (Letter from K. Hibbert to Special Master Cohen, dated Jan. 16, 2019); see also **Ex. 14** (Letter from K. Hibbert to Special Master Cohen, dated Jan. 7, 2019). As such, disclosure of the information sought by Defendants concerning whether a case involves substance abuse and the impact substance abuse had on that case would not violate these provisions nor put "JFS at risk of losing its Federal funding" under these provisions.

Section 671(a)(8) requires that the State's plan provide "safeguards which restrict the use of or disclosure of information *concerning individuals assisted under the State plan* to purposes directly connected with" certain tasks related to the administration of the State's plan. *Id.* § 671(a)(8) (emphasis added). Meanwhile, under 45 C.F.R § 205.50, "[a] State plan for financial assistance under title IV–A of the Social Security Act, must provide that . . . [t]he use or disclosure of information *concerning applicants and recipients* will be limited to purposes directly connected with" the administration of such plan. 45 C.F.R § 205.50(a)(1)(i)(A)-(G) (emphasis added). Title IV-A of the Social Security Act, which governs block grants to states for "temporary assistance for needy families," is particularly focused on protecting the *identities* of "applicants and participants" of public assistance. *See id.* § 205.50(a)(1)(iii).

The plain language of these provisions and the related case law make clear that 42 U.S.C. § 671 and 45 C.F.R. § 205.05 are intended to protect from disclosure information that identifies "applicants and recipients" of public assistance. But Defendants seek no such information here. Indeed, removals and other interventions, including those purportedly caused by opioid addiction, might affect upper class and middle class families as well as families on public assistance. If the SACWIS data includes fields identifying families on public assistance, Defendant have not sought and have no interest in that data, which can be redacted. Thus, Defendants' request is similar to the request upheld in *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 886 N.E.2d 206, 210-11 (Ohio 2008). In that case, relator requested a list of "the names and addresses of all foster caregivers certified by the state," and the State of Ohio argued that the information was protected from disclosure pursuant to 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50, among others. The Court held that the list was not protected from disclosure. *Id.* at 214.

*Third*, to the extent the information Defendants seek may be tangentially related to applicants or recipients of public assistance under 42 U.S.C. § 671(a)(8) and 45 C.F.R. § 205.50, Courts have permitted disclosure of such information when appropriately redacted and/or produced pursuant to a protective order or other appropriate confidentiality agreement.

**ReedSmith**

Special Master David Cohen
February 15, 2019
Page 10


Multiple courts have ordered children and family services departments to produce such information as appropriately redacted and/or pursuant to protective order. In *John B. v. Goetz*, plaintiffs sought information from the Tennessee Department of Children Services ("TDCS"), including various TDCS case management records and reports, and data from the TNKids database, originally developed for TDCS as its SACWIS database. 879 F. Supp. 2d 787, 899 – 900. The Court acknowledged that the information sought could include information deemed confidential pursuant to 42 U.S.C. § 671(a)(8), but nonetheless held that federal law did not bar production of the information and ordered defendants to produce the data and documents. *Id.* at 901, 904. In doing so, the Court acknowledged that redaction of information relating to protected persons and "[a]n appropriate protective order for discovery and trial c[ould] avoid disclosures of the identities of the children, doctors and other protected person[s]" and mitigate the privacy concerns expressed by TDCS. *Id.* at 903-04.

Similarly, in *Clark K. et al. v. Michael Willden, Director of the Nevada DHHS et al.*, plaintiffs sought "(1) case records for all foster children who have been the subject of an abuse or neglect while in the custody of Clark County; and (2) case records for children who have died or suffered abuse while in the custody of Clark County." No. 2:06-cv-01068, 2008 WL 11449387, at *2 (D. Nev. Mar. 12, 2008). Defendants objected to production of this information, in part, pursuant to 42 U.S.C. § 671(a)(8). *Id.* at *1-2. After requiring the parties to enter into a "confidentiality agreement," the Court ordered production of the case records. *Id.* at *2. Likewise, in this case, the Court should order that SACWIS data be produced subject to the protections already in place in Case Management Order No. 2.

Thus, relevant case law and the plain language of the regulations and statutes initially cited by the State make it clear that the CFS Spreadsheet, and the data it includes, are not protected by laws that would prevent their disclosure. This is particularly the case where, as here, the production would be pursuant to the Protective Order, and fields containing children's names would be masked or redacted.

\* \* \*

Defendants therefore respectfully request a determination that the CFS Spreadsheet was not in fact inadvertently disclosed, is not protected from disclosure, and/or or any such protection has been waived. The Clawback Request should be rejected, and copies of the CFS

**ReedSmith**

Special Master David Cohen
February 15, 2019
Page 11


Spreadsheet need not be gathered and destroyed.  Rather, additional discovery should be granted in response to the dispute already pending before you.

Respectfully submitted,

/s/ *Steven Boranian*

Steven Boranian



Enclosures

cc:    Plaintiffs' Liaison Counsel
       Defendants' Liaison Counsel
       xALLDEFENDANTS-MDL2804-Service@arnoldporter.com
       Mdl2804discovery@motleyrice.com
       David Ackerman
       Hunter Shkolnik
       Joseph Ciaccio
       Salvatore Badala
       Jodi Westbrook Flowers
       Frank Galluci