# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| | **Case No. 17-md-2804** |
| | **Judge Dan Aaron Polster** |
| **This document relates to:** | |
| *"Track One Cases"* | |

---

## DISTRIBUTOR DEFENDANTS' PARTIAL OBJECTIONS TO DISCOVERY RULING NUMBER 17 REGARDING SACWIS DATA

---

## Table of Contents

Page

I.   THE COURT SHOULD ORDER THAT PLAINTIFFS PRODUCE THE FILE FOR EACH CASE UPON WHICH PLAINTIFFS MAY REASONABLY RELY TO SUPPORT THEIR CLAIMS OF DAMAGES.................................................................................................... 7

   A.   The Case Files Are Directly Relevant to Plaintiffs' Claims. .............................................. 7

   B.   Production of De-Identified Case Files Is Essential to Defendants' Ability to Adequately Prepare Their Defense and Proportional to the Needs of This Case................................... 8

   C.   Production of Only Ten De-Identified Case Files is Entirely Inadequate in Light of the Volume of Case Files at Issue............................................................................................ 11

II.   THE COURT SHOULD REQUIRE THAT EACH PLAINTIFF PRODUCE A SPREADSHEET THAT CONTAINS A COMPLETE SACWIS DATASET TO INCLUDE INFORMATION REGARDING ANY CASE IN WHICH SUBSTANCE ABUSE IS NOTED. ................................................................................................................................. 11

Pursuant to Federal Rule of Civil Procedure 53(f), AmerisourceBergen Drug Corporation, McKesson Corporation, and Cardinal Health, Inc. (the "Distributors" or "Defendants"), object in part to Special Master Cohen's Discovery Ruling No. 17, ECF No. 1425 (the "Ruling").

## **INTRODUCTION**

In issuing Discovery Ruling No. 17, Special Master Cohen improperly limited the scope of discovery with respect to certain data from the Statewide Automated Child Welfare Information System ("SACWIS") and related hard copy case files that are separately maintained by the County of Cuyahoga, Ohio and the County of Summit, Ohio (collectively "Plaintiffs").   These data and case files contain highly relevant information related to the substances used and/or abused by participants of the Cuyahoga County Division of Children and Family Services ("DCFS") and the Summit County Department of Children Services ("SCCS") that is crucial to the preparation of the Distributors' defense.

Specifically, the Special Master improperly ruled that Plaintiffs are each required to disclose only ten (10) de-identified, hard copy case files, a very small quantity given the hundreds of millions of dollars in damages sought by Plaintiffs based on, implicitly or explicitly, presumably thousands of child removals and other interventions purportedly caused by opioid addiction. Defendants seek production of the file for *each case* upon which Plaintiffs may reasonably rely—either directly or indirectly—to prove their claims of damages.   Anything less would leave Defendants severely prejudiced and necessarily frustrate the purpose of discovery.

In addition, the Special Master improperly ruled that a spreadsheet previously produced by Cuyahoga County in which it recently self-identified alleged "opioid removals" (*i.e.*, the children services cases where a child was allegedly removed from the home because of a caregivers' opioid use or abuse), was "sufficient," requiring Summit County to produce a comparable spreadsheet. This spreadsheet shows only coded fields self-selected by Plaintiffs.  Plaintiffs should be required

to produce a **complete** SACWIS dataset that includes information regarding **any case** in which substance abuse (as defined by the characteristics listed on **Ex. 1**, at Exhibit 1, at Exhibit G) is noted.  It is only with this information that Defendants will be situated to properly assess any opinions that will be set forth by Plaintiffs' experts as to the percentage of cases involving only opioids or opioids, as opposed to those that involve only other legal or illegal drugs, polysubstance abuse, or no substance abuse at all.

