# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) **MDL 2804** |
|  | ) |
|  | ) **Case No. 1:17-md-2804** |
| THIS DOCUMENT RELATES TO: | ) |
|  | ) **Judge Dan Aaron Polster** |
| *Track One Cases* | ) |
|  | ) **OPINION AND ORDER** |

Before the Court is Plaintiff City of Cleveland's Motion to Disqualify Carole Rendon. **Doc. #: 1241**. Plaintiffs Summit County, Cuyahoga County, and City of Akron subsequently joined Cleveland's Motion. Doc. #: 1246. Defendant Endo filed a Brief in Opposition, Doc. #: 1299, in which the Manufacturer Defendants joined. Doc. #: 1329. Plaintiffs filed a Reply in support of their Motion. Doc. #: 1320. With the Court's permission, Endo then filed a Sur-Reply in Opposition to the Motion. Doc. #: 1332. Distributor Defendants also filed a Position Statement Concerning Plaintiffs' Motion. Doc. #: 1336. Endo also filed an Amicus Letter from Former United States Attorneys as a Supplement to its Brief in Opposition. Doc. #: 1342. On February 6, 2019, the Court held a public hearing on Plaintiffs' Motion wherein the Court heard testimony by several witnesses.[1] *See* Doc. #: 1354, Tr. of Feb. 6 Hr'g. Plaintiffs seek disqualification of Carole Rendon and her firm, BakerHostetler, from this MDL for alleged violations of the Ohio Rules of Professional Conduct. Plaintiffs allege that Ms. Rendon violated one or both of Rules 1.11(a) and 1.11(c), and that disqualification is, therefore, an appropriate sanction. For the following reasons, Plaintiffs' Motion is **GRANTED-IN-PART**.

---

[1] Plaintiffs called Gary Gingell, Commander for the City of Cleveland's Division of Police; Thomas Gilson, MD, Chief Medical Examiner of Cuyahoga County; and Calvin Williams, Chief of Police for the City of Cleveland. Endo called Carole Rendon.

Upon leaving private practice, Carole Rendon served as the Executive Assistant U.S. Attorney for the U.S. Attorney's Office for the Northern District of Ohio ("USAO") from November 16, 2009 – April 30, 2010. Beginning on May 1, 2010, she served as the First Assistant U.S. Attorney until February 5, 2016. On February 6, 2016, Ms. Rendon became The U.S. Attorney for the Northern District of Ohio and was unanimously confirmed by the U.S. Senate on July 12, 2016. On March 10, 2017, she was forced to resign by President Trump. On May 1, 2017, Ms. Rendon began working at BakerHostetler in the firm's Cleveland office, and in June of 2017 she began representing Endo in this MDL. She was appointed Defendants' Co-Liaison Counsel in December of 2017, shortly after the MDL was created.

During Ms. Rendon's government service in the Northern District of Ohio, the USAO recognized the opioid epidemic as "an unprecedented health care and law enforcement crisis in Northern Ohio," and in 2013—while Ms. Rendon was First Assistant U.S. Attorney—created the Heroin and Opioid Task Force ("Opioid Task Force" or "Task Force"). *See Heroin Epidemic: The U.S. Attorney's Heroin and Opioid Task Force*, Justice.gov, (Updated May 4, 2017) (https://www.justice.gov/usao-ndoh/heroin-epidemic). "The group brings together a diverse group of stakeholders, including law enforcement, the medical community, people in recovery, treatment professionals, judges, public health professionals, educators and others. It focuses on solutions from four perspectives: law enforcement; education and prevention; healthcare policy; and treatment." Press Release: *U.S. Attorney's Heroin and Opioid Task Force recognized with Attorney General's Award*, Justice.gov, (Sept. 22, 2016) (https://www.justice.gov/usao-ndoh/pr/us-attorneys-heroin-and-opioid-task-force-recognized-attorney-generals-award).

