# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| | Judge Dan Aaron Polster |

**This document relates to:**

*"Track One Cases"*

---

# DISTRIBUTOR DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTIONS TO DISCOVERY RULING NUMBER 17 REGARDING SACWIS DATA

## **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I. PRODUCTION OF CASE FILES AND SACWIS DATA IS PERMITTED UNDER THE APPLICABLE PROVISIONS AND PURSUANT TO THE COMPREHENSIVE PROTECTIVE ORDER IN THIS CASE ........................................ 3

    A. The Statutes and Regulations to Which Plaintiffs Cite Do Not Create an Evidentiary Privilege That Bars Production of Case Files And SACWIS Data. ................................................................................................................... 3

    B. Production of Case Files and SACWIS Data Is Appropriate Pursuant to the Various Statutory and Common Law Exceptions to the Confidentiality Provisions Cited By Plaintiffs. .................................................................................. 5

    C. Plaintiffs' Confidentiality Concerns May Be Placated Through Appropriate Redactions, De-Identification, and Production Pursuant to the Protective Order, and Courts Have Expressly Permitted Disclosure Of Sensitive Children Services Information With Similar Protections. ........................................ 9

II. ANY BURDEN IMPOSED UPON PLAINTIFFS IN COMPLYING WITH A COURT ORDER REQUIRING PRODUCTION OF SACWIS DATA AND COUNTY-MAINTAINED CASE FILES IS PROPORTIONAL TO THE NEEDS OF THIS CASE. ....................................................................................................... 11

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re C.T.*,
 895 N.E.2d 527 (Ohio 2008) ..................................................................................................9

*Charlie H. v. Whitman*,
 213 F.R.D 240 (D. N.J. 2003)..........................................................................................5, 10

*Cincinnati Enquirer v. Jones-Kelley*,
 886 N.E.2d 206 (Ohio 2008) ................................................................................................10

*Clark K. et al. v. Michael Willden, Director of the Nevada DHHS et al.*,
 No. 2:06-cv-01068, 2008 WL 11449387 (D. Nev. Mar. 12, 2008).........................................10

*Jackson v. Willoughby Eastlake Sch. Dist.*,
 No. 1:16-cv-3100, 2018 WL 1468666 (N.D. Ohio Mar. 23, 2018).....................................4, 10

*John B. v. Goetz*,
 879 F. Supp. 2d 787 (M.D. Tenn. 2010)......................................................................4, 5, 10

*Richardson v. City of Cleveland*,
 No. 1:11-cv-00660, 2013 WL 1742687 (N.D. Ohio Apr. 23, 2013) ..............................4, 6, 10

*Steinberg v. Mount Sinai Med. Ctr.*,
 No. 12 Civ. 51(SLT)(VMS), 2014 WL 1311572 (E.D.N.Y. Mar. 31, 2014) ....................3, 4, 5

**Statutes**

42 U.S.C. § 671...............................................................................................................................4, 10

42 U.S.C. § 671(a)(8)...........................................................................................................................4

Ohio Rev. Code § 2151.421................................................................................................................4

Ohio Rev. Code § 2151.421(H).....................................................................................................6, 10

Ohio Rev. Code § 5101.13...........................................................................................................4, 6, 10

Ohio Rev. Code § 5101.29(D).............................................................................................................4

Ohio Rev. Code § 5153.17...........................................................................................................4, 6, 10

**Rules**

Fed. R. Civ. P. 26................................................................................................................................5

Fed. R. Civ. P. 26(b)(1) ............................................................................................................... 3

**Regulations**

45 C.F.R. § 205.50 ................................................................................................................ 4, 10

AmerisourceBergen Drug Corporation, McKesson Corporation, and Cardinal Health, Inc. (the "Distributors" or "Defendants"), respectfully oppose Plaintiffs' Objections to Discovery Ruling No. 17, ECF No. 1425 (the "Ruling").

## **INTRODUCTION**

By their largest asserted damages category in these cases, Plaintiffs Cuyahoga and Summit counties seek █████████████████, respectively, in past damages, and unspecified millions more in future damages, for child removal and other family intervention services allegedly caused by prescription opioid addiction and abuse. Yet Plaintiffs have completely stonewalled discovery into this area. Neither Plaintiff has produced a single underlying case file concerning any such removal or other intervention, nor any detailed data from any such case file, by which Defendants could discover whether any or all such removals and interventions were actually caused by prescription opioid addiction or abuse.

