# EXHIBIT B

## Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
- - -

In Re National            :
Prescription Opiate       :
Litigation                :
                          : MDL No. 2804
                          :
This document relates     :  Case No. 17-md-2804
to:                       :
                          :  Judge Dan Aaron
The County of Summit,     :  Polster
Ohio, et al., v. Purdue   :
Pharma L.P., et al.       :
Case No. 1:18-OP-45090    :

        Transcript of the video deposition of
Julie Barnes, a witness herein, called by the
Track One Defendants for examination under the
applicable rules of Federal Civil Court
Procedure, taken before me, Linda D. Riffle,
Registered Diplomate Reporter, Certified Realtime
Reporter, Certified Realtime Captioner, and
Notary Public in and for the State of Ohio,
pursuant to notice and agreement, at the Akron
Bar Association, 57 South Broadway Street, Akron,
Ohio, on Monday, December 3, 2018, beginning at
8:59 a.m. and concluding on the same day.

## Page 2

```
 1   APPEARANCES:
 2   ON BEHALF OF THE PLAINTIFFS SUMMIT COUNTY, THE
     CITY OF AKRON, AND THE WITNESS:
 3
     Jodi Westbrook Flowers, Esq.
 4   Annie E. Kouba, Esq.
     Anne McGinness Kearse, Esq.
 5   Motley Rice LLC
     28 Bridgeside Boulevard
 6   Mt. Pleasant, South Carolina  29464
     (843) 216-9163
 7   Fax:  (843) 216-9027
     jflowers@motleyrice.com
 8   (843) 216-9225
     akouba@motleyrice.com
 9   (843) 216-9140
     akearse@motleyrice.com
10
     ON BEHALF OF THE PLAINTIFF SUMMIT COUNTY CHILDREN
11   SERVICES:
12   Katerina C. Papas, Esq.
     Deputy Executive Director and General Counsel
13   Jonathon D. Hart, Esq.
     Legal Counsel/Risk Management Officer
14   Summit County Children Services
     246 South Arlington Street
15   Akron, Ohio  44306-1354
     (330) 379-2083
16   Fax:  (330) 379-1897
     kpapas@summitkids.org
17   (330) 379-2041
     hartj@summitkids.org
18
     ON BEHALF OF THE DEFENDANT WALMART:
19
     Christopher Lomax, Esq.
20   Jones Day
     600 Brickell Avenue
21   Brickell World Plaza
     Suite 3300
22   Miami, Florida  33131
     (305) 714-9700
23   Fax:  (305) 714-9799
     clomax@jonesday.com
24
25
```

## Page 3

```
 1   APPEARANCES (continued):
 2   ON BEHALF OF THE DEFENDANT CARDINAL HEALTH, INC.:
 3   Sara C. Schiavone, Esq.
     Porter, Wright, Morris & Arthur, LLP
 4   41 South High Street, Suites 2800-3200
     Columbus, Ohio  43215-6194
 5   (614) 227-1994
     Fax:  (614) 227-2100
 6   sschiavone@porterwright.com
 7   ON BEHALF OF THE DEFENDANT RITE AID CORPORATION:
 8   Scott T. Schutte, Esq.
     Morgan, Lewis & Bockius LLP
 9   77 West Wacker Drive
     Chicago, Illinois  60601-5094
10   (312) 324-1773
     Fax:  (312) 324-1001
11   sschutte@morganlewis.com
12   ON BEHALF OF THE DEFENDANT INSYS THERAPEUTICS,
     INC.:
13
     Heidi A. Nadel, Esq.
14   Holland & Knight LLP
     111 S.W. Fifth Avenue
15   2300 U.S.Bancorp Tower
     Portland, Oregon  97204
16   (503) 517-2951
     Fax:  (503) 241-8014
17   heidi.nadel@hklaw.com
18   ON BEHALF OF THE DEFENDANT AMERISOURCEBERGEN DRUG
     CORPORATION:
19
     Eric L. Alexander, Esq.
20   Lindsay A. DeFrancesco, Esq.
     Reed Smith LLP
21   1301 K Street, Suite 1000 - East Tower
     Washington, D.C.  20005
22   (202) 414-9403
     Fax:  (202) 414-9299
23   ealexander@reedsmith.com
     (202) 414-9286
24   ldefrancesco@reedsmith.com
25
```

