**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br>*This document relates to:*<br>Track One Cases | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

**PLAINTIFFS' REPLY TO DISTRIBUTOR DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTIONS TO DISCOVERY RULING NO. 17**

Plaintiffs Cuyahoga County and Summit County ("Plaintiffs") hereby submit this reply to Distributor Defendants' Opposition to Plaintiffs' Objections to Discovery Ruling No. 17 ("DR 17"), filed on March 25, 2019. (Doc. #1470.) Distributor Defendants continue to gloss over the substantial privacy interests of the vulnerable children in the Counties' care in their attempts to obtain highly confidential information contained in the State Automated Child Welfare System (or "SACWIS") database and the hard copy case files for these children.  They also minimize the enormous burden their demand will place on County personnel for information Defendants do not need because it is not what the Plaintiffs will rely upon to prove their damages.

The Court should grant Plaintiffs' Objections to DR 17 and order that this information shall not be disclosed because it is not required under Federal Rule of Civil Procedure 26. The confidentiality of records related to non-parties and the burden to produce the information is disproportional to Defendants' need for these records.

1

### I. Production Of The SACWIS Database And Underlying Case Files Is Disproportionate To The Needs Of This Case.

Defendants argue that the confidentiality laws that protect the information in the SACWIS database and underlying case files are of virtually no import when compared with the scope of discovery that is allowed under Federal Rule of Civil Procedure 26, yet they ignore the rest of the Rule's language. Rule 26 states that parties may obtain discovery that is relevant to a party's claim "*and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, *the parties' relative access to relevant information,* the parties' resources, the importance of the discovery in resolving the issues, *and whether the burden or expense of the proposed discovery outweighs its likely benefit*." Fed. R. Civ. P. 26(b)(1) (emphasis added). These considerations weigh in favor of denying Defendants' attempts to obtain this information. Defendants' demand for this sensitive data is disproportional to the needs of this case given that: 1) Plaintiffs do not intend to rely on the information in the SACWIS data or the underlying case files; 2) Defendants can obtain this information from other publicly available sources;[1] and 3) the enormous burden that County personnel will face if they have to redact hundreds of SACWIS narrative fields and documents.[2]

---

[1] Defendants have access to a substantial volume of publicly-available, systematically de-identified case-level data derived from the State's SACWIS system via public information requests from the Adoption and Foster Care Analysis Reporting System (AFCARS).

[2] Moreover, the evidence at issue here should not be admitted in Defendants' case in chief under Federal Rule of Evidence 403 because the probative value of any case-by-case presentation of information on individual opioid-related child abuse and neglect cases would be far outweighed by the inherent risk of prejudice and the danger of needlessly presenting cumulative evidence.

2

The confidentiality considerations discussed in Plaintiffs' prior briefing (Doc. #1448, 1471) demonstrate why the discovery is disproportional to the needs of the case and Defendants have not shown otherwise. Although confidentiality provisions may not explicitly bar discovery outright in every situation, a court "must still determine to what extent, if any, they limit discovery" in a given case. *Steinberg v. Mount Sinai Med. Ctr., Inc.,* 2014 WL 1311572 at *5 (E.D.N.Y. Mar. 31, 2014) ("federal provisions allow states to disclose records to courts 'under terms identified in State statute'") (quoting 45 C.F.R. § 1340.14(i)(2)(ii)).

Defendants list several cases purporting to demonstrate that disclosure can be made under Rule 26 and pursuant the Protective Order in place, but the cases they cite are wholly distinguishable from the dispute here, where the records at issue involve non-parties and the litigation is not related to the provision of child services. In most of the Defendants' cases the children whose records were being sought were parties to the action and had consented to or were even the party seeking disclosure, and the child protection records were centrally relevant to ultimate issues in the case.

