# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**IN RE:  NATIONAL PRESCRIPTION OPIATE LITIGATION**

This document relates to:

*The County of Cuyahoga v. Purdue Pharma L.P.*, Case No. 17-OP-45005 (N.D. Ohio) and *City of Cleveland v. AmerisourceBergen Drug Corp.*, Case No. 18-OP-45132 (N.D. Ohio)

MDL No. 2804

Case No. 1:17-md-2804

Hon. Dan Aaron Polster

## ENDO'S MEMORANDUM IN SUPPORT OF ITS
## MOTION TO RECONSIDER DISQUALIFICATION OR, IN THE ALTERNATIVE,
## TO CERTIFY THE DISQUALIFICATION ORDER FOR INTERLOCUTORYAPPEAL
## UNDER 28 U.S.C. § 1292(b)

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

RELEVANT FACTS ............................................................................................................2

ARGUMENT ON RECONSIDERATION..........................................................................4

I.     The Court Should Exclude the DOJ's Letter and Reconsider Because the Fair and
Impartial Administration of Justice Demands that Facts Be Determined Only Upon
Evidence Properly Presented on the Record. .......................................................................4

     A.     Plaintiffs failed to meet their burden of proving the grounds for
disqualification with admissible evidence. ............................................................4

     B.     The Court exceeded its authority by relying on information beyond the
evidence the parties presented on the record. ........................................................7

II.     The Court Erred and Caused Manifest Injustice by Considering the DOJ Letter and
by Not First Giving Endo an Opportunity to Cross Examine Ms. Olson and Respond
to the Letter. ......................................................................................................................13

     A.     The DOJ letter constitutes inadmissible hearsay. ................................................13

     B.     The DOJ letter answers the wrong question and applies the wrong legal
standard. ..............................................................................................................14

ARGUMENT ON CERTIFICATION................................................................................19

I.     In the Alternative to Reconsideration, the Court Should Certify Its Order for
Interlocutory Appeal. ........................................................................................................19

     A.     The Order involves controlling questions of law..................................................19

     B.     Substantial ground for difference of opinion exists for each controlling
question of law.....................................................................................................23

     C.     Immediate appeal may materially advance ultimate termination of the
litigation. .............................................................................................................24

CONCLUSION..................................................................................................................26

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Kaech*,
No. C-3-92-157, 1993 WL 1367440 (S.D. Ohio Dec. 30, 1993)............................................16

*Albert v. Rogers*,
57 So. 3d 233 (Fla. Ct. App. 2011).................................................................................8, 10

*Am. Builders & Contrs. Supply Co., Inc. v. Frank's Roofing, Inc.*,
2012-Ohio-4661, 979 N.E.2d 15 (3d Dist.) .......................................................................7

*Arabian Motors Grp. W.L.L. v. Ford Motor Co.*,
No. 16-CV-13655, 2017 WL 2222552 (E.D. Mich. May 22, 2017) .....................................19

*In re Atmosphere Hospitality Mgmt. Servs., LLC*,
No. 14-0108, Doc. 7-1 (6th Cir. Oct. 22, 2014)...........................................................20, 21

*Atmosphere Hospitality Mgmt. Servs., LLC v. Royal Realties, LLC*,
28 F. Supp. 3d 692 (E.D. Mich. 2014)..............................................................................21

*Babineaux v. Foster*,
No. CIV.A. 04-1679, 2005 WL 711604 (E.D. La. Mar. 21, 2005) .........................................5

*Baltimore Cty. v. Barnhart*,
30 A.3d 291 (Md. Ct. Spec. App. 2011) ..............................................................................6

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
906 F.2d 1185 (7th Cir. 1990) ..........................................................................................4

*Black & Decker (US), Inc. v. Smith*,
No. 07-1201, 2008 WL 3850825 (W.D. Tenn. Aug. 13, 2008)............................................25

*Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief And Dev.*,
291 F.3d 1000 (7th Cir. 2002) .........................................................................................20

*Braxton v. Scott*,
905 F. Supp. 455 (N.D. Ohio 1995)....................................................................................4

*Carlsen v. Thomas*,
159 F.R.D. 661 (E.D. Ky. 1994)........................................................................................5

*In re City of Memphis*,
293 F.3d 345 (6th Cir. 2002) .............................................................................19, 20, 21

*State ex rel. Davis v. Parks*,
    141 Fla. 516 (1939)..............................................................................................8

*Davis v. S. Bell Tel. & Tel. Co.*,
    149 F.R.D. 666 (S.D. Fla. 1993) .........................................................15, 16, 18

*Deutsche Bank Nat. Trust Co. v. Wickert*,
    638 F. Supp. 2d 826 (N.D. Ohio 2009)..........................................................23, 24

*Doe v. City of Memphis*,
    No. 2:13-cv-03002, 2015 WL 4019550 (W.D. Tenn. Apr. 8, 2015) ........................6

*Eagan v. CSX Transp., Inc.*,
    294 F. Supp. 2d 911 (E.D. Mich. 2003)...............................................................20

*Eaton v. Siemens*,
    No. 2:07-cv-0315, 2007 WL 2318531 (E.D.Ca. 2007) ......................................5, 14

*Ezeagwuna v. Ashcroft*,
    325 F.3d 396 (3d Cir. 2003)..................................................................................14

*Flint v. Ky. Dept. of Corrections*,
    270 F.3d 340 (6th Cir. 2000) ...............................................................................20

*Franklin v. Clark*,
    454 F. Supp. 2d 356 (D. Md. 2006) ...............................................................16, 18

*General Mill Supply Co. v. SCA Services, Inc.*,
    697 F.2d 704 (6th Cir. 1982) ..................................................................................5

*Gibson v. R.G. Smith Co.*,
    915 F.2d 260 (6th Cir. 1990) ..................................................................................8

*Glatt v. Fox Searchlight Pictures Inc.*,
    No. 11 CIV. 6784 WHP, 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) ...............21

*In re Grand Jury Investigation*,
    No. KM 97-519, 1998 WL 388358 (R.I. Super. Ct. Jan. 21, 1998)........................6

*Hale v. Johnson*,
    No. 1:15-CV-14, 2016 WL 8673579 (E.D. Tenn. Feb. 2, 2016)...........................24

*Janvey v. Proskauer Rose, LLP*,
    No. 3:13-CV-0477-N, 2014 WL 11516331 (N.D. Tex. Oct. 9, 2014) ....................6

*Kronberg v. LaRouche*,
    No. 1:09CV947, 2010 WL 1443934 (E.D. Va. Apr. 9, 2010)...............................17

*League of Women Voters of Ohio v. Blackwell*,
   No. 3:05-cv-7309, 2006 WL 1580032 (N.D. Ohio Feb. 10, 2006) ........................................24

*Lillie v. U.S.*,
   953 F.2d 1188 (10th Cir. 1992) ...........................................................................................8, 9

*Lincoln Elec. Co. v. MPM Techs., Inc.*,
   No. 1:08-cv-2853, 2009 WL 2413625 (N.D. Ohio Aug. 5, 2009)............................................4

*Mallory v. Eyrich*,
   922 F.2d 1273 (6th Cir. 1991) .................................................................................................4

*Manning v. Waring, Cox, James, Sklar and Allen*,
   849 F.2d 222 (6th Cir.1988) ..................................................................................................20

*In re Marriage of Terry*,
   No. 18624-5-11, 2000 WL 426552 (Wash. Ct. App. Apr. 20, 2000) .......................................9

*McKinney v. McMeans*,
   147 F. Supp. 2d 898 (W.D. Tenn. 2001)..................................................................................5

*Nat'l Bonded Warehouse Ass'n, Inc. v. United States*,
   718 F. Supp. 967 (Ct. Int'l Trade 1989) ................................................................................18

