IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>**This document relates to:**<br><br>*All Cases* | Case No.: 1:17-md-2804-DAP<br><br>Honorable Dan Aaron Polster |

**Plaintiffs'[1] Memorandum in Opposition to Endo's Motion to Reconsider Disqualification/Certify the Disqualification Order for Interlocutory Appeal**

We find ourselves in this regrettable situation because Endo's counsel chose not to exercise the appropriate discretion—in contrast to her predecessor and successor at the U.S. Attorney's Office, both of whom clearly recognized the magnitude of the opioid crisis, the gravity and unprecedented nature of this litigation, and their obligation not to undermine the integrity of these proceedings by even approaching the ethical line. Endo's counsel, unfortunately, crossed that line. Disqualification was therefore necessary, and Endo's motion for reconsideration provides no reason for the Court to reverse itself.

The Court acted appropriately, and within the bounds of the Rules of Evidence, by relying on its experience as a federal prosecutor to inform its analysis and by considering the DOJ's letter as one piece of evidence in reaching its decision. In any event, there was sufficient evidence, completely independent of the DOJ's letter, justifying disqualification. Consequently, even assuming it was improper for the Court to request and consider the DOJ's letter, it was at worst a harmless error, and one Endo

---

[1] For this memo, "Plaintiffs" means the City of Cleveland, Cuyahoga County, the City of Akron, and Summit County.

acquiesced in, thus precluding Endo from now objecting. For these reasons, which are explained more fully below, Endo's motion for reconsideration should be denied, as should its alternative request for interlocutory appeal.

## I. Endo Has Not Met the Demanding Standards Applicable to a Motion for Reconsideration

Motions for reconsideration "are looked upon with disfavor" and rarely granted. *Meekison v. Ohio Dep't of Rehab. & Correction*, 181 F.R.D. 571, 572 (S.D. Ohio 1998). Indeed, reconsideration is not appropriate unless the moving party demonstrates: "(1) a manifest error of law; (2) newly discovered evidence which was not available previously to the parties; or (3) intervening authority." *Id.* The "mere dissatisfaction with a Court's ruling is an inappropriate and insufficient ground to support a motion for reconsideration." *Id.*; *Krantz v. City of Toledo Police Dep't*, No. 3:03 CV 7325, 2007 WL 2156639, at *1 (N.D. Ohio July 26, 2007).

Endo has not met any of these demanding standards. Endo points to no newly discovered evidence or intervening authority and has failed to demonstrate—as it must to satisfy the "manifest error of law" standard—that the Court committed an error "so egregious that an appellate court could not affirm" the disqualification decision. *See Dorger v. Allstate Ins. Co.,* Case No. 2–08–56, 2009 WL 2136268, at *1 (E.D.Ky. July 16, 2009) (citing *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir.2000) (defining "manifest error" as "wholesale disregard, misapplication, or failure to recognize controlling precedent on the part of the court.").

2

### A. The DOJ's Letter Was Admissible Evidence

It was not a manifest error of law for the Court to consider the DOJ's letter because the letter is admissible under Fed.R.Evid. 803(8), the public-records exception to the hearsay rule:

(8) Public Records. A record or statement of a public office if:

(A) it sets out:

(i) the office's activities;

(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

The DOJ letter fits squarely within Fed.R.Evid. 803(8)(A)(iii): It is a "statement of a public office" that "sets out" "in a civil case" the "factual findings from a legally authorized investigation." Ample case law supports the admissibility of letters from the DOJ setting forth the Department's investigative findings and conclusions. *See Daniel v. Cook Cty.*, 833 F.3d 728, 740 (7th Cir. 2016) (finding a DOJ report—which was the product of its investigation into conditions at a county jail and which set forth the DOJ's findings and conclusions, after taking into account all available evidence, including inspections, review of jail documents, and input from expert consultants—was admissible under Fed.R.Evid. 803(8)); *Roland v. Johnson*, 933 F.2d 1009, 1991 WL 84346, at *2 (6th Cir.1991) (DOJ investigative report admitted under Fed.R.Evid. 803(8)); *Shepherd v. Dallas County*, 591 F.3d 445, 456–457 (5th Cir.2009) (same).

