**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br> *"Track One Cases"* | ) ) ) ) ) ) ) ) ) ) ) ) MDL 2804 <br><br> Case No. 1:17-md-2804 <br><br> Special Master Cohen <br><br> <u>RULING REGARDING JURISDICTIONAL DISCOVERY ON DEFENDANTS ALLERGAN, TEVA, AND MALLINCKRODT</u> |

On February 15, 2019, the Court directed the undersigned to rule on "whether and to what extent" Plaintiffs may conduct personal jurisdictional discovery on defendants Allergan plc f/k/a/ Actavis plc ("Allergan"), Teva Pharmaceutical Industries, Ltd. ("Teva") and Mallinckrodt plc ("Mallinckrodt") (collectively "Foreign Defendants"). Docket no. 1372 at 1. Plaintiffs seek jurisdictional discovery in order to respond to the Foreign Defendants' separate motions to dismiss for lack of personal jurisdiction, *see* docket nos. 1258, 1264, & 1266. All parties submitted to the Special Master detailed letter briefs regarding *whether* such discovery is appropriate. The undersigned then directed the parties to negotiate scope and timing, assuming some jurisdictional discovery is appropriate. The parties submitted additional letters setting out where they agreed and disagreed.

For the reasons and to the extent set forth below, the undersigned concludes Plaintiffs may conduct jurisdictional discovery upon the Foreign Defendants.

**I.      Legal Standard.**

When considering a motion to dismiss for lack of personal jurisdiction, a court has discretion to utilize three procedural alternatives. It may: (1) decide the motion on the basis of affidavits alone; (2) permit discovery to aid it in deciding the motion; or (3) conduct an evidentiary hearing. *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991) (citation omitted). A court's decision whether to grant discovery before ruling upon a 12(b)(6) motion is discretionary. *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005).

Plaintiffs bear the burden of demonstrating facts that support a finding of personal jurisdiction over the defendants. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012). The Court must consider the allegations in the pleadings and documentary evidence in a light most favorable to the plaintiffs, and plaintiffs need only make a *prima facie* showing of jurisdiction. *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Furthermore, courts are instructed "to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Carr v. DJO Inc.*, 2012 WL 3257666 at *3 (S.D. Ohio Aug. 8, 2012) (citing *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3rd Cir. 2003)). When the evidence relevant to the question of jurisdiction is too "sketchy" for the Court to make an informed ruling, limited discovery relating to jurisdiction should be allowed. *C.B. Fleet Co., Inc. v. Colony Specialty Ins. Co.*, 2011 WL 13131001 at *2 (N.D. Ohio May 10, 2011).

**II.     The Parties' Positions.**

In letters dated March 4, 2019, the Foreign Defendants submitted arguments in opposition to Plaintiffs' request to the take jurisdictional discovery.[1] Generally, Defendants argue Plaintiffs have not proved that each Foreign Defendant, rather than its subsidiaries, directed any activities toward Ohio, nor engaged in any case-linked conduct in Ohio. Defendants insist Plaintiffs have not presented a colorable basis for specific jurisdiction over each Defendant.

Plaintiffs respond with several arguments why jurisdictional discovery is necessary and assert that they have provided facts, viewed in a light favorable to Plaintiffs, sufficient to support a *prima facie* showing that limited jurisdictional discovery should be allowed. These arguments are briefly outlined below.

**A. Allergan**

Plaintiffs argue that further jurisdictional discovery is required into the extent of Allergan's business in Ohio with respect to the sale of opioids, pointing to business records indicating that Allergan: is traded on the New York Stock Exchange ("NYSE"); portrays itself as having administrative headquarters based in New Jersey; has filed forms with the Securities and Exchange Commission ("SEC") informing investors that it earns revenue from the sale of opioids and the "U.S. remained its largest commercial market;" has a "major manufacturing site" in Ohio; and has employees overseeing opioid issues who believed they worked for Allergan and not its subsidiaries.

Plaintiffs also rely on legal opinions from two other courts that denied Allergan's motions to dismiss for lack of personal jurisdiction in similar opioid-related cases. Specifically,

---

[1] On March 11, 2019, the defendants submitted additional letters in opposition, after receipt of plaintiffs' letter-brief submitted on March 7, 2019.

