## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: | ) | |
| *"Track One Cases"* | ) | |
| | ) | DISCOVERY RULING NO. 19 |
| | ) | REGARDING DR. PORTENOY |
| | ) | |

One of the defendants originally named in many of the cases that are consolidated in this MDL, including the Track One cases set for trial this coming October, is Dr. Russell Portenoy. Portenoy is characterized in these complaints as a "Key Opinion Leader" who, essentially, acted as a paid shill for the manufacturer defendants by promoting the use of prescription opioids while downplaying their risks.

On January 7 and 8, 2019, Portenoy received two, coordinated deposition subpoenae – one from MDL plaintiffs and one from plaintiffs in a related Oklahoma state court opioid case. On January 18, 2019, MDL defense counsel contacted Portenoy's attorney to discuss deposition logistics. Defense counsel learned for the first time that Portenoy had entered into a "Settlement and Consulting Agreement" with the Track One plaintiffs ten months earlier, on March 5, 2018. This information obviously reflected a meaningful change in the nature of Plaintiffs' relationship with Portenoy. Defendants immediately contacted the undersigned, seeking to: (1) postpone the MDL deposition of Portenoy, and (2) compel production of any other documents related to Portenoy's Settlement and Consulting Agreement and certain other aspects of his relationship with plaintiffs.

The Special Master granted both requests, although Portenoy's Oklahoma state-court deposition went forward as scheduled on January 24, 2019.

The documents subsequently produced by plaintiffs revealed that, not only had they failed to inform defendants of their Settlement and Consulting Agreement with Portenoy for 10 months, but they had discussed the withholding of this document with counsel for the Oklahoma state-court plaintiffs.  And plaintiffs' failure to produce Portenoy's Settlement and Consulting Agreement occurred despite discovery requests directly on point.  For example, manufacturer defendants' request for production no. 19, issued four months after plaintiffs and Portenoy entered into the Settlement and Consulting Agreement (July 3, 2018), asked for "Any and all agreements, including tolling agreements, settlement agreements, or releases, with any . . . HCP [Health Care Practitioner] regarding opioid issues in Your territory or the allegations in Your Second Amended Complaint." Plaintiffs responded that "no such documents exist," and reiterated this statement numerous times in subsequent weekly discovery production updates.  This response was untrue, and plaintiffs only produced the Portenoy Agreement after defendants made their emergency request to cancel the MDL deposition.[1]

On March 22, 2019, defendants submitted to the undersigned a letter-motion asserting that plaintiffs had engaged in misconduct and asking for an order "precluding Plaintiffs from obtaining

---

[1]  Plaintiffs, however, ***did*** produce to defendants during discovery: (1) documents that Portenoy had given to plaintiffs (given by Portenoy on August 3, 2018, produced to defendants September 21, 2018), and (2) a declaration Portenoy gave to plaintiffs (given by Portenoy on December 14, 2018, produced to defendants January 9, 2019).  Plaintiffs assert that production of Portenoy's documents and declaration, along with the fact that plaintiffs had dismissed all of their claims against Portenoy in March of 2018, gave defendants at least some notice that Portenoy was cooperating with plaintiffs.  Defendants disagree, assert any such notice was not timely in any event, and also contend that, when plaintiffs produced Portenoy's documents and declaration, they did so in a manner intended to keep defendants from identifying them.

2

deposition testimony or relying on any prior written or oral testimony from Dr. Portenoy in Track One and all other MDL proceedings . . . ."  Letter from Mark Cheffo to Special Master at 2 (Mar. 22, 2019) (attached to this *Ruling* as exhibit 1); *see also* exhibits to Cheffo's letter (attached to this *Ruling* as exhibit 2).  Defendants' letter recited in detail other aspects of plaintiffs' changing relationship with Portenoy, and their failures to disclose this relationship in their discovery responses, which the Special Master does not recapitulate here.  Plaintiffs filed a letter in response, insisting they "did not intentionally withhold information about Dr. Portenoy, nor withhold key facts," and that "any belated disclosure was inadvertent and harmless."  Letter from Hunter Shkolnik to Special Master at 1 (Apr. 2, 2019) (attached as exhibit 3).

The Special Master issued an informal ruling concluding that defendants' motion for sanctions was well-taken because "[p]laintiffs' failures over many months to disclose (despite requests directly on point) the dramatically-changed nature of their relationship with Dr. Portenoy, including that he made a proffer and entered into a cooperation agreement with Plaintiffs over a year ago, is unacceptable and was not harmless."  Email from Special Master to counsel (Apr. 4, 2019, 2:31pm).  Accordingly, the Special Master ruled as follows:

> Plaintiffs may not: (1) obtain deposition testimony from Dr. Portenoy in the Track One cases; nor (2) rely in Track One cases (at trial or in support of any motion) upon any prior written or oral testimony from Dr. Portenoy, including the Oklahoma deposition.
>
> I further rule that Plaintiffs are ***not*** precluded from: (1) obtaining or using testimony from Dr. Portenoy in any other MDL case that may be set for trial, or (2) relying in Track One cases, or any other MDL cases, on documents produced by Dr. Portenoy that were originally created before the date the MDL was assigned to the Court (December 12, 2017).

