## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION** | **MDL 2804** |
| **OPIATE LITIGATION** | **Case No. 17-md-2804** |
| *This document relates to:* | **Hon. Dan Aaron Polster** |
| **All Cases** | |

## BRIEF OF PLAINTIFFS' EXECUTIVE COMMITTEE IN RESPONSE TO DEFENDANTS' BRIEF CONCERNING STATE NUISANCE LAW

In its order issued on December 31, 2018, this Court directed the parties to submit simultaneous briefing "addressing the viability of statutory and/or common law claims for public nuisance in each State and territory where any MDL plaintiff is located." Doc. #1218. The same order directed the parties to respond to the 50-state nuisance briefs submitted by the other side. The PEC herein responds to the arguments raised by Defendants in their Briefing on Viability of Public Nuisance Claims Nationwide, Doc. #1404 (filed March 1, 2019).

Defendants assert, untenably, that "the public nuisance claims alleged by Plaintiffs in this MDL are not viable in any jurisdiction." Doc. #1404 at 1. They make this claim despite the fact that, at the time of their filing, courts in at least eight states had already upheld public nuisance claims brought against opioid manufacturers and distributors. *See* Doc. #1406 (Pls.' Br. Concerning State Nuisance Law), Ex. 7 (listing cases). Defendants simply ignored these decisions in their submission to this Court. Since that time, courts interpreting the law in another four states have rejected Defendants' motions to dismiss public nuisance claims in opioid litigation. *See* Part I, *infra.*

Defendants argue that this Court is foreclosed from recognizing Plaintiffs' public nuisance claims under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938), based on the faulty premise that Plaintiffs' claims represent an unwarranted expansion of state nuisance law. As Plaintiffs explained in their earlier brief, however, their public nuisance claims fall squarely within the black-letter parameters for this tort set forth in Restatement Second of Torts § 821B. Doc. #1406 at 3-4. Decisions in forty separate jurisdictions indicate that courts in those states and territories follow and are guided by Restatement § 821B in construing their cause of action for public nuisance, while at least six more jurisdictions have codified statutory causes of action for public nuisance that largely parallel the Restatement approach. *Id.* at 4-8. Yet Defendants largely ignore Restatement § 821B in favor of their own, self-serving definition of what the "historic, common-law understanding of public nuisance" is, or should be. Doc. #1404 at 10.[1] Under a proper application of *Erie,* such as that employed earlier this week by Magistrate Judge Ruiz in recommending against dismissal of public nuisance claims in two tribal cases, there is a more than sufficient basis for this Court to uphold public nuisance causes of action in virtually every state. *See* Part II, *infra.*

Finally, Defendants argue that Plaintiffs cannot satisfy the elements of a public nuisance cause of action, including what they deem to be requirements that the nuisance not arise from use of a product and must be tied to real property. Doc. #1404 at 10-23. Their arguments, however, not only misstate the elements of black-letter public nuisance law, but also rest on a blatant mischaracterization of Plaintiffs' public nuisance causes of action, as courts in a number of states, as well as Magistrate Judge Ruiz, have already recognized. Plaintiffs' actual public nuisance

---

[1] While they are content to ignore the Second Restatement, Defendants make much of language in a tentative draft of the Third Restatement, *id.* at 13, even though that draft has not yet been approved by the ALI, let alone been adopted by any state court.

2

claims fall well within the boundaries for this tort, and should be upheld in virtually every jurisdiction. *See* Part III, *infra*.

I.    **Since the First Round of Briefing, Four More Rulings Have Upheld Public Nuisance Claims Against Opioids Manufacturers and Distributors Under State Law.**

In Plaintiffs' opening brief surveying the law of public nuisance, we identified eight separate jurisdictions in which courts had upheld public nuisance claims against opioids manufacturers and distributors (as well as three rulings that had gone the other way). *See* Doc. #1406, Ex. 7. Since that time, Plaintiffs have learned of four additional rulings in favor of such public nuisance claims, under the laws of Tennessee, Vermont, Oklahoma, and Montana. During the same period, no court has rejected such a claim.

