# EXHIBIT 2

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

---

STATE OF VERMONT,
Plaintiff

v.

PURDUE PHARMA L.P., PURDUE
PHARMA INC., and THE PURDUE
FREDERICK COMPANY,
Defendants

VERMONT SUPERIOR COURT
FILED

Docket No. 757-9-18 Cncv    MAR 1 9 2019

CHITTENDEN UNIT

---

## RULING ON MOTION TO DISMISS

This case is brought by the Vermont Attorney General on behalf of the public, seeking injunctive relief and disgorgement of profits from a manufacturer of opioids. The complaint asserts violations of the Vermont Consumer Protection Act and creation of a public nuisance. Defendants seek dismissal, arguing that the claims fail because of federal preemption, because the remedies the State seeks are not available, and because there is neither interference with a public right nor adequate causation alleged to support the nuisance claim. At Purdue's request, the court heard oral argument on the motion on March 14.

### Discussion

As Purdue's counsel acknowledged at oral argument, Purdue has an uphill battle here in seeking dismissal. The question on a motion such as this is whether "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Skaskiw v. Vermont Agency of Agric., 2014 VT 133, ¶ 6, 198 Vt. 187(citation omitted). A court must "assume as true all facts as pleaded in the complaint, accept as true all reasonable inferences that may be derived

from the plaintiff's pleadings, and assume as false all contravening assertions in the defendant's pleadings." Id. The question is "whether the bare allegations of the complaint are sufficient to state a claim." Id.

The gist of the complaint is that over a period of years Defendants (jointly Purdue) have aggressively and misleadingly marketed opioids such as Oxycontin in Vermont, leading to massive addiction and the resulting societal costs. The State alleges that even after a 2007 consent judgment these acts have continued, and that they have included marketing not just to medical professionals but also to consumers. The complaint seeks injunctive relief to require the termination of such marketing efforts, and disgorgement of profits associated with sales of opioids in Vermont.

## The Statute of Limitations Argument

This case was filed in 2018. The parties agree that the statute of limitations is six years, and that the claims were subject to a two-year tolling agreement. The applicable time frame therefore begins in 2010. 12 V.S.A. § 511. Purdue argues that the claims are based on events that occurred prior to 2010 and are therefore barred. Purdue is correct that much of the complaint recites historical information that predates 2010. Nonetheless, it does allege that Purdue has continued to act wrongfully since 2010. *See, e.g.*, Complaint ¶¶ 119-26, 132, 135. It is not time-barred.[1]

## Consumer Protection Claims

The complaint asserts, in sum, that Purdue has made material misrepresentations and omissions, engaged in deceptive marketing, and targeted vulnerable patients in the face of

---

[1] Purdue asks that the court order Plaintiff to amend the complaint to drop the pre-2010 allegations. The court sees no need to do so. Recovery at trial will, of course, be limited to 2010 and later, and the evidence at trial can be limited in scope. At least some of the pre-2010 allegations are necessary background to understanding the later claims.

heightened risks to those patients, in violation of the Vermont Consumer Protection Act (CPA), 9 V.S.A. §2453(a). Complaint, Counts I and II.

Preemption

Purdue argues first that these claims are preempted by the federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301 *et seq.* That argument is based upon the claim that what the State is asserting here is a violation of federal law regarding advertising of medications. Motion at 6. There is a provision in the CPA providing for state law claims based upon violations of the FDCA. *See* 9 V.S.A. § 2466a(c)(1)(It is a violation of the law to advertise in Vermont "if that advertisement does not comply with the requirements concerning . . . prescription drug advertising in federal law and regulations"). Advertisement is broadly defined to include conveying "commercial messages" to health care providers through mail or at conferences or meetings. Id. § 2466a(c)(2)((B). However, a violation of federal law is not what is alleged here: the State does not assert a claim under section 2466a of the CPA. Nor has Purdue presented anything to suggest that by regulating advertising of medications Congress intended to restrict states from enforcing consumer fraud statutes.[2]

The primary case upon which Purdue relies here is Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001), and cases following it. However, that case involved a tort claim that a medical device manufacturer's consultant had made false statements to the Federal Food and Drug Administration, and that but for that fraud upon the federal agency the plaintiffs would not have been injured by the device. The Court noted that "the fraud claims exist solely by virtue of

---

[2] Purdue suggests that the general provisions of the CPA cannot apply because they apply only when the deceptive acts are directed at consumers. The court does not read the provisions allowing suit by the Attorney General, as opposed to private parties, to be so narrow. *See* 9 V.S.A. § 2458 and 2453(a)(allowing Attorney General to sue to restrain "unfair or deceptive acts or practices in commerce" when such suit is in the public interest). Moreover, there are allegations that Purdue took acts directed at consumers, such as offering "savings cards" to sell more OxyContin. Complaint ¶¶ 119-126.

3

the FDCA disclosure requirements," and that "the existence of these federal enactments is a critical element in [Plaintiffs'] case." Id. at 353. That is entirely distinguishable from the claims in this case, which do not rely upon violations of federal law.

