# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| | Hon. Dan Aaron Polster |

## DEFENDANTS' RESPONSE BRIEF ON VIABILITY OF PUBLIC NUISANCE CLAIMS NATIONWIDE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 2

I.     Even A Broad Definition of Public Nuisance Does Not Permit the Claims Alleged
Here............................................................................................................................ 2

       A.     The Restatement's Definition, or One Similar, Does Not Permit the
Claims Here. ................................................................................................. 2

            1.     The Restatement's Definition Does Not Resolve the Viability
Question. ............................................................................................ 2

            2.     The Third Restatement Expressly Rejects Plaintiffs' Conception
Of Public Nuisance Liability. ............................................................ 4

            3.     Plaintiffs Ignore Relevant Authority and *Erie*'s Mandate in
Misconstruing Nuisance Law in Arkansas, South Carolina, and
Wyoming. .......................................................................................... 5

       B.     Plaintiffs Ignore Key Elements of a Public Nuisance Claim. ...................... 6

       C.     Plaintiffs Fail to Recognize That Widely Applicable Tort Defenses Bar
Their Claims in Many States........................................................................ 8

            1.     Statewide Concern Doctrine ............................................................. 8

            2.     Free Public Services Doctrine............................................................ 9

            3.     Economic Loss Doctrine.................................................................. 11

II.    The Public Nuisance Statutes Cited By Plaintiffs Are More Limited in Scope
Than Plaintiffs Suggest. ........................................................................................ 12

III.   Plaintiffs Overstate Various State Trial Court Decisions and Incorrectly Dismiss
Others..................................................................................................................... 14

       A.     The State Trial Court Decisions Expanding Public Nuisance Are Not
Persuasive Readings of Those States' Laws. ............................................. 15

       B.     The State Trial Court Decisions Dismissing Similar Public Nuisance
Claims Are Persuasive. .............................................................................. 17

            1.     New Jersey ....................................................................................... 17

            2.     Connecticut ..................................................................................... 18

            3.     Delaware ......................................................................................... 20

CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*532 Madison Avenue Gourmet Foods, Inc. v. Finlandia Center, Inc.*,
  750 N.E.2d 1097 (N.Y. 2001) ................................................................. 12

*ABS Entm't, Inc. v. CBS Corp.*,
  163 F. Supp. 3d 103 (S.D.N.Y. 2016) ....................................................... 17

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
  228 F.3d 429 (3d Cir. 2000) ....................................................................... 6

*Arlan's Dep't Stores, Inc. v. Kelley*,
  130 N.W.2d 892 (Mich. 1964) ................................................................... 9

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*,
  241 F.3d 696 (9th Cir. 2001) ..................................................................... 6

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*,
  898 F.3d 710 (6th Cir. 2018) ................................................................... 16

*Baker v. Smith & Wesson Corp.*,
  No. Civ.A. 99C-09-283-FS, 2002 WL 31741522 (Del. Super. Ct. Nov. 27,
  2002) ....................................................................................................... 10

*Bd. of Supervisors of Fairfax Cty. v. U.S. Home Corp.*,
  No. 85225, 1989 WL 646518 (Va. Cir. Ct. Aug. 14, 1989) ..................... 10

*Berrington v. Wal-Mart Stores, Inc.*,
  696 F.3d 604 (6th Cir. 2012) ................................................................... 14

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
  226 F. Supp. 2d 557 (D.N.J. 2002) ......................................................... 17

*Bradley v. Gen. Motors Corp.*,
  512 F.2d 602 (6th Cir. 1975) ................................................................... 14

*Briscoe v. Harper Oil Co.*,
  702 P.2d 33 (Okla. 1985) ......................................................................... 12

*CAT Internet Servs., Inc. v. Magazines.com Inc.*,
  No. CIV.A. 00-2135, 2001 WL 8858 (E.D. Pa. Jan. 4, 2001) ................... 3

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
  273 F.3d 536 (3d Cir. 2001) ........................................................... 3, 6, 18

*Cedar & Wash. Assocs., LLC v. Bovis Lend Lease LMB, Inc.*,
  944 N.Y.S.2d 47 (N.Y. App. Div. 2012) ................................................. 12

iii

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ................................................................... 3, 7, 10, 11

*City of Douglasville v. Queen*,
    514 S.E.2d 195 (Ga. 1999)................................................................................. 13

*City of Everett v. Purdue Pharma L.P.*,
    No. C17-209RSM, 2017 WL 4236062 (W.D. Wash. Sep. 25, 2017)..................... 17

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
    719 F.2d 322 (9th Cir. 1983) .............................................................................. 9

*City of Gary ex rel. King. v. Smith & Wesson Corp.*,
    801 N.E.2d 1222 (Ind. 2003) ............................................................... 11, 12, 16

*City of Miami v. Bank of Am. Corp.*,
    800 F.3d 1262 (11th Cir. 2015) ........................................................................ 10

*City of New Haven v. Purdue Pharma, L.P.*,
    No. X07HHDCV176086134S, 2019 WL 423990 (Conn. Super. Ct. Jan. 8,
    2019) ......................................................................................................... 18, 19

*City of Perry v. Procter & Gamble Co.*,
    188 F. Supp. 3d 276 (S.D.N.Y. 2016)............................................................. 4, 6

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    126 F. Supp. 2d 882 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3rd Cir. 2002) ............. 3, 5, 10, 11

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3rd Cir. 2002) ................................................................ 3, 6, 11, 14

*City of Pittsburgh v. Eq. Gas Co.*,
    512 A.2d 83 (Pa. Commw. Ct. 1986) ................................................................ 11

*Combs v. Int'l Ins. Co.*,
    354 F.3d 568 (6th Cir. 2004) ...................................................................... 14, 17

*Comm'r of Internal Revenue v. Estate of Bosch*,
    387 U.S. 456 (1967)................................................................................... 10, 14

*Commonwealth v. Endo Health Sols. Inc.*,
    No. 17-CI-1147, 2018 WL 3635765 (Ky. Cir. Ct. July 10, 2018)......................... 15

*Cty. of Erie v. Colgan Air, Inc.*,
    711 F.3d 147 (2d Cir. 2013)........................................................................ 10, 11

*Dalarna Farms v. Access Energy Coop.*,
    792 N.W.2d 656 (Iowa 2010) .......................................................................... 13

iv

*Diamond X Ranch LLC v. Atl. Richfield Co.*,
   No. 3:13-cv-00570-MMD-WGC, 2017 WL 4349223 (D. Nev. Sept. 29, 2017)................... 13

*District of Columbia v. Air Fla., Inc.*,
   750 F.2d 1077 (D.C. Cir. 1984) ............................................................................. 9

*Ganim v. Smith & Wesson Corp.*,
   780 A.2d 98 (Conn. 2001) ................................................................................ 18, 19

*Grewal v. Purdue Pharma L.P.*,
   No. ESXC-245-17, 2018 WL 4829660 (N.J. Super. Ct. Oct. 2, 2018)................................ 17

*Houbigant, Inc. v. Fed. Ins. Co.*,
   374 F.3d 192 (3d Cir. 2004)................................................................................ 14

*Idaho v Phillip Morris, Inc.*,
   No. CV-OC-97-03239D, 1998 WL 35222488 (Idaho Dist. Ct. Sep. 02, 1998) ..................... 13

