# Exhibit 3

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Donna M. Welch, P.C.
To Call Writer Directly:
+1 312 862 2425
donna.welch@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

January 4, 2019

**Via Electronic Mail**

Special Master David Cohen
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio  44113-1837
david@specialmaster.law

Re:  Manufacturer Defendants' Renewed Motion to Compel Immediate and Full Compliance With Discovery Ruling Nos. 5 and 13

Dear Special Master Cohen:

This letter renews Manufacturers' November 23rd motion to compel immediate and full compliance with Discovery Ruling No. 5.  In ruling on that motion, on November 27, 2018, you ordered Plaintiffs to "make a single uniform choice" by responding to all or none of the five "prescription-level" interrogatories addressed in Discovery Ruling No. 5 by December 7, 2018.  (Ex. A).  Plaintiffs avoided complying with that Ruling for over a month by requesting formalization of the order, which you issued in Discovery Ruling No. 13 on December 22, 2018.  (Ex. B, Dkt 1215).  In response to that formalized Ruling, Plaintiffs submitted a Supplemental Response on December 31, 2018, purporting to answer Manufacturer Interrogatory No. 6 for the first time.  (Ex. C).  Despite the amount of time that Plaintiffs have had to respond, however, Plaintiffs' responses to the interrogatories remain materially deficient.

Plaintiffs' strategy with respect to these interrogatories is now clear—run out the fact discovery clock without providing full and complete responsive information about their theories or the specificity which the Court has repeatedly ordered that the Manufacturer Defendants are entitled to about the types of prescriptions for which Plaintiffs seek to recover.  Now, two months after the initial Discovery Ruling No. 5, the need for prompt, complete answers to all three of the Interrogatories at issue (as modified in your Ruling) is particularly acute given the January 25th discovery cutoff and Defendants' need to conduct follow-up discovery on the theories, prescriptions, and doctors identified by Plaintiffs.  Accordingly, Manufacturer Defendants move to compel immediate and full responses.

**KIRKLAND & ELLIS LLP**

Special Master David Cohen
January 4, 2019
Page 2

I. **PLAINTIFFS FAILED TO FULLY ANSWER INTERROGATORY NO. 6.**

    Manufacturer Interrogatory No. 6 (as amended by DR #5) requires Plaintiffs to:

    Identify and describe 500 prescriptions of opioids that were written in [Plaintiff's jurisdiction] in reliance on any alleged misrepresentations, omissions, or other alleged wrongdoing by any Defendant. Include in the response the healthcare provider; the patient; the date of prescription; which opioid or opioids were prescribed; *the specific misrepresentation, omission, or wrongdoing* that allegedly caused the prescription to be written; *the Defendant and the specific sales representative(s), employee(s), or agent(s)* of the Defendant that made or committed the alleged misrepresentation, omission, or wrongdoing; *the person or persons to whom the alleged misrepresentation or omission was made* or to whom the alleged wrongdoing was directed; and *whether, by whom, and for how much the prescription was approved for reimbursement*. Your response must include at least 10 prescriptions for an opioid sold by each manufacturing defendant.

The Court has recognized that this Interrogatory requests information distinct from Interrogatory Nos. 7 and 10. So did Plaintiffs, as for months Plaintiffs avoided responding to this Interrogatory even though they responded (albeit incompletely) to Nos. 7 and 10. [Dkt. 1058]. And in their Supplemental Responses filed on December 31, Plaintiffs admit Interrogatory Nos. 7 and 10 "seek information about prescriptions that were harmful or unnecessary, while Interrogatory 6 seeks information about the extent to which doctors relied on Defendants' wrongful conduct [and that] these are *distinct subjects*, relating to different elements of Plaintiffs' claims . . . ." (Ex. C at 2–3 (emphasis added)).

    Nevertheless, after months of delay, Plaintiffs responded to Interrogatory No. 6 on December 31 simply by referring to the same list of prescriptions, doctors, and individuals they provided in attempting to respond to Interrogatory Nos. 7 and 10. More fundamentally, however, Plaintiffs failed to provide the discrete and critical information requested in Interrogatory No. 6: the details about the specific misstatements that each specific doctor relied on in writing each specific prescription. In particular, Interrogatory No. 6 requires Plaintiffs to identify:

    (i) "the *specific* misrepresentation, omission, or wrongdoing that allegedly caused the prescription to be written";
    (ii) "the *specific* sales representative(s), employee(s), or agent(s) of the Defendant" that made the alleged misrepresentation; and
    (iii) "the *person or persons* to whom the alleged misrepresentation or omission was made."

