**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45090<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 17-OP-45004 | MDL NO. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION FOR RELIEF RELATED TO EXPERT DEPOSITIONS**

On March 25, 2019, Plaintiffs served 20 expert reports from 19 different experts totaling over 1,800 pages. Those reports include opinions relating to approximately 20 distinct Defendant Families (comprised of approximately 50 individual Defendants)[1] within three separate Defendant Groups (*i.e.*, manufacturers, distributors, and pharmacies) and were accompanied by tens of thousands of pages of exhibits, backup materials, and appendices. Many of the experts have multiple, detailed separate opinions directed at specific individual Defendants.[2] Since then, Plaintiffs have submitted multiple supplements, including four this past week, and Plaintiffs will disclose four additional diversion experts on April 15.[3] Despite this enormous volume of information, Plaintiffs insist that each expert deposition may last no longer than seven hours with only two questioners per Defendant Group. Not only does this contravene the Federal Rules of

---

[1]  To name just one example, Allergan Finance, LLC and Allergan plc make up one Defendant Family.
[2]  For example, David Egilman's expert report includes 489 "opinions," most of which are Defendant-specific.
[3]  Plaintiffs sought this extension in order to issue their diversion expert reports after depositions of DEA witnesses were complete. It appears that those depositions will now continue until May 15, which may further delay Plaintiffs' issuance of final versions of these expert reports.

Civil Procedure, but it would also deprive individual Defendants of any ability to meaningfully defend themselves by questioning those experts about their individual, Defendant-specific positions and any individual Defendant-specific issues.

As this Court itself has acknowledged: "There has never been a litigation such as the Opioid MDL."[4] Plaintiffs' experts espouse novel theories of reliance and causation—eschewing traditional requirements of individualized proof—and offer past damages and future abatement calculations that are unprecedented in American jurisprudence, totaling billions of dollars in damages and abatement for just the two Ohio counties in Track 1. As a result, this case demands *heightened* attention to the Due Process rights of the Defendants.

Despite this complexity, and knowing that Defendants have only 14 business days to complete all depositions of Plaintiffs' experts under CMO 8, Plaintiffs have now severely prejudiced Defendants by refusing to allow two-day depositions (even for dates their experts have already held) for their most critical experts. Such prejudice is further compounded because Plaintiffs have already benefitted from a prior 45-day extension for their expert reports and have now taken self-help extensions of time not granted by the Court. For example, not only have they served supplemental reports for five experts well after the March 25 deadline without leave of Court, but also they remain in violation of CMO 8 by failing to produce the key reliance materials and underlying data associated with a number of Plaintiffs' most important expert reports. *See, e.g.*, D. Welch Decl. Exs. 1-6 (deficiency letters sent by Defendants regarding 11 of Plaintiffs' expert reports).

Given the magnitude and complexity of the case, the scope and number of the opinions, and the massive number of parties involved, the plain language of Rule 30 *requires* the Court to

---

[4] March 20, 2019 Opinion and Order re Motion to Disqualify Carole Rendon, ECF No. 1458 (explaining that "Plaintiffs have asserted novel legal theories").

grant Defendants additional time beyond seven hours to fairly examine these experts. Allowing expert discovery to proceed without the additional time needed for a fair examination would deny Defendants their fundamental rights to Due Process. Defendants thus seek an emergency order requiring that: (1) certain experts (as identified in Appendix A) be made available for at least two days of deposition testimony;[5] (2) each Defendant Family is allowed to question each of Plaintiffs' experts on issues specific to it (in addition to a lead questioner per Defendant Group); and (3) Plaintiffs must produce all reliance materials and data at least 14 days before each expert is deposed. Absent such an order, Defendants will be deprived of their fundamental Due Process rights.[6]

## ARGUMENT

Plaintiffs have consistently conceded that expert discovery is critical to proving their novel theories—in fact, they have refused to answer countless interrogatories on the basis that answers would be provided in their expert reports. By the same token, expert discovery is critical for Defendants seeking to defend against these novel reliance and causation theories and calculations that purport to generate billions of dollars in alleged damages in two counties. With those reports now in hand—in many cases proffering complex quantitative models, with Defendant-specific assumptions and opinions, and based on reams of newly produced data—each Defendant must be afforded an opportunity to question each expert in order to adequately test Plaintiffs' positions and develop a record that supports its unique defenses.

Fairness dictates—and Due Process requires—that each Defendant have an opportunity to question each expert regarding the specific assumptions and opinions that relate to each respective

---

[5] Defendants reserve their rights to seek leave to depose experts for additional time.
[6] Defendants reiterate their earlier arguments that the schedule in this massive and unprecedented litigation is unworkable and reserve all rights to seek further relief regarding the deadlines for expert discovery, *Daubert* motions, dispositive motions, and trial in CMO 8.

