**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45090<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 17-OP-45004 | MDL NO. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**DECLARATION OF DONNA M. WELCH IN SUPPORT OF
DEFENDANTS' EMERGENCY MOTION FOR RELIEF
RELATED TO EXPERT DEPOSITIONS**

I, DONNA M. WELCH, declare as follows:

1.      I am a partner with the law firm of Kirkland & Ellis LLP and represent Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. and Allergan plc f/k/a Actavis plc in the above-captioned actions.  I have personal knowledge of the matters stated herein; and, if called upon, I could and would competently testify thereto.  I submit this declaration in support of Defendants' Emergency Motion for Relief Related to Expert Depositions.

2.      On April 4, 2019, I sent a deficiency letter to Plaintiffs regarding Dr. Meredith Rosenthal's, Dr. David Cutler's, and Dr. Jonathan Gruber's expert reports; a true and correct copy of the letter is attached as Exhibit 1.

3.      On April 4, 2019, my colleague Kelly H. Hibbert of Reed Smith LLP sent a deficiency letter to Plaintiffs regarding Dr. Ted Miller's and Dr. Nancy Young's expert reports; a true and correct copy of the letter is attached as Exhibit 2.

4.      On April 4, 2019, my colleague Andrew Keyes of Williams & Connolly LLP sent a deficiency letter to Plaintiffs regarding Thomas McGuire's expert report; a true and correct copy of the letter is attached as Exhibit 3.

5.      On April 5, 2019, my colleague Elisa P. McEnroe of Morgan, Lewis & Bockius LLP sent a deficiency letter to Plaintiffs regarding Dr. Craig McCann's expert report; a true and correct copy of letter is attached as Exhibit 4.

6.      On April 5, 2019, my colleague Amy R. Lucas of O'Melveny & Myers LLP sent an email to Plaintiffs regarding deficiencies in Dr. Jane Ballantyne's, Dr. Theodore Parran's, and Dr. Mark Schumacher's expert reports; a true and correct copy of the email is attached as Exhibit 5.

7.      On April 5, 2019, my colleague Nick Bradley of Ropes & Gray LLP sent an email to Plaintiffs regarding deficiencies in Dr. Anna Lembke's expert report; a true and correct copy of the email is attached as Exhibit 6.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 8th day of _April_____, 2019, at Chicago, Illinois.

_____
Donna Welch, P.C.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of April 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

/s/ Donna M. Welch
_____

Donna Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000

# Exhibit 1

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

| | 300 North LaSalle | |
| --- | --- | --- |
| Donna M. Welch, P.C. | Chicago, IL 60654 | |
| To Call Writer Directly: | United States | Facsimile: |
| +1 312 862 2425 | +1 312 862 2000 | +1 312 862 2200 |
| donna.welch@kirkland.com | | |
| | www.kirkland.com | |

April 4, 2019

**By E-mail**

Pete Weinberger (pweinberger@spanglaw.com)
Andrea Bierstein (abierstein@simmonsfirm.com)
Erin Dickinson (ekd@cruegerdickinson.com)

Re:  *In re: National Prescription Opiate Litigation, MDL No. 2804* - Reliance Materials for Dr. Meredith Rosenthal, Dr. David Cutler, and Dr. Jonathan Gruber

Dear Pete, Andrea, and Erin:

I write regarding significant deficiencies in the reliance materials and data that were provided along with the expert reports for Dr. Meredith Rosenthal, Dr. David Cutler, and Dr. Jonathan Gruber.  Plaintiffs were required to produce complete copies of *all* of Dr. Rosenthal's, Dr. Cutler's and Dr. Gruber's reliance materials by March 25.  *See* Doc. #232 (CMO-1) at 18 ("[E]ach disclosed expert will produce his or her final report pursuant to and consistent with Fed. R. Civ. P. 26(a)(2)(B), *together with identification of all documents that the expert has considered in preparing and/or rendering the expert's opinion*.") (emphasis added); *see also* Doc. #1306 (CMO-8) at 1 (extending Plaintiffs' deadline to submit expert reports to March 25, 2019). Specifically, the Court ordered that each party must produce "work papers, spreadsheets, data sets, and exhibits, in a usable format to allow evaluation of any analyses performed." Doc. # 941, Order on Discovery in Track One Cases, and Amending Prior Orders. Plaintiffs have failed to do so. This failure greatly prejudices Defendants' ability to meaningfully cross examine these experts' opinions - particularly on the condensed timeline required by the Court's Case Management Order.

