UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-op-45090<br><br>*The County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P.*, Case No. 17-op-5004 | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster<br>Mag. Judge David A. Ruiz |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR RELIEF RELATED TO EXPERT DEPOSITIONS

In their "Emergency Motion for Relief Related to Expert Depositions," Defendants seek relief for an emergency that does not exist.[1] Nothing prevents Defendants from taking a seven-hour deposition of each of Plaintiffs' experts in accordance with the Federal Rules of Civil Procedure before seeking additional time with any particular deponent for whom they can show that exceptional circumstances warrant additional time, if indeed any such showing can be made. Instead, Defendants are attempting to use the scheduling of expert depositions as a tactic to delay this litigation and, ultimately, to move the trial date. But, contrary to the arguments offered

---

[1] Plaintiffs note, as well, the procedural irregularity of Defendants' motion. On April 5, 2019, Defendants sought an order from Special Master Cohen permitting them to take depositions of more than seven hours of various of Plaintiffs' experts. *See* Exhibit 1. They argued that the request was properly addressed to the Special Master because it sought relief only with respect to the length of depositions, a matter within his discretion. The Special Master denied their request. Pursuant to this Court's order with respect to the Special Masters, Defendants ought to have sought formalization of that ruling, and objected to it. *See* Appointment Order, January 11, 2018 (Doc. No. 69). Instead, Defendants styled their motion as one for "emergency relief" without objecting to the Special Master's ruling, or disclosing that the Special Master had already denied their request.

in Defendants' motion, there is no due process right to an expert deposition, much less to a deposition of 14 hours, rather than seven. Defendants' obstructive delaying tactics should be rejected and their motion for "emergency relief" denied.

In accordance with the schedule set forth in CMO 8, on March 25, 2019, Plaintiffs served 20 expert reports from 19 expert witnesses.[2] At that time, Plaintiffs provided Defendants with three proposed deposition dates between April 9 and April 26, 2019 for each expert, as required by CMO 8. (Although Defendants make much of the number of expert reports, they could hardly have been surprised to receive 20 reports: they have since disclosed that they themselves anticipate using 98 experts, and possibly more. Moreover, the Oklahoma Attorney General has submitted reports of 23 experts in connection with the Oklahoma trial, further confirming that the number of Plaintiffs' experts is not surprising.) For nine days after receiving proposed deposition dates for each expert, Defendants refused to schedule *any* expert deposition, taking the position that unless Plaintiffs would agree to two- or three-day depositions, Defendants would not take any. And only after Special Master Cohen denied their request for additional time did Defendants accept deposition dates for experts for whom they have asked for additional time, while still insisting that these experts be available for two consecutive days. (By that point, Defendants had had the expert reports and the proposed depositions date for 13 days.) Moreover, when Defendants sought relief from Special Master Cohen with respect to the length of the expert depositions, they candidly

---

[2] By order of Special Master Cohen, Plaintiffs were granted permission to serve up to four expert reports for compliance experts on or before April 15, 2019, because of delays on the part of Defendants in disclosing information needed by those experts to complete their analyses.

2

admitted that their ultimate goal was an alteration of the entire schedule. *See* Exhibit 1.

Although Defendants' current motion does not ask for that alteration directly, their insistence on extending the length of the depositions of 15 of Plaintiffs' experts is plainly part of a strategy to achieve that goal, slow this case down, and delay the trial. Indeed, it is worth noting that, were Plaintiffs to take additional days to depose the same proportion of Defendants' expected 98 expert witnesses, expert depositions alone would take months to complete, rather than the limited period of two and a half weeks per side proposed by Defendants themselves. The more fundamental flaw in Defendants' motion, however, is their unsupported argument that due process requires that they be given more than seven hours of deposition time with these experts. It does not. Indeed, due process does not require that experts be made available for deposition at all, and Defendants do not cite a single case suggesting that it does.

Discovery concerning the other side's experts is a relatively recent development in the law. At least as of the early 1960s, such discovery was not generally available. *See, e.g.,* Jack H. Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 STANFORD L. REV. 455 (1962) (noting reluctance of courts at that time to allow expert depositions).[3]  Indeed, there are states that do not permit expert depositions at all. Oregon, for example, does not even require parties to disclose the names of their experts or the substance of their opinions. *See Stevens v. Czerniak*, 84 P.3d 140, 147, 336 Or. 392 (2004) ("[T]he legislature did not intend to authorize pretrial disclosure of either

---

[3] Prof. Friedenthal argued for some loosening of the restrictions on discovery of expert testimony, but never once even used the phrase "due process" in discussing why such discovery should be permitted.

an expert's name or the substance of the expert's testimony. Without a specific provision [of the Oregon Civil Rules] authorizing expert discovery, the trial court lacked authority to require the parties to disclose that information in advance of trial.").  New York law calls for limited disclosure of expert opinions, but permits expert depositions only "by court order upon a showing of special circumstances and subject to restrictions as to scope and provisions concerning fees and expenses as the court may deem appropriate."  N.Y. C.P.L.R. 3101.

