# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45090<br><br>*The County of Cuyahoga v. Purdue Pharma L.P.*, *et al.*<br>Case No. 17-OP-45004 | MDL NO. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION TO RECONSIDER ORDERS SETTING EXPERT DISCOVERY SCHEDULE

Expert discovery is critical for Defendants in order to adequately defend against the novel legal theories and damages calculations that purport to generate billions of dollars in alleged damages in the two Track 1 Ohio counties alone. Because Plaintiffs have consistently taken the position that both their causation and damages theories are dependent on expert testimony, Defendants must be afforded a fair and meaningful opportunity to explore the validity of Plaintiffs' novel aggregate causation and damages models during expert discovery. Now that Plaintiffs have disclosed 19 experts with over 1,800 pages of opinions—with major supplements filtering in after the deadline, not to mention four more diversion-related reports and substantial volumes of reliance materials still to come—the severe time limitations on the expert discovery period in CMO 8 are not workable and, if not remedied, will cause insurmountable prejudice to Defendants, deprive them of their Due Process right to mount a meaningful defense against these claims, and further frustrate attempts to resolve this unprecedented litigation. Indeed, Defendants expect that

various key expert reports that Plaintiffs have already disclosed will be subject to further revisions based on forthcoming diversion-related reports.

While the Court's *nunc pro tunc* order, entered April 11, 2019, granted Defendants two days of deposition for 10 of Plaintiffs' 23 experts (four of whom have yet to serve their reports), and granted each Defendant an opportunity to ask each expert questions specific to that Defendant, the Court's order leaves several problems unaddressed and exacerbates others.  In particular, the Court also *sua sponte* held that all of the deadlines in CMO 8 "will remain in place."  *See* ECF No. 1540 at 2.  Under those deadlines, Defendants must:  complete depositions of Plaintiffs' experts by April 26; disclose their own experts by May 10; present these (approximately 90) experts for deposition in the 14 business days between May 20 and June 7; and prepare *Daubert* and dispositive motions to be submitted three weeks later on June 28.  ECF No. 1306 at 1-2.[1]  This schedule would be aggressive in a standard, straightforward two-party commercial case.  But in a case of this magnitude and unprecedented complexity, with dozens of uniquely situated parties and an enormous number of claims spanning more than two decades, this schedule is compressed to the point of being unworkable and fundamentally unfair.  And in a case of this magnitude, there is no legitimate reason not to give Defendants ample time to digest Plaintiffs' expert reports, prepare for the depositions, and incorporate that information into their own expert reports.  In fact, Special Master Cohen explicitly indicated that, pending the Plaintiffs' expert reports, Defendants could receive an extension of time to disclose their experts.  *See* Exhibit A (3/19/2019 email from Special Master Cohen).

The April 26 deadline for completion of depositions of all Plaintiffs' experts is unworkable.  The Court's April 11 Order noted that Plaintiffs "have identified 24 experts."  ECF No. 1540 at 1.

---

[1] The schedule outlined in CMO 8 contemplated that fact discovery would close on January 25, 2019.  Fact discovery, however, is ongoing.

2

Plaintiffs, however, have so far identified only 19 experts (one of whom submitted two reports). On March 19, Special Master Cohen granted Plaintiffs an extension to April 15 to serve four expert reports on DEA issues.[2]  Eleven days from receipt of these reports to prepare for depositions of four experts is not reasonable.  Furthermore, these four DEA reports will have a domino effect because several of Plaintiffs' experts have stated that they may amend their reports on the basis of the opinions to be filed on April 15.

The unrealistic nature of the April 26 deadline to depose Plaintiffs' experts is further exacerbated by Plaintiffs' continued delay in producing the underlying materials on which the experts relied.  Under CMO 8, the Court guaranteed Defendants would have, at a minimum, over two weeks to evaluate Plaintiffs' expert reports before the deposition window opened on April 9. Plaintiffs' actions have nullified that guarantee.  Nearly three full weeks after the March 25 deadline by which Plaintiffs were supposed to produce all of their expert reports and the underlying reliance materials, Defendants are still waiting.[3]  Plaintiffs have yet to produce the key reliance materials and underlying data associated with a number of Plaintiffs' most substantial expert reports.  *See, e.g.*, ECF No. 1531-3 (deficiency letters sent by Defendants regarding 11 of Plaintiffs' expert reports); Exhibit B (April 11, 2019 D. Welch Letter to Special Master Cohen regarding the continuing deficiencies in production of reliance materials for Jonathan Gruber, David Cutler, and Meredith Rosenthal).

