# Exhibit B

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Donna M. Welch, P.C.
To Call Writer Directly:
+1 312 862 2425
donna.welch@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

April 11, 2019

**By E-mail**

Special Master David Cohen
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44113-1837
david@specialmaster.law

Re: *In re: National Prescription Opiate Litigation, MDL No. 2804* - Expert Data Deficiencies and Expert Deposition Dates

Dear Special Master Cohen:

We write regarding critical deficiencies in Plaintiffs' production of expert reliance materials and request an immediate order that Plaintiffs' produce the required materials in full no later than Friday April 12.  Absent this relief, Defendants and their experts cannot meaningfully prepare to take the depositions of these experts by April 26 as required.

Despite being ordered in CMO 8 to produce complete reliance materials for each expert by **March 25**, as of today -- 17 days after this deadline -- Plaintiffs have still failed to produce key reliance materials for many experts, including Dr. Jonathan Gruber, Dr. Meredith Rosenthal, and Dr. David Cutler.[1]

Defendants have repeatedly followed up on these issues but as of today - almost three weeks after the Court-ordered deadline to produce such materials and with only two weeks left to take these depositions - Defendants do not have the data required to cross-examine and test these experts' opinions.

---

[1] While you have been copied on correspondence between the parties regarding these deficiencies, the letters reflect the outstanding data deficiencies are included in Exhibits 1-2.  Deficiencies regarding the incomplete productions for other of Plaintiffs' experts are being separately addressed with Plaintiffs and we reserve all rights with respect to those issues.

# KIRKLAND & ELLIS LLP

April 11, 2019
Page 2

For example, Dr. Gruber's and Dr. Cutler's opinions depend on county level mortality data Plaintiffs obtained from the National Center for Health Statistics. Plaintiffs use this data to evaluate mortality rates at the county level attributable to opioids, which is a key input into their statistical regression analyses. To date, however, Plaintiffs have not produced the full suite of county data that is required for Defendants to replicate their analyses. Thus, since March 25 and continuing until the present, Defendants have had no way to test the validity of the conclusions reached through Dr. Cutler's and Dr. Gruber's statistical analysis.  On April 8, Plaintiffs informed Defendants that ability to access this data would require Plaintiffs to obtain approval from NCHS to share this data and asked Defendants to identify "one representative to sign the applicable data use agreement" to be able to share the data.  This communication further represented that Plaintiffs were "in process of communicating with NCHS to obtain a data use agreement for [Defendants] to sign."  While Plaintiffs provided Defendants with a proposed data use agreement yesterday that they claim will allow Defendants access to the missing data (*see* Exhibit 3), this data use agreement contains four deficiencies that inhibit Defendants ability to sign this agreement:

(1) The data use agreement would require Defendants and their experts to misrepresent to a government agency that they are members of the Pacific Institute for Research and Evaluation (PIRE), which they are not (and possibly Dr. Cutler and Dr. Gruber are not either).

(2) The data use agreement only addresses 2014 mortality data, not all years at issue that Dr. Cutler and Dr. Gruber reference in their opinions.

(3) The data use agreement restricts the use of data for a limited research purpose which might not contemplate this litigation. This should be clarified so the agreement clearly encompasses the litigation.

(4) The data use agreement permits use of the data for only a year. Defendants would need the data to be useable through the trial and any appeal.

Defendant are willing to continue to work with Plaintiffs to get the data, including if necessary by negotiating a truthful and effective data use agreement, but Plaintiffs have drawn a line in sand and repeated their demand that we and our experts make misrepresentations to a government agency.  That is unacceptable.  Given these significant issues, even if they can get ironed out, further delay in Plaintiffs' production of Dr. Cutler's and Dr. Gruber's reliance materials is likely. Defendants will need at least seven to ten days from the time the data is eventually produced to prepare to depose Dr. Cutler and Dr. Gruber.

