**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-op-45090<br><br>*The County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P.*, Case No. 17-op-5004 | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster<br>Mag. Judge David A. Ruiz |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO RECONSIDER ORDERS SETTING EXPERT DISCOVERY SCHEDULE

In their second "emergency" motion in eight days, Defendants seek explicitly what their prior "emergency motion" attempted to accomplish by stealth: an abandonment of the current expert discovery schedule leading all-but-inevitably to a delay in the trial. As discussed below, no such abandonment of the Court's current schedule is necessary or warranted: the existing schedule, although ambitious, is entirely feasible and in no way deprives Defendants of their rights to due process.

## FACTUAL BACKGROUND

On March 25, 2019, as required by CMO 8, Plaintiffs disclosed nineteen experts and provided detailed reports for each of them. At that time, Plaintiffs provided dates for depositions of those experts within the window of time provided by CMO-8 so that those depositions could be completed (with one exception) by April 26, 2019. The Court allowed four additional experts to be disclosed on April 15, 2019 because discovery necessary to those opinions was not complete prior to March 25. Plaintiffs disclosed those four experts on April 15, 2019, again with detailed reports, and provided dates for their

1

depositions.

After the court issued its *nunc pro tunc* Order on April 11, 2019 (Doc. No. 1540), Plaintiffs approached the Manufacturer Defendants' liaison counsel to propose a compromise intended to streamline the expert deposition process. That proposal was shared with Special Master Cohen. It provided that each side would select the priority expert list from the other side's list of experts. The proposal further allowed Plaintiffs to supplement reports of existing experts with the goal of reducing the number of experts and allowed a small number of the experts to be deposed beyond April 26. It also maintained intact (subject to minor agreed-to adjustments) the schedule set forth in CMO 8 and subsequent orders. Over the past weekend, the Defendants communicated, through Mark Cheffo, that the parties were in agreement. Plaintiffs submitted a stipulation/order on Monday to Mr. Cheffo for circulation to defense counsel; Special Master Cohen was copied so that the Court would be aware of this stipulation which would require Court approval (a copy of the Stipulation is attached as Exhibit A). Without warning or prior notice, and contrary to the agreement reached, instead of signing the stipulation, the Defendants filed this second "emergency" motion on Monday night. At the time Defendants filed their motion, Plaintiffs had not disclosed their "priority" experts, because it appeared there was an agreement to use the proposed modified procedure that would have allowed Defendants to make the selection instead.

After receiving Defendants' unexpected motion on Monday night (with its implicit rejection of the compromise the parties had negotiated), in order to comply with the Court's order, Plaintiffs promptly submitted to the Defendants on Tuesday their list of

2

priority experts, along with two dates on which each of those witnesses can be deposed (all in late April and early May)[1] and locations where the depositions can take place. Plaintiffs also provided deposition dates and locations for those experts that were disclosed but were not on Plaintiffs' priority list. The dates Plaintiffs offered (late April and some in early May) were designed to keep the current schedule on track and also allow Defendants time to review any supplemental materials that have been provided through the meet and confer process, as well as adequate time to prepare for the depositions of the four experts disclosed on April 15. Thereafter, Plaintiffs contacted defense counsel to see if a compromise could still be reached. The call took place at 4 pm yesterday. During the call, Plaintiffs offered several accommodations despite statements by several defense counsel on the phone they intend to seek postponement of the trial date. As of the time of this filing, however, no agreement has been reached.

## ARGUMENT

Defendants contend that the current schedule does not provide them sufficient time to prepare for expert depositions. But Defendants have known for months that expert depositions would need to be completed within 30 days of their receipt of Plaintiffs' expert reports; indeed, Defendants themselves proposed the schedule. Defendants suggest they are surprised by the number and volume of Plaintiffs' expert reports, but this cannot be true: as this Court already knows, Defendants expect to

---

[1] Earlier dates were provided for many of these experts, but Defendants did not accept these dates and many have now passed. Also, where additional materials or supplements to opinions were provided Plaintiffs provided later dates to allow Defendants adequate time to prepare with the experts' full materials and opinions.

