UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45090<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 17-OP-45004 | MDL NO. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION
TO STRIKE PLAINTIFFS' UNTIMELY AND NON-COMPLIANT
<u>EXPERT REPORTS AND OPINIONS</u>**

While maintaining that the deadlines of CMO 8 are "entirely feasible" and should remain in place as to Defendants, *see* ECF No. 1557 at 1, Plaintiffs apparently consider CMO 8 be advisory or aspirational when it comes to their own obligations.[1]  Plaintiffs' disregard for the CMO 8 deadline for expert disclosure has unfairly prejudiced Defendants and materially impacted their rights to meaningfully defend themselves.  CMO 8 guaranteed Defendants a minimum of two weeks to evaluate an expert report and complete set of reliance materials before taking that expert's deposition.  But the many "amended" and "supplemental" reports served without permission well after the March 25 deadline, combined with the fact that various experts have offered opinions based on reliance materials not timely produced (if produced at all), have nullified that guarantee.

---

[1] Defendants continue to believe that the expert discovery schedule is unfair and unworkable and have filed a motion to extend it which is currently pending.  *See* ECF No. 1552.  Defendants seek this relief *in addition to* the relief sought by their Emergency Motion to Reconsider Orders Setting Expert Discovery Schedule.  *Id.*  The two motions filed by Defendants address different (albeit related) issues that require different relief.

Defendants respectfully request that the Court strike: (i) the expert reports and opinions not timely disclosed on March 25, 2019; (ii) the expert opinions that rely on data and other materials not timely produced on March 25, 2019; and (iii) the report of Stephen Schondelmeyer, which was untimely and beyond the scope of the Special Master's order granting an extension to Plaintiffs limited to four SOMS and anti-diversion expert reports.[2] Without such relief, Defendants will be deprived of any ability to meaningfully defend themselves against these experts' novel opinions.

It would be fundamentally unfair for the Court to require Defendants to play by a rulebook that Plaintiffs are permitted to ignore. One-sided justice is no justice at all and is contrary to Due Process. *See Wardius v. Oregon*, 412 U.S. 470, 474–76 (1973) (Due Process demands that "discovery [] be a two-way street" and prevents "trials [that are] run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy" for the other side's witness.); *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992) ("While the efficient administration of justice is always an important consideration, fundamental fairness to every litigant is an even greater concern.").

**1. The Court Should Strike Plaintiffs' Expert Reports, Opinions, And Supporting Material Disclosed After The Deadline Set By CMO 8.**

CMO 8 required Plaintiffs to serve their expert reports by March 25. ECF No. 1306 at 1. CMO 8 permitted Plaintiffs to serve material after that date only if (i) "new relevant information or facts [came] forward after the expert filing date that would support *a request* that a report be amended or supplement[ed]," and (ii) Plaintiffs sought and obtained "*approval of the Special Master or Court.*" ECF No. 1306 at 1 n.1 (emphases added). Likewise, the Order on Discovery in Track 1 Cases, entered by Special Master Cohen in September 2018 without challenge from

---

[2] For a complete list of untimely expert reports and expert reports for which reliance materials were not produced on March 25 in compliance with CMO 8, see Appendix A.

2

Plaintiffs, requires that "[e]ach party shall produce, *at the same time* it serves the disclosures and other materials required under Fed. R. Civ. P. 26(a)(2) for each of its experts, the 'facts or data considered by the witness in forming' the expert's opinion." ECF No. 941 at 7 (emphasis added).[3] Plaintiffs, however, have ignored these requirements, taking multiple self-help extensions in violation of CMO 8.

- Craig McCann has now "supplemented" his report twice without Plaintiffs having sought approval from the Court of Special Master.  On April 3, he submitted a report including five new tables and an additional 95 pages of appendices that contained new information about shipments of opioid medications from at least five different Distributor Defendants across the United States.  On April 15, McCann "supplemented" yet again, submitting what amounted to a full-blown new report.  Whereas his March 25 report and his April 3 supplement offered opinions related solely to Distributor and Pharmacy Defendants, his April 15 report also addressed Manufacturer Defendants' purportedly wrongful conduct.  Plaintiffs did not seek approval to submit this new, 37-page report.

- Plaintiffs served a demonstrably incomplete report for Jeffrey Liebman on March 25.  Liebman proposes a $7.2 billion "Abatement Plan" for Cuyahoga and Summit Counties alone, which he breaks into 19 distinct categories.  His report, however, included figures for only seven of those categories in each county.  Then, without seeking leave

---

[3] *See also* ECF No. 941 at 7 ("Each party must provide the materials required to be produced, including work papers, spreadsheets, data sets, and exhibits, in a usable format to allow evaluation of any analyses performed.").

3

...

