## APPENDIX A

| Proffered expert | Summary of Deficiencies |
|---|---|
| G. Caleb Alexander | • On the March 25, Alexander submitted a 59-page report with "[p]reliminary analyses" of 15 different categories of nationwide abatement remedies.<br>• On April 3, 2019, and without leave, Plaintiffs served a "supplemental" report.<br>• Alexander's supplemental report materially changed the estimates for 10 of the 15 categories, some by billions of dollars. His bottom-line estimate increased by more than $30 billion.<br>• The supplement also included a previously unproduced 14-page "Technical Appendix" along with three spreadsheets, which contain 30 separate sheets.<br>• On April 17, Alexander served another substantial "update." Specifically, he made a number of material changes to the models used to estimate his 15 categories. He also provided new ways of estimating the 15 categories; for the first time, this "update" sets out four different ways estimating the abatement costs, three of which were not previously disclosed. |
| David Cutler / Jeffrey Gruber | • On March 25, Plaintiff partially produced government mortality data on which Dr. Cutler and Dr. Gruber rely for their opinions.<br>• On April 10, Plaintiffs first informed Defendants of the existence of a Data Use Agreement required for access to a complete set of relied upon data.<br>• Defendants received a portion of this data for the first time on April 16, over three weeks after the March 25 disclosure deadline. Plaintiffs, however, still have not produced other portions of this data to Defendants. |
| Jeffrey Liebman | • Liebman proposes a $7.2 billion "Abatement Plan" for Cuyahoga and Summit Counties alone. He breaks that plan into 19 separate categories.<br>• But his original report, served on the March 25 deadline, included figures for only 7 of those 19 categories in each county. The remainder—12 categories for each of Cuyahoga and Summit Counties—were left blank.<br>• On April 3, more than a week after the deadline, Liebman served a "supplemental" report filling in the numbers for the remaining categories. In addition, Liebman changed the figures for several of the 7 categories that had been disclosed by the deadline. |

|  |  |
|---|---|
|  | • The result was a $1.0315 billion increase in the base abatement estimate for Summit, and a $475 million increase in the base abatement estimate for Cuyahoga. |
| Craig McCann | • On March 25, McCann provided his expert report without the underlying files and computer codes he used to analyze data.  On April 5 and April 11, Defendants raised these deficiencies with Plaintiffs.<br>• Plaintiffs' counsel has conceded that programming codes are necessary to review and replicate expert analysis in response to deficiency letters regarding other experts. Plaintiffs' counsel asserts, but has provided no basis why such information would not be appropriately disclosed here, but in any event, finally agreed to provide Dr. McCann's reliance materials in a letter dated April 15, three weeks after the production deadline.<br>• Notably, the reliance materials have not yet been produced and Plaintiffs' counsel has represented that Dr. McCann cannot provide these underlying files and computer codes until closer to April 23 (29 days after the deadline) because he is testifying in another case and has "other professional obligations."<br>• McCann has now "supplemented" his report twice.<br>• On April 3, McCann included five previously excluded tables and an additional 95 pages of appendices.<br>• But, even after the April 3 supplement, McCann's report remained focused on Distributor and Pharmacy Defendants—not any of the Manufacturer Defendants. All of McCann's reliance materials also had not been produced.<br>• On April 15—a full three weeks after the deadline— McCann served a new report focused on the Manufacturer Defendants. While styled a "Second Supplemental" report, this is an entirely new report.<br>• McCann's April 15 report on the Manufacturer Defendants is 37 pages, including 71 paragraphs, not counting appendices. |
| Meredith Rosenthal | • On April 4, Defendants identified missing reliance materials for Dr. Rosenthal.  For example, the 39 computer programs Plaintiffs produced with Dr. Rosenthal's report on March 25, which supposedly replicated her regression models, did not do so.<br>• On April 8, supplemental materials were produced. Along with these materials, Plaintiffs responded that they had "confirmed that some of the programs we produced with Dr. Rosenthal's report were not correct." At that time Plaintiffs purported to provide corrected programs. |

2

|  |  |
|---|---|
|  | <ul><li>On April 9, Defendants informed Plaintiffs that these corrected programs still did not produce Dr. Rosenthal's regression model due to missing data files.</li><li>Plaintiffs did not provide these files until April 16.</li></ul> |
| Nancy K. Young | <ul><li>Dr. Young relies on data from the Adoption and Foster Care Analysis and Reporting System ("AFCARS") and the National Child Abuse and Neglect Data System ("NCANDS").  Plaintiffs failed to include this underlying data with their report served on March 25.</li><li>Plaintiffs have refused to provide Defendants with the underlying data requested and have advised that there are restrictions on use of the data that require Defendants to make a direct application to AFCARS and NCANDS or add Defendants' experts to Dr. Young's Child and Family Futures' research staff.</li></ul> |