**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>**This document relates to:**<br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45090<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 17-OP-45004 | **MDL NO. 2804**<br><br>**Case No. 17-md-2804**<br><br>**Hon. Dan Aaron Polster** |

## MANUFACTURER DEFENDANTS' AND DISTRIBUTOR DEFENDANTS' RESPONSE TO TRACK ONE PLAINTIFFS' OBJECTION TO DISCOVERY RULING NO. 19 REGARDING DR. PORTENOY

Throughout the whole of fact discovery, Plaintiffs wrongfully withheld their cooperation and settlement agreements with former defendant Dr. Russell Portenoy and affirmatively misrepresented that those agreements did not exist, despite numerous discovery requests calling for the production of those agreements and the disclosure of the relationship between Plaintiffs and Dr. Portenoy.  Faced with an overwhelming record of affirmative misconduct by Plaintiffs in concealing this critical discovery—a record that includes *repeated misrepresentations* to the Court about settlement negotiations, *repeated failures to disclose* the agreements and the relationship with Dr. Portenoy in response to Defendants' discovery requests, and *repeated violations* of a Court-ordered stay of discovery that Plaintiffs themselves helped put in place—the Special Master properly ruled that Plaintiffs' nondisclosure could not be excused and that the "fair" and

"equitable" remedy was exclusion of Dr. Portenoy's testimony from the Track One cases. Discovery Ruling No. 19 Re: Dr. Portenoy (Dkt. 1524) ("DR19") at 6 & n.3.

In their objection to the Special Master's ruling, Plaintiffs continue to advance the same spurious claim: their failure to disclose these agreements was inadvertent. But the Special Master rejected this argument, holding that the facts set forth in Defendants' comprehensive submission demonstrated that Plaintiffs' concealment of these agreements was no mere "mistake." DR19 at 4. In seeking to overturn this finding, Plaintiffs attempt to recast powerful documentary evidence proving that they knowingly disregarded their obligation to disclose their agreements and relationship with Dr. Portenoy. But the evidence speaks for itself, as do myriad examples of Plaintiffs' affirmative misconduct with respect to Dr. Portenoy's cooperation and settlement agreements.

While it is clear that by withholding critical evidence of Dr. Portenoy's cooperation and settlement agreements, Plaintiffs have severely prejudiced Defendants, it is not Defendants' burden to show that they were harmed—***it is Plaintiffs' burden*** to show that their failure to disclose was harmless. *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land In Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016). And Plaintiffs' claim that Defendants were not harmed because they still have time to depose Dr. Portenoy before trial misses the point entirely. *See* Obj. at 8. As the Special Master found, Dr. Portenoy's cooperation with Plaintiffs introduced "a clear change in circumstances, which defendants had ample reason to explore in discovery." DR19 at 5. Defendants were entitled to depose witnesses and seek other discovery that would have contradicted and potentially discredited Dr. Portenoy's newfound allegiance to Plaintiffs. And Defendants certainly would have done so had they known Dr. Portenoy would be testifying as a cooperating witness for Plaintiffs. The fact that Defendants knew "the gist of his views," as

Plaintiffs put it, in no way put Defendants on notice that Dr. Portenoy would serve as a "critical" witness for Plaintiffs at trial.  Obj. at 8–9.  Plaintiffs' misconduct robbed Defendants of the time they needed to respond to this significant development, which they only learned of a year after it actually happened and on the eve of the close of discovery.  Fact discovery is now closed, and intensive expert discovery is already well under way.  Consequently, there is no remedy for the serious prejudice to Defendants in Track One.

Given Plaintiffs' inexcusable concealment of Dr. Portenoy's proffer and settlement agreements and the resulting severe prejudice to Defendants, the Special Master's ruling excluding his testimony in the Track One cases is anything but "excessive"—it is the "automatic and mandatory" result under Rule 37.  *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) (internal quoations omitted).  The Court should accordingly deny Plaintiffs' objection.

