# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) ) Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) Judge Dan Aaron Polster |
| *Track One Cases* | ) ) **OPINION AND ORDER REGARDING** ) **DISCOVERY RULING NO. 19** |

Before the Court is Plaintiffs' Objection to Discovery Ruling No. 19 Regarding Dr. Portenoy. **Doc. #: 1551**. On April 5, 2019, Special Master Cohen issued Discovery Ruling No. 19. Doc. #: 1524. Although not expressly stated in that ruling, the Special Master indicated that Plaintiffs' untimely disclosure of a settlement agreement reached with Dr. Portenoy violated Fed. R. Civ. P. 26(a) or (e). Due to that violation, the Special Master concluded that the appropriate sanction was that "Plaintiffs may not: (1) obtain deposition testimony from Dr. Portenoy in the Track One cases; nor (2) rely in Track One cases (at trial or in support of any motion) upon any prior written or oral testimony from Dr. Portenoy, including the Oklahoma deposition." *Id.* at 3. Defendants filed a Response to Plaintiffs' Objection on April 25, 2019. Doc. #: 1572. For the following reason, the Court **MODIFIES** the Special Master's ruling as described below.

I.

Dr. Russell Portenoy has been "characterized in [many cases consolidated in this MDL, including the *Track One*] complaints as a 'Key Opinion Leader' who, essentially, acted as a paid shill for the manufacturer defendants by promoting the use of prescription opioids while downplaying their risks." Doc. #: 1524 at 1. Early in the MDL, Dr. Portenoy entered into discussions with Plaintiffs regarding ways to resolve the Plaintiffs' claims against him in order to

preserve his "limited resources." *See* Doc. #: 407. The Court finds the following timeline of Plaintiffs' interactions with Dr. Portenoy relevant in making its decision:

- January 29, 2018: Dr. Portenoy executes a proffer agreement with Plaintiffs.

- February 5, 2018: Dr. Portenoy conducts a proffer session with Plaintiffs.

- March 5, 2018: Dr. Portenoy executes a Settlement and Consulting Agreement and Mutual General Release ("Settlement Agreement" or "Agreement") with Plaintiffs.

- April 18, 2018: At the request of MDL Physician Defendants, the Court orders discovery stayed regarding Physician Defendants "based on their ongoing discussions with Plaintiffs." *Id.*

- March 20, 2018: Plaintiffs files a Notice of Dismissal of Dr. Portenoy.[1]

- April 25, 2018: Defendants serve their first set of interrogatories on Plaintiffs.

- July 3, 2018: Defendants serve their second set of requests for production on Plaintiffs.

- August 3, 2018: Dr. Portenoy produces more than 100,000 pages of documents to Plaintiffs.

- September 20, 2018: Plaintiffs produce Dr. Portenoy's documents to Defendants.

- December 14, 2018: Dr. Portenoy executes a 35-page declaration and sends it to Plaintiffs.

- January 9, 2019: Plaintiffs produce Dr. Portenoy's 35-page declaration to Defendants.

- January 18, 2019: Defendants learn about the Settlement Agreement for the first time (not from Plaintiffs, but from Dr. Portenoy's counsel).

- January 21-22, 2019: At the request of Defendants, Special Master Cohen postpones the deposition of Dr. Portenoy and orders production of the Agreement, the Proffer Agreement, and all non-privileged communications between Dr. Portenoy and Plaintiffs.

- January 25, 2019: Plaintiffs produce documents in response to the Special Master's order.

Notably, during the months between when Dr. Portenoy executed the Agreement and when Defendants learned of its existence, Defendants served numerous requests for production and interrogatories on Plaintiffs. Either a response describing the existence of the Settlement Agreement or the Agreement itself would have been responsive to some of these requests and one or the other should have been produced in response to those requests pursuant to Fed. R. Civ. P.

---

[1] Defendants appear to imply that Plaintiffs intentionally filed this dismissal on Cuyahoga County's terminated civil docket rather than its active MDL docket in order to mislead Defendants. However, Defendants do not assert that this filing irregularity caused them to be unaware of Dr. Portenoy's dismissal.

26(a) or (e). Instead, Plaintiffs' responses to these requests and interrogatories either failed to disclose the Agreement or affirmatively denied its existence.

## II.

Rule 37 of the Federal Rules of Civil Procedure states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless.*" Fed. R. Civ. P. 37(c)(1). Courts in this district have held that "[a] failure to timely disclose [a document or witness] is 'substantially justified' if there is a 'reasonable explanation' for the delay." *Lincoln Elec. Co. v. Travelers Cas. & Sur. Co.*, No. 1:11CV2253, 2013 WL 12131876, at *1–2 (N.D. Ohio June 26, 2013) (quoting *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010). In the Sixth Circuit, a failure to disclose is harmless if it "involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (quoting *Vance ex rel. Hammons v. United States*, 182 F.3d 920, at *5 (6th Cir.1999)). "The burden is on the potentially sanctioned party to prove harmlessness." *PNC Equip. Fin. v. Mariani*, No. 18-3324, 2018 WL 6584123, at *4 (6th Cir. Dec. 13, 2018) (citing *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010)). Finally, the Sixth Circuit has adopted a five-factor test to determine whether a parties' failure to disclose is substantially justified or harmless: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe*, 801 F.3d at 747 (quoting and adopting the test from *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)).

