**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45090<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 17-OP-45004 | MDL NO. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**OBJECTION TO SPECIAL MASTER'S APRIL 24 RULINGS REGARDING DEFENDANTS' SOMS/ANTI-DIVERSION EXPERT REPORTS AND PLAINTIFFS' UNTIMELY EXPERT REPORTS AND OPINIONS**

Defendants respectfully request that the Court overrule two of the Special Master's April 24, 2019 rulings.  *See* ECF No. 1575.  *First*, the Court should reject the Special Master's arbitrary and unfair limitation on the number of Defendants' SOMS/anti-diversion experts to receive the same three-week extension to file their reports as ***all*** of Plaintiffs' SOMS/anti-diversion experts received.  *Second*, the Court should overrule the Special Master's order refusing to strike Plaintiffs' untimely expert reports and those experts' opinions that rely on underlying materials produced after the deadline.  These rulings were constrained by the untenable schedule in CMO 8, *see* ECF No. 1540 at 2, ECF No. 1560, and serve to deprive Defendants of an adequate opportunity to defend against the novel and untested theories of several of Plaintiffs' experts.[1]

---

[1] *See* ECF No. 1575 at 31:12-15 (Special Master Cohen: "It seems to me that virtually all of what I'm looking at here with all of these experts is caused by these time limitations, and the same thing is going to happen with defendants . . . .").

1.     **The Special Master Unfairly And Prejudicially Limited The Number Of Defendants'
SOMS/Anti-Diversion Experts Entitled To A Reciprocal Three-Week Extension.**

The two Track 1 Plaintiff counties received a three-week extension from the March 25

CMO 8 deadline to submit no more than four SOMS/anti-diversion expert reports.  *See* ECF No.

1559-4.  Special Master Cohen deferred consideration of a "like extension" for Defendants until

after the service of Plaintiffs' SOMS expert reports.  *See id.*  Plaintiffs submitted five reports on

April 15.

At the April 24 hearing, unprompted and without the benefit of any briefing, the Special

Master ordered that not all of the 23 Defendant families in the Track 1 cases will be allowed a

reciprocal three-week extension to submit their SOMS expert reports.  Instead, the Special Master

arbitrarily ordered that the deadline would be extended *for only 10* of all Defendants' SOMS

reports.  ECF No. 1575 at 37.  Not only were Defendants unable to brief this issue before the

Special Master ruled, the Special Master also effectively cut off discussion at the hearing before

Defendants could fully explain the unfairness of his decision.  *See id.* at 38:11-12 ("You can put it

in an objection.  We're moving on.").

As discussed below, the Court has recognized that because Plaintiffs and their experts

claim that the individual SOMS systems of each Defendant are inadequate, each Defendant is

entitled to an expert to address those issues.  Nonetheless, the Special Master's arbitrary limitation

ensures that a majority of the 23 Defendant families will not receive a reciprocal extension for

their individual SOMS/anti-diversion expert reports.  Because the extension granted to Plaintiffs

cut into the time CMO 8 reserved for Defendants to prepare their rebuttal reports, this means that

the majority of Defendants will have less time to prepare SOMS rebuttal reports than CMO 8

provided.  Simply put, while Plaintiffs received *more* time for their SOMS experts, the majority

of Defendants actually will have *less*.  Under CMO 8, Defendants were supposed to have 46 days

to submit their rebuttal reports.  With the Special Master's ruling, the majority of Defendants will now have 25 days—almost half of the time contemplated by CMO 8.  This decision is both arbitrary and one-sided.

In a discussion with the parties on April 23, the Court recognized that the unique nature of the Defendants' SOMS programs—which go to the very "heart" of Plaintiffs' case—means that each of the 23 Defendant families is entitled to its own SOMS/anti-diversion expert.  *See* ECF No. 1573 at 60-61.  The DEA's regulation in this area affords substantial—indeed, nearly total—discretion to each registrant to design and operate its own SOMS program.  Not surprisingly, then, SOMS programs are not cookie-cutter, and each Defendant is entitled to its own expert to evaluate and opine on the details of that Defendant's unique program.  Allowing less than half of the Defendants the benefit of the same extension granted to Plaintiffs, while reducing the time for the remaining Defendants to prepare their reports, is not only unfair, it is also prejudicial.  *See, e.g.*, *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992) ("While the efficient administration of justice is always an important consideration, fundamental fairness to every litigant is an even greater concern.").  This is especially so given that the predicament was caused by additional time granted to Plaintiffs.  To give Plaintiffs more time, but then give most Defendants less, is the portrait of arbitrary and unfair treatment.

