UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*The Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corporation et al.*<br><br>Case No. 18-op-45749 | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

# OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION REGARDING THE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY <u>PHARMACY DEFENDANTS</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.     Plaintiff States No Claims Against Pharmacy Defendants as Retail Pharmacies .............. 2

    II.    Plaintiff Cannot Sue for Derivative, Indirect Economic Losses ...................................... 2

          A.     Plaintiff Lacks Article III Standing ........................................................................ 3

          B.     Plaintiff Cannot Establish Proximate Cause .......................................................... 3

    III.   The Free Public Services Doctrine Bars Plaintiff's Claims ............................................... 5

    IV.   Plaintiff Cannot State an Unjust Enrichment Claim for "Externalities" under Montana State Law .......................................................................................................... 7

    V.    Plaintiff's Civil Conspiracy Claim Is Deficient ................................................................ 8

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aetna Life & Cas. Co. v. Huntington Nat. Bank*,
 934 F.2d 695 (6th Cir. 1991) ...................................................................................................6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................................................2, 9

*Associated Mgmt. Servs., Inc. v. Ruff*,
 424 P.3d 571 (Mont. 2018)...................................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...............................................................................................................2, 9

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
 719 F.2d 322 (9th Cir. 1983) ...........................................................................................5, 6, 7

*City of Miami v. Bank of Am. Corp.*,
 800 F.3d 1262 (11th Cir. 2015) ...............................................................................................6

*City of New Haven v. Purdue Pharma, L.P.*,
 No. X07 HHD CV 17 6086134.................................................................................1, 3, 4, 5

*ClubSpecialists Int'l, LLC v. Keeneland Ass'n, Inc.*,
 No. 5:16-CV-345-KKC, 2018 WL 2050134 (E.D. Ky. May 2, 2018) ......................................6

*Combs v. Int'l Ins. Co.*,
 354 F.3d 568 (6th Cir. 2004) ...................................................................................................7

*Delaware v. Purdue Pharma L.P.*,
 No. N18C-01-223 MMJ CCLD (Del. Super. Ct. Feb. 4, 2019) ...........................................1, 2

*District of Columbia v. Air Florida, Inc.*,
 750 F.2d 1077 (D.C. Cir. 1984) ...............................................................................................6

*Floyd v. Feygin, M.D.*,
 No. 507458/17, 2018 WL 6528728 (Sup. Ct., Kings County Dec. 6, 2018).................1, 4, 5, 8

*Hatch v. State Dep't of Highways*,
 887 P.2d 729 (Mont. 1994)........................................................................................................4

*Kiger v. State*,
 802 P.2d 1248 (Mont. 1990).....................................................................................................4

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)...................................................................................................................3

*Schlesinger v. Reservists Comm. to Stop the War*,
 418 U.S. 208 (1974)...................................................................................................................3

*Simmons Oil Corp. v. Holly Corp.*,
 852 P.2d 523 (Mont. 1993).......................................................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*State Auto Prop. & Cas. Ins. Co. v. Hargis*,
    785 F.3d 189 (6th Cir. 2015) ...................................................................................7, 8

*Sullivan v. Cherewick*,
    391 P.3d 62 (Mont. 2017) ....................................................................................8, 9, 10

*Winston Corp. v. Cont'l Cas. Co.*,
    508 F.2d 1298 (6th Cir. 1975) ..............................................................................6

*Yost v. Morrow*,
    262 F.2d 826 (9th Cir. 1959) ................................................................................6

**OTHER AUTHORITIES**

W. Page Keeton et al.,
    Prosser and Keeton on Law of Torts § 2 (5th ed. 1984) ......................................6

**INTRODUCTION**

Plaintiff seeks to hold Pharmacy Defendants[1] responsible for alleged financial expenditures that, by Plaintiff's own admission, were caused by third parties' abuse of prescription medications, illegitimate prescribing of opioids, pill mill operations, and aggressive marketing practices—none of which are activities attributable to Pharmacy Defendants. As Pharmacy Defendants have previously explained in this case as well as in *Summit County*, Plaintiff's claims are barred by a number of legal doctrines, including standing, proximate cause, and the free public services doctrine.[2] In rejecting these arguments, the Report and Recommendation ("R&R") erred by simply adopting its prior analysis from the *Summit County* case and disregarding critical distinctions in Plaintiff's Complaint and in applicable Montana law.

