UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*The Muscogee (Creek) Nation v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45459-DAP | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**OBJECTIONS TO MAGISTRATE JUDGE'S
<u>APRIL 1, 2019 REPORT AND RECOMMENDATION</u>**

## TABLE OF CONTENTS

**Contents**

| | | |
|---|---|---|
| I. | THE R&R'S RICO ERRORS. | 1 |
| II. | THE R&R'S NUISANCE ERRORS. | 3 |
| | A. Distributors Had No Control Over the Instrumentality of the Nuisance as Defined in the Complaint. | 3 |
| | B. The Nation's Products-Based Nuisance Claim Is Not Viable Under Oklahoma Law. | 7 |
| | C. The Complaint Does Not Allege Interference with a Public Right. | 9 |
| III. | THE R&R'S NEGLIGENCE ERRORS. | 10 |
| IV. | THE R&R'S UNJUST ENRICHMENT ERRORS. | 12 |
| V. | THE R&R'S CONSPIRACY ERRORS. | 13 |
| CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bishop v. Lucent Techs., Inc.*, 520 F.3d 516 (6th Cir. 2008) ..........................................................13

*Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013 (10th Cir. 2007).............................3, 5

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536 (3d Cir. 2001)..................................................................................................................8

*City of Manchester v. Nat'l Gypsum Co.*, 637 F. Supp. 646 (D.R.I. 1986) ................................5, 6

*City of Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp. 2d 882 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002) ..............................................................................8, 9

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)....................................................................7, 8

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992) .....................................................................1

*In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711 (E.D. Mo. 2019) .........................................5

*Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556 (6th Cir. 2013) (en banc) .....................2

*Smith v. United States*, 508 U.S. 223 (1993) .................................................................................11

*State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189 (6th Cir. 2015) ...................................13

*Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126 (D.N.H. 1984) ....................................................................................................................................6

*United States ex rel. Sanders v. Allison Engine Co.*, 471 F.3d 610 (6th Cir. 2006), *vacated and remanded on other grounds*, 553 U.S. 662 (2008)................................3

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000) .........................................2, 3

## STATE CASES

*Champlin Ref. Co. v. Dugan*, 270 P. 559 (Okla. 1928) ...................................................................7

*City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004).......................................8, 9

*Delbrel v. Doenges Bros. Ford*, 913 P.2d 1318 (Okla. 1996) .......................................................11

*Estate of Doyle v. Sprint/Nextel Corp.*, 248 P.3d 947 (Okla. Ct. App. 2010) ...............................11

*Fairlawn Cemetery Ass'n v. First Presbyterian Church, U.S.A.*, 496 P.2d 1185 (Okla. 1972) ..........................................................................................................................7

*Hummel v. State*, 99 P.2d 913 (Okla. Crim. App. 1940) .................................................................7

*In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007) ........................................................................6

*James v. Arms Tech., Inc.*, 820 A.2d 27 (N.J. Super Ct. App. Div. 2003) .....................................6

*King v. State*, 109 P.2d 836 (Okla. 1941) ......................................................................................7

*Lockhart v. Loosen*, 943 P.2d 1074 (Okla. 1997) ........................................................................12

*Lowery v. Echostar Satellite Corp.*, 160 P.3d 959 (Okla. 2007) ..................................................10

*Nicholas v. Mid-Continent Pipe Line Co.*, 933 P.2d 272 (Okla. 1996) .........................................7

*State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382 (Del. Sup. Ct.
    Feb. 4, 2019) .........................................................................................................................7, 10

*State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428 (R.I. 2008) ..............................................5, 6, 9, 10

*Territory v. Long Bell Lumber Co.*, 99 P. 911 (Okla. 1908) ..........................................................7

*Tucker v. Lam*, 313 P.3d 1011 (Okla. Ct. App. 2013) .................................................................11

## OTHER AUTHORITIES

18 U.S.C. § 1964(c) ........................................................................................................................2

