# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>*The Muscogee (Creek) Nation v. Purdue Pharma L.P., et al.*, Case No. 18-op-45459 | **MDL No. 2804**<br><br>**Case No. 17-MD-2804**<br><br>**Judge Dan Aaron Polster** |

**OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION REGARDING THE MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS CAREFIRST PHARMACY, CITY DRUG, CITYPLEX PHARMACY, COUCH PHARMACY, CVS, ECONOMY PHARMACY, ERNIE'S PHARMACY, FREELAND BROWN PHARMACY, GADDY DISCOUNT DRUG, M&D STAR DRUG, MED-ECON DRUG, OLYMPIA PHARMACY, OMNICARE, PIPPENGER PHARMACIES, REASOR'S, ROGERS DRUG CO., SPOON DRUGS, WALGREENS, AND WALMART**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I.     Oklahoma Law Forecloses All State Law Claims Against the Pharmacy Defendants as Dispensing Pharmacies Because Plaintiff Has Not Alleged Facts to Support the Conclusion That Any Filled Prescription Was Facially Unreasonable. .......... 3

II.    Plaintiff's RICO Claim Against the Pharmacy Defendants Named as Dispensing Pharmacies Should Be Dismissed Because It Is Based Solely on Distribution. ................ 7

III.   Oklahoma Law on Proximate Causation Defeats All State Law Claims Against the Pharmacy Defendants, Including Claims Based on Distribution. ............................... 10

CONCLUSION ....................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Carista v. Valuck*,
  394 P.3d 253 (Okla. Civ. App. 2016) ................................................................................ passim

*Delaware v. Purdue Pharma L.P.*,
  No. N18C-01-223 MMJ CCLD (Del. Super. Ct. Feb. 4, 2019) .................................................. 4

*McClelland v. Harvie Koth-Ed Rieman, Post No. 1201, Veterans of the Foreign Wars of
  U.S., Inc.*,
  770 P.2d 569 (Okla. 1989) ........................................................................................................ 11

*Prince v. B.F. Ascher Co., Inc.*,
  90 P.3d 1020 (Okla. Civ. App. 2004) ................................................................................. 10, 11

**Statutes**

21 U.S.C. § 827 .................................................................................................................................. 9

## INTRODUCTION

The Report and Recommendation ("R&R") relies almost entirely on this Court's order in *Summit County*. But the R&R overlooks a critical difference between that case and this one: the presence of purported *dispensing claims* against the Pharmacy Defendants.[1] As this Court made clear, the claims against the Pharmacy Defendants in *Summit County* are based solely on their conduct as distributors. *See* ECF No. 1203 ("*Summit County* Order"), at 2 ("The Court understands that Plaintiffs have disclaimed any cause of action against Retail Pharmacies in their capacity as retailers or dispensers of opioids, and thus consider the parties' arguments while keeping in mind that the Retail Pharmacies may only be held liable as distributors."). Despite that—and even though Pharmacy Defendants raised numerous new arguments specific to dispensing claims under Oklahoma law—the R&R inexplicably concludes that the parties raised no arguments not already raised and resolved in *Summit County*. *See* R&R at 63.

In fact, the claims against the Pharmacy Defendants in this case bear little resemblance to the claims against them in *Summit County*. There, the claims center on allegations that the "National Retail Pharmacies," acting as distributors, shipped allegedly "suspicious orders" of certain drugs to their own retail store locations. Here, in contrast, Plaintiff's claims center on allegations that individual pharmacists employed by each of the Pharmacy Defendants dispensed prescription opioid medications to patients despite the presence of "red flags." *See* Am. Compl. ¶¶ 170-77, 186-99. Only 3 of the 23 total Pharmacy Defendants in this case are even named in

---

[1] The "Pharmacy Defendants" include CareFirst Pharmacy, Inc.; City Drug Co. and City Drug of Coweta, Inc.; Cityplex Pharmacy; CVS Pharmacy, Inc. and Oklahoma CVS Pharmacy, LLC (collectively "CVS"); Economy Pharmacy, Inc.; Ernie's Pharmacy & Wellness Center, Inc.; Freeland Brown Pharmacy, Inc.; Gaddy Discount Drug, Inc.; M&D Star Drug, Inc.; Med-Econ Drug, Inc.; NRF, Inc. d/b/a Couch Pharmacy ("Couch Pharmacy"); Olympia Pharmacy; Omnicare Distribution Center LLC; Pippenger Pharmacies, LLC; Reasor's LLC; Rogers Drug Co., Inc.; Spoon Drugs, Inc.; Walgreen Co.; and Walmart Inc. (named as Wal-Mart Stores, Inc.).

