# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*The Muscogee (Creek) Nation v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45459<br><br>*The Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corp., et al.*<br>Case No. 18-op-45749 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

## MANUFACTURER DEFENDANTS' OBJECTIONS TO THE REPORTS AND RECOMMENDATIONS ON THEIR JOINT MOTION TO DISMISS THE TRIBES' FIRST AMENDED COMPLAINTS

The Reports & Recommendations ("R&Rs") for the two Indian tribes ("Tribes") relied in large part on the Report & Recommendation and this Court's decision in *Summit County*.[1]  The Manufacturers continue to disagree with the *Summit County* order for the reasons explained below. But to comply with the Court's request to avoid duplication, the objections here focus primarily on pure questions of law that were not at issue in *Summit County*.  As to these distinct issues, the Magistrate erred in at least three respects.  First, the Tribes cannot proceed on a products-based public nuisance claim under Montana or Oklahoma law.  Second, the Tribes cannot recover compact funds used to provide healthcare under federal law.  Third, the Tribes cannot recover alleged costs of providing public services under the common-law free public services doctrine. The Court should revisit these issues and narrow the scope of this unprecedented litigation.

## ARGUMENT

## I.  THE PUBLIC NUISANCE CLAIMS SHOULD BE DISMISSED

The R&Rs recognized that no binding precedent exists under Montana or Oklahoma law authorizing a products-based nuisance claim.  Muscogee R&R 52; Blackfeet R&R 20.  The Muscogee R&R further "[a]cknowledge[d] the scarcity of Oklahoma precedent addressing public nuisance claims in contexts other than land or property use."  Muscogee R&R 53.  Because of the absence of authority permitting products-based public nuisance claims in these states, the Magistrate erred in expanding the states' laws to allow the Tribes' claims.

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court's authority to interpret state law is carefully circumscribed.  Because the law of public nuisance in Montana and Oklahoma has never extended to product-related theories, the Tribes had to identify an

---

[1] The Manufacturers submitted a combined, joint motion to dismiss the Blackfeet Tribe and Muscogee Nation complaints.  MDL Doc. No. 933.  Although the Magistrate Judge issued a separate R&R for each case, the R&Rs cross-referenced each other and addressed many of the same arguments.  To minimize repetition, the Manufacturers are submitting joint objections.

"authoritative signal"—something more than just persuasive authority—to show that the Montana and Oklahoma Supreme Courts would recognize their unprecedented claims. *See State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015); *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 608-10 (6th Cir. 2012). They did not. The R&Rs nonetheless recommended that the Tribes' public nuisance claims proceed for four reasons. None can be squared with fundamental *Erie* principles.[2]

First, the R&Rs noted that no decision from Oklahoma or Montana "expressly limits" public nuisance to "claims relating to property." Muscogee R&R 52; Blackfeet 24. But that gets the analysis backwards. As noted, *Erie* requires an "authoritative signal" that the state would permit the claim. *State Auto*, 785 F.3d at 195. Here, no such precedential state-court decision exists, and the R&Rs do not point to any federal cases recognizing a products-based public nuisance claim in the absence of clear state precedent authorizing such a claim. To the contrary, federal courts have rejected public nuisance claims against product manufacturers in the absence of authoritative state law. *See, e.g.*, *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 539-40 (3d Cir. 2001) (declining to recognize public nuisance claim against gun manufacturers under New Jersey law because "no New Jersey court has ever allowed a public nuisance claim to proceed against manufacturers for lawful products"); *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) (similar, under Pennsylvania law); *see also* Mem. in Support of Joint Manufacturer Defs.' Joint Mot. to Dismiss 37 ("Mot.") (collecting cases).

---

[2] Although this Court permitted a public nuisance claim to proceed in *Summit County* under Ohio law, that decision does not control the analysis here. Ohio is one of the few states that has recognized a public nuisance cause of action against product manufacturers. *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002). Accordingly, the public nuisance arguments in *Summit County* were limited to whether that common law public nuisance claim was abrogated by the Ohio Product Liability Act and whether the plaintiffs had statutory authority to bring such a claim. 2018 WL 6628898, at *12-17 (N.D. Ohio Dec. 19, 2018).

