**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540

Deborah S. Hunt
Clerk

POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  May 06, 2019

Mr. John Daniel Parker Jr.
Baker & Hostetler
127 Public Square
Suite 2000
Cleveland, OH 44114

Re:  Case No. 19-3415, *In re: Endo Pharmaceuticals, Inc., et al*
Originating Case No. : 1:17-md-02804

Dear Counsel:

The petition for writ of mandamus has been docketed as case number **19-3415** with the caption listed above.  If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

The filing fee for the petition is $500, which is payable to the Clerk, Sixth Circuit Court of Appeals.  If you wish to seek a waiver of the filing fee, a motion for pauper status with a completed financial affidavit is due by **05/20/2018**.  The financial affidavit is available at www.ca6.uscourts.gov.

The district court judge to whom this petition refers has been served with this letter.

Sincerely yours,

s/Amy E. Gigliotti
Case Management Specialist
Direct Dial No. 513-564-7012

cc:  Ms. Sandy Opacich

Case No. _____

## IN THE
# United States Court of Appeals
### FOR THE SIXTH CIRCUIT

_____

IN RE ENDO PHARMACEUTICALS INC. AND
ENDO HEALTH SOLUTIONS INC.

*Petitioner-Defendants*

_____

FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION
CASE No. 1:17-md-2804

## PETITION FOR WRIT OF MANDAMUS

Jonathan L. Stern
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: 202.942.5000
Facsimile: 202.942.5999
jonathan.stern@arnoldporter.com

John D. Parker
Carole S. Rendon
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1217
Telephone: 216.861.7610
Facsimile: 216.861.7420
jparker@bakerlaw.com
crendon@bakerlaw.com

*Counsel for Petitioner-Defendants
Endo Pharmaceuticals Inc. and Endo
Health Solutions Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:  Not yet assigned

IN RE ENDO PHARMACEUTICALS INC.
Case Name:  AND ENDO HEALTH SOLUTIONS INC.

Name of counsel:  John D. Parker

Pursuant to 6th Cir. R. 26.1,  Endo Pharmaceuticals Inc. and Endo Health Solutions Inc.

*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Yes.
>
> Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. are indirect wholly owned subsidiaries of Endo International plc (a publicly held limited company that is not a party to this case), which owns 10% or more of the parties' stock.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on                May 6, 2019                the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ John D. Parker
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

## **TABLE OF CONTENTS**

**Page**

PETITION FOR WRIT OF MANDAMUS ............................................................... 1

INTRODUCTION .................................................................................................. 1

ISSUE PRESENTED .............................................................................................. 2

FACTS .................................................................................................................... 3

REASONS WHY THE WRIT SHOULD ISSUE .................................................... 8

    A.    The Disqualification Is Indefensible. ........................................ 9

        1.    No evidence supports disqualification under the proper
               legal standard. ...................................................... 10

        2.    The court abandoned the adversary process. ............................ 14

        3.    The court's orders were based on improper *ex parte*
               communications. ................................................... 15

        4.    The court improperly relied on the DOJ Letter. ........................ 17

    B.    In the Circumstances Presented Here, the Erroneous
        Disqualification Is Not Correctable Without Mandamus. ................. 21

    C.    The Seriousness of the Court's Departure from Legal Norms
        Supports Mandamus. .......................................................... 24

        1.    The court's orders manifest persistent disregard of the
               federal rules. ........................................................ 25

        2.    Important legal principles are at stake. ..................................... 27

    D.    Settled Law Supports Mandamus. ......................................... 30

CONCLUSION ...................................................................................................... 32

CERTIFICATE OF COMPLIANCE ...................................................................... 33

CERTIFICATE OF SERVICE ............................................................................... 34

i

**Page**

ADDENDUM 1: DESIGNATION OF RELEVANT DISTRICT COURT
DOCUMENTS ............................................................................................36

ADDENDUM 2: OHIO PROFESSIONAL CONDUCT RULE 1.11.....................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Adams v. Kaech*,
No. C-3-92-157, 1993 WL 1367440 (S.D. Ohio Dec. 30, 1993) ...................... 12

*Albert v. Rogers*,
57 So. 3d 233 (Fla. Ct. App. 2011) .................................................................... 17

*In re American Airlines, Inc.*,
972 F.2d 605 (5th Cir. 1992) ...................................................................... 22, 28

*In re American Cable Publications, Inc.*,
768 F.2d 1194 (10th Cir. 1985) ................................................................. 28, 30

*In re American Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ............................................................. 25, 26, 31

*Arroyo v. City of Buffalo*,
No. 15-CV-753A(F), 2017 WL 3085835 (W.D. New York,
July 20, 2017) .................................................................................................... 12

*In re Barnett*,
97 F.3d 181 (7th Cir. 1996) ....................................................................... 22, 30

*In re Bituminous Coal Operators' Ass'n, Inc.*,
949 F.2d 1165 (D.C. Cir. 1991) ........................................................................ 31

*Chesher v. Allen*,
122 Fed. Appx. 184 (6th Cir. 2005) .................................................................. 31

*Christensen v. U.S. Dist. Court for Cent. Dist. of Cal.*,
844 F.2d 694 (9th Cir. 1988) ............................................................................ 22

*Cohen v. U.S. Dist. Court for Northern Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ............................................................................ 22

*Davis v. S. Bell Tel. & Tel. Co.*,
149 F.R.D. 666 (S.D. Fla. 1993) ................................................................ 10, 12

*E.I. du Pont de Nemours & Co. v. Collins*,
432 U.S. 46 (1977).................................................................................16

*Eaton v. Siemens*,
No. 2:07-cv-0315, 2007 WL 2318531 (E.D. Cal. 2007)...................18

*Edgar v. K.L.*,
93 F.3d 256 (7th Cir. 1996) .............................................................31

*EMK, Inc. v. Fed. Pac. Elect. Co.*,
677 F. Supp. 2d 334 (D. Me. 2010) ..................................................18

*Ezeagwuna v. Ashcroft*,
325 F.3d 396 (3d Cir. 2003) .............................................................18

*Franklin v. Clark*,
454 F. Supp. 2d 356 (D. Md. 2006)..................................................12

*General Mill Supply Co. v. SCA Servs., Inc.*,
697 F.2d 704 (6th Cir. 1982) ...........................................................14

*Gibson v. R.G. Smith Co.*,
915 F.2d 260 (6th Cir. 1990) ...........................................................16

*Hollingsworth v. Perry*,
588 U.S. 183 (2010)..........................................................................26

*In re Impact Absorbent Techs., Inc.*,
106 F.3d 400 (6th Cir. 1996) .............................................................9

*King v. Wallkill*,
302 F. Supp. 2d 279 (S.D.N.Y. 2004) ..............................................18

*Lillie v. U.S.*,
953 F.2d 1188 (10th Cir. 1992) ........................................................19

*Lopez v. Williams*,
59 Fed. Appx. 307 (10th Cir. 2003)..................................................21

*In re Lott*,
424 F.3d 446 (6th Cir. 2005) .............................................................9

iv

*In re Mechem*,
880 F.2d 872 (6th Cir. 1989) ..................................................................22, 31

*Miller v. Field*,
35 F.3d 1088 (6th Cir. 1994) ............................................................18

*Murphy v. Southern Energy Homes, Inc.*,
No. 2:06-cv-618, 2008 WL 652901 (M.D. Ala. Mar. 6, 2008) .........................18

*In re Perrigo Co.*,
128 F.3d 430 (6th Cir. 1997) .......................................................9, 27

*Price Bros. Co. v. Philadelphia Gear Corp.*,
629 F.2d 444 (6th Cir. 1980) ....................................................14, 15

*Price Bros. Co. v. Philadelphia Gear Corp.*,
649 F.2d 416 (6th Cir. 1981) ............................................................14

*Richardson-Merrell, Inc. v. Koller*,
472 U.S. 424 (1985)..........................................................................31

*Russell Road Food & Beverage, LLC v. Galam*,
No. 2:13-cv-0776, 2014 WL 3845424 (D. Nev. July 31, 2014) .......................17

*In re S.F. & J.F.*,
883 N.E.2d 830 (Ind. Ct. App. 2008) ......................................................17, 21

*Matter of Sandahl*,
980 F.2d 1118 (7th Cir. 1992) ..................................................9, 30

*In re Schrag*,
464 B.R. 909 (D. Or. 2011) ............................................................15

