UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE NATIONAL PRESCRIPTION | ) | |
| OPIATE LITIGATION | ) | |
| RELATES TO ALL CASES | ) | No. 1:17-md-2804 |
| | ) | MDL No. 2804 |
| | ) | Case No. 1:18-OP-46267 |
| | ) | Hon. Dan Aaron Polster |

**MEMORANDUM OF PLAINTIFF CITY OF ST. LOUIS IN RESPONSE TO BRIEF OF AMICI CURIAE PUBLIC HEALTH ADVOCACY ORGANIZATIONS**

The Center for Public Health Law Research at Temple University, ChangeLab Solutions, Health in Justice Action Lab, Network for Public Health Law, Northeastern University's Center for Health Policy and Law, The Public Health Advocacy Institute, and Public Health Law Watch have filed a brief as *amici curiae*, advocating judicial imposition of their desiderata on disposition of any proceeds of a hypothetical global settlement of the national prescription opiate litigation (more commonly referred to as opioid litigation). The City of St. Louis is plaintiff in one of the MDL cases, 1:18-op-46267-DAP, and respectfully submits the following points in response to the public health advocacy organizations (hereinafter *amici* advocacy organizations).

1. The sum and substance of the suggestions of *amici* advocacy organizations is that the democratic legislative process cannot be trusted to make sensible use of any funds distributed to state and local governments through any global settlement of the pending litigation. They point to the use of tobacco litigation settlement distributions in furtherance of government policies unrelated to "public health" as somehow a defect in the tobacco litigation settlement. This view is antithetical to constitutional government. The power to tax and spend is universally reserved to the legislative branch of

government in the United States.  It is a fundamental attribute of American constitutional democracy.  The position of *amici* advocacy organizations seems to be that this Court should substitute its (and *amici's*) judgment for the judgment of the elected representatives of the people as to budget priorities, if settlement is achieved.  The Court should no such thing.

2. Even in the realm of remedying federal constitutional violations, the authority of federal courts to take control of the taxing and spending powers of state and local governments is carefully restricted, in part by virtue of the Eleventh Amendment and in part by inherent limitations on the courts' equitable powers.  Compare *Missouri v. Jenkins,* 495 U.S. 33 (1990) with *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 (1984); cf. *San Antonio Sch. Dist. v. Rodriguez,* 411 U.S. 1 (1973) .  The MDL is not a class action, and it is doubtful that this Court has authority to approve or disapprove a settlement achieved by common consent of plaintiffs and defendants.  Cf. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999).  In any case, the Court should not exercise any authority to review a settlement to arrogate to itself the powers of a super-legislature, designating how and when public funds are to be spent.

3. The judicial creation of a "foundation" to monitor and perhaps supervise the distribution of litigation settlement proceeds is not within the realm of federal judicial power.  As noted, the Court is not a super-legislature, free to enact rules and regulations governing the states and local governments without reference to Congress or the states' legislative bodies.  See *Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. 421 (1952).  The proposal of *amici* advocacy organizations is properly addressed to the legislatures of the state and local government plaintiffs.  The lawsuits pending before this Court seek

damages for past injuries caused by the defendants, damages which consist of the economic harm to state and local governments flowing from defendants' illegal conduct. The issue that *amici* advocacy groups overlook is that any funds realized from a settlement can and will compensate the plaintiffs for the past fiscal impact of defendants' conduct, which caused diversion of public resources to address the results of that conduct.  In other words, a dollar spent in the past on treatment services due to defendants' conduct was a dollar not spent on other pressing public needs, such as infrastructure, pollution control, suppression of violent crime, and the like.  The plaintiffs are in the best position to assess how any settlement funds are to be spent, not advocacy groups (who have their own self-interest) or the courts.

      In conclusion, plaintiff City of St. Louis respectfully submits that the Court--to the extent that any issue of settlement is properly before it--must defer to the judgment of plaintiffs as expressed through their elected representatives, insofar as the financial terms and conditions of any litigation settlement are concerned.

      Respectfully submitted,
JULIAN L. BUSH
CITY COUNSELOR

/s/ Robert H. Dierker
Robert H. Dierker 23671MO
Associate City Counselor
dierkerr@stlouis-mo.gov
J. Brent Dulle
Associate City Counselor
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

Attorneys for City of St. Louis