# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 1:17-md-02804 |
| This document relates to: | Case No. 1:18-op-45749 |
| *The Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corporation, et al.* | Judge Dan Aaron Polster |
| | Magistrate Judge David A. Ruiz |
| Case No. 1:18-op-45749 | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE DAVID A. RUIZ**

I.  **Introduction.**

Manufacturing Defendants, Generic Manufacturing Defendants, Distributor Defendants, and Pharmacy Defendants have separately moved to dismiss claims by Plaintiff, the Blackfeet Tribe of the Blackfeet Indian Reservation. Upon careful consideration of briefing for those motions, on April 1, 2019, Magistrate Judge Ruiz filed a Report and Recommendation ("R&R")[1] to which Defendants now object.[2] For the reasons discussed below, Defendants' objections to the R&R should be overruled.[3]

II. **Argument.**

    A. **Objections Concerning Defendants' General Defenses.**

        1. **Article III Standing Objections.**

Pharmacy Defendants object to the R&R for not evaluating Article III standing.[4] R. 1582, at 3. They specifically bemoan that "the sole link between [Plaintiff's] alleged injuries and any particular distributor's conduct is nothing more than baseless conjecture" that cannot support

---

[1] R. 1500. Unless otherwise specified, all record citations herein cite to the MDL docket for Case No. 1:17-md-2804.

[2] R. 1582 (Pharmacy Defendants' objections); R. 1587 (Generic Manufacturer Defendants' objections); R. 1588 (Distributor Defendants' objections); R. 1590 (Manufacturer Defendants' objections); *see also* R. 1589 (Associated Pharmacies, Inc.'s joinder in Distributor Defendants' objections). Defendants' objections largely rehash arguments made in their motions to dismiss, which have been fully addressed in Plaintiff's omnibus opposition thereto and soundly rejected by Magistrate Judge Ruiz. Because Plaintiff is limited to ten pages in response to all five objections, *see* R. 1500, at 44, Plaintiff necessarily stands on the comprehensive arguments more fully briefed in its opposition to Defendants' motions to dismiss, *see* R. 1017, and here supplements that opposition with brief responses to arguments specifically advanced in Defendants' objections. To the extent that Plaintiff is unable to fully address any portion of Defendants' 45 pages of arguments in this limited response, the Court should not infer any concession by Plaintiff, which stands ready to provide a more detailed rebuttal to any of Defendants' objections upon the Court's request.

Much of the argument raised by Defendants in their motions and objections is similar to that previously ruled upon by this Court in *Summit*, Case No. 1:18-op-45090. *See* R. 1203. Furthermore, Defendants have simultaneously filed multiple motions to dismiss in *Muscogee*, Case No. 1:18-op-45459. Magistrate Judge Ruiz has separately prepared a Report and Recommendation in that case, to which Defendants have also objected.

[3] Plaintiff incorporates and adopts by reference all arguments made by the Muscogee (Creek) Nation in its corresponding opposition to Defendants' objections in Case No. 1:18-op-45459. In an effort to avoid duplicate briefing, Plaintiff also cross-references *Summit* and *Muscogee* briefing herein where appropriate.

[4] Arguments raised in a motion to dismiss but not explicitly addressed in a magistrate judge's recommended disposition of the motion should not raise an inference that the magistrate judge neglected to consider such arguments. Rather, the Court should infer that the magistrate judge fully considered the arguments of both sides and, to the extent that a particular argument is not mentioned, was unpersuaded by it and/or was persuaded by the Plaintiffs' contrary argument.

1

standing.  *Id.*  The Sixth Circuit has held that causation sufficient to satisfy Article III "need not be proximate" or direct.  *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 713 (6th Cir. 2015).[5]  Considering Plaintiff's well-pled causal chain, which has been thoroughly evaluated by Magistrate Judge Ruiz in his evaluation of direct, proximate causation in the *Summit* case, *see* R. 1500, at 31–32, 34 (incorporating analysis from R. 1025, at 79–82), the connection between Defendants' actions and omissions and Plaintiff's injuries is hardly the sort of baseless conjecture that Defendants suggest.

