**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This Document Relates to:<br><br>Track One Cases | **MDL 2804**<br><br>**Case No. 1:17-md-2804**<br><br>**Judge Dan Aaron Polster** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DR. JOHN N. KAPOOR'S MOTION TO QUASH SUBPOENA AND TO STAY ANY FUTURE SUBPOENA PENDING RESOLUTION OF CRIMINAL CASE**

Dr. John N. Kapoor, pursuant to Rule 45(c)(3) of the Federal Rules of Civil Procedure and this Court's inherent authority to stay aspects of matters before it, respectfully requests that this Court quash Plaintiffs' subpoena for documents and deposition testimony, and stay discovery as to Dr. Kapoor until the conclusion of his parallel criminal prosecution, including through sentencing and the resolution of post-trial motions. The current deposition notice, served on May 9, seeks the production of documents by May 27 and Dr. Kapoor's testimony on June 6. Dr. Kapoor is filing this motion and objections to the document demands today by agreement of the parties.

Dr. Kapoor is a former member of the Board of Directors and served, briefly, as interim CEO of Defendant Insys Therapeutics, Inc. ("Insys"). On May 2, a federal jury in the District of Massachusetts found Dr. Kapoor guilty of a single count of racketeering conspiracy related to his tenure at Insys. *See United States v. Babich* et al., No. 1:16-cr-10343-ADB (D. Mass.) (Dkt. No.

1

841). Post-trial motions in that matter are due to be filed by June 6, 2019, and Dr. Kapoor's sentencing is scheduled for September 18, 2019.

Dr. Kapoor's deposition and any discovery as to him should be stayed until he has been sentenced and any post-trial motions are resolved. Dr. Kapoor has no unique, non-repetitive knowledge of any particular facts related to the above-captioned multi-district litigation that are not otherwise available to Plaintiffs through less burdensome means. Moreover, responding to Plaintiffs' subpoena raises Fifth Amendment concerns for Dr. Kapoor that are not present for other witnesses who have more direct knowledge, many of whom have already pled guilty or have a cooperation agreement with the Government. Dr. Kapoor accordingly moves to quash Plaintiffs' subpoena because it subjects him to an undue burden, in violation of Fed. R. Civ. P. 45(d)(3)(iv), and to stay discovery as to him through the conclusion of the criminal case against him.[1]

## I. BACKGROUND

Dr. Kapoor is Insys's founder and served on its Board of Directors until his arrest in 2017. Dr. Kapoor also served as interim CEO of Insys for approximately 14 months from November 2015 to January 2017. Insys is a publicly-traded, multi-million-dollar company.

In 2016, the U.S. Attorney's Office for the District of Massachusetts charged several former Insys executives and employees with racketeering conspiracy. In October 2017, Dr. Kapoor was added in a Superseding Indictment, which was again superseded in September 2018 by a Second Superseding Indictment ("Indictment," attached as Exhibit 2). The Indictment alleged that Insys employees ran the company as a racketeering enterprise. Indictment at ¶ 1. The charges

---

[1] Because Dr. Kapoor is named as a defendant in certain non-Track One cases that are a part of this MDL, he believes this Court is the proper forum for this motion. To the extent the Court is of the view that the District of Arizona, where compliance with the subpoena is requested, is the appropriate forum under Rule 45, Dr. Kapoor will promptly file this Motion in that district.

focused principally on two separate allegedly fraudulent schemes.  First, the Indictment alleged that the enterprise bribed doctors to prescribe Insys's opioid product, Subsys, through the payments of bribes and kickbacks, largely through a fraudulent speaker program.  *Id.* at ¶¶ 46-52.  Second, it alleged that due to difficulties in getting the drug reimbursed, Insys developed a reimbursement center that made fraudulent misrepresentations to insurers about patients.  *Id.* at ¶¶ 63-70.

