UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES:<br><br>*ALL CASES* | MDL 2804<br><br>Case No.: 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>Hearing Date: June 25, 2019<br><br>Time:  12:00 p.m. |

**PLAINTIFFS' CORRECTED NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF RULE 23(b)(3) CITIES/COUNTIES NEGOTIATION CLASS**

TO: ALL PARTIES, THEIR COUNSEL OF RECORD, THE ATTORNEYS GENERAL OF ALL STATES, AND ALL COUNTIES, CITIES AND INCORPORATED PLACES LISTED ON WW.WOPIOIDSNEGOTIATIONCLASS.COM:

PLEASE TAKE NOTICE that on June 25, 2019, at 12:00 p.m., in the Courtroom of United States District Judge Dan Aaron Polster, MDL No. 2804 Transferee Judge ("the Court"), the following MDL No. 2804 Plaintiffs:  County of Albany, New York; City of Atlanta, Georgia; Bergen County, New Jersey; City of Baton Rouge/East Baton Rouge Parish, Louisiana; Broward County, Florida; Camden County, New Jersey; Cass County, North Dakota; City of Chicago, Illinois; Cobb County, Georgia; Cumberland County, Maine; Cuyahoga County, Ohio; City of Delray Beach, Florida; Denver, Colorado; Escambria County, Florida; Essex County, New Jersey; Franklin County, Ohio; County of Gooding, Idaho; City of Grand Forks, North Dakota; County of Jefferson, Alabama; Jefferson County/ City of Louisville, Kentucky; Jersey City, New Jersey; Kanawha County, West Virginia; King County, Washington; City of Los Angeles, California; City of Lowell, Massachusetts; City of Manchester, New Hampshire; Maricopa

County, Arizona; Mecklenburg County, North Carolina; Milwaukee County, Wisconsin; Monterey County, California, The Metropolitan Government of Nashville and Davidson County, Tennessee; County of Palm Beach, Florida; City of Phoenix, Arizona; Prince George's County, Maryland; Riverside County, California; City of Saint Paul, Minnesota; City and County of San Francisco, California; County of Tulsa, Oklahoma; and Wayne County, Michigan; will and hereby do present a proposed class of all United States Cities and Counties to the Court for preliminary consideration in the national opioid litigation.  This motion is made by the foregoing plaintiffs in their own names and on behalf of all similarly situated U.S. counties, cities, and incorporated places and relates to All Cases in MDL No. 2804, for the specific, limited, and voluntary purposes set forth in this Notice and the accompanying Memorandum.

The Court-appointed Plaintiffs' Co-lead, Liaison, and Executive Committee counsel will seek to create and represent a class for the sole purpose of negotiating and potentially settling with defendants conducting nationwide opioids manufacturing, sales, or distribution.  What is proposed is the creation of a voting arrangement by which all the county and municipal entities in the United States will be able to participate collectively, through their representatives, in any settlement discussions that these defendants choose to conduct on a classwide basis, and to vote to accept or reject any proposed resolution.

The Negotiation Class is proposed as a voluntary opt-out class under Fed. R. Civ. P. 23(a)(1)-(4), 23(b)(3), and 23(c), and will be comprised of:

> **all counties, parishes, and boroughs (collectively, "counties"); and all incorporated places, including without limitation cities, towns, villages, and municipalities, as defined by the United States Census Bureau (collectively "cities") as listed on the Opioids Negotiation Class website, www.Opioidsnegotiationclass.com.**

This is not a litigation class.  Certification of the Negotiation Class will not be utilized to prosecute, litigate, or try any claim, in this or any court, against any of the defendants named in

- 2 -

1731778.8

national opioid litigation.  It does not affect the prosecution of existing actions filed against opioids manufacturers, opioids distributors, or pharmacies by Class members.  It will not stop any individual cases brought by cities and counties from proceeding or settling.  It does not obligate any defendants to make a settlement offer to the Class.  All Class members will have the right to opt out of the proposed "Negotiation Class" after receiving a Court-approved Class Notice, if and when the proposed class structure receives preliminary approval from Judge Polster.

