UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES:<br><br>*ALL CASES* | MDL 2804<br><br>Case No.: 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>Hearing Date: June 25, 2019<br><br>Time: 12:00 p.m. |

### **[PROPOSED] PRELIMINARY ORDER REGARDING NEGOTIATION CLASS**

1. This Court held a hearing on June 25, 2019 to consider and determine whether to approve preliminary steps toward the confirmation of a Negotiation Class, defined as

> All Counties, Parishes, and Boroughs (collectively, "Counties"); and all incorporated places, including without limitation cities, towns, villages, and municipalities, as defined by the United States Census Bureau (collectively "cities"); as listed on the Opioids Negotiation Class website, www.Opioidsnegotiationclass.com.

2. Upon review and consideration of the papers submitted in connection with the proposed Negotiation Class, this Court finds and Orders the following:

3. This Court has been provided with information sufficient to enable it to determine that it is appropriate to give notice of the proposal for formation of a Negotiation Class with the essential features set forth in the Class Action Notice and Frequently Asked Questions attached hereto as Exhibits "A" and "B," to the members of that proposed Class, and to set a hearing for confirmation of the Negotiation Class, pursuant to notice and an opportunity for proposed Class members to opt-out or to comment or object, to be held on: September __, 2019, at _____.

4. The following items are approved for posting and dissemination:

   (1) the proposed class notice attached hereto as Exhibit A is approved for posting on the Opioids Negotiation Class website, www.Opioidsnegotiationclass.com; and

   (2) the Frequently Asked Questions ("FAQs") attached as Exhibit B is approved for posting on the Opioids Negotiation Class website, www.Opioidsnegotiationclass.com, and may be updated to provide additional information to additional questions from Class members; and

  5. The papers previously submitted by Plaintiffs in connection with the motion, this Order, and all other and future Orders and Court notices related to the Negotiation Class, are approved for posting on the Opioids Negotiation Class website, www.Opioidsnegotiationclass.com.

  6. The Class Action Notice (Exhibit A) shall be mailed and emailed to all entities listed as Class members on www.Opioidsnegotiationclass.com, to be sent no later than June __, 2019.  Epiq Global is hereby approved to serve as Class notice provider, is authorized and directed to effectuate first class mail and email notice to the Class, and is ordered to provide a report to this Court, no later than August __, 2019 to report on the completion of the class notice program.

  7. Exclusion requests are to be sent by those Class members wishing to opt out as directed in the FAQs posted on www.Opioidsnegotiationclass.com.  Exclusion requests must be emailed or postmarked no later than August __, 2019.

  8. Members of the proposed Negotiation Class who do not exclude themselves may file objections to or comments regarding the Negotiation Class no later than August __, 2019.

  9. The members of the previously-appointed Plaintiffs Settlement Committee as listed in the Court's Order of February 7, 2018 [Doc #118], and the members of the previously-appointed Plaintiffs' Executive Committee as listed on Exhibit C, are hereby appointed as interim counsel for the proposed Negotiation Class under Fed. R. Civ. P. 23(g)(3).

10. This Order does not stay or suggest the stay or continuance of any action or proceeding in any court.

It is so ORDERED.


DATED: _____ _____
District Judge Dan Aaron Polster

**EXHIBIT A**

# (PROPOSED) CLASS ACTION NOTICE

## To: all Cities and Counties in the United States as listed at www.Opioidsnegotiationclass.com

- The Court in In re National Prescription Opiates Litigation, MDL No. 2804 (N.D. Ohio), has been asked to certify a voluntary "Negotiation Class" ("Class") comprised of cities and counties nationwide under Rule 23(b)(3), solely to consider and vote on any future settlement offers made to the Class by defendants.  The purpose of the Class is to unify cities and counties into a single negotiating entity to maximize their bargaining power, and to provide finality to the Opioid litigation for settling defendants.

