UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc

Declaration of

Alec Fahey, CPA

June 21, 2019

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re: Mallinckrodt plc                                                          Prepared by Alec Fahey, CPA

### A. PROFESSIONAL BACKGROUND

1. I am a Certified Public Accountant, a Certified Fraud Examiner and Certified in Financial Forensics. I am a member of the American Institute of Certified Public Accountants and the Association of Certified Fraud Examiners.

2. My professional background includes over 26 years of experience in financial and accounting investigations (sometimes referred to as Forensic Accounting). Additionally, I have over 8 years of experience in tax compliance, auditing and financial reporting conducted in accordance with Generally Accepted Auditing Standards and Generally Accepted Accounting Principles.

3. I have conducted and managed the accounting and financial evaluation aspects of many litigation and insurance matters related to the measurement of business damages, financial impact analysis, as well as financial fraud investigations, including: allegations of tax fraud, bank fraud, corporate schemes, earnings management, fraudulent transfers, misapplication of assets, alter ego, sham transactions, economic substance and arm's length transactions.

4. I have conducted domestic and international financial investigation assignments as a participant and a project manager in a multitude of industries, including: chemical, pharmaceutical, hotel and casino, banking, insurance, real estate, rental property, department store, supermarket chains, jewelry, construction, healthcare, accounting firms, law firms, brokerage and other manufacturing and service organizations.

### B. ENGAGEMENT AND SCOPE

I was engaged by **Co-Lead Counsel and Plaintiffs' Executive Committee in the above referenced litigation** on January 2, 2019, to provide forensic accounting services.

Specifically, the objective and scope of the investigation, as it relates to this Declaration, has been to determine whether Mallinckrodt plc ("Parent") controls and dominates its subsidiaries[1] and whether the control factors analyzed establish from a financial and accounting standpoint that the subsidiaries are agents of the Parent.

---

[1]*Subsidiaries include the U.S. subsidiaries that sold the opioid medications i.e. Mallinckrodt, LLC (from 2013 through 2017/2018) and SpecGX, LLC (from 2017 through the present).*

*Parent incorporated its new subsidiary SpecGX LLC in November 2016 and caused the transfer of Mallinckrodt LLC's tangible and intangible assets and operations to SpecGX during 2017 & 2018.*

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                                                                                  Prepared by Alec Fahey, CPA

## C.  DOCUMENTS REVIEWED

My review and analysis of public and other records covers the period after Mallinckrodt plc separated its pharmaceutical business from its former parent, Covidien plc, on June 28, 2013 through early 2019.

1. Mallinckrodt plc SEC filings:

    a. Post Covidien Period Forms 10-K for Fiscal years 2013 through 2018 (including various Credit Agreements & Corporate Documents found on SEC.gov).
    b. Covidien Period Forms 10-K for various years.
    c. Form 10-Q for the transition three-months period ended December 30, 2016.
    d. Form 10-Q for the three and nine-months period ended September 28, 2018.
    e. Net Debt Leverage Ratio report.
    f. 2018 Notice of Annual General Meeting of Shareholders and Proxy Statement.
    g. Spin-off Announcement and Presentation, Form 8-K dated December 6, 2018.
    h. Spin-off Announcement of Updated Plans dated May 28, 2019.

2. Mallinckrodt plc Irish Statutory Accounts for 2016 and 2017.
3. Deposition Transcripts of Jeff Kilper and Exhibits.
4. Organization charts.
5. Mallinckrodt Master Q&A dated August 8, 2013.
6. Corporate Secretary of State filings and various public records searches.
7. Administrative Memorandum of Agreement between the DEA and Mallinckrodt plc and its subsidiary Mallinckrodt, LLC dated July 10, 2017.
8. United States Patent and Trademark Office.
9. USAspending.gov for U.S. Government Contracts.
10. Public records related to Mallinckrodt, LLC and SpecGX, LLC permits related documents with North Carolina Department of Environment Quality, Hazardous Waste Section, Waste Management Division.
11. Mallinckrodt plc General Ledgers and Tax Returns.
12. Mallinckrodt plc Memorandum and Articles of Association under the Irish Companies Act dated December 21, 2012.
13. Various NewsRoom questions and answers transcripts of presentations made by Mallinckrodt plc Management team.
14. "Specialty Generics Strat Plan Update" - EC Meeting dated April 13, 2016 presented by Matthew Harbaugh SVP & CFO of Parent.
15. Credit Suisse "Project Georgetown Management Presentation" dated August 2017.
16. Various pleadings and motions.

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                                                                    Prepared by Alec Fahey, CPA

### D. CONCLUSIONS

This Declaration is prepared consistent with the application of the American Institute of Certified Public Accountants ("AICPA") Professional Standards and AICPA Statements on Standards for Consulting Services.

My fee is not contingent on the outcome of this matter.   I charge an hourly rate of $225 for review and analysis, research, report preparation and testimony.

Based on my review and analysis of the limited jurisdictional discovery records available to me to date, and with the understanding that I reserve the right to supplement, modify and expand my Declaration when and if additional information is presented, the following are my findings:

1. Parent, through its Board of Directors ("BoD") and common officers, controls its subsidiaries – not just through majority control but through domination – over finances, revenues, transfer, sale and assignment of assets, assumption of debt, strategy, vision, policy, business practices, marketing, reporting, budgets, management compensation in stock option awards - so that its subsidiaries, including Mallinckrodt LLC and SpecGX LLC, lack independence and have no control over their fate or existence.

2. Parent has extensive investment in its U.S. subsidiaries and enjoys substantial financial and tax benefits from its operations in the U.S. as it was "the largest U.S. supplier of opioid pain medications" with numerous U.S. Government contracts awarded and managed its U.S. operation as a component and "an integral part of <u>our</u> overall risk management program".

3. The control, domination and financial benefit factors which are identified in this Declaration, are relevant to the determination of the legal theory that Mallinckrodt, LLC and SpecGX, LLC are agents and/or alter egos of the Parent.

### E. MALLINCKRODT CORPORATE HISTORY

1. The "Mallinckrodt" name traces back to the Mallinckrodt brothers, who founded the company in St. Louis, Missouri, in 1867.

2. Mallinckrodt plc was formed on January 9, 2013 as an Irish public limited company in accordance with Ireland's Companies Acts 1963 to 2012.

   - The practice of forming an entity under Irish law was common at the time to take advantage of more favorable corporate tax laws available to companies with principal executive offices headquartered in the UK rather than the U.S.

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                              Prepared by Alec Fahey, CPA

3. Before 2013, the "Mallinckrodt Business" was owned by Covidien plc.

4. On June 28, 2013, according to the Separation and Distribution Agreement, the Board of Directors of Covidien plc determined that the "Mallinckrodt Business" including its assets and subsidiaries be operated by Mallinckrodt plc.

5. On December 6, 2018, Mallinckrodt plc Board of Directors authorized the spinoff or separation of the "Mallinckrodt Business" (described later in this Declaration as the U.S. opioid business) into a new publicly held entity that "will assume the Mallinckrodt name".

F. **SUMMARY OF FACTORS SUPPORTING PARENT CONTROL & DOMINATION AND NATURE OF ITS RELATIONSHIP WITH SUBSIDIARIES**

1. **Parent maintains a management structure that allows its BoD to develop the strategy and for senior management personnel to have management responsibility at both the Parent and the U.S. subsidiaries**:

    a. Common officers of the Parent and U.S. subsidiaries execute documents on behalf of both the Parent and its U.S. subsidiaries:

    For Example:

    - Michael-Bryant Hicks, Senior Vice President & General Counsel of both the Parent & Mallinckrodt LLC.  [EX 7 pg. 14]

    - John Einwalter, Director, Vice President and Treasurer of both the Parent & various subsidiaries including Mallinckrodt LLC.  [EX 8 pg. 15-19], [EX 11 pg. 18-20] & [EX 12 pg. 112]

    - Stephanie Miller, Company Secretary and Director of both the Parent & Mallinckrodt LLC.  [EX 11 pg. 18-20]

    b. Common officers of the Parent and U.S. subsidiaries evaluate the company's operating performance in conjunction with corporate staff, CEO and the BoD.  [EX 6 & EX 14]

    For Example:

    - Mark Trudeau, Parent President and CEO who is also the <u>Chief Operating Decision Maker</u> ("CODM").  CODM makes resource allocation decisions and assesses the performance of the business which includes the subsidiaries.

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                                                                    Prepared by Alec Fahey, CPA

- Matthew K. Harbaugh CFO of Parent and the subsidiaries and in November 2018 was appointed as Executive Vice President, Chief Financial Officer and President, Specialty Generics (SpecGX LLC).

- Kathleen A. Schaefer, Parent Corporate Controller and served as President of Mallinckrodt LLC and a member of its Board of Managers.

- Marvin R. Haselhorst, Parent VP-Global Tax and served as Vice President of Mallinckrodt LLC and a member of its Board of Managers.

c. Parent controls its subsidiaries' "marketing and sales strategies" and "promotional efforts" and "developed a robust Compliance Program" through its "own marketing and support sales force". [EX 1 & EX 16]

d. Parent created a new U.S. subsidiary, SpecGX LLC, to replace Mallinckrodt LLC[2] and transferred tangible and intangible assets and operations to SpecGX LLC while both entities were being managed by common officers of the Parent.

e. Parent, through its BoD, hired Credit Suisse and authorized to dispose of its U.S. opioid business in February 2018, even though it had previously reported the goodwill of this business segment as impaired only to reverse itself nine months later and authorized its spinoff to a new entity that would assume the Mallinckrodt name through SpecGX LLC, and in May 2019 it revised its product portfolio and <u>it</u> declared the anticipated members of the Board of Directors of <u>the new public entity</u>.

f. The spinoff decision was made even after years of "consistent and strong cash flows" from the U.S. opioid business "helped the transformation" of the new multi-billion-dollar specialty branded business that now the Parent wants to separate.

g. Parent awarded its executive management with a substantial compensation package that included stock awards, option awards, non-equity incentive and other compensation plans that <u>it</u> controlled through its BoD.

2. **Parent, <u>under its name</u>, maintains an organizational structure that consolidates design, manufacturing, marketing, sales, supply, reporting, compliance, administration and assumes its subsidiaries' liabilities, as a single economic entity**:

 a. Parent Memorandum and Articles of Association foundational governing document under the Irish Companies Act mandates and directs its BoD to design, manufacture

---

[2] *Mallinckrodt LLC was formerly known as Mallinckrodt, Inc. and changed its name to Mallinckrodt LLC in June 1997. Mallinckrodt, Inc. was founded in 1867 in St Louis, Missouri.*

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plcPrepared by Alec Fahey, CPA

        and supply pharmaceutical products, to co-ordinate the administration, finances and activities and to act as managers of any subsidiary companies and branches.

    b. Parent conducts its business under its trademark name "Mallinckrodt" and its website www.mallinckrodt.com. The "Mallinckrodt" name was founded in St. Louis, Missouri, 150 years ago.

    c. Parent reports its consolidated financial results by operating segment[3] as required by the SEC under one "Group" of "Trading Partners" offsetting its losses against its gains as a single economic entity.

    d. Segment reporting allows the CEO/Chief Operating Decision Maker and common officers of the Parent and its U.S. subsidiaries to exercise additional control over the single economic entity through control of how the business segments are constructed, what business metrics are reported and the allocation of the single economic entity resources.

    e. Parent maintains corporate assets to manage its U.S. subsidiaries "most notably" through its shared corporate services office in Hazelwood, Missouri.

    f. Parent assumed liabilities arising out of its Separation Agreement from Covidien and was required to indemnify and accepted its obligations of third-party claims including the DEA (Drug Enforcement Administration) and environmental liabilities. [EX 17 & EX 7-DEA AGREEMENT]

3. **Parent enjoys substantial financial benefit from U.S. Subsidiaries <u>and has sole discretion over financing</u>**:

    a. Although Parent is an Irish company, approximately 90% of its consolidated sales are derived from U.S. operations with extensive investment in its U.S. subsidiaries and numerous contracts awarded by the U.S. Government.

    b. Loans and notes are fully and unconditionally guaranteed by Parent and its direct or indirect wholly-owned subsidiaries and debt is secured by liens on all or any portion of the assets of the Parent or its subsidiaries.

    c. Parent borrows under a trade receivable securitization facility from sales generated by its U.S. subsidiaries.

---

[3] *Accounting Standards Codification 280 – Segment Reporting (ASC 280-10-50-1) describes "an operating segment as a component of a public entity that engages in business activities for which discrete financial information is both available and regularly reviewed by the chief operating decision maker (CODM) for the purpose of making operating decisions about the allocation of resources".*

**PAGE # 7**

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                                                                       Prepared by Alec Fahey, CPA

    d.  Parent, through its BoD, has sole discretion and retains the earnings of its U.S. & foreign subsidiaries.  It was its decision not to declare dividends to its shareholders and instead it decided to use the earnings to fund expansion of its business including acquisition of several pharmaceutical companies **in cash deals** and borrowings and investment in Research & Development and to repurchase its own stock.

    e.  Parent used substantial cash flows from U.S. subsidiaries to fund and "shelter" its corporate overhead, administrative and shared services costs.

    f.  Parent used substantial cash flows from U.S. subsidiaries to fund restructuring & separation costs including build-out of corporate infrastructure, implementation of new management and accounting systems, and severance and employee benefit costs related to the separation from Covidien in 2013.

    g.  Parent, as a result of owning and operating its U.S. subsidiaries, **enjoys hundreds of millions of dollars in tax benefits from the U.S. Tax Cuts & Jobs Act ("TCJA") and from the U.S. Orphan Drug and Research Tax Credits**[4].  [EX 29]

---

[4]*The orphan drug credit is a federal tax credit available to businesses that gives pharmaceutical companies incentives to develop medications and treatments for rare diseases.*





SOURCES: MALLINCKRODT PLC CONSOLIDATED STATEMENTS OF CASH FLOWS

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                                              Prepared by Alec Fahey, CPA

## G. DETAIL ANALYSIS OF FACTORS SUPPORTING PARENT CONTROL & DOMINATION AND NATURE OF ITS RELATIONSHIP WITH SUBSIDIARIES

1. Parent conducts <u>its</u> "businesses and product sales and marketing strategies" under <u>its trademark name "Mallinckrodt"</u>[5] and/or "the Group," "us," "we," "the Company" or "our" and it files its consolidated financial results with the SEC and Irish Statutory Accounts offsetting its losses against its gains as one "Group"[6]. (Underlined for emphasis.) [EX 1 & EX 16]

2. Parent foundational governing document under the Irish Companies Act "Memorandum and Articles of Association" states that "the objects for which the Company is established are": [EX 2]

   - "To carry on the business of a healthcare services development company operating in the healthcare field, and to <u>design, manufacture, produce, supply and provide generic and branded pharmaceuticals</u>, active pharmaceutical ingredients and dosage pharmaceuticals…necessary or suitable for the proper treatment of sick or injured persons or patients".

   - "<u>To co-ordinate the administration, finances and activities</u> of any subsidiary companies…to carry on in all <u>its branches</u> the business of <u>a management services company</u>, <u>to act as managers</u> and to direct or co-ordinate the management of other companies or of the business…<u>as may be deemed expedient</u> by the Company's board of directors..."

3. Although Parent is an Irish Company, 90% of all sales and 93% of all manufacturing production costs are conducted in the United States. [EX 3 (2015 through 2017)]

4. Parent enjoys economic benefits from substantial **U.S. Government contracts** with the ███████████████████████████████████████████████████████ [EX 4]

5. Parent reports its net sales by operating segment, as required by the SEC, and by product, i.e., generics opioid and branded opioid and non-opioid products, as a single economic entity and identifies its U.S. opioid business as a "business unit". (An operating segment is also known as **a component of a public entity**). [EX 5 & EX 23 pg. 4 "Business Unit"]

---

[5] *Parent uses its trademark name "Mallinckrodt™" and its website www.mallinckrodt.com on its Medication Guide that has been approved by the U.S. Food and Drug Administration. The Medication Guide identifies its U.S. subsidiary Mallinckrodt, Inc. or SpecGX LLC, as the "distributor" or "manufactured for".*

[6] *The term "Group" was mentioned in 523 instances in the 2017 Irish Statutory Accounts.*

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                                                                      Prepared by Alec Fahey, CPA

6. Parent maintains an integrated management and manages its U.S. subsidiaries through numerous overlapping officers and maintains "corporate assets used to manage the Company's total business," "shared facilities" and "corporate shared services office in the U.S." [EX 6 & EX 23 pg. 73]

   The U.S. subsidiaries' common officers with the Parent executed documents on behalf of both Parent and its U.S. subsidiaries, which included[7]:

   - The Administrative Memorandum of Agreement between the DEA, the Parent and its U.S. subsidiary Mallinckrodt LLC, was executed by Michael-Bryant Hicks, Senior Vice President & General Counsel, on behalf of both the Parent & Mallinckrodt LLC. [EX 7 pg. 14]

   - Notice of Grant Security Interest in Patents was executed by John Einwalter, Director, Vice President and Treasurer, on behalf of both the listed subsidiaries (including Mallinckrodt LLC) and Parent Financing subsidiary, in favor of Parent lender Deutsche Bank. [EX 8 pg. 15-19]

   - Credit Agreement between Parent and numerous subsidiaries (including Mallinckrodt LLC) and its lender Deutsche Bank, was executed by John Einwalter, Vice President and Treasurer and Stephanie Miller, Company Secretary and Director on behalf of both the Parent and its subsidiaries. [EX 11 pg. 18-20]

   - Amended and Restated Note Purchase Agreement between Parent subsidiary Mallinckrodt Securitization s.à.r.l., Mallinckrodt LLC and various third-party lenders, was executed by John Einwalter (Vice President) on behalf of Mallinckrodt LLC. [EX 12 pg. 112]

7. The "Shared facilities," "corporate shared services office" and "corporate assets used to manage the Company's total business" in the U.S. include "IT, Finance, Human Resources, Corporate Compliance, Communications & Government Affairs". [EX 23 pg. 73]

8. Parent declared that it was "the largest U.S. supplier of opioid pain medications… and we have a long history of working with regulators", and its business "can trace its development from the founding of G. Mallinckrodt in 1867…to become th█████████████████████████████████████████████████████████████ The "Mallinckrodt name founded in St. Louis over 150 years ago". [EX 9 & EX 26 pg. 3]

---

[7] *Defendant Jurisdictional Discovery did not include the production of any Agreements (other than the Covidien Separation & DEA Agreement).  The Agreements I identified in my Declaration do not represent all possible Agreements that exist, and are limited to only those I located via Government website.*

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                                              Prepared by Alec Fahey, CPA

9. Mallinckrodt sold opioid products for many years before its separation from Covidien in June 2013. Between 1996 and 2017, "Mallinckrodt" reported gross sales of opioid products in the amount of ▌▌▌▌▌▌▌. [EX 10]

   Before Mallinckrodt's separation from Covidien in June 2013, Mallinckrodt's gross sales of opioid products were about ▌▌▌ billion (between 1996 and June 2013) and approximately $▌ billion after its separation from Covidien (July 2013 through, 2017).

   <u>Note</u>:  Amounts above do not include gross sales of opioid Active Pharmaceutical Ingredients (API).

10. Parent, in its Credit Agreements with its lender Deutsche Bank, agreed that its "<u>Consolidated Secured Debt</u>" is "**secured by liens on all or any portions of the assets of the Parent or its subsidiaries**". [EX 11 pg.55]

11. Parent, is required by its lenders to "limit" the disposition of all subsidiaries' cash flows, capital expenditures spending and requires submission of annual budgets on a "consolidated basis" approved by a Financial Officer of the Parent. [EX 11 pg. 2, 55, 62, 63, 65 & 179]

12. The Term Loan and Revolving Credit Facility "are fully and unconditionally guaranteed by Mallinckrodt plc, certain of its direct or indirect wholly-owned U.S. subsidiaries <u>and each</u> of its direct or indirect wholly-owned subsidiaries that owns directly or indirectly any wholly-owned U.S. subsidiaries and certain of its other subsidiaries (collectively, 'the Guarantors')". [EX 12 pg. 2-3]

13. Parent "borrows" money on "<u>its</u> receivable securitization" on accounts receivable generated from sales of opioid medications through Mallinckrodt LLC which was required to maintain "Lock-Box Accounts" "of all collections of its receivables for the benefits of the Secured Parties" with "priority" restrictions on the "distribution" of the receivables "collections". [EX 12 pg. 3-4 & pg. 46]

   Common officer of the Parent and many of its subsidiaries, John Einwalter, Vice President, executed the Amended and Restated Note Purchase Agreement on behalf of Mallinckrodt LLC. [EX 12 pg. 112]

14. Parent calculates and reports its NET DEBT LEVERAGE RATIO based on its **consolidated** financial statements. This calculation is performed "in accordance with the Parent's Credit Agreements and used for the purpose of testing the financial covenant in Section 6.12 of the agreement". [EX 13]

15. Parent, through its overlapping management, "use adjusted financial measures, along with measures in accordance with Generally Accepted Accounting Principles (GAAP) to evaluate the Company's operating performance". [EX 14]

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                                    Prepared by Alec Fahey, CPA

16. Parent, through its BoD and its overlapping management, controls all of its managements' and employees' "Stock and Incentive Plan/Option Award" and "Supplemental Savings & Retirement Plan". [EX 15]

17. Parent controls its subsidiaries' "marketing and sales strategies" and "promotional efforts" and "developed a robust Compliance Program" and "have implemented an internal cross-functional processes to review and approve product-specific materials, presentations and external communications to address the risk of misbranding or mislabeling our products through our promotional efforts". [EX 16]

    "Our ability to maintain and increase net sales…depends on several factors, including our ability to increase market demand for products through our own marketing and support of our sales force". [EX 16 pg. 9]

    "We market our generic products principally through drug distributors, specialty pharmaceutical distributors, retail pharmacy chains, food store chains with pharmacies, pharmaceutical benefit managers that have mail order pharmacies and hospital buying groups". [EX 16 pg. 11]

18. Parent agreed to and is required to indemnify and/or accept obligations of third-party claims on "matters related to our business", such as Covidien on "assumed or retained liabilities arising out of its Separation Agreement," and other third parties such as "purchasers" of businesses it sold, environmental liabilities and the DEA. [EX 17 & EX 7- DEA AGREEMENT]

19. Parent used the opioid business cash flows, primarily from its U.S. subsidiaries to fund the majority (over 50%) of its separation and restructuring costs after its separation from Covidien, including millions of dollars to "build-out our corporate infrastructure," "legal, accounting, tax & professional fees to implement information and accounting systems, severance & employee benefits costs" in 2013 & 2014. [EX 18]

20. Parent, "as it deems expedient", commingles its assets between its U.S. subsidiaries and authorizes inter-company transfer of assets through its overlapping officers.

    Eric Berry (Vice President - Environmental Law), a common officer of the Parent and its U.S. subsidiaries Mallinckrodt LLC and Mallinckrodt Nuclear Medicine LLC, executed a letter to the U.S. Nuclear Regulatory Commission to inform them of the transfer of assets between the two subsidiaries, stating that the Parent "indirectly owns all of the stock of Mallinckrodt LLC" and that "Mallinckrodt Nuclear Medicine LLC has the same ultimate parent company." [EX 19]

21. Parent formed a new U.S. subsidiary, SpecGX LLC, in late 2016.  During 2017, the U.S. subsidiary Mallinckrodt, LLC transferred its assets, operations and patents to SpecGX,

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re: Mallinckrodt plc                                                                 Prepared by Alec Fahey, CPA

LLC. **Both SpecGX LLC & Mallinckrodt LLC have Common Officers with themselves and with the Parent**. [EX 6 & EX 28]

22. Parent commingles its funds with its subsidiaries in the hundreds of millions of dollars through the use of inter-company transfers and used cash flows from the opioid business to fund its corporate overhead, selling, general and administrative and "shared services" costs. [EX 20 & EX 25 pg. 3 & pg. 7]

23. Parent, through its BoD, "**has sole discretion**" of its subsidiaries' cash flows and "**retains earnings to finance acquisitions, R&D (Research & Development) and the operation and expansion of our business**" and to "**repurchase**" its own stock and its own "**debt securities**". [EX 21]

24. As a result, Parent retains and commingles the net cash flows generated from the opioid and the new branded business including proceeds from loans and the sale of "business units" that existed <u>before</u> and after its separation from Covidien.

    Parent leveraged the cash, that it has sole control of, to fund the following: [See charts presented in Declaration]

    - acquisitions of drug companies that cash flows from the opioid business "helped fund the transformation" of new branded products that now the Parent wants to separate. (Discussed in detail below).
    - investment in research and development and capital expenditures.
    - stock repurchase program.
    - debt financing and repayment of debt.
    - Parent's corporate overhead, administrative, marketing and "<u>shared services</u>" costs and substantial executive compensation.

25. Parent, through its BoD and staff at corporate headquarters, maintains "Group Accounting Policies" and reported on its December 30, 2016 quarterly report that its Specialty Generics (opioid generics business) segment goodwill is impaired and it began attempts to sell the U.S. generics and branded opioid business[8]. [EX 22]

---

[8] *Jeffrey Kilper "employed by Mallinckrodt in the finance Department", in his deposition dated February 6, 2019 testified "*  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

**PAGE # 16**

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re: Mallinckrodt plc                                                                                    Prepared by Alec Fahey, CPA

26.  [EX 23 pg. 2 & pg. 4]

27. In fact, Parent admits that its "transaction rational" to sell the opioid business is because its "long-term future" and "growth strategy is to build a leading Specialty Brands Business". [EX 23 pg. 9 & EX 25]

28. Nine months later, on December 6, 2018, Parent (through its BoD) terminated its earlier "vision" to dispose of the opioid business and announced a new "strategic alternative" and a plan to split the company and spin off the opioid business into a new publicly held entity that "will assume the Mallinckrodt name" through SpecGX, LLC. [EX 24 pg. 3, 4, 9 & 19]

29. This action by the Parent's BoD authorized the separation of its impaired opioid business from its non-opioid new branded business even <u>after</u> "the strong cash flow generation" from the opioid business "helped fund" the new branded business "transformation" and "sheltered" Parent's corporate overhead, administrative and shared services costs for many years. [EX 25 pg. 3, 7, 15] & [EX 23 pg. 9 & 10]

30. After billions of dollars of U.S. opioid business "strong" and "consistent cash flows" that "helped fund" the new branded business "transformation", debt service, "sheltering corporate" costs and funding separation & restructuring costs from Covidien, the Parent (through its BoD) now wants to separate the assets, risks and liability associated with the impaired opioid business away from the new branded business. [Charts & EX 22, EX 23 & EX 25]

31. Mr. Trudeau, President, CEO and Director of Parent, in a NewsRoom call dated December 6, 2018, to discuss the spin-off or separation of the opioid business from the new specialty branded business, stated that "the risks and liabilities associated with these businesses, including certain legacy environmental matters will follow the assets in the spin". [EX 26 pg. 3]

32. Parent, again "as it deemed expedient" in its update announcement on the spin-off dated May 28, 2019, announced the "**Anticipated Board of Directors of the New Specialty Generics Company**", i.e. the U.S. opioid business.

---

[9] *Jeffrey Kilper "employed by Mallinckrodt in the finance Department", in his deposition dated February 6, 2019 testified* ▮▮▮▮▮

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                                                          Prepared by Alec Fahey, CPA

      Furthermore, the Parent declared a "**Revised Business Profile of the New Generics Business Company**" and "**it has been determined** that the AMITIZA product" (a non-opioid branded product) "should remain in the Specialty Brands company", reversing its original "strategic alternative" plan that it was to be included in the spin-off company of the opioid business.  [EX 27 & EX 24]

33. As previously stated, after the spin-off, the U.S. opioid business will conduct its operations through SpecGX LLC, the new U.S. subsidiary that was formed by the Parent to replace Mallinckrodt LLC - both are managed by common officers with the Parent.

34. It is significant that Parent's financial and ownership data were part of "financial assurances" provided for both Mallinckrodt LLC and SpecGX LLC in their applications to obtain a "Hazardous Waste Management Permit" with NC Division of Waste Management. [EX 28]

35. Furthermore, it is significant that Parent's BoD's names and Mallinckrodt LLC's officers' names, that include overlapping officers, were provided as part of a license transfer consent request for Mallinckrodt LLC to the U.S. Nuclear Regulatory Commission, submitted by Mallinckrodt Pharmaceuticals.  The license transfer consent request was executed by Eric Berry, a common officer of Parent and its U.S. subsidiaries.  [EX 28 & EX 24, pg. 19]

36. Parent, as a result of owning and operating its U.S. subsidiaries ("the Group"), enjoys substantial tax benefits in the United States, for example as follows: [EX 29]

    - $456.9 million in tax benefits in 2017 from the U.S. Tax Cuts & Jobs Act ("TCJA").

    - Millions of dollars in tax benefits from the U.S. Orphan Drug & Research Tax Credits.

National Prescription Opiate Litigation, MDL 2804 Case No. 1:17-md-2804

Re:  Mallinckrodt plc                                         Prepared by Alec Fahey, CPA

I declare under penalty of perjury under the laws of the State of North Carolina that the facts I have provided on this Declaration are true.

Signed

*ALEC FAHEY*

Alec Fahey CPA

June 21, 2019

_____

Signed in Mooresville, NC, Iredell County