**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **IN RE: NATIONAL PRESCRIPTION** | ) | |
| **OPIATE LITIGATION** | ) | MDL No. 2804 |
| | ) | |
| This document relates to:  ALL CASES | ) | Hon. Judge Dan A. Polster |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM OF CERTAIN DEFENDANTS IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CERTIFICATION OF RULE 23(b)(3)
CITIES/COUNTIES NEGOTIATION CLASS**

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

PLAINTIFFS' MOTION ..............................................................................................................2

ARGUMENT ................................................................................................................................3

I.      Defendants Have a Fundamental Interest in This Motion. .................................................4

II.     Rule 23 Does Not Authorize Certification of a "Negotiation" Class. ...............................5

III.    Rule 23 Does Not Authorize Certification of a Class That is Untethered to a
        Specific Lawsuit in Which the Proposed Class Representatives Are Plaintiffs. .................8

IV.     "Preliminary Approval" and Pre-Certification Notice Are Not Available Here. .............10

V.      Plaintiffs Have Failed to Demonstrate that the Substantive Requirements of Rule
        23 Are Satisfied................................................................................................................13

        A.      Conflicts Within the Class and for Class Counsel Preclude a Finding of
                Adequacy of Representation. ..................................................................................16

        B.      Plaintiffs Have Made No Meaningful Effort to Demonstrate that the
                Proposed Class Members are Typical.....................................................................21

        C.      Plaintiffs Have Not Created a Record Upon Which the Court Could Make
                Findings of Commonality and Predominance........................................................23

        D.      The Proposed Class Does Not Offer a Superior Method of Resolving Class
                Members' Claims....................................................................................................27

CONCLUSION............................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................ *passim*

*Baatz v. Columbia Gas Transmission, LLC*,
814 F.3d 785 (6th Cir. 2016) ........................................................................................8

*Cincinnati v. Beretta U.S.A. Corp.*,
768 N.E.2d 1136 (Ohio 2002) ....................................................................................25

*City of Chicago v. Beretta U.S.A. Corp.*,
821 N.E.2d 1099 (Ill. 2004) ........................................................................................25

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ........................................................................................11

*East Texas Motor Freight Sys. Inc. v. Rodriguez*,
431 U.S. 395 (1977) ......................................................................................................9

*Wolfert ex rel. Estate of Wolfert v. Transam. Home First, Inc.*,
439 F.3d 165 (2d Cir. 2006) ........................................................................................28

*Gawry v. Countrywide Home Loans, Inc.*,
640 F. Supp. 2d 942 (N.D. Ohio 2009) ........................................................................9

*Grewal v. Purdue Pharma L.P.*,
2018 WL 4829660 (N.J. Super. Ct. Ch. Div. Oct. 2, 2018) ......................................26

*Hayes v. Eagle-Picher Indus., Inc.*,
513 F.2d 892 (10th Cir. 1975) ....................................................................................21

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ................................................................................23, 25

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) ........................................................................................18

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2005) ..........................................................................................7

*In re Dry Max Pampers Litig.*,
724 F.3d 713 (6th Cir. 2013) ................................................................................13, 16

*In re Johns-Manville Corp.*,
    552 B.R. 221 (Bankr. S.D.N.Y. 2016) ................................................................8

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ................................................................20

*In re Polyurethane Foam Antitrust Litig.*,
    2012 WL 12868246 (N.D. Ohio Jan. 23, 2012) ................................................16

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012) ................................................................7

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ................................................................14

*State ex rel. Jennings v. Purdue Pharma L.P.*,
    2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019) ................................................26

*Martin v. Behr Dayton Thermal Prod. LLC*,
    896 F.3d 405 (6th Cir. 2018) ................................................................28

*Mays v. Tenn. Valley Auth.*,
    274 F.R.D. 614 (E.D. Tenn. 2011) ................................................................27

*Pearl v. Allied Corp.*,
    102 F.R.D. 921 (E.D. Pa. 1984) ................................................................27

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ................................................................14, 25

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
    654 F.3d 618 (6th Cir. 2011) ................................................................27

*Reeb v. Ohio Dep't of Rehab. & Correction*,
    435 F.3d 639 (6th Cir. 2006) ................................................................14

*Richardson v. Wells Fargo Bank, N.A.*,
    839 F.3d 442 (5th Cir. 2016) ................................................................28

*Rutherford v. City of Cleveland*,
    137 F.3d 905 (6th Cir. 1998) ................................................................17

*Slade v. Progressive Sec. Ins. Co.*,
    856 F.3d 408 (5th Cir. 2017) ................................................................26

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011) ................................................................4

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................................9

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) .................................................................22, 23, 25

*Stanich v. Travelers Indem. Co.*,
  259 F.R.D. 294 (N.D. Ohio 2009) .......................................................................26

*State v. Purdue Pharma L.P.*,
  2018 WL 4468439 (Alaska Super. Ct. July 12, 2018) .........................................26

*North Dakota ex rel. Stenehjem v. Purdue Pharma L.P.*,
  2019 WL 2245743 (N.D. Dist. Ct. May 10, 2019) ..............................................26

*Tax Auth., Inc. v. Jackson Hewitt, Inc.*,
  898 A.2d 512 (N.J. 2006) .....................................................................................21

*Vassalle v. Midland Funding LLC*,
  708 F.3d 747 (6th Cir. 2013) .........................................................................11, 27

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*,
  206 F.R.D. 271 (C.D. Cal. 2002) .........................................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... *passim*

*Whitlock v. FSL Mgmt., LLC*,
  843 F.3d 1084 (6th Cir. 2016) .............................................................................16

## INTRODUCTION

Certain defendants ("defendants")[1] respectfully submit this memorandum in opposition to plaintiffs' Motion for Certification of Rule 23(b)(3) Cities/Counties Negotiation Class (Dkt. No. 1683, as corrected in Dkt. No. 1690).

While the proposal embodied in this motion is creative, it is fatally flawed, both legally and practically.  Rule 23 simply does not authorize the Court to certify the proposed class, either through the process plaintiffs have proposed or otherwise.  Plaintiffs' proposal might be of interest to the United States Congress or the Federal Rules Advisory Committee.  But under both the clear language of Rule 23 and the unambiguous interpretations of that language by the Supreme Court, the proposed class is not eligible for certification and therefore cannot serve as a mechanism for resolution of this litigation.

Of equal concern to defendants are elements of plaintiffs' proposal – such as a complex requirement of six separate nationwide supermajority approval votes that would almost certainly never be achieved – which make it extremely unlikely that this approach could ever lead to a successful settlement.  For this and other reasons, these defendants, although highly respectful of the settlement process, would be unlikely to participate in settlement discussions with this class as currently proposed.  The diversion of party and judicial resources away from more constructive efforts to resolve this litigation is counterproductive to the objective of reaching a reasonable resolution.

Defendants accordingly urge the Court to deny plaintiffs' motion.  At a minimum, the Court should deny the "preliminary approval" and pre-certification class notice plaintiffs seek – neither of which is authorized under Rule 23 – and should instead require the development of the full record required to evaluate any class certification question.

---

[1] AmerisourceBergen Drug Corporation, Cardinal Health, Inc., McKesson Corporation, and Prescription Supply Inc.

In opposing the pending motion, defendants do not mean to suggest that no settlement class could ever be approved in this litigation, and nothing stated in the following discussion should be a ground for estopping defendants from supporting certification of a settlement class that complies with Rule 23.  The following criticisms are aimed only at the pending motion.

## PLAINTIFFS' MOTION

The proposed class includes all cities, counties, and similar entities regardless of where – or if – they have filed suit.  It does *not* include states, state agencies, Indian Tribes, or other persons or entities who have suits pending in this MDL and whose participation – especially in the case of the states – would be essential to any resolution providing global peace for defendants.  It is unclear whether the class definition that is presented would cover claims asserted by cross-cutting or joint entities associated with cities or counties, such as regional fire districts; the coverage of entities owned or controlled by cities and counties, such as public hospitals, is also unclear.

Only one single class is proposed, with no subclasses.  Thirty-nine class representatives are identified.  The overwhelming majority are large cities (such as Chicago and Los Angeles) or populous counties in which such cities are located, and all claim to be among those hardest hit by the opioid crisis.  These entities are plaintiffs in 38 different lawsuits pending in this MDL. Plaintiffs do not identify any particular case in which certification is sought; their motion is captioned for "all cases" in this MDL.

Plaintiffs propose that the members of the Plaintiffs' Executive Committee ("PEC") be appointed as class counsel.  Each of these law firms represents a wide variety of clients with claims against these defendants both in the MDL and in various state courts.  Several represent one or more state Attorneys General.

2

The Memorandum in Support of the motion ("Mem.") explicitly states that "[t]his is **not** a Rule 23(e) motion for settlement class certification."  Mem. at 8.  Yet, for reasons that are not explained, plaintiffs propose a certification procedure – beginning with an early preliminary approval, followed by class notice and a later final approval hearing – that is derived from the *settlement class* procedures of Rule 23(e) and is not otherwise provided for in Rule 23.  Plaintiffs further state that "[t]his is also **not** a Rule 23(b)(3) motion to certify a class for trial."  *Id.* at 8-9.

Although plaintiffs' memorandum in support of the motion is 68 pages long, it contains little discussion of the standards under Rule 23 or the applicable case law.  Rather, most of the document focuses on the benefits of achieving a global settlement in this litigation and a description of the elaborate process plaintiffs propose for later approval of settlements that their proposed class might enter into.  No evidence is supplied with the motion, and although a number of factual assertions are offered, none are supported with citations to the record.

Plaintiffs' motion discusses at length their proposition that it would be both efficient and appropriate for cities and counties with claims against the defendants to band together for purposes of negotiating and allocating settlements with the defendants, with broad active participation in that effort.  Notably absent from the motion, however, is any explanation for why such cooperation could not be organized and implemented by these entities *without* the certification of a "class" for that purpose.

## ARGUMENT

Defendants do not submit this Opposition lightly.  They are acutely aware of the benefits that could accrue if a legally supportable mechanism were available to permit global settlements in this litigation.  But the proposal presented in plaintiffs' motion, as currently framed, is not legally supportable.  Given the immense complexity of this litigation and the limited resources available to deal with it, defendants urge that the Court deny the motion.

## I.      Defendants Have a Fundamental Interest in This Motion.

Plaintiffs may argue that defendants have no current standing to oppose this motion, because certification is not sought for litigation purposes and no defendant would be obligated to engage in settlement discussions with the class.[2]  Any such argument would be without merit.

Defendants have a fundamental interest in ensuring that any certification of a class in this litigation, and subsequent proceedings involving that class, comply scrupulously with the law, including Rule 23.  The proposed process is of practical value only if, at the end of the day, it generates a valid and enforceable settlement.  This in turn requires compliance with Rule 23 and other applicable legal requirements.  If such compliance cannot be assured, defendants will have no incentive to negotiate a settlement with the class, as they will have no assurance that the release and judgment granted in return for the settlement consideration they might offer will be enforceable.  *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) (confirming that "a properly conducted class action, with binding effect on nonparties, can come about in federal courts in just one way—through the procedure set out in Rule 23"); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 622 (1997) (overturning global class settlement of asbestos claims based on failure to comply with Rule 23).

Even if, as plaintiffs assert, defendants would have the option of declining to negotiate with the class, defendants would be materially harmed by an improper certification that diverted the limited resources available to support and promote resolution of the litigation, whether through settlement or otherwise, along a path that at the end of the day could not be relied upon to achieve meaningful results.

---

[2] Plaintiffs' proposed order does not include any reassurance on this point, however.  It is defendants' understanding that plaintiffs' proposal assumes and concedes that, even if this class were certified: (1) the certification would not preclude other settlement procedures or structures to resolve putative class members' claims; (2) defendants would not be obligated to negotiate with the class; (3) class certification would not give any class member or other entity the right to object to a settlement negotiated through other means or with other entities that does not follow the proposed class procedures (including the proposed voting provisions); and (4) certification of a negotiation class would not provide any basis for certification of a trial class or estop defendants from opposing any subsequent motion seeking such a class.  None of these critical assurances are included in plaintiffs' proposed order.

Defendants also have a legitimate interest in ensuring that the Court does not make findings – as Rule 23 requires before any certification can occur – that are inaccurate and that could be construed as binding in other contexts.  Plaintiffs assert that "certification of this Negotiation Class would ***not*** be precedent or support of any kind for the certification of any litigation-purposes class … and ask the Court to so order." Mem. at 9.  Notably, however, their proposed order contains no such limiting language.  Nor would either plaintiffs or this Court be in a position to prevent a *different* court from relying on those findings as if they had been made in full compliance with Rule 23.  As discussed in more detail below, plaintiffs' motion implicitly asks the Court, in the interests of expediency, to make findings under Rule 23 for which plaintiffs have made no effort to establish a record.  Even if such a ruling were proper – and it would not be – it would threaten harm to defendants that could go well beyond the context of this motion.

## II.     Rule 23 Does Not Authorize Certification of a "Negotiation" Class.

Plaintiffs' motion is explicit in stating that the class they are seeking would be certified *neither* for litigation purposes *nor* as a "settlement class" created for purposes of obtaining judgment on an existing agreed-upon settlement.  Mem. at 8-9.  Plaintiffs further acknowledge that such a class would be unprecedented.  *Id.* at 4.  Nonetheless, plaintiffs suggest that such a class is permissible because Rule 23 does not expressly *forbid it*.  *Id*.  That is not how the Supreme Court interprets and applies Rule 23.

The Federal Rules cannot generally be construed as *authorizing* an action merely because they fail to *prohibit it*.  This is particularly important in the context of Rule 23, which the Supreme Court has identified as establishing a procedural mechanism – the class action – that is a departure from the norm.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).  The Court construes Rule 23 strictly, according to its terms.  *Id.* at 363 ("a mere negative inference does not in our view suffice to establish a disposition that has no basis in [Rule 23]'s text, and

that does obvious violence to the Rule's structural features"); *see also Amchem*, 521 U.S. at 620 (district courts are bound by Rule 23 as written and may not adjust it through "judicial inventiveness").

Plaintiffs' motion seeks to use Rule 23 to create an organization – something akin to the National League of Cities (*see* Mem. at 11) – that would facilitate agreements among the class members and pursue negotiations on their behalf with defendants, as well as with the states that are not part of this MDL.  That is not authorized under Rule 23.  The Rule authorizes the certification of classes for purposes of pursuing standard *judicial* activity – the litigation of claims – with an explicit and carefully delineated addition allowing judgment to be entered on class settlements.  These are activities that stem directly from the courts' Article III powers, which are limited to the adjudication of concrete cases and controversies ending in entry of a judgment.  Neither Article III nor Rule 23 provide a generalized authorization for courts to certify a class to pursue other activities in the interests of its members.  There is, for example, no authority to create a "discovery class"; nor is there authority to certify a class for purposes of negotiating contractual arrangements among class members.

To be sure, Rule 23 does contemplate certification of a class for purposes of *entering judgment* on a class settlement.  Rule 23(c)(2)(B) states:  "For any class certified under Rule 23(b)(3) – or upon ordering notice under Rule 23(e)(1) to *a class proposed to be certified for purposes of settlement under Rule 23(b)(3)* – the court must direct to class members the best notice that is practicable under the circumstances."  (Emphasis added.)  Similarly, Rule 23(e) states:  "The claims, issues, or defenses of a certified class – *or a class proposed to be certified for purposes of settlement* – may be settled, voluntarily dismissed, or compromised only with the court's approval."  (Emphasis added.)  However, certification "for purposes of settlement" is authorized only if there is a duly negotiated settlement.  *See* Fed. R. Civ. P. 23(e).  Indeed, Rule

23(e) requires a court to conduct a preliminary evaluation of the settlement terms *before* it may authorize issuance of class notice.  *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment (court may "direct notice to the class regarding a proposed class-action settlement only after determining that the prospect of class certification and approval of the proposed settlement justifies giving notice.").

Thus, a court approving a class settlement under Rule 23 is engaging in the judicial function of entering a judgment of approval on a class settlement, and a class is certified for the purpose of enabling that *judicial* function to be performed.  Certifying a class solely for purposes of negotiations, with no concrete judicial function to be performed, is fundamentally different.

Moreover, as discussed further in Section V below, certification of even a settlement class requires findings, based on a proper evidentiary record, that are consistent with the proposition that the case *could* have been actively litigated as a class action in compliance with Rule 23.  Plaintiffs have failed entirely to establish any such record here.

Plaintiffs suggest (Mem. at 12-13) that their proposal may properly be analogized to Section 524(g) of the Bankruptcy Code, which allows a debtor facing asbestos claims to establish a trust, to which the bankruptcy court may order all asbestos claims to be directed if, *inter alia*, the terms of the debtor's reorganization are approved by a super-majority of claimants. 11 U.S.C. § 524(g); *see In re Combustion Eng'g, Inc.*, 391 F.3d 190, 201 n.4 (3d Cir. 2005). Plaintiffs argue that "[i]t would be bizarre to leave the powers to prepackage a voting resolution of a complicated dispute in the hands of an Article I tribunal, but not the Article III tribunal." Mem. at 13.  Whether "bizarre" or not, that is what Congress chose to do.  And only Congress can expand the asbestos bankruptcy statute to apply elsewhere.[3]

---

[3] Similarly, plaintiffs' assertion that it would be "second nature" to take a similar approach if the opioid crisis were being resolved in a bankruptcy court (Mem. at 13) ignores the fact that Section 524(g) applies only to asbestos claims.  *See In re Combustion Eng'g*, 391 F.3d at 234 n.46.  Bankruptcy courts have emphasized that there is a clear distinction between Section 524(g) and Rule 23.  *See In re W.R. Grace & Co.*, 475 B.R. 34, 194 (D. Del. 2012)

Plaintiffs' motion also suggests that "issue" certification under Rule 23(c)(4) might authorize the Court to certify a class for negotiation purposes.  Mem. at 64.  Such an interpretation is not supported by either the language of the rule or Sixth Circuit precedent.  Rule 23(c)(4) provides:  "When appropriate, an *action* may be *brought or maintained* as a class action with respect to particular issues."  (Emphasis added.)  The proposal here does not involve bringing or maintaining an "action" – a civil action to be litigated.  *Cf.* Fed. R. Civ. P. 2 ("There is one form of action – the civil action.").  Nor is settlement a substantive "issue" contested by the parties.  The Sixth Circuit has indicated that Rule 23(c)(4) certification is not to be used for any purpose other than trial.  *See Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 792 (6th Cir. 2016) (noting that Rule 23(c)(4) is used for "bifurcating the proceedings to allow class *litigation* as to liability while leaving damages for individual determinations") (emphasis added).  *See also* Fed. R. Civ. P. 23(c) advisory committee's note to 1966 amendment ("Subdivision (c)(4) … recognizes that an action may be maintained as a class action as to particular issues only.  For example, … the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims.").

In short, Rule 23 does not authorize certification of a "Negotiation" class.

### III.    Rule 23 Does Not Authorize Certification of a Class That is Untethered to a Specific Lawsuit in Which the Proposed Class Representatives Are Plaintiffs.

There is another fundamental defect in plaintiffs' class certification proposal:  It is not tied to any specific lawsuit with concrete parties.  Rather, the motion is filed with a caption saying that it relates to "All Cases" in this MDL.  It identifies the proposed class representatives as plaintiffs in dozens of different cases now pending in the MDL, Mem. at 14-36, but the

---

(confirming that Bankruptcy Code standards and Rule 23 are not the same); *In re Johns-Manville Corp.*, 552 B.R. 221, 244 (Bankr. S.D.N.Y. 2016) (same).

motion is not limited to the specific cases in which those entities are plaintiffs; it is not even limited to cases brought by plaintiffs that would be members of the class.

Nothing in either Rule 23 or the MDL statute authorizes an MDL court to certify a free-floating "MDL class" that is untethered to any specific lawsuit.  Any such authority would be contrary to Article III of the Constitution, which restricts the jurisdiction of the federal courts to concrete cases and controversies.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  An MDL is not itself an "action"; it is a procedural device for the management of civil actions; the latter, not the MDL itself, embody the cases and controversies on which the court's jurisdiction is based and that, under Rule 23, may be certified for class treatment.

Nor does Rule 23 authorize a court to certify a single class for multiple cases at once, including cases in which no class representative is even a party.  To the contrary, one of the fundamental qualifications for any class is that it be represented by someone who is both a plaintiff in the case and a class member.  *Cf. East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403-04 (1977) (proposed class could not be certified because plaintiffs were not class members); *Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 950 (N.D. Ohio 2009) (Polster, J.) (same), *aff'd*, 395 F. App'x 152 (6th Cir. 2010).

Plaintiffs could theoretically have addressed this particular issue by filing this motion in a specific case in the MDL, amending the complaint in that case to include all of the proposed class representatives as plaintiffs.  But they elected not to do so – presumably because of the obvious practical implications for their ability to continue to litigate on behalf of those plaintiffs in their original suits.  They cannot have it both ways.  A class may only be certified in a specific civil action that presents a concrete case or controversy in which the proposed class representatives are asserting claims against the defendants.

For this additional reason, the Court lacks authority to certify the proposed class.

IV.     **"Preliminary Approval" and Pre-Certification Notice Are Not Available Here.**

Leaving aside the *substance* of what must be shown to support certification of a class (discussed in the next section below), Rule 23 establishes very specific *procedures* that must be followed for class certification.  Plaintiffs' motion disregards those procedural requirements.

Plaintiffs have asked the Court to grant preliminary approval of their proposed class, based on essentially no evidentiary record, and to direct that notice be provided to all putative class members with an opportunity to opt out.  This procedure is not permitted under Rule 23.

Rule 23 authorizes "preliminary" approval of a class and a notice-and-opt-out process *before* the final decision on class certification in only one very specific circumstance:  when the court has been asked to approve a concrete settlement that requires certification of a class in order to permit judgment to be entered on a class basis.  *See* Fed. R. Civ. P. 23(e).  Such preliminary approval and authorization of class notice must be preceded by findings, based on information supplied by the parties, "that the court will likely be able to: (i) approve the propos[ed settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

In every other situation, Rule 23 requires the proponent of class certification to demonstrate that all elements of Rule 23(a) and the applicable provision of Rule 23(b) have been satisfied and for the court to make findings to that effect.  Fed. R. Civ. P. 23(c)(1).  Only *after* this has been done, and the court has certified the class on a fully developed record, is notice issued to class members with an opt-out opportunity.  *See* Fed. R. Civ. P. 23(c)(2)(B) (describing requirements for notice "[f]or any class *certified* under Rule 23(b)(3)") (emphasis added).

Thus, any notice issued *now*, on the current record and without the complete and final analysis required by Rule 23, could be found invalid.

There is another consideration that strongly militates against the process that plaintiffs are proposing:  the possibility that if the notice and opt-out procedure is engaged prematurely now, it will have to be repeated later.  If and when a settlement is finally reached and presented to the Court for approval, the Court will need to evaluate whether a *second* opt-out opportunity needs to be afforded at that time.  *See* Fed. R. Civ. P. 23(e)(4) (authorizing a court to provide second opt-out opportunity in connection with a class settlement where a class was previously certified under Rule 23(b)(3)); *see also* Fed. R. Civ. P. 23(e) advisory committee's note to 2003 amendment (explaining that a second opportunity to opt out may be appropriate if "[a] decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known").

Plaintiffs dismiss this point in a single sentence, asserting that courts "rarely" allow a second round of opt-outs.  Mem. at 58.  The Advisory Committee notes to Rule 23(e) confirm that the decision whether to require a second opt-out period at settlement "is confided to the court's discretion."  Fed. R. Civ. P. 23(e) advisory committee's note to 2003 amendment.  And the few cases on this point agree that a second opt-out period is not routinely necessary.  *See, e.g.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006).  But given the fact that the determination must be based on circumstances as they exist at the time a specific settlement is approved and will be reviewable for abuse of discretion, *id.*, the district court cannot properly pre-commit now that it will not require a second opt-out period later.

The possibility cannot be excluded that a second opt-out period would be needed under the unusual circumstances proposed here, because under plaintiffs' proposal, class members would be asked to decide whether to opt out *before* they know the amount of any settlement.  *See Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement so that class

members may come to their own conclusions about whether the settlement serves their interests"). Plaintiffs' motion suggests that this should not be a problem because at the time of the original opt-out decision class members would at least know the *share* of any settlement to which they would be entitled. Mem. at 58. But as plaintiffs' motion concedes, any truly global settlement will require *further* allocations of the settlement proceeds, including with the states (*id.* at 40-42) – allocations for which no formulas have been established. Thus, class members would *not* know at the time of the original opt-out period even the formula that would determine their share of any settlement.

Ordinarily, of course, a class notice issued outside the settlement context contains little, if any, information about a prospective settlement. But such notices are issued to assist class members in determining whether they wish to participate with the class in actively *litigating* the case. Here, where the sole purpose of the class would be to pursue negotiations that would result in a settlement to which class members would be bound, information sufficient to permit a meaningful evaluation on the question of settlement would be of particular importance.

Importantly, the "voting" mechanism of plaintiffs' proposal does not fix this problem. Under this proposal, opting out is the *only* way an individual class member can be assured that it will not be compelled to participate in a settlement it does not like. A class member can choose to vote against a settlement, but it will still be bound by the settlement if the required majorities vote in favor. The adequacy of the notice provided *before* the right to opt out expires is thus critical.

Based on these considerations, it cannot be concluded with certainty that the Court would not require a second opt-out period as part its review of a settlement – or that the Sixth Circuit would not find an abuse of discretion if it failed to do so. This further counsels against

approving the issuance of class notice now, before the Court has had an opportunity to make a proper class certification decision on a full record.

Even if Rule 23(e) could be stretched to permit "preliminary approval" and pre-certification notice, not for settlement but for *negotiation* of a settlement, the Court cannot make the findings required by Rule 23(e).  First, it has no proposed settlement to review and therefore cannot conclude that it is "likely" to approve such a proposal.  Fed. R. Civ. P. 23(e)(1)(B)(i).  Nor has the Court been supplied, as required by Rule 23(e)(1)(A), "with information sufficient to enable it to determine" that  it "will likely to be able to … certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(ii).  Plaintiffs have provided no factual record on which the Court could make even a preliminary determination that it is *likely* to be able to find the certification requirements of Rule 23 satisfied.  As the Federal Rules Advisory Committee has cautioned, the decision to give notice of a proposed settlement "is an important event" and "should be based on a solid record."  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

## V.  Plaintiffs Have Failed to Demonstrate that the Substantive Requirements of Rule 23 Are Satisfied.

The Supreme Court has made clear that, to certify a class for any purpose, each requirement of Rule 23(a) and of the pertinent subpart of Rule 23(b) – in this instance, Rule 23(b)(3) – must be satisfied.  *See Amchem*, 521 U.S. at 622; *see also In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013).  Plaintiffs do not dispute this.

The showing required by Rule 23 must be made with the presentation of actual *proof.*  Rule 23 "does not set forth a mere pleading standard."  *Wal-Mart*, 564 U.S. at 350.  Class certification is only appropriate where the district court is satisfied, after conducting a "rigorous analysis," that the moving party has "affirmatively demonstrate[d] his compliance with the Rule" by "prov[ing] that there are *in fact* sufficiently numerous parties, common questions of law or

13

fact, etc." *Id.* at 350-51; *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("rigorous analysis" of "class-certification question" required). This "rigorous analysis" requires the examination of specific *facts* and *evidence* necessary to show that each and every required element of Rule 23 is satisfied. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013) (rigorous analysis will ordinarily require class certification to be "predicated on evidence"); *Reeb v. Ohio Dep't of Rehab. & Correction*, 435 F.3d 639, 644 (6th Cir. 2006) (finding record insufficient for the district court to have conducted the required analysis).

The 68-page memorandum in support of plaintiffs' motion offers virtually no *evidence* that any of the elements of Rule 23 are satisfied. Instead, it merely *asserts* that they are, generally in conclusory fashion, treating the answer as self-evident. Numerosity is indeed self-evident here, but satisfaction of the remaining elements of Rule 23 is not evident at all.[4]

The Supreme Court has confirmed that Rule 23 must be satisfied fully regardless of the purpose for which certification is sought. In *Amchem*, the Supreme Court rejected the suggestion that the requirements of Rule 23 are substantially relaxed when certification is sought solely for purposes of approving a class settlement. 521 U.S. at 619-20. *Amchem* involved a class certified for purposes of approving the settlement of asbestos claims; the class included both persons who had filed suit claiming injury from asbestos exposure and persons who had been exposed to asbestos but had not filed suit. The Supreme Court held that while the presence of a settlement was "relevant" to class certification – particularly insofar as a settlement may require *enhanced* scrutiny on the issue of adequacy of representation – it did not override the requirements of Rule

---

[4] Because plaintiffs have offered no evidence in support of their motion, and because defendants were required to prepare this Opposition in a matter of days (instead of the weeks, or even months, that are usually afforded for class certification briefing in a complex case), defendants have not attempted to present with this Opposition specific evidence on the points addressed below. If the Court directs the development of a more complete evidentiary record, defendants will be prepared to supply evidence as needed to respond to any showing provided by plaintiffs.

14

23, and that the putative class failed to satisfy the requirements of adequacy of representation, predominance, and superiority.  *Id.* at 619-22.

The Supreme Court emphasized that, with one modest exception, the requirements of Rule 23 must always be analyzed with reference to whether the proposed class could be certified for purposes of *litigating* the class's claims, even if certification is requested only for purposes of approving a settlement.  *Id.* at 619-20.  In a discussion that is highly pertinent here, the Court stated that the predominance inquiry could not focus on the "benefits asbestos-exposed persons might gain from the establishment of a grand-scale compensation scheme." *Id.* at 622.  Such benefits were simply "not pertinent to [] predominance," as that "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement."  *Id.* at 623.  In other words, the predominance inquiry must focus on the issues involved in the *underlying claims*, not on the common benefits realized by class members from the resolution of those claims in a settlement.

Notably, *Amchem* confirmed that mass tort claims, even if "arising from a common cause or disaster[,] … are 'ordinarily not appropriate' for class treatment."  *Id.* at 625 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment).  Such cases are "likely to present 'significant questions, not only of damages but of liability and defenses of liability, affecting individuals in different ways.'"  *Id.* (alteration and citation omitted).

Applying Rule 23 to the class in *Amchem*, the Supreme Court held that the requirements of Rule 23(b)(3) – as well as the adequacy of representation requirement of Rule 23(a) – were not satisfied.  On superiority, for example, if "individual damages run high," putative class members generally have an interest "in individually controlling the prosecution or defense of separate actions" and superiority will generally not exist.  *Id.* at 616-17.  Predominance is also lacking where the circumstances of exposure and resulting harms vary significantly across the

class.  *Id.* at 624.  Observing that "differences in state law … compound these disparities," the Supreme Court refused to endorse certification of a settlement class "as sprawling as this one." *Id.*[5]

The Sixth Circuit reads *Amchem* as "stand[ing] for the principle that the 'dominant concerns of Rule 23(a) and (b) persist when settlement, rather than trial, is proposed.'" *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1090 (6th Cir. 2016) (quoting *Amchem*, 521 U.S. at 619-21). Indeed, as plaintiffs' motion acknowledges, adequacy of representation is ordinarily "scrutinized more closely, not less, in cases involving a settlement class." *In re Dry Max*, 724 F.3d at 721; *see also In re Polyurethane Foam Antitrust Litig.*, 2012 WL 12868246, at *2 (N.D. Ohio Jan. 23, 2012) ("in the settlement context, courts must pay undiluted, even heightened, attention to class certification requirements").  There is no authority – and plaintiffs certainly cite none – suggesting that a more relaxed standard would apply where certification is sought for *neither* trial *nor* approval of a settlement.

There are a large number of questions about the extent to which any element of Rule 23(a) other than numerosity – or either of the required elements of Rule 23(b)(3) – would be satisfied here.  Plaintiffs' burden was to answer those questions, developing a full record that would permit the Court to perform the "rigorous analysis" that Rule 23 requires.  They have failed to do so.

### A. Conflicts Within the Class and for Class Counsel Preclude a Finding of Adequacy of Representation.

Rule 23(a) permits certification only if the Court is able to find that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). This is the only one of the Rule 23(a) factors to which plaintiffs' motion gives significant

---

[5] The Supreme Court did hold that a district court "[c]onfronted with a request for settlement-only class certification … need not inquire whether the case, if tried, would present intractable management problems."  *Id.* at 620.  But no relaxation is permitted for other factors.

attention, recognizing that it must be given extra scrutiny in any context relating to settlement. *See Amchem*, 521 U.S. at 620.  But it is abundantly clear that this element of Rule 23(a) is not satisfied here.

A number of factors are considered in evaluating adequacy of representation, but the most important is usually the existence of a conflict of interest among class members and/or their counsel.  *See Amchem*, 521 U.S. at 627 (adequacy prong of Rule 23(a) not satisfied when interests of class members were not aligned); *see also Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998) (adequacy inquiry serves to uncover conflicts of interest between the plaintiffs and the class they seek to represent).

Here, there are not only multiple conflicts of interest within this class, but also conflicts of interest between class members and *other* clients of the lawyers proposed as class counsel.

Conflicts of interest abound within the proposed class.  For example, class members who are overwhelmingly focused on the pursuit of monetary recovery for past economic injuries will have interests adverse to those that have not seen a significant manifestation of injury and instead seek a forward-looking preventative remedy.[6]  Plaintiffs' motion offers no discussion of non-monetary recovery, but many jurisdictions may wish to seek extensive "future abatement" relief, including non-monetary measures to prevent potential future harm, and may be unwilling to agree to trade-offs that focus on a recovery of short-term monetary relief that benefits others more.

The characterization and attribution of harm between overlapping jurisdictions is also an important source of conflict.  The abatement remedies put forward by the Track 1 county plaintiffs, for example, include a wide array of measures for services that those jurisdictions do

---

[6] Based on plaintiffs' description of the proposed class representatives (for which, as with everything else, they have offered no evidence), it appears that none of them would fall into this category.  But there are thousands of cities, towns, and counties across the country that have not brought lawsuits at all, notwithstanding extensive efforts by plaintiffs' counsel to encourage them to do so.

not themselves pay for in the ordinary course but that might instead be addressed by municipalities within a county or other entities, many of which would also be class members. As a result, class members with overlapping geographies may have very different views about the measures to be pursued and who should pay for them.

Plaintiffs' motion attempts to deal with such concerns by proposing that a fixed formula for the allocation of any *monetary* recovery among class members would be baked into the class certification. But this would not eliminate the problem of intra-class conflict. As the motion concedes, cities and counties would still need to negotiate any allocation of dollars between them for shared or overlapping costs.[7] Moreover, plaintiffs' proposed formula would not address any of the *non-monetary* relief that many plaintiffs are seeking and to which different class members may assign very different levels of priority. Different class members would also have different interests in the prioritization of settlement discussions with different defendants. A class member with no claim against a particular defendant will not wish resources to be devoted to settlement discussions with that defendant; another class member whose claims focus heavily on that defendant will have a different view.[8]

Although the information provided in plaintiffs' motion about the proposed class representatives is limited (generally consisting of no more than a few sentences on each), additional potential sources of conflict relating to at least some of them is evident. For example,

---

[7] Mem. at 40. And both would need to negotiate with the states. *Id.* at 41-42.

[8] Even the larger defendants do not do business uniformly nationwide. Distribution to many towns and counties, for example, is attributable overwhelmingly to only a few distributors, with one or more of the "national" distributors being entirely absent. Similarly, the geographic distribution of the national chain pharmacies is not uniform. Plaintiffs do not appear to have included in their overall proposal, including their allocation methodology, any mechanism for taking into account the fact that many class members could have no conceivable claim against some settling defendants. For example, if there were a settlement with a small distributor operating only in the Northeast, a county in Alaska would have no conceivable claim against that defendant; yet that county would still be allocated a share of the settlement paid by that distributor, based on the volume of opioids distributed in the county by others. The court cannot certify a class that contemplates payments to class members who would have lacked standing to sue the settling defendant. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 52 (1st Cir. 2018) (certification cannot occur without "a mechanism for distinguishing the injured from the uninjured class members") (citation omitted).

both Cuyahoga County and Summit County – which are scheduled to have their cases go to trial in October 2019 – are among the proposed class representatives.  The potential conflict of interest between a plaintiff whose claims will shortly be tried and one who has little prospect of any trial for years to come should be self-evident.

The Court cannot properly accept plaintiffs' invitation to rely on the proposed voting mechanism as a basis for ignoring the numerous stark conflicts of interest within the proposed class.  *See* Mem. at 57 (arguing that "there is no risk of class representatives failing to represent the interests of passive, absent class members" because the proposed voting mechanism would make this "the ultimate 'participatory class action'").  The requirements of Rule 23(a) – including the requirement of adequacy of representation *without* significant conflicts of interest – are *mandatory*.  The Court is not authorized to waive any element of Rule 23 by inserting a different protective measure in its place.  Authority to do that rests solely with the Supreme Court, in amending the rule, or the United States Congress.  As the Supreme Court has cautioned:

> [C]ourts must be mindful that the Rule as now composed sets the requirements they are bound to enforce.  Federal Rules take effect after an extensive deliberative process involving many reviewers: a Rules Advisory Committee, public commenters, the Judicial Conference, this Court, the Congress.  *See* 28 U.S.C. §§ 2073, 2074.  The text of a rule thus proposed and reviewed limits judicial inventiveness.  Courts are not free to amend a rule outside the process Congress ordered, a process properly tuned to the instruction that rules of procedure "shall not abridge … any substantive right." § 2072(b).

*Amchem*, 521 U.S. at 620.  "Federal courts," the Court explained, "lack authority to substitute for Rule 23's certification criteria a standard never adopted."  *Id.* at 622.[9]

---

[9] Even if the Court could waive the adequacy requirement in favor of a "participatory" substitute, the voting mechanism proposed here would do nothing to protect a class member whose vote against a settlement tainted by conflict of interest was overridden by the majority.  Rule 23, in contrast, is designed to ensure that *all* class members' rights are properly protected.

In fact, plaintiffs' proposed voting mechanism confirms the existence of conflicts of interest within the class.  For a truly cohesive class, it ought to be possible to limit the voting mechanism to a single vote of the entire class.  But plaintiffs themselves see a need for more, requiring a super-majority vote of *six different groups* of class members.  *See* Mem. at 43-44.  If the interests of each of those groups were the same as all the others, there would be no need for such a complex voting scheme.  Plaintiffs' assertion that their elaborate voting proposal is designed to provide "more protection" than an ordinary class receives (*id.* at 58) is simply a concession that more protection is needed because class members' interests are not fully aligned.

A mechanism that *can* be used in appropriate cases to eliminate a conflict problem is the creation of subclasses that divide a class into groups whose interests are appropriately aligned.  *See, e.g.*, *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 432 (3d Cir. 2016).  But subclasses have not been proposed here, and for obvious reasons.  If separate settlements had to be negotiated with numerous separate subclasses, the whole purpose of plaintiffs' proposal would be defeated.[10]  Moreover, if subclasses are created to avoid intra-class conflicts, each subclass *must* be represented by independent counsel who owe no duty of loyalty to members of the other subclasses.  *See id.* at 432; *see also Amchem*, 521 U.S. at 627 (holding that "members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups").  Yet each member of the PEC represents a wide variety of plaintiffs in different cases within the federal MDL, in city and county cases brought in state courts, and in suits and investigations brought by Attorneys General.  Lawyers and firms who owed a duty of loyalty to that broad an array of clients would not be qualified to act as subclass counsel.

---

[10] As discussed below, the six-part super-majority voting requirement for just a single class is alone sufficient to make the proposal unworkable from a practical perspective.

This conflict of interest among plaintiffs' counsel creates a problem even absent an effort to certify subclasses.  This is particularly so with respect to their representation of plaintiffs in the opioid litigation who would not be members of the proposed class at all.  Many, if not most, members of the PEC represent states and/or other non-class members who are also seeking relief from these defendants.  Plaintiffs' motion concedes that the kind of global settlements that are contemplated will generally not be possible unless the states, at least, are included, and that this will require additional negotiation between class counsel and the states.  Mem. at 41-42.  There is a clear conflict of interest if class counsel represent parties on both sides of that table.[11]

Finally, many state rules of professional conduct may bar counsel from participating in any settlement that uses the voting mechanism that is the centerpiece of plaintiffs' proposal.  The use of such a "majority rule" mechanism for collective settlements of mass tort claims has been proposed in the past – and has floundered in the face of rules of professional conduct.  *See, e.g.*, *Tax Auth., Inc. v. Jackson Hewitt, Inc.*, 898 A.2d 512, 521 (N.J. 2006) ("Most scholars and commentators agree that a majority-rules provision is forbidden under RPC 1.8(g)."); *see also Hayes v. Eagle-Picher Indus., Inc.*, 513 F.2d 892, 894-95 (10th Cir. 1975).

### B.      Plaintiffs Have Made No Meaningful Effort to Demonstrate that the Proposed Class Members are Typical.

Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Plaintiffs have identified 39 proposed class representatives, and their motion, which devotes only a single paragraph to the issue of typicality, offers no meaningful showing that their claims are typical.

Plaintiffs assert that this element is satisfied because, "while complaints also include more localized or statewide claims, public nuisance and Civil RICO are the recurring common

---

[11] It is perhaps for this reason that plaintiffs' motion proposes creation of a committee to participate in these discussions. Mem. at 41-42.  The motion is vague about what the actual role of that committee would be, but it could not solve the problem of class counsel having a clear conflict of interest.

themes and legal theories."  Mem. at 54-55.  In fact, a large proportion of the class (including

virtually all class members whose cases are in state court, as well as several of the proposed class

representatives themselves) have *not* asserted RICO claims, and the state law applicable to public

nuisance claims varies substantially.  (*See* p. 26 below.)

In any event, a finding of typicality requires more.  To satisfy typicality, plaintiffs have

the burden of demonstrating, under *Amchem*, that resolution of the claims of the class

representatives would offer a consistent and reliable resolution of the claims of all, or at least

most, other class members.  *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir.

1998) (*en banc*) ("The premise of the typicality requirement is simply stated: as goes the claim of

the named plaintiff, so go the claims of the class.").  To make such a showing here, plaintiffs

must account for significant variations in the proposed class, including, but not limited to, the

following:

- Variations in the type, size, and organization of the plaintiff entities (e.g., towns, cities, counties) and in the services they provide (and are authorized to provide) to their populations;

- Differences in the nature and scope of opioid-related harms that various jurisdictions are alleged to have suffered and the relief sought;

- Differences in the causes of action asserted in the complaints (almost all of which are asserted under state law) – and differences in the content of the governing state law as to the causes of action asserted, as well as potentially relevant defenses;

- Differences in the identities of the defendants sued in each case;[12]

- Differences in the extent to which each defendant could have meaningfully contributed to each entity's alleged harms;[13]

---

[12] For example, many assert claims *only* against one or more manufacturers or only against one or more distributors. There is also substantial variation in the distributors who are sued.  Some plaintiffs have sued the national chain pharmacies; others have not.  Some assert claims against prescribing physicians or other individuals, while others do not.  This variation exists even among the proposed class representatives; for example, 18 have sued only a small number of large national distributors, while 21 others have sued other distributors as well.

[13] With few exceptions, there is considerable variation in the extent to which defendants have even done business in the various jurisdictions.  There is also considerable variation in the extent to which the specific conduct to which

- Differences in the nature and quality of evidence available to prove the claims;[14]

- Differences in prescribing habits of local doctors and other factors affecting local usage of various opioid products; and

- Differences in the infiltration of each jurisdiction by illicit drug distribution enterprises and the associated impact on opioid use and abuse by the local population.

Plaintiffs' motion addresses none of these considerations.  Until and unless plaintiffs demonstrate that typicality genuinely exists – that "as goes the claim[s] of [these 39 plaintiffs], so go the claims of the class," *Sprague*, 133 F.3d at 399 – they will have failed to carry their burden of demonstrating typicality.  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (reversing class certification where district court failed to give proper weight to variation in claims that precluded finding of typicality).

### C. Plaintiffs Have Not Created a Record Upon Which the Court Could Make Findings of Commonality and Predominance.

Plaintiffs have similarly failed to offer any meaningful showing that common issues exist for the claims of all class members, much less that such issues predominate.

Commonality is usually one of the easiest of the four Rule 23(a) factors to satisfy, as – unlike the predominance requirement of Rule 23(b)(3) – it requires only the identification of one or more disputed issues that can be resolved through common proof, without considering the extent to which non-common issues are also present.  But it is far from clear that even commonality can be established for plaintiffs' proposed class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), is instructive.  In that case, certification was sought for a nationwide class of female employees who alleged gender discrimination in promotions.  The plaintiffs claimed that there was a culture of discrimination at the company and that the problem was pervasive

---

plaintiffs generally attribute their alleged harms – such as relationships with particular doctors or shipments of certain controlled substances – could have had any impact in particular jurisdictions.

[14] To offer one example, most populous jurisdictions have qualified medical examiners who perform post mortem examinations with detailed toxicological testing in cases of suspected overdose.  Many small jurisdictions, in contrast, do not even employ doctors as medical examiners and perform little or no toxicological testing; such jurisdictions have little ability to establish the prevalence of opioid overdoses in their populations.

nationwide.  It was undisputed, however, that promotion decisions were made strictly at the local level; in this context, the Supreme Court found, liability could not be established as a common issue based solely on aggregate nationwide evidence.  *Id.* at 353-54, 356-60.

Similarly here, the existence of liability, at least as to any distributor or chain pharmacy defendant, requires reference to evidence specific to the circumstances and events within each plaintiff's own jurisdiction.  Plaintiffs' assertion that commonality is self-evident because the same kinds of adverse events occurred all over the country (Mem. at 52-54) is exactly the kind of argument that *Wal-Mart* rejects.

Even if commonality under Rule 23(a) were shown, more would be required to demonstrate the *predominance* of common issues, as required by Rule 23(b)(3).  *See Amchem*, 521 U.S. at 609 (noting the "stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions").

As discussed above, there is a substantial variation in the circumstances and claims of the putative class members here.  This variation is even more significant to the predominance inquiry than it is to the question of typicality.  The claims of the proposed class members present a host of issues that are *not* common to the class.  To offer just some examples:

- The nature and scope of harms associated with opioid use and addiction vary across jurisdictions based on numerous factors, including (but not limited to):  demographics, economic conditions, current and historical state regulation of prescribing and dispensing practices, local customs regarding prescribing practices, the mix of illegal drugs available in a particular area, and the relative availability of different kinds of drugs.

- Political subdivisions have different types of authority, responsibility, and funding schemes, which would make it difficult to generalize about the injuries municipalities allegedly suffered, as well as the abatement remedies they may require.

- Different plaintiffs have asserted claims against different arrays of defendants, based on variations in pertinent facts (either as to the plaintiff itself or as to one or more of the defendants that it has – or has not – chosen to sue) and the applicable law.

24

To carry their burden on this motion, plaintiffs must demonstrate that common issues predominate over these and other non-common issues.  *See Amchem*, 521 U.S. at 625 (predominance not satisfied where "individual stakes are high and disparities among class members are great"); *Sprague*, 133 F.3d at 398 (certification inappropriate where "each plaintiff's claim depended upon facts and circumstances peculiar to that plaintiff"); *In re Am. Med. Sys.*, 75 F.3d at 1081 (predominance not satisfied where proof will "vary from plaintiff to plaintiff").  Plaintiffs' motion does not even address these issues, much less make the required showing.  On this element also, therefore, the motion is insufficient.

Predominance is particularly difficult to establish for a nationwide class whose claims are based primarily on state rather than federal law.  *See, e.g.*, *Pilgrim*, 660 F.3d at 946 (differences in the consumer protection laws of different states would "cast a long shadow over any common issues of fact plaintiffs might establish").  Numerous such differences exist here.  For example, some states broadly apply the "municipal cost recovery rule," which limits the types of damages a municipality may recover, while other states do not.  *Compare City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1145 (Ill. 2004) (adopting principle that municipalities could not recover "the costs of routine police and other emergency services"), *with Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1149 (Ohio 2002) (declining to apply rule in specific circumstances).  The common law causes of action, including negligence, vary by jurisdictions in meaningful ways.  *See Am. Med. Sys.*, 75 F.3d at 1085 (reversing class certification of a nationwide class because "[t]he district judge also failed to consider how the law of negligence differs from jurisdiction to jurisdiction").  Many plaintiffs have also asserted statutory claims, such as claims under state consumer protection laws, that involve different standards, remedies, and defenses.  *See Pilgrim*, 660 F.3d at 946.

Plaintiffs' motion simply ignores these issues, instead asserting, again, that the majority of municipal opioid cases assert claims of public nuisance and civil RICO violations, which plaintiffs characterize as essentially common claims.  Mem. at 53.  But again, this is demonstrably untrue.  Almost none of the putative class members whose cases are pending in state court have asserted RICO claims.  (If they had, those cases would have been removed to federal court.)  Nor are such claims found in the complaints of several of the proposed class representatives.  And although many cases in both state and federal court assert claims for public nuisance, those are state-law claims on which the applicable law varies substantially.[15]

Even if there were a single cause of action that was common to all class members and invoked essentially identical legal standards, there would be no value in certifying a "Negotiation" class to address only that claim.  No defendant would enter into a settlement that addressed only one cause of action, with class members remaining free to litigate their remaining claims on an individual basis.  Nor could class representatives and class counsel responsibly negotiate a settlement on behalf of all class members that offered a general release on *all* claims if that meant sacrificing additional claims that would have significant added value for some, but not all, class members.[16]

---

[15] For example, many but not all jurisdictions recognize only public nuisance claims tied to land or the environment, bar product-based public nuisance claims, or require that defendant have control of the instrumentality of the nuisance at the time it causes injury.  *See* Defs.' Br. on Viability of Public Nuisance Claims Nationwide ("Defs.' Br."), Dkt. No. 1404, at 5-10, 14-15, 22-24.  In addition, as Plaintiffs have acknowledged, some jurisdictions follow the Restatement (Second) of Torts § 821B in determining the definition of public nuisance, while others do not.  Ptfs.' Br. Concerning Survey of State Nuisance Law ("Ptfs.' Br."), Dkt. No. 1406, at 3-10.  Available defenses to public nuisance claims also vary from state to state, *see* Defs.' Br. 16 n.7, 25-26 (discussing the economic loss rule, doctrine of statewide concern, and statutes of limitations), and Plaintiffs have recognized that "most affirmative defenses" to public nuisance claims "will turn on questions of fact that may vary from case to case."  Ptfs.' Br. 2.  These and other differences in state law are reflected in the varied trial court decisions on public nuisance claims in opioid-related litigations.  *Compare, e.g., North Dakota ex rel. Stenehjem v. Purdue Pharma L.P.*, 2019 WL 2245743, at *13 (N.D. Dist. Ct. May 10, 2019) (dismissing public nuisance claim), *State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382, at *12-13 (Del. Super. Ct. Feb. 4, 2019) (same), and *Grewal v. Purdue Pharma L.P.*, 2018 WL 4829660, at *17 (N.J. Super. Ct. Ch. Div. Oct. 2, 2018) (same), *with, e.g., State v. Purdue Pharma L.P.*, 2018 WL 4468439 (Alaska Super. Ct. July 12, 2018) (denying motion to dismiss).

[16] A class representative is not adequate under Rule 23(a) if it abandons independently valuable claims of putative class members "in order to manufacture a class certification," *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 308 (N.D. Ohio 2009), because "the decision risks creating an irreconcilable conflict of interest with the class."  *Slade v.*

Because plaintiffs' motion does not meaningfully address any of these issues, they have failed to carry their burden of establishing a record that would permit the Court to make a finding that the predominance requirement of Rule 23(b)(3) is satisfied.

### D. The Proposed Class Does Not Offer a Superior Method of Resolving Class Members' Claims.

Plaintiffs are also incorrect in suggesting that the superiority of their proposed class is self-evident.

To begin with, if there were to be a proposal to certify a class to *litigate* these claims, it is reasonably clear that the superiority prong of Rule 23(b)(3) would not be met.  A finding of superiority typically rests on a determination that the amounts at stake for individual class members is so small that separate suits would be impracticable.  *See Amchem*, 521 U.S. at 616-17; *Vassalle*, 708 F.3d at 758 (finding superiority lacking in part because "the likelihood that many members of the class will choose to bring individual lawsuits is not remote"); *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011) ("[W]hen individual class members have large stakes in the outcome and the ability to pursue a remedy alone, their individual interests weigh against a Rule 23(b)(3) class action.").  Here, as plaintiffs acknowledge, the putative class members are sophisticated entities that have already shown a willingness to litigate these cases individually – often preferring to do so in their respective home jurisdictions.  And the many millions (and sometimes billions) of dollars they seek in damages have been more than sufficient to attract able counsel to represent them in such individual suits.[17]

---

*Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017); *see also W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) (class representative not adequate when he "abandons particular remedies to the detriment of the class"); *Pearl v. Allied Corp.*, 102 F.R.D. 921, 924 (E.D. Pa. 1984) (similar); *Mays v. Tenn. Valley Auth.*, 274 F.R.D. 614, 624 (E.D. Tenn. 2011) (adequacy absent when proposed class representative abandons "claims once asserted by a number of individual plaintiffs").

[17] Indeed, it is no secret that law firms have been barnstorming across the country to sign up municipal and other government plaintiffs to bring additional suits, which continue to be filed.

Even if one focused exclusively on the "superiority" associated with certifying a class for purposes of pursuing settlement negotiations, it is far from clear that plaintiffs' proposal is superior to other alternatives.  The proposal presented in plaintiffs' motion will not improve on the status quo unless it can actually help to facilitate the settlement of a substantial proportion of the pending litigation.  *Cf. Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 415-16 (6th Cir. 2018) ("To determine whether a class action is the superior method … [t]he district court should … determine if a class action is *sufficiently effective* to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court.") (emphasis added).  And this goal cannot be achieved unless the class is certified on terms that would give defendants substantial incentives to engage with the class and pursue settlement discussions.  Such incentives can exist *only* if (among other things) defendants would feel assured that (a) the release and judgment associated with any settlement would be fully enforceable, and (b) a reasonable settlement entered into in good faith can be assured of making it through the "voting" and approval process, including potential appeals.

There are serious questions about whether the proposal, as currently formulated, could deliver on either of these points.  An enforceable release and judgment require compliance with Rule 23, both to ensure that any approved settlement survives on appeal and to avoid any effort by dissatisfied class members to attack it collaterally in separate suits.  As discussed above, any certification here would be subject to challenge on multiple grounds under Rule 23.[18]

---

[18] Objectors who appealed the approval of a class settlement in this litigation would have standing to appeal the certification of the class and not merely the settlement amount.  *See Amchem*, 521 U.S. 591 (deciding whether a settlement class satisfied Rule 23 on an appeal brought by objectors).  A failure to satisfy Rule 23 and/or due process could also provide a basis for *collateral* attack on the release and judgment in separate litigation brought by dissatisfied class members.  Many courts will permit such collateral attacks by class members who claim a violation of due process.  *See, e.g.*, *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 454 (5th Cir. 2016); *Wolfert ex rel. Estate of Wolfert v. Transam. Home First, Inc.*, 439 F.3d 165, 171 (2d Cir. 2006).

Moreover, the proposed voting mechanism is so complicated and extreme that a defendant could not rely upon it to generate approval of even the best of settlements.  Under plaintiffs' proposal, a settlement negotiated in good faith and agreed upon by the class representatives and their counsel would not be binding on anyone – or even subject to final approval by the Court – until and unless it was approved by six different super-majorities.  Mem. at 43-44.  One can reasonably question whether *any* settlement could *ever* be approved under such onerous conditions, especially given the unique political pressures to which these class members – themselves political entities – are subject on even routine issues.  And such a process would allow a relatively small group of class members to block an agreement by withholding their affirmative votes in order to place pressure on the settling defendants to increase the settlement amount.  In short, any defendant entering into settlement discussions could fear that a settlement signed in good faith with the class representatives and their counsel would merely open the bidding.

Given these substantial barriers to achievement of a valid and enforceable settlement on reasonable terms, it is far from clear that plaintiffs' proposal could satisfy the requirement of "superiority" even if that issue was evaluated solely with respect to the value it could bring to settlement efforts.  This is particularly true given the fact that *none* of the complex machinery attendant on a class settlement – including the requirement for judicial review and approval of the terms of the settlement itself – would be required if any of these cases was settled individually.  To be sure, plaintiffs' proposal seeks to make up for this by creating an opportunity for defendants to buy peace through a comprehensive settlement that sweeps hundreds or even thousands of cases into a single settlement.  But unless defendants could be assured that the proposal can deliver on that promise, the price would not be worth it.  The "superior" use of the

resources of the parties, the special masters, and the Court would be to seek resolution of the litigation through other means.

Finally, plaintiffs' motion, while extolling the benefits of creating an organization that would permit the cities and counties to negotiate collectively, fails to explain why a judicially certified class is needed at all for that purpose, much less why it is a "superior" mechanism. If plaintiffs, who emphasize repeatedly the participatory and non-coercive nature of their proposal, believe such an organization cannot be established through other, less cumbersome means on a volunteer basis, they fail to explain why. They point out, for example, that litigation efforts for entities like these plaintiffs have previously been coordinated by the National League of Cities (Mem. at 11) but do not explain why something similar could not be done here without the need to invoke Rule 23. One possible answer is that plaintiffs do not envision the process being as participatory and voluntary as they seek to paint it and, notwithstanding their denials, intend to rely on a combination of passivity among class members and the coercive power of the Court to enable them to cram down a settlement that does not have active support. Either way, this case is already sufficiently complicated that the extensive procedural baggage attendant on any class action should not be added unless it is shown to be truly superior, not just to the status quo, but to available alternatives.

## CONCLUSION

For the reasons stated above, the Court should deny plaintiffs' motion.

Dated:      June 24, 2019                        Respectfully Submitted,


 /s/ Geoffrey E. Hobart                           /s/ Enu Mainigi
Geoffrey E. Hobart                               Enu Mainigi
Mark H. Lynch                                    **WILLIAMS & CONNOLLY LLP**
Sonya D. Winner                                  725 Twelfth Street NW
**COVINGTON & BURLING LLP**                       Washington, DC  20005
One CityCenter                                   Tel: (202) 434-5000
850 Tenth Street NW                              Fax: (202) 434-5029
Washington, DC 20001                             emainigi@wc.com
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com                                   *Counsel for Cardinal Health, Inc.*
swinner@cov.com


*Counsel for McKesson Corporation*




 /s/ Robert A. Nicholas                           /s/ John J. Haggerty
Robert A. Nicholas                               John J. Haggerty (0073572)
Shannon E. McClure                               James C. Clark
**REED SMITH LLP**                                Stephan A. Cornell
Three Logan Square                               **FOX ROTHSCHILD LLP**
1717 Arch Street, Suite 3100                     2700 Kelly Road, Suite 300
Philadelphia, PA 19103                           Warrington, PA 18976
Tel: (215) 851-8100                              Tel: (215) 345-7500
Fax: (215) 851-1420                              Fax: (215) 345-7507
rnicholas@reedsmith.com                          jhaggerty@foxrothschild.com
smcclure@reedsmith.com                           jclark@foxrothschild.com
                                                 scornell@foxrothschild.com

*Counsel for AmerisourceBergen Drug*             *Counsel for Prescription Supply Inc.*
*Corporation*

## **CERTIFICATE OF SERVICE**

I, Geoffrey E. Hobart, hereby certify that the foregoing document was served via the

Court's ECF system to all counsel of record.

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart