# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION | ) | **CASE NO. 1:17-MD-2804** |
| OPIATE LITIGATION | ) | |
| | ) | **JUDGE POLSTER** |
| THIS DOCUMENT RELATES TO: | ) | |
| *"All Cases"* | ) | |
| | ) | **ORDER REGARDING** |
| | ) | **ARCOS DATA AND DOCUMENTS** |
| | ) | **PREVIOUSLY FILED UNDER SEAL** |

For the reasons stated below, the Court directs as follows.

- (i) the plaintiffs, (ii) the defendants, (iii) the DEA, and (iv) the Intervenors (HD Media Company, LLC and the Washington Post), shall submit a single position paper (12 pages maximum) addressing: (a) whether it should lift entirely its Protective Orders regarding all ARCOS data produced to the parties in this case; and (b) the extent to which it should lift its Protective Orders regarding all Suspicious Order Reports produced to and by the parties in this case. **These four position papers should be filed on or before 12:00 PM on July 3, 2019.** Each group may then file a single response (6 pages maximum) to these position papers **on or before 12:00 PM on July 12, 2019.**

- every entity (whether or not they are a party) who has filed on the docket a redacted or sealed document shall submit a position paper, **on or before July 15, 2018**, that: (a) lists every such document; (b) states whether the redactions and/or sealing should remain in place; and (c) states the "compelling reasons" why they should remain in place, if so contending.

•       the motions to modify the Protective Orders filed by the Indian Tribes (docket no. 1665) and

        the NAS Baby plaintiffs (docket no. 1704) are **granted**.


I.      **ARCOS Data.**[1]

        During the course of this litigation, this Court has entered a series of Protective Orders

governing the disclosure of: (1) official Department of Justice ("DOJ") information collected and

maintained by the Drug Enforcement Agency ("DEA") in its ARCOS database; as well as (2)

Suspicious Order Reports ("SORs") collected and maintained by the DEA.  *See* docket nos. 167,

233, 397, 400, 602, 668, 800, 1106, and 1545.[2]  The essence of these Orders was that: (1) the DEA

would provide ARCOS data and SORs to the parties, (2) this information could be used by the

parties only for litigation or law enforcement purposes, (3) the parties had to redact or file under seal

any court-filed documents containing this information, and (4) the parties were not allowed to share

this information with anyone else, including the press.

        HD Media Company, LLC and the Washington Post ("the Press") challenged the latter two

provisions in the Sixth Circuit Court of Appeals.  The appellate court has just issued a decision.  *See*

docket no. 1710 ("Appellate Order").[3]  The Sixth Circuit "vacate[d] the district court's Protective

---

[1]  The parties' and the Court's definition of "ARCOS data" is:  "any data produced directly
from DEA's ARCOS database; any reports generated from DEA's ARCOS database; any
information collected and maintained by DEA in its ARCOS database; and any derivative
documents that the parties or their employees, agents or experts create using ARCOS data."  *See*
Appellate Order, docket no. 1710 at 5 (quoting the Protective Orders).  "ARCOS data" does not
include SORs.

[2]  The Protective Order at docket no. 1545 consolidates and supersedes all of the prior
Orders.

[3]  *In re: National Prescription Opiate Litig.*, 2019 WL 2529050 (6th Cir. June 20, 2019).

Order and its orders permitting the filing of court records under seal or with redactions," and

"remand[ed] to permit the district court to consider entering modified orders consistent with this

opinion."  *Id.* at 2.

The critical statements made in the Sixth Circuit's opinion, with which this Court's orders

must be made consistent, include the following:

- The "crux" of the appellate issue was "who should receive access to the data in the DEA's ARCOS database, and the related question of how disclosure of the ARCOS data would further the public's interest in understanding the causes, scope, and context of this epidemic."  *Id.* at 3.[4]

- The key question thus becomes: "whether it was reasonable for the district court to permit only Plaintiffs to examine the data in the otherwise complete darkness created by the Protective Order, or whether the court abused its discretion by denying [the Press] the opportunity to expose the data to the broad daylight of public reporting. * * * [W]e hold that this denial was an abuse of the district court's discretion."  *Id.* at 4.

- "[T]he burden of demonstrating good cause not to disclose the ARCOS data remains with the DEA and Defendants (as the parties seeking protection). * * * In considering whether good cause for protection exists, we balance the interests in favor of disclosure against the interests in favor of nondisclosure."  *Id.* at 13.

- "[The Press], as representatives of the public, have a substantial interest in disclosure of the ARCOS data, while the DEA and Defendants have only a lesser interest in avoiding potential harms that can be avoided by narrower, less categorical means."  *Id.* at 17.

- "[The Press has] presented substantial evidence of the significant public interest in transactional-level data.  By contrast, as the district court recognized, most of Defendants' and the DEA's asserted interests pertain only to the potential for future harm."  *Id.* at 18.

- The DEA "has not adequately explained why the data should be subject to a permanent blanket ban on disclosure, rather than a narrower protective order that would allow the DEA to object to disclosure as specific investigations may require."  *Id.* at 21.

- "the DEA's stated law enforcement interests do not seem very weighty, given that they primarily pertain to potential future harms that could be avoided by limited redactions to

---

[4] The Sixth Circuit examined only the question of access to the ARCOS database; it did not examine who should receive access to SORs.

those particular portions of the ARCOS data that correspond to specific ongoing investigations." *Id.*

• there exists "great public interest in solving the opioid crisis, and . . . these and other interests outweigh any slight risk of anticompetitive harm. * * * [Moreover,] [t]he ARCOS data does not contain sensitive information like trade secrets, and the age of the data makes the risk of anticompetitive harm slight and speculative." *Id.* at 22 (internal quotation marks omitted).

• "Defendants' interests are far outweighed by the specific, concrete interest [the Press] and the public have in disclosure of the ARCOS data." *Id.* at 23.

• "disclosure of the ARCOS data is warranted because the DEA and Defendants have failed to demonstrate 'good cause' not to disclose the data to [the Press]." *Id.*

Ultimately, the Court of Appeals vacated the Protective Orders and directed this Court to determine whether there should instead be "a narrower protective order that would allow the DEA to object to disclosure [of ARCOS data] as specific investigations may require" – that is, an Order that allows only "limited redactions to those particular portions of the ARCOS data that correspond to specific ongoing investigations." *Id.* at 21.[5]

The DEA itself recognized on appeal that redacting from the totality of the ARCOS data particular portions that correspond to specific, ongoing investigations would likely only serve to tip the DEA's hand.[6]  Nonetheless, as described in the first paragraph of this Order, the Court will

---

[5] Although the appellate court suggested a narrower Protective Order might be appropriate to address the DEA's concerns, the court flatly concluded that the "[manufacturer and distributor] Defendants' interests are far outweighed by the specific, concrete interest [the Press] and the public have in disclosure of the ARCOS data." *Id.* at 23; *see also id.* at 22 ("The ARCOS data does not contain sensitive information like trade secrets, and the age of the data makes the risk of anticompetitive harm slight and speculative.") (internal quotation marks omitted).

[6] *See* Appellate Order, docket no. 1710 at 20 (at oral argument, the DEA asserted: "if [the DEA] delete[s] [data relating to a specific investigation] from [the ARCOS] database . . . , [a] manufacturer [whose data was not included in the disclosure] will say, . . . 'I see that [my data is] not [in] there, so maybe I'm the subject of an ongoing investigation.'") (most brackets in original).

4

receive position papers from the DEA, the Press, and the parties regarding whether a *narrower* Protective Order (as opposed to *no* Protective Order) is necessary and appropriate.

These position papers should also address whether, and the extent to which, the Protective Orders should remain in place regarding SORs-related evidence.  The Court offers three observations in this regard.  First, to the Court's knowledge, SORs have been produced only in discovery and not included in any filing on the docket.  As the Sixth Circuit noted, "there is a lower requirement for protective orders relating to discovery, during which secrecy is permitted, than for orders to seal court records, which carry a strong presumption of openness." *Id.* at 15 (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016)).  It may well be, however, that SORs-related evidence will soon become part of the Court's record.  Second, SORs are substantively different than the ARCOS data; for example public revelation of SORs could "tip off" a pharmacy that it is likely the subject of an ongoing investigation by the DEA.  Virtually all of the argument and evidence the Court received surrounding entry of the Protective Orders had to do with ARCOS data, not SORs, so the Court needs to receive the parties', the Press's, and the DEA's position on public disclosure of SORs before deciding whether to lift existing protections.  And third, the Sixth Circuit analyzed the propriety of public exposure of only ARCOS data, not SORs, because the Press only sought access to ARCOS data, not SORs.  *See* docket nos. 603-1, 603-2, and 603-3.  Again, however, this may soon change.  Accordingly, the Court seeks the parties' positions, in light of the Sixth Circuit's discussion, on the extent to which SORs-related evidence should remain subject to the Protective Orders.

Finally, in light of the Sixth Circuit's analysis, it is clear that the motions to modify the Protective Orders filed by the Indian Tribes (docket no. 1665) and the NAS Baby plaintiffs (docket

no. 1704) must be **granted**.

II.     **Documents Previously Redacted or Filed Under Seal.**

Pursuant to the Protective Orders, the parties have filed numerous documents under seal and/or filed documents with redactions. *See, e.g.*, docket nos. 520 & 525 (Broward County's unredacted second amended complaint, filed under seal; and Broward County's redacted second amended complaint, not filed under seal). Some of these documents were redacted or filed under seal because they referred to ARCOS data, but other documents were hidden fully or partly from public view for other reasons. *See, e.g.*, docket no. 717 (DOJ's brief in support of objections to disclosure of ARCOS Data, redacted); docket no. 1299 (unredacted brief in opposition to the motion to disqualify Carole Rendon, filed under seal).

In its recent opinion, the Sixth Circuit Court of Appeals cautioned against routine redaction or sealing of documents filed on the public docket. The appellate court stated that "pleadings, briefs, or other documents that the parties have filed with the court, as well as any reports or exhibits that accompanied those filings," are "subject to the strong presumption in favor of openness, which applies here with extra strength given the paramount importance of the litigation's subject matter." Appellate Order, docket no. 1710 at 24-25. *See id.* at 26 ("[o]nly the most compelling reasons can justify non-disclosure of judicial records") (quoting *Shane Grp.*, 825 F.3d at 305). Accordingly, the Sixth Circuit directed this Court to "conduct a full review of court documents filed under seal or with redactions, and . . . in each instance reevaluate whether redaction or seal is necessary in light of the proper legal standards as set forth in this opinion." *Id.* at 24-25 n.14.

The Court therefore orders as follows. Every entity (whether or not they are a party) who

6

has filed on the docket a redacted or sealed document shall submit a position paper, **on or before 12:00 PM on July 15, 2018**, that: (a) lists every document they filed; (b) states whether the redactions and/or sealing should remain in place; and (c) states the "compelling reasons" why they should remain in place, if so contending. Any entity who files such a position paper may then respond to another entity's position paper **on or before 12:00 PM on July 29, 2019.** The failure to list a specific document with compelling reasons will result in an order directing removal of redactions and/or lifting of seal of those documents.[7]

     **IT IS SO ORDERED.**

                                    /s/ *Dan Aaron Polster*
                                      **DAN AARON POLSTER**
                                      **UNITED STATES DISTRICT JUDGE**

**Dated: June 24, 2019**

---

[7] These submissions need not address redactions made for the following reasons, which are *required* by the Court: (1) all information that must be redacted pursuant to Fed. R. Civ. P. 5.2, Local Rule 8.1, and Local Rule App'x B at §24 (Electronic Filing Policies and Procedures Manual (Dec. 1, 2018)); and (2) any personal health information, medical claims data, SACWIS data (Statewide Automated Child Welfare Information System), and similar personal and private information, except to the extent this personal information has been de-identified pursuant to 45 C.F.R. §164.514.