IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 1:17MD2804 |
| NATIONAL PRESCRIPTION OPIATE LITIGATION | Cleveland, Ohio |
| | June 25, 2019 |
| | 12:02 p.m. |

- - - - -

TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

BEFORE THE HONORABLE DAN A. POLSTER,

UNITED STATES DISTRICT JUDGE, AND

DAVID A. RUIZ, UNITED STATES MAGISTRATE JUDGE.

- - - - -

Official Court Reporter: Susan Trischan,RMR,CRR,FCRR,CRC
7-189 U.S. Court House
801 West Superior Avenue
Cleveland, Ohio  44113
216-357-7087
Susan_Trischan@ohnd.uscourts.gov

```
 1    APPEARANCES:

 2    For the Plaintiffs:      Peter H. Weinberger, Esq.
                                Hunter J. Shkolnik, Esq.
 3                              Donald A. Migliori, Esq.
                                W. Mark Lanier, Esq.
 4                              Paul J. Hanly, Jr., Esq.
                                Paul J. Geller, Esq.
 5                              Elizabeth Cabraser, Esq.
                                Paul Farrell, Esq.
 6                              Salvatore C. Badala, Esq.
                                Joseph Rice, Esq.
 7                              Jayne Conroy, Esq.
                                Frank L. Gallucci, III, Esq.
 8                              Linda Singer, Esq.
                                Paulina do Amaral, Esq.
 9                              Andrea Bierstein, Esq.
                                John A. Baden, IV, Esq.
10                              Robert Leone, Esq.
                                Mark Dearman, Esq.
11                              James W. Ledlie, Esq.
                                James Cecchi, Esq.
12
      For the Defendants:      Mark S. Cheffo, Esq.
13                              Steven A. Reed, Esq.
                                Donna M. Welch, Esq.
14                              Carole S. Rendon, Esq.
                                Mark H. Lynch, Esq.
15                              Kaspar J. Stoffelmayr, Esq.
                                Lane Heard, Esq.
16                              Robert Nicholas, Esq.
                                Sean O. Morris, Esq.
17

18    ALSO PRESENT:            Special Master David Cohen
                                Special Master Francis McGovern
19                              Special Master Cathy Yanni

20

21    Proceedings recorded by mechanical stenography;
      transcript produced by computer-aided transcription.
22

23

24

25
```

<u>TUESDAY, JUNE 25, 2019, 12:02 P.M.</u>

THE COURT: All right. Good afternoon. Please be seated.

All right. This is a hearing on plaintiffs' motion to conditionally certify and send notice for a negotiation class.

We have obviously a lot of counsel, media present in the courtroom, and on the telephone.

I want to explain to members of the media why this is -- this proceeding is in public and some others haven't.

The same rules apply to the Opioid MDL as any other case in federal court. If I'm holding a hearing on a motion, and whether that hearing requires the taking of testimony, oral testimony and/or arguments of counsel, that's going to be in public.

If I have the typical status conference, case management conference that all Judges have with the lawyers and parties on a case, and that's done in chambers, typically -- that's how I do them; I think that's how every Judge in the country does them -- those are never public events.

If I have to use the courtroom because that's the only room where I can accommodate all the lawyers who need to be there, that doesn't change the

1  nature of the proceeding from a private one to a public
2  one.  And of course, as with any case, any time there's
3  settlement discussions, those are never public.
4  So that's why this hearing, since it is a
5  hearing on a motion, is in public and that's why, I
6  think, the last time I had a hearing on a motion, there
7  was a motion to disqualify, that was in public, open
8  court, and the media was present.
9  I want to say a few things at the outset.
10 I've been asked by my colleagues on the Judicial Panel
11 for Multi-District Litigation to oversee what many have
12 called the most complex constellation of cases that have
13 ever been filed.
14 We now have nearly 2,000 cases in Federal
15 Court, and hundreds more in State Courts brought
16 primarily by cities, counties, Native American tribes,
17 and a number of our state Attorneys General against the
18 manufacturers and distributors of prescription opioids
19 seeking to hold these corporations accountable for the
20 scourge of addiction and death that has cut across all
21 communities, races and classes.
22 My opinion is that to be justiciable, a
23 case must be capable of being tried in a courtroom.  It
24 also must be capable of being settled, if the parties
25 want to settle it.  If not, the case doesn't belong in

1  court, whether State or Federal.

2  Obviously every city and county in our
3  country is part of a state, and every one of the citizens
4  of every city and county, they are also citizens of a
5  state.  Each of our 50 Attorney General -- Attorneys
6  General has either filed a case in this opioid situation,
7  or is actively pursuing an investigation that may lead to
8  filing a case.

9  And some Attorneys General have filed more
10 than one case.  I believe in Ohio there are at least two.

11 I think everyone understands why cities and
12 counties have filed their own cases.  It's the legacy of
13 the tobacco settlement when most of the $200 billion that
14 was paid by tobacco manufacturers did not go toward
15 reducing smoking and treating lung cancer.  It was used
16 by state legislators for other state purposes.  They may
17 have been very worthy, I'm not meaning to suggest they
18 weren't, but they did not go toward addressing the reason
19 the cases were filed.

20 And candidly, some of this is being played
21 out right now in Oklahoma.  I read just today that
22 through the help of a mediator, the Attorney General and
23 the legislators have figured out a mechanism to ensure
24 that while any money that is received in settlement and
25 has been paid in settlement by two of the defendants will

1    be under the control of the state legislature, that money

2    will be used only toward combatting the opioid crisis in

3    that state.  And there's a mechanism that's been created

4    just for that.

5                I think I said at the very outset of this

6    MDL, in January of 2018, that developing solutions to

7    combat a social crisis such as the opioid epidemic should

8    not be the task of our judicial branch; either our

9    federal judiciary, or our state judiciary.

10               It's the job of the executive and

11   legislative branches, but like it or not we have these

12   cases.  And I've been given the task of managing them in

13   a way that is fair both to the plaintiffs and to the

14   defendants, and in a manner that doesn't cause our state

15   and federal judiciaries to crash.

16               Nobody has the ability to -- or the

17   capability to try all of these cases, which means the

18   vast majority need to be settled or dismissed.

19               Now, I know the defendants want me to

20   dismiss them all, and they've filed a number of motions

21   already, and I expect by the Friday deadline we'll get a

22   lot more.  And I'll have to address these motions.

23               As for settlement, the only thing everyone

24   has agreed upon is that the cases cannot be settled

25   piecemeal, one at a time.  And no one can settle the

1 state cases without settling the city and county cases,
2 and tribe cases, and no one can settle those cases
3 without settling the state cases, and they cannot be
4 settled one by one by one.
5     The defendants have made it clear that they
6 would not consider settlement if they can't get closure,
7 and I don't disagree with them. I would feel the same
8 way.
9     So if that is to happen, there needs to be
10 a vehicle to do it. The negotiation class that has been
11 presented by the plaintiffs' motion is a novel idea. It
12 has never been tried, but that doesn't make it wrong or
13 illegal or incorrect. There's never been a constellation
14 of cases like this, so to settle them requires a novel
15 approach.
16     I have encouraged all ideas. I've never
17 shot one down because even if one idea, say what seems a
18 little strange, it may have something in there that
19 produces another idea.
20     All right. We need novel solutions to a
21 novel problem.
22     And the plaintiffs have not claimed by
23 presenting this that this is the only structure or a
24 perfect structure, all right, or that any defendant must
25 use it. They've put it out there as a possibility, the

1  best one that they could come up with.

2  And I'm very well aware that other
3  structures are being actively discussed, and I encourage
4  that.

12:10:42  5  So the states really don't need a structure
6  to settle their cases. I mean, there is a model, the
7  consent decree. Each state can have a consent decree in
8  its state. You can have 50 identical consent decrees or
9  maybe little variations. That's relatively simple.
12:10:59 10  That's been done before.

11  Okay. What we need is a structure to deal
12  with not only the roughly 2,000 city and county
13  subdivision cases that have been filed, but potentially
14  there are 20,000 other subdivisions out there who could
12:11:14 15  file cases.

16  So everyone, the plaintiffs, the
17  defendants, and the Attorneys General, have an incentive
18  to develop an effective structure. And I welcome all
19  ideas and all suggestions. And I very much welcome the
12:11:34 20  fact that all 50 Attorneys General have been willing to
21  work with me.

22  I asked for their help at the beginning,
23  and to a man and woman, each of them has pledged their
24  assistance. And I've met with many of them, and I've met
12:11:51 25  with many of their first assistants and their able

1 colleagues in their offices, and they are working very
2 hard because they recognize that no one can settle these
3 cases without everyone's assistance.
4 So I understand that the parties have had
5 some discussion about how we can proceed with this motion
6 and how we can do it in a way that involves input from
7 everyone as opposed to in a typical adversarial posture.
8 I know that there have been various filings
9 already.  These are the ones which I've received.  There
10 may have been others.  But I know we've received a
11 memorandum of certain defendants in opposition to
12 plaintiffs' motion for certification that was filed June
13 24th.
14 We also had certain pharmacy defendants'
15 objections.  That was filed June 24th.
16 And also, yesterday I received two letters
17 from a substantial number, I think 24 to 26 Attorneys
18 General and I've had both of those letters filed.  They
19 are both dated June 24th.
20 And I have reviewed them.  I'm sure
21 everyone has.  And again, I welcome some of the input of
22 the distributors and I certainly welcome the input, the
23 considered input of all of the Attorneys General.
24 So I understand the parties have had some
25 discussion about how we should proceed.

1  So yes.

2  MR. GELLER: Good afternoon, Your Honor.
3  Paul Geller from Robbins Geller for the PEC.

4  SPECIAL MASTER COHEN: Would you speak into
5  the microphone?

6  THE COURT: Paul, I know it's the protocol
7  to stand.

8  MR. GELLER: I'll sit.

9  THE COURT: But the way our sound system
10 works, it works much better if you're sitting.

11 So we'll dispense with the normal standing.
12 I'd ask everyone to sit and speak into the mic.

13 Thank you.

14 MR. GELLER: Your Honor, Elizabeth Cabraser
15 and I have been asked by lead counsel to present this
16 motion and go through the Rule 23 analysis for this novel
17 idea.

18 But as Your Honor pointed out, yesterday we
19 heard from the State AGs, several of them; we saw the
20 objections from the distributor defendants and the
21 pharmacy defendants; and we've also heard from other
22 plaintiffs' lawyers who represent entities that would be
23 class members in State Courts, all of whom had some
24 comments and some thoughts, some of them more doctrinal,
25 some of them practical, but all of them we felt like we

1     can deal with and we can make some adjustments.

2             And so with Your Honor's indulgence, we
3     would ask that rather than ruling on the motion today, we
4     give the states the more time that they want, but not
5     exactly the way they request.

6             What we would propose is that two weeks
7     from now we would file a revised motion and then anybody,
8     the states, defendants and anybody else, would then have
9     two weeks after that to file any opposition or any
10    commentary, which would bring us to July 23rd,
11    thereabouts.

12            Then we would ask for another week to file
13    a reply brief, after which the renewed motion for the
14    certification of the negotiating class would be fully
15    briefed before the Court, and if the Court wanted to
16    entertain a hearing, we would ask you to schedule one as
17    quickly as the schedule permits.

18            And we would hope that if the class were
19    certified, notice would go out and class members would
20    then have an opportunity to opt out, which we would set
21    forth in our briefing.

22            I know, you know, we feel strongly that
23    consistent with everything that you said, this is, while
24    somewhat novel, I don't think it's quite as adventurous
25    as some others have commented, but it's simply an effort

1  to create an opportunity and an option for defendants if
2  they so choose to negotiate.
3  	And my colleague Elizabeth Cabraser wanted
4  to add some more to this, but rather than present our
5  motion today, we ask to take it a couple weeks from now.
6  	THE COURT: All right. Thank you,
7  Mr. Geller.
8  	Ms. Cabraser.
9  	MS. CABRASER: Good afternoon, Your Honor.
10 Elizabeth Cabraser on behalf of the PEC.
11 	One of the -- one of the innovative
12 features that we built into our motion was essentially a
13 preview opportunity so that all of the parties to the MDL
14 and the Attorneys General would have notice of this
15 hearing, even though it was styled a preliminary hearing,
16 and would have the opportunity both formally and
17 informally to provide comment and input.
18 	And we did that for a reason. And the
19 reason was we intended to take that input seriously. And
20 we wanted to know, before we got too far down the road on
21 this, what the concerns were, were there details we
22 should attend to, and how to make this work, because the
23 concept is a large concept, but operationally things work
24 or don't work through attention to detail.
25 	And as a result of that process, we did

1 hear from cities and counties represented by counsel in
2 State Court and otherwise with some very good ideas for
3 improvement, with some correction to detail.
4 We heard from cities and counties who
5 wished to serve as additional proposed class
6 representatives.
7 We have heard from cities and counties
8 themselves that we should refine the class list to make
9 it completely inclusive and also to address the
10 particularities of some city and county organizations in
11 some states, all of which we are in the process of doing.
12 So that if the Court certifies the class
13 and allows formal notice to proceed, and, indeed, in
14 advance of that, as people preview this motion, class
15 members will see a complete and inclusive list.
16 The Census Bureau keeps different lists and
17 those need to be put together, which we're doing, for
18 example, to include, at their request, municipalities in
19 Puerto Rico.
20 So this schedule gives an additional chance
21 for input.
22 It gives us the opportunity to address the
23 input we've received so far, to incorporate many ideas,
24 and to improve and refine the motion.
25 And also, to give time to the Attorneys

1  General, as they requested, to both attend to settlement

2  initiatives and for further briefing.

3  Thank you, Your Honor.

4  THE COURT: All right. Thank you.

5  So if I understand, the plaintiffs'

6  proposal is that to give the plaintiffs until July 9th to

7  consider all the input they have received from the

8  states, the distributors, cities, counties, and input

9  they may continue to get, and they will by that date file

10 an amended motion.

11 And then by July the 23rd, after again I'm

12 sure there will be a lot of discussion, at that point any

13 state and any AG or group of AGs who want to file any

14 objections, comments, whatever, or any defendants who

15 want to file any objections or comments would do so, and

16 then July 30th the plaintiffs would file a response.

17 And if we follow that, my intent would be

18 to hold a hearing on Tuesday, August the 6th at 10:00

19 a.m. And I would most likely make a decision at that

20 point, and obviously listen to anyone who wants to appear

21 and say anything.

22 So that's the proposal.

23 Does anyone -- is there anyone who has, you

24 know, who has any, any principal problem or objection to

25 that proposal? I certainly would hear from him or her.

1           That is a proposal. I can say the Court
2    always -- we've got the best lawyers in the country here
3    on both sides, and I'm always in favor of letting the
4    best lawyers in the country have an opportunity to think
5    about something complex a little longer.
6           But I certainly want to give anyone who
7    thinks there's a problem with this an opportunity to
8    respond or say anything.
9           I could give that -- I think the people on
10   the phone are muted so I don't think I can give those
11   folks on the phone the opportunity to speak, or else
12   thinks would really crash, but if anyone is here who
13   wants to say anything, that's fine.
14          (Pause).
15          THE COURT: All right. Well, I take it by
16   the silence that no one has any violent disagreement
17   because my experience is in this case, if someone has a
18   real problem with what's going on, no one's been too shy
19   on either side.
20          So I will adopt that suggestion, and I
21   think I'll just say by noon on July 29th the plaintiffs
22   are to file an amended motion.
23          MR. WEINBERGER: July 9th? July 9th, Your
24   Honor?
25          THE COURT: July 9th.


| | |
|---|---|
| 1 | And I would encourage, you know, any |
| 2 | Attorney General or any defendant or any city or county |
| 3 | who has input to get that to, I guess Mr. Geller and |
| 4 | Ms. Cabraser are the principals -- they will be |
| 12:22:29 5 | shepherding this -- to engage in dialogue with them.  And |
| 6 | they will file something by July 9th. |
| 7 | And then by noon on July 23rd, I think any |
| 8 | party, any party to the case who wants to file a response |
| 9 | or objection should do so. |
| 12:22:49 10 | The Attorneys General are not parties so I |
| 11 | think they're welcome to do their response comment the |
| 12 | same way by letter, and obviously I will file any letter |
| 13 | I get from any Attorney General or group of Attorneys |
| 14 | General the day or the next day that we get it. |
| 12:23:09 15 | And then by noon on July 30th the |
| 16 | plaintiffs are to file any response, which could be a |
| 17 | response or could be a further amendment. |
| 18 | And then I will have a hearing on the |
| 19 | latest proposal that the plaintiffs had Tuesday, August |
| 12:23:30 20 | the 6th, at 10:00 a.m.  And that, of course, will be in |
| 21 | public.  We'll arrange for anyone to at least listen in. |
| 22 | And, of course, anyone who wants to appear, can appear |
| 23 | and say anything they wish. |
| 24 | And my -- I intend that I will make -- make |
| 12:23:50 25 | a decision either at that hearing or very shortly |

| | |
|---|---|
| 1 | thereafter. |
| 2 | Obviously if something -- someone says |
| 3 | something on the 6th that causes me to reflect, I'll |
| 4 | certainly do so.  That's the point of a hearing.  But my |
| 12:24:04   5 | plan is to make a decision that day or very shortly |
| 6 | thereafter. |
| 7 | So again I want to express the Court's |
| 8 | appreciation for all the hard work that went into the |
| 9 | plaintiffs' motion and proposal.  It was a product of a |
| 12:24:22  10 | great deal of work by a lot of fine people. |
| 11 | And I know -- I know that, and I express my |
| 12 | appreciation to all the people who reacted on very short |
| 13 | notice on the defendants' side and the State AGs with a |
| 14 | lot of thoughtful comments. |
| 12:24:43  15 | And the fact that everyone wants to take a |
| 16 | little more time is good. |
| 17 | So I'll get out a short order to this |
| 18 | effect, and then I guess I'll see anyone who wants to |
| 19 | appear on Tuesday, August 6th. |
| 12:25:00  20 | So unless anyone else has anything more to |
| 21 | say, that concludes this hearing. |
| 22 | Now, we had set what we've been calling a |
| 23 | roadmap discussion where each side can give the Court |
| 24 | some guidance as to how to deal with the substantive |
| 12:25:27  25 | motions that have been filed and are due to be filed this |

1           Friday, and I had set that to begin at 2:00 o'clock.

2                        Now, I know many of the same people are

3      going to be here, and I don't have a problem with

4      starting that at 1:00 o'clock, but I don't want to mess

12:25:45  5  anyone up.  But I think since we've got so many people

6      here, we don't need -- I didn't know how long this

7      hearing was going to take for that matter, and that's why

8      I gave a two-hour break.

9                        So, yes, Mr. Lanier.

12:26:10 10                  MR. LANIER:  Yes, Your Honor.  Mark Lanier

11     for the plaintiffs.

12                       We're ready to commence whenever the Court

13     is.

14                       MR. CHEFFO:  Your Honor, same here.  1:00

12:26:17 15  o'clock sounds great to us.

16                       THE COURT:  All right.  I think I'd like,

17     you know, people can get a quick something to eat and

18     then we'll start promptly at 1:00 o'clock, and that will

19     be fine.

12:26:26 20                  So this hearing is adjourned and the next

21     one will begin at 1:00 o'clock.

22                       MS. CABRASER:  Your Honor.

23                       THE COURT:  Yes.  Wait a second.

24                       Yes, Ms. Cabraser.

12:26:37 25                  MS. CABRASER:  Yes.  One housekeeping

1 matter on the negotiation class motion.

2 As the original motion has stated and as we
3 will continue to do, all papers that are filed in
4 connection with the ongoing motion practice will be
5 posted on the website OpioidsNegotiationClass.com.

6 And any potential class member or anyone
7 who has an informal comment or suggestion that they want
8 to make directly can go to
9 info@OpioidsNegotiationClass.info to send that in. And
10 that's, in fact, how we got several very useful technical
11 suggestions from cities and counties themselves.

12 So it's an open process.

13 THE COURT: All right. That's excellent.

14 MS. CABRASER: And it's online.

15 THE COURT: Do you -- do you think the
16 letters from the State AG, can you post those on the
17 website?

18 MS. CABRASER: With the Court's
19 authorization --

20 THE COURT: Yes.

21 MS. CABRASER: -- as -- and the AG's
22 permission, we will do that.

23 THE COURT: All right. I can't imagine
24 they would object. I mean, they are on, they have been
25 publicly filed. I told the AGs that that's what I would

```
 1    do.
 2                 So I think they should be.  Let everyone be
 3    able to see the very thoughtful comments that the AGs
 4    made.
 5                 So thank you.
 6                 Okay.  Thank you.
 7                 THE CLERK:  All rise.
 8                 (Proceedings concluded at 12:27 p.m.)
 9                          -  -  -  -
10                       C E R T I F I C A T E
11                 I certify that the foregoing is a correct
12    transcript from the record of proceedings in the
13    above-entitled matter.
14
15
16
17    /s/Susan Trischan
18    /S/ Susan Trischan, Official Court Reporter
19    Certified Realtime Reporter
20
21    7-189 U.S. Court House
22    801 West Superior Avenue
23    Cleveland, Ohio 44113
24    (216) 357-7087
25
```

12:27:53 (line 5)