Exhibit 13

Highly Confidential - Subject to Further Confidentiality Review

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF OHIO
 2                          EASTERN DIVISION
 3
     IN RE NATIONAL PRESCRIPTION   | MDL No. 2804
 4                                 |
     OPIATE LITIGATION             | Case No. 17-MD-2804
 5                                 |
     APPLIES TO ALL CASES          | Hon. Dan A. Polster
 6
 7                               - - -
 8                     Wednesday, April 24, 2019
 9                               - - -
10
                 CONFIDENTIAL - SUBJECT TO FURTHER
11
                        CONFIDENTIALITY REVIEW
12
                                 - - -
13
                                Volume 2
14
15
            VIDEOTAPED DEPOSITION of MATTHEW PERRI, III,
16   BS Pharm, Ph.D., RPh, held at Jones Day,
     1420 Peachtree Street, N.E., Suite 800, Atlanta,
17   Georgia, commencing at 8:35 a.m., on the above date,
     before Susan D. Wasilewski, Registered Professional
18   Reporter, Certified Realtime Reporter and Certified
     Realtime Captioner.
19
20
21                               - - -
22                    GOLKOW LITIGATION SERVICES
23           877.370.3377 ph | 917.591.5672 fax
24                       deps@golkow.com
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1            MR. CHALOS:  Object to the form.
 2       A.   I think so.  I think the only other place
 3  there might be something related to marketing of
 4  generics would be in the section on the distribution
 5  channels, the supply chain earlier in the report,
 6  but it wouldn't be anything different.  It just
 7  might be supplemental.
 8       Q.   Okay.  And what do you mean, just so that we
 9  can be clear, when you refer to generic marketing?
10       A.   So the marketing for brand name
11  pharmaceuticals and marketing for generics, in my
12  experience, is slightly different.
13       Q.   Okay.
14       A.   So I felt as though I should distinguish
15  between the two in the report.  So to the extent
16  that different methods are used or different themes
17  are used, I wanted to have a section that
18  specifically related to the themes used with
19  generics.
20       Q.   Okay.  And this is specific to generic
21  prescription medicines, and in this case opioids,
22  it's not generic in the sense of nonspecific or
23  unbranded, it's generic prescription medicines and
24  opioids?
25       A.   Yes.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1      Q.    All right.  If we could turn to Paragraph
 2   173.
 3      A.    Okay.
 4      Q.    And the last sentence of that paragraph
 5   reads:  The key marketing messages are focused on
 6   competitive prices and the assurance of consistent
 7   supply of quality generic medicines -- medications.
 8            Did I read that correctly?
 9      A.    Yes, you did.
10      Q.    Thank you.  And I think you reference that
11   just a minute ago, that those marketing messages are
12   different than what you've seen with the branded
13   marketing messages; is that correct?
14      A.    Yes.
15      Q.    Okay.  And generic manufacturers do not
16   promote the safety, efficacy, or benefits of their
17   generic medications; is that correct?
18            MR. CHALOS:  Object to the form.
19      A.    I would agree that they generally don't do
20   that, but if there is not -- I can't say that that's
21   never done with respect to generics.  And if we
22   qualify that just a little bit, for example,
23   sometimes with generics there are -- references are
24   made to other products or comparable products, the
25   branded product itself.  So when that occurs, the
```

Highly Confidential - Subject to Further Confidentiality Review

1   generic is sort of linking itself to the branded
2   rather than just standing alone on its own.  So with
3   those qualifications -- generally, I completely
4   agree with this, and this is what I see in the vast
5   majority of the marketing messages associated with
6   generics that I saw in the opioid matter, was that
7   they focused on consistency of supply, pricing and
8   quality of the products.
9        Q.   Okay.  Thank you.  And turning to
10  Paragraph 182 -- sorry, 181, but just above still on
11  page 151.
12       A.   Okay.
13       Q.   Although we can read the sentence from the
14  beginning, just go back to page 150.  The sentence
15  starting:  "From a marketing and business
16  perspective, for each generic manufacturer who
17  decided to enter the opioid market, the profit
18  potential outweighed any barriers or potential
19  negative aspects of market entry, including concerns
20  over the risks of selling opioids."
21            Did I read that correctly?
22       A.   You did.
23       Q.   And this calculus, that profits outweigh the
24  risks and costs of a particular product, that
25  calculus is not unique to a decision to enter a

Highly Confidential - Subject to Further Confidentiality Review

```
 1    market for opioids; is that correct?
 2        A.   Yes, that's true, the go/no go decision
 3    described in this section on my report, it would be
 4    true for any generic product being considered.
 5        Q.   Okay.  And medications that are available by
 6    prescription, as opposed to, say, over the counter,
 7    that is because there is some degree of risks
 8    associated with those medications, correct?
 9        A.   I think by definition, prescription
10    medications are more dangerous or more -- have more
11    potential for harms than over-the-continuer
12    medicines, yes.
13        Q.   Okay.  So a pharmaceutical manufacturer is
14    going to undergo a similar calculus when deciding to
15    manufacture or enter the market for any drug,
16    correct?
17        A.   I think there would be a contemplative
18    decision that would be made and they would -- they'd
19    have criteria.  Certainly I think the criteria for a
20    branded product may be different and certainly have
21    higher implications in terms of the amount of
22    investment that you've got to put into the product,
23    the amount of time that it would take to develop and
24    bring to market, but the overall "should we do this
25    or not" is going to be pretty similar at the end of
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    C E R T I F I C A T E

 2           I, SUSAN D. WASILEWSKI, Registered

 3    Professional Reporter, Certified Realtime Reporter

 4    and Certified Realtime Captioner, do hereby certify

 5    that, pursuant to notice, the deposition of MATTHEW

 6    PERRI, III, BS Pharm, Ph.D., RPh, was duly taken on

 7    Wednesday, April 24, 2019, at 8:35 a.m. before me.

 8           The said MATTHEW PERRI, III, BS Pharm, Ph.D.,

 9    RPh, was duly sworn by me according to law to tell

10    the truth, the whole truth and nothing but the truth

11    and thereupon did testify as set forth in the above

12    transcript of testimony.  The testimony was taken

13    down stenographically by me.  I do further certify

14    that the above deposition is full, complete, and a

15    true record of all the testimony given by the said

16    witness, and that a review of the transcript was

17    requested.

18

19    _____

20    Susan D. Wasilewski, RPR, CRR, CCP

21    (The foregoing certification of this transcript does

22    not apply to any reproduction of the same by any

23    means, unless under the direct control and/or

24    supervision of the certifying reporter.)

25
```