IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45090<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 17-OP-45004 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**EXHIBIT A
SUMMARY SHEET FOR MANUFACTURER DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT FOR
<u>PLAINTIFFS' FAILURE TO OFFER PROOF OF CAUSATION</u>**

Plaintiffs cannot meet their burden to prove proximate cause against the Manufacturer Defendants collectively or individually. Plaintiffs took a risk by choosing to pursue their claims on an aggregate basis. Now, although they purport to offer multiple layers of interdependent models and complicated regression analyses, a fundamental problem exists: their models do not segregate lawful conduct from unlawful conduct, or harms caused by legal and appropriate opioid prescriptions from those caused by illicit drugs. Plaintiffs' models cannot prove proximate causation as a matter of law because their models don't address the right questions.

*First*, Plaintiffs offer Meredith Rosenthal to opine that Manufacturers' marketing caused increased prescriptions. On Plaintiffs' counsel's instruction, Rosenthal simply assumes that ***all*** opioid detailing by any sales representatives to prescribers was unlawful. Her model does not attempt to identify, measure, or isolate in any way ***deceptive*** marketing from lawful marketing, and Plaintiffs are therefore unable to determine whether and to what extent alleged deception resulted in

increased prescriptions.

*Second*, Plaintiffs cannot prove that Manufacturers' alleged diversion-control failures caused medically unnecessary/excess prescriptions or actual diversion of Manufacturers' medicines into their communities and into an illicit black market.  Plaintiffs' experts offer 21 separate metrics that one might theoretically use to flag orders from **Distributors** to **Pharmacies** as "suspicious."  But that does not answer any question about any Manufacturer Defendant's relevant conduct—**none** of Plaintiffs' experts opines that the orders that get flagged as a result of these theoretical metrics actually *were "suspicious."*  Consequently, their experts cannot isolate which of the flagged orders were investigated by Manufacturers, or whether and to what extent there were orders that should have or could have been stopped if Manufacturers had different SOM practices.  In addition, because Plaintiffs' experts failed to analyze transactions between Manufacturers and their customers (Distributors) and instead analyze only orders shipped from Distributors to Pharmacies and from Pharmacies to patients—***over which Manufacturers had no control***—they have no way to prove a causal chain that includes Manufacturer Defendants.

*Third*, even if Plaintiffs could point to sufficient evidence to raise a genuine dispute of material fact that some alleged misconduct by some Manufacturers caused some medically unnecessary/excess prescriptions or an "opioid black market," they would nonetheless be required to prove these diverted prescriptions proximately caused their claimed harms.  Plaintiffs offer David Cutler as an expert for this purpose, but, like Rosenthal's, Cutler's model does not answer the right question.  Cutler purports to identify the percent of various harms (*e.g.*, crimes, juvenile removals, autopsies) in the Track One Counties based on the statistical relationship between all shipments of prescription opioid medications nationwide (both Defendants' and non-defendants', whether allegedly unlawful or not) and nationwide mortality from all opioids, including illegal drugs like

heroin and street fentanyl. But his models make no effort to segregate proper shipments from improper ones. Nor do they segregate the harms caused by illicit opioids like heroin and fentanyl from harms purportedly caused by alleged "excess" opioids arising from Manufacturers' alleged misconduct. Even if the Court takes everything these experts say as true, the finder of fact has no way of knowing whether, and to what extent, these jurisdictions received Manufacturers' products that they otherwise should not have as a result of any Manufacturer's alleged misconduct. Because Plaintiffs chose to develop the wrong evidence, there is no one in this case who can answer those questions—and certainly not a finder of fact.

*Fourth*, Manufacturer Defendants are entitled to summary judgment for the independent reason that Plaintiffs' aggregate proof models do not even attempt to make the threshold showing that ***each Manufacturer's*** alleged unlawful conduct proximately caused Plaintiffs' harms. Plaintiffs' non-conspiracy claims require evidence that the specific conduct of each Manufacturer proximately caused their injuries; thus, Plaintiffs' aggregating the conduct of Manufacturers to try to show that, viewed collectively, such conduct caused their injuries is insufficient.

*Fifth*, other courts have already rejected comparable aggregate proof models that Plaintiffs intend to use here to prove proximate causation.

*Sixth*, Plaintiffs must—but cannot—show that each Manufacturer Defendant's conduct proximately caused the claimed absolute common law public nuisance to recover abatement costs.

*Seventh*, that Plaintiffs have pleaded conspiracy claims provides no cover for their failure to prove causation.

The Court should grant Manufacturer Defendants summary judgment for Plaintiffs' failure to develop a viable theory of causation and for the absence of factual evidence necessary to satisfy Plaintiffs' burden.