# EXHIBIT 14

Return via email attachment or hand deliver to
Carol Warren, Corporate Controller's Department, 10-3-N

# Mallinckrodt plc
## Appendix 2: Finance Representation
### Period Ending June 26, 2015

Date: July 29, 2015

To: Mark Trudeau, Chairman, President and Chief Executive Officer
Matthew Harbaugh, Executive Vice President and Chief Financial Officer

**To the best of my knowledge** in my Capacity as **Director, Finance – Hospital Therapies** of Mallinckrodt plc, unless otherwise indicated by my comments in item #23 below, I certify that from June 26, 2015 through the date hereof:

1. All transactions have been properly recorded in the accounting records underlying the Mallinckrodt financial statements.

2. Mallinckrodt's financial statements have been prepared in conformity with US GAAP and Mallinckrodt policies and fairly present, in all material respects, the financial position as of June 26, 2015-, and the results of operations and cash flows of the Company for the three-months and nine-months ended June 26, 2015. The accounting principles and policies have been applied consistently with those used in prior periods. Following a policy set forth in an approved waiver (i.e. a waiver resulting from an acquisition) does not constitute a violation of Mallinckrodt policy.

3. To the extent that Mallinckrodt has closed its books prior to June 26, 2015, all adjustments necessary to present fairly, in all material respects, the Company's financial position, results of operations and cash flows as of and for the period ended June 26, 2015. In addition, the Mallinckrodt Report includes only 13 weeks of results of operations and cash flows.

4. Other than those disclosed to you, the Company has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor have any assets been pledged as collateral. All inventories are the property of the Company and do not include any items consigned to it or any items billed to customers.

5. The assumptions I used in making accounting estimates are reasonable. I have disclosed all estimates where it is reasonably possible that the estimate will change in the near term and the effect of the change could be material to Mallinckrodt's financial statements.

6. Whenever experts have been used under the direction of Mallinckrodt (i.e. for valuations, determination of actuarially determined amounts, etc.), Mallinckrodt management agrees with the work of the experts and has adequately considered the qualifications of the experts in determining amounts used in Mallinckrodt's financial statements and underlying accounting records.

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

Exhibit
Mallinckrodt-Kilper-002
2-6-19 (JA)

MNK-T1_0007022602

<u>Return via email attachment or hand deliver to</u>
<u>Carol Warren, Corporate Controller's Department, 10-3-N</u>

7. Risks associated with concentrations that meet all of the following criteria, have been disclosed to you:

   a. The concentration exists at the date of the Mallinckrodt Report.

   b. The concentration makes Mallinckrodt vulnerable to the risk of a near-term severe impact.

   c. It is at least reasonably possible that the events that could cause the severe impact will occur in the near term.

8. I believe all charges that have been deferred to future periods are recoverable or have been deferred in accordance with US GAAP.

9. Provisions that are reasonable based on available information have been made for:

   a. The reduction inventories to their estimated net realizable value based on specific consideration of excess quantities and obsolete/expired product.
   b. Any loss that is probable from environmental remediation.
   c. Any loss to be sustained in the fulfillment of, or from inability to fulfill, any sales commitments.
   d. Any loss to be sustained as a result of purchase commitments for inventory quantities in excess of normal requirements or at prices in excess of the prevailing market prices.
   e. Losses to be sustained in the fulfillment of, or from inability to fulfill, any commitments to purchase or sell securities under forward-placement, financial futures contracts and standby commitments.
   f. Any loss that is probable from legal proceedings.

10. Mallinckrodt management, using its best estimates based on reasonable and supportable assumptions and projections, reviews long-lived assets for impairment in accordance with Accounting Standards Codification ("ASC") 360, "Property, Plant and Equipment" (formerly Statement of Financial Accounting Standards ("SFAS") No. 144, "Accounting for the Impairment or Disposal of Long-Lived Assets") and goodwill and certain intangible assets for impairment in accordance with ASC 350, "Intangibles—Goodwill and Other" (formerly SFAS No. 142, "Goodwill and Other Intangible Assets"). The Company's financial statements reflect all required adjustments (as necessary) as of June 26, 2015-.

11. Receivables recorded represent valid claims against debtors for sales or other charges arising on or before the balance sheet date and have been appropriately reduced to their estimated net realizable value. Customer payment terms are in accordance with Mallinckrodt's Credit Policy and allowances are adequate to absorb currently estimated bad debt in the account balances.

12. All intra-segment transactions have been eliminated and all intra-segment balances eliminate in consolidation.

Page 2 of 6
Appendix 2

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

MNK-T1_0007022603

<u>Return via email attachment or hand deliver to
Carol Warren, Corporate Controller's Department, 10-3-N</u>

13. All intercompany borrowing arrangements have been evaluated and properly designated as either permanent or non-permanent. All intercompany loan borrowing arrangements designated as permanent are of a long-term investment nature, as we neither plan nor anticipate that settlement of such borrowing arrangements will be required in the foreseeable future. Such arrangements have been appropriately segregated in the balance sheets and such accounts will not be adjusted or reduced to reflect other transactions occurring between the borrowing and lending subsidiaries. In addition, such borrowing arrangements and the related amounts outstanding are evidenced and supported by valid loan agreements or other supporting documentation.

14. Mallinckrodt management has evaluated revenue recognition under the provisions of ASC 605, "Revenue Recognition" (formerly SEC Staff Accounting Bulletins ("SAB") 101 and 104, "Revenue Recognition in Financial Statements"). Management is not aware of any side agreements that are inconsistent with the applicable sales agreements, the customer's purchase order, sales invoice or any other documentation associated with such sale and believes that recorded revenue complies with the requirements of ASC 605 (namely, collectability, delivery, evidence of arrangement and fixed price).

15. I have provided all information necessary to ensure that restructuring and other charges have been recorded and utilized in accordance with ACS 420, "Exit or Disposal Cost Obligations"(formerly EITF 94-3, "Liability Recognition for Certain Employee Termination Benefits and Other Costs to Exit an Activity (Including Certain Costs Incurred in a Restructuring)," SFAS No. 146, "Accounting for Costs Associated with Exit or Disposal Activities" and SAB 100, "Restructuring and Impairment Charges") and, to the extent applicable, ACS 712, "Compensation—Nonretirement Postemployment Benefits" (formerly SFAS No. 112, "Employers' Accounting for Post employment Benefits") and ACS 715, "Compensation—Retirement Benefits" (formerly SFAS No. 88, "Employers' Accounting for Settlements and Curtailments of Defined Benefit Pension Plans and for Termination Benefits"). All amounts charged against provisions for restructuring charges represent valid expenditures in accordance with our original plans and US GAAP. Amounts remaining on our balance sheet relating to such provisions reflect our best estimate of the cost to complete the original plans in accordance with the above referenced guidance. I have provided all information necessary to ensure that the Company is able to evaluate any remaining restructuring accrual to determine that it is not excessive. To the best of my knowledge, the restructuring accrual and all significant changes, if any, from the original restructuring plans have been properly recognized, classified and disclosed in the Mallinckrodt Report.

16. In conjunction with each acquisition performed during the quarter (as applicable), Mallinckrodt has properly:

    a. Concluded that the acquisition is a business combination as defined in ASC 805, "Business Combinations" (formerly SFAS No. 141R, "Business Combinations").

    b. Identified, valued and recorded all the acquired assets and liabilities, including all intangible assets meeting the criteria for separate recognition outlined in ASC 805, "Business Combinations."

<u>Return via email attachment or hand deliver to</u>
<u>Carol Warren, Corporate Controller's Department, 10-3-N</u>

    c. Allocated the acquired assets and liabilities, including goodwill, to the appropriate reporting units in accordance with ASC 350, "Intangibles—Goodwill and Other."

    d. Assessed the useful lives of the acquired intangible assets subject to amortization and those with indefinite useful lives.

17. I have provided all information necessary to ensure that Mallinckrodt is able to properly account for any contingent consideration associated with acquisitions in accordance with ASC 805, "Business Combinations."

18. I have provided all information necessary to ensure that Mallinckrodt is able to account for its derivative instruments and hedging activities in accordance with the provisions of ASC 815, "Derivatives and Hedging" (formerly SFAS No. 133, "Accounting for Derivative Instruments and Hedging Activities," as amended and interpreted). Mallinckrodt's hedging activities are in compliance with its approved hedging and risk management policies.

19. The following, to the extent applicable, have been appropriately identified, properly recorded and/or disclosed to you:

    a. Related-party transactions and associated amounts receivable or payable, including sales, purchases, loans, transfers, leasing arrangements and guarantees (written or oral).

    b. Guarantees, whether written or oral, under which the Company is contingently liable.

    c. Arrangements with financial or other institutions involving compensating balances or other arrangements involving restrictions on cash balances, line-of-credit or similar arrangements.

    d. All off-balance-sheet derivative financial instruments (e.g., futures, options, swaps), including outstanding commitments to purchase or sell securities under forward placement and standby commitments.

    e. Financial instruments with significant individual or group concentration of credit risk.

    f. Sales with recourse provisions.

    g. All impaired loans receivable and/or loans that have been restructured to provide a reduction or deferral of interest or principal payments because of borrower financial difficulties.

    h. Agreements to repurchase assets previously sold.

    i. Interest in or transactions with (1) variable interest entities ("VIEs"), (2) potential VIEs that were considered but judged not to be VIEs, and (3) entities that were

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

MNK-T1_0007022605

afforded the scope exceptions of ASC 810, "Consolidation" (formerly FIN 46, "Consolidation of Variable Interest Entities").

j. Asset retirement obligations.

k. Any instances of noncompliance with contractual agreements that may have a significant effect on Mallinckrodt's financial statements.

l. Gain or loss contingencies in accordance with ASC 450, "Contingencies" (formerly SFAS No. 5, "Accounting for Contingencies"), including violations or possible violations of laws or regulations.

20. Except as disclosed herein, I am not aware of any balance sheet accounts (including intra/inter-company accounts) for which, instances of material unexplained differences or deviations from Mallinckrodt policies and procedures exist. All balance sheet accounts will be analyzed and reconciled on a timely basis in accordance with Mallinckrodt's Balance Sheet Account Reconciliation and Account Analysis Policy. Further, I understand that I am obligated to update you immediately, but no later than 14 days following June 26, 2015 -with regard to critical accounts and 19 days following June 26, 2015 with regard to all other accounts, upon gaining knowledge of material unexplained differences or deviations from Mallinckrodt policies and procedures. Following a policy set forth in an approved waiver (i.e. a waiver resulting from an acquisition) does not constitute a violation of Mallinckrodt policy.

21. All cash and bank accounts and all other properties and assets of Mallinckrodt of which I am aware are included in the financial statements.

22. All salary, bonuses and similar compensation paid and accrued as of and for the periods included in the Mallinckrodt Report have been approved by appropriate individuals within Mallinckrodt that have a sufficient level of authority.

23. I have brought to your attention any change in the company's internal controls within my functional area that occurred during the company's most recent fiscal period that has materially affected or is reasonably likely to affect Mallinckrodt's internal controls over financial reporting.

24. I have brought to your attention any fraud, whether or not material, that involves management or employees who have a significant role in Mallinckrodt's internal control over financial reporting.

25. I have brought to your attention, everything that I believe might be important to ensure that the Company's financial information and related disclosures included in the Mallinckrodt Report are complete and accurate in all material respects. To the extent that there are significant (as defined in the management representation letter) exceptions to any of the above representations, I have provided specific details of those exceptions below.

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

MNK-T1_0007022606

<u>Return via email attachment or hand deliver to</u>
<u>Carol Warren, Corporate Controller's Department, 10-3-N</u>

**Significant Exception(s):** (If there are no significant exceptions, enter the words "No Exceptions") Please do not include any items that were previously evaluated and categorized as immaterial in a prior Management Representation Letter:

| Paragraph # | Describe the Nature of Significant Exception(s) in Detail |
|---|---|
| 25 | CVS/Caremark invoiced us $2.1M for Fiscal Q2 Pennsaid 2% rebates resulting from sales under the Horizon NDC. Subsequent to the close of Fiscal Q3, we received a similar invoice for Fiscal Q3 totaling $5.4M. After following up with CVS, we determined this was a system-generated invoice. Market Access has been negotiating revisions to the current agreement which would remove Pennsaid 2% and Xartemis XR and reach a settlement on the invoiced Pennsaid 2% rebates. Their current expectation is the settlement would not exceed the $2.1M we currently have accrued. |

_____  Jeff Kilper         Director, Finance –
Signature                   Printed Name        Hospital Therapies
                                                Title

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER      MNK-T1_0007022607