UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No.: 1:17-md-2804 |
| THIS DOCUMENT RELATES: | Judge Dan Aaron Polster |
| *ALL CASES* | Hearing Date: August 6, 2019 |
| | Time:  10:00 a.m. |

## [PROPOSED] ORDER CERTIFYING NEGOTIATION CLASS
## AND DIRECTING NOTICE

1.      This Court held a hearing on August 6, 2019 to consider and determine whether to

grant class certification under Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(3) a Negotiation Class,

defined as:

> All Counties, Parishes, and Boroughs (collectively, "Counties"); and all
> incorporated places, including without limitation cities, towns, villages, townships,
> and municipalities, as recognized by the United States Census Bureau
> (collectively "cities"); and listed on the Opioids Negotiation Class website,
> www.opioidsnegotiationclass.com.

2.      Upon review and consideration of the papers and presentations submitted in

connection with the proposed Negotiation Class, this Court finds and Orders the following:

3.      This Court has been provided with information sufficient to enable it to determine

that it is appropriate to grant certification to the proposed Negotiation Class and approve the

(Proposed) Class Action Notice and Frequently Asked Questions ("FAQs") attached hereto as

Exhibits "A" and "B," for dissemination by mail, email, and website posting to the members of

that proposed Class, to set a deadline of October __, 2019 for Class members to opt-out, and to

- 1 -

thereafter confirm the membership of the Class by entry of an Order pursuant to 23(c), giving all parties notice of who is included in, and who is excluded from, the Class.

4.     The Negotiation Class, consisting of over 2,000 currently litigating entities, and over 30,000 additional entities dispersed geographically across the country, is so numerous that their individual joinder, especially for purposes of engaging in effective settlement negotiations, is impractical.  The Negotiation Class thus fulfills the "numerosity" requirement of Rule 23(a)(1).

5.     As a review of the complaints of Class Representatives and Class members gathered in the MDL No. 2804 proceedings shows, the complaints filed by the cities and counties in their own cases raise common questions of fact and law regarding the genesis and rise of the opioids epidemic, who was involved and who is responsible, which laws have been broken, and by whom, and the nature and extent of the defendants' knowledge, conduct, and duty.  Viewed objectively, and especially through the prism of the express and limited purpose of the Negotiation Class—to achieve settlement—the questions of law and fact that emerge from a survey of the actions as common and recurring questions are the more important ones, whose resolution would significantly advance the settlement of MDL No. 2804 and related litigation. As set forth in greater detail in the Court's Opinion, given their relative importance, these questions fulfill the "commonality" and "predominance" requirements of Rule 23(a)(2) and 23(b)(3).  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Tyson Foods, Inc. v. Bouaphakaeo*, ___ U.S. ___, 136 S. Ct. 1036, 1045 (2016); *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405 (6th Cir. 2018).

6.     As set forth in greater detail in the Opinion, the claims of the Class Representatives are typical of the claims of the Class, because they are based upon the same

underlying events and the same legal theories.  The "typicality" requirement is met because the

Class members' claims are "fairly encompassed by the named plaintiffs' claims."  *Sprague v.*

*General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998); *In re Whirlpool Corp. Front-Loading*

*Washer Products*, 722 F.3d 838, 852 (6th Cir. 2013).

7.      Rule 23(a)(4) requires that the Class representatives and counsel "will fairly and

adequately protect the interests of the Class."  This requirement demands heightened attention in

the settlement context.  *Amchem*, 521 U.S. at 620.  As set forth in greater detail in the Opinion,

the adequacy requirement of Rule 23(a)(4) is met.  The Plaintiffs identified in the attached Class

Action Notice are hereby appointed as Negotiation Class Representatives.

8.      The members of the previously-appointed Plaintiffs Settlement Committee as

listed in the Court's Order of February 7, 2018 [Doc #118] shall continue to represent Plaintiffs

in overall settlement negotiations.  The proposed Class Counsel as identified in the Class Action

Notice are hereby appointed as Class Counsel to represent the Negotiation Class under Fed. R.

Civ. P. 23(g).

9.      The following items are approved for posting and dissemination:

(1) the proposed Class Action Notice attached hereto as Exhibit A is approved for
posting on the Opioids Negotiation Class website,
www.opioidsnegotiationclass.com, and for mailing and/or emailing to the Class
members; and

(2) the Frequently Asked Questions ("FAQs") attached as Exhibit B is approved
for posting on the Opioids Negotiation Class website,
www.opioidsnegotiationclass.com, and may be updated to provide additional
information to additional questions from Class members; and

10.      The papers previously submitted by Plaintiffs in connection with the Negotiation

Class motions, this Order, and all other and future Orders and Court notices related to the

Negotiation Class, are approved for posting and shall be posted on the Opioids Negotiation Class

website, www.opioidsnegotiationclass.com.

1780325.8

11.     The Class Action Notice (Exhibit A) shall be mailed and emailed to all entities listed as Class members on www.opioidsnegotiationclass.com, to be sent no later than August __, 2019.  Epiq Global is hereby approved to serve as Class Notice provider, is authorized and directed to effectuate first class mail and email notice to the Class, and is ordered to provide a Report to this Court, no later than _____, 2019 to report on the completion of the Class Notice program.

12.     Exclusion requests are to be sent by those Class members wishing to opt out as directed in the FAQs posted on www.opioidsnegotiationclass.com.  Exclusion requests must personally signed by the appropriate official of the entity itself, and must be emailed or postmarked no later than _____, 2019.

13.     This Order does not stay or impair any action or proceeding in any court, and Class members may retain their Class membership while proceeding with their own actions, including discovery, pretrial proceedings, and trials.  In the event a Class member reaches a settlement or trial verdict, it may proceed with its settlement/verdict in the usual course without hindrance by virtue of the existence of the Negotiation Class. Such Class Member may not, however, collect on its individual settlement/judgment and also participate in any settlement fund.

14.     The Order does not certify the Negotiation Class for any purpose other than as set out in the Renewed and Amended Notice of Motion, Motion, and Supporting Memorandum, and hereby limits its scope, purpose and effect as set forth therein.

15.     Specifically, this Order may not be cited as precedent or in support of the certification of any class for any other purpose in any Opioids-related litigation by or against any party thereto.  This order is without prejudice to any party's ability to oppose the certification of

this or any other class for the prosecution of any Opioids-related claim, defense, issue or question.  This Order is without prejudice to the ability of any Class member to proceed with the prosecution, trial and settlement, in this or any court, of an individual claim, nor does it affect the ability of any defendant to assert any defense thereto.

16.     This Order does not alter existing law with respect to the relationship between any State and its political subdivisions.

17.     This Order does not approve, or commence the approval process for, any specific settlement or proposed settlement.  Any settlement reached with the Negotiation Class must and will be subject to the specific settlement approval process of Rule 23(e).

18.     Any class action/common benefit attorneys' fees and costs sought in connection with any settlement ultimately approved under Rule 23(e) are subject to the procedures and provisions of Rule 23(h), this Court's prior Orders, and approval by this Court.  Any other fees and costs sought by application to any of the Funds established in connection with any settlement are also subject to this Court's approval.

19.     No Defendant is required by this Order to engage with the Negotiation Class. This is a voluntary mechanism developed to address the unique circumstances of this litigation, which the Court hopes will directly or indirectly facilitate the voluntary, fair, adequate and reasonable resolution of the cities' and counties' claims pending in these MDL No. 2804 proceedings and in related state court litigation, and promotes the overall resolution of the litigation.

20.     The date of entry of this Order set forth below commences the 14-day period set forth in Rule 23(f) for any party that objected to its entry to petition for its review in the United States Court of Appeals for the Sixth Circuit.  Rule 23(f) states that, "An appeal does not stay

proceedings in the district court unless the district judge or the court of appeals so order." Fed. R. Civ. P. 23(f).  It is this Court's intention not to stay any proceedings of any nature pending herein should such an appeal be sought.

21.     In light of its purpose to facilitate settlement, the Negotiation Class will terminate five (5) years from the date below, except as necessary to enable then-ongoing settlement negotiations, approval processes, enforcement and administration to be completed.

It is so ORDERED.


DATED: _____                    _____

                                                          District Judge Dan Aaron Polster

# EXHIBIT A

# (PROPOSED) CLASS ACTION NOTICE

# To:  all Cities and Counties in the United States as listed at www.opioidsnegotiationclass.com

- The Court in In re National Prescription Opiates Litigation, MDL No. 2804 (N.D. Ohio), has been asked to certify a voluntary "Negotiation Class" ("Class") comprised of cities and counties nationwide under Rule 23(b)(3), solely to consider and vote on any future settlement offers made to the Class by defendants.  The purpose of the Class is to unify cities and counties into a single negotiating entity to maximize their bargaining power, and to provide finality to the Opioid litigation for settling defendants.  [The Court granted this motion on _____, 2019.  The Class Certification Order is posted on the Class website.]

- The Class is defined as:  **all counties, parishes, and boroughs (collectively, "counties"); and all incorporated places, including without limitation cities, towns, villages, townships, and municipalities, as defined by the United States Census Bureau (collectively "cities"); as listed on the Opioids Negotiation Class website, www.opioidsnegotiationclass.com.**  ("Class website")

- For complete information on the Class, the settlement allocation formulae, the class certification motion and Order, the list of included class members, the supermajority voting process to be used by the Class in accepting or rejecting any class settlement offer, and an Allocation Lookup Tool determining your allocation of any proposed settlement, go to www.opioidsnegotiationclass.com.  Important information on the Opioids-related litigation, including all pertinent Orders and Schedules, and Frequently Asked Questions, will be available on the website on an ongoing and current basis.

- You do not need to have a lawsuit on file to be part of this Class.  This Class action will not decide any claims or defenses in opioids litigation, for or against any party, on the merits.  It is certified as a Negotiation Class only, to facilitate class members' approval or rejection of prospective proposed settlements.  There are no pending proposed settlements at this time.

- The Negotiation Class representatives are:  (1) County of Albany, New York; (2) City of Atlanta, Georgia; (3) Bergen County, New Jersey; (4) City of Baton Rouge/East Baton Rouge Parish, Louisiana; (5) Broward County, Florida; (6) Camden County, New Jersey; (7) Cass County, North Dakota; (8) City of Chicago, Illinois; (9) Cobb County, Georgia; (10) City of Concord, New Hampshire; (11) Cumberland County, Maine; (12) Cuyahoga County, Ohio; (13) City of Delray Beach, Florida; (14) Denver, Colorado; (15) Escambia County, Florida; (16) Essex County, New Jersey; (17) County of Fannin, Georgia; (18) Franklin County, Ohio; (19) Galveston County, Texas; (20) County of Gooding, Idaho; (21) City of Grand Forks, North Dakota; (22) County of Hennepin, Minnesota; (23) City of Indianapolis, Indiana; (24) County of Jefferson, Alabama; (25) Jefferson County/ City of Louisville, Kentucky; (26) Jersey City, New Jersey; (27) Kanawha County, West Virginia; (28) King County, Washington; (29) City of Lakewood, Ohio; (30) City of Los Angeles, California; (31) City of Lowell, Massachusetts; (32) City of Manchester, New Hampshire; (33) Maricopa County, Arizona; (34) Mecklenburg County, North Carolina; (35) The Metropolitan Government of Nashville and Davidson County, Tennessee; (36) Milwaukee County, Wisconsin; (37) Monterey County, California; (38) City of Norwalk, Connecticut; (39) County of Palm Beach, Florida; (40) Paterson City, New Jersey; (41) City of Phoenix, Arizona; (42) Prince George's County, Maryland; (43) Riverside County, California; (44) City of Saint Paul, Minnesota; (45) City of Roanoke, Virginia; (46) County of Rockland, New York; (47) City and County of San Francisco, California; (48) County of Smith, Texas; (49) Summit County, Ohio; (50) County of Tulsa, Oklahoma; and (51) Wayne County, Michigan.

- The Negotiation Class counsel are:  Jayne Conroy (Co-Lead), Christopher Seeger (Co-Lead), Gerard Stranch, Louise Renne, Zachary Carter, and Mark Flessner.  Contact information is posted on the Class website.

- Class members may exclude themselves from ("opt-out" of) the Class by having an authorized officer or employee sign and email a notarized exclusion request to [email address] no later than [date/time], 2019 that states "I [your

official entity name] wish to exclude myself from the Negotiation Class."  Otherwise, you will remain a Class member, with all the rights and benefits of class membership, including the right to participate in any settlement approved by the Negotiation Class and the court, as explained in detail at www.opioidsnegotiationclass.com.  The *pro rata* share of any settlement funds payable at the county level may be pre-determined by utilizing the Allocation Lookup Tool at www.opioidsnegotiationclass.com.  As a Class member, you have the right to vote on any settlement proposed to the Negotiation Class.  Classwide approval will be determined by supermajority votes of 75% of the voting class members, by number, population, and allocation, by litigating and non-litigating entities.  The Class will be bound by any settlement its supermajority and the Court approve.  Those who exclude themselves from the Class cannot vote on, will not be paid under, and will not be bound by, any class settlement.  Those who remain in the Class will receive direct notice of any and all proposed settlements and on the voting procedures and deadlines for each.

- Class representatives and Class counsel will represent the Class in negotiations with defendants who choose to do so.  You may enter an appearance through an attorney if you desire.  Class Membership does not eliminate existing agreements with individual counsel.  The procedure for payment of class/common benefit attorneys' fees/costs in connection with any Class settlement must be approved by the Court.  Details of the proposed options and procedures for fees and costs are posted on the Class website.

- **For complete and updated information visit:  www.opioidsnegotiationclass.com.**

1725622.13

# EXHIBIT B

**UPDATED 7/9/2019**

CITIES/COUNTIES NEGOTIATION CLASS
FREQUENTLY ASKED QUESTIONS
("FAQs")


1.      **Q:  Why is a Negotiation Class being formed?  What is its purpose?**

      **A:**  The purpose of the Negotiation Class is to create a cohesive group of cities and counties to negotiate Classwide settlements, on a voluntary basis, involving defendants who are engaged in nationwide opioid manufacturing, sales or distribution.  The Negotiation Class will be represented by Class Representatives and Class Counsel.  Class members will vote on any resulting settlement proposal, and any settlements that achieve a 75% supermajority "yes" vote by the Class (as described in FAQ 16 and 17 below) will go to the Court for formal approval. The ultimate purpose of creating a Negotiation Class is to make settlement easier to obtain.

2.      **Q:  What entities are included in the Negotiation Class?**

      **A:**  The Negotiation Class is defined as:

> **All counties, parishes, and boroughs (collectively, "counties"); and all incorporated places, including without limitation cities, towns, townships, villages, and municipalities, as defined by the United States Census Bureau (collectively "cities"); as listed on the Opioids Negotiation Class website, www.opioidsnegotiationclass.com. ("Class website")**

      Check the Cities and Counties lists posted on the class website to confirm whether you are included in one of these lists.  If yes, you are a Negotiation Class member.  The Class papers speak of "counties" and "cities" as shorthand terms.  The Class by definition includes political subdivisions with other names and titles, such as parishes, villages, towns, townships, etc., so long as they appear on the U.S. Census bureau lists as governmental entities that provide services to their residents.

3.      **Q:  Are cities and counties with state court-filed actions considered part of the Negotiation Class?**

      **A:**  Yes.  Cities and counties with state court-filed actions are members of this Negotiation Class, with the option to opt-out.  However, nothing about membership in the Negotiation Class interferes with the rights of any federal or state court plaintiffs to proceed with their own cases for litigation, trial, or individual settlement.  If and when a Class settlement has been reached, has achieved a supermajority approval vote by the Class, and has been approved by the Court, Class Members would release their settled claims in return for benefits.

4.      **Q:  Is this the first Negotiation Class?**

      **A:**  Yes.  This is a new use of the class action mechanism under Rule 23 of the Federal Rules of Civil Procedure, reflecting the unique nature of the national opioids litigation.  Unlike any mass litigation before, thousands of cities and counties nationwide are pursuing claims

CITIES/COUNTIES NEGOTIATION CLASS
FREQUENTLY ASKED QUESTIONS
("FAQs")

against major defendants.  The goal is to recover money to help fight the opioids epidemic, provide prevention and treatment services going forward, and change defendants' practices.

**5.      Q:  Why use a class mechanism?**

A:  Joining all cities and counties together as a Negotiation Class gives them maximum negotiating power, makes the negotiation of global settlements a more practical process, allows defendants to obtain global resolution, and enables Class Members to vote on resulting settlement offers.

**6.      Q:  Has there been a settlement reached with defendants yet?**

A:  No.  No settlement has been reached with any defendant.  But the existence of a Class of cities and counties makes future settlement offers more likely, because a defendant will be able to obtain "global peace."

**7.      Q:  If a Negotiation Class is formed, will it end the opioid litigation that my jurisdiction has filed?**

A:  No.  Your membership in the Negotiation Class will not affect any opioid suit that you have filed.  It will not stop you from filing or pursuing a lawsuit, and it will not affect any scheduled hearings or trials in that lawsuit.  Only a final classwide settlement would do that, after supermajority vote to approve it and after final Court approval.  In the meantime, you do not need to opt-out of the Class in order to try or settle your own case, and you may keep any settlement or judgment you obtain.

**8.      Q:  How does the allocation model work?**

A:  The allocation model uses three factors, based on reliable, detailed, and objective national data, to determine the share of a settlement fund that each county would receive (distribution of that share within the county is addressed in FAQ 12 below).  These factors address the most critical causes and effects of the opioids crisis, and are each weighted equally (1/3-1/3-1/3):  (1) the amount of opioids distributed within the county, (2) the number of opioid deaths that occurred in the county; and (3) the number of people who suffer opioid use disorder in the county.  This model is designed not to favor either small or large counties based solely on population.  However, population is still taken into account because each of the three metrics tends to increase with population.  Ultimately, the model allocates settlement funds proportionally to where the opioid crisis has caused actual harm.  To ensure objectivity and transparency, the model uses only data collected and reported by the federal government, and follows the reporting mechanisms deemed most relevant by public health authorities in measuring opioids-related harm.  Detailed descriptions of the sources and methodologies for each of the three factors are provided in the Memorandum posted at Opioidsnegotiationclass.com.

## CITIES/COUNTIES NEGOTIATION CLASS
## FREQUENTLY ASKED QUESTIONS
### ("FAQs")

**9.**    **Q:  What will happen with this proposed Class?**

  **A**:  The creation of the Negotiation Class has these next steps:

- On July 9, 2019, plaintiffs will file a motion for class certification to Judge Polster, the federal judge overseeing all of the national opioids litigation, to be heard on August 6, 2019.

- If Judge Polster grants the motion and certifies the Negotiation Class, a class action notice will then go out to all Class Members.  That will be the beginning of a 60-day period during which each Class Member can decide to participate or to opt out of the Class.  Class Members who want to participate do not need to do anything at this point; only those seeking not to participate must file an opt-out form.

- After the close of the opt-out period, the Court will enter an order confirming the membership of the Class, saying who is in and who is out of the Class.

- After that, the Class will operate if, and only if, a national defendant wishes to negotiate with the Class as a whole through the Negotiation Class mechanism.  If a proposed settlement is reached, then the proposal will be submitted for Class approval or rejection according to the supermajority voting formula (described in FAQ 16 and 17 below).  If no proposed settlement is reached, the Class will not vote and will have no other role.

**10.**    **Q:  Under this proposal, what happens to my jurisdiction's current fee agreement with outside counsel?**

  **A:**  The current fee agreement that a city or county has with its outside counsel remains in effect.  Membership in the Negotiation Class does not change that.  In the event of any settlement that achieves Class and Court approval, there would be a fund from which outside counsel could apply for fees and costs in lieu of any current fee agreement.  That would be a voluntary choice, a decision between the city or county and its outside counsel.  A total of up to but no more than 10% of any approved Class settlement amount will be held in a Private Attorneys Fund from which privately retained lawyers who forego their retainer agreements could recover for the work they have done.  Any unawarded amount remaining in this Fund would revert to the Class.

**UPDATED 7/9/2019**

CITIES/COUNTIES NEGOTIATION CLASS
FREQUENTLY ASKED QUESTIONS
("FAQs")

**11.     Q:  What will Negotiation Class Representatives receive that other jurisdictions don't get?**

**A:**  Negotiation Class representatives do not receive preferential treatment under any settlement simply by serving as Class representatives.  They could apply to the Court for reimbursement of costs and expenses incurred by serving as Class representatives, in what is called an incentive or service award, designed to encourage action by Class representatives on behalf of others.  Any such awards are subject to Class notice and Court approval.

**12.     Q:  What if cities, towns, and boroughs within a county have different views of how to allocate any settlement proceeds?**

**A:**  The Negotiation Class includes a two-step formula for allocation of any settlement funds.  Allocation of funds is first made between all counties in the country, according to the harm they have suffered.  Harm is measured using published federal statistics regarding the amount of opioids shipped to the county, the number of opioid overdose deaths that occurred in the county, and the number of persons suffering from opioid use disorder in the county.  The formula and its data sources are described in detail at opioidsnegotiationclass.com.  A second allocation then takes place between each county and the cities located within it and is overseen by a Special Master.  A county and the cities within it may share the funds allocated to the county in any manner they choose.  If the county and cities cannot agree, then a default allocation formula will apply, unless the Special Master accepts a different formula submitted for consideration.  The default allocation formula uses historical federal data showing how the specific county and the cities within it have made opioids-related expenditures in the past.  This formula and its data sources are also described in detail at opioidsnegotiationclass.com.  Counties and their constituent cities, towns, and boroughs are encouraged to confer and agree, among themselves, as to the distribution of any funds allocated at the county level in any settlement.

**13.     Q:  If my jurisdiction chooses to participate in the Negotiation Class, how will it know when there is a proposed settlement?**

**A:**  All Negotiation Class members will be given advance notice of any settlement offer, including details on its terms and conditions, and they will have an opportunity to vote on each individual settlement offer.  Only settlements achieving supermajority (75%) approval votes, by number, by allocation, and by population, of the litigating and non-litigating entities will be submitted to the Court for formal settlement Class approval.  You will be able to cast your vote securely, through the Negotiation Class website, which will establish a voting identity and portal for each Class member.

UPDATED 7/9/2019

CITIES/COUNTIES NEGOTIATION CLASS
FREQUENTLY ASKED QUESTIONS
("FAQs")

14.     **Q:  If there is a proposed settlement, does the Court still have to approve it?**

**A:**  Yes.  If there is a proposed settlement that achieves supermajority (75%) approval by the Negotiation Class membership, the Court will review and decide whether to approve it, utilizing the formal Class action settlement approval process and criteria set forth in Fed. R. Civ. P. 23(e).  All applications for fees and costs also require court approval under Rule 23 procedures.  (*See* https://www.law.cornell.edu/rules/frcp/rule_23.)

15.     **Q:  If there is a proposed settlement and my jurisdiction is included in the Negotiation Class, but it disapproves of the settlement terms, can my jurisdiction object to the settlement?**

**A:**  Yes.  As a Negotiation Class member, you are entitled under Rule 23(e) to object to any settlement, even if it has received a supermajority (75%) approval from the Class.

16.     **Q:  How is the voting done?**

**A:**  Each Class Member will vote only once.  The vote is simply yes or no, in favor or against the proposed settlement.  Votes are then tabulated mechanically within each applicable voting pool, to make sure a supermajority of each pool is in favor of the proposed settlement before it is presented to the Court.  The voting pools are described in FAQ 17.  Voting tabulation does not require any effort on the part of the Class Members, who simply cast a single vote on the ultimate issue.  The requirement of a supermajority across the different voting pools ensures a wide cross-section of support from cities and counties of all sizes and interests.

17.     **Q:  Exactly how does the supermajority voting process work?**

**A:**  The agreement to be bound by a supermajority vote means that no settlement can be reached that would bind the Negotiation Class without the approval of a supermajority of the Class, defined in several ways.  To be binding, 75% of each of the following six categories must approve a proposed settlement:

- 75% of the total number of cities and counties that have filed suit as of June 14, 2019 ("litigating entities").  This number is based on all individual Class members who had suits on file regardless of size, so that each voting entity has one vote;

- 75% of the total population of all cities and counties that have filed suit as of June 14, 2019.  For this computation, the vote of the city or county is weighted according to its population, with each person in a voting city and each person in a voting county equal to one vote.  Thus, by way of example, if a county votes yes and has a population of 20,000, and a city within the county votes yes and

**CITIES/COUNTIES NEGOTIATION CLASS**
**FREQUENTLY ASKED QUESTIONS**
**("FAQs")**

has a population of 10,000, the county's vote is weighted as 20,000 votes in favor, and the city's vote is recorded as 10,000 votes in favor.  The population for each jurisdiction is drawn from the 2010 Census data, and is presented on the litigation website, opioidsnegotiationclass.com.  The data will be updated once 2020 Census figures become available.  Many individual residents in this category may be counted twice, once as a resident of a municipality, and once as a resident of a county;

- 75% of the total population of all cities and counties that have not filed suit as of June 14, 2019.  For this computation, the vote of the city or county is weighted according to its population, with each person in a voting city and each person in a voting county equal to one vote.  Thus, by way of example, if a county votes yes and has a population of 20,000, and a city within the county votes yes and has a population of 10,000, the county's vote is weighted as 20,000 votes in favor, and the city's vote is recorded as 10,000 votes in favor;

- 75% of the total population of all cities and counties that have not filed suit as of June 14, 2019.  For this computation, each person in a voting city and each person in a voting county is the equivalent of one vote.  The population for each jurisdiction is drawn from the 2010 Census data, and is presented on the litigation website, opioidsnegotiationclass.com.  The data will be updated once 2020 Census figures become available.  Many individual residents in this category may be counted twice, once as a resident of a municipality, and once as a resident of a county;

- 75% of the litigating entities, weighted by their settlement fund allocations as shown on the Settlement Map and calculator to be posted at opioidsnegotiationclass.com; and

- 75% of the non-litigating entities, weighted by their settlement fund allocations as shown on the Settlement Map and calculator to be posted at opioidsnegotiationclass.com.

In order for a proposed settlement to be binding on the Negotiation Class, a 75% supermajority in each of these six categories must vote in favor.  No settlement may be approved as binding unless all categories are in favor at the requisite 75% level.  For purposes of counting votes, only votes cast will be considered.  Consistent with the voting rules in Section 524(g) of the bankruptcy code, which also requires special qualified majorities for different categories, non-

**CITIES/COUNTIES NEGOTIATION CLASS**
**FREQUENTLY ASKED QUESTIONS**
**("FAQs")**

votes are not considered as part of the denominator.  The 75% figure is calculated on the basis of the votes actually cast.  Votes cast are included in multiple pools, and a supermajority of a 75% "yes" vote in all six of these pools is required for Class approval.

**18.**   **Q**:  **How do Class Counsel get paid?**

A:  Class Counsel will apply to the Court for approval of fees and costs under Rule 23(h).  As a Class member, you will have notice and an opportunity to be heard on any such application.  The Court will appoint fee committees to make recommendations of any fee awards, to avoid duplication of payment, and to assure appropriate compensation of those whose efforts provided a common benefit.

**19.**   **Q**:  **Can I exclude myself from the Negotiation Class?**

A:  Yes.  You may exclude yourself, or "opt out," by signing, notarizing, and emailing a statement such as "I wish to exclude myself from the Negotiation Class" to [email address] by [date to be set by the Court].  This request must be signed by an authorized official or employee of the city or county itself.  If you exclude yourself from the Negotiation Class, you will not be bound by any Orders or Judgments regarding the Class, and you will not share in any settlement reached by the Class.  See the attached chart for explanation of the effect of a choice to opt out.

**20.**   **Q:  What is the Class Members' Special Needs Fund?**

A:  The Special Needs Fund will be created with 15% of any approved Class settlement amount.  Applications may be made to the Special Needs Fund by any Class member.  Distributions from the Special Needs Fund to Class Members are allowed for: (1) a Class Member to recover its own costs of litigating its lawsuit; and (2) to obtain additional relief for any local impact of the opioids crisis that is not captured by the Class Member's automatic allocation.  Applications will be made to and approved by a court-appointed Special Master, on a case-by-case basis.  Any unawarded amount remaining in this Special Needs Fund would revert to the Class.

**21.**   **Q:  How long will the Negotiation Class last?**

A:  The Negotiation Class will last for 5 years from the date it is confirmed by the Court.  For example, the Negotiation Class will expire on September 15, 2024, if the Court enters an order confirming the class on September 15, 2019.  After that date, the Class will not exist as an entity with which a defendant can negotiate.  However, the Negotiation Class will continue to exist with regard to:  (1) any settlements presented to the Negotiation Class for a vote before that date, to allow the settlement voting and approval process to continue; and (2) Class settlements reached before that date, to enable settlement administration and enforcement to be completed.

**CITIES/COUNTIES NEGOTIATION CLASS**
**FREQUENTLY ASKED QUESTIONS**
**("FAQs")**

**22.    Q:  If there is a settlement between a defendant and a State or States, what impact will this Class Action settlement have on the division of monies between a State and the cities and counties within the State?**

**A:**  Nothing in a Class Negotiation Settlement itself would affect the distribution of monies from a State to a city or county, or among the States.  However, the parties recognize it is probable that one or more defendants will seek to resolve the Opioid litigation by a joint settlement offer to one or more States and the cities and counties within that State.  If a defendant offers a settlement of this nature, it would lead to discussion between the State and the cities and counties within the State.  The first preferred result of that discussion is for each State to reach agreement with the cities and counties within the State on the allocation and use of the money within the State.  In the absence of an agreement, there would be a negotiation of an appropriate allocation between the States and the cities and counties.  Any agreed-to allocation would be treated as a settlement and submitted to the Negotiation Class for its consideration.  Again, the preferred alternative would be for a State and the cities and counties within the State to reach agreement.

**23.    Q:  How Does the Negotiation Class affect other types of plaintiffs' claims?**

**A:**  The Negotiation Class does not directly affect the litigation or settlement of the claims of other types of plaintiffs, such as Indian Tribes, third party payors, and others, that are proceeding in federal or state courts.  These plaintiffs can organize themselves as groups or propose their own classes, for trial or settlement purposes.  The Negotiation Class May have an indirect effect on, and provide an opportunity for, these other types of plaintiffs, because a defendant that desires a comprehensive resolution of all its opioids liability exposure may wish to include all types of plaintiffs in a settlement, thus prompting organized involvement in negotiations by these other plaintiff groups on their own behalf.

**24.    Q:  Who are the Class Representatives?**

**A:**  The proposed Class Representatives are:  (1) County of Albany, New York; (2) City of Atlanta, Georgia; (3) Bergen County, New Jersey; (4) City of Baton Rouge/East Baton Rouge Parish, Louisiana; (5) Broward County, Florida; (6) Camden County, New Jersey; (7) Cass County, North Dakota; (8) City of Chicago, Illinois; (9) Cobb County, Georgia; (10) City of Concord, New Hampshire; (11) Cumberland County, Maine; (12) Cuyahoga County, Ohio; (13) City of Delray Beach, Florida; (14) Denver, Colorado; (15) Escambia County, Florida; (16) Essex County, New Jersey; (17) County of Fannin, Georgia; (18) Franklin County, Ohio; (19) Galveston County, Texas; (20) County of Gooding, Idaho; (21) City of Grand Forks, North Dakota; (22) County of Hennepin, Minnesota; (23) City of Indianapolis, Indiana; (24) County of Jefferson, Alabama; (25) Jefferson County/ City of Louisville, Kentucky; (26) Jersey City, New Jersey; (27) Kanawha County, West Virginia; (28) King County, Washington; (29) City of Lakewood, Ohio; (30) City of Los Angeles, California; (31) City of Lowell, Massachusetts;

## CITIES/COUNTIES NEGOTIATION CLASS
## FREQUENTLY ASKED QUESTIONS
### ("FAQs")

(32) City of Manchester, New Hampshire; (33) Maricopa County, Arizona; (34) Mecklenburg County, North Carolina; (35) The Metropolitan Government of Nashville and Davidson County, Tennessee; (36) Milwaukee County, Wisconsin; (37) Monterey County, California; (38) City of Norwalk, Connecticut; (39) County of Palm Beach, Florida; (40) Paterson City, New Jersey; (41) City of Phoenix, Arizona; (42) Prince George's County, Maryland; (43) Riverside County, California; (44) City of Saint Paul, Minnesota; (45) City of Roanoke, Virginia; (46) County of Rockland, New York; (47) City and County of San Francisco, California; (48) County of Smith, Texas; (49) Summit County, Ohio; (50) County of Tulsa, Oklahoma; and (51) Wayne County, Michigan.

**25.     Q:  Who are the Class Counsel:**

**A:**  The [Proposed] Class Counsel are:  Jayne Conroy (Plaintiffs' Executive Committee, Co-Lead Class Counsel); Christopher Seeger (Plaintiffs' Executive Committee; Plaintiffs' Settlement Committee, Co-Lead Class Counsel); Gerard Stranch; Louise Renne (former City Attorney for the City and County of San Francisco), Mark Flessner (City of Chicago Corporate Counsel), and Zachary Carter (Corporation Counsel of the City of New York).  Each of them represents only cities/counties government entities in Opioids-related litigation.

**26.     Q:  How can I keep up with what's going on in this case?**

**A**:  All pertinent news and information will be posted on Opioidsnegotiationclass.com on an ongoing basis.