UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | MDL No. 2804 |
| | ) | Case No. 1:17-md-2804 |
| This Document Relates To: | ) ) ) | Hon. Dan A. Polster |
| *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.,* Case No. 18-op-45090 | ) ) ) ) ) | |

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ALLERGAN PLC'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION

4815-4459-6636.v1

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...........................................................................................................1

II.  RELEVANT PROCEDURAL HISTORY .......................................................................3

III. LEGAL STANDARD.....................................................................................................4

IV.  ARGUMENT...................................................................................................................6

    A.   Plaintiffs Have Made a *Prima Facie* Showing that Allergan plc Is Subject to Personal Jurisdiction as a Successor to Actavis, Inc. ...........................................6

        1.   Two Courts Presiding over Opioid Litigation Have Held that Allergan plc Is Subject to Jurisdiction Under the Doctrine of Successor Liability.........................................................................................6

        2.   Allergan plc Is Subject to Specific Personal Jurisdiction Because It Is a Successor to Actavis, Inc. ...................................................................8

            a.   The PLC's "Acquisition" of Actavis, Inc. Was a *De Facto* Consolidation or Merger ....................................................................8

            b.   Continuation of Previous Business Activity and Corporate Personnel........................................................................................9

            c.   Continuity of Shareholders Resulting from a Sale of Assets in Exchange for Stock................................................................13

            d.   Allergan plc Assumed the Liabilities and Obligations Ordinarily Necessary to Continue the Predecessor's Business Operations..................................................................13

            e.   Allergan plc Merely Continued the Business of Actavis, Inc. ..............................................................................................15

V.   THE EVIDENCE ESTABLISHES A *PRIMA FACIE* CASE THAT ALLERGAN PLC IS SUBJECT TO PERSONAL JURISDICTION UNDER THE OHIO LONG-ARM STATUTE .................................................................................................19

    A.   Allergan plc Does Business in Ohio and Has "Created Contacts" with the State....................................................................................................................19

    B.   Plaintiffs Make a *Prima Facie* Showing Sufficient to Pierce the Corporate Veil......................................................................................................................23

    C.   Allergan plc Was Complicit in Causing Tortious Injury to Persons in Ohio ........25

**Page**

VI.     JURISDICTION OVER ALLERGAN PLC COMPORTS WITH
        CONSTITUTIONAL DUE PROCESS ............................................................................25

VII.    CONCLUSION......................................................................................................................26

4815-4459-6636.v1

## TABLE OF AUTHORITIES

Page

### CASES

*AlixPartners, LLP v. Brewington*,
    836 F.3d 543 (6th Cir. 2016) ................................................................25

*Anwar v. Dow Chem. Co.*,
    876 F.3d 841 (6th Cir. 2017) .........................................................4, 5, 22

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos. Inc.*,
    617 N.E.2d 1075 (Ohio 1993)...........................................................23, 25

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) ..................................................................5

*City of Chicago v. Purdue Pharma L.P.*,
    211 F. Supp. 3d 1058 (N.D. Ill. 2016) ................................................3, 7

*City of Chicago v. Purdue Pharma L.P.*,
    No. 1:17-op-45169-DAP, slip op. (N.D. Ohio May 8, 2015) ...................7

*City of Chicago v. Purdue Pharma L.P.*,
    No. 1:17-op-45169-DAP, slip op. (N.D. Ohio Sept. 29, 2016) ...............7

*City of Chicago v. Purdue Pharma L.P.*,
    No. 14 C 4361, 2015 WL 2208423
    (N.D. Ill. May 8, 2015) ................................................................ *passim*

*Cytec Indus., Inc. v. B.F. Goodrich Co.*,
    196 F. Supp. 2d 644 (S.D. Ohio 2002) ..................................................8

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*,
    545 F.3d 357 (6th Cir. 2008) .............................................................22, 26

*Hitachi Med. Sys. Am., Inc. v. Branch*,
    No. 5:09-cv-01575, 2010 WL 816344
    (N.D. Ohio Mar. 4, 2010) ....................................................................23

*Indah v. SEC*,
    661 F.3d 914 (6th Cir. 2011) ................................................................22

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
    106 F.3d 147 (6th Cir. 1997) ..................................................................5

*MAG IAS Holdings, Inc. v. Schmückle*,
    854 F.3d 894 (6th Cir. 2017) ..................................................................4

4815-4459-6636.v1

Page

*Morsheiser Family Revocable Living Tr. v. Anshutz Expl. Corp.*,
  No. 5:12 CV 1734, 2012 WL 4739946
  (N.D. Ohio Oct. 1, 2012) ................................................................................4

*Opportunity Fund, LLC v. Epitome Sys., Inc.*,
  912 F. Supp. 2d 531 (S.D. Ohio 2012) ...........................................................8, 15

*Parker v. Miller*,
  No. 2:16-cv-1143, 2018 WL 3743981
  (S.D. Ohio Aug. 7, 2018).................................................................................24

*Pottschmidt v. Klosterman*,
  865 N.E.2d 111 (Ohio Ct. App. 2006) ..............................................................15

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ...........................................................................16

*Retail Serv. Sys., Inc. v. Mattress By Appointment, LLC*,
  210 F. Supp. 3d 916 (S.D. Ohio 2016) .............................................................23

*Schneider v. Hardesty*,
  669 F.3d 693 (6th Cir. 2012) .............................................................................5

*Senco Brands, Inc. v. Ohio Dep't of Job & Family Servs.*,
  70 N.E.3d 117 (Ohio Ct. App. 2016) ................................................................16

*Serras v. First Tenn. Bank Nat'l Ass'n*,
  875 F.2d 1212 (6th Cir. 1989) ...........................................................................5

*State ex rel. Health Care Facilities, Inc. v. Ohio Bureau of Workers' Comp.*,
  687 N.E.2d 763 (Ohio 1998)............................................................................13

*State of Ohio ex rel. DeWine v. Purdue Pharma L.P.*,
  No. 17 CI 261, 2018 WL 4080052
  (Ohio Ct. Common Pleas Aug. 22, 2018) .................................................. *passim*

*Theunissen v. Matthews*,
  935 F.2d 1454 (6th Cir. 1991) ...........................................................................5

*Trs. of Serv. Emps. Int'l Union Local 3 v. Glengary Grp., LLC*,
  No. 5:07CV2429, 2008 WL 11383259
  (N.D. Ohio July 31, 2008) ...............................................................................18

*Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*,
  920 F.2d 1323 (7th Cir. 1990) .........................................................................16

- iv -

**Page**

*Welco Indus., Inc. v. Applied Cos.*,
617 N.E.2d 1129 (Ohio 1993)...............................................................8, 13, 15, 18

*WRK Rarities, LLC v. United States*,
165 F. Supp. 3d 631 (N.D. Ohio 2016).................................................................15

**STATUTES, RULES AND REGULATIONS**

18 U.S.C.
§1961, *et seq.* ...................................................................................................25

Federal Rules of Civil Procedure
Rule 12(b)(2)...........................................................................................................1

Ohio Rev. Code
§2307.382..............................................................................................................25
§2307.382(A).........................................................................................................7
§2307.382(A)(1) ..................................................................................................19
§2307.382(A)(7) .............................................................................................19, 25

4815-4459-6636.v1

## I.  INTRODUCTION

Allergan plc[1] holds itself out to the public, regulators and investors, on its website and in public statements, as a "global pharmaceutical leader focused on developing, manufacturing and commercializing branded pharmaceutical . . . medicine products for patients around the world." Ex. 1 at 4.[2] And yet, according to its motion, the PLC is merely "a holding company that exists for the purpose of holding shares of other companies" and "does not sell or market prescription drugs in the United States at all." ECF No. 1258-1 at 1.[3]

While officially located in "tax-friendly Ireland" as a result of a 2013 corporate tax inversion, in reality, Allergan plc never left New Jersey because, as its CEO stated at the time "[e]verybody loves New Jersey too much, so nobody is willing to go." Ex. 2 at 1.  To this day, Allergan plc's filings with the SEC make clear that its "administrative headquarters" is in New Jersey and its top executives all work in New Jersey. Ex. 1 at 4.  In 2018, more than 77% of the PLC's net revenues came from the United States (about $12 billion out of $15.8 billion). *Id*. at 10.  Additionally, the PLC reported that 23% of its overall "annual revenues" (or about $3.6 billion) came from a single customer headquartered in Ohio – defendant Cardinal Health, Inc.  *Id.* at 12.

The PLC's public statements and confidential documents tell a very different story from that told to the Court in its Memorandum.  For example:

- The PLC states its "only offices are in Ireland" (Mem. at 1, 7) but its SEC filings state that its "administrative headquarters" is in New Jersey. Ex. 1 at 4.

---

[1]  As detailed below, from its creation in 2013 to 2015, Allergan plc was known as "Actavis plc." For purposes of this motion, plaintiffs will refer to the entity as "Allergan plc," the "PLC," or the "Company."

[2]  References to "Ex." are to the exhibits attached to the Declaration of Thomas E. Egler in Support of Plaintiffs' Memorandum of Law in Opposition to Defendant Allergan plc's Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction, filed concurrently herewith.

[3]  Allergan plc's Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction (ECF No. 1258-1) ("Memorandum" or "Mem.").

- The PLC tells the Court that "Allergan plc has [not] manufactured, distributed, marketed or sold prescription drugs in Ohio" (Mem. at 4) but an April 2019 study posted on its website says that "Allergan plc . . . maintains a production and packaging facility" in Ohio "that employs nearly 200 individuals and contributes significantly to the local and Ohio economies through its operating and capital expenditures." Ex. 3 at 1.[4]

- The PLC states that it is "independent" and "does not finance or control the daily affairs" of various subsidiaries (Mem. at 1-2) but its confidential accounting policies place all control in the hands of the top entity, requiring, for example, that "any new loan and/or cash movement" among subsidiaries "must be approved by [the PLC] prior to cash movement." Ex. 5 at 804.

- The PLC tells the Court that it and its U.S. entities "operate[] separately" and are "autonomous" (Mem. at 1-2) but, in reality, officers and employees of Allergan plc's U.S. subsidiaries ███████████████████████████████████████ ██████████████████████████████████████████ Further, all but one of Allergan plc's eight "executive officers" also serve as officers of the Company's top U.S. subsidiary. And all eight of them work in New Jersey.

The ████████████, management agreements, and the repeated appearance of the same people in officer and executive positions demonstrate that Allergan is a fully "integrated" pharmaceuticals company that has its "administrative headquarters" in this country, a manufacturing plant in this State, and took in $3.6 billion from one customer in Ohio last year. This Court has jurisdiction over it.

The PLC's Memorandum merely repeats arguments it has lost three times in front of two separate courts. In *State of Ohio ex rel. DeWine v. Purdue Pharma L.P.*, No. 17 CI 261, 2018 WL 4080052 (Ohio Ct. Common Pleas Aug. 22, 2018) ("*State of Ohio*"), the court found that the State established a *prima facie* case for jurisdiction over Allergan plc under Ohio law. *Id.* at *7. Among other things, the court noted that Allergan plc "maintains a 'major manufacturing' site in

---

[4]  Allergan announced the study, "The Economic and Community Impact of Allergan in Ohio" on April 15, 2019, via a press release still available on its own website. Ex. 4.

Cincinnati." *Id.*[5]  The *State of Ohio* opinion adopts the reasoning expressed more than four years ago in *City of Chicago v. Purdue Pharma L.P.*, No. 14 C 4361, 2015 WL 2208423 (N.D. Ill. May 8, 2015) ("*City of Chicago I*").  In *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058 (N.D. Ill. 2016) ("*City of Chicago II*"), when the PLC moved to dismiss the parent company a second time, the Court rejected once again its jurisdictional arguments.  *Id.* at 1068.

The PLC does not address or cite any of the three opinions, but rather ignores them. Plaintiffs have made a *prima facie* case that Allergan plc is subject to the jurisdiction of this Court based on admissible evidence considered by those prior courts as well as other, more compelling evidence.  The PLC's motion to dismiss should be denied.

## II.     RELEVANT PROCEDURAL HISTORY

Allergan plc initially filed this motion on January 15, 2019 about five months after the Court in *State of Ohio* rejected its arguments on jurisdiction and more than two years after the *City of Chicago* court rejected those same arguments for the second time.  *City of Chicago II*, 211 F. Supp. 3d at 1068.  Rather than address the prior decisions, the PLC argues that allegations in "Plaintiffs' Corrected Second Amended Complaint (the 'Summit SAC') (ECF No. 514) are insufficient to allow this Court to exercise personal jurisdiction" over it.  Mem. at 1.  But the Summit SAC is not the operative complaint:  On March 21, 2019, plaintiffs amended their complaints to note the findings made in the *State of Ohio* and *City of Chicago* opinions, as well as to add additional jurisdictional allegations.  *See, e.g.*, ECF No. 1466 ("Third Amended Complaint and Jury Demand" of County of Summit, Ohio, *et al.* (the "TAC")), ¶¶49-66.[6]  The PLC did not re-file or amend its motion, or take

---

[5]     All citations are omitted and emphasis is added unless otherwise noted.

[6]     A copy of the cited paragraphs of the TAC is attached as Ex. 7.

any other action in response to the filing of the TAC.[7]  It does not address the allegations in the TAC at all, but rather ignores them.

Further, because the PLC made factual assertions in support of its motion that contradicted its prior public statements, plaintiffs sought discovery regarding the jurisdictional issue.  *See* ECF No. 1365 at 2 (plaintiffs' motion seeking to delay response until "after personal jurisdiction discovery is complete").  Not surprisingly, the PLC resisted producing documents and information responsive to most of the jurisdictional discovery requests.  On April 3, 2019, Special Master Cohen ordered the PLC to produce documents relating to six discrete jurisdictional discovery issues and respond to 20 interrogatories.  ECF No. 1512 at 7-8.  When discovery was not complete as late as mid-June, plaintiffs asked that the Court strike the PLC's motion if it continued to stonewall discovery.[8] Despite the fact that the PLC has still not completed production of the jurisdictional discovery ordered, the overwhelming evidence demonstrates that Allergan plc is subject to this Court's jurisdiction.

## III.    LEGAL STANDARD

Where the Court rules on a motion to dismiss for lack of personal jurisdiction based on written submissions without holding an evidentiary hearing, a plaintiff need only make a *prima facie* showing that jurisdiction exists in order to avoid dismissal.  *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017); *accord MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir.

---

[7]    As the PLC's motion does not address the operative complaint, the Court should reject it. *Morsheiser Family Revocable Living Tr. v. Anshutz Expl. Corp.*, No. 5:12 CV 1734, 2012 WL 4739946, at *1 (N.D. Ohio Oct. 1, 2012) (denying a motion to dismiss because "an amended complaint supersedes the original complaint and renders it of no legal effect").

[8]    For example, after formally being ordered to produce its general ledger on May 27, Allergan plc did not do so until the middle of June.  As produced, however, the ledger does "not detail the intermediate transactions between the various offshore routes that Allergan/Actavis used to take funds between the U.S. entities and the PLC."  Ex. 8 at 1.  Allergan continues to refuse to produce any information it (in its own judgment) believes goes beyond "jurisdictional discovery."  *Id.*

2017); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).  "'Dismissal in this procedural posture is proper only if ***all*** the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction.'"  *Kerry Steel*, 106 F.3d at 149 (emphasis in original).  In assessing a plaintiff's *prima facie* case, the court must "consider pleadings and affidavits 'in a light most favorable to the plaintiff,' without weighing 'the controverting assertions of the party seeking dismissal.'"  *Anwar*, 876 F.3d at 847; *accord Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

Because this is a motion on the pleadings, and because Allergan plc has not produced all of the jurisdictional discovery it was ordered to produce by the Special Master, plaintiffs' opposition is based on a substantially deficient record.  In this posture, the *prima facie* standard applies unless the Court holds an evidentiary hearing.  *See Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012).

Further, "where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount 'proof which would, in effect, establish the validity of their claims and their right to the relief sought.'"  *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989).  In that instance, the court should defer determination of the jurisdictional issue for trial.  Postponing proof until trial is appropriate here: it would conserve judicial resources by permitting the court to hold "but one hearing on the contested facts" and "allow[] a plaintiff to present all her proof 'in a coherent, orderly fashion and without the risk of prejudicing his case on the merits.'"  *Id.*

## IV.    ARGUMENT

### A.    Plaintiffs Have Made a *Prima Facie* Showing that Allergan plc Is Subject to Personal Jurisdiction as a Successor to Actavis, Inc.

#### 1.    Two Courts Presiding over Opioid Litigation Have Held that Allergan plc Is Subject to Jurisdiction Under the Doctrine of Successor Liability

Until June 2015, Allergan plc was known as Actavis plc.  Ex. 9.  Actavis plc, in turn, was created less than two years earlier in 2013, when Actavis, Inc. bought Warner Chilcott plc and adopted Warner Chilcott's "tax inversion" corporate form.  Ex. 10.  Two courts – a federal court in Illinois presiding over *City of Chicago v. Purdue Pharma L.P., et al.*, and an Ohio state court presiding over *State of Ohio ex rel. Dewine v. Purdue Pharma L.P., et al.* – have found that Allergan plc is subject to jurisdiction under the doctrine of successor liability with regard to Actavis, Inc.  The claims and facts established in those courts apply equally here, and those courts' reasons for finding Allergan plc subject to personal jurisdiction are applicable here.  It is not a close question.

In *City of Chicago I*, the court explained: "One company is a successor of another if, among other things, 'the transaction amounts to a consolidation, merger, or similar restructuring of the two corporations' or 'the purchasing corporation is a "mere continuation" of the seller.'"  2015 WL 2208423, at *7.  As shown below, this is consistent with Ohio successor law.  The *City of Chicago I* court found that plaintiff had made a *prima facie* case of jurisdiction, defeating the PLC's motion, based on the following facts:

- the PLC "simply continued the business of Actavis, Inc." (*id.*);

- in creating the PLC, each Actavis, Inc. common share was converted into a single PLC share (*id.*);

- Actavis, Inc.'s U.S. headquarters had been at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey; the PLC's "administrative headquarters" were at the same location (*id.*);

- the PLC "retained all of Actavis, Inc.'s officers in the same positions" (*id.*);

- the PLC maintained the "same website as Actavis, Inc." (*id.*); and

- the PLC's SEC filings defined references to "we," "our," "us," the "Company" or "Actavis" to "refer to the financial information" of Actavis, Inc. for the period of time immediately before the creation of the PLC (*id.*).[9]

When the PLC moved to dismiss the *City of Chicago* action for lack of personal jurisdiction a second time, the Court again denied its motion. *City of Chicago II*, 211 F. Supp. 3d at 1068. That action was subsequently transferred to this District under the MDL.[10] The facts developed in the *City of Chicago* opinions have not changed and are equally applicable here.

Similarly, the *State of Ohio* court adopted the facts and reasoning from the *City of Chicago* opinion, concluding that Actavis, Inc. was a predecessor to the PLC and noting that the United States was the predecessor's largest commercial market. *State of Ohio*, 2018 WL 4080052, at *7. In addition, the *State of Ohio* court found that the PLC had substantial contacts with Ohio as it "maintains a 'major manufacturing' site in Cincinnati." *Id.*

Beyond concluding that Allergan plc was a successor to Actavis, Inc., the *State of Ohio* court found "the assertion of personal jurisdiction over [the PLC] to be reasonable" because "the Plaintiff has established a prima faci[e] case for jurisdiction over Allergan plc under the long-arm statute, Section 2307.382(A) ORC," and because Allergan plc "acted and caused consequences in the state of Ohio." *Id.*[11]

---

[9] The opinions in the *City of Chicago* action were written before Actavis changed its name to Allergan. Allergan plc, however concedes that it was formerly known as, and is therefore a mere continuation of, Actavis plc. *E.g.*, Mem. at 7 (signature reflects "Counsel for Allergan plc f/k/a Actavis plc"); *see also State of Ohio*, 2018 WL 4080052, at *7.

[10] *See City of Chicago v. Purdue Pharma L.P., et al.*, No. 1:17-op-45169-DAP (N.D. Ohio), ECF No. 288 (May 8, 2015 Order on Motion to Dismiss), ECF No. 471 (September 29, 2016 Order on Second Motion to Dismiss).

[11] As discussed below, the PLC continues to publicly disclose this fact. In its SEC Form 10-K for the year ended December 31, 2018 (filed February 15, 2019), Allergan plc stated that "[w]e have major manufacturing sites in" locations including "Cincinnati Ohio / USA." Ex. 1 at 14.

The PLC's Memorandum does not dispute the facts discussed or the conclusions reached in the *State of Ohio* or the *City of Chicago* opinions.  The Memorandum also does not address the doctrine of successor liability as adopted by those courts.[12]

        **2.**        **Allergan plc Is Subject to Specific Personal Jurisdiction Because It Is a Successor to Actavis, Inc.**

Under Ohio law, the exercise of successor jurisdiction is proper under the following four circumstances: (1) the successor expressly or impliedly agreed to assume the relevant liability; (2) the transaction amounts to a *de facto* consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction was fraudulently entered into for the purpose of escaping liability.  *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1131 (Ohio 1993); *see also Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 541 (S.D. Ohio 2012).  Here, at a minimum, the second and third circumstances apply.

        **a.**        **The PLC's "Acquisition" of Actavis, Inc. Was a *De Facto* Consolidation or Merger**

A *de facto* merger is "a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." *Welco*, 617 N.E.2d at 1134.  The hallmarks of a *de facto* merger are:

> (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

*Id.*  No single factor is determinative, and a *de facto* merger may be found even if not all hallmarks are present.  *Cytec Indus., Inc. v. B.F. Goodrich Co.*, 196 F. Supp. 2d 644, 658 (S.D. Ohio 2002).

---

[12]  The PLC's brief discusses "alter-ego" theory (Mem. at 5-7) which, as noted below, is also grounds for a finding of jurisdiction.

### b. Continuation of Previous Business Activity and Corporate Personnel

Pre-merger Actavis held itself out as "a leading integrated global specialty pharmaceutical company engaged in the development, manufacturing, marketing, sale and distribution of generic, branded generic, brand, biosimilar and over-the-counter ('OTC') pharmaceutical products." Ex. 11 at 3.  The PLC's first post-merger annual report used almost precisely the same language.  Ex. 12 at 3.[13]

The PLC argues repeatedly it is just a "holding company."  *See, e.g.*, Mem. at 1-2, 5.  Yet its foundational governing document under the Irish Companies Act, the "Constitution of Allergan Public Limited Company Memorandum of Association," dated May 16, 2013, makes clear that the PLC is much more than a "holding company."  Ex. 13 at 1.  In that document, the first "object[] for which the Company is established" is as follows:

> *To carry on the business of a pharmaceuticals company, and to research, develop, design, manufacture, produce, supply, buy, sell, distribute, import, export, provide, promote and otherwise deal in pharmaceuticals*, active pharmaceutical ingredients, and dosage pharmaceuticals and other devices or products of a pharmaceutical or healthcare character and to hold intellectual property rights and to do all things usually dealt in by persons carrying on the above mentioned businesses or any of them or likely to be required in connection with any of the said businesses.

*Id.*  Thus, the PLC's own "Constitution" provides it was created to carry on the previous business activities of Actavis, Inc.

Additionally, Allergan plc's corporate designee specifically testified that "prescription opioids" were part of the business activities of Actavis, Inc. and all of its successors.  *See, e.g.*, Ex. 14 (Kaufhold Tr.) at 68:2-69:19 (Actavis, Inc. reported fiscal year 2012 revenues and operating

---

[13]  The PLC's SEC Form 10-K for the year ended December 31, 2013, states that it was "a leading integrated global specialty pharmaceutical company engaged in the development, manufacturing, marketing, sale and distribution of generic, branded generic, brand name ('brand' or 'branded'), biosimilar and over-the-counter ('OTC') pharmaceutical products." Ex. 12 at 3. Where the year-end 2012 Form 10-K used the word "brand," the 2013 Form 10-K substituted "brand name ('brand' or 'branded')."  Otherwise, they are exactly the same.

4815-4459-6636.v1

expenses from opioids); *id.* at 83:17-84:13 (the PLC reported fiscal year 2013 revenues and operating expenses from opioids); *id.* at 105:3-24 (the PLC reported fiscal year 2015 revenues and expenses related to the sales of opioids).

As to business personnel, as the *City of Chicago* court found, the "corporate personnel" remained consistent as Actavis, Inc.'s executives became the PLC's executives. *City of Chicago I*, 2015 WL 2208423, at *7.  In 2012, Actavis, Inc. listed eight executive officers in its filings with the SEC.  *See* Ex. 11 at 77.[14]  In 2013, the PLC listed nine – the same eight men as before, plus new Chief Accounting Officer James C. D'Arecca.  Ex. 12 at 98.[15]

The PLC argues that it "operates separately from the entities whose shares it owns," and that various subsidiaries "operate autonomously in furtherance of their own business, not" the PLC's. Mem. at 1-2.  But this is belied by the documents. ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[14]   The Form 10-K lists Paul M. Bisaro (President and Chief Executive Officer); Sigurdur O. Olafsson (President, Global Generics); G. Frederick Wilkinson (President, Global Brands); Robert A. Stewart (President, Global Operations); R. Todd Joyce (Chief Financial Officer – Global); David A. Buchen (Chief Legal Officer – Global); Charles M. Mayr (Chief Communications Officer – Global); and Patrick J. Eagan (Chief Human Resources Officer – Global).  *Id.*

[15]   As discussed below, the PLC submitted an affidavit of D'Arecca in support of its motion.  *See* ECF No. 1258-2.  The affidavit filed in this Court is the same affidavit, dated September 7, 2017, that the PLC filed in the *State of Ohio* action, including the caption.  *Id.*



███████████████████████████ Kaufhold has testified that he is "employed

by Allergan Sales, LLC," and at the same time is treasurer of the PLC.  Ex. 14 (Kaufhold Tr.) at

96:1-4.[17]

The PLC also argues that its "books, tax records, and financial statements are kept separate

from those of the companies whose shares it holds" and that "[t]hose companies operate

autonomously in furtherance of their own business, not Allergan plc's."  Mem. at 2 (citing Affidavit

of James D'Arecca).  Again, however, this is not supported by the documents.  The PLC was ordered

to produce all of its "policies regarding accounting."  *See* ECF No. 1512 at 7.  It produced just a

handful of documents ███████████████████████████████

---

[16] █████████████████████████████████████

[17]  James C. D'Arecca, who, as noted above, serves as Chief Accounting Officer of Allergan plc, and a Vice President of Allergan Finance, LLC, signed on behalf of Allergan, Inc.  Ex. 6 at 512.  A. Robert Bailey, Allergan plc's Executive Vice President ("EVP"), Chief Legal Officer and Corporate Secretary, signed the document for Allergan plc.  *Id.* at 513.  Bailey also serves as Allergan Finance, LLC's President.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

Further, in 2015 and 2016, the PLC sold its "Global Generics Business" to defendant Teva Pharmaceuticals Industries Ltd. for $33.4 billion in cash and about $5.4 billion in Teva stock.  Ex. 17.  The transaction, however, involved the PLC reaching into its various subsidiaries, selecting entities and assets relating to generic prescription drugs (including its generic opioid drugs) and re-bundling them to be sold to Teva.  All told, Allergan packaged 30 drugs and 33 separate sub-entities to be sold to Teva from its various subsidiaries.  Exs. 18-19.  Further, after this litigation was filed, Teva agreed to indemnify the PLC (but not, specifically, the subsidiaries from which the entities and assets were removed) against any payments in this action.  Ex. 20.

The overwhelming evidence shows that the PLC is part of an integrated company, managed out of New Jersey by employees of overlapping Allergan entities; it is neither independent nor

---

[18]  GAAP are "Generally Accepted Accounting Principles."  *Id*.  Although it claims in this motion to be an Irish entity, Allergan plc tells investors its "consolidated financial statements are prepared in accordance with accounting principles generally accepted in the United States ('GAAP')."  Ex. 1 at 74.

- 12 -

autonomous. The PLC's business, and its business personnel, are a continuation of those of Actavis, Inc.

### c. Continuity of Shareholders Resulting from a Sale of Assets in Exchange for Stock

The Ohio Supreme Court has recognized that a continuity of shareholders resulting from a sale of assets in exchange for stock is "arguably the *sine qua non* of a de facto merger." *State ex rel. Health Care Facilities, Inc. v. Ohio Bureau of Workers' Comp.*, 687 N.E.2d 763, 768 (Ohio 1998) (citing *Welco*, 617 N.E.2d at 1134). As the *City of Chicago* court found, that continuity is present here. When Actavis bought Warner Chilcott in 2013 and created the PLC, the companies "converted each Actavis, Inc. common share into one Actavis plc share." *City of Chicago I*, 2015 WL 2208423, at *7; *see also* Ex. 21 at 3 ("Following the consummation of the Transactions [e]ach of Actavis, Inc.'s common shares was converted into one Company Ordinary Share."); *id.* at 56 ("Ordinary Shares (formerly Class A common shares of Actavis plc)").

The PLC itself made clear that it was a successor entity. In its first publicly-filed annual report after its creation, the PLC told investors that it was created to "facilitat[e] the business combination between Actavis, Inc. and Warner Chilcott." Ex. 12 at 59. The PLC stated that it was "the successor registrant of Actavis, Inc." as well as "Warner Chilcott." *Id.* While it was a successor to both companies, the PLC chose to "present the accounts of Actavis, Inc., and all of its wholly-owned subsidiaries" as its historical financials in SEC filings. *Id.*

### d. Allergan plc Assumed the Liabilities and Obligations Ordinarily Necessary to Continue the Predecessor's Business Operations

The PLC also assumed Actavis, Inc.'s "liabilities and obligations." For example, in its year-end 2013 annual report, the PLC makes clear that it has "provided a full and unconditional guarantee of Actavis, Inc.'s obligations" for $4.7 billion of debt, extending out to as far as 2042. Ex. 12 at

- 13 -

83.[19]  The same document also makes clear that the PLC has undertaken responsibility and potential liability for numerous Actavis, Inc. legal matters.  *See id.* at F-72-F-73 (Androgel litigation), F-75-F-76 (Lidoderm litigation), F-76 (Loestrin litigation), F-81 (Atelvia litigation), F-83 (Rapaflo litigation), F-84-F-85 (Tranexamic Acid Tablets litigation), F-88 (governmental reimbursement investigations and drug pricing litigation).

The PLC also, however, now uses its top U.S. subsidiary, Allergan Finance, LLC (f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.) as one of the "guarantors" of 18 separate "Senior Note" offerings with outstanding balances of almost $18.9 billion.  Ex. 1 at F-60.  As it stated in its 2016 Irish annual filing, with regard to a subset of these notes (referred to as "[f]loating [r]ate [n]otes"), while the PLC made Allergan Finance, LLC and other subsidiaries guarantors, the PLC itself had "not guaranteed the notes."  Ex. 22 at 68.

Allergan plc also uses Allergan Finance, LLC as one of the "guarantors" of its "Revolving Credit Facility" with J. P. Morgan Chase Bank.  Ex. 1 at F-61.  Under the facility, which was created in June 2017, the PLC can borrow up to $2 billion.  *Id.*  The loan, however, is not secured by any plant or equipment; instead, the PLC has put forth three of its subsidiaries, including Allergan Finance, LLC, as "guarantors" of the entire loan in case of default.  *Id.*

Notably, the facility does not require the PLC to use the funds borrowed under the facility to the benefit of the guarantor subsidiary.  In other words, the PLC can borrow funds and use the U.S. subsidiaries to guarantee the repayment, even if it does not use the funds to benefit the U.S. subsidiaries.

---

[19]  The PLC guaranteed Actavis, Inc.'s debts issued under its "$450.0 million 5.000% senior notes due August 15, 2014, (the '2014 Notes'), its $400.0 million 6.125% senior notes due August 15, 2019 (the '2019 Notes'), its $1,200.0 million 1.875% senior notes due October 1, 2017 (the '2017 Notes'), its $1,700.0 million 3.250% senior notes due October 1, 2022 (the '2022 Notes') and its $l,000.0 million 4.625% Senior Notes due 2042."  *Id.*

- 14 -

Several courts have found that a plaintiff has established a *prima facie* case of *de facto* merger and acquisition on analogous or weaker factual bases.  In one case, it was enough that plaintiff had alleged the successor had purchased and continued to conduct the seller's business operation in its entirety, and that the successor had retained much of the seller's senior management – even in the absence of any allegations regarding stockholder continuity.  *Epitome*, 912 F. Supp. 2d at 542-43.  In another, an Ohio appellate court held the facts that the successor took possession of the seller's equipment and accounts receivable, served substantially the same patients, operated in the same building, took on the seller's lease and equipment payment obligations, and maintained the same employees were enough to affirm a lower court's finding of *de facto* merger.  *Pottschmidt v. Klosterman*, 865 N.E.2d 111, 119 (Ohio Ct. App. 2006).  Taken together, the facts identified here are more than sufficient to establish a *prima facie* case that Allergan plc is subject to personal jurisdiction as a successor based on a *de facto* merger or consolidation.

### e.    Allergan plc Merely Continued the Business of Actavis, Inc.

A second, independently sufficient ground for jurisdiction is where "'one corporation sells its assets to another corporation with the same people owning both corporations,'" rendering the acquiring corporation "just a new hat for, or reincarnation of, the acquired corporation."  *Welco*, 617 N.E.2d at 1134.  The PLC is just such a "new hat" for Actavis, Inc.

As explained above, when the PLC was created, each common share of Actavis, Inc. stock was converted into a common ordinary share of the PLC.  *City of Chicago I*, 2015 WL 2208423, at *7; Ex. 12 at 3, 56.[20]  This establishes the "mere continuation."  *Welco*, 617 N.E.2d at 1134; *see also WRK Rarities, LLC v. United States*, 165 F. Supp. 3d 631, 638 (N.D. Ohio 2016).

---

[20]    "One company is the successor of another if, among other things, the 'transaction amounts to a consolidation, merger, or similar restructuring of the two corporations' or 'the purchasing corporation is a "mere continuation" of the seller.'"  *City of Chicago I*, 2015 WL 2208423, at *7

As also detailed above, in its first SEC filing after merging with Warner Chilcott, and purportedly becoming a "holding company," the PLC provided an essentially identical self-description.  Actavis, Inc. said it was "a leading integrated global specialty pharmaceutical company engaged in the development, manufacturing, marketing, sale and distribution of generic, branded generic, brand, biosimilar and over-the-counter ('OTC') pharmaceutical products."  Ex. 11 at 3.  So did the PLC.  Ex. 12 at 3.  To this day, the PLC continues to refer to itself as a "U.S. pharmaceutical manufacturer" in its SEC filings.[21]  As discussed above, its administrative headquarters, executives, and the substantial majority of its workforce remained the same.  By holding itself out in this manner, it cannot be surprised that it would be held to the same standards as its predecessor.  *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) ("In the corporate successor context, the successor corporation has chosen to stand in the shoes of its predecessor and has chosen to accept the business expectations of those who have dealt previously with that predecessor.  Therefore, it can be expected to be haled into the same courts as its predecessor.").

So, too, the PLC was just a mere "reincarnation" of Actavis, Inc.  *See Senco Brands, Inc. v. Ohio Dep't of Job & Family Servs.*, 70 N.E.3d 117, 126 (Ohio Ct. App. 2016) (mere continuation established where successor "continued to engage in the same business as [the predecessor] and with essentially the same workforce").

Indeed, the primary goal of the deal that created the PLC was to reduce the U.S. corporate income tax the company paid by acquiring a company already incorporated in Ireland, a known tax

---

(quoting *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1325-26 (7th Cir. 1990)).

[21]  Ex. 1 at 15 ("All U.S. pharmaceutical manufacturers, including Allergan, are subject to extensive, complex and evolving regulation by the federal government, principally the FDA, and to a lesser extent, by the U.S. Drug Enforcement Administration ('DEA').").

haven, so that the whole company could reincorporate there.  As described in a *Fortune* article: "Drugmaker Actavis . . . announced yesterday that it will buy rival Warner Chilcott [plc] for $5 billion in stock and that, as part of the deal, it plans to reincorporate itself in tax-friendly Ireland, where Warner Chilcott . . . is based."  Ex. 2 at 1.  "This despite the fact that the company's top executives, including CEO Paul Bisaro, will continue to live and work in New Jersey," the article continues.  "'Everybody loves New Jersey too much, so nobody is willing to go,' he said on a conference call yesterday."  *Id.*

The *Fortune* article extensively quotes then-CEO Bisaro's complaints about the disadvantages faced by U.S. companies due to higher tax rates.  *Id.*  *Fortune* projected that the percentage of Actavis' sales in the United States would remain at approximately 60% despite "moving" to Ireland.  *Id.* at 3.  The article's title economically summarizes the true nature of Actavis plc's "acquisition" of Actavis, Inc.:  "Actavis: The latest Fortune 500 company to 'leave' the U.S. for tax reasons."  *Id.* at 1.

The "reincarnation" status of Allergan plc continues to the present.  The top U.S. subsidiary at Allergan is Allergan Finance, LLC (f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.).[22]

███████████████████████████████████████████████████████████

████

---

[22]  As the PLC notes, "Allergan Finance, LLC is a named defendant in this action with no jurisdictional concerns."  Mem. at 7.

|  | **Allergan plc Title**[23] |
|---|---|
| A. Robert D. Bailey | EVP, Chief Legal Officer |
| Matthew M. Walsh | EVP, Chief Financial Officer |
| Karen L. King | EVP, Chief Human Resources Officer |
| William Meury | EVP, Chief Commercial Officer |
| James C. D'Arecca | Chief Accounting Officer |
| Dr. C. David Nicholson | EVP, Chief R&D Officer |
| Warne R. Swanton | EVP, Global Operations |

Each of these people works out of Allergan plc's offices in New Jersey, making Allergan plc, essentially, an American company.[25]

Beyond tax avoidance, the PLC has no particular financial reason to be in Ireland, but has great interests in the United States.  For example, Allergan plc chooses to break down its public financial reports into three "segments," listed as "US Specialized Therapeutics, US General Medicine and International."  Ex. 1 at F-68.  The Company describes the first two segments in detail, and then for the last states that "[t]he International segment includes sales and expenses relating to products sold outside the U.S."  *Id.*  The Company also disclosed that its total net revenue for 2018 was $15.75 billion, and net revenue from the "International" segment was $3.5 billion, meaning that 78% of its 2018 net revenue came from the United States.  *Id.* at 52.  As the Company noted in its year end 2018 annual report, "[n]o country outside of the United States represents ten percent or more of net revenues."  *Id.* at F-71.

When all of the evidence is examined together, it is clear that the PLC was "just a new hat for, or reincarnation of" Actavis, Inc.  *Welco*, 617 N.E.2d at 1134; *see Trs. of Serv. Emps. Int'l Union Local 3 v. Glengary Grp., LLC*, No. 5:07CV2429, 2008 WL 11383259, at *3 (N.D. Ohio

---

[23]  *See* Ex. 1 at 85.

[24]  *See* Ex. 23 at 331-32.

[25]  The only Allergan plc officer listed in the Company's 10-K who is not an officer of Allergan Finance, LLC is Brenton L. Saunders, Allergan plc's Chairman and CEO, who also lives in New Jersey.

July 31, 2008) (mere continuation established where successor "was formed specifically to assume" business of predecessor; successor kept predecessor's equipment and employees).

## V.     THE EVIDENCE ESTABLISHES A *PRIMA FACIE* CASE THAT ALLERGAN PLC IS SUBJECT TO PERSONAL JURISDICTION UNDER THE OHIO LONG-ARM STATUTE

In addition to successor liability, Allergan plc is subject to jurisdiction in Ohio under at least two subsections of the Ohio long-arm statute, R.C. §§2307.382(A)(1) (jurisdiction over a person who transacts business in Ohio) and 2307.382(A)(7) (jurisdiction over a person who is complicit in criminal acts).  Plaintiffs have made (and documents produced support) a *prima facie* showing that jurisdiction over Allergan plc is proper under Ohio's long-arm statute, both because Allergan plc itself transacted business in Ohio and because it was complicit in criminal acts.

### A.     Allergan plc Does Business in Ohio and Has "Created Contacts" with the State

Jurisdiction is proper over a company that transacts business in Ohio.  R.C. §2307.382(A)(1).  As noted above, the *State of Ohio* court found that the PLC "maintains a 'major manufacturing' site in Cincinnati, Ohio."  *State of Ohio*, 2018 WL 4080052, at *7.  The PLC's 2018 annual report, which was published after the *State of Ohio* opinion, continues to make that disclosure. Ex. 1 at 14. This, standing alone, demonstrates sufficient contacts to establish jurisdiction under the Ohio long-arm statute.

But Allergan plc's business in Ohio reaches even further.  Its 2018 annual report on Form 10-K also makes clear that Cardinal Health accounted for 23% "of our annual revenue" in 2018, growing from 19% in 2017 and 18% in 2016.  *Id*. at 12.  Cardinal Health is based in Dublin, Ohio.  As the PLC reported $15.8 billion in net revenue in 2018 (*id*. at F-6), revenues from ***Cardinal Health totaled more than $3.6 billion in 2018***.

The PLC argues that it "has not itself created any contacts with Ohio whatsoever" so it "does not have – and has never had – any contacts with Ohio with respect to marketing, selling, or

distributing opioid prescription drugs."  Mem. at 5.  This is demonstrably wrong.  Beyond the

billions of dollars it receives from sales to Ohio-based companies, documents produced in discovery

in this action show that the PLC reached into Ohio to sell opioids.  Allergan plc also argues that it

> (1) does not engage in the same enterprise (U.S. prescription-drug sales) because it does not participate in sales, marketing, distribution or manufacturer [sic] of prescription drugs in the U.S. at all; (2) does not have the same address as its U.S.-subsidiaries, as its only offices are in Ireland; (3) maintains separate books, tax returns, and financial records form [sic] its subsidiaries; and (4) does not exert control over the daily affairs of any subsidiary.

Id. at 6-7.  But the evidence shows otherwise.

For example, in response to a request from an individual from Lakewood, Ohio, seeking the

prescribing information for the opioid Norco. █████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

26
███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

4815-4459-6636.v1

4815-4459-6636.v1

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ Its argument that corporate formalities (which it has not

even attempted to show) prohibit Ohioans from bringing an action against the PLC has no basis in

fact or law.[27]

---

[27]  Each of the cases cited by Allergan plc in support of its argument that it is not liable under an alter-ego theory is unavailing.  Mem. at 5-7.  In *Anwar*, the court found that the plaintiff had not demonstrated "unity of interest and ownership," because she only partially satisfied a few factors considered under the alter-ego theory, noting that absent from the plaintiff's claim was that she failed to allege, among other things, there were shared employees between the foreign employer and its domestic affiliate, that the same address and phone lines were used, that the two entities complete the same jobs, or that they maintain books, tax returns, and financial statements across the two entities.  876 F.3d at 850.  The court further noted that the plaintiff had not alleged that the foreign employer controlled the daily affairs of its domestic affiliate.  *Id*.  In *Indah v. SEC*, 661 F.3d 914, 921 (6th Cir. 2011), the court there disagreed that the defendant's subsidiary being registered in Michigan sufficed as a "'continuous and systematic'" activity within Michigan for purposes of personal jurisdiction, as the defendant had sold the subsidiary and its Michigan registration was withdrawn many years prior to the activity alleged in the lawsuit.  The court further determined that the defendant's subsidiary's alleged business with Ford Motor Company, a Michigan corporation, in fact amounted to conducting business with a non-Michigan company that, in turn, did business with Ford, and therefore did not constitute transacting business in Michigan under Michigan's long-arm statute.  Finally, in *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008), the court determined that it could not exercise personal jurisdiction over Toyota Motor Corporation Worldwide ("TMC"), a Japanese corporation headquartered in Japan, which the court noted "does not conduct any business, have any employees, or own property in Ohio.  It does not market or ship any vehicles into the United States, much less

- 22 -

**B.     Plaintiffs Make a *Prima Facie* Showing Sufficient to Pierce the Corporate Veil**

The above-cited evidence also demonstrates that the PLC is subject to jurisdiction under a "corporate veil piercing" theory of "*alter ego*."  In Ohio, to achieve liability on a defendant corporate owner, a plaintiff must show:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos. Inc*., 617 N.E.2d 1075, 1086 (Ohio 1993). Such analysis in the context of a jurisdiction motion "requires application of 'a less onerous standard' than that necessary for liability purposes."  *Retail Serv. Sys., Inc. v. Mattress By Appointment, LLC*, 210 F. Supp. 3d 916, 926 (S.D. Ohio 2016) (quoting *Hitachi Med. Sys. Am., Inc. v. Branch*, No. 5:09-cv-01575, 2010 WL 816344, at *5 (N.D. Ohio Mar. 4, 2010)).

The PLC has previously stated that it was created to "facilitat[e] the business combination between Actavis, Inc. and Warner Chilcott."  Ex. 12 at 59.  Yet after the merger, the PLC held itself out as "the successor registrant of Actavis, Inc."  *Id*.  While Allergan plc now protests that the PLC was independent from the U.S. subsidiaries, ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

into Ohio."  The court also rejected the plaintiffs' alter-ego theory of personal jurisdiction, finding that Toyota Motor Sales, U.S.A., Inc. ("TMS") was not the alter ego of TMC.  Among other reasons, the court cited the fact that TMC and TMS had separate boards of directors and workforces, that TMS, not TMC, controls the distribution of vehicles into the United States, that TMC does not directly own any TMS stock, nor does it have authority over TMS with regard to the distribution of vehicles.  Additionally, the court noted that the plaintiffs cited no evidence in support of their claim that TMC makes money from Ohio.

- 23 -



Further, even today, as detailed above, seven of Allergan plc's eight executive officers also serve as the top officers of Allergan Finance, LLC – the top domestic subsidiary.

This mish-mash of responsibility, power, and ability to control financial processes disproves Allergan plc's argument that the subsidiaries and the PLC are independent. It also makes clear that the PLC and the domestic subsidiaries are essentially "one and the same, such that [the PLC] may fairly be held **directly** liable for the [domestic subsidiaries'] liabilities." *Parker v. Miller*, No. 2:16-

---

28 For the convenience of the Court (and to reduce the general ledger exhibit to a reasonable size of 36 pages), plaintiffs have removed redundant and superfluous columns from the Excel files produced by defendants so the data can be displayed on one page. Plaintiffs have not removed any transactions (*i.e.*, rows) from the files.

cv-1143, 2018 WL 3743981, at *6 (S.D. Ohio Aug. 7, 2018) (emphasis in original) (citing

*Belvedere*, 617 N.E.2d at 1085-86).

### C. Allergan plc Was Complicit in Causing Tortious Injury to Persons in Ohio

The PLC is also subject to jurisdiction because it "act[ed] directly or by an agent, as to a

cause of action arising from the person's. . . [c]ausing tortious injury to any person by a criminal act,

any element of which takes place in this state, which he commits or in the commission of which he is

guilty of complicity." R.C. §2307.382(A)(7). Plaintiffs' claims against the PLC include those made

under the Racketeer-Influenced and Corrupt Organizations Act ("RICO") which, by definition,

involve criminal predicate acts. *See* TAC, ¶¶850-878. Under R.C. §2307.382(A)(7), Allergan plc

need not have, itself, committed any of those predicate acts (only a single element of which needs to

have occurred in Ohio), so long as it is guilty of complicity in them. Thus, because as set forth

above, Allergan plc essentially controlled its opioid subsidiaries, it was complicit in the criminal

conduct of its subsidiaries that gives rise to plaintiffs' RICO claims, and is subject to jurisdiction

under R.C. §2307.382.

## VI. JURISDICTION OVER ALLERGAN PLC COMPORTS WITH CONSTITUTIONAL DUE PROCESS

Assertion of jurisdiction over Allergan plc also comports with due process. In *AlixPartners,*

*LLP v. Brewington*, 836 F.3d 543 (6th Cir. 2016), the Sixth Circuit set forth a three-part test for

determining where due process requirements have been met:

> "First, the defendant must ***purposefully avail*** himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Id*. at 549-50 (emphasis in original).

Each factor is met here.  The PLC sold its opioid products throughout the United States, including within the State of Ohio.  Although the PLC claims that its subsidiaries sold those drugs, the evidence discussed above establishes that the PLC participated in opioid-related activity in Ohio, that it is subject to jurisdiction under the doctrine of successor liability for Actavis, Inc.'s sales activities in the State, and that the PLC was complicit with Actavis, Inc. in committing criminal acts here.  Any one of these bases is independently sufficient to comport with due process.

Allergan plc's opioid-related acts in Ohio are sufficiently connected to the opioid crisis in Ohio to make the exercise of jurisdiction reasonable.  Similarly, if the PLC is a successor to Actavis, Inc., which sold opioids here, jurisdiction again is proper.  *See Estate of Thomson*, 545 F.3d at 362 (assertion of personal jurisdiction over the successor of a corporation that would be subject to jurisdiction comports with due process).  The sale of opioids in Ohio constitutes purposeful availment of the privilege of acting in the forum.

If the PLC is subject to successor jurisdiction for Actavis, Inc.'s marketing and sales of opioids in Ohio, it follows that jurisdiction over the PLC is reasonable.  Similarly, if the PLC's own activities establish that it conducted opioid-related business in the state, jurisdiction is proper.  And if the PLC was complicit in criminal activity of Actavis, Inc., jurisdiction is proper.

## VII.  CONCLUSION

Plaintiffs have made a *prima facie* case that the Court may exercise jurisdiction over Allergan plc in this matter.  The Court should deny Allergan plc's motion.

DATED:  July 9, 2019                            Respectfully submitted,

                                                ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
                                                AELISH M. BAIG
                                                MATTHEW S. MELAMED


                                                     s/ AELISH M. BAIG
                                                    AELISH M. BAIG

- 26 -

4815-4459-6636.v1

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
mmelamed@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
DOROTHY P. ANTULLIS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
dantullis@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THOMAS E. EGLER
CARISSA J. DOLAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com
cdolan@rgrdlaw.com

Attorneys for Plaintiffs

4815-4459-6636.v1

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 9, 2019, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system, and will be served via the Court's CM/ECF filing system on all attorneys of record.

<div style="margin-left:40%">

s/ AELISH M. BAIG
AELISH M. BAIG

ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  aelishb@rgrdlaw.comp

</div>

- 28 -