**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| *"Track One Cases"* | Hon. Dan Aaron Polster |

**MALLINCKRODT PLC'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS MOTION BY SPECIAL APPEARANCE**
**TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 2

I. Plaintiffs' Misstate Their Burden ................................................................................ 2

II. Plaintiffs Have Failed To Establish Alter-Ego Liability Pursuant to Ohio and Federal
Common Law. ............................................................................................................ 3

    A. Mallinckrodt plc Does Not Completely Control or Dominate Mallinckrodt LLC or
SpecGx LLC ....................................................................................................... 4

        1. Sharing the same employees and corporate officers ............................... 6

        2. Engaging in the same business enterprise .............................................. 7

        3. Using the same assets ........................................................................... 9

        4. Not maintaining separate books, tax returns and financial statements ................. 11

        5. Exerting control of the daily affairs of another corporation ................................ 12

    B. Plaintiffs Do Not Even Attempt to Identify Any Fraud, Extreme Misconduct, or Other
Injustice ........................................................................................................... 14

III. The Court May Not Exercise Personal Jurisdiction over Mallinckrodt plc as the Successor to
Covidien plc. ............................................................................................................. 14

IV. Plaintiffs Fail to Allege or Adduce any Facts Demonstrating that Mallinckrodt plc was
Complicit in the Purported Criminal Conduct of Its Subsidiaries ........................................ 15

V. There is No Basis for This Court to Decide the Motion to Dismiss at Trial and No Sixth
Circuit Authority Holds Otherwise. .......................................................................... 16

CONCLUSION ...................................................................................................................... 17

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*101 McMurray, LLC v. Porter*,
  No. 10-CV-9037 CS, 2012 WL 997001 (S.D.N.Y. Mar. 26, 2012) ..........................................3

*Anwar v. Dow Chem. Co.*,
  876 F.3d 841 (6th Cir. 2017) ............................................................................ *passim*

*Anwar v. Dow Chemical Co.*,
  No. 15-CV-12708, 2016 WL 5070269 (E.D. Mich. Sept. 20, 2016), *aff'd* 876
  F.3d 841 (6th Cir. 2017) ...................................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................3

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................................3

*Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*,
  617 N.E.2d 1075 (Ohio 1993) ...................................................................................4, 5, 14

*Berger v. Columbia Broad. Sys., Inc.*,
  453 F.2d 991 (5th Cir. 1972) ............................................................................................13

*Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 00467, 2012 WL
  No. 5:09-CV-1112162, at *1 (S.D.W. Va. Mar. 30, 2012)....................................................3

*In re Chicago Truck Ctr., Inc.*,
  398 B.R. 266 (Bankr. N.D. Ill. 2008) .................................................................................8

*Citibank, N.A. v. Hicks*,
  No. CIV.A.03-2283, 2004 WL 945142 (E.D. Pa. Apr. 29, 2004) ...........................................8

*Corrigan v. U.S. Steel Corp.*,
  478 F.3d 718 (6th Cir. 2007) .........................................................................................5, 6

*CRS Site RD/RA Grp. V. Acme-Cleveland Corp.*,
  No. 1:13-CV-01516, 2014 WL 12591695 (N.D. Ohio Dec. 1, 2014) .....................................9

*State ex rel. DeWine v. S & R Recycling, Inc.*,
  961 N.E.2d 1153 (Ohio  2011) ...........................................................................................5

*Dombroski v. WellPoint, Inc.*,
  895 N.E.2d 538 (Ohio 2008) .......................................................................................4, 14

*Freedom Mortg. Corp. v. Platinum Home Mortg. Corp.*,
No. 1:11-CV-1357 GTS/DRH, 2012 WL 3989330 (N.D.N.Y. Sept. 11, 2012)......................3

*Haley Paint Co. v. E.I. Dupont De Nemours and Co.*,
775 F. Supp. 2d 790 (D. Md. 2011) ...............................................................................3

*Holbrook v. Mazda Motor Corp.*,
No. CV 6:17-244-DCR, 2018 WL 1571905 (E.D. Ky. Mar. 30, 2018) ...................................4

*Hulsing Hotels Tennessee, Inc. v. Steffner (In re Steffner)*,
479 B.R. 746 (Bankr. E.D. Tenn. 2012) ...........................................................................9

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
23 F. Supp. 2d 796 (N.D. Ohio 1998).............................................................................16

*Keene Bldg. Prod. Co. v. Stuc-O-Flex Int'l, Inc.*,
No. 110-CV-1511, 2010 WL 3781606 (N.D. Ohio Sept. 23, 2010) (Polster, J.) ....................5

*Lyman Steel Corp. v. Ferrostaal Metals Corp.*,
747 F. Supp. 389 (N.D. Ohio 1990)................................................................................3

*Mkt./Media Research, Inc. v. Union Tribune Pub. Co.*,
951 F.2d 102 (6th Cir. 1991) ...............................................................................16, 17

*MyKey Technology, Inc. v. TEFKAT LLC*,
No. 12-CV-01468-AW, 2012 WL 3257655 (D. Md. Aug. 7, 2012) ......................................3

*One Media IP Ltd. v. S.A.A.R. SrL*,
122 F. Supp. 3d 705 (M.D. Tenn. 2015)..........................................................................3

*Opportunity Fund, LLC v. Epitome Sys., Inc.*,
912 F. Supp. 2d 531 (S.D. Ohio 2012) ..........................................................................14

*Palnik v. Westlake Entm't, Inc.*,
344 F. App'x 249 (6th Cir. 2009) ..................................................................................16

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015), cert. denied, 136 S. Ct. 915 (2016) .......................................12

*Schneider v. Hardesty*
669 F.3d (6th Cir. 2012) ...............................................................................................2

*Serras v. First Tennessee Bank Nat. Ass'n*,
875 F.2d 1212 (6th Cir. 1989) ......................................................................................16

*SFS Check, LLC v. First Bank of Delaware*,
774 F.3d 351 (6th Cir. 2014) ...................................................................................2, 3

*Trustees of Nw. Ohio Plumbers and Pipefitters Pension Plan v. Helm Assocs.*,
    No. 3:10 CV 739, 2011 WL 4688784 (N.D. Ohio Oct. 4, 2011)..............................................9

*United States v. Lebanese Canadian Bank Sal*,
    No. 11 CIV. 9186 PAE, 2012 WL 3854778 (S.D.N.Y. Sept. 5, 2012) ...................................3

*United States v. Bestfoods*,
    524 U.S. 51 (1998).................................................................................................................4

*Welco Indus., Inc. v. Applied Cos.*,
    617 N.E.2d 1129 (Ohio 1993) ...........................................................................................15

*Williams v. MD Helicopters, Inc.*,
    No. CIV. 14-13787, 2015 WL 4546770 (E.D. Mich. July 28, 2015) .....................................3

**Statutes**

18 U.S.C. § 1961 *et.  seq.*..................................................................................................................16

17 C.F.R. § 230.421 ...........................................................................................................................8

**Other Authorities**

Christopher Cox, U.S. Sec. & Exch. Comm'n Chairman, *Keynote Address to the*
    *Center for Plain Language Symposium: Plain Language and Good Business*
    (Oct. 12, 2007), http://www.sec.gov/news/speech/2007/spch101207cc.htm ..........................8

Fed. R. Civ. P. 12(b)(2).................................................................................................................2, 3

Investor Education & Assistance, U.S. Sec. & Exch. Comm'n, *A Plain English*
    *Handbook: How to Create Clear SEC Disclosure Documents* (1998),
    http://www.sec.gov/pdf/handbook.pdf........................................................................................8

## SUMMARY OF ARGUMENT

The opioid overdose crisis, while serious, does not suspend the legal principles governing personal jurisdiction. Plaintiffs' Opposition brief urges this Court to set aside bedrock jurisdictional principles and assert personal jurisdiction over a foreign company on the basis of its routine relationship with two United States-based subsidiaries. It is exceedingly rare for a court to assert jurisdiction over a parent company based on the acts of its subsidiary—and those cases involve fraud or extreme misconduct with respect to the corporate structure. Indeed, to support jurisdiction, this Court must find that Mallinckrodt plc's subsidiaries had "no separate mind, will, or existence of [their] own." Not surprisingly, Plaintiffs *cite no case* in Ohio or the Sixth Circuit in which a court exercises personal jurisdiction over a parent company under circumstances similar to those presented here. Even Plaintiffs' new-found allegations, submitted in an expert report, establish at most a routine parent-subsidiary relationship, and do not establish "complete domination" beyond the control normally exercised by a parent company.

Mallinckrodt plc moved to dismiss the Complaint for lack of jurisdiction in January 2019. Perhaps recognizing the deficiencies in their threadbare jurisdictional allegations, Plaintiffs asked the Court to postpone its decision on the motion until they could conduct further fact discovery. Months later, Plaintiffs now submit a report of a previously undisclosed and unauthorized purported expert, Mr. Alec Fahey, to baldly assert that Mallinckrodt plc so completely controlled Mallinckrodt LLC and SpecGx LLC that the Court may assert personal jurisdiction over it (the "Fahey Report"). Plaintiff's reliance on the Fahey Report is improper, and Mallinckrodt is moving separately to strike the report in its entirety. *See* Memorandum of Law in Support of Mallinckrodt plc's Motion By Special Appearance to Strike The Expert Report of Alec Fahey ("Mot. to Strike").

Even if the Court considers the Fahey Report, however, it amounts to little more than conclusory (and inaccurate) bluster. As explained in more detail below, Mr. Fahey's opinions are

largely irrelevant to the alter-ego analysis, and many are demonstrably unsupported and inaccurate. Despite the Mallinckrodt entities' production of more than 8 million pages of documents, neither Mr. Fahey nor Plaintiffs cite a single email or internal company document that even suggests—let alone demonstrates by a preponderance of the evidence—that Mallinckrodt plc exerted any control over the daily operations of Mallinckrodt LLC and SpecGx LLC.  That glaring absence warrants dismissal under the applicable post-discovery jurisdictional standard.

Additionally, Plaintiffs do not even attempt to show that Mallinckrodt plc's actions amounted to fraud or extreme misconduct, or that failure to pierce the corporate veil would otherwise result in manifest injustice.  The failure to address this required element of the "alter ego" jurisdictional analysis is independently dispositive.

For all these reasons, the Court should reject Plaintiffs' invitation to issue an unprecedented decision asserting personal jurisdiction over a corporate parent on the basis of normal relations with its subsidiaries.

## ARGUMENT

### I.    Plaintiffs' Misstate Their Burden

The parties agree that "[t]o survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff must prove that jurisdiction is proper over each defendant individually."  *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355-56 (6th Cir. 2014). Plaintiffs misstate their burden, however, in arguing that they are entitled to survive Mallinckrodt plc's motion to dismiss so long as they can make a prima facie case for personal jurisdiction.[1] Pursuant to Court order, Mallinckrodt plc has produced extensive jurisdictional discovery to

---

[1] Plaintiffs' reliance on dicta in *Schneider v. Hardesty* is misplaced: the *Schneider* court did not expressly rule on the applicability of a prima facie standard because it found that "Schneider has demonstrated personal jurisdiction over Nelson in Ohio even under the more exacting standard imposed by the district court—the preponderance-of-the-evidence standard."  669 F.3d 693, 699 (6th Cir. 2012).

Plaintiffs, providing them with access to detailed financial and corporate records that go to the heart of the personal jurisdiction issue.  *See* Mot. to Strike at 2-3.  Under these circumstances, the Sixth Circuit and numerous district courts have recognized that "[w]hen, as here, the district court allows discovery on the motion, the court should consider the facts offered by both parties **and rule according to the preponderance of the evidence**."  *SFS Check*, 774 F.3d at 356 (emphasis added); *see also One Media IP Ltd. v. S.A.A.R. SrL*, 122 F. Supp. 3d 705, 715 (M.D. Tenn. 2015) (same); *Williams v. MD Helicopters, Inc.*, Civ. No. 14-137787, 2015 WL 4546770, at *2 (E.D. Mich. July 28, 2015) (same); *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F. Supp. 389, 392 (N.D. Ohio 1990) ("While the opportunity for discovery and depositions is critical, Plaintiffs have only to meet a *prima facie* burden at this stage. Following discovery, they will have to meet the burden of a preponderance of the evidence.").[2]

## II.    Plaintiffs Have Failed To Establish Alter-Ego Liability Pursuant to Ohio and Federal Common Law.

Plaintiffs concede that Mallinckrodt plc does not have any independent contacts with the state of Ohio.  Instead, Plaintiffs assert that Mallinckrodt plc's indirect subsidiaries—Mallinckrodt LLC and SpecGx LLC—acted as Mallinckrodt plc's "alter ego."

---

[2] Even if this Court concludes that a preponderance of the evidence standard cannot be applied, it should apply a plausibility standard rather than a prima facie standard.  As courts have recognized, in the aftermath of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the plausibility standard articulated in those cases should apply with equal force to Rule 12(b)(2) motions because, among other reasons, "it would be highly incongruous to require separate pleading standards for two subsections of the same rule."  *Haley Paint Co. v. E.I. Dupont De Nemours and Co.*, 775 F. Supp. 2d 790, 798 (D. Md. 2011); *see also Freedom Mortg. Corp. v. Platinum Home Mortg. Corp.*, No. 1:11-CV-1357 GTS/DRH, 2012 WL 3989330, at *3 (N.D.N.Y. Sept. 11, 2012); *United States v. Lebanese Canadian Bank Sal*, No. 11-CIV-9186-PAE, 2012 WL 3854778, at *2 (S.D.N.Y. Sept. 5, 2012); *MyKey Tech., Inc. v. TEFKAT LLC*, No. 12-CV-01468-AW, 2012 WL 3257655, at *2 (D. Md. Aug. 7, 2012) ("[T]he pleading standards set forth by the United States Supreme Court in [Twombly and Iqbal] apply to allegations of personal jurisdiction in the same manner as they govern other complaints ….") (quotation omitted);  *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, No. 5:09-CV-00467, 2012 WL 1112162, at *8 (S.D.W. Va. Mar. 30, 2012) (applying Twombly/Iqbal plausibility requirements to jurisdictional pleading because "discovery is expensive and plaintiffs should not be able to extort settlements via baseless claims"); *101 McMurray, LLC v. Porter*, No. 10-CV-9037 CS, 2012 WL 997001, at *5 (S.D.N.Y. Mar. 26, 2012).  It would be all the more incongruous, and inconsistent with *Twombly* and *Iqbal*, to apply a more lenient pleading standard to a 12(b)(2) motion taking place after discovery has been completed than a standard pre-discovery 12(b)(6) motion.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal citation omitted). Following the Supreme Court's lead, courts have recognized that plaintiffs may only overcome "the presumption of corporate separateness between a parent and its subsidiary," by presenting "clear evidence, beyond the subsidiary's mere presence within the bosom of the corporate family, that the parent exerts such control over the subsidiary as to make the latter its agent or alter ego." *Holbrook v. Mazda Motor Corp.*, No. CV 6:17-244-DCR, 2018 WL 1571905, at *4 (E.D. Ky. Mar. 30, 2018) (internal citation omitted); *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 544 (Ohio 2008) ("Piercing the corporate veil in Ohio 'remains a rare exception,' to be applied only in 'exceptional circumstances.'").

To support jurisdiction through an alter ego theory, plaintiffs must demonstrate at least two elements: (1) complete control or domination over the entity by the party the plaintiff seeks to hold liable, ***and*** (2) fraud, extreme misconduct, or other injustice. *See Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1077 (Ohio 1993); *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 849 (6th Cir. 2017). Plaintiffs demonstrate neither.

A.    <u>Mallinckrodt plc Does Not Completely Control or Dominate Mallinckrodt LLC or SpecGx LLC</u>

Under both Ohio and federal common law, Plaintiffs must show that Mallinckrodt plc so completely controls or dominates Mallinckrodt LLC and SpecGx LLC that it "has no separate mind, will, or existence of its own." *Belvedere Condo.*, 617 N.E.2d at 1077; *accord Anwar*, 876 F.3d at 848 (holding that a plaintiff asserting the alter ego doctrine must establish "that there is

-4-

such unity of interest and ownership that the separate personalities [of the two entities] no longer exist").[3]

As a threshold matter, Plaintiffs ignore completely that Mallinckrodt LLC and SpecGx LLC are *indirect subsidiaries* of Mallinckrodt plc, separated from their ultimate corporate parent by multiple levels of ownership.  *See* Uspensky Decl., Exhibit C (Jan 25, 2019 Mallinckrodt Organization Chart).  To succeed under an alter ego theory, Plaintiffs would need to demonstrate that the corporate veil should be pierced as to each and every entity in the ownership structure between Mallinckrodt plc and Mallinckrodt LLC. Plaintiffs ***do not even attempt*** to present evidence of disregard of corporate form as to each of these intermediate-parent levels.  Whether viewed through the lens of initial pleading requirements or heightened post-discovery standards, Plaintiffs' alter ego theory should be rejected on that basis alone.  *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 725-26 (6th Cir. 2007) (holding that plaintiffs failed the first prong of Ohio's veil piercing test where the defendant parent entity was separated from its relevant subsidiary by two other subsidiaries, "and the plaintiffs have not presented any evidence showing why the corporate form should be disregarded as to each of these levels of subsidiaries.").[4]

---

[3] Federal common law and the law of Ohio govern the "alter ego" analysis. Plaintiffs assume, without any analysis, that federal common law applies to the alter-ego question.  However, the vast majority of the claims in this litigation arise under the laws of the state of Ohio.  "Because this Court has federal jurisdiction over [Plaintiffs'] federal claims and supplemental jurisdiction over her state law claims, this Court must look both to federal law and [state] law to supply the law on alter-ego personal jurisdiction." *Anwar v. Dow Chem. Co.*, No. 15-CV-12708, 2016 WL 5070269, at *1 (E.D. Mich. Sept. 20, 2016), *aff'd*, 876 F.3d 841 (6th Cir. 2017) (internal citation omitted); *see also Anwar*, 876 F.3d at 848 ("Anwar has made both federal and state law claims, therefore this court must look to federal law and [state] law regarding alter-ego personal jurisdiction to assess her claims.")

[4] Courts in Ohio and the Sixth Circuit, including this one, use interchangeably the phrases "corporate veil piercing" and "alter ego theory," in connection with determinations of whether to exercise personal jurisdiction.  *See State ex rel. DeWine v. S & R Recycling, Inc.*, 961 N.E.2d 1153, 1161 (Ohio 2011) (noting that Ohio courts must use "the three Belvedere factors . . . to determine whether to pierce the corporate veil and allow for the extension of personal jurisdiction"); *Keene Bldg. Prod. Co. v. Stuc-O-Flex Int'l, Inc.*, No. 110-CV-1511, 2010 WL 3781606, at *2 (N.D. Ohio Sept. 23, 2010) (Polster, J.) (applying the three factors articulated in *Belvedere* to assess personal jurisdiction under alter ego doctrine).

Even putting aside that dispositive failure, however, Plaintiffs fail to marshal sufficient evidence to demonstrate that Mallinckrodt plc "completely" controlled Mallinckrodt LLC and SpecGx LLC. When undertaking an alter-ego analysis, both Ohio and federal courts look to non-exhaustive lists of factors to determine the extent of control.[5]  In their brief, Plaintiffs consider the seven factors articulated by the court in *Anwar v. Dow Chemical Co.*, 876 F.2d 841 (6th Cir. 2016). Opp. at 10; *see also Anwar*, 876 F.3d at 849.[6]  With respect to two of those seven factors—having the same address and phone lines, and completing the same jobs—Plaintiffs make no argument that the factor is satisfied.  And with respect to the remaining five, Plaintiffs fail to adequately allege—much less present evidence demonstrating—the requisite control.[7]

### 1. Sharing the same employees and corporate officers

Relying solely on the Fahey Report, Plaintiffs contend that Mallinckrodt plc, Mallinckrodt LLC, and SpecGx LLC share various common officers and employees.  Like the plaintiff in *Anwar*, however, Plaintiffs here do not actually identify any shared employees—only some "managers with shared roles." 876 F.3d at 850 (no personal jurisdiction under alter ego doctrine where plaintiff only alleged facts partially satisfying several factors).  Shared management between a corporate parent and subsidiary is common and insufficient to impose jurisdiction under the alter ego doctrine.  *Id.* at 849 ("Total ownership and shared management personnel are alone insufficient

---

[5] Because Plaintiffs ignore the applicability of Ohio law to most of their claims, Plaintiffs do not examine the majority of relevant factors in the Ohio alter-ego analysis.  In *Corrigan v. United States Steel Corp.*, the Sixth Circuit held that the plaintiffs failed to satisfy the first prong of the Ohio veil piercing test because they had "neither alleged nor shown" a number of factors Ohio courts consider material to the analysis. 478 F.3d at 726.  So too here.  Plaintiffs' state law claims against Mallinckrodt plc should be dismissed on that independent basis as well.

[6] Those factors include: (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation.  *Anwar*, 876 F.3d at 849.

[7] Plaintiffs made no allegations in their complaints regarding any of these factors and Mallinckrodt plc, and raise them for the first time in the Opposition.

to establish the requisite level of control.") (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015), cert. denied, 136 S. Ct. 915 (2016)).

Moreover, the Fahey Report—and Plaintiffs' Opposition brief—is unsupported by the actual record evidence. As just one example, Plaintiffs assert that Michael-Bryant Hicks serves as the Senior Vice President and General Counsel of both Mallinckrodt plc and Mallinckrodt LLC. This is simply false.  Hicks serves in both of those roles with respect to Mallinckrodt plc, but has never been an officer or employee of Mallinckrodt LLC.  Affidavit of Stephanie D. Miller ("Miller Aff.") ¶ 8.  Similarly, Plaintiffs and Mr. Fahey claim that Joseph Zaccagnino is director of both Mallinckrodt plc and Mallinckrodt LLC.  But Mr. Fahey provides no citation for his assertion that Mr. Zaccagnino "was reported to be a Board member of Mallinckrodt LLC," and, in fact, Mr. Zaccagnino never served on the board of Mallinckrodt LLC.  Miller Aff. ¶ 7.[8]

2.    <u>Engaging in the same business enterprise</u>

Plaintiffs fail to cite a single piece of evidence demonstrating that Mallinckrodt plc engaged in the same business enterprise as its subsidiaries, Mallinckrodt LLC and SpecGx LLC.  Nor could they.  As explained in the Affidavit of Alasdair J. Fenlon ("Fenlon Aff."), previously submitted in support of Mallinckrodt plc's Motion By Special Appearance to Dismiss for Lack of Personal Jurisdiction, it is undisputed that Mallinckrodt plc does not market, manufacture, sell, or distribute opioid drugs, and it does not have a United States Drug Enforcement Administration registration of any kind that would allow it to do so.  Dk No. 1266 at 30.  Plaintiffs cite to no evidence demonstrating otherwise.

---

[8] Exhibit 6 to the Fahey Report contains a demonstrative created by Mr. Fahey that purports to summarize "common officer search results" between Mallinckrodt plc and its U.S. subsidiaries.  Aside from a general citation to a "U.S. States Corporate Filings and Internet Search," Mr. Fahey mostly fails to identify the specific sources he relies on for the assertions he makes in Exhibit 6.

Instead, Plaintiffs resort to semantics, selectively pointing to various publicly filed descriptions of Mallinckrodt plc's objectives and the consolidated business activities of the entire corporate family.  Opp. at 12-13.  Plaintiffs go so far as to suggest that Mallinckrodt plc's use of collective language like "we" and "our" in public filings somehow demonstrates that Mallinckrodt plc exerted complete control over its subsidiaries.  *Id.*  But pursuant to Rule 421 of the Securities Act, securities filings "must use plain English principles."  17 C.F.R. § 230.421.[9]  As the SEC has explained, "plain English principles" involve the use of personal pronouns and "[t]he pronouns to use are first-person plural (we, us, our/ours)."  Office of Investor Education & Assistance, U.S. Sec. & Exch. Comm'n, *A Plain English Handbook: How to Create Clear SEC Disclosure Documents* at 22 (1998), http://www.sec.gov/pdf/handbook.pdf.  Mallinckrodt's use of those very pronouns is not evidence that it has ignored corporate formality; it is proof that it conformed its public filings to the SEC's regulatory specifications.  The use of generalized descriptions, consolidated public filing statements, and collective pronouns is common and appropriate, and such practices do not provide grounds for ignoring the corporate form.  *See, e.g.*, *Citibank, N.A. v. Hicks*, No. CIV.A.03-2283, 2004 WL 945142, at *1 (E.D. Pa. Apr. 29, 2004) ("A blurred line of distinction between two companies does not mean that the two companies are actually (legally) alter egos."); *In re Chicago Truck Ctr., Inc.*, 398 B.R. 266, 278 (Bankr. N.D. Ill. 2008) ("The corporations are and were independent legal entities, which cannot be collapsed into one company just because an internal memo uses a "/" between GM and GMAC."). [10]

---

[9] While the rule only expressly requires the use of plain English in Prospectuses (as defined in the Securities Act), the SEC has encouraged public companies to use plain English in all disclosures.  *See, e.g.*, Christopher Cox, U.S. Sec. & Exch. Comm'n Chairman, *Keynote Address to the Center for Plain Language Symposium: Plain Language and Good Business* (Oct. 12, 2007), http://www.sec.gov/news/speech/2007/spch101207cc.htm.

[10] Plaintiffs also point to selected language from Mallinckrodt plc's "Memorandum and Articles of Association," which contains a description of Mallinckrodt plc's "objects for which the Company is established."  Opp. at 12; Fahey Report at 12.  In the excerpts included in the Fahey Report and the Opposition, Plaintiffs fail to include language stating that Mallinckrodt plc is a "holding company."  *See* Fahey Report Ex. 2.  Moreover, the "objects" of a company

3.     Using the same assets

Plaintiffs' argument that Mallinckrodt plc, Mallinckrodt LLC, and SpexGx LLC use common assets similarly fails to support jurisdiction.  Plaintiffs first look to the entities' use of a shared corporate office in the United States.[11]  But as Plaintiffs acknowledge, Mallinckrodt plc's principal executive offices are located **in the United Kingdom**, not the United States.  Opp. at 13. Even where parent and subsidiary entities share principle offices, however, courts routinely reject the application of alter ego liability.  *See, e.g.*, *CRS Site RD/RA Grp. v. Acme-Cleveland Corp.*, No. 1:13-CV-01516, 2014 WL 12591695, at *9 (N.D. Ohio Dec. 1, 2014) (shared corporate offices, among other factors, not sufficient to pierce corporate veil between parent and subsidiary); *Trustees of Nw. Ohio Plumbers & Pipefitters Pension Plan v. Helm & Assocs.*, No. 3:10-CV-739, 2011 WL 4688784, at *3-6 (N.D. Ohio Oct. 4, 2011) (shared corporate offices, among other factors, not sufficient to pierce corporate veil between related companies) ; *Hulsing Hotels Tenn., Inc. v. Steffner (In re Steffner)*, 479 B.R. 746, 756-61 (Bankr. E.D. Tenn. 2012) (denying summary judgment for plaintiff and granting summary judgment for defendant parent corporation on alter ego liability issue even though the parent operated out of the same office building as subsidiary). This case should be no different.

Plaintiffs also claim that Mallinckrodt plc commingles its funds with those of its subsidiaries through the use of intercompany transfers, and that it uses cash flows from the opioid business to fund its own corporate costs.  In support, Plaintiffs rely exclusively on conclusory

---

do not necessarily describe the activities of that company, and as previously explained, Plaintiffs cite no evidence that contradicts the Fenlon Affidavit's assertions that Mallinckrodt plc does not market, manufacture, sell, or distribute opioid drugs.

[11] Plaintiffs again emphasize the use of the pronoun "our" in Mallinckrodt's public descriptions of its offices.  For the reasons stated in Part II.A.2 *supra*, such word choice is irrelevant to the alter-ego analysis.  Mallinckrodt plc does not own assets in the United States, let alone in Ohio. Supplemental Affidavit of Alasdair J. Fenlon ("Supp. Fenlon Aff.") ¶ 10.

assertions in the Fahey Report.  Mr. Fahey provides no explanation for how he arrives at his conclusions, and his cited sources are excerpts from public filings and a single PowerPoint presentation.  Fahey also provides demonstrative charts in his declaration that Plaintiffs claim show "Mallinckrodt plc's use of revenue from its U.S. opioids businesses"; however, Mr. Fahey provides no indication of how he created these charts or the information on which he relies.[12] Conspicuously absent is any citation to the ***actual general ledger*** data produced by Mallinckrodt plc to Plaintiffs, which include the actual distinct financial activity of Mallinckrodt plc—including any intercompany transfers.

Had Mr. Fahey relied on the actual, relevant data, he would be forced to acknowledge that Mallinckrodt plc and its subsidiaries observed corporate formalities in relation to their financial transactions.  *See* Affidavit of John Einwalter ("Einwalter Aff.") ¶¶ 2-18.  Entities within the Mallinckrodt family structure participate in centralized cash pools, a common corporate practice that allows for efficient investment of cash at more favorable interest rates and better risk management.  *Id.* ¶¶ 3-10.  All cash deposited or withdrawn from those centralized pools is separately accounted for by each legal entity on that legal entity's separate financial statements. *Id.* ¶¶ 4, 8.  Mallinckrodt LLC and SpecGx LLC participate in a United States-based cash pool, and Mallinckrodt plc participates in a Europe-based cash pool.  *Id.* ¶¶ 3, 6-7.  None of those entities is entitled to withdraw funds exceeding its deposits unless it is pursuant to an arms-length cash management agreement between entities participating in the cash pool. *Id.* ¶¶ 5, 9. Put another way, the Mallinckrodt family cash pools operate like internal company banks.  Imagine that John and Sue deposit money into their saving accounts at Key Bank.  Key Bank consolidates their cash,

---

[12] Without the opportunity to depose Mr. Fahey regarding his expertise, the bases of his report, and his methodology, neither Mallinckrodt plc nor this Court can properly assess the validity of any of Mr. Fahey's conclusions.  See Mot. to Strike at 12-14.

along with the cash of other account holders, so it can be invested at favorable rates. But, Key Bank maintains separate accounting for John and Sue, and at all times knows how much cash each individual maintains in their account. Plainly, the fact that John and Sue both have accounts with Key Bank provides no evidence that they are alter egos of one another. So too here. Mallinckrodt entities' participation in centralized internal cash pools simply does not support the exercise of personal jurisdiction under the alter ego doctrine.

Transactions between separately maintained cash pools occur pursuant to routine and formally documented financial arrangements, including intercompany lending agreements, intercompany product royalty agreements, intercompany service agreements, and the issuance of dividends to shareholders. *Id.* ¶¶ 11-15. Critically, Mallinckrodt plc does not move money at its discretion between the United States cash pool and the European cash pool in which it participates, and Plaintiffs cite no evidence to the contrary (nor could they). *Id.* ¶ 16. Accordingly, the Mallinckrodt corporate family's use of intercompany transfers does not provide any basis to ignore corporate form and exercise jurisdiction over Mallinckrodt plc as an alter ego of its subsidiaries.

4.     <u>Not maintaining separate books, tax returns and financial statements</u>[13]

Plaintiffs point to Mallinckrodt plc's use of consolidated public filings and Group Accounting Policies as indicators that Mallinckrodt plc does not maintain separate financial records. Such consolidated filings and group policies, however, are routine and generally accepted practices of large corporate families, *see* Supp. Fenlon Aff. ¶ 8 (noting that Irish law *requires* group consolidated financial statements), and thus have no relevance whatsoever to the alter ego

---

[13] The Opposition emphasizes that Mallinckrodt plc is an "inversion," designed specifically to take advantage of favorable overseas tax laws, but never explain why that is legally relevant to the alter ego analysis. Opp. at 1-2 & n.8. In any event, Plaintiffs are wrong on the facts. Mallinckrodt plc is not an "inversion," as Covidien plc was already incorporated in Ireland prior to the inception of Mallinckrodt plc. *See* Declaration of Elissa R. Uspensky ("Uspensky Decl."), Exhibit A at 4 (Separation and Distribution Agreement Between Covidien plc and Mallinckrodt plc, dated as of June 28, 2013) (noting "Covidien plc, an Irish public limited company").

analysis.  In any event, what is relevant—and what Plaintiffs wholly ignore—is that Mallinckrodt

plc and its subsidiaries (including Mallinckrodt LLC and SpecGx LLC) *all* maintain separate

financial records.  *See* Supp. Fenlon Aff. ¶¶ 7, 8; Einwalter Aff. ¶¶ 4, 8.  Indeed, the Fahey Report

relies on excerpts from Mallinckrodt plc's Irish Statutory Accounts for the years 2016 and 2017,

but fails to note that those documents include Mallinckrodt's plc's separate financial statements

(as required by Irish law).  *See, e.g.*, Uspensky Decl., Exhibit B (Mallinckrodt plc's 2017 Irish

Statutory Accounts); *see also* Supp Fenlon Aff. ¶ 8.  In other words, Mr. Fahey's baseless

suggestion that Mallinckrodt plc does not maintain separate financial records is belied by the same

document he cites.[14]

### 5.   Exerting control of the daily affairs of another corporation

Finally, Plaintiffs claim to point to evidence that Mallinckrodt plc controlled the daily

affairs and operations of its subsidiaries, Mallinckrodt LLC and SpecGx LLC.  Opp. at 16-19.  But

nothing Plaintiffs cite is inconsistent with the normal managerial oversight that all corporate

parents and majority shareholders provide to their subsidiaries.  *See, e.g.*, *Anwar*, 876 F.3d at 849.

(alter ego doctrine requires "[a] showing that the parent controls the subsidiary to such a degree as

to render the latter the mere instrumentality of the former . . . [exercising] pervasive control over

the subsidiary . . . from broad policy decisions to routine matters of day-to-day operation."); *Ranza*

*v. Nike, Inc.*, 793 F.3d 1059, 1074 (9th Cir. 2015) cert. denied 136 S. Ct. 915 (2016) ("A parent

---

[14] Plaintiffs also assert (once again relying solely on the Fahey Report and his "analysis" of publicly filed documents) that Mallinckrodt plc's debts are secured by the assets of its subsidiaries, including assets related to the opioids business of Mallinckrodt LLC and SpecGx LLC.  Opp. at 15. This is flatly untrue. Mallinckrodt plc **does not issue external debt**.  Einwalter Aff. ¶ 19; *see also* Supp. Fenlon Aff. ¶ 12.  Rather, nearly all external borrowing is done through another Mallinckrodt entity, Mallinckrodt International Finance SA ("MIFSA"). Einwalter Aff. ¶ 21.  As is routine practice of large corporate families, various subsidiaries guarantee the loans made to MIFSA.  *Id.* ¶¶ 22-23. Mallinckrodt plc reports the business's Net Debt Leverage Ratio based on its consolidated financial statements because that is what lenders and debt investors commonly require in connection with standard credit agreements.  *Id.* ¶ 24. Again, these are common corporate practices of many large conglomerates, *see id.*, which in no way indicate disregard of the corporate form.

corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego.") (internal citation and quotation omitted). ***Plaintiffs adduce no evidence whatsoever demonstrating Mallinckrodt plc's control over the daily affairs of Mallinckrodt LLC and SpecGx LLC***. Instead, Plaintiffs desperately resort to cherry-picked language from Mallinckrodt plc's consolidated filings and other public documents that describe generally the Mallinckrodt pharmaceutical business and management, using pronouns like "we" and our." Opp. at 16-17. As explained above, such descriptions are irrelevant to the alter-ego analysis.

Additionally, Plaintiffs highlight the testimony of certain Mallinckrodt deponents who were unable to answer questions about the nuances of Mallinckrodt plc's corporate structure. Such excerpts from the depositions of lay witnesses do not furnish a basis for this Court to disregard corporate form. *See Berger v. Columbia Broad. Sys., Inc.*, 453 F.2d 991, 996 (5th Cir. 1972) (holding that it was reversible error for the trial court to find that a subsidiary of CBS was a mere instrumentality of its parent based on mistaken testimony from the subsidiary's comptroller that the subsidiary was actually a "division" of CBS). Besides being legally irrelevant, the cited testimony is entirely unpersuasive. Rather, it represents the predictable result of Plaintiffs' half-cocked efforts to solicit testimony from lay witnesses whose day-to-day responsibilities did not include committing to memory the intricacies of multinational corporate governance.

If Mallinckrodt plc truly dominated the daily activities of its subsidiaries such that it had no separate corporate existence, one would expect that Plaintiffs could cite documents showing individuals associated with Mallinckrodt plc exerting control over the day-to-day decisions of Mallinckrodt LLC and SpecGx LLC. Plaintiffs fail to cite such documents because none exist. Mallinckrodt plc managed and provided corporate oversight to Mallinckrodt LLC and SpecGx

LLC consistent with its role as the ultimate corporate parent, but daily operations were left solely within the control of those entities. *See* Einwalter Aff. ¶ 17. Evidence of possible "macromanagement," without more, is insufficient to support the application of the alter ego doctrine. *See Anwar*, 876 F.3d at 850.

      B.    <u>Plaintiffs Do Not Even Attempt to Identify Any Fraud, Extreme Misconduct, or Other Injustice</u>

In addition to providing clear evidence of control and domination, Plaintiffs must also demonstrate the existence of fraud, extreme misconduct, or other injustice in order to disregard the corporate form and attribute the actions of Mallinckrodt LLC and SpecGx LLC to Mallinckrodt plc. *See Belvedere Condo.*, 617 N.E.2d at 1077; *see also Anwar*, 876 F.3d at 849. This additional prong of the alter-ego liability analysis ensures that Courts will subvert the corporate form in only rare cases with extraordinary facts: "Limiting piercing to cases in which the shareholders used their complete control over the corporate form to commit ***specific egregious act**s is key to maintaining this [policy-driven] balance." *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 544 (Ohio 2008). A merely "unjust or inequitable act" is insufficient. *Id.* at 544-45.

Plaintiffs do not even attempt to address this prong, much less satisfy it. The argument is thus waived, and Mallinckrodt plc must be dismissed. In any event, nothing in the record suggests that Mallinckrodt plc engaged in fraud or extreme misconduct, or that failing to apply the alter ego doctrine would result in a manifest injustice. There is simply no evidence justifying application of the exceedingly "rare exception" to the general rule that the actions of a subsidiary cannot be imputed to the parent.

**III.    The Court May Not Exercise Personal Jurisdiction over Mallinckrodt plc as the Successor to Covidien plc.**

As with the analysis of alter-ego liability, "[t]o apply the successor theory of personal jurisdiction in a diversity action, courts look to the forum state's rules of successor

liability." *Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 541 (S.D. Ohio 2012).  Under Ohio law, "[t]he well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation." *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993).

In support of its successor liability argument, Plaintiffs' Opposition includes a single conclusory sentence with citations to the Fahey Report and related exhibits. Opp. at 19.  Although that sentence is difficult to parse, Plaintiffs appear to half-heartedly argue that Mallinckrodt plc expressly assumed (unspecified) liabilities of Covidien plc, and accordingly, Covidien plc's (never-identified) contacts with Ohio can be imputed to Mallinckrodt plc.  In support of this argument, the Fahey Report makes the unremarkable observations that "Parent assumed liabilities arising of its Separation Agreement from Covidien."  Fahey Report at 7; *see also id.* at 15.  But the Fahey Report fails to cite to the Separation Agreement and identify any specific liability related to the manufacture, distribution, or sale of opioid products in Ohio assumed by Mallinckrodt plc pursuant to that agreement.  Fahey Report at 7; *see also id.* at 15.  The Fahey Report appears to quote or paraphrase highlighted language from a consolidated public filing excerpt, but general public statements about "obligations and liabilities" are no substitute for contractual agreements to assume the specific liabilities relevant here.  *Id.* at 7, 15 & Ex. 17.  Accordingly, Plaintiffs have plainly failed to present a prima facie case for successor liability, let alone sufficient evidentiary support under the applicable preponderance of the evidence standard.

**IV.    Plaintiffs Fail to Allege or Adduce any Facts Demonstrating that Mallinckrodt plc was Complicit in the Purported Criminal Conduct of Its Subsidiaries.**

Plaintiffs hedge their alter-ego theory of liability by arguing in the alternative that, "to the extent that Mallinckrodt plc was complicit" in the purportedly criminal conduct of Mallinckrodt LLC and/or SpecGx LLC, such conduct would independently support jurisdiction over

Mallinckrodt plc. To this end, they rely exclusively on their pleading a claim under the Racketeer-Influenced and Corrupt Organizations Act (RICO). *See* 18 U.S.C. § 1961 *et. seq.* That argument fails because Plaintiffs have not presented evidence of *a single action by Mallinckrodt plc* that would support the finding of an enterprise—among other required elements—under RICO. There is simply no evidence that Mallinckrodt plc directed, participated in, or was even aware of any alleged criminal conduct. Courts in this district have previously rejected similar conclusory arguments that a foreign parent company's purported participation in a conspiracy furnishes a basis to exercise personal jurisdiction where that parent company "has never manufactured, packaged, marketed, advertised, sold, or distributed [the relevant] products, or any other goods or products, in the state of Ohio" and had no independent contacts with Ohio outside of an intercompany lending agreement. *See, e.g. Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796, 801 (N.D. Ohio 1998). The same result is appropriate here.

**V.    There is No Basis for This Court to Decide the Motion to Dismiss at Trial and No Sixth Circuit Authority Holds Otherwise.**

Plaintiffs' make one final "Hail-Mary pass" to avoid dismissal, arguing that this Court should defer the personal jurisdiction issue until trial because "the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits." *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989). Even putting aside the fact that Plaintiffs have failed to identify a single example of intertwinement between the jurisdictional dispute and the merits dispute, the Sixth Circuit has repeatedly explained that the holding in *Serras* is narrow and does not mean that a plaintiff is excused from the baseline requirement to meet its burden of proof. *See Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 253 (6th Cir. 2009); s*ee also Mkt./Media Research, Inc. v. Union Tribune Pub. Co.*, 951 F.2d 102, 106 (6th Cir. 1991). Plaintiffs' suggestion that they can be relieved from meeting their burden to demonstrate personal jurisdiction by punting

the issue to trial "misstates the law."  *Palnik*, 344 F. App'x 249 at 253 (holding that the existence of "intimately intertwined" facts does not relieve the plaintiff of its burden."); s*ee also Mkt./Media Research*, 951 F.2d at 106.  If the Court believes further fact finding is necessary on the relevant— and dispositive—jurisdictional issues, those issues can be addressed through an evidentiary hearing, not as part of an already-complicated trial.

<u>**CONCLUSION**</u>

For all the foregoing reasons, and the reasons stated in Mallinckrodt plc's Motion to Dismiss for Lack of Personal Jurisdiction and Supporting Memorandum of Law, Mallinckrodt plc respectfully requests that the Court dismiss the claims asserted by Plaintiffs against Mallinckrodt plc, with prejudice, for lack of personal jurisdiction.

Dated: July 12, 2019                                  Respectfully submitted,

                                                                 */s/ Brien T. O'Connor*
                                                                 Brien T. O'Connor
                                                                 Andrew J. O'Connor
                                                                 ROPES & GRAY LLP
                                                                 Prudential Tower
                                                                 800 Boylston Street
                                                                 Boston, MA 02199-3600
                                                                 (617) 235-4650
                                                                 brien.o'connor@ropesgray.com
                                                                 andrew.o'connor@ropesgray.com

                                                                 *Counsel for specially appearing*
                                                                 *Defendant Mallinckrodt plc*

**LOCAL RULE 7.1(f) CERTIFICATE OF SERVICE**

The Court's April 11, 2018 Case Management Order One ¶ 2.h states that the page limitations applicable to complex cases shall apply to the length of memoranda filed in support of motions. Under Rule 7.1(f), memoranda relating to dispositive motions in complex cases may not exceed thirty pages.

I hereby certify that this memorandum complies with the page limitations set forth in Local Rule 7.1(f) of the United States District Court for the Northern District of Ohio.

Dated: July 12, 2019

*/s/ Brien T. O'Connor*
Brien T. O'Connor

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 12th of July, 2019, I electronically filled the forgoing with the Clerk of the Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF systems.


Dated: July 12, 2019                                 */s/ Brien T. O'Connor*
                                                              Brien T. O'Connor

-19-