# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*All Cases* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO MALLINCKRODT PLC

Pursuant to Rule 33 of the Federal Rules of Civil Procedure as well as the Case Management Order in *In Re: National Prescription Opiate Litigation* (Dkt. No. 232 in No.:17-cv-2804), Plaintiffs hereby serve their first set of Interrogatories on Mallinckrodt plc ("Mallinckrodt").

Responses to the Interrogatories shall be provided in the manner required by Rule 33, the Local Rules of the Northern District of Ohio, the Court's Case Management Order One, filed April 11, 2018, Doc. No. 232, and any other applicable law or rules, within thirty (30) days of the service of these Interrogatories.

If Mallinckrodt finds any term or other aspect of the Interrogatories vague, ambiguous or otherwise objectionable and intends to so object, counsel for the Plaintiffs offers to promptly meet and confer with counsel for Mallinckrodt to resolve any issues.

## **DEFINITIONS**

"You" or "Your" means Defendant Mallinckrodt plc, and its officers, directors, employees, partners, representatives, agents, divisions, predecessors or successors-in-interest, and other persons or entities acting on its behalf or controlled by it.

"Defendants" mean the named Defendants in the above-captioned matter.

"Plaintiffs" mean all the named Plaintiffs in the above-captioned matter.

"Document" is defined to be synonymous in meaning and equal in scope of the usage of this term in Fed. R. Civ. P. 34. A draft or non-identical copy is a separate document within the meaning of this term. In all events, the definition of "Document" shall include "Communications," as defined below.

"Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral communications, includes any document evidencing such oral communications. It includes the transmittal of information by any means, including email, SMS, MMS or other "text" messages, messages on "social networking" sites (including but not limited to, Facebook, Google+, MySpace, Instagram, Snapchat and Twitter), shared applications from cell phones, or by any other means. "Communication" also shall include, without limitation, all originals and copies that are provided by you or to you by others.

"Person" is defined as any natural person or any business, legal, or governmental entity, or association.

"Opioid" refers to that class of drugs, legal or illegal, natural or synthetic, used to control pain, including, but not limited to, the drugs referenced in Plaintiffs' Complaint in the above-referenced matter.

"Opioid Products" refers to the Opioids that You developed, manufactured, marketed, promoted, sold, or distributed. This includes coatings, capsule configurations, delivery systems or mechanisms that include but are not limited to anti-abuse, tamper resistance and crush-proof mechanisms and mechanisms to deter immediate release. Opioid Products is also intended to include rescue medication for breakthrough pain. Opioid Products include both name-brand and generic products.

"Identity" or "Identify" when referring to a corporate entity means the full formal name of the company, its location and place of incorporation and principal place of business, and parent or Subsidiary relationship or affiliation to any of Your related entities. "Identity" or "Identify" with respect to persons. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

"Identify" with respect to documents. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

"Identify" with respect to communications. When referring to communications, "to identify" means to Identify the parties to the communication, the form of the communication, the date of the communication, the subject of the communication, and the manner(s) in which the communication was/is recorded or memorialized.

"Order" is defined as any order or transaction relating to the purchase of any Opioid Products from You, or any Direct Customer or Downstream Customer.

"Suspicious Orders" means orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency, or that otherwise possess the characteristics utilized by Mallinckrodt to flag or identify Orders that warrant due diligence prior to shipping as required by the Controlled Substances Act, 21 U.S.C. § 811 *et al* ("CSA") and/or 21 CFR 1301.74(b).

"Direct Customer" means the wholesale distributor or other customer that purchased Opioids or Opioid Products directly from You.

"Downstream Customer" means the customer of the Direct Customer that purchased opioids from the Direct Customer, including but not limited to dispensing physicians, pharmacies, pain clinics, hospitals, nursing homes, veterinary supply companies and any other persons, businesses, or entities that purchased Opioids from Direct Customers.

"Subsidiary" means any corporation, partnership, limited liability company, association, trust or other form of legal entity of which Covidien PLC or Mallinckrodt plc owned at any time, directly or indirectly, securities or other equity interests representing more than 25% of the aggregate voting power thereof or more than 25% of the aggregate equity interest therein.

"Mallinckrodt Entity" means each of Mallinckrodt plc, Mallinckrodt International Finance S.A., Mallinckrodt LLC, and each entity that is a Subsidiary of any of Mallinckrodt plc, Mallinckrodt International Finance S.A., or Mallinckrodt LLC.

## INSTRUCTIONS

The time period covered by these Interrogatories is one year prior to the launch of each relevant Opioid Product through the date of Your response, unless otherwise specified, or as specified in rulings by the Court or Special Master, whichever period is longer.

## INTERROGATORIES

INTERROGATORY NO. 1:  Identify all Mallinckrodt plc current or former employees or consultants with knowledge concerning the subject matter of the allegations in the Complaint in the above referenced matter, including each individual likely to have discoverable information, and, for each, state the subjects on which they have knowledge or information.

RESPONSE


INTERROGATORY NO. 2:  Identify all Your Subsidiaries (including direct and indirect Subsidiaries) involved in the development, testing, regulatory approval, manufacture, branding, marketing, sale, promotion, distribution, suspicious order monitoring or pharmacovigilance relating to Your generic and name-brand pharmaceutical drug products, including Opioid Products, Your corporate relationship to those Subsidiaries.

RESPONSE


INTERROGATORY NO. 3:  For each Subsidiary identified in Your response to the previous interrogatory, identify the role and operations of each entity with regard to

the development, testing, regulatory approval, manufacture, branding, marketing, sale, promotion, distribution, suspicious order monitoring or pharmacovigilance relating to Your generic and name-brand pharmaceutical drug products, including Opioid Products.

 RESPONSE

 INTERROGATORY NO. 4:  Identify Your employees in the United States who are involved in the development, testing, approval, manufacture, marketing, sale, promotion, distribution, suspicious order monitoring or pharmacovigilance relating to Your generic and name-brand pharmaceutical drug products, including Opioid Products.

 RESPONSE

 INTERROGATORY NO. 5:  Identify all employees hired and terminated in the United States as a result of decisions by You to hire and terminate those employees, including but not limited to the employees of Your direct and indirect Subsidiaries.

 RESPONSE

 INTERROGATORY NO. 6:  Assuming such departments or divisions exist, identify all Persons holding positions, including executive and management positions, including in Your research and development, manufacturing, branding, marketing, sales, distribution, regulatory, compliance, suspicious order monitoring, pharmacovigilance, audit, budgeting, finance and accounting departments or divisions. This includes the identity of the Persons who lead Your divisions (or other organizational unit) in the following areas or positions (or title equivalent) to the following categories:

  (a)  Chief Executive Officer;

  (b)  President;

  (c)  Chief Financial Officer;

  (d)  Chief Operating Officer;

  (e)  General Counsel;

  (f)  Sales;

  (g)  Marketing;

  (h)  Corporate and Product Branding;

  (h)  Compliance;

  (j)  Government Affairs;

  (k)  Regulatory Affairs;

  (l)  Pharmacovigilance and Drug Safety;

  (m)  Medical Director;

  (n)  Research and Development;

  (o)  Manufacturing;

  (p)  Distribution;

  (q)  Auditing; and

  (r)  Finance and Accounting.

<u>RESPONSE</u>

<u>INTERROGATORY NO. 7</u>:  Identify Persons on Your Board of Directors and the identity, composition and responsibilities of any Board committees, task forces, or

working groups comprised of Board members related to Your generic and name-brand pharmaceutical drug products, including Opioid Products.

RESPONSE

INTERROGATORY NO. 8:  Identify all of Your databases that in any way contain data with regard to clinical research or testing, marketing, sales, pharmacovigilance, finance, accounting, and revenues and profits from the sale of Opioid Products in the United States.

RESPONSE

INTERROGATORY NO. 9:  Identify all of Your current or former employees or consultants who were responsible for testing the safety and efficacy of Opioid Products for long-term use or for chronic pain, or who received reports, test results, studies or any other documentation regarding the testing of the safety and efficacy of Opioid Products for long-term use or for chronic pain or long-term use and the results of any such testing.

RESPONSE

INTERROGATORY NO. 10:  Identify by payor, recipient, date and amount of all donations, compensation or other payments paid by You to, and identity of the Persons who interacted with, the following Person(s)/entity(s) regarding Opioids or Opioid Products:

(a) American Academy of Pain Medicine;

(b) American Pain Society;

(c) American Pain Foundation;

(d) American Geriatrics Society;

(e) American Chronic Pain Association;

(f) American Society of Pain Educators;

(g) The National Pain Foundation;

(h) Pain and Policy Studies Group;

(i) Federation of State Medical Boards;

(j) American Society of Pain Management Nursing;

(k) Academy of Integrative Pain Management;

(l) U.S. Pain Foundation;

(m) Cancer Action Network;

(n) Washington Legal Foundation;

(o) The Center for Practical Bioethics;

(p) The Joint Commission on Accreditation of Healthcare Organizations;

(q) Pain Care Forum;

(r) Russell Portenoy, M.D.;

(s) Perry Fine, M.D.;

(t) Scott Fishman, M.D.;

(u) Lynn Webster, M.D.;

(v) Mitchell Max, M.D.;

(w) J. David Haddox, M.D.;

(x) Barry Cole, M.D.;

(y)     Joseph Pergolizzi, M.D.;

(z)     Willem Scholten; and

(aa)    Alan Spanos, M.D.

RESPONSE

INTERROGATORY NO. 11:  Identify all Persons or entities, including any third party, vendor or any Defendant in this Action, who provided You with, or You provided with, sales, distribution or prescribing data about Your generic and name-brand pharmaceutical drug products sold in the United States, including Opioid Products, and the Person(s) who was the point of contact for each entity and the type of data provided by each.

RESPONSE

INTERROGATORY NO. 12:  Identify all of Your databases, lists or Documents containing information about members of the United States government, including but not limited to members of the U.S. Congress, Executive Branch or regulatory authorities who have been lobbied by or were the subject of any Lobbying efforts and/or governmental affairs activities undertaken by You, and the type of information found in the database(s), the network and/or computer system(s) which holds the database(s), the software used to create and maintain the database(s) and the identity of the Persons responsible for maintaining the records or database(s).

RESPONSE

INTERROGATORY NO. 13:  Identify by payor, recipient, date and amount all donations, compensation or other payments by You Concerning Opioids or Opioid Products to: (a) Lobbyists; (b) Persons or entities named in the Complaint; or (c) Persons who disseminated information about prescription Opioids to prescribers or the public on Your behalf and the identity of all Persons responsible for such donations or payments.

RESPONSE

INTERROGATORY NO. 14:  Identify all of Your studies, Scientific Research, tests, patents, patent applications, trials or analysis of the safety and efficacy for Opioid Products, including all such information regarding:

    a.    the long-term efficacy of Opioids or use of Your Opioid Products for the treatment of chronic pain or long-term use (more than 90 days);

    b.    continual release mechanisms or delivery systems;

    c.    the ability of patients to stop using Opioids or Your Opioid Products;

    d.    the development of dependence, tolerance, abuse, pseudoaddiction, addiction or incidence of overdose;

    e.    the abuse-deterrent properties of Your or other manufacturers' Opioid Products;

    f.    risk of addiction from chronic opioid therapy;

    g.    opioid withdrawal;

    h.    whether Opioid doses can be increased without limit or greater risks;

    i.    long-term opioid use and function;

    j.       Actiq's or Fentora's ability to provide breakthrough pain relief; and

    k.       the treatment of opioid addiction.

<u>RESPONSE</u>

<u>INTERROGATORY NO. 15</u>:  Identify all reports or the like that were given to the Board of Directors regarding Your generic or name-brand pharmaceutical drug products, including Opioid Products, for the United States, including but not limited to reports regarding:

    a.       Sales;

    b.       Lobbying efforts;

    c.       Safety and efficacy of Opioids or Your Opioid Products;

    d.       Submissions to the FDA or DEA;

    e.       Documents, studies, reports, data or other information that You did not submit to FDA or DEA;

    f.       Abuse potential for Opioids or Your Opioid Products;

    g.       Reports of abuse, misuse, diversion, addiction or dependence regarding Opioids or Your Opioid Products;

    h.       Government investigations regarding Opioids or Your Opioid Products;

    i.       Sales and marketing of Opioids or Your Opioid Products.

<u>RESPONSE</u>

<u>INTERROGATORY NO. 16</u>:  Identify Your annual sales, revenue, profits and market share for and the identity of each Opioid Product sold in the United States.

RESPONSE

INTERROGATORY NO. 17:  Identify all financial and business arrangements with any of the Defendants in this matter including any contractual relationships between You and any of the Defendants in this matter.

RESPONSE

INTERROGATORY NO. 18:  Identify Your office locations in the United States.

RESPONSE

INTERROGATORY NO. 19:  Identify the location, description and ownership of Your and/or Your direct or indirect Subsidiaries' plant, property and equipment in the United States.

RESPONSE

INTERROGATORY NO. 20:  Identify all lawsuits filed by Mallinckrodt plc in the United States in the past five years, including the case name, court, case number, date filed and disposition status.

RESPONSE

INTERROGATORY NO. 21:  Identify all of Your and/or Your direct or indirect Subsidiaries' current or former employees or consultants that were involved or received

information relating to the July 2017 agreement between DEA, DOJ, and You and Mallinckrodt LLC.

RESPONSE:

INTERROGATORY NO. 22:  For each Mallinckrodt Entity, identify each person who has been a member of the board of directors thereof at any time since July 1, 2014, and identify each person's term of service in such capacity.

RESPONSE:

INTERROGATORY NO. 23:  Describe the "Pharmaceuticals Business" as that term is used in the Separation and Distribution Agreement, including, without limitation, a description of the aspects of the Pharmaceuticals Business conducted in the United States, and describe any changes that have occurred in the Pharmaceuticals Business since June 28, 2013.

RESPONSE:

INTERROGATORY NO. 24:  If you contend that any provision of any agreement entered into or document executed in connection with the Distribution has the effect of causing any Mallinckrodt Liability (as that term is used in the Separation and Distribution Agreement) to be the liability of an entity other than Mallinckrodt plc, identify each such provision and state whether you contend the provision exonerates Mallinckrodt plc from liability with respect to such Mallinckrodt Liability.

RESPONSE:

INTERROGATORY NO. 25:  Describe the cash management systems and procedures employed by Mallinckrodt plc and each of its direct and indirect Subsidiaries since June 28, 2013, and include in the description a description of all procedures and mechanisms in place to segregate the cash of each of Mallinckrodt plc and any of its direct or indirect Subsidiaries or to otherwise prevent the commingling of such cash.

RESPONSE:

INTERROGATORY NO. 26:  Describe all actions taken by the Board of Directors of Mallinckrodt plc or any committee thereof since June 28, 2013 to oversee (i) the making and selling of pharmaceutical products, such as opioids, (ii) the making of complex judgments associated with managing risks associated with operating Mallinckrodt plc's business, or (iii) the ensuring of compliance with laws and regulations in the operation of the business of Mallinckrodt plc.

RESPONSE:

DATED this 25th day of January, 2019.
**KELLER ROHRBACK L.L.P.**

By */s/Dean Kawamoto*
Lynn Lincoln Sarko
Derek W. Loeser
Gary Gotto
Gretchen Freeman Cappio
Dean Kawamoto
David J. Ko
Daniel P. Mensher
Alison S. Gaffney
Erika M. Keech
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Phone: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
ggotto@kellerrohrback.com
gcappio@kellerrohrback.com
dkawamoto@kellerrohrback.com
dko@kellerrohrback.com
dmensher@kellerrohrback.com
agaffney@kellerrohrback.com
ekeech@kellerrohrback.com

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this January 25, 2019, the foregoing has been served via email to Defendants' Listserv: xALLDEFENDANTS-MDL2804-service@arnoldporter.com.

*s/ Dean Kawamoto*
Dean Kawamoto