# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| *THIS DOCUMENT RELATES TO: ALL CASES* | **Case No. 17-md-2804** |
| | **Hon. Dan Aaron Polster** |

## DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants respectfully move for reconsideration of the Court's July 5, 2019 Order, ECF No. 1813 ("July 5 Order"), which applied the incorrect legal standard regarding the public disclosure of confidential commercial information.  This motion is directed at exhibits in support of the parties' motions for summary judgment and *Daubert* motions.[1]  Specifically, the Court erroneously rejected Defendants' contention that the term "confidential . . . commercial information" in Fed. R. Civ. P. 26(c)(1)(G) should be given the same meaning that the Supreme Court has recently given to the term "commercial . . . information [that is] confidential" in Exemption 4 to the Freedom of Information Act, 5 U.S.C. § 552(b)(4).  *See Food Marketing*

---

[1] With respect to the briefs served to date in support of summary judgment and *Daubert* motions, the parties have taken into account the standard for redactions from briefs addressing matters presented for adjudication and have not identified any portions in need of redaction other than ARCOS data (which Plaintiffs agree should remain redacted until the Sixth Circuit's mandate is issued) and the names of a few individuals (on which the Special Master has ruled).  For those briefs, the procedures established by the July 5 Order are moving apace.  At present, the difficulties caused by the July 5 Order center on exhibits to the motions, which contain (1) a very significant volume of material that is not cited in the briefs, and (2) substantial amounts of confidential information.  Defendants reserve their rights to seek redaction of any confidential information that may appear in opposition and reply briefs that have yet to be served.

*Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019).  In so ruling, the Court (1) failed to apply bedrock principles of statutory construction, and (2) instead relied on irrelevant distinctions between Exemption 4 and Rule 26(c)(1)(G).  As explained below, settled rules of statutory construction require that when two provisions enacted in close temporal proximity use the same language, address the same subject matter, and share similar purposes, they must be given the same meaning.  The fact that one provision appears in a statute exempting confidential business information provided to the government from the public disclosure requirements of FOIA, and the other appears in a Rule protecting confidential business information produced in civil discovery strengthens—not weakens—the case for defining both provisions consistently.

"District courts have authority both under common law and [Fed. R. Civ. P.] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers*, 89 F. App'x 949, 959 (6th Cir. 2004).  Reconsideration of an interlocutory order is justified when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez*, 89 F. App'x at 959).  A clear error occurs when the court "appl[ies] the incorrect legal standard" or "misappl[ies] the correct legal standard."  *Jones v. Illinois Central R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010) (quoting *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008)).  The July 5 Order—specifically, its ruling on what constitutes confidential information not subject to public disclosure—meets this standard.

In addition, discovery material (documents and deposition transcripts) placed in the public record in connection with a summary judgment motion should be limited to those materials that are relevant to a legal issue presented by the motion.  Plaintiffs here seek to place

2

in the public record complete deposition transcripts of over 70 defendant witnesses, totaling thousands of pages, and complete copies of voluminous exhibits.  This over-submission of vast amounts of raw discovery material is improper, and will place an enormous and unnecessary burden on the Court, as well as Defendants.

## PROCEDURAL BACKGROUND

On March 6, 2018, this Court entered a Protective Order governing use and disclosure of ARCOS data, under which the data would remain "confidential" and disclosure of the data could be made only to governmental plaintiffs and State Attorneys General "for this litigation and/or law enforcement purposes."  ECF No. 167 at 1; ECF No. 233 at 22.  On May 8, 2018, the Court extended the Protective Order to cover Suspicious Order Reports ("SORs") produced in the litigation.  ECF No. 397.  Subsequently, various media companies sought disclosure of the ARCOS dataset, and DEA and Defendants objected.  On July 26, 2018, after considering the arguments for and against disclosure, the Court found good cause to preserve the confidentiality of the ARCOS data.  ECF No. 800.  The media companies appealed and, on June 20, 2019, the Sixth Circuit held that "the district court abused its discretion in finding that good cause existed to permanently and categorically prevent the ARCOS data from being disclosed pursuant to public records requests."  *In re: Nat'l Prescription Opiate Litigation*, --- F.3d ---, 2019 WL 2529050, at *13 (6th Cir. June 20, 2019).  The Sixth Circuit reasoned that any "competitive" risk to Defendants from disclosure was "slight."  *Id.* at *12–14.  It further directed this Court to enter a new protective order consistent with the legal standard set forth in its opinion.  *Id.* at *14.

On June 24, 2019, although the Sixth Circuit's mandate had not yet been issued, this Court ordered Plaintiffs, Defendants, DEA, and Intervenors to submit position papers by noon on July 3, 2019 on whether the Court should lift entirely its Protective Orders regarding all ARCOS

data produced to the parties in this case, and the extent to which it should lift its Protective

Orders regarding all SORs produced to and by the parties in this case.  ECF No. 1725.  The

Court also directed the parties to undertake a process to determine whether all other sealed or

redacted filings satisfy the "compelling reasons" test articulated by the Sixth Circuit.  *Id.* at 6–7.

This process implicates the continuing viability of the Court's initial Protective Order in CMO

No. 2, ECF No. 441.

Also on June 24, 2019, Special Master Cohen issued directions regarding the filing of

briefs under seal in light of the Sixth Circuit's decision.  ECF No. 1719.[2]  He directed the parties

to file on the docket only a notice of service, and perfect service via email to all parties.  To the

extent the filing party wanted to maintain confidentiality of any portion of a brief or supporting

materials, that party was to provide notice within one business day of service and provide a

"compelling reason" for overcoming the presumption in favor of disclosure and demonstrate that

the proposed redaction or seal is "narrowly tailored to serve that reason."  *Id.* at 2.  Any other

party or non-party whose confidential information is contained in a brief would have three

business days to inform the filing party whether they request any redaction or filing under

seal.  *Id.*  The parties were directed to meet and confer in an effort to resolve disputes, and the

Special Master and the Court would then rule on any unresolved disputes.  According to the

Special Master's directions, "[i]information that may be redacted … includes the following: …

---

[2] Before the Sixth Circuit issued it decision, certain Defendants had filed summary judgment motions under seal pursuant to the Court's scheduling orders and protective orders.  *See* ECF Nos. 1691 (manufacturer and distributor defendants' statute of limitations summary judgment motion), 1692 (manufacturer and distributor defendants' conspiracy summary judgment motion), 1716 (pharmacy defendants' conspiracy summary judgment motion).

bona fide trade secrets; … law enforcement material pertaining to ongoing investigations; … law enforcement confidential sources or confidential surveillance methods; … information affecting national security; and … other material of a similar nature with respect to the need for privacy." *Id.* at 3.[3]

Further on that same day, June 24, 2019, only two business days after the Sixth Circuit issued its ARCOS decision, the Supreme Court issued its opinion in *Food Marketing*. Construing Exemption 4 to the Freedom of Information Act, 5 U.S.C. § 552(b)(4), the Court rejected the "competitive harm" test the Sixth Circuit applied in its ARCOS protective order decision in this case, 133 S. Ct. at 2363, and held that, "[a]t least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential'" and exempt from disclosure. *Id.* In other words, the Court held that there is no need for a company resisting public disclosure of confidential business data to demonstrate any competitive harm. *Id.*

On June 27, 2018, Special Master Cohen emailed the parties to follow up on his June 24 directions to say that "Judge Polster directed me to tell you that, especially in light of the fact that virtually all information will be made public at trial, information that **may** be redacted should be kept to an absolute minimum, except as truly necessary. If I am asked to rule on a lot of disputes on this issue and conclude that a party repeatedly insisted on inappropriate non-

---

[3] In the days immediately thereafter, on or before the June 28, 2019 filing deadline, the parties served notice on the docket and perfected service of summary judgment and *Daubert* motions pursuant to the Court's scheduling orders and Special Master Cohen's June 24, 2019 directions. *See* ECF Nos. 1733, 1736, 1749, 1750, 1751, 1753, 1754, 1756, 1757, 1758, 1759, 1760, 1761, 1762, 1764, 1765, 1767, 1769, 1771, 1772, 1773, 1774, 1775, 1776, 1777, 1778, 1779, 1780, 1781, 1782, 1783, 1784, 1785, 1786, 1787, 1788, 1790, 1792.

mandatory redactions, that party will lose the right to redact any submissions going forward (except for those mandatory redactions *required* by the Court, as listed in Section II, paragraph 1 of docket no. 1719)." On June 28, 2019, given that the Sixth Circuit's mandate had not yet issued, this Court clarified that "all existing Protective Orders are reaffirmed and shall remain in place until the Court issues a ruling determining the scope of a new Protective Order."

In connection with their summary judgment motion filed on June 25, 2019 (ECF No. 1733) and the two motions noticed on the docket and served on June 28, 2019 (ECF Nos. 1788, 1792), Plaintiffs did not designate anything confidential. The June 28 submissions attached a combined total of 595 exhibits, the majority of which were lengthy documents attached as exhibits to depositions of defendant witnesses, including full copies of company manuals, policy documents, and Board materials, as well as complete deposition transcripts of over 70 Defendant witnesses, spanning thousands of pages of irrelevant testimony never cited in Plaintiffs' motions. On July 2, 2019, Plaintiffs served a "corrected" version of one of their summary judgment motions, ECF No. 1799, which added 32 more exhibits. In view of this large volume of material to be reviewed, Defendants emailed the Special Master on July 2 and requested an extension to July 24, 2019 for asserting sealing and/or redactions.[4]

On the morning of July 3, 2019, the Special Master scheduled a teleconference for 4:30 p.m. that same day to discuss the redaction issue. Also on July 3, the parties filed their position papers by mid-day, as required by the June 24 Order. Defendants' position paper explained the Supreme Court's definition of "confidential" in *Food Marketing* should be applied to that term in

---

[4] Defendants made this request after discussions with Plaintiffs' counsel failed to produce an agreement regarding an extension.

Rule 26(c) and that all of this Court's protective orders should remain in place.  That position was also argued during the 4:30 p.m. teleconference.

Then, on July 4, the Special Master proposed a new timeline for redactions and set a teleconference for 1:30 p.m. on July 5 to discuss the proposal.  On the morning of July 5, 2019, at 8:10 a.m., the Special Master advanced the time of the teleconference to 9:30 a.m. that morning.  At 9:00 a.m., Plaintiffs weighed in with a counter-proposal to the Special Master's proposal.  As the 9:30 call concluded inconclusively at approximately 10:15 a.m., the Special Master ordered Defendants to discuss Plaintiffs' proposal among themselves for 30 minutes, confer with Plaintiffs at 10:45, and report back to the Special Master at 11:00 a.m.  At 11:00 a.m., Defendants reported that they had not been able complete their own deliberations, but would send their proposal by around 12:00 p.m., and did so.

At approximately 3:30 p.m. on July 5, 2019, this Court entered an order amending procedures regarding redactions and filing of briefs under seal.  ECF No. 1813.  Regarding the Sixth Circuit's opinion, the Court stated that "until the reconsideration period expires and the Sixth Circuit issues a mandate, the ARCOS Protective Order should remain in place."  *Id.* at 3. The Court also concluded that the Supreme Court's decision in *Food Marketing* had no effect on protective orders for confidential information at issue in this case.  *Id.* at 4.  According to the Court, *Food Marketing* applies only to FOIA, and information is only confidential if it is "provided to the government under an assurance of privacy."  *Id.*  The Court also "affirm[ed] Special Master Cohen's instructions regarding what the parties should and may redact, *see* Docket no. 1719 at 2–3."  *Id.*

# ARGUMENT

## I.    This Court's July 5 Order Conflicts With *Food Marketing*.

### A.    *Food Marketing* Announced The Ordinary Meaning Of "Confidential".

In *Food Marketing*, a newspaper submitted a FOIA request to the United States Department of Agriculture, seeking disclosure of the names and addresses of retail stores that participate in the national food-stamp program, as well as food-stamp data from 2005 to 2010. 139 S. Ct. at 2361.  The USDA resisted disclosure under FOIA Exemption 4, which shields from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  The district court and the Eighth Circuit concluded that the information was not protected under Exemption 4, and based its decision on whether disclosure would inflict "competitive harm" to participating retailers—just as this Court and the Sixth Circuit did in this case when considering issues related to the disclosure of ARCOS data.  *See* 2019 WL 2529050, at *9–13.

In its opinion—issued two business days after the Sixth Circuit issued its ARCOS opinion—the Supreme Court rejected the "competitive harm" test, explaining that the lower courts had erroneously "engrafted" this standard on Exemption 4.  As the Court explained, there is no statutory support—or support in "dictionary definitions, early caselaw, or any other usual source"—for grafting the requirement of competitive harm onto the definition of "confidential" found in Exemption 4.  Instead, the Court held that the "term 'confidential' meant then [in 1966, when FOIA was enacted], as it does now, 'private' or 'secret.'"  *Food Marketing*, 139 S. Ct. at 2363.  Thus, to be "confidential" under Exemption 4, the relevant information must merely "customarily [be] kept private, or at least closely held, by the person imparting it."  *Id.*

In overruling the lower courts' "competitive harm" standard, the Supreme Court condemned their "casual disregard of the rules of statutory interpretation." *Id.* at 2364. As explained below, Defendants respectfully submit that this Court's failure to apply *Food Marketing* to the protective orders at issue in this case similarly disregards core principles of statutory interpretation and rises to the level of clear error.

**B.    The Ordinary Meaning Of "Confidential" Under *Food Marketing* Is Binding On This Court's Application Of Rule 26(c).**

The ordinary meaning of "confidential" announced in *Food Marketing* applies equally to the term's near-identical usage in Rule 26(c)(1)(G). Under the interpretive canon of consistent usage, "confidential" carries the same ordinary meaning in Rule 26(c) as it does in Exemption 4 because the two provisions were enacted in close temporal proximity, deal with the same subject matter, and share similar purposes. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); *see also* Antonin Scalia and Bryan Garner, *Reading Law* 172–73 (2012) (under the canon of consistent usage, courts should look to the "connection the cited statute has with the statute under consideration," especially if the provisions were "enacted at the same time, and dealt with the same subject").

**1.    "Confidential" Carries The Same Fixed Meaning In Both Exemption 4 And Rule 26(c).**

It is axiomatic that Exemption 4 and Rule 26(c) must be interpreted according to their ordinary meaning fixed at the time the two respective provisions were enacted. When interpreting statutory terms, courts must "presume that Congress says what it means and means

9

what it says and therefore must apply a statute as it was written, giving its terms the ordinary meaning that they carried when the statute was enacted."  *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 512 (6th Cir. 2015).  The ordinary meaning requirement applies equally to terms found in the Federal Rules of Civil Procedure.  *See Violette v. P.A. Days*, 427 F.3d 1015, 1017 (6th Cir. 2005).

Because FOIA does not expressly define "confidential," the Supreme Court in *Food Marketing* "ask[ed] what the term's 'ordinary, contemporary, common meaning' was when Congress enacted [the statute] in 1966."  139 S. Ct. at 2362.  As the Court concluded, "[t]he term 'confidential' meant [at FOIA's enactment in 1966], as it does now, 'private' or 'secret.'"  *Id.* at 2363.  Rule 26(c)(G)(1), like FOIA, protects "confidential . . . commercial information."  And, as with FOIA, the Rule does not define "confidential," nor is the term defined elsewhere in the Rules.  Accordingly, this Court is required to apply the term's ordinary meaning at the time of the Rule's enactment.  *See Violette*, 427 F.3d at 1017.  The operative language of what is now Rule 26(c)(1)(G) was promulgated in 1970 as Rule 26(c)(7), shortly after the enactment of FOIA in 1966.  *See Zenith Radio Corp. v. Matsushita Elec.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981).  And as the Supreme Court confirmed in *Food Marketing*, the meaning of "confidential" has not changed since 1966.  139 S. Ct. at 2363.  Accordingly, the same definition of the term applied in 1970 when Rule 26 was promulgated as in 1966 when Exemption 4 was enacted.  *See id.*

### 2. The Canon Of Consistent Usage Requires That The Term "Confidential" Be Given Consistent Usage in Exemption 4 and Rule 26(c).

Even if the Supreme Court had not explicitly confirmed that the meaning of "confidential" has not changed since the enactment of FOIA in 1966, the canon of consistent usage strongly counsels in favor of giving the term consistent meaning for purposes of FOIA and

10

Rule 26.  *See Smith,* 544 U.S. at 233.  Here, Congress used the term "confidential" in 1966 when enacting Exemption 4, and again a mere four years later when promulgating Rule 26.  This temporal proximity of the term's usage in the two provisions strongly counsels in favor of giving them a consistent meaning.  *See, e.g.*, *United States v. Ressam*, 553 U.S. 272, 275 (2008) (Congress intended the same natural reading of the word "during" in the Organized Crime Control Act of 1970 as it did in the Gun Control Act of 1968); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 n.3 (2006) (confirming natural reading of the word "contract" in the 1925 Federal Arbitration Act by looking to usage in the 1890 Sherman Antitrust Act).  Moreover, the two provisions "deal[ ] with the same subject," Scalia and Garner at 172–73, namely, the disclosure of "confidential information."  *Compare* 5 U.S.C. § 552(b)(4) (protecting "trade secrets and commercial or financial information obtained from a person and privileged or confidential"), *with* Fed. R. Civ. P. 26(c)(1)(G) (protecting "trade secrets or other confidential research, development, or commercial information").  This, too, counsels in favor of consistency in their meaning.

Finally, Rule 26(c)(1)(G) shares the same core purpose as Exemption 4: the protection against the disclosure of confidential information.  Specifically, early cases interpreting Exemption 4—which the Supreme Court cited favorably in *Food Marketing*, 139 S. Ct. at 2363—explain that the exemption was enacted to protect confidential information.[5]  Rule 26(c) serves the same purpose.  *See Federal Open Market v. Merrill*, 443 U.S. 340, 356–57 (1979); *Hoecker v. Boynton Ocean, LLC*, 2006 WL 8435143, at *1 (S.D. Fla. July 26, 2006) ("[Rule

---

[5] *See, e.g.*, *Sterling Drug, Inc. v. FT*C, 450 F.2d 698, 709 (D.C. Cir. 1971); *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 938 (D.C. Cir. 1970); *Westinghouse Elec. Corp. v. Schlesinger*, 392 F. Supp. 1246, 1250 (E.D. Va. 1974), *aff'd*, 542 F.2d 1190 (4th Cir. 1976).

26(c)] gives [courts] discretion to fashion protective orders for the purposes of protecting confidential information.").

### C. This Court's Interpretation Of "Confidential" Conflicts With *Food Marketing*.

Notwithstanding the authority cited above, which makes clear that the term "confidential" should be given the same meaning for purposes of Rule 26 and FOIA Exemption 4, this Court's July 5 Order applied a definition of "confidential" that conflicts with the Supreme Court's holding in *Food Marketing*, thereby committing clear legal error.

As explained in Defendants' position paper, *Food Marketing* confirms that the Sixth Circuit applied the incorrect legal standard when evaluating whether this Court's protective order complied with the requirements of Rule 26.  The Sixth Circuit found that this Court did not have good cause to enter a protective order preventing the disclosure of ARCOS data because, *inter alia*, any "competitive" risk to Defendants from disclosure was "slight."  2019 WL 2529050, at *12.  It further directed this Court to enter a new protective order consistent with the legal standards set forth in its opinion.  *Id.* at *14.  Yet, as explained in Defendants' position paper, under *Food Marketing*, information is "confidential" whether or not the disclosure would work any competitive harm.  ECF No. 1807 at 7.  The Court's July 5 Order essentially repeats the Sixth Circuit's error, failing to recognize the fundamental error in the Sixth Circuit's opinion and holding that *Food Marketing* had no effect on protective orders for commercial confidential information.[6]

---

[6] At least some of the Defendants intend to file a petition for rehearing and suggestion for rehearing *en banc* to address the inconsistencies between the Sixth Circuit's ARCOS decision and *Food Marketing*.

The July 5 Order also misstates the holding of *Food Marketing* in concluding that information is only confidential if it is "provided to the government under an assurance of privacy."  ECF No. 1813 at 4.  The Supreme Court explicitly declined to reach that issue, explaining that "there's no need to resolve that question in this case because the retailers before us clearly satisfy this condition."  139 S. Ct. at 2363.  Thus, the Supreme Court did not hold that "an assurance of privacy" is necessary, and this Court's treatment of the issue as dispositive in the *Food Marketing* analysis was misplaced.  Moreover, even if there is such a requirement for information submitted to the government, it would not apply to the vast majority of the non-ARCOS information subject to the protective order in this case, as that information has not been shared with the government or any other third-party.

In short, *Food Marketing* strikes at the core of the Sixth Circuit's good cause determination regarding Defendants' commercial information and makes clear that its determination was wrong.  By failing to recognize the clear conflict between the Supreme Court's holding in *Food Marketing* and the Sixth Circuit's decision regarding the protective order in this case, this Court committed clear error.  Accordingly, this Court should reconsider its July 5 Order and maintain its Protective Orders regarding all ARCOS data, SORs, and discovery material attached to court filings.

> **D.**   **The Court Also Erred In Affirming Special Master Cohen's Interpretation of What May Be Redacted.**

The July 5 Order also "affirm[ed] Special Master Cohen's instructions regarding what the parties should and may redact."  ECF No. 1813 at 4.  In those instructions, the Special Master ruled that parties may redact "bona fide trade secrets."  He also ruled that "[i]nformation that is considered 'business confidential' but that is not a bona fide trade secret does not qualify for

redaction."  ECF No. 1719 at 3 n.4.  This ruling reads "confidential . . . commercial information"

out of Rule 26(c)(1)(G), and is no more justified than the "competitive harm" gloss that many

courts engrafted on FOIA Exemption 4—a gloss that was roundly rejected by the Supreme Court

in *Food Marketing*.  If information meets the meaning of "confidential . . . commercial

information," as that language has been constructed in *Food Marketing*, it is eligible for

redaction.  The Court therefore should reverse that portion of the Special Master's instructions.

## II.  Plaintiffs Should Be Required To Limit Their Exhibits to Portions Cited In Their Briefs.

Finally, Defendants ask that Plaintiffs be required to file as exhibits only the portions of

the depositions and documents that support the citations to the discovery record in Plaintiffs'

briefs in support of their motions.  The Supreme Court has held that "[p]retrial depositions and

interrogatories are not public components of a civil trial … and, in general, they are conducted in

private as a matter of modern practice."  *Seattle Times v. Rhinehart*, 467 U.S. 20, 33 (1984).  As

this Court has noted, "pre-trial discovery . . . 'typically occurs outside the public eye.'"  *In re

Nat'l Prescription Opiate Litig.*, 325 F. Supp. 3d 833, 837 (N.D. Ohio 2018) (quoting *In re

Carpenter Co.*, 2004 WL 12809636, at *1 (6th Cir. Sept. 29, 2014)).

Parties are not at liberty to use the filing of a summary judgment motion as an

opportunity to place in the public record discovery materials that are not relevant to their motion.

"[T]he mere filing of a paper or document with the court is insufficient to render that paper a

judicial document subject to the right of public access . . . . [T]he item filed must be relevant to

the performance of the judicial function and useful in the judicial process."  *United States v.

Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995); *see also In re Photochromic Lens Antitrust Litig.*,

2014 WL 12618104, at *2 (M.D. Fla. May 29, 2014) (judicial review of challenged designations

should be limited to "those matters relevant to the legal issues raised").  "Parties are obligated to proceed in good faith in determining which, of the multitude of documents produced over the course of discovery, are necessary in dispositive motions practice . . . . Plaintiff [should] not [be allowed to] 'pad the record' by needlessly attaching irrelevant or marginally relevant documents as motion or trial exhibits simply to inject them into the public record."  *Waterkeeper All., Inc. v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 144 (D. Md. 2011).

"Padding the record" is precisely what Plaintiffs are attempting to do here.  By serving exhibits containing massive amounts of raw discovery that Plaintiffs do not cite in their briefs, Plaintiffs have attempted to deprive Defendants and third-parties of the privacy and confidentiality that attends the discovery process and continues with respect to information developed through discovery that is not relevant to the judicial function of deciding Plaintiffs' motions.  The Court should not allow this tactic, and should direct Plaintiffs to serve new exhibits that are limited to supporting the factual assertions made in their briefs in support of their motions for summary judgment.[7]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its July 5 Order and maintain its Protective Orders regarding all ARCOS data, Suspicious Order Reports, and discovery material attached to court filings at this time.

---

[7] If the Court prefers to have convenience copies of entire deposition transcripts, those can be provided *in camera*, and if the Court relies on any portions of a transcript beyond those cited in the briefs, those portions can be added to the publicly filed exhibits, subject to any appropriate redactions requested by a party.

Dated: July 15, 2019                    Respectfully submitted,

                                        */s/ Mark S. Cheffo*
                                        Mark S. Cheffo
                                        DECHERT LLP
                                        Three Bryant Park
                                        1095 Avenue of the Americas
                                        New York, NY 10036
                                        Tel: (212) 698-3500
                                        Mark.Cheffo@dechert.com

                                        *Counsel for Defendants Purdue Pharma L.P.,*
                                        *Purdue Pharma Inc., and The Purdue Frederick*
                                        *Company*

                                        *Co-Liaison Counsel for the Manufacturer*
                                        *Defendants*

                                        */s/ Carole S. Rendon*
                                        Carole S. Rendon
                                        BAKER & HOSTETLER LLP
                                        Key Tower 127 Public Square, Suite 2000
                                        Cleveland, OH 44114-1214
                                        Telephone: (216) 621- 0200
                                        Fax: (216) 696-0740
                                        crendon@bakerlaw.com

                                        *Counsel for Defendants Endo Health Solutions Inc.*
                                        *and Endo Pharmaceuticals Inc.; Par*
                                        *Pharmaceutical, Inc., and Par Pharmaceutical*
                                        *Companies, Inc.*

                                        *Co-Liaison Counsel for the Manufacturer*
                                        *Defendants*

                                        */s/ Enu Mainigi*
                                        WILLIAMS & CONNOLLY LLP
                                        Enu Mainigi
                                        725 Twelfth Street, N.W.
                                        Washington, DC 20005
                                        Telephone: (202) 434-5000
                                        Fax: (202) 434-5029
                                        emainigi@wc.com

                                        *Counsel for Defendant Cardinal Health, Inc.*

16

*Co-Liaison Counsel for the Distributor Defendants*

*/s/ Shannon E. McClure*
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Fax: (215) 851-1420
smcclure@reedsmith.com

*Counsel for Defendant AmerisourceBergen Drug Corporation*

*Co-Liaison Counsel for the Distributor Defendants*

*/s/ Geoffrey Hobart*
Geoffrey Hobart
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5281
ghobart@cov.com

*Counsel for Defendant McKesson Corporation*

*Co-Liaison Counsel for the Distributor Defendants*

*/s/ Kaspar Stoffelmayr*
Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4434
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for the Walgreens Defendants*

*Liaison Counsel for the Chain Pharmacy Defendants*

17

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's

ECF system to all counsel of record on July 15, 2019.

> */s/ Geoffrey Hobart*
> Geoffrey E. Hobart
> **COVINGTON & BURLING LLP**
> One CityCenter
> 850 Tenth Street NW
> Washington, DC 20001
> Tel: (202) 662-5281
> ghobart@cov.com
> mlynch@cov.com
>
> *Counsel for McKesson Corporation*
>
> *Co-Liaison Counsel for the Distributor Defendants*