# Exhibit 1

```
  1              UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
  2                     EASTERN DIVISION
  3   IN RE: NATIONAL              )   MDL No. 2804
      PRESCRIPTION OPIATE          )
  4   LITIGATION                   )   Case No.
                                   )   1:17-MD-2804
  5                                )
      THIS DOCUMENT RELATES TO     )   Hon. Dan A.
  6   ALL CASES                    )   Polster
                                   )
  7
  8
  9                       —  —  —
 10              Saturday, May 4, 2019
                          —  —  —
 11
       HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
 12              CONFIDENTIALITY REVIEW
                          —  —  —
 13
 14
 15
 16         Videotaped Deposition of MEREDITH B.
      ROSENTHAL, Ph.D., held at Robins Kaplan LLP,
 17   800 Boylston Street, Suite 2500, Boston,
      Massachusetts, commencing at 8:04 a.m., on
 18   the above date, before Michael E. Miller,
      Fellow of the Academy of Professional
 19   Reporters, Registered Diplomate Reporter,
      Certified Realtime Reporter and Notary
 20   Public.
 21
 22
 23                       —  —  —
 24           GOLKOW LITIGATION SERVICES
         877.370.3377 ph | fax 917.591.5672
 25              deps@golkow.com
```

1    that there's variation in the way
2    manufacturers detail, the specific details
3    may generate more prescriptions or fewer, and
4    my model captures the average effect.  That's
5    what the coefficients basically tell us is
6    the average effects.
7              So there may be variation in
8    there, but for the purposes of calculating
9    aggregate impact, the average is appropriate.
10        Q.   So for manufacturers who have
11   detailing that's below average, they're being
12   brought up to the average by the way you've
13   aggregated the model in terms of causation?
14        A.   Well, by definition, an average
15   will be not the same as all the individual
16   components unless there's no variation, and
17   so there will be some who are brought up and
18   some who are brought down.
19              It's my belief, as we talked
20   about before, that this aggregate model is
21   the most reliable model; because there's
22   substantial spillover effects, because there
23   can be noise in the data when we try to
24   disaggregate it too much.  I think for that
25   reason, the aggregate model is preferable.

1        Q.    You know, though, that not
2    every manufacturer markets products the same
3    way?
4        A.    I guess -- I'm not exactly sure
5    how to answer that question.  As we've talked
6    about before, I am not a pharmaceutical
7    marketing expert.  I leave that to Dr. Perri.
8    I think it's reasonable to assume that there
9    is some variation in tactics and the like
10   across manufacturers and perhaps across
11   products.
12       Q.    Well, let's look at one thing
13   you do talk about.  So there's a difference
14   in the way promotion is engaged in by brand
15   companies and marketing may be engaged in by
16   generic companies, correct?
17       A.    Yes, brand companies are
18   primarily the ones that engage in marketing.
19       Q.    A generic company might still
20   detail but may just talk about price and
21   formulary status?
22             MR. SOBOL:  Objection.
23       A.    Generally, manufacturers will
24   not detail physicians for generics.  They may
25   have other sales force activities that they

1    do that relate to price, but individual
2    physicians are not generally making a
3    decision about one generic versus the other.
4    That decision happens at the pharmacy.
5    BY MR. ROTH:
6         Q.    But Attachment C contains a
7    slew of generics on that list?
8         A.    That's correct.  Some of them
9    have contacts related to them.  Some of them
10   don't.  Some of those contacts relate to
11   marketing agreements that are really for
12   brand drugs.
13        Q.    So how do you square your
14   testimony a minute ago that generics
15   generally don't detail with the fact that you
16   have a lot of promotional contacts in your
17   model for generic drugs?
18              MR. SOBOL:  Objection.
19        A.    I believe I just squared it.  I
20   think a lot of those contacts relate to
21   marketing agreements.
22   BY MR. ROTH:
23        Q.    And so if there's marketing
24   under a marketing agreement, that gets
25   attributed to the generic drug, even though

1    it may be different in kind than a branded
2    drug promotional visit?
3              MR. SOBOL:  Objection.
4         A.   No.  The marketing of a
5    particular drug is identified, and if the
6    drug is sold by a defendant manufacturer,
7    even if it's detailed by a different
8    manufacturer, that gets counted in my model.
9    And then in Table 3, I take out those
10   marketing agreement related drugs.
11             So -- so it's -- the marketing
12   is associated with -- I mean, I look at
13   aggregate marketing, so it's all in the
14   aggregate marketing.  But I do have a
15   mechanism for pulling out marketing that's
16   for someone else's drug.
17   BY MR. ROTH:
18        Q.   So if that's the mechanism
19   you're using, how are any of these detailing
20   contacts being attributed to generic drugs in
21   your model?
22             MR. SOBOL:  Objection.
23        A.   I think you misunderstand the
24   nature of the model.  The model uses
25   aggregate MMEs and aggregate detailing, so

```
 1                      CERTIFICATE
 2              I, MICHAEL E. MILLER, Fellow of
     the Academy of Professional Reporters,
 3   Registered Diplomate Reporter, Certified
     Realtime Reporter, Certified Court Reporter
 4   and Notary Public, do hereby certify that
     prior to the commencement of the examination,
 5   MEREDITH B. ROSENTHAL, Ph.D. was duly sworn
     by me to testify to the truth, the whole
 6   truth and nothing but the truth.
 7              I DO FURTHER CERTIFY that the
     foregoing is a verbatim transcript of the
 8   testimony as taken stenographically by and
     before me at the time, place and on the date
 9   hereinbefore set forth, to the best of my
     ability.
10
                I DO FURTHER CERTIFY that pursuant
11   to FRCP Rule 30, signature of the witness was
     not requested by the witness or other party
12   before the conclusion of the deposition.
13              I DO FURTHER CERTIFY that I am
     neither a relative nor employee nor attorney
14   nor counsel of any of the parties to this
     action, and that I am neither a relative nor
15   employee of such attorney or counsel, and
     that I am not financially interested in the
16   action.
17
18   [signature]
19   _____
     MICHAEL E. MILLER, FAPR, RDR, CRR
20   Fellow of the Academy of Professional Reporters
     NCRA Registered Diplomate Reporter
21   NCRA Certified Realtime Reporter
     Certified Court Reporter
22
     Notary Public
23   My Commission Expires:  7/9/2020
24   Dated: May 6, 2019
25
```