# Exhibit 13

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION
 3
     IN RE NATIONAL PRESCRIPTION   | MDL No. 2804
 4                                 |
     OPIATE LITIGATION             | Case No. 17-MD-2804
 5                                 |
     APPLIES TO ALL CASES          | Hon. Dan A. Polster
 6
 7                             - - -
 8                   Wednesday, April 24, 2019
 9                             - - -
10
              CONFIDENTIAL - SUBJECT TO FURTHER
11
                      CONFIDENTIALITY REVIEW
12
                               - - -
13
                            Volume 2
14
15
           VIDEOTAPED DEPOSITION of MATTHEW PERRI, III,
16   BS Pharm, Ph.D., RPh, held at Jones Day,
     1420 Peachtree Street, N.E., Suite 800, Atlanta,
17   Georgia, commencing at 8:35 a.m., on the above date,
     before Susan D. Wasilewski, Registered Professional
18   Reporter, Certified Realtime Reporter and Certified
     Realtime Captioner.
19
20
21                             - - -
22              GOLKOW LITIGATION SERVICES
23         877.370.3377 ph | 917.591.5672 fax
24                  deps@golkow.com
25
```

1            MR. CHALOS:  Object to the form.

2       A.   I think so.  I think the only other place
3   there might be something related to marketing of
4   generics would be in the section on the distribution
5   channels, the supply chain earlier in the report,
6   but it wouldn't be anything different.  It just
7   might be supplemental.

8       Q.   Okay.  And what do you mean, just so that we
9   can be clear, when you refer to generic marketing?

10      A.   So the marketing for brand name
11  pharmaceuticals and marketing for generics, in my
12  experience, is slightly different.

13      Q.   Okay.

14      A.   So I felt as though I should distinguish
15  between the two in the report.  So to the extent
16  that different methods are used or different themes
17  are used, I wanted to have a section that
18  specifically related to the themes used with
19  generics.

20      Q.   Okay.  And this is specific to generic
21  prescription medicines, and in this case opioids,
22  it's not generic in the sense of nonspecific or
23  unbranded, it's generic prescription medicines and
24  opioids?

25      A.   Yes.

 1    Q.   All right.  If we could turn to Paragraph
 2    173.
 3    A.   Okay.
 4    Q.   And the last sentence of that paragraph
 5    reads:  The key marketing messages are focused on
 6    competitive prices and the assurance of consistent
 7    supply of quality generic medicines -- medications.
 8         Did I read that correctly?
 9    A.   Yes, you did.
10    Q.   Thank you.  And I think you reference that
11    just a minute ago, that those marketing messages are
12    different than what you've seen with the branded
13    marketing messages; is that correct?
14    A.   Yes.
15    Q.   Okay.  And generic manufacturers do not
16    promote the safety, efficacy, or benefits of their
17    generic medications; is that correct?
18         MR. CHALOS:  Object to the form.
19    A.   I would agree that they generally don't do
20    that, but if there is not -- I can't say that that's
21    never done with respect to generics.  And if we
22    qualify that just a little bit, for example,
23    sometimes with generics there are -- references are
24    made to other products or comparable products, the
25    branded product itself.  So when that occurs, the

1    generic is sort of linking itself to the branded

2    rather than just standing alone on its own.  So with

3    those qualifications -- generally, I completely

4    agree with this, and this is what I see in the vast

5    majority of the marketing messages associated with

6    generics that I saw in the opioid matter, was that

7    they focused on consistency of supply, pricing and

8    quality of the products.

9        Q.   Okay.  Thank you.  And turning to

10   Paragraph 182 -- sorry, 181, but just above still on

11   page 151.

12       A.   Okay.

13       Q.   Although we can read the sentence from the

14   beginning, just go back to page 150.  The sentence

15   starting:  "From a marketing and business

16   perspective, for each generic manufacturer who

17   decided to enter the opioid market, the profit

18   potential outweighed any barriers or potential

19   negative aspects of market entry, including concerns

20   over the risks of selling opioids."

21            Did I read that correctly?

22       A.   You did.

23       Q.   And this calculus, that profits outweigh the

24   risks and costs of a particular product, that

25   calculus is not unique to a decision to enter a

1    market for opioids; is that correct?

2    A.   Yes, that's true, the go/no go decision

3    described in this section on my report, it would be

4    true for any generic product being considered.

5    Q.   Okay.  And medications that are available by

6    prescription, as opposed to, say, over the counter,

7    that is because there is some degree of risks

8    associated with those medications, correct?

9    A.   I think by definition, prescription

10   medications are more dangerous or more -- have more

11   potential for harms than over-the-continuer

12   medicines, yes.

13   Q.   Okay.  So a pharmaceutical manufacturer is

14   going to undergo a similar calculus when deciding to

15   manufacture or enter the market for any drug,

16   correct?

17   A.   I think there would be a contemplative

18   decision that would be made and they would -- they'd

19   have criteria.  Certainly I think the criteria for a

20   branded product may be different and certainly have

21   higher implications in terms of the amount of

22   investment that you've got to put into the product,

23   the amount of time that it would take to develop and

24   bring to market, but the overall "should we do this

25   or not" is going to be pretty similar at the end of

1                     C E R T I F I C A T E

2            I, SUSAN D. WASILEWSKI, Registered

3    Professional Reporter, Certified Realtime Reporter

4    and Certified Realtime Captioner, do hereby certify

5    that, pursuant to notice, the deposition of MATTHEW

6    PERRI, III, BS Pharm, Ph.D., RPh, was duly taken on

7    Wednesday, April 24, 2019, at 8:35 a.m. before me.

8            The said MATTHEW PERRI, III, BS Pharm, Ph.D.,

9    RPh, was duly sworn by me according to law to tell

10   the truth, the whole truth and nothing but the truth

11   and thereupon did testify as set forth in the above

12   transcript of testimony.  The testimony was taken

13   down stenographically by me.  I do further certify

14   that the above deposition is full, complete, and a

15   true record of all the testimony given by the said

16   witness, and that a review of the transcript was

17   requested.

18

19   _____

20   Susan D. Wasilewski, RPR, CRR, CCP

21   (The foregoing certification of this transcript does

22   not apply to any reproduction of the same by any

23   means, unless under the direct control and/or

24   supervision of the certifying reporter.)

25