Exhibit 22

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| *City of Cleveland v. Purdue Pharma L.P., et al.,* Case No. 18-OP-45132 (N.D. Ohio) | Judge Dan Aaron Polster |
| *The County of Cuyahoga v. Purdue Pharma L.P., et al.,* Case No. 17-OP-45004 (N.D. Ohio) | |
| *The County of Summit, Ohio, et al. v. Purdue Pharma L.P. et al.*, Case No. 180OP-45090 (N.D. Ohio) | |

## SUPPLEMENTAL WRITTEN RESPONSES AND OBJECTIONS OF DEFENDANTS' PAR PHARMACEUTICAL, INC. AND PAR PHARMACEUTICAL COMPANIES, INC. TO PLAINTIFFS' AMENDED NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6) NOS. 4, 6-10, 13-16, 18, 22, 23, 37 and 39

Pursuant to the agreements between Plaintiffs and Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. (incorrectly named as "Par Pharmaceutical Companies, Inc. f/k/a Par Pharmaceutical Holdings, Inc.") (collectively, "Par") and the September 4, 2018 order of Special Master Cohen, Par provides below its supplemental written responses and objections to topics 4, 6-10, 13-16, 18, 22, 23, 37 and 39 identified in Plaintiffs' July 1, 2018 Amended Notice of Deposition Pursuant to Rule 30(b)(6) (the "Topics" and "Notice," respectively).

## PRELIMINARY STATEMENT

These responses are based on diligent investigation conducted by Par and its counsel to date, and reflect the current status of Par's knowledge, understanding, and belief respecting the interrogatories.  Par's investigation is continuing, and Par reserves the right to modify, supplement, or amend its responses herein with whatever pertinent information, facts, or documents subsequently may be discovered.  Par further reserves the right to produce additional information or other evidence at any time, including trial, and to object on appropriate grounds to the introduction into evidence of any portion of these responses.  Par further reserves all rights to modify, supplement, or amend its objections and responses to Plaintiffs' Notice, or any Topics therein, based on any ruling by the Court with respect to motions to dismiss.  References to the "Complaint" in these Supplemental Written Responses and Objections refer to the active and pending Complaint(s) filed by Plaintiffs in the above captioned actions as of the time of service of these Supplemental Written Responses and Objections.

Information contained in any response pursuant to these Topics is not an admission or acknowledgement by Par that such information is relevant to any claim or defense in these actions; is without prejudice to Par's right to contend at trial or in any other or subsequent proceeding, in these actions or otherwise, that such information is inadmissible, irrelevant, immaterial, or not the proper basis for discovery; and is without prejudice to or waiver of any objection to any future use of such information.

Specific objections to each separate Topic responded to herein are made below. Additionally, Par makes certain continuing objections to the Topics, also listed below ("Continuing Objections").  These Continuing Objections are incorporated by reference into all of the responses made with respect to each separate Topic.  Par's response to each individual

Topic is submitted without prejudice to, and without in any respect waiving, any Continuing

Objections not expressly set forth in that response.  Accordingly, the inclusion of any specific

objection in any response below is neither intended as, nor shall in any way be deemed, a waiver

of any Continuing Objection or of any other specific objection made herein or that may be

asserted at a later date.  Par offers to meet and confer with Plaintiffs regarding any and all

objections set forth herein.

## CONTINUING OBJECTIONS

1.      Par objects to the Notice and each and every Topic set forth therein, including,

without limitation, any portion of the definitions, to the extent that it seeks information beyond

the scope of discovery as provided by the Federal Rules of Civil Procedure, the Local Rules of

the Northern District of Ohio, or any CMO, other order, or ruling in this matter, or to the extent it

purports to impose obligations on Par greater than or inconsistent with those imposed by Rules

26 and 30 of the Federal Rules of Civil Procedure, the Local Rules of the Northern District of

Ohio, or any CMO or other court order or ruling.

2.      Par objects to the Notice to the extent it fails to describe any Topic with

reasonable particularity as required by Federal Rule of Civil Procedure 30(b)(6).

3.      Par objects to each and every Topic to the extent that it seeks information that

falls within any relevant privilege or protection, including, without limitation, the attorney-client

privilege, the work product doctrine, any joint defense privilege, settlement materials, or trial

preparation materials.  Nothing contained in these responses is intended as, or shall in any way

be deemed, a waiver of any relevant privilege or protection.  In responding to each Topic herein,

Par will not provide information that is privileged or protected from discovery by law.  Any

statement to the effect that Par will provide information in response to a Topic means that the

3

response shall be limited to information that does not fall within the scope of any relevant privilege or protection.

4.     Par objects to each and every Topic to the extent it seeks information that constitutes confidential, proprietary, private, or financial information, or trade secrets protected from disclosure.  Par will produce such information, if any, only pursuant to the terms of the protective order entered by the Court.

5.     Par objects to each and every Topic to the extent that it seeks information that is neither relevant to the subject matter of this action, nor proportional to the needs of the case.  In responding to each Topic, Par will provide only information that is relevant to the subject matter of the Track One cases and proportional to the needs of the Track One cases.

6.     Par objects to each and every Topic to the extent it purports to seek information concerning products that are not relevant to the Track One cases or that are inconsistent with the rulings and orders as to the scope of discovery in these actions.

7.     Par objects to each and every Topic to the extent it would require Par to search for and provide information that is publicly available, is already in the possession of Plaintiffs, or is equally obtainable from third parties or from some source other than Par that is more convenient, less burdensome, or less expensive.

8.     Par objects to the Notice and each Topic to the extent they call for information requiring scientific, technical, or other specialized knowledge such that it is appropriately the subject of expert testimony, and/or to the extent they ask for or may be read to encompass work performed by or information received from experts retained by Par in order to defend itself in this ligation or in other litigation.  Par will make appropriate disclosures regarding expert witnesses in accordance with applicable rules and orders.

9.      Par objects to the extent that any Topic purports to seek information concerning a geographical scope that is not relevant to the Track One cases or that is inconsistent with the rulings and orders as to the scope of discovery in these actions.

## CONTINUING OBJECTIONS TO DEFINITIONS

1.      Par objects to the definition of "Branded Marketing" to the extent it incorporates the defined term "Marketing," for the reasons set forth below with respect to the definition of "Marketing."

2.      Par objects to the definition of "Communication" on the basis that the phrase "ideas, inquiries, or otherwise" and "shared applications from cell phone" are vague and ambiguous. Par objects to the extent the definition of "Communication" purports to impose upon Par any obligation broader than or inconsistent with the Federal Rules of Civil Procedure or any Order of this Court.

3.      Par objects to the definition of "Document" as overly broad and unduly burdensome to the extent it purports to impose upon Par any obligation broader than or inconsistent with the Federal Rules of Civil Procedure or any Order of this Court.

4.      Par objects to the definition of "ESI" as overly broad and unduly burdensome to the extent it purports to impose upon Par any obligation broader than or inconsistent with the Federal Rules of Civil Procedure or any Order of this Court.

5.      Par objects to the definition of "Lobbying" on the grounds that it is vague and ambiguous and overly broad to the extent it includes any actions "seeking to influence the actions, policies or decisions of politicians or other public officials" on any "issue."

6.      Par objects to the definition of "Marketing" as on the grounds that the definition is overly broad and vague and ambiguous to the extent it characterizes "continuing medical

education" and "scientific medical" articles or publications as "Marketing." Par further objects to the definition of "Marketing" due to its incorporation of the defined terms "Opioid" and "Opioid Products."

7.     Par objects to the definition of "Opioids" on the grounds that it is vague and ambiguous, overly broad, and purports to require Par to produce information outside its knowledge, possession, custody, or control to the extent the definition requires Par to speculate as to how individual patients or prescribers use any "legal or illegal" drug to "control pain." Par further objects to the extent that the definition of "Opioids" purports to include "illegal" drugs.

8.     Par incorporates its above objections to the definition of "Opioid" with respect to the definition of "Opioid Products," which incorporates the defined term "Opioid." Par further objects that the definition of "Opioid Products" is overly broad, vague and ambiguous, not proportional to the needs of the case, and seeks information that is neither relevant nor proportional to the needs of the case to the extent it includes any "Opioids that You sold, promoted, marketed, manufactured, or distributed" without regard for the allegations as to Par or the rulings and orders as to the scope of discovery in these actions.

9.     Par objects to the definition of "Process" as overly broad, unduly burdensome, and on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case to the extent "Process" is intended to seek information about every "particular action, function, or issue" concerning any Topic. Par further objects that "Process" is vague and ambiguous to the extent it is intended to seek such information because the definition as stated requests only information about "records created or maintained." Par further objects to the definition of "Process" as seeking information outside Par's knowledge, possession, custody, or

control insofar as it includes any "third parties involved in" any "particular action, function, or issue."

10.    Par objects to the definition of "Sales Department" to the extent it purports to seek information outside Par's knowledge, possession, custody, or control.

11.    Par objects to the definition of "Scientific Research" on the grounds that it is overly broad as used insofar as the term is defined to include any "studies, investigations, trials, articles, comparisons, case histories, reviews, reports, or analyses that are conducted by doctors, researchers, or other investigators."  Par objects that the terms "comparisons, case histories, reviews, reports, or analyses" and "researchers, or other investigators" are vague and ambiguous as used in this definition because they are subject to multiple different interpretations.  Par further objects to the definition to the extent that it purports to require Par to produce information outside its knowledge, possession, custody, or control and to the extent that it seeks to impose obligations broader than or inconsistent with those in the Federal Rules of Civil Procedure.

12.    Par objects to the definition of "Suspicious Order" as vague and ambiguous insofar as the terms "unusual size," "orders deviating substantially from a normal pattern," and "unusual frequency" are subject to multiple different interpretations.

13.    Par objects to the definition of "Unbranded Marketing" to the extent it incorporates the defined term "Marketing," for the reasons set forth above with respect to the definition of "Marketing."

14.    Par objects to the definition of "You" and "Your" as on the grounds that it purports to require Par to produce information outside the knowledge, possession, custody, or control of Par, and to the extent that it seeks to impose obligations broader than or inconsistent with the Federal Rules of Civil Procedure.  Par will respond on its own behalf, as Par

7

Pharmaceutical, Inc. and Par Pharmaceuticals Companies, Inc. To the extent Plaintiff seeks information about Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.  ("Endo"), Endo refers Plaintiffs to Endo's Objections and Responses to Plaintiffs' Amended Notice of Deposition Pursuant to Rule 30(b)(6).

15.     Par objects to the "Relevant Time Period" as defined to the extent it seeks information inconsistent with and broader than the rulings and order as to the temporal scope of discovery in this litigation.  Par further objects to the "time period" to the extent it seeks information related to any entity prior to one year before that entity began selling Schedule II opioid medications.  Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. began selling Schedule II opioid medications in 2011.  Par further objects to the "time period" to the extent it seeks information related to any entity prior to the time that entity existed. Par's subsidiary, Generics International (US), Inc. f/d/b/a Qualitest Pharmaceuticals d/b/a Par Pharmaceutical was formed in 2007 and purchased assets comprising its pharmaceutical business on October 31, 2007.  In 2016, Generics International (US), Inc. became a subsidiary of Par Pharmaceutical, Inc.

## SUPPLEMENTAL SPECIFIC OBJECTIONS AND WRITTEN RESPONSES TO SUBJECT MATTERS FOR TESTIMONY

**Topic 4:** The structure and operation of Your Sales Department for Opioid Products, including assigned territories, job titles and responsibilities, and lines of reporting.

**Supplemental Response to Topic 4:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about Par's "Sales Department for Opioid Products, including assigned territories, job titles and responsibilities, and lines of reporting," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  Par maintains a Sales department.  Because Par sells generic products, sales communications have been directed to parties that purchase products directly from the company, including wholesalers and large retail chain pharmacies.  The Sales department at Par has consisted primarily of National Account Representatives who manage relationships and communications with customers including wholesalers and large retail chain pharmacies.

The legacy Qualitest business, comprised of Generics International (US), Inc. and its subsidiaries, maintained a Sales department that consisted of Key Account Managers: Outside Sales that managed relationships and communications with customers including wholesale customers and large retail chain pharmacies.  The Key Account Managers were supported by a customer service team called Executive Sales Representatives that entered orders and addressed questions from customers.  Those customer service team members otherwise supported the Key Account Managers and worked on those large national accounts.  The legacy Qualitest business

9

also had a Retail Sales team comprised of Outside Sales Representatives and Inside Sales Clerks. The Retail Outside Sales Representatives operated regionally and called on independent retail pharmacies that did not fall within the domain of the Key Account Managers. Those regional accounts consisted of independent retail pharmacies and also included at times a limited number of clinics or physician practices. The Inside Sales Clerks consisted of telemarketers that called on the same category of customers as the Retail Outside Sales Representatives and supported the members of the Retail Outside Sales Representatives. The sales team discussed with customers issues including price and inventory management given the commoditized nature of generic products.

The sales personnel at Par, including legacy Qualitest personnel, have not engaged in the types of product-specific marketing or promotion alleged in the Complaint and have not been tasked with discussing efficacy, safety, or clinical profiles of Schedule II opioid medications.

**Topic 6:** Your Processes for hiring or engaging, compensating, disciplining, and terminating members of Your Sales Department (including non-employees engaged through third parties such as Ventiv), including any specific instances of discipline (including termination) for any misconduct, violation of policies, or unlawful action with respect to any Opioid Product.

**Supplemental Response to Topic 6:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above. Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about Par's "Processes for hiring or engaging, compensating, disciplining, and terminating members of Your Sales Department," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows: As a generics business, Par has not engaged health care professionals directly or indirectly for

purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner

alleged in the Complaint.  Par incorporates its response to Request No. 4 describing the nature of

the Sales department.

**Topic 7:** The Process for training Your Sales Representatives with respect to the sale and
Marketing of any Opioid Product or Opioids as a class (including any training concerning
Diversion or Suspicious Orders This Topic includes the identity of the Persons responsible for
developing or implementing training and training materials for Your sales and Marketing
departments, including regarding promotion or sale of Opioids or Opioid Products, reporting or
investigating the possible Diversion of Opioids or Opioid Products or identifying, investigating
or reporting Suspicious Orders.

**<u>Supplemental Response to Topic 7:</u>**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set

forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks

information that is neither relevant nor proportional to the needs of the case in that it seeks

information about Par's "Process for training . . . Sales Representatives with respect to the sale

and Marketing of any Opioid Product or Opioids as a class," no matter how tangential the

connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a

generics business, Par has not engaged health care professionals directly or indirectly for

purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner

alleged in the Complaint.  Par incorporates its response to Request No. 4 describing the nature of

the Sales department.  As such, Par did not train its personnel regarding the promotion of the

clinical aspects of Schedule II opioid medications to healthcare professionals.  Par has a

marketing department that engages in market analytics, forecasting, creation of sell sheets, and a

limited amount of marketing used for trade shows and industry publications.  Par did not train its

marketing personnel specifically on diversion or suspicious order monitoring.

**Topic 8:** The Process used to determine which medical professionals or offices Your sales representatives (including contracted sales representatives) would individually contact (in-person or otherwise) with respect to Your Opioid Products, including any database or other sources of information You used to direct or suggest medical professionals or offices to contact, directions or guidelines to sales representatives concerning which medical professionals or offices to contact, and databases, reports, or other information made available to Your sales representatives concerning prescribing histories or propensities of medical professionals.

**Supplemental Response to Topic 8:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about Par's "Process used to determine which medical professionals or offices Your sales representatives . . . would individually contact . . . with respect to Your Opioid Products," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint.  Par incorporates its response to Request No. 4 describing the nature of the Sales department and the limited interactions that legacy Qualitest sales personnel had with clinics and physician practices.

**Topic 9:** Any analyses of the effectiveness of Your sales or Marketing efforts, including any analysis of Your return on investment (ROI) in sales or Marketing activities related to Your Opioid Products.

**Supplemental Response to Topic 9:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks

information about "the effectiveness of Your sales or Marketing efforts," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint.  Par has a marketing department that engages in market analytics, forecasting, creation of sell sheets, and a limited amount of marketing used for trade shows and industry publications.  The marketing department does not generally conduct ROI analyses of its limited marketing activities.

**Topic 10:** The structure and operation of Your Marketing department with respect to Opioid Products, including identification of any standing or ad hoc teams or working groups, and the job titles, responsibilities, and lines of reporting for each position.

**<u>Supplemental Response to Topic 10</u>:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about "structure and operation of Your Marketing department with respect to Opioid Products," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint.  Par has a marketing department that engages in market analytics, forecasting, creation of sell sheets and a limited amount of marketing used for trade shows and industry publications.  The marketing department at Par has at times operated under the

"Marketing and Business Analytics" department at Par and has included the positions of "Director of Marketing," and "Senior Analyst, Marketing."  Within the legacy Qualitest business, the Marketing function fell within the Sales and Marketing Department and included positions of "Demand Manager," "Marketing Analyst," and "Demand Analyst."  Par is not currently aware of any ad-hoc or working groups that operated within the Marketing department.

**Topic 13:** The Process for determining the accuracy, completeness, and legality of, and approval and implementation of any sales or Marketing information You made available to medical professionals, patients, or the public concerning Opioids or any of Your Opioid Products in any format, including printed materials, videos, websites, and in-person messaging or "detailing" by sales representatives.

**Supplemental Response to Topic 13:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about the "Process for determining the accuracy, completeness, and legality of, and approval and implementation of any sales or Marketing information You made available to medical professionals, patients, or the public concerning Opioids or any of Your Opioid Products in any format," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint.  Further, the generic Schedule II opioid medications sold by Par are equivalent to reference listed drugs approved by the FDA as safe and effective.  Personnel in Endo and Par's regulatory affairs departments were responsible for drafting, updating, and submitting labeling for Par products that was consistent with the labeling of the reference listed

drug for each of Par's generic products.  Likewise, personnel in the Marketing department

reviewed material regarding Par's generic products to determine that it was consistent with the

approved labeling of the product.  Marketing material was also reviewed and approved by

various committees over time comprised of members of Par's Medical Affairs, Regulatory,

Legal, Compliance and Marketing departments.  Examples of emails regarding the marketing

material review and approval process can be found in Par's document production at Bates Nos.

PAR_OPIOID_MDL_0001443650; PAR_OPIOID_MDL_0000740319;

PAR_OPIOID_MDL_0001351477; PAR_OPIOID_MDL_0001349334;

PAR_OPIOID_MDL_0001349393; PAR_OPIOID_MDL_0000745099;

PAR_OPIOID_MDL_0001585921.

**Topic 14:**  The process used to distribute Marketing Communications throughout the nation,
including in the State of Ohio, and the Marketing distributed into any of the States of Ohio,
Pennsylvania, West Virginia, Kentucky, Illinois, Georgia or Florida. This topic includes all steps
from the time a Marketing plan, program, or campaign is initiated to the step of evaluating the
effectiveness of such plan, program, or campaign, including in any of the above states.

**Supplemental Response to Topic 14:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set

forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks

information that is neither relevant nor proportional to the needs of the case in that it seeks

information about the "process used to distribute Marketing Communications throughout the

nation, including in the State of Ohio, and the Marketing distributed into any of the States of

Ohio, Pennsylvania, West Virginia, Kentucky, Illinois, Georgia or Florida," no matter how

tangential the connection to the allegations as to Par.  Par further objects to the topic to the extent

it calls for information regarding States other than Ohio on the ground that the geographic scope

of discovery has been limited by Special Master Cohen's Discovery Order 3 dated July 18, 2018

to exclude states other than Ohio.

Subject to and without waiver of the foregoing objections, Par responds as follows: As a

generics business, Par has not engaged health care professionals directly or indirectly for

purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner

alleged in the Complaint.  As such, Par did not execute marketing plans, programs, or campaigns

to distribute material regarding its Schedule II opioid medications into the State of Ohio or

nationally.  Par distributed certain limited material at trade shows for wholesale buyers or

pharmacies and has provided catalogue information for its Schedule II opioid medications on its

website.  *See e.g.*, PAR_OPIOID_MDL_0001597052.  Otherwise, Par has not distributed

marketing material in Ohio.

**Topic 15:** The identity, scope, nature, and findings of any surveys, focus groups, market research or other similar research or investigations ("Research") You performed, had performed on Your behalf, or that you received or reviewed, regarding perceptions (of healthcare providers, the public or third party payors) concerning the safety, efficacy, addictive nature and/or abuse potential of Opioids (including any of Your Opioid Products).

**Supplemental Response to Topic 15:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set

forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information

that is neither relevant nor proportional to the needs of the case in that it seeks information about

the "identity, scope, nature, and findings of any surveys, focus groups, market research or other

similar research or investigations . . . You performed, had performed on Your behalf, or that you

received or reviewed, regarding perceptions . . . concerning the safety, efficacy, addictive nature

and/or abuse potential of Opioids," no matter how tangential the connection to the allegations as to

Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint.  As such, Par did not conduct surveys, focus groups, market research or other similar research or investigations regarding perceptions concerning the safety, efficacy, addictive nature and/or abuse potential of its Schedule II opioid medications.  Market research regarding market share of Par products can be identified in various forms in documents produced in this litigation, including, for example, documents bearing Bates Nos.

PAR_OPIOID_MDL_0000508674; PAR_OPIOID_MDL_0000498808;

PAR_OPIOID_MDL_0000505458;

PAR_OPIOID_MDL_0000505463 ;PAR_OPIOID_MDL_0000700782;

PAR_OPIOID_MDL_000508957; PAR_OPIOID_MDL_0000678448;

PAR_OPIOID_MDL_0000678529;PAR_OPIOID_MDL_000716080;

PAR_OPIOID_MDL_0000780357; PAR_OPIOID_MDL_0000780361;

PAR_OPIOID_MDL_0000770318; PAR_OPIOID_MDL_000070321;

PAR_OPIOID_MDL_0000678550; PAR_OPIOID_MDL_0000734472;

PAR_OPIOID_MDL_0000444373; PAR_OPIOID_MDL_0001070955.

**Topic 16:** Your use of any of the Research identified in Topic 15 in connection with the sale or Marketing of any Opioid Product or any other efforts you made to affect, change or influence perceptions concerning Opioids or any of Your Opioid Products.

**Supplemental Response to Topic 16:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks

information about the "use of any of the Research identified in Topic 15 in connection with the sale or Marketing of any Opioid Product or any other efforts you made to affect, change or influence perceptions concerning Opioids," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows: As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint.  As such, Par did not conduct surveys, focus groups, market research or other similar research or investigations regarding perceptions concerning the safety, efficacy, addictive nature and/or abuse potential of its Schedule II opioid medications.

**Topic 18:** The identity, scope, and structure of all databases regarding your Marketing  activities, including but not limited to databases reflecting all Your Marketing costs and expenditures, databases reflecting Your return on investment (ROI) of Marketing activities, databases containing Your prescriber profiles and practices, and databases reflecting Your analysis of third-party data (including from IQVIA Holdings, Inc.; IMS Health; QuintilesIMS; IQVIA; Pharmaceutical Data Services; Source Healthcare Analytics; NDS Health Information Services; Verispan; Quintiles; SDI Health; ArcLight; Scriptline; Wolters Kluwer; and/or PRA Health Science, and all of their predecessor or successor companies, subsidiaries or affiliates).

**Supplemental Response to Topic 18:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about the "identity, scope, and structure of all databases regarding your Marketing activities," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner

alleged in the Complaint. Par subscribed to services to receive IMS/IQVIA data and conducted forecasting and market share analysis based on that data. Par has produced the IMS/IQVIA data regarding its Schedule II opioid medications that was in its possession, *see* ENDO_DATA-OPIOID_MDL-00000085; PAR_OPIOID_MDL_0002016786, and has produced relevant and responsive analyses of that data and refers to that production. Par's Marketing department has also relied at times on data from PriceRx/Medispan to identify medications that are therapeutically equivalent to Par's Schedule II opioid medications for the purpose of conducting market share analysis. Par has at certain times used a "marketing tracker" spreadsheet to track marketing spending and approvals for specific marketing material.

**Topic 22:** Your sales and Marketing budgets, including categories of expenditures, by year, for each Opioid Product, including the Process utilized to arrive at these budgets.

**Supplemental Response to Topic 22:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above. Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about "sales and Marketing budgets," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows: As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint. Par did not maintain marketing budgets by year for each opioid product and conducted limited marketing activity for its opioid products. Par refers Plaintiffs to Par's productions from the custodial files of Kim Nasse and Jeremy Tatum for documents containing information concerning sales and marketing budgets. Budget information for the Sales and

19

Marketing departments at Par can be identified in documents produced in this litigation, including, for example, documents bearing Bates Nos. PAR_OPIOID_MDL_0000774231, PAR_OPIOID_MDL_0001316367, and PAR_OPIOID_MDL_0001580826.

**Topic 23:** Your sales projections, targets, and goals, by year, for each Opioid Product, including the Process utilized to arrive at these projections, targets, and goals.

**Supplemental Response to Topic 23:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about "sales projections, targets, and goals, by year, for each Opioid Product," no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint.  Par refers Plaintiffs to Par's productions from the custodial files of Kim Nasse and Jeremy Tatum for documents containing information concerning sales forecasts and projections.  Sales forecasts and projections can be identified in various forms in documents produced in this litigation, including, for example, documents bearing Bates Nos.

PAR_OPIOID_MDL_0000570217;

PAR_OPIOD_MDL_0001532633;PAR_OPIOID_MDL_0000569814;

PAR_OPIOID_MDL_0000725465; PAR_OPIOID_MDL_0000744805;

PAR_OPIOID_MDL_0000755229; PAR_OPIOID_MDL_0001136473;

PAR_OPIOID_MDL_0000795817;  PAR_OPIOID_MDL_0002104849.

**Topic 37:** The Process(es) used to determine whether You would invite particular health care professionals to participate in any events, presentations, conferences, meals, research, or educational or promotional efforts, and what level compensation, reimbursement, or transfer of anything of value (including none) to provide in exchange for such participation, including any databases, records, systems, policies, or procedures to track, guide, or regulate such Process.

**Supplemental Response to Topic 37:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about Par's "relationship with, any monies provided by You to, anything of value conferred by You on, and identity of the Persons who interacted with" the individuals and entities listed, no matter how tangential the connection to the allegations as to Par.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint.  As such, Par did not invite health care professionals to participate in any events, presentations, conferences, meals, research, or educational or promotional efforts.

**Topic 39:** Any effort You made (directly or through any third party) to collaborate with one  or more other pharmaceutical manufacturers or distributors concerning Marketing, use, prescribing, sale, distribution, or regulation of any one or the class of Opioid Products, including any collaborative lobbying efforts concerning any of the foregoing.

**Supplemental Response to Topic 39:**

Par incorporates its Continuing Objections and Continuing Objections to Definitions set forth above.  Par objects that this topic is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case in that it seeks information about "Any effort You made . . . to collaborate with one or more other pharmaceutical manufacturers or distributors concerning Marketing, use, prescribing, sale,

distribution, or regulation of any one or the class of Opioid Products," no matter how tangential the connection to the allegations as to Par.  Par further objects that the terms "collaborate" and "collaborative lobbying" are overly broad and vague and ambiguous because they is subject to multiple different interpretations.

Subject to and without waiver of the foregoing objections, Par responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its Schedule II opioid medications in the manner alleged in the Complaint.  Par sells its products to distributor customers.  Other than contract manufacturing arrangements and excluding affiliate companies, Par has not collaborated with other manufacturers concerning the marketing, prescribing, sale, distribution, or regulation of its Schedule II opioid medications.

Dated: June 27, 2019                      Respectfully submitted,

/s/ Jonathan L. Stern
One of the Attorneys for Defendants Par
Pharmaceutical, Inc. and Par Pharmaceutical
Companies, Inc.

Jonathan L. Stern (admitted pro hac vice)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
Jonathan.Stern@arnoldporter.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 27th day of June 2019, I caused the foregoing to be served via electronic mail on the individuals on the attached service list.

<u>/s/ Jonathan L. Stern</u>
Jonathan L. Stern

## SERVICE LIST

*Counsel for Plaintiff County of Cuyahoga*

Robert J. Triozzi, Director
Cuyahoga County Department of Law
2079 East 9th Street, 7th floor
Cleveland, Ohio 44115
Telephone: (216) 698-6464
Facsimile: (216) 698-2744
RTriozzi@cuyahogacounty.us

Robin M. Wilson
County Administrative Headquarters
2079 East 9th Street, 7th Floor
Cleveland, Ohio 44115
Telephone: (216) 443-7042
Facsimile: (216) 698-2744
rwilson@cuyahogacounty.us

Frank Gallucci
PLEVIN & GALLUCCI COMPANY, L.P.A.
55 Public Square
Suite 2222
Cleveland, Ohio 44113
FGallucci@pglawyer.com

Paul J. Napoli
Joseph L. Ciaccio
Salvatore C. Badala
NAPOLI SHKOLNIK, PLLC
400 Broadhollow Road - Suite 350
Melville, New York 11747
pnapoli@napolilaw.com

Scott Elliot Smith
SCOTT ELLIOT SMITH LP A
5003 Horizons Dr. Ste. 200
Columbus Oh. 43220
Telephone: (614) 846-1700
ses@sestriallaw.com

Leo M. Spellacy, Jr., Esq.
THRASHER DINSMORE & DOLAN LPA
1111 Superior Avenue, Suite 412

Cleveland, OH 44114
Telephone: (216) 255-5431
Fax: (216) 255-5450
lspellacy@tddlaw.com

*Counsel for City of Cleveland Plaintiffs*

David J. Butler
Adrian D. Thompson
David H. Wallace
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44144
Tel: 216-241-2838
dbutler@taftlaw.com
athompson@taftlaw.com
dwallace@taftlaw.com

Paul T. Farrell, Jr.
GREENE, KETCHUM, FARRELL, BAILEY & TWEED, LLP
419 11th Street (25701)
PO Box 2389
Huntington, WV 25724
Tel: 800-479-0053
paul@greeneketchum.com

Peter F. Weinberger
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 44114-1149
Telephone: (216) 696-3232
pweinberger@spanglaw.com

R. Edison Hill
HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311
Tel: 304-345-5667
rehill@hpcbd.com

Peter J. Mougey
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR PA
316 S. Baylen Street

Suite 600
Pensacola, FL 32502
Telephone: (805) 435-7000
pmougey@levinlaw.com

J. Burton LeBlanc
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1000
Dallas, TX 75219
Tel: 214-521-3605
bleblanc@baronbudd.com

Michael J. Fuller, Jr.
MCHUGH FULLER LAW GROUP, PLLC
97 Elias Whiddon Rd.
Hattiesburg, MS 39402
Tel: 601-261-2220
mike@mchughfuller.com

Anthony J. Majestro
POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel: 304-346-2889
amajestro@powellmajestro.com

*Counsel for County of Summit Plaintiffs*

Donald W. Davis
Adam D. Fuller
Elizabeth Shively Boatwright
Brennan, Manna & Diamond, LLC
75 East Market Street
Akron, Ohio 44308
Telephone: (330) 253-5060
Facsimile: (330) 253-1977
dwdavis@bmdllc.com
adfuller@bmdllc.com
esboatwright@bmdllc.com

Linda Singer
Lisa Saltzburg
Motely Rice LLC
401 9th Street NW
Suite 1001
Washington, DC 20004

Telephone: (202) 386-9626
lsinger@motleyrice.com
lsaltzburg@motleyrice.com

*Liaison Counsel for Plaintiffs*

Peter Henry Weinberger
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 44114-1149
Telephone: (216) 696-3232
pweinberger@spanglaw.com

Steven J. Skikos
SKIKOS CRAWFORD SKIKOS & JOSEPH
One Sansome Street, Suite 2830
San Francisco, CA 94104
Telephone: (415) 546-7300
sskikos@skikoscrawford.com

Troy A. Rafferty
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR PA
316 S. Baylen Street
Suite 600
Pensacola, FL 32502
Telephone: (805) 435-7000
trafferty@levinlaw.com