IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THE COUNTY OF SUMMIT, OHIO, ET AL.,<br>*Plaintiffs*,<br>v.<br><br>PURDUE PHARMA LP, ET AL.,<br>*Defendant* | MDL NO. 2804<br>CASE NO. 17-MD-2804<br><br>JUDGE: DAN AARON POLSTER<br><br>**DEFENDANT DISCOUNT DRUG MART, INC.'S REDACTED MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

## I. DDM'S DISTRIBUTION AND SALE OF PRESCRIPTION OPIOIDS

DDM, like the other "Pharmacy Defendants," is an operator of retail pharmacy chains. Plaintiffs have raised no claim concerning DDM's actions as a *pharmacy*. See Doc #: 1203 - Opinion and Order at p. 2. Instead, Plaintiffs' claims against DDM relate to its conduct as distributor of prescription opioids to its own pharmacies. *Id.* As a self-distributor, DDM distributed only to its own pharmacists and did not distribute to any third-parties—independents, internet pharmacies, "pill mills," pain clinics, or otherwise. See Exhibit One – DDM's Answers to Rog. Nos. 17, 24; Exhibit Two - Briscoe Dep. at 22:4-8, 51:17-19; Exhibit Three - Ratycz Dep. at 100:15-20. In addition, DDM never marketed opioids. See Exhibit One - DDM's Answers to Rog. Nos. 20, 28.

## II. DDM IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

The "Pharmacy Defendants," which includes DDM, have filed joint briefs on causation, statute of limitations, and civil conspiracy.[1] Mindful of the court's admonition

---

[1] As to Plaintiffs' civil conspiracy claim against DDM (Count 11), DDM rests on the arguments presented in the Pharmacy Defendants' joint brief, and therefore does not reiterate those arguments herein.

to avoid duplicative briefing, DDM incorporates those briefs by reference.  DDM submits this motion to address the remaining claims not addressed in the joint briefs, as well as to present individualized arguments as to the causation and the statute of limitations.  It is important to note that other than Dr. Craig McCann (who is an economist that offered no substantive opinions in support of Plaintiffs' claims – see, e.g., McCann Dep., Vol. 1, at p. 149:3-150:9), none of Plaintiffs' expert witnesses make reference to DDM in their expert reports – let alone provide any opinions that support any of Plaintiffs' claims against DDM.

### A.     Plaintiffs' Claims Are Time Barred

Plaintiffs did not add DDM as a defendant until they filed their Second Amended Complaints in May 18, 2018.  Because the longest possible statute of limitations applicable to the claims against DDM is four years, any claim based on distributions/shipments made by DDM prior to May 18, 2014 are time barred.

DDM never distributed Schedule II drugs, only distributed one relevant product, HCPs, and stopped distributing that product when the DEA rescheduled it from Schedule III to Schedule II on October 6, 2014. Exhibit One - DDM's Answers to Rog. No. 17; Exhibit Four - Briscoe Decl. ¶¶ 2, 5. Thus, because the statute of limitations for DDM goes back to May 18, 2014, there is only a four-and-a-half month window of conduct by DDM within the limitations period.  Consequently, the overwhelming majority of the claims against DDM are time-barred, and DDM is entitled to judgment as a matter of law on those portions of the claims.

B. **Plaintiffs Cannot Prove That DDM Proximately Caused Their Injuries.**

DDM also submits this separate argument on causation because Plaintiffs must establish causation *separately for each defendant*, and the record is devoid of any evidence that *DDM* caused any harm to Plaintiffs. S*ee Sutowski v. Eli Lilly & Co.*, 82 Ohio St.3d 347, 696 N.E.2d 187 (1998); see also *Banas v. Shively*, 8th Dist. No. 96226, 969 N.E.2d 274, ¶ 26-29. Ohio law is clear that where "causation is premised on the total cumulative" effect of numerous actors, a defendant **cannot** be held liable unless its conduct taken individually "'had a *substantial* impact on the total.'" *Schwartz v. Honeywell Internatl., Inc.*, 153 Ohio St.3d 175, 180-181, 102 N.E.3d 477 (2018)(citing *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009). Put another way: "Where a plaintiff suffers a single injury as a result of the tortious acts of multiple defendants, the burden of proof is upon the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm." *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 653 N.E.2d 661 (1995)

Plaintiffs simply cannot meet this burden. Most obvious, there is no evidence connecting DDM's shipments (to its own pharmacies) to any alleged harm to Plaintiffs. There is no evidence that DDM's own pharmacies were ordering "excessive quantities of a limited variety of controlled substances while ordering few, if any, other drugs." Likewise, there is no evidence of *any* systematic diversion from DDM's supply chain.

Perhaps more importantly, according to Plaintiffs' own expert, Craig McCann, DDM distributed ▮▮▮▮▮▮% of the opioids legally distributed to the Plaintiff counties. See Exhibit Five – redacted excerpts of Expert Report of Craig McCann, Appx. 9 at pp.

3

3779, 3849.  And all of those opioids were distributed by DDM's own pharmacies to only those customers presenting a valid prescription.  Given DDM's *de minimus* market share, Plaintiffs cannot meet their heavy burden in demonstrating that DDM's self-distribution had any impact on the opioid crisis in Cuyahoga and Summit Counties – let alone a substantial impact.

### C. Plaintiffs' Statutory Nuisance Claim Is Moot, As DDM No Longer Engages In Any Conduct That Could Be Enjoined.  (Count No. 5)

Plaintiffs' statutory nuisance claim must be dismissed as moot.  This Court has acknowledged that this claim is limited to *forward-looking injunctive relief*. See Doc #: 1203 - Opinion and Order at p. 30.  Because DDM never distributed Schedule II drugs, only distributed one relevant product (HCPs), and stopped distributing that product when the DEA rescheduled it from Schedule III to Schedule II on October 6, 2014, there is no conduct to be enjoined (even assuming DDM committed violations warranting relief). Exhibit One - DDM's Answers to Rog. No. 17; Exhibit Four - Briscoe Decl. ¶¶ 2, 5. This claim is accordingly moot, and ripe for dismissal. *See, e.g.*, *Ailor v. City of Maynardville, Tennessee,* 368 F.3d 587, 600 (6th Cir.2004).

### D. DDM Did Not Create A Common Law Public Nuisance By Distributing An FDA-Approved Medication (Count No. 6).

Plaintiffs' common law nuisance claim fails because Plaintiffs can point to no evidence in the record demonstrating that DDM created a public nuisance. The evidence reveals that DDM distributed one type of FDA-approved opioid to its own pharmacies (which accounted for ▓▓▓▓▓% of the opioids at issue). For this same reason, there is

4

no evidence demonstrating that DDM distributed opioids to "rogue" internet pharmacies or pain clinics.  Consequently, Plaintiffs' nuisance claims fails as a matter of law.

### E. DDM's Distribution of Lawful Medications To Its Own Pharmacies Was Not Negligent (Count No. 7).

DDM is also entitled to summary judgment on Plaintiffs' negligence claim. This claim is premised on the theory that Defendants owed a common law duty not to create an illegal, secondary opioid "black" market. The record, however, is wholly devoid of any evidence supporting the conclusion that DDM created or contributed to such black market for opioids—much less that a black market was a foreseeable result of DDM's dispensing lawful medications to its own pharmacies. DDM distributed lawful opioids to its *own* pharmacies—*pharmacies that are not alleged to have committed any wrongdoing*. See Doc #: 1203 - Opinion and Order at p. 2. As outlined above, DDM's prescriptions accounted for [REDACTED]% of the opioids at issue in this matter. In other words, Plaintiffs cannot identify how DDM acted negligently or played any role in the opioid "black" market.

### F. Plaintiffs Have Presented No Evidence That DDM Committed Any Criminal Acts By Distributing Opioids (Count No. 9).

Plaintiffs' claim for injury through criminal acts under RC § 2307.60 also fails. First, and most obvious, a defendant must be convicted of a crime to be held liable under this provision, but there is no evidence that DDM has been charged with, much less convicted, of such a crime.  See *Ortiz v. Kazimer*, N.D.Ohio No. 1:11 CV 01521, 2015 WL 1400539, *12, *aff'd sub nom. Ortiz ex rel. Ortiz v. Kazimer*, 811 F.3d 848 (6th Cir.2016)(stating "Recovery depends on the existence of a criminal conviction.").

5

Second, R.C. 2925.02(B) includes a statutory "shield" for "pharmacists, owners of pharmacies, and other persons" whose conduct is in accordance with state law governing controlled substances. Plaintiffs can prove no regulatory violations by DDM.

Last, Plaintiffs cannot meet the requirements for liability set forth in R.C. 2925.02(A). To prevail, Plaintiffs are required to show either that DDM: (1) used "force, threat, or deception" to cause another to use a controlled substance or (2) that DDM furnished an individual with a controlled substance and thereby caused that person to suffer physical harm or become drug dependent. The record contains no evidence that supports either prong of the statute as to DDM, and this claim fails.

### G.  DDM Was Not Unjustly Enriched By Its Distribution Of A Lawful Medication (Count No. 10).

Count Ten is an unjust enrichment claim. Plaintiffs must prove that they conferred a benefit on DDM. Plaintiffs cannot satisfy this burden because there is no evidence that Plaintiffs have conferred any benefit of any kind *on DDM.* Rather, "[t]he beneficiaries of the city's expenditures are its own residents." *City of Cincinnati v. Beretta U.S.A. Corp.,* 1st Dist. Hamilton No. C-990729, 2000 WL 1133078, *7, *overturned on other grounds, Cincinnati v. Beretta U.S.A. Corp.,* 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136 (2002).[2] As a result, this claim fails as a matter of law and must be dismissed.

---

[2] While the Ohio Supreme Court later reversed the dismissal of the public nuisance and negligence claims, it did not review (and therefore let stand) the decision dismissing the unjust enrichment claim. *Beretta*, 2002-Ohio-2480 ¶ 1 n.1.

**III.     CONCLUSION**

In light of the foregoing, Plaintiffs' claims (Counts 5-7 and 9-11) fail as a matter of law, and Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted,

/s/ Timothy D. Johnson
Timothy D. Johnson (0006686)
CAVITCH FAMILO & DURKIN, CO. LPA
1300 East Ninth Street – 20th Fl.
Cleveland, Ohio  44114
(216)621-7860
 (216)621-3415 Fax
tjohnson@cavitch.com
*Attorney for Defendant Discount Drug Mart, Inc.*

**CERTIFICATE OF SERVICE**

A copy of the foregoing **DEFENDANT DISCOUNT DRUG MART, INC.'S REDACTED MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed and served this 19th day of July, 2019 on the Court's ECF system in accordance with Doc #: 1813.

/s/ Timothy D. Johnson
TIMOTHY D. JOHNSON
*Attorney for Defendant Discount Drug Mart, Inc.*
