# EXHIBIT F

```
 1              UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION
 3   IN RE: NATIONAL          )   MDL No. 2804
     PRESCRIPTION OPIATE      )
 4   LITIGATION,              )   Case No.
                              )   1:17-MD-2804
 5                            )
     THIS DOCUMENT RELATES TO )   Hon. Dan A.
 6   ALL CASES                )   Polster
                              )
 7
 8                    __ __ __
 9            Tuesday, January 15, 2019

                      __ __ __
10
         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
11                CONFIDENTIALITY REVIEW

                      __ __ __
12
13
14
15        Videotaped Deposition of GREGORY BEAM,
     held at 4206 South J.B. Hunt Drive, Rogers,
16   Arkansas, commencing at 8:36 a.m., on the
     above date, before Debra A. Dibble, Certified
17   Court Reporter, Registered Diplomate
     Reporter, Certified Realtime Captioner,
18   Certified Realtime Reporter and Notary
     Public.
19
20
21
                      __ __ __
22
            GOLKOW LITIGATION SERVICES
23     877.370.3377 ph | fax 917.591.5672
                deps@golkow.com
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

1    Janssen.

2              MR. ANDERSON:  Jon Anderson,

3    Jackson Kelly on behalf of

4    AmerisourceBergen.

5              VIDEOGRAPHER:  The court

6    reporter today, Debbie Dibble, will

7    please swear in the witness.

8              GREGORY BEAM,

9    having first been duly sworn, was examined

10   and testified as follows:

11             DIRECT EXAMINATION

12   BY MR. ECKLUND:

13       Q.    Good morning, Mr. Beam.

14   Moments ago the court reporter asked you to

15   take an oath.  What does that oath mean to

16   you today?

17       A.    That means under perjury of

18   law, I am bound to tell the truth.

19       Q.    And the whole truth?

20       A.    The whole truth.

21       Q.    Everything that you can recall,

22   your entire recollection?

23       A.    Yes, sir.

24       Q.    So throughout the day, that's

25   the expectation.

Highly Confidential - Subject to Further Confidentiality Review

```
 1                   February 1st, 2011.  Is that
 2    when you started at Walmart?
 3          A.      No, sir.
 4          Q.      When did you start at Walmart?
 5          A.      I started October of 2006.
 6          Q.      And what was your title in
 7    October 2006?
 8          A.      In October 2006, I hired as a
 9    drug diversion coordinator.
10          Q.      And was that your first
11    occasion as a drug diversion coordinator, or
12    did you come from another company with that
13    experience?
14          A.      I came from another company as
15    a district loss prevention supervisor.
16          Q.      Which company?
17          A.      Walgreens.
18          Q.      And within Walgreens, were you
19    responsible for drug diversion?
20          A.      Among other things, yes.
21          Q.      What other responsibilities did
22    you have within Walgreens?
23          A.      We had theft.  Shrink.  As well
24    as HR and employees relations matter.
25          Q.      When you talk about theft, are
```

Highly Confidential - Subject to Further Confidentiality Review

1    time I came on with Walmart.

2         Q.    And in 2006, you transitioned

3    from Walgreens to Walmart?

4         A.    Correct.

5         Q.    Okay.  And where did you begin

6    working within Walmart?  What part of the

7    country?

8         A.    Here.

9         Q.    In Bentonville or Rogers?

10        A.    In Rogers.

11              I'm sorry, Bentonville.  Home

12   office.

13        Q.    Okay.  So you start in

14   Bentonville, home office, and at that point

15   you had a somewhat different job

16   responsibility than what you had at

17   Walgreens; correct?

18        A.    Correct.

19        Q.    Okay.  How did you become

20   trained in your new role and responsibility

21   within Walmart?

22        A.    That was -- came from both

23   personal knowledge as well as experience in

24   some of the drug investigations that were

25   completed as special agent with OSI, as well

Highly Confidential - Subject to Further Confidentiality Review

1    as conducting similar pharmacy-related

2    investigations within Walgreens.

3           Q.     Okay.  And when you began at

4    Walmart, were you focused on one category of

5    pharmacy products, all categories of pharmacy

6    products?

7           A.     We were focused on pharmacy

8    operations in total, which means all

9    categories of pharmacy products and process.

17                 (Phone interruption.)

18                 VIDEOGRAPHER:  8:54.  We are

19          off the video record.

20                 (Recess taken, 8:57 a.m. to

21          8:58 a.m.)

22                 THE VIDEOGRAPHER:  8:58.  We

23          are on the video record.

Highly Confidential - Subject to Further Confidentiality Review

5        Q.    (BY MR. ECKLUND) You mentioned

6  that sometimes good people make bad

7  decisions.  Did you report any of those good

8  people who made these bad decisions to local

9  law enforcement?

10       A.    We did.

11       Q.    How many?

12       A.    In fact, every investigation

13  where diversion is proven, we have the

14  evidence, that information is referred for

15  prosecution and police are notified in each

16  individual case.

17       Q.    Okay.  So in every instance

18  where you have sufficient information, where,

19  using your term, where diversion is proven,

20  and where you have the evidence, that

21  information is referred to prosecution and

22  police are notified in each individual case.

23        Did you -- when you had

24  occasions to suspect diversion, did you refer

25  that information, whether it was proven or

Highly Confidential - Subject to Further Confidentiality Review

1   not proven, just suspected, to DEA?

2                MR. VARNADO:  Object to form.

3                THE WITNESS:  That information

4        was reported if there were losses

5        connected.  But in terms of referring

6        for local law enforcement, we did not

7        refer to local law enforcement unless

8        there is prosecutable evidence there.

9        Q.    (BY MR. ECKLUND)  I was

10  specifically asking about DEA.  So it would

11  have been reported to DEA.  And then as far

12  as referral for prosecution asks you

13  employees who were involved, that was only

14  when you felt that the evidence was clear?

15  That there was prosecutable evidence?

16       A.     Yes.

17       Q.     Okay.

18       A.     And the -- in reporting to the

19  DEA, each one of these investigations are

20  coordinated through compliance, who completes

21  the 106s, per their guidelines.  And per

22  their instructions.

23                What we do is submit the facts

24  to local law enforcement, our state law

25  enforcement, for additional action to include

1    prosecution.

