# EXHIBIT T

1         UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF OHIO
3              EASTERN DIVISION
4         ~~~~~~~~~~~~~~~~~~~~~~
5  IN RE:  NATIONAL PRESCRIPTION    MDL No. 2804
   OPIATE LITIGATION
6                                   Case No.
                                    17-md-2804
7
                                    Judge Dan Aaron
8                                   Polster
9  This document relates to:
10 The County of Cuyahoga v. Purdue Pharma, et
   al., Case No. 17-OP-45004
11
   City of Cleveland, Ohio v. Purdue Pharma L.P.,
12 et al., Case No. 18-OP-45132
13 The County of Summit, Ohio, et al. v. Purdue
   Pharma L.P., et al., Case No. 18-OP-45090
14
            ~~~~~~~~~~~~~~~~~~~~~~
15
16
         Videotaped Deposition of
17            SHANE BARKER
18         November 28, 2018
               9:03 a.m.
19
20            Taken at:
21      Sheraton Suites Akron
     1989 Front Street - Summit Room
22         Cuyahoga Falls, Ohio
23
24
25      Stephen J. DeBacco, RPR

Page 16

1  Jones Day on behalf of Walmart.
2              MR. LONERGAN:  Sam Lonergan with
3  Arnold & Porter Kaye Scholer on behalf of Endo
4  and Par.
5              MR. SQUIRE:  Russell Squire from
6  Covington & Burling on behalf of McKesson.
7              MS. WU:  Laura Flahive Wu, also of
8  Covington, on behalf of McKesson.
9              THE VIDEOGRAPHER:  Will counsel on
10  the phone please state appearances for the
11  record.
12             MS. BECKER:  Lily Becker of Morgan
13  Lewis on behalf of the Teva defendants.
14             THE VIDEOGRAPHER:  Will the court
15  reporter please swear in the witness.
16        SHANE BARKER, of lawful age, called for
17  examination as provided by the Federal Rules of
18  Civil Procedure, being by me first duly sworn,
19  as hereinafter certified, deposed and said as
20  follows:
21           EXAMINATION OF SHANE BARKER
22  BY MS. WU:
23       Q.    Good morning, Captain Barker.
24       A.    Good morning.
25       Q.    Could you please state your full

Page 30

```
 1        A.    I was doing all three of those
 2   things I just mentioned.  I didn't get hired as
 3   a deputy for almost a year.
 4        Q.    Who hired you as a deputy?
 5        A.    Sheriff Troutman, Summit County
 6   Sheriff's Office.
 7        Q.    And what was your title at the time
 8   you were hired?
 9        A.    Deputy sheriff.
10        Q.    What was the nature of your
11   responsibilities in that role?
12        A.    When I first got hired in the
13   sheriff's office, I worked in the corrections
14   division for a couple years, and then I got
15   transferred to patrol as a deputy, until I was
16   promoted to sergeant in 1999.
17        Q.    What were the approximate dates of
18   your tenure as a deputy in the corrections
19   division?
20        A.    It would have been from 1994 until
21   about 1997, so just a little over three years,
22   as I recall.
23        Q.    What were your responsibilities in
24   the corrections division during the period 1994
25   to 1997?
```

1  Q. When did the sheriff's department
2  first become concerned about fentanyl in the
3  Summit area?
4  MR. LEDLIE: Object to the form of
5  the question. He's a fact witness. He's not a
6  30(b)(6) for the sheriff's department.
7  Q. You can still --
8  A. Still answer?
9  Q. Yes, please.
10 A. So I know specifically when I
11 became aware of it. As -- as a captain, I was
12 assigned to the corrections bureau, and we got
13 a letter in, and it had a patch that people get
14 and they put on their -- for medical treatment.
15 And it was being sent in through the mail for
16 the inmates to get. And one of our inmate
17 service workers who screens the mail found it.
18 So that was probably very early
19 2011, 2012. I start -- I personally had
20 knowledge that we were worried about it getting
21 in -- into the jail.
22 Q. So you're describing your own
23 personal experience encountering fentanyl in
24 about 2011. What was the nature of your
25 employment for the sheriff's department at that

Page 337

```
 1   BY MS. MORRISON:
 2        Q.    Good afternoon, Captain Barker.  My
 3   name is Kristin Morrison.  I represent Walmart.
 4             Are you aware that Summit County
 5   has sued my climate -- my client, Walmart, in
 6   this case?
 7        A.    I am aware, yes.
 8        Q.    And what is the source of your
 9   knowledge about my client, Walmart, being sued
10   in this case?
11        A.    They were being sued because there
12   was a large amount of prescriptions that were
13   being filled, and it was -- it was a large
14   increase from the years before, and nobody said
15   anything about it.
16        Q.    Can you personally point to any
17   specific conduct by Walmart related to opioids
18   that caused any harm to Summit County?
19        A.    No, I cannot.
20        Q.    Okay.  Are you aware that Summit
21   County also has sued Walgreens in this lawsuit?
22        A.    Yes.
23        Q.    And what is the basis of your
24   knowledge about the suit against Walgreens?
25             MR. LEDLIE:  You can answer the
```