# EXHIBIT M

Highly Confidential - Subject to Further Confidentiality Review

```
 1                 UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION
 3      IN RE: NATIONAL               )
        PRESCRIPTION                  )   MDL No. 2804
 4      OPIATE LITIGATION             )
                                      )   Case No.
        _____        )
 5      THIS DOCUMENT RELATES TO:     )   1:17-MD-2804
                                      )
 6      The County of Summit, Ohio    )   Hon. Dan A.
        et al. v. Purdue              )   Polster
 7      Pharma L.P., et al.           )
        Case No. 17-OP-45004          )
 8                                    )
        The County of Cuyahoga v.     )
 9      Purdue Pharma L.P., et al.    )
        Case No. 18-OP-45090          )
10
                    TUESDAY, APRIL 30, 2019
11
          HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
12                 CONFIDENTIALITY REVIEW
                          - - -
13
14             Videotaped deposition of Thomas G.
15      McGuire, Ph.D., Volume II, held at the offices
16      of Robins Kaplan LLP, 800 Boylston Street,
17      Suite 2500, Boston, Massachusetts, commencing
18      at 8:31 a.m., on the above date, before
19      Carrie A. Campbell, Registered Diplomate
20      Reporter and Certified Realtime Reporter.
21
22
23
                              - - -
24             GOLKOW LITIGATION SERVICES
           877.370.3377 ph | 917.591.5672 fax
25                  deps@golkow.com
```

Page 617

1   A.   No, this is my first public
2   nuisance venture.
3   Q.   Prior to this engagement, have
4   you ever served as a testifying expert
5   offering opinions regarding a public
6   nuisance?
7        MR. SOBOL:  Objection.  Asked
8   and answered.
9        THE WITNESS:  No, this is my
10  first public nuisance venture.
11  QUESTIONS BY MR. KEYES:
12  Q.   Prior to this engagement, has
13  Compass Lexecon ever worked on a case
14  involving whether a public nuisance existed?
15  A.   I don't know.
16  Q.   Prior to this engagement, has
17  Compass Lexecon ever worked on a case
18  attempting to determine the magnitude of
19  harms or costs associated with the public
20  nuisance?
21  A.   I don't know.
22  Q.   Prior to this engagement, has
23  Greylock McKinnon Associates ever worked on a
24  case involving whether a public nuisance
25  existed?

Page 618

1   A.   I don't know.
2   Q.   Prior to this engagement, has
3   Greylock McKinnon Associates ever worked on a
4   case attempting to determine the magnitude of
5   harms or costs associated with the public
6   nuisance?
7   A.   I don't know.
8   Q.   In paragraph 21 of your report
9   on public nuisance --
10       Are you there?
11  A.   Yes, I'm here.
12  Q.   -- you discuss physicians being
13  influenced by, quote, "Detailing visits by
14  representatives of brand drug companies and
15  other promotional activities by drug
16  companies."
17  A.   Excuse me, I think I must be on
18  the wrong page.
19       Can you give me another --
20  Q.   Paragraph 21.
21  A.   Paragraph 21.  Okay.
22       Okay.
23  Q.   Are you there?
24  A.   Yes.
25  Q.   Okay.  In paragraph 21 you

Page 619

1   discuss physicians being influenced by,
2   quote, "Detailing visits by representatives
3   of brand drug companies and other promotional
4   activities by drug companies."
5        Do you see that?
6   A.   I see it.
7   Q.   Have you studied detailing
8   visits by manufacturing defendants to
9   physicians?
10  A.   Well, I've studied in a sense
11  of reading about it as part of my
12  professional --
13  Q.   Reading about them?
14  A.   Yes, that's what I said.
15  Q.   Okay.  Have you done any
16  independent study yourself?
17       MR. SOBOL:  Objection.
18  QUESTIONS BY MR. KEYES:
19  Q.   Of detailing visits?
20       MR. SOBOL:  Objection.
21       THE WITNESS:  Okay.  Well, I --
22  in sort of a general term, that's an
23  independent study.  It's me.  It's
24  reading.  That's a kind of study.
25       What I haven't done is

Page 620

1   independently assessed the empirical
2   connection between detailing visits
3   and sales or shipments.
4   QUESTIONS BY MR. KEYES:
5   Q.   You say in paragraph 21, quote,
6   "In the context of prescription opioids,
7   manufacturers were purveying biased
8   information."
9   A.   I'm sorry, you've lost me
10  again.
11  Q.   You say in paragraph 21, "In
12  the context of prescription opioids" --
13       MR. SOBOL:  It's third line
14  down.
15       THE WITNESS:  Okay.  Okay.
16  QUESTIONS BY MR. KEYES:
17  Q.   Okay.  Have you studied what
18  false information was disseminated by
19  manufacturers to physicians?
20  A.   Well, I'm relying on other
21  experts for making that determination.
22  Q.   Who?
23  A.   Well, as it says in the very
24  next sentence there, "As explained in the
25  expert report of Matthew Perri."