# EXHIBIT 16

Highly Confidential - Subject to Further Confidentiality Review

```
 1              IN THE UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF OHIO

 2                     EASTERN DIVISION

 3   IN RE:  NATIONAL       :  MDL No. 2804

     PRESCRIPTION OPIATE    :

 4   LITIGATION             :  Case No. 17-md-2804

                            :

 5   APPLIES TO ALL CASES   :  Hon. Dan A. Polster

                            :

 6                          :

 7

 8              HIGHLY CONFIDENTIAL

 9      SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

10

11                  - - - -

12              DECEMBER 20, 2018

13                  - - - -

14    VIDEOTAPED DEPOSITION OF JOSEPH EDWARD MILLWARD,

15   taken pursuant to notice, was held at Marcus &

16   Shapira, One Oxford Center, 35th Floor, Pittsburgh,

17   Pennsylvania 15219, by and before Ann Medis,

18   Registered Professional Reporter and Notary Public in

19   and for the Commonwealth of Pennsylvania, on

20   Thursday, December 20, 2018, commencing at 9:07 a.m.

21                  - - - -

22           GOLKOW LITIGATION SERVICES

          877.370.3377 ph | 917.591.5672 fax

23               deps@golkow.com

24

25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  MS. CHARLES:  Amber Charles from

 2    Covington & Burling representing McKesson

 3    Corporation.

 4                  MR. BARNES:  Robert Barnes, Marcus &

 5    Shapira, HBC.

 6                  MR. KOBRIN:  Joshua Kobrin from Marcus &

 7    Shapira.  I also represent HBC.

 8                  THE VIDEOGRAPHER:  The court reporter

 9    today is Ann Medis, and she will now please swear

10    in the witness.

11                     JOSEPH E. MILLWARD,

12       having been first duly sworn, was examined

13                 and testified as follows:

14                        EXAMINATION

15    BY MR. HUDSON:

16       Q.   Good morning, sir.  Could you please

17    state your name for the record.

18       A.   Joseph Edward Millward.

19       Q.   And, Mr. Millward, my name is Ty Hudson,

20    and I represent several of the plaintiffs in this

21    matter.

22       Where do you currently reside?

23       A.   Erie, Pennsylvania.

24       Q.   And you are a former employee of Giant

25    Eagle?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.   I am.

 2        Q.   And Giant Eagle owns HBC Service

 3   Company; is that right?

 4        A.   Correct.

 5        Q.   And are you represented by counsel here

 6   today?

 7        A.   I am.

 8        Q.   And are Mr. Barnes and Josh your

 9   attorneys?

10        A.   Yes, they are.

11             MR. HUDSON:  And, Josh, I apologize for

12   mispronouncing your last name.

13   BY MR. HUDSON:

14        Q.   And are they paying for your services

15   here today or is HBC?

16        A.   HBC.

17        Q.   Have you had your deposition taken

18   before?

19        A.   Yes.

20        Q.   How many times?

21        A.   Once.

22        Q.   And what was the subject matter of the

23   litigation?

24        A.   It was an employment matter.

25        Q.   Were you a party to the matter?
```

Highly Confidential - Subject to Further Confidentiality Review

1    an investigation could be fully fleshed out.

2        Q.   That was if a flag was generated by the

3    person you had hired to do investigation --

4        A.   Correct.

5        Q.   -- with this Supply Logic program?

6        A.   Correct.  His name was Jason Mullen.

7        Q.   And he could do these investigations and

8    he could stop the shipment when that store made an

9    order if he found there was a reason to

10   investigate that store; is that correct?

11       A.   That is correct.

12       Q.   Now, were there other situations in

13   which you could not necessarily stop a shipment

14   even after you identified an order of interest?

15       A.   So the Kayla report was a report that

16   came out the next day after a store had received

17   the order, and that's where that store had already

18   received it.  So it afforded the opportunity to

19   investigate at that point and stop future orders

20   it determined to be suspicious and then

21   subsequently reported as required.

22       Q.   Did you ever do that, stop future

23   orders?

24       A.   We did.

25       Q.   And was there anything else you could do

Highly Confidential - Subject to Further Confidentiality Review

1    even if the order had been started to be filled at

2    the warehouse or even filled at the warehouse and

3    shipped?  Had you lost control of the order?

4         A.   Because, as stated earlier, Giant Eagle

5    distributed to itself, we were our customer, we

6    knew everything about the characteristics of our

7    store and had control of and control of the

8    product from where it entered into the DC till it

9    left in a prescription for an end user patient.

10        If something needed to be quarantined and

11   removed from dispensing stock, we had the ability

12   to have our stores pull that aside, if necessary,

13   to prevent it from being dispensed.

14        Q.   You talked about a visit to Purdue that

15   you made in order to see their practices.  Why did

16   Giant Eagle visit Purdue?

17        A.   It was a conference call.  It was a

18   conference call that we had.  And I believe Purdue

19   reached out to us through the purchasing group,

20   put in contact with me for George and I to have a

21   conference call, again, along the lines of the

22   Thrifty White, for example.

23        It was just another example of reaching out

24   to determine what are some other things other

25   organizations -- now Purdue being very different