# EXHIBIT 23

Highly Confidential - Subject to Further Confidentiality Review

```
 1          IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF OHIO
 3                    EASTERN DIVISION
 4                         - - -
 5

    IN RE:  NATIONAL          :   HON. DAN A.
 6  PRESCRIPTION OPIATE       :   POLSTER
    LITIGATION                :
 7                            :
    APPLIES TO ALL CASES      :   NO.
 8                            :   1:17-MD-2804
                              :
 9
                - HIGHLY CONFIDENTIAL -
10
     SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
11
                       VOLUME I
12
                         - - -
13
                    April 17, 2019
14
                         - - -
15
16              Videotaped deposition of
    THOMAS PREVOZNIK, taken pursuant to
17  notice, was held at the law offices of
    Williams & Connolly, 725 12th Street,
18  Washington, D.C., beginning at 9:11 a.m.,
    on the above date, before Michelle L.
19  Gray, a Registered Professional Reporter,
    Certified Shorthand Reporter, Certified
20  Realtime Reporter, and Notary Public.
21                       - - -
22
              GOLKOW LITIGATION SERVICES
23     877.370.3377 ph | 917.591.5672 fax
                  deps@golkow.com
24
```

```
 1                DEA-Prevoznik-1.)
 2                  (Document marked for
 3             identification as Exhibit
 4                DEA-Prevoznik-2.)
 5    BY MS. MAINIGI:
 6         Q.    The notice of videotaped
 7    30(b)(6) deposition for your testimony
 8    today.
 9               Do you see that?
10         A.    Yes, I do.
11         Q.    And do you see that attached
12    to the notice is a letter dated March 22,
13    2019, from the Department of Justice
14    addressed to myself, and Ms. Singer of
15    Motley Rice?
16         A.    Yes.
17         Q.    Have you had a chance to
18    review, either alone or with your
19    counsel, the substance of this March 22nd
20    letter as well as the notice of
21    deposition?
22         A.    Yes, I have.
23         Q.    And do you understand that
24    you are here today testifying in a
```

1  30(b)(6) capacity on behalf of the Drug
2  Enforcement Administration?
3       A.    Yes, I do.
4       Q.    And as I understand it, you
5  will be testifying as to certain topics
6  designated consistent with the letter
7  dated March 22, 2019, correct?
8       A.    Correct.
9       Q.    Okay.  Now, if you could
10 turn to the letter itself, Mr. Prevoznik.
11 And I'm looking specifically at Page 2 of
12 the letter.
13      A.    Okay.
14      Q.    You have been designated to
15 provide testimony on Topic 2, DEA's
16 interpretation and enforcement of and
17 practices related to 21 U.S.C. Section
18 823 and 21 C.F.R. Section 1301.74,
19 subject to the limitations set forth by
20 DOJ in this letter, correct?
21      A.    Correct.
22      Q.    How -- I notice,
23 Mr. Prevoznik, that Exhibit 3 that is in
24 front of you, is a deposition prep chart,

```
 1              the characterization.
 2              THE WITNESS:  Nationwide,
 3       correct.
 4   BY MS. MAINIGI:
 5       Q.    Instead, one-off guidance
 6   was perhaps provided in the context of
 7   individual distributor meetings, correct?
 8       A.    Yes.  Along with the MOAs
 9   and the settlements that were done.
10       Q.    And is there documentation
11   of what was said at the individual
12   distributor meetings?
13       A.    It would be the PowerPoints
14   and the report -- after report.
15       Q.    And this is an internal DEA
16   report?
17       A.    Yes.
18       Q.    And have you reviewed those
19   internal DEA reports for the purpose of
20   preparing for your testimony today?
21       A.    Some of them.
22       Q.    Now, does the DEA agree that
23   there's more than one way to design and
24   operate a system that can identify and
```

1    report suspicious orders?

2        A.    Yes.

3        Q.    And there's no single

4    feature that makes a suspicious order

5    monitoring system compliant, correct?

6        A.    Correct.

7        Q.    And the DEA leaves it up to

8    the registrant to design a system that

9    works with its own business model and

10    customer base, correct?

11        A.    Correct.

12        Q.    Does it matter to the DEA

13    whether a registrant reviews orders

14    manually or uses an automated system?

15        A.    No, it doesn't matter.

16        Q.    Other than requiring that

17    the report, suspicious order report

18    clearly indicate that the order is

19    suspicious, does DEA require suspicious

20    order reports to follow a particular

21    format?

22        A.    That's correct.

23        Q.    Let me ask the question

24    again.  The DEA does not require

Highly Confidential - Subject to Further Confidentiality Review

```
 1         IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF OHIO
 3                    EASTERN DIVISION
 4                        - - -
 5
      IN RE:  NATIONAL         :   HON. DAN A.
 6    PRESCRIPTION OPIATE      :   POLSTER
      LITIGATION               :
 7                             :
      APPLIES TO ALL CASES     :   NO.
 8                             :   1:17-MD-2804
                               :
 9
                  - HIGHLY CONFIDENTIAL -
10
       SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
11
                        VOLUME II
12
                         - - -
13
                     April 18, 2019
14
                         - - -
15
16              Continued videotaped
     deposition of THOMAS PREVOZNIK, taken
17   pursuant to notice, was held at the law
     offices of Williams & Connolly, 725 12th
18   Street, Washington, D.C., beginning at
     8:16 a.m., on the above date, before
19   Michelle L. Gray, a Registered
     Professional Reporter, Certified
20   Shorthand Reporter, Certified Realtime
     Reporter, and Notary Public.
21
                         - - -
22
             GOLKOW LITIGATION SERVICES
23      877.370.3377 ph | 917.591.5672 fax
                  deps@golkow.com
24
```

Golkow Litigation Services                                    Page 410

```
 1                    Retail chain pharmacies
 2   commonly use a self-distributing model
 3   where they distribute to chain pharmacy
 4   locations that they own.
 5                    MR. FINKELSTEIN:  Objection.
 6          Scope.  Answer if you know.
 7                    THE WITNESS:  Some do, and
 8          some have changed.
 9   BY MR. STEPHENS:
10          Q.    Okay.  For example,
11   Walmart's distribution centers only
12   distributed to Walmart pharmacies at
13   Walmart store locations?
14                    MS. SINGER:  Objection.
15                    MR. FINKELSTEIN:  Objection.
16          Scope.  Calls for speculation.
17                    THE WITNESS:  That was
18          correct, yes.
19   BY MR. STEPHENS:
20          Q.    All right.  I'd like to ask
21   you some questions about Topic 3 related
22   to the guidance that DEA provides
23   regarding the adequacy of SOM systems.
24          Okay?
```

```
 1   acknowledged in presentations that it
 2   gave that no chain pharmacies were rogue
 3   pharmacies, right?
 4          A.   Correct.
 5               MR. FINKELSTEIN:  Hang on
 6          one second.  I am just reading the
 7          question.
 8               Okay.
 9   BY MR. STEPHENS:
10          Q.   Your answer was "correct,"
11   right?
12          A.   Yes.
13          Q.   Walmart, CVS, Rite Aid,
14   Walgreens, HBC Giant Eagle are all chain
15   pharmacies, true?
16          A.   True.
17          Q.   DEA is generally aware that
18   Walmart only distributes controlled
19   substances to its own Walmart store
20   pharmacies, right?
21               MR. FINKELSTEIN:  Objection.
22          Scope.  Calls for speculation.
23               THE WITNESS:  Well, that
24          just changed.  But prior to the
```

```
 1            change, yes.
 2   BY MR. STEPHENS:
 3       Q.   Okay.  And the change now is
 4   that they don't distribute at all, right?
 5       A.   Correct.
 6       Q.   Okay.  Walmart did not
 7   distribute controlled substances to
 8   internet pharmacies, right?
 9            MR. FINKELSTEIN:  Scope.
10       Calls for speculation.
11            THE WITNESS:  I don't know.
12       I can't answer that, because I
13       don't know if there were any sales
14       store -- from the store to one of
15       those -- one of those potentially
16       rogue pharmacies.
17   BY MR. STEPHENS:
18       Q.   I'm only talking about --
19            MR. FINKELSTEIN:  Let him
20       finish his answer.
21            MR. STEPHENS:  I've let him
22       finish his answer.
23            MR. FINKELSTEIN:  No, you
24       haven't let him finish his answer.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                 MR. STEPHENS:  All morning
 2        long.
 3   BY MR. STEPHENS:
 4        Q.   Mr. Prevoznik, have I been
 5   interrupting you this morning?
 6        A.   I'm fine.
 7        Q.   Okay.  Thank you.
 8             CVS did not distribute
 9   controlled substances to rogue internet
10   pharmacies, correct?
11                 MR. FINKELSTEIN:  Vague.
12                 THE WITNESS:  Again, I don't
13            know if there were transactions
14            between the -- a pharmacy to
15            pharmacy.
16   BY MR. STEPHENS:
17        Q.   I'm talking about
18   distribution.
19                 MR. FINKELSTEIN:  Scope.
20            Incomplete hypothetical.  Vague.
21                 THE WITNESS:  Well, now that
22            you've added distribution in that,
23            then no, not to my knowledge.
24   BY MR. STEPHENS:
```

Highly Confidential - Subject to Further Confidentiality Review

1          Q.   My question, Mr. Prevoznik,
2     just to reconfirm, all deal with
3     distribution here.
4          A.   Okay.
5          Q.   Okay.  So I'll re-ask it.  I
6     think we got an answer.  But let me
7     re-ask it so the record is clear.
8               CVS did not distribute
9     controlled substances to rogue internet
10    pharmacies right?
11         A.   Not --
12              MS. SINGER:  Objection
13         scope.
14              MR. FINKELSTEIN:  Wait, Tom.
15              Scope.  Incomplete
16         hypothetical.  Vague.  We're past
17         seven hours, and you're still
18         outside the scope.  I'm going to
19         start instructing him not to
20         answer.
21              You can answer this time.
22              THE WITNESS:  Not to my
23         knowledge.
24    BY MR. STEPHENS:

```
 1                In 2018, the change that was
 2   made was DEA would now tell Distributor A
 3   that there are four distributors
 4   including yourself who are supplying
 5   Customer A; is that right?
 6           A.    Correct.
 7           Q.    Okay.
 8           A.    If I could --
 9           Q.    Yeah.
10           A.    -- just based on the base
11   code.  Drug base code.
12           Q.    Okay.  And what do you mean
13   by that?
14           A.    Like hydrocodone.  It's not
15   going into specific products.  It's
16   hydrocodone.
17           Q.    Okay.  In 2018, DEA did not
18   tell me, Distributor A, the quantities
19   that were being supplied to Customer A by
20   Distributor B, C, and D, correct?
21           A.    Correct.
22           Q.    In 2019, DEA amended its
23   process and now provides that
24   information?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.    Yes.  De-identified.
 2              MR. FINKELSTEIN:  Note for
 3        the record that the witness wasn't
 4        authorized to testify about
 5        decisions on or after
 6        February 2018.  But as the witness
 7        is knowledgeable, I'll allow
 8        testimony.
 9              MR. STEPHENS:  And -- and,
10        Counsel, for your benefit, I'm
11        just trying to identify time
12        frames and all that so the record
13        is complete.  That's it.
14              MR. FINKELSTEIN:  Okay.
15              MR. FARRELL:  The plaintiffs
16        continue their objection to any
17        attempt by you to establish
18        evidence that's probative of your
19        affirmative defenses and
20        prejudicial to our case in chief.
21              MR. STEPHENS:  I understand
22        that you don't want me to get
23        evidence that might hurt your
24        case, Paul, but I think that's my
```

```
 1                UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION
 3
        IN RE: NATIONAL          )
 4      PRESCRIPTION             )   MDL No. 2804
        OPIATE LITIGATION        )
 5      _____   )   Case No.
                                 )   1:17-MD-2804
 6                               )
        THIS DOCUMENT RELATES    )   Hon. Dan A.
 7      TO ALL CASES             )   Polster
 8
                      FRIDAY, MAY 17, 2019
 9
         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
10                 CONFIDENTIALITY REVIEW
11                           - - -
12             Videotaped deposition of Thomas
13      Prevoznik, Volume III, held at the offices of
14      WILLIAMS & CONNOLLY LLP, 725 Twelfth Street,
15      NW, Washington, DC, commencing at 8:10 a.m.,
16      on the above date, before Carrie A. Campbell,
17      Registered Diplomate Reporter and Certified
18      Realtime Reporter.
19
20
21                           - - -
22
                    GOLKOW LITIGATION SERVICES
23           877.370.3377 ph | 917.591.5672 fax
                       deps@golkow.com
24
25
```

1        to Walmart stores.
2    QUESTIONS BY MS. FUMERTON:
3        Q.    And your other commentary after
4    you said "yes" was simply pure speculation on
5    your part, correct?
6        A.    Correct.
7        Q.    Walmart was not a wholesale
8    distributor of controlled substances,
9    correct?
10            MR. FINKELSTEIN:  Scope.
11            THE WITNESS:  What do you mean
12       by that?
13   QUESTIONS BY MS. FUMERTON:
14       Q.    Well, various terms have been
15   used by plaintiffs when asking questions, and
16   what I'm distinguishing between are
17   distributors who distribute the wholesale to
18   many different pharmacies, independent and
19   the like, and a distributor like Walmart that
20   only self-distributes controlled substances.
21            Do you understand that
22   distinction?
23       A.    Yes, correct.
24       Q.    Okay.  So under that
25   distinction, Walmart is not a wholesale

Highly Confidential - Subject to Further Confidentiality Review

```
 1    distributor of controlled substances,
 2    correct?
 3                MR. FINKELSTEIN:  Scope.
 4                THE WITNESS:  Correct.
 5    QUESTIONS BY MS. FUMERTON:
 6         Q.    And that's true for Rite Aid as
 7    well, correct?
 8                MR. FINKELSTEIN:  Scope.
 9                THE WITNESS:  Yes.
10    QUESTIONS BY MS. FUMERTON:
11         Q.    And Walgreens, CVS and HBC
12    Giant Eagle, correct?
13                MR. FINKELSTEIN:  Scope.
14                THE WITNESS:  Yes.
15    QUESTIONS BY MS. FUMERTON:
16         Q.    And would you agree that
17    nonmembers -- well, let me strike that.
18                You would agree that there may
19    be reasons why nonmembers of HDMA do not need
20    to follow HDMA guidelines, correct?
21                MR. FINKELSTEIN:  Scope.
22         Vague.
23                THE WITNESS:  I don't even know
24         that the HDMA members have to follow
25         the guidelines either.  I mean, the
```