# EXHIBIT 33

CONFIDENTIAL
Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

Expert Report of Matthew Perri III, BS Pharm, PhD, RPh

March 25, 2019

CONFIDENTIAL

Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

**INTRODUCTION**

1. I was retained on behalf of Plaintiffs to evaluate the record and ascertain the significance, if any, of Defendants' activities from a marketing perspective. Specifically, I was tasked with evaluation of Defendants' marketing of prescription opioids. This Report provides a detailed summary of my findings.

**QUALIFICATIONS**

2. My name is Matthew Perri III. I am a Professor at the University of Georgia. I received my Bachelor of Science in Pharmacy from Temple University in Philadelphia, Pennsylvania in 1981. In 1985, I obtained my Doctor of Philosophy, with a dual concentration in Pharmacy and Marketing, from the University of South Carolina. I have held academic and administrative positions at the University of Georgia, College of Pharmacy, since 1985.

3. My current title is Professor and Associate Head of the Department of Clinical and Administrative Pharmacy at the College of Pharmacy. I am a member of the University's Graduate Faculty and Adjunct Faculty of Gerontology in the College of Public Health. I also serve as the Director of the Pharm D / MBA dual degree program, and I am an invited member of the University of Georgia Teaching Academy where the University's best teachers are recognized for their contributions to education.

4. At the University of Georgia, I teach graduate and undergraduate courses in health care and pharmaceutical marketing, management, research methods, patient communications, patient care skills laboratories, and biomedical statistics. Some of these courses attract students from the School of Public Health, the Terry College of Business, and the College of Education.

5. I have published articles in peer-reviewed journals such as Medical Care, Journal of Health Care Marketing, Health Marketing Quarterly, Value in Health, and the Journal of Health Communication. I have served as a peer-review referee for more than two dozen academic journals such as the Journal of Advertising, Clinical Therapeutics, Health Marketing Quarterly, the Journal of Health Care Marketing and Management, and Medical Care. I have also published

Case: 1:17-md-02804-DAP  Doc #: 1875-37  Filed: 07/19/19  4 of 5.  PageID #: 61811

CONFIDENTIAL

Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

**OPINIONS**

I hold the following opinions in this matter:

**Opinion 1:** Marketing is the process of creating value for customers through exchange. (In this Report, I will refer to customers of the pharmaceutical industry as "Customers."[9] When referencing general marketing principles, I will employ the term "customer.") Marketing is an integrated process of analysis, planning, implementation, and evaluation. Marketers analyze internal and external aspects of their businesses to identify opportunities in the marketplace. The marketers' goal is to create satisfaction and value and to increase sales.

**Opinion 2:** Defendants[10] are sophisticated marketers who are skilled in applying marketing strategy and tactics to successfully target and reach their desired Customers. This sophistication is seen in the pharmaceutical industry's strategic orientation, Customer-focused philosophy, extensive Customer data, well-integrated marketing activities, and extensive internal marketing communication.

**Opinion 3**: Pharmaceutical marketing targets Customers to increase the number of prescriptions sold for marketed products.

**Opinion 4:** Marketing principles establish standards, regardless of the type of product marketed. Pharmaceutical marketers should adhere to heightened standards of responsibility when marketing medicine, including:

---

[9] The customers of a pharmaceutical company's marketing activities include patients, prescribers, insurers, third-party payers, pharmacy benefit managers, and others who impact medication use and sales (e.g., pharmacies, pharmacists, wholesale distributors). Prescribers includes all who can write prescriptions for patients, including physicians, nurse practitioners, physician assistants, dentists, and any others with prescribing authority.

[10] This includes all Defendants in this case (see Schedule 5, Defendants in Case Track One), which all operate within the pharmaceutical supply chain system and all play a role in marketing the opioids at issue in this case.

Case: 1:17-md-02804-DAP Doc #: 1875-37 Filed: 07/19/19 5 of 5. PageID #: 61812

CONFIDENTIAL

Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

flows. Supply is ensured for prescription opioids by manufacturers, including Purdue, Endo, Janssen, Teva, Cephalon, Allergan, Insys, and Mallinckrodt, and their families of companies. Wholesale distribution of pharmaceuticals in the U.S. is highly concentrated, with AmerisourceBergen, Cardinal Health, and McKesson accounting for about 85% of the total market share of wholesalers.[190] Large pharmacy chains such as CVS, Walgreens, and Walmart also engage in internal wholesale distribution of medicines, acting as their own distributors either alone or in cooperation with wholesale distributors.[191]

99. The goal of the pharmaceutical supply system is to move products from manufacturers to the Customer. Each stakeholder has the common goal of selling pharmaceuticals by working with and through others in the supply chain system. Defendants had agreements to distribute products and marketing messages related to opioids.[192] The primary messages in relation to wholesale distributors are expected to be focused on price, quality, drug availability, and service.[193] However, pharmacists that dispense prescriptions may also receive promotional messages focused on drug features and benefits, similar to prescribers.[194] This is important to

---

[190] Dabora M, Turaga N, and Schulman K. Financing and Distribution of Pharmaceutical in the United States. JAMA. Published online May 15, 2017. https://jamanetwork.com/journals/jama/fullarticle/2627994 (last accessed December 18, 2018).

[191] CAH_MDL2804_02376356, CVS Agreement (Matt Leonard).

[192] See Schedule 16: Co-Promotional Marketing with Distributor Defendants.

[193] [redacted]

[194] See e.g. the Purdue sponsored counseling guide for pharmacists, PDD1502310593. Sponsored educational letter and pamphlet from Purdue to pharmacies regarding pain and OxyContin. The core promotional messages in this guide are consistent with the messages in Section IV: Defendants Marketing of Opioids, of this Report and include: "there is a difference between 'addiction' and 'pain-relief seeking' behavior." p.4; "It is rare for patients with intractable pain to abuse or divert their prescribed pain medication." p.5; "Two opioids with minimal risk for diversion and abuse include OxyContin and MS Contin." p.5; "Pain is one of the most common reasons people consult a physician, yet it frequently is inadequately treated, leading to enormous social cost in the form of lost productivity." p. 3; "True addictive behaviors rarely occur in patients who utilize opioids for chronic pain, especially when the patient has no prior history of substance abuse." p. 4; "Physical dependence occurs with the continual use of many medications including beta-blockers, antidepressants, corticosteroids, opioids, and others." p. 4; "It is rare for patients with intractable pain to abuse or divert their prescribed pain medication.", p. 5; Effective strategies for cancer pain include: "aggressive use of long-acting, oral opioids as first-line