# EXHIBIT 6

Page 368

1            IN THE UNITED STATES DISTRICT COURT
2               NORTHERN DISTRICT OF OHIO
3                   EASTERN DIVISION
4

                ~~~~~~~~~~~~~~~~~~~~
5

6     IN RE:  NATIONAL PRESCRIPTION   MDL No. 2804
      OPIATE LITIGATION
7                                    Case No. 17-md-2804
8                                    Judge Dan Aaron
      This document relates to:      Polster
9

10    The County of Cuyahoga v. Purdue
      Pharma L.P., et al.
11    Case No. 18-OP-45090
12    City of Cleveland, Ohio v. Purdue
      Pharma L.P., et al
13    Case No. 18-OP-45132
14    The County of Summit, Ohio, et al.
      v. Purdue Pharma L.P., et al.
15    Case No. 17-OP-45004
16               ~~~~~~~~~~~~~~~~~~~~
17                   Volume II
                Continued deposition of
18                LORI BAKER-STELLA
19

                    May 23, 2019
20                   10:40 a.m.
21

                    Taken at:
22               Ulmer & Berne
             1660 W. 2nd Street, Suite 1100
23               Cleveland, Ohio
24

25          Renee L. Pellegrino, RPR, CLR

Page 411

1    to do?

2                MR. BENNETT:  Objection.  Vague.

3                You can answer.

4        A.    It's not difficult to do, but we

5    have special investigative tools of how to get

6    that information.

7        Q.    And those tools, without getting

8    into what they are, apparently they take a while

9    to implement and apply and think about and

10   figure out whether they're giving you the

11   conclusion it's medical judgment versus

12   non-medical judgment?

13               MR. BENNETT:  Objection.  Form.

14               You can answer.

15       A.    Yes.

16       Q.    And at some level it requires the

17   input of a medical expert?

18               MR. LEDLIE:  Object to the form.

19               MR. BENNETT:  Objection.  Scope.

20               You can answer.

21       A.    Yes.

22       Q.    Have you worked on investigations at

23   TDS that are outside the state of Ohio?

24               MR. BENNETT:  Objection.  Scope.

25               You can answer that question yes or

Page 412

1    no only.

2         A.    Yes.

3         Q.    How frequently does that occur?

4              MR. BENNETT:  You can answer that.

5         A.    Recently it's been just within, but,

6    you know, we have had it happen but not anything

7    like most recent.

8         Q.    So like today the cases you're

9    working on are all within Ohio?

10             MR. BENNETT:  Objection.  Scope.

11             If you can answer that question yes

12   or no only.  And, also, objection, vague.

13        A.    As I say, we have a lot of cases, so

14   I'm trying to -- I'm trying to think.  I think

15   there's a few still outside.

16        Q.    Have you ever concluded that a

17   doctor was overprescribing based solely on

18   looking at how many prescriptions the doctor was

19   writing?

20             MR. BENNETT:  Objection.  Scope.

21             You can answer that question.

22             THE WITNESS:  We might get into

23   technique.

24             MR. BENNETT:  You can answer that

25   question yes or no only.  You are authorized to

Page 413

1  answer that question yes or no only if you can.

2       A.     That is a tool that we use.  That's

3  only one -- that's not one thing that I would

4  just focus in and say we're taking him.

5       Q.     And my question is, the number of

6  prescriptions alone isn't sufficient to reach a

7  judgment about whether there's overprescribing

8  or not?

9              MR. LEDLIE:  Object to the form.

10      Q.     Do you agree with that?

11             MR. BENNETT:  Objection.  Scope.

12             You can answer yes or no only.

13      A.     Yes.

14      Q.     Have you ever requested a search

15 warrant for a doctor based solely on the amount

16 of prescriptions that the doctor was writing?

17             MR. BENNETT:  You can answer that

18 question.

19      A.     I don't believe I have.

20                  -   -   -   -   -

21             (Thereupon, Baker-Stella Deposition

22             Exhibit 7, E-Mail String Dated

23             December 9, 2016 Bates Numbered

24             SUMMIT_001233825, was marked for

25             purposes of identification.)

1               -   -   -   -   -

2          Q.     Detective Baker-Stella, Exhibit 7 is

3    an e-mail from you to Joseph Black dated

4    December 9th, 2016.  It bears the Bates label

5    SUMMIT_001233825.

6               Have you seen this before?

7          A.     I remember this e-mail.

8          Q.     Who is Joseph Black?  Who's Joe

9    Black?

10         A.     Joe Black is a deputy assigned to

11   our patrol division.

12         Q.     When you say "our patrol division"

13   --

14         A.     Summit County Sheriff's Office

15   patrol division.

16         Q.     And in the first sentence he says

17   he -- of his e-mail to you, he says, "I have a

18   script case that started as an identity theft

19   case sent back to me to handle from DB."

20               Do you know what DB stands for?

21         A.     Yes.  That is our detective bureau.

22         Q.     And do you know whether this case

23   resulted in a conviction?

24         A.     Yes, it did.

25         Q.     And who was the person that was