**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*,<br>Case No. 17-op-45004<br><br>and<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*,<br>Case No. 18-op-45090. | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT OF NON-RICO SMALL DISTRIBUTORS'
MOTION FOR SUMMARY JUDGMENT BASED ON THEIR *DE MINIMIS* STATUS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

STATEMENT OF FACTS ..................................................................................................... 4

    A.    The Small Distributors Each Have Market Share Of About 1% Or Less. .............. 4

    B.    Plaintiffs' Experts Treat the Small Distributors As *De Minimis*. ........................... 6

    C.    The Small Distributors' Share of "Flagged Orders" Is *De Minimis*. ..................... 7

ARGUMENT ...................................................................................................................... 9

    I.    PLAINTIFFS MUST CARRY THEIR BURDEN WITH RESPECT TO
          EACH DEFENDANT ................................................................................... 9

    II.    PLAINTIFFS CANNOT ESTABLISH THAT THE SMALL
          DISTRIBUTORS' *DE MINIMIS* SHIPMENTS WERE A CAUSE-IN-FACT
          OR LEGAL CAUSE OF THEIR INJURIES OR DAMAGES. ........................... 11

          A.    The Small Distributors Are Not A Cause-In-Fact of Plaintiffs' Alleged
                Harm. ...................................................................................................... 11

          B.    The Small Distributors' *De Minimis* Shipments Did Not Proximately
                Cause Plaintiffs' Injuries or Damages. ....................................................... 13

                1.    Each Small Distributor Had Too Few Shipments To Be A
                        Proximate Cause. ......................................................................... 14

                2.    Each Small Distributor Had Too Few "Flagged Orders" To Be
                        A Proximate Cause. ...................................................................... 16

    III.    AS AT MOST *DE MINIMIS* CONTRIBUTORS, THE SMALL
          DISTRIBUTORS CANNOT BE HELD LIABLE UNDER OHIO
          NUISANCE LAW. ..................................................................................... 17

          A.    Plaintiffs Cannot Prove That The Small Distributors' Conduct Was
                The Cause-In-Fact Of An Unreasonable Interference With A Public
                Right ........................................................................................................ 17

          B.    Plaintiffs Cannot Prove That The Small Distributors' Conduct Was A
                Substantial Factor In Plaintiffs' Claimed Injury. ....................................... 18

    IV.    PLAINTIFFS' RELIANCE ON AGGREGATE PROOF OF CAUSATION IS
          PROHIBITED UNDER OHIO LAW ............................................................ 20

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**C**ASES

*Ackinson v. Anchor Packing Co.*,
    897 N.E.2d 1118 (Ohio 2008)............................................................................13

*Anderson v. St. Francis-St. George Hosp., Inc.*,
    671 N.E.2d 225 (Ohio 1996)..................................................................11, 12, 13

*Baker v. Chevron U.S.A, Inc.*,
    533 F. App'x 509 (6th Cir. Aug. 2, 2013) ..............................................................17

*Banford v. Aldrich Chem. Co.*,
    932 N.E.2d 313 (Ohio 2010)............................................................................17

*Benison v. Ross*,
    765 F.3d 649 (6th Cir. 2014)............................................................................12

*Birnie v. Elec. Boat Corp.*,
    953 A.2d 28 (Conn. 2008)..............................................................................19

*Burke v. Shaffner*,
    683 N.E.2d 861 (Ohio Ct. App. 1996) ...........................................................20, 22

*Byers v. Lincoln Elec. Co.*,
    607 F. Supp. 2d 840 (N.D. Ohio 2009) ...........................................................4, 19

*Callahan v. Gulf Logistics, LLC*,
    456 F. App'x 385 (5th Cir. 2011) .....................................................................9

*City of Cincinnati v. Beretta U.S.A. Corp.*,
    768 N.E.2d 1136 (Ohio 2002)...........................................................................17

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*,
    863 F.3d 474 (6th Cir. 2017)............................................................................18

*City of Cleveland v. Ameriquest Mortgage Sec., Inc.*,
    615 F.3d 496 (6th Cir. 2010)............................................................................18

*City of New Haven v. Purdue Pharma, L.P.*,
    2019 WL 423990 (Conn. Super. Ct. Jan. 8, 2019) ................................................13

*City of St. Louis v Benjamin Moore & Co.*,
    226 S.W.3d 110 (Mo. 2007)......................................................................11, 17

*Devonshire v. Johnston Grp. First Advisors*,
    166 F. App'x 811 (6th Cir. 2006) .....................................................................19

*Doe v. Cutter Biological, a Div. of Miles, Inc.*,
  852 F. Supp. 909 (D. Idaho 1994) .........................................................................21

*Dorsey v. Barber*,
  517 F.3d 389 (6th Cir. 2008) ..................................................................................9

*Frazier v. USF Holland*,
  250 F. App'x 142 (6th Cir. 2007) ..........................................................................20

*In re Gadolinium-Based Contrast Agents Prods. Liability Litig.*,
  2013 WL 593993 (N.D. Ohio Feb. 15, 2013) .................................11, 14, 17, 18, 19

*Gaier v. Midwestern Group*,
  601 N.E.2d 624 (Ohio Ct. App. 1991) ..................................................................11

*Goldman v. Johns-Manville Sales Corp.*,
  514 N.E.2d 691 (Ohio 1987).................................................................................20

*Heard v. Dayton View Commons Homes*,
  106 N.E.3d 327 (Ohio Ct. App. 2018) ..................................................................14

*Kennedy v. Baxter Healthcare Corp.*,
  43 Cal. App. 4th 799 (3d Dist. 1996) ....................................................................21

*Kurczi v. Eli Lilly & Co.*,
  113 F.3d 1426 (6th Cir. 1997) ..............................................................................21

*Lamb v. Martin Marietta Energy Sys., Inc.*,
  835 F. Supp. 959 (W.D. Ky. 1993) ........................................................................18

*Lohrmann v. Pittsburg Corning Corp.*,
  782 F.2d 1156 (4th Cir. 1986) ..............................................................................19

*Lyons v. United States*,
  2009 WL 997300 (N.D. Ohio Apr. 14, 2009) ........................................................12

*Mills v. Best W. Springdale*,
  2009 WL 1710765 (Ohio Ct. App. June 18, 2009) ................................................13

*Minnich v. Ashland Oil Co.*,
  473 N.E.2d 1199 (Ohio 1984)...............................................................................22

*Montgomery v. Vargo*,
  60 N.E.3d 709 (Ohio Ct. App. 2016) ....................................................................12

*Morales v. Am. Honda Motor Co.*,
  151 F.3d 500 (6th Cir. 1998)................................................................................12

*Mulhall v. Ashcroft*,
    287 F.3d 543 (6th Cir. 2002) ................................................................................20

*Mullen v. Armstrong World Indus., Inc.*,
    200 Cal. App. 3d 250 (1st Dist. 1988) .................................................................22

*Napier v. Osmose, Inc.*,
    399 F. Supp. 2d 811 (W.D. Mich. 2005) ..............................................................21

*New Jersey Dep't of Envtl. Protection v. Ventron Corp.*,
    440 A.2d 455 (N.J. Super. Ct. App. Div. 1981) ...................................................19

*Stenehjem ex rel. North Dakota v. Purdue Pharma L.P.*,
    2019 WL 2245743 (N.D. Dist. Ct. May 10, 2019) ...............................................13

*Pang v. Minch*,
    559 N.E.2d 1313 (Ohio 1990)........................................................................14, 20

*Pooshs v. Phillip Morris USA, Inc.*,
    904 F. Supp. 2d 1009 (N.D. Cal. 2012) ...............................................................22

*Sandifer v. U.S. Steel Corp.*,
    571 U.S. 220 (2014).................................................................................................3

*Schwartz v. Honeywell Int'l, Inc.*,
    102 N.E.3d 477 (Ohio 2018)........................................................................14, 18

*Smith v. Carbide and Chems. Corp.*,
    507 F.3d 372 (6th Cir. 2007) ................................................................................18

*Snyder v. United States*,
    990 F. Supp. 2d 818 (S.D. Ohio 2014) .................................................................23

*Stark v. Armstrong World Indus., Inc.*,
    21 F. App'x. 371 (6th Cir. 2001) ......................................................................9, 10

*Sutowski v. Eli Lilly & Co.*,
    696 N.E.2d 187 (Ohio 1998)...........................................................................21, 22

*Wahl v. Gen. Elec. Co.*,
    786 F.3d 491 ...........................................................................................................4

*Williams v. Portage Country Club Co.*,
    2017 WL 6374629 (Ohio Ct. App. Dec. 13, 2017) ..............................................12

**STATUTES**

R.C. 2307.22 ..........................................................................................................21

R.C. 2307.23 ..........................................................................................................21

R.C. 2307.73(C) .....................................................................................................21

**OTHER AUTHORITIES**

Baldwin's Oh. Prac. Tort L. § 3:11 (2d ed. 2018) ..............................................14

*Black's Law Dictionary* 464 (8th ed. 2004) ..........................................................3

Restatement (Second) of Torts § 431 (1965) ...................................................18, 19

Restatement (Second) of Torts § 433 (1965) ......................................................14

Restatement (Second) of Torts § 821B (1979) ....................................................17

Because each non-RICO Small Distributor[1] Defendant's supply of opioid medications into Cuyahoga and Summit Counties represented no more than 1% of the market, through this Motion and others in which they join the Small Distributors move for complete summary judgment on all claims asserted against them.  Specifically, in this Motion, the Small Distributors move for summary judgment as to the following five claims, numbered identically in the complaints:[2]

- statutory public nuisance (Count V);
- common-law absolute public nuisance (Count VI);
- negligence (Count VII);
- injury through criminal acts (Count IX); and
- unjust enrichment (Count X).[3]

Along with other distributors in these cases, the Small Distributors have moved separately for summary judgment on the civil-conspiracy claim (Count XI);[4] on statute-of-limitations grounds;[5] and on more generally applicable grounds of proximate causation.[6]  The

---

[1] The term "Small Distributors," as used in this motion, includes Defendants Anda, Inc.; H. D. Smith, LLC (as well as non-operating entities H. D. Smith Holdings, LLC and H. D. Smith Holding Company); Henry Schein, Inc.; Henry Schein Medical Systems, Inc. (which does not sell opioid products); and Prescription Supply Inc.  The Small Distributors have concurrently filed a summary-judgment motion on grounds of *Buckman* preemption.  ECF No. 1754.

[2] While the Small Distributors are Defendants in Track One, they have not all been named in both Track One cases.  In the Cuyahoga action, Anda, H. D. Smith, H. D. Smith Holdings, H. D. Smith Holding Company, and Prescription Supply are Defendants; Henry Schein and Henry Schein Medical Systems are not.  *See generally* Cuyahoga TAC.  In the Summit action, Anda, Henry Schein, Henry Schein Medical Systems, and Prescription Supply are Defendants; H. D. Smith, H. D. Smith Holdings, and H. D. Smith Holding Company are not.  *See generally* Summit TAC.

[3] Plaintiffs do not assert either their fraud claim (Count VIII) or their state and federal RICO claims (Counts I–IV) against the Small Distributors.

[4] ECF No. 1692.  The Non-RICO Small Distributors' Motion for Partial Summary Judgment on Plaintiffs' "Failure to Report" and "Fraud on the DEA" Claims, ECF No. 1754, also addresses the conspiracy claim.

[5] ECF No. 1691.

[6] ECF No. 1736.  Anda did not join this motion.

Small Distributors' Motion and supporting Memorandum demonstrate that even if this Court finds that there is a dispute of material fact as to whether distributors, generally, are "direct causes" of the opioid epidemic in Plaintiffs' communities, the Small Distributors cannot be considered to have caused that epidemic because each of them is *de minimis*.

## PRELIMINARY STATEMENT

The Small Distributors—collectively and individually—are not the but-for cause of the opioid epidemic in Cuyahoga and Summit Counties.  Nor are they a substantial contributor to any alleged public nuisance.  According to Plaintiffs' own expert, no Small Distributor shipped as much as *Redacted* percent of the total dosage units of opioid products into Cuyahoga or Summit Counties during the relevant time period.  And by the same expert's own calculations, none of the Small Distributors shipped as much as *Redacted* percent of the total "flagged" orders distributed in those jurisdictions.

Thus in a case in which Plaintiffs rely on experts to drive their proof of causation, to no one's surprise Plaintiffs' experts virtually ignore each of the Small Distributors.  Only one such expert—Dr. McCann—mentioned all of the Small Distributors in his report or testimony.  And the following pie charts show Dr. McCann's conclusions about the Small Distributors' slivers of distribution (Figure 1 on the next page):

**Fig. 1 – Small Distributors' Market Share[7]**

| Cuyahoga Market Share (by dosage units) | Summit Market Share (by dosage units) |
| --- | --- |
| Redacted | Redacted |

Cuyahoga Market Share (by dosage units): Anda, H.D. Smith, Prescription Supply, Other Distributors

Summit Market Share (by dosage units): Anda, Henry Schein, Prescription Supply, Other Distributors

Moreover, even using Dr. McCann's questionable methodologies for flagging orders,[8] the Small Distributors' *collective* share of flagged orders is about [Redacted] or less in Cuyahoga and about [Redacted] or less in Summit.[9]  Like their market share, the Small Distributors' share of flagged orders is *de minimis*.

The roots of the *de minimis* doctrine "stretch to ancient soil."  *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 234 (2014).  The Latin phrase *de minimis* means trifling, minimal, or something "so insignificant that a court may overlook it in deciding an issue or case."  *Black's Law Dictionary* 464 (8th ed. 2004).  The undisputed fact that the Small Distributors are, at most,

---

[7] For Figures 1 (p. 3) and 6 (p. 15, *infra*), the market shares of [Redacted] and [Redacted] for Summit County are so infinitesimal that they do not register in the respective pie chart.

[8] Defendants, including the Small Distributors, have specifically challenged Dr. McCann's opinions by motion filed contemporaneously herewith.

[9] Neither Dr. McCann nor any other expert identifies any order from [Redacted] that was "flagged" or "suspicious."

*de minimis* contributors to the supply of prescription opioids in Summit and Cuyahoga mandates

that, as a matter of law, Plaintiffs cannot meet the causation burden for any of their claims.  *See*

*Byers v. Lincoln Elec. Co.*, 607 F. Supp. 2d 840, 858–61 (N.D. Ohio 2009) (granting summary

judgment to *de minimis* supply defendant in welding-rod case under Texas law), *abrogated on*

*other grounds by Wahl v. Gen. Elec. Co.*, 786 F.3d 491 (6th Cir. 2015).  That fact likewise

demonstrates that none of the Small Distributors was (or is) a substantial contributor to the

alleged public nuisance.  For these reasons alone, the Court should grant summary judgment in

favor of each of the Small Defendants on Counts V–VII and IX–X.

## STATEMENT OF FACTS

### A.    The Small Distributors Each Have Market Share Of About [REDACTED]% Or Less.

The Small Distributors are wholesale distributors of pharmaceutical products.  It is

undisputed that their share of the distribution of opioid products into Cuyahoga and Summit is

miniscule.

Plaintiffs' own purported ARCOS data expert, Dr. McCann, offered his opinion that using

both DEA ARCOS data and individual Defendants' transaction data provided him with a reliable

data set from which to determine the share of opioids shipped into the Track One jurisdictions by

each distributor.[10]  As demonstrated in Figure 2 on the next page, Dr. McCann determined that

---

[10] Ex. 1 at 237:9–238:13.  And Dr. McCann testified that the market-share data for H. D. Smith and Anda, as depicted in the charts appended to his report, is accurate.  *Id.* at 587:4–604:6, 535:4–542:3.  Citations to "Ex." refer to the exhibits to the Declaration of John J. Haggerty filed contemporaneously with his motion and memorandum.

the Small Distributors individually (and in fact collectively) occupy a *de minimis* market share of opioid products distributed in Track One jurisdictions:[11]

**Fig. 2 – Market Share of Small Distributors in Cuyahoga[12] and Summit[13] Counties**

| Small Distributor | Market Share by MME in Cuyahoga | Market Share by Dosage Unit in Cuyahoga | Market Share by MME in Summit | Market Share by Dosage Unit in Summit |
|---|---|---|---|---|
| Redacted | | | | |
| | | | Redacted | Redacted Redacted |
| Redacted | Redacted Not Named | Redacted Not Named | Redacted | Redacted |
| Redacted | Redacted | Redacted | Redacted | Redacted |

It is also telling that there are more than **Redacted** other distributors, not named as defendants in this litigation, who have similar (and sometimes higher) market share compared to the Small Distributors.[14]

Indeed, Plaintiffs themselves suggest that **Redacted** small market share renders a distributor *de minimis* and, as such, not properly subject to a suit seeking to recover the costs of the opioid epidemic.  Last November, Plaintiffs moved the Court to modify Case Management Order One and extend the deadline for amending complaints.[15]  Plaintiffs sought this relief to avoid "the naming of hundreds of additional defendants with *de minim[i]s* market share," which for

---

[11] While numerous of Dr. McCann's methodologies are questionable and unreliable as set forth in Defendants' *Daubert* Motion regarding McCann (filed contemporaneously herewith), the fact that Plaintiffs' own expert (and the only one to address market share) essentially agrees that the Small Distributors' market share is *de minimis* clearly demonstrates that there is no dispute of material fact as to this point.

[12] Ex. 1 at 512:20–513:3 and McCann-14, McCann-16.

[13] *Id.* at 512:3–6, 513:9 -17 and McCann-15; *id.* at 512:13–16, 514:14–21 and McCann-17.

[14] *See id.* at 43919–441:16 and McCann-12, p. 577.

[15] ECF No. 1077.

distributors they indicated was 5% or less for 6 of the 9 years covered by the ARCOS data produced.[16]  Redacted

Redacted  in Track One.

### B.    Plaintiffs' Experts Treat the Small Distributors As *De Minimis*.

Dr. McCann testified that market shares of [Redacted] magnitude are *de minimis*.[17]  Reports of Plaintiffs' other experts, in suspicious-order-monitoring systems (SOMS) and diversion-control, largely ignore the Small Distributors—generally failing to address them at all.  Anda, H. D. Smith, and Prescription Supply are not even discussed in any of Plaintiffs' reports on SOMS or diversion.[18]  Likewise, no Small Distributor is discussed in the nearly 500 separate "opinions" in the report of Dr. David Egilman,[19] or in the report of Dr. Matthew Perri.  And Plaintiffs failed to develop any other evidence that the Small Distributors' shipments of opioid products ever resulted in diversion, much less injuries, damages, or interference with any property right.[20]

---

[16] ECF No. 1077 at 2, 3; *see also* ECF No. 1102 at 2.

[17] Ex. 1 at 554:17–555:17 (conceding that Redacted             market share for Cuyahoga, Redacted , and [Redacted]% market share for Summit is *de minimis*).

[18] Ex. 2 at 840:18–25 ("Q: And since there's no information that would be the basis for any opinions as to Redacted suspicious order monitoring system in your report, it's safe to say that there are no opinions about Redacted   in your report, right? A: There's no opinions of [Redacted] in the current report, right here, no, sir.")

[19] Among many other opinions, Dr. Egilman opines that distributors generally joined in some "vaguely defined 'Venture.'"  He does not offer an opinion or point to any evidence to support this conclusion with regard to any of the Small Distributors.  Further, Dr. Egilman does not even name the Small Distributors as parties to the "Venture," and he expressly testified that he has no opinions regarding Henry Schein, Inc. or Henry Schein Medical Systems, Inc.  *See* Ex. 3 at 811:5–812:7.  Defendants have specifically challenged Dr. Egilman's opinions by motion filed contemporaneously herewith.

[20] By way of example, Cuyahoga, in responding to discovery, listed entities suspected of distributing products that were diverted and caused harm, but failed to provide evidence of diversion and resulting harm as to any of the Small Distributors' shipments, and actually omitted one of the Small Distributors from the list.  *See* Ex. 5 at 9–12; *see also* Ex. 6 at 40 (incorporating "First Amended Responses and Objections to Distributor Defendants' Third Set of Interrogatories dated August 13, 2018 (Distributor Interrogatory Nos. 16 & 17)").

### C.     The Small Distributors' Share of "Flagged Orders" Is *De Minimis*.

James Rafalski, a SOMS and diversion expert retained by Plaintiffs, claims to have developed five purported methods for identifying potentially "suspicious" orders.[21]  Dr. McCann applied those methods to the ARCOS data and transactional data to identify the orders that Plaintiffs contend each distributor should have "flagged" for further review.[22]

Critically, neither Rafalski nor Dr. McCann conducted any analysis to determine if any of the specific "flagged orders" were diverted.[23]  Moreover, neither opines that diversion actually occurred as a result of any of these "flagged orders."[24]  In short, Rafalski and Dr. McCann merely identify orders which, in Rafalski's opinion, required additional review before they were

---

[21] *See, e.g.*, Ex. 2 at 162:6–163:13, 164:1–3.  Defendants have specifically challenged Rafalski's opinions by motion filed contemporaneously herewith.

[22] *See, e.g.*, *id.* at 163:14–24, 173:18–23; Ex. 1 at 132:4–18.  Dr. McCann did not review the record evidence to determine if any of the orders he flagged were in fact reviewed by the relevant Distributor before shipment.  He was told to assume that no such review was made—*i.e.*, ignore any such record evidence.  Ex. 1 at 139:13–142:13.  Further, Dr. McCann's methodologies are based upon sales to retail and chain pharmacies—it is undisputed that Henry Schein does not sell to retail or chain pharmacies (and that Henry Schein Medical Systems does not sell opioids at all).  *See id.* at 552:4–22.

[23] Ex. 1 at 278:21–279:15 ("Q: Now, if the distributors had refused to ship each of your flagged orders, would that have prevented the opioid crisis? . . . A: I have no idea.  No opinion one way or the other"); Ex. 2 at 469:7–470:1 ("Q: You did  not do any analysis to see whether any specific suspicious order caused the diversion of any specific pills for nonmedical use correct? . . . A: I think that's an accurate statement.").

[24] Ex. 2 at 188:21–191:2, 394:1–6 ("Q: Okay. And similarly, you don't know what, if any, orders that Henry Schein distributed into Summit County were diverted? A: I do not have knowledge of any drugs that were diverted."), 508:1–12, 600:8–16 ("The concept of why we're not agreeing on this is the suspicious order system and the effectiveness of it and the due diligence is all based on the *risk* of diversion. It doesn't mean that diversion is going to occur.") (emphasis added); Ex. 1 at 268:11–15 ("Q: Are you planning to offer any opinions about whether or not any of the defendants diverted prescription opioids in this litigation? A: No."), 312:17–313:23 ("Q: Were any of what you called – call excessive shipments diverted? A: I don't know. . . . Q: Do you plan to offer any opinions in this case as to whether or not the excessive shipments that are represented in your report in Section 10 were diverted? A: No. ").

shipped.  This unremarkable opinion is not proof of any wrongdoing—much less proof that the Small Distributors caused the diversion of opioids which led to any injury to Plaintiffs.

Even if Rafalski or Dr. McCann had connected any "flagged orders" to diversion—which they did not and could not—this would still not be sufficient because the Small Distributors' share of the "flagged orders" is even less than their market share.  Following is the Small Distributors' share[25] of those orders (Figures 3–4):

**Fig. 3 – Small Distributors' Share of Flagged Orders in Cuyahoga[26]**

| Small Distributor | Trailing Six-Month Maximum Threshold Flagged Transactions | Twice Trailing Twelve-Month Average Pharmacy Dosage Units Threshold | Three Times Trailing Twelve-Month Average Pharmacy Dosage Units | Maximum Daily Dosage Units Threshold Flagged Transactions | Maximum 8,000 Dosage Units Monthly Threshold Flagged Transactions |
|---|---|---|---|---|---|
| Redacted | | | | | |
| | | | | | |
| | | | | | |

**Fig. 4 – Small Distributors' Share of Flagged Orders in Summit[27]**

| Small Distributor | Trailing Six-Month Maximum Threshold Flagged Transactions | Twice Trailing Twelve-Month Average Pharmacy Dosage Units Threshold | Three Times Trailing Twelve-Month Average Pharmacy Dosage Units | Maximum Daily Dosage Units Threshold Flagged Transactions | Maximum 8,000 Dosage Units Monthly Threshold Flagged Transactions |
|---|---|---|---|---|---|
| Redacted | | | | | |
| | | | | | |
| | | | | | |

---

[25] *See* Ex. 1 at McCann-3, pp. 59–60, 63–64, 67–68, 71–72, 75–76.  Even the exceedingly small percentages shown here are grossly exaggerated.  Among other deficiencies, they embody assumptions by Dr. McCann that (1) contrary to clear evidence, every single "flagged order" involved no due diligence, and (2) for each "flagged order," all subsequent future orders placed by that customer—no matter how small—are deemed flagged.

[26] *Id.* at McCann-2, pp. 59, 63, 67, 71, 75.  Henry Schein is not a Defendant in the Cuyahoga action.

[27] *Id.* at McCann-2, pp. 60, 64, 68, 72, 76.  H. D. Smith is not a Defendant in the Summit action.

[28] Dr. McCann fails to identify any volume or "share" of flagged orders attributable to Redacted.  *See id.* at 552:12–16.

8

Thus, while the Small Distributors' market share in each county is *de minimis* at approximately [Redacted] or lower, respectively, their share of "flagged orders" is about [Redacted] or less in Cuyahoga and about [Redacted] or less in Summit, *collectively*.

## ARGUMENT

## I. PLAINTIFFS MUST CARRY THEIR BURDEN WITH RESPECT TO EACH DEFENDANT.

As part of any summary-judgment analysis in a multi-defendant case, "[e]ach defendant's liability must be assessed individually, based on his or her own actions." *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008); *Callahan v. Gulf Logistics, LLC*, 456 F. App'x 385, 390 (5th Cir. 2011) (noting that at summary judgment "[t]he relevant evidence regarding each defendant will be treated in turn."). Plaintiffs cannot survive summary judgment by pointing to collective evidence, generally, without regard to their specific claims and evidence against specific defendants. Rather, Plaintiffs must carry their burden with respect to *each defendant* in a multi-defendant case to survive judgment as a matter of law. *See Stark v. Armstrong World Indus., Inc.*, 21 F. App'x. 371, 375–76 (6th Cir. 2001) (evaluating burden of proof with regard to each defendant).[29] When a plaintiff fails to make this individualized showing against particular defendants, summary judgment is appropriate as to those defendants. *See Callahan*, 456 F. App'x at 390.

---

[29] *See also* ECF No. 1536 at 5 (recognizing that "Plaintiffs must prove their claims against each defendant").

Plaintiffs maintained throughout fact discovery that their case is highly reliant upon the opinions and testimony of experts.[30]  And yet, despite disclosing twenty-four expert reports, only one—Dr. McCann's report—addresses the Small Distributors.[31]  That report, however, does not come close to providing the type of material, factual evidence required to survive summary judgment, and Dr. McCann's deposition testimony effectively describes the Small Distributors' **Redacted** respective distribution amounts as "*de minimis*"—or of no legal consequence.[32] In Plaintiffs' 23 other expert reports, the Small Distributors are largely ignored.[33]

Plaintiffs cannot credibly claim that they have evidence sufficient to carry their burden at trial when they have all but ignored the Small Distributors.  This absolute failure of evidence cannot survive a motion for summary judgment.  *See Stark*, 21 F. App'x at 379–81 (addressing evidence as it applies to each defendant and affirming grant of summary judgment where, *inter alia*, no expert testimony was presented to support claim).  The *only* evidence Plaintiffs present

---

[30] *See, e.g.*, ECF No. 1031 at 18–19 (explaining that "to the extent [Defendants] seek information about the relation between Defendants' conduct and harms experienced in and by Summit County, that information is . . . a matter of expert opinion," the deadline for which "is still months away."); *see also* ECF No. 1025 at 31 n.24 (Report and Recommendation observing that dismissal on causation grounds was premature before development of expert testimony).

[31] *See generally* Ex. 1 at McCann-3.  As mentioned previously, Rafalski's conclusory opinions regarding Henry Schein, Inc. are the sole exception.  Even with regard to Henry Schein, Rafalski testified that his report does not identify any flagged orders distributed by Henry Schein into Summit County and that he is not aware of any orders that Henry Schein distributed into Summit County that were diverted.  *See* Ex. 2 at 393:14–394:6.

[32] *See* Ex. 1 at 508:18–510:15.

[33] For example, Plaintiffs rely on Rafalski to opine on distributors' "response to their statutory and regulatory requirements to maintain effective controls related to the sales of prescription opioids," but he opines on only six distributors, ignoring Anda, H. D. Smith, H. D. Smith Holdings, H. D. Smith Holding Company, and Prescription Supply completely.  *See* Ex. 2 at 244:6–24, 838:21–841:23.  Plaintiffs rely on Dr. Seth Whitelaw, in turn, to opine on the "effectiveness of the compliance programs" for distributors and manufacturers, but his opinion is limited to only "five distributors," and does not include any Small Distributor.  Ex. 4 at 30:5–13.

in their thousands of pages of expert reports is that the Small Distributors are *de minimis*, which, as a matter of law, is insufficient to survive summary judgment.

## II.   PLAINTIFFS CANNOT ESTABLISH THAT THE SMALL DISTRIBUTORS' *DE MINIMIS* SHIPMENTS WERE A CAUSE-IN-FACT OR LEGAL CAUSE OF THEIR INJURIES OR DAMAGES.

Plaintiffs bear the burden to establish for each claim both cause in fact (*i.e.*, that each Small Distributor was a but-for cause) and legal causation (that each Small Distributor was a proximate cause of their respective claimed harm). *In re Gadolinium-Based Contrast Agents Prods. Liability Litig.*, MDL No. 1909, 2013 WL 593993, at *3 (N.D. Ohio Feb. 15, 2013) (Polster, J.) (explaining that plaintiffs in a product-liability MDL needed to show "but-for" and proximate causation); *City of St. Louis v Benjamin Moore & Co.*, 226 S.W.3d 110, 114 (Mo. 2007) (en banc) (observing that public nuisance, like any tort, requires proof of cause in fact and proximate—legal—cause); *Gaier v. Midwestern Group*, 601 N.E.2d 624, 627–28 (Ohio Ct. App. 1991) (unjust enrichment imposes an element of causation).[34]

Evidence of *de minimis* conduct is logically and legally insufficient to survive a challenge to both factual and legal cause.  It is illogical to say that something, which, by definition, is of no legal consequence, can be a cause of injury characterized as "an epidemic."

### A.   The Small Distributors Are Not A Cause-In-Fact of Plaintiffs' Alleged Harm.

A defendant's conduct is a cause-in-fact if the harm to the claimant "would not have occurred *but for* that conduct."  *Anderson v. St. Francis-St. George Hosp., Inc.*, 671 N.E.2d 225, 227 (Ohio 1996) (emphasis in original) (citation omitted).  Conversely, conduct is not a cause-in-

---

[34] Indeed, causation is at the heart of the benefit Plaintiffs allege they conferred.  As the Court has observed, "Plaintiffs' claim is that 'Plaintiffs have conferred a benefit upon Defendants by paying for Defendants' externalities: the cost of the harms caused by Defendants' improper distribution practices.'" ECF No. 1203 at 37–38 (quoting Summit SAC at 328).

fact if the harm "would have occurred regardless of the conduct." *Id.*  But-for causation must be shown by record evidence.  Speculation and conjecture are forbidden.  *See, e.g.*, *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 508 (6th Cir. 1998).  "[T]he fact that something could be a cause does not establish that it actually was the cause in a given instance."  *Williams v. Portage Country Club Co.*, No. 28445, 2017 WL 6374629, at *3 (Ohio Ct. App. Dec. 13, 2017).

Plaintiffs' theory of but-for causation, however, rests entirely on speculation and conjecture.  They assume that because the Small Distributors each supplied opioid medications in the Track One jurisdictions—in amounts that Plaintiffs and their expert have indicated are *de minimis*—surely some fraction of that supply was diverted.[35]  Plaintiffs further assume that diverted products were abused in a way that caused Plaintiffs to spend some undifferentiated amount of money or otherwise suffer myriad alleged injuries and related damages.  The Court should reject this theory for three reasons.

First, none of Plaintiffs' alleged injuries and damages can be traced to the Small Distributors' *de minimis* shipments, much less any tortious conduct by a Small Distributor.  Merely because the opioid crisis continued after the Small Distributors supplied opioid products in the Track One jurisdictions does not mean the Small Distributors' particular shipments caused or prolonged the opioid crisis.  This type of fallacy—"after this, therefore because of this," *Benison v. Ross*, 765 F.3d 649, 666 (6th Cir. 2014)—is not a rule of causation.  *Lyons v. United States*, No. 4:03 CV 1620, 2009 WL 997300, at *16 (N.D. Ohio Apr. 14, 2009).  Indeed, Ohio courts roundly reject such conjecture.  *E.g., Montgomery v. Vargo*, 60 N.E. 3d 709, 713 (Ohio Ct. App. 2016) ("Quite simply, Montgomery relied on the '*post hoc ergo propter hoc*' fallacy as proof of liability.  The chronological order of events, however, is not proof of causation.").

---

[35] Dr. McCann refused to make this link.  Ex. 1 at 268:11–15.

Second, Plaintiffs' theory of causation impermissibly rests on a chain of unsubstantiated, "stacked" inferences, which Ohio law prohibits. *Mills v. Best W. Springdale*, No. 08AP-1022, 2009 WL 1710765, at *6 (Ohio Ct. App. June 18, 2009).  Even if Plaintiffs proved that one or more of the orders filled by a Small Distributor was "suspicious," the jury would still have to infer that the pills in those orders were dispensed, that someone abused the pills, and that Plaintiffs incurred some injury in the form of an expense dealing with the effects of that abuse. Ohio law does not permit this type of speculation and guesswork to prove causation.[36]

Third, to the extent Plaintiffs contend that the Small Distributors caused "the aggregate effect of opioids on the public health, safety, and welfare within [their] jurisdictions," as they have suggested,[37] their claims still fail.  With Small-Distributor shipments that Plaintiffs' own expert shows are *de minimis*, any harm resulting from the shipments of opioids "would have occurred regardless of the [Small Distributors'] conduct," *Anderson*, 671 N.E.2d at 227, since [Redacted]% of opioids shipped to the Track One Counties still would have been shipped there in the absence of any one of the Small Distributors' shipments.

### B.     The Small Distributors' *De Minimis* Shipments Did Not Proximately Cause Plaintiffs' Injuries or Damages.

Even if Plaintiffs had established but-for causation (and they have not), they must also establish proximate causation.  *Ackinson v. Anchor Packing Co.*, 897 N.E.2d 1118, 1128 (Ohio 2008) (citations omitted).  "'But for' causation is a necessary element of proximate cause, but is

---

[36] At least two other courts considering factually similar cases in the context of opioid litigation have rejected this "extremely attenuated, multi-step, and remote causal chain," finding it insufficient as a matter of law.  *Stenehjem ex rel. North Dakota v. Purdue Pharma L.P.*, Case No. 08-2018-CV-01300, 2019 WL 2245743, at *10 (N.D. Dist. Ct. May 10, 2019) (dismissing claims in opioid case based on failure to plead proximate causation); *accord City of New Haven v. Purdue Pharma, L.P.*, No. X07HHDCV176086134S, 2019 WL 423990, at *3–4 (Conn. Super. Ct. Jan. 8, 2019).

[37] Ex. 5 at 10.

not alone sufficient for proving proximate cause.'"  Baldwin's Oh. Prac. Tort L. § 3:11 (2d ed. 2018).

To establish proximate causation, Plaintiffs must show, not speculate, that the Small Distributors' actions produced, in a natural and unbroken sequence, "a result that would not have taken place without the act."  *Heard v. Dayton View Commons Homes*, 106 N.E.3d 327, 331 (Ohio Ct. App. 2018) (citations and internal alterations omitted).  Doing so involves showing that each Small Distributor was a substantial factor in causing Plaintiffs' alleged harm.  *Gadolinium-Based Contrast Agents*, 2013 WL 593993 at *3 (citations omitted); *see also Pang v. Minch*, 559 N.E.2d 1313, 13224 (Ohio 1990).  And "[w]hen causation is premised on the total cumulative exposure," the Ohio Supreme Court has explained, citing Section 433 of the Second Restatement of Torts, "a single exposure or set of exposures cannot be considered a substantial cause unless that exposure or set of exposures had a substantial impact on the total cumulative exposure."  *Schwartz v. Honeywell Int'l, Inc.*, 102 N.E.3d 477, 482 (Ohio 2018) (citations omitted).

      1.      **Each Small Distributor Had Too Few Shipments To Be A Proximate Cause.**

Plaintiffs have not produced a shred of evidence that any Small Distributor's conduct was a substantial factor in causing their damages.  To the contrary, figures supplied by Plaintiffs' own expert, Dr. McCann, reveal that the Small Distributors' shipments are proverbial drops in the ocean (Figures 5 and 6 on the following page):

**Fig. 5 – Small Distributors' MME Market Share in Cuyahoga and Summit**

Cuyahoga Market Share
(by MME)

# Redacted

- Anda
- H.D. Smith
- Prescription Supply
- Other Distributors

Summit Market Share
(by MME)

# Redacted

- Anda
- Henry Schein
- Prescription Supply
- Other Distributors

**Fig. 6 – Small Distributors' Dosage-Unit Market Share in Cuyahoga and Summit[38]**

Cuyahoga Market Share
(by dosage units)

# Redacted

- Anda
- H.D. Smith
- Prescription Supply
- Other Distributors

Summit Market Share
(by dosage units)

# Redacted

- Anda
- Henry Schein
- Prescription Supply
- Other Distributors

And, even if Plaintiffs are allowed to make the broad leap that shipments of opioids contributed

---

[38] As explained in footnote 7, *supra*, the market shares of **Redacted** and **Redacted** are so infinitesimal that they do not register in the pie charts for Summit County in Figures 1 and 6.

to the epidemic in Plaintiffs' communities, the Small Distributors' *de minimis* shares of those shipments had no meaningful bearing on that contribution.

### 2. Each Small Distributor Had Too Few "Flagged Orders" To Be A Proximate Cause.

The Small Distributors' miniscule and assumed causal role becomes even more pronounced on examining the "flagged orders" attributed to them by Plaintiffs.

To be sure, the Small Distributors reject Plaintiffs' dragnet methods of flagging orders.[39] But even assuming the Small Distributors should have flagged these orders, the Small Distributors did not "flood[]" the market with shipments. *Cf.* ECF No. 654 at 2. Under Plaintiffs' metrics, no Small Distributor topped [Redacted]% of the "flagged orders" in Cuyahoga County, and one Small Distributor had as few as [Redacted]%. No Small Distributor had more than [Redacted]% of the "flagged orders" in Summit County, and one Small Distributor had as few as [Redacted]%. **Redacted** had no "flagged orders" at all.

With the Small Distributors' infinitesimal share of allegedly "suspicious orders," no reasonable jury could find that any one Small Distributor represents a substantial factor in causing Plaintiffs' alleged harm. Because causation plays a vital role in all of Plaintiffs' theories of recovery, and the *de minimis* evidence levies a fatal blow to any causal connection between the Small Distributors and the complained-of harm, judgment should enter in favor of each of the Small Distributors.

---

[39] Defendants have challenged by motion the opinions of Rafalski and Dr. McCann.

III.    **AS AT MOST *DE MINIMIS* CONTRIBUTORS, THE SMALL DISTRIBUTORS CANNOT BE HELD LIABLE UNDER OHIO NUISANCE LAW.**

When, as here, multiple defendants are alleged to produce an injury, the plaintiff must prove both that *each* was a factual and legal cause of the injury.  *See Gadolinium-Based Contrast Agents*, 2013 WL 593993 at *3; *City of St. Louis*, 226 S.W.3d at 114 (requiring a causal link between the defendant and the alleged nuisance).  The injury in the public-nuisance context is an unreasonable interference with a public right.  Restatement (Second) of Torts § 821B (1979).[40] *De minimis* conduct is insufficient to satisfy either causation requirement.

A.    **Plaintiffs Cannot Prove That The Small Distributors' Conduct Was The Cause-In-Fact Of An Unreasonable Interference With A Public Right.**

An unreasonable interference is defined as "those acts that *significantly* interfere with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware."  *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (emphasis added).  Therefore, Plaintiffs must prove that each defendant was a but-for cause of acts that *significantly* interfere with public rights.

As a matter of law and logic, *de minimis* conduct cannot be a but-for cause of a "significant interference."  In nuisance cases, recovery is not allowed where "the alleged interference . . . was either *de minimis* or irrational and, therefore, not compensable."  *Baker v. Chevron U.S.A., Inc.*, 533 F. App'x 509, 524 (6th Cir. Aug. 2, 2013) (citing *Banford v. Aldrich Chem. Co.*, 932 N.E.2d 313 (Ohio 2010)).  The Sixth Circuit further has observed that *de*

---

[40] Ohio nuisance law follows the Restatement's approach to public nuisance. *See City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002).

*minimis* contribution cannot be considered a "'significant harm.'" *Smith v. Carbide and Chems. Corp.*, 507 F.3d 372, 380–81 (6th Cir. 2007) (quoting *Lamb v. Martin Marietta Energy Sys., Inc.*, 835 F.Supp. 959, 969 (W.D. Ky. 1993)). Simply put: standing alone, the Small Distributors' conduct cannot be a but-for cause of any significant interference because they are, at most, *de minimis* contributors.

This is, perhaps, why Plaintiffs and their experts have chosen to ignore the Small Distributors. By omission, Plaintiffs' experts assume the existence of the opioid epidemic without regard to the conduct of the Small Distributors. Indeed, the *significant interference* the Plaintiffs identify can only be caused by significant actors. Even *assuming* broader causation (which the Smaller Distributors adamantly dispute) due to other distribution, when the Small Distributors are considered in isolation, they cannot, as a matter of law, be a cause of an "epidemic." In these cases—where the injury is sustained independently of some actors in a multi-actor case—those actors are not considered causes. *See Gadolinium-Based Contrast Agents*, 2013 WL 593993 at *3 (explaining that defendants are not liable if "it is shown such other causes would have produced the injury *independently* of that defendants' negligence") (citation omitted).

### B.     Plaintiffs Cannot Prove That The Small Distributors' Conduct Was A Substantial Factor In Plaintiffs' Claimed Injury.

Proximate cause is an essential element of public nuisance as well. *See City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 480–81 (6th Cir. 2017); *City of Cleveland v. Ameriquest Mortgage Sec., Inc.*, 615 F.3d 496, 502–06 (6th Cir. 2010). When causation is premised on a cumulative injury, the substantial-factor test still requires that each defendant have a substantial impact on that injury. *See Schwartz*, 102 N.E.3d at 481–83; *City of Cincinnati*, 863 F.3d at 480*; see also* Restatement (Second) of Torts § 431 (1965) (an "actor's negligent conduct

is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm").

The substantial-factor test requires that a defendant's conduct have "such an effect in producing harm as to lead reasonable men to regard it as a cause."  Restatement (Second) of Torts § 431 cmt. a (1965); *Gadolinium-Based Contrast Agents*, 2013 WL 593993 at *3 (citing with approval § 431 of the Restatement).  When a defendant's conduct is so minimal in relation to others', *i.e.*, 1% of shipments at issue, that conduct cannot be considered a substantial factor. Thus, *de minimis* conduct as a matter of law is not a "substantial cause."  *See Byers*, 607 F. Supp.2d at 860 (*de minimis* contribution did not survive summary judgment); *Lohrmann v. Pittsburg Corning Corp.*, 782 F.2d 1156, 1162–64 (4th Cir. 1986) (*de minimis* contribution is not substantial-factor causation); *Birnie v. Elec. Boat Corp.*, 953 A.2d 28, 41 (Conn. 2008) (substantial-factor causation requires participation and causation in "more than a de minimis way"); *New Jersey Dep't of Envtl. Protection v. Ventron Corp.*, 440 A.2d 455, 463 (N.J. Super. Ct. App. Div. 1981) ("We share the trial Judge's view that any increment from the Wolf's property to the mercury pollution in Berry's Creek during their ownership and prior installation of the containment system was de minimis and, therefore, not a substantial factor in proximately causing the dangerous and toxic condition.").

Here, the Small Distributors cannot be considered a substantial factor of the harm because their conduct was *de minimis*.  Thus, summary judgment is appropriate on the public-nuisance claims.  *Devonshire v. Johnston Grp. First Advisors*, 166 F. App'x 811, 815 (6th Cir. 2006) (affirming dismissal of claims at summary judgment because of a complete lack of evidence of proximate cause).

IV.    **PLAINTIFFS' RELIANCE ON AGGREGATE PROOF OF CAUSATION IS PROHIBITED UNDER OHIO LAW.**

From the outset, Plaintiffs have pledged to pursue an aggregate theory of liability and damages through experts.  They assert that their "claims center on the aggregate effect of opioids on the public health, safety, and welfare" and so they "will prove causation" with aggregate proof.[41]

Plaintiffs' theory asks the Court to assume, baselessly, that because some opioid products were purportedly diverted within their communities, some of those diverted products must have come from the Small Distributors.  As an initial matter, this is summary judgment.  The time for "speculations or intuitions" has passed.  *Frazier v. USF Holland*, 250 F. App'x 142, 148 (6th Cir. 2007) (citing *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002)).  Plaintiffs must now come forward with actual evidence.  And Plaintiffs' reliance on so-called aggregate proof is not that evidence.  Their aggregate proof fails to establish individualized causation, which Ohio law demands.  *Pang*, 559 N.E.2d at 1324.  What is more, their form of proof would impose alternative, collective liability, which on these facts Ohio law forbids.  *Burke v. Shaffner*, 683 N.E.2d 861, 865–67 (Ohio Ct. App. 1996).

Because they lack individualized proof, Plaintiffs necessarily resort to an undefined theory of collective liability to meet the causation element of their claims against the Small Distributors.[42]  Such an approach has been squarely rejected under Ohio law.  The Ohio Supreme Court has explained that market-share liability, for example, upends "our fundamental negligence requirement of proving causation."  *Goldman v. Johns-Manville Sales Corp.*, 514

---

[41] Ex. 5 at 10.

[42] *Id.*

N.E.2d 691, 702 (Ohio 1987) (citation and internal quotation marks omitted).  Or as the Sixth

Circuit has observed, "market share departs from traditional notions of tort law because it bases

liability on statistical probability."  *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1430 n.6 (6th Cir.

1997).

 In the product-liability context, the General Assembly has forbidden this theory of

collective liability without causation.  R.C. 2307.73(C); *see also Sutowski v. Eli Lilly & Co.*, 696

N.E.2d 187, 193 (Ohio 1998).  And Ohio courts have expressed little willingness to entertain

alternative liability in other contexts.

 Moreover, the General Assembly has enacted a comprehensive statutory scheme—R.C.

2307.22–2307.23—for fault allocation.  The statutes necessarily encompass cause-in-fact and

proximate causation and abolish joint-and-several liability in tort, with an intentional-tort

exception not present here for the Small Distributors (an intentional tort claim alleged against

them, with supporting evidence, that still would require but-for and proximate causation).  As

other courts have held, such comprehensive fault-allocation schemes further confirm that

adventurous theories of collective or alternative liability without causation, no matter how

labeled, may not proceed.  *E.g.*, *Napier v. Osmose, Inc.*, 399 F. Supp. 2d 811, 820 (W.D. Mich.

2005) (holding that Michigan's elimination of joint and several liability for most tort actions in

its fault allocation statute precluded attempts to use alternative liability theories where plaintiff

could not identify which of defendants' products caused their injuries); *Doe v. Cutter Biological,*

*a Div. of Miles, Inc.*, 852 F. Supp. 909, 918 (D. Idaho 1994) (similar).

 Even in jurisdictions permitting market-share liability, courts uniformly forbid reliance

on this theory unless all potential tortfeasors are joined and the defendants made and sold an

identical product, with an identical formula, carrying an identical risk.  *E.g.*, *Kennedy v. Baxter*

*Healthcare Corp.*, 43 Cal.App. 4th 799, 812 (3d Dist. 1996) (latex gloves); *Mullen v. Armstrong World Indus., Inc.*, 200 Cal.App. 3d 250, 254–57 (1st Dist. 1988) (asbestos); *Pooshs v. Phillip Morris USA, Inc.*, 904 F. Supp.2d 1009, 1032 (N.D. Cal. 2012) (cigarettes).  So too in Ohio for burden-shifting alternative liability.  Indeed, the *Burke* court explained that the "seldom-employed" alternative-liability theory recognized in *Minnich v. Ashland Oil Co.*, 473 N.E.2d 1199 (Ohio 1984) will be utilized only when "all negligent actors are brought before the court" and all of those actors acted tortuously.  683 N.E.2d at 662–63; *see also Sutowski*, 696 N.E.2d at 191 ("In applying alternative liability to the facts in *Minnich*, this court did not relieve the plaintiff of the burden of identifying the tortfeasors.").

Accordingly, even if market-share liability were a viable theory in Ohio, and it is not, that theory—and any other alternative-liability theory—would fail here.  It is beyond dispute that drug traffickers and illicit drug dealers have contributed to the opioid epidemic in the Track One jurisdictions, and not one of them has been joined.  Similarly, it cannot credibly be disputed that pill-mill prescribers and pharmacies have contributed to the opioid epidemic, and not one of them has been joined either.  And, just as importantly, Plaintiffs' expert, Dr. McCann, has confirmed that more than **Redacted** DEA-registered distributors with market share as high or higher than the Small Distributors in the Track One jurisdictions have not been named by Plaintiffs.[43]

---

[43] Ex. 1 at McCann-12, pp. 488 (in Cuyahoga, one distributor with a market share of **Redacted**%), 558 (in Summit, one distributor with a market share of **Redacted**%; one distributor with a market share of **Redacted**%; one distributor with a market share of **Redacted**%; one distributor with a market share of **Redacted**%; two distributors with a market share of **Redacted**%; one distributor with a market share of **Redacted**%; and eight distributors with a market share of **Redacted**%).

## CONCLUSION

At base, Plaintiffs cannot establish that the *de minimis* amounts of opioid products shipped by each Small Distributor caused "a public health epidemic."[44]  Plaintiffs' alleged harm would have occurred with or without the acts of the Small Distributors.  Nor with a straight face can the Small Distributors' shipments be called a substantial factor in the cause of that harm.

As a result, the Small Distributors are entitled to judgment as a matter of law on Counts V–VII and IX–X.  And, because "Ohio law does not recognize a separate cause of action for 'punitive damages,'" *Snyder v. United States*, 990 F. Supp.2d 818, 841 (S.D. Ohio 2014), the Small Distributors are likewise entitled to summary judgment on that unnumbered claim.

Dated: June 28, 2019                          Respectfully submitted,


*/s/ John J. Haggerty*                          */s/ James W. Matthews*
John J. Haggerty (0073572)                      James W. Matthews
James C. Clark                                  Katy E. Koski
Stephan A. Cornell                              Kristina Matic
FOX ROTHSCHILD LLP                              FOLEY & LARDNER LLP
2700 Kelly Road, Suite 300                      111 Huntington Avenue
Warrington, PA 18976                            Boston, MA 02199
Tel: (215) 345-7500                             Tel:    617.342.4000
Fax: (215) 345-7507                             Fax:    617.342.4001
jhaggerty@foxrothschild.com                     Email:  jmatthews@foley.com
jclark@foxrothschild.com                                kkoski@foley.com
scornell@foxrothschild.com                              kmatic@foley.com

*Counsel for Defendant,*
*Prescription Supply Inc.*                       *Counsel for Defendant Anda, Inc.*

---

[44] ECF No. 654 at 1.

/s/ William E. Padgett
William E. Padgett (IN No. 18819-49)
Kathleen L. Matsoukas (IN No. 31833-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
Email: william.padgett@btlaw.com
        kathleen.matsoukas@btlaw.com

*Counsel for Defendants H. D. Smith, LLC,
f/k/a H. D. Smith Wholesale Drug Co.,
H. D. Smith Holdings, LLC and H. D. Smith
Holding Company*

/s/ John P. McDonald
John P. McDonald
Texas Bar No. 13549090
jpmcdonald@lockelord.com
C. Scott Jones
Texas Bar No. 24012922
sjones@lockelord.com
Lauren M. Fincher
Texas Bar No. 24069718
lfincher@lockelord.com
Brandan J. Montminy
Texas Bar No. 24088080
brandan.montminy@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
T: 214-740-8445
F: 214-756-8110

*Attorneys for Henry Schein, Inc.
and Henry Schein Medical Systems, Inc.*

## **<u>CERTIFICATE OF SERVICE</u>**

I, John J. Haggerty, certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ John J. Haggerty*
John J. Haggerty (0073572)