# EXHIBIT 12

Highly Confidential - Subject to Further Confidentiality Review

```
  1                 UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
  2                       EASTERN DIVISION
  3
       IN RE: NATIONAL           )
  4    PRESCRIPTION              )    MDL No. 2804
       OPIATE LITIGATION         )
  5    _____    )    Case No.
                                 )    1:17-MD-2804
  6                              )
       THIS DOCUMENT RELATES     )    Hon. Dan A.
  7    TO ALL CASES              )    Polster
  8
                     TUESDAY, APRIL 23, 2019
  9
          HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
 10                 CONFIDENTIALITY REVIEW
 11                         - - -
 12            Videotaped deposition of Mark A.
 13    Schumacher, M.D., Ph.D., held at the offices of
 14    Morgan, Lewis & Bockius LLP, One Market,
 15    Spear Street Tower, San Francisco,
 16    California, commencing at 9:35 a.m., on the
 17    above date, before Carrie A. Campbell,
 18    Registered Diplomate Reporter and Certified
 19    Realtime Reporter.
 20
 21
 22                         - - -
 23
                  GOLKOW LITIGATION SERVICES
 24         877.370.3377 ph | 917.591.5672 fax
                     deps@golkow.com
 25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    QUESTIONS BY MR. ERCOLE:
 2         Q.    Fair enough.
 3               Are you familiar with any
 4    marketing document pertaining to Cephalon?
 5               MR. LOESER:  Same objection as
 6         I made before, which is that the
 7         witness has indicated his lack of
 8         familiarity with the subsidiaries and
 9         affiliates of the listed defendants.
10               If you want to ask him and
11         clarify the relationship, you might
12         get more information.
13               MR. ERCOLE:  Counsel, you
14         should probably take a look at
15         footnote 1.
16    QUESTIONS BY MR. ERCOLE:
17         Q.    But you can answer the
18    question, sir.
19         A.    Fair enough.
20               I'm not aware of any marketing
21    materials that I reviewed that were available
22    to be reviewed that were the basis of the
23    report.  Again, my intent was to draw
24    examples.
25         Q.    Fair enough.
```

 1                I'll also represent to you that
 2     there are no documents referenced in either
 3     your report or appendix pertaining to Teva
 4     Pharmaceuticals.
 5                MR. LOESER:  Objection.  Form.
 6     QUESTIONS BY MR. ERCOLE:
 7          Q.    So my question to you is:  Are
 8     you familiar with any marketing document
 9     pertaining to Teva USA or Teva?
10                MR. LOESER:  Objection.  Form.
11                THE WITNESS:  In the
12          preparation of my report, I did not
13          review any marketing materials from
14          Teva.
15     QUESTIONS BY MR. ERCOLE:
16          Q.    I'll represent to you that with
17     respect to two entities, Actavis Pharma and
18     Actavis, LLC, there are no documents
19     reflected in your appendix that have been
20     produced or come from those companies.
21                Is it fair to say that you
22     haven't reviewed any of those marketing
23     materials, too?
24                MR. LOESER:  Objection.  Form.
25                THE WITNESS:  I just need a

1           moment to consider that.
2                   Well, within the document
3           page 25 within the appendix, the Bate
4           stamp, I believe, 301, 302, shows
5           Actavis as part of that.
6    QUESTIONS BY MR. ERCOLE:
7           Q.    Do you know whether those
8    documents pertain to Actavis Pharma or
9    Actavis LLC in any way, shape or form?
10                  MR. LOESER:  Objection.  Form.
11                  THE WITNESS:  It's my
12          understanding that that is the acronym
13          for Actavis.
14   QUESTIONS BY MR. ERCOLE:
15          Q.    And I'll represent to you, sir,
16   that those are not documents that either
17   Actavis Pharma or Actavis LLC produced or
18   that relate to them.
19                  So other than those two
20   documents, can you -- sitting here today, can
21   you recall any marketing that you reviewed
22   pertaining to or from Actavis Pharma or
23   Actavis LLC?
24                  MR. LOESER:  Objection.  Form.
25                  I also object to your

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.     It's an example of the call
 2   notes.
 3          Q.     Well --
 4          A.     There were thousands and
 5   thousands of call notes that were provided by
 6   counsel.
 7          Q.     Okay.  Well, Exhibit B, at
 8   least, are the call notes that --
 9          A.     Are --
10          Q.     Let me just finish.
11                 Exhibit B reflects the call
12   notes that you've considered in connection
13   with this case; is that correct?
14          A.     That is correct.
15          Q.     Okay.  Sitting here today, can
16   you identify for me any false statements that
17   were made by Cephalon or a Cephalon sales
18   representative to any prescriber in Ohio?
19                 MR. LOESER:  Objection to form.
20                 THE WITNESS:  I'm not aware of
21          any.
22                 MR. LOESER:  Counsel, we've
23          been going about another hour.  So if
24          you finish up this line --
25                 MR. ERCOLE:  Sure.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  MR. LOESER:  And again, we
 2           should talk about whether we want to
 3           take lunch now or come back and
 4           take --
 5     QUESTIONS BY MR. ERCOLE:
 6           Q.    Okay.  Sitting here today, can
 7     you identify for me any false statements that
 8     were made by Teva or Teva USA or a Teva USA
 9     sales representative to any prescriber in
10     Ohio?
11                  MR. LOESER:  Objection.  Form.
12                  THE WITNESS:  No, I have no
13           information to support that.
14     QUESTIONS BY MR. ERCOLE:
15           Q.    Sitting here today, can you
16     identify for me any false statements that
17     were made by Watson Laboratories or Watson
18     Laboratories sales representative to any
19     prescriber in Ohio?
20                  MR. LOESER:  Objection.  Form.
21                  And again, the issue of
22           subsidiaries and whether you want to
23           explain the relationship.
24                  THE WITNESS:  I don't know.
25
```

```
 1    QUESTIONS BY MR. ERCOLE:
 2         Q.    Sitting here today, can you
 3    identify for me any false statements that
 4    were made by Actavis Pharma or any sales
 5    representative of Actavis Pharma to any
 6    prescriber in Ohio?
 7              MR. LOESER:  Objection.  Form.
 8              THE WITNESS:  I don't know.
 9    QUESTIONS BY MR. ERCOLE:
10         Q.    Sitting here today, can you
11    identify for me any false statements that
12    were made by Actavis LLC or any sales
13    representative of Actavis LLC to any
14    prescriber in Ohio?
15              MR. LOESER:  Objection.  Form.
16              Same objection about
17         subsidiaries and what information you
18         would like the witness to evaluate
19         when answering your questions.
20              THE WITNESS:  I don't know.
21    QUESTIONS BY MR. ERCOLE:
22         Q.    How about sitting here today --
23    putting aside "to prescribers in Ohio."
24              Sitting here today, can you
25    identify any false statement that any of
```

```
 1    those entities I just identified, Cephalon,
 2    Watson Labs, Teva USA, Actavis Pharma or
 3    Actavis LLC have made in any context?
 4              MR. LOESER:  Objection.  Form.
 5              THE WITNESS:  Given the
 6         materials that I've reviewed, I -- and
 7         focused on the report, which is not
 8         intended to be an exhaustive review of
 9         the -- of all manufacturers, I do not
10         have evidence for those listed
11         companies.
12              MR. LOESER:  Is now a good time
13         for a break?
14              MR. ERCOLE:  Sure, if you want
15         to take a break.
16              THE WITNESS:  Yeah, I think
17         that would be good.
18              MR. LOESER:  And do you want to
19         just break for lunch, or do you want
20         to come back and then go another --
21              MR. ERCOLE:  How about we go
22         off the record and then talk about
23         that?
24              VIDEOGRAPHER:  Okay.  We are
25         now going off the record, and the time
```

```
 1           is 11:46 a.m.
 2              (Off the record at 11:46 a.m.)
 3                   VIDEOGRAPHER:  We are now going
 4           back on the record, and the time is
 5           12:39 p.m.
 6  QUESTIONS BY MR. ERCOLE:
 7           Q.     Good afternoon, Dr. Schumacher.
 8           A.     Good afternoon.
 9           Q.     Sir, have you -- in your
10  capacity as a treating physician, have you
11  ever been visited or detailed by sales
12  representatives from pharmaceutical
13  companies?
14           A.     Yes.
15           Q.     Okay.  And how many -- is that
16  a frequent occurrence?
17           A.     Not recently.  The university
18  had instituted a number of rules that further
19  and further restrict pharmaceutical reps to
20  have direct access to physicians and training
21  physicians.
22           Q.     When were you detailed by
23  pharmaceutical representatives?
24                  Do you have an approximate
25  period of time?
```