# EXHIBIT 50

0   01


2      `      IN THE UNITED STATES DISTRICT COURT

3           FOR THE NORTHERN DISTRICT OF OHIO

4                   EASTERN DIVISION

5      -----------------------------X

       IN RE: NATIONAL PRESCRIPTION  MDL No. 2804

6      OPIATE LITIGATION,

                                Case No. 17-MD-2804

7      This document relates to:

8      All Cases                    Hon. Dan A. Polster

9      -----------------------------X

10                * HIGHLY CONFIDENTIAL *

11     * SUBJECT TO FURTHER CONFIDENTIALITY REVIEW  *

12               VIDEOTAPED DEPOSITION

13                        OF

14               LACEY R. KELLER

15              New York, New York

16             Thursday, June 13, 2019

17

18

19

20

21

22

23

       Reported by:

24     ANNETTE ARLEQUIN, CCR, RPR, CRR, RSA

25

1

2          Q.   "And that the monthly mean was

3     refreshed periodically."

4               Do you see that as well?

5          A.   I do see that.

6          Q.   Which you understood to mean that

7     "The mean and standard deviation were

8     calculated approximately twice per year

9     using the most recent six months of data."

10              Do you see that?

11         A.   I do see that.

12         Q.   When you say "six months of

13    data," what data are you referring to?

14         A.   So that would be the chargeback

15    data that it would be applied to.

16         Q.   And so your understanding is that

17    the system, excuse me, that the monthly

18    mean was refreshed periodically and that

19    the mean and standard deviation were

20    calculated approximately twice per year

21    using the most recent six months of

22    chargeback data?

23         A.   So we applied it to the

24    chargeback data.  And so when we're making

25    this assumption, we're assuming that the

1

2    most recent six months, so let's say we're

3    doing the report on -- let's make it easy

4    on myself -- on February would be like

5    January and then the preceding six months

6    to that.  And then that block would be

7    refreshed to include the next six months.

8         Q.   Okay.  Did you review any orders

9    that Teva had received?

10        A.   Any orders that Teva had

11   received...

12             Not unless they appeared in the

13   chargeback data.

14        Q.   And did you review any data that

15   Teva had about its orders that was

16   available to Teva at the time the orders

17   were made?

18        A.   No.  That would be outside of

19   this report.

20        Q.   Did you determine whether the

21   Teva transactions flagged by your various

22   metrics, by various metrics in your report

23   were also flagged by the Teva defendants'

24   SOM systems?

25             MS. CONROY:  Objection.

Highly Confidential - Subject to Further Confidentiality Review

1

2          A.   I would not know.

3          Q.   Did you look to see if those

4    transactions were flagged by those systems?

5              MS. CONROY:  Objection.

6          A.   Again, I wouldn't know.  It was

7    not asked of me.

8          Q.   And so you did not review any

9    documents regarding investigations of

10   pended orders in those systems; is that

11   accurate?

12         A.   Not that I can recall.  That

13   would have been outside of my expertise to

14   review those.

15         Q.   I know we discussed this a little

16   bit before, but I want to make it clear for

17   the record.

18              On page 9 of your report, in

19   paragraph 22, you say that "The report

20   focuses specifically and exclusively on

21   manufacturers' anti-diversion and

22   suspicious order monitoring programs,"

23   correct?

24         A.   Correct, it does state those

25   words.

1

2          Q.    And is that what you were

3     endeavoring to offer an opinion on, the

4     suspicious order monitoring programs?

5               MS. CONROY:  Objection.

6          A.    No.  I think as we stated

7     earlier, and it's my intention to answer

8     this the same as I have before, but I was

9     asked to apply the known compliance metrics

10    to labelers' data including chargebacks and

11    IQVIA data.

12         Q.    Okay.  So you're not offering any

13    opinions today that the Teva defendants

14    failed to flag a potentially suspicious

15    order, correct?

16         A.    Correct.

17              MS. CONROY:  Objection.

18         A.    Outside of my scope.

19         Q.    Similarly, you're not offering

20    any opinions today or in your report that

21    the Teva defendants failed to detect and

22    report a suspicious order, correct?

23         A.    Correct.  That would be outside

24    of my expertise.

25              MR. HAMMOUD:  All right.  That's