**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45090<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 17-OP-45004 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**MANUFACTURER DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PUBLIC NUISANCE CLAIMS**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I. Plaintiffs' Common Law Public Nuisance Claim Fails At The Outset Because Putting A "Nuisance" Label On An Unspecified Set Of Conditions Is Insufficient. ................................. 1

II. Even If The Court Accepts "Nuisance" With No Defined Scope, Plaintiffs Cannot Prove The Necessary Elements Of Their Nuisance Claims On The Record Here. .................................... 4

    A.    Plaintiffs Cannot Prove the Violation of any Public Right. ............................................. 4

    B.    Plaintiffs Cannot Prove Proximate Causation. ................................................................ 7

    C.    Plaintiffs Cannot Show Intent or Inherently Injurious Conduct. .................................... 8

III. Summary Judgment Is Also Appropriate On Plaintiffs' Statutory Claim. ............................ 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Angerman v. Burick*,
  2003 WL 1524505 (Ohio Ct. App. 2003) ............................................................................... 9

*Brown v. Scioto Cty. Bd. of Commrs.*,
  622 N.E.2d 1153 (Ohio Ct. App. 1993) .................................................................................. 4

*City of Chicago v. Beretta U.S.A., Corp.*,
  821 N.E.2d 1099 (Ill. 2004) ................................................................................................ 6, 7

*City of Cincinnati v. Beretta U.S.A. Corp.*,
  768 N.E.2d 1136 (Ohio 2002) ................................................................................................ 8

*City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*,
  863 F.3d 474 (6th Cir. 2017) .......................................................................................... passim

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.*,
  615 F.3d 496 (6th Cir. 2010) ............................................................................................... 7, 8

*City of New York v. Beretta U.S.A. Corp.*,
  315 F. Supp. 2d 256 (E.D.N.Y. 2004) .................................................................................... 8

*City of Toledo v Sherwin-Williams Co.*,
  2007 WL 4965044 (Ohio Com. Pl. Dec. 12, 2007) ................................................................ 6

*Cleveland v. JP Morgan Chase Bank, N.A.*,
  2013 WL 1183332 (Ohio Ct. App. Mar. 21, 2013) ............................................................ 1, 4

*D.C. v. Beretta U.S.A. Corp.*,
  872 A.2d 633 (D.C. 2005) ...................................................................................................... 2

*Ganim v. Smith & Wesson Corp.*,
  780 A.2d 98 (Conn. 2001) ...................................................................................................... 5

*Higgins v. Conn. Light & Power Co.*,
  30 A.2d 388 (Conn. 1943) ...................................................................................................... 4

*In re Lead Paint Litig.*,
  924 A.2d 484 (N.J. 2007) ....................................................................................................... 2

*Kramer v. Angel's Path, LLC*,
  882 N.E.2d 46 (Ohio Ct. App. 2007) .................................................................................. 4, 7

*NAACP v. AcuSport, Inc.*,
  271 F. Supp. 2d 435 (E.D.N.Y. 2003) ................................................................................ 8

*Natale v. Everflow E., Inc.*,
  959 N.E.2d 602 (Ohio Ct. App. 2011) ............................................................................... 9

*Nottke v. Norfolk S. Ry. Co.*,
  264 F. Supp. 3d 859 (N.D. Ohio 2017) ............................................................................. 9

*Paulus v. Citicorp N. Am., Inc.*,
  2014 WL 4557603 (S.D. Ohio Sept. 12, 2014) ................................................................ 4

*People v. Sturm, Ruger & Co., Inc.*,
  761 N.Y.S.2d 192 (App. Div. 2003) .................................................................................. 8

*See Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*,
  646 N.W.2d 777 (Wis. 2002) ............................................................................................. 5

*State ex rel. Andersons v. Masheter*,
  203 N.E.2d 325 (Ohio 1964) ............................................................................................. 5

*State ex rel. R.T.G., Inc. v. State of Ohio*,
  780 N.E.2d 998 (Ohio 2002) ........................................................................................ 9, 10

*State v. Lead Indus. Ass'n, Inc.*,
  951 A.2d 428 (R.I. 2008) ................................................................................................... 5

**Statutes**

Ohio Rev. Code § 3719.011(A) .............................................................................................. 10

Ohio Rev. Code § 4729.16(A)(2)(a)-(*l*) ................................................................................. 10

**Other Authorities**

Donald G. Gifford, *Public Nuisance As A Mass Products Liability Tort*,
  71 U. Cin. L. Rev. 741 (2003) .......................................................................................... 6

James M. Black et al., *Recent Developments in Products, General Liability, and Consumer Law*,
  39 Tort Trial & Ins. Prac. L.J. 629 (2004) ....................................................................... 8

Restatement (Second) of Torts ("Restatement") § 821 (1979) .......................................... 2, 4, 5, 6

Restatement (Third) of Torts: Liability for Physical Harm (Basic Principles)
  6 Spec. Note TD No 3 (2003) ........................................................................................... 7

iii

## INTRODUCTION

Plaintiffs allege two separate public nuisance claims: an "Absolute Public Nuisance" claim under Ohio common law; and a "Statutory Public Nuisance" claim under Ohio Revised Code §§ 715.44(A), 3767.01, 3767.03, & 4729.35.  Dkt. 1466 ("3AC") ¶¶ 975-1039.  In discovery, Plaintiffs have broadly asserted that Defendants caused and/or contributed to "the public nuisance and health crisis described in [their] Complaint."[1]  But discovery is closed, and Plaintiffs have yet to define the "nuisance" or identify any specific "public right" that Defendants are alleged to have violated.  While such wide-ranging and all-encompassing allegations may have been sufficient at the pleadings stage, simply labeling a set of broad conditions (ranging from an increase in addiction to employers' loss of productivity) a "nuisance" does not satisfy the legal requirement to define the scope of the tort at the close of discovery.  Plaintiffs' failure to commit to any concrete definition of nuisance—coupled with the fact that the "conditions" they identify relate to *private*, not public, rights—entitles Defendants to summary judgment on Plaintiffs' common law claim.  For independent reasons, even if the Court allows Plaintiffs to proceed without defining the "nuisance" that Manufacturer Defendants' allegedly contributed to, both of Plaintiffs' nuisance claims fail because, on the record in this case, Plaintiffs cannot prove the elements of either their common law nuisance claim or their statutory nuisance claim, as set forth below.

## ARGUMENT

**I.   Plaintiffs' Common Law Public Nuisance Claim Fails At The Outset Because Putting A "Nuisance" Label On An Unspecified Set Of Conditions Is Insufficient.**

"[T]he tort of public nuisance only reaches so far."  *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *3 (Ohio Ct. App. Mar. 21, 2013) (affirming dismissal of nuisance

---

[1] Summit Cty. & City of Akron Plfs.' Replacement Supp. Responses and Objs. to Mfr. Defs.' Interrog. Nos. 1, 2, 3, 5, 8, 9, 11, 12, 13, 15, 20, 21, 26, 27, 28 & 29, No. 17-md-2804, at 314 (Mar. 18, 2019); *see, e.g.*, 3AC ¶ 999.

1

action).  Labeling a set of conditions a "nuisance" does not by *ipse dixit* satisfy the requirement to define the scope of the tort.  *See* Restatement (Second) of Torts ("Restatement") § 821A cmt. c (1979) (term "'nuisance' does not signify any particular kind of conduct").  In addition to satisfying the elements of the claim, a plaintiff must define the scope of the nuisance for which they seek redress.  *See, e.g.*, *In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007) (cautioning against "ill-defined claim[s]" and holding that distribution of lead-based paint products did not constitute actionable conduct for purposes of a public nuisance action); *D.C. v. Beretta U.S.A. Corp.*, 872 A.2d 633, 650-51 (D.C. 2005) (affirming dismissal of action broadly alleging "public nuisance of readily available handguns and machine guns").[2]

This Court has recognized as much.  In a parallel MDL action, the Court itself suggested a definition of nuisance extrapolated from the R&R in that case:  "The Court takes the language quoted above from the R&Rs to mean that the nuisance is the condition of having more opioids free in circulation than are medically necessary (e.g. an illicit, secondary, or 'black' market)…."  Dkt. 1680 at 19.  Plaintiffs here, however, have failed to pursue any such defined claim.  To the contrary, as the Court recognized at the pleadings stage here, "Plaintiffs never expressly define what they mean by the term 'opioid epidemic.'"  Dkt. 1203 at 8.

Although that failure might not have doomed Plaintiffs' claim at the pleading stage, it does now.  Discovery is now closed, yet Defendants still do not know what the "nuisance" is, other than the breathtakingly broad set of conditions Plaintiffs claim the nuisance "includes":  "an illegal, secondary market for prescription opioids"; "[e]asy access to prescription opioids by children and teenagers"; "[a] staggering increase in opioid abuse, addiction, overdose, injuries, and deaths"; "[i]nfants being born addicted to opioids due to prenatal exposure"; "[e]mployers hav[ing] lost the

---

[2] For statutory claims, the definition of the "nuisance" is circumscribed by positive law.  *See infra* Part III.

value of productive and healthy employees"; and "[i]ncreased costs and expenses for Plaintiffs relating to healthcare services, law enforcement, the criminal justice system, social services, and education systems."  3AC ¶ 1007.  Elsewhere, Plaintiffs argued that "[t]he condition that constitutes the public nuisance" could be "termed" the "increased volume of opioid prescribing," "*or* the explosion in opioid use," "*or* the massive amount of opioids that flooded into Summit County."  *E.g.*, Dkt. 654 at 6 (emphases added).  As a result, it is still unclear what the nuisance is, even though it is now less than four months from the beginning of trial.

The failure even to define the nuisance has real implications.  First, as addressed in more detail in Manufacturer Defendants' Brief in Support of Motion for Summary Judgment for Plaintiffs' Failure to Offer Proof of Causation ("Causation Brief"), Plaintiffs must prove that each Manufacturer Defendant significantly contributed to the nuisance.  That is impossible at this juncture, as Plaintiffs have not explained what Defendants contributed to, or linked that to any unlawful conduct.  *See* Causation Br. 22-23.  That failure is compounded by Plaintiffs' expansive abatement claim—which seeks over $7 billion to address wide-ranging societal issues, including costs related to law enforcement, health care, foster care, and lost worker productivity—while their experts include in that claim harm from illegal opioid products never marketed or sold by any Defendant in their damages calculations.  *See, e.g.*, Ex. 1, Cutler Rep. ¶¶ 17, 51, 54-63, 94 (Mar. 25, 2019); Ex. 2 Rosenthal Rep. ¶¶ 58-64 (Mar. 25, 2019).  The societal problems arising from the influx and addition to illegal drugs such as fentanyl and heroin cannot be part of the nuisance the Manufacturer Defendants "significantly contributed to" and be required to "abate."

Now that discovery is over, the Court cannot allow a common law nuisance claim to proceed—and Defendants cannot meaningfully defend such a claim—without knowing what the nuisance is.

**II.     Even If The Court Accepts "Nuisance" With No Defined Scope, Plaintiffs Cannot Prove The Necessary Elements Of Their Nuisance Claims On The Record Here.**

Plaintiffs alleged a claim of "*absolute* public nuisance," 3AC ¶ 1002, which requires proof of a right common to the general public (also known as a "public right"), proof of an unreasonable interference therewith, and proof either that the defendants intentionally created the conditions that define the nuisance or of "an abnormally dangerous condition." *Kramer v. Angel's Path, LLC*, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007).  Plaintiffs have the burden of proving that Defendants had control of the instrumentalities of the nuisance, and must establish proximate cause between Defendant's unreasonable conduct, the nuisance, and the alleged injury.  Restatement § 821B; *see JP Morgan*, 2013 WL 1183332, at *3 (Restatement governs Ohio common law nuisance).  Plaintiffs cannot meet their burden on the record here.

**A.     Plaintiffs Cannot Prove the Violation of any Public Right.**

Ohio applies the traditional definition of a public right to common law nuisance claims.  *See Brown v. Scioto Cty. Bd. of Commrs.*, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993).  Under that definition, a public right "is collective in nature," as opposed to merely being enjoyed by many (or even all) individuals in their individual capacities.  *Paulus v. Citicorp N. Am., Inc.*, 2014 WL 4557603, at *16 (S.D. Ohio Sept. 12, 2014) (citation omitted) (granting summary judgment to defendants where "Plaintiffs ha[d] not produced any evidence of a violation of a public right in the proper sense of the term"); *see Brown*, 622 N.E.2d at 1158 ("Conduct does not become a public nuisance merely because it interferes with a large number of people.").  "The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of *its* rights." *Higgins v. Conn. Light & Power Co.*, 30 A.2d 388, 391 (Conn. 1943) (emphasis added; citation omitted); *see* Restatement § 821B cmt. g.

4

Examples help illustrate the distinction. Take "the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured"—all individuals enjoy those rights, but they enjoy them *individually*, not as a collective. Restatement § 821B cmt. g. By contrast, the rights to "[n]avigation on public waters,"[3] "of public passage,"[4] and "to use public space"[5] are collective by their very nature; they are "rights enjoyed by citizens *as part of the public*" rather than as individuals.[6] *See id.* ("pollution prevent[ing] the use of a public bathing beach or kill[ing] the fish in a navigable stream," thereby "depriv[ing] all members of the community of the right to fish," would constitute a public nuisance; but "pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water" would not).

None of the rights Plaintiffs claim were infringed in this case constitutes a *public right* under Ohio common law. While Plaintiffs allege "a common right … to be free from conduct that creates a disturbance and reasonable apprehension of danger to person and property," 3AC ¶ 1001, the Restatement succinctly disposes of that theory. "A public right is … collective in nature *and not like the individual right that everyone has not to be assaulted ….*" Restatement § 821B cmt. g (emphasis added). The right "to be free from conduct that creates a disturbance and reasonable apprehension of danger to person and property," 3AC ¶ 1001, is thus a quintessential *private* right.

The same is true of the right to be "safe from defective products." *See* Dkt. 654 at 10. Again, "[a] public right is one common to all members of the general public" and is "not like the individual right that everyone has not to be … injured." Restatement § 821B cmt. g; *see State v. Lead Indus. Ass'n., Inc.*, 951 A.2d 428, 454 (R.I. 2008) ("no common law public right to … a

---

[3] *State ex rel. Andersons v. Masheter*, 203 N.E.2d 325, 327 (Ohio 1964).

[4] *City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*, 863 F.3d 474, 477 (6th Cir. 2017).

[5] *Id.*

[6] *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 131-32 (Conn. 2001) (emphasis added); *see also See Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 646 N.W.2d 777, 728 (Wis. 2002).

5

certain standard of medical care"). All individuals enjoy the right not to be injured in the context of medical care, but each individual enjoys that right *individually*, not collectively. In the same way, while all citizens in the Track One Counties have a right not to be subject to fraudulent marketing activity, each citizen enjoys that right in *her individual capacity*. *See* Restatement § 821B cmt. g ("individual right that everyone has not to be defrauded" not a public right).

Plaintiffs additionally contend that Defendants interfered "with the public health, welfare, and safety." 3AC ¶ 1001. As this Court has recognized, "at common law, 'public nuisances included interference with the public health." Dkt. 1680 at 18-19 (quoting Restatement § 821B cmt. b). But simply invoking the terms "public health" (or "public safety," "public peace," etc.) does not transform a series of vague allegations into a public nuisance. *See* Donald G. Gifford, *Public Nuisance As A Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741, 815 (2003) ("That which might … harm[] 'the public interest' is a far broader category than that which actually violates 'a public right.'"). While "the public health" may be workable shorthand for a resource the public shares indivisibly as a collective—for instance, the right to clean water—not all things that affect "the public health" do so on a collective basis. *See City of Toledo v Sherwin-Williams Co.*, 2007 WL 4965044, at n.2 (Ohio Com. Pl. Dec. 12, 2007) (rejecting attempt "to bring a public nuisance action to seek abatement of a condition that is injurious to public health, safety, and welfare"); *see also* Restatement § 821B cmts. b, g. Only claims that seek redress for an invasion of a right *shared by the public as a collective—e.g.*, claims based on "storage of explosives in the midst of a city," "shooting of fireworks in the public streets," or "loud and disturbing noises"— may properly form the basis of a traditional common law public nuisance claim. Restatement § 821B cmt. b; *see City of Chicago v. Beretta U.S.A., Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004).

6

Plaintiffs have not identified any right common to the public that has been violated, and cannot meet this element of their common law claim.

### B. Plaintiffs Cannot Prove Proximate Causation.

As discussed in Manufacturer Defendants' Causation Brief, Plaintiffs must prove proximate causation, including on their common law nuisance claim. "Tort law does not impose liability on an actor for all harm factually caused by the actor's tortious conduct." Restatement (Third) of Torts: Liability for Physical Harm (Basic Principles) 6 Spec. Note TD No 3 (2003). That goes for all torts, Ohio common law public nuisance included. *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 502-06 (6th Cir. 2010) (affirming dismissal of common law nuisance claim for failure to sufficiently allege proximate cause).

In order to establish proximate cause for purposes of a common law public nuisance claim, a plaintiff must make two related showings. First, the plaintiff must establish that the defendant exercised *sufficient control over the product that caused the injury*. *See Kramer*, 882 N.E.2d at 56 (no nuisance liability "absent any evidence of … possession or control" establishing that defendant could "create or prevent [the] nuisance"). But it is axiomatic that Manufacturer Defendants did not exercise any control over *illegal* drugs, and Plaintiffs have no evidence to the contrary. Thus, the failure of Plaintiffs (and their experts) to distinguish between harms allegedly caused by prescription opioids and harms caused by illegal drugs dooms their nuisance claim. Second, the plaintiff must show that the defendant's conduct is not too remote from the injuries the plaintiff alleges. *Deutsche Bank*, 863 F.3d at 482; *see City of Chicago*, 821 N.E.2d at 1136 ("existence of a duty and … of legal cause" "depend on an analysis of foreseeability"). But, again, Plaintiffs can point to no evidence that *directly* links Manufacturers to the types of illegal-drug-driven harms for which Plaintiffs seek to recover. *See* Causation Br. 22-23.

Plaintiffs avoided dismissal at the motion to dismiss stage by arguing that they had pled enough to "raise[] a reasonable inference that the Defendants' conduct is a cause of the public nuisance alleged." Dkt. 654 at 13.  That argument relied entirely on law that is inapplicable past the pleadings stage.  *City of Cincinnati v. Beretta U.S.A. Corp.,* 768 N.E.2d 1136 (Ohio 2002) (cited at Dkt. 654 at 13-14), does not allow Plaintiffs' nuisance claim to proceed further.[7]  The record is closed, and Plaintiffs have not tied any alleged misrepresentations by the Manufacturer Defendants to harms in the Track One Counties; nor have they identified a single "suspicious order" or medically unnecessary prescription to be shipped into the Track One Counties by the Manufacturer Defendants.  Indeed, Plaintiffs have failed to distinguish between lawful conduct and unlawful conduct; between harms from illegal drugs and legal ones; and between the actions of defendants and non-defendants.  *See* Causation Br. 13-15, 20-21.  However the nuisance is defined, there is thus a stark and dispositive lack of proof that any one of the Manufacturer Defendants' *unlawful conduct* has somehow *significantly contributed* to its constituent conditions.  *See id.* 4-5, 22-23.  Summary judgment is therefore appropriate.

### C. Plaintiffs Cannot Show Intent or Inherently Injurious Conduct.

Even if Plaintiffs could show that Manufacturer Defendants engaged in unreasonable conduct that not only interfered with a cognizable public right for purposes of Ohio nuisance law, but also proximately caused the nuisance and the injuries alleged, Plaintiffs' claims would still fail

---

[7] *Beretta* held that allegations sufficient to raise a "reasonable inference" of a relation between the conduct alleged and the injury asserted suffice to defeat a motion to dismiss.  But that is all it holds.  Indeed, the Ohio Supreme Court has only ever cited *Beretta* to support the proposition that a plaintiff's burden at the pleading stage is low.  Now, post-discovery, *Beretta* cannot save Plaintiffs' claim.  Nor can Plaintiffs' out-of-state cases.  *See* Dkt. 654 at 13-14 (citing *City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 281-82 (E.D.N.Y. 2004), and *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 497 (E.D.N.Y. 2003)).  Those decisions were almost certainly incorrect as a matter of New York law.  *See* James M. Black et al., *Recent Developments in Products, General Liability, and Consumer Law*, 39 Tort Trial & Ins. Prac. L.J. 629, 655 n.253 (2004) (noting conflict with *People v. Sturm, Ruger & Co., Inc.*, 761 N.Y.S.2d 192 (App. Div. 2003)).  But even if they were correct under New York law, the lax conception of proximate cause those cases applied is far afield from the traditional tort that obtains under Ohio law.  *See Deutsche Bank*, 863 F.3d at 480; *Ameriquest*, 615 F.3d at 502.

for an independent reason.  Plaintiffs' common law claims are for *absolute* public nuisance, and an absolute public nuisance claim must be "based on either *intentional* conduct or *an abnormally dangerous condition* that cannot be maintained without injury to property, no matter what care is taken."  *State ex rel. R.T.G., Inc. v. State of Ohio*, 780 N.E.2d 998, 1010 (Ohio 2002) (emphases added); *see Deutsche Bank*, 863 F.3d at 477 (explaining that, in Ohio, "[a]n absolute public nuisance, sometimes called nuisance per se, comes in two forms, one requiring more evidence of intent (akin to an intentional tort), the other requiring less (akin to a strict liability tort)").  Plaintiffs cannot prove either of those elements here.

First, the record is devoid of evidence that Manufacturer Defendants "intended to bring about the conditions" of the public health crisis (or any of the conditions that Plaintiffs purport to be included in the "nuisance").  *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017).  While Plaintiffs *pleaded* intentional conduct, *see* 3AC ¶ 1002, such bare recitations of elements does not suffice now that discovery is closed.  Moreover, while "intentional conduct" in this context does not require proof that the defendant "intended" "the existence of a nuisance," it *does* require proof the defendant "intended to bring about the conditions which are in fact found to be a nuisance."  *Angerman v. Burick*, 2003 WL 1524505, at *2 (Ohio Ct. App. 2003).  And there is simply no allegation in Plaintiffs' complaint, let alone evidence in this record, that Manufacturer Defendants *intended* the abuse, misuse, and addiction that Plaintiffs say constitute "the opioid crisis."  Nor have Plaintiffs put forward any meaningful evidence of conduct by Manufacturer Defendants that a reasonable finder of fact could conclude was *intended* to bring about the conditions that constitute the (still-entirely-undefined) nuisance.  *See, e.g.*, *Natale v. Everflow E., Inc.*, 959 N.E.2d 602, 608-09 (Ohio Ct. App. 2011) (affirming summary judgment on "an absolute nuisance [claim] arising from intentional misconduct" due in part to lack of evidence of intent).

9

Plaintiffs will inevitably argue that Manufacturer Defendants somehow "knew or should have known" that their conduct would "create[ or] maintain[] a public nuisance." *See Deutsche Bank*, 863 F.3d at 478. But that is not enough: "say[ing] only that [the defendant] 'knew or should have known that they created and maintained a public nuisance'" is insufficient to prove the intent prong of "an absolute nuisance claim." *Id.* (citation omitted). That failure is fatal to Plaintiffs' claim. After all, Plaintiffs' experts *concede* (as they must) that "prescription opioids" often "confer positive benefits on particular individuals when used in accordance with scientifically acceptable clinical criteria, and might in those circumstances generate positive externalities to others." Ex. 3, McGuire Rep. re Public Nuisance ¶ 23 (Mar. 25, 2019). For this reason, Plaintiffs are foreclosed from asserting that selling or marketing prescription opioids is "inherently injurious conduct" creating "an abnormally dangerous condition that cannot be maintained without injury to property, no matter what care is taken." *R.T.G.*, 780 N.E.2d at 1010. Because Plaintiffs concede that the majority of opioids sold by Manufacturer Defendants were *lawfully* sold and properly used by hospitals and patients alike, Plaintiffs cannot transform their dead-on-arrival intent-based absolute public nuisance claim into a strict-liability claim. Summary judgment is therefore appropriate.

**III.    Summary Judgment Is Also Appropriate On Plaintiffs' Statutory Claim.**

In pleading their statutory nuisance claim, Plaintiffs invoked Ohio Revised Code §§ 3767.01 & 4729.35. 3AC ¶¶ 983-87. Section 3767.01(C)(1) defines "Nuisance" to mean "[t]hat which is defined and declared by statutes to be a nuisance." Section 4729.35 in turn declares two separate things to be "a public nuisance": *first*, "[t]he violation by a pharmacist or other person of any laws … or of any rule of the board of pharmacy controlling the distribution of," *e.g.*, opioids, *see* Ohio Rev. Code § 3719.011(A); and *second*, "the commission of any act set forth in division (A) of section 4729.16 of the Revised Code," which details a list of conduct that "a pharmacist or pharmacy intern" may not commit, *see id.* § 4729.16(A)(2)(a)-(*l*). In order to

10

make out their statutory claim, Plaintiffs thus need evidence showing *either* that Manufacturer Defendants violated a federal or state enactment "controlling the distribution of" opioids *or* that Manufacturer Defendants committed an act set forth in § 4729.16(A)(2). Plaintiffs have neither.

Plaintiffs have never explained what conduct of Manufacturer Defendants constitutes the predicate act for purposes of their statutory nuisance claim. For instance, while Plaintiffs allege that Manufacturer Defendants failed to maintain effective controls, and failed to investigate, report, and take steps to halt orders that they knew or should have known were suspicious, Plaintiffs have not identified any actually-diverted orders that Manufacturer Defendants failed to investigate, report, or halt. *See* Causation Br. 9-10. While vague references to aiding-and-abetting liability might have sufficed at the motion-to-dismiss stage, general assertions that Manufacturer Defendants turned a blind eye to suspicious order monitoring requirements are insufficient to survive summary judgment. To the contrary, evidence of an *actual predicate violation* is required. Because Plaintiffs cannot make such a showing against any, much less all, Manufacturer Defendants, summary judgment is also appropriate on the statutory nuisance claim.

## CONCLUSION

The Court should enter summary judgment in favor of Manufacturer Defendants on both of Plaintiffs' public nuisance claims for the reasons set forth above.

Dated:  June 28, 2019                           Respectfully submitted,

*/s/ Mark S. Cheffo*
Mark S. Cheffo
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com

*Counsel for Defendants Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company*

*Co-Liaison Counsel for the Manufacturer Defendants*

*/s/ Carole S. Rendon*
Carole S. Rendon
BAKER & HOSTETLER LLP
Key Tower 127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: (216) 621- 0200
Fax: (216) 696-0740
crendon@bakerlaw.com

*Counsel for Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc.*

*Co-Liaison Counsel for the Manufacturer Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of June 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

> */s/ Donna M. Welch*
> Donna M. Welch, P.C.
> KIRKLAND & ELLIS LLP
> 300 North LaSalle
> Chicago, IL 60654
> Tel: (312) 862-2000