# Exhibit 6

```
 1            IN THE UNITED STATES DISTRICT COURT
 2             FOR THE NORTHERN DISTRICT OF OHIO
 3                       EASTERN DIVISION
 4                           -  -  -
 5

   IN RE:  NATIONAL              :    HON. DAN A.
 6 PRESCRIPTION OPIATE           :    POLSTER
   LITIGATION                    :
 7                               :
   APPLIES TO ALL CASES          :    NO.
 8                               :    1:17-MD-2804
                                 :
 9
                   - HIGHLY CONFIDENTIAL -
10
       SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
11
12                         -  -  -
13                     April 29, 2019
14                         -  -  -
15
16            Videotaped deposition of
   KATHERINE KEYES, Ph.D., taken pursuant to
17 notice, was held at the law offices of
   Lieff Cabraser, LLP, 250 Hudson Street,
18 New York, New York beginning at 9:08
   a.m., on the above date, before Michelle
19 L. Gray, a Registered Professional
   Reporter, Certified Shorthand Reporter,
20 Certified Realtime Reporter, and Notary
   Public.
21
                           -  -  -
22
             GOLKOW LITIGATION SERVICES
23       877.370.3377 ph | 917.591.5672 fax
                   deps@golkow.com
24
```

Page 454

1 the record.
2 THE VIDEOGRAPHER: All
3 right. The time is 5:18 p.m. Off
4 the record.
5 (Short break.)
6 THE VIDEOGRAPHER: The time
7 is 5:22 p.m. Back on the record.
8 - - -
9 EXAMINATION
10 - - -
11 BY MR. O'CONNOR:
12 Q. Professor Keyes, I'm Andrew
13 O'Connor, I represent one of the
14 manufacturers in the case. I'm going to
15 be asking you some questions on their
16 behalf.
17 In connection with preparing
18 your report, did you review any marketing
19 material used by opioid manufacturers?
20 A. So, I reviewed what is cited
21 in my report. This includes a number of
22 different papers in the peer-reviewed
23 literature that go over the marketing
24 materials from --

Page 455

1 Q. Other than what you've cited
2 in the report, did you review any
3 marketing materials or studies --
4 A. Everything that I reviewed
5 has been provided. I'm familiar, as part
6 of my expertise in opioid use disorders,
7 more broadly with marketing materials
8 that were used.
9 Q. And what marketing materials
10 are you familiar with through that
11 experience?
12 A. The only market -- the only
13 materials that I cite in the report that
14 I rely on for the opinions that I made,
15 are the materials that are evaluated in
16 the peer-reviewed literature, that
17 overview the -- the evidence that was
18 used to market prescription --
19 Q. Are you relying on any other
20 peer-reviewed materials other than what
21 you've cited in the report?
22 MS. RELKIN: For that
23 opinion?
24 BY MR. O'CONNOR:

Page 456

1 Q. For that point?
2 A. I'm -- I'm not -- I just --
3 I'm sorry, I just want to understand the
4 question. Am I relying on any other
5 peer-reviewed materials for which --
6 which point specifically?
7 Q. For -- for any opinion on
8 marketing use -- marketing materials used
9 by opioid manufacturers.
10 A. I'm relying on the material
11 the -- to form the opinions, the material
12 that I relied on is the material that is
13 cited in this report.
14 Q. Okay. So just to be clear,
15 did you review any of the actual primary
16 source material, which is to say, the
17 material -- the marketing materials
18 themselves in writing your report?
19 A. So the --
20 MS. RELKIN: Objection to
21 form.
22 THE WITNESS: -- material
23 that I relied on to write my
24 report included a broad range of

Page 457

1 peer-reviewed literature, articles
2 that evaluate evidence that was
3 used in marketing materials.
4 More broadly, given 15 years
5 of studying opioid use disorders,
6 I'm familiar with marketing
7 materials that were used. There
8 was no marketing material that I
9 relied on to form the opinion that
10 is in this report.
11 BY MR. O'CONNOR:
12 Q. In 15 years what marketing
13 materials related to pharmaceutical
14 opioids did you review?
15 A. There has been voluminous
16 evidence, as I cite here, regarding
17 distribution, sales and marketing of
18 opioids.
19 Q. Does any of the evidence
20 you're referring to relate to any
21 manufacturing defendants in this case?
22 MS. RELKIN: Objection to
23 form.
24 You mean specific? Is that

Page 458

1 what you said?
2 THE WITNESS: Does any of
3 the evidence that I'm referring to
4 relate to any manufacturing -- I
5 think the evidence that I've
6 provided in this report relates to
7 manufacturers of opioids.
8 BY MR. O'CONNOR:
9 Q. Professor Keyes, who are the
10 manufacturing defendants in this case?
11 A. There's a broad range of
12 manufacturing defendants in the case.
13 You know, I'm not -- I know that Purdue,
14 Janssen, Teva, a number of other
15 manufacturers are involved.
16 Q. Can you name any other
17 manufacturers as you sit here today?
18 A. I would have to go back to
19 my materials. You know, I think it's all
20 cited in the complaint. The -- the
21 opinions that I derived at for this
22 report are not specific to any particular
23 manufacturer unless I cite a specific
24 product in the report. So all of the

Page 459

1 opinions that I've arrived at are about
2 the overall emergence of an opioid
3 epidemic in the United States.
4 Q. In connection with Purdue,
5 did you review any Purdue marketing
6 materials yourself?
7 A. In connection with Purdue?
8 So what I've cited -- I -- I think I've
9 answered the question. What I've cited
10 in the -- in the report is the
11 peer-reviewed literature that evaluates
12 the evidence that was used for marketing
13 materials.
14 Q. I'm going to mark an exhibit
15 that you cite in your report.
16 (Document marked for
17 identification as Exhibit
18 Keyes-17.)
19 BY MR. O'CONNOR:
20 Q. It's a study by Art Van Zee.
21 It's marked Exhibit 17.
22 A. Can you tell me which
23 citation number it is in the report?
24 Q. I believe it's 15.

Page 460

1 Do you know who Art Van Zee
2 is?
3 A. Sorry, I'm just trying to
4 find the specific place I reference that.
5 Do you know what page it's on?
6 So I -- the use of that
7 article is for the statement, "From 1997
8 to 2002, prescriptions for OxyContin for
9 noncancer pain increased from
10 approximately 670,000 in 1997 to" -- "to
11 about 6.2 million in 2002. Prescriptions
12 for cancer pain also increased about
13 fourfold across the same period."
14 Q. Back to my question. Do you
15 know who Art Van Zee is?
16 A. Do I know him personally?
17 Q. Do you know who -- who he is
18 generally?
19 A. According to the article, he
20 is an M.D., and he is affiliated with
21 Stone Mountain Health Services.
22 Q. Other than what you're
23 reading right now, are you familiar with
24 his credentials?

Page 461

1 A. I'm not aware of other
2 articles by Art Van Zee that I relied on
3 for the opinions in this report.
4 Q. To your knowledge, is he an
5 epidemiologist?
6 A. I have not evaluated his
7 training.
8 Q. Does he have any expertise
9 related to the marketing of prescription
10 opioids?
11 MS. RELKIN: Objection.
12 THE WITNESS: That's not
13 information that was -- I think
14 the statement in the -- where I
15 cite his work is based on what is
16 written here. I don't think it --
17 I'm sorry, your question
18 was: Do I have any knowledge of
19 his expertise related to the
20 marketing of prescription opioids?
21 I'm not sure how that relates to
22 the statement that "OxyContin for
23 noncancer pain increased from
24 approximately 670,000 to