# Exhibit 12

Highly Confidential - Subject to Further Confidentiality Review

```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
                        -  -  -
```

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | : : : : | HON. DAN A. POLSTER |
| | : | MDL NO. 2804 |
| APPLIES TO ALL CASES | : : | CASE NO. |
| | : | 17-MD-2804 |
| | : | |

```
            - HIGHLY CONFIDENTIAL -
   SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
                    VOLUME I
                      -  -  -
                   May 16, 2019
                      -  -  -
```

Videotaped deposition of DR. SETH B. WHITELAW, taken pursuant to notice, was held at the offices of Golkow Litigation Services, One Liberty Place, 1650 Market Street, Philadelphia, Pennsylvania beginning at 9:18 a.m., on the above date, before Michelle L. Gray, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Realtime Reporter, and Notary Public.

```
                      -  -  -

              GOLKOW LITIGATION SERVICES
         877.370.3377 ph | 917.591.5672 fax
                   deps@golkow.com
```

Highly Confidential - Subject to Further Confidentiality Review

Page 833

1 an opinion on the effectiveness of its
2 compliance program is Mallinckrodt,
3 correct?
4     A.  Mallinckrodt is the only
5 manufacturer in my report, sir.
6     Q.  So the answer to that
7 question is yes?
8     A.  The answer to that question
9 is yes.
10     Q.  Thank you.  You do not
11 intend to offer an opinion at this time
12 regarding any other manufacturer's
13 compliance program, correct?
14     A.  Not at this time.
15     Q.  You do not intend to offer
16 an opinion regarding the application of
17 your opinions regarding the standards
18 surrounding the design, implementation,
19 and operation of controlled substances
20 compliance programs to any other
21 manufacturers program at this time,
22 correct?
23         MR. BOGLE:  Object to form.
24 BY MR. DAVISON:

Page 834

1     Q.  Do you want me to start
2 again?
3     A.  Yeah, and read it a bit
4 slower or at least give me something to
5 look at it because that's an awful lot
6 of -- that's a whole mouthful of words.
7     Q.  Let's -- we'll strike that
8 one.
9         You do not intend to offer
10 any opinions regarding any other
11 manufacturer defendant in this litigation
12 at this time, correct?
13     A.  Not at this time.
14     Q.  And there is nothing in your
15 report regarding any other manufacturer
16 of controlled substances other than
17 Mallinckrodt, correct?
18         MR. BOGLE:  Object to form.
19         THE WITNESS:  No, I think
20     that's inaccurate.  There are a
21     couple references in my report to
22     Endo and Purdue up in the front of
23     the report.
24 BY MR. DAVISON:

Page 835

1     Q.  But you didn't review their
2 suspicious order monitoring program,
3 correct?
4     A.  No.  There's no review of
5 another manufacturer's suspicious order
6 monitoring program in my report.
7     Q.  All right.  So I think I
8 have an understanding of kind of the
9 opinions at a high level.  I'd like to
10 discuss just a couple of questions
11 regarding opinions you're not offering.
12 Okay?
13     A.  Sure.
14     Q.  So you stated earlier today
15 that you're here as a compliance expert,
16 so you are not drawing legal conclusions,
17 correct?
18     A.  Yes, sir, that is correct.
19     Q.  So you're not offering a
20 legal conclusion as to whether any
21 defendant violated the Controlled
22 Substances Act, correct?
23     A.  That is correct.
24     Q.  You are not offering a legal

Page 836

1 conclusion as to whether any defendant
2 violated the SOM regulation?
3     A.  Correct.
4     Q.  And when you were questioned
5 earlier today by Cardinal's counsel, you
6 stated that the question of whether any
7 of Cardinal's products were diverted was
8 outside the scope of your report.
9         Is the same true for
10 Mallinckrodt's products?
11     A.  The same holds true for
12 Mallinckrodt, yes.
13     Q.  And is the same true for all
14 of the distributors and manufacturers in
15 your report's box?
16     A.  Could you give me the
17 question again, please?
18     Q.  Yes.  No problem.
19 Understood.
20         With respect to Cardinal
21 earlier today, you stated that the
22 question of whether any product was
23 diverted was outside the scope of your
24 report.  Is the same true for all of the

Golkow Litigation Services                    Page 79 (833 - 836)

Highly Confidential - Subject to Further Confidentiality Review

Page 837

1 distributors, pharmacies and
2 manufacturers that you reviewed?
3    A.   Again, as I said, same thing
4 for Cardinal I would say for every other
5 defendant is the same.  I looked at the
6 policies and the process and the systems,
7 and that is what I'm rendering my -- my
8 opinions on.
9    Q.   So the answer to that is
10 yes?
11    A.   The answer to that is I'm
12 not making statements about whether any
13 particular order was diverted or not
14 diverted.
15    Q.   Thank you, sir.
16        Now, sir, in evaluating the
17 effectiveness of Mallinckrodt's
18 compliance program, you utilized the
19 methodology that have used -- that you
20 have used during the last 30 years when
21 auditing or investigating compliance
22 issues; is that correct?
23    A.   I think that's a fair way of
24 characterizing it, yes.

Page 838

1    Q.   So I want to -- I want to
2 understand a little bit more about the
3 methodology that you've used in your
4 30 years of experience.
5    A.   Sure.
6    Q.   What is your practice
7 generally when you select data or
8 documents for a sample?
9        MR. BOGLE:  Object to form.
10       Vague and ambiguous.
11 BY MR. DAVISON:
12    Q.   Let me see if I can narrow
13 it down for you.  I'll withdraw that
14 question.
15    A.   That would be real helpful.
16    Q.   No problem.
17        Generally in your
18 experience, when you're selecting data or
19 documents to review, do you do a random
20 sample?
21       MR. BOGLE:  Object to form.
22       THE WITNESS:  You're still
23    going to have to narrow it down
24    further.

Page 839

1 BY MR. DAVISON:
2    Q.   Are you familiar with OIG
3 toolkits and resources like RAT-STATS to
4 select random samples?
5    A.   I am familiar with what
6 those are, yes.
7    Q.   Okay.  And that's a way to
8 select random samples of data or
9 documents for review, correct?
10    A.   But it's not a way of
11 utilizing and looking at process systems
12 and process and controls for compliance
13 programs, per se.  That's not how we
14 do -- that's not how I do that, no.
15    Q.   So when you're looking at
16 processes and controls for compliance
17 programs, you do not use random sampling?
18    A.   No.  I actually ask you what
19 the standards are that you're doing and
20 how are you working against those
21 standard and show me how those are
22 actually working.
23    Q.   Okay.  So talking about what
24 you specifically reviewed today and as

Page 840

1 part of your methodology.  It's fair to
2 say that you reviewed a number of
3 standard operating procedures; is that
4 correct?
5    A.   I reviewed a number of
6 documents that were supposed -- that were
7 purported to be standard operating
8 procedures or draft standard operating
9 procedures, yes.
10    Q.   And you also reviewed
11 e-mails for each of the individual
12 manufacturers, distributors, pharmacies,
13 that you looked at, internal e-mails?
14    A.   E-mails were part of it.
15    Q.   And generally, in your
16 compliance history, one way of gaining
17 information would be to interview
18 employees of a client, correct?
19    A.   That is one way to do it,
20 yes.
21    Q.   And -- and here I understand
22 there weren't interviews, but you
23 reviewed deposition transcripts.  Is that
24 fair?