Exhibit 12

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

~~~~~~~~~~~~~~~~~~~~~

IN RE:  NATIONAL PRESCRIPTION    MDL No. 2804
OPIATE LITIGATION

Case No.
17-md-2804

Judge Dan Aaron Polster

This document relates to:
The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al., Case No. 18-OP-45090

~~~~~~~~~~~~~~~~~~~~~

Videotaped Deposition of
GRETA JOHNSON, 30(b)(6)

January 15, 2019
8:30 a.m.

Taken at:

Sheraton Suites Akron
1989 Front Street - Portage Room
Cuyahoga Falls, Ohio


Stephen J. DeBacco, RPR

```
 1   APPEARANCES:
 2
         On behalf of the City of Akron, Summit
 3       County, and the Witness:
 4           Motley Rice LLC, by
             ANNE MCGINNESS KEARSE, ESQ.
 5           JODI WESTBROOK FLOWERS, ESQ.
             ANNIE E. KOUBA, ESQ.
 6           DANIELLE M. SALERNO, ESQ.
             28 Bridgeside Boulevard
 7           Mt. Pleasant, South Carolina 29464
             (843) 216-9140
 8           akearse@motleyrice.com
             (843) 216-9163
 9           jflowers@motleyrice.com
             (843) 216-9225
10           akouba@motleyrice.com
             (843) 216-9461
11           dsalerno@motleyrice.com
12
         On behalf of Walmart, Inc.:
13
             Jones Day, by:
14           CHRISTOPHER M. LOMAX, ESQ.
             Brickell World Plaza
15           600 Brickell Avenue, Suite 3300
             Miami, Florida 33131
16           (305) 714-9719
             clomax@jonesday.com
17
18       On behalf of Cardinal Health:
19           Williams & Connolly LLP, by
             WILL F. HAWKINS, ESQ.
20           725 Twelfth Street Northwest
             Washington, D.C. 20005
21           (202) 434-5172
             whawkins@wc.com
22
                     ~ ~ ~ ~ ~
23
24
25
```

Page 3

1  APPEARANCES, Continued:
2
        On behalf of Johnson & Johnson and
3       Janssen Pharmaceuticals, Inc.:
4            Tucker Ellis, LLP, by
             ZACHARY J. ADAMS, ESQ.
5            950 North Main Avenue, Suite 1100
             Cleveland, Ohio 44113-7213
6            (216) 696-5474
             zachary.adams@tuckerellis.com
7
8       On behalf of Rite Aid:
9            Morgan, Lewis & Bockius LLP, by
             SCOTT T. SCHUTTE, ESQ.
10           77 West Wacker Drive
             Chicago, Illinois 60601-5094
11           (312) 324-1773
             scott.schutte@morganlewis.com
12
13      On behalf of Cephalon, Inc.; Teva
        Pharmaceuticals USA, Inc.; Actavis, LLC;
14      Actavis Pharma, Inc. f/k/a Watson Pharma,
        Inc.; and Watson Laboratories, Inc.:
15
             Morgan, Lewis & Bockius LLP, by
16           WENDY WEST FEINSTEIN, ESQ.
             One Oxford Centre, 32nd Floor
17           Pittsburgh, Pennsylvania 15219-6401
             (412) 560-7455
18           wendy.feinstein@morganlewis.com
19                  ~ ~ ~ ~ ~
20
21
22
23
24
25

```
                                                           Page 4
 1   APPEARANCES, Continued:
 2
          On behalf of McKesson Corporation:
 3
                  Covington & Burling LLP, by
 4                SONYA D. WINNER, ESQ.
                  One Front Street
 5                San Francisco, California 94111-5356
                  (415) 591-7072
 6                swinner@cov.com
 7                Covington & Burling LLP, by
                  STEPHEN F. RAIOLA, ESQ.
 8                One CityCenter
                  850 Tenth Street Northwest
 9                Washington D.C., 20001-4956
                  (202) 662-5786
10                sraiola@cov.com
11
          On behalf of Endo Health Solutions, Inc.,
12        and Endo Pharmaceuticals, Inc., via
          telephone:
13
                  Baker Hostetler, by
14                CAROLE S. RENDON, ESQ.
                  TERA N. COLEMAN, ESQ.
15                Key Tower
                  127 Public Square, Suite 2000
16                Cleveland, Ohio 44114-1214
                  (216) 861-7420
17                crendon@bakerlaw.com
                  (216) 861-7582
18                tcoleman@bakerlaw.com
19
          On behalf of AmerisourceBergen Drug
20        Corporation, via telephone:
21                Jackson Kelly PLLC, by
                  JAMES D. JOHNSON, ESQ.
22                221 Northwest Fifth Street
                  Evansville, Indiana 47708
23                (812) 422-9444
                  jdjohnson@jacksonkelly.com
24
                       ~ ~ ~ ~ ~
25
```

1  APPEARANCES, Continued:
2
     On behalf of Cephalon, Inc.; Teva
3       Pharmaceuticals USA, Inc.; Actavis, LLC;
     Actavis Pharma, Inc. f/k/a Watson Pharma,
4       Inc.; and Watson Laboratories, Inc., via
     telephone:
5
        Morgan, Lewis & Bockius LLP, by
6          LATIERA RAYFORD, ESQ.
        77 West Wacker Drive
7          Chicago, Illinois 60601-5094
        (312) 324-1481
8          latiera.rayford@morganlewis.com
9
10  ALSO PRESENT:
11          Randy Andrews, Legal Videographer
12          ~ ~ ~ ~ ~
13
14
15
16
17
18
19
20
21
22
23
24
25

1  TRANSCRIPT INDEX
2
3  APPEARANCES.................................  2
4
5  INDEX OF EXHIBITS ..........................  7
6
7  EXAMINATION OF GRETA JOHNSON
8  By Ms. Winner..............................  17
9  By Ms. Feinstein...........................  266
10 By Mr. Schutte.............................  398
11
12 REPORTER'S CERTIFICATE.....................  458
13
14 EXHIBIT CUSTODY
15 EXHIBITS RETAINED BY THE COURT REPORTER
16
17
18
19
20
21
22
23
24
25

Page 43

1  epidemic?
2       A.   It has become sort of this
3  stepsister to the epidemic because of the
4  shifts in the way people are using opioids.
5  Cocaine has been used more recently in
6  conjunction with opioids.
7       Q.   Is -- in your understanding, is the
8  opioid epidemic what this lawsuit is about?
9       A.   This lawsuit is -- is about the
10 aggregate harm that's been caused by the
11 manufacture and distribution of opioids into
12 our community.
13      Q.   When did the opioid epidemic begin?
14      A.   Opioids have always been in our
15 community, but I believe we really saw an
16 uptick in the presence of diverted pills and
17 use really started to come along in the late
18 2000s.
19           And certainly we noticed that in
20 the prosecutor's office where folks were being
21 arrested and having one or two pills in their
22 pocket, folks were being arrested for deception
23 to obtain a dangerous drug or forging drug
24 documents.  We started to see that uptick in
25 the late -- in the late 2000s.

Page 46

1  was a problem?
2     A.    Personally?  I first became aware
3  that there was a real difference in some of the
4  cases I was seeing.  I was seeing, instead of
5  detectives who were bringing in crack cases or
6  things like that, we started to see a lot of
7  pill cases; a lot of defendants without a prior
8  record, being arrested for possession of
9  oxycodone, OxyContin, Percocets.  And we
10 started to see, in the late 2000s, this
11 increase in cases of deception to obtain and
12 forging drug documents.
13           These folks had become so addicted
14 that they were resorting to, you know, trying
15 to write false prescriptions, trying to obtain
16 these pills in a different manner.
17     Q.    And when was it that you started
18 seeing this?
19     A.    In the late 2000s is really --
20     Q.    2007?  2008?  Somewhere in there?
21     A.    I -- I remember it steadily
22 growing.  I can recall being -- in 2009, I was
23 the grand jury prosecutor, and I recall seeing
24 many of those cases in sort of a way that I had
25 not previously.

Page 47

1  Q. Do you think, at the time that you
2  personally perceived that there was a problem,
3  do you think that generally there was an
4  understanding in Summit County at that time
5  that there was a problem?
6  A. Calling it a problem, I think at
7  that time, as a prosecutor, I was aware that
8  this was a change that we were perceiving. I
9  think at that time the ADM Board and Summit
10 County Public Health started to perceive that
11 the people seeking treatment were coming in for
12 opioid addiction in greater numbers than they
13 had previously seen. I think our hospitals saw
14 that there were more babies being born with NAS
15 than they had previously seen.
16  And at that point, I think, you
17 know, there were some -- some concerns, but not
18 a true identification of the root cause yet.
19  MS. WINNER: I'd like to ask the
20 reporter to mark as Exhibit 2 a document
21 entitled "Drug Threat Assessment, Summit
22 County, Ohio." It appears to be a 2005
23 document.
24        - - - - -
25  (Thereupon, Deposition Exhibit 2,

1  threat" says, "The diversion of narcotics and
2  pain analgesics in Summit County continues to
3  increase."
4     A.    Uh-huh.
5     Q.    Do you see that?
6     A.    Yes, I do.
7     Q.    And was that a correct statement in
8  2005?
9     A.    I'm sure that it was.
10    Q.    And then it then goes on to refer
11  to some of the -- the drugs --
12    A.    Yes.
13    Q.    -- correct?
14  And then under "Availability," he
15  goes on to say, quote, "While there are no
16  conclusive estimates as to the total amount of
17  diverted prescription narcotics, depressants,
18  and stimulants available in the drug markets of
19  Summit County, it is known that legitimate
20  commercial disbursal of prescription
21  pharmaceuticals distributed to pharmacies,
22  hospitals, and practitioners has increased
23  sharply over the past four years, thereby
24  making more of the drugs available to criminal
25  diversion and abuse."


Page 52

1          Is that a correct statement, as far
2  as you were aware?
3       A.   I just want to read it again.  It's
4  a long sentence.
5       Q.   Sure.
6       A.   Yes, I would agree with that.
7       Q.   So again, this is -- this is
8  information that was known to Summit County in
9  2005, correct?
10      A.   Yes.  We were starting to become
11 very aware that pills were beginning to flood
12 our community.
13      Q.   And the next sentence goes on to
14 say, quote, "In a sampling of data from the
15 Akron Police Department's narcotics unit
16 diversion division during the first quarter of
17 2004, the unit investigated 60 new diversion
18 cases, or one case every day and a half," end
19 quote.
20         Is that an accurate statement, as
21 far as you were aware?
22      A.   I assume that the Akron Police
23 narcotics unit can provide the data that would
24 back that up.  I can't imagine there would be
25 any reason that Captain Baker would have