Exhibit 15

Page 110

```
 1            IN THE UNITED STATES COURT
 2             NORTHERN DISTRICT OF OHIO
 3                  EASTERN DIVISION
 4
 5            ~~~~~~~~~~~~~~~~~~~~~~
 6   IN RE:  NATIONAL PRESCRIPTION    MDL NO. 2804
 7   OPIATE LITIGATION
 8                                    Case no.
 9                                    17-mdl-284
10                                    Judge Dan Polster
11
12   This document relates to:
13   The County of Summit, Ohio, et al.,
14        V.
15   Purdue Pharma L.P., et al.,
16   Case No. 1:18-OP-45090 (N.D. Ohio)
17            ~~~~~~~~~~~~~~~~~~~~~~
18             Continued deposition of
19          PATRICK LEONARD, VOLUME II
     PORTIONS OF THE TRANSCRIPT ARE DESIGNATED
20                  CONFIDENTIAL
21                March 27, 2019
                   11:03 a.m.
22
                    Taken at:
23               Ulmer & Berne
              1660 W. Second Street
24               Cleveland, Ohio
25           Wendy L. Klauss, RPR
```

Page 111

1  APPEARANCES:
2
       On behalf of the City of Akron, Summit
3      County, and the Witness:
            Motley Rice LLC
4           JAMES W. LEDLIE, ESQ.
            CAROLINE RION, ESQ.
5           28 Bridgeside Boulevard
            Mt. Pleasant, SC   29464
6           (843) 216-9140
            Jledlie@motleyrice.com
7           Crion@motleyrice.com
8      On behalf of the Department of Justice;
       United States Drug Enforcement
9      Administration:
            United States Attorney's Office:
10          JAMES R. BENNETT, II, ESQ.
            RENEE A. BACCHUS, ESQ.
11          United States Courthouse
            801 West Superior Avenue
12          Suite 400
            Cleveland, OH   44113
13          (216) 622-3988
            James.bennett4@usdoj.gov
14          Renee.bacchus@usdoj.gov
                    -AND-
15          JOHN J. CIPRIANI, ESQ.
            431 Howard Street
16          Detroit, MI   48226
            (313) 234-4002
17          John.j.cipriani@usdoj.gov
18
19
20
21
22
23
24
25

```
 1    APPEARANCES, Continued
 2         On behalf of Walmart Inc.:
                Jones Day
 3              PATRICIA OCHMAN, ESQ.
                North Point
 4              901 Lakeside Avenue East
                Cleveland, OH   44114-1190
 5              (216) 586-3939
                Pochman@jonesday.com
 6
           On behalf of CVS Rx Services, Inc. and
 7         CVS Indiana, LLC:
                Zuckerman Spaeder LLP
 8              DANIEL P. MOYLAN, ESQ.
                100 East Pratt Street, Suite 2440
 9              Baltimore, MD   21202-1031
                (410) 949-1159
10              Dmoylan@zuckerman.com
11         On behalf of AmeriSourceBergen Drug
           Corporation:
12              Jackson Kelley, PLLC
                ANDREW N. SCHOCK, ESQ.
13              50 South Main Street, Suite 201
                Akron, OH   44308
14              (330) 252-9060
                Anschock@jacksonkelley.com
15
           On behalf of Johnson & Johnson and
16         Janssen Pharmaceuticals, Inc.:
                Tucker Ellis, LLP
17              JEFFREY M. WHITESELL, ESQ.
                950 Main Avenue, Suite 1100
18              Cleveland, OH   44113
                (216) 592-5000
19              Jeffrey.whitesell@tuckerellis.com
20
21
22
23
24
25
```

```
                                                          Page 113
 1    APPEARANCES, Continued:
 2         On behalf of Mallinckrodt LLC and
           SpecGx LLC.
 3              Ropes & Gray
                JOSH GOLDSTEIN, ESQ.
 4              Prudential Tower
                800 Boylston Street
 5              Boston, MA   02199-3600
                (617) 951-7000
 6              Joshua.goldstein@ropesgray.com 1211
                       -AND-
 7              HAYDEN MILLER, ESQ.
                1211 Avenue of the Americas
 8              New York, NY   10036
                (212) 596-9451
 9              Hayden.miller@ropesgray.com
10         On behalf of McKesson Corporation:
                Covington & Burling, LLP
11              NEIL K. ROMAN, ESQ.
                STEVEN WINKELMAN, ESQ.
12              One City Center
                850 Tenth Street, NW
13              Washington, DC 20001-4856
                (202) 662-6000
14              Nroman@cov.com
                Swinkelman@cov.com
15                     -AND-
                CHRISTOPHER EPPICH, ESQ.
16              1999 Avenue of the Stars
                Los Angeles, CA   900067-4643
17              (424) 332-4764
                Ceppich@cov.com
18
           On behalf of HBC Service Company:
19              Marcus & Shapira, LLP
                MOIRA CAIN-MANNIX, ESQ.
20              One Oxford Centre, 35th Floor
                301 Grant Street
21              Pittsburgh, PA   15219-6401
                (412) 471-3490
22              Cain-mannix@marcus-shapira.com
                       ~   ~   ~   ~   ~
23
24
25
```

Page 114

1              TRANSCRIPT INDEX

2    APPEARANCES:................................  111
3    INDEX OF EXHIBITS ..........................  115
4    EXAMINATION OF PATRICK LEONARD
     By Mr. Roman...............................  117
5    By Mr. Winkelman...........................  176
     By Mr. Moylan..............................  245
6    By Mr. Goldstein...........................  290
     By Mr. Moylan..............................  342
7
     REPORTER'S CERTIFICATE.....................  346
8

     EXHIBIT CUSTODY
9    EXHIBITS RETAINED BY COURT REPORTER.

Page 154

1  annual basis how much the City of Akron or the
2  Akron Police Department receives pursuant to
3  this asset forfeiture sharing agreements?
4       A.   No, I do not.
5       Q.   Do you know where these DAG forms
6  are maintained?
7       A.   No, sir, I do not.
8       Q.   Do you personally maintain copies
9  of the DAG forms that you completed?
10      A.   I do not.
11      Q.   Where do you send them?
12      A.   To one of the administrative staff
13  at the Cleveland Drug Enforcement
14  Administration office to be processed.
15      Q.   Do you know who in particular?
16      A.   Ashley -- for the life of me, I
17  can't think of her last name right now --
18  Williams.
19      Q.   Do you know what Ms. Williams does
20  with them?
21      A.   No, sir, I don't.
22      Q.   Now, the last time we talked, you
23  testified that there was no opioid crisis in
24  Akron before 2012; do you remember that
25  testimony?

Page 155

1  A. Yes, sir.
2  Q. And is that still your testimony?
3  MR. LEDLIE: Object to the form.
4  Misstates his testimony.
5  A. Yes, sir, I still believe that the
6  epidemic did not hit prior to 2012.
7  Q. Is it your view that there is now
8  an opioid crisis or epidemic in Akron?
9  A. Yes, sir, there is.
10 Q. How to you describe that crisis or
11 epidemic?
12 A. An overwhelming medical problem in
13 the opioids in our geographical area of
14 Northeastern Ohio.
15 Q. What are the elements of that
16 overwhelming medical problem?
17 A. The amount of time and money spent
18 by the fire department, the police department,
19 the emergency rooms, the coroner's office
20 investigating and following up on overdoses and
21 overdose deaths within our region.
22 Q. And you believe that this epidemic
23 or crisis -- do you prefer one of those two
24 terms?
25 A. It doesn't matter to me.

Page 156

```
1        Q.    Okay.  You believe this epidemic or
2    crisis drug began sometimes between 2012 and
3    2019, correct?
4        A.    The crisis, I do have an opinion.
5    The crisis has been ongoing throughout the
6    2000s.  It continued to evolve.  I don't
7    believe it turned into an epidemic until after
8    2012, but there has been a continual opioid
9    crisis in the geographical area of Summit and
10   Northeastern Ohio.
11       Q.    When do you believe it became an
12   epidemic in the Akron area?
13       A.    I think that's one of those
14   questions that, based on my training,
15   experience in the field, and doing my job, that
16   those are information I've learned as a TFO and
17   an Akron police officer.
18             I have a hard time disseminating
19   what I'm authorized to say legally.
20             MR. BENNETT:  So I'll remind the
21   witness that he is not authorized to give
22   personal opinions regarding nonpublic facts or
23   information you acquired as part of the
24   performance of your task force officer duties.
25   Information you learned outside of the cases
```

Page 157

1  you investigated, as a TFO, then you may
2  answer.
3         A.    And therein lies the problem.  I
4  believe that most of what I learned as a TFO
5  would give me the idea of what years that
6  epidemic started.  So unfortunately, I'm not
7  authorized to answer that.
8         Q.    Let me ask a different question.
9  What changed, what was it that was not an
10 epidemic before and that became an epidemic,
11 what was the difference, was it just a matter
12 of magnitude, was there an event?
13        A.    I don't think there was one
14 specific event.  I think it was a continued
15 growth of the crisis that turned into an
16 epidemic, whether it is sheer volume of
17 victims, of individuals, that overwhelmed all
18 the resources we had in the area.
19        Q.    And your view is that sometime
20 between 2012 and 2019, the sheer volume took
21 an -- increased, correct?
22              MR. LEDLIE:  Object to the form.
23        A.    Yes, I believe that's a fair
24 statement.
25        Q.    Now, originally, you said you