Exhibit 21

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF OHIO
 3                     EASTERN DIVISION
 4
                  ~~~~~~~~~~~~~~~~~~~~
 5
 6     IN RE:  NATIONAL PRESCRIPTION    MDL No. 2804
        OPIATE LITIGATION
 7                                      Case No. 17-md-2804
 8                                      Judge Dan Aaron
        This document relates to:       Polster
 9
10      The County of Cuyahoga v. Purdue
        Pharma L.P., et al.
11      Case No. 18-OP-45090
12      City of Cleveland, Ohio v. Purdue
        Pharma L.P., et al
13      Case No. 18-OP-45132
14      The County of Summit, Ohio, et al.
        v. Purdue Pharma L.P., et al.
15      Case No. 17-OP-45004
16                ~~~~~~~~~~~~~~~~~~~~
17                     Deposition of
                       JOHN PRINCE
18
19                   January 30, 2019
                         9:04 a.m.
20
21                      Taken at:
                       Ulmer & Berne
22          1660 W. 2nd Street, Suite 1100
                     Cleveland, Ohio
23
24
25         Renee L. Pellegrino, RPR, CLR
```

```
 1   APPEARANCES:
 2   On behalf of the City of Cleveland:
        Baron & Budd, P.C.
 3      STERLING L. CLUFF, ESQ.
        15910 Ventura Boulevard
 4      Suite 1600
        Encino, California  91436
 5      (818) 839-2333
        scluff@baronbudd.com
 6
     City of Cleveland:
 7      ELENA BOOP, ESQ.
        601 Lakeside Avenue, Room 106
 8      Cleveland, Ohio  44114
        (216) 664-3727
 9      eboop@city.cleveland.oh.us
10   On behalf of Summit County and City of Akron:
        (Via Telephone)
11      Motley Rice
        CAROLINE RION, ESQ.
12      JAMES LEDLIE, ESQ.
        28 Bridgeside Boulevard
13      Mt. Pleasant, South Carolina  29464
        (843) 216-9229
14      crion@motleyrice.com
        jledli@motleyrice.com
15
     On behalf of the United States Department of Justice
16   and Drug Enforcement Administration:
        United States Attorney's Office
17      JAMES R. BENNETT, II, ESQ.
        United States Courthouse
18      801 West Superior Avenue
        Suite 400
19      Cleveland, Ohio  44113
        (216) 622-3988
20      james.bennett4@usdoj.gov
21   On behalf of the U.S. Drug Enforcement
     Administration:
22      JOHN J. CIPRIANI, ESQ.
        431 Howard Street
23      Detroit, Michigan  48226
        (313) 234-4002
24      john.j.cipriani@usdoj.gov
25                  ~ ~ ~ ~ ~
```

```
 1   APPEARANCES, CONT'D:
 2   On behalf of Janssen and Johnson & Johnson:
        Tucker Ellis
 3      JUSTIN RICE, ESQ.
        950 Main Avenue, Suite 1100
 4      Cleveland, Ohio   44113
        (216) 696-4889
 5      justin.rice@tuckerellis.com
 6   On behalf of Endo Pharmaceuticals, Inc., Endo
     Health Solutions, Inc., Par Pharmaceuticals,
 7   Inc. and Par Pharmaceutical Companies, Inc.:
        Baker Hostetler
 8      RUTH M. HARTMAN, ESQ.
        Key Tower, 127 Public Square
 9      Suite 2000
        Cleveland, Ohio   44114-1214
10      (216) 621-0200
        rhartman@bakerlaw.com
11
     On behalf of McKesson Corporation:
12      Covington & Burling LLP
        NEIL K. ROMAN, ESQ.
13      The New York Times Building
        620 Eighth Avenue
14      New York, New York   10018-1405
        (212) 841-1000
15      nroman@cov.com
            - and -
16      Covington & Burling LLP
        ASEEM PADUKONE, ESQ.
17      One Front Street
        San Francisco, California   94111-5356
18      (415) 591-6000
        apadukone@cov.com
19
     On behalf of HBC Service Company:
20      (Via Telephone)
        Marcus & Shapira LLP
21      ERIN GIBSON ALLEN, ESQ.
        One Oxford Centre, 35th Floor
22      Pittsburgh, Pennsylvania   15219
        (412) 338-3344
23      allen@marcus-shapira.com
24                     ~ ~ ~ ~ ~
25
```

```
                                                          Page 4

 1   APPEARANCES, CONT'D
 2   On behalf of Walmart, Inc.:
         Jones Day
 3       CHRISTOPHER M. McLAUGHLIN, ESQ.
         North Point, 901 Lakeside Avenue
 4       Cleveland, Ohio  44114-1190
         (216) 586-3939
 5       cmmclaughlin@jonesday.com
 6   On behalf of CVS Indiana, LLC and CVS Rx Services,
     LLC:
 7       Zuckerman Spaeder LLP
         DANIEL P. MOYLAN, ESQ.
 8       100 East Pratt Street
         Suite 2440
 9       Baltimore, Maryland  21202-1031
         (410) 949-1159
10       dmoylan@zuckerman.com
11   On behalf of AmerisourceBergen Drug Corporation:
         (Via Telephone)
12       Jackson Kelly
         M. JANE BRANNON, ESQ.
13       175 East Main Street
         Lexington, Kentucky  40507
14       (859) 288-2805
         mjbrannon@jacksonkelly.com
15
16                     ~ ~ ~ ~ ~
17
18
19
20
21
22
23
24
25
```

1  TRANSCRIPT INDEX
2
3  APPEARANCES ........................................2
4  INDEX OF EXHIBITS ..................................6
5  INDEX OF OBJECTIONS ................................9
6
7  EXAMINATION OF JOHN PRINCE:
8  BY MR. ROMAN ......................................13
9  BY MS. HARTMAN ...................................217
10 BY MR. MOYLAN ....................................239
11
12 AFTERNOON SESSION ................................124
13
14 REPORTER'S CERTIFICATE ...........................293
15
16 EXHIBIT CUSTODY - RETAINED BY COURT REPORTER
17
18
19
20
21
22
23
24
25

Page 191

```
 1   used by the Attorney General's Office?
 2         A.    I do not know.
 3                -   -   -   -   -
 4               (Thereupon, Prince Deposition
 5               Exhibit 14, Multi-Page Document
 6               Entitled "2010 Narcotics Unit
 7               Compliance Enforcement Stats,"
 8               Beginning Bates Number
 9               CLEVE_001485361 - Marked Highly
10               Confidential, was marked for
11               purposes of identification.)
12                -   -   -   -   -
13         Q.    Detective Prince, I'm handing you
14   what's been marked as Exhibit 14.  It's a
15   two-page document bearing production number
16   CLEVE_001485361 and 262.
17               Have you seen this document before?
18         A.    Yes, sir.
19         Q.    What is it?
20         A.    This is the 2010 narcotics unit
21   compliance enforcement stats.
22         Q.    And you prepared this, I gather,
23   sometime in 2011 in the ordinary course of
24   business?
25               MR. CLUFF:  Objection to form.
```

Page 192

```
 1        A.    I prepared this in -- sometime in
 2   2011.
 3        Q.    And you did so in the ordinary
 4   course of business?
 5              MR. CLUFF:  Objection to form.
 6        A.    Yes.
 7        Q.    Directing your attention to the
 8   fifth -- to the paragraph that begins, "I have
 9   assisted district vice."
10              Do you see that?
11        A.    Yes, sir.
12        Q.    In the second sentence of that
13   paragraph you write, "I have seen an explosion
14   in pill related cases in the narcotics unit and
15   assist narcotics unit squads on a regular basis
16   accessing specific medical information and
17   records which are critical to pharmaceutical
18   related investigations."
19              Do you see that?
20        A.    Yes, sir.
21        Q.    And that is, in fact, accurate, is
22   it not, that there had been an explosion in
23   pill-related cases in Cleveland in 2010?
24              MR. CLUFF:  Object to form.
25        A.    The term "explosion" in 2010 may
```

1  have been accurate, understanding that I had
2  been doing this as a compliance detective for
3  two years; to me and what I saw, and what I had
4  been through in the increase in numbers, it was
5  an explosion, but this was nothing compared to
6  as we got into 2013, 2014, and, unfortunately,
7  as I look back, I could have used the term
8  "firecracker" and in 2014 that would have been a
9  nuclear explosion.  So because of -- I was new.
10  To me this was an explosion, but what I didn't
11  foresee was the continued increasing of every
12  year through 2014, which made 2010 look like the
13  tip of the iceberg.
14          Q.    Did the Cleveland Police Department
15  take any steps in response to your reported
16  explosion in pill-related cases?
17              MR. CLUFF:  Object to form.
18       A.    Yes.
19              And what I may need to add to --
20  this was the 2010 narcotics unit compliance
21  enforcement stats.  This document, as well as
22  all the following documents, 2011, 2012 on -- I
23  mean, it's easy to see, this report served two
24  purposes.  It was a report of the stats and what
25  the compliance unit had completed as well as the

1  highlights of some of the cases, but it also
2  served as information for the NADDI Purdue
3  grant, which was then turned over to the -- our
4  grants coordinator.  This information and some
5  of the language that I use in this is also being
6  written to help me get a grant, that being the
7  NADDI Purdue grant.  So it became, I believe, as
8  I'm trying to get grant money to assist me to
9  conduct investigations, I was not using language
10 that would not make this seem more easy to get a
11 grant, or if someone read it, would say, oh,
12 boy, you need a grant, you need help.
13             In addition to that, my
14 understanding and recollection is that when I
15 look at -- it says a 40 percent increase.  A 40
16 percent increase may be only from 100 or so
17 complaints, and that the increase is based on a
18 much smaller number than we see in 2013 and
19 2014; and that since this is being written in
20 semi-real time, that it is based on the
21 information from that in comparison to the year
22 before.
23       Q.   You sent this report and all
24 subsequent reports to your supervisor, correct?
25             MR. CLUFF:  Object to form.

Page 195

1     A.    This report was turned over to my
2  commander.
3     Q.    And all subsequent reports were
4  turned over to your commander at the time as
5  well, correct?
6           MR. CLUFF:  Object to form.
7     A.    If you mean by "all" -- are we
8  talking just about the compliance enforcement
9  stat reports?
10    Q.    Yes.  The one that you did every
11 year.
12    A.    Yes.  It was turned into him as well
13 as given to the grants coordinator, the person
14 who was then in charge of taking information out
15 of this report and putting it into a grant
16 proposal.
17    Q.    Okay.  And your supervisor at the
18 time of this report was Mr. Gingell?
19    A.    No.
20    Q.    Who was it at this time?
21    A.    My direct supervisor as opposed to
22 overall -- we have a structure of -- the
23 commander is at the top.
24    Q.    Let me ask, who did you send this to
25 besides the grants coordinator, Exhibit 14?

Page 196

1  A.  I believe Commander Gingell, and
2  whoever the sergeant -- whoever my sergeant was
3  at that time would also receive it.
4  Q.  And you did not try and lead
5  Commander -- mislead Commander Gingell, did you?
6      MR. CLUFF:  Object to form.
7  A.  Mislead him how, sir?
8  Q.  You would not have reported an
9  explosion in pill-related cases if in your mind
10 there was not an explosion in pill-related
11 cases, correct?
12 A.  As I said, to me in 2010, or when I
13 was writing this, this was an explosion as
14 opposed or in comparison to the year before.
15 Q.  Did you discuss your report with
16 Commander Gingell?
17 A.  I don't recall, sir.
18          -   -   -   -   -
19          (Thereupon, Prince Deposition
20          Exhibit 15, Multi-Page Document
21          Entitled "2014 Narcotics Unit
22          Compliance Enforcement Stats,"
23          Beginning Bates Number
24          CLEVE_001485335 - Marked Highly
25          Confidential, was marked for