Exhibit 30



# FY 2008 Annual Report

# OHIO MEDICAID FRAUD CONTROL UNIT

*John A. Guthrie, Director*



Nancy H. Rogers
**Attorney General**
State of Ohio

**Health Care Fraud**
150 E. Gay St., 17th Floor
Columbus, OH  43215
www.ag.state.oh.us

# Table of Contents

Page

**Unit Performance**………………………………………………………………....  3

**Investigations**…………………………………………………….……….....  4

    Unit Totals……………………………………………………….…….…..  4

    Summary By Case Type……………………………………………….…  4

    Summary By Provider Type………………………………………….…  5

    Prosecutions……………………………………………………….……  6

    Civil Settlements………………………………………………..……… 23

**Case Management System**……………………………..……….....………... 34

**Training**……………………………………………………….…………. 35

    Professional Development……………………………………….…….....35

    New Agent Training…………………………………………..….…… 36

    Training Projections………………………………………….…....... 36

**The National Association of Medicaid Fraud Control Units**…………...……….. 37

**Ohio MFCU Staff**………………………………………...…….…….…37

**Certification of Drug-Free Workplace**……………………...………………… 37

        **Attachment A**:    Special Agent Core Training Curriculum
        **Attachment B**:    Inventory of training courses completed
        **Attachment C**:    New Agent Training Curriculum
        **Attachment D**:    Staff Roster

# Unit Performance

The Ohio Medicaid Fraud Control Unit (OMFCU) continues to aggressively pursue its investigative responsibilities with respect to criminal and civil offenses against the Medicaid program and persons residing in the institutions served by it. Its well-trained and experienced staff continues to have much success in this regard. As a unit, the OMFCU stands as a significant deterrent to those who would defraud the Ohio Medicaid Program or abuse its recipients.

During the period July 1, 2007 to June 30, 2008, the OMFCU received six hundred eighty-six (686) complaints of Medicaid fraud and patient abuse or neglect. Of these, four hundred (400) related to allegations of Medicaid fraud and two hundred eighty-six (286) related to allegations of abuse or neglect in Ohio care facilities. The OMFCU opened five hundred forty-nine (549) of these complaints for active investigation, three hundred fifteen (315) relating to Medicaid fraud and two hundred thirty-four (234) relating to patient abuse or neglect. During this period, the OMFCU completed five hundred eighteen (518) investigations. Of those, two hundred eighty-three (283) related to fraud allegations and two hundred thirty-five (235) related to allegations of patient abuse or neglect.

During the period July 1, 2007 to June 30, 2008, the OMFCU obtained eighty-seven (87) indictments, bills of information, or complaints. Of these, seventy-six (76) pertained to fraud against the Ohio Medicaid program and eleven (11) involved charges of patient abuse and neglect in Ohio care facilities. During this same period, the OMFCU obtained convictions against seventy-eight (78) persons and business entities. Of these convictions, sixty-three (63) were in cases involving fraud against the Ohio Medicaid Program and fifteen (15) were in cases involving patient abuse or neglect. The OMFCU also completed fifty-two (52) civil settlements during its recertification period. The total value of these criminal restitution orders and civil settlements was $53,908,473.16.

The OMFCU has continued to provide information to various groups of health care providers, law enforcement agencies, Medicaid advocates, and others around the state in the form of speeches and workshops. These efforts have proved valuable to the OMFCU, both in terms of the quality of complaints concerning Medicaid fraud and patient abuse/neglect, and in terms of the timeliness of such complaints. They also have served the important function of informing Medicaid providers and caregivers of the serious criminal consequences that can result from the mistreatment of those persons entrusted to their care, or the submission of fraudulent claims to the Ohio Medicaid program.

# Investigations

The following is a summary of cases investigated by the Ohio Medicaid Fraud Control Unit during recertification year July 1, 2007 to June 30, 2008:

## Unit Totals

    a.    Three hundred forty-three (343) cases were in open status as of July 1, 2007;
    b.    Six hundred eighty-six (686) complaints were received;
    c.    Six hundred five (605) cases were closed at intake or after investigation;
    d.    Fifty (50) cases were referred to other agencies; and
    e.    Three hundred seventy-four (374) cases were in open status as of June 30, 2008.

## Summary by Case Type

|  |  | Actual<br>07/01/07 – 06/30/08 | Projected<br>07/01/08 – 06/30/09 |
|---|---|---|---|
| a. | Provider Fraud Cases: |  |  |
|  | *Non-Institutional* |  |  |
|  | Complaints: | 388 | 380 |
|  | Investigations Initiated: | 311 | 310 |
|  | Investigations Completed: | 276 | 270 |
|  | Cases Referred: | 32 | 30 |
|  | *Institutional* |  |  |
|  | Complaints: | 21 | 15 |
|  | Investigations Initiated: | 8 | 10 |
|  | Investigations Completed: | 11 | 10 |
|  | Cases Referred: | 3 | 2 |
| b. | Patient Abuse/Neglect Cases |  |  |
|  | Complaints: | 277 | 280 |
|  | Investigations Initiated: | 230 | 230 |
|  | Investigations Completed: | 231 | 230 |
|  | Cases Referred: | 15 | 20 |

Summary by Provider Type

| Provider Type | Opened | Closed |
|---|---|---|
| Ambulance Companies | 25 | 11 |
| Assist Other Agencies | 0 | 0 |
| Chiropractors | 2 | 2 |
| Clinics | 13 | 7 |
| Dentists | 5 | 36 |
| Durable Medicaid Equipment | 4 | 5 |
| Osteopathic Doctors | 8 | 5 |
| Podiatrists | 2 | 1 |
| Hearing Aid/Audio | 0 | 0 |
| Home Health Care | 177 | 144 |
| Health Maintenance Organizations | 0 | 0 |
| Hospitals | 1 | 2 |
| Laboratories | 3 | 1 |
| Medical Doctors | 16 | 12 |
| Nursing Homes | 7 | 9 |
| Optometrists | 0 | 0 |
| Patient Funds | 23 | 23 |
| Pharmacies | 21 | 17 |
| Miscellaneous | 10 | 10 |
| Patient Abuse/Neglect | 230 | 231 |
| Psychologists | 2 | 1 |
| X-Ray/Imaging | 0 | 1 |
| **Totals** | **549** | **518** |

<u>Prosecutions</u>

During its recertification period, the Ohio MFCU obtained criminal convictions against the defendants listed below:

1. <u>Aiti, Mohammed (Premier Medical Group, Inc.)</u>
   Case No. M2060294

   Aiti, the owner of Premier, billed for cardiac services that were not medically necessary and for services that were not performed. Aiti pleaded guilty to one (1) count of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. Section 371. He was sentenced to 37 months in prison to be followed by 2 years supervised release. He was ordered to pay Medicaid $518,194.33 in restitution and $1,366,149.00 in restitution to Medicare and private insurance.

2. <u>Allen, Mary</u>
   Case No. M2070320

   Allen, a home health aide, billed $1,056.00 worth of services allegedly provided to her great-nephew while she vacationed in Florida and North Carolina. She pleaded guilty to one count of Theft by deception, an M-1. The court sentenced her to ninety days in the Franklin County Corrections Center, but suspended the sentence. The court placed Ms. Allen on probation for one year and ordered her to pay $1,056.00 of restitution.

3. <u>Anthony (Njoku), Randy (Ihechi, Inc.)</u>
   Case No. M2050034

   Anthony, the owner of Ihechi, Inc., submitted claims for ambulette transports (wheelchair transportation) for ambulatory recipients. Anthony pleaded guilty to one (1) count of Medicaid Fraud (F-4). Anthony was sentenced to eighteen (18 ) months in prison, suspended, placed on five (5) years community control, and ordered to pay restitution in the amount of $93,209.10.

4. <u>Balazs, Holly (Luther Home of Mercy)</u>
   Case No. M2060269

   Balazs, a nurse aide at Luther Home of Mercy, kicked a resident causing a large bruise. Balazs pleaded guilty to one (1) count of attempted patient abuse (F-5) in the Ottawa County Court of Common Pleas. She was sentenced to eleven (11) months in prison, suspended, placed on two (2) years community control, and was ordered to perform 200 hours of community service.

5.  Barrett, Kellie, LPN
    Case No. M2070434

    Barrett was a nurse who billed for home health services that she did not provide.
    She was charged with one (1) count of Medicaid Fraud and one (1) count of Theft
    and pleaded guilty to the Medicaid Fraud count.  Barrett was sentenced to one
    hundred eighty (180) days, suspended, with probation for one (1) year.  She was
    ordered to pay restitution of $1,635.00 and was fined $100.00.

6.  Behrens, Daniel (F & F Pharmacies, Inc.)
    Case No. M2060276

    Behrens was a pharmacist employed at F & F Pharmacies.  He was addicted to
    drugs, and stole drugs from the pharmacy.  In order to cover this up, he caused
    false claims to be billed to the Medicaid program.  Behrens was indicted on
    multiple charges, pleaded guilty to and was convicted of four (4) counts of illegal
    processing of drug documents, one (1) count of Medicaid Fraud, and six (6) counts
    of Theft.  Behrens was sentenced to four and one-half (4 ½) years in prison.

7.  Bianchi, Donielle
    Case No. M2060537

    Bianchi, an independent home health aide, billed for services she did not render,
    and failed to get appropriate medical treatment for the recipient under her direct
    care.  Bianchi pleaded guilty to one (1) count of theft, (F-5), and one (1) count of
    failure to provide for a functionally impaired person, in the Miami County Court
    of Common Pleas.  She was sentenced to sixteen (16) months in prison and ordered
    to pay restitution in the amount of $2,706.00.

8.  Bowers, Angelo (Columbus Rehabilitation and Subacute)
    Case No. M2060134

    Bowers, while employed as a nurse aide at Columbus Rehabilitation and Subacute,
    hit a resident in the eye.  He was charged with and pleaded guilty to one (1) count
    of Patient Abuse (F4), and sentenced to three (3) years of probation.

9.  Bradley, Christine
    Case No. M2070199

    Bradley was a home health aide who billed for services that she did not provide.
    She was charged with one (1) count of Medicaid Fraud and one (1) count of Theft,
    and was convicted of the Medicaid Fraud count.  She was given a six (6) month
    suspended sentence and ordered to pay restitution in the amount of $1,020.00.

10. Brandt, Katherine
    Brandt, Karen
    Case No. M2060470

    Katherine Brandt is Karen Brandt's mother. Katherine worked for a third party biller from whom she stole patient information. She then used her daughter's provider number to submit claims to Medicaid for services that no one had provided. Karen, the daughter, then assisted Katherine in cashing the checks. Katherine Brandt was charged with complicity to commit Medicaid Fraud and Medicaid Fraud, and pleaded guilty to Medicaid Fraud. She was given a six (6) month suspended sentence with two (2) years probation, and ordered to pay $4,008.00 in restitution. Katherine Brandt was charged with one (1) count of Medicaid Fraud and pleaded guilty to that count. She was given a nine (9) month suspended sentence with five (5) years probation and was ordered to pay $4,008.00 in restitution.

11. Bryan, William Jr.
    Case No. M2060458

    Bryan, a home health aide, submitted claims for services he did not provide. He pleaded guilty to an M-1 Medicaid Fraud charge, and was ordered to pay $5,017.00 in restitution.

12. Burger, Traci
    Case No. M2070114

    Burger, a nurse aide, violently jerked a resident's hair and caused her to strike her head against a chair. The resident was eighty -one year old when the incident occurred. Burger pleaded guilty to one (1) count of Patient Neglect, a first degree misdemeanor. Burger was ordered to pay a $100 fine.

13. Burns, Robert
    Case No. M2060468

    Burns, a dentist, unbundled dental x-ray codes; he would bill for some x-rays individually on the actual date of service and then bill for the other x-rays on a fake date of service to maximize his reimbursement from Medicaid. Burns, pleaded guilty to one (1) count of Theft as a felony of the fifth degree. He was sentenced to twelve (12) months incarceration, suspended for a five (5) year term of community control. Burns was ordered to pay restitution in the amount of $45,296.88, pay investigative costs in the amount of $1,920.67, pay court costs, perform 100 hours of community service, and maintain employment.

14.  Carpenter, Rhonda (The Arbors at Marietta)
     Case No. M2070080

     Carpenter, a nurse employed at The Arbors at Marietta, stole narcotics from
     residents and from the home.  Carpenter was charged with two (2) counts of illegal
     processing of drug documents and one (1) count of tampering with drugs.  She
     was convicted of one (1) count of illegal processing of drug documents, and was
     given a one hundred twenty (120) day suspended sentence and five (5) years
     probation.

15.  Carter, Karen
     Case No. M2060591

     Carter, a former employee of Lutheran Village Courtyard Nursing Home, used her
     position as a business office clerk to withdraw money from the residents' fund
     accounts.  Carter also created false receipts indicating that funds stolen from the
     residents were dispersed to someone other than herself.  Carter pleaded guilty to
     Theft from the Elderly (F-5) and Forgery (F-5).  She also pleaded guilty to several
     offenses in four (4) other cases brought by the Franklin County Prosecutor's Office.
     Carter was sentenced to twenty-three (23) months in prison and ordered to pay
     restitution of $586.00.

16.  Carter, Karen
     Case No. M2070706

     Carter, a former employee of Sanctuary at Tuttle Crossing, used resident credit
     cards to make personal purchases.  She pleaded guilty to two (2) counts of Identity
     Fraud (a felony of the third degree and a felony of the third degree); two counts of
     Theft by Deception (both felonies of the fourth degree); and Misuse of a Credit
     Card (a felony of the fourth degree).  Carter was sentenced to five (5) years in
     prison.

     In addition to the above noted cases, Carter had four (4) additional cases pending
     before the court at sentencing.  On all of the cases pending before the court, Carter
     was sentenced to nine (9) years and eleven (11) months in prison.

17. <u>Chinn, Karri</u>
Case No. M2060595

Chinn, a home health aide, continued to bill for aide services for almost a year after she quit providing the service to her two (2) Medicaid recipients. She pleaded guilty to Medicaid Fraud, a F-4. The court placed her on community control for five (5) years and ordered her to pay restitution in the amount of $7,870.00.

18. <u>Christensen, Mark</u>
<u>Christensen, Debra</u>
Case No. M2070161

The Christensen's, formerly husband and wife, adopted special needs children. These children were entitled to home health care. The Christensen's seized control of the provider agreements and billing operations for the home health aides that they employed, and submitted claims for twice as much as they should have. They paid the appropriate amount of funds to the caregivers, and kept the other half of the money for themselves. Each Christensen was charged with one (1) count of Theft, and was convicted of same. They were each placed on five (5) years probation and each ordered to pay $206,655.00 in restitution, jointly and severally.

19. <u>Cook, Arianne</u>
Case No. M2070406

Cook was an independent provider home health aide who entered into a kickback arrangement with her recipient, Deborah Hines. Cook would bill as if she provided services to Hines on Sundays, but would not actually work and would pay Hines money so that she would not complain. Cook pleaded guilty to one (1) count of Theft as a felony of the fifth degree. Cook was sentenced to six (6) months of incarceration, suspended for a three (3) year term of community control, and ordered to pay restitution in the amount of $2,520.00.

20. <u>Cousino, Susan (Medback Clinics)</u>
Case No. M2050101

Cousino was employed as a billing clerk for Medback Clinics. In this capacity, she billed for services not rendered by Medback Clinics. Cousino pleaded guilty in federal court (Northern District of Ohio) to Conspiracy to Commit Health Care Fraud. Cousino was sentenced to five (5) years probation.

21. <u>Crabtree, Raymond (Edgewood Manor of Greenfield)</u>
    Case No. M2040659

    Crabtree, a State-tested Nurse Aide, physically assaulted several elderly nursing home residents.  Crabtree was found guilty of three (3) F4 counts of Patient Abuse, and was sentenced to serve seventeen (17) months of incarceration per count, consecutively, for a total of fifty-one (51) months.

22. <u>Davis, Bettena</u>
    Case No. M2030278

    Davis, a home health aide, billed for services not rendered.  She pleaded guilty to one (1) count of Medicaid Fraud, a fifth degree felony, was sentenced to one (1) year of community control, and was ordered to pay restitution of $500.00.

23. <u>Dorsey, Kendra</u>
    Case No. M2060381

    Dorsey, a home health aide who billed for services not rendered, pleaded guilty to Medicaid Fraud as a misdemeanor of the first degree.  Dorsey was sentenced to six (6) months of incarceration, suspended for a five (5) year term of community control, on the condition that she pays restitution in the amount of $3,816.00.

24. <u>Estep, James</u>
    Case No. M2070042

    Estep, an independent home health aide, billed for services he did not provide. Estep pleaded guilty to one (1) count of Medicaid Fraud, (M-1) and one (1) count of Theft, (M-1).  Estep was sentenced to one (1) year in jail, suspended, was placed on twelve (12) months community control and was ordered to pay restitution in the amount of $11,472.00.

25. <u>Eze, Nwabueze</u>
    Case No. M2060610

    Eze, a nurse aide, attempted to transfer a patient alone when the patient required a two-person transfer.  The patient fell from the Hoyer lift and sustained bruises to her face and a fractured femur.  Eze pleaded guilty to one (1) count of Patient Neglect, a second degree misdemeanor, and was ordered to pay a $250.00 fine.

26. <u>Fellows, Lavon (Caretenders of Cleveland, Inc.)</u>
    Case No. M2060434

    Fellows was a home health aide employed by this home health agency.  Some of
    her patients were in the hospital, yet she continued to bill as though she was caring
    for them.  Fellows was indicted for one (1) count of Medicaid Fraud and one (1)
    count of Theft, and pleaded guilty to, and was convicted of, one (1) count of
    Medicaid Fraud.  Fellows was ordered to pay restitution in the amount of
    $2,878.50.

27. <u>Frederick, Amanda (Theresa Peponis)</u>
    Case No. M2060113

    Frederick was an independent home health aide.  In violation of the rules, she hid
    the fact that she was married to her recipient and continued to bill for services.
    Frederick pleaded guilty to one (1) count of Medicaid fraud (F-5) and was placed
    on one (1) month community control.

28. <u>Guerrero, Dawn</u>
    <u>(Cambridge Home Health Care, TLC Home Health Care of Ohio)</u>
    Case No. M2060594

    Guerrero, a home health aide working for two agencies at the same time, turned in
    false time sheets, causing the agencies to bill for services that were not rendered.
    Guerrero pleaded guilty to one (1) count of Theft (F-5).  She was sentenced to eight
    (8) months in prison, suspended, was placed on two (2) years community control,
    and was ordered to pay Cambridge $2,170.00 and TLC $1,181.00 in restitution.

29. <u>Hill, Maria</u>
    Case No. M2060552

    Hill was a home health aide who billed Medicaid for home health services she did
    not provide.  She was charged with one (1) count of Medicaid Fraud and pleaded
    guilty to same.  She was given a three (3) month suspended sentence with one (1)
    year probation, and ordered to pay restitution in the amount of  $960.00.

30.  Hines, Deborah
Case No. M2070406

Hines is a Medicaid recipient who allowed her provider, and co-defendant, to bill for Sundays and not show up in exchange for $80 a week.  Hines pleaded guilty to one (1) count of Medicaid Fraud, a first degree misdemeanor.  Hines was ordered to pay restitution of $2,520.00, joint and several with co-defendant, and was placed on one (1) year non-reporting probation.

31.  Hollingsworth, Regina
Case No. M2060131

Hollingsworth, a home health aide, submitted timesheets to her employer who, in turn, billed Medicaid for hours that Hollingsworth did not work. Hollingsworth was working at the local grocery store during the same times that she reported she was providing services to her recipient/boyfriend.  Hollingsworth, pleaded guilty to one (1) count of Attempted Theft, a first degree misdemeanor.  Hollingsworth was sentenced to six (6) months of incarceration, suspended for five (5) years of community control.   Hollingsworth was ordered to pay restitution in the amount of $3,972.00 and investigative costs in the amount of $3,406.77.

32.  Hutchinson-Barrie, Silvia
Case No. M2070134

Hutchinson-Barrie, a home health aide, consistently visited the home of her Medicaid recipient for only fifteen (15) minutes at a time, but billed for one (1) to two (2) hour home health vists.  She entered a guilty plea to an M-1 count of Medicaid Fraud.  The court sentenced her to six (6) months of jail time, suspended, and placed on probation for one (1) year.  In addition, the court ordered restitution in the amount of $5,508.00.

33.  Ivey, Karen M.
Case No. M2070139

Ivey, a Licensed Practical Nurse and independent home health provider, billed Medicaid for services not rendered.  She pleaded guilty to one (1) count of Medicaid Fraud, a fourth degree felony.  Ivey was sentenced to five (5) years of probation and ordered to pay restitution of $113,463.00 and $8,000.00 of investigative costs.

34.  Johnson, Maggie (Hand & Hand)
Case No. M2060357

Johnson was employed as a home health aide by Hand & Hand, and billed for services she did not provide.  She was indicted for one (1) count of Theft and one (1) count of Medicaid Fraud, and pleaded guilty to the Medicaid Fraud charge. She was sentenced to ninety (90) days, suspended for two (2) years of community control.  She was ordered to pay restitution of $960.00 and investigative costs in the amount of $300.00.

35.  Johnson-Cousins, Catrina
Case No. M2060208

Johnson-Cousins, a home health aide, billed Medicaid for daily living services in excess of what she actually worked.  She pleaded guilty to one (1) count of Medicaid Fraud, a first degree misdemeanor.  Johnson-Cousins was sentenced to three (3) months in jail, suspended for a three (3) year term of non-reporting community control, and was ordered to pay restitution in the amount of $516.00 and investigative costs in the amount of $1,189.50.

36.  Jones, Heather (Dean Decapito)
Case No. M2060247

Heather Jones, an independent home health aide, submitted claims for services she did not provide to Dean Decapito.  Surveillance footage revealed Heather went to Dean's home only seven (7) out of the thirty (30) days she billed during the surveillance period.   For the twenty-one (21) days she did not work, she billed Medicaid $2,262.00.  Heather pleaded guilty to one (1) count of Medicaid Fraud, an M-1, and was sentenced to ninety (90) days of jail time, suspended.  Additionally, the court ordered her to pay restitution in the amount of $2,262.00 and a $200.00 fine.

37.  Kadiri, Valerie
Case No. M2060491

Kadiri, a home health aide, worked only four (4) hours per week but billed the Medicaid program nine (9) hours per week.  She pleaded guilty to Theft, as a misdemeanor of the first degree.  Kadiri was sentenced to one (1) year probation and ordered to pay $4,317.00 in restitution.

38.  Keller, Keyetta (Wright Nursing & Rehabilitation)
     Case No. M2060350

     Keller, a former aide at Wright Nursing & Rehabilitation, punched a resident in the
     face, cutting his lip and causing bruising.  Keller pleaded guilty to one (1) count of
     Patient Abuse (F-4) and was sentenced to five (5) years of community control.

39.  Key, Marlyn
     Case No. 2060497

     Key was employed as a state tested nurse's aide for Palm Crest East Nursing
     Home when she abused a resident.  She pleaded guilty to one (1) count of Patient
     Abuse, a felony of the fourth degree.  Key was sentenced to ninety (90) days in jail
     and placed on community control for three (3) years.

40.  Lester, Carolyn
     Case No. M20603355

     Lester, a home health aide, billed Medicaid for services she did not render.  Lester
     pleaded guilty to Medicaid Fraud, a first degree misdemeanor, and was sentenced
     to one hundred eighty (180) days incarceration, suspended, and placed on
     probation for two (2) years.  She was also ordered to pay restitution of $2,696.00
     and investigative costs of $500.00.

41.  Lindsay, Scott B., DPM
     Case No. M2050250

     Lindsay, having been suspended from both Medicaid and Medicare, used another
     doctor's provider number to bill for services in violation of the suspension.
     Lindsay pleaded guilty to one (1) count of Health Care Fraud in violation of 18
     U.S.C. Section 1347, and was sentenced to one (1) month in prison, to be followed
     by two (2) years supervised release, and was ordered to pay restitution in the
     amount of $44,400.00.

42.  Lloyd, Randa (Autumn Healthcare of Newark)
     Case No. M2060266

     Lloyd, the Activities Director at Autumn Healthcare of Newark, diverted funds
     from the patient accounts and purchased personal items at Wal-Mart for herself
     and her infant with the money.  The Licking Co. court ordered her to pay
     restitution in the amount of $302.59 and put her in a diversion program.

43. Loder, Catherine (Maxim Healthcare Services)
    Case No. M2070270

    Loder, a home health nurse, turned in false time sheets to Maxim, causing false billings to be submitted to Medicaid.  Loder pleaded guilty to one (1) count of Medicaid Fraud, (M-1).  Loder was sentenced to three (3) months in jail, suspended, and was ordered to pay restitution in the amount of $1,605.12.

44. Luzier, Stephen
    Case No.  M2060532

    Luzier is a home health aide who, on three separate applications for employment, represented himself as an L.P.N. and presented employers with fake credentials, including a fake American Heart Association card, a fake S.T.N.A. reciprocity card, a fake American Red Cross C.P.R. card, and a fake Texas nursing license.  Luzier pleaded guilty to three (3) counts of Medicaid Fraud, each a felony of the fourth degree.  Luzier was sentenced to eighteen (18) months on each count of Medicaid Fraud (a total of 45 months), suspended for a term of five (5) years of community control.  Luzier was ordered to pay restitution in the amount of $59,328.50 and investigative costs in the amount of $3,712.00.  Luzier was also ordered to complete one hundred (100) hours of community service, undergo a Netcare assessment, pay court costs, and obtain and maintain employment, but not as a home health aide.

45. Marshall, Carrie (Cedarview Healthcare Inc.)
    Case No. M2070421

    Marshall, a State Tested Nursing Aide ("STNA"), hit a resident of Cedarview and threatened others with cold showers in an effort to curb their behavioral outbursts.  Marshall pleaded guilty to Patient Abuse, an F-4, in Warren County Common Pleas Court.  The court sentenced her to three (3) years of community control.

46. Martin, Christopher
    Case No. M2060593

    Martin was a home health aide who billed Medicaid for home health services that he did not provide.  He was charged with one (1) count of Medicaid Fraud and was convicted of same.  He was given a six (6) month suspended sentence with twelve (12) months probation, and ordered to pay restitution in the amount of $7,848.00.

47.  <u>Maxwell, Sue Jenny</u>
Case No. M2070403

Maxwell, a Licensed Practical Nurse, billed for skilled nursing services which were not rendered to a Medicaid recipient.  She pleaded guilty to Theft by Deception, a first degree misdemeanor, and was sentenced to ninety (90) days in jail, suspended on the condition that she pay restitution of $1,629.60.

48.  <u>McDonald, Christina</u>
Case No. M2070458

McDonald was a home health aide who billed Medicaid for services she did not provide.   She was charged with one (1) count of Theft and plead guilty to that charge.   She was fined $250.00 and ordered to pay restitution of $6,444.00.

49.  <u>McDowell, Colleena</u>
Case No. M2070200

McDowell, a home health aide, billed for services she did not render to two (2) Medicaid recipients.  She pleaded guilty to one (1) count of Theft, a fifth degree felony.  McDowell was sentenced twelve (12) months in prison, suspended for five (5) years community control, ordered to pay court costs, and ordered topay restitution of $6,408.00.

50.  <u>McKinney, Deauntay</u>
Case No. M2050669

McKinney was a home health nurse who billed for services that she did not provide.  She was indicted on one (1) count each of Medicaid Fraud and Theft (F3). The matter proceeded to trial and the jury returned verdicts of guilty as to both counts.  The two (2) counts merged for purposes of sentencing and McKinney was sentenced to four (4) years probation and ordered to pay restitution of $108,848.98. McKinney has appealed her conviction and the matter is currently pending.

51.  <u>Miller, Aubrey</u>
Case No. M2060597

Miller was a home health aide who billed for services she did not provide.  She was charged with, and pleaded guilty to, one (1) count of Tampering with Records.  She was fined $100.00 and ordered to pay restitution in the amount of $6,000.00

52. <u>Miller, Jean</u>
    Case No. M2060459

    Miller was a home health aide who billed Medicaid for services that she did not provide.  She was indicted on one (1) count of Medicaid Fraud and one (1) count of Theft, and pleaded guilty to one (1) count of Medicaid Fraud.  She was given a ten (10) month suspended sentence with four (4) years of probation.  She was also ordered to pay $7500.00 in restitution and $500.00 in investigative costs.

53. <u>Mitchell, Valerie (Northeast Professional Home Care)</u>
    Case No. M2060535

    Mitchell was a home health aide who billed and caused Medicaid to be billed for services she did not provide.  She was charged with one (1) count of Medicaid Fraud and one (1) count of Theft and pleaded guilty to one (1) count of Medicaid Fraud.  She was sentenced to a one hundred twenty (120) day suspended sentence with three (3) years probation, with an order of restitution for $4,871.68, and investigation costs $500.00.

54. <u>Neumann, Paul (Medback Clinics)</u>
    Case No. M2050101

    Neumann was a co-owner of Medback Clinics and facilitated a scheme of billing for services not rendered to Medicaid recipients.  Neumann pleaded guilty in federal court (Northern District of Ohio) to one (1) count of Conspiracy to Commit Health Care Fraud and one (1) count of Conspiracy to Commit Money Laundering.  Neumann was sentenced to thirty-three (33) months imprisonment, fined $75,000.00, and ordered to pay restitution of $1,710,725.00 and $550,000.00 in investigative costs.

55. <u>Neumann, Tim (Medback Clinics)</u>
    Case No. M2050101

    Neumann was a co-owner of Medback Clinics and facilitated a scheme of billing for services not rendered to Medicaid recipients.  Neumann pleaded guilty in federal court (Northern District of Ohio) to one (1) count of Conspiracy to Commit Health Care Fraud and one (1) count of Conspiracy to Commit Money Laundering.  Neumann was sentenced to thirty-three (33) months imprisonment, fined $75,000.00, and ordered to pay restitution of $1,710,725.00 and $550,000.00 in investigative costs.

56.  Pearson, Shevene (Comprehensive Healthcare Inc.)
     Case No. M2070004

     Pearson was a nurse who had her nursing license suspended.  However, while it
     was suspended, she continued to bill Medicaid.  She was charged with Tampering
     with Records and Theft, and convicted of each.  She was given a three (3) year
     suspended sentence with five (5) years probation and an order of restitution in the
     amount of $45,000.00.

57.  Rash, Lisa
     Case No. M2070536

     Rash, a home health aide, was convicted after a jury trial of Patient Endangerment,
     a first degree misdemeanor.  Rash was sentenced to 180 days in jail, and fined
     $100.00 plus court costs.

58.  Raspberry, Earleen
     Case No. 2060408

     Raspberry was employed by University Manor Health & Rehab as a nurse aide
     when she abused a resident.  Raspberry pleaded guilty to one (1) count of Patient
     Abuse, a fourth degree felony, and one (1) count of Attempted Felonious Assault, a
     third degree felony.  Raspberry was sentenced to two (2) years community control,
     ordered to undergo anger management classes, and complete 200 hours of
     community service.

59.  Risper, Shoskamika
     Reamey, Crishaun
     Case No. M2070301

     Risper and Reamey are cousins.  Risper had a conviction that prevented her from
     becoming a home health aide in the Medicaid program.  In order to get around
     this, she and Reamey took Reamey's BCI criminal records check and altered it in
     order to make it appear as though it was Risper's record check, and that Risper
     had no record.  The forgery was spotted by the Ohio Department of Job and
     Family Services and reported to the Medicaid Fraud Control Unit.  Risper was
     charged with one (1) count of Forgery and was convicted of that count.  She was
     given a twelve (12) month suspended sentence and placed on probation for three
     (3) years.  Reamey was charged with complicity to commit Forgery and was also
     convicted of that count.  She was fined $1,000.00.

60.  <u>Robert, Arthur</u>
Case No. M2060059

Robert was employed at Meadows Health Care Center when he assaulted a resident.  Robert pleaded guilty to one (1) count of assault, a second degree misdemeanor.  Robert was sentenced to one (1) year of probation and ordered to pay a $200 fine.

61.  <u>Robertson, Matt (Valley View Alzheimers Care Center)</u>
Case No. M2060460

Robertson, an STNA, stole two (2) Walmart gift cards, valued at a total of $1,000, from an elderly resident at the facility.  Robertson was placed in a diversion program for first-time offenders, in lieu of prosecution.

62.  <u>Robinson, Brenda</u>
Case No. M2070459

Robinson, a home health aide, left a blind recipient alone many hours of the day without providing needed services.  She pleaded guilty to Theft by Deception, a fifth degree felony, and was ordered to pay restitution of $2,940.00.

63.  <u>Russell, Robin</u>
<u>Ruble-Russell, Tracy</u>
Case No. M2060318

Robin and Tracy Russell, both independent home health aides to Terry Lyons, billed for services they did not provide.  Both Mr. and Mrs. Russell pleaded guilty to Medicaid Fraud, an F-4, as charged in the indictment.  The court sentenced Tracy Russell to five (5) years of community control and ordered her to pay $36,864.33 in restitution, of which $1,000.00 was paid at the sentencing.  Similarly, the court sentenced Robin Russell to five (5) years of community control and ordered him to pay $43,935.20 in restitution.

64.  <u>Sammons, Amy (Sanctuary at Tuttle Crossing)</u>
Case No. M2060199

Sammons, a nurse aide at Sanctuary, improperly transferred a patient, dropping her.  As a result, the patient suffered a laceration to her leg.  Sammons pleaded guilty to one (1) count of disorderly conduct, a minor misdemeanor, and was ordered to pay a fine of $100.00.

65. <u>Schulte, Jean (The Altenheim)</u>
    Case No. M2060520

    Schulte, an STNA, slapped an elderly resident while employed by the Altenheim. Schulte pleaded guilty to an F-4 count of Patient abuse.  The Cuyahoga County Court of Common Pleas placed Schulte on one (1) year of community control.

66. <u>Smith, Carolyn</u> (Bryden Place)
    Case No. M2060194

    Smith, an STNA, hit an elderly resident several times with a plastic coat hanger. Smith pleaded guilty to one count of Failure to Provide for a Functionally Impaired Person (lesser included offense), a misdemeanor of the first degree. She was sentenced to six (6) months incarceration, suspended, two (2) years of community control, and ordered to pay court costs in the amount of $184.00.

67. <u>Smith, Deannda</u>
    Case No. M2050152

    Smith, a home health aide, billed for services not rendered.  She pleaded guilty to one (1) count of Forgery, a fifth degree felony.  She was sentenced to two (2) years probation and ordered to pay restitution in the amount of $1, 230.00.

68. <u>Smith, Melissa</u>
    Case No. M2070044

    Smith, a home health aide who billed for services not rendered, pleaded guilty to Medicaid fraud as a misdemeanor of the first degree. Smith was sentenced to six (6)  months of incarceration, suspended on the condition that she pays restitution in the amount of $4,098.00.

69. <u>Smith, Tina</u>
    Case No. M2060447

    Smith, a Licensed Practical Nurse, billed for services not rendered to Medicaid recipients.  She pleaded guilty to one (1) count of Medicaid Fraud, a felony of the fifth degree.   Smith was sentenced to twelve (12) months of incarceration, suspended for four (4) years of community control.  Smith was also ordered to complete forty (40) hours of community service, ordered to pay restitution in the amount of $56,270.40, and investigative costs in the amount of $901.32.

70. Stewart, Tamieka (Eliza Bryant Center)
    Case No. M2070034

    Stewart was employed at the Eliza Bryant Center where she stole credit cards from a resident.  Stewart was charged with Misuse of Credit Card, Theft, and Theft from the Elderly.  She pleaded guilty to Theft and Theft from the Elderly and was sentenced to two (2) years probation with an order of restitution of $734.98.

71. Thomas, Shelly (Forest Hills)
    Case No. M2070571

    Thomas, a nurse aide, grabbed a resident's finger, pulling it back.  The resident's finger was broken as a result.  Thomas also filed a false report with regard to the injury.  Thomas pleaded guilty to one (1) count of patient neglect, (M-1) and one (1) count of falsification, (M-1) in the Belmont County Municipal Court.  Thomas was sentenced to ninety (90) days in jail, suspended, fined $1,000.00, and was ordered to not work with the elderly.

72. Tinkham, Ronald
    Case No. 2070334

    Tinkham, a home health aide, billed for services not rendered.  He pleaded guilty to one (1) count of Medicaid Fraud, a first degree misdemeanor.  He was sentenced to thirty (30) days, suspended, and ordered to pay in $1,404.00 restitution and $500.00 in investigative costs.

73. Townsend-Williams, Robin
    Case No. M2060467

    Townsend-Williams was a home health aide who billed Medicaid for services she did not provide.  She was indicted for one (1) count of Medicaid Fraud and pleaded guilty to same.  She was given a one hundred twenty (120) day suspended sentence with two (2) years probation.  She was ordered to pay restitution of $5,284.40, and investigative costs of $500.00.

74. Vanover, Bessie
    Case No. M2060335

    Vanover, a home health aide, billed for services not rendered.  She pleaded guilty to one (1) count of Medicaid Fraud, a first degree misdemeanor.  She was sentenced to three (3) months in jail, suspended, and ordered to repay $816.00 restitution.

75. <u>Wilkerson, Edna</u>
Case No. M2070306

Wilkerson, an independent home health aide, billed for services that were actually provided by a person who did not have a provider agreement with Medicaid. Wilkerson pleaded guilty to one (1) count of Theft, (M-1).  Wilkerson was sentenced to sixty (60 )days in jail, suspended, and was ordered to pay restitution in the amount of $3,216.00.

76. <u>Willoughby, Romanyne</u>
Case No. M2060490

Willoughby was a home health aide who billed Medicaid for services she did not provide.  She was charged with one (1) count of Medicaid Fraud and was convicted of same.  She was given a twelve (12) month suspended sentence with five (5) years probation, and an order of restitution for $7,989.00.

<u>Civil Settlements</u>

During its recertification period, the Ohio MFCU completed civil settlements with the defendants listed below:

1. <u>Adena Regional Medical Center</u>
<u>Greenfield Area Med Center</u>
Case No. M2070303/M2070305

Adena bought Greenfield.  During an audit, it was determined that laboratory tests were being unbundled when billed, resulting in an overpayment by Medicaid.  A review of the billing system determined that a software error caused the unbundling.  A Settlement Agreement and Release was entered into between Adena and the Ohio Department of Job and Family Services wherein Adena paid $300,000.00 for unbundled laboratory tests.

2. <u>Associated Dental Billing Assoc.</u>
Case No. M2070210

Associated Dental Billing Assoc. submitted billings to the Ohio department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b). Associated Dental Billing agreed to settle the claims for $4,631.55.

3. Atlantic Medical Transportation
   Case No. M2050168

   Atlantic was an ambulette service that transported ambulatory recipients. A Settlement Agreement and Release was entered into between Atlantic and the Ohio Department of Job and Family Services wherein Atlantic paid $40,000.00 for services provided to ambulatory recipients.

4. Augustin, Cesar J., DDS
   Case No. M2070273

   Augustin submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b). In response to the demand letter sent by the State, Dr. Augustin settled his claims for $1,114.39.

5. Aventis Pharmaceuticals, Inc.
   Case No. M2080054

   A National Association of Medicaid Fraud Control Units' ("NAMFCU") global case team reached a civil settlement agreement with Aventis, pursuant to which the company paid $22.7 million to resolve claims that it was inflating the Average Wholesale Price ("AWP") of its anti-dmetic drug, Anzemet, in violation of federal and state false claims acts. Ohio's share of the settlement was $676,402.96.

6. Baker, Charles F., DDS
   Case No. M2070273

   Baker submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b). In response to the demand letter sent by the State, Dr. Baker settled the claims for $853.70.

7. Beitelschees, Ted A., DDS
   Case No. M2070253

   Beitelschees submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b). In response to a demand letter sent by the State, Dr. Beitelschees settled the claims for $563.42.

8. <u>Berk, Allen, DDS</u>
   Case No. M2070247

   Berk submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter sent by the State, Dr. Berk settled the claims for $4,980.72.

9. <u>Burwinkel Family Dentistry</u>
   Case No. M2070239

   Burwinkel Family Dentistry submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter snet by the State, Burwinkel Family Dentistry settled the claims for $3,016.00.

10. <u>Caretenders of Cleveland, Inc.</u>
    Case No. M2060434

    An investigation revealed that various employees of this home health agency had continued to submit time sheets for times when the people they were caring for were in the hospital.  This resulted in Medicaid overpayments of $11,114.00, which was addressed via a civil settlement.

11. <u>Carratola, Louis, DDS</u>
    Case No. M2070245

    Carratola submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter snet by the State, Dr. Carratola settled the claims for $2,000.00.

12. <u>CVS Pharmacy</u>
    Case No. M2060245

    A NAMFCU global case team reached a civil settlement agreement with CVS, pursuant to which the company paid $36.7 million to resolve claims that it improperly caused its retail pharmacies to switch Medicaid patients who were prescribed ranitidine (generic Zantac) tablets to the more expensive capsule form of the drug, in violation of federal and state false claims acts.  Ohio's share of the settlement was $1,687,331.75.

13.  Davis, Stephen A., DDS
Case No. M2070215

Davis submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter sent by the State, Dr. Davis settled the claims for $2,988.40.

14  Drake Center, Inc.
Case No. 2060584

Drake reported to the Ohio Department of Job and Family Services that they had come under the new management of Health Alliance of Greater Cincinnati.  After a self-review of records, Health Alliance/Drake discovered that four (4) patients had been residing in their long-term acute care hospital for over five (5) years, despite the fact that these patients did not meet the level of care required to remain in the long-term acute care hospital during that time frame.  As a result, Drake entered a civil settlement and repaid $4,821,483.14.

15  Farber, Wayne J., DDS
Case No. M2070254

Farber submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to a demand letter sent by the State, Dr. Farber settled the claims for $6,385.29.

16  F & F Pharmacies
Case No. M2060276

This pharmacy employed a pharmacist who stole drugs from the pharmacy and created false Medicaid claims in order to cover up the theft.  As a result, Medicaid overpaid $52,465.74.  This sum was repaid in full by the pharmacy.

17  Gable, William E. ,DDS
Case No. M2070256

Gable submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to a demand letter the State sent, Dr. Gable settled the claims for $2,351.79.

18     <u>George, James, DDS</u>
Case No. M2070237

George submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter snet by the State sent, Dr. George settled the claims for $336.00.

19     <u>Ginn, David, DDS</u>
Case No. M2070248

Ginn submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter sent by the State, Dr. Ginn settled the claims for $3,427.34.

20.     <u>Goshen Family Dentistry</u>
Case No. M2070242

Goshen Family Dentistry submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter sent by the State, Goshen Family Dentistry settled the claims for $1,176.00.

21.     <u>Griffeth Nursing Home, Inc. #1</u>
Case No. M2070430

The Ohio Department of Job and Family Services mistakenly sent a check for $12,960.23 to this nursing home.  The home repaid the funds in their entirety.

22.     <u>Glaxo, Smith, Kline</u>
Case No. M2080290

A NAMFCU global case team reached a civil settlement agreement with Glaxo, Smith, Kline, pursuant to which the company paid $4.9 Million to resolve claims that it knowingly set, reported, and maintained inflated Average Wholesale Prices, Suggested List Prices, Net Wholesale Prices, Wholesale Purchase Prices, and/or Wholesale Acquisition Costs for its drug, Amoxil, that were substantially higher than the prices the vast majority of its customers actually paid, in violation of federal and state false claims acts.  Ohio's share of the settlement was $194,818.00.

23. <u>Guster, Christopher ,DDS</u>
    Case No. M2070207

    Guster submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  The State sent him a demand letter, and Dr. Guster agreed to settle the claims for $10,307.52.

24. <u>Harlan, Stephen, DDS</u>
    Case No. M2070236

    Harlan submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  Dr. Harlan settled the claims for $3,961.27 after the State issued a demand letter to him.

25. <u>Kay, Marvin and</u>
    <u>Rosenthal, Wesley</u>
    Case No. M2070250

    Kay and Rosenthal submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter sent by the State, Drs. Kay and Rosenthal settled the claims for $2,672.64.

26. <u>Kozicky, Thomas, DDS</u>
    Case No. M2070233

    Kozicky submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the State's demand letter, Dr. Kozicky paid $1,806.12.

27. <u>Littleton, Harrietta Sue</u>
    Case No. M2060397

    Littleton, an independent home health aide, was overpaid by Medicaid due to a billing error.  Once the error was identified, Littleton reimbursed Medicaid $1,008.00.

28. <u>May, Elizabeth</u>
    Case No. M2070542

    May, an independent home health aide, billed for services provided by another aide who did not have a provider agreement. The other aide was "job shadowing" and actually provided the care. May did not realize she could not bill for those services. May reimbursed Medicaid $252.00.

29. <u>Meckler, Stanley, DDS</u>
    Case No. M2070234

    Meckler submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b). In response to the State's demand letter, Dr. Meckler settled the claims for $5,974.30.

30. <u>Medecis</u>
    Case No. M2070660

    A NAMFCU global case team reached a civil settlement agreement with Medecis, pursuant to which the company paid $9.8 Million to resolve claims that it knowingly promoted the sale of its drug, Loprox, for "off-label" uses, not approved by the United States Food and Drug Administration, in violation of federal and state False Claims Acts. Ohio's share of the settlement was $570,881.43.

31. <u>Medved, William, DDS</u>
    Case No. M2070217

    Medved submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b). In response to the State's demand letter, Dr. Medved settled the claims for $13,120.50.

32. <u>Merck & Co., Inc.</u>
    Case No. M2080052

    A NAMFCU global case team, in coordination with the United States Attorney's Office in Philadelphia and the United States Department of Justice in Washington, D.C., reached a civil settlement agreement with Merck, pursuant to which the company paid $399 million to resolve claims that it misreported its "Best Price" for its drugs Zocor, Mevacor, and Vioxx, by offering tiered discounts (including nominal pricing) to hospitals in connection with the hospitals' purchase of these drugs, in violation of federal and state False Claims Acts.  Ohio's share of the settlement was $16,856,083.00.

33. <u>Merck & Co., Inc.</u>
    Case No. M2080053

    A NAMFCU global case team, in coordination with the United States Attorney's Office in Philadelphia and the United States Department of Justice in Washington, D.C., reached a civil settlement agreement with Merck, pursuant to which the company paid $250 million to resolve claims that it misreported its "Best Price" for its drug, Pepcid, by offering tiered discounts (including nominal pricing) to hospitals in connection with the hospitals' purchase of these drugs, in violation of federal and state false claims acts.  Ohio's share of the settlement was $13,234,963.00.

34. <u>Microconsult, Ltd.</u>
    Case No. M2050031

    Microconsult, Ltd. was an ambulette service that transported ambulatory recipients.  A Settlement Agreement and Release was entered into between Microconsult and the Ohio Department of Job and Family Services wherein Microconsult paid $6,000.00 for services provided to ambulatory recipients.

35. <u>Miller, Donna J., DMD</u>
    <u>Green, Daniel, DDS</u>
    Case No. M2070240

    Miller and Green submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter sent by the State, Drs. Miller and Green settled the claims for $3,093.00.

36.  Muckler, David R., DDS
     Case No. M2070232

Muckler submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the State's demand letter, Dr. Muckler settled the claims for $3,011.31.

37.  Ogborne, Michael, DDS
     Case No. M2070244

Ogborne submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter that the State sent, Dr. Ogborne settled the claims for $7,414.85.

38.  Poole, Terrance, DDS
     Case No. M2070249

Poole submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to a demand letter sent by the State, Dr. Pool settled the claims for $2,708.49.

39.  Purdue Pharma
     Case No. M2070559

A NAMFCU global case team reached a civil settlement agreement with Purdue, pursuant to which the company paid $160 million to resolve claims that it marketed its drug, OxyContin, as less subject to abuse, illicit use, diversion, and as less addictive and less likely to cause tolerance and withdrawal than other medications, in violation of federal and state false claims acts.  Ohio's share of the settlement was $10,401,285.25.

40.  Rodgers, Charlotte, LPN
     Case No. M2070461

Rodgers was a nurse who billed for home health services that she did not provide. There was insufficient evidence to establish criminal content, so the State secured restitution in the form of a $273.60 civil recovery.

41.  Schwartz, Barry, DDS
     Case No. M2070273

     Schwartz submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter snet by the State, Dr. Schwartz settled the claims for $5,005.52

42.  Scioto County Community Action Organization
     Case No. M2070250

     The Scioto County Community Action Organization submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  The Scioto County Community Action Organization settled the claims for $4,487.22 in response to the demand letter the State sent.

43.  Serenity Home Care
     Case No. M2060282

     Serenity, a home health agency, billed for services that were not provided by its aide, even though time sheets had been turned in.  The time sheets were not prepared by the aide, and it is unknown who prepared the time sheets.  Serenity reimbursed Medicaid $1,464.00.

44.  Sheets, Chastity
     Case No. M2070203

     Sheets, an independent home health aide, inadvertently billed Medicaid for services that were not rendered.  She reimbursed Medicaid $252.00.

45.  Smith, David K., DDS
     Case No. M2070213

     Smith submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the State's demand letter, Dr. Smith settled the claims for $3,373.88.

46. <u>Stull, Richard</u>
    Case No. M2070360

    Stull was a home health aide who billed for services while his client was hospitalized.  We were unable to establish sufficient intent to proceed criminally, and the entire overpayment of $778.00 was repaid.

47. <u>Terrace at Westside</u>
    Case No. 2070154

    A resident reported that someone stole $988 from her resident account.  An investigation could not determine who stole the money.  Therefore, the facility made full restitution to the resident.

48. <u>Van Zant, David T. ,DDS</u>
    Case No. M2070238

    Van Zant submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter the State sent, Dr. Van Zant settled the claims for $1215.00.

49. <u>Walgreens Pharmacy</u>
    Case No. M2060246

    Total $161,171.66

    A NAMFCU global case team reached a civil settlement agreement with Walgreens, pursuant to which the company paid $35 Million to resolve claims that it improperly caused its retail pharmacies to switch Medicaid patients who were prescribed ranitidine (generic Zantac) tablets to the more expensive capsule form of the drug, in violation of federal and state false claims acts.  Ohio's share of the settlement was $161,171.66.

50. <u>Watanabe, Aico, DDS</u>
    Case No. M2070211

    Watanabe submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response the State's demand letter, Dr. Watanabe settled the claims for $4,514.64.

51. <u>Young, Corey A., DDS</u>
    Case No. M2070209

    Young submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  The State sent him a demand letter, and Dr. Young agreed to settle claims for $3,363.79.

52. <u>Zimmerman, Donald, DDS</u>
    Case No. M2070246

    Zimmerman submitted billings to the Ohio Department of Job and Family Services for bitewings, panoramics and periapicals for the same patient, on the same date of service, in violation of O.A.C.5101.3-5-02(B)(9)(b).  In response to the demand letter that the State sent, Dr. Zimmerman settled the claims for $2,641.94.

## Case Management System

The Special Agents and Assistant Attorneys General in the Unit are organized into five (5) teams:  One (1) team has the responsibility to investigate patient abuse/neglect cases, three (3) teams are responsible for investigating Medicaid Fraud cases, and the fifth team is our special projects team.  The special projects team is responsible for case management functions, data utilization functions, downloading and analyzing Medicaid claim data, and providing technical assistance to the other teams.  Each team has a Team Supervisor who is supervised by the Special Agent-In-Charge.  Together, they are responsible for efficiently and effectively facilitating the investigations assigned to their respective teams.

Case assignments to these investigative teams are made by the Special Agent-In-Charge and the Assistant Chief.  They and the Special Agent Supervisors are responsible for assigning active cases to the respective teams and providing all necessary supervisory guidance of team activities.  The investigative teams carry a caseload comprised of approximately ninety (90) active cases.

The cases designated as active cases in the OMFCU are given that designation by the Intake Committee.  This committee is comprised of the Section Chief, Assistant Section Chief, Special Agent-In-Charge, Patient Abuse Supervisor, and Intake Officer.  The Committee's function is to review all allegations of fraud or patient abuse/neglect received by the Unit since its last meeting, and to determine which of these merit investigation and which are to be referred to other agencies or closed.  The Intake Committee meets twice each month.

Once a case is assigned to a particular investigator on an investigative team, the Team Supervisor of that team is responsible for meeting with the assigned agents and attorneys for the purpose of planning and setting expectations for the necessary investigative activity.  Teams generally hold monthly reviews to discuss the status of investigative efforts on each case and to determine action items for the next 30 to 60 day time span.

This system is monitored regularly.  All investigative activities in Medicaid Fraud cases are documented through investigative reports that are put into an electronic case master file.  Team members meet regularly to discuss case status and to strategize about case development.  Once criminal or civil charges are filed, all court activity is documented in an office-wide database.  This database is available for review as needed by OMFCU personnel.

The Unit continued to upgrade its case management capabilities this recertification period by adding reporting functions to the Storage, Tracking, and Reporting System ("STARS") database.  STARS was created by the Unit's Special Projects Team and is used for case development tracking, time reporting, monthly reporting, and other statistical measurements.  In conjunction with the Ohio Attorney General's office wide docketing system and the Unit's electronic master files, STARS completes the development of a Unit wide case management system.


## Training

Professional Development

The OMFCU annual budget continues to adequately accommodate the established continued education requirements for our staff.  Our objective is to provide a minimum of forty (40) hours of training to each unit member and to give course selection consideration to staff needing to retain professional certifications.  The budget gives us the flexibility necessary to expose the staff to a variety of training venues including national out-of-state training conferences and seminars put on by the National Association of Medicaid Fraud Control Units, the National Health Care Anti-fraud Association, and the Association of Certified Fraud Examiners.

We continue using the process created several years ago to assure that each agent receives adequate training annually.  First, we established a Core Training Curriculum for our Special Agents based on their years of experience with the unit.  The Core Curriculum is attached as **Attachment A**.  We then compare each staff member's prior training to the curriculum in order to determine their training needs.  Finally, each

supervisor meets with their Agents and discusses the core curriculum and other training that might be available or beneficial.  The Special Agent-In-Charge and the supervisors finalize the training plan for each Special Agent.

Included as **Attachment B** is a listing of the courses taken by one or more Agents during the reporting period.  The courses are listed by title, provider, and number of course training hours.

<u>New Agent Training</u>

Each new staff member attends our in-house Basic Training Course.  During this reporting period, we hired an insufficient number of new staff members to justify a course.  However, we have recently hired additional new staff and have scheduled a Basic Training Course for the week of November 3, 2008.  Included as **Attachment C** is an outline of the training topics/hours covered in our Basic Training Course.

<u>Training Projections</u>

The OMFCU will continue its effort to provide at least forty (40) hours of training to each staff member during each fiscal year.  The training will continue to familiarize new personnel with the Medicaid program and investigative techniques and aid the entire staff in sharpening their investigative, auditing, and legal skills.  In-house training programs for new staff currently involves well-crafted presentations related to conducting good investigations within the OMFCU.  This program includes Medicaid claim download and analysis, home health and nursing home issues, and various other aspects of provider-related investigative techniques.

The legal staff continues to participate in training programs sponsored by the Office of the Attorney General, as well as outside seminars, in an effort to:  (1) develop a better understanding of investigative techniques; and (2) more fully develop their legal skills, especially in the area of trial practice and procedure.  The legal staff is required by the Supreme Court of Ohio to obtain 24 Continuing Legal Education Credits (CLEs) every two years.  Staff members attending CLE training complete cards that are submitted by the trainer to the Ohio Supreme Court for documentation and tracking.  The MFCU does not track CLEs.

## The National Association of Medicaid Fraud Control Units

The OMFCU maintains an active role within the National Association of Medicaid Fraud Control Units (NAMFCU).  During the recertification period, the Director of the OMFCU served as a member of the NAMFCU Executive Committee and co-chaired the Global Case Committee.  The Assistant Director and one of the Unit's Senior Special Agents serve on the NAMFCU Training Committee, and the Director, Assistant Director, Special Agent-In-Charge, Special Projects Team Special Agent Supervisor, and one of the Unit's Senior Special Agents served as instructors for NAMFCU's Basic Training course, Practical Skills Training course, and Global Case Training courses.

The Director attended the Directors' Symposium in Washington, D.C. the week of March 17, 2008.  One (1) Special Agent attended the Introduction to Medicaid Fraud Training Conference in Santa Fe, New Mexico.  A total of three (3) Special Agents attended the Practical Skills Training Course, two (2) in Orlando, Florida, and one (1) in Denver, Colorado.

The Director, Assistant Director, Principal Attorney, Special Agent-In-Charge, and one of the Unit's Special Agent Supervisors are currently working on, and in some instances serving as the team leader of, a number of global settlement teams.  During the recertification period, the Unit's Director served on the following global case teams that resulted in successful national settlements:  Aventis Anzemet, CVS, GSK Amoxil, Medicis, and Walgreens.  These cases resulted in over $74 million in recoveries.

## Ohio MFCU Staff

Included as **Attachment D** is a roster of the Unit's staff members, as of June 30, 2008.

## Certification of Drug-Free Workplace

The Attorney General of the State of Ohio, hereinafter referred to as the grantee, certifies that it will provide a drug-free workplace by:

(a)  Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b)  Establishing a drug-free awareness plan to inform employees about -

    (1)  The dangers of drug abuse in the workplace;
    (2)  The grantee's policy of maintaining a drug-free workplace;
    (3)  Any available drug counseling, rehabilitation, and employee assistance programs; and
    (4)  The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c)  Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d)  Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1)  Abide by the terms of the statement; and
    (2)  Notify the employer of any criminal drug statute conviction for a violation occurring in the workplace no later than five days after such convictions;

(e)  Notifying the agency within ten days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction;

(f)  Taking one of the following actions, within 30 days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1)  Taking appropriate personnel action against such an employee, up to and including termination; or
    (2)  Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g)  Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e) and (f).

*Place of Performance*:  The Attorney General of Ohio, Division of Medicaid Fraud Control, 150 East Gay Street, 17th Floor, Columbus, Ohio 43215.

# ATTACHMENT A

# MFCU Special Agent Professional Development Continuum

| Category | Course | Hours | 0 - 2 Yrs. | 3 - 5 Yrs. | 5+ Yrs. |
|---|---|---|---|---|---|
| MFCU | MFCU Basic Training | 24 | ■ | | |
| | ASP Baton / OC Aerosol Training[1] | 6 | ▢ | | |
| AG's Office | New Employee Orientation | 4 | ▢ | | |
| | Intro to MS Word[2] | 8 | ▢ | | |
| | Intro to MS Excel[2] | 8 | ▢ | | |
| | Intro to MS Access[2] | 8 | ▢ | | |
| | Advanced MS Excel[2] | 8 | | ▢ | |
| | Advanced MS Access[2] | 8 | | ▢ | |
| | LexisNexis | 2 | ▢ | | |
| | Career-related Electives | N/A | | | ▢ |
| OPOTA | Firearms Training[1] | 80 | ▢ | | |
| | Core Criminal Investigation | 40 | | ▢ | |
| | Financial Investigative Techniques[3] | 40 | | ▢ | |
| | Photography for Investigators | 8 | | ▢ | |
| | Basic Videography | 24 | | ▢ | |
| | Testifying in Court | 8 | ▢ | | |
| | Reid Techniques for Interview & Interrogation (Basic) | 24 | ▢ | | |
| | Reid Techniques for Interview & Interrogation (Advanced) | 8 | | ▢ | |
| | Homicide[4] | 24 | | ▢ | |
| | Advanced Death Investigations[4] | 24 | | | ▢ |
| | Sex Crimes Investigation[4] | 24 | | ▢ | |
| | Advanced Sex Crimes Investigation[4] | 16 | | | ▢ |
| | Undercover Tactics & Techniques[3] | 40 | | ▢ | |
| | Career-related Electives | N/A | | | ▢ |
| NAMFCU | Basic Medicaid Fraud Course | 40 | ▢ | | |
| | Practical Skills | 40 | | | ▢ |

**Key:**

| | |
|---|---|
| 1 | Voluntary |
| 2 | As required to achieve proficiency |
| 3 | Fraud Agents only |
| 4 | Abuse/Neglect Agents only |

# ATTACHMENT B

## Ohio Medicaid Fraud Control Unit
## Professional Development Training - FY 2008

| | Course Title | Course Provider | Hours |
|---|---|---|---|
| 1 | 2007 Legal Updates | Ohio Bureau of Criminal Identification & | 6.00 |
| 2 | Advanced Sex Crimes Investigation | Ohio Peace Officer Training Academy | 16.00 |
| 3 | NHCAA Annual Training Conference | National Health Care Anti-Fraud Association | 24.00 |
| 4 | Basic Firearms Training | Ohio Peace Officer Training Academy | 80.00 |
| 5 | Computer Crime First Responder | Ohio Peace Officer Training Academy | 8.00 |
| 6 | Core Criminal Investigation Training | Ohio Peace Officer Training Academy | 40.00 |
| 7 | Crime Victims Training | Ohio Bureau of Criminal Identification & | 5.00 |
| 8 | Crimes Against the Elderly | Public Agency Training Council | 16.00 |
| 9 | Emerging Trends in Fraud Investigation & | Ohio Auditor of State | 16.00 |
| 10 | Flub-Proof Business Writing | Columbus State Community College | 7.00 |
| 11 | Global Case Training | National Association of Medicaid Fraud Control Units | 24.00 |
| 12 | Grammar for the Workplace | Columbus State Community College | 7.00 |
| 13 | In-Service Firearms Requalification | Ohio Peace Officer Training Academy | 8.00 |
| 14 | Internal Investigation | Ohio Peace Officer Training Academy | 16.00 |
| 15 | Interview & Interrogation | Multijurisdictional Counterdrug Task Force | 24.00 |
| 16 | Interview & Interrogation | Ohio Peace Officer Training Academy | 24.00 |
| 17 | Introduction to Medicaid Fraud Control | National Association of Medicaid Fraud Control Units | 32.00 |
| 18 | LEADS TAC In-Service | ODPS - Law Enforcement Automated Data System | 4.00 |
| 19 | Microsoft Excel | Rockhurst University | 8.00 |
| 20 | Photography for Investigators | Ohio Peace Officer Training Academy | 8.00 |
| 21 | Practical Skills for Investigating Medicaid Fraud | National Association of Medicaid Fraud Control Units | 32.00 |
| 22 | Street Drugs: Recognition and Identification | Ohio Peace Officer Training Academy | 8.00 |
| 23 | Tactical Training for Fraud Investigators | Ohio Investigators Association | 7.00 |
| 24 | Technical & Procedural Writing | Columbus State Community College | 7.00 |
| 25 | Testifying In Court | Ohio Peace Officer Training Academy | 8.00 |
| 26 | When Injuries Speak | Area Agency on Aging | 8.00 |

# ATTACHMENT C

Health Care Fraud Section, Medicaid Fraud Control Unit
**BASIC TRAINING COURSE CURRICULUM**

|  |  |  | Hours |
|---|---|---|---|
| Unit I: | Administration | | |
| | Topic 1 | Welcome Aboard | 0.50 |
| | Topic 2 | Medicaid / Medicare Overview | 0.50 |
| | Topic 3 | MFCU Goals / Statistics | 0.50 |
| | Topic 4 | MFCU Handbook | 1.00 |
| | Topic 5 | STARS and Case Master File | 1.00 |
| | Topic 6 | Report Writing | 5.00 |
| | Topic 7 | Finding Spreadsheets | 1.00 |
| Unit II: | Legal | | |
| | Topic 1 | MFCU Jurisdiction / Venue | 0:50 |
| | Topic 2 | Ohio Revised Code & OAC | 1.00 |
| | Topic 3 | Miranda and Rules of Evidence | 1.00 |
| | Topic 4 | Evidence Control | 1.00 |
| | Topic 5 | Search and Seizure | 1.00 |
| | Topic 6 | Grand Jury and GJ Subpoenas | 1.00 |
| | Topic 7 | Testifying in Court | 1.00 |
| Unit III: | Investigation | | |
| | Topic 1 | Fee-For-Service Providers | 3.00 |
| | Topic 2 | Home Health Providers | 3.00 |
| | Topic 3 | Patient Abuse/Neglect Complaints | 4.00 |
| | Topic 4 | Long Term Care Facility Providers | 1.00 |
| | Topic 5 | Patient Needs Allowance and Misappropriation | 1.00 |
| | Topic 6 | Medicaid Managed Care Organizations | 1.00 |
| Unit IV: | Resources | | |
| | Topic 1 | Computer Investigative Tools | 1.00 |
| | Topic 2 | Video Surveillance & Photography | 1.00 |
| | Topic 3 | Physical Surveillance and Undercover Operations | 1.00 |
| | Topic 4 | LEADS Practitioner Training, CCH, and OHLEG SE | 1.00 |
| | Topic 5 | Misc. Sources of Information | 1.00 |
| | | **Total Hours** | **34.00** |

# ATTACHMENT D

## Ohio Medicaid Fraud Control Unit
### Personnel Roster as of 06/30/08

|  | Last Name | First Name | Position |
|---|---|---|---|
| 1 | Chambers | Todd | Special Agent |
| 2 | Colliver | Kristi | Special Agent |
| 3 | Cooper | Kevin | Special Agent |
| 4 | Crawford | David | Special Agent |
| 5 | Dickerson | Tona | Special Agent |
| 6 | Dixit | Abhijit | Special Agent |
| 7 | Duffy | Drew | Principal Assistant Attorney General |
| 8 | Durst | Josh | Special Agent |
| 9 | Early | Lloyd | Special Agent-In-Charge |
| 10 | Fairbanks | Michael | Forensic Analyst |
| 11 | Ferguson | James | P/T Legal Intern |
| 12 | Finegold | Jordan | Principal Assistant Attorney General |
| 13 | Fluhart | Tom | Special Agent |
| 14 | Ford | Phyllis | Receptionist |
| 15 | Grosjean | Jeffrey | Special Agent |
| 16 | Gurian | Marilyn | Special Agent |
| 17 | Guthrie | John | Section Chief |
| 18 | Haddox | Thalia | Special Agent |
| 19 | Haenszel | Christine | Special Agent Supervisor |
| 20 | Haines | Greg | Special Agent |
| 21 | Helmandollar | Jason | Special Agent Supervisor |
| 22 | Houston | Ryan | Special Agent |
| 23 | Joseph | Joe | Special Agent |
| 24 | Kalas | Andrew | Special Agent |
| 25 | Koorn | Amy | Assistant Attorney General |
| 26 | Kopus | Frank | P/T College Intern |
| 27 | Larson-Long | Laura | P/T College Intern |
| 28 | Long | Sabrina | Special Agent |
| 29 | Loshark | Jennifer | Special Agent |
| 30 | Mitchell | Keesha | Assistant Section Chief |

|   | Last Name | First Name | Position |
|---|---|---|---|
| 31 | Monk | Jill | Special Agent |
| 32 | Moore | Shari | Special Agent |
| 33 | Napier | Shawn | Associate Assistant Attorney General |
| 34 | Nearhood | Constance | Senior Assistant Attorney General |
| 35 | Nicholson | Claude | Associate Assistant Attorney General |
| 36 | Okwu | Nedra | Intake Officer |
| 37 | Points | Deborah | Special Agent |
| 38 | Rubin | Linda | Special Agent Supervisor |
| 39 | Russell | Dianne | Administrative Secretary |
| 40 | Swartz | Brian | Special Agent |
| 41 | Vaughn | Corinna | Assistant Attorney General |
| 42 | Walton | Michael | Court Bailiff |
| 43 | Woods | Jennifer | Legal Secretary |
| 44 | Wozniak | Steve | Special Agent Supervisor |
| 45 | Vacant | | Special Agent Supervisor |
| 46 | Vacant | | Special Agent |
| 47 | Vacant | | Special Agent |
| 48 | Vacant | | Special Agent |