Exhibit 170

**From:** Paul Farrell <Paul@Greeneketchum.com>
**Sent:** Friday, June 15, 2018 6:18 PM
**To:** Rice, Dale <drice@cov.com>
**Cc:** phanly@simmonsfirm.com; jrice@motleyrice.com; sskikos@skikoscrawford.com; trafferty@levinlaw.com; abierstein@simmonsfirm.com; SBadala@NapoliLaw.com; Hunter@NapoliLaw.com; jflowers@motleyrice.com; dackerman@motleyrice.com; mcrawford@skikos.com; lsinger@motleyrice.com; jconroy@simmonsfirm.com; mark.cheffo@dechert.com; crendon@bakerlaw.com; emainigi@wc.com; smcclure@reedsmith.com; Hobart, Geoffrey <ghobart@cov.com>; ttarney@grsm.com; Kaspar Stoffelmayr <kaspar.stoffelmayr@bartlit-beck.com>
**Subject:** MDL2804 Discovery Impasse: Time Limitations.

Dear Dale,

I have re-confirmed with my colleagues that the many Distributor Defendants (including McKesson) maintain that nothing prior to 2013 is relevant for purposes of ***CMO ¶9.k.ii and/or discovery responses***.  So, on behalf of the PEC, we are declaring an impasse and will be requesting SM Cohen to resolve the issue.

Here is out our final position:

1.   **Timeframe:**  We believe everything since January 1, 1995 is relevant to the Plaintiff's theories of liability for the following reasons:

     a.     One of the seminal issues in the case is whether the Distributor Defendants breached the Reporting Requirement and/or Shipping Requirement related to "suspicious orders."  A suspicious order is defined by the federal regulations as orders of "an unusual size, orders deviating substantially from a normal pattern and orders of unusual frequency."  In order to establish a baseline, we intend to establish orders of usual size, a normal pattern of orders and orders of usual frequency prior to the launch of OxyContin in December 1995.  Hence, we framed written discovery to reach back to 1990.  We received and considered the Distributor Defendants objection to 1990 as the timeframe and hereby amend our position accordingly.  We will voluntarily limit discovery responses to the timeframe of January 1, 1995 to the present.  This limits the baseline of America's pre-OxyContin opiate consumption to approximately a year prior to the launch of OxyContin;

     b.     The United States Department of Justice, Office of the Inspector General (OIG), Evaluation and Inspections Divisions, reported that the DEA issued final decisions in 178 registrant actions between 2008 and 2012. The Office of Administrative Law Judges issued a recommended decision in a total of 177 registrant actions before the DEA issued its final decision, including 76 actions involving orders to show cause and 41 actions involving immediate suspension orders. The Drug Enforcement Administration's Adjudication of Registrant Actions, United States Department of Justice, Office of the Inspector General, Evaluation and Inspections Divisions, I-2014-003 (May 2014)  (https://oig.justice.gov/reports/2014/e1403.pdf);

     c.      As early as August 21, 2001, Congress was investigating a disturbing trend in prescription opiate diversion:

1

*In response to the escalating diversion problem, DEA has embarked upon a comprehensive action plan, focused largely on enforcement and regulatory investigations which target key points of diversion, including unscrupulous or unethical medical professionals, forged and fraudulent prescriptions, pharmacy theft, and doctor-shopping.*

OXYCONTIN: Its Use And Abuse Hearing Before The Subcommittee On Oversight And Investigations Of The Committee On Energy And Commerce House Of Representatives One Hundred Seventh Congress First Session. https://babel.hathitrust.org/cgi/pt?id=pst.000045434716;view=1up;seq=2;

    d.    In 2002, the OIG noted a disturbing trend in the volume of prescription opiates being diverted across America:

*"The number of dosage units of controlled pharmaceuticals dispensed in the United States has grown at an average annual rate of 6 percent since 1992 to a total of nearly 3 billion dosage units in 2000. Along with this growth, non-medical use of controlled pharmaceuticals has increased, especially narcotics, stimulants, depressants, and anabolic steroids. Overall, according to the Drug Enforcement Administration (DEA), the number of people who use controlled pharmaceuticals for non-medical purposes each year approximately equals the number who uses cocaine - 2 to 4 percent of the U.S. population. Due to the far-reaching effect of the controlled pharmaceutical diversion problem, it is critical for the DEA to devote sufficient resources to investigate diversion of controlled pharmaceuticals. It is also important for the DEA to recognize emerging trends and patterns of controlled pharmaceutical diversion and to respond quickly where significant problems are developing."*

Review Of The Drug Enforcement Administration's (DEA) Control Of The Diversion Of Controlled Pharmaceuticals, Report Number I-2002-010 (2002) (https://oig.justice.gov/reports/DEA/e0210/index.htm);

    e.    On March 1, 2004, the DEA released its National Drug Control Strategy Focus on Prescription Drugs which outlined the extent of prescription drug abuse in the U.S.
and a coordinated drug strategy to confront the illegal diversion and abuse of prescription drugs;

    f.    On June 14, 2004, Congress held a hearing before the Permanent Subcommittee on Investigations of the Committee on Governmental Affairs, United States Senate, One Hundred Eighth Congress, second session, entitled BUYER BEWARE : the danger of purchasing pharmaceuticals over the Internet which included the following acknowledgement:

*"On its face it appears that the distribution chain for prescription medicines in the United States is fairly straightforward – manufacturers sell their products to wholesalers, who in turn sell the products to retail pharmacies or stores, who in turn dispense medicines to patients with prescriptions. It is not until the system is Studied in greater detail that one begins to appreciate both the complexities and the vulnerability of the distribution chain and the potential for exploitation or abuse."*

*"Wholesalers or distributors are primarily regulated by the states with no uniform standards across state borders. States have a comparatively small number of investigators to monitor the licensed wholesalers; thus, given the sheer number of wholesalers, oversight is minimal."*

Submission of the Honorable Rudolph W. Giuliani -Chairman & CEO Giuliani Partners LLC on behalf of the Pharmaceutical Research and Manufacturers of America (PhRMA);

    g.    Beginning in August 2005, the DEA Office of Diversion Control began providing briefings on the Reporting Requirement and Shipping Requirement to 81 distributors at 233 locations;

    h.    On September 26, 2006, the DEA sent "Dear Registrant" letters to every distributor in the country regarding its duties to prevent diversion;

    i.    On October 2, 2006, the DEA fined McKesson $34 million for shipping suspicious orders to rogue pharmacies;

j.      On July 3, 2007, the DEA's revocation of a distributor's registration was upheld and reported in the Federal Register: Southwood Pharmaceuticals, Inc., 72 FR 36487 (2007);

k.      On December 27, 2007, the sent a second "Dear Registrant" letter to every distributor in the country regarding its duties to prevent diversion;

l.      On May 2, 2008, the DEA and McKesson entered into an Administrative Memorandum of Agreement which provided that McKesson would "maintain a compliance program designed to detect and prevent the diversion of controlled substances, inform DEA of suspicious orders required by 21 CFR § 1301.74(b), and follow the procedures established by its Controlled Substance Monitoring Program;

m.      On September 30, 2008, the DEA and Cardinal Health entered into a Settlement and Release Agreement and Administrative Memorandum of Agreement related to the allegations that Cardinal failed to maintain effective controls against the diversion of controlled substances at its distribution facilities; and

n.      Cardinal Health, Inc. v. Holder, 846 F. Supp. 2d 203, 206 (D.D.C. 2012).

We are running out of time and need to be more efficient resolving discovery disputes.  Please pass the message along to all the CT1 counsel of record for the Distributor Defendants that they can email me directly on this particular issue over the weekend.  Otherwise, I intend to request SM Cohen permit letter briefing on the matter on Monday.

**Paul T. Farrell, Jr., Esq.**
Greene Ketchum, LLP
419 Eleventh Street
Huntington, WV 25701
phone:    304.525.9115
              800.479.0053
facsimile:  304.529.3284
email: paul@greeneketchum.com
*"Facts are stubborn things."*
          -John Adams
          President of the United States.
          Trial lawyer

---

**From:** Rice, Dale <drice@cov.com>
**Sent:** Friday, June 15, 2018 9:38 AM
**To:** David@SpecialMaster.Law
**Cc:** Cathy Yanni <cathy@cathyyanni.com>; mcgovern@law.duke.edu; phanly@simmonsfirm.com; jrice@motleyrice.com; sskikos@skikoscrawford.com; trafferty@levinlaw.com; abierstein@simmonsfirm.com; SBadala@NapoliLaw.com; Hunter@NapoliLaw.com; jflowers@motleyrice.com; dackerman@motleyrice.com; Paul Farrell <Paul@Greeneketchum.com>; mcrawford@skikos.com; lsinger@motleyrice.com; jconroy@simmonsfirm.com; mark.cheffo@dechert.com; crendon@bakerlaw.com; emainigi@wc.com; smcclure@reedsmith.com; Hobart, Geoffrey <ghobart@cov.com>; ttarney@grsm.com; Kaspar Stoffelmayr <kaspar.stoffelmayr@bartlit-beck.com>
**Subject:** MDL 2804 Response of Distributors & Pharmacies to June 14 Discovery Letter

Special Master Cohen,

We write on behalf of McKesson Corporation, AmerisourceBergen Drug Corporation, Cardinal Health, Miami-Luken, CVS, Rite Aid, Walgreens and Walmart in response to Mr. Hanly's June 14, 2018 Letter Concerning Discovery, in which Plaintiffs refer to "Defendants." The letter appears directed only to some or all of the *Manufacturer* Defendants.  The issues described by Mr. Hanly do not apply to the *Distributor* or *Pharmacy* Defendants and have not been raised by the various plaintiff counsel engaged in meet and confers with the Distributor Defendants.  Indeed, the scope of products issue raised by Mr. Hanly – an alleged failure by certain Defendants to "produce information about their generic products" and "all of their branded products" – does not

apply to the Distributors and Pharmacies.  The Pharmacies' responses are not even due yet.  We therefore ask that consideration of these issues be limited to the Manufacturer Defendants (or the appropriate subset of Manufacturer Defendants).

On a similar note, we were surprised to receive Plaintiffs e-mail to you sent at 1:24pm on June 14, which claims that the Distributors have taken the position that prior productions that relate to areas outside the two Track One counties are not relevant.  We are unaware of a Distributor having taken that position.  The correspondence was also premature.  Plaintiffs have asked that we communicate regarding discovery with the specific counsel that the Plaintiffs assigned to each Distributor Defendant.  Yet those counsel have never informed any Distributor Defendant that the meet and confers had failed or that they believed court intervention was necessary on the issue of prior productions.  To the contrary and as an example, Cardinal Health has a meet and confer scheduled for Friday at 11 am on the very issue raised.  We believe that the Distributor Defendants and the counsel for Plaintiffs who have been working with them on their discovery issues will resolve the remaining issues on prior production in short order in accordance with the meet and confer provisions of CMO1 Paragraph 9.k.iii.

Thank you for your consideration.

Dale Rice

**Dale A. Rice**
Covington & Burling LLP
One Front Street, San Francisco, CA 94111-5356
T +1 415 591 7081 | drice@cov.com
www.cov.com

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

---

**From:** Paul Hanly <phanly@simmonsfirm.com>
**Sent:** Thursday, June 14, 2018 5:26 PM
**To:** david@specialmaster.law
**Cc:** cathy@cathyyanni.com; McGovern@law.duke.edu; jrice@motleyrice.com; sskikos@skikoscrawford.com; trafferty@levinlaw.com; Andrea Bierstein <abierstein@simmonsfirm.com>; Enu Mainigi <emainigi@wc.com>; smcclure@reedsmith.com; ttarney@grsm.com; Salvatore C. Badala <SBadala@NapoliLaw.com>; Jodi Flowers (jflowers@motleyrice.com) <jflowers@motleyrice.com>; David Ackerman <dackerman@motleyrice.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>; jrice@motleyrice.com; Paul Farrell (Paul@Greeneketchum.com) <Paul@Greeneketchum.com>; Hobart, Geoffrey <ghobart@cov.com>; kaspar.stoffelmayr@bartlit-beck.com; Carole Rendon <crendon@bakerlaw.com>; Mark.Cheffo@dechert.com; Reed, Steven A. <steven.reed@morganlewis.com>; Hillyer, Rebecca J. <rebecca.hillyer@morganlewis.com>; Sitarchuk, Eric W. <eric.sitarchuk@morganlewis.com>; Peter H. Weinberger <PWeinberger@spanglaw.com>; Mark Crawford <mcrawford@skikos.com>; Linda Singer <lsinger@motleyrice.com>; Jayne Conroy <jconroy@simmonsfirm.com>
**Subject:** Re: MDL 2804: Plaintiffs' Letter concerning discovery

Dear Special Master Cohen:
Please see attached letter.
Respectfully,
Paul J. Hanly, Jr.
Chairman, Complex Litigation
Simmons Hanly Conroy LLC



SIMMONS HANLY CONROY
A NATIONAL LAW FIRM

112 Madison Avenue | New York, NY 10016
Direct: 212.784.6401 | Main: 212.784.6400 | Fax: 212.213.5949
phanly@simmonsfirm.com | www.simmonsfirm.com

**From:** Paul Hanly <phanly@simmonsfirm.com>
**Date:** Wednesday, June 13, 2018 at 5:12 PM
**To:** "david@specialmaster.law" <david@specialmaster.law>
**Cc:** Cathy Yanni <cathy@cathyyanni.com>, "Francis E. McGovern" <McGovern@law.duke.edu>, Joseph Rice <jrice@motleyrice.com>, "sskikos@skikoscrawford.com" <sskikos@skikoscrawford.com>, "trafferty@levinlaw.com" <trafferty@levinlaw.com>, Andrea Bierstein <abierstein@simmonsfirm.com>, Enu Mainigi <emainigi@wc.com>, "smcclure@reedsmith.com" <smcclure@reedsmith.com>, "ttarney@grsm.com" <ttarney@grsm.com>, "Salvatore C. Badala" <SBadala@NapoliLaw.com>, Jodi Flowers <jflowers@motleyrice.com>, David Ackerman <dackerman@motleyrice.com>, "Hunter@NapoliLaw.com" <Hunter@NapoliLaw.com>, Joseph Rice <jrice@motleyrice.com>, Paul Farrell <Paul@Greeneketchum.com>, "ghobart@cov.com" <ghobart@cov.com>, "kaspar.stoffelmayr@bartlit-beck.com" <kaspar.stoffelmayr@bartlit-beck.com>, Carole Rendon <crendon@bakerlaw.com>, "Mark.Cheffo@dechert.com" <Mark.Cheffo@dechert.com>, "Reed, Steven A." <steven.reed@morganlewis.com>, "Hillyer, Rebecca J." <rebecca.hillyer@morganlewis.com>, "Sitarchuk, Eric W." <eric.sitarchuk@morganlewis.com>, "Peter H. Weinberger" <PWeinberger@spanglaw.com>, Mark Crawford <mcrawford@skikos.com>, Linda Singer <lsinger@motleyrice.com>, Jayne Conroy <jconroy@simmonsfirm.com>
**Subject:** MDL 2804: Plaintiffs' Letter concerning discovery

Dear Special Master Cohen:

Yesterday evening (June 12), shortly after Plaintiffs provided their update on the status of discovery with each Defendant, Purdue sent to Plaintiffs' counsel a letter setting forth new or revised positions on certain of the issues previously discussed by the parties and reflected in Plaintiffs' status letter. Although Purdue had, during the meet-and-confer process, stated that it would inform Plaintiffs by June 11 or 12 whether it is willing to provide a list of all its prior productions, its June 12 letter made no mention of this issue.

Instead, the June 12 letter made clear that, although Purdue is no longer applying a simple date cut-off to its prior productions, and while it has agreed to provide productions other than those made to the City of Chicago and the Multi-State Working Group, it still has  no intention of providing "documents previously produced pursuant to *any* civil investigation, litigation, and/or administrative action by federal (including Congressional), state, or local government entities involving the marketing or distribution of opioids," as required by CMO 1, § 9-k-ii (emphasis added).  Rather, Purdue proposes to provide us with six identified prior productions, without specification of how these six were chosen and without identification of the remaining prior productions that it is refusing to produce.

Notable for its absence on Purdue's list are (1) any production it made to Hanly Conroy ("HC"), the predecessor firm of Simmons Hanly Conroy ("SHC") in the period 2003-2006 in numerous personal injury lawsuits alleging that, in its marketing and promotion, Purdue failed to warn of the dangers, and

exaggerated the benefits, of OxyContin (the "HC Production"); and (2) any production it made to the Department of Justice in the investigation that culminated in Purdue's guilty plea in 2007 ("DOJ Production").  Both of these productions are undeniably relevant.  With respect to the first of these, Plaintiffs renew their request that SHC be permitted to share, immediately, with all counsel on the Plaintiffs' Executive Committee, the HC Production.  Plaintiffs further request that Purdue be required to turn over both the DOJ Production and a list of all of its prior productions "involving the marketing or distribution of opioids," so that Plaintiffs and the Court can assess what is not being provided.

Respectfully,
Paul J. Hanly, Jr.
Paul T. Farrell, Jr.
Joseph F. Rice
(Co-Lead Counsel, MDL 2804)


Paul J. Hanly, Jr.
Chairman, Complex Litigation
Simmons Hanly Conroy LLC



112 Madison Avenue, 7th Floor | New York, NY 10016
Direct: 212.784.6401 | Main: 212.784.6400 | Fax: 212.213.5949
phanly@simmonsfirm.com | www.simmonsfirm.com


This e-mail and any files transmitted with it are privileged and confidential, and they are intended solely for the use of the intended recipient(s). If you are not an intended recipient, you should notify the sender immediately, delete this e-mail and any files transmitted with it from your system, and destroy or return all copies."

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01