# Exhibit 2

```
  1              THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
  2                      EASTERN DIVISION
  3                          - - -
  4    IN RE:  NATIONAL     :
       PRESCRIPTION OPIATE  :     MDL NO. 2804
  5    LITIGATION           :
       ---------------------------------------------
  6                         :     CASE NO.
       THIS DOCUMENT        :     1:17-MD-2804
  7    RELATES TO ALL CASES:     Hon. Dan A. Polster
  8                          - - -
  9               Thursday, April 25, 2019
 10                          - - -
 11      HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
 12                 CONFIDENTIALITY REVIEW
 13                          - - -
 14         Videotaped deposition of DAVID A.
 15    KESSLER, M.D. (Day 1), taken pursuant to
 16    notice, was held at Baron & Budd, 600 New
 17    Hampshire Avenue NW, Floor G, Washington, DC
 18    20037, beginning at 9:28 a.m., on the above
 19    date, before Lisa V. Feissner, RDR, CRR, Notary
 20    Public.
 21
 22                          - - -
 23              GOLKOW LITIGATION SERVICES
             877.370.3377 ph | 917.591.5672 fax
 24                    deps@golkow.com
```

1  looked at those extensively.  They were
2  provided in discovery.
3          So there's a whole host of entities
4  that were looked at.
5      Q.  Internal documents from DEA?
6      A.  Internal documents from DEA?  I've
7  looked at -- I've looked at some documents from
8  DEA.  I wouldn't think that they're internal
9  necessarily.  They tended to be the more public
10 documents from DEA that I saw or DEA
11 presentations that I -- that I saw.
12     Q.  What about internal documents from
13 any manufacturer not part of who you're looking
14 at?
15     A.  So there were -- there were
16 subsidiaries of your client, for example,
17 Rhodes, others that I looked at in studying the
18 raw materials and the finished products, but
19 they were sort of -- I don't know whether
20 they're separate entities, you would consider
21 them, or they're the same as Purdue.
22         But certainly with Rhodes, I
23 studied Rhodes's manufacture of API.  I've
24 looked at, for example, Noramco,

Highly Confidential - Subject to Further Confidentiality Review

```
 1   Tasmanian Alkaloids.  I mean, if you look at
 2   the -- if you look at super poppy and the
 3   production of super poppy and your client's
 4   buying super poppy and the high alkaloid --
 5           Q.   That's not what I asked.  I asked
 6   about outside this.
 7           A.   Yes.  Well, that's outside.  So
 8   that -- if you look at Tasmanian -- the company
 9   called Tasmanian Alkaloids that is owned by
10   Noramco that is owned by Johnson -- by
11   Johnson & Johnson, that Tasmanian Alkaloids,
12   for example, fed -- OxyContin would not have
13   been driven without Tasmanian Alkaloids and
14   super poppy.  So I looked at that.  Those were
15   entities maybe other than the six.
16           Q.   So, sir, at the time that you were
17   at FDA, was looking at internal company
18   documents part of anything the agency did?
19           A.   You're using internal company
20   documents?
21           Q.   Yeah, other than -- yes.  You
22   wouldn't look at internal sales and marketing
23   documents, would you?
24           A.   No.
```

```
 1              THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION
 3                          - - -
 4   IN RE:  NATIONAL       :
     PRESCRIPTION OPIATE  :     MDL NO. 2804
 5   LITIGATION            :
     ---------------------------------------------
 6                         :     CASE NO.
     THIS DOCUMENT          :     1:17-MD-2804
 7   RELATES TO ALL CASES:    Hon. Dan A. Polster
 8                          - - -
 9               Friday, April 26, 2019
10                          - - -
11      HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
12                 CONFIDENTIALITY REVIEW
13                          - - -
14         Videotaped deposition of DAVID A.
15   KESSLER, M.D. (Day 2), taken pursuant to
16   notice, was held at Baron & Budd, 600 New
17   Hampshire Avenue NW, Floor G, Washington, DC
18   20037, beginning at 8:07 a.m., on the above
19   date, before Lisa V. Feissner, RDR, CRR, Notary
20   Public.
21
22                          - - -
23             GOLKOW LITIGATION SERVICES
          877.370.3377 ph | 917.591.5672 fax
24               deps@golkow.com
```

1  Q. Dr. Kessler, I'm Amy Laurendeau. I
2  represent Janssen Pharmaceuticals. I'm going
3  to use the time allotted to me to ask you about
4  your numerous opinions regarding Janssen in
5  your report and do the best we can to get
6  through as many as we possibly can in the next
7  few hours.
8  Okay?
9  A. Yes.
10  Q. With respect to Janssen, the
11  opinions you're offering are limited to its
12  three opioid products, Duragesic, Nucynta IR,
13  and Nucynta ER, correct?
14  A. I think that's -- I think that's
15  correct in general with regard to -- I think
16  that's -- with respect to Janssen -- the reason
17  I'm having a little trouble answering that
18  question are some of the facts.
19  Janssen provided, for example, the
20  narcotic for Purdue for OxyContin, and the
21  facts in Janssen's own documents show that it
22  drove the increase in oxycodone. I don't think
23  that's an opinion; I think that's a fact.
24  So I just think that should be

1  on -- that's -- it's clear that, again, from
2  the documents -- the budget documents in Purdue
3  and Janssen's own documents from Noramco --
4  that you developed a super poppy that Purdue
5  bought and, I think it's fair to say, in
6  Janssen's own words, enabled oxycodone to --
7  the extent of oxycodone to be produced.
8           You also affect a significant
9  amount of -- you're the number one narcotic raw
10 material distributor in the world, so there are
11 a lot of -- if we're talking about generic
12 oxycodone and others, I have those sales
13 figures.
14          So again, I think you're relatively
15 right with opinions, but I just want to make
16 sure the record reflects that these
17 relationships among defendants are complex and
18 interconnected, and Oxy would never have --
19 OxyContin would never have flourished the way
20 it did but for Janssen.
21     Q.   These aren't issues you intend to
22 testify to at trial, though, are they?
23     A.   I'll answer the questions that I'm
24 asked.

```
 1           Q.    You haven't said a word about
 2   Noramco in your 300-plus page expert report,
 3   have you?
 4           A.    You're right.  The documents are on
 5   my reliance list.
 6           Q.    In the 315 pages in which you've
 7   listed the facts and opinions to which you
 8   testified in this litigation, you haven't said
 9   anything about Noramco other than to list it as
10   a defendant, correct?
11           A.    I think -- I mean -- I think that's
12   correct on the report.  But certainly those
13   documents are on my reliance list and things
14   that I've considered.
15           Q.    Are you intending to offer opinions
16   about Noramco and API and Janssen's role with
17   respect to production of API at trial?  Yes or
18   no.  I need to know today.
19           A.    I'm not -- I'm going to answer the
20   questions that I'm asked.  Those are facts.  I
21   don't think I'm going to -- I'm not going to
22   offer any opinions, necessarily.  But those are
23   facts.
24           Q.    Well, I'll tell you that Janssen
```

Highly Confidential - Subject to Further Confidentiality Review

1  strongly disagrees that those are facts, that
2  everything you say are facts, and so to the
3  extent you intend to testify to those, I need
4  to know.
5              When we allocated time and when we
6  asked for time, there was nothing mentioned
7  about Noramco in the report.  I didn't come
8  here prepared to ask you questions about
9  Noramco.  Noramco is separately represented in
10 the MDL, and counsel for Noramco isn't even
11 here, since you didn't offer opinions about
12 Noramco.
13             So I need to know what you're
14 intending to say about Noramco at trial, so
15 when I go back to the judge or the special
16 master and ask to either have those opinions
17 stricken or for additional time to depose you,
18 we understand what that testimony and opinions
19 is going to look like from your perspective.
20             MR. RAFFERTY:  I'm going to object
21        to the lengthy lecture to the witness,
22        all right.  Just ask your questions and
23        he'll answer them.
24        A.   So I don't have any specific

1  opinions on Nor -- I mean, on this, but these

2  are facts that I'm certainly happy to address

3  if I'm asked by plaintiffs or defendants, and

4  these facts are well laid out in the reliance

5  materials.

6           MS. FREIWALD:  As counsel for

7      Purdue, I just want to join in that

8      objection to the extent what you're

9      saying implicates opinions that are

10     nowhere in your report related to

11     Purdue.

12          THE WITNESS:  That's an objection.

13     Q.   You're not intending to testify at

14  trial as a fact witness; you're intending to

15  testify as an expert witness, correct?

16     A.   That's my intent, right.  That's

17  the way I see it.  I do recognize, and I leave

18  this to counsel, and I do this somewhat

19  cautiously -- I don't want to get into -- I

20  mean, the fact is that I was at the agency

21  in '93 and '94, for example, and I did take

22  certain actions on one of your products.

23          So I do have firsthand knowledge.

24  I leave it to you and counsel here and the

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.    Yes.
 2        Q.    What other company?
 3        A.    Well, I think I talked about --
 4   well, I talked about Rhodes.
 5        Q.    Okay.  And did you conclude that
 6   Rhodes does or does not have responsibility for
 7   the opioid crisis?
 8        A.    I think Rhodes is owned by Purdue.
 9   I think the answer is complicated.
10        Q.    You can't say one way or the other?
11              MR. RAFFERTY:  Object to the form.
12        A.    Well, Rhodes is -- Rhodes, at
13   different times, is making API.  Noramco is
14   making bulk.  Tasmanian Alkaloids.  I've
15   studied all those.
16              They certainly feed in, right, to
17   the -- without Tasmanian Alkaloids, but for,
18   you wouldn't have supply the way we had supply.
19              So again, I think it's fair to say
20   it's complicated, and I studied those, yes.
21        Q.    Let's talk about drug companies
22   that have no affiliation with any defendant in
23   this room.
24              How many of those did you study,
```