# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*
Case No. 18-op-45090

*The County of Cuyahoga, et al. v. Purdue Pharma L.P., et al.*
Case No. 17-op-45004

MDL No. 2804

Hon. Dan Aaron Polster

# EXHIBIT A
# SUMMARY SHEET FOR DEFENDANTS' MOTION TO EXCLUDE
# THE OPINIONS AND TESTIMONY OF CRAIG MCCANN

# SUMMARY SHEET FOR DEFENDANTS' MOTION TO EXCLUDE
## THE OPINIONS AND TESTIMONY OF CRAIG MCCANN

Plaintiffs allege that Defendants shipped, or failed to monitor, suspicious orders of prescription opioids in violation of a legal duty,[1] and have retained Dr. Craig McCann to identify those orders. To that end, McCann applied five "non-exhaustive" algorithms to ARCOS data. Those algorithms—aided substantially by an assumption directed by counsel—led McCann to identify or "flag" between 75% and 87% of all opioid shipments to the Track One counties, or more than 90% of all pills. In other words, McCann's math is the basis for Plaintiffs' staggering claim that only 10% of the prescription opioids sold to patients in the Track One counties over the past 23 years were lawfully distributed.

McCann ran certain of his algorithms incorrectly and has no experience in suspicious order monitoring, but those are not even the core flaws in his analysis. The central flaw is that the algorithms he used to identify "suspicious orders" do not purport to reflect any legal duty actually owed by Defendants, and thus do not inform "the pertinent inquiry." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The algorithms merely are alternative methods that Defendants ***could have*** but were ***not required*** to use, and neither he nor Plaintiffs' DEA expert offers any opinion that failure to use those particular methods amounts to the breach of a legal duty.

Nor could they. Plaintiffs' own DEA expert acknowledged that four of the five algorithms are not even suitable under the CSA for identifying suspicious orders, and refused to endorse the fifth, saying only that it was "potentially suitable." Moreover, the undisputed record is that DEA refuses to endorse specific methods or algorithms for identifying suspicious orders and instead requires registrants to design their own systems, tailored to their own customers and business models. According to DEA, "the variables that indicate an order is suspicious ***are very fact intensive and differ from distributor to distributor, and from customer to custome***r." There is no support for holding McCann's application of one-size-fits-all, single-variable algorithms out as the standard against which Defendants' shipments may be judged.

Plaintiffs cannot prove negligence without proving Defendants acted unreasonably. To do that, they must show more than that other conduct might have been reasonable. The orders "flagged" by McCann would be wholly irrelevant except as a measure of the "suspicious orders" shipped by Defendants in violation of some legal duty. Because they are nothing of the kind, McCann's analysis is not actually a measure of the orders Defendants shipped in violation of a legal duty. Accordingly, his opinions cannot help the jury determine whether Defendants acted negligently, and suggest, without a basis, that nearly every pill was shipped unlawfully. McCann's opinions do not fit the facts of this case and should be excluded. *See Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (requiring a "connection between the … test result being offered and the disputed factual issues in the case").

McCann's analysis also suffers from additional flaws, described more fully in the motion, that present independent grounds for exclusion.

---

[1] While not the subject of this motion, Defendants dispute plaintiffs' characterization of this legal duty as stated in their June 24, 2019 motion for partial summary judgment. *See* ECF No. 1732.