# EXHIBIT 1

Confidential - Subject to Protective Order

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | : : : : | MDL No. 2804 CASE NO. 17-MD-2804 (DAP) |

EXPERT REPORT OF CRAIG J. MCCANN, PH.D., CFA
March 25, 2019

## Table of Contents

I.    Qualifications and Remuneration .................................................- 1 -
    A.    Qualifications ...................................................- 1 -
    B.    Remuneration ..................................................- 2 -
II.   Materials Reviewed ............................................................- 2 -
III.  Assignment .......................................................................- 4 -
IV.  Summary of Opinions........................................................- 4 -
V.   ARCOS Data .....................................................................- 7 -
    A.    Receipt of ARCOS Data from the DEA ...........................- 7 -
    B.    ARCOS Data Fields Produced by DEA.............................- 9 -
        1.    Seller DEA Number .......................................- 11 -
        2.    Seller Business Activity ..................................- 12 -
        3.    Seller Name and Address ................................- 12 -
        4.    Buyer DEA Number ......................................- 12 -
        5.    Buyer Business Activity ..................................- 12 -
        6.    Buyer Name and Address ................................- 12 -
        7.    Transaction Codes .........................................- 13 -
        8.    Drug Code and Drug Name ............................- 13 -
        9.    National Drug Code .......................................- 14 -
        10.   Quantity.......................................................- 15 -
        11.   Unit .............................................................- 15 -
        12.   Action Indicator ...........................................- 16 -
        13.   Order Form Number ......................................- 16 -
        14.   Correction Number .......................................- 16 -
        15.   Strength.......................................................- 16 -
        16.   Transaction Date ..........................................- 17 -
        17.   Calculated Base Weight in Grams ...................- 17 -
        18.   Dosage Units ................................................- 17 -
        19.   Transaction ID .............................................- 18 -
    C.    Exclusions and Corrections to ARCOS Data......................- 18 -
    D.    Shipments to Dispensers in ARCOS Data ...........................- 22 -
VI.  Comparing ARCOS Data to Retail Drug Summary Reports and to
Defendant Transaction Data ......................................................- 26 -
    A.    Public ARCOS data..........................................................- 26 -
    B.    Defendants' Transaction Data.............................................- 29 -
        1.    Cardinal Health ............................................- 33 -
        2.    AmerisourceBergen .......................................- 36 -
        3.    McKesson ....................................................- 37 -
        4.    Walgreens ....................................................- 38 -
        5.    CVS.............................................................- 40 -
        6.    Anda ............................................................- 41 -

Confidential - Subject to Protective Order

7.     H. D. Smith ................................................................- 42 -
8.     Walmart ....................................................................- 43 -
9.     HBC/Giant Eagle ......................................................- 45 -
10.   Discount Drug Mart ..................................................- 46 -
11.   Prescription Supply ..................................................- 47 -

VII.   Supplementing the Data ...................................................- 48 -
    A.     Drug Labeler .............................................................- 48 -
    B.     MME Conversion Factor.............................................- 49 -
    C.     Additional Pharmacy Information ...............................- 49 -

VIII.   Cuyahoga County and Summit County ARCOS Data ........- 50 -
    A.     Cuyahoga County.......................................................- 50 -
    B.     Summit County ..........................................................- 53 -

IX.   Transaction Analysis .........................................................- 56 -
    A.     Maximum Monthly, Trailing Six-month Threshold ............- 56 -
    B.     Twice Trailing Twelve-Month Average Pharmacy Dosage Units - 60 -
    C.     Three Times Trailing Twelve-Month Average Pharmacy Dosage Units - 64 -
    D.     Maximum 8,000 Dosage Units Monthly .............................- 68 -
    E.     Maximum Daily Dosage Units ...........................................- 72 -
    F.     Additional Identification ....................................................- 76 -
        1.     Maximum Monthly, Trailing Six-month Threshold .................- 77 -
        2.     Twice Trailing Twelve-Month Average Pharmacy Dosage Units ..- 78 -
        3.     Three Times Trailing Twelve-Month Average Pharmacy Dosage Units - 79 -
        4.     Maximum 8,000 Dosage Units Monthly .................................- 80 -
        5.     Maximum Daily Dosage Units .................................- 81 -

X.   Excessive Shipments .........................................................- 82 -
XI.   Charts and Reports ...........................................................- 89 -
    A.     State Hydrocodone and Oxycodone MME Per Capita, 1997-2017 - 89 -
    B.     All Defendants Combined and Individually - 12 Opioid Drug Distribution by Defendant ..............................................................- 89 -
    C.     All Defendants, Combined and Individually, 12 Opioid Drug Distribution by Drug Code ............................................................- 90 -
    D.     All Seller 12 Opioid Drug Distribution in MME, Cuyahoga County and Summit County, by Drug.............................................- 90 -
    E.     Individual Defendant Oxycodone Distribution in OH by Total Dosage, Total MME, Total Drug Base Weight..............................- 91 -

F.      Individual Defendant Hydrocodone Distribution by Total Dosage, Total MME, Total Drug Base Weight ..............................- 91 -
G.      Oxycodone and Hydrocodone Distribution to Individual Pharmacies by Defendant .............................................................- 92 -
H.      Pharmacy Reports .......................................................................- 92 -
I.       Distributor Reports .....................................................................- 92 -
XII.  Conclusion ...............................................................................................- 93 -
Appendix 1 Craig McCann Resume .........................................................- 95 -
Appendix 2 Corrections to the ARCOS Data ..........................................- 113 -
A.      Duplicate Transactions ...........................................................- 114 -
1.      Cardinal Health .................................................................- 114 -
2.      Walmart ..............................................................................- 114 -
3.      Discount Drug Mart ..........................................................- 114 -
B.      NDC Dictionary ......................................................................- 115 -
C.      Erroneous Transactions ..........................................................- 117 -
1.      Transactions where ACTION_INDICATOR and CORRECTION_ NO are both populated. ....................................................- 117 -
2.      Adjustments to previously reported transactions. ..................- 117 -
3.      Deletions of previously reported transactions. .......................- 118 -
4.      Corrections of previously reported transactions. ....................- 118 -
D.      Transactions Involving Reverse Distributors, Analytical Labs, Importers, Exporters or Researchers .............................................- 119 -
E.      Transactions between ARCOS Registrants .........................- 120 -
F.      Transactions with Obvious Errors in Quantity .................- 120 -
G.      Transaction Code "X" .............................................................- 120 -
Appendix 3: Frequency and definition of transaction codes ..................- 123 -
Appendix 4: Corrections to DEA's NDC Dictionary ............................- 124 -
Appendix 5: List of Labeler Company Families .....................................- 125 -
Appendix 6: List of Reporter Company Families ...................................- 137 -
Appendix 7: Description of Fields in Defendant Transaction Data .......- 142 -
Appendix 8: MME Conversion Factors (from CDC) .............................- 144 -
Appendix 9: Additional Expert Report Figures and Charts ...................- 146 -
Appendix 10: Distributor Flagged Transaction Reports ........................- 146 -
Appendix 11: Chain Distributor Flagged Transaction Reports ..............- 146 -

## Table of Figures

Figure 1 ARCOS Data Fields Produced by DEA ................................................................- 10 -
Figure 2 MME Reported in the ARCOS Data or Cardinal Health Transactions, January 2006 through December 2014.................................................................................................- 33 -
Figure 3 ARCOS Data and AmerisourceBergen Data, by Month .................................- 36 -
Figure 4 ARCOS Data and AmerisourceBergen Data, by Drug Code .........................- 37 -
Figure 5 ARCOS Data and Walgreens Data.....................................................................- 39 -
Figure 6 ARCOS Data and Walgreens Data, by Month .................................................- 40 -
Figure 7 ARCOS Data and CVS Data ...............................................................................- 40 -
Figure 8 ARCOS Data and Walmart Data........................................................................- 44 -
Figure 9 ARCOS Data and Discount Drug Mart Data ...................................................- 47 -
Figure 10 ARCOS Data and Prescription Supply Data ...................................................- 47 -
Figure 11 Trailing Six-Month Maximum Threshold Flagged Transactions, Cuyahoga County, OH 1996-2018....................................................................................................- 57 -
Figure 12 Trailing Six-Month Maximum Threshold Flagged Transactions, Summit County, OH, 1996-2018....................................................................................................- 58 -
Figure 13 Twice Trailing Twelve-Month Average Pharmacy Dosage Units, Flagged Transactions, Cuyahoga County, OH 1996-2018 .........................................................- 61 -
Figure 14 Twice Trailing Twelve-Month Average Pharmacy Dosage Units, Flagged Transactions, Summit County, OH 1996-2018..............................................................- 62 -
Figure 15 Three Times Trailing Twelve-Month Average Pharmacy Dosage Units Flagged Transactions, Cuyahoga County, OH 1996-2018 .........................................................- 65 -
Figure 16 Three Times Trailing Twelve-Month Average Pharmacy Dosage Units Flagged Transactions, Summit County, OH 1996-2018..............................................................- 66 -
Figure 17 Maximum 8,000 Dosage Units Monthly Flagged Transactions, Cuyahoga County, OH 1996-2018....................................................................................................- 69 -
Figure 18 Maximum 8,000 Dosage Units Monthly Flagged Transactions, Summit County, OH 1996-2018....................................................................................................- 70 -
Figure 19 Maximum Daily Dosage Units, Any Order Subsequent to an Flagged Order, Cuyahoga County...............................................................................................................- 73 -
Figure 20 Maximum Daily Dosage Units, Any Order Subsequent to an Flagged Transactions, Summit County.........................................................................................- 74 -
Figure 21 Per Capita Opioid MME in Ohio, 1997-2017 ................................................- 82 -
Figure 22 Per Capita Opioid MME in Cuyahoga County, OH 1997-2017 .................- 83 -
Figure 23 Per Capita Opioid MME in Summit County, OH 1997-2017 .....................- 83 -
Figure 24 Per Capita Opioid Actual and Baseline MME to Ohio, 1997-2018.............- 85 -

iv

## Table of Tables

Table 1 ARCOS Opioid Transaction Data Produced by DEA ........................................- 9 -
Table 2 Drug Codes and Drug Names in the ARCOS Data ..........................................- 14 -
Table 3 Unit of Measurement Codes .............................................................................- 15 -
Table 4 ARCOS Transactions, Grouped by Transaction Participant ............................- 19 -
Table 5 Corrected ARCOS Transactions, Grouped by Receiver....................................- 22 -
Table 6 Dispenser Transactions in the ARCOS Data, by Drug Name ..........................- 23 -
Table 7 Transactions in the ARCOS Data by Seller's Business Activity.......................- 23 -
Table 8 Transactions in the ARCOS Data by Buyer's Business Activity .....................- 24 -
Table 9 Transactions by Buyer's State .........................................................................- 25 -
Table 10 Transactions by Year ......................................................................................- 26 -
Table 11 Comparison Corrected ARCOS Data and RDSR. ..........................................- 28 -
Table 12 Ratios of Retail Drug Summary Report and ARCOS Drug Weights ............- 29 -
Table 13 Overlap between ARCOS Data and Defendant Data .....................................- 31 -
Table 14 Overlap between ARCOS data and Defendant Data, allowing expanded
matching and excluding known non-overlaps in the datasets.........................................- 32 -
Table 15 Comparison of Transactions Reported in ARCOS Data vs. Cardinal Health data,
Excluding March 2008 and Allowing Expanded Matching .........................................- 35 -
Table 16 Transactions in Cuyahoga County, OH by Drug ...........................................- 51 -
Table 17 Transactions in Cuyahoga County, by Seller's Business Activity ................- 51 -
Table 18 Transactions in Cuyahoga County, by Buyer's Business Activity ................- 52 -
Table 19 Transactions in Cuyahoga County, by Year ...................................................- 53 -
Table 20 Transactions in Summit County, by Drug ......................................................- 54 -
Table 21 Transactions in Summit County, by Seller's Business Activity ....................- 54 -
Table 22 Transactions in Summit County, by Buyer's Business Activity ...................- 55 -
Table 23 Transactions in Summit County, by Year.......................................................- 55 -
Table 24 Trailing Six-Month Maximum Threshold Flagged Transactions, Cuyahoga
County, OH 1996-2018...................................................................................................- 59 -
Table 25 Trailing Six-Month Maximum Threshold Flagged Transactions, Summit
County, OH 1996-2018...................................................................................................- 60 -
Table 26 Twice Trailing Twelve-Month Average Pharmacy Dosage Units Threshold
Flagged Transactions, Cuyahoga County, 1996-2018...................................................- 63 -
Table 27 Twice Trailing Twelve-Month Average Pharmacy Dosage Units Threshold
Flagged Transactions, Summit County, OH 1996-2018................................................- 64 -
Table 28 Three Times Trailing Twelve-Month Average Pharmacy Dosage Units
Threshold Flagged Transactions, Cuyahoga County, OH 1996-2018 ..........................- 67 -
Table 29 Three Times Trailing Twelve-Month Average Pharmacy Dosage Units
Threshold Flagged Transactions, Summit County, OH 1996-2018 ..............................- 68 -
Table 30 Maximum 8,000 Dosage Units Monthly Threshold Flagged Transactions,
Cuyahoga County, OH 1996-2018 ................................................................................- 71 -
Table 31 Maximum 8,000 Dosage Units Monthly Threshold Flagged Transactions,
Summit County, OH 1996-2018.....................................................................................- 72 -
Table 32 Maximum Daily Dosage Units Threshold Flagged Transactions in Cuyahoga
County, 1996-2018 .........................................................................................................- 75 -

Table 33 Maximum Daily Dosage Units Threshold Flagged Transactions in Summit County, 1996-2018 ..................................................................................- 76 -
Table 34 Trailing Six-Month Maximum Threshold Flagged Transactions, Cuyahoga County, OH 2006-2014.....................................................................- 77 -
Table 35 Trailing Six-Month Maximum Threshold Flagged Transactions, Summit County, OH 2006-2014.....................................................................- 77 -
Table 36 Twice Trailing Twelve-Month Average Pharmacy Dosage Units Threshold Flagged Transactions, 2006-2014 ..................................................- 78 -
Table 37 Twice Trailing Twelve-Month Average Pharmacy Dosage Units Threshold Flagged Transactions, Summit County, OH 2006-2014.................................- 78 -
Table 38 Three Times Trailing Twelve-Month Average Pharmacy Dosage Units Threshold Flagged Transactions, Cuyahoga County, OH 2006-2014 .........................- 79 -
Table 39 Three Trailing Twelve-Month Average Pharmacy Dosage Units Threshold Flagged Transactions, Summit County, OH 2006-2014.................................- 79 -
Table 40 Maximum 8,000 Dosage Units Monthly Threshold Flagged Transactions, Cuyahoga County, OH 2006-2014 ................................................- 80 -
Table 41 Maximum 8,000 Dosage Units Monthly Threshold Flagged Transactions, Summit County, OH 2006-2014 ......................................................- 80 -
Table 42 Maximum Daily Dosage Units Threshold Flagged Transactions in Cuyahoga County, 2006-2014 .............................................................- 81 -
Table 43 Maximum Daily Dosage Units Threshold Flagged Transactions in Summit County, 2006-2014 ..................................................................- 81 -
Table 44 Excessive Opioid MME in Ohio..............................................................- 86 -
Table 45 Excessive MME in Ohio and MME by % Increase From 1997 Per Capita MME That was Legitimate.............................................................- 87 -
Table 46 Exclusions and Corrections to the ARCOS Data.......................................- 121 -

Confidential - Subject to Protective Order

## I.     Qualifications and Remuneration

### A. Qualifications

1.      I am the President of Securities Litigation and Consulting Group, Inc. ("SLCG"). SLCG was founded in 2000 to apply finance, economics, statistics and mathematics in litigation and consulting. SLCG staff includes professionals with PhDs and advanced degrees in applied mathematics, statistics, finance and economics.

2.      Prior to founding SLCG, I was a Director at LECG, a business unit of Navigant Consulting, Inc. Prior to joining LECG, I was Managing Director, Securities Litigation at KPMG LLP for two years. I was a senior financial economist in the Office of Economic Analysis at the U.S. Securities and Exchange Commission (the "SEC") from 1992 to 1993 and from 1994 to 1995.

3.      I have taught graduate economics and finance courses at the University of South Carolina, Virginia Tech, Georgetown University and at the University of Maryland, College Park.

4.      I have been hired as a consultant and expert witness in investigations by many state and federal agencies including the SEC, the Federal Deposit Insurance Corporation and the U.S. Department of Justice.

5.      My work as a consultant and expert witness over the past 25 years has required me to extract or receive data, process and validate the data and produce varied statistical analyses.

Confidential - Subject to Protective Order

6.      I earned a Ph.D. in Economics from the University of California, at Los Angeles. My graduate studies included extensive coursework in mathematics, statistics and econometrics.

7.      My resume, which includes a list of all publications authored by me within the last 10 years and the cases in which I have testified as an expert at trial or by deposition within the last four years, is attached as Appendix 1.

### B. Remuneration

8.      SLCG is being compensated for its time and expenses. My hourly rate is $475 per hour. Other SLCG personnel working on this matter have billing rates of $100 to $350 per hour.

## II.    Materials Reviewed

9.      In preparing this report, I have considered the following documents:

a.  Automation of Reports and Consolidated Orders System (ARCOS) electronic data, received from the Drug Enforcement Administration (hereafter, "ARCOS Data");

b.  "ARCOS Retail Drug Summary Reports," Drug Enforcement Administration, 2000-2017, (available at www.deadiversion.usdoj.gov/arcos/retail_drug_summary/index.html);

c.  "National Drug Code Dictionary," Drug Enforcement Administration, November 2018 (current version available at www.deadiversion.usdoj.gov/arcos/ndc/ndcfile.txt);

Confidential - Subject to Protective Order

d. "NDC Dictionary Instructions," Drug Enforcement Administration, October 2010 (current version available at www.deadiversion.usdoj.gov/arcos/ndc/readme.txt);

e. "NDC/NHRIC Labeler Codes," U.S. Food & Drug Administration, January 2018 (current version available at www.fda.gov/ForIndustry/DataStandards/StructuredProductLabeling/ucm191017.htm);

f. "Opioid Oral Morphine Milligram Equivalent (MME) Conversion Factors," Centers for Disease Control and Prevention, August 2017 (current version available at www.cdc.gov/drugoverdose/resources/data.html);

g. "Full Replacement Monthly NPI File," Centers for Medicare and Medicaid Services, November 2018 (current version available at download.cms.gov/nppes/NPI_Files.html);

h. ARCOS Registrant Handbook, Drug Enforcement Administration, August 1997 (current version available at www.deadiversion.usdoj.gov/arcos/handbook/full.pdf);

i. *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F.3d 206 (D.C. Cir. 2017);

j. U.S. Dep't of Justice, DEA, *Chemical Handler's Manual: A Guide to Chemical Control Regulations* (2004), (WAGMDL00395965);

k. U.S. Dep't of Justice, DEA, Diversion Investigators Manual (1990)(CAH_MDL_PRIORPROD_DEA07_01176247);

Confidential - Subject to Protective Order

l.  U.S. Dep't of Justice, DEA, Diversion Investigators Manual (1996) (CAH_MDL2804_02203353);

m. Other documents cited in the text and footnotes below.

## III.    Assignment

10.    I have been asked by Plaintiffs' Counsel to document how I processed, validated and augmented opioid transaction data produced by the Drug Enforcement Administration ("DEA") and from the Defendants.

11.    I have been asked to summarize shipments in the ARCOS Data, especially those shipments into Cuyahoga County and Summit County.

12.    I have also been asked to report the results of applying certain algorithms to the ARCOS Data.

## IV.    Summary of Opinions

13.    Based upon my comparison of the ARCOS Data produced by the DEA and the public ARCOS Retail Drug Summary Reports, I conclude that, after correcting a relatively small number of records, the ARCOS Data produced by the DEA is reliable.

14.    I conclude that the ARCOS Data is reliable because it closely matches the DEA's Retail Drug Summary Reports for January 2006 through December 2014. Retail Drug Summary Reports summarize the weight of drugs in reported transactions with consumers in each of the 50 states and the District of Columbia. Where there were discrepancies between the ARCOS Data produced by the DEA and the Retail Drug Summary Reports, I was able

- 4 -

Confidential - Subject to Protective Order

to identify and correct the error in either the ARCOS Data or the Retail Drug Summary Reports.

15.    The ARCOS Data produced by the DEA also closely matches transaction data produced in discovery by Cardinal Health, McKesson Corp, Walgreens, CVS, Anda, H.D. Smith, Walmart, HBC, Discount Drug Mart, and Prescription Supply from their business records. I expect the data produced in discovery by the Defendants to be accurate. As with the Retail Drug Summary Reports, I have been able to identify and correct relatively minor discrepancies between the ARCOS Data produced by the DEA for transactions in Cuyahoga County and Summit Counties in Ohio from January 2006 through December 2014 and the Defendants' transaction data.

16.    The data on opioid shipments from January 2006 through December 2014 produced in discovery by AmerisourceBergen does differ from what AmerisourceBergen reported to the DEA as reflected in the ARCOS Data.

17.    I conclude from my review of the ARCOS Data, the Retail Drug Summary Reports, and transaction data produced in discovery by the Defendants that the ARCOS Data is reliable. Based on this analysis, I further conclude that the transaction records produced in discovery by the Defendants other than AmerisourceBergen are a reliable source of transactions data before 2006 and after 2014 for the varied time periods covered by the Defendants' productions.

18.    In the next section, I describe the ARCOS Data produced by the DEA and report national summary statistics for the ARCOS Data, after correcting minimal errors explained fully in Appendix 2. In Section VI, I

Confidential - Subject to Protective Order

compare the processed ARCOS Data to Retail Drug Summary Reports published by the DEA to verify that the shipments of opioids to dispensing outlets in the ARCOS Data is consistent with the amount of each opioid the DEA calculates was shipped into each 3-digit zip code each quarter. I also compare the ARCOS Data to the opioid transaction data produced in discovery by the Defendants.

19.    In Section VII, I explain the information I used to supplement the ARCOS Data.

20.    In Section VIII, I report summary statistics for subsets of the processed ARCOS Data covering Cuyahoga County and Summit County in Ohio. These summary statics show that that between 2006 and 2014, Dispensers in Cuyahoga County received ██████ MME of opioids. Given the county's 1.28 million average population, Dispensers received enough opioids for every resident in the County to consume ██████████ ████████████ These summary statistics also show that between 2006 and 2014, Dispensers in Summit County received ████████ MME of opioids. Given the County's average population of 542,000, Dispensers received enough opioids for every resident in the county to consume ██████ ████████████████████

21.    In Section IX, I describe a non-exhaustive set of algorithms that can be systematically applied to the ARCOS Data and present a check on the various estimates presented. In Section X, I provide certain estimates regarding the total aggregate shipments of opioids into Ohio from 1997 to 2018. In Section XI, I describe certain charts and tables that are attached to this report.  In Section XII I give my conclusions.

22.    I continue to review documents and gather information and reserve the right to update my analysis and opinions based upon that further review of documents and based on any new information - including possibly reports of other experts - I may receive.

## V.    ARCOS Data

23.    ARCOS is the system through which manufacturers and distributors report transactions of controlled substances to the DEA.[1] ARCOS Data covers all fifty states, the District of Columbia, Puerto Rico, Guam, U.S. Virgin Islands, American Samoa, and Northern Mariana Islands, Armed Forces-Americas, Armed Forces-EMEA, Armed Forces-Pacific, and Palau.

### A. Receipt of ARCOS Data from the DEA

24.    The DEA produced a subset of ARCOS Data reflecting transactions in drug products containing one or more of fourteen drugs: buprenorphine, codeine, dihydrocodeine, fentanyl, hydrocodone, hydromorphone, levorphanol, meperidine, methadone, morphine, powdered opium, oxycodone, oxymorphone, and tapentadol from January 1, 2006 through December 31, 2014.

25.    On or about April 20, 2018 the DEA produced ARCOS Data produced reflecting transactions in oxycodone, hydrocodone, hydromorphone, and fentanyl for six states: Alabama, Florida, Illinois, Michigan, Ohio and West Virginia. On or about May 20, 2018 the DEA produced transaction data for these four drugs for the remaining states. The

---

[1] www.deadiversion.usdoj.gov/arcos/index.html, accessed on 29 November 2018.

Confidential - Subject to Protective Order

## IX.     Transaction Analysis

130.   I implemented various approaches to identify transactions meeting specified criteria using the non-public ARCOS Data from 2006 to 2014, supplemented with Defendant transaction data where the ARCOS Data is obviously missing transactions that are included in the transactions produced by Defendants in discovery and to the extent I have Defendant transaction data for the periods before 2006 and after 2014. I calculated the results separately for each of twelve controlled substance drug codes.[54]

### A. Maximum Monthly, Trailing Six-month Threshold

131.   Under the first approach, I identify transactions that cause the number of dosage units shipped by a Distributor to a Pharmacy in a calendar month to exceed the highest number of dosage units shipped by the Distributor to the Pharmacy in any one of the six preceding calendar months. For example, if the number of dosage units containing hydrocodone shipped from a Distributor to a Pharmacy in February, March, April, May, June, and July were 5,000; 10,000; 7,000; 8,000; 9,000; and 9,500 respectively, a requested transaction in August would be flagged if it would cause the number of dosage units containing hydrocodone the Distributor shipped to the Pharmacy to exceed 10,000. Any reported transactions containing hydrocodone on that date and all reported transactions containing hydrocodone from that Distributor to that Pharmacy thereafter are flagged.

132.   In this approach and the others implemented below I have been asked by Counsel to assume that the Distributor did not effectively investigate

---

[54] I do not analyze transactions in two treatment drugs: buprenorphine and methadone.

the flagged transactions and so every subsequent transaction of that drug code is also flagged because the Distributor had an unfulfilled obligation to detect and investigate the first flagged transaction.

133.   Figure 11 illustrates total opioid transactions from Distributors to retail and chain pharmacies into Cuyahoga County from 1996 to 2018. The Trailing Six-Month Maximum Threshold methodology flags ██████ █ ████████████████████ ████ ████████ █████ █████████ ████ ████████████████████ Additional charts and tables reflecting the result of applying this methodology and the methodologies below to each Distributor are in Appendix 10.

Figure 11 Trailing Six-Month Maximum Threshold Flagged Transactions, Cuyahoga County, OH 1996-2018



134.   Figure 12 illustrates total transactions from Distributors to retail and chain pharmacies into Summit County from 1996 to 2018. The Trailing Six-Month Maximum Threshold methodology flags ████████ of transactions

Confidential - Subject to Protective Order

accounting for ███████ of dosage units, ██████ of MME and ██████ of drug weight shipped into Summit County.

Figure 12 Trailing Six-Month Maximum Threshold Flagged Transactions, Summit County, OH, 1996-2018



135.    Table 24 and Table 25 summarize the transactions in transactions flagged based on the Trailing Six-Month Maximum Threshold Approach in Cuyahoga and Summit Counties.

Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



## B. Twice Trailing Twelve-Month Average Pharmacy Dosage Units

136.  I identify transactions that cause the number of dosage units shipped by a Distributor to a Pharmacy in a calendar month to exceed twice the trailing twelve-month average dosage units to retail and chain pharmacies served by the Distributor. I have been asked by Counsel to assume that the Distributor did not effectively investigate the flagged transactions and so every subsequent transaction of that drug code is also flagged because the Distributor had an unfulfilled obligation to detect and investigate the first flagged transaction.

137.  Figure 13 illustrates total opioid shipments into Cuyahoga County from 1996 to 2018 from ARCOS Data for 2006 to 2014 and, to the extent Ihave Defendant transaction data for the periods before 2006 and after 2014. The Twice Trailing Twelve-Month Average Pharmacy Dosage Units Threshold methodology flags ███ of transactions accounting for ███ of dosage units, ███ of MME and ███ of drug weight shipped into Cuyahoga County.

Figure 13 Twice Trailing Twelve-Month Average Pharmacy Dosage Units, Flagged Transactions, Cuyahoga County, OH 1996-2018



138.  Figure 14 illustrates total shipments into Summit County from 1996 to 2018 from ARCOS Data for 2006 to 2014 and, to the extent I have Defendant transaction data for the periods before 2006 and after 2014. The Twice Trailing Twelve-Month Average Pharmacy Dosage Units Threshold

Confidential - Subject to Protective Order

methodology flags ▮▮▮▮ of transactions accounting for ▮▮▮▮ of dosage units, ▮▮▮▮ of MME and ▮▮▮▮ of drug weight shipped to Summit County.

Figure 14 Twice Trailing Twelve-Month Average Pharmacy Dosage Units, Flagged Transactions, Summit County, OH 1996-2018



139. Table 26 and Table 27 summarize the transactions in transactions flagged based on the Twice Trailing Twelve-Month Average Pharmacy Dosage Units Threshold in Cuyahoga and Summit Counties.

Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



### C. Three Times Trailing Twelve-Month Average Pharmacy Dosage Units

140.  I identify transactions that cause the number of dosage units shipped by a Distributor to a Pharmacy in a calendar month to exceed three times the trailing twelve-month average dosage units to retail and chain pharmacies served by the Distributor. I have been asked by Counsel to assume that the Distributor did not effectively investigate the flagged transactions and so every subsequent transaction of that drug code is also flagged because the Distributor had an unfulfilled obligation to detect and investigate the first flagged transaction.

141.    Figure 15 illustrates total opioid shipments into Cuyahoga County from 1996 to 2018 from ARCOS Data for 2006 to 2014 and, to the extent I have Defendant transaction data for the periods before 2006 and after 2014. The Three Times Trailing Twelve-Month Average Pharmacy Dosage Units Threshold methodology flags ▓▓▓▓ of transactions accounting for ▓▓▓▓ of dosage units, ▓▓▓▓ of MME and ▓▓▓▓ of drug weight shipped into Cuyahoga County.

Figure 15 Three Times Trailing Twelve-Month Average Pharmacy Dosage Units Flagged Transactions, Cuyahoga County, OH 1996-2018



142.    Figure 16 illustrates total shipments into Summit County from 1996 to 2018 from ARCOS Data for 2006 to 2014 and, to the extent I have Defendant transaction data for the periods before 2006 and after 2014. The Three Times Trailing Twelve-Month Average Pharmacy Dosage Units Threshold methodology flags ▓▓▓▓ of transactions accounting for ▓▓▓▓ of

Confidential - Subject to Protective Order

dosage units, ███████ of MME and ███████ of drug weight shipped into Summit County.

Figure 16 Three Times Trailing Twelve-Month Average Pharmacy Dosage Units Flagged Transactions, Summit County, OH 1996-2018



143.   Table 28 and Table 29 summarize the transactions in transactions flagged based on the Three Times Trailing Twelve-Month Average Pharmacy Dosage Units Threshold in Cuyahoga and Summit Counties.

Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



### D. Maximum 8,000 Dosage Units Monthly

144.  I identify transactions that cause the number of dosage units shipped by a Distributor to a Pharmacy in a calendar month to exceed 8,000 dosage units. I have been asked by Counsel to assume that the Distributor did not effectively investigate the flagged transactions and so every subsequent transaction of that drug code is also flagged because the Distributor had an unfulfilled obligation to detect and investigate the first flagged transaction.

145. Figure 17 illustrates total opioid shipments into Cuyahoga County from 1996 to 2018 from ARCOS Data for 2006 to 2014 and, to the extent I have Defendant transaction data for the periods before 2006 and after

Confidential - Subject to Protective Order

2014. The Maximum 8,000 Dosage Units Monthly Threshold methodology flags ████ of transactions accounting for ████ of dosage units, ████ of MME and ██████ of drug weight shipped into Cuyahoga County.

Figure 17 Maximum 8,000 Dosage Units Monthly Flagged Transactions, Cuyahoga County, OH 1996-2018



146.   Figure 18 illustrates total shipments into Summit County from 1996 to 2018 from ARCOS Data for 2006 to 2014 and, to the extent I have Defendant transaction data for the periods before 2006 and after 2014. The Maximum 8,000 Dosage Units Monthly Threshold methodology flags ████ of transactions accounting for ████ of dosage units, ████ of MME and ██████ of drug weight shipped into Summit County.

Confidential - Subject to Protective Order



147.    Table 30 and Table 31 summarize the transactions in transactions flagged based on the Maximum 8,000 Dosage Units Monthly Threshold Approach in Cuyahoga and Summit Counties.

Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



### E. Maximum Daily Dosage Units

148. I identify transactions that cause the number of dosage units shipped by a Distributor to a Pharmacy in a day to exceed a number of dosage dosage units that varies by drug type and within some drug types by formulation.[55] I have been asked by Counsel to assume that the Distributor did not effectively investigate the flagged transactions and so every subsequent transaction of that drug code is also flagged because the Distributor had an unfulfilled obligation to detect and investigate the first flagged transaction.

---

[55] Maximum Daily Dosage Units used as specified in
CAH_MDLPRIORPRO_DEA07_01384160

Confidential - Subject to Protective Order

149.    Figure 19 illustrates total opioid shipments into Cuyahoga County from 1996 to 2018 from ARCOS Data for 2006 to 2014 and, to the extent I have Defendant transaction data for the periods before 2006 and after 2014. The Maximum Daily Dosage Units Threshold methodology flags ████ of transactions accounting for ████ of dosage units, ████ of MME and ████ of drug weight shipped into Cuyahoga County.

Figure 19 Maximum Daily Dosage Units, Any Order Subsequent to an Flagged Order, Cuyahoga County



150.    Figure 20 illustrates total opioid transactions into Summit County. The Maximum Daily Dosage Units Threshold methodology flags ████ of transactions accounting for ████ of dosage units, ████ of MME and ████ of drug weight shipped into Summit County.

Confidential - Subject to Protective Order



151. Table 32 and Table 33 summarize the transactions in transactions flagged based on the Maximum Daily Dosage Units Threshold Approach in Cuyahoga and Summit Counties.

Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



**F. Additional Identification**

152.   I have been asked by Counsel to assume that Chain Distributors may have had knowledge of - or information available to inform them of – opioid shipments from all Distributors to the Chain Distributor's affiliated pharmacies. I have re-run the five identification routines described above assuming that the Chain Distributors could have flagged transactions based on this expanded information set and report the results for the Chain Distributors in Table 34 through Table 43 below. Additional charts and tables reflecting the result of applying methodologies below to each Chain Distributor are in Appendix 11.

Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



Confidential - Subject to Protective Order



Confidential - Subject to Protective Order

increased from 1997 to 2010 and thereafter declined so that per capita opioid MME in 2017 was ▮▮▮▮▮ per capita opioid MME in 1997 in Ohio.

155.    A possible upper bound on the medically necessary opioid MME per capita baseline is the per capita MME interpolated from 1997 to 2018. This baseline assumes that all prescriptions of opioids in 1997 and in 2018 were medically necessary and that the drivers of legitimate opioid use (eg. aging of the population) evolve gradually rather than discountinuosly over time. Plaintiffs allege that opioid consumption in 2018 remained excessive and was still influenced by the Defendants' alleged fraudulent conduct.

156.    A possible lower bound on the medically necessary opioid MME per capita baseline is the 1997 per capita MME. This baseline assumes that all prescriptions of opioids in 1997 were necessary and opioid use per capita beyond 1997 levels were unnecessary.

157.    I plot these two baselines in Figure 24 along with the per capita MME shipped into Ohio from Figure 21.

Confidential - Subject to Protective Order

Figure 24 Per Capita Opioid Actual and Baseline MME to Ohio, 1997-2018



158.   The difference between the actual shipments of opioids into Ohio

and the baseline is an estimate of the excessive opioids shipped into Ohio.



Confidential - Subject to Protective Order



159.   Opioid dosage units dispensed in Ohio have declined ███ from 2012 to 2018. The percentage decline in dosage units dispensed in Ohio has increased each year suggesting that even the 2018 levels exceed the medically necessary level. My estimates of execssive opioid shipments into Ohio can be varied to reflect how much, if any, of the increase from 1997 to 2018 in per

---

[57] Estimated from the 2017 level reported in the RDSRs and 2018 decline from 2017 reported in Ohio Automated $R_x$ Reports System, 2018 Annual Report, State of Ohio Board of Pharmacy, Section 1, Chart 1 available at www.ohiopmp.gov/documents/Annual%20Report%20(2018).pdf

Confidential - Subject to Protective Order

 of the opioids dispensed from 1998 to 2017 and ▮ of the opioids dispensed from 2006 to 2014 were excessive.

- If ▮ of the increase in opioids dispensed in Ohio in 2018 compared to the 1997 per capita level were medically necessary, ▮ of the opioids dispensed from 1998 to 2017 and ▮ of the opioids dispensed from 2006 to 2014 were excessive.

- If none of the increase in opioids dispensed in Ohio in 2018 compared to the 1997 per capita level were medically necessary, ▮ of the opioids dispensed from 1998 to 2017 and ▮ of the opioids dispensed from 2006 to 2014 were excessive.

160.   My estimates of the percentage excessive shipments into Ohio in Table 45 - which average ▮ - are a useful frame of reference for evaluating the transactions flagged by the methods in the previous subsections. For example, the Maximum Monthly Trailing 6-Month Threshold flagged ▮ of transactions, ▮ of dosage units and ▮ of MME shipped to pharmacies in Cuyahoga County and ▮ of transactions, ▮ of dosage units and ▮ of MME shipped to pharmacies in Summit County. The purpose of identifying transactions – to determine which transactions warrant some further due diligence – is likely to only be met by flagging more transactions than those which are used to fill medically unnecessary prescriptions. Thus, the decline in opioid use in Ohio and the implication that more than ▮ of opioids shipped into Ohio were excessive, supports my identification of transactions.

Confidential - Subject to Protective Order

183.   The ARCOS Data can be used to identify transactions into a state, county, zipcode or individual pharmacy meeting certain criteria as I have illustrated above.

Craig J. McCann, Ph.D., CFA