# Exhibit 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION <br><br> This document relates to: <br> *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.* <br> Case No. 18-op-45090 | MDL No. 2804 <br><br> Case No. 17-md-2804 <br><br> Judge Dan Aaron Polster |

**SUMMIT AND CITY OF AKRON PLAINTIFF'S INITIAL RESPONSES
AND OBJECTIONS TO MANUFACTURER
<u>DEFENDANTS' SECOND SET OF INTERROGATORIES</u>**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Case Management Order in *In re National Prescription Opiate Litigation*, No. 1:17-cv-2804 (Dkt. No. 232), The County of Summit, Ohio and the City of Akron, Ohio ("Plaintiff") hereby responds to Manufacturer Defendants'[1] Second Set of Interrogatories (the "Interrogatories" and, each individually, a "Interrogatory"), as follows:

<u>**OBJECTIONS**</u>

The following objections apply to each Interrogatory. To the extent that certain specific objections are cited in response to an individual Interrogatory, those specific objections are provided because they are applicable to that specific Interrogatory and are not a waiver of the objections applicable to information falling within the scope of such Interrogatory.

---

[1] The Manufacturer Defendants are Endo Pharmaceuticals Inc.; Endo Health Solutions Inc.; Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Insys Therapeutics, Inc.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1.      Plaintiff objects to each Interrogatory to the extent they are overly broad, vague, unduly burdensome, seeks information that is not relevant to any party's claim or defense, or seeks to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the ESI Protocol entered in this matter or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      Plaintiff objects to each Interrogatory to the extent they seek information restricted from dissemination pursuant to court order, statute, or regulation. Further, Plaintiff's responses to the Interrogatories are not intended to waive, and does not constitute any waiver of, any objection to the admissibility, authenticity, competency or relevance of the information identified.

3.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained provided herein. All such objections and the grounds therefore are hereby reserved.

4.      The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

5.      Plaintiff objects to each Request to the extent Plaintiff has not yet completed its investigation of the facts relating to this action and has not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

6.      Plaintiff objects to each Interrogatory to the extent they purport to require Plaintiff to provide information that is in the public domain or otherwise available to Manufacturers as easily from other sources as from Plaintiff.

7.      Plaintiff objects to each Interrogatory to the extent they purport to state facts, assumptions, or characterizations that are disputed.

8.      Plaintiff objects to each Interrogatory to the extent they seek information more appropriately obtained through other methods of discovery.

9.      Plaintiff objects to each Interrogatory to the extent that they seek information that is proprietary or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

10.     Plaintiff objects to each Interrogatory to the extent they seek confidential investigative, personal, or health information in Plaintiff's possession, custody, or control (collectively, "Confidential Information").

11.     Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its objections and without waiver of any objection.

12.     Any response stating that Plaintiff will produce information shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control."

13.     Plaintiff objects to each Interrogatory to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions.  In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

14.     Plaintiff objects to each Interrogatory to the extent they seek information that is not within Plaintiff's possession, custody, or control, seek documents that do not already exist, or

3

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff.

15.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

16.     Plaintiff intends to complete its production by the time agreed upon by the parties for the completion of discovery, or by the date ordered by the Court. Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Interrogatories. All final decisions regarding whether any information will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of written discovery.

## NON-WAIVER

1.     Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this Action or any other action.

2.     If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of objections stated herein, such information is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.     Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.     Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses.  Plaintiff reserves its right to amend and/or to

4

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatory No. 11:

Identify all individuals with knowledge concerning the subject matter of the Complaint in the above-captioned matter, including individuals who are likely to have discoverable information. For each, describe the subjects on which they have knowledge or information.

### Response to Interrogatory No. 11:

Plaintiff objects to this Interrogatory as overly broad and unduly burdensome in that seeks "all individuals with knowledge concerning the subject matter of the Complaint in the above-captioned matter, including individuals who are likely to have discoverable information." Read literally, this Interrogatory could include every employee and citizen of Summit County or the City of Akron, Ohio, every employee of the Manufacturer Defendants, and numerous third-parties around the country.

Plaintiff further objects in that this interrogatory asks for witness lists in advance of the completion of fact discovery that is underway, expert discovery that is upcoming and deadlines set pursuant to Case Management Order No. 1, paragraphs 3(e)(ii), 3(f), 3(h), and 3(i). Plaintiff objects based on undue burden to the extent this interrogatory seeks the disclosure and discovery of fact and expert witnesses prior to the express provisions of Case Management Order No. 1. Plaintiff objects in that this interrogatory seeks to require Plaintiff to disclose witnesses contrary to the discovery procedures set forth in Case Management Order No. 1, paragraph 9(b). Plaintiff objects to the extent this interrogatory asks for persons already identified in Plaintiff's prior discovery responses.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Subject to and without waiving all objections, Plaintiff responds as follows: the table provided below identifies document custodians, employees, or representatives who are likely to have discoverable information.

| Name | Title | Jurisdiction |
|------|-------|--------------|
| Honorable Joy Malek Oldfield | Judge, Court of Common Pleas; Member of Summit County Opiate Task Force and Turning Point Court Judge | Summit |
| Honorable Thomas Teodosio | Judge, Ninth District Court of Appeals; Member of Summit County Opiate Task Force, former Common Pleas Judge responsible for Turning Point Court | Summit |
| Dr. Lisa Kohler | Chief Medical Examiner, Summit County | Summit |
| Gary Guenther | Chief Investigator, Summit County Medical Examiner's Office | Summit |
| John Galonski | Civil Division, Summit County Prosecutor's Office | Summit |
| Brad Gessner | Criminal Division, Summit County's Prosecutor's Office | Summit |
| Laurie Fischer | Probation Supervisor, Court of Common Pleas, Second Division | Summit |
| Donna Skoda | Health Commissioner | Summit |
| Honorable Christine Croce | Judge, Court of Common Pleas, Turning Point Court Judge | Summit |
| Brian Nelson | Director of Finance and Budget | Summit |
| Steve Perch | Chief Toxicologist, Medical Examiner's Office | Summit |
| Sherri Bevan Walsh | Prosecutor | Summit |
| Steve Barry | Sheriff | Summit |
| Matt Paolino | Captain , Sheriff's Office | Summit |
| Ilene Shapiro | County Executive | Summit |
| Kim Patton | ADM | Summit |

6

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Dr. Gary L. Thrasher | Medical Director, ADM Detox Unit – Crisis Center, Oriana House, Inc. | Summit |
| --- | --- | --- |
| Steve Fricker | Deputy Director of Finance | Akron |
| Judge Jon Oldham | Presiding Judge, Recovery / Drug Court | Akron |
| Chief Kenneth Ball | Police Chief, formerly Deputy Chief, Investigative Subdivision | Akron |
| Officer Michael Schmidt | Officer, Narcotics Unit, opioid heroin overdose death investigator | Akron |
| Cpt. Michael Shearer | Captain, Narcotics, SNUDS, Vice Subdivision | Akron |
| Chief Clarence Tucker | Chief of Fire Division | Akron |
| Deputy Chief Charles Twigg | Deputy Chief of Fire Division | Akron |
| District Chief Joseph Natko | District Chief / EMS Bureau Manager | Akron |
| Gert Wilms | Chief Prosecutor | Akron |
| Tony Ingram | Chief Probation Officer | Akron |
| Donald L. Plusquillic | Mayor (1987 – 2015) | Akron |
| Garry Moneypenny | Mayor (5/31/2015 – 6/10/2015) | Akron |
| Jeff Fusco | Mayor (6/11/2015 – 1/1/2016) | Akron |
| Dan Horrigan | Mayor (1/1/2016 – present) | Akron |
| Craig Morgan | Deputy Prosecutor | Akron |

The table provided below identifies document custodians:

| Name | Title | Jurisdiction |
| --- | --- | --- |
| Sandra Kurt | County of Summit Clerk of Courts | Summit |
| Dr. Lisa Kohler | Chief Medical Examiner, Summit County | Summit |
| John Galonski | Civil Division, Summit County Prosecutor's Office | Summit |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Brad Gessner | Criminal Division, Summit County's Prosecutor's Office | Summit |
|---|---|---|
| Laurie Fischer | Probation Supervisor, Court of Common Pleas, Second Division | Summit |
| Rich Marountas | Chief Epidemiologist | Summit |
| Leanne Beavers | Director of Clinical Health | Summit |
| Donna Skoda | Health Commissioner | Summit |
| Jerry Craig | Executive Director, ADM | Summit |
| Doug Smith | Doctor, ADM Chief Clinical Officer, ADM | Summit |
| Mary Alice Sonnhalter | Retired, ADM | Summit |
| Aimee Wade | ADM Assoc. Dir. Of Clinical Services, ADM | Summit |
| Brian Nelson | Director of Finance and Budget | Summit |
| Lisa  DiSabato-Moore | Special Projects Administrator, Juvenile Court | Summit |
| Curtis Howard | Chief Probation Officer, Juvenile Court | Summit |
| Getta Kutuchief | Education and Community Outreach Coordinator, Juvenile Court | Summit |
| Becky Ryba | FRRC Coordinator (Family Reunification through Recovery Court), Juvenile Court | Summit |
| Kathryn VanHorn | Crossroads Supervisor, Juvenile Court | Summit |
| Denice DiNapoli | Senior Administrator, Medical Examiner's Office | Summit/Akron |
| Sherri Bevan Walsh | Prosecutor | Summit |
| Melanie Hart | Administrative Assistant to Sherri Bevan Walsh, Prosecutor | Summit |
| Kelly Pongracz | Records Manager, Sheriff's Office | Summit |
| Bill Holland | Public Information Officer, Sheriff's Office | Summit |
| Pat Hunt | Staff, Sheriff's Office | Summit |
| Kim Patton | ADM | Summit |
| Cpt. Brian Harding | Captain, Technical Services Bureau | Akron |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| Steve Fricker | Deputy Director of Finance | Akron |
| Judge Jon Oldham | Presiding Judge, Recovery / Drug Court | Akron |
| Montrella Jackson | Administrator | |
| Charles Brown | Deputy Mayor for Public Safety, formerly Assistant to the Mayor | Akron |
| Craig Gilbride | Formerly Deputy Mayor for Public Safety, Chief of Police (retired) | Akron |
| Robert Ross (retired) | Formerly Deputy Mayor for Public Safety, Fire Chief (retired) | Akron |
| Chief Kenneth Ball | Police Chief, formerly Deputy Chief, Investigative Subdivision | Akron |
| Patrick Leonard | Detective, Police Department | Akron |
| Deputy Chief Michael Caprez | Deputy Chief, Uniform Subdivision, formerly Deputy Chief, Communications Subdivision | Akron |
| Deputy Chief Jesse Leeser | Deputy Chief, Investigative Subdivision, formerly Captain, Technical Services Bureau | Akron |
| Sgt. Eric Wood | Sergeant, Chief's Office | Akron |
| Deputy Chief Paul Calvaruso (retired) | Formerly Deputy Chief, Patrol Subdivision (retired) | Akron |
| Cpt. Sylvia Trundle (retired) | Formerly Captain, Investigative Subdivision (retired) | Akron |
| Cpt. Terry Pasko | Captain, Patrol Subdivision, formerly lieutenant, street narcotics unit (SNUDS) | Akron |
| Officer Michael Schmidt | Officer, Narcotics Unit, opioid heroin overdose death investigator | Akron |
| Officer Tim Harvey | Officer, Narcotics Unit, opioid heroin overdose death investigator | Akron |
| Officer Patrick Didyk | Officer, Street Narcotics (SNUDS) Unit, opioid heroin overdose death investigator | Akron |
| Officer Timothy Wypasek | Officer, Street Narcotics (SNUDS) Unit, opioid heroin overdose death investigator | Akron |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Erika Wiles | Crime Analyst II, Planning and Research Office | Akron |
|---|---|---|
| Cpt. Michael Shearer | Captain, Narcotics, SNUDS, Vice Subdivision | Akron |
| Lt. David Garro | Lieutenant, Narcotics Unit | Akron |
| Cpt. Chip Westfall (retired) | Formerly Lieutenant, Narcotics Unit (retired) | Akron |
| Lt. Rick Edwards | Police Information Officer | Akron |
| Cpt. Melissa Schnee | Captain, Services Subdivision | Akron |
| Cpt. Daniel Zampelli (retired) | Formerly Captain, Services Subdivision (retired) | Akron |
| Chief Clarence Tucker | Chief of Fire Division | Akron |
| Chief Ed Hildebrand (retired) | Formerly Chief of Fire Division (retired) | Akron |
| Deputy Chief Charles Twigg | Deputy Chief of Fire Division | Akron |
| District Chief Joseph Natko | District Chief / EMS Bureau Manager | Akron |
| District Chief Rich Vober | Deputy Chief | Akron |
| Cpt. Leon Henderson | Captain, Safety Communications | Akron |
| Cpt. Chris Karakis | Captain, EMS Bureau Manager | Akron |
| District Chief Jim Willoughby | District Chief, formerly Captain, EMS Bureau Manager | Akron |
| Deputy Chief Dale Evans (retired) | Formerly Deputy Chief, EMS Bureau Manager (retired) | Akron |
| Lt. Joseph Shumaker | Lieutenant, Fire / EMS | Akron |
| Albert Minnich (retired) | Formerly fire medic (retired) | Akron |
| Les Gaiser (retired) | Formerly Captain, Fire / EMS (retired) | Akron |
| Guy Randall | Fire / EMS medic, training | Akron |
| Lt. Sierjie Lash | Public Information Officer | Akron |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Terry Albanese (retired) | Assistant to the Mayor for Education, Health, and Families | Akron |
| Gert Wilms | Chief Prosecutor | Akron |
| Tony Ingram | Chief Probation Officer | Akron |
| Jeff Sturmi | Deputy Chief Probation Officer | Akron |
| Craig Morgan | Deputy Prosecutor | Akron |
| Gary L. Thrasher | Doctor, Oriana House, Inc. | Akron |

| Name | Title | General description |
|---|---|---|
| Dr. William Reed | Doctor | Visited by drug reps:  Nucynta, Purdue, Actiq, Opana, Kadian |
| Dr. William Lonsdorf | Doctor | Visited by Purdue, Opana, Nucynta, |
| Dr. Kendrick Bashor | Doctor | Visited by drug reps:  Purdue |
| Dr. Michael Louwers | Doctor | Visited by drug reps:  Purdue, Xtampza, Nucynta, Actiq/Fentora |
| Dr. Syed Ali | Doctor | Visited by drug reps:  Purdue, Xtampza, Nucynta-Janssen/Depomed, Teva, Subsys, Endo, Cephalon, Xalgo, Kadian, Insys |
| Dr. Clayton Seiple | Doctor | Visited by drug reps:  Purdue.  Was a speaker for Endo, Depomed (Nucynta) |
| Bernie Rochford | Executive Vice President of Administrative Services and Business Relations, Oriana House | Treatment center for those suffering from OUD, knowledgeable on trends, prevalence and impact of opioids |
| Galen Sievert | Clinical Supervisor, Mature Services | Treatment center for those suffering from OUD, knowledgeable on trends, prevalence and impact of opioids |
| Laura Kidd | Behavioral Health Clinical Coordinator, AxessPointe Community Health Center at Arlington | Treatment center for those suffering from OUD, knowledgeable on trends, prevalence and impact of opioids |
| James Orlando | President of Summit Psychological Associates | Treatment center for those suffering from OUD, knowledgeable on trends, prevalence and impact of opioids |
| Brittney Becker | Doctor, Community Health Center | Treatment center for those suffering from OUD, knowledgeable on trends, prevalence and impact of opioids |
| Michael M. Huges | President, Summa Health System, Barberton Campus | Illnesses related to opioid use |

11

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Name | Title | General description |
|------|-------|---------------------|
| Joseph P. Myers | Doctor, Vice President of Medical Affairs, Summa Barberton and Summa Wadsworth-Rittman Hospitals | Illnesses related to opioid use |

Plaintiff refers defendants to its prior discovery answers.  Plaintiff reserves its right to amend, supplement or modify the prior persons identified in discovery to date.  Plaintiff will supplement this response once the information becomes available to Plaintiff, pursuant to the schedule laid out by the Court.  In addition, discovery is ongoing and certain issues will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 12:**

Identify all medical or scientific research, data, information, literature or other documents or communications that Plaintiff believes or maintains supports, underlies, and/or forms the basis for Plaintiff's claims in this litigation.

**Response to Interrogatory No. 12:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all" medical or scientific research, data, information, literature or other documents or communications that Plaintiff believes or maintains supports, underlies, and/or forms the basis for Plaintiff's claims.

Plaintiff objects to this Interrogatory as vague, ambiguous and calling for speculation in seeking information about the beliefs of individual third parties. Plaintiff notes that there is a vast amount of peer-reviewed and other literature, testimony before public entities, and on-line information in the public domain, equally available to Defendants, which may provide the answer,

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

at least in large part, to Defendants' Interrogatory.  Plaintiff further responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete.  *See* FRCP 33(a)(2).

Subject to and without waiving all objections, Plaintiff responds as follows: Plaintiff refers Defendants to Plaintiff's Second Amended Corrected Complaint, which specifically identified medical or scientific research, data, information, literature or other documents or communications.

Plaintiff reserves the right to supplement, modify or amend this response upon further investigation and discovery.  In addition, discovery is ongoing, and this topic may be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 13:**

Identify and describe all disciplinary matters, investigations, complaints, arrests, indictments, prosecutions, or attempts by each Plaintiff, or anyone acting on Plaintiff's behalf, to identify drug abusers, health care providers, or others involved in unlawful activity or prescribing practices related to opioids.

**Response to Interrogatory No. 13:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all" disciplinary matters, investigations, complaints, arrests, indictments, prosecutions, or attempts by Plaintiff, or anyone acting on Plaintiff's behalf, to identify "drug abusers," health care providers, or others involved in "unlawful activity" or prescribing practices related to opioids.  Plaintiff objects to the extent this Interrogatory seeks information outside its control.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Subject to and without waiving all objections, Plaintiff answers as follows: Plaintiff incorporates the allegations in its Amended Complaint. To the extent this Interrogatory requests identification of potential tortfeasors, Plaintiff refers Defendants to the Plaintiff's Second Amended Corrected Complaint. Plaintiff further refers Defendants to the reports with beginning Bates' Nos. AKRON_000004078 and SUMMIT_000041300, (Lists of Court Cases); and SUMMIT_000064914 (OIBRS Arrest and Drug Seizures).

Plaintiff reserves the right to supplement and amend this response upon further investigation and as fact discovery continues.

**Interrogatory No. 14:**

Identify all actions taken by Summit County and the City of Akron, Ohio before filing this litigation to reduce the number of prescription opioids prescribed in Summit County and the City of Akron, Ohio. Please include and specifically note in your identifications any specific efforts to prohibit or otherwise restrict the prescribing of prescription opioids for chronic non-cancer pain, including but not limited to any communications or petitions from Plaintiff or anyone acting on Plaintiff's behalf to insurance companies, pharmacy benefit managers, the Food and Drug Administration, any other federal agency, or the Governor or legislature of the State of Ohio.

**Response to Interrogatory No. 14:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all" actions taken by Summit County and the City of Akron, Ohio before filing this litigation to reduce the number of prescription opioids prescribed in Summit County and the City of Akron, Ohio.

Subject to and without waiving all objections, Plaintiff answers as follows: Plaintiff refers Defendants to Plaintiff's Second Amended Corrected Complaint.

14

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving all objections, Plaintiff answers as follows:  In 2014, the County of Summit Alcohol, Drug Addiction and Mental Health Board convened the Summit County Opiate Task Force, a group of individuals and organizations committed to reducing the tragic consequences of opiate addiction in response to the rising public health crisis affecting residents of Summit County.  There are over 100 Summit County citizens who are active Task Force members.  The Task Force holds quarterly meetings to update the public members and the community on the developments and initiatives to fight the opiate epidemic.  The Task Force is comprised of Subcommittees:  Advocacy, Criminal Justice, Family Support, Healthcare, Public Awareness and Youth and Young Adults.  Each subcommittee has a Chair or Co-chair.  The Task Force addresses the opioid epidemic on multiple fronts including Prevention, Education, Community Outreach, Treatment and Recovery Support.  Much of this information regarding this Task Force, its extensive programs and persons involved are available at https://www.admboard.org/opiate-task-force.aspx;  www.summitcountyopiatetaskforce.org  and www.summitcountyaddictionhelp.org.

The Police and Fire Departments in the County have been in the forefront in addressing the opioid public health crisis.  Departments have been increasingly challenged to maintain their duties with current personal and have increased law enforcement, fire, and emergency services to respond to drug overdoses.  In the City of Akron, the Police Department responded to 2,114 overdoses in 2016 and the first six months of 2017.

Summit County has experienced an increase in drug-related crimes, and has had to increase its spending on drug-related treatment and prevention.  The Summit County jail provides services related to opioid detoxification, including preventing suicides believed to be related to opioid withdrawal and now provides Narcan to inmates upon discharge to help prevent future overdoses.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Law enforcement, fire, and emergency services personnel spend time with School administrators to educate and address students about the opioid crisis.

The increasing number of cases takes both a physical and mental toll on investigators and first responders.  The Summit County Medical Examiner's Office has struggled to retain and recruit qualified death investigators.  The Medical Examiner's Office has had to hire four Locum Tenens doctors to assist in the case load.  In addition to burn-out, the Summit County Medical Examiner's Office has faced increased costs of overtime, laboratory, toxicology and other costs. The increased case load and decreased staffing cost the Summit County Medical Examiner's Office its National Association of Medical Examiners Accreditation due to lengthy turnaround times and heavy caseloads for pathologists.  Between 2012 and 2016, there was a 47% increase in autopsies, a 436% increase in toxicology lab costs to identify new drugs, mostly synthetic opioids that have swept up individuals already addicted to opioids, and a 100% increase in the costs to transport the bodies.  There has been a 209% increase in the number of overdose deaths.

The surge of fatal drug overdoses have outpaced the capacity of some local morgues. Coroners and medical examiners in Summit County have had to request the use of refrigerated trailers known as "mobile morgue units."  Summit County has had to make use of the mobile morgues at least five separate occasions.  These refrigerated trailers double the number of bodies that the County Medical Examiner's Office could otherwise hold at one time.

Resources are diverted from other important uses and agencies will likely have to increase operating levies to fund their services, shifting an additional burden to Summit County residents. These costs do not even contemplate the resources necessary to fully address or abate the epidemic.

Plaintiff has provided various treatment programs and centers.  They include an ADM (Alcohol Drug and Mental Health Services Board) Addiction Helpline, Quick Response Team,

16

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Police and EMS Naloxone reversals, Residential and Detox Access, Medication Assisted Treatments (MAT) and Interim Crisis Services. Detox beds have been added to the Detox unit and Summit County will host the largest detox center in Ohio. Data contained within amfAR's Opioid & Health Indicators show that in 2014, Summit County had a rate of drug dependence of 2.56% and a rate of non-medical use of pain relievers of 4.82%, and that 87.5% of people who need addiction treatment in the County do not receive it.

In October 2017, Summit County, with a population of over 540,000 citizens, declared a State of Emergency in the county due to the opioid epidemic. Summit County is listed as a High Intensity Drug Trafficking Area with the fourth highest drug overdose death rate and the second highest in fentanyl deaths in the state of Ohio for 2016. Summit County and the City of Akron are intertwined in many of their efforts to address the opioid epidemic. The Summit County Drug Unit is co-located with the Akron Police Department Narcotics Unit. It is a multi-jurisdictional task force that investigates major organized groups involved in the illegal distribution of drugs as well as any alleged violations by persons involved in the use or sale of illegal drugs. The Summit County Drug Unit also has the responsibility to identify and destroy illegal channels of drugs into Summit County, arrest violators and seize their illicit financial assets. The Drug Unit consists of the following agencies: Summit County Sheriff's Office, Summit County Prosecutor's Office, Akron Police Department, The University of Akron Police Department, Barberton Police Department, Cuyahoga Falls Police Department, Stow Police Department, Copley Police Department, Bureau of Criminal Identification & Investigation, FBI, DEA, ATF and the IRS.

In 2016, the Drug Unit created an Opiate Task Force to handle overdose investigations. The Summit County Drug Unit also teamed with the Akron Police Department Task Force to form

17

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

the Akron/Summit County HIDTA (High Intensity Drug Trafficking Area) Initiative, the largest such initiative in the state of Ohio.

In 2014, the Summit County Prosecutor's Office created an Opiate Unit for low and moderate risk opioid offenders that consists of four distinct phases that provide intensive supervision services upfront and linkage/coordination to community treatment providers. The Opiate Unit has grown to consist of four probation officers with specialized training due to the growing opiate epidemic. The Adult Probation Department was awarded the SMART Grant through the Ohio Department of Rehabilitation and Correction to combat the growing percentage of opiate addicted individuals that come through the program. During 2016, there were 429 cases placed in this specialty unit; of which 295 cases were closed and 95 of those cases consisting of successful completions. Two drug court judges do community outreach regarding opioids and other drugs.

The Drug Court also has a program called Turning Point which is a special court given the responsibility to handle cases involving drug-using/abusing, non-violent offenders, through immediate comprehensive supervision, drug testing, and treatment services, as well as immediate sanctions and incentives. The Faith in Recovery Program provides a spiritual mentor from a local church as an added option for participants. The Valor Court is provided for the specialized needs of those who have served our country, providing access to programs, treatment and interaction with mentors.

The Summit County ADM Board "exists for citizens of Summit County a healthy community in which a continuum of case supports mental wellness and freedom from addiction, with outcomes optimizing use of available resources" – including minimizing opiate related dependency, deaths and overdoses. The ADM Board was instrumental in establishing the Opiate

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Task Force in early 2014, which has grown to over 400 members consisting of physicians, pharmacists, faith leaders, judges, prosecutors, police chiefs, school superintendents and multiple agency leaders, public health officials, elected representatives, ADM Board staff and concerned citizens.  In 2016, 52,517 citizens of Summit County benefited from ADM Board funded services; 4,203 clients received substance abuse treatment.  In 2017, the ADM Board budgeted an additional $3.2 million to expand detoxification, Quick Response Teams and recovery coaching services.

The ADM Addiction Hotline is run by Akron Summit Community Action and provides a single phone number to enable those seeking addiction services to identify a qualified provider agency for quick access to an assessment and ongoing treatment.  In 2016, the ADM Crisis Center provided 2,199 detoxification admissions, up by 622 admissions from 2015.  The Gloves Up Campaign was launched in 2017 to help promote the ADM Addiction Helpline and other initiatives. The 2018 ADM Budget for non-Medicaid services increased 5% due to measures planned to address the Opioid Epidemic; other contracts and allocations increased 46% due to measures planned to address this epidemic.

The Summit County Opiate Task Force focuses on awareness, education, treatment and recovery.  The Task Force provides pharmacist training on Narcan, expanded use of Vivitrol, addiction education, referral services and public education through partnerships with local pharmacies.  The Task Force is encouraging school districts to become involved in prevention and awareness programs.  Summit County is adding ten beds to its detox unit, making it the largest detox center in Ohio.  The Task Force has quarterly, public meetings to encourage community involvement.

The City of Akron is reported to have 58.74% of the total overdoses in Summit County. The Akron Fire Department reports there were 4173 Opiate EMS incident reports and utilization

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

of Narcan from July 2010 to June 2018.  There are about 15,000 opioid-related incident reports and 1,700 Reports of Investigations that the City of Akron Police Department is responsible for investigating.  In 2016 and the first six months of 2017, the City of Akron Police Department responded to 2,114 overdoses.

The Akron Municipal Drug Court was initiated in 1995 as a collaborative effort between Summit County Courts, the Akron Police Department, the Akron Prosecutor's Office, the Public Defender's Office, the Akron Municipal Probation Department, the Summit County ADM Board and Oriana House, Inc.

The Akron Quick Response Teams ("QRT") are a collaborative effort between Summit County Public Health, Akron Fire Department and Akron Police Department.  This team focuses on connecting with individuals who have been struggling with addiction to opioids and have recently overdosed.  The QRT is also responsible for distribution of naloxone kits.  From March 2017 to May 2018, the QRT made a total of 537 visits and distributed 44 naloxone kits.

Summit County treatment and recovery services offered are:

| Program | Description |
|---|---|
| The Akron General Edwin Shaw Rehabilitation Institute | An intensive outpatient program for chemical dependency; monitors Suboxone intake during transition from a detox center. |
| Akron Medical Center | Inpatient treatment program for opioid addiction. |
| Akron Urban Minority Alcoholism Drug Abuse Outreach Program (UMADAOP) | Established in 1980 via legislative action to provide substance abuse education, prevention and treatment for African and Hispanic Americans throughout the State of Ohio. |
| Asian Services in Action, Inc. | A treatment resource with an ambulatory detoxification/treatment center. |
| Community Health Center | Provides Summit County with a comprehensive treatment plan for the rehabilitation and prevention of addiction; |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| | provides medically-assisted treatment for opioid addicted adults; goal is to provide complete methadone maintenance and rehabilitation counseling services to eliminate opioid and other drug use and the spread of infectious diseases. |
| Cover 2 Resources | A nonprofit organization to spread awareness and educate those touched by the opioid epidemic. |
| Interval Brotherhood Home (IBH) | An addiction recovery center in operation since 1970 providing an abstinence-based residential treatment program with educational classes for family members. |
| Mature Services Avenues to Recovery | A drug addiction treatment service. |
| Oriana House | Summit County's Alternative Corrections Provider offering treatment and recovery for alcoholism and chemical dependency. |
| Restore Addiction Recovery | A treatment and recovery campus that assists those struggling with addiction through a faith-based program. |
| Rigel Recovery Services | Provides medication assisted treatment with prescription Vivitrol and an intensive outpatient treatment program specific to the use of opioids. |
| Summa Akron City Hospital | Inpatient detox for opioid addiction. |
| Summit County Public Health | Member of the Opiate Task Force and provides quarterly reports on drug overdoses. Oversees Project DAWN which is a community-based drug overdose prevention and education project where participants receive training on recognizing the signs and symptoms of overdose and administering intranasal Naloxone/Narcan. |
| Summa Health System | The Summa Health Behavioral Health Institute provides inpatient and outpatient services to combat a variety of addiction disorders; operates a Vivitrol Clinic in Akron; the Summa Community Leadership Institute endeavors to involve the community in fighting the opioid epidemic. |
| Summit Safe Needle Exchange Program | A free, anonymous syringe exchange program which includes overdose prevention training and risk reduction counseling. |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| Summit Psychological Associates | An outpatient medically assisted treatment (Vivitrol) program for Oriana House. |
| Summit County Community Partnership | A consortium of community resources committed to preventing substance abuse using evidence based prevention techniques, information and activities. |
| Jake's Reach | An Akron-based opiate addiction resource group. |
| Hope United | A foundation founded to fight drug addiction. |

The following table describes other examples of the efforts made to address public health and safety hazards of the opioid epidemic caused by the wrongful conduct of Distributor Defendants.

| Jurisdiction | Efforts to Address Opioid Epidemic |
|---|---|
| Summit County | • Summit County Alcohol, Drug Addiction and Mental Health Board:  Quick Response Teams, DAWN, Addiction Helpline; Opiate Task Force and the planning, maintaining and executing responses to the opioid epidemic; purchase of Narcan; manages waitlists for residential treatment facilities; additional training, education and treatment;<br>• Summit County Medical Examiner:  increased number of deaths caused by the opioid epidemic for the Summit County Medical Examiner's office to process and investigate; additional staffing and resources, additional costs for contractors/vendors;<br>• Summit County Prosecutors: increased caseload and prosecutions relating to the opioid epidemic;<br>• Summit County Court of Common Pleas (including probation and specialty courts, like drug court): increased caseload and probation services relating to the opioid epidemic; Opioid Unit in adult probation department; two drug court judges do community outreach re opioids and other drugs; Indigent Defense – increased County expenditures to fund this Court program for indigent defendants;<br>• Summit County Juvenile Court (including probation and specialty courts): increase in number of parents participating in Family Reunification Through Recovery Court due to opioid use; increase in staff trainings related to opioid use;<br>• Summit County Children Family Services: host Northeast Ohio Regional Training Center which provides trainings related to opioids, |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| | |
|---|---|
| | 25% of the staff trainings they do relate to opioids; social workers who exclusively deal with families and substance abuse issues; collaborate with juvenile court program, Family Reunifications through Recovery; Oriana House; provides licensure hours for Close Up which addresses opioids increased costs due to increased placement of children abused and neglected due to opioid addictions; the STARS Program (Summit County Collaborative on Trauma, Alcohol & Other Drug & Resiliency Building Services for Children & Families) provides intensive trauma and treatment services to eligible families with support from various community partners, such as in-home alcohol and other drug assessments, Recovery Coaches, ongoing substance abuse treatment, the Nurturing Parenting Program, trauma screening and services, and tutoring and mentoring for children; in 2016, 113 families were enrolled in the STARS Program;<br>• Summit County Sheriff:  services, including but not limited to, training, investigations, staffing, jail expenses, dispatch services, task force as a result of the opioid epidemic; members of Quick Response Team; DARE education; drug task force members meet with community organizations to discuss opioids; drug take back days; implement House Bill 277 aka Good Samaritan Law; receive Narcan training;<br>• Summit County General Health District: purchase of Narcan; Quick Response Team; Syringe Harm Reduction Program; educational campaigns, expanded medically assisted treatment programs;<br>• Summit County Executive: Incident Management Assistance Team ("IMAT") coordinates activities of the Opiate Task Force and the Addiction Counsel |
| | |
| Akron | • Opioid-focused Quick Response Team (QRT);<br>• Purchases of Narcan, drug testing kits, and Immunity Hearing Requirement forms;<br>• Increased Police/Fire/EMS service calls for overdoses;<br>• Increased Police Division services for opioid investigations, including training, detailing of staff to task forces;<br>• Safety Communications handling of increased dispatches and related Police/Fire/EMS support;<br>• Law Department Criminal Division's increased prosecutions relating to the opioid epidemic;<br>• Municipal Court's increased caseload and probation load relating to the opioid epidemic; |

|  | • Planning and executing a response to the opioid epidemic, including community educational awareness by Police, the Mayor's office, and other city departments;<br>• Funding of third party entities that provide various support services related to the opioid epidemic, including Oriana House, Interval Brotherhood Home, Summit Co. Public Health, etc. |
|---|---|

Plaintiff reserves the right to supplement or modify its response as discovery continues, or to answer this interrogatory by producing non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d). In addition, discovery is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 15:**

Identify all communications prior to the filing of Plaintiff's initial Complaint between each Plaintiff or anyone acting on Plaintiff's behalf and any Manufacturer Defendant. Please include in your identification any communications in which, in words or substance, Plaintiff or anyone acting on Plaintiff's behalf requested information from such Manufacturer Defendant related to opioids or communicated complaints or concerns about such Defendant's acts or omissions related to opioids. For each Manufacturer Defendant for which you cannot identify any communications between Plaintiff and that Manufacturer Defendant, please so state.

**Response to Interrogatory No. 15:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all" communications prior to the filing of Plaintiff's "initial Complaint" between Plaintiff or anyone acting on Plaintiff's behalf and any Manufacturer Defendant. Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Manufacturer Defendants.  Plaintiff objects to the extent the Interrogatory calls for irrelevant information or information protected by the attorney-client or work product privileges.

Subject to and without waiving all objections, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will produce documents that identify such communications.

**Interrogatory No. 16:**

State whether Plaintiff or anyone acting on Plaintiff's behalf has, since Plaintiff filed its initial Complaint, continued to reimburse or pay for prescriptions of prescription opioids for chronic non-cancer pain and identify any changes Plaintiff or anyone acting on Plaintiff's behalf has made to its policies and procedures for the reimbursement of prescription opioids at any time.

**Response to Interrogatory No. 16:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "any" changes to reimbursement policy.  Plaintiff further objects on relevance grounds.

Subject to and without waiving all objections, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will produce documents that identify such communications and/or changes.

**Interrogatory No. 17:**

Identify all persons formerly and currently employed, affiliated with or consulted by Plaintiff (including any third party individual or entities) who are or were involved in deciding whether and on what terms to provide coverage or payment for prescription opioids.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**Response to Interrogatory No. 17:**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all" persons formerly and currently employed, affiliated with or consulted by Plaintiff (including any third party individual or entities). Plaintiff further objects to this Interrogatory as seeking the names of third parties of which Plaintiff may not be aware who may or may not make such decisions. Subject to and without waiving all objections, Plaintiff states that its work with third-party providers and consultants on health benefit coverage issues.

Subject to and without waiving all objections, Plaintiff produced organizational charts and will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will identify or produce documents that identify such persons. Subject to and without waiving, Summit County responds that Medical Mutual of Ohio has managed Health and Disability Plans going back to 2003. Subject to and without waiving, the City of Akron responds that Medical Mutual of Ohio has managed its medical benefits since 2000.

**Interrogatory No. 18:**

Describe the policies Plaintiff implemented and each specific action it or individuals or entities acting on its behalf took to process and adjudicate claims submitted for payment of opioids dispensed to patients insured by Plaintiff. Include in your descriptions (i) the person(s) most knowledgeable about opioid claims adjudication and approval; (ii) the method(s), criteria, information, or persons consulted and on which Plaintiff or anyone acting on Plaintiff's behalf relied to determine whether such claims involved a prescription that was medically necessary or otherwise eligible for payment, including all formulary limitations and restrictions; and (iii) any course of action considered or pursued prior to commencing the present action to ensure that health

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

care providers did not recommend, prescribe, or dispense opioids for uses Plaintiff considers unwarranted or otherwise write medically unnecessary prescriptions to patients.

**Response to Interrogatory No. 18**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests Plaintiff to "describe the policies," "opioid claims adjudication" and "each specific action". Plaintiff further objects to this Interrogatory as seeking the names of third parties of which Plaintiff may not be aware, much less have possession or control over.

Subject to and without waiving all objections, Plaintiff produced organizational charts and will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will produce policies and identify such persons.

**Interrogatory No. 19:**

For each Manufacturer Defendant's opioid(s), state whether plaintiff or anyone acting on Plaintiff's behalf has ever denied payment or reimbursement for a prescription as medically unnecessary or inappropriate. If yes, for each Manufacturer Defendant list each instance and describe the incident by date, claim number, prescriber or health care provider, patient identity, amount, and the reason(s) given. If no for any manufacturer Defendant's opioid(s), please so state.

**Response to Interrogatory No. 19**

Plaintiff objects to this Interrogatory as overly broad and unduly burdensome, as it seeks each individual denials of payment. Plaintiff further objects to this Interrogatory to the extent it seeks information in the possession of third parties over which Plaintiff does not exercise control, such as insurance companies or health care providers or their employees. Plaintiff further objects to this Interrogatory to the extent it seeks private, HIPAA-protected information such as the patient identity.

27

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving all objections, Plaintiff will produce information within its custody or control in accordance with Special Master Cohen's July 3, 2018 Order.

**Interrogatory No. 20**

Identify all "pill mills" (as that term is sued in Plaintiff's Second Amended Corrected Complaint) that exist or existed in Plaintiff's jurisdiction. For each identification, state (i) which, if any, of the Manufacturer Defendant's opioids that are or were prescribed at that "pill mill" in excessive quantities or inappropriately in any other way; (ii) other opioids not associated with any Manufacturer Defendant that are or were prescribed at that "pill mill" in excessive quantities or inappropriately in any other way; (iii) when Plaintiff first learned of the existence of each "pill mill," (iv) all actions Plaintiff or those acting on Plaintiff's behalf has taken to restrict, shut down, curtail, or otherwise reduce the harmful effects of that "pill mill", and (v) whether the "pill mill" is currently operating in any form.

**Response to Interrogatory No. 20**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all" pill mills. Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the Manufacturer Defendants and third parties.

Subject to and without waiving all objections, Plaintiff answers as follows: Plaintiff refers Defendants to Plaintiff's Second Amended Corrected Complaint.  Plaintiff responds discovery continues and Plaintiff will produce a trial witness list and liability expert reports pursuant to CMO No. 1 and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement, modify or amend this response upon further investigation as fact discovery continues.

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**Interrogatory No. 21**

For each opioid-containing product of each Manufacturer Defendant that you maintain or allege is at issue in this case, describe any risk that Plaintiff alleges is not adequately disclosed in such opioid-containing product's operative FDA-approved prescribing information. For each opioid-containing product for which you cannot identify any such risks, please so state. For each opioid-containing product for which you maintain or allege there are such inadequately disclosed risks, please include in your description (i) the risk; (ii) the medical or scientific support for your assertion, if any; (iii) any communications between Plaintiff or anyone acting on Plaintiff's behalf and the Manufacturer Defendant in which Plaintiff or anyone acting on Plaintiff's behalf alerted, discussed or disclosed such risk to the manufacturer Defendant or other third party prior to filing this litigation; and (iv) any communications between Plaintiff or anyone acting on Plaintiff's behalf and the FDA in which Plaintiff or anyone acting on Plaintiff's behalf alerted, discussed or disclosed such risk to the FDA prior to filing this litigation.

**Response to Interrogatory No. 21**

Plaintiff objects to this Interrogatory as vague, ambiguous in seeking "FDA-approved prescribing information." Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "any communications." Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the Manufacturer Defendants and third parties.

Plaintiff responds discovery continues and Plaintiff will produce a trial witness list and liability expert reports pursuant to CMO No. 1 and the Federal Rules of Civil Procedure. Subject to and without waiving all objections, Plaintiff answers as follows: Plaintiff refers Defendants to Plaintiff's Second Amended Corrected Complaint. Plaintiff reserves the right to supplement,

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

modify or amend this response upon further investigation.  Plaintiff further responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

**Interrogatory No. 22**

Identify and describe all efforts, including the specific dollar amount expended on each, in which Plaintiff has engaged to date to "abate" the "opioid epidemic" in any way, including but not limited to "educating prescribers (especially primary care physicians and the most prolific prescribers of opioids) and patients regarding the true risks and benefits of opioid, including the risk of addiction," "providing addiction treatment to patients who are already addicted to opioids," and "making naloxone widely available so that overdoses are less frequently fatal," as those terms are used in Paragraph 172 of Plaintiff's Second Amended Corrected Complaint.

**Response to Interrogatory No. 22**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all" efforts, including the specific dollar amount expended on each, in which Plaintiff has engaged to date to "abate" the "opioid epidemic" in any way, including but not limited to "educating prescribers (especially primary care physicians and the most prolific prescribers of opioids) and patients regarding the true risks and benefits of opioid, including the risk of addiction," "providing addiction treatment to patients who are already addicted to opioids," and "making naloxone widely available so that overdoses are less frequently fatal,".

Subject to and without waiving all objections, Plaintiff incorporates the allegations in its Amended Complaint and states that Plaintiff's abatement efforts are still under investigation and subject to Defendants' document requests.  Plaintiff will conduct a reasonable and diligent search for this information and, if such information is in Plaintiff's possession, custody, or control, will

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

produce documents that relate to Plaintiff's efforts and programs to address the opioid epidemic. Finally, Plaintiff's damages in this matter are expected to include, but are not limited to the following:

- Losses caused by the decrease in funding available for Plaintiff's public services for which funding was lost because it was diverted to other public services designed to address the opioid epidemic;

- Costs for providing healthcare and medical care for patients suffering from opioid-related addiction or disease, including overdoses and deaths;

- Costs of training emergency and/or first responders in the proper treatment of drug overdoses;

- Costs associated with providing police officers, firefighters, and emergency and/or first responders with naloxone – an opioid antagonist used to block the deadly effects of opioids in the context of overdose;

- Costs associated with emergency responses by police officers, firefighters, and emergency and/or first responders to opioid overdoses;

- Costs for providing mental-health services, treatment, counseling, rehabilitation services, and social services to victims of the opioid epidemic and their families;

- Costs associated with law enforcement and public safety relating to the opioid epidemic, including but not limited to attempts to stop the flow of opioids into local communities, to arrest and prosecute street-level dealers, to prevent the current opioid epidemic from spreading and worsening, and to deal with the increased levels of crimes that have directly resulted from the increased homeless and drug-addicted population;

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

- Costs associated with various public safety and health initiatives related to the opioid epidemic;

- Costs associated with increased burden on Plaintiff's drug court;

- Costs associated with clean-up of public parks, spaces and facilities of needles and other debris and detritus of opioid addiction;

- Loss of tax revenue due to the decreased efficiency and size of the working population in Plaintiff's community and due to other impacts on property values and other tax generators for Plaintiff;

- Losses caused by decreased business investment and tax revenue;

- Plaintiff's contributions to the Alcohol, Drug Addiction, and Mental Health Services (ADM) board;

- Increased public safety services, including but not limited to, training, investigations, staffing, jail expenses, dispatch services, task force as a result of the opioid epidemic;

- Plaintiff's Health Department costs related to the opioid epidemic, which provides services targeted to patients with substance abuse problems including opioid related matters;

- Costs associated with impact of opioid epidemic on Plaintiff's vehicle fleet;

- Costs for Plaintiff to properly and adequately abate the nuisance created by the opioid epidemic.

In addition, Plaintiff's investigation of its damages caused by the Defendants and abatement remedies are ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO No. 1 and the Federal Rules of Civil Procedure.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving all objections, Plaintiff further identifies the following documents:

| | | |
|---|---|---|
| AKRON_000000003 | SUMMIT_000015990 | SUMMIT_000019856 |
| AKRON_000000576 | SUMMIT_000016568 | SUMMIT_000019857 |
| AKRON_000001104 | SUMMIT_000016569 | SUMMIT_000019858 |
| AKRON_000001620 | SUMMIT_000017896 | SUMMIT_000022510 |
| AKRON_000002119 | SUMMIT_000017903 | SUMMIT_000022583 |
| AKRON_000002535 | SUMMIT_000018430 | SUMMIT_000022656 |
| AKRON_000002874 | SUMMIT_000018440 | SUMMIT_000022730 |
| AKRON_000003228 | SUMMIT_000018601 | SUMMIT_000111606 |
| AKRON_000003930 | SUMMIT_000018966 | SUMMIT_000111607 |
| SUMMIT_000009742 | SUMMIT_000019112 | SUMMIT_000111608 |
| SUMMIT_000010324 | SUMMIT_000019258 | SUMMIT_000111609 |
| SUMMIT_000010936 | SUMMIT_000019388 | SUMMIT_000111610 |
| SUMMIT_000011824 | SUMMIT_000019490 | SUMMIT_000111611 |
| SUMMIT_000014002 | SUMMIT_000019580 | SUMMIT_000111612 |
| SUMMIT_000014151 | SUMMIT_000019668 | SUMMIT_000111613 |
| SUMMIT_000014772 | SUMMIT_000019854 | SUMMIT_000111614 |
| SUMMIT_000015385 | SUMMIT_000019855 | SUMMIT_000111615 |

Plaintiff reserves the right to supplement and amend this response upon further investigation. In addition, discovery is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Rules of Civil Procedure. Plaintiff further responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

**Interrogatory No. 23**

Identify all former employees, contractors, or consultants of each Manufacturer Defendant with whom Plaintiff or those acting on Plaintiff's behalf have communicated regarding this lawsuit or the subject matter of this lawsuit. For each identification, include: (i) the date of such communication; (ii) the medium and location of such communication; (iii) for oral communications, the location as well as those present in person, by phone or otherwise; (iv) any document or communication reflecting, memorializing or relating to such communication; and (v) a description of such communication.

**Response to Interrogatory No. 23**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all" former employees, contractors, or consultants of each Manufacturer Defendant with whom Plaintiff or those acting on Plaintiff's behalf have communicated regarding this lawsuit or the subject matter of this lawsuit. Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the Manufacturer Defendants. Plaintiff objects to this Interrogatory as seeking information protected by the attorney client and work product privileges. This issue is currently being analyzed by Plaintiff's experts whose reports and opinions will be disclosed in accordance with CMO 1 and the Federal Rules of Procedure. Plaintiff further responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## Interrogatory No. 24

Does Plaintiff allege, maintain, or contend that opioid-containing products are always medically inappropriate for and should never be prescribed for the treatment of chronic non-cancer pain? If so, identify all medical or scientific data, information, literature or analysis that supports Plaintiff's view. If not, identify all circumstances under which Plaintiff maintains or believes that opioid-containing products may be medically appropriate for the treatment of chronic non-cancer pain.

## Response to Interrogatory No. 24

Plaintiff objects to this Interrogatory to the extent it calls for an expert opinion. Plaintiff further objects to the use of the term "always". This issue is currently being analyzed by Plaintiff's experts whose reports and opinions will be disclosed in accordance with CMO 1 and the Federal Rules of Procedure. Further answering, this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

## Interrogatory No. 25

Does Plaintiff allege, maintain, or contend that opioid-containing products are always medically inappropriate for and should never be prescribed for the treatment of acute or breakthrough non-cancer pain? If so, identify all medical or scientific data, information, literature or analysis that supports Plaintiff's view. If not, identify all circumstances under which Plaintiff maintains or believes that opioid-containing products may be medically appropriate for the treatment of acute or breakthrough non-cancer pain.

## Response to Interrogatory No. 25

Plaintiff objects to this Interrogatory to the extent it calls for an expert opinion. Plaintiff further objects to the use of the term "always". Plaintiff objects to this as vague and ambiguous

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

on terms "opioid-contacts," "medically inappropriate," "acute or break through non-cancer" pain. These issues are being analyzed by Plaintiff's experts whose reports and opinions will be disclosed in accordance with CMO 1 and the Federal Rules of Procedure.  Further answering, this Interrogatory is contention discovery more appropriately answered once discovery is complete. See FRCP 33(a)(2).

## Interrogatory No. 26

Identify all entities and individuals besides the Defendants named in Plaintiff's Second Amended Corrected Complaint who Plaintiff contends caused or contributed in any way to the alleged "public nuisance" or "health crisis" (as those terms are used in Plaintiff's Second Amended Corrected Complaint, including in paragraph 171). Include in your identification for each entity or individual: (i) their role in helping to cause or contributing in any way to the "public nuisance" or "health crisis" (as those terms are used in Plaintiff's Second Amended Corrected Complaint, including in paragraph 171); and (ii) the specific actions or efforts, if any, Plaintiff has undertaken to mitigate the effects of those third parties' actions or omissions.

## Response to Interrogatory No. 26

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "all" entities and individuals besides the Defendants named in Plaintiff's Second Amended Corrected Complaint who Plaintiff contends caused or contributed in any way to the alleged "public nuisance" or "health crisis" (as those terms are used in Plaintiff's Second Amended Corrected Complaint, including in paragraph 171).

Plaintiff responds discovery continues and Plaintiff will produce a trial witness list and expert reports pursuant to CMO No. 1 and the Federal Rules of Civil Procedure.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Plaintiff further objects that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

## Interrogatory No. 27

For each Manufacturer Defendant, identify and describe each "suspicious order[]" of opioids that each Manufacturer Defendant was under a "duty to report" and "not ship" ( as those terms are used in Plaintiff's Second Amended Corrected Complaint, including in paragraph 501). For each such identification and description, include (i) the date(s); (ii) the opioid-containing product or products involved; (iii) the destination of the shipment; (iv) whether the manufacturer reported or shipped the order; and (v) Plaintiff's basis for its contention that such shipment should have been "report[ed]" and not ship[ped]" (as those terms are used in Plaintiff's Second Amended Corrected Complaint, including in paragraph 501). For each Manufacturer Defendant for which Plaintiff can identify no such order, please so state.

## Response to Interrogatory No. 27

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "each" "suspicious order[]" of opioids that each Manufacturer Defendant was under a "duty to report" and "not ship" (as those terms are used in Plaintiff's Second Amended Corrected Complaint, including in paragraph 501.

Additionally, Plaintiff states that it continues to analyze the ARCOS database produced in this litigation and will provide liability expert reports.  Plaintiff responds discovery continues and Plaintiff will produce a trial witness list and expert reports pursuant to CMO No. 1 and the Federal Rules of Civil Procedure.  Plaintiff further objects that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**Interrogatory No. 28**

Identify and describe any specific efforts or activities on behalf of each Manufacturer Defendant to "work[] together to inflate the quotas of opioids" (as those terms are used in Plaintiff's Second Amended Corrected Complaint in the heading above paragraph 526). For each manufacturer Defendant for which plaintiff can identify no such specific effort or activity, please so state.

**Response to Interrogatory No. 28**

Plaintiff objects to this Interrogatory as vague, ambiguous, overly broad and unduly burdensome to the extent it requests "any" specific efforts or activities on behalf of each Manufacturer Defendant to "work[] together to inflate the quotas of opioids."  Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the Manufacturer Defendants.

Subject to and without waiving all objections, Plaintiff responds as follows:  Plaintiff refers Defendants to Plaintiff's Second Amended Corrected Complaint.  Plaintiff further responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* FRCP 33(a)(2).

Plaintiff responds discovery continues and Plaintiff will produce a trial witness list and liability expert reports pursuant to CMO No. 1 and the Federal Rules of Civil Procedure.

**Interrogatory No. 29**

Identify any specific "payments" each Manufacturer Defendant made to "physicians," including for "participating on speakers' bureaus, providing consulting services, and other services" (as those terms are used in Plaintiff's Second Amended Corrected Complaint in paragraph 68). For each such identification, include (i) the Manufacturer Defendant who made it;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

(ii) when it was made; (iii) to whom it was made; (iv) where it was made; and (v) any evidence Plaintiff has that such "payment" was for an allegedly inappropriate purpose. For each Manufacturer Defendant for which you are not able to identify any such "payment," please so state.

**Response to Interrogatory No. 29**

Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "any" specific "payments" each Manufacturer Defendant made to physicians, including for "participating on speakers' bureaus, providing consulting services, and other services. Plaintiff further objects to this Interrogatory in that it seeks information already in the possession of the Manufacturer Defendants. Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome to the extent it requests "each and every" doctor or healthcare provider who "participated" in "speaker programs" or "speakers' bureaus". Further objecting, Plaintiff objects to this Interrogatory as overly broad and also to the extent it seeks information that is in Defendants' possession or publicly available, and thus seeks to impose an undue burden and unnecessary expense on Plaintiff. Each Defendant has, or should have, records that identify each and every doctor or other healthcare provider who participated in "speaker programs" or "speakers' bureaus" on behalf of or in relation to the subject Defendant. Therefore, Defendants have far superior access to this information which is also the subject of Plaintiff's discovery in this case. Notwithstanding and without waiving this objection, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will produce documents that identify doctors and healthcare providers wo participated in "speaker programs" or "speakers' bureaus". Subject to and without waiving objections, Plaintiff responds:

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Name | Title | Event Description | Payment |
|---|---|---|---|
| J. David Haddox | Doctor, Committee Chair of AAPM | A "consensus" statement issued in 1997 endorsing opioids to treat chronic pain and claiming the addiction risk to patients was low. | Unknown at this time |
| Russel Portenoy | Doctor, Chairman of the Department of Pain Medicine and Palliative Case at Beth Israel Medical Center in New York, Consultant to AAPM, spokesperson for Purdue | A "consensus" statement issued in 1997 endorsing opioids to treat chronic pain and claiming the addiction risk to patients was low. | Unknown at this time |
| Lynn Webster | Doctor, co-founder and Chief Medical Director of the Lifetree Clinical Research & Pain Clinic in Salt Lake City, Utah, spokesperson for Cephalon, Endo and Purdue | Numerous Continuing Medical Education ("CME") programs | Over $2 million |
| Perry Fine | Doctor, co-chair of APS/AAPM Opioid Guideline Panel, spokesperson for Endo and Johnson & Johnson | Numerous CMEs for Endo and promotional talks for Johnson & Johnson | $32,017 from Johnson & Johnson |
| Scott Fishman | Doctor, served as a board member of APF and president of AAPM | Participated in numerous CMEs | Unknown at this time |
| Steven Simon | Doctor at Mid-America Physiatrists in Overland Park, Kansas | Wrote prescriptions for Subsys and Fentanyl and was a designated paid "speaker" for Insys | > $200,000 from August 2013 to December 2015 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Name | Title | Event Description | Payment |
|------|-------|-------------------|---------|
| Robert Yapundich | Neurologist in Hickory, NC | Board member of the Alliance for Patient Access and paid "speaker" | > $300,000 from 2013 to 2016 |
| Howard Hoffberg | Doctor at Rosen-Hoffberg Rehabilitation and Pain Management Associates in Townson, Maryland | Wrote prescriptions for opioids and received "speaker" fees from Insys, Purdue and Teva | > $175,000 from 2013 to 2016 |
| Heather Alfonso | Nurse practitioner in Connecticut | Wrote prescriptions for Subsys in exchange for "speaker" fees from Insys. | $83,000 |
| Jerrold Rosenberg | Doctor in Rhode Island | Wrote prescriptions for Subsys in exchange for "speaker" fees from Insys | > $188,000 |
| Gordon Freedman | Doctor in New York, New York | Wrote prescriptions for Fentanyl in exchange for "speaker" fees from Insys | > $100,000 annually |
| Jeffrey Goldstein | Doctor in New Rochelle, New York | Wrote prescriptions for Fentanyl in exchange for "speaker" fees from Insys | > $100,000 annually |
| Todd Schlifstein | Doctor in New York, New York | Wrote prescriptions for Fentanyl in exchange for "speaker" fees from Insys | > $100,000 annually |
| Dialecti Voudouris | Doctor in New York, New York | Wrote prescriptions for Fentanyl in exchange for "speaker" fees from Insys | > $100,000 annually |
| Alexandru Burducea | Doctor in Little Neck, New York | Wrote prescriptions for Fentanyl in exchange for | > $100,000 annually |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Name | Title | Event Description | Payment |
|------|-------|-------------------|---------|
| | | "speaker" fees from Insys | |
| Michael Frey | Doctor in Florida | Wrote prescriptions for Subsys in exchange for "speaker" fees from Insys | Unknown at this time |
| Jeffrey Kesten | Doctor in Boulder, Colorado | Wrote prescriptions for Subsys in exchange for "speaker" fees from Insys | $294,000 |
| Gordon Freedman | Doctor in White Plains, New York | Wrote prescriptions for Subsys in exchange for "speaker" fees from Insys | $283,000 |

In addition, Plaintiff identifies the following:

- Physicians identified by Insys Therapeutics, Inc. as having received compensation from Insys "for speaking about, endorsing or promoting SUBSYS in the State of Ohio." (*See* Insys Therapeutics, Inc.'s Responses and Objections to Plaintiff's First Set of Interrogatories);

- Physicians identified by Janssen Pharmaceuticals, Inc., its predecessor companies Ortho-McNeil-Janssen Pharmaceuticals, Inc. and Janssen Pharmaceutica, Inc., and its parent company Johnson & Johnson as having received compensation "for Nucynta IR and Nucynta ER speaker programs." (*See* Janssen Pharmaceuticals, Inc.'s Responses and Objections to Plaintiff's First Set of Interrogatories); and

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

- Physicians identified through ProPublica as payments publically disclosed in Ohio from August 2013 until December 2015.[2]

Plaintiff reserves the right to supplement, amend or modify this list as discovery proceeds.

Dated: July 5, 2018                                   Respectfully submitted,


                                                      By:  /s/  Linda Singer
                                                      Linda Singer

                                                      Joseph F. Rice
                                                      Jodi Westbrook Flowers
                                                      Anne McGinness Kearse
                                                      David I. Ackerman
                                                      Jeffrey C. Nelson
                                                      MOTLEY RICE LLC
                                                      401 9th Street NW, Suite 1001
                                                      Washington, DC 20004
                                                      Tel: (202) 232-5504

---

[2] This document will be Bates labeled and produced to Defendants.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

<u>**CERTIFICATE OF SERVICE**</u>

I, Colleen Hemelgarn, certify that on July 5, 2018, I caused the foregoing to be served via electronic mail on Defendant's Liaison Counsel pursuant to the Case Management Order in this case (ECF #232).

<u>*/s/ Colleen Hemelgarn*</u>