# EXHIBIT I.3

Highly Confidential - Subject to Further Confidentiality Review

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF OHIO
 2                          EASTERN DIVISION
 3    IN RE NATIONAL PRESCRIPTION   | MDL No. 2804
                                    |
 4    OPIATE LITIGATION             | Case No. 17-MD-2804
                                    |
 5    This Document Relates to:     | Hon. Dan A. Polster
                                    |
 6    The County of Summit, Ohio,   |
      et al., v.                    |
 7    Purdue Pharma L.P., et al.    |
      Case No. 17-op-45004          |
 8                                  |
      The County of Cuyahoga v.     |
 9    Purdue Pharma L.P., et al.    |
      Case No. 18-op-45090          |
10                                  |
      City of Cleveland, Ohio v.    |
11    Purdue Pharma L.P., et al.    |
      Case No. 18-op-45132          |
12
                              - - -
13
                     Monday, December 3, 2018
14
                              - - -
15
            HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
16
                      CONFIDENTIALITY REVIEW
17
                              - - -
18
           Videotaped deposition of ROBERT BROWN, held
19      at Foley & Lardner LLP, One Biscayne Tower, 2
        Biscayne Boulevard, Suite 1900, Miami, Florida,
20      commencing at 9:26 a.m., on the above date,
        before Susan D. Wasilewski, Registered
21      Professional Reporter, Certified Realtime
        Reporter and Certified Realtime Captioner.
22
23
                              - - -
24              GOLKOW LITIGATION SERVICES
            877.370.3377 ph | 917.591.5672 fax
25                   deps@golkow.com
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1            THE VIDEOGRAPHER:  On the record, 5:12 p.m.
 2            (Anda-Brown Exhibit 14 was marked for
 3      identification.)
 4      BY MR. NOVAK:
 5         Q.   We've had marked for identification purposes
 6      Anda-Brown Deposition Exhibit Number 14, which is
 7      comprised of a one-page e-mail bearing the Bates
 8      Number Anda_Opioids_MDL 543135, and there is a
 9      spreadsheet, an Excel spreadsheet, attached to the
10      e-mail that bears the Anda_Opioids_MDL Number
11      543136, which we are conveying electronically and
12      we'll also have up on the screen as we proceed with
13      the questioning.
14            Mr. Brown, Deposition Exhibit Anda-Brown 14
15      is an e-mail that you authored to various officials
16      at both the Department of Justice and also Anda
17      employees?
18            MR. MATTHEWS:  Sorry.  Do you have a copy
19       for me?
20            MR. NOVAK:  Oh.
21            MS. LUND:  I think you handed me two.
22            MR. MATTHEWS:  Oh, my codefendants stole my
23       copy.  I apologize.
24            MS. LUND:  In my defense, there's two
25       instead of three.
```

```
 1              THE WITNESS:  Yes, I see it.
 2     BY MR. NOVAK:
 3       Q.   Just so we're clear, this is an e-mail that
 4     you authored to the various recipients in the --
 5     that are identified in the "to" line?
 6       A.   That is correct.
 7       Q.   Okay.  And this reflects a list of customers
 8     that have been listed as not eligible or shut off?
 9       A.   Or reinstated.
10       Q.   Okay.  Can you explain to me how you
11     delineate between a customer whose control
12     privileges have been denied, between that category
13     and one who is no longer eligible?
14       A.   Yes.  A customer that is denied controls is
15     one who has applied for controls with Anda, first
16     time and they haven't receive controls before,
17     they've asked to purchase controls, and we've said,
18     based on the information that they have -- that they
19     have provided we are not -- we are not comfortable
20     with supplying controls.
21            A customer who has been cut off is one that
22     has been purchasing controls and for reasons that
23     we -- several reasons, some of which we actually
24     discussed earlier in connection with Exhibit 12, we
25     have decided that we are no longer comfortable
```

```
 1    providing controls.
 2       Q.   Okay.  Why don't we switch screens to the
 3    spreadsheet that was attached to your e-mail.
 4       A.   And, again, I'll elaborate a little bit for
 5    context.  This was something that was -- again, it's
 6    pursuant to the September 10th, 2014, e-mail that
 7    Michael Cochrane sent, and this was submitted every
 8    time there was an additional customer added or, in
 9    some cases, a -- a suspicious order.
10       Q.   Okay.
11       A.   It's a rolling -- it's -- you know, it's
12    really a rolling list.
13       Q.   So the first tab in the spreadsheet that was
14    attached and is part of Anda-Brown Deposition
15    Exhibit 14 is the customer cutoff tab?
16       A.   Uh-huh.
17       Q.   And these list an array of different Anda
18    customers, many of whom have something denoted in
19    the comments field?
20       A.   Uh-huh.
21       Q.   Now, when something is denoted in the -- in
22    the comments field as it is in this customer cutoff
23    tab, where would that information be extracted in
24    Anda's systems?
25       A.   It would be in the customer notes, in the
```

Highly Confidential - Subject to Further Confidentiality Review

 1  TNTPS, because the same information is there.  Let
 2  me again, just for clarification, it's not that it
 3  was -- these are special customers who the notes are
 4  there for.  This list had been provided on an
 5  ongoing basis starting in, like, probably 2011, but
 6  based upon our -- we just sent it as is.
 7         During the meeting that we had in September
 8  of 2014 that Michael Cochrane references in
 9  Exhibit 12, Valerie Mitchell said, look, this list
10  doesn't really help us because it doesn't tell us
11  why.
12         Now, that was the first time we ever got
13  that feedback, so it isn't as if we ever asked,
14  we're sending this all the time for the three --
15  previous three years, and we thought we were helping
16  or being proactive with the DEA, and they never
17  said, well, there's a problem or there isn't a
18  problem.  They just, okay.
19         But when she said, you know, it doesn't
20  really help us because we need more explanation, so
21  we agreed starting -- you know, this was
22  September 10, so you'll notice 9/12/14 there's an
23  explanation --
24     Q.   Okay.
25     A.   -- and it goes from there.  So I just wanted

```
 1    to be clear on that.
 2        Q.   Let's -- let's look at that line item for
 3    9/12/14 --
 4        A.   Uh-huh.
 5        Q.   -- which is, I think, line 540 of the
 6    customer cutoff section of the spreadsheet.  That's
 7    for an account whose name is The Health and Beauty,
 8    d/b/a Lakeland account, in Ronkonkoma, New York.
 9        A.   Uh-huh.
10        Q.   Okay.  And then looking at the Anda comments
11    that are in Column I, it states:  Eight of the top
12    10 dispensed pills/tablets are controls, including
13    five strengths of oxycodone, and the customer did
14    not provide an explanation of the reasons for these
15    products being the most highly dispensed.
16             That would have been taken from the customer
17    notes?
18        A.   The -- well, let me go back.  This and --
19    this sheet and the customer notes are filled in
20    simultaneously.
21        Q.   Okay.
22        A.   So -- and I was the one who did it, so I can
23    explain to you what I did.
24        Q.   Okay.
25        A.   Let's say -- and this one, again, without
```

Highly Confidential - Subject to Further Confidentiality Review

 1    seeing the customer file, I don't know exactly
 2    what -- what happened.  Okay?  But somehow or -- we
 3    got updated dispense data, I don't know why, don't
 4    if it was -- it was just part of the yearly deal or
 5    whether it was, you know, they were asking for
 6    increase.  I don't know what the reason was.  We
 7    went back and we compared the previous dispense
 8    data, and we said, oh, my gosh, this is not good,
 9    we're not comfortable.
10              So I would fill this sheet out, and then I
11    would turn around while -- again, almost
12    simultaneously, push the TPS button and put exactly
13    the same verbiage in.  And I would do -- it would
14    just say customer discontinued from controls or
15    customer cut off, reported to DEA.  It would have
16    the same notes.
17              And it would verify that this was on this
18    list -- this e-mail was submitted to the DEA.
19        Q.    Okay.  The e-mail that you wrote to the DEA,
20    that's the first page of Anda-Brown 14, states:  The
21    most recent determination was not based on the
22    suspicious order but rather information provided by
23    the customer.
24        A.    Uh-huh.
25        Q.    How do you know from looking at the