# EXHIBIT I.8

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF OHIO

 3                       EASTERN DIVISION

 4

 5    IN RE:  NATIONAL PRESCRIPTION )

 6    OPIATE LITIGATION               ) MDL NO. 2804

 7    ------------------------------) HON. DAN A. POLSTER

 8    THIS DOCUMENT RELATES TO       ) Case No. 1:17-md-2804

 9    ALL CASES                       )

10    ------------------------------)

11

12                       HIGHLY CONFIDENTIAL

13          SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

14

15            The videotaped 30(b)(6) deposition of H.D.

16    SMITH by and through GEORGE EUSON, called for

17    examination, taken pursuant to the Federal Rules of

18    Civil Procedure of the United States District Courts

19    pertaining to the taking of depositions, taken before

20    JULIANA F. ZAJICEK, a Registered Professional Reporter

21    and a Certified Shorthand Reporter, at the offices of

22    Brown, Hay & Stephens, LLP, Suite 800, 205 South Fifth

23    Street, Springfield, Illinois, on November 27, 2018,

24    at 9:13 a.m.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    depended on when you're -- a lot of that, if -- if we

 2    were bringing on a customer from another wholesaler,

 3    we may not have that information.  You know, as -- you

 4    know, as, you know, time -- time went on and we

 5    evolved our system, we started working more with

 6    dispensing records, dispensing information so that we

 7    could actually see what a pharmacy was dispensing, not

 8    just what they may be buying from us but what they --

 9    what their total book of business was.

10         Q.    Was it common for pharmacies to purchase

11    controlled substances from more than one distributor?

12         A.    Yes.

13         Q.    Would -- would it also be common for

14    distributors to discontinue doing business with

15    customers that order too much controlled substances?

16         A.    What do you mean by too much?

17         Q.    Suspicious orders.  So if a distributor

18    like H.D. Smith determined that its customers were

19    submitting suspicious orders, would H.D. Smith

20    discontinue doing business with that customer?

21         A.    It was commonly our practice that if we

22    identified orders that were suspicious and we reported

23    them to DEA -- and part of our investigation, again,

24    would be to go to the pharmacy, get dispensing
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    information, you know, launch an investigation.  And I

 2    would say more -- more times the norm would have been

 3    that we would discontinue controlled substances to

 4    that pharmacy if we had reason to believe there may be

 5    diversion going on.

 6         Q.    And do you know whether or not that

 7    pharmacy would seek to obtain the controlled

 8    substances that it sought from H.D. Smith from another

 9    distributor?  In other words, was there communication

10    among distributors about these suspicious ordering

11    pharmacies?

12         A.    No.  There were -- at one time DEA was

13    sending out a list of pharmacies that other

14    wholesalers had either closed or declined to do

15    business with.  That practice was discontinued after a

16    short time.

17         Q.    Okay.  Turning back to this guideline,

18    Section (d) talks about -- (d) talks about "Cumulative

19    Reviews Or Thresholds."  It says:

20              "The system should contain a mechanism for

21    periodic review of cumulative orders from the same

22    customer over time, to evaluate trends in purchasing

23    patterns."

24              Did the CSOMP system or policies and
```