# EXHIBIT I.12

Highly Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF OHIO
 2                   EASTERN DIVISION
 3                       - - -
 4    IN RE:  NATIONAL            )
      PRESCRIPTION                )   MDL No. 2804
 5    OPIATE LITIGATION           )
      _____) Case No.
 6                                )   1:17-MD-2804
      THIS DOCUMENT RELATES       )
 7    TO ALL CASES                )   Hon. Dan A. Polster
 8                       - - -
 9              Tuesday, August 7, 2018
10       HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
                 CONFIDENTIALITY REVIEW
11
                         - - -
12
13         Videotaped deposition of Jennifer R. Norris,
14    held at the offices of BakerHostetler, 200 Civic Center
15    Drive, Suite 1200, Columbus, Ohio, commencing at
16    8:09 a.m., on the above date, before Carol A. Kirk,
17    Registered Merit Reporter and Notary Public.
18
19                       - - -
20
21
22
23            GOLKOW LITIGATION SERVICES
          877.370.3377 ph | 917.591.5672 fax
24                deps@golkow.com
```

```
 1   to try to contain the controlled substances into

 2   the legitimate channels of distribution?

 3            MS. MAINIGI:  Objection; scope.

 4        A.   I agree that's what the language says.

 5   I don't -- obviously I haven't read every -- all

 6   the context around it, but the language

 7   highlighted defines the closed distribution

 8   system.

 9        Q.   Okay.  And it even indicates that even

10   as far back as 1970, Congress is trying to

11   significantly reduce the widespread diversion of

12   controlled drugs out of legitimate channels into

13   the illicit market, correct?

14            MS. MAINIGI:  Objection; scope.

15        A.   That is what the language says.

16        Q.   And that one of the ways they do that is

17   by creating this closed system.

18            Do you have an understanding of what

19   this "closed system" is?

20        A.   I do, yes.

21        Q.   Can you -- explain it briefly.

22        A.   It's the system that Cardinal Health

23   operates in.  It purchases pharmaceuticals it

24   distributes from licensed manufacturers.  It
```

```
 1   distributes those pharmaceuticals to licensed
 2   pharmacies for dispensing by those pharmacies
 3   to -- pursuant to prescriptions by licensed
 4   practitioners.
 5       Q.   So what Congress was doing was limiting
 6   those who could participate in this industry,
 7   correct?
 8            MS. MAINIGI:  Objection; scope.
 9       A.   I think it was laying out the system to
10   go from the -- from licensed player to licensed
11   player.
12       Q.   And that's my point.  You have to be a
13   licensed player.  I can't go out and set up Mike's
14   Drive-Thru Pharmacy and start getting controlled
15   substances shipped to me, right?
16            MS. MAINIGI:  Objection; scope.
17       A.   Not if you're not licensed
18   appropriately.
19       Q.   Not licensed.  And what Congress has
20   done is it created licensed manufacturers,
21   correct?
22            MS. MAINIGI:  Objection; scope.
23       A.   I don't know if Congress created them,
24   but there are licensed manufacturers, yes.
```

```
 1   by the guidance provided by the DEA over the
 2   years.
 3        Q.   Sure.  And we'll talk about that.
 4        A.   Sure.
 5        Q.   I'm sure we will spend a good bit of the
 6   day on that.
 7             Does Cardinal operate a system to
 8   disclose suspicious orders?
 9        A.   Yes.
10        Q.   And have they always operated or
11   maintained such a system?
12        A.   Yes, in accordance with the DEA
13   guidance.
14                        - - -
15          (Cardinal-Norris Exhibit 7 marked.)
16                        - - -
17        Q.   And just so we have -- no, that's not
18   going to work.
19             I'm going to put up Exhibit Number 7,
20   which is Norris 07 and also going to be
21   Plaintiff's Exhibit Number 7.  You see -- and I'm
22   sorry.  I'm jumping around on you.  But back on
23   Number 6, you see there at the bottom, it also
24   says, "36 FR 7778" -- excuse me.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   absolutely.  Go ahead.
 2        A.    Just I want to make sure I'm familiar.
 3              MR. FULLER:  Why don't we take a break
 4   and let you read that.  We've been going for a
 5   while now.
 6              THE VIDEOGRAPHER:  The time is now 3:49.
 7   Going off the record.
 8              (Recess taken.)
 9              THE VIDEOGRAPHER:  Okay.  The time is
10   now 4:05.  Back on the record.
11              MS. MAINIGI:  Mr. Fuller, Ms. Norris has
12   one clarification that she would like to put on
13   the record.
14              MR. FULLER:  Okay.
15              THE WITNESS:  I just want to make sure
16   that I was clear, because I think we were using
17   "suspicious order monitoring system" and
18   "suspicious order monitoring program" somewhat
19   interchangeably, and those are two different
20   things.
21              Cardinal Health has had a suspicious
22   order monitoring program in place since the
23   inception of the statute, which imposed the
24   requirements on us to monitor for suspicious
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   orders.
 2        Q.   And does that include the documents that
 3   we looked at, or is that a separate --
 4        A.   That's part -- you mean the compliance
 5   policies and procedures, the reporting
 6   requirements?
 7        Q.   Yes, ma'am.  I'm not sure what you want
 8   to call them.  I think it's 19, 21 -- 19, 20, 21,
 9   and 22.
10        A.   Those detailed --
11        Q.   The suspicious ordering monitoring
12   programs?
13        A.   Yes.
14        Q.   Was there anything else that was sent
15   out in the suspicious order monitoring programs
16   other than what's in those documents?  Are there
17   other documents that set out this, quote, unquote,
18   program?
19        A.   Not to my knowledge during that time
20   period.
21        Q.   And these documents were in place up
22   until the -- I think the 2006 document we looked
23   at; is that right?
24        A.   They were -- the second packet was dated
```