# EXHIBIT I.13

Highly Confidential - Subject to Further Confidentiality Review

```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF OHIO
                              EASTERN DIVISION


     IN RE NATIONAL PRESCRIPTION   | MDL No. 2804
                                   |
     OPIATE LITIGATION             | Case No. 17-MD-2804
                                   |
     APPLIES TO ALL CASES          | Hon. Dan A. Polster


                                - - -
                        Tuesday, April 23, 2019
                                - - -
             HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
                        CONFIDENTIALITY REVIEW
                                - - -



             VIDEOTAPED DEPOSITION of MATTHEW PERRI, III,
     BS Pharm, Ph.D., RPh, held at Jones Day,
     1420 Peachtree Street, N.E., Suite 800, Atlanta,
     Georgia, commencing at 9:28 a.m., on the above date,
     before Susan D. Wasilewski, Registered Professional
     Reporter, Certified Realtime Reporter and Certified
     Realtime Captioner.



                                - - -
                      GOLKOW LITIGATION SERVICES
                  877.370.3377 ph | 917.591.5672 fax
                           deps@golkow.com
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    A.   So that's the physical distribution of the
 2  product.  That's how the supply chain works, yes.
 3    Q.   And there is nothing wrong with being a part
 4  of that supply chain, right?
 5         MR. CHALOS:  Object to the form.
 6    A.   I think in my report, I point out that the
 7  full -- every -- every stakeholder in the supply
 8  chain is critical to the delivery of pharmaceuticals
 9  in our -- in our nation's supply chain.
10    Q.   Every -- every participant has --
11  participant has an important role to play?
12    A.   Yes, they do.
13    Q.   And there's nothing wrong with the roles
14  themselves?
15    A.   You know, the -- I didn't make any
16  assessment of right or wrong, simply, you know, what
17  is the -- what is the role of each in the supply
18  chain.  So is it -- is it right or wrong for a
19  wholesaler to -- you know, to sell opioids?  You
20  know, that wasn't -- it -- that wasn't part of the
21  analysis.  What was part of the analysis is, how did
22  opioids get from inception to the marketplace?
23    Q.   Uh-huh.
24    A.   And so the wholesalers have a role in that.
25    Q.   Right.  And I just -- I'm stepping away from
```

1  opioids for a second.  I'm just trying to ask a very
2  kind of basic question.
3      A.   Okay.
4      Q.   There is nothing inherently wrong with being
5  a part of that supply chain, right?
6           MR. CHALOS:  Object to the form.
7      A.   Yeah.  Every -- every stakeholder is
8  essential to providing drugs in our nation, and
9  that's an essential service to provide.
10     Q.   Okay. And if you look at Page 108 of your
11 book, I want to direct your attention to one
12 paragraph there.  And it's the first page, and it's
13 the very last sentence on this page.  Could you read
14 that out loud?  Actually, the last two sentences.
15     A.   I'm going to try.
16     Q.   I can read it to you if it's too small.
17     A.   It's pretty blurry on this.
18     Q.   Okay.  So you can tell me if it looks wrong
19 to you, but I read:  Without the wholesaler
20 providing its vital distribution function in the
21 pharmaceutical supply chain, many pharmacies across
22 the country would not be able to serve their
23 customers' patients.  In the worst case scenario,
24 those patients could possibly have to survive
25 without vital medications, such as insulin, pain,

```
 1                MR. CHALOS:  Object to the form.
 2       A.    Yes, that's right.
 3       Q.    And that same position in the supply chain
 4   makes them integral to the distribution of insulin
 5   the same way that they're integral to the
 6   distribution of opioids?
 7                MR. CHALOS:  Object to the form.
 8       A.    That's true, yes.
 9       Q.    Okay.  And it's not your opinion, correct,
10   that the distributors are integral because of any
11   advertising that they did?
12                MR. CHALOS:  Object to the form.
13       A.    So the -- my assessment of the distributor
14   advertising that I refer to in the report is that,
15   as expected, the distributor advertising focused
16   primarily on price, quality, availability, special
17   deals, stocking, and incentive-type advertising.
18   And on -- only on rare occasion did it affect -- did
19   it -- did it require a package insert or any product
20   information to be distributed.
21                So the reason that I believe that
22   wholesalers are integral to that process is because
23   of that function and that they did communicate
24   messages that were important to know in the
25   marketplace; for example, which generic immediate
```

```
 1    release oxycodone product can be purchased at the
 2    best price, so the pharmacy can function more
 3    efficiently, those kind of messages.
 4             I did not notice -- I did not see documents
 5    that the wholesale distributors distributed
 6    marketing messages beyond that, with few exceptions.
 7    For example, in one instance -- and I'd have to look
 8    in the report to get the specific details on this --
 9    a book was distributed through -- I believe it was
10    Cardinal.  And that book did carry with it unbranded
11    marketing messages.
12             So, again, the primary messages, the vast
13    majority of the messages were product, price,
14    availability, quality.  And then there were some
15    instances where it extended slightly beyond that in
16    distribution of information.
17       Q.   Okay.  And so when we talk about the bulk of
18    the -- what you refer to as advertising or the
19    provision of information about, you know, price and
20    product availability, when you look at what you're
21    saying in Paragraph 184 here and you talk about
22    distributors being integral to the defendants'
23    marketing of opioids, that's not what you're talking
24    about?  You're not talking about the provision of
25    information about price and availability, right?
```