# Exhibit 6

Highly Confidential - Subject to Further Confidentiality Review

```
 1       IN THE UNITED STATES DISTRICT COURT
 2       FOR THE EASTERN DISTRICT OF OHIO
 3                EASTERN DIVISION
 4                    - - -
 5   IN RE: NATIONAL        : MDL NO. 2804
     PRESCRIPTION OPIATE    :
 6   LITIGATION             :
     -----------------------------------------
 7                          : CASE NO.
     THIS DOCUMENT          : 1:17-MD-2804
 8   RELATES TO ALL CASES   :
                            : Hon. Dan A.
 9                          : Polster
     _____
10
     SUPREME COURT OF THE STATE OF NEW YORK
11             COUNTY OF NEW YORK
12   IN RE OPIOID         : Index No. 400000/2017
     LITIGATION           : Suffolk County
13   _____
         CIRCUIT COURT OF COOK COUNTY
14           COOK COUNTY, ILLINOIS
15   THE PEOPLE OF THE    : Case No. 2017L 013180
     STATE OF ILLINOIS,   : Consolidated with
16   AND COOK COUNTY      : 2018L 3908(JERSEY COUNTY)
     ILLINOIS             : 2018L 2943(KANE COUNTY)
17                        : 2018L 2916(MACON COUNTY)
              V.          : 2018L 2948(MCHENRY
18                        : COUNTY)
                          : 2018L 3728(LAKE COUNTY)
19   PURDUE PHARMA, L.P.  : 2018L 3909(UNION COUNTY)
     ET AL.               :
20
                       - - -
21                JENNIFER ALTIER
              Thursday, August 2, 2018
22                     - - -
23      HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
                 CONFIDENTIALITY REVIEW
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    - - -
 2           Videotaped deposition of
 3   JENNIFER ALTIER, taken pursuant to
 4   notice, was held at the law offices of
 5   Carella Byrne Cecchi Olstein Brody & Agnello,
 6   PC, 5 Becker Farm Road, Roseland, New Jersey
 7   07068, beginning at 9:05 a.m., on the above
 8   date, before Amanda Dee Maslynsky-Miller, a
 9   Certified Realtime Reporter.
10
11                    - - -
12
13
14
15
             GOLKOW LITIGATION SERVICES
16     877.370.3377 ph| 917.591.5672 fax
              deps@golkow.com
17
18
19
20
21
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   APPEARANCES:
 2
 3      ROBBINS GELLER RUDMAN & DOWD LLP
        BY:  AELISH MARIE BAIG, ESQUIRE
 4      BY:  MATTHEW S. MELAMED, ESQUIRE
        Post Montgomery Center
 5      One Montgomery Street
        Suite 1800
 6      San Francisco, California 94104
        (415) 288-4545
 7      aelishb@rgrdlaw.com
        Mmelamed@rgrdlaw.com
 8      Representing the Plaintiffs
 9
10
        KIRKLAND & ELLIS LLP
11      BY:  MARTIN L. ROTH, ESQUIRE
        BY:  ZACHARY A. CUILLO, ESQUIRE
12      300 North LaSalle
        Chicago, Illinois 60654
13      (312) 862-2000
        martin.roth@kirkland.com
14      Zac.ciullo@kirkland.com
        Representing Allergan Finance, LLC
15
16
17      JONES DAY
        BY: BRANDY HUTTON RANJAN, ESQUIRE
18      325 John H. McConnell Boulevard
        Suite 600
19      Columbus, Ohio 43215
        (614) 469-3939
20      branjan@jonesday.com
        Representing Walmart, Inc.
21
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   APPEARANCES:  (Continued)
 2
 3      WILLIAMS & CONNOLLY LLP
        BY:  ANDREW C. MCBRIDE, ESQUIRE
 4      725 Twelfth Street NW
        Washington, D.C. 20005
 5      (202) 434-5000
        amcbride@wc.com
 6      Representing Cardinal Health
 7
 8      ALLEGAERT BERGER & VOGEL
        BY: LAUREN J. PINCUS, ESQUIRE
 9      111 Broadway
        20th Floor
10      New York, New York  10006
        (212) 616-7057
11      lpincus@abv.com
        Representing Rochester Drug Cooperative
12
13   VIA TELECONFERENCE:
14
        REED SMITH LLP
15      BY: ANNE E. ROLLINS, ESQUIRE
        Three Logan Square, 1717 Arch Street
16      Suite 3100
        Philadelphia, Pennsylvania  19103
17      (215) 851-8100
        arollins@reedsmith.com
18      Representing AmerisourceBergen
19
20      MARCUS & SHAPIRA LLP
        BY: ZACHARY FENSTEMAKER, ESQUIRE
21      One Oxford Centre
        35th Floor
22      Pittsburgh, Pennsylvania  15219
        (412) 338-3345
23      Fenstemaker@marcus-shapira.com
        Representing HBC Service Company
24
```

## Page 365

Highly Confidential - Subject to Further Confidentiality Review

1  BY MS. BAIG:
2      Q.   Well, do you know whether
3  there was a sales rep in Ohio?
4      A.   I assume there was, yes.
5      Q.   Are you aware that Actavis
6  sells opioids in Ohio?
7           MR. ROTH:  Object to the
8      form.  Vague as to time frame and
9      who you're talking about.
10  BY MS. BAIG:
11     Q.   When you were there.
12     A.   And by "sell opioids,"
13  promote opioids to physicians?
14     Q.   Yes.
15     A.   So if we had a sales rep
16  there, yes, they were promoting opioids
17  to physicians.
18     Q.   Do you know who that sales
19  rep was?
20     A.   No.
21     Q.   If you wanted to find out
22  who that sales rep was, who would you go
23  to?
24     A.   I would probably call one of

Golkow Litigation Services                    Page: 365

## Page 366

Highly Confidential - Subject to Further Confidentiality Review

1  the sales directors.
2           MS. BAIG:  I have no further
3      questions.  Thank you.
4           THE WITNESS:  Thank you.
5           MR. ROTH:  Can we take a
6      short break, so I can consult with
7      co-counsel, and then we'll come
8      back on?
9           VIDEO TECHNICIAN:  The time
10     is 4:04 p.m.  Off the record.
11          -  -  -
12          (Whereupon, a brief recess
13     was taken.)
14          -  -  -
15          VIDEO TECHNICIAN:  We are
16     back on the record.  The time is
17     4:16 p.m.
18          -  -  -
19              EXAMINATION
20          -  -  -
21  BY MR. ROTH:
22     Q.   Ms. Altier, you testified
23  earlier that you joined Actavis in the
24  summer of 2010; is that correct?

Golkow Litigation Services                    Page: 366

## Page 367

Highly Confidential - Subject to Further Confidentiality Review

1      A.   That's correct.
2      Q.   Why were you hired?
3      A.   I was hired because Actavis
4  had just received a warning letter,
5  earlier that year, on the promotional
6  materials they were using, and I was
7  brought in to create new materials.
8      Q.   What process did you go
9  through to revise the company's
10 promotional materials for Kadian?
11     A.   Sure.  We created materials
12 that were based exclusively on the
13 product label, approved by the FDA.  I
14 like to -- I always used to like to call
15 it a colorful PI.
16          We created those materials,
17 we submitted them through our promotional
18 review committee process, which consisted
19 of legal and regulatory review, to make
20 sure that we were compliant.  And those
21 materials were produced and given to the
22 sales force.
23     Q.   And how would you describe
24 the marketing materials you produced for

Golkow Litigation Services                    Page: 367

## Page 368

Highly Confidential - Subject to Further Confidentiality Review

1  Kadian?
2      A.   Let's see.  Benign,
3  conservative, very straightforward,
4  modeled after the label.
5      Q.   What interaction did you
6  have with the inVentiv sales reps during
7  your tenure at Actavis while the inVentiv
8  contract was still ongoing?
9      A.   Sure.  My role was marketing
10 director, I would present the marketing
11 materials to them.
12     Q.   And how would you describe
13 the inVentiv sales reps' promotion of
14 Kadian?
15     A.   Again, you know, they were
16 trained on what -- the safety and the
17 efficacy of the product; they stuck to
18 the materials that they were given, which
19 was, basically, you know, a colorful
20 version of the PI; instructed to provide
21 appropriate safety that was in the
22 materials with every detail.
23     Q.   Did Actavis ever hire a
24 speakers bureau for Kadian?

Golkow Litigation Services                    Page: 368

## Page 369

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.    No.
 2        Q.    Did Actavis ever sponsor a
 3   continuing medical education seminars
 4   related to Kadian?
 5        A.    No.
 6        Q.    Did Actavis ever fund
 7   clinical or other scientific studies for
 8   the purpose of promoting Kadian?
 9        A.    Not during my tenure, no.
10        Q.    Did Actavis ever hire key
11   opinion leaders for the purposes of
12   promoting Kadian?
13        A.    No.
14        Q.    Did Actavis ever engage pain
15   advocacy or other patient advocacy
16   organizations for the purposes of
17   promoting Kadian?
18        A.    No.
19        Q.    Why did Actavis adopt such a
20   benign and conservative marketing
21   strategy for Kadian?
22        A.    We were at the end of our
23   product lifecycle.  Generic competition
24   was imminent.  Our goal was to maintain
```

Golkow Litigation Services                    Page: 369

## Page 370

Highly Confidential - Subject to Further Confidentiality Review

```
 1   product share.
 2        Q.    When did Actavis stop
 3   detailing physicians and pharmacies for
 4   Kadian in person?
 5        A.    The merger with Watson, the
 6   Watson management made the decision to
 7   let the sales force go at the end of
 8   2012.
 9        Q.    We saw some documents and
10   heard testimony today related to MoxDuo.
11              Do you remember that?
12        A.    I do.
13        Q.    Was MoxDuo ever marketed or
14   sold?
15        A.    It was not.
16        Q.    And why not?
17        A.    It was not approved by the
18   FDA.
19              MR. ROTH:  That's all I have
20        for now.
21              MS. BAIG:  I have nothing
22        further.
23                    -  -  -
24              EXAMINATION
```

Golkow Litigation Services                    Page: 370

## Page 371

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    -  -  -
 2   BY MS. PINCUS:
 3        Q.    Ms. Altier --
 4              VIDEO TECHNICIAN:  So you
 5        probably do want to come because
 6        you need a microphone.
 7                    -  -  -
 8              (Whereupon, a discussion off
 9        the record occurred.)
10                    -  -  -
11   BY MS. PINCUS:
12        Q.    Good afternoon, Ms. Altier.
13   My name is Lauren Pincus, and I'm here on
14   behalf of Rochester Drug Cooperative.
15              I realize it's been a long
16   day, so I'll try and be brief.
17        A.    Thank you.
18        Q.    Are you familiar with
19   Rochester Drug Cooperative?
20        A.    No.
21        Q.    Do you recall having any
22   dealings with Rochester Drug Cooperative
23   during your time at Actavis?
24        A.    No, not that I recall.
```

Golkow Litigation Services                    Page: 371

## Page 372

Highly Confidential - Subject to Further Confidentiality Review

```
 1              MS. PINCUS:  No further
 2        questions.
 3              MR. ROTH:  Does anyone on
 4        the phone have any questions for
 5        the witness?
 6              MR. DIAMANTATOS:  Yes.  This
 7        is Tinos Diamantatos, from Morgan
 8        Lewis on behalf of the Teva
 9        defendants.
10                    -  -  -
11              (Whereupon, a discussion off
12        the record occurred.)
13                    -  -  -
14   BY MR. DIAMANTATOS:
15        Q.    Can you hear me now?
16        A.    Yes.
17        Q.    Terrific.
18              Ms. Altier, how are you?
19   Nice to meet you --
20              MS. BAIG:  Have you
21        cross-noticed this deposition?
22        Who is taking questions now,
23        exactly.
24              MR. DIAMANTATOS:  I can't
```

Golkow Litigation Services                    Page: 372