# Exhibit 15

Highly Confidential - Subject to Further Confidentiality Review

```
 1         IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF OHIO
 3                   EASTERN DIVISION
 4                       - - -
 5
    IN RE:  NATIONAL         :  HON. DAN A.
 6  PRESCRIPTION OPIATE      :  POLSTER
    LITIGATION               :
 7                           :
    APPLIES TO ALL CASES     :  NO.
 8                           :  1:17-MD-2804
                             :
 9
                - HIGHLY CONFIDENTIAL -
10
       SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
11
                         - - -
12
                      May 29, 2019
13
                         - - -
14
15            Videotaped deposition of
    JONATHAN R. MACEY, taken pursuant to
16  notice, was held at the offices of
    Kirkland Ellis, LLP, 601 Lexington
17  Avenue, New York, New York, beginning at
    9:10 a.m., on the above date, before
18  Michelle L. Gray, a Registered
    Professional Reporter, Certified
19  Shorthand Reporter, Certified Realtime
    Reporter, and Notary Public.
20
                         - - -
21
22         GOLKOW LITIGATION SERVICES
       877.370.3377 ph | 917.591.5672 fax
23              deps@golkow.com
24
```

Highly Confidential - Subject to Further Confidentiality Review

Page 250

1  my report or the -- points, the analysis
2  in Paragraphs 12 through 16 of my report
3  provide -- are consistent with and
4  provide further support for Opinion
5  Number 7, particularly.
6      Q.  Are there any additional
7  bases of support for Opinion Number 7
8  that are not referenced in your report
9  under this section?
10     A.  I mean I could be more
11 specific and expand on how these various
12 doctrines support Opinion Number 7, but
13 it would just be being a little bit more
14 specific, which I'm happy to do.  It
15 wouldn't be providing additional sources.
16     Q.  Are there any additional
17 documents that are not cited in this
18 section that are supportive of your
19 Opinion Number 7 that you reviewed?
20     A.  No.
21     Q.  So you have no corrections
22 as you sit here today to your expert
23 report; is that right?
24     A.  I have no substantive

Page 251

1  corrections.  I believe when I read
2  through my report in connection with my
3  preparation for today's deposition, I
4  found a couple of typographical errors,
5  but I'm not sure that I could identify
6  them right now, and I found no
7  typographical errors that would affect or
8  change my opinion -- oh, so for example,
9  if one were to look on Page 18, Paragraph
10 32 of my deposition, the very end --
11     Q.  Of your report you mean?
12     A.  Did I say deposition?  I'm
13 sorry my report.  I think there are two
14 periods after the word "efficiency."  So
15 I would delete that.
16         But other than corrections
17 of that kind, I don't have any
18 corrections to my report.
19     Q.  So the report and all
20 exhibits are complete and accurate to the
21 best of your knowledge as you sit here
22 today; is that right?
23     A.  Yes.
24         MS. BAIG:  I would again

Page 252

1  request that any inaccuracies in
2  the written report discovered
3  after today please be provided to
4  us in advance of trial.  Would you
5  agree to that, Counsel?
6         MS. LEVY:  We will agree to
7  that.
8  BY MS. BAIG:
9     Q.  Do you have any outline of
10 this report or notes associated with this
11 report?
12     A.  No.
13     Q.  Do you have any additional
14 plans on working on this case other than
15 what you've already testified between now
16 and trial?
17     A.  No.
18     Q.  Is there anything additional
19 that you feel that you need to do in
20 order to give opinions about this case at
21 trial?  Is there any additional work that
22 you feel you need to perform?
23     A.  At the moment, no.  I would
24 anticipate that should other expert

Page 253

1  reports be filed in the future related to
2  the subject matter of my testimony today,
3  that I would review those, but I have no
4  current awareness of any such reports or
5  immediate plans to review any such
6  reports.
7      Q.  And you have no plans to
8  review any additional documents prior to
9  trial?
10     A.  Not -- no, sitting here
11 right now, I have no such plans.
12     Q.  Is there any information
13 that you do not currently have that would
14 either strengthen or weaken your
15 opinions?
16         MS. LEVY:  Objection to
17 form.  Calls for speculation.
18         THE WITNESS:  Certainly, as
19 I say specifically in my report, I
20 would never -- I would not rule
21 out the possibility that something
22 could happen that would change my
23 mind.  I specifically would refer
24 to Paragraph 6 on Page 4 of my

Highly Confidential - Subject to Further Confidentiality Review

Page 254

1  report where I reserve the right
2  to modify or supplement the
3  opinions in light of new evidence.
4      It's certainly -- I would
5  not rule out or consider it
6  impossible or unimaginable that
7  there could be additional evidence
8  that would cause me to reconsider
9  my opinion. I'm not aware of any
10 such evidence or even of the
11 possibility of the existence of
12 any such evidence.
13     But it certainly, as a -- as
14 a -- as a statistical matter, the
15 probability is greater than zero
16 that such evidence might exist
17 that could reinforce or undermine
18 the opinions that I've expressed
19 today.
20 BY MS. BAIG:
21     Q. Are there any facts that you
22 can think of as you sit here right now
23 that would -- that would influence or
24 change your opinions in any way?

Page 255

1     A. Any particular facts? Or --
2  I'm not quite sure. I'm not quite sure.
3  I mean, I don't -- I don't -- if -- if --
4  if it were revealed to me that Mr. --
5  that -- that -- that Mr. Hertz's
6  declaration or Mr. Kaufhold's declaration
7  or the -- or the -- or the master
8  purchase agreement or the public
9  reporting of the companies that I cite in
10 Roman Numeral II, if there were -- if it
11 turned out that these were factually
12 wrong and I was predicating some or
13 portions of my opinion on incorrect
14 factual assumptions, that could have an
15 effect on my opinion, I suppose. It's
16 certainly within the realm of
17 possibility.
18     I have no reason to believe
19 that there are any -- that these
20 documents are fraudulent or there's
21 anything mistaken about it. But
22 certainly if I were apprised of that
23 fact, it would change my -- it could
24 likely change my opinion, depending on

Page 256

1  what new information came out.
2      Q. Anything else that you can
3  think of right now?
4      A. No.
5      Q. Any additional categories of
6  documents that could change your opinion
7  that you haven't reviewed already?
8      A. No, not -- I don't believe
9  so.
10     Q. And there's nothing more to
11 your knowledge that needs to be reviewed
12 in order to support your opinions; is
13 that right?
14     A. That's correct.
15     Q. How certain of you are
16 your -- how certain are you of your
17 opinions in this case?
18         MS. LEVY: Object to form.
19 BY MS. BAIG:
20     Q. Do you have a degree of
21 certainty?
22     A. Mm-hmm. I would say I --
23 with respect to the opinions expressed in
24 this report, I am extremely certain, I

Page 257

1  could say that in the -- I've never been
2  more certain about my opinion in any of
3  the 80 cases in which I've testified as
4  an expert witness, so I would hold these
5  opinions with an extremely high degree of
6  certainty.
7      Q. Have you met with any other
8  experts in this case?
9      A. I have not.
10     Q. And you have -- I think
11 you've said before that you have not met
12 with any other lawyers for any of the
13 other defendants, correct?
14     A. That is correct.
15     Q. Are you aware of -- of who
16 the experts are that have been retained
17 in this case?
18     A. I am not.
19     Q. You're not aware of any of
20 them, any of the names of any of the
21 experts in this case?
22     A. I am not.
23     Q. So it's safe to assume that
24 you have not reviewed any other expert

Highly Confidential - Subject to Further Confidentiality Review

Page 258

1 reports in this case?
2    A.   That is correct.  I've not
3 reviewed any other expert reports.
4        MS. BAIG:  I'm close to the
5    end, so why don't we take a
6    five-minute break.
7        THE WITNESS:  Okay.  Good.
8        THE VIDEOGRAPHER:  Off the
9    record at 3:06 p.m.
10       (Short break.)
11       THE VIDEOGRAPHER:  We are
12   back on the record at 3:18 p.m.
13 BY MS. BAIG:
14   Q.   Okay.  Has your testimony
15 ever been excluded from trial?
16   A.   My testimony has never been
17 excluded in the sense that I've never
18 been prohibited from testifying.  I
19 believe there have been cases where my
20 testimony has been curtailed such that a
21 particular topic, like professional
22 responsibility, was kind of preemptively
23 excluded as a topic for my testimony.
24       But to my knowledge, while

Page 259

1 my testimony has been curtailed on
2 occasion, I don't -- I do not -- I
3 believe there's never been a case where
4 my testimony has been completely
5 excluded.
6    Q.   You're familiar with
7 something called a Daubert motion?
8    A.   Yes, I am.
9    Q.   And so you've never been
10 Dauberted?  You've never been excluded as
11 a result of a Daubert motion?
12   A.   Well, not to mince words.
13 So I take it Dauberted means, the way I
14 see it is, someone makes a motion to
15 exclude the testimony.  And I believe
16 that has been done in my case.  I don't
17 believe a motion has ever been
18 successful.
19   Q.   Okay.  And what are the
20 cases that you recall where your
21 testimony has been curtailed?
22   A.   So I think that there was a
23 case a long time ago in Texas called
24 Seven Seas.  I don't remember what it was

Page 260

1 about.  But it had something to with
2 Colombia, the country Colombia, an oil
3 pipeline there and an investment in it.
4 And I was permitted to testify about
5 corporate governance matters, but I was
6 not permitted to testify about issues
7 related to professional responsibility of
8 lawyers, although my testimony has was
9 not being offered relative professional
10 responsibility of lawyers.  But the judge
11 said that I shouldn't -- that at trial
12 that I wouldn't be allowed to testify
13 about that.
14   Q.   Wait, wait.  Who was the
15 judge?
16   A.   I don't recall.
17   Q.   State or federal court?
18   A.   I don't remember if it was
19 state or -- I don't recall.
20   Q.   Where was it venued?
21   A.   The -- the law firm that
22 retained me was in Texas.  The economic
23 activity that gave rise to the legal
24 dispute was in Columbia.  I don't know.

Page 261

1 I don't know where -- what the
2 jurisdiction of the court was.
3    Q.   And do you remember either
4 of the parties' names?
5    A.   Yes.  One party was named 7
6 Seas, S-E-A-S, and the Number 7,
7 S-E-V-E-N.  I don't remember the other
8 parties.
9    Q.   And you were retained on
10 behalf of 7 Seas?
11   A.   I don't recall.
12   Q.   Any other cases that you
13 recall in which your testimony was
14 curtailed?
15   A.   There is a case on my list,
16 there's -- of testimony, the Robinson
17 case, and I believe that there were
18 limitations placed on my testimony in
19 that case, although I don't recall what
20 they were.  I think the case settled.  I
21 don't really -- I don't remember what the
22 limitations were.  I was -- my testimony
23 was not prohibited, but there were -- it
24 was -- there were certain limitations