**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 17-op-45004 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE**
**TESTIMONY OF THOMAS McGUIRE CONCERNING DAMAGES**

## TABLE OF CONTENTS

I.      BACKGROUND .................................................................................................2

      A.     McGuire's Experience Testifying about Damagess2

      B.     McGuire's Damages Report in This Case ...........................................................2

II.     McGUIRE SHOULD BE PRECLUDED FROM OFFERING HIS
      CALCULATION OF SO-CALLED "DAMAGES" .........................................................4

      A.     McGuire's Calculations Do Not "Fit" the Issue of Damages Because He
                Does Not Measure Damages...................................................................................4

             1.     McGuire's "opportunity costs" reflect expenses the Counties
                    would have incurred even absent Defendants' allegedly wrongful
                    conduct...........................................................................................................6

             2.     McGuire's "opportunity costs" do not reflect injury to the
                    Counties. ........................................................................................................8

             3.     McGuire's "opportunity costs" do not meet this Court's articulated
                    standard for RICO damages............................................................................9

             4.     McGuire's calculations do not relate to any Defendant's alleged
                    misconduct. ....................................................................................................9

      B.     McGuire's Calculations Are Not Reliable............................................................11

             1.     McGuire's methodology for identifying "affected costs" is not
                    objective or testable. ...................................................................................11

             2.     McGuire's "opportunity costs" approach rests on unjustified
                    assumptions...................................................................................................13

CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588 (7th Cir. 1998) ...................................................................................................2, 8

*Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227 (11th Cir. 2009) ...................................................................................................10

*Chem. Solvents, Inc. v. Advantage Eng'g, Inc.*, 2011 WL 1326034 (N.D. Ohio Apr. 6, 2011) ...................................................................................................12

*Chronister Oil Co. v. Unocal Ref. & Mktg.*, 34 F.3d 462 (7th Cir. 1994) ..................................8, 9

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)..................................................12, 13

*Firwood Mfg. Co. v. Gen. Tire, Inc.*, 96 F.3d 163 (6th Cir. 1996) ........................................8

*Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 1993 WL 387346 (N.D. Ill. Sept. 23, 1993) ...............................................................................13

*Pride v. BIC Corp.*, 218 F.3d 566 (6th Cir. 2000) ...................................................................4, 14

*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665 (6th Cir. 2010) ...........................................................12

*United States ex rel. George v. Fresenius Med. Care Holdings, Inc.*, 2016 WL 5361666 (N.D. Ala. Sept. 26, 2016) ...............................................................................2

*United States v. Reynolds*, 626 F. App'x 610 (6th Cir. 2015) ......................................................11

## STATE CASES

*Callahan v. Massey*, 1984 WL 3452 (Ohio Ct. App. Oct. 29, 1984)...........................................10

*City of Youngstown v. Cities Serv. Oil Co.*, 31 N.E.2d 876, 877–78 (Ohio Ct. App. 1940) ...................................................................................................6, 8, 9

*Dayton Power & Light Co. v. Puterbaugh*, 1980 WL 352693 (Ohio Ct. App. Mar. 7, 1980) ...................................................................................................7

*Estie Inv. Co. v. Braff*, 2018 WL 5433223 (Ohio Ct. App. Oct. 29, 2018) ...................................7

*Kavalec v. Ohio Express, Inc.*, 71 N.E.3d 660 (Ohio Ct. App. 2016) ...........................................8

*Ohio Edison Co. v. Soule*, 2018 WL 6016743 (Ohio Ct. App. Nov. 16, 2018)............................7

*Ohio Power Co. v. Huff*, 231 N.E.2d 897 (Canton, Ohio Mun. Ct. 1967)......................................7

**OTHER AUTHORITIES**

Fed. R. Evid. 702(a)........................................................................................................................4

Plaintiffs' complaints allege that they suffered damages in the form of "extraordinary costs and losses" and that they seek relief for costs that were "not the normal or typical burdens of government programs and services."  Cuyahoga Cty. Third Am. Compl. ¶ 20; Summit Cty. Third Am. Compl. ¶ 21.  This Court, assuming these allegations to be true, denied Defendants' motions to dismiss in part because "Plaintiffs have been forced to expend vast sums of money far exceeding their budgets to attempt to combat the opioid epidemic."  Dkt. 1203 at 19.  Throughout fact discovery, whenever Defendants sought to ascertain the factual basis for Plaintiffs' damages allegations, Plaintiffs said Defendants would have to wait for expert analysis.[1]

Plaintiffs have now disclosed their expert damages analysis in the form of a report by Thomas McGuire.  But McGuire's opinions do not support Plaintiffs' allegations.  His report identifies no instance of Plaintiffs spending money "far exceeding their budgets."  In fact, McGuire does not assess whether Plaintiffs spent *a single dollar* that they would not have spent absent Defendants' allegedly wrongful conduct.  McGuire instead calculates "opportunity costs," identifying every dollar purportedly spent on opioid-related activities as a "cost consequence"— regardless of whether the Counties would have spent those dollars any differently absent Defendants' conduct.  McGuire thus fails to identify any damages at all, let alone damages

---

[1]  *See, e.g.*, Cuyahoga Cty.'s Resps. and Objs. to Distributor Defs.' Third Set of Interrogs. 16–17 ("Plaintiff's investigation of its … damages … will be the subject of fully-supported and detailed expert witness opinion(s) ….") (attached as Ex. 5); Summit Cty.'s Resps. and Objs. to Distributor Defs.' Third Set of Interrogs. 15 (stating damages calculations "will be the subject of fully-supported and detailed expert witness opinion(s)") (attached as Ex. 6); Cuyahoga Cty.'s Second Supplemental Resps. and Objs. to Distributor Defs.' Interrog. No. 18 at 7 (objecting to damages interrogatory "as calling for an expert opinion that will be the subject of a fully-supported and detailed expert opinion(s)") (attached as Ex. 7); Summit Cty.'s Second Supplemental Resp. and Objs. to Distributor Defs.' Interrog. No. 18 at 6 (same) (attached as Ex. 8); Letter from Anthony J. Majestro to Special Master Cohen (Dec. 19, 2018) ("The calculation of Plaintiffs' claimed damages is a complex exercise.  To do so Plaintiffs and their attorneys have retained experts. …  The Plaintiffs do not have the capacity to provide these calculations absent expert testimony.") (attached as Ex. 9); Maggie Keenan Jan. 18, 2019 Dep. Tr. 133:11–19 (Cuyahoga County 30(b)(6) witness on damages testifying she could not explain basis for damages figures in interrogatory response because experts calculated the figure) (attached as Ex. 10).

attributable to Defendants' alleged misconduct, and his analyses are wholly irrelevant to the calculation of damages in this case.  This Court should therefore exclude McGuire from testifying on the topic of damages.

This Court should preclude McGuire from testifying about damages for a second, independent reason:  his calculations of "opportunity costs" are not reliable because they depend entirely on his and his consultants' subjective, non-replicable "judgments" about whether certain County expenses are fixed or variable.

## I.    BACKGROUND

### A.    McGuire's Experience Testifying about Damages

McGuire is a health economist, not an accountant, but parties have occasionally identified him as an expert on damages-related topics.  At least two courts have criticized his damages opinions.  The Seventh Circuit held that "no reasonable jury could estimate the plaintiff's damages" from McGuire's report because there was "no evidence" supporting one of his key assumptions and because he failed to account for factors other than the defendant's allegedly wrongful conduct that may have affected the plaintiffs' costs.  *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 594 (7th Cir. 1998).  And the Northern District of Alabama excluded certain of McGuire's opinions because they were "not based on reliable principles and methods."  *United States ex rel. George v. Fresenius Med. Care Holdings, Inc.*, 2016 WL 5361666, at *10–11 (N.D. Ala. Sept. 26, 2016).  As discussed below, McGuire's damages opinions in this case suffer from the same failures—they do not fit the issue of damages and are unreliable because, among other things, they rely on unjustified assumptions.

### B.    McGuire's Damages Report in This Case

McGuire's report purports to identify the "cost consequences of harms to the [Cuyahoga and Summit County] governments due to defendants' misconduct."  Expert Report of Thomas

McGuire: Damages to Bellwethers 4 (attached as Ex. 1).  However, he did not attempt to review County documents to identify expenditures specifically dedicated to addressing opioid-related harms.  Instead, McGuire calculates "cost consequences" by purporting to identify County expenditures "that are 'variable' in that they could move up or down as the composition of services provided by each relevant division changes."  Ex. 1 at 7.  McGuire labels these "variable" costs "affected costs."  *Id.*  He identified "affected costs" principally by looking at County budget and expenditure documents, reading the names of each expenditure line item, and using his "judgment" to determine whether it was variable.  McGuire Dep. Tr. 119:3–18 (attached as Ex. 2).  Sometimes, McGuire conferred with consultants at Compass Lexecon to make the determination.  *Id.* at 117:20–118:6.  McGuire testified he "believe[s]" the consultants sought to confirm "some" of these determinations with County officials.  *Id.* at 119:19–123:14.  McGuire never spoke to County officials himself and he does not know which officials the consultants spoke to, which classifications the consultants confirmed, or whether any notes of any such conversations exist. *Id.* at 82:16–83:18; 86:16–88:21, 91:3–93:13, 123:6–16.

To translate his "affected costs" into "damages," McGuire relies on the report of Plaintiffs' expert David Cutler, who in turn relies upon the report of Plaintiffs' expert Meredith Rosenthal. Ex. 1 at 10–11.  McGuire multiplies his "affected costs" by Cutler's percentage "share of harms attributable to defendants' misconduct" (which Cutler calculates using two approaches); Cutler's "defendants' misconduct" figures incorporate Rosenthal's calculations that purport to identify the share of prescription opioid shipments attributable to marketing (not misconduct) by opioid manufacturers.[2]  *Id.*  McGuire opines that the total damages number for Cuyahoga and Summit

---

[2]     Defendants seek exclusion of Cutler's and Rosenthal's testimony in separate motions that discuss their methodologies—and their flaws—in more detail.  If the Court excludes Cutler's or Rosenthal's testimony, then McGuire's testimony necessarily should be excluded as well.

Counties, from 2006 to 2018, is either $194.4 or $223.4 million, depending on which of Cutler's two approaches he relies upon.  *Id.* at 7.

## II.    McGUIRE SHOULD BE PRECLUDED FROM OFFERING HIS CALCULATION OF SO-CALLED "DAMAGES"

### A.    McGuire's Calculations Do Not "Fit" the Issue of Damages Because He Does Not Measure Damages.

An expert witness's knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), which means the expert's proposed testimony "must 'fit' the facts of the case."  *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).  Plaintiffs offer McGuire as an expert on "damages," but he identifies and measures what he calls "opportunity costs."  While McGuire labels these "opportunity costs" as "damages" on instruction of counsel, Ex. 1 at 4, they bear no relationship to recoverable damages.

According to McGuire, "A fundamental principal [*sic*] of economics is that the cost of a resource is its value in its next best alternative."  Ex. 1 at 16.  In economics, this concept is called "opportunity cost."  *Id.* at 16 n.26.  Under McGuire's theory, "[i]f a sheriff's deputy spends an hour responding to an opioid overdose," the "opportunity cost" is the "the deputy's compensation (including wages and benefits) spent on that [hour of] opioid related activity."  *Id.* at 16.

McGuire opines that the Counties incur "opportunity costs" even though they do not spend more as a result of Defendants' allegedly wrongful conduct than they would have but for such conduct.  According to McGuire, if a sheriff has an eight-hour work day and spends one hour per day on opioid-related issues, then one-eighth of the sheriff's compensation is the "opportunity cost" of working on opioid-related issues—even though the County's spending on the sheriff is fixed and does not change based on how he spends his time.  *See id.*  McGuire further contends that this share of the sheriff's compensation is "damages" even if the sheriff has "excess capacity" in his workday, and thus the one hour spent on opioid-related issues otherwise would have been

4

spent merely awaiting criminal incidents.  *See id.* at 19–20.  McGuire also opines that if the Department of Children and Family Services initiates opioid-related investigations and placements that "occupy 20 percent of staff time," then 20% of the compensation paid to those staff is "damages"—even if the County's spending on the staff does not increase.  *Id.* at 17.  This is so even if the Department is still able to initiate all necessary non-opioid-related investigations and placements and there is merely a "decrease in the quality of" those non-opioid-related services. *See id.*

Thus, under McGuire's theory, the Counties incur "damages" even if employee compensation was fixed before or without regard to the opioid problem, even if no employee works a single hour of overtime, even if the Counties do not hire a single additional employee, and ***even if the Counties do not spend a single dollar more than they would have spent absent their opioid-related needs***.[3]  McGuire's theory rests on the assumption that if the County is providing some opioid-related service, then it is not providing another service (or is providing another service at reduced quality)—and that the County is harmed by not providing the other service.  But McGuire does not identify any services that were not provided because the Counties were providing opioid-related services,[4] nor does he explain how the non-provision of non-opioid-related services caused any harm to the Counties, or how any such harm can be quantified.

Also under McGuire's theory, the Counties' "opportunity costs" are equivalent to the

---

[3]    Indeed, "70%" of McGuire's total "affected costs" "are salaries, which are almost universally regarded as fixed expenses."  Expert Report of Matthew G. Bialecki 151 (attached as Ex. 4)

[4]    McGuire claims that there is "evidence that … resources redirection has occurred in the Bellwether governments as a result of the opioid crisis," citing only the deposition of a 30(b)(6) witness for Summit County for support.  Ex. 1 at 17.  But that witness identified only a certain number of projects from which "focus," not money, was diverted.  Greta Johnson Dep. Tr. 197:21–203:16 (attached as Ex. 13). McGuire cites no evidence of diverted resources in Cuyahoga County at all, nor does he attempt to identify *any* dollars—let alone the hundreds of millions of dollars he calls "damages"—that would have been spent differently absent Defendants' conduct.

expenditures made to address opioid-related harms, regardless of the factors influencing those expenditures. McGuire's response to a hypothetical shows that his "opportunity cost" concept does not did not consider whether expenditures reflect the harms allegedly suffered:

> Q. I have a car and it's damaged. I take it to a shop, and I get a $75 estimate. … I have a friend who works at another shop, and he says he can do the work for a hundred dollars to repair the same damage. … So I spend a hundred dollars to get the car repaired. … Is my opportunity cost $75 or a hundred dollars … ?
>
> A. … The opportunity cost of those funds is a question about what else could have been done with the money with respect to other things your household could have purchased. And the answer to that is, you would have had a hundred dollars had you not purchased the car repair from the friend. So $100.

Ex. 2 at 513:17–515:7. Because McGuire's "opportunity cost" theory looks only at the money expended on an activity, he did not consider whether the Counties "allocated their resources to the most highly valued use when they allocated their budget dollars" or whether expenditures were affected by political considerations or corruption. Ex. 2. at 263:8–265:10, 271:7–275:1.

McGuire's "opportunity costs" are wholly inconsistent with the legal definition of damages, both as a matter of Ohio law and under this Court's interpretation of the federal RICO statute. They are unlike legal damages in key respects.

### 1. McGuire's "opportunity costs" reflect expenses the Counties would have incurred even absent Defendants' allegedly wrongful conduct.

Numerous Ohio cases establish that plaintiffs cannot recover for expenses they would have incurred absent defendants' wrongdoing. For example, in *City of Youngstown v. Cities Service Oil Company*, several city employees were injured while fighting a fire allegedly caused by an oil company's tortious and ordinance-violating conduct. 31 N.E.2d 876, 877–78 (Ohio Ct. App. 1940). The city sued "by reason of the fact that the city paid salaries of firemen and fire officers who were injured in the fire during the time they were unable to perform their duties." *Id.* at 878. The court held that the city did not suffer a cognizable injury. "The evidence clearly discloses that

6

the city did not procure the services of other firemen or fire officers during the period the injured firemen and fire officers were disabled by reason of this fire; hence the city paid no more for salaries that it would have paid if these men had not been injured." *Id.*  Similarly, in cases in which utilities have sued defendants that negligently damaged utility poles, Ohio courts have held that utilities may recover "direct expenses," but may not recover "salaries and expenses [that] would have been paid if the defendant had not broken the pole."  *Ohio Edison Co. v. Soule*, 2018 WL 6016743, at *4 (Ohio Ct. App. Nov. 16, 2018) (quoting *Ohio Power Co. v. Huff*, 231 N.E.2d 897, 903 (Canton, Ohio Mun. Ct. 1967)); *accord Dayton Power & Light Co. v. Puterbaugh*, 1980 WL 352693, at *4 (Ohio Ct. App. Mar. 7, 1980).

Ohio law thus prohibits the Counties from recovering expenses that they would have incurred in the absence of Defendants' allegedly wrongful conduct.  Nevertheless, McGuire admits that he included such expenses in his "damages" calculations. Ex. 1 at 15–18; Ex. 2 at 312:14–316:18.  Because McGuire's "damages" calculations include costs not recoverable under Ohio law, he fails to provide a reasonable estimate of recoverable damages.  Under Ohio law, a plaintiff must "provide a reasonable estimate of recoverable damages." *Estie Inv. Co. v. Braff*, 2018 WL 5433223, at *5 (Ohio Ct. App. Oct. 29, 2018).  But where "some of the claimed damage contained within the global estimate are not recoverable, and [plaintiff] only produce[s] a global cost … , it fail[s] to provide a reasonable estimate of recoverable damages."  *Id.*

As for those expenses that the Counties may have a basis to recover as damages—expenses that the Counties would not have incurred absent Defendants' conduct—McGuire cannot say whether such expenses exist at all (much less their amounts).  When asked at deposition "whether the pie chart that reflects spending is bigger because of the opioid crisis," McGuire responded only that "[*s*]*ome* budgets of *some* divisions *may have* been increased due to the opioid crisis."  Ex. 2

at 316:12–14.  Moreover, fact testimony in this case establishes that any such expenses fall far short of McGuire's damages calculations.  For example, a Summit County 30(b)(6) witness was asked whether the County had created any new positions because of the opioid problem; he identified just a handful of County-funded positions, all but one of which were funded for the first time in 2018.[5]  There is no relationship between McGuire's calculations and the expenses that the Counties would not have incurred absent Defendants' conduct.  McGuire's calculations thus fail to satisfy the Counties' obligation to "show [their] entitlement to damages in an amount ascertainable with reasonable certainty," and do not fit the issue of damages.  *Kavalec v. Ohio Express, Inc.*, 71 N.E.3d 660, 669 (Ohio Ct. App. 2016); *see Marshfield Clinic*, 152 F.3d at 594.

### 2.    McGuire's "opportunity costs" do not reflect injury to the Counties.

McGuire's report posits that the "opportunity costs" to the Counties are their "reduc[ed] ability to provide other services and/or reduc[ed] … quality of other services."  Ex. 1 at 9, *see also id.* at 17.  But *City of Youngstown* makes clear that these "opportunity costs" are not cognizable injuries as a matter of law.  31 N.E.2d at 878–79; *cf. Firwood Mfg. Co. v. Gen. Tire, Inc.*, 96 F.3d 163, 171 (6th Cir. 1996) (holding opportunity costs not cognizable in breach of contract action under Michigan law).  Nor would it make sense to treat them as such.  While some courts have recognized that there are similarities between opportunity costs and legal damages, a plaintiff seeking "opportunity cost" damages must prove (1) it "gave up" something as a result of defendants' wrongful conduct and (2) what it gave up "was something of value."  *Chronister Oil Co. v. Unocal Ref. & Mktg.*, 34 F.3d 462, 465 (7th Cir. 1994).  Here, there is no proof that the Counties "gave up" anything.  McGuire has not attempted to identify the services that the Counties were not able to provide or to measure the quality of the Counties' services to determine whether

---

[5]    Brian Nelsen Jan. 24, 2019 Dep. Tr. 157:15–176:16 (attached as Ex. 14).

8

the quality of services was actually impaired.  Ex. 2 at 334:19–377:19, 473:6–488:25.[6]  Even if there were such proof, abandoned or diminished services would not have "value" to the Counties. Where, as here, there is no proof that the activity the plaintiff "gave up" would have put it in a better financial position, it has not suffered a legal injury.  *Chronister Oil*, 34 F.3d at 465; *see City of Youngstown*, 31 N.E.2d at 878–79.  McGuire does not quantify how the Counties would have financially benefitted by providing different services.[7]

### 3. McGuire's "opportunity costs" do not meet this Court's articulated standard for RICO damages.

On the issue of damages recoverable under the Counties' federal RICO claim, this Court stated in December 2018 that the Counties "cannot recover ordinary costs of services provided in their capacity as a sovereign."  Dkt. 1203 at 19.  Rather, this Court found that, "under the broadest reading of Sixth Circuit precedent," the Counties may recover "costs [that] go beyond the ordinary cost of providing [governmental] services and are attributable to the alleged injurious conduct of Defendants."  *Id.* at 19–20.  But McGuire made no attempt to "find the dollars that Summit County or Cuyahoga County spent in excess of their budgets because of the defendants' conduct."  Ex. 2 at 326:22–327:4.  Nor did he try to determine the "typical or ordinary" costs incurred by the Counties.  *Id.* at 327:5–16.[8]

### 4. McGuire's calculations do not relate to any Defendant's alleged

---

[6] In fact, the evidence shows that, between 2012 and 2017, the County divisions that McGuire discusses spent $148 million less than had been budgeted, indicating that the Counties did not "give up" anything. Ex. 4 at 149–50.

[7] The evidence shows that Defendants' allegedly wrongful conduct did not affect the Counties' financial position at all because the Counties' spending was largely fixed (in that it was devoted to compensation of existing employees).  Ex. 4 at 151.

[8] This Court also noted that the Counties could "recover in RICO for the costs associated with doing business in the marketplace," such as when they are "overcharged in commercial transactions."  Dkt. 1203 at 19–20.  McGuire made no attempt to calculate these costs either.  Ex. 2 at 327:17–331:2.

**misconduct.**

McGuire's calculations are also irrelevant to the assessment of damages because McGuire has not offered an opinion on the amount of damages attributable to any Defendant's alleged misconduct.  The only "damages" calculations offered by McGuire expressly derive from Meredith Rosenthal's estimates of the share of prescription opioid shipments allegedly due to manufacturer marketing.  Ex. 1 at 10.[9]  As explained in the motion to exclude Rosenthal's testimony,[10] Rosenthal unjustifiably assumes that all manufacturer marketing is unlawful and fails to distinguish between lawful and unlawful marketing.   Because McGuire relies on Rosenthal's figures, he fails to measure damages resulting from purportedly ***unlawful*** manufacturer conduct—and his calculations therefore do not fit the issue of damages.  *See Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp*., 582 F.3d 1227, 1232–35 (11th Cir. 2009); *Callahan v. Massey*, 1984 WL 3452, at *3 (Ohio Ct. App. Oct. 29, 1984).

McGuire does not offer an opinion at all on what "damages" are attributable to Distributors' and Pharmacy Defendants' alleged misconduct.   At his deposition, McGuire repeatedly affirmed that the only "damages" he calculated were those identified in the body of his report, which derive from Rosenthal's estimates.  Ex. 2 at 318:21–319:7, 593:9–595:8.  While McGuire's report does include an appendix captioned "Appendix IV.F:  Damages Due to Distributor Misconduct," McGuire explained that the appendix is merely an "illustration of how the methodology could be applied to a different question."  Ex. 2 at 599:16–21.  Indeed, McGuire

---

[9]    While McGuire states that Rosenthal estimates shipments due to "defendants' misconduct," Rosenthal's own report contradicts that characterization.  Expert Report of Meredith Rosenthal 5 ("In this Report, I refer to the manufacturers' deceptive marketing strategy and tactics as 'manufacturer misconduct.'  This report does not address non-marketing misconduct.") (attached as Ex. 11); *see also* Rosenthal Dep. Tr. 746:23–751:8 (confirming report does not analyze the impact of any Distributor or Pharmacy conduct) (attached as Ex. 12).

[10]   Mem. in Supp. of Defs.' Mot. to Exclude Meredith Rosenthal's Ops. and Testimony at 5–6.

could not even identify what Distributor conduct the Appendix IV.F calculation was based on.  *Id.* at 599:23–600:1.  McGuire simply took certain percentages from Table III.J of David Cutler's report.  *Id.* at 601:2–602:2.  Cutler, in turn, testified that he received those percentages from counsel.  David Cutler Apr. 27, 2019 Dep. Tr. 594:11–595:3 (attached as Ex. 3).  No expert has endorsed these percentages, identified their source, or explained how they were derived.

*     *     *

McGuire's analysis does not "fit" the issue of damages.  He does not identify cognizable damages under Ohio law or under the federal RICO statute.  Nor does he identify damages attributable to any Defendant.  His "damages" testimony should therefore be excluded.

### B.    McGuire's Calculations Are Not Reliable.

The principal "analysis" in McGuire's damages report is the identification of "affected costs," which are "costs that are 'variable' in that they could move up or down as the composition of services provided by each relevant division changes."  Ex. 1 at 7.  This step is critical because McGuire takes the "affected costs" number for each County division and multiplies it by percentages separately calculated by Cutler.  Thus, if McGuire's identification of "affected costs" is unreliable, then his ultimate opinion on "damages" is necessarily unreliable as well.  McGuire's identification of "affected costs" is in fact unreliable in key respects.

### 1.    McGuire's methodology for identifying "affected costs" is not objective or testable.

McGuire's determination of "affected costs" fails to meet the *Daubert* reliability factors, including because his "technique … can[not] be … tested in some objective sense" and is subject to no "standards."  *United States v. Reynolds*, 626 F. App'x 610, 614 (6th Cir. 2015).  Instead of using objective standards, McGuire relies on his own "judgments," for which he cannot identify any guiding criteria.  McGuire described his process as:  "I examine these budget documents, some

11

of which were in Excel, some of which were hard copies, and made a judgment about where some of these things would go, and then, you know, worked with my team and gathered further information and made a final decision."  Ex. 2 at 293:10–17.  When asked what criteria guided the decisions, McGuire answered, "Well, I think it's a reasonable process.  Publications, fixed.  Equipment, fixed.  Data processing, fixed.  Research project equipment, fixed.  Anything like miscellaneous, I'm not going to throw it into the variable category."  *Id.* at 293:24–294:5.

McGuire made clear at the deposition that his determinations relied on his subjective judgment both as a general matter and in specific applications.  When asked to explain how he approaches workers' compensation costs, McGuire testified,

> A.  Well, … it would probably depend on the division and whether I thought it was likely that the workers' comp costs were part of what workers might be exposed to in the normal course of their work.
>
> Q.  That's the criteria you would use?
>
> A.  That's the criteria I would use.

Ex. 2 at 360:24–361:6.  McGuire's own thought as to whether it is "likely" that various types of employees would be injured in the course of their jobs is the type of subjective opinion that Rule 702 prohibits.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993) ("the word 'knowledge' connotes more than subjective belief or unsupported speculation"); *see also Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010) (excluding opinion because "it is no more than a hypothesis, and it thus is not 'knowledge'"); *Chem. Solvents, Inc. v. Advantage Eng'g, Inc.*, 2011 WL 1326034, at *8 (N.D. Ohio Apr. 6, 2011) (rejecting opinion that "seems to rely upon [the expert's] own conclusions and 'common-sense'").[11]

---

[11]  McGuire does not explain how his expertise in economics permits him to understand two counties' expenditures throughout a 12-year period, which encompass thousands of independent expenditure and job categories.  *See* Ex. 1 at Appendix IV.C.  It is plain that McGuire merely exercised his own subjective "judgment" to determine, based on short titles/descriptions in expenditure data, whether an

While McGuire's opinions are ultimately based on his own "judgment," they were influenced by conversations that he had with consultants at Compass Lexecon, who he believes in turn had some conversations with County officials about some number of costs.  McGuire's reliance on these conversations does not render his opinions reliable.  He was unable to identify which expenditures Compass Lexecon discussed with County officials.  Ex. 2 at 123:4–16.  He testified that he does not know which local officials were consulted or who at Compass Lexecon told him what the local officials said.  Ex. 2 at 80:3–81:13, 86:10–87:22, 91:3–93:13.  He further explained that Compass Lexecon did not present a "list" to the County officials for confirmation.  According to McGuire, "It wasn't as mechanical as that. …  [I]t's not mechanical, but general confirmation with officials in the local jurisdictions."  *Id.* at 120:3–123:14.  Not only has McGuire failed to describe any standards guiding this "general confirmation," but it is not verifiable, not refutable, and not testable, rendering it unreliable.  *See Daubert*, 509 U.S. at 593.

### 2. McGuire's "opportunity costs" approach rests on unjustified assumptions.

As McGuire's response to the car-repair hypothetical makes clear, his "opportunity cost" concept purports to capture the entirety of the Counties' expenditures on opioid-related activities without accounting for whether the expenditures were efficient or reasonable.  McGuire simply assumes, without studying the Counties' budgeting processes, that the Counties allocate resources efficiently and reasonably.  McGuire attempts to justify this assumption by invoking "the view that governments allocate resources across its [*sic*] activities to maximize the welfare of its [*sic*] citizens."  Ex. 1 at 14.  But, as the expert report of Matthew Bialecki points out, the very source

---

expenditure seemed like it could vary based on the mix of services provided by the division.  Because McGuire's conclusions "draw nothing from his purported expertise," they "are properly barred."  *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 1993 WL 387346, at *2 (N.D. Ill. Sept. 23, 1993).

that McGuire cites for this so-called "view"—John Mikesell's *Fiscal Administration* textbook—squarely refutes McGuire's claim.  Mikesell contends that "legislators at all levels of government seek to bring government business to their own constituencies, often with minimal regard to whether that is the most efficient way of delivering services to the public as a whole," and that "irrational choices will be made [by governments], resources will be misallocated, and scams will be implemented."  Ex. 4 at 148.  McGuire again cites Mikesell as support for his claim that "[t]he cost to a government of spending on one service is measured by the spending on that service, since that spending could have been devoted to other uses."  Ex. 1 at 15.  But Mikesell—who McGuire testified is "authoritative" on this issue, Ex. 2 at 260:16–261:3—rejects the notion that governments as a rule allocate resources efficiently.  *See* Ex. 4 at 147.

Moreover, even if McGuire had a valid theoretical basis for his assumption, he would still need to validate that the principle holds under the facts of this case.  *Pride*, 218 F.3d at 578 (experts' failure to "validate their hypotheses by reference to generally accepted scientific principles ***as applied to the facts of this case***" rendered them inadmissible).  McGuire makes no attempt whatsoever to validate his assumption that the Counties in fact allocated expenditures efficiently.  McGuire testified that there was no need for him to consider whether expenditures were inefficient—including whether any divisions ever had excess capacity or whether political considerations or corruption influenced expenditures.  Ex. 2 at 254:23–255:5, 271:7–275:1. Without considering these factors, he cannot show that a County expenditure imposed an opportunity cost on the County, let alone that the measure of the opportunity cost is the amount of the expenditure.  These failures constitute an independent basis for excluding his testimony.

## CONCLUSION

This Court should preclude McGuire from testifying concerning damages.

14

Dated:  June 28, 2019                    Respectfully submitted,

                                         /s/ Mark S. Cheffo
                                         Mark S. Cheffo
                                         DECHERT LLP
                                         Three Bryant Park
                                         1095 Avenue of the Americas
                                         New York, NY 10036
                                         Tel: (212) 698-3500
                                         Mark.Cheffo@dechert.com

                                         *Counsel for Defendants Purdue Pharma L.P.,
                                         Purdue Pharma Inc., and The Purdue Frederick
                                         Company*

                                         *Co-Liaison Counsel for the Manufacturer
                                         Defendants*[12]


                                         /s/ Carole S. Rendon
                                         Carole S. Rendon
                                         BAKER & HOSTETLER LLP
                                         Key Tower 127 Public Square, Suite 2000
                                         Cleveland, OH 44114-1214
                                         Telephone: (216) 621- 0200
                                         Fax: (216) 696-0740
                                         crendon@bakerlaw.com

                                         *Counsel for Defendants Endo Health Solutions Inc.
                                         and Endo Pharmaceuticals Inc.; Par
                                         Pharmaceutical, Inc., and Par Pharmaceutical
                                         Companies, Inc.*

                                         *Co-Liaison Counsel for the Manufacturer
                                         Defendants*

---

[12]  Teva Pharmaceutical Industries Ltd., Allergan plc, and Mallinckrodt plc are respectively an Israeli corporation, Irish holding company, and Irish company that are not subject to and contest personal jurisdiction for the reasons explained in their pending motions to dismiss for lack of personal jurisdiction; they are specially appearing to join this motion as a result of the Court's deadline to file dispositive and *Daubert* motions, and, thus, they do not waive and expressly preserve their pending personal jurisdiction challenges.

/s/ Enu Mainigi
WILLIAMS & CONNOLLY LLP
Enu Mainigi
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com

*Counsel for Defendant Cardinal Health, Inc.*

*Co-Liaison Counsel for the Distributor Defendants*


/s/ Shannon E. McClure
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone:  (215) 851-8100
Fax: (215) 851-1420
smcclure@reedsmith.com

*Counsel for Distributor Defendant
AmerisourceBergen Drug Corporation*

*Co-Liaison Counsel for the Distributor Defendants*


/s/ Geoffrey Hobart
Geoffrey Hobart
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
Telephone: (202) 662-5281
ghobart@cov.com

*Counsel for Distributor Defendant
McKesson Corporation*

*Co-Liaison Counsel for the Distributor Defendants*

16

*/s/ Kaspar Stoffelmayr*
Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4434
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for the Walgreens Defendants*

*Liaison Counsel for the Chain Pharmacy Defendants*

17

**CERTIFICATE OF SERVICE**

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the

Court's ECF system to all counsel of record.


/s/ Ashley W. Hardin_____
Ashley W. Hardin