# EXHIBIT 4

```
  1              UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
  2                     EASTERN DIVISION
  3   IN RE: NATIONAL            )   MDL No. 2804
      PRESCRIPTION OPIATE        )
  4   LITIGATION                 )   Case No.
                                 )   1:17-MD-2804
  5                              )
      THIS DOCUMENT RELATES TO   )   Hon. Dan A.
  6   ALL CASES                  )   Polster
                                 )
  7
  8
  9                      — — —
 10              Monday, May 13, 2019
                         — — —
 11
         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
 12                CONFIDENTIALITY REVIEW
                         — — —
 13
 14
 15
 16         Videotaped Deposition of JAMES E.
      RAFALSKI, held at Weitz & Luxenburg PC, 3011
 17   West Grand Avenue, Suite 2150, Detroit,
      Michigan, commencing at 9:20 a.m., on the
 18   above date, before Michael E. Miller, Fellow
      of the Academy of Professional Reporters,
 19   Registered Diplomate Reporter, Certified
      Realtime Reporter and Notary Public.
 20
 21
 22
                         — — —
 23
              GOLKOW LITIGATION SERVICES
 24      877.370.3377 ph | fax 917.591.5672
                   deps@golkow.com
 25
```

Golkow Litigation Services                                Page 1

```
 1   A P P E A R A N C E S:
 2       MCHUGH FULLER LAW GROUP
         BY:  MICHAEL J. FULLER, ESQUIRE
 3            mike@mchughfuller.com
              ALLAN "AJ" ELKINS, JR., ESQUIRE
 4            aj@mchughfuller.com
              AMY QUEZON, ESQUIRE
 5            amy@mchughfuller.com
         97 Elias Whiddon Road
 6       Hattiesburg, Mississippi 39402
         (601) 261-2220
 7       Counsel for MDL Plaintiffs
 8
 9       BRANSTETTER STRANCH & JENNINGS PLLC
         BY:  TRICIA HERZFELD, ESQUIRE
10            triciah@bsjfirm.com@bsjfirm.com
         223 Rosa L. Parks Boulevard
11       Suite 200
         Nashville, Tennessee 37203
12       (615) 254-8801
         Counsel for Tennessee Plaintiffs
13
14       REED SMITH LLP
         BY:  ROBERT A. NICHOLAS, ESQUIRE
15            rnicholas@reedsmith.com
              ABIGAIL M. PIERCE, ESQUIRE
16            abigail.pierce@reedsmith.com
         1717 Arch Street
17       Suite 3100
         Philadelphia, Pennsylvania 19103
18       (215) 851-8100
         Counsel for AmerisourceBergen Drug
19       Corporation
20
         WILLIAMS & CONNOLLY LLP
21       BY:  STEVEN M. PYSER, ESQUIRE
              spyser@wc.com
22            BRAD MASTERS, ESQUIRE
              bmasters@wc.com
23       725 Twelfth Street, N.W.
         Washington, D.C. 20005
24       (202) 434-5000
         Counsel for Cardinal Health Inc.
25
```

```
 1     A P P E A R A N C E S:
 2        JONES DAY
          BY:  NEAL J. STEPHENS, ESQUIRE
 3             nstephens@jonesday.com
          1755 Embarcadero Road
 4        Palo Alto, California 94303
          (650) 739-3939
 5        Counsel for Walmart Corporation
 6
 7        ROPES & GRAY LLP
          BY:  ANDREW O'CONNOR, ESQUIRE
 8             andrew.o'connor@ropesgray.com
               WILLIAM DAVISON, ESQUIRE
 9             william.davison@ropesgray.com
          Prudential Tower
10        800 Boylston Street
          Boston, Massachusetts 02199
11        (617) 951-7000
          Counsel for Mallinckrodt Pharmaceuticals
12
13        COVINGTON & BURLING LLP
          BY:  CHRISTOPHER K. EPPICH, ESQUIRE
14             ceppich@cov.com
          1999 Avenue of the Stars
15        Los Angeles, California 90067
          (424) 332-4800
16        Counsel for McKesson Corporation
17
18        COVINGTON & BURLING LLP
          BY:  MEGHAN MONAGHAN, ESQUIRE
19             mmonaghan@cov.com
          One City Center
20        850 Tenth Street, N.W.
          Washington, D.C. 20001
21        (202) 662-6000
          Counsel for McKesson Corporation
22
23
24
25
```

```
 1     A P P E A R A N C E S:
 2         LOCKE LORD LLP
           BY:   C. SCOTT JONES, ESQUIRE
 3               sjones@lockelord.com
           2200 Ross Avenue
 4         Suite 2800
           Dallas, Texas 75201
 5         (214) 740-8000
           Counsel for Henry Schein, Inc. and
 6         Henry Schein Medical Systems, Inc.
 7
 8         FOLEY & LARDNER LLP
           BY:   JAMES W. MATTHEWS, ESQUIRE
 9               jmatthews@foley.com
           111 Huntington Avenue
10         Boston, Massachusetts 02199
           (617) 342-4000
11         Counsel for Anda Inc.
12
13         ARNOLD & PORTER KAYE SCHOLER LLP
           BY:   DAVID D. FAUVRE, ESQUIRE
14               david.fauvre@arnoldporter.com
           601 Massachusetts Avenue, N.W.
15         Washington, D.C. 20001
           (202) 942-5000
16         Counsel for Endo Health Solutions
           Inc., Endo Pharmaceuticals Inc., Par
17         Pharmaceutical, Inc. and Par
           Pharmaceutical Companies, Inc.
18
19         KIRKLAND & ELLIS LLP
           BY:   ERICA B. ZOLNER, ESQUIRE
20               erica.zolner@kirkland.com
                 KAITLYN L. COVERSTONE, ESQUIRE
21               kaitlyn.coverstone@kirkland.com
           300 North LaSalle
22         Chicago, Illinois 60654
           (312) 862-2000
23         Counsel for Allergan Finance LLC
24
25
```

```
 1     A P P E A R A N C E S:
 2           MORGAN LEWIS & BOCKIUS LLP
             BY:   MAUREEN K. BARBER, ESQUIRE
 3                 maureen.barber@morganlewis.com
             One Oxford Centre
 4           Thirty-Second Floor
             Pittsburgh, Pennsylvania 15219
 5           (412) 560-3300
             Counsel for Teva Pharmaceuticals
 6           USA Inc., Cephalon Inc., Watson
             Laboratories Inc., Actavis LLC, and
 7           Actavis Pharma Inc. f/k/a Watson
             Pharma Inc.
 8
 9           ZUCKERMAN SPAEDER LLP
             BY:   GRAEME W. BUSH, ESQUIRE
10                 gbush@zuckerman.com
                   PAUL B. HYNES, JR., ESQUIRE
11                 phynes@zuckerman.com
                   (via teleconference)
12           1800 M Street, N.W.
             Suite 1000
13           Washington, D.C. 20036
             (202) 778-1800
14           Counsel for CVS Indiana LLC and
             CVS Rx Services Inc.
15
16           DECHERT LLP
             BY:   ERIK W. SNAPP, ESQUIRE
17                 erik.snapp@dechert.com
             35 West Wacker Drive
18           Suite 3400
             Chicago, Illinois 60601
19           (312) 646-5800
             Counsel for Purdue Pharma
20
21           O'MELVENY & MYERS LLP
             BY:   AMY R. LUCAS, ESQUIRE
22                 alucas@omm.com
             1999 Avenue of the Stars
23           8th Floor
             Los Angeles, California 90067
24           (213) 430-6000
             Counsel for Janssen Pharmaceuticals Inc.
25
```

```
 1     A P P E A R A N C E S:
 2         MARCUS & SHAPIRA LLP
           BY:  JOSHUA A. KORBIN, ESQUIRE
 3              korbin@marcus-shapira.com
           One Oxford Centre
 4         35th Floor
           Pittsburgh, Pennsylvania 15219
 5         (412) 471-3490
           Counsel for HBC Services
 6
 7
           BARTLIT BECK LLP
 8         BY:  KATHERINE M. SWIFT, ESQUIRE
                katherine.swift@bartlit-beck.com
 9         54 West Hubbard Street
           Suite 300
10         Chicago, Illinois 60654
           (312) 494-4400
11         Counsel for Walgreens Company
12
13         BARNES & THORNBURG LLP
           BY:  WILLIAM LEEDER, ESQUIRE
14              bill.leeder@btlaw.com
           171 Monroe Avenue, N.W.
15         Suite 1000
           Grand Rapids, Michigan 49503
16         (616) 742-3930
           Counsel for H.D. Smith
17
18         CAVITCH FAMILO & DURKIN CO. L.P.A.
           BY:  ERIC J. WEISS, ESQUIRE
19              eweiss@cavitch.com
                (via teleconference)
20         1300 East 9th Street
           Cleveland, Ohio 44114
21         (216) 621-7860
           Counsel for Discount Drug Mart
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    A P P E A R A N C E S:
 2        FOX ROTHSCHILD LLP
          BY:   STEPHAN A. CORNELL, ESQUIRE
 3              scornell@foxrothschild.com
                (via teleconference)
 4        2700 Kelly Road
          Suite 300
 5        Warrington, Pennsylvania 18976
          (215) 345-7500
 6        Counsel for Prescription Supply Inc.
 7
 8        MORGAN LEWIS & BOCKIUS LLP
          BY:   CAROLYN A. SILANE, ESQUIRE
 9              carolyn.silane@morganlewis.com
                (via teleconference)
10        101 Park Avenue
          New York, New York 10178
11        (212) 309-6000
          Counsel for Rite Aid
12
13    VIDEOGRAPHER:
14        David Lane,
          Golkow Litigation Services
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                        INDEX
 2
         APPEARANCES                              2
 3
         PROCEEDINGS                             11
 4
 5
         EXAMINATION OF JAMES E. RAFALSKI:
 6
              BY MR. NICHOLAS                    14
 7
              BY MR. PYSER                      242
 8
              BY MR. EPPICH                     333
 9
              BY MR. JONES                      387
10
11
         CERTIFICATE                            406
12
         ERRATA                                 408
13
         ACKNOWLEDGMENT OF DEPONENT             409
14
         LAWYER'S NOTES                         410
15
16
17
18
19
20
21
22
23
24
25
```

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | (May 13, 2019 at 9:20 a.m.) |
| 3 | (The following proceedings were |
| 4 | conducted off the videotaped record.) |
| 5 | MR. NICHOLAS: Before we get |
| 6 | started, Mr. Fuller, counsel for |
| 7 | plaintiffs, just handed me a Touhy |
| 8 | authorization letter that's dated |
| 9 | April 12th of 2019. This is the first |
| 10 | we've seen it. I'm going to proceed |
| 11 | with the deposition. |
| 12 | I will reserve our right to |
| 13 | come back if there's anything about |
| 14 | our receipt of this or something in |
| 15 | the letter that requires us to come |
| 16 | back and ask more questions since |
| 17 | we're seeing it for the first time, |
| 18 | and that's what I wanted to say. |
| 19 | MR. FULLER: Sure. And we'll |
| 20 | put on the record that as everyone |
| 21 | here knows, Mr. Rafalski is a former |
| 22 | DEA agent, therefore Touhy |
| 23 | authorization would have to be |
| 24 | obtained, similarly to the 20 former |
| 25 | DEA employees that the defendants |

```
 1    requested Touhy clearance on before
 2    disclosing some of their expert
 3    reports.
 4         I've been asked to remind that
 5    the DEA wasn't noticed of this depo,
 6    even though he's a former agent, by
 7    the defense.  They weren't necessarily
 8    happy with that.  They asked for
 9    everybody to comply with the Touhy
10    authorization, which, similar to the
11    other authorizations in this case,
12    allows the witness to testify to --
13    well, a little different with Rafalski
14    because he's reviewed a lot of the
15    documents produced by all the
16    defendants, testified from the
17    discovery produced in this case and
18    anything nonprivileged as set out in
19    the Touhy authorization.
20         MR. NICHOLAS:  Okay.  There's
21    too many things to argue about in this
22    case to get into a big argument --
23         MR. FULLER:  Sure, sure.
24         MR. NICHOLAS:  -- but I will
25    just say that he's your retained
```

```
 1      expert.  You've had this letter for a
 2      month; you're just giving it to us
 3      today.
 4              So I don't get the part where
 5      the DEA -- if the DEA is unhappy,
 6      maybe they're unhappy with you guys,
 7      but they shouldn't be unhappy with us
 8      because he's your person.
 9              But like I said, we don't need
10      to spend any more time on it.
11              THE VIDEOGRAPHER:  Ready to
12      begin?
13              MR. NICHOLAS:  I am.
14              (Whereupon the videotaped
15      record begins.)
16              THE VIDEOGRAPHER:  We're now on
17      the record.  My name is David Lane,
18      videographer for Golkow Litigation
19      Services.  Today's date is May 13th,
20      2019.  Our time is 9:22 a.m.
21              This deposition is taking place
22      in Detroit, Michigan in the matter of
23      National Prescription Opiate
24      Litigation.  Our deponent today is
25      James E. Rafalski.
```

```
 1              Counsel will be noted on the
 2         stenographic record.  Our court
 3         reporter is Mike Miller, and he will
 4         now swear in the witness.
 5                 JAMES E. RAFALSKI,
 6            having been duly sworn,
 7            testified as follows:
 8                     EXAMINATION
 9   BY MR. NICHOLAS:
10        Q.   Good morning, Mr. Rafalski.  My
11   name is Bob Nicholas.  I represent
12   AmerisourceBergen.  I'm here to ask you
13   questions in connection with the MDL opioid
14   litigation and specifically the Track 1 and
15   Track 2 -- just the Track 1 cases that are
16   currently scheduled to go to trial in
17   October.
18        A.   Good morning, sir.
19        Q.   Good morning.
20             You are here as a retained
21   expert on behalf of the Track 1 plaintiffs in
22   this case; is that right?
23        A.   Yes, sir, I am.
24        Q.   Okay.  And you are being paid
25   for your time?
```

```
 1        A.    I think so.
 2        Q.    Okay.
 3        A.    Maybe a few more, but I did not
 4   read the full deposition.
 5        Q.    Okay.  Thank you for all that.
 6        A.    Yep, you're welcome, sir.
 7        Q.    I apologize for taking so much
 8   time on this background stuff, but someone's
 9   got to do it.
10        A.    I understand.
11        Q.    Are you familiar with the
12   regulation that discusses suspicious orders,
13   regulation 1301.74, subpart (b)?
14        A.    Yes, sir.
15        Q.    All right.  And does that
16   regulation define suspicious orders?
17        A.    I think the regulation itself
18   is a broad regulation and, I think, for a
19   good purpose.  I think it gives some guidance
20   on a suspicious order, but I think the actual
21   full definition is up to the registrant,
22   depending on a lot of factors; the scope of
23   their business and the scope of those
24   customers that receive products from them.
25              So I think -- I know there's a
```

```
 1    lot of criticism about the -- or there's some
 2    criticism about the regulation.  I think it's
 3    a perfect regulation for industry to adhere a
 4    specific program to.
 5         Q.   The regulation defines
 6    suspicious orders as orders of unusual size,
 7    orders deviating substantially from a normal
 8    pattern, and orders of unusual frequency; is
 9    that correct?
10         A.   Well, that is what the
11    regulation says, but -- but I'm not so sure I
12    agree if you're saying the word "defines"
13    says that suspicious orders could only be
14    those things.
15              I think that's up to the
16    registrant to -- because there could be other
17    factors where a suspicious order could be
18    identified other than those three parameters.
19         Q.   Does the order tell the
20    registrant what is meant by an order of
21    unusual size?
22              MR. FULLER:  Form.
23         A.   No, I think that's up for the
24    registrant to define based on their
25    application of their maintenance of effective
```

```
 1    controls.  You know, that question has come
 2    up before.  I think the important thing first
 3    for a company or a registrant is define what
 4    "usual" is, and that would be their due
 5    diligence and their maintenance of effective
 6    controls.
 7              Many companies focus on trying
 8    to define an unusual order when they don't
 9    sufficiently understand what a usual order is
10    in regards to what kind of business they're
11    operating and the scope of their business.
12              MR. FULLER:  Bob, and not to
13         pick on your flow, but your last
14         question was does the order tell the
15         registrant.
16              MR. NICHOLAS:  Oh, my mistake.
17              MR. FULLER:  That's why I
18         objected.
19              MR. NICHOLAS:  I appreciate it.
20         Well, then I appreciate it.
21              MR. FULLER:  But Rafalski still
22         answered it.
23              MR. NICHOLAS:  That's fine.
24              THE WITNESS:  I thought I had
25         to.
```

```
 1         A.     I think I stated that in my
 2   previous answer.  Of this regulation or any
 3   regulation?
 4         Q.     This one.
 5         A.     No, I think the regulation is
 6   fine exactly as it stands.
 7         Q.     And would you continue to say
 8   that if you understood that both industry and
 9   people within the DEA have expressed
10   confusion about the meaning of the language?
11         A.     Well, I'm only speaking from my
12   experience and conducting my investigations
13   in dealing with registrants, and I guess
14   sometimes when I look at that regulation and
15   if I thought I had the role of being a
16   distributor or a manufacturer, I would want
17   it to be as nonrestrictive and broad as
18   possible to design the best system based on
19   the type of company that I had and the scope
20   of my business model and who my customers
21   were.
22                So I think changing the
23   regulation is a -- I hope that if it is
24   changed, that it takes that into
25   consideration because I don't really think
```

```
 1   there's a one-size-fits-all.
 2                I think there's some
 3   expectations of the regulation, but I hope
 4   that my experience, again -- I keep harkening
 5   back -- is that industry has always been
 6   asking for just what is a system and design
 7   it.  And that's not possible because there's
 8   so many different types of businesses and
 9   types of customers.  It's got to be tailored
10   to the company's business.
11        Q.    And the customers change, the
12   customers' businesses change, the hospitals
13   and the doctors change.  All that stuff is
14   constantly changing, correct?
15        A.    That's exactly my point.
16        Q.    Yeah.
17        A.    It's never a static industry.
18   The types of diversion change, the types of
19   drugs change, and to make a regulation that
20   would be very restrictive would probably
21   cause diversion.
22             MR. NICHOLAS:  We'll just do
23        one more segment here and then we can
24        break for lunch.
25             MR. FULLER:  Sure.
```

```
 1                    CERTIFICATE
 2              I, MICHAEL E. MILLER, Fellow of
    the Academy of Professional Reporters,
 3  Registered Diplomate Reporter, Certified
    Realtime Reporter, Certified Court Reporter
 4  and Notary Public, do hereby certify that
    prior to the commencement of the examination,
 5  JAMES E. RAFALSKI was duly sworn by me to
    testify to the truth, the whole truth and
 6  nothing but the truth.
 7              I DO FURTHER CERTIFY that the
    foregoing is a verbatim transcript of the
 8  testimony as taken stenographically by and
    before me at the time, place and on the date
 9  hereinbefore set forth, to the best of my
    ability.
10
                I DO FURTHER CERTIFY that pursuant
11  to FRCP Rule 30, signature of the witness was
    not requested by the witness or other party
12  before the conclusion of the deposition.
13              I DO FURTHER CERTIFY that I am
    neither a relative nor employee nor attorney
14  nor counsel of any of the parties to this
    action, and that I am neither a relative nor
15  employee of such attorney or counsel, and
    that I am not financially interested in the
16  action.
17
18  _____
    MICHAEL E. MILLER, FAPR, RDR, CRR
19  Fellow of the Academy of Professional Reporters
    NCRA Registered Diplomate Reporter
20  NCRA Certified Realtime Reporter
    Certified Court Reporter
21
    Notary Public
22  My Commission Expires:  7/9/2020
23  Dated: May 15, 2019
24
25
```