EXHIBIT 10

Highly Confidential - Subject to Further Confidentiality Review

1            UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF OHIO
2               EASTERN DIVISION

3  IN RE: NATIONAL        )  MDL No. 2804
   PRESCRIPTION OPIATE    )
4  LITIGATION          )  Case No.
                      )  1:17-MD-2804
5                      )
   THIS DOCUMENT RELATES TO  )  Hon. Dan A.
6  ALL CASES          )  Polster
                      )
7

8

9                —— —— ——
10          Tuesday, May 14, 2019

                —— —— ——
11

    HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
12         CONFIDENTIALITY REVIEW

                —— —— ——
13

14

15

16      Videotaped Deposition of JAMES E.
   RAFALSKI, VOLUME 2, held at Weitz &
17  Luxenburg PC, 3011 West Grand Avenue, Suite
   2150, Detroit, Michigan, commencing at
18  8:25 a.m., on the above date, before
   Michael E. Miller, Fellow of the Academy of
19  Professional Reporters, Registered Diplomate
   Reporter, Certified Realtime Reporter and
20  Notary Public.
21

22

23              —— —— ——
24      GOLKOW LITIGATION SERVICES
     877.370.3377 ph | fax 917.591.5672
25         deps@golkow.com

Highly Confidential - Subject to Further Confidentiality Review

```
 1     A P P E A R A N C E S:
 2         MCHUGH FULLER LAW GROUP
           BY:  MICHAEL J. FULLER, ESQUIRE
 3              mike@mchughfuller.com
                ALLAN "AJ" ELKINS, JR., ESQUIRE
 4              aj@mchughfuller.com
                AMY QUEZON, ESQUIRE
 5              amy@mchughfuller.com
           97 Elias Whiddon Road
 6         Hattiesburg, Mississippi 39402
           (601) 261-2220
 7         Counsel for MDL Plaintiffs
 8
 9         KELLER ROHRBACK LLP
           BY:  GARY A. GOTTO, ESQUIRE
10              ggotto@kellerrohrback.com
           3101 North Central Avenue
11         Suite 1400
           Phoenix, Arizona 85012
12         (602) 248-0088
           Counsel for MDL Plaintiffs
13
14         BRANSTETTER STRANCH & JENNINGS PLLC
           BY:  TRICIA HERZFELD, ESQUIRE
15              triciah@bsjfirm.com@bsjfirm.com
           223 Rosa L. Parks Boulevard
16         Suite 200
           Nashville, Tennessee 37203
17         (615) 254-8801
           Counsel for Tennessee Plaintiffs
18
19         REED SMITH LLP
           BY:  ABIGAIL M. PIERCE, ESQUIRE
20              abigail.pierce@reedsmith.com
           1717 Arch Street
21         Suite 3100
           Philadelphia, Pennsylvania 19103
22         (215) 851-8100
           Counsel for AmerisourceBergen Drug
23         Corporation
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1     A P P E A R A N C E S:
 2         WILLIAMS & CONNOLLY LLP
           BY:  STEVEN M. PYSER, ESQUIRE
 3              spyser@wc.com
                BRAD MASTERS, ESQUIRE
 4              bmasters@wc.com
           725 Twelfth Street, N.W.
 5         Washington, D.C. 20005
           (202) 434-5000
 6         Counsel for Cardinal Health Inc.
 7
 8         JONES DAY
           BY:  NEAL J. STEPHENS, ESQUIRE
 9              nstephens@jonesday.com
           1755 Embarcadero Road
10         Palo Alto, California 94303
           (650) 739-3939
11         Counsel for Walmart Corporation
12
13         ROPES & GRAY LLP
           BY:  ANDREW O'CONNOR, ESQUIRE
14              andrew.o'connor@ropesgray.com
                WILLIAM DAVISON, ESQUIRE
15              william.davison@ropesgray.com
           Prudential Tower
16         800 Boylston Street
           Boston, Massachusetts 02199
17         (617) 951-7000
           Counsel for Mallinckrodt Pharmaceuticals
18
19         COVINGTON & BURLING LLP
           BY:  CHRISTOPHER K. EPPICH, ESQUIRE
20              ceppich@cov.com
           1999 Avenue of the Stars
21         Los Angeles, California 90067
           (424) 332-4800
22         Counsel for McKesson Corporation
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1     A P P E A R A N C E S:
 2         COVINGTON & BURLING LLP
           BY:  MEGHAN MONAGHAN, ESQUIRE
 3             mmonaghan@cov.com
           One City Center
 4         850 Tenth Street, N.W.
           Washington, D.C. 20001
 5         (202) 662-6000
           Counsel for McKesson Corporation
 6
 7         LOCKE LORD LLP
           BY:  C. SCOTT JONES, ESQUIRE
 8             sjones@lockelord.com
           2200 Ross Avenue
 9         Suite 2800
           Dallas, Texas 75201
10         (214) 740-8000
           Counsel for Henry Schein, Inc. and
11         Henry Schein Medical Systems, Inc.
12
13         FOLEY & LARDNER LLP
           BY:  JAMES W. MATTHEWS, ESQUIRE
14             jmatthews@foley.com
           111 Huntington Avenue
15         Boston, Massachusetts 02199
           (617) 342-4000
16         Counsel for Anda Inc.
17
18         ARNOLD & PORTER KAYE SCHOLER LLP
           BY:  DAVID D. FAUVRE, ESQUIRE
19             david.fauvre@arnoldporter.com
           601 Massachusetts Avenue, N.W.
20         Washington, D.C. 20001
           (202) 942-5000
21         Counsel for Endo Health
           Solutions Inc., Endo
22         Pharmaceuticals Inc., Par
           Pharmaceutical, Inc. and Par
23         Pharmaceutical Companies, Inc.
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1     A P P E A R A N C E S:
 2         KIRKLAND & ELLIS LLP
           BY:  ERICA B. ZOLNER, ESQUIRE
 3              erica.zolner@kirkland.com
                KAITLYN L. COVERSTONE, ESQUIRE
 4              kaitlyn.coverstone@kirkland.com
           300 North LaSalle
 5         Chicago, Illinois 60654
           (312) 862-2000
 6         Counsel for Allergan Finance LLC
 7
 8         MORGAN LEWIS & BOCKIUS LLP
           BY:  MAUREEN K. BARBER, ESQUIRE
 9              maureen.barber@morganlewis.com
           One Oxford Centre
10         Thirty-Second Floor
           Pittsburgh, Pennsylvania 15219
11         (412) 560-3300
           Counsel for Teva Pharmaceuticals
12         USA Inc., Cephalon Inc., Watson
           Laboratories Inc., Actavis LLC, and
13         Actavis Pharma Inc. f/k/a Watson
           Pharma Inc.
14
15         ZUCKERMAN SPAEDER LLP
           BY:  GRAEME W. BUSH, ESQUIRE
16              gbush@zuckerman.com
                PAUL B. HYNES, JR., ESQUIRE
17              phynes@zuckerman.com
                (via teleconference)
18         1800 M Street, N.W.
           Suite 1000
19         Washington, D.C. 20036
           (202) 778-1800
20         Counsel for CVS Indiana LLC and
           CVS Rx Services Inc.
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1     A P P E A R A N C E S:
 2         DECHERT LLP
           BY:  ERIK W. SNAPP, ESQUIRE
 3              erik.snapp@dechert.com
           35 West Wacker Drive
 4         Suite 3400
           Chicago, Illinois 60601
 5         (312) 646-5800
           Counsel for Purdue Pharma
 6
 7         O'MELVENY & MYERS LLP
           BY:  AMY R. LUCAS, ESQUIRE
 8              alucas@omm.com
           1999 Avenue of the Stars
 9         8th Floor
           Los Angeles, California 90067
10         (213) 430-6000
           Counsel for Janssen Pharmaceuticals Inc.
11
12         MARCUS & SHAPIRA LLP
           BY:  JOSHUA A. KORBIN, ESQUIRE
13              korbin@marcus-shapira.com
           One Oxford Centre
14         35th Floor
           Pittsburgh, Pennsylvania 15219
15         (412) 471-3490
           Counsel for HBC Services
16
17         BARTLIT BECK HERMAN PALENCHAR &
           SCOTT LLP
18         BY:  KATHERINE M. SWIFT, ESQUIRE
                katherine.swift@bartlit-beck.com
19         54 West Hubbard Street
           Suite 300
20         Chicago, Illinois 60654
           (312) 494-4400
21         Counsel for Walgreens Company
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1     A P P E A R A N C E S:
 2         BARNES & THORNBURG LLP
           BY:   WILLIAM LEEDER, ESQUIRE
 3              bill.leeder@btlaw.com
           171 Monroe Avenue, N.W.
 4         Suite 1000
           Grand Rapids, Michigan 49503
 5         (616) 742-3930
           Counsel for H.D. Smith
 6
 7         CAVITCH FAMILO & DURKIN CO. L.P.A.
           BY:   ERIC J. WEISS, ESQUIRE
 8              eweiss@cavitch.com
                (via teleconference)
 9         1300 East 9th Street
           Cleveland, Ohio 44114
10         (216) 621-7860
           Counsel for Discount Drug Mart
11
12         FOX ROTHSCHILD LLP
           BY:   STEPHAN A. CORNELL, ESQUIRE
13              scornell@foxrothschild.com
                (via teleconference)
14         2700 Kelly Road
           Suite 300
15         Warrington, Pennsylvania 18976
           (215) 345-7500
16         Counsel for Prescription Supply Inc.
17
18         MORGAN LEWIS & BOCKIUS LLP
           BY:   CAROLYN A. SILANE, ESQUIRE
19              carolyn.silane@morganlewis.com
                (via teleconference)
20         101 Park Avenue
           New York, New York 10178
21         (212) 309-6000
           Counsel for Rite Aid
22
23     VIDEOGRAPHER:
24         David Lane,
           Golkow Litigation Services
25
```

Highly Confidential - Subject to Further Confidentiality Review

1
2

INDEX

APPEARANCES                                    412

3

PROCEEDINGS                                    421

4
5

EXAMINATION OF JAMES E. RAFALSKI:

6

        BY MS. SWIFT                          421

7

        BY MR. BUSH                           562

8

        BY MR. O'CONNOR                       630

9

        BY MS. LUCAS                          703

10

        BY MS. ZOLNER                         740

11

        BY MR. SNAPP                          776

12

        BY MR. FAUVRE                         794

13

        BY MS. BARBER                         810

14

        BY MR. FULLER                         829

15

        BY MR. MATTHEWS                       838

16
17

CERTIFICATE                                    842

18

ERRATA                                         845

19

ACKNOWLEDGMENT OF DEPONENT                     846

20

LAWYER'S NOTES                                 847

21
22
23
24
25

Highly Confidential - Subject to Further Confidentiality Review

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | (May 14, 2019 at 8:25 a.m.) |
| 3 | THE VIDEOGRAPHER:  We're now on |
| 4 | the record.  My name is David Lane, |
| 5 | videographer for Golkow Litigation |
| 6 | Services.  Today's date is May 14th, |
| 7 | 2019.  Our time is 8:25 a.m. |
| 8 | This deposition is taking place |
| 9 | in Detroit, Michigan in the matter of |
| 10 | National Prescription Opiate |
| 11 | Litigation.  Our deponent today is |
| 12 | James E. Rafalski.  Counsel will be |
| 13 | noted on the stenographic record. |
| 14 | Our court reporter today is |
| 15 | Mike Miller. |
| 16 | Mr. Rafalski, I just want to |
| 17 | remind you, you're still under oath |
| 18 | from yesterday. |
| 19 | THE WITNESS:  Yes, sir, I |
| 20 | understand.  Thank you. |
| 21 | EXAMINATION |
| 22 | BY MS. SWIFT: |
| 23 | Q.    Good morning, Mr. Rafalski. |
| 24 | A.    Good morning. |
| 25 | Q.    We met a moment ago.  My name |

1    what they distribute, but that doesn't mean

2    exclusively, just...

3         Q.    Fair enough.

4              So in that situation that you

5    described was the predominant situation, when

6    a manufacturer is selling to a distributor,

7    the distributor places an order with the

8    manufacturer in those circumstances, right?

9         A.    Yes, sir.

10        Q.    Okay.  And the manufacturer

11   ships product to the distributor?

12        A.    That's correct.

13        Q.    Now, in your report you

14   describe five suspicious order methodologies,

15   correct?

16        A.    I do.

17        Q.    But your report does not apply

18   any of those five methodologies to orders

19   submitted by distributors to manufacturers,

20   correct?

21        A.    That's correct.

22        Q.    And so your report doesn't

23   identify any orders received by a

24   manufacturer that were suspicious, correct?

25        A.    I don't think that it says

Highly Confidential - Subject to Further Confidentiality Review

1    that.    It's just that I wasn't tasked to

2    provide that methodology in regards to

3    manufacturers at this time.

4        Q.    I understand.  But your report

5    doesn't identify any suspicious orders that

6    were submitted by distributors to

7    manufacturers.

8        A.    My report would only identify

9    those orders that the manufacturers have

10    identified.  I don't make any independent

11    calculations or apply any algorithms to

12    identify it outside of what's in my report

13    stated as I've discovered as part of this

14    discovery.

15        Q.    Okay.  So other than the

16    reports that the manufacturers themselves

17    reported to DEA, you have not identified any

18    suspicious orders submitted by distributors

19    to manufacturers, correct?

20        A.    Can I ask a clarification?  Are

21    you talking about an individual order or are

22    you talking about conduct?

23        Q.    I'm talking about individual

24    orders.

25        A.    I have not done that as we sit

Highly Confidential - Subject to Further Confidentiality Review

1    here today, no, sir.

2          Q.    Okay.  So your report does not

3    identify any shipments by manufacturers to

4    distributors that you claim should have been

5    reported as suspicious?

6          A.    My opinion goes to whether or

7    not there were effective -- or suspicious

8    orders, effective suspicious order systems in

9    place and/or the maintenance of effective

10   controls, the due diligence.  I do not do any

11   calculations that would identify any specific

12   orders.

13         Q.    Okay.  So just to be clear, in

14   response to my question, your report does not

15   identify any shipments by manufacturers to

16   distributors that you claim should have been

17   reported as suspicious, correct?

18         A.    I think there's some instances

19   in my report, there was -- there may be a

20   description of a relationship or some

21   transactions between a -- let me think a

22   second.

23         Q.    Uh-huh.

24         A.    Because I have all of the

25   different companies.

Highly Confidential - Subject to Further Confidentiality Review

1          (Document review.)

2          A.     I don't believe so, no, sir.

3     BY MR. O'CONNOR:

4          Q.     Okay.  And at trial, do you

5     intend to offer any opinion regarding whether

6     any particular order submitted to a

7     manufacturer was suspicious?

8          A.     If I'm requested to do that

9     analysis by counsel, I guess that would be a

10    possibility.  I haven't done the analysis as

11    today, so I couldn't offer that opinion.

12         Q.     So as you sit here today, you

13    do not have an opinion on whether any

14    particular order that was shipped by a

15    manufacturer was suspicious?

16         A.     I think I have an opinion.

17         Q.     But you haven't identified any

18    order, correct?

19         A.     I have not identified a

20    specific order, but I have an opinion on the

21    conduct.

22         Q.     And are you offering any

23    opinion in this litigation that any

24    particular order that was shipped into Summit

25    or Cuyahoga Counties was suspicious?

Highly Confidential - Subject to Further Confidentiality Review

1    Q.    What are we doing here?  Are

2    you saying that you're doing something

3    here -- you reviewed SOPs for this report,

4    correct?

5    A.    Yeah, but not in the capacity

6    as a diversion investigator.

7    Q.    Are you saying that you're

8    doing something in this report that you would

9    not have done as a diversion investigator?

10    MR. FULLER:  Object to form.

11    That wasn't the question you asked.

12    A.    No, I think you're asking me to

13    comment on my actions that I would conduct at

14    a registrant's location as a diversion

15    investigator, and I'm not sure that that

16    conduct would be readily available, unless I

17    misunderstood your question.

18    BY MS. LUCAS:

19    Q.    I'm not -- I just want a yes or

20    no, whether it's common for DEA investigators

21    to ask for SOPs during a regulatory

22    investigation.

23    A.    I don't -- I don't know.

24    Q.    In your experience.

25    A.    I don't know what's common for

```
 1      all diversion investigators, so I don't know.
 2           Q.      Fair.  In your experience?
 3           A.      Yes.
 4           Q.      Now, during these regulatory
 5      investigations, if the DEA in your experience
 6      had concerns about a manufacturer's
 7      suspicious order monitoring program that they
 8      observed during the inspection, the DEA would
 9      raise those concerns with the registrant,
10      right?
11                   MR. FULLER:  Object to form.
12                   Again, it goes to DEA's policy
13           on investigations and their position
14           and what they raise and what they
15           don't raise, so I would say that's
16           outside of your Touhy authorization,
17           Mr. Rafalski.
18                   THE WITNESS:  I'd agree with
19           that.  I'm not going to answer based
20           on the Touhy letter.
21      BY MS. LUCAS:
22           Q.      You can't tell me whether in
23      your experience if there were concerns about
24      a suspicious order monitoring program that
25      you observed during a regulatory
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              A.      Yes, or the nonabuse rates.

 2              Q.      The geographic location or

 3      where they're being sold?

 4              A.      Yes.

 5              Q.      The sales volume in that

 6      geography?

 7              A.      That could be another factor,

 8      yes, ma'am.

 9              Q.      All right.  I'm going to ask

10      you some quick yes or nos and then I need to

11      pass the witness while reserving my rights

12      since I have many, many more questions for

13      you.

14                      Do you know how many customers

15      Janssen had during the time it sold

16      Duragesic?

17              A.      No, I do not.

18              Q.      Do you know how many customers

19      Janssen had during the time it sold Nucynta?

20              A.      I have not evaluated that

21      information as far as the ARCOS, so, no, I do

22      not at this time.

23              Q.      Do you know how many orders per

24      month Janssen received from its customers for

25      Duragesic?
```

Highly Confidential - Subject to Further Confidentiality Review

1          A.      No, I do not at this time.

2          Q.      Do you know how many orders per

3   month Janssen received from its customers for

4   Nucynta?

5          A.      No, I do not, not at this time.

6          Q.      Do you know Janssen's market

7   share for its opioid medications sold in the

8   Track 1 jurisdictions?

9          A.      No, I do not at this time.

10         Q.      Do you know the rates of

11  diversion for Duragesic or Nucynta in the

12  Track 1 jurisdictions?

13         A.      I'm not sure there's any

14  analysis or information available to give any

15  concise rate of diversion of any drug.

16         Q.      So is that a no?

17         A.      I think that's a no.

18         Q.      Do you know how many shipments

19  of Duragesic Janssen flagged through its

20  algorithm and investigated as potentially

21  suspicious?

22         A.      Janssen's never reported a

23  suspicious order to the DEA.

24         Q.      My question was different.

25         A.      Oh, I'm sorry.  Misunderstood

Highly Confidential - Subject to Further Confidentiality Review

1    it then.

2         Q.    Do you know how many shipments

3    of Duragesic Janssen's algorithm flagged and

4    Janssen subsequently investigated before

5    releasing?

6         A.    I do not.

7         Q.    Do you know how many shipments

8    of Nucynta Janssen flagged as potentially

9    suspicious and investigated before releasing?

10        A.    I didn't do that type of

11   analysis up to today on that, on the data in

12   regards to those products and that

13   registrant.

14        Q.    Yes or no, did you know that

15   Janssen has reported a physician to the DEA

16   based on a sales representative's tip?

17        A.    I have not reviewed a document

18   that had indicated that to me, no, ma'am.

19        Q.    Do you know of any instance in

20   the Track 1 jurisdictions of Duragesic being

21   diverted?

22        A.    At this time, no, ma'am.

23        Q.    Do you know of any instance in

24   the Track 1 jurisdictions of Nucynta being

25   diverted?

Highly Confidential - Subject to Further Confidentiality Review

1       A.      At this time, no, ma'am.

2       Q.      Do you know how many

3   inspection -- or strike that.

4               Do you know how many regulatory

5   investigations Janssen -- strike that again.

6               Do you know how many DEA

7   regulatory investigations of Janssen

8   distribution centers were conducted during

9   the relevant time period in this case?

10      A.      I do not because that

11  information would not be available to me.

12      Q.      Are you aware, yes or no, that

13  the DEA conducted multiple regulatory

14  investigations of Janssen using at least 14

15  different DEA diversion investigators since

16  2008?

17      A.      Were those regulatory

18  investigations that -- I'm sorry, with your

19  question --

20      Q.      Were you aware of --

21      A.      Could you answer --

22      Q.      Well, let me --

23      A.      Could you restate that for me?

24  Just whether it was inspections or regulatory

25  investigations, I just need clarification.

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    CERTIFICATE
 2            I, MICHAEL E. MILLER, Fellow of
      the Academy of Professional Reporters,
 3    Registered Diplomate Reporter, Certified
      Realtime Reporter, Certified Court Reporter
 4    and Notary Public, do hereby certify that
      prior to the commencement of the examination,
 5    JAMES E. RAFALSKI was duly sworn by me to
      testify to the truth, the whole truth and
 6    nothing but the truth.
 7            I DO FURTHER CERTIFY that the
      foregoing is a verbatim transcript of the
 8    testimony as taken stenographically by and
      before me at the time, place and on the date
 9    hereinbefore set forth, to the best of my
      ability.
10
              I DO FURTHER CERTIFY that pursuant
11    to FRCP Rule 30, signature of the witness was
      not requested by the witness or other party
12    before the conclusion of the deposition.
13            I DO FURTHER CERTIFY that I am
      neither a relative nor employee nor attorney
14    nor counsel of any of the parties to this
      action, and that I am neither a relative nor
15    employee of such attorney or counsel, and
      that I am not financially interested in the
16    action.
17
18    _____
      MICHAEL E. MILLER, FAPR, RDR, CRR
19    Fellow of the Academy of Professional Reporters
      NCRA Registered Diplomate Reporter
20    NCRA Certified Realtime Reporter
      Certified Court Reporter
21
      Notary Public
22    My Commission Expires:  7/9/2020
23    Dated: May 15, 2019
24
25
```