EXHIBIT 20

```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
                      - - -

   IN RE:  NATIONAL            :   HON. DAN A.
   PRESCRIPTION OPIATE         :   POLSTER
   LITIGATION                  :
                               :
   APPLIES TO ALL CASES        :   NO.
                               :   1:17-MD-2804
                               :

              - HIGHLY CONFIDENTIAL -

   SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

                     VOLUME II
                       - - -
                   March 8, 2019
                       - - -

                Continued videotaped
   deposition of MICHELE R. DEMPSEY, taken
   pursuant to notice, was held at the law
   offices of Drinker Biddle & Reath, 105
   College Road East, Princeton, New Jersey,
   beginning at 10:15 a.m., on the above
   date, before Michelle L. Gray, a
   Registered Professional Reporter,
   Certified Shorthand Reporter, Certified
   Realtime Reporter, and Notary Public.

                       - - -

              GOLKOW LITIGATION SERVICES
         877.370.3377 ph | 917.591.5672 fax
                   deps@golkow.com
```

```
 1    APPEARANCES:
 2
      THE LANIER FIRM
 3    BY:   EVAN M. JANUSH, ESQ.
            IAN S. MILLICAN, ESQ.
 4    126 East 56th Street
      6th Floor
 5    New York, New York 10022
      (212) 421-2800
 6    evan.janush@lanierlawfirm.com
      ian.millican@lanierlawfirm.com
 7    Representing the Plaintiffs
 8
      O'MELVENY & MYERS, LLP
 9    BY:   JEFFREY A. BARKER, ESQ.
      610 Newport Center Drive
10    Newport Beach, California 92660
      (949) 823-79623
11    Jbarker@omm.com
12          - and -
13    O'MELVENY & MYERS, LLP
      BY:   EMILIE K. WINCKEL, ESQ.
14    1625 Eye Street, NW
      Washington, D.C. 20006
15    (202) 383-5300
      Ewinckel@omm.com
16    Representing the Defendants, Janssen
      and Johnson & Johnson and the
17    Witness
18
      PIETRAGALLO GORDON ALFANO BOSICK &
19    RASPANTI, LLP
      BY:   ELISA M. BOODY, ESQ.
20    1818 Market Street, Suite 3402
      Philadelphia, Pennsylvania 19103
21    (215) 320-6200
      emb@pietragallo.com
22    Representing the Defendant, Cardinal
      Health
23
24
```

```
 1          TELEPHONIC APPEARANCES:
 2
 3     DECHERT, LLP
       BY:  CAROLINE POWER, ESQ.
 4     2929 Arch Street
       Philadelphia, Pennsylvania 19104
 5     (215) 994-4000
       Caroline.power@dechert.com
 6     Representing the Defendant, Purdue
       Pharmaceuticals
 7
 8     JACKSON KELLY, PLLC
       BY:  SANDRA K. ZERRUSEN, ESQ.
 9     ANDREW N. SCHOCK, ESQ.
       50 South Main Street, Suite 201
10     Akron, Ohio 44308
       (330) 252-9060
11     skzerrusen@jacksonkelly.com
       anschock@jacksonkelly.com
12     Representing the Defendant,
       AmerisourceBergen
13
14     JONES DAY
       BY:  NICOLE LANGSTON, ESQ.
15     77 West Wacker Drive
       Chicago, Illinois 60601
16     (312) 269-4113
       Nlangston@jonesday.com
17     Representing the Defendant, Walmart
18
       MARCUS & SHAPIRA, LLP
19     BY:  RICHARD I. HALPERN, ESQ.
       One Oxford Centre, 35th Floor
20     Pittsburgh, Pennsylvania 15219
       (412) 338-3990
21     halpern@marcus-shapira.com
       Representing the Defendant, HBC
22     Service Company
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1      APPEARANCES:  (Cont'd.)
 2
        ROPES & GRAY LLP
 3      BY:  TORRYN M. TAYLOR, ESQ.
        Three Embarcadero Center
 4      San Francisco, California 94111
        (415) 315-6300
 5      Torryn.taylor@ropesgray.com
        Representing the Defendant,
 6      Mallinckrodt
 7
        BAILEY WYANT PLLC
 8      BY:  MICHAEL W. TAYLOR, ESQ.
        500 Virginia Street East
 9      Suite 600
        Charleston, West Virginia 25301
10      (304) 345-4222
        Mtaylor@baileywyant.com
11      Representing the Defendant, West
        Virginia Board of Pharmacy
12
13      ALSO PRESENT:
14
15      VIDEOTAPE TECHNICIAN:
16         Henry Marte
17
        John R. Santacruz   Law Clerk
18      (Ropes & Gray - via telephone)
19
20
21
22
23
24
```

```
 1                    - - -
 2                  I N D E X
 3                    - - -
 4
     Testimony of:
 5                        MICHELE R. DEMPSEY
 6
          By Mr. Janush            427, 736
 7
          By Mr. Barker                 579
 8
 9
10                    - - -
11                E X H I B I T S
12                    - - -
13
14   NO.            DESCRIPTION              PAGE
15   Janssen
     Dempsey-23     E-mail Thread            427
16                  4/13/18
                    Subject, Review
17                  Controlled Substance
                    Analytics
18                  JAN-MS-05444681-92
19   Janssen
     Dempsey-24     E-mail Thread            435
20                  6/8/18
                    Subject, Controlled
21                  Substances Project
                    JAN-MS-05444730-37
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
                    - - -
         E X H I B I T S  (Cont'd.)
                    - - -
```

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Janssen Dempsey-25 | Controlled Substances Suspicious Order Monitoring Program Questionnaire JAN-MS-02960654-19 | 446 |
| Janssen Dempsey-26 | Evaluation of the Suspicious Orders Monitoring System For J&J (Woodworth) JAN-MS-05444748-63 | 455 |
| Janssen Dempsey-27 | E-mail Thread 2/6/18 Subject, Question JAN-MS-05444648-65 | 489 |
| Janssen Dempsey-28 | E-mail Thread 2/16/18 Subject, Report Change JAN-MS-05444781-82 | 498 |
| Janssen Dempsey-29 | Evaluation of the Suspicious Monitoring System for J&J JAN-MS-0544783-98 | 500 |

```
 1                    - - -

 2           THE VIDEOGRAPHER:  We are

 3   now on the record.  My name is

 4   Henry Marte.  I'm a videographer

 5   with Golkow Litigation Services.

 6           Today's date is March 8,

 7   2019, and the time is 10:15 a.m.

 8           This videotaped deposition

 9   is being held in Princeton, New

10   Jersey, in the matter of National

11   Prescription Opiate Litigation.

12           This is Day 2 of the

13   deposition of Michele Dempsey.

14           All appearances are noted on

15   the stenographic record.

16           Will the court reporter

17   please re-administer the oath.

18                    - - -

19            ... MICHELE R. DEMPSEY,

20   having been first duly sworn, was

21   examined and testified as follows:

22                    - - -

23           CONTINUED EXAMINATION

24                    - - -
```

```
 1    BY MR. JANUSH:
 2         Q.    Hi, Ms. Dempsey.  How are
 3    you today?
 4         A.    Good.  Thank you.
 5         Q.    Thank you for appearing for
 6    Day 2 of your deposition.
 7               When we last broke at the
 8    conclusion of the January 22, first date
 9    of your deposition, we were talking about
10    the audit that had been performed of
11    your -- or Janssen's suspicious order
12    monitoring system.
13               Do you remember that?
14         A.    Yes.
15         Q.    And I'm going to mark a new
16    document as Dempsey Exhibit 23.
17               MR. JANUSH:  Copies to you,
18          your counsel.
19               (Document marked for
20          identification as Exhibit
21          Janssen-Dempsey-23.)
22               MR. BARKER:  Evan, just for
23          clarification, this is a
24          collective exhibit?  There are a
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   the HDMA conferences where they have a
 2   special track on compliance items like
 3   suspicious order monitoring where DEA
 4   speaks to distributors.
 5        Q.   What was your title when you
 6   took over responsibilities for Janssen's
 7   suspicious order monitoring?
 8        A.   Director of controlled
 9   substance compliance.
10        Q.   Okay.  And is that still
11   your title today?
12        A.   Yes.
13        Q.   I'd like to discuss the
14   evolution of the Janssen suspicious order
15   monitoring program in more detail.
16             When you first became
17   involved in Janssen's suspicious order
18   monitoring program, what was your
19   understanding as to when that program
20   came into being?
21        A.   I learned that the algorithm
22   that was currently being used was
23   implemented in 2006.
24        Q.   Okay.  And do you have an
```

Highly Confidential - Subject to Further Confidentiality Review

1  understanding as to whether there was a
2  program in place to monitor potentially
3  suspicious orders before that one?
4       A.   I was aware that in the
5  previous year there was a manual process.
6            MR. BARKER:  Okay.  Let's
7       mark as Exhibits 42-A, B, and C.
8            (Document marked for
9       identification as Exhibit
10      Janssen-Dempsey-42-A.
11           (Document marked for
12      identification as Exhibit
13      Janssen-Dempsey-42-B.
14           (Document marked for
15      identification as Exhibit
16      Janssen-Dempsey-42-C.)
17           MR. BARKER:  Documents that
18      begin with the Bates Numbers
19      JAN-MS-03741177 running through
20      41200.  42-B is JAN-MS-0374110
21      running through 76, and 42-C is
22      374 -- excuse me, JAN-MS-03741201
23      through 05.
24  BY MR. BARKER:

```
 1        A.    Yes.
 2        Q.    Did DEA give any specific
 3  advice relating to your suspicious order
 4  monitoring program, including whether
 5  there were any deficiencies or
 6  improvements that could be made?
 7        A.    No.  And if you look at the
 8  end, in closing.  He said no --
 9        Q.    You're saying the end.
10  Where are you looking?
11        A.    Page 4.
12        Q.    Page 4.  Okay.
13        A.    Closing.
14        Q.    So what is the -- what is
15  closing?  What are we talking about here?
16        A.    This is what Billy Lane
17  said.
18        Q.    Okay.  Billy Lane is one of
19  the two DEA agents?
20        A.    He was the lead inspector.
21        Q.    Okay.  So Mr. Lane told you
22  what?
23        A.    "No violations of the
24  C.F.R."  But he said the audit came out
```

```
 1   fine.
 2        Q.    Okay.  And again, as
 3   Mr. Janush pointed out multiple times
 4   before, the suspicious order monitoring
 5   regulations are in the C.F.R.s, correct?
 6        A.    Yes.
 7        Q.    And then let's go to the top
 8   of the next page too, please.  It also
 9   says, "No actions for their part."
10              Does that mean that there
11   were no violations or any other action
12   taken by the DEA?
13        A.    That Billy Lane said that
14   they were not taking any actions.
15        Q.    Okay.  And BL is Billy Lane?
16        A.    Yes.
17        Q.    Okay.  Did Billy Lane say
18   that he likes coming to facilities like
19   the Kentucky distribution center?
20        A.    He says that, "Overall likes
21   coming to places like this."
22        Q.    And did he have any comments
23   on your recordkeeping systems?
24        A.    We had -- we asked him how
```

```
 1          Q.    Got it.  So the subject
 2   line, although it says 28 January, 2014,
 3   it's actually 2015 --
 4          A.    Yes.
 5          Q.    -- as reflected in the body.
 6                Okay.  And at the top line
 7   it says, "The DEA just left, there were
 8   no observations."
 9                What does that tell you
10   about this particular inspection?
11                MR. JANUSH:  Objection.
12                MR. BARKER:  Strike that.
13   BY MR. BARKER:
14          Q.    Do you have an understanding
15   of what the result of the inspection was
16   on or about January 28th of 2015?
17          A.    As it's explained here, that
18   from the time period that they audited,
19   which was August 18, 2014, through that
20   January, all the documentation and all
21   the processes they reviewed, there was --
22   there were no observations.  Everything
23   was good.
24          Q.    Okay.  And if we go to Page
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   inspection that you were just looking at
 2   in Exhibit 50?
 3          A.    The dates match.
 4          Q.    And what was the result of
 5   that inspection by the New Jersey
 6   Newark -- strike that.
 7                What was the result of the
 8   inspection by the Newark, New Jersey
 9   office of the DEA at the Franklin
10   distribution center?
11          A.    There were zero
12   observations.
13          Q.    Okay.  You're seeing that
14   here?
15          A.    Yes.
16          Q.    And what does zero
17   observations mean?
18          A.    They did not find any
19   noncompliance during their audit of the
20   FDC.
21          Q.    When was the next inspection
22   that occurred of a Janssen facility that
23   you're aware of?
24          A.    I am guessing two years
```

```
 1          communicate that he had any
 2          response from DEA.
 3   BY MR. BARKER:
 4          Q.    Okay.  And certainly not
 5   part of his report, which we saw here in
 6   Exhibit 52, correct?
 7          A.    Right.
 8          Q.    The result of the inspection
 9   was what?
10          A.    Zero observations.
11          Q.    Zero observations.  Meaning
12   that they had no criticisms or
13   corrections for your distribution
14   facility, correct?
15          A.    Correct.
16          Q.    I'm going to mark as the
17   next exhibit a document beginning Bates
18   JAN-MS-03124010 going through 4011.
19          MR. BARKER:  We're marking
20          this as Exhibit 54.
21          (Document marked for
22          identification as Exhibit
23          Janssen-Dempsey-54.)
24   BY MR. BARKER:
```

```
 1   you for correcting me.  Who was the lead
 2   investigator?
 3           A.    B. Morgan Freeman.
 4           Q.    And who is the other
 5   investigator this time?
 6           A.    Jason Smith.
 7           Q.    The same one who had been
 8   there in 2013, right?
 9           A.    Yes.
10           Q.    Okay.  And so this was eight
11   days after the SOP had been provided by
12   Mr. Helfrick, as we saw in Exhibit 53,
13   correct?
14           A.    Correct.
15           Q.    He provided that on the
16   20th.  And now they are back on the 28th?
17           A.    Yes.
18           Q.    Were there any issues found
19   by the DEA in its follow-up inspection on
20   December 28th of 2017 at the Kentucky
21   distribution center?
22           A.    Going to the summary, there
23   were zero observations, no issues.
24           Q.    So again, they had no
```

```
 1   criticisms or comments on what they had
 2   been provided, correct?
 3          A.    Correct.
 4                MR. BARKER:  Next document
 5          that I'm going to provide you was
 6          one previously marked at your
 7          deposition as Exhibit 19.
 8   BY MR. BARKER:
 9          Q.    It begins with
10   JAN-MS-2987651, running through 7656.
11                Do you have Exhibit 19 in
12   front of you?
13          A.    Yes, I do.
14          Q.    Do you recall Mr. Janush
15   questioning you about this document?
16          A.    Yes, I do.
17          Q.    Okay.  So I want to direct
18   your attention to the second page of the
19   document.  And to the comment for DM-3.
20   Are you DM-3 for purposes of this
21   document?
22          A.    Yes.
23          Q.    How do you know that?
24          A.    It's Dempsey, Michele.  My
```

Highly Confidential - Subject to Further Confidentiality Review

1
2          CERTIFICATE
3
4
5          I HEREBY CERTIFY that the witness was duly sworn by me and that the
6    deposition is a true record of the testimony given by the witness.
7
           It was requested before
8    completion of the deposition that the witness, MICHELE R. DEMPSEY , have the
9    opportunity to read and sign the deposition transcript.
10
11    *[Signature: Michelle L. Gray]*

12    MICHELLE L. GRAY,
      A Registered Professional
13    Reporter, Certified Shorthand
      Reporter, Certified Realtime
14    Reporter and Notary Public
      Dated:  March 13, 2019
15
16
17          (The foregoing certification
18    of this transcript does not apply to any
19    reproduction of the same by any means,
20    unless under the direct control and/or
21    supervision of the certifying reporter.)
22
23
24