EXHIBIT 34

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF OHIO
 3                    EASTERN DIVISION
 4
 5              ~~~~~~~~~~~~~~~~~~~~~~
 6
 7   IN RE:   NATIONAL PRESCRIPTION    MDL No. 2804
     OPIATE LITIGATION
 8                                     Case No.
                                       17-md-2804
 9
                                       Judge Dan Aaron
10                                     Polster
11   This document relates to:
12   The County of Summit, Ohio, et al. v. Purdue
     Pharma L.P., et al.
13
     Case No. 18-OP-45090 (N.D. Ohio)
14
15
                 ~~~~~~~~~~~~~~~~~~~~~~
16
                  Videotaped Deposition of
17
                     KENNETH R. BALL II
18
                     November 7, 2018
19                      9:04 a.m.
20
21
                        Taken at:
22
                    Hilton Garden Inn
23               1307 East Market Street
                      Akron, Ohio
24
25           Stephen J. DeBacco, RPR
```

```
 1   APPEARANCES:
 2
          On behalf of the City of Akron, Summit
 3        County, and the Witness:
 4             Motley Rice LLC, by
               JAMES W. LEDLIE, ESQ.
 5             CAROLINE RION, ESQ.
               28 Bridgeside Boulevard
 6             Mt. Pleasant, South Carolina 29464
               (843) 216-9252
 7             jledlie@motleyrice.com
               (843) 216-9168
 8             crion@motleyrice.com
 9
          On behalf of McKesson Corporation:
10
               Covington & Burling, by
11             JENNIFER SAULINO, ESQ.
               One CityCenter
12             850 Tenth Street Northwest
               Washington, D.C. 20001-4956
13             (202) 662-5305
               jsaulino@cov.com
14
               -and-
15
               Covington & Burling, by
16             STEPHEN F. RAIOLA, ESQ.
               One CityCenter
17             850 Tenth Street Northwest
               Washington D.C., 20001-4956
18             202-662-5786
               sraiola@cov.com
19
                    ~ ~ ~ ~ ~
20
21
22
23
24
25
```

```
 1   APPEARANCES, Continued:
 2        On behalf of Johnson & Johnson and
          Janssen Pharmaceuticals, Inc.:
 3
                Tucker Ellis, LLP, by
 4              BRENDA A. SWEET, ESQ.
                950 North Main Avenue, Suite 1100
 5              Cleveland, Ohio 44113
                (216) 696-2493
 6              brenda.sweet@tuckerellis.com
 7
          On behalf of Endo Health Solutions, Inc.,
 8        and Endo Pharmaceuticals, Inc., via
          Teleconference:
 9
                Baker Hostetler, by
10              TERA N. COLEMAN, ESQ.
                Key Tower
11              127 Public Square, Suite 2000
                Cleveland, Ohio 44114-1214
12              (216) 861-7582
                tcoleman@bakerlaw.com
13
14        On behalf of Prescription Supply, Inc.:
15              Pelini, Campbell & Williams, by
                KRISTEN E. CAMPBELL TRAUB, ESQ.
16              Bretton Commons, Suite 400
                8040 Cleveland Avenue Northwest
17              North Canton, Ohio 44720
                (330) 305-6400
18              kec@pelini-law.com
19
          On behalf of Walmart, Inc.:
20
                Jones Day, by
21              LISA B. GATES, ESQ.
                901 Lakeside Avenue
22              Cleveland, Ohio 44114-1190
                (212) 586-7154
23              lgates@jonesday.com
24                      ~ ~ ~ ~ ~
25
```

```
 1   APPEARANCES, Continued:
 2        On behalf of Walgreens:
 3             Bartlit Beck LLP, by
               MATTHEW BREWER, ESQ.
 4             54 West Hubbard Street
               Chicago, Illinois 60654
 5             (312) 494-4432
               batthew.brewer@bartlitbeck.com
 6
 7        On behalf of Allergan Finance, LLC, via
          Veritext Virtual:
 8
               Kirkland & Ellis LLP, by
 9             TUCKER HUNTER, ESQ.
               300 North LaSalle
10             Chicago, Illinois 60654
               (312) 862-3758
11             tucker.hunter@kirkland.com
12
          On behalf of Cardinal Health, Inc.:
13
               Williams & Connolly LLP, by
14             MIRANDA PETERSEN, ESQ.
               725 12th Street Northwest
15             Washington, D.C. 20005
               (202) 434-5686
16             mpetersen@wc.com
17
          On behalf Endo Health Solutions, Inc.,
18        and Endo Pharmaceuticals, Inc.:
19             Arnold & Porter, by
               JOHN D. LOMBARDO, ESQ.
20             777 South Figueroa Street
               44th Floor
21             Los Angeles, California 90017-5844
               john.lombardo@arnoldporter.com
22
                       ~ ~ ~ ~ ~
23
24
25
```

Page 5

1  APPEARANCES, Continued:
2
         On behalf of AmerisourceBergen, via
3        Teleconference:
4            Reed Smith, LLP, by
             NICHOLAS R. RODRIGUEZ, ESQ.
5            Three Logan Square
             1717 Arch Street, Suite 3100
6            Philadelphia, Pennsylvania 19103
             (215) 241 7947
7            nrodriguez@reedsmith.com
8                ~ ~ ~ ~ ~
9
10 ALSO PRESENT:
11           Richard Hand, Morgan, Lewis &
             Bockius, via Teleconference
12
             Shaun Crum, Legal Videographer
13
                 ~ ~ ~ ~ ~
14
15
16
17
18
19
20
21
22
23
24
25

1    TRANSCRIPT INDEX
2
3    APPEARANCES................................    2
4
5    INDEX OF EXHIBITS .........................    7
6
7    EXAMINATION OF KENNETH R. BALL II
8    By Ms. Saulino.............................   15
9    By Mr. Lombardo............................  331
10   By Mr. Ledlie:.............................  368
11   By Ms. Saulino.............................  375
12
13   REPORTER'S CERTIFICATE.....................  385
14
15   EXHIBIT CUSTODY
16   EXHIBITS RETAINED BY THE COURT REPORTER
17
18
19
20
21
22
23
24
25

Page 127

1   the question.
2       A.   That could happen.
3       Q.   Okay.  So it's -- I think, as you
4   said, certainly plausible that individuals who
5   end up overdosing on an opioid never intended
6   to take one, right?
7            MR. LEDLIE:  Object to the form of
8   the question.
9       A.   That could be the case.
10      Q.   All right.  We've talked about the
11  opioid epidemic and your understanding of it.
12           Do you believe that Akron faces a
13  prescription opioid epidemic?
14           MR. LEDLIE:  Object to the form of
15  the question.
16      A.   I do.
17      Q.   And when did that prescription
18  opioid epidemic begin, in your opinion?
19      A.   I believe that it -- that it
20  started in -- like I had mentioned before, in
21  the late '90s when we started to see a
22  significant number of -- of reports and other
23  interactions that suggested that.
24                         -  -  -  -  -
25           (Thereupon, Deposition Exhibit 6,

Page 185

1  because they're computer-generated reports.
2      Q.   Do you recall discussing, with your
3  leadership at the time, that you were seeing
4  these increases?
5           MR. LEDLIE:  Object to the form of
6  the question.
7      A.   I don't recall specifically.  I do
8  know that there was a change in -- in awareness
9  about -- hadn't heard of OxyContin.  Hear of
10 OxyContin, and then start to see another
11 report, another report, another report, and,
12 you know, Percocet and some of the other
13 prescription medications, then, that were
14 frequently being reported as stolen or stolen,
15 it stood out.
16     Q.   Right. And I -- and I just want to
17 understand.  I know it stood out to you.  Are
18 you aware that it stood out to others as well?
19     A.   Through -- yes.  I mean, through
20 casual conversations that I wouldn't be able to
21 pinpoint, you know, "I spoke to Sergeant
22 Jones," you know, "on this date about it."
23 But, yes, there was ==a growing familiarity==
24 ==within the department that that was==
25 ==problematic.==

```
                                             Page 186
 1        Q.    Starting in the late 1990s?
 2        A.    I think so.
 3        Q.    Okay.  Have you ever sought a
 4   budget allowance specific to anything caused by
 5   opioids?
 6        A.    Can you restate that?
 7        Q.    Sure.  Have you ever -- have you
 8   ever asked for any kind of a specific budget
 9   allowance related to opioids in any way?
10              MR. LEDLIE:  Object to the form.
11        A.    No, other than people resources,
12   I've not had a financial request.
13        Q.    You say "other than people
14   resources."  Have you asked for specific people
15   resources related to opioids?
16        A.    Yes.
17        Q.    Tell me about that.
18        A.    The first two -- this wasn't me
19   asking at that point in time, but the -- the
20   first two detectives that were dedicated, they
21   were taking from our -- taken from our
22   narcotics or bid, in addition to our current --
23   the staffing at that time for narcotics, two
24   positions for opioid death investigations.
25              Then there was another point that
```