# EXHIBIT 2

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF OHIO
 2                        EASTERN DIVISION
 3
      IN RE: NATIONAL            )
 4    PRESCRIPTION               )  MDL No. 2804
      OPIATE LITIGATION          )
 5    _____     )  Case No.
                                 )  1:17-MD-2804
 6                               )
      THIS DOCUMENT RELATES      )  Hon. Dan A.
 7    TO ALL CASES               )  Polster
 8
                   WEDNESDAY, APRIL 24, 2019
 9
         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
10                  CONFIDENTIALITY REVIEW
11                           - - -
12            Videotaped deposition of Anna
13    Lembke, M.D., held at the offices of Lieff
14    Cabraser Heimann & Bernstein, LLP, 275
15    Battery Street, 29th floor, San Francisco,
16    California, commencing at 8:07 a.m., on the
17    above date, before Carrie A. Campbell,
18    Registered Diplomate Reporter and Certified
19    Realtime Reporter.
20
21
22                           - - -
23
                 GOLKOW LITIGATION SERVICES
24         877.370.3377 ph | 917.591.5672 fax
                     deps@golkow.com
25
```

```
 1                How does that -- how does the
 2     Gateway Effect play out in your mind from
 3     prescription to going out into a street
 4     dealer?
 5                MR. ARBITBLIT:  Object to form.
 6          Vague.  Compound.
 7                THE WITNESS:  An individual
 8          presents in a medical clinic with pain
 9          and is prescribed opioids by that
10          doctor.
11                The doctor has been misled by
12          false promotional statements on the
13          part of defendants to believe that
14          there are benefits to the use of
15          opioids used long term in the
16          treatment of pain, despite the absence
17          of evidence for that.  And that doctor
18          has also been told that the risks are
19          very small for addiction as long as
20          that individual is being prescribed
21          opioids for a pain condition.
22                So that well-intentioned and
23          compassionate doctor, who is trying to
24          do the right thing, will continue that
25          opioid prescription and even increase
```

```
 1                MR. ARBITBLIT:  Object to form.
 2                THE WITNESS:  I would agree
 3           that such a doctor is violating
 4           medical ethics, but I have also
 5           written and published on the problem
 6           of prescribing, and we have shown,
 7           using Medicare Part D data, that the
 8           increase in opioid prescribing in this
 9           country over the past three decades
10           was not primarily due to a small
11           subset of prolific prescribers or
12           so-called pill mill doctors, unethical
13           doctors, doctors who have lost their
14           moral compass.  Those types of doctors
15           have always existed and will always
16           exist.
17                In fact, the increase in opioid
18           prescribing in this country has been
19           primarily driven by all types of
20           doctors across all types of
21           specialties because of the major
22           paradigm shift in the use of opioids
23           for minor and chronic pain conditions
24           as a result of misrepresentation of
25           the evidence on the part of the
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1        defendants.
 2   QUESTIONS BY MR. TSAI:
 3        Q.    If a doctor in the counties was
 4   prescribing opioid medications purely for
 5   their personal profit, knowing that the
 6   individual they're providing opioids to did
 7   not have a legitimate pain condition, would
 8   you agree that doctor is committing a crime?
 9              MR. ARBITBLIT:  Object to form.
10              THE WITNESS:  I would agree
11        that that doctor is committing a
12        crime, but I think doctors like that
13        constitute a small subset of the
14        overall opioid prescriptions.
15   QUESTIONS BY MR. TSAI:
16        Q.    Okay.  Do you have a method of
17   assigning the degree to which doctors in
18   Cuyahoga and Summit Counties, in your words,
19   bear some responsibility for the
20   overprescribing of opioids for chronic pain
21   versus the contribution of any of the other
22   factors we've discussed today?
23              MR. ARBITBLIT:  Object to form.
24              THE WITNESS:  I believe that
25        the majority of opioid prescribers in
```

 1     Henry Schein, do you know if they're a
 2     defendant in this case?
 3          A.     I don't recall.
 4          Q.     Miami-Luken?
 5          A.     I don't recall.
 6          Q.     Anda?
 7          A.     I don't recall.
 8          Q.     Earlier today you said that you
 9     acknowledged the distributors' contribution
10     to the opioid epidemic; is that right?
11          A.     Yes.
12          Q.     Okay.  Are you prepared to
13     offer an opinion in this litigation
14     concerning the contribution of any
15     distributor to the opioid epidemic?
16          A.     It's my opinion -- it's my
17     understanding that other expert witnesses
18     will be offering testimony on distributors.
19     I've not been asked to offer testimony on
20     that.
21          Q.     Okay.  And so when you
22     referenced the pharmaceutical opioid industry
23     in your report, are distributor defendants
24     included in that insofar as -- strike all
25     that.

```
 1                You mentioned the
 2    pharmaceutical opioid industry in your
 3    report, and you told Mr. Lavelle that as you
 4    define that term, it includes manufacturers,
 5    distributors and pharmacies; is that right?
 6          A.    That's right.
 7          Q.    When you reference misleading
 8    or false marketing material and attribute it
 9    to the pharmaceutical opioid industry in your
10    report, are you referring to the distributors
11    that have been named as defendants in this
12    case?
13          A.    No.
14          Q.    And in preparing your report,
15    did you consider any documents that were
16    produced by a distributor that is named as a
17    defendant in this case?
18          A.    No.
19          Q.    Do you have any training or
20    expertise in supply chain management?
21          A.    No.
22          Q.    Do you have any training or
23    expertise in the distribution of controlled
24    substances?
25          A.    No.
```