# EXHIBIT 24

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF OHIO
 2                        EASTERN DIVISION

 3

      IN RE NATIONAL PRESCRIPTION   | MDL No. 2804
 4                                  |
      OPIATE LITIGATION             | Case No. 17-MD-2804
 5                                  |
      APPLIES TO ALL CASES          | Hon. Dan A. Polster
 6

 7                            - - -

 8                   Tuesday, April 23, 2019

 9                            - - -

10        HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER

11                   CONFIDENTIALITY REVIEW

12                            - - -

13

14

15         VIDEOTAPED DEPOSITION of MATTHEW PERRI, III,
      BS Pharm, Ph.D., RPh, held at Jones Day,
16    1420 Peachtree Street, N.E., Suite 800, Atlanta,
      Georgia, commencing at 9:28 a.m., on the above date,
17    before Susan D. Wasilewski, Registered Professional
      Reporter, Certified Realtime Reporter and Certified
18    Realtime Captioner.

19

20

21                            - - -

22               GOLKOW LITIGATION SERVICES

23          877.370.3377 ph | 917.591.5672 fax

24                   deps@golkow.com

25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                   CROSS-EXAMINATION
 2   BY MS. RODGERS:
 3      Q.   Good afternoon, Dr. Perri.  My name is Megan
 4   Rodgers.  We met before the deposition began this
 5   morning.  I'm with the law firm Covington & Burling,
 6   and I'm representing McKesson.
 7      A.   Okay.
 8      Q.   You're aware that there are several
 9   wholesale distributors in this case, right?
10      A.   Yes, I am.
11      Q.   Okay.  And when I use the phrase "wholesale
12   distributors," you understand I'm referring to
13   McKesson, AmerisourceBergen, and Cardinal, right?
14      A.   Are you limiting it to just those three?
15      Q.   Can we agree that I'm -- yeah.
16      A.   Okay.
17      Q.   I'm referring to those three.
18           Were you asked to consider whether you had
19   any opinions with respect to McKesson?
20      A.   With respect to McKesson by itself?
21      Q.   Yes.
22      A.   No.
23      Q.   Okay.  Were you asked to consider whether
24   you had any opinions with respect to Cardinal?
25      A.   Not -- none of the defendants independently.
```

```
 1    They're all -- the opinions are all based on a
 2    collective assessment.
 3        Q.   Okay.  So you have no opinions in this case
 4    regarding specifically McKesson?
 5        A.   None that are related to McKesson only.
 6        Q.   Okay.  And you have no opinions related
 7    specifically to Cardinal?
 8        A.   Same -- nothing is -- while the opinions
 9    apply to each of the wholesaler defendants, none of
10    the opinions are specifically singling them out as a
11    particular defendant regarding that opinion.
12        Q.   Okay.  And the same is true for
13    AmerisourceBergen?
14        A.   Yes.
15        Q.   Okay.  Were you asked to produce materials
16    produced by those wholesale distributors?
17        A.   So, yes, there were -- there were wholesale
18    documents -- wholesaler documents that were provided
19    to me, as well as some that I searched for in the
20    Relativity database.
21        Q.   Okay.  And what was the volume of the
22    materials that --
23        A.   The -- as I recall, the largest share of the
24    distributor documents were contracting documents
25    and, for example, documents specifying purchasing
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              MR. CHALOS:  Object to the form.
 2       A.   Yes, that's right.
 3       Q.   And that same position in the supply chain
 4   makes them integral to the distribution of insulin
 5   the same way that they're integral to the
 6   distribution of opioids?
 7              MR. CHALOS:  Object to the form.
 8       A.   That's true, yes.
 9       Q.   Okay.  And it's not your opinion, correct,
10   that the distributors are integral because of any
11   advertising that they did?
12              MR. CHALOS:  Object to the form.
13       A.   So the -- my assessment of the distributor
14   advertising that I refer to in the report is that,
15   as expected, the distributor advertising focused
16   primarily on price, quality, availability, special
17   deals, stocking, and incentive-type advertising.
18   And on -- only on rare occasion did it affect -- did
19   it -- did it require a package insert or any product
20   information to be distributed.
21              So the reason that I believe that
22   wholesalers are integral to that process is because
23   of that function and that they did communicate
24   messages that were important to know in the
25   marketplace; for example, which generic immediate
```

Highly Confidential - Subject to Further Confidentiality Review

 1   release oxycodone product can be purchased at the
 2   best price, so the pharmacy can function more
 3   efficiently, those kind of messages.
 4           I did not notice -- I did not see documents
 5   that the wholesale distributors distributed
 6   marketing messages beyond that, with few exceptions.
 7   For example, in one instance -- and I'd have to look
 8   in the report to get the specific details on this --
 9   a book was distributed through -- I believe it was
10   Cardinal.  And that book did carry with it unbranded
11   marketing messages.
12           So, again, the primary messages, the vast
13   majority of the messages were product, price,
14   availability, quality.  And then there were some
15   instances where it extended slightly beyond that in
16   distribution of information.
17      Q.   Okay.  And so when we talk about the bulk of
18   the -- what you refer to as advertising or the
19   provision of information about, you know, price and
20   product availability, when you look at what you're
21   saying in Paragraph 184 here and you talk about
22   distributors being integral to the defendants'
23   marketing of opioids, that's not what you're talking
24   about?  You're not talking about the provision of
25   information about price and availability, right?