# EXHIBIT 30

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 352

1              IN THE UNITED STATES DISTRICT COURT
2                   NORTHERN DISTRICT OF OHIO
3                       EASTERN DIVISION
4

                    ~~~~~~~~~~~~~~~~~~~~
5

6     IN RE:  NATIONAL PRESCRIPTION   MDL No. 2804
       OPIATE LITIGATION
7                                     Case No. 17-md-2804
8                                     Judge Dan Aaron
       This document relates to:     Polster
9

       The County of Cuyahoga v. Purdue
10     Pharma L.P., et al.
       Case No. 18-OP-45090
11

       City of Cleveland, Ohio v. Purdue
12     Pharma L.P., et al
       Case No. 18-OP-45132
13

       The County of Summit, Ohio, et al.
14     v. Purdue Pharma L.P., et al.
       Case No. 17-OP-45004
15

                    ~~~~~~~~~~~~~~~~~~~~
16

                         Volume III
17               Continued deposition of
                     PATRICK LEONARD
18

                       May 23, 2019
19                      8:01 a.m.
20

                        Taken at:
21                    Ulmer & Berne
             1660 W. 2nd Street, Suite 1100
22                   Cleveland, Ohio
23          Renee L. Pellegrino, RPR, CLR
24       THIS TRANSCRIPT HAS BEEN DEEMED HIGHLY
       CONFIDENTIAL, ATTORNEYS' EYES ONLY AND MAY BE
25       SUBJECT TO A PROTECTIVE ORDER OR OTHER
                      STIPULATIONS

Veritext Legal Solutions

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 366

1    for DEA and DOJ, have you spoken with anyone

2    about this case since last we saw you?

3         A.    No, sir.

4         Q.    How many investigations, sir, have

5    you worked on while assigned to the TDS?

6         A.    I have no idea.

7         Q.    Well, is it more than ten?

8         A.    Yes.

9         Q.    Is it more than a hundred?

10        A.    Doubtful, no.

11        Q.    It is more than 50?

12        A.    It could be close to 50.

13        Q.    And for how many of those were you

14   the lead agent?

15        A.    Maybe a third.

16        Q.    And who determines whether you're --

17   or how is it determined whether you're the lead

18   agent or an assisting agent on any particular

19   investigation?

20        A.    One is if I get the complaint, if I

21   start it and run with it.  Some of the ones that

22   I was the lead on were because they were City of

23   Akron cases that I charted and did through the

24   DEA, so those -- I would be lead on all of

25   those.  Or if referrals came from either Denise

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 393

1      Q.    And did you contact any distributors

2  of medications and say they shouldn't distribute

3  to pharmacies where Dr. Harper might be writing

4  prescriptions?

5      A.    ██████  █ ███  ███████████  █████

6  █████████████  ████  █████  ███  ███  ██  ████  ██████  █████

7  ████  ████  ██████  ██████  ████  █  █████  █████  ████  ███████

8  ███  █████  ████  ████  █████  █████  ██  █  ████████████

9  ████████████  ████  █  ███████████  ██████  ██████ ,

10  ██████  █████  █████  ██████  ████ ; if you think this is an

11  overprescribing physician, it's your name and

12  your reputation and your business that's going

13  to be liable.  And that was the extent of it.

14  Let them make the decision whether they felt it

15  was necessary or legal to fill the prescription.

16      Q.    Did a pharmacist ever ask you how

17  you define medical prescription for a legitimate

18  medical purpose?

19           MR. BENNETT:  Objection.  Scope.

20           You can answer.

21      A.    No.

22      Q.    How do you define legitimate medical

23  prescription for a legitimate medical purpose?

24           MR. BENNETT:  Objection.  Vague.

25  Scope.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 394

1             You can answer.

2        A.    Again, this is why we need a medical

3   expert when we do these cases, but when you're

4   writing for the holy trinity, and I've got

5   patients from offices that have died from

6   overdoses, I think common sense dictates on some

7   of it that some of the pharmacists should be

8   able to see what the prescriptions are and

9   refuse to fill.

10       Q.    I didn't follow writing for the holy

11  trinity.

12       A.    Holy trinity was when they're

13  getting 180 oxycodone, 90 methadone and 90 Xanax

14  all from the same doctor every month on the same

15  script, same three scripts.

16       Q.    Other than that?

17             MR. LEDLIE:  Object to the form.

18  Vague.

19       A.    Other than that, what?

20       Q.    So I take it you would, in your view

21  the -- well, let me ask it this way:  Is the

22  holy trinity -- could that ever be for

23  legitimate medical purposes?

24             MR. BENNETT:  Objection.

25       A.    Again, I'm not a medical -- I'm not

Page 396

1    they're not supposed to be.

2         Q.    We can agree that the pharmacist

3    doesn't have the blood test results for the

4    individual patient?

5              MR. LEDLIE:  Objection to the form.

6    Calls for speculation.

7         A.    Yes, we can agree the pharmacist

8    doesn't have that information.

9         Q.    We can agree that distributors of

10   the pharmaceuticals don't have the medical

11   records of the patients who are being prescribed

12   medications?

13        A.    I would agree with that, yes.

14        Q.    And neither do the manufacturers of

15   the medications?

16        A.    And I would agree with that as well.

17        Q.    The Harper case, did that get

18   started on a tip from a pharmacist?

19             MR. LEDLIE:  Object to the form of

20   the question and objection to the extent it

21   calls for the divulging of any non-public police

22   investigative techniques.

23             MR. BENNETT:  Objection.  Scope.  I

24   would join counsel.

25             MR. BLOCK:  This is a closed case