# EXHIBIT 15

Highly Confidential - Subject to Further Confidentiality Review

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF OHIO
 2                        EASTERN DIVISION
 3

    IN RE NATIONAL PRESCRIPTION  | MDL No. 2804
 4                               |
    OPIATE LITIGATION            | Case No. 17-MD-2804
 5                               |
    APPLIES TO ALL CASES         | Hon. Dan A. Polster
 6

 7                            - - -
 8                   Tuesday, April 23, 2019
 9                            - - -
10          HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
11                     CONFIDENTIALITY REVIEW
12                            - - -
13
14
15         VIDEOTAPED DEPOSITION of MATTHEW PERRI, III,
    BS Pharm, Ph.D., RPh, held at Jones Day,
16  1420 Peachtree Street, N.E., Suite 800, Atlanta,
    Georgia, commencing at 9:28 a.m., on the above date,
17  before Susan D. Wasilewski, Registered Professional
    Reporter, Certified Realtime Reporter and Certified
18  Realtime Captioner.
19
20
21                            - - -
22               GOLKOW LITIGATION SERVICES
23          877.370.3377 ph | 917.591.5672 fax
24                   deps@golkow.com
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    CROSS-EXAMINATION
 2    BY MS. RODGERS:
 3         Q.   Good afternoon, Dr. Perri.  My name is Megan
 4    Rodgers.  We met before the deposition began this
 5    morning.  I'm with the law firm Covington & Burling,
 6    and I'm representing McKesson.
 7         A.   Okay.
 8         Q.   You're aware that there are several
 9    wholesale distributors in this case, right?
10         A.   Yes, I am.
11         Q.   Okay.  And when I use the phrase "wholesale
12    distributors," you understand I'm referring to
13    McKesson, AmerisourceBergen, and Cardinal, right?
14         A.   Are you limiting it to just those three?
15         Q.   Can we agree that I'm -- yeah.
16         A.   Okay.
17         Q.   I'm referring to those three.
18              Were you asked to consider whether you had
19    any opinions with respect to McKesson?
20         A.   With respect to McKesson by itself?
21         Q.   Yes.
22         A.   No.
23         Q.   Okay.  Were you asked to consider whether
24    you had any opinions with respect to Cardinal?
25         A.   Not -- none of the defendants independently.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    They're all -- the opinions are all based on a
 2    collective assessment.
 3         Q.   Okay.  So you have no opinions in this case
 4    regarding specifically McKesson?
 5         A.   None that are related to McKesson only.
 6         Q.   Okay.  And you have no opinions related
 7    specifically to Cardinal?
 8         A.   Same -- nothing is -- while the opinions
 9    apply to each of the wholesaler defendants, none of
10    the opinions are specifically singling them out as a
11    particular defendant regarding that opinion.
12         Q.   Okay.  And the same is true for
13    AmerisourceBergen?
14         A.   Yes.
15         Q.   Okay.  Were you asked to produce materials
16    produced by those wholesale distributors?
17         A.   So, yes, there were -- there were wholesale
18    documents -- wholesaler documents that were provided
19    to me, as well as some that I searched for in the
20    Relativity database.
21         Q.   Okay.  And what was the volume of the
22    materials that --
23         A.   The -- as I recall, the largest share of the
24    distributor documents were contracting documents
25    and, for example, documents specifying purchasing
```

Highly Confidential - Subject to Further Confidentiality Review

 1   increase their efficiency and ability to survive in
 2   the marketplace.
 3       Q.   Okay.  And that same paragraph goes on to
 4   say:  Wholesalers can give preferential treatment to
 5   a specific manufacturer's products by stocking only
 6   or preferentially selected manufacturer's products
 7   for distribution and/or generic purchasing programs.
 8            There is nothing wrong with that, either,
 9   right?
10            MR. CHALOS:  Object to the form.
11       A.   So we're still -- we're not on opiates,
12   right?
13       Q.   Correct.
14       A.   Yes, I agree.
15       Q.   While a distributor can set different prices
16   for generics, they're not the ones actually writing
17   the prescription for those medicines, right?
18            MR. CHALOS:  Object to the form.
19       A.   The wholesalers do not generate patient
20   level demand, no.
21       Q.   Okay.  It's the doctor that usually makes
22   the decision about whether to prescribe an opioid?
23       A.   Doctor or the prescriber, yes.
24       Q.   And the prescriber decides which opiate --
25   opioid to prescribe?