# EXHIBIT 26

Highly Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT

 2           FOR THE NORTHERN DISTRICT OF OHIO

 3                     EASTERN DIVISION

 4

 5    ------------------------------x

 6    IN RE: NATIONAL PRESCRIPTION   ) Case No.

 7    OPIATE LITIGATION              ) 1:17-MD-2804

 8    APPLIES TO ALL CASES           ) Hon. Dan A. Polster

 9    ------------------------------x

10

11

12

            VIDEOTAPED DEPOSITION OF GARY L. BOGGS

13

                        WASHINGTON, D.C.

14

                  THURSDAY, JANUARY 17, 2019

15

                           9:07 A.M.

16

17

18

19

20

21

22

23    Pages: 1 - 429

24    Reported by: Leslie A. Todd
```

1      Q    Do you ship suspicious orders without

2   determining that they're going to be diverted?

3      A    Under our system today, we have a system

4   that identifies suspicious orders, we block those

5   orders, and we don't ship those orders.

6      Q    How long has that been the case at

7   McKesson that suspicious orders were blocked and

8   not shipped?

9           MR. STANNER:  Object to form.

10          THE WITNESS:  McKesson has been blocking

11  orders probably 2007, 2008.

12  BY MR. HAWAL:

13     Q    Or at least should have been, true?

14          MR. STANNER:  Object to the form of the

15  question.

16          THE WITNESS:  The regulation does not

17  say that we -- to block.  It says to identify and

18  report suspicious orders.

19  BY MR. HAWAL:

20     Q    Since you have joined McKesson, have you

21  gone back to determine what McKesson was doing

22  with suspicious orders in 2007 and 2008?

23     A    I have reviewed some materials of the

24  type of programs that they had back in -- around

Highly Confidential - Subject to Further Confidentiality Review

```
 1   2007, 2008.
 2       Q    And was -- is it your understanding that
 3   McKesson undertook a responsibility to block and
 4   not ship suspicious orders?
 5            MR. STANNER:  Object to the form to the
 6   extent it's asking for speculation.
 7            THE WITNESS:  I understand that part of
 8   the program was to block an order and not ship it.
 9   Yes.
10   BY MR. HAWAL:
11       Q    Is it your understanding that that was
12   one of the responsibilities that McKesson assumed
13   and undertook as part of its settlement with the
14   Department of Justice and DEA in 2008?
15            MR. STANNER:  Objection.  Speculation.
16            THE WITNESS:  I think it was part of the
17   program that they created in response to the
18   settlement agreement.
19   BY MR. HAWAL:
20       Q    In other words, McKesson made an
21   obligation or set forth an obligation and
22   undertook an obligation, according to that
23   settlement agreement, that it would not only
24   report suspicious orders to the DEA but it would
```

```
 1                ACKNOWLEDGMENT OF DEPONENT

 2      I, _____GARY BOGGS_____, do hereby

 3   certify that I have read the foregoing pages, and

 4   that the same is a correct transcription of the

 5   answers given by me to the questions therein

 6   propounded, except for the corrections or changes

 7   in form or substance, if any, noted in the

 8   attached Errata Sheet.

 9

10   ____[signature]____             ___2/25/19___

11   GARY L. BOGGS                        DATE

12

13

14   Subscribed and sworn to

15   before me this

16   __25th__ day of __February__, 20_19_.

17   My commission expires: 12/09/2020

18   ____[signature]____  Daniel Stybel

19   Notary Public

20
              DANIEL STYBEL
21     NOTARY PUBLIC - STATE OF MICHIGAN
              COUNTY OF WAYNE
       MY COMMISSION EXPIRES DEC 9, 2020
22     ACTING IN COUNTY OF __Wayne__

23

24
```