# EXHIBIT 19

```
                                                                    1

 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF OHIO
 2                          EASTERN DIVISION

 3

 4     _____

 5     IN RE:  NATIONAL PRESCRIPTION      MDL No. 2804
       OPIATE LITIGATION                  Case No. 17-md-2804
 6

 7     This document relates to:         Judge Dan
                                         Aaron Polster
 8
       The County of Cuyahoga v. Purdue
 9     Pharma, L.P., et al.
       Case No. 17-OP-45005
10
       City of Cleveland, Ohio vs. Purdue
11     Pharma, L.P., et al.
       Case No. 18-OP-45132
12
       The County of Summit, Ohio,
13     et al. v. Purdue Pharma, L.P.,
       et al.
14     Case No. 18-OP-45090
       _____
15

16

17                            VOLUME I

18          Videotaped Deposition of Kyle J. Wright

19                       Washington, D.C.

20                       February 28, 2019

21                           9:33 a.m.

22

23

24     Reported by:  Bonnie L. Russo

25     Job No. 3244302
```

259

1   record's clear on those.  So I'm going to
2   re-ask them and try to get them in a way that
3   -- I -- I think we understood each other, but
4   when Bonnie finishes the transcript, it's not
5   going to read the way I think it should.
6        A.   All right.
7        Q.   Okay?
8             And I was asking about the
9   obligations that retail pharmacies had.  Okay?
10       A.   Okay.
11       Q.   So let me re-ask the question.
12            You would agree, wouldn't you, that
13  the retail pharmacies, CVS, Rite Aid, Walgreens
14  and Walmart, had no obligation to check on
15  Internet pharmacies that they did not sell to,
16  correct?
17       A.   Correct.
18            MR. MIGLIORI:  Objection.
19            BY MR. STEPHENS:
20       Q.   And you would also agree that the
21  retail pharmacies, Walmart, CVS, Rite Aid,
22  Walgreens, had no -- had no obligation to check
23  on pain clinics that they did not distribute
24  to, correct?
25       A.   Correct.

[2/28/2019 9:00 AM] Kyle J. Wright - 2-28-19

260

1      Q.   Okay.  All right.
2           So just a couple more topics, and
3  then we're done.
4           I want to go back to conversations
5  that you would have had with distributors and
6  relating to ratios of controlled versus
7  noncontrolled substances.
8      A.   Okay.
9      Q.   Okay?
10          Do you remember having those
11 conversations with distributors?
12     A.   Yes.
13     Q.   Okay.  And is it -- is it accurate
14 to say that you knew that it was common for
15 legitimate pharmacies to have a ratio of
16 approximately 20 percent of controlled to 80
17 percent noncontrolled?
18     A.   In that area, yes.
19     Q.   Okay.  And higher percentages of
20 controlled drugs could be reasonable at times,
21 right?
22     A.   Yes.
23     Q.   For example, pharmacies located
24 right next to a cancer clinic or something like
25 that.

```
                                                             261
 1          A.   Correct.
 2          Q.   Okay.  You had also testify earlier
 3     about manual systems to identify suspicious
 4     orders.
 5               Do you remember that?
 6          A.   A manual system.
 7          Q.   As opposed to automated.
 8               MR. MIGLIORI:  Objection to form.
 9               THE WITNESS:  Okay.
10               BY MR. STEPHENS:
11          Q.   Do you recall testimony earlier
12     today about manual versus automated systems?
13          A.   Well, that would be in the early
14     days.
15          Q.   Right.
16               So we can go back to that, right?
17          A.   Okay.
18          Q.   Okay.  So back when people were
19     reporting --
20          A.   Paper.
21          Q.   -- excess reports in -- into DEA,
22     right?
23          A.   All right, sir.
24          Q.   Okay.  And manual would -- would --
25     a manual system would include people on the
```

[2/28/2019 9:00 AM] Kyle J. Wright - 2-28-19