# EXHIBIT 17

Highly Confidential - Subject to Further Confidentiality Review

```
 1            IN THE UNITED STATES DISTRICT COURT
 2             FOR THE NORTHERN DISTRICT OF OHIO
 3                       EASTERN DIVISION
 4                           -  -  -
 5
      IN RE:   NATIONAL              :    MDL NO. 2804
 6    PRESCRIPTION OPIATE            :
      LITIGATION                     :
 7                                   :
      -----------------------------------------------------
 8    THIS DOCUMENT RELATES TO       :    CASE NO.
      ALL CASES                      :    1:17-MD-2804
 9                                   :
                                     :    Hon. Dan A.
10                                   :    Polster
11                           -  -  -
12                      March 15, 2019
13                           -  -  -
          HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
14                   CONFIDENTIALITY REVIEW
15
16              Videotaped deposition of SCOTT D.
    TOMSKY taken pursuant to notice, was held at the
17  offices of Golkow Litigation Services, One
    Liberty Place, 51st Floor, 1650 Market Street,
18  Philadelphia, Pennsylvania, beginning at 9:31
    a.m., on the above date, before Ann Marie
19  Mitchell, a Federally Approved Certified Realtime
    Reporter, Registered Diplomate Reporter,
20  Registered Merit Reporter and Notary Public.
21
                             -  -  -
22
                 GOLKOW LITIGATION SERVICES
23         877.370.3377 ph | 917.591.5672 fax
                     deps@golkow.com
24
```

Golkow Litigation Services                                  Page 1

```
 1              Q.    But at least a generic product,
 2   you've heard of a court stopping the marketing.
 3   Right?
 4              A.    Yes.
 5              Q.    Even though it's FDA approved.
 6   Right?
 7              A.    Yes.
 8              Q.    And that might be because there's
 9   some kind of patent dispute or a dispute about
10   whether Teva could legally market it and not
11   infringe on the rights of a brand or another
12   manufacturer?
13              A.    Yes.
14              Q.    So going to page 3 of the letter,
15   the second paragraph there, starting with, "TEVA
16   is eligible for 180-day generic drug exclusivity
17   for Oxycodone Hydrochloride Extended-release
18   Tablets, 80 milligram, as provided for under the
19   Drug Price Competition and Patent Term
20   Restoration Act of 1984 (Hatch-Waxman Amendments)
21   in Section 505(j)(5)(B)(iv) of the Act.  This is
22   because the agency has concluded that TEVA was
23   the first ANDA applicant to submit a
24   substantially complete ANDA for Oxycodone
```

```
 1   Hydrochloride Extended-release Tablets, 80
 2   milligram, containing paragraph IV certifications
 3   to each patent listed in the "Orange Book."  This
 4   exclusivity will begin to run from the date TEVA
 5   begins commercial marketing of the drug product,
 6   or upon the decision of a court holding the
 7   patents which were the subjects of the paragraph
 8   IV certifications to be invalid or not infringed;
 9   whichever occurs first."
10                  And then moving down, second
11   paragraph, the second line, "The Agency expects
12   that you will begin commercial marketing of this
13   drug product in a prompt manner."
14                  So can you explain what this
15   180-day generic drug exclusivity is that's been
16   granted here?
17         A.    Sure.  So for generic applicants,
18   if you are the first generic applicant to file an
19   ANDA, and if FDA receives that application
20   wherein you are challenging patents that are
21   listed in the Orange Book, if you are able to
22   obtain approval, then you can potentially have a
23   period of 180-day generic exclusivity where you,
24   as an ANDA applicant and the brand, and typically
```

Highly Confidential - Subject to Further Confidentiality Review

1  the brand would also sell an authorized generic,
2  but you could be on the market for a period of
3  six months before any other generic applicants
4  can get approved.
5           Q.    And that's a competitive
6  advantage in the generic world, to have the
7  180-day exclusivity.  Right?
8                 MS. HILLYER:  Objection to form.
9                 THE WITNESS:  180-day exclusivity
10     is very important in the generics.
11 BY MR. CRAWFORD:
12          Q.    And why is that?
13          A.    Because it's an opportunity to be
14 on the market without any other generic
15 competition, other than possibly an authorized
16 generic by the brand.
17          Q.    An authorized generic meaning one
18 that the brand is allowing another manufacturer
19 to make it but as a generic.  Right?
20          A.    Not necessarily.  So it's -- an
21 authorized generic is when the brand in essence
22 packages its product and puts the label of
23 another generic applicant on it.
24                So another generic company isn't

Highly Confidential - Subject to Further Confidentiality Review

```
 1    manufacturing it.
 2            Q.    Right.
 3            A.    The brand manufactures it and
 4    uses the label for another generic company.
 5            Q.    Okay.  So the authorized generic
 6    is the company that it uses.
 7                  Is there a separate application
 8    process to be an authorized generic --
 9            A.    No.
10            Q.    -- or can you just adopt the
11    brand one?
12            A.    It's all managed under the brand
13    NDA.
14            Q.    Do you know if Teva -- is Teva an
15    authorized generic for any generic drugs that you
16    know of?
17            A.    Yes.
18            Q.    So do you know if Teva is an
19    authorized generic for any opioid products?
20            A.    I'm not certain.
21            Q.    So with this exclusivity, it does
22    say, "The Agency expects you will begin
23    commercial marketing of this drug product in a
24    prompt manner."
```