# EXHIBIT 36

CONFIDENTIAL
Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

Expert Report of Matthew Perri III, BS Pharm, PhD, RPh

March 25, 2019

Case: 1:17-md-02804-DAP Doc #: 1930-37 Filed: 07/19/19 3 of 6. PageID #: 98781

CONFIDENTIAL

Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

69. An advisory board brings together multiple opinion leaders where topics related to the drug, disease, indications, side effects, or other issues are openly discussed. Through this process, a

---

"thanks also for keeping us in mind when you succeed in springing some funds for the absolutely critical work that has to be done by PF and others on the issues we talked about. Just yesterday, I was at a meeting of BIMC bigwigs and told the story (again) of how PF helped change the world a decade ago in terms of cancer pain management…"; PPLPC025000005743, Email from Robin Rosenbluth, Director of Development at BIMC to David Haddox (Purdue), attaching information about the Project on Pain and Chemical Dependency, and expressing gratitude for Haddox's efforts to "secure philanthropic support" for the program. "[W]onderful to discover that you are a crusader with a mission, like Russ Portenoy, committed to changing the thinking in the field about pain medicine and the chemically dependent. I am pleased to attach a write-up about the Project on Pain and Chemical Dependency."; PPLPC025000005759, Email exchange between Dr. Portenoy and David Haddox regarding Purdue funding for an upcoming pain project. Reference is made to Janssen and funding from other companies are also mentioned; PPLPC020000005715, Email by Dr. Portenoy, requesting identification of physicians against use of opioids for non-cancer patients for a television broadcast, with Haddox identifying a few that are against, but still in-line with their general agenda of pseudoaddiction, and distinction between physical dependence versus addiction.; PPLPC025000011326, Email exchange between Dr. Portenoy and David Haddox asking Dr. Portenoy to speak at a Purdue Opioids dinner symposium.; END00374834, Email from Winifred Schein, Director of Development, Dept of Pain Medicine & Palliative Care at BIMC submitting an invoice to Endo for the "Opioid Rotation Project" which was "generously supported by Endo."; PPLP004025432, email exchange between Dr. Portenoy and David Haddox regarding an article stating that Purdue was advocating for opioid use on infants. Haddox sent the article link to Dr. Portenoy, who then responded to the journalist, "remember the millions with poorly controlled pain as you pursue your advocacy agenda"; PPLPC025000019244, Email from Dr. Steve Passik to David Haddox copied to Dr. Portenoy regarding "expansion of [Dr. Portenoy's] program on Pain and Chemical Dependency with Passik at the head of it – turning it into an ambitious clinical and research institute," necessitating industry backing and 1.5 million in funds, inquiring whether Purdue would be interested in funding; Other similar email correspondence on this point can be seen in PPLPC021000012126; JAN-MS-00784576; PPLPC027000014110; JAN-MS-00725920 (Duragesic, Molly McDonald); PDD1800012102; PKY182085214; PPLP004018042; ENDO-OPIOID_MDL-00996699; PPLP004347618; ENDO-OPIOID_MDL-01592486 (Email discussing supplemental grant requested by Dr. Portenoy for Endo funded Opioid Rotation Meeting.); JAN-MS-00392809 (Pain treatment in the ED); PPLP004358732; PPLP004354276; TEVA_MDL_A_07547524 Email from Arvind Narayana thanking Dr. Portenoy for his input on the Fentora Advisory Board, attaching an executive summary of the board, and requesting edits by Dr. Portenoy prior to further circulation; END00148765 Email from Linda Kitlinski, Senior Director of Clinical Affairs for Endo, inquiring about publication of a paper written by Portenoy and Fine re: Opioid Rotation, indicating that Endo owed a "final grant payment," and expressing eagerness to share the paper with Endo leadership.; TEVA_MDL_A_07559050; JAN-MS-00392825; JAN-MS-00929471; MNK-T1_0002145008 Email from Joanna Schooler the VP of Medical Affairs and CMO of Pharmaceuticals at Covidien, advising Dr. Portenoy that the FDA approved Exalgo Hydromorphone extended release, and thanking Dr. Portenoy for his support in Covidien's efforts.; TEVA_MDL_A_07027227; PPLP004016754; TEVA_MDL_A_07030364; TEVA_MDL_A_07030502 (advisory board); TEVA_MDL_A_03799210.

[114] Steinbrook R. Commercial support and continuing medical education N Engl J Med. 2005;352(6):534-5.

Case: 1:17-md-02804-DAP Doc #: 1930-37 Filed: 07/19/19 4 of 6. PageID #: 98782

CONFIDENTIAL

Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

pharmaceutical manufacturer can glean significant market information, learn how its' drug is perceived in the medical community, and identify new strengths, weaknesses, opportunities, or threats. It also provides the opportunity for KOLs to exchange information that could impact their own prescribing practices. In sum, KOLs are used to "infect" other prescribers with favorable opinions regarding a company's drug.[115]

70. An extension of peer-to-peer marketing is the use of health advocacy groups, which often provide national level thought and policy leadership related to disease and treatments. Defendants were able to more widely disseminate their marketing messages, which had the added benefit of appearing to be unbiased, by supporting and influencing such advocacy groups.[116] This included the pain market in Ohio, which for Janssen was the second largest

---

[115] Altier_Allergan Deposition, p.183 and Exhibit 6.

[116] See e.g., PPLPC009000026013_Confidential, Purdue budgeting spreadsheet (drug by drug) allocating payments to numerous marketing activities, including advocacy groups (e.g., AAPM) ; PWG003927496, Consultant Services Agreement between Purdue and James Campbell; PPLP003364381, Grants to organizations, including American Academy of Pain Management and American Pain Society; PPLP003364382, Summary of Payments to entities January 1, 2012 through March 28, 2017, including American Pain Society and AAPM; ENDO-CHI_LIT-00247966, Excel file of payments made by Endo to organizations and individuals, including Perry Fine, Russell Portenoy, Scott Fishman, American Pain Foundation, American Academy of Pain Medicine, American Pain Society, JCAHO, Wisconsin Pain and Policy Study Group (Board of Regents of the University of Wisconsin - Unrestricted educational grant); JAN00118932, Educational Grant Agreement. Payee: American Pain Society; JAN-MS-00919438, American Pain Society Corporate Membership Brochure; ALLERGAN_MDL_01010175, Actavis employees discuss what level of APS corporate membership they are willing to pay for. Actavis needs "a clear plan with objectives for meeting with them." Corporate Circle costs $25,000 to join; EPI000648788, Endo Request form for Educational Grant Payment to APS; MNK-T1_0000856189, PKY180259180, Leadership Summit on Pain Management, supported by a grant provided by Purdue Pharma; MNK-T1_0000919107, Mallinckrodt excel sheet listing grant requests from various organizations, including American Pain Society; APS-MDL00000020, APS written Agreement for Commercial Support with ENDO; PPLPC021000246625, Purdue Grant Summary. Includes grants for APF, APS; JAN-MS-00000001- 1997-2011 List of Janssen payments made to various advocacy groups such as AAPM, AGS, APF, APS, JCAHO, Center for Bioethics and honorarium fees to KOLs such as Portenoy, Fishman, and Fine; PPLPC036000002057, email from Jim Guest to Richard Sackler, Robin Hogen, Haddox where J. Guest wrote "Jim Campbell and I are looking forward to our meeting with you on Monday" and thanked them "for the positive response and useful suggestions … on the American Pain Foundation's proposed "Stop Pain Now!" campaign." Guest noted APF "refined the campaign plan" by incorporating many of Purdue's suggestions and attached the "revised plan along with an executive summary." Attached to this email were SPN Proposal 8-3-00.doc (PPLPC036000002058) and SPN Exec Summary 8-3-00.doc (PPLPC036000002078), Pain as the Fifth Vital Sign.

Case: 1:17-md-02804-DAP Doc #: 1930-37 Filed: 07/19/19 5 of 6. PageID #: 98783

CONFIDENTIAL

Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

Nucynta state account in the U.S.[117] Groups such as the American Pain Society, which advocated "Pain as the Fifth Vital Sign,"[118] sought to elevate awareness of pain and its treatment – a goal that is consistent with Defendants' marketing.[119] [120] [121]

71. Other groups such as, for example, the American Academy of Pain Medicine (AAPM), American Geriatrics Society, and the American Pain Foundation all worked to increase the awareness of and access to pain treatment.[122] In 1997, APS and AAPM issued a Consensus Statement that

---

[117] Update & 2013 National Advocacy Business Planning, JAN-MS-00393085. This document is specific to Ohio as well as the national level. It touts Purdue, Janssen, Pfizer, and Endo as providing the highest total advocacy support in 4 categories: programmatic support, capacity building, access, and reimbursement, and general support. The "Imagine the Possibilities Pain Coalition" included here maps out advocacy projects, objectives and timelines for dissemination. This coalition is "…a working group of recognized experts in the field of pain aiming to fill unmet needs and gaps in patient care." This definition is remarkably like the goal of marketing. On slide 16 is a compilation of representative organizations Janssen was committed to regarding pain advocacy.

[118] The American Academy of Pain Medicine ("AAPM") and the American Pain Society ("APS") are professional medical societies, each of which received funding from Defendants. In about 1996, the APS Trademarked "Pain is the 5th Vital Sign" advocating to elevate pain to the "fifth vital sign," along with temperature, pulse, respiration rate, and blood pressure. See also, e.g., SPN Exec Summary 8-3-00.doc (PPLPC036000002078), Pain as the Fifth Vital Sign; CHI_001715571, STOP PAIN NOW, A campaign to Make Effective Pain Relief a National Priority, A Proposal to Purdue Pharma Submitted by the American Pain Foundation, August 7, 2000 (Updated March 2001); PPLPC0170001258, David Haddox 2008 email with the subject Re: Story about prescription narcotic use.

[119] PKY181559213, Managing Pain in Patients with Addiction and the "fifth vital sign." PPLPC017000062602 - Purdue Pain Advocacy Tool Kit uses APS's "Pain: The 5th Vital Sign" as part of its marketing strategy and on page 10 quotes James Campbell's November 11, 1995 APS Presidential Address, "We need to train doctors and nurses to treat pain a vital sign."; ABT-MDL-KY-0043299 - Talking points/binder of information on Oxy. Includes: JCAHO Pain Standards for 2001 (p. 13 of 86 of the PDF), 1998 FSMB Model Guidelines for the Use of Controlled Substances for the Treatment of Pain (p. 25 of 86 of the PDF). The binder also cites The Fifth Vital Sign as a trademark of the APS (p. 39 of 86 of the PDF)).

[120] In JAN-MS-00383085, Janssen answers the question of how advocacy can have an impact for chronic pain and diabetic peripheral neuropathy: creating awareness of the disease, latest treatments and barriers to access, and improving and maintaining access by shaping policy, public and private outreach (e.g., letters of support from partner organizations) and impacting legislation.

[121] Mr. Bingol at Endo regarded the "tag line" of "pain as the fifth vital sign" as an opportunity on a "market-wide" basis. Bingol, Demir_Endo Deposition, pp.225-226. This supports the proposition that the marketing messages seen in this case benefited not only the company that initiated the message, but also other competitors.

[122] See e.g, PDD8801101275, Richard Sackler email to K. Foley and J. Campbell suggesting Purdue and APS could work together to "protect the gains made in recognizing and treating pain patients."; American Pain Foundation Board of Directors Meeting, March 26, 2001, Minutes (CHI_001260914, pp.3-4, selling

Case: 1:17-md-02804-DAP  Doc #: 1930-37  Filed: 07/19/19  6 of 6.  PageID #: 98784

CONFIDENTIAL

Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

endorsed opioids to treat chronic pain and claimed, among other things, that pain is often managed inadequately and that commonly held assumptions about opioids need modification with respect to addiction, respiratory depression and other side effects, tolerance and diversion.[123] In 2001, AAPM disseminated a press release regarding diversion and abuse of controlled substances, which included the statement:[124]

> *"Experience and investigation have shown that when opioids are prescribed and used appropriately in the treatment of pain there is minimal danger of creating an addictive disorder. Evidence to date indicates that substance abuse problems have not increased as a result of the increased availability of therapeutic opioids. The public health problem represented by misuse of prescription opioids is miniscule in comparison with that of untreated and unrelenting pain."*

This press release expresses opinions that effectively minimized concerns over diversion and abuse. This and other positions held by advocacy groups which were consistent with Defendants' marketing messages, when considered with Defendants' support of these advocacy groups, supports the proposition that Defendants' financial support had marketing purpose.[125]

72.  Advocacy support by Defendants also was extended to groups like the Joint Commission on Accreditation of Hospitals (JCAHO) and the Federation of State Medical Boards (FSMB) both of which distributed guidelines or standards for opioid use.[126]  In some instances, Defendants'

---

Pain Actions Guides at a profit to corporations) and Haddox email with his edits to a "Patient Action Pamphlet", PPLPC013000057412.

[123] The Chair of the committee that issued the statement, Dr. J. David Haddox, was a KOL for Purdue and thereafter a Purdue employee. He was also a past AAPM President (1988) Other authors, including KOL Dr. Portenoy, similarly had connections to defendants. APS-MDL00000005 AAPM and APS Consensus Statement - Use of Opioids for the Treatment of Chronic Pain. Other KOLs who worked with Defendants also served as President of AAPM including Drs. Fishman (2005), Fine (2011), and Webster (2013). https://painmed.org/about/board/council-of-past-presidents (last accessed February 9, 2019); See also, AAPS Consensus Statement; AGS Guidelines; APF Treatment Options for People Living with Pain.

[124] February 16, 2001 AAPM Press Release, PPLPC039000033400.

[125] Cramer, Phil_Deposition, pp.149-252, where Mr. Cramer is questioned by Mr. Hoffman about Purdue's distribution of materials consistent with WHO, APS and FSMB guidelines. What is not discussed is Purdue's support of advocacy groups like these or the KOLs and other influencers who assisted in the creation of these guidelines.

[126] See e.g. PPLPC021000155726, Purdue memo on alliances with JCAHO; CHI_000463727 CME approved by AAPM and FSMB, Responsible Opioid Prescribing; PKY181079987, CME by Endo and JCAHO; PKY180516748, Purdue sponsored Talk on Pain Management Addressing the New JCAHO Standards; PKY180130001, Leadership Summit on Pain Management, Sponsored by Joint Commission and American