# EXHIBIT 80

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION, | ) | MDL No. 2804 |
| | ) | Case No. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO ALL CASES | ) | Hon. Dan A. Polster |

---

Friday, January 11, 2019

---

HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

---

Videotaped Deposition of DEBBIE HODGES, held at 4206 South J.B. Hunt Drive, Rogers, Arkansas, commencing at 8:15 a.m., on the above date, before Debra A. Dibble, Certified Court Reporter, Registered Diplomate Reporter, Certified Realtime Captioner, Certified Realtime Reporter and Notary Public.

---

GOLKOW LITIGATION SERVICES
877.370.3377 | fax 917.591.5672
deps@golkow.com

A. I don't know.
Q. Is it the Patrick that's sitting at counsel table?
A. It is. It is.
Q. Thank you.
Anyone else other than yourself, Tina, or Patrick attend that meeting?
A. There were a couple of Walmart attorneys that came in and out, but ...
And I couldn't tell you who their names were.
Q. How are you certain that they were Walmart attorneys if you did not know their names?
A. They identified themselves, and they gave their names. I just can't -- I don't recall their names.
MS. TABACCHI: I can represent to you, Michael, that there's been nobody other than counsel in any of these meetings.
MR. INNES: Thank you, Tina.
Q. (BY MR. INNES) Approximately how long was that first session?

A. It was a few hours.
Q. During that session did you review any documents?
A. No, I don't believe I did.
Q. Did you review any deposition testimony in this case?
A. No.
Q. Did you review any court documents?
A. I don't -- no.
Q. Do you not recall or do you just not know?
A. No, I said no.
MS. TABACCHI: I think that was no. N-O.
THE WITNESS: Right, it was. It was no.
Q. (BY MR. INNES) When was the date of the second session that you met with counsel?
A. It was Wednesday of this week.
Q. Okay. And who attended that session?
A. Tina, Patrick, Jennifer, and there was another Walmart attorney that

dropped in for a bit.
Q. And do you know Jennifer's last name?
A. I don't.
Q. Is Jennifer here today?
A. Correct, she is.
Q. And Jennifer is seated at the end of the table?
A. She is.
Q. And you said there was one other Walmart attorney that attended?
A. Mm-hmm. And I believe it was Rob. But I don't know Rob's last name.
Q. I'll just take you to the third and final session.
Well, strike that.
How long was the second session?
A. It was four hours, approximately.
Q. And where did that occur?
A. It occurred in the -- a conference room.
Q. At Walmart?
A. Correct.

Q. And what's -- which -- what's Walmart's address?
A. It's on Walton Boulevard.
Q. The location on Walton Boulevard?
A. Correct.
Q. And the final session, the one the day before yesterday?
A. Same location.
Q. And what was the date of that session?
MS. TABACCHI: I'm sorry, just to clarify, the final session was yesterday, not the day before yesterday.
MR. INNES: I'm sorry.
Q. (BY MR. INNES) What was the date of the final session?
A. It was yesterday.
Q. Yesterday?
A. Yes.
Q. And for how many hours did you meet?
A. Approximately six to seven.
Q. And who was present at that

meeting?
A. Tina, Patrick, Jennifer.
Q. The same Jennifer that's seated at the end of the table?
A. Yes.
Q. Anyone else?
A. No.
Q. In the second session, did you review any documents?
A. Yes.
Q. Did you review any deposition testimony?
A. No.
Q. Did you review any court documents?
A. No.
Q. In the third session, did you review any documents?
A. Yes.
Q. Did you review any testimony?
A. Did I what?
Q. Did you review any deposition testimony?
A. No.
Q. Did you review any court

documents?
A. No.
Q. Have you read the complaint that was filed in this case?
A. No.
Q. Are you familiar with the allegations in the complaint as they relate to Walmart?
MS. TABACCHI: Object to the form. I'm also going to caution the witness not to reveal the substance of any communications with counsel.
If you can answer the question without revealing the substance of communications with counsel, you may. Otherwise, I will instruct you not to answer the question if your understanding comes from communications with counsel, to the extent you had one.
THE WITNESS: Can you repeat the question?
Q. (BY MR. INNES) Other than your conversations with counsel, what is your knowledge, if any, of the allegations in the

complaint in this case?
A. I don't have any knowledge, other than communication with counsel.
Q. Do you agree that the United States is currently in an opioid crisis?
A. Yes.
Q. What's the basis for your agreement with that statement?
A. I'm aware of the -- what media publishes.
Q. And what media sources specifically?
A. I read newspapers.
Q. Which newspapers do you read?
A. I read the Benton County Gazette, or the Gazette. Democrat-Gazette, I think it's called. Occasionally I read the Wall Street Journal. I read an investment newspaper.
Q. What investment newspaper is that?
A. I think it's called IBD.
Q. Are you aware that between 2000 and -- year 2000 and year 2014, unintentional

drug overdose deaths in the U.S. increased by 137 percent?
A. No.
Q. Can you hear me?
MS. TABACCHI: I'm having a little trouble hearing you.
MR. INNES: I'll try to speak up.
THE WITNESS: When he bends his head down. So just -- I have a hearing disability, and so I can watch your lips, and I'll be able to pick up on it. I have hearing aids. But when you bend your head down, it's very difficult for me to see your lips.
MR. INNES: Sure. Thank you very much for pointing that out. And I'll do my best to speak with my face up so you can see my lips moving.
Q. (BY MR. INNES) So maybe if I can, just do a little rearranging here.
So I'll reread the --
A. Sure.
Q. -- re-ask the question.
Between the year 2000 and 2014,

are you aware that unintentional drug overdose deaths in the U.S. increased 137 percent?
A. I was not aware of that.
Q. Between -- were you aware that between the year 2000 and 2014, there were 500,000 deaths due to prescription overdoses?
A. No, I was not aware of that.
Q. Were you aware that in 2015, over 47,000 drug-related -- there were over 47,000 drug-related deaths?
A. No. I was not aware.
Q. Do you recall attending a DEA Distributor Conference in Indianapolis, Indiana on May 10th or 11th of 2016?
A. No. I did not attend that conference.
[redacted]
Q. In preparation for today's testimony, have you looked in your own personal paper files for documents that might be relevant to your testimony today?

A. I don't have any paper files.
Q. Have you looked in any electronic files prior to today to help prepare for your testimony?
MS. TABACCHI: Object to the form.
THE WITNESS: I have looked at documents that we reviewed over the past couple of days.
Q. (BY MR. INNES) The documents that you reviewed in preparation for today, the only documents you reviewed, were those with counsel?
A. Correct.
Q. You did not review any documents outside of the presence of counsel?
A. Correct.
Q. Did you endeavor to look in your own electronic or paper files for documents that may help refresh your recollections of any events that might be relevant for today?
A. I did not look at any documents in my files, either paper or electronic.
Q. Thank you.

My question is slightly different.
I'm wondering if you attempted to find such documents.
A. No.
Q. Did you -- prior to today, in preparation for your testimony, did you speak with any colleagues about your testimony?
A. No.
Q. Have you spoken with any family members about the testimony you were about to give?
A. No.
Q. Have you spoken with any non-Walmart employees regarding the testimony that you are about to give today?
A. No.
Q. Ms. Hodges, where did you attend college?
A. Southwest Missouri State University.
Q. And when did you graduate from Southwest Missouri University?
MS. TABACCHI: Object to the form.

Q. (BY MR. INNES) Strike that. When did you graduate from Southwest Missouri State University?
A. 1985.
Q. Okay. Did you attend any graduate programs after your graduation from college?
A. I did.
Q. And what school was that?
A. University of Missouri Columbia.
Q. And what degree did you obtain from University of Missouri Columbia?
A. A JD.
Q. And what year was that?
A. 1988.
Q. You graduated in 1988?
A. Correct.
Q. Did you sit for a bar exam after your graduation?
A. I did.
Q. In what state did you sit for the bar exam?
A. Missouri.
Q. And what year were you admitted



Page 150

Q. Okay. And at this point you're aware that the country is in an opioid crisis. That is correct; right?

A. Yes.

Page 152

Page 151

Page 153

Case: 1:17-md-02804-DAP Doc #: 1934-79 Filed: 07/22/19 7 of 8. PageID #: 100097
Highly Confidential - Subject to Further Confidentiality Review

Page 154

Page 156

Page 155

Page 157

Q. And during this time period, you're aware of the opioid crisis; is that right?
A. Correct.
Q. And did you ever inquire -- strike that.

Golkow Litigation Services Page 40 (154 - 157)

Case: 1:17-md-02804-DAP Doc #: 1934-79 Filed: 07/22/19 8 of 8. PageID #: 100098
