# EXHIBIT 96

Highly Confidential - Subject to Further Confidentiality Review

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION
                           -  -  -
 3

    IN RE:  NATIONAL           :   HON. DAN A. POLSTER
 4  PRESCRIPTION OPIATE         :   MDL NO. 2804
    LITIGATION                  :
 5                              :
    APPLIES TO ALL CASES        :   NO.
 6                              :   1:17-MD-2804
 7             - HIGHLY CONFIDENTIAL -
 8     SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
 9                          -  -  -
                     December 6, 2018
10                          -  -  -
11
12            Videotaped sworn deposition of
13       RICHARD J. FANELLI, Ph.D., taken
14       pursuant to notice, was held at DECHERT,
15       LLP, 1095 6th Avenue, New York, New
16       York, beginning at 9:09 a.m., on the
17       abovedate, before Margaret M. Reihl, a
18       Registered Professional Reporter,
19       Certified Shorthand Reporter, Certified
20       Realtime Reporter, and Notary Public.
21
                           -  -  -
22
              GOLKOW LITIGATION SERVICES
23       877.370.3377 ph | 917.591.5672 fax
                    deps@golkow.com
24
```

Page 478

1 correct?
2     MR. SNAPP:  Objection, beyond the
3   scope.
4     THE WITNESS:  I'm aware of that,
5   yes.
6 BY MS. DICKINSON:
7   Q.  And in the 15 years since 2003,
8 three of its top executives also pled guilty to
9 charges from the federal government, correct?
10     MR. SNAPP:  Objection, beyond the
11   scope.
12     THE WITNESS:  Yes.
13 BY MS. DICKINSON:
14   Q.  And that guilty plea was because
15 Purdue was guilty of criminal misbranding,
16 correct?
17     MR. SNAPP:  Objection, beyond the
18   scope.
19     THE WITNESS:  As I stated --
20     MR. SNAPP:  And form.
21     THE WITNESS:  Sorry.
22     MR. SNAPP:  Go ahead.
23     THE WITNESS:  As I stated
24   yesterday, I'm not -- it's not part of

Page 479

1   my responsibility to understand the
2   details around the legal aspects of
3   that.
4 BY MS. DICKINSON:
5   Q.  As the head of regulatory
6 affairs, it's not your responsibility to
7 understand what the company pled guilty to in a
8 Federal Court case?
9     MR. SNAPP:  Object to the form.
10     THE WITNESS:  I understand what
11   the issues were, but the legal
12   definitions of those as it affects the
13   proper regulations around our products
14   I'm aware of.
15 BY MS. DICKINSON:
16   Q.  Could you pull out I think it's
17 Exhibit 15, please.  It's the guilty plea.  I
18 don't know if that's 15, 16 or 14.
19     MR. SNAPP:  Fifteen is the Agreed
20   Statement of Facts.
21     MS. DICKINSON:  Okay.  It should
22   be 14 then.
23     THE WITNESS:  I have it.
24 BY MS. DICKINSON:

Page 480

1   Q.  Okay.  And Exhibit 14 is the plea
2 agreement that Purdue entered on May 2000 -- or
3 May 10, 2007.
4     Do you see that date at the top?
5   A.  Stamped on the clerk -- that
6 stamp are you talking about?  Yes, I see it.
7   Q.  Okay.  And is this document the
8 plea agreement that Purdue entered in the
9 federal criminal case?
10     MR. SNAPP:  Object to the form.
11     THE WITNESS:  That's what's
12   stated at the top, yes.
13 BY MS. DICKINSON:
14   Q.  Do you have any reason to believe
15 this is not the plea agreement that Purdue
16 entered into with the U.S. Government?
17   A.  No.
18   Q.  Can you read, please, under the
19 charge to which Purdue is pleading guilty and
20 waiver of rights, the first sentence, please.
21   A.  On the first page?
22     MR. SNAPP:  Objection to this
23   entire line --
24     MS. DICKINSON:  First page.

Page 481

1     MR. SNAPP:  -- as beyond the
2   scope of my questioning and the
3   deposition notice.
4     MS. DICKINSON:  Not even close to
5   beyond the scope of your questioning.
6 BY MS. DICKINSON:
7   Q.  Please answer the question.
8   A.  Purdue will enter a plea of
9 guilty to Count One of an Information, charging
10 it with felony of misbranding a drug, with the
11 intent to defraud or mislead, in violation of
12 Title 21 U.S. code Section 331(a) and 333(a)(2).
13   Q.  Okay.  And that is Purdue
14 pleading guilty to the counts you just read,
15 correct?
16     MR. SNAPP:  Objection, beyond the
17   scope and form.
18     THE WITNESS:  Again, I think, as
19   I stated before, I have -- I have not
20   the background to, you know, talk about
21   this.
22 BY MS. DICKINSON:
23   Q.  You don't know as the head of
24 regulatory affairs whether that is the charge

Page 482

1 that your company, Purdue, pled guilty to in
2 2007; am I correct?
3      MR. SNAPP: Objection, object to
4   the form. Objection as beyond the
5   scope.
6      THE WITNESS: What I'm saying, I
7   don't know what the sections are that
8   are listed there, so the specific
9   details.
10 BY MS. DICKINSON:
11   Q.   Do you know that Purdue was
12 pleading guilty to federal criminal charges?
13   A.   Yes.
14   Q.   Let's turn to the second page.
15 And there's a list here, but then the first full
16 paragraph that starts with Purdue, can you
17 please read that?
18   A.   From the top here?
19   Q.   The first paragraph that starts
20 with Purdue in capital letters.
21      MR. SNAPP: Objection as beyond
22   the scope.
23      THE WITNESS: On the second page.
24   "Purdue is pleading guilty as described

Page 483

1   above because Purdue is in fact guilty
2   and because Purdue believes it is in its
3   best interest to do so and not because
4   of any threats or promises, other than
5   the terms of the Plea Agreement,
6   described herein, in exchange for its
7   plea of guilty."
8 BY MS. DICKINSON:
9   Q.   Okay. And Purdue entered this
10 guilty plea during the time that Purdue was
11 having all these communications with the FDA
12 that you just described a few minutes ago; is
13 that right?
14      MR. SNAPP: Object to the form.
15      THE WITNESS: Yes, we were
16   having -- of course, yeah.
17 BY MS. DICKINSON:
18   Q.   And because Purdue was
19 communicating with the FDA and providing it
20 materials doesn't mean that Purdue was in any
21 way immunized from following the law, correct?
22      MR. SNAPP: Object to the form.
23      THE WITNESS: Correct.
24 BY MS. DICKINSON:

Page 484

1   Q.   You were read a statement in your
2 examination by your counsel about OxyContin's
3 importance in treating pain out of the GAO
4 report.
5      Do you remember that?
6   A.   Yes.
7   Q.   Do you have any idea how many
8 Americans have died as a result of opioid
9 overdose?
10      MR. SNAPP: Objection, beyond the
11   scope, form.
12      THE WITNESS: I do not.
13 BY MS. DICKINSON:
14   Q.   As the head of regulatory affairs
15 at Purdue, you have no idea how many Americans
16 have died from an opioid overdose in this
17 country today?
18      MR. SNAPP: Object to the form.
19   Objection as beyond the scope.
20      THE WITNESS: I'm aware that the
21   opiate crisis is a tragedy and that many
22   individuals have died because of opiate
23   abuse, yes.
24 BY MS. DICKINSON:

Page 485

1   Q.   Are you aware that the CDC and
2 the National Bureau of Vital Statistics reports
3 that number as several hundred thousand people
4 that have died?
5      MR. SNAPP: Objection as beyond
6   the scope. Objection as to form.
7      THE WITNESS: I know that the CDC
8   has made such reports, yes.
9 BY MS. DICKINSON:
10   Q.   And are you generally aware of
11 the numbers in those reports?
12      MR. SNAPP: Objection, beyond the
13   scope.
14      THE WITNESS: Generally, yes.
15 BY MS. DICKINSON:
16   Q.   Does Purdue acknowledge that
17 there is an opioid epidemic in America today?
18      MR. SNAPP: Objection, beyond the
19   scope.
20      THE WITNESS: Purdue acknowledges
21   that there is an opioid crisis and are
22   taking -- have and will continue to take
23   steps to do what we can to address that
24   crisis.

Page 486

BY MS. DICKINSON:
Q. Do you not want to call it an epidemic?
A. Not that I don't want to. The definition of an epidemic varies. I'm not sure how to define it.
Q. Is it fair to call what's happening in this country an opioid epidemic?
    MR. SNAPP: Objection, beyond the scope.
    THE WITNESS: I think it's fair to call it a crisis.
BY MS. DICKINSON:
Q. I'm not understanding the difference. Why are you differentiating between the word epidemic and crisis?
    MR. SNAPP: Object to the form.
    THE WITNESS: Epidemic might be another term that could be, but it depends how it's defined.
BY MS. DICKINSON:
Q. So would you agree with me that's an accurate way to describe what is going on in this country today or not?

Page 487

    MR. SNAPP: Object to the form. Objection as beyond the scope.
    THE WITNESS: It's one way, yes.
BY MS. DICKINSON:
Q. Okay. Is Purdue aware that millions of people in America today are either addicted or dependent to prescription opioids?
    MR. SNAPP: Objection, beyond the scope.
    THE WITNESS: We are -- we are aware that prescription opiates contribute to opiate addiction. The numbers we talked earlier about, the rates, it's a complex issue, whether pre-existing conditions, other agents and so forth, the numbers are still the science we talked about that we're working on.
BY MS. DICKINSON:
Q. I didn't ask what was the reason. I asked if Purdue was aware that millions of Americas are either addicted to or dependent on prescription opioids? Is Purdue aware of that?
    MR. SNAPP: Objection, beyond the

Page 488

scope and form.
    THE WITNESS: We're aware that many Americans, I don't know the exact number, but there's many statements have abuse, opiate abuse use disorder, yes.
BY MS. DICKINSON:
Q. Are you aware that federal agencies like the CDC had put that number at millions?
    MR. SNAPP: Objection.
    THE WITNESS: Yes.
BY MS. DICKINSON:
Q. Does Purdue bear any responsibility for those numbers?
    MR. SNAPP: Objection, beyond the scope.
    THE WITNESS: As I stated, the opiate addiction and abuse crisis is serious and a tragedy. I'm not -- it's not my place to assign blame. As I said, it's a very complex issue, and there are numerous factors involved in this crisis, and we're doing -- Purdue is doing what we can to address it.

Page 489

BY MS. DICKINSON:
Q. I wasn't asking you to assign blame.
    I asked whether Purdue bears any responsibility for the opioid crisis?
    MR. SNAPP: Objection, beyond the scope and form.
    THE WITNESS: I don't think that's for me to answer.
BY MS. DICKINSON:
Q. As the head of regulatory affairs at Purdue and a long-time employee since 2000, you can't answer that question?
    MR. SNAPP: Object to the form.
    THE WITNESS: The -- I think I've answered that the opiate crisis is a tragedy and that Purdue is doing what we can to address it.
BY MS. DICKINSON:
Q. But you -- sorry. Go ahead.
A. Prescription opioids are -- there have been abuse of prescription opioids that have been identified in the early 2000s, so it is -- it's a part of the complex situation, and,

Highly Confidential - Subject to Further Confidentiality Review

Page 490

1 as I said, Purdue is doing what we can to
2 address it.
3  Q. Sitting here today as Purdue's
4 corporate witness, you either can't or won't
5 answer whether Purdue bears responsibility for
6 causing, at least in part, that crisis; is that
7 true?
8  MR. SNAPP: Objection to form.
9  Objection as beyond the scope.
10  THE WITNESS: As I said, it's --
11  the determinants of that crisis are
12  multifactorial.
13 BY MS. DICKINSON:
14  Q. That's not my question.
15  Is Purdue and its conduct one of
16 those factors that caused or contributed to the
17 opioid crisis?
18  MR. SNAPP: Object to the form.
19  Objection as beyond the scope.
20  THE WITNESS: There are --
21  prescription opioids are part of -- one
22  of the factors, so Purdue markets those,
23  so it's part of the -- there is a
24  contribution to the fact -- to the

Page 491

1  crisis.
2 BY MS. DICKINSON:
3  Q. And are you saying that Purdue,
4 by its marketing, did cause or contribute to the
5 opioid crisis by that statement?
6  MR. SNAPP: Object to the form.
7  Objection as beyond the scope.
8  THE WITNESS: I would not say
9  that it caused the opiate crisis.
10 BY MS. DICKINSON:
11  Q. Did it contribute to it?
12  MR. SNAPP: Object to the form.
13  Objection as beyond the scope.
14  THE WITNESS: The prescription
15  opioids did contribute.
16 BY MS. DICKINSON:
17  Q. And Purdue's conduct in
18 marketing, did it contribute to the opioid
19 crisis?
20  MR. SNAPP: Object to the form.
21  Objection as beyond the scope.
22  THE WITNESS: I would say that
23  the -- as the GAO report said there,
24  that based on the data, that's not been

Page 492

1  determined.
2 BY MS. DICKINSON:
3  Q. So your answer is no?
4  A. Yes.
5  MS. DICKINSON: That's all I have
6  for now.
7  THE VIDEOGRAPHER: Off the
8  record?
9  MS. DICKINSON: Sure.
10  THE VIDEOGRAPHER: The time is
11  12:04 p.m., going off the record.
12  (Pause.)
13  (Document marked for
14  identification as Purdue-Fanelli-69.)
15  THE VIDEOGRAPHER: Okay. We are
16  back on the record. The time is
17  12:06 p.m.
18 BY MR. STEWART:
19  Q. Sir, do you have an exhibit in
20 front of you?
21  A. I do.
22  Q. What's the exhibit number?
23  A. Sorry. 069.
24  Q. And do you recall your attorney

Page 493

1 just asked you about the GAO report and
2 statements made about the ability to monitor
3 diversion? Do you recall getting asked about
4 that?
5  A. Yes.
6  Q. Okay. And do you see in front of
7 you a document that was produced during the time
8 you were in your current capacity?
9  A. Yes.
10  Q. Okay. Are you familiar with the
11 document?
12  A. Yes.
13  Q. What is it?
14  A. We talked about earlier the
15 postmarketing requirements, and FDA -- we talked
16 about there's -- it's changed over time, but we
17 talked about a protocol is required to be
18 submitted, but also interim reports are
19 required, and this is part of annual report to
20 satisfy that requirement.
21  Q. And could you turn to page 16.
22 Do you see starting with the very first word on
23 page 16 -- oh, pardon me, I said page 16. Could
24 you turn to page 26, 26 in the document or 6795