# EXHIBIT 116

Highly Confidential – Subject to Further Confidentiality Review

Page 1

**REDACTED**



Highly Confidential - Subject to Further Confidentiality Review

Page 206

1     the form.
2          THE WITNESS:  Can you define
3     diversion for me, your definition of
4     diversion?
5     QUESTIONS BY MR. MOUGEY:
6          Q.    You want me to define diversion
7     for you?
8          A.    Because it can mean so many
9     different things.  That's why I'm asking.
10         Q.    Pills that are not ending up in
11    a legitimate home and out into the stream of
12    commerce.  Did -- that pills were being
13    diverted from legitimate patients into the
14    hands of kids, that were being diverted into
15    the hands of drug dealers and making their
16    way into other states.
17         MR. STOFFELMAYR:  Objection to
18    the form.
19         THE WITNESS:  So are you asking
20    me if I was aware that that was
21    happening?
22    QUESTIONS BY MR. MOUGEY:
23    Q.    Yes, sir.
24         A.    Yes, I was aware that people
25    were using opioid medications not for their

Page 207

1     intended use.
2          Q.    And not just for -- not just
3     for their intended use, but were you aware
4     that Florida was the epicenter of a notorious
5     well-documented epidemic of description drug
6     abuse, and those pills were migrating to
7     other states?
8          A.    I was made aware of that during
9     my time in pharmaceutical integrity.
10         Q.    So not until 2013?
11         A.    Correct.
12         Q.    And, sir, what were you told by
13    Walgreens about the migration of pills from
14    Florida pharmacies into other states?
15         A.    We were made aware of some of
16    the drug-seeking behavior of some of the
17    patients and how -- some of the techniques
18    that they use to obtain prescriptions not for
19    a legitimate medical purpose and made aware
20    of some prescribers that were not writing
21    prescriptions for legitimate medical purpose.
22         Q.    So at that point in time, in
23    2013, did you make a study or analyze the
24    systems set in place at Walgreens to minimize
25    or avoid the diversion of Schedule II and III

Page 208

1     narcotics?
2          MR. STOFFELMAYR:  Objection to
3     the form.
4          THE WITNESS:  I personally did
5     not, no.
6     QUESTIONS BY MR. MOUGEY:
7          Q.    You never went back and looked
8     prior to '13 what Walgreens was doing prior
9     to the agreed-upon creation of the
10    pharmaceutical integrity department?
11         A.    That was not part of my role,
12    so, no, I did not.
13         Q.    Did you ask anybody, Well, what
14    were we doing before the pharmaceutical
15    integrity department was created by agreement
16    between the DEA and Walgreens?
17    A.    I did not.
18         Q.    You never went back and looked
19    at the systems in place to avoid diversion
20    prior to you starting in the pharmaceutical
21    integrity department?
22         MR. STOFFELMAYR:  Objection to
23    the form.
24         Go ahead.
25         THE WITNESS:  That was not part

Page 209

1     of my role, no.
2     QUESTIONS BY MR. MOUGEY:
3          Q.    Have you ever looked through
4     this document that I have in front of you and
5     identified the discussion about the migration
6     of pills from Florida pharmacies to other
7     states?
8          A.    No.
9          Q.    Are you aware of how big a
10    problem it was in Florida that pills were
11    migrating from Florida pharmacies to other
12    states?
13         A.    I was not aware of the size of
14    the problem, no.
15         Q.    If you would, sir, please turn
16    to page 41, and it says, "Summary of
17    testimony."  It's the Deputy Assistant
18    Administrator, Joseph Rannazzisi, says he's
19    from the DEA.
20         Do you see that, sir?
21    A.    Yes.
22         Q.    And, sir, this is a submission
23    from the government's prehearing statement.
24         Do you see that, sir?
25    A.    I do.