# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **IN RE: NATIONAL PRESCRIPTION** | ) | |
| **OPIATE LITIGATION** | ) | MDL No. 2804 |
| | ) | |
| This document relates to:  ALL CASES | ) | Hon. Judge Dan A. Polster |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## DECLARATION OF JESSICA MERRY SAMUELS

I, Jessica Merry Samuels, declare as follows:

1.      I am an attorney at the law firm of Covington & Burling LLP, counsel to Defendant McKesson Corporation.

2.      From July 9 to July 18, 2019, I reviewed the materials posted on the website www.opioidsnegotiationclass.com ("the website"), which is referred to throughout plaintiffs' Renewed and Amended Motion for Certification (Dkt. No. 1820).  Except as otherwise stated, I make this declaration based on my own personal knowledge and my review of the materials posted on that website as of July 17 and July 18, 2019.  The exhibits attached to this declaration are true and correct copies of screenshots from that website taken on July 17 and July 18, 2019.

3.      The "Frequently Asked Questions" document attached to plaintiffs' Proposed Order (Dkt. No. 1820-2) as Exhibit B states in FAQ #8 that "[d]etailed descriptions of the

1

sources and methodologies" for the proposed allocation model "are provided in the

Memorandum posted at Opioidsnegotiationclass.com." The document also states in FAQ #12

that the "formula" and "data sources" for both steps of the proposed allocation process are

"described in detail at opioidsnegotiationclass.com." After reviewing the website, I have not

located any "memorandum" other than a PDF copy of "Plaintiffs' Memorandum in Support of

Renewed and Amended Motion for Certification," filed in this action at Dkt. No. 1820-1

("Plaintiffs' Rule 23 Brief"). No other materials on the website provide the formulas or

underlying data sets used in connection with plaintiffs' proposed allocation model.

4.      A copy of the "Frequently Asked Questions" posted to the website as of July 18,

2019 is attached hereto as Exhibit A. This document is not identical to the FAQ document

attached to plaintiffs' Proposed Order (Dkt. No. 1820-2). In the website version, FAQ #8 states:

"Detailed descriptions of the sources and methodologies for each of the three factors will be

posted to this website, once available." FAQ #12 states: "The formula and its data sources will

be posted to this website, once available. . . . The default allocation formula uses historical

federal data showing how the specific county and the cities within it have made opioids-related

expenditures in the past. This formula and its data sources will be posted to this website, once

available." After reviewing the website, I have not located any additional information about data

sources, methodologies, or formulas, other than what is supplied in Plaintiffs' Rule 23 Brief. *See*

*supra* ¶ 3.

5.      The "Proposed Class Action Notice" document attached to plaintiffs' Proposed

Order (Dkt. No. 1820-2) states that an "Allocation Lookup Tool . . . will be available on the

website on an ongoing and current basis," which proposed class members may use to

"determin[e] your allocation of any proposed settlement." After reviewing the website, I have

2

not located anything titled an "Allocation Lookup Tool." There is a link on the website to an "Allocation Map," which, according to the website, provides an "allocation amount" by county and within each county "based on a hypothetical $1 billion gross settlement for Counties and Cities," from which "$150 million will be reserved for the Class Members' Special Needs Fund," and "$100 million will be reserved for a Private Attorneys' Fee Fund." A sample of the projected county-level allocation (for Cuyahoga County, Ohio) is attached hereto as Exhibit B.

6.    I have reviewed sample listings similar to Exhibit B from the "Allocation Map" on the website for certain counties within three states – Ohio, Maryland, and Idaho. My review was not comprehensive, but I was able to ascertain from reviewing just a sample of results that, according to the default allocations presented for a hypothetical $1 billion gross settlement:

- more than 300 class members (cities, towns, villages, or townships) in Ohio would be allocated less than $500;

- more than 50 class members (cities, towns, villages, or townships) in Ohio would be allocated $10 or less, and at least one would be allocated only $1;

- more than 90 class members (cities, towns, villages, or townships) in Maryland would be allocated less than $500;

- at least 20 class members (cities, towns, villages, or townships) in Maryland would be allocated $10 or less, and at least two would be allocated only $1;

- more than 120 class members (cities, towns, villages, or townships) in Idaho would be allocated less than $500; and

- at least 15 class members (cities, towns, villages, or townships) in Idaho would be allocated $10 or less, and at least one would be allocated only $1.

7.    According to the "Allocation Map" on the website, assuming a hypothetical $1 billion gross settlement, Cuyahoga County would receive a "County-level Allocation" of $3,560,780. See Ex. B. The website does not identify the specific formula used to determine that figure. The website states that this "Initial Distribution will be shared between the county and all incorporated municipalities within the county." The website further states that, "[i]f the

3

county and cities are unable to reach agreement" as to how the allocation will be shared, "the funds will be distributed . . . according to the default intra-county allocation formula explained in FAQ 12." According to the table provided on the website, under this further hypothetical allocation Cuyahoga County would receive $2,296,168, and Cleveland would receive $617,826. *See* Ex. B.

      8.      Plaintiffs' Rule 23 Brief provides, as an example of how funds would be allocated to a county and to the cities within that county (in the absence of agreement) a description identifying amounts for Cuyahoga County and Cleveland. (Dkt. No. 1820-2 at 60-61.) The figures provided do not match those yielded by the Allocation Map on the website. The calculation in the brief does not appear to take into account the $250 million deduction for the two Funds, but even once those are taken into account the results are still not the same as those yielded by the Allocation Map on the website. Plaintiffs' brief states that, for purposes of this allocation, Cuyahoga County's "score" would be 0.48%, and Cuyahoga County's and Cleveland's "government spending" percentages would be 64.5% and 17.4%, respectively. (Dkt. No. 1820-1 at 60-61.) The Allocation Map on the website does not disclose the comparable "score," "government spending" percentages, or corresponding formula used for the figures presented there. Applying the values offered in the brief and making the deduction for the two Funds results in the following calculations:

> $1 billion settlement - $150 million (Class Members' Special Needs Fund)
>                                     - $100 million (Private Attorneys' Fee Fund)
> = $750,000,000 distribution to class members
>
> Cuyahoga County's average score: 0.48%
> 0.0048 * $750,000,000 = $3,600,000
>
> Cuyahoga County's government spending percentage: 64.5%
> Cleveland's government spending percentage: 17.4%

4

0.645 * $3,600,000 = $2,322,000 to Cuyahoga County
0.174 * $3,600,000 = $626,400 to Cleveland

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Executed on July **22**, 2019 in Washington, DC.

_____
Jessica Merry Samuels

# Samuels Declaration Exhibit A

# In Re: National Prescription Opiates Litigation (/)

MDL No. 2804 (N.D. Ohio)

# Frequently Asked Questions

1. Why is a Negotiation Class being formed? What is its purpose?

2. What entities are included in the Negotiation Class?

3. Are cities and counties with state court-filed actions considered part of the Negotiation Class?

4. Is this the first Negotiation Class?

5. Why use a class mechanism?

6. Has there been a settlement reached with defendants yet?

7. If a Negotiation Class is formed, will it end the opioid litigation that my jurisdiction has filed?

8. How Does the Allocation Model Work?

9. What will happen with this proposed Class?

10. Under this proposal, what happens to my jurisdiction's current fee agreement with outside counsel?

11. What will Negotiation Class Representatives receive that other jurisdictions don't get?

12. What if cities, towns, and boroughs within a county have different views of how to allocate any settlement proceeds?

13. If my jurisdiction chooses to participate in the Negotiation Class, how will it know when there is a proposed settlement?

14. If there is a proposed settlement, does the Court still have to approve it?

15. If there is a proposed settlement and my jurisdiction is included in the Negotiation Class, but it disapproves of the settlement terms, can my jurisdiction object to the settlement?

16.  How is the voting done?

17.  Exactly how does the Supermajority Voting Process Work?

18.  How do Class Counsel get paid?

19.  Can I exclude myself from the Negotiation Class?

20.  What is the Class Members' Special Needs Fund?

21.  How long will the Negotiation Class Last?

22.  If there is a settlement between a defendant and a State or States, what impact will this Class Action settlement have on the division of monies between a State and the cities and counties within the State?

23.  How does the Negotiation Class affect other types of plaintiffs' claims?

24.  Who are the Class Representatives?

25.  Who are Class Counsel?

26.  How can I keep up with what's going on in this case?

1.  **Why is a Negotiation Class being formed? What is its purpose?**
The purpose of the Negotiation Class is to create a cohesive group of cities and counties to negotiate Classwide settlements, on a voluntary basis, involving defendants who are engaged in nationwide opioid manufacturing, sales or distribution. The Negotiation Class will be represented by Class Representatives and Class Counsel. Class members will vote on any resulting settlement proposal, and any settlements that achieve a 75% supermajority "yes" vote by the Class (as described in FAQ 16 and FAQ 17 below) will go to the Court for formal approval. The ultimate purpose of creating a Negotiation Class is to make settlement easier to obtain.

**Back To Top**

2.  **What entities are included in the Negotiation Class?**
The Negotiation Class is defined as:

> **All counties, parishes, and boroughs (collectively, "counties") and all incorporated places, including without limitation cities, towns, townships, villages, and municipalities, as defined by the United States Census Bureau (collectively "cities"); as listed and available for download here (/Content/Documents/Cities and Counties.xlsx).**

Check the Cities and Counties list posted on this class website to confirm whether you are included. If yes, you are a Negotiation Class member. The Class papers speak of "counties" and "cities" as shorthand terms. The Class by definition includes political subdivisions with other names and titles, such as parishes, villages, towns, townships, etc., so long as they appear on the U.S. Census bureau lists as governmental entities that provide services to their residents.

**Back To Top**

3. **Are cities and counties with state court-filed actions considered part of the Negotiation Class?**
   Yes. Cities and counties with state court-filed actions are members of this Negotiation Class, with the option to opt-out. However, nothing about membership in the Negotiation Class interferes with the rights of any federal or state court plaintiffs to proceed with their own cases for litigation, trial, or individual settlement. If and when a Class settlement has been reached, has achieved a supermajority approval vote by the Class, and has been approved by the Court, Class Members would release their settled claims in return for benefits.

**Back To Top**

4. **Is this the first Negotiation Class?**
   Yes. This is a new use of the class action mechanism under Rule 23 of the Federal Rules of Civil Procedure, reflecting the unique nature of the national Opioids litigation. Unlike any mass litigation before, thousands of cities and counties nationwide are pursuing claims against major defendants. The goal is to recover money to help fight the opioids epidemic, provide prevention and treatment services going forward, and change defendants' practices.

**Back To Top**

5. **Why use a class mechanism?**

   Joining all cities and counties together as a Negotiation Class gives them maximum negotiating power, makes the negotiation of global settlements a more practical process, allows defendants to obtain global resolution, and enables Class Members to vote on resulting settlement offers.

   **Back To Top**

6. **Has there been a settlement reached with defendants yet?**

   No. No settlement has been reached with any defendant. But the existence of a Class of cities and counties makes future settlement offers more likely, because a defendant will be able to obtain "global peace."

   **Back To Top**

7. **If a Negotiation Class is formed, will it end the opioid litigation that my jurisdiction has filed?**

   No. Your membership in the Negotiation Class will not affect any opioid suit that you have filed. It will not stop you from filing or pursuing a lawsuit, and it will not affect any scheduled hearings or trials in that lawsuit. Only a final classwide settlement would do that, after supermajority vote to approve it and after final Court approval. In the meantime, you do not need to opt-out of the Class in order to try or settle your own case, and you may keep any settlement or judgment you obtain.

   **Back To Top**

8. **How Does the Allocation Model Work?**

   The allocation model uses three factors, based on reliable, detailed, and objective national data, to determine the share of a settlement fund that each county would receive (distribution of that share within the county is addressed in FAQ 12 below). These factors address the most critical causes and effects of the opioids crisis, and are each weighted equally (1/3-1/3-1/3): (1) the amount of opioids distributed within the county, (2) the number of opioid deaths that occurred in the county; and (3) the number of people who suffer opioid use disorder in the county. This model is designed not to favor either small or large counties based solely on population. However, population is still taken into account because each of the three metrics tends to increase with population. Ultimately, the model allocates settlement funds proportionally to where the opioid crisis has caused actual harm. To ensure objectivity and transparency, the model uses only data collected and reported by the federal government, and follows the reporting mechanisms deemed most relevant by public health

authorities in measuring opioids-related harm. Detailed descriptions of the sources and methodologies for each of the three factors will be posted to this website, once available.

**Back To Top**

9. **What will happen with this proposed Class?**
   The creation of the Negotiation Class has these steps:

   ◦ On July 9, 2019, plaintiffs will file a motion for class certification to Judge Polster, the federal judge overseeing all of the national opioids litigation, to be heard on August 6, 2019.

   ◦ If Judge Polster grants the motion and certifies the Negotiation Class, a class action notice will then go out to all Class Members. That will be the beginning of a 60-day period during which each Class Member can decide to participate or to opt out of the Class. Class Members who want to participate do not need to do anything at this point; only those seeking not to participate must file an opt-out form.

   ◦ After the close of the opt-out period, the Court will enter an order confirming the membership of the Class, saying who is in and who is out of the Class.

   ◦ After that, the Class will operate if, and only if, a national defendant wishes to negotiate with the Class as a whole through the Negotiation Class mechanism. If a proposed settlement is reached by the Class Negotiators, then the proposal will be submitted for Class approval or rejection according to the supermajority voting formula (described in FAQ 16 and FAQ 17 below). If no proposed settlement is reached, the Class will not vote and will have no other role.

   **Back To Top**

10. **Under this proposal, what happens to my jurisdiction's current fee agreement with outside counsel?**
    The current fee agreement that a city or county has with its outside counsel remains in effect. Membership in the Negotiation Class does not change that. In the event of any settlement that achieves Class and Court approval, there would be a fund from which outside counsel could apply for fees and costs in lieu of any current fee agreement. That would be a voluntary choice, a decision between the city or county and its outside counsel. A total of 10% of any approved Class settlement amount will be held in a Private Attorneys Fund from

which privately retained lawyers who forego their retainer agreements could recover for the work they have done. Any unawarded amount remaining in this Fund would revert to the Class.

**Back To Top**

11. **What will Negotiation Class Representatives receive that other jurisdictions don't get?**
Negotiation Class representatives do not receive preferential treatment under any settlement simply by serving as Class representatives. They could apply to the Court for reimbursement of costs and expenses incurred by serving as Class representatives, in what is called an incentive or service award, designed to encourage action by Class representatives on behalf of others. Any such awards are subject to Class notice and Court approval.

**Back To Top**

12. **What if cities, towns, and boroughs within a county have different views of how to allocate any settlement proceeds?**
The Negotiation Class includes a two-step formula for allocation of any settlement funds. Allocation of funds is first made between all counties in the country, according to the harm they have suffered. Harm is measured using published federal statistics regarding the amount of opioids shipped to the county, the number of opioid overdose deaths that occurred in the county, and the number of persons suffering from opioid use disorder in the county. The formula and its data sources will be posted to this website, once available. A second allocation then takes place between each county and the cities located within it, and is overseen by a Special Master. A county and the cities within it may share the funds allocated to the county in any manner they choose. If the county and cities cannot agree, then a default allocation formula will apply, unless the Special Master accepts a different formula submitted for consideration. The default allocation formula uses historical federal data showing how the specific county and the cities within it have made opioids-related expenditures in the past. This formula and its data sources will be posted to this website, once available. Counties and their constituent cities, towns, and boroughs are encouraged to confer and agree, among themselves, as to the distribution of any funds allocated at the county level in any settlement.

**Back To Top**

13. **If my jurisdiction chooses to participate in the Negotiation Class, how will it know when there is a proposed settlement?**

All Negotiation Class members will be given advance notice of any settlement offer, including details on its terms and conditions, and they will have an opportunity to vote on each individual settlement offer. Only settlements achieving supermajority (75%) approval votes, by number, by allocation, and by population, of the litigating and non-litigating entities will be submitted to the Court for formal settlement Class approval. You will be able to cast your vote securely, through the Negotiation Class website, which will establish a voting identity and portal for each Class member.

**Back To Top**

### 14.  If there is a proposed settlement, does the Court still have to approve it?

Yes. If there is a proposed settlement that achieves supermajority (75%) approval by the Negotiation Class membership, the Court will review and decide whether to approve it, utilizing the formal Class action settlement approval process and criteria set forth in Fed. R. Civ. P. 23(e). (*See* www.law.cornell.edu/rules/frcp/rule_23 (https://www.law.cornell.edu/rules/frcp/rule_23).)

**Back To Top**

### 15.  If there is a proposed settlement and my jurisdiction is included in the Negotiation Class, but it disapproves of the settlement terms, can my jurisdiction object to the settlement?

Yes. As a Negotiation Class member, you are entitled under Rule 23(e) to object to any settlement, even if it has received a supermajority (75%) approval from the Class.

**Back To Top**

### 16.  How is the voting done?

Each Class Member will vote only once. The vote is simply yes or no, in favor or against the proposed settlement. Votes are then tabulated mechanically within each applicable voting pool, to make sure a supermajority of each pool is in favor of the proposed settlement before it is presented to the Court. The voting pools are described in **FAQ 17** below. Voting tabulation does not require any effort on the part of the Class Members, who simply cast a single vote on the ultimate issue. The requirement of a supermajority across the different voting pools ensures a wide cross-section of support from cities and counties of all sizes and interests.

**Back To Top**

17. **Exactly how does the Supermajority Voting Process Work?**
The agreement to be bound by a supermajority vote means that no settlement can be reached that would bind the Negotiation Class without the approval of a supermajority of the Class, defined in several ways. To be binding, 75% of each of the following six categories must approve a proposed settlement:

◦ 75% of the total number of cities and counties that have filed suit as of June 14, 2019 ("litigating entities"). This number is based on all individual Class members who had suits on file regardless of size, so that each voting entity has one vote;

◦ 75% of the total population of all cities and counties that have filed suit as of June 14, 2019. For this computation, the vote of the city or county is weighted according to its population, with each person in a voting city and each person in a voting county equal to one vote. Thus, by way of example, if a county votes yes and has a population of 20,000, and a city within the county votes yes and has a population of 10,000, the county's vote is weighted as 20,000 votes in favor, and the city's vote is recorded as 10,000 votes in favor. The population for each jurisdiction is drawn from the 2010 Census data, and is available here (/Content/Documents/Cities and Counties.xlsx). The data will be updated once 2020 Census figures become available. Many individual residents in this category may be counted twice, once as a resident of a municipality, and once as a resident of a county;

◦ 75% of the total population of all cities and counties that have not filed suit as of June 14, 2019. For this computation, the vote of the city or county is weighted according to its population, with each person in a voting city and each person in a voting county equal to one vote. Thus, by way of example, if a county votes yes and has a population of 20,000, and a city within the county votes yes and has a population of 10,000, the county's vote is weighted as 20,000 votes in favor, and the city's vote is recorded as 10,000 votes in favor;

◦ 75% of the total population of all cities and counties that have not filed suit as of June 14, 2019. For this computation, each person in a voting city and each person in a voting county is the equivalent of one vote. The population for each jurisdiction is drawn from the 2010 Census data, and is available here (/Content/Documents/Cities and Counties.xlsx). The data will be updated once 2020 Census figures become available. Many individual residents in this category may be counted twice, once as a resident of a municipality, and once as a resident of a county.

◦ 75% of the litigating entities, weighted by their settlement fund allocations as shown on the Allocation Map (https://allocationmap.iclaimsonline.com).

◦ 75% of the non-litigating entities, weighted by their settlement fund allocations as shown on the Allocation Map (https://allocationmap.iclaimsonline.com).

In order for a proposed settlement to be binding on the Negotiation Class, a 75% supermajority in each of these six categories must vote in favor. No settlement may be approved as binding unless all categories are in favor at the requisite 75% level. For purposes of counting votes, only votes cast will be considered. Consistent with the voting rules in Section 524(g) of the bankruptcy code, which also requires special qualified majorities for different categories, non-votes are not considered as part of the denominator. The 75% figure is calculated on the basis of the votes actually cast. Votes cast are included in multiple pools, and a supermajority of a 75% "yes" vote in all six of these pools is required for Class approval.

**Back To Top**

18. **How do Class Counsel get paid?**
Class Counsel will apply to the Court for approval of fees and costs under Rule 23(h). As a Class member, you will have notice and an opportunity to be heard on any such application. The Court will appoint fee committees to make recommendations of any fee awards, to avoid duplication of payment, and to assure appropriate compensation of those whose efforts provided a common benefit.

**Back To Top**

19. **Can I exclude myself from the Negotiation Class?**
Yes. You may exclude yourself, or "opt out," by signing, notarizing, and emailing a statement such as "I wish to exclude myself from the Negotiation Class" to info@OpioidsNegotiationClass.info (mailto:info@OpioidsNegotiationClass.info) by (date to be set by the Court, and updated on this website once available). This request must be signed by an authorized official or employee of the city or county itself. If you exclude yourself from the Negotiation Class, you will not be bound by any Orders or Judgments regarding the Class, and you will not share in any settlement reached by the Class. See the attached chart for explanation of the effect of a choice to opt out.

**Back To Top**

20. **What is the Class Members' Special Needs Fund?**
The Special Needs Fund will be created with 15% of any approved Class settlement amount. Applications may be made to the Special Needs Fund by any Class member. Distributions from the Special Needs Fund to Class Members are allowed for: (1) a Class Member to recover its own costs of litigating its lawsuit; and (2) to obtain additional relief for any local impact of the opioids crisis that is not captured by the Class Member's automatic allocation. Applications will be made to and approved by a court-appointed Special Master, on a case-by-case basis. Any unawarded amount remaining in this Special Needs Fund would revert to the Class.

**Back To Top**

21. **How long will the Negotiation Class Last?**
The Negotiation Class will last for 5 years from the date it is confirmed by the Court. For example, the Negotiation Class will expire on September 15, 2024, if the Court enters an order confirming the class on September 15, 2019. After that date, the Class will not exist as an entity with which a defendant can negotiate. However, the Negotiation Class will continue to exist with regard to: (1) any settlements presented to the Negotiation Class for a vote before that date, to allow the settlement voting and approval process to continue; and (2) Class settlements reached before that date, to enable settlement administration and enforcement to be completed.

**Back To Top**

22. **If there is a settlement between a defendant and a State or States, what impact will this Class Action settlement have on the division of monies between a State and the cities and counties within the State?**
Nothing in a Class Negotiation Settlement itself would affect the distribution of monies from a State to a city or county, or among the States. However, the parties recognize it is probable that one or more defendants will seek to resolve the Opioid litigation by a joint settlement offer to one or more States and the cities and counties within that State. If a defendant offers a settlement of this nature, it would lead to discussion between the State and the cities and counties within the State. The first preferred result of that discussion is for each State to reach agreement with the cities and counties within the State on the allocation and use of the money within the State. In the absence of an agreement, there would be a negotiation of an appropriate allocation between the States and the cities and counties. Any agreed-to allocation would be treated as a settlement

and submitted to the Negotiation Class for its consideration. Again, the preferred alternative would be for a State and the cities and counties within the State to reach agreement.

**Back To Top**

23.  **How does the Negotiation Class affect other types of plaintiffs' claims?**
The Negotiation Class does not directly affect the litigation or settlement of the claims of other types of plaintiffs, such as Indian Tribes, third party payors, and others, that are proceeding in federal or state courts. These plaintiffs can organize themselves as groups or propose their own classes, for trial or settlement purposes. The Negotiation Class may have an indirect effect on, and provide an opportunity for, these other types of plaintiffs, because a defendant that desires a comprehensive resolution of all its opioids liability exposure may wish to include all types of plaintiffs in a settlement, thus prompting organized involvement with negotiations by these other plaintiff groups on their own behalf.

**Back To Top**

24.  **Who are the Class Representatives?**
The proposed Class Representatives are:

1.  County of Albany, New York;
2.  City of Atlanta, Georgia;
3.  Bergen County, New Jersey;
4.  City of Baton Rouge/East Baton Rouge Parish, Louisiana;
5.  Broward County, Florida;
6.  Camden County, New Jersey;
7.  Cass County, North Dakota;
8.  City of Chicago, Illinois;
9.  Cobb County, Georgia;
10. City of Concord, New Hampshire;
11. Cumberland County, Maine;
12. Cuyahoga County, Ohio;
13. City of Delray Beach, Florida;
14. Denver, Colorado;
15. Escambia County, Florida;
16. Essex County, New Jersey;
17. County of Fannin, Georgia;
18. Franklin County, Ohio;
19. Galveston County, Texas;

20. County of Gooding, Idaho;

21. City of Grand Forks, North Dakota;

22. County of Hennepin, Minnesota;

23. City of Indianapolis, Indiana;

24. County of Jefferson, Alabama;

25. Jefferson County/ City of Louisville, Kentucky;

26. Jersey City, New Jersey;

27. Kanawha County, West Virginia;

28. King County, Washington;

29. City of Lakewood, Ohio;

30. City of Los Angeles, California;

31. City of Lowell, Massachuset

32. City of Manchester, New Hampshire;

33. Maricopa County, Arizona;

34. Mecklenburg County, North Carolina;

35. The Metropolitan Government of Nashville and

Davidson County, Tennessee;

36. Milwaukee County, Wisconsin;

37. Monterey County, California;

38. City of Norwalk, Connecticut;

39. County of Palm Beach, Florida;

40. Paterson City, New Jersey;

41. City of Phoenix, Arizona;

42. Prince George's County, Maryland;

43. Riverside County, California;

44. City of Saint Paul, Minnesota;

45. City of Roanoke, Virginia;

46. County of Rockland, New York;

47. City and County of San Francisco, California;

48. County of Smith, Texas;

49. Summit County, Ohio;

50. County of Tulsa, Oklahoma; and

51. Wayne County, Michigan

__Back To Top__

**25. Who are Class Counsel?**

The (Proposed) Class Counsel are:

- Jayne Conroy (Plaintiffs' Executive Committee, Co-Lead Class Counsel);

- ◦ Christopher Seeger (Plaintiffs' Executive Committee, Plaintiffs' Settlement Committee, Co-Lead Class Counsel);

- ◦ Gerard Stranch;

- ◦ Louise Renne (former City Attorney for the City and County of San Francisco);

- ◦ Mark Flessner (City of Chicago Corporate Counsel); and

- ◦ Zachary Carter (Corporation Counsel of the City of New York)

Each of them represents only cities/counties government entities in Opioids-related litigation.

**Back To Top**

26. **How can I keep up with what's going on in this case?**
All pertinent news and information will be posted to this website on an ongoing basis.

**Back To Top**

---

Contact Us (/Home/ContactUs)        Privacy Policy (/Home/Privacy)

Terms of Use (http://www.epiqglobal.com/terms-of-use)

---

**Questions? Contact the Administrator at info@OpioidsNegotiationClass.info (mailto:info@OpioidsNegotiationClass.info).**

---

© 2019 Epiq (http://www.epiqglobal.com) All rights reserved | | Version: 1.0.0.18 | Updated: 7/9/2019 4:11:36 PM

# Samuels Declaration Exhibit B

# In Re: National Prescription Opiates Litigation (http://www.opioidsnegotiationclass.info/)

MDL No. 2804 (N.D. Ohio)

## Allocation Map

Select a State and County, then press Submit. The allocation amount is based on a hypothetical $1 billion gross settlement for Counties and Cities, of which $150 million will be reserved for the Class Members' Special Needs Fund(i) and $100 million will be reserved for a Private Attorneys' Fee Fund(ii), which results in $750 million for the Initial Distribution to Counties & Cities. If you have questions regarding the allocation process, please click FAQs (http://www.opioidsnegotiationclass.info/Home/FAQ) in the menu above.



State:*

| Ohio | ▼ |

County:*

| Cuyahoga County | ▼ |

Submit   Reset

### County-level Allocation for Cuyahoga County*

Total Allocation Value: $3,560,780          Per Capita Value** $2.79

* This Initial Distribution will be shared between the county and all incorporated municipalities within the county.

** "Per Capita Value" refers to the amount the county would receive per resident based on a hypothetical $1 billion gross settlement for Counties and Cities. The per capita value was calculated by dividing the allocation to the county by the county's population

The county and the cities within the county will have the opportunity to reach agreement on how the county-level allocation will be shared amongst them. If the county and cities are unable to reach agreement, the funds will be distributed as shown in the table below, according to the default intra-county allocation formula explained in FAQ 12 (http://www.opioidsnegotiationclass.info/Home/FAQ#faq12). Under the default intra-county allocation formula, when a city's share is less than $500, that amount will instead be distributed to the county in which the city lies to allow practical application of the abatement remedy. Affected cities could seek recovery through intra-county allocation, see FAQ 12 (http://www.opioidsnegotiationclass.info/Home/FAQ#faq12), or from the Class Members' Special Needs Fund, see FAQ 20 (http://www.opioidsnegotiationclass.info/Home/FAQ#faq20). In the rare circumstance that a city with a share of less than $500 lies in a county that does not have a county government, the amount would instead go to the Class Members' Special Needs Fund, and Class members could seek recovery from that Fund.

| Cuyahoga County | $2,296,168 |
| Bay Village | $10,125 |
| Beachwood | $19,668 |
| Bedford | $14,747 |
| Bedford Heights | $13,268 |
| Bentleyville | $686 |

| | |
|---|---|
| Berea | $10,067 |
| Bratenahl | $1,761 |
| Brecksville | $8,270 |
| Broadview Heights | $7,781 |
| Brooklyn | $7,288 |
| Brooklyn Heights | $3,462 |
| Brook Park | $13,367 |
| Chagrin Falls | $4,295 |
| Chagrin Falls Township | $1 |
| Cleveland | $617,826 |
| Cleveland Heights | $29,556 |
| Cuyahoga Heights | $6,650 |
| East Cleveland | $19,149 |
| Euclid | $32,143 |
| Fairview Park | $7,513 |
| Garfield Heights | $17,583 |
| Gates Mills | $2,257 |
| Glenwillow | $1,479 |
| Highland Heights | $7,715 |
| Highland Hills | $541 |
| Hunting Valley*** | $1,779 |
| Independence | $10,691 |
| Lakewood | $34,590 |
| Linndale | $964 |
| Lyndhurst | $11,623 |
| Maple Heights | $13,566 |
| Mayfield | $7,624 |
| Mayfield Heights | $15,787 |
| Middleburg Heights | $12,944 |
| Moreland Hills | $1,188 |
| Newburgh Heights | $1,468 |
| North Olmsted | $13,721 |
| North Randall | $352 |
| North Royalton | $16,825 |
| Oakwood | $5,504 |
| Olmsted Falls | $3,991 |
| Olmsted Township | $5,083 |
| Orange | $3,439 |
| Parma | $52,947 |
| Parma Heights | $11,190 |
| Pepper Pike | $6,648 |
| Richmond Heights | $7,502 |
| Rocky River | $17,281 |
| Seven Hills | $7,155 |
| Shaker Heights | $35,972 |

| Solon | $19,752 |
| South Euclid | $14,280 |
| Strongsville | $25,370 |
| University Heights | $10,531 |
| Valley View | $5,450 |
| Walton Hills | $3,415 |
| Warrensville Heights | $12,392 |
| Westlake | $16,149 |
| Woodmere | $243 |

*** This city crosses county borders. To get this city's default allocation for all associated counties, select each associated county in turn from the County list above.

[i]Applications may be made to the Special Needs Fund by any Class member. Distributions from the Special Needs Fund to Class members are allowed for: (1) a Class member to recover its own costs of litigating its lawsuit; and (2) to obtain additional relief for any local impact of the opioids crisis that is not captured by the Class member's automatic allocation. Applications will be made to and approved by a court-appointed Special Master, on a case-by-case basis. Any unawarded amount remaining in this Special Needs Fund would revert to the Class.

[ii]The Private Attorneys' Fee Fund (up to but no more than 10% of any Class settlement) is intended to address county and city private counsels' attorneys' fees obligations in lieu of contingency fee contracts. See FAQ 10 (http://www.opioidsnegotiationclass.info/Home/FAQ#faq10) for more information.

Contact Us (http://www.opioidsnegotiationclass.info/Home/ContactUs)      Privacy Policy (http://www.opioidsnegotiationclass.info/Home/Privacy)
Terms of Use (http://www.epiqglobal.com/terms-of-use)

Questions? Contact the Administrator at info@OpioidsNegotiationClass.info (mailto:info@OpioidsNegotiationClass.info).

© 2019 Epiq (http://www.epiqglobal.com) All rights reserved | | Version: 1.0.0.12 | Updated: 6/18/2019 12:53:06 PM