# EXHIBIT 90

INVENTORY DATA LICENSE AGREEMENT

This Inventory Data License Agreement (this "Agreement") is made and entered into on ▓▓▓▓▓▓▓▓▓▓▓▓, 2010 ("Effective Date"), by and between Walgreen Co., on behalf of itself and certain affiliates (collectively, "Walgreen"), having its principal place of business at 200 Wilmot Road, Deerfield, IL 60015, and Purdue Pharma L.P. ("Vendor"), having its principal place of business at One Stamford Forum, Stamford, CT 06901.

WHEREAS, Vendor desires to license from Walgreen certain inventory data, as further described herein (the "Data"), relating to Vendor's products, and Walgreen desires to license such data to Vendor on the terms and conditions contained herein;

NOW, THEREFORE, the parties hereby acknowledge the good and valuable consideration described below, and intending to be legally bound, they hereby agree as follows:

1. **LICENSE**

1.1  During the Term (as defined herein), Walgreen will license ("License") to Vendor the Data relating to the Vendor pharmaceutical products identified on <u>Exhibit A</u> attached hereto and made a part hereof (the "Products"). The parties may mutually agree to amend <u>Exhibit A</u> during the term of this Agreement. The parties acknowledge and agree that nothing in this Agreement shall require or obligate Walgreen to disclose to Vendor any information in violation of applicable law as determined by Walgreen in its sole discretion, or Data which may constitute Protected Health Information ("PHI"), as that term is defined under the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 ("HIPAA") and regulations promulgated thereunder by the U.S. Department of Health and Human Services (the "HIPAA Regulations"), and other applicable laws.

1.2  All Data supplied to Vendor shall be in the electronic format, and contain the elements described on <u>Exhibit B</u> attached hereto and made a part hereof. Walgreen shall use commercially reasonable efforts to supply the Data as stipulated in Exhibit B. Daily data shall be available on the next business day, and following receipt of the Licensee Fee from Vendor, as provided herein. If mutually acceptable to the parties, Walgreen may supply the Data to Vendor through a third-party service provider designated by Walgreen from time to time, including, but not limited to, ValueCentric, in accordance with the terms and restrictions of this Agreement. In the event data is supplied to Vendor via a Walgreen's designated third-party service provider, data may be provided in greater frequency as determined by Walgreen and the third-party service provider.

2. **LICENSEE FEE**

2.1  In consideration for the License of the Data by Walgreen to Vendor, during the Term (as hereafter defined) Vendor will pay to Walgreen in advance on a calendar quarterly basis a Licensee fee in US dollars equal to $90,000 (the "Licensee Fee"). The parties further agree that the License Fee is not intended as an inducement for Walgreen to purchase or recommend any products of Vendor.

2.2  Each Licensee Fee shall be paid by Vendor by means of check postmarked or electronic funds transfer no later than the last business day prior to the start of the following calendar quarter, in accordance with this Agreement. Vendor acknowledges and agrees that if it fails to timely pay Walgreen for such Data, Walgreen has no obligation to provide the Data to Vendor, in addition to other rights and remedies under this Agreement and available in equity or at law.

CONFIDENTIAL                                                                                                          PPLPC004000254710

3. **TERM AND TERMINATION**

3.1    This Agreement shall be effective on the Effective Date and shall remain in effect for five years, unless terminated earlier as provided herein ("Term").

3.2    Walgreen may terminate this Agreement without cause and without penalty upon ninety (90) days' prior written notice to Vendor.[Purdue's fee should then be prorated and returned accordingly. This is very one-sided]  In addition, Walgreen shall have the right to immediately terminate this Agreement for Vendor's refusal to perform, or any breach of, any of the terms and conditions of this Agreement.

3.3    In the event of any termination or expiration of this Agreement, the provisions of Section 4, 6, 7, 9 and 10 shall survive such termination or expiration, together with any other provision hereof that by its terms survives termination or expiration hereof.

4. **RESPONSIBILITIES AND REPRESENTATIONS OF THE PARTIES**

4.1    Upon receipt of the Data, Vendor shall transmit an electronic acknowledgement to Walgreen.  In the event that the Data received by Vendor is unintelligible or in garbled form, Vendor shall notify Walgreen of such event and Walgreen shall promptly re-transmit such Data.

4.2    Except as expressly provided in this Agreement, WALGREEN MAKES NO WARRANTIES OR REPRESENTATIONS RELATING TO THE DATA, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

4.3    Each party shall comply and shall cause its employees and representatives to comply with all local, state and federal laws applicable to the performance of their respective obligations under this Agreement and to the use and disclosure of the Data.

5. **SCOPE OF LICENSE**

5.1    Vendor acknowledges and agrees that the Data is confidential and proprietary to Walgreen.  As such, pursuant to the License granted, Vendor agrees that Vendor: (a) may only utilize the Data for its own internal business use and for no other purpose; (b) may not do or cause to be done anything that impairs Walgreen's exclusive ownership of and rights in the Data; (c) may not disclose any Data to any third party (including any of its affiliates, agents, consultants, or subcontractors) without the prior written consent of Walgreen, which consent may be granted or denied in the sole discretion of Walgreen, nor to any of its employees other than on a "need to know" basis; (d) shall protect the Data using the same degree of care by which it protects its own such information, but in no event, less than reasonable care; (e) may not use the Data for its own advantage, other than in the performance of this Agreement; (f) shall advise those employees who obtain access to the Data of the obligations with respect to the Data, as required by this Agreement; and (g) may copy the Data only as necessary for it to perform its obligations to Walgreen in connection with this Agreement or any other agreement by and between the parties, and ensure that confidentiality is maintained in the copying process.  Consistent with this understanding, Vendor may not use the Data for the benefit of any party other than Walgreen.

5.2    In the event that Vendor is required to disclose the Data pursuant to a valid court order or other legal requirement, Vendor shall promptly, and prior to any disclosure, notify Walgreen in writing pursuant to Section 10.4 of this Agreement of the request compelling disclosure, to allow Walgreen

CONFIDENTIAL

to contest the release of the Data, or seek a protective order or other appropriate remedy in order to prevent disclosure of the Data. Vendor shall also provide reasonable assistance to Walgreen, as it may request, in seeking to protect the confidentiality of the Data.

5.3  Vendor agrees not to disclose to any third party, except employees, consultants and Vendor's retained service providers, the existence or terms of this Agreement.

5.4  Vendor must not subcontract any duty or obligation under this Agreement to a third party. All performance required under this Agreement must be solely by the named Vendor, unless otherwise specified in an exhibit.[DO WE HAVE CONTRACTORS who may work on this??]

5.5  From time to time during the Term, Walgreen may impose rules prohibiting or limiting contact by Vendor or its sales representatives with certain Walgreen employees, including but not limited to Walgreen's in-store pharmacists, and Vendor shall comply with, and shall cause its sales representatives to comply with, all such rules. Vendor hereby acknowledges and agrees that, as of the Effective Date, those rules prohibit contact with all Walgreen employees other than those employees in Walgreen's corporate offices.

6.  **OWNERSHIP OF MATERIALS; RETURN UPON TERMINATION/EXPIRATION**

6.1  All Information disclosed under this Agreement shall remain the property of Walgreen. Except as specifically provided herein, nothing in this Agreement shall be construed as granting a license or copyright in such Data. The disclosure of Data shall likewise not be construed as any representation, warranty, assurance, guaranty, or inducement by Walgreen to Vendor with respect to the accuracy thereof or with respect to infringement of any patent or other proprietary right.

6.2  Vendor acknowledges and agrees that the Data licensed hereunder to Vendor shall be and remain the property of Walgreen.

7.  **DEFENSE AND INDEMNITY**

Vendor agrees to defend Walgreen and hold Walgreen harmless from all third-party claims, damages and liabilities solely and directly arising out of Vendor's misuse of the Data. Vendor shall not agree to settle the claim without Walgreen's prior written consent. This indemnification provision shall not be deemed to waive or limit any other rights Walgreen may have in equity or at law. In any event, Vendor's aggregate liability under this Section 7 will be limited to the total fee paid under this Agreement.

8.  **RELATIONSHIP OF THE PARTIES**

Walgreen and Vendor acknowledge and agree that nothing herein contained is intended to constitute them as employer/employee, joint venturers or partners. Neither this Agreement nor any discussions or disclosures made in connection with this Agreement is a commitment to any business relationship, contract or future dealing with the other party, nor shall it prevent either party from conducting similar business with third parties, so long as such discussions or business do not violate this Agreement. Walgreen and Vendor acknowledge and agree that the personnel employed by the respective party in connection with this Agreement shall remain at all times employees of the respective party, and such party shall remain solely liable for all aspects of the employment of such persons including, recruitment, termination, training, promotion, compensation, benefits, F.I.C.A., payroll taxes and all other deductions or payments to be made by employers for or on behalf of employees. Vendor shall exercise control over its employees, agents, representatives, subcontractors, and suppliers and is solely responsible for the verification of identity and employment eligibility, for the payment of any wages, salaries, or other remuneration of its employees,

agents, representatives, subcontractors, and suppliers, and for the payment of any payroll taxes, contributions for unemployment or workers compensation, social security, pensions, or annuities that are imposed as a result of the employment of Vendor's employees, agents, representatives, subcontractors and suppliers.

9. **USE OF NAME/MARKS**

Vendor acknowledges Walgreen's exclusive right, title, and interest in and to all trademarks, trade names, service marks, logos, assignees, program and event names, identifications, and other proprietary rights and privileges of Walgreen (the "Walgreen Marks"). This Agreement and its various provisions are not a license or assignment of any right, title, or interest in the Walgreen Marks by Walgreen to Vendor. Vendor must not, in any manner, represent that it has any ownership in the Walgreen Marks. Vendor must not do or cause to be done anything that impairs Walgreen's exclusive ownership of and license in the Walgreen Marks. Vendor must not use, print, or duplicate the Walgreen Marks unless Vendor has obtained prior written approval from Walgreen. Any permitted use by Vendor of the Walgreen Marks is limited to the term of this Agreement. Upon termination, Vendor must immediately cease all use of the Walgreen Marks. Vendor must not assign or attempt to assign any rights with regard to the Walgreen Marks that arise under this Agreement and any such attempted assignment is void.

10. **GENERAL**

10.1   Dispute Resolution. With respect to any dispute involving the interpretation or application of this Agreement, prior to instituting litigation the parties will use their reasonable efforts to resolve such dispute. If the parties cannot resolve such dispute within 30 days after one party notifies the other of a dispute, then either party shall be free to institute such litigation. All communications made in connection with the attempted resolution shall be treated as settlement negotiations.

10.2   Assignment. Vendor may not assign this Agreement or any fees or amounts due to Walgreen hereunder, in whole or in part, without Walgreen's prior written consent, which it may grant or withhold in its sole discretion.

10.3   Records. Upon written request and ten (10) business days prior notice, Vendor shall make available to Walgreen all of Vendors files and records documenting its possession and use of the Data, upon reasonable notice during regular business hours not more than once per annum.

10.4   Notices. All requests, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been given (a) when received, if delivered in person, or (b) when sent, if send by facsimile with receipt confirmed, or (c) three (3) business days following the mailing thereof, if mailed by certified first class mail, postage prepaid, return receipt requested, in any such case as follows:

        if to Vendor:

        PURDUE PHARMA L.P.
        One Stamford Forum
        Stamford, CT 06901
        Attn: Steve Seid, National Accounts and Trade Relations

        With a copy to:
        One Stamford Forum
        Stamford, CT 06901

CONFIDENTIAL

Russell J. Gasdia, Vice President, Sales and Marketing

| if to Walgreen: | With a copy to: |
|---|---|
| Walgreen Co.<br>200 Wilmot Road MS #220B<br>Deerfield, IL 60015<br>Attention: Category Mgr., Brand Rx | Walgreen Co.<br>104 Wilmot Road MS #1425<br>Deerfield, IL 60015<br>Attention: Commercial Transactions Law |

10.5  Binding Effect.  This Agreement shall be binding upon and shall inure to the benefit of Walgreen and Vendor, their respective successors and assigns; provided, however, that Vendor may not transfer or assign its rights or obligations under this Agreement without the prior written consent of Walgreen, which consent may be granted or withheld in its sole discretion.

10.6  No Third Party Beneficiaries.  The terms and provisions of this Agreement are intended solely for the benefit of each party hereto and their respective successors or permitted assigns, and it is not the intention of the parties to confer third-party beneficiary rights upon any other person or entity.

10.7  Governing Law; Forum.  This Agreement is to be construed and determined under the laws of the State ofDelaware, without giving effect to the conflict of laws principles thereof.

10.8  Headings.  The headings of this Agreement are inserted merely for convenience and ease of reference and shall not affect or modify the meaning of any of the terms, covenants or conditions of this Agreement.

10.9  Severability.  If any provision of this Agreement is held to be void or unenforceable by any judicial or administrative authority, or is unlawful or unenforceable under any applicable law, the remaining provisions are considered to be severable and their enforceability is not to be affected or impaired in any way by reason of such law or holding.

10.10  Entire Agreement; Amendments. The provisions, terms and conditions of this Agreement (including its Exhibits) represent the entire agreement of the parties with regard to the subject matter of this Agreement and supersede any prior oral or written agreement or correspondence relating to the matters described herein.  No waiver, modification, change or amendment of any of the provisions of this Agreement shall be valid unless in writing and signed by the party against whom such claimed waiver, modification, change or amendment is sought to be enforced.

CONFIDENTIAL                                                                                    PPLPC004000254714

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date first above written.

{Purdue Pharma L.P.}                    WALGREEN CO.


By:_____            By:_____
Name:_____            Name:_____
Title:_____            Title:_____

CONFIDENTIAL                                                          PPLPC004000254715

EXHIBIT A
PRODUCTS

| NDC | Description |
|---|---|
| 59011010010 | OXYCONTIN 10MG TAB (PUR)     100 |
| 59011010310 | OXYCONTIN 20MG TAB (PUR)     100 |
| 59011010510 | OXYCONTIN 40MG TAB (PUR)     100 |
| 59011010710 | OXYCONTIN 80MG TAB (PUR)     100 |
| 59011083010 | OXYCONTIN 30MG TAB (PUR)  +  100 |
| 59011086010 | OXYCONTIN 60MG TAB (PUR)  +  100 |

Exhibit A
Purdue Data Licensing Agreement 2010 (revised 062510)

CONFIDENTIAL                                                                                                    PPLPC004000254716

EXHIBIT B
FORMAT

Data To Include:
- DC 852
- DC 867
- Store 852

Frequency:
- DC data is daily data provided once a week
- Store 852 is provided daily

Exhibit B
Purdue Data Licensing Agreement 2010 (revised 062510)

CONFIDENTIAL
PPLPC004000254717