UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No.: 1:17-md-2804 |
| THIS DOCUMENT RELATES: | Judge Dan Aaron Polster |
| *ALL CASES* | |

**CERTAIN PLAINTIFFS' MEMORANDUM IN OPPOSITION TO RENEWED AND AMENDED MOTION FOR CERTIFICATION OF RULE 23(b)(3) CITIES/COUNTIES NEGOTIATION CLASS**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. The Proposed Negotiation Class Does Not Satisfy the Requirements of Rule 23 .......... 4

A. The consolidated representation of the negotiation class in one group of representatives and class counsel is inadequate given the competing interests of the class members. .......... 5

II. The Proposed Negotiation Class Violates Members' Right to Make an Informed Opt-Out Decision. .......... 8

A. Both the Due Process Clause and Rule 23 require that class members have the right to opt-out after learning the basic settlement terms. .......... 8

B. The proposed class cannot be certified because it forces class members to make an opt-out decision prior to knowing the settlement terms. .......... 10

C. The voting mechanism proposed here creates additional layers of uncertainty that impede settlement negotiations while simultaneously failing to provide adequate protection to the class members. .......... 12

CONCLUSION .......... 13

**INTRODUCTION**

Certain proposed class member plaintiffs[1] ("Plaintiffs") respectfully submit this Memorandum in Opposition to Renewed and Amended Motion for Certification of Rule 23(b)(3) Cities/Counties Negotiation Class (Dkt. 1820).[2]

The proponents suggest that this Court adopt a relaxed approach to grant a preliminary certification because the class will not be utilized to prosecute any claim against the defendants. Additionally, the proponents argue that the class members' interest will be protected by a novel super-majority-voting mechanism instead of the required time-tested right to opt-out. However, "[b]efore certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Rule 23 requirements should not be watered down based on the fairness of the settlement or as proposed in this case, based on the fairness of a novel voting mechanism. *See id.* Plaintiffs join certain arguments raised by certain defendants and write separately to highlight how the proposed negotiation class violates the rights of all class members.

The proposed consolidation of all the cities and counties in the United States into one negotiation class, with one group of representatives and counsel is structurally inadequate. Class members with divergent interests need their own class, representatives, and counsel. Class representatives who can obtain immediate monetary relief have a recognized incentive to trade away future-looking interests in return for more money now. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 856 (1999) ("it is obvious . . . that a class divided between holders of present and

[1] City of North Royalton, Ohio; City of East Cleveland, Ohio; City of Mayfield Heights, Ohio; City of Lyndhurst, Ohio; City of Huron, Ohio; and City of Wickliffe, Ohio.
[2] Documents filed on the main docket of MDL 2804 are cited as "Dkt. No. __."

future claims . . . requires division into homogeneous subclasses . . . with separate representation to eliminate conflicting interests of counsel.")

This is particularly troublesome here because the diverse interests of the class members raise significant conflicts that cannot reasonably be balanced by one group of representatives and counsel simultaneously representing all of the competing interests.

Unless certification is denied, the proposed negotiation class will fashion a new and dangerous model for class actions. In a typical settlement class, plaintiffs' lawyers negotiate a settlement with the defendants and, consistent with the Due Process Clause and Rule 23, provide plaintiffs an opportunity to opt out after being informed of the basic terms of the proposed settlement. Plaintiffs' counsel is free to negotiate with the defendants and propose a settlement class to the court and plaintiffs after they finalize a proposal. However, here, the proposal binds all of the thousands of cities and counties in the United States into a single negotiation class and forces them to choose their fate without knowledge of any settlement terms. The vastly diverse and competing interests of the class members cannot be adequately represented by one class. Homogeneous subclasses with independent counsel and representatives must be established.

The current proposal provides that one set of representatives and counsel will negotiate the settlement for all counties and cities in the United States, in spite of the divergent interest between cities, counties, urban centers, rural areas, and the vastly different past and future damages they each have and will sustain. To the extent that predetermined classes can increase bargaining power during negotiations, there is no reason to adopt a novel and intricate voting mechanism (that will surely cause additional delay through appeals and collateral suits). Due Process and Rule 23 require that each class member be afforded an opportunity to opt-out after the settlement terms are proposed. An opportunity to vote is not the functional equivalent of an

opportunity to make an informed opt-out decision. Opt-outs regularly occur after a settlement has been negotiated and the parties have developed methods to address higher than expected opt-outs.

The most critical information to class members considering a settlement is the consideration they will receive (not how it may be derived from an *unknown* amount or ballpark range) and what consideration they will have to give in exchange. Neither of these pieces of information are known or proposed and any decision to opt-out now necessarily prejudice all class members by forcing them to make an uninformed decision.

**ARGUMENT**

Plaintiffs join the arguments raised in Sections II-IV[3] of the Memorandum of Certain Defendants in Opposition to Plaintiffs' Renewed and Amended Motion For Certification of Rule 23(B)(3) Cities/Counties Negotiation Class (Dkt. No. 1949). Plaintiff asserts that the arguments raised by certain defendants outline the reasons why the proposed class cannot be certified and therefore apply equally with respect to all potential class members, defendants, and other parties involved in the opioid litigation against similarly situated defendants.

Plaintiffs write separately to highlight the inadequacy of the proposed representation that seeks to bind cities and counties with varying populations, resources, sustained, potential future damages, and inherently conflicting interests into a single class. In addition, the proposed class fails to provide the required protections because each member is not afforded the opportunity to make an informed opt-out decision.

[3] Plaintiffs specifically do not join or adopt the certain defendants' arguments that the proposed class counsel are conflicted and unable to represent a class by virtue of their representation of non-class members who may have varying legal interest.

Plaintiffs assert that it is necessary to carve out homogeneous subclasses that can adequately represent the interest of its members and grant the defendants sufficient assurances of an eventual settlement. Given the high stakes and complexity of this litigation dealing with a small number of subclasses can provide an advantage to the parties, compared to negotiating hundreds or thousands of independently significant and legally and factually complex claims pending in and out of MDL 2804. Second, Plaintiffs argue that the voting mechanism should be scrapped in favor of an opportunity to make informed opt-out decision.

## I. The Proposed Negotiation Class Does Not Satisfy the Requirements of Rule 23.

The Supreme Court emphasized that the requirements of Rule 23 must always be analyzed with reference to whether the proposed class could be certified for purposes of litigating the class's claims, even if certification is requested only for purposes of approving a settlement. *Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 620 (1997); Denney*, 443 F.3d at 270. Other than numerosity, the proposed class fails to satisfy the Rule 23(a) prerequisites of commonality, typicality, and the adequacy of representation of the class's interest. The proposed class similarly fails to satisfy the predominance and superiority inquiries set forth in Rule 23(b)(3). As discussed above, Plaintiffs reassert the certain defendants' arguments that describe how the proposed negotiation class fails to meet the Rule 23 requirements for certification.

The adequacy of representation forms the foundation of any class action and requires additional consideration. The proponents recognize that there are many differences between small towns and large urban centers, and between underfunded rural entities and large counties with established infrastructures. (Dkt. 1820 at 67). Nevertheless, they propose to bind the fates of thousands of class members to the negotiation class, after an initial blind opt-out period, irrespective of how the settlement terms evolve to affect any one class member more than another. And to make matters worse, all class members will be represented by one group of

representatives and counsel tasked with balancing all of their competing interests. Instead of independent representation the class members interests will allegedly be protected by a novel voting mechanism. This is not sufficient.

Homogeneous subclasses with independent counsel and representatives should be established to represent their members' interest and enhance the class's characteristics to enable Rule 23 certification. *See In re Nat'l Football League Players Concussion Injury Litig*., 821 F.3d 410, 432 (3d Cir. 2016).

**A. The consolidated representation of the negotiation class in one group of representatives and class counsel is inadequate given the competing interests of the class members.**

Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class." The principal role of the adequacy requirement is to prevent parties from determining the rights of absent class members through "a global compromise with no structural assurance of *fair and adequate* representation for the diverse groups and individuals affected." *Amchem*, 521 U.S. at 627 (emphasis added). Accordingly, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id*. at 625.

Intra-class conflicts arise when class members seek conflicting remedies. Indeed, following *Ortiz* and *Amchem*, the clear rule is that, in any case involving subgroups with diverse or antagonistic interests, "[o]nly the creation of subclasses, and the advocacy of an attorney representing each subclass, can ensure that the interests of that particular subgroup are in fact adequately represented." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d Cir. 2011). A representation is adequate if the "interests and incentives between the representative plaintiffs and the rest of the class" are aligned and not antagonistic. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3rd Cir. 2012); *see also Ellis v. Costco*

*Wholesale Corp*., 657 F.3d 970, 985 (9th Cir. 2011) (finding that the adequacy of representation turns on an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees).

The counties and cities whose claims would be bound to the negotiation class have substantially different interests in the nature of the relief they might receive and the consideration they may be willing to exchange. Some class members may have very little interest in prospective self-regulation given legislative regulation adopted by their applicable governing bodies. These class members may seek to maximize the recovery for past economic damages in exchange for releasing defendants from all past and future liability. Other class members may not have suffered significant damages and are instead interested in maximizing the defendants' agreement to self-regulate, other non-monetary recovery, and be resistant to release defendants from future liability.

Additionally, the factors used to develop the allocation formula are not representative of the actual damages that some class members sustained and create additional conflict. Namely, the number of opioid use disorders, opioid related deaths, and opioids sold may have been selected because they are readily ascertainable from relatively reliable sources. However, they do not accurately identify the damages sustained or much less to be sustained by class members. For example, a class member with the infrastructure to treat opioid use disorder and to prevent opioid overdoses will naturally have higher damages in spite of potentially lower opioid related deaths. A class member that had a high number of opioid deaths, but had no system in place to prevent overdoses or treat opioid use disorders may have significantly lower damages.

Moreover, the future damages that may be sustained by class members can be impacted by other variables. A rural low population county may experience an uptick of opioid abuse after

a neighboring county increases its regulatory enforcement. Said rural county's infrastructure can be overwhelmed quickly despite it having limited past monetary damages. The distribution of settlement funds between counties and cities that are so vastly diverse will never produce an allocation that adequately redresses their damages. One class counsel cannot adequately be tasked with balancing these conflicting interests for competing class members. *See Amchem*, 521 U.S. at 627.

The proponents assert that each class member is free, until a settlement is approved, to continue litigating its case in state or federal court, secure settlements, and even win and keep verdicts that it secures against any defendant. (Dkt. 1820 at 12-13). This proposed parallel litigation stands to halt all negotiation efforts and creates uncertainties as to the consequences of any resolution obtained outside of the negotiation class. It is unclear whether a class member that independently secures a settlement or verdict would be automatically removed from the class or the effect of such resolution on the remaining class members. This is particularly concerning in the event that a county settles and the cities within such county maintain independent class membership status. Similarly, it is unclear how the independent opt-out of associated cities and counties would impact the others' membership status or allocation and how their competing interest would be properly represented.

The proposed class cannot be certified because it fails to identify the distinctive interests of the numerous potential class members or propose separate classes with independent counsel to adequately represent their interest. *See Ortiz,* 527 U.S. at 856 ("[I]t is obvious after *Amchem* that a class divided between holders of present and future claims . . . requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel.")

## II. The Proposed Negotiation Class Violates Members' Right to Make an Informed Opt-Out Decision.

### A. Both the Due Process Clause and Rule 23 require that class members have the right to opt-out after learning the basic settlement terms.

The Fifth Amendment prohibits the federal government from depriving persons of their property "without due process of law." U.S. Const. amend. V. That prohibition governs the entry of a judgment resolving a claim in litigation, because the claim is a "species of property protected by the … Due Process Clause," *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982), the individual's right to pursue the claim is "a constitutionally recognized property interest." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807 (1985).

On that basis, the Supreme Court held in *Shutts* that if a court "wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection," including not only the "best-practicable" notice but also "an opportunity to remove himself from the class." *Id*. at 811-12; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) ("In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process."). The right to object to the settlement is not enough: Class members must have the right to remove themselves from the judgment and pursue their claims on their own. The Court reaffirmed that "mandatory class actions aggregating damages claims implicate the due process principle … deep-rooted [in our] historic tradition that everyone should have his own day in court." *Ortiz*, 527 U.S. at 846;

Rule 23(b)(3) embodies the same principles, guaranteeing class members the right to opt out. Under Rule 23, class members' claims cannot be "precluded by litigation they had no power to hold themselves apart from." *Dukes*, 131 S. Ct. at 2559. Accordingly, Rule 23(b)(3) permits class litigation controlled by a representative only if common questions "predominate over any questions affecting only individual members" and the class action is "superior" to individual

adjudication. *Id*. Because those standards do permit the aggregation of some individualized claims, Rule 23 guarantees class members notice and the opportunity to opt out. *See* Fed. R. Civ. P. 23(c)(2)(B).

Where a class was certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to opt out, but did not do so. *See* Fed. R. Civ. P. 23(e)(4). In determining whether a new opportunity to opt out is warranted, there are many factors that may influence the court's decision. *See* Fed. R. Civ. P. 23(e)(4) advisory committee's notes. Among these are changes in the information available to class members since expiration of the first opportunity to request exclusion, and the nature of the individual class members' claims. *Id.*

A class member should have an opportunity to opt out after learning about the actual terms of a settlement. *See Dare v. Knox County*, 457 F.Supp.2d 52, 53 (D. Me. 2006); *see also Donnelly v. Peter Luger of Long Island, Inc.,* 2014 WL 12769046, at *6 (E.D.N.Y. Nov. 13, 2014) (finding that an additional opt-out period may be required when a class is certified prior to settlement or when the settlement terms have changed to the class's detriment); *Nilsen v. York Cty.*, 228 F.R.D. 60, 61 (D. Me. 2005) (requiring a second opt-out because of the "breadth" of the settlement class, the allocation of amount between genders, and the allocation of amount without regard for recurrent damage). The opportunity to opt-out from a settlement after being apprised of the settlement terms is so important that at least one jurisdiction adopted a mandatory second opt-out right. *See* Tex. R. Civ. P. 42(e)(3) ("In an action previously certified as a class action under Rule 42(e)(3), the court may not approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.") "A decision to remain in the class is likely to be more

carefully considered and is better informed when settlement terms are known." Fed. R. Civ. P. 23(e)(4) advisory committee's notes.

Courts have exercised their discretion to deny a second opt-out in limited circumstances that are readily distinguishable from the proposal in this case. *See Denney*, 443 F.3d at 271 (denying to provide a second opt-out because the class knew the basic settlement terms prior to the initial opt-out and only marginal changes were made to the original terms); *see also Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("[A] second opt-out period is not warranted. The terms of the settlement agreement have not changed appreciably since notice of the settlement was provided and the expiration of the original opt-out period."); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *3-4 (E.D. Pa. May 11, 2004) ("We are aware of no significant developments since the original opt-out [and proposed settlement] that would require us to provide for a second opt-out period."). Here, the opportunity to opt-out is insufficient to satisfy the Due Process and Rule 23 opt-out safeguard because it closes before any settlement terms are known.

**B. The proposed class cannot be certified because it forces class members to make an opt-out decision prior to knowing the settlement terms.**

A true "settlement class" arises when the named plaintiffs and defendants to an uncertified class action reach a provisional settlement that they wish to make binding on the class as a whole. *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir.1995). In those cases, the parties move the court for simultaneous class certification and approval of the settlement. *Id*. Typically, the court then orders a combined notice of the certification, opt-out rights, and the terms of proposed settlement, and combines the fairness hearing on the proposed settlement with a hearing on class certification. *Id*. If the settlement is

approved and the class is certified, absent class members who do not opt-out are bound by the settlement agreement. *Id*.

Due process requires that a settlement class receive a detailed account of the settlement terms to inform their decision whether to opt out. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (although the notice does not need to set forth the specific amount allocated to each member, it must identify the aggregate amount and the formula for computing recoveries). Additionally, the terms of the release are equally important in a case like this where the release of future claims is as important, if not more, to certain parties. When a member has this critical information, it can reasonably decide to accept the instant benefit of settlement or press on and assume the risk of litigating against the defendants on its own with the hope of obtaining greater benefits. *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 354 (N.D. Ohio 2001).

The Supreme Court has recognized that a member's stake is high when their damages are significant and their will and ability to represent their own interest are high. *Amchem*, 521 U.S. at 616 (distinguishing between traditional classes where the individual stake is so small as to make a separate action impracticable, with classes in which each member suffered significant damages). Due process is universally understood to require detailed notice of settlement terms to ensure an informed opt-out right in a settlement-only class. Jeanette Cox, *Information Famine, Due Process, And The Revised Class Action Rule: When Should Courts Provide A Second Opportunity To Opt Out?*, 80 Notre Dame L. Rev. 377, 401 (2004). Although there may be some less populous counties that were barely affected by the opioid crisis, there are many counties and cities whose resources were overburdened and who suffered millions of dollars in damages. In this case, each class member "has a substantial stake in making individual decisions

on whether and when to settle." *See Id*. These counties and cities need and are entitled to an opportunity to opt-out after the settlement terms are available.

**C. The voting mechanism proposed here creates additional layers of uncertainty that impede settlement negotiations while simultaneously failing to provide adequate protection to the class members.**

The proponents claim that the voting mechanism will provide more protection than an ordinary class receives, but this is not a certified class, and likely never would be. At best, this is a bastardized settlement class that has been stripped of its most crucial safeguards; independent representation and the right to make an informed opt-out decision. Unlike the right to opt-out that a plaintiff can independently utilize to definitively exit a proposed settlement based on the basic information of such settlement. A class member that votes against a proposal can be overruled and dragged into a settlement by the requisite majority.

The proposed voting mechanism here is not analogous to the safeguards set forth in Section 524(g) of the Bankruptcy Code. Section 524(g) was adopted to ensure that all present and future claims are paid equitably and efficiently because future asbestos personal injury claimants are unknown due to the long latency period of asbestos related diseases. *See* Francis E. McGovern, *The Evolution of Asbestos Bankruptcy Trust Distribution Plans*, 62 N.Y.U. Ann. Surv. Am. L. 163, 164 (2006). Under Section 524(g) 75% of current claimants must vote to approve the size of the settlement trust that will be created for future claimants that are presently unknown. *Id*. In addition to the 75% approval, the future claimants are assigned an independent representative to represent their interests. *Id.* In this case, there is no latency disease that will produce future unknown claimants and every negotiation class member is currently identifiable.

Moreover, the proposed class discards the two crucial protections afforded by Section 524(g). First, only 75% of the *votes cast* are necessary to approve a settlement, as oppose to the 75% of *all present claimants* required to approve a Section 524(g) trust. The potential for

minimal participation is obvious given that this litigation has been unfolding for over a year and a large percentage of counties and cities have not filed suit. Therefore, the 75% approval proposed here could result in a few hundred cities and counties binding thousands. Second, the future claimants are assigned a class representative that independently represents their interest. As discussed above, the singular class model proposed here fails to recognize the competing interests of the class members.

Even if the voting mechanism could supplant an opt-out right, it presents new and additional layers of obstacles that impede negotiations. While the stated goal is to create a unified group of cities and counties to negotiate a nation-wide settlement, the back end unknown variables of the voting mechanism threaten to frustrate the entire process and keep defendants away from the negotiation table.

The Court cannot ignore the class members' rights to opt-out and the Rule 23 requirements based on this allegedly participatory voting mechanism. No voting mechanism can replace an individual member's right to make an informed opt-out decision and have their day in court. The substantial interests at stake compels that the class members are afforded an opportunity to opt-out after the settlement terms become available.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny plaintiff's Renewed and Amended Motion for Certification of Rule 23(b)(3) Cities/Counties Negotiation Class as proposed.

Dated: July 23, 2019

Respectfully submitted,

*Counsel for Plaintiffs:*

*/s/ James L. Ferraro*
James L. Ferraro, Esq.
Kelley & Ferraro, LLP
950 Main Avenue
Suite 1300
Cleveland, OH 44113
Tel.: 216.202.3450
Email: jlf@ferrarolaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed a true and accurate copy of the foregoing with the Clerk of the Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

Dated: July 23, 2019

*/s/ James L. Ferraro*
James L. Ferraro