EXHIBIT 160

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| | Judge Dan Aaron Polster |
| *City of Cleveland v. Purdue Pharma L.P., et al.,* Case No. 18-OP-45132 (N.D. Ohio) | |
| *The County of Cuyahoga v. Purdue Pharma L.P., et al.,* Case No. 17-OP-45004 (N.D. Ohio) | |
| *The County of Summit, Ohio, et al. v. Purdue Pharma L.P. et al.*, Case No. 180OP-45090 (N.D. Ohio) | |

## PAR PHARMACEUTICAL, INC. AND PAR PHARMACEUTICAL COMPANIES, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORIES NOS. 1-5, 10-12, 16, 17, 22-24, 27, 29, 30-33

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as the Case Management Order ("CMO") in *In re National Prescription Opiate Litigation* (Dkt. No. 232 in No. 1:17-cv-2804), Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. (incorrectly named as "Par Pharmaceutical Companies, Inc. f/k/a Par Pharmaceutical Holdings, Inc.") (collectively, "Par") hereby provide these supplemental objections and responses to Plaintiffs' Interrogatories Nos. 1-5, 10-12, 16, 17, 22-24, 27, 29, 30-33 propounded on Endo Pharmaceuticals Inc. and Endo Health Solutions Inc. ("Endo") in accordance with Case Management Order No. 1 ("CMO 1") (Dkt. 232) as Endo and Par are part of the same Defendant Family.

## PRELIMINARY STATEMENT

These responses are based on diligent investigation conducted by Par and its counsel to date, and reflect the current status of Par's knowledge, understanding, and belief respecting the interrogatories.  Par's investigation is continuing, and Par reserves the right to modify, supplement, or amend its responses herein with whatever pertinent information, facts, or documents subsequently may be discovered.  Par further reserves the right to produce additional information or other evidence at any time, including trial, and to object on appropriate grounds to the introduction into evidence of any portion of these responses.  Par further reserves all rights to modify, supplement, or amend its objections and responses to Plaintiffs' interrogatories based on any ruling by the Court with respect to motions to dismiss.

Information contained in any response pursuant to these interrogatories is not an admission or acknowledgement by Par that such information is relevant to any claim or defense in this action; is without prejudice to Par's right to contend at trial or in any other or subsequent proceeding, in this action or otherwise, that such information is inadmissible, irrelevant, immaterial, or not the proper basis for discovery; and is without prejudice to or waiver of any objection to any future use of such information.

Specific objections to each separate interrogatory are made below.  Additionally, Par makes certain continuing objections to the interrogatories, also listed below ("Continuing Objections").  These Continuing Objections, including with respect to the definitions and instructions, are incorporated by reference into all of the responses made with respect to each separate interrogatory.  Par's response to each individual interrogatory is submitted without prejudice to, and without in any respect waiving, any Continuing Objections not expressly set forth in that response.  Accordingly, the inclusion of any specific objection in any response

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

below is neither intended as, nor shall in any way be deemed, a waiver of any Continuing

Objection or of any other specific objection made herein or that may be asserted at a later date.

Par offers to meet and confer with Plaintiffs regarding any and all objections set forth herein.

## CONTINUING OBJECTIONS

1.      Par objects to each and every interrogatory, including without limitation any

portion of the definitions and instructions, to the extent that it seeks information beyond the

scope of discovery as provided by the Federal Rules of Civil Procedure, the Local Rules of the

Northern District of Ohio, or the CMO, or to the extent it purports to impose obligations on Par

greater than or inconsistent with those imposed by Rules 26 and 33 of the Federal Rules of Civil

Procedure, the Local Rules of the Northern District of Ohio, or any CMO or other court order.

2.      Par objects to each and every interrogatory to the extent that it seeks information

that falls within any relevant privilege or protection, including, without limitation, the attorney-

client privilege, the work product doctrine, any joint defense privilege, settlement materials, or

trial preparation materials.  Nothing contained in these responses is intended as, or shall in any

way be deemed, a waiver of any relevant privilege or protection.  In responding to each

interrogatory, Par will not provide information that is privileged or protected from discovery by

law.  Any statement to the effect that Par will provide information in response to an interrogatory

means that the response shall be limited to information that does not fall within the scope of any

relevant privilege or protection.

3.      Par objects to each and every interrogatory to the extent it seeks information that

constitutes confidential, proprietary, private, or financial information, or trade secrets protected

from disclosure.  Par will produce such information, if any, only pursuant to the terms of the

stipulated protective order entered by the Court in this action.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

4.      Par objects to each and every interrogatory to the extent that it seeks information that is neither relevant to the subject matter of this action, nor proportional to the needs of the case.  In responding to each interrogatory, Par will provide only information that is relevant to the subject matter of this action and proportional to the needs of the case.

5.      Par objects to each and every interrogatory to the extent it would require Par to search for and provide information that is publicly available, is already in the possession of Plaintiffs, or is equally obtainable from third parties or from some source other than Par that is more convenient, less burdensome, or less expensive.  Par will provide information only to the extent that such information is in the possession, custody, or control of Par and not publicly available or otherwise already in the possession of Plaintiffs.

6.      Par objects to the interrogatories to the extent they call for information requiring scientific, technical, or other specialized knowledge such that it is appropriately the subject of expert testimony, and/or to the extent they ask for or may be read to encompass work performed by or information received from experts retained by Par in order to defend itself in this ligation or in other litigation.  Par will make appropriate disclosures regarding expert witnesses in accordance with applicable rules and orders.

7.      Par objects to the extent that any interrogatory purports to seek information outside the City of Cleveland, the geographical scope that is relevant to the claims of the Plaintiffs in this case.

8.      Par objects to the extent that any interrogatory contains more than one discrete question.  In each such case where a single interrogatory contains more than one discrete question, each discrete subpart shall be considered a separate interrogatory and shall count

against the maximum allowable number of interrogatories that may be served against the Manufacturer Defendant family, in accordance with the CMO.

## CONTINUING OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

By submitting these responses and objections, Par does not in any way adopt Plaintiffs' purported definition of words and phrases.  To the extent Plaintiffs have ascribed special meanings or definitions to words used in its interrogatories, Par objects to those definitions to the extent that they are inconsistent with either (a) the definitions set forth in Par's responses, or (b) the ordinary and customary meanings of such words and phrases.  Likewise, Par objects to Plaintiffs' purported definitions to the extent that they purport to impose upon Par any obligation broader than, or inconsistent with, applicable discovery rules or common law.  Additionally, Par further and specifically objects to definitions as follows:

1.      Par objects to the definition of "You" and "Your" on the grounds that it purports to require Par to produce information outside the knowledge, possession, custody, or control of Par, and to the extent that it seeks to impose obligations broader than or inconsistent with the Federal Rules of Civil Procedure.  Par will respond on its own behalf, as Par Pharmaceutical, Inc. and Par Pharmaceuticals Companies, Inc.  To the extent Plaintiff seeks information about Endo, Par refers Plaintiffs to Endo's Objections and Responses to Plaintiffs' Interrogatories and any supplemental responses thereto.

2.      Par objects to the definition of "Defendants" to the extent it purports to name Defendants who are not named in the above-captioned complaint.

3.      Par objects to the definition of "Plaintiffs" to the extent that it purports to name Plaintiffs beyond the Plaintiffs in the above-captioned complaint pursuant to the CMO.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

4.      Par objects to the definition of "Document" as overly broad and unduly burdensome to the extent it purports to impose upon Par any obligation broader than or inconsistent with the Federal Rules of Civil Procedure or any Order of this Court.

5.      Par objects to the definition of "Communication" on the basis that the phrase "ideas, inquiries, or otherwise" and "shared applications from cell phone" are vague and ambiguous. Par objects to the extent the definition of "Communication" purports to impose upon Par any obligation broader than or inconsistent with the Federal Rules of Civil Procedure or any Order of this Court.

6.      Par objects to the definition of "Person" to the extent it purports to impose obligations to produce information outside Par's knowledge, possession, custody, and control and to the extent that it seeks to impose obligations broader than or inconsistent with those in the Federal Rules of Civil Procedure.

7.      Par objects to the definition of "Opioid" on the grounds that it is vague and ambiguous, overly broad, and purports to require Par to produce information outside its knowledge, possession, custody, or control to the extent the definition requires Par to speculate as to how individual patients or prescribers use any "legal or illegal" drug to "control pain."  Par further objects to the extent that the definition of "Opioids" purports to include "illegal" drugs.

8.      Par incorporates its above objections to the definition of "Opioid" with respect to the definition of "Opioid Products,"  which incorporates the defined term "Opioid."  Par further objects that the definition of "Opioid Products" is overly broad, vague and ambiguous, not proportional to the needs of the case, and seeks information that is not relevant to the issues raised by the claims or defenses of the parties to the extent it includes any "Opioids that You

sold, promoted, marketed, manufactured, or distributed" without regard for the allegations as to Par.

9.      Par objects to the definition of "Marketing" on the grounds that the definition is overly broad and vague and ambiguous to the extent it characterizes "continuing medical education" and "scientific medical" articles or publications as "Marketing."  Par further objects to the definition of "Marketing" due to its incorporation of the defined terms "Opioid" and "Opioid Products."

10.      Par objects to the definition of "Branded Marketing" due to its incorporation of the defined term "Marketing."

11.      Par objects to the definition of "Unbranded Marketing" due to its incorporation of the defined term "Marketing."

12.      Par objects to the definition of "Adverse Event" on the grounds that the phrase "undesirable experience" is vague and ambiguous and to the extent the definition is inconsistent with applicable regulatory terms and definitions.

13.      Par objects to the definition of "Suspicious Order" on the grounds that it is vague and ambiguous, overly broad, and to the extent that it fails to define what constitutes "unusual size," "deviating substantially," "normal pattern," and "unusual frequency" for "orders for Opioids or Opioid Products."  Par also objects to the definition of "Suspicious Order" due to its incorporation of the defined terms "Opioid" and "Opioid Products."  Par further objects to the definition of "Suspicious Order" to the extent that it purports to require Par to produce information outside its knowledge, possession, custody, or control and to the extent that it seeks to impose obligations broader than or inconsistent with those in the Federal Rules of Civil Procedure.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

14.     Par objects to the definition of "Scientific Research" on the grounds that it is overly broad as used insofar as the term is defined to include any "studies, investigations, trials, articles, comparisons, case histories, reviews, reports, or analyses that are conducted by doctors, researchers, or other investigators."  Par objects that the terms "comparisons, case histories, reviews, reports, or analyses" and "researchers, or other investigators" are vague and ambiguous as used in this definition.  Par further objects to the definition to the extent that it purports to require Par to produce information outside its knowledge, possession, custody, or control and to the extent that it seeks to impose obligations broader than or inconsistent with those in the Federal Rules of Civil Procedure.

15.     Par objects to the definition of "DEA Quotas" to the extent that it purports to require Par to produce information outside its knowledge, possession, custody, or control and to the extent that it seeks to impose obligations broader than or inconsistent with those in the Federal Rules of Civil Procedure.

16.     Par objects to the definition of "Identify" (with respect to persons, documents, and communications) on the grounds that it seeks irrelevant information disproportionate to the needs of the case, is overly broad and unduly burdensome, and purports to require Par to produce information outside its knowledge, possession, or control.  Par further objects to the definition of "Identify" to the extent it purports to require Par to speculate about the identity of persons or organizations who might have responsive information, or purports to call for any description of documents Par no longer possesses and was under no obligation to maintain.

17.     Par objects to the "time period" as defined to begin "one year prior to the launch of each relevant Opioid Product through the date of Your response" to the extent it is inconsistent with the Court's rulings on the temporal scope of discovery in the Track One cases.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Par further objects to the "time period" to the extent it seeks information related to any entity prior to one year before that entity began selling Schedule II opioid medications.  Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. began selling Schedule II opioid medications in 2011.  Par further objects to the "time period" to the extent it seeks information related to any entity prior to the time that entity existed.  Par's subsidiary, Generics International (US), Inc. f/d/b/a Qualitest Pharmaceuticals d/b/a Par Pharmaceutical was formed in 2007 and purchased assets comprising its pharmaceutical business on October 31, 2007.  In 2016, Generics International (US), Inc. became a subsidiary of Par Pharmaceutical, Inc.

## SUPPLEMENTAL RESPONSES TO SPECIFIC INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all individuals with knowledge concerning the subject matter of the allegations in the Complaint in the above referenced matter, including each individual likely to have discoverable information, and, for each, state the subjects on which they have knowledge or information.

**RESPONSE TO INTERROGATORY NO. 1:**

Par incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above.  Par objects to Interrogatory No. 1 on the grounds that it is overbroad and unduly burdensome in that it requests the identity of "all individuals with knowledge concerning the subject matter of the allegations in the Complaint." Par objects to the extent "the Complaint" references any pleadings beyond the complaint filed in the above-captioned case.  Given the scope of Plaintiffs' allegations in this case, the request for information about "all" persons with knowledge concerning "the subject matter of the allegations" is overbroad and unduly burdensome on its face.  Par also objects to the extent this interrogatory seeks information that is publicly available or that is obtainable from some source other than Par that is more convenient, less burdensome, or less expensive.  Par also objects to

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

9

the extent this interrogatory purports to seek information that is outside of Par's knowledge, possession, custody, or control.  Par further objects to Interrogatory No. 1 on the grounds that it is not limited by an appropriate time period or geographic scope that is pertinent to this lawsuit.

Without waiver of the foregoing objections, Par identifies the following current or former employees of Par who may have knowledge concerning issues raised in the complaint:

| Name | Title |
|---|---|
|  | Manager, Customer Due Diligence and Suspicious Order Monitoring |
|  | Director, Customer Operations |
|  | Sr. DEA Compliance Specialist |
|  | Director, DEA Compliance and QA Documentation |
|  | Director, DEA Compliance |
|  | Director, DEA Compliance |
|  | Manager, Customer Due Diligence and Suspicious Order Monitoring |
|  | Director, Marketing |
|  | Analyst, Suspicious Order Monitoring – DEA Compliance |
|  | Interim Director, DEA Compliance |
|  | Director, Enterprise ERP and Serialization |

The individuals identified above can be contacted through Arnold & Porter Kaye Scholer LLP.

Par further states that it bases its response to Interrogatory No. 1 on information now known to Par through the exercise of reasonable diligence.  Par's investigation is continuing, and Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds that in addition to all persons identified in Par's response to Interrogatory No. 1, the

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

additional individuals subsequently identified as custodians in this matter, who are listed below,

may also have knowledge concerning issues raised in Plaintiffs' claim:

| | Title |
|---|---|
| | President, Chief Executive Officer |
| | Senior Vice President for Global Supply Chain Operations |

The current and former Par employees identified above can be contacted through Arnold

& Porter Kaye Scholer LLP.

Par further responds that current or former employees of Par or its affiliates may also

have knowledge concerning issues raised in Plaintiffs' complaints, including all employees from

whose files Par or its affiliates have produced documents in this matter or from whose files Par

or its affiliates have offered to produce documents in this matter.  Individuals from whose files

other defendants, plaintiffs, or third-parties have produced documents or information may also

have knowledge concerning issues raised in the complaints, as may any individual who has

provided or will provide deposition testimony in this matter.  Par also identifies all individuals

specifically referenced in Plaintiffs' complaints and all individuals identified in response to other

interrogatories as individuals who may have relevant knowledge.

Additionally, to the extent Interrogatory No. 1 may be read to seek disclosure of experts

retained by Par in order to defend itself in this ligation or in other litigation, Par further responds

that it will make appropriate disclosures regarding expert witnesses in accordance with

applicable rules and orders.

**INTERROGATORY NO. 2:**

Identify all Scientific Research, studies, tests, trials or analysis that you relied on to test
the safety or efficacy of each of your Opioid Products or that you relied on as a basis for any
Marketing concerning the safety or efficacy of each of your Opioid Products.  For each such
Scientific Research, study, clinical trial or analysis identify:
    a.  The duration for which the patient population was given opioids;
    b.  The dose of opioids given to the patient population.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**
11

**RESPONSE TO INTERROGATORY NO. 2:**

Par incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above.  Par objects to Interrogatory No. 2 on the grounds that it is overly broad and unduly burdensome, seeks information that is not relevant to the issues raised by the claims or defenses of any party, and is not proportional to the needs of the case to the extent Interrogatory No. 2 purports to require Par to identify "all Scientific Research, studies, test, trials or analysis" and concerns "any Marketing" no matter how tangential the connection to the allegations as to Par.  Par further objects that the phrase "Scientific Research, studies, tests, trials or analysis that you relied on to test the safety or efficacy" of opioids is vague, ambiguous, and grammatically confusing.  Par objects that the terms "Scientific Research, studies, test, trials," "analysis," and "Marketing" are vague and ambiguous.

Par objects to Interrogatory No. 2 on the grounds that it includes the defined term "Opioid Products," which is overly broad, vague, and ambiguous, purports to call for information outside Par's knowledge, possession, custody, or control, and seeks information that is not relevant to the claims or defenses of the parties or proportional to the needs of the case.  Par also objects that the interrogatory is vague and ambiguous in that it fails to define the terms "safety or efficacy," both of which could be interpreted to have many meanings.

Without waiver of the foregoing objections, Par responds as follows:  The generic opioid products sold by Par are equivalent to reference listed drugs approved by the FDA as safe and effective.  The clinical studies that supported the FDA's approval are either identified in the FDA approved labels for the reference listed drug and its generic equivalents or are contained in the regulatory submissions to FDA by the manufacturers of the reference listed drugs.  Par further

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

states that it bases its response to Interrogatory No. 2 on information now known to Par through the exercise of reasonable diligence.  Par's investigation is continuing, and Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows:  Par directs Plaintiffs to the Completed Clinical Trial and Study Results portion of Endo's website, located at http://www.endo.com/endopharma/r-d/clinical-research/clinical-trial-study-results, which identifies and provides summaries of clinical studies for Endo opioid medications, many of which are Reference Listed Drugs for Par's generic products, including Opana and Percocet.  The summaries posted on Endo's website include information about study duration and dosages.

Par also directs Plaintiffs to all studies related to opioid products that have been sold by Par identified in Exhibit 42 to the deposition of Dr. Neil Shusterman.  Exhibit 42 identifies Bates numbers at which those studies have been produced to Plaintiffs.

Par further refers to its ANDA submissions to FDA concerning Schedule II opioid medications; all clinical studies, research, and literature cited in annual reports Par provided to FDA for its Schedule II opioid medications; FDA's review and approval of Par Schedule II opioid medications, including FDA's direction, guidance, and feedback concerning the development programs for Par's opioids or the results of Par's studies; the information contained in the FDA-approved prescribing information for Par's Schedule II opioid medications, also reviewed and approved by the FDA; the class-wide post-marketing research requirements for

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

extended-release and long-acting (ER/LA) opioids mandated by FDA and the reports submitted to FDA on the status of those studies.  Answering further, Par refers Plaintiffs to its production of documents for additional information on this subject.

Par also incorporates Endo's Response to Interrogatory 2 to the extent the studies referenced therein relate to Reference Listed Drugs for Par's generic products.

Additionally, to the extent Interrogatory No. 2 calls for information requiring scientific, technical, or other specialized knowledge such that it is appropriately the subject of expert testimony, and/or to the extent it asks for or may be read to encompass work performed by or information received from experts retained by Par in order to defend itself in this ligation or in other litigation, Par further responds that it will make appropriate disclosures regarding expert witnesses in accordance with applicable rules and orders.

**INTERROGATORY NO. 3:**

Identify any controlled studies of which You are aware where the safety and efficacy of the use of opioids beyond 16 weeks was tested and Opioids were found to be safe and efficacious.

**RESPONSE TO INTERROGATORY NO. 3:**

Par incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above.  Par objects to Interrogatory No. 3 on the grounds that the phrase "where the safety and efficacy of the use of opioids beyond 16 weeks was tested" is vague and ambiguous, as is the undefined term "controlled studies."  Par objects on the grounds that Interrogatory No. 3 includes the defined term "Opioids" which is overly broad, vague and ambiguous, purports to call for information outside Par's knowledge, possession, custody, or control, and seeks information that is not relevant to the claims or defenses of the parties or proportional to the needs of the case because it seeks information

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

14

unconnected to the substantive allegations as to Par.  Par also objects that this interrogatory is vague and ambiguous in that it fails to define the terms "safe" or "efficacious," both of which could be interpreted to have many meanings.

Par further objects to Interrogatory No. 3 to the extent it calls for information requiring scientific, technical, or other specialized knowledge such that it is appropriately the subject of expert testimony, and/or to the extent it asks for or may be read to encompass work performed by or information received from experts retained by Par in order to defend itself in this ligation or in other litigation.  Par will make appropriate disclosures regarding expert witnesses in accordance with applicable rules and orders.

Without waiver of the foregoing objections, Par responds as follows:  The generic opioid products sold by Par are equivalent to reference listed drugs approved by the FDA as safe and effective.  The clinical studies that supported the FDA's approval are either identified in the FDA approved labels for the reference listed drug and its generic equivalents or are contained in the regulatory submissions to FDA by the manufacturers of the reference listed drugs.  Par further states that it bases its response to Interrogatory No. 3 on information now known to Par through the exercise of reasonable diligence.  Par's investigation is continuing, and Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY 3:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows: Par refers Plaintiffs to Par's supplemental response to Interrogatories No. 2 and 4 and to Par's production of documents for further information on this subject.  Par further

responds that it is aware of Endo's studies that evaluated the safety and efficacy of Opana ER for

a titration and treatment period lasting beyond 16 weeks:

- EN3202-020 - "A Multicenter, Open Label Extension Study to Evaluate the Long-Term Safety and Effectiveness of Numorphan CR in Patients with Chronic Pain" (clinical study report produced at ENDO-OPIOID_MDL-4344593).

- EN3202-021 - "An Open-Label Extension Study to Evaluate the Long-Term Safety, Tolerability, and Analgesic Efficacy of Numorphan CR (Oxymorphone HCl Controlled Release) in Subjects with Cancer Pain or Chronic Lower Back Pain" (clinical study report produced at ENDO-OPIOID_MDL-03758918).

- EN3202-022 - "An Open-Label Assessment of the Long-Term Safety and Utility of Numorphan CR for the Relief of Moderate to Severe Pain in Patients with Cancer" (clinical study report produced at ENDO-OPIOID_MDL-03961022).

- EN3202-028 - "An Open-Label Tolerability and Safety Study of Oxymorphone Extended Release in Opioid-Naïve Patients with Chronic Pain" (clinical study report produced at ENDO-OPIOID_MDL-04404497).

- EN3202-029 - "An Open-Label, Long-Term Effectiveness and Safety Study of Oxymorphone Extended Release in Patients with Cancer and/or Neuropathic Pain" (clinical study report produced at ENDO-OPIOID_MDL-04406524).

Par refers Plaintiffs to the clinical study reports Endo has produced for additional

information concerning these studies.  Responding further, Par directs Plaintiffs to the controlled

studies identified in the FDA-approved labels for Schedule II opioid medications approved for

long-term opioid treatment or the controlled studies submitted to the FDA in support of

applications for such approvals.  Par also identifies the Opioid Utilization Study ("OPUS"),

which evaluated the clinical, economic, and quality of life outcomes of enrolled patients

receiving opioid pain management for chronic non-cancer pain over a one-year study period.

**INTERROGATORY NO. 4:**

Identify any and all controlled studies that found that opioids improve patients' pain and function on a long-term basis (longer than 90 days).

**RESPONSE TO INTERROGATORY NO. 4:**

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Par incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above. Par objects to Interrogatory No. 4 on the grounds that the phrase "found that opioids improve patients' pain and function on a long-term basis" is vague and ambiguous and could be interpreted many ways. Interrogatory No. 4 fails to provide any guidance regarding the meaning of "improve" and "function," terms which are vague and ambiguous in the context of this request.

Par objects on the grounds that Interrogatory No. 4 includes the defined term "Opioids," which is overly broad, vague and ambiguous, purports to call for information outside Par's knowledge, possession, custody, or control, and seeks information that is not relevant to the claims or defenses of the parties or proportional to the needs of the case because it seeks information unconnected to the substantive allegations as to Par. Par also objects that the interrogatory is vague and ambiguous in that it fails to define the term "controlled studies," which could be interpreted to have many meanings. Par also objects to the extent this interrogatory purports to seek information that is outside of Par's knowledge, possession, custody, or control.

Par further objects to Interrogatory No. 4 to the extent it calls for information requiring scientific, technical, or other specialized knowledge such that it is appropriately the subject of expert testimony, and/or to the extent it asks for or may be read to encompass work performed by or information received from experts retained by Par in order to defend itself in this ligation or in other litigation. Par will make appropriate disclosures regarding expert witnesses in accordance with applicable rules and orders.

Without waiver of the foregoing objections, Par responds as follows: The generic opioid products sold by Par are equivalent to reference listed drugs approved by the FDA as safe and

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

effective. The clinical studies that supported the FDA's approval are either identified in the FDA approved labels for the reference listed drug and its generic equivalents or are contained in the regulatory submissions to FDA by the manufacturers of the reference listed drugs. Par further states that it bases its response to Interrogatory No. 4 on information now known to Par through the exercise of reasonable diligence. Par's investigation is continuing, and Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows: Par refers Plaintiffs to Par's supplemental response to Interrogatory No. 2 and 3 and to Par's production of documents for further information on this subject. Par further directs Plaintiff to studies sponsored by Endo that evaluated the safety and efficacy of Opana ER for a titration and treatment period lasting longer than 90 days:

- EN3202-020 - "A Multicenter, Open Label Extension Study to Evaluate the Long-Term Safety and Effectiveness of Numorphan CR in Patients with Chronic Pain" (clinical study report produced at ENDO-OPIOID_MDL-4344593).

- EN3202-021 - "An Open-Label Extension Study to Evaluate the Long-Term Safety, Tolerability, and Analgesic Efficacy of Numorphan CR (Oxymorphone HCl Controlled Release) in Subjects with Cancer Pain or Chronic Lower Back Pain" (clinical study report produced at ENDO-OPIOID_MDL-03758918).

- EN3202-022 - "An Open-Label Assessment of the Long-Term Safety and Utility of Numorphan CR for the Relief of Moderate to Severe Pain in Patients with Cancer" (clinical study report produced at ENDO-OPIOID_MDL-03961022).

- EN3202-028 - "An Open-Label Tolerability and Safety Study of Oxymorphone Extended Release in Opioid-Naïve Patients with Chronic Pain" (clinical study report produced at ENDO-OPIOID_MDL-04404497).

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- EN3202-029 - "An Open-Label, Long-Term Effectiveness and Safety Study of Oxymorphone Extended Release in Patients with Cancer and/or Neuropathic Pain" (clinical study report produced at ENDO-OPIOID_MDL-04406524).

- EN3202-031 - "An Open-Label Titration Followed by a Randomized, Double-blind, Placebo-controlled Study to Assess the Efficacy, Tolerability, and Safety of Oxymorphone Extended Release Tablets in Opioid-Naïve Patients with Chronic Low Back Pain" (clinical study report produced at ENDO-OPIOID-MDL-04411383).

- EN3202-032 - "An Open-Label Titration Followed by a Randomized, Double-Placebo-Controlled Study to Assess the Efficacy, Tolerability, and Safety of Oxymorphone Extended Release Tablets in Opioid Experienced Patients with Chronic Low Back Pain" (clinical study report produced at ENDO-OPIOID_MDL-04415500).

Par refers Plaintiffs to the clinical study reports Endo has produced for additional information concerning these studies.  Responding further, Par directs Plaintiffs to the controlled studies identified in the FDA-approved labels for Schedule II opioid medications approved for long-term opioid treatment or the controlled studies submitted to the FDA in support of applications for such approvals.  Par further identifies the Opioid Utilization Study ("OPUS"), which evaluated the clinical, economic, and quality of life outcomes of enrolled patients receiving opioid pain management for chronic non-cancer pain over a one-year study period.

**INTERROGATORY NO. 5:**

Identify all physicians, professional associations and/or organizations that You, or any third party on Your behalf, compensated in any way for speaking, publishing endorsing [sic] or promoting Opioids and/or your Opioid Products from 1999 to present, the identify [sic] of those receiving compensation and detail the amount of compensation to each.

**RESPONSE TO INTERROGATORY NO. 5:**

Par incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above.  Par objects to Interrogatory No. 5 on the grounds that it is overly broad and unduly burdensome, seeks information not relevant to the issues raised by the claims or defenses of any party, and is not proportional to the needs of the

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

case insofar as its seeks identification of "all physicians, professional associations and/or organizations" compensated over a nearly 20-year period of time without any connection to the allegations as to Par.  Par also objects on the grounds that the phrase "professional associations and/or organizations" is vague and ambiguous, as are the terms "speaking," "publishing," and "endorsing."  Par also objects that the phrase "speaking, publishing endorsing or promoting Opioids and/or your Opioid Products" is grammatically confusing.

Par also objects to Interrogatory No. 5 because it includes the defined terms "Opioids" and "Opioid Products," which are overly broad, vague and ambiguous, purport to call for information outside Par's knowledge, possession, custody, or control, and seek information that is not relevant to the claims or defenses of the parties or proportional to the needs of the case because they seek information unconnected to the substantive allegations as to Par.

Without waiver of the foregoing objections, Par responds as follows: Par has not organized its generics business to promote its opioid products to prescribers or to pay doctors or other outside groups to speak, endorse, or promote Opioids or Opioid Products.

Par further states that it bases its response to Interrogatory No. 5 on information now known to Par through the exercise of reasonable diligence.  Par's investigation is continuing, and Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows: As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its opioid medications

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

and has not engaged or paid doctors or other outside groups to speak, endorse, or promote opioid products.

**INTERROGATORY NO. 10:**

Identify any Scientific Research, studies, tests, clinical trials or analysis regarding the safety and efficacy of Your Opioid Products that You decided not to publish and the reasons for that decision.

**RESPONSE TO INTERROGATORY NO. 10:**

Par incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above.  Par objects to Interrogatory No. 10 on the grounds that it is overly broad and unduly burdensome, not proportional to the needs of the case, and because it seeks information that is not relevant to the issues raised by the claims or defenses of a party insofar as it seeks information about Par's decisions "not to publish" "any Scientific Research, studies, tests, clinical trials or analysis" without connection to the allegations as to Par.  Par also objects to Interrogatory No. 10 on the grounds that the terms "Scientific Research, studies, tests, clinical trials or analysis" and "publish" are vague and ambiguous in the context of this request, as is the phrase "decided not to publish."

Par objects to the extent Interrogatory No. 10 seeks information that is protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection.  Par further objects to Interrogatory No. 10 on the grounds that that it includes the term "Opioid Products," which is overly broad, vague and ambiguous, purports to call for information outside Par's knowledge, possession, custody, or control, and seeks information that is not relevant to the claims or defenses of the parties or proportional to the needs of the case because it seeks information unconnected to the substantive allegations as to Par.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Without waiver of the foregoing objections, Par responds as follows:  The generic opioid products sold by Par are equivalent to reference listed drugs approved by the FDA as safe and effective.  The clinical studies that supported the FDA's approval are either identified in the FDA approved labels for the reference listed drug and its generic equivalents or are contained in the regulatory submissions to FDA by the manufacturers of the reference listed drugs.  Par' investigation is continuing, and Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows:  The generic opioid products sold by Par are equivalent to reference listed drugs approved by the FDA as safe and effective.  The clinical studies that supported the FDA's approval are either identified in the FDA approved labels for the reference listed drug and its generic equivalents or are contained in the regulatory submissions to FDA by the manufacturers of the reference listed drugs.  Par is not aware of any Scientific Research, studies, tests, clinical trials or analysis regarding the safety and efficacy of Par's Opioid Products that Par decided not to publish.

**INTERROGATORY NO. 11:**

Did You instruct your employees or sales agents to market Your Opioid Products as virtually non-addictive and what was the basis for that instruction?

**RESPONSE TO INTERROGATORY NO. 11:**

Par incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above.  Par objects that the terms "sales agents," "market," and "virtually non-addictive" are vague and ambiguous.  Par further objects to

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Interrogatory No. 11 on the grounds that it includes the term "Opioid Products," which is overly broad, vague and ambiguous, purports to call for information outside Par's knowledge, possession, custody, or control, and seeks information that is not relevant to the claims or defenses of the parties or proportional to the needs of the case because it seeks information unconnected to the substantive allegations as to Par.

Without waiver of the foregoing objections, Par responds as follows: Par has not organized its generics business to employ a sales force for purposes of promoting opioid medications to prescribers directly.  Par's investigation is continuing, and Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows: Par did not instruct its employees or sales agents to market Schedule II opioid products as virtually non-addictive.

**INTERROGATORY NO. 12:**

Did You instruct your employees and sales agents that there was no upper limit on dosing for any of Your Opioid Products?  Describe how that instruction was tested in terms of safety and efficacy and have You subsequently ever placed restrictions on Your recommended dosing limits and why?

**RESPONSE TO INTERROGATORY NO. 12:**

Par incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above.  Par objects that this interrogatory is overly broad, not proportional to the needs of the case, and seeks information that is not relevant to the claims or defenses of a party insofar as it seeks information about Par's instructions as its

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

"Opioid Products" generally.  The term "Opioid Products" is overly broad, vague and
ambiguous, purports to call for information outside Par's knowledge, possession, custody, or
control, and seeks information that is not relevant to the claims or defenses of the parties or
proportional to the needs of the case because it seeks information unconnected to the substantive
allegations as to Par.

Par also objects to Interrogatory 12 on the grounds that the phrases "upper limit on
dosing," "how that instruction was tested in terms of safety and efficacy," and "restrictions on
Your recommended dosing limits" are so vague and ambiguous as used in this interrogatory that
Interrogatory No. 12 lacks sufficient precision to allow Par to formulate a response.  Par objects
that the undefined term "sales agents" is also vague and ambiguous.  Plaintiffs have clarified that
"upper limit on dosing" refers to milligrams per day.

Par further objects to Interrogatory No. 12 on the basis that it contains more than one
discrete question.  Interrogatory No. 12 requests information concerning what "employees and
sales agents" were instructed regarding an "upper limit on dosing," but also asks for a description
of separate information regarding safety and efficacy testing and whether Par has "ever placed
restrictions" on "dosing limits."  Since there are at least three discrete questions contained within
Interrogatory No. 12, these questions shall be considered separate interrogatories and shall count
against the maximum allowable number of interrogatories that may be served in accordance with
the CMO.

Without waiver of the foregoing objections, Par responds as follows:  The FDA-approved
prescribing information for Par's opioid medications includes information concerning the
maximum daily dosage for a particular medication, if any.  Par has not organized its generics

business to employ a sales force for purposes of promoting opioid medications to prescribers directly.

Par further states that it bases its response to Interrogatory No. 12 on information now known to Par through the exercise of reasonable diligence.  Par's investigation is continuing, and Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows:  The FDA-approved prescribing information for Par's opioid medications includes information concerning the maximum daily dosage for a particular medication, if any. Par did not instruct its employees or sales agents that there was no upper limit on dosing for any of Par's Schedule II opioid products.

**INTERROGATORY NO. 16:**

Identify with specificity all facts, documents and data that You plan to rely on in Your defense in this case, including any contention by You that:  (a) that the statements at issue were not false or misleading; (b) that You did not direct, control, or make the statements; (c) that Your representations did not cause increase prescribing, use, abuse, misuse or injuries from Opioids; (d) that Your Opioids were not the source of the harms described in the Complaint or experienced by the Jurisdictions; (e) that Your conduct did not cause injury to a public right, as opposed to an individual injury; (f) that the public nuisance described in the Complaint was reasonable or not substantial; and (g) the Jurisdictions were aware or on notice of or failed to mitigate Your conduct and violations of law, as described in the Complaint.

**RESPONSE TO INTERROGATORY NO. 16:**

Par incorporates by reference its General Objections set forth above.  Par objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case, particularly insofar as it seeks "with specificity all facts, documents and

data." This interrogatory effectively asks Par, at an early stage of the discovery process, to produce a veritable narrative of its entire case. "In the written discovery process," however, "parties are not entitled to each and every detail that could possibly exist in the universe of facts." *Bashkin v. San Diego Cty.*, 2011 WL 109229, at \*2 (S.D. Cal. Jan. 13, 2011); *see also IBP, Inc. v. Mercantile Bank,* 179 F.R.D. 316, 321 (D. Kan. 1998). Par also objects to this interrogatory as a premature contention interrogatory, as fact discovery is ongoing and/or incomplete.

Par further objects to this interrogatory to the extent it purports to call for information protected from disclosure by the work product doctrine, the attorney-client privilege, or any other applicable privilege or protection. Par also objects to this interrogatory to the extent it purports to require premature disclosure of "facts, documents and data" that will be the subject of expert testimony. Par will make appropriate disclosures regarding expert witnesses in accordance with applicable rules and orders. Par objects on the basis that this interrogatory contains at least eight discrete questions, each of which should be counted separately against the 35 interrogatory limitation contained in CMO 1.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows: Par will rely on facts contained in documents and data produced by Par, Endo, other defendants, Plaintiffs, and third parties to support its defenses in these cases, and refers Plaintiffs, pursuant to Federal Rule of Civil Procedure 33(d), to documents including but not limited to: (1) the clinical study reports identified in Par's responses to Interrogatory Nos. 2, 3, and 4; (2) the other publications, studies, and sources identified in Par's responses to Interrogatory Nos. 2, 3, and 4; (3) adverse event data; (4) correspondence and communications

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

with and submissions to the FDA; (5) the labels and warnings related to Par's Schedule II opioid medications; (6) documents regarding Par's monitoring of suspicious orders; (7) company policies and procedures concerning suspicious order monitoring, adverse event reporting and monitoring, diversion reporting as well as documents concerning or reflecting compliance with those policies and procedures; (8) prescription and sales data and market share information for Par's opioid medications; and (9) any other documents or data identified in Endo's written discovery responses.

Par also refers Plaintiffs to the following as examples of those facts on which it may rely in this matter: (1) the FDA approved the Abbreviated New Drug Applications for Par's opioid medications; (2) the FDA-approved labels for Par's Schedule II opioid medications disclose the risks of those medications and contain extensive information regarding those risks and use of the products; (3) Par did not market its products to healthcare providers directly; (4) Par did not ship suspicious controlled substances orders and had appropriate procedures for monitoring of orders for its Schedule II opioids; and (5) any other fact identified in Par's written discovery responses.

Further, Par will rely on facts contained in deposition transcripts provided by current and former employees of Plaintiffs, current and former employees of Endo and Par, current and former employees of other defendants, third parties, and experts to support its defenses in these cases. Par reserves its right also to rely on facts contained in any other discovery provided in these cases to support its defenses in these cases, and any other discovery that may be provided in the future in these cases to support its defenses in these cases. Par also refers Plaintiffs to its response to Interrogatories No. 17 and 22 for a description of certain affirmative defenses and the facts related to those affirmative defenses that Par may raise in response to Plaintiffs' claims and

to the affirmative defenses pled in Par's Answer to the Corrected Second Amended Complaint in Case No. 180OP-45090.

With respect to the specific contentions contained in this Interrogatory, namely, that "the statements at issue were not false or misleading," that Par "did not direct, control, or make the statements," and that Par's "representations did not cause increase prescribing, use, abuse, misuse or injuries from Opioids," despite repeated requests, Plaintiffs have not identified a single specific false or misleading statement or representation made by Par that influenced opioid prescribing in Plaintiffs' jurisdictions.  Par is not required to identify facts to rebut claims about "statements" and "representations" that do not exist.  If Plaintiffs identify these statements with specificity, Par may endeavor to further supplement its response to this Interrogatory.

With respect to the contentions that Par's "Opioids were not the source of the harms described in the Complaint or experienced by the Jurisdictions," Par's "conduct did not cause injury to a public right, as opposed to an individual injury," and that "the public nuisance described in the Complaint was reasonable or not substantial," Plaintiffs have not identified with specificity the evidence that they will use to prove that Par, individually, caused Plaintiffs to suffer harm, injured a public right, or created a public nuisance.  Par is not required to identify facts to rebut claims about broad categories of alleged harms that have not been alleged to have been caused by Par. If Plaintiffs can identify with specificity the evidence upon which Plaintiffs will rely to show that Par, individually, caused Plaintiffs to suffer harm, injured a public right, or created a public nuisance, Par may endeavor to further supplement its response to this Interrogatory.

Finally, with respect to the contentions that "the Jurisdictions were aware or on notice of or failed to mitigate [Par's] conduct and violations of law, as described in the Complaint,"

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Plaintiffs have not identified with specificity what conduct of Par's is referred to in Interrogatory No. 16, and have not provided with specificity the evidence upon which Plaintiffs will rely to prove that Par's unspecified conduct amounted to a violation of law. If Plaintiffs can more specifically identify the alleged conduct referred to in Interrogatory No. 16 and the evidence upon which Plaintiffs will rely to prove that Par's unspecified conduct amounted to a violation of law, Par may endeavor to further supplement its response to this Interrogatory.

**INTERROGATORY NO. 17:**

Identify all prescriptions of Opioids in the Jurisdictions that were medically unnecessary or inappropriate, including the criteria applied to identify such prescriptions.

**RESPONSE TO INTERROGATORY NO. 17:**

Par incorporates by reference its General Objections set forth above.  Par objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case to the extent it seeks information about "all prescriptions" of any "Opioids in the Jurisdictions that were medically unnecessary or inappropriate."  Par objects that this interrogatory is vague and ambiguous, and calls for information outside Par's knowledge, possession, custody, or control.  Par objects that this interrogatory demands information in Plaintiffs' possession already or that is available from third parties from whom discovery regarding these subjects is ongoing and/or incomplete. from third parties from whom discovery regarding these subjects is ongoing and/or incomplete.  Par objects that this interrogatory is improper insofar as it seeks to require Par to prepare Plaintiffs' case for Plaintiffs.  Par objects to the extent this interrogatory seeks information that is protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Par also objects that this interrogatory is vague and ambiguous insofar as "Jurisdictions" appears to refer to a defined term but no definition is provided. Par objects to the extent this term seeks information concerning a geographic scope that is not relevant to the claims in the instant actions or that is inconsistent with the orders and rulings concerning the scope of discovery in these actions. Par further objects that the phrases "medically unnecessary and inappropriate" and "criteria applied to identify" are vague and ambiguous because they are subject to multiple different interpretations.

Subject to and without waiver of the foregoing objections, Par responds as follows: Par is not aware of specific medically unnecessary or inappropriate prescriptions of its Schedule II opioid medications in the Track One jurisdictions. As a general matter, Par does not have access to information necessary to identify specific medically unnecessary or inappropriate prescriptions because, for example, Par does not have information identifying the patient for whom a particular prescription was written. Par also does not have information regarding such a patient's individual medical condition and characteristics or identifying the basis for the prescribing physician's decision to prescribe a Par Schedule II opioid medication for that particular patient. Nor does Par have information about how the particular patient used any specific prescription.

Par further states that it bases its response to this interrogatory on information now known to Par through the exercise of reasonable diligence. Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:**

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Subject to and without waiver of all of Par's previously stated objections, Par further

responds as follows: Plaintiffs have not identified any medically unnecessary or inappropriate

prescriptions for opioids sold by Par, caused by any purported misrepresentation, omission, or

other conduct of Par in connection with the promotion or marketing of opioid medications and

have not produced sufficient information through which Par could identify any such

prescriptions, notwithstanding that Defendants have repeatedly sought information to show

prescriptions caused by their purported misconduct.

**INTERROGATORY NO. 22:**

Do You contend that there were intervening or supervening or superseding causes between
Your conduct and any of the Jurisdictions' injuries alleged in the Second Amended Complaint?  If
so, please identify each such intervening or supervening or superseding cause, including but not
limited to the name and address of any individual who You contend is such a cause, how that
person or entity acted as such a cause, and each and every fact that supports Your contention that
each such individual or entity is such a cause.

**RESPONSE TO INTERROGATORY NO. 22:**

Par incorporates by reference its General Objections set forth above.  Par objects to this

interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportional to

the needs of the case insofar as it seeks "each and every fact," including names and addresses

of "any individual."  Par also objects to this interrogatory as a premature contention

interrogatory, as fact discovery is ongoing and/or incomplete.

Par also objects to the extent this interrogatory seeks disclosure of expert discovery

inconsistent with the deadlines for such disclosure.  Par will make appropriate disclosures

regarding expert witnesses in accordance with applicable rules and orders.  Par further objects to

this interrogatory to the extent it purports to call for information protected from disclosure by

the work product doctrine, the attorney-client privilege, or any other applicable privilege or

protection.  Par objects that this interrogatory is vague and ambiguous insofar as "Jurisdictions"

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

appears to refer to a defined term but no definition is provided.  Par objects to the extent this term seeks information concerning a geographic scope that is not relevant to the claims in the instant actions or that is inconsistent with the orders and rulings concerning the scope of discovery in these actions.

Subject to and without waiver of the foregoing objections, Par responds that numerous intervening or supervening or superseding causes exist between Par's alleged conduct and any of the Jurisdictions' injuries alleged in the Second Amended Complaint.  Those causes include:

1.      A prescriber's receipt and reliance on a misstatement or omission by Par;

2.      A prescriber's decision to write a medically unnecessary or inappropriate prescription of a Par product for a specific patient because of the alleged misrepresentation or omissions and without knowledge or an understanding of the risks of the medication;

3.      A patient filling that prescription;

4.      A pharmacy filling the patient's medically unnecessary or inappropriate prescription with a Par generic opioid product instead of a competitor's generic opioid product;

5.      Potential criminal diversion of the Par product prescribed by a prescriber and filled by a pharmacy;

6.      A patient abusing, misusing, or becoming addicted to the to the allegedly fraudulently-induced prescription because of the prescription of that product as opposed to other factors (e.g., the individual's mental health or history of addiction) or other medically appropriate prescriptions;

7.      The patient's independent choices or actions to abuse or misuse the product;

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

8.     The patient's independent choice to move from prescription opioids to illegal non-prescription drugs; and

9.     Plaintiffs incurred costs or lost tax revenue as a result of the patient's misuse, abuse, or addiction that would not have occurred but for Par's allegedly false statement and the chain of causation required above.

Par further responds that a number of actors other than Par play a critical role in the dispensing and use of opioids, including health insurance companies, pharmacy benefit managers, distributors, retailers, and public entities that, for example, oversee prescribing practices, investigate diversion, provide drug prevention and treatment services, provide or encourage alternative pain management systems, provide or sponsor education for prescribers or the public, or regulate the availability and supply of opioid medications or illicit opioids. Moreover, opioids can reach the hands of consumers through an illegal supply chain that begins with the illegal manufacture of illicit opioids, including in foreign countries, or the illegal diversion of legally produced opioid medications.  Regardless of their origin, individual users abuse these illicit opioids.

Par further states that it bases its response to this interrogatory on information now known to Par through the exercise of reasonable diligence.  Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 22:**

Subject to and without waiver  of all of Par's previously stated objections, Par responds that its conduct did not cause any purported injury to Plaintiffs, and Plaintiffs' complaints fails to

allege any particular misrepresentation, omission or other act of wrongdoing by Par that caused

Plaintiffs' alleged injuries.

Par states further that Plaintiffs' alleged chain of causation related to legitimate patients

would require, at a minimum, the following series of events for each alleged act or omission,

prescription, and injury:

- An alleged Par misrepresentation or omission in the Track One jurisdictions;

- A third-party prescriber who was exposed to that specific misrepresentation or affected by that omission;

- Instead of exercising his or her own independent medical judgment, including pursuant to the black-box risk warnings provided in the applicable product labeling information, that third-party prescriber prescribed a Par opioid medication as a result of Par's allegedly wrongful act or omission without knowledge or an understanding of the risks of the medication;

- The prescription was medically unnecessary for the patient;

- The pharmacist dispensed the medically unnecessary prescription without informing the patient about the risks;

- The patient was unaware of the risks of opioids;

- The patient was harmed by a Par opioid medication (as opposed to illicit opioids) due to the allegedly fraudulently induced prescription, as opposed to other factors (e.g., personal choices made by the individual to violate the law or doctor's orders, third-party diversion of opioids, or other illicit activities); and

- Plaintiffs incurred the harms described in the complaint as a result of that patient's misuse, abuse, or addiction that would not have occurred but for Par's allegedly false statement or omission.

Answering further, Par has identified alternative causes that may, in whole or in part,

address Plaintiffs' claim of causation and proximate causation, render the alleged damages too

remote as a matter of law, and/or interrupt or break the chain of causation that Plaintiffs must

prove between Par's alleged conduct and the purported harms described in the complaint.  Some

of these alternative causes are discussed herein from presently available information, and others

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

are expected to be found in discovery.  Plaintiffs possess discovery and other information that they have not provided to Par, despite being ordered to do so, that would shed additional light on the particulars of these and other alternative causes and discovery is ongoing.  Par thus reserves the right to modify this supplemental response.  Moreover, expert discovery is ongoing and is expected to shed additional light on these and other alternative causes.

*First,* Par may argue that ***criminal activity*** is an intervening or superseding cause that breaks the chain of causation that Plaintiffs must prove to show that Par is liable for the damages Plaintiffs seek. It is undisputed that diversion occurs by illegal and criminal third party actors who may, for example, steal prescription drugs from legitimate channels of distribution and dispensation and then re-sell or re-distribute via black markets to individuals who lack a lawful prescription or who are not under the supervision or care of a licensed medical doctor or other prescriber.  The activities of foreign drug cartels, illegal foreign drug labs, and illegal mail drug traffickers are another example of criminal activity that is an intervening or superseding cause. By way of example, Par refers to the following:

- PPLPC004000366979 at 7013 refers to a conviction of Ruben J. Rhodes on charges including aggravated drug trafficking for 100,000 illegally obtained prescription oxycodone and other pills brought into Ohio for illegal sale;

- CUYAH_005076182 at 189 refers to an arrest of John Randy Callihan for selling prescription oxycodone and other controlled substances to individuals who lack a legitimate medical need;

- CUYAH_005076182 at 189 refers to an arrest of Christopher Stegawski for selling prescription oxycodone and other controlled substances to individuals who lack a legitimate medical need;

- CUYAH_000018361 at 396 refers to the ways prescription drugs are diverted through criminal activity to the illicit marketplace;

- CUYAH_001708327 refers to illicit fentanyl, cocaine, and methamphetamine in Ohio;

- CUYAH_001552252  refers to illicit fentanyl from China in Cuyahoga County.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- SUMMIT_000906717 and SUMMIT_000906721 refer to overdose fatalities from heroin and illicit fentanyl;

- SUMMIT_000036323 refers to reports of counterfeit pills mimicking oxycodone in Ohio.

- AKRON_000368459 refers to a report of investigation by the Ohio State Board of Pharmacy including an interview of a patient, Pearl Lantz, who admits to selling pills prescribed to her that she did not take herself;

- CLEVE_000345269 refers to a report of an individual passing fraudulent prescriptions for oxycodone 30 mg (1/8/03) (Cleveland Police Narcotics Unit Compliance Case Tracker);

- CLEVE_000345269 refers to a report of an individual selling Percocet and Vicodin from a house (1/23/2013) (Cleveland Police Narcotics Unit Compliance Case Tracker);

- CLEVE_000345269 refers to a report of a patient selling his "Oxy" prescriptions unlawfully (4/22/2013) (Cleveland Police Narcotics Unit Compliance Case Tracker);

- CLEVE_000345269 refers to a report of an individual heading a "pill ring" to sell OxyContin and other prescription drugs (11/11/2013) (Cleveland Police Narcotics Unit Compliance Case Tracker);

- CLEVE_000345269 refers to a report of a robbery of over 2,000 pills of Percocet and/or Oxycodone (1/7/2013) (Cleveland Police Narcotics Unit Compliance Case Tracker);

- Public sources refer to Da'Nico D. Geter, a resident of Akron, Ohio, as pleading guilty to, among other things, possession with intent to distribute approximately 201.5 grams of carfentanil within Summit County, Ohio (https://www.justice.gov/usao-ndoh/pr/akron-man-pleads-guilty-using-firearm-while-having-nearly-half-pound-carfentanil);

- Public sources refer to Dustin W. Somerville, a resident of Barberton, Ohio, as being indicted for, among other things, possession with intent to distribute 34 grams of a substance containing carfentanil within Summit County, Ohio (*United States v. Geter et al.*, 5:18-cr-00021, Indictment, Jan. 10, 2018);

- Public sources refer to Donte L. Gibson, Audrey J. Gibson, Dontaysha S. Gibson, Derrick A. Adams II, Lisa A. Richardson, Lori E. Martin, Ajarae C. Hisle, Jamar J. Jackson, and Garrett R. Frantz, who are residents of Akron, Ohio, as being indicted in 2018 for, among other things, conspiracy to possess with intent to distribute more than 400 grams of pure illicit fentanyl and at least 9.65 grams of pure carfentanil (https://www.justice.gov/usao-ndoh/pr/nine-people-indicted-ordering-fentanyl-and-carfentanil-china-and-selling-it-akron-and);

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- Public sources refer to Reginald Jenkins, who is a South Carolina resident; Troy Davis, Stephen Phares, Raymond Trenell Oliver, Elonzo Davis, Quadron Johnson, William Solomon, Malik Hobson, Johnnie Lawrence, Richard Fluker, Alvin Fennel, Terrance Williams, Aaron White, Alkeem Fennel, Cassandra Studebaker, Courtney Warrens, Tommie Richardson, Arthur Solomon, Mickey Tramie, who are residents of Elyria, Ohio; Deondre Vaughn, Troy Martin, Anthony Rodgers, Myron Pryo, who are residents of Cleveland, Ohio; Leon Lamont, who is a resident of Washington, Ohio; and Jarell Davis, who is a resident of Cuyahoga Falls, Ohio. These individuals were indicted on June 21, 2018, for their roles in distributing 100 grams or more of a substance containing Furanyl Fentanyl, 50 grams or more of a mixture containing fentanyl, 10 grams or more of a mixture containing carfentanil, and hundreds of grams of other drugs including cocaine and heroin, throughout the Northern District of Ohio (*United States v. Davis et al.*, 1:18-cr-331, Indictment);

- Public sources refer to Ryan Sumlin, Sabrina M. Robinson, and Leroy Shuarod Steele, residents of Akron, Ohio, as either being convicted of, or pleading guilty to, among other things, distribution of illicit fentanyl from China and heroin that resulted in the death of a 23-year-old resident of Akron, Ohio (*See e.g.*, *United States v. Steele et al.*, 5:15-cr-319, Plea Agreement as to Sabrina M. Robinson, January 12, 2017; https://www.justice.gov/usao-ndoh/pr/akron-man-faces-least-20-years-prison-after-being-convicted-selling-fentanyl-and-heroin; https://www.justice.gov/usao-ndoh/pr/akron-man-indicted-selling-fentanyl-caused-fatal-overdose);

- Public sources refer to Gerald Bowerman and Cortney Williams, residents of Cuyahoga Falls, Ohio, and Emmett Nelson, resident of Akron, Ohio, as being indicted for conspiracy to possess with intent to distribute 40 grams or more of illicit fentanyl within Summit County, Ohio (https://www.justice.gov/usao-ndoh/pr/three-summit-county-indicted-having-1500-pills-fentanyl-stamped-look-oxycodone);

- Public sources refer to LeTroy Vaughn, a resident of Akron, Ohio, as being indicted in May 2018 for distribution of illicit fentanyl obtained from China which resulted in the fatal overdose of a resident of Wadsworth, Ohio (https://www.justice.gov/usao-ndoh/pr/akron-man-charged-selling-fentanyl-caused-wadsworth-mans-death);

- Public sources refer to the sentencing of Akron doctor, Gregory Ingram, for exchanging opioid prescriptions for money and sexual favors (https://www.ohio.com/article/20151111/NEWS/311119046);

- Public sources refer to Dennie Rowland, Candi A. Webb, and Richard L. Overdorf, who are residents of Akron, Ohio as being indicted in February 2018 for their roles in a conspiracy to possess with intent to distribute controlled substances within Summit County, Ohio (https://www.justice.gov/usao-ndoh/pr/three-akron-area-indicted-their-roles-conspiracy-which-they-forged-signatures-medical);

- OBD-00003727 at 770 refers to the report of the sentencing of Dr. Donald Raymond Kiser for conspiracy to distribute controlled substances (oxycodone, hydrocodone,

alprazolam) without lawful authorization (Cases Against Doctors, USDOJ, Office of Diversion Control); and

- CLEVE_003327602  and CLEVE_003328886 acknowledge that Mexican Drug Trafficking Organizations (MDTOs) are directly supplying Cleveland-based heroin distributors.

Par reserves the right to reference other examples of criminal activity that acted as an intervening or superseding cause.

*Second*, Par may argue that ***individual physicians' wrongful conduct*** is an intervening or superseding cause that breaks the chain of causation that Plaintiffs must prove to show that Par is liable for the damages Plaintiffs seek.  Physicians or other prescribers may become an alternative cause, including by, for example, submitting fraudulent prescriptions, writing prescriptions for patients who do not have a medically proper use for them, failing to attend to the risk of abuse and addiction, and converting their medical practice into a "pill mill." The pertinent state has authority to regulate the practice of medicine, and Plaintiffs have authority to police and enforce criminal departures from controlling medical regulations. These and other wrongful actions would cause damage to the individual patient and others. By way of example, Par refers to the following:

- PPLPC015000254042 refers to an audit of the Ohio Pharmacy Board that found that 12,000 physicians violated the policy requiring them to check patients' prescription histories against the state website before recommending prescription opioids;

- Public sources refer to the sentencing of Akron doctor, Gregory Ingram, for exchanging opioid prescriptions for money and sexual favors (https://www.ohio.com/article/20151111/NEWS/311119046);

- OBD-00003727 at 770 refers to the report of the sentencing of Dr. Donald Raymond Kiser for conspiracy to distribute controlled substances (oxycodone, hydrocodone, alprazolam) without lawful authorization (Cases Against Doctors, USDOJ, Office of Diversion Control);

- AG-MHA_036652 at 659 refers to a patient who received 59 prescriptions from an internal medicine physician giving the patients an average daily MED of 1,147 mg;

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- Public sources refer to the sentencing of an Ohio dentist in connection with illegal oxycodone and hydrocodone distribution (https://archives.fbi.gov/archives/cleveland/press-releases/2010/cl121610a.htm)

Par reserves the right to reference other examples of individual physicians' conduct that acted as an intervening or superseding cause.

*Third,* Par may argue that ***an individual's failure to follow a physician's or other prescriber's directions***—and/or an individual's illegal conduct—for use of prescription opioid medications is also an alternative cause of potential harm to that individual and others. Par's opioid medications are accompanied by explicit instructions to the prescriber for proper use and disclosure of the medication's risks and benefits, and the physician or other prescriber is under an independent duty to the patient to determine whether a prescription is appropriate for that individual. But individual patients may fail to follow or violate their physician's or other prescriber's instructions for use by, among other things, crushing or otherwise altering the medication to depart from its intended use, failing to follow dosing and frequency instructions, failing to dispose of extra pills that can be improperly diverted from a medicine cabinet or elsewhere, or dispensing pills directly to friends or family. These and other departures from physician or prescriber directions may cause damages. By way of example, Par refers to the following:

- CUYAH_000018361 at 379 refers to unintentional drug poisonings (overdoses) in Ohio (Report by Bureau of Health Promotion and Risk Reduction, Ohio Department of Health);

- CUYAH_011925434 at 441 refers to a report that in 2008 16% of individuals who died from unintentional poisoning had a history of doctor shopping from at least five different prescribers per year (Ohio Prescription Drug Abuse Task Force, Initial Report);

- AKRON_000368459 refers to a report of investigation by the Ohio State Board of Pharmacy, including an interview of a patient who admits to lying to obtain controlled substances;

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- AG-MHA_036652 at 660 refers to an individual who received 41 opioid prescriptions from 16 prescribers and filled them at 8 pharmacies giving the individual an average daily MED of 196 mg;

- AG-MHA_036652 at 660 refers to an individual who received 22 Opioid prescriptions from 15 prescribers and filled them at 10 pharmacies. The individual traveled more than 70 miles to obtain prescriptions from three different prescribers and six prescriptions were written by a prescriber more than 145 miles away (OIG Data Brief: Opioids in Ohio Medicaid: Review of Extreme Use and Prescribing);

- CLEVE_000115319 refers to a report of an individual who overdosed on OxyContin on 9/5/2016;

- CLEVE_000115349 refers to a report of an individual who presented to the emergency room reporting taking too much OxyContin on 6/1/2016;

- CLEVE_000115349 refers to a report of an individual who was brought to the emergency room and whose spouse reported overuse of OxyContin on 6/29/2016;

- CLEVE_000115349 refers to a report of an individual who presented to the emergency room reporting ingestion of 16 5mg tablets of Oxycodone on 11/6/2016; and

- CUYAH_001120141 refers to a report of the death of an individual from acute intoxication by the combined effects of ethanol, cocaine, hydrocodone, acetaminophen, and nordiazepam.

Par reserves the right to reference other examples of an individual patient's conduct that acted as an intervening or superseding cause.

*Fourth*, Par may argue that among other potential alternative causes, individuals who take prescription opioids and experience addiction, abuse the medication, or sustain other injuries, may also have been ***using other medications or illegal drugs, such as heroin and illicit fentanyl***, whether concurrently, previously, or subsequently.  The use of other medications (including other opioid medications that are not made or marketed by Par) or illegal drugs may cause damages, including personal injury or death.  By way of example, Par refers to the following:

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- CUYAH_001121821 refers to a report of the death of an individual from acute intoxication by the combined effects of cocaine, heroin, and ethanol;

- CUYAH_001040118 refers to a report of the death of an individual from acute heroin intoxication;

- SUMMIT_000035675 refers to a report of the death of an individual Cease from the combined use of ethanol, fentanyl, and heroin;

- SUMMIT_000035547 refers to a report of the death of an individual from acute mixed fentanyl and cocaine toxicity;

- SUMMIT_001199555 refers to a report of the death of an individual rom fentanyl toxicity;

- SUMMIT_001199557 refers to a report of the death of an individual from acute mixed heroin, fentanyl and alprazolam toxicity;

- A publication released by the Ohio Department of Health concludes that "[t]he vast majority of fentanyl reports by law enforcement in drug seizures result from illegally produced and trafficked fentanyl, not diverted prescription fentanyl";

- SUMMIT_000037688 refers to overdoses related to carfentanil;

- AKRON_000203830 refers to a report of the death of an individual from acute fentanyl toxicity; and

- AKRON_000203841 refers to a report of the death of an individual from carfentanil toxicity.

Par reserves the right to reference other examples of the use of other medications or illegal drugs that acted as an intervening or superseding cause.

*Fifth*, Par may argue that **conduct by an individual distributor** is an intervening or superseding cause that breaks the chain of causation that Plaintiffs must prove to show that Par is liable for the damages Plaintiffs seek.  By way of example, Par refers to such conduct that may act as an intervening or superseding cause:

- Certain distributors may have failed to employ a suspicious order monitoring program that complied with the Controlled Substances Act;

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- Certain distributors may have failed to flag orders of interest in a manner that complied with the Controlled Substances Act;

- Certain distributors may have failed to investigate orders of interest in a manner that complied with the Controlled Substances Act;

- Certain distributors may have failed to obtain sufficient justifications for orders of interest in a manner that complied with the Controlled Substances Act;

- Certain distributors may have failed to hold orders of interest in a manner that complied with the Controlled Substances Act;

- Certain distributors may have failed to report suspicious orders in a manner that complied with the Controlled Substances Act;

- Certain distributors may have failed to cancel suspicious orders in a manner that complied with the Controlled Substances Act;

- Certain distributors may have failed to develop thresholds for orders in a manner that complied with the Controlled Substances Act;

- Certain distributors may have failed to maintain thresholds for orders in a manner that complied with the Controlled Substances Act; and

- Certain distributors may have failed to comply with security requirements set forth in the Controlled Substances Act.

Par reserves the right to reference other examples of conduct by distributors that acted as an intervening or superseding cause.

*Sixth*, Par may argue that ***an individual pharmacy*** is an intervening or superseding cause that breaks the chain of causation that Plaintiffs must prove to show that Par is liable for the damages Plaintiffs seek, including by, for example, dispensing prescription medications without a proper prescription or failing to report indications of diversion, abuse, or addiction.  By way of example, Par refers to the following:

- CLEVE_000345269 refers to a case of a pharmacy filling a stolen prescription for Oxycodone (7/17/2013) (Cleveland Police Narcotics Unit Compliance Case Tracker);

- CLEVE_000345269 refers to a case of a pharmacy filling a prescription in a different name (8/5/2013) (Cleveland Police Narcotics Unit Compliance Case Tracker);

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- CLEVE_000345269 refers to a case of improper dispensing of oxycodone among other prescription drugs (10/7/2013) (Cleveland Police Narcotics Unit Compliance Case Tracker);

- CLEVE_000345269 refers to a case of filling fraudulent prescriptions for oxycodone (10/8/2013) (Cleveland Police Narcotics Unit Compliance Case Tracker);

- CLEVE_000345269 refers to a case of filling fraudulent prescriptions for oxycodone (10/10/2013) (Cleveland Police Narcotics Unit Compliance Case Tracker);

- PPLP004381010 refers to a Southgate Pharmacy's suspicious ordering of oxycodone and hydrocodone and discontinuing business with the pharmacy;

- SUMMIT_002053476 at 503-510 refers to a record of proceedings of the Ohio State Board of Pharmacy against Chanice Newcomer, RPh for theft of drugs including oxycodone from her pharmacy employer;

- CUYAH_002120507 refers to an email from a forensic toxicologist in the Cuyahoga County Medical Examiner's Office describing a case of improper filling in a single day of multiple prescriptions for oxymorphone by an unidentified pharmacy;

- AKRON_000368675 refers to a report on the indictment of two pharmacists charged with using pharmacies to sell opioids and opiates illicitly; and

- SUMMIT_001353772 refers to a report on charges against pharmacist Harold Fletcher for illegally distributing prescription painkillers and reports that he filled a prescription written by a pill mill and presented by a patient who lived 85 miles away.

Par reserves the right to reference other examples of conduct by individual pharmacies that acted as an intervening or superseding cause.

*Seventh*, Par may argue that **federal and state government authorities** are an intervening or superseding cause that breaks the chain of causation that Plaintiffs must prove to show that Par is liable for the damages Plaintiffs seek. By way of example, Par refers to such conduct that may act as an intervening or superseding cause:

- The DEA determined the "quota" governing production levels of opioids in the United States, based on its determination of the nation's legitimate needs;

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- The DEA issues registrations to manufacturers, distributors, pharmacies and prescribers, and has the authority and responsibility to revoke such registrations as provided by the CSA and governing regulations if those registrants engage in diversion;

- The DEA was aware of, and had authority to act on, market-wide distribution information provided to it though ARCOS reporting and other sources;

- Until at least 2010, the DEA didn't proactively review usage data to combat the diversion of drugs for illicit purposes" and the  DEA "still does not have a centralized way to analyze suspicious order reports submitted by drug distributors." John Raby, *Report: Distributors, DEA failed to abate US opioid crisis*, Associated Press (Dec. 21, 2018), https://www.apnews.com/d05052dcfb0f46468a2b5272473d7aa8;

- The DEA failed to provide effective guidance to manufacturer and distributor registrants regarding efforts to detect and reduce diversion of opioids;

- The FDA approved opioid medications, including Par's opioid medications, after finding that that they were safe and effective, and that their benefits outweighed their risks.  The FDA also approved generic opioids and the labels of those opioids, in compliance with the duty of sameness, are substantively identical to the approved reference listed drugs for such generic products.  FDA received information on an ongoing basis about their benefits and risks

- The FDA Risk Management Plans or Risk Minimization Action Plans for opioid medications.

- The FDA approved class-wide Risk Evaluation and Mitigation Strategies covering opioid medications.

- State and federal authorities did not take all necessary steps to detect and reduce diversion of opioid products by criminal actors outside of Par's control; and

- State authorities did not take all necessary steps to ensure that physicians and other prescribers prescribed opioid products appropriately.

Par reserves the right to reference other examples of federal and state government conduct that acted as an intervening or superseding cause.

*Seventh*, **Plaintiffs' failure to exercise due care** or properly discharge their duties in the assessment and decision of whether to approve the payment of claims for medical services or medications is an alternative cause that may, in whole or in part, be a cause of the purported damages.  Plaintiffs, as well as the agents and actors under their control, have discretion to

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

decide whether, under what particular circumstances, and how much to pay for an opioid medication.  Plaintiffs possess discretionary policymaking, rulemaking, and contractual powers to define medical necessity (or to define what is medically necessary) and to define these parameters, including to define preconditions for use of opioids, accompanying therapy (including of co-morbidities), pre-approval, duration of use, dosage, indications, and step-therapy, all before any money is paid for an opioid.  Plaintiffs also possess powers and discretion to independently analyze submissions for payment and to independently assess, including by use of medical staff, whether any particular prescription is medically necessary as well as to demand further information to substantiate payments, audit prior payments, and recall past payments if Plaintiffs believed at any time that any payment or prescription was improper.  Plaintiffs have broad discretion to change any of these policies, rules, and decisions.  Plaintiffs' failures to exercise due care at any one of these and other steps between the issuance of a prescription for an opioid medication and the payment of it (and failure to take post-payment actions) are alternative causes of the damages (if any) alleged.  Furthermore, Plaintiffs' own actions and policies are also an alternative cause of the damages alleged because, for example, Plaintiffs have failed to adopt policies or practices that, if adopted earlier, could have curbed overdose deaths, aided in awareness of the harms of opioids, including heroin and illicit fentanyl,  or provided adequate treatment or addiction related services.  Local law enforcement in  Plaintiffs' jurisdictions have also failed to take more active steps to stem opioid overdose or otherwise proactively combat diversion and illegal use.  By way of example, Par refers to such conduct that may act as an alternative cause:

- Plaintiffs selected and supervised Medical Mutual of Ohio as their agent to decide whether claims for opioid medications were medically necessary;

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- Plaintiffs, including through their agent Medical Mutual of Ohio, chose whether to reimburse or require the use of alternative services for pain management;

- Plaintiffs, including through their agent Medical Mutual of Ohio, failed to identify potential provider overprescribing and potential patient medication abuse;

- Plaintiffs, including through their agent Medical Mutual of Ohio, failed to timely and reasonably implement a Corrective Action Plan to address improper prescriptions of Opioid medications;

- Plaintiffs, including through their agent Medical Mutual of Ohio, failed to timely and reasonably implement state Opioid prescribing guidelines;

- Plaintiffs, including through their agent Medical Mutual of Ohio, failed to timely implement prior approval requirements for Opioid medication therapy;

- Plaintiffs, including through their agent Medical Mutual of Ohio, failed to timely implement step therapy requirements for Opioid medication therapy;

- Plaintiffs, including through their agent Medical Mutual of Ohio, failed to timely implement quantity or duration controls;

- Plaintiffs, including through their agent Medical Mutual of Ohio, failed to timely implement a RationalMed program;

- Plaintiffs, including through their agent Medical Mutual of Ohio, failed to timely and reasonably implement the Quality Improvement Program;

- Plaintiff Cuyahoga County did not create any type of educational campaign regarding the harms of opioids, including heroin and fentanyl, until late 2016 (CUYAH_016166320) and did not declare a public health emergency until June 2017 (CUYAH_001623600);

- Plaintiff Summit County, in 2017, acknowledged that law enforcement officers in Akron do not carry DAWN kits, including naloxone for opioid overdoses (SUMMIT_00150603);

- Plaintiff Summit County has acknowledged that it had "[i]nsufficient outpatient based medication assisted treatment programs" connected to months-long delays in treatment resulting in further harm to residents (SUMMIT_001176858-59); and

- Plaintiff Summit County acknowledged in 2014 that it had insufficient space in its residential treatment services centers, with weeks-long waiting lists (SUMMIT_001060230_0002).

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Par reserves the right to reference other examples of Plaintiffs' failure to exercise due care that acted as alternative cause.

Finally, government and commercial insurer, payor, and affiliates' policies and practices related to opioids are also an alternative cause of the damages alleged.  For example,

- Rep. Elijah Cummings, D-Md., wrote that insurance companies created financial incentives that may "steer beneficiaries to the very drugs that are fueling the opioid crisis" and away from "less addictive, but more expensive, alternatives." Charles Ornstein, *Pressure Mounts on Insurance Companies to Consider Their Role in Opioid Epidemic*, ProPublica (Oct. 19, 2017) https://www.propublica.org/article/pressure-mounts-on-insurance-companies-to-consider-their-role-in-opioid-epidemic.

- The same companies have made medications that treat addiction, such as suboxone, "unaffordable for many addicts." *Id.*;

- It has also been noted by commentators that the insurance industry has refused to cover Tamper-Resistant/Abuse Deterrent Formulations of opioids, ignoring reports that such formulations would actually result in savings for insurers.  See Michael E Schatman1 and Lynn R Webster, The health insurance industry: perpetuating the opioid crisis through policies of cost-containment and profitability, J Pain Res. 2015; 8: 153–158, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4370920/#b68-jpr-8-153 (citing Kirson NY, Shei A, White AG, et al. Societal economic benefits associated with an extended-release opioid with abuse-deterrent technology in the United States. Pain Med. 2014;15:1450–1454);

- An analysis of Medicare prescription drug plans showed that only one-third of people analyzed had access to Butrans, "a pain killing skin patch that contains a less-risky opioid" Katie Thomas and Charles Ornstein, Amid Opioid Crisis, Insurers Restrict Pricey, Less Addictive Painkillers, New York Times (Sept. 17, 2017); https://www.nytimes.com/2017/09/17/health/opioid-painkillers-insurance-companies.html?_r=0.

- The same analysis showed that all plans required prior approval for the coverage of pain therapies that do not have a risk of addiction, but cost more than generic opioids. *Id.*;

- The analysis also found that the same plans covered most common opioids without prior approval requirements. *Id.*;

- Prescription drug plans have erected more barriers to receive addiction treatment services than for receiving opioids themselves. *Id.*;

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

- Patient have been forced to switch to long-acting morphine when their insurer stopped covering lower risk options.  *Id.*;

- Patients have been required to pay thousands of dollars out of pocket per year for medication assisted addiction treatment because insurers refuse to cover buprenorphine. German Lopez, *She paid nothing for opioid painkillers. Her addiction treatment costs more than $200 a month*, Vox (Jun. 4, 2018) https://www.vox.com/science-and-health/2018/6/4/17388756/opioid-epidemic-health-insurance-buprenorphine; and

- Finally, "non-medicinal treatments for the management for pain, such as massage, acupuncture, chiropractics, etc. are not covered and the patient needs to foot the entire cost, for a condition that may last years and years." Linda Girgis, MedCity News (Jan. 24, 2018) https://medcitynews.com/2018/01/calling-responsible-parties-task-role-opioid-epidemic/; *see also* James Heyward, et al., Coverage of Nonpharmacologic Treatments for Low Back Pain Among US Public and Private Insurers, Journal of American Medicine (Oct. 5, 2018), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2705853.

Par reserves the right to reference other examples of government and commercial insurer, payor, and affiliates' policies and practices that acted as alternative cause.

Par further reserves its right to rely on additional intervening, superseding, or alternative causes in dispositive motions or at trial that may be identified from discovery in this action, which is ongoing.

## INTERROGATORY NO. 23:

Do You contend that no prescriber, patient, payor or consumer in or affecting any of the Jurisdictions was influenced by Your marketing of Opioids?  If so, state in detail the basis of that contention, all factual support therefore, the purpose of Your marketing of Opioids, and each and every reason You continued to market Opioids despite such lack of influence.  If You do not so contend, identify those prescribers, patients, payors or consumers in or affecting the Jurisdictions who were influenced by Your marketing.

## RESPONSE TO INTERROGATORY NO. 23:

Par incorporates by reference its General Objections set forth above.  Par objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case insofar as it seeks "all factual support" and concerns any "prescriber,

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

patient, payor or consumer in or affecting any of the Jurisdictions."  Par objects to this interrogatory on the grounds that it is a premature contention interrogatory, as fact discovery is ongoing and/or incomplete.  Par objects that this interrogatory is improper to the extent it seeks to require Par to prepare Plaintiffs' case for Plaintiff.

Par also objects to the extent this interrogatory seeks disclosure of expert discovery inconsistent with the deadlines for such disclosure.  Par will make appropriate disclosures regarding expert witnesses in accordance with applicable rules and orders.  Par objects to the extent this interrogatory seeks information that is protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection. Par further objects to this interrogatory on the grounds that responding to it calls for information that is outside Par's knowledge, possession, custody, or control.  Responding to this interrogatory would require Par to speculate and opine on the thinking of third parties, namely any "prescriber, patient, payor or consumer."

Par objects that this interrogatory is vague and ambiguous with respect to the terms and phrases "prescriber, patient, payor or consumer in or affecting" and "influence," which are subject to multiple different interpretations.  Par also objects that this interrogatory is vague and ambiguous insofar as "Jurisdictions" appears to refer to a defined term but no definition is provided.  Par objects to the extent this term seeks information concerning a geographic scope that is not relevant to the claims in the instant actions or that is inconsistent with the orders and rulings concerning the scope of discovery in these actions.  Plaintiffs have clarified that this interrogatory seeks information about whether Par contends that no prescriber, patient, or payor has been influenced by Par's promotion to prescribe, use, or cover Par's medications.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Subject to and without waiver of the foregoing objections, Par responds as follows:  Par has not organized its generics business to employ a sales force or engage in other forms of marketing for purposes of promoting opioid medications to prescribers or patients directly.

Par further states that it bases its response to this interrogatory on information now known to Par through the exercise of reasonable diligence.  Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows:  As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its opioid medications. Par is not aware of any prescriber, patient, payor or consumer in any of the Jurisdictions that was influenced by Par's marketing of opioids.

**INTERROGATORY NO. 24:**

Identify all Prescribers to whom You ceased Marketing Your Opioids because Your Marketing was not having an impact.

**RESPONSE TO INTERROGATORY NO. 24:**

Par incorporates by reference its General Objections set forth above.  Par objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional insofar as it seeks information about "all Prescribers." Par objects that this interrogatory is vague and ambiguous insofar as it does not define the phrase "having an impact," which is subject to multiple different interpretations.  Par further objects that this interrogatory seeks information outside Par's knowledge, possession, custody, or control. Responding to this interrogatory would require Par to speculate and opine on the thinking of

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

third parties, namely "all Prescribers."  Plaintiffs have clarified that this interrogatory seeks identification of prescribers that Par ceased promotion of opioids to because Par's promotion did not influence those prescribers to prescribe Par's medications.

Subject to and without waiver of the foregoing objections, Par responds as follows: Par has not organized its generics business to employ a sales force or engage in other forms of marketing for purposes of promoting opioid medications to prescribers directly.

Par further states that it bases its response to this interrogatory on information now known to Par through the exercise of reasonable diligence.  Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 24:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows: As a generics business, Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its opioid medications.

**INTERROGATORY NO. 27:**

State with specificity, each year by year, for the Jurisdictions, the State of Ohio, and nationally, respectively, all transactional-level cost and expense data relating to sales (including staffing), promotional, marketing, advertising, and educational expenditures for each of your Opioids.  For each transaction, identify the type of promotional, marketing and advertising expenditure incurred (e.g., journal advertising, conferences, continuing education, speakers, copayment coupons, reprints, etc.).  For each transaction, identify whether it was undertaken for, or allocated to, a specific drug, a combination of drugs, or corporate imaging.  To the extent a transaction was allocated in whole or part to one or more of your Opioids, identify the product(s) and the amounts allocated.

**RESPONSE TO INTERROGATORY NO. 27:**

Par incorporates by reference its General Objections set forth above.  Par objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information

that is neither relevant nor proportional to the needs of the case insofar as this interrogatory seeks "all transaction-level cost and expense data" and multiple categories of information about "each transaction" no matter how tangential such data is to the claims as to Par.  Par objects that this interrogatory is vague and ambiguous insofar as "Jurisdictions" appears to refer to a defined term but no definition is provided.  Par objects to the extent this term seeks information concerning a geographic scope that is not relevant to the claims in the instant actions or that is inconsistent with the orders and rulings concerning the scope of discovery in these actions.  Further, Par objects to the undefined terms "sales," "staffing," "promotional," "marketing," "advertising," "educational," and "corporate imaging" as vague and ambiguous. Plaintiffs have clarified that this interrogatory seeks information about individual expenditures by Par in connection with the sales and marketing of its Schedule II opioid medications provided on a geographically specific basis.

Subject to and without waiver of the foregoing objections, Par responds as follows:  Par will produce transaction-level sales data for sales of its Schedule II opioid medications to the extent the data is reasonably available and stored in electronic format.

Par further states that it bases its response to this interrogatory on information now known to Par through the exercise of reasonable diligence.  Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 27:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows:  Par produced transaction-level sales data for sales of its Schedule II opioid medications at Bates numbers: PAR_OPIOID_MDL_0001596805;

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0001596813 – 0001596819;PAR_OPIOID_MDL_0001596806 –

0001596812; PAR_OPIOID_MDL_0001596821 – 0001596826 ; ENDO_DATA-

OPIOID_MDL-00000025 – 00000041; PAR_OPIOID_MDL_0001596820;

PAR_OPIOID_MDL_0002016639 - 0002016786; PAR_OPIOID_MDL_0001596805 –

0001596826.  Further, As a generics business, Par has not engaged health care professionals

directly or indirectly for purposes of marketing or otherwise promoting its opioid medications.

Budget information for the Sales and Marketing departments at Par can be identified in

documents produced in this litigation, including, for example, documents bearing Bates Nos.

PAR_OPIOID_MDL_0000774231, PAR_OPIOID_MDL_0001316367, and

PAR_OPIOID_MDL_0001580826.

**INTERROGATORY NO. 29:**

Specify the number of and revenue from prescriptions of each of Your Opioids, nationally, in the State of Ohio, and in the Jurisdictions, in each year.  Include in your response how many of those prescriptions and what proportion of that revenue was for medically necessary or appropriate prescriptions.

**RESPONSE TO INTERROGATORY NO. 29:**

Par incorporates by reference its General Objections set forth above.  Par objects to this

interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information

that is neither relevant nor proportional to the needs of the case insofar as it seeks information

about "each of Your Opioids, nationally, in the State of Ohio, and in the Jurisdictions."  Par objects

that this interrogatory is vague and ambiguous insofar as "Jurisdictions" appears to refer to a

defined term but no definition is provided.  Par objects to the extent this term and this

interrogatory seeks information concerning a geographic scope that is not relevant to the claims

in the instant actions or that is inconsistent with the orders and rulings concerning the scope of

discovery in these actions.  Par further objects that the terms "number of," "revenue," and

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

"medically necessary or appropriate" are vague and ambiguous as used in this interrogatory because those terms are not defined and are subject to multiple different interpretations.  Par objects to the extent this interrogatory seeks information outside Par's knowledge, possession, custody or control.

Par also objects to this interrogatory to the extent it includes a premature contention request when discovery is ongoing and/or incomplete.  Par also objects that this interrogatory is improper to the extent it purports to require Par to prepare Plaintiffs' case for Plaintiff.

Subject to and without waiver of the foregoing objections, Par responds as follows: Par does not receive or maintain in the ordinary course of business figures of the "revenue from prescriptions" written in "the State of Ohio" or the "Jurisdictions" specifically.  Par will produce transaction-level sales data for sales of its Schedule II opioid medications to the extent the data is reasonably available and stored in electronic format. Par also refers Plaintiffs to its publicly available securities filings for further information concerning historical revenues for Par medications.  Par further states that it bases its response to this interrogatory on information now known to Par through the exercise of reasonable diligence.  Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 29:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows: Par does not receive or maintain in the ordinary course of business figures of the "revenue from prescriptions" written in "the State of Ohio" or the "Jurisdictions" specifically.  Par produced transaction-level sales data for sales of its Schedule II opioid medications at Bates numbers: PAR_OPIOID_MDL_0001596805; PAR_OPIOID_MDL_0001596813 –

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

0001596819;PAR_OPIOID_MDL_0001596806 – 0001596812;

PAR_OPIOID_MDL_0001596821 – 0001596826 ; ENDO_DATA-OPIOID_MDL-00000025 –

00000041; PAR_OPIOID_MDL_0001596820; PAR_OPIOID_MDL_0002016639 -

0002016786; PAR_OPIOID_MDL_0001596805 – 0001596826.  Par also refers Plaintiffs to its

publicly available securities filings for further information concerning historical revenues for Par

medications.  Par further refers to and incorporates its supplemental response to Interrogatory 33.

**INTERROGATORY NO. 30:**

Identify all individuals and entities You have interviewed or from whom You have
obtained testimony or from whom You have obtained or attempted to obtain Documents,
Communications, or other information that tends to support, contradict, concern, or relate to the
allegations in the Complaint or Your defenses.  Include in your response a description of the
Documents, Communication, or information obtained from such individuals or entities.

**RESPONSE TO INTERROGATORY NO. 30:**

Par incorporates by reference its General Objections set forth above.  Par objects to this

interrogatory on the basis that it is overly broad, unduly burdensome, and seeks information that

is neither relevant nor proportional to the needs of the case insofar as it seeks identification of

"all individuals and entities" from whom any information has been "obtained" or from whom Par

has "attempted to obtain" any information that "tends to support, contradict, concern, or relate"

to any allegations in Plaintiffs' complaints, each of which contains in excess of 1,000

paragraphs, or any defenses.  Par objects to this interrogatory on the basis that the phrase

"individuals and entities you have interviewed," "obtained testimony," and  "obtained or

attempted to obtain" are vague and ambiguous.  Further, Par objects to this interrogatory as

vague, ambiguous, and seeking information not within Par's knowledge, possession, custody, or

control to the extent it would require Par to speculate as to the facts Plaintiff or others might

consider to "support, contradict, concern, or relate to" the allegations in the operative complaints

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

or Par's defenses. Par objects to the extent this interrogatory purports to call for information protected from disclosure by the attorney-client privileged, the attorney work product doctrine, or any other applicable privilege or protection. Plaintiffs have agreed to limit this interrogatory to identification by Par of any persons from whom Par has obtained sworn statements in connection with this litigation.

Subject to and without waiver of the foregoing objections, Par responds as follows: Except to the extent deposition testimony taken in this litigation or other discovery responses served in this litigation constitute "sworn statements" as that term is used by Plaintiffs, Par has not obtained any sworn statements in connection with this litigation. Par further states that it bases its response to this interrogatory on information now known to Par through the exercise of reasonable diligence. Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 30:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds that Par also identifies all custodians, deponents, and third party subpoena recipients in connection with this litigation as sources from whom Par may have obtained or attempted to obtain information concerning the allegations in this matter.

**INTERROGATORY NO. 31:**

Identify all vendors (including but not limited to public relations firms, lobbyists, analysts who reviewed or analyzed data regarding potential abuse or diversion of Opioids) You have retained for purposes relating to Opioids; and identify for each vendor, the purpose for which each vendor was retained, each project or undertaking on which each vendor worked; the remuneration provided; and the reasons for termination of their retention, if applicable.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**RESPONSE TO INTERROGATORY NO. 31:**

Par incorporates by reference its General Objections set forth above.  Par objects to this interrogatory on the basis that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case insofar as it seeks information about "all vendors" Par ever "retained for purposes relating to Opioids" and information about "each project or undertaking on which [they] worked" and "the reasons for termination of their retention" no matter how tangential the connection to the allegations as to Par.  Par objects to this interrogatory on the basis that the phrase "vendors . . . retained for purposes relating to Opioids" is vague and ambiguous and would include vendors that have no conceivable relevance to Plaintiffs' claims against Par.  Par objects to the extent this interrogatory seeks information concerning a geographic scope that is not relevant to the claims in the instant actions and that is inconsistent with the orders and rulings concerning the scope of discovery in these actions. Plaintiffs have agreed to limit this interrogatory to vendors retained in connection with advisory committees, branded and unbranded marketing, sales, recruiting of KOLs, public relations, life-cycle management, lobbying, customer relations, supply chain, and suspicious order monitoring. Plaintiffs further seek vendors as to "other relevant issues."  Par objects that the phrase "other relevant issues" is vague and ambiguous, overly broad, and unduly burdensome.

Subject to and without waiver of the foregoing objections, Par responds as follows: Because Par has not organized its generics business to employ a sales force or engage in other forms of marketing for purposes of promoting opioid medications to prescribers directly, this response is limited to vendors associated with suspicious order monitoring.  With that clarification, and subject to and without waiver of the foregoing objections, Par responds that Par has retained the follow vendors associated with suspicious order monitoring:

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

| Vendor | Purpose |
|---|---|
| Buzzeo/Cegedim | Suspicious order monitoring |
| Pharma Compliance Group | Customer due diligence audit services |
| UPS Supply Chain Solutions | Shipment and distribution services; suspicious order monitoring |

Par further states that it bases its response to this interrogatory on information now known to Par through the exercise of reasonable diligence.  Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 31:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows: Because Par has not engaged health care professionals directly or indirectly for purposes of marketing or otherwise promoting its opioid medications, this response is limited to vendors associated with suspicious order monitoring.  With that clarification, and subject to and without waiver of the foregoing objections, Par responds that Par has retained the follow vendors associated with suspicious order monitoring:

| Vendor | Purpose |
|---|---|
| Buzzeo/Cegedim | Suspicious order monitoring |
| Pharma Compliance Group | Customer due diligence audit services |
| UPS Supply Chain Solutions | Shipment and distribution services; suspicious order monitoring |

Par began a contract with UPS as its third-party logistics provider in June 2018.  Par engaged Pharma Compliance Group (PCG) between 7/1/2013 and 6/30/2014. Par engaged Buzzeo/Cegedim from 2013 until 2018.

The following are documents related to Par's relationship with PCG:

PAR_OPIOID_MDL_0001614281

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0001649835
PAR_OPIOID_MDL_0002111676

The following are Bates numbers for due diligence reports performed by PCG:

PAR_OPIOID_MDL_0000019292
PAR_OPIOID_MDL_0000095098
PAR_OPIOID_MDL_0001249059
PAR_OPIOID_MDL_0000093945
PAR_OPIOID_MDL_0000094890
PAR_OPIOID_MDL_0000019315
PAR_OPIOID_MDL_0000019369
PAR_OPIOID_MDL_0000019397

The following are documents related to Par's relationship with BuzzeoPDMA/Cegedim:

PAR_OPIOID_MDL_0002111696
PAR_OPIOID_MDL_0002111708
PAR_OPIOID_MDL_0001900208
PAR_OPIOID_MDL_0001900214
PAR_OPIOID_MDL_0001645718
PAR_OPIOID_MDL_0002016128
PAR_OPIOID_MDL_0000413787
PAR_OPIOID_MDL_0002111670
PAR_OPIOID_MDL_0002111637
PAR_OPIOID_MDL_0002111715
PAR_OPIOID_MDL_0002111716

The following are documents related to Par's relationship with UPS Supply Chain Solutions:

ENDO-OPIOID_MDL-06251048

**INTERROGATORY NO. 32:**

Identify each Order identified by You (by algorithm or otherwise) as an Order that was of interest, peculiar, actually or potentially a Suspicious Order, or otherwise warranting additional review or investigation to determine whether the Order was a Suspicious Order ("Identified Orders"), and for each such Identified Order: (1) state the reason the Order was so identified (e.g., Order of excessive size, unusual frequency, etc), (2) state whether You reported the Order to the DEA; (3) describe any investigation, review, or due diligence performed by or on behalf of You concerning the Identified Order after it was identified, including whether the Identified Order was a Suspicious Order or whether the Direct or Downstream Customer or other customer that placed the Order was engaged in or facilitating diversion, abuse, or misuse of any Opioid Product; (4) state whether the Identified Order was filled as placed, modified and filled, rejected,

or cancelled and the reason(s) contemporaneously cited or provided for any such action; and (5) identify by bates-stamp all documents and communications regarding the Order.

**RESPONSE TO INTERROGATORY NO. 32:**

Par incorporates its Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above.  Par objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case to the extent it seeks identification of and detailed information about "each Order," including identification of "all documents and communications regarding [each] Order," no matter how tangential the connection to the allegations as to Par and without any geographic limitation.  Par objects to the extent this interrogatory seeks information about products or geographies outside the scope set by the Court's rulings on discovery in the Track One cases.  Par further objects to this interrogatory on the basis that the undefined terms and phrases "of interest," "peculiar," "actually or potentially,"  "otherwise warranting additional review or investigation," "engaged in or facilitating," and "other customer" are overly broad and vague and ambiguous as used in this interrogatory because they are subject to multiple different interpretations.  Par objects to the extent this interrogatory seeks information that is outside Par's knowledge, possession, custody, or control, including by seeking information about whether third parties were "engaged in or facilitating diversion, abuse, or misuse of any Opioid."  Par also objects to the extent this interrogatory seeks information that is already in the possession of Plaintiffs, or is equally obtainable from third parties or from some source other than Par.  Par objects to the extent this interrogatory seeks information that is protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection.  Par objects that this interrogatory contains discrete questions, each of which

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

should be counted separately against the 35 interrogatory limitation contained in CMO 1 (Dkt. 232).

Subject to and without waiver of the foregoing objections, Par responds as follows:

Par directs Plaintiffs to Par's response to Interrogatory No. 13 describing Par's suspicious order monitoring program, which Par incorporates herein by reference.  Pursuant to Fed. R. Civ. P. 33(d), Par further directs Plaintiffs to documents with beginning Bates numbers:

PAR_OPIOID_MDL_0001429890, PAR_OPIOID_MDL_0001429891,

PAR_OPIOID_MDL_0001429892, PAR_OPIOID_MDL_0001429893,

PAR_OPIOID_MDL_0001429894, and PAR_OPIOID_MDL_0001429895, which provide examples based on available information from Par's Buzzeo system of orders held pending internal review and the status of those orders.  Par also directs Plaintiffs to

PAR_OPIOID_MDL_0000025650, PAR_OPIOID_MDL_0000025652,

PAR_OPIOID_MDL_0000232473, PAR_OPIOID_MDL_0001248632,

PAR_OPIOID_MDL_0000001805 for examples of Par's reports to the DEA of suspicious orders.  Par further directs Plaintiffs to Par's productions, including productions from the custodial files of ██████████████████████████████████████

████████████████████████████████████████ for information concerning identification and review of orders that required additional scrutiny and/or reporting of suspicious orders.

Par further states that it bases its response to Interrogatory No. 32 on the information now known to Par through the exercise of reasonable diligence.  Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce additional non-privileged, responsive documents pursuant to Rule 33(d).

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 32:**

Subject to and without waiver of all of Par's previously stated objections, Par further

responds as follows:

Par further states that between 2013 and 2018, Par reported a number of suspicious orders

of opioid products to the Department of Drug Enforcement and/or the Department of Justice.  A

chart containing those orders is set forth below.

| Order Number | Drug Name | Date | Customer | Reason Rejected | BATES Numbers of Related Documents |
|---|---|---|---|---|---|
| 614389 | Hydrocodone | 10/12/2016 | █ | Rejected as suspicious order | PAR_OPIOID_MDL_0001596365 |
| | Hydrocodone | 11/18/2016 | █ | Purchasing from four different wholesalers | PAR_OPIOID_MDL_0000001234 |
| 627255 | Oxycodone | 1/10/2017 | █ | Rejected as suspicious order | PAR_OPIOID_MDL_0000001591, PAR_OPIOID_MDL_0000025652 |
| | Hydrocodone | 2/17/2015 | █ | Discontinue sales based on chargeback data | PAR_OPIOID_MDL_0001630364 |
| 18684 | Hydrocodone | 3/25/2015 | █ | Exceeding monthly boundaries | PAR_OPIOID_MDL_0000001805 |
| | Hydrocodone | 8/23/2013 | █ | Suspicious individual ordering | PAR_OPIOID_MDL_0000046768, PAR_OPIOID_MDL_0000046770 |
| 637846 | Oxycodone | 4/4/2017 | █ | Suspicious order rejected | PAR_OPIOID_MDL_0000232473 |
| | Hydrocodone | 1/16/2015 | █ | Suspicious order pattern from chargeback data | PAR_OPIOID_MDL_0000615600 |

**CONFIDENTIAL - SUBJECT T███████IVE ORDER**

In addition, beginning in November 2013, Par utilized a cloud-based, third party algorithm tool referred to as Buzzeo, which evaluated and identified customer orders with unusual size, frequency, or pattern and flagged orders for further review.  The data for all orders flagged by the Buzzeo system has been produced at PAR_OPIOID_MDL_0001429890 through PAR_OPIOID_MDL_0001429895.  Those orders were reviewed for potential reporting to the DEA.  In addition, the chart below identifies orders of opioid products that were not shipped as a result of the investigation triggered by the Buzzeo system.

| Order No. | Order Date | NDC | Drug Name | Reason Held | Bates Numbers of Related Documents |
|---|---|---|---|---|---|
| 4917609 | 11/05/13 | 603388721 | Hydrocodone Bitartrate And Acetaminophen | Excessive quantity | |
| 4923558 | 12/26/13 | 603388728 | Hydrocodone Bitartrate And Acetaminophen | Order cancelled because of customer's failure to fill out sufficient information | PAR_OPIOID_MDL_0000020370 PAR_OPIOID_MDL_0000020514 |
| 4992676 | 06/02/15 | 60951060270 | Endocet | Incorrect DEA number | |
| 614389 | 10/12/16 | 603388721 | Hydrocodone Bitartrate And Acetaminophen | Excessive quantity | PAR_OPIOID_MDL_0001248741 PAR_OPIOID_MDL_0000001231 PAR_OPIOID_MDL_0001250156 PAR_OPIOID_MDL_0000025650 |
| 615185 | 10/19/16 | 603388732 | Hydrocodone Bitartrate And Acetaminophen | Incorrect DEA number | |
| 603476 | 08/05/16 | 603388732 | Hydrocodone Bitartrate And Acetaminophen | Order made on the wrong account.  The order was ultimately rejected and resubmitted under correct account number. | PAR_OPIOID_MDL_0000001058 PAR_OPIOID_MDL_0000001063 |
| 615185 | 10/19/16 | 603389032 | Hydrocodone Bitartrate And Acetaminophen | Incorrect DEA number | |
| 654730 | 07/12/17 | 603388721 | Hydrocodone Bitartrate and Ibuprofen | A duplicate order made on the same day for the same quantities.  Order was made in error and customer agreed to cancel the order. | PAR_OPIOID_MDL_0000205617 PAR_OPIOID_MDL_0000592968 PAR_OPIOID_MDL_0000592981 PAR_OPIOID_MDL_0000593053 |
| 637846 | 03/22/17 | 603499221 | Oxycodone Hydrochloride | Excessive quantity. | PAR_OPIOID_MDL_0000232473 PAR_OPIOID_MDL_0001248632 PAR_OPIOID_MDL_0000217205 |
| 665913 | 10/05/17 | 42023017905 | Buprenorphine Hydrochloride | Cancelled by customer | |
| 665843 | 10/04/17 | 42023017905 | Buprenorphine Hydrochloride | Cancelled by customer | |
| 627272 | 01/10/17 | 42023017905 | Buprenorphine Hydrochloride | Customer failed to provide sufficient SOM data with order. | PAR_OPIOID_MDL_0001639834 PAR_OPIOID_MDL_0001639835 PAR_OPIOID_MDL_0001639861 PAR_OPIOID_MDL_0001639862 PAR_OPIOID_MDL_0001639863 PAR_OPIOID_MDL_0001639864 PAR_OPIOD_MDL_0001639885 PAR_OPIOID_MDL_0000015757 |
| 675121 | 12/15/17 | 49884082111 | Tramadol Hydrochloride | Customer lost DEA number and product discontinued | |
| 699700 | 07/11/18 | 603389132 | Hydrocodone Bitartrate And Acetaminophen | Order was placed incorrectly to the wrong distribution center. | |
| 699883 | 07/16/18 | 42023017905 | Buprenorphine Hydrochloride | Customer did not have a SOM program | |
| 695276 | 06/04/18 | 42023017905 | Buprenorphine | Customer asked to | |

| | | | Hydrochloride | cancel and re-submit | |
|---|---|---|---|---|---|
| 694691 | 05/30/18 | 42023017905 | Buprenorphine Hydrochloride | Customer asked to cancel and re-order | |
| 691895 | 05/04/18 | 42023017905 | Buprenorphine Hydrochloride | Order was placed by mistake. Customer cancelled order. | |

Prior to the use of the Buzzeo system, Par's suspicious order monitoring program flagged orders for further investigation and/or potential reporting to DEA based on criteria including excessive quantity.  Orders flagged by Par's systems have been produced at the following Bates numbers:

PAR_OPIOID_MDL_0000833017   PAR_OPIOID_MDL_0000914044
PAR_OPIOID_MDL_0000833018   PAR_OPIOID_MDL_0000914051
PAR_OPIOID_MDL_0000833020   PAR_OPIOID_MDL_0000914052
PAR_OPIOID_MDL_0000833022   PAR_OPIOID_MDL_0000914053
PAR_OPIOID_MDL_0000833461   PAR_OPIOID_MDL_0000914055
PAR_OPIOID_MDL_0000834283   PAR_OPIOID_MDL_0000914071
PAR_OPIOID_MDL_0000834423   PAR_OPIOID_MDL_0000914959
PAR_OPIOID_MDL_0001365529   PAR_OPIOID_MDL_0000914965
PAR_OPIOID_MDL_0000834446   PAR_OPIOID_MDL_0000914972
PAR_OPIOID_MDL_0000834450   PAR_OPIOID_MDL_0000914980
PAR_OPIOID_MDL_0000834451   PAR_OPIOID_MDL_0000920724
PAR_OPIOID_MDL_0000834453   PAR_OPIOID_MDL_0000921620
PAR_OPIOID_MDL_0000834455   PAR_OPIOID_MDL_0000924924
PAR_OPIOID_MDL_0000834854   PAR_OPIOID_MDL_0000932201
PAR_OPIOID_MDL_0000839731   PAR_OPIOID_MDL_0000934638
PAR_OPIOID_MDL_0000839839   PAR_OPIOID_MDL_0000364071
PAR_OPIOID_MDL_0000841856   PAR_OPIOID_MDL_0000068124
PAR_OPIOID_MDL_0000841863   PAR_OPIOID_MDL_0000623315
PAR_OPIOID_MDL_0000841870   PAR_OPIOID_MDL_0000068397
PAR_OPIOID_MDL_0000841884   PAR_OPIOID_MDL_0000068399
PAR_OPIOID_MDL_0000842003   PAR_OPIOID_MDL_0000636591
PAR_OPIOID_MDL_0000847213   PAR_OPIOID_MDL_0001529947
PAR_OPIOID_MDL_0000847228   PAR_OPIOID_MDL_0000072516
PAR_OPIOID_MDL_0000847257   PAR_OPIOID_MDL_0000636593
PAR_OPIOID_MDL_0000847293   PAR_OPIOID_MDL_0000072518
PAR_OPIOID_MDL_0000892534   PAR_OPIOID_MDL_0000072520
PAR_OPIOID_MDL_0000892536   PAR_OPIOID_MDL_0000072522
PAR_OPIOID_MDL_0000892575   PAR_OPIOID_MDL_0000636595
PAR_OPIOID_MDL_0000892611   PAR_OPIOID_MDL_0000072524
PAR_OPIOID_MDL_0000892898   PAR_OPIOID_MDL_0000072526
PAR_OPIOID_MDL_0000892932   PAR_OPIOID_MDL_0000636597
PAR_OPIOID_MDL_0000892940   PAR_OPIOID_MDL_0000072528

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0000636599
PAR_OPIOID_MDL_0000636601
PAR_OPIOID_MDL_0000072530
PAR_OPIOID_MDL_0000072532
PAR_OPIOID_MDL_0000072534
PAR_OPIOID_MDL_0000072536
PAR_OPIOID_MDL_0000072538
PAR_OPIOID_MDL_0000636603
PAR_OPIOID_MDL_0000231917
PAR_OPIOID_MDL_0000231918
PAR_OPIOID_MDL_0000231920
PAR_OPIOID_MDL_0000231922
PAR_OPIOID_MDL_0000231924
PAR_OPIOID_MDL_0000231930
PAR_OPIOID_MDL_0000231932
PAR_OPIOID_MDL_0000231938
PAR_OPIOID_MDL_0000231987
PAR_OPIOID_MDL_0000232003
PAR_OPIOID_MDL_0000232005
PAR_OPIOID_MDL_0000232007
PAR_OPIOID_MDL_0000232013
PAR_OPIOID_MDL_0000232019
PAR_OPIOID_MDL_0000232025
PAR_OPIOID_MDL_0000232027
PAR_OPIOID_MDL_0000232029
PAR_OPIOID_MDL_0000232043
PAR_OPIOID_MDL_0000232049
PAR_OPIOID_MDL_0000232053
PAR_OPIOID_MDL_0000764461
PAR_OPIOID_MDL_0000764529
PAR_OPIOID_MDL_0000765112
PAR_OPIOID_MDL_0000765146
PAR_OPIOID_MDL_0000765591
PAR_OPIOID_MDL_0000765695
PAR_OPIOID_MDL_0000765823
PAR_OPIOID_MDL_0000766729
PAR_OPIOID_MDL_0000766737
PAR_OPIOID_MDL_0000767142
PAR_OPIOID_MDL_0000767179
PAR_OPIOID_MDL_0000767241
PAR_OPIOID_MDL_0000767249
PAR_OPIOID_MDL_0000767374
PAR_OPIOID_MDL_0000767381
PAR_OPIOID_MDL_0001331760
PAR_OPIOID_MDL_0000767665
PAR_OPIOID_MDL_0000767719

PAR_OPIOID_MDL_0000767933
PAR_OPIOID_MDL_0000768341
PAR_OPIOID_MDL_0000768344
PAR_OPIOID_MDL_0001332165
PAR_OPIOID_MDL_0000768633
PAR_OPIOID_MDL_0000768657
PAR_OPIOID_MDL_0000768681
PAR_OPIOID_MDL_0000768899
PAR_OPIOID_MDL_0000768946
PAR_OPIOID_MDL_0000769130
PAR_OPIOID_MDL_0000769218
PAR_OPIOID_MDL_0000769245
PAR_OPIOID_MDL_0000769355
PAR_OPIOID_MDL_0000769411
PAR_OPIOID_MDL_0000769414
PAR_OPIOID_MDL_0000769745
PAR_OPIOID_MDL_0000770518
PAR_OPIOID_MDL_0000770840
PAR_OPIOID_MDL_0000771287
PAR_OPIOID_MDL_0000771302
PAR_OPIOID_MDL_0000771433
PAR_OPIOID_MDL_0000772106
PAR_OPIOID_MDL_0000772231
PAR_OPIOID_MDL_0000772242
PAR_OPIOID_MDL_0000772266
PAR_OPIOID_MDL_0000772281
PAR_OPIOID_MDL_0000772491
PAR_OPIOID_MDL_0000772502
PAR_OPIOID_MDL_0000772564
PAR_OPIOID_MDL_0000772695
PAR_OPIOID_MDL_0000772912
PAR_OPIOID_MDL_0000772998
PAR_OPIOID_MDL_0000773259
PAR_OPIOID_MDL_0000773269
PAR_OPIOID_MDL_0000773975
PAR_OPIOID_MDL_0000773985
PAR_OPIOID_MDL_0000774366
PAR_OPIOID_MDL_0000774475
PAR_OPIOID_MDL_0000774503
PAR_OPIOID_MDL_0000774772
PAR_OPIOID_MDL_0000774994
PAR_OPIOID_MDL_0000776741
PAR_OPIOID_MDL_0000776823
PAR_OPIOID_MDL_0000776828
PAR_OPIOID_MDL_0000777068
PAR_OPIOID_MDL_0000777974

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0000778175
PAR_OPIOID_MDL_0000778276
PAR_OPIOID_MDL_0000778997
PAR_OPIOID_MDL_0000779512
PAR_OPIOID_MDL_0000779515
PAR_OPIOID_MDL_0000779701
PAR_OPIOID_MDL_0000779703
PAR_OPIOID_MDL_0000779821
PAR_OPIOID_MDL_0000779847
PAR_OPIOID_MDL_0000780052
PAR_OPIOID_MDL_0000780055
PAR_OPIOID_MDL_0001337742
PAR_OPIOID_MDL_0000780795
PAR_OPIOID_MDL_0000780967
PAR_OPIOID_MDL_0000892485
PAR_OPIOID_MDL_0000892493
PAR_OPIOID_MDL_0000892494
PAR_OPIOID_MDL_0000892528
PAR_OPIOID_MDL_0000892534
PAR_OPIOID_MDL_0000892932
PAR_OPIOID_MDL_0000914044
PAR_OPIOID_MDL_0000919213
PAR_OPIOID_MDL_0000919627
PAR_OPIOID_MDL_0000919755
PAR_OPIOID_MDL_0000920801
PAR_OPIOID_MDL_0000922813
PAR_OPIOID_MDL_0000923128
PAR_OPIOID_MDL_0000923396
PAR_OPIOID_MDL_0000923696
PAR_OPIOID_MDL_0000924134
PAR_OPIOID_MDL_0000930012
PAR_OPIOID_MDL_0000930187
PAR_OPIOID_MDL_0000930389
PAR_OPIOID_MDL_0000931031
PAR_OPIOID_MDL_0000931037
PAR_OPIOID_MDL_0000931407
PAR_OPIOID_MDL_0000931512
PAR_OPIOID_MDL_0001382223
PAR_OPIOID_MDL_0000932201
PAR_OPIOID_MDL_0000933004
PAR_OPIOID_MDL_0000933542
PAR_OPIOID_MDL_0000933751
PAR_OPIOID_MDL_0000934131
PAR_OPIOID_MDL_0000934638
PAR_OPIOID_MDL_0000830046
PAR_OPIOID_MDL_0000830049

PAR_OPIOID_MDL_0000830054
PAR_OPIOID_MDL_0000830059
PAR_OPIOID_MDL_0000830064
PAR_OPIOID_MDL_0000830612
PAR_OPIOID_MDL_0000830614
PAR_OPIOID_MDL_0000830618
PAR_OPIOID_MDL_0000830621
PAR_OPIOID_MDL_0000830623
PAR_OPIOID_MDL_0000830626
PAR_OPIOID_MDL_0000830804
PAR_OPIOID_MDL_0000830808
PAR_OPIOID_MDL_0000830808
PAR_OPIOID_MDL_0000830808
PAR_OPIOID_MDL_0000830808
PAR_OPIOID_MDL_0000830808
PAR_OPIOID_MDL_0000830808
PAR_OPIOID_MDL_0000830808
PAR_OPIOID_MDL_0001365128
PAR_OPIOID_MDL_0000830938
PAR_OPIOID_MDL_0000830944
PAR_OPIOID_MDL_0000830950
PAR_OPIOID_MDL_0000830957
PAR_OPIOID_MDL_0000830964
PAR_OPIOID_MDL_0000830971
PAR_OPIOID_MDL_0000830991
PAR_OPIOID_MDL_0000830998
PAR_OPIOID_MDL_0000830999
PAR_OPIOID_MDL_0000831006
PAR_OPIOID_MDL_0000831029
PAR_OPIOID_MDL_0000831041
PAR_OPIOID_MDL_0000831081
PAR_OPIOID_MDL_0000831083
PAR_OPIOID_MDL_0000831133
PAR_OPIOID_MDL_0000831136
PAR_OPIOID_MDL_0000831142
PAR_OPIOID_MDL_0000831170
PAR_OPIOID_MDL_0000831179
PAR_OPIOID_MDL_0000831179
PAR_OPIOID_MDL_0000831184
PAR_OPIOID_MDL_0000831207
PAR_OPIOID_MDL_0000831209
PAR_OPIOID_MDL_0000831484
PAR_OPIOID_MDL_0000831487
PAR_OPIOID_MDL_0000831491
PAR_OPIOID_MDL_0001365205
PAR_OPIOID_MDL_0000831492

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0000831494
PAR_OPIOID_MDL_0000831497
PAR_OPIOID_MDL_0000831500
PAR_OPIOID_MDL_0000831503
PAR_OPIOID_MDL_0000831597
PAR_OPIOID_MDL_0000831789
PAR_OPIOID_MDL_0000831790
PAR_OPIOID_MDL_0000831792
PAR_OPIOID_MDL_0000831796
PAR_OPIOID_MDL_0000831882
PAR_OPIOID_MDL_0000833017
PAR_OPIOID_MDL_0000833018
PAR_OPIOID_MDL_0000833020
PAR_OPIOID_MDL_0000833022
PAR_OPIOID_MDL_0000833461
PAR_OPIOID_MDL_0000834283
PAR_OPIOID_MDL_0000834423
PAR_OPIOID_MDL_0001365529
PAR_OPIOID_MDL_0000834446
PAR_OPIOID_MDL_0000834450
PAR_OPIOID_MDL_0000834451
PAR_OPIOID_MDL_0000834453
PAR_OPIOID_MDL_0000834455
PAR_OPIOID_MDL_0000834540
PAR_OPIOID_MDL_0000834545
PAR_OPIOID_MDL_0000834569
PAR_OPIOID_MDL_0000835363
PAR_OPIOID_MDL_0000835366
PAR_OPIOID_MDL_0000835380
PAR_OPIOID_MDL_0000835383
PAR_OPIOID_MDL_0000835418
PAR_OPIOID_MDL_0000835421
PAR_OPIOID_MDL_0000837092
PAR_OPIOID_MDL_0000839731
PAR_OPIOID_MDL_0000840774
PAR_OPIOID_MDL_0000840776
PAR_OPIOID_MDL_0000841856
PAR_OPIOID_MDL_0000841863
PAR_OPIOID_MDL_0000841870
PAR_OPIOID_MDL_0000841884
PAR_OPIOID_MDL_0000842003
PAR_OPIOID_MDL_0000847213
PAR_OPIOID_MDL_0000847228
PAR_OPIOID_MDL_0000847257
PAR_OPIOID_MDL_0000847293
PAR_OPIOID_MDL_0000864130

PAR_OPIOID_MDL_0000864131
PAR_OPIOID_MDL_0000865282
PAR_OPIOID_MDL_0000869399
PAR_OPIOID_MDL_0000358436
PAR_OPIOID_MDL_0000126144
PAR_OPIOID_MDL_0000825045
PAR_OPIOID_MDL_0000126231
PAR_OPIOID_MDL_0000825231
PAR_OPIOID_MDL_0000825256
PAR_OPIOID_MDL_0000825336
PAR_OPIOID_MDL_0000825361
PAR_OPIOID_MDL_0000825680
PAR_OPIOID_MDL_0000825913
PAR_OPIOID_MDL_0000825925
PAR_OPIOID_MDL_0000828450
PAR_OPIOID_MDL_0000828543
PAR_OPIOID_MDL_0000828678
PAR_OPIOID_MDL_0000828798
PAR_OPIOID_MDL_0000793229
PAR_OPIOID_MDL_0000793231
PAR_OPIOID_MDL_0000793233
PAR_OPIOID_MDL_0000793242
PAR_OPIOID_MDL_0000793251
PAR_OPIOID_MDL_0000793253
PAR_OPIOID_MDL_0000793266
PAR_OPIOID_MDL_0000793268
PAR_OPIOID_MDL_0000793277
PAR_OPIOID_MDL_0000793279
PAR_OPIOID_MDL_0000793281
PAR_OPIOID_MDL_0000793283
PAR_OPIOID_MDL_0000793285
PAR_OPIOID_MDL_0000793287
PAR_OPIOID_MDL_0000793289
PAR_OPIOID_MDL_0000793291
PAR_OPIOID_MDL_0000793295
PAR_OPIOID_MDL_0001342875
PAR_OPIOID_MDL_0000793299
PAR_OPIOID_MDL_0000793301
PAR_OPIOID_MDL_0000793313
PAR_OPIOID_MDL_0000793366
PAR_OPIOID_MDL_0000793381
PAR_OPIOID_MDL_0000793391
PAR_OPIOID_MDL_0000793434
PAR_OPIOID_MDL_0000793485
PAR_OPIOID_MDL_0000793487
PAR_OPIOID_MDL_0000793489

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0000793491
PAR_OPIOID_MDL_0000793493
PAR_OPIOID_MDL_0000793495
PAR_OPIOID_MDL_0000793497
PAR_OPIOID_MDL_0000793499
PAR_OPIOID_MDL_0000793501
PAR_OPIOID_MDL_0000793503
PAR_OPIOID_MDL_0000793505
PAR_OPIOID_MDL_0000793507
PAR_OPIOID_MDL_0000793509
PAR_OPIOID_MDL_0000793511
PAR_OPIOID_MDL_0000793513
PAR_OPIOID_MDL_0000793515
PAR_OPIOID_MDL_0000793519
PAR_OPIOID_MDL_0000793521
PAR_OPIOID_MDL_0000793523
PAR_OPIOID_MDL_0000793525
PAR_OPIOID_MDL_0000793527
PAR_OPIOID_MDL_0000793529
PAR_OPIOID_MDL_0000793531
PAR_OPIOID_MDL_0000793533
PAR_OPIOID_MDL_0000793535
PAR_OPIOID_MDL_0000793537
PAR_OPIOID_MDL_0000793539
PAR_OPIOID_MDL_0000793541
PAR_OPIOID_MDL_0000793543
PAR_OPIOID_MDL_0000793545
PAR_OPIOID_MDL_0000793547
PAR_OPIOID_MDL_0000793549
PAR_OPIOID_MDL_0000793612
PAR_OPIOID_MDL_0000793645
PAR_OPIOID_MDL_0000793834
PAR_OPIOID_MDL_0000793835
PAR_OPIOID_MDL_0000793871
PAR_OPIOID_MDL_0000794265
PAR_OPIOID_MDL_0000794311
PAR_OPIOID_MDL_0001343770
PAR_OPIOID_MDL_0000794830
PAR_OPIOID_MDL_0001343784
PAR_OPIOID_MDL_0001343786
PAR_OPIOID_MDL_0001343788
PAR_OPIOID_MDL_0001343790
PAR_OPIOID_MDL_0000794832
PAR_OPIOID_MDL_0001135384
PAR_OPIOID_MDL_0000399716
PAR_OPIOID_MDL_0000401782

PAR_OPIOID_MDL_0000401786
PAR_OPIOID_MDL_0001616988
PAR_OPIOID_MDL_0000231924
PAR_OPIOID_MDL_0000231938
PAR_OPIOID_MDL_0000231987
PAR_OPIOID_MDL_0000232003
PAR_OPIOID_MDL_0000232007
PAR_OPIOID_MDL_0000232013
PAR_OPIOID_MDL_0000232025
PAR_OPIOID_MDL_0000232028
PAR_OPIOID_MDL_0000232029
PAR_OPIOID_MDL_0000232042
PAR_OPIOID_MDL_0000232043
PAR_OPIOID_MDL_0000953697
PAR_OPIOID_MDL_0000764460
PAR_OPIOID_MDL_0000764461
PAR_OPIOID_MDL_0000764529
PAR_OPIOID_MDL_0000765111
PAR_OPIOID_MDL_0000765112
PAR_OPIOID_MDL_0000765146
PAR_OPIOID_MDL_0000765591
PAR_OPIOID_MDL_0000765695
PAR_OPIOID_MDL_0000765823
PAR_OPIOID_MDL_0000766729
PAR_OPIOID_MDL_0000766737
PAR_OPIOID_MDL_0000767142
PAR_OPIOID_MDL_0000767179
PAR_OPIOID_MDL_0000767241
PAR_OPIOID_MDL_0000767249
PAR_OPIOID_MDL_0000767374
PAR_OPIOID_MDL_0000767381
PAR_OPIOID_MDL_0001331760
PAR_OPIOID_MDL_0000767664
PAR_OPIOID_MDL_0000767665
PAR_OPIOID_MDL_0000767719
PAR_OPIOID_MDL_0000767932
PAR_OPIOID_MDL_0000767933
PAR_OPIOID_MDL_0000768341
PAR_OPIOID_MDL_0000768344
PAR_OPIOID_MDL_0001332165
PAR_OPIOID_MDL_0000768633
PAR_OPIOID_MDL_0000768657
PAR_OPIOID_MDL_0000768681
PAR_OPIOID_MDL_0000768899
PAR_OPIOID_MDL_0000768946
PAR_OPIOID_MDL_0000769130

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0000769218
PAR_OPIOID_MDL_0000769245
PAR_OPIOID_MDL_0000769355
PAR_OPIOID_MDL_0000769411
PAR_OPIOID_MDL_0000769414
PAR_OPIOID_MDL_0000769745
PAR_OPIOID_MDL_0000770518
PAR_OPIOID_MDL_0000770839
PAR_OPIOID_MDL_0000770840
PAR_OPIOID_MDL_0000771287
PAR_OPIOID_MDL_0000771302
PAR_OPIOID_MDL_0000771433
PAR_OPIOID_MDL_0000772106
PAR_OPIOID_MDL_0000772231
PAR_OPIOID_MDL_0000772242
PAR_OPIOID_MDL_0000772266
PAR_OPIOID_MDL_0000772281
PAR_OPIOID_MDL_0000772491
PAR_OPIOID_MDL_0000772502
PAR_OPIOID_MDL_0000772564
PAR_OPIOID_MDL_0000772695
PAR_OPIOID_MDL_0000772912
PAR_OPIOID_MDL_0000772998
PAR_OPIOID_MDL_0000773975
PAR_OPIOID_MDL_0000773985
PAR_OPIOID_MDL_0000774366
PAR_OPIOID_MDL_0000774772
PAR_OPIOID_MDL_0000774994
PAR_OPIOID_MDL_0000776823
PAR_OPIOID_MDL_0000776828
PAR_OPIOID_MDL_0000777068
PAR_OPIOID_MDL_0000777974
PAR_OPIOID_MDL_0000778175
PAR_OPIOID_MDL_0000778276
PAR_OPIOID_MDL_0000779512
PAR_OPIOID_MDL_0000779701
PAR_OPIOID_MDL_0000779821
PAR_OPIOID_MDL_0000780052
PAR_OPIOID_MDL_0001337742
PAR_OPIOID_MDL_0000780983
PAR_OPIOID_MDL_0000781130
PAR_OPIOID_MDL_0000781131
PAR_OPIOID_MDL_0000781176
PAR_OPIOID_MDL_0000781247
PAR_OPIOID_MDL_0000784103
PAR_OPIOID_MDL_0000785721

PAR_OPIOID_MDL_0000785722
PAR_OPIOID_MDL_0000786074
PAR_OPIOID_MDL_0000786297
PAR_OPIOID_MDL_0001340559
PAR_OPIOID_MDL_0001340561
PAR_OPIOID_MDL_0000786304
PAR_OPIOID_MDL_0000786777
PAR_OPIOID_MDL_0000786780
PAR_OPIOID_MDL_0000786783
PAR_OPIOID_MDL_0000786945
PAR_OPIOID_MDL_0000786948
PAR_OPIOID_MDL_0000786951
PAR_OPIOID_MDL_0000787170
PAR_OPIOID_MDL_0000787179
PAR_OPIOID_MDL_0000787677
PAR_OPIOID_MDL_0000788176
PAR_OPIOID_MDL_0000788183
PAR_OPIOID_MDL_0000788301
PAR_OPIOID_MDL_0000788309
PAR_OPIOID_MDL_0000788387
PAR_OPIOID_MDL_0001341793
PAR_OPIOID_MDL_0001341794
PAR_OPIOID_MDL_0000789782
PAR_OPIOID_MDL_0000789845
PAR_OPIOID_MDL_0000789852
PAR_OPIOID_MDL_0000791538
PAR_OPIOID_MDL_0000781179
PAR_OPIOID_MDL_0000781250
PAR_OPIOID_MDL_0000781949
PAR_OPIOID_MDL_0000781951
PAR_OPIOID_MDL_0000782063
PAR_OPIOID_MDL_0000782065
PAR_OPIOID_MDL_0000782129
PAR_OPIOID_MDL_0000782131
PAR_OPIOID_MDL_0000782346
PAR_OPIOID_MDL_0000782348
PAR_OPIOID_MDL_0000782700
PAR_OPIOID_MDL_0000782702
PAR_OPIOID_MDL_0000782704
PAR_OPIOID_MDL_0000782709
PAR_OPIOID_MDL_0000782711
PAR_OPIOID_MDL_0000782787
PAR_OPIOID_MDL_0000782789
PAR_OPIOID_MDL_0000782791
PAR_OPIOID_MDL_0000782796
PAR_OPIOID_MDL_0000783061

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0000783063
PAR_OPIOID_MDL_0000783065
PAR_OPIOID_MDL_0000783278
PAR_OPIOID_MDL_0000783464
PAR_OPIOID_MDL_0000783466
PAR_OPIOID_MDL_0000783714
PAR_OPIOID_MDL_0000783716
PAR_OPIOID_MDL_0000783718
PAR_OPIOID_MDL_0000783720
PAR_OPIOID_MDL_0000783722
PAR_OPIOID_MDL_0000783724
PAR_OPIOID_MDL_0000783726
PAR_OPIOID_MDL_0000783732
PAR_OPIOID_MDL_0000783932
PAR_OPIOID_MDL_0000783934
PAR_OPIOID_MDL_0000783942
PAR_OPIOID_MDL_0001339215
PAR_OPIOID_MDL_0000783958
PAR_OPIOID_MDL_0000783966
PAR_OPIOID_MDL_0000783977
PAR_OPIOID_MDL_0000783979
PAR_OPIOID_MDL_0000784103
PAR_OPIOID_MDL_0000784106
PAR_OPIOID_MDL_0000784204
PAR_OPIOID_MDL_0000784206
PAR_OPIOID_MDL_0000784441
PAR_OPIOID_MDL_0000784443
PAR_OPIOID_MDL_0000784466
PAR_OPIOID_MDL_0000784494
PAR_OPIOID_MDL_0000784496
PAR_OPIOID_MDL_0000784498
PAR_OPIOID_MDL_0000784500
PAR_OPIOID_MDL_0000784502
PAR_OPIOID_MDL_0000784504
PAR_OPIOID_MDL_0000784509
PAR_OPIOID_MDL_0000784517
PAR_OPIOID_MDL_0001339516
PAR_OPIOID_MDL_0000784528
PAR_OPIOID_MDL_0000784553
PAR_OPIOID_MDL_0000784580
PAR_OPIOID_MDL_0000784582
PAR_OPIOID_MDL_0001339595
PAR_OPIOID_MDL_0000784590
PAR_OPIOID_MDL_0000784857
PAR_OPIOID_MDL_0000784859
PAR_OPIOID_MDL_0000784868

PAR_OPIOID_MDL_0000784870
PAR_OPIOID_MDL_0000784878
PAR_OPIOID_MDL_0000784880
PAR_OPIOID_MDL_0000784882
PAR_OPIOID_MDL_0000784884
PAR_OPIOID_MDL_0000784886
PAR_OPIOID_MDL_0000784905
PAR_OPIOID_MDL_0000784910
PAR_OPIOID_MDL_0000785113
PAR_OPIOID_MDL_0000785115
PAR_OPIOID_MDL_0000785116
PAR_OPIOID_MDL_0000785117
PAR_OPIOID_MDL_0000785118
PAR_OPIOID_MDL_0000785122
PAR_OPIOID_MDL_0000785435
PAR_OPIOID_MDL_0000785437
PAR_OPIOID_MDL_0000785691
PAR_OPIOID_MDL_0000785692
PAR_OPIOID_MDL_0000785694
PAR_OPIOID_MDL_0000785738
PAR_OPIOID_MDL_0000785740
PAR_OPIOID_MDL_0000785742
PAR_OPIOID_MDL_0000785744
PAR_OPIOID_MDL_0000785746
PAR_OPIOID_MDL_0000785748
PAR_OPIOID_MDL_0000785750
PAR_OPIOID_MDL_0000785752
PAR_OPIOID_MDL_0000785754
PAR_OPIOID_MDL_0000785756
PAR_OPIOID_MDL_0000785758
PAR_OPIOID_MDL_0000785760
PAR_OPIOID_MDL_0000785762
PAR_OPIOID_MDL_0000785950
PAR_OPIOID_MDL_0000786022
PAR_OPIOID_MDL_0000786024
PAR_OPIOID_MDL_0000786073
PAR_OPIOID_MDL_0000786074
PAR_OPIOID_MDL_0000786142
PAR_OPIOID_MDL_0000786144
PAR_OPIOID_MDL_0000786164
PAR_OPIOID_MDL_0000786166
PAR_OPIOID_MDL_0000786282
PAR_OPIOID_MDL_0000786283
PAR_OPIOID_MDL_0000786285
PAR_OPIOID_MDL_0000786297
PAR_OPIOID_MDL_0001340559

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0001340561
PAR_OPIOID_MDL_0000786423
PAR_OPIOID_MDL_0000786424
PAR_OPIOID_MDL_0000786777
PAR_OPIOID_MDL_0000786780
PAR_OPIOID_MDL_0000786783
PAR_OPIOID_MDL_0000786945
PAR_OPIOID_MDL_0000786948
PAR_OPIOID_MDL_0000786951
PAR_OPIOID_MDL_0000787170
PAR_OPIOID_MDL_0000787179
PAR_OPIOID_MDL_0000787653
PAR_OPIOID_MDL_0000787657
PAR_OPIOID_MDL_0000787677
PAR_OPIOID_MDL_0000787679
PAR_OPIOID_MDL_0000787752
PAR_OPIOID_MDL_0000787754
PAR_OPIOID_MDL_0000787969
PAR_OPIOID_MDL_0000787974
PAR_OPIOID_MDL_0000787978
PAR_OPIOID_MDL_0000787986
PAR_OPIOID_MDL_0000787992
PAR_OPIOID_MDL_0000788023
PAR_OPIOID_MDL_0000788025
PAR_OPIOID_MDL_0000788027
PAR_OPIOID_MDL_0000788031
PAR_OPIOID_MDL_0000788036
PAR_OPIOID_MDL_0000788041
PAR_OPIOID_MDL_0000788043
PAR_OPIOID_MDL_0000788103
PAR_OPIOID_MDL_0001341301
PAR_OPIOID_MDL_0000788176
PAR_OPIOID_MDL_0000788178
PAR_OPIOID_MDL_0000788183
PAR_OPIOID_MDL_0000788301
PAR_OPIOID_MDL_0000788307
PAR_OPIOID_MDL_0000788309
PAR_OPIOID_MDL_0000788311
PAR_OPIOID_MDL_0000788387
PAR_OPIOID_MDL_0000788389
PAR_OPIOID_MDL_0000788391
PAR_OPIOID_MDL_0000788513
PAR_OPIOID_MDL_0000788781
PAR_OPIOID_MDL_0000788783
PAR_OPIOID_MDL_0000788796
PAR_OPIOID_MDL_0000788798

PAR_OPIOID_MDL_0000788802
PAR_OPIOID_MDL_0000788804
PAR_OPIOID_MDL_0001341793
PAR_OPIOID_MDL_0000789590
PAR_OPIOID_MDL_0000789630
PAR_OPIOID_MDL_0000789782
PAR_OPIOID_MDL_0000789841
PAR_OPIOID_MDL_0000789845
PAR_OPIOID_MDL_0000789847
PAR_OPIOID_MDL_0000789851
PAR_OPIOID_MDL_0000790216
PAR_OPIOID_MDL_0000790218
PAR_OPIOID_MDL_0000790899
PAR_OPIOID_MDL_0000790906
PAR_OPIOID_MDL_0001342025
PAR_OPIOID_MDL_0000790922
PAR_OPIOID_MDL_0000790938
PAR_OPIOID_MDL_0000790940
PAR_OPIOID_MDL_0000790944
PAR_OPIOID_MDL_0000790946
PAR_OPIOID_MDL_0000790953
PAR_OPIOID_MDL_0000790957
PAR_OPIOID_MDL_0000790962
PAR_OPIOID_MDL_0000790972
PAR_OPIOID_MDL_0000790978
PAR_OPIOID_MDL_0000791016
PAR_OPIOID_MDL_0000791216
PAR_OPIOID_MDL_0000791222
PAR_OPIOID_MDL_0000791538
PAR_OPIOID_MDL_0000791547
PAR_OPIOID_MDL_0000791549
PAR_OPIOID_MDL_0000791600
PAR_OPIOID_MDL_0000791602
PAR_OPIOID_MDL_0000791604
PAR_OPIOID_MDL_0000791605
PAR_OPIOID_MDL_0000791607
PAR_OPIOID_MDL_0000791728
PAR_OPIOID_MDL_0000791730
PAR_OPIOID_MDL_0000791767
PAR_OPIOID_MDL_0000791769
PAR_OPIOID_MDL_0000791852
PAR_OPIOID_MDL_0000791905
PAR_OPIOID_MDL_0000792085
PAR_OPIOID_MDL_0000792105
PAR_OPIOID_MDL_0000792245
PAR_OPIOID_MDL_0000792247

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0000792406
PAR_OPIOID_MDL_0000792408
PAR_OPIOID_MDL_0000792551
PAR_OPIOID_MDL_0000792558
PAR_OPIOID_MDL_0000792560
PAR_OPIOID_MDL_0000792564
PAR_OPIOID_MDL_0000792566
PAR_OPIOID_MDL_0000792568
PAR_OPIOID_MDL_0000792569
PAR_OPIOID_MDL_0000792572
PAR_OPIOID_MDL_0000792574
PAR_OPIOID_MDL_0000792576
PAR_OPIOID_MDL_0000792578
PAR_OPIOID_MDL_0000792580
PAR_OPIOID_MDL_0000792582
PAR_OPIOID_MDL_0000792708
PAR_OPIOID_MDL_0000792817
PAR_OPIOID_MDL_0001591965
PAR_OPIOID_MDL_0001591967
PAR_OPIOID_MDL_0000793141
PAR_OPIOID_MDL_0000793150
PAR_OPIOID_MDL_0000793152
PAR_OPIOID_MDL_0000793207
PAR_OPIOID_MDL_0000793209
PAR_OPIOID_MDL_0000621465
PAR_OPIOID_MDL_0000621550
PAR_OPIOID_MDL_0000621562
PAR_OPIOID_MDL_0000067665
PAR_OPIOID_MDL_0000621588
PAR_OPIOID_MDL_0000067687
PAR_OPIOID_MDL_0000621866
PAR_OPIOID_MDL_0000067856
PAR_OPIOID_MDL_0000067890
PAR_OPIOID_MDL_0000067896
PAR_OPIOID_MDL_0000067911
PAR_OPIOID_MDL_0000067913
PAR_OPIOID_MDL_0000621912
PAR_OPIOID_MDL_0000621978
PAR_OPIOID_MDL_0000067930
PAR_OPIOID_MDL_0000621985
PAR_OPIOID_MDL_0000621987
PAR_OPIOID_MDL_0000621989
PAR_OPIOID_MDL_0000622153
PAR_OPIOID_MDL_0000622228
PAR_OPIOID_MDL_0000622292
PAR_OPIOID_MDL_0000067933

PAR_OPIOID_MDL_0000067935
PAR_OPIOID_MDL_0000622347
PAR_OPIOID_MDL_0000622361
PAR_OPIOID_MDL_0000067953
PAR_OPIOID_MDL_0000791547
PAR_OPIOID_MDL_0000791549
PAR_OPIOID_MDL_0000791600
PAR_OPIOID_MDL_0000791602
PAR_OPIOID_MDL_0000791605
PAR_OPIOID_MDL_0000791767
PAR_OPIOID_MDL_0000792085
PAR_OPIOID_MDL_0000792105
PAR_OPIOID_MDL_0000792708
PAR_OPIOID_MDL_0000792817
PAR_OPIOID_MDL_0001591965
PAR_OPIOID_MDL_0001591967
PAR_OPIOID_MDL_0000793141
PAR_OPIOID_MDL_0000793207
PAR_OPIOID_MDL_0000793229
PAR_OPIOID_MDL_0000793231
PAR_OPIOID_MDL_0000793310
PAR_OPIOID_MDL_0000793311
PAR_OPIOID_MDL_0000793312
PAR_OPIOID_MDL_0000793313
PAR_OPIOID_MDL_0000793381
PAR_OPIOID_MDL_0000793645
PAR_OPIOID_MDL_0000793835
PAR_OPIOID_MDL_0000793871
PAR_OPIOID_MDL_0000794311
PAR_OPIOID_MDL_0000063455
PAR_OPIOID_MDL_0000617060
PAR_OPIOID_MDL_0000063469
PAR_OPIOID_MDL_0000063471
PAR_OPIOID_MDL_0000617062
PAR_OPIOID_MDL_0000063473
PAR_OPIOID_MDL_0000063475
PAR_OPIOID_MDL_0000617064
PAR_OPIOID_MDL_0000617083
PAR_OPIOID_MDL_0000063479
PAR_OPIOID_MDL_0000617124
PAR_OPIOID_MDL_0000063481
PAR_OPIOID_MDL_0001527708
PAR_OPIOID_MDL_0000617126
PAR_OPIOID_MDL_0000063505
PAR_OPIOID_MDL_0000063507
PAR_OPIOID_MDL_0000617265

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0000617267
PAR_OPIOID_MDL_0000617269
PAR_OPIOID_MDL_0000063512
PAR_OPIOID_MDL_0000063513
PAR_OPIOID_MDL_0000063517
PAR_OPIOID_MDL_0000063520
PAR_OPIOID_MDL_0000063550
PAR_OPIOID_MDL_0000063634
PAR_OPIOID_MDL_0000063632
PAR_OPIOID_MDL_0000617526
PAR_OPIOID_MDL_0000063656
PAR_OPIOID_MDL_0000617528
PAR_OPIOID_MDL_0000063660
PAR_OPIOID_MDL_0000617564
PAR_OPIOID_MDL_0000063662
PAR_OPIOID_MDL_0000615668
PAR_OPIOID_MDL_0000063386
PAR_OPIOID_MDL_0000063388
PAR_OPIOID_MDL_0000615670
PAR_OPIOID_MDL_0000063390
PAR_OPIOID_MDL_0000615824
PAR_OPIOID_MDL_0000063421
PAR_OPIOID_MDL_0000063423
PAR_OPIOID_MDL_0000063424
PAR_OPIOID_MDL_0000615839
PAR_OPIOID_MDL_0000063427
PAR_OPIOID_MDL_0000063429
PAR_OPIOID_MDL_0000615911
PAR_OPIOID_MDL_0000616055
PAR_OPIOID_MDL_0000063443
PAR_OPIOID_MDL_0000364071
PAR_OPIOID_MDL_0000068124
PAR_OPIOID_MDL_0000623315
PAR_OPIOID_MDL_0000068397
PAR_OPIOID_MDL_0000068399
PAR_OPIOID_MDL_0000636591
PAR_OPIOID_MDL_0001529947
PAR_OPIOID_MDL_0000072516
PAR_OPIOID_MDL_0000636593
PAR_OPIOID_MDL_0000072518
PAR_OPIOID_MDL_0000072520
PAR_OPIOID_MDL_0000072522
PAR_OPIOID_MDL_0000636595
PAR_OPIOID_MDL_0000072524
PAR_OPIOID_MDL_0000072526
PAR_OPIOID_MDL_0000636597

PAR_OPIOID_MDL_0000072528
PAR_OPIOID_MDL_0000636599
PAR_OPIOID_MDL_0000636601
PAR_OPIOID_MDL_0000072530
PAR_OPIOID_MDL_0000072532
PAR_OPIOID_MDL_0000072534
PAR_OPIOID_MDL_0000072536
PAR_OPIOID_MDL_0000072538
PAR_OPIOID_MDL_0000636603
PAR_OPIOID_MDL_0000231917
PAR_OPIOID_MDL_0000231918
PAR_OPIOID_MDL_0000231920
PAR_OPIOID_MDL_0000231922
PAR_OPIOID_MDL_0000231924
PAR_OPIOID_MDL_0000231930
PAR_OPIOID_MDL_0000231932
PAR_OPIOID_MDL_0000231938
PAR_OPIOID_MDL_0000231987
PAR_OPIOID_MDL_0000232003
PAR_OPIOID_MDL_0000232005
PAR_OPIOID_MDL_0000232007
PAR_OPIOID_MDL_0000232013
PAR_OPIOID_MDL_0000232019
PAR_OPIOID_MDL_0000232025
PAR_OPIOID_MDL_0000232027
PAR_OPIOID_MDL_0000232029
PAR_OPIOID_MDL_0000232043
PAR_OPIOID_MDL_0000232049
PAR_OPIOID_MDL_0000232053
PAR_OPIOID_MDL_0000764461
PAR_OPIOID_MDL_0000764529
PAR_OPIOID_MDL_0000765112
PAR_OPIOID_MDL_0000765146
PAR_OPIOID_MDL_0000765591
PAR_OPIOID_MDL_0000765695
PAR_OPIOID_MDL_0000765823
PAR_OPIOID_MDL_0000766729
PAR_OPIOID_MDL_0000766737
PAR_OPIOID_MDL_0000767142
PAR_OPIOID_MDL_0000767179
PAR_OPIOID_MDL_0000767241
PAR_OPIOID_MDL_0000767249
PAR_OPIOID_MDL_0000767374
PAR_OPIOID_MDL_0000767381
PAR_OPIOID_MDL_0001331760
PAR_OPIOID_MDL_0000767665

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

PAR_OPIOID_MDL_0000767719
PAR_OPIOID_MDL_0000767933
PAR_OPIOID_MDL_0000768341
PAR_OPIOID_MDL_0000768344
PAR_OPIOID_MDL_0001332165
PAR_OPIOID_MDL_0000768633
PAR_OPIOID_MDL_0000768657
PAR_OPIOID_MDL_0000768681
PAR_OPIOID_MDL_0000768899
PAR_OPIOID_MDL_0000768946
PAR_OPIOID_MDL_0000769130
PAR_OPIOID_MDL_0000769218
PAR_OPIOID_MDL_0000769245
PAR_OPIOID_MDL_0000769355
PAR_OPIOID_MDL_0000769411
PAR_OPIOID_MDL_0000769414
PAR_OPIOID_MDL_0000769745
PAR_OPIOID_MDL_0000770518
PAR_OPIOID_MDL_0000770840
PAR_OPIOID_MDL_0000771287
PAR_OPIOID_MDL_0000771302
PAR_OPIOID_MDL_0000771433
PAR_OPIOID_MDL_0000772106
PAR_OPIOID_MDL_0000772231
PAR_OPIOID_MDL_0000772242
PAR_OPIOID_MDL_0000772266
PAR_OPIOID_MDL_0000772281
PAR_OPIOID_MDL_0000772491
PAR_OPIOID_MDL_0000772502
PAR_OPIOID_MDL_0000772564
PAR_OPIOID_MDL_0000772695

PAR_OPIOID_MDL_0000772912
PAR_OPIOID_MDL_0000772998
PAR_OPIOID_MDL_0000773259
PAR_OPIOID_MDL_0000773269
PAR_OPIOID_MDL_0000773975
PAR_OPIOID_MDL_0000773985
PAR_OPIOID_MDL_0000774366
PAR_OPIOID_MDL_0000774475
PAR_OPIOID_MDL_0000774503
PAR_OPIOID_MDL_0000774772
PAR_OPIOID_MDL_0000774994
PAR_OPIOID_MDL_0000776741
PAR_OPIOID_MDL_0000776823
PAR_OPIOID_MDL_0000776828
PAR_OPIOID_MDL_0000777068
PAR_OPIOID_MDL_0000777974
PAR_OPIOID_MDL_0000778175
PAR_OPIOID_MDL_0000778276
PAR_OPIOID_MDL_0000778997
PAR_OPIOID_MDL_0000779512
PAR_OPIOID_MDL_0000779515
PAR_OPIOID_MDL_0000779701
PAR_OPIOID_MDL_0000779703
PAR_OPIOID_MDL_0000779821
PAR_OPIOID_MDL_0000779847
PAR_OPIOID_MDL_0000780052
PAR_OPIOID_MDL_0000780055
PAR_OPIOID_MDL_0001337742
PAR_OPIOID_MDL_0000780795
PAR_OPIOID_MDL_0000780967

**INTERROGATORY NO. 33:**

For each Opioid Product (branded or generic) You manufactured, marketed, promoted, sold or distributed in the United States, provide an annual sales summary, including for each Opioid Product (1) the product name; (2) the NDC Code(s) for that Opioid Product; (3) the NDC Code(s) holder for that Opioid Product; (4) your role with regard to the product (manufacturer, marketer, seller, distributor, etc.); (5) annual sales volume by number of pills for that Opioid Product; (6) annual sales volume by number of SKU units/bottles for that Opioid Product; (7) annual gross dollar sales for that Opioid Product; and (8) the Documents relied upon to generate the summary.

The summary shall include all Opioid Products, including any discontinued Opioid Products. As set forth in the definition of "You" and "Your" herein, the summary shall include the Opioid Products manufactured, marketed, promoted, sold or distributed by You or Your

corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest, and other persons or entities acting on Your behalf or controlled by You.

**RESPONSE TO INTERROGATORY NO. 33:**

Par incorporates its Continuing Objections, including the Continuing Objections to Definitions and Instructions, set forth above.  Par objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the needs of the case to the extent it seeks a "sales summary" as to any "Opioid Products," along with a number of details about any "Opioid Products," no matter how tangential the connection the allegations as to Par.  Par objects to the extent this interrogatory seeks information about products or geographies outside the scope set by the Court's rulings on discovery in the Track One cases.  Par further objects to this interrogatory on the basis that the undefined terms and phrases "marketed," "promoted," "sales summary," "role," and "gross dollar sales" are overly broad and vague and ambiguous as used in this interrogatory because they are subject to multiple different interpretations.  Par objects to the extent this interrogatory seeks information that is protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection.  Par objects that this interrogatory contains discrete questions, each of which should be counted separately against the 35 interrogatory limitation contained in CMO 1 (Dkt. 232).

Subject to and without waiver of the foregoing objections, Par responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), Par directs Plaintiffs to produced documents bearing Bates numbers: PAR_OPIOID_MDL_0001596805, PAR_OPIOID_MDL_0001596813 – 0001596819, PAR_OPIOID_MDL_0001596806 – 0001596812, and PAR_OPIOID_MDL_0001596820 for records of direct sales of Schedule II opioid medications by NDC Codes and quantity.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Par further states that it bases its response to Interrogatory No. 33 on the information now known to Par through the exercise of reasonable diligence.  Par reserves the right to further amend, supplement, or modify its response based on additional or new information or to produce additional non-privileged, responsive documents pursuant to Rule 33(d).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 33:**

Subject to and without waiver of all of Par's previously stated objections, Par further responds as follows:  Pursuant to Fed. R. Civ. P. 33(d), Par directs Plaintiffs to produced documents bearing Bates numbers: PAR_OPIOID_MDL_0001596805, PAR_OPIOID_MDL_0001596813 – 0001596819, PAR_OPIOID_MDL_0001596806 – 0001596812, and PAR_OPIOID_MDL_0001596820 for records of direct sales of Schedule II opioid medications by NDC Codes and quantity.

Par further provides the attached file as Exhibit A showing Net Revenues, Gross Margin, Units and Extended Units on an annual basis for its Schedule II opioid products, to the extent that data is available.  Net Revenues reflects allowances and discounts from gross revenue. Gross Margin reflects costs of goods and consideration to third parties deducted from Net Revenue to arrive at Gross Margin.  Further Par provides the data attached as Exhibit B supplementing the data for legacy Qualitest products for years prior to 2015.  Exhibit B contains information regarding DDARQT (units), Total Dosage Units (extended units), DDDPVA (revenue), and Gross Profit minus Cash Discount.

Dated:  March 4, 2019                    Respectfully submitted,

/s/ Jonathan L. Stern
One of the Attorneys for Defendants Par
Pharmaceutical, Inc. and Par Pharmaceutical
Companies, Inc.

Jonathan L. Stern (admitted pro hac vice)

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
Jonathan.Stern@arnoldporter.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on 4<u>th</u> day of March, 2019, I caused the foregoing to be served via electronic mail on the individuals on the attached service list.


<u>/s/ Jonathan L. Stern</u>
Jonathan L. Stern

## SERVICE LIST

*Counsel for Plaintiff County of Cuyahoga*

Robert J. Triozzi, Director
Cuyahoga County Department of Law
2079 East 9th Street, 7th floor
Cleveland, Ohio 44115
Telephone: (216) 698-6464
Facsimile: (216) 698-2744
RTriozzi@cuyahogacounty.us

Robin M. Wilson
County Administrative Headquarters
2079 East 9th Street, 7th Floor
Cleveland, Ohio 44115
Telephone: (216) 443-7042
Facsimile: (216) 698-2744
rwilson@cuyahogacounty.us

Frank Gallucci
PLEVIN & GALLUCCI COMPANY, L.P.A.
55 Public Square
Suite 2222
Cleveland, Ohio 44113
FGallucci@pglawyer.com

Paul J. Napoli
Joseph L. Ciaccio
Salvatore C. Badala
NAPOLI SHKOLNIK, PLLC
400 Broadhollow Road - Suite 350
Melville, New York 11747
pnapoli@napolilaw.com

Scott Elliot Smith
SCOTT ELLIOT SMITH LP A
5003 Horizons Dr. Ste. 200
Columbus Oh. 43220
Telephone: (614) 846-1700
ses@sestriallaw.com

Leo M. Spellacy, Jr., Esq.
THRASHER DINSMORE & DOLAN LPA
1111 Superior Avenue, Suite 412
Cleveland, OH 44114

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Telephone: (216) 255-5431
Fax: (216) 255-5450
lspellacy@tddlaw.com


*Counsel for City of Cleveland Plaintiffs*

David J. Butler
Adrian D. Thompson
David H. Wallace
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44144
Tel: 216-241-2838
dbutler@taftlaw.com
athompson@taftlaw.com
dwallace@taftlaw.com

Paul T. Farrell, Jr.
GREENE, KETCHUM, FARRELL, BAILEY &
TWEED, LLP
419 11th Street (25701)
PO Box 2389
Huntington, WV 25724
Tel: 800-479-0053
paul@greeneketchum.com

Peter F. Weinberger
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 44114-1149
Telephone: (216) 696-3232
pweinberger@spanglaw.com

R. Edison Hill
HILL, PETERSON, CARPER, BEE & DEITZLER,
PLLC
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311
Tel: 304-345-5667
rehill@hpcbd.com

Peter J. Mougey
LEVIN PAPANTONIO THOMAS MITCHELL

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

RAFFERTY & PROCTOR PA
316 S. Baylen Street
Suite 600
Pensacola, FL 32502
Telephone: (805) 435-7000
pmougey@levinlaw.com

J. Burton LeBlanc
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1000
Dallas, TX 75219
Tel: 214-521-3605
bleblanc@baronbudd.com

Michael J. Fuller, Jr.
MCHUGH FULLER LAW GROUP, PLLC
97 Elias Whiddon Rd.
Hattiesburg, MS 39402
Tel: 601-261-2220
mike@mchughfuller.com

Anthony J. Majestro
POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Tel: 304-346-2889
amajestro@powellmajestro.com

*Counsel for County of Summit Plaintiffs*

Donald W. Davis
Adam D. Fuller
Elizabeth Shively Boatwright
Brennan, Manna & Diamond, LLC
75 East Market Street
Akron, Ohio 44308
Telephone: (330) 253-5060
Facsimile: (330) 253-1977
dwdavis@bmdllc.com
adfuller@bmdllc.com
esboatwright@bmdllc.com

Linda Singer
Lisa Saltzburg
Motely Rice LLC
401 9th Street NW

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Suite 1001
Washington, DC 20004
Telephone: (202) 386-9626
lsinger@motleyrice.com
lsaltzburg@motleyrice.com


*Liaison Counsel for Plaintiffs*

Peter Henry Weinberger
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 44114-1149
Telephone: (216) 696-3232
pweinberger@spanglaw.com

Steven J. Skikos
SKIKOS CRAWFORD SKIKOS & JOSEPH
One Sansome Street, Suite 2830
San Francisco, CA 94104
Telephone: (415) 546-7300
sskikos@skikoscrawford.com

Troy A. Rafferty
LEVIN PAPANTONIO THOMAS MITCHELL
RAFFERTY & PROCTOR PA
316 S. Baylen Street
Suite 600
Pensacola, FL 32502
Telephone: (805) 435-7000
trafferty@levinlaw.com





HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT B

PAR PHARMACEUTICAL, INC. AND PAR PHARMACEUTICAL COMPANIES, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORY NO. 33

EXHIBIT B
PAR PHARMACEUTICAL, INC. AND PAR PHARMACEUTICAL COMPANIES, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORY NO. 33

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT B

PAR PHARMACEUTICAL, INC. AND PAR PHARMACEUTICAL COMPANIES, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORY NO. 33



HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT B
PAR PHARMACEUTICAL, INC. AND PAR PHARMACEUTICAL COMPANIES, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORY NO. 33

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT B
PAR PHARMACEUTICAL, INC. AND PAR PHARMACEUTICAL COMPANIES, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORY NO. 33

EXHIBIT B
PAR PHARMACEUTICAL, INC. AND PAR PHARMACEUTICAL COMPANIES, INC.'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORY NO. 33

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER