# EXHIBIT 233

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 <br><br> Case No. 17-md-2804 <br><br> Judge Dan Aaron Polster |

Pursuant to Special Master Cohen's March 12, 2019 ruling, Cardinal Health provides below its second supplemental written response to Topic 16 in Plaintiffs' Second Notice of Deposition Pursuant to Rule 30(b)(6).  Cardinal Health makes this second supplemental response subject to and without waiving the general objections and specific objections and responses set forth in its July 31, 2018 Objections and Responses to Plaintiffs' First and Second Notices of Deposition Pursuant to Rule 30(b)(6).

**Topics 16**

- **Topic 16:** Whether you have conducted any retrospective analysis of past orders of controlled substances arising from a buyer in a CT1 jurisdiction to identify unreported and/or undetected "suspicious orders" and the results of the same.

Cardinal Health does not presently have corporate knowledge of any "retrospective analysis" undertaken by Cardinal Health to identify "from a buyer in a CT1 jurisdiction . . . unreported and/or undetected suspicious orders."[1]

In their January 6, 2019 letter to Special Master Cohen, Plaintiffs characterize the analysis conducted by Cardinal Health pursuant to Section II(1)(f) of the 2008 Memorandum of Agreement with the DEA ("2008 MOA") as responsive to this specific Topic.  The requirements of that provision of the 2008 MOA are as follows:

---

[1] Cardinal Health did not knowingly fail to report suspicious orders.  As previously identified to Plaintiffs, due to an IT glitch, Cardinal Health learned that certain orders identified as "suspicious" inadvertently were not reported.  Those orders were not shipped.  Cardinal Health worked to identify these orders and disclosed the information to the DEA. *See* CAH_MDL2804_02101802; CAH_MDL2804_02101800; CAH_MDL2804_02101803.  Four of these orders were from customers in the Track 1 jurisdictions.

> Cardinal agrees that within 180 days of the Effective Date of this Agreement it will review distributions of oxycodone, hydrocodone, alprazolam, and phentermine to retail pharmacy customers and physicians for the 18-month period immediately preceding the execution of this Agreement and identify any current customer whose purchases of oxycodone, hydrocodone, alprazolam, and phentermine exceeded the thresholds established in its compliance program on the date of such review. To the extent it has not otherwise done so, Cardinal shall conduct an investigation for each customer where such review reveals purchasing patterns substantially deviating from the normal purchasing patterns, and take appropriate action as required by this Agreement, DEA regulations and other procedures established under Cardinal's compliance program.

Cardinal Health disagrees that this analysis is in fact responsive, as it was not conducted for the purpose of "identify[ing] unreported and/or undetected 'suspicious orders.'"  Cardinal Health witness Nicholas Rausch confirmed this fact to Plaintiffs during his November 16, 2018 deposition.  Rausch – who was the individual primarily responsible for conducting the analysis in question – testified that the retrospective analysis conducted pursuant to Section (II)(1)(f) was *not* for the purpose of determining whether there were suspicious orders that Cardinal Health had not reported to DEA.  *See* Deposition of Nicholas Rausch at 124:11-126:4 (Nov. 16, 2018). Although Cardinal Health does not believe the 2009 analysis is actually responsive to this topic, Cardinal Health has produced or identified, pursuant to the Special Master's December 20, 2018 order, all documents related to the results of the analysis in its custody, possession or control that it has been able to identify after a reasonable search.  In addition, Cardinal Health provides the following information regarding the analysis in question.

In January 2009, Cardinal Health conducted an 18-month retrospective analysis of its customers' historical purchases for the period of July 2007 through December 2008 to identify customers that warranted additional review.  Cardinal Health applied a statistical analysis based on a number of factors, including whether: (a) a customers' spikes or high volumes were for purchases of hydrocodone, oxycodone, phentermine, or alprazolam; (b) a customer had

consistently high monthly purchases; and (c) there was significant variation between the maximum and average purchases in a given month.   From this analysis, Cardinal Health identified customers whose purchases patterns "substantially deviated" from normal purchasing patterns.

In May 2009, in compliance with the 2008 MOA, Cardinal Health conducted a comparative analysis of its customers' threshold criteria to evaluate its customers' historical purchases of oxycodone, hydrocodone, alprazolam, and phentermine.  This review encompassed purchases between April 2007 and October 2008.  For this analysis, Cardinal Health used the threshold levels in effect in January 2009 to identify customers whose purchases during that earlier time period exceeded the January 2009 thresholds.  From this analysis, Cardinal Health identified customers whose over-threshold purchases "substantially deviated" from the normal purchasing patterns, pursuant to Section II(1)(f) of the 2008 MOA, and, where appropriate, took additional action.  *See* CAH_MDL2804_00284503.

Cardinal Health has produced documents reflecting the January 2009 and May 2009 retrospective analyses at Bates Nos. CAH_MDL2804_02103237; CAH_MDL2804_00284503; CAH_MDL2804_00637436; CAH_MDL2804_00637438; CAH_MDL2804_00637435; CAH_MDL2804_00637437; CAH_MDL2804_00637434; CAH_MDL2804_00637430; CAH_MDL2804_00637428; and CAH_MDL2804_03195201 - CAH_MDL2804_03195214.

**<u>Second Supplemental Written Response (April 16, 2019</u>)**

As Cardinal Health has repeatedly disclosed to Plaintiffs, a small percentage of orders that Cardinal identified and *did not ship* were inadvertently not reported to DEA.  *See, e.g.*, CAH_MDL2804_02101800–07 (communications between DEA and Cardinal Health detailing this issue); Cardinal Health's Resp. to 30(b)(6) Topics at 3 n.3 (Nov. 14, 2018) ("A small

3

percentage of the orders for controlled substances that were entered into Cardinal Health's automated system for reporting to DEA, inadvertently failed to transmit to DEA due to IT malfunctions.  Four of these orders were from customers in the Track 1 jurisdictions.  All of these orders primarily date from 2012–2015.  None of these orders were shipped."); Cardinal Health's Resp. to 30(b)(6) Topics 16 & 18 at 1 n.1; T. Cameron Montana Tr. 268–271 (Sept. 26, 2018), produced at CAH_MDL2804_02953369–4285.

Cardinal Health discovered the unreported orders in early 2018 during the process of collecting and validating data in response to requests from a multistate group of attorneys general.  Cardinal Health's Anti-diversion Centralization ("ADC") system maintains records of the orders Cardinal Health personnel identified to be reported to DEA.  In response to the multistate group's request for suspicious order data, and to validate the information before sending it out, Cardinal Health's IT team compared the data in ADC with the actual files submitted to DEA.  During the data validation process, the IT team noticed that some orders in ADC marked for reporting to DEA were not included in the files that were submitted to DEA.

Of the 220,488 controlled substances orders that exceeded Cardinal Health's internal threshold limits and were not cleared to ship from May 2012 to January 2017, 206,360 were reported to DEA as suspicious.  After comparing the data in ADC with the files to DEA, Cardinal Health determined that 14,130 orders, *none of which were shipped*, were inadvertently not reported to DEA.  *See* CAH_MDL2804_02101803.  Four of those orders were from customers in the Track 1 jurisdictions.

After identifying the issue, Cardinal Health promptly conducted a root cause analysis to determine why certain orders were not reported.  The large majority of the unreported orders occurred because of an error in the query used to report orders that exceeded certain sub-base

4

code thresholds, which are internal thresholds for particular strengths of a base-code family.  *See* CAH_MDL2804_02101803.  For example, a customer may have a threshold for oxycodone (base code threshold) and a threshold for 15mg oxycodone (sub-base code threshold).  In some instances, the query erroneously identified the order quantity as "null" for orders that hit a sub-base code threshold, which resulted in those orders not being incorporated into the files that were sent to DEA.  A smaller number of orders were not reported because they were processed outside of ADC.  Although ADC is the primary system for evaluating orders, orders are occasionally evaluated in the Distrack order management system, such as when ADC is undergoing maintenance.  Some of the orders that were processed in Distrack were not being pulled into the files that were submitted to DEA.

The vast majority of the unshipped but unreported orders dated from 2012 to 2015; after 2015 Cardinal Health implemented an enhancement to ADC that resolved the sub-base code issue.  *See* CAH_MDL2804_02101806.  Cardinal Health has made further IT and procedural enhancements to prevent these issues going forward.  *See id.*  For example, a daily completeness check is performed to compare the total number of records in the files submitted to DEA with the number of records in ADC that are flagged as needing to be reported to DEA.

On April 25, 2018, Cardinal Health requested guidance from the DEA about whether the agency wanted Cardinal Health to report the orders.  *See* CAH_MDL2804_02101802.  On May 18, 2018, the DEA responded with several follow-up questions and noted that it would provide a "portal link in order for the reports to be uploaded."  *See* CAH_MDL2804_02101800.  On June 1, 2018, Cardinal Health provided detailed answers to the DEA's questions and asked for information on how to access the portal link for reporting the orders.  *See* CAH_MDL2804

5

_02101803.  Cardinal Health also provided the DEA with a detailed breakdown of the number of unreported orders from each distribution center.  *See* CAH_MDL2804_02101804–05.

On July 11, 2018, Linden Barber and Todd Cameron met with DEA representatives in Washington, DC, to discuss, in part, the unreported orders.  T. Cameron Montana Tr. 268–271. As of April 16, 2019, DEA has not provided guidance on how the orders should be reported. Nor has DEA followed up with Cardinal Health in any way related to the unshipped but unreported suspicious orders.