EXHIBIT 310

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF OHIO

 3                     EASTERN DIVISION

 4

 5

    IN RE NATIONAL PRESCRIPTION   | Case No. 17-MD-2804

 6                                |

    OPIATE LITIGATION             | Hon. Dan A. Polster

 7                                |

    APPLIES TO ALL CASES          |

 8

 9                       - - -

10            Thursday, November 15, 2018

11                       - - -

12

         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER

13

                  CONFIDENTIALITY REVIEW

14

                         - - -

15

16

17

         Videotaped deposition of JEFF ABERNATHY,

18   held at the offices of Mitchell Williams,
     4206 South J.B. Hunt Drive, Suite 200, Rogers,

19   Arkansas, commencing at 9:37 a.m., on the above
     date, before Susan D. Wasilewski, Registered

20   Professional Reporter, Certified Realtime
     Reporter and Certified Realtime Captioner.

21

22

23                       - - -

24            GOLKOW LITIGATION SERVICES
          877.370.3377 ph | 917.591.5672 fax

25                  deps@golkow.com
```

Highly Confidential - Subject to Further Confidentiality Review



15    Q.   Sir, were you aware in 2007, that Walmart,

16    as a distributor of controlled substances, had an

17    obligation to monitor for suspicious orders?

18    A.   I wouldn't -- I don't know that I was aware

19    of an obligation.  We did -- we did monitor for --

20    we did monitor orders, so --

21    Q.   Can you be more specific when you say "we

22    did monitor orders"?

23    A.   I mean, we -- we would print 222 forms every

24    day in this time frame.  So we would pull those 222

25    forms for however many stores we needed that day,

1    and we would print those 222 forms.  And the ladies

2    who were physically printing those forms, they

3    looked at those orders; and if they saw something

4    that maybe looked like it was kind of high, just



Highly Confidential - Subject to Further Confidentiality Review



23     A.   So the picking folks were responsible for

24   filling the order that came to them, yes.

25     Q.   And Walmart, in 2010, had a policy in place

1    where the folks who were responsible for picking the

2    orders would also report to you if they saw anything

3    suspicious?

4        A.    I can't say that there was a policy stating

5    that.    They -- they would just do that.

Highly Confidential - Subject to Further Confidentiality Review

6          So during this time period in 2012, let's

7     say an order for oxy 5 milligram comes in on a

8     Monday for 51 bottles.  Okay?

9     A.   For which drug?

10    Q.   Oxy 5 milligrams.

11    A.   Okay.

12    Q.   Okay?  You're supposed to have a process in

13    place, right, where you look at orders over 50,

14    correct?

15    A.   Yes.

16    Q.   Okay.  And what was the expectation as to --

17    with respect to when that order would be filled and

18    shipped, if the order came in on a Monday?

19    A.   So Monday morning, typically when Jimmie

20    came in, since he was the first one in, before we

21    started the pick process, he would pull all of those

22    orders and export it to a spreadsheet and then we

23    would, you know, sort those to show me orders or in

24    the order column, show me everything over 50, show

25    me all the oxy's over 30, and we would filter it out

 1    that way so that we could see here is all of my

 2    oxy-30s that were over 20 and here's all the other

 3    drugs that were over 50.

 4       Q.   And if another dosage of oxycodone was over

 5    50, what would you do?

 6            MR. MAZZA:  Object; form.

 7       Q.   I'll strike that.

 8            If another order came in for another dosage

 9    of oxycodone that was not oxy-30s, it was oxy-10s or

10    oxy-5s, that was over 50 bottles -- we're talking

11    bottles, correct?

12       A.   Yes.

13       Q.   Okay.  What would you do?

14       A.   So I guess I don't understand when you say

15    "another order."  Like the next store in line?

16       Q.   Well, let's -- let's take a step back.  All

17    right.

18       A.   Okay.

19       Q.   Go back to my first example, right.  A store

20    orders 51 bottles of oxy-5 milligrams on Monday.

21       A.   Okay.

22       Q.   The order comes in on Monday.  You get your

23    printout of that order.  Then what happens?

24       A.   So then we would send that over to the team,

25    the teams I spelled out, and we would say, "This

Highly Confidential - Subject to Further Confidentiality Review

```
1    store for this product ordered 51 bottles."

2        Q.    And from your perspective, what would happen

3    next?

4        A.    Then we would wait.  If they would send us

5    back whatever communication or if we needed to do

6    something with the order, we would just wait for

7    that.

8        Q.    And how would they inform you of what to do

9    with the order?

10       A.    E-mail.

11       Q.    And that's what happened on a daily basis,

12   correct?

13       A.    Yes, sir.

14       Q.    During this time period, when would you have

15   expected to hear back from them regarding what to do

16   with the order?

17       A.    So we shipped every day at 3:00 p.m.  I mean

18   we had had discussion, that's the -- that's the time

19   we ship.  They had known that.  So if we didn't hear

20   anything back by 3:00 p.m., then we went ahead and

21   shipped the item.
```



24      A.    Yes, sir.

25      Q.    Okay.  And at this point in the day, at

Highly Confidential - Subject to Further Confidentiality Review

1    9:38 a.m., had he already reviewed that day's

2    orders?

3        A.   Yes, sir.

4        Q.   And he had decided to cut some orders,

5    correct?

6        A.   Yes, sir.

7        Q.   And he had decided to not cut other orders,

8    correct?

9        A.   Yes, sir.

10       Q.   Okay.  Had he -- had -- strike that.

11            For the orders that he decided to cut, what

12   would be the basis for that decision?

13            MR. MAZZA:  Object; foundation.

14       A.   I -- I don't know.  I mean --

15       Q.   Well, sir, you also had -- this was also

16   your responsibility at the time period, correct?

17       A.   It was my responsibility if I came in first

18   that day.

19       Q.   Right.  So what was the criteria for

20   cutting?

21       A.   If anything over 20 bottles of oxycodone-30,

22   cut it to 20.



Highly Confidential - Subject to Further Confidentiality Review



24       A.    For the time period that we were doing the

25    Over 20 Report?

Highly Confidential - Subject to Further Confidentiality Review

```
1    Q.   Right.

2    A.   We would be the ones cutting them at the DC.

3    Q.   And someone --

4    A.   If we were instructed to do that.

5    Q.   Right.

6         And how would -- how would -- how would of

7    those -- those instructions come to you, via e-mail

8    or telephone?

9    A.   E-mail.

10   Q.   Do you recall an instance -- any instance

11   where you got an e-mail to cut an order?

12   A.   I don't remember any given instance to --

13   that we did that.

14   Q.   Do you remember that ever happening in this

15   four- to five-year time frame?

16   A.   In this time frame for the Over 20 Report, I

17   don't remember -- I don't remember me getting any

18   kind of a phone call or an e-mail to cut an order.

19   Q.   So you guys were running these reports daily

20   for four to five years, and you never recall

21   receiving any direction to cut an order; is that

22   correct?

23   A.   I don't remember -- I don't remember getting
```

Highly Confidential - Subject to Further Confidentiality Review

1       Q.   Are you familiar with any time period, based

2   on your experience at 6045, when an order that

3   showed up on an Over 20 Report had to wait four days

4   before it was shipped?

5       A.   For the Over 20 Report, I don't ever

6   remember holding an order during the time frame we

7   were using that report.

Highly Confidential - Subject to Further Confidentiality Review



14      Q.   Did you report those orders to the DEA?

15      A.   I did not.



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



14          MR. MAZZA:  Let's take that break before we

15     do the next document.

16          MR. BOWER:  Can we just do -- I mean, we're

17     taking a lot of breaks.

18          MR. MAZZA:  We've got one hour to go, so --

19     actually, now we have less than an hour to go.

20     And so I thought we'd take a break now and then

21     finish the hour.  So let's take a break before we

22     do that document.

23          MR. BOWER:  I don't know if it's -- we can

24     go off the record.

25          THE VIDEOGRAPHER:  Going off the record, the

Highly Confidential - Subject to Further Confidentiality Review

1       time is 5:20.

2               (Recess from 5:20 p.m. until 5:34 p.m.)

3               THE VIDEOGRAPHER:   We're going back on the

4       record, beginning of Media File Number 7.   The

5       time is 5:34.

6               (Abernathy Exhibit 25 was marked for

7       identification.)

Highly Confidential - Subject to Further Confidentiality Review





```
18      Q.   Walmart had -- was doing business with

19   McKesson at the time, right?   Its pharmacies were

20   ordering from McKesson, right?

21      A.   Yes, sir.
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



2     Q.   In deciding whether to cut an order, you

3   never determined whether a pharmacy may have ordered

4   that same product from McKesson, did you?

5     A.   No, sir.

6     Q.   And you never determined whether -- you

7   never considered whether that pharmacy may have

8   ordered that product from AmerisourceBergen, did

9   you?

10     A.   No, sir.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 1              MR. BOWER:  All right.  Let's go off the

 2        record for a minute.

 3              THE VIDEOGRAPHER:  Going off the record.

 4        The time is 5:52.

 5              (Recess from 5:52 p.m. until 5:57 p.m.)

 6              THE VIDEOGRAPHER:  We're back on record, the

 7        beginning of Media File Number 8.  The time is

 8        5:57.

 9              (Abernathy Exhibit 28 was marked for

10        identification.)
```



Highly Confidential - Subject to Further Confidentiality Review

