EXHIBIT 315

Highly Confidential - Subject to Further Confidentiality Review

```
 1            UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF OHIO
 2                   EASTERN DIVISION
 3    IN RE: NATIONAL        )    MDL No. 2804
      PRESCRIPTION OPIATE    )
 4    LITIGATION,            )    Case No.
                             )    1:17-MD-2804
 5                           )
      THIS DOCUMENT RELATES TO )  Hon. Dan A.
 6    ALL CASES              )    Polster
                             )
 7
 8            .           __  __  __
 9              Tuesday, January 22, 2019
                          __  __  __
10
        HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
11               CONFIDENTIALITY REVIEW
                          __  __  __
12
13
14
15           Videotaped 30(b)(6) Deposition of
      Walmart, through the testimony of Susanne
16    Hiland, held at 4206 South J.B. Hunt Drive,
      Rogers, Arkansas, commencing at 8:22 a.m., on
17    the above date, before Debra A. Dibble,
      Certified Court Reporter, Registered
18    Diplomate Reporter, Certified Realtime
      Captioner, Certified Realtime Reporter and
19    Notary Public.
20
                          __  __  __
21
22
23           GOLKOW LITIGATION SERVICES
         877.370.3377 ph | fax 917.591.5672
24               deps@golkow.com
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
1    for unusual orders of unusual size as the

2    orders were being processed.

3           Q.      And how would they determine

4    whether an order was of unusual size?

5           A.      These were --

6                   MS. TABACCHI:  Beyond the

7           scope.

8                   THE WITNESS:  These were

9           long-tenured associates that

10          understood the business and the fact

11          that we were self-distributing.  So

12          they saw the -- they saw the patterns.

13          They worked with it every single day.
```

1   the policy you're referring to?  Where it

2   says "From as early as 1994 until 2010,

3   employees in Walmart's pharmacy distribution

4   centers reviewed controlled drug stock

5   exception reports, followed up on orders by

6   speaking with pharmacists, and escalated

7   issues to market and/or regional leadership

8   as needed to investigate orders and to

9   resolve concerns."

10          Is that the policy you're

11  referring to?

12      A.    Yes.  As well as the bullet

13  that's at the very bottom of the page.  So

14  I'm on my document that, for the entire

15  relevant time period, our distribution

16  associates monitored orders.

17      Q.    Okay.  Now, let's go in 2006,

18  what specifically were the associates doing

19  to monitor orders?

20          MS. TABACCHI:  Object to the

21      form.

22          THE WITNESS:  They were

23      monitoring orders as they came into

24      the distribution center, and again

```
 1          based on their knowledge and

 2          experience of the operations.  They

 3          were looking for outliers.  Things

 4          that were outliers for them -- for

 5          their knowledge.

 6          Q.    (BY MR. BOWER)  Okay.  And
```

Highly Confidential - Subject to Further Confidentiality Review

```
 7            training as -- as the associates came

 8            in around what their duties and

 9            responsibilities were.

10            Q.     (BY MR. BOWER)  And what

11    specific training was provided in connection

12    with monitoring for orders of controlled

13    substances?

14                  MS. TABACCHI:  Same objections.

15                  THE WITNESS:  I don't have

16            specific to that -- to that topic.

17            What they understood was their

18            responsibilities, how to perform their

19            duties in their area of

20            responsibility, and the nature of the

21            items that they were --

22            Q.     (BY MR. BOWER)   Well, how do
```

Highly Confidential - Subject to Further Confidentiality Review



18          What did Scott tell you with

19     respect to the training for associates who

20     were reviewing orders of substances in 2007?

21          A.      What he told --

22                  MS. TABACCHI:  Object to the

23          form.

24                  THE WITNESS:  What he told me

Highly Confidential - Subject to Further Confidentiality Review

```
 1            was that there were long-tenured

 2            logistics associates that had -- many

 3            of them had been in that building

 4            since the day that it opened.  They

 5            understood their -- they understood

 6            the products that they were

 7            distributing.  They understood their

 8            role.  And they were all engaged in

 9            executing the policies and practices

10            at DC '45.

11       Q.    (BY MR. BOWER)  So is it a fair

12  statement that it was more their experience

13  and specific training that he had relied on

14  in reviewing orders for controlled

15  substances? ,

16            MS. TABACCHI:  Object to the

17            form.

18            THE WITNESS:  Their -- learning

19            how to do their job would be part of

20            their training.  And Walmart has other

21            training plans.  So to -- but specific

22            to order monitoring, it was part of

23            the job that they were trained to do.
```

Highly Confidential - Subject to Further Confidentiality Review



21          Q.      (BY MR. BOWER)   Were these

22     controlled drug stock exception reports used

23     by the associates at DC 6045 to monitor

24     orders for controlled substances as they

Highly Confidential - Subject to Further Confidentiality Review

1    were -- came into the DC?

2              MS. TABACCHI:  Object to the

3         form.

4              THE WITNESS:  No.  These were

5         monthly reports.

Highly Confidential - Subject to Further Confidentiality Review

8          MS. TABACCHI:  Zach, object to

9      the form.  You need to read the entire

10     bullet and we've been on this bullet

11     for a long time.

12          MR. BOWER:  We have, but we

13     haven't got much answer on it, have

14     we?

15          MS. TABACCHI:  You're just not

16     satisfied with the answer you have.

17          MR. BOWER:  No, I am satisfied.

18     I just don't think the witness

19     understands what I'm asking, and I'm

20     trying to ask it in a way that she

21     maybe understands.

22     Q.     (BY MR. BOWER)  So my question

23  is, when these orders are escalated to market

24  and/or region leadership as needed, what did

1    those folks do?  I'm just trying -- what was

2    the policy as to what those folks were

3    supposed to do?

4                MS. TABACCHI:  Asked and

5         answered.

6                THE WITNESS:  They would have a

7         conversation with the logistics

8         associate that was reaching out to

9         them to understand what the question

10        was, and then they would go find

11        whatever information, validate what

12        they had already heard from the

13        pharmacist, or follow up specific to

14        whatever the point of escalation was.

15             It says "as needed."

Highly Confidential - Subject to Further Confidentiality Review

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 7          Q.       (BY MR. BOWER)    Okay.    Because

 8    I think I understand what you're saying,

 9    because Mr. Abernathy, for example, testified

10    that he would do some reports if he was the

11    first one in the office, for example.

12    Correct?

13          A.       Correct.   I read that in his

14    deposition.

15          Q.       So under that circumstance, he

16    would be the one responsible for reporting to

17    the DEA a suspicious order?

18                   MS. TABACCHI:   Object to the

19          form.

20                   THE WITNESS:   If there was an

21          order that was identified in his

22          shift, he would be responsible for

23          that.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 7            you're asking.

 8            Q.      (BY MR. BOWER)   And I

 9   appreciate that.   Bullet point 3 refers to

10   monthly reports; correct?

11            A.      Correct.

12            Q.      Okay.  So those reports

13   wouldn't have been used during this time

14   period, at least, to identify an order that

15   came in on a specific day --

16            A.      Now I understand the question.

17            Q.      -- for you; correct?

18            A.      Correct.
```

Highly Confidential - Subject to Further Confidentiality Review

7          A.      The enhanced thresholds were

8     calculated using a year's worth of shipment

9     data, and then applying a formula, which was

10    the average weekly order, plus three standard

11    deviations over that 52-week shipment date.

12          Q.      And when that formula was used,

13    would that provide the enhancements for a

14    particular store?

15                  MS. TABACCHI:  Object to the

16          form.

17                  THE WITNESS:  It was store and

18          item specific.  And there were

19          additional defaults that were applied

20          to those thresholds as they were

21          calculated.

22          Q.      (BY MR. BOWER) And can you

23    describe for us how those defaults -- let me

24    break that down a little bit.

Highly Confidential - Subject to Further Confidentiality Review



24              Q.      (BY MR. BOWER)  What did Walmart

1    consider to be too few?

2              MS. TABACCHI:  Same objections.

3              THE WITNESS:  It would be

4        something that didn't make sense for

5        the business.  That we were reviewing