# EXHIBIT 349

Case: 1:17-md-02804-DAP Doc #: 1965-31 Filed: 07/23/19 1 of 5. PageID #: 167339

http://www.deadiversion.usdoj.gov/chem_prog/susp.htm    Go    FEB MAR JUL
218 captures                                                ◀ 28 ▶
11 Jul 2000 – 17 Apr 2018                                    2012 2013 2014   About this capture



**U.S. Department of Justice   Drug Enforcement Administration**

# Office of Diversion Control

Contact Us | Site Map | Search

- Home
- Registration
- Reporting
- Info & Legal Resources
- Inside Diversion Control

Chemical Program > Knowing Your Customer/ Suspicious Orders Reporting

## Information and Legal Resources at your fingertips



# Knowing Your Customer/ Suspicious Orders Reporting







To view PDF documents
Get ADOBE® READER®

External links included in this website should not be construed as an official

***Question***: What constitutes a Suspicious Order and how can Suspicious Orders be easily recognized?

***Answer***: The DEA has frequently been asked for guidance on what constitutes a suspicious order. The Suspicious Orders Task Force (SOTF) met in 1997 to make recommendations to industry on recognizing suspicious orders. The following guidelines, contained in the Chemical Handlers Manual, are intended to assist chemical manufacturers, distributors, wholesalers and retailers to be alert to suspicious orders involving listed chemicals. Consistent application of these guidelines will help industry assist DEA in preventing the diversion of legitimate chemical products to illegal drug manufacturing and use. The guidelines are intended to apply to all aspects of commercial chemical manufacturing and distribution. It is important that the guidelines are applied to the totality of any particular circumstances. No individual indicator listed below is independently a suggestion that a given order is suspicious and/or reportable to DEA. Questions concerning potentially suspicious orders should be directed to the local DEA office.

## "Know Your Customer Policy" Explained

**Suspicious Orders Criteria for Retailers, Distributors, and Wholesalers**

- Suspicious Orders Task Force
- Suspicious Orders Identification Criteria
- All Levels / All Chemicals
- Distributor (Non-retail) of Regulated OTC Products
- Wholesale Drug Distribution Indicators
- Factors Which May Suggest a Suspicious Transaction
- Suspicious Order Reporting System for Use in Automated Tracking Systems

## "Know Your Customer" Policy

**It is fundamental for sound operations that handlers take reasonable measures to identify their customers, understand the normal and expected transactions typically conducted by those customers, and, consequently, identify those transactions conducted by their customers that are suspicious in nature.**

Some states have restrictions on distribution practices that are more stringent than the federal rules. The extent of compliance with state law is taken into consideration when civil, administrative, or criminal actions are under consideration.

It is required that any regulated person verify that a customer for List I products possesses a valid DEA registration or is exempt from that requirement.

The granting of a DEA registration signals only a proper application, the establishment of the required records system, and the required security system at the time of the on-site inspection by DEA. The registration is not a confirmation of proper ongoing business practices and does not relieve the chemical handler of the responsibility to evaluate such transaction.

## Suspicious Orders Task Force

listed chemical will be used in violation of the law. While the CSA requires reporting of suspicious orders, the manner in which industry addresses the requirement determines its effectiveness.

Representatives of government and the chemical industry worked together in 1998 in the Suspicious Orders Task Force to develop voluntary guidelines for recognizing suspicious orders. The Task Force guidelines, entitled "Suspicious Orders Identification Criteria," were endorsed by the Attorney General and widely accepted by industry. The criteria, which are for voluntary use, are specific for each segment of the chemical distribution industry: Importers & Manufacturers; Wholesale Distributors; and Retail Distributors. Task Force guidelines appear in the appendices.

The Task Force recommended that manufacturers of retail over-the-counter drug products containing List I chemicals utilize "ordinary over-the-counter" packaging as defined in the MCA and that products packaged differently be prepared and distributed only for prescription use as defined by the Food, Drug and Cosmetic Act. The industry has widely accepted this recommendation. Industry has distributed the guidelines and incorporated them into employee training programs.

**Suspicious Orders Identification Criteria**

Each regulated entity is most familiar with its customers and circumstances surrounding the orders it processes. The chemical industry must use its best judgment in identifying suspicious orders. The following criteria are provided in order to assist the industry in identifying suspicious orders.

**All Levels / All Chemicals (* indicates that criterion may not apply to all retail settings)**

- New customer or unfamiliar representative or established customer who begins ordering listed chemicals.*
- Customers who don't seem to know industry practice or who fail to provide reasons for an order at variance with accepted legitimate industry practice.
- Customer whose communications are not prepared or conducted in a professional business manner.*
- Customer who provides evasive responses to any questions or is unable to supply information as to whether chemicals are for domestic use or for export.
- Customer who has difficulty pronouncing chemical names.
- New customers who don't seem to know Federal or state government regulations.*
- Customer whose stated use of listed chemicals is incompatible with destination country's commercial activities or consignee's line of business.*
- Customers who want predominantly or only regulated chemicals.
- Customers who want multiple regulated or surveillance list (see Appendix G for Special Surveillance List) products, particularly if in contrast to customary use and practice.
- Customer who is vague or resists providing information about firm's address, telephone number, and reason for seeking that chemical.*
- Customer who provides false or suspicious addresses, telephone numbers or references.
- Customer who is vague or will not furnish references for credit purposes.*
- Customer who refuses or is reluctant to establish a credit account or provide purchase order information.*
- Customer who prefers to pay by cashiers check, postal money order, etc.
- Customer who desires to pay cash.*
- Customer who wants to pick up the chemicals outside of normal practice in the supplier's experience.
- Customer with little or no business background available.*
- An established customer who deviates from previous orders or ordering methods.
- Customers who want airfreight or express delivery.
- Customers who want chemicals shipped to a PO Box or an address other than usual business address. (e.g., residence address)
- Customer using a freight forwarder as ultimate consignee.
- Customer who requests unusual methods of delivery or routes of shipment.
- Customer who provides unusual shipping, labeling, or packaging instructions.
- Customer who requests the use of intermediate consignees whose location or business is incompatible with the purported end user's nature of business or location.
- Above threshold hydrochloride gas or iodine sales to a non-commercial customer.

**Distributor (Non-retail) of Regulated OTC Products**

- Customers who don't want to tell you what area they will resell into.
- Customers who don't want to tell you in what volumes they will resell.
- Customers who refuse to tell you who their customers are.

CONFIDENTIAL

WAGMDL00400362

Case: 1:17-md-02804-DAP Doc #: 1965-31 Filed: 07/23/19 4 of 5. PageID #: 167342

http://www.deadiversion.usdoj.gov/chem_prog/susp.htm

218 captures
11 Jul 2000 - 17 Apr 2018

FEB MAR JUL
◀ 28 ▶
2012 2013 2014

- Customers who resell to non-traditional outlets for regulated OTC products, e.g., hair salons, head shops, drug paraphernalia stores, liquor stores, record stores, video shops, auto parts stores.
- Customers who resell large volumes into the "independent convenience store" market.
- Any customer who asks for large bottle sizes, 60 count or higher.
- Customers who buy only the largest size available.
- Customers that don't sell other pharmaceutical products or appear to sell those other products in token amounts.
- Any customer that resells multiple cases that flow through to individual retail outlets.
- New customers who want to sell regulated OTC products into California, Arizona, Nevada, Oregon, Utah, Washington, New Mexico, Texas, Kansas, Missouri, Arkansas.
- Any customer who wants to sell to an outlet relocated from California, Missouri, or Kansas to any of the states identified in the prior sentence.
- Any customer who wants to export, particularly to Mexico, Canada, or Southeast Asia.
- Customers who will not provide you with evidence of registration with DEA.

    (Or having applied by the following deadlines: Nov 13, 1995 for single entity ephedrine; July 12, 1997 for ephedrine combination products; Dec 3, 1997 for pseudoephedrine and phenylpropanolamine products.)

- Customers who will not provide you with evidence of applicable state registrations/licenses.
- Customers who sell mail order and who don't report sales to DEA monthly.

    (Note they must also be registered.)

Nominal retail customers who sell above the Federal, "Retail," 9 Gm individual sale limits [Editor's Note: The Task Force's original 24 gram limits were superseded by the 9 gram limit established by the Methamphetamine Anti-Proliferation Act of 2000 on October 17, 2001]

**Wholesale Drug Distribution Indicators**

- Individual pharmacies that intend to export.
- Individual pharmacies or chains that won't set a voluntary limit for individual sales at some fraction of the Federal limit to qualify as a retail outlet.
- Pharmacies that stock large shelf volumes in stores that have repeated thefts or other sales problems.

**Factors Which May Suggest a Suspicious Transaction**

**Retail Level - Regulated Products and/or Combination Purchases**

- OTC customers who ask for more than the transaction limit in effect.
- Customers who are part of a group, each of whom buys the transaction limit.
- Customers who buy the transaction limit on the same day and/or repeatedly within a few days.
- Customers who buy only the largest size available at the transaction limit.
- Customers who buy other methamphetamine processing products at the same time as the regulated products (alcohol, Coleman fuel, acetone, road flares, drain cleaners, iodine, muriatic acid, rock salt, starting fluid (ether), dry gas (alcohol), coffee filters, large amounts of matches, etc.)
- Customers who indicate they will resell or export.
- Iodine customers who don't have a legitimate reason for the purchase or who don't have an articulate reason for the volume requested.
- Customers who purchase iodine crystals or pellets with any other item from the surveillance list.
- Customers who want to pay cash when other forms of payment would be customary.

There may be a legitimate explanation for a purchase that represents one or more of these factors. The list is presented as a guide to instruct retailers and their employees as to which transactions may be suspicious.

# Suspicious Order Reporting System for Use in Automated Tracking Systems

**Terms & Definitions**

This voluntary formula is for use by distributors to wholesale and retail levels. The formula calculates the quantity which, if exceeded in one month, constitutes an order which **may** be considered excessive or

CONFIDENTIAL

WAGMDL00400363

2) Add Customer months for every record used in above total. (Months within the last 12 that customer purchases of the item were not zero.)

3) Divide total quantity purchases by the total customer months.

4) Then multiply by the factor below to give the maximum amount that the customer can order per month before showing up on the suspicious order report.

> Note: Factor equals 3 for C-II and C-III Controlled Substances Containing List I Chemicals and 8 for C-III-IV-V Controlled Substances and non-Controlled OTC products containing List I chemical items.

5) At the end of each month, a report will be transmitted to DEA (separate reports for List I Chemicals and Schedule II-V Controlled Substances) of all purchases of List I Chemicals and/or C-II-V Controlled Substances and List I containing OTC items by any customer whose purchase quantities exceed the parameters (above) any (2) consecutive months or in three (3) of any moving six (6) month period.

Using a computer to manage and report on high volume transaction business activities with extremely short order cycle times (receipt to delivery) is the only viable, cost effective methodology for the reporting of orders which may be considered excessive or suspicious.

u:100108

**Back to Top**

Drug Enforcement Administration Home

CONFIDENTIAL

WAGMDL00400364