# EXHIBIT 464

```
                  UNITED STATES DISTRICT COURT

             FOR THE NORTHERN DISTRICT OF OHIO

                       EASTERN DIVISION

                            - - -

   IN RE:  NATIONAL            :
   PRESCRIPTION                :  MDL No. 2804
   OPIATE LITIGATION           :
   _____ :  Case No.
                               :  1:17-MD-2804
   THIS DOCUMENT RELATES       :
   TO ALL CASES                :  Hon. Dan A. Polster

                            - - -

                  Thursday, January 3, 2019

         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
                  CONFIDENTIALITY REVIEW

                            - - -
```

         Videotaped deposition of JILL A. STRANG, held

at the offices of Cavitch, Familo & Durkin,

1300 East Ninth Street, Cleveland, Ohio, commencing at

8:57 a.m., on the above date, before Carol A. Kirk,

Registered Merit Reporter and Notary Public.


                            - - -


              GOLKOW LITIGATION SERVICES
         877.370.3377 ph | 917.591.5672 fax
                   deps@golkow.com

Page 314

1  and I know what --
2      A.  Sorry.
3      Q.  -- you're doing, and it's okay.
4  But we can go back and look at a document.
5          Do you remember the document where
6  they notified you guys that there was an order
7  that was cut, it was reported to the DEA as
8  suspicious, and it wasn't shipped, and then they
9  said, "Maybe it was a fat finger," right?
10     A.  Correct.
11     Q.  So they already reported it to the
12 DEA before they asked whether it was a fat
13 finger, right?
14     A.  They cut it.
15     Q.  Yeah.  But you -- if it had been
16 you, there wouldn't have been a threshold.  You
17 would have looked at it, and then you would have
18 done some diligence, due diligence, and then
19 you -- well, you didn't, because you never
20 did -- you would not have reported that to the
21 DEA, right?
22     A.  I did do my due diligence.
23     Q.  But you didn't ever report
24 anything to the DEA?

Page 315

1      A.  I did not.
2      Q.  Okay.  You would identify the fat
3  finger situation, fix it or resolve it, work it
4  out, but it wouldn't get reported; whereas
5  Cardinal reports it, and then after the fact,
6  you've got to go and figure out what happened,
7  right?
8      A.  Yes.  Probably because, again, we
9  know our customers.  So our customers are the
10 stores, and I'm -- I'm not going to look at it
11 as -- I'm going to look at it as "Let's fix
12 this" because it was wrong when it came over.
13     Q.  Okay.  And so I'm going back to my
14 question I asked you before, which is you would
15 agree, based on these documents, that Cardinal's
16 reporting system to the DEA was more sensitive
17 than DDM's in that they would report more stuff
18 than you would?
19         MR. JOHNSON:  Objection.
20     A.  They see way more orders than I
21 do.
22     Q.  That's not an answer to my
23 question.
24     A.  But I don't know how to answer

Page 316

1  your question.
2      Q.  Okay.  That fat finger one that
3  they cut, would you have reported that to the
4  DEA?
5      A.  No, because it would --
6          MR. JOHNSON:  Objection.
7          But go ahead.
8      A.  No, because it wouldn't -- when it
9  came over, it would have been investigated and
10 looked at --
11     Q.  Right.
12     A.  -- and stopped before it left the
13 distribution center.
14     Q.  Right.
15     A.  They just automatically cut.
16     Q.  But they didn't send it either,
17 did they?
18     A.  They automatically cut it.  They
19 didn't even ask any questions.
20     Q.  Right.  So they cut it, didn't
21 ship it, and reported it.  You would have
22 called, stopped it, but not reported it, fair?
23     A.  Fair, as an order, yes.
24     Q.  And you -- because you've never

Page 317

1  reported a single suspicious order to the DEA
2  ever, right?
3      A.  Correct.
4          MR. MULLIGAN:  Okay.  No further
5      questions.
6          THE VIDEOGRAPHER:  The time is now
7      2:55.  This concludes the deposition.
8      Going off the record.
9         (Signature not waived.)
10              - - -
11         Thereupon, at 2:55 p.m., on Thursday,
12 January 3, 2019, the deposition was concluded.
13              - - -