# EXHIBIT 469

Highly Confidential - Subject to Further Confidentiality Review

Page 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

- - -

| | |
|---|---|
| IN RE:  NATIONAL PRESCRIPTION OPIATE LITIGATION | : : MDL No. 2804 : |
| _____ | : Case No. : 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO ALL CASES | : : Hon. Dan A. Polster |

- - -

Thursday, December 6, 2018

HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
CONFIDENTIALITY REVIEW

- - -

Videotaped deposition of JASON BRISCOE, held at the offices of Cavitch, Familo & Durkin, 1300 East Ninth Street, Cleveland, Ohio, commencing at 9:05 a.m., on the above date, before Carol A. Kirk, Registered Merit Reporter and Notary Public.

- - -

GOLKOW LITIGATION SERVICES
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

Page 78

1 So if there is something that we
2 need to take a deeper look at, there is due
3 diligence taken between pharmacy operations and
4 the store from which that anomaly showed on the
5 report, and that report would essentially
6 explain to the store, "We recognize that this
7 month for this drug family, you ordered a
8 quantity of X, and this quantity of X is greater
9 than your last 12-month monthly average. Please
10 provide me information as to how these
11 additional -- you know, or this -- this order is
12 not suspicious or this order was for legitimate
13 purposes."
14    Q. All right. One thing I'm a little
15 confused with still is that -- so once we go
16 beyond pharmacy operations, is Mr. Nameth in
17 pharmacy operations?
18    A. Yes.
19    Q. Okay. And while that report is
20 being generated on a monthly basis and while
21 pharmacy operations is reviewing the anomalies
22 in that report --
23    A. Tom?
24    Q. Right, or yourself.

Page 79

1    A. Yes.
2    Q. -- that order is then shipped to
3 the DDM pharmacy, correct, sir?
4    A. Those orders would have been
5 shipped, yes, because that monthly report where
6 there's a retrospective view of what had
7 occurred in the previous month ...
8        MR. JOHNSON: Peter, when you get
9    to a natural place to take a break,
10    let's take a midmorning break.
11       MR. MOUGEY: Sure. That's
12    perfect. I'm good now.
13       MR. JOHNSON: Is now fine?
14       MR. MOUGEY: Yep. That is fine.
15       THE VIDEOGRAPHER: Going off the
16    record at 10:17 a.m.
17       (Recess taken.)
18       THE VIDEOGRAPHER: Back on record
19    at 10:35 a.m.
20 BY MR. MOUGEY:
21    Q. Mr. Briscoe, we've gone through
22 the --
23    A. Exhibit 6, sir?
24    Q. Yes, sir, still Exhibit 6.

Page 80

1 We've gone through two reports,
2 the six-week average report and the second
3 monthly report, controlled substance monitoring
4 report, I think. Does that name, controlled
5 substance monitoring report, anywhere -- appear
6 anywhere on that document?
7    A. I'm going by memory alone. I
8 believe there is a header on that report, but I
9 don't recall if it's the term that I provided to
10 you earlier or a term we might have provided in
11 our request for documents. I apologize.
12    Q. Do you know if those reports are
13 stored in any hard drive, server, somebody's
14 filing cabinet?
15    A. I know that the top page of the
16 hard copy reports I sign off on and file away in
17 the event that the DEA would come in and ask
18 for -- you know, "Show me where you did your
19 portion of your order monitoring." And I also
20 believe -- and I think in, again, the requests
21 or the interrogatories when we described this
22 process, they are retrievable. So we could, if
23 we needed to retrospectively --
24    Q. Go back and pull them --

Page 81

1    A. Yes.
2    Q. -- on a monthly basis, going back
3 to -- at least to 2006?
4    A. I can't speak with confidence on
5 how far back we would be able to pull them, but
6 I think the answer to that is yes.
7    Q. Okay.
8        MR. JOHNSON: Are they -- can I
9    clarify? Are they in paper form or are
10   they electronically stored someplace?
11       THE WITNESS: Well, part of my
12   process whenever -- my segment of the
13   overall puzzle, so to speak, I sign the
14   first page and document that I've
15   reviewed all item families at all
16   stores, and then I sign that and store
17   that page.
18       His follow-up, I believe --
19       MR. JOHNSON: Store it in paper?
20       THE WITNESS: Paper.
21       MR. JOHNSON: Okay.
22       THE WITNESS: Yeah. Wet ink
23   signature.
24       MR. JOHNSON: Okay. So I just