

Administration
Office 614-466-1653
Fax 866-365-3465

July 23, 2019
*Via Electronic Mail*

Honorable Dan Aaron Polster
Carl B. Stokes United States Courthouse
801 West Superior Avenue, Courtroom 18B
Cleveland, Ohio 44113-1837
dan_polster@ohnd.uscourts.gov

cc:
Helen Norton, Judicial Assistant
Helen_Norton@ohnd.uscourts.gov
and
Katherine King, Deputy Clerk
Katherine_King@ohnd.uscourts.gov

RE: Plaintiffs' Renewed and Amended Notice of Motion for Certification of Rule 23(b)(3) Cities / Counties Negotiation Class, *In Re: National Prescription Opiate Litigation*, MDL No. 2804

Dear Judge Polster:

> **" '[I]f the health and comfort of the inhabitants of a State are threatened, the State is the proper party to represent and defend them.' "**
> - *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 604, (1982), *quoting Missouri v. Illinois*, 180 U.S. 208, 241 (1901).

On behalf of the State of Ohio, I express grave concerns regarding the July 9, 2019 Plaintiffs' Renewed and Amended Notice of Motion for Certification of Rule 23(b)(3) Cities / Counties Negotiation Class.  This class is proposed primarily to resolve claims derivative of the *parens patriae* authority of States.   Political subdivisions are precluded from pursuing *parens patriae* claims in federal courts.  *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004).  In short, neither America nor Ohio has sovereign cities or counties.  The negotiating class should not be certified.

My primary concern is both structural and constitutional.  This unprecedented endeavor by private class action counsel, seeking to represent every local political subdivision of every State of the Union ignores our structure of government and usurps the sovereignty of the States.  Plaintiffs attempt to insert themselves into negotiations between the States and the defendants in an effort to "extract the maximum amounts possible" for the political subdivisions. Plaintiffs' Counsel also seek to insert themselves between each State and its political subdivisions by "participat[ing] in any necessary negotiations to

allocate portions of any overall settlement between states and political subdivisions." Federal courts are not instrumentalities for political subdivisions to restructure the internal affairs of a State, i.e., the relation between a State and its component parts. *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 53-54 (1982) (noting that our system of government "**has no place for sovereign cities**"). Because of this, the proposed negotiating class is not in the public interest.

Additionally, the predominant issue for the 34,000 political subdivisions that plaintiffs' counsel seek to represent on an opt-out basis, is not liability as counsel contends. This is particularly true for a "negotiation class," where liability is essentially presumed.[1] The predominant issue for negotiating a settlement is remedy.  Counsel attempt to gloss over the remedy issue with a prepackaged distribution formula.  While I do not undertake to unpack the fairness of the proposed allocation, it is improper and unfair that the proposed class representatives all are larger political subdivisions.  This gives the appearance that smaller governments might not view the proposed allocation formula favorably.  This is particularly troublesome considering that the opioid epidemic hit rural counties much harder than urban counties.  One would think that the hardest hit putative class members would be class representatives.  But even more predominate is the self-admitted power grab being made by unelected private attorneys to control the distribution of public moneys within the States.

*Parens Patriae*

When ratifying the Constitution, the States delegated certain aspects of their sovereignty to the Federal Government.  However, the federal government, including this court, may "not exercise power in a fashion that impairs the States' integrity or their ability to function effectively in a federal system." *Nat'l League of Cities v. Usery*, 426 U.S. 833, 842-43, 96 S. Ct. 2465, 2470 (1976).

The U.S. Supreme Court has recognized each State has maintained quasi-sovereign interests though the *parens patriae* doctrine.  There are two legs of the *parens patriae* doctrine.  "First, a State has a quasi-sovereign interest in the health and well-being -- both physical and economic -- of its residents in general. Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 607, 102 S. Ct. 3260, 3269 (1982). *Parens patriae* standing remained firmly lodged with the States—and the States alone. *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 53-54 (1982). *See also*, *Mormon Church v. United States*, 136 U.S. 1, 57, 10 Sup. Ct. 792, 808, 34 L. Ed. 481 ("The state, as a sovereign, is the parens patriae.")

The federal republic is The United States of America, and not the United City-States of America or the United Counties of America.  Accordingly, "[t]he federal courts have unequivocally held that political subdivisions cannot bring claims as *parens patriae* because their power is derivative, not sovereign." Kathleen C. Engel, *Do Cities Have Standing? Redressing the Externalities of Predatory Lending*, 38 CONN. L. REV. 355, 365 (2006).  As the Supreme Court put it, our system of government "has no place for sovereign cities". *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 53-54 (1982).  The proposed

---

[1] Political subdivisions are creatures of statute, with different powers and authorities delegated to them in each state.  Accordingly, it is questionable that even liability could be litigated on a class-wide basis.

2

negotiating class, and perhaps this very litigation, threatens the sovereignty of the States like nothing else in recent history.  It seeks to represent not a single political subdivision asserting *parens patriae* standing, but all of them.  In other words, this motion seeks to permit the class to stand in the shoes of the States—nothing short of usurpation.

The plaintiffs are aware of the U.S. and State Constitutional problems they are creating.  Thus, they attempt to avoid stating that *parens patriae* is the basis of their claims.  Cities are often reluctant to classify their interests as quasisovereign even when that appears to be the basis for standing. Laura L. Gavioli, *Who Should Pay: Obstacles to Cities in Using Affirmative Litigation as a Source of Revenue*, 78 TUL. L. REV. 941, 959-60 (2004). This Court has noted the strained nature of the plaintiffs' claims. "While these allegations do not fit neatly into the legal theories chosen by Plaintiffs, they fit nevertheless." [Opinion and Order, Doc. #: 1203, at 39, PageID #: 29058 (Dec. 19, 2018)].  The reason they do not fit neatly is because the claims, if properly pled, are *parens patriae* claims and belong not to the plaintiffs, but to the States.

As this Court recognized, "It is accurate to describe the opioid epidemic as a man-made plague, twenty years in the making. The pain, death, and heartache it has wrought cannot be overstated. As this Court has previously stated, it is hard to find anyone in Ohio who does not have a family member, a friend, a parent of a friend, or a child of a friend who has not been affected." [Id. at 38, PageID #: 29057]. In their motion, Plaintiffs state this class is to remedy "the impact of the opioids epidemic on their communities, including the costs and challenges of battling the epidemic, and the financial and human strain of the law enforcement, health and welfare, and social services resources".  [Plaintiffs' Memorandum in Support of Renewed and Amended Motion for Certification of Rule 23(b)(3) Cities/Counties Negotiation Class, Doc #: 1820-1, PageID #:56658].

The universal impact on the residents of Ohio is the basis of the claims being litigated. This impact is directly to "the health and well-being -- both physical and economic -- of its residents in general", and is *parens patriae* in nature.  *Alfred L. Snapp & Son*, 458 U.S., at 607.   These claims belong to the States and cannot be pursued by political subdivisions.

*Statewide Concern Doctrine*

Within its state courts, Ohio enforces a form of the *parens patriae* doctrine through what is known as the Statewide Concern Doctrine.  This doctrine represents an exception to local "home rule" and gives the State authority over local matters where those local matters impact the general public.  "[E]ven if there is a matter of local concern involved, if the regulation of the subject matter effects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest." *Cleveland Electric Illuminating Co. v. Painesville*, 15 Ohio St. 2d 125, 129,239 N.E.2d 75, 78 (1968). *See also*, *Complaint of City of Reynoldsburg v. Columbus S. Power Co.*, 2012-Ohio-5270, ¶ 35, 134 Ohio St. 3d 29, 37, 979 N.E.2d 1229, 1237.  As mentioned above, this court has already noted the issue is statewide.  By arguing that they can represent a class of every Ohio political subdivision, Plaintiffs agree.

The plaintiffs' alleged purpose is "to establish and maintain an identified, unified, and durable nationwide body of cities and counties that can credibly claim to represent the best interest of all its Class members." [Plaintiffs' Renewed and Amended Motion for Certification of Rule 23(b)(3) Cities/Counties Negotiation Class, at 3, Doc #: 1820, PageID #:56633].  In other words, Plaintiffs' Counsel want to represent the United Cities & Counties

of America.  Such a political entity cannot be created while respecting the dual-sovereign system. A "class" that includes every Ohio political subdivisions has existed since 1803 when Ohio was granted Statehood and admitted into the Union.  It is not within the province of plaintiffs' counsel or this court to reorder the system of government adopted by State and Federal Constitutions.

This is not merely an academic debate.  The State of Ohio's ability to resolve its claims against the opioid defendants is seriously impinged by a purported national class action of local governments claiming the right to pursue overlapping claims.  No matter how useful and powerful Rule 23 and the MDL process may be, they must yield to the structural constitutions and the jurisdictional limitations of this Article III Court.  To do otherwise will allow plaintiffs' counsel to lord over the States by commanding the allegiance of all of the political subdivisions of each state.  Accordingly, the Statewide Concern and the *parens patriae* doctrines align to require the court to deny private counsel their requested lordship over Ohio's political subdivisions.

*Superiority*

The suits filed by State Attorneys General are superior to the negotiation class proposed here.  The States are permitted to pursue *parens patriae* claims.  Political subdivisions are not.  50 State Attorney Generals are better representatives of the people of their state (and the smaller political subdivisions) than private attorneys hired by the 51 largely urban cities and counties from only 30 states.   The States are also better positioned to do good work with the settlement dollars.  The distribution map available on plaintiffs' website demonstrates this.  Distributing a few thousand dollars to local communities is meaningless. It is the pooled impact of coordinated expenditure of the settlement dollars on a statewide basis that can best resolve this statewide problem.

As the Supreme Court unequivocally stated, " '[I]f the health and comfort of the inhabitants of a State are threatened, the State is the proper party to represent and defend them.' " *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 604, 102 S. Ct. 3260, 3267 (1982), *quoting Missouri v. Illinois*, 180 U.S. 208, 241 (1901).  With all due respect to Plaintiffs' Counsel, as Ohio Attorney General, I am best situated to represent the interests of the State of Ohio, including the 2,075 political subdivisions Plaintiffs' Counsel seek to represent.

Deferring to State Attorneys General will also prevent another travesty of Plaintiffs' Counsel's formula.  There is no requirement of a threshold level of agreement within a particular state.  Thus, while there are supermajority requirements within different classes, nothing protects the unified interests of State political subdivisions.

Finally, allowing the State Attorneys General to serve our constitutional roles will prevent this court from creating a class intended to negotiate against the States regarding the allocation of resources within each State.  Such a class would be nothing short of a federally "imposed displacement of state decisions [that will] substantially restructure traditional ways in which the local governments have arranged their affairs." *Nat'l League of Cities v. Usery*, 426 U.S., at 849 (1976).  Allowing State Attorneys General to negotiate on behalf of their States without the interference from local governments is superior because it keeps the federal judiciary from displacing the structure of State government.

*Opt-Out Class is Insufficient*

Even if this court were to push past the above concerns, this class should never be certified as an opt-out class.  Unelected, out-of-state attorneys, hired by out-of-state local

4

governments are not the representatives of the citizens of Ohio or its political subdivisions. At a minimum, this must be an "opt-in" class.

If plaintiffs intend to represent over 34,000 political subdivisions, some with various forms of charters or home rule, mostly led by elective representatives—and with no representative from 20 states—then plaintiffs should be required to obtain the affirmative opting-in of each class member. This is especially true here where the overwhelming difficulty of certifying a negotiating class of over 34,000 political subdivisions is the allocation of monetary payments among them.  The proposed negotiating class recognizes this difficulty and addresses it by not addressing it.  It leaves it to each county to negotiate with political subdivisions within its boundaries to distribute any funds.  This is naïvely both overbroad and overly narrow. In Ohio, for instance, municipalities often cross county lines. Political subdivisions also have the right to contract with one another for police, fire and EMS services.  They also have the right to create joint fire and EMS districts. There are mutual-aid agreements, and task forces, formed to address issues in multifaceted ways across jurisdictional boundaries.  Simply dumping cash upon a county and requiring its political subdivisions to work it out on their own or be bound by an arbitrary national formula abandons the heavy lifting of a "global resolution."

Also troubling and requiring an opt-in provision is that there is no adequate representative for Ohio's small governments.  The proposed class representatives from Ohio include three metropolitan counties and a city within one of them.  There is no representative for suburban or rural counties.  No representative of medium or small metropolitan areas. No representative for small cities or villages. No representative for townships—some of which are larger than many cities.

There is not a single representative from hard-hit southern Ohio.  Over Ohio's 9-year average, the number of solid opioid doses per person in Cuyahoga county *was less than half* that in each of Jackson, Vinton, Adams, Perry, Scioto and Ross Counties.  Summit and Franklin Counties also pale in comparison, both having averages less than two-thirds of each of the six hardest hit counties.  Because the negotiating class representatives have determined how to divide the pie before asking this court to command others to dine, and done so without including rural or suburban representation, any class should be opt-in.

*Conclusion*

The proposed negotiation class should not be certified.  Certification runs afoul of our Federal system of government, ignores the role of the States, and usurps the *parens patriae* standing of the States.  It also will delay final resolution of the Opioid Litigation and impinge the ability of the States to resolve their claims on behalf of their residents.

Yours,

Dave A. Yost
Ohio Attorney General


cc: Helen Norton, Judicial Assistant (Helen_Norton@ohnd.uscourts.gov)
    Katherine King, Deputy Clerk (Katherine_King@ohnd.uscourts.gov)