Highly Confidential - Subject to Further Confidentiality Review

```
 1            IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF OHIO

 3                     EASTERN DIVISION

 4

 5

    IN RE NATIONAL PRESCRIPTION   | Case No. 17-MD-2804

 6                                |

    OPIATE LITIGATION             | Hon. Dan A. Polster

 7                                |

    APPLIES TO ALL CASES          |

 8

 9                      - - -

10           Thursday, November 15, 2018

11                      - - -

12

         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER

13

                 CONFIDENTIALITY REVIEW

14

                        - - -

15

16

17

         Videotaped deposition of JEFF ABERNATHY,

18  held at the offices of Mitchell Williams,

    4206 South J.B. Hunt Drive, Suite 200, Rogers,

19  Arkansas, commencing at 9:37 a.m., on the above

    date, before Susan D. Wasilewski, Registered

20  Professional Reporter, Certified Realtime

    Reporter and Certified Realtime Captioner.

21

22

23                      - - -

24           GOLKOW LITIGATION SERVICES

         877.370.3377 ph | 917.591.5672 fax

25              deps@golkow.com
```

## Page 2

```
 1  APPEARANCES:
 2  CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO
    BY:  ZACHARY S. BOWER, ESQUIRE
 3      MICHAEL A. INNES, ESQUIRE
    5 Becker Farm Road
 4  Roseland, New Jersey 07068
    (973) 994-1700
 5  zbower@carellabyrne.com
    minnes@carellabyrne.com
 6  Representing Plaintiffs
 7
    JONES DAY
 8  BY:  PETER J. MAZZA, ESQUIRE
    4655 Executive Drive, Suite 1500
 9  San Diego, California 92121
    (858) 314-1200
10  pmazza@jonesday.com
    Representing Walmart
11
12  JONES DAY
    BY:  SCOTT B. ELMER, ESQUIRE
13  77 West Wacker
    Chicago, Illinois 60601
14  (312) 782-3939
    selmer@jonesday.com
15  Representing Walmart
16
    PELINI CAMPBELL & WILLIAMS LLC
17  BY:  CRAIG M. EOFF, ESQUIRE
    8040 Cleveland Avenue NW, Suite 400
18  North Canton, Ohio 44720
    (330) 305-6400
19  ceoff@pelini-law.com
    Representing Prescription Supply Inc.
20
21  BARBER LAW FIRM
    BY:  M. EVAN STALLINGS, ESQUIRE
22  425 West Capitol Avenue, Suite 3400
    Little Rock, Arkansas 72201
23  (501) 372-6175
    estallings@barberlawfirm.com
24  Representing Cardinal Health
25
```

## Page 3

```
 1  APPEARANCES VIA TELEPHONE AND STREAM:
 2  REED SMITH LLP
    BY:  ABIGAIL PIERCE, ESQUIRE
 3  1717 Arch Street, Suite 3100
    Philadelphia, Pennsylvania 19103
 4  (215) 241-7909
    Abigail.pierce@reedsmith.com
 5  Representing AmerisourceBergen Drug Corporation
 6
    MARCUS & SHAPIRA LLP
 7  BY:  DARLENE NOWAK, ESQUIRE
    One Oxford Centre, 35th Floor
 8  Pittsburgh, Pennsylvania 15219
    (412) 471-3490
 9  nowak@marcus-shapira.com
    Representing HBC Service Company
10
11  MORGAN, LEWIS & BOCKIUS LLP
    BY:  JAMES A. NORTEY, II, ESQUIRE
12  1000 Louisiana Street, Suite 4000
    Houston, Texas 77002-5005
13  (713) 890-5000
    james.nortey@morganlewis.com
14  Representing Rite Aid
15
    ROPES & GRAY LLP
16  BY:  TORRYN TAYLOR, ESQUIRE
    Three Embarcadero Center
17  San Francisco, California 94111
    (415) 315-6300
18  torryn.taylor@ropesgray.com
    Representing Mallinckrodt
19
20  BARTLIT BECK LLP
    BY:  ALEX HARRIS, ESQUIRE
21  1801 Wewatta Street, Suite 1200
    Denver, Colorado 80202
22  (303) 592-3100
    alex.harris@bartlit-beck.com
23  Representing Walgreens
24  ALSO PRESENT:
    DAN LAWLOR, Videographer
25  PAUL D. MORRIS, ESQUIRE, Walmart Legal
```

## Page 4

```
 1              - - -
 2            I N D E X
 3              - - -
 4  Testimony of:  JEFF ABERNATHY        Page
 5    DIRECT EXAMINATION BY MR. BOWER............  8
 6    CROSS-EXAMINATION BY MR. MAZZA................ 275
 7    REDIRECT EXAMINATION BY MR. BOWER.............. 278
 8
 9          E X H I B I T S
10       (Attached to transcript)
11  JEFF ABERNATHY DEPOSITION EXHIBITS        PAGE
```

```
11  Walmart-     07-6045 Pharmacy Logistics      21
12  Abernathy    Organizational Chart
    Exhibit 1    WMT_MDL_000012771
13
    Walmart-     Pharmacy Distribution           37
14  Abernathy    WMT_MDL_000012752
    Exhibit 2    Health & Wellness Distribution
15               WMT_MDL_000012737
16  Walmart-     E-mail - Subject: CII Limits    48
    Abernathy    WMT_MDL_000009319 and 9320
17  Exhibit 3
18  Walmart-     E-mail - Subject: CII Ordering  63
    Abernathy    07/23/12
19  Exhibit 4    WMT_MDL_000009321 through 9323
20  Walmart-     E-mail - Subject: Over 20 Report 76
    Abernathy    2.12.13
21  Exhibit 5    WMT_MDL_000009423 and 9424
22  Walmart-     E-mail - Subject: Over 20 Report 82
    Abernathy    7.3.13
23  Exhibit 6    WMT_MDL_000009987 through 9989
24
25
```

## Page 5

```
 1          E X H I B I T S
 2       (Attached to transcript)
 3  JEFF ABERNATHY DEPOSITION EXHIBITS        PAGE
```

```
 4  Walmart-     E-mail - Subject: Meeting Notes -  90
 5  Abernathy    Please Review
    Exhibit 7    WMT_MDL_000009872 through 9875
 6
    Walmart-     E-mail - Subject: Agenda        104
 7  Abernathy    WMT_MDL_000009838 through 9840
    Exhibit 8
 8
    Walmart-     E-mail - Subject: Reddwerks Order 112
 9  Abernathy    Alerts
    Exhibit 9    WMT_MDL_000017565 through 17569
10
    Walmart-     E-mail - Subject: Over 20 Report 117
11  Abernathy    4.3.14
    Exhibit 10   WMT_MDL_000009397 and 9398
12
    Walmart-     E-mail - Subject: Over 20 Report 123
13  Abernathy    8.14.14
    Exhibit 11   WMT_MDL_000009393 and 9394
14
    Walmart-     E-mail - Subject: Policy to be   129
15  Abernathy    Covered in Today's Call
    Exhibit 12   WMT_MDL_000017510 through 17514 and
16               19182 through 19184
17  Walmart-     E-mail - Subject: Over 20/50 Report 139
    Abernathy    WMT_MDL_000009807 and 9808
18  Exhibit 13
19  Walmart-     E-mail - Subject: SOM Interim   159
    Abernathy    Process - Launch Oct 27
20  Exhibit 14   WMT_MDL_000011656 through 11659
21  Walmart-     E-mail - Subject: Logistics SOM  176
    Abernathy    webform
22  Exhibit 15   WMT_MDL_000016261 through 16263
23  Walmart-     E-mail - Subject: Control Drug   179
    Abernathy    Monitoring
24  Exhibit 16   WMT_MDL_000009075
25
```

## Page 6

```
1           E X H I B I T S
2        (Attached to transcript)
3   JEFF ABERNATHY DEPOSITION EXHIBITS        PAGE
4   Walmart-    E-mail - Subject: Quantity Cuts    181
    Abernathy   WMT_MDL_000009277
5   Exhibit 17
6   Walmart-    E-mail - Subject: 405 report DC    185
    Abernathy   6045- Sept.
7   Exhibit 18  WMT_MDL_000042782 and 42783
8   Walmart-    E-mail - Subject: SOM web forms    188
    Abernathy   WMT_MDL_000016313
9   Exhibit 19
10  Walmart-    E-mail - Subject: Over 20 Report   203
    Abernathy   WMT_MDL_000030175 through 30177
11  Exhibit 20
12  Walmart-    E-mail - Subject: Over 20 Report   203
    Abernathy   WMT_MDL_000030184 through 30186
13  Exhibit 21
14  Walmart-    Health &Wellness POM Alerts Guide  212
    Abernathy   3/31/2016
15  Exhibit 22  WMT_MDL_000034340
16  Walmart-    E-mail - Subject: Oxy List Update  234
    Abernathy   WMT_MDL_000008070 and 8071
17  Exhibit 23
18  Walmart-    E-mail - Subject: H&W Weekly Update 254
    Abernathy   Week 2
19  Exhibit 24  WMT_MDL_000001004 and 1005
20  Walmart-    E-mail - Subject: MCKESSON AGREES  243
    Abernathy   TO PAY RECORD $150 MILLION
21  Exhibit 25  SETTLEMENT FOR FAILURE TO REPORT
                SUSPICIOUS ORDERS OF PHARMACEUTICAL
22              DRUGS
                WMT_MDL_000002729 through 2731
23
24
25
```

## Page 7

```
1           E X H I B I T S
2        (Attached to transcript)
3   JEFF ABERNATHY DEPOSITION EXHIBITS        PAGE
4
    Walmart-    E-mail - Subject: Control Flow     247
5   Abernathy   WMT_MDL_000034546 and 34547
    Exhibit 26
6
    Walmart-    Drug Diversion Review Documents    261
7   Abernathy   WMT_MDL_000045963 through 46007
    Exhibit 27
8
    Walmart-    Walmart Inc.'s Amended and         257
9   Abernathy   Supplemental Objections and
    Exhibit 28  Responses to Plaintiffs' First Set
10              of Interrogatories to Wal-Mart Inc.
11  Walmart-    E-mail - Subject: WV call follow up 269
    Abernathy   WMT_MDL_000011626 through 11629
12  Exhibit 29
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 8

```
1                    - - -
2       THE VIDEOGRAPHER:  We are now on the record.
3   My name is Dan Lawlor.  I'm a videographer with
4   Golkow Litigation Services.  Today's date is
5   November 15th, 2018, and the time is 9:37 a.m.
6       This video deposition is being held in
7   Rogers, Arkansas, in the matter of
8   National Prescription Opiate Litigation MDL
9   Number 2804.
10      The deponent today is Jeff Abernathy.  The
11  counsel will be noted on the stenographic record.
12      The court reporter is Susan Wasilewski and
13  will now swear in the witness.
14      THE COURT REPORTER:  Sir, would you raise
15  your right hand?
16      Do you solemnly swear or affirm the
17  testimony you're about to give will be the truth,
18  the whole truth, and nothing but the truth?
19      THE WITNESS:  Yes.
20      THE COURT REPORTER:  Thank you.
21      JEFF ABERNATHY, called as a witness by the
22  Plaintiffs, having been duly sworn, testified as
23  follows:
24          DIRECT EXAMINATION
25  BY MR. BOWER:
```

## Page 9

```
1   Q.  Good morning, Mr. Abernathy.  How are you
2   today?
3   A.  Good.
4   Q.  Thank you for being here.  We appreciate it.
5   A.  Thank you.
6   Q.  Have you ever been deposed before?
7   A.  No, sir.
8   Q.  No, sir.  So just -- before we get started,
9   let me go over a few important rules.  I think the
10  most important of which is make sure you understand
11  my questions.  So I would ask that at any point
12  during the day you don't understand the question,
13  will you let me know and I'll try to rephrase so you
14  understand it.
15      Do you understand that?
16  A.  Yes.
17  Q.  And if you don't ask me, if you don't let
18  know, I'll expect that you do understand the
19  question.
20  A.  Okay.
21  Q.  Okay?  And perhaps the most other important
22  rule is that you do not answer with a shaking your
23  head or a nod.  You must answer verbally yes or no.
24  Okay?
25  A.  Yes, sir.
```

| Page 10 |
|---|
| 1   MR. MAZZA: Mr. Bower, can I ask, are we -- |
| 2  are we going to enter our appearances on the |
| 3  record? |
| 4   THE COURT REPORTER: They'll be noted on the |
| 5  stenographic record. |
| 6   MR. MAZZA: Okay. Thanks. |
| 7  BY MR. BOWER: |
| 8   Q.  Mr. Abernathy, you understand you're under |
| 9  oath today, correct? |
| 10   A.  Yes, sir. |
| 11   Q.  Okay. Are you taking any medication or is |
| 12  there any other reason that would interfere with |
| 13  your ability to testify truthfully today? |
| 14   A.  No. |
| 15   Q.  Okay. Have you ever testified in any other |
| 16  type of legal proceeding other than a deposition? |
| 17   A.  No. |
| 18   Q.  How did you prepare for today's deposition? |
| 19   A.  I met with some Walmart legal people and |
| 20  some outside counsel this week. |
| 21   Q.  Who did you meet with at Walmart? |
| 22   A.  Paul was there. There were some other -- |
| 23  other guys that came in and out. I don't -- I don't |
| 24  know who they were. |
| 25   Q.  Okay. Approximately how many people did you |

| Page 11 |
|---|
| 1  meet with? |
| 2   A.  There was probably five or six people in |
| 3  there, most of the day. |
| 4   Q.  Okay. Were they all attorneys, do you know? |
| 5   A.  I believe they were. |
| 6   Q.  Do you know whether they were or not? |
| 7   A.  I don't know that they were. I -- I just -- |
| 8  I assumed they were. They were counsel, is what |
| 9  they said, so -- |
| 10   Q.  About how long did you meet with them? |
| 11   A.  We met about probably six hours on Tuesday |
| 12  and about the same amount of time on Wednesday. |
| 13   Q.  Did you review any documents during these |
| 14  meetings? |
| 15   A.  I saw a few documents. |
| 16   Q.  Did any of those documents refresh your |
| 17  recollection for today's testimony? |
| 18   A.  No, sir. |
| 19   Q.  Do you know whether all of those documents |
| 20  have been produced in this litigation? |
| 21   A.  I don't know. |
| 22   Q.  Do you understand that to the extent that |
| 23  those documents were not produced, you should have |
| 24  brought them with you here today? |
| 25   MR. MAZZA: I object. I understand that |

| Page 12 |
|---|
| 1  there is a dispute about that, and you've been in |
| 2  communication with Ms. Fulmerton from our office. |
| 3  But I can represent that all the documents that |
| 4  Mr. Abernathy reviewed have been produced. |
| 5   MR. BOWER: Okay. |
| 6  BY MR. BOWER: |
| 7   Q.  And when did you meet with outside counsel? |
| 8   A.  During the same time. |
| 9   Q.  Same time. Was outside counsel present for |
| 10  all those meetings? |
| 11   A.  Yes, sir. |
| 12   Q.  Other than the attorneys that sit here |
| 13  today, any other outside counsel that was present? |
| 14   A.  There were some other outside counsel that, |
| 15  like I said, they came in and out as well. |
| 16   Q.  Okay. So the folks who came out -- in and |
| 17  out were outside counsel or Walmart counsel? |
| 18   A.  They were both. |
| 19   Q.  Okay. Do you know the names of any of those |
| 20  folks? |
| 21   A.  One of them, her name was Tina. |
| 22   Q.  Okay. Any other names you recall? |
| 23   A.  No, sir. |
| 24   Q.  Can you briefly describe for us your |
| 25  education post high school? |

| Page 13 |
|---|
| 1   A.  I have a bachelor's degree in finance from |
| 2  the University of Louisiana at Monroe. |
| 3   Q.  What year did you graduate? |
| 4   A.  1997. |
| 5   Q.  Since 1997, have you received any other |
| 6  educational -- formal educational training? |
| 7   A.  No. |
|  |
| 23   Q.  Okay. So you graduated from college in |
| 24  1997, correct? |
| 25   A.  Yes, sir. |

Page 14

[redacted]

Page 15

[redacted]

Page 16

[redacted]

Page 17

[redacted]

Case: 1:17-md-02804-DAP Doc #: 1974-1 Filed: 07/24/19 6 of 72. PageID #: 209129



Highly Confidential - Subject to Further Confidentiality Review



Page 22

Page 24

15    Q.  Sir, were you aware in 2007, that Walmart,
16  as a distributor of controlled substances, had an
17  obligation to monitor for suspicious orders?
18    A.  I wouldn't -- I don't know that I was aware
19  of an obligation.  We did -- we did monitor for --
20  we did monitor orders, so --
21    Q.  Can you be more specific when you say "we
22  did monitor orders"?
23    A.  I mean, we -- we would print 222 forms every
24  day in this time frame.  So we would pull those 222
25  forms for however many stores we needed that day,

Page 23

Page 25

1   and we would print those 222 forms.  And the ladies
2   who were physically printing those forms, they
3   looked at those orders; and if they saw something
4   that maybe looked like it was kind of high, just
5   based on their knowledge of what they were doing,
6   they would -- they would let us know.





Page 30

Page 32

Page 31

Page 33

16    Q.  Sir, were you aware that in 2007, the nation
17  was undergoing an opioid epidemic?
18    A.  No, sir.
19    Q.  And when did you -- are you -- as you sit
20  here today, are you aware that the nation is
21  undergoing an opioid epidemic?
22    A.  I mean, yes, from what I've seen on TV.
23    Q.  Okay.  When was the first time you became
24  aware of it?
25    A.  I don't -- I don't know a date.  I mean --



Page 34

1    Q.   Approximately?
2    A.   Probably a year or so ago.
3    Q.   Of 2017?
4    A.   2016, like during the campaigns for
5    presidency, you know, it seems like it came up.



Page 38

Page 40

Page 39

Page 41



Page 42

23  A.  So the picking folks were responsible for
24  filling the order that came to them, yes.
25  Q.  And Walmart, in 2010, had a policy in place

Page 43

1  where the folks who were responsible for picking the
2  orders would also report to you if they saw anything
3  suspicious?
4  A.  I can't say that there was a policy stating
5  that.  They -- they would just do that.

Page 44

24  MR. BOWER:  Why don't we take a quick break?
25  We've been going about an hour.

Page 45

1  MR. MAZZA:  Okay.
2  MR. BOWER:  Just like five minutes.
3  MR. MAZZA:  Sure.
4  THE VIDEOGRAPHER:  Going off record.  The
5  time is 10:29.
6  (Recess from 10:29 a.m. until 10:42 a.m.)
7  THE VIDEOGRAPHER:  We're going back on the
8  record, beginning of Media File Number 2.  The
9  time is 10:42.
10  BY MR. BOWER:



Highly Confidential - Subject to Further Confidentiality Review



Page 50

Page 52

Page 51

Page 53

Highly Confidential - Subject to Further Confidentiality Review



Page 58



Page 59

6       So during this time period in 2012, let's
7   say an order for oxy 5 milligram comes in on a
8   Monday for 51 bottles.  Okay?
9       A.   For which drug?
10      Q.   Oxy 5 milligrams.
11      A.   Okay.
12      Q.   Okay?  You're supposed to have a process in
13  place, right, where you look at orders over 50,
14  correct?
15      A.   Yes.
16      Q.   Okay.  And what was the expectation as to --
17  with respect to when that order would be filled and
18  shipped, if the order came in on a Monday?
19      A.   So Monday morning, typically when Jimmie
20  came in, since he was the first one in, before we
21  started the pick process, he would pull all of those
22  orders and export it to a spreadsheet and then we
23  would, you know, sort those to show me orders or in
24  the order column, show me everything over 50, show
25  me all the oxy's over 30, and we would filter it out

Page 60

1   that way so that we could see here is all of my
2   oxy-30s that were over 20 and here's all the other
3   drugs that were over 50.
4       Q.   And if another dosage of oxycodone was over
5   50, what would you do?
6            MR. MAZZA:  Object; form.
7       Q.   I'll strike that.
8            If another order came in for another dosage
9   of oxycodone that was not oxy-30s, it was oxy-10s or
10  oxy-5s, that was over 50 bottles -- we're talking
11  bottles, correct?
12      A.   Yes.
13      Q.   Okay.  What would you do?
14      A.   So I guess I don't understand when you say
15  "another order."  Like the next store in line?
16      Q.   Well, let's -- let's take a step back.  All
17  right.
18      A.   Okay.
19      Q.   Go back to my first example, right.  A store
20  orders 51 bottles of oxy-5 milligrams on Monday.
21      A.   Okay.
22      Q.   The order comes in on Monday.  You get your
23  printout of that order.  Then what happens?
24      A.   So then we would send that over to the team,
25  the teams I spelled out, and we would say, "This

Page 61

1   store for this product ordered 51 bottles."
2       Q.   And from your perspective, what would happen
3   next?
4       A.   Then we would wait.  If they would send us
5   back whatever communication or if we needed to do
6   something with the order, we would just wait for
7   that.
8       Q.   And how would they inform you of what to do
9   with the order?
10      A.   E-mail.
11      Q.   And that's what happened on a daily basis,
12  correct?
13      A.   Yes, sir.
14      Q.   During this time period, when would you have
15  expected to hear back from them regarding what to do
16  with the order?
17      A.   So we shipped every day at 3:00 p m.  I mean
18  we had had discussion, that's the -- that's the time
19  we ship.  They had known that.  So if we didn't hear
20  anything back by 3:00 p.m., then we went ahead and
21  shipped the item.



Page 62

Page 63

Page 64

24 A. Yes, sir.
25 Q. Okay. And at this point in the day, at

Page 65

1 9:38 a.m., had he already reviewed that day's
2 orders?
3 A. Yes, sir.
4 Q. And he had decided to cut some orders,
5 correct?
6 A. Yes, sir.
7 Q. And he had decided to not cut other orders,
8 correct?
9 A. Yes, sir.
10 Q. Okay. Had he -- had -- strike that.
11 For the orders that he decided to cut, what
12 would be the basis for that decision?
13 MR. MAZZA: Object; foundation.
14 A. I -- I don't know. I mean --
15 Q. Well, sir, you also had -- this was also
16 your responsibility at the time period, correct?
17 A. It was my responsibility if I came in first
18 that day.
19 Q. Right. So what was the criteria for
20 cutting?
21 A. If anything over 20 bottles of oxycodone-30,
22 cut it to 20.



Highly Confidential - Subject To Further Confidentiality Review



Highly Confidential - Subject To Further Confidentiality Review



Page 74

Page 76

Page 75

20    Q.   You weren't aware of the epidemic, correct?
21         MR. MAZZA:  Objection; form.
22    A.   No, sir.

Page 77



Page 78

Page 79

Page 80

```
 2    Q.   And that was because Walmart had a strict
 3  policy that was based on a threshold number,
 4  correct?
 5    A.   The direction given to me was to cut
 6  anything Over 20 bottles on the 30, report anything
 7  over 50 bottles of anything else.
 8    Q.   And therefore the direction was to not
 9  report any order under 50 bottles unless it was
10  oxy-30, correct?
11    A.   Not to report anything under 50 for anything
12  other than oxy-30, yes, sir.
13    Q.   And when you say report, what do you mean?
14    A.   To notify these people on this list.
15    Q.   So it would be notify and either wait and
16  notify, and if you didn't hear anything, then to
17  ship?
18    A.   To notify and wait and if I didn't hear
19  anything, I just shipped.  I didn't notify that I
20  shipped it.
```

Page 81



Page 82

Page 84

Page 83

Page 85

Highly Confidential - Subject to Further Confidentiality Review



Page 86

Page 88

Page 87

Page 89





Page 94

Page 96

Page 95

Page 97

16    Q.   Sir, were you aware by this time in 2013 the
17  country was in the middle of an opioid epidemic?
18    A.   No, sir.



Page 98

Page 99

Page 100

Page 101



Page 102

Page 104

18    MR. MAZZA:  Do you want to --
19    MR. BOWER:  Let's do.
20    MR. BOWER:  Can we go off the record for a
21  minute.
22    (Discussion off the record.)
23  BY MR. BOWER:

Page 103

Page 105

17    Q.  Sure.  That's -- why don't we do this, then.
18  Why don't we take lunch now.
19    MR. MAZZA:  And come back here?
20    MR. BOWER:  Come back and start here since
21  it seems to be a new area.
22    THE VIDEOGRAPHER:  Going off the record.
23  The time is 12:12.
24    (Recess from 12:12 p.m. until 12:53 p.m.)
25    THE VIDEOGRAPHER:  We're back on the record.



Page 106

1    Beginning of Media File Number 3.  The time is
2    12:53.
3    BY MR. BOWER:
4        Q.   We're back on the record, Mr. Abernathy.
5            You understand you're still under oath, sir?
6        A.   Yes.

Page 108

Page 107

Page 109

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 118

Page 120

Page 119

Page 121



Page 122

24    A.  For the time period that we were doing the
25 Over 20 Report?

Page 123

1    Q.  Right.
2    A.  We would be the ones cutting them at the DC.
3    Q.  And someone --
4    A.  If we were instructed to do that.
5    Q.  Right.
6        And how would -- how would -- how would of
7 those -- those instructions come to you, via e-mail
8 or telephone?
9    A.  E-mail.
10    Q.  Do you recall an instance -- any instance
11 where you got an e-mail to cut an order?
12    A.  I don't remember any given instance to --
13 that we did that.
14    Q.  Do you remember that ever happening in this
15 four- to five-year time frame?
16    A.  In this time frame for the Over 20 Report, I
17 don't remember -- I don't remember me getting any
18 kind of a phone call or an e-mail to cut an order.
19    Q.  So you guys were running these reports daily
20 for four to five years, and you never recall
21 receiving any direction to cut an order; is that
22 correct?
23    A.  I don't remember -- I don't remember getting

Page 124

Page 125

Highly Confidential - Subject to Further Confidentiality Review





Page 130

Page 132

16    MR. BOWER:  Why don't we just pause and go
17  off the record for a minute and see if we can --
18    MR. MAZZA:  There are folks on the line,
19  right?
20    THE VIDEOGRAPHER:  We're going off the
21  record.  The time is 1:38.
22    (Recess from 1:38 p.m. until 1:43 p.m.)
23    THE VIDEOGRAPHER:  Going back on record.
24  Beginning of Media File Number 4.  The time is
25  1:43.

Page 131

Page 133

1  BY MR. BOWER:





Page 138

1    Q.   Are you familiar with any time period, based
2   on your experience at 6045, when an order that
3   showed up on an Over 20 Report had to wait four days
4   before it was shipped?
5    A.   For the Over 20 Report, I don't ever
6   remember holding an order during the time frame we
7   were using that report.

Page 139

Page 140

Page 141







Page 150

Page 152

14    Q.  Did you report those orders to the DEA?
15    A.  I did not.

Page 151

Page 153





Page 158

```
18      MR. MAZZA:  Zach, we've been going for over
19   an hour 45.  So if you want to -- whenever you
20   are done with --
21      MR. BOWER:  Sure.  That's fine.  We can take
22   a break now.  I think I'm done.
23      THE VIDEOGRAPHER:  Going off the record.
24   The time is 2:20.
25      (Recess from 2:20 p.m. until 2:41 p.m.)
```

Page 159

```
1      THE VIDEOGRAPHER:  We're going back on the
2   record the beginning of Media File Number 5.  The
3   time is 2:41.
```

Page 160

Page 161



Page 162

Page 164

Page 163

Page 165

Highly Confidential - Subject to Further Confidentiality Review



Page 166

Page 168

Page 167

Page 169

Highly Confidential - Subject To Further Confidentiality Review



Page 170

Page 171

Page 172

Page 173



Page 174

11    Q.   Do you know that, sir, do you know whether
12  people are dying from abusing these drugs?
13        MR. MAZZA:  Same objection.
14    A.   I mean, what I see on TV, yes, sir.
15    Q.   Other than what you've seen on TV and your
16  experience at work, did you know that people were
17  dying in 2007, 2008, 2009 from abusing these
18  schedule 2 narcotics?
19    A.   I didn't know.

Page 175

21    Q.   Has the opioid epidemic affected your
22  community at all?
23    A.   I mean, I'm sure it has but I don't -- I
24  don't know.
25    Q.   You don't know specifically one way or the

Page 176

1   other?
2     A.   No, sir.

Page 177

Highly Confidential - Subject To Further Confidentiality Review



Page 178

Page 180

Page 179

Page 181



Page 182

Page 184

Page 183

Page 185



Page 186

Page 188

Page 187

Page 189



Page 190

Page 192

Page 191

Page 193



Page 194

Page 195

Page 196

Page 197



Page 198

21    MR. MAZZA:  Zach, whenever you are at a good
22  spot.
23    MR. BOWER:  Why don't we do that, I'll
24  digest that answer and see if I have any
25  follow-up questions.

Page 199

1    MR. MAZZA:  I'm not trying to rush you.
2    MR. BOWER:  No.  I think it is a good time
3  because I --
4    MR. MAZZA:  Okay.
5    THE VIDEOGRAPHER:  Going off the record at
6  3:56.
7    (Recess from 3:56 p.m. until 4:14 p.m.)
8    THE VIDEOGRAPHER:  Going back on the record.
9  Beginning media file number 6.  The time is 4:14.

Page 200

Page 201





Page 206

Page 208

Page 207

Page 209



Highly Confidential - Subject to Further Confidentiality Review





Page 218

Page 220

```
1   2016?
2       A.   That there was a -- according to the TV,
3   that there was an epidemic.
```

Page 219

Page 221

```
22      Q.   At this point, were you aware of the
23  epidemic, sir?
24      A.   I knew that there was an issue, yes, sir.
25      Q.   What was your understanding of the issue in
```



Page 222

Page 223

Page 224

Page 225





Page 230

Page 232

Page 231

Page 233

25     MR. MAZZA: Zach, if we're going to go back



Page 234

1    to the DC, now might be a good time to take a --
2        MR. BOWER:  Let's just do a little bit
3    longer.
4        MR. MAZZA:  Yeah.
5        MR. BOWER:  A couple more before I go back
6    to the DC.
7        MR. MAZZA:  Are you okay with that?
8        THE WITNESS:  I'm fine.
9    BY MR. BOWER:
10       Q.  Do you want a break?  We can take a break
11   if --
12       A.  No, sir.  I'm fine.
13       Q.  Okay.

Page 236

Page 235

Page 237

Highly Confidential - Subject to Further Confidentiality Review



Page 238

Page 240

Page 239

Page 241



**Page 242**

14    MR. MAZZA:  Let's take that break before we
15  do the next document.
16    MR. BOWER:  Can we just do -- I mean, we're
17  taking a lot of breaks.
18    MR. MAZZA:  We've got one hour to go, so --
19  actually, now we have less than an hour to go.
20  And so I thought we'd take a break now and then
21  finish the hour.  So let's take a break before we
22  do that document.
23    MR. BOWER:  I don't know if it's -- we can
24  go off the record.
25    THE VIDEOGRAPHER:  Going off the record, the

**Page 243**

1  time is 5:20.
2    (Recess from 5:20 p.m. until 5:34 p.m.)
3    THE VIDEOGRAPHER:  We're going back on the
4  record, beginning of Media File Number 7.  The
5  time is 5:34.
6    (Abernathy Exhibit 25 was marked for
7  identification.)

**Page 244**

**Page 245**

18    Q.  Walmart had -- was doing business with
19  McKesson at the time, right?  Its pharmacies were
20  ordering from McKesson, right?
21    A.  Yes, sir.

Highly Confidential - Subject to Further Confidentiality Review



Page 246

Page 248

Page 247

Page 249





Page 254

2    Q.   In deciding whether to cut an order, you
3 never determined whether a pharmacy may have ordered
4 that same product from McKesson, did you?
5    A.   No, sir.
6    Q.   And you never determined whether -- you
7 never considered whether that pharmacy may have
8 ordered that product from AmerisourceBergen, did
9 you?
10    A.   No, sir.

Page 255

Page 256

Page 257

1     MR. BOWER: All right. Let's go off the
2 record for a minute.
3     THE VIDEOGRAPHER: Going off the record.
4 The time is 5:52.
5     (Recess from 5:52 p.m. until 5:57 p.m.)
6     THE VIDEOGRAPHER: We're back on record, the
7 beginning of Media File Number 8. The time is
8 5:57.
9     (Abernathy Exhibit 28 was marked for
10 identification.)

Highly Confidential - Subject to Further Confidentiality Review



Page 258

Page 260

Page 259

Page 261





Page 266

Page 267

19  Q.  Okay.  Would you agree that Schedule II
20  drugs have a high potential for abuse?
21  A.  I believe they have -- I believe personally
22  they have a -- they can be abused.
23  Q.  And what's that basis for your personal
24  belief?
25  A.  Just what I hear on TV and, you know,

Page 268

1  knowing that the drug is addictive.
2  Q.  You agree they are considered dangerous,
3  correct?
4  A.  Yes.

22  MR. BOWER:  I think I'm done.  Let's just go
23  off the record for a minute.
24  MR. MAZZA:  Sure.
25  THE VIDEOGRAPHER:  Going off the record.

Page 269

1  The time is 6:16.
2  (Recess from 6:16 p.m. until 6:20 p.m.)
3  THE VIDEOGRAPHER:  We're back on record,
4  beginning Media Number 9.  The time is 6:20.

Highly Confidential - Subject to Further Confidentiality Review

Page 270

Page 272

Page 271

Page 273

Highly Confidential - Subject to Further Confidentiality Review



Page 274

Page 276

Page 275

8      MR. BOWER:  Okay.  Nothing further.
9      MR. MAZZA:  Okay.  We can go -- let's go off
10   the record right now.
11      THE VIDEOGRAPHER:  Going off record, the
12   time is 6:30.
13      (Recess from 6:30 p.m. until 6:53 p.m.)
14      THE VIDEOGRAPHER:  We are going on record,
15   beginning of Media File Number 10.  The time is
16   6:53.
17           CROSS-EXAMINATION

Page 277



Page 278

Page 279

6    MR. MAZZA:  All right.
7    THE VIDEOGRAPHER:  All right.  This
8  concludes today's deposition, we're going off
9  record.  The time is 6:58.
10    (Discussion off the record.)
11    MR. MAZZA:  We reserve the witness's
12  signature and a pending review, and we ask that
13  it be marked highly confidential, also pending
14  review.
15    (Whereupon, the deposition concluded at
16  6:58 p.m.)
17
18
19
20
21
22
23
24
25

Page 280

1         C E R T I F I C A T E
2     I, SUSAN D. WASILEWSKI, Registered
3  Professional Reporter, Certified Realtime Reporter,
4  and Certified Realtime Captioner, do hereby
5  certify that, pursuant to notice, the deposition of
6  JEFF ABERNATHY was duly taken on Thursday,
7  November 15, 2018, at 9:37 a.m, before me.
8     The said JEFF ABERNATHY was duly sworn by me
9  according to law to tell the truth, the whole truth
10  and nothing but the truth and thereupon did testify
11  as set forth in the above transcript of testimony.
12  The testimony was taken down stenographically by me.
13  I do further certify that the above deposition is
14  full, complete, and a true record of all the
15  testimony given by the said witness, and that a
16  review of the transcript was requested.
17
18  _____
19  Susan D. Wasilewski, RPR, CRR, CCP, CMRS, FPR, CCR
20  (The foregoing certification of this transcript does
21  not apply to any reproduction of the same by any
22  means, unless under the direct control and/or
23  supervision of the certifying reporter.)
24
25

Page 281

1      INSTRUCTIONS TO WITNESS
2
3
4     Please read your deposition over carefully
5  and make any necessary corrections.  You should
6  state the reason in the appropriate space on the
7  errata sheet for any corrections that are made.
8
9     After doing so, please sign the errata sheet
10  and date it.  It will be attached to your
11  deposition.
12
13     It is imperative that you return the
14  original errata sheet to the deposing attorney
15  within thirty (30) days of receipt of the deposition
16  transcript by you.  If you fail to do so, the
17  deposition transcript may be deemed to be accurate
18  and may be used in court.
19
20
21
22
23
24
25

**Page 282**

```
 1      ------
 2      E R R A T A
 3      ------
 4  PAGE  LINE  CHANGE
 5  ____ ____ _____
 6  REASON: _____
 7  ____ ____ _____
 8  REASON: _____
 9  ____ ____ _____
10  REASON: _____
11  ____ ____ _____
12  REASON: _____
13  ____ ____ _____
14  REASON: _____
15  ____ ____ _____
16  REASON: _____
17  ____ ____ _____
18  REASON: _____
19  ____ ____ _____
20  REASON: _____
21  ____ ____ _____
22  REASON: _____
23  ____ ____ _____
24  REASON: _____
25
```

**Page 284**

```
 1
 2          LAWYER'S NOTES
 3  PAGE  LINE
 4  ____ ____ _____
 5  ____ ____ _____
 6  ____ ____ _____
 7  ____ ____ _____
 8  ____ ____ _____
 9  ____ ____ _____
10  ____ ____ _____
11  ____ ____ _____
12  ____ ____ _____
13  ____ ____ _____
14  ____ ____ _____
15  ____ ____ _____
16  ____ ____ _____
17  ____ ____ _____
18  ____ ____ _____
19  ____ ____ _____
20  ____ ____ _____
21  ____ ____ _____
22  ____ ____ _____
23  ____ ____ _____
24  ____ ____ _____
25  ____ ____ _____
```

**Page 283**

```
 1      ACKNOWLEDGMENT OF DEPONENT
 2
 3      I, _____, do hereby
 4  acknowledge that I have read the foregoing pages, 1
 5  through 283, and that the same is a correct
 6  transcription of the answers given by me to the
 7  questions therein propounded, except for the
 8  corrections or changes in form or substance, if any,
 9  noted in the attached Errata Sheet.
10
11
12  _____      _____
13  JEFF ABERNATHY            DATE
14
15
16
17
18  Subscribed and sworn to before me this
19  ____ day of _____, 20___.
20  My Commission expires: _____
21
22  _____
23  Notary Public
24
25
```