EXHIBIT 394

Highly Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
 2                   EASTERN DIVISION
 3   IN RE: NATIONAL        )   MDL No. 2804
     PRESCRIPTION OPIATE    )
 4   LITIGATION             )   Case No. 1:17-MD-2804
                            )
 5                          )   Hon. Dan A. Polster
     THIS DOCUMENT RELATES TO   )
 6   ALL CASES              )
                            )
 7
 8
 9                       __ __ __
10              Thursday, January 17, 2019
                         __ __ __
11
          HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
12                 CONFIDENTIALITY REVIEW
                         __ __ __
13
14
15
16        Videotaped Deposition of AARON BURTNER,
     held at Keller Rohrback LLP, 1201 Third
17   Avenue, Suite 3200, Seattle, Washington,
     commencing at 8:45 a.m. on the above date,
18   before Susan Perry Miller, Registered
     Diplomate Reporter, Certified Realtime
19   Reporter, Certified Realtime Captioner.
20
21
                         __ __ __
22
               GOLKOW LITIGATION SERVICES
23         877.370.DEPS | fax 917.591.5672
                   deps@golkow.com
24
25
```

```
 1    A P P E A R A N C E S:
 2

 3        LEVIN PAPANTONIO THOMAS MITCHELL
          RAFFERTY PROCTOR, P.A.
          BY:  WILLIAM C. BAKER, JR., ESQUIRE
 4            Of Counsel
          316 South Baylen Street
 5        Pensacola, Florida 32502
          (850) 435-7000
 6        Counsel for Plaintiffs
 7
 8        WEISMAN, KENNEDY & BARRIS CO., L.P.A.
          BY:  DANIEL P. GOETZ, ESQUIRE
 9            dgoetz@weismanlaw.com
              BRIAN ROOF, ESQUIRE
10            broof@weismanlaw.com
              (via teleconference)
11        101 West Prospect Avenue
          Midland Building, Suite 1600
12        Cleveland, Ohio 44115
          (216) 781-1111
13        Counsel for Plaintiffs
14
15        ZUCKERMAN SPAEDER LLP
          BY:  PAUL B. HYNES, JR., ESQUIRE
16            phynes@zuckerman.com
          1800 M Street, NW, Suite 1000
17        Washington, DC 20036
          (202) 778-1800
18        Counsel for CVS Indiana, LLC, CVS RX
          Services, Inc., and the Witness
19
20
          WILLIAMS & CONNOLLY LLP
21        BY:  JULI ANN LUND, ESQUIRE
              jlund@wc.com
22            (via teleconference)
          725 Twelfth Street, N.W.
23        Washington, D.C. 20005
          (202) 434-5000
24        Counsel for Cardinal Health, Inc.
25
```

```
 1        A P P E A R A N C E S, Continued:
 2
          JONES DAY
 3        BY:  NICOLE LANGSTON, ESQUIRE
               nlangston@jonesday.com
 4          (via teleconference)
          77 West Wacker
 5        Chicago, Illinois 60601
          (312) 782-3939
 6        Counsel for Walmart
 7
 8        REED SMITH LLP
          BY:  SHANA E. RUSSO, ESQUIRE
 9             srusso@reedsmith.com
               (via teleconference)
10        136 Main Street, Suite 250
          Princeton Forrestal Village
11        Princeton, New Jersey 08540
          (609) 987-0050
12        Counsel for AmerisourceBergen Drug
          Corporation
13
14        COVINGTON & BURLING LLP
          BY:  MICHAEL J. LANOSA, ESQUIRE
15             mlanosa@cov.com
               (via teleconference)
16        1999 Avenue of the Stars
          Los Angeles, California 90067-4643
17        (424) 332-4764
          Counsel for McKesson Corporation
18
19        BAKER HOSTETLER LLP
          BY:  MELISSA D. BERTKE, ESQUIRE
20             mbertke@bakerlaw.com
               (via teleconference)
21        127 Public Square
          Key Tower, Suite 2000
22        Cleveland, Ohio 44114
          (216) 621-0200
23        Counsel for Endo Health Solutions
          Inc., Endo Pharmaceuticals Inc., Par
24        Pharmaceutical, Inc. and Par
          Pharmaceutical Companies, Inc.
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A P P E A R A N C E S, Continued:

 2

 3        TUCKER ELLIS LLP
          BY:  ANDREA M. GLINKA PRZYBYSZ, ESQ.
 4             andrea.przybysz@tuckerellis.com
               (via teleconference)
 5        233 South Wacker Drive, Suite 6950
          Chicago, Illinois 60606
 6        (312) 624-6300
          Counsel for Janssen Pharmaceuticals
 7        and Johnson & Johnson

 8

 9    TRIAL TECHNICIAN:
10        WILLOW ASHLYNN,
          Golkow Litigation Services
11

12    VIDEOGRAPHER:
13        DAVID KIM,
          Golkow Litigation Services
14

15    ALSO PRESENT:
16        BRIAN ASQUITH, Weisman Kennedy
17        STEPHANIE HECKMAN, Paralegal
18        KAITLYN EEKHOFF, Motley Rice
          (via text streaming)
19

20
                     --o0o--
21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                        INDEX

 2                                        Page

 3    APPEARANCES                           2

 4

 5    EXAMINATION OF AARON BURTNER:

 6    BY MR. BAKER................................ 20

 7    BY MR. GOETZ............................... 327

 8    BY MR. BAKER.............................. 506

 9    BY MR. HYNES.............................. 517

10    BY MR. BAKER.............................. 524

11

12

13    CERTIFICATE                          541

14    ACKNOWLEDGMENT OF DEPONENT            542

15    ERRATA                               543

16    LAWYER'S NOTES                       544

17

18

19

20                    --oOo--

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    E X H I B I T   I N D E X
 2                       Description              Page
 3     CVS-Burtner       DEA Slides: Opioid Death  137
       Exhibit 1         Chart, Opioid Deaths &
 4                       Admissions 1999-2010,
                         Opioid Top 10 Kilograms
 5                       Narcotics 2014
 6     CVS-Burtner       Drug Fact Sheets for      130
       Exhibit 2         Hydrocodone, Oxycodone,
 7                       Narcotics
                         CVS-MDLT1-000055614
 8
       CVS-Burtner       CVS Suspicious Order      126
 9     Exhibit 3         Monitoring, May 2014
                         CVS-MDLT1-000081680
10
       CVS-Burtner       E-mail from Buzzeo to     144
11     Exhibit 4         Brown, 2/21/2008,
                         Subject: DEA Letters -
12                       SOMs, with Attachment(s)
                         CVS-MDLT1-000091508
13
       CVS-Burtner       E-mail from Schiavo to    146
14     Exhibit 5         Burtner, 5/8/2013, with
                         Attachment
15                       CVS-MDLT1-000055266
16     CVS-Burtner       DEA, FDA, Osha            167
       Exhibit 6         Regulatory Update
17                       CVS-MDLT1-000061121
18     CVS-Burtner       "SOM Program," re DEA's   168
       Exhibit 7         "Know Your Customer"
19                       policy
                         CVS-MDLT1-000002188
20
       CVS-Burtner       E-mail Chain ending with  171
21     Exhibit 10        E-mail from Mortelliti
                         to Devlin, 2/9/2011,
22                       Subject: FW: The CVS
                         Retunement, with
23                       Attachment(s)
                         CVS-MDLT1-000061141
24
25
```

| | Description | Page |
|---|---|---|
| CVS-Burtner Exhibit 11 | E-mail Chain ending with E-mail from Hinkle to Tulley and Burtner, 11/2/2012, Subject: FW: SOM Report Attorney Client Privilege, with Attachment(s) CVS-MDLT1-000109623 | 190 |
| CVS-Burtner Exhibit 12 | E-mail Chain ending with E-mail from Mortelliti to Williamson, June 30, 2010, Subject: SOM Update CVS-MDLT1-000088737 | 234 |
| CVS-Burtner Exhibit 13 | E-mail Chain ending with E-mail from Mortelliti to Devlin, 3/5/2010, Subject: FW: Adjustment to the CVS SOM CVS-MDLT1-000111260 | 220 |
| CVS-Burtner Exhibit 14 | E-mail Chain ending with E-mail from Santhoshraj to Mortelliti, 3/10/2010, Subject: RE: Adjustment to the CVS SOM CVS-MDLT1-000110439 | 228 |
| CVS-Burtner Exhibit 15 | Memo to Frank Devlin from John Mortelliti dated August 13, 2010, Subject: Control Drug IRR Update CVS-MDLT1-000034183 | 216 |
| CVS-Burtner Exhibit 18 | E-mail Chain ending with E-mail from Williamson to Mortelliti, February 08., 2011, Subject: RE: Update CVS-MDLT1-000061142 | 199 |

| | | Description | Page |
|---|---|---|---|
| CVS-Burtner Exhibit 22 | | "Suspicious Order Monitoring for PSE/Control Drugs, Summary of Key Concepts and Procedures, August 27, 2010" CVS-MDLT1-000061191 | 202 |
| CVS-Burtner Exhibit 23 | | E-mail Chain ending with E-mail from Hinkle to Devlin, 1/27/2011, Subject: FW: IRR Narratives, with Attachment(s) CVS-MDLT1-000112597 | 241 |
| CVS-Burtner Exhibit 24 | | E-mail Chain ending with E-mail from Cain to Mortelliti and Hinkle, 1/27/2011, Subject: IRR Narratives, with Attachment(s) CVS-MDLT1-000109849 | 245 |
| CVS-Burtner Exhibit 25 | | E-mail from Devlin to Hughes, 5/17/2011, Subject: Control Drug Suspicious Order Monitoring.doc, with Attachment(s) CVS-MDLT1-000057736 | 249 |
| CVS-Burtner Exhibit 34 | | List I Chemicals (PSE, EPH) and Control Drug Policy & Procedure, Logistics IRR Analyst-Suspicious Order Monitoring (SOM) Program, Effective Date June 28, 2011 CVS-MDLT1-000009812 | 123 |
| CVS-Burtner Exhibit 37 | | E-mail Chain ending with E-mail from Burtner to Lawson, 5/31/2012, Subject: RE: Control/PSE IRR dated 5/30/12 CVS-MDLT1-000019682 | 98 |

Highly Confidential - Subject to Further Confidentiality Review

| | Description | Page |
|---|---|---|
| CVS-Burtner Exhibit 38 | CVS Corporation Control Drug Top 10 Stores by DC - WN, 05-31-12 CVS-MDLT1-000019667 | 99 |
| CVS-Burtner Exhibit 39 | CVS Corporation Control Drug Top 10 Stores by DC - HI, 05-31-12 CVS-MDLT1-000019552 | 107 |
| CVS-Burtner Exhibit 40 | E-mail Chain ending with E-mail from Lawson to Burtner, 6/8/2012, Subject: FW: Top 10 Report Review CVS-MDLT1-000019491 | 109 |
| CVS-Burtner Exhibit 41 | E-mail Chain ending with E-mail from Hinkle to Andrade, 7/10/2012, Subject: FW: Attorney/Client Privileged Information CVS-MDLT1-000083855 | 258 |
| CVS-Burtner Exhibit 44 | E-mail from Burtner to Hinkle, 9/7/2012, Subject: Required Headcount to Complete IRR SOM Process.docx, with Attachment CVS-MDLT1-000008248 | 74 |
| CVS-Burtner Exhibit 46 | Pharmacy/DC Ordering Process conference call recap, AGI/CVS Discussion, 10/5/12 CVS-MDLT1-000083881 | 44 |
| CVS-Burtner Exhibit 47 | E-mail from Burtner to Hinkle, 10/10/2012, Subject: Justification CVS-MDLT1-000033573 | 25 |

Highly Confidential – Subject to Further Confidentiality Review

| | Description | Page |
|---|---|---|
| CVS-Burtner Exhibit 48 | E-mail from Burtner to Campbell, 10/11/2012, Subject: Loss Prevention Analyst - Job Description/Work Instruction, with Attachment(s) CVS-MDLT1-000009810 | 40 |
| CVS-Burtner Exhibit 49 | E-mail Chain ending with E-mail from Burtner to Tulley and Hinkle, 11/11/2012, Subject: RE: Recap progress made CVS-MDLT1-000055834 | 212 |
| CVS-Burtner Exhibit 52 | "Suggested Questions a Distributor should ask prior to shipping controlled substances," October 20, 2009 CVS-MDLT1-000100088 | 316 |
| CVS-Burtner Exhibit 53 | SOM Due Diligence Guidance Document CVS-MDLT1-000057741 | 320 |
| CVS-Burtner Exhibit 54 | "Some Due Diligence Questions" CVS-MDLT1-000014198 | 327 |
| CVS-Burtner Exhibit 55 | E-mail Chain ending with E-mail from Burtner to Pike and Hinkle, 10/31/2012, Subject: RE: Todays IRR CVS-MDLT1-000083056 | 72 |
| CVS-Burtner Exhibit 56 | E-mail Chain ending with E-mail to Hinkle from Devlin, 9/12/2012, Subject: FW: Maximum Cutoffs on IRR 9/11/12 CVS-MDLT1-000109941 | 68 |

| | Description | Page |
|---|---|---|
| CVS-Burtner Exhibit 75 | E-mail Chain ending with E-mail from Burtner to Schiavo, 4/26/2013, Subject: RE: Order Flagging Reasons CVS-MDLT1-000055291 | 271 |
| CVS-Burtner Exhibit 80 | E-mail from Burtner to Pike, 6/10/2013, Subject: SOM CVS-MDLT1-000009678 | 41 |
| CVS-Burtner Exhibit 81 | E-mail from Burtner to Baker, 6/11/2012, Subject: FW: Kelly Baker CVS-MDLT1-000009683 | 508 |
| CVS-Burtner Exhibit 82 | E-mail Chain ending with E-mail from Schiavo to Bourque and others, July 02, 2013, Subject: FW: Archer SOM CVS-MDLT1-000076116 | 509 |
| CVS-Burtner Exhibit 83 | E-mail Chain ending with E-mail from Baker to Schiavo and others, July 09, 2013, Subject: RE: Archer SOM CVS-MDLT1-000076115 | 510 |
| CVS-Burtner Exhibit 84 | E-mail Chain ending with E-mail from Baker to Nicastro, 7/17/2013, Subject: FW: Archer SOM CVS-MDLT1-000076114 | 512 |
| CVS-Burtner Exhibit 85 | E-mail Chain ending with E-mail from Burtner to Eck, 9/17/2013 CVS-MDLT1-000099708 | 513 |
| CVS-Burtner Exhibit 88 | Store Metric Sheet CVS-MDLT1-000080069 | 314 |

Highly Confidential - Subject to Further Confidentiality Review

| | Description | Page |
|---|---|---|
| CVS-Burtner Exhibit 97 | CVS Distribution Center, Controlled Drug - DEA Standard Operating Procedures Manual, Effective Date 12/1/07 CVS-MDLT1-000008506 | 115 |
| CVS-Burtner Exhibit 400 | E-mail from Burtner to Molina, 8/11/2012; Subject: Attorney/Client Privilege - Project Plan CVS-MDLT1-000114320 | 375 |
| CVS-Burtner Exhibit 401 | IRR SOM Review Project Plan Phase 1 CVS-MDLT1-000114321 | 375 |
| CVS-Burtner Exhibit 402 | E-mail from Burtner to Miller and others, December 24, 2012; Subject: Control IRR dated 12/23/12 stores [redacted] CVS-MDLT1-0000003166 | 387 |
| CVS-Burtner Exhibit 404 | E-mail from Helfrich to Deaton and others, February 07, 2014, Subject: Control/PSE IRR dated 2/6/14 Store 5949; Store 3992; Store 3314 IN CVS-MDLT1-0000008496 | 389 |
| CVS-Burtner Exhibit 405 | List I Chemicals (PSE, EPH) and Control Drug Policy & Procedure, Logistics IRR Analyst - Suspicious Order Monitoring (SOM) Program, Effective Date June 28, 2011 CVS-MDLT1-000025018 | 435 |
| CVS-Burtner Exhibit 406 | Flowchart, "Draft IRR SOM Process" CVS-MDLT1-000109874 | 328 |

Highly Confidential - Subject to Further Confidentiality Review

| | Description | Page |
|---|---|---|
| CVS-Burtner Exhibit 407 | Item Review Report dated 12/30/2012 CVS-MDLT1-000011359 | 331 |
| CVS-Burtner Exhibit 409 | Irregular Order - DC Communication dated 11/19/2012 CVS-MDLT1-000030490 | 334 |
| CVS-Burtner Exhibit 410 | Irregular Order - Logistics Communication Submitted by Aaron Burtner, 1/9/2013 CVS-MDLT1-000030489 | 335 |
| CVS-Burtner Exhibit 411 | E-mail from Burtner to Mortelliti, 6/18/2012, Subject: Attorney Client Privilege - LP Analyst Time Study 6 15 12.xlsx, with Attachment CVS-MDLT1-000112657 | 341 |
| CVS-Burtner Exhibit 412 | E-mail from Burtner to Mortelliti, 6/19/2012, Subject: Attorney Client Privilege - LP Analyst Time Study 6 18 12.xlsx, with Attachment CVS-MDLT1-000112648 | 344 |
| CVS-Burtner Exhibit 413 | E-mail from Burtner to Mortelliti, 6/21/2012, Subject: Attorney Client Privilege - LP Analyst Time Study 6 20 12.xlsx, with Attachment CVS-MDLT1-000112644 | 347 |
| CVS-Burtner Exhibit 414 | E-mail from Burtner to Mortelliti, 7/6/2012, Subject: Attorney Client Privilege - LP Analyst Time Study 7 5 12.xlsx, with Attachment CVS-MDLT1-000112676 | 353 |

Highly Confidential – Subject to Further Confidentiality Review

| | Description | Page |
|---|---|---|
| CVS-Burtner Exhibit 415 | E-mail from Burtner to Hinkle, 7/13/2012, with Attachment(s) CVS-MDLT1-000112680 | 355 |
| CVS-Burtner Exhibit 416 | E-mail from Burtner to Hinkle, 7/19/2012, Subject: Attorney Client Privilege - LP Analyst Time Study 7 18 12.xlsx, with Attachment CVS-MDLT1-000112690 | 363 |
| CVS-Burtner Exhibit 417 | E-mail from Burtner to Hinkle, 8/23/2012, Subject: Attorney Client Privilege - LP Analyst Time Study 8 22 12.xlsx, with Attachment CVS-MDLT1-000112595 | 364 |
| CVS-Burtner Exhibit 418 | E-mail from Burtner to Hinkle, 9/10/2012, Subject: Attorney Client Privilege - LP Analyst Time Study 9 7 12.xlsx, with Attachment CVS-MDLT1-000112698 | 365 |
| CVS-Burtner Exhibit 422 | VIPERx PDMR High Priority Report CVS-MDLT1-000074450 | 382 |
| CVS-Burtner Exhibit 424 | E-mail from Schiavo to Bourque and others, 11/29/2012, Subject: Privileged and Confidential - SOM Process Documentation CVS-MDLT1-000083064 | 367 |
| CVS-Burtner Exhibit 425 | "Opportunities - Current SOM Process" CVS-MDLT1-000083065 | 367 |

Highly Confidential - Subject to Further Confidentiality Review

| | | Description | Page |
|---|---|---|---|
| | CVS-Burtner Exhibit 428 | CVS Logistics Loss Prevention Work Instruction, Irregular Order Review Process, Current Revision Date: 5/3/12 CVS-MDLT1-000009816 | 446 |
| | CVS-Burtner Exhibit 429 | E-mail from Burtner to Campbell, 10/11/2012, Subject: Loss Prevention Analyst - Job Description/Work Instruction CVS-MDLT1-000009810 | 446 |
| | CVS-Burtner Exhibit 431 | Columnar Report, 12/31/2012 CVS-MDLT1-000007622 | 418 |
| | CVS-Burtner Exhibit 432 | Item Review Report - Cont, 12/31/12 CVS-MDLT1-000011260 and 11264 | 429 |
| | CVS-Burtner Exhibit 436 | E-mail Chain ending with E-mail from Burtner to Pike and others, 11/9/2012, Re: Todays IRR CVS-MDLT1-000055836 | 431 |
| | CVS-Burtner Exhibit 437 | IRR dated 01/20/2011 CVS-MDLT1-000100925 | 462 |
| | CVS-Burtner Exhibit 438 | IRR dated 05/27/2011 CVS-MDLT1-000102803 | 463 |
| | CVS-Burtner Exhibit 439 | Track One CVS Store Information CVS-MDLT1-000007362 | 477 |
| | CVS-Burtner Exhibit 440 | Printout of Spreadsheet(s) CVS-MDLT1-000010268 - CVS-MDLT1-000010521 | 479 |

Highly Confidential - Subject to Further Confidentiality Review

| | | Description | Page |
|---|---|---|---|
| 1 | | Description | Page |
| 2 | CVS-Burtner Exhibit 441 | December 2010 PSE IRR Recap | 480 |
| 3 | | CVS-MDLT1-000009740 | |
| 4 | CVS-Burtner Exhibit 443 | E-mail from Nicastro to Gillen, 11/14/2013, | 495 |
| 5 | | Subject: Closing audit CVS-MDLT1-000022284 | |
| 6 | | | |
| 7 | CVS-Burtner Exhibit 444 | E-mail from Gillen to Nicastro and Ratcliff, 11/25/2013, Subject: CVS | 496 |
| 8 | | Store #06880 & 6757 CVS-MDLT1-000076135 | |
| 9 | | | |
| 10 | CVS-Burtner Exhibit 445 | IRR dated 01/30/2011 CVS-MDLT1-000100925 | 463 |
| 11 | CVS-Burtner Exhibit 451 | E-mail from Burtner to Vanelli and Hinkle, | 393 |
| 12 | | 12/20/2012, Subject: Attorney Client | |
| 13 | | Privilege - Store Metrics Report | |
| 14 | | CVS-MDLT1-000109775 | |
| 15 | CVS-Burtner Exhibit 455 | E-mail from Burtner to Campbell, 10/11/2012, | 475 |
| 16 | | Subject: Loss Prevention Analyst - Job | |
| 17 | | Description/Work Instruction | |
| 18 | | CVS-MDLT1-000009810 | |
| 19 | CVS-Burtner Exhibit 462 | E-mail from Burtner to Lawson and Hinkle, | 328 |
| 20 | | 3/26/2012, No Subject CVS-MDLT1-000109870 | |
| 21 | | | |
| 22 | CVS-Burtner Exhibit 500 | Handwritten Chart Regarding Time Studies and IRRs, 3 pages, No | 505 |
| 23 | | Bates | |
| 24 | CVS-Burtner Exhibit 501A | First Half of Large Demonstrative Exhibit of | 505 |
| 25 | | Taped Pages | |

Highly Confidential - Subject to Further Confidentiality Review

| | Description | Page |
|---|---|---|
| 1 | | |
| 2 | CVS-Burtner | Second Half of Large | 505 |

CVS-Burtner · Exhibit 501B · Demonstrative Exhibit of Taped Pages

--oOo--

Highly Confidential - Subject to Further Confidentiality Review

```
 1              (Thursday, January 17, 2019, 8:45 a.m.)

 2                   THE VIDEOGRAPHER:  We are now

 3              on the video record.  My name is David

 4              Kim.  I'm a videographer for Golkow

 5              Litigation Services.  Today's date is

 6              January 17th, 2019, and the time is

 7              8:45 a.m.

 8                   This video deposition is being

 9              held in Seattle, Washington in the

10              matter of National Prescription Opiate

11              Litigation, MDL 2805, for the

12              U.S. District Court, the Northern

13              District of Ohio, Eastern Division.

14                   The deponent is Aaron Burtner.

15                   Will counsel please identify

16              themselves for the record.

17                   MR. BAKER:  This is William

18              Baker for the plaintiffs.

19                   MR. GOETZ:  Dan Goetz on behalf

20              of the plaintiffs.

21                   MR. HYNES:  Paul Hynes on

22              behalf of CVS Indiana LLC,

23              CVS RX Services, Inc., and the

24              witness, Aaron Burtner.

25                   THE REPORTER:  Would those on
```

```
 1          the phone announce, please?

 2               MS. BERTKE:  Melissa Bertke

 3          from -- sorry.  Melissa Bertke from

 4          BakerHostetler on behalf of the Endo

 5          Defendants.

 6               MR. ROOF:  Brian Roof on behalf

 7          of plaintiffs.

 8               MR. LANOSA:  This is Michael

 9          Lanosa on behalf of McKesson.

10               MS. LANGSTON:  Nicole Langston

11          from Jones Day on behalf of Walmart.

12               MS. LUND:  Juli Ann Lund from

13          Williams & Connolly on behalf of

14          Cardinal Health.

15               MS. RUSSO:  Shana Russo of Reed

16          Smith on behalf of AmerisourceBergen

17          Drug Corporation.

18               MS. PRZYBYSZ:  Andrea Przybysz

19          from Tucker Ellis on behalf of J&J and

20          Janssen.

21               THE VIDEOGRAPHER:  The court

22          reporter is Susan Miller and will now

23          swear in the witness.

24               MR. BAKER:  Before we do that,

25          could everybody on the phone, please,
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              please double-check, triple-check,

 2         that you have your mute button on?  I

 3         appreciate it.  Thank you.

 4              (Witness sworn by the

 5         reporter.)

 6                  P R O C E E D I N G S

 7                  AARON BURTNER,

 8    having taken an oath to tell the truth, the

 9    whole truth, and nothing but the truth,

10    testified as follows:

11                    EXAMINATION

12    QUESTIONS BY MR. BAKER:

13         Q.    Mr. Burtner, the arrangement

14    here today is you are represented by counsel

15    seated to your left, Mr. Paul Hynes, correct?

16         A.    Yes.

17         Q.    Okay.  And Mr. Hynes has met

18    with you for the last two days to prepare you

19    for your deposition?  Is that correct?

20         A.    Yes.

21         Q.    You're no longer employed by

22    CVS.  In fact, you live in Seattle,

23    Washington, which is where we are today.  Is

24    that correct?

25         A.    That is correct.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          Q.      Okay.  And you worked for CVS

 2    from 2000 what to 2012?

 3          A.      2010 to 2012.

 4          Q.      Okay.  When you started at CVS,

 5    what was your position?

 6          A.      My original position was loss

 7    prevention supervisor.

 8          Q.      And when you quit CVS, what was

 9    your position?

10          A.      SOM manager.

11          Q.      Give me the month that you

12    started in 2010 and the month that you quit

13    in 2012.

14                  MR. HYNES:  Objection.

15    Compound.

16                  Go ahead.

17          A.      Sorry, one clarification.  I

18    was there until 2013.  June of 2010 until

19    June of 2013.

20    QUESTIONS BY MR. BAKER:

21          Q.      Okay.  What are you currently

22    doing here in Seattle?

23          A.      I am currently employed by

24    Amazon.

25          Q.      Okay.  What have you done to
```

```
 1    prepare for your deposition?

 2         A.     I have met with Paul.

 3         Q.     Mr. Hynes?

 4         A.     Mr. Hynes, and a few other

 5    associates with his law firm, and attorneys

 6    from within CVS.

 7         Q.     Okay.  You know Mr. Hynes

 8    represents CVS in this case, he and his law

 9    firm, you know that?

10         A.     Yes.

11         Q.     Okay.  When did Mr. Hynes

12    become your personal attorney?

13         A.     My personal...

14         Q.     He's here today representing

15    you; you stated that.

16         A.     Okay.

17         Q.     When did he become your

18    personal attorney?

19         A.     I believe I first spoke with

20    Mr. Hynes in November of -- approximately

21    November of 2018.

22         Q.     Okay.  That's when you got

23    notice that you were going to have to testify

24    in this case?

25         A.     I believe so.
```

```
 1          Q.     You know what this case is

 2     about?

 3          A.     Yes.

 4          Q.     Okay.  You know this is about

 5     the national opioid crisis and distributors'

 6     roles in that crisis; you understand that?

 7          A.     Yes.

 8          Q.     Okay.  And you've studied

 9     documents in relation to that crisis in

10     preparation for your deposition, have you

11     not?

12                 MR. HYNES:  Objection to the

13          form.  Instruct the witness not to

14          answer to the extent that it gets into

15          prep with counsel.

16     QUESTIONS BY MR. BAKER:

17          Q.     Okay.  You can tell me what

18     you've reviewed.  You can't tell me what your

19     conversation was with your counsel, but you

20     can certainly tell me what you've reviewed.

21                 MR. HYNES:  And I disagree.  I

22          object.  He will not tell you what he

23          reviewed.  He can tell you he reviewed

24          documents.  We're not going to talk

25          about what documents he reviewed.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              That is protected by work product.

 2                   MR. BAKER:  That, I disagree

 3         with.  Let's go off record for a

 4         second.

 5                   THE VIDEOGRAPHER:  We are now

 6         going off the record, and the time is

 7         8:50 a.m.

 8                   (Recess taken, 8:50 a.m. to

 9         8:51 a.m.)

10                   THE VIDEOGRAPHER:  We are now

11         going back on the record, and the time

12         is 8:51 a.m.

13    QUESTIONS BY MR. BAKER:

14         Q.    When you left CVS's employment

15    and came to Amazon in Seattle, did you take

16    any CVS documents with you?

17         A.    No.

18         Q.    Okay.  So everything that

19    you've reviewed is something that has been

20    provided by CVS to you to review.  Is that

21    correct?

22                   MR. HYNES:  You can answer that

23         question.

24         A.    Yes.

25                        --oOo--
```

```
 1    QUESTIONS BY MR. BAKER:

 2         Q.    And Mr. Hynes, the lawyer

 3    sitting next to you, provided that to you.

 4    Is that right?

 5         A.    Yes.

 6         Q.    Okay.  Do you have any problem

 7    with your memory at all?

 8         A.    No.

 9         Q.    Okay.  Are you on any

10    medication that would cause you to have a

11    lapse of memory of any type today?

12         A.    No.

13         Q.    Okay.  Do you feel prepared for

14    your deposition today?

15              MR. HYNES:  Objection to form.

16    QUESTIONS BY MR. BAKER:

17         Q.    Do you feel prepared?

18         A.    To the best of my ability.

19         Q.    Okay.  Let's go to document

20    number 47.

21              (CVS-Burtner Exhibit 47 was

22         marked for identification.)

23              MR. BAKER:  Hand him a copy.

24              MR. HYNES:  Thank you.

25                   --oOo--
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    QUESTIONS BY MR. BAKER:

 2         Q.    Okay.  I've handed you document

 3    No. 47.  Do you recognize this e-mail, Aaron

 4    Burtner, 10/10/12?

 5         A.    I don't recall sending this

 6    document.

 7         Q.    All right.  Let's see if we can

 8    get some ground rules here.  I'm going to ask

 9    you very simple questions, and for instance,

10    this e-mail has your name on it.  It's

11    blatantly obvious that it has your e-mail

12    name on it.  And throughout this whole

13    litigation -- please look at me.

14         A.    Yes.

15         Q.    I'm getting a lot of "I don't

16    remember, I may have, I don't know."

17              Well, this is so obvious that

18    you can look at it and just obviously tell

19    the answer, yes, you wrote the e-mail.

20              So this is the question:  Did

21    you write this e-mail?

22              MR. HYNES:  Objection to the

23         colloquy.  The witness said he doesn't

24         recall sending the e-mail.

25                        --oOo--
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1     QUESTIONS BY MR. BAKER:

 2          Q.     Okay.  Let me explain this to

 3     you.  You told me you don't have any problem

 4     with your memory, correct?

 5          A.     Yes.

 6          Q.     Okay.  I'm going to ask you

 7     very simple questions, and I'm not going to

 8     play games all day long about "I don't

 9     remember."  This has gone on with every

10     single witness in this case.  It's because

11     they're meeting with counsel and they're

12     saying "I don't remember."

13                 Well, let me tell you

14     something.  I'm going to show you documents.

15     I'm going to jog your memory.  And I don't

16     want to play games about the "I don't

17     remember" stuff all day long or else we'll be

18     here a long time.  Are we clear about that?

19                 MR. HYNES:  Objection.

20     QUESTIONS BY MR. BAKER:

21          Q.     Are we clear?

22                 MR. HYNES:  Objection.

23          A.     Yes.

24     QUESTIONS BY MR. BAKER:

25          Q.     Okay.  What name is on this
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    e-mail?

 2         A.     From this e-mail, I can see

 3    that it was sent from me.

 4         Q.     Okay.  And you sent it to Pam

 5    Hinkle.  Who was Pam Hinkle at the time you

 6    wrote this e-mail?

 7         A.     At this time, Pam was a

 8    dotted-line supervisor.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    QUESTIONS BY MR. BAKER:

25         Q.     Okay.  Let me see if we can get
```

Highly Confidential - Subject to Further Confidentiality Review

1    something straight.  I want to ask you very

2    specific questions.  I'm not looking for

3    editorial answers.

4              What is the date of today?

5              MR. HYNES:  Objection to form.

6         A.    January 17th, 2019.

7    QUESTIONS BY MR. BAKER:

8         Q.    Okay.  The key word in that

9    question was "date," okay?  And you answered

10   it.  What day is today?

11        A.    Thursday.

12        Q.    The key word in that question

13   was "day."  You picked up on it.  You

14   answered it.  I appreciate it.

15             What color is the pen I'm

16   handing you right now?  What is that color?

17        A.    Blue.

18        Q.    The key word in that question

19   was "color."  So you see we went day, date,

20   color.  You understand?  So I'm going to ask

21   you questions.  I'm going to ask you does the

22   document say that.  If the document says

23   that, there's one word, yes.  There's not "I

24   don't remember" and all that.  So I want to

25   get through this, okay?

Highly Confidential - Subject to Further Confidentiality Review

1          MR. HYNES:  Objection to the

2      colloquy.

3   QUESTIONS BY MR. BAKER:

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

20    QUESTIONS BY MR. BAKER:

21         Q.    Okay.  Your lawyer has a right

22    to say "Objection to form," and pretty much

23    every question that I ask, no matter what,

24    he's going to say those three words.  That's

25    fine.  He's allowed to do that.

Highly Confidential - Subject to Further Confidentiality Review

1              That doesn't mean you don't

2    answer, unless he instructs you not to

3    answer.  So I don't want you to be thrown off

4    by that.  Fair enough?

5         A.    That's fair.

6         Q.    So if he says "Objection to

7    form," don't think that means don't answer

8    the question.  That just means he's trying to

9    reserve an objection so later on if he wants

10   to go to the judge and ask, you know, can we

11   not ask that question, not give that answer,

12   he's preserved that.

13              But as we move through this, I

14   don't want you to hear that, hesitate 10

15   seconds, wait, and then answer, unless that's

16   what you really needed to do to answer the

17   question.

18              In other words, don't hesitate

19   just because he objected.  Fair enough?

20              MR. HYNES:  He's ready.  I'll

21        instruct you not to answer if --

22   QUESTIONS BY MR. BAKER:

23        Q.    All right.  You ready?

24        A.    I am ready.

25   ████████████████████████████████████████

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          MR. BAKER:  Okay.  Next

Highly Confidential - Subject to Further Confidentiality Review

```
 1            document.  Number 80.
 2                 (CVS-Burtner Exhibit 80 was
 3            marked for identification.)
 4     QUESTIONS BY MR. BAKER:
 5          Q.     All right.  This document says
 6     it's Aaron Burtner to Crystal Pike.  Do you
 7     remember who Crystal Pike was?
 8          A.     Yes.
 9          Q.     Who was she?
10          A.     She was an employee of Analysis
11     Group.
12          Q.     Okay.  And Analysis Group was
13     what in reference to your job in CVS at the
14     time?
15                 MR. HYNES:  Objection to form.
16          A.     Analysis Group was, I
17     believe -- I believe a consulting firm that
18     we were working with on the SOM process.
19     QUESTIONS BY MR. BAKER:
20          Q.     Okay.  And before that your
21     company had been working with a company, CCS?
22     Is that right?
23          A.     I don't believe I was involved
24     with that.
25          Q.     Okay.  But you were involved
```

Highly Confidential - Subject to Further Confidentiality Review

1    with the Analysis Group communication?

2         A.    Yes.



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8              That's June 26th, 2013.  Is

9    that right?

10        A.     Correct.

11        Q.     So that's the last day that you

12   worked at CVS.

13        A.     Yes.

14        Q.     So the date that the position

15   was actually created was in November of 2012?

16   Is that right?

17              MR. HYNES:  Objection to form.

18        A.     I assumed the role of SOM

19   manager in December of 2013.

20   QUESTIONS BY MR. BAKER:

21        Q.     December of --

22        A.     I'm sorry, 2012, yes.

23        Q.     2012, okay.  So the role of

24   your position as suspicious order monitoring

25   manager for CVS lasted from December 2012 to

```
1    June 26 of 2013, right?

2         A.    Correct.

3         Q.    Okay.  So a total of seven

4    months.

5         A.    Yes.

6         Q.    And you've not returned to CVS

7    since then, correct?

8         A.    No.

9         Q.    You've only been in touch with

10   CVS to the extent of this litigation since

11   November of 2018, right?

12        A.    Yes, I believe that to be true.

13        Q.    And we're in January of 2019

14   right now, correct?

15        A.    Correct.

16             MR. BAKER:  Okay.  Next

17        document, No. 46.  Hand him two, he

18        can hand him one.  The process is I'll

19        hand you two and then you can hand him

20        one, all right?

21             MR. HYNES:  Yeah, that works.

22             (CVS-Burtner Exhibit 46 was

23        marked for identification.)

24   QUESTIONS BY MR. BAKER:

25   ████████████████████████████████████████
```

Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25              MR. BAKER:  Okay.  Next

Highly Confidential - Subject to Further Confidentiality Review

```
 1          document.

 2                  MR. HYNES:  When you get to a

 3          breaking point --

 4                  MR. BAKER:  I'm sorry?

 5                  MR. HYNES:  When you get to a

 6          breaking point, can we take a break?

 7                  MR. BAKER:  Okay, sure.

 8                  The next document would be

 9          No. 94.

10                  MS. HECKMAN:  44.

11                  MR. BAKER:  Oh, 44, I'm sorry.

12                  (CVS-Burtner Exhibit 44 was marked

13          for identification.)

14    QUESTIONS BY MR. BAKER:

15          Q.    So this is an e-mail from Aaron

16    Burtner to Pamela Hinkle, 9/7/12, correct?

17          A.    Yes.

18          Q.    Okay.  Now, at that time, were

19    you already the SOM manager or not?

20          A.    Not at that time.

21          Q.    At this time you're working as

22    a loss prevention analyst.  Is that correct?

23          A.    Loss prevention supervisor.

24          Q.    Okay.  But you were reviewing

25    IRR reports every night.  Is that right?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.      Every day.

 2          Q.      Every day.

 3          A.      Yes.

 4          Q.      Okay.  What time did you get to

 5    work in the morning?

 6          A.      It varied widely throughout the

 7    month.

 8          Q.      Give me an example of what

 9    would be a time that you might come to work.

10          A.      In the beginning, 7:00 a.m.

11    Towards the end of the month, once the report

12    was larger, 4:00 or 5:00 a.m.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
1

2

3

4

5      QUESTIONS BY MR. BAKER:

6           Q.     Was Paul located -- Paul Lawson

7      located in Knoxville?

8           A.     Yes.

9           Q.     Okay.  He was with Pam Hinkle?

10          A.     Yes.

11          Q.     That's where Pam Hinkle was,

12     too?

13          A.     Yes.

14          Q.     You were in Indiana, right?

15          A.     Yes.

16          Q.     So the two people that were

17     potentially reviewing these item review

18     reports were you and Paul Lawson at the time

19     this memorandum was written, 9/7 of 2012,

20     right?

21          A.     That is correct.

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16    QUESTIONS BY MR. BAKER:
17         Q.    Okay.  Let's go through the
18    document and look at me, please.  Look at the
19    camera.  Understand a jury is looking at you.
20              So if you say you don't recall,
21    and we've got a whole bunch of documentation
22    that should allow a young man like you to
23    recall something, it's going to sound kind of
24    silly that you say "I don't recall."
25              MR. HYNES:  Objection to the
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          colloquy.  Let's take a break.
 2     QUESTIONS BY MR. BAKER:
 3          Q.     I want you to look --
 4               MR. BAKER:  No, we're going to
 5          keep going.
 6               MR. HYNES:  No, we're going to
 7          take a break.
 8               MR. BAKER:  We're going to
 9          finish this document.  No, we're not.
10          Okay.
11     QUESTIONS BY MR. BAKER:
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20          MR. BAKER:  Okay.  We'll take a

21     break.  Thank you.

22          THE VIDEOGRAPHER:  We are now

23     going off the record, and the time is

24     9:42 a.m.

25          (Recess taken, 9:42 a.m. to

Highly Confidential - Subject to Further Confidentiality Review

```
 1          9:57 a.m.)

 2               THE VIDEOGRAPHER:  We are now

 3          going back on the record, and the time

 4          is 9:57 a.m.

 5     QUESTIONS BY MR. BAKER:

 6          Q.    Okay.  We're going to

 7     Exhibit 37.

 8               (CVS-Burtner Exhibit 37 was

 9          marked for identification.)

10     QUESTIONS BY MR. BAKER:

11          Q.    I'm showing you an e-mail

12     that's exchanged 5/31/2012, correct?

13          A.    Yes.

14

15

16

17

18

19

20

21

22

23

24

25
```



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



    16          Q.      Okay.   I'm going to show you

    17     Exhibit 97.

    18                  MR. BAKER:   This is from the

    19          old 97?   It's old 97 because it wasn't

    20          on this list, but nevertheless, this

    21          is going to be marked 97.

    22                  MR. HYNES:   We have a previous

    23          97?

    24                  MR. BAKER:   Yes.   This is from

    25          a prior deposition, but we're

Highly Confidential - Subject to Further Confidentiality Review

```
 1          re-marking it 97 here as well.

 2                  MR. HYNES:  Oh, I thought you

 3          meant this was used earlier in this

 4          deposition.  It wasn't.

 5                  MR. BAKER:  No.

 6                  MR. HYNES:  Oh, okay.  Okay.

 7                  (CVS-Burtner Exhibit 97 was

 8          marked for identification.)

 9   QUESTIONS BY MR. BAKER:

10          Q.    All right.  Look at Exhibit 97.

11   It should be tabbed for you, a page to go to.

12                  Do you see that?

13          A.    Yes.

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12          Q.      All right.  Next document.

13              (CVS-Burtner Exhibit 3 was

14          marked for identification.)

15    QUESTIONS BY MR. BAKER:

16          Q.      Now, the law that you were

17    aware of is the Controlled Substances Act

18    that governed your activities as a loss

19    prevention analyst, correct?

20              MR. HYNES:  Objection to form.

21          A.      I don't -- I don't recall the

22    specific law.

23    QUESTIONS BY MR. BAKER:

24          Q.      Well, let me see if we can get

25    you schooled on it.

Highly Confidential - Subject to Further Confidentiality Review

1          A.      Okay.



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6     QUESTIONS BY MR. BAKER:

7          Q.     All right.  In front of you is

8     21 C.F.R. 1301.74(b).  Have you ever seen

9     that law before?

10         A.     Umm --

11         Q.     Before today, have you ever

12    seen that law in writing?

13         A.     I don't specifically recall the

14    number, but I do recall the paragraph, yes.

15              MR. BAKER:  Okay.  Go back to

16         the other document that I just was

17         reviewing.

18              THE WITNESS:  34?

19              MR. BAKER:  Yeah.  Strike that.

20    QUESTIONS BY MR. BAKER:

21         Q.     Go back to what we were on,

22    please.  Go back to the --

23         A.     The present?

24         Q.     Yeah, the present document,

25    please.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



```
11        Q.     Okay.  Let's move to the next

12   document.

13              (CVS-Burtner Exhibit 2 was

14        marked for identification.)

15   QUESTIONS BY MR. BAKER:

16        Q.     Now, are you familiar with the

17   drug hydrocodone?  We're going to document

18   No. 2.

19              MR. HYNES:  Hydrocodone or

20        hydrocodone combination products?

21              MR. BAKER:  Hydrocodone

22        combination products, which is

23        inclusive within this document.

24                   --oOo--

25                   --oOo--
```

```
 1          A.      Hydrocodone -- familiar to what

 2    extent?

 3    QUESTIONS BY MR. BAKER:

 4          Q.      Okay.  Are you familiar with

 5    the addictive nature of it?

 6          A.      I mean, I wouldn't consider

 7    myself to be an expert of hydrocodone, but I

 8    do recognize that it is addictive.

 9          Q.      Thank you.

10                  All right.  Hydrocodone --

11    according to the DEA Drug Fact Sheet:

12    Hydrocodone is the most frequently prescribed

13    opioid in the United States and is associated

14    with more drug abuse and diversion than any

15    other illicit or illegal opioid.

16                  Correct?  That's what the DE

17    document said -- DEA document says.  Is that

18    correct?

19          A.      That's what this document

20    states, yes.

21          Q.      And this is one of the drugs

22    that you were monitoring for CVS in terms of

23    their distribution of that particular drug

24    out of a distribution center, a hydrocodone

25    combination product that is out of a
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    distribution center to a pharmacy, correct?

 2         A.    The hydrocodone combination

 3    products were our highest priority drug that

 4    we were monitoring.

 5         Q.    Okay.  And if you go down here

 6    it says, looks like -- well, the street names

 7    for that are Hydro, Norco, Vikes.  You've

 8    heard of those names, right?

 9              MR. HYNES:  Objection to form.

10    QUESTIONS BY MR. BAKER:

11         Q.    Norco, you've heard of that,

12    right?

13              MR. HYNES:  Objection to form.

14    QUESTIONS BY MR. BAKER:

15         Q.    Vicodin, you've heard of that,

16    have you not?

17         A.    I have heard of hydro and

18    Vicodin.

19         Q.    All right.  And then it says

20    that the effect on the mind are -- actually,

21    drugs causing similar effects.  It says

22    morphine, heroin, oxycodone, codeine,

23    poxy- -- propoxyphene, fentanyl, and

24    hydromorphone, correct?

25         A.    According to the document, yes.
```

```
 1          Q.      And you've heard of morphine,
 2    you've heard of heroin, right?
 3          A.      Yes.
 4          Q.      You've heard of fentanyl,
 5    correct?
 6          A.      Yes.
 7          Q.      And you're familiar that our
 8    country is in a crisis?
 9                  MR. HYNES:  Objection to form.
10    QUESTIONS BY MR. BAKER:
11          Q.      You know that, don't you?
12    We're in an opioid crisis, are we not?
13                  MR. HYNES:  Objection.
14          Objection to form.
15          A.      I'm not an expert on any of
16    that.  I don't know if --
17    QUESTIONS BY MR. BAKER:
18          Q.      Are you going to sit here and
19    tell me that you're not familiar with the
20    fact that our country is in the midst of an
21    opioid crisis?  Are you honestly going to
22    look in that camera and say that you're not
23    familiar with that?
24                  MR. HYNES:  Objection to form.
25          A.      No, I understand that there's a
```

```
 1    problem going on, but to the level of crisis,

 2    I don't -- I've been out of this world for

 3    six years and I haven't really looked back.

 4    QUESTIONS BY MR. BAKER:

 5         Q.    Okay.  We're going to go into

 6    the level of that crisis for you.  All right?

 7              Let me show you another drug

 8    that's involved in that crisis called

 9    oxycodone.  Are you familiar with that drug?

10         A.    Yes.

11         Q.    Okay.  Oxycodone is a

12    semisynthetic narcotic analgesic and

13    historically has been a popular drug of abuse

14    among the narcotic-abusing population.

15              Is that what the document says?

16              MR. HYNES:  Can we have a copy?

17              MR. BAKER:  Oh, I'm sorry.

18              MR. HYNES:  Oh, is it behind

19         here?

20              MR. BAKER:  Should have been.

21              MR. HYNES:  No, no, no.  Hold

22         on.  Hold on.  It's behind here.

23              MR. BAKER:  Okay.

24              MR. HYNES:  Sorry, we were

25         confused, though.  So it's the next
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              document in the packet he gave us.

 2      A.      Got it.

 3              Yes, that's what the document

 4   says, yes.

 5   QUESTIONS BY MR. BAKER:

 6      Q.      Okay.  And you knew that before

 7   today too, right?  It's common knowledge to

 8   you, right?

 9      A.      Yes, that oxycodone is abused.

10      Q.      All right.  And it has street

11   names of Hillbilly Heroin, Kicker, OC, Ox,

12   Oxy, Perc, Roxy.

13              Did you know that?

14              MR. HYNES:  Objection to form.

15      A.      I have heard some of those but

16   definitely not most.

17   QUESTIONS BY MR. BAKER:

18      Q.      Okay.  And oxycodone is

19   marketed alone as OxyContin in 10, 20, 40,

20   and 80 milligram controlled substance release

21   tablets and other immediate-release capsules

22   like 5-milligram Oxy LR is also marketed in

23   combination products with aspirin, such as

24   Percodan, or acetaminophen, such as Roxicet.

25              Is that what the document says?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.     Yes, that's what the document

 2   says.

 3        Q.     All right.  Look where it says

 4   what effects it has on the mind.  It says:

 5   Euphoria and feelings of relaxation are the

 6   most common effects of oxycodone on the

 7   brain, which explains its high potential for

 8   abuse.

 9               Correct?

10        A.     That's what it says, yes.

11        Q.     All right.  And you knew this

12   when you were working at CVS, did you not?

13               MR. HYNES:  Objection to form.

14        A.     Yes, I knew the -- I recognized

15   the effects of oxycodone.

16   QUESTIONS BY MR. BAKER:

17        Q.     And these are the drugs that

18   you knew to be sold by CVS retail stores that

19   were not monitored by CVS's suspicious order

20   monitoring system, correct?

21               MR. HYNES:  Objection to form.

22   QUESTIONS BY MR. BAKER:

23        Q.     Am I correct?

24               MR. HYNES:  Objection to form.

25                    --oOo--
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.     Yes.

 2    QUESTIONS BY MR. BAKER:

 3          Q.     All right.  Let's go to

 4    Exhibit 1, please.

 5               MR. LANOSA:  This is Mike for

 6          McKesson.  I'm sorry to interrupt you

 7          guys.  We're having some connection

 8          problems here on the phone.  We can

 9          hear each other, but we can't hear

10          you.  You're cutting in and out.

11               MR. HYNES:  Let's go off the

12          record for a minute.

13               THE VIDEOGRAPHER:  We are now

14          going off the record, and the time is

15          10:28 a.m.

16               (Recess taken, 10:28 a.m. to

17          10:41 a.m.)

18               (CVS-Burtner Exhibit 1 was

19          marked for identification.)

20               THE VIDEOGRAPHER:  We are now

21          going back on the record, and the time

22          is 10:41 a.m.

23    QUESTIONS BY MR. BAKER:

24          Q.     You have in front of you

25    Exhibit 1.  Is that correct, Mr. Burtner?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.      Yes.

 2          Q.      Okay.  You see on the screen

 3   Exhibit 1 -- is it not coming up?  Yes, there

 4   it is.  Okay.

 5                  Up here in the upper left-hand

 6   corner you see this is the symbol for the

 7   United States Drug Enforcement Agency,

 8   correct?

 9          A.      I believe so, yes.

10          Q.      Okay.  And you see here where

11   there's a top 10 list in kilograms of

12   consumption of hydrocodone.

13                  Do you see that?

14          A.      Yes, I see the list.

15          Q.      Okay.  You see where the United

16   States consumes 99.3% of the hydrocodone in

17   the world?

18          A.      Yes, I see that on the

19   document.

20          Q.      Okay.  You see here on the next

21   document, it says:  Poison and deaths from

22   opioidal analgesics.

23          A.      Yes, I see that.

24          Q.      All right.  This is -- the

25   source at the bottom is the National Vital
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    Statistics System.

 2              Do you see that?

 3         A.      Yes, I do.

 4         Q.      Center for Disease Control.

 5              Do you see that?  CDC?

 6         A.      Yes, I do.

 7         Q.      Okay.  Go back to the document.

 8    Do you see where it talks about this

 9    poisoning death from opioid analgesics over a

10    period of 1999 through 2010 are represented

11    by those bar charts?

12              Do you see that?

13         A.      Yes, I see that.

14         Q.      Do you see a steady climb in

15    that from 1999 all the way up through 2013?

16              Do you see that?

17              MR. HYNES:  Objection to form.

18         A.      Yes.  The document indicates a

19    climb.

20    QUESTIONS BY MR. BAKER:

21         Q.      Okay.  Do you see that as of

22    the time you were working as a manager in the

23    suspicious order monitoring program at CVS,

24    those deaths were 16,917 in 2011, 16,600 in

25    2012, and 16,200 in 2013?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    Do you see that?
 2                    MR. HYNES:  Objection, form.  I
 3         think you got some of the numbers
 4         wrong.
 5    QUESTIONS BY MR. BAKER:
 6         Q.    Let me repeat the question,
 7    then.  When were you the suspicious order
 8    monitoring manager?
 9         A.    I -- the manager, late 2012
10    through mid 2013.
11         Q.    And when were you the LP
12    analyst?
13         A.    I was performing functions as
14    the LP analyst from early 2012 through late
15    2012 when I became the SOM manager.
16         Q.    Okay.  So in 2012 alone, do you
17    see that there were 16,000 opioid analgesic
18    deaths in the United States?
19                    MR. HYNES:  Objection to form.
20         A.    Yes.  I see that on the
21    document, yes.
22    QUESTIONS BY MR. BAKER:
23         Q.    Okay.  Do you see that number
24    climb to 16,200 in 2013?
25                    MR. HYNES:  Objection, form.
```

```
 1          A.      Yes, I see that.

 2     QUESTIONS BY MR. BAKER:

 3          Q.      Have you ever seen this

 4     document before today?

 5               MR. HYNES:  Objection to the

 6          extent it calls for him to divulge the

 7          documents shown to him during his

 8          prep.  He may answer as to whether

 9          he's seen it outside of his prep with

10          counsel.

11     QUESTIONS BY MR. BAKER:

12          Q.      Have you seen this document

13     outside of your prep with counsel before

14     today?

15          A.      No, I do not recall seeing this

16     document, no.

17          Q.      Before walking in here today,

18     were you familiar with the fact that there

19     were 16,000 deaths per year as a result of

20     opioid analgesics in the year 2012?

21               MR. HYNES:  Objection to form.

22          A.      No, I was not familiar with the

23     number of deaths.

24     QUESTIONS BY MR. BAKER:

25          Q.      Before you walked in here
```

```
 1    today, were you familiar with the number of

 2    deaths reflected on this chart?

 3              MR. HYNES:  Objection to form.

 4        A.    No, I was not aware of the

 5    number of deaths.

 6    QUESTIONS BY MR. BAKER:

 7        Q.    Let me ask you to pull the next

 8    chart up, please.  This talks about the U.S.

 9    rates of opioid overdose deaths, sales, and

10    treatment admissions from 1999 to 2010.

11              Have you ever seen this

12    document before today?

13        A.    No, I do not believe I've ever

14    seen this, no.

15        Q.    Okay.  Do you understand that

16    the green line on that document represents

17    opioid sales, the red line represents opioid

18    deaths and the blue line represents opioid

19    treatment admissions?

20              Do you see that?

21        A.    Yes, I do see that.

22        Q.    Okay.  The green line is the

23    top line, the red line is the middle line and

24    the blue line is the bottom line, correct?

25        A.    Yes.
```

Highly Confidential – Subject to Further Confidentiality Review

```
 1         Q.      Okay.  Do you see where those

 2    lines travel in the same direction upward

 3    from 1999 to 2010?

 4                 Do you see that?

 5                 MR. HYNES:  Objection, form.

 6         A.      Yes.  Yes, I see that.

 7    QUESTIONS BY MR. BAKER:

 8         Q.      Do you see the correlation

 9    between opioid sales, opioid treatment

10    admissions and opioid deaths pursuant to what

11    that chart represents, yes or no?

12                 MR. HYNES:  Objection to form.

13         A.      Yes, I can see the correlation

14    based on this chart.

15    QUESTIONS BY MR. BAKER:

16         Q.      Okay.  The more opioids that

17    are sold, the more opioid deaths and the more

18    opioid treatment admissions, according to

19    this chart, correct?

20                 MR. HYNES:  Objection to form.

21         A.      According to this chart, yes.

22    QUESTIONS BY MR. BAKER:

23         Q.      Those things run correlating

24    hand in hand with each other on this chart,

25    correct?
```

Highly Confidential – Subject to Further Confidentiality Review

```
 1              MR. HYNES:  Objection to form.

 2       A.    According to this chart, yes.

 3  QUESTIONS BY MR. BAKER:

 4       Q.    Okay.  From 1999 to 2010,

 5  correct?

 6              MR. HYNES:  Objection to form.

 7       A.    Yes, those are the years on the

 8  chart.

 9  QUESTIONS BY MR. BAKER:

10       Q.    You understand this is all part

11  of the opioid crisis?

12              MR. HYNES:  Objection to form.

13  QUESTIONS BY MR. BAKER:

14       Q.    Do you understand that to be

15  part of the opioid crisis?

16              MR. HYNES:  Objection to form.

17       A.    Yes, I understand that this

18  would be part of the crisis.

19  QUESTIONS BY MR. BAKER:

20       Q.    Next document.  Let's go to

21  Exhibit 4.

22              (CVS-Burtner Exhibit 4 was

23         marked for identification.)

24  QUESTIONS BY MR. BAKER:

25       Q.    This is an e-mail from Mr. Ron
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    Buzzeo to Amy Brown.  Have you ever seen this
 2    e-mail before?
 3              MR. HYNES:  Objection to the
 4        extent it calls for the witness to
 5        divulge documents shown to him in
 6        prep.  He will answer as to any
 7        documents he's seen outside of his
 8        prep with counsel.
 9              RANDOM CALLER:  Hello?  Hello?
10              MR. BAKER:  Yes.
11              RANDOM CALLER:  Hello?
12              MR. BAKER:  Yes.
13              MR. HYNES:  Can you hear us?
14              MR. BAKER:  Can you hear us?
15              RANDOM CALLER:  Yeah, so I just
16        called in to the technical support
17        department --
18              MR. BAKER:  Let's take a break
19        off the record.  Let's take a break
20        off the record.
21              THE VIDEOGRAPHER:  Okay.  We
22        are now going off the record, and the
23        time is 10:47 a.m.
24              (Recess taken, 10:47 a.m. to
25        10:49 a.m.
```

Highly Confidential – Subject to Further Confidentiality Review

```
 1                    THE VIDEOGRAPHER:  We are now
 2          going back on the record, and the time
 3          is 10:49 a.m.
 4     QUESTIONS BY MR. BAKER:
 5          Q.     I'm going to hand you
 6     Exhibit 5.
 7                    (CVS-Burtner Exhibit 5 was
 8          marked for identification.)
 9     QUESTIONS BY MR. BAKER:
10          Q.     All right.  This is an e-mail
11     dated 5/8/2013 from Craig Schiavo to you,
12     Aaron Burtner, correct?
13          A.     That is correct.
14          Q.     All right.  And who was Craig
15     Schiavo in relation to you and CVS at the
16     time?
17          A.     He was an employee based in the
18     corporate office, I believe in compliance.
19
20
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
1
2
3    QUESTIONS BY MR. BAKER:

4         Q.    All right.  Now, you realize

5    that Controlled Substances Act that I showed

6    you, the 21 C.F.R., do you remember that,

7    that I just showed you?

8         A.    Yes, sir.

9         Q.    Did CVS tell you that that had

10   been in effect since 1971, or not?  Did they

11   tell you that?

12              MR. HYNES:  Objection to form.

13        A.    I don't recall if that was

14   communicated to me or not.

15   QUESTIONS BY MR. BAKER:

16        Q.    Were you ever instructed on the

17   fact that that Controlled Substances Act, the

18   21 C.F.R. that I showed you, 1307(b), that

19   that was in effect since 1971?  Did anybody

20   at CVS ever instruct you on that?

21              MR. HYNES:  Objection to form.

22        A.    I was aware of the act, but I

23   don't recall if anyone told me how long it

24   had been in place.

25                    --oOo--
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    QUESTIONS BY MR. BAKER:

 2         Q.    You're aware that it -- you're

 3    not aware that it had been in effect way

 4    before this letter was written that's

 5    attached to this e-mail?

 6              MR. HYNES:  Objection to form.

 7         A.    No.  I don't know if -- I don't

 8    recall if anyone communicated that to me or

 9    not.

10    QUESTIONS BY MR. BAKER:

11         Q.    But you were the SOM manager,

12    right?

13         A.    Yes.

14         Q.    And you weren't instructed on

15    that by anybody at CVS?

16              MR. HYNES:  Objection to form;

17         misstates his testimony.

18    QUESTIONS BY MR. BAKER:

19         Q.    Right?

20              MR. HYNES:  Same objection.

21                   --oOo--

22                   --oOo--

23                   --oOo--

24                   --oOo--

25                   --oOo--
```

Highly Confidential - Subject to Further Confidentiality Review

1          A.     No, I was -- I was

2    instructed -- I was familiar and instructed

3    on the act, but I don't know if anyone

4    communicated to me how long it had

5    specifically been in --

6    QUESTIONS BY MR. BAKER:

7          Q.     Fair enough.

8          A.     -- in existence.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12          Q.      Okay.  Under this context, in

13     your job at CVS, if a CVS distributor was to

14     report a suspicious order made by a CVS

15     pharmacist, that would be one CVS entity

16     reporting to the DEA on another CVS entity,

17     correct?

18              MR. HYNES:  Objection to form.

19          A.      I'm not familiar -- I don't

20     know.

21     QUESTIONS BY MR. BAKER:

22          Q.      Well, let's take -- let's break

23     that down.

24          A.      Okay.

25          Q.      CVS owned the distribution

```
1    center, correct?

2              MR. HYNES:  Objection to form.

3         A.    I don't know.  I viewed it as I

4    worked for CVS.  We all worked for CVS.  I

5    don't know.

6    QUESTIONS BY MR. BAKER:

7         Q.    Right.

8         A.    Okay.

9         Q.    The distribution center that

10   you worked for, you were paid to work there

11   by CVS, right?

12        A.    Correct.

13             MR. HYNES:  Objection to form.

14   QUESTIONS BY MR. BAKER:

15        Q.    Okay.  The pharmacy that you

16   were selling to as a distributor, as a

17   monitoring person for that distributor, that

18   was owned by CVS, right?

19             MR. HYNES:  Objection to form.

20   QUESTIONS BY MR. BAKER:

21        Q.    Right?

22             MR. HYNES:  Objection to form.

23   QUESTIONS BY MR. BAKER:

24        Q.    It had a big CVS sign, C-V-S,

25   on it, right?
```

Highly Confidential - Subject to Further Confidentiality Review

```
1                    MR. HYNES:  Same objection.

2     QUESTIONS BY MR. BAKER:

3          Q.     Right?

4          A.     I believe so, yes.

5          Q.     Okay.  And so if you were to

6     tell the DEA as an SOM manager that somebody

7     that was ordering from your distribution

8     center, that being a CVS pharmacy, was

9     ordering something that was a suspicious

10    order, you in effect would be telling the

11    DEA, "Hey, I'm at CVS and another CVS entity

12    that's ordering from me is ordering a

13    suspicious order."  Correct?

14                   MR. HYNES:  Objection to form.

15    QUESTIONS BY MR. BAKER:

16         Q.     Isn't that right?

17                   MR. HYNES:  Same objection.

18         A.     I'm not familiar with the term

19    "entity."  I'm not sure of the definition --

20    QUESTIONS BY MR. BAKER:

21         Q.     Oh, come on.

22                   MR. HYNES:  Let him finish.

23                       --oOo--

24                       --oOo--

25                       --oOo--
```

Highly Confidential - Subject to Further Confidentiality Review

1           A.      I don't know the exact

2     definition of it.  To me it would be one CVS

3     employee reporting on another CVS employee.

4     QUESTIONS BY MR. BAKER:

5           Q.      Fair enough.

6           A.      Okay.

7           Q.      Okay.  So it would be one CVS

8     employee reporting on the conduct of another

9     CVS employee to the DEA, right?

10          A.      Agreed.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



```
 9          Q.      Okay.  And do you know who

10    Amy Brown was when you worked there?

11          A.      I'm not familiar with that

12    name.

13          Q.      Do you know who Amy Propatier

14    was when you worked there?

15          A.      I am familiar with that name.

16          Q.      Okay.  And do you realize she

17    would be the same person, Amy Brown and Amy

18    Propatier?

19          A.      I don't -- I mean, I have no

20    reason not to believe that.
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 1

 2

 3

 4        Q.     Okay.  Exhibit No. 6, please.

 5   All right.  Go to Exhibit 10.

 6             Are you familiar with the

 7   history of when CVS first --

 8             (Telephonic interruption.)

 9             MR. BAKER:  Let's go off the

10        record.

11             THE VIDEOGRAPHER:  Okay.  We

12        are now going off the record, and the

13        time is 11:07 a.m.

14             (Recess taken, 11:07 a.m. to

15        11:08 a.m.)

16             THE VIDEOGRAPHER:  We are now

17        going back on the record, and the time

18        is 11:08 a.m.

19             (CVS-Burtner Exhibit 10 was

20        marked for identification.)

21   QUESTIONS BY MR. BAKER:

22        Q.     This is Exhibit 10.  Go to

23   Exhibit 10.

24                   --oOo--

25                   --oOo--
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    (Discussion off the

 2           stenographic record.)

 3      QUESTIONS BY MR. BAKER:

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
1

2

3

4

5

6                MR. HYNES:  Same objection as

7        to prep.  He may answer as to whether

8        he read it outside of his prep.

9        A.    No, I have never seen this

10   document before.

11   QUESTIONS BY MR. BAKER:

12        Q.    Okay.  Did CVS show you this

13   while you were working there?

14        A.    I do not recall seeing this

15   document, no.

16        Q.    All right.  Go down to the

17   bottom.

18                MR. HYNES:  The first page?

19   QUESTIONS BY MR. BAKER:

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



20              (Discussion off the

21          stenographic record.)

22              MR. BAKER:  There's been an

23          interruption of people calling in.

24          This is why I'm a little agitated, so

25          we're going to go off record.

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  THE VIDEOGRAPHER:  We are now
 2           going off the record, and the time is
 3           11:11 a.m.
 4                  (Recess taken, 11:11 a.m. to
 5           11:13 a.m. )
 6                  THE VIDEOGRAPHER:  We are now
 7           going back on the record, and the time
 8           is 11:13 a.m.
 9      QUESTIONS BY MR. BAKER:
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4      QUESTIONS BY MR. BAKER:

5           Q.    Okay.  All right.  Go to

6      Exhibit 11, please.

7                 (CVS-Burtner Exhibit 11 was

8           marked for identification.)

9                 (Discussion off the

10          stenographic record.)

11     QUESTIONS BY MR. BAKER:

12          Q.    All right.  This is the CVS SOM

13     Revised Coefficients.  Do you remember me

14     talking to you earlier in the retunement

15     document about the initial program being

16     delivered in December of 2008?

17                Do you remember that?

18          A.    Yes, I do.

19          Q.    Okay.  And do you remember that

20     document talking about that there was a

21     perception -- that there was perceived some

22     issues with CVS?

23                Do you remember that?

24          A.    Yes, I remember the document.

25          Q.    And that there was a change in

Highly Confidential – Subject to Further Confidentiality Review

```
 1    the coefficients?  Do you remember that?

 2         A.    I don't recall it stating the

 3    coefficients were changed.

 4         Q.    Okay.  I want you to assume

 5    that's what the document said, okay?

 6              MR. HYNES:  Objection to the

 7         hypothetical.

 8    QUESTIONS BY MR. BAKER:

 9         Q.    All right.  Go back to the

10    document, then.  Go back to the previous

11    document.  What number was it?  What number

12    was the --

13         A.    No. 10.

14         Q.    -- retunement?  No. 10.

15         A.    Okay.

16         Q.    All right.  Go to the bottom of

17    page 1.

18         A.    Yes, sir.

19         Q.    Go back to No. 10, please, the

20    first page.

21              MR. HYNES:  Of the retunement

22         or the e-mail?

23              MR. BAKER:  The retunement

24         document --

25              MR. HYNES:  Okay.
```

Highly Confidential - Subject to Further Confidentiality Review

1                    MR. BAKER:  -- that has the

2            history.  Go to the second page,

3            please.  All right.

4      QUESTIONS BY MR. BAKER:

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review

15    and control drugs.

16              Do you see that?

17        A.    I see that.

18        Q.    Okay.  Control drugs reported

19    on IRR by active ingredient.

20              Do you see that?

21        A.    I see that.

22        Q.    That's what was discussed in

23    the retunement document that I just showed

24    you from 2011, correct?

25        A.    Yes.  I didn't realize that

Highly Confidential - Subject to Further Confidentiality Review

```
 1    document was from 2011.
 2         Q.    Okay, fair enough.  All right.
 3    So historically you now understand what went
 4    on with respect to when the program was
 5    delivered, how the coefficients were changed
 6    and how the document was retuned in 2011.
 7              Do you understand that --
 8              MR. HYNES:  Objection to form.
 9    QUESTIONS BY MR. BAKER:
10         Q.    -- from those documents now?
11              MR. HYNES:  Objection to form.
12         A.    Based on what we reviewed, it
13    appears there were retunements.  I have no
14    reason to believe that that's not true.
15    QUESTIONS BY MR. BAKER:
16         Q.    Okay.  All right.  Next
17    document.
18              MR. HYNES:  Can we break when
19         you have a minute, though?
20              MR. BAKER:  Sure.
21              MR. HYNES:  You can do this.  I
22         mean, whenever it's a convenient time.
23              MR. BAKER:  Now is a convenient
24         time.
25              THE VIDEOGRAPHER:  Okay.  We
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          are now going off the record, and the

 2          time is 11:32 a.m.

 3                  (Recess taken, 11:32 a.m. to

 4          11:40 a.m.)

 5                  THE VIDEOGRAPHER:  We are now

 6          going back on the record, and the time

 7          is 11:40 a.m.

 8   QUESTIONS BY MR. BAKER:

 9          Q.    Pull document 22, please.

10                  (CVS-Burtner Exhibit 22 was

11          marked for identification.)

12   QUESTIONS BY MR. BAKER:

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
```

10          Q.     All right.  Was Mr. Lawson an

11    LP analyst?

12                 (Telephone interruption.)

13          A.     Yes, I believe that was his

14    position.

15    QUESTIONS BY MR. BAKER:

16          Q.     All right.  We're going to go

17    back on the record and reask that same

18    question.

19                 Was Mr. Lawson a loss

20    prevention analyst at that time?

21          A.     Yes, I believe that was his

22    position.

23          Q.     And were you a loss prevention

24    analyst at that time?

25          A.     Technically, loss prevention

Highly Confidential - Subject to Further Confidentiality Review

1    supervisor but performing some tasks of a

2    loss prevention analyst.



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3        Q.      Let me ask you something.  As

4    an LP analyst and a suspicious order

5    monitoring manager during your period at

6    CVS -- those were the two positions that you

7    held, correct?

8        A.      Technically, loss prevention

9    supervisor and SOM manager, yes.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential – Subject to Further Confidentiality Review



14              (Telephonic interruption.)

15              MR. BAKER:  Let's go off the

16      record for a second.

17              THE VIDEOGRAPHER:  We are now

18      going off the record, and the time is

19      12:05 p.m.

20              MR. BAKER:  Go back on the

21      record.

22              (Recess taken, 12:05 p.m. to

23      12:05 p.m.)

24              THE VIDEOGRAPHER:  We are now

25      going back on the record, and the time

Highly Confidential - Subject to Further Confidentiality Review

1          is 12:05 p.m.

2      QUESTIONS BY MR. BAKER:



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



        1

        2

        3

        4

        5

        6

        7

        8

        9

       10

       11

       12

       13       A.     Yes, that was my understanding.

       14              MR. BAKER:  This would probably

       15       be a good place to -- is our lunch

       16       here?

       17              MR. GOETZ:  I don't think so.

       18              MR. BAKER:  Okay.  If it's not,

       19       then let me take just a 30-second

       20       break.

       21              MR. HYNES:  Yeah, yeah, that's

       22       fine.

       23              THE VIDEOGRAPHER:  We are going

       24       off the record, and the time is

       25       12:10 p.m.

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    (Recess taken, 12:10 p.m. to

 2          12:11 p.m.)

 3                    THE VIDEOGRAPHER:  We are now

 4          going back on the record, and the time

 5          is 12:11 p.m.

 6     QUESTIONS BY MR. BAKER:

 7          Q.    Please pull Exhibit 23.

 8                    (CVS-Burtner Exhibit 23 was

 9          marked for identification.)

10     QUESTIONS BY MR. BAKER:

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8          Q.     All right.  Exhibit 25.

9               (CVS-Burtner Exhibit 25 was

10          marked for identification.)

11     QUESTIONS BY MR. BAKER:

12          Q.     This is yet another e-mail, May

13     of 2011.  And let me ask you to look at the

14     Bates numbers at the bottom.  Do you see

15     where these are stamped?  Look at the Bates

16     numbers.

17               MR. HYNES:  These numbers right

18          here.

19          A.     Okay.

20     QUESTIONS BY MR. BAKER:

21          Q.     All right.  This is 57736.  The

22     next one is 57737.  Do you see it?

23          A.     Yes, sir.

24          Q.     The next one is 577- --

25     actually -- yeah.

```
 1                    MR. HYNES:  Then the next one

 2         is off.

 3    QUESTIONS BY MR. BAKER:

 4         Q.    Wait a minute.  57736, 57737,

 5    and 57738.  Do you see that?

 6         A.    Yes, I do.

 7         Q.    Okay.  Let's take a look at

 8    this, all right?  It says from Frank Devlin

 9    to Judith Hughes on the front.  Do you see

10    that?

11         A.    Yes, I do.

12         Q.    All right.  That's 5/16/2011,

13    that's May of 2011, correct?

14         A.    Yes.

15                    (Telephonic interruption.)

16                    MR. HYNES:  Is everyone still

17         on the line?

18                    Let's go off the record.

19                    THE VIDEOGRAPHER:  Okay.  We

20         are going off the record, and the time

21         is 12:19 p.m.

22                    (Recess taken, 12:19 p.m. to

23         1:01 p.m.)

24                    THE VIDEOGRAPHER:  We are now

25         going back on the record, and the time
```

Highly Confidential - Subject to Further Confidentiality Review

1          is 1:01 p.m.

2     QUESTIONS BY MR. BAKER:



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



21        Q.      But the only time you would

22    look at outside vendor data is when you were

23    doing a deep dive, right?

24        A.      Yes, that is correct.

25        Q.      So you wouldn't know whether

Highly Confidential - Subject to Further Confidentiality Review

```
 1    somebody had ordered from an outside vendor

 2    in addition to what shows up on your IRR

 3    report as what they've ordered, unless you

 4    did a deep dive, right?

 5                MR. HYNES:  Objection to form.

 6    QUESTIONS BY MR. BAKER:

 7         Q.    Right?

 8                MR. HYNES:  Same objection.

 9         A.    Yes, that is correct.

10    QUESTIONS BY MR. BAKER:

11         Q.    Because the outside vendor

12    orders were not run through the SOM algorithm

13    system at CVS, right?

14         A.    No, they were not.

15         Q.    Okay.  And that included

16    outside vendor orders for Control IIIs and

17    Control IIs, right?  For hydrocodone

18    combination products and for OxyContin

19    products, correct?

20         A.    Yes, that is correct.

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
1
2
3
4
5
6
7
8
```

9            MR. BAKER:  Okay.  All right.

10        I think we're going to take a break.

11        Thank you.

12            THE VIDEOGRAPHER:  Okay.  We

13        are now going off the record, and the

14        time is 2:08 p.m.

15            (Recess taken, 2:08 p.m. to

16        2:19 p.m.)

17            THE VIDEOGRAPHER:  We are now

18        going back on the record, and the time

19        is 2:19 p.m.

20                EXAMINATION

21    QUESTIONS BY MR. GOETZ:

22        Q.    Mr. Burtner, my name is Dan

23    Goetz.  We met earlier but now we're formally

24    meeting on the record.

25            I am going to hand you two

Highly Confidential - Subject to Further Confidentiality Review

1    exhibits.  One is marked CVS-Burtner 462 and

2    one is marked CVS-Burtner 406.

3                    (CVS-Burtner Exhibit 462 was

4         marked for identification.)

5                    (CVS-Burtner Exhibit 406 was

6         marked for identification.)

7    QUESTIONS BY MR. GOETZ:

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 1    QUESTIONS BY MR. GOETZ:

 2         Q.    Mr. Burtner, you were asked

 3    earlier what percentage of orders you did a

 4    deep dive on.

 5              Do you remember that?

 6         A.    I do recall the questioning.

 7         Q.    And do you remember you said

 8    you don't recall?

 9         A.    Yes, that is correct.

10         Q.    And so as you sit here today,

11    you don't have a recollection?

12         A.    I don't recall how many orders

13    or the percentage of orders that were on the

14    IRR that we would do additional due diligence

15    on.

16         Q.    Okay.  And there was a time

17    when you did time studies, correct?

18         A.    Yes, that is correct.

19         Q.    And those time studies were

20    studies to try to gauge what was your average

21    day.  Fair?

22              MR. HYNES:  Objection to form.

23         A.    Yes.  Yes.

24    QUESTIONS BY MR. GOETZ:

25         Q.    And you filled those time
```

```
 1    studies out truthfully?

 2         A.    Yes, to the best of my ability.

 3         Q.    You filled them out accurately?

 4         A.    Yes.

 5         Q.    And so those time studies would

 6    probably be the best evidence that we have as

 7    to what your day consisted of when you

 8    were -- strike that.

 9               Those time studies would

10    probably be the best evidence we have as to

11    what percentage of orders you did a deep dive

12    on, correct?

13               MR. HYNES:  Objection to form.

14         A.    Possibly.

15    QUESTIONS BY MR. GOETZ:

16         Q.    I'm going to hand you what has

17    been marked --

18         A.    Okay.

19         Q.    -- as Exhibit 411.

20               (CVS-Burtner Exhibit 411 was

21          marked for identification.)

22    QUESTIONS BY MR. GOETZ:

23         Q.    Do you see the first page?

24         A.    Of the e-mail?

25         Q.    Yes.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.      Yes, I do.

 2          Q.      And that is an e-mail from you

 3     to John Mortelliti?

 4          A.      Yes.

 5          Q.      And it's attaching -- it was

 6     sent on June 18th of 2012?

 7          A.      Yes.

 8          Q.      And then if you'd turn in to

 9     the -- what is the third page, it says "LP

10     Analyst Time Study"?

11          A.      Yes.

12          Q.      Okay.  And that date is

13     6/15/12?

14          A.      Yes, it is.

15          Q.      And if you look about the

16     middle of the page, it says:  Review 6/14/12

17     Control IRR?

18          A.      Yes, I see that.

19          Q.      Okay.  And just so we do not

20     have to go back and forth through this all

21     the time, I'm going to write this down so we

22     can kind of remember, okay?  And then to the

23     extent that we have to go back, we'll look at

24     it.  Fair enough?

25          A.      Okay.
```

```
 1         Q.      So that date of the time study

 2    is 6/15/12 and it's a 6/14/12 IRR and it

 3    appears that it took you 25 minutes to

 4    review?

 5         A.      Yes.  Yes, that's what the time

 6    study says.

 7         Q.      Okay.  And then down below, it

 8    says:  Continue reviewing 6/14/12.

 9                 And that took you 30 minutes,

10    correct?

11         A.      Yes.  So it appears that I

12    began reviewing and then continued reviewing,

13    a total of, what, an hour, I guess.

14         Q.      55 minutes?

15         A.      Okay.

16         Q.      Does that seem fair?

17         A.      Yes.  Yes.

18         Q.      And according to this, zero

19    orders received additional due diligence,

20    correct?

21         A.      According to the time study,

22    yes.

23         Q.      Okay.  And could you go to the

24    next page.  Actually, on this day you spent

25    an hour looking at a cigarette shortage,
```

```
 1    correct?

 2         A.     Yes.

 3         Q.     Okay.

 4         A.     I'm sorry.

 5                MR. HYNES:  What page are you

 6    on, Dan?

 7                MR. GOETZ:  The next page.

 8    QUESTIONS BY MR. GOETZ:

 9         Q.     Worked with Andy Eck on

10    cigarette shortage.

11         A.     Oh.  Yes, I did, yes.

12         Q.     All right.  So you were doing a

13    significant amount of other stuff besides

14    SOM.

15                And then it looks down below --

16    it says:  Worked with Joe Scholl on petty

17    cash, and you spent an hour and a half on

18    that day.  Correct?

19         A.     Yes.

20                (CVS-Burtner Exhibit 412 was

21         marked for identification.)

22    QUESTIONS BY MR. GOETZ:

23         Q.     I'm going to hand you what has

24    been marked as 412.  Do you see the first

25    page?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.     Yes.

 2        Q.     That is an e-mail from you to

 3   Mr. Mortelliti dated June 19th, 2012?

 4        A.     Yes.

 5        Q.     And if you open it up, that is

 6   a time study from June 18th, 2012, correct?

 7        A.     Yes.

 8        Q.     Okay.  And if you look at the

 9   6/15/12 Control IRR, it says review, it looks

10   like you spent 30 minutes?

11        A.     According to the time study,

12   yes.

13        Q.     Okay.  And you investigated, it

14   appears, zero orders.

15             MR. HYNES:  Objection to form.

16        A.     According to the time study,

17   yes.

18   QUESTIONS BY MR. GOETZ:

19        Q.     Okay.  Do you see the next

20   page, it says zero orders?

21        A.     Yes.

22        Q.     Okay.  And then if you look at

23   Review 6/17/12.

24             Do you see that?

25        A.     Yes, I see that.
```

Highly Confidential - Subject to Further Confidentiality Review

1      Q.     Okay.  And how long did that

2   take you?

3      A.     From 8:45 to 9:20, so 35

4   minutes.

5      Q.     Okay.  And how many orders, if

6   you look at the next page, did you review --

7   did you do a deep dive on?

8      A.     One.

9      Q.     One.  And that deep dive, how

10  long did it take you to do that?

11          MR. HYNES:  Objection to form.

12     A.     According to the time study, 30

13  minutes.

14  QUESTIONS BY MR. GOETZ:

15     Q.     You have no reason to suspect

16  that this time study is anything but

17  accurate, do you?

18     A.     No, I don't -- I mean, clearly

19  looking at the times I wasn't going to the

20  minute, but I was rounding to the closest

21  five-minute, I suppose.  But beyond that,

22  yes.  No, I don't have any reason to question

23  the accuracy.

24     Q.     And then if you could go to

25  112651, again, on this day, if you look at

Highly Confidential - Subject to Further Confidentiality Review

```
 1    the second-to-last entry, you're working with
 2    Joe Scholl for 50 minutes, again trying to
 3    resolve a petty cash issue.  Correct?
 4         A.    Yes.  According to that time
 5    study, that is correct.
 6         Q.    These first -- do you see the
 7    last entry?
 8         A.    Yeah, I do, I'm sorry.  I was
 9    just looking to see -- I was just trying to
10    see if it was the same day.
11               (CVS-Burtner Exhibit 413 was
12         marked for identification.)
13    QUESTIONS BY MR. GOETZ:
14         Q.    Let me show you what's been
15    marked as 413.  That first e-mail is dated
16    June 21st, 2012?
17         A.    Yes.
18         Q.    And it's from you to John
19    Mortelliti, correct?
20         A.    Yes.
21         Q.    And if you open it up, it's a
22    6/20/12 time study?
23         A.    Yes.
24         Q.    And if you look at -- it says:
25    Review 6/19/12 Control IRR.
```

```
 1                    Correct?

 2          A.       Yes.

 3          Q.       And you spent one hour,

 4     correct?

 5          A.       Yes.

 6          Q.       And it appears that you

 7     investigated three orders.

 8          A.       Yes, according to that time

 9     study.

10          Q.       Okay.  And how long did it take

11     you to investigate order 5408 -- store 5408?

12                   MR. HYNES:  Objection to form.

13          A.       According to this, 25 minutes.

14     QUESTIONS BY MR. GOETZ:

15          Q.       And what did you do?

16          A.       That would include deep diving,

17     as we've discussed, looking at order pattern,

18     common doctor, common patient, et cetera.

19          Q.       Those are the things that

20     Mr. Baker just asked you about that are

21     things that do not show up on the IRR,

22     correct?

23          A.       Yes, that is correct.

24          Q.       If you actually want to

25     investigate an order as potentially
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    suspicious, you have to do those things,

 2    correct?

 3              MR. HYNES:  Objection to form.

 4         A.    Yes.  If we identify an order

 5    that we feel looks irregular and we need to

 6    deep dive further, yes, we would need to

 7    access other systems to get that information.

 8    QUESTIONS BY MR. GOETZ:

 9         Q.    And could you look at

10    Store 8980?

11         A.    Yes.

12         Q.    You investigated an order,

13    correct?

14         A.    Yes.

15         Q.    How long did that take?

16         A.    Approximately 20 minutes.

17         Q.    And again, what did you do?

18         A.    Followed the same process.  It

19    was the same process for every store that we

20    would -- primarily the same process, up to

21    and including calling the pharmacy.

22         Q.    When you did call the pharmacy,

23    that would take significantly more time than

24    the 20 minutes, wouldn't it?

25              MR. HYNES:  Objection.  More --
```

Highly Confidential - Subject to Further Confidentiality Review

```
1           objection to form.
2           A.      Not necessarily.  The time
3      would vary depending on what I needed to ask
4      the pharmacist.
5      QUESTIONS BY MR. GOETZ:
6           Q.      Do you remember how long it
7      would take you?
8           A.      I don't recall.  It varied from
9      order to order or from store to store.
10          Q.      I did this chart, and it's too
11     difficult to put in front of the ELMO, but I
12     just want to make sure that the summary is
13     correct for this.
14                  We looked at four IRR dates,
15     correct?
16          A.      Yes.
17          Q.      When you reviewed the IRRs, you
18     took between 30 minutes and an hour?
19                  MR. HYNES:  Objection.  Are you
20          asking him what the document says or
21          what his recollection is?
22                  MR. GOETZ:  I'm asking if this
23          is -- if I wrote this down correctly.
24     QUESTIONS BY MR. GOETZ:
25          Q.      Do you remember this?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    MR. HYNES:  From the document?

 2                    MR. GOETZ:  Yeah.  I was

 3          writing as we were speaking.

 4          A.    Yes, I believe so.  I believe

 5     that's the information from the time study.

 6     QUESTIONS BY MR. GOETZ:

 7          Q.    From the time studies.

 8                    And twice you reviewed, of

 9     these, zero orders, and one time you reviewed

10     one order, and one time you reviewed three

11     orders, correct?

12          A.    Right.  And one thing to keep

13     in mind is that the volume of the IRR would

14     vary pretty wildly, especially at the

15     beginning and the middle of the month where

16     it would be relatively small.

17          Q.    Do you -- well, these are not,

18     by the way -- do you know how long these IRRs

19     were?

20          A.    No specific days.  I have no

21     idea.

22          Q.    Well, let me ask you.  Based

23     upon the fact that you reviewed an IRR in 55

24     minutes from 6/14/12 and you flagged zero

25     orders, what would be your guess?
```

```
 1                    MR. HYNES:  Objection; calls

 2          for speculation.

 3                    MR. GOETZ:  He just testified

 4          that the IRR differences -- when I

 5          asked him about if he reviewed zero

 6          orders he said, yes, but those are

 7          from the middle -- the middle of the

 8          month, as though he had some knowledge

 9          as to what this would show.

10                    MR. HYNES:  He just said it was

11          shorter, and you asked him then how

12          long it was, and he said he doesn't

13          know.

14          A.    I don't remember the specific

15   number of how long it would be.  I know that

16   it was drastically smaller than what it would

17   be at the end of the month.

18   QUESTIONS BY MR. GOETZ:

19          Q.    Okay.  Would it shock you if I

20   told you some of these were a couple hundred

21   pages?

22                    MR. HYNES:  Objection to form.

23          A.    I don't know.  I don't know if

24   it would shock me or not.

25                    --oOo--
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    QUESTIONS BY MR. GOETZ:

 2         Q.    I was just trying to understand

 3    when you were telling me that these were from

 4    the middle, what that meant to you.

 5         A.    To what I understand.

 6         Q.    Mr. Burtner, I'm going to hand

 7    to you what has been marked as 414.

 8              (CVS-Burtner Exhibit 414 was

 9         marked for identification.)

10    QUESTIONS BY MR. GOETZ:

11         Q.    That front e-mail is an e-mail

12    from you to Pam Hinkle, correct?

13         A.    Yes.

14         Q.    Dated July 6 of 2012?

15         A.    Yes.

16         Q.    Okay.  And if you turn on the

17    second page, that is a time study from

18    July 5th of 2012, correct?

19         A.    Yes.

20         Q.    And if you look at the

21    July 3rd, '12 Control IRR, that took you 15

22    minutes, correct, to review?

23         A.    Yes.

24         Q.    And if you look at the

25    July 4th, 2012 IRR, that took you 20 minutes,
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    correct?

 2         A.     Yes.

 3         Q.     And again, you reviewed zero

 4    orders on both days, correct?

 5                MR. HYNES:  Objection to form.

 6         A.     According to the time study,

 7    yes.

 8    QUESTIONS BY MR. GOETZ:

 9         Q.     All right.  In fact, we'll use

10    your language, zero orders for additional due

11    diligence, correct?

12         A.     That is correct.

13         Q.     Okay.  And could you turn to

14    the second page?

15         A.     Yes.

16                MR. HYNES:  Of the time study?

17                MR. GOETZ:  Yes.

18    QUESTIONS BY MR. GOETZ:

19         Q.     Again, on this day, you spent

20    three hours, look at the bottom, researching

21    a cigarette shortage?

22         A.     Yes.  At this time I was still

23    working as a loss prevention supervisor, so

24    at the beginning of the month a large portion

25    of my time would be devoted to loss
```

1    prevention work.

2         Q.    It would not be devoted to

3    suspicious orders, would it?

4         A.    A portion of my time, but we

5    also had Paul, who was full time at that time

6    as well.

7         Q.    You keep mentioning Paul.

8    There was a big issue about Paul's

9    performance, wasn't there?

10             MR. HYNES:  Objection to form.

11        A.    Not that I'm aware of.

12   QUESTIONS BY MR. GOETZ:

13        Q.    You don't remember those

14   e-mails?

15        A.    No.  I --

16        Q.    Okay.

17        A.    I thought Paul was doing a fine

18   job at analyzing the data.

19        Q.    Okay.  I'm going to hand you

20   what has been marked as 415.

21             (CVS-Burtner Exhibit 415 was

22        marked for identification.)

23   QUESTIONS BY MR. GOETZ:

24        Q.    That front page is an e-mail

25   from you to Pam Hinkle?

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.      Correct.

 2          Q.      And on the inside it attaches a

 3    time study from July 9th, 2012, and then I

 4    will tell you it attaches other ones as well.

 5          A.      Okay.

 6          Q.      Okay?  And that's kind of

 7    indicative from what's shown in the e-mail.

 8          A.      Uh-huh.

 9          Q.      We'll start with the July 9th

10    of 2012.  On that day you reviewed an IRR

11    from July 6 of 2012?

12          A.      Yes.

13          Q.      You spent 35 minutes?

14          A.      Yes.

15          Q.      Zero orders for additional deep

16    dive, correct?

17          A.      According to the time study,

18    yes.

19          Q.      All right.  On that day you

20    also reviewed an IRR from July 8th?

21          A.      Yes.

22          Q.      You spent 40 minutes?

23          A.      Yes.

24          Q.      And again, you flagged for

25    additional due diligence zero orders.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.      Yes.

 2          Q.      Could you go to the third page

 3    of that where it begins "Retrieve 7/10/12 IRR

 4    from Data Room"?

 5                  MR. HYNES:  What Bates number,

 6          Dan?  Oh, we don't have it.  Sorry.

 7    QUESTIONS BY MR. GOETZ:

 8          Q.      Keep going.

 9          A.      Okay.  I've retrieved which?

10          Q.      On the third line down, it says

11    "Retrieve 7/10/12 IRR"?

12          A.      Got it.

13          Q.      Okay.  And that took 15

14    minutes, correct?

15          A.      Yes.

16          Q.      And then it says:  Organize and

17    file IRR.

18                  And that took 15 minutes?

19          A.      Yes.

20          Q.      I mean, you're spending almost

21    as time [sic] grabbing the IRR and putting it

22    in the box as you are in any form of review

23    of these orders, correct?

24                  MR. HYNES:  Objection to form.

25          A.      Retrieving the IRR was on the
```

Highly Confidential - Subject to Further Confidentiality Review

```
1    opposite side of the building so I had to

2    walk there from my office to get to it and

3    back, which would be approximately a

4    15-minute walk round trip.  And then the

5    organizing of the file, I mean, I can't speak

6    to specifically what happened this day, but

7    something may have come up to cause it to

8    take a little bit longer; if I had a phone

9    call or an e-mail or something I responded to

10   in the middle, I don't know.

11   QUESTIONS BY MR. GOETZ:

12        Q.     That time, though, was a normal

13   time.  It would take you 15 to 30 minutes to

14   take the IRR and organize it.  We can go

15   through these again.

16             MR. HYNES:  Objection to form.

17        A.     I don't recall if that's a

18   normal time or not.  I don't have any reason

19   to not believe that it took me 15 minutes

20   this day.

21   QUESTIONS BY MR. GOETZ:

22        Q.     Okay.  And on some of these

23   days you took 15 minutes to review the IRR,

24   right?  You took less, sometimes, to actually

25   do the work than to actually go and have it
```

Highly Confidential - Subject to Further Confidentiality Review

1    printed and put it in the box.

2          A.     I can't speak to the quantity

3    of orders that were on the IRR for those

4    times either.

5                 COUNSEL ON PHONE:  Hello?

6                 MR. GOETZ:  Hello.

7    QUESTIONS BY MR. GOETZ:

8          Q.     The page numbers of the IRR,

9    the total pages, would give us a very good

10   indication of the quantity of orders on the

11   IRR, correct?

12         A.     Yes, I believe so.

13         Q.     Okay.  So, for example, I've

14   seen some IRRs from 2012 with three orders

15   per page and I've seen some from 2011 with

16   five orders per page.

17                Are you aware of that?

18                MR. HYNES:  Objection to form.

19         A.     I don't recall a time where

20   there was different orders, different

21   quantities of orders per page.

22   QUESTIONS BY MR. GOETZ:

23         Q.     Do you remember how many there

24   were in 2012?

25         A.     I'm sorry, how many of what?

Highly Confidential – Subject to Further Confidentiality Review

1    Q.    How many orders per page in

2    2012.

3    A.    I don't.

4    Q.    Did we look at 407?

5    MR. HYNES:  Yeah, we did.

6    QUESTIONS BY MR. GOETZ:

7    Q.    Could you go back to that.

8    Could you look at 11385, and you'll see

9    there's two -- two orders up top and then

10   what appears to be one blacked out?  Does

11   that refresh your recollection that there's

12   three pages per order?  Three orders per

13   page.

14   A.    Yes, in this IRR it does appear

15   that there would be three orders per page.

16   Q.    So, again, if we know how many

17   pages an IRR was, we have a really good

18   idea -- we can make a really good estimate

19   how many orders were on that, correct?

20   MR. HYNES:  Objection to form.

21   A.    Orders of all Schedule III, IVs

22   and Vs, yes.

23   QUESTIONS BY MR. GOETZ:

24   Q.    Everything you were supposed to

25   review, correct?

```
 1        A.      Yes.  Yes.

 2        Q.      Right.  So everything on that

 3   IRR, not just hydrocodone combination

 4   products, you were supposed to review

 5   everything that showed up on that IRR.

 6        A.      Yes.  Every order that came

 7   through on the IRR, we did the initial due

 8   diligence.

 9        Q.      Could you go to, within that,

10   it says:  Document produced in native format,

11   and that's 112683.

12                MR. HYNES:  Which exhibit?

13                MR. GOETZ:  We are on 415.

14                MR. HYNES:  That's the one you

15        were using -- it's the last one we

16        were using.

17                THE WITNESS:  Yes.  Which page?

18                MR. HYNES:  116283?

19                MR. GOETZ:  112683.

20   QUESTIONS BY MR. GOETZ:

21        Q.      And that is a time study from

22   7/12 of '12?

23        A.      Yes.

24        Q.      And that day you reviewed the

25   IRR dated July 11th, 2012?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.      Yes.

 2          Q.      You spent 35 minutes?

 3          A.      According to the time study,

 4   yes.

 5          Q.      And you investigated one order

 6   for additional due diligence, correct?

 7          A.      According to this study, yes.

 8          Q.      Okay.  And that was an order

 9   for store 2438?

10          A.      Yes.  That does appear to be

11   2438.

12          Q.      Okay.  And again, to

13   investigate that order you took 20 minutes.

14          A.      Yes, approximately 20 minutes.

15          Q.      Again, during this time study

16   it shows a number of additional things you

17   were doing besides trying to investigate

18   suspicious orders.  Again I'm going to show

19   this to you.  This includes IRRs from

20   July 3rd, July 4th, July 6th, July 8th and

21   July 11th, five IRRs, and you investigated

22   one order for additional due diligence.

23          A.      Yes.

24          Q.      I'm handing you what's been

25   marked as 416.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    (CVS-Burtner Exhibit 416 was

 2          marked for identification.)

 3     QUESTIONS BY MR. GOETZ:

 4          Q.     That is an e-mail dated

 5     July 19th from you to Pam Hinkle?

 6          A.     Yes.

 7          Q.     And if you open it up, it says

 8     "LP analyst time study"?

 9          A.     Yes.

10          Q.     And the date of that study is

11     July 18th, 2012, correct?

12          A.     Yes.

13          Q.     And it has an IRR date of

14     7/17/12, correct?

15          A.     Yes, that is correct.

16          Q.     You spent 50 minutes?

17          A.     According to this, yes.

18          Q.     And you investigated zero

19     orders.

20                 MR. HYNES:  Objection to form.

21          A.     According to the time study,

22     yes.

23     QUESTIONS BY MR. GOETZ:

24          Q.     You did on this day spend a

25     half hour at the second-to-last entry
```

Highly Confidential - Subject to Further Confidentiality Review

 1     researching replacement pads for earmuffs,

 2     didn't you?

 3              Do you see the -- I go back to

 4     the first page.  Right on the first page,

 5     right under the SOM stuff, you research

 6     replacement pads for earmuffs on this day,

 7     right?

 8         A.    Yes.  That's in reference to

 9     safety equipment that we used in the

10     warehouse.

11         Q.    It has nothing to do with SOM,

12     does it?

13         A.    No.  At this time I was

14     splitting my effort between LP and analyst.

15         Q.    I'm going to hand you what's

16     been marked as 417.

17              (CVS-Burtner Exhibit 417 was

18         marked for identification.)

19     QUESTIONS BY MR. GOETZ:

20         Q.    That is an e-mail dated

21     August 23rd, 2012.  Do you see that?

22         A.    Yes.

23         Q.    And if you open it up it's a

24     time study from August 22nd, 2012, correct?

25         A.    Yes.

Highly Confidential - Subject to Further Confidentiality Review

```
1          Q.      And on that day you reviewed

2     the IRR from 8/21/12, correct?

3          A.      Yes.

4          Q.      You spent 30 minutes?

5          A.      According to the time study,

6     yes.

7          Q.      And you looked at zero orders

8     again, right?

9          A.      According to the time study.

10                 MR. HYNES:  Objection to form.

11         A.      According to the time study.

12    QUESTIONS BY MR. GOETZ:

13         Q.      You did additional due

14    diligence on zero orders, correct?

15         A.      According to the time study on

16    this day.

17                 (CVS-Burtner Exhibit 418 was

18         marked for identification.)

19    QUESTIONS BY MR. GOETZ:

20         Q.      I'm going to hand you what's

21    been marked as 418.  The front page indicates

22    that's an e-mail from you to Pam Hinkle dated

23    9/10 of '12?

24         A.      Yes.

25         Q.      And that is a time study from
```

1    9 -- 9/7/12, correct?

2         A.    Correct.

3         Q.    And you reviewed the 9/6/12

4    IRR?

5         A.    Yes.

6         Q.    And it took you 15 minutes?

7         A.    According to the time study,

8    yes.

9         Q.    And on that day, you had two

10   orders for additional due diligence, correct?

11        A.    According to the time study,

12   yes.

13        Q.    And one was for order --

14   Store #3235?

15        A.    Yes.

16        Q.    And you took 10 minutes

17   investigating that, correct?

18        A.    On this day, yes.

19        Q.    And one was for order --

20   Store #828?

21        A.    Yes.

22        Q.    And you took 10 minutes, didn't

23   you?

24        A.    According to the time study,

25   yes.

Highly Confidential - Subject to Further Confidentiality Review

```
 1          Q.     I'm going to show you one more.
 2                 No, I'm done.
 3                 MR. GOETZ:  Let me have 424 and
 4          425.
 5     QUESTIONS BY MR. GOETZ:
 6          Q.     Do you have any reason to think
 7     that those time studies we just looked at
 8     don't accurately reflect --
 9          A.     No, I do not.
10          Q.     -- your day?
11          A.     No, I do not.
12          Q.     I'm going to show you what's
13     been marked as 424 and 425.  424 is the
14     e-mail and 425 are the notes.  I apologize
15     for my reach.
16                 (CVS-Burtner Exhibit 424 was
17          marked for identification.)
18                 (CVS-Burtner Exhibit 425 was
19          marked for identification.)
20     QUESTIONS BY MR. GOETZ:
21          Q.     Do you see that e-mail?  That
22     is an e-mail from Craig Schiavo, and it's to
23     a number of people, including you?
24          A.     Yes, I see that.
25          Q.     And that's an e-mail dated
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    November 29th, 2012, correct?

 2         A.    Yes, that is the date.

 3         Q.    And Mr. Schiavo indicates that

 4    he's attaching his notes from that meeting

 5    that you guys had, correct?

 6         A.    Yes, I believe so.

 7         Q.    It says:  List of opportunities

 8    (my notes) from our meeting on 11/27?

 9         A.    Yes, I see that.  Yes.

10         Q.    Okay.  And if -- could you go

11    to the notes, please?  Do you see it says:

12    Opportunities - Current SOM Process?

13         A.    Yes, I see that.

14         Q.    Could you go to paragraph 8,

15    please.

16         A.    Okay.

17         Q.    Paragraph 8 says:  100-plus

18    orders flagged by system, looked (past

19    history, algorithm, max/min).

20               That's the IRR, correct?

21               MR. HYNES:  Objection to form.

22         A.    I'm not 100% certain of what

23    he's referring to, but it would appear to be

24    the IRR.

25                    --oOo--
```

```
 1    QUESTIONS BY MR. GOETZ:

 2         Q.    What else flagged -- what else

 3    flagged?

 4         A.    Whenever we used the 5,000 dose

 5    report, we had the hot list reports that we

 6    were using.  But it would appear that this

 7    was the IRR.

 8         Q.    And then it says:  Two to three

 9    were stopped by Aaron for review.

10         A.    Yes, I see that.

11         Q.    And then it says:  Deeper dive

12    review, dispensing versus ordering, reach out

13    to store.

14               That's what we were just

15    talking about on your timesheets, correct?

16         A.    Right, and those are high-level

17    steps that we would complete, yes.

18         Q.    I get it.

19               Does that -- is it fair to

20    assume that -- well, according to this IRR

21    time studies that looked at, I don't know,

22    over a dozen IRRs, you would investigate

23    anywhere from zero to three.

24               But is it fair to assume that

25    those notes are correct, you would normally
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    look at two to three orders per IRR for a
 2    deeper-dive review?
 3              MR. HYNES:  Objection to form.
 4        A.    I don't -- I don't recall how
 5    many orders I would look at.
 6    QUESTIONS BY MR. GOETZ:
 7        Q.    The time studies are probably
 8    the best evidence of that, correct?
 9              MR. HYNES:  Objection to form.
10        A.    Perhaps.  We looked at, what,
11    12 days over three months.
12    QUESTIONS BY MR. GOETZ:
13        Q.    Correct.
14        A.    So, I mean, it's a small sample
15    size, and on those specific days we can see
16    how many orders I reviewed.  I mean, I don't
17    know if that's enough information for me to
18    say that there's a percentage of orders per
19    IRR that I would review.
20        Q.    Mr. Burtner, you filled out
21    these time studies so CVS would have a
22    realistic and an accurate idea of, one, what
23    you were doing, and how many people were
24    needed in the SOM program, correct?
25              MR. HYNES:  Objection to form.
```

```
 1            A.      Yes, I believe that was part of

 2       the reason.

 3       QUESTIONS BY MR. GOETZ:

 4            Q.      And you would fill those out

 5       for typical days, correct?

 6                    MR. HYNES:  Objection to form.

 7            A.      I believe I filled it out every

 8       day, yes.

 9       QUESTIONS BY MR. GOETZ:

10            Q.      Okay.  And trust me, to the

11       extent that there are IRRs in there that show

12       you're reviewing 40 or 50 or 20 orders a day,

13       your counsel will find them and point them

14       out.

15                    MR. HYNES:  Is that a question?

16       QUESTIONS BY MR. GOETZ:

17            Q.      And I promise you there are

18       not, okay?

19                    MR. HYNES:  Objection to the

20            question, narrative.

21       QUESTIONS BY MR. GOETZ:

22            Q.      My question is:  Based upon

23       what we've looked at, what percentage of

24       orders do you think you were reviewing?

25                    MR. HYNES:  Objection, asked
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



23        Q.    Mr. Burtner, I'm going to hand

24    you what's been marked as 420.  Actually,

25    strike that, because I think I might have one

1    that has headings you can read.

2              MR. HYNES:  Do you want to put

3        it up here?

4    QUESTIONS BY MR. GOETZ:

5        Q.    Yeah.  Mr. Burtner, I'm going

6    to hand you what's been marked as

7    Exhibit 422.

8              MR. HYNES:  So are we making

9        420 part of the record, or no?

10             MR. GOETZ:  No, you don't have

11       to.

12             MR. HYNES:  Give that back to

13       him.

14   QUESTIONS BY MR. GOETZ:

15       Q.    And that is what's been marked

16   as 422.

17             (CVS-Burtner Exhibit 422 was

18       marked for identification.)

19   QUESTIONS BY MR. GOETZ:

20

21

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



12      Q.      What this tells you is how much
13  was shipped to the pharmacy and how much was
14  dispensed from the pharmacy, correct?
15      A.      Correct.
16      Q.      It tells you whether or not
17  there's theft within that system, correct?
18              MR. HYNES:  Objection to form.
19      A.      Correct, but dispensed versus
20  shipped was information that we would use as
21  part of our investigation.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



```
 9          Q.     You would not have put

10     something --

11               (Telephonic interruption.)

12               THE VIDEOGRAPHER:  We are now

13        going off the record, and the time is

14        3:28 p.m.

15               (Recess taken, 3:28 p.m. to

16        3:37 p.m.)

17               THE VIDEOGRAPHER:  We are now

18        going back on the record, and the time

19        is 3:37 p.m.

20     QUESTIONS BY MR. GOETZ:

21          Q.     Mr. Burtner, could you go back

22     to page 2 of Exhibit 406?

23          A.     Okay.
```

Highly Confidential - Subject to Further Confidentiality Review



```
24           Q.      All right.  And in any event,

25      when you do that, then at the end, you
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    document the review on the recap spreadsheet,

 2    correct?

 3         A.     Yes.  According to this flow

 4    map, yes.

 5         Q.     So again, if you do a review of

 6    a high-volume store, that should show up on a

 7    recap spreadsheet.

 8              MR. HYNES:  Objection to form.

 9         A.     Yes, according to the flow map,

10    yes.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7          MR. HYNES:  Can we take a break

8      at a convenient time?

9          MR. GOETZ:  I'll take a break

10     if you want.  It doesn't matter.

11         MR. HYNES:  Okay.

12         THE VIDEOGRAPHER:  Okay.  We

13     are now going off the record, and the

14     time is 4:33 p.m.

15         (Recess taken, 4:33 p.m. to

16     4:45 p.m.)

17         THE VIDEOGRAPHER:  We are now

18     going back on the record, and the time

19     is 4:45 p.m.

20  QUESTIONS BY MR. GOETZ:

21     Q.    Mr. Burtner, I'm going to show

22  you three exhibits.  It's 437, 438 and 445.

23         (CVS-Burtner Exhibit 437 was

24     marked for identification.)

25         (CVS-Burtner Exhibit 438 was

Highly Confidential - Subject to Further Confidentiality Review

1           marked for identification.)

2                   (CVS-Burtner Exhibit 445 was

3           marked for identification.)

4      QUESTIONS BY MR. GOETZ:

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



23        Q.    We had earlier, when we looked

24    at your spreadsheet -- okay.  When we looked

25    at your spreadsheet earlier, 406, that

Highly Confidential - Subject to Further Confidentiality Review

```
 1    flowchart; do you remember?

 2         A.    Yes.

 3         Q.    That indicates everything that

 4    you do a deep dive on is put on the IRR

 5    recap, correct?

 6              MR. HYNES:  Objection to form.

 7         A.    Yes.  The flowchart indicates

 8    that that was the process.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          Q.     Have you learned that in your

Highly Confidential - Subject to Further Confidentiality Review

```
 1    prep?

 2                 MR. HYNES:  Objection.  Don't

 3         answer.

 4    QUESTIONS BY MR. GOETZ:

 5         Q.      Strike that.

 6                 MR. HYNES:  Come on, Dan.

 7    QUESTIONS BY MR. GOETZ:

 8         Q.      And I apologize.  Strike that.

 9                 MR. GOETZ:  I apologize.

10    QUESTIONS BY MR. GOETZ:

11         Q.      Mr. Burtner, the first lawsuit

12    to be tried relates to what we call CT-1,

13    Case Track 1, and that involves CVS

14    pharmacies or the distribution to CVS

15    pharmacies in Cuyahoga and Summit County,

16    okay?

17         A.      Okay.

18         Q.      And so this listing I will

19    represent to you is our understanding, as

20    produced by CVS, of the Case Track 1 stores.

21         A.      Okay.

22         Q.      So --

23         A.      So the stores in those two

24    counties.

25         Q.      Yes, sir.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.      Okay.

 2                  MR. GOETZ:  And I apologize,

 3          Paul.

 4      QUESTIONS BY MR. GOETZ:

 5          Q.      So when I say CT-1 stores, I'm

 6      talking about these stores in Cuyahoga and

 7      Summit County, okay?

 8          A.      Understood.

 9                  (CVS-Burtner Exhibit 440 was

10          marked for identification.)

11      QUESTIONS BY MR. GOETZ:

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1     QUESTIONS BY MR. GOETZ:



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



20          Q.     Okay.  I make the assumption

21     that this is a document, a control recap from

22     February 6 of '13 to 12/30 of '13.  A

23     significant period of this you were the

24     IRR -- the SOM manager.

25               Would you be surprised if I

Highly Confidential - Subject to Further Confidentiality Review

1    told you that during that period, one order

2    in the CT-1 stores received a deep dive?

3              MR. HYNES:  Objection to form.

4         A.    I can't comment as to whether

5    or not I'd be surprised.  We weren't

6    necessarily looking at specific regions or

7    states to indicate whether or not we would --

8    we would further deep-dive a store.  When we

9    were going through the IRR, I mean, as you

10   can see, we know where the origin DC is, but

11   we don't know where the store is.

12   QUESTIONS BY MR. GOETZ:

13        Q.    I understand.  One order.  One

14   order in two of the largest counties in a

15   state that is decimated by the opioid crisis

16   got additional due diligence.

17              Does that surprise you?

18              MR. HYNES:  Objection to form;

19         lack of foundation, asked and

20         answered.

21        A.    Again, I can't comment as to

22   whether or not it surprises me.  All I can

23   say is we were not looking at the state that

24   the store was in to determine -- as any part

25   of the determining factor as to whether or

1    not we would complete a deep dive.

2    QUESTIONS BY MR. GOETZ:

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential – Subject to Further Confidentiality Review

```
 1

 2

 3

 4

 5

 6        Q.      What if I told you that the

 7   other IRR, Exhibit 441, went from

 8   January 11th to June of 2012?

 9        A.      This is a recap from December

10   '10 to November -- or June 2012.

11        Q.      To June of 2012.  What if I

12   told you that one order got additional due

13   diligence --

14             MR. HYNES:  Objection to form.

15   QUESTIONS BY MR. GOETZ:

16        Q.      -- for the CT-1 stores.  Would

17   that surprise you, over 18 months?

18             MR. HYNES:  Objection to form;

19        lack of foundation.

20        A.      Again, I can't comment as to

21   whether or not I'd be surprised.  Again, we

22   weren't looking at states as part of our due

23   diligence -- or part of our review of the

24   IRR.

25                    --oOo--
```

```
 1    QUESTIONS BY MR. GOETZ:

 2         Q.    Over an 18-month period in the

 3    CT-1 stores, Cuyahoga and Summit County,

 4    okay, during that period, you looked at one

 5    order where you might have looked at the

 6    store metrics or you might have looked at the

 7    pharmacies, you might have looked at the

 8    patients, you might have looked at the cash

 9    trend, you might have looked at how far the

10    patients were coming, you might have looked

11    at whether it was pill mills; one time over

12    18 months, correct?

13              MR. HYNES:  Objection.  Calls

14         for speculation.

15         A.    I don't know.  I don't know if

16    that -- if that's true or not.

17    QUESTIONS BY MR. GOETZ:

18         Q.    Do you have any reason to

19    believe these IRRs are not accurate?

20              MR. HYNES:  Objection to the

21         form.

22    QUESTIONS BY MR. GOETZ:

23         Q.    The IRR recaps, I apologize.

24              MR. HYNES:  He said he didn't

25         recall them.
```

Highly Confidential - Subject to Further Confidentiality Review

```
1              A.      I mean, sitting here today, I

2      have no reason to believe that they're

3      inaccurate, but I don't -- that doesn't

4      indicate that they are.

5                     (Discussion off the

6           stenographic record.)

7                     MR. HYNES:  How much time?  20

8           minutes?

9                     MR. GOETZ:  40.

10     QUESTIONS BY MR. GOETZ:

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11            MR. HYNES:  Objection.
12      QUESTIONS BY MR. GOETZ:
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



4    QUESTIONS BY MR. GOETZ:

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



20          MR. GOETZ:  I'm done.

21          THE VIDEOGRAPHER:  Going off?

22     Should we go off the record?

23          MR. GOETZ:  Yeah.

24          THE VIDEOGRAPHER:  We are now

25     going off the record, and the time is

```
 1          5:27 p.m.

 2                  (Recess taken, 5:27 p.m. to

 3          5:27 p.m.)

 4                  THE VIDEOGRAPHER:  We're going

 5          back on the record and the time is

 6          5:27 p.m.

 7                  MR. GOETZ:  Mr. Burtner, I have

 8          marked and I'm going to put into the

 9          record that chart we made about the

10          time studies, okay?  And I've marked

11          that as Exhibit 500.

12                  And I am actually going to mark

13          that chart as Exhibit 501A and 501B.

14          Okay?

15                  Now we're done.

16                  (CVS-Burtner Exhibit 500 was

17          marked for identification.)

18                  (CVS-Burtner Exhibit 501A was

19          marked for identification.)

20                  (CVS-Burtner Exhibit 501B was

21          marked for identification.)

22                  THE VIDEOGRAPHER:  We're going

23          off the record and the time is

24          5:28 p.m.

25                  (Recess taken, 5:28 p.m. to
```

Highly Confidential - Subject to Further Confidentiality Review

1          5:30 p.m.)

2                   THE VIDEOGRAPHER:  We are now

3          going back on the record, and the time

4          is 5:30 p.m.

5                   FURTHER EXAMINATION

6      QUESTIONS BY MR. BAKER:

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



22        Q.     Okay.  Mr. Vanelli was whom?

23        A.     Mr. Vanelli was a vice

24    president, I believe, within CVS.

25        Q.     And Mr. Schiavo was whom?

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.    A program manager, I believe on

 2   the compliance team.

 3        Q.    He was Kelly's boss?  Is that

 4   right?

 5        A.    I don't know that to be true.
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1    please.

2              (CVS-Burtner Exhibit 85 was

3         marked for identification.)

4    QUESTIONS BY MR. BAKER:

5         Q.    Actually, I'll give you a

6    highlighted one if you'd like.  To get

7    straight --

8              MR. HYNES:  Do you want this

9         one to put into the record, though?

10             MR. BAKER:  It doesn't matter.

11        The non-highlighted can go in.

12             MR. HYNES:  All right.

13   QUESTIONS BY MR. BAKER:

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review

```
 1        Q.      And who was Andy Eck?

 2        A.      Andy Eck was also a loss

 3   prevention supervisor at the Indy DC.

 4        Q.      Okay.  And at the time you were

 5   receiving these e-mails and responding to

 6   them, you were already at Amazon doing your

 7   current job, correct?

 8        A.      Yes, that is correct.

 9

10

11

12

13

14

15

16

17

18

19                Who is she?  Shauna who?

20        A.      That would be Shauna Helfrich.

21        Q.      Okay.  And she was the lady

22   that took over to be the helper?  Is that

23   right?

24                MR. HYNES:  Objection to form.

25        A.      She was initially a flex
```

Highly Confidential - Subject to Further Confidentiality Review

```
1    associate in mid -- I'm sorry, late 2012, and

2    then by the time I left she was essentially

3    working as a full-time analyst on the SOM

4    team.

5    QUESTIONS BY MR. BAKER:

6         Q.    Okay.  You know that for a fact

7    or you just suspect that?

8         A.    No, I recall that she was up in

9    our area most of the time.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |

20          MR. BAKER:  That's all I have.

21     Thank you.

22          MR. HYNES:  I have just a few

23     minutes of follow-ups, so can we just

24     break for a minute?

25          THE VIDEOGRAPHER:  We are now

```
 1          going off the record, and the time is

 2          5:40 p.m.

 3                  (Recess taken, 5:40 p.m. to

 4          5:45 p.m.)

 5                  THE VIDEOGRAPHER:  We are now

 6          going back on the record, and the time

 7          is 5:45 p.m.

 8                          EXAMINATION

 9  QUESTIONS BY MR. HYNES:

10          Q.    Good evening, Mr. Burtner.  As

11  you know, my name is Paul Hynes.  I just have

12  a few follow-up questions for you real quick.

13                  Have you ever, before today,

14  been deposed?

15          A.    No, I have not.

16          Q.    Okay.  And counsel for the

17  plaintiffs, both Mr. Baker and Mr. Goetz,

18  asked you a lot of questions today, didn't

19  they?

20          A.    Yes, that is true.

21          Q.    And did you find some of those

22  questions to be confusing?

23                  MR. BAKER:  Object to form.

24          A.    Yes.  At times I wasn't certain

25  what question was being answered or if a
```

Highly Confidential - Subject to Further Confidentiality Review

1    question was being answered at all -- or

2    asked at all.

3    QUESTIONS BY MR. HYNES:

4         Q.    Okay.  And you worked at CVS in

5    SOM for a total of approximately one and a

6    half years, correct?

7         A.    Approximately, yes.

8         Q.    Okay.  And you were the SOM

9    manager for about six months of that time,

10   right?

11        A.    Yes.

12        Q.    Okay.  And you were in that

13   position until June of 2013 when you left

14   CVS.

15        A.    Yes.

16        Q.    And you've worked at Amazon

17   here in Seattle ever since then?

18        A.    Yes, that is correct.

19        Q.    Okay.  And you've had nothing

20   to do with SOM since you left CVS?

21             MR. BAKER:  Object to form.

22        A.    No, I have not.

23   QUESTIONS BY MR. HYNES:

24        Q.    And you've had nothing to do

25   with the pharmaceutical industry since you

```
 1    left CVS?

 2         A.     No, I have not.

 3         Q.     And you don't recall everything

 4    that you did six years ago when you were

 5    working in SOM at CVS, do you?

 6              MR. BAKER:  Object to form.

 7         A.     No, definitely not.

 8    QUESTIONS BY MR. HYNES:

 9         Q.     Okay.  And you were shown a lot

10    of documents today, weren't you?

11         A.     Yes, I was.

12         Q.     Okay.  And you don't recall

13    seeing a lot of those documents before you

14    saw them today during your deposition, do

15    you?

16              MR. BAKER:  Object to form.

17         Also you're opening the door for me to

18         ask him about your discussions with

19         him, if you want to get into that.

20              MR. HYNES:  What's that?

21              MR. BAKER:  You're opening the

22         door for me to ask him about your

23         discussions with him by asking that

24         question, just to let you know.

25    QUESTIONS BY MR. HYNES:
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1           Q.     Let me rephrase the question.

 2                  You don't recall seeing the

 3    documents during your time at CVS, do you?

 4    Many of those documents?

 5                  MR. BAKER:  Object to form.

 6           A.     No.  Many of the forms I did

 7    not recall seeing.

 8    QUESTIONS BY MR. HYNES:

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          MR. HYNES:  I have no further

1    questions.

2                MR. BAKER:  I have a few.

3                   FURTHER EXAMINATION

4    QUESTIONS BY MR. BAKER:

5         Q.    You said you've had nothing to

6    do with the pharmaceutical industry since you

7    left CVS, correct?

8         A.    Yes, that is correct.

9         Q.    Well, you've met with their

10   lawyer, who is also your lawyer, who is

11   sitting right next to you.  That's the

12   pharmaceutical industry, isn't it?

13               MR. HYNES:  Objection to form.

14   QUESTIONS BY MR. BAKER:

15        Q.    Right?

16        A.    Yes.

17        Q.    So you have had something to

18   do.  You've met with the lawyer that

19   represents CVS who's sitting right next to

20   you, asking you questions, and you've also

21   had that lawyer agree to be your lawyer

22   personally here today in Seattle where you

23   work where we're taking your deposition,

24   correct?

25               MR. HYNES:  Objection to form.

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.      I was never under the

 2     understanding that he was my lawyer.  I was

 3     under the understanding that I was here on

 4     behalf of CVS, answering questions as a

 5     former employee.

 6     QUESTIONS BY MR. BAKER:

 7          Q.      At the beginning of this

 8     deposition, you heard the lawyer sitting next

 9     to you identify himself as representing CVS

10     and representing Aaron Burtner.

11               You heard that, didn't you?

12          A.      Yes, I believe that was the

13     statement.

14          Q.      That is your lawyer sitting

15     right next to you, within three feet of you

16     the whole time of this deposition, correct?

17               MR. HYNES:  Objection to form.

18     QUESTIONS BY MR. BAKER:

19          Q.      Right?

20          A.      Again --

21          Q.      That's your lawyer?

22          A.      I was never under the

23     understanding he was my lawyer.

24          Q.      Well, he says he is.  Is he

25     your lawyer or not?
```

```
 1                    MR. HYNES:  Objection, asked

 2          and answered.

 3          A.      I don't know.  I don't know if

 4     he's classified as my lawyer or not.  I don't

 5     know.

 6     QUESTIONS BY MR. BAKER:

 7          Q.      So the things that you say you

 8     can't remember, the things that you're

 9     talking about on this IRR, this is something

10     that you say you did every single day from

11     the time that you started into the SOM

12     program until the time you left at CVS; every

13     day that you showed up for work, this is what

14     you did, for months.

15                    MR. HYNES:  Objection to the

16          form.

17     QUESTIONS BY MR. BAKER:

18          Q.      Right?

19          A.      Yes.

20          Q.      And now you're telling us that

21     you can't remember it just because it was a

22     certain time period ago.  Right?  You can't

23     remember the details of it, even though you

24     did it every stinking day for about a year.

25     Am I right?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    MR. HYNES:  Objection to form.
 2          A.    I recall the form.  I don't
 3    recall the specifics of the metrics that are
 4    on the form, no.
 5    QUESTIONS BY MR. BAKER:
 6          Q.    Well, he just asked you, were
 7    you familiar with every number on the form
 8    and what it represented in relation to your
 9    review.  Do you remember that line of
10    questioning?
11                    MR. HYNES:  Objection to form.
12    QUESTIONS BY MR. BAKER:
13          Q.    Do you remember that?
14          A.     I recall him asking me if I
15    recall all of the documents that we've
16    reviewed today.
17          Q.    No, he asked you were you
18    familiar with all the numbers and what they
19    identified on the IRR.  Do you remember that?
20    Remember that line of questioning?
21          A.    Not specifically, no.
22          Q.    Okay.  The truth is, you don't
23    remember everything on that IRR because you
24    didn't know what it represented even when you
25    worked at CVS, correct?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    MR. HYNES:  Objection, form.

 2          A.     No, I don't agree with that.

 3    QUESTIONS BY MR. BAKER:
```



```
14    QUESTIONS BY MR. BAKER:

15          Q.     Right.  And you actually

16    have -- you've seen IRRs before you came in

17    here today.  You've seen IRRs within the last

18    two days, have you not?

19                    MR. HYNES:  Objection.  Don't

20          answer the question.  I'm objecting on

21          work product.  Don't answer the

22          question.

23    QUESTIONS BY MR. BAKER:

24          Q.     Well, he wasn't your lawyer

25    when you reviewed them.  Is that right?
```

```
 1              MR. HYNES:  Bill, I went for

 2        four minutes.  You're at five now.

 3   QUESTIONS BY MR. BAKER:

 4        Q.    Was he your lawyer when you met

 5   with him to review for this deposition, or

 6   not?

 7        A.    I don't know.

 8        Q.    Okay.  If you don't know, then

 9   he wasn't.  So did you review IRRs with this

10   gentleman when he met with you?

11              MR. HYNES:  Objection to form.

12        Objection --

13   QUESTIONS BY MR. BAKER:

14        Q.    Yes or no?

15              MR. HYNES:  Objection on work

16        product.  He's not going to answer the

17        question.

18   QUESTIONS BY MR. BAKER:

19        Q.    He wasn't your lawyer.

20              MR. BAKER:  You weren't his

21        lawyer.  He says you weren't his

22        lawyer.

23              MR. HYNES:  And you're out of

24        time --

25                    --oOo--
```

Highly Confidential - Subject to Further Confidentiality Review

```
1    QUESTIONS BY MR. BAKER:

2         Q.    Was he your lawyer or not?  Was

3    he your lawyer or not?

4         A.    You're out of time.

5              MR. HYNES:  He's not answering

6         the question.

7              MR. GOETZ:  I don't think

8         necessarily we're out of time.  How

9         much time was preserved from our

10        initial -- and we can look at the

11        protocol.  We actually have that time

12        available.

13             MR. HYNES:  Okay.  Forget about

14        the time.

15             THE VIDEOGRAPHER:  24 minutes.

16             MR. HYNES:  I made the

17        objection.  He's not answering the

18        question.

19   QUESTIONS BY MR. BAKER:

20        Q.    Was he your lawyer or not when

21   you met to prepare for this deposition?

22             MR. HYNES:  Objection, asked

23        and answered.

24   QUESTIONS BY MR. BAKER:

25        Q.    No.  Answer the question.  Was
```

Highly Confidential - Subject to Further Confidentiality Review

```
1    he your lawyer or not?

2              MR. HYNES:  Objection, asked

3         and answered.

4         A.    I don't know.

5    QUESTIONS BY MR. BAKER:

6         Q.    You don't know.

7         A.    I don't know.

8         Q.    Did you pay him money to

9    represent you?

10             MR. HYNES:  Objection.

11        A.    No, I have not.

12   QUESTIONS BY MR. BAKER:

13        Q.    Okay.  Has CVS paid you any

14   money for the time that you're missing from

15   work?

16        A.    No.

17        Q.    Okay.  How many hours have you

18   met with this gentleman sitting next to you?

19        A.    Approximately 40.  I don't

20   know.

21        Q.    40 hours?  40 hours you

22   prepared for this deposition.  Is that right?

23        A.    I believe so.

24        Q.    And you're going to tell me

25   that during that 40 hours, you didn't review
```

```
 1    one IRR?

 2                 MR. HYNES:  Objection, work

 3          product.  He's not answering that

 4          question.

 5    QUESTIONS BY MR. BAKER:

 6          Q.    After 40 hours --

 7                 MR. HYNES:  Your witnesses

 8          don't answer that question.

 9    QUESTIONS BY MR. BAKER:

10          Q.    After 40 hours of review,

11    you're going to sit here, look into this

12    camera and tell this jury that you don't

13    remember whether or not you can interpret

14    something on that IRR number by number.  Is

15    that what you're saying?

16          A.    Yes, sitting here today, I

17    cannot sit -- I cannot sit here and interpret

18    every single number on that IRR.

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11    QUESTIONS BY MR. BAKER:

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



 8         MR. BAKER:  Those are all my

 9    questions.  Thank you.

10         MR. GOETZ:  Do you have

11    anything?

12         MR. HYNES:  No, I don't.

13         THE VIDEOGRAPHER:  Okay.  We're

14    concluded.  This concludes the

15    deposition of Aaron Burtner.  We are

16    now going off the record, and the time

17    is 6:00 p.m.

18         (Deposition recessed at

19    6:00 p.m.)

20         (Signature was reserved.)

21              --oOo--

22

23

24

25

Highly Confidential - Subject to Further Confidentiality Review

```
 1                        CERTIFICATE
 2
 3              I, SUSAN PERRY MILLER, Registered
      Diplomate Reporter, Certified Realtime
 4    Reporter, Certified Court Reporter and Notary
      Public, do hereby certify that prior to the
 5    commencement of the examination, AARON
      BURTNER was duly sworn by me to testify to
 6    the truth, the whole truth and nothing but
      the truth;
 7              That pursuant to Rule 30 of the
      Federal Rules of Civil Procedure, signature
 8    of the witness was reserved by the witness or
      other party before the conclusion of the
 9    deposition;
10              That the foregoing is a verbatim
      transcript of the testimony as taken
11    stenographically by and before me at the
      time, place and on the date hereinbefore set
12    forth, to the best of my ability.
13              I DO FURTHER CERTIFY that I am
      neither a relative nor employee nor attorney
14    nor counsel of any of the parties to this
      action, and that I am neither a relative nor
15    employee of such attorney or counsel, and
      that I am not financially interested in the
16    action.
17
18
19    _____
      Susan Perry Miller
20    CSR-TX, CCR-LA, CSR-CA-13648
      Registered Diplomate Reporter
21    Certified Realtime Reporter
      Certified Realtime Captioner
22    NCRA Realtime Systems Administrator
      Notary Public, State of Texas
23    My Commission Expires 03/30/2020
24
      Dated: 22nd of January, 2019
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                ACKNOWLEDGMENT OF DEPONENT

 2

 3

 4          I, AARON BURTNER, do hereby
      certify that I have read the foregoing pages
 5    and that the same is a correct transcription
      of the answers given by me to the questions
 6    therein propounded, except for the
      corrections or changes in form or substance,
 7    if any, noted in the attached
      Errata Sheet.

 8

 9

10

11

12    _____
      AARON BURTNER                    DATE
13

14

15

16

17

18

19

20

21

22

23

24

25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    __ __ __ __ __ __

 2                          ERRATA

                      __ __ __ __ __ __

 3

 4     PAGE   LINE   CHANGE

 5     _____  _____  _____

 6     REASON: _____

 7     _____  _____  _____

 8     REASON: _____

 9     _____  _____  _____

10     REASON: _____

11     _____  _____  _____

12     REASON: _____

13     _____  _____  _____

14     REASON: _____

15     _____  _____  _____

16     REASON: _____

17     _____  _____  _____

18     REASON: _____

19     _____  _____  _____

20     REASON: _____

21     _____  _____  _____

22     REASON: _____

23     _____  _____  _____

24     REASON: _____

25
```

Highly Confidential – Subject to Further Confidentiality Review

1                          __ __ __ __ __ __

2                          LAWYER'S NOTES

                           __ __ __ __ __ __

3

4        PAGE      LINE

5        _____     _____     _____

6        _____     _____     _____

7        _____     _____     _____

8        _____     _____     _____

9        _____     _____     _____

10       _____     _____     _____

11       _____     _____     _____

12       _____     _____     _____

13       _____     _____     _____

14       _____     _____     _____

15       _____     _____     _____

16       _____     _____     _____

17       _____     _____     _____

18       _____     _____     _____

19       _____     _____     _____

20       _____     _____     _____

21       _____     _____     _____

22       _____     _____     _____

23       _____     _____     _____

24       _____     _____     _____

25