Highly Confidential - Subject to Further Confidentiality Review

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

- - -

| | | |
|---|---|---|
| IN RE:  NATIONAL | : | |
| PRESCRIPTION | : | MDL No. 2804 |
| OPIATE LITIGATION | : | |
| _____ | : | Case No. |
| | : | 1:17-MD-2804 |
| THIS DOCUMENT RELATES | : | |
| TO ALL CASES | : | Hon. Dan A. Polster |

- - -

Wednesday, February 27, 2019

HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
CONFIDENTIALITY REVIEW

- - -

Videotaped deposition of KIRK HARBAUER,

held at the Hilton Garden Inn, Perrysburg, Ohio,

commencing at 9:02 a.m., on the above date, before

Carol A. Kirk, Registered Merit Reporter and Notary

Public.

- - -

GOLKOW LITIGATION SERVICES
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

Highly Confidential - Subject to Further Confidentiality Review

|  | Page 2 |
|---|---|

1   A P P E A R A N C E S :
2   On behalf of the Plaintiffs:
3       MCHUGH FULLER LAW GROUP
        BY: LANCE REINS, ESQUIRE
4       lance@mchughfuller.com
        ALLAN (A J ) L ELKINS, ESQUIRE
5       allan@mchughfuller.com
        (via teleconference)
6       97 Elias Whiddon Road
        Hattiesburg, Mississippi  39402
7       601-261-2220
8
    On behalf of AmerisourceBergen Corporation (via
9   teleconference and text/video streaming):
10      JACKSON KELLY PLLC
        BY: SANDRA K ZERRUSEN, ESQUIRE
11      skzerrusen@jacksonkelly.com
        50 South Main Street, Suite 201
12      Akron, Ohio  44308
        330-252-9060
13
14  On behalf of HBC (via teleconference and text/video
    streaming):
15
        MARCUS & SHAPIRA LLP
16      BY: ELLY HELLER-TOIG, ESQUIRE
        ehtoig@marcus-shapira.com
17      One Oxford Center, 35th Floor
        301 Grant Street
18      Pittsburgh, Pennsylvania  15219-6401
        412-338-3345
19
20  On behalf of Walmart (via teleconference and
    text/video streaming):
21
        JONES DAY
22      BY: PATRICIA OCHMAN, ESQUIRE
        pochman@jonesday.com
23      901 Lakeside Avenue East
        Cleveland, Ohio  44114
24      216-586-3939

|  | Page 4 |
|---|---|

1   ALSO PRESENT:
2       Michael Newell, Videographer
        Zachary Hone, Trial Technician
3
4       - - -
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

|  | Page 3 |
|---|---|

1   On behalf of Prescription Supply, Inc
2       FOX ROTHSCHILD LLP
        BY: JAMES C CLARK, ESQUIRE
3       jclark@foxrothschild.com
        STEPHAN A CORNELL, ESQUIRE
4       scornell@foxrothschild.com
        (via teleconference and text/video
5       streaming)
        2700 Kelly Road, Suite 300
6       Warrington, Pennsylvania 18976-3624
        215-345-7500
7
8   On behalf of Johnson & Johnson and
    Janssen Pharmaceuticals:
9
        TUCKER ELLIS LLP
10      BY: JEFFREY M WHITESELL, ESQUIRE
        jeffrey.whitesell@tuckerellis.com
11      950 Main Avenue, Suite 1100
        Cleveland, Ohio  44113
12      216-592-5000
13
    On behalf of McKesson (via teleconference and
14  text/video streaming):
15      COVINGTON & BURLING LLP
        BY: MARY YANG, ESQUIRE
16      myang@cov.com
        One CityCenter
17      850 Tenth Street, NW
        Washington, DC  20001
18      202-662-5110
19
20  On behalf of HBC:
        MARCUS & SHAPIRA LLP
21      BY: MOIRA CAIN-MANNIX, ESQUIRE
        cain-mannix@marcus-shapira.com
22      One Oxford Center, 35th Floor
        301 Grant Street
23      Pittsburgh, Pennsylvania  15219-6401
        412-338-3345
24

|  | Page 5 |
|---|---|

1       VIDEOTAPED DEPOSITION OF KIRK HARBAUER
2           INDEX TO EXHIBITS
3   WITNESS                              PAGE
4   KIRK HARBAUER
5       CROSS-EXAMINATION BY MR. REINS          9
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Highly Confidential - Subject to Further Confidentiality Review

Page 6

1    VIDEOTAPED DEPOSITION OF KIRK HARBAUER
2    INDEX TO INDEX
3    PSI - K  HARBAUER   DESCRIPTION         PAGE
4    PSI - K  Harbauer 1  Letter to Ms Massey from   24
         Mr  Harbauer, dated March
5        25, 1996, Bates-stamped
         PSI-1012 5
6
7    PSI - K  Harbauer 2  Document titled      80
         "Suspicious Order
         Monitoring System, System
8        Documentation,
         Introduction and Table of
9        Contents," Bates-stamped
         PSI-72519 through 72530
10
11   PSI - K  Harbauer 3  Letter to Ms Margreta   84
         from Mr  Harbauer, dated
         May 28, 1997, Bates-
12       stamped PSI-166566
13   PSI - K  Harbauer 4  Suspicious Order       111
         Monitoring Report,
14       Bates-stamped PSI-158967
         through 159013
15
16   PSI - K  Harbauer 5  Document titled        126
         "Controlled Substances,"
         Bates-stamped PSI-0000653
17       and 654
18   PSI - K  Harbauer 6  Spreadsheet Bates-stamped  145
         PSI-1011 1 and 2
19
20   PSI - K  Haubauer 7  Prescription Supply     155
         Maximum Monthly Units for
         OLS Systems, Bates-
21       stamped PSI-0000274
         through 297
22
23
24

Page 7

```
1                  - - -
2            P R O C E E D I N G S
3                  - - -
4            THE VIDEOGRAPHER:  We are now
5    on the record.  My name is Michael
6    Newell.  I'm the videographer for
7    Golkow Litigation Services.
8    Today's date is February 27th,
9    2019, and the time is 9:02 a.m.
10   This video deposition is being held
11   in Perrysburg, Ohio in the matter
12   of National Prescription Opiate
13   Litigation for the Northern
14   District of Ohio, Eastern Division.
15   The deponent today is Kirk
16   Harbauer.
17           Will counsel please identify
18   themselves.
19           MR. REINS:  Lance Reins for
20   the Plaintiff.
21           MR. CLARK:  Jim Clark of Fox
22   Rothschild for Prescription Supply.
23           MR. WHITESELL:  Jeff
24   Whitesell from Tucker Ellis for
```

Page 8

```
1    Johnson & Johnson and Janssen.
2            THE COURT REPORTER:  On the
3    phone?
4            MS. OCHMAN:  Patricia Ochman,
5    Jones Day, for Walmart.
6            MS. ZERRUSEN:  Sandy
7    Zerrusen, Jackson Kelly, for
8    AmerisourceBergen.
9            MR. CORNELL:  Stephan
10   Cornell, Fox Rothschild, for
11   Prescription Supply.
12           MS. YANG:  Mary Yang with
13   Covington on behalf of McKesson.
14           MR. ELKINS:  A.J. Elkins,
15   McHugh Fuller Law Group, for the
16   Plaintiffs.
17           THE VIDEOGRAPHER:  The court
18   reporter today is Carol Kirk and
19   will now swear in the witness.
20                  - - -
21                KIRK HARBAUER
22   being by me first duly sworn, as hereinafter
23   certified, deposes and says as follows:
24                CROSS-EXAMINATION
```

Page 9

```
1    BY MR. REINS:
2        Q.  Good morning.
3        A.  Good morning.
4        Q.  Can you please introduce yourself.
5        A.  Yeah.  My name is Kirk Harbauer.
6        Q.  And, Mr. Harbauer, have you been
7    through a deposition before?
8        A.  Never have.
9        Q.  Okay.  I'm sure your counsel has
10   probably advised you, but I'll just go over a
11   few basic ground rules for today's deposition,
12   okay?
13       A.  Okay.
14       Q.  All right.  Clearly I'm going to
15   be asking you some questions here today.
16   Because we have a court reporter taking down
17   everything we say, I'm going to need you to
18   please verbalize all of your answers.  No
19   "huh-uhs," "uh-huhs" or head nods because those
20   can't be taken down, okay?
21       A.  Very good.  I'll do the best I
22   can.
23       Q.  Absolutely.
24       A.  That's all I can do.  I've never
```

Highly Confidential - Subject to Further Confidentiality Review

Page 10

1  given a deposition, so ...
2     Q.   If you hear me say something like,
3  "Is that a yes," "Is that a no," that's kind of
4  a clue to you that you might have nodded your
5  head, okay?
6     A.   Okay.
7     Q.   All right.  For the very same
8  reasons, if you could please let me finish my
9  question before you begin your answer.  If we
10  talk over one another, it makes it very
11  difficult for her to do her job, okay?
12     A.   Okay.
13     Q.   All right.  And, lastly, if you
14  answer my question, I'm going to assume you
15  understood it and you're telling the truth; is
16  that fair?
17     A.   Yes.
18     Q.   All right.  Now, if you don't
19  understand my question, let me know and I'll
20  rephrase it.  Or if you don't know something,
21  you can simply let me know, okay?
22     A.   Okay.
23     Q.   Any questions before we get
24  started?

Page 11

1     A.   No.  I'm ready to go.
2     Q.   All right.  Your counsel probably
3  advised you as well, this is not meant to be
4  a -- some form of torture, so if you've got to
5  use the restroom or you need a drink or
6  something, you just let us know, okay?
7     A.   Okay.  Very good.
8     Q.   All right.  Sir, are you currently
9  employed?
10     A.   Yes, I am.
11     Q.   And who do you work for?
12     A.   Prescription Supply.
13     Q.   And what do you do for
14  Prescription Supply?
15     A.   I'm the vice president of
16  information systems.  I wear a lot of hats, but
17  that's the main thing I do.
18     Q.   How long have you held that
19  position?
20     A.   Over 20 years.
21     Q.   Have you had the same position the
22  entire time?
23        MR. CLARK:  Objection to
24     form.

Page 12

1     A.   No, I have not.  This is --
2  this -- I've worked there for over 40 years.
3     Q.   What does Prescription Supply,
4  Inc. do?
5     A.   We supply pharmaceuticals to
6  independent drugstores and some -- a little
7  hospital business.
8     Q.   And you said you began there
9  40 years ago; is that right?
10     A.   That's correct.
11     Q.   What was your first position?
12     A.   Well, I worked in receiving.
13     Q.   And what does that mean?
14     A.   Just receiving product in the back
15  door through the warehouse, unloading trucks,
16  putting away stock.  It's a family organization,
17  so I pretty well have worked almost -- a lot --
18  a lot of the jobs all the way through the
19  operation.
20     Q.   And the president is Mr. Thomas
21  Schoen; is that right?
22     A.   Correct.
23     Q.   And what's your relationship with
24  him?

Page 13

1     A.   He is my uncle.
2     Q.   And is your mother also involved
3  in the company?
4     A.   Yes, she is.
5     Q.   What's her position?
6     A.   She's the secretary/treasurer.
7     Q.   And what's her name?
8     A.   Jacquelyn Harbauer.
9     Q.   And you have a sister that's works
10  for the company?
11     A.   Yes.
12     Q.   Who's that?
13     A.   Candace Harbauer.
14     Q.   And what does she do?
15     A.   She is the point DR -- or she's
16  the -- she has a lot of regulatory stuff.  I
17  don't know what her exact title is, though.
18     Q.   Do you know what her duties and
19  responsibilities as "regulatory stuff" means?
20        MR. CLARK:  Objection to
21     form.
22     A.   Yes, I do.
23     Q.   Tell me, if you don't mind.
24     A.   Basically going through anything

4 (Pages 10 to 13)

Highly Confidential - Subject to Further Confidentiality Review

Page 14

1    that the company needs to do legalize --
2    legal-wise.  Helps us go through all kinds of
3    audits and regulatory -- any kind of regulatory
4    affairs.
5        Q.    And I believe you have several
6    cousins that work in the business?
7        A.    Yes, I do.
8        Q.    And who would that be?
9        A.    All of my cousins?
10       Q.    How many do you have working for
11   the company?
12       A.    Well, there's probably five of us,
13   I think, or six of them.
14       Q.    Okay.  And who are they and what
15   do they do?
16           MR. CLARK:  Objection to
17       form.
18       A.    Well, Wendy Schoen, which is Tom's
19   daughter.  Chris Schoen.  Rob -- Chris Schoen is
20   a sales manager.
21       Q.    What does Wendy do?
22       A.    Warehouse employee.  Rob Schoen,
23   he's the warehouse manager.  Jim Schoen is the
24   controlled substance manager.  And I think

Page 15

1    that's it.
2        Q.    Okay.  Obviously you've worn a lot
3    of different hats over the years.
4        A.    That's correct.
5        Q.    I don't want to --
6            MR. CLARK:  Let him finish
7        his --
8        A.    Oh, sorry.
9        Q.    That's okay.  Sometimes you'll
10   know exactly where I'm going.
11           Obviously you've worn a lot of
12   different hats over the years, 40-year
13   experience.  You've been working -- or the head
14   of information services.  How long have you held
15   that position?
16           MR. CLARK:  Objection to
17       form.
18       A.    I've been doing it for the last 20
19   at least.
20       Q.    Okay.  And you made it sound like
21   you wear a lot of hats even within that
22   position.  What types of things are you
23   responsible for?
24           MR. CLARK:  Objection; form.

Page 16

Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review

Page 18

```
20    nervous.  I found something I can answer.
21         Q.   Don't get excited.  We're not
22    going to stay here long.
23         A.   This is the life I live, okay, so
24    I work --
```

Page 19

```
1          Q.   I feel like I'm in a Peanuts
2     cartoon right now.
3          A.   No.  No.  I didn't mean to bring
4     it up if -- you know, unless you need me to.
5          Q.   No.  It's fine.  You're answering
6     my question.
7               Moving along, though, AS -- you
8     said A52 web developer, what does that mean?
9          MR. CLARK:  Objection to
10    form.
11         A.   I'm sorry.  What's the question?
12         Q.   You said another function that you
13    do -- I thought -- I wrote down A52 web
14    development.  Is that correct or no?
15         A.   That's -- I don't believe I said
16    that.
17         Q.   Okay.
18         A.   Okay.  So I said, I'm a web
19    developer.  I work on web applications that
20    Prescription Supply may use with their
21    operations.
22         Q.   Got it.
23
24
```

Page 20

Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



**Page 22**

12    Q.   All right. We went through a
13 number of your hats. Any that we haven't
14 discussed yet?
15    A.   Well, that's the main ones.
16    Q.   All right. Obviously one of the
17 things we're going to talk about here today is
18 you were responsible for complying with the
19 federal regulations regarding suspicious order
20 monitoring.
21    MR. CLARK: Objection to
22 form.
23    Q.   Is that accurate?
24    MR. CLARK: Same objections.

**Page 23**

22    Q.   Okay. Probably a good time to go
23 through the history of how you guys did things
24 for various time periods. So the first thing

**Page 24**

1 we're going to look at is PSI-1012. It's going
2 to be page 5.
3       And for the record purposes, this
4 is going to be PSI-66568.
5    A.   Okay.
6    (Discussion held off the record.)
7       ---
8 (PSI - K. Harbauer Exhibit 1 marked.)
9       ---
10 BY MR. REINS:
11    Q.   All right. So we're now looking
12 at correspondence here. Can you see it okay?
13    A.   Yes, I can.
14    Q.   All right. And specifically this
15 is a letter on the letterhead of Prescription
16 Supply, Inc. I'm going to say PSI for short.
17 You're going to know what I mean, right?
18    A.   Yes.
19    Q.   Yes, sir. And then we've got this
20 is March 25th, 1996. And this is to Ms. Massey.
21 Do you -- this is someone that you would have
22 coordinated with at the DEA; is that right?
23    A.   Correct. She was an agent at the
24 Cleveland office.

**Page 25**

1    Q.   Okay. So we'll kind of zero in on
2 that first paragraph. And of course you
3 authored this letter, correct?
4    MR. CLARK: Objection to
5 form.
6    A.   Correct.

Highly Confidential - Subject to Further Confidentiality Review

Page 26                                    Page 28



Highly Confidential - Subject to Further Confidentiality Review



Page 30

Page 32

1    Q.   Okay.
2    A.   I mean ...
3    Q.   Do you know what type of data
4  specifically was being submitted, i.e. were
5  there variances reported in the customer's
6  ordering regarding frequency, amounts, things of
7  that nature?
8        MR. CLARK:  Objection to
9        form.
10   Q.   Let me rephrase.  Do you know if
11  any -- if it actually would identify suspicious
12  orders, meaning orders of unusual size,
13  deviating substantially from a normal pattern,
14  or orders of unusual frequency, do you know if
15  that was identified in those prior reports?
16       MR. CLARK:  Objection to
17       form.  I'm just going to note my
18       objection on the record to the time
19       period we're talking about here
20       being outside the bounds of Special
21       Master Cohen's rulings on what
22       we're allowed to be asking about.
23       MR. REINS:  Okay.
24   A.   Okay.  Can you restate the

Page 33

1  question now so I get it right?
2    Q.   I just wanted to finish this line
3  of inquiry as to what type of information would
4  be inquired --
5    A.   Okay.
6    Q.   -- would be identified in the
7  report.
8        MR. CLARK:  Same objection.

19   Q.   All right.  So now getting back to
20  this correspondence.
21   A.   Okay.
22   Q.   This will be Plaintiff's Exhibit
23  Number 1.  Next line says, "We have recently
24  completed the necessary updates to transfer this

9 (Pages 30 to 33)



Page 34

1    function to our computer system."
2         Can you explain what was done?
3         MR. CLARK:  Objection to
4    form.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 36

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23         MR. CLARK:  Objection to
24    form.

Highly Confidential - Subject to Further Confidentiality Review

Page 38

1      Give me a second to object
2  and then you can answer.
3      THE WITNESS:  Sorry.
4      MR. CLARK:  I know it's
5  tough.  You're doing fine.
6      Objection to form.
7      Go ahead.
8      A.   I kind of forgot the question.
9      Q.   That's okay.  So -- and that's
10  probably something I should probably add to
11  my -- so your counsel has the opportunity to
12  object to the form of my question.  It's a legal
13  objection preserving it for a date and time to
14  deal with the Judge later, potentially.  It is
15  not meant to distract you or inhibit the
16  deposition process.
17      A.   Am I allowed to answer if he
18  objects then?
19      Q.   You are.
20      MR. CLARK:  Unless I tell
21  you -- instruct you not to answer.
22      A.   Okay.
23      Q.   Without question, you're allowed
24  to answer unless you're told specifically not

Page 39

1  to.
2      A.   Okay.
3      Q.   But because there are some -- a
4  frequency to the objections, maybe just wait a
5  moment, let him object, and then -- and then
6  answer.
7      A.   Okay.
8      Q.   Make sense?
9      A.   Yes.  Thank you.
10      Q.   Okay.  And let me rephrase the
11  question.
12      We're talking about this updating
13  of the system around 1996.  I say "update."  It
14  really is the development of the computerization
15  of the -- all of the job functions, frankly, of
16  PSI, right?
17      MR. CLARK:  Objection to
18  form.
19      Q.   Let me do this:  I have you here,
20  so you can say it better.  Tell me exactly what
21  was -- this computer systems that you were
22  implementing, what was the goal and the purpose?
23      MR. CLARK:  Objection to
24  form.

Page 40

Page 41

Highly Confidential - Subject to Further Confidentiality Review

Page 42



6       And I'm not sure if that's the
7   question you asked exactly, but if you could go
8   back on it, I'll try to fill you in the best I
9   can.
10      Q.  No.  That was great.
11      A.  Okay.
12      Q.  What did the new system -- I guess
13  the driving force, what was the driving force of
14  wanting the new system?
15          MR. CLARK:  Objection to
16  form.
17      A.  I think I pretty well answered
18  that.  Just to keep the system current and --
19  and try to fill the needs that were put forth in
20  front of us in Prescription Supply.

6       Q.  Okay.  Now, I guess this one
7   line -- because I don't want to oversimplify.
8       A.  Right.
9       Q.  You're really the IT
10  informations --
11      A.  This is --
12          MR. CLARK:  Hold on.  Let
13  him --
14          THE WITNESS:  Oh, I'm sorry.
15          MR. CLARK:  I know it's a
16  little bit unnatural, but let
17  him --
18          THE WITNESS:  I know.  I'm
19  sorry.
20          MR. CLARK:  You're doing
21  fine.
22          THE WITNESS:  I'm doing the
23  best I can.  I am, honest.

Page 44

BY MR. REINS:

Highly Confidential - Subject to Further Confidentiality Review

Page 46

1    Q.   Okay.  That's fair.  All right.
2  If we can step out of there.
3          MR. CLARK:  Are you done with
4  that?
5          MR. REINS:  Yeah, I think so.
6          MR. CLARK:  Did you mark it?
7          MR. REINS:  I marked it as 1.
8          MR. CLARK:  Okay.
9          MR. REINS:  So I need to --
10  yeah.  Can I grab that?  Thanks.
11
12
13
14
15
16
17
18
19
20
21
22
23
24

1
2
3
4
5
6
7
8          Q.   So -- yeah.  So my question was,
9  was who within the company came up with the
10  formula, which we will be talking about in a
11  moment, which might be a better time.  Maybe
12  that will jog your memory.  Let's do it now,
13  actually.
14          So we have been produced some
15  information.  And this is going to be PSI-1013.
16          For record purposes, it's going to
17  be produced as PSI-72519 through 72530.
18          MR. CLARK:  Lance, do you
19  have a copy of that for me?
20          MR. REINS:  I do, actually.
21          MR. CLARK:  Thank you.
22          MR. REINS:  You're welcome.
23          Actually, before we get to
24  that, can you pull up PSI-1008.

Page 48

1  BY MR. REINS:
2          Q.   We're going to look for a moment
3  now at -- there's what's called discovery
4  responses.  That's where the company has
5  provided some discovery responses to questions
6  that we had posed regarding these types of
7  issues, reporting specifically.
8          A.   Okay.
9          Q.   And this is going to be
10  Prescription Supply, Inc.'s Second Amended
11  Objections and Responses to Plaintiffs' First
12  Combined Discovery Request.  If we can look at
13  page 2.  And if we can look in the second
14  paragraph kind of midway through.
15
16
17
18
19
20
21
22
23
24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review

Page 54                    Page 56



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 66

Page 68

Page 69

```
 1       Q.   Okay.
 2            MR. CLARK:  Lance, we've been
 3       going for about an hour --
 4            MR. REINS:  Take a break?
 5       Sure, yeah, of course.
 6            THE VIDEOGRAPHER:  Going off
 7       the record at 9:59.
 8            (Recess taken.)
 9            THE VIDEOGRAPHER:  We're back
10       on the record at 10:09.
11       BY MR. REINS:
12       Q.   All right, sir.  Looking at the
13       document that's in front of you, which we've
14       already -- which we started talking about.  I
15       want you to kind of look through the whole
16       document real quick.
17            Have you had an opportunity on our
18       break to do so?
19       A.   I looked through it.  Scanned
20       through it, yeah.
21
22
23
24
```

18  (Pages 66 to 69)

Highly Confidential - Subject to Further Confidentiality Review



Page 70

6    it has an example of the -- of a report on
7    72534, which is 16, right?
8        A.   It is an example of a report, yes.
9        Q.   Okay.  And is this an example of
10   the type of reporting you did after you changed
11   the system in January of 1996?  Is this how you
12   reported?
13          MR. CLARK:  Objection to
14   form.
15       Q.   If you recall.
16       A.    This is a report of just the
17   ingredients that are in the file.  This is a
18   report out of -- if I believe so, this is the
19   scheduled item ingredient report.  This is not a
20   sales recap report.
21       Q.   Agreed.  And, listen, I'm not
22   hiding anything.  In May of '97, after working
23   with the DEA, you modified the system and it
24   stayed that way for some time.

Page 71

1        A.   Yes.
2        Q.   But I'm just dealing with this
3    period of time before May 1st.  And so what I'm
4    trying to ask you is, is this how you reported
5    pursuant to the --
6          MR. CLARK:  Would the people
7    on the phone please mute.
8          UNIDENTIFIED SPEAKER:  I'm
9    sorry.
10         MR. CLARK:  Want to restart?
11         MR. REINS:  Yeah, I think
12   I'll --
13       A.   Yeah, rephrase that question.
14         MR. REINS:  That was my
15   co-counsel.
16         MR. CLARK:  She's helping
17   you.
18         MR. REINS:  I need it.
19   BY MR. REINS:

Page 72

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 78

Page 80

3    Q.   Okay.  All right.  Moving along.
4    A.   Oh, take that away.  All right.
5         MR. REINS:  Thanks.  We'll
6    make that Number 2.
7             - - -
8    (PSI - K. Harbauer Exhibit 2 marked.)
9             - - -
10   BY MR. REINS:
11   Q.   All right.  We're going to now
12   look at PSI-1012, page 3.  For record purposes,
13   PSI-66566.
14        Moving forward.  So we've covered
15   now the January.  We've covered through 1996.
16   Here we are in May of 1997.  You're writing a
17   letter to Janice -- Ms. Janice Margreta.
18       A.   Margreta.

Highly Confidential - Subject to Further Confidentiality Review



Page 82

Page 84

5    Q.   Got it.  Let's go ahead and talk
6  about the report because that's probably --
7  we'll just explain it through that process.
8           This will be Plaintiff's Exhibit
9  Number 3, this correspondence.
10          - - -
11    (PSI - K. Harbauer Exhibit 3 marked.)
12          - - -
13         MR. CLARK:  Is it 4?
14         MR. REINS:  I think it's 3.
15         MR. CLARK:  It is 3?  Okay.
16         MR. REINS:  We may not have
17  marked 1 which caused confusion.
18         (Discussion held off the record.)
19  BY MR. REINS:
20    Q.   So now what I'm going to hand you
21  is this is going to be, what I believe, this
22  modified new reporting mechanism.  And, listen,
23  I'm not going to go through all of them.  I
24  grabbed a month.  So we'll look and kind of

Page 85

1  identify the varying information on that and how
2  to hopefully interpret it.

Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 94

Page 96

20      Q.   And it may have sounded like a
21   dumb question.  Not broken down by region or
22   state.  It's all of your customers that
23   purchased that product, that's how you derived
24   the average?

Highly Confidential - Subject to Further Confidentiality Review

Page 98

1       A.   Correct, correct.
2       Q.   Including that customer,
3  obviously?
4       A.   Yes.
5       Q.   Okay.  All right.  It makes this
6  report if it is above the average; is that
7  correct?
8            MR. CLARK:  Objection to
9  form.
10      A.   Yes.

Page 100

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

|  | Page 106 |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |

Page 108

```
 6       A.   There are no reports from the
 7  threshold system.
 8       Q.   Okay.
 9       A.   There are audits.  I mean, there
10  are log files that are generated but no reports.
11       Q.   Okay.  Tell me about the threshold
12  system.
13            MR. CLARK:  Objection to
14       form.
15       A.   Can I rephrase something?  I
16  just -- can we go back to that question?
17       Q.   No way.
18       A.   Please.
19       Q.   No.  It's too late.
20       A.   When I tell you there was no
21  reports, we were constantly pawing through this
22  data and reporting -- recapping and reporting.
23  As far as going to the DEA, we may not have
24  generated a monthly report as far as the
```

Highly Confidential - Subject to Further Confidentiality Review



Page 110

1    threshold system, but we did -- you know, we
2    kept -- continued on, and that's what that
3    conversation was about, us ceasing the -- or the
4    shipment of the suspicious order monitoring
5    variance report.
6        Q.   All right.  Let's just tie a bow
7    on that.  So I asked you to --
8        A.   Okay.  I'm sorry.
9        Q.   No, no.  Don't -- no, no.  I'm
10   not --
11       MR. CLARK:  He's asking a
12   question.
13       Q.   You didn't do anything wrong.
14       I want you to clarify, to be
15   clear.  It's important we get it right.

Page 112

14       Q.   Okay.  What would trigger those
15   reports?  Would it be a phone call from them?
16   Would it be some internal system that would say,
17   "We need to send this in"?  What would trigger
18   the items that you just said were reported post
19   --
20       A.   Probably --
21       MR. CLARK:  Hold on.  Let him
22   finish his question.
23       THE WITNESS:  All right.  I'm
24   sorry.

Highly Confidential - Subject to Further Confidentiality Review

Page 114

```
 1    BY MR. REINS:
 2         Q.   Go ahead.
 3              MR. CLARK:  Let me add my
 4    objection.  Objection to form.
 5              Now go.
 6         A.   Can you start the question over
 7    and just --
 8         Q.   Yeah.  I was just trying to say,
 9    what would trigger that type of information
10    from -- to be reported?  Would it be a phone
11    call?  What would trigger these types of things
12    being reported in 2013 forward?
13              MR. CLARK:  Objection to
14    form.
15
16
17
18
19
20
21
22
23
24
```

Page 116

Highly Confidential - Subject to Further Confidentiality Review

Page 118

Page 120

7    Q.   Fair answer.
8         Someone says, "Why did it take so
9    long" --
10        MR. CLARK:  Objection to
11    form.
12   Q.   -- what would you say to that?
13        MR. CLARK:  Objection to
14   form.
15   A.   Why did what take so long?
16   Q.   Let me rephrase the question.  Why
17   was that implemented in 2008 and not before
18   then, if you know?
19        MR. CLARK:  Object to form.

Highly Confidential - Subject to Further Confidentiality Review



Page 122

Page 124

```
 4      Q.   I assume you have seen it on the
 5  news?
 6      A.   Absolutely.
 7      Q.   At least from your news viewing,
 8  you're aware that it affects communities
 9  throughout this country?
10          MR. CLARK:  Objection to
11  form.
12      A.   Yes, yes.
13      Q.   All races, all genders?
14          MR. CLARK:  Same objection.
15      Q.   Correct?
16      A.   Yes.
17      Q.   All economic levels of this
18  society, correct?
19          MR. CLARK:  Same objection.
20      A.   Yes.
21      Q.   All right.  Are you doing okay?
22      A.   Yeah, I'm fine.
23          - - -
24      (PSI - K. Harbauer Exhibit 5 marked.)
```

Highly Confidential - Subject to Further Confidentiality Review

Page 126

```
 1              - - -
 2        Q.   All right.  Moving along.  I'm
 3   going to have you out of here by noon.
 4             All right.  If we could look at --
 5   this is going to be PSI-653.  All right, sir.  I
 6   know from talking to you, you are not involved
 7   in the development and/or the implementation of
 8   policies and procedures, if I understood you
 9   correctly.
10             MR. CLARK:  Objection; form.
11        Q.   Correct?
12        A.   Correct.
13        Q.   All right.  But have you -- have
14   you read them?
15             MR. CLARK:  Same objection.
16        A.   Yes, I've been through them.  Yes,
17   I've read them before.
18        Q.   Some questions may seem silly but
19   I have to ask them.
20
21
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review

| | Page 138 | | Page 140 |
|---|---|---|---|
| 1 | | 1 | |
| 2 | | 2 | |
| 3 | | 3 | |
| 4 | | 4 | |
| 5 | | 5 | |
| 6 | | 6 | |
| 7 | | 7 | |
| 8 | | 8 | |
| 9 | | 9 | |
| 10 | | 10 | Q.   Got it. |
| 11 | | 11 |     MR. CLARK:  Lance, I know |
| 12 | | 12 | you're close to the end.  Can we |
| 13 | | 13 | get a five-minute restroom break. |
| 14 | | 14 |     MR. REINS:  Yeah, of course. |
| 15 | | 15 |     THE VIDEOGRAPHER:  We're |
| 16 | | 16 | going off the record at 11:18. |
| 17 | | 17 |     (Recess taken.) |
| 18 | | 18 |     THE VIDEOGRAPHER:  We're back |
| 19 | | 19 | on the record at 11:27. |
| 20 | | 20 | BY MR. REINS: |
| 21 | | 21 | |
| 22 | | 22 | |
| 23 | | 23 | |
| 24 | | 24 | |

| | | | |
|---|---|---|---|
| 1 | | 1 | |
| 2 | | 2 | |
| 3 | | 3 | |
| 4 | | 4 | |
| 5 | | 5 | |
| 6 | | 6 | |
| 7 | | 7 | |
| 8 | | 8 | |
| 9 | | 9 | |
| 10 | | 10 | |
| 11 | | 11 | |
| 12 | | 12 | |
| 13 | | 13 | |
| 14 | | 14 | |
| 15 | | 15 | |
| 16 | | 16 | |
| 17 | | 17 | |
| 18 | | 18 | |
| 19 | | 19 | |
| 20 | | 20 | |
| 21 | | 21 | |
| 22 | | 22 | |
| 23 | | 23 | |
| 24 | | 24 | |

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

Page 150

Page 152



Highly Confidential - Subject to Further Confidentiality Review



Page 154

Page 156

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review

Page 162                                Page 164



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review

|  | Page 174 |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |

Page 176

1
2          MR. REINS:  Thank you for
3    your time.  I don't have any more
4    questions.
5          THE WITNESS:  Thank you, sir.
6          MR. CLARK:  I have no
7    questions.
8          THE VIDEOGRAPHER:  We're
9    going off the record at 12:00 p.m.
10         (Recess taken.)
11         MR. REINS:  Just for
12   clarification in the deposition,
13   the summary chart that was
14   referenced was identified as
15   Exhibit Number 5.  It's actually
16   Exhibit Number 6 when we were
17   talking about the log-in and
18   similar type information.
19         And Exhibit Number 7 is the
20   Prescription Supply maximum monthly
21   units form, which is Bates numbered
22   274 through 297.
23         (Signature not waived.)
24              - - -

Page 177

1          Thereupon, at 12:00 p m., on Wednesday,
2    February 27, 2018, the deposition was concluded.
3               - - -
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

45  (Pages 174 to 177)

Highly Confidential - Subject to Further Confidentiality Review

| Page 178 | Page 180 |
|---|---|

**Page 178**

```
 1            CERTIFICATE
 2    STATE OF OHIO      :
                 SS:
 3    COUNTY OF _____:
 4
 5        I, KIRK HARBAUER, do hereby certify that I
 6    have read the foregoing transcript of my
 7    cross-examination given on February 27, 2018; that
 8    together with the correction page attached hereto
 9    noting changes in form or substance, if any, it is
10    true and correct.
11
         _____
         KIRK HARBAUER
12
13        I do hereby certify that the foregoing
14    transcript of the cross-examination of KIRK HARBAUER
15    was submitted to the witness for reading and signing;
16    that after he had stated to the undersigned Notary
17    Public that he had read and examined his cross-
18    examination, he signed the same in my presence on the
19    _____ day of _____, 2019.
20
         _____
21            NOTARY PUBLIC - STATE OF OHIO
22
23    My Commission Expires:
24    _____, _____.
```

**Page 180**

```
 1        DEPOSITION ERRATA SHEET
 2    I, KIRK HARBAUER, have read the transcript
      of my deposition taken on the 27th day of February
 3    2019, or the same has been read to me  I request that
      the following changes be entered upon the record for
 4    the reasons so indicated  I have signed the signature
      page and authorize you to attach the same to the
 5    original transcript
 6    Page  Line  Correction or Change and Reason:
 7    ___  ____  _____
 8    ___  ____  _____
 9    ___  ____  _____
10    ___  ____  _____
11    ___  ____  _____
12    ___  ____  _____
13    ___  ____  _____
14    ___  ____  _____
15    ___  ____  _____
16    ___  ____  _____
17    ___  ____  _____
18    ___  ____  _____
19    ___  ____  _____
20    ___  ____  _____
21    ___  ____  _____
22    ___  ____  _____
23    ___  ____  _____
24    Date _____ Signature _____
```

**Page 179**

```
 1            CERTIFICATE
 2    STATE OF OHIO      :
                 SS:
 3    COUNTY OF FRANKLIN :
 4        I, Carol A  Kirk, a Registered Merit
      Reporter and Notary Public in and for the State of
 5    Ohio, duly commissioned and qualified, do hereby
      certify that the within-named KIRK HARBAUER was by me
 6    first duly sworn to testify to the truth, the whole
      truth, and nothing but the truth in the cause
 7    aforesaid; that the deposition then given by him was
      by me reduced to stenotype in the presence of said
 8    witness; that the foregoing is a true and correct
      transcript of the deposition so given by him; that the
 9    deposition was taken at the time and place in the
      caption specified and was completed without
10    adjournment; and that I am in no way related to or
      employed by any attorney or party hereto or
11    financially interested in the action; and I am not,
      nor is the court reporting firm with which I am
12    affiliated, under a contract as defined in Civil Rule
      28(D)
13
          IN WITNESS WHEREOF, I have hereunto set my
14    hand and affixed my seal of office at Columbus, Ohio
      on this 4th day of March 2019
15
16
17
18    _____
          CAROL A  KIRK, RMR
19        NOTARY PUBLIC - STATE OF OHIO
20    My Commission Expires:  April 9, 2022
21            - - -
22
23
24
```