Highly Confidential - Subject to Further Confidentiality Review

```
 1                  UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF OHIO

 3                        EASTERN DIVISION

 4

 5    ----------------------------) MDL No. 2804

 6    IN RE:  NATIONAL PRESCRIPTION )

 7    OPIATE LITIGATION            )

 8    ----------------------------) Case No. 17-md-2804

 9    THIS DOCUMENT RELATES TO:    )

10    ALL CASES                    )

11    ----------------------------) Hon. Dan A. Polster

12

13                   HIGHLY CONFIDENTIAL

14        SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

15

16                VIDEOTAPED DEPOSITION OF

17                     SHERRI HINKLE

18

19                   January 25, 2019

20

21                 Indianapolis, Indiana

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5              The videotaped deposition of SHERRI

6     HINKLE, called by the Plaintiffs for examination,

7     taken pursuant to the Federal Rules of Civil Procedure

8     of the United States District Courts pertaining to the

9     taking of depositions, taken before JULIANA F.

10    ZAJICEK, a Registered Professional Reporter and a

11    Certified Shorthand Reporter, at the Indianapolis

12    Marriott Downtown, Texas Room, 350 West Maryland

13    Street, Indianapolis, Indiana, on January 25, 2019, at

14    8:56 a.m.

15

16

17

18

19

20

21

22

23

24

```
 1    APPEARANCES:
 2    ON BEHALF OF THE PLAINTIFFS:
 3         WEISMAN KENNEDY & BERRIS CO LPA
           1600 Midland Building
 4         101 Prospect Avenue
           Cleveland, Ohio 44115
 5         216-781-1111
           BY:  DANIEL P. GOETZ, ESQ.
 6             dgoetz@weismanlaw.com
 7                  -and-
 8         MOTLEY RICE LLC
           28 Bridgeside Boulevard
 9         Mt. Pleasant, South Carolina 29464
           843-216-9250
10         BY:  MICHAEL E. ELSNER, ESQ.
               melsner@motleyrice.com
11
                   -and-
12
           GARSON JOHNSON LLC
13         101 West Prospect Avenue
           Midland Building, Suite 1610
14         Cleveland, Ohio 44115
           216-696-9330
15         BY:  JAMES A. DEROCHE, ESQ. (Telephonically)
               jderoche@garson.com
16
17    ON BEHALF OF AMERISOURCEBERGEN CORPORATION and
      AMERISOURCEBERGEN DRUG CORPORATION:
18
           REED SMITH LLP
19         136 Main Street, Suite 250
           Princeton Forrestal Village
20         Princeton, New Jersey 08540
           609-987-0050
21         BY:  SHANA E. RUSSO, ESQ. (Telephonically)
               srusso@reedsmith.com
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES:  (Continued)
 2    ON BEHALF OF CARDINAL HEALTH, INC.:
 3         ARMSTRONG TEASDALE LLP
           7700 Forsyth Boulevard, Suite 1800
 4         St. Louis, Missouri 63105
           314-621-5070
 5         BY:  SARAH E. HARMON, ESQ.
                sharmon@ArmstrongTeasdale.com
 6
 7    ON BEHALF OF CVS INDIANA, LLC AND CVS RX SERVICES,
      INC.:
 8
           ZUCKERMAN SPAEDER LLP
 9         1800 M Street, NW, Suite 1000
           Washington, D.C. 20036
10         202-778-1800
           BY:  R. MILES CLARK, ESQ.
11              mclark@zuckerman.com;
                PAUL B. HYNES, JR., ESQ.
12              phynes@zuckerman.com
13
      ON BEHALF OF ENDO HEALTH SOLUTIONS INC., ENDO
14    PHARMACEUTICALS INC., PAR PHARMACEUTICAL COMPANIES,
      INC.:
15
           ARNOLD & PORTER KAYE SCHOLER LLP
16         250 West 55th Street
           New York, Yew York 10019-9710
17         212-836-7408
           BY:  ZENO HOUSTON, ESQ. (Telephonically)
18              zeno.houston@arnoldporter.com
19
      ON BEHALF OF WALMART INC.:
20
           JONES DAY
21         77 West Wacker Drive
           Chicago, Illinois 60601-1692
22         312-269-4164
           BY:  PAMELA I. YAACOUB, ESQ. (Telephonically)
23              pyaacoub@jonesday.com
24
```

```
 1   ALSO PRESENT:

 2        PATTI CARDINAL, Paralegal (Telephonically)

          Garson Johnson, LLC;

 3

          KAITLYN EEKHOFF, Law Clerk,

 4        Motley Rice LLC

 5        JOHN KNOWLES, Trial Technician

 6

     THE VIDEOGRAPHER:

 7

          MR. ANTHONY MICHELETTO,

 8        Golkow Litigation Services

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
1                    I N D E X

2

3    WITNESS:                              PAGE:

4      SHERRI HINKLE

5        EXAM BY MR. ELSNER..................   8

6

7                      * * * * *

8

9                  E X H I B I T S

10   EXHIBIT NUMBER                 MARKED FOR ID

11                  NO EXHIBITS MARKED.

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

 1      THE VIDEOGRAPHER:  We are now on the record.  My

 2 name is Anthony Micheletto.  I am a videographer for

 3 Golkow Litigation Services.

 4           Today's date is January 25th, 2019.  The

 5 time is 8:56 a.m., as indicated on the video screen.

 6           This video deposition is being held in

 7 Indianapolis, Indiana, in the matter of In Re National

 8 Prescription Opiate Litigation, for the United States

 9 District Court for the Northern District of Ohio,

10 Eastern Division.

11           Our deponent is Sherri Hinkle.

12           Will counsel please identify themselves

13 for the video record.

14      MR. ELSNER:  My name is Michael Elsner from

15 Motley Rice on behalf of Plaintiffs.

16      MR. GOETZ:  Daniel Goetz on behalf of the

17 Plaintiffs.

18      MS. HARMON:  Sarah Harmon of Armstrong &

19 Teasdale on behalf of Cardinal Health.

20      MR. CLARK:  Miles Clark, Zuckerman Spaeder, on

21 behalf of CVS Indiana, LLC, CVS Rx Services, Inc. and

22 the witness.

23      MR. HYNES:  Paul Hynes, Zuckerman Spaeder LLP,

24 on behalf of same parties.

Highly Confidential - Subject to Further Confidentiality Review

```
 1          THE VIDEOGRAPHER:  Counsel on the phone?

 2          MS. YAACOUB:  Pamela Yaacoub from Jones Day on

 3     behalf of Walmart.

 4          MS. RUSSO:  Shana Russo on behalf of

 5     AmerisourceBergen Drug Corporation and

 6     AmerisourceBergen Corporation.

 7          MR. HOUSTON:  Zeno Houston from Arnold & Porter

 8     on behalf of the Endo and Par defendants.

 9          THE VIDEOGRAPHER:  Our court reporter today is

10     Juliana Zajicek.

11                Please swear in the witness.

12                    (WHEREUPON, the witness was duly

13                      sworn.)

14                      SHERRI HINKLE,

15     called as a witness herein, having been first duly

16     sworn, was examined and testified as follows:

17                          EXAMINATION

18     BY MR. ELSNER:

19          Q.    Good morning.

20          A.    Good morning.

21          Q.    My name is Mike Elsner and I represent the

22     Plaintiffs in the case and I'm going to be asking you

23     a few questions this morning, okay?

24          A.    Okay.
```

```
 1        Q.    If you ever need to take a break, just let

 2   us know and we can go off the record and take a quick

 3   break, okay?

 4        A.    Okay.

 5        Q.    Can you tell us your full name?

 6        A.    Sherri Lynn Hinkle.

 7        Q.    Okay.  And where are you from?

 8        A.    Indianapolis, Indiana.

 9        Q.    Okay.  Have you lived your whole life in

10   Indiana?

11        A.    Yes.

12        Q.    Okay.  And have you ever been deposed

13   before?

14        A.    No.

15        Q.    Okay.  Besides your attorney Mr. Hynes,

16   did you speak with anyone else about your deposition

17   today?

18        A.    No.

19        Q.    Okay.  Did you read any depositions that

20   were taken in this case?

21        A.    No.

22        Q.    Okay.  Can you describe for me your

23   educational background?

24        A.    I went to high school at -- at Arsenal
```

Highly Confidential - Subject to Further Confidentiality Review

1    Tech here in Indianapolis and I went to Indiana

2    University in Bloomington.

3         Q.    All right.  Did you graduate with a degree

4    from Indiana University?

5         A.    Yes.  A general studies degree.

6         Q.    A general studies degree.

7               And when was that?

8         A.    In '89.

9         Q.    Okay.  What was your first job after you

10   graduated from the university?

11        A.    I worked at a daycare.

12        Q.    Okay.  How long did you do that?

13        A.    Five, six years.

14        Q.    All right.  And what did you -- so that

15   was about, what, '89 to, what, '93, '94 or something

16   like that?

17        A.    '92.

18        Q.    '92, okay.

19              What did you do after that?

20        A.    I went -- followed CVS.

21        Q.    Okay.  And in 1992, did you work for CVS

22   or did you work for Revco?

23        A.    It was Hooks at the time.

24        Q.    Hooks, okay.

```
 1          A.     Hooks at the time.

 2          Q.     And what were you doing for Hooks?

 3          A.     I was a picker.

 4          Q.     A picker.  All right.

 5                 And did Hooks distribute controlled

 6     substances?

 7          A.     I don't know.

 8          Q.     No.

 9                 Did Hicks [sic] distribute

10     pharmaceuticals, drugs?

11          A.     I don't know.

12          Q.     No.

13                 So what were you --

14          MR. HYNES:  I think she said "I don't know."

15          MR. ELSNER:  Oh.

16          MR. HYNES:  Did you say "I don't know" or did

17     you say "No"?

18          THE WITNESS:  "I don't know."

19          MR. HYNES:  Yeah.

20          MR. ELSNER:  Oh, I'm sorry.  I missed --

21          MR. HYNES:  So I think she said -- I think both

22     answers were "I don't know" to those two questions.

23     BY MR. ELSNER:

24          Q.     Okay.  What were you picking when you were
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   working for Hooks?

 2        A.    When I started, I was doing makeup and

 3   hair products.

 4        Q.    Okay.  And how long did you work for

 5   Hooks?

 6        A.    It was a year before they switched over to

 7   Revco.

 8        Q.    To Revco, okay.

 9              And then when you started at Revco, were

10   you still doing makeup, picking?

11        A.    I was still picking, yes.

12        Q.    Okay.  And -- and the same products?

13        A.    Yes.

14        Q.    Okay.  And how long did you work as a

15   picker at Revco?

16        A.    Maybe six months before.  Maybe six

17   months.

18        Q.    And then it changed over to CVS?

19        A.    Yes.

20        Q.    Okay.  And when it changed to CVS, were

21   you -- were you still working as a picker?

22        A.    I -- I was working as a stocker then.

23        Q.    As a stocker, okay.

24              Why did that change?
```

```
 1        A.    Different job position.  It came with

 2   regular work.

 3        Q.    And you applied for that?

 4        A.    Um-hum.

 5        Q.    Okay.  And what were you stocking as a

 6   stocker?

 7        A.    I was stocking in the -- in the Rx

 8   department then.

 9        Q.    Okay.  So -- so you were -- by Rx, you

10   mean pharmaceuticals or drugs?

11        A.    Um-hum.  The pharmaceutical, yes.

12        Q.    Okay.  And were those controlled

13   substances?

14        A.    Yes.

15        Q.    Okay.  And if I'm right about this, CVS

16   purchased Revco around 1998.

17              Does that sound about right when you --

18        A.    I don't remember.

19        Q.    Okay.  But all of this was in the same

20   building, is that right?

21        A.    Yes.

22        Q.    Okay.  And that's the same building you

23   work today?

24        A.    Yes.
```

Highly Confidential - Subject to Further Confidentiality Review

1      Q.     Okay.  How long did you work as a stocker

2  of drugs for CVS?

3      A.     Maybe about six -- maybe four, five years.

4  I don't remember.

5      Q.     Okay.  And when did -- and -- and then

6  what position did you take?

7      A.     Inventory control.

8      Q.     Okay.  What is inventory control?

9      A.     We keep track of all of the products in

10  the Rx department.

11      Q.     Okay.  So it's inventory control for

12  pharmaceuticals, is that right?

13      A.     Yes.

14      Q.     Are you responsible for inventory control

15  of any other products?

16      A.     Because I do the cage now, controlled

17  substances now.

18      Q.     Okay.  I -- I'm going to just focus --

19  before we get to the cage, I want to just focus on

20  inventory.

21            Well -- well, when you started in

22  inventory control, was it in the cage or outside of

23  the cage?

24      A.     When I first started, it was outside the

Highly Confidential - Subject to Further Confidentiality Review

1    cage.

2         Q.    Okay.  Tell me how long you did that.

3         A.    I still do it.  So, almost 20 -- almost

4    15, 16 years, because I still do it now.

5         Q.    You still do it now?

6         A.    Um-hum.

7         Q.    Okay.  So when you were doing inventory

8    control for pharmaceuticals, at what -- did it include

9    controlled substances the whole time or when did you

10   start working in controlled substances?

11        A.    It start that year after.

12        Q.    A year after?

13        A.    Um-hum.

14        Q.    Okay.  So what's your best estimate as to

15   the year that that -- that that happened?  Is it 2000,

16   2001?

17        A.    Probably 2001.

18        Q.    2001, okay.

19              And so in 2001, that's the first year you

20   started working with controlled --

21        A.    Yes.

22        Q.    -- substances, right?

23   

24



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



24          Q.    What time do you start that during the

```
 1   day?

 2        A.    It is at the end of the day.  I do my -- I

 3   do it at the end of the day.

 4        Q.    And what time is that?

 5        A.    After 2:00.

 6        Q.    A 2:00 p.m.

 7              So, are there multiple shifts of pickers?

 8        A.    Just one shift.

 9        Q.    One shift.

10              And is it during the day?

11        A.    Yes.

12        Q.    What time does that shift start?

13        A.    5:30.

14        Q.    5:30 a.m.

15              And that runs until what time?

16        A.    1:30.

17        Q.    1:30.

18              And what time do you come in?

19        A.    6:00.

20        Q.    6:00 a.m.

21              And how late do you work?

22        A.    Two o'clock.

23        Q.    2:00 p.m.

24        A.    Two o'clock or sometimes 3:00.  It depends
```

```
 1    how late -- how many -- late -- how late I get

 2    started.

 3         Q.    Right, okay.

 4               So -- so you come in at 6:00 and you start

 5    counting the -- the -- at the time that the pickers

 6    are done --

 7         A.    Yes.

 8         Q.    -- whether that's 1:30 or 1:00 or

 9    whatever?

10         A.    Yes.

11         Q.    Sometimes it might be 2:00 p.m.  And then

12    you'll -- and then you'll count until you finish?

13         A.    Yes.

14         Q.    And then you go home, is that right?

15         A.    Yes.

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



19        Q.    Do you -- do you have a computer and

20    access to the internet?

21        A.    Yes.

22        Q.    Okay.  Have you always had that?

23        A.    Yes.

24        Q.    In -- in control invent -- as inventory

Highly Confidential - Subject to Further Confidentiality Review

1    control in the control room --

2          A.    Yes.

3          Q.    -- or control cage?

Highly Confidential - Subject to Further Confidentiality Review



11       Q.    Okay.  How big is the plant, I mean, or

12  the facility?

13       A.    I -- I don't know how big it is.

14       Q.    Is it -- is it bigger than your house?

15       A.    Yes.

16       Q.    Okay.  How many -- how -- how much bigger

17  than your house?

18       A.    I don't know.  I can't describe it.

19       Q.    Is it bigger than a football field?

20       A.    I'm on the other side of the building, so

21  I'm not sure the full length of it.  I --

22       Q.    Okay.

23       A.    -- I don't know.

24       Q.    Do you do a lot of walking with your job?

Highly Confidential - Subject to Further Confidentiality Review

1      A.      Yes.

2      Q.      Okay.  How long does it take you to get

3   from your office, sometimes, to the product that you

4   are trying to locate?

5      A.      Maybe five -- maybe five minutes depending

6   where it is.

7      Q.      Okay.  What I'm trying to get in terms of

8   just a general sense, it's a pretty large building,

9   correct?

10      A.      Correct.

11      Q.      It is not a tiny place?

12      A.      No.

13      Q.      And because in that building you -- CVS

14   stocks all of the products that they sell, is that

15   right?

16      A.      Yes.

17      MR. HYNES:  Objection to form.

18   BY MR. ELSNER:

19      Q.      Everything from toilet paper to

20   toothpaste, is that right?

21      A.      Yes.

22      Q.      To hair products and shaving products?

23      A.      Yes.

24      Q.      Okay.  Food, is food stocked --

Highly Confidential - Subject to Further Confidentiality Review

```
 1   distributed from there as well?

 2        A.    Certain -- some foods.

 3        Q.    Some foods.  Snacks like pretzels and --

 4        A.    Yes.

 5        Q.    -- chips and those kinds of things?

 6        A.    Yes.  I don't think chips, but candy.

 7        Q.    Candy, okay.

 8              And -- and CVS sells all sorts of other

 9   products, like toys and games.  Is that also stocked

10   there?

11        A.    Not -- no, not in our building.

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review









Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

 1      A.    Yes.

 2      Q.    Is that right?  Okay.

 3            Now, when that system was in place, when

 4  they finished all of the picks for a particular

 5  pharmacy, was then that -- was -- were those picks

 6  double checked?

 7      MR. HYNES:  Objection to form.

 8  BY THE WITNESS:

 9      A.    I wasn't back there in the cage at that

10  time, so I don't know.

11  BY MR. ELSNER:

12      Q.    Okay.  Well, what about five, six years

13  ago?

14      MR. HYNES:  Objection to form.

15  BY MR. ELSNER:

16      Q.    When you were in -- where you were in

17  inven control -- inventory control for controlled

18  substances?

19      A.    Yes, then --

20      MR. HYNES:  Objection to form.

21  BY THE WITNESS:

22      A.    Yes, then they did check it.

23  BY MR. ELSNER:

24      Q.    They did check it.

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    And was it -- was it again one of the
 2    pickers who was working as a checker, too?
 3         A.    Yes.
 4         Q.    Okay.  And how would they check it?
 5         A.    I don't understand the question.
 6         Q.    So when the picker brings the -- brings
 7    the tote with all of the items that they've picked for
 8    that particular pharmacy's order, when they bring that
 9    to the checker, how did the checker check it?
10                    Did they pull out each one and -- and --
11    and -- and check it against what?
12         A.    The order.
13                    Do you mean when they on -- on the light
14    system or the voice system?
15         Q.    The light system.  I'm sorry.
16         A.    I wasn't back there when they did the
17    voice system, so I'm not for sure how they checked it
18    then.
19         Q.    Did you mean you weren't back there when
20    they did the light system?
21         A.    Not in -- not in the control.
22         Q.    Okay.  You just said "voice system," so I
23    just -- I wanted to make sure that I -- that the
24    record is clear.
```

Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9        MR. HYNES:  Objection to form.

10   BY MR. ELSNER:

11        Q.    So the whole day they are spending there

12   from 5:30 in the -- the morning until about 1:30 in

13   the afternoon, I assume they get an hour lunch, is

14   that right?

15        A.    Yes.

16        Q.    But the rest of the time they are either

17   picking or checking.

18             Now, is there any kind of a evaluation of

19   how a picker does their job?

20        MR. HYNES:  Objection to the form.

21   BY THE WITNESS:

22        A.    I don't know.

23   BY MR. ELSNER:

24        Q.    You don't know.

```
 1              Do you know whether they're -- whether

 2    they are -- they are rated or evaluated as to

 3    accuracy?

 4         MR. HYNES:  Objection form.

 5    BY THE WITNESS:

 6         A.    I don't know.

 7    BY MR. ELSNER:

 8         Q.    Okay.  Who -- who does the picker report

 9    to?

10         MR. HYNES:  Objection to form.

11    BY THE WITNESS:

12         A.    Their supervisor.

13    BY MR. ELSNER:

14         Q.    Yes.  And who is that?

15         A.    Right now it is Dennis Wat -- White --

16    Weaver.

17         Q.    Weaver.

18               And what's Mr. Weaver's title?

19         A.    Supervisor, Rx supervisor.

20         Q.    Rx supervisor, is that what you said?

21         A.    Um-hum.

22         Q.    Okay.

23         A.    Pharmacy supervisor.

24         Q.    Pharmacy supervisor.
```

Highly Confidential - Subject to Further Confidentiality Review

1                   Who was it before Mr. Weaver?

2          A.      Allen Hanson.

3          Q.      How do you spell Henson, H-e --

4          A.      Hanson.  Hanson, H-a-n-s-o-n, I believe.

5          Q.      Okay.  And he also was a pharmacy

6   supervisor?

7          A.      Yes.

8          Q.      Okay.  And before Mr. Hanson?

9          A.      Dan Deaton.

10         Q.      Okay.  Also the pharmacy supervisor?

11         A.      Yes.

12         Q.      And before Mr. Deaton?

13         A.      Robert Richardson.

14         Q.      All right.  Also the pharmacy supervisor?

15         A.      Yes.

16         Q.      And before Mr. Richardson?

17         A.      That I don't know.

18         Q.      Do you remember a -- a Gary Lamberth?

19         A.      Yes.

20         Q.      Was he a pharmacy supervisor?

21         A.      Pharmacy manager.

22         Q.      Pharmacy manager.

23                 So he didn't directly manage -- he was not

24   a -- a pharmacy supervisor that would have managed the

1    pickers, correct?

2        A.    Not at the -- not at the time I was up

3    there.

4        Q.    Okay.  Not at...

5              Now, do you remember any of the other

6    pharmacy supervisors that managed the pickers?

7        A.    That's all I remember.

8        MR. ELSNER:  Can we go off the record real

9    quick?

10       MR. HYNES:  Yeah.  Take a quick break?

11       MR. ELSNER:  Sure.

12       THE VIDEOGRAPHER:  We are off the record at

13   9:30 a.m.

14              (WHEREUPON, a recess was had

15               from 9:30 to 9:38 a.m.)

16       THE VIDEOGRAPHER:  We are back on the record at

17   9:38 a.m.

18   BY MR. ELSNER:

19       Q.    Ms. Hinkle, before we broke you were

20   giving me a list of the various people who supervised

21   the pickers in the -- in the drug control room at CVS.

22              That was not part of your responsibility,

23   is that right?

24       A.    Yes.

Highly Confidential - Subject to Further Confidentiality Review

1    Q.    Yes, it was not part of your --

2    A.    It was not part of my responsibility.

3    Q.    Okay.  And who supervised the stockers in

4  the control room?

5    A.    The same supervisor.

6    Q.    The same supervisor.

7          So you were not responsible for

8  supervising them either, correct?

9    A.    Uhn-uhn.

10   Q.    Okay.  Who is your supervisor?

11   A.    Jimmy Sutton.

12   Q.    And what -- do you know what Jimmy

13  Sutton's title is?

14   A.    Inventory control supervisor.

15   Q.    Okay.  Now, is he responsible for all

16  inventory control at the Indianapolis distribution

17  center?

18   A.    Yes.

19   Q.    So that includes everything from toilet

20  paper to control drugs?

21   A.    I don't know.

22   Q.    Okay.  What department do you and

23  Mr. Sutton work in?

24   A.    I work in the Rx department.  His -- his

1    office is in the upper part of the building.

2         Q.    Okay.  Is he all -- so he is not in the Rx

3    department?

4         A.    No.

5         Q.    Okay.  Do you have any -- anyone who

6    reports to you directly?

7         A.    No.

8         Q.    Can you name for me some of the pickers

9    who worked in the control room between 2006 and 2014?

10             Do you remember any of their names?

11        A.    Deb Foster.

12        Q.    Okay.  Now, Deb Foster, is she still

13   working at CVS or no?

14        A.    She retired.

15        Q.    She retired.

16             When did she retire?

17        A.    Last December.

18        Q.    Okay.  Anyone else?

19        A.    Ellen Wilson.

20        Q.    Okay.  Did you say Ellen?

21        A.    Ellen Wilson.

22        Q.    Ellen Wilson, okay.

23             Is she still working at CVS?

24        A.    Yes.

Highly Confidential - Subject to Further Confidentiality Review

1      Q.    In the same job?

2      A.    A different job.

3      Q.    A different job.

4            What does she do now?

5      A.    She is IC clerk now, inventory control

6   clerk now.

7      Q.    Inventory control clerk, okay.

8            All right.  Anyone else?

9      A.    Lori Huddleston.

10     Q.    Is she still working at CVS?

11     A.    Yes.

12     Q.    What position is she in now?

13     A.    She works in the control cage.

14     Q.    The control cage.

15           Also as a picker?

16     A.    Picker, yes.

17     Q.    Okay.  Anyone else?

18     A.    In 2006.  That's all I can remember from

19   2006.

20     Q.    Now, I said 2006 through 2014, about four

21   years ago.

22     A.    The people -- there are some new ones that

23   just got hired.

24     Q.    Recently?

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.    Yes.

 2        Q.    Okay.  I'm not as interested in them.

 3              When you say got -- "recent," do you mean

 4    in the last year or two?

 5        A.    Like six months.

 6        Q.    Six months.

 7              Is there a lot of turnover in the control

 8    cage?

 9        MR. HYNES:  Objection to form.

10    BY THE WITNESS:

11        A.    I don't know.  I don't know.  A lot of

12    people retires.  A lot of people are retiring.

13    BY MR. ELSNER:

14        Q.    A lot of people retire?

15        A.    Um-hum.

16        Q.    I guess what I'm trying to get at is,

17    is -- is it fair to say that of the pickers in the

18    control room, that they need to be -- we need to find

19    a new picker, you know, once a year or once every six

20    months or once every five years?

21        MR. HYNES:  Objection to form.

22    BY THE WITNESS:

23        A.    I don't know.  I really don't.

24    BY MR. ELSNER:
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1        Q.     Do you know how long Deb Foster worked in

 2    the control room?

 3        A.     She -- she worked about 20 years,

 4    25 years.

 5        Q.     20, 25 years, okay.

 6               What about Ellen Wilson?

 7        A.     She was there about 25 years.  She just

 8    switched jobs.

 9        Q.     And Lori Huddleston?

10        A.     She is still there.

11        Q.     She is still there.

12               What -- do you know how long ago she

13    started?

14        A.     No.

15        Q.     Okay.

16

17

18

19

20

21

22

23

24
```



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

23          I want to go back and -- and ask your best

24   estimate as to how often this would occur, you know,

Highly Confidential - Subject to Further Confidentiality Review

1    back around 2006 to 2014.

2              Is this something that would occur, you

3    know, maybe once a quarter or once every six months or

4    is this something that would occur every day?

5        MR. HYNES:  Objection to form.

6    BY THE WITNESS:

7        A.    I don't remember.

8    BY MR. ELSNER:

9        Q.    I know it's hard to remember everything

10   that I'm asking, but I really want you to try to do

11   your best to tell me, is this something that was a

12   routine part of your job that occurred every single

13   day?

14       MR. HYNES:  Objection to form.

15   BY THE WITNESS:

16       A.    Not every single day.

17   BY MR. ELSNER:

18       Q.    Okay.  Is it something that was routine

19   enough that it occurred once a week?

20       MR. HYNES:  Objection to form.

21   BY THE WITNESS:

22       A.    Not every week.

23   BY MR. ELSNER:

24       Q.    Not every week.

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  Was it something that was routine enough

 2    that would occur every month?

 3         MR. HYNES:  Objection to form.

 4    BY THE WITNESS:

 5         A.    Not every month.

 6    BY MR. ELSNER:

 7         Q.    Okay.

 8                  So this was more of a sort of out of

 9    ordinary experience, is that --

10         MR. HYNES:  Objection to form.

11    BY MR. ELSNER:

12         Q.    -- is that accurate?

13         A.    Yes.

14         Q.    Okay.  Do you know whether it would occur

15    once every six months?

16         MR. HYNES:  Objection to form.

17    BY THE WITNESS:

18         A.    Maybe.

19    BY MR. ELSNER:

20         Q.    Maybe.

21                  It could be -- it could be not even once

22    every six months, is that right?

23         MR. HYNES:  Objection to form.

24    BY THE WITNESS:
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.    (Nodding head.)

 2   BY MR. ELSNER:

 3        Q.    Okay.  Are you pretty confident that it

 4   occurred ev- -- at least there was one every year?

 5        A.    Yes.
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4      MR. ELSNER:  Let's take a quick break.

5      MR. HYNES:  Sure.

6      THE VIDEOGRAPHER:  We are off the record at

7  10:06 a.m.

8                  (WHEREUPON, a recess was had

9                   from 10:06 to 10:15 a.m.)

10     THE VIDEOGRAPHER:  We are back on the record at

11  10:15 a.m.

12  BY MR. ELSNER:

13

14

15

16

17

18

19

20

21

22

23

24



Highly Confidential - Subject to Further Confidentiality Review

```
 1  ██████████████████████████████████████
 2  ██████████████████████████████████████
 3  ██████████████████████████████████████
 4  ██████████████████████████████████████
 5  ██████████████████████████████████████
 6  ██████████████████████████████████████
 7  ██████████████████████████████████████
 8  ██████████████████████████████████████
 9  ██████████████████████████████████████
10  ██████████████████████████████████████
11  ██████████████████████████████████████
```

12       MR. ELSNER:  Okay.  I'm going to pass the

13  witness at this time.

14       MR. HYNES:  Okay.  Can I just have five minutes?

15  I've got to check --

16       MR. ELSNER:  Sure.

17       MR. HYNES:  -- one thing and then I'll...

18       MR. ELSNER:  We're going to go off the record.

19       THE VIDEOGRAPHER:  We are off the record at

20  10:16 a.m.

21                 (WHEREUPON, a recess was had

22                  from 10:16 to 10:27 a.m.)

23       THE VIDEOGRAPHER:  We are back on the record at

24  10:27 a.m.

Highly Confidential - Subject to Further Confidentiality Review

1          MR. ELSNER:  I -- I pass the witness.

2          MR. HYNES:  I have no -- no questions for the

3    witness.  Thank you for your time everyone.

4          MR. ELSNER:  Thank you, Ms. Hinkle.

5          THE WITNESS:  Thank you.

6          THE VIDEOGRAPHER:  We are off the record at

7    10:27 a.m.  This concludes the videotape deposition of

8    Sherri Hinkle.

9                (Time Noted:  10:27 a.m.)

10               FURTHER DEPONENT SAITH NOT.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1                   REPORTER'S CERTIFICATE

 2

 3           I, JULIANA F. ZAJICEK, C.S.R. No. 84-2604,

 4    a Certified Shorthand Reporter, do hereby certify:

 5           That previous to the commencement of the

 6    examination of the witness herein, the witness was

 7    duly sworn to testify the whole truth concerning the

 8    matters herein;

 9           That the foregoing deposition transcript

10    was reported stenographically by me, was thereafter

11    reduced to typewriting under my personal direction and

12    constitutes a true record of the testimony given and

13    the proceedings had;

14           That the said deposition was taken before

15    me at the time and place specified;

16           That I am not a relative or employee or

17    attorney or counsel, nor a relative or employee of

18    such attorney or counsel for any of the parties

19    hereto, nor interested directly or indirectly in the

20    outcome of this action.

21           IN WITNESS WHEREOF, I do hereunto set my

22    hand on this 29th day of January, 2019.

23

24           JULIANA F. ZAJICEK, Certified Reporter
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              DEPOSITION ERRATA SHEET

 2

 3

 4   Case Caption:  In Re: National Prescription

 5              Opiate Litigation

 6

 7        DECLARATION UNDER PENALTY OF PERJURY

 8

 9        I declare under penalty of perjury that I

10   have read the entire transcript of my Deposition taken

11   in the captioned matter or the same has been read to

12   me, and the same is true and accurate, save and except

13   for changes and/or corrections, if any, as indicated

14   by me on the DEPOSITION ERRATA SHEET hereof, with the

15   understanding that I offer these changes as if still

16   under oath.

17

18                        ███████████

19

20   SUBSCRIBED AND SWORN TO

21   before me this       day

22   of                , A.D. 20__.

23

24              Notary Public
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                   DEPOSITION ERRATA SHEET

 2    Page No._____Line No._____Change to:_____

 3    _____

 4    Reason for change:_____

 5    Page No._____Line No._____Change to:_____

 6    _____

 7    Reason for change:_____

 8    Page No._____Line No._____Change to:_____

 9    _____

10    Reason for change:_____

11    Page No._____Line No._____Change to:_____

12    _____

13    Reason for change:_____

14    Page No._____Line No._____Change to:_____

15    _____

16    Reason for change:_____

17    Page No._____Line No._____Change to:_____

18    _____

19    Reason for change:_____

20    Page No._____Line No._____Change to:_____

21    _____

22    Reason for change:_____

23    SIGNATURE:_____DATE:_____

24                    ███████████████
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  DEPOSITION ERRATA SHEET

 2    Page No._____Line No._____Change to:_____

 3    _____

 4    Reason for change:_____

 5    Page No._____Line No._____Change to:_____

 6    _____

 7    Reason for change:_____

 8    Page No._____Line No._____Change to:_____

 9    _____

10    Reason for change:_____

11    Page No._____Line No._____Change to:_____

12    _____

13    Reason for change:_____

14    Page No._____Line No._____Change to:_____

15    _____

16    Reason for change:_____

17    Page No._____Line No._____Change to:_____

18    _____

19    Reason for change:_____

20    Page No._____Line No._____Change to:_____

21    _____

22    Reason for change:_____

23    SIGNATURE:_____DATE:_____

24                    ████████████
```