Page 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL | ) | MDL No. 2804 |
| PRESCRIPTION OPIATE | ) | |
| LITIGATION | ) | Case No. |
| | ) | 1:17-MD-2804 |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | Hon. Dan A. Polster |
| ALL CASES | ) | |
| | ) | |

— — —

Friday, December 14, 2018
— — —

HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
CONFIDENTIALITY REVIEW
— — —

Videotaped Deposition of PATSY LITTLE,
held at Stone Pigman Walther Wittmann LLC,
909 Poydras, Suite 3150, New Orleans,
Louisiana, commencing at 8:06 a.m., on the
above date, before Michael E. Miller, Fellow
of the Academy of Professional Reporters,
Registered Diplomate Reporter, Certified
Realtime Reporter and Notary Public.

— — —

GOLKOW LITIGATION SERVICES
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

Highly Confidential - Subject to Further Confidentiality Review

## Page 2

```
 1    A P P E A R A N C E S:
 2    CARELLA BYRNE CECCHI OLSTEIN BRODY &
      AGNELLO PC
 3    BY:  ZACHARY BOWER, ESQUIRE
      zbower@carellabyrne.com
 4    CAROLINE F. BARTLETT, ESQUIRE
      cbartlett@carellabyrne.com
 5    MICHAEL INNES, ESQUIRE
      minnes@carellabyrne.com
 6    (via teleconference)
      DONALD ECKLUND, ESQUIRE
 7    decklund@carellabyrne.com
      (via teleconference)
 8    5 Becker Farm Road
      Roseland, New Jersey 07068
 9    (973) 994-1700
      Counsel for MDL Plaintiffs
10
11    JONES DAY
      BY:  TARA A. FUMERTON, ESQUIRE
12    tfumerton@jonesday.com
      SCOTT B. ELMER, ESQUIRE
13    selmer@jonesday.com
      77 West Wacker
14    Chicago, Illinois 60601
      (312) 782-3939
15    Counsel for Walmart and The Witness
16
17    KIRKLAND & ELLIS LLP
      BY:  ZACHARY A. CIULLO, ESQUIRE
18    zac.ciullo@kirkland.com
      300 North LaSalle
19    Chicago, Illinois 60654
      (312) 862-2000
20    Counsel for Allergan Finance LLC
21
22
23
24
25
```

## Page 3

```
 1    A P P E A R A N C E S:
 2    REED SMITH LLP
      BY:  NICHOLAS R. RODRIGUEZ, ESQUIRE
 3    nrodriguez@reedsmith.com
      (via teleconference)
 4    2500 One Liberty Place
      1650 Market Street
 5    Philadelphia, Pennsylvania 19103
      (215) 851-8281
 6    Counsel for AmerisourceBergen
 7
 8    ARNOLD & PORTER KAYE SCHOLER LLP
      BY:  DAVID D. FAUVRE, ESQUIRE
 9    david.fauvre@arnoldporter.com
      (via teleconference)
10    601 Massachusetts Avenue, N.W.
      Washington, D.C. 20001
11    (202) 942-5000
      Counsel for Endo Health Solutions
12    Inc., Endo Pharmaceuticals Inc., Par
      Pharmaceutical, Inc. and Par
13    Pharmaceutical Companies, Inc.
14
      COVINGTON & BURLING LLP
15    BY:  SARA SUNDERLAND, ESQUIRE
      ssunderland@cov.com
16    (via teleconference)
      One Front Street
17    San Francisco, California 94111
      (415) 591-6000
18    Counsel for McKesson Corporation
19
      WILLIAMS & CONNOLLY LLP
20    BY:  WILL HAWKINS, ESQUIRE
      whawkins@wc.com
21    (via teleconference)
      725 Twelfth Street, N.W.
22    Washington, D.C. 20005
      (202) 434-5000
23    Counsel for Cardinal Health
24
25
```

## Page 4

```
 1    A P P E A R A N C E S:
 2    MARCUS & SHAPIRA LLP
      BY:  DARLENE M. NOWAK, ESQUIRE
 3    nowak@marcus-shapira.com
      (via teleconference)
 4    One Oxford Center
      35th Floor
 5    Pittsburgh, Pennsylvania 15219
      (412) 471-3490
 6    Counsel for HBC Services
 7
      MORGAN LEWIS & BOCKIUS LLP
 8    BY:  MATTHEW R. LADD, ESQUIRE
      matthew.ladd@morganlewis.com
 9    (via teleconference)
      101 Park Avenue
10    New York, New York 10178
      (212) 309-6000
11    Counsel for Rite Aid
12
13    ALSO PRESENT:
14    JENNIFER B. BECHET, ESQUIRE
      Walmart Legal
15
16    VIDEOGRAPHER:
17    DAVID LANE,
      Golkow Litigation Services
18
19
20
21
22
23
24
25
```

## Page 5

```
 1              INDEX
 2
      APPEARANCES              2
 3
      PROCEEDINGS              10
 4
 5
      EXAMINATION OF PATSY LITTLE:
 6
        BY MR. BOWER           12
 7
 8
      CERTIFICATE              442
 9
      ERRATA                   444
10
      ACKNOWLEDGMENT OF DEPONENT      445
11
      LAWYER'S NOTES           446
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

Page 6

```
 1              DEPOSITION EXHIBITS
                   PATSY LITTLE
 2              December 14, 2018
 3    NUMBER         DESCRIPTION        PAGE
 4    Walmart    Patsy Little LinkedIn Bio    23
      Little     [No Bates]
 5    Exhibit 1
 6    Walmart    12/20/05 Mallinckrodt Price    78
      Little     Decrease Letter
 7    Exhibit 2   WMT_MDL_000025989 -
                  WMT_MDL_000025990
 8
      Walmart    5/6/09 Walmart Letter    105
 9    Little     PAR_OPIOID_MDL_00040255 -
      Exhibit 3  PAR_OPIOID_MDL_000040256
10
      Walmart    September 2009 E-mail(s)    128
11    Little     ACTAVIS0639662 -
      Exhibit 4  ACTAVIS0639663
12
      Walmart    September 2009 E-mail(s)    143
13    Little     w/Attachment(s)
      Exhibit 5  Acquired_Actavis_00391960 -
14               Acquired_Actavis_00391964
15    Walmart    10/5/10 Endo Letter    166
      Little     WMT_MDL_000021802
16    Exhibit 6
      Walmart    November 2009 Redacted    164
17    Little     E-mail(s)
      Exhibit 7  Acquired_Actavis_00224033 -
18               Acquired_Actavis_00224034
19    Walmart    September 2009 E-mail(s)    179
      Little     w/Attachment(s)
20    Exhibit 8   WMT_MDL_000011737 -
                  WMT_MDL_000011739
21
      Walmart    October 2009 E-mail(s)    185
22    Little     w/Attachment(s)
      Exhibit 9  WMT_MDL_000011750 -
23               WMT_MDL_000011751
24
25
```

Page 7

```
 1              DEPOSITION EXHIBITS
 2
 3    Walmart    11/16/09 Actavis Letter    188
      Little     WMT_MDL_000025225 -
      Exhibit 10 WMT_MDL_000025226
 4
      Walmart    1/4/10 Apotex Letter    196
 5    Little     WMT_MDL_000025550
      Exhibit 11
 6    Walmart    2/17/10 Actavis Letter    222
      Little     ACTAVIS1144542 -
 7    Exhibit 12 ACTAVIS1144543
 8    Walmart    November 2009 Redacted    232
      Little     E-mail(s)
 9    Exhibit 13 Acquired_Actavis_00224011 -
                 Acquired_Actavis_00224012
10
      Walmart    October 2015 E-mail(s)    256
11    Little     w/Attachment(s)
      Exhibit 14 WMT_MDL_000021669 -
12               WMT_MDL_000021678
13    Walmart    November 2015 E-mail(s)    265
      Little     w/Attachment(s)
14    Exhibit 15 WMT_MDL_000021921 -
                 WMT_MDL_000021924
15
      Walmart    March 2010 E-mail(s)    269
16    Little     MNK-T1_000632328 -
      Exhibit 16 MNK-T1_000632329
17
      Walmart    April 2010 Redacted E-mail(s)  273
18    Little     MNK-T1_0001961218 -
      Exhibit 17 MNK-T1_0001961219
19
      Walmart    June 2012 Redacted E-mail(s)  285
20    Little     PPLPC004000325237 -
      Exhibit 18 PPLPC004000325241
21
      Walmart    June 2011 Redacted E-mail(s)  305
22    Little     ACTAVIS0361535 -
      Exhibit 19 ACTAVIS0361538
23
24
25
```

Page 8

```
 1              DEPOSITION EXHIBITS
 2
 3    Walmart    November 2011 Redacted    314
      Little     E-mail(s)
      Exhibit 20 ACTAVIS0338793 -
 4               ACTAVIS0338796
 5    Walmart    June 2012 Redacted E-mail(s)  327
      Little     Acquired_Actavis_00382802 -
 6    Exhibit 21 Acquired_Actavis_00382807
 7    Walmart    June 2012 E-mail(s)    336
      Little     w/Attachment(s)
 8    Exhibit 22 ALLERGAN_MDL_00144683 -
                 ALLERGAN_MDL_00144685
 9
      Walmart    November 2011 E-mail(s)    341
10    Little     ACTAVIS0338574 -
      Exhibit 23 ACTAVIS0338579
11
      Walmart    June 2012 Redacted E-mail(s)  354
12    Little     ALLERGAN_MDL_00231481 -
      Exhibit 24 ALLERGAN_MDL_00231485
13
      Walmart    July 2012 E-mail(s)    369
14    Little     WMT_MDL_00037807 -
      Exhibit 25 WMT_MDL_000037808
15
      Walmart    August 2012 E-mail(s)    373
16    Little     WMT_MDL_000033418 -
      Exhibit 26 WMT_MDL_000033424
17
      Walmart    8/23/12 Mallinckrodt Letter    388
18    Little     WMT_MDL_000005900
      Exhibit 27
19    Walmart    August 2015 E-mail(s)    393
      Little     WMT_MDL_000021757 -
20    Exhibit 28 WMT_MDL_000021759
21    Walmart    December 2015 E-mail(s)    405
      Little     w/Attachment(s)
22    Exhibit 29 WMT_MDL_000007243 -
                 WMT_MDL_000007246
23
      Walmart    June 2016 E-mail(s)    411
24    Little     MNK-T1_0004830712
      Exhibit 30
25
```

Page 9

```
 1              DEPOSITION EXHIBITS
 2
      Walmart    January 2017 E-mail(s)    420
 3    Little     WMT_MDL_000021571
      Exhibit 31
 4
      Walmart    3/30/11 Mallinckrodt Price    424
 5    Little     Decrease Letter
      Exhibit 32  WMT_MDL_000025445 -
 6                WMT_MDL_000025447
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

Page 10

1           PROCEEDINGS
2      (December 14, 2018 at 8:06 a.m.)
3      THE VIDEOGRAPHER:  We're now on
4  the record.  My name is David Lane,
5  videographer for Golkow Litigation
6  Services.  Today's date is
7  December 14th, 2018.  Our time is
8  8:05 a.m.
9      This deposition is taking place
10  in New Orleans, Louisiana in the
11  matter of National Prescription Opiate
12  Litigation.  Our deponent today is
13  Patsy Little.
14      Counsel, please introduce
15  yourselves and state whom you
16  represent.
17      MS. FUMERTON:  Tara Fumerton on
18  behalf of Walmart and the witness, and
19  with me today is Scott Elmer and
20  Jennifer Bechet.
21      MR. CIULLO:  Zachary Cuillo
22  from Kirkland & Ellis on behalf of
23  Allergan Finance LLC.
24      MR. BOWER:  Zach Bower on
25  behalf of plaintiffs in the MDL.

Page 11

1      MS. BARTLETT:  Caroline
2  Bartlett on behalf of plaintiffs in
3  the MDL.
4      THE VIDEOGRAPHER:  Will counsel
5  on the phone please introduce
6  themselves.
7      MR. HAWKINS:  This is Will
8  Hawkins from Williams & Connolly on
9  behalf of Cardinal Health.
10      MR. LADD:  This is Matthew Ladd
11  of Morgan Lewis & Bockius on behalf of
12  Rite Aid.
13      MS. SUNDERLAND:  This is Sara
14  Sunderland with Covington & Burling on
15  behalf of McKesson.
16      MR. FAUVRE:  David Fauvre from
17  Arnold & Porter on behalf of the Endo
18  and Par defendants.
19      MS. NOWAK:  Darlene Nowak,
20  Marcus & Shapira, on behalf of HBC
21  Services.
22      MR. INNES:  Michael Innes on
23  behalf of plaintiffs in the MDL.
24      THE VIDEOGRAPHER:  The court
25  reporter today is Mike Miller, and he

Page 12

1  will now swear in the witness.
2           PATSY LITTLE,
3      having been duly sworn,
4      testified as follows:
5          EXAMINATION
6  BY MR. BOWER:
7      Q.   Good morning, Ms. Little.  How
8  are you today?
9      A.   Good morning.  Great.
10      Q.   Thank you for being here.  We
11  appreciate it.
12      Have you ever been deposed
13  before?
14      A.   I have not.
15      Q.   You have not, okay.  So I'm
16  sure your counsel went over a few ground
17  rules for you, but just so we're all on the
18  same page, let's talk about that for a
19  minute.
20      I need you to answer if it's a
21  yes-or-no question verbally, so in other
22  words, don't nod your head, so the court
23  reporter can take down your answer.  Do you
24  understand that?
25      A.   Yes, I do.

Page 13

1      Q.   Okay.  And in addition, I know
2  the court reporter has reminded you of this
3  already, but please let me finish my
4  questions.  Give your counsel an opportunity
5  to object before you provide your answers,
6  okay?
7      A.   Okay.
8      Q.   And as we go through the day,
9  if you don't understand a question, please
10  let me know and I will rephrase the question.
11  Otherwise, if you answer the question, I will
12  assume that you understood the question.
13      Do you understand that?
14      A.   Yes, I do.
15      Q.   Okay.  Is there anything that
16  would prevent you from testifying truthfully
17  today?
18      A.   There is not.
19      Q.   Okay.  Do you have any
20  questions before we begin?
21      A.   I do not.
22      Q.   Okay.  Who is representing you
23  here today?
24      A.   Tara and Scott.
25      Q.   Okay.  When was the first time

4 (Pages 10 to 13)

Highly Confidential - Subject to Further Confidentiality Review

Page 14

1    you met Tara?
2       A.    We had a phone call last week,
3    I believe, and then I met her yesterday.
4       Q.    So last week was the first time
5    you ever spoke with her?
6       A.    Yes.
7       Q.    When was the first time you
8    ever spoke with an attorney from her firm
9    regarding this case?
10      A.    I'm not exactly sure.  I had a
11   call with Walmart attorneys, and I'm not sure
12   who was on the phone at that time.
13      Q.    And when was that call?
14      A.    I'm not sure of the date, but
15   November, maybe, or October.
16      Q.    Okay.  Before that, have you
17   had any discussions with anyone about this
18   case?
19      A.    No.
20      Q.    Has anyone ever asked you to
21   produce documents for the case?
22      A.    No.
23      Q.    Has anyone asked if you have
24   any relevant documents for this case?
25      A.    No.

Page 15

1       Q.    Have you ever seen a document
2    request in this case?
3       A.    I don't recall, no.
4       Q.    Have you ever seen the
5    complaint in this case?
6       A.    Yes.
7       Q.    What is your understanding of
8    what this case is about?
9          MS. FUMERTON:  And I just
10         caution the witness that she can
11         reveal anything that she has learned
12         on her own, but not to reveal any
13         communication with counsel.
14      A.    I perused the first few pages,
15   maybe the first five or six pages, and I
16   don't know that I could speak in verbatim to
17   what I saw.  I knew it was Ohio over opioid
18   distribution.
19   BY MR. BOWER:
20      Q.    Other than that, do you have
21   any understanding of what the case is about?
22      A.    No.
23      Q.    Okay.  When was the first time
24   you learned that Walmart had been sued in
25   connection with this opioid distribution?

Page 16

1       A.    Whenever I had that first phone
2    call with the Walmart attorney in October or
3    November.
4       Q.    Are you a current employee of
5    Walmart?
6       A.    I am not.
7       Q.    When did you end your
8    employment at Walmart?
9       A.    In April of 2018.
10      Q.    Where do you currently work?
11      A.    I work at Louisiana Wholesale
12   Drugs.
13      Q.    Okay.  And what do you do for
14   Louisiana Wholesale Drugs?
15      A.    I'm in purchasing for them.
16      Q.    Can you just describe briefly
17   what type of business Louisiana Wholesale
18   Drugs is in.  Is it distribution?
19      A.    Yes, it's a wholesaler, a
20   regional wholesaler for prescription drugs
21   and OTC items.



Page 17

20      Q.    Who is responsible for
21   purchasing Schedule II narcotics for the
22   Louisiana wholesale company?
23         MS. FUMERTON:  And I just am
24   going to object to the line of
25   questioning.  I think it's appropriate

Highly Confidential - Subject to Further Confidentiality Review

Page 18

1  to ask her general --
2       MR. BOWER:  I'm not -- you
3  can --
4       MS. FUMERTON:  No, no, I'm
5  telling you --
6       MR. BOWER:  You can make your
7  objection and we can move own.
8       MS. FUMERTON:  Well, no, I'm
9  going to instruct her not to answer.
10 I'm telling you --
11      MR. BOWER:  You're instructing
12 her not to answer that?
13      MS. FUMERTON:  -- if you start
14 to go into -- this is not a deposition
15 about her current employer.  I think
16 general background information is
17 okay.  You can ask her general
18 questions of what she does, but their
19 counsel is not here, and she's here
20 as -- in her capacity as a former
21 Walmart employee.  And so that's why
22 I'm telling you what my position is
23 with respect to this.
24      MR. BOWER:  Tara, I'm not
25 wasting time on the record all day

Page 19

1  with your speaking objections.  You
2  can make your objection and we can
3  move on.
4       MS. FUMERTON:  And I'm telling
5  you that I'm not going to let you --
6       MR. BOWER:  So if you want
7  to --
8       (Simultaneous discussion
9  interrupted by the reporter.)
10      MR. BOWER:  If you want to
11 instruct her not to answer, then do
12 so.  If not, make your objection and
13 we'll move on, okay.
14      Can you read back the last
15 question, please.
16      (The following portion of the
17 record was read.)
18      "QUESTION:  Who is responsible
19 for purchasing Schedule II narcotics
20 for the Louisiana wholesale company? "
21      (End of readback.)
22      A.   I have been instructed by my
23 current employer's attorney to not answer
24 questions about my current job duties.
25 BY MR. BOWER:

Page 20

1       Q.   Are you refusing to answer that
2  question?
3       A.   I would prefer to not answer
4  the question.
5       MS. FUMERTON:  I'm going to
6  instruct her not to answer the
7  question.
8       MR. BOWER:  And what's your
9  basis for that instruction?
10      MS. FUMERTON:  Again, because
11 her counsel is not here for her
12 current company.  I'm respecting her
13 today, and I'm -- as her counsel here
14 today, I am instructing her not to
15 answer that question because you're
16 getting into the details of a
17 different entity that is not why she's
18 here to testify today.
19      If you want to ask her about
20 whether or not she has -- what her
21 role is in her current job, that's
22 fine.  If you start asking her
23 questions about what other people and
24 other individuals did at her current
25 position or her current employer, I'm

Page 21

1  going to instruct her not to answer.
2       MR. BOWER:  Move to strike
3  counsel's colloquy from the record.
4       What is the basis for your
5  objection?
6       MS. FUMERTON:  Because her --
7  you have not noticed her up in her
8  capacity as a witness for her current
9  employer.  She has been noticed up and
10 you have communicated with me as a --
11 and have asked for her in her position
12 as a former Walmart employee.
13 BY MR. BOWER:
14      Q.   Are you going to not answer the
15 question, ma'am?
16      A.   Yes, I'm not going to answer
17 the question.
18      Q.   Are you going to refuse to
19 answer any questions about your current
20 employment?
21      A.   No, I'm okay -- I'm happy to
22 answer questions in what I do in my current
23 employment.

6  (Pages 18 to 21)

Page 22



15          MS. FUMERTON:  Objection, I'm
16      going to instruct her not to answer.
17  BY MR. BOWER:
18      Q.    Are you familiar with that?
19      A.    I'm familiar, yes.
20      Q.    Are you going to not answer
21  that question as well?
22          MS. FUMERTON:  I'm going to
23      instruct her not to answer the
24      question.
25  BY MR. BOWER:

Page 23

1       Q.    Does Ms. Fumerton represent
2   Louisiana Wholesale Drug company?
3       A.    No, she does not.
4       Q.    Are you going to listen to her
5   instructions?
6       A.    Yes.
7       Q.    Okay.
8           (Walmart-Little Exhibit 1
9       marked.)
10          MR. BOWER:  I would just note
11      for the record while you review
12      Exhibit 1 that we don't know whether
13      my questions are relevant because you
14      won't answer them, so we will keep
15      this deposition open to the extent
16      it's necessary.
17          MS. FUMERTON:  I disagree with
18      your characterization because your
19      questions about what Louisiana
20      Wholesale did or did not do is not
21      relevant to this litigation and
22      specifically this deposition.
23  BY MR. BOWER:
24      Q.    You've been handed what's been
25  marked as Exhibit 1.  Are you familiar with

Page 24

1   that document?
2       A.    Yes, I am.
3       Q.    Okay.  What is that document?
4       A.    This is a résumé that I had
5   uploaded to LinkedIn.
6       Q.    Okay.  And if you notice,
7   there's no Louisiana Wholesale Drug company
8   mentioned on this document; is that correct?
9       A.    That's correct.
10      Q.    Is there a reason you haven't
11  updated your LinkedIn profile?
12      A.    It's just not something that I
13  actively do.
14      Q.    When was the last time you
15  updated it?
16      A.    I would probably say, and I
17  don't know for sure, but when I uploaded this
18  document, maybe.
19      Q.    Okay.  You notice under
20  Experience it says February 2014 to present?
21      A.    Yes.
22      Q.    You see that?
23          So your LinkedIn profile, then,
24  is not accurate; is that correct?
25      A.    Correct.

Page 25

1           MS. FUMERTON:  Objection.
2       Objection, form.
3           And just give me a second.
4       You're both fast talkers, so you need
5       to just pause a second after he asks
6       his question.
7   BY MR. BOWER:
8       Q.    Why did you leave Walmart to go
9   to Louisiana Wholesale Drug company?
10      A.    There were some personal
11  reasons.  My mother-in-law had passed away,
12  and my husband was interested in getting back
13  closer to his family and his father.
14      Q.    So at the time you were living
15  in Bentonville when you worked for Walmart?
16      A.    Correct.
17      Q.    And now you've moved back to
18  Louisiana; is that correct?
19      A.    Correct.
20      Q.    And that's where you're from
21  originally?
22      A.    We lived there the ten years
23  prior to moving to Walmart.
24      Q.    And that's where you went to
25  college as well, right?

7  (Pages 22 to 25)

Highly Confidential - Subject to Further Confidentiality Review

Page 26

```
 1        A.   Yes, correct.
 2        Q.   I just have a few questions
 3   regarding your profile.  Other than the fact
 4   that you haven't updated it recently, is the
 5   experience that you've included here
 6   accurate?
 7        A.   Yes.
 8        Q.   Okay.  I just have a couple of
 9   questions then on some of the things you've
10   listed here on your experience.  Let's start,
11   I guess, from when you began at Walmart,
12   which was 2007, correct?
13        A.   January of 2008.
14        Q.   Okay.  Did you take a job at
15   Walmart directly after graduating from
16   Louisiana State University?
17        A.   No, I graduated from LSU the
18   first time in 1990.
19        Q.   Okay.
20        A.   I had finished my M.B.A. in May
21   of 2007.
22        Q.   What did you do between -- just
23   very briefly, between 1990 and 1993 -- strike
24   that.
25             Were you a registered nurse in
```

Page 27

```
 1   1993?
 2        A.   I think I graduated in '95.
 3        Q.   Okay.
 4             MS. FUMERTON:  And you can look
 5        at the document too.
 6   BY MR. BOWER:
 7        Q.   Yeah, sure, please look at the
 8   document.  I'm just trying to get a very
 9   brief understanding of your background.
10             I noticed that under Education
11   you have two things listed, Itawamba
12   Community College and then Louisiana State.
13   It appears that you were a Registered Nurse;
14   is that correct?
15        A.   I was a Registered Nurse, and
16   this date of completion of 2005 is not
17   accurate.  It was 1995.
18        Q.   Okay.  That clears that up.
19             Were you a practicing nurse
20   from 1995 until 2005 approximately?
21        A.   Until 2007.
22        Q.   Okay.  And where were you
23   employed during that time period?
24        A.   There were multiple places.  I
25   had worked at Ascension Hospital, at Lake
```

Page 28

```
 1   After Hours, which was an acute care setting.
 2   I worked at St. Elizabeth Hospital and I
 3   worked for Infusion Network.
 4        Q.   Okay.  Thank you for that.
 5             Then in 2005 you went to
 6   Louisiana State to get your master's degree,
 7   correct?
 8        A.   That's correct.
 9        Q.   Did you begin working with
10   Walmart directly after graduating with your
11   master's degree?
12        A.   About six or seven months
13   later.
14        Q.   And what were you hired at
15   Walmart to do?
16        A.   To be a buyer in the pharmacy
17   department.
```

Page 29



Highly Confidential – Subject to Further Confidentiality Review



Golkow Litigation Services – 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 34

6      Q.    Are you aware the country is in
7    the middle of an opioid crisis?
8           MS. FUMERTON:  Objection, form.
9      A.    I'm aware that there are people
10   that are addicted to opioids and I'm aware
11   that there are people that use prescription
12   opioids for legitimate reasons every day.
13   BY MR. BOWER:
14     Q.    Do you think the country is in
15   the middle of an opioid crisis?
16          MS. FUMERTON:  Objection, form.
17     A.    There's a lot of attention
18   regarding this subject.  I haven't looked at
19   documents.  I haven't read much about it.
20   I'm not sure how I feel about that.  I think
21   "crisis" is a difficult word.  I'm not sure
22   how I feel about it.
23   BY MR. BOWER:
24     Q.    What word would you use?
25          MS. FUMERTON:  Objection, form.

Page 35

1      A.    I think any -- I think
2    addiction to any substance is disheartening
3    and is sad, whether it's opioid or a
4    different substance, and I think there are
5    plenty of issues.
6    BY MR. BOWER:
7      Q.    Have you seen any of the TV
8    reports on the opioid crisis?
9      A.    I haven't -- I've seen the
10   opioid crisis in the news.  I haven't focused
11   or studied what the -- what the facts are
12   behind those, so I'm not familiar with the
13   numbers.
14     Q.    Did you ever discuss the opioid
15   problem while you were at Walmart with
16   anybody?
17          MS. FUMERTON:  Objection, form.

Page 36

Page 37

12   BY MR. BOWER:
13     Q.    Let's go back to Exhibit 1,
14   just a few more questions on your résumé,
15   okay?
16     A.    Yes.
17     Q.    Going back to your time from
18   2007 to 2014, you're an Rx buyer.  Do you see
19   that on the second page there, about halfway
20   down?
21     A.    Yes.
22     Q.    Okay.  Are those dates accurate
23   there, 2007 to February of 2014?  I believe
24   you said it started in 2008, correct?
25     A.    Yes, I started in January of

10  (Pages 34 to 37)

Highly Confidential - Subject to Further Confidentiality Review



Page 38

```
 1    2008.
 2        Q.    And is the end date
 3    approximately correct that you were the Rx
 4    buyer?
 5        A.    It would have ended when I left
 6    Walmart in April of 2018.
 7        Q.    Well, I noticed on page 1 you
 8    have senior Rx buyer, if you'd turn to
 9    page 1. Did you at some point receive a
10    promotion from Rx buyer to senior Rx buyer?
11        A.    Yes.
12        Q.    Approximately when did you --
13        A.    I don't recall that date.
14    Well, February 14th, I guess, according to
15    the résumé.
16        Q.    Okay.  Well, let me ask it a
17    different way.  Did that promotion -- strike
18    that.
19              Would you agree that was a
20    promotion?
21        A.    Yes.
22        Q.    Did that have any change in
23    your duties and responsibilities?
```

Highly Confidential - Subject to Further Confidentiality Review



Page 42

Page 44

18    MR. BOWER:  What's the nature
19  of that objection?
20    MS. FUMERTON:  "Certain
21  obligations" is incredibly vague,
22  especially -- "in distributing
23  prescription opioids" is also
24  extremely vague and could be
25  interpreted very broad or very

Page 43

Page 45

1  narrowly.
2    MR. BOWER:  Any other
3  objections you have to that, other
4  than vagueness?
5    MS. FUMERTON:  Well, I think
6  that can be confusing in that regard
7  as well.
8  BY MR. BOWER:
9    Q.   What obligations are you
10  familiar with respect to Walmart's
11  distribution of prescription opiates?
12    MS. FUMERTON:  Objection, form.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 50

Page 51

Page 52

19    BY MR. BOWER:
20       Q.    All right.  Let's go back to
21    your Exhibit 1 for a moment.
22       A.    Okay.
23       Q.    I want to go turn to page 2 for
24    a moment and I want to ask a couple of
25    questions on those bullet points on kind of

Page 53

1     the top half of the page there.  One of the
2     bullet points you note that you successfully
3     led category participation in hydrocodone
4     reclassification.
5            Do you see that?
6        A.    Yes, I see that.
7        Q.    What does that mean?
8        A.    I was a conduit on the
9     merchandising side for the C-II manufacturers
10    in our warehousing department in the moving
11    of our vault at a time period while we were
12    there.
13       Q.    What does category
14    participation mean?
15       A.    That would be the merchandising
16    category.
17       Q.    Okay.  What manufacturer did
18    you work with in context with that effort?
19            MS. FUMERTON:  Objection, form.

14 (Pages 50 to 53)

Highly Confidential - Subject to Further Confidentiality Review



Page 54

15    MS. FUMERTON:  Objection, form.
16    MR. BOWER:  What's the nature
17  of that objection?
18    MS. FUMERTON:  How frequently
19  would you send e-mails to those folks
20  about what?
21    MR. BOWER:  About what we're
22  talking about, about the
23  hydrocodone --
24    MS. FUMERTON:  What are we
25  talking about?

Page 55

1    MR. BOWER:  Okay.  I'll
2  rephrase because I think the record is
3  clear and you're just objecting to
4  every question.  So I'll rephrase.
5    MS. FUMERTON:  I'm not
6  objecting to every question.  The
7  record is not clear.
8  BY MR. BOWER:
17    Q.    Going up a couple of bullet
18  points there, increased cash prescriptions on
19  certain items up to 45%.
20      Do you see that?
21    A.    Yes.
22    Q.    What does that mean, cash
23  prescriptions on certain items up to 45%?

Page 56

Page 57

8    Q.    What's your basis for that
9  statement?
10    A.    Because we never did anything
11  that would promote an opioid to the customer,
12  to the end customer user, the patient that
13  would pick up the prescription.
14    Q.    And how do you know that?
15    A.    Because we had a pretty firm
16  stance on that while I was there.
17    Q.    And where did you learn of that
18  stance?
19    A.    I had asked to put a cough
20  medicine on the $4 program at one time and
21  was told that anything with controlled
22  substances, we generally would not advertise
23  or talk to the consumer about.

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 62

25    BY MR. BOWER:

Page 63

1       Q.   Okay.  Going back to your
2    résumé for a moment, back still on the second
3    page.  I just have a couple more factual
4    questions about what -- kind of how the
5    business worked.
6          One of the bullet points
7    mentions spearheaded a new procurement model
8    by driving profit by lowering acquisition
9    costs on a subset of items.  What does that
10   refer to?

Page 64

7       Q.   And the bullet point above that
8    where you mention introducing enhanced
9    supplier onboarding process.  What does that
10   refer to?
11        MS. FUMERTON:  Are you on the
12   next page?
13        MR. BOWER:  No.
14        MS. FUMERTON:  Just so she can
15   follow.
16        MR. BOWER:  No, sorry.  The
17   second bullet point from the top,
18   partnered with cross-functional team
19   members to introduce enhanced supplier
20   onboarding process.

Page 65

Highly Confidential - Subject to Further Confidentiality Review



Page 66

6       Q.    And the first bullet point
7    there on that page, Implemented a redesigned
8    rebate tracking and collection process, do
9    you see that?
10       A.    Yes, I do.
11       Q.    What does that refer to?

Page 68

Page 67

Page 69

Highly Confidential - Subject to Further Confidentiality Review



Page 70

```
11          Q.    Okay.  Just a couple more
12    questions on your résumé.  Going back to the
13    first page, second bullet from the bottom,
14    Introduced an audit process.
15             Do you see that?
16          A.    Yes.
17          Q.    What was that process?
```

Page 72

Page 71

Page 73

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 78

13        MS. FUMERTON:  We've been going
14    around an hour.  Can we take a break?
15        MR. BOWER:  Sure.
16        THE VIDEOGRAPHER:  Going off
17    the record, 9:03 a.m.
18        (Recess taken, 9:03 a.m. to
19    9:24 a.m.)
20        THE VIDEOGRAPHER:  Back on
21    record at 9:24 a.m.
22        (Walmart-Little Exhibit 2
23    marked.)
24    BY MR. BOWER:
25        Q.   I'm going to hand you what's

Page 79

1    been marked as Exhibit 2 to today's
2    deposition.  Just take a moment and review
3    that document.
4        And for the record, the
5    document is Bates-labeled WMT_MDL, and then
6    it's 000025989.
7        (Document review.)
8        A.   Okay.
9        MS. FUMERTON:  Zach, is the
10    writing -- was that on there when it
11    was produced?
12        MR. BOWER:  Yeah.
13        MS. FUMERTON:  Okay.
14        MR. BOWER:  I believe so.  I
15    mean, as it was produced?
16        MS. FUMERTON:  Yeah.
17        MR. BOWER:  Okay.  Yeah, I
18    don't believe it's -- I don't know if
19    it's her writing.  I'm going to ask --
20        MS. FUMERTON:  Sure.  No, no.
21    I guess my question is it's not yours;
22    it's somebody else's.
23        MR. BOWER:  No.  So to the best
24    of my understanding, it's not ours.
25        MS. FUMERTON:  Okay.

Page 80

1        MR. CIULLO:  You don't happen
2    to have an extra copy, do you?
3        MR. BOWER:  Oh, we didn't pass
4    them out?  Did he pass them out?
5        (Comments off the stenographic
6    record.)
7    BY MR. BOWER:
8        Q.   Have you had a chance to read
9    the document, ma'am?
10        A.   Yes, I did.
11        Q.   Does this document look
12    familiar to you?
13        A.   It does not.
14        Q.   It does not, okay.
15        Would you be surprised if this
16    came from your custodial file?
17        A.   No, I would not.
18        Q.   And why not?
19        A.   Well, we -- A, I probably don't
20    understand what "custodial file" is, so I
21    might need clarification on that.
22        Q.   Okay.  Do you
23    understanding that Walmart -- strike that.
24        Do you have any understanding
25    that Walmart has produced documents to

Page 81

1    plaintiffs in this case?
2        MS. FUMERTON:  Objection.  I
3    just caution her that to the extent
4    that we've had any conversations, she
5    cannot reveal the content of those
6    conversations.
7        MR. BOWER:  I'll rephrase the
8    question.
9    BY MR. BOWER:

Highly Confidential - Subject to Further Confidentiality Review



Page 85

13    Q.    In connection with preparing
14  for your deposition today, did you review
15  documents?
16    A.    I reviewed some documents, yes.
17    Q.    Were those documents provided
18  to you by counsel for Walmart?
19    A.    They were provided by my
20  counsel.
21    Q.    Is that your counsel that's
22  here today?
23    A.    Yes.
24    Q.    And they're counsel for
25  Walmart, correct?

Highly Confidential - Subject to Further Confidentiality Review

Page 86

```
 1        A.   I assume.
 2        Q.   Is that your understanding?
 3        A.   Yes.
 4        Q.   What is your understanding as
 5   to who Ms. Fumerton represents?
 6        A.   She is representing me.
 7        Q.   Are you paying her bills?
 8        A.   I am not paying her bills.
 9        Q.   Do you know who is paying her
10   bills?
11        A.   Walmart is paying her.
12        Q.   Walmart is paying her bills on
13   your behalf, correct?
14        A.   Yes.
15        Q.   So she's representing both you
16   and Walmart today?  Is that your
17   understanding?
18        A.   Yes.
19        Q.   How much time did you spend
20   preparing for today's deposition?
21        A.   We met yesterday.
22        Q.   And how long did you meet for?
23        A.   Yesterday during the day, eight
24   hours.
25        Q.   Okay.  And who was present for
```

Page 87

```
 1   that meeting?
 2        A.   Tara, Scott and Jennifer.
 3        Q.   Anyone else?
 4        A.   There were a couple of people
 5   on the phone.
 6        Q.   Who was on the phone?
 7        A.   I don't remember who was on the
 8   phone.  Carl from Walmart, and I don't
 9   remember.
10        Q.   Okay.  Other than speaking with
11   counsel, did you speak with anyone else about
12   this case prior to today?
13        A.   No.
14        Q.   Did you speak with any folks at
15   Walmart about the case?
16        A.   No.
17        Q.   Speak with Mr. Badeen?
18        A.   No.
19        Q.   No?
20             Have you reviewed any written
21   material -- written transcripts of other
22   folks' testimony?
23        A.   I have not.
```



Page 88

Page 89

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



**Page 94**

**Page 95**

**Page 96**

22    MR. BOWER:  Sorry, that wasn't
my question.
24        Could you read back the
25    question, please?

**Page 97**

1        MS. FUMERTON:  Well, I was
2    explaining my objection.  I'm not
3    saying that was your question.
4        MR. BOWER:  That's fine.  Your
5    objection is unrelated to my question,
6    so can you please read back --
7        MS. FUMERTON:  No, it isn't.
8    I'm objecting to the form of your
9    question because it's vague as to how
10    you're asking the question.
11        MR. BOWER:  Okay.
12        (The following portion of the
13    record was read.)

25 (Pages 94 to 97)

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 126

24    BY MR. BOWER:
25        Q.    Were you aware whether the

Page 127

1     country was in the middle of an opioid
2     epidemic in 2009?
3            MS. FUMERTON:  Objection, form.
4         A.    In 2009 I was not aware.
5     BY MR. BOWER:
6         Q.    Do you know whether the country
7     was enduring an epidemic in 2009?
8            MS. FUMERTON:  Objection, form.
9         A.    I do not know.
10    BY MR. BOWER:
11        Q.    Do you know whether people were
12    dying from oxycodone overdoses in 2009?
13           MS. FUMERTON:  Objection, form.
14        A.    From my past history of working
15    in the emergency room, I knew that people
16    died of overdoses from drugs, yes.
17    BY MR. BOWER:
18        Q.    And you knew specifically that
19    they died of overdoses of oxycodone, right?
20           MS. FUMERTON:  Objection, form.
21        A.    I've seen overdoses of
22    different drugs, oxycodone included, but
23    other drugs as well.
24    BY MR. BOWER:
25        Q.    Did you have any concerns about

Page 128

1     the increase in prescription orders during
2     this time period for oxycodone?
3            MS. FUMERTON:  Objection, form,
4     lacks foundation.
5         A.    I did not have any concern, no.
6     BY MR. BOWER:
7         Q.    Why not?
8         A.    I can't recall.
9         Q.    Okay.
10           (Walmart-Little Exhibit 4
11    marked.)
12           MR. BOWER:  This is 4, I
13    believe.
14    BY MR. BOWER:

21           MS. FUMERTON:  You can take a
22    minute to review the document.
23           So Zach, it looks like there's
24    a page missing based on the sequence
25    of the Bates numbers.

Page 129

1            MR. CIULLO:  Looks like there's
2     a page missing also -- looks like this
3     was produced in the Chicago litigation
4     from Actavis.  It doesn't have the
5     confidential stamp at the bottom.
6     There are subsequent productions
7     from -- under the Allergan MDL Bates
8     numbers that do have that.
9            MR. BOWER:  Okay.
10           MR. CIULLO:  So this should be
11    treated as a confidential document.
12           MR. BOWER:  Okay.  That's fine.
13    She's on this e-mail.
14           MR. CIULLO:  Of course.
15           MR. BOWER:  That's fine.  We'll
16    certainly treat this as confidential.
17           MR. CIULLO:  Of course, thank
18    you so much.
19           MS. FUMERTON:  But I'm going to
20    object to the use of the document as
21    being incomplete since it's missing a
22    page number based on the Bates
23    numbers.
24           MR. BOWER:  That's fine, we can
25    just look at the e-mail.  If you want

33 (Pages 126 to 129)

Highly Confidential - Subject to Further Confidentiality Review

Page 130

1  to object to that, you can pull out 65
2  and 66 if you want.  If you're going
3  to make that objection --
4      MS. FUMERTON:  Yeah, I am
5  making that objection.
6      MR. BOWER:  -- and you're going
7  to represent that you don't believe
8  this is an accurate document, then we
9  can remove it.
10     MS. FUMERTON:  Well, it's
11  missing a page is what I'm making a
12  representation of.  I don't have
13  personal knowledge of whether or not
14  this is an accurate document or not.

19     MS. FUMERTON:  Yes, Zach, I do.
20  Do you see the Bates number?
21     MR. BOWER:  I do.
22     MS. FUMERTON:  Do you see it
23  goes to 662 then 663 --
24     MR. BOWER:  I do.  And maybe
25  that page --

Page 131

1      MS. FUMERTON:  -- and then it
2  misses a page and then has 665.
3      MR. BOWER:  Maybe that cover
4  page is missing --
5      (Simultaneous discussion
6  interrupted by the reporter.)
7      MR. BOWER:  But like I said, if
8  you want to make that -- if you want
9  to make that an issue, we can remove
10  it from the record.  That's fine.
11     MS. FUMERTON:  Okay.
12     MR. BOWER:  So if you want to
13  just pull out the last two pages of
14  that.
15     I understand your concern about
16  the marketing fee, but we'll see a
17  contract that she signs later that
18  includes a marketing fee so --
19     MS. FUMERTON:  Well, Zach --
20     MR. BOWER:  -- I can absolve
21  you of those concerns right now.
22     MS. FUMERTON:  First of all,
23  you completely misrepresented what I
24  said.  Second of all, I'm going to
25  object -- it's your exhibit.  I'm

Page 132

1  going to object to the exhibit's use
2  since it's incomplete.  Removing these
3  two pages also makes it incomplete.
4  It is just an incomplete document.
5      If you have the entire
6  document, I would appreciate that you
7  use it with the witness so that we can
8  be as accurate as possible and not --
9      MR. BOWER:  Okay.  So we will
10  use the e-mail that the witness
11  received.
12     MS. FUMERTON:  And then the
13  e-mail is now incomplete.
14     MR. BOWER:  We're allowed to
15  use e-mails.  We're allowed to use
16  e-mails without attachments.  Are you
17  saying we're not allowed to use an
18  e-mail without an attachment?
19     MS. FUMERTON:  I'm saying that
20  you're going to have to represent that
21  the document is incomplete.  If you
22  want to say that I am using an e-mail
23  that is incomplete with the witness,
24  that's fine.  That's your prerogative.
25     MR. BOWER:  I'm not saying

Page 133

1  that.  I'm saying you can remove the
2  last two pages, and let me do that so
3  the record is -- you just hand me that
4  back, I'll review.
5      So based upon your counsel's
6  objection, we'll remove the last two
7  pages of this document so that it's
8  not in the record yet.
9      MS. FUMERTON:  Well, I'm
10  objecting then to the use of the
11  e-mail without the correct attachment.
12     MR. BOWER:  You can object to
13  that but I don't believe there's
14  anything preventing us from using an
15  e-mail the witness received.
16     MS. FUMERTON:  Yeah --
17     MR. BOWER:  You can note your
18  objection for the record.
19     MS. FUMERTON:  If you want to
20  make the record, I just want the
21  record to be clear that you are
22  handing the witness a document with an
23  e-mail that apparently had an
24  attachment.  You didn't bring the
25  correct attachments or you brought it

34 (Pages 130 to 133)

Highly Confidential - Subject to Further Confidentiality Review

Page 134

1  in a way that appears based on it to
2  be incomplete, and that's my
3  objection.
4      MR. BOWER:  What do you think
5  is incomplete about the e-mail?
6      MS. FUMERTON:  Because there is
7  another page that's apparently missing
8  based on the Bates numbers.  You are a
9  lawyer.  You understand how Bates
10  numbers work.
11      MR. BOWER:  Yes.
12      MS. FUMERTON:  There's a
13  missing Bates number.
14      MR. BOWER:  Sorry.  So just for
15  the record so we're all clear.  The
16  first page of this exhibit ends in 62.
17  The second page of this exhibit ends
18  in 63.  Okay?  That's the exhibit.
19  It's two pages.
20      MS. FUMERTON:  And I will
21  object to this exhibit because there
22  is apparently a PDF that was attached
23  to this exhibit that you are not
24  including and showing to the witness.
25      MR. BOWER:  I don't think that

Page 135

1  that's accurate.  If you want to
2  produce something, some factual basis
3  for your statement, that's fine.  I
4  will say that this e-mail appears to
5  be a complete e-mail.  If you notice,
6  the end of it has the confidentiality
7  signature that everyone has these
8  days.  I don't think there's anything
9  incomplete about this e-mail.
10      If you have a basis to tell us
11  today that you think this is
12  incomplete, please do so.  But with
13  that, I think we can move forward.
14      MS. FUMERTON:  No.  I'm going
15  to state again to be clear since you
16  keep talking over me, I'm objecting to
17  this exhibit because as you pointed
18  out earlier, it says at the top that
19  there's a PDF that's attached.  You
20  presented a document with a missing
21  Bates number.  I don't know why it was
22  missing.  Somehow it's missing, which
23  gives me pause as to whether or not
24  this is a complete document.
25      So now you've removed the last

Page 136

1  two pages.  It's still an incomplete
2  document.  You can proceed how you
3  wish and I'm objecting to the use of
4  this document.
5      MR. BOWER:  Okay.  I understand
6  your concern about what the attachment
7  says and that you've represented there
8  were no marketing fees, but we'll see
9  that document later again and we'll
10  proceed.
11      MS. FUMERTON:  Apparently you
12  do not understand because you keep
13  misrepresenting what I said.
14      MR. BOWER:  Okay.
15      MS. FUMERTON:  I did not say I
16  had a concern about the document.  I
17  had a concern this exhibit is
18  incomplete.
19      MR. BOWER:  And I understand
20  you have concerns about the exhibit,
21  you don't want it in the record, but I
22  can tell you that she signed that
23  agreement, it will come into the
24  record, so we can please move on.
25      MS. FUMERTON:  Still, you keep

Page 137

1  misrepresenting what I said.  So if
2  you would like to move on, please do
3  not represent what I said because it's
4  not what I said.
5      MR. BOWER:  Are you ready to
6  proceed?
7      THE WITNESS:  Yes.
8  BY MR. BOWER:

35 (Pages 134 to 137)

Highly Confidential - Subject to Further Confidentiality Review



Page 138

Page 140

```
1        and look at what you said.  You asked
2    her about the business proposal in
3    this e-mail.
4        MR. BOWER:  No, I said, do you
5    see he notes this is a business
6    proposal.
7    BY MR. BOWER:
```

Page 139

```
6        MS. FUMERTON:  Objection, form.
7    Again, I'm objecting to this exhibit
8    because you're referring to a business
9    proposal that's not attached.
10        MR. BOWER:  Your objection is
11    noted --
12        MS. FUMERTON:  You can't ask --
13    (Simultaneous discussion
14    interrupted by the reporter.)
15        MR. BOWER:  Your objection is
16    noted.  We need to move on.  Okay.
17        MS. FUMERTON:  But it is
18    fundamentally unfair and misleading to
19    a witness to ask them about a business
20    proposal that is not attached.  You
21    keep asking questions about --
22        MR. BOWER:  I didn't ask about
23    the proposal.  I asked --
24        MS. FUMERTON:  Yes, you did.
25    You said -- asked a question.  Go back
```

Page 141



**Page 142**

**Page 143**

**Page 144**

22    MR. CIULLO:  While we have a
23  second, I just want to, for the
24  record, represent that that missing
25  document in the last exhibit was

**Page 145**

1    actually just a JPEG thing that says
2  Actavis.
3       MR. BOWER:  Yeah, that's what I
4  thought, but since I have it here I
5  didn't need it, but I appreciate it.
6  Thanks.
7       MR. CIULLO:  I just wanted to
8  clear that up for the record.
9       MR. BOWER:  Hopefully that will
10  resolve your concerns.
11       MS. FUMERTON:  It was a simple
12  concern.
13       MR. CIULLO:  Legitimate
14  concern.
15       (Document review.)
16  BY MR. BOWER:
17       Q.    Have you had a chance to review
18  the document, ma'am, or are you still
19  looking?
20       A.    Yes.
21       Q.    You're still looking?  Okay.
22       A.    Okay.
23       Q.    I just have a couple of
24  questions on the e-mail, and then we can turn
25  to the document itself.

**37 (Pages 142 to 145)**



Page 146

Page 147

Page 148

```
1    product or privileged information.
2         MR. BOWER:  I'm just asking
3    whether she's been asked to produce
4    documents that are relevant to this
5    case.  You're not going to let her
6    answer that question.
7         MS. FUMERTON:  That's not what
8    you asked.
9         MR. BOWER:  All right.  Let me
10   ask it that way.
11   BY MR. BOWER:
```

Page 149

```
14        MS. FUMERTON:  Objection, form
15   in that to the extent you're --
16   actually, I'm instructing her not to
17   answer that question.
18        MR. BOWER:  That's a yes-or-no
19   answer.  You're instructing her not to
20   answer that question?
21        MS. FUMERTON:  Yes, I am.
22        MR. BOWER:  What's the basis
23   for your instruction?
24        MS. FUMERTON:  To the extent
25   that you're invading attorney work
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 162

Page 164

13          MS. FUMERTON:  Oh, yeah, she
14    was just asking if we could take a
15    break.
16          MR. BOWER:  Oh, sure.  Yeah.
17          THE VIDEOGRAPHER:  Going off
18    the record, 10:37 a.m.
19          (Recess taken, 10:37 a.m. to
20    10:58 a.m.)
21          THE VIDEOGRAPHER:  Back on
22    record.  The time is 10:58 a.m.
23          (Walmart-Little Exhibit 7
24    marked.)
25              ///

Page 163

Page 165

1     BY MR. BOWER:
2        Q.    Back on the record, Exhibit 7.
3          MS. FUMERTON:  Are we on
4     Exhibit 7 or Exhibit 6?
5          MR. BOWER:  I just gave her
6     Exhibit 7, sorry.
7          MS. BARTLETT:  We skipped 6.
8          MR. BOWER:  We skipped 6.
9     Sorry, we're skipping 6 for now.
10         MS. FUMERTON:  Okay.  Are you
11    going to use an Exhibit 6?
12         MS. BARTLETT:  Huh-uh.
13         MR. BOWER:  We may, we may not.
14         MS. FUMERTON:  That's so
15    confusing later on.
16         MR. BOWER:  I know, I know.
17         MS. FUMERTON:  Can we just
18    change it?
19         MR. BOWER:  You want to change
20    it?
21         MS. FUMERTON:  Why don't you
22    change it, yeah.
23         MR. BOWER:  Okay.  Let's change
24    that.
25         MS. FUMERTON:  Sorry, but it

42 (Pages 162 to 165)

Highly Confidential - Subject to Further Confidentiality Review

Page 166

1    just --
2         MR. BOWER:  No, no, it's fine.
3         MS. FUMERTON:  -- a year from
4    now --
5         MR. BOWER:  I agree with that.
6         MS. FUMERTON:  -- someone is
7    going to...
8         MS. BARTLETT:  Then we're going
9    to change -- I need all new stickers.
10   They're all pre-marked.
11        MS. FUMERTON:  I still would
12   change it.  It's not going to take --
13   it's not that many.  We're talking,
14   what, less than ten.  Or are we
15   talking more than that?
16        MR. BOWER:  Let's go off the
17   record.
18        THE VIDEOGRAPHER:  Going off
19   the record.  The time is 10:59 a.m.
20        (Discussion off the record.)
21        THE VIDEOGRAPHER:  Back on
22   record, 11:01 a.m.
23        (Walmart-Little Exhibit 6
24   marked.)
25             ///

Page 167

1    BY MR. BOWER:
2         Q.   All right.  Just so the record
3    is clear, we're going to enter a new
4    Exhibit 6 so we can keep our numbers
5    sequential.  There we go.  And then we'll do
6    Exhibit 7 after this one.
7         (Document review.)
8    BY MR. BOWER:
9         Q.   Okay.  You've been handed
10   what's been marked as Exhibit 6.  It's a
11   Walmart document.  It's WMT_MDL_000021802.



23        MR. BOWER:  Our realtime has
24   gone out.  Can we go off record for a
25   moment.

Page 168

1         THE VIDEOGRAPHER:  Off record,
2    11:02 a.m.
3         (Discussion off the record.)
4         THE VIDEOGRAPHER:  Back on
5    record, 11:03 a.m.
6    BY MR. BOWER:

25   is offering Walmart a one-time 10% off

Page 169

Highly Confidential - Subject to Further Confidentiality Review



Page 170

Page 172

Page 171

Page 173

```
 9        Q.   I'm sorry, the numbering threw
10   me off again, but here's Exhibit 7 back.
11           MR. BOWER:  You guys still have
12       7, right?
13           MS. FUMERTON:  I do.
14           MR. BOWER:  Okay.
15   BY MR. BOWER:
16        Q.   Okay.  Now you've been handed
17   what's been marked as Exhibit 7.  You'll
18   notice the top of that document is redacted
19   because it's an Actavis document, and we're
20   not allowed to show you the communications
21   that you're not on, so that's the reason for
22   the redaction, just so you know.
23        A.   Okay.
24        Q.   So my questions will be
25   directed to the communications you are on,
```

44  (Pages 170 to 173)

Highly Confidential - Subject to Further Confidentiality Review

Page 174

```
 1    which is just an e-mail from yourself to
 2    Mr. Cohen.
 3          Do you see that?
 4    A.    Yes.
 5          MS. FUMERTON:  And can I just
 6    ask a clarifying question?
 7          MR. BOWER:  Sure.
 8          MS. FUMERTON:  So this is the
 9    redaction that you put on.
10          MR. BOWER:  Yes.
11          MS. FUMERTON:  This is not how
12    Actavis -- okay.  Thank you.
13          MR. BOWER:  Yeah, I want to be
14    clear, yeah.  The redactions --
15    there's a few more redactions that we
16    added because the following e-mail she
17    was not on.
18          MS. FUMERTON:  Okay.
19          MR. BOWER:  So just to avoid
20    any issues we just redacted the whole
21    thing.
22          MS. FUMERTON:  Okay.
23    BY MR. BOWER:
24    Q.    Can you just -- do you recall
25    this e-mail or what was going on in this time
```

Page 175

```
 1    period?
```

Page 176

Page 177



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 182

Page 184

Page 183

Page 185

```
11        Q.    You can put this one aside.
12            (Walmart-Little Exhibit 9
13        marked.)
14    BY MR. BOWER:
15        Q.    Let me hand you what's been
16    marked as Exhibit 9, so please review the
17    document before I ask you.
18            (Document review.)
19    BY MR. BOWER:
20        Q.    Have you had a chance to review
21    the document?
22        A.    Yes.
```

47  (Pages 182 to 185)

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 218

Page 220

Page 219

Page 221

```
10        MS. FUMERTON:  We're right at
11   12:00.  Is this a good stopping point?
12        MR. BOWER:  Let me just see.
13   Just give me one second.
14        MS. FUMERTON:  Are you okay
15   with going for a couple of more
16   minutes?
17        MR. BOWER:  We may not.  Let me
18   just -- I just want to see if I can
19   wrap up this whole question --
20        MS. FUMERTON:  Okay.
21        MR. BOWER:  -- contract issue
22   quickly.
23        Let's just do one more and then
24   we can take a lunch break.  Just
25   another brief contract.
```

Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review

Page 222

1           (Walmart-Little Exhibit 12
2     marked.)
3     BY MR. BOWER:

11           MR. CIULLO:  Again, I'll raise
12     the same objection before that to the
13     extent it's produced under the
14     Allergan MDL case numbers --
15           MR. BOWER:  It says
16     confidential on it.
17           MR. CIULLO:  Strike that.
18     Thank you.
19           MR. BOWER:  Sure.  I tried to
20     pull the confidential ones that I
21     could find.
22           Let me know when you're done,
23     okay?
24           THE WITNESS:  Okay.
25           (Document review.)

Page 223

1           MS. FUMERTON:  I'll just note
2     for the record with respect to
3     Exhibit 12 that in the upper
4     right-hand corner it suggests it's
5     page 3 of 4, and it's a two-page
6     document.
7           MR. BOWER:  And I'll note for
8     the record that Walmart did not
9     produce this document.  I'm not sure
10     why.  There's lots of documents here
11     Walmart hasn't produced.
12           So if you want to inform us as
13     to why, that would maybe help clear up
14     the record.
15           That's why we're using lots of
16     documents from other defendants
17     because Walmart hasn't produced much
18     of this stuff.  Very concerning.
19           MS. FUMERTON:  Well, I disagree
20     with your characterizations, but in
21     any event, has Actavis -- did you make
22     this document from a four-page
23     document to a two-page document?
24           MR. BOWER:  I tried -- I don't
25     recall, but what I do recall trying to

Page 224

1     do is provide the complete contract so
2     the record was clear.
3           MS. FUMERTON:  Okay.  So we'll
4     just make --
5           MR. BOWER:  If Walmart wants to
6     make a supplemental production that it
7     believes this contract is not clear or
8     if it has this contract in its
9     possession, custody or control, it
10     should produce it.
11           MS. FUMERTON:  I'm talking
12     specific to this exhibit, and I'm
13     saying that this particular exhibit
14     suggests that there's two missing
15     pages --
16           MR. BOWER:  And if Walmart has
17     this specific contract, it should
18     produce it.  And if Walmart has any of
19     these contracts, it should produce
20     them.
21           MS. FUMERTON:  I'm objecting to
22     this exhibit because it appears
23     there's two pages missing.
24           MR. BOWER:  It does not appear.
25     It says page 3 of 4.  Excuse me.

Page 225

1     Let's ask the witness whether she
2     believes there's a page missing from
3     this contract.
4     BY MR. BOWER:
5     Q.    Have you had a chance to review
6     the document?
7           MS. FUMERTON:  Okay.  To be
8     clear, since you're misunderstanding
9     my objection, my objection is to the
10     exhibit.  There appears that there are
11     a couple of pages missing from the
12     exhibit as indicated on the document
13     itself.
14           MR. BOWER:  No, this is
15     intended --
16           MS. FUMERTON:  I'm not making a
17     statement as to whether or not the
18     contract is or is not complete.
19           MR. BOWER:  Are you finished?
20           MS. FUMERTON:  Yes.
21           MR. BOWER:  Okay.  For the
22     record, this exhibit is intended to be
23     a contract that Walmart signed.  It
24     appears to us to be a two-page
25     contract.

57 (Pages 222 to 225)

Highly Confidential - Subject to Further Confidentiality Review

Page 226

1    If that's wrong, please let us
2  know and we'll try to figure out why
3  something is missing.
4    And I would note that if
5  Walmart would, in fact, produce these
6  contracts, we might have more insight
7  as to what they allege is missing.
8    MS. FUMERTON:  Again --
9    MR. BOWER:  So with that --
10    MS. FUMERTON:  Zach, you keep
11  misrepresenting what I'm saying.  I'm
12  not making any representation as to
13  whether or not there's something
14  missing from the contract.
15    I'm saying there's something
16  that appears to be missing from the
17  document and the exhibits because
18  there are two pages that are missing.
19    So if you're going to repeat
20  what I said, I would appreciate it if
21  you would do so accurately and to not
22  interject all sorts of other
23  misleading information.
24    MR. BOWER:  Okay.
25    MS. FUMERTON:  The record will

Page 227

1  say what it is, and I suggest we move
2  on.
3    MR. BOWER:  Just to clear up
4  what you said, my response to that is:
5  I think Walmart should produce these,
6  okay?
7  BY MR. BOWER:
8    Q.    So with that, have you had a
9  chance to review the documents?
10    A.    I did.

Page 228

23    MR. BOWER:  Okay.  Thank you.
24  We can break for lunch.
25    THE VIDEOGRAPHER:  Going off

Page 229

1  the record, 12:06 p.m.
2    (Recess taken, 12:06 p m. to
3  12:48 p m.)
4    THE VIDEOGRAPHER:  Back on
5  record, 12:48 p.m.
6  BY MR. BOWER:
7    Q.    Good afternoon, Ms. Little.
8  You understand you're still under oath?
9    A.    Yes, I do.
10    Q.    I just have a couple of cleanup
11  questions from this morning.



Highly Confidential - Subject to Further Confidentiality Review



Page 230

Page 231

Page 232

```
15          (Walmart-Little Exhibit 13
16      marked.)
17  BY MR. BOWER:
18      Q.   I'll hand you what's been
19  marked as Exhibit 13.  Just take a moment and
20  review that document.  Again, this is another
21  document that was redacted up until the point
22  that you're included on the e-mail chain,
23  okay?  Just in case you're wondering why
24  those redactions are there.
25          (Document review.)
```

Page 233

```
1   BY MR. BOWER:
2       Q.   Are you finished reviewing the
3   document?
4       A.   Yes.
```

Highly Confidential - Subject to Further Confidentiality Review



Page 234

Page 236

Page 235

Page 237

4       (Interruption by the
5    videographer.)
6         MS. FUMERTON:  Can folks on the
7    line hear us?
8         MR. INNES:  Yes, this is
9    Michael Innes.  I had you on mute and
10    I can hear you.
11         MS. FUMERTON:  Okay.  Thanks.
12    BY MR. BOWER:

60  (Pages 234 to 237)

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS



Highly Confidential - Subject to Further Confidentiality Review



Page 246

21    MS. FUMERTON:  Objection, form.
22    And, Zach, the numbers --
23    MR. BOWER:  Can you just let
24    her answer the question first and then
25    you can make your statement.

Page 247

1    MS. FUMERTON:  Well, if you
2    would read it accurately, it would
3    make it a lot more helpful.
4    MR. BOWER:  Well, the document
5    is what it is, right?
6    MS. FUMERTON:  Then the
7    testimony gets all screwed up because
8    you're asking questions on numbers
9    that don't match with what the
10    document says.
11    MR. BOWER:  So why don't we let
12    her answer the question.  Then you can
13    make any statements you want for the
14    record, okay?

Page 248

19    Q.    Okay.  Thank you.
20    MR. BOWER:  Tara, did you want
21    to make a statement?
22    MS. FUMERTON:  Yeah, I just
23    want to make a statement that the
24    numbers I think got transposed when
25    you were reading them and it did

Page 249

1    not -- the questions did not reflect
2    accurately the numbers that were on
3    hand, the numbers that were shipped
4    and the numbers that -- the difference
5    between the two.
6    MR. BOWER:  Okay.
7  BY MR. BOWER:

Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 254

Page 255

Page 256

```
 1    BY MR. BOWER:
 2        Q.    Thank you.
 3        (Walmart-Little Exhibit 14
 4    marked.)
 5    BY MR. BOWER:
 6        Q.    Okay.  You've been handed
 7    what's been marked as Exhibit 14.  I tried to
 8    include all the attachments.  It's a Walmart
 9    document and I believe it's sequential.  I
10    don't have too many questions on the
11    attachments, but I just included them so you
12    could review them if you would like.



19             So with that in mind, take your
20    time and review the document.
21        A.    Thank you.
22             MR. BOWER:  Sorry, and the
23    Bates number begins with
24    WMT_MDL_000021669, and it goes through
25    21678.
```

Page 257

```
 1        (Document review.)
 2    BY MR. BOWER:
 3        Q.    Are you still reading the
 4    document?
 5        A.    I am finished.
```

Highly Confidential - Subject to Further Confidentiality Review



Page 258

Page 260

10    Q.    Okay.  At this point, were you
11  aware that OxyContin was being abused across
12  the country?
13          MS. FUMERTON:  Objection, form.
14    A.    I was aware that people that
15  had prescriptions for pain medicine sometimes
16  used those for ways other than they were
17  prescribed, yes.
18  BY MR. BOWER:
19    Q.    And specifically OxyContin,
20  correct?
21          MS. FUMERTON:  Objection, form.
22          MR. BOWER:  I'll strike that.
23  BY MR. BOWER:
24    Q.    Did you have that specific
25  understanding with respect to OxyContin, or

Page 259

Page 261

1  not?
2          MS. FUMERTON:  Objection, form.
3    A.    I had the understanding for all
4  C-II products.
5  BY MR. BOWER:
6    Q.    Well, let me direct your
7  attention then to Bates -- it's a few pages
8  into the document ending in Bates number 673.
9          You see that page?
10    A.    673, yes.

Highly Confidential - Subject to Further Confidentiality Review



Page 262

Page 264

Page 263

Page 265

14    BY MR. BOWER:
15        Q.    Okay.
16           (Walmart-Little Exhibit 15
17        marked.)
18    BY MR. BOWER:

Highly Confidential - Subject to Further Confidentiality Review



Page 266

```
 1          MR. CIULLO:  While she's
 2   reviewing, can you please read the
 3   Bates.
 4          MR. BOWER:  Sure.  It starts
 5   with WMT_MDL_000021921, and it ends in
 6   21924.
 7          MR. CIULLO:  Thank you very
 8   much.
 9          (Document review.)
10   BY MR. BOWER:
11     Q.    Are you done?
12     A.    I'm done.
```

Page 267

Page 268

Page 269

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential – Subject to Further Confidentiality Review



Page 278

Page 280

```
 1          MS. FUMERTON:  No, you're not.
 2    It's not -- no, actually.  You can ask
 3    yes-or-no questions that go towards
 4    privileged information.
 5          MR. BOWER:  What privileged
 6    information would be called for by
 7    that answer, whether you asked her --
 8          MS. FUMERTON:  To the extent --
 9          (Simultaneous discussion
10    interrupted by the reporter.)
11          MS. FUMERTON:  To the extent
12    that I've had conversations with her,
13    I don't know that any are implicated
14    here.  I'm not saying they are, but
15    it's an inappropriate type of
16    question.
17          MR. BOWER:  Are you instructing
18    her not to answer that?
19          MS. FUMERTON:  Yes, I did.
20    BY MR. BOWER:
21      Q.   Are you going to listen to
22    those instructions?
23      A.   I am.
```

Page 279

```
 2          MS. FUMERTON:  Objection, form.
 3    And I also object to the extent that
 4    you're asking a privileged question,
 5    so I'm actually going to instruct her
 6    not to answer.
 7          MR. BOWER:  I'm just trying to
 8    figure out why Walmart hasn't produced
 9    them.
10    BY MR. BOWER:
```

```
18          MS. FUMERTON:  Objection.
19    Again, I'm going to instruct her not
20    to answer that question because you're
21    asking to potentially invade
22    privileged information.
23          MR. BOWER:  It's just a
24    yes-or-no question.  She's allowed to
25    answer it.
```

Page 281

Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 282

Page 283

Page 284

1      (Recess taken, 1:45 p m. to
2   2:09 p m.)
3      THE VIDEOGRAPHER:  Back on
4   record at 2:09 p.m.
5   BY MR. BOWER:
6      Q.   We're back on the record.  Do
7   you understand you're still under oath?
8      A.   I do.

Page 285

18      Q.   Okay.
19         MR. BOWER:  You want to keep
20   going or do you want to take a break?
21         MS. FUMERTON:  Let's take a
22   break.
23         MR. BOWER:  Okay.
24         THE VIDEOGRAPHER:  Going off
25   the record, 1:45 p.m.

15      Q.   Okay.
16         (Walmart-Little Exhibit 18
17   marked.)
18   BY MR. BOWER:
19      Q.   You've been handed what's been
20   marked as Exhibit 18.  Again, it's a document
21   produced by an entity other than Walmart, and
22   its Bates number is PPLPC, and then
23   004000325237.  And again, this one has
24   redactions on it just reflecting the fact
25   that you weren't copied on subsequent

Highly Confidential - Subject to Further Confidentiality Review

Page 286

```
 1   e-mails, okay?
 2       A.   Okay.
 3       Q.   So take a moment to review your
 4   document, and then this may refresh your
 5   recollection about the gentleman I just asked
 6   about.
 7           (Document review.)
 8           MR. BOWER:  Tara, while we're
 9   waiting, do you have any understanding
10   as to why Walmart hasn't produced this
11   document?
12           MS. FUMERTON:  I don't know
13   whether Walmart has or has not.
14           MR. BOWER:  I'm saying it
15   hasn't.  Do you know why they haven't?
16           MS. FUMERTON:  Well, in my
17   experience, based on things you say we
18   haven't produced, a lot of them we've
19   already produced.
20           MR. BOWER:  So are you saying
21   Walmart has produced this?
22           MS. FUMERTON:  I think I
23   answered your question, which was I do
24   not know whether Walmart has or has
25   not produced this.
```

Page 287

```
 1           MR. BOWER:  Would there be a
 2   reason that they have not produced
 3   this?
 4           MS. FUMERTON:  There could be.
 5           MR. BOWER:  What would be that
 6   reason?
 7           MS. FUMERTON:  I'm not taking
 8   my deposition today, but if you want
 9   to continue to have this discussion on
10   the record, it could be for a variety
11   of reasons.
12           MR. BOWER:  Such as?
13           MS. FUMERTON:  It didn't exist,
14   it wasn't responsive.  I'm not saying
15   any of these.  You asked me a
16   hypothetical question.  I could ask
17   you hypothetically, I don't even know
18   whether this has or has not been
19   produced, Zach.
20           As I said before, it's my
21   experience in many occasions you send
22   us requests for information that we've
23   already produced and you don't realize
24   that you have it.
25           MR. BOWER:  That is absolutely
```

Page 288

```
 1   incorrect and you know it.
 2           MS. FUMERTON:  I know it's
 3   absolutely true.
 4           MR. BOWER:  You can
 5   misrepresent the record all you want,
 6   but you know that's incorrect, and you
 7   know that there's thousands if not
 8   hundreds of thousands you are
 9   wrongfully withholding.
10           You haven't looked for them.
11   You haven't looked in the proper
12   areas.  You haven't produced
13   contracts.  There's hundreds of
14   contracts you haven't produced.
15           MS. FUMERTON:  I haven't
16   them -- I haven't produced any
17   contracts?
18           MR. BOWER:  Not all the
19   contracts, no.
20           MS. FUMERTON:  I don't think
21   that's right.
22           MR. BOWER:  There's lots of
23   contracts you haven't produced.
24           MS. FUMERTON:  Zach, everything
25   you've said basically is false.  Why
```

Page 289

```
 1   don't we just leave it at that.
 2           MR. BOWER:  Not true.
 3           (Document review.)
 4   BY MR. BOWER:
 5       Q.   Are you still reviewing?
 6       A.   I am.
 7       Q.   Okay.
 8           (Document review.)
 9   BY MR. BOWER:
10       Q.   You ready?
11       A.   I'm done.
```

73 (Pages 286 to 289)

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 302

Page 304

Page 303

Page 305

```
 1          (Walmart-Little Exhibit 19
 2      marked.)
 3          MR. BOWER:  I'm just making
 4      sure the redactions are right.
 5   BY MR. BOWER:
 6      Q.   You've been handed what's been
 7      marked as Exhibit 19.  Please take a moment
 8      and review the document.
 9          The Bates stamp is ACTAVIS, and
10      then 0361537 -- I'm sorry, that Bates number
11      is the number -- the page number of the first
12      unredacted page.  The first page of the
13      exhibit ends in 535, just so the record is
14      clear.
15          (Document review.)
16   BY MR. BOWER:
17      Q.   Are you ready?
18      A.   Yes.
19      Q.   Okay.  Sorry.
```

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 330

Page 332

Page 331

Page 333

```
16        MS. FUMERTON:  Are you saying
17   responds to --
18        MR. BOWER:  Yeah.
19        MS. FUMERTON:  Where are you
20   looking?
21        MR. BOWER:  Rae, top of the
22   page ending in 06, Rae's response to
23   Maria.
24        MS. FUMERTON:  You're working
25   backwards unless I'm not --
```

Highly Confidential - Subject to Further Confidentiality Review



Page 334

```
1          MR. BOWER:  I'm looking at the
2    top of the page ending in 06.  I
3    believe the witness sees it.
4          MS. FUMERTON:  Oh, I'm sorry.
5    It's said twice in the document.  It's
6    on a different paragraph.
7          MR. BOWER:  Okay.  I'm sorry.
8          MS. FUMERTON:  Okay.  So I'm
9    with you now.  I'm sorry, that's my
10   fault.
11         MR. BOWER:  No problem.
12         MS. FUMERTON:  Okay.
13   BY MR. BOWER:
```

Page 336

Page 335

Page 337

```
6          So just take a moment and
7    review it, and then we can have some
8    questions on it.
9          (Document review.)
10         MR. BOWER:  While the witness
11   is reading the document, the Bates
12   number of this one is ALLERGAN_MDL and
13   it's 00144683 through -- and the
14   attachment is 684, and then 685 is a
15   native, and we included the native
16   with a cover sheet.
17         (Document review.)
18   BY MR. BOWER:
19     Q.   Are you done reviewing the
20   document?
21     A.   Not yet.
22     Q.   Okay.
23         (Document review.)
24   BY MR. BOWER:
25     Q.   Are you ready?
```

85 (Pages 334 to 337)

Highly Confidential - Subject to Further Confidentiality Review



Page 338

1      A.   I'm done.

Page 339

17   BY MR. BOWER:
18      Q.    Well, if you look at the
19   e-mail, Mr. Cohen is telling you --
20         MS. FUMERTON:  She hadn't
21   finished her question.
22         MR. BOWER:  No, she said --
23   okay.  Have you finished your answer?
24         MS. FUMERTON:  She was still
25   talking and you started talking.  If

Page 340

1   she's finished, that's fine.
2         MR. BOWER:  No, no, I
3   apologize.  Please finish.

Page 341

Highly Confidential - Subject to Further Confidentiality Review

Page 342

5        Just take a moment to review
the document.
7        (Document review.)
8   BY MR. BOWER:
9       Q.   Are you still reviewing the
10  document?
11       MS. FUMERTON:  Are you --
12       A.   I'm okay.
13  BY MR. BOWER:

Page 344

1        A.   And in my -- in my --
2        MS. FUMERTON:  Objection.  I
3   mean, there's no question pending.
4        MR. BOWER:  The witness is
5   saying this is unclear, and --
6        MS. FUMERTON:  Okay.  Well, you
7   didn't ask a question, and you're
8   making commentary, just sort of random
9   commentary on her questions.
10       So if you have a question, you
11  can ask her.  Otherwise I'm objecting
12  and -- to just your additional
13  commentary on what she's saying.
14  BY MR. BOWER:

Page 343

Page 345



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 354

```
 7        (Walmart-Little Exhibit 24
 8    marked.)
 9    BY MR. BOWER:
10        Q.    You've been handed what's been
11    marked as Exhibit 24.
12        MS. FUMERTON:  We've been going
13    for a while.  Is this a good stopping
14    point?  We've been going, I think, for
15    another hour 20 minutes or so.
16        MR. BOWER:  We've been going
17    that long?  Sure.  I didn't know we
18    had been going that long.  Sure.
19        THE VIDEOGRAPHER:  Off the
20    record, 3:22 p.m.
21        (Recess taken, 3:22 p.m. to
22    3:41 p.m.)
23        THE VIDEOGRAPHER:  Back on
24    record.  The time is 3:41 p.m.
25        ///
```

Page 355

```
 1    BY MR. BOWER:
 2        Q.    Okay.  Ms. Little, before we
 3    went off, I handed you Exhibit 24, but you
 4    haven't reviewed it yet.  So why don't you
 5    take a moment to review that, and then I'll
 6    have just a few questions on this one.
 7        (Document review.)
 8    BY MR. BOWER:
 9        Q.    All right.  Are you ready?
10        A.    Yes.
```

Page 356

Page 357

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 370

8        MR. CIULLO:  I'm sorry, can you
9   read the Bates.
10        MR. BOWER:  Sure.  This is a
11   Walmart document.  The Bates number is
12   WMT_MDL_000037807 and 808.
13        MR. CIULLO:  Thank you, sir.
14        MR. BOWER:  Sure.
15        MS. FUMERTON:  I'll just note
16   for the record that this document is
17   missing its attachment.
18        (Document review.)
19   BY MR. BOWER:

Page 372

Page 371

Page 373

94 (Pages 370 to 373)

Highly Confidential - Subject to Further Confidentiality Review



Page 374

2      The Bates number for this one
3   is WMT_MDL_000033418 through 33424.
4      (Document review.)
5   BY MR. BOWER:
6      Q.   Are you ready?
7        MS. FUMERTON:  She's still
8   reading.
9      A.   I'm not.
10       MR. BOWER:  Okay.  Sorry.
11       (Document review.)
12       (Telephonic interruption.)
13       (Comments off the stenographic
14   record.)
15       MR. BOWER:  Can we go off the
16   record.
17       THE VIDEOGRAPHER:  Going off
18   the record, 4:09 p.m.
19       (Discussion off the record.)
20       THE VIDEOGRAPHER:  Back on
21   record, 4:10 p.m.
22   BY MR. BOWER:

Page 376

Page 375

Page 377

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 386

Page 387

Page 388

```
 1          (Walmart-Little Exhibit 27
 2     marked.)
 3   BY MR. BOWER:
 4      Q.   You've been handed what's been
 5   marked as Exhibit 27.  It's a Walmart
 6   document ending in Bates number 25900.  It's
 7   a one-page document.  Just take your time and
 8   let me know when you're done.
 9          I can tell you my questions
10   will be focused on paragraph 4, if that
11   helps.
12      A.   Okay.
13          (Document review.)
14   BY MR. BOWER:
15      Q.   Are you ready?
16      A.   I'm ready.
```

Page 389

Highly Confidential - Subject to Further Confidentiality Review



Page 390

Page 391

Page 392

Page 393

15          (Walmart-Little Exhibit 28
16     marked.)
17     BY MR. BOWER:
18          Q.    Okay.  You've been handed
19     what's been marked as Exhibit 28.  It's a
20     Walmart document ending in 21757 through 59.
21     It's a two-page e-mail.  Let me know when you
22     finish reviewing.
23          A.    Okay.
24          (Document review.)
25          ///

Highly Confidential - Subject to Further Confidentiality Review



Page 394

1    BY MR. BOWER:
2        Q.    Are you ready?
3        A.    Yes.

Page 395

Page 396

Page 397

Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Page 402

Page 404

Page 403

Page 405

3       MR. BOWER:  Why don't we take a
4   break.
5       MS. FUMERTON:  Okay.
6       THE VIDEOGRAPHER:  Going off
7   the record, 4:37 p.m.
8       (Recess taken, 4:37 p.m. to
9   4:52 p.m.)
10      THE VIDEOGRAPHER:  Back on
11  record at 4:51 p.m.
12  BY MR. BOWER:
13      Q.    All right.  Ms. Little, we're
14  back on the record.  We'll try to finish up
15  here, do the best we can.
16      (Walmart-Little Exhibit 29
17  marked.)
18  BY MR. BOWER:

Highly Confidential - Subject to Further Confidentiality Review



Page 406

2     MS. FUMERTON: Still take time
3 to make sure you understand.
4     MR. BOWER: Yeah, yeah, please
5 do. I just -- I'm not going to be
6 asking, I don't think, any questions
7 on the attachments.
8     (Document review.)
9 BY MR. BOWER:
10    Q. Are you ready?
11    A. I'm not ready.
12    Q. And I'll note again, I'm just
13 asking you about the first page of the
14 document, so tell me when you've had a chance
15 to review that, okay?
16     (Document review.)
17    A. Okay.
18 BY MR. BOWER:

Page 407

5     MS. FUMERTON: Zach, the Bates
6 numbers are out of order. I don't
7 know if that's -- I don't know why.
8     MR. BOWER: I'm not sure
9 either, but it's Walmart's production.
10     MR. FAUVRE: Could we get the
11 Bates number on the document?
12     MR. BOWER: Sure. It starts in
13 7254 -- the e-mail -- you want to just
14 do the e-mail?
15     MS. FUMERTON: Okay. Look, I
16 don't know what this is. I have no
17 personal knowledge and I don't know if
18 it's on our end. My next question is
19 do you have a question with the
20 e-mail, because I do see like it
21 looks -- it looks a little off about
22 the numbers.
23     MR. BOWER: Right, right.
24     MS. FUMERTON: I'm just
25 wondering if this is an attachment.

Page 408

1 I'm just saying it's a possibility.
2     MR. BOWER: E-mailed an
3 attachment?
4     MS. FUMERTON: Yeah. The
5 attachments got out of order.
6     MR. BOWER: My questions are
7 only on the pages ending in 7245 and
8 7246, and I'm just trying to figure
9 out how this --
10     MR. FAUVRE: Can we get the
11 full Bates number, please?
12     MR. BOWER: Who is that on the
13 phone?
14     MR. FAUVRE: This is David
15 Fauvre for Endo and Par. Can we get
16 the full Bates numbers?
17     MS. FUMERTON: Yeah, David, it
18 starts 245 -- well...
19     MR. BOWER: I believe it was in
20 your hard copy production. That might
21 explain it.
22     MR. FAUVRE: What's the prefix?
23     MR. BOWER: Prefix is a Walmart
24 document, WMT_MDL.
25     MS. FUMERTON: I don't know.

Page 409

1     MR. BOWER: Okay. Well, why
2 don't -- look, I'm not going to ask
3 any questions.
4     MS. FUMERTON: That's fine.
5     MR. BOWER: Why don't we just
6 leave it as it is. I don't think
7 there's anything controversial in it.
8 BY MR. BOWER:

103 (Pages 406 to 409)

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review

Page 418

3      Q.   At this point, the opioid
4   epidemic had been discussed in the media
5   frequently, right?
6          MS. FUMERTON:  Objection, form.
7      A.   I don't -- I don't recall
8   specifically.
9   BY MR. BOWER:
10     Q.   It would have been the subject
11  of numerous TV shows, numerous books,
12  numerous political discussions, right?
13         MS. FUMERTON:  Objection, form.
14     A.   I don't recall.
15  BY MR. BOWER:

Page 420

3      Q.   Okay.
4          (Walmart-Little Exhibit 31
5   marked.)
6   BY MR. BOWER:
7      Q.   You've been handed what's been
8   marked as Exhibit 31, it's a one page e-mail.
9   Please take a moment to review it.
10         MR. CIULLO:  What's the Bates?
11         MR. BOWER:  Yeah, the Bates
12  number is -- it's a Walmart document
13  ending in 21571.  It's a one-page
14  document.
15         MR. CIULLO:  Thank you.
16         (Document review.)
17  BY MR. BOWER:
18     Q.   Do you see that?
19     A.   I do.

Page 419

Page 421



Highly Confidential - Subject to Further Confidentiality Review



Page 422

Page 424

9      Q.   Okay.
10          (Walmart-Little Exhibit 32
11     marked.)
12  BY MR. BOWER:
13     Q.   You've been handed what's been
14  marked as Exhibit 32.  Take your time to
15  review it.  I can tell you that my questions
16  are simply focused on the first page at the
17  top right there, the cc and the handwriting.
18          Do you see that?
19     A.   Yes.
20     Q.   This is a contract -- you can
21  review it.  I don't mean to --
22          MS. FUMERTON:  At least give
23  her a chance to see the general --
24          MR. BOWER:  Yeah, yeah.
25          MS. FUMERTON:  It might help

Page 423

Page 425

1   inform your questions.
2           MR. BOWER:  Sure.
3           MR. CIULLO:  While we're
4   waiting, can you give me the Bates?
5           MR. BOWER:  Oh, yeah, sure.
6   This is a Walmart document again,
7   25445 through 447.
8           MR. CIULLO:  Thank you very
9   much.
10          MR. BOWER:  Sure.
11          (Document review.)
12          THE WITNESS:  Okay.
13  BY MR. BOWER:
14     Q.   Okay?
15     A.   Yes.

Highly Confidential - Subject to Further Confidentiality Review



Golkow Litigation Services - 877.370.DEPS

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 438

Page 440

```
23        MR. BOWER:  I have nothing
24   further.  I think my time is up.  Why
25   don't we switch.
```

Page 439

Page 441

```
 1        MS. FUMERTON:  I have no
 2   questions.
 3        MR. BOWER:  Oh, no questions?
 4   Okay.
 5        THE VIDEOGRAPHER:  This ends --
 6        MS. FUMERTON:  Go off the
 7   record.
 8        THE VIDEOGRAPHER:  This ends
 9   today's deposition.  Going off the
10   record at 5:28 p.m.
11        (Proceedings recessed at
12   5:28 p.m.)
13             --o0o--
14
15
16
17
18
19
20
21
22
23
24
25
```

111  (Pages 438 to 441)

Highly Confidential - Subject to Further Confidentiality Review

## Page 442

```
 1              CERTIFICATE
 2        I, MICHAEL E MILLER, Fellow of
   the Academy of Professional Reporters,
 3 Registered Diplomate Reporter, Certified
   Realtime Reporter, Certified Court Reporter
 4 and Notary Public, do hereby certify that
   prior to the commencement of the examination,
 5 PATSY LITTLE was duly sworn by me to testify
   to the truth, the whole truth and nothing but
 6 the truth
 7        I DO FURTHER CERTIFY that the
   foregoing is a verbatim transcript of the
 8 testimony as taken stenographically by and
   before me at the time, place and on the date
 9 hereinbefore set forth, to the best of my
   ability
10
          I DO FURTHER CERTIFY that pursuant
11 to FRCP Rule 30, signature of the witness was
   not requested by the witness or other party
12 before the conclusion of the deposition
13        I DO FURTHER CERTIFY that I am
   neither a relative nor employee nor attorney
14 nor counsel of any of the parties to this
   action, and that I am neither a relative nor
15 employee of such attorney or counsel, and
   that I am not financially interested in the
16 action
17
18 _____
   MICHAEL E MILLER, FAPR, RDR, CRR
19 Fellow of the Academy of Professional Reporters
   NCRA Registered Diplomate Reporter
20 NCRA Certified Realtime Reporter
   Certified Court Reporter
21 Notary Public
22
   My Commission Expires:  7/9/2020
23
   Dated: December 19, 2018
24
25
```

## Page 443

```
 1        INSTRUCTIONS TO WITNESS
 2
 3        Please read your deposition over
 4 carefully and make any necessary corrections.
 5 You should state the reason in the
 6 appropriate space on the errata sheet for any
 7 corrections that are made.
 8        After doing so, please sign the
 9 errata sheet and date it.
10        You are signing same subject to
11 the changes you have noted on the errata
12 sheet, which will be attached to your
13 deposition.
14        It is imperative that you return
15 the original errata sheet to the deposing
16 attorney within thirty (30) days of receipt
17 of the deposition transcript by you.  If you
18 fail to do so, the deposition transcript may
19 be deemed to be accurate and may be used in
20 court.
21
22
23
24
25
```

## Page 444

```
 1              ERRATA
 2 PAGE LINE CHANGE
 3 ____ ____ _____
 4      REASON: _____
 5 ____ ____ _____
 6      REASON: _____
 7 ____ ____ _____
 8      REASON: _____
 9 ____ ____ _____
10      REASON: _____
11 ____ ____ _____
12      REASON: _____
13 ____ ____ _____
14      REASON: _____
15 ____ ____ _____
16      REASON: _____
17 ____ ____ _____
18      REASON: _____
19 ____ ____ _____
20      REASON: _____
21 ____ ____ _____
22      REASON: _____
23 ____ ____ _____
24      REASON: _____
25
```

## Page 445

```
 1        ACKNOWLEDGMENT OF DEPONENT
 2
 3
 4        I, PATSY LITTLE, do hereby certify
   that I have read the foregoing pages and that
 5 the same is a correct transcription of the
   answers given by me to the questions therein
 6 propounded, except for the corrections or
   changes in form or substance, if any, noted
 7 in the attached
   Errata Sheet.
 8
 9
10
11
12 _____
   PATSY LITTLE            DATE
13
14
15 Subscribed and sworn before me this
16 _____ day of _____, 20 _____.
17 My commission expires: _____
18
19 _____
20 Notary Public
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

Page 446

1    LAWYER'S NOTES
2
3    PAGE  LINE
4    ____  ____  _____
5    ____  ____  _____
6    ____  ____  _____
7    ____  ____  _____
8    ____  ____  _____
9    ____  ____  _____
10   ____  ____  _____
11   ____  ____  _____
12   ____  ____  _____
13   ____  ____  _____
14   ____  ____  _____
15   ____  ____  _____
16   ____  ____  _____
17   ____  ____  _____
18   ____  ____  _____
19   ____  ____  _____
20   ____  ____  _____
21   ____  ____  _____
22   ____  ____  _____
23   ____  ____  _____
24   ____  ____  _____
25