Page 685

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
- - -

IN RE:  NATIONAL        : HON. DAN A.
                        : POLSTER
PRESCRIPTION OPIATE     :
LITIGATION              :
                        :
APPLIES TO ALL CASES    : NO.
                        : 1:17-MD-2804
- HIGHLY CONFIDENTIAL -
SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
- - -

MARCH 27, 2019
- - -

VOLUME III
    Videotaped sworn continued
videotaped deposition of BRIAN LORTIE,
taken pursuant to notice, was held at
McCARTER & ENGLISH, LLP, 1600 Market
Street, Suite 3900, Philadelphia,
Pennsylvania, beginning at 10:40 a.m.,
on the above date, before Margaret M.
Reihl, a Registered Professional
Reporter, Certified Shorthand Reporter,
Certified Realtime Reporter, and Notary
Public.
- - -

GOLKOW LITIGATION SERVICES
877 370.3377 ph | 917.591.5672 fax
deps@golkow.com

Page 686

1
2     A P P E A R A N C E S :

      SEEGER WEISS LLP
3     BY:  JENNIFER SCULLION, ESQUIRE
           SABRINA TYJER, PARALEGAL
4     77 Water Street
      New York, New York 10005
5     (212) 584-0700
      jscullion@seegerweiss.com
6     Representing the Plaintiffs
7
8     BRANSTETTER, STRANCH & JENNINGS, PLLC
      BY:  JOE P. LENISKI, JR., ESQUIRE
9     The Freedom Center
      223 Rosa L. parks Avenue, Suite 200
10    Nashville, Tennessee  37203
      (625) 254-8801
11    joyl@bsjfirm.com
      Representing the Tennessee Plaintiffs
12
13
      GOODELL DEVRIES LEECH & DANN, LLP
14    BY:  ROBERT LIMBACHER, ESQUIRE
           ADAM S. TOLIN, ESQUIRE
15    Two Commerce Square
      2001 Market Street, Suite 3700
16    Philadelphia, Pennsylvania  19103
      (267) 765-3600
17    rlimbacher@gdldlaw.com
      atolin@gdldlaw.com
18    Representing the Defendant Endo and
      the witness
19
20
21
22
23
24

Page 687

1     A P P E A R A N C E S :  (cont'd)
2
3     PIETRAGALLO GORDON ALFANO
      BOSICK & RASPANTI, LLP
4     BY:  ASHLEY KENNY, ESQUIRE
      1818 Market Street, Suite 3402
5     Philadelphia, Pennsylvania  19103
      (215) 988-1464
6     ak@pietragallo.com
      Representing Cardinal Health
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 688

1     APPEARANCES VIA TELECONFERENCE AND STREAM
2     ULMER & BERNE, LLP
      BY:  SARAH M BENOIT, ESQUIRE
3     65 East State Street, Suite 1100
      Columbus, Ohio  44113
4     (261) 583-7000
      sbenoit@ulmer.com
5     Representing Amneal Pharmaceuticals, Inc
6
      JONES DAY
7     BY:  TAYLOR GOODSPEED, ESQUIRE
      555 California Street, 26th Floor
8     San Francisco, California  94104-1500
      (415) 875-5804
9     tgoodspeed@jonesday.com
      Representing the Defendant Walmart
10
11    REED SMITH LLP
      BY:  ABIGAIL PIERCE, ESQUIRE
12    Three Logan Square
      1717 Arch Street, Suite 3100
13    Philadelphia, Pennsylvania  19103
      (215) 851-8280
14    apierce@reedsmith.com
      rblake@reedsmith.com
15    Representing the Defendant AmerisourceBergen
16
      ARNOLD & PORTER KAYE SCHOLER LLP
17    BY:  JOANNA PERSIO, ESQUIRE
      601 Massachusetts Ave , NW
18    Washington, DC  20001
      (202) 942-5504
19    joanna persio@arnoldporter.com
      Representing the Defendant Endo Pharmaceuticals,
20    Inc  and Endo Health Solutions, Inc
21
22
23
24

Page 689

```
 1
 2    A P P E A R A N C E S: (cont'd)
 3
      BAILEY & WYANT, PLLC
 4    BY:  HARRISON M. CYRUS, ESQUIRE
      500 Virginia Street East, Suite 600
 5    Charleston, West Virginia 25301
      hcyrus@baileywyant.com
 6    Representing West Virginia Board of Pharmacy
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20    ALSO PRESENT:
21    Sandra D'Orio, Litigation Counsel, Endo
22    Bill Geigert, Videographer
23
24
```

Page 690

```
 1                    I N D E X
 2    WITNESS                      PAGE
      BRIAN LORTIE
 3
 4       By Ms. Scullion           692
 5       By Mr. Leniski            800
 6          E X H I B I T S
 7    NO.    DESCRIPTION           PAGE
 8    Endo-
      Lortie-66 E-mail string, top one
 9          dated 3/25/19
            Subject:  Opiates 30(b)(6)
10          failures              692
11    Endo-
      Lortie-67 Timeline "endo History of
12          Major Drugs"
            (previously marked
13          Campanelli 212)       692
14    Endo-
      Lortie-68 Two charts, "1999-2017
15          (June) Endo Total Pills/
            Unite Shipped
16          [E1811.1] two pages    692
17    Endo-
      Lortie-69 **Skipped
18
      Endo-
19    Lortie-70 E-mail dated 7/14/03
20          Subject: Action Plan to
            Prevent Diversion, with
            attachment
21          [ENDO-OPIOID_MDL-01692316
22          through 01692321
            and E0548.1 through 0548.6]  692
23
24
```

Page 691

```
 1          E X H I B I T S
 2    NO.    DESCRIPTION           PAGE
 3    Endo-
      Lortie-71 E-mail string, top one
 4          dated 11/14/11
            Subject: FW: V8-Minor
 5          Tweaks Awakening to REMS
            RD Lunch and Learn Nov 15
 6          2011 DRAFT Slides
            [ENDO-CHI_LIT-00241435
 7          through 00241436
            and E0715.1 through 0715.30]  692
 8
      Endo-
 9    Lortie-72 Risk Management Plan for
            Opioid Analgesics
10          Focus On:  Oxycodone ER
            February 19, 2004
11          [ENDO-OPIOID_MDL-01500831
            through 0778.106]      692
12
      Endo-
13    Lortie-73 **Skipped
14    Endo-
      Lortie-74 **Skipped
15
      Endo-
16    Lortie-75 E-mail dated 10/3/16
            Subject: Pilot doctors
17          pharmacy data
            with attachment
18          [ENDO-OPIOID_MDL-01905809]   815
19
20              - - -
21
22
23
24
```

Page 692

```
 1          (Documents marked for
 2    identification as Endo-Lortie Deposition
 3    Exhibit Numbers 66, 67, 68, 70, 71 and
 4    72.)
 5          THE VIDEOGRAPHER:  Good morning.
 6    We are now on the record.  My name is
 7    Bill Geigert, I'm the videographer for
 8    Golkow Litigation Services.  Today's
 9    date is March 27th, 2019, and the time
10    is 10:40 a.m.
11          This video deposition is being
12    held in Philadelphia, Pennsylvania in
13    the matter of National Prescription
14    Opiate Litigation.  The deponent is
15    Brian Lortie.  Counsel will be noted on
16    the stenographic record.
17          The court reporter is Peg Reihl,
18    and she will now swear in the witness.
19          ... BRIAN LORTIE, having been
20    duly sworn as a witness, was examined
21    and testified as follows:
22    BY MS. SCULLION:
23       Q.    Good morning, Mr. Lortie.
24    Welcome back.
```

Page 693

```
 1        A.   Thank you.
 2        Q.   Just as a reminder, it's been a
 3   few weeks since our last session together.  I'm
 4   going to be asking you questions today and
 5   asking for your complete and truthful answers.
 6   If you don't understand any of my questions
 7   today, would you let me know that?
 8        A.   Yes, I will.
 9        Q.   Thank you.  And is there any
10   reason you can't give your best testimony today?
11        A.   No, there's not.
12        Q.   You're not taking any
13   medications, for example, that would interfere
14   with your cognitive abilities today?
15        A.   That's correct.
16        Q.   Okay.  Terrific.  We've placed in
17   front of you a number of exhibits that we've
18   premarked.  If you'll turn to the first exhibit,
19   which is Exhibit 66.
20        A.   Okay.
21        Q.   And it says at the top regarding
22   "Opiates: 30(b)(6) failures."
23             Do you see that?
24        A.   Yes, I do.
```

Page 694

```
 1        Q.   Okay.  Mr. Lortie, do you
 2   understand you're here today to testify as
 3   Endo's corporate representative on certain
 4   specific topics; is that right?
 5        A.   I do, yes.
 6        Q.   Okay.  So you're going to be
 7   providing me today with Endo's knowledge on the
 8   topics, correct?
 9             MR. LIMBACHER:  Object to form.
10             THE WITNESS:  That's correct.
11   BY MS. SCULLION:
12        Q.   So if you'll turn to page 6 of
13   Exhibit 66.  It's this page at the bottom you'll
14   see the words "Topic 30."
15        A.   Mine aren't numbered, so I'll
16   just count.
17        Q.   Yes.
18        A.   Six, yes, Topic 30, yes.
19
20
21
22
23
24
```

Page 695

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18             MR. LIMBACHER:  Object to form.
19   Jen, just so we're clear, I think the
20   agreement that counsel had with each
21   other is reflected on the first couple
22   pages of your Exhibit 6, where you
23   memorialized accurately the very narrow
24   topics on which Mr. Lortie was being
```

Page 696

```
 1   produced for purposes of this
 2   supplemental deposition.  So you're
 3   going back now to e-mail exchanges with
 4   counsel who are not here that go back
 5   into January of this year, so I just
 6   want to make sure there's no confusion
 7   on the record.
 8   BY MS. SCULLION:
 9        Q.   So, Mr. Lortie, if you'll go to
10   the first page of Exhibit 66, do you see at the
11   bottom the e-mail from myself to Joshua Davis
12   and Adam Tolin dated March 25th, 2019?
13        A.   Yes, I do.
14
15
16
17
18
19
20
21
22
23
24
```

Page 697



22  and just so the record is clear, Jen,
23  your Exhibit 66 includes Josh Davis'
24  e-mail to you of January 31, 2019, but

Page 698

1   it does not include the attachment to
2   that e-mail, which is a 35-page letter
3   that Mr. Davis sent to you on
4   January 31st, 2019 that I think lays out
5   in detail Endo's position with regard to
6   the appropriate scope of the various
7   topics on which he was previously
8   offered and for which he is being
9   offered today in a supplemental
10  deposition.
11      MS. SCULLION:  Can you mark the
12  record because we're going to have to
13  have a colloquy come out of my time.
14      Mr. Limbacher, the purpose of me
15  sending the e-mail on March 25th that is
16  reflected in Exhibit 66 in which -- to
17  which Mr. Tolin responded that's correct
18  was to eliminate any confusion as to
19  what topics Mr. Lortie is being offered
20  on, and my e-mail does specifically say
21  that he is being offered on the abuse
22  and diversion aspects of Topics 30 and
23  32 as set forth in my January 28th
24  e-mail below.

Page 699

1       Mr. Tolin did not respond by
2   saying there was anything missing or
3   additional that needed to be added
4   beyond my January 28th e-mail, so if
5   there's anything that you think is in
6   the letter you just referenced from
7   Mr. Davis that changes or limits what
8   was set forth in my January 28th e-mail
9   coupled with the provisos in the
10  March 25th e-mail, we need to know that
11  now.  We had intended this to be clear
12  before he walked in today, and this time
13  is not coming out of our two hours.
14      MR. LIMBACHER:  Well, he's here
15  today to testify with regard to abuse
16  and diversion aspects of Topic 30 and 32
17  on the very narrow subjects you
18  identified in your March 25th, 2019
19  e-mail, specifically opioids sold by
20  Endo other than Opana ER and for the
21  period after Mr. Lortie left Endo in
22  2016.
23      If we're going to get into the
24  minutiae of what the parties did going

Page 700

1   back and forth trying to reach some
2   understanding with regard to the topics
3   on which he is being offered, both at
4   his prior deposition and here today, I
5   think it's appropriate that we include
6   in the record Mr. Davis' letter to you
7   of January 31, 2019, which was
8   subsequent to your e-mail of January 28,
9   2019.
10      I'm prepared to have him answer
11  questions within the scope of your
12  March 25th e-mail.  I'm not sure why you
13  feel it necessary to waste some of your
14  two hours digging back into the weeds on
15  the parties back-and-forth over the last
16  several months with regard to the scope
17  of the 30(b)(6) deposition topics.
18      MS. SCULLION:  Based on your
19  representation that we're going forward
20  based on our March 25th e-mail, that's
21  fine.
22  BY MS. SCULLION:
23      Q.   Mr. Lortie, as we proceed today,
24  if there are any questions to which you don't

4 (Pages 697 to 700)

Page 701

1    actually know the answer, would you please let
2    me know that as opposed to just giving me your
3    assumption or your speculation?
4         A.    I will do my best, yes.
5         Q.    Okay, thank you.
6              So if you'll turn to what's been
7    put in front of you marked as Exhibit 67, and
8    it's labeled "Endo History of Major Drugs."
9    Mr. Lortie, this is, if you see in the bottom
10   right-hand corner, an exhibit that was marked
11   and used at Mr. Campanelli's deposition as
12   Exhibit 212, and it's just a timeline we put
13   together from the FDA information to outline the
14   history of certain dates with respect to opioids
15   sold by Endo and just providing this as means of
16   some orientation here for you.
17             Mr. Lortie, one of the topics --
18   I'm sorry -- one of the drugs you're prepared to
19   speak to today with respect to abuse and
20   diversion policies is Percocet, correct?
21        A.    Yes, that's correct.  Can I just
22   ask a clarifying question?
23        Q.    Sure.
24        A.    So I think you said you produced

Page 702

1    this.  This is not from some Endo deck or --
2         Q.    That is correct.  So this is a
3    demonstrative timeline we put together.  The
4    source of the information is in the bottom
5    left-hand corner.  It's coming from the FDA
6    website, and in the bottom right-hand corner is
7    the exhibit sticker.  This was used at
8    Mr. Campanelli's deposition.
9         A.    Thank you.  I understand.
10        Q.    Okay.  And, again, just by way of
11   orientation, Percocet is an oxycodone APAP
12   combination drug, correct?
13        A.    Yes, that's correct.

Page 703

Page 704



Page 705

19    Q.    What were those?
20    A.    A large list of topics.  In fact,
21  if it's okay, I can refer to the binder that I
22  brought with me that has a summary of those
23  things.
24    Q.    Yeah, could I have the binder?

Page 706

1        MR. LIMBACHER:  Could we give her
2  a copy.
3        MS. SCULLION:  Thank you.
4  BY MS. SCULLION:
5    Q.    And before you look at the
6  binder, these are materials that you reviewed in
7  preparation for today's deposition?
8    A.    That is correct.
9    Q.    Okay.

Page 707

Page 708







Page 717

Page 718

Page 719

BY MS. SCULLION:
Q.    Okay.  Let's get some orientation into what the volumes were.
I've handed you what's been marked as Exhibit 68.  Let me explain 68 here.
Sixty-eight has two pages, both of these are -- easier to do it one piece at a time.
The front page of Exhibit 68 you'll see in the bottom right-hand corner is marked Exhibit 206, and this was used as a demonstrative at Mr. Campanelli's deposition again, and what this chart is is a demonstrative that tallies up the data that we received from Endo in the litigation, and we have on the second page simply blown up the chart that's on the first page, so it is just easier to use.
That's what this is, all right?
A.    Yeah, I can see that.

Page 720

Q.    Okay.  So let's -- I think using the second page of Exhibit 68 is going to be easier, so I'm just going to turn to that, if you want to turn to the second page.
MR. LIMBACHER:  Jen, I don't mean to interrupt, but will you grant me a continuing objection to the use of this exhibit on the grounds that it falls outside the scope of the topics on which he has been designated for this supplemental deposition, and, indeed, he has now testified that volume of sales did not impact Endo's policies and processes to minimize the risk of abuse and diversion?
MS. SCULLION:  I'll grant the continuing objection and move to strike all of the reiteration of or attempted reiteration of the witness' testimony, and I would disagree with the objection.
BY MS. SCULLION:
Q.    So, Mr. Lortie, again, just to give context to what Endo did not take account of in terms of adjusting its policies, look at



Page 721

```
 1    the first line of the chart.  You'll see an
 2    entry for Endocet.
 3           Do you see that?
 4    A.    Yes, I do.
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```



Page 725

Page 726

```
17    Q.    If you'll turn to tab 5 in your
18  binder.
19    A.    This is the binder you gave me?
20    Q.    Correct.  Sorry, the binder that
21  I gave you.
22    A.    Keep things organized here, and
23  you said tab number 5.
24    Q.    Tab number 5, and we have marked
```

Page 727

```
1   it, if you have the right one, as Exhibit 71 in
2   the lower right-hand corner; is that right?
3     A.    Yes.
4     Q.    Okay.  And Exhibit 71, for the
5   record, is ENDO-CHI_LIT-00241435.  We've marked
6   it in the upper right-hand corner E0715.
7           Do you see that?
8     A.    I do, yes.
```

Page 728

```
15  to put one thing on the record that we
16  talked about before we started.  I don't
17  think there's any disagreement on this,
18  but all of your questions today are
19  being asked in Mr. Lortie's capacity as
20  a 30(b)(6) witness; is that right?
21          MS. SCULLION:  They are.
22          MR. LIMBACHER:  Thank you.
23  BY MS. SCULLION:
24    Q.    Mr. Lortie, just -- can you just
```



Page 729

1  go back to Exhibit 68, the chart of the sales
2  for just one second, please.
3      A.   Yes.

Page 730

14      A.   May I just take a minute?
15      Q.   Yeah, absolutely.
16      A.   I just wanted to understand the
17  context of the communication.
18      Q.   Certainly.
19      A.   (Witness reviews document.)
20  Okay.  I looked quickly.  I think I understand
21  the general context.  If you've got a specific
22  question, I'll look carefully at that page.
23      Q.   Sure.  If you'll turn to page
24  715.13.

Page 731

1      A.   Okay.

Page 732



Page 733

13       MR. LIMBACHER:  Object to form
14  and to the extent it falls outside the
15  scope of the narrow topics on which he's
16  being produced today.
17       MS. SCULLION:  To address
18  Mr. Limbacher's last objection, all this
19  is in the context trying to understand
20  the basis, the foundation on which Endo
21  was putting together its policies and
22  processes with respect to abuse and
23  diversion of opioids.

Page 734

BY MS. SCULLION:

Page 735

Page 736









Page 753

| | |
|---|---|
| 1 | hour.  Whenever is a good time to take a |
| 2 | break. |
| 3 | MS. SCULLION:  Want to take a |
| 4 | short break? |
| 5 | MR. LIMBACHER:  Thank you. |
| 6 | THE VIDEOGRAPHER:  Off the |
| 7 | record, 11:41. |
| 8 | (Brief recess.) |
| 9 | THE VIDEOGRAPHER:  We are back on |
| 10 | the record at 11:49. |
| 11 | BY MS. SCULLION: |
| 12 | Q.    Mr. Lortie, if you'll turn to tab |
| 13 | 6 of the binder that I provided to you. |
| 14 | A.    Yes. |
| 15 | Q.    And the bottom right-hand corner |
| 16 | it should say Exhibit 72. |
| 17 | A.    Yes. |
| 18 | Q.    Okay.  And Exhibit 72 for the |
| 19 | record is ENDO-OPIOID_MDL-01500831, and it's |
| 20 | marked in the upper right-hand corner E778.1. |









Page 765

Page 766

```
13        Q.    If you go to tab 2 of the binder
14   that I provided to you.
15        A.    I'm on tab 2, yes.
16        Q.    And tab 2 is Exhibit 10 to your
17   prior session of your deposition.
18             Do you see that?
19        A.    I do, yes.
```

Page 767

Page 768



**Page 769**

```

```

**Page 770**

```
 5       MR. LIMBACHER:  Object as beyond
 6   the scope of the topics on which he's
 7   been designated.  Indeed, Jen, sales --
 8       MS. SCULLION:  You can just say
 9   beyond the scope.  I don't want to take
10   up more time on the record.
11       MR. LIMBACHER:  Well, I'm --
12       MS. SCULLION:  Because then it's
13   not going to come out of my time, my two
14   hours.
15       MR. LIMBACHER:  I'm somewhat
16   surprised that you would be trying to do
17   this.  Topic Number 7 in your 30(b)(6)
18   notice is specific to training of sales
19   representatives.  This witness has not
20   been designated and he is not here to
21   answer questions with regard to that
22   topic.
23   BY MS. SCULLION:
24       Q.   I think you've answered that you
```

**Page 771**

```
 1   don't know, correct?
 2       MR. LIMBACHER:  Object to form,
 3   same objections.
 4       THE WITNESS:  Right.
 5   BY MS. SCULLION:
 6       Q.   Okay, thanks.
 7           If you'll turn to tab 7 of the
 8   binder I provided to you -- I apologize, tab 4.
 9       A.   Tab 4?
10       Q.   Tab 4.  And it's marked in the
11   lower right-hand corner Exhibit 70.
12           Do you see that?
13       A.   I do.
14       Q.   Okay.  And for the record it's
15   ENDO-OPIOID_MDL-01692316, and in the upper
16   right-hand corner we've marked it as E548.
24       MR. LIMBACHER:  Well, then take
```

**Page 772**

```
 1   your time and review the document.
 2       MS. SCULLION:  Can I ask that we
 3   do it off the record then, because we
 4   have the two hours.  I would have
 5   expected this was something he'd --
 6   would have reviewed as part of his
 7   preparation.
 8       MR. LIMBACHER:  Well, I object to
 9   that unnecessary comment, but please go
10   ahead and review the document.
11       THE WITNESS:  (Witness reviews
12   document.)  Okay, I've taken a look at
13   it.
14   BY MS. SCULLION:
15       Q.   All right, thank you.
16           If you'll turn to page 548.2 --
17   well, strike that.
```







Page 781

Page 782

10      MR. LIMBACHER:  Object as beyond
11   the scope of the topics on which he's
12   been designated.
13   BY MS. SCULLION:

Page 783

Page 784



Page 785

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 786

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 787

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 788

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23        MS. SCULLION:  Want to take a
24   short break.
```



Page 789

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13          Q.    Okay.  And Exhibit 7 is a copy of
14  the June 2007 Risk Minimization Action Plan for
15  Opana ER; correct?
16          A.    Yes, it is.
17          Q.    We've marked it again in the
18  upper right-hand corner with E numbers, we have
19  E554.  If you'll go to E544.7, looking at the
20  first full paragraph begins "While addiction."
21          Do you see that?
22          A.    I do, yes.
23          Q.    Okay.  And going to the second
24  sentence of that paragraph reads, "Although lack
```





Page 797

Page 798

Page 799

Page 800

```
20        MS. SCULLION:  I think that's all
21   I have today.
22        THE VIDEOGRAPHER:  Going off the
23   record at 12:41.
24        (Pause.)
```

Page 801

1    THE VIDEOGRAPHER:  We are back on
2  the record at 12:43.
3  BY MR. LENISKI:
4    Q.    Good afternoon, Mr. Lortie.  My
5  name is Joe Leniski, we met previously.  I
6  represent plaintiffs in the state of Tennessee,
7  and I'm going to adopt for purposes of this
8  examination the same objection that we made in
9  your -- the prior iteration of your examination
10  back in, I guess, that was January of this year.
11    MR. LENISKI:  Is that fair?
12    MR. LIMBACHER:  You'd have to
13  remind me exactly what that is.
14    MR. LENISKI:  It was an objection
15  to scope, lack of notice, lack of
16  producing documents, time allotted, et
17  cetera.
18    MR. LIMBACHER:  Well, we
19  acknowledge your position, but I'm not
20  sure we agree with it, but go ahead with
21  your questioning.
22    MR. LENISKI:  That's fair enough.
23  BY MR. LENISKI:
24    Q.    Mr. Lortie, would you please pull

Page 802

1  out Exhibit Campanelli-212 that was shown to you
2  earlier today?
3    A.    Yes, I have that.
4    Q.    And keeping in mind that this
5  is -- my questions are going to be covered under
6  the scope of the topics as agreed to between
7  counsel for Endo and counsel for the MDL, I want

Page 803

Page 804



Page 805



BY MR. LENISKI:
17
18      Q.    Consistent with your designation
19  under Topic 32, in which you're designated to
20  testify about your process for ensuring
21  compliance with, among other things, state laws
22  and regulations concerning the sale of opioids,
23  and I'm paraphrasing, with respect to suspected
24  abuse and diversion issues, did Endo understand

Page 806

1   that Tennessee regulates distribution of
2   controlled substances within its borders?
3           MR. LIMBACHER: Same objections.
4           THE WITNESS: I don't know.
5   BY MR. LENISKI:
6       Q.    Okay.  Did Endo understand --
7   have an understanding under Tennessee law
8   prescription opioids are defined as Schedule II
9   controlled substances because they inherently
10  have a "high potential for abuse" and "they may
11  lead to severe psychic or physical dependence"?
12          MR. LIMBACHER: Same objections.
13          It's beyond the scope of the topics on
14          which he's been designated.
15          THE WITNESS: I don't know
16          specifically with regards to Tennessee.
17  BY MR. LENISKI:
18      Q.    Did anyone understand that as a
19  condition of Endo being permitted to distribute
20  its opioid products in Tennessee, that Tennessee
21  law required it to maintain appropriate
22  safeguards against abuse and diversion?
23          MR. LIMBACHER: Same objections.
24          THE WITNESS:  I don't know with

Page 807

1           regards to Tennessee specifically.
2   BY MR. LENISKI:
3       Q.    At any time did Endo use any
4   process for complying with Tennessee's
5   requirements that Endo maintain "appropriate
6   safeguards" against abuse or diversion of
7   prescription opioids?
8           MR. LIMBACHER: Same objections.
9           THE WITNESS: Again, with regards
10          to Tennessee specifically, I do not
11          know.
12  BY MR. LENISKI:
13      Q.    Okay.  Do you know whether any --
14  there was any process used by Endo to ensure
15  that it was complying with Tennessee law that
16  was unique or particular to Tennessee law?
17          MR. LIMBACHER: Same objections.
18          THE WITNESS: With regards to
19          Tennessee specifically, I don't know.
20  BY MR. LENISKI:
21      Q.    Okay.  Did Endo understand that
22  as a condition of Endo being permitted to
23  distribute its opioid products in Tennessee,
24  that it had to ensure that the drugs were only

Page 808

1   being distributed to serve "legitimate medical
2   purposes"?
3           MR. LIMBACHER: Same objections.
4           THE WITNESS: With regards
5           specifically to Tennessee, I don't know.
6   BY MR. LENISKI:
7       Q.    Okay.  At any time did Endo
8   employ or utilize any processes for complying or
9   ensuring that it was complying with Tennessee's
10  requirement that prescription opioids only be
11  distributed to serve legitimate medical
12  purposes?
13          MR. LIMBACHER: Same objections.
14          THE WITNESS: Beyond those for
15          all states, with regards to Tennessee, I
16          don't know.
17  BY MR. LENISKI:
18      Q.    So you're not aware of any
19  particularly unique or otherwise process used by
20  Endo to comply with Tennessee law in that
21  regard?
22          MR. LIMBACHER: Same objections.
23          THE WITNESS: That's correct.
24  BY MR. LENISKI:

Page 809

1    Q.    Did Endo understand that if it
2  did not comply with those precepts of Tennessee
3  law that it would be unlawful for Endo to
4  distribute prescription opioids in that state?
5              MR. LIMBACHER:  Same objections.
6              THE WITNESS:  With regards
7          specifically to Tennessee, I don't know.
8  BY MR. LENISKI:
9    Q.    Okay.  Did Endo pursuant to its
10  processes to address abuse and diversion in the
11  state of Tennessee ever consider halting the
12  sale and marketing of Schedule II pharmaceutical
13  opioids in that state?
14              MR. LIMBACHER:  Same objections,
15          and I believe that was asked and
16          answered previously of Mr. Lortie.
17              THE WITNESS:  I don't recall
18          specifically, no.
19  BY MR. LENISKI:
20    Q.    And just so we're clear, given
21  the objection, I'm asking about any
22  pharmaceutical opioids, not just Opana ER; is
23  that clear?
24    A.    That's clear, yes.

Page 810

1    Q.    Okay.  And your answer would
2  still be the same; that you're not aware of
3  any -- as part of any process for addressing
4  abuse and diversion in the state of Tennessee,
5  you're not aware of any efforts by Endo to -- or
6  discussions about halting the sale of
7  prescription opioids in that state, correct?
8              MR. LIMBACHER:  Same objections
9          and asked and answered.
10              THE WITNESS:  Yeah, again,
11          referencing my previous testimony, I
12          think we had a discussion about that,
13          but I don't recall specifically any
14          beyond that.
15  BY MR. LENISKI:
16    Q.    Okay.  The questions I'm going to
17  be asking you now, can we agree that these
18  questions will apply to the time frame after you
19  left Endo in October of 2016; is that clear?
20    A.    Okay.



Page 811

Page 812

Page 813



Page 814

BY MR. LENISKI:

Q.    At the time you left the company, was Endo familiar with the pro -- or aware of the problem of opioid abuse by expectant mothers in Tennessee resulting in babies being born with what I'll call neonatal abstinence syndrome?

MR. LIMBACHER:  Same objections.

THE WITNESS:  That I do not know.

BY MR. LENISKI:

Q.    Okay.  Do you know as a foundational question what neonatal abstinence syndrome is?

A.    Not specifically, I'm not a medical professional, but I think I can draw a conclusion as to what you're referring to.

Q.    Okay.  Well, as Endo's corporate representative at the time of your departure in 2016, was one issue that Endo was aware of

Page 815

regarding abuse and diversion of its product the relatively high rate of babies born with neonatal abstinence syndrome in the state of Tennessee?

MR. LIMBACHER:  Object as beyond the scope of the topics on which he's been designated.

THE WITNESS:  I'm not aware of that.

BY MR. LENISKI:

Q.    Okay.  Did Endo implement any processes for -- used in the monitoring, investigation, reporting or halting of NAS births in Tennessee following your departure?

MR. LIMBACHER:  Same objections.

THE WITNESS:  I'm not aware.

(Document marked for identification as Endo-Lortie Deposition Exhibit No. 75.)

BY MR. LENISKI:

Q.    One exhibit for you.  Hand you a document identified as Exhibit 75 to your

Page 816

Page 817

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12          MR. LENISKI:  Subject to recross,
13  I have no further questions.
14          THE VIDEOGRAPHER:  Going off the
15  record at 12:59 p m.
16          (Witness excused.)
17          - - -
18
19
20
21
22
23
24
```

Page 818

```
 1          C E R T I F I C A T I O N
 2          I, MARGARET M. REIHL, a
 3  Registered Professional Reporter,
 4  Certified Realtime Reporter, Certified
 5  Shorthand Reporter, Certified LiveNote
 6  Reporter and Notary Public, do hereby
 7  certify that the foregoing is a true and
 8  accurate transcript of the testimony as
 9  taken stenographically by and before me
10  at the time, place, and on the date
11  hereinbefore set forth.
12          I DO FURTHER CERTIFY that I
13  am neither a relative nor employee nor
14  attorney nor counsel of any of the
15  parties to this action, and that I am
16  neither a relative nor employee of such
17  attorney or counsel, and that I am not
18  financially interested in the action.
19
20
21  ----------------------------
    Margaret M. Reihl, RPR, CRR, CLR
22  CSR #XI01497  Notary Public
23
24
```

Page 819

```
 1          - - - - - -
 2          E R R A T A
 3          - - - - - -
 4  PAGE  LINE  CHANGE
 5  ____  ____  _____
 6  REASON: _____
 7  ____  ____  _____
 8  REASON: _____
 9  ____  ____  _____
10  REASON: _____
11  ____  ____  _____
12  REASON: _____
13  ____  ____  _____
14  REASON: _____
15  ____  ____  _____
16  REASON: _____
17  ____  ____  _____
18  REASON: _____
19  ____  ____  _____
20  REASON: _____
21  ____  ____  _____
22  REASON: _____
23  ____  ____  _____
24  REASON: _____
```

Page 820

```
 1     ACKNOWLEDGMENT OF DEPONENT
 2
 3          I, BRIAN LORTIE, do hereby
 4  certify that I have read the foregoing
 5  pages, and that the same is a correct
 6  transcription of the answers given by me
 7  to the questions therein propounded,
 8  except for the corrections or changes in
 9  form or substance, if any, noted in the
10  attached Errata Sheet.
11
12
13
    _____
14  BRIAN LORTIE            DATE
15
    Subscribed and sworn to before me this
16
    _____ day of _____, 2019.
17
    My commission expires:_____
18
    _____
19
    Notary Public
20
21
22
23
24
```