Page 397

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF OHIO
 3                      EASTERN DIVISION
 4
                    ~~~~~~~~~~~~~~~~~~~~~
 5
 6      IN RE:  NATIONAL PRESCRIPTION   MDL No. 2804
        OPIATE LITIGATION
 7                                   Case No. 17-md-2804
 8                                   Judge Dan Aaron
        This document relates to:     Polster
 9
10      The County of Cuyahoga v. Purdue
        Pharma L.P., et al.
11      Case No. 18-OP-45090
12      City of Cleveland, Ohio v. Purdue
        Pharma L.P., et al
13      Case No. 18-OP-45132
14      The County of Summit, Ohio, et al.
        v. Purdue Pharma L.P., et al.
15      Case No. 17-OP-45004
16                  ~~~~~~~~~~~~~~~~~~~~~
17                      Volume III
                  Continued deposition of
18                      JOHN PRINCE
19
                       May 23, 2019
20                       1:04 p.m.
21
                        Taken at:
22                     Ulmer & Berne
                1660 W. 2nd Street, Suite 1100
23                     Cleveland, Ohio
24
25            Renee L. Pellegrino, RPR, CLR
```

Page 398

```
 1    APPEARANCES:
 2    On behalf of Summit County and City of Akron:
         Motley Rice
 3       JAMES W. LEDLIE, ESQ.
         28 Bridgeside Boulevard
 4       Mt. Pleasant, South Carolina  29464
         (843) 216-9229
 5       jledlie@motleyrice.com
 6    On behalf of the City of Cleveland:
         Baron & Budd
 7       STERLING CLUFF, ESQ.
         15910 Ventura Boulevard
 8       Encino, California  91436
         (818) 839-2333
 9       scluff@baronbudd.com
10    On behalf of the United States Department of Justice
      and Drug Enforcement Administration:
11       United States Attorney's Office
         JAMES R. BENNETT, II, ESQ.
12       RENEE A. BACCHUS, ESQ.
         United States Courthouse
13       801 West Superior Avenue
         Suite 400
14       Cleveland, Ohio  44113
         (216) 622-3988
15       James.bennett4@usdoj.gov
         renee.bacchus@usdoj.gov
16
      On behalf of the U.S. Drug Enforcement
17    Administration:
         JOHN J. CIPRIANI, ESQ.
18       431 Howard Street
         Detroit, Michigan  48226
19       (313) 234-4002
         john.j.cipriani@usdoj.gov
20
      On behalf of Walmart, Inc.:
21       Jones Day
         CHRISTOPHER M. McLAUGHLIN, ESQ.
22       North Point, 901 Lakeside Avenue
         Cleveland, Ohio  44114-1190
23       (216) 586-3939
         cmmclaughlin@jonesday.com
24
25                       ~ ~ ~ ~ ~
```

Page 399

```
1    APPEARANCES, CONT'D:
2    On behalf of CVS Indiana, LLC and CVS Rx Services,
     LLC:
3        DANIEL P. MOYLAN, ESQ.
         100 East Pratt Street
4        Suite 2440
         Baltimore, Maryland  21202-1031
5        (410) 949-1159
         dmoylan@zuckerman.com
6
     On behalf of Endo Pharmaceuticals, Inc., Endo
7    Health Solutions, Inc., Par Pharmaceuticals,
     Inc. and Par Pharmaceutical Companies, Inc.:
8        Arnold & Porter
         WILSON D. MUDGE, ESQ.
9        601 Massachusetts Avenue, NW
         Washington, D.C.  20001-3743
10       (202) 942-5743
         wilson.mudge@arnoldporter.com
11
     On behalf of McKesson Corporation:
12       Covington & Burling LLP
         BENJAMIN C. BLOCK, ESQ.
13       STEPHEN RAIOLA, ESQ.
         One CityCenter
14       850 Tenth Street NW
         Washington, D.C.  200001-4956
15       (202) 662-5205
         bblock@cov.com
16       sraiola@cov.com
17   On behalf of HBC Service Company:
         (Via Telephone)
18       Marcus & Shapira LLP
         ERIN GIBSON-ALLEN, ESQ.
19       One Oxford Centre, 35th Floor
         Pittsburgh, Pennsylvania  15219
20       (412) 338-3344
         allen@marcus-shapira.com
21
     On behalf of Mallinckrodt, LLC:
22       Ropes & Gray LLP
         JOSH GOLDSTEIN, ESQ.
23       800 Boylston Street
         Boston, Massachusetts  02199
24       (617) 951-7000
         joshua.goldstein@ropesgray.com
25                       ~ ~ ~ ~ ~
```

```
 1    APPEARANCES, CONT'D:
 2    On behalf of Janssen and Johnson & Johnson:
          Tucker Ellis
 3        RAYMOND KRNCEVIC, ESQ.
          950 Main Avenue, Suite 1100
 4        Cleveland, Ohio  44113
          (216) 696-4889
 5        raymond.krncevic@tuckerellis.com
             - and -
 6        (Via Telephone)
          O'Melveny & Myers
 7        MATT WALLACE, ESQ.
          400 South Hope Street
 8        18th Floor
          Los Angeles, California  90071
 9        (213) 430-6000
          mwallace@omm.com
10
       On behalf of AmerisourceBergen Drug Corporation:
11        Jackson Kelly
          SANDRA K. ZERRUSEN, ESQ.
12        50 South Main Street
          Suite 201
13        Akron, Ohio  44308
          (330) 252-9060
14        skzerrusen@jacksonkelly.com
15    On behalf of Rite-Aid of Maryland:
          (Via Telephone)
16        Morgan Lewis
          JOHN P. LAVELLE, JR., ESQ.
17        1701 Market Street
          Philadelphia, Pennsylvania  19103-2921
18        (215) 963-4824
          john.lavelle@morganlewis.com
19
      On behalf of Walgreens:
20        (Via Telephone)
          Bartlit Beck
21        ALEX J. HARRIS, ESQ.
          1801 Wewatta Street
22        Suite 1200
          Denver, Colorado  80202
23        (303) 592-3197
          alex.harris@bartlit-beck.com
24                        ~ ~ ~ ~ ~
25
```

Page 401

1    APPEARANCES, CONT'D:

2    On behalf of Henry Schein:
         (Via Telephone)
3        Locke Lorde
         MADELEINE E. BRUNNER, ESQ.
4        2200 Ross Avenue
         Suite 2800
5        Dallas, Texas  75201
         (214) 740-8000
6        maddie.brunner@lockelord

7    ALSO PRESENT:

8        Special Master David Cohen

9
                      ~ ~ ~ ~ ~

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1             TRANSCRIPT INDEX

2

3    APPEARANCES ...................................398

4    INDEX OF EXHIBITS .............................403

5    INDEX OF OBJECTIONS ...........................404

6

7    EXAMINATION OF JOHN PRINCE:

8    BY MR. BLOCK ..................................406

9

10    REPORTER'S CERTIFICATE ........................476

11

12    EXHIBIT CUSTODY - RETAINED BY COURT REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 403

1                    INDEX OF EXHIBITS

2

3      Number              Description              Marked

4

5    Exhibit 28    Two-Page Document Entitled        456
                   "Police Department, Cleveland,
6                  Ohio, Departmental Information,"
                   Dated November 4, 2012,
7                  Beginning Bates Number
                   CLEVE_002712031

8

     Exhibit 29    E-Mail String Beginning Bates     467
9                  Number CLEVE_002518554

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 404

1              INDEX OF OBJECTIONS
2
3    Objection ....................................409
     Objection ....................................410
4    Objection ....................................412
     Objection ....................................413
5    Objection ....................................414
     Objection ....................................415
6    Objection ....................................419
     Objection ....................................420
7    Objection ....................................421
     Objection ....................................423
8    Objection ....................................424
     Objection ....................................425
9    Objection ....................................425
     Objection ....................................425
10   Objection ....................................425
     Objection ....................................426
11   Objection ....................................426
     Objection ....................................428
12   Objection ....................................430
     Objection ....................................430
13   Objection ....................................431
     Objection ....................................431
14   Objection ....................................431
     Objection ....................................433
15   Objection ....................................434
     Objection ....................................436
16   Objection ....................................436
     Objection ....................................437
17   Objection ....................................438
     Objection ....................................438
18   Objection ....................................438
     Objection ....................................438
19   Objection ....................................438
     Objection ....................................439
20   Objection ....................................440
     Objection ....................................440
21   Objection ....................................440
     Objection ....................................440
22   Objection ....................................440
     Objection ....................................441
23   Objection ....................................441
     Objection ....................................442
24   Objection ....................................442
     Objection ....................................443
25   Objection ....................................443

1            INDEX OF OBJECTIONS, CONT'D
2
3    Objection ....................................444
     Objection ....................................444
4    Objection ....................................445
     Objection ....................................447
5    Objection ....................................447
     Objection ....................................447
6    Objection ....................................448
     Objection ....................................448
7    Objection ....................................448
     Objection ....................................448
8    Objection ....................................449
     Objection ....................................450
9    Objection ....................................450
     Objection ....................................450
10   Objection ....................................451
     Objection ....................................452
11   Objection ....................................452
     Objection ....................................453
12   Objection ....................................454
     Objection ....................................454
13   Objection ....................................454
     Objection ....................................454
14   Objection ....................................455
     Objection ....................................455
15   Objection ....................................459
     Objection ....................................459
16   Objection ....................................460
     Objection ....................................461
17   Objection ....................................461
     Objection ....................................461
18   Objection ....................................462
     Objection ....................................464
19   Objection ....................................464
     Objection ....................................465
20   Objection ....................................465
     Objection ....................................465
21   Objection ....................................466
     Objection ....................................466
22   Objection ....................................466
     Objection ....................................467
23   Objection ....................................471
     Objection ....................................471
24   Objection ....................................472
     Objection ....................................472
25

1          MR. BLOCK:  We're now about to begin

2   the continued deposition of Detective John

3   Prince, and all counsel that were present for

4   the continued depositions of Detectives Leonard

5   and Baker-Stella are still here, with the

6   exception of Mr. Ledlie, who has departed, and

7   Mr. Cluff is here.

8          Is there anybody new on the phone

9   that wasn't at the prior two depositions?

10          Then could you please swear the

11   witness?

12      JOHN PRINCE, of lawful age, called for

13   examination, as provided by the Federal Rules of

14   Civil Procedure, being by me first duly sworn,

15   as hereinafter certified, deposed and said as

16   follows:

17          EXAMINATION OF JOHN PRINCE

18   BY MR. BLOCK:

19      Q.    Good afternoon, Detective Prince.

20      A.    Good afternoon.

21      Q.    How are you today?

22      A.    Good.  How are you doing?

23      Q.    Fine.  Thanks.

24          Did you do anything to prepare for

25   this portion of your deposition?

Page 407

1         A.    Yes.

2         Q.    What did you do?

3         A.    I had a meeting with counsel.

4         Q.    Is that Mr. Cluff?

5         A.    Yes.

6         Q.    Anyone else?

7         A.    Yes.

8         Q.    Who else?

9         A.    That would be --

10        Q.    Mr. Bennett?

11        A.    Yes, Mr. Bennett.  That's it.

12        Q.    Did you review the transcripts from

13   the prior installments of your deposition?

14        A.    I reviewed them at the instruction

15   of counsel for any changes or mistakes, yes.

16        Q.    I'm not aware of getting an errata

17   sheet.  Did you see anything that you needed to

18   change or fix?

19        A.    I did not.

20        Q.    Have you talked to anyone about this

21   case in any way, shape or form other than

22   counsel since we last saw you?

23        A.    Other than to say, again, that I was

24   having a deposition, they were having

25   depositions, and when, no.

Page 408

1          Q.    Who were the people you told you
2     were having this deposition?
3          A.    My partner.
4          Q.    And who is that?
5          A.    Shelly Patena.  I think I must have
6     talked to Ms. Baker-Stella and probably to
7     Patrick Leonard.
8          Q.    Did either Detective Leonard or
9     Detective Baker-Stella say anything to you about
10    their depositions?
11         A.    No, sir, other than they were
12    getting deposed also, if that counts.
13         Q.    You didn't see transcripts of their
14    depositions?
15         A.    No, sir.
16         Q.    And Detective Patena -- did I
17    pronounce that correctly?
18         A.    Correct.
19         Q.    Is she a City of Cleveland -- who
20    does she work for?
21         A.    Cleveland narcotics unit.
22         Q.    Is she assigned to the TDS?
23         A.    She is not.
24         Q.    But she's still your partner?
25         A.    At the Cleveland narcotics unit,

Page 409

1    yes.

2         Q.    How long has she been your partner?

3         A.    Since 2012.

4         Q.    And remind me again, the date you

5    started with the TDS was when?

6         A.    January -- I'm not sure exactly what

7    the date was -- 2018, so just over a bit of a

8    year.

9         Q.    And are you having fun so far on the

10   TDS?

11             MR. CLUFF:  Objection.  Vague.

12        A.    I don't call it fun, no.

13        Q.    Are you enjoying your work at the

14   TDS?

15        A.    It has its moments.

16        Q.    I take it that means both good

17   moments and bad moments?

18        A.    That would be fair to say, yes.

19        Q.    Are you looking to get off of the

20   TDS?

21        A.    I am actually going to retire in

22   roughly 18 -- I'm sorry, eight months and maybe

23   22 days, or something like that.

24        Q.    Not that you're counting.

25        A.    No.

Page 410

1      Q.    That's to retire from both the TDS
2  and the City of Cleveland?
3      A.    That's to retire from the City of
4  Cleveland, which is an automatic retirement with
5  TDS.
6      Q.    And what's next for you?
7      A.    I don't know yet.
8      Q.    Why are you retiring?
9      A.    I'm getting -- the easiest answer is
10  I'm getting timed out.  I have to leave.
11      Q.    And how many years -- or what's the
12  time limit that you're hitting?
13          MR. CLUFF:  Objection.  Compound.
14      A.    I am in the DROP program.  It's
15  fairly complicated, but the bottom line is that
16  I have a date that I must retire by, and that
17  will -- I will reach that in February of 2020.
18      Q.    And so how many years will it be of
19  work for the force when you retire?
20      A.    For the force it will be a total of
21  close to 30, and I have been in law enforcement
22  for -- I think I'm closing in on 36 or 37 years.
23      Q.    Will you work at TDS up until the
24  day of your retirement or is someone going to
25  come in and replace you before then?

Page 411

1          A.    I don't know.

2          Q.    Do you know if there's a search

3    underway for a replacement for you in terms of

4    the TDS assignment?

5          A.    I don't know.

6          Q.    Would you recommend it to Detective

7    Patena?

8          A.    Under certain circumstances, yes.

9    Again, that's very complicated, that I can't

10   exactly -- wouldn't be fair to answer yes or no.

11         Q.    What are some of the circumstances

12   that go into it?

13         A.    One of the circumstances is that

14   she's the only remaining Cleveland diversion

15   detective, so that would leave a problem with

16   not having another diversion detective there, as

17   well as potentially the strains of her, which I

18   have had, of, you know, working for Cleveland as

19   well as my obligation to TDS.

20         Q.    Do you think the City of Cleveland

21   should continue to assign someone to the TDS

22   after you depart?

23         A.    Yes.

24         Q.    And if someone were to ask you, you

25   know, whoever the person is, should I think

Page 412

1   about taking the TDS assignment, what would you

2   say are the top -- the three best things about

3   working at the TDS?  And I'm going to ask you

4   the three worst, just so you know where I'm

5   going here.

6        A.    The additional resources, I think

7   you're working with a good group of people, and

8   the potential experience and other things that

9   you will learn or be exposed to.

10       Q.    Did I paraphrase that correctly, it

11  might be a broader experience?

12            MR. CLUFF:  Objection.  Misstates

13  testimony.

14       A.    I think what I'm trying to say is

15  you'll be exposed to a larger scope of law

16  enforcement.

17       Q.    Let's get them on the table and then

18  I can go back.  What would you say are the three

19  least -- three worst parts of the job or the

20  three factors that would be least --

21       A.    Paperwork.  We'll go with paperwork.

22  Why don't we try paperwork.

23       Q.    That's all three?  Anything else

24  besides paperwork?

25       A.    The redundancy of paperwork.

1          Q.    And anything else?

2          A.    The fact that you're doing more

3     paperwork that you thought you already did.

4               SPECIAL MASTER COHEN:  Let me

5     suggest you should not become an attorney when

6     you retire.

7               MR. BLOCK:  By the way, Special

8     Master Cohen, did you introduce yourself to

9     Detective --

10              SPECIAL MASTER COHEN:  I did.  Thank

11    you for asking.

12         Q.    But isn't there a Paperwork

13    Reduction Act?

14              MR. CLUFF:  Objection.  Calls for a

15    legal opinion.

16         A.    I don't know.

17         Q.    And I take it you do more paperwork

18    in your time at the TDS than you did prior to

19    joining TDS?

20         A.    I'm doing paperwork for the City of

21    Cleveland as well as the responsibilities or the

22    paperwork that now is part of TDS.

23         Q.    The additional resources that are a

24    plus, what did you have in mind by that?  What

25    are the additional resources?

1        A.    Funding.

2        Q.    Anything else?

3        A.    People.

4        Q.    By that --

5        A.    Additional agents, more -- you have

6    a group or a pool of people that can assist

7    you --

8        Q.    Okay.

9        A.    -- and -- run that back.

10        Q.    You said additional resources was a

11    potential plus of joining the TDS for someone.

12        A.    And equipment.

13        Q.    What kinds of equipment?

14            MR. BENNETT:  Objection.  Scope.

15            You're not authorized to disclose

16    non-public law enforcement investigative

17    techniques, including the equipment used.  To

18    the extent that there is equipment that is

19    publicly known and available, you may discuss

20    that equipment.

21        A.    So the answer is they have

22    additional equipment.

23        Q.    We'll come back to that.

24            When you say the people -- is that

25    because the TDS -- there are more people at the

Page 415

1   TDS than there were at the City of Cleveland

2   narcotics unit?

3           MR. CLUFF:  Objection.  Vague.

4       Q.    I'll try to ask it a different way.

5           I think you said one potential

6   downside for Detective Patena is if she went to

7   TDS, then there wouldn't be anyone at Cleveland

8   doing diversion investigations.  Did I get that

9   right?

10          MR. CLUFF:  Misstates testimony.

11      A.    If she was to go to TDS, as things

12  are status quo, her and I are the only two

13  narcotics detectives who are assigned to

14  diversion or compliance enforcement, so with

15  assuming that I was already out of the picture,

16  that would just leave her, and then if she was

17  to go to TDS, then that would leave no detective

18  who has -- that would be assigned to diversion

19  or compliance.

20      Q.    The work that you do for TDS today,

21  do you consider that to be diversion work?

22      A.    Yes.

23      Q.    Do you consider the work you do for

24  TDS to be compliance enforcement work?

25      A.    If I may restate that.  Compliance

Page 416

1  and diversion to me are synonyms, they are the

2  same, potato potato (phonetic).  It's the same

3  thing.

4       Q.    So coming back to the people being

5  an additional resource, were you referring to

6  people other than the members of the TDS in your

7  answer?  Do you remember telling me a pro of

8  going to TDS would be additional resources,

9  which would include people?

10            MR. CLUFF:  Misstates testimony.

11            MR. BLOCK:  No, it doesn't.

12       Q.    I'm wondering by people were you

13  referring to people other than the ones

14  currently assigned to the TDS.

15       A.    Yes, if needed, but the amount of

16  agents in TDS is -- I think you were asking

17  where the pluses are.  That you had this larger

18  pool of agents, detectives to assist.

19       Q.    In terms of funding, what do you

20  understand the difference in funding to be

21  between TDS versus City of Cleveland?

22       A.    I work for the City of Cleveland.  I

23  think if you look at our equipment, our cars and

24  things like that, it almost speaks for itself in

25  the sense that at times throughout my career

Page 417

1  things have been very, very tight and have made

2  it difficult to do police work without, you

3  know, assisting in some ways, but TDS is funded

4  so that some of the difficulties that I

5  experienced as a Cleveland police officer aren't

6  there.

7          Q.    What difficulties are you referring

8  to?

9          A.    Equipment.  The simplest thing.

10  Copy machines not working.

11          Q.    It cuts down on the paperwork.

12          A.    Yes, it does, but it doesn't stop

13  you from doing cases.  You have to get creative.

14  Vehicles, vehicles for -- for fellow detectives.

15  Not getting into how we do things, but there are

16  certain protocols that you need certain things

17  to happen for certain types of investigations,

18  and that could be difficult at times.

19          Q.    You said that I think a third plus

20  could be the exposure to a greater scope of law

21  enforcement, something close to that.

22          A.    What I meant by that was the federal

23  laws and statutes and how they are enforced,

24  what -- a whole other, if you would, chapter in

25  law specifically related to diversion or

Page 418

1   compliance.

2        Q.    So are there types of diversion

3   cases that you've worked on at TDS that are new

4   to you, different from the types of cases you

5   worked on before you joined TDS?

6        A.    Yes.

7        Q.    And what types are we talking about

8   there?

9             MR. BENNETT:  You can answer that.

10  General, not specific cases.

11       A.    The types of cases I would say are

12  larger in scope, larger in the -- where the

13  locality is or multiple localities, and the type

14  of laws being enforced.

15       Q.    And what do you mean by that second

16  part, the type of laws?

17       A.    The more -- I would say regulatory

18  maybe in nature.

19       Q.    Can you give an example of the type

20  of law you're referring to, not a specific case

21  but I'm trying to understand this a little more?

22       A.    As a Cleveland detective, I was

23  guided by a few basic statutes that dealt

24  specifically with compliance.  Almost all my

25  cases were within that.  This has widened,

Page 419

1    adding additional laws or things that come into

2    play as far as under the umbrella of what TDS

3    does.

4         Q.    I want to talk a little bit about

5    the types of investigation, types and numbers of

6    investigations that you've worked on at TDS as a

7    TDS officer.  Is that the right way to say it?

8    As someone assigned to TDS, okay?  Do you

9    understand that's the scope of what we're

10   talking about?

11        A.    So we're specifically talking about

12   only cases that I have worked on as a TFO, which

13   is a task force officer, for the TDS of DEA?

14        Q.    Yes.  As a TFO have you worked on

15   any investigations involving southern style pill

16   mills?

17             MR. CLUFF:  Objection.  Vague.

18        A.    If you would, just so we're on the

19   same page, my interpretation of a southern

20   style -- I just want to make sure --

21        Q.    I was trying to shortcut it from

22   your last deposition.

23        A.    If we're using my definition from

24   the last --

25        Q.    Yes.

1      A.    Have I worked on any southern style,

2  I don't believe so.

3      Q.    And as a TFO, have you worked on any

4  investigations involving other kind of pill

5  mills or the non-southern style pill mills?

6           MR. BENNETT:  You can answer that

7  question yes or no.

8      A.    Yes.

9      Q.    How many?

10     A.    Numerous.  I'm not sure I can put a

11  number.

12     Q.    How many -- please.  Go ahead.

13     A.    Understanding again, and this -- I

14  can repeat it, but I've only been there a year,

15  a little bit over a year, and obviously the

16  first part of that was trying to get me up to

17  some kind of working speed, so I've worked on

18  numerous, less than ten.

19     Q.    And do you know how many

20  investigations have you worked on -- just

21  investigations total have you worked on as a TFO

22  in the year or so that you've been there?

23          MR. BENNETT:  Objection.  Vague.

24          You can answer.

25     A.    How many investigations have I

1  worked on, assisted on, done anything with?

2          Q.    Yes, done anything with.

3          A.    I'm not sure.  Again, it would be

4  numerous.

5          Q.    Is it more than a dozen?

6          A.    Yes.

7          Q.    Is it more than two dozen?

8          A.    I would say it's in that range.

9          Q.    Okay.  Is it more than three dozen?

10         A.    No.

11         Q.    So somewhere between two and three

12  dozen?

13         A.    I think that's fair, yes.

14         Q.    Have you worked on any -- and have

15  you worked on any investigations as a TFO into

16  improper prescribing?

17              MR. CLUFF:  Objection.  Vague.

18         A.    Improper prescribing is?

19         Q.    Well, do you have an understanding

20  of what you would consider an improper

21  prescribing investigation to be looking into?

22         A.    Yes.  I would call that trafficking.

23         Q.    Okay.

24         A.    If that's -- and are we talking

25  about a prescriber who was improperly

1    prescribing, because we also have groups that

2    are producing their own prescriptions and

3    prescribing -- you know, making -- is that

4    improper prescribing?  It is to me.

5          Q.    It's improper, that's fair.  But

6    let's say a licensed medical professional who's

7    believed to be improperly prescribing

8    medications.  Can we agree --

9          A.    That's what we're talking about,

10   okay.

11         Q.    Have you worked on any of those --

12   when I say "improper prescribing," that's what

13   I'll be talking about today.

14         A.    You're talking about a doctor who is

15   potentially trafficking?

16         Q.    Right.

17         A.    The answer is yes.

18         Q.    How many of those investigations

19   have you worked on as a TFO?

20         A.    Numerous.  I'm not quite sure.  More

21   than four.  It could be more than that.  It is

22   more than four.

23         Q.    Is it more than ten?

24         A.    Probably not.

25         Q.    If we can get the bracket, that's

Page 423

1   great.  That's what I'm trying to get at here.

2                   And as a TFO, have you worked on any

3   cases involving forged prescriptions?

4         A.    Yes.

5         Q.    How many of those investigations?

6         A.    Several.

7         Q.    Less than four, less than a handful?

8                   MR. BENNETT:  Objection.  Vague.

9                   MR. BLOCK:  A handful is five.  I

10  don't think that's vague.

11                  MR. BENNETT:  Depends on how big

12  your hand is and the item you're holding.

13        Q.    Is it less than five?

14        A.    I'm thinking that it's probably more

15  than five.

16        Q.    Less than ten?

17        A.    Considering that I'm -- I think we

18  said I'm at a dozen, yeah.  A lot of the cases

19  have multiple types of violations in them.

20        Q.    Sure.  So the numbers may overlap?

21        A.    Yes.  So I'm going to say yes.

22        Q.    Have you worked on any

23  investigations as a TFO into potential doctor

24  shopping?

25        A.    I don't believe so.

Page 424

1          Q.    How about in terms of -- and who
2     determines what investigations you work on as a
3     TFO?
4          A.    My group supervisor ultimately
5     determines that or I speak with him.
6          Q.    Is that Mr. Charters?
7          A.    Yes.
8          Q.    Has he been the group supervisor the
9     whole time?
10         A.    Yes.
11         Q.    And do you know how he determines
12    what cases he wants you to work on?
13              MR. CLUFF:  Objection.  Calls for
14    speculation.
15         A.    No.  I'm not sure.
16         Q.    And as a TFO, have you worked on any
17    investigations where the investigation was into
18    a pharmacist?
19              MR. BENNETT:  You can answer that
20    question yes or no only.
21         A.    Yes.
22         Q.    And how many of those kind of
23    investigations?
24              MR. BENNETT:  You can answer with a
25    number if you can estimate.

Page 425

1      A.     Several.

2      Q.     And are these investigations where

3  the suspicion is that a pharmacist is

4  stealing -- taking medication from the pharmacy

5  that he or she is not supposed to be?

6           MR. CLUFF:  Objection.

7      Q.     Or perhaps I can ask, what is the --

8  can you just -- generally, what's the form of

9  diversion that's suspected?

10           MR. BENNETT:  Objection.

11           MR. CLUFF:  Objection.  Vague.

12           MR. BENNETT:  And objection.  Scope.

13           To the extent you can answer

14  generally the type of cases you investigate

15  involving pharmacists, you may.  To the extent

16  that this requires you to give specific

17  information about ongoing investigations and

18  activities, you're not authorized to disclose.

19  So if you can answer generally the types of

20  cases you work, you may.

21           Regarding pharmacists is your

22  question, right, pharmacists?

23           MR. BLOCK:  Yes.

24      A.     Theft, and I think that's all I'm

25  allowed to answer.

Page 426

1        Q.    Have you worked on any

2   investigations where the focus of the

3   investigation was a pharmacy as a TFO?

4              MR. CLUFF:  Objection.  Vague.

5              Do you mean like the actual pharmacy

6   store or the pharmacy company?

7        Q.    You can answer, Detective Prince.

8        A.    Yes.

9        Q.    How many of those?

10             MR. BENNETT:  You can answer if you

11   know.  If you know the number, you may answer

12   with a number, yes.

13        A.    One.

14        Q.    And have -- let's see.  Have any of

15   the investigations that you've worked on as a

16   TFO resulted in an arrest?

17             MR. BENNETT:  Objection.  Scope.

18             To the extent that the arrest has

19   been made public and there are charges, you are

20   authorized to answer.  To the extent that it's

21   an arrest that was not made public and the case

22   is still under investigation, you are not

23   authorized to answer.

24             MR. BLOCK:  Special Master Cohen, I

25   think I should at least be able to get a yes or

Page 427

```
 1  no to that question without any limitation on
 2  his scope.
 3           SPECIAL MASTER COHEN:  You can
 4  answer yes or no, sir.
 5       A.    Yes.
 6       Q.    How many?
 7       A.    I'm so sorry.  You just went too
 8  fast.  How many arrests --
 9       Q.    How many arrests have there been in
10  investigations that you've worked on as a TFO?
11       A.    Boy, numerous.
12       Q.    More than ten?
13       A.    Yes.
14       Q.    More than a hundred?
15       A.    No.
16       Q.    More than 20?
17       A.    Yes.
18       Q.    More than 50?
19       A.    I don't think so.
20       Q.    And have any of the investigations
21  that you've worked on as a TFO resulted in a
22  conviction?
23       A.    Yes.
24       Q.    How many?
25       A.    Numerous.
```

Page 428

1      Q.    Please identify the names of any

2   individuals who have been convicted that you

3   worked on the investigation as a TFO.

4            MR. CLUFF:  Objection.  Lacks

5   foundation.

6            MR. BENNETT:  You can answer.

7      A.    Sabrina Miskiewicz, et al.  I can't

8   remember the co-defendants.  Part of the case is

9   still ongoing, so --

10     Q.    I'm just asking for the names of the

11  folks that have been convicted, though.

12     A.    Yes, but part of them have pled and

13  I don't know their names.

14     Q.    I can only get what you know.

15     A.    Yes.  I can only give you what I

16  know.  I don't know names.  This is the -- it

17  was public.  It was the promethazine --

18     Q.    Was this a promethazine-codeine

19  ring?

20     A.    Yes.  That originated from the

21  Columbus area.  My understanding is numerous

22  defendants have pled.  My understanding, also,

23  is that several have not.  And I don't

24  remember -- just can't remember their names.

25     Q.    We'll come back to that one.

Page 429

1          Other than the promethazine-codeine
2     ring convictions, are there any other
3     investigations that you've worked on that have
4     resulted in convictions?
5          A.    The fentanyl from China
6     investigation.
7          Q.    Do you remember who was convicted in
8     connection with that?
9          A.    Yinn.  I'm not sure.
10          MR. BENNETT:  And I will interject
11     an objection on scope.
12          You are being asked not who's been
13     charged but who's actually been convicted, so it
14     does need to be convictions.
15          A.    I can't remember anyone else.
16          Q.    Sabrina Miskiewicz, what was she --
17     she?
18          A.    Yes.
19          Q.    What was she convicted for?
20          A.    Prescription ring.
21          Q.    Was that part of the
22     promethazine-codeine case or something
23     different?
24          A.    Something different.
25          Q.    Prescriptions of what?

Page 430

1          MR. BENNETT:  Objection.  Scope.

2          You are authorized to disclose

3    public information about the case.  To the

4    extent you have information that was not made

5    public, you're not authorized to disclose that

6    information.  So if it's in the indictment, what

7    she was indicted for, you're authorized to

8    answer.

9        A.    She was convicted of illegal

10   processing, deception to obtain dangerous drugs,

11   and trafficking.

12       Q.    Was she a medical professional?

13          MR. CLUFF:  Objection.  Vague.

14       A.    I believe that she worked for a

15   physician's office.

16       Q.    Do you know what kinds of medication

17   she was trafficking?  Well, was she trafficking

18   medications?

19       A.    Yes.

20       Q.    Do you know what kinds?

21       A.    I believe Percocet and oxycodone.

22       Q.    And how was she obtaining the

23   Percocet and oxycodone?

24          MR. BENNETT:  Objection.  Scope.

25   Same instructions.

Page 431

1          A.     She was creating prescriptions.

2          Q.     Is that like a forgery case?

3          A.     Part of that would be that, yes.

4          Q.     And then arrested for trafficking,

5    so does that mean -- or convicted for

6    trafficking.  Does that mean she was forging

7    scripts, getting them filled and then selling

8    the pills to other people or trying to at least?

9               MR. CLUFF:  Objection.  Compound.

10   Misstates testimony.

11         A.     If we could go over -- the first

12   part was -- and I'll just answer yes or no.

13         Q.     You said part of the conviction was

14   for trafficking, and I was just wondering does

15   that mean she was getting prescriptions filled

16   and then selling or trying to sell the pills to

17   others?

18              MR. CLUFF:  Same objections.

19         A.     She was forging the prescriptions.

20   She was orchestrating getting them filled.  And

21   the rest isn't public record I'm assuming.

22         Q.     Do you know, how long -- were you

23   the lead agent on -- were you the lead

24   investigator on the Miskiewicz case?

25         A.     Yes.

Page 432

1      Q.    How long did that investigation

2  take?

3      A.    I'm not quite sure, but I'm going to

4  say one to two years.

5      Q.    Was that an investigation that was

6  ongoing when you started TDS and then you took

7  it over?

8      A.    Yes.

9      Q.    How about the ███████████████████

10  ring?  How long did that investigation take?

11      A.    I'm not sure.

12      Q.    Is part of it still ongoing?

13      A.    It has not been fully litigated.

14      Q.    So some people have been convicted

15  but there are others who they've been arrested

16  and they haven't been convicted yet or --

17      A.    Yes.  That's my understanding.

18      Q.    And was that a case that was going

19  on when you -- was that an investigation that

20  was going on when you started at TDS?

21      A.    I believe so.

22      Q.    Were you the lead investigator on

23  that matter?

24      A.    No.

25      Q.    And where did -- I'm sorry that I'm

Page 433

1   jumping around, but back to Ms. Miskiewicz.

2   Where was she from?  Where was the doctor's

3   office?  Let me back up.

4              Where was the doctor's office that

5   she worked at?

6              MR. BENNETT:  You can answer that

7   question if it was publicly disclosed, which I

8   assume it would have to be to establish venue.

9       A.    Parma.

10      Q.    And do you know what type of

11  doctor's practice it was?

12      A.    No.

13      Q.    While we've been talking have you

14  thought of any other matters, investigations

15  that you've worked on at TDS that have resulted

16  in convictions?

17      A.    No.

18      Q.    The fentanyl one that you mentioned,

19  what was the activity that the person was

20  convicted of?  What were they doing with the

21  fentanyl?

22              MR. CLUFF:  Objection.  Vague.

23      A.    Trafficking.

24      Q.    So that means --

25      A.    Selling.

Page 434

1          Q.    And where were they getting the

2     fentanyl from?

3          A.    China.

4          Q.    So that was illicit fentanyl?

5          A.    That is correct.

6          Q.    How many investigations involving

7     illicit fentanyl have you worked on as a TFO?

8               MR. CLUFF:  Objection.  Vague.

9          A.    A few.

10         Q.    More than two?

11         A.    I think so.

12         Q.    More than five?

13         A.    No.

14         Q.    The investigations that you work on

15    at TDS as a TFO, do some of those investigations

16    involve targets outside the city of Cleveland?

17               MR. BENNETT:  You can answer that

18    question yes or no.

19         A.    Yes.

20         Q.    And do you know what the relative

21    proportion is of investigations you're working

22    on where the target is in Cleveland versus

23    outside of Cleveland, you know, the two to three

24    dozen cases?

25         A.    It's some of them.

Page 435

1          Q.    Is one more common than the other,

2     that the target is in Cleveland versus outside

3     of Cleveland?

4          A.    Yes.

5          Q.    Which is more common?

6          A.    More common that the target is

7     inside of Cleveland.

8          Q.    And I forgot.  Miskiewicz was --

9          A.    I'm sorry.  May I correct that?

10         Q.    Please.

11         A.    My explanation as the target is

12    inside of Cleveland means that the activity is

13    taking place in Cleveland, not necessarily that

14    the target lives in Cleveland but that they

15    may -- there's a venue into Cleveland.  They

16    either live in Cleveland and may be doing things

17    inside of Cleveland or outside of Cleveland or

18    they live outside of Cleveland but the activity

19    is taking place in Cleveland.

20         Q.    And I'm having geographic amnesia

21    about Cleveland, about which I'm embarrassed,

22    but the person who worked at the doctor's office

23    in Parma, is that inside of Cleveland?

24         A.    Parma is not inside of Cleveland but

25    much of the activity as far as the prescriptions

Page 436

1    and the crimes were taking place in Cleveland.

2         Q.    Have you ever worked on

3    investigations where the activity was taking

4    place outside the state of Ohio as a TFO?

5         A.    Could you explain that; part of the

6    activity, all the activity?

7         Q.    Sure.

8              Are there cases where any of the

9    activity is outside the state of Ohio?

10        A.    Yes.

11        Q.    Are there investigations that you've

12   worked on as a TFO where the primary activity is

13   outside the state of Ohio?

14             MR. BENNETT:  Objection.  Vague.

15             You can answer yes or no to that

16   question.

17        A.    Yes.

18        Q.    How many of those?

19        A.    A few.

20        Q.    Have you worked on investigations

21   where the primary activity is outside the United

22   States?

23             MR. BENNETT:  Objection.  Vague.

24             You can answer that question yes or

25   no.

Page 437

1           A.    I would say no.

2           Q.    And have you worked on any

3     investigations that didn't involve opioids as a

4     TFO?

5                 MR. BENNETT:  You can answer that

6     yes or no.

7           A.    Yes.

8           Q.    What types of substances other than

9     opioids?

10          A.    The benzodiazepine family as well as

11    steroids, and I believe the methamphetamine

12    family.

13          Q.    How many benzo investigations have

14    you worked on as a TFO?

15          A.    Investigations where benzos were

16    part of the investigation and typically are

17    with -- investigations typically have multiple

18    -- diversions of multiple classifications.

19    Where benzos were in, it would be numerous.

20          Q.    How about where benzos were the

21    focus as opposed to just being in the mix with

22    other stuff?

23                MR. CLUFF:  Objection.  Vague.

24                MR. BENNETT:  Join the objection.

25    Vague.

Page 438

1        A.    Your question is where

2   benzodiazepines were the focus of the

3   investigation?

4        Q.    Right.

5        A.    That would be zero.

6        Q.    Have there been any investigations

7   where steroids were the focus of the

8   investigation that you've worked on as a TFO?

9             MR. CLUFF:  Same objection.

10            MR. BENNETT:  I'll join that

11  objection.

12        A.    My understanding of focus is that --

13  is it -- you're meaning was the main drug

14  involved?

15        Q.    Sure.

16        A.    That would be zero.

17        Q.    And so have there been any

18  investigations that you've worked on as a TFO

19  where the focus was on something other than an

20  opioid?

21            MR. CLUFF:  Same objection.  Asked

22  and answered.

23            MR. BENNETT:  Join the objection.

24  Vague.

25        A.    I don't believe so.

1          Q.    Have you worked on any

2    investigations involving carfentanil as a TFO?

3          A.    I'm not sure.  I'm not sure because

4    it has to be tested.  To come back carfentanil

5    is different than fentanyl.

6          Q.    Is there a particular type of

7    investigation that -- do you focus on one kind

8    or kinds of investigations more than others as a

9    TFO?  And by kinds I mean where you didn't do

10   doctor shopping but your focus is on forgery

11   cases as opposed to overprescribing cases or

12   anything like that.

13         A.    No.

14         Q.    Just whatever they tell you to do,

15   you work on?

16         A.    Yes.

17         Q.    Are there specialists within the TDS

18   for particular types of investigations?

19              MR. CLUFF:  Objection.  Vague.

20   Lacks foundation to show personal knowledge.

21   Might want to check with your authorization to

22   see if you can answer that question.

23              MR. BENNETT:  You can answer that

24   question yes or no if you know, but I will join

25   the objection, vague.

Page 440

1     A.   I'm a little bit confused by what

2 you mean by specialist.  If you mean specialist

3 -- you mean an agent who has a specialty in this

4 type of drug or this type of investigation, my

5 understanding is the answer would be no.

6     Q.   Are there agents at TDS who tend to

7 focus more on, for example, doctor shopping

8 investigations as opposed to other types?

9          MR. CLUFF:  Objection.  Lacks

10 foundation.

11          MR. BENNETT:  Objection.  Vague.

12     A.   Understanding that I have only been

13 there for such a short period of time, I don't

14 know.

15     Q.   The type or has the mix of

16 investigations that you've worked on as a TFO,

17 has that changed at all during your time as a

18 TFO?

19          MR. BENNETT:  Objection.

20     A.   No.

21          MR. BENNETT:  Objection.  Vague.

22          You can answer.

23          MR. CLUFF:  It's also compound.

24     Q.   We can agree, I hope, Detective

25 Prince, that opioids, prescription opioids

Page 441

1   anyway, can be prescribed for medical purposes

2   to treat medical needs?

3            MR. CLUFF:  Calls for an expert

4   opinion.  Beyond the scope.

5        A.    What I would agree is that there are

6   experts in the medical field who are allowed to

7   prescribe opioids for medical purposes and that

8   I'm not qualified to make that judgment.

9        Q.    Do you think -- if it were up to

10  you, would you change that?

11           MR. CLUFF:  Objection.  Misstates

12  testimony.  Calls for speculation.  Lacks

13  foundation.

14       A.    I don't understand what I'd be

15  changing.

16       Q.    Would you want it so that no doctor

17  could prescribe opioids for medical purposes?

18           MR. CLUFF:  Same objection.  Asked

19  and answered.

20       A.    That's not what I said.

21       Q.    I didn't say it's what you said.

22  I'm asking if that's what you would want.

23       A.    I believe that what I want is for

24  the system to work as it has been designed, and

25  that if the rules and regulations are followed

Page 442

1   properly, that it's a good system if it follows
2   the mandates that it has received.
3       Q.    As a TFO have you worked on any
4   investigations where the investigation concluded
5   and the decision was made not to bring charges;
6   in other words, you investigated and concluded I
7   don't think there was a crime here?
8              MR. CLUFF:  Objection.  Compound.
9              MR. BENNETT:  Objection.  Scope.
10             You can answer that question yes or
11  no only.
12             MR. CLUFF:  It's also vague as to
13  conclusions.
14      A.    The answer is yes, except that I'm
15  not agreeing with the fact that a crime has not
16  taken place.
17      Q.    But you've worked on investigations
18  where the decision was -- the investigation
19  concluded and the decision was made not to bring
20  charges?  If I understood correctly, yes, that's
21  happened?
22      A.    I've worked on investigations where
23  the information that was gathered or available
24  to investigators did not meet the parameters set
25  by prosecutors for charges to go forward.

Page 443

1         Q.    And did any of those -- the
2     instances where that occurred, did any of those
3     investigations involve improper prescribing as
4     we defined it earlier?
5              MR. CLUFF:  Are you still asking him
6     in his capacity as a task force officer?
7              MR. BLOCK:  Yes.
8              MR. BENNETT:  Objection.  Scope.
9              You can answer that question yes or
10    no only.
11        A.    No.
12        Q.    What type of diversion was involved
13    in the cases where the investigation concluded
14    and a decision was made not to bring charges?
15             MR. BENNETT:  Objection.  Scope.
16             You are not authorized to disclose
17    non-public facts or information of specific DEA
18    investigations.  To the extent that you can
19    answer this question generally or the
20    information was made public, you may answer.
21        A.    Based on the instructions I
22    received, I don't think I can answer any
23    further.
24             MR. BLOCK:  Your Honor, then I need
25    a ruling on Mr. Bennett's objection, because I

Page 444

1   don't understand how just the type of

2   investigation -- we don't know who it is, why

3   they didn't investigate it.  I just want to know

4   what type of cases has he worked on where they

5   concluded that they weren't going to bring

6   charges.

7              SPECIAL MASTER COHEN:  There may be

8   a misunderstanding.  Why don't you just ask the

9   question again.

10             MR. BLOCK:  Thank you, Your Honor.

11        Q.   Can you identify the types -- just

12   the type of case, so, you know, forgery, doctor

13   shopping, improper prescribing?  What are the

14   types of cases, investigations that you've

15   worked on where they concluded and the

16   conclusion was not to bring charges?

17             MR. CLUFF:  Objection.  Compound.

18             MR. BENNETT:  Objection.  Scope.

19             You may identify the general type of

20   case, but you may not identify the specifics of

21   the investigation.  Do you understand my

22   instruction?

23             THE WITNESS:  Yes.

24        A.   Improper prescribing and, I believe,

25   manufacturing.

1          Q.    Like counterfeiting?

2          A.    Yes.  I'm sorry.  I should have said

3    counterfeiting.

4          Q.    And do you know how many times

5    that's happened with an improper prescribing

6    investigation that you've worked on and the

7    conclusion was we're not bringing charges?

8          A.    I believe once.

9          Q.    And how about the counterfeiting?

10         A.    One.

11         Q.    And can we agree that improper

12   prescribing investigations are time-consuming?

13              MR. CLUFF:  Objection.  Vague.

14         A.    Improper prescribing or, as I call

15   them, trafficking by a prescriber consumes a lot

16   of investigative time, yes.

17         Q.    Do you know what -- what's the range

18   of time it takes to complete an improper

19   prescribing investigation?

20         A.    I can't give you a range other than

21   to say that every trafficking or complaint

22   regarding a prescriber who may be outside the

23   normal range is very individual and can take a

24   long time or it can kind of fall into place

25   fairly quickly.  Typically, though, it takes a

Page 446

1   longer time and is governed more by the guidance

2   received by a prosecutor.

3        Q.    And I'm not limiting this to TDS,

4   but in an improper prescribing investigation,

5   what's the quickest you've ever been able to

6   complete one of those that you've worked on?

7        A.    Now we're talking about --

8        Q.    Ever.

9        A.    -- as a Cleveland narcotics

10  detective also?

11       Q.    Either/or.  Yeah.  I don't know

12  which one would be quicker.

13            MR. CLUFF:  You also specified you.

14  Do you want cases where he's been lead or cases

15  that he's ever worked on?

16       A.    So how long was the fastest improper

17  prescriber case?  That would be a couple of

18  months.

19       Q.    And a couple of months would be the

20  exception?

21       A.    Yes.

22       Q.    And it wouldn't be unusual for these

23  cases to take years?

24            MR. CLUFF:  Objection.  Calls for

25  speculation.  Vague.

Page 447

1          A.    Some of the cases that I worked on

2     have taken several years.

3          Q.    The improper prescribing

4     investigations --

5          A.    If you don't mind, if I could get

6     some water.

7          Q.    Yes, absolutely.

8                    (Recess had.)

9          Q.    Detective Prince, I want to focus on

10    the improper prescribing investigations that

11    you've worked on as a TFO.  I call them improper

12    prescribing.  I think you called it doctor

13    trafficking.

14         A.    Trafficking, yes.

15         Q.    Have there been any of those

16    investigations that you've worked on that didn't

17    involve some sort of consultation with a medical

18    expert?

19                MR. CLUFF:  Objection.  Vague as to

20    time.

21                MR. BENNETT:  Objection.  Scope.

22                You can answer yes or no.

23         A.    Any that did not involve some sort

24    of consultation -- I don't believe so.

25         Q.    So a medical expert is consulted in

Page 448

1  all of these type of investigations that you've

2  worked on?

3           MR. BENNETT:  Objection.  Scope.

4           You can answer yes or no.

5      A.    Yes.

6      Q.    Do you use OARRS in connection with

7  improper prescribing investigations as a TFO?

8      A.    OARRS is used, yes.

9      Q.    Can you think of any improper

10 prescribing investigation you've worked on as a

11 TFO where OARRS was not used?

12          MR. BENNETT:  Objection.  Vague.

13          You can answer.

14     A.    I cannot think of any investigation

15 where it wasn't used.

16     Q.    Can you think of any investigation

17 into improper prescribing that you've worked on

18 as a TFO where there wasn't some form of

19 undercover work done?

20          MR. CLUFF:  Objection.  Vague.

21          MR. BENNETT:  Objection.  Scope.

22          You may answer that yes or no only.

23     A.    Yes.

24     Q.    How many investigations into

25 improper prescribing where there was no

Page 449

1  undercover work?

2      A.    I see you say as a TFO.

3      Q.    Yes.

4      A.    So the answer is no.

5      Q.    So all the ones as a TFO have

6  involved some sort of undercover work, have

7  included some sort of undercover work?

8          MR. BENNETT:  You can answer that

9  yes or no only.

10     A.    Yes.

11     Q.    And do you use ARCOS as a TFO?

12         MR. BENNETT:  Objection.  Vague.

13     A.    ████

14     Q.    Do you know whether ARCOS is used in

15  connection with any of the investigations that

16  you've worked on as a TFO?

17     A.    █ ██ ███ ██████ ████ ██████ ████ █

18  ██████ ███

19     Q.    And do you know at a very general

20  level what's ARCOS used for in connection with

21  investigations?

22         MR. CLUFF:  Hold on.

23         MR. BENNETT:  He can answer that

24  question from the DEA's perspective if he knows.

25     A.    I don't know.

```
                                        Page 450

 1        Q.    Do you have an understanding of who
 2   at the TDS uses the ARCOS data?
 3             MR. BENNETT:  Objection.
 4             You may state a title but not an
 5   actual person.
 6        A.    ███ ███████ ███████ ███████.
 7        Q.    Investigations that you work on as
 8   the TFO where prescription medications are
 9   seized or otherwise obtained in the course of
10   the investigation, do you track which
11   manufacturer, which specific manufacturer it was
12   that made the pills that you're getting?
13             MR. CLUFF:  Objection.  Compound and
14   vague.
15             MR. BENNETT:  You can answer that
16   question if you know.
17        A.    I don't believe so.
18        Q.    Why not?
19        A.    I don't know.
20        Q.    As a TFO have you done any
21   investigations into conduct of a sales
22   representative for a pharmaceutical
23   manufacturer?
24             MR. BENNETT:  Objection.  Scope.
25             You can answer that question yes or
```

```
                                        Page 451
 1   no only.

 2          A.    No.

 3          Q.    We'll start with a yes or no to

 4   this, please.  Are there any databases that you

 5   have access to at TDS that you didn't have

 6   access to as a City of Cleveland police

 7   detective?

 8               MR. CLUFF:  Objection.  Vague as to

 9   databases.

10               MR. BENNETT:  You can answer that

11   yes or no only.  You may not identify any

12   non-public databases or information sources that

13   you can access, but you can answer yes or no.

14          A.    Yes.

15          Q.    And I guess I should have specified

16   a little bit more.  We're talking about

17   databases that are useful in terms of

18   investigating diversion that you had access to

19   at TDS that you didn't have before you were --

20   I'll spit it out again.

21               Are there any databases that you

22   have access to as a TFO that are useful for

23   investigating diversion that you didn't have

24   access to before you became a TFO at the TDS?

25               MR. CLUFF:  Objection.  Vague.
```

Page 452

1   Calls for opinion.

2               MR. BENNETT:  Objection.  Vague.

3   Objection.  Scope.

4               You may answer that yes or no only

5   but you may not identify any non-public

6   databases.

7        A.    Yes.

8        Q.    Are the names of any of those

9   databases public knowledge?

10              MR. BENNETT:  You can answer that.

11       A.    I don't know.

12              MR. BENNETT:  Would you like us to

13  review with him what he's referring to and let

14  you know what he can and can't cite?

15              MR. BLOCK:  Yes.

16                   (Recess had.)

17              MR. BENNETT:  I think he's ready to

18  answer your question.  He's been instructed on

19  what information he can give.

20       Q.    So please share with us.

21       A.    So I have access, as a TFO officer,

22  to ARCOS and to the DEA registrar's information.

23       Q.    And can you say generally how is the

24  DEA registrar's information -- how can that be

25  helpful for a diversion investigation?

1           MR. BENNETT:  You can answer that

2    generally.

3        A.    For one thing, generally, it

4    establishes if the person has a registered DEA

5    number.

6        Q.    And so if somebody is dealing with

7    prescription medications that are controlled

8    substances and they don't have a DEA

9    registration number, that's a suggestion that

10   something might be amiss?

11       A.    That would suggest that there's

12   another direction that the investigation should

13   go.

14       Q.    Would that stay within TDS, though,

15   if that were the fact pattern, or do you mean it

16   goes off to a different department to work on?

17           MR. BENNETT:  Objection.  Calls for

18   speculation.  Incomplete hypothetical.

19           To the extent you can answer it

20   generally with information you have, you may,

21   whether it would stay within TDS or go somewhere

22   else.

23       A.    If it were dealing with the

24   diversion of prescription drugs, it would stay

25   within TDS.

Page 454

1       Q.    And at a general level, how is ARCOS

2    data helpful for diversion investigations?

3       A.    ████ ████████████ ████ █ █████ ████ █

4    ████ █ █████ █████ █████ █████ █ █ ████████ ████

5    █ ███ █████ █ ██ ████ █████████

6       Q.    As a TFO, have you ever initiated an

7    investigation into potential overprescribing

8    solely on the basis of the quantity of

9    medications that the physician was prescribing?

10            MR. CLUFF:  Objection.  Vague.

11   Lacks foundation.

12            MR. BENNETT:  Objection.  Vague.

13            You can answer that question yes or

14   no.

15      A.    No.

16      Q.    And as a TFO, have you ever

17   initiated any investigation into diversion based

18   solely on the quantity of medication, whether

19   that's medication being prescribed, medication

20   being dispensed?

21            MR. CLUFF:  Same objections and

22   assumes facts.

23            MR. BENNETT:  Same objection.  Same

24   instruction.

25            You can answer yes or no only.

Page 455

1      A.    No.

2      Q.    Why not?

3           MR. BENNETT:  Objection.  Scope.

4           You are not authorized to disclose

5   the internal deliberative process of the

6   Department of Justice.  To the extent you can

7   answer the question without disclosing the

8   internal deliberative process or disclosing

9   matters of prosecutorial discretion, you may

10  answer.

11     A.    The way we receive complaints is

12  multi-tiered, and that's not how -- that's not

13  what we do.

14     Q.    Could you tell whether someone is

15  diverting prescription medication looking only

16  at how many prescriptions they're writing?

17           MR. CLUFF:  Calls for an expert

18  opinion.  Lacks foundation.  Vague.

19           MR. BENNETT:  Objection.  Scope.

20           You can answer if you know.

21     A.    Diverting prescription medication --

22  as the question is asked, by diverting, can I

23  tell, sometimes I can tell that a person is

24  diverting because it's a false prescription or a

25  copy or an altered prescription.  That is

Page 456

1    diverting.

2         Q.    I'm saying you know Dr. X has

3    written Y number of prescriptions for oxycodone.

4    Do you know whether Dr. X -- just with that

5    information, do you know whether Dr. X is

6    diverting?

7              MR. CLUFF:  Incomplete hypothetical.

8    Vague.  Assumes facts.

9         A.    So as you've proposed this, without

10   a whole lot more information and protocols that

11   we would follow, the answer is no.

12                   -   -   -   -   -

13              (Thereupon, Deposition Exhibit 28,

14              Two-Page Document Entitled "Police

15              Department, Cleveland, Ohio,

16              Departmental Information," Dated

17              November 4, 2012, Beginning Bates

18              Number CLEVE_002712031, was marked

19              for purposes of identification.)

20                   -   -   -   -   -

21         Q.    I hand you what's been marked as

22   Prince Exhibit 28, which is a two-page document

23   Bates labeled CLEVE_002712031 through 32 from --

24   is there a date on this?  This is from November

25   4th, 2012.  And the first question is whether

Page 457

1   you recognize this, sir.

2       A.    Yes, sir.

3       Q.    And what is this document?

4       A.    This is a document that was produced

5   or compiled by myself at the direction of the

6   lead prosecutor handling this investigation.

7       Q.    And what information were you

8   reporting?

9       A.    At the direction of the county

10  prosecutor, I compiled an amount of work hours

11  that was spent on this investigation.

12      Q.    And this is an investigation that

13  resulted in an arrest?

14          MR. CLUFF:  Lacks foundation.

15      Q.    Do you know?

16      A.    The person under investigation was

17  not arrested but was indicted and pled by

18  information.

19      Q.    So this resulted in a conviction?

20      A.    Yes, it did.

21      Q.    Do you remember who the person was?

22          MR. CLUFF:  This is during your work

23  as a Cleveland officer, and since it's somebody

24  that's been convicted, you can answer.

25      A.    Yes.  I believe that this is the

Page 458

1   Dr. Samuel Nigro investigation.

2          Q.     What was the last name again?

3          A.     Nigro.

4                 MR. CLUFF:  Why don't you give the

5   spelling.

6          A.     N-i-g-r-o.

7          Q.     And what was Dr. Nigro doing wrong?

8          A.     He was trafficking in prescription

9   drugs.

10         Q.     What kind of doctor was he?

11         A.     He was a psychiatrist.  That's the

12  M.D., right?

13         Q.     Yes.

14         A.     Yes.

15         Q.     Do you remember where his office

16  was?

17         A.     Lakewood, Ohio.

18         Q.     And were you the lead detective on

19  the Dr. Nigro case?

20         A.     This was a joint investigation with

21  the Ohio Board of Pharmacy.  I was the lead

22  Cleveland detective.

23         Q.     And he was trafficking, so he was

24  writing prescriptions for people who didn't need

25  the drugs for medical purposes?  Is that what

Page 459

1    you mean by trafficking?

2           MR. CLUFF:  Objection.  Vague.

3    Misstates testimony.

4        Q.    Let me ask it this way:  What do you

5    mean by trafficking?

6        A.    It was determined during the course

7    of this as well as what he pled to that he was

8    prescribing strong opioid medications as well as

9    combinations of other prescription drugs for

10   purposes that were not seen as valid medical

11   reasons.

12       Q.    And am I inferring correctly from

13   this document that the investigation into

14   Dr. Nigro spanned at least three calendar years,

15   '09 -- wait, that's four, '09, '10, '11 and '12,

16   2009, '10, '11 and '12?

17       A.    That is correct.

18       Q.    The time that's being tracked here,

19   is that the time up to the indictment?  This

20   isn't including time spent testifying at trial

21   or anything like that is what I'm getting at.

22           MR. CLUFF:  Objection.  Compound.

23       A.    This did not include time spent in

24   trial, but it may have included time that was

25   necessary to prepare the case for trial as far

Page 460

1   as organizing, compiling and obtaining all the

2   evidence that was requested or the guidance that

3   we received from the prosecutor.

4        Q.    And the hours that are reflected,

5   are those total working hours or are those just

6   overtime hours on the case?

7        A.    Total working hours.

8        Q.    And the amount of time that was

9   spent -- Dr. Nigro, was that a typical

10  overprescribing investigation in terms of the

11  number of hours that were involved?

12       A.    I think it's fair to say that I

13  don't think any of them are typical.  This was

14  a -- a large investigation.

15       Q.    Was it the largest one you've ever

16  worked on?

17            MR. CLUFF:  Objection.  Vague.

18       A.    I'm not exactly sure how you

19  determine what largest means.

20       Q.    Your prior answer was this was a

21  large investigation, so based on whatever you

22  had in your mind when you said that.

23       A.    As far as the amount of

24  prescriptions that were identified, I believe

25  this was.

Page 461

1          Q.     And was this the longest

2     investigation that you've ever worked on?

3               MR. CLUFF:  Objection.  Vague.

4          Q.     By investigation, I mean

5     investigation for overprescribing.

6               MR. CLUFF:  Same objection.

7          A.     Do you mean longest as from start to

8     its conclusion?

9          Q.     Sure.

10         A.     I don't believe so.

11         Q.     And the amount of hours that were

12    spent on the Dr. Nigro investigation, how does

13    that compare to the amount of hours you spend on

14    an overprescribing investigation as a TFO?

15              MR. CLUFF:  Objection.  Vague.

16    Compound.

17         A.     I think that for one thing, it's

18    almost trying to compare apples and oranges.

19         Q.     Let's compare apples to apples.  For

20    one year, take the amount of hours you spend on

21    Dr. Nigro in a year compared to the amount of

22    hours you spend on any overprescribing

23    investigation as a TFO.

24              MR. CLUFF:  Objection.  Vague.

25    Compound.  It's also an incomplete hypothetical.

1      A.    It's very difficult for me to

2  compare this as to me being a TFO.  As a TFO, I

3  have more resources, other investigators that

4  would be doing a lot of this work.  At this

5  point in time, this investigation -- I was very

6  limited in resources and was doing the bulk of

7  the work.

8      Q.    And so then do you know -- all

9  right.  Strike that.

10          You said you worked on this case

11  with the Board of Pharmacy, the Dr. Nigro case?

12      A.    Ohio Board of Pharmacy.

13      Q.    Have you worked with the Ohio Board

14  of Pharmacy in any of your TFO cases?

15      A.    Yes.

16      Q.    How many?

17      A.    I'm aware they have been a joint

18  partner in numerous investigations.

19      Q.    Of the ones you've worked on, do you

20  know how many of the investigations you've

21  worked on that the Board of Pharmacy has been

22  involved?

23      A.    I can guess that it's more than

24  several.

25      Q.    Is there a particular type of

Page 463

1    investigation where the Board of Pharmacy gets

2    involved, type or types I suppose?

3         A.    Yes.

4         Q.    Which kinds?

5         A.    What you are calling --

6         Q.    Overprescribing?

7         A.    Yes.

8         Q.    Any others?

9         A.    The overprescribing seems -- or

10   the -- somehow it is connected to

11   overprescribing, yes.

12        Q.    And in the cases you've worked on as

13   a TFO where the Board of Pharmacy has been

14   involved, which agency has reached out to the

15   other to seek assistance; in other words, at TDS

16   are you reaching out to the board saying we need

17   your help on this or is it the board coming to

18   you and saying we'd like you to look into this?

19        A.    To the best of my knowledge, it

20   works both ways.

21        Q.    Is one more common than the other?

22        A.    I'm not sure.

23        Q.    Is the Board of Pharmacy involved in

24   every overprescribing case that you've worked on

25   as a TFO?

                                                      Page 464

1           A.     Yes, I believe so.

2           Q.     Is the Board of Pharmacy proactive

3    in trying to combat diversion?

4                  MR. BENNETT:  Objection.

5                  You are not authorized to disclose

6    non-public facts you've acquired in the

7    performance of your duties as a TFO.  To the

8    extent you have an opinion that are based on

9    public facts or facts you acquired outside the

10   performance of your duties as a TFO, you may

11   answer in your personal capacity but not on

12   behalf of the DEA.

13                 MR. CLUFF:  I also object that it

14   lacks foundation to show personal knowledge

15   about the board's activities and stance on

16   diversion.

17          A.     In an investigation of an

18   over-prescriber, the Board of Pharmacy is the

19   agency that also governs the -- some

20   prescribing, licensing and things like that, so

21   that as part of the typical protocol in this

22   type of an investigation, you always contact and

23   reach out to them as well as the fact that they

24   also bring additional resources that would be

25   necessary in this type of investigation.

Page 465

1      Q.    How about the Ohio Medical Board; is

2  the Ohio Medical Board involved in

3  overprescribing investigations?

4          MR. CLUFF:  Objection.  Vague.

5      A.    Yes.

6      Q.    And the overprescribing

7  investigations that you've worked on as a TFO,

8  have there been any of those that have not

9  involved the Ohio Medical Board?

10      A.    Yes.

11      Q.    How many?

12      A.    I'm not sure.

13      Q.    What's the line of demarcation

14  between whether the medical board gets involved

15  or not?

16          MR. CLUFF:  Objection.  Lacks

17  foundation.

18          MR. BENNETT:  Objection.  Vague.

19          You can answer.

20      A.    The medical board had a change of

21  how they operated.  I can't remember when, but

22  initially they were not contacted but -- I can't

23  remember what year.  Since then it has been part

24  of the protocol that has been kind of enacted

25  that the medical board is also contacted.

Page 466

1    Q.   As a TFO, when you started in 2018,

2    were you contacting the medical board on

3    investigations into overprescribing, or that's

4    been a change that's happened during the course

5    of your work on the TDS?

6         MR. CLUFF:  Objection.  Compound.

7    A.   My answer to this question moved to

8    way earlier than I was a TFO.  As a TFO, I think

9    it's fair to say that cooperation with the

10   medical board is substantial.

11   Q.   As a TFO -- are there any

12   overprescribing cases you've worked on as a TFO

13   that have not involved the medical board?

14   A.   Not that I recall.

15   Q.   And is the medical board proactive

16   in trying to combat diversion?

17        MR. CLUFF:  Objection.  Calls for

18   speculation.  Vague.

19        MR. BENNETT:  Objection.  Scope.

20   Same instructions regarding opinions.

21        You may give a personal opinion that

22   is not based on non-public information, but you

23   are not speaking on behalf of the DEA.

24        MR. CLUFF:  Or the City of

25   Cleveland.

Page 467

1        A.    I believe it's part of their

2    mandate.

3        Q.    Do you find it to actually be the

4    case in your experience with them?

5            MR. CLUFF:  Same objection.

6        A.    Yes.

7                  -   -   -   -   -

8            (Thereupon, Deposition Exhibit 29,

9            E-Mail String Beginning Bates Number

10            CLEVE_002518554, was marked for

11            purposes of identification.)

12                  -   -   -   -   -

13        Q.    Let's go to 29.  Deposition Exhibit

14    29 is an e-mail chain.  The most recent in time

15    is an e-mail from you to Trey Edwards at --

16    you'll tell me what agency Mr. Edwards worked at

17    -- dated January 19, 2017.  It bears the Bates

18    numbers CLEVE_002518554 through 18556.

19            The first question, Detective

20    Prince, is, is this an e-mail exchange that you

21    had with Mr. Edwards in the regular course of

22    your duties as a City of Cleveland police

23    detective?

24        A.    Yes.

25        Q.    And who is Mr. Edwards?

Page 468

1          A.    He's a Board of Pharmacy agent.

2          Q.    That's the Ohio Board of Pharmacy?

3          A.    That is correct.

4          Q.    And he makes a reference to "Now

5     that Mudra is retiring."

6                Do you see that?

7          A.    Sure.  Mudra.

8          Q.    Who is that in reference to?

9          A.    That was a senior Board of Pharmacy

10    agent.

11         Q.    Did you work with Mr. Mudra?

12         A.    Yes.

13         Q.    So he's asking who's going to -- I'm

14    sorry.  What did you understand him to be asking

15    you when he said, "Now that Mudra is retiring,

16    which one is taking his place," with the winky

17    emoji following?

18         A.    He was asking if I was going to

19    apply for his position and join the Board of

20    Pharmacy I'm sure.

21         Q.    Is that a job you would want?

22         A.    Not anymore.

23         Q.    What do you mean by that?

24         A.    I'm happy with getting ready for

25    retirement.

Page 469

1        Q.    Is it a job you considered back in
2    January of 2017?
3        A.    I believe I was, yes.
4        Q.    And you say, "Who do you want.  I
5    hear Cleveland guys have a bad rep after"
6    something.  Do you know what you were referring
7    to there, what you meant by Cleveland guys
8    having a bad rep?
9        A.    I believe that a former Cleveland
10   police officer had applied for a position with
11   the Board of Pharmacy and did not receive that
12   position and that there were some issues with
13   his performance or something.  I think that's
14   what we were talking about.
15       Q.    Was this a Cleveland police officer
16   who was doing something illegal?
17       A.    I don't believe so.
18       Q.    Just deficient?
19       A.    I don't know.
20       Q.    Is it fair to say that the --
21   separate from whether or not you were going to
22   replace -- was it officer -- Mr. Mudra?
23       A.    Agent Mudra.
24       Q.    Before that conversation, there was
25   some information that Mr. Edwards was passing on

Page 470

1   to you, a tip about potential diversion

2   activity; is that right?

3        A.    Briefly looking over this, it looks

4   as though he received some type of formal

5   complaint from UH Strongsville Urgent Care may

6   have had -- been diverted scripts, or something

7   like that, and that those prescriptions had

8   shown up at a Rite-Aid.

9        Q.    And it was someone at the Rite-Aid

10  that was reporting this?

11       A.    From what I gather from just briefly

12  looking over this, that seems to be correct.

13       Q.    And so that would be an example of a

14  pharmacist and/or a pharmacy helping law

15  enforcement in an investigation?

16       A.    This would be an example of a

17  pharmacist or pharmacy reporting the diversion

18  or fraudulent prescriptions as they are mandated

19  by reporting felonies in the state of Ohio, yes.

20       Q.    And do you know whether there was an

21  investigation opened up as a result of this?

22       A.    I don't know.  I can't tell.

23       Q.    Have you ever sought assistance from

24  a licensed distributor of pharmaceuticals in

25  connection with any investigation?

Page 471

1              MR. CLUFF:  Objection.  Vague.

2        A.    I really don't --

3              MR. BENNETT:  Objection.  Scope.

4              You may answer that question yes or

5    no only.

6              MR. CLUFF:  Do you understand the

7    question?

8              THE WITNESS:  No.  That's my

9    problem.  I don't understand --

10             MR. CLUFF:  You can ask him to

11   rephrase it.

12        A.    I don't understand what a licensed

13   distributor -- if you could explain that,

14   please.

15        Q.    An entity that has a license to

16   purchase controlled substances from a

17   manufacturer and then ship them to pharmacies.

18        A.    I think in one of my previous

19   depositions we talked about that I did ask

20   for -- we got some assistance from Purdue

21   regarding some dummies.  At least that's what we

22   called them.  If that counts as a yes, then

23   that's a yes.  As far as asking, again, a

24   distributor, at least my understanding of the

25   way you explained it, I believe the answer is

Page 472

1   no.

2        Q.    And Purdue is a company that makes

3   prescription medications?

4        A.    Yes.  And as I recall, I think we --

5   in that deposition we got into Percocet was

6   Endo.  Was that correct?  I think so.

7        Q.    Have you ever -- so I was going to

8   ask you, have you ever sought assistance from a

9   licensed manufacturer of prescription opioids

10  for assistance in any diversion investigation?

11             MR. CLUFF:  Same objections.

12             MR. BENNETT:  Objection.  Scope.

13             Same instruction.  You may answer

14  that question yes or no only.

15       A.    Just so I'm clear, this is as a TFO,

16  as a Cleveland police officer?

17       Q.    Ever.

18       A.    Ever.  I think -- did I just answer

19  that by saying when we asked Purdue for

20  assistance, the answer -- does that follow as a

21  licensed manufacturer.  If asking them for

22  dummies and things is asking them for

23  assistance, the answer is yes.

24       Q.    And was the assistance provided?

25       A.    I believe so.

Page 473

1        Q.    And so Purdue is a manufacturer, so

2   you're not -- if I'm following, you're not aware

3   of asking a licensed distributor for any

4   assistance with a diversion investigation?

5              MR. CLUFF:  Asked and answered.

6        A.    I believe I said no to that.

7        Q.    And why haven't you?

8              MR. BENNETT:  Objection.  Scope.

9   Calls for the internal deliberative process and

10  confidential investigatory techniques.

11             To the extent you can answer without

12  disclosing those, you may answer.

13       A.    As to why we never asked, it's

14  because, to the best of my knowledge, an

15  investigation that -- investigations that we

16  were working on didn't need that assistance at

17  that time, not to mention that I'm having a very

18  difficult time understanding what a

19  distributor -- how they would have assisted us.

20             MR. BLOCK:  Do any other counsel

21  have questions?  I think that that is all the

22  questions I have for Detective Prince, unless

23  your counsel has redirect.

24             MR. CLUFF:  I don't.

25             MR. BLOCK:  Oh, Josh stepped out.

Page 474

1              (Short recess had.)

2          MR. BLOCK:  I think we're done.

3          MR. CLUFF:  As long as we don't have

4   to bring Detective Prince back for a fourth

5   round.  So waived or --

6          SPECIAL MASTER COHEN:  Waived.

7

8        (Deposition concluded at 3:19 p.m.)

9                     - - - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 475

1   Whereupon, counsel was requested to give

2   instruction regarding the witness' review of

3   the transcript pursuant to the Civil Rules.

4

5                    SIGNATURE:

6   Transcript review was requested pursuant to

7   the applicable Rules of Civil Procedure.

8

9                TRANSCRIPT DELIVERY:

10  Counsel was requested to give instruction

11  regarding delivery date of transcript.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 476

1              REPORTER'S CERTIFICATE

2    The State of Ohio,    )

3                          ) SS:

4    County of Cuyahoga.   )

5

6            I, Renee L. Pellegrino, a Notary Public

7    within and for the State of Ohio, duly

8    commissioned and qualified, do hereby certify

9    that the within named witness, JOHN PRINCE, was by

10   me first duly sworn to testify the truth, the whole

11   truth and nothing but the truth in the cause

12   aforesaid; that the testimony then given by the

13   above referenced witness was by me reduced to

14   stenotypy in the presence of said witness;

15   afterwards transcribed, and that the foregoing is a

16   true and correct transcription of the testimony so

17   given by the above referenced witness.

18           I do further certify that this

19   deposition was taken at the time and place in the

20   foregoing caption specified and was completed

21   without adjournment.

22

23

24

25

Page 477

1       I do further certify that I am not a

2  relative, counsel or attorney for either party,

3  or otherwise interested in the event of this

4  action.

5            IN WITNESS WHEREOF, I have hereunto set

6  my hand and affixed my seal of office at

7  Cleveland, Ohio, on this 29th day of May, 2019.

8

9

10

11

12

13  Renee L. Pellegrino, Notary Public

14  within and for the State of Ohio

15

16  My commission expires October 12, 2020.

17

18

19

20

21

22

23

24

25

```
                                                    Page 478

 1                      Veritext Legal Solutions
                           1100 Superior Ave
 2                            Suite 1820
                         Cleveland, Ohio 44114
 3                       Phone: 216-523-1313
 4
      May 29, 2019
 5
      To: Sterling Cluff
 6
      Case Name: In Re: National Prescription Opiate Litigation v.
 7
      Veritext Reference Number: 3389774
 8
      Witness:  John Prince , Vol III        Deposition Date:  5/23/2019
 9
10    Dear Sir/Madam:
11
      Enclosed please find a deposition transcript.  Please have the witness
12
      review the transcript and note any changes or corrections on the
13
      included errata sheet, indicating the page, line number, change, and
14
      the reason for the change.  Have the witness' signature notarized and
15
      forward the completed page(s) back to us at the Production address
16    shown
17    above, or email to production-midwest@veritext.com.
18
      If the errata is not returned within thirty days of your receipt of
19
      this letter, the reading and signing will be deemed waived.
20
21    Sincerely,
22    Production Department
23
24
25    NO NOTARY REQUIRED IN CA
```

```
1                    DEPOSITION REVIEW
                  CERTIFICATION OF WITNESS
2

        ASSIGNMENT REFERENCE NO: 3389774
3       CASE NAME: In Re: National Prescription Opiate Litigation v.
        DATE OF DEPOSITION: 5/23/2019
4       WITNESS' NAME: John Prince , Vol III
5          In accordance with the Rules of Civil
    Procedure, I have read the entire transcript of
6   my testimony or it has been read to me.
7          I have made no changes to the testimony
    as transcribed by the court reporter.
8

    _____        _____
9   Date                    John Prince , Vol III
10         Sworn to and subscribed before me, a
    Notary Public in and for the State and County,
11  the referenced witness did personally appear
    and acknowledge that:
12
           They have read the transcript;
13         They signed the foregoing Sworn
                Statement; and
14         Their execution of this Statement is of
                their free act and deed.
15
           I have affixed my name and official seal
16
    this _____ day of_____, 20____.
17
                      _____
18                    Notary Public
19                    _____
                      Commission Expiration Date
20
21
22
23
24
25
```

```
                                                        Page 480
 1                    DEPOSITION REVIEW
                  CERTIFICATION OF WITNESS
 2
          ASSIGNMENT REFERENCE NO: 3389774
 3        CASE NAME: In Re: National Prescription Opiate Litigation v.
          DATE OF DEPOSITION: 5/23/2019
 4        WITNESS' NAME: John Prince , Vol III
 5        In accordance with the Rules of Civil
     Procedure, I have read the entire transcript of
 6   my testimony or it has been read to me.
 7        I have listed my changes on the attached
     Errata Sheet, listing page and line numbers as
 8   well as the reason(s) for the change(s).
 9        I request that these changes be entered
     as part of the record of my testimony.
10
          I have executed the Errata Sheet, as well
11   as this Certificate, and request and authorize
     that both be appended to the transcript of my
12   testimony and be incorporated therein.
13   _____          _____
     Date                      John Prince , Vol III
14
          Sworn to and subscribed before me, a
15   Notary Public in and for the State and County,
     the referenced witness did personally appear
16   and acknowledge that:
17        They have read the transcript;
          They have listed all of their corrections
18             in the appended Errata Sheet;
          They signed the foregoing Sworn
19             Statement; and
          Their execution of this Statement is of
20             their free act and deed.
21        I have affixed my name and official seal
22   this _____ day of_____, 20____.
23             _____
               Notary Public
24
               _____
25             Commission Expiration Date
```

Page 481

1                    ERRATA SHEET
           VERITEXT LEGAL SOLUTIONS MIDWEST
2                ASSIGNMENT NO: 3389774
3     PAGE/LINE(S) /        CHANGE        /REASON
4     _____
5     _____
6     _____
7     _____
8     _____
9     _____
10    _____
11    _____
12    _____
13    _____
14    _____
15    _____
16    _____
17    _____
18    _____
19

      _____        _____
20    Date                   John Prince , Vol III
21    SUBSCRIBED AND SWORN TO BEFORE ME THIS _____
22    DAY OF _____, 20_____ .
23                   _____
                     Notary Public
24

                     _____
25                   Commission Expiration Date

**[& - 48226]**                                                                     Page 1

| **&** |
| --- |
| **&**   397:22 398:6 |
| 399:8,12,18,22 |
| 400:2,6 |

| **0** |
| --- |
| **002518554**   403:9 |
| 467:10,18 |
| **002712031**   403:7 |
| 456:18,23 |
| **02199**   399:23 |
| **09**   459:15,15 |

| **1** |
| --- |
| **10**   459:15,16 |
| **100**   399:3 |
| **11**   459:15,16 |
| **1100**   397:22 400:3 |
| 478:1 |
| **12**   459:15,16 |
| 477:16 |
| **1200**   400:22 |
| **15219**   399:19 |
| **15910**   398:7 |
| **1660**   397:22 |
| **17**   397:7,15 |
| **1701**   400:17 |
| **18**   397:11,13 |
| 409:22 |
| **1801**   400:21 |
| **1820**   478:2 |
| **18556**   467:18 |
| **18th**   400:8 |
| **19**   467:17 |
| **19103-2921** |
| 400:17 |
| **1:04**   397:20 |

| **2** |
| --- |
| **20**   427:16 479:16 |
| 480:22 481:22 |
| **200001-4956** |
| 399:14 |

**20001-3743**   399:9
**2009**   459:16
**201**   400:12
**2012**   403:6 409:3
456:17,25
**2017**   467:17 469:2
**2018**   409:7 466:1
**2019**   397:19 477:7
478:4
**202**   399:10,15
**2020**   410:17
477:16
**21202-1031**   399:4
**213**   400:9
**214**   401:5
**215**   400:18
**216**   398:14,23
400:4
**216-523-1313**
478:3
**216-9229**   398:4
**22**   409:23
**2200**   401:4
**2227**   477:12
**23**   397:19
**234-4002**   398:19
**2440**   399:4
**252-9060**   400:13
**28**   398:3 403:5
456:13,22
**2800**   401:4
**2804**   397:6,7
**29**   403:8 467:8,13
467:14 478:4
**29464**   398:4
**29th**   477:7
**2nd**   397:22

| **3** |
| --- |
| **30**   410:21 |
| **303**   400:23 |

**313**   398:19
**32**   456:23
**330**   400:13
**338-3344**   399:20
**3389774**   478:7
479:2 480:2 481:2
**35th**   399:19
**36**   410:22
**37**   410:22
**398**   402:3
**3:19**   474:8

| **4** |
| --- |
| **4**   403:6 456:17 |
| **400**   398:13 400:7 |
| **403**   402:4 |
| **404**   402:5 |
| **406**   402:8 |
| **409**   404:3 |
| **410**   399:5 404:3 |
| **412**   399:20 404:4 |
| **413**   404:4 |
| **414**   404:5 |
| **415**   404:5 |
| **419**   404:6 |
| **420**   404:6 |
| **421**   404:7 |
| **423**   404:7 |
| **424**   404:8 |
| **425**   404:8,9,9,10 |
| **426**   404:10,11 |
| **428**   404:11 |
| **430**   404:12,12 |
| **430-6000**   400:9 |
| **431**   398:18 404:13 |
| 404:13,14 |
| **433**   404:14 |
| **434**   404:15 |
| **436**   404:15,16 |
| **437**   404:16 |
| **438**   404:17,17,18 |
| 404:18,19 |

**439**   404:19
**440**   404:20,20,21
404:21,22
**441**   404:22,23
**44113**   398:14
400:4
**44114**   478:2
**44114-1190**
398:22
**442**   404:23,24
**443**   404:24,25
**44308**   400:13
**444**   405:3,3
**445**   405:4
**447**   405:4,5,5
**448**   405:6,6,7,7
**449**   405:8
**450**   405:8,9,9
**45004**   397:15
**45090**   397:11
**451**   405:10
**45132**   397:13
**452**   405:10,11
**453**   405:11
**454**   405:12,12,13
405:13
**455**   405:14,14
**456**   403:5
**459**   405:15,15
**460**   405:16
**461**   405:16,17,17
**462**   405:18
**464**   405:18,19
**465**   405:19,20,20
**466**   405:21,21,22
**467**   403:8 405:22
**471**   405:23,23
**472**   405:24,24
**476**   402:10
**48226**   398:18

[4th - asking]

**4th** 456:25

**5**

**5/23/2019** 478:8
479:3 480:3
**50** 400:12 427:18
**586-3939** 398:23
**592-3197** 400:23

**6**

**601** 399:9
**617** 399:24
**622-3988** 398:14
**662-5205** 399:15
**696-4889** 400:4

**7**

**740-8000** 401:5
**75201** 401:5

**8**

**800** 399:23
**801** 398:13
**80202** 400:22
**818** 398:8
**839-2333** 398:8
**843** 398:4
**850** 399:14

**9**

**90071** 400:8
**901** 398:22
**91436** 398:8
**942-5743** 399:10
**949-1159** 399:5
**950** 400:3
**951-7000** 399:24
**963-4824** 400:18

**a**

**aaron** 397:8
**able** 426:25 446:5
**absolutely** 447:7
**access** 451:5,6,13
451:18,22,24

**452:21** 454:3
**acknowledge**
479:11 480:16
**acquired** 464:6,9
**act** 413:13 479:14
480:20
**action** 477:4
**activities** 425:18
464:15
**activity** 433:19
435:12,18,25
436:3,6,6,9,12,21
470:2
**actual** 426:5 450:5
**adding** 419:1
**additional** 412:6
413:23,25 414:5
414:10,22 416:5,8
419:1 464:24
**address** 478:15
**adjournment**
476:21
**administration**
398:10,17
**affixed** 477:6
479:15 480:21
**aforesaid** 476:12
**afternoon** 406:19
406:20
**age** 406:12
**agency** 463:14
464:19 467:16
**agent** 431:23
440:3 468:1,10
469:23
**agents** 414:5
416:16,18 440:6
450:6
**agree** 422:8
440:24 441:5
445:11

**agreeing** 442:15
**ahead** 420:12
**aid** 400:15 470:8,9
**akron** 398:2
400:13
**al** 397:10,12,14,14
428:7
**alex** 400:21
**alex.harris** 400:23
**allen** 399:18,20
**allowed** 425:25
441:6
**altered** 455:25
**amerisourceberg...**
400:10
**amiss** 453:10
**amnesia** 435:20
**amount** 416:15
457:10 460:8,23
461:11,13,20,21
**angeles** 400:8
**answer** 410:9
411:10 414:21
416:7 418:9 420:6
420:24 422:17
424:19,24 425:13
425:19,25 426:7
426:10,11,20,23
427:4 428:6 430:8
431:12 433:6
434:17 436:15,24
437:5 439:22,23
440:5,22 442:10
442:14 443:9,19
443:20,22 447:22
448:4,13,22 449:4
449:8,23 450:15
450:25 451:10,13
452:4,10,18 453:1
453:19 454:13,25
455:7,10,20

**456:11** 457:24
460:20 464:11
465:19 466:7
471:4,25 472:13
472:18,20,23
473:11,12
**answered** 438:22
441:19 473:5
**anybody** 406:8
**anymore** 468:22
**anyway** 441:1
**appear** 479:11
480:15
**appearances**
398:1 399:1 400:1
401:1 402:3
**appended** 480:11
480:18
**apples** 461:18,19
461:19
**applicable** 475:7
**applied** 469:10
**apply** 468:19
**arcos** 449:11,14,17
449:20 450:2
452:22 454:1,4,5
**area** 428:21
**arnold** 399:8
**arnoldporter.com**
399:10
**arrest** 426:16,18
426:21 457:13
**arrested** 431:4
432:15 457:17
**arrests** 427:8,9
**asked** 429:12
438:21 441:18
455:22 472:19
473:5,13
**asking** 413:11
416:16 428:10

441:22 443:5
468:13,14,18
471:23 472:21,22
473:3
**assign** 411:21
**assigned** 408:22
415:13,18 416:14
419:8
**assignment** 411:4
412:1 479:2 480:2
481:2
**assist** 414:6
416:18
**assistance** 463:15
470:23 471:20
472:8,10,20,23,24
473:4,16
**assisted** 421:1
473:19
**assisting** 417:3
**assume** 433:8
**assumes** 454:22
456:8
**assuming** 415:15
431:21
**attached** 480:7
**attorney** 413:5
477:2
**attorney's** 398:11
**authorization**
439:21
**authorize** 480:11
**authorized** 414:15
425:18 426:20,23
430:2,5,7 443:16
455:4 464:5
**automatic** 410:4
**available** 414:19
442:23
**ave** 478:1

**avenue** 398:13,22
399:9 400:3 401:4
**aware** 407:16
462:17 473:2

**b**

**bacchus** 398:12
**back** 412:18 414:9
414:23 416:4
428:25 433:1,3
439:4 469:1 474:4
478:15
**bad** 409:17 469:5
469:8
**baker** 406:5 408:6
408:9
**baltimore** 399:4
**baron** 398:6
**baronbudd.com**
398:9
**bartlit** 400:20,23
**based** 443:21
454:17 460:21
464:8 466:22
**basic** 418:23
**basis** 454:8
**bates** 403:7,8
456:17,23 467:9
467:17
**bblock** 399:15
**bears** 467:17
**beck** 400:20
**beck.com** 400:23
**beginning** 403:7,8
456:17 467:9
**behalf** 398:2,6,10
398:16,20 399:2,6
399:11,17,21
400:2,10,15,19
401:2 464:12
466:23

**believe** 420:2
423:25 430:14,21
432:21 437:11
438:25 441:23
444:24 445:8
447:24 449:18
450:6,17 457:25
460:24 461:10
464:1 467:1 469:3
469:9,17 471:25
472:25 473:6
**believed** 422:7
**benjamin** 399:12
**bennett** 398:11
407:10,11 414:14
418:9 420:6,23
423:8,11 424:19
424:24 425:10,12
426:10,17 428:6
429:10 430:1,24
433:6 434:17
436:14,23 437:5
437:24 438:10,23
439:23 440:11,19
440:21 442:9
443:8,15 444:18
447:21 448:3,12
448:21 449:8,12
449:23 450:3,15
450:24 451:10
452:2,10,12,17
453:1,17 454:12
454:23 455:3,19
464:4 465:18
466:19 471:3
472:12 473:8
**bennett's** 443:25
**benzo** 437:13
**benzodiazepine**
437:10

**benzodiazepines**
438:2
**benzos** 437:15,19
437:20
**berne** 397:22
**best** 412:2 463:19
473:14
**beyond** 441:4
**big** 423:11
**bit** 409:7 419:4
420:15 440:1
451:16
**block** 399:12
402:8 406:1,18
413:7 416:11
423:9 425:23
426:24 443:7,24
444:10 452:15
473:20,25 474:2
**board** 458:21
462:11,12,13,21
463:1,13,16,17,23
464:2,18 465:1,2,9
465:14,20,25
466:2,10,13,15
468:1,2,9,19
469:11
**board's** 464:15
**boston** 399:23
**bottom** 410:15
**boulevard** 398:3,7
**boy** 427:11
**boylston** 399:23
**bracket** 422:25
**bridgeside** 398:3
**briefly** 470:3,11
**bring** 442:5,19
443:14 444:5,16
464:24 474:4
**bringing** 445:7

broader 412:11
brunner 401:3
budd 398:6
bulk 462:6
burling 399:12

**c**

c 399:12
ca 478:25
calendar 459:14
california 398:8
 400:8
call 409:12 421:22
 445:14 447:11
called 406:12
 447:12 471:22
calling 463:5
calls 413:14
 424:13 441:3,12
 446:24 452:1
 453:17 455:17
 466:17 473:9
capacity 443:6
 464:11
caption 476:20
care 470:5
career 416:25
carfentanil 439:2
 439:4
carolina 398:4
cars 416:23
case 397:7,11,13
 397:15 407:21
 418:20 426:21
 428:8 429:22
 430:3 431:2,24
 432:18 444:12,20
 446:17 458:19
 459:25 460:6
 462:10,11 463:24
 467:4 478:6 479:3
 480:3

cases 417:13 418:3
 418:4,10,11,25
 419:12 423:3,18
 424:12 425:14,20
 434:24 436:8
 439:11,11 443:13
 444:4,14 446:14
 446:14,23 447:1
 462:14 463:12
 466:12
cause 476:11
centre 399:19
certain 411:8
 417:16,16,17
certificate 402:10
 476:1 480:11
certification 479:1
 480:1
certified 406:15
certify 476:8,18
 477:1
chain 467:14
change 407:18
 441:10 465:20
 466:4 478:13,14
 480:8 481:3
changed 440:17
changes 407:15
 478:12 479:7
 480:7,9
changing 441:15
chapter 417:24
charged 429:13
charges 426:19
 442:5,20,25
 443:14 444:6,16
 445:7
charters 424:6
check 439:21
china 429:5 434:3

christopher
 398:21
cipriani 398:17
circumstances
 411:8,11,13
cite 452:14
city 397:12 398:2
 398:6 408:19
 410:2,3 411:20
 413:20 415:1
 416:21,22 434:16
 451:6 466:24
 467:22
citycenter 399:13
civil 406:14 475:3
 475:7 479:5 480:5
classifications
 437:18
clear 472:15
cleve 403:7,9
 456:18,23 467:10
 467:18
cleveland 397:12
 397:23 398:6,14
 398:22 400:4
 403:5 408:19,21
 408:25 410:2,4
 411:14,18,20
 413:21 415:1,7
 416:21,22 417:5
 418:22 434:16,22
 434:23 435:2,3,7
 435:12,13,14,15
 435:16,17,17,18
 435:19,21,23,24
 436:1 446:9 451:6
 456:15 457:23
 458:22 466:25
 467:22 469:5,7,9
 469:15 472:16
 477:7 478:2

close 410:21
 417:21
closing 410:22
clr 397:25
cluff 398:7 406:7
 407:4 409:11
 410:13 412:12
 413:14 415:3,10
 416:10 419:17
 421:17 424:13
 425:6,11 426:4
 428:4 430:13
 431:9,18 433:22
 434:8 437:23
 438:9,21 439:19
 440:9,23 441:3,11
 441:18 442:8,12
 443:5 444:17
 445:13 446:13,24
 447:19 448:20
 449:22 450:13
 451:8,25 454:10
 454:21 455:17
 456:7 457:14,22
 458:4 459:2,22
 460:17 461:3,6,15
 461:24 464:13
 465:4,16 466:6,17
 466:24 467:5
 471:1,6,10 472:11
 473:5,24 474:3
 478:5
cmmclaughlin
 398:23
codeine 428:18
 429:1,22 432:9
cohen 401:8 413:4
 413:8,10 426:24
 427:3 444:7 474:6
colorado 400:22

columbus 428:21

combat 464:3
466:16

combinations
459:9

come 410:25
414:23 419:1
428:25 439:4

coming 416:4
463:17

commission
477:16 479:19
480:25 481:25

commissioned
476:8

common 435:1,5,6
463:21

companies 399:7

company 399:17
426:6 472:2

compare 461:13
461:18,19 462:2

compared 461:21

compiled 457:5,10

compiling 460:1

complaint 445:21
470:5

complaints 455:11

complete 445:18
446:6

completed 476:20
478:15

compliance
415:14,19,24,25
418:1,24

complicated
410:15 411:9

compound 410:13
431:9 440:23
442:8 444:17
450:13 459:22

461:16,25 466:6

concluded 442:4,6
442:19 443:13
444:5,15 474:8

conclusion 444:16
445:7 461:8

conclusions
442:13

conduct 450:21

confidential
473:10

confused 440:1

connected 463:10

connection 429:8
448:6 449:15,20
470:25

consider 415:21
415:23 421:20

considered 469:1

considering
423:17

consultation
447:17,24

consulted 447:25

consumes 445:15

consuming 445:12

cont'd 399:1 400:1
401:1 405:1

contact 464:22

contacted 465:22
465:25

contacting 466:2

continue 411:21

continued 397:17
406:2,4

controlled 453:7
471:16

conversation
469:24

convicted 428:2
428:11 429:7,13

429:19 430:9
431:5 432:14,16
433:20 457:24

conviction 427:22
431:13 457:19

convictions 429:2
429:4,14 433:16

cooperation 466:9

copy 417:10
455:25

corporation
399:11 400:10

correct 408:18
434:5 435:9
459:17 468:3
470:12 472:6
476:16

corrections 478:12
480:17

correctly 408:17
412:10 442:20
459:12

counsel 406:3
407:3,15,22
473:20,23 475:1
475:10 477:2

counterfeiting
445:1,3,9

counting 409:24

counts 408:12
471:22

county 397:10,14
398:2 457:9 476:4
479:10 480:15

couple 446:17,19

course 450:9
459:6 466:4
467:21

court 397:1
402:12 479:7

courthouse 398:12

cov.com 399:15,16

covington 399:12

creating 431:1

creative 417:13

crime 442:7,15

crimes 436:1

currently 416:14

custody 402:12

cuts 417:11

cuyahoga 397:10
476:4

cvs 399:2,2

**d**

d 399:8

d.c. 399:9,14

dallas 401:5

dan 397:8

dangerous 430:10

daniel 399:3

data 450:2 454:2

databases 451:4,9
451:12,17,21
452:6,9

date 409:4,7
410:16 456:24
475:11 478:8
479:3,9,19 480:3
480:13,25 481:20
481:25

dated 403:6
456:16 467:17

david 401:8

day 398:21 410:24
477:7 479:16
480:22 481:22

days 409:23
478:18

dea 419:13 443:17
452:22,24 453:4,8
464:12 466:23

**[dea's - enclosed]**

**dea's** 449:24
**dealing** 453:6,23
**dealt** 418:23
**dear** 478:10
**deception** 430:10
**decision** 442:5,18
  442:19 443:14
**deed** 479:14
  480:20
**deemed** 478:19
**defendants** 428:8
  428:22
**deficient** 469:18
**defined** 443:4
**definition** 419:23
**deliberative** 455:5
  455:8 473:9
**delivery** 475:9,11
**demarcation**
  465:13
**denver** 400:22
**depart** 411:22
**departed** 406:6
**department**
  398:10 403:5
  453:16 455:6
  456:15 478:22
**departmental**
  403:6 456:16
**depends** 423:11
**deposed** 406:15
  408:12
**deposition** 397:17
  406:2,25 407:13
  407:24 408:2
  419:22 456:13
  467:8,13 472:5
  474:8 476:19
  478:8,11 479:1,3
  480:1,3

**depositions** 406:4
  406:9 407:25
  408:10,14 471:19
**description** 403:3
**designed** 441:24
**detective** 406:2,19
  408:8,9,16 411:6
  411:15,16 413:9
  415:6,17 418:22
  426:7 440:24
  446:10 447:9
  451:7 458:18,22
  467:19,23 473:22
  474:4
**detectives** 406:4
  415:13 416:18
  417:14
**determine** 460:19
**determined** 459:6
**determines** 424:2
  424:5,11
**detroit** 398:18
**difference** 416:20
**different** 415:4
  418:4 429:23,24
  439:5 453:16
**difficult** 417:2,18
  462:1 473:18
**difficulties** 417:4,7
**direction** 453:12
  457:5,9
**disclose** 414:15
  425:18 430:2,5
  443:16 455:4
  464:5
**disclosed** 433:7
**disclosing** 455:7,8
  473:12
**discretion** 455:9
**discuss** 414:19

**dispensed** 454:20
**distributor** 470:24
  471:13,24 473:3
  473:19
**district** 397:1,2
**diversion** 411:14
  411:16 415:8,14
  415:18,21 416:1
  417:25 418:2
  425:9 443:12
  451:18,23 452:25
  453:24 454:2,17
  464:3,16 466:16
  470:1,17 472:10
  473:4
**diversions** 437:18
**diverted** 470:6
**diverting** 455:15
  455:21,22,24
  456:1,6
**division** 397:3
**dmoylan** 399:5
**doctor** 422:14
  423:23 439:10
  440:7 441:16
  444:12 447:12
  458:10
**doctor's** 433:2,4
  433:11 435:22
**document** 397:8
  403:5 456:14,22
  457:3,4 459:13
**doing** 406:22
  413:2,20 415:8
  417:13 433:20
  435:16 458:7
  462:4,6 469:16
**downside** 415:6
**dozen** 421:5,7,9,12
  423:18 434:24

**dr** 456:2,4,5 458:1
  458:7,19 459:14
  460:9 461:12,21
  462:11
**drop** 410:14
**drug** 398:10,16
  400:10 438:13
  440:4
**drugs** 430:10
  453:24 458:9,25
  459:9
**duly** 406:14 476:7
  476:10
**dummies** 471:21
  472:22
**duties** 464:7,10
  467:22

**e**

**e** 401:3 403:8
  467:9,14,15,20
**earlier** 443:4
  466:8
**easiest** 410:9
**east** 399:3
**eastern** 397:3
**edwards** 467:15
  467:16,21,25
  469:25
**eight** 409:22
**either** 408:8
  435:16 446:11
  477:2
**ellis** 400:2
**email** 478:17
**embarrassed**
  435:21
**emoji** 468:17
**enacted** 465:24
**encino** 398:8
**enclosed** 478:11

endo 399:6,6 472:6
enforced 417:23 418:14
enforcement 398:10,16 410:21 412:16 414:16 415:14,24 417:21 470:15
enjoying 409:13
entered 480:9
entire 479:5 480:5
entitled 403:5 456:14
entity 471:15
equipment 414:12 414:13,17,18,20 414:22 416:23 417:9
erin 399:18
errata 407:16 478:13,18 480:7 480:10,18 481:1
esq 398:3,7,11,12 398:17,21 399:3,8 399:12,13,18,22 400:3,7,11,16,21 401:3
establish 433:8
establishes 453:4
estimate 424:25
et 397:10,12,14,14 428:7
event 477:3
evidence 460:2
exactly 409:6 411:10 460:18
examination 402:7 406:13,17
example 418:19 440:7 470:13,16

exception 406:6 446:20
exchange 467:20
executed 480:10
execution 479:14 480:19
exhibit 402:12 403:5,8 456:13,22 467:8,13
exhibits 402:4 403:1
experience 412:8 412:11 467:4
experienced 417:5
expert 441:3 447:18,25 455:17
experts 441:6
expiration 479:19 480:25 481:25
expires 477:16
explain 436:5 471:13
explained 471:25
explanation 435:11
exposed 412:9,15
exposure 417:20
extent 414:18 425:13,15 426:18 426:20 430:4 443:18 453:19 455:6 464:8 473:11

**f**

fact 413:2 442:15 453:15 464:23
factors 412:20
facts 443:17 454:22 456:8 464:6,9,9

fair 409:18 411:10 421:13 422:5 460:12 466:9 469:20
fairly 410:15 445:25
fall 445:24
false 455:24
familiar 449:17
family 437:10,12
far 409:9 419:2 435:25 459:25 460:23 471:23
fast 427:8
fastest 446:16
february 410:17
federal 406:13 417:22
fellow 417:14
felonies 470:19
fentanyl 429:5 433:18,21 434:2,4 434:7 439:5
field 441:6
filled 431:7,15,20
find 467:3 478:11
fine 406:23
first 406:14 420:16 431:11 456:25 467:19 476:10
five 423:9,13,15 434:12
fix 407:18
floor 399:19 400:8
focus 426:2 437:21 438:2,7,12,19 439:7,10 440:7 447:9
folks 428:11

follow 456:11 472:20
followed 441:25
following 468:17 473:2
follows 406:16 442:1
force 410:19,20 419:13 443:6
foregoing 476:15 476:20 479:13 480:18
forged 423:3
forgery 431:2 439:10 444:12
forging 431:6,19
forgot 435:8
form 407:21 425:8 448:18
formal 470:4
former 469:9
forward 442:25 478:15
foundation 428:5 439:20 440:10 441:13 454:11 455:18 457:14 464:14 465:17
four 422:21,22 423:7 459:15
fourth 474:4
fraudulent 470:18
free 479:14 480:20
fully 432:13
fun 409:9,12
funded 417:3
funding 414:1 416:19,20
further 443:23 476:18 477:1

**g**

g  458:6
gather  470:11
gathered  442:23
general  418:10
  444:19 449:19
  454:1
generally  425:8,14
  425:19 443:19
  452:23 453:2,3,20
geographic  435:20
getting  407:16
  408:12 410:9,10
  417:15 431:7,15
  431:20 434:1
  450:12 459:21
  468:24
gibson  399:18
give  418:19 425:16
  428:15 445:20
  452:19 458:4
  466:21 475:1,10
given  476:12,17
go  411:12 412:18
  412:21 415:11,17
  420:12 431:11
  442:25 453:13,21
  467:13
goes  453:16
going  409:21
  410:24 412:3,5
  416:8 423:21
  432:3,18,20 444:5
  468:13,18 469:21
  472:7
goldstein  399:22
good  406:19,20,22
  409:16 412:7
  442:1
governed  446:1

governs  464:19
gray  399:22
great  423:1
greater  417:20
group  412:7 414:6
  424:4,8
groups  422:1
guess  451:15
  462:23
guidance  446:1
  460:2
guided  418:23
guys  469:5,7

**h**

hand  423:12
  456:21 477:6
handful  423:7,9
handling  457:6
happen  417:17
happened  442:21
  445:5 466:4
happy  468:24
harris  400:21
hbc  399:17
health  399:7
hear  469:5
help  463:17
helpful  452:25
  454:2
helping  470:14
henry  401:2
hereinafter  406:15
hereunto  477:5
hitting  410:12
hold  449:22
holding  423:12
honor  443:24
  444:10
hope  400:7 440:24
hours  457:10
  460:4,5,6,7,11

461:11,13,20,22
howard  398:18
hundred  427:14
hypothetical
  453:18 456:7
  461:25

**i**

identification
  456:19 467:11
identified  460:24
identify  428:1
  444:11,19,20
  451:11 452:5
ii  398:11
iii  397:17 478:8
  479:4,9 480:4,13
  481:20
illegal  430:9
  469:16
illicit  434:4,7
improper  421:16
  421:18,20 422:4,5
  422:12 443:3
  444:13,24 445:5
  445:11,14,18
  446:4,16 447:3,10
  447:11 448:7,9,17
  448:25
improperly
  421:25 422:7
include  416:9
  459:23
included  449:7
  459:24 478:13
including  414:17
  459:20
incomplete  453:18
  456:7 461:25
incorporated
  480:12

index  402:1,4,5
  403:1 404:1 405:1
indiana  399:2
indicating  478:13
indicted  430:7
  457:17
indictment  430:6
  459:19
individual  445:23
individuals  428:2
inferring  459:12
information  403:6
  425:17 430:3,4,6
  442:23 443:17,20
  451:12 452:19,22
  452:24 453:20
  456:5,10,16 457:7
  457:18 466:22
  469:25
initially  465:22
initiated  454:6,17
inside  435:7,12,17
  435:23,24
installments
  407:13
instances  443:2
instructed  452:18
instruction  407:14
  444:22 454:24
  472:13 475:2,10
instructions
  430:25 443:21
  466:20
interested  477:3
interject  429:10
internal  455:5,8
  473:9
interpretation
  419:19
introduce  413:8

**investigate** 425:14
444:3
**investigated** 442:6
**investigating**
451:18,23
**investigation**
419:5 421:21
424:17 426:3,22
428:3 429:6 432:1
432:5,10,19
437:16 438:3,8
439:7 440:4 442:4
442:18 443:13
444:2,21 445:6,19
446:4 448:10,14
448:16 450:10
452:25 453:12
454:7,17 457:6,11
457:12,16 458:1
458:20 459:13
460:10,14,21
461:2,4,5,12,14,23
462:5 463:1
464:17,22,25
470:15,21,25
472:10 473:4,15
**investigations**
415:8 417:17
419:6,15 420:4,20
420:21,25 421:15
422:18 423:5,23
424:2,17,23 425:2
425:17 426:2,15
427:10,20 429:3
433:14 434:6,14
434:15,21 436:3
436:11,20 437:3
437:13,15,17
438:6,18 439:2,8
439:18 440:8,16
442:4,17,22 443:3

443:18 444:14
445:12 447:4,10
447:16 448:1,7,24
449:15,21 450:7
450:21 454:2
462:18,20 465:3,7
466:3 473:15
**investigative**
414:16 445:16
**investigator**
431:24 432:22
**investigators**
442:24 462:3
**investigatory**
473:10
**involve** 434:16
437:3 443:3
447:17,23
**involved** 438:14
443:12 449:6
460:11 462:22
463:2,14,23 465:2
465:9,14 466:13
**involving** 419:15
420:4 423:3
425:15 434:6
439:2
**issues** 469:12
**item** 423:12

**j**

**j** 398:17 400:21
**jackson** 400:11
**jacksonkelly.com**
400:14
**james** 398:3,11
**james.bennett4**
398:15
**janssen** 400:2
**january** 409:6
467:17 469:2

**jledlie** 398:5
**job** 412:19 468:21
469:1
**john** 397:18
398:17 400:16
402:7 406:2,12,17
476:9 478:8 479:4
479:9 480:4,13
481:20
**john.j.cipriani**
398:19
**john.lavelle**
400:18
**johnson** 400:2,2
**join** 437:24 438:10
438:23 439:24
468:19
**joined** 418:5
**joining** 413:19
414:11
**joint** 458:20
462:17
**jones** 398:21
**jonesday.com**
398:23
**josh** 399:22
473:25
**joshua.goldstein**
399:24
**jr** 400:16
**judge** 397:8
**judgment** 441:8
**jumping** 433:1
**justice** 398:10
455:6

**k**

**k** 400:11
**kelly** 400:11
**kind** 420:4,17
424:22 439:7
445:24 458:10

465:24
**kinds** 414:13
430:16,20 439:8,9
463:4
**know** 410:7 411:1
411:2,5,18,25
412:4 413:16
417:3 420:19
422:3 424:11
426:11,11 428:13
428:14,16,16
430:16,20 431:22
433:10 434:20,23
439:24 440:14
444:2,3,12 445:4
445:17 446:11
449:14,19,25
450:16,19 452:11
452:14 455:20
456:2,4,5 457:15
462:8,20 469:6,19
470:20,22
**knowledge** 439:20
452:9 463:19
464:14 473:14
**known** 414:19
**knows** 449:24
**krncevic** 400:3

**l**

**l** 397:25 476:6
477:13
**l.p.** 397:10,12,14
**labeled** 456:23
**lacks** 428:4 439:20
440:9 441:12
454:11 455:18
457:14 464:14
465:16
**lakeside** 398:22
**lakewood** 458:17

**large** 460:14,21
**larger** 412:15
    416:17 418:12,12
**largest** 460:15,19
**lavelle** 400:16
**law** 410:21 412:15
    414:16 417:20,25
    418:20 470:14
**lawful** 406:12
**laws** 417:23
    418:14,16 419:1
**lead** 431:23,23
    432:22 446:14
    457:6 458:18,21
**learn** 412:9
**leave** 410:10
    411:15 415:16,17
**ledlie** 398:3 406:6
**legal** 413:15 478:1
    481:1
**leonard** 406:4
    408:7,8
**letter** 478:19
**level** 449:20 454:1
**lewis** 400:16
**license** 471:15
**licensed** 422:6
    470:24 471:12
    472:9,21 473:3
**licensing** 464:20
**limit** 410:12
**limitation** 427:1
**limited** 454:5
    462:6
**limiting** 446:3
**line** 410:15 465:13
    478:13 480:7
    481:3
**listed** 480:7,17
**listing** 480:7

**litigated** 432:13
**litigation** 397:6
    478:6 479:3 480:3
**little** 418:21 419:4
    420:15 440:1
    451:16
**live** 435:16,18
**lives** 435:14
**llc** 399:2,2,21
**llp** 399:12,18,22
**localities** 418:13
**locality** 418:13
**locke** 401:3
**lockelord** 401:6
**long** 409:2 431:22
    432:1,10 445:24
    446:16 474:3
**longer** 446:1
**longest** 461:1,7
**look** 416:23
    463:18
**looking** 409:19
    421:21 455:15
    470:3,12
**looks** 470:3
**lorde** 401:3
**los** 400:8
**lot** 423:18 445:15
    456:10 462:4

---

**m**

**m** 398:21
**m.d.** 458:12
**machines** 417:10
**madam** 478:10
**maddie.brunner**
    401:6
**madeleine** 401:3
**mail** 403:8 467:9
    467:14,15,20
**main** 400:3,12
    438:13

**making** 422:3
**mallinckrodt**
    399:21
**mandate** 467:2
**mandated** 470:18
**mandates** 442:2
**manufacturer**
    450:11,11,23
    471:17 472:9,21
    473:1
**manufacturing**
    444:25
**marcus** 399:18,20
**marked** 403:3
    456:18,21 467:10
**market** 400:17
**maryland** 399:4
    400:15
**massachusetts**
    399:9,23
**master** 401:8
    413:4,8,10 426:24
    427:3 444:7 474:6
**matt** 400:7
**matter** 432:23
**matters** 433:14
    455:9
**mckesson** 399:11
**mclaughlin** 398:21
**md** 397:7
**mdl** 397:6
**mean** 418:15
    426:5 431:5,6,15
    439:9 440:2,2,3
    453:15 459:1,5
    461:4,7 468:23
**meaning** 438:13
**means** 409:16
    433:24 435:12
    460:19

**meant** 417:22
    469:7
**medical** 422:6
    430:12 441:1,2,6,7
    441:17 447:17,25
    458:25 459:10
    465:1,2,9,14,20,25
    466:2,10,13,15
**medication** 425:4
    430:16 454:18,19
    454:19 455:15,21
**medications** 422:8
    430:18 450:8
    453:7 454:9 459:8
    472:3
**meet** 442:24
**meeting** 407:3
**members** 416:6
**mention** 473:17
**mentioned** 433:18
**methamphetamine**
    437:11
**michigan** 398:18
**midwest** 478:17
    481:1
**mills** 419:16 420:5
    420:5
**mind** 413:24 447:5
    460:22
**miskiewicz** 428:7
    429:16 431:24
    433:1 435:8
**misstates** 412:12
    415:10 416:10
    431:10 441:11
    459:3
**mistakes** 407:15
**misunderstanding**
    444:8
**mix** 437:21 440:15

**moments** 409:15
409:17,17
**months** 409:22
446:18,19
**morgan** 400:16
**morganlewis.com**
400:18
**motley** 398:2
**motleyrice.com**
398:5
**moved** 466:7
**moylan** 399:3
**mt** 398:4
**mudge** 399:8
**mudra** 468:5,7,11
468:15 469:22,23
**multi** 455:12
**multiple** 418:13
423:19 437:17,18
**mwallace** 400:9
**myers** 400:6

**n**

**n** 458:6
**name** 458:2 478:6
479:3,4,15 480:3,4
480:21
**named** 476:9
**names** 428:1,10,13
428:16,24 452:8
**narcotics** 408:21
408:25 415:2,13
446:9
**national** 397:6
478:6 479:3 480:3
**nature** 418:18
**necessarily** 435:13
**necessary** 459:25
464:25
**need** 417:16
429:14 443:24
458:24 463:16

473:16
**needed** 407:17
416:15
**needs** 441:2
**never** 473:13
**new** 406:8 418:3
**nigro** 458:1,3,7,19
459:14 460:9
461:12,21 462:11
**non** 414:16 420:5
443:17 451:12
452:5 464:6
466:22
**normal** 445:23
**north** 398:22
**northern** 397:2
**notarized** 478:14
**notary** 476:6
477:13 478:25
479:10,18 480:15
480:23 481:23
**note** 478:12
**november** 403:6
456:17,24
**number** 403:3,7,9
420:11 424:25
426:11,12 453:5,9
456:3,18 460:11
467:9 478:7,13
**numbers** 419:5
423:20 467:18
480:7
**numerous** 420:10
420:18 421:4
422:20 427:11,25
428:21 437:19
462:18
**nw** 399:9,14

**o**

**o** 458:6
**o'melveny** 400:6
**oarrs** 448:6,8,11
**object** 464:13
**objection** 404:3,3
404:4,4,5,5,6,6,7,7
404:8,8,9,9,10,10
404:11,11,12,12
404:13,13,14,14
404:15,15,16,16
404:17,17,18,18
404:19,19,20,20
404:21,21,22,22
404:23,23,24,24
404:25 405:3,3,4,4
405:5,5,6,6,7,7,8,8
405:9,9,10,10,11
405:11,12,12,13
405:13,14,14,15
405:15,16,16,17
405:17,18,18,19
405:19,20,20,21
405:21,22,22,23
405:23,24,24
409:11 410:13
412:12 413:14
414:14 415:3
419:17 420:23
421:17 423:8
424:13 425:6,10
425:11,12 426:4
426:17 428:4
429:11 430:1,13
430:24 431:9
433:22 434:8
436:14,23 437:23
437:24 438:9,11
438:21,23 439:19
439:25 440:9,11
440:19,21 441:11

441:18 442:8,9
443:8,15,25
444:17,18 445:13
446:24 447:19,21
448:3,12,20,21
449:12 450:3,13
450:24 451:8,25
452:2,3 453:17
454:10,12,23
455:3,19 459:2,22
460:17 461:3,6,15
461:24 464:4
465:4,16,18 466:6
466:17,19 467:5
471:1,3 472:12
473:8
**objections** 402:5
404:1 405:1
431:18 454:21
472:11
**obligation** 411:19
**obtain** 430:10
**obtained** 450:9
**obtaining** 430:22
460:1
**obviously** 420:15
**occurred** 443:2
**october** 477:16
**office** 398:11
430:15 433:3,4
435:22 458:15
477:6
**officer** 417:5
419:7,13 443:6
452:21 457:23
469:10,15,22
472:16
**official** 479:15
480:21
**oh** 473:25

ohio 397:2,12,14
397:23 398:14,22
400:4,13 403:6
436:4,9,13 456:15
458:17,21 462:12
462:13 465:1,2,9
468:2 470:19
476:2,7 477:7,14
478:2
okay 414:8 419:8
421:9,23 422:10
omm.com 400:9
once 445:8
ones 416:13 449:5
462:19
ongoing 425:17
428:9 432:6,12
op 397:11,13,15
opened 470:21
operated 465:21
opiate 397:6 478:6
479:3 480:3
opinion 413:15
441:4 452:1
455:18 464:8
466:21
opinions 466:20
opioid 438:20
459:8
opioids 437:3,9
440:25,25 441:7
441:17 472:9
opposed 437:21
439:11 440:8
oranges 461:18
orchestrating
431:20
organizing 460:1
originated 428:20
outside 434:16,23
435:2,17,18 436:4

436:9,13,21
445:22 464:9
overlap 423:20
overprescribing
439:11 454:7
460:10 461:5,14
461:22 463:6,9,11
463:24 465:3,6
466:3,12
overtime 460:6
oxford 399:19
oxycodone 430:21
430:23 456:3

**p**

p 399:3 400:16
p.m. 397:20 474:8
page 403:5 419:19
456:14,22 478:13
478:15 480:7
481:3
paperwork 412:21
412:21,22,24,25
413:3,12,17,20,22
417:11
par 399:7,7
parameters
442:24
paraphrase
412:10
parma 433:9
435:23,24
part 413:22
418:16 420:16
428:8,12 429:21
431:3,12,13
432:12 436:5
437:16 464:21
465:23 467:1
480:9
particular 439:6
439:18 462:25

partner 408:3,24
409:2 462:18
parts 412:19
party 477:2
passing 469:25
patena 408:5,16
411:7 415:6
patrick 408:7
pattern 453:15
pellegrino 397:25
476:6 477:13
pennsylvania
399:19 400:17
people 408:1
412:7 414:3,6,24
414:25 416:4,6,9
416:12,13 431:8
432:14 458:24
percocet 430:21
430:23 472:5
performance
464:7,10 469:13
period 440:13
person 411:25
433:19 435:22
450:5 453:4
455:23 457:16,21
personal 439:20
464:11,14 466:21
personally 479:11
480:15
perspective
449:24
pharma 397:10,12
397:14
pharmaceutical
399:7 450:22
pharmaceuticals
399:6,7 470:24
pharmacies
471:17

pharmacist
424:18 425:3
470:14,17
pharmacists
425:15,21,22
pharmacy 425:4
426:3,5,6 458:21
462:11,12,14,21
463:1,13,23 464:2
464:18 468:1,2,9
468:20 469:11
470:14,17
philadelphia
400:17
phone 406:8 478:3
phonetic 416:2
physician 454:9
physician's 430:15
picture 415:15
pill 419:15 420:4,5
pills 431:8,16
450:12
pittsburgh 399:19
place 435:13,19
436:1,4 442:16
445:24 468:16
476:19
play 419:2
pleasant 398:4
please 406:10
420:12 428:1
435:10 451:4
452:20 471:14
478:11,11
pled 428:12,22
457:17 459:7
plus 413:24
414:11 417:19
pluses 416:17
point 398:22 462:5

police   403:5 417:2
    417:5 451:6
    456:14 467:22
    469:10,15 472:16
polster   397:8
pool   414:6 416:18
porter   399:8
portion   406:25
position   468:19
    469:10,12
potato   416:2,2
potential   412:8
    414:11 415:5
    423:23 454:7
    470:1
potentially   411:17
    422:15
practice   433:11
pratt   399:3
prepare   406:24
    459:25
prescribe   441:7,17
prescribed   441:1
    454:19
prescriber   421:25
    445:15,22 446:17
    464:18
prescribing
    421:16,18,21
    422:1,3,4,7,12
    443:3 444:13,24
    445:5,12,14,19
    446:4 447:3,10,12
    448:7,10,17,25
    454:9 459:8
    464:20
prescription   397:6
    429:20 440:25
    450:8 453:7,24
    455:15,21,24,25
    458:8 459:9 472:3

472:9 478:6 479:3
    480:3
prescriptions
    422:2 423:3
    429:25 431:1,15
    431:19 435:25
    455:16 456:3
    458:24 460:24
    470:7,18
presence   476:14
present   401:7
    406:3
previous   471:18
primary   436:12
    436:21
prince   397:18
    402:7 406:3,12,17
    406:19 426:7
    440:25 447:9
    456:22 467:20
    473:22 474:4
    476:9 478:8 479:4
    479:9 480:4,13
    481:20
prior   406:9 407:13
    413:18 460:20
pro   416:7
proactive   464:2
    466:15
probably   408:6
    422:24 423:14
problem   411:15
    471:9
procedure   406:14
    475:7 479:5 480:5
process   455:5,8
    473:9
processing   430:10
produced   457:4
producing   422:2

production   478:15
    478:17,22
professional   422:6
    430:12
program   410:14
promethazine
    428:17,18 429:1
    429:22 432:9
pronounce   408:17
properly   442:1
proportion   434:21
proposed   456:9
prosecutor   446:2
    457:6,10 460:3
prosecutorial
    455:9
prosecutors
    442:25
protocol   464:21
    465:24
protocols   417:16
    456:10
provided   406:13
    472:24
psychiatrist
    458:11
public   414:16
    426:19,21 428:17
    430:3,5 431:21
    443:17,20 451:12
    452:5,9 464:6,9
    466:22 476:6
    477:13 479:10,18
    480:15,23 481:23
publicly   414:19
    433:7
purchase   471:16
purdue   397:10,12
    397:14 471:20
    472:2,19 473:1

purposes   441:1,7
    441:17 456:19
    458:25 459:10
    467:11
pursuant   475:3,6
put   420:10

**q**

qualified   441:8
    476:8
quantity   454:8,18
question   420:7
    424:20 425:22
    427:1 433:7
    434:18 436:16,24
    438:1 439:22,24
    442:10 443:9,19
    444:9 449:24
    450:16,25 452:18
    454:13 455:7,22
    456:25 466:7
    467:19 471:4,7
    472:14
questions   473:21
    473:22
quicker   446:12
quickest   446:5
quickly   445:25
quite   422:20 432:3
quo   415:12

**r**

r   398:11 458:6
raiola   399:13
range   421:8
    445:17,20,23
raymond   400:3
raymond.krncevic
    400:5
reach   410:17
    464:23

reached  463:14
reaching  463:16
read  479:5,6,12
    480:5,6,17
reading  478:19
ready  452:17
    468:24
really  471:2
reason  478:14
    480:8 481:3
reasons  459:11
recall  466:14
    472:4
receipt  478:18
receive  455:11
    469:11
received  442:2
    443:22 446:2
    460:3 470:4
recess  447:8
    452:16 474:1
recognize  457:1
recommend  411:6
record  431:21
    480:9
redirect  473:23
reduced  476:13
reduction  413:13
redundancy
    412:25
reference  468:4,8
    478:7 479:2 480:2
referenced  476:13
    476:17 479:11
    480:15
referring  416:5,13
    417:7 418:20
    452:13 469:6
reflected  460:4
regarding  425:21
    445:22 466:20

471:21 475:2,11
registered  453:4
registrar's  452:22
    452:24
registration  453:9
regular  467:21
regulations  441:25
regulatory  418:17
related  417:25
relates  397:8
relative  434:20
    477:2
remaining  411:14
remember  416:7
    428:8,24,24 429:7
    429:15 457:21
    458:15 465:21,23
remind  409:4
renee  397:25
    398:12 476:6
    477:13
renee.bacchus
    398:15
rep  469:5,8
repeat  420:14
rephrase  471:11
replace  410:25
    469:22
replacement  411:3
reporter  402:12
    479:7
reporter's  402:10
    476:1
reporting  457:8
    470:10,17,19
representative
    450:22
request  480:9,11
requested  460:2
    475:1,6,10

required  478:25
requires  425:16
resource  416:5
resources  412:6
    413:23,25 414:10
    416:8 462:3,6
    464:24
responsibilities
    413:21
rest  431:21
restate  415:25
result  470:21
resulted  426:16
    427:21 429:4
    433:15 457:13,19
retained  402:12
retire  409:21
    410:1,3,16,19
    413:6
retirement  410:4
    410:24 468:25
retiring  410:8
    468:5,15
returned  478:18
review  407:12
    452:13 475:2,6
    478:12 479:1
    480:1
reviewed  407:14
rice  398:2
right  415:9 419:7
    422:16 425:22
    438:4 458:12
    462:9 470:2
ring  428:19 429:2
    429:20 432:10
rite  400:15 470:8,9
ropes  399:22
ropesgray.com
    399:24

ross  401:4
roughly  409:22
round  474:5
rpr  397:25
rules  406:13
    441:25 475:3,7
    479:5 480:5
ruling  443:25
run  414:9
rx  399:2

s

s  478:15 480:8,8
    481:3
sabrina  428:7
    429:16
sales  450:21
samuel  458:1
sandra  400:11
saw  407:22
saying  456:2
    463:16,18 472:19
schein  401:2
sluff  398:9
scope  412:15
    414:14 417:20
    418:12 419:9
    425:12 426:17
    427:2 429:11
    430:1,24 441:4
    442:9 443:8,15
    444:18 447:21
    448:3,21 450:24
    452:3 455:3,19
    466:19 471:3
    472:12 473:8
scripts  431:7
    470:6
seal  477:6 479:15
    480:21
search  411:2

second 418:15
see 407:17 408:13
426:14 439:22
449:2 468:6
seek 463:15
seen 459:10
seized 450:9
sell 431:16
selling 431:7,16
433:25
senior 468:9
sense 416:25
separate 469:21
service 399:17
services 399:2
set 442:24 477:5
shape 407:21
shapira 399:18
shapira.com
399:20
share 452:20
sheet 407:17
478:13 480:7,10
480:18 481:1
shelly 408:5
ship 471:17
shopping 423:24
439:10 440:7
444:13
short 440:13 474:1
shortcut 419:21
show 439:20
464:14
shown 470:8
478:16
signature 475:5
477:12 478:14
signed 479:13
480:18
signing 478:19

simplest 417:9
sincerely 478:21
sir 408:11,15
427:4 457:1,2
478:10
skzerrusen 400:14
solely 454:8,18
solutions 399:7
478:1 481:1
somebody 453:6
457:23
sorry 409:22
427:7 432:25
435:9 445:2
468:14
sort 447:17,23
449:6,7
sought 470:23
472:8
sources 451:12
south 398:4 400:7
400:12
southern 419:15
419:19 420:1,5
spanned 459:14
speak 424:5
speaking 466:23
speaks 416:24
special 401:8
413:4,7,10 426:24
427:3 444:7 474:6
specialist 440:2,2
specialists 439:17
specialty 440:3
specific 418:10,20
425:16 443:17
450:11
specifically 417:25
418:24 419:11
specifics 444:20

specified 446:13
451:15 476:20
speculation
424:14 441:12
446:25 453:18
466:18
speed 420:17
spelling 458:5
spend 461:13,20
461:22
spent 457:11
459:20,23 460:9
461:12
spit 451:20
sraiola 399:16
ss 476:3
stance 464:15
start 451:3 461:7
started 409:5
432:6,20 466:1
state 436:4,9,13
450:4 470:19
476:2,7 477:14
479:10 480:15
statement 479:13
479:14 480:19,19
states 397:1
398:10,11,12
436:22
status 415:12
statutes 417:23
418:23
stay 453:14,21,24
stealing 425:4
stella 406:5 408:6
408:9
stenotypy 476:14
stephen 399:13
stepped 473:25
sterling 398:7
478:5

steroids 437:11
438:7
stop 417:12
store 426:6
strains 411:17
street 397:22
398:18 399:3,14
399:23 400:7,12
400:17,21
strike 462:9
string 403:8 467:9
strong 459:8
strongsville 470:5
stuff 437:22
style 419:15,20
420:1,5
subscribed 479:10
480:14 481:21
substances 437:8
453:8 471:16
substantial 466:10
suggest 413:5
453:11
suggestion 453:9
suite 397:22
398:13 399:4
400:3,12,22 401:4
478:2
summit 397:14
398:2
superior 398:13
478:1
supervisor 424:4,8
suppose 463:2
supposed 425:5
sure 409:6 419:20
420:10 421:3
422:20 423:20
424:15 429:9
432:3,11 436:7
438:15 439:3,3

460:18 461:9
463:22 465:12
468:7,20
**suspected**   425:9
**suspicion**   425:3
**swear**   406:10
**sworn**   406:14
476:10 479:10,13
480:14,18 481:21
**synonyms**   416:1
**system**   441:24
442:1

**t**

**table**   412:17
**take**   409:16
413:17 432:2,10
445:23 446:23
461:20
**taken**   397:21
442:16 447:2
476:19
**takes**   445:18,25
**talk**   419:4
**talked**   407:20
408:6 471:19
**talking**   418:7
419:10,11 421:24
422:9,13,14
433:13 446:7
451:16 469:14
**target**   434:22
435:2,6,11,14
**targets**   434:16
**task**   419:13 443:6
**tds**   408:22 409:5
409:10,14,20
410:1,5,23 411:4
411:19,21 412:1,3
413:18,19,22
414:11,25 415:1,7
415:11,17,20,24

416:6,8,14,16,21
417:3 418:3,5
419:2,6,7,8,13
432:6,20 433:15
434:15 439:17
440:6 446:3 450:2
451:5,19,24
453:14,21,25
463:15 466:5
**techniques**   414:17
473:10
**telephone**   399:17
400:6,15,20 401:2
**tell**   439:14 455:14
455:23,23 467:16
470:22
**telling**   416:7
**ten**   420:18 422:23
423:16 427:12
**tend**   440:6
**tenth**   399:14
**terms**   411:3
416:19 424:1
451:17 460:10
**tested**   439:4
**testify**   476:10
**testifying**   459:20
**testimony**   412:13
415:10 416:10
431:10 441:12
459:3 476:12,16
479:6,7 480:6,9,12
**texas**   401:5
**tfo**   419:12,14
420:3,21 421:15
422:19 423:2,23
424:3,16 426:3,16
427:10,21 428:3
434:7,15 436:4,12
437:4,14 438:8,18
439:2,9 440:16,18

442:3 447:11
448:7,11,18 449:2
449:5,11,16 450:8
450:20 451:22,24
452:21 454:6,16
461:14,23 462:2,2
462:14 463:13,25
464:7,10 465:7
466:1,8,8,11,12
472:15
**thank**   413:10
444:10
**thanks**   406:23
**theft**   425:24
**thing**   416:3 417:9
453:3 461:17
**things**   412:2,8
415:11 416:24
417:1,15,16 419:1
435:16 464:20
472:22
**think**   408:5
410:22 411:20,25
412:6,14 415:5
416:16,23 417:19
421:13 423:10,17
425:24 426:25
427:19 434:11
441:9 442:7
443:22 447:12
448:9,14,16
452:17 460:12,13
461:17 466:8
469:13 471:18
472:4,6,18 473:21
474:2
**thinking**   423:14
**third**   417:19
**thirty**   478:18
**thought**   413:3
433:14

**three**   412:2,4,18
412:19,20,23
421:9,11 434:23
459:14
**tiered**   455:12
**tight**   417:1
**time**   410:12
413:18 424:9
440:13,17 445:12
445:16,18,24
446:1 447:20
459:18,19,20,23
459:24 460:8
462:5 467:14
473:17,18 476:19
**timed**   410:10
**times**   416:25
417:18 445:4
**tip**   470:1
**title**   450:4
**today**   406:21
415:20 422:13
**told**   408:1
**top**   412:2
**total**   410:20
420:21 460:5,7
**track**   450:10
**tracked**   459:18
**trafficking**   421:22
422:15 430:11,17
430:17 431:4,6,14
433:23 445:15,21
447:13,14 458:8
458:23 459:1,5
**transcribed**
476:15 479:7
**transcript**   402:1
475:3,6,9,11
478:11,12 479:5
479:12 480:5,11
480:17

transcription
476:16
transcripts 407:12
408:13
treat 441:2
trey 467:15
trial 459:20,24,25
true 476:16
truth 476:10,11,11
try 412:22 415:4
trying 412:14
418:21 419:21
420:16 423:1
431:8,16 461:18
464:3 466:16
tucker 400:2
tuckerellis.com
400:5
two 403:5 406:9
415:12 421:7,11
432:4 434:10,23
456:14,22
type 418:13,16,19
425:14 433:10
439:6 440:4,4,15
443:12 444:1,4,12
444:19 448:1
462:25 463:2
464:22,25 470:4
types 417:17 418:2
418:4,7,11 419:5,5
423:19 425:19
437:8 439:18
440:8 444:11,14
463:2
typical 460:9,13
464:21
typically 437:16
437:17 445:25

**u**

u.s. 398:16
uh 470:5
ulmer 397:22
ultimately 424:4
umbrella 419:2
undercover
448:19 449:1,6,7
understand
416:20 418:21
419:9 441:14
444:1,21 454:3
468:14 471:6,9,12
understanding
420:13 421:19
428:21,22 432:17
438:12 440:5,12
450:1 454:4
471:24 473:18
understood
442:20
underway 411:3
unit 408:21,25
415:2
united 397:1
398:10,11,12
436:21
unusual 446:22
urgent 470:5
usdoj.gov 398:15
398:15,19
use 448:6 449:11
useful 451:17,22
uses 450:2

**v**

v 397:10,12,14
478:6 479:3 480:3
vague 409:11
415:3 419:17
420:23 421:17

423:8,10 425:11
426:4 430:13
433:22 434:8
436:14,23 437:23
437:25 438:24
439:19,25 440:11
440:21 442:12
445:13 446:25
447:19 448:12,20
449:12 450:14
451:8,25 452:2
454:10,12 455:18
456:8 459:2
460:17 461:3,15
461:24 465:4,18
466:18 471:1
valid 459:10
vehicles 417:14,14
ventura 398:7
venue 433:8
435:15
veritext 478:1,7
481:1
veritext.com.
478:17
versus 416:21
434:22 435:2
violations 423:19
vol 478:8 479:4,9
480:4,13 481:20
volume 397:17

**w**

w 397:22 398:3
wait 459:15
waived 474:5,6
478:19
walgreens 400:19
wallace 400:7
walmart 398:20
want 419:4,20
439:21 441:16,22

441:23 444:3
446:14 447:9
468:21 469:4
wants 424:12
washington 399:9
399:14
water 447:6
way 407:21 413:7
415:4 419:7
455:11 459:4
466:8 471:25
ways 417:3 463:20
we've 433:13
went 415:6 427:7
west 398:13
wewatta 400:21
whereof 477:5
widened 418:25
wilson 399:8
wilson.mudge
399:10
winky 468:16
witness 406:11
444:23 471:8
475:2 476:9,13,14
476:17 477:5
478:8,11 479:1,4
479:11 480:1,4,15
witness' 478:14
wondering 416:12
431:14
words 442:6
463:15
work 408:20
409:13 410:19,23
415:20,21,23,24
416:22 417:2
424:2,12 425:20
434:14 439:15
441:24 448:19
449:1,6,7 450:7

[work - zuckerman.com]                                                    Page 18

| | |
|---|---|
| 453:16 457:10,22 | **yeah**  423:18 |
| 462:4,7 466:5 | 446:11 |
| 468:11 | **year**  409:8 420:14 |
| **worked**  418:3,5 | 420:15,22 461:20 |
| 419:6,12,14 420:1 | 461:21 465:23 |
| 420:3,17,20,21 | **years**  410:11,18 |
| 421:1,14,15 | 410:22 432:4 |
| 422:11,19 423:2 | 446:23 447:2 |
| 423:22 424:16 | 459:14 |
| 426:1,15 427:10 | **yinn**  429:9 |
| 427:21 428:3 | |
| 429:3 430:14 | **z** |
| 433:5,15 434:7 | **zero**  438:5,16 |
| 435:22 436:2,12 | **zerrusen**  400:11 |
| 436:20 437:2,14 | **zuckerman.com** |
| 438:8,18 439:1 | 399:5 |
| 440:16 442:3,17 | |
| 442:22 444:4,15 | |
| 445:6 446:6,15 | |
| 447:1,11,16 448:2 | |
| 448:10,17 449:16 | |
| 460:16 461:2 | |
| 462:10,13,19,21 | |
| 463:12,24 465:7 | |
| 466:12 467:16 | |
| **working**  411:18 | |
| 412:3,7 417:10 | |
| 420:17 434:21 | |
| 460:5,7 473:16 | |
| **works**  463:20 | |
| **worst**  412:4,19 | |
| **writing**  455:16 | |
| 458:24 | |
| **written**  456:3 | |
| **wrong**  458:7 | |
| **x** | |
| **x**  456:2,4,5 | |
| **y** | |
| **y**  456:3 | |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2) Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.