In light of the relevancy of the information sought and the fact that Plaintiffs' "children services" damages are by far the highest category of damages claimed in this litigation— comprising more than ███████████ claimed by these two Counties—this discovery is proportional to the needs of the case and essential to the preparation of the Distributors' defense.  By Plaintiffs' stonewalling, Defendants have received to date absolutely no documentary discovery whatsoever concerning the child services cases and interventions that purportedly resulted in hundreds of millions of dollars in increased costs caused by opioid addiction.  The only document produced at all concerning those cases was a single truncated, self-serving spreadsheet recently created from Cuyahoga, which it wants to clawback, no such spreadsheet from Summit, and no underlying case files from either Plaintiff.  Plaintiffs cannot reasonably prosecute this huge claim yet deny all discovery concerning it.  The Special Master's order offered a glimmer of discovery into this claim, but particularly given the prominence of the claim, the order did not go nearly far enough

## BACKGROUND

On November 2, 2018, Defendants deposed Mr. Christopher Cabot, a Social Program Administrator at DCFS.  It was during this deposition that Defendants first learned of the significance of the SACWIS.[1]  Specifically, Mr. Cabot testified that DCFS has used SACWIS

---

[1]    Notably, while Cuyahoga County produced ███████████ in August 2018, the spreadsheet on its face did not reflect that the data contained in the spreadsheet came from SACWIS, and the production letter that

since December of 2008, and SACWIS is used to track, in relevant part, the specific types of substances used and/or abused by DCFS participants.  *See* **Ex. 1**, Ltr. to Special Master Cohen re Motion to Compel Summit County and Cuyahoga County to Produce SACWIS Data and Documents, Jan. 21, 2019, at Exhibit 1, and Exhibit C, at 92:21; 248:13-15.  On November 13, 2018, Defendants deposed Ms. Cynthia Weiskittel, Executive Director of DCFS.  Ms. Weiskittel similarly testified regarding DCFS's use of SACWIS, but further explained that Cuyahoga County also keeps its own separate, hard copy case files that contain information regarding the history of the case, including the specific substances used and/or abused by the DCFS participant.  *See id*. at Exhibit 1, at Exhibit A, at Exhibit 2, at 54:5 – 57:10.  Cuyahoga County's hard copy case files are a vital supplemental to the SACWIS database, as children services employees do not regularly nor consistently track participant substance abuse information in SACWIS.  *See id*.; *see also id.* at Exhibit 9, at 388:3 – 390:20.  Deponents from SCCS subsequently confirmed that SCCS also records the specific substances used and/or abused by its Summit County participants in SACWIS and keeps corresponding, hard copy case files.  *See id.* at Exhibit 8, at 134:1 – 137:8.

In light of the testimony provided by Plaintiffs' witnesses, Defendants sought production of data from SACWIS regarding the substances used/and or abused by DCFS and SCCS clients and the corresponding, County-maintained hard copy case files as responsive to Distributor Defendants' Request for Production of Documents number 7.[2]  In response to Defendants' requests, Cuyahoga County pointed to a previously produced spreadsheet with data extracted from SACWIS that ██████████████████████████████████████████████████████

---

accompanied the spreadsheet did not note that the data came from SACWIS.  ████  ████████████  The production letter noted only that the spreadsheet came from the Department of Children and Family Services.

[2]     Distributor Defendants' Request for Production of Documents No. 7 seeks "documents and data referring or relating to Plaintiff expenditures relating to the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids or the possession, abuse, illegal sale, or addiction to other opioids . . . ."



Summit County

refused to produce any SACWIS data or case files.

After extensive briefing and months of meet and confers with Plaintiffs, Special Master

Cohen, and the State of Ohio,[3] Special Master Cohen ruled as follows on February 27, 2019:

> ***Prior production by Cuyahoga County of the spreadsheet*** ▮▮▮▮▮▮ ***containing certain Data Fields extracted from the SACWIS data (which data was "de-identified," in that it did not reveal the identities of the minors or their families) was an appropriate and sufficient production of SACWIS data fields by Cuyahoga County.  Summit County must produce a similar spreadsheet containing the same data fields***.  Cuyahoga and Summit County must also each produce ***10 "case files" of defendants' choosing***.  The counties shall redact from those case files any information that would allow identification of the minors who are the subject of the files, or their families.  The counties' redactions shall be as limited as possible while fulfilling this directive.  To the extent necessary, the Ohio Department of Jobs and Family Services (ODJFS) must coordinate with Cuyahoga and Summit Counties and facilitate production of the above-listed SACWIS data and materials.  The various statutes cited by the parties (including the State of Ohio), which contain provisions limiting the release of SACWIS data and information, all also contain provisions allowing for release pursuant to Court order in appropriate circumstances.  This ruling fits within those provisions.

*See* ECF No. 1425 (emphases added).  The Special Master formalized this ruling on March 10,

2019, and noted that, "if any party chooses to object to any aspect of this Ruling, it must do so on

or before 5:00 p.m. EST on March 15, 2019."  *Id.*; *see also* Fed. R. Civ. P. 53(f)(2) ("A party may

---

[3]  The State of Ohio objected to the production of data from SACWIS on the grounds that the information sought was subject to and protected by certain provisions allegedly imposing various confidentiality requirements. *See* **Ex. 2**, Ohio Department of Job and Family Services Response to Defendants Feb. 6, 2019, Letter.  Defendants hereby incorporate by reference the arguments made and facts presented in their briefing on the provisions cited by the State.  *See* **Ex. 3**, Ltr. to Special Master Cohen re Disclosure of SACWIS Data, Feb. 6, 2019; *see also* **Ex. 4**, Email from S. Boranian to Special Master Cohen re Motion to Compel Production of SACWIS Data and Individual Case Files, Feb. 12, 2019.  As found by Special Master Cohen, production of SACWIS data and individual case files is permissible under the relevant state and Federal statutory and regulatory schemes, particularly in light of the comprehensive Protective Order in this case.

file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time.").

## ARGUMENT

Defendants respectfully object to the Special Master's ruling on two grounds.  First, the Court should require that Plaintiffs produce the file for *each case* upon which Plaintiffs may reasonably rely—either directly or indirectly—to prove their claims of damages, not simply ten case files of Defendants' choosing.  Second, the Court should order that both Cuyahoga County and Summit County produce a spreadsheet containing a complete SACWIS dataset that includes information related to *any case in which substance abuse is noted*, ███████████████ ████████████████████████████████████████.

## I.  THE COURT SHOULD ORDER THAT PLAINTIFFS PRODUCE THE FILE FOR EACH CASE UPON WHICH PLAINTIFFS MAY REASONABLY RELY TO SUPPORT THEIR CLAIMS OF DAMAGES.

### A.  The Case Files Are Directly Relevant to Plaintiffs' Claims.

Plaintiffs claim that an increasing number of children in Cuyahoga County and Summit County have been removed from their families and put in to foster care or other out-of-home placement because of their caregivers' use of opioids.  Plaintiffs maintain these "opioid removals" have caused a significant rise in costs, which have been borne by the respective children services departments and, in turn, the Counties.  In order to evaluate the legitimacy of Plaintiffs' assertions and claims of damages, Defendants require the file for each case Plaintiffs claim involved an "opioid removal."  As noted above, these files contain information regarding the specific circumstances of the client and case, particularly the specific substance or substances used and/or abused by DCFS and SCCS participants.  These files are therefore necessary to determine whether those cases claimed to be "opioid removals" truly involved opioids and, if so, whether those opioids in fact caused or contributed to the removal of the child in any way.

- 7 -

In response to this argument, Cuyahoga County has repeatedly asserted that it █████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████  But Cuyahoga County's attempt to create a distinction between individual case files and "aggregate data" is an end run around its discovery obligations.  ***Any "aggregate data" would necessarily be derived from the individual case files***.  There is simply no meaningful difference.  Cuyahoga County cannot avoid production of the individual case files by merely refraining from identifying the specific cases that unequivocally form the basis of their "aggregate data" and, in turn, their claim for damages.[4]

**B.    Production of De-Identified Case Files Is Essential to Defendants' Ability to Adequately Prepare Their Defense and Proportional to the Needs of This Case.**

Cuyahoga County claims ████████████ in children services damages between 2006 and 2017, and Summit County claims ███████████ in children services damages between 2006 and 2017.  ██████ █████████████████████████████████████████  These figures represent by ███████████████ damages claimed by both Cuyahoga County and Summit County and do not even take into consideration Plaintiffs' alleged future damages, which the Counties have not specifically allocated among the categories of damages claimed but assert amount to ███████████ in total for Summit County and ████████████ in total for Cuyahoga

---

[4]    Special Master Cohen similarly ruled in connection with a discovery dispute related to the deposition of David Merriman, Assistant Director of the Cuyahoga County Department of Health and Human Services.  Subsequent to Mr. Merriman's deposition, Cuyahoga County asserted that Mr. Merriman ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

County.  Without the case files, Defendants will have no way to properly evaluate and defend against these significant claims for damages.

Specifically, the County-maintained case files are the most reliable and comprehensive source of information available to Defendants concerning the substance used and/or abused by the client(s) involved in the cases Plaintiffs' have identified as "opioid removals."  **Ex. 1**, at Exhibit 1, at Exhibit A, at Exhibit 2, at 54:5 – 57:10; *see also id.* at Exhibit 9, at 388:3 – 390:20; *id.* at Exhibit 1, and Exhibit C, at 98:11-23; *id.* at Exhibit 8, at 134:1 – 137:8; **Ex. 2**, at 3 ("[T]here is a lack of state-wide requirements on what, if any, opioid-related data [is] entered [into SACWIS, how it [is] entered, and where in SACWIS it [is] entered . . . .").  The only other marginally comparable source of information is the actual spreadsheet Defendants received from Cuyahoga County ████████████████████████████████████████████████

████████████████████████████████  However, based on the information available in the spreadsheet, Defendants do not know how Cuyahoga County ████████████

████████████████████████  and Defendants do not know from what field in SACWIS Cuyahoga County ████████████████████████  As explained by the State, there are numerous places in SACWIS where a caseworker could document the presence of opioids in a case but which would not necessarily lend to the conclusion that opioids were the reason for removal:

> While the individual case notes [in SACWIS] may reflect a specific reason necessitating removal of a child or other intervention (for example, neglect) and an underlying cause of that reason (for example, alcohol abuse), those notes are created based on all work done during a case. SACWIS contains hundreds of data fields for each case through multiple sub-categories, drop-down menus, and narrative fields . . . .  This presents many opportunities for 'drugs' and related terms to be mentioned without actually being relevant to any county action. For example, if, during the intake of an allegation of neglect, the reporter claims that the mother is abusing opioids, that allegation will likely be in the case notes. That does not,

however, mean that the child was removed because of opioids, or even that opioids
are actually being abused.

**Ex. 2**, at 2-3.  And Defendants have in fact identified certain inconsistencies in the spreadsheet



Absent information from the case files, Defendants will be improperly forced to take Plaintiffs'

conclusions (or forthcoming conclusions, for Summit County) ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ and deprived the opportunity to meaningfully challenge those conclusions.

Moreover, as argued below, this spreadsheet contains only data fields self-selected by

Cuyahoga County, and is thus incomplete because it does not provide any additional information

on whether there were other substances at issue in these cases, or any other alternative causes for

removal for that matter.  The only characteristics information provided is the ▮▮▮▮▮▮, but

numerous other factors must be taken into account to determine whether the actual reason for

removal was opioid use, including, for example, whether the caregiver also used another legal or

illegal substance.  This information is material to a causation analysis, and access to the case files

is the only way to obtain all of the necessary facts.

While Defendants recognize the time and effort it would take to collect and redact these

case files, this inconvenience is unequivocally proportional in light of the hundreds of millions of

dollars' in damages claimed, the relevancy of the case files, the lack of more reliable and

comprehensive alternative sources, and the importance of the information contained in the case

files to the Distributors' defense.

**C.      Production of Only Ten De-Identified Case Files is Entirely Inadequate in Light of the Volume of Case Files at Issue.**

Despite Defendants repeated requests, Plaintiffs have refused to define the universe of cases that comprise their claims of damages.  It goes without saying that Defendants require this information to appropriately calculate the percentage of cases alleged to involve only opioids or opiates, as opposed to other cases involving other legal or illegal drugs or no substance abuse at all.  Nevertheless, Cuyahoga County's spreadsheet ███████████████████████████ ███████████████████████████████████████████████████████ While Summit County has not provided a similar spreadsheet, the fact that it claims ██████████ in children services damages demonstrates the number of cases that form the basis of its claim for damages must likewise be significant.  A sample of ten case files from a universe of thousands is not representative and cannot provide Defendants with the information needed to properly evaluate the reliability of Plaintiffs' claims for damages.  Anything less than the full universe of case files will leave Defendants with substantial gaps in their defense that will cause severe, undue prejudice.

**II.      THE COURT SHOULD REQUIRE THAT EACH PLAINTIFF PRODUCE A SPREADSHEET THAT CONTAINS A COMPLETE SACWIS DATASET TO INCLUDE INFORMATION REGARDING ANY CASE IN WHICH SUBSTANCE ABUSE IS NOTED.**

The Special Master ruled that Cuyahoga County's spreadsheet "containing certain Data Fields extracted from the SACWIS data . . . was an appropriate and sufficient production of SACWIS data fields by Cuyahoga County."  ECF No. 1425.  He additionally held that "Summit County must produce a similar spreadsheet containing the same data fields."  *Id.*  Defendants submit that the data from Cuyahoga County's spreadsheet is far from "sufficient" and, in fact, is entirely inadequate.

Cuyahoga County has confirmed that it intends to rely on ████████████████ █████████████████████████████████████████████████████████████Defendants cannot

logically test the sufficiency of the aggregate data without access to the aggregate data, particularly the SACWIS data related to *all* cases involving substance abuse.  For example, Plaintiffs' witnesses have repeatedly testified that data analyses of client substance abuse performed by children services department employees consistently conflate and/or improperly group together opioids, opiates, *and other substances*.  *See* **Ex. 1**, at 4.  This means that any damages calculation that takes these assessments into consideration would likewise improperly conflate and/or improperly group together opioids, opiates, and other substances.  The only way for Defendants to identify these scenarios would be to have the information from SACWIS regarding all cases involving substance abuse, not just information related to what Plaintiffs' have identified as ██████████████████  In other words, Defendants' expert witnesses must have access to the entire universe of data related to children services cases involving substance abuse from which to draw their conclusions in order to render meaningful opinions regarding the percentage of cases alleged to involve opioids or opiates and the overarching impact of those cases on the respective children services departments.

Ultimately, Cuyahoga County's spreadsheet merely provides cherry-picked information relevant to its own case. ███████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████  ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████  This gamesmanship necessarily frustrates the purpose of discovery and greatly prejudices Defendants. *See* Fed. R. Civ. P. 26 advisory committee's note to 1946 amendment ("The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation of the presentation of his case."); *see also id.*, advisory committee's note to 1983 amendment ("The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. 'Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). It should not be permitted.

Again, in light of the substantial children services damages claimed by Plaintiffs in this litigation and the relevancy of this data, Defendants request is proportional and reasonable.

<u>**CONCLUSION**</u>

If Plaintiffs agree to abandon their claims for children services damages, then Defendants will withdraw their request for SACWIS data and case files. Absent such agreement, Defendants respectfully request that this Court order (1) Plaintiffs produce the hard copy files that correspond to each of the cases upon which Plaintiffs will reasonably rely—either directly or indirectly—to support their claim for damages; and (2) Plaintiffs each produce a spreadsheet that contains a complete SACWIS dataset to include information regarding any case in which substance abuse is noted. In light of the impending expert disclosure deadlines and late stage of discovery, Defendants respectfully request that this Court impose an expedited schedule for the aforementioned production.

DATED: March 15, 2019

Respectfully submitted,

/s/ Shannon E. McClure
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Fax: (215) 851-1420
smcclure@reedsmith.com
*Counsel for Distributor Defendant*
*AmerisourceBergen Drug Corporation*
*Co-Liaison Counsel for the Distributor Defendants*


Enu Mainigi
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
*Counsel for Defendant Cardinal Health, Inc.*
*Co-Liaison Counsel for the Distributor Defendants*

Geoffrey Hobart
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5281
ghobart@cov.com
*Counsel for Distributor Defendant*
*McKesson Corporation*
*Co-Liaison Counsel for the Distributor Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2019, I caused the foregoing document to be served via the Court's ECF system to all counsel of record.

*/s/ Shannon E. McClure*
Shannon E. McClure
*Counsel for Distributor Defendant*
*AmerisourceBergen Drug Corporation*
*Co-Liaison Counsel for the Distributor*
*Defendants*