Members of the Task Force include the Cleveland Clinic, the Cuyahoga County Sheriff's Department, MetroHealth Medical Center, Cuyahoga County Common Pleas Court, the Cuyahoga County Prosecutor's Office, the Ohio Attorney General, Orca House, WKYC Channel 3, the Cleveland Division of Police, the DEA, the

FBI, the Ohio State Medical Board, the Ohio State Pharmacy Board, the Cuyahoga County Board of Health, the Cuyahoga County Medical Examiner, University Hospitals, the ADAMHS Board and others.[2]

*Id.* As a function of her appointed office, Ms. Rendon became the Chair of the Task Force on February 6, 2016 when she became the U.S. Attorney for the Northern District of Ohio.[3]

On October 27, 2017 Cuyahoga County filed a lawsuit against Opioid Manufacturers, Distributors, and Pharmacies (collectively the "MDL Defendants"), including Endo.[4] On December 5, 2017, the Judicial Panel on Multidistrict Litigation created *In Re: National Prescription Opiate Litigation*, 17-MD-2804, for coordinated and consolidated pretrial proceedings before this Court. *See* Doc. #: 1. Shortly thereafter, on December 20, 2017, Summit County and the City of Akron filed their own lawsuit against the MDL Defendants, including Endo.[5] Finally, on March 6, 2018, the City of Cleveland filed its suit against the MDL Defendants, including Endo.[6] Plaintiff Cuyahoga County first raised the issue of Ms. Rendon's potential disqualification from the MDL in an August 3, 2018 letter to Ms. Rendon. After the parties failed to reach a resolution, on January 10, 2019, Cleveland filed the present Motion to Disqualify Ms. Rendon.

## II.

"Motions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *In re*

---

[2] Although Cleveland's Motion was joined by Cuyahoga County, Summit County and the City of Akron, the Court's Opinion and Order focuses on the City of Cleveland and Cuyahoga County. The DOJ's website does not list Akron or Summit County as participants in the Task Force, and neither Plaintiffs' Motion Brief nor Reply Brief assert that they were.

[3] Plaintiffs assert that Ms. Rendon is "a founding member and co-creator" of the Opioid Task Force but cite no evidence that this was the case. Doc. #: 1305-1 at 3. Plaintiffs cite the Dept. of Justice's September 22, 2016 Press Release, cited above, to support this assertion, but the Press Release merely states that she chaired the Task Force. *See* Press Release, Justice.gov, (Sept. 22, 2016).

[4] *The County of Cuyahoga v. Purdue Pharma L.P.*, Case No. 17-OP-45004 (N.D. Ohio), filed in state court on 10/27/17, removed on 11/27/17, reassigned to J. Polster on 11/28/17.

[5] *The County of Summit, Ohio. v. Purdue Pharma L.P.*, Case No. 18-OP-45090 (N.D. Ohio), filed in state court on 12/20/17, removed and transferred on 1/22/18.

[6] *City of Cleveland v. AmerisourceBergen Drug Corp.*, Case No. 18-OP-45132 (N.D. Ohio).

*Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), *aff'd*, 5 F. App'x 396 (6th Cir. 2001) (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J.1993)). "The United States Court of Appeals for the Sixth Circuit now looks to the codified Rules of Professional Conduct for guidance in determining whether an attorney should be disqualified from representing a client based on a conflict of interest." *O'Brien v. Brunner*, No. 2:15-CV-2803, 2016 WL 1059683, at *3 (S.D. Ohio Mar. 17, 2016) (internal quotations omitted). In other words, a Court should not disqualify a party's chosen counsel absent, at the very least, a showing by the movant that the attorney violated an ethics rule. Absent a violation, the appearance of impropriety cannot, by itself, be the sole ground to disqualify an attorney. *See id.* (finding that the appearance of impropriety standard, which still applies to the disqualification of a judicial officer, "does not exist in order to remove a litigant's chosen counsel.").

III.

The Court thus examines whether Ms. Rendon violated one of the Ohio Rules of Professional Conduct. First, Plaintiffs assert that Ms. Rendon violated Rule 1.11(a), which provides in relevant part:

> A lawyer who has formerly served as a public officer or employee of the government shall . . . not otherwise represent a client in connection with a matter in which the lawyer participated personally and *substantially* as a public officer or employee, unless the appropriate government agency gives its *informed consent, confirmed in writing*, to the representation.

Ohio R. Prof. Conduct 1.11(a) (emphasis in original). There is no doubt that Ms. Rendon participated personally and substantially as a public officer on the Task Force. The parties spend significant time briefing whether the Opioid Task Force constitutes a "matter" under the rule, and if so, whether it is the same matter as the lawsuits filed by Cleveland and Cuyahoga County against Endo and the other MDL Defendants.

The Court finds that Rule 1.11(a) is not implicated here. At its core, Rule 1.11(a) is a rule that prevents "side-switching" when a government lawyer goes into private practice (or vice

4

versa). To allow a government lawyer to leave public service for private practice and also prevent the government lawyer from, in fact, switching sides, the rule expressly requires that the "matter" that the government lawyer worked on be the same, instead of merely "substantially related" as required by Rule 1.9. *Compare* Ohio R. Prof. Conduct 1.9(a) (lawyer "shall not thereafter represent another person in the same or a *substantially related matter*"), *with* Ohio R. Prof. Conduct 1.11, Cmt. [10] (providing guidance for "determining whether two particular matters are the same," but not for determining whether they are substantially related).

Part of the reason that the Rules of Professional Conduct were adopted to replace the Code of Professional Responsibility was that the former disciplinary rule, 9-101(B), did not provide "specific guidance to former government lawyers."[7] *See* Ohio R. Prof. Conduct, Comparison to former Ohio Code of Professional Responsibility. In the same vein, the amicus Letter of Former Attorneys General takes the position that the rules ought to "be applied in a way that provides certainty to current and former governments attorneys, as well as to prospective government attorneys weighing the costs and benefits of public service." Doc. #: 1342 at 1.

In arguing that the Opioid Task Force and the Opioid Multidistrict Litigation are the same "matter," Plaintiffs' reading of Rule 1.11(c) sweeps too broadly. The Opioid Task Force is a group of agencies, organizations, and individuals with a stake in their community that share a common goal of finding a multi-pronged solution to the opioid crisis. The cases brought by *Track One* Plaintiffs are civil actions brought against manufacturers (including Endo), distributors and retailers of prescription opiates alleging liability for the cost of addressing the opioid public health crisis. Plaintiffs allege false marketing and inadequate monitoring of suspicious order reports. They cannot be deemed the "same matter" within a fair construction of the rule. Nor did Ms. Rendon "switch sides" in this case. Ms. Rendon was a lawyer for the U.S. Government. In that

---

[7] Disciplinary Rule 9-101, contained the former "Avoiding Even the Appearance of Impropriety" standard. Ohio Code of Prof. Resp., DR 9-101.

role, as part of the Opioid Task Force, Ms. Rendon did not conduct any investigation into any conduct of Endo, nor was she involved in any claim or case against Endo.

Finally, a narrow interpretation of Rule 1.11 is supported both by a common sense reading of the examples provided by the rule, and by the Sixth Circuit's guidance that disqualification motions are "disfavored" and should only be granted "when absolutely necessary." *Valley-Vulcan*, 237 B.R. at 337. Therefore, the Court concludes that the Opioid Task Force and the Opioid Multidistrict Litigation are not the same matter.

Plaintiffs also assert that a Consent Decree entered between Cleveland and the U.S. Attorney's office on which Ms. Rendon was "one of the lead architects" is also a substantially related matter which should disqualify Ms. Rendon. Doc. #: 1305-1 at 17. The Consent Decree resolved a U.S Department of Justice investigation into whether Cleveland Division of Police used unconstitutionally excessive force. The Opioid Multidistrict Litigation, as stated above, is a civil action brought by municipalities, tribes, hospitals, etc. against opioid manufacturers, distributors and retailers alleging liability for the costs Plaintiffs have incurred, and will continue to incur, in addressing this public health crisis. The Court concludes that the Consent Decree and the Opioid Multidistrict Litigation are also not the same "matter" as contemplated by the rule. Therefore, the Court is persuaded that Ms. Rendon has not violated Rule 1.11(a).

IV.

Plaintiffs also assert that Ms. Rendon violated Rule 1.11(c), which provides:

Except as law may otherwise expressly permit, a lawyer having information that the lawyer *knows* is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. As used in this rule, the term "confidential government information" means information that has been obtained under governmental authority and that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public.

Ohio R. Prof. Conduct 1.11(c) (emphasis in original). Plaintiffs assert that Ms. Rendon received confidential government information about Plaintiffs City of Cleveland and Cuyahoga County through her role as the head of the Opioid Task Force. In pleadings and through Ms. Rendon's testimony at the February 6, 2019 hearing, Endo denied this was the case. At the conclusion of the February 6, 2019 hearing, the Court stated that it would ask the Department of Justice to conduct an investigation into this issue. By letter dated March 15, 2019 from Senior Trial Counsel, Lisa A. Olson, (Exh. A) the Department of Justice responded that:

> Cuyahoga County and Cleveland law enforcement officials shared nonpublic information with Ms. Rendon and her direct reports as a result of the cooperation among federal, state, and local law enforcement agencies in combatting the opioid crisis. This information was conveyed primarily in meetings (e.g., "sidebars") and communications arising out of the Task Force, and was shared in a spirit of confidence and trust. The information concerned the inadequate staffing levels, funding deficiencies, strategies, initiatives, operations, and allocation of resources at the county and local levels for dealing with the opioid crisis.

Exh. A (March 15, 2019 Ltr. to J. Polster). The Court concludes, based upon its understanding of this litigation, that this confidential non-public information may go to the heart of Plaintiffs' damages claims, and this information, if used by Endo could, "materially prejudice" Cleveland and Cuyahoga County. The Court, therefore, further concludes that it would not be appropriate for Ms. Rendon to continue to represent Endo in the litigation brought by the City of Cleveland and Cuyahoga County.[8]

Plaintiffs also ask that Ms. Rendon's firm, BakerHostetler, be disqualified "unless and until it complies with the screening requirements set forth in Rules 1.11(b) and 1.11(c)." Doc. #: 1305-1 at 24. Rule 1.11(b) applies only when a lawyer is disqualified per subsection (a), which is not the case here. Rule 1.11(c) provides that: "A *firm* with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is ***timely screened***

---

[8] The claims brought by Cuyahoga County will be tried October 21, 2019. The City of Cleveland's claims have been severed. *See* Doc. #: .1392.

from any participation in the matter and is apportioned no part of the fee therefrom." Ohio R. Prof. Cond. 1.11(c) (emphasis added). Attorneys from BakerHostetler have worked with Ms. Rendon on the Opioid Litigation since she began representing Endo in June of 2017. There is no way for BakerHostetler to timely screen Ms. Rendon at this point, almost two years later. The Court must, therefore, also disqualify BakerHostetler to the same extent that it has disqualified Ms. Rendon. Specifically, BakerHostetler may not represent Endo in the litigation brought by the City of Cleveland and Cuyahoga County, but may continue to represent Endo in any other case.

## V.

When I began my career with the Department of Justice in 1976, there was a climate of friction, competition, and mistrust between federal and local prosecutors in this District, and I assumed that Northeast Ohio was not atypical in this regard. The beneficiaries of this condition were the law breakers; the losers were law-abiding citizens. By the time I became a judge in 1998, there had been a dramatic change, and not by happenstance. While cooperation is always a two-way street, the U.S. Attorney's Office took the lead in building bridges. The Department of Justice created the position of Law Enforcement Committee Coordinator in each U.S. Attorney's Office and this person, along with the U.S. Attorney and the Assistant U.S. Attorneys, worked very hard to foster and maintain good working relationships with local law enforcement throughout the District. A number of Task Forces were created, through which federal, state, and local prosecutors and law enforcement agents shared information and worked together in addressing common concerns. While of course a major focus was criminal investigations and prosecutions, these Task Forces assumed a broader mission. There was a realization that the mission of building and maintaining a safe community requires more than just traditional criminal prosecution. Toward that end, the Heroin and Opioid Task Force spearheaded by the U.S. Attorney's Office was charged with developing a coordinated response to this devastating social epidemic.

While a Court should always treat a motion to disqualify counsel with the utmost care, my understanding of the historic context of the Opioid Task Force has given me additional insight into the complexity and significance of this motion. In community relations, just as in personal relationships, years of trust can be undone in a very short period of time. This is why I placed considerable significance upon the affidavit and hearing testimony of Commander Gingell. *See* Doc. #: 1241-20, Decl. of Gary Gingell, at 3 ("I would not have shared that same information with Ms. Rendon, had it not been for the fact that Ms. Rendon was a member of the U.S. Attorney's Office.") (filed under seal); *see also*, Doc. #: 1354, Tr. of Feb. 6 Hr'g, at 15:15-19 ("I think we have done a lot through . . . the Opiate Task Force to glue those relationships [between local and federal agencies] together, but I think something like this, I think a lot of people feel betrayed, myself included.").

Ordinarily, if a Court feels it necessary to engage in fact finding to resolve a particular issue, the adversarial process is the preferred method, and the inquiry often culminates in a public hearing where the facts are presented. For fairly obvious reasons, I did not want to use this method here. If there had been significant non-public information shared by Cleveland and/or Cuyahoga County officials with Ms. Rendon through the Task Force, the prejudice to the City and County would be compounded by disclosing those details to all of the defendants and their counsel. The Department of Justice is not a party in any of the more than 1,600 lawsuits in this MDL, nor in the hundreds of related lawsuits in state court. It could therefore derive no tactical benefit from whether or not Ms. Rendon and her firm could continue to represent Endo in the cases brought by Cleveland and Cuyahoga County. In addition, the Department of Justice is uniquely situated to conduct this inquiry.

I very much appreciate the Department of Justice's willingness to undertake this inquiry. I have not asked the Department to share with me the details of the confidential, non-public

information that was shared with Ms. Rendon through the Task Force process, as I have no need to know these details to render my decision. Nor is it necessary to try to determine whether Ms. Rendon has used any of this information in defending Endo, as Rule 1.11(c) prohibits representation when the information *could* be used to the material disadvantage of Cleveland or Cuyahoga County.

As the Court stated at the outset of the February 6, 2019, hearing the Court believes Ms. Rendon is an excellent attorney and that she served the U.S. Attorney's Office with great distinction. Her work on the Consent Decree will benefit the citizens of this area for years to come. There has never been a litigation such as the Opioid MDL, where now approximately 1,600 cities and counties have sued the manufacturers and distributors of prescription opioids, along with a number of pharmacies. Plaintiffs have asserted novel legal theories and are seeking to recoup billions of taxpayer dollars which have been spent, and will continue to be spent, in dealing with this epidemic. As detailed above, the Court concludes that under the unique facts of this case, it is not appropriate for Ms. Rendon, or her firm, to represent Endo in a trial against the City of Cleveland or Cuyahoga County.

However, the Court is also sympathetic to the policy implication raised by the amicus Letter of Former Attorneys General. Doc. #: 1342. The Letter addresses the same policy consideration considered by Comment [4] of the Ohio Rules of Professional Conduct. Comment [4] states:

> This rule represents a balancing of interests. On the one hand, where the successive clients are a government agency and another client, public or private, the risk exists that power or discretion vested in that agency might be used for the special benefit of the other client. . . . On the other hand, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards.

Ohio R. Prof. Conduct, Cmt. [4]. Ms. Rendon's work on behalf of the United States and specifically her work on the Opioid Task Force should not, and indeed does not, disqualify her and her firm from serving in a leadership capacity in the Opioid MDL or participating in any trial involving claims by other cities and counties. It is only the confidential information she received specific to the City of Cleveland and Cuyahoga County that disqualify her and her firm from participation in those two cases.[9]

Accordingly, Plaintiffs' Motion to Disqualify, Doc. #: 1241, is **GRANTED-IN-PART**.

**IT IS SO ORDERED.**

 **/s/ Dan Aaron Polster** *March 19, 2019*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

---

[9] *The County of Cuyahoga v. Purdue Pharma L.P.*, Case No. 17-OP-45004 (N.D. Ohio); and *City of Cleveland v. AmerisourceBergen Drug Corp.*, Case No. 18-OP-45132 (N.D. Ohio).