Plaintiff Cuyahoga instead produced only a single truncated spreadsheet, self-servingly and recently created, which purports to list case numbers for situations where removals in its view were based on opioid addiction or abuse; yet Cuyahoga refuses to produce the actual case files, or detailed data from the files, so that Defendants can see if the coding has any basis. Indeed, Cuyahoga now claims that this single document is privileged and should be clawed back. Plaintiff Summit, for its part, produced a single word document, likewise created after the fact, which purports to tally the numbers of cases where removals were caused by opioid addiction or abuse. But that document only shows total numbers of such purported cases by year, and Summit refuses to produce the files for the cases that purportedly were counted.

Plaintiffs cannot pursue these massive damages claims and yet block all discovery to test them. The Special Master ordered a limited production comprised of a truncated spreadsheet and

an exceedingly small sample of redacted case files.  It is far from enough, as Defendants explain in their objections.

For their part, Plaintiffs' objections to Discovery Ruling No. 17 are just their latest effort to preclude this critical discovery.  In particular, Plaintiffs contend that this Court should reverse Discovery Ruling No. 17 because (1) the County-maintained case files and data from the Statewide Automated Child Welfare Information System ("SACWIS") contain confidential information that is protected from disclosure by certain Federal and state provisions; (2) Defendants have failed to demonstrate they need this information; and (3) Plaintiffs would not be able to redact the case files and de-identify the SACWIS data without significant delay and disproportional hardship.  These objections should be overruled

***First***, the provisions to which Plaintiffs cite do not create an evidentiary privilege that bars production of case files and SACWIS data pursuant to Fed. R. Civ. P. 26.  At most, these provisions impose certain confidentiality requirements that the Court may consider in determining that production of this information is appropriate under the circumstances.  And any confidentiality concerns may be placated by redacting children's names from the case files, de-identifying children's names from the SACWIS data, and producing this information pursuant to the comprehensive Protective Order in this case.

***Second***, production is appropriate pursuant to various statutory and common law exceptions to the provisions cited by Plaintiffs that permit disclosure of such information when it is necessary to a determination of an issue before the court.  Case files and SACWIS data are clearly necessary for an assessment of Plaintiffs' children services damages because these damages are premised on the alleged impact of opioid use and/or abuse on participants of Cuyahoga County Division of Children and Family Services ("DCFS") and Summit County Children Services

("SCCS").  That is, Defendants require SACWIS data and the County-maintained cases files to (1) test the validity of Plaintiffs' assertions regarding the percentage of removals and other interventions caused by opioid addiction and abuse, and (2) to properly perform a causation analysis in support of their own affirmative defenses.

*Third*, any burden imposed upon Plaintiffs in producing redacted case files and de-identified SACWIS data is proportional to the needs of the case.  Plaintiffs collectively claim over ▇▇▇▇▇▇▇▇▇▇ in children services damages, and this does not include any unspecified amount of future damages that may be apportioned to children services.  The County-maintained case files and SACWIS data are the *only sources* of comprehensive, claim-by-claim, substance abuse and removal information that would allow Defendants to properly test Plaintiffs' claims for damages and prepare their defense.

This Court should deny Plaintiffs' Objections.

## ARGUMENT

I. **PRODUCTION OF CASE FILES AND SACWIS DATA IS PERMITTED UNDER THE APPLICABLE PROVISIONS AND PURSUANT TO THE COMPREHENSIVE PROTECTIVE ORDER IN THIS CASE.**

   A. **The Statutes and Regulations to Which Plaintiffs Cite Do Not Create an Evidentiary Privilege That Bars Production of Case Files And SACWIS Data.**

Under Fed. R. Civ. P. 26, "[p]arties may obtain discovery regarding *any nonprivileged matter* that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also Steinberg v. Mount Sinai Med. Ctr.*, No. 12 Civ. 51(SLT)(VMS), 2014 WL 1311572, at *2 (E.D.N.Y. Mar. 31, 2014) ("Where, as here, a party seeks discovery relevant to both federal and state civil claims, federal law governs the discovery of information protected by a state confidentiality statute.").

In an effort to blur this bright line rule, Plaintiffs cite to a host of provisions—albeit, some of which are inapplicable[1]—and allege these provisions prohibit production of SACWIS data and/or County-maintained case files. *See* Pls. Obj. at 7-14. But Plaintiffs improperly conflate the concepts of confidentiality and privilege. Plaintiffs have failed to demonstrate that any of these provisions create an ***evidentiary privilege*** that bars production pursuant to Fed. R. Civ. P. 26. At most, these provisions impose various confidentiality requirements that the Court may consider when determining that disclosure of the information sought by Defendants is warranted but which are not dispositive here. *See, e.g.*, *Steinberg*, 2014 WL 1311572, at *3 ("[C]ourts considering CAPTA have treated its relevant provisions as a confidentiality requirement, not a federal privilege barring discovery under FRCP 26."); *John B. v. Goetz*, 879 F. Supp. 2d 787, 900 (M.D. Tenn. 2010) (noting that 42 U.S.C. § 671 imposes certain "confidentiality requirements"); *Jackson v. Willoughby Eastlake Sch. Dist.*, No. 1:16-cv-3100, 2018 WL 1468666, at *4 (N.D. Ohio Mar. 23, 2018) (noting that the Family Educational Rights and Privacy Act does not create an evidentiary privilege); Pls. Obj. at 11-12 (citing various Ohio state statutes that deem certain children services information "confidential," but not "privileged"); *Richardson v. City of Cleveland*, No. 1:11-cv-00660, 2013 WL 1742687 (N.D. Ohio Apr. 23, 2013) (noting that "Ohio courts have found that the confidentiality" of "records of investigations relating to children," particularly those within the scope of Ohio Rev. Code §§ 2151.421, 5153.17, and 5101.13, is "not absolute") (collecting cases).

And particularly with respect to the Ohio statutes cited by Plaintiffs, case law is clear that Federal courts have the authority to require production of sensitive information, even when such

---

[1] Plaintiffs cite to a number of statutes and regulations that pertain to information Defendants do not seek here and which are, therefore, inapplicable. Specifically, Plaintiffs cite to several statutes that protect certain identifying information, despite the fact that Defendants do not seek such identifying information. *See* 42 U.S.C. § 671(a)(8) (protecting information that identifies public assistance recipients); *see also* 45 C.F.R. § 205.50 (same); Ohio Rev. Code § 2151.142 (protecting "residential addresses of personnel of public children services agency . . . ."); Ohio Rev. Code § 5101.29(D) (protecting "names and other identifying information" regarding children in certain day care facilities).

information is deemed confidential or otherwise protected by state law. *See Charlie H. v. Whitman*, 213 F.R.D 240, 248 (D. N.J. 2003) ("[T]he Court finds that the Defendants need to do more than assert non-binding state confidentiality statutes to support their contention that release of case records may compromise the privacy interests."); *see also Steinberg*, 2014 WL 1311572, at *3 (noting that a number of courts "have found it possible to balance federal discovery standards and the state's statutory goals by permitting the disclosure subject to confidentiality limitations on the information that state law seeks to protect"); *Goetz*, 879 F. Supp. 2d at 901-03 (collecting cases in support of the proposition that Federal courts are not required to recognize state laws creating privileges or imposing confidentiality requirements).

Because there is no applicable privilege barring production of SACWIS data or the County-maintained case files, and because this information is relevant and proportional, the Court should require its production. *Steinberg*, 2014 WL 1311572, at *2 (noting that, with respect to Fed. R. Civ. P. 26, "[t]he overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth . . . .") (internal citations and quotations omitted).

    **B.**    **Production of Case Files and SACWIS Data Is Appropriate Pursuant to the Various Statutory and Common Law Exceptions to the Confidentiality Provisions Cited By Plaintiffs.**

Notwithstanding the fact that production of case files and SACWIS data is appropriate pursuant to Fed. R. Civ. P. 26(b), Plaintiffs additionally acknowledge that a number of the Federal statutes and regulations to which they cite in fact expressly permit production of children services information when there is a showing of "good cause" or that the information is "necessary for a determination of an issue before the court." *See* Pls. Obj. at 8-10 (recognizing that the Child Abuse Prevention and Treatment Act permits disclosure "upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury;" the Comprehensive Alcohol Abuse and Alcoholism Present Treatment and Rehabilitation Act permits disclosure upon

- 5 -

a showing of "good cause;" and the Family Educational Rights and Privacy Act permits disclosure where "disclosure is to comply with a judicial order . . . .").

Ohio courts have similarly recognized a "good cause" exception that permits production of information subject to certain of the state statutes cited by Plaintiffs "where (1) the records and reports are relevant to the pending action; (2) good cause for such a request has been established by the person seeking disclosure; and (3) where admission of the records and reports outweighs the confidentiality consideration set forth" in the subject provisions.  *Richardson*, 2013 WL 1742687, at *3-4 (ordering DCFS to produce certain records subject to Ohio Rev. Code §§ 5101.13, 5153.17 and 2151.421(H) because defendant demonstrated "good cause," particularly that the records at issue were "necessary" to both "assist his expert witness in evaluating and defending against Plaintiffs' claims" and to "protect" his "ability to defend himself against the claims set forth in the Complaint").  In the context of a civil action for damages, a defendant may demonstrate "good cause" by showing the records requested are relevant and necessary to the preparation of its defense.  *Id.* at *4.

Plaintiffs nevertheless argue that these exceptions do not apply.  *See* Pls. Obj. at 8-11. Specifically, Plaintiffs assert that Defendants have failed to demonstrate "necessity" (and, in turn, "good cause") because "Plaintiffs and their experts intend to rely on aggregate data to prove their damages, rather than relying on the SACWIS data at issue or on the children's individual case files . . . ."  *Id.* at 9.  Plaintiffs' argument fails for three reasons.

***First***, Plaintiffs' argument directly contradicts the position articulated by Cuyahoga County in its January 15, 2019, correspondence: ▌

███████████████████████████████████████████████████████████████

█████  ███████████████████████████████████████████████████████

*Second*, even notwithstanding this admission, Defendants respectfully submit that it is inconceivable that Plaintiffs will not rely on SACWIS data and the individual case files in preparing their case, either directly or indirectly.  Plaintiffs claim that an increasing number of children have been removed from their homes because of their caregivers' use of opioids, which has caused a significant rise in costs borne by the Counties in a myriad of ways.  In support of this contention, Plaintiffs have both produced data—albeit, insufficient data—regarding removals allegedly attributable to opioids *extracted from SACWIS*.  ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████  Moreover, as stated by Plaintiffs' witnesses, the only other comparable source of case-level, comprehensive substance abuse and removal information is the County-maintained case files.  *See* Dist. Obj. at 4-5, 9.

And although Plaintiffs vehemently maintain they will rely only on "aggregate data," they notably fail to define "aggregate data."  *See* Pl. Obj. at 9, 15.  That is, Plaintiffs have not offered

---

[2]  For brevity, Defendants incorporate by reference the arguments set forth in their February 15, 2019, correspondence addressing Cuyahoga County's attempted clawback of ████████████.  *See* **Ex. 1**, Ltr. to Special Master Cohen re Attempted Clawback of CFS Spreadsheet, Feb. 15, 2019.  First, Plaintiffs did not inadvertently produce ████████████  Plaintiffs produced the spreadsheet in August 2018 with a cover letter that explicitly detailed the contents of the spreadsheet, wrote about the spreadsheet on numerous occasions, and did not object when Defendants used the spreadsheet during deposition.  Second, there is no basis for any privilege or other protection from discovery.  Third, Plaintiffs waived any purported protection by their significant delay in requesting the spreadsheet be clawed-back and continued use of the spreadsheet over the last five months.  Of note, Defendants respectfully disagree with Plaintiffs' representation that the State of Ohio "requested that Plaintiffs claw back this information" during a meet and confer with the parties on February 1, 2019.  Pls. Obj. at 4-5.  The State did not request that Plaintiffs claw back ████████████  Members of the Ohio Attorney General's Office merely acknowledged that the spreadsheet might contain confidential information and noted that further review was required to determine whether production of the spreadsheet was permissible.  Plaintiffs' clawback request should be rejected.

an explanation as to what opioid-related removal data and information—if not SACWIS data and/or information obtained from individual cases files—would comprise the "aggregate data" on which they intend to rely. Defendants are not asking Plaintiffs to reveal their trial strategy, but to the extent this means Plaintiffs intend to cite to a slew of statistics regarding the percentage of cases allegedly involving opioids and the costs of handling those cases, Defendants are entitled to the claim-by-claim data necessarily underlying those statistics to test the validity of these statistics, which comes from SACWIS. *See* Dist. Obj., Ex. 2, at Exhibit 1 (containing a screenshot of the Ohio SACWIS interface that shows persons entering information into SACWIS are entering removal information, including "initial removal," "placement request," and "placement" information). To the extent this means Plaintiffs intend to call witnesses to testify to a series of anecdotes about DCFS and SCCS participants allegedly impacted by opioid use and/or abuse, Defendants are entitled to the corresponding client case files to test the validity of the witnesses' accounts.[3] Anything less would leave Defendants severely prejudiced. Plaintiffs' use of a phrase as vague as "aggregate data" is simply a tactic to impede Defendants' ability to discover the facts and data underlying their damages calculations and block Defendants' access to claim-by-claim information.

***Third***, even if by some stretch of the imagination Plaintiffs did not rely on SACWIS data or the County-maintained case files in presenting their case, Defendants are still entitled to production. As argued in Distributors' Objections, this information is essential to the preparation

---

[3] [redacted]

of Distributors' defense of Plaintiffs' claims for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in children services damages, as it is directly relevant to and necessary for a causation analysis. This is abundantly clear upon review of the Distributors' preliminary affirmative defense disclosures, which cite to a multitude of defenses premised on Plaintiffs' failure to establish causation.

Ultimately, SACWIS data is unequivocally "necessary" to evaluate Plaintiffs' claims for children services damages, and the importance of disclosure here outweighs the confidentiality considerations set forth in the various provisions to which Plaintiffs cite, particularly in light of the fact that those considerations may be placated through appropriate redaction and de-identification pursuant to the Protective Order, as explained herein.

**C.  Plaintiffs' Confidentiality Concerns May Be Placated Through Appropriate Redactions, De-Identification, and Production Pursuant to the Protective Order, and Courts Have Expressly Permitted Disclosure Of Sensitive Children Services Information With Similar Protections.**

As Distributors have repeatedly reiterated, Defendants are conscious of the privacy interests potentially implicated by public release of unredacted, sensitive children services information concerning minors. However, Defendants here seek production of (1) de-identified SACWIS data that does not reveal the identities of any minor children, and (2) case files that have been redacted to remove the names of any minors. This production would additionally be pursuant to the comprehensive Protective Order in this case, which specifically envisions that certain "confidential" information may be disclosed to parties in this litigation subject to various protections.[4]  *See* Dkt. No. 441, Case Mgmt. Order No. 2.

---

[4]  As explained herein, the practice of redacting only children's names is consistent with Plaintiffs' prior productions of children services documents that do not redact caregivers' names. It is also consistent with Ohio law, which protects the identities of the minor children, not the parents or any other individuals involved. *See In re C.T.*, 895 N.E.2d 527 (Ohio 2008) (disclosing the identities of parents and guardians).

This approach necessarily mitigates any confidentiality concerns and is in line with a number of prior court decisions permitting disclosure of de-identified children services information pursuant to protective order. *See Goetz*, 879 F. Supp. 2d at 901-03 (ordering production of de-identified data from the Tennessee Department of Children Services TNKids database and redacted case management records pursuant to protective order); *Clark K. et al. v. Michael Willden, Director of the Nevada DHHS et al.*, No. 2:06-cv-01068, 2008 WL 11449387, at *2 (D. Nev. Mar. 12, 2008) (ordering production of "case records for all foster children who have been the subject of an abuse or neglect while in the custody of Clark County" and "for children who have died or suffered abuse while in the custody of Clark County" after the parties entered into a confidentiality agreement); *Cincinnati Enquirer v Jones-Kelley*, 886 N.E.2d 206, 210 (Ohio 2008) (ordering production of the "names and addresses of all foster caregivers certified by the state" as appropriately redacted and which did not disclose whom of the caregivers identified were public welfare recipients, even in light of the protections afforded by 42 U.S.C. § 671 and 45 C.F.R. § 205.50); *see also Whitman*, 213 F.R.D. at 250-51 (ordering disclosure of certain, appropriately redacted information produced by the New Jersey Division of Youth and Family, despite it being identified as protected under 42 U.S.C. § 671 and 45 C.F.R. § 205.50 in the corresponding confidentiality agreement between the parties); *Richardson*, 2013 WL 1742687, at *3-5 (ordering disclosure of certain children services records subject to Ohio Rev. Code §§ 5101.13, 5153.17, and 2151.421(H) after defendant demonstrated good cause, pursuant to certain conditions imposed by the court mandating the records be treated as confidential); *Jackson*, 2018 WL 1468666, at *4-5 (ordering production of certain student education records subject to FERPA pursuant to protective order).

And Plaintiffs have already produced various intake and incident reports in this litigation containing sensitive children services information that mirrors the information sought by Defendants here, so it would appear Plaintiffs' agree that their confidentiality concerns may be mitigated by the protections discussed herein (or, they are merely willing to overlook these confidentiality concerns when it benefits their case).[5]  Plaintiffs overemphasize the burden of redacting the names of minor children, as they have done easily with certain other produced documents.  Plaintiffs' suggestion that they need to redact much more than that is (1) inconsistent with their approach with these other documents, (2) particularly unnecessary in light of the Protective Order in these cases, and (3) is a false problem of their own making, calculated to suggest they can't provide discovery for the huge claims because it would be too hard.

## II. ANY BURDEN IMPOSED UPON PLAINTIFFS IN COMPLYING WITH A COURT ORDER REQUIRING PRODUCTION OF SACWIS DATA AND COUNTY-MAINTAINED CASE FILES IS PROPORTIONAL TO THE NEEDS OF THIS CASE.

In the last few pages of Plaintiffs' Objections, Plaintiffs cite to the "Herculean burden" the Counties would face if forced to produce the case files and SACWIS data.  *See* Pls. Obj. at 16-18.

To be clear, it was Plaintiffs' decision to bring a claim for damages amounting to ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ premised on the alleged harm to the respective children services departments caused by opioid abuse.  If Plaintiffs would agree to withdraw their claims for children services

---

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

damages, Defendants would agree to withdraw their request for case files and SACWIS data. Presuming that will not be the case, Defendants are entitled to the documentary evidence that will allow the Distributors to prepare their defense and test the accuracy of Plaintiffs' claims: a complete SACWIS dataset that includes information regarding any case in which substance abuse is noted and the County-maintained case files. Without this information, Defendants will be severely prejudiced and left with insurmountable gaps in their defense.

Moreover, Plaintiffs cannot plausibly claim to be surprised by Defendants' requests for information that is necessary to prepare their defense and which should have been produced months ago. Plaintiffs received Distributors' First Set of Requests for Production of Documents—which contained RFP number 7—on April 20, 2018; Cuyahoga County received Defendants' request for SACWIS data and case files on December 13, 2018; and Summit County received Defendants' request for SACWIS data and case files on January 2, 2019. Plaintiffs have had knowledge of RFP 7 for nearly a year, yet selectively chose to produce only a limited, insufficient subset of SACWIS data in response to RFP 7 within the timeframe for discovery and made a conscious decision to delay gathering SACWIS data and County-maintained case files until the eleventh hour. It is disingenuous for Plaintiffs to infer that Defendants are to blame for any time spent by DCFS or SCCS employees "satisy[ing Defendants' discovery demands" that should be spent "protecting the State's most vulnerable population of abused and neglected children." Pls. Obj. at 18. While Defendants are conscious of the effort it may take to prepare the requested materials for production, any "Herculean burden" imposed upon Plaintiffs resulting from the requisite expedited production of de-identified SACWIS data and redacted case files is of their own making.

## CONCLUSION

For the foregoing reasons, Distributors' respectfully request that this Court deny Plaintiffs' Objections.


DATED: March 25, 2019            Respectfully submitted,

                                             /s/ Shannon E. McClure
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Fax: (215) 851-1420
smcclure@reedsmith.com
*Counsel for Distributor Defendant*
*AmerisourceBergen Drug Corporation*
*Co-Liaison Counsel for the Distributor Defendants*


Enu Mainigi
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
*Counsel for Defendant Cardinal Health, Inc.*
*Co-Liaison Counsel for the Distributor Defendants*

Geoffrey Hobart
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5281
ghobart@cov.com
*Counsel for Distributor Defendant*
*McKesson Corporation*
*Co-Liaison Counsel for the Distributor Defendants*

- 14 -

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2019, I electronically filed a copy of the foregoing with the Clerk of Court using the EFC system, which sent notification of such filing to all counsel of record.

    */s/ Shannon E. McClure*
    Shannon E. McClure
    *Counsel for Distributor Defendant*
    *AmerisourceBergen Drug Corporation*
    *Co-Liaison Counsel for the Distributor*
    *Defendants*