## Page 4

```
 1   APPEARANCES (continued):
 2   ON BEHALF OF THE DEFENDANTS ENDO HEALTH
     SOLUTIONS, INC., ENDO PHARMACEUTICALS, PAR
 3   PHARMACEUTICALS, AND PAR PHARMACEUTICAL COMPANIES
 4   Heather A. Hosmer, Esq. (via telephone)
     Arnold & Porter Kaye Scholer
 5   601 Massachusetts Avenue
     Washington, D.C.  20001-3743
 6   (202) 942-6208
     Fax:  (202) 942-5999
 7   heather.hosmer@arnoldporter.com
 8   ON BEHALF OF THE DEFENDANT McKESSON CORPORATION:
 9   Michelle L. Yocum, Esq. (via telephone)
     Covington & Burling LLP
10   One CityCenter
     850 Tenth Street, NW
11   Washington, D.C.  20001-4956
     (202) 662-5103
12   myocum@cov.com
13   ALSO PRESENT:
14   Shaun Crum, Videographer
15       - - -
16
17
18
19
20
21
22
23
24
25
```

Page 105

1    back or rephrased, I can do that. Do you want to
2    have the question read back?
3       A. Sure.
4       MR. ALEXANDER: Okay. Can you read back
5    the last question before the inquiry?
6       (Question read back as requested.)
7       MS. FLOWERS: Object to the form.
8    Misstates the witness's testimony; and asked and
9    answered.
10      THE WITNESS: I don't understand the
11   question.
12   BY MR. ALEXANDER:
13    Q. So if the issue was talking about,
14   essentially, the financial impact on Summit
15   County through Children's Services because of the
16   use of prescription opioids -- you with me so
17   far?
18    A. Uh-huh.
19    Q. Okay. That all you can say is that any
20   testimony that you can provide on the subject of
21   financial impact would not differentiate between
22   the impact of heroin and other completely
23   illegally obtained drugs versus illegally
24   obtained prescription drugs versus legally
25   obtained prescription drugs, correct?

Page 106

1      MS. FLOWERS: Objection. Lack of
2   foundation; asked and answered.
3      THE WITNESS: The information that I
4   have would be all of those categories together.
5   BY MR. ALEXANDER:
6    Q. And you're not aware of anything that's
7   differentiated between them, correct?
8      MS. FLOWERS: Objection.
9      THE WITNESS: Well, we can differentiate
10   between them in some places in the case. So
11   there- -- therein lies the problem. So it
12   depends on if it was put in as a drug type, which
13   there were not places, really, to put that until
14   more recently, or where it was put in in the case
15   and if it identified a drug type.
16   BY MR. ALEXANDER:
17    Q. All right.
18    A. Yes.
19    Q. Keeping in mind those limitations on
20   data and what you've said --
21    A. Yes.
22    Q. -- sitting here today, can you provide
23   testimony as to the financial impact on Summit
24   County Children's Services of prescription
25   opioids obtained legally as opposed to all the

Page 107

1    other types of illegal opiate use?
2      MS. FLOWERS: Objection. Asked and
3   answered.
4      THE WITNESS: No. I -- I can't do that
5   today.
6   BY MR. ALEXANDER:
7    Q. Okay. And you don't have any data
8   analysis undergoing -- or ongoing right now that
9   would allow you to provide that information,
10   correct?
11      MS. FLOWERS: Same objection.
12      THE WITNESS: I don't have a specific
13   data analysis going on. There -- there are more
14   accurate ways of capturing drug type now that we
15   may be able to pull some different types of data
16   that's more recent, but that was a recent change
17   to the state system.
18   BY MR. ALEXANDER:
19    Q. Over, essentially, the last two years,
20   SACWIS provides a little bit more --
21    A. Yes. Correct.
22    Q. -- ability to identify a preferred drug
23   or drug of choice, correct?
24    A. Correct. Uh-huh.
25    Q. And which means that looking before

Page 108

1    2016, there's more uncertainty about what the
2   particular drug would be, whether it be a
3   prescription opioid, an illegal opiate,
4   marijuana, meth, alcohol, whatever, correct?
5      MS. FLOWERS: Object to the form. Lack
6   of foundation.
7      THE WITNESS: Correct.
8   BY MR. ALEXANDER:
9    Q. Okay. And so I'm going to go down,
10   like, another more narrow thing than what we were
11   just talking about.
12    A. Okay.
13    Q. So bear with me.
14    You mentioned at the very start some of
15   the prescription drugs you're aware of that were
16   made by different manufacturers.
17    A. Uh-huh.
18    Q. Do you remember you named some?
19    A. Uh-huh. Yes.
20    Q. You couldn't, then, do something where
21   you'd say, "Here's the -- the financial impact on
22   Summit County Children Services from specific
23   drugs or groups of drugs that were distributed
24   and obtained in a legal fashion," correct?
25      MS. FLOWERS: Form. Asked and answered.

Case: 1:17-md-02804-DAP  Doc #: 1471-2  Filed: 03/25/19  4 of 5.  PageID #: 42473

30  (Pages 117 to 120)

Page 117

1    prior years.
2        Q.  Okay.  As we said, a comparison to years
3    before 2016 runs into some of the data
4    analysis -- or -- or data input issues from
5    SACWIS about drug of choice, correct?
6        A.  Well, I mean, again, it depends on how
7    you look at it.  So if you looked at the same
8    field in 2012 that you're looking at in 2016, you
9    would be getting consistent data there.
10       Q.  Assuming the input practices were the
11   same between the years?
12       A.  Yes.
13       Q.  And we know they weren't because there
14   was a caseworker blitz to try to address the
15   inconsistencies and input practices within all
16   the fields in SACWIS that related to drug use,
17   correct?
18       MS. FLOWERS:  Object to the form.  Lack
19   of foundation.
20       THE WITNESS:  The caseworker blitz was
21   very specific to asking the workers to put a
22   type -- drug type into a specific field so that
23   we could try to pull some data out of that field.
24   So that was one particular field.  So when I say,
25   you know, my knowledge about substance abuse

Page 118

1    previously to substance abuse currently, that was
2    not pulled out of the same field that they did
3    the caseworker blitz for.
4    BY MR. ALEXANDER:
5        Q.  Okay.  So is there a specific field
6    within SACWIS over time that allows you to say
7    you have roughly a quarter to a third of your
8    clients that have some substance abuse issues?
9        A.  There are -- there are a variety of
10   different fields.  So what we've, I think, tried
11   to do is use something where we could get some
12   consistent comparison.
13       So I believe our comparison has been
14   related to the case plan.  We've actually looked
15   at it a couple different ways.  We've looked at
16   the case plan document that -- whether or not it
17   identified substance abuse as a reunification
18   factor, or in a general case plan whether
19   substance abuse was identified as a part of the
20   service plan.
21       Q.  And do you think that that supports
22   overall that there's been a trend of roughly a
23   quarter to a third of the clients have some sort
24   of substance abuse factoring in to the reason why
25   they're interacting with Children's Services?

Page 119

1        A.  I think it showed that it was about a
2    quarter to a third around 2012, but it showed
3    around 2015 and '16 that it was closer to
4    50 percent, so . . .
5        Q.  And that there was -- if you look at the
6    way SACWIS data gets entered -- because they
7    capture it sequentially as you add data, correct?
8    Like, you can look at iterations of each file.
9        A.  I don't know what you mean, iterations
10   of a child, but there are --
11       Q.  Each file.
12       A.  -- it is captured sequentially, yes.
13       Q.  Okay.  So that we know that as a result
14   of the caseworker blitz in 2016, that these
15   percentages climbed significantly as data got
16   entered, including about 2015, correct?
17       A.  I think the caseworker blitz had an
18   impact on our staff's knowledge that they needed
19   to do a better job of capturing data around
20   substance use and type of substance.  So I think
21   it had an impact in terms of helping us to be
22   more accurate or put it into certain places.
23       I don't think the caseworker blitz
24   specifically really -- I don't know that we use
25   that data specifically for any, you know,

Page 120

1    accurate -- with any accuracy.  I -- I don't
2    think so statewide it was successful in terms of
3    whether a county complied or they didn't comply
4    with putting it in.
5        So I think it's a place now where if we
6    looked in that -- it's the person characteristics
7    field.  And I think if we looked in the person
8    characteristics field, we might get more accurate
9    data out of the person characteristics field.
10       But that is just one field in SACWIS
11   that I don't think you can go back and look at
12   that in terms of comparison and be as accurate,
13   where I think the case plan, the reunification
14   case plan, is more accurate but, perhaps,
15   underrepresented.
16       Q.  Okay.  Can you just -- I think we
17   haven't said what it is.  Do you know what SACWIS
18   stands for?
19       A.  Statewide Automated Child Welfare
20   Information System.
21       Q.  And does your staff utilize that
22   database?
23       A.  Yes, they do.
24       Q.  They put information into it and run
25   reports or ask that reports be run out of it,



Page 393

1   moment?
2       THE VIDEOGRAPHER:  Going off the record
3   at 5:37 p.m.
4       (Off the record.)
5       THE VIDEOGRAPHER:  Back on the record at
6   5:38 p.m.
7       MS. FLOWERS:  Plaintiffs have no
8   questions for the witness.
9       Thank you very much, Ms. Barnes.
10      MS. NADEL:  Thank you very much for your
11  time.
12      THE WITNESS:  Thank you all.
13      THE VIDEOGRAPHER:  Off the record at
14  5:38 p.m.
15      (Signature not waived.)
16          - - -
17      (Thereupon, the video deposition
18       concluded at 5:37 p.m. on Monday,
19       December 3, 2018.)
20          - - -
21
22
23
24
25

Veritext Legal Solutions
1100 Superior Ave
Suite 1820
Cleveland, Ohio 44114
Phone: 216-523-1313

December 6, 2018

To: Jodi Westbrook Flowers, Esq.

Case Name: In Re: National Prescription Opiate Litigation

Veritext Reference Number: 3133220

Witness:  Julie Barnes Deposition Date:  12/3/2018

Dear Sir/Madam:

Enclosed please find a deposition transcript.  Please have the witness

review the transcript and note any changes or corrections on the

included errata sheet, indicating the page, line number, change, and

the reason for the change.  Have the witness' signature notarized and

forward the completed page(s) back to us at the Production address shown

above, or email to production-midwest@veritext.com.

If the errata is not returned within thirty days of your receipt of
this letter, the reading and signing will be deemed waived.

Sincerely,

Production Department

NO NOTARY REQUIRED IN CA

Page 394

1           C E R T I F I C A T E
2               - - -
3   State of Ohio,        :
                     SS:
4   County of Franklin,   :
5               - - -
6       I, Linda D. Riffle, Registered Diplomate
7   Reporter, Certified Realtime Reporter, Certified
    Realtime Captioner, and Notary Public in and for
8   the State of Ohio, hereby certify that the
    foregoing is a true and accurate transcript of
9   the deposition testimony, taken under oath on the
    date hereinbefore set forth, of Julie Barnes.
        I further certify that I am neither
10  attorney or counsel for, nor related to or
    employed by any of the parties to the action in
11  which the deposition was taken; and further that
    I am not a relative or employee of any attorney
12  or counsel employed in this case, nor am I
    financially interested in the action; and further
13  that I am not under a contract as defined in Ohio
    Civil Rule 28(D).
14
15
16          _____
            Linda D. Riffle,
17          Registered Diplomate
            Reporter, Certified
18          Realtime Reporter,
            Certified Realtime
19          Captioner, and Notary
            Public in and for the
20          State of Ohio
21  My Commission Expires:  July 26, 2021
22
            - - -
23
24
25

1           DEPOSITION REVIEW
            CERTIFICATION OF WITNESS
2
    ASSIGNMENT REFERENCE NO: 3133220
3   CASE NAME: In Re: National Prescription Opiate Litigation
    DATE OF DEPOSITION: 12/3/2018
4   WITNESS' NAME: Julie Barnes
5       In accordance with the Rules of Civil
    Procedure, I have read the entire transcript of
6   my testimony or it has been read to me.
7       I have made no changes to the testimony
    as transcribed by the court reporter.
8
9   _____     _____
    Date                 Julie Barnes
10      Sworn to and subscribed before me, a
    Notary Public in and for the State and County,
11  the referenced witness did personally appear
    and acknowledge that:
12
        They have read the transcript;
13      They signed the foregoing Sworn
        Statement; and
14      Their execution of this Statement is of
        their free act and deed.
15
        I have affixed my name and official seal
16
    this _____ day of_____, 20____.
17
        _____
18      Notary Public
19      _____
        Commission Expiration Date
20
21
22
23
24
25