For example, in *Steinberg,* 2014 WL 1311572 at *6, the minor child whose records were at issue was the plaintiff and the cases directly concerned ***child abuse allegations***. The defendant medical center sought to compel discovery related to the plaintiff's New Jersey child and family services records that were directly related to his stay at the medical center. *Id*.  This is a much higher threshold of what is "necessary to a determination of the claims and defenses at issue" (the standard under the Child Abuse

3

Prevention and Treatment Act),[3] than the information here, which Defendants have not shown they need. Moreover, the child plaintiff had provided the defendant with an authorization to release the records, which "greatly mitigated" the privacy concerns and "suggest[ed] that the often-present concern that a record release may further harm a victim is not present in this case." *Id*. at *6.

Similarly, in *John B. v. Goetz*, the plaintiffs moving to compel the production of the records were the minors who were themselves the subject of the information—not parties in civil litigation unrelated to the child abuse and neglect cases. 879 F. Supp. 2d 787, 819-820 (M.D. Tenn. 2010). These children in the state's custody alleged the state had deprived them of certain rights. The court allowed the documents to be produced because **"[t]he confidentiality granted child abuse records under Tennessee law may not be invoked as a shield with which to block scrutiny of governmental practices**." *Id*. at 902 (emphasis in original) (cit. om.). Given the governmental defendants' repeated violations of federal law, the court held they could not rely on statutes protecting the confidentiality of this information as bars to discovery of incident report data. *Id*. at 903. Here, by contrast, the practices of the Counties' child services agencies are not even indirectly at issue in the litigation. *See also Charlie H. v. Whitman*, 213 F.R.D 240, 251 (D. N.J. 2003) (allowing production of records where plaintiffs were class of children who were suing the state and its Division of Youth and Family Services for their failures to provide needed services

---

[3] *See* 42 U.S.C. § 5106a(b)(2)(B)(viii) (allowing privileged reports and records to be made available to "a grand jury or court, upon a finding that information in the record is *necessary for the determination of an issue* before the court or grand jury.") (emphasis added).

4

and protect children from abuse); *Clark K. et al. v. Michael Willden, Director of the Nevada DHHS,* No. 2:06-cv-01068, 2008 WL 11449387, at *1 (D. Nev. Mar. 12, 2008) (plaintiffs were suing on behalf of themselves and all neglected children who were in or at risk of entering the defendant county's foster care system).[4] In all of these cases the litigation involved the practices of the state child services agencies so the records were directly relevant to central issues.

Moreover, in *Steinberg*, *Goetz*, *Charlie H.*, *Clark K.*, and *Richardson v. City of Cleveland*, No. 1:11-cv-00660, 2013 WL 1742687 at *3 (N.D. Ohio Apr. 23, 2013), the children who were the subject of the records were parties to the action and knew about the release of the records, while in *Steinberg*, *Goetz*, *Charlie H.*, and *Clark K.*, the children had consented to or were the party actually seeking the disclosure of the information. Here, the children who are the subject of these records have no idea that their records may be disclosed, have not given permission for their release and have had no opportunity to assert their own privacy interests. In addition, the other individuals whose information may be part of the records—caregivers and mandatory reporters who may include teachers, doctors, and others in the child's community—have significant privacy rights[5] yet are unaware

---

[4] Plaintiffs refer the Court to the previous arguments they have made distinguishing *State ex. rel. Cincinnati Enquirer v. Jones-Kelley*, 886 N.E.2d 206, 210-11 (Ohio 2008) where the court only allowed the disclosure of information related to foster caregivers whose information met an exception to confidentiality. (*See* Doc. #1448, Plfs' Obj. to DR 17 at 10, Exhibit 9 at p. 9.)

[5] Ohio Admin. Code § 5010:2-33-21 provides that "each referral, assessment/investigation and provision of services related to reports of child abuse, neglect, dependency or family in need of services is confidential." Subsection (E) of the rule specifically protects the identity of a person who refers a child to children services, who reports child abuse or neglect, or who provides information during the course of an

5

that this sensitive information, which includes their identities and involvement in the serious circumstances that led to child services' involvement, is about to be disclosed without their consent. The Court should give due weight to these privacy considerations and order against the release of these records.

II. **Defendants Have Not Established That They Need This Information For Any Relevant Purpose.**

Defendants have not established that they need this information for any relevant purpose. "[R]elevancy must be well-established by the party seeking disclosure." *Jackson v. Willoughby Eastlake Sch. Dist.*, No. 1:16-cv-3100, 2018 WL 1468666, at *2 (N.D. Ohio Mar. 23, 2018). In *Jackson*, the court acknowledged that due to the privacy concerns in the Family Educational Rights and Privacy Act, "there is a higher burden on a party seeking disclosure of student records" and "the party seeking the information is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students." *Id*. at *3 (cit. om.). In that case, the minor plaintiff had sued the school district and some of its employees alleging that they failed to report, document and prevent bullying of the plaintiff and the records were directly related to the defendants' investigations. The defendants in *Jackson* had not "argued that the requested information lacks relevance." *Id*. Here, the SACWIS data and case files lack relevance because Plaintiffs do not plan to rely on this information. Moreover, although the *Jackson* court ordered that the records could be produced under a protective order, this could only

---

assessment/investigation, and provides that the identities of such persons may only be released *with their written consent* or in narrowly-defined circumstances set forth in subsection (F) of the rule that do not apply here.

6

occur if "certain parental notification requirements are met" because FERPA requires that the releasing party "make a reasonable effort to provide notice to the students and their parents before disclosing education records." *Id*. at *4.

Defendants point this Court to the "good cause" exception that Ohio courts have recognized permits production of information that is covered by some of the statutes at issue here. (Doc. #1470, Defs' Opp. To Plfs' Obj. to DR 17 at 6.) Indeed, under *Richardson*, and cases cited therein, a court can order the disclosure of these confidential child abuse reports "where (1) the records and reports are relevant to the pending action; (2) good cause for such a request has been established by the person seeking disclosure; and (3) where admission of the records and reports outweighs the confidentiality consideration set forth" in the subject provisions. 2013 WL 1742687 at *3. But Defendants decline to mention that "good cause" to disclose records subject to Ohio Rev. Code §§ 5101.13, 5153.17 and 2151.421(H) – some of the same statutes at issue here – "has been defined to mean 'when it is in the best interests of the child or when the due process rights of other subjects of the record are implicated.'" *Id.* (citing *Johnson v. Johnson,* 134 Ohio App. 3d, 579, 583, 731 N.E.2d 1144 (1999)). Clearly, Ohio's "good cause" test is not met in this instance.

Defendants continue to argue that they are entitled to this information even though Plaintiffs intend to rely on aggregate data to prove their damages. (Doc. #1470, Defs' Opp. To Plfs' Obj. to DR 17 at 6-9.) First, they claim that Cuyahoga County stated on January 15, 2019 that they intended to rely on the "SACWIS spreadsheet," ignoring that the County has subsequently attempted to claw back that document and that the

7

Counties have repeatedly asserted to Defendants that their experts are not relying on this data. (*See, e.g.,* Doc. #1448, Plfs' Obj. to DR 17, Ex. 6 at 6; Ex. 7 at 2, Ex. 9 at 6.) Second, although Defendants state that it is "inconceivable" that Plaintiffs' experts "will not rely on SACWIS data and the individual case files" that is exactly what occurred. Plaintiffs direct Defendants to page two of the expert report of Nancy K. Young, Ph.D whose report was served on March 25, 2019 and who *did not* rely on this information. Finally, Defendants repeat their arguments that even if Plaintiffs did not and will not rely on the SACWIS database and underlying case files, they are still entitled to it. This is just not true. As has been previously acknowledged by Special Master Cohen and this Court, discovery into highly sensitive, personal information about non-party children is unnecessary in this litigation. Defendants can cross-examine Plaintiffs' experts on their reliance on aggregate data without the discovery they seek, and obtain much of this information from AFCARS, as has already been explained. Defendants have not put forward any argument why these options do not allow them to prepare their case.

### III. The Burden On The Counties To Produce This Evidence Outweighs Defendants' Need For It.

Finally, Defendants are wholly dismissive of the enormous burden and cost to the Counties if they have to painstakingly review and redact every case file or field, including narrative fields, in the SACWIS database. In *Steinberg*, *Richardson*, and *Jackson*, *supra*, where production was ordered, the cases concerned the production and redaction of only one person's file, or just a few files, and the courts were not examining the burden placed on the child services personnel to redact thousands of fields. Here, given the plethora of

8

privacy statutes and regulations at issue, specialized County personnel would have to review these voluminous files and ensure that they are complying with their confidentiality obligations.[6] As explained more fully in Exhibit 9 to Plaintiffs' Objection to DR 17, the information entered by the Counties into SACWIS is sufficiently complex and detailed that it is not subject to de-identification merely by excluding certain data fields, as could potentially be the case for simpler datasets. (*See* Doc. #1448, Plfs' Obj. to DR 17, Ex. 9 at 4-5.) Indeed, many of the potentially relevant data fields contain free-form text entries, each of which would have to be reviewed and redacted even if all narrative fields were excluded from production. (*Id.*) That is why any production of the SACWIS information and underlying case files would impose such a huge burden on the Counties and require experienced County personnel to complete. (*See id; see also* Doc. #1448, Plfs' Obj. to DR 17, Ex. 15 (Ohio SACWIS User Guide)). The Ohio SACWIS User Guide shows the number of fields that SACWIS contains (*see, e.g.,* Doc. #1448, Plfs' Obj. to DR 17, Ex. 15 at page 7-4, showing fields for primary and secondary caretakers, members, relationships and associated persons; at page 7-12 showing an example of where to record narrative information; at pages 8-1 to 8-18 on recording court activities).

Thus, the Court should reverse DR 17, deny Distributors' Partial Objection and find that the requirements of Rule 26 have not been met because the production of the

---

[6] Defendants cite *In re C.T.*, 895 N.E.2d 527 (Ohio 2008) for the proposition that only redacting the children's names is consistent with Ohio law. This ignores the statutes and regulations already cited in the briefing on this issue (*e.g.,* Ohio Rev. Code § 5153.17, Ohio Admin. Code § 5010:2-33-21) and wholly misrepresents *In re C.T.* That case is about guardian ad litems' authority to move to terminate parental rights and does not even touch on privacy statutes or information such as that contained in the SACWIS data.

SACWIS data and underlying case files is not proportional to the needs of this case based on the confidentiality considerations at issue here, the irrelevance of the information, and the burden on Plaintiffs to produce this unnecessary material. Specifically, this Court should hold that: (1) the SACWIS data and materials are privileged; (2) Cuyahoga County's clawback of CUYAH_002442182 was appropriate; (3) Summit County need not produce a similar spreadsheet; and (4) Cuyahoga County and Summit County need not produce any full "case files."

Dated: March 29, 2019

RESPECTFULLY SUBMITTED:

*/s/ Christine C. Mansour*
Christine C. Mansour
J. Burton LeBlanc, IV
**BARON & BUDD, PC**
3102 Oak Lawn Avenue, Ste. 1100
Dallas, TX 75219
Tel.: 214-521-3605
cmansour@baronbudd.com
bleblanc@baronbudd.com

Elizabeth J. Cabraser
Paulina do Amaral
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
275 Battery Street
San Francisco, CA 94111
Tel: 415-956-1000
ecabraser@lchb.com
pdoamaral@lchb.com

Linda Singer
Louis Bograd
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
lsinger@motleyrice.com

10

lbograd@motleyrice.com

Paul Hanly
Jayne Conroy
Andrea Bierstein
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th floor
New York, New York 10016-7416
PHanly@simmonsfirm.com
JConroy@simmonsfirm.com
ABierstein@simmonsfirm.com

Paul Thomas Farrell Jr.
**GREENE, KETCHUM, FARRELL, BAILEY & TWEEL LLP**
419 Eleventh Street
Huntington, WV 25701
paul@greeneketchum.com

Joe Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
jrice@motleyrice.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of March, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

/s/Christine C. Mansour
Christine C. Mansour
*Attorney for Plaintiffs*

11