*Newsome v. Young Supply Co.*,
   873 F. Supp. 2d 872 (E.D. Mich. 2012)..................................................................................20

*Noall v. Howard Hanna Co.*,
   No.1:09-cv-2510, 2010 WL 5020914 (N.D. Ohio Dec. 3, 2010) ...........................................21

*Park-N-Shop, Ltd. v. City of Highwood*,
   864 F. Supp. 82 (N.D. Ill. 1994) ...........................................................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   No. MDL 05-1720, 2006 WL 6846702 (E.D.N.Y. Aug. 7, 2006) ....................................6, 12

*Price Bros. Co. v. Philadelphia Gear Corp.*,
   629 F.2d 444 (6th Cir. 1980) ...................................................................................7, 8, 9, 12

*Rafoth v. Nat'l Union Fire Ins. Co.*,
   954 F.2d 1169 (6th Cir. 1992) ..........................................................................................20, 22

*Richardson-Merrell, Inc. v. Koller*,
   472 U.S. 424 (1985).........................................................................................................19, 25

*In re Rokowski*,
   121 A.3d 284 (N.H. 2015) ....................................................................................................10

*Russell Road Food and Beverage, LLC v. Gaiam*,
No. 2:13-cv-0776, 2014 WL 3845424 (D. Nev. July 31, 2014) .......................................5, 14

*In re Schrag*,
46 B.R. 909 (D. Or. 2011) ....................................................................................................7

*Shaw v. Anderson*,
No. CIV-05-1060M, 2006 WL 898165 (W.D. Okla. Apr. 6, 2006) .......................................17

*Sherrills v. State of Ohio, et al.*,
780 F.2d 1023 (6th Cir. 1985) ...............................................................................................8

*Spears v. Fourth Ct. of Appeals*,
797 S.W.2d 654 (Tex. 1990)...................................................................................................17

*State v. Bailey*,
No. E2001-02443, 2002 WL 2012652 (Tenn. Crim. App. Aug. 28, 2002)............................7

*State v. Hoffman*,
2009 WI APP 56, 317 Wis. 2d 730 (2009) ...........................................................................10

*State v. McCrary*,
676 N.W.2d 116 (S.D. 2004) ................................................................................................8

*Swint v. Chambers Cty. Com'n*,
514 U.S. 35 (1995).................................................................................................................19

*In re Termination of Parent-Child Relationship of S.F. and J.F.*,
883 N.E. 2d 830 (Ind. Ct. App. 2008)...................................................................................10

*Thacker v. Cuyahoga Heights Bd. of Educ.*,
No. 1:16-CV-2706, 2017 WL 1535998 (N.D. Ohio Apr. 27, 2017) ..................................5, 13

*U.S. v. Penn*,
151 F. Supp. 2d 1322 (D. Utah 2001) ....................................................................................5

*U.S. v. Rasco*,
No. CR408-100, 2009 WL 1873804 (S.D. Ga. June 29, 2009) .........................................6, 17

*U.S. v. Rasco*,
No. CR408-100, 2009 WL 2341435 (S.D. Ga. July 29, 2009)........................................5, 6, 16

*United States v. Kincade*,
No. 215-CR-00071, 2016 WL 4577006 (D. Nev. Sept. 1, 2016) ........................................24

*United States v. Ta*,
938 F. Supp. 762 (D. Utah 1996)...........................................................................................18

*Vitols v. Citizens Banking Co.*,
    984 F.2d 168 (6th Cir. 1993) ................................................................................19

*Wayne Cty. Hosp., Inc. v. Jakobson*,
    No. CIV. 9-0044-GFVT, 2011 WL 4591949 (E.D. Ky. Sept. 29, 2011) ................................20

*Wheat v. United States*,
    486 U.S. 153 (1988).............................................................................................5

*Winnett v. Caterpillar, Inc.*,
    No. 3:06-cv-00235, 2007 WL 2123905 (M.D. Tenn. July 20, 2007)....................................23

*Zaragoza v. Int'l United Auto. Workers (UAW), Local 668*,
    897 F.2d 530 (6th Cir. 1990) ......................................................................19, 20, 21

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................2, 19, 20

R.C. 149.43 *et seq.*............................................................................................18

# INTRODUCTION

The Court found that Carole Rendon possesses "confidential government information" that could be used against the City of Cleveland and Cuyahoga County, and thus that Ohio Rule of Professional Conduct 1.11(c) requires Carole Rendon and BakerHostetler's disqualification from these Plaintiffs' cases.  Although the Court had held a hearing on this issue, the Court disregarded the evidence introduced at that hearing – which did not support disqualification – and instead relied on: (1) untested hearsay contained in an unsworn and conclusory letter submitted to the Court after the close of evidence, at the Court's request, by Lisa Olson of the United States Department of Justice ("DOJ"), and (2) the Court's own experience as a federal prosecutor in the 1970s.  Endo did not have an opportunity to respond to either.

By proceeding in this manner, the Court failed to adhere to bedrock principles of jurisprudence.  It is fundamentally improper and unfair for the Court to conduct its own investigation outside the adversary process.  In doing so, the Court deprived Endo of the opportunity to cross examine Ms. Olson (or anyone she involved in the investigation), respond to the DOJ's letter, and demonstrate that there is no basis to disqualify Ms. Rendon.  Even assuming the DOJ's submission constituted competent evidence (it does not), it lacks any non-conclusory factual information upon which the Court could make the requisite findings of fact.

The Court also applied the wrong legal standard.  On its face, the DOJ's letter purports to answer a question that differs materially from the relevant inquiry, which is whether Ms. Rendon personally possesses "confidential government information" as defined in Rule 1.11(c).  The correct standard requires evidence that Ms. Rendon has actual (not imputed) knowledge that "was obtained under governmental authority," and that, "at the time the rule is applied" (*i.e.*, now), "the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public."  Prof. Cond. Rule 1.11(c).

The Court should disregard the DOJ letter and reconsider its decision to disqualify Ms. Rendon as legally erroneous and manifestly unjust.  In the alternative, Endo asks that the Court certify its March 20, 2019 Order for interlocutory appeal under 28 U.S.C. § 1292(b).

## RELEVANT FACTS

The record evidence makes clear that Ms. Rendon does not possess any "confidential government information" that would disqualify her from representing Endo.  According to Plaintiffs, "[t]he Opioid Task Force, which Ms. Rendon formed and chaired, was the forum where all the knowledge about the opioid crisis was shared."  Reply Br., Dkt. # 1320, at 8.  It is undisputed that members of the Task Force included private citizens, corporations, and WKYC Channel 3 News, and that one of the purposes of the Task Force was to disseminate Task Force information to the public.  (Transcript of Proceedings ("Hearing"), Dkt. #1354, at 20:13-22:23; 46:14-19; 49:1-9; 79:11-23; 85:19-24).  The Task Force did not require its members to sign nondisclosure agreements.  (Hearing, at 44:18-20).  Information provided at Task Force meetings was shared with all members of the Task Force.  (Hearing, at 22:24-23:03).  The information referenced in Commander Gingell's declaration was the same information shared with all members at the Task Force meetings.  (Hearing, at 24:14-20).  And Ms. Rendon, who the Court acknowledges is "a highly ethical and professional attorney," testified, unequivocally, that she has no confidential government information under Rule 1.11(c).  (Hearing, at 4:17-19; 69:12-21).

Despite the overwhelming evidence that none of the information shared at the Task Force meetings constitutes confidential government information under Rule 1.11(c), the Court refused to hear any evidence concerning the specifics:

> [W]e are not going to have any questions about the details or substance of what was discussed during opioid Task Force meetings. That's the whole point of this.  It is problematic going into the details because if there was sensitive or confidential law enforcement information, it should be known only to the individuals in that room.

> It is, quite frankly, isn't even any need for me to know let alone the lawyers.  So I don't plan to ask any witnesses, and if anyone tries to ask such a question, I will immediately stop it.

(Hearing, at 8:25-9:11).

After the parties rested, the Court announced that it had, earlier that week, asked the DOJ "whether or not there was any confidential information shared by the city of Cleveland and/or County officials to Ms. Rendon during the Task Force meetings," and said that it would "use that as a basis to make that decision."  (Hearing, at 129:12-25).

On March 20, 2019, the Court issued its Order disqualifying Ms. Rendon and BakerHostetler (the "Order").  Order, Dkt. #1458.  The Order relies upon an unsworn March 15, 2019 letter signed by Lisa Olson of the DOJ.  Ms. Olson's letter was not provided to Endo or its counsel before the Court issued its Order, and Endo had no opportunity to investigate its contents, test the unattributed hearsay statements contained therein through cross-examination or depositions, or otherwise rebut the statements.  The unsworn letter is addressed to Judge Polster and states, in its entirety, as follows:

> At the Court's request, the U.S. Department of Justice ("Department") has looked into the question of whether Carole Rendon, while participating in or heading the Heroin and Opioid Task Force ("Task Force"), received "information that was not then publicly available, that was shared in a confidential way, and which she is somehow using now defending Endo in allegations brought by the [C]ity of Cleveland and [Cuyahoga] County."  Transcript of Proceedings on Pls.' Motion to Disqualify 12:18-25 (Feb. 6, 2019) (hereinafter "Tr.").  The Department's inquiry yielded affirmative responses to the question "did Carole Rendon receive confidential information, that is, information that was not then publicly available, that was shared in a confidential way, at the Heroin and Opioid Task Force meetings, or in other meetings or communications that flowed from or came out of the Task Force."

> Specifically, our information indicates that Cuyahoga County and Cleveland law enforcement officials shared nonpublic information with Ms. Rendon and her direct reports as a result of the cooperation among federal, state and local law enforcement agencies in

3

combatting the opioid crisis. This information was conveyed primarily in meetings (e.g., "sidebars") and communications arising out of the Task Force, and was shared in a spirit of confidence and trust. The information concerned the inadequate staffing levels, funding deficiencies, strategies, initiatives, operations, and allocation of resources at the county and local levels for dealing with the opioid crisis. The Department is not in a position to address whether Ms. Rendon has used or is using such information in "defending Endo." See Tr. 128:24.

Please let me know if we may be of further assistance.

DOJ Letter, Dkt #1458-1.

## ARGUMENT ON RECONSIDERATION

Interlocutory orders may be reconsidered at any time before final judgment. *See Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Reconsideration is warranted where, as here, there is "a clear error of law" or "manifest injustice resulting from the earlier judgment." *Lincoln Elec. Co. v. MPM Techs., Inc*., No. 1:08-cv-2853, 2009 WL 2413625, at *2 (N.D. Ohio Aug. 5, 2009). A motion to reconsider is proper where the Court has misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error of apprehension. *Braxton v. Scott*, 905 F. Supp. 455, 457 (N.D. Ohio 1995) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191 (7th Cir. 1990)). Applying these principles, the Court should reconsider its reliance on the DOJ's letter and its own experience, and deny disqualification of Ms. Rendon in order to avoid infecting the City of Cleveland and Cuyahoga County trials with reversible error.

**I.     The Court Should Exclude the DOJ's Letter and Reconsider Because the Fair and Impartial Administration of Justice Demands that Facts Be Determined Only Upon Evidence Properly Presented on the Record.**

      **A.     Plaintiffs failed to meet their burden of proving the grounds for disqualification with admissible evidence.**

"[T]he party moving for the disqualification bears the burden of proving the grounds [for]

disqualification." *U.S. v. Rasco*, No. CR408-100, 2009 WL 2341435 (S.D. Ga. July 29, 2009)

("*Rasco II*") (citing *Wheat v. United States*, 486 U.S. 153, 154 (1988)).  *See also Thacker v.*

*Cuyahoga Heights Bd. of Educ.*, No. 1:16-CV-2706, 2017 WL 1535998, at *5 (N.D. Ohio Apr.

27, 2017) (denying motion to disqualify because movant failed to support with admissible

evidence that attorney had acquired confidential information); *Russell Road Food and Beverage,*

*LLC v. Gaiam*, No. 2:13-cv-0776, 2014 WL 3845424, at *1 (D. Nev. July 31, 2014) ("The party

seeking disqualification bears the burden of proof" which requires "declarations and admissible

evidence sufficient to establish the factual predicate on which the motion depends."); *Eaton v.*

*Siemens*, No. 2:07-cv-0315, 2007 WL 2318531, at *5 (E.D.Ca. 2007) (to rebut presumption that

lawyers behave ethically requires admissible evidence); *Babineaux v. Foster*, No. CIV.A. 04-

1679, 2005 WL 711604, at *2 (E.D. La. Mar. 21, 2005) (burden of proof is on the party seeking

the disqualification (citing cases)); *McKinney v. McMeans*, 147 F. Supp. 2d 898, 900 (W.D.

Tenn. 2001) ("[T]he movant has the burden of proving that opposing counsel should be

disqualified.").

The Sixth Circuit requires that the "factual inquiry" on disqualification be "conducted in

a manner that will allow [for] appellate reviews, as it is when conducted on affidavits and

documents that would be acceptable under Rule 56(e)."  *General Mill Supply Co. v. SCA*

*Services, Inc.*, 697 F.2d 704, 710 (6th Cir. 1982) (noting that this standard is met where "[t]he

affidavit evidence is full and complete" and "nothing was decided below on the basis of unsworn

statements in briefs or bench colloquies with counsel.").  *See also Carlsen v. Thomas*, 159 F.R.D.

661 (E.D. Ky. 1994) (same).  Hearsay, such as the DOJ's letter, is not admissible to support

disqualification.  *U.S. v. Penn*, 151 F. Supp. 2d 1322, 1323 (D. Utah 2001) ("A motion to

disqualify counsel is not exempted from the Federal Rules of Evidence.").

In the context of Rule 1.11(c), a movant's concerns about the disclosure of confidences do not negate the movant's burden of proving the necessity of disqualification with admissible evidence. *See*, *e.g.*, *Doe v. City of Memphis*, No. 2:13-cv-03002, 2015 WL 4019550, at *7 (W.D. Tenn. Apr. 8, 2015) ("Without proof or evidence on this matter, general conclusory statements will not allow the Defendant to carry its burden.  It is true that the City is not required to disclose confidences.  However, the City's election to remain silent has been done at its own peril."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., No. MDL 05-1720, 2006 WL 6846702, at *19–26 (E.D.N.Y. Aug. 7, 2006) (explaining that presumptions concerning shared confidences found in side-switching cases do not apply to former government lawyer cases).

Courts routinely address such concerns by conducting an *in camera* review of the allegedly confidential information.  *See*, *e.g.*, *Janvey v. Proskauer Rose, LLP*, No. 3:13-CV-0477-N, 2014 WL 11516331, at *1 (N.D. Tex. Oct. 9, 2014) (lifting litigation stay to conduct discovery regarding whether attorney had received disqualifying "confidential government information" as that term is defined in the rules); *U.S. v. Rasco*, No. CR408-100, 2009 WL 1873804, at *4 (S.D. Ga. June 29, 2009) ("*Rasco I*") (ordering United States Attorney's Office to provide allegedly confidential information for *in camera* review); *In re Grand Jury Investigation*, No. KM 97-519, 1998 WL 388358, at *5 (R.I. Super. Ct. Jan. 21, 1998) (court reviewed allegedly confidential information *in camera* before ruling on disqualification motion).

If a movant cannot meet its burden to identify confidential information with specificity, disqualification should be denied.  *Rasco II*, 2009 WL 2341435, *1 (July 29, 2009) (rejecting magistrate's disqualification of attorney because movant had "no specific proof" that she "possesses currently confidential information about this case"); *Baltimore Cty. v. Barnhart*, 30 A.3d 291, 306–07 (Md. Ct. Spec. App. 2011) (no genuine dispute of material fact as to whether

appellee possessed confidential government information where appellant "could not identify with specificity any confidential information which appellee might possess").

Here, despite filing under seal, Plaintiffs never identified with specificity any confidential government information in Ms. Rendon's possession.  Endo raised this in their opposition brief, and Plaintiffs did not even claim to have any specific evidence in support of their motion.  Thus, on the record, Plaintiffs' Motion to Disqualify should have been denied.

**B.  The Court exceeded its authority by relying on information beyond the evidence the parties presented on the record.**

When a party fails to meet its evidentiary burden, the Court may not intervene and conduct its own investigation, nor may it delegate that task to a third-party.  "It is a basic principle of jurisprudence, enshrined in common law and statute, that the court may not introduce its own evidence into a proceeding."  *In re Schrag*, 46 B.R. 909, 914 (D. Or. 2011).[1] *See also Price Bros. Co. v. Philadelphia Gear Corp*., 629 F.2d 444, 447 (6th Cir. 1980) ("Unquestionably, it would be impermissible for a trial judge to deliberately set about gathering facts outside the record of a bench trial over which he was to preside.").  As the Sixth Circuit put it, "[t]he fair and impartial administration of justice demands that facts be determined only upon evidence properly presented on the record."  *Price Bros.*, 629 F.2d at 416.[2]

---

[1] In *Schrag*, a bankruptcy court found that a "technical failure" in the court's electronic filing system was not responsible for a party's untimely filing.  The court's finding was based on its own investigation that it conducted by contacting the court clerk, who contacted information technology staff.  The technology staff reviewed computer logs and ran tests, and the court relied on that information to reach its decision.  The Appellee argued that the court "merely relayed [its] knowledge of how [it] actually functions," but the reviewing court found that argument to have "no basis in law."  *In re Schrag*, 464 B.R. at 914.  "The prohibition on independent judicial investigation is one that has been, and must be, scrupulously followed."  *Id*.

[2] *See also State v. Bailey*, No. E2001-02443, 2002 WL 2012652, at *2 (Tenn. Crim. App. Aug. 28, 2002) ("A court must restrain itself to consider only those facts presented to it by the parties; it may not make an independent investigation off the record and base its holding on the resulting information."); *Am. Builders & Contrs. Supply Co., Inc. v. Frank's Roofing, Inc*., 2012-Ohio-4661, 979 N.E.2d 15, ¶ 20 (3d Dist.) ("While the trial judge may have acted with good intentions, we, nevertheless, find, under the circumstances of the instant case, that the independent [judicial discovery] seriously affected the basic fairness, integrity, and reputation of the judicial process. Accordingly, we find the error to be plain.").

Here, the Court's *ex parte* request to the DOJ and reliance on information provided by the DOJ violated this basic principle.[3]  "[E]very litigant is entitled to nothing less than the cold neutrality of an impartial judge."  *State ex rel. Davis v. Parks*, 141 Fla. 516, 519-20 (1939).  But "[t]hat neutrality is destroyed when the judge himself becomes part of the fact-gathering process."  *Albert v. Rogers*, 57 So. 3d 233, 236 (Fla. Ct. App. 2011).[4]  "A judge simply cannot be both a judge and [an attorney] searching out facts favorable to [a party] without abandoning his or her judicial neutrality."  *State v. McCrary*, 676 N.W.2d 116, 125 (S.D. 2004).

In the Sixth Circuit's view, such conduct constitutes an improper *ex parte* communication.[5]  *See*, *e.g*., *Gibson v. R.G. Smith Co*., 915 F.2d 260, 263 (6th Cir. 1990) (citing *Price Bros.*, 629 F.2d at 447 and Canons 3(A)(4) & 3(c)(1)(a), Code of Judicial Conduct for United States Judges); *Sherrills v. State of Ohio, et al*., 780 F.2d 1023 (6th Cir. 1985) (reliance on third-party's investigation and report that was not filed with the court and to which the parties had no opportunity to respond was an improper *ex parte* factual investigation).  In *Price Bros*., the Sixth Circuit explained:

> The duty to avoid off-the-record contacts that might influence the outcome of the litigation is expressed in Canon 3(A)(4) of the Code

---

[3] The Court did not inform the parties that it had made its inquiry to the DOJ until the conclusion of the hearing, after the parties had rested.  Endo could not have foreseen that (i) the DOJ would answer a question that is not relevant to the Rule 1.11 inquiry, (ii) the DOJ would present a conclusory, unsworn, hearsay letter to the Court *ex parte*, (iii) Endo would be denied the opportunity to challenge the DOJ's inquiry and conclusions, and (iv) the Court would rely on that irrelevant and inadmissible evidence as the basis for its decision.  Thus, there is no basis to suggest that the arguments in this motion are somehow untimely or waived.

[4] In *Albert*, the trial court contacted a school official to verify whether a mother in a custody proceeding had in fact listed the father as an emergency contact at the school.  Based on the result of the court's investigation, the court found the mother's testimony not credible.  The appellate court reversed and remanded because the trial court's investigation "constituted a fundamental denial of due process. . . . By initiating communication with the children's school administration and independently investigating the facts, the trial judge abandoned his role as a neutral arbiter of the dispute."  57 So.3d at 236.

[5] Judicial fact gathering also implicates Rule 605 of the Federal Rules of Evidence, which states that "[t]he presiding judge may not testify as a witness at the trial."  "When a judge engages in off-the-record fact gathering, he essentially has become a witness in the case" in "contravention of the Federal Rules of Evidence," and robs the parties of the opportunity to cross-examine, to object to the introduction of the evidence, or to rebut the evidence." *Lillie v. U.S*., 953 F.2d 1188, 1191 (10th Cir. 1992).

> of Judicial Conduct for United States Judges, which provides: "A judge should neither initiate nor consider ex parte . . . communications concerning a pending or impending proceedings."

*Price Bros.*, 629 F.2d at 447; *see also* Code of Conduct for United States Judges, Canon 3(A)(4) Commentary ("The restriction on ex parte communications concerning a proceeding includes communications from lawyers, law teachers, and others who are not participants in the proceeding.").

An inherent problem with off-the-record fact gathering is that "the parties have no opportunity to cross-examine, to object to the introduction of the evidence, or to rebut the evidence." *Lillie v. U.S.*, 953 F.2d 1188, 1191 (10th Cir. 1992); *In re Marriage of Terry*, No. 18624-5-11, 2000 WL 426552, at *4 (Wash. Ct. App. Apr. 20, 2000) (same, holding that "reversal and a new trial before a different judge is the proper remedy" where court's distribution of marital assets was based partly on its *ex parte* acquisition and review of bank records). Another problem with *ex parte* fact gathering is that it effectively denies litigants any means of challenge on appeal. *Lillie*, 953 F.2d at 1191.

Even if the Court had invoked Rule 614 or 706 of the Federal Rules of Evidence, which it did not do, it still would have needed to abide by the requirement that "[e]ach party [be] entitled to cross-examine the witness." Fed. R. Evid. 614; *see also* Fed. R. Evid. 706 (requiring that a court-appointed expert be available for cross-examination by any party); *see also* Advisory Committee Notes, Fed. R. Evid. 614 ("The right to cross-examine, with all it implies, is assured."). That requirement was not met here; Ms. Olson's unsworn hearsay statement was obtained more than a month after the conclusion of the disqualification hearing, precluding the parties from questioning her findings and conclusions.

Thus, courts around the country have held that a court's reliance on independently acquired evidence and failure to provide an opportunity to respond to that evidence constitutes a

fundamental error requiring reversal. *See, e.g.*, *Albert*, 57 So.3d at 235 (reversing and remanding for a new proceeding before a different judge because "the trial court's independent investigation of the facts . . . which served as the linchpin of the court's evaluation of the evidence . . . constituted a fundamental denial of due process"); *In re Termination of Parent-Child Relationship of S.F. and J.F.*, 883 N.E. 2d 830, 836–37 (Ind. Ct. App. 2008) ("trial court's independent, off-the-record investigation and the failure to give [a party] an opportunity to respond to the report created a high risk of error" and amounted to a "fundamental error" requiring reversal); *State v. Hoffman*, 2009 WI APP 56, 317 Wis. 2d 730 (2009) (reversing and remanding because trial court "exceeded its authority" by conducting its own fact finding); *In re Rokowski*, 121 A.3d 284, 286-88 (N.H. 2015) (reversible error to conduct investigation and rely on internet research that was not judicially noticeable).

Here, the Court stepped outside of the evidentiary record in two ways. First, the Court relied on an unsworn, out-of-court statement submitted by the DOJ at the Court's off-the-record request. Endo has no way of knowing — and nor, perhaps, does the Court — what the DOJ did to investigate the Court's question, or from whom the DOJ gathered information.[6] The DOJ's submission includes unattributed hearsay and fails to provide the factual information necessary to evaluate its conclusion. For example, the DOJ's submission does not name Ms. Rendon's "direct reports" who allegedly received confidential information. Nor does it identify the Cuyahoga County and Cleveland law enforcement officials who allegedly conveyed the information. It does not describe what information was conveyed, or any particular conversation

---

[6] Endo also does not know what the Court asked of the DOJ prior to the hearing. (*See* Hearing, at 129:12-13) (referencing a prior, *ex parte* discussion between the Court and the DOJ). At the Hearing, the Court said the DOJ was going to report on "whether or not there was any confidential information shared by the City of Cleveland and/or County officials to Ms. Rendon during the Task Force meetings." (Hearing, at. 129:19-23). But that question is not the question the DOJ answered.

or communication.  Endo and the Court have no way of ascertaining what the DOJ means by saying information was shared in a "spirit of confidence and trust," or how the DOJ could possibly have applied that phrase to the very specific requirements of Rule 1.11(c).  Endo and the Court do not know whether any of the information identified in the DOJ's investigation is *presently* confidential, as required under the Rule, or whether it (more likely) exists somewhere in the public record (as Plaintiffs testified)[7] or in the hundreds of thousands of pages of discovery exchanged between the parties.

Second, the Court based its opinion in part on Judge Polster's own experience as a federal prosecutor during the 1970s.  At the hearing, the Court raised an issue that was not advanced by any of the parties:

> And there is a very important issue that, quite frankly, no one identified in the briefs, but I am keenly aware of it because I go back aways.  And when I began as a federal prosecutor in 1976, there was active competition, mistrust, distrust between local and state law enforcement officials and prosecutors, and I know that for a fact because I saw it, and I saw the impact, the adverse impact it had on law enforcement in this region and how it impacted our citizens.  And that climate of mistrust-distrust competition has changed over 40 some years, not by accident but by the very, very hard work, in my opinion, of federal officials who, one U.S. Attorney after another and the Assistant U.S. Attorneys in those offices, beginning when I was there and then continuing for years after, have worked very, very hard to create a climate of cooperation and trust.  And today there are multiple task forces.  As Ms. Rendon testified, it is not just the Heroin and Opioid Task Force; there are multiple task forces.  I was on a few of them, and there is very close cooperation.

(Hearing, at 127:10-128:7).

Likewise, in its Order, the Court provided a lengthy discussion of the historic relationship

---

[7] (Hearing at 45:5; 45:18-21; 90:6-24 (opioid death statistics); 45:22-25 (opioid trends); 47:5-48:1(strategies); 50:2-16 (operations); 63:14-18 (DOJ findings on Consent Decree investigation, *i.e.* staffing and resources); 64:1-3 (Consent Decree); 65:4-17 (funding and staffing);  83:3-9 (initiatives and operations); 83:13-19 (strategies, initiatives, and operations)).

between federal and local prosecutors in the Northern District of Ohio and the historic purpose and use of task forces in the District, as Judge Polster personally experienced them.  The Court incorrectly considered his personal experiences with unrelated law enforcement task forces relevant to determining the context, function and purpose of the U.S. Attorney's Heroin and Opioid Task Force.  The Court explained:

> While a Court should always treat a motion to disqualify counsel with the utmost care, my understanding of the historic context of the Opioid Task Force has given me additional insight into the complexity and significance of this motion.  In community relations, just as in personal relationships, years of trust can be undone in a very short period of time.

(Order, at p. 9).  "This is why I placed considerable significance upon the affidavit and hearing testimony of Commander Gingell," who testified, "I think a lot of people feel betrayed, myself included."  *Id*.

"The problem attendant to a judge having personal knowledge of the facts is that he may thereby be transformed into a witness . . . [i]f a judge is to preside he may not testify . . . [i]f he is to testify, he may not preside."  *Price Bros*., 629 F. 2d at 446 (applying Rule 605).  The Court, drawing on personal knowledge, gave considerable weight to testimony that is wholly irrelevant to any of the elements of Rule 1.11(c), which make no mention of the subjective views and feelings of law enforcement officials or anyone else.[8]  By soliciting facts off the record and

---

[8] Professional Conduct Rules 1.7 and 1.9 employ a presumption in side-switching cases that a lawyer obtained confidential information from a former client.  *See* Comments to Prof. Cond. R. 1.9.  This presumption serves to protect the attorney-client relationship because "without it, a client seeking to disqualify its former attorney would unfairly be forced to choose between disclosing the very confidences the rule of secrecy is designed to protect and refraining from trying to disqualify the attorney."  *In re Payment Card*, 2006 WL 6846702, at *20-21.  However, this presumption does not apply under Rule 1.11 and has no place here because Ms. Rendon never represented the City of Cleveland or Cuyahoga County.  *Id.* at 21.  "The policy considerations are vastly different, and are understandably protected in different ways by different disciplinary rules."  *Id.*  (explaining that the rule governing former government attorneys is less restrictive than the protection of client confidences and uses the present tense instead of the past because "logic does not compel the presumption that information that was once confidential necessarily retains that status today.").

injecting his own experience, the Court effectively became a witness in contravention of Rule 605, calling into question the fairness and impartiality of the proceedings.[9]

The Court's improper *ex parte* investigation and reliance on its personal experience constitute reversible error.  The Court should reconsider its decision based only on the admissible evidence that was submitted through the adversarial process.  The Court's departure from these fundamental principles alone warrants this relief.  Further, as set forth below, even if the DOJ letter were properly before the Court (it is not), it would not support the Court's Order for independent reasons.

## II.   The Court Erred and Caused Manifest Injustice by Considering the DOJ Letter and by Not First Giving Endo an Opportunity to Cross Examine Ms. Olson and Respond to the Letter.

### A.   The DOJ letter constitutes inadmissible hearsay.

The DOJ letter is inadmissible; it constitutes hearsay upon hearsay.  It is an unsworn, out-of-court statement.  It purports to summarize the conclusion of an investigation of unknown scope, involving unnamed individuals at the DOJ following an undisclosed investigative process.  It concerns statements made by unnamed "Cuyahoga County and Cleveland law enforcement officials."  It does not identify any information supposedly communicated by these officials.  Nor does it specify what information was communicated to Ms. Rendon, as opposed to her unnamed "direct reports."

In short, the DOJ letter is not the type of evidence that courts may consider on a disqualification motion.  *See Thacker v. Cuyahoga Heights Bd. of Educ.*, No. 1:16-cv-2706, 2017 WL 1535998, at *5 (N.D. Ohio Apr. 27, 2017) (refusing to grant a disqualification motion where

---

[9] This error is not waivable: "The rule provides an 'automatic' objection.  To require an actual objection would confront the opponent with a choice between not objecting, with the result of allowing the testimony, and objecting, with the probable result of excluding the testimony but at the price of continuing the trial before a judge likely to feel his integrity had been attacked by the objector."  Rule 605, Advisory Committee Notes.

there was no admissible evidence in support of the "confidential information" element); *Russell Road Food and Beverage, LLC v. Gaiam*, No. 2:13-cv-0776, 2014 WL 3845424, at *1 (D. Nev. July 31, 2014) ("A motion to disqualify should be accompanied by declarations and admissible evidence sufficient to establish the factual predicate on which the motion depends."); *Eaton v. Siemens*, No. 2:07-cv-0315, 2007 WL 2318531, at *5 (E.D. Cal. 2007) (same).

That the letter was provided on Department of Justice letterhead does not exempt it from the requirements of the Federal Rules of Evidence.  *See Ezeagwuna v. Ashcroft*, 325 F.3d 396, 407 (3d Cir. 2003) (rejecting attempt to use the prestige of the State Department's letterhead to give credibility to the letter's contents and finding that the arbiter's reliance on the letter violated due process rights).[10]  In *Ezeagwuna*, the Third Circuit explained that government letterhead does not overcome the problems attendant to hearsay: "due to the multiple levels of hearsay involved here, we have absolutely no information about what the 'investigation' consisted of, or how the investigation was conducted in this case. . . .  [W]e believe that the complete dearth of information about the investigator or the investigation undermines [the hearsay letter] as not only untrustworthy, but also unhelpful."  325 F.3d at 408.  For this reason alone, the Court should disregard the DOJ's letter.

**B.      The DOJ letter answers the wrong question and applies the wrong legal standard.**

The DOJ's letter is not only inadmissible and unhelpful, it also is not probative because it

---

[10] Nor does the fact that the Court's inquiry was directed to the DOJ assure impartiality, as the Court suggests. (Order, p. 9).  On February 27, 2018 (nearly a year after Ms. Rendon was forced to resign from the DOJ and a year before the Court issued its Order), the DOJ issued a press release announcing a new task force created for the purpose of fighting "the prescription opioid crisis," called the PIL Task Force.  According to the press release, the PIL Task Force is to "use all available criminal and civil remedies available under federal law to hold opioid manufacturers accountable for unlawful practices," and was directed "to examine existing state and local lawsuits against opioid manufacturers to determine what assistance, if any, federal law can provide in those lawsuits." https://www.justice.gov/opa/pr/attorney-general-sessions-announces-new-prescription-interdiction-litigation-task-force (Accessed March 27, 2019).  Given those charges, the DOJ's impartiality is not assured.

answers the wrong question and applies the wrong legal standard.  Much was lost in translation between the elements of Rule 1.11(c), the Court's *ex parte* request to the DOJ, the DOJ's undisclosed investigatory questions and process, the DOJ's ultimate response and the Court's ruling that Ms. Rendon should be disqualified.  The DOJ apparently seized on language from the Hearing, where the Court said: "The key factual question in deciding this motion is whether or not Ms. Rendon . . .  received confidential information, information that was not then publicly available, that was shared in a confidential way, and which she is somehow using now defending Endo in allegations brought by the City of Cleveland and County."  (Hearing, at 128:18-25; DOJ Letter (quoting same)).  But this question, as articulated by the Court, is not the right question to determine a Rule 1.11(c) violation.  Nor is the question that the DOJ claims to have asked its staff[11] the right question.

To find a Rule 1.11(c) violation, the following questions must all be answered in the affirmative: (1) Was the information obtained under government authority (*i.e.*, compelled by subpoena or other legal requirement);[12] (2) Is the DOJ **presently** prohibited from disclosing it to the public or has a legal privilege not to disclose; (3) Is the information not otherwise available to the public; (4) Is the information about the Plaintiffs; and (5) Can the information be used to the material disadvantage of that particular Plaintiff?  These questions all appear on the face of

---

[11] The DOJ's letter indicates that the DOJ asked "did Carole Rendon receive confidential information, that is, information that was not then publicly available, that was shared in a confidential way, at the Heroin and Opioid Task Force meetings, or in other meetings or communications that flowed from or came out of the Task Force."

[12] Although case law is sparse on this issue, *The Law of Lawyering* § 16.12 (4th ed. 2015) suggests that this element requires the information to be compelled by a subpoena or other legal requirement.  There is some indirect support for this interpretation in the cases.  *See, e.g., Park-N-Shop, Ltd. v. City of Highwood*, 864 F. Supp. 82, 84 n.3 (N.D. Ill. 1994) ("[A]ny information which Obenberger might have regarding the various players involved in this case arose not out of City Council meetings . . . but out of Obenberger's personal relationships with his fellow Council members.  These are simply not the types of confidences protected by the Rules of Professional Conduct"); *Davis v. S. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 675-76 (S.D. Fla. 1993) (information shared willingly does not qualify as information "obtained under government authority").

Rule 1.11(c).  Most courts considering Rule 1.11(c) also ask a corollary question: Is the information available through discovery?—and deny disqualification if it is.  *See, e.g.*, *Adams v. Kaech*, No. C-3-92-157, 1993 WL 1367440 (S.D. Ohio Dec. 30, 1993); *Franklin v. Clark*, 454 F. Supp. 2d 356 (D. Md. 2006); *Davis v. S. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 675-76 (S.D. Fla. 1993).

The question answered by the DOJ's letter bears no resemblance to the text of Rule 1.11(c), and is of no use to determine whether Ms. Rendon possesses "confidential government information."  The DOJ's conclusion that undisclosed purportedly nonpublic information was shared with one or more people "in a spirit of trust and confidence" is irrelevant under the Rule.  Moreover, the letter is devoid of the factual information the Court would need to independently evaluate the elements of a Rule 1.11(c) violation.  Most glaringly, the DOJ's letter answers only whether information was "shared in a confidential way" at the time it was communicated, not whether it constitutes "confidential government information" and is ***presently*** confidential as the Rule requires.

In *Rasco I*, the magistrate judge "erred by failing to consider whether the information remained confidential at the time the rule was applied," as required by Georgia's equivalent of Ohio Professional Conduct Rule 1.11(c).  *Rasco II*, 2009 WL 2341435 at *1.  Concerned with maintaining confidences, as the Court here was, the *Rasco I* court offered the movant a chance to submit further proof for *in camera* review.  *Id*.  But the movant had "no specific proof" that the attorney "possesses currently confidential information," so disqualification was denied.  *Id*., *1, *3.  Here, Plaintiffs filed their opening brief under seal—they provided their best evidence in support of their disqualification motion, and made no claim to possess additional evidence that they were hesitant to reveal.  Given the Court did not have enough specific evidence to

disqualify Ms. Rendon at the close of the hearing, the Court should have denied Plaintiffs'
motion.

The testimony offered in *Rasco I* is particularly instructive.  "The Government offered
two witnesses to carry their burden."  2009 WL 1873804 at *3.  The first testified that he "very
frequently . . . ha[d] numerous conversations with many of the AUSAs, and a lot of times those
AUSAs [were] not connected to a case in any way as a lead prosecutor or assistant prosecutor."
*Id*.  "He further testified that when 'having a conversation with an AUSA, . . . I drop my guard a
little bit . . . because I presume that is a conversation which is confidential in nature and
would not be privy to the outside world." *Id*.  But on cross examination, "he could not recall any
specific confidential information he disclosed." *Id*.  The second witness testified in "much the
same way." *Id*. at *4.  The second witness identified a few specific pieces of information he had
disclosed, but the magistrate judge "never analyzed whether the confidential information
proffered by the Government remained confidential at the time the Motion was filed" so the
district judge reversed. *Id*.  Here, as in *Rasco I*, the DOJ's letter makes no distinction between
information that was once confidential and information that is presently available; accordingly, it
is an improper basis for disqualification.

The DOJ's letter also makes no distinction between information imparted to Ms. Rendon,
and information allegedly confided in her unnamed "direct reports."  This distinction is critical
because the Rule requires "actual knowledge," not imputed knowledge. *See, e.g.*, *Kronberg v.
LaRouche*, No. 1:09CV947, 2010 WL 1443934, at *2 (E.D. Va. Apr. 9, 2010) (Rule 1.11(c)
"does not operate with respect to information that merely could be imputed to the lawyer.");
*Shaw v. Anderson*, No. CIV-05-1060M, 2006 WL 898165, at *2 (W.D. Okla. Apr. 6, 2006);
*Spears v. Fourth Ct. of Appeals*, 797 S.W.2d  654, 657 (Tex. 1990) ("[T]he rule operates only

when the former government attorney has actual as opposed to imputed knowledge.").

Likewise, nothing in the DOJ's letter indicates whether the information referenced in the letter is currently "otherwise available to the public" or available through discovery—which are both essential requirements of a Rule 1.11(c) violation.  *See*, *e.g*., *Franklin* , 454 F. Supp. 2d at 367–68 (memo that was likely privileged when created was no longer confidential because it had been produced through the course of discovery); *Davis*, 149 F.R.D. at 674 (CID materials and information obtained during witness interviews were "otherwise available" within the meaning of an analogous rule because they were available through discovery); *United States v. Ta*, 938 F. Supp. 762, 765 (D. Utah 1996) (information was otherwise available to the party, so no rule violation).

To the contrary, almost all the categories of information listed in the DOJ's letter—inadequate staffing levels, funding deficiencies, initiatives, operations and allocation of resources at the county and local levels—appear to be information that could not be confidential, in light of Ohio's broad open government rules.  *See Nat'l Bonded Warehouse Ass'n, Inc. v. United States*, 718 F. Supp. 967, 970 n.2 (Ct. Int'l Trade 1989) ("[W]ith the exception of classified information, the only types of information that the government should properly seek to protect are matters of tactics, investigatory documents, and similar materials.") (quoting Developments in the Law—Conflict of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1431 (1981)); R.C. 149.43 *et seq*.  Endo should have been permitted to cross examine the DOJ and introduce evidence establishing that the allegedly confidential information is otherwise available to the public or available through discovery, and thus not confidential, and that nothing the DOJ reported establishes that Ms. Rendon possesses currently confidential government information as required under the Rule.

The Court's refusal to take evidence on the specifics of what was allegedly shared with Ms. Rendon, and the Court's reliance on the DOJ's conclusory answer to the wrong question demonstrate a fundamental misapprehension of the law that requires the Court's reconsideration.

## ARGUMENT ON CERTIFICATION

**I.     In the Alternative to Reconsideration, the Court Should Certify Its Order for Interlocutory Appeal.**

The Supreme Court has recognized that, in appropriate cases, "a party may seek to have [an order disqualifying counsel] certified for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b)." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 435 (1985); *see also Zaragoza v. Int'l United Auto. Workers (UAW), Local 668*, 897 F.2d 530 (6th Cir. 1990) (reversing order disqualifying counsel on interlocutory appeal). If the Court declines to reconsider its Order, it should certify it for immediate interlocutory review.

Certification under Section 1292(b) is appropriate where (i) an order involves a controlling question of law, (ii) on which there is a substantial ground for difference of opinion, and (iii) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002); *see also Swint v. Chambers Cty. Com'n*, 514 U.S. 35, 47 (1995) (Congress "chose to confer on district courts first line discretion to allow interlocutory appeals."). These requirements are met here.

### A.     The Order involves controlling questions of law.

The first requirement is met when an order involves (i) a question of law and (ii) that question is controlling. *See Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993). A suitable question of law is one that the "court of appeals could decide quickly and cleanly without having to study the record." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, No. 16-CV-13655, 2017 WL 2222552, at *3 (E.D. Mich. May 22, 2017). Thus, in appropriate cases,

"[m]ixed questions of fact and law are treated as questions of law for purposes of an interlocutory appeal." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875 (E.D. Mich. 2012) (quoting *Flint v. Ky. Dept. of Corrections*, 270 F.3d 340, 346 (6th Cir. 2000)); *see also Wayne Cty. Hosp., Inc. v. Jakobson*, No. CIV. 9-0044-GFVT, 2011 WL 4591949, at *5 (E.D. Ky. Sept. 29, 2011) ("Questions of law always rely on an application of facts, and simply stating that a factual inquiry is required is not enough to effectively argue that a question of law is not present."). Of course, questions of law also include "the meaning of a statutory or constitutional provision, regulation or common law doctrine." *Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief And Dev.*, 291 F.3d 1000, 1007 (7th Cir. 2002).

For purposes of Section 1292(b), "[t]he Sixth Circuit has [ ] set a low bar for a determination that a question of law is 'controlling.'" *Newsome*, 873 F. Supp. 2d at 875–76. "All that must be shown … is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *Eagan v. CSX Transp., Inc.,* 294 F. Supp. 2d 911, 915 (E.D. Mich. 2003) (citing *Rafoth v. Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)) (quotations omitted); *see also City of Memphis*, 293 F.3d at 351.[13]

The Court's Order involves at least two questions of law. First, the Order presents the question whether the Court's solicitation of, and reliance on, the DOJ letter and the Court's reliance on its own personal experience were proper. As set forth above, the Sixth Circuit has held that a district court must conduct an "adequate inquiry" before disqualifying counsel. *Zaragoza*, 897 F.2d at 530 (citing *Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d

---

[13] Although the Sixth Circuit reviews orders disqualifying counsel for abuse of discretion, "[w]here an abuse of discretion is alleged to result from the application of an incorrect legal standard, an appeal of a disqualification … may present a 'controlling issue of law' under § 1292(b)." *In re Atmosphere Hospitality Mgmt. Servs., LLC*, No. 14-0108, Doc. 7-1, at *2 (6th Cir. Oct. 22, 2014) (appeal not accepted on other grounds); *see also Eagan v. CSX Transp., Inc.*, 294 F. Supp. 2d 911, 915 (E.D. Mich. 2003) (certifying order for interlocutory appeal; "While granting a mistrial is within the discretion of the district court, in doing so the Court applies a legal standard.")

222 (6th Cir.1988)).  Whether a district court has met this requirement is an appropriate subject

for interlocutory review.  *See Zaragoza*, 897 F.2d at 530 (reversing disqualification order on

interlocutory appeal and remanding for a "more appropriate inquiry"; "The sole issue before us is

whether the district court conducted an adequate inquiry before deciding to disqualify the

firm.").  For the reasons given above, the Court's reliance on the DOJ letter and its own personal

experience and history both implicate the adequacy of the Court's inquiry prior to issuing the

Order.  Accordingly, this constitutes a question of law that is appropriate for interlocutory

review.

Second, the Order presents the question whether the Court applied the correct standard

for "confidential government information" as defined in Rule 1.11(c) and construed by courts

across jurisdictions.  Because this question involves solely the interpretation of a rule, it clearly

constitutes a question of law.

These questions also are controlling "because [they] will determine the [party's] right to

counsel of its choice, and therefore 'could materially affect the outcome of the case.'"

*Atmosphere Hospitality Mgmt. Servs., LLC v. Royal Realties, LLC*, 28 F. Supp. 3d 692, 700

(E.D. Mich. 2014) (certifying disqualification order for interlocutory appeal) (quoting *City of*

*Memphis*, 293 F.3d at 351), appeal not accepted on other grounds, *In re Atmosphere Hospitality*

*Mgmt. Servs., LLC*, No. 14-0108, Doc. 7-1, at *2 (6th Cir. Oct. 22, 2014).

In addition, these questions may be considered controlling because they have significant

precedential value.  *Noall v. Howard Hanna Co.*, No.1:09-cv-2510, 2010 WL 5020914, at *2

(N.D. Ohio Dec. 3, 2010) ("An issue of law may be considered controlling . . . [if] its resolution

has precedential value."); *Glatt v. Fox Searchlight Pictures Inc.,* No. 11 CIV. 6784 WHP, 2013

WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) ("In determining whether a controlling question of

law exists the district court should consider whether . . . the certified issue has precedential value for a large number of cases."); *see also Rafoth*, 954 F.2d at 1172 n.8.  As the Court noted in its Order, "the Rules of Professional Conduct were adopted to replace the Code of Professional Responsibility" in part because the Code "did not provide 'specific guidance to former government lawyers.'"  Order, Dkt # 1458, at 5 (quoting Disciplinary Rule 9-101).  And, as the Court also noted, numerous former United States Attorneys provided an amicus letter urging "that the rules ought to 'be applied in a way that provides certainty to current and former government attorneys, as well as to prospective government attorneys weighing the costs and benefits of public service.'"  (Order at 5 (quoting Doc. #: 1342 at 1)).  The Court stated that it was "sympathetic to th[is] … policy implication," and suggested that the precedent set by its Order does not implicate these concerns because "[i]t is only the confidential information [Ms. Rendon] received … that disqualify her and her firm."  (Order at 10–11).

Contrary to what the Court suggests, the Order threatens to exacerbate the uncertainty that may have already existed as to the application of Rule 1.11(c).  As set forth above, the Order warns former government lawyers that they may be disqualified on the basis of unsworn, untested double hearsay, submitted *ex parte* by a governmental agency, that does not state in any detail what information actually was provided or precisely to whom the information was provided.  The Order also suggests that disqualification may be proper if the person imparting the information believes they did so "in a spirit of confidence and trust," regardless of the reasonableness of that belief (the DOJ letter provides no details from which reasonableness could be evaluated) or whether the recipient understood the information to be confidential by any objective standard, much less the objective standard set forth in Rule 1.11(c), and the numerous cases construing it, or whether the information remains confidential at the time of the requested

disqualification, as also required by the Rule.

**B.      Substantial ground for difference of opinion exists for each controlling question of law.**

A substantial ground for difference of opinion exists when "(1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *Deutsche Bank Nat. Trust Co. v. Wickert*, 638 F. Supp. 2d 826, 831 (N.D. Ohio 2009) (quotation omitted).  It also "may exist where the Sixth Circuit has not rendered a decision on the matter, and the relevant authorities are susceptible to competing interpretations." *Winnett v. Caterpillar, Inc.*, No. 3:06-cv-00235, 2007 WL 2123905, at *4 (M.D. Tenn. July 20, 2007) (quotations omitted).

As set forth above, Endo submits that the relevant authorities clearly require reconsideration and reversal of the Order.  At a minimum, however, these authorities are susceptible to interpretations that would compel reversal of the Order, because the Court did not apply the correct standard for "confidential government information," because the Order resulted from an inadequate or improper inquiry, or both.  Because the Sixth Circuit has not decided the precise controlling questions of law at issue here, certification for interlocutory appeal is appropriate.

Moreover, while Endo submits that the correct application of the relevant authorities is clear, Endo recognizes that the Court stated a different view at the hearing.  Specifically, the Court stated that "this issue doesn't fit very well within the cases that either side has cited or for that matter the model rules," that "[t]he cases provide some guidance, but none of those judges, courts have had to deal with something quite like this," and that the questions presented by the motion to disqualify (and thus the Order) are novel and difficult because "[t]here has never been a case or cases like this in the country."  (Hearing, at 126:19-127:6).  Given the Court's view, the

appropriate course of action is to certify the Order for interlocutory appeal.  *See Wickert*, 638 F. Supp. 2d at 831 (interlocutory appeal appropriate where "the issue is difficult and of first impression").

### C.    Immediate appeal may materially advance ultimate termination of the litigation.

The final requirement is met when "appellate review *could* appreciably shorten the time, effort and expense exhausted between the filing of a lawsuit and its termination."  *League of Women Voters of Ohio v. Blackwell*, No. 3:05-cv-7309, 2006 WL 1580032, at *2 (N.D. Ohio Feb. 10, 2006) (emphasis added).  This requirement "overlaps" with the requirement that the order must present a controlling question of law.  *See Hale v. Johnson*, No. 1:15-CV-14, 2016 WL 8673579, at *8 (E.D. Tenn. Feb. 2, 2016) ("[I]f a question of law is controlling, and if an appeal definitively determines that question, then such an appeal will almost certainly materially advance the ultimate termination of the litigation and save substantial judicial resources and litigant expense.") (quotation omitted).  This requirement is met for at least two reasons.

First, the Order will necessitate severing Cuyahoga County's and Summit County's claims from the trial scheduled for October 21, 2019.  (*See* Dkt. # 1392).  Because the Order disqualifies Ms. Rendon and BakerHostetler from participating only in the Cuyahoga County case, it may no longer be feasible to try these cases together.  *See, e.g.*, *United States v. Kincade*, No. 215-CR-00071, 2016 WL 4577006, at *1–3 (D. Nev. Sept. 1, 2016) (given policy disfavoring disqualification of counsel, where attorney was disqualified as to one charge but not others, the practical difficulties could "potentially be resolved by severing trial").  This result could easily extend the termination of the remaining two Track One cases and, as a consequence,

other cases pending in the MDL.[14]

In addition, if the Order were reversed after trial, the Sixth Circuit could order a new trial with Endo's chosen counsel.  *See, e.g., Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 435 (1985) ("[I]f the client obtains an unsatisfactory judgment with substitute counsel, the disqualification ruling may be challenged on appeal of a final judgment.").  This result inevitably would significantly extend the termination of this litigation.  *See Black & Decker (US), Inc. v. Smith*, No. 07-1201, 2008 WL 3850825, at *4 (W.D. Tenn. Aug. 13, 2008) (appeal likely to materially advance ultimate termination of the litigation where interlocutory appeal "might prevent this case from having to be tried twice.").

The Court stated that the motion to disqualify presents a difficult and novel issue to which it believes existing precedent does not easily apply.  As a result, if the Court declines to reconsider its disqualification Order, it should certify the disqualification issue for immediate appeal to allow for an immediate review of this important issue, and to conserve the time and resources of the parties and the Court.

---

[14] Endo does not waive, and expressly reserves, any and all objections on this and other grounds to trying the two lawsuits together.

## CONCLUSION

For each of the foregoing reasons, the Endo respectfully requests that the Court set aside the DOJ's letter and the Court's own, personal, historical experiences, and reconsider and deny the Plaintiffs' Motion to Disqualify based on the record evidence properly before the Court. Alternatively, Endo asks that the Court certify its Order for interlocutory appeal.

Respectfully submitted,

*/s/ John D. Parker*
John D. Parker (0025770)
Carole S. Rendon (0070345)
Tera N. Coleman (0090544)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Telephone:   216.621.0200
jparker@bakerlaw.com
crendon@bakerlaw.com
tcoleman@bakerlaw.com

Jonathan L. Stern
ARNOLD & PORTER KAYE SCHOLER
LLP 601 Massachusetts Ave, NW
Washington, DC 20001-3743
(202) 942-5000
Jonathan.Stern@arnoldporter.com

Sean Morris
ARNOLD & PORTER KAYE SCHOLER
LLP 777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
Sean.Morris@arnoldporter.com

Attorneys for the Endo Defendants

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 29, 2019, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system and will be served via the Court's CM/ECF filing system on all attorneys of record.

DATED: March 29, 2019                     */s/ John D. Parker*
                                          John D. Parker