3

Furthermore, even though Fed.R.Evid. 803(8)(A)(iii) mentions only "factual findings," the Supreme Court has held that conclusions and opinions contained within a public record are admissible under this provision, as long as they are based on a factual investigation and satisfy the Rule's trustworthiness requirement. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988) ("We hold, therefore, that portions of investigatory reports otherwise admissible under Rule 803(8)[(A)(iii)] are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report.").

As for the trustworthiness requirement, this Court considered and addressed that very issue—and came to the correct conclusion that none of the circumstances surrounding the DOJ letter, nor anything about the letter itself, indicate a lack of trustworthiness. Doc. #: 1458, Op. at p. 9.[2]

For these reasons, the Court acted properly in considering the letter.

### B. There Was Sufficient Evidence Warranting Disqualification Even Without the DOJ's Letter

Endo argues that the Court "disregarded" the evidence introduced at the evidentiary hearing and instead erroneously relied on the DOJ's letter. Endo is wrong: The Court's Order makes clear it considered all the available evidence and made a reasoned decision based on the totality of the facts presented. *See, e.g.*, Doc. #: 1458, Op. at p. 9 (noting that the Court "placed considerable significance upon the affidavit and hearing testimony of Commander Gingell").

---

[2] The DOJ's letter likely also satisfies the other alternative definitions of public records—Fed.R.Evid. 803(8)(A)(i) and (ii)—since it sets forth the activities of the U.S. Attorney's Office for the Northern District of Ohio and matters observed by DOJ personnel with respect to the Task Force.

4

Endo's argument misses another crucial point: There was sufficient evidence in the record separate and apart from the DOJ's letter that warranted disqualification. By the end of the February 6 hearing, Plaintiffs had presented evidence—live testimony and sworn declarations—that Ms. Rendon violated Rule 1.11(c). *See* Doc. #: 1354, Tr. of Feb. 6 Hr'g, at 30:12-24 (Commander Gingell testifying about the confidential nature of the Opioid Task Force meetings with Ms. Rendon); *Id.* at 37:20-25, 38:23-39:2 (Dr. Gilson testifying about occasions when he and Ms. Rendon sat together to discuss confidentially strategies related to the prosecution of opiate-related deaths); *Id.* at 44:3-11 (Dr. Gilson recounting a Task Force meeting where the confidentiality of the discussions was emphasized); *Id.* at 57:16-59:5 (Chief Williams testifying about Ms. Rendon's questioning of him at deposition in this litigation concerning the Cleveland Police Department's use and allocation of resources in reference to the opioid epidemic and opioid-related crime); *Id.* at 59:13-20 (Chief Williams testifying about feeling betrayed because Ms. Rendon "had intimate knowledge of everything" the Police Department was doing to combat the opioid crises and yet she sat "across the table from me [at deposition] basically using information against us"); *see also* Doc. #: 1241-20, Decl. of Commander Gingell; and Doc. #: 1241-21, Decl. of Dr. Gilson (both declarations providing evidence about the confidential nature of the information shared with Ms. Rendon and used against the City of Cleveland and Cuyahoga County in this litigation).

To be sure, Ms. Rendon took the stand and testified she did not violate the Rules of Professional Conduct. Doc. #: 1354, Tr. of Feb. 6 Hr'g, at 69:5-21. But it is the factfinder's prerogative (whether judge or jury) to decide how credible each witness is,

5

to decide if a witness's testimony is believable and how much weight it deserves, and to believe everything a witness says, part of it, or none of it at all. *See* Sixth Circuit Pattern Jury Instruction 1.07; *United States v. Chesney*, 86 F.3d 564, 573 (6th Cir. 1996) (approving instruction 1.07 as "a correct statement of the law"). It was thus the Court's prerogative to credit the testimony of Commander Gingell, Dr. Gilson, and Chief Williams over that of Ms. Rendon.

Given the substantial evidence supporting disqualification, the DOJ's letter, while helpful and corroborating, was not necessary. Therefore, even assuming the Court's reliance on the DOJ's letter was misplaced (it was not), such error would be harmless at worst—certainly not a manifest error of law.[3]

### C. Endo Acquiesced in the Procedure the Court Employed, Thereby Waiving Its Right to Object After-the-Fact

Even if (hypothetically) the Court erred in requesting and considering the DOJ's letter, Endo has no right to complain now, for Endo knew full well by the end of the hearing on February 6 that the Court had asked the DOJ to look into and answer the question whether Ms. Rendon received confidential information during the Opioid Task Force meetings. Yet not one of the several defense lawyers who spoke at the hearing (nor Ms. Rendon herself) objected to, or raised any concern about, this procedure either at the hearing or for several weeks thereafter. Perhaps they felt confident the DOJ would answer the question in the negative. In any event, the defendants made a knowing and voluntary decision not to object to the procedure until after the DOJ came back with its answer. But that's not how it works: A party that agrees—whether by

---

[3] In large part, Endo's motion is just an attempt to relitigate the facts. *See* Endo Brief at Section I.A "Plaintiffs failed to meet their burden of proving the grounds for disqualification with admissible evidence." But mere dissatisfaction with the disqualification decision is not grounds for reconsideration.

6

actively encouraging or failing to object—to a "judge's course of conduct," waives the "right to later charge the court with error in following that course of conduct." *In re Bayer Healthcare & Merial Ltd. Flea Control Prod. Mktg. & Sales Practices Litig.*, 752 F.3d 1065, 1072 (6th Cir. 2014). Moreover, "[i]t is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or ***to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue***." *Chafflose Corp. v. 3M Innovation*, 1:10-CV-2178, 2010 WL 4318872, *1 (N.D. Ohio Oct. 27, 2010) (Polster, J.) (emphasis added). Endo may not like the results, but it had no problem with the course of conduct when the Court proposed it, before Endo knew the results. Endo thus waived its right to charge the Court with error.

### D. The Court Properly Relied on Its Own Experience to Inform Its Analysis of the Policy Implications Surrounding the Disqualification Issue

Endo takes issue with the Court's reliance on its own experience. The Court disqualified Ms. Rendon based on a straightforward application of Rule 1.11(c) to the facts as the Court found them—that Ms. Rendon received confidential information that could be used to the material disadvantage of Cleveland and Cuyahoga County. That the Court also considered, in light of its own experience, the policy implications of the disqualification issue was not error because the Court did not substitute its experience for the facts before it. Our common law system of justice actually depends on judges using their wisdom to evaluate the circumstances of the cases before them and the consequences of their decisions.

7

The Rules of Evidence distinguish between "adjudicative facts" and "legislative facts." The Advisory Committee Notes to Fed.R.Evid. 201 explain the two concepts: "Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Adjudicative facts are governed by the Rules of Evidence, while legislative facts are not. *See* Fed.R.Evid. 201(a) (excluding legislative facts from the scope of the rule); 2 McCormick On Evid. § 331 (7th ed.) ("[T]he Federal Rules of Evidence make no effort to regulate" legislative facts.)

Here, the "adjudicative facts" center on the factual question whether Ms. Rendon obtained confidential information in her role as chair of the Opioid Task Force. That factual question is not one the Court's career with the Department of Justice can shed light on, and the Court did not pretend it could. Instead, the Court referenced its professional experience to emphasize the detrimental effects that the community will endure when federal and local governments begin mistrusting one another, as they did in the past. That is, the Court used its own experience to inform its analysis of the policy implications of Ms. Rendon's conduct and to provide "additional insight into the complexity and significance of" the disqualification motion. Doc. #: 1458, Op. at p. 9. The Court's experience was thus a legislative fact, which is not regulated or prohibited by the Rules of Evidence. *See* 2 McCormick On Evid. § 331 (7th ed.) ("The very nature of the judicial process necessitates that judges be guided, as legislators are, by considerations of expediency and public policy…Contemporary practice indicates that judges in their opinions should render explicit their policy judgments and the factual

8

grounds therefor. These latter have been helpfully classed as 'legislative facts,' as contrasted with the 'adjudicative facts' which are historical facts pertaining to the incidents which give rise to lawsuits.").

## II. There Is No Basis to Certify the Disqualification Ruling for Interlocutory Appeal

Endo's alternative request for certification of the disqualification ruling should be denied too. Interlocutory appeals are disfavored. *U.S. ex rel. Elliott v. Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 863–64 (S.D. Ohio 2012) ("[I]nterlocutory appeals in the federal system are generally disfavored. Attractive as it may be to refer difficult matters to a higher court for advance decision, such a course of action is contrary to our system of jurisprudence.... Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation.") (internal quotation marks and citations omitted). To justify certification under section 1292(b), Endo must convince this Court and, subsequently, the Sixth Circuit, that the disqualification order is one that (i) involves a controlling question of law, (ii) on which there is a substantial ground for difference of opinion, and (iii) where an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

The Supreme Court has, moreover, specifically discouraged interlocutory appeals of disqualification rulings. Accordingly, it has set an extremely high burden for certification in situations like these—beyond the already onerous standard set forth at section 1292(b). As the Court made clear in *Firestone Tire & Rubber Co. v. Risjord*, 449

9

U.S. 368 (1981), a party "may seek to have the [disqualification] question certified for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b)," only when it is "**absolutely determined that [the party] will be harmed irreparably**." *Id.* at 378, n. 13 (emphasis added).  Seldom, if at all, will a disqualification order meet this standard because "[t]he decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand, and the order embodying such a decision will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits." *Id.* at 377. Endo cannot meet this exacting standard either. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 424 (1985) ("A disqualified attorney's personal desire for vindication does not constitute an independent justification for an interlocutory appeal, but, as a matter of professional ethics, the decision to appeal should turn entirely on the client's interest.").

Endo has not—and cannot—make these requisite showings.

### A. Endo's Proposed Interlocutory Appeal Does Not Involve a Controlling Question of Law.

No controlling question is presented by Endo's proposed appeal. A controlling question is one that "could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351. That is clearly not the situation here: The Court's Order did not address—and therefore will not affect—any of the substantive issues the jury will have to decide at trial, nor will it hamper Endo's ability to defend itself at trial, which is more than six months hence. *See, e.g.*, *Arizona v. Ideal Basic Indus.* (*In re Cement Antitrust Litig.*), 673 F.2d 1020 (9th Cir.1981) (A decision granting a motion to disqualify the trial judge is not controlling because it could not affect the outcome of the litigation.) (cited in *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172, n.8 (6th Cir. 1992),

and *In re Trump*, 874 F.3d 948, 951–52 (6th Cir. 2017))." *Cf. Zaragoza v. Int'l United Auto. Workers (UAW), Local 668*, 897 F.2d 530 (6th Cir. 1990) (finding disqualification controlling because the plaintiff was "unable to obtain substitute counsel despite his efforts" and "has neither the legal acumen nor the intellectual capacity to adequately represent himself in this case" and "no other attorney is willing to take his case"). The disqualification of Ms. Rendon and her firm is "separable from and collateral to the merits of this lawsuit," and reversal can "in no way materially affect the eventual outcome of the litigation." *Id.* at 1027.

Certification is inappropriate for another reason. For a question of law to be certifiable under section 1292(b), it must be a **pure** legal question. It cannot be a mixed question of law and fact or involve the application of settled law to fact, as the Sixth Circuit explained in *In re Atmosphere Hospitality Mgmt. Servs., LLC*, No. 14- 0108, Doc. 7-1, at *2 (6th Cir. Oct. 22, 2014), when it denied certification of a decision disqualifying counsel:

> A question of law references a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine that does not involve the application of settled law to fact. Thus, controlling questions of law generally do not include matters within the discretion of the trial court. We review Atmosphere's issues—challenging the district court's disqualification of counsel and its determination that the doctrine of laches did not apply—for an abuse of discretion.... Where an abuse of discretion is alleged to result from the application of an incorrect legal standard, an appeal of a disqualification or laches issue may present a controlling issue of law under § 1292(b). Where, as here, the party seeking review argues that the district court misapplied the legal standard or relied on clearly erroneous findings of fact, the question does not involve a controlling issue of law.

*Id.* at *2 (quotations and internal citations omitted). The Court's Order here is precisely the kind of ruling the Sixth Circuit addressed—and refused to certify—in *Atmosphere*

11

*Hospitality*. The Court heard testimony, resolved credibility, and ruled. Quite simply, the Court's determination that Ms. Rendon obtained confidential information is not a pure question of law.

Still, Endo argues there are two "controlling questions of law": 1) whether the Court conducted an adequate inquiry; and 2) whether the Court applied the correct standard for "confidential government information." The only case Endo cites regarding the first issue is *Zaragoza, Local 668*, 897 F.2d 53, in which the district court rendered its decision disqualifying a law firm without a hearing. The Sixth Circuit found the district court's inquiry "inadequate" and remanded for a hearing on the disqualification issue. By contrast, this Court received and considered sworn declarations, held a multi-hour hearing, and received a letter summarizing the DOJ's investigation. This case comes nowhere close to *Zaragoza.* If Endo's position were correct, then **every** disqualification order would be certifiable: The loser would simply have to complain about the "adequacy" of the trial court's inquiry.

As for the second "controlling question of law," it has been totally manufactured by Endo. Neither the parties nor the Court nor the DOJ exhibited any confusion about the meaning of "confidential" within the context of Rule 1.11(c). Rule 1.11(c) defines the term, and that was precisely the definition used by the parties in their briefing, the Court in its decision, and the DOJ in its letter. Tellingly, Endo cites no cases that interpret that term differently. The notion that there is a debate about the meaning of "confidential" is nothing more than a transparent attempt to create a dispute where none exists.

Endo has not satisfied the first requirement under section 1292(b).

### B. There Is No Substantial Ground for Difference of Opinion on the Questions Endo Seeks to Raise on Appeal.

Endo also fails the second requirement certification—that a substantial ground for difference of opinion exists with respect to the controlling question of law. In *Atmosphere Hospitality,* a case in which the district court disqualified counsel, the district court certified the decision for interlocutory appeal "because it is not clear what information [the attorney alleged to have a conflict] may have obtained that could disadvantage the defendants." 28 F. Supp. 3d at 700. The Sixth Circuit disagreed (and therefore dismissed the appeal), concluding as follows:

> Atmosphere's issues are not novel, there is precedent governing the analysis of both issues, and there is no division among the district courts in this circuit or a split among other circuits on the applicable standards.

Slip. op. at *2.

Here, the parties cited the applicable rule and case law, which the Court applied in a straightforward manner to the facts. Endo may disagree with how the Court applied the law to the facts, but that does not amount to a substantial ground for difference of opinion as required under section 1292(b).

### C. An Immediate Appeal Will Not Materially Advance the Ultimate Termination of this Litigation.

Endo has not met its burden of showing that an immediate appeal will materially advance the ultimate termination of this litigation. First, this determination cannot be made without viewing this case in the context of this entire multidistrict litigation. This Court has rejected two prior attempts at interlocutory appeals involving the substantive issues in the case.  *See* Doc. #: 1283 (refusing section 1292(b) certification of Rule 12(b)(6) rulings); Doc. #: 1120 (refusing certification of substantive issues of Ohio law to

13

Ohio Supreme Court). In rejecting certification, the Court stated: "The Court believes that adding the additional burden of briefing and arguing an appeal of the Court's December 19th Order while the parties are already significantly burdened with the current trial schedule is more likely to increase burden that to relieve it." Doc. 1283 at p.2. Given the upcoming schedule related to expert discovery and motion practice for the bellwether cases, the Court's concerns are even more salient now.

Second, Endo has not asked for a stay, and an "application for an appeal" under section 1292(b) "shall not stay proceedings in the district court." 28 U.S.C. § 1292(b). It is doubtful an appeal could be completed before trial starts. Potential disruption of the trial schedule, which will affect numerous parties who have no interest in the disqualification issue, is reason enough to conclude that an immediate appeal will not materially advance the ultimate termination of this litigation.

Third, Endo presumes a reversal on appeal. For the reasons already noted, the underlying decision is correct. However, even if it were not, there would not be a need for a new trial. Endo has articulated no actual prejudice that might justify a new trial, and Endo's remaining counsel are competent to try this case. Endo may ultimately be satisfied with the verdict and choose not to appeal.

Finally, Endo's suggestion that this Court should sever Cuyahoga County's and Summit County's claims from the trial scheduled for October 21, 2019 is wrongheaded and premature, and Endo should not be rewarded for its counsel's misconduct by severing Cuyahoga County from the upcoming trial. The Court has made clear that it will try both bellwether cases—Summit County and Cuyahoga County—together. Indeed, on March 25, 2019, these bellwether plaintiffs and the PEC submitted 20

extensive expert reports that cover the claims of both counties. The Court's denial of the motion for reconsideration should not affect the decision to try the two cases together. And, for this first trial, if that means Ms. Rendon and her firm cannot participate, then no substantial prejudice to the defendant Endo will occur, as Endo has another law firm—Arnold and Porter—that has represented Endo throughout these proceedings and, from all appearances, is principally the law firm leading Endo's litigation team. Moreover, it would significantly prejudice the bellwether plaintiffs, as the Court has found, for Ms. Rendon to participate in jointly tried cases.

Endo has articulated no good reason why severance would be helpful to any of the parties and has failed to explain why it cannot, with the six-plus months remaining before trial, take the necessary steps to ensure Ms. Rendon and her firm abide by this Court's disqualification decision without undermining Endo's ability to defend at trial. Endo's suggestion about severance—"it may no longer be feasible to try these cases together"— is nothing more than a half-hearted attempt to throw a wrench into the bellwether process.

### III.  Conclusion

Endo has provided no legitimate reason for this Court to reverse its disqualification decision or to certify the decision for interlocutory appeal. Endo's motion should therefore be denied in toto.

Respectfully submitted,

s/*Peter H. Weinberger*
Peter H. Weinberger (0022076)
**SPANGENBERG SHIBLEY & LIBER**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
*pweinberger@spanglaw.com*
*Plaintiffs' Liaison Counsel*


*s/Mark Pifko*
Mark Pifko
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Los Angeles, California  91436
(818) 839-2325
(818)986-9698 (Fax)
mpifko@baronbudd.com
*Counsel for City of Cleveland*


*s/Linda Singer*
Linda Singer
**MOTLEY RICE**
401 9th St. NW, Ste 1001
Washington, DC  20004
(202) 386-9626
lsinger@motleyrice.com
*Counsel for Summit County
    and City of Akron*

*s/Hunter Shkolnik*
Hunter Shkolnik
**NAPOLI SHKOLNIK**
360 Lexington Ave., 11th Flr
New York, NY  10017
(212) 397-1000
hunter@napolilaw.com
*Counsel for Cuyahoga County*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*s/Peter H. Weinberger*
Peter H. Weinberger
*Plaintiffs' Liaison Counsel*