3

in *Dewine v. Purdue Pharma L.P.,* 2018 WL 4080052 (Ohio Ct. C.P. Ross Cty. Aug. 22, 2018), the court found the State had "established a prima facie case for jurisdiction" over Allergan under Ohio's long-arm statute, and that Allergan "acted and caused consequences in the State of Ohio." *Id.* at *6-7. And in *Chicago v. Purdue Pharma L.P.*, 2015 WL 2208423 (N.D. Ill. May 8, 2015), a federal court found the plaintiff established a prima facie case of jurisdiction over Allergan predecessor, Actavis plc, based upon a successor-in-interest theory. *Id.* at *7.

The sum of this initial evidence shows Plaintiffs' claims against Allergan are not clearly frivolous. Accordingly, the Special Master concludes Plaintiffs should be allowed to pursue jurisdictional discovery from Allergan.

**B. Teva**

Plaintiffs rely again upon *Dewine* to argue that jurisdictional discovery with respect to Teva is also appropriate, as the *Dewine* court found that Teva is subject to jurisdiction in Ohio. *Dewine*, 2018 WL 4080052 at *7-8. Plaintiffs also note that Teva's 2016 Social Impact Report shows that Teva had 10,855 employees in the U.S. and Canada.[2] In addition, Plaintiffs allege that documentary evidence shows Teva launched generic drugs in the U.S. as recently as last month, despite Teva's assertion that it does not transact business in the U.S.[3]

Again, this initial evidence shows Plaintiffs' claims against Allergan are not clearly frivolous. Accordingly, the Special Master concludes Plaintiffs should be allowed to pursue jurisdictional discovery from Teva.

---

[2] The *Dewine* court relied upon this 2016 Impact Report as one basis for finding jurisdiction over Teva. *Id.* at *8.

[3] Plaintiffs concede these generic drugs were not opioids, but this evidence suggests Teva does sell drugs in U.S. markets.

**C. Mallinckrodt**

Plaintiffs assert that SEC documentation shows Mallinckrodt reported: "we manufacture controlled substances under DEA quota restrictions and in calendar 2017 we estimated that we received approximately 36% of the total DEA quota provided to the U.S. market." (Exhibit 24, p. 8).[4]  Mallinckrodt indicated in its March 11, 2019 letter to the Special Master that it has already provided responses to Plaintiffs' discovery requests regarding certain jurisdiction-related issues only," and asserted that no other responses should be required.

**III.   Scope of Jurisdictional Discovery**

It is within the court's discretion to permit and control the scope of jurisdictional discovery.  *Theunissen* 935 F.2d at 1465; *Intera Corp. v. Henderson*, 428 F.3d at 614 n.7. The undersigned agrees that Plaintiffs have raised sufficient factual issues regarding each of the Foreign Defendants' activity in Ohio to support Plaintiffs' request for limited jurisdictional discovery. Thus, Plaintiffs may pursue discovery from each of the Foreign Defendants regarding: (1) the extent to which they had direct contacts with Ohio, directed any activities toward Ohio, or engaged in any case-linked conduct in Ohio; and (2) their relationships with U.S. subsidiaries as an alter ego or agent.[5]  The allowed scope of this discovery is described below.

---

[4] Plaintiffs also indicate documents show that Mallinckrodt reported 90% of its sales and 93% of manufacturing costs are conducted in the U.S., and that Mallinckrodt marketed itself as "the largest U.S. supplier of opioid pain medications."

[5] *See Anwar v. Dow Chem. Co.*, 876 F.3d 841, 849 (6th Cir. 2017) (setting out seven factors a Court should consider when determining whether a parent company is subject to jurisdiction).

**A. Mallinckrodt.**

Mallinckrodt reports in its March 29, 2019 status letter to the undersigned that it has reached full agreement with Plaintiffs regarding the scope of jurisdictional discovery. With thanks to the parties for their conciliatory efforts, Mallinckrodt and Plaintiffs are directed to conduct this agreed-upon jurisdictional discovery within the timeline set forth in Section IV below.

**B. Allergan.**

**1. Document Production**.

Allergan and Plaintiffs report they have reached impasse regarding production of documents relevant to jurisdiction. Allergan states that "no further document discovery is necessary or appropriate." Email from T. Knapp to Special Master Cohen (March 18, 2019, 5:09pm). Plaintiffs respond that Allergan had earlier agreed to produce documents in response to at least eight requests, before changing course and refusing to produce any documents. According to T. Knapp's February 13, 2019 email to A. Baig, this does in fact appear to be the case.

As stated above, Mallinckrodt and Plaintiffs were able to reach an agreement regarding, among other things, production of documents. The undersigned finds that the scope of Mallinckrodt's agreement with Plaintiffs is reasonable and equally relevant to Allergan's motion to dismiss. The undersigned further finds, having reviewed the eight requests to which Allergan initially agreed, that the scope of those requests and the scope of Mallinckrodt's agreement with Plaintiffs is similar. Therefore, Allergan is hereby directed to produce, to the extent such documents exist and have not already been produced, non-privileged documents related to the following categories:

(1) corporate organizational charts;

(2) tax returns including all schedules and attachments;

(3) policies regarding branding, marketing, sales, promotion, distribution, regulatory affairs, and pharmacovigilance, to the extent they apply to opioids;

(4) policies regarding accounting;

(5) policies regarding corporate management to the extent such policies bear on opioid-related subsidiaries; and

(6) annual reports.[6]

**2. Interrogatories**

The parties' status letters indicate that Allergan and Plaintiffs have agreed that Allergan will respond to Plaintiffs' Interrogatories Nos. 2-5, 8, 11-13, 22, 24-28.[7]  But the parties report they have again reached impasse regarding Interrogatories Nos. 6 and 19.

Interrogatory No. 6 asks Allergan to:

Identify all Persons who were involved in conducting any due diligence with regard to Your sale of the Actavis Generic Business in 2016, including Your employees, vendors and other third parties that conducted or assisted in conducting any due diligence.

Plaintiffs' First Set of [Jurisdictional] Interrogatories to Allergan.  Allergan insists this interrogatory "has nothing to do with the 'extent of Allergan plc's business in Ohio with respect to the sale of opioids.'" Email from T. Knapp to Special Master Cohen (March 18, 2019, 5:09pm). Plaintiffs respond that Interrogatory No. 6 "pertains to the parent corporation's

---

[6] These six categories of documents were agreed to by Plaintiffs and Mallinckrodt.

[7] There is some discrepancy between these fourteen interrogatories identified by Plaintiffs and those expressly agreed to by Allergan in Timothy Knapp's February 13, 2019 email to Aelish Baig. In Mr. Knapp's email, he indicated Allergan would agree to Interrogatories 2-4, 11-13, 22-26, and 28 (twelve interrogatories). However, in its status letter to the undersigned, Allergan states it provisionally identified fourteen interrogatories to which it would respond. The two interrogatories Allergan continues to object to (Nos. 6 and 19) are discussed in the text.  The Court assumes that the three interrogatories absent from Mr. Knapp's email but reported by Plaintiffs in their status report (Nos. 5, 8, and 27) and the one included by Mr. Knapp but excluded by Plaintiffs (No. 23) have been negotiated and agreed to by the parties. Thus, the Court assumes the fourteen interrogatories identified by Plaintiffs in their status letter are the same fourteen interrogatories Allergan stated it could answer.

7

involvement in the due diligence conducted for the sale of Allergan's generics business to Teva in 2016," and "this information is directly relevant to the parent corporation's control over the generics opioid business that it sold." Email from A. Baig to Special Master Cohen (March 18, 2019, 5:27pm).

Although Plaintiffs correctly identify that "control" is one of the *Anwar* factors, the "control" factor is expressly meant to be a consideration of the extent to which a corporation may be "exerting control over the *daily affairs* of another corporation." *Anwar*, 876 F.3d at 849 (quoting *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 363 (6th Cir. 2008)) (emphasis added). Plaintiffs have not convinced the undersigned that Interrogatory No. 6 is sufficiently connected to Allergan's control over its subsidiaries, and even less so with respect to its control over the daily affairs of its subsidiaries. This is especially true considering the broader interrogatories regarding Allergan's subsidiaries to which Allergan has agreed to respond. Therefore, Allergan need not respond to Interrogatory No. 6.

Regarding Interrogatory No. 19, Allergan's main objection is that it is over-broad. Interrogatory No. 19 asks Allergan to identify various reports given to Allergan's Board regarding "generic or name-brand pharmaceutical drug products," not just its Opioid Products. The undersigned agrees that, as written, Interrogatory No. 19 is over-broad. Accordingly, Allergan is directed to respond to Interrogatory No. 19, but only to the extent the requested reports pertain to Allergan's Opioid Products. In sum, Allergan must respond to Interrogatories Nos. 2-5, 8, 11-13, 22, 24-28 as previously agreed to, and to No. 19 regarding its Opioid Products only.

**C. Teva.**

**1. Document Production**.

As with Allergan, Plaintiffs were unable to reach an agreement with Teva regarding the production of documents for jurisdictional discovery. Therefore, like Allergan (and for the same reasons), Teva is hereby directed to produce, to the extent such documents exist and have not already been produced, non-privileged documents related to the following categories:

(1) corporate organizational charts;

(2) tax returns including all schedules and attachments;

(3) policies regarding branding, marketing, sales, promotion, distribution, regulatory affairs, pharmacovigilance to the extent they apply to opioids;

(4) policies regarding accounting;

(5) policies regarding corporate management to the extent such policies bear on opioid-related subsidiaries; and

(6) annual reports.

**2. 30(b)(6) Deposition Topics**.

Teva has agreed, at least in principle, to one Rule 30(b)(6) deposition, stating its belief that such a deposition, "limited to topics that are relevant to whether there is a basis to attribute the conduct of Teva Ltd.'s United States subsidiaries to Teva Ltd," is "the most efficient and reasonable path forward" regarding jurisdictional discovery. Email from S. Edelman to M. Crawford (March 17, 2019, 8:06pm), forwarded to Special Master Cohen (March 18, 2019, 2:15pm). In return, Plaintiffs have agreed to defer, at least temporarily, receiving responses to their proposed interrogatories. *See* Letter from M. Crawford to Special Master Cohen at 1 (March 18, 2019). What remains disputed for the undersigned to determine is: (1) allowed deposition topics, and (2) where the deposition will take place.

Regarding deposition topics, Plaintiffs have agreed to limit themselves to Topics Nos. 1-9, 15, 17, 19-21, and, for 29, to opioids only. Teva has not expressly agreed to any specific Topics, only stating that it is willing to give a 30(b)(6) deposition covering the seven *Anwar*

factors. Thus, the undersigned must decide which deposition topics provided by Plaintiffs bear on the *Anwar* factors.

The following deposition topics—provided and subsequently limited by Plaintiffs—are sufficiently tailored to the specific *Anwar* factors that Teva can give meaningful jurisdictional deposition testimony on them: Deposition Topics Nos. 1, 3-9, 15, 17, and 19-21. Regarding Deposition Topic No. 21, it must be narrowed to "plans between TEVA, LTD. and its direct and indirect subsidiaries" in the same manner as Topic. No. 19. *See id., Attachment 1 at 9*.

As to the matter of where this deposition will take place, the undersigned concludes Teva shall produce within the United States a 30(b)(6) deponent of its choosing who has personal knowledge and is capable of responding fully to Plaintiffs' Deposition Topics as limited above.

**IV.     Timing of Jurisdictional Discovery.**

The Foreign Defendants shall have 28 days (May 1, 2019) from the entry of this ruling to respond to interrogatories and produce documents in accordance with Section III above. Plaintiffs then have 21 days (May 22, 2019) within which to schedule and take the deposition of Teva. Finally, Plaintiffs then have 14 days (June 5, 2019) to submit responses in opposition to the Foreign Defendants' motions to dismiss.

Any party choosing to object to any aspect of this Ruling must do so on or before 12:00 p.m. on April 10, 2019.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: April 3, 2019**