3

*Id.* Plaintiffs then timely requested this ruling be formalized.[2]  The Special Master fills this request with this *Ruling*.

The Special Master offers the following explanation.  The rule applicable to the circumstances presented is: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Plaintiffs insist their failure to timely produce Portenoy's Settlement and Consulting Agreement was substantially justified because it was "inadvertent, not intentional." Shkolnik letter at 7.  Plaintiffs explain, essentially, that the left hand did not know what the right hand was doing: " In this massive and fast-paced litigation, Plaintiffs, like Defendants, have multiple teams working on different aspects of this litigation.  Lawyers working on affirmative discovery were distinct from lawyers working on defensive discovery responses.  Plaintiffs' settlement agreement with Dr. Portenoy was negotiated by MDL counsel, and the agreement was not contained in the files of any of the Plaintiff municipalities from which document productions were gathered." *Id.*

The Special Master rejects this explanation because other facts show non-production was not a simple mistake.  *See* Cheffo letter at 11 (citing to exhibits that show "Summit County and Akron's responses are signed by the same counsel [Linda Singer] who principally drafted Dr. Portenoy's proffer agreement and corresponded with counsel for Dr. Portenoy regarding his proffer session.");

---

[2] *See Appointment Order* (docket no. 69) at 5 ("If a Special Master issues an informal ruling or order that is not on the record (such as the resolution of a discovery dispute) either orally, via email, or through other writing, and a party wishes to object to that ruling or order, the party shall ask the Special Master to formalize the ruling or order by filing it on the docket or appearing before a court reporter.").

*id.* exhibit 9 (at bates no. ending in -4430) (email thread between MDL counsel and Oklahoma counsel discussing whether Portenoy's declaration would be provided to defendants).

Plaintiffs also assert the late production of Portenoy's Settlement and Consulting Agreement was harmless.  But the fact that Portenoy – who was described in plaintiffs' complaints as "a spokesperson for Purdue" and "a critical component of the Marketing Defendants' control over their Front Groups" – is now cooperating with plaintiffs represents a clear change in circumstances, which defendants had ample reason to explore in discovery.  Production of the Agreement only after fact discovery was virtually over was not harmless, as it prevented defendants from "seeking even the most basic discovery from Dr. Portenoy and gave Plaintiffs unfettered access to him throughout the entirety of the fact discovery period."  Cheffo letter at. 3.  *See Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (setting out five factors to determine whether a sanction is appropriate under Rule 37, a balancing of which in this case preponderates against plaintiffs).

This leaves the question of what the appropriate sanction should be.  Defendants ask that Portenoy be precluded from offering testimony in ***any*** MDL trial.  In contrast, plaintiffs state that, if any sanction is allowed at all, "the appropriate remedy is making the deponent available for deposition prior to trial at the other party's expense."  Shkolnik letter at 10 n.14 (quoting *Zoltek Corp. v. U.S.*, 71 Fed. Cl. 160, 171 (Cl. Ct. 2006)).  But there is a middle ground that is more solid.

The Special Master first concludes that excluding Portenoy's testimony from ***every*** MDL trial is too severe and unnecessary.  In the next MDL trial, defendants can depose Portenoy and also ask other witnesses about him, so there will no longer be any harm stemming from the late disclosure that occurred in ***this*** case.

The Special Master also concludes (hesitantly) that simply allowing defendants to depose

Portenoy at this late date, at plaintiffs' expense, is not sanction enough.[3]  Portenoy's importance as a witness, and plaintiffs' repeated failure to disclose his cooperation during months of fact discovery, suggests stronger medicine than a monetary fine is needed.  Exclusion of Portenoy's testimony from the Track One case, but not other MDL cases, is a fair result.

Accordingly, the Special Master concludes the appropriate sanction is the one expressed in the email ruling quoted above on page 3.

Given the substantial letter briefing (which is attached to this *Ruling*) already submitted on the topics addressed herein, if any party chooses to object to any aspect of this *Ruling*, it must do so on or before 5:00 p.m EST on April 15, 2019.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: April 5, 2019**

---

[3] The Special Master is hesitant because "[e]xclusion of evidence is an extreme sanction and should be applied only when lesser sanctions are inadequate." *Zoltek*, 71 Fed. Cl. at 171; *see also Trustee of Michigan Reg'l Council of Carpenters Employee Benefits Fund v. Carpentry Contractors, Inc.*, 203 F.R.D. 247, 253 (E.D. Mich. 2001) ("The extreme sanction of exclusion, however, should only be used where lesser sanctions would be ineffective.") (quoting *Bellinger v. Deere & Co.*, 881 F.Supp. 813, 817 (N.D.N.Y. 1995).  Moreover, the Special Master is not entirely comfortable choosing an option that: (i) keeps evidence from the finder of fact, and (ii) imposes **counsel's** failures on the Track One plaintiffs (especially to the extent it is Summit County's counsel's failures being imposed on Cuyahoga County).  *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 407 (1993) (noting it can "be unfair and inequitable to visit the sins of the lawyer on the client").  Indeed, it is within the realm of reasonableness to instead allow defendants to depose Portenoy and require plaintiffs to pay for all costs associated with that deposition.  In the final analysis, however, the Special Master believes the chosen sanction is equitable.