A state circuit court in Tennessee denied Purdue Pharma's motion to dismiss, *inter alia*, the State of Tennessee's public nuisance claim in *State v. Purdue Pharma L.P.*, Case No. 1-173-18 (Tenn. Cir. Ct. Feb. 22, 2019) (attached hereto as Ex. 1). Specifically, the Tennessee court rejected Purdue's arguments that the State had not alleged interference with a public right, had failed to adequately plead causation, and that the claim was barred by the derivative injury rule. With respect to causation, the Court found that the Complaint was "replete with specific examples of behavior on the part of Purdue that . . . would establish interference with the health, comfort, and safety of the citizens of the State of Tennessee." *Id.* at 10. Further, with respect to the intervening acts of third parties, including prescribers and those who sold opioids illegally, the Court noted that "the Complaint alleges that the foregoing acts were foreseeable and made possible by Purdue's acts" and affirmed that an "intervening act will not exculpate the original wrongdoer unless it appears that the negligent intervening act could not have been reasonable anticipated." *Id.* at 11. The Court rejected Purdue's derivative injury argument because "the Complaint seeks

damages for injuries to the State, not for the injuries of those who have become addicted to opioids." *Id.* Finally, the Tennessee court rejected Purdue's argument that the state's claim did not involve interference with a public right: "Purdue's argument takes too narrow a view of public nuisance. . . . [A] public nuisance can encompass virtually anything that endangers life or health. . . . The Complaint adequately states a claim for public nuisance." *Id.* at 12-13.

Similarly, a state court in Vermont upheld the State's public nuisance claim against Purdue in *State v. Purdue Pharma L.P.,* Docket No. 757-9-18 Cncv (Vt. Super. Ct. Mar. 19, 2019) (attached as Ex. 2). The Court rejected Purdue's argument that the State had failed to allege interference with a public right:

> The Restatement notes as an example of a public nuisance "conduct [that] involves a significant interference with the public health," and offers as an example the spread of smallpox, risking an epidemic. Restatement (Second) of Torts § 821B and cmt. g. It cannot seriously be argued that the impacts of opiate addiction in Vermont have not affected the general public. If the State can ultimately prove its allegations as to Purdue's responsibility for the widespread nature of this scourge, it will meet the "public" aspect of such a nuisance claim."

*Id.* at 6. The Vermont court also rejected Purdue's arguments that the public nuisance claim should be dismissed because it did not relate to land use, *id.* at 5-6, and because the State had insufficiently pled causation:

> [T]he complaint sufficiently alleges causation. . . . It alleges, for example, that Purdue's misrepresentations resulted in a dramatic increase in prescriptions, that those led to increased addiction, that the majority of opioid deaths in Vermont are causally linked to opioid prescriptions, that Purdue created or was a substantial factor in creating the alleged public nuisance, and that all of this was foreseeable to Purdue.

*Id.* at 6.

Finally, earlier this week, Magistrate Judge Ruiz issued his Report and Recommendation in two separate tribal cases in this MDL. *See* Doc. #1499 (*The Muscogee (Creek) Nation v. Purdue Pharma L.P.*, Case No. 1:18-op-45459, R. & R. (Apr. 1, 2019); Doc. #1500 (*The Blackfeet Tribe*

*of the Blackfeet Indian Reservation. v. Amerisource Bergen Drug Corp.,* Case No. 1:18-op-45749, R. & R. (Apr. 1, 2019). Magistrate Judge Ruiz recommended denial of motions to dismiss the tribes' public nuisance claims under the law of both Oklahoma and Montana. Doc. #1499 at 50-62; Doc. #1500 at 17-34. In Oklahoma, Magistrate Judge Ruiz rejected Defendants' arguments that "Oklahoma law limits actionable nuisance claims to those that relate to land and real property, and therefore does not recognize claims relating to the manufacture and sale of alleged harmful products," as well as arguments that Plaintiffs had failed to allege interference with a public right, proximate causation, and control over the instrumentality of the nuisance. Doc. #1499 at 51.[2] Similarly, in Montana, Magistrate Judge Ruiz upheld the tribe's public nuisance cause of action against Defendants' arguments that, *inter alia,* Montana limits public nuisance claims to those based on interference with land or real property rights, that such claims do not extend to causes of action based on "products liability", and that the tribe had failed to plead interference with a public right.

With these four rulings, courts interpreting the law of at least twelve separate jurisdictions have now expressly upheld public nuisance causes of action against manufacturers and distributors of opioids for their roles in giving rise to the opioids crisis. Thus, if there is any "doctrinal trend[]," *Rousey v. United States*, 115 F.3d 394, 397 (6th Cir. 1997), or "majority rule," *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 636 (6th Cir. 2018) (citation omitted), that should guide this Court's interpretation of state law, it is strongly in favor of recognizing the viability of such public nuisance claims.

---

[2] Magistrate Judge Ruiz also took note of an earlier Oklahoma state court ruling that had denied defendant opioid manufacturers' motion to dismiss a public nuisance claim based on their alleged fraudulent marketing practices. *Id.* at 54-55 (citing *State v. Purdue Pharma L.P.,* No. CJ-2017-816 (Okla. Dist. Ct. Dec. 6, 2017)).

## II.   Contrary to Defendants' Arguments, the *Erie* Doctrine Points Strongly in Favor of Recognizing the Viability of Public Nuisance Claims Under State Law.

Defendants argue that, in states without clear appellate authority supporting the viability of public nuisance causes of action in cases closely analogous to the present litigation, the *Erie* doctrine requires a federal court to be extremely cautious about adopting an innovative theory of state law that expands liability. Doc. #1404 at 11. But that argument grossly misrepresents the issue before the Court.

As Plaintiffs explained in their opening brief, public nuisance case law in more than three-quarters of the states makes clear that state courts will be guided by Restatement § 821B in their interpretation of their state's public nuisance cause of action. *See* Doc. #1406 at 4-5. And, as both the Court and Magistrate Judge Ruiz recognized in denying Defendants' motions to dismiss Summit County's public nuisance claim under Ohio law (which follows the Restatement, *see City of Cincinnati v. Beretta,* 95 Ohio St. 3d 416, 768 N.E.2d 1136 (2002)), the conduct at issue in this MDL falls well within the bounds of Section 821B's definition of a public nuisance.[3] Plaintiffs have alleged that Defendants' conduct significantly and unreasonably interferes with public health, public safety, public peace, and public comfort; that at least some of the conduct at issue is prescribed by statutes and regulations; and that Defendants' conduct is both continuing and has

---

[3] Section 821B provides:

(1) A public nuisance is an unreasonable interference with a right common to the general public.
(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
    (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
    (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
    (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

produced long-lasting, significant effects upon these public rights. Thus, Plaintiffs assert, Defendants conduct meets the definition of a public nuisance set forth in Restatement § 821B.

In his recent Reports and Recommendations in the Muscogee and Blackfeet cases, Magistrate Judge Ruiz articulated the correct test for construing state law. In the absence of clear state supreme court authority on the scope of the public nuisance cause of action, the role of the federal court is "to predict [the state supreme court's] likely interpretation, guided by sources that include 'the decisions (or dicta) of the [State] Supreme Court in analogous cases, pronouncements from other [of the State's] courts, restatements of law, commentaries, and decisions from other jurisdictions.'" Doc. #1499 at 53 (quoting *State Auto Prop. & Cas. Ins. Co. v. Hargis,* 785 F.3d 189, 195 (6th Cir. 2015)); *see also* Doc. #1500 at 20. Here, the clear language of the Restatement, and the decisions in forty jurisdictions looking to Restatement § 821B for guidance regarding the proper interpretation of the public nuisance cause of action, point strongly toward the conclusion that courts in virtually every jurisdiction would uphold a cause of action for public nuisance under these circumstances. This conclusion is reinforced by the unmistakable trend among state court decisions across the country denying motions to dismiss plaintiffs' public nuisance claims in opioids litigation.

Defendants attempt to combat this point by citing to a tentative draft of a provision in the Third Restatement of Torts, which they claim "disapproves" of public nuisance liability under these circumstances. Doc. #1404 at 13 (citing Restatement (Third) of Torts: Liability for Economic Harm § 8, cmt. g (Tentative Draft No. 2, 2014)). The Tentative Draft, however, expressly notes that: "[i]n addition to the common-law claims recognized here, public officials may bring civil . . . . actions against a defendant who creates a public nuisance. . . . The definition of 'public nuisance' for those purposes . . . tends to be considerably broader than the common-law definition recognized

7

by this Section as a basis for a *private* suit." Restatement (Third) of Torts: Liability for Economic Harm § 8, cmt. a (emphasis added). In any event, as the Tentative Draft makes clear, "this Draft has not been considered by the members of The American Law Institute and does not represent the position of the Institute on any of the issues with which it deals." *Id.*, n. a. More significantly, unlike § 821B, which has been cited approvingly in forty jurisdictions, the tentative draft of § 8 has not been endorsed or adopted by the courts in any state.[4]

### III. The Arguments Advanced By Defendants Concerning Specific Elements of a Public Nuisance Cause of Action Rest on Mischaracterizations of Plaintiffs' Claims and Have Been Rejected By The Courts In Opioids Litigation.

Finally, Defendants offer four substantive arguments regarding the scope of public nuisance liability that they assert cannot be met here: 1) that Plaintiffs cannot establish interference with a "public right," Doc. #1404 at 17-21; 2) that public nuisance liability should be limited to claims involving land and not to injuries caused by products, *id.* at 5-10, 14-15; 3) that Plaintiffs cannot establish proximate cause, *id.* at 21-22; and 4) that Plaintiffs cannot establish that Defendants maintained control over the instrumentality of the nuisance, *id.* at 22-24.[5] These arguments largely rest on mischaracterizations of Plaintiffs' public nuisance claims and have been consistently rejected by the courts.

---

[4] Neither of the cases cited by Defendants to suggest that state courts will follow the reasoning in Section 8, *Sullivan v. Pulte Home Corp.*, 306 P.3d 1 (Ariz. 2013) (citing § 2 of the tentative draft restatement); *Nat'l. Roofing, Inc. v. Allstate Steel, Inc.*, 366 P.3d 276 (N.M. Ct. App. 2015) (citing §§ 1 & 7), actually cite that particular section, let alone indicate their approval of its reasoning.

[5] Defendants also make passing reference to state statutes of limitation and restrictions on nuisance remedies as "barriers" to Plaintiffs' public nuisance claims. Doc. #1404 at 24-26. But, as even Defendants recognize, neither of these "barriers" presents a total bar to Plaintiffs' public nuisance claims and both turn on "particularized legal and factual findings" specific to "each claimant in each jurisdiction." *Id.* at 26. As such, Plaintiffs view them as beyond the scope of this survey briefing; nor do we understand Defendants to disagree with that conclusion.

### a. Public Right

Restatement § 821B identifies circumstances that constitute an unreasonable interference with a public right to include, *inter alia*, "conduct [that] involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience." Restatement (Second) of Torts § 821B(2)(a). And Plaintiffs have alleged that Defendants' conduct in marketing and distributing opioids significantly interfered with each of these aspects of public life in their communities. Courts have, therefore, had no difficulty concluding that Plaintiffs have properly alleged an unreasonable interference with a public right. *See, e.g.*, Ex. 1 (*State v. Purdue Pharma L.P.*, at 10) (finding that the Complaint was "replete with specific examples of behavior on the part of Purdue that . . . would establish interference with the health, comfort, and safety of the citizens of the State of Tennessee"); Ex. 2 (*State v. Purdue Pharma,* at 6) ("It cannot seriously be argued that the impacts of opiate addiction in Vermont have not affected the general public. If the State can ultimately prove its allegations as to Purdue's responsibility for the widespread nature of this scourge, it will meet the 'public' aspect of such a nuisance claim.").

Defendants nevertheless argue that the "purported rights" Defendants are alleged to have violated are private, not public, rights. Doc. #1404 at 18. Specifically, they argue that "there is no public right to be free from prescription medications that allegedly are deceptively marketed, mis-prescribed, or misused." *Id.* at 17. Magistrate Judge Ruiz easily dispensed with such arguments in his recent *Muscogee* and *Blackfeet* rulings:

> [D]ecisions from courts in other jurisdictions addressing public nuisance claims against manufacturers and distributors of prescription opioids on facts analogous to those alleged herein have recognized that the alleged misconduct interfered with a public right.[6] . . .

---

[6] Citing *In re Opioid Litig.*, No. 400000/2017, 2018 WL 3115102, at *22 (N.Y. Sup. Ct. June 18, 2018); *see also In re Opioid Litig.*, 400000/2017, at 13 (N.Y. Sup. Ct. July 17, 2018); *State v.*

The moving defendants do not fulfill their burden to demonstrate that no rights common to the public are threatened by the consequences of what Plaintiff alleges is the "worst man-made epidemic in modern medical history." The FAC plausibly pleads a public right to be free of those consequences, which are alleged to flow from the persistent and intentional misconduct of private parties. It also plausibly pleads an injury to health that interferes with the enjoyment of life and affects an entire community.

Doc. #1500 at 29-30; *see also* Doc. #1499 at 61:

[Plaintiff] sufficiently plead[s] a right commonly held by Plaintiff's citizens to be free from a crisis of epidemic proportions that interferes with a general common right to public health, safety and welfare—a right exercised through the local government's provision of protective, preventative, and ameliorative services, which Plaintiff alleges are being consumed by the costs attending the opioid crisis.

There is no serious argument that Plaintiffs have failed to adequately plead that Defendants' conduct interfered with a public right.

### b.  Products Liability

Defendants next argue that public nuisance claims should properly be limited to claims involving real property and, therefore, should not extend to claims that sound in products liability. The comments to Restatement § 821B, however, expressly reject Defendants' argument that public nuisance claims should properly be limited to interference with property rights, just as private nuisance claims are. Comment h to § 821B expressly provides: "Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land." Restatement (Second) of Torts § 821B, comm. h; *see also* Doc. #1499 at 53 (language of Oklahoma statute "does not restrict nuisance liability to acts or omissions relating to property"); and Doc. #1500 at 25 (finding that language of Montana statute "belies a conclusion that only claims alleging interference with a property right are actionable").

---

*AmerisourceBergen Drug Corp.*, No. 12-C-141, 2014 WL 12814021, at *10 (W.Va. Cir. Ct. Dec. 12, 2014). (R. 1017, PageID# 24618-24620 & Ex. 4).

Turning to Defendants' argument that Plaintiffs' public nuisance claims are really nothing more than disguised products liability claims, Magistrate Judge Ruiz again provides a straightforward refutation:

> [The cases on which Defendants rely] are based on alleged facts that differ materially from those Plaintiff alleges.[7] Contrary to the Defendants' contentions, while Plaintiff's nuisance theory concerns a product, it does not sound in products liability. The FAC alleges that the nuisance arises from the Defendants' misconduct, not from alleged harm caused by the use or misuse of an otherwise legal prescription opioid product. Plaintiff alleges that the nuisance is the result of fraudulent marketing that misstated the safety and efficacy of opioids in order to ensure widespread use and the failure to create and maintain controls against theft, diversion and misuse of prescription opioids from the legal supply chains that lead to an illicit secondary market. These allegations make clear that the claimed nuisance is the alleged consequence of the Defendants' conduct and not the opioid product itself.

Doc. #1499 at 56-57; *see also* Doc. #1500 at 22-23 ("Defendants' arguments do not support a conclusion that Plaintiff's nuisance claims are in essence product liability claims. The FAC clearly alleges that the nuisance arises from the Defendants' conduct, not harm from a legal product that they merely placed into the stream of commerce, and it also alleges that Plaintiff seeks to abate the nuisance").

Numerous courts in at least twelve separate jurisdictions have already upheld public nuisance claims against Defendants for their roles in creating the opioid crisis. Defendants' arguments that their conduct does not sound in public nuisance are unavailing and should be rejected.

---

[7] For the same reasons identified by Magistrate Judge Ruiz, the lengthy lists of cases Defendants include in support of the proposition that public nuisance and products liability are "separate areas of tort law," Doc. #1404 at 7; *see generally, id.* at 5-9, are largely distinguishable and inapposite to the present litigation.

### c. Proximate Cause

Defendants next argue that Plaintiffs will be unable to establish that Defendants' conduct was the proximate cause of the public nuisance. Doc. #1404 at 21-22. Defendants acknowledge that this issue has already been "briefed extensively in the MDL." *Id.* at 21. And, in both Magistrate Judge Ruiz's Report and Recommendation in the *Summit County* case, and this Court's Opinion and Order largely adopting those recommendations, the Court has concluded that Plaintiffs had adequately alleged proximate cause for their claims. *See* Doc. #1025 at 26-36; Doc. # 1203 at 7-10. Magistrate Judge Ruiz summarized the Court's conclusion re proximate cause thusly:

> [T]he court concludes that the connection between Plaintiffs' injuries and the Defendants' alleged scheme—to vastly increase opioid sales by changing physician prescribing practices through fraud coupled with increasing the supply of opioids by failing to report suspicious orders—'is not so indirect, unforeseeable, or illogical that the defendants must prevail as a matter of law.'

Doc. #1025 at 35-36 (quoting *Wallace v. Midwest Fin. & Mortg. Servs., Inc.,* 714 F.3d 414, 422 (6th Cir. 2013)). And, in his recent Reports and Recommendations, Magistrate Judge Ruiz concluded that "the court's proximate cause analysis in *Summit County* applies to Plaintiff's claims here," including the nuisance claim. Doc. #1499 at 61; Doc. #1500 at 10.[8]

---

[8] In the *Muscogee* case, Magistrate Judge Ruiz also noted that "other courts have applied a more lenient causation pleading standard in public nuisance actions," citing *City of New York v. Beretta U.S.A. Corp.,* 315 F. Supp. 2d 256, 282 (E.D.N.Y. 2004), for the proposition that:

> The tortious actions or omissions of a defendant or defendants need not be the immediate cause of injury to the public. If a defendant's conduct 'remains the dominant and relevant fact without which the public nuisance would not have resulted where and under the circumstances it did,' it may be held liable for setting in motion or being a force in the sequence of events resulting in injury to the public. Intervening actions, even multiple or criminal actions taken by third parties, do not break the chain of causation if a defendant could reasonably have expected their nature and effect.

Doc. #1499 at 61-62 (also citing *NAACP v. AcuSport, Inc.,* 271 F. Supp. 2d 435, 497 (E.D.N.Y. 2003) ("[W]here the welfare and safety of an entire community is at stake, the cause need not be so proximate as in individual negligence cases.")). Defendants dispute that a more lenient

Defendants offer no proximate cause arguments here that have not already been fully considered and rejected in the *Summit County, Muscogee,* and *Blackfeet* cases, so Plaintiffs will not further address the issue herein. *Cf.* Doc. #1500 at 10 ("After reviewing the Defendants' briefs and replies herein, the court finds nothing materially new in these arguments.").

### d. Control Over Instrumentality

Finally, Defendants argue that Plaintiffs' public nuisance claims must fail because Defendants did not "maintain control over the instrumentality of the nuisance" at the time the nuisance formed. Doc. #1404 at 22. In Defendants' view, "[t]he underlying harm from the misuse and abuse of opioids occurs not when opioid medications are under the possession or control of manufacturers, distributors, or retailers, but only afterward when patients misuse or abuse such medications or illegal drugs such as heroin." *Id.* at 23.

Defendants' argument rests on a mischaracterization of the public nuisance Plaintiffs allege, as Magistrate Judge Ruiz recognized in his recent rulings. In his Report and Recommendation in the *Muscogee* case, he wrote:

> Defendants' arguments rest upon a false premise that the instrumentality of the nuisance is the opioid medication. As discussed above, the alleged instrumentality of the nuisance is their creation and fueling of the illicit market. *See, e.g., James v. Arms Tech., Inc.,* 820 A.2d 27, 52 (N.J. Super Ct. App. Div. 2003) ("The 'instrumentality' defendants 'control' is the creation and supply of this illegal [gun] market."). In this regard, Plaintiff states that it does not allege that the nuisance occurred when individual users ingested opioids, but rather when Distributors and Pharmacies "facilitated diversion," "fail[ed] to implement effective controls against theft, diversion and misuse of prescription opioids from legal supply chains," "failed to design and operate an adequate system to detect halt, and report suspicious orders," and "used property for repeated unlawful sales of prescription opioids." . . . Accepting the allegations above as true, the FAC plausibly alleges that the Defendants had the ability to control the conduct that allegedly resulted in the public nuisance.

---

causation standard applies, Doc. #1404 at 22, but the Court need not reach this question in light of its prior holding that Plaintiffs have sufficiently pled proximate causation.

Doc. #1499 at 57-58; *see also* Doc. #1500 at 30-31 ("The argument misconstrues the public nuisance instrumentality, which . . . is alleged to be the Defendants' conduct in carrying out their business activities, and not the product that they manufacture, distribute and dispense.").

Throughout the time period covered in this litigation, Defendants unquestionably maintained control over their "fraudulent marketing that misstated the safety and efficacy of opioids in order to ensure widespread use" and over their inadequate system of "controls against theft, diversion and misuse of prescription opioids from the legal supply chains that lead to an illicit secondary market." Doc. #1499 at 56-57. Because "the claimed nuisance is the alleged consequence of the Defendants' conduct and not the opioid product itself," *id.* at 57, there is no valid argument that Defendants lacked control over the instrumentality of the nuisance.

## CONCLUSION

For these reasons, as well as those set forth in the PEC's Brief Concerning Survey of State Nuisance Law, Doc. #1406, the PEC urges the Court to conclude that there is a viable basis for proceeding with a  public nuisance claim—whether statutory, common law, or both—in each and every jurisdiction with cases currently pending in this MDL.

Dated:  April 5, 2019                        Respectfully submitted,


/s/ Linda Singer
Linda Singer
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com

*Member of the Plaintiffs' Executive Committee*

Paul T. Farrell, Jr.
**GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP**
419 11th Street
Huntington, West Virginia 25701
Tel: 800-479-0053 or 304-525-9115
Fax: 304-529-3284
paul@greeneketchum.com

Paul J. Hanly, Jr.
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th floor
New York, NY 10016
Tel: 212-784-6400
Fax: 212-213-5949
phanly@simmonsfirm.com

Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
jrice@motleyrice.com

*Co-Leads, Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 5th day of April, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

/s/ Linda Singer
Linda Singer
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com

*Member of the Plaintiffs' Executive Committee*