Purdue also cites 21 U.S.C. § 337, a section of the FDCA, as a basis for preemption. However, that section says that "all such proceedings for the enforcement, or to restrain violations, of this chapter" must be filed by the United States. This case does not seek enforcement of federal law, or restraint of violations of federal law.

What Purdue argues is that the claims here are really ones under § 2466a(c)(1) of the CPA, even though that is not what the complaint alleges. However, on a motion to dismiss it is what the complaint alleges that matters. The fact that the federal government imposes restrictions on drug advertising does not necessarily mean that the states may not regulate deceptive acts by drug manufacturers and distributors. At least at this stage of the proceedings, the court is not persuaded that federal preemption applies here.

### CPA Remedies

Purdue next argues that the CPA does not provide for the remedies the State seeks here: disgorgement and injunctive relief. To the contrary, the statute grants broad power to fashion relief in consumer protection cases. The statute provides that "the Attorney General . . . may request and the court is authorized to render any . . . temporary or permanent relief . . . as may be in the public interest . . . " 9 V.S.A. § 2458(b). While the statute lists several specific modes of relief, the list is expressly non-exclusive. Id.

### Public Nuisance Claims

The public nuisance claim alleges that Purdue has created, or was a substantial factor in creating, a public nuisance by harming "the health, safety, peace, comfort, or convenience of the

4

general community." Complaint Count III, ¶ 248. For example, the complaint cites a distortion of the medical standard of care for treatment of chronic pain, high rates of opioid abuse and overdoses, the impact of those events upon Vermont families and communities, and increased costs for health care, emergency services and law enforcement across the state. Id. ¶ 252. It further alleges that these impacts were foreseeable, and could be abated by steps such as education, honest marketing, and addiction treatment. Id. ¶¶ 254-55. Purdue contends that the claim fails because it does not allege interference with any public right, and fails to plead causation.

As to the "public right" argument, Purdue describes the complaint as merely alleging "private injuries to some individuals and subsequent costs to the State." Motion at 14. It points to a recent trial court opinion in which Judge Teachout rejected a public nuisance claim brought in connection with contaminated groundwater. State v. Atlantic Richfield Co., No. 340-6-14 Wncv (July 31, 2018). That decision, says Purdue, stands for the widely-accepted proposition that products liability claims cannot be brought against manufacturers in the guise of public nuisance claims. It may, but this is not a products liability case, and no damages are sought for injuries to individual patients from Purdue's products. More to the point, what the court was concerned with in Atlantic Richfield was the expansion of the statute of limitations, as the State sought to raise claims dating back to 1985 by relying upon the continuing nuisance doctrine. Id. 14-16. It was also concerned that the relief sought by the State would require entry onto private lands of non-parties. Id. at 16-17. Those are not concerns in this case. The court does not find that case to be useful here.

Purdue also argues that nuisance claims should be limited to those relating to land use issues. Some courts have so limited nuisance claims. *See, e.g.*, State ex rel. Jennings v. Purdue Pharma L.P., No. CVN18C01223MMJCCLD, 2019 WL 446382, at *12 (Del. Super. Ct. Feb. 4, 2019) ("There is a clear national trend to limit public nuisance to land use."). Vermont, however,

5

has not done so, and the Restatement expressly says that "a public nuisance does not necessarily involve interference with use and enjoyment of land." Restatement (Second) of Torts § 821B cmt. h (Westlaw, Oct. 2018 update). Because it is an open issue in Vermont, dismissal on this basis is not appropriate. The court cannot say that "there exist no facts or circumstances that would entitle the plaintiff to relief." Skaskiw, 2014 VT 133, ¶ 6.

A public nuisance is one that affects the general public, rather than solely private parties. State v. Howe Cleaners, 2010 VT 70, ¶¶ 48-52, 188 Vt. 303. The Restatement notes as an example of a public nuisance "conduct [that] involves a significant interference with the public health," and offers as an example the spread of smallpox, risking an epidemic. Restatement (Second) of Torts § 821B and cmt. g. It cannot seriously be argued that the impacts of opiate addiction in Vermont have not affected the general public. If the State can ultimately prove its allegations as to Purdue's responsibility for the widespread nature of this scourge, it will meet the "public" aspect of such a nuisance claim.

As to the issue of causation, Purdue argues that there are too many other factors that contribute to a person becoming addicted to establish that Purdue is responsible for the widespread addiction in Vermont. That may well present a challenge as to the proof at trial, but the only question before the court today is whether the complaint sufficiently alleges causation. It does. It alleges, for example, that Purdue's misrepresentations resulted in a dramatic increase in prescriptions, that those led to increased addiction, that the majority of opioid deaths in Vermont are causally linked to opioid prescriptions, that Purdue created or was a substantial factor in creating the alleged public nuisance, and that all of this was foreseeable to Purdue. Complaint ¶¶ 12-13, 15, 18, 34, 251, 252, 254.

<u>Order</u>

The motion to dismiss is denied. Defendants are directed to file their answers within 14 days, and the parties are directed to submit a discovery schedule within thirty days thereafter or, if agreement cannot be reached, to request a discovery conference.

Dated at Burlington this 18th day of March, 2019.

Helen M. Toor
Superior Court Judge

7