*Indep. Cty. v. Pfizer, Inc.*,
   534 F. Supp. 2d 882 (E.D. Ark. 2008), *aff'd sub nom.*, *Ashley Cty. v. Pfizer,
   Inc.*, 552 F.3d 659 (8th Cir. 2009) ......................................................................... 5

*In re Lead Paint Litig.*,
   924 A.2d 484 (N.J. 2007)............................................................................ 3, 17, 18

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
   No. M21-88, 2013 WL 5230814 (S.D.N.Y. July 17, 2013) ................................................ 3

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
   379 F. Supp. 2d 348 (S.D.N.Y. 2005)...................................................................... 17

*Keeley v. Loomis Fargo & Co.*,
   183 F.3d 257 (3d Cir. 1999)................................................................................ 14

*King v. Order of United Commercial Travelers of Am.*,
   333 U.S. 1532 (1948)....................................................................................... 14

*Kramer v. Cty. Council for Dorchester Cty.*,
   282 S.E.2d 850 (S.C. 1981) ................................................................................. 8

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
   844 F. Supp. 2d 519 (D. Del. 2012)....................................................................... 11

*Laubenstein v. Bode Tower, L.L.C.*,
   392 P.3d 706 (Okla. 2016)................................................................................. 12

*Lukas v. McPeak*,
   730 F.3d 635 (6th Cir. 2013) .............................................................................. 16

*Meador v. Apple, Inc.*,
    911 F.3d 260 (5th Cir. 2018) ............................................... 15

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*,
    622 F.3d 361 (5th Cir. 2010) ................................................. 3

*Mo. Bankers Ass'n v. St. Louis Cty.*,
    448 S.W.3d 267 (Mo. 2014) .................................................. 9

*Mutschler v. City of Phoenix*,
    129 P.3d 71 (Ariz. Ct. App. 2006) ......................................... 12

*Nat'l Roofing, Inc. v. Alstate Steel, Inc.*,
    366 P.3d 276 (N.M. App. Ct. 2015) ....................................... 12

*Overcash v. S.C. Elec. & Gas Co.*,
    614 S.E.2d 619 (S.C. 2005) ................................................... 5

*Peck v. Elyria Foundry Co.*,
    347 F. App'x 139 (6th Cir. 2009) .......................................... 14

*People v. Sturm, Ruger & Co.*,
    761 N.Y.S.2d 192 (N.Y. App. Div. 2003) .............................. 16

*Perry v. Am. Tobacco Co.*,
    324 F.3d 845 (6th Cir. 2003) ................................................. 6

*Prairie Hills Water & Dev. Co. v. Gross*,
    653 N.W.2d 745 (S.D. 2002) ................................................ 13

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
    884 F.3d 812 (9th Cir. 2018) ................................................. 2

*Sample v. Monsanto Co.*,
    283 F. Supp. 2d 1088 (E.D. Mo. 2003) ................................. 11

*Sedona Condo., Homeowners Ass'n v. Eagle Real Estate Grp.*,
    Nos. A523113, A526294, 2008 WL 8177908 (Nev. Dist. Ct. June 30, 2008) ....................... 11

*Shea v. City of Portsmouth*,
    94 A.2d 902 (N.H. 1953) ...................................................... 17

*Sills v. Smith & Wesson Corp.*,
    No. 99C-09-283-FSS, 2000 WL 33113806 (Del. Super. Ct. Dec. 1, 2000) ........................ 20

*State Auto Prop. & Cas. Ins. Co. v. Hargis*,
    785 F.3d 189 (6th Cir. 2015) ............................................. 6, 14

*State ex rel. Jennings v. Purdue Pharma L.P.*,
   No. N18C-01-223 MMJ CCLD, 2019 WL 446382 (Del. Super. Ct. Feb. 4,
   2019) ................................................................................................................. 20

*State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*,
   No. 12-C-141, 2014 WL 12814021 (W. Va. Cir. Ct. Dec. 12, 2014) ..................................... 15

*State v. Lead Indus., Ass'n*,
   951 A.2d 428 (R.I. 2008) ................................................................................................... 3, 7

*State v. Purdue Pharma Inc.*,
   No. 217-2017-CV-00402, 2018 WL 4566129 (N.H. Super. Ct. Sept. 18, 2018) ................... 15

*State v. Purdue Pharma L.P.*,
   No. 3AN-17-09966CI, 2018 WL 4468439 (Alaska Super. Ct. July 12, 2018) ...................... 15

*Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*,
   244 So. 3d 383 (Fla. Dist. Ct. App. 2018) ........................................................................ 11

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
   984 F.2d 915 (8th Cir. 1993) .......................................................................................... 4, 6

*Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*,
   617 F. Supp. 126 (D.N.H. 1984) ..................................................................................... 17

*Walker Cty. v. Tri-State Crematory*,
   643 S.E.2d 324 (Ga. Ct. App. 2007) ............................................................................... 10

## STATUTES

Ala. Code § 6-5-121 ......................................................................................................... 13

Ga. Code Ann. § 41-1-2 ................................................................................................... 13

Minn. Stat. § 604.101 ...................................................................................................... 11

Wash. Rev. Code § 7.48.010 ........................................................................................... 17

Wyo. Stat. Ann. § 6-6-209 ................................................................................................. 5

Wyo. Stat. Ann. § 33-16-536 ............................................................................................. 5

Wyo. Stat. Ann. § 35-9-111 ............................................................................................... 5

## TREATISES

17A Moore's Federal Practice – Civil § 124.22[3] (2019) ................................................. 17

Restatement (Second) of Torts (1979) .................................................................... *passim*

Restatement (Third) of Torts: Liability for Economic Harm (TD No. 2, 2014) ............................ 4

## CONSTITUTIONAL PROVISIONS

S.C. Const. art. VIII, § 14 ............................................................................................. 9

## OTHER AUTHORITIES

Donald G. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin.
    L. Rev. 741 (2003) ............................................................................................. 3

Pauline Tobouldis, *Restatement of the Law Third, Torts: Liability for Economic
    Harm Approved*, The ALI Advisor (May 21, 2018),
    http://www.thealiadviser.org/economic-harm-torts/the-american-law-institute-
    membership-approves-restatement-of-the-law-third-torts-liability-for-
    economic-harm/ ............................................................................................. 4

W. Page Keeton et al., *Prosser and Keeton on Law of Torts* § 2 (5th ed. 1984) ............................ 9

**INTRODUCTION**

Plaintiffs argue they can bring claims in "virtually every state" for public nuisance arising from the use and abuse of prescription opioid medications and illicit drugs.  But *Erie* principles bind this Court to apply existing state law and not to expand common law tort or statutory claims to cover harms to which they do not and were never intended to apply.  Permitting the product-based claims here would impermissibly work a seismic shift in state tort law.

Plaintiffs suggest that the public nuisance analysis is quite simple: if a state has adopted the Restatement (Second) of Torts' definition of public nuisance (or a similar formulation) then that state's law necessarily encompasses the expansive claims brought here.  But the Court did not ask for briefing on how the various states (or the Restatement) *define* public nuisance; it asked for briefing on the *viability* of Plaintiffs' public nuisance claims.  This viability inquiry requires consideration of whether: (1) state law permits application of public nuisance law to product-based claims; (2) the state's highest court has ever recognized an analogous theory; (3) any tort defenses would bar the claim; and (4) other limits on the claim are imposed by any relevant public nuisance statutes.  Although Defendants addressed these issues in their opening brief, Plaintiffs' brief is largely silent on them.

Plaintiffs cannot meet the demands of *Erie* by ignoring critical issues pertaining to the viability of their claims.  Plaintiffs bear the burden of providing authoritative support from *each* state establishing the viability of their claims, not merely support for the proposition that certain state courts have used a seemingly broad definition of "public nuisance" under common law or statute.  Because Plaintiffs did not, and cannot, satisfy that burden, the Court should reject Plaintiffs' sweeping views on the viability of their public nuisance claims.

# ARGUMENT

## I.  EVEN A BROAD DEFINITION OF PUBLIC NUISANCE DOES NOT PERMIT THE CLAIMS ALLEGED HERE.

Plaintiffs argue that many states define public nuisance broadly and thus permit the claims here.  Pls.' Br. 4–10.  But a state's general definition of public nuisance is not the end of the inquiry in determining the viability of these claims.  Plaintiffs entirely dodge the required analysis.

### A.  The Restatement's Definition, or One Similar, Does Not Permit the Claims Here.

The Restatement's definition of public nuisance is uncontroversial: "A public nuisance is an unreasonable interference with a right common to the general public."  Restatement (Second) of Torts § 821B(1) (1979).[1]  Plaintiffs rest their entire position on these simple words.  Specifically, Plaintiffs reason that a "substantial majority of jurisdictions" follow (or positively cite) this definition of public nuisance (or something sufficiently akin to it), and the Restatement's definition of public nuisance necessarily permits the claims at issue here.  Pls.' Br. at 4–6.  That reasoning is entirely flawed.[2]

#### 1.  The Restatement's Definition Does Not Resolve the Viability Question.

Even in states that have adopted or favorably cited the Restatement's articulation of public nuisance, courts have rejected nuisance claims asserted against products manufacturers, distributors, and retailers.  *See generally* Defs.' Br. Part III.A.[3]  For example, even though Rhode

---

[1] Unless otherwise stated, internal citations and quotation marks have been omitted and any emphasis has been added.
[2] Plaintiffs proceed from a false premise that this Court already held that the public nuisance claims in this MDL fall within the bounds of the Restatement's definition.  But neither the Magistrate Judge's R&R, nor this Court's opinion adopting it in part, once cited or discussed the Restatement's definition of public nuisance or addressed whether or not Summit County stated a viable claim for common-law public nuisance under it.  *See generally* Defs.' Br. at 15 n.6.  And any finding this Court may make as to the viability of Summit County's claim for public nuisance under Ohio law, which has adopted the Restatement's definition, would not control the viability of public nuisance claims in other jurisdictions.
[3] As a general matter, federal courts reject the reasoning that a state's adoption or application of a specific provision of a restatement implies a wholesale adoption of the entire section or every comment.  So, while Plaintiffs rely heavily on certain comments to the Restatement, Pls.' Br. at 4, Plaintiffs have no basis to argue that every state cited in Plaintiffs' Exhibit 1 adopted those comments (or Section 821B itself) wholesale.  *See, e.g., PSM Holding Corp. v.*

Island follows the Restatement's definition of public nuisance, its highest court rejected efforts to bring a public nuisance action in response to a public crisis over lead paint poisoning.  The Rhode Island Supreme Court held that because "[p]roducts generally are purchased and used by individual consumers," "any harm they cause—even if the use of the product is widespread and the manufacturer's or distributor's conduct is unreasonable—is not an actionable violation of a public right."  *State v. Lead Indus., Ass'n*, 951 A.2d 428, 448 (R.I. 2008) (quoting Donald G. Gifford, *Public Nuisance as a Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741, 817 (2003)); *see also In re Lead Paint Litig.*, 924 A.2d 484, 503–05 (N.J. 2007) (similar, while following the Restatement's definition).

Likewise, courts that follow the Restatement's definition have declined to find public nuisances in the face of the public gun violence crisis.  *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004) (finding no public right to be free from the threat someone may use a product in a way that might harm another, while following the Restatement's definition); *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 539–40 (3d Cir. 2001) (declining to recognize a public nuisance claim against gun manufacturers under New Jersey law, even though the state follows the Restatement's definition, and noting, "no New Jersey court has ever allowed a public nuisance claim to proceed against manufacturers for lawful products"); *City of Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp. 2d 882, 907–08 (E.D. Pa. 2000) (similar under Pennsylvania law), *aff'd*, 277 F.3d 415 (3rd Cir. 2002).

---

*Nat'l Farm Fin. Corp.*, 884 F.3d 812, 822 (9th Cir. 2018) (concluding that although the California Supreme Court had twice cited approvingly to a provision of a restatement, it was "at most, merely persuasive" authority for the *Erie* analysis); *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 370 (5th Cir. 2010) (finding that whether Texas courts had adopted a particular comment of a restatement was an open question); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. M21-88, 2013 WL 5230814, at *2 (S.D.N.Y. July 17, 2013) (rejecting contention that Puerto Rico had adopted a comment of a restatement simply because it adopted a different subsection of the relevant section); *CAT Internet Servs., Inc. v. Magazines.com Inc.*, No. CIV.A. 00-2135, 2001 WL 8858, at *7 n. 3 (E.D. Pa. Jan. 4, 2001) (declining to find that Tennessee's adoption of part of a comment in a restatement meant that the court adopted the relevant section or the comment "in its entirety").

Other courts also have rejected public nuisance claims under the laws of states that have adopted a similarly broad definition of public nuisance (even if not the Restatement's), because generalized definitions are not dispositive as to the viability of product-based claims.  *See, e.g.*, *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (rejecting claim under North Dakota law against asbestos manufacturer because the plaintiff could not present "any North Dakota cases extending the application of the nuisance statute to situations where one party has sold to the other a product that later is alleged to constitute a nuisance"); *City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 291 (S.D.N.Y. 2016) (similar).

## 2. The Third Restatement Expressly Rejects Plaintiffs' Conception Of Public Nuisance Liability.

The Second Restatement does not even address the issue most pertinent to this Court: whether public nuisance doctrine can apply to product-based claims.  That is not surprising because the Second Restatement predates the rise of efforts by plaintiffs' lawyers to bring products-based public nuisance claims.  The current version of the Restatement, however, does address the possibility of products-based public nuisance claims and expressly disapproves of extending public nuisance law to encompass such claims:

> [P]roblems caused by dangerous products might once have seemed to be matters for the law of public nuisance because the term "public nuisance" has sometimes been defined in broad language that appears to encompass anything injurious to public health and safety.  *The traditional office of the tort, however, has been narrower than those formulations suggest, and contemporary case law has made clear that its reach remains more modest.*[4]

---

[4] Restatement (Third) of Torts: Liability for Economic Harm § 8 cmt. g (TD No. 2, 2014).  This Restatement received final approval and is the official position of American Law Institute.  Pauline Tobouldis, *Restatement of the Law Third, Torts: Liability for Economic Harm Approved*, The ALI Advisor (May 21, 2018), http://www.thealiadviser.org/economic-harm-torts/the-american-law-institute-membership-approves-restatement-of-the-law-third-torts-liability-for-economic-harm/.

4

The latest version of the Restatement is persuasive because, unlike the Second Restatement upon which Plaintiffs so heavily rely, the Third Restatement speaks to the precise question at issue—and instructs that Plaintiffs' claims are not viable.  *Cf. City of Philadelphia*, 126 F. Supp. 2d at 909 (declining "to 'follow' the expansive reach of public nuisance law ascribed to it by Professors Prosser and Keeton" in their treatise because "since the last edition of their treatise in 1985, courts across the nation have begun to refine the types of cases amenable to a nuisance theory").

### 3. Plaintiffs Ignore Relevant Authority and *Erie*'s Mandate in Misconstruing Nuisance Law in Arkansas, South Carolina, and Wyoming.

Plaintiffs concede that the Second Restatement's definition of public nuisance does not apply in all jurisdictions.  Pls.' Br. at 8 (referring to Arkansas, South Carolina, and Wyoming, which have not adopted the Second Restatement's definition).  Plaintiffs further concede that these states lack public nuisance case law "in contexts at all similar to the present litigation."  *Id.*  But in their haste to manufacture a "viable" public nuisance cause of action in virtually every jurisdiction, Plaintiffs mischaracterize these states' public nuisance law.

- **Arkansas**: A federal court applying Arkansas law rejected a public nuisance claim that had nothing to do with misuse or interference with land.  *Indep. Cty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 890 (E.D. Ark. 2008) ("Plaintiffs assert that ownership of land is not an element of public nuisance, and cite law from other jurisdictions, as well as the Restatement (Second) of Torts, in support of their assertion.  However, I must apply the law of the forum state—Arkansas."), *aff'd sub nom.*, *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 672–73 (8th Cir. 2009) (affirming on the grounds that causation is too attenuated in product-based public nuisance claims).

- **South Carolina**: In a case Plaintiffs wholly ignore, South Carolina's highest court held that public nuisance claims are limited to only those involving "injury to the individual's real or personal property."  *Overcash v. S.C. Elec. & Gas Co.*, 614 S.E.2d 619, 622 (S.C. 2005).

- **Wyoming**: Public nuisance in Wyoming is governed principally by statute, which defines public nuisance in each instance with reference to forms of land, property, or vehicles.  *See, e.g.*, Wyo. Stat. Ann. §§ 6-6-209, 35-9-111, 33-16-536.

5

Plaintiffs also ignore fundamental *Erie* principles.  They acknowledge that the public

nuisance case law in these states is "limited," Pls.' Br. at 8, and so necessarily concede that an *Erie*

court cannot recognize the novel public nuisance theory asserted here.  *See* Defs.' Br. at 10–15.[5]

\* \* \*

For all those reasons, the mere fact that a state adopts (or approvingly cites) the Second

Restatement's definition of public nuisance or one similar does not mean the state's law

necessarily authorizes the claims here.  Rather, because public nuisance traditionally applied only

in limited circumstances, applying public nuisance to products necessarily expands the tort beyond

its foundation.  Thus, where no precedent from a state's highest court authorizes application of the

doctrine to the product-based claims at issue here, the claims may not proceed.

## B.    Plaintiffs Ignore Key Elements of a Public Nuisance Claim.

Plaintiffs also avoid discussion of key elements of public nuisance, like control and

causation,[6] each of which renders their claims untenable, *see* Defs.' Brief at 15–26 (detailing these

requirements), and make only passing reference to the cornerstone of a public nuisance claim: the

existence of a public right.  In a cursory sentence or two, Plaintiffs take the position that the "public

rights" at issue here are "public health, public safety, public peace, and public comfort."  Pls' Br.

at 4.  In suggesting that the Restatement supports the view that public health is a protected "public

right," Plaintiffs fundamentally misread the Restatement.  Specifically, while some significant

---

[5] *See also State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015) (plaintiffs must provide an "authoritative signal" to warrant expanding liability under state law); *Tioga*, 984 F.2d at 920 (declining to recognize a products-based public nuisance claim without clear authority from the state supreme court); *Camden Cty.*, 273 F.3d at 539–40 (same); *City of Philadelphia*, 277 F.3d at 421 (same); *City of Perry*, 188 F. Supp. 3d at 291 (same).

[6] In particular, time and time again, hospitals have asserted public nuisance and other claims to recover unreimbursed medical expenses.  But courts routinely dismiss such claims, as they are derivative of personal injuries to third parties and too remote to support liability as a matter of law.  *See, e.g.*, *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 703, 707 (9th Cir. 2001) (affirming dismissal of public nuisance claims by hospital districts against tobacco manufacturers, because the claims were entirely derivative of harms to smokers); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 443-44 (3d Cir. 2000) (similar); *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 849 (6th Cir. 2003) (similar) (collecting cases).  Hospital Plaintiffs' public nuisance claims thus fail.

interferences with public health might implicate a public right, not all do.  *See, e.g.*, *Lead Indus.*, 951 A.2d at 436, 448 ("lead poisoning constitutes a public health crisis" but does not involve public rights); *City of Chicago*, 821 N.E.2d at 1114 (concluding there is no public right to be "free from unreasonable jeopardy to health, welfare, and safety, and from unreasonable threats of danger to person and property" caused by illegal conduct of others).  At bottom, there is no public right to be free from allegedly deceptive marketing materials or the widespread distribution of a lawful prescription medication—even if there might be some effect on the health of individual members of the public.  As a result, Plaintiffs' public nuisance claims fail.

The Restatement makes this point clear.  Section 821B defines a public nuisance as an "unreasonable interference with a right common to the general public."  It then offers several "[c]ircumstances that may sustain a holding that an interference with a public right is unreasonable," including "(a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, [and] (b) whether the conduct is proscribed by a statute . . ."  Restatement, *supra*, § 821B(2).  The Restatement thus regards public health not as a public right in itself (as Plaintiffs would have it), but only as part of the context that might render interference with a public right unreasonable.  For example, if a factory pollutes a community water source, the factory might be interfering with a public right to access this indivisible public resource.  But a public nuisance would exist only if this interference is *unreasonable*.  If the pollution involves a significant interference with public health, that might sustain a finding of unreasonableness.  The same would be true under subsection (b) if the interference were proscribed by statute.  But the Restatement offers no support for the notion that public health is itself a public right, however, even if some interferences with public health might indeed interfere with a health-related public right.  *See Lead Indus.*, 951 A.2d at 453

7

("The state's allegation that defendants have interfered with the 'health, safety, peace, comfort or convenience of the residents of the [s]tate' standing alone does not constitute an allegation of interference with a public right."); *see also* Restatement, *supra*, § 821B (a public right is "collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured").  Plaintiffs' contrary reading is a distortion of an already overstretched Restatement provision.[7]

### C.    Plaintiffs Fail to Recognize That Widely Applicable Tort Defenses Bar Their Claims in Many States.

Plaintiffs focus on three defenses discussed in the Summit County R&R—the statewide concern, free public services, and economic loss doctrines—and argue these defenses should not bar claims *across all states*.  Pls.' Br. at 13.  These three defenses bar Plaintiffs' claims in far more states than Plaintiffs acknowledge.[8]

### 1.    Statewide Concern Doctrine

Plaintiffs assert that the statewide concern doctrine does not bar their claims because certain states' statutes authorize municipal governments to bring actions to abate public nuisances within their boundaries.  Pls.' Br. at 13–14.  But limited statutory authority says nothing about the scope of this authority and whether it is inherently restricted to addressing matters of local concern.  Regardless of statutory authority, the constitutional framework in some states expressly prohibits the legislature from authorizing counties to regulate matters that exceed the scope of local concerns.  *See, e.g.*, *Kramer v. Cty. Council for Dorchester Cty.*, 282 S.E.2d 850, 852 (S.C. 1981)

---

[7] Plaintiffs repeatedly refer to "the opioid epidemic," seemingly hoping the Court ignores the difference between the Restatement's conception of an epidemic—the threat of smallpox—and the alleged non-infectious, widespread misuse and abuse of prescription opioid medications allegedly precipitated by marketing misrepresentations.  *See* Restatement, *supra*, § 821B cmt. g.

[8] There are surely additional applicable affirmative defenses that would bar Plaintiffs' public nuisance claims, depending on the allegations and the relevant jurisdiction, but Defendants address only these three defenses here, because they are the ones on which Plaintiffs focus.  Defendants understand the task of detailing each and every possible affirmative defense to be beyond the scope of the Court's request.

(citing S.C. Const. art. VIII, § 14); *Arlan's Dep't Stores, Inc. v. Kelley*, 130 N.W.2d 892, 895 (Mich. 1964) ("The [Michigan] Constitution does not permit counties to determine legislative policies of Statewide concern, nor does it permit the State legislature to delegate such power."); *Mo. Bankers Ass'n v. St. Louis Cty.*, 448 S.W.3d 267, 273 (Mo. 2014) ("Municipal regulations meant to address a national crisis, which affect every state in the country, are not a matter of such distinctly local concern that the County is authorized to legislate pursuant to its delegated police power.").  Just as municipalities are prohibited from passing an ordinance regulating the marketing of prescription opioid medications generally, they cannot bring a lawsuit that seeks to accomplish the same end.[9]

### 2.    Free Public Services Doctrine

Plaintiffs argue that the free public services doctrine would not bar the claims here because it does not apply to abatement actions and "chronic wrongdoers."  Pls.' Br. at 14–15.  But Plaintiffs overlook the fact that the doctrine represents the "general common-law rule" and applies absent *clear* statutory or judicial recognition of a government entity's right to recover the costs of providing public services.  *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (applying the rule and noting that "this issue apparently has never been decided by District of Columbia courts"); *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (similar); *see also* W. Page Keeton et al., *Prosser and Keeton on Law of Torts* § 2, at 7 (5th ed. 1984) (noting that common law barred such suits due to the plaintiff's "political or governmental capacity").   Indeed, other federal courts have applied the rule to bar recovery

---

[9] Allowing municipalities to achieve through a lawsuit what they cannot achieve through an ordinance or regulation also would also impermissibly infringe on the powers and duties of Attorneys General to represent States in matters of statewide concern.  Doing so here would be especially problematic, given that certain Attorneys General have filed suits seeking similar relief, even if those claims lack merit for many of the reasons already addressed.

precisely when "it's not clear" that state law authorizes such recovery.  *See, e.g.*, *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1288–89 (11th Cir. 2015).

Plaintiffs do not dispute that the free public service doctrine is generally recognized at common law; rather, they contend that an exception applies here for costs caused by a public nuisance or long-term tortious conduct.  Pls.' Br. at 14–15.  Such an "exception" is not well-accepted, and many courts have recognized that it would "swallow[] the rule, since many expenditures for public services could be re-characterized by skillful litigants as expenses incurred in abating a public nuisance."  *Cty. of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 152–53 (2d Cir. 2013).[10]  Further, even if the exception applied, many costs—such as the costs to respond to specific incidents—are not nuisance-abatement costs that could even qualify for the exception.  *See id.* at 152–54; *City of Chicago*, 821 N.E.2d at 1147 (concluding that because "the damages [plaintiffs] seek do not represent the cost of abatement, the exception in *City of Flagstaff* . . . does not apply").  Thus, unless a state has clearly authorized the recovery sought in this litigation, the free public services doctrine is a viable defense.

Plaintiffs exaggerate the number of states that have authorized the supposed exception and misconstrue state law.  Even under the law of the states that Plaintiffs identify, the free public services doctrine remains a viable defense here.

- **Massachusetts, Michigan, New York, Rhode Island, and West Virginia**: Plaintiffs cite only trial court cases, *see* Pls.' Ex. 5, and state trial court decisions are not sufficient authority to make an *Erie* prediction as to whether state law authorizes such recovery.  *See Comm'r of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967); Part III, *infra*.

- **Illinois**: The Illinois Supreme Court rejected an exception for public nuisance actions, *City of Chicago*, 821 N.E.2d at 1146–47, which Plaintiffs' selective quotation does not reflect.

---

[10] *See also Walker Cty. v. Tri-State Crematory*, 643 S.E.2d 324, 328 (Ga. Ct. App. 2007); *City of Chicago*, 821 N.E.2d at 1146–47; *City of Philadelphia*, 126 F. Supp. 2d., at 894-95; *Baker v. Smith & Wesson Corp.*, No. Civ.A. 99C-09-283-FS, 2002 WL 31741522, at *6 (Del. Super. Ct. Nov. 27, 2002); *Bd. of Supervisors of Fairfax Cty. v. U.S. Home Corp.*, No. 85225, 1989 WL 646518, at *2 (Va. Cir. Ct. Aug. 14, 1989).

- **New York**: The Second Circuit explicitly rejected a "general 'public nuisance exception,'" absent such a pronouncement by New York's highest court, *Cty. of Erie*, 711 F.3d at 152, and Plaintiffs can only cite language discussing a "limited category" of recoverable expenses authorized by a narrow New York-specific statute, *id.* at 153.

- **Pennsylvania**: The Third Circuit in *City of Philadelphia* did not reject the rule; rather, the court below unequivocally held that the rule barred recovery against gun manufacturers for a public nuisance claim, 126 F. Supp. 2d at 894 (citing *City of Pittsburgh v. Eq. Gas Co.*, 512 A.2d 83, 84 (Pa. Commw. Ct. 1986)), and the Third Circuit did not disturb that holding, 277 F.3d at 420 n.4 (noting the lower court's holding and that the court need "not address these alternate grounds for dismissal").

- **Indiana**: The state's highest court narrowly held, "the mere fact that the City provides services as part of its governmental function does not render the costs of those services unrecoverable as a matter of law," but took care to explain that some costs nonetheless might be unrecoverable because "[t]here is an inherent issue in any attempt to recover cost of municipal government in responding to even a single incident such as an accident." *City of Gary ex rel. King. v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind. 2003).

### 3.  Economic Loss Doctrine

Contrary to Plaintiffs' position, Pls.' Br. at 15–16, the economic loss doctrine is not limited to particular torts or to claims between contracting parties.  Numerous jurisdictions recognize that the doctrine bars Plaintiffs' claims.  For example, in *City of Chicago*, the Illinois Supreme Court dismissed the City's public nuisance claim seeking economic damages from gun violence, ruling that the alleged damages were "solely economic damages."  821 N.E.2d at 1143; *see also Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 526 (D. Del. 2012) (applying economic loss doctrine under Delaware law); *Sedona Condo., Homeowners Ass'n v. Eagle Real Estate Grp.*, Nos. A523113, A526294, 2008 WL 8177908 (Nev. Dist. Ct. June 30, 2008) (same under Nevada law); *Sample v. Monsanto Co.*, 283 F. Supp. 2d 1088, 1092 (E.D. Mo. 2003) (same under Iowa law); *Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 394 (Fla. Dist. Ct. App. 2018) (same under Florida law); *see also* Minn. Stat. § 604.101 (economic loss doctrine imposes limits on product-based failure to warn and misrepresentation claims).

11

Even the cases cited by Plaintiffs do not support their position.  Pls.' Ex. 6.  For example, Plaintiffs cite two New Mexico appellate decisions as holding the economic loss doctrine applies *only* in limited circumstances.  But these cases do not hold that the rule can never apply outside those contexts.[11]  The same can be said of Plaintiffs' reference to *532 Madison Avenue Gourmet Foods, Inc. v. Finlandia Center, Inc.*, 750 N.E.2d 1097, 1100 (N.Y. 2001), as holding the "economic loss rule does not apply to nuisance claims in New York."  *532 Madison* did not so hold, and appellate courts in New York have since cited the case in holding that tort claims— including nuisance claims—fail when there are allegations of only economic loss.  *Cedar & Wash. Assocs., LLC v. Bovis Lend Lease LMB, Inc.*, 944 N.Y.S.2d 47, 48 (N.Y. App. Div. 2012).

## II.  THE PUBLIC NUISANCE STATUTES CITED BY PLAINTIFFS ARE MORE LIMITED IN SCOPE THAN PLAINTIFFS SUGGEST.

Although some states have codified public nuisance law, Plaintiffs incorrectly argue that all those statutes "give rise to causes of action in this litigation."  Pls.' Br. at 11; Pls.' Ex. 2.[12]  Some of these statutes contain express references to property and are inapplicable here.  *See* Exhibit A (providing text of the relevant statutes in Louisiana, Maine, Minnesota, South Dakota, and Tennessee).  Moreover, even where statutes do not contain express references to property, state supreme courts have nonetheless read property limitations into the statute.  *See, e.g.*, *Briscoe v. Harper Oil Co.*, 702 P.2d 33, 36 (Okla. 1985) (interpreting statutory nuisance as "unreasonable, unwarranted, or unlawful *use by a person or entity of property*"); *Laubenstein v. Bode Tower,*

---

[11] Moreover, New Mexico does not permit recovery for economic losses caused by "unintentional injury to another person."  *Nat'l Roofing, Inc. v. Alstate Steel, Inc.*, 366 P.3d 276, 278 (N.M. App. Ct. 2015).

[12] The analysis to follow focuses on state public nuisance statutes that are not necessarily a mere codification of common law public nuisance and thus subject to the same common law limitations already discussed.  *See, e.g.*, *Mutschler v. City of Phoenix*, 129 P.3d 71, 77 (Ariz. Ct. App. 2006) (finding public nuisance definition "was intended to cover offenses that were construed at common law as public nuisances."); *City of Gary*, 801 N.E.2d at 1230 ("[T]he language of the statute is very broad, and if read literally would create a cause of action for many activities not actionable as nuisances at common law and not generally viewed as improper even though they produce . . . one or more of the effects listed in the statute.  In recognition of this practical reality . . . Indiana courts have consistently referred to the common law reasonableness standard in applying the Indiana nuisance statute.").

*L.L.C.*, 392 P.3d 706, 707 n.3 & 709 (Okla. 2016) (same);[13] *Prairie Hills Water & Dev. Co. v. Gross*, 653 N.W.2d 745, 753 (S.D. 2002) (interpreting statutory nuisance as "a condition that substantially invades and unreasonably interferes with another's *use, possession, or enjoyment of his land*").

Other statutes are inapplicable for additional reasons.  Some require a nuisance to harm "*all*" persons who come within the sphere of its operation. Ala. Code § 6-5-121; Ga. Code Ann. § 41-1-2; *see also City of Douglasville v. Queen*, 514 S.E.2d 195, 199 (Ga. 1999) ("Inasmuch as a public nuisance must injure all members of the public who come into contact with it, (the evidence) to the contrary effectively erased [the plaintiff's] public nuisance cause of action.").  Here, however, it is indisputable that prescription opioid medications do not injure all members of the public who come into contact with them.  Other statutes fail to provide a cause of action here for a variety of reasons.  *See, e.g.*, *Diamond X Ranch LLC v. Atl. Richfield Co.*, No. 3:13-cv-00570-MMD-WGC, 2017 WL 4349223, at *11 (D. Nev. Sept. 29, 2017) ("[I]n Nevada there is no private right of action for a public nuisance."); *Dalarna Farms v. Access Energy Coop.*, 792 N.W.2d 656, 659 (Iowa 2010) ("[T]o constitute a nuisance there must be a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use."); *Idaho v Phillip Morris, Inc.*, No. CV-OC-97-03239D, 1998 WL 35222488 (Idaho Dist. Ct. Sep. 02, 1998) ("None of the conduct alleged by the State is injurious to health.  It is the use of tobacco products which is injurious to health, not advertising campaigns, deceptive statements, or the failure to market safer products.").  Plaintiffs' statutory arguments (like their common law ones) thus lack merit.

---

[13] Magistrate Judge Ruiz recently found that Oklahoma does not "expressly limit[]" public nuisance to claims relating to property.  R&R at 52, *Muscogee (Creek) Nation v. Purdue Pharma L.P.*, 1:17-md-02804-DAP, (N.D. Ohio Apr. 1, 2019), ECF No. 1499.  Defendants disagree and will separately detail their objections to the R&R at the appropriate time.

## III. PLAINTIFFS OVERSTATE VARIOUS STATE TRIAL COURT DECISIONS AND INCORRECTLY DISMISS OTHERS.

Plaintiffs pepper their brief with state trial court decisions adjudicating similar claims. Pls.' Br. at 16–23. But the Court should defer to those decisions only if they accurately reflect state law and are faithful to precedent from the state's highest court.[14] The cases relied on by Plaintiffs do not meet this standard. Because Plaintiffs seek to expand the scope of public nuisance liability, Defs.' Br. at 10–11, they must provide an "authoritative signal" that precedent from the state's highest court contemplates such an expansion. *State Auto*, 785 F.3d at 195; *accord City of Philadelphia*, 277 F.3d at 421 (declining to recognize a products-based public nuisance claim under murky state law because "it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent"). The trial court decisions cited by Plaintiffs provide no such signal; they are "*at most* persuasive but nonbinding authority." *Keeley v. Loomis Fargo & Co.*, 183 F.3d 257, 269 n.9 (3d Cir. 1999). The Sixth Circuit has refused to recognize or rework state torts even in the face of persuasive but nonbinding authority. *State Auto*, 785 F.3d at 199–200; *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 608–10 (6th Cir. 2012); *Peck v. Elyria Foundry Co.*, 347 F. App'x 139, 147–48 (6th Cir. 2009). And it has made clear that "[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [the court] should choose the narrower and more reasonable path." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004). This Court should do the same.

---

[14] *See Estate of Bosch*, 387 U.S. at 465; *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 160–62 (1948); *Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 605 (6th Cir. 1975) (giving some weight to a Tennessee trial court decision because it was "in accord with" an appellate court decision applying Tennessee Supreme Court precedent); *see also Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 370 (4th Cir. 2005) (declining to consider a South Carolina trial court case because "the case provides no guidance as to how the Supreme Court of South Carolina would rule on the issue presented here"); *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 199 n.9 (3d Cir. 2004) ("[W]e consider the [New Jersey trial court] decision to the extent that the quality of its analysis convinces us that the New Jersey Supreme Court would decide the issue similarly.").

**A.**     **The State Trial Court Decisions Expanding Public Nuisance Are Not Persuasive Readings of Those States' Laws.**

For three key reasons, the trial court decisions relied upon by Plaintiffs permitting public nuisance claims similar to those here are not persuasive and do not reflect how the relevant states' highest courts would decide the issue.  Pls.' Br. at 16–19.

*First*, none of the decisions rely on remotely analogous authority from the relevant state's highest court.  For example, the Alaska decision cites to *one* Alaska Supreme Court case, which merely adopts the Restatement definition of public nuisance.[15]  *State v. Purdue Pharma L.P.*, No. 3AN-17-09966CI, 2018 WL 4468439, at *4 & n.34 (Alaska Super. Ct. July 12, 2018) (*Alaska Opioids*).  For its analysis, the court offered the definition of public nuisance and then summarily concluded that the plaintiff stated a claim for public nuisance.  *Id.* at *4.  The decision provides no persuasive analysis (or analysis of any kind) and so says nothing about how the Alaska Supreme Court is likely to rule.  *See, e.g.*, *Twin City Fire Ins. Co.*, 433 F.3d at 370; *see also supra* Part I.A.

*Second*, several of the trial courts simply reasoned that their states follow the Restatement's definition of public nuisance, so the claim must be permitted.  *Ky. Opioids*, 2018 WL 3635765, at *6; *N.H. Opioids*, 2018 WL 4566129, at *13; *W. Va. Opioids*, 2014 WL 12814021, at *9; *Alaska Opioids*, 2018 WL 4468439, at *4.  As explained in Part I, that reasoning is flawed.  Regardless, whether a state trial court expanded public nuisance law based on a broad interpretation of public nuisance carries no weight in this Court's analysis because state trial courts can craft innovations in state law in ways that federal courts cannot.  *See Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (instructing that even if a federal court could predict an innovation in state law, when it

---

[15] *See also Commonwealth v. Endo Health Sols. Inc.*, No. 17-CI-1147, 2018 WL 3635765, at *6 (Ky. Cir. Ct. July 10, 2018) (*Ky. Opioids*) (citing no Kentucky Supreme Court case, only noting that "[t]he Kentucky Supreme Court adopted the Restatement Second of Torts' definition of public nuisance"); *State v. Purdue Pharma Inc.*, No. 217-2017-CV-00402, 2018 WL 4566129, at *13 (N.H. Super. Ct. Sept. 18, 2018) (*N.H. Opioids*) (relying only on the Restatement definition as well as out-of-state decisions); *State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, No. 12-C-141, 2014 WL 12814021, at *9 (W. Va. Cir. Ct. Dec. 12, 2014) (*W.Va. Opioids*) (same).

is "out of the mainstream of [state] jurisprudential development," the court should "be more chary of doing so than should an inferior state tribunal").[16]

*Third*, the New York, New Hampshire, and Washington decisions that Plaintiffs cite are particularly unpersuasive because they conflict with more persuasive *Erie* authority. A New York appellate court already rejected extending public nuisance under New York law to suits involving non-defective products. *People v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192 (N.Y. App. Div. 2003). And state appellate court decisions are "authoritative absent a *strong showing* that the [state supreme court] would decide the issue differently." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018). Plaintiffs cannot predict that the New York Court of Appeals would decide *Sturm* differently because "[t]he New York Court of Appeals has never recognized a common-law public nuisance cause of action based on allegations like those in this complaint," *Sturm*, 761 N.Y.S.2d at 194–95, and the holding in *Sturm* was "based on the reasoning and implications" of an analogous decision of the New York Court of Appeals. Thus, because *Sturm* hews closely to New York Court of Appeals precedent, this Court should follow *Sturm* and not Plaintiffs' New York trial court case. *Lukas v. McPeak*, 730 F.3d 635, 640 (6th Cir. 2013) ("[O]nly if the decision of a state's intermediate court *cannot be reconciled* with . . . decisions of the state's highest court . . . may a federal court sitting in diversity refuse to follow it.").

As to New Hampshire and Washington, federal courts applying those states' laws have rejected the theory that they permit public nuisance claims involving products, and the federal court in Washington specifically dismissed an identical claim in a prescription opioid medications

---

[16] Similarly, unlike the states' highest courts, which have wide latitude to expand public nuisance doctrine or reframe centuries of their public nuisance jurisprudence, an *Erie* court is bound by existing precedent and authoritative signals of a state's highest court. *Cf. City of Gary*, 801 N.E.2d at 1232 (characterizing the property-based nature of more than a thousand Indiana public nuisance cases as "happenstance").

case.[17]  In an *Erie* assessment, federal courts find other federal courts' decisions interpreting state law more persuasive than state trial court decisions, which makes sense because federal courts necessarily follow a strict mandate to hew closely to the jurisprudence of the states' highest courts.[18]  And given that the state trial court decisions are far from the only interpretation of state law on this issue, an *Erie* court "should choose the narrower and more reasonable path" that adheres to the long-accepted understandings of public nuisance.  *Combs*, 354 F.3d at 577.

### B.  The State Trial Court Decisions Dismissing Similar Public Nuisance Claims Are Persuasive.

In contrast, the trial court decisions dismissing similar public nuisance claims *are* persuasive authority because they each closely align with decisions of each state's highest court.

#### 1.  New Jersey

The New Jersey Supreme Court has held that public nuisance liability does not extend to products and that the New Jersey Products Liability Act (PLA) abrogated a products-based public nuisance claim.  *Lead Paint*, 924 A.2d at 503–05.  In *Grewal v. Purdue Pharma L.P.*, a New Jersey trial court dismissed a similar opioid suit precisely because the allegations were "similar to the

---

[17] *City of Everett v. Purdue Pharma L.P.*, No. C17-209RSM, 2017 WL 4236062, at *27 (W.D. Wash. Sep. 25, 2017) (dismissing public nuisance claims against opioid manufacturers in reliance on Wash. Rev. Code § 7.48.010, which defines an actionable nuisance as an "interfere[nce] with the comfortable enjoyment of the life and property"); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 416–17 (S.D.N.Y. 2005) (applying New Hampshire law in rejecting claim against gasoline manufacturers, because "plaintiffs seek to recover from defendants in their capacity as manufacturers, and not as property owners or users"); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126, 133 (D.N.H. 1984) (concluding that the sale of asbestos products cannot constitute a nuisance under New Hampshire law because "[t]he creator of the nuisance is responsible in his capacity as a property owner if a nuisance arises from the use of property in an unreasonable manner . . . [b]ut, in the instant case, Plaintiff seeks to recover from Defendant not in its capacity as a property owner, but in its capacity as a manufacturer" (citing *Shea v. City of Portsmouth*, 94 A.2d 902 (N.H. 1953))).

[18] *See, e.g.*, *ABS Entm't, Inc. v. CBS Corp.*, 163 F. Supp. 3d 103, 106 (S.D.N.Y. 2016) (following a federal court's more persuasive interpretation of state law even when it conflicted with a state trial court's interpretation); *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 n.1 (D.N.J. 2002) (noting that "the Court will consider decisions of the New Jersey Supreme Court, federal courts applying New Jersey law, the Appellate Division of the New Jersey Superior Court, and analogous decisions applying the law of other states" but that New Jersey trial court decisions were only "potentially persuasive"); 17A Moore's Federal Practice – Civil § 124.22[3] (2019) (discussing sources federal courts use for an *Erie* guess, including "decisions of the [federal] district court interpreting state law" but not state trial court decisions).

allegations in *Lead Paint*" as well as other New Jersey cases.   No. ESXC-245-17, 2018 WL 4829660, at *17–18 (N.J. Super. Ct. Oct. 2, 2018).  Plaintiffs argue that *Grewal* is wrongly decided because the claims in this litigation are more like those permitted in New Jersey handgun litigation. Pls.' Br. at 22.  That argument fails for two reasons.

First, the viability of public nuisance claims under New Jersey law does not turn solely on whether the PLA subsumes the claims.  The New Jersey Supreme Court also took care to explain that its "analysis of both traditional and modern concepts of the tort of public nuisance demonstrates that plaintiffs' complaints cannot be understood to state such a claim."  *Lead Paint*, 924 A.2d at 503.  Thus, *Lead Paint* supports rejecting the products-based claims here, for they too stand far afield from traditional and modern concepts of public nuisance.  Next, even if this case were more akin to handgun cases, the public nuisance claims still would not be viable under New Jersey law.  *See Camden Cty.*, 273 F.3d at 539–40 (rejecting public nuisance claims against handgun manufacturers, because New Jersey does not permit public nuisance claims against manufacturers of lawful products).

### 2.      Connecticut

The Connecticut Supreme Court held that a municipality could not state a public nuisance claim against gun manufacturers and distributors where the municipality "alleged that the defendants unreasonably use land . . . for the purpose of marketing and selling handguns," because the misconduct alleged was too remote from any injury.  *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 114–15 (Conn. 2001).  In *City of New Haven v. Purdue Pharma, L.P.*, a Connecticut trial court, relying on *Ganim*, held that "our [Supreme] Court has considered these issues in a case remarkably like these cases and has emphatically held that these claims don't belong in court." No. X07HHDCV176086134S, 2019 WL 423990, at *3 (Conn. Super. Ct. Jan. 8, 2019).  Plaintiffs wrongly contend that the Court should ignore *City of New Haven* because it followed *Ganim*.

According to Plaintiffs, *Ganim*'s reasoning depended on the *Holmes* factors, which this Court found not to warrant dismissal of some claims under Ohio law.  Pls.' Br. at 20–21.[19]

Plaintiffs' reasoning turns both *Ganim* and *Erie* on their heads.  *Ganim* did not simply apply the *Holmes* factors.  Rather, *Ganim* held that the claim was not cognizable because the chain of causation was too attenuated under state law, and the *Holmes* factors merely offered further support to that conclusion.  780 A.2d at 124, 132.  *City of New Haven* found the chain of causation regarding opioid claims so similar to *Ganim* that dismissal was warranted.  2019 WL 423990, at *4.  Further, even if *Ganim* only involved an application of the *Holmes* factors, this Court would be bound by the Connecticut Supreme Court's framework for analyzing proximate cause under *Holmes*.  *See R&R*, 2018 WL 4895856, at *38–39 (following the Ohio Supreme Court's application of the *Holmes* factors).

Plaintiffs' other arguments for why this Court should disregard *City of New Haven* and *Ganim* also lack merit.  Plaintiffs contend that later Connecticut Supreme Court decisions have "fundamentally altered notions of proximate cause and remoteness."  Pls.' Br. at 21.  But the Connecticut Supreme Court has not overturned or limited *Ganim*, and none of the cases cited by Plaintiffs even mention *Ganim*.  Plaintiffs also ask this Court to ignore *City of New Haven* because it is based on non-justiciability principles.  Pls.' Br. at 22.  But that was *Ganim*'s bottom line: due to a lack of standing, some claims do not fall within Connecticut courts' jurisdiction and it is "part of the judicial task, based on policy considerations, of setting some reasonable limits on the legal consequences of wrongful conduct."  780 A.2d at 120.  *City of New Haven* applied the same reasoning.  2019 WL 423990, at *3.

---

[19] Plaintiffs misconstrue this Court's opinion.  This Court only applied and discussed the *Holmes* factors as to the RICO claims.  2018 WL 6628898, at *6.  The R&R similarly limited its discussion of *Holmes* to the RICO and negligence claims.  2018 WL 4895856, at *13–16 (federal RICO), *38–39 (negligence).

### 3.    Delaware

In Delaware, a state trial court dismissed the State's public nuisance claim against opioid manufacturers and distributors due to the complete absence of Delaware Supreme Court case law authorizing an even remotely analogous theory.  *State ex rel. Jennings v. Purdue Pharma L.P.*, No. N18C-01-223 MMJ CCLD, 2019 WL 446382, at *12 (Del. Super. Ct. Feb. 4, 2019).[20] Plaintiffs contend that the Delaware decision was "idiosyncratic."  Pls.' Br. at 3 n.2.  Not so.  The Delaware court actually recognized that "[o]ther jurisdictions also have refused to allow products-based public nuisance claims" and, just as in Delaware, "[t]here is a clear national trend to limit public nuisance to land use."  *Jennings*, 2019 WL 446382, at *12 & n.70 (collecting cases).  The court distinguished this Court's *Summit County* opinion as based on particularities in *Ohio law* and statutory abrogation—not because of particularities of *Delaware law*.  *Id.* at *12.  Thus, Plaintiffs present no reason for this Court to ignore the Delaware decision.

* * *

The New Jersey, Connecticut, and Delaware decisions therefore affirm what those states' supreme court precedent and the traditional understanding of public nuisance already make clear: public nuisance theories involving the marketing, distribution, and sale of prescription opioid medications fail to state a claim.

### CONCLUSION

For the reasons above as well as in Defendants' Opening Brief, Defendants submit that the public nuisance claims alleged here are not viable.

---

[20] For this reason alone, the Delaware opioid decision is persuasive and accurately reflects state law.  Further support comes from another Delaware trial court holding that Delaware does not recognize public nuisance claims involving products.  *Sills v. Smith & Wesson Corp.*, No. 99C-09-283-FSS, 2000 WL 33113806, at *7 (Del. Super. Ct. Dec. 1, 2000) (dismissing a public nuisance claim against gun manufacturers because "Delaware has yet to recognize a cause of action for public nuisance based upon products" and "Delaware public nuisance claims have been limited to situations involving land use").

DATED: April 5, 2019

/s/ Carole S. Rendon
Carole S. Rendon
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 621-0200
crendon@bakerlaw.com

*Liaison Counsel for the Manufacturer Defendants*

/s/ Enu Mainigi
Enu Mainigi
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
(202) 434-5000
emainigi@wc.com

*Liaison Counsel for the Distributor Defendants*

/s/ Kaspar Stoffelmayr
Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlit-beck.com

*Liaison Counsel for the Pharmacy Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 5, 2019, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system, and will be served via the Court's CM/ECF filing system on all attorneys of record.

DATED: April 5, 2019

/s/ Carole S. Rendon
Carole S. Rendon