KIRKLAND & ELLIS LLP

Special Master David Cohen
January 4, 2019
Page 3

With less than a month left in fact discovery, Plaintiffs have failed to provide any of this detail. Instead, Plaintiffs simply copied-and-pasted their response to Interrogatory No. 9 (Ex. D), which describes nine general categories of alleged misrepresentations with a handful of general examples that are not linked to any particular doctor or prescription. Plaintiffs did not identify when, or even if, ***any*** of the prescribers identified in their Exhibit A heard any of the alleged misrepresentations, let alone identify which alleged misrepresentations each prescriber relied on in writing each prescription Plaintiffs identified. That is the critical aspect of this Interrogatory, and indeed Plaintiffs' case against the Manufacturers, and once again Plaintiffs have ducked it.

Likely anticipating this motion, Plaintiffs cite your comment in Discovery Ruling No. 13 that "plaintiffs have sufficiently identified the connections between the prescriptions and the misstatements at issue." (Ex. B, Dkt 1215 at 7). But this comment specifically addressed Interrogatory No. 7. And, as Plaintiffs themselves have acknowledged (*see* Ex. C at 2–3), Interrogatory No. 6—as rewritten by you in Discovery Ruling 5—relates to a "distinct subject" and requires more detailed and specific information related to prescriber reliance in writing specific prescriptions. The limited information that you ruled was sufficient to respond to Interrogatory No. 7 (which we dispute), is self-evidently insufficient to respond to Interrogatory No. 6.

Plaintiffs' failure to answer this aspect of the Interrogatory is particularly glaring because they claim to have received and reviewed the information necessary to do so. Specifically, Plaintiffs claim that they identified the general alleged misrepresentations "[b]ased upon a review of relevant call notes." (Ex. C at 14–15). But Plaintiffs refuse to provide even the level of specificity that might be discernable from the call notes (e.g., dates of visits and materials provided to particular doctors) because they know that their claims will fall apart if they are forced to do so. For example, although Plaintiffs' Exhibit A purports to identify 10 different doctors who relied on alleged misrepresentations in writing prescriptions for opioids manufactured by each Manufacturer Defendant, there is no evidence that any Allergan or Actavis sales representatives (or any other employee) ever even visited at least five (half) of those doctors, let alone communicated alleged misrepresentations to them. And while Plaintiffs vaguely refer to "written publications, websites, and programs that were available or disseminated in the jurisdictions," they fail to identify even a general timeframe for when the doctors identified in their Exhibit A looked at those materials, if at all, or how these doctors relied on these publications in writing a prescription.

Put simply, even after being required to link only a relatively small number of hand-selected prescriptions (as opposed to every prescription for which they seek to recover) to the alleged misrepresentations, Plaintiffs have failed. Instead, Plaintiffs again resort to their theory of aggregate reliance and proof: "***all*** prescriptions of opioids for chronic pain in the Bellwether Jurisdictions were written in reliance on the misrepresentations, omissions, and wrongdoing alleged in

## KIRKLAND & ELLIS LLP

Special Master David Cohen
January 4, 2019
Page 4

their complaints."  (Ex. C. at 5).  Plaintiffs' inability or unwillingness to tether particular alleged misstatements by particular manufacturer defendants on particular dates to particular prescriptions does not comply with Interrogatory No. 6.  Accordingly, Plaintiffs should be immediately required to provide a full and complete response to Interrogatory No. 6.

### II.  PLAINTIFFS HAVE FAILED TO RESPOND TO OTHER ASPECTS OF INTERROGATORY NOS. 6, 7, AND 10.

Manufacturer Defendants' November 23rd motion to compel raised two other general deficiencies with Plaintiffs' response to Interrogatory Nos. 7 and 10 that Plaintiffs have yet to correct.  In your November 27 email ruling, you "direct[ed] Plaintiffs to take steps to address the issues raised by defendants in Sections III-V of Donna Welch's 11/23/18 letter, some (but not all) of which are well-taken.  The parties should meet and confer on these issues." (Ex. A).  Although the parties did meet and confer on these issues on two separate occasions, because Plaintiffs had not declared whether they intended to respond to Interrogatory No. 6 or withdraw their answers to all Interrogatories until December 31, two of these issues (III and IV) have not been resolved.  Manufacturer Defendants respectfully ask you to order the Plaintiffs to address the following two issues immediately.

### A.  Plaintiffs Fail to Identify the Requisite Number of Individuals and Prescriptions Linked to Each Defendant (Section III from the November 23rd Motion).

Interrogatory No. 7 and Discovery Ruling No. 5 require Plaintiffs to include information for at least 10 persons who were prescribed an opioid sold by *each manufacturing defendant*.  Yet, Plaintiffs group together certain named manufacturing defendants in an obvious effort to disguise their failure to identify at least 10 persons prescribed an opioid sold by each of the manufacturing defendants.  For example, Plaintiffs lump together all of the individual "Actavis" entities, as well as Allergan plc and Allergan Finance, LLC, as "Actavis-Allergan," even though they are separate companies and separately named manufacturing defendants.  Similarly, Plaintiffs have grouped Teva USA with Cephalon as "Teva-Cephalon."  In so doing, Plaintiffs fail to identify data relating to *each manufacturing defendant*.  As far as opioid medications, Summit County identified only 3 individuals (not 10) prescribed an opioid sold by Allergan plc or Allergan Finance, LLC (Norco and Kadian), and one of those individuals received only a single 1-day prescription for 10 mg Norco in February 2007 (Cuyahoga County identified only four such individuals).  As another example, Cephalon manufactures and sells only two prescription opioids: Actiq and Fentora.  Cuyahoga County identified only two individuals (and Summit County identified *no* individuals) who were prescribed Actiq or Fentora.  Similarly, Janssen manufactured and sold Nucynta and Duragesic during the relevant time period.  But Summit County identified only three individuals who were prescribed an opioid medication manufactured by Janssen, while Cleveland identified

# KIRKLAND & ELLIS LLP

Special Master David Cohen
January 4, 2019
Page 5

only four individuals, and Akron identified only two individuals.  Nor did Plaintiffs identify the medical condition for which any of the prescriptions were written, as required by Interrogatory No. 7.  Plaintiffs simply assert that all of the individuals had a diagnosis of "opioid use disorder" at some unidentified time (discussed more fully below).

Plaintiffs' responses to Interrogatory Nos. 6 and 10 are similarly deficient.  Interrogatory Nos. 6 and 10 require identification of at least 10 opioid prescriptions sold by each manufacturing defendant, along with additional specific information described above.  In the Cuyahoga County data, the two patients prescribed Actiq or Fentora received a total of eight (not ten) prescriptions.  And again, Summit County failed to identify a single prescription for Actiq or Fentora.  Summit County identified only 4 (not 10) prescriptions for opioids sold by Allergan Finance, Allergan plc, or their affiliates, not one of which was prescribed in the last seven years.

In addition, several of the prescriptions identified are for generic propoxyphene medications (propoxyphene with acetaminophen and propoxyphene napsylate), a Schedule IV controlled substance not previously referenced in this case and withdrawn from the market several years ago.  In the Cuyahoga County data associated with "Teva-Cephalon," for example, propoxyphene medications account for 14 of the 32 prescriptions identified and were prescribed to eight of the 18 patients identified.  Similarly, the data provided by Summit County also includes prescriptions for pain medications containing propoxyphene: 46 of 62 prescriptions were for medications including propoxyphene and 26 of the 30 patients identified were prescribed propoxyphene.  The identification of these prescriptions does not satisfy Discovery Ruling No. 5 and is contrary to Discovery Ruling No. 2, which defines opioids subject to discovery in this matter as Schedule II opioids.

Aside from the eight Actiq and Fentora prescriptions, all of the other prescriptions associated with "Teva-Cephalon" are for generic opioid medications.  Teva did not promote generic medications and therefore could not have made specific misrepresentations about these medications.

Finally, as to Janssen, for many, if not most, of the Duragesic and Nucynta prescriptions identified, Plaintiffs fail to identify the healthcare provider, and in all instances wholly fail to provide "the basis for Plaintiffs' assertion that the prescription was unauthorized, medically unnecessary, ineffective or harmful." Dkt. 1027 at 4. In their Response, Plaintiffs purport to identify several healthcare providers that were prosecuted or subject to discipline for unauthorized prescriptions, but none of those providers was identified as providers for Duragesic
or Nucynta prescriptions in the attached charts, even where Plaintiffs manage to identify a provider at all.  Instead, Plaintiffs again rely on boilerplate language to the effect that all of the prescriptions were unnecessary:

## KIRKLAND & ELLIS LLP

Special Master David Cohen
January 4, 2019
Page 6

>  Bellwether Plaintiffs further contend that, by misrepresenting the risks, benefits, and superiority of opioids, particularly for use long-term and at high doses, including, but not limited to, through sales visits, continuing medical education and speaker programs, publications and websites, and treatment guidelines, Manufacturer Defendants deprived prescribers and patients of the ability to make informed choices about whether, when, and which opioids to prescribe and use, for how long, and at what doses. Though Defendants do not define "unauthorized" "medically unnecessary," or "harmful," bellwether Plaintiffs contend that Defendants' misstatements regarding the benefits and very significant risks of opioids, and redefinition of the standard of care to include opioids, rendered the prescriptions unauthorized, unnecessary, and harmful in that they were prescribed and taken without full and accurate information.

Again, Plaintiffs cannot have it both ways, simultaneously relying on aggregate proof while purporting to put forth individualized evidence.

   B.    **Plaintiffs Refuse to Provide the Claims Data That Supports the Assertions in Their Responses (Section IV from the November 23rd Motion).**

   Plaintiffs responded to Interrogatory Nos. 6, 7, and 10 by providing prescription claims data for the individuals listed in their Exhibit A, each of whom Plaintiffs assert "has a diagnosis of opioid use disorder, and therefore has suffered and/or continues to suffer significant harm." (E.g., Ex. E, Cleveland Resp. to Interrog. No. 7).  Yet, even though a key part of Interrogatory No. 7 requires Plaintiffs to identify the condition *for which each prescription was written*, Plaintiffs not only fail to respond to that question but also now refuse to provide the underlying medical claims data or diagnosis information associated with those individuals and prescriptions that Plaintiffs relied on in their responses.  Moreover, during a meet and confer, Plaintiffs admitted that even though they identified thousands of individuals on Exhibit A as allegedly having opioid use disorder in their supplemental interrogatory responses, ***Plaintiffs themselves never had any information about the medical conditions for which the prescriptions were written that plaintiffs now claim were medically unnecessary***.  According to Plaintiffs, they do not have any documentation that would support their assertion that the persons identified in Exhibit A have opioid use disorder.  Instead, they are relying on information provided by a third party that they are now withholding from Defendants.

   Plaintiffs cannot shield this information from Defendants simply because they received it from a third party. It is axiomatic that Plaintiffs should not be allowed to rely on data to respond to Interrogatory Nos. 6, 7, and 10 when that data is being withheld from Defendants.

# KIRKLAND & ELLIS LLP

Special Master David Cohen
January 4, 2019
Page 7

      Defendants need this information to test the assertions in Plaintiffs' response. By refusing to provide the pharmacy and medical claims data associated with the patients they identified, Plaintiffs are preventing Defendants from obtaining the information necessary to (i) test Plaintiffs' assertion that each person identified in Exhibit A was diagnosed with an opioid use disorder and (ii) understand what condition each person received a prescription for. This is improper, violates Defendants' due process right to defend themselves against Plaintiffs' claims, and certainly does not comport with Plaintiffs' Court-ordered obligations or their prior commitments to the Court to respond to the interrogatories "in full."

      Just as inappropriate, in responding to Interrogatory Nos. 6, 7, and 10, Plaintiffs also rely on their Exhibit B, which allegedly includes "individuals in the bellwether jurisdictions who died from overdoses as a result of the use of prescription opioids." But Plaintiffs failed to produce any pharmacy claims data *or* medical claims data associated with these individuals, which makes it impossible to know whether anyone included in Exhibit B ever received a legitimate prescription for one of the opioid medicines at issue in this case. Plaintiffs have yet to provide any explanation for their failure to do so or explain how a list of names unconnected to any actual prescriptions answers any of the questions raised in the Interrogatories.

      Plaintiffs' previously claimed that they cannot produce the medical claims data because the third parties that provided the pharmacy claims data (e.g., Medical Mutual of Ohio) have taken the position that the diagnosis codes in the medical claims data implicate Part 2 of the Substance Abuse and Mental Health Services Administration Act. Since that time, however, the Court ordered and the parties have agreed on a procedure to produce data that Plaintiffs claim is subject to Part 2 in a de-identified fashion that would allow Defendants to match that data to other produced data (including all sources of pharmacy claims data) via a unique identifier. That process should apply equally to the data underlying the responses to Interrogatory Nos. 6, 7, and 10.

      Regards,

      /s/ Donna M. Welch, P.C.