Defendant and be permitted sufficient time to do so. The ability to question witnesses is fundamental to the Due Process right of civil litigants, and any curtailment of that right creates an immediate and severe prejudice. *See, e.g.*, *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992) ("Due process mandates that a judicial proceeding give all parties an opportunity to be heard on the *critical and decisive allegations* which go to the *core* of the parties' claim or defense and to present evidence on the contested facts." (quoting *Complaint of Bakers Tr. Co. v. Bethlehem Steel Corp.*, 752 F.2d 874, 890 (3d Cir. 1984)).

It is common and, in fact, standard in large multi-party litigation to have multiple days of expert questioning—and this litigation, as the Court has recognized, is unparalleled in its complexity and breadth. Federal Rule of Civil Procedure 30(d)(1) does not merely permit such a result, but instructs that "[t]he court **must** allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent." Fed. R. Civ. P. 30(d)(1) (emphasis added);[7] *see also* Fed. R. Civ. P. 26(b)(1) ("*Parties may obtain discovery* regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, *considering the importance of the issues at stake in the action, the amount in controversy,* the parties' relative access to relevant information, the parties' resources, *the importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (emphases added)). And the initial deposition protocol entered in this litigation sets a presumptive time limit of seven hours only "for fact witness depositions"—*not for expert witness depositions.* ECF No. 643 at 7. But Plaintiffs seek to deprive Defendants of a fair opportunity to

---

[7] The 2000 Amendment Committee Notes to Rule 30 make clear that circumstances justifying additional time beyond seven hours include "multi-party cases" that implicate "the need for each party to examine the witness" and, "with regard to expert witnesses, there may more often be a need for additional time—even after the submission of the report required by Rule 26(a)(2)—for full exploration of the theories upon which the witness relies."

defend themselves by (1) insisting on a seven-hour limit for each expert deposition, and (2) forcing the Track 1 Defendants to limit themselves to two questioners per Defendant Group.[8]

Given the unprecedented magnitude and complexity of the case, the scope and number of the opinions, and the large number of parties involved, proceeding with these unworkable and unfair restrictions will deny Defendants their fundamental Due Process rights.  By way of example only, David Kessler's expert report contains over 50 opinions about 6 manufacturers and 11 separate medications.  His report spans well over 500 paragraphs of Defendant-specific allegations, and includes 1,248 footnotes, as well as citations to tens of thousands of produced documents, over 250 articles, and nearly 200 depositions, among other materials.  Similarly, David Egilman's expert report includes 489 "opinions," the overwhelming majority of which are Defendant-specific.  Likewise, Matthew Perri's expert report is more than 150 pages long and is also comprised mostly of Defendant-specific opinions, along with an additional 19 schedules amounting to over 3,500 pages largely addressing individual Defendant content and allegations. Defendants have detailed why at least two days are needed to depose the experts at issue in the attached Appendix A.

The Supreme Court has repeatedly made clear that the need to prove individualized causation cannot be dispensed with to make a case work as a mass action or class action.  *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 597 (1997); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring).  And for good reason, as "the Due Process Clause prohibits a State from punishing an individual without first providing that individual with

---

[8] While the parties agreed to certain efficiencies for the limited purpose of fact witness depositions (and plan to consolidate questioning for experts with one examiner per Defendant Group where it is appropriate to do so), a two-questioner rule makes no sense—and would be fundamentally unfair—when applied to expert witnesses who (1) purport to opine on the conduct of nearly every Defendant in the Track 1 cases, and/or (2) offer Defendant-specific opinions, and-or (3) purport to rely upon Defendant-specific materials.

'an opportunity to present every available defense,'" which necessarily includes the concomitant right to *develop* available defenses. *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)); *see also Columbus-Am. Discovery Grp.*, 974 F.2d at 470 ("While the efficient administration of justice is always an important consideration, fundamental fairness to every litigant is an even greater concern.").

Allowing each Defendant an opportunity to question each disclosed expert who offers Defendant-specific opinions is necessary because Defendants are not a singular, undifferentiated group of corporate entities. Each Defendant is a separate entity with its own employees, products, and conduct. Each Defendant is the subject of distinct allegations. And each Defendant is entitled to explore and understand how an expert's opinions relate to it specifically, particularly when that expert opines at length on each specific Defendant family (see examples above and attached in Appendix A). It is therefore axiomatic that any expert deposition must allow adequate opportunity for each Defendant to question Plaintiffs' experts on the *specific* bases for the *specific* opinions rendered *specifically* as to it—not merely how the expert's opinions relate to the "Manufacturer Defendants" or the "Distributor Defendants" as monoliths.

Defendants are working diligently to determine where their questioning of experts may overlap to avoid duplicative and repetitive inquiries.[9] And to be sure, Defendants will exercise good judgment and practicality about how long any particular expert deposition should take and how many attorneys should participate as questioners. In fact, Defendants have been judiciously reviewing the expert reports and have agreed to depose four of Plaintiffs' experts—David Courtwright, Scott Wexelblatt, Ted Miller, and Nancy Young—within a seven-hour time limit.

---

[9] *See* Fed. R. Civ. P. 30(d)(1), 2000 Amendment Committee Notes ("In multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning should be avoided and parties with similar interests should strive to designate one lawyer to question about areas of common interest.")

6

But permitting only seven hours and two questioners per Defendant Group for each expert would violate the Federal Rules, work a severe injustice, infringe upon Defendants' constitutional rights, and introduce reversible error. *See, e.g.*, *Bush v. Dickerson*, No. 16-6140, 2017 WL 3122012, at *4 (6th Cir. May 3, 2017) (finding district court abused discretion in denying discovery request when "information requested [was] clearly relevant to [plaintiff]'s claims *and* to the defenses raised by defendants" (alteration in original)). And Plaintiffs cannot reasonably object to this request on the basis that the schedule set out in CMO 8 does not permit two-day depositions because Plaintiffs have already confirmed that two-day depositions are workable within the existing schedule by providing three potential deposition dates for each expert.

In opposing this straightforward and fair approach, Plaintiffs accuse Defendants of seeking to delay the proceedings. But it is Plaintiffs' gamesmanship—not any actions by Defendants—that is threatening the schedule that this Court entered in CMO 8. CMO 8 instructed Plaintiffs to disclose their expert reports and reliance materials on March 25 and provides Defendants three weeks (April 9 to April 26) to complete all depositions of Plaintiffs' experts.[10] ECF No. 1306. Under this schedule, the Court guaranteed Defendants would have, at a minimum, two weeks to evaluate the expert report and complete set of reliance materials of an expert prior to that expert's deposition. But Plaintiffs failed to provide a complete set of the reliance materials for a significant number of the experts disclosed on March 25 in violation of this Court's order and the Federal Rules. *See, e.g.*, D. Welch Decl. Exs. 1-6 (deficiency letters sent by Defendants regarding 11 of

---

[10] While not raised as a basis for relief in this Emergency Motion, it is Defendants' position that forcing Defendants to examine all of Plaintiffs' experts within a 3-week window when key discovery is not yet complete in this litigation—and when Plaintiffs just recently amended their Second Amended Complaint to add numerous additional Defendants—is a further violation of Defendants' Due Process rights. By way of example only, Plaintiffs have produced only approximately 2% of the claims data associated with opioid prescriptions in the Track 1 jurisdictions for which they are seeking to recover damages. Moreover, the schedule as it exists (and given the ongoing discovery issues) does not provide Defendants with sufficient time to develop defenses to Plaintiffs' novel theories before Defendants are required to issue their own expert reports.

Plaintiffs' expert reports). Plaintiffs have also helped themselves to extensions of the March 25 deadline by submitting multiple supplements framed as "updates," including four just last week, without leave of Court as is required in CMO 8. On top of that, Plaintiffs will not even disclose four additional diversion experts until April 15, and some of Plaintiffs' damages experts have conceded that their reports are incomplete (and therefore, may be supplemented after April 15) because they are waiting on the DEA reports.[11] Unless complete sets of reliance materials are produced immediately, Defendants will be forced to depose these experts after April 26.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court order that: (1) certain experts (as identified in Appendix A) be made available for at least two days of deposition testimony; (2) each Defendant Family is allowed to question each of Plaintiffs' experts on issues specific to it (in addition to a lead questioner per Defendant Group); and (3) Plaintiffs must produce all reliance materials and data at least 14 days before each expert is deposed.

---

[11] Plaintiffs' expert David Cutler, for example, says that he will modify the framework of his analysis to "address distributor misconduct" once "appropriate data become available to estimate the share of prescription opioid shipments that reflect distributor misconduct." (Cutler Expert Report, Appendix III.J, ¶ 5). Expert Thomas McGuire's analysis depends on Dr. Cutler's data; he notes that "any revisions to the estimates from Professor Cutler could be readily incorporated into this analysis." (McGuire Expert Report, fn. 88)

Dated:  April 8, 2019                                  Respectfully submitted,

/s/ Kaspar J. Stoffelmayr (consent)
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com

*Liaison Counsel for the Chain Pharmacy Defendants*


/s/ Mark S. Cheffo (consent)
Mark S. Cheffo
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
mark.cheffo@dechert.com

*Co-Liaison Counsel for the Manufacturer Defendants*

/s/ Geoffrey E. Hobart (consent)
Geoffrey E. Hobart
Mark H. Lynch
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
(202) 662-5281
ghobart@cov.com
mlynch@cov.com

*Co-Liaison Counsel for the Distributor Defendants*


/s/ Robert A. Nicholas (consent)
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
(215) 851-8100
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Co-Liaison Counsel for the Distributor Defendants*


/s/ Enu Mainigi (consent)
Enu Mainigi
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
emainigi@wc.com
*Co-Liaison Counsel for the Distributor Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of April 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

>*/s/ Donna M. Welch*
>Donna M. Welch, P.C.
>KIRKLAND & ELLIS LLP
>300 North LaSalle
>Chicago, IL 60654
>Tel: (312) 862-2000