**With regards to Dr. Rosenthal**, her backup materials contain 39 distinct computer programs saved into a single folder without providing any information required to understand the order in which they should be executed or how they produce the results presented in Dr. Rosenthal's report.  Further, when certain programs are run, they produce error messages and fail to replicate the results presented in the report.  Additionally, Dr. Rosenthal's backup materials do not include "log" files that actually report the date and time that the report was performed to

# KIRKLAND & ELLIS LLP

April 4, 2019
Page 2

confirm the program was completed without errors.  These omitted materials either mean that Dr. Rosenthal never verified (and cannot now verify) that these reliance materials actually generate the results in her report or that Plaintiffs failed to provide Defendants with sufficient information about how these reliance materials generate the opinions set forth in Dr. Rosenthal's report. Assuming the latter, Plaintiffs must provide the following information in order to complete their production of Dr. Rosenthal's reliance materials:

- Provide the order in which the produced programs should be run. For an example of what this should look like please see "*Shared_Data - Cutler, Gruber, McGuire, Rosenthal\UCR*" which contains clearly numbered programs, a "*zREADME*" file that indicates the necessary orders and file path adjustments, and a clear folder structure.

- Provide instructions for adjusting file path macros in order to run the relevant programs. For an example of what this should look like see "*Shared_Data - Cutler, Gruber, McGuire, Rosenthal\Master\Programs*" which contains a "*00_run_first*" program to define file path macros.

- Provide instructions for the "ON" and "OFF" options in relevant programs or confirm that the options as indicated in the backup are the ones that were selected in Dr. Rosenthal's analyses.

- Confirm that the programs exactly as written in the "*Rosenthal Report Backup SAS Programs*" produce the results presented in Dr. Rosenthal's report, without error messages, and with no additional information. To do this, Plaintiffs need to ensure they have provided all programs, corrections to programs, and source data necessary to produce the exact results presented in Dr. Rosenthal's report.  At this time, we have identified the following missing programs and source data:

  o The SAS program "*Import_Excel_Appropriate_Uses.sas*," which is referenced by "*Attachment_Tables_and_Charts.sas*."
  o The SAS program and code that produces the SAS data set *venn_manuf_drug_summary_v10.sas7bdat*.
  o  The SAS code that produces the SAS dataset, *nondef_total_narme_nsp_ips.sas7bdat*, required by SAS program "*AWP_Summary_by_Selected_Defendant.sas*" in line 1711.
  o The SAS programs that exactly replicate all figures shown in Tables 4 and 5. The SAS program "*Indirect_regressions.sas*" reproduces only the coefficients shown in Table 4, not the standard errors and figures in other columns of the table.  In addition, it does not reproduce all of the figures in Table 5, only the figures in "*Total MME (MM)*" for the years 1997-2016.

# KIRKLAND & ELLIS LLP

April 4, 2019
Page 3

> If any corrections to programs or data are necessary to generate the results in Dr. Rosenthal's report, provide those corrections. Plaintiffs should also provide the "log" files that actually record the date and time that Plaintiffs ran the program and that Plaintiffs were able to run the program from start to finish without errors.

Defendants anticipate that we will need several weeks to process and analyze the data before we will be in a position to take Dr. Rosenthal's deposition.  It is thus imperative that we receive this information as soon as possible and, in any case, no later than **April 9, 2019**.

***With regards to Dr. Cutler***, we understand that Dr. Cutler has deleted certain observations from his mortality data found in the file titled mortality_rates.dta "per the data use agreement for the restricted NVSS mortality data." (*See*  README.txt file provided along with Dr. Cutler's expert report). If Plaintiffs are taking this position, Plaintiffs must provide a copy of this agreement to Defendants and provide confirmation that such data could be used for purposes related to this litigation.

Nonetheless, we believe the deletion of these records is improper because the Protective Order entered in this case provides the protections needed to ensure that there is no inadvertent public disclosure of cases found in this data set. *See* Doc. #441 (Protective Order); *see also* Fed. R. Civ. P. 26(a)(2)(B)(ii)–(iii) (requiring disclosure of "the facts or data considered by the witness in forming" his or her expert opinions, and "any exhibits that will be used to summarize or support them").  Indeed, when presented with prior objections about production of highly confidential or proprietary data (in one instance in response to Plaintiffs' demand that DEA produce highly confidential and proprietary ARCOS data), the Court has ordered disclosure because the Protective Order entered in this case ensures that confidentiality will be maintained even though the data is produced in this litigation. *See e.g.*, Doc. #703 (Track One Discovery Order Regarding Health-Related Information); Doc. #1051 (Discovery Ruling No. 7); Doc. #1421 (Order Governing Production of Medical and Pharmacy Claims Data in Track One Cases); Doc. #233 (Order Regarding ARCOS Data) at 22; Doc. #397 (Second Order Regarding ARCOS Data) at 3. So too here. Nothing in the CMOs in this case or the Federal Rules permit Plaintiffs to exclude materials they were ordered to produce on the basis of commitments voluntarily made by Plaintiffs or Dr. Cutler to third parties.  The NVSS mortality data are a key input in Dr. Cutler's regression analysis and Plaintiffs' refusal to produce this data in full inhibits Defendants' ability to properly evaluate Dr. Cutler's model.  Plaintiffs are required to produce all of Dr. Cutler's reliance materials in full and cannot hide behind the data use agreement for the NVSS mortality data.

Further, the programs provided in the "*3_Cutler*" backup folder do not produce all of the results presented in Dr. Cutler's report.  This either means that Dr. Cutler's own calculations and modeling were performed incorrectly or that Plaintiffs have not provided a complete set of the materials upon which Dr. Cutler relied to produce the opinions presented in Dr. Cutler's report.

## KIRKLAND & ELLIS LLP

April 4, 2019
Page 4

Assuming the latter, Plaintiffs must provide any corrections to programs or data that are necessary to generate the results as presented in the report before Dr. Cutler's deposition can proceed. For example, the *03_Direct_mortality_regressions.do* program does not replicate the regression estimates shown in the "Direct Model for Opioid Mortality Rate from 1993-1995 to 2009-2010" table. Similarly, the *04_Indirect_mortality_regressions.do* program does not replicate the regression estimates shown in the "Indirect Model for Log Illicit Mortality Rate 2008-2010" table. Again, Plaintiffs should also provide the "log" files that actually record the date and time that Plaintiffs ran the program and that shows Plaintiffs were able to run the program from start to finish without errors.

Additionally, the folder "*Shared_Data - Cutler, Gruber, McGuire, Rosenthal\Master\Data\input*" contains a number of SAS and other data files with no information about their source or how they were created. Plaintiffs must provide the original raw data files, information about the source, and any program files used to create the files present in the folder. For example, the files in the "mortality_public" folder appear to be CDC data but the files omit the raw data downloaded from the CDC website and the files used to convert them into SAS. If instead they were acquired as raw SAS files (e.g., through NBER) identify the source from which they were acquired and confirm no adjustments have been made. As a similar example, the folder "*Shared_Data - Cutler, Gruber, McGuire, Rosenthal\Master\Data\input*" also contains several ARCOS-related SAS datasets (e.g., *_97_arcos.sas7bdat*) that appear to include shipment totals from the public ARCOS retail summary reports. Page 13 of the *Data Appendix* indicates, "The DEA website includes public reports in PDF format covering the years 2000-2017. We processed these reports, extracted the data from Table 1, and converted the underlying data into machine readable format. Additional reports covering the years 1997, 1998, and 1999 were identified based on an archived version of the DEA website available through the Internet Archive. We processed these files the same way." However, the *Shared_Data* folder does not contain the raw ARCOS PDF reports, or the processing code translating the raw files to the SAS files in the *input* folder.

Finally, with respect to Dr. Cutler's calculations on Children Services, Dr. Cutler relies on the 2015 PCSAO survey results, which includes responses from Summit and Cuyahoga. These responses have not been provided to Defendants (if they were previously produced in this case, their Bates numbers must be identified).

It is critically important that Defendants receive and have the ability to process and analyze the documents and data upon which Dr. Cutler's opinions rely before deposing Dr. Cutler. Please confirm we will receive this data as soon as possible and no later than **April 9, 2019**.

***With regards to Dr. Gruber***, we understand that Dr. Gruber relied on reports and materials performed and provided by Dr. Cutler. Additionally, we are continuing review of Dr. Gruber's backup materials, but have identified missing ARCOS data, NSDUH data, NFLIS data, UCR data, ICPSR data, and MCOD data from 1993 – 2016 (only 1983 – 2006 is provided).

## KIRKLAND & ELLIS LLP

April 4, 2019
Page 5

Dr. Gruber's missing data are key inputs in his regression analysis and Plaintiffs refusal to produce this data in full inhibits Defendants' ability to properly evaluate Dr. Gruber's model. Further, as discussed above, NVSS mortality data are a key input in Dr. Cutler's regression analysis and Plaintiffs' refusal to produce this data in full inhibits Defendants' ability to properly evaluate Dr. Gruber's model since it relies on Dr. Cutler's model. Plaintiffs are required to produce all of Dr. Gruber's reliance materials in full. *See* Doc. #232 (CMO-1) at 18.

It is critically important that Defendants receive and have the ability to process and analyze the data upon which Dr. Gruber's opinions rely before deposing Dr. Gruber. Please confirm we will receive this data as soon as possible and no later than **April 9, 2019**.

Finally, **with regards to Dr. Rosenthal, Dr. Cutler, and Dr. Gruber,** Plaintiffs must produce all of the articles, speeches, books, and related materials that are cited in each report, as these materials are not necessarily publically available or free of charge. The fact that each expert cited these documents in their reports indicates that they are readily available and have already been purchased by the expert and/or Plaintiffs. Please confirm we will receive these documents as soon as possible and no later than **April 9, 2019**.

Defendants reserve their right to seek an extension on the schedule for expert depositions and reserve their right to seek more than one deposition day with each expert due to the volume of material that has been provided by Dr. Rosenthal, Dr. Cutler, and Dr. Gruber.

Sincerely,

*/s/ Donna M. Welch, P.C.*

Donna M. Welch, P.C.

cc: Special Master Cohen

# Exhibit 2



**Driving progress**
through partnership

**Kelly H. Hibbert**
Direct Phone:  +1 202 414 9226
Email:  khibbert@reedsmith.com

Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

April 4, 2019

**By Electronic Mail**

Pete Weinberger (pweinberger@spanglaw.com)
Andrea Bierstein (abierstein@simmonsfirm.com)
Erin Dickinson (ekd@cruegerdickinson.com)

**Re:**   *In re: National Prescription Opiate Litigation, MDL No. 2804* **- Materials Relied Upon By Dr. Nancy Young and Dr. Ted Miller**

Dear Counsel:

I write regarding deficiencies identified in the materials provided by Plaintiffs in connection with the expert reports of Dr. Nancy Young and Dr. Ted Miller.  In accordance with this Court's prior orders and Fed. R. Civ. P. 26, Plaintiffs were required to ***produce*** "the facts or data considered by the witness in forming" the experts' opinions.  *See* Dkt. No. 941, Order on Discovery in Track One Cases and Amending Prior Orders, § 10, ¶ 1 ("Order on Discovery") ("Each party ***shall produce***, at the same time it serves the disclosures and other materials required under Fed. R. Civ. P. 26(a)(2) for each of its experts, the 'facts or data considered by the witness in forming' the expert's opinions.") (emphasis added); *see also* Fed. R. Civ. P. 26(a)(2).  More specifically, Plaintiffs were required to produce complete copies of *all* of Dr. Young's and Dr. Miller's reliance materials by March 25, including "work papers, spreadsheets, data sets, and exhibits, in a usable format to allow evaluation of any analyses performed."  Dkt. No. 941, § 10, ¶ 2; *see also* Dkt. No. 232 (CMO-1) at 18 ("[E]ach disclosed expert will produce his or her final report pursuant to and consistent with Fed. R. Civ. P. 26(a)(2)(B), together with identification of all documents that the expert has considered in preparing and/or rendering the expert's opinion."); Dkt. No. 1306 (CMO-8) at 1 (extending Plaintiffs' deadline to submit expert reports to March 25, 2019).

Plaintiffs have failed to comply with these requirements.  This failure greatly prejudices Defendants' ability to meaningfully cross-examine these experts' opinions, particularly on the condensed timeline required by the Court's Case Management Order.

**1.      Materials Identified in the Expert Reports of Dr. Ted Miller[1]**

In Dr. Miller's expert reports, he cites to the following publication, which he authored: "Miller TR. Cost-Benefit Analysis of the Nurse-Family Partnership Program, Final Report to Pew Charitable Trust."  *See* Expert Report of Dr. Miller, Apr. 3, 2019, at 10 n.24; *see also* Expert Report of Dr. Miller, Mar. 25, 2019, at 8, n.28.  The Final Report to PEW Charitable Trust is not publicly available; it is available only upon request to the author.  Accordingly, and pursuant to this Court's Order on Discovery,

---

[1] An expert report for Dr. Miller was served by Plaintiffs on March 25, 2019.  A supplemental expert report was served on April 3, 2019.

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON



this report should have been produced on March 25, 2019.  Please produce the Dr. Miller's Final Report to PEW Charitable Trust immediately.

Next, Dr. Miller notes in his supplemental expert report: "National data I analyzed from the 2015 Health Care Cost and Utilization (HCUP) National Inpatient Sample (a public use file) indicate that 88.836% of 1,048 NAS cases national resulted from opioids."  Expert Report of Dr. Miller, Apr. 3, 2019, 9.  Plaintiffs did not provide this data, and further review of the HCUP website indicates that this data set is only available if purchased.  *See* Healthcare Cost and Utilization Project, https://www.hcup-us.ahrq.gov/nisoverview.jsp.  As this data is not publically and easily available, it should have been produced by Plaintiffs with Dr. Miller's supplemental expert report.  Please produce this data immediately.

Finally, Dr. Miller's reports provide: "Opioid-related overdose deaths in Cuyahoga County increased from 94 in 2005 to 246 in 2015 to almost 600 in 2017 as the use of fentanyl spread."  *See* Expert Report of Dr. Miller, Apr. 3, 2019, at 6; *see also* Expert Report of Dr. Miller, Mar. 25, 2019, at 4.  In support of this proposition, footnote 2 in both reports states: "I obtained these numbers from the US Vital Statistics file and the CDC Wonder system."  Please identify, specifically, which US Vital Statistics and CDC Wonder System files and data sets Dr. Miller relies upon and, to the extent the specific files and data sets are not "publically and easily available," please produce these immediately.  *See* Order on Discovery.

## 2.      Materials Identified in the Expert Reports of Dr. Nancy Young

In her report, Dr. Young notes: "all analyses conducted and graphs presented in this report were conducted by staff at Children and Family Futures.  They are drawn from three data sets that are maintained by the National Data Archive on Child Abuse and Neglect (NDACAN") at Cornell University."  *See* Expert Report of Dr. Nancy Young, Mar. 25, 2019, at 2.  Those three data sets were identified as:

1.      The 2017 file of the Adoption and Foster Care Analysis and Reporting System (AFCARS);
2.      The National Child Abuse and Neglect Data System (NCANDS) Child File dataset; and
3.      The Regional Partnership Grant.

In her report, Dr. Young provides hyperlinks to websites that describe these data sets.  *Id.* However, to obtain the actual data sets, an order must be placed through the National Data Archive on Child Abuse and Neglect.  Thus, they are not "easily available" as required by the Order on Discovery and must be produced by Plaintiffs.  *See* Order on Discovery, § 10, ¶ 1.  Please produce these data sets immediately.

April 4, 2019
Page 3



      Defendants reserve their right to seek an extension on the schedule for expert depositions after review of the requested information.

Very truly yours,

*Kelly H. Hibbert*
Kelly H. Hibbert

cc: Special Master Cohen

# Exhibit 3

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

J ANDREW KEYES
(202) 434-5584
akeyes@wc com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

April 4, 2019

<u>Via Email</u>

Pete Weinberger (pweinberger@spanglaw.com)
Andrea Bierstein (abierstein@simmonsfirm.com)
Erin Dickinson (ekd@cruegerdickinson.com)

     Re:    <u>*In re: National Prescription Opiate Litigation*</u>, MDL No. 2804

Dear Pete, Andrea and Erin,

    I am writing regarding the expert report of Thomas McGuire titled "Damages to Bellwethers."

    In this report, Professor McGuire states that (1) he "identified certain divisions that are affected by the opioid epidemic" through "interviews with Bellwether government personnel" (p. 6); (2) he and staff under his direction "spoke with representatives of the Bellwether governments" (p. 8); (3) he and members of his team "met with local officials to confirm my understanding of both the activities undertaken by these divisions and whether those activities had been affected by the opioid crisis" (p. 28); and (4) his identification of "affected" costs "was also informed by discussions with the personnel in the respective divisions" (p. 35).

    In his Appendix IV.B (Materials Considered), Professor McGuire lists seven "interviews" of employees of Cleveland.  He did not list any interviews with any employees of Cuyahoga or Summit Counties, he did not list interviews of any personnel in many of the "respective divisions" that are addressed in his report, and he did not produce any notes of any interviews, meetings or conversations with any personnel of the bellwether plaintiffs.

    Please immediately (1) provide an accurate, comprehensive list of all personnel of the bellwether plaintiffs or other fact witnesses with whom Professor McGuire or anyone on his staff or team spoke in connection with this engagement, including in gathering information, making assumptions, formulating opinions or performing damages calculations; (2) produce all notes that Professor McGuire or anyone on his staff or team took in connection with any of their interviews, meetings or conversations with any of these people; and (3) produce all notes that any other testifying expert for plaintiffs (or anyone on their staff or team) took in connection

WILLIAMS & CONNOLLY LLP
April 4, 2019
Page 2

with any of their interviews, meetings or conversations with any personnel of the bellwether plaintiffs or fact witnesses.

Finally, per paragraph 1 of Section 10 in the Order on Discovery in Track One Cases, and Amending Prior Orders, entered September 6, 2018 (Dkt. #941), plaintiffs must produce all materials that were relied upon by Professor McGuire, unless they were produced in discovery or "are publicly and easily available without cost (e.g., over the Internet)." In his report, Professor McGuire identifies many materials that he relied upon but which were not produced in discovery and are not publicly and easily available without cost. Please produce those materials promptly.

Thank you for your prompt attention to this request.

Sincerely,

/s/ J. Andrew Keyes

J. Andrew Keyes

cc: Special Master Cohen

Exhibit 4

# Morgan Lewis

**Elisa P. McEnroe**
Partner
+1.215.963.5917
elisa.mcenroe@morganlewis.com

April 5, 2019

**VIA EMAIL**

Peter Weinberger (pweinberger@spanglaw.com)
Andrea Bierstein (abierstein@simmonsfirm.com)
Erin Dickinson (ekd@cruegerdickinson.com)

Re:    *In re National Prescription Opiates Litigation*, Case No. 17-md-2804
       Reliance Materials for Dr. Craig J. McCann

Dear Counsel:

I write concerning significant deficiencies in the supporting documentation Plaintiffs have provided for Dr. Craig J. McCann's expert report (served March 26, 2019) and supplemental report (served April 3, 2019). Defendants are entitled to this documentation and it is necessary to allow Defendants a fair opportunity to test Dr. McCann's methodologies and conclusions.

***First***, Plaintiffs have failed to provide underlying files and computer codes Dr. McCann used to analyze raw data and produce the tables, charts, figures, and graphs that he relied upon in his reports. That information must be produced. *See* Dkt. #232 at 18 ("[E]ach disclosed expert will produce his or her final report pursuant to and consistent with Fed. R. Civ. P. 26(a)(2)(B), together with identification of all documents that the expert has considered in preparing and or rendering the expert's opinion."); *see also* Dkt. #941, Order on Discovery in Track One Cases, and Amending Prior Orders (clarifying that CMO-1 specifically required that each expert provide "work papers, spreadsheets, data sets, and exhibits, in a usable format to allow evaluation of any analyses performed."). Plaintiffs' omission of this information impedes Defendants' ability to test Dr. McCann's conclusions and methodologies. Accordingly, Plaintiffs must produce the following from Dr. McCann's reports (and any other similar information used by Dr. McCann):

- All raw data files used by Dr. McCann for purposes of generating all tables, charts, figures, and graphs in his expert reports.

- All native computer codes (e.g., SAS, Stata, R programming codes) and ARCOS Transaction flagging code used to clean, append, merge, and process the raw data files used by Dr. McCann for purposes of generating all tables, charts, figures, and graphs in his expert reports.

- All native computer codes (e.g., SAS, Stata, R programming codes) used by Dr. McCann to generate all tables, charts, figures, and graphs in his expert reports.

**Morgan, Lewis & Bockius** LLP

1701 Market Street
Philadelphia, PA 19103-2921
United States

☏ +1.215.963.5000
🄕 +1.215.963.5001

April 5, 2019
Page 2

- All output datasets containing the computer code's results that are described and shown in Dr. McCann's reports.

- All native versions (e.g., Excel files) of all tables, charts, figures, and graphs included in Dr. McCann's reports.


**Second**, Plaintiffs have not met their disclosure obligations regarding the appendices in Dr. McCann's supplemental report because large portions of the appendices are entirely illegible.  For example, Appendices A, C, and E contain tables with dozens of unreadable figures.  Furthermore, some graphs in the appendices appear in low quality black and white even though the original graphs must be in color.  Color is critical when, like here, comprehension of the graph is dependent on the color contrast.  Indeed, the first six pages of Appendix A contain colorless bar graphs purporting to compare shipping quantities for two drugs, but it is nearly impossible to distinguish between the two drugs in black and white.  Plaintiffs are required to reproduce this data in "a usable format."  Dkt. #941.[1]

We expect that the information identified above is readily retrievable and hope that you can provide it in short order and no later than **April 9, 2019**.  We will continue to examine Dr. McCann's reports and supporting materials and will raise any additional deficiencies we identify.

As noted in Ms. Welch's letter from yesterday regarding other deficiencies in certain of Plaintiffs' expert disclosures, Defendants reserve their right to seek an extension on the schedule for an expert deposition and to seek more than one day with Dr. McCann due to the volume of material he has provided (along with the continuing evolution of his disclosures through a recent supplemental report).

We appreciate your prompt attention to this matter.

Sincerely,

*/s/ Elisa P. McEnroe*

Elisa P. McEnroe


Cc: Special Master David Cohen

---

[1] To the extent the poor document quality is due to technical issues at a particular deposition, defendants request native copies in addition to the copies that were used at the deposition.

Exhibit 5

| | |
|---|---|
| **From:** | Lucas, Amy R. <alucas@omm.com> |
| **Sent:** | Friday, April 5, 2019 1:45 PM |
| **To:** | pweinberger@spanglaw.com; ekd@cruegerdickinson.com; abierstein@simmonsfirm.com |
| **Cc:** | xALLDEFENDANTS-MDL2804-Service@arnoldporter.com; David@SpecialMaster.Law |
| **Subject:** | [EXT] Opioids MDL - Ballantyne, Parran, & Schumacher Materials |

Pete, Erin, and Andrea:

We write regarding the expert reports submitted by Drs. Jane Ballantyne, Theodore Parran, and Mark Schumacher. As you know, Special Master Cohen's order requires plaintiffs to produce all data and documents relied on by experts except for produced documents and "materials that are publicly and easily available without cost (e.g., over the Internet)." Dkt. 941 at 7. There are numerous works cited in the reports of these three reports that are not "publicly and easily available without cost." We therefore ask that you produce all such materials that were not exchanged in discovery promptly.

Best,
Amy

**Amy R. Lucas**
alucas@omm.com
O: +1-310-246-6784

## O'Melveny

1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Website | LinkedIn

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly proh bited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

Exhibit 6

| | |
|---|---|
| **From:** | Bradley, Nick <Nick.Bradley@ropesgray.com> |
| **Sent:** | Friday, April 5, 2019 9:01 PM |
| **To:** | pweinberger@spanglaw.com; ekd@cruegerdickinson.com; abierstein@simmonsfirm.com |
| **Cc:** | xALLDEFENDANTS-MDL2804-Service@arnoldporter.com; David@SpecialMaster.Law |
| **Subject:** | [EXT] Opioids MDL - Lembke Materials |

Pete, Erin, and Andrea,

We write regarding Dr. Anna Lembke's expert report and Plaintiffs' outstanding discovery and disclosure obligations under the Federal Rules and the Court's orders governing expert discovery.  Based on our preliminary review, we have identified the below deficiencies as requiring immediate supplemental productions from Plaintiffs based on the opinions and conclusions cited in Dr. Lembke's report:

- As part of the basis for "forming the opinions expressed in [her] Report," Dr. Lembke states that she has "done qualitative interviews with patients, providers, and others in the health care field on questions related to opioid prescribing" and has "analyzed opioid prescribing databases such as Medicare Part D." (p. 3, ¶21).  Plaintiffs have not produced any notes, documentation, information, or other records relating to the above-referenced interviews.  Nor have they provided Defendants with any of the analysis or underlying databases relied upon by Dr. Lembke as part of forming her opinions in her expert report.

- In addition, Dr. Lembke cites several works in her report that are not "publicly and easily available without cost." (Dkt. 941 at 7).  Plaintiffs have not produced these materials.

Please produce these supporting materials as promptly as possible.  We will raise any additional issues or deficiencies as they are identified.

Best,
Nick

**Nick Bradley**
**ROPES & GRAY LLP**
T +1 212 596 9432 | M +1 781 267 6711
1211 Avenue of the Americas
New York, NY 10036-8704
Nick.Bradley@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com