Moreover, the lack of any right to take depositions of witnesses, including expert witnesses, in federal *criminal* cases, *see* Fed. R. Crim. Proc. 15, is further confirmation that due process does not require these depositions at all, much less depositions of more than seven hours.  The deposition is not a bulwark of due process, but a relatively recent addition that has morphed far beyond its limited purpose of preserving testimony that would otherwise be unavailable at trial, or as a less costly and inconvenient alternative to live trial testimony.

Lacking a basis in law, Defendants' Appendix purports to justify extra time for each of the experts listed in it, but in fact the Appendix consists of little more than numerical statistics about each report, without any attempt to tie that information to a particular need for additional deposition time. For example, Defendants highlight in bold italics the length of each expert's report as a reason they need extra deposition time.  But the suggestion that Defendants need extra time because of the length of the reports is illogical and self-contradictory.  The fact that reports lay out in such detail the expert's opinions and the bases for those opinions obviates the need for lengthy

4

depositions to discover the expert's expected testimony. It cannot be the case that the more disclosure Defendants have, the more they need.

Defendants' focus on the number of opinions each expert offers is similarly unhelpful. One of the major purposes of an expert deposition is to explore the admissibility (or not) of the opinions identified in the report. The Court's gatekeeping function, however, does not turn on the number of opinions an expert offers. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993), the Supreme Court emphasized that it is the expert's methodology, not his conclusion, that is the subject of the Rule 702 inquiry. ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."). There is thus no need for Defendants to explore each of an expert's conclusions at deposition; it is sufficient for *Daubert* purposes for Defendants to explore the expert's methodology. With respect to the opinions themselves, as already noted, the very detail of the reports ensures that Defendants will not be surprised at trial.

Nor is Defendants' argument that each defendant corporate family is entitled to its own examination persuasive (or indeed practical). It does not follow that because Plaintiffs must prove their claims against each defendant, each defendant family must be entitled to separate questioning at each expert deposition. Until now, the defendant families have worked in coordinated efforts to mount their defenses and to take discovery from the Plaintiffs. In depositions of the bellwether witnesses, they have designated a few lawyers out of their families of defense firms to question the witnesses. Indeed, the Order Establishing Deposition Protocol entered by this Court on

5

June 20, 2018 (Doc. # 643) specifically provides that "for depositions noticed by defendants, questioning should be conducted by no more than two attorneys for each defendant group (i.e., manufacturers, pharmacies, distributors," and allows "[a]dditional questioners. . . only to follow up concerning testimony that specifically addressed their client." This provision is applicable to *all* depositions in this case, not only those of fact witnesses. Nor would doubling the number of hours ensure that every lawyer for every defendant is able to ask every question he or she wishes. There must be some limit on the number of hours each expert is deposed and Defendants are unable to show that due process, or fairness, or the Federal Rules, require that they be allowed, in the aggregate, 14 hours with an expert instead of seven.[4]

Defendants' motion should be denied in its entirety. If, after taking a seven-hour deposition of each of Plaintiffs' experts, Defendants believe they need extra time with a specific expert, they should seek such extra time on a fully-developed and particularized record.

---

[4] Defendants' final argument – that they should be given additional hours because Defendants have purported to identify deficiencies in several expert reports – is similarly unavailing. To begin with, many of the experts for whom Defendants seek extra time are not experts for whom Defendants claim to discern deficiencies. *Compare* Appendix A *with* Declaration of Donna M. Welch. Moreover, to the extent Defendants contend they need more time to review supplemental materials, extra days of depositions within the original extra timeframe -- Defendants do not *now* purport to be seeking to expand that timeframe at this time -- will make it harder, not easier, for them to devote time to absorbing and analyzing the materials they have received. Plaintiffs note, as well, that they have provided prompt response to Defendants' letters and have provided, or are in the process of providing, Defendants with most of what they have asked for.

Respectfully submitted,

s/*Peter H. Weinberger*
Peter H. Weinberger (0022076)
**SPANGENBERG SHIBLEY & LIBER**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
*pweinberger@spanglaw.com*
*Plaintiffs' Liaison Counsel*

### CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*s/Peter H. Weinberger*
Peter H. Weinberger
*Plaintiffs' Liaison Counsel*