These problems are not academic; they prevent Defendants from scrutinizing Plaintiffs' experts' novel calculations and modeling.  For example, the 39 computer programs Plaintiffs

---

[2] One basis for Plaintiffs' request to Special Master Cohen for an extension of the deadline to serve these expert reports was because DEA depositions had not yet concluded, delayed in part due to the government shutdown.  DEA depositions are currently scheduled through May 15.

[3] The Court's April 11 Order was silent on Defendants' request that Plaintiffs be ordered to immediately produce key reliance material—which should have been produced in full by March 25 under CMO 8 but was not.  *See also* ECF No. 1531-1 at 3 (seeking an order that "Plaintiffs must produce all reliance materials and data at least 14 days before each expert is deposed").

produced with Dr. Rosenthal's report on March 25, which supposedly replicated her regression models, did not do so.  After Defendants discovered this error and raised it with Plaintiffs, on April 8 Plaintiffs responded that they had "confirmed that some of the programs we produced with Dr. Rosenthal's report were not correct."  Exhibit C (April 8, 2019 A. Bierstein Letter to D. Welch).  At that time Plaintiffs purported to provide corrected programs.  But those programs are still producing erroneous results, and Plaintiffs still have not produced the revised files on which the corrected programs rely or the raw data that Dr. Rosenthal used.  *See* Ex. B at 3.  Likewise, Plaintiffs have not provided the county-level mortality data on which Dr. Gruber's and Dr. Cutler's opinions and regression models are based.  Plaintiffs use this data to evaluate mortality rates at the county level attributable to opioids, which is a key input into their statistical regression analyses.  On April 8, Plaintiffs informed Defendants that their ability to access this data would require Plaintiffs to secure approval from NCHS.[4]  Thus, since March 25 and continuing until the present, Defendants have had no way to test the validity of the conclusions reached through Dr. Cutler's and Dr. Gruber's statistical analyses.

Moreover, Defendants are still waiting on the expected April 15 disclosure of four new experts and their reports.  Some of the experts whose reports have already been provided rely in interlocking ways on these four diversion reports Defendants have yet to receive.  For Defendants to begin taking depositions of experts when they do not have a full picture of how those experts' opinions may change based on the forthcoming diversion reports is unreasonable.  Plaintiffs' expert David Cutler, for example, says that he will modify the framework of his analysis to

---

[4] On April 10, Plaintiffs finally shared a proposed data-use agreement with Defendants, but the plain language of that agreement makes clear that both NCHS and the National Association for Public Health Statistics and Information Systems ("NAPHSIS") must approve any use or disclosure of the data.  Further, the proposed data-use agreement states that the recipients are individuals within the requesting organization, Pacific Institute for Research and Evaluation ("PIRE"), and would use such data for research purposes only, which is obviously not the case for Defendants or their experts.  The disagreement related to the unworkable proposed data use agreement is currently pending before Special Master Cohen at Defendants' request.

4

"address distributor misconduct" once "appropriate data become available to estimate the share of prescription opioid shipments that reflect distributor misconduct." *See* Cutler Expert Report, Appendix III.J ¶ 5. Expert Thomas McGuire's analysis depends on Dr. Cutler's data; he notes that "any revisions to the estimates from Professor Cutler could be readily incorporated into this analysis." *See* McGuire Expert Report, n. 88.

It is axiomatic that Defendants cannot meaningfully prepare to depose these experts—or to have their own experts address and rebut Plaintiffs' experts' novel theories—if the underlying materials are not produced sufficiently in advance of the depositions. And, even for the experts whose files were timely produced, given the enormous volume of Plaintiffs' expert material (over 1,800 pages of reports and tens of thousands of pages of reliance material and back-up data) and the enormous breadth of ground it covers, Defendants cannot meaningfully prepare for and take these depositions by April 26, 2019.

In the meantime, the two weeks in the current schedule for depositions of Plaintiffs' 24 experts is dwindling. While objecting to any delay themselves, Plaintiffs have helped themselves to more time without any leave of the Court as is required by CMO 8—by submitting multiple voluminous supplemental reports framed as "updates" to their expert reports after the March 25 deadline.[5] In addition, as explained above, several of Plaintiffs' experts have conceded that they may amend their reports based on the opinions that will not be disclosed until at least April 15.[6] By refusing to extend the window within which Defendants can depose Plaintiffs' experts, the Court is denying Defendants their fundamental right to mount a meaningful defense.

---

[5] To date, Plaintiffs have submitted significant supplements for Caleb Alexander, Jeffrey Liebman, Craig McCann, and Ted Miller.
[6] Defendants reserve all rights to object to any "amended" or "supplemental" reports purportedly submitted for this, or any other, reason.

In addition, although the Court's Order confirmed that each individual Defendant has a *right* to question each expert on any opinions specific to it, the schedule and time limits imposed will have the practical effect of denying individual Defendants any actual ability to do so. For the 13 depositions that are limited to seven hours, there is simply no meaningful opportunity for as many as 20 distinct Defendant Families to ask questions regarding opinions directed at them (a maximum of 21 minutes each if no time is taken up with objections). Indeed, even for the 10 depositions that are allowed 14 hours, there is a high likelihood that many of the individual Defendant Families will be foreclosed from asking questions and that the 42-minute average per Defendant Family may also prove insufficient.

For the foregoing reasons, Defendants request that the Court order Plaintiffs to produce all underlying reliance materials for all experts immediately and, in any event, not later than Friday April 19, and amend CMO 8 to extend the deadline to complete depositions of Plaintiffs' experts to at least May 31. Defendants further request that the deadline for the disclosure of their experts be extended to July 1, that the date for completing depositions of Defendants' experts be extended to September 2, and that the deadline for submitting *Daubert* and dispositive motions be extended to October 15. Finally, Defendants ask the Court to order the expert depositions to continue day-to-day to ensure that all Defendants have an actual (as opposed to theoretical) right to question Plaintiffs' experts about any opinions specific to them.

## ARGUMENT

As the Court reiterated just last month, "[t]here has never been a litigation such as the Opioid MDL, where now approximately 1,600 cities and counties have sued the manufacturers and distributors of prescription opioids, along with a number of pharmacies." ECF No. 1458 at 10. Defendants have committed their utmost efforts to comply with the ambitious expert discovery

6

framework set by the Court and most recently reaffirmed in CMO 8 and the April 11, 2019 order. But as this unprecedented litigation has unfolded, it has become apparent that it is simply impracticable to meaningfully execute the magnitude of expert discovery in this timeframe—particularly when Plaintiffs have not held their end of the bargain.[7] Indeed, Plaintiffs have made a shambles of the schedule the Court established in CMO 8 and reaffirmed in its April 11, 2019 order—and all the while stridently proclaiming that no adjustments are necessary. They obtained an extension to April 15 for serving four expert reports on DEA issues without any concomitant extension of the deadline for expert depositions (or extension of the deadline for Defendants' expert reports); for the reports they have produced, they have failed to produce underlying reliance materials; and they have granted themselves leave to file lengthy supplemental reports. In addition to the delays caused by Plaintiffs, the limited relief afforded by the Court's April 11 order is not sufficient to provide full and fair examination of Plaintiffs' experts.

The unprecedented nature of this case, the novel legal theories asserted by Plaintiffs, and the complicated damages theories offered by Plaintiffs that purport to generate damages unprecedented in American jurisprudence compel a discovery and trial schedule that will afford the parties a meaningful opportunity to prepare their cases. Due process demands as much. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a *meaningful time* and in a *meaningful manner*.") (emphases added) (internal citations and quotation marks omitted); *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992) ("While the efficient administration of justice is always an

---

[7] Defendants note for the record that although the Court entered the schedule in CMO 8 pursuant to a joint extension motion of Plaintiffs and Defendants (as urged by the Court and Special Masters), Defendants voiced significant concerns that the schedule in CMO 8 was too aggressive given the complexity of the case. The inability to complete fact discovery under the proposed schedule and the challenges surrounding expert discovery have demonstrated that Defendants' concerns were correct. Despite the best of intentions to move forward on an incredibly aggressive schedule, it is simply not workable now as a result of the issues raised herein. Defendants reserve their rights to further object and seek further adjustments to the schedule.

important consideration, fundamental fairness to every litigant is an even greater concern."); *cf. Freehill v. Lewis*, 355 F.2d 46, 48 (4th Cir. 1966) ("[T]he spirit of the rules does not require that completeness in the exposure of issues in the pretrial discovery proceedings be sacrificed to speed in reaching the ultimate trial on the merits. Delay should be avoided to the extent that it is unnecessary or unreasonable but adequate time must be allowed for discovery of the facts and assembly of the proof."). This is especially true here, where Plaintiffs' case rests largely if not entirely on expert testimony; indeed, Plaintiffs successfully avoided much fact discovery on critical issues based on their argument that the issues would be addressed by their experts.[8]

The full-speed-ahead approach to completing expert discovery is not just an issue of timing and logistics. Rather, given Plaintiffs' "aggregate proof" theories and the breadth of the expert opinions, this schedule has become a mechanism that will substantively deny Defendants any meaningful way to defend the case. *See Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) ("[T]he Due Process Clause prohibits a State from punishing an individual without first providing that individual with 'an opportunity to present every available defense.'") (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)).

## RELIEF SOUGHT

Defendants' requested scheduling relief is necessary to preserve Defendants' fundamental rights to pursue their defenses to Plaintiffs' novel and unprecedented theories of liability and damages. This will allow Defendants a minimum of two weeks to review and digest Plaintiffs'

---

[8] For example, Special Master Cohen denied the Pharmacy Defendants' motion to compel answers to Pharmacy Interrogatory Nos. 14 and 15, finding that "[t]he pharmacy defendants' insistence that they need more exactitude now, *before plaintiffs produce their expert reports*, is not well-taken." ECF No. 1051 at 7 (emphasis added). The Special Master similarly ruled that Plaintiffs' answer to Pharmacy Interrogatory No. 7/Distributor Interrogatory No. 23 "does not limit their experts from using different criteria to identify suspicious orders, and therefore from concluding that there exist suspicious orders in addition to those identified by plaintiffs in their response." *Id.* at 6. Time and again, Plaintiffs have attempted to deflect discovery requests on fundamental issues by stating that the responses "will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case." *E.g.*, Pls.' Resp. to Distributor Defendants' First Set of Interrogatories No. 1.

expert reliance materials and final reports before each deposition (as CMO 8 originally intended), approximately 6 weeks to conduct the 23 depositions, and time to prepare their expert rebuttal reports. Therefore, for the foregoing reasons, and for those also expressed in Defendants' Emergency Motion for Relief Related to Expert Depositions, *see* ECF No. 1531-1, Defendants respectfully request the schedule in CMO 8 be revised as follows:

- **April 19, 2019: Deadline for Plaintiffs to produce all underlying reliance materials for all of their experts.**

- **May 31, 2019: Deadline to complete depositions of Plaintiffs' experts, to continue day-to-day.**

- **July 1, 2019: Deadline for Defendants to disclose their experts.**

- **September 2, 2019: Deadline to complete depositions of Defendants' experts.**

- **October 15, 2019: Deadline to submit *Daubert* and dispositive motions.**

Dated: April 15, 2019                                  Respectfully submitted,

/s/ Kaspar J. Stoffelmayr (consent)                    /s/ Geoffrey E. Hobart (consent)
Kaspar J. Stoffelmayr                                  Geoffrey E. Hobart
BARTLIT BECK LLP                                       Mark H. Lynch
54 West Hubbard Street                                 COVINGTON & BURLING LLP
Chicago, IL 60654                                      One CityCenter
(312) 494-4400                                         850 Tenth Street, N.W.
kaspar.stoffelmayr@bartlitbeck.com                     Washington, DC 20001
                                                       (202) 662-5281
*Liaison Counsel for the Chain Pharmacy                ghobart@cov.com
Defendants*                                            mlynch@cov.com

                                                       *Co-Liaison Counsel for the Distributor
                                                       Defendants*

/s/ Mark S. Cheffo (consent)
Mark S. Cheffo
DECHERT LLP
Three Bryant Park                                      /s/ Robert A. Nicholas (consent)
1095 Avenue of the Americas                            Robert A. Nicholas
New York, NY 10036                                     Shannon E. McClure
(212) 698-3500                                         REED SMITH LLP
mark.cheffo@dechert.com                                Three Logan Square
                                                       1717 Arch Street, Suite 3100
*Co-Liaison Counsel for the Manufacturer               Philadelphia, PA 19103
Defendants*                                            (215) 851-8100
                                                       rnicholas@reedsmith.com
                                                       smcclure@reedsmith.com

/s/ Carole S. Rendon (consent)
Carole S. Rendon                                       *Co-Liaison Counsel for the Distributor
BAKER & HOSTETLER LLP                                  Defendants*
Key Tower 127 Public Square, Ste. 2000
Cleveland, OH 44114
(216) 621-0200                                         /s/ Enu Mainigi (consent)
crendon@bakerlaw.com                                   Enu Mainigi
                                                       WILLIAMS & CONNOLLY LLP
*Co-Liaison Counsel for the Manufacturer               725 Twelfth Street, N.W.
Defendants*                                            Washington, DC 20005
                                                       (202) 434-5000
                                                       emainigi@wc.com

                                                       *Co-Liaison Counsel for the Distributor
                                                       Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of April 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

> */s/ Donna M. Welch*
> Donna M. Welch, P.C.
> KIRKLAND & ELLIS LLP
> 300 North LaSalle
> Chicago, IL 60654
> Tel: (312) 862-2000