Similarly, on March 25, Plaintiffs produced 39 computer programs, which they claimed would allow Defendants to replicate Dr. Rosenthal's statistical models. When Defendants asked Plaintiffs why these models did not actually create the model on which Dr. Rosenthal relies,

# KIRKLAND & ELLIS LLP

April 11, 2019
Page 3

Plaintiffs admitted that the programs they originally provided were wrong, and claimed that they produced complete reliance materials on April 8. But again, this production was still incomplete. For example, some of the revised files on which the corrected programs rely were not produced, programs are still producing erroneous results, and raw data on which Dr. Rosenthal relies still has not been produced. Defendants alerted Plaintiffs to these errors on April 9, and have still not received a response from Plaintiffs. Dr. Rosenthal cannot be deposed until the week of April 22, assuming these deficiencies are corrected by tomorrow.

      Given these deficiencies, Defendants cannot proceed with depositions for these witnesses prior to the week of April 22, or we and our experts will be denied the ability to review and analyze the data before depositions occur.  We thus request that you order both the immediate production of this data (no later than Friday April 12) and instruct Plaintiffs to provide dates for these experts the week of April 22 (including two dates for any experts prioritized pursuant to the Court's April 10 order).  We are happy to participate in a call to discuss these issues further at your convenience.

                                    Sincerely,

                                      */s/ Donna M. Welch, P.C.*

                                    Donna M. Welch, P.C.

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Donna M. Welch, P.C.<br>To Call Writer Directly:<br>+1 312 862 2425<br>donna.welch@kirkland.com | 300 North LaSalle<br>Chicago, IL 60654<br>United States<br><br>+1 312 862 2000<br><br>www.kirkland.com | Facsimile:<br>+1 312 862 2200 |

April 10, 2019

**By E-mail**

David Ko
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
dko@kellerrohrback.com

    Re: *In re: National Prescription Opiate Litigation, MDL No. 2804* - NCHS
       Data Use Agreement for Dr. Cutler's Reliance Materials

Dear David:

  I write in response to Plaintiffs providing Defendants with the National Center for Health Statistics Data Use Agreement for Vital Statistics Data Files (the "Data Use Agreement") that would allow Defendants to access a critical data set underlying the opinions of Dr. David Cutler and Dr. Jonathan Gruber.

  As a preliminary matter, the proposed data use agreement is nonresponsive to our request in at least four key areas: 1) the Data Use Agreement only addresses 2014 mortality data, not all years at issue that Dr. Cutler and Dr. Gruber reference in their opinions, 2) the express purpose of the Data Use Agreement is to restrict the use of data for a limited research purpose that does not contemplate this litigation, 3) the Data Use Agreement permits use of the data only by members of the Pacific Institute for Research and Evaluation (PIRE), which Defendants and their experts are not (and possibly Dr. Cutler and Dr. Gruber are not either), and 4) the Data Use Agreement permits use of the data for only a year, which given the earliest signature already has expired, while we would need the data to be useable through the trial and any appeal.

  As mentioned, Plaintiffs have provided a Data Use Agreement that is between the National Center for Health Statistics and a requesting organization, PIRE. This Data Use Agreement is for 2014 Mortality – All County (micro-data files) only.  However, Dr. Cutler and Dr. Gruber are relying on NVSS restricted mortality data for 2005 – 2016.  As such, Plaintiffs have not provided a data use agreement to confirm use for all years at issue.  Further, as set forth in the Data Use Agreement, the exclusive use of the 2014 Mortality – All County (micro-data files) is to make

# KIRKLAND & ELLIS LLP

April 10, 2019
Page 2

aggregated injury- and substance-related mortality data available to state and federal Maternal and Child Health Bureaus – not for any use or purpose for this litigation. Accordingly, please provide Defendants with the portion of the Data Use Agreement that permits Plaintiffs (and therefore, will permit Defendants) to use this data set for the purposes of litigation Given that our need for the underlying data is related to the litigation and to confirm that the analysis of Dr. Cutler and Dr. Gruber is correct, unless and until Plaintiffs explain these issues we are unable to have any expert or consultant conduct such confirmation without access to the data – and Plaintiffs have not provided any data use agreement to confirm such access or use of data is appropriate under this or any other Data Use Agreement.

Further, as this agreement indicates, Plaintiffs' expert Ted Miller has had access to this data since July 5, 2018 and Plaintiffs' experts have presumably been working with this data set for months. Plaintiffs knew that their deadline for producing *all* of Dr. Cutler's and Dr. Gruber's reliance materials was March 25. Yet that deadline came and went without Plaintiffs ever once mentioning the limitations on production of those reliance materials caused by the Data Use Agreement. Indeed, Plaintiffs waited until Defendants asked for this missing data to even mention the Data Use Agreement. We are now 16 days past the deadline for producing reliance materials and learning for the first time the severe restrictions that exist on the use of a critical data set upon which Dr. Cutler's and Dr. Gruber's expert opinions rely. The delay in providing this data, and the further delay that will be caused by obtaining approval from NCHS for each of the Defendants to access this data, is delay entirely of the Plaintiffs own making and could easily have been avoided if Plaintiffs were forthright in the source of this data upfront and worked with Defendants to give them access to this data as quickly as possible.

Also potentially concerning is the fact that Plaintiffs' objection to producing this data appears to be inconsistent with Plaintiffs' own actions. In your April 10 email, you state that "it is *critical* to NCHS that *any* programmer, analyst, or other individual who electronically accesses the raw data must review and sign the agreement." (emphasis added) Despite Plaintiffs' claim that it is "critical" that "any" individual who electronically accesses this data must sign this data use agreement, it doesn't appear that Dr. Cutler or Dr. Gruber ever signed this data use agreement. By your proffer of the Data Use Agreement, are you representing that all relevant staff supporting Dr. Cutler and Dr. Gruber are members of PIRE and have signed the agreement? On its face, it appears that another one of Plaintiffs' experts, Ted Miller, is the party authorized to use this data. Is it your representation, alternatively, that Dr. Miller provided Dr. Cutler and Dr. Gruber with this complete data set in a manner that did not require Dr. Cutler or Dr. Gruber to sign this data use agreement? If that is the case, Plaintiffs should be able to provide Defendants with a complete set of this data in the same manner in which Plaintiffs provided this data to Dr. Cutler and Dr. Gruber without the Defendants signing the Data Use Agreement. We expect Plaintiffs to do so immediately.

# KIRKLAND & ELLIS LLP

April 10, 2019
Page 3

    For the reasons set forth in this letter, and given that we still are missing critical data more than 16 days after Plaintiffs were supposed to provide all expert backup materials, we will need to discuss the timing of Dr. Gruber's and Dr. Cutler's depositions.

                                Sincerely,

                              */s/ Donna M. Welch, P.C.*

                              Donna M. Welch, P.C.

cc:      Special Master Cohen
          Pete Weinberger (pweinberger@spanglaw.com)
          Andrea Bierstein (abierstein@simmonsfirm.com)
          Erin Dickinson (ekd@cruegerdickinson.com)

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Donna M. Welch, P.C.
To Call Writer Directly:
+1 312 862 2425
donna.welch@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

April 9, 2019

**By E-mail**

Pete Weinberger (pweinberger@spanglaw.com)
Andrea Bierstein (abierstein@simmonsfirm.com)
Erin Dickinson (ekd@cruegerdickinson.com)

Re:  *In re: National Prescription Opiate Litigation, MDL No. 2804* - Reliance Materials for Dr. Meredith Rosenthal

Dear Pete, Andrea, and Erin:

We have reviewed the supplemental reliance materials Plaintiffs provided for Dr. Meredith Rosenthal on April 8 and have identified several deficiencies in these materials.

***First***, four of the file names listed in the "Program running sequence new.pdf" document are indicated as revised, but the revised copy has not been provided by Plaintiffs. For example, the supplement references the program Identify_Defendant_Drugs_revised.sas but this file has not been provided by Plaintiffs. The original production contains only the similarly named file Identify_Defendant_Drugs.sas. Revised files that have not been produced include:

- Identify_Defendant_Drugs_revised.sas
- Prepare_Regression_data_revised.sas
- Preferred_Model_Comcast_final_revised.sas
- Timeline_DRAFT_FEB25_revised.sas

***Second***, the line numbers identified in the "Program edits.pdf" document do not correspond to the actual line numbers in three of the files Plaintiffs produced. For example, the Preferred_Model_Sensitivity_Time_Trend.sas script identifies a line replacement at line 170, but the program does not have a line 170 and the listed command is on line 152. This suggests that the

# KIRKLAND & ELLIS LLP

April 9, 2019
Page 2

programs used by Dr. Rosenthal's team to run her calculations differ from the ones that have been produced to Defendants. Files with different line numbers than indicated include:

- Identify_Defendant_Drugs_revised.sas
- Prepare_Aggregate_Price_Index_Attrib.sas
- Preferred_Model_Sensitivity_Time_Trend.sas
- Analysis_of_MAT_drugs.sas

***Third***, the data production still lacks some of the necessary programs to translate the source data into the final results. For instance, Dr. Rosenthal has produced as "raw data" an intermediate file named cancer_deaths_by_county, but has not provided the source information or the programs used to generate it. Files that appear to have been generated without corresponding programs include:

- cancer_deaths_by_county.xlsx
- cancer_controls.dta
- mortality_counties.dta
- indirect_regression_data.dta
- shipments_all.dta

***Fourth***, Dr. Rosenthal has also not produced the raw CDC SEER, HCUP-AHRQ, or AHRF data and corresponding interpolation program used in her program Appropriate_Uses_by_County_National_Table.sas, but rather manually enters the resulting summary table as part of her code.

***Finally***, there are multiple files that are referenced in the supplement with different capitalization that the actual file names (*e.g.,* Dr. Rosenthal lists attachment_tables_and_charts.sas but has produced Attachment_Tables_and_Charts). Please confirm whether the listed file and the actual file produced are identical; if not, please produce the correct file. Files with differing capitalization include:

- attachment_tables_and_charts.sas
- attachment_C_tables_and_charts.sas

# KIRKLAND & ELLIS LLP

April 9, 2019
Page 3

- Runquit.sas

- Showdatainfo.sas

    Plaintiffs are required to produce *all* of Dr. Rosenthal's reliance materials, not cherry-pick reliance materials that are produced to Defendants. Plaintiffs' failure to complete Dr. Rosenthal's production of reliance materials over two weeks after Plaintiffs were ordered to do so imposes severe prejudice on Defendants. Given the continued deficiencies in Dr. Rosenthal's reliance materials, Defendants cannot depose Dr. Rosenthal until April 24 (assuming the data deficiencies are resolved promptly), and, in the event the Court grants Defendants' motion for additional deposition questioning time Plaintiffs should provide Defendants with two consecutive dates that Dr. Rosenthal is available the weeks of April 22 and April 29 that Dr. Rosenthal can sit for her deposition.

Sincerely,

*/s/ Donna M. Welch, P.C.*

Donna M. Welch, P.C.

cc: Special Master Cohen

## National Center for Health Statistics
## Data Use Agreement (DUA) for Vital Statistics Data Files

Requesting Organization:

Pacific Institute for Research and Evaluation (PIRE)

Requested Data File(s):

2014 Mortality - All County (micro-data) files

Proposed Use(s):

PIRE makes aggregated injury- and substance-related mortality data available to state and federal Maternal and Child Health Bureaus. Fatal injuries are an important public health issue that exacts a physical, emotional, and economic toll on our nation. Such injuries are particularly problematic for children, teens, and the elderly for whom there is a constant need to track this phenomenon at the state level. Although incidence, rates, and costs for fatalities do exist, accounts of more recent mortality data are lacking in the public health literature.

This research proposes to fill this void by providing state-based mortality incidence, rates, and costs to Maternal and Child Health Bureau. These data will also benefit state health departments, prevention scientists, and policy makers. Data gleaned from injury analyses will be used to update web-based mortality incidence and cost tables, and U.S. and state-based fact sheets (e.g., please see the following link: http://www.childrenssafetynetwork.org/state/united-states ). These tables and fact sheets are quite popular and downloaded frequently. Manuscripts written by PIRE researchers, based upon analyses of these data, will also be submitted to states, prevention scientists, policy makers, and government agencies

Vital statistics data are provided to NCHS by vital statistics jurisdictions with the understanding that the data are protected under the provisions of the Public Health Services Act (42 U.S.C. 242m(d), and that any file released under a data use agreement requires both NAPHSIS and NCHS review and approval of proposed use.

The Public Health Service Act (42 U.S.C. 242m(d) provides that the data collected by the National Center for Health Statistics (NCHS) may be used only for the purpose for which they were obtained; any effort to determine the identity of any reported cases, or to use the information for any purpose other than for health statistical reporting and analysis, would violate this statutory restriction and the conditions of this data use agreement. NCHS does all it can to assure that the identity of data subjects cannot be disclosed; all direct identifiers, as well as characteristics that might lead to identification, are omitted from the data set. Nevertheless it may be possible in rare instances, through complex analysis and with outside information to ascertain from the data set the identity of particular persons or establishments. Considerable harm could ensue if this were done.

1

Therefore, the undersigned gives the following assurances with respect to all NCHS data sets:

- I will not use nor permit others to use the data in these data sets in any way except for statistical reporting and analysis and for the purposes described in the data request.

- I will not release nor permit others to release the data sets or any part of them to any person who is not a member of this organization, except with the approval of NCHS. Under section 308(d) of the Public Health Service Act, the only persons to be allowed access to these data sets will be staff members of this organization or its contractor(s) who have been authorized to work with the data and have, prior to being granted access to the data, read and signed this DUA Statement in the space provided below.

- I will not attempt to link nor permit others to attempt to link the data set with individually identifiable records from any other NCHS or non-NCHS data set;

## Data Use Agreement (DUA) for Vital Statistics Data Files—Cont.

- I will not attempt to use the data sets nor permit others to use them to learn the identity of any person or establishment included in any data set;

- If I should inadvertently discover the identity of any person or establishment, then (a) I will make no use of this knowledge, (b) I will immediately advise the Director of the Division of Vital Statistics of the incident, (c) I will safeguard or destroy the information that would identify an individual or establishment, as requested by NCHS, and (d) I will inform no one else of the discovered identity.

In addition, I will make every effort to release all statistical information in such a way as to avoid inadvertent disclosure. For example:

- **No figure, including totals, should be less than 10 in tabulations for sub-national geographic areas, regardless of number of years combined.**
- No data on an identifiable case should be derivable through subtraction or other calculation from the combination of tables in a given publication.
- No data should permit disclosure when used in combination with other known data.

I will secure identical written assurances from every individual within this organization who will have access to this data set.

My signature below indicates my agreement to comply with the above-stated statutorily-based requirements with the knowledge that deliberately making a false statement in any matter within the jurisdiction of any department or agency of the Federal Government violates 18 USC 1001 and is punishable by a fine of up to $10,000 or up to 5 years in prison.

### Further conditions for data use:

**NAPHSIS and NCHS have reviewed and approved the use of the data provided under this agreement for purposes described in the requestor's application for one year from the date of receipt of the data. The data files listed under "Requested Data Files" above are the property of the National Center for Health Statistics (NCHS), Division of Vital Statistics (DVS). Permission is granted to use these data files for one year from the date of receipt. At the expiration of the one year period, the data files and any copies of the data files must be destroyed. Users must notify DVS in writing that the file(s) have been destroyed. This policy will be strictly enforced; however, extension of this usage period will be given consideration under appropriate circumstances, when requested in writing. Requests for extensions must be sent to the Director, Division of Vital Statistics, 3311, Room 7311 Toledo Road, Hyattsville, MD, 20782.**

Print: Bruce A Lawrence    Signature Bruce A Lawrence    Date 8/18/2016

Print: Rebecca Spicer    Signature R. Spicer    Date 8/19/2016

Print: BINA ALI    Signature BinAli    Date 3/17/17

Print: David Swedler    Signature [signature]    Date 5/21/18

Print: BRIAN PALMER    Signature [signature]    Date 7/4/18

Print: Otto Hansen    Signature [signature]    Date 7/5/18

Print: Ted Miller    Signature Ted Miller    Date 7/5/18

5

Print: Hal Sider                           Signature: _Hal Sider_____           Date: 7/5/18

Print: Alice Kaminski                  Signature: _____           Date: 7/5/18

Print: Xiaoyao Becky Wang        Signature: _____           Date: 7/5/18

Print: Evan McKay                     Signature: _____           Date: 7/5/2018

Print: Apostolos Apostolou        Signature: _____           Date: 7/5/18

Print: Jonathan Tompkins           Signature _Jonathan Tompkins_  Date 7/5/2018

Print: _____ Signature: _____ Date: _____

Print: _____ Signature: _____ Date: _____

Print: _____ Signature: _____ Date: _____

Print: _____ Signature: _____ Date: _____

Print: _____ Signature: _____ Date: _____

Print: _____ Signature: _____ Date: _____

Print: _____ Signature: _____ Date: _____