disclose more than 95 experts. They can hardly have been surprised by Plaintiffs' disclosure of a mere 23 experts. Indeed, the number of experts disclosed is comparable to the number of experts in other, much simpler MDL cases. *See, e.g., In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 6302889, at *1 (S.D. Ill. Dec. 16, 2011) ("Defendants . . . move to exclude the testimony of sixteen of the MDL plaintiffs' proffered experts."); *In re Gadolinium-Based Contrast Agents Prod. Liab. Litig.*, No. 1:08 GD 50000, 2010 WL 1796334, at *1 (N.D. Ohio May 4, 2010) (noting that each side was permitted to designate 10 generic experts, with case-specific experts outside this limitation), *opinion modified on reconsideration*, No. 1:08 GD 50000, 2010 WL 5173568 (N.D. Ohio June 18, 2010), *aff'd sub nom. Decker v. GE Healthcare Inc.*, 770 F.3d 378 (6th Cir. 2014), *and aff'd in part sub nom. Decker v. GE Healthcare Inc.*, 770 F.3d 378 (6th Cir. 2014).

In any event, Plaintiffs have already notified Defendants that they will *not* offer testimony from two of the experts disclosed on March 25, bringing the total number of Plaintiffs' experts down to 21, instead of 23. And because Plaintiffs have now designated their priority experts, Defendants know where and how to concentrate their resources in preparing for expert depositions. Moreover, it is clear that the these depositions can be taken without significant change to the current schedule: before the Defendants abandoned the compromise they had negotiated with the Plaintiffs, the parties had reached agreement on deposition dates that allowed for some experts to be deposed in early May while maintaining the overall schedule.

4

Defendants devote much of their motion to complaints about purported deficiencies in Plaintiffs' expert reports.  Plaintiffs readily admit that some of their expert reports have required supplementation and some materials that Defendants have asked for have not been provided as quickly as we would have hoped.  Like Defendants, we have felt the challenge of meeting the existing schedule; where we have fallen short, we have redoubled our efforts and have worked diligently to correct these issues in order to keep these important cases on schedule. As of today, however, Plaintiffs have responded to *every one* of Defendants' letters and emails and, with certain minor exceptions, provided *all* of the information they have asked for.[2] This includes information Plaintiffs do not believe we were obliged to provide (including publicly-available scientific literature and facilitation of access to free public information), but which were provided in response to Defendants' requests in order to avoid needless squabbling and delay.  It also includes virtually all of the Rosenthal materials Defendants refer to in their motion (and provides for prompt production of the remaining materials). [3]  The materials provided include information Plaintiffs do not believe we were obliged to provide (including publicly-available scientific literature and facilitation of access to free public information), but

---

[2] In three instances, Defendants requested data that Plaintiffs do not believe we are required to provide. Nonetheless, in the interests of cooperation and in order to avoid delay, Plaintiffs agreed to provide or facilitate Defendants' acquisition of the requested data.  In two of these instances, the data is not yet in Defendants' possession, although Plaintiffs expect that it will be shortly.  As described in the text, some materials are also outstanding for Dr. Rosenthal.

[3] Nor have Defendants been deprived of the time they need to review the more recently produced Rosenthal materials: the Rosenthal deposition will take place on May 4 and 5, at the very tail end of Plaintiffs' expert depositions, ensuring that Defendants and their experts have sufficient time to absorb these materials.

which were provided in response to Defendants' requests in order to avoid needless squabbling and delay. This short delay in providing detailed backup and supplementation as requested cannot possibly justify the *four month* delay Defendants seek with respect to their deadline to file *Daubert* motions.[4] In fact, Plaintiffs and their experts are ready to proceed to depositions and have provided a full schedule in which depositions can be completed by early May, with the heavy balance of depositions occurring before the current April 26 deadline.

Defendants also argue they should be entitled to depose Plaintiffs' experts for an unlimited amount of time, day-to-day until every single defendant has had a chance to ask every question it can think of.  Had this Court permitted such open-ended depositions of fact witnesses, fact discovery for CT1 cases would never have been completed.  There is considerably *less* reason for such open-ended discovery of Plaintiffs' experts because Defendants need not rely on cross-examination alone to address expert testimony, but rather can make use of their own experts to counter the opinions of Plaintiffs' experts.  Moreover, the Court's Deposition Protocol – which Defendants apparently do not ask this Court to reconsider, but nonetheless seek leave to ignore – provides a workable framework for managing depositions in this multi-party case. The

---

[4] Indeed, much of the delay in Defendants' new schedule comes from enlargement of time periods they do not even discuss or attempt to justify.  Thus, Defendants propose to enlarge the time period between the completion of the depositions of Plaintiffs' experts and Defendants' disclosure of their own experts, from two weeks to four and half weeks. They further propose to *double* the amount of time between the completion of expert depositions and the deadline for filing *Daubert* motions (three weeks under CMO 8, six weeks under Defendants' proposed schedule).  These enlargements, introduced *sub silentio* into Defendants' proposed schedule, appear to be intended merely to delay the trial date.

designation of two questioners for each category of Defendants (manufacturers, distributors, pharmacies) has proved to both practical and effective. Defendants have not complained about this procedure in the past and offer no reason why it should not apply to these expert depositions as well. Under this protocol, the seven-hour and 14-hour depositions allowed by the Court's recent orders will be more than sufficient for Defendants to examine Plaintiffs' experts. In any event, as Plaintiffs have already explained to the Court, there is no due process right to expert depositions at all, much less to a deposition of unlimited length. *See* Plaintiffs' Opposition to Defendants' Emergency Motion for Relief Related to Expert Depositions, Doc. #1536 at 3-4.

Defendants urge that the current schedule deprives them of any meaningful opportunity to defend themselves, but provide no support for that assertion. Given the extensive amount of discovery they have taken so far in this case, and the detailed, extensive disclosures they have already received concerning the opinions of Plaintiffs' experts, their insistence that they are being deprived of their rights rings hollow.

In sum, Plaintiffs note that, with depositions limited to one or two days, as ordered by the Court, the current schedule is entirely practical. The depositions of Plaintiffs' experts can be completed by the April 26 deadline, with allowance for a small number of depositions to occur in early May where the disclosure deadline was extended or for whom extensive supplementation has been provided. Defendants' 98 experts have no doubt been working for months to prepare their opinions, have had the vast majority of Plaintiffs' experts' opinions and supporting data since March 25 and have had time to consider Plaintiffs' experts opinions before the deadline for their reports. This Court

should order that depositions proceed on the dates Plaintiffs have proposed so that more dates the experts have held are not lost. The Court should also deny Defendants' motion to reconsider the existing schedule for expert discovery, and re-affirm the existing trial date of October 21, 2019.

Dated: April 17, 2019        Respectfully submitted,

s/Joseph F. Rice
Joseph F. Rice
**Motley Rice**
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com
*Co-Lead, Plaintiffs' Executive Committee and Counsel for Summit County, Ohio*

s/Donald A. Migliori
Donald A. Migliori
**Motley Rice**
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
dmigliori@motleyrice.com
*Counsel for Plaintiff Summit County, Ohio*

        s/Hunter J. Shkolnik
        Hunter J. Shkolnik
        **Napoli Shkolnik**
        360 Lexington Ave., 11th Floor
        New York, NY  10017
        (212) 397-1000
        (646) 843-7603 (Fax)
        hunter@napolilaw.com
        *Counsel for Plaintiff Cuyahoga County, Ohio*

        s/*Peter H. Weinberger*
        Peter H. Weinberger (0022076)
        **SPANGENBERG SHIBLEY & LIBER**
        1001 Lakeside Avenue East, Suite 1700
        Cleveland, OH  44114
        (216) 696-3232
        (216) 696-3924 (Fax)
        *pweinberger@spanglaw.com*
        *Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 17th day of April, 2019, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon defense counsel via email.

        s/Peter H. Weinberger
        Peter H. Weinberger
        *Plaintiffs' Liaison Counsel*