- of the Special Master or the Court, Plaintiffs unilaterally "amended" the report on April 3 to add estimates for the remaining 12 categories of purported abatement costs.[4]

- Plaintiffs submitted a "supplemental" expert report for Caleb Alexander on April 3 without seeking leave of the Special Master or the Court. Alexander altered his abatement cost estimates by materially changing the estimates for 10 of his 15 different categories of nationwide abatement remedies, some by billions of dollars.[5] Alexander's bottom-line abatement estimate increased by more than $30 billion by virtue of these changes. In fact, just this evening, Plaintiffs served an "update" to Alexander's "supplemental" report, adding three entirely new ways of estimating nationwide abatement costs.

These are not mere "supplements" as Plaintiffs maintain, as "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Antioch Co. Litig. Trust v. McDermott Will & Emery, LLP*, 2016 WL 8257680, at *2 (S.D. Ohio July 15, 2016) (internal quotation marks and citation omitted). Instead, this serial flouting of CMO 8 prejudices Defendants who now must digest these untimely reports and depose these experts in a matter of days and by April 26. Indeed, the prejudice to Defendants is particularly manifest here given that Plaintiffs' experts espouse novel theories of reliance and causation and offer past damages and future abatement calculations that are unprecedented in American jurisprudence, totaling billions of dollars for just the two Ohio counties in Track 1. Expert discovery is therefore critical—

---

[4] As recently as April 16, Plaintiffs served an "Errata" to Liebman's report that again changed the numbers in two of those categories—again, without approval from the Court or Special Master.

[5] Plaintiffs did the same for Ted Miller, who they have since withdrawn as an expert.

4

especially so given Plaintiffs' long-running refusal to answer countless interrogatories on the basis that they were better suited for expert discovery. *See* ECF No. 1552-1 at 8 n.8. But Plaintiffs' blatant disregard for the CMO 8 deadline jeopardizes Defendants' abilities to adequately test Plaintiffs' positions and explore the bases for their experts' conclusions.

Moreover, despite the clear requirement to do so under CMO 8 and the Special Master's September 2018 Order, *see* ECF 941 at 7, Plaintiffs also failed to produce by the March 25 deadline the data and other materials on which their experts relied in forming their opinions. In some cases, Plaintiffs still have not produced these materials that purport to support their experts' novel and far-reaching causation and damages theories; and even where they ultimately and belatedly provided underlying reliance materials their delay in doing so has unfairly prejudiced Defendants. *See, e.g.*, ECF No. 1531-3 (deficiency letters sent by Defendants regarding 11 of Plaintiffs' expert reports); ECF No. 1552-3 (April 11, 2019 D. Welch Letter to Special Master Cohen regarding the continuing deficiencies in production of reliance materials for Jonathan Gruber, David Cutler, and Meredith Rosenthal).

- Plaintiffs have conceded that the 39 computer programs Plaintiffs produced with Meredith Rosenthal's report on March 25 that were supposed to allow Defendants to replicate the regression models on which Rosenthal's opinions rely did not do so, hindering Defendants' ability to test the validity of Rosenthal's assumptions and conclusions.[6] After Defendants discovered this omission and timely raised it with Plaintiffs, Plaintiffs "confirmed that some of the programs [they] produced with Dr. Rosenthal's report were not correct"—underscoring that Defendants could not replicate

---

[6] To fully assess and test the validity of conclusions such as those presented by Rosenthal, it is necessary to be able to first replicate how those conclusions were reached, because it is only after such replication that one can examine whether the process and method used to reach the conclusions was proper. Without that fundamental information, Defendants are severely prejudiced in their ability to assess Rosenthal's opinions.

5

Rosenthal's regression models based on the underlying reliance materials produced by Plaintiffs by the CMO 8 deadline.  ECF No. 1552-4 (April 8, 2019 A. Bierstein Letter to D. Welch).  Even the corrected materials Plaintiffs provided on April 8, however, were incomplete and Plaintiffs made no effort to provide Defendants with corrected materials until April 16.  Thus, by their own admission, Plaintiffs have failed to comply with CMO 8 with respect to these critical materials.

- Jonathan Gruber and David Cutler rely on county-level mortality data maintained by the National Center for Health Statistics as a key variable in regression models on which their expert opinions rely.  Plaintiffs, however, did not produce this complete data set on March 25—without it, Defendants could not replicate these regression models.  Plaintiffs ignored the CMO 8 disclosure deadline under the pretext that a data use agreement with NCHS—about which Plaintiffs did not inform Defendants until over two weeks later—prevented such production.  Upon finally learning about this NCHS agreement, Defendants worked diligently with Plaintiffs to craft a separate agreement through which Defendants could access this data—but it took nearly a week to finalize.  Defendants received a portion of this data for the first time on April 16, over three weeks after the March 25 disclosure deadline.  Plaintiffs, however, still have not produced other portions of this data to Defendants.

- Plaintiffs have not produced the data that Nancy Young relies on from the Adoption and Foster Care Analysis and Reporting System ("AFCARS") and the National Child Abuse and Neglect Data System ("NCANDS").  In fact, Plaintiffs have refused to provide Defendants with the underlying data requested and have advised that there are restrictions on use of the data that require Defendants to make a direct application to

AFCARS and NCANDS or add Defendants' experts to Young's Child and Family Futures' research staff. Plaintiffs have contended that they were not required to produce the raw datasets upon which Young relied because they are "publicly available"; that, however, ignores the fact that Special Master Cohen's September 2018 Order requires all data to be available *at the time the report is served* and exempts only material that is "publicly *and easily* available." ECF No. 941 at 7 (emphases added). The data on which Young relies is not easily available to the public; to the contrary, access requires a multi-step application process. *See Request a Restricted Dataset*, NATIONAL DATA ARCHIVE ON CHILD ABUSE AND NEGLECT, https://www.ndacan.cornell.edu/datasets/request-restricted-data.cfm; *see also Order Dataset*, NATIONAL DATA ARCHIVE ON CHILD ABUSE AND NEGLECT, https://www.ndacan.cornell.edu/datasets/request-dataset.cfm. And two out of the three datasets cited by Dr. Young may take "2-3 weeks for delivery" even once this cumbersome applicable process is completed. *See Request a Restricted Dataset*, NATIONAL DATA ARCHIVE ON CHILD ABUSE AND NEGLECT, https://www.ndacan.cornell.edu/datasets/request-restricted-data.cfm.

- Plaintiffs still have not produced the materials on which Craig McCann relied—and have informed Defendants that they may not do so until April 23. These materials include the underlying files and computer codes he used to analyze raw data and produce the tables, charts, figures, and graphs he relied upon in his reports.

With the exception of the reports of four "diversion" experts, *see infra* § 2, Plaintiffs did not bother to seek or obtain approval to file the reports, opinions, and materials described above after the March 25 deadline. In fact, on the only other occasion that Plaintiffs did request approval,

7

the Special Master denied it.  On March 25, Plaintiffs expressed their "belie[f] that it is preferable to not disclose the abatement cost calculations at this time because of its potential impact on settlement negotiations" and the "defendants' SEC filings."  Exhibit A.  The Special Master concluded that "Plaintiffs should proceed with their expert report addressing abatement cost" to "allow D[efendants] to obtain the information they state they want, *pursuant to existing deadlines*."  *Id.* (emphasis added).  The Special Master then followed up with the parties and emphasized that "plaintiffs should timely *serve* upon defendants their expert reports, and those reports *should* contain the section(s) involving abatement cost (at least as to Summit and Cuyahoga counties, if not a larger geographic scope)."  *Id.* (emphases in original).

At bottom, Plaintiffs had no approval to file any of the delinquent reports, opinions, and materials described above.

**2.     The Court Should Strike The Schondelmeyer Report As Untimely And Non-Compliant With The Special Master's Ruling Regarding Anti-Diversion Expert Reports.**

On March 19, Special Master Cohen partially granted Plaintiffs' request "for an extension of time to complete and serve expert reports related solely to the issue of SOMS and anti-diversion compliance to two weeks following the completion of the U.S. Drug Enforcement Administration Depositions."  Exhibit B at 1 (internal quotation marks omitted).  The Special Master ruled that "Plaintiffs may file their expert reports related to the issue of SOMS and anti-diversion compliance -- no more than 4 such expert reports -- on or before April 15, 2019.  All other expert reports remain due on March 25, 2019."  *Id.*  Plaintiffs nonetheless served *five* additional reports on April 15—including Stephen Schondelmeyer's report, which has nothing to do with SOMS and anti-diversion compliance.

By his own admission, Schondelmeyer is not a DEA or anti-diversion expert: he purports to be an expert in pharmaceutical economics and public policy.  Schondelmeyer was asked to

provide his expert opinion on the retail pharmaceutical distribution market and whether the Manufacturer Defendants and Distributor Defendants had access to sufficient information and data by which to assess the alleged oversupply of opioid drugs. His report focuses on the types and sources of data regarding opioid drug distribution and sales data generated as a byproduct of the interconnected marketing and distribution systems, and his opinion is that the Manufacturer Defendants and Distributor Defendants had sufficient information to detect and assess suspicious orders.

But this opinion does not make Schondelmeyer an anti-diversion or SOMS expert. He does not consider DEA regulations or enforcement activities, does not discuss data or practices related to anti-diversion issues, and does not rely upon or cite any of the DEA depositions that have been taken to date. His primary focus is on macro-level market data that purportedly allows defendants to make conclusions about the supply of opioid drugs, potentially suspicious orders, and a whole host of other compliance-related issues that have little to do with SOMS and anti-diversion compliance. Tellingly, a significant portion of Schondelmeyer's opinions address financial incentives in the supply chain—far afield from what Special Master Cohen allowed Plaintiffs to submit three weeks after the expert disclosure deadline. If Plaintiffs wished to rely on Schondelmeyer's opinions, they could and should have disclosed him on March 25 pursuant to the CMO 8 deadline rather than attempting to shoehorn his opinions into the SOMS/anti-diversion bucket where they have no place. The Court should not allow Plaintiffs to avoid the consequences of their untimely disclosure.[7]

---

[7] Defendants are still in the process of reviewing the other expert reports and supporting materials served on April 15 and reserve the right to supplement this Motion and Appendix A based on that review. Defendants also reserve the right to supplement this Motion and Appendix A should it come to their attention that other reports of Plaintiffs' experts rely on additional materials that were not properly and timely disclosed.

## **RELIEF SOUGHT**

In sum, the Court should strike these untimely reports and opinions for which Plaintiffs never sought, let alone received, leave to file after the expert disclosure deadline, as well as the opinions that rely on underlying materials Plaintiffs produced after the CMO 8 deadline (if at all). *See Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003) (striking untimely supplemental expert report "submitted long after the deadline imposed by the Court"); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (declining to excuse plaintiff's failure to comply with scheduling order "simply because the expert was available for a deposition"). It is only fair that all parties be held to those deadlines. "[L]itigants have an unflagging duty to comply with clearly communicated case-management orders." *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998); *see also Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) ("[D]isobedience of court orders, in and of itself, constitutes extreme misconduct . . . . This principle applies with undiminished force to scheduling orders. To manage a crowded calendar efficiently and effectively, a trial court must take an active role in case management. Scheduling orders are essential tools in that process—and a party's disregard of such orders robs them of their utility."). And "a litigant who ignores a case-management deadline does so at his peril." *Rosario-Diaz*, 140 F.3d at 315 (citation omitted).

The unprecedented nature of this case, the novel legal theories asserted by Plaintiffs, and the complicated damages theories offered by Plaintiffs that purport to generate damages unmatched in American jurisprudence compel a case management schedule that will afford the parties a meaningful opportunity to prepare their cases. Yet, notwithstanding that Plaintiffs have failed to comply with CMO 8's requirements, Plaintiffs insist, and the Court has recently said, that no deadlines be extended. *See* ECF No. 1540 at 2 (declaring *sua sponte* that all of the deadlines

in CMO 8 "will remain in place").  Given the magnitude and exceptional complexity of this litigation, these deadlines are simply unrealistic, unworkable, and plainly prejudicial.

For the foregoing reasons, Defendants respectfully request that the Court strike: (i) the expert reports and opinions not timely disclosed on March 25, 2019; (ii) the expert opinions that rely on data and other materials not timely produced on March 25, 2019; and (iii) the report of Stephen Schondelmeyer, which was untimely and beyond the scope of the Special Master's order granting an extension to Plaintiffs limited to four SOMS and anti-diversion expert reports.

Dated: April 17, 2019 Respectfully submitted,

/s/ Kaspar J. Stoffelmayr (consent)
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com

*Liaison Counsel for the Chain Pharmacy Defendants*

/s/ Mark S. Cheffo (consent)
Mark S. Cheffo
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
mark.cheffo@dechert.com

*Co-Liaison Counsel for the Manufacturer Defendants*

/s/ Carole S. Rendon (consent)
Carole S. Rendon
BAKER & HOSTETLER LLP
Key Tower 127 Public Square, Ste. 2000
Cleveland, OH 44114
(216) 621-0200
crendon@bakerlaw.com

*Co-Liaison Counsel for the Manufacturer Defendants*

/s/ Geoffrey E. Hobart (consent)
Geoffrey E. Hobart
Mark H. Lynch
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
(202) 662-5281
ghobart@cov.com
mlynch@cov.com

*Co-Liaison Counsel for the Distributor Defendants*

/s/ Robert A. Nicholas (consent)
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
(215) 851-8100
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Co-Liaison Counsel for the Distributor Defendants*

/s/ Enu Mainigi (consent)
Enu Mainigi
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
emainigi@wc.com

*Co-Liaison Counsel for the Distributor Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of April 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

> */s/ Donna M. Welch*
> Donna M. Welch, P.C.
> KIRKLAND & ELLIS LLP
> 300 North LaSalle
> Chicago, IL 60654
> Tel: (312) 862-2000