**ARGUMENT**

To avoid the mandatory exclusion of Dr. Portenoy's testimony in the Track One cases, Plaintiffs must show that their failure to disclose his proffer and settlement agreements was "substantially justified" or "harmless."  FED. R. CIV. P. 37(c)(1).  Plaintiffs can show neither. Indeed, the evidence demonstrates that Plaintiffs willfully withheld this evidence and took affirmative steps to conceal it throughout the course of discovery, denying Defendants the ability to prepare for the case Plaintiffs intended to present at trial.

### A.  Plaintiffs' Wrongful Withholding of the Proffer and Settlement Agreements Was Not Inadvertent

As set forth in the comprehensive chronology provided in Defendants' submission to the Special Master, Plaintiffs intentionally concealed the cooperation and settlement agreements with

Dr. Portenoy for nearly a year.  *See* Dkt. 1524-1 at 7-20.  Defendants need not reiterate those facts again, but for the convenience of the Court, below is a brief summary of events:

- **January-March 2018**:  Dr. Portenoy negotiates and executes the proffer and settlement agreements with Plaintiffs.  Dkt. 1524-2 at Exhs. 1, 3.

- **May 2018**:  The Court enters a stay of discovery as to Dr. Portenoy to allow him to participate in "ongoing discussions with Plaintiffs about a potential resolution," even though a settlement had already been reached.  Dkt. 407.

- **August 2018**:  Plaintiffs affirmatively deny the existence of the proffer and settlement agreements in their discovery responses.  Dkt. 1524-2 at Exhs. 31 & 32.

- **October 2018-January 2019**:  Plaintiffs affirmatively deny the existence of the proffer and settlement agreements in their weekly production updates provided to the Special Master and parties.  *See, e.g.*, *id*. at Exhs. 33 & 34.

- **December 2018**:  Dr. Portenoy executes a 35-page declaration, which Plaintiffs fail to produce for nearly a month.  *Id*. at Exhs. 7 & 39.

- **January 2019**:  Before producing Dr. Portenoy's declaration, Plaintiffs' counsel discusses a plan to coordinate the issuance of deposition subpoenas with counsel for Dr. Portenoy and counsel for Plaintiffs in the Oklahoma state court litigation.  *Id*. at Exh. 9.  Shortly after the subpoenas are issued and in the same email chain, the question is raised as to whether Plaintiffs' counsel will "hand[] over a copy of the declaration to defendants (and [if] so, when)."  *Id*.  Later that day, Plaintiffs finally produce the declaration, but do so in a manner calculated not to draw attention to the contents of that production.  *See* Dkt. 1524-1 at 18-19; Dkt. 1524-2 at Exhs. 39 & 40.

    More than a week later, Defendants learn for the first time from counsel for Dr. Portenoy that he entered into a proffer agreement with Defendants a year earlier.  After Defendants move for emergency relief from the Special Master and alert him to Plaintiffs' failure to disclose these agreements, Plaintiffs produce the proffer and settlement agreements.  *Id*. at Exhs. 42 & 43.

Before the Special Master, Plaintiffs claimed that their failure to produce the proffer and settlement agreements was "inadvertent" and the result of the "[l]awyers working on affirmative discovery [being] distinct from lawyers working on defensive discovery requests."  Dkt. 1524-3 at 7.  The Special Master, however, rejected this explanation because the "facts show that non-production was not a simple mistake."  DR19 at 4.  In support of this finding, the Special Master

4

cited two pieces of evidence set forth by Defendants: (1) the same attorney who negotiated Dr. Portenoy's proffer agreement and procured his 35-page declaration also signed Plaintiffs' discovery responses disavowing the existence of any such agreement; and (2) this same attorney was involved in discussions about withholding Dr. Portenoy's declaration from Defendants. *Id*. at 4-5. In their objections, Plaintiffs claim that this evidence is not "fact[]" and that the documents do not "carry the implication the Special Master ascribed to them." Obj. at 4. But a plain reading of the documents demonstrates that Plaintiffs' failure to disclose was not inadvertent.

First, as the Special Master found, "Summit County and Akron's responses are signed by the same counsel [Linda Singer] who principally drafted Dr. Portenoy's proffer agreement and corresponded with counsel for Dr. Portenoy regarding his proffer session." DR19 at 4; *see also* Dkt. 1524-2 at Exhs. 1, 2, 32. There is no denying this. Yet Plaintiffs suggest that Ms. Singer's electronic signature on Plaintiffs' discovery responses is not a real signature. In 2019, this is nothing short of specious. Nothing in Rule 26 or any other rule requires a handwritten signature on discovery responses, and it is common practice in this litigation and every other for attorneys to sign discovery responses electronically. *See Allstate Ins. Co. v. A & F Med. P.C.*, 2017 WL 2445185, at *2 (E.D.N.Y. June 5, 2017).

More troubling is Plaintiffs' assertion that despite Ms. Singer's knowledge of and direct involvement in Dr. Portenoy's settlement and cooperation agreement, the discovery responses bearing her signature affirmatively denied the existence of that agreement because she "simply was unaware of the document request that called for production of Dr. Portenoy's settlement agreement." Obj. at 4. The Federal Rules, however, mandate that by signing a discovery response, an attorney "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry, [the] disclosure is complete and correct as of the time it is made." FED.

5

R. CIV. P. 26(g)(1).  Plaintiffs' claim that Ms. Singer's "reliance on her colleagues to have prepared accurate responses was reasonable under the circumstance" is insufficient to satisfy this standard. Counsel who sign discovery responses have "at all times an affirmative, non-delegable duty to conduct a reasonable inquiry to ensure that . . . discovery responses [are] complete and correct." *Phipps v. Accredo Health Grp., Inc.*, 2017 WL 685579, at *4 (W.D. Tenn. Feb. 21, 2017).  Indeed, Ms. Singer's purported ignorance of the content of the responses she signed—which resulted in the withholding of responsive and critical evidence—calls into question the veracity of all of Summit County's discovery responses as nearly all of them bear Ms. Singer's signature.

But even if Plaintiffs failed to review their discovery responses for accuracy when they were written and served, it is simply implausible that, throughout the entirety of fact discovery, not a single one of Plaintiffs' counsel with knowledge of the proffer and settlement agreements with Dr. Portenoy believed that such information was responsive to Defendants' discovery requests—especially given that Plaintiffs intended to rely on such "critical" evidence at trial.  Obj. at 9.  Plaintiffs allege that Dr. Portenoy was "at the hub" of the alleged marketing scheme underlying each of Plaintiffs' claims against the Manufacturer Defendants (Dkt. 1466 at ¶ 391), and it defies logic that Plaintiffs thought his cooperation agreement was not relevant, discoverable evidence in this litigation.

Second, Special Master Cohen rightly found that an "email thread between MDL counsel and Oklahoma counsel discussing whether Portenoy's declaration would be provided to defendants" further demonstrates that Plaintiffs' failure to disclose the proffer and settlement agreements was not inadvertent.  DR19 at 5.  In that email chain, counsel for the Oklahoma state court plaintiffs put the question squarely to MDL Plaintiffs' counsel:  Would they be "handing over a copy of the declaration to defendants (and [if] so, when)?"  Dkt. 1524-2 at Exh. 9.  Plaintiffs

claim that, because they did not directly respond to this email, it cannot support the Special Master's conclusion that Plaintiffs' withholding of Dr. Portenoy's cooperation and settlement agreements was "not a simple mistake." Obj. at 6-7; DR19 at 4.  But Plaintiffs ignore the fact that in the days before that query from Oklahoma plaintiffs—in the same email chain—Plaintiffs' counsel was coordinating the issuance of deposition subpoenas with counsel for Dr. Portenoy and the Oklahoma plaintiffs.  Dkt. 1542-2 at Exh. 9.  As is discussed in those emails, the purpose of that coordination was to schedule Dr. Portenoy's depositions for the same day—without consulting Defendants—in order to ensure there would be no time for a defense examination.  *Id*.  At the time of this coordination effort, however, Plaintiffs knew that Dr. Portenoy's declaration—which had been executed nearly a month earlier—still had not been produced to Defendants.  *Id*.  This email chain thus establishes that Plaintiffs knowingly withheld Dr. Portenoy's declaration until deposition subpoenas could be issued, all in an attempt to maximize Plaintiffs' tactical advantage.  On this record, it was entirely logical for the Special Master to conclude that Plaintiffs—just as they had done with Dr. Portenoy's declaration—had also intentionally withheld the settlement and proffer agreements to keep them secret for as long as possible.

These two pieces of evidence fully support the Special Master's conclusion that Plaintiffs' failure to disclose was not inadvertent.  But when taken together with the rest of the "detail[ed]" record before the Special Master and now the Court, that conclusion is inescapable.  DR19 at 3.  That evidence includes:

- Plaintiffs' repeated failure to advise the Court and Defendants that a settlement with Dr. Portenoy had already been reached even as the Court was entering a series of orders staying discovery for the express purpose of allowing Dr. Portenoy to participate in "ongoing discussions with Plaintiffs about a potential resolution." Dkt. 407.

- Plaintiffs' withholding of documents they received from Dr. Portenoy for nearly two months before producing them to Defendants, and then transmitting them

      directly to the vendor with no production cover letter to Defendants advising them of the production, despite that on the same day Plaintiffs made four other productions—all of which were accompanied by a cover letter.  *See* Dkt. 1524-2 at Exhs. 5 & 6.

- Plaintiffs' waiting nearly a month to produce Dr. Portenoy's declaration after its execution, and then failing to disclose its contents in the accompanying production letter, providing the wrong password for the production volume, and misidentifying the contents of that production in Summit County's weekly production update as "handbooks and other related documents . . . from the Summit County Court of Common Pleas."  *See* Dkt. 1254-1 at 18-19; Dkt. 1254-2 at Exhs. 39 & 40.

- Plaintiffs' failure to produce Dr. Portenoy's settlement and cooperation agreements with his declaration, and then only doing so once Defendants sought emergency relief from the Special Master and Plaintiffs knew they could no longer withhold that evidence.  Dkt. 1254-2 at Exh. 42 & 43.

Indeed, Plaintiffs' withholding of Dr. Portenoy's cooperation agreement is part of a pattern of misconduct in concealing key, responsive evidence from Defendants.  Just weeks before his ruling excluding Dr. Portenoy's testimony from the Track One cases, the Special Master also excluded declarations of former Defendant employees that Plaintiffs wrongfully withheld—in some cases for months—until the end of fact discovery, despite the fact that those declarations were plainly responsive to Defendants' discovery requests.  *Id.* at Exh. 12.

In sum, the Special Master's finding is well-supported and Plaintiffs' objections should be overruled.

### B. Plaintiffs' Wrongful Withholding of the Proffer and Settlement Agreements Was Not Harmless

Plaintiffs also challenge the Special Master's finding that their withholding of Dr. Portenoy's settlement and proffer agreements "was not harmless," and attempt to shift the burden to Defendants to show harm.  *See* Obj. at 6-8.  But it is not Defendants' burden to show that the failure to disclose was harmful; it is Plaintiffs' burden to show that it was harmless, and they cannot do that here.  *United States ex rel. Tenn. Valley Auth.*, 821 F.3d at 752; *EQT Prod. Co.*

8

*v. Magnum Hunter Prod., Inc.*, 2017 WL 2295906, at *3 (E.D. Ky. May 25, 2017) ("Whether the failure was substantially justified or harmless is a question on which [the party opposing sanctions] has the burden.").  As the Special Master found, Dr. Portenoy's cooperation with Plaintiffs introduced "a clear change in circumstances, which defendants had ample reason to explore in discovery." DR19 at 5.

Plaintiffs claim that "[t]he only thing that changed" as a result of their wrongful concealment of Dr. Portenoy's cooperation and settlement agreements was "Dr. Portenoy's agreement to testify truthfully" about a handful of public statements he made that were cited in Plaintiffs' Complaints.  Obj. at 7-8.  But this entirely ignores the Court-ordered stay of discovery as to Dr. Portenoy, which was put in place under the false pretense of allowing Dr. Portenoy to engage in "discussions about a *potential* resolution" even though he had already settled with Plaintiffs.  Dkt. 407 (emphasis added).  As a result of that discovery stay, Defendants were precluded from exploring Dr. Portenoy's public statements with Dr. Portenoy.  Defendants could never challenge or seek to lift the discovery stay because they had no reason to believe that a settlement, much less a cooperation agreement, had already been reached between Dr. Portenoy and Plaintiffs.  It is not enough that Defendants might have known the "gist" of Dr. Portenoy's views based on Plaintiffs' Complaint.  Obj. at 8.  Defendants did not and could not know what Dr. Portenoy would testify to because they could not investigate these essential facts before the close of discovery.  *Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 982 (6th Cir. 2017) (rejecting argument that failure to disclose was harmless because defendant "could easily guess what the substance of the witnesses' testimony would be") (internal quotations and alterations omitted).

Similarly unfounded is Plaintiffs' claim that "[t]he only persons with direct knowledge of Dr. Portenoy's role in the opioid crisis were Defendants' employees and agents." Obj. at 8.  In

9

fact, Defendants have been affirmatively precluded from determining who does have knowledge of Dr. Portenoy's alleged conduct because the Court-ordered stay prevented them from obtaining this information from Dr. Portenoy.  In any event, had Defendants known of Dr. Portenoy's cooperation agreement with Plaintiffs, they would have, at a minimum, sought to depose third-party physicians who could challenge Dr. Portenoy's specific claims about Defendants' supposedly misleading marketing.  Defendants would have also deposed researchers who could challenge Dr. Portenoy's claims about the studies funded by Defendants, as well as third parties who could testify about the use of key opinion leaders to educate patients and prescribers about best practices.

Despite Plaintiffs' claim to the contrary, this is not discovery that Defendants could or would have otherwise sought simply based on the allegations in Plaintiffs' Complaints.  "Parties do not have free rein to use at trial the universe of proof relevant to a claim, without (at least) making proper discovery disclosures."  *Silitonga v. Kentucky State Univ.*, 2018 WL 3969951, at *2 (E.D. Ky. Aug. 20, 2018).  In *Caudell v. City of Loveland*, 226 F. App'x 479 (6th Cir. 2007), the Sixth Circuit held that exclusion of a witness's testimony was proper even though there was "some indication of [the witness's] relevance during discovery" because the withholding party failed to respond to an interrogatory "indicat[ing] that [the witness] would provide testimony on [a] crucial point" at issue.  *Id.* at 481.  As the court explained, "even if the defendants might otherwise have been prudent to investigate [the witness's] knowledge," the misrepresentations made in discovery "suggested to [the defendants] that such investigation might have been a waste of resources."  *Id*.  Thus, even if Defendants could have investigated Dr. Portenoy's recent alleged public statements (which they could not because of the Court-ordered stay), given the time and resource constraints, Defendants made strategic decisions about the proof that would come in at

trial based on the facts that they knew and were timely disclosed to them.  Plaintiffs' deliberate discovery violations purposefully distorted those decisions and "thwarted [D]efendants' ability to" adequately prepare their defense and "effectively rebut" Dr. Portenoy's testimony in the Track One cases.  *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, 2016 WL 4468000, at \*19 (N.D. Ohio Aug. 23, 2016).

For these reasons, Defendants would have been entitled to substantial additional discovery both as to Dr. Portenoy's cooperation agreement and Plaintiffs' allegations involving him, and it is thus wholly insufficient to "cure" Plaintiffs' willful discovery violations by limiting Defendants to the deposition of Dr. Portenoy himself.  *See Abrams*, 694 F. App'x at 982 (finding that the defendant is entitled to "the opportunity and time to find rebuttal evidence or testimony").  This Court has made clear that it "will not extend the deadlines set by the Court's current scheduling order, CMO-8."  Dkt. 1540 at 2.  Reopening discovery at this late date, particularly given approaching expert and summary judgment motion deadlines, would be both unworkable and of significant prejudice to Defendants, forcing them to divert attention from these critical deadlines while Plaintiffs would "actually get[] to prepare for trial"—in effect, rewarding Plaintiffs for their misconduct.  *EQT Prod. Co.*, 2017 WL 2295906, at \*5; *Silitonga*, 2018 WL 3969951, at \*4 ("Defendants improperly seek to force Plaintiffs to invest significant time reviewing additional documents and/or deposing more witnesses, while Defendants would be able to actually prepare for trial." ).  The more appropriate remedy is to redress Plaintiffs' willful, protracted discovery violations by excluding Dr. Portenoy's testimony from the Track One cases—as the Special Master correctly concluded.

11

### C. Exclusion of Dr. Portenoy's Testimony in the Track One Cases Is Mandatory, Not Excessive

Because Plaintiffs cannot show that the withholding of Dr. Portenoy's cooperation and settlement agreement was substantially justified or harmless, exclusion of his testimony is the "***automatic and mandatory***" result under Rule 37.  *Dickenson*, 388 F.3d at 983 (emphasis added); *see also Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) ("[T]he test [for Rule 37(c) exclusion] is very simple:  the sanction is ***mandatory*** unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.") (internal quotations omitted).

The case on which Plaintiffs rely to claim that the Special Master's ruling is excessive— *Zoltek Corp. v. United States*, 71 Fed. Cl. 160 (Cl. Ct. 2006)—offers no such support, and in fact compels a finding that exclusion of Dr. Portenoy's declaration is proper here.  In *Zoltek*, the Court did not find, as Plaintiffs contend, that exclusion of a wrongfully withheld declaration was "excessive" despite that the failure to disclose was "neither substantially justified nor harmless." Obj. at 9-10.  To the contrary, the court in *Zoltek* found that exclusion of the declaration was excessive because the failure to disclose ***was harmless***, and thus the violation fell into an exception to mandatory exclusion under Rule 37(c).  71 Fed. Cl. at 170.  More specifically, and particularly relevant to Plaintiffs' failure to disclose Dr. Portenoy's proffer and settlement agreements, the court in *Zoltek* found that the failure to disclose was harmless because fact discovery had not yet closed "and a trial date [had] not yet been set." *Id*. at 169.  Indeed, the court in *Zoltek* specifically noted that exclusion of evidence is proper "where disclosure of the evidence to the other party occurred after the close of discovery." *Id*.  Thus, exclusion of Dr. Portenoy's testimony is warranted here when discovery has closed, a trial date has been set, and the Court has made clear that these date cannot be extended.

12

## CONCLUSION

It is not because "Defendants are desperately afraid of Dr. Portenoy's testimony" that exclusion of his testimony in the Track One cases is warranted (Obj. at 12)—it is because Plaintiffs were so desperate to conceal his cooperation and settlement agreements that they committed discovery violation after discovery violation to keep that information from Defendants.  Plaintiffs have offered no plausible explanation for their egregious misconduct, and the Special Master's ruling was not only "fair" and "equitable" (DR19 at  & n.3), but the result compelled by the Federal Rules and the law of this Circuit.  Plaintiffs' objection should be overruled.

Dated:  April 25, 2019                                   Respectfully submitted,

/s/ Mark S. Cheffo
Mark S. Cheffo
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
mark.cheffo@dechert.com

*Co-Liaison Counsel for the Manufacturer Defendants*


/s/ Carole S. Rendon
Carole S. Rendon
BAKER & HOSTETLER LLP
Key Tower 127 Public Square, Ste. 2000
Cleveland, OH 44114
(216) 621-0200
crendon@bakerlaw.com

*Co-Liaison Counsel for the Manufacturer Defendants*

/s/ Geoffrey E. Hobart
Geoffrey E. Hobart
Mark H. Lynch
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
(202) 662-5281
ghobart@cov.com
mlynch@cov.com

*Co-Liaison Counsel for the Distributor Defendants*


/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
(215) 851-8100
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Co-Liaison Counsel for the Distributor Defendants*


/s/ Enu Mainigi
Enu Mainigi
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
emainigi@wc.com

*Co-Liaison Counsel for the Distributor Defendants*