III.

Plaintiffs' failure to disclose the existence of their Settlement Agreement with Dr. Portenoy was not substantially justified. Beginning with the fifth *Howe* factor first, Plaintiffs explanation for their failure to timely disclose Dr. Portenoy's Settlement Agreement is that, as the Special Master put it, Plaintiffs' "left hand did not know what the right hand was doing." Doc. #: 1524 at 4. Plaintiffs contend that they have different teams working on different aspects of the litigation, and that "[l]awyers working on affirmative discovery were distinct from lawyers working on defensive discovery responses." Thus, Plaintiffs explain, Dr. Portenoy's Settlement Agreement "was not contained in the files of any of the Plaintiffs municipalities from which document productions were gathered." *Id.* at 4-5. Plaintiffs assert, therefore, that their failure to timely produce the Agreement was an honest oversight, and not intentional malfeasance.

Unfortunately for Plaintiffs, the legal standard is not whether their failure to timely produce the Agreement was intentional or malicious, but rather whether their failure was justified and their explanation for it reasonable. Here, Dr. Portenoy is a key witness for Plaintiffs. He has been described by Plaintiffs as a Purdue spokesperson and as a "critical component of the Marketing Defendants' control over their Front Groups." *See, e.g.,* Summit County SAC, Doc. #: 513 at ¶¶ 406-08. Even without Defendants' interrogatories and requests for production, Plaintiffs knew or should have known that Dr. Portenoy's cooperation "represent[ed] a clear change in circumstances, which defendants had ample reason to explore in discovery." Doc. #: 1524 at 5.

Nothing in the record convinces the Court that Plaintiffs' failure to timely produce the Agreement, although egregious given caliber and sophistication of Plaintiffs' counsel, was more than an honest mistake. However, Plaintiffs' explanation for their delay—essentially, that they were negligent—does not eliminate the need for sanctions.

The Court concludes, however, that the remaining *Howe* factors, which are relevant to determining harmlessness, weigh against excluding Dr. Portenoy's testimony.[2] The Special Master concluded that "[p]roduction of the Agreement only after fact discovery was virtually over was not harmless, as it prevented defendants from 'seeking even the most basic discovery from Dr. Portenoy and gave Plaintiffs unfettered access to him throughout the entirety of the fact discovery period.'" Doc. #: 1524 at 5 (quoting March 22, 2019 Ltr. from M. Cheffo to S.M. Cohen at 3).

Defendants may have been surprised to learn that Dr. Portenoy had, despite Plaintiffs' discovery responses, reached an agreement with Plaintiffs. But the first *Howe* factor concerns "the evidence [that] would be offered" (*i.e.* Dr. Portenoy's testimony). *Howe*, 801 F.3d at 747. Defendants could not reasonably have been surprised at either the substance of Dr. Portenoy's testimony, or his working with Plaintiffs generally. Plaintiffs assert, and Defendants do not refute, that the substance of Dr. Portenoy's anticipated testimony has not changed since public statements Dr. Portenoy made prior to the filing of the *Track One* complaints. *See, e.g.*, Summit County SAC, Doc. #: 513 at ¶¶409-11. Defendants were also aware that Plaintiffs were working with MDL Physician Defendants, including Dr. Portenoy. This cooperation was noted in the "Joint Status Report submitted by Lead and Liaison Counsel for Plaintiffs *and Defendants* before the April 18, 2018 Liaison Counsel Status Conference." Doc. #: 407 (emphasis added). The Court concludes that there could be very little "surprise to [the Defendants] against whom [Dr. Portenoy's testimony] would be offered." *Howe*, 801 F.3d at 747.

Defendants' primary concern with Plaintiffs' untimely disclosure of the Agreement is that they have been deprived of the ability to obtain discovery regarding Dr. Portenoy. The record shows, however, that Defendants received over 100,000 pages of Dr. Portenoy's documents from

---

[2] As stated above, those factors are: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; [and] (4) the importance of the evidence." *Howe*, 801 F.3d at 747

5

Plaintiffs in September 2018 and documents regarding the Settlement Agreement in late January/early February 2019—nine months before the start of the *Track One* trial. Defendants are also concerned that they cannot, now that fact discovery has concluded, go back and ask prior deponents or third parties about their interactions with Dr. Portenoy or the statements he made in his declaration. However, there are still six months before the start of the *Track One* trial. To the extent there is some surprise regarding Dr. Portenoy's testimony, there is still time for Defendants to cure the surprise by taking Dr. Portenoy's deposition, which the Court will allow as described below.[3]

Defendants assert that making them take Dr. Portenoy's testimony now, in the face of the approaching trial date and impending trial deadlines, would improperly divert their attention and energy away from expert discovery and dispositive motion preparation. However, Defendants requested that the Special Master postpone (not cancel) Dr. Portenoy's deposition. This indicates to the Court that Defendants likely anticipated taking, and likely are still prepared to take, Dr. Portenoy's deposition. The Court does not find that allowing Defendants to take a late deposition of Dr. Portenoy will unduly prejudice them or disrupt the trial.[4]

Finally, exclusion is an extreme sanction. The Special Master expressed his reservations when issuing his Ruling.

> The Special Master is hesitant [to exclude Dr. Portenoy's testimony] because "[e]xclusion of evidence is an extreme sanction and should be applied only when lesser sanctions are inadequate." *Zoltek*, 71 Fed. Cl. at 171;[5] *see also Trustee of Michigan Reg'l Council of Carpenters Employee Benefits Fund v. Carpentry Contractors, Inc.*, 203 F.R.D. 247, 253 (E.D. Mich. 2001) ("The extreme sanction of exclusion, however, should only be used where lesser sanctions would be ineffective.") (quoting *Bellinger v. Deere & Co.*, 881 F.Supp. 813, 817 (N.D.N.Y. 1995). Moreover, the Special Master is not entirely comfortable choosing an option

---

[3] Late January/early February represents the approximate close of fact discovery. However, pursuant to various agreements between the parties and rulings by the Special Master, some fact discovery is still ongoing.
[4] The law requires that the burden be on Plaintiffs to show that their error was harmless. *See PNC Equip. Fin.*, 2018 WL 6584123, at *4. That the Court focuses much of its attention explaining how Defendants were not harmed does not represent a shifting of the burden to Defendants, but rather a way to concretely demonstrate the absence of harm.
[5] *Zoltek Corp. v. U.S.*, 71 Fed. Cl. 160, 171 (Cl. Ct. 2006).

> that: (i) keeps evidence from the finder of fact, and (ii) imposes counsel's failures on the Track One plaintiffs (especially to the extent it is Summit County's counsel's failures being imposed on Cuyahoga County). *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 407 (1993) (noting it can "be unfair and inequitable to visit the sins of the lawyer on the client"). Indeed, it is within the realm of reasonableness to instead allow defendants to depose Portenoy and require plaintiffs to pay for all costs associated with that deposition.

Doc. #: 1524 at 6, n.3. Additionally, the Advisory Committee Notes to the 1993 Amendments, which include Rule 37(c)(1), recognize that exclusion is a harsh penalty and explain that "[l]imiting the automatic sanction to violations 'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations." Fed. R. Civ. P. 37, 1993 advisory committee's note. Rule 37 also gives the Court discretion in determining an appropriate sanction. See Fed. R. Civ. P. 37 (c)(1) ("instead of this sanction, the court, on motion and after giving an opportunity to be heard: . . . (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure"). The Court concludes Dr. Portenoy's testimony is too important to the *Track One* trial, and that exclusion of his testimony is too extreme a sanction under these circumstances.

## IV.

Plaintiffs' failure to timely produce Dr. Portenoy's Settlement Agreement was not justified. However, given that the trial is six months away, the harm can be remedied by measures short of excluding Dr. Portenoy's testimony from the trial. Nothing in the record convinces the Court that Plaintiffs failure to produce Dr. Portenoy's Agreement was more than a careless mistake, and Defendants surely knew that Plaintiffs intended to rely on testimony from MDL Physician Defendants, especially Dr. Portenoy, at trial. Defendants were also made aware of the Settlement Agreement within the fact discovery period and were provided non-privileged documents concerning its negotiation shortly thereafter. Defendants can still take Dr. Portenoy's deposition sufficiently before trial to allow them to adequately prepare their defense.

Therefore, the Court concludes that a more appropriate sanction is to allow Defendants to take Dr. Portenoy's deposition at Plaintiffs' counsel's expense. Further, should Defendants deem it necessary, the Court will consider, on a motion by Defendants, allowing a small amount of supplemental discovery and deposition testimony from additional fact witnesses that Defendants sincerely believe could "challenge Dr. Portenoy's specific claims about Defendants' supposedly misleading marketing," "challenge Dr. Portenoy's claims about the studies funded by defendants," or "testify about the use of key opinion leaders to educate patients and prescribers about best practices." Doc. #: 1572 at 10. The Court is sensitive to the fact that a large number of parties need to be represented at these depositions and attorney's fees could easily run into the hundreds of thousands of dollars. Therefore, Plaintiffs' counsel shall pay the reasonable attorney's fees for these additional depositions up to, but not more than, $100,000.

**IT IS SO ORDERED.**

 **/s/ Dan Aaron Polster** *April 26, 2019*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**