The Special Master offered no guidance whatsoever as to how these 10 experts should be selected—effectively leaving 23 Defendant families to sort it out amongst themselves for a resource that the Special Master arbitrarily limited.  Having as much time as Plaintiffs had to prepare SOMS expert reports is equally important to each Defendant.  There is no logic or even "rough" justice in affording that opportunity to only 10 of 23 Defendant families.  Nor did the Special Master consider that at least two depositions of Plaintiffs' SOMS experts will not be

completed until after May 10—again demonstrating the arbitrariness and unfairness of requiring a majority of Defendants' SOMS reports to be filed by that date.[2]

The unworkable CMO 8 deadlines do not excuse the unreasonable and arbitrary nature of the Special Master's ruling.  The unprecedented nature of this case, the novel legal theories asserted by Plaintiffs, and the complicated damages theories offered by Plaintiffs that purport to generate damages unmatched in American jurisprudence compel an order that **all** Defendants receive at least the same three-week extension for their SOMS/anti-diversion experts as Plaintiffs received.

**2.    The Special Master Incorrectly Allowed Plaintiffs' Expert Reports And Opinions Submitted After The CMO 8 Deadline To Survive.**

The rules governing expert disclosures in this MDL are straightforward.  With the exception of the SOMS experts discussed above, it is undisputed that Plaintiffs failed to seek and obtain permission to supplement their expert reports as required by CMO 8, let alone to submit new reports and opinions.  Plaintiffs have not been penalized in any manner for taking these self-help extensions of the already aggressive expert schedule; indeed, the Special Master has condoned these blatant violations of CMO 8, resulting in prejudice to Defendants.  ECF No. 1575 at 37:16-19 ("So the bottom line is, I am not striking any experts, I'm not striking any portions of any experts.  I'm not concluding that any of the opinions that the experts offer can't be offered, or anything else.").

- CMO 8 required Plaintiffs to serve their expert reports by March 25.  ECF No. 1306 at 1. Plaintiffs could serve expert materials after that date only if (i) "new relevant information or facts [came] forward after the expert filing date that would support *a*

---

[2] For example, the deposition of Plaintiffs' SOMS/anti-diversion expert James Rafalski will not occur until May 13-14.  Others are still being scheduled.

4

*request* that a report be amended or supplement[ed]," and (ii) Plaintiffs sought and obtained "***approval of the Special Master or Court.***"  ECF No. 1306 at 1 n.1 (emphases added).

- The September 2018 Order on Discovery in Track One Cases requires that "[e]ach party shall produce, ***at the same time*** it serves the disclosures and other materials required under Fed. R. Civ. P. 26(a)(2) for each of its experts, the 'facts or data considered by the witness in forming' the expert's opinions."  ECF No. 941 at 7 (emphasis added).[3]

- On March 19, 2019, Special Master Cohen partially granted Plaintiffs' request "for an extension of time to complete and serve expert reports ***related solely to the issue of SOMS and anti-diversion compliance*** to two weeks following the completion of the U.S. Drug Enforcement Administration Depositions."  ECF No. 1559-4 (internal quotation marks omitted, emphasis added).  The Special Master ruled that "Plaintiffs may file their expert reports related to the issue of SOMS and anti-diversion compliance -- ***no more than 4 such expert reports*** -- on or before April 15, 2019.  All other expert reports remain due on March 25, 2019."  *Id.* (emphasis added).[4]

The Special Master recognized—and Plaintiffs have conceded—that Plaintiffs did not comply.  *See* Exhibit B at 5 (Plaintiffs admitting that their "production of expert reports has not been flawless"); ECF No. 1575 at 22:16-19 (Special Master noting "that it's clear that there were some reliance materials that were produced after the deadline.  It's clear that there was supplementations

---

[3] *See also* ECF No. 941 at 7 ("Each party must provide the materials required to be produced, including work papers, spreadsheets, data sets, and exhibits, in a usable format to allow evaluation of any analyses performed.").

[4] This was a similarly arbitrary decision by the Special Master because it was expected that the DEA depositions would not be completed by April 15.  The SOMS/anti-diversion reports would therefore inevitably be provisional and would need to be supplemented.  As of the date of this filing, DEA depositions are ongoing.

and amendments that were produced after the deadline."). This non-compliance, exacerbated by the failure to give Defendants reciprocal "extensions" for deposing these experts and for disclosing Defendants' related experts, has unfairly prejudiced Defendants and materially impacted their rights to meaningfully defend themselves.

While the Court has refused to entertain any amendment to the deadlines in CMO 8, *see* ECF No. 1560, the Special Master has now condoned Plaintiffs' failure to comply with those same deadlines. Forcing Defendants to depose witnesses whose reports have been significantly "supplemented" and whose underlying data has been withheld for weeks is fundamentally unfair— particularly in an unprecedented case of this magnitude, where these novel and untested expert opinions are the basis for Plaintiffs' alleged billions in damages. Absent being afforded sufficient time to meaningfully prepare to defend against these experts, there is no question that fairness requires striking Plaintiffs' expert opinions not in compliance with CMO 8, the Order on Discovery, or the Special Master's order regarding SOMS/anti-diversion experts.

For example, Plaintiffs submitted a new report for Craig McCann three weeks after the CMO 8 deadline without seeking or obtaining leave. In his original report submitted on March 25, McCann conducted an analysis based on ARCOS data that focused solely on Distributors. Then, on April 15, Plaintiffs served an entirely new McCann report—this time applying the same exact data to Manufacturers. McCann had all of this data before March 25, as evidenced by the report he submitted that very day. In fact, Plaintiffs even admitted to the Special Master that "[t]he data, methodologies, and analysis are all provided in the March 25th Report: the April 15th report simply explains one more piece of information contained in the already produced data." Exhibit B at 9. So this is not a mere "supplement" as Plaintiffs maintain, as "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on

information that was not available at the time of the initial disclosure." *Antioch Co. Litig. Trust v. McDermott Will & Emery, LLP*, No. 3:09-CV-218, 2016 WL 8257680, at *2 (S.D. Ohio July 15, 2016) (internal quotation marks and citation omitted).

Likewise, although the Special Master granted Plaintiffs leave to serve up to four expert reports related to the issue of SOMS and anti-diversion compliance on April 15, Plaintiffs nonetheless served *five* additional reports that day—including Stephen Schondelmeyer's, which has nothing to do with SOMS and anti-diversion compliance. By his own admission, Schondelmeyer is not a DEA or anti-diversion expert: he purports to be an expert in pharmaceutical economics and public policy. Schondelmeyer was asked to provide his expert opinion on the retail pharmaceutical distribution market and whether the Manufacturer Defendants and Distributor Defendants had access to sufficient information and data by which to assess the alleged oversupply of opioid drugs. He does not consider DEA regulations or enforcement activities, does not discuss data or practices related to anti-diversion issues, and does not rely upon or cite any of the DEA depositions that have been taken to date. His primary focus is on macro-level market data that purportedly allows defendants to make conclusions about the supply of opioid drugs, potentially suspicious orders, and a whole host of other issues that have little to do with SOMS and anti-diversion compliance. Tellingly, a significant portion of Schondelmeyer's opinions address financial incentives in the supply chain—far afield from what Special Master Cohen allowed Plaintiffs to submit three weeks after the expert disclosure deadline. If Plaintiffs wished to rely on Schondelmeyer's opinions, they could and should have disclosed him on March 25 pursuant to the CMO 8 deadline rather than attempting to shoehorn his opinions into the SOMS/anti-diversion bucket where they have no place.

As Exhibit A demonstrates, McCann's April 15 report and Schondelmeyer's report are not isolated examples.  Plaintiffs also submitted "supplemental" reports for experts Caleb Alexander and Jeffrey Liebman weeks after the CMO 8 deadline passed.[5]

Making matters worse, Plaintiffs failed to produce by the March 25 deadline the data and other materials on which numerous experts—McCann, Meredith Rosenthal, Jonathan Gruber, David Cutler, and Nancy Young—relied in forming their opinions.  In some cases, Plaintiffs still have not produced these materials that purport to support their experts' novel and far-reaching causation and damages theories; and even where they ultimately and belatedly provided underlying reliance materials, their delay in doing so has unfairly prejudiced Defendants.  *See* Exhibit A.

Even as Plaintiffs have continued to submit "supplemental" reports and various reliance materials well after the March 25 deadline, Defendants' May 10 expert disclosure deadline has not been extended.  CMO 8 gave Defendants approximately six weeks after disclosure of Plaintiffs' experts to prepare their rebuttal reports.  But by serving numerous new opinions and reliance materials weeks after March 25, Plaintiffs have unilaterally reduced that six-week period and jammed Defendants who are now preparing for and taking depositions of Plaintiffs' experts while simultaneously working with their own experts to prepare their reports.[6]

---

[5] Other than for their SOMS/anti-diversion expert reports, Plaintiffs only once requested approval to file the reports, opinions, and materials after the March 25 deadline—and the Special Master denied the request.  On March 25, Plaintiffs expressed their "belie[f] that it is preferable to not disclose the abatement cost calculations at this time because of its potential impact on settlement negotiations."  ECF No. 1559-3 at 4.  The Special Master concluded that "Plaintiffs should proceed with their expert report addressing abatement cost" to "allow D[efendants] timely to obtain the information they state they want, *pursuant to existing deadlines*."  *Id.* at 3 (emphasis added).  The Special Master then followed up with the parties and emphasized that "plaintiffs should timely ***serve*** upon defendants their expert reports, and those reports ***should*** contain the section(s) involving abatement cost (at least as to Summit and Cuyahoga counties, if not a larger geographic scope)."  *Id.* at 2 (emphases in original).

[6] As of this filing, at least three of Plaintiffs' experts will not be deposed until May 10 or later.  At least three others will not be deposed until the week immediately before May 10.  Defendants continue to believe that the entire expert discovery schedule is unfair and unworkable.  *See* ECF No. 1552.

Instead of holding Plaintiffs to the explicit requirements of CMO 8 and the Order on Discovery, the Special Master authorized their violations.  *See* ECF No. 1575 at 22, 37.  But "litigants have an unflagging duty to comply with clearly communicated case-management orders."  *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998).  Because Plaintiffs have not satisfied this duty, the Court should overrule the Special Master's order and strike the untimely expert reports and any opinions that rely on belatedly produced reliance materials.

\* \* \*

At bottom, the Special Master's rulings funnel to Plaintiffs all of the benefits of the Court's dogged refusal to adjust the Track 1 trial schedule.  The Special Master has arbitrarily decided that less than half of the Defendants will receive the same three-week extension he granted Plaintiffs to submit their SOMS/anti-diversion expert reports—with more than half receiving no extension at all.  And he has sanctioned Plaintiffs' blatant and persistent flouting of their expert disclosure obligations.  Due process and fundamental fairness demand otherwise.

The Court should therefore strike Plaintiffs' untimely expert reports and those experts' opinions which rely on underlying materials produced after the deadline that the Court previously said "will remain in place."  ECF No. 1540 at 2.  The Court should also overrule the Special Master's arbitrary and unfair limitation, and grant all Defendants the same three-week extension that Plaintiffs received for submitting their individual SOMS/anti-diversion expert reports.  And finally, the Court should recognize that the deadlines imposed by CMO 8—including the late 2019 trial date—are unworkable and will require Special Master Cohen and the Court itself to make additional arbitrary and unfair rulings if they continue to be constrained by those deadlines.

Dated:  April 26, 2019                     Respectfully submitted,

/s/ Kaspar J. Stoffelmayr (consent)        /s/ Geoffrey E. Hobart (consent)
Kaspar J. Stoffelmayr                      Geoffrey E. Hobart
BARTLIT BECK LLP                           Mark H. Lynch
54 West Hubbard Street                     COVINGTON & BURLING LLP
Chicago, IL 60654                          One CityCenter
(312) 494-4400                             850 Tenth Street, N.W.
kaspar.stoffelmayr@bartlitbeck.com         Washington, DC 20001
                                           (202) 662-5281
Liaison Counsel for the Chain Pharmacy     ghobart@cov.com
Defendants                                 mlynch@cov.com


                                           Co-Liaison Counsel for the Distributor
                                           Defendants

/s/ Mark S. Cheffo (consent)
Mark S. Cheffo
DECHERT LLP                                /s/ Robert A. Nicholas (consent)
Three Bryant Park                          Robert A. Nicholas
1095 Avenue of the Americas                Shannon E. McClure
New York, NY 10036                         REED SMITH LLP
(212) 698-3500                             Three Logan Square
mark.cheffo@dechert.com                    1717 Arch Street, Suite 3100
                                           Philadelphia, PA 19103
Co-Liaison Counsel for the Manufacturer    (215) 851-8100
Defendants                                 rnicholas@reedsmith.com
                                           smcclure@reedsmith.com


/s/ Carole S. Rendon (consent)             Co-Liaison Counsel for the Distributor
Carole S. Rendon                           Defendants
BAKER & HOSTETLER LLP
Key Tower 127 Public Square, Ste. 2000
Cleveland, OH 44114                         /s/ Enu Mainigi (consent)
(216) 621-0200                             Enu Mainigi
crendon@bakerlaw.com                       WILLIAMS & CONNOLLY LLP
                                           725 Twelfth Street, N.W.
Co-Liaison Counsel for the Manufacturer    Washington, DC 20005
Defendants                                 (202) 434-5000
                                           emainigi@wc.com


                                           Co-Liaison Counsel for the Distributor
                                           Defendants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of April 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

*/s/ Donna M. Welch*
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