What is more, since this Court ruled on the *Summit County* motions, at least three other courts have dismissed prescription opioid-related claims nearly identical to the ones Plaintiff alleges here. *See* Order, *Delaware v. Purdue Pharma L.P.,* No. N18C-01-223 MMJ CCLD (Del. Super. Ct. Feb. 4, 2019); Memorandum of Decision Dismissing Cases for Lack of Jurisdiction, *City of New Haven v. Purdue Pharma, L.P.*, No. X07 HHD CV 17 6086134 S (Conn. Sup. Ct. Hartford Jud. Dist. Jan. 8, 2019); *Floyd v. Feygin, M.D.*, No. 507458/17, 2018 WL 6528728, at *16 (Sup. Ct., Kings County Dec. 6, 2018) (as amended). This Court should heed this persuasive trend and dismiss the claims against Pharmacy Defendants because, among other reasons, the allegations are speculative, conclusory, and insufficient to establish standing or proximate cause.

---

[1] "Pharmacy Defendants" are CVS Pharmacy, Inc., CVS Indiana, L.L.C., Walgreen Co., Walgreen Arizona Drug Co., Walmart Inc., Smith's Food & Drug Centers, Inc., Albertson's LLC, and Advantage Logistics Midwest, Inc.

[2] Pharmacy Defendants incorporate by reference the Major Distributors' relevant arguments in their briefs in support of the motion to dismiss and objections to the R&R, in this case and in *Summit County*.

**ARGUMENT**

I.   **Plaintiff States No Claims Against Pharmacy Defendants as Retail Pharmacies.**

The Complaint classifies Pharmacy Defendants as "Distributor Defendants," Compl. ¶ 96, and purports to state claims against them only in their capacity as wholesale distributors, *id.* ¶¶ 474-504, 513-63, 888-1050, 1070-1123.  Accordingly, as it did in *Summit County*, the Court should rule that Pharmacy Defendants may be held liable, if at all, only as distributors and not as retailers.  Opinion and Order at 2, *In re Nat'l Prescription Opiate Litig.*, Case No 1:17-md-2804, ECF No. 1203 (N.D. Ohio Dec. 19, 2018) [*Summit County* Order].

The R&R did not directly address this question, R&R at 31-32, even though Plaintiff disavowed any dispensing-related claims in its answering brief.  *See* Pls.' Br. 68 ("Plaintiff does not allege violations of statutes or regulations applicable specifically to retailers who sell opioids.").  To the extent that Plaintiff may now seek to recant its disavowal and argue that the few vague and scattered references to retail activities in the Complaint actually do constitute dispensing claims, Compl. ¶¶ 494, 541, 591, these assertions are manifestly insufficient.[3]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Indeed, the Delaware court properly dismissed similar claims as "speculative and conclusory." *See* Order at 30, *Delaware,* No. N18C-01-223 MMJ CCLD.

II.   **Plaintiff Cannot Sue for Derivative, Indirect Economic Losses.**

The harms Plaintiff claims to have suffered are, in  Plaintiff's own words, "far-reaching," and are entirely derivative of harms to third parties.  Compl. ¶ 19.  Plaintiff does not claim that it ever purchased opioids from any Pharmacy Defendant.  Instead, Plaintiff claims it incurred indirect financial harm in the form of expenditures related to public health, criminal justice, and other

---

[3] If the Court reads Plaintiff's position to now recant its disavowal and pursue dispensing claims, Pharmacy Defendants request leave to submit further briefing on this issue.

social services provided to the community at large. *See id.* Well-established principles of standing and proximate cause bar such boundless and attenuated theories of recovery, because they "would risk letting everyone sue almost everyone else about pretty much everything that harms us." Memorandum at 3, *New Haven*, No. X07 HHD CV 17 6086134 S.

### A. Plaintiff Lacks Article III Standing.

Most fundamentally, Plaintiff lacks Article III standing. As Pharmacy Defendants previously explained, Plaintiff has not established standing either on the basis of its own proprietary interests or in furtherance of a quasi-sovereign interest for *parens patriae* standing. Pharmacy Defts' Br. 3-4; Pharmacy Defts' Reply 1-2; Pharmacy Defts' *Summit Cty* Br. 4-7; Pharmacy Defts' *Summit Cty* Reply 2-4.

The R&R never addressed these arguments. Rather, it evaluated only the question of statutory standing under RICO or the Montana Consumer Protection Act. *See* R&R 10-11, 42-43. But Article III standing is a separate, constitutional requirement for which Plaintiff must demonstrate an injury that is fairly traceable to Defendants. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). Plaintiff cannot make that showing. When the sole link between its alleged injuries and any particular distributor's conduct is nothing more than baseless conjecture, Plaintiff's grievance is simply not "in a form traditionally capable of judicial resolution." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974); *see* Memorandum at 5, *New Haven*, No. X07 HHD CV 17 6086134 S (concluding that "the indirectly harmed have no 'standing to sue'"). All of Plaintiff's claims against Pharmacy Defendants should be dismissed on this basis alone.

### B. Plaintiff Cannot Establish Proximate Cause.

Even assuming Plaintiff has standing, however, its claims fail because Plaintiff cannot establish proximate cause. The intervening actions of third parties cited in the Complaint—

3

including the abuse of prescription medications, illegitimate prescribing of opioids, and purported pill mill operations, Compl. ¶¶ 2, 6, 16-19, 632, 988—break any causal connection between Pharmacy Defendants' purported reporting requirements and Plaintiff's alleged injuries. *See* Memorandum at 6-12, *New Haven,* No. X07 HHD CV 17 6086134 S. And as the R&R recognized, *see* R&R 4-5, the primary focus of the Complaint is the marketing activities of Manufacturer Defendants—activities that cannot be imputed to Pharmacy Defendants.

Instead of evaluating these pleading failures under Montana law as it should have done, the R&R mechanically applied the reasoning from *Summit County* (which applied *Ohio* law) with respect to causation. The Court should correct this error. Even assuming the RICO claims against other defendants meet that statute's direct harm requirements (a proposition Pharmacy Defendants do not concede), *see Summit County* Order at 8-10, the claims against Pharmacy Defendants do not meet the causation requirements of *Montana* law. The attenuated and indirect harms Plaintiff claims to have suffered are simply not the "natural and continuous" result of Pharmacy Defendants' self-distribution of prescription medications. *Hatch v. State Dep't of Highways*, 887 P.2d 729, 732 (Mont. 1994) (citation omitted). Plaintiff's alleged expenditures on public services are far too removed and disconnected from any conduct attributed to Pharmacy Defendants to sustain these claims, with "too many 'what ifs' that are superseding events." *Kiger v. State*, 802 P.2d 1248, 1251 (Mont. 1990).

The Complaint presents precisely the type of insufficient, attenuated causal chain that two other courts evaluating non-RICO, opioid-related claims have recently rejected as lacking proximate cause. In *Floyd*, a New York court ruled that the "operation of the 'pill mill' was an intervening act" which broke the causal nexus between the defendant's reporting requirement and harm to the plaintiff. 2018 WL 6528728, at *16. That court rejected the plaintiff's argument that

4

drug manufacturers should have foreseen illegal conduct of third parties. *See id.* Similarly, the *New Haven* court dismissed an almost identical suit against drug companies—because it found that no fewer than *nine* links were involved in the causal chain resulting in the City's alleged opioid-related expenses, including the manufacturers who made and then sold the opioids to distributors, the distributors who sold opioids to pharmacies, the doctors who prescribed the opioids, the patients who took them, the patients who became addicted, the black market for illegal pills, the rise of illegal drugs like heroin, and then finally the expenditure of funds on social services. Memorandum at 6-7, *New Haven*, No. X07 HHD CV 17 6086134 S. Not only were the alleged acts too attenuated from the alleged harm, *id*. at 6, but determining how much each defendant would owe to the plaintiff would require the court to engage in "rank speculation" to attempt to overcome the "impossibility of rationally calculating what part of the actual harm alleged—municipal expenses—was legally caused by what defendant," *id*. at 12.

The same is true here. Plaintiff's injuries are, as the *New Haven* court put it, "a long radius and many concentric circles away" from the wrongful conduct alleged. Memorandum at 13, *New Haven*, No. X07 HHD CV 17 6086134 S. All of Plaintiff's claims against Pharmacy Defendants should be dismissed for this reason too.

### III.   The Free Public Services Doctrine Bars Plaintiff's Claims.

Plaintiff's claims are also barred by the free public services doctrine. The Ninth Circuit's ruling in *City of Flagstaff v. Atchinson, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322 (9th Cir. 1983), explains that a government entity may not sue to recover costs that it expends for public services as a result of allegedly tortious conduct. For the reasons previously explained, that principle controls here. *See* Pharmacy Defts' Reply Br. 15-17. This Court should afford deference to the Ninth Circuit's ruling because, although *Flagstaff* applied Arizona law, a federal court may look to the decisions of sister states when, as here, the relevant state court has not spoken on an issue.

5

*See Yost v. Morrow*, 262 F.2d 826, 828 n.3 (9th Cir. 1959) (adopting Oregon law when Idaho law was silent); *see also ClubSpecialists Int'l, LLC v. Keeneland Ass'n, Inc.*, No. 5:16-CV-345-KKC, 2018 WL 2050134, at *3 (E.D. Ky. May 2, 2018) ("[I]n the absence of explicit authority, the Court is "'guided by applicable principles of state law and by relevant decisions of other jurisdictions.'" (quoting *Arms v. State Farm Fire & Cas. Co.*, 731 F.2d 1245, 1249 (6th Cir. 1984))); *Aetna Life & Cas. Co. v. Huntington Nat. Bank*, 934 F.2d 695, 701 (6th Cir. 1991) (looking to other jurisdictions to resolve a question of Ohio state law); *Winston Corp. v. Cont'l Cas. Co.*, 508 F.2d 1298, 1304 (6th Cir. 1975) (ruling that when the courts of the state whose law controls have not spoken, a federal court sitting in diversity must "exercise [its] judgment based upon applicable principles of state law, upon relevant decisions in other jurisdictions, and upon [its] own conceptions of sound and just rules").

The well-reasoned opinion in *Flagstaff* is not the only decision to apply the free public services doctrine in a way that would bar Plaintiff's claims. Indeed, it comports with many other decisions standing for the general proposition that where, as here, state law does expressly authorize the recovery of public services, a federal court should be wary of creating a new state right of recovery. *See, e.g., City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1288–89 (11th Cir. 2015), *vacated and remanded on other grounds sub nom. Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296 (2017) (noting that under Florida law, municipalities cannot recover such expenses absent statutory authority); *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (applying the rule absent clear statutory or judicial recognition of a government entity's right to recover); *see also* W. Page Keeton et al., Prosser and Keeton on Law of Torts § 2, at 7 (5th ed. 1984) (noting that common law barred such suits due to the plaintiff's "political or governmental capacity"). Indeed, the Sixth Circuit holds that plaintiffs must provide an

6

"authoritative signal" to warrant expanding liability under state law. *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015).  Thus, "[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [courts] should choose the narrower and more reasonable path." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (quotation omitted).

The R&R never addressed this issue or the persuasive value of *Flagstaff*.  Instead, the R&R incorporated by rote the Court's earlier reasoning from *Summit County*.  R&R 8.  But this Court's *Summit County* order, like the R&R, focused primarily on RICO and the question whether the plaintiffs engaged in business in the marketplace.  Neither of those things are relevant here, because Pharmacy Defendants are not parties to the RICO claims and Plaintiff's common law claims do not relate to marketplace losses.  Compl. ¶ 19.  Plaintiff's claims are, accordingly, barred by the free public services doctrine absent any authoritative signal from Montana courts to the contrary.  *Hargis*, 785 F.3d at 195.

## IV. Plaintiff Cannot State an Unjust Enrichment Claim for "Externalities" under Montana State Law.

Under Montana law, an unjust enrichment claim requires "(1) a benefit conferred on one party by another; (2) the other's appreciation or knowledge of the benefit; and (3) the other's acceptance or retention of the benefit under circumstances that would render it inequitable for the other to retain the benefit without compensating the first party for the value of the benefit." *Associated Mgmt. Servs., Inc. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018).  Pharmacy Defendants explained that Plaintiff's theory of unjust enrichment—that it was harmed by having to mitigate "societal harms" due to Defendants' "externalities"—does not suffice to establish a claim under Montana state law. Pharmacy Defts' Br. 12-13.  Simply put, Plaintiff has conferred no benefit on Pharmacy Defendants, and its unjust enrichment claim is deficient on its face.

7

Montana law "requires proof that a party unjustly gained something of value," *Ruff*, 424 P.3d at 595, and offers no support for Plaintiff's "negative externalities" theory. Pharmacy Defts' Reply Br. 10. In recommending to the contrary, the R&R ignored *Montana* law and simply adopted the Court's ruling from *Summit County*, where *Ohio* law applied. *See* R&R 40-41. But Plaintiff has not identified any Montana corollary to *White v. Smith & Wesson*, 97 F. Supp. 2d 816 (N.D. Ohio 2000), a Northern District of Ohio case it relied on to establish its broad theory of liability.[4] No support for such a broad interpretation exists under Montana law, and as discussed above, this Court should not expand liability under state law absent an authoritative signal from the state courts. *Hargis*, 785 F.3d at 195.

Because Plaintiff never conferred any benefit on the Pharmacy Defendants and does not allege that it purchased opioids from Pharmacy Defendants or otherwise gave Pharmacy Defendants money or any other thing of value, the unjust enrichment claim fails on the first prong as against Pharmacy Defendants. *See Floyd*, 2018 WL 6528728, at *19 (dismissing unjust enrichment claim where plaintiff did not adequately allege a connection with defendant). The claim also fails on the second and third prongs because there is no allegation that Pharmacy Defendants were aware of any benefit—"externalities" or otherwise—or that they inequitably retained a benefit. The claim should be dismissed.

**V.      Plaintiff's Civil Conspiracy Claim Is Deficient.**

A civil conspiracy claim under Montana law requires "(1) two or more [conspiring] persons …; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Sullivan v. Cherewick*, 391 P.3d 62, 68 (Mont. 2017) (quotation omitted). The R&R, in one short paragraph,

---

[4] Externalities are insufficient under Ohio law as well, as Pharmacy Defendants explained in their Objections to the *Summit County* R&R. Pharmacy Defts' *Summit Cty* Objections 12-14.

8

rejected Pharmacy Defendants' and the Major Distributors' motions to dismiss for the same reasons as in *Summit County*. But that ruling was expressly based on "the statutory public nuisance, Ohio RICO, and injury through criminal acts claims," *Summit County* Order at 21, none of which are at issue here. Plaintiff has not pleaded the "unlawful act" element of conspiracy because it has made no factual assertions that Pharmacy Defendants participated in any marketing of opioids, participated in or lobbied for increased opioids productions quotas, or conspired not to report. At most, the Complaint alleges that the distributors engaged in parallel conduct consisting of routine commercial activities and trade relationships. *Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 530 (Mont. 1993) ("[I]f the object of an alleged 'conspiracy' is lawful, and the means used to attain that object are lawful, there can be no civil action for conspiracy." (quotation omitted)). The Complaint's threadbare allegations are insufficient under *Iqbal* and *Twombly* to establish, as this Court ruled in *Summit County*, a "general conspiratorial objective of expanding the opioid market." *See Summit County* Order at 21-22.

This claim is even more deficient as to Pharmacy Defendants than as to other distributors, because Plaintiff cannot establish that any Pharmacy Defendant conspired to accomplish any unlawful act, or that there was any meeting of the minds in the course of such action. Such meeting of the minds is an essential element of conspiracy under Montana law. *See Sullivan*, 391 P.3d at 68 (finding "meeting of the minds" where defendants "agreed action should be taken to stop" Plaintiff from developing a resort). The Complaint focuses at length on allegations that "Defendants" conducted the alleged conspiracy through their participation in industry groups called the Healthcare Distribution Alliance (HDA) and the Pain Care Forum (PCF), and the R&R accepted these allegations by adopting the *Summit County* analysis. Compl. ¶¶ 517-34, 716-17; R&R 41-42. But Plaintiff has not even alleged that any Pharmacy Defendant (who simply

9

distributed prescription opioids to its own pharmacies, if at all) participated in these organizations, much less explain what that alleged participation supposedly involved. *See* Compl. ¶ 520 & n.205 (alleging that "[e]ach of the Marketing Defendants worked together through the PCF" and that the HDA's members include representatives of the Major Distributors). There are therefore no plausible allegations of a "meeting of the minds" required to plead a conspiracy. *See* Pharmacy Defts' Br. 13. Nor are there plausible allegations of unlawful acts that proximately cause Plaintiff's harm, as discussed in Part II. Moreover, Plaintiff's RICO allegations do not apply to Pharmacy Defendants. *See id.* at 14-15; Pharmacy Defts' Reply 11-12. All that is left, then, is a threadbare recital of the elements of the cause of action, insufficient to plead a conspiracy. *See Sullivan*, 391 P.3d at 68-69 (Mont. 2017). The civil conspiracy claim should be dismissed.

## CONCLUSION

Pharmacy Defendants respectfully object to the Report and Recommendation of the Magistrate Judge on all counts save for Count 3 and for Count 10. The Complaint should be dismissed in its entirety as against Pharmacy Defendants.

Dated:  April 29, 2019

      Respectfully submitted,

/s/     *Tara A. Fumerton*
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*


/s/     *Eric R. Delinsky* (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Pharmacy, Inc. and CVS Indiana, L.L.C.*


/s/     *Kaspar Stoffelmayr* (consent)
Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorneys for Walgreen Co. and Walgreen Arizona Drug Co.*

11

/s/ *Ronda L. Harvey* (consent)
Ronda L. Harvey
Fazal A. Shere
Unaiza Riaz
Bowles Rice LLP
600 Quarrier Street
Charleston, West Virginia 25301
Phone: (304) 347-1701
Fax: (304) 347-1746
E-mail: rharvey@bowlesrice.com

*Attorneys for Smith's Food & Drug Centers, Inc.*

/s/ *Francis A. Citera* (consent)
Francis A. Citera
Gretchen Miller
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Phone: (312) 456-8413
Fax: (312) 899-0320

*Attorneys for Albertson's LLC and Advantage Logistics Midwest, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to Local Rule 7.1(f), I hereby certify that this Court has ordered that length limitations applicable to complex cases apply to this matter, ECF No. 232 at 4 (No. 1:17-MD-2804), and that the foregoing brief complies with the 15-page limit imposed by this Court's October 10, 2018 Order, ECF No. 1032.

/s/   *Tara A. Fumerton*
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2019, this brief was filed electronically on the master docket for this matter.  This Court has ordered that "[e]lectronic case filing of a document, other than an initial pleading, in the master docket shall be deemed to constitute proper service on all parties."  ECF No. 232 at 8 (No. 1:17-MD-2804).

/s/   *Tara A. Fumerton*
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com