David Kairys, *The Governmental Handgun Cases and the Elements and
    Underlying Policies of Public Nuisance Law*, 32 Conn. L. Rev. 1175 (2000) .........................6

Okla. Stat. Title 76, § 57.2(E) .......................................................................................................12

Okla. Stat. Title 76, § 57.2(G) ................................................................................................11, 12

Restatement 2d of Torts § 821B .....................................................................................................9

Restatement 2d of Torts § 821B cmt. g ..........................................................................................9

Distributors submit the following Objections to Magistrate Judge Ruiz's April 1, 2019 Report and Recommendation ("R&R").  The R&R erred in denying, in part, Distributors' motion to dismiss the Nation's claims.  With regard to the Nation's RICO, negligence, unjust enrichment, and civil conspiracy claims, the R&R repeats errors made in the Summit County R&R and adopted by the Court.  The R&R also makes new errors with respect to the RICO, nuisance, and negligence claims.  Accordingly, the Court should overrule the R&R and dismiss in their entirety the Nation's claims against Distributors.[1]

## I. THE R&R'S RICO ERRORS.

The R&R (at 9–11) erred in concluding that the Nation properly pled a RICO claim against Distributors.

The Nation failed to allege a *direct* causal connection between its claimed injury and Distributors' purported predicate acts, as Supreme Court precedent requires.  *E.g.*, *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 271 (1992).  Numerous actors and events—including in every case the intervening, criminal conduct of a third party—stand between Distributors' alleged conduct and the Nation's purported injury.  The Nation's remote and derivative injuries thus are insufficient as a matter of blackletter RICO law.  *See* Blackfeet Br., Dkt. 924 at 3–4; Blackfeet Reply, Dkt. 1084 at 1–8; Summit Br., Dkt. 491-1 at Part I.B; Summit Reply, Dkt. 744 at Part I.B; Summit Obj., Dkt. 1079 at Part III.A.

The Nation also fails to allege that it suffered an injury to its "business or property," as RICO requires.  As an initial matter, its claimed injuries all flow from the personal injuries of its citizens and thus are barred by settled Sixth Circuit precedent.  *E.g.*, *Jackson v. Sedgwick Claims*

---

[1] Distributors adopt, as if set forth fully herein, the Objections submitted today by the Manufacturer and Pharmacy Defendants in this matter.  All emphasis herein is added, unless noted.

1

*Mgmt. Servs.*, 731 F.3d 556, 566 (6th Cir. 2013) (en banc); *see* Blackfeet Br., Dkt. 924 at 4–6; Blackfeet Reply, Dkt. 1084 at 8–11; Summit Obj., Dkt. 1079 at Part II.A.  Moreover, the injuries sustained by the Nation in performing governmental functions or to vindicate its sovereign or quasi-sovereign interests do not constitute injuries to business or property under RICO.  *See* Blackfeet Br., Dkt. 924 at 6–8; Blackfeet Reply, Dkt. 1084 at 11–13; Summit Obj., Dkt. 1079 at Part II.B–C.

The Nation's RICO claims also fail for multiple additional reasons.  First, the Nation failed to allege that Distributors committed RICO predicate acts.  *See* Br. 3–4; Reply 3–4; Blackfeet Br., Dkt. 924 at 8–12; Blackfeet Reply, Dkt. 1084 at 13–15; Summit Br., Dkt. 491-1 at Part I.C; Summit Reply, Dkt. 744 at Part I.C.  Second, the Nation failed to allege that Distributors participated in—let alone played a part in directing the affairs of—a valid RICO enterprise.  *See* Blackfeet Br., Dkt. 924 at 12–13; Blackfeet Reply, Dkt. 1084 at 15–16; Summit Br., Dkt. 491-1 at Part I.D; Summit Reply, Dkt. 744 at Part I.D.

Finally, the Nation is not a "person" with RICO standing to vindicate its sovereign interests—an issue not presented in the *Summit County* case.  *See* 18 U.S.C. § 1964(c) (limiting standing to a "person injured in his business or property").  The Nation fails to point to any "affirmative showing of statutory intent" that overcomes the "longstanding interpretive presumption that 'person' does not include [a] sovereign." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780–81 (2000); Blackfeet Br., Dkt. 924 at 6, 8; Blackfeet Reply, Dkt. 1084 at 8–9.  The R&R finds that the word "person" should be read broadly "to effectuate [RICO's] remedial purposes," R&R at 22, but this reasoning collides directly with *Vermont Agency*.  There, the Supreme Court interpreted "person" in the False Claims Act to exclude sovereign states, 529 U.S. at 787–88, notwithstanding that "[t]he Supreme Court has consistently reaffirmed that the

2

FCA is a remedial statute and should be construed broadly," *United States ex rel. Sanders v. Allison Engine Co.*, 471 F.3d 610, 618 (6th Cir. 2006), *vacated and remanded on other grounds*, 553 U.S. 662 (2008). As with the FCA, there is "nothing" in RICO's text and history "to overcome the presumption that [sovereigns] are not covered" by the term "person." *Vt. Agency*, 529 U.S. at 782.

## II. THE R&R'S NUISANCE ERRORS.

### A. Distributors Had No Control Over the Instrumentality of the Nuisance as Defined in the Complaint.

The R&R accepts that, under Oklahoma law, a defendant is liable for a nuisance only if it exercised control over the instrumentality of the nuisance at the time it causes harm. *See* R&R 57 (citing *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1026 (10th Cir. 2007)); *see also* Opp. 86 (conceding that control is an element of a nuisance claim). The R&R nevertheless rejects Defendants' arguments for dismissal, claiming that they rested "upon a false premise that the instrumentality of the nuisance is the opioid medication." R&R 57. Instead, the R&R re-defines the instrumentality of the nuisance as Defendants' "creation and fueling of the illicit market." *Id.*

1. This conclusion is at odds with what the Complaint alleges. It repeatedly describes opioids as the instrumentality of the nuisance, alleging (however cursorily) that Distributors had control over the drugs themselves. *See* Compl. ¶ 455 ("[E]ach Diversion Defendant has permitted ***dangerous drugs under their control*** to be diverted for illicit purposes such as to injure the Nation and its citizens."); *id.* ¶ 456 ("Diversion Defendants have marketed and sold ***prescription opioids*** in a manner contrary to law … [thus] interfer[ing] with a right common to the general public."); *id.* ¶ 459 ("At all times, Diversion Defendants had the obligation and the ability to ***control*** the sale, distribution, or dispensing ***of prescription opioids*** in the Nation."); *id.* ("Diversion Manufacturer Defendants and Distributor Defendants had the power to shut off the illicit supply of name-brand ***prescription opioids*** and their generic equivalents into the Nation ….").

3

The Complaint quite logically pleads that the opioid medications themselves are the instrumentality of the "high rates of addiction [and] overdoses," as well as "increased crime and property damage," that are the nuisance. Compl. ¶ 457; *see also id.* ¶ 15 (referring to "an epidemic of prescription drug abuse"); *id.* ¶ 286 (alleging that the Nation's injury flows from shouldering the costs of its citizens' opioid-related "addiction, overdoses, and death"); *id.* ¶ 294 (defining "addiction-related problems" to include "child neglect, family dysfunction, babies born addicted to opioids, criminal behavior, poverty, property damage, unemployment, and social despair"). It is not the existence of an "illicit market" that allegedly has caused the Nation "to provide and pay for additional costs to the healthcare, social services, welfare or educational systems." Compl. ¶ 282. The Nation provides healthcare and social services to its citizens not because of the existence of an "illegal market" but because of their use and abuse of opioid pills. Because it is the increased rate of addiction and overdoses that has generated increased public costs, it is unquestionably the drugs that are the instrumentality of the alleged nuisance.

2. The R&R's analysis also goes off course because the Nation does not allege that Distributors directly supplied any "illicit market." The Nation concedes that Distributors supplied opioids only to DEA-registered, state-licensed pharmacies. Compl. ¶ 487. Thus, even taking the Nation's allegations that Distributors shipped too many pills to those pharmacies as true, that conduct cannot be the instrumentality of "high rates of addiction, overdoses, and dysfunction within the Nation." No matter how many opioid pills the pharmacies ordered and Distributors shipped, the pills remained on the shelf, causing harm to no one until a doctor mis-prescribed them and/or a patient abused them. It should go without saying that these FDA-approved medications do not inherently or automatically injure anyone who comes in contact with, sells, or purchases them; they do so only when they are mis-prescribed and/or misused, resulting in "addiction,

4

overdose[], [or] death." Compl. ¶¶ 275, 286.² The "instrumentality" of that harm therefore can only be the opioids themselves at the time they are consumed. But the Complaint does not allege that Distributors had control over the medications at the time they were consumed, nor could it.

3. Even if the alleged instrumentality of the nuisance were the "creation and fueling of the illicit market" for opioids, R&R 57, the Nation has pled no facts suggesting that Distributors "directed, sanctioned, or actively participated or cooperated in" that illicit market, as they would have to do to satisfy the control element. *Grant*, 505 F.3d at 1026. The Complaint does not allege that Distributors singlehandedly "creat[ed] and fuel[ed]" the illegal market—nor could it, given that Distributors are not even alleged to *participate* in the illegal market directly. Instead, the Complaint alleges that Distributors supplied opioids to pharmacies, which then dispensed opioids to consumers, including the Nation's citizens. Compl. ¶ 487; *see also* Opp. 86 ("Distributors' and Pharmacies' actions and omissions that occurred (or did not occur) when they were in control of the opioid drug, ***prior to the sale of drugs to individual users that resulted in an illegal market for opioids*** … created a nuisance."). What consumers do with the opioids after they are dispensed—including selling them in an illegal market—is well beyond Distributors' control. Furthermore, Distributors certainly do not have the power to "abate" an illicit market for opioids— an essential aspect of the control requirement. *See State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 449 (R.I. 2008) ("The party in control of the instrumentality causing the alleged nuisance is best positioned to abate it and, therefore, is legally responsible.").³

---

² Similarly, the existence of a market for lead paint does not automatically give rise to a lead poisoning problem; harm only arises once landlords, "who are in control of the lead pigment at the time it becomes hazardous," fail to take precautionary measures to ensure their premises are lead-safe. *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 457 (R.I. 2008).

³ *See also In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 729 (E.D. Mo. 2019) ("This rule is all the more sensible when viewed in the context that no injunctive relief is available to abate a nuisance if the defendant has no control."); *City of Manchester v. Nat'l Gypsum Co.*,

5

The R&R cites a New Jersey trial court decision in support of the argument that the "instrumentality" of a nuisance can be the "creation and supply of [an] illegal … market." R&R 57 (quoting *James v. Arms Tech., Inc.*, 820 A.2d 27, 52 (N.J. Super Ct. App. Div. 2003)).  But *James* is not good law, even in New Jersey.  The New Jersey Supreme Court abrogated—or, at a minimum, seriously called into question—*James*' reasoning and holding in *In Lead Paint Litigation*, 924 A.2d 484, 501 (2007), which held that a public nuisance theory must have a "link to the conduct of an actor, generally in a particular location" and rejected plaintiffs' attempt to "separate conduct and location and thus eliminate entirely the concept of control of the nuisance." In any case, *James* rested on the notion that under New Jersey law, unlike Oklahoma law, "'[t]here ***is no requirement*** that a defendant have the kind of control defendants suggest—actual control over the instrumentality of the nuisance at the time and place it does harm.'" *James*, 820 A.2d at 52 (quoting David Kairys, *The Governmental Handgun Cases and the Elements and Underlying Policies of Public Nuisance Law*, 32 Conn. L. Rev. 1175, 1185 (2000)).  Here, in contrast, no one disputes that control is a necessary element of the Nation's nuisance claim.  R&R 57; Opp. 85–86. And the Complaint does not adequately allege that this requirement is satisfied, because Distributors have no control over ***either*** opioids at the time they are ingested ***or*** the "creation and fueling of the illicit market," R&R 57, after opioids are legally dispensed from pharmacies.

---

637 F. Supp. 646, 656 (D.R.I. 1986) (finding control element lacking where defendants "no longer had the power to abate the nuisance"); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126, 133 (D.N.H. 1984) (similar).

6

### B. The Nation's Products-Based Nuisance Claim Is Not Viable Under Oklahoma Law.

The R&R incorrectly concluded that the Nation's nuisance claim can proceed under Oklahoma law even though it does not allege a connection to property. R&R 51–57. The R&R's conclusion is inconsistent with Oklahoma law, which limits nuisance to land-based claims.

First, the R&R disregards the constraint imposed on federal courts by the *Erie* doctrine when it concludes, based on its own reading of Oklahoma's nuisance statute and ignoring Oklahoma case law, that "the Oklahoma Supreme Court would likely recognize Plaintiff's public nuisance claims, not as imprudent substantive expansions of the law, but as stating viable theories of recovery." R&R 55. The Oklahoma nuisance statute has been on the books, unchanged in any material respect, since 1890, and for the past 128 years, Oklahoma courts have read that statute consistently with traditional common law principles that limit nuisance to harmful uses of property. *E.g.*, *Nicholas v. Mid-Continent Pipe Line Co.*, 933 P.2d 272, 276 (Okla. 1996); *Champlin Ref. Co. v. Dugan*, 270 P. 559, 560–61 (Okla. 1928). Indeed, the Oklahoma Supreme Court has held that "[a] nuisance, public or private, arises where a person ***uses his own property*** in such a manner as to cause injury to the ***property of another***." *Fairlawn Cemetery Ass'n v. First Presbyterian Church, U.S.A.*, 496 P.2d 1185, 1187 (Okla. 1972); *see also Territory v. Long Bell Lumber Co.*, 99 P. 911, 919 (Okla. 1908); *King v. State*, 109 P.2d 836, 838 (Okla. 1941); *Hummel v. State*, 99 P.2d 913, 917 (Okla. Crim. App. 1940). Oklahoma law is thus in line with the "clear national trend to limit public nuisance to land use." *State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382, at *12 (Del. Sup. Ct. Feb. 4, 2019) (granting motion to dismiss opioids-related nuisance claims similar to those at issue here); *see generally* Dkt. 1404. Rather than faithfully applying this precedent, as this Court is required to do under *Erie Railroad Co. v. Tompkins*, 304

7

U.S. 64 (1938), the Magistrate Judge ignored it and instead substituted his own incorrect reading of the Oklahoma nuisance statute.

Second, the R&R incorrectly concluded that case law refusing to recognize public nuisance liability based on the distribution of lawful products is inapplicable here because in this case, "the claimed nuisance is the alleged consequence of the Defendants' conduct and not the opioids product itself." R&R 57.  But that is no real distinction, because the plaintiffs in the cited cases also argued that the nuisance was the alleged consequence of the defendants' conduct. *See, e.g.*, *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 538 (3d Cir. 2001) ("The Camden County Board of Chosen Freeholders … contends that handgun manufacturers, ***because of their marketing and distribution policies and practices***, are liable under a public nuisance theory for the governmental costs associated with the criminal use of handguns in Camden County."); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1117 (Ill. 2004) (complaint "allege[d] that ***defendants' 'conduct in designing, marketing, distributing, and selling*** firearms to Chicago residents or to persons whom defendants know will cause those firearms to end up in Chicago'" created public nuisance).  Nearly every products liability case is about the defendants' conduct relating to the product—failure to warn, marketing for off-label uses, failure to safely design the product—and the R&R's false "conduct versus product" distinction is meaningless.

The R&R's conclusion also is flawed for the same reasons described above.  The instrumentality of the nuisance cannot be Distributors' conduct, which is not independently harmful.  Instead, the alleged nuisance is caused by opioid medications at the time they are misused—just as the alleged nuisances in the cases cited in the R&R were the products themselves. *See, e.g.*, *City of Chicago*, 821 N.E.2d at 1116; *Lead Indus.*, 951 A.2d at 449–50, 56; *City of*

8

*Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp. 2d 882, 910–911 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002).

### C. The Complaint Does Not Allege Interference with a Public Right.

The Nation identified six "rights" with which it alleges Distributors interfered. R&R 58–59 (citing Compl. ¶¶ 421, 453). The R&R did not analyze whether those purported rights are truly "public rights" within the meaning of Restatement (Second) of Torts § 821B, but appeared to reason that a right enjoyed by everyone is a "public right"—precisely what § 821B says it is not. R&R 60–61 ("These allegations sufficiently plead a right commonly held by Plaintiff's citizens to be free from a crisis of epidemic proportions that interferes with a general common right to public health, safety, and welfare."). That was error. Everyone has a right not to be negligently injured, or not to be defamed, but the Restatement is explicit that those rights are not "public rights" for purposes of recognizing a public nuisance claim. *See* Restatement 2d of Torts § 821B cmt. g (1979) (defining a public right as "one common to all members of the general public," "collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured").

The R&R cites no Oklahoma cases that establish that there is a public right "to be free from a crisis of epidemic proportions," nor does it contend with persuasive authority from other jurisdictions holding that "public health" and "public right" are not synonymous. For example, the R&R does not address, much less distinguish, perhaps the most carefully considered judicial discussion of "public right"—the Rhode Island Supreme Court's decision in *State v. Lead Industries Association, Inc.*, 951 A.2d 428 (R.I. 2008). The Court explained there that "[t]he manufacture and distribution of products rarely, if ever, causes a violation of a public right as that term has been understood in the law of public nuisance. Products generally are purchased and used by individual consumers, and any harm they cause—***even if the use of the product is***

9

*widespread and the manufacturer's or distributor's conduct is unreasonable*—is not an actionable violation of a public right." *Lead Indus.*, 951 A.2d at 448. The R&R references *Lead Industries*, which is a 30-page treatise on the evolution and contours of public nuisance law, but makes no attempt to show why its reasoning does not apply to the Nation's claims.

And although the R&R states that "the right to public health as alleged in the complaint has been recognized" by two courts "addressing the issue in the context of opioid litigation," R&R 60,[4] the Magistrate Judge ignored the holding by the Delaware Superior Court that the State of Delaware—which alleged violation of the same six "rights" as the Nation—had not alleged interference with a public right. *See State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382, at *12 (Del. Sup. Ct. Feb. 4, 2019).

## III. THE R&R'S NEGLIGENCE ERRORS.

The R&R (at 62–65) erred in concluding that the Nation properly pled negligence claims against Distributors. *See* Summit Obj., Dkt. 1079 at Part V.

First, the R&R erred in concluding that the Nation properly pled that Distributors owe it a duty. Neither the federal CSA nor its Oklahoma analog can be the source of a duty running from Distributors to the Nation because neither includes a private right of action. In the absence of such a private right of action, a viable negligence claim requires an underlying common-law duty, and the Nation has pled, and can plead, no such duty. The Nation failed to plead harm that was "foreseeable" to distributors, *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007), and, even if Distributors have a duty to report or halt suspicious opioid orders, that duty does not

---

[4] The New York and West Virginia trial court opinions do not constitute persuasive authority. The West Virginia court simply signed the proposed order drafted by the plaintiff, and the New York court offered no analysis and cited no law supporting its holding. As the R&R notes, the court said in only one conclusory sentence that defendants had not established why public health is not a public right. R&R 60.

10

run to the Nation. There is no relationship between Distributors and the Nation that would give rise to such a duty. *Delbrel v. Doenges Bros. Ford*, 913 P.2d 1318, 1320–21 (Okla. 1996); *Estate of Doyle v. Sprint/Nextel Corp.*, 248 P.3d 947, 950–51 (Okla. Ct. App. 2010). Finally, in the absence of any "special relationship"—and none is alleged—Distributors have no duty to control the conduct of third parties responsible for the diversion of opioids when the medications were not within Distributors' control. *See, e.g.*, *Tucker v. Lam*, 313 P.3d 1011, 1014 (Okla. Ct. App. 2013).

Second, the R&R erred in rejecting Distributors' argument that the Oklahoma "Innocent Seller" statute bars the Nation's negligence claims. R&R 63–64. As the R&R explained, the Innocent Seller statute provides that "a product seller other than a manufacturer is liable to a claimant on the basis of negligence if the claimant establishes that … the product seller did not exercise reasonable care … in assembling, inspecting or maintaining such product, or … in passing on warnings or instructions from such product's manufacturer about the dangers and proper use of such product …." Okla. Stat. tit. 76, § 57.2(G) (internal punctuation omitted). The R&R did not dispute that there is no allegation that Distributors failed to "exercise reasonable care in assembling, inspecting or maintaining" opioid medications or in "passing on warnings" from opioids manufacturers about the products' use. Instead, the R&R concluded that Distributors did not cite Oklahoma law "demonstrating that this statute displaces all common law negligence claims." R&R 65.

It is a basic rule of statutory construction that a statute should be construed in accord with its ordinary or natural meaning. *Smith v. United States*, 508 U.S. 223, 228 (1993). The R&R's conclusion ran afoul of this rule. In clear language, the statute limits the circumstances under which a non-manufacturing seller can be liable in negligence. Any other interpretation would render the statute meaningless. The R&R also stated that Distributors had not cited Oklahoma law

11

applying this statutory provision outside of the product liability context.  R&R at 65.  To the contrary, as Distributors have explained, a discrete subsection of the statute addresses "products liability action[s]," Okla. Stat. tit. 76, § 57.2(E), and the "innocent seller" provisions are not included within the "products liability" subsection.  *See* Reply at 9.  In sum, by its clear terms, Okla. Stat. tit. 76, § 57.2(G) bars the Nation's negligence claims, and the R&R erred in concluding otherwise.

Third, the Nation has not satisfied, and cannot satisfy, the elements of negligence *per se*. *See, e.g.*, *Lockhart v. Loosen*, 943 P.2d 1074, 1078 (Okla. 1997).  The Complaint does not and cannot allege that the federal and Oklahoma CSAs or their implementing regulations were intended to protect Indian Nations from spending more on addiction-related public services when rates of addiction increase.  *See* Br. 11–13 & n.10; Reply 11–12.  Moreover, the Nation has not adequately pled that Distributors' conduct, including the alleged violation of any statute or regulation, proximately caused injury to the Nation.

Finally, the R&R erred in concluding that the Nation has adequately pled that the Distributors breached any duty to report and halt suspicious opioid orders.  R&R 63 n.42.  The Complaint does not identify any pharmacy that placed excessive orders, and it does not identify any specific order that Distributors should have reviewed or refused to fill, let alone tie any such order to the Nation's alleged injuries.

**IV.     THE R&R'S UNJUST ENRICHMENT ERRORS.**

The R&R (at 67–68) erred in concluding that the Nation properly pled an unjust enrichment claim against Distributors.

There is no basis under Oklahoma law to hold that the Nation's alleged payments for Distributors' "externalities," Compl. ¶ 482, give rise to a claim for unjust enrichment.  *See* Br. 24; Reply 23–25.  The R&R did not conclude otherwise, but instead upheld the unjust enrichment

12

claim in the absence of "Oklahoma authority indicating that the courts of Oklahoma would reject this theory."  R&R 68.  This was error:  "to survive a motion to dismiss, the complaint must contain" sufficient allegations "to sustain a recovery under *some viable legal theory*" under Oklahoma law.  *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).  "Without some authoritative signal from the state's legislature or judiciary … federal courts in diversity cases should be extremely cautious about adopting substantive innovation in state law." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015).

The unjust enrichment claim also suffers from several further defects requiring dismissal.  First, the unjust enrichment claim is derivative of the Nation's other claims and therefore fails for the same reasons they do.  Br. 23; Reply 25.  Second, the Complaint failed to allege sufficiently that the Nation conferred any benefit upon Distributors.  *See* Br. 23–24; Reply 24.  Finally, the Nation failed to plead inequitable circumstances.  *See* Br. 24; Reply 24–25.  For all these reasons, the R&R erred in failing to recommend dismissal of the unjust enrichment claim.

## V. THE R&R'S CONSPIRACY ERRORS.

The R&R (at 69–70) erred in concluding that the Nation properly pled a civil conspiracy involving Distributors.  First, the Nation failed to allege that Distributors entered into a conspiratorial agreement.  *See* Br. 25–26; Reply 21–23; *see also* Summit Objections, Dkt. 1079 at Part I.  Second, the Nation failed adequately to allege that Distributors performed underlying unlawful acts under Oklahoma law.  *See* Br. 25–26; Reply 21–23; *see also* Summit Objections, Dkt. 1079 at Part I.

## CONCLUSION

For the reasons herein and the reasons given in Distributors' motion to dismiss the Nation's claims, the Court should overrule the Magistrate Judge's R&R with respect to the RICO, nuisance,

negligence, unjust enrichment, and civil conspiracy claims and dismiss each of those claims with prejudice.

Dated: April 29, 2019 Respectfully submitted,

| | |
|---|---|
| */s/ Robert A. Nicholas* <br> Robert A. Nicholas <br> Shannon E. McClure <br> **REED SMITH LLP** <br> Three Logan Square <br> 1717 Arch Street, Suite 3100 <br> Philadelphia, PA 19103 <br> Tel: (215) 851-8100 <br> Fax: (215) 851-1420 <br> rnicholas@reedsmith.com <br> smcclure@reedsmith.com <br><br> *Counsel for AmerisourceBergen Corporation[5] and AmerisourceBergen Drug Corporation* <br><br> */s/ Geoffrey Hobart* <br> Geoffrey E. Hobart <br> Mark H. Lynch <br> Christian J. Pistilli <br> **COVINGTON & BURLING LLP** <br> One CityCenter <br> 850 Tenth Street N.W. <br> Washington, DC 20001 <br> Tel: (202) 662-5281 <br> ghobart@cov.com <br> mlynch@cov.com <br> cpistilli@cov.com <br><br> *Counsel for McKesson Corporation* | */s/ Enu Mainigi* <br> Enu Mainigi <br> F. Lane Heard III <br> Steven M. Pyser <br> Ashley W. Hardin <br> **WILLIAMS & CONNOLLY LLP** <br> 725 Twelfth Street, NW <br> Washington, DC 20005 <br> Tel: (202) 434-5000 <br> Fax: (202) 434-5029 <br> EMainigi@wc.com <br> lheard@wc.com <br> spyser@wc.com <br> ahardin@wc.com <br><br> *Counsel for Cardinal Health, Inc. and Cardinal Health 110, LLC* |

---

[5] By filing this Motion, AmerisourceBergen Corporation does not concede that it is a proper party to this action.

14

**LOCAL RULE 7.1(F) CERTIFICATION**

I, Ashley W. Hardin, hereby certify that this brief conforms to the page limitations set forth in the Magistrate Judge's Report and Recommendation, Dkt. 1499, which set a limit of 15 pages for objections.

                                                          */s/ Ashley W. Hardin*
                                                          Ashley W. Hardin

**CERTIFICATE OF SERVICE**

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

                                                          */s/ Ashley W. Hardin*
                                                          Ashley W. Hardin