1

*Summit County*.  The vast majority of the Pharmacy Defendants in this case are not national chains but independent local pharmacies with no alleged distribution activities.

Unlike the distribution claims in *Summit County*, Plaintiff's dispensing claims are essentially professional malpractice claims against licensed pharmacists.  This distinction is critical because many states impose stringent limits on tort claims against pharmacists for the allegedly improper dispensing of prescription medications.  In Oklahoma, those limits require a plaintiff to allege far more than that a pharmacist improperly dispensed medication that caused harm to the plaintiff.  Rather, where (as here) the medication in question was dispensed at the direction of a licensed prescriber, the plaintiff must show that the prescription was "unreasonable on its face."  *Carista v. Valuck*, 394 P.3d 253, 256-57 (Okla. Civ. App. 2016).

There is no dispute among the parties that *Carista* governs the dispensing claims here. The Pharmacy Defendants extensively briefed the issue.  And in its opposition to the motions to dismiss, Plaintiff agreed that "Oklahoma law will . . . shield pharmacies from liability" unless the prescription was "unreasonable on its face."  Pl. Br. at 32 (quoting *Carista*, 394 P.3d at 256). But the R&R fails to mention *Carista* even once.  This is clearly erroneous.  Because Plaintiff has not even attempted to satisfy *Carista*'s requirements with respect to its dispensing claims against the Pharmacy Defendants, those claims should be dismissed.

2

## ARGUMENT[2]

I. **Oklahoma Law Forecloses All State Law Claims Against the Pharmacy Defendants as Dispensing Pharmacies Because Plaintiff Has Not Alleged Facts to Support the Conclusion That Any Filled Prescription Was Facially Unreasonable.**

Unlike plaintiffs in *Summit County*, Plaintiff purports to state claims against the Pharmacy Defendants in their roles as dispensing pharmacies. One need look no further than the long list of individual Pharmacy Defendants in the caption to see how Plaintiff's theory diverges. With only a few exceptions, the Pharmacy Defendants are not national retail chains but small independent pharmacies with no alleged distribution activities. No similar defendants are named in any of the other bellwether cases in the MDL, including *Summit County*.

To survive a motion to dismiss under Oklahoma law, claims based on improper dispensing must allege facts sufficient to show that the prescription was "unreasonable on its

---

[2] In addition to the arguments advanced elsewhere in this brief and by other defendants, the Pharmacy Defendants specifically object to the following errors in the R&R:

- Plaintiff has failed to state a claim against Walgreens and Walmart as distributors, making no specific allegations about either of them *as distributors*. *See* Pharmacy Br. at 4; Pharmacy Reply at 3-4. The R&R rejected this argument by noting that Plaintiff alleges that Walgreens and Walmart engaged in both distribution and dispensing. R&R at 26-27. But even if Plaintiff had adequately pleaded *dispensing* claims against the Pharmacy Defendants—which it has not—that has nothing to do with whether it has adequately pleaded *distribution* claims against Walgreens and Walmart.

- Plaintiff has failed to plead viable claims for public nuisance and unjust enrichment and can point to no Oklahoma appellate authority recognizing anything like the novel theories of liability it advances here. *See* Pharmacy Br. at 13 (nuisance); *id.* at 14 (unjust enrichment); Pharmacy Reply at 14-15 (nuisance); *id.* at 16 (unjust enrichment). The R&R erred by inverting the proper analysis under *Erie* and Sixth Circuit precedent and expanding tort liability in Oklahoma based on its conclusion that no Oklahoma court had affirmatively rejected claims like Plaintiff's.

As directed by the Court, the Pharmacy Defendants do not raise every objection here and instead join in the arguments raised by the Manufacturers and Distributors in their objections to the R&R. The Pharmacy Defendants also object to the undue page limits. *See* ECF No. 1041.

face," such as a prescription for "bizarre quantities," "dosages clearly outside of any acceptable range," or "clearly inappropriate drugs," or for a drug that the pharmacist has reason to know is "clearly contraindicated" for the specific patient.  *Carista*, 394 P.3d at 256-57.

Plaintiff alleges that licensed pharmacists employed by the Pharmacy Defendants filled certain unidentified opioid prescriptions that those pharmacists, in the exercise of their professional judgment, should have refused to fill.  *See* Am. Compl. ¶¶ 170-77, 186-99.  More specifically, Plaintiff alleges that licensed pharmacists employed by the Pharmacy Defendants "regularly filled opioid prescriptions that would have been questioned by a reasonably prudent pharmacy."  *See id.* ¶ 260.  But Plaintiff does not identify a single prescription that any of the 23 Pharmacy Defendant failed to adequately vet, filled despite red flags, and that harmed Plaintiff— much less any facts suggesting that any such prescription was "unreasonable on its face."[3]  In short, Plaintiff asserts pharmacy malpractice claims against the Pharmacy Defendants without identifying a single act of malpractice by any one of them.[4]  Such allegations are categorically inadequate under *Carista*.  This is fatal, because Plaintiff has conceded that *Carista* governs its dispensing claims against the Pharmacy Defendants, agreeing with the Pharmacy Defendants that "Oklahoma courts will . . . shield pharmacies from liability" unless the prescription filled was "unreasonable on its face."  *See* Pl. Br. at 32 (quoting *Carista*, 394 P.3d at 256).

*Carista* governs *all* of Plaintiff's state law claims against the Pharmacy Defendants.  It applies to Plaintiff's negligence claim (Count VIII) based on its holding that pharmacists have no "duty of care" under Oklahoma law unless a prescription is facially unreasonable.  *See id.* at 256-

---

[3] The Pharmacy Defendants have also previously explained that Plaintiff's putative dispensing allegations do not meet the standards of *Iqbal* and *Twombly*.  *See* Pharmacy Br. at 2-3.

[4] A Delaware court has issued an order dismissing dispensing claims for this very reason.  Order, *Delaware v. Purdue Pharma L.P.*, No. N18C-01-223 MMJ CCLD (Del. Super. Ct. Feb. 4, 2019).

4

57. *Carista* applies to Plaintiff's negligence per se theory as well because under Oklahoma law a statute can supply only the relevant "standard of care" for an existing duty. *See* Pharmacy Br. at 11; Pharmacy Reply at 11. And as Plaintiff recognizes, *Carista* applies to its remaining state law claims by informing the analysis of proximate causation under Oklahoma law. Pl. Br. at 32 (discussing *Carista* under proximate causation). The question of duty under Oklahoma law turns on the same principles of remoteness, foreseeability, and public policy that govern proximate cause. And key to *Carista*'s holding was the application of the learned intermediary doctrine, with the court concluding that a doctor's prescribing decision cuts off pharmacy liability *unless* the prescription was "unreasonable on its face." *See* 394 P.3d at 256-57.

Plaintiff points to no allegations that can overcome *Carista*'s strict limits on pharmacy liability. Plaintiff has argued that deceptive marketing by the Manufacturer Defendants precludes application of the learned intermediary doctrine, but concedes that it has not alleged any deceptive marketing by any of the Pharmacy Defendants. *See* Pharmacy Reply at 4-5. Whatever relevance alleged marketing conduct might have to claims against the Manufacturer Defendants, it plainly has no relevance whatsoever to dispensing claims against the Pharmacy Defendants. Under *Carista*, the sole question is whether a given prescription was unreasonable on its face. But again, Plaintiff has not identified any such prescription.

Plaintiff points to general allegations that the Pharmacy Defendants filled unidentified prescriptions despite unidentified "red flags" but does not even attempt to argue that the existence of "red flags" would have made any given prescription facially unreasonable under

Oklahoma law.  This shortcoming is not surprising, as the evaluation of "red flags" necessarily involves a case-by-case exercise of a pharmacist's professional judgment.[5]

In the end, Plaintiff's only defense against *Carista* is to assert, without authority, that whether any of the Pharmacy Defendants filled "unreasonable" prescriptions is a "question[] for the jury" and "not appropriate on a motion to dismiss." Pl. Br. at 32.  But *Carista* itself upheld dismissal of pharmacy claims where a plaintiff failed to adequately allege any facially unreasonable prescriptions.  *See* 394 P.3d at 256, 259 ("The dismissal in this case was made on the grounds that no duty existed pursuant to the facts pled . . . .  On review, we agree that Carista's existing petition failed to state facts sufficient to show a breach of duty by Pharmacy.").

Even though the Pharmacy Defendants briefed *all* of these arguments in their Motion to Dismiss, the R&R did not address *any* of them.  Indeed, the R&R does not even mention *Carista*—the case *both sides agree* governs pharmacy liability under Oklahoma law.  The R&R concluded that the Pharmacy Defendants had raised no arguments not already considered in the *Summit County* order—which did not address dispensing allegations—and had identified no Oklahoma authority requiring additional analysis of Plaintiff's claims.  R&R at 63 ("Defendants raised all of these arguments in *Summit County* and in each case, the court rejected them.  In the

---

[5] The types of "red flags" identified by Plaintiff include, for example, (1) evaluating whether a prescription has handwriting that is "too legible," Am. Compl. ¶ 194; (2) deciding what to make of the fact that a 30-day prescription is being refilled before a full 30 days has passed, *id.*; (3) evaluating a prescription combining drugs that are commonly abused together even if not medically contraindicated, *id.* ¶ 195; (4) determining whether a particular doctor writes "significantly more" prescriptions than other practitioners, *id.* ¶ 194; (5) identifying prescriptions with the name of a legitimate doctor but an altered callback number, *id.* ¶ 193; (6) assessing a customer new to the store or community, *id.* ¶ 195; or (7) evaluating the significance of a customer's decision to pay with cash instead of through insurance, *id.*  There is no plausible basis on which to conclude that the presence of these "red flags" render a prescription "unreasonable on its face," especially where Plaintiff has not alleged which (or how many) of these incredibly diverse "red flags" were present but ignored by the Pharmacy Defendants' pharmacists.

*Summit County* case, the court concluded that the plaintiffs had pled sufficient facts to plausibly make out a claim that all the defendants owed them a duty of care. The parties have not identified, and the court has not found any Oklahoma authority that would lead to a different result . . . ."). The R&R is mistaken as a matter of fact and law.

For the reasons outlined above, controlling Oklahoma law forecloses all of Plaintiff's state law claims against the Pharmacy Defendants as dispensing pharmacies.

## II. Plaintiff's RICO Claim Against the Pharmacy Defendants Named as Dispensing Pharmacies Should Be Dismissed Because It Is Based Solely on Distribution.[6]

The R&R's analysis of Plaintiff's RICO claim against the Pharmacy Defendants (Count II) likewise fails to distinguish between claims based on distribution and claims based on dispensing. As the Pharmacy Defendants explained in their motion to dismiss, Plaintiff's RICO claim against them is based entirely on *distribution*, not dispensing. Pharmacy Br. at 7 n.8; Pharmacy Reply at 8-9. In its opposition, Plaintiff never disputed that contention. Nor could it. The alleged "racketeering activity" of the "Opioid Supply Chain Enterprise" is defined as "refusing to report and halt suspicious orders." Am. Compl. ¶¶ 349, 401. And all of the relevant "Facts Pertaining to Claims Under RICO" are about distribution. *Id.* ¶¶ 329-52. For example:

- "Through the connections they made as a result of their participation in [the Healthcare **Distribution** Alliance], Defendants chose to flout the closed system designed to protect citizens." *Id.* ¶ 330.

- "Defendants are duty bound to ***identify and report 'orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.'*** Critically, Defendants' responsibilities do not end with the products they manufacture ***or distribute*** . . . ." *Id.* ¶ 331 (emphasis added).

- "At all relevant times, Defendants exerted control over, conducted, and/or participated in the Opioid Supply Chain Enterprise by fraudulently claiming that

---

[6] The two Pharmacy Defendants named as Distributors (Walgreens and Walmart) also join in the objections briefed by the Manufacturer and Distributor Defendants on the RICO claims.

7

they were complying with their duties to *identify, investigate, and report suspicious orders of opioids*." *Id.* ¶ 333 (emphasis added).

- "The failure to make reports as required by the FCSA and Code of Federal Regulations . . . constitutes concealment of Diversion Defendants' *wrongful fulfillment of suspicious orders*." *Id.* ¶ 335 (emphasis added).

- "Defendants misrepresented the superior safety features of their *order monitoring programs*, *ability to detect suspicious orders*, commitment to preventing diversion of prescriptions opioids, and their compliance with all Federal and state regulations regarding the *identification and reporting of suspicious orders* of prescription opioids." *Id.* ¶ 343 (emphasis added).

- "The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct to deceive regulators, the public, and the Nation into believing that Defendants were complying with their Federal and state obligations to *identify and report suspicious orders* of prescriptions opioids . . . ." *Id.* ¶ 344 (emphasis added).

- "By intentionally *refusing to report and halt suspicious orders* of their prescription opioids, Defendants engaged in a fraudulent scheme and unlawful course of conduct constituting a pattern of racketeering activity." *Id.* ¶ 349 (emphasis added).

The same is true of Count II itself. *See id.* ¶¶ 380-408. While Count II is ostensibly asserted against "All Defendants," the relevant conduct again relates solely to distribution:

- "By intentionally *refusing to report and halt suspicious orders* of their prescription opioids, Defendants engaged in a fraudulent scheme and unlawful course of conduct constituting a pattern of racketeering activity." *Id.* ¶ 401 (emphasis added).

- "It was foreseeable to the Defendants that the Nation would be harmed when they *refused to report and halt suspicious orders* . . . ." *Id.* ¶ 402 (emphasis added).

- "[T]he Defendants engaged in a scheme of deception by *refusing to identify or report suspicious orders* of prescription opioids that they knew were highly addictive, subject to abuse, and were actually being diverted into the market of non-medical use." *Id.* ¶ 405 (emphasis added).

Plaintiff's singular focus on distribution in Count II is not the result of imprecise draftsmanship or a failure to understand the distinction between distribution and dispensing. The

8

Amended Complaint reflects a clear understanding of that distinction. *Compare id.* ¶ 11 ("At the distributor level, diversion occurs whenever opioid distributors fill suspicious orders from retailers such as pharmacies."), *with id.* ¶ 12 ("At the pharmacy level, diversion occurs when a pharmacist fills a prescription despite having reason to believe it has no legitimate medical purpose."); *id.* ¶ 468 (identifying "negligent acts" by Defendants as including both "failing to report suspicious orders or refuse to fill them" and "failing to review prescription orders for red flags"). There is no question that if Plaintiff meant its RICO claim to encompass a pattern of improper dispensing, it could (and would) have done so explicitly.[7]

In analyzing the RICO count, the R&R fundamentally misunderstood the Pharmacy Defendants' point. The R&R characterized it as an argument that *all* of the complaint's allegations "pertain only to the Manufacturers and Distributors" and accused the Pharmacy Defendants of "ignor[ing] Plaintiff's allegations pertaining to their complained-of misconduct and its consequences; the duties imposed on the Pharmacy Defendants . . . by federal and state laws and regulations; their alleged failure to comply with those obligations; and the consequences of that alleged misconduct." R&R at 26 (citations omitted). But the Pharmacy Defendants never disputed the existence of *some* allegations about dispensing, which are relevant (if at all) to Plaintiff's negligence and other state law claims. Rather, the Pharmacy Defendants contended that Plaintiff's RICO claim, the alleged Opioid Supply Chain Enterprise, and all of the

---

[7] Plaintiff's citation to federal and Oklahoma statutes that reference both distribution and dispensing does not change the equation. *See* Am. Compl. ¶ 340 (citing 21 U.S.C. § 827); *id.* ¶ 389 (citing 63 Okl. St. Ann. § 2-401(A)(1)). So, for example, while 21 U.S.C. § 827 expressly encompasses "Manufacturers, Distributors, and Dispensers," Plaintiff identifies it as creating a relevant standard of care for the "Diversion Manufacturer Defendants" and "Distributor Defendants," *id.* ¶ 167, but *not* for the Pharmacy Defendants, *see id.* ¶¶ 170-77. The contrast between these statutes and the actual theory and allegations of Plaintiff's RICO claim is further proof that Plaintiff's target in Count II is distribution and not dispensing.

9

RICO allegations are *solely* about distribution—conduct that does not implicate the 21 (out of 23) Pharmacy Defendants who are named as dispensing pharmacies only.

The R&R never addressed the Pharmacy Defendants' actual argument and provided no analysis of Plaintiff's RICO allegations or of Count II.  Instead, it stated in conclusory fashion that "[t]he FAC adequately alleges conduct that, if proven, may subject the Pharmacy Defendants to RICO liability as members of the Opioid Supply Chain Enterprise."  *Id.*  This is clear error.  The *only* conduct that could subject *any* defendant to RICO liability as a member of the Opioid Supply Chain Enterprise is "intentionally refusing to report or halt suspicious orders."  *See* Am. Compl. ¶¶ 349, 401.  Because Plaintiff does not allege that any of Pharmacy Defendants named solely as dispensing pharmacies engaged in the wholesale distribution of opioids, Plaintiff's RICO claim against them should be dismissed.

### III. Oklahoma Law on Proximate Causation Defeats All State Law Claims Against the Pharmacy Defendants, Including Claims Based on Distribution.

Suggesting that Oklahoma law on proximate causation is no different than the federal RICO standard, the R&R repeatedly points to this Court's order in *Summit County* and engages in minimal or no further analysis.  *See* R&R at 61; *id.* at 63; *id.* at 23-24.  But the R&R ignores the Pharmacy Defendants' extensive briefing of Oklahoma's "sole efficient legal cause" doctrine and the on-point holding in *Prince v. B.F. Ascher Co., Inc.*, 90 P.3d 1020 (Okla. Civ. App. 2004).  Pharmacy Br. at 4-7; Pharmacy Reply at 6-8.  These unique arguments under Oklahoma law were not briefed or considered in *Summit County* and foreclose a finding of proximate cause on all of Plaintiff's state law claims—whether based on distribution *or* dispensing.[8]

---

[8] As to Plaintiff's claims against the Pharmacy Defendants as dispensers, these proximate causation arguments are in addition to the learned intermediary bar applied in *Carista*.

10

As the Pharmacy Defendants explained at length, Plaintiff cannot escape the "sole efficient legal cause" doctrine, under which the intentional misuse of an intoxicating product is the only legally relevant cause of resulting injuries.  Pharmacy Br. at 4-5; *see also McClelland v. Harvie Koth-Ed Rieman, Post No. 1201, Veterans of the Foreign Wars of U.S., Inc.*, 770 P.2d 569, 572 (Okla. 1989).  While the Oklahoma Supreme Court modified this common law rule on public policy grounds specifically for sellers of alcohol, Oklahoma courts have repeatedly described that modification as narrow, extended it only in carefully defined circumstances, and held that the traditional rule remains in full force outside of that narrow exception.  *See* Pharmacy Reply at 6-7 (collecting authority); Pharmacy Br. at 5 n.5 (same).

Applying these principles of Oklahoma law, the court in *Prince* held that there was no proximate causation—as a matter of law—for the intentional misuse of an intoxicating and addictive substance, despite allegations that the defendants in that case knew the product was addictive and easily abused and that the misuse was foreseeable.  90 P.3d at 1024, 1028-29.  Plaintiff's efforts to distinguish *Prince* are unpersuasive.  *See* Pharmacy Reply at 7-8.  By again ignoring the Pharmacy Defendants' arguments under controlling Oklahoma authority, the R&R failed to properly analyze proximate causation under Plaintiff's state law claims.

## CONCLUSION

The Pharmacy Defendants respectfully object to the Report and Recommendation on all counts except Count III.  All claims against the Pharmacy Defendants should be dismissed.

Dated:  April 29, 2019   Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreen Co.*

/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC  20036
(202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Health Corporation, CVS Pharmacy Inc., Oklahoma CVS Pharmacy, LLC, and Omnicare Distribution Center LLC*

/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Ralph Streza (consent)
Ralph Streza
CRITCHFIELD, CRITCHFIELD &
 JOHNSTON - MEDINA
54996 Foote Road
Medina, OH 44256
(330) 723-6404
streza@ccj.com

*Counsel for Cityplex Pharmacy*


/s/ Gregory O'Brien (consent)
Gregory O'Brien
CAVITCH FAMILO & DURKIN
1300 East Ninth Street, 20th Floor
Cleveland, OH 44114
(216) 621-7860
gobrien@cavitch.com

*Counsel for Rogers Drug Co., Inc.*


/s/ C. Richard McDonald (consent)
C. Richard McDonald (0017537)
Brian Lange (0080627)
BONEZZI SWITZER POLITO
 & HUPP CO. L.P.A.
1300 East Ninth Street, Suite 1950
Cleveland, OH 44114
(216) 875-2767
rmcdonald@bsphlaw.com
blange@bsphlaw.com

*Counsel for Economy Pharmacy, Inc.*

13

/s/ Sean H. McKee (consent)
Sean H. McKee, OBA #14277
Matthew B. Free, OBA #18055
Benjamin D. Reed, OBA #22696
Steven W. Simcoe, OBA #15349
BEST & SHARP
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, OK 74103
(216) 875-2767
smckee@bestsharp.com
mfree@bestsharp.com
breed@bestsharp.com
ssimcoe@bestsharp.com

*Counsel for Reasor's LLC, City Drug Co., City Drug of Coweta, Inc., Spoon Drugs, Inc., CareFirst Pharmacy, Inc., Ernie's Pharmacy & Wellness Center, Inc., Gaddy Discount Drug, Inc., M&D Star Drug, Inc., Med-Econ Drug, Inc., Pippenger Pharmacies, LLC, Freeland Brown Pharmacy, Inc.*


/s/ Brian D. Kerns (consent)
Brian D. Kerns (0037015)
William A. Peseski (0095235)
BONEZZI SWITZER POLITO
 & HUPP CO. L.P.A.
46 Public Square, Suite 230
Medina, OH 44256
(330) 952-0440
bkerns@bsphlaw.com
wpeseski@bsphlaw.com

Edward D. Papp (0068574)
BONEZZI SWITZER POLITO
 & HUPP CO. L.P.A.
1300 East Ninth Street, Suite 1950
Cleveland, OH 44114
(216) 875-2767
epapp@bsphlaw.com

*Counsel for NRF, Inc. d/b/a Couch Pharmacy*

14

          <u>/s/ David C. Youll (consent)</u>
David C. Youll (16553)
WELSH & MCGOUGH, PLLC
2727 East 21st Street, Suite 600
Tulsa, OK 74114
(918) 585-8600
david@tulsafirm.com

*Counsel for Olympia Pharmacy*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing Objections to the Magistrate Judge's Report & Recommendation Regarding the Motion to Dismiss First Amended Complaint by Defendants CareFirst Pharmacy, City Drug, Cityplex Pharmacy, Couch Pharmacy, CVS, Economy Pharmacy, Ernie's Pharmacy, Freeland Brown Pharmacy, Gaddy Discount Drug, M&D Star Drug, Med-Econ Drug, Olympia Pharmacy, Omnicare, Pippenger Pharmacies, Reasor's, Rogers Drug Co., Spoon Drugs, Walgreens, and Walmart is within the pages limitations set forth in ECF No. 1032.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreen Co.*

## CERTIFICATE OF SERVICE

I hereby certify that this 29th day of April, 2019, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr

*Counsel for Walgreen Co.*