The Muscogee R&R distinguished these cases as involving "harm caused by the use or misuse of an otherwise legal [product]," as opposed to harm caused by fraudulent marketing and distribution practices which, the R&R claimed, "does not sound in products liability."  Muscogee R&R 56.  But the firearm cases cited by the Magistrate similarly allege that gun manufacturers misleadingly promoted firearms, creating an oversupply of guns prone to diversion.  *E.g.*, *Camden Cty.*, 272 F.3d at 538; *City of Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp. 2d 882, 888 (E.D. Pa. 2000) (similar), *aff'd*, 273 F.3d 415 (3d Cir. 2002).

Second, the R&Rs relied on the definition of public nuisance in the respective state statutes and, in particular, the inclusion of "[a]nything that is injurious to health."  Blackfeet R&R 25-26 (quoting Mont. Code Ann. § 27-30-101(1)); Muscogee R&R 53 (relying on Oklahoma's similar definition).  But other courts have declined to interpret similar public nuisance law to permit claims allowed here.  *See, e.g.*, *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 456 (R.I. 2008) (rejecting products-based public nuisance claim based on definition that similarly defined public nuisance as "a significant interference with the public health" based on "centuries" of "Anglo-American law").  The R&Rs ignore that federal courts must focus on whether the state supreme court has ever recognized a statutory or common-law public nuisance claim under factual allegations similar to the case before the court.  *E.g.*, *Camden Cty.*, 273 F.3d at 539-40; *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993).  Because neither the Oklahoma nor Montana statute has ever been applied to similar allegations, that is itself a strong indication that "the statute was neither intended nor has it been understood to extend to cases such as the present case."  *Tioga*, 984 F.2d at 920; *see also City of Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 291-92 (S.D.N.Y. 2016).

Third, the R&Rs characterized certain trial court decisions in Oklahoma and Montana as

"acknowledg[ing] the validity of public nuisance claims that are unrelated to land or real property." Muscogee R&R 54–55; Blackfeet R&R 26. But a federal court can rely on state trial court decisions only if they accurately reflect how the state supreme court would rule. *See Comm'r of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 160-62 (1948); *Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 605 (6th Cir. 1975) (giving some weight to a Tennessee trial court decision because it was "in accord with" an appellate court decision applying Tennessee Supreme Court precedent).[3]

These state trial court decisions, however, do not provide guidance on how the Oklahoma and Montana Supreme Courts would rule. They do not provide adequate analysis, do not provide reasoning based on any Oklahoma or Montana Supreme Court case, and do not address any of the arguments put forward by the Manufacturers. *See State of Oklahoma ex rel. Hunter v. Purdue Pharma L.P.*, No. CJ-2017-816 (Okla. Dist. Ct. Dec. 6, 2017) (no specific mention of public nuisance claim); *State of Oklahoma v. R.J. Reynolds*, No. CJ 96-1499 (Okla. Dist. Ct. Nov. 5, 1998) (no discussion of merits of public nuisance claim); *State ex rel. Mazurek v. Philip Morris, Inc.*, No. CDV-97-306, 1998 Mont. Dist. LEXIS 732 (1st Judicial Dist. Ct. Mont., Lewis & Clark Cty. Sept. 22, 1998) (focusing exclusively on defendants' argument that authorized activities are immune from nuisance liability under Mont. Code Ann. § 27-30-101(2)).[4] Accordingly, they are

---

[3] To support its resort to state trial court decisions, the R&Rs relied on language from *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 636 (6th Cir. 2018), that "[t]he Court may use the decisional law of the state's lower courts." Muscogee R&R 54; Blackfeet R&R 20. But *Pittman* was referring to state appellate courts, 901 F.3d at 636-38 (relying on decisions from the Michigan Court of Appeals), and the Sixth Circuit has elsewhere explained (as has the Supreme Court and other federal courts) that consulting state trial court decisions is appropriate only when they are particularly persuasive and indicative of how a state supreme court would rule (*Estate of Bosch*, 387 U.S. at 465; *Bradley*, 512 F.2d at 605).

[4] Although the *Purdue* case in Oklahoma involves similar allegations against prescription opioid manufacturers, the trial court did not address—and had no opportunity to address—the argument that Oklahoma law does not recognize products-based public nuisance claims because that

entitled to no weight, and the R&Rs improperly credited them.  *See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 370 (4th Cir. 2005) (declining to consider a South Carolina trial court decision because "the case provides no guidance as to how the Supreme Court of South Carolina would rule on the issue presented here"); *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 199 n.9 (3d Cir. 2004) (similar).

Finally, the Blackfeet R&R relied on a California Court of Appeal decision because one Montana Supreme Court case indicated that the court could look to California cases since Montana's public nuisance statute was modeled on California's.  Blackfeet R&R 22 (citing *Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch LLC*, 228 P.3d 1134, 1140 (Mont. 2010)).  But, as the R&R recognized (at 23 n.23), the Montana Supreme Court has rejected California case law in other nuisance cases.  *Martin v. Artis*, 290 P.3d 687, 689-90 (Mont. 2012); *Tarlton v. Kaufman*, 199 P.3d 263, 269-70 (Mont. 2008).  It distorts *Erie* principles to recognize a theory under one state's law based on an intermediate appellate decision from another state.  *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 596 (6th Cir. 2004) ("Although a few state judiciaries have interpreted their [] statutes somewhat progressively, Plaintiff's references to the law in other jurisdictions are too equivocal to form a sound basis for an Erie guess.").  That is particularly true when the out-of-state decision is an outlier in public nuisance jurisprudence.  *See State ex rel. Jennings v. Purdue Pharma L.P.*, No. N18C-01-223 MMJ CCLD, 2019 WL 446382, at *12 (Del. Super. Ct. Feb. 4, 2019) ("There is a clear national trend to limit public nuisance to land use.").

---

argument was not raised in the motion to dismiss.  Defs.' Joint Mot. to Dismiss at 33-35, *State of Oklahoma ex rel. Hunter v. Purdue Pharma L.P.*, No. CJ-2017-816 (Okla. Dist. Ct. Sept. 22, 2017) (attached as Exhibit A).  The summary decision is particularly unpersuasive because, in Oklahoma, "[a] nuisance, public or private, arises where a person uses his own property in such a manner as to cause injury to the property of another."  *Fairlawn Cemetery Ass'n v. First Presbyterian Church U.S.A. of Okla. City*, 496 P.2d 1185, 1187 (Okla. 1972).

Under *Erie* principles, this Court should decline to expand Oklahoma and Montana to recognize a products-based public nuisance claim in the absence of any authoritative state law precedent permitting such a claim.

## II.    THE TRIBES CANNOT RECOVER COMPACT FUNDS USED TO PROVIDE HEALTHCARE

Both Tribes seek to recover (among other things) the costs of medical care provided to their members as a result of the Manufacturers' alleged misconduct.  *See* Muscogee 1AC ¶¶ 22, 351, 443; Blackfeet 1AC ¶¶ 19, 678, 852.  The Tribes receive federally funded healthcare either directly from the Indian Health Service (IHS) or through services provided by Indian tribes under "self-determination" compacts (or contracts) under the Indian Self-Determination and Education Assistance Act (ISDEAA), 25 U.S.C. § 5301 *et seq.*  ISDEAA compacts permit tribes to step into the shoes of the IHS and spend federal dollars that otherwise would be appropriated to IHS.  To the extent the Tribes seek to recover medical costs federally funded by an ISDEAA compact (or contract), their ability to recover is governed by the Indian Health Care Improvement Act (IHCIA), 25 U.S.C. § 1601 *et seq.*, and the Federal Medical Care Recovery Act (MCRA), 42 U.S.C. § 2641 *et seq.*[5]  Under MCRA, the Tribes must identify the specific individuals whose medical costs they seek to recover.  Because the Tribes neither invoke § 1621e of the IHCIA nor identify a single individual in their complaint, they cannot recover those costs.

Before 2010, Indian tribes had no authority to recover damages from a third-party tortfeasor for ISDEAA-funded healthcare.  In 2010, Congress amended § 1621e of IHCIA to allow tribes, under specific circumstances, to seek "damages" from a "third-party tortfeasor."  25 U.S.C. § 1621e(a) (2012).  In particular, a tribe operating under an ISDEAA compact that "furnish[es] or

---

[5] The Muscogee Nation specifically alleges that it provides healthcare to its members under an ISDEAA compact.  Muscogee 1AC ¶ 26.

pay[s] for health services to a person who is injured or suffers a disease on or after March 23, 2010, under circumstances that establish grounds for a claim of liability against [a] tortfeasor" may recover the "reasonable value" of those services.  *Id.* § 1621e(e)(3)(A).  This "extend[s] to Tribes and Tribal Organizations the same authority the U.S. has under [MCRA] to recover the costs of medical care from a tortfeasor."  S. Rep. No. 110-197, at 61 (2007).

But § 1621e limits the Tribes' ability to recover ISDEAA funds in two key respects:  (1) the Tribes cannot recover healthcare expenditures for injuries that occurred before March 23, 2010, and (2) the Tribes can recover only "to the same extent and under the same circumstances as the United States may recover under [MCRA]."  25 U.S.C. § 1621e(e)(3)(A).  Under MCRA, the United States must identify the specific individuals whose medical costs they incurred and seek to recover.  *See United States v. Philip Morris Inc.*, 153 F. Supp. 2d 32, 38 (D.D.C. 2001) (dismissing claim to recover healthcare costs from tobacco companies because government had "not identified in its complaint the injured persons on whose behalf it seeks to recover under MCRA").  This is so because MCRA grants the government a right to recover the costs of healthcare provided "to a person," and the United States' right to recovery is "subrogated" to any claims of the injured person. 42 U.S.C. § 2651(a); *Philip Morris*, 153 F. Supp. 2d at 38, 39 n.11.  Because "the existence of legally injured persons is a prerequisite for and an essential element of the Government's MCRA claim, it must be pleaded in the complaint."  *Philip Morris*, 153 F. Supp. 2d at 38.

So too here.  The current version of § 1621e—enacted after *Philip Morris*—allows recovery for services provided "to a person," is expressly tied to MCRA, and incorporates MCRA's subrogation principles.  25 U.S.C. § 1621e(e)(3)(A).  Thus, to obtain the recovery authorized by § 1621e, a tribe must identify the particular injured persons who have "grounds for a claim of liability against the tortfeasor."  *Id.*

7

The Tribes did not dispute that IHCA § 1621e governs the potential recovery of the funds allegedly at issue here; they did not bring a claim under § 1621e; both § 1621e(e)(3)(A) and MCRA § 2651(a) would require them to identify the specific individuals whose healthcare costs they seek to recover; and they failed to identify any individual patient.  Notwithstanding, the R&Rs incorrectly concluded that § 1621e is an alternative remedy that does not preclude recovery in this case.  Muscogee R&R 44-47; Blackfeet R&R 11-12 n.13 (incorporating Muscogee R&R 44-47).

The R&Rs erred because the Tribes do not have an avenue to recover ISDEAA-funded healthcare costs other than under § 1621e.  In *United States v. Standard Oil Co. of California*, the Supreme Court held that the United States could not seek to recover the cost of healthcare it provided to a soldier from a third-party tortfeasor that injured the soldier.  332 U.S. 301, 302 (1947).  First, because the relationship between government and soldier is "federal in character" and since federal funds from the "[g]overnment's purse" were at issue, the government's ability to recover from third-party tortfeasors was exclusively a question of *federal* law.  *Id.* at 305-11.  Second, liability should not be decided as a matter of federal common law; rather, it should be left for Congress to address through legislation.  *Id.* at 311-17.  *Standard Oil* prompted Congress to enact MCRA in 1962, which created such a cause of action for the first time.  *See United States v. Philip Morris Inc.*, 116 F. Supp. 2d 131, 140-41 (D.D.C. 2000).

Like the government-soldier relationship in *Standard Oil*, the relationship between the federal government and the Tribes here is "fundamentally derived from federal sources and governed by federal authority" and is "distinctively and exclusively a creation of federal law" (332 U.S. at 305-06, 310) because it turns on the federal government's responsibility to provide healthcare to Indians.  25 U.S.C. § 1602; *White v. Califano*, 581 F.2d 697, 698 (8th Cir. 1978).  The federal government has "exclusive power to establish and define the relationship" and "protect

the relation once formed from harms inflicted by others."  332 U.S. at 306.  And just as state law cannot interfere with the United States' duty to provide Indian healthcare services, it also does not define any right of recovery by federal or tribal governments to recoup federal Indian healthcare expenditures from third parties.  "Since [] the Government's purse is affected, as well as its power to protect the relationship, its fiscal powers, to the extent that they are available to protect it against financial injury, add their weight to the [] basis for excluding state intrusion."  *Id.*

Although the Muscogee R&R acknowledges parallels between this case and *Standard Oil*, it concludes that "the analogy . . . breaks down" for several reasons.  Muscogee R&R 45.[6]  First, the R&R notes that the funds in *Standard Oil* came from the "Government's purse," whereas the Tribes allege "that [they] use[] funds from numerous sources to fund [their] healthcare services."  *Id.*  But the Manufacturers do not claim that § 1621e and MCRA preclude recovery for healthcare costs *not* funded by ISDEAA compacts/contracts.  Section 1621e and MCRA require dismissal of the Tribes' claims to the extent they seek to recover ISDEAA-funded healthcare costs, regardless of whether other sources also fund their healthcare services.  That certain of the Tribes' other healthcare costs may be paid for with non-federal funds is thus irrelevant.

Second, the R&R asserts that ISDEAA funds are "tribal funds, to be budgeted and spent to provide healthcare as the Tribe deems best."  Muscogee R&R 45-46.  The fact that the Tribes have discretion in deciding how to use their ISDEAA-compact funds is immaterial too.  "[F]ederal grant money does not lose its federal character simply because it is administered by a nonfederal agency such as [a tribal organization]."  *United States v. Largo*, 775 F.2d 1099, 1101 n.3 (10th Cir. 1985).  And although ISDEAA's goal is to promote tribal self-governance by allowing tribes to administer

---

[6] The Blackfeet R&R incorporates the Muscogee R&R reasoning on this issue.  *See* Blackfeet R&R 11 n.13.

federal programs to best serve local and community needs, there remains broad federal oversight of ISDEAA compacts and contracts.  *See* 1-22 *Cohen's Handbook of Federal Indian Law* § 22.02[2]-[3] (2017); *see also id.* at [5] ("[w]hile the Self-Determination Act transfers control over programs to tribes, financial responsibility remains with the federal government").  Because ISDEAA funds come from the federal government and maintain their federal character when used by the Tribes, they implicate distinctively federal interests and affect "the Government's purse." *Standard Oil*, 332 U.S. at 306.

Third, the R&R points to "several cases recognizing an Indian tribe's authority to sue under state causes of action to recover for harm to its citizens or members."  Muscogee R&R 46.  The Manufacturers are not arguing that tribes never have standing to bring state law claims against tortfeasors to recover for alleged harm to their members—only that the Tribes have no state law claim to recover ISDEAA-related healthcare costs.[7]  Because it is undisputed that none of those cases involved, much less permitted, recovery of ISDEAA healthcare costs, they are inapposite. *See* Muscogee R&R 46 & n.32; *see* Muscogee Opp. 43 n.119 (conceding that it cannot point to a single case that "relate[s] to healthcare costs specifically").  Indeed, no court has recognized a tribe's right to recover such funds apart from § 1621e—before or after 2010.  Muscogee R&R 45.

Finally, the R&R relies on "two saving clauses," *i.e.*, § 1621e(c) and § 1621e(k). Muscogee R&R 46.  As an initial matter, § 1621e(c) is not a state-law savings clause at all.  25 U.S.C. § 1621e(c) (stating that state law shall not "prevent or hinder the right of recovery of the United States, an Indian tribe, or tribal organization under subsection (a)").  And regardless, the

---

[7] To the extent the R&R relies on the Tribes' invocation of *parens patriae* standing, that reliance is misplaced.  Recovery of specific healthcare costs incurred by their members is not the kind of "quasi-sovereign interest" that *parens patriae* is designed to protect.  *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982).

Manufacturers are not arguing that § 1621e somehow preempts state law causes of action. Rather, Indian tribes had no cause of action, under state or federal law, to recover ISDEAA healthcare costs from third party tortfeasors until the 2010 amendments to § 1621e—in other words, there were no state law causes of action to "expressly preserve[]." Instead, the purpose of § 1621e(k) is to preserve the substantive bases of tort liability that tribes may invoke under § 1621e(e)(3)(A). Section 1621e(e)(3)(A) does not itself create a substantive right; it is merely a procedural vehicle for bringing a tort claim where one would not otherwise exist. *Cf. Huddleston v. United States*, 485 F. App'x 744, 745 (6th Cir. 2012) (interpreting statute to incorporate tort law into federal cause of action); *Heusle v. Nat'l Mut. Ins. Co.*, 628 F.2d 833, 837 (3d Cir. 1980) (same).

In sum, given the exclusive federal law framework that governs Indian healthcare, the Tribes' only avenue to seek to recover ISDEAA funds is through the mechanism expressly provided by Congress in § 1621e(e)(3)(A). Section 1621e(e)(3)(A) requires that a tribe identify the particular injured persons who have "grounds for a claim of liability against the tortfeasor." 25 U.S.C. § 1621e(e)(3)(A); *see also Philip Morris*, 153 F. Supp. 2d at 38-39. Because the Tribes neither invoke § 1621e nor identify a single such person in their complaints, their claims to recover ISDEAA healthcare funds must be dismissed.

## III.  THE TRIBES CANNOT RECOVER THE COSTS OF PROVIDING PUBLIC SERVICES

The Tribes also seek to recover the costs of providing public services (*i.e.*, law enforcement, emergency medical services), but the free public services doctrine bars such recovery. The common law simply does not allow governmental entities to recover public expenditures made in the performance of government functions absent statutory authorization. *See, e.g.*, *Cty. of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 150-51 (2d Cir. 2013); *Dist. of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984). Neither Montana nor Oklahoma law

has clearly authorized such recovery.  Accordingly, the Court should dismiss the Tribes' claims to the extent they seek to recover the costs of these government services.

The R&Rs declined to apply the doctrine here for two reasons.  Neither reason withstands scrutiny.  First, the R&Rs concluded that the free public services doctrine only "preclude[s] recovery by government entities for the costs of addressing discrete occurrences," as opposed to "ongoing, persistent misconduct."  Muscogee R&R 16; Blackfeet R&R 8.  That is wrong.  Courts have applied the doctrine to long-term conduct.  *See, e.g.*, *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1108-09 (Ill. 2004) (suit by city against gun manufacturers for marketing and distribution practices "which intentionally and recklessly cause[d] thousands of illegal firearms to end up in Chicago" (internal quotation marks omitted)); *City of Philadelphia*, 126 F. Supp. 2d at 888 (similar allegations); *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1266, 1288 (11th Cir. 2015) (bank's "decade-long pattern of discriminatory lending"), *rev'd on other grounds*, 137 S. Ct. 1296 (2017); *Walker Cty. v. Tri-State Crematory*, 643 S.E.2d 324, 325-26 (Ga. Ct. App. 2007) (crematorium's long-term practice of failure to dispose of human bodies).

And for good reason:  the separation-of-powers rationale underlying the doctrine is even stronger when the challenged conduct is ongoing because the legislature has ample opportunity to alter the common-law rule and provide for reimbursement.  As explained in *City of Chicago*, "[i]t defies common sense to suggest that the more predictable the expense, the greater the ability of the city to recover its costs in tort . . . when the need for emergency services in response to an alleged nuisance is ongoing, the municipal cost recovery rule is stronger, not weaker, because the legislature is better able to consider need for cost-recovery legislation than in cases of sudden disaster."  821 N.E.2d at 1147; *accord Baker v. Smith & Wesson Corp.*, No. Civ.A. 99C-09-283-FS, 2002 WL 31741522, at *6 (Del. Super. Ct. Nov. 27, 2002) ("Whether a municipality is dealing

12

with an isolated emergency or a continuing problem has little to do with the municipal cost recovery's rationale.").

Second, the R&Rs relied on the *Summit County* decision. Muscogee R&R 17; Blackfeet R&R 8. But this Court in *Summit County* did not address whether the free public services doctrine was applicable to "state law claims"—let alone claims brought under Montana and Oklahoma law, specifically. Indeed, no defendant moved to dismiss the *Summit County* complaint based on the free public services doctrine because Ohio is one of the few states that has declined to adopt that common law doctrine, *see City of Cincinnati*, 768 N.E.2d at 1149. MDL Doc. Nos. 499-1, 491-1, 497-1. The portion of the *Summit County* decision cited by the R&Rs addressed only the narrow issue whether the costs of public services represent a cognizable injury to "business or property" under RICO. 2018 WL 6628898, at *9-10. So no "prior holding" of this Court controls the decision here. Muscogee R&R 17.

The free public services doctrine reflects generally accepted common law principles (which the Tribes do not dispute), and the Tribes can point to no Oklahoma or Montana case or statute abrogating those principles or creating any exception. Under these circumstances, federal courts have applied the doctrine to bar recovery. *See, e.g.*, *Air Florida*, 750 F.2d at 1079-80 (applying the rule and noting that "this issue apparently has never been decided by District of Columbia courts"); *City of Miami*, 800 F.3d at 1288 (declining to allow a city to recover such costs because "it's not clear that municipal expenditures are among the types of benefits that can be recovered by unjust enrichment under Florida law"). This Court should too.

## IV. THE MANUFACTURERS ALSO OBJECT TO THE R&RS' OTHER RECOMMENDATIONS

The Manufacturers also object to the R&Rs' recommendations regarding: (1) proximate causation; (2) common law duty of care; (3) negligence per se; (4) RICO standing; and (5) unjust

enrichment.  Because these issues were addressed by the Court in its *Summit County* order, the Manufacturers address them only briefly here.  *See Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (holding that objections to an R&R need only "explain[] and cite[] specific portions of the report which counsel deems problematic").

### A.  Proximate Causation

The Manufacturers object to the R&Rs' conclusions that the Tribes have adequately pleaded proximate causation.  Muscogee R&R 20, 23-24, 61-62; Blackfeet R&R 9-10, 34, 39-40. All of the Tribes' claims fail as a matter of law because they assert derivative injuries, seek speculative damages, and rely on an attenuated chain of causation.  *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992); *Perry v. Am. Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003).

### B.  Common Law Duty of Care

The Manufacturers object to the R&Rs' conclusions that the Tribes have adequately pleaded a common law duty of care for purposes of their negligence claims.  Muscogee R&R 62-63; Blackfeet R&R 34-35.  The Manufacturers have no duty to anticipate or prevent the criminal, intentional, or reckless conduct of third parties.  *See Lopez v. Great Falls Pre-Release Servs., Inc.*, 986 P.2d 1081, 1086-87 (Mont. 1999); *Prindel v. Ravalli Cty.*, 133 P.3d 165, 177 (Mont. 2006); *Thornton v. Ford Motor Co.*, 297 P.3d 413, 428 (Okla. Civ. App. 2012); *Prince v. B.F. Ascher Co.*, 90 P.3d 1020, 1028 (Okla. Civ. App. 2004).

### C.  Negligence Per Se

The Manufacturers object to the R&Rs' decision not to address the Manufacturers' arguments for dismissal of the Tribes' negligence per se claims.  Muscogee R&R 63 n.43; Blackfeet R&R 35 n.30.  The R&Rs declined to address them on the basis that the Tribes had properly pleaded a common law duty of care.  But a negligence per se claim is based on a statutory violation and contains elements distinct from those of a common law negligence claim.  *See, e.g.*,

*Harwood v. Glacier Elec. Coop., Inc.*, 949 P.2d 651, 656 (Mont. 1997); *Ohio Cas. Ins. Co. v. Todd*, 813 P.2d 508, 510 (Okla. 1991).  Any common law duty thus has no bearing on whether the Tribes have a viable negligence per se claim.  The Tribes have failed to state negligence per se claims because the predicate statutes they cite do not give rise to a private cause of action, are not intended to protect the Tribes, and are not designed to protect against the types of injuries asserted.  *See Doyle v. Clark*, 254 P.3d 570, 577 (Mont. 2011); *Been v. MK Enter., Inc.*, 256 P.3d 1040, 1044 (Okla. Civ. App. 2011); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001); *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 936 (6th Cir. 2014).

### D. RICO Standing

The Manufacturers object to the R&Rs' conclusions that the Tribes have adequately pleaded RICO standing.  Muscogee R&R 18-24; Blackfeet R&R 9-10.  The Tribes' RICO claims must be dismissed because the Tribes have not pleaded any injury to their "business or property."  Instead, the Tribes seek to recover (1) the personal injuries of tribe-members, (2) voluntarily incurred expenditures, and (3) lost tax revenue—all of which fall outside the scope of RICO.  *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 n.2, 564-65 (6th Cir. 2013) (personal injury); *see also Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 264-65 (1972) ("general injuries to the national economy"); *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 977 (9th Cir. 2008) (public expenditure).

### E. Unjust Enrichment

The Manufacturers object to the R&Rs' conclusions that the Tribes have pleaded an unjust enrichment claim.  Muscogee R&R 65-68; Blackfeet R&R 40-41.  The Tribes' negative-externality theory of unjust enrichment is not legally cognizable under Montana or Oklahoma law.  *See Mont. Petroleum Tank Release Comp. Bd. v. Capitol Indem. Co.*, 137 P.3d 522, 529 (Mont. 2006); *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 828 (Okla. 2016).

Dated: April 29, 2019     Respectfully submitted,

By: */s/ Jonathan L. Stern*
Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 942-5000
jonathan.stern@arnoldporter.com

Sean O. Morris
Arnold & Porter Kaye Scholer LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Tel: (213) 243-4000
sean.morris@arnoldporter.com

Carole S. Rendon
BAKER HOSTETLER
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Tel: (216) 621-0200
crendon@bakerlaw.com

*Attorneys for Endo Health Solutions*
*Inc., Endo Pharmaceuticals Inc., Par*
*Pharmaceutical, Inc. and Par Pharmaceutical*
*Companies, Inc.*

By: */s/ Steven A. Reed* (consent)
Steven A. Reed
Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5603
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000

brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals, USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

By: /s/ *Mark S. Cheffo* (consent)
Mark S. Cheffo
Sheila L. Birnbaum
Hayden A. Coleman
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com
Sheila.Birnbaum@dechert.com
Hayden.Coleman@dechert.com

*Attorneys for Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company*

By: /s/ *Charles C. Lifland* (consent)
Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
clifland@omm.com
sstrong@omm.com

Daniel M. Petrocelli
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067-6035
Tel: (310) 553-6700
dpetrocelli@omm.com

*Attorneys for Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-*

*McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*


By: */s/ Brien T. O'Connor* (consent)
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
Tel: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Attorneys for Defendants Mallinckrodt LLC and SpecGx LLC*


By: */s/ Donna M. Welch* (consent)
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

*Attorney for Allergan Finance, LLC f/k/a/ Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.*


By: /s/ *J. Matthew Donohue* (consent)
J. Matthew Donohue
Joseph L. Franco
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Tel: (503) 243-2300
matt.donohue@hklaw.com
joe.franco@hklaw.com

Nicholas A. Sarokhanian
HOLLAND & KNIGHT LLP
200 Crescent Court, Suite 1600

18

Dallas, TX 75201
Tel: (214) 964-9500
nicholas.sarokhanian@hklaw.com

*Attorneys for Insys Therapeutics, Inc.*

By: /s/ *Daniel G. Jarcho* (consent)
Daniel G. Jarcho
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Tel: (202) 239-3254
daniel.jarcho@alston.com

Cari K. Dawson
Jenny A. Mendelsohn
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel: (404) 881-7000
cari.dawson@alston.com
jenny.mendelsohn@alston.com

*Attorneys for Noramco, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2019, a copy of the foregoing Manufacturer Defendants' Objections to the Reports and Recommendations on Their Joint Motion to Dismiss the Tribes' First Amended Complaints was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Dated: April 29, 2019                  By: */s/ Jonathan L. Stern*
                                       Jonathan L. Stern
                                       Arnold & Porter Kaye Scholer LLP
                                       601 Massachusetts Ave. NW
                                       Washington, DC 20001
                                       Tel: (202) 942-5000
                                       jonathan.stern@arnoldporter.com

                                       *Attorneys for Endo Health Solutions*
                                       *Inc., Endo Pharmaceuticals Inc., Par*
                                       *Pharmaceutical, Inc. and Par Pharmaceutical*
                                       *Companies, Inc.*