*In re Shared Memory Graphics LLC*,
659 F.3d 1336 (Fed. Cir. 2011) ............................................................21

*Shaw v. Anderson*,
No. CIV-05-1060M, 2006 WL 898165 (W.D. Okla. Apr. 6, 2006)...................13

*Sherrills v. State of Ohio*,
780 F.2d 1023 (6th Cir. 1985) ............................................................16

*Spears v. Fourth Ct. of Appeals*,
  797 S.W.2d 654 (Tex. 1990) .............................................................................13

*State v. McCrary*,
  676 N.W.2d 116 (S.D. 2004).............................................................................15

*Thacker v. Cuyahoga Heights Bd. of Educ.*,
  No. 1:16-cv-2706, 2017 WL 1535998 (N.D. Ohio Apr. 27, 2017)....................17

*In re Thompson*,
  No. 06-12375, 2006 WL 1598112 (11th Cir. June 7, 2006) ........................21, 30

*U.S. v. Barnwell*,
  477 F.3d 844 (6th Cir. 2007) .............................................................................19

*U.S. v. Penn*,
  151 F. Supp. 2d 1322 (D. Utah 2001)................................................................17

*U.S. v. Rasco*,
  No. CR408-100, 2009 WL 2341435 (S.D. Ga. July 29, 2009) ..........................11

*Young v. U.S. Dep't of Agric.*,
  53. F.3d 728, 730 (5th Cir. 1995) ......................................................................18

**Statutes**

28 U.S.C. § 1292(b) .................................................................................................8, 21

O.R.C. § 149.43 *et seq.* ...............................................................................................12

**Rules**

Fed. R. App. P. 21 .........................................................................................................33

Fed. R. App. P. 32 .........................................................................................................33

Fed. R. Civ. P. 46 ..........................................................................................................21

Fed. R. Evid. 614 ..........................................................................................................20

Fed. R. Evid. 706(b).......................................................................................................20

Fed. R. Evid. 803(8).......................................................................................................18

Ohio Professional Conduct Rule 1.11(c) ..........................................................*passim*

**Other Authorities**

ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 97-409
    n.5 (1997) ..................................................................................................30

## PETITION FOR WRIT OF MANDAMUS

Pursuant to 28 U.S.C. § 1651 and Federal Rule of Appellate Procedure 21, Endo Pharmaceuticals Inc. and Endo Health Solutions Inc. (together, "Endo") petition for a writ of mandamus compelling the U.S. District Court for the Northern District of Ohio, Eastern Division, to vacate March 20 and April 8, 2019 orders precluding attorney Carole Rendon—a former United States Attorney—and her firm, BakerHostetler, from defending Endo against claims filed by the City of Cleveland and Cuyahoga County in the *National Prescription Opiate Litigation* multi-district litigation ("MDL").

## INTRODUCTION

This Court's intervention is required to correct a serious and unusual departure from legal and judicial norms that will have irremediable consequences in one of the largest, most complex MDLs in U.S. history. More than a year after the litigation began, the district court disqualified Endo's chosen counsel from two cases, one of which is set for the first MDL trial this fall.

The court did not base its decision on any record evidence. Instead, the court relied exclusively on an unsworn letter from the Department of Justice ("DOJ"), requested *ex parte* by the court itself, which consists entirely of hearsay and does not identify any viable basis for disqualification. The court afforded Endo no notice of the supposed factual basis for the disqualification, much less an

1

opportunity to respond.  Instead, the court proclaimed that it had abandoned "the adversarial process" and disqualified Ms. Rendon and BakerHostetler.

The court's wholesale departure from due process and the law governing disqualification prejudices Endo in ways that cannot be corrected on appeal.  Endo has been deprived of its chosen counsel just months before trial—long recognized as an irreparable injury warranting mandamus relief—and the consequences of the court's indefensible action threaten to ripple across the MDL in ways that cannot be undone on appeal following final judgment.  Only mandamus will suffice.

Accordingly, Endo respectfully requests that the Court grant its petition and vacate the district court's disqualification orders.

## ISSUE PRESENTED

Should a writ of mandamus issue to vacate orders by the district court disqualifying counsel from two critical cases in a complex MDL where the court: abandoned the adversary process and directed the DOJ, an interested government agency, to determine "the key factual question";[1] relied on the unsworn, hearsay conclusions of the DOJ's court-directed, *ex parte* fact-finding without providing notice or an opportunity to respond; had no factual record establishing the elements of Ohio Professional Conduct Rule 1.11(c) (the conduct rule at issue); did not apply any of the elements of Rule 1.11(c); did not satisfy the Sixth Circuit's

---

[1] Hearing, R.1354, PageID #38023-38024.

requirement that disqualification be decided on admissible evidence; adopted the DOJ's conclusions as the basis for disqualification even though they did not satisfy the elements of any rule violation; demonstrated a willful disregard of the federal rules, Judicial Code of Conduct, and due process; and reached a result that will have wide-ranging adverse consequences for former government attorneys and those who hire them.

## FACTS

**Plaintiffs' Motion to Disqualify.**  In January 2019, after over a year of litigation, counsel for four government plaintiffs with claims on an accelerated track—Cleveland, Cuyahoga, Akron, and Summit —moved to disqualify Ms. Rendon and BakerHostetler from defending Endo in those cases.  Motion to Disqualify, R.1241; Motion to Join Disqualification Motion, R.1246.  At the time, all four cases were set for trial later this year, and Cuyahoga and Summit's claims remain set for the first MDL trial in October 2019.  The purported basis for the disqualification was that Ms. Rendon, a former U.S. Attorney for the Northern District of Ohio, violated Ohio Rule of Professional Conduct 1.11(c).

**Rule 1.11(c).**  Rule 1.11(c) prohibits "a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee" from later "represent[ing] a private client whose interests are adverse to that person in a matter in which the

3

information could be used to the material disadvantage of that person." The Rule specifies three conditions that must be satisfied for information to qualify as "confidential government information." First, the information must have been "obtained under governmental authority." Second, "at the time [the] rule is applied, the government [must be] prohibited by law from disclosing [the information] to the public or [have] a legal privilege not to disclose [it]." Third, the information must not be "otherwise available to the public." Rule 1.11(c).

**Record Evidence.** The court held a hearing on plaintiffs' motion on February 11, 2019. Four witnesses testified: Cleveland Police Commander Gary Gingell, Cuyahoga County Medical Examiner Thomas Gilson, Cleveland Police Chief Calvin Williams, and Ms. Rendon.

The evidence did not establish any of the elements of a Rule 1.11(c) violation: no witness identified confidential government information that Ms. Rendon acquired as a government employee and that could be used to plaintiffs' material disadvantage in the case.[2] No witness identified information "obtained under governmental authority," subject to a current legal privilege or other prohibition against disclosure, and "not otherwise available to the public."

---

[2] Commander Gingell and Dr. Gilson submitted declarations in support of plaintiffs' motion. Neither declaration identified any confidential government information in Ms. Rendon's possession. Motion to Disqualify, R.1241. Even on reply, plaintiffs could not correct this shortcoming. Brief in Opposition to Motion to Disqualify, R.1299; Reply in Support of Motion to Disqualify, R.1320.

To the contrary, plaintiffs' witnesses acknowledged that the information on which their motion was based had been voluntarily provided during meetings of the U.S. Attorney's Heroin and Opioid Task Force ("Task Force") in the presence of dozens of people, including, *inter alia*, hospital representatives, physicians and other medical professionals, treatment providers, community organizations, judges, and recovering addicts.  Hearing, R.1354, PageID #37915-37920; 37937-37941; *see also* Reply in Support of Motion to Disqualify, R.1320, PageID #36436 (the Task Force "was the forum where all the knowledge about the opioid crisis was shared").  In fact, members of the press also were present at Task Force meetings. Hearing, R.1354, PageID #37973-37974.  Hartman Dec. Ex. 1, R.1296-13, PageID #35741-35744.[3]  The witnesses admitted that the information they had communicated to Ms. Rendon also had been published on websites;[4] disclosed in a published article,[5] Congressional testimony,[6] or testimony before the Cleveland

---

[3] Endo filed parts of Hartman Declaration Exhibit 1 under seal because the MDL protective order requires all documents designated by a party as "confidential" to be filed under seal.  However, there is no basis for plaintiffs' confidentiality designation.  The sealed portion of Exhibit 1 is a non-substantive Task Force meeting notice sent to over one hundred recipients, public and private, including area news outlets such as WKYC (which was a Task Force member); multiple similar emails were produced by plaintiffs without any designation. *See*, *e.g*., Hartman Dec. Ex. 1, R.1296-13, PageID #35741-35744.  These emails demonstrate the absurdity of plaintiffs' confidentiality claim.

[4] Hearing, R.1354, #37939-37941.

[5] *Id.* at PageID #37932-37933, 37941-37944.

[6] *Id.* at PageID #37946.

City Council which was broadcast on TV20;[7] and/or included in proposed budgets that were public records.[8]  *See also* Hearing, R.1354, PageID #37964-37986 (Rendon testimony).

Throughout the hearing, the court focused its comments and questions almost exclusively on two issues, both of which were wholly irrelevant to Rule 1.11(c): (1) how plaintiffs' witnesses *felt* about Ms. Rendon's representation of Endo; and (2) whether those feelings might discourage future cooperation between local and federal officials.  *See, e.g.*, *id.* at PageID #37905, 37909, 37947, 37954, 38006, 38007, 38022-38023.

**An Extrajudicial Fact-Finding.**  At the conclusion of the hearing, rather than deciding plaintiffs' motion on the record, the court announced that *before* the hearing it had asked the DOJ "to look into [the] question" of "whether or not there was any confidential information shared by . . . Cleveland and/or County officials to Ms. Rendon during the Task Force meetings."  *Id.* at PageID #38024.  The court stated that it would use the DOJ's response "as a basis" for its ruling.  *Id*.  The DOJ is not a party in the opioid litigation, but it previously filed a Statement of Interest to inform the Court "of the substantial costs that the federal government has borne as a result of the opioid epidemic."  R.161, PageID #903.  Immediately after

---

[7] *Id.* at PageID #37959-37960.
[8] *Id.* at PageID #37960.

disclosing its *ex parte* request to the DOJ, the court pronounced the hearing

"adjourned."  Hearing, R.1354, PageID #38025.

**The Court's Disqualification Order.**  On March 20, 2019, the court issued

its disqualification order and disclosed for the first time an *ex parte* letter from the

DOJ, which reported the DOJ's conclusion:

> Cuyahoga County and Cleveland law enforcement officials shared
> nonpublic information with Ms. Rendon and her direct reports as a
> result of the cooperation among federal, state, and local law
> enforcement agencies in combatting the opioid crisis.  This
> information was conveyed primarily in meetings (e.g., "sidebars") and
> communications arising out of the Task Force, and was shared in a
> spirit of confidence and trust.  The information concerned the
> inadequate staffing levels, funding deficiencies, strategies, initiatives,
> operations, and allocation of resources at the county and local levels
> for dealing with the opioid crisis.

Order, R.1458, PageID #41696.  Relying on this conclusory statement, and without

stating that Ms. Rendon violated any rule, the court opined "that it would not be

appropriate for Ms. Rendon to continue to represent Endo in the litigation brought

by the City of Cleveland and Cuyahoga County."  *Id.*

The court acknowledged its ruling was not based on the adversarial process

or the record, but on the DOJ's letter:

> Ordinarily, if a Court feels it necessary to engage in fact finding to
> resolve a particular issue, the adversarial process is the preferred
> method, and the inquiry often culminates in a public hearing where
> the facts are presented.  For fairly obvious reasons, ***I did not want to
> use this method here***….  [T]he Department of Justice is uniquely
> situated to conduct this inquiry.

7

*Id.* at PageID #41698 (emphasis added).

The court deprived Endo of its chosen counsel based on the DOJ's conclusions, without any inquiry into or understanding of the facts underlying the letter.  The court admitted it did not know "the details of the confidential, non-public information" allegedly shared with Ms. Rendon—and did not care, because it saw "no need to know those details to render [its] decision."  *Id.* at PageID #41698-41699.  The court never considered whether due process required that Endo and its counsel be given notice of the factual basis for the court's order and an opportunity to respond.

**The Reconsideration Order.**  Faced with this unjust result caused by the court's departure from fundamental procedural and legal standards, Endo moved for reconsideration, and in the alternative, sought certification for an interlocutory appeal under 28 U.S.C. § 1292(b).  Motion for Reconsideration, R.1495.  Acting before Endo's reply deadline, the court affirmed disqualification and denied Endo's request to certify the court's order for interlocutory appeal.  Reconsideration Order, R.1528.

## REASONS WHY THE WRIT SHOULD ISSUE

This Court has eschewed a "rigid" approach to mandamus, adopting instead a "flexible" approach based on consideration of five factors: (1) whether the petitioner has no adequate means to attain relief, (2) whether potential damage is

"not correctable on appeal," (3) whether the order is "clearly erroneous,"
(4) whether the lower court's error "manifests a persistent disregard of the federal
rules," and (5) whether the error "raises new and important problems, or issues of
law of first impression."  *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997).
This Court has "never required that every element be met."  *In re Lott*, 424 F.3d
446, 449 (6th Cir. 2005).  All five factors strongly favor a writ here.

## A.    The Disqualification Is Indefensible.

The gravity of the court's error is often the most important factor.  *See, e.g.*,
*In re Impact Absorbent Techs., Inc.*, 106 F.3d 400 (6th Cir. 1996) (issuing
mandamus even though the first two factors did not favor the writ; "Although
uncorrectable damage may not result[,] … the clearly erroneous nature of the
district court's order calls for a more immediate remedy."); *Matter of Sandahl*, 980
F.2d 1118, 1121 (7th Cir. 1992) (patently erroneous disqualification order warrants
mandamus even if irreparable harm factor is wanting).  Here, the gravity of the
error is manifest:  the court's unprecedented delegation of its fact-finding
responsibilities to the DOJ, deliberate disregard for the federal rules and due
process, and utter failure to consider the elements of Rule 1.11(c) led to the
disqualification of Endo's chosen counsel from two critically important cases, one
of which has a looming trial date and may affect the course of 1,600 related cases.

### 1. No evidence supports disqualification under the proper legal standard.

Rule 1.11(c) applies only where a former government lawyer is knowingly in possession of "confidential government information" about an adverse party that could be used to the material disadvantage of that party.  Ohio R. Prof. Conduct 1.11(c).  To qualify as "confidential government information," the information (1) must have been "obtained under governmental authority," (2) must be subject to a law or legal privilege barring disclosure by the government "at the time [the] rule is applied," and (3) must not otherwise be available to the public.  *Id.*

Neither the record evidence nor the DOJ Letter (even if properly admissible, which it was not) established *any* of these elements.  This is not a mere disagreement with a district court's determination of disputed facts.  To the contrary, the court completely ignored Rule 1.11(c)'s definition of "confidential government information."

First, plaintiffs failed to show that they conveyed information to Ms. Rendon "under governmental authority."  Governmental authority, as the name suggests, involves information obtained by compulsory process.  "A subpoena or search warrant is the most obvious example of government authority."  1 Geoffrey C. Hazard, Jr. *et al.*, The Law of Lawyering § 16.12 (4th ed. 2015).  Information shared willingly does not fit.  *See, e.g., Davis v. S. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 675-76 (S.D. Fla. 1993) (willingly shared information not "obtained under

10

government authority").  Plaintiffs' witnesses admitted they shared information voluntarily during Task Force meetings.  Hearing, R.1354, PageID #37915-27917; 37941; 37974; 37980.  The DOJ Letter likewise states that any information discussed in these meetings was "as a result of the cooperation among federal, state, and local law enforcement agencies in combatting the opioid crisis"—in other words, it was not provided under compulsion.  Order, R.1458, PageID #41702.

Second, Rule 1.11(c) includes a temporal requirement, and plaintiffs failed to show that any information is currently subject to a law or legal privilege barring its disclosure.  There must be a legal basis barring disclosure "at the time [the] rule is applied."  Rule 1.11(c).  The DOJ Letter purports to answer whether Ms. Rendon received information "not then publicly available," and does not address availability now, "at the time [the] rule is applied."  Moreover, the nature of the Task Force meetings themselves—attended by numerous nongovernmental individuals, including the press—belies that any material would satisfy a privilege, and plaintiffs pointed to none.  The DOJ Letter's vague assertions that some unidentified information was "nonpublic" and "shared in a spirit of confidence and trust" does not identify any valid privilege, much less that the information currently is subject to privilege.  *See, e.g.*, *U.S. v. Rasco*, No. CR408-100, 2009 WL 2341435, at *1-3 (S.D. Ga. July 29, 2009) ("*Rasco II*") (denying

11

disqualification because movant offered "no specific proof" that counsel "possesses currently confidential information").

Third, the city and county information described in the DOJ Letter is presumptively public. *See* O.R.C. § 149.43 *et seq.*  Information about "inadequate staffing levels, funding deficiencies, strategies, initiatives, operations, and allocation of resources at the county and local levels for dealing with the opioid crisis" (DOJ Letter) would not qualify for any exception to disclosure.[9]

Fourth, there can be no "material disadvantage" to plaintiffs because the information at issue is subject to discovery.  *See, e.g.*, *Adams v. Kaech*, No. C-3-92-157, 1993 WL 1367440, at *3 n.3 (S.D. Ohio Dec. 30, 1993) (denying motion to disqualify because movant failed to establish information was unavailable through discovery); *Franklin v. Clark*, 454 F. Supp. 2d 356, 367-68 (D. Md. 2006) (same); *Davis v. S. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 675-76 (S.D. Fla. 1993) (same); *Arroyo v. City of Buffalo*, No. 15-CV-753A(F), 2017 WL 3085835, at *13 (W.D. New York, July 20, 2017) ("generalized statements" were too "vague" and "unspecific" to support disqualification where they "leave one to speculate as to

---

[9] The exception for "confidential law enforcement investigatory records" applies only when release of the records "would create a high probability of disclosure of" (a) the identity of an uncharged suspect or confidential source or witness, (b) information provided by a confidential source or witness that "would reasonably tend to disclose" his or her identity, (c) "[s]pecific confidential investigatory techniques or procedures or specific investigatory work product," or (d) "[i]nformation that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source."  O.R.C. § 149.43(A)(2).

whether any of the 'details' mentioned [involved confidential information] not then otherwise publicly available or which may be acquired . . . through normal pretrial discovery").  All parties to this litigation are entitled to the information described in the DOJ Letter, and so Ms. Rendon's alleged possession of such information cannot be used to anyone's material disadvantage.

Fifth, the DOJ conflated information received by Ms. Rendon with information received by her unnamed "direct reports," and the court failed to distinguish between the two.  DOJ Letter, R.1458-1, PageID #41702.  This failure is significant because Rule 1.11(c) requires "actual knowledge," not imputed knowledge.  Rule 1.11(c), Comment 8; *accord Shaw v. Anderson*, No. CIV-05-1060M, 2006 WL 898165, at *2 (W.D. Okla. Apr. 6, 2006); *Spears v. Fourth Ct. of Appeals*, 797 S.W.2d 654, 657 (Tex. 1990).

Finally, the only evidence in the record that speaks to the specific elements of Rule 1.11(c) comes from Ms. Rendon, whom the court acknowledged is a "highly ethical and professional attorney."  Hearing, R.1354, PageID #37899.  She testified, unequivocally, that she has no confidential government information under Rule 1.11(c).  *Id*. at PageID #37964-37965.

The court disregarded the necessary and specific elements of Rule 1.11(c) and, relying on its own decades-old experience as a federal prosecutor, allowed its concern for the feelings of local officials, and the relationship between those

officials and their federal counterparts, to override the application of the law to the facts before it.  Hearing, R.1354, PageID #38022-38023; Order, R.1458, PageID #41697-41698.  The court never considered whether Ms. Rendon knowingly possessed "confidential government information" within the meaning of Rule 1.11(c).  The evidence was clear she did not.

## 2.    The court abandoned the adversary process.

In its disqualification order, the court made clear that it deliberately had abandoned "the adversarial process" and relied instead on extrajudicial fact-finding the court had commissioned from a government agency.  Order, R.1458, PageID # 41698.

This alone warrants mandamus.  As this Court has long recognized, the "fair and impartial administration of justice demands that facts be determined only upon evidence properly presented on the record."  *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 419 (6th Cir. 1981); *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 710 (6th Cir. 1982) ("factual inquiry" relevant to disqualification must be "conducted in a manner that will allow [for] appellate reviews").

"Unquestionably, it would be impermissible for a trial judge to deliberately set about gathering facts outside the record of a bench trial over which he was to preside."  *Price Bros. Co. v. Philadelphia Gear Corp.*, 629 F.2d 444, 447 (6th Cir.

14

1980).  "It is a basic principle of jurisprudence … that the court may not introduce its own evidence into a proceeding."  *In re Schrag*, 464 B.R. 909, 914 (D. Or. 2011).  "A judge simply cannot be both a judge and [an attorney] searching out facts favorable to [a party] without abandoning his or her judicial neutrality."  *State v. McCrary*, 676 N.W.2d 116, 125 (S.D. 2004).  The court ignored these fundamental principles and deprived Endo of the fair and impartial administration of justice.

### 3.     The court's orders were based on improper *ex parte* communications.

Federal judges are prohibited from "initiat[ing], permit[ting], or consider[ing] ex parte communications or consider[ing] other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers."  Code of Conduct for U.S. Judges ("Judicial Code"), Canon 3(A)(4).  This prohibition extends to "communications from lawyers, law teachers, and others who are not participants in the proceeding."  Canon 3(A)(4) Commentary.

The court's conduct here runs afoul of this rule.  Outside the presence of the parties and their lawyers, the court commissioned the DOJ to conduct an extrajudicial fact-finding, then relied on the DOJ's purported findings to prohibit Endo's counsel from defending it at trial.  *See, e.g.*, *Price Bros.*, 629 F.2d at 447 (Canon 3(A)(4) imposes a "duty to avoid off-the-record contacts that might

influence the outcome of the litigation"); *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990) (same); *Sherrills v. State of Ohio*, 780 F.2d 1023 (6th Cir. 1985) (court's reliance on third-party investigation report not filed with court and to which the parties had no opportunity to respond was improper *ex parte* factual investigation).[10]

Moreover, there were two layers of improper *ex parte* communications: (1) between the court and the DOJ, in which the court delegated its fact-finding responsibilities; and (2) between the DOJ and unidentified third parties. *See* DOJ Letter, R.1458-1, PageID #41702. Just as the court was prohibited from engaging in *ex parte* communications, it had no power to authorize the DOJ to do so.

On reconsideration, in an attempt to justify its conduct, the court cited the Judicial Code for the proposition that a judge may "obtain the written advice of a disinterested expert *on the law*, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received." Reconsideration Order, R.1528, PageID #43761 (citing Canon 3(A)(4)(c)) (emphasis added). Here, the court did not ask for or receive written

---

[10] *See also E.I. du Pont de Nemours & Co. v. Collins*, 432 U.S. 46, 57 (1977) (overruling appellate court in part because of *ex parte* reliance on university professor's reports and memoranda; "the reports relied upon … included a variety of data and economic observations which had not been examined and tested by the traditional methods of the adversary process").

advice on the law; the DOJ was not disinterested; Endo was not given advance

notice; Endo still does not know who was consulted; and Endo had no opportunity

to object and respond to the advance notice (none was given) or to the "advice"

(here, factual conclusions) received.

### 4. The court improperly relied on the DOJ Letter.

Having improperly initiated and received *ex parte* communications, the

court compounded its error by relying exclusively on the DOJ's inadmissible

letter,[11] while denying Endo notice and an opportunity to object and respond.

### a. The DOJ Letter is inadmissible hearsay.

Disqualification motions require admissible evidence. *See Thacker v.*

*Cuyahoga Heights Bd. of Educ.*, No. 1:16-cv-2706, 2017 WL 1535998, at *5 (N.D.

Ohio Apr. 27, 2017) (denying disqualification where no admissible evidence

supported "confidential information" element); *Russell Road Food & Beverage,*

*LLC v. Galam*, No. 2:13-cv-0776, 2014 WL 3845424, at *1 (D. Nev. July 31,

2014) ("A motion to disqualify should be accompanied by declarations and

admissible evidence sufficient to establish the factual predicate on which the

motion depends."); *U.S. v. Penn*, 151 F. Supp. 2d 1322, 1323 (D. Utah 2001) ("A

---

[11] The court's reliance on the DOJ Letter means that its conduct cannot be disregarded as harmless. *See, e.g.*, *Albert v. Rogers*, 57 So. 3d 233, 235 (Fla. Ct. App. 2011) (court's independent investigation "served as the linchpin of the court's evaluation" and thus was "a fundamental denial of due process" requiring reversal and remand before a different judge); *In re S.F. & J.F.*, 883 N.E.2d 830, 836-38 (Ind. Ct. App. 2008) (lower court's reliance on independent investigation "was not harmless error" where court "extensively quoted" investigation report).

17

motion to disqualify counsel is not exempted from the Federal Rules of Evidence."); *Eaton v. Siemens*, No. 2:07-cv-0315, 2007 WL 2318531, at *5 (E.D. Cal. 2007) (same).

The DOJ Letter constitutes inadmissible hearsay upon hearsay. First, the letter itself is an unsworn, out-of-court statement from a DOJ attorney. Second, it purports to summarize other unsworn, unattributed statements to the DOJ. The fact that the letter was written by a government lawyer, on DOJ letterhead, does not change the analysis. *See Ezeagwuna v. Ashcroft*, 325 F.3d 396, 407-08 (3d Cir. 2003) ("[D]ue to the multiple levels of hearsay involved [in State Department letter], we have absolutely no information about what the 'investigation' consisted of, or how the investigation was conducted.").[12]

### b. The court failed to provide Endo notice and an opportunity to respond.

Canon 3(A)(4) of Judicial Code states: "If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should

---

[12] Because the DOJ Letter was prepared for this litigation, the public records exception in Federal Rule of Evidence 803(8) cannot apply. *See, e.g., Murphy v. Southern Energy Homes, Inc.*, No. 2:06-cv-618, 2008 WL 652901, at *1 (M.D. Ala. Mar. 6, 2008) (excluding letter not drafted "for purposes independent of [the] specific litigation"); *Young v. U.S. Dep't of Agric.*, 53. F.3d 728, 730 (5th Cir. 1995) (same); *King v. Wallkill*, 302 F. Supp. 2d 279, 299 (S.D.N.Y. 2004) (same). Moreover, Rule 803(8) cannot overcome the letter's double hearsay problem. *EMK, Inc. v. Fed. Pac. Elect. Co.*, 677 F. Supp. 2d 334, 337 (D. Me. 2010) ("[T]o be admissible under Rule 803(8), [the report must] be based on the observations and knowledge of the person who prepared the report[,]" not "hearsay within hearsay."); *see also Miller v. Field*, 35 F.3d 1088,1091-92 (6th Cir. 1994) (district judge improperly relied on report containing "potentially untrustworthy hearsay").

promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." Constitutional due process demands no less. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-15 (1950).

The court did neither of these things. It received an *ex parte* communication from the DOJ that clearly bore "on the substance of a matter." No law or rule authorized such a communication. Yet, the court provided Endo and its counsel no notice and no opportunity to respond.

The DOJ Letter purported to summarize unidentified "facts" provided by unidentified witnesses. For all anyone knows, the DOJ's sources could have included the very same witnesses who testified for plaintiffs at the disqualification hearing. At a minimum, due process required that Endo and its counsel be given an opportunity to cross-examine the Letter's author; examine any relevant documents; cross-examine any relevant witnesses (including any inconsistencies with any prior testimony on the matter); and present rebuttal evidence. *See, e.g.*, *Lillie v. U.S.*, 953 F.2d 1188, 1191 (10th Cir. 1992) (an inherent problem with off-the-record fact gathering is that "the parties have no opportunity to cross-examine, to object to the introduction of the evidence, or to rebut the evidence"); *U.S. v. Barnwell*, 477 F.3d 844, 853 (6th Cir. 2007) ("The value of a judicial proceeding … is substantially diluted where the process is *ex parte*, because the Court does not

have available the fundamental instrument for judicial judgment: an adversary proceeding in which both parties may participate."); Fed. R. Evid. 614 (even when the court calls a witness, "[a] party is entitled to cross-examine the witness"); Fed. R. Evid. 706(b) (requiring that a court-appointed expert be available for cross-examination by any party); Advisory Committee Notes, Fed. R. Evid. 614 ("The right to cross-examine, with all it implies, is assured.").

### c. Endo did not waive its due process rights.

The court asserted on reconsideration that Endo "waived any objection it might have had" to the court's reliance on the DOJ Letter.  Reconsideration Order, R.1528, PageID #43762.  The court suggested that during the hearing, or shortly thereafter, Endo should have:  (1) objected to the court's "asking DOJ to conduct an investigation," (2) objected to the court's stated intent to "rely[] on the results of that investigation," and (3) warned the court that it "needed to give the parties an opportunity to respond to whatever was reported to the Court, or to conduct discovery of that response."  *Id.*

But Endo had no opportunity to object to the court's request to the DOJ— which already had occurred.  *See* Hearing, R.1354, PageID #38024.  And Endo could not have known that the court would receive the DOJ's response *ex parte*, that the letter would consist entirely of irrelevant hearsay, that the court would rely on it without providing notice and an opportunity to respond, or that the letter

would be the exclusive basis for the court's ruling. Certainly, Endo had no

obligation to remind the court that it needed to observe due process. There was no

waiver—and can be none—in these circumstances. *See* Fed. R. Civ. P. 46

("Failing to object does not prejudice a party who had no opportunity to do so

when the ruling or order was made."); *Lopez v. Williams*, 59 Fed. Appx. 307, 312

(10th Cir. 2003) ("Fundamental error cannot be waived."); *In re S.F. & J.F*, 883

N.E.2d 830, 836-37 (Ind. Ct. App. 2008) (rejecting waiver argument because trial

court's independent investigation "amounted to fundamental error").

## B.  In the Circumstances Presented Here, the Erroneous Disqualification Is Not Correctable Without Mandamus.

The first two *Perrigo* factors for mandamus consideration—whether Endo

has other adequate means to obtain relief and whether damage from the court's

error is "correctable on appeal"—also favor mandamus.

Mandamus is Endo's only recourse. The court denied Endo's request to

certify an interlocutory appeal under 28 U.S.C. § 1292(b). Reconsideration Order,

R.1528, PageID #43764. And the erroneous disqualification of Endo's chosen

counsel creates irreparable harm that a post-trial appeal will not fix. *See, e.g.*, *In re

Shared Memory Graphics LLC*, 659 F.3d 1336, 1340 (Fed. Cir. 2011) (granting

writ; party cannot "meaningfully obtain" relief otherwise: "By the time an appeal

here could be taken, the trial would be over, and SMG would have gone through

the litigation without the counsel of its choice."); *In re Thompson*, No. 06-12375,

21

2006 WL 1598112, at *1 (11th Cir. June 7, 2006) (granting writ; disqualification constitutes irreparable harm when order is "patently erroneous"); *Christensen v. U.S. Dist. Court for Cent. Dist. of Cal.*, 844 F.2d 694, 697 (9th Cir. 1988) (granting writ where party "could not … obtain the desired relief on direct appeal because he seeks to be represented by his chosen counsel *at trial*[,]" such that "the effect of the order is irreversible").[13]

This reasoning applies with particular force where, as here, the litigation is complex, has been ongoing for nearly a year and a half, and trial is imminent.[14] *See*, *e.g.*, *In re American Airlines, Inc*., 972 F.2d 605, 609 (5th Cir. 1992) (granting writ; "[T]he special circumstances of the present dispute … place it within that narrow class of cases warranting mandamus review.… [T]he nature and size of this litigation would seem to preclude effective appellate review upon final judgment."); *In re Barnett*, 97 F.3d 181, 184 (7th Cir. 1996) (granting writ; in a "complex case" it was "unrealistic to suppose that [remedial order] would be vacated by this court on appeal on the ground that some of the plaintiffs had been

---

[13] *See also Cohen v. U.S. Dist. Court for Northern Dist. of Cal*., 586 F.3d 703, 710 (9th Cir. 2009) ("[L]ost choice of counsel cannot be adequately remedied through means other than mandamus and the resultant harm is not correctable on appeal.").

[14] *In re Mechem*, 880 F.2d 872 (6th Cir. 1989) is distinguishable on this basis. There, this Court noted that orders disqualifying counsel could theoretically be challenged after final judgment, and found that, in the circumstances of that case, the fact that disqualification might impose additional costs on the affected lawyer and/or client did not "satisfy the high standard required for mandamus." *Id.* at 874. But this Court expressly noted that if a disqualification amounted to "final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits," that would weigh in favor of mandamus. *Id.*

improperly denied counsel; and if it were vacated … the larger public interest at stake in this lawsuit would be disserved by the consequent delay in the proceeding."); *see also* Federal Appeals Jurisdiction and Practice § 8:5 (2018 ed.) (mandamus more appropriate in "complex cases because waiting for a final judgment, with the prospect that a reversal may occasion retrial, seems to be a waste of judicial resources").

This litigation is exceedingly complex.  One of the largest, most complicated MDLs in history, it involves novel claims against dozens of defendants, including manufacturers of prescription opioid medications, distributors, and pharmacies.  In just a few months' time, the court will hold the first MDL trial, consisting of Cuyahoga and Summit's claims against these defendants, and more than 1600 other plaintiffs are lined up behind them.

The court brushed aside the effect of its disqualification—the denial of Endo's right to the counsel of its choice in unprecedented, high-stakes cases—on the ground that Ms. Rendon and BakerHostetler can still represent Endo in *other* cases brought by other plaintiffs.  Reconsideration Order, R.1528, PageID #43764. By doing so, the court suggested that its error in the Cuyahoga and Cleveland cases was not worth correcting because Endo's rights in other cases remain unaffected.

But Endo has a fundamental right to counsel of its choice *in the Cleveland and Cuyahoga County cases*; allowing Ms. Rendon and BakerHostetler to defend

Endo in other matters does not remedy that wrong.  And the court failed to appreciate the risk of collateral consequences on other cases in this coordinated MDL proceeding.  Indeed, because Ms. Rendon also is co-liaison counsel for the manufacturer defendants,[15] the parties already have had numerous disputes about whether various general litigation activities do, or do not, run afoul of the court's disqualification order.[16]  These collateral effects threaten to taint the impending trial and the entire MDL—involving the claims of well over 1600 plaintiffs against dozens of defendants—in ways that could not be undone through an appeal of the Cleveland and Cuyahoga County cases.[17]

## C.  The Seriousness of the Court's Departure from Legal Norms Supports Mandamus.

The fourth and fifth mandamus factors "examine whether the district judge's order is an oft-repeated error or manifests a persistent disregard of the federal

---

[15] The court appointed Ms. Rendon co-liaison counsel for the manufacturer defendants on December 29, 2017, with no objection from plaintiffs.  Non-Document Order, December 29, 2017.

[16] The disqualification order bars Ms. Rendon and BakerHostetler from "participation in" the Cleveland and Cuyahoga cases, but they are not disqualified "from serving in a leadership capacity" in the MDL as a whole or "participating in any trial involving claims by other cities and counties."  Order, R.1458, PageID #41700.

[17] The court's stated intent to try the claims of Cuyahoga (as to which Ms. Rendon and her firm are disqualified) together with the claims of Summit (as to which they are not disqualified) illustrates the problem.  With uncertainty as to what Ms. Rendon will and will not be permitted to do at trial, Endo must either forgo counsel of its choice in defending Summit's claims (which could not be remedied on appeal) or proceed with Ms. Rendon and risk that she will be restricted in her defense (in which case the error would infect the Summit case too, not just the Cuyahoga case).

24

rules," or "raises new and important problems, or issues of law of first impression." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1088 (6th Cir. 1996). Because "[t]hese factors are somewhat contradictory," a district court order "typically will not satisfy both guidelines." *Id.* Here, however, both factors favor mandamus.

### 1. The court's orders manifest persistent disregard of the federal rules.

The sheer number and severity of the court's errors reflect a troubling pattern that demands this Court's intervention. *See id.* at 1074, 1087-88 (mandamus warranted despite order being "reviewable on direct appeal" because of "severity and frequency" of "district judge's disregard of class action procedures").

For example, instead of denying disqualification when plaintiffs failed to meet their evidentiary burden, the court took up their cause. The court solicited and relied on an inadmissible, unsworn, out-of-court statement, without allowing the parties to review its contents, test its unattributed hearsay, or rebut its conclusions. To justify this impermissible procedure, the court claimed that the DOJ is disinterested when, in fact, it had filed a statement of interest. The court also applied an incorrect definition of "confidential government information," which differed in several obvious, material, and outcome-determinative respects from the correct legal standard.

25

This clearly erroneous process led to a clearly erroneous and prejudicial result: the court disqualified Endo's chosen counsel from two cases, after nearly a year and a half of litigation and just months before trial.  On reconsideration, the court swept aside Endo's assertions of error by citing to an obviously inapplicable exception to the judicial canon prohibiting *ex parte* communications, and without even considering whether it actually had applied the correct legal standard.

The court's errors reflect its broader view that the opioid MDL is a *sui generis* phenomenon to which ordinary rules do not apply.  Indeed, the court opened the disqualification hearing by stating:

> There has never been a case or cases like this in the country.… No one has had to deal with a situation like this that I have ever seen.  I am the first one.  So the rules provide some guidance. The cases provide some guidance, but none of those judges, courts have had to deal with something quite like this.

Hearing, R.1354, PageID #38201-38022.  While this MDL may be unprecedented, the parties are nonetheless entitled to a fair and predictable process under the federal rules and applicable law.  *See Hollingsworth v. Perry*, 558 U.S. 183, 184 (2010) ("Courts enforce the requirement of procedural regularity on others, and must follow those requirements themselves"); *American Med. Sys., Inc*., 75 F.3d at 1087-88 (mandamus appropriate to protect "petitioners' rights to fair process").  Indeed, the enormous stakes involved make protecting the parties' right to fair process all the more crucial.

26

### 2.    Important legal principles are at stake.

The district court's order also "raises new and important problems, or issues

of law of first impression."  *Perrigo*, 128 F.3d at 435.  For one, the court's use of

Canon 3(A)(4)(c) to justify extrajudicial fact-finding by a non-party is

unprecedented and troubling.  Reconsideration Order, R.1528, PageID #43761.

While that Canon permits a court to "obtain the written advice of a disinterested

expert on the law," *id.*, it does not authorize a court to use the federal government

as a surrogate fact-finder.

Further, the scope of the court's disqualification ruling—allowing former

government lawyers to be removed from actions based on vague assertions that

they received unidentified information in a spirit of trust and confidence—

transcends the opioid litigation.  Former government attorneys and their actual and

potential clients need clear guidance on the circumstances in which such attorneys

may be disqualified.

The court's disqualification order in this case has potentially wide-ranging

impact because it casts doubt on whether attorneys and clients can rely on the

objective standards set forth in Rule 1.11(c), and leaves them subject to

disqualification based on an adverse party's subjective belief that unspecified

information was shared in a "spirit of confidence and trust."  In these

circumstances, it is necessary for this Court to provide guidance to attorneys and

27

clients on when Rule 1.11(c) disqualifies former government attorneys, and on how district courts should assess whether the rule has been violated. *See, e.g.*, *In re American Airlines, Inc.*, 972 F.2d 605, 609 (5th Cir. 1992) (issuing writ; "attorneys and clients throughout Texas need the benefit of this Court's guidance on this [disqualification] issue of grave importance"); *In re American Cable Publications, Inc.*, 768 F.2d 1194, 1195 (10th Cir. 1985) (issuing writ; erroneous disqualification would affect not just movant, "but all lawyer-litigants who choose to be represented by their law partners").

As twenty former U.S. Attorneys emphasized in an amicus submission, having clear, predictable guidance on these issues is critically important to "current and former government attorneys, as well as to prospective government attorneys weighing the costs and benefits of public service." Amicus Letter, R.1342-1, PageID #37772. Indeed, the Rules of Professional Conduct—including Rule 1.11(c)—were adopted to replace the Code of Professional Responsibility in part because the Code did not provide "specific guidance to former government lawyers." *See* Ohio R. Prof. Conduct, Comparison to former Ohio Code of Professional Responsibility.

In disqualifying Ms. Rendon, the court created considerable uncertainty as to the proper application of Rule 1.11(c). The court's erroneous disqualification order serves as a warning to government lawyers and their prospective employers

that they may be disqualified solely on amorphous allegations that they purportedly received some unspecified "confidential information" at any one of the innumerable public and other meetings these officials attend.  Further, disqualification would be permitted based on unsworn, untested, double hearsay, submitted *ex parte* by a government agency that fails to specify what information was conveyed to whom.  It also suggests that disqualification may occur if the person imparting the information subjectively believes he or she did so "in a spirit of confidence and trust," regardless of the reasonableness of that belief (the DOJ Letter provides no details from which reasonableness could be evaluated), or whether the recipient understood the information to be confidential by any objective standard, or whether the information remains confidential.

The uncertainty engendered by the court's order affects not only former government attorneys and their private sector employers, but also government agencies attempting to attract talented attorneys.  This concern underlies the balance struck in ethics rules applicable to government attorneys.  *See*, *e.g*., Ohio R. Prof. Conduct 1.11, Cmt. [4] ("The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards."); ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 97-409 n.5 (1997) (unduly restrictive ethics rules "would be a distinct deterrent to lawyers ever to accept employment with the government").  The court's order upsets this balance.

29

These unfortunate consequences of the court's erroneous disqualification order are magnified because of the opioid MDL's high profile.  Mandamus is required to correct the court's errors and to provide appropriate guidance.

**D.    Settled Law Supports Mandamus.**

Courts have not hesitated to use mandamus to vacate disqualification orders in similar circumstances:  where a trial court's reasoning was "clearly inadequate" to support disqualification, *Sandahl*, 980 F.2d at 1121; where a trial court failed to consider all elements of the applicable disciplinary rule, *In re Thompson*, No. 06-12375, 2006 WL 1598112 (11th Cir. June 7, 2006); where a trial court acted without legal basis, *In re Barnett*, 97 F.3d 181 (7th Cir. 1996); or where a trial court "erroneously decided an important principle of law," *In re American Cable Publications, Inc.*, 768 F.2d 1194, 1195 (10th Cir. 1985).

In *Barnett*, for example, the district court disqualified counsel after making comments expressing his belief that the lawyers had abandoned their clients and criticized the judge in the press.  He refused to allow the lawyers to respond to the accusations and failed to make the necessary factual findings to justify disqualification.  97 F.3d at 182-84.  The Seventh Circuit vacated the judge's order because "[t]he judge's recorded remarks, while extensive, disclose no basis in law for the action he took, and we cannot think of any."  *Id.* at 184.

While this Court has not had occasion to issue a writ of mandamus with

30

respect to a disqualification order, its precedents are consistent with the relief sought here.[18]  *See, e.g., Chesher v. Allen*, 122 Fed. Appx. 184, 187 (6th Cir. 2005) (granting writ; order was clearly erroneous where court applied the wrong legal standard and did not address all necessary elements).  This Court and its sister circuits find mandamus appropriate when lower courts step outside the bounds of their discretion.  *See, e.g., In re American Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ("District judges do not always issue correct rulings; however, they are expected to act within the confines of the federal rules."); *In re Bituminous Coal Operators' Ass'n, Inc.*, 949 F.2d 1165, 1168 (D.C. Cir. 1991) (Ginsburg, J.) (granting writ "not because the district judge simply 'abused his discretion,' but because he has no discretion to impose on parties against their will 'a surrogate judge'"); *Edgar v. K.L.*, 93 F.3d 256 (7th Cir. 1996) (granting writ where judge engaged in *ex parte* factual investigation).

The court's disqualification of Ms. Rendon and BakerHostetler was clear error, far outside the bounds of the court's discretion.  It is difficult to imagine a

---

[18] *In re Mechem*, 880 F.2d 872 (6th Cir. 1989), is not to the contrary.  While the Court declined to issue a writ of mandamus based on the particular facts and circumstances presented in that case, it did not hold that the writ would *never* be available to vacate a disqualification order.  If *Mechem* were read to prohibit mandamus relief, it would conflict with *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 435 (1985), which noted that, although orders disqualifying attorneys are not immediately appealable as a matter of right, mandamus remains available "in the exceptional circumstances for which [the writ] was designed."  If ever there were a circumstance where mandamus to redress a clearly erroneous disqualification order were appropriate, this case is it.

fact pattern involving more blatant disregard for the law and the proper role of a judge.  Endo's clear and indisputable right to relief strongly favors mandamus.

## CONCLUSION

The Court should issue a writ of mandamus vacating the disqualification of Ms. Rendon and BakerHostetler.

Respectfully Submitted,

/s/ *John D. Parker*

John D. Parker
Carole S. Rendon
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone:  216.861.7610
Facsimile:   216.861.7420
jparker@bakerlaw.com
crendon@bakerlaw.com

Jonathan L. Stern
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: 202.942.5000
Facsimile: 202.942.5999
jonathan.stern@arnoldporter.com

*Counsel for Petitioner-Defendants*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because it contains 7,634 words, excluding accompanying documents required by Fed. R. App. P. 21(a)(2)(C).

This petition complies with the requirements of Fed. R. App. P. 32(c)(2) and Fed. R. App. P. 32(a) because it has been prepared using Microsoft Word 2016 in Times New Roman, 14-point font.

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2019 the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system.

I further certify that on May 6, 2019 a copy of the foregoing was served via electronic mail and United States First Class Mail upon the following:

Mark Pifko
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Los Angeles, California 91436
(818) 839-2325
(818) 986-9698 (Fax)
mpifko@baronbudd.com

Linda Singer
MOTLEY RICE
401 9th St. NW, Ste 1001
Washington, DC 20004
(202) 386-9626
lsinger@motleyrice.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Flr.
New York, NY 10017
(212) 397-1000
hunter@napolilaw.com

Peter H. Weinberger
Spangenberg, Shibley & Liber
Ste. 1700
1001 Lakeside Avenue, E
Cleveland, OH 44114
216-696-3232
216-696-3924 (Fax)
pweinberger@spanglaw.com

Steven J. Skikos
Skikos Crawford Skikos Joseph LLP
Ste. 2830
1 Sansome Street
San Francisco, CA 94104
415-546-7300
415-546-7301(Fax)
sskikos@skikoscrawford.com

Troy A. Rafferty
Levin Papantonio Thomas Mitchell Rafferty & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
850-435-7163
850-436-6163 (Fax)
trafferty@levinlaw.com

Special Master David R. Cohen
24400 Chagrin Blvd.
Suite 300
Cleveland, OH 44122
216-831-0001
866-357-3535 (Fax)
david@specialmaster.law

I further certify that on May 6, 2019 a copy of the foregoing was served via

electronic mail and courier upon the following:

Hon. Dan Aaron Polster
Carl B. Stokes United States Court House
801 West Superior Avenue, Courtroom 18B
Cleveland, OH 44113-1837
Polster_Chambers@ohnd.uscourts.gov

Dated:  May 6, 2019              */s/ John D. Parker*
                                John D. Parker

## ADDENDUM 1: DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry Number | Description of Entry | Date Document Entered | Page ID # Range |
|---|---|---|---|
| N/A | Docket Sheet | N/A | N/A |
| 24 | Defendants' Joint Motion to Appoint Co-Liaison Counsel | 12/22/2017 | 293-303 |
| N/A | Non-Document Order Granting Defendants' Joint Motion to Appoint Co-Liaison Counsel | 12/29/2017 | N/A |
| 1241 | Plaintiffs' Motion to Disqualify with Exhibits (Filed Under Seal) | 01/10/2019 | N/A (Filed Under Seal) |
| 1246 | Plaintiffs' Summit, Cuyahoga and Akron's Motion to Join Disqualification Motion | 1/14/2019 | 30702-30703 |
| 1305 | Plaintiffs' Motion to Disqualify (Redacted) | 01/28/2019 | 36008-36035 |
| 1299 | Endo's Brief in Opposition to the Motion to Disqualify with Exhibits (Filed Under Seal) | 01/23/2019 | N/A (Filed Under Seal) |
| 1296 | Endo's Brief in Opposition to the Motion to Disqualify with Exhibits (Redacted) | 01/23/2019 | 35655-35749 |
| 1320 | Plaintiffs' Reply in Support of Motion to Disqualify | 01/31/2019 | 36429-36445 |
| 1332 | Endo's Sur-Reply in Opposition to Plaintiffs' Motion to Disqualify with Exhibits | 02/04/2019 | 37005-37028 |

36

| Record Entry Number | Description of Entry | Date Document Entered | Page ID # Range |
|---|---|---|---|
| 1329 | Manufacturer Defendants' Joint Motion for Joinder to Endo's Brief in Opposition to the Motion to Disqualify | 02/01/2019 | 36969-36974 |
| 1336 | Defendants Amerisource Bergen Drug Corp. and McKesson Corp.'s Position Statement Concerning the Motion to Disqualify with Exhibits | 02/04/2019 | 37034-37048 |
| 1346 | Amicus Letter of Former U.S. Attorneys | 02/07/2019 | 37827-37830 |
| 1354 | Transcript of Motion Hearing Held on February 6th, 2019 | 02/11/2019 | 37896-38026 |
| 1458 | Order Granting in part City of Cleveland's Motion to Disqualify with Exhibit | 03/20/2019 | 41690-41703 |
| 1495 | Endo's Motion for Reconsideration, or, in the Alternative, to Certify the Disqualification Order for Interlocutory Appeal under 28 U.S.C. 1292(b) | 03/29/2019 | 42955-42991 |
| 1511 | Plaintiffs' Opposition to Motion for Reconsideration | 04/03/2019 | 43165-43181 |
| 1528 | Order Granting Endo's Motion for Reconsideration, Affirming the Disqualification Order, and Denying Leave to File Interlocutory Appeal | 04/08/2019 | 43759-43764 |

## ADDENDUM 2: OHIO PROFESSIONAL CONDUCT RULE 1.11

Excerpted from Ohio Rules of Professional Conduct, Effective February 1, 2007;
as amended effective May 2, 2017

### RULE 1.11:  SPECIAL CONFLICTS OF INTEREST FOR FORMER AND CURRENT GOVERNMENT OFFICERS AND EMPLOYEES

(a)      A lawyer who has formerly served as a public officer or employee of the government shall comply with both of the following:

(1)      all applicable laws and Rule 1.9(c) regarding conflicts of interest;

(2)      not otherwise represent a client in connection with a matter in which the lawyer participated personally and *substantially* as a public officer or employee, unless the appropriate government agency gives its *informed consent, confirmed in writing*, to the representation.

(b)      When a lawyer is disqualified from representation under division (a), no lawyer in a *firm* with which that lawyer is associated may *knowingly* undertake or continue representation in such a matter unless both of the following apply:

(1)      the disqualified lawyer is timely *screened* from any participation in the matter and is apportioned no part of the fee therefrom;

(2)      *written* notice is given as soon as practicable to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.

(c)      Except as law may otherwise expressly permit, a lawyer having information that the lawyer *knows* is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person.  As used in this rule, the term "confidential government information" means information that has been obtained under governmental authority and that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public.  A *firm* with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is timely *screened* from any participation in the matter and is apportioned no part of the fee therefrom.

(d)      Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee shall comply with both of the following:

(1)      Rules 1.7 and 1.9;

(2)      shall not do either of the following:

(i)      participate in a matter in which the lawyer participated personally and *substantially* while in private practice or nongovernmental

employment, unless the appropriate government agency gives its *informed consent, confirmed in writing*;

(ii)    negotiate for private employment with any person who is involved as a party or as lawyer for a party in a matter in which the lawyer is participating personally and *substantially*, except that a lawyer serving as a law clerk to a judge, other adjudicative officer or arbitrator may negotiate for private employment as permitted by Rule 1.12(b) and subject to the conditions stated in Rule 1.12(b).

(e)    As used in this rule, the term "matter" includes both of the following:

(1)    any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter involving a specific party or parties;

(2)    any other matter covered by the conflict of interest rules of the appropriate government agency.

### Comment

[1]    A lawyer who has served or is currently serving as a public officer or employee is personally subject to the Ohio Rules of Professional Conduct, including the prohibition against concurrent conflicts of interest stated in Rule 1.7 and provisions regarding former client conflicts contained in Rule 1.9(c).  For purposes of Rule 1.9(c), which applies to former government lawyers, the definition of "matter" in division (e) applies.  In addition, such a lawyer may be subject to criminal statutes and other government regulations regarding conflict of interest.  See R.C. Chapters 102. and 2921.  Such statutes and regulations may circumscribe the extent to which and length of time before the government agency may give consent under this rule.  See Rule 1.0(f) for the definition of informed consent.

[2]    Divisions (a)(1), (a)(2) and (d)(1) restate the obligations of an individual lawyer who has served or is currently serving as an officer or employee of the government toward a former government or private client.  Rule 1.10 is not applicable to the conflicts of interest addressed by this rule.  Rather, division (b) sets forth a special imputation rule for former government lawyers that provides for screening and notice.  Because of the special problems raised by imputation within a government agency, division (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers.

[3]    Divisions (a)(2) and (d)(2) apply regardless of whether a lawyer is adverse to a former client and are thus designed not only to protect the former client, but also to prevent a lawyer from exploiting public office for the advantage of another client.  For example, a lawyer who has pursued a claim on behalf of the government may not pursue the same claim on behalf of a later private client after the lawyer has left government service, except when authorized to do so by the government agency under division (a).  Similarly, a lawyer who has pursued a claim

on behalf of a private client may not pursue the claim on behalf of the government, except when authorized to do so by division (d).  As with divisions (a)(1) and (d)(1), Rule 1.10 is not applicable to the conflicts of interest addressed by these paragraphs.

[4]     This rule represents a balancing of interests.  On the one hand, where the successive clients are a government agency and another client, public or private, the risk exists that power or discretion vested in that agency might be used for the special benefit of the other client.  A lawyer should not be in a position where benefit to the other client might affect performance of the lawyer's professional functions on behalf of the government.  Also, unfair advantage could accrue to the other client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service.  On the other hand, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government.  The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards.  Thus a former government lawyer is disqualified only from particular matters in which the lawyer participated personally and substantially.  The provisions for screening and waiver in division (b) are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service.

[5]     When a lawyer has been employed by one government agency and then moves to a second government agency, it may be appropriate to treat that second agency as another client for purposes of this rule, as when a lawyer is employed by a city and subsequently is employed by a federal agency.  However, because the conflict of interest is governed by division (d), the latter agency is not required to screen the lawyer as division (b) requires a law firm to do.  The question of whether two government agencies should be regarded as the same or different clients for conflict of interest purposes is beyond the scope of these rules.  See Rule 1.13, Comment [9].

[6]     Divisions (b) and (c) contemplate a screening arrangement.  See Rule 1.0(k) (requirements for screening procedures).  These paragraphs do not prohibit a lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly relating the lawyer's compensation to the fee in the matter in which the lawyer is disqualified.

[7]     Notice of the screened lawyer's prior representation and that screening procedures have been employed, generally should be given as soon as practicable after the need for screening becomes apparent.  When disclosure is likely to significantly injure the current client, a reasonable delay may be justified.

[8]     Division (c) operates only when the lawyer in question has knowledge of the information, which means actual knowledge; it does not operate with respect to information that merely could be imputed to the lawyer.  See R.C. 102.03(B).

[9]     Divisions (a) and (d) do not prohibit a lawyer from jointly representing a private party and a government agency when doing so is permitted by Rule 1.7 and is not otherwise prohibited by law.

[10]    For purposes of division (e) of this rule, a "matter" may continue in another form. In determining whether two particular matters are the same, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed.

### Comparison to former Ohio Code of Professional Responsibility

Rule 1.11 spells out special conflict of interest rules for lawyers who are current or former government employees.  The movement of lawyers from public service and practice to private practice and involvement in the same or similar issues and controversies requires rules that expressly spell out when a conflict exists that prevents representation or permits such representation if certain conditions are met, including screening where appropriate.  The rule likewise governs the conduct of lawyers moving from private practice into the public sector.  DR 9-101(B) includes only a broad prohibition forbidding a lawyer from accepting private employment in a matter in which he or she had substantial responsibility while a public employee.  This prohibition is based on avoiding the appearance of impropriety and gives no specific guidance to former government lawyers.

### Comparison to ABA Model Rules of Professional Conduct

Rule 1.11 reflects the Model Rule except for minor changes.  The rule makes clear that a lawyer subject to these special rules on conflicts shall comply with all the conditions set forth in Rule 1.11(a), (b), and (d).  Also division (a)(1) requires compliance with all applicable laws and Rule 1.9(c) regarding conflicts of interest.  This includes provisions of the Ohio Ethics Law contained in R.C. Chapters 102. and 2921. as well as the regulations of the Ohio Ethics Commission.  These statutes and regulations include specific definitions of a prohibited conflict of interest and language forbidding the same for present and former government employees.