### 2.  Health-Related Cost Recovery Objections.

Magistrate Judge Ruiz dispensed with Manufacturer Defendants' arguments concerning the ability of Plaintiff to recover for health-related costs, which he found "unavailing" in the *Muscogee* case.  R. 1500, at 11 n.13.  Manufacturer Defendants objected to that finding with respect to both the Muscogee and Blackfeet plaintiffs.  R. 1590, at 6–11.[6]  Plaintiff respectfully refers the Court to Part II of the Muscogee Nation's response to Defendants' objections for additional discussion of this issue.

### 3.  Free Public Services Objections.

Manufacturer and Pharmacy Defendants object to the finding that the free public services doctrine does not bar Plaintiff's recovery, arguing that Magistrate Judge Ruiz erred by adopting the reasoning applied in the *Summit* case, and suggesting that the Court should create the municipal cost recovery rule in Montana through reference to its application elsewhere.  R. 1582, at 5–7; R. 1590, at 13.  This objection should fail for two reasons.  First, Pharmacy Defendants specifically suggest adopting the "well-reasoned" opinion in *City of Flagstaff v. Atchinson, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322 (9th Cir. 1983), R. 1582, at 5, but even that case recognizes a key exception to the

---

[5] Pharmacy Defendants' citation to extrajurisdictional caselaw interpreting standing in Connecticut is irrelevant in the face of this binding authority.  *See* R. 1582, at 3 (quoting *City of New Haven v. Purdue Pharma, L.P.*, No. X07HHDCV176086134S, 2019 WL 423990, at *2 (Conn. Super. Ct. Jan. 8, 2019)).

[6] Generic Manufacturers join in this and all objections made by Manufacturing Defendants.  R. 1587, at 9.  To avoid repetitive citations, Plaintiff will omit further citations to these "me-too" objections, which are made without substantive detail by Generic Manufacturers.

2

doctrine's application when a government seeks to abate a public nuisance, *Flagstaff*, 719 F.2d at 325. Second, when looking to other jurisdictions to determine whether to apply the doctrine in Montana, the Court should reference more recent, directly on-point cases, which have *declined* to extend the doctrine, against some of the same defendants based on the same conduct as in this case. *See, e.g., City of Everett v. Purdue Pharma L.P.*, No. C17-209RSM, 2017 WL 4236062, at *7 (W.D. Wash. Sept. 25, 2017); *In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102, at *22 (N.Y. Sup. Ct. June 18, 2018).

Manufacturer Defendants also object to the finding that the free public services doctrine should not apply to ongoing conduct because the legislature has the opportunity to solve ongoing problems. R. 1590, at 12. Unfortunately for Plaintiff, however, the opioid epidemic is a continuing tragedy with no end in sight. *See* Case No. 1:18-op-45749, R. 6, ¶¶ 681–700 (detailing how the opioid crisis has devastated Plaintiff's community). Rather than providing Plaintiff—a sovereign with legislative authority—an opportunity to correct the crisis, its ongoing nature has instead imposed enormous costs the Tribe should be permitted to recoup. Persuasive authority shows that the doctrine should not, and does not, apply to these extraordinary, unanticipated public costs. *See* R. 1017, at 35–36 (citing R. 727, at 38 (collecting cases)).

### 4. Proximate Causation Objections.

Pharmacy Defendants object that Magistrate Judge Ruiz erred by applying the reasoning from *Summit* on proximate causation, rather than by evaluating and applying Montana law. R. 1582, at 4. But Magistrate Judge Ruiz did not fail to consider Montana law. Rather, upon consideration the parties' briefing, he specifically concluded that "[t]he parties have not identified, and the court has not found, Montana authority that would alter [his] conclusion" that here, as in *Summit*, Plaintiff has pled proximate causation. R. 1500, at 34. This is not surprising considering that under both Ohio and Montana law the touchstone for proximate causation is foreseeability, which, according to

3

the R&R's careful and well-reasoned consideration both in this case and in *Summit*, Plaintiff has pled. *See* R. 1017, at 37-39; R. 1500, at 34.[7]

### 5. Generic Manufacturers' Objections.

Generic Manufacturer Defendants object that the R&R erred in allowing Plaintiff's claims against them to go forward and argue that Plaintiff failed to plead its allegations against them with particularity. R. 1587, at 4, 8. However, as explained in the R&R, all Rule 9(b) requires is that the allegations adequately inform Defendants of the nature of the claims against them and the grounds upon which they rest. R. 1500, at 33–34 (citing *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012)). As Magistrate Judge Ruiz correctly ruled, Rule 9(b) does not require that Plaintiff plead specific statements attributable to a specific defendant, generic or otherwise. *Id.*

Generic Manufacturers are subsidiaries and sibling companies of brand-name manufacturers, and Plaintiff has alleged in detail how the entities within each corporate family worked together to promote opioids, including by engaging in unbranded advertising that benefited their generic companies and increased the overall market for all opioids through their misrepresentations. *See* Case No. 1:18-op-45749, R. 6, ¶¶ 45, 47, 64, 74, 197, 198, 319, 412–413, 701–713. This provides Generic Manufacturer Defendants with the requisite notice of the nature of the claims against them. R. 1500, at 34; *see also* R. 1017 at 63–66.

Plaintiff's claims related to Generic Manufacturer Defendants' failure to control the supply chain and prevent diversion do not sound in fraud and are not subject to Rule 9(b)'s heightened pleading standard. *See* Fed. R. Civ. P. 8(a)(2). Magistrate Judge Ruiz correctly held that the Tribe's

---

[7] Manufacturer Defendants summarily object that Plaintiff's claims all "fail as a matter of law because they assert derivative injuries, seek speculative damages, and rely on an attenuated chain of causation," R. 1590, at 14, but again, Magistrate Judge Ruiz's well-reasoned consideration this issue here and in *Summit* demonstrates the opposite. R. 1500, at 34 (incorporating R. 1025, at 79–82). Pharmacy Defendants additionally rehash previously briefed arguments alleging lack of proximate causation. R. 1582, at 3–5. See R. 1017, at 5–11, for Plaintiff's argument that it has adequately pled proximate causation. Pharmacy Defendants' new citation to extrajurisidictional caselaw does not demonstrate why Plaintiff has not pled proximate causation under *Montana* law, as evaluated and applied by Magistrate Judge Ruiz. *See* R. 1582, at 4–5 (citing *New Haven*, 2019 WL 423990; *Floyd v Feygin, M.D.*, No. 507458/17, 2018 WL 6528728 (N.Y. Sup. Ct. Dec. 06, 2018)).

allegations of diversion against all Defendants, including Generic Manufacturers, adequately give them notice of the Tribe's claim.  R. 1500, at 33–34; *see also* R. 1017, at 66–67.[8]

### 6. Pharmacy Dispensing Objections.

Pharmacy Defendants object to the R&R for not addressing whether Plaintiff has pled any claim against them in their retail capacity.  R. 1582, at 2.  As Plaintiff made clear in its omnibus opposition, "Plaintiff does not allege violations of statutes or regulations applicable specifically to retailers who sell opioids."  R. 1017, at 68.  *However*, "Pharmacy Defendants are liable for their role in the supply chain as *retailers* under the same theories as apply to their role as distributors."  *Id.* at 69.[9] The R&R's findings that Plaintiff's distributor-liability claims should not be dismissed apply with equal force to Pharmacy Defendants regardless the stage in the supply chain—wholesale distribution or retail operation—during which they failed to control the supply chain or to implement effective procedures to guard against diversion.  Despite Pharmacy Defendants' baseless protestations to the contrary, there is nothing "speculative or conclusory" about Plaintiff's allegations of liability for that failure simply because it occurred at the retail level.  R. 1582, at 2 (quoting *State ex rel. Jennings v. Purdue Pharma L.P.*, No. CVN18C01223MMJCCLD, 2019 WL 446382, at *11 (Del. Super. Ct. Feb. 4, 2019)); *see* Case No. 1:18-op-45749, R. 6, ¶¶ 494, 541, 591.

---

[8] Generic Manufacturers also contend that the R&R "properly recognizes that false marketing claims—based upon something other than affirmative misrepresentations—against the Generic Manufacturers are preempted."  R. 1587, at 1 (citing R. 1500, at 14–15).  But this misconstrues the R&R's holding, which only preempted claims based on a "narrow theory" concerning the contents of "Dear Doctor" letters that could be sent by Generic Defendants.  *See* R. 1500, at 14–15.  Such letters are a form of labeling, 21 C.F.R. § 202.1(l)(2), and Plaintiff agrees that generic manufacturers cannot communicate warnings and other information not contained in the approved label without prior FDA approval.  However, such letters "could be used by a generic manufacturer to communicate warnings already present in the relevant brand-name labeling" because they "would not imply any difference between the generic and brand-name drugs or otherwise run afoul of FDA's regulatory requirements."  Brief for the United States as Amicus Curiae, *Teva Pharmaceuticals USA, Inc. v. Superior Court of California, Orange County*, 2014 WL 7169712 (U.S.), at *21–22 (Dec. 16, 2014).

[9] Pharmacy Defendants suggest that "Plaintiff may now seek to recant its disavowal" of "dispensing claims," R. 1582, at 2.  To be clear, Plaintiff makes no such recantation, but does maintain its claims against Pharmacy Defendants even in their retail capacity.

5

### B. Objections Concerning Plaintiff's Individual Claims.

#### 1. RICO Objections.

Magistrate Judge Ruiz bifurcated his analysis of Defendants' motions to dismiss Plaintiff's federal RICO claims between arguments that Defendants had previously raised in the *Summit* case[10] and arguments that are novel to the *Muscogee* and *Blackfeet* cases (i.e., that the tribes lack standing because they are not persons). R. 1500, at 9–11. Manufacturer Defendants object to the R&R's conclusions concerning RICO standing, R. 1590, at 15, and Distributor Defendants object to the R&R's reliance on *Summit*, R. 1588, at 1–2.

Concerning Defendants' previously raised arguments, upon full consideration of the voluminous briefing in *Summit*, Magistrate Judge Ruiz found those arguments unpersuasive— opinions that the Court adopted. *See* R. 1500, at 10 (citing R. 1025; R. 1203). Because there is "nothing materially new" in Defendants' arguments now as compared with the arguments made in *Summit*, R. 1500, at 10, the Court should once again adopt Magistrate Judge Ruiz's well-reasoned recommendations that Plaintiff's Federal RICO claims should not be dismissed. As to both the novel and the prior arguments, Magistrate Judge Ruiz indicated that he had addressed these issues in the *Muscogee Nation* action and found them unpersuasive—an opinion that Defendants' *Blackfeet* briefing had not changed. *Id.* at 10–11. Plaintiff respectfully refers the Court to Part I of the Muscogee Nation's response to Defendants' objections for additional discussion of these issues.

#### 2. Public Nuisance Objections.

First, Distributor Defendants object that the R&R incorrectly permitted Plaintiff to maintain an absolute nuisance claim "even though Distributors distribute controlled substances within a regulatory scheme subject to express statutory authorization." R. 1588, at 2. This argument has been previously briefed and convincingly denied by Magistrate Judge Ruiz because Distributors'

---

[10] These arguments include that Plaintiff failed to plead standing, causation, the existence of an enterprise, and predicate acts, and also failed to satisfy Rule 9(b).

6

alleged conduct is not statutorily authorized.  *See* R. 1500, at 27.  Defendants now put a new spin on their argument, objecting to Magistrate Judge Ruiz's alleged "circular reasoning" and contending that "an activity or condition can be an absolute nuisance *only* if it is a nuisance even when performed or maintained without fault" but that Plaintiff has pled only fault-based nuisance claims. R. 1588, at 2–3 (citing *Barnes v. City of Thompson Falls*, 979 P.2d 1275, 1278 (Mont. 1999)) (emphasis added).  Defendants are incorrect.  *Barnes* refers to 66 C.J.S. Nuisances § 3, which explains that an absolute nuisance can exist *even* if—not *only* if—it is a nuisance even when performed or maintained without fault.  Plaintiff does not need to show Distributor Defendants' *lack* of fault to plead absolute nuisance.

Second, Distributor Defendants object that the R&R incorrectly "concludes that there is public right to be free from the 'the misuse, abuse, and over-prescription of opioids.'" R. 1588, at 3 (quoting Case No. 1:18-op-45749, R. 6, ¶ 2).  But this objection misconstrues the right correctly recognized by Magistrate Judge Ruiz; at issue is not a *private* right to be free of misuse, abuse, or over-prescription, but rather the *public* right to be free of the *consequences* of that misuse, abuse, or over-prescription.  This Court should adopt the R&R's well-reasoned finding that Plaintiff "plausibly pleads a public right to be free of those consequences." R. 1500, at 30.

Finally, Manufacturer and Distributor Defendants object that the R&R incorrectly permitted Plaintiff to maintain nuisance claims due to misapplication of the *Erie* doctrine and the resulting erroneous conclusion that Plaintiff can, and properly did, plead products-related nuisance claims unrelated to real property rights.  R. 1588, at 5–7; R. 1590, at 1–6.  These objections are unpersuasive.  As an initial matter, Plaintiff has fully briefed why its properly pled nuisance claims are not covert product-liability claims and do not require interference with real property rights, and respectfully refers the Court to those arguments. R. 1017, at 81–86.  Further, concerning *Erie*, Magistrate Judge Ruiz engaged in a thorough analysis of "the plain language" of Montana's public nuisance statute, "Montana decisional law concluding that the statutory definition of nuisance is not

7

limited, the Montana trial court's *State v. Phillip Morris* decision, California law to which Montana courts look for guidance, and decisions from other jurisdictions based on claims analogous to those pled by Plaintiff." R. 1500, at 26. Those careful and well-reasoned considerations are worthy of adoption.

### 3. Negligence Objections.

First, Manufacturer and Distributor Defendants object that they do not owe Plaintiff a duty of care. R. 1588, at 7–8; R. 1590, at 14. Second, Distributor Defendants object that they did not breach any duty. R. 1588, at 8. Third, Distributor Defendants object that Plaintiff did not adequately allege negligent misrepresentation. *Id.* at 8–9. Finally, Manufacturer Defendants object that the R&R did not sufficiently address negligence per se. R. 1590, at 14–15. The R&R correctly decided all these issues and the Court should adopt its findings on these claims.

Defendants continue to assert their oft-rejected argument that they owed no duty to Plaintiff. *See* R. 1203, at 33–35. Defendants' contention that they have no duty because of the intervening acts of others is contrary to Montana law and misstates the issue here. R. 1588, at 8; R. 1590, at 14. Whether a party owes a duty to another depends on whether the negligent act was foreseeable, and the Montana Supreme Court repeatedly has recognized that foreseeability is a fact question even if the defendant alleges that the acts of a third party constitute an intervening superseding cause. *See* R. 1017, at 91–93 and cases cited therein. Moreover, Plaintiff seeks to hold Defendants liable not for others' actions but for *their own conduct*. Case No. 1:18-op-45749, R. 6, ¶¶ 481, 498–52, 586–635, 981, 984, 992, 994, 997, 1020. Distributor Defendants attempt to excuse their actions by claiming that any duty they have to report suspicious orders does not run to the Tribe and by blaming the Manufacturer Defendants for actions that increased quotas for prescription opioids. R. 1588, at 7–8. But as the R&R correctly ruled, Defendants have cited to no Montana authority that supports their arguments. Distributors need not have a special "relationship" with Plaintiff for there to be a duty of care and the Tribe has alleged with great

8

specificity how the harms it suffered were foreseeable to Distributors. R. 1500 at 34; s*ee also* R. 1017, at 94; Case No. 1:18-op-45749, R. 6, ¶¶ 481, 498–572.

Distributor Defendants' argument that Plaintiff has not plausibly alleged that they breached their duty should be rejected.  The R&R cites to numerous allegations of Distributors' breaches.  R. 1500, at 34–35.  There is no requirement to identify specific suspicious orders at the pleading stage.

The Court should also uphold the R&R's ruling that Plaintiff has adequately pled negligent misrepresentation.  R. 1500, at 35–38.  Distributor Defendants contend that the Complaint fails to identify specific false statements they made.  R. 1588, at 8.  But the R&R identifies a multitude of Distributors' false statements that they were complying with their anti–diversion responsibilities and working with law enforcement to curb the epidemic.  R. 1500, at 37–38.[11]

Finally, the Court should reject Manufacturer Defendants' argument that Plaintiff has not adequately stated a claim for negligence per se.  R. 1590, at 14–15.  Contrary to these Defendants' contention, it is well established that the predicate statutes do not need to give rise to a private cause of action.  *See* R. 1017 at 99–102 and cases cited therein.  Moreover, the predicate federal and state statutes cited by Plaintiff were intended to protect the public at large, which includes Plaintiff, against the types of injuries asserted.  *Id.* at 102; *see also* Case No. 1:18-op-45749, R. 6, ¶¶ 1009–10, 1021–22.

### 4. Unjust Enrichment Objections.

Objecting to the R&R's finding that Plaintiff's unjust enrichment claim is well pled, Manufacturer, Distributor, and Pharmacy Defendants simply rehash arguments previously briefed, with particular emphasis on their reassertions that Montana law does not recognize Plaintiff's externality theory.  R. 1582, at 7–8; R. 1588, at 9–10; R. 1590, at 15.  But Plaintiff has demonstrated

---

[11] Distributors imply that *Osterman v. Sears, Roebuck & Co.,* 80 P.3d 435, 443 (Mont. 2003) requires that a representation be made *to the Plaintiff*. R. 1500, at 8. *Osterman* contains no such requirement; the plaintiff's claims there were dismissed on summary judgment because there was no evidence that defendants had made *any* false representation. *Osterman*, 80 P.3d at 442–43.

that Defendants' externalization and imposition of the costs resulting from its opioid business onto Plaintiff *does* constitute a benefit to Defendants under Montana law. R. 1017, at 109–110.[12] When evaluating similar legal standards, factual allegations, and defendant objections in *Summit*, "the court determined that the plaintiffs had stated a facially plausible claim for unjust enrichment." R. 1500, at 41 (citing R. 1203, at 36–38). Because nothing in Montana law compels a different conclusion here, *id.*, the Court should overrule Defendants' unjust enrichment objections.[13]

### 5. Civil Conspiracy Objections.

Objecting to the R&R's finding that Plaintiff's civil conspiracy claim is well pled, Distributor and Pharmacy Defendants again rehash arguments previously briefed in their motions to dismiss that Plaintiff has failed to plead facts to show a meeting of the minds or an underlying unlawful act, R. 1582, at 8–10; R. 1588, at 10, and Distributor Defendants further rehash arguments on proximate causation, R. 1588, at 10. When evaluating similar legal standards, factual allegations, and defendant objections in *Summit*, "the court concluded that the plaintiffs therein had plausibly pleaded . . . a claim" for civil conspiracy. R. 1500, at 42 (citing R. 1025, at 95–98). Because nothing in Montana law compels a different conclusion here, *id.* at 42 & n.34, the Court should overrule Defendants' civil conspiracy objections.[14]

## III. Conclusion.

For the foregoing reasons, Defendants' objections to the R&R should be overruled. Further, because no Defendant has objected to Magistrate Judge Ruiz's recommendations concerning statutes of limitation or preemption, any of Defendants' arguments in their motions to

---

[12] Pharmacy Defendants' citation to extrajurisdictional caselaw that does not concern a similar externality theory is inapposite. *See* R. 1582, at 8 (citing *Floyd*, 2018 WL 6528728).

[13] See R. 1017, at 109–12 for additional argument that Plaintiff has adequately pled all elements of unjust enrichment.

[14] As they have done throughout their oppositions, Defendants once again complain about the R&R's brevity and reference to *Summit*. R. 1582, at 8–9. But it is those very attributes that assist the Court—and the parties—by helping to ensure uniformity of decisions and to avoid duplicative briefing.

dismiss that run contrary to those recommendations have been conceded.[15]  Therefore, the Court should adopt the Report and Recommendation in full.

Dated: May 9, 2019                              Respectfully submitted:

                                                /s/ Archie Lamb

                                                BLACKFEET TRIBE OF THE BLACKFEET
                                                INDIAN RESERVATION, Plaintiff

                                                Archie C. Lamb
                                                LEVIN, PAPANTONIO, THOMAS,
                                                MITCHELL, RAFFERTY & PROCTOR, P.A.
                                                316 S. Baylen Street, Suite 600
                                                Pensacola, FL 32502-5996
                                                Tel.: 850-435-7000
                                                Fax: 850-436-6068
                                                alamb@levinlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

                                                /s/ Archie Lamb
                                                Archie C. Lamb
                                                *Counsel for Plaintiff*

---

[15] *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.").

11