In December 2018, shortly before the criminal trial was scheduled to begin, Plaintiffs served Dr. Kapoor with a subpoena for deposition testimony and documents.  *See* Subpoena to Dr. John Kapoor ("Subpoena," attached as Exhibit 3).  On the joint motion of Plaintiffs and Insys, the Court stayed the deposition of Dr. Kapoor and his co-defendants until after "the adjudication of DOJ's criminal action."  *See* Order (Dkt. No. 1229) (granting Supplemental Joint Mot. (Dkt. No. 1223)).[2]

Dr. Kapoor's criminal trial began on January 28, 2019.  Before trial, two former Insys executives pled guilty and agreed to testify for the prosecution.  Those executives—Dr. Kapoor's predecessor as CEO, Michael Babich, and former Vice President of Sales Alec Burlakoff, testified for approximately three weeks combined.  Their testimony encompassed every aspect of Insys's alleged scheme and conduct, ranging from broad strategic decisions to the minutiae of individual alleged bribe payments.  Matthew Napoletano, Insys's former Vice President of Marketing, also testified about the same matters for approximately one week pursuant to an immunity agreement.[3]

---

[2] The Court previously had granted a joint motion by Plaintiffs and Insys to allow other Insys related witnesses to be deposed following the adjudication of the criminal action.  *See* Order (Dkt. No. 1184) (granting Dkt. No. 1180).

[3] Numerous other Insys employees testified in great detail pursuant to an immunity or cooperation agreement.  These cooperators included Liz Gurrieri, who ran the Insys Reimbursement Center, which the government—and Plaintiffs—allege was the vehicle for much of the supposed fraud.

On May 2, 2019, after 15 days of deliberations, the jury returned a verdict, finding Dr. Kapoor and his codefendants guilty of the racketeering conspiracy charge. Dr. Kapoor maintains his innocence and has filed a motion for judgment of acquittal, which remains pending. During a hearing on that motion, the trial judge remarked that parts of the government's case were "pretty darn thin." Aaron Leibowitz, *Insys Judge Says Part of Gov't Racketeering Case Is 'Thin'*, LAW360 (April 3, 2019), *at* https://www.law360.com/articles/1146023 (hereinafter "Leibowitz"). The deadline for Dr. Kapoor to file post-trial motions in the criminal case is June 6, 2019; his sentencing has been scheduled for September 28, 2019. *See United States v. Babich* et al., No. 1:16-cr-10343-ADB (D. Mass.) (Dkt. Nos. 851, 852).

On May 14, 2019, Plaintiffs re-noticed Dr. Kapoor's deposition for June 6, 2019, the same day Dr. Kapoor's post-trial motions are due to be filed. *See* Am. Notice of Depo. (attached as Exhibit 4).

The complaints filed against Insys in the MDL are largely the same. They mirror the indictment in the District of Massachusetts, alleging the same two avenues of misconduct: a nationwide scheme to bribe prescribers into writing more prescriptions through a supposedly fraudulent speaker program, and a pattern of misrepresentations by employees of Insys to insurers to induce the insurers to pay for Subsys. *See, e.g.*, Third Am. Compl. of County of Cuyahoga, Ohio at ¶¶ 455-59, 463-68 (Dkt. No. 1631).

## II. ARGUMENT

### a. Legal Standards

Both a motion to quash and to stay discovery pending the resolution of a parallel criminal case require the Court to weigh the burden on the subject of the discovery against any prejudice to the opposing party. Based on these factors, the Subpoena should be quashed and the Court should

stay Dr. Kapoor's deposition through sentencing and the resolution of post-trial motions in the criminal matter.

### i. Motion to Quash

Under Rule 45 of the Federal Rules of Civil Procedure, a court must quash a subpoena that, among other things, fails to allow a reasonable time to comply, requires disclosure of privileged or other protected matter, or subjects a person to undue burden. Fed. R. Civ. P. (c)(3)(A)(i), (iii) and (iv). The party issuing a subpoena must take reasonable steps to avoid imposing an undue burden on a person subject to the subpoena. *Id.* at (c)(1).

When evaluating a motion to quash, a court considers "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-MC-13, 2008 WL 440458, at *3 (N.D. Ohio Feb. 13, 2008); *see also Kacmarik v. Mitchell*, No. 1:15CV2062, 2017 WL 131582, at *5 (N.D. Ohio Jan. 13, 2017) (applying *Recycled Paper* standard); *Pitzer v. Cinmar*, LLC, No. 1:16 MC 64, 2016 WL 7325158, at *1 (N.D. Ohio Dec. 16, 2016) (same).

### ii. Motion to Stay

"Simultaneous criminal and civil cases involving the same or closely related facts may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings." *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007). In determining whether relief is appropriate, the Court should weigh the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the

> public interest. In addition to those factors, district courts should consider the extent to which the defendant's fifth amendment rights are implicated.

*F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014).  "[T]he extent to which the issues in the criminal case overlap with those in the civil case, is regarded as 'the most important factor.'" *Fleming*, 498 F. Supp. 2d at 1039.

### b. Deposing Dr. Kapoor before the conclusion of the parallel criminal case will place an undue burden on him and Plaintiffs will suffer no prejudice from a stay.

Federal case law governing both motions to quash and motions to stay supports staying Dr. Kapoor's deposition and other discovery until after sentencing in the parallel criminal matter.  This is because 1) the direct overlap between the matters at issue in the MDL and the criminal prosecution of Dr. Kapoor unduly burdens him by forcing him to choose between defending himself in civil actions and invoking his Fifth Amendment rights; 2) Plaintiffs will not be harmed by such an outcome because of the number of other Insys-related witnesses who have been and will be testifying; and 3) neither this MDL, the public, nor the fair administration of justice will be harmed or slowed by such a ruling.  Indeed, a Northern District of Illinois judge recently faced with a similar question weighed these considerations and quashed a subpoena seeking Dr. Kapoor's deposition testimony.  Order of May 17, 2019, *Hemmings v. Insys Therapeutics, Inc.*, No. 1:18-cv-02036 (N.D. Ill.) (Dkt. No. 71) (quashing subpoena after weighing Dr. Kapoor's Fifth Amendment protections against the likelihood that plaintiff would be assisted by Dr. Kapoor's deposition).

### i. The burden a deposition or other discovery would place on Dr. Kapoor's Fifth Amendment rights weighs strongly in favor of quashing this subpoena and granting a stay.

In considering a motion to stay proceedings, "[d]istrict courts should consider the extent to which the defendant's Fifth Amendment rights are implicated." *E.M.A. Nationwide, Inc.*, 767 F.3d at 627.  Dr. Kapoor's Fifth Amendment rights would be directly and unquestionably implicated by

6

permitting his deposition and other discovery to proceed against him.  Should he be called upon to give testimony in this matter, Dr. Kapoor will be forced to choose between waiving his Fifth Amendment privilege and giving testimony that potentially could be used against him at sentencing or in response to his post-trial motions, or asserting the privilege and subjecting himself to adverse inferences in both this litigation and other, similar cases.  *Cf. United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2d Cir. 1995) (articulating the challenge for defendants in Dr. Kapoor's position).  Here, that danger is particularly present because there is direct and substantial overlap between the MDL litigation and the criminal proceeding—the "most important factor" in the stay analysis.  *Fleming*, 498 F. Supp. 2d at 1039 ("the extent to which the issues in the criminal case overlap with those in the civil case, is regarded as 'the most important factor'").  Indeed, many of the complaints in this MDL seem to be heavily lifted from the Indictment (or a prior version of it).[4]

This direct overlap is exacerbated by the fact that Dr. Kapoor was charged with a racketeering conspiracy in which the alleged criminal enterprise was the entire company.  Such a theory means Dr. Kapoor arguably can be held culpable not only for his own conduct, but

---

[4] *Compare, e.g.*, Third Amended Complaint of County of Cuyahoga, Ohio at ¶ 459 (Dkt. No. 1631) ("In order to increase approvals, Insys created a prior authorization unit, called the Insys Reimbursement Center ('IRC'), to obtain approval for Subsys reimbursements. This unit employed a number of fraudulent and misleading tactics to secure reimbursements, including falsifying medical histories of patients, falsely claiming that patients had cancer, and providing misleading information to insurers and payors regarding patients' diagnoses and medical conditions."), *with United States v. Babich, et. al.*, No. 16-cr-10343, Second Superseding Indictment at ¶ 64 ("To increase the rate of payment authorizations for Subsys prescriptions, KAPOOR, BABICH, GURRY, and co-conspirators known and unknown to the Grand Jury, created and operated a special unit within Insys (referred to herein as the 'Insys Reimbursement Center') that was dedicated to obtaining prior authorization of Subsys prescriptions directly from insurers . . . Insys Reimbursement Center employees provided insurers with false and misleading representations about patient diagnoses, including the type of pain being treated and the patients' prior course of treatment with other medications, in order to secure payment authorizations.").

potentially even for Insys's broader conduct.  As such, the answer to almost any question about Insys's alleged misconduct, even if such misconduct was not committed by or known to him, would potentially implicate his Fifth Amendment rights.  *See, e.g.*, *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973).  The procedural posture of the criminal matter also weighs in favor of granting this relief.  *See E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (Courts should consider "the status of the case, including whether the defendants have been indicted.").  Courts generally view this factor on a spectrum, with pre-indictment cases meriting the least protection and post-indictment but pre-trial cases meriting the most protection.  *See id.* (relief "most appropriate where a party to the civil case has already been indicted for the same conduct…courts generally do not stay proceedings in the absence of an indictment.").  Post-sentencing, the need for protection again lessens.  *See, e.g.*, *Bd. of Cty. Comm'rs of Cty. of Adams v. Asay*, No. 11-CV-02238-PAB-KLM, 2012 WL 6107949, at *2 (D. Colo. Dec. 10, 2012) ("[A] stay on civil discovery in parallel proceedings is disfavored after a defendant has been tried, convicted and sentenced."); *but see Chartis Prop. Cas. Co. v. Huguely*, No. CIV.A. DKC 13-1479, 2013 WL 5634266, at *3 (D. Md. Oct. 15, 2013) (granting post-sentencing stay when appellate court accepted multiple issues for appeal).

Dr. Kapoor is post-conviction but pre-sentencing, and the procedural posture of the parallel criminal case thus still favors a stay.  This is particularly true when his Rule 29 motion for a judgment of acquittal remains pending, and the trial judge has stated in open court that certain aspects of the government's case are "pretty darn thin."  *See* Leibowitz, *supra*.  And post-trial motions under Rule 33 are not even due until June 6, 2019, the very day Plaintiffs seek to depose Dr. Kapoor.  Where Dr. Kapoor has not yet been sentenced and because the judge who presided over the criminal trial has given clear indications that there remain difficult, open issues, a stay of his deposition and discovery against him is appropriate.

8

In sum, the direct overlap between Dr. Kapoor's criminal case and the matters regarding which Plaintiffs are seeking a deposition and the procedural posture of the criminal case weigh heavily in favor of protecting Dr. Kapoor's Fifth Amendment rights and preventing him from being deposed before the conclusion of the parallel criminal matter.

> ii. **Plaintiffs will not be harmed by a stay because any information Dr. Kapoor possesses is readily available through the deposition of other witnesses with more direct knowledge.**

While Dr. Kapoor could suffer significant prejudice if his deposition and other discovery against him is allowed to proceed, Plaintiffs will not be harmed by delaying Dr. Kapoor's deposition until after sentencing. *See E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (courts should consider "the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay"). Insofar as Plaintiffs are seeking information concerning Insys's alleged practices, Dr. Kapoor—a former high-ranking corporate executive—is far less likely to have relevant information than many of his former subordinates at Insys who directly engaged in the supposed misconduct.

Indeed, Plaintiffs have the opportunity to depose nearly every person who ever worked for Insys without raising the same type of Fifth Amendment concerns. This includes individuals at every level of the company, from sales and call center representatives, to middle managers and multiple members of the senior executive team who Kapoor supposedly communicated with regarding the alleged conduct. These individuals include Insys's former CEO, Michael Babich, who—given his testimony at the criminal trial—either would not or likely would not be able to invoke his Fifth Amendment privilege in response to questioning. As such, there are "other viable means to obtain the same evidence," and Plaintiffs would suffer little or no prejudice should Dr. Kapoor's deposition be stayed. *See Recycled Paper* 2008 WL 440458, at *3. Further, the "means" available for Plaintiffs to obtain the same evidence they are seeking from Dr. Kapoor—depositions

9

of employees who, unlike Dr. Kapoor, worked solely for Insys—are depositions Plaintiffs either have already taken or are going to take whether or not they are permitted to depose Dr. Kapoor. Thus, not only are there other viable alternatives to obtaining the same evidence, but these alternatives pose no inconvenience for Plaintiffs.

The information sought from Dr. Kapoor, moreover, is highly unlikely to be "crucial to [Plaintiffs'] case." *Recycled Paper* 2008 WL 440458, at *3. First, as outlined above, Dr. Kapoor is wholly unlikely to possess information that Plaintiffs have not already obtained, or are about to obtain, through the deposition of numerous other Insys employees. Second, Dr. Kapoor was Chairman of Insys and was involved in other companies during the time period in question. Any relevant knowledge he has is likely to be hearsay from the very same sources Plaintiffs have or will depose. *See Hemmings*, *supra*, at 1 ("[T]he information that Plaintiff seeks is more readily available through other potential witnesses further down the organizational chart at Insys during the relevant time period . . . .").

Third, and most importantly, Insys's former CEO, VP of Sales, VP of Marketing, and dozens of other Insys employees have admitted to some or all of the conduct alleged against Insys in the MDL. Plaintiffs therefore are already able to draw from an abundance of existing sources as to Insys's operations during the time period in question. Further, while plaintiffs often seek to depose individuals who, like Dr. Kapoor, face possible or actual criminal prosecution in the expectation that those individuals will invoke their Fifth Amendment rights—thus creating the potential for an adverse inference—Plaintiffs cannot claim the lack of such an inference would materially prejudice them. An adverse inference has virtually no additional utility when Mr. Babich, the former CEO, and other company representatives have already testified under oath about the relevant conduct. Given these other witnesses, testimony from another fact witness in

10

Dr. Kapoor cannot be "crucial to [Plaintiffs'] case," *Recycled Paper* 2008 WL 440458, at *3.  As such, Plaintiffs cannot claim prejudice from a postponement of Dr. Kapoor's deposition.

> ### iii. Neither the interests of this Court nor the public will be harmed by delaying a deposition of Dr. Kapoor until the parallel criminal proceeding has concluded.

Both the courts and the public have an interest in the timely resolution of civil matters, and this Court must weigh these interests when considering whether to stay any deposition of Dr. Kapoor pending his criminal appeal.  *See E.M.A. Nationwide, Inc.*, 767 F.3d at 627.  While this interest may be heightened in the MDL context, there is no reason to believe such a stay will delay the timely resolution of any matter in this MDL.  As detailed above, there is an abundance of existing evidence regarding Insys's conduct during the time period in question.  Plaintiffs therefore cannot credibly claim they, or the public, would be materially disadvantaged by being denied the opportunity to depose Dr. Kapoor about Insys's conduct for several months until post-trial motions have been resolved and he has been sentenced.  Plaintiffs can easily move forward absent Dr. Kapoor's testimony.[5]  As such, the interests of this Court and the public in a timely and efficient resolution of this opioid MDL will not be hurt by the requested stay of discovery.

## III.    CONCLUSION

Staying discovery as to Dr. Kapoor, including his deposition, until the conclusion of the criminal proceedings is necessary in order to adequately protect Dr. Kapoor's Fifth Amendment right against self-incrimination.  Such relief will not prejudice Plaintiffs because there are numerous avenues for them to get the evidence they seek.  Nor will it harm or delay the interest of this Court or the public, because such limited relief would not prevent the timely resolution of the MDL cases.  Dr. Kapoor respectfully requests that the Subpoena be quashed and that this Court

---

[5] This is particularly so because Dr. Kapoor is not a defendant in the Track One cases.

enter a stay preventing his deposition through sentencing and the resolution of post-trial motions in the parallel criminal matter.

Respectfully submitted,

By its attorneys,

**NIXON PEABODY LLP**

Dated: May 23, 2019                    */s/* Brian T. Kelly

Brian T. Kelly<br>NIXON PEABODY LLP<br>53 State Street<br>Boston, MA 02109<br>617-345-1000<br>bkelly@nixonpeabody.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on May 23, 2019 I caused this Memorandum of law to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

*/s/* Brian T. Kelly