The purpose of certifying a Negotiation Class is to establish and maintain an identified, unified, and durable nationwide body of cities and counties that can credibly claim to negotiate in the best interest of all the class governmental interests.  It does not preclude other categories of plaintiffs in MDL No. 2804 from organizing on a group, class or other basis to prosecute or settle their claims.  Although the proposed procedure is novel, the use of a coordinated litigation device to represent the common interests of cities and counties is not new.  For example, the National League of Cities has frequently represented the collective interests of its members in litigation, including in the Supreme Court.  *See Nat'l League of Cities v. Usery*, 426 U.S. 833 (1976); *Nat'l League of Cities v. Brennan*, 419 U.S. 1321 (1974).  The proposed Negotiation Class seeks to achieve the same benefits of collective representation of common interests in negotiating the best practicable resolution of the cities and counties' claims.

Under the proposed Negotiation Class, there will be a supermajority voting process that can approve a proposed settlement.  Specifically, if more than 75% of voting Class members approve the proposed settlement, based on 75% supermajorities of litigating and non-litigating cities and counties, 75% of the populations, and 75% of the allocations to the cities and counties. It has long been recognized that a coordinated group is best able to secure better returns by

offering the prospect of complete resolution of a dispute.  The aim here is to form a body vested with the power to negotiate on behalf of all class members, subject to concurrent supermajority voting requirements for any settlement subsequently proposed to it.

There have been settlement discussions, under the auspices of the Court, between various defendants and representatives of the States and other public entities from the onset of this MDL.  The aim of these negotiations has been to generate funds and establish programs to help abate the Opioids epidemic.  To date, there have been no settlements with any of the defendants, although negotiations are ongoing.

Settlement resolution could generate funds that would be utilized at both the State level and at the level of city and county political subdivisions.  Such a settlement would present issues of the appropriate allocation of the funds available for remediation and prevention.  Because many States, cities, and counties have filed suits and are active litigants, and because many more could do so in the future as the opioid epidemic continues, defendants need a comprehensive release from all litigants and potential litigants.  Given the sheer number of city and county entities in the United States, one-by-one approval of a comprehensive resolution is likely impossible as a logistical matter.  A cohesive negotiating group of cities and counties is essential because only a collective negotiating front is able to offer the prospect of global peace, which typically results in what is termed a "peace premium" in mass harm litigation.  A collective negotiation front may also be helpful to negotiate effectively an allocation system with the States, to determine, from any comprehensive settlement, the States' and cities and counties' relative aggregate shares, in the absence of a prior agreement within a particular State.

Through the proposed Negotiation Class Notice, including the Settlement Allocation Lookup Tool, posted on www.Opioidsnegotiationclass.com, the Class members identified and

1731778.8

listed on that website can elect to participate in the Class (and to vote on future proposed settlements), or to opt out. In deciding whether to participate, all Class members will have knowledge of the portion of the cities and counties' aggregate share of each proposed settlement that would be allocated to each county (for subsequent local allocation among that county and its constituent cities) by utilizing the settlement allocation lookup tool on the settlement website.

**SEQUENCE AND PROCESS:**

1. All members of this proposed Negotiation Class may comment upon this motion by emailing or mailing their comments (which will then be directed to the attention of the undersigned proposed Class Counsel, the Special Masters, and the Court) to info@opioidsnegotiationclass.info or NPO Litigation, P.O. Box 6727, Portland, OR 97228-6727, before the scheduled June 25, 2019 preliminary hearing.

2. At the June 25, 2019 preliminary hearing of this motion, and as described more fully in the attached Memorandum in Support hereof, proposed class representatives and class counsel will ask the Court to take the following actions:

   a) Give preliminary approval of and approve notice to the proposed Negotiation Class, including the 75% supermajority (by class member, by population, and by settlement allocation) voting procedure as set forth more fully in the accompanying Memorandum, proposed Class Action Notice, and FAQs.

   b) Approve the dissemination of the proposed Class Notice by posting it on the Settlement Website and by mailing and emailing it directly to all Class members.

   c) Set and include in the Class Notice a deadline (at least 60 days from mailing/emailing) and a procedure by which class members may exclude themselves from ("opt out" of) the proposed Negotiation Class.

1731778.8

d) Set a final hearing for early September 2019 to certify and confirm the membership of the Negotiation Class, and enter an Order that defines the included entities, appoints their Class representatives and confirms their Class Counsel, and attaches the list of excluded entities, under Fed. R. Civ. P. 23(c).

**SUMMARY OF NEGOTIATION CLASS PROCESS, ALLOCATION FORMULAE, SUPERMAJORITY VOTING MECHANISM, AND FEES**

3. All counties, parishes, and boroughs ("Counties"); and all cities, towns, villages, municipalities and other "incorporated places," ("Cities") as defined by the United State Census Bureau and as listed on the Negotiation Class website, have an opportunity to participate, as voluntary members of the Negotiation Class, in considering and voting upon any proposed settlement by Defendants in this Opioids litigation, without the necessity of filing or maintaining an individual lawsuit. The listed Cities and Counties also have the right to exclude themselves from the Negotiation Class, in which case they will not be entitled to participate in any Negotiation Class settlement, or be bound by it. Those who elect to remain within the Class will have vested voting rights with respect to any proposed Class settlement. To achieve Class approval, a proposed settlement must receive a supermajority vote -- by population, by number, and by settlement allocation -- of both the litigating and non-litigating voting members. See Paragraph 6 below for details of the supermajority voting process. Population numbers are taken directly from currently available 2010 United States Census data, posted on the website, to be replaced by 2020 United States Census data when it becomes available. Proposed settlements that achieve Class approval by supermajority vote will then be subject to Court approval as fair, adequate, and reasonable under Fed. R. Civ. P. 23(c).

4. Each potential Class member may preview its allocation (at the County level) by utilizing the Settlement Allocation Lookup Tool posted on the Negotiation Class Website. This

Tool shows in dollars the pro rata share for each county, utilizing a three-part formula that reflects the level of opioids-related harm.  The formula uses three metrics for which existing, reliable, detailed, and objective data are available for each county:  (1) morphine milligram equivalent ("MME") data, (2) overdose deaths, and (3) opioid use disorder cases.  Sources for the allocation data are detailed in Section VIII of the accompanying Memorandum.  The formula weights these three factors equally:  1/3-1/3-1/3.  This formula is the product of prolonged and intensive research, analysis, and discussion by and among members of the court-appointed Plaintiffs' Executive Committee and Settlement Committee and their retained public health and health economics experts.  The Settlement Allocation Model is described in detail in Section VIII of the accompanying Memorandum, which (i) explains the three factors used to determine how funds available to Class members under each Class settlement would be distributed at the county level, and (ii) the independent data, sources, and rationale used to determine each factor.

5.  Each County class member and its constituent City class members will decide the internal allocation of the county level award among themselves.  They may elect to use a pre-existing mechanism, such as their system of allocating sales taxes or other revenues between the County and its Cities.  In the event they cannot agree, a court-appointed neutral will resolve or adjudicate the allocation. Section VIII.E describes in detail the process for distribution of funds within counties, by agreement among the county and its cities, or by a Special Master.  Unless a local government provides an alternative approach for the Special Master's consideration, the Master will divide the funds by applying a formula that relies on federal data showing how counties and the cities within them historically have split funding for government functions potentially relevant to opioid abatement.

1731778.8

6. The voting process is straightforward. Each Class Member will vote only once. The vote is simply yes or no, in favor or against the proposed settlement. Votes are then tabulated mechanically within each applicable voting pool, to make sure a supermajority of each pool is in favor of the proposed settlement before it is presented to the Court. The voting pools are described in FAQs 16-17. Voting tabulation does not require any effort on the part of Class Members, who simply cast a single vote on the ultimate issue. The requirement of a supermajority across the different voting pools ensures a wide cross-section of support from cities and counties of all sizes and interests.

7. The agreement to be bound by a supermajority vote means that no settlement can be reached that would bind the Negotiation Class without the approval of a supermajority of the class, defined in several ways. To be binding, 75% of each of the following six categories must approve a proposed settlement:

- 75% of the total number of cities and counties that filed suit as of June 14, 2019. This number is based on all individual class members who had suits on file regardless of size, so that each voting entity has one vote;

- 75% of the total number of cities and counties that did not file suit as of June 14, 2019. This number is based on all individual class members who had no suits on file regardless of size, so that each voting entity has one vote;

- 75% of the total voting population of all cities and counties that filed suit as of June 14, 2019. For this computation, each person in a voting city and each person in a voting county is the equivalent of one vote. The population for each jurisdiction is drawn from the 2010 Census data, and is presented on the litigation website, Opioidsnegotiationclass.com. The data will be updated once the 2020 Census figures become available. Many individual residents in this category may be counted twice, once as a resident of a municipality, and once as a resident of a county;

- 75% of the total voting population of all cities and counties that did not file suit as of June 14, 2019. For this computation, each person in a voting city and each person in a voting county is the

>equivalent of one vote.  The population for each jurisdiction is drawn from the 2010 Census data, and is presented on the litigation website, Opioidsnegotiationclass.com.  The data will be updated once the 2020 Census figures become available.  Many individual residents in this category may be counted twice, once as a resident of a municipality, and once as a resident of a county;
>
>- 75% of the litigating entities, weighted by their allocations as shown on the Settlement Allocation Lookup Tool to be posted at Opioidsnegotiationclass.com; and
>
>- 75% of the non-litigating entities, weighted by their allocations as shown on the Settlement Allocation Lookup Tool to be posted at Opioidsnegotiationclass.com.

No settlement may be approved as binding unless all categories are in favor at the requisite 75% level, in order to assure that the views and voices of all Class Members, large and small, from all parts of the country, and affected by the Opioids epidemic in every degree, are heard and counted.  For purposes of counting votes, only votes cast will be considered.  Consistent with the voting rules in Section 524(g) of the bankruptcy code, which also requires special qualified majorities for different categories, non-votes are not considered as part of the denominator.  The 75% figure is calculated on the basis of the votes actually cast by Class members.

8. On February 7, 2018, The Court appointed a Plaintiffs' Settlement Committee and authorized a support committee [Dkt # 118], who will continue to negotiate with defendants on behalf of plaintiffs as a whole, including the proposed Class.  The proposed Class Counsel and Class Representatives would also, upon confirmation, participate in negotiations on behalf of the Class.  Nothing in a Negotiation Class Settlement itself would affect the distribution of monies from a State to a city or county, or among the States.  However, the parties recognize it is probable that one or more defendants will seek to resolve the Opioid litigation by a joint settlement offer to one or more States and the cities and counties within that State.  If a defendant

offers a settlement of this nature, it would lead to discussion between the State and the cities and counties within the State.  The first preferred result of that discussion is for each State to reach agreement with the cities and counties within the State on the allocation and use of the money within the State.  In the absence of an agreement, there would be a negotiation of an appropriate allocation.  If an allocation negotiation arises, initially three representatives from the Class -- Louise Renne (former City Attorney for the City and County of San Francisco), Mark Flessner (City of Chicago Corporate Counsel), and Zachary Carter (Corporation Counsel of the City of New York), and potentially several others to be designated as appropriate after Class membership is known, will join the Negotiating Team, with their sole focus being the allocation of monies between the States and the cities and counties.  Any agreed-to allocation would be treated as a settlement and submitted to the Negotiation Class for its consideration.  Again, the preferred alternative would be for a State and the cities and counties within the State to reach agreement.

9.      Seventy-five percent (75%) of the Class's share of any settlement would be allocated, at the county level, to each County and its constituent Cities utilizing the allocation formula set forth in paragraph 4 above.  Fifteen percent (15%) will be set aside in a "Special Needs Fund", to which any Class member could apply in light of special needs, such as: (i) to address the opioids epidemic locally (such as particularly severe impact of the opioids epidemic not otherwise covered in the general allocation), (ii) for unique regional services provided, or (iii) for costs and expenses incurred by the litigating cities or counties themselves in the prosecution of opioids-related claims.  Ten percent (10%) will be set aside in a fund to address private counsels' attorneys' fees and costs, the "Private Attorneys' Fee Fund", with individual awards to be recommended by a Private Attorneys Fees Committee.  Any disputes

would be resolved by a Court-appointed Special Master and awards would be subject to entry of a final Order by the Court.  While the existence of a contingency fee contract would be a relevant factor, the Private Attorneys' Fee Committee shall consider all relevant factors in determining appropriate fee for each counsel and each client class member.  No fee shall be awarded that exceeds the contractual fee agreement.

10. The Private Attorneys Fund will be distributed after receipt and determination of all applications from qualified private counsel (counsel with representation agreements with one or more Class members executed as of June 14, 2019).  Applications to the Private Attorneys Fund would be made on a client-by-client basis for services rendered for those clients, and would be in lieu of enforcement of private contracts with those clients.  Application to the Private Attorneys Fund is voluntary and optional.  The choice to apply to the Fund or to enforce contingency fee contracts can be made on a client-by-client basis.  The Court- appointed Private Attorneys Committee and Special Master will consult with the Class Action/Common Benefit Fees Committee to avoid duplicate awards.

11. Any portion of the Special Needs Fund and/or the Private Attorneys Fund that is unawarded for any reason would revert to the benefit of the Class.

12. At the Classwide level, Class Counsel will apply to the Court for any Class Counsel fees and costs (including work done by any counsel for the common benefit under the Court's Orders prescribing same) under Rule 23(h).  The structure and amount of the application will depend upon the particular settlement, and may vary from settlement to settlement.  Under class action rules, Class members would have notice and an opportunity to be heard on any application for Class Counsel fees and costs.  Class Counsel fees and costs, as awarded by the Court, would be allocated by the Class Action/ Common Benefit fees committee among

individual applicants seeking compensation and reimbursement for Class-related, common benefit fees and costs, with recommended awards subject to resolution by the Special Master and to entry of a final Order by the Court.

Dated:  June 17, 2019        *Co-Lead Counsel*

                By:     /s/ Paul J. Hanly, Jr.
                      Paul J. Hanly, Jr.

SIMMONS HANLY CONROY LLC
112 Madison Avenue
New York, NY 10016
Tel:     212-784-6401
Fax:     212-213-5949

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd. 17th Floor
Mount Pleasant, SC 29464
Tel:     843-216-9000
Fax:     843-216-9450
Email: jrice@motleyrice.com

Paul T. Farrell Jr.
GREENE KETCHUM, FARRELL, BAILEY & TWEEL, LLP
419 Eleventh Street
Huntington, WV 25701
Tel:     304-525-9115
Fax:     304-529-3284
Email: paul@greeneketchum.com

*Plaintiffs' Liaison Counsel*

By:   /s/ Peter Weinberger
       Peter Weinberger

SPANGENBERG SHIBLEY & LIBER, LLP
1001 Lakeside Avenue, E, Ste. 1700
Cleveland, OH 44114
Tel:    216-696-3232
Fax:   216-696-3924
Email: pweinberger@spanglaw.com

Steve Skikos
SKIKOS, CRAWFORD, SKIKOS AND JOSEPH
1 Sansome Street Ste. 2830
San Francisco, CA 94104
Tel:    415-546-7300
Fax:   415-546-7301
Email: sskikos@skikos.com

Troy Rafferty
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
 RAFFERTY AND PROCTOR
316 South Baylen Street Ste. 600
Pensacola, FL 32502
Tel:    850-435-7163
Fax:   850-436-6163
Email: trafferty@levinlaw.com

Dated:  June 17, 2019     *Plaintiffs' Executive Committee*

By:   /s/ Elizabeth J. Cabraser
       Elizabeth J. Cabraser

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Flr.
San Francisco, CA 94111
Tel:    415-956-1000
Fax:   415-956-1008
Email: ecabraser@lchb.com

- 13 -

Don Barrett
BARRETT LAW GROUP,
404 Court Square, P.O Box 927
Lexington, MS 39095
Tel:   662-834-2488
Fax:   662-834-2628
Email: DonBarrettPA@gmail.com

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY &
  AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel:   973-994-1700
Fax:   973-994-1744
Email: jcecchi@carellabyrne.com

Erin K. Dickinson
CRUEGER DICKINSON LLC
4532 North Oakland Avenue
Whitefish Bay, WI 53202
Tel:   414-210-3767
Email: ekd@cruegerdickinson.com

James R. Dugan, II
THE DUGAN LAW FIRM, APLC
365 Canal Street Ste. 1000
New Orleans, LA 70130
Tel:   504-648-0180
Fax:   504-648-0181
Email: jdugan@dugan-lawfirm.com

Paul J. Geller
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road Ste. 500
Boca Raton, FL 33432
Tel:   561-750-3000
Fax:   561-750-3364
Email: pgeller@rgrdlaw.com

Michael J. Fuller
MCHUGH FULLER LAW GROUP
97 Elias Whiddon Road
Hattiesburg, MS 39402
Tel: 601-261-2220
Fax: 601-261-2481
Email: mike@mchughfuller.com

R. Eric Kennedy
WEISMAN KENNEDY & BERRIS CO., LPA
1600 Midland Bldg.
101 Prospect Avenue, W
Cleveland, OH 44115
Tel: 216-781-1111
Fax: 216-781-6747
Email: ekennedy@weismanlaw.com

W. Mark Lanier
LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069
Tel: 713-659-5200

Peter J. Mougey
LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY &
  PROCTOR, PA
316 South Baylen Street Ste. 600
Pensacola, FL 32502
Tel: 850-435-7068
Fax: 850-436-6068
Email: pmougey@levinlaw.com

Ellen Relkin
WEITZ & LUXENBERG, P.C.
700 Broadway 5th Floor
New York, NY 10003
Tel: 212-558-5715
Fax: 212-344-5461
Email: erelkin@weitzlux.com

1731778.8

Lynn Sarko
KELLER ROHRBACK
1201 Third Avenue Ste. 3200
Seattle, WA 98101
Tel: 206-623-1900
Fax: 206-623-3384
Email: lsarko@kellerrohrback.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK PLLC
400 Broadhollow Road Ste. 305
Melville, NY 11747
Tel: 212-397-1000
Fax: 646-843-7603
Email: hunter@napolilaw.com

Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel: 973-639-9100
Fax: 973-639-9393
Email: cseeger@seegerweiss.com

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd. Ste. 1600
Los Angeles, CA 91436
Tel: 818-839-2333
Fax: 818-986-9698
Email: rtellis@baronbudd.com

James D. Young
MORGAN & MORGAN
76 South Laura Street Ste. 1100
Jacksonville, FL 32202
Tel: 904-361-0012
Fax: 904-366-7677
Email: jyoung@forthepeople.com

*On the Brief*:
Samuel Issacharoff
40 Washington Square South
New York, NY 10012
Tel: (212) 998-6580
Email: samuel.issacharoff@nyu.edu

1731778.8