- The Class is defined as:  **all counties, parishes, and boroughs (collectively, "counties"); and all incorporated places, including without limitation cities, towns, villages, and municipalities, as defined by the United States Census Bureau (collectively "cities"); as listed on the Opioids Negotiation Class website, www.Opioidsnegotiationclass.com**.  ("Class website")

- For complete information on the Class, the settlement allocation formulae, the class certification motion and Order, the list of included class members, the supermajority voting process to be used by the Class in accepting or rejecting any class settlement offer, and an Allocation Lookup Tool for determining your allocation of any proposed settlement, go to www.Opioidsnegotiationclass.com.  Important information on the Opioids-related litigation, including all pertinent Orders and Schedules, and Frequently Asked Questions, will be available on the website on an ongoing and current basis.

- You do not need to have a lawsuit on file to be part of this Class.  This Class action will not decide any claims or defenses in opioids litigation, for or against any party, on the merits.  It is certified as a Negotiation Class only, to facilitate class members' approval or rejection of prospective proposed settlements.  There are no pending proposed settlements at this time.

- The Class representatives are [subject to final selection]: (1) County of Albany, New York; (2) City of Atlanta, Georgia; (3) Bergen County, New Jersey; (4) City of Baton Rouge/East Baton Rouge Parish, Louisiana; (5) Broward County, Florida; (6) Camden County, New Jersey; (7) Cass County, North Dakota; (8) City of Chicago, Illinois; (9) Cobb County, Georgia; (10) Cumberland County, Maine; (11) Cuyahoga County, Ohio; (12) City of Delray Beach, Florida; (13) Denver, Colorado; (14) Escambria County, Florida; (15) Essex County, New Jersey; (16) Franklin County, Ohio; (17) County of Gooding, Idaho; (18) City of Grand Forks, North Dakota; (19) County of Jefferson, Alabama; (20) Jefferson County/ City of Louisville, Kentucky; (21) Jersey City, New Jersey; (22) Kanawha County, West Virginia; (23) King County, Washington; (24) City of Los Angeles, California; (25) City of Lowell, Massachusetts; (26) City of Manchester, New Hampshire; (27) Maricopa County, Arizona; (28) Mecklenburg County, North Carolina; (29) The Metropolitan Government of Nashville and Davidson County, Tennessee; (30) Milwaukee County, Wisconsin; (31) Monterey County, California; (32) County of Palm Beach, Florida; (33) City of Phoenix, Arizona; (34) Prince George's County, Maryland; (35) Riverside County, California; (36) City of Saint Paul, Minnesota; (37) City and County of San Francisco, California; (38) County of Tulsa,

1736678.4

Oklahoma; and (39) Wayne County, Michigan.

- The Class counsel are:  Plaintiffs' Co-lead Counsel, Liaison Counsel, and the members of the Plaintiffs' Executive Committee previously appointed by the Court, as listed on the Class website.

- Class members may exclude themselves from ("opt-out" of) the Class by having an authorized officer or employee sign and email a notarized exclusion request to [email address] no later than [date/time], 2019 that states "I [your official entity name] wish to exclude myself from the Negotiation Class."  Otherwise, you will remain a Class member, with all the rights and benefits of class membership, including the right to participate in any settlement approved by the Negotiation Class and the court, as explained in detail at www.Opioidsnegotiationclass.com.  The *pro rata* share of any settlement funds payable at the county level may be pre-determined by utilizing the Allocation Lookup Tool at www.Opioidsnegotiationclass.com.  As a Class member, you have the right to vote on any settlement proposed to the Negotiation Class.  Classwide approval will be determined by supermajority votes of 75% of the voting class members, by number, population, and allocation, by litigating and non-litigating entities.  The Class will be bound by any settlement its supermajority and the Court approve.  Those who exclude themselves from the Class cannot vote on, will not be paid under, and will not be bound by, any class settlement.  Those who remain in the Class will receive direct notice of any and all proposed settlements and on the voting procedures and deadlines for each.

- Class representatives and Class counsel will represent the Class in negotiations with defendants who choose to do so. You may enter an appearance through an attorney if you desire.  Class Membership does not eliminate existing agreements with individual counsel.  The procedure for payment of class/common benefit attorneys' fees/costs in connection with any Class settlement must be approved by the Court. Details of the proposed options and procedures for fees and costs are posted on the Class website.

- The Court will hold a hearing on whether to confirm the Negotiation Class on September __, 2019.  You may, but need not, attend.

**CITIES/COUNTIES NEGOTIATION CLASS**
**FREQUENTLY ASKED QUESTIONS**
**("FAQs")**

**EXHIBIT B**

1. **Q: Why is a Negotiation Class being formed? What is its purpose?**

   **A:** The purpose of the Negotiation Class is to create a cohesive group of cities and counties to negotiate Classwide settlements, on a voluntary basis, involving defendants who are engaged in nationwide opioid manufacturing, sales or distribution. The Negotiation Class will be represented by Class Representatives and Class Counsel. Class members will vote on any resulting settlement proposal, and any settlements that achieve a 75% supermajority "yes" vote by the Class (as described in FAQ 16 and 17 below) will go to the Court for formal approval. The ultimate purpose of creating a Negotiation Class is to make settlement easier to obtain.

2. **Q: What entities are included in the Negotiation Class?**

   **A:** The Negotiation Class is defined as:

   > **All counties, parishes, and boroughs (collectively, "counties"); and all incorporated places, including without limitation cities, towns, villages, and municipalities, as defined by the United States Census Bureau (collectively "cities"); as listed on the Opioids Negotiation Class website, www.Opioidsnegotiationclass.com. ("Class website")**

   Check the Cities (2010 United States Census Bureau) and Counties (2010 United States Census Bureau) lists posted on the class website to confirm whether you are included in one of these lists. If yes, you are a Negotiation Class member. The Class papers speak of "counties" and "cities" as shorthand terms. The Class by definition includes political subdivisions with other names and titles, such as parishes, villages, towns, etc., so long as they appear on the U.S. Census bureau lists of "counties" or "incorporated places."

3. **Q: Are cities and counties with state court-filed actions considered part of the Negotiation Class?**

   **A:** Yes. Cities and counties with state court-filed actions are members of this Negotiation Class, with the option to opt-out. However, nothing about membership in the Negotiation Class interferes with the rights of any federal or state court plaintiffs to proceed with their own cases for litigation, trial, or individual settlement. If and when a Class settlement has been reached, has achieved a supermajority approval vote by the Class, and has been approved by the Court, Class Members would release their settled claims in return for benefits.

4. **Q: Is this the first Negotiation Class?**

   **A:** Yes. This is a new use of the class action mechanism under Rule 23 of the Federal Rules of Civil Procedure, reflecting the unique nature of the national opioids litigation. Unlike any mass litigation before, thousands of cities and counties nationwide are pursuing claims

# CITIES/COUNTIES NEGOTIATION CLASS
# FREQUENTLY ASKED QUESTIONS
# ("FAQs")

against major defendants.  The goal is to recover money to help fight the opioids epidemic, provide prevention and treatment services going forward, and change defendants' practices.

**5.      Q:  Why use a class mechanism?**

**A:**  Joining all cities and counties together as a Negotiation Class gives them maximum negotiating power, makes the negotiation of global settlements a more practical process, allows defendants to obtain global resolution, and enables Class Members to vote on resulting settlement offers.

**6.      Q:  Has there been a settlement reached with defendants yet?**

**A:**  No.  No settlement has been reached with any defendant.  But the existence of a Class of cities and counties makes future settlement offers more likely, because a defendant will be able to obtain "global peace."

**7.      Q:  If a Negotiation Class is formed, will it end the opioid litigation that my jurisdiction has filed?**

**A:**  No.  Your membership in the Negotiation Class will not affect any opioid suit that you have filed.  It will not stop you from filing or pursuing a lawsuit, and it will not affect any scheduled hearings or trials in that lawsuit.  Only a final classwide settlement would do that, after supermajority vote to approve it and after final Court approval.

**8.      Q:  How does the allocation model work?**

**A:**  The allocation model uses three factors, based on reliable, detailed, and objective national data, to determine the share of a settlement fund that each county would receive (distribution of that share within the county is addressed in FAQ 10 below).  These factors address the most critical causes and effects of the opioids crisis, and are each weighted equally (1/3-1/3-1/3):  (1) the amount of opioids distributed within the county, (2) the number of opioid deaths that occurred in the county; and (3) the number of people who suffer opioid use disorder in the county.  This model is designed not to favor either small or large counties based solely on population.  However, population is still taken into account because each of the three metrics tends to increase with population.  Ultimately, the model allocates settlement funds proportionally to where the opioid crisis has caused actual harm.  To ensure objectivity and transparency, the model uses only data collected and reported by the federal government, and follows the reporting mechanisms deemed most relevant by public health authorities in measuring opioids-related harm.  Detailed descriptions of the sources and methodologies for each of the three factors are posted at Opioidsnegotiationclass.com.

**9.      Q:  What will happen with this proposed Class?**

**A**:  The creation of the Negotiation Class has these steps:

1736678.4

# CITIES/COUNTIES NEGOTIATION CLASS
# FREQUENTLY ASKED QUESTIONS
# ("FAQs")

- On June 14, 2009, plaintiffs will file a motion for class certification to Judge Polster, the federal judge overseeing all of the national opioids litigation, to be heard on June 25, 2019.  This hearing will be the first step in the authorization process for the Class.

- If Judge Polster approves, a formal notice will then go out to all Class Members.  That will be the beginning of a 60-day period during which each Class Member can decide to participate, to opt out, or to object to some feature of the proposed Class.  Class Members who want to participate do not need to do anything at this point; only those seeking not to participate must file an opt-out form.

- A final hearing on the Class will be held on [September __].  At that time, the Court will enter an order approving or rejecting the Class.  If the Court approves the Class, the Court will also enter an order saying who is in and who is out of the Class.

- After that, the Class will operate if, and only if, a national defendant wishes to negotiate with the Class as a whole through the Negotiation Class mechanism.  If a proposed settlement is reached by the Class Negotiators, then the proposal will be submitted for Class approval or rejection according to the supermajority voting formula (described in FAQ 16 and 17 below).  If no proposed settlement is reached, the Class will not vote and will have no other role.

**10.    Q:  Under this proposal, what happens to my jurisdiction's current fee agreement with outside counsel?**

   **A:**  The current fee agreement that a city or county has with its outside counsel remains in effect.  Membership in the Negotiation Class does not change that.  In the event of any settlement that achieves Class and Court approval, there would be a fund from which outside counsel could apply for fees and costs in lieu of any current fee agreement.  That would be a voluntary choice, a decision between the city or county and its outside counsel.  A total of 10% of any approved Class settlement amount will be held in a Private Attorneys Fund from which privately retained lawyers who forego their retainer agreements could recover for the work they have done.  Any unawarded amount remaining in this Fund would revert to the Class.

1736678.4

**CITIES/COUNTIES NEGOTIATION CLASS**
**FREQUENTLY ASKED QUESTIONS**
**("FAQs")**

**11.   Q:  What will Negotiation Class Representatives receive that other jurisdictions don't get?**

**A:**  Negotiation Class representatives do not receive preferential treatment under any settlement simply by serving as Class representatives.  They could apply to the Court for reimbursement of costs and expenses incurred by serving as Class representatives, in what is called an incentive or service award, designed to encourage action by Class representatives on behalf of others.  Any such awards are subject to Class notice and Court approval.

**12.   Q:  What if cities, towns, and boroughs within a county have different views of how to allocate any settlement proceeds?**

**A:**  The Negotiation Class includes a two-step formula for allocation of any settlement funds.  Allocation of funds is first made between all counties in the country, according to the harm they have suffered.  Harm is measured using published federal statistics regarding the amount of opioids shipped to the county, the number of opioid overdose deaths that occurred in the county, and the number of persons suffering from opioid use disorder in the county.  The formula and its data sources are described in detail at Opioidsnegotiationclass.com.  A second allocation then takes place between each county and the cities located within it and is overseen by a Special Master.  A county and the cities within it may share the funds allocated to the county in any manner they choose.  If the county and cities cannot agree, then a default allocation formula will apply, unless the Special Master accepts a different formula submitted for consideration.  The default allocation formula uses historical federal data showing how the specific county and the cities within it have made opioids-related expenditures in the past.  This formula and its data sources are also described in detail at Opioidsnegotiationclass.com.  Counties and their constituent cities, towns, and boroughs are encouraged to confer and agree, among themselves, as to the distribution of any funds allocated at the county level in any settlement.

**13.   Q:  If my jurisdiction chooses to participate in the Negotiation Class, how will it know when there is a proposed settlement?**

**A:**  All Negotiation Class members will be given advance notice of any settlement offer, including details on its terms and conditions, and they will have an opportunity to vote on each individual settlement offer.  Only settlements achieving supermajority (75%) approval votes, by number, by allocation, and by population, of the litigating and non-litigating entities will be submitted to the Court for formal settlement Class approval.  You will be able to cast your vote securely, through the Negotiation Class website, which will establish a voting identity and portal for each Class member.

**14.   Q:  If there is a proposed settlement, does the Court still have to approve it?**

**A:**  Yes.  If there is a proposed settlement that achieves supermajority (75%) approval by the Negotiation Class membership, the Court will review and decide whether to approve it,

- 4 -

**CITIES/COUNTIES NEGOTIATION CLASS**
**FREQUENTLY ASKED QUESTIONS**
**("FAQs")**

utilizing the formal Class action settlement approval process and criteria set forth in Fed. R. Civ. P. 23(e).  (*See* https://www.law.cornell.edu/rules/frcp/rule_23.)

**15.  Q:  If there is a proposed settlement and my jurisdiction is included in the Negotiation Class, but it disapproves of the settlement terms, can my jurisdiction object to the settlement?**

**A:** Yes.  As a Negotiation Class member, you are entitled under Rule 23(e) to object to any settlement, even if it has received a supermajority (75%) approval from the Class.

**16.  Q:  How is the voting done?**

**A:** Each Class Member will vote only once.  The vote is simply yes or no, in favor or against the proposed settlement.  Votes are then tabulated mechanically within each applicable voting pool, to make sure a supermajority of each pool is in favor of the proposed settlement before it is presented to the Court.  The voting pools are described in FAQ 15.  Voting tabulation does not require any effort on the part of the Class Members, who simply cast a single vote on the ultimate issue.  The requirement of a supermajority across the different voting pools ensures a wide cross-section of support from cities and counties of all sizes and interests.

**17.  Q:  Exactly how does the supermajority voting process work?**

**A**:  The agreement to be bound by a supermajority vote means that no settlement can be reached that would bind the Negotiation Class without the approval of a supermajority of the Class, defined in several ways.  To be binding, 75% of each of the following six categories must approve a proposed settlement:

- 75% of the total number of cities and counties that have filed suit as of June 14, 2019 ("litigating entities").  This number is based on all individual Class members who had suits on file regardless of size, so that each voting entity has one vote;

- 75% of the total population of all cities and counties that have filed suit as of June 14, 2019.  For this computation, the vote of the city or county is weighted according to its population, with each person in a voting city and each person in a voting county equal to one vote.  Thus, by way of example, if a county votes yes and has a population of 20,000, and a city within the county votes yes and has a population of 10,000, the county's vote is weighted as 20,000 votes in favor, and the city's vote is recorded as 10,000 votes in favor.  The population for each jurisdiction is drawn from the 2010 Census data, and is presented on the litigation website, Opioidsnegotiationclass.com.  The data will be updated once 2020 Census figures become available.  Many individual residents in

- 5 -

**CITIES/COUNTIES NEGOTIATION CLASS**
**FREQUENTLY ASKED QUESTIONS**
**("FAQs")**

    this category may be counted twice, once as a resident of a municipality, and once as a resident of a county;

- 75% of the total population of all cities and counties that have not filed suit as of June 14, 2019. For this computation, the vote of the city or county is weighted according to its population, with each person in a voting city and each person in a voting county equal to one vote. Thus, by way of example, if a county votes yes and has a population of 20,000, and a city within the county votes yes and has a population of 10,000, the county's vote is weighted as 20,000 votes in favor, and the city's vote is recorded as 10,000 votes in favor;

- 75% of the total population of all cities and counties that have not filed suit as of June 14, 2019. For this computation, each person in a voting city and each person in a voting county is the equivalent of one vote. The population for each jurisdiction is drawn from the 2010 Census data, and is presented on the litigation website, Opioidsnegotiationclass.com. The data will be updated once 2020 Census figures become available. Many individual residents in this category may be counted twice, once as a resident of a municipality, and once as a resident of a county;

- 75% of the litigating entities, weighted by their settlement fund allocations as shown on the Allocation Lookup Tool to be posted at Opioidsnegotiationclass.com; and

- 75% of the non-litigating entities, weighted by their settlement fund allocations as shown on the Allocation Lookup Tool to be posted at Opioidsnegotiationclass.com.

In order for a proposed settlement to be binding on the Negotiation Class, a 75% supermajority in each of these six categories must vote in favor. No settlement may be approved as binding unless all categories are in favor at the requisite 75% level. For purposes of counting votes, only votes cast will be considered. Consistent with the voting rules in Section 524(g) of the bankruptcy code, which also requires special qualified majorities for different categories, non-votes are not considered as part of the denominator. The 75% figure is calculated on the basis of the votes actually cast. Votes cast are included in multiple pools, and a supermajority of a 75% "yes" vote in all six of these pools is required for Class approval.

1736678.4

# CITIES/COUNTIES NEGOTIATION CLASS
# FREQUENTLY ASKED QUESTIONS
# ("FAQs")

**18.    Q:  How do Class Counsel get paid?**

**A**:  Class Counsel will apply to the Court for approval of fees and costs under Rule 23(h). As a Class member, you will have notice and an opportunity to be heard on any such application. The Court will appoint fee committees to make recommendations of any fee awards, to avoid duplication of payment, and to assure appropriate compensation of those whose efforts provided a common benefit.

**19.    Q:  Can I exclude myself from the Negotiation Class?**

**A**:  Yes.  You may exclude yourself, or "opt out," by signing, notarizing, and emailing a statement such as "I wish to exclude myself from the Negotiation Class" to [email address] by [date to be set by the Court].  This request must be signed by an authorized official or employee of the city or county itself.  If you exclude yourself from the Negotiation Class, you will not be bound by any Orders or Judgments regarding the Class, and you will not share in any settlement reached by the Class.  See the attached chart for explanation of the effect of a choice to opt out.

**20.    Q:  What is the Special Needs Fund?**

**A:**  The Special Needs Fund will be created with 15% of any approved Class settlement amount.  Applications may be made to the Special Needs Fund by any Class member. Distributions from the Special Needs Fund to Class Members are allowed for: (1) a Class Member to recover its own costs of litigating its lawsuit; and (2) to obtain additional relief for any local impact of the opioids crisis that is not captured by the Class Member's automatic allocation.  Applications will be made to and approved by a court-appointed Special Master, on a case-by-case basis.  Any unawarded amount remaining in this Special Needs Fund would revert to the Class.

**21.    Q:  How long will the Negotiation Class last?**

**A:**  The Negotiation Class will last for 5 years from the date it is confirmed by the Court. For example, the Negotiation Class will expire on September 15, 2024, if the Court enters an order confirming the class on September 15, 2019.  After that date, the Class will not exist as an entity with which a defendant can negotiate.  However, the Negotiation Class will continue to exist with regard to:  (1) any settlements presented to the Negotiation Class for a vote before that date, to allow the settlement voting and approval process to continue; and (2) Class settlements reached before that date, to enable settlement administration and enforcement to be completed.

**22.    Q:  If there is a settlement between a defendant and a State or States, what impact will this Class Action settlement have on the division of monies between a State and the cities and counties within the State?**

**A:**  Nothing in a Class Negotiation Settlement itself would affect the distribution of monies from a State to a city or county, or among the States.  However, the parties recognize it is

- 7 -

1736678.4

**CITIES/COUNTIES NEGOTIATION CLASS**
**FREQUENTLY ASKED QUESTIONS**
**("FAQs")**

probable that one or more defendants will seek to resolve the Opioid litigation by a joint settlement offer to one or more States and the cities and counties within that State.  If a defendant offers a settlement of this nature, it would lead to discussion between the State and the cities and counties within the State.  The first preferred result of that discussion is for each State to reach agreement with the cities and counties within the State on the allocation and use of the money within the State.  In the absence of an agreement, there would be a negotiation of an appropriate allocation.  If an allocation negotiation arises, three representatives from the Class -- Louise Renne (former City Attorney for the City and County of San Francisco), Mark Flessner (City of Chicago Corporate Counsel), and Zachary Carter (Corporation Counsel of the City of New York), and potentially several others to be designated as appropriate after Class membership is known, will join the Negotiating Team, with their sole focus being the allocation of monies between the States and the cities and counties.  Any agreed-to allocation would be treated as a settlement and submitted to the Negotiation Class for its consideration.  Again, the preferred alternative would be for a State and the cities and counties within the State to reach agreement.

**23.     Q:  How Does the Negotiation Class affect other types of plaintiffs' claims?**

　　　　**A:**  The Negotiation Class does not directly affect the litigation or settlement of the claims of other types of plaintiffs, such as Indian Tribes, third party payors, and others, that are proceeding in federal or state courts.  These plaintiffs can organize themselves as groups or propose their own classes, for trial or settlement purposes.  The Negotiation Class may have an indirect effect on, and provide an opportunity for, these other types of plaintiffs, because a defendant that desires a comprehensive resolution of all its opioids liability exposure may wish to include all types of plaintiffs in a settlement, thus prompting organized involvement in negotiations by these other plaintiff groups on their own behalf.

**24.     Q:  How can I keep up with what's going on in this case?**

　　　　**A**:  All pertinent news and information will be posted on Opioidsnegotiationclass.com on an ongoing basis.

1736678.4

# EXHIBIT C

## Proposed Negotiation Class Counsel

*Plaintiffs' Co-Lead Counsel:*

Paul J. Hanly, Jr.
SIMMONS HANLY CONROY LLC
112 Madison Avenue
New York, NY 10016
Tel:    212-784-6401
Fax:    212-213-5949

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd., 17th Floor
Mount Pleasant, SC 29464
Tel:    843-216-9000
Fax:    843-216-9450
Email: jrice@motleyrice.com

Paul T. Farrell Jr.
GREENE KETCHUM, FARRELL, BAILEY & TWEEL, LLP
419 Eleventh Street
Huntington, WV 25701
Tel:    304-525-9115
Fax:    304-529-3284
Email: paul@greeneketchum.com


*Plaintiffs' Liaison Counsel:*

Peter Weinberger
SPANGENBERG SHIBLEY & LIBER, LLP
1001 Lakeside Avenue, E, Ste. 1700
Cleveland, OH 44114
Tel:    216-696-3232
Fax:    216-696-3924
Email: pweinberger@spanglaw.com

Steve Skikos
SKIKOS, CRAWFORD, SKIKOS AND JOSEPH
1 Sansome Street Ste. 2830
San Francisco, CA 94104
Tel: 415-546-7300
Fax: 415-546-7301
Email: sskikos@skikos.com

Troy Rafferty
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
 RAFFERTY AND PROCTOR
316 South Baylen Street, Ste. 600
Pensacola, FL 32502
Tel: 850-435-7163
Fax: 850-436-6163
Email: trafferty@levinlaw.com


*Plaintiffs' Executive Committee:*

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Flr.
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008
Email: ecabraser@lchb.com

Don Barrett
BARRETT LAW GROUP,
404 Court Square, P.O Box 927
Lexington, MS 39095
Tel: 662-834-2488
Fax: 662-834-2628
Email: DonBarrettPA@gmail.com

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY &
 AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel: 973-994-1700
Fax: 973-994-1744
Email: jcecchi@carellabyrne.com

Erin K. Dickinson
CRUEGER DICKINSON LLC
4532 North Oakland Avenue
Whitefish Bay, WI 53202
Tel:	414-210-3767
Email: ekd@cruegerdickinson.com

James R. Dugan, II
THE DUGAN LAW FIRM, APLC
365 Canal Street, Ste. 1000
New Orleans, LA 70130
Tel:	504-648-0180
Fax:	504-648-0181
Email: jdugan@dugan-lawfirm.com

Paul J. Geller
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park, Road Ste. 500
Boca Raton, FL 33432
Tel:	561-750-3000
Fax:	561-750-3364
Email: pgeller@rgrdlaw.com

Michael J. Fuller
MCHUGH FULLER LAW GROUP
97 Elias Whiddon Road
Hattiesburg, MS 39402
Tel:	601-261-2220
Fax:	601-261-2481
Email: mike@mchughfuller.com

R. Eric Kennedy
WEISMAN KENNEDY & BERRIS CO., LPA
1600 Midland Bldg.
101 Prospect Avenue, W
Cleveland, OH 44115
Tel:	216-781-1111
Fax:	216-781-6747
Email: ekennedy@weismanlaw.com

W. Mark Lanier
LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069
Tel:	713-659-5200

Peter J. Mougey
LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY &
 PROCTOR, PA
316 South Baylen Street, Ste. 600
Pensacola, FL 32502
Tel:    850-435-7068
Fax:    850-436-6068
Email: pmougey@levinlaw.com

Ellen Relkin
WEITZ & LUXENBERG, P.C.
700 Broadway, 5th Floor
New York, NY 10003
Tel:    212-558-5715
Fax:    212-344-5461
Email: erelkin@weitzlux.com

Lynn Sarko
KELLER ROHRBACK
1201 Third Avenue, Ste. 3200
Seattle, WA 98101
Tel:    206-623-1900
Fax:    206-623-3384
Email: lsarko@kellerrohrback.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK PLLC
400 Broadhollow Road Ste. 305
Melville, NY 11747
Tel:    212-397-1000
Fax:    646-843-7603
Email: hunter@napolilaw.com

Christopher A. Seeger
SEEGER WEISS LLP
Christopher A. Seeger
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel:    973-639-9100
Fax:    973-639-9393
Email: cseeger@seegerweiss.com

- 5 -

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd. Ste. 1600
Los Angeles, CA 91436
Tel: 818-839-2333
Fax: 818-986-9698
Email: rtellis@baronbudd.com

James D. Young
MORGAN & MORGAN
76 South Laura Street Ste. 1100
Jacksonville, FL 32202
Tel: 904-361-0012
Fax: 904-366-7677
Email: jyoung@forthepeople.com

1736678.4