```
 1              UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION
 3  IN RE: NATIONAL          )   MDL No. 2804
    PRESCRIPTION OPIATE      )
 4  LITIGATION,              )   Case No.
                             )   1:17-MD-2804
 5                           )
    THIS DOCUMENT RELATES TO )   Hon. Dan A.
 6  ALL CASES                )   Polster
                             )
 7
 8                     __ __ __
 9            Thursday, January 10, 2019

                       __ __ __
10

11      HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
                CONFIDENTIALITY REVIEW
                       __ __ __
12
13
14
15        Videotaped Deposition of ROXANNE REED,
      held at 4206 South J.B. Hunt Drive, Rogers,
16    Arkansas, commencing at 8:08 a.m., on the
      above date, before Debra A. Dibble, Certified
17    Court Reporter, Registered Diplomate
      Reporter, Certified Realtime Captioner,
18    Certified Realtime Reporter and Notary
      Public.
19
20
21

                       __ __ __
22
             GOLKOW LITIGATION SERVICES
23       877.370.DEPS | fax 917.591.5672
                 deps@golkow.com
24
25
```

Page 2

A P P E A R A N C E S:
1
2  CARELLA, BYRNE, CECCHI, OLSTEIN,
   BRODY & AGNELLO
3  BY:  MICHAEL A. INNES, ESQUIRE
      minnes@carellabyrne.com
4     ZACHARY BOWER, ESQUIRE
      zbower@carellabyrne.com
5  5 Becker Farm Road
   Roseland, New Jersey 07068-1739
6  (973) 994-1700.
   Counsel for Plaintiffs
7
8  JONES DAY
   BY:  TARA A. FUMERTON, ESQUIRE
9     tfumerton@jonesday.com
      JASON McDONELL, ESQUIRE
10    jmcdonell@jonesday.com
   77 West Wacker
11 Chicago, Illinois 60601-1692
   312-782-1692
12 Counsel for Walmart
13
14 MARCUS & SHAPIRA, LLP
   (appearing telephonically)
15 BY:  DARLENE NOWAK, ESQUIRE
      dnowak@marcus-shapira.com
16 301 Grant Street
   35th Floor
17 Pittsburgh, Pennsylvania 15219-6401
   (412) 338-4690
18 Counsel for HBC
19
20 WRIGHT, LINDSEY & JENNINGS, LLP
   BY:  CALEY B. VO, ESQUIRE
21    cvo@wlj.com
   3333 Pinnacle Hills Parkway
22 Suite 510
   Rogers, Arkansas 72758-8498
23 (479) 986-0888
24 Counsel for McKesson
25

Page 3

1  BARBER LAW FIRM, LLP
   BY:  J. CARTER FAIRLEY, ESQUIRE
2     cfairley@barberlawfirm.com
   425 West Capitol Avenue
3  Suite 3400
   Little Rock, Arkansas 72201
4  (501) 707-6182
   Counsel for Cardinal Health, Inc.
5
6  ARNOLD & PORTER KAYE SCHOLER, LLP
   (appearing telephonically)
7  BY:  JAKE MILLER, ESQUIRE
      jake.miller@arnoldporter.com
8  777 South Figueroa Street
   44th Floor
9  Los Angeles, California 90017-5844
   (202) 942-5000
10 Counsel for Endo Health Solutions
   Inc.; Endo Pharmaceuticals Inc.; Par
11 Pharmaceuticals, Inc.; Par
   Pharmaceutical Companies, Inc.
12 formerly known as Par Pharmaceutical
   Holdings, Inc.
13
14 JACKSON KELLY, PLLC
   BY:  ANGELA L. FREEL, ESQUIRE
15    alfreel@jacksonkelly.com
   221 NW Fifth Street
16 Evansville, IN 47708
   (812)442.9444
17 Counsel for AmerisourceBergen
18
19 ALSO PRESENT:
20 Paul D. Morris
   Senior Associate Counsel
21 Walmart, Inc.
22 THE VIDEOGRAPHER:
23 Chris Ritona
   GOLKOW LITIGATION SERVICES
24
25        — — —

Page 4

1
2          I N D E X
3  ROXANNE REED              PAGE
4  DIRECT EXAMINATION BY MR. BOWER      9
5
6        E X H I B I T S
7  No.        Description      PAGE
   Walmart- Roxanne Reed LinkedIn    11
   Reed 1  profile
8
9  Walmart- Roxanne Reed Performance  11
   Reed 2  Evaluations.
10 Walmart- January 2014 email chain.  69
   Reed 3  Subj: The raw data along
11    with questions.
      WMT_MDL-000009635-9637.
12
   Walmart- 1-30-14 email from       70
13 Reed 4  Aishwarya Shukla  Subj:
      Methodology for flagging of
14    store orders  30JAN.
      WMT_MDL_000009629-9630 with
15    attachment.
16 Walmart- 11/3/14 email from Roxy  126
   Reed 5  Reed to Maria Smith.
17    WMT_MDL_000048562-48598.
18 Walmart- November 2014 email.  Subj:  147
   Reed 6  FW: Executive Summary for
19    October Scorecard.
      WMT_MDL_000026982-26988.
20
   Walmart- 12-3-14 email from Miranda  154
21 Reed 7  Johnson to Roxy Reed.
      Subj: SOM - Archer.
22    WMT_MDL_000009489-9491.
23 Walmart- 12-4-18 email from Roxy  193
   Reed 8  Reed to Miranda Johnson
24    Subj:
      Step 2  Threshold_Calc.xlsx.
25    WMT_MDL_000029318-29319

Page 5

1  Walmart- 12-23-14 email from Roxy  205
   Reed 9  Reed to Phyllis Harris.
2     Subj: H&W Compliance.
      Scorecard - November FY15
3     WMT_MDL_000027994-27999.
4  Walmart- Friday, August 21, 2015  219
   Reed 10  Jabber communication
5     between Kristy Spruell and
      Roxy Reed.
6     WMT_MDL_000009035.
7  Walmart- August 2015 email chain.  226
   Reed 11  Subj: RE: Email
8     Notification of SOM Eval.
      WMT_MDL_000008688-8689.
9  Walmart- 8-18-15 email from Roxy  252
   Reed 12  Reed.  Subj: 6045 Threshold
10    File
      WMT_MDL_000053351-53352
11    with attachment.
12 Walmart- July 2015 email chain.  267
   Reed 13  Subj: RE: Project ID 28098-
13    Wal-Mart - 62128 - Drug
      Tracking
14    WMT_MDL_000020529-20531.
15 Walmart- 5-12-16 email chain.  Subj:  338
   Reed 14  [Updated] SOM Eval - Add
16    CS schedule for Top 3 Docs
      WMT_MDL_000009030.
17
18 Walmart- June 2016 email chain.  343
   Reed 15  Subj: FW: SOM Cloud Data
19    Document - Current Version
      ver. 1.3.  5-12-16 email
20    chain.  Subj: [Updated]
      SOM Eval - Add CS schedule
21    for Top 3 Docs
      WMT_MDL_000009030.04624-
22    4626.
23 Walmart- August 2017 email chain.  359
   Reed 16  Subj: EXT: RE: SOM
24    Algorithm Score - 20
25    WMT_MDL_000007071-7072.

Page 6

1    Walmart- December 2017 email chain.    368
     Reed 17 Subj: RE: Follow-up
2        Materials - Controlled
         Substance Discussion.
3        WMT_MDL_000003598-3599.
     Walmart- Subj: RE: SOM Talking    375
4    Reed 18 Points & FAQs Updated Jan.
         5. WMT_MDL_000007350-7354.
5
     Walmart- January 2018 email chain.    382
6    Reed 19 Subj: Re: EXT: Suspicious
         Order Reports.
7        WMT_MDL_000008865-8866.
8    Walmart- October 2015 email chain.    387
     Reed 20 Subj: RE: Stores Needing
9        Threshold Evaluation.
         WMT_MDL_000028865-28866.
10
     Walmart- Walmart U.S. Ethics &    389
11   Reed 21 Compliance Q3 Nominees.
         WMT_MDL_000046435-46441.
12
13
14
15
     CERTIFICATE    395
16
     ERRATA    397
17
     ACKNOWLEDGMENT OF DEPONENT    398
18
     LAWYER'S NOTES    399
19
20
21
22
23
24
25

Page 7

1            PROCEEDINGS
2        (January 10, 2019 at 8:08 a.m.)
3        THE VIDEOGRAPHER:  We are now
4    on the record.  My name is
5    Chris Ritona.  I'm the videographer
6    for Golkow Litigation Services.
7    Today's date is January 10, 2019.  The
8    time is approximately 8:08 a.m.  This
9    video deposition is being held in
10   Rogers, Arkansas at Mitchell Williams,
11   4206 South J.B. Hunt Drive, Suite 200,
12   in the matter of National Prescription
13   Opiate Litigation, MDL No. 2804, Case
14   No. 17-MD-2804.  U.S. District Court,
15   Northern District of Ohio, Eastern
16   Division.
17       The deponent today is
18   Roxanne Reed.  The court reporter
19   today is Debbie Dibble.  Counsel will
20   now please -- will counsel note
21   themselves for the stenographic
22   record?
23       MS. FUMERTON:  Tara Fumerton on
24   behalf of Walmart and the witness.
25       MR. McDONELL:  Jason McDonell,

Page 8

1    Jones Day, also on behalf of Walmart
2    and the witness.
3        MR. MORRIS:  Paul Morris from
4    Walmart legal.
5        MR. FAIRLEY:  Carter Fairley on
6    behalf of Cardinal.
7        MR. VO:  Caley Vo, Wright
8    Lindsey & Jennings, on behalf of
9    McKesson.
10       MR. INNES:  Michael Innes,
11   Carella Byrne, on behalf of plaintiffs
12   in the MDL.
13       MR. BOWER:  Zach Bower, also
14   Carella Byrne, on behalf of plaintiffs
15   in the MDL.
16       THE VIDEOGRAPHER:  Will the
17   court reporter please swear in the
18   witness.
19       (Telephonic interruption.)
20       THE VIDEOGRAPHER:  Anyone on
21   the phone remotely, please identify
22   yourselves for the record as well.
23       MR. MILLER:  Hi.  This is
24   Jake Miller from Arnold & Porter on
25   behalf of the Endo and Par defendants.

Page 9

1        MS. FREEL:  Hi, this is
2    Angela Freel with Jackson Kelly on
3    behalf of AmerisourceBergen Drug Corp.
4        MS. NOWAK:  This is
5    Darlene Nowak for Marcus & Shapira, on
6    behalf of HBC Services.
7            ROXANNE REED,
8    having first been duly sworn, was examined
9    and testified as follows:
10           DIRECT EXAMINATION
11   BY MR. BOWER:
12       Q.    Would you please state your
13   full name and spell your last name for the
14   record?
15       A.    Roxanne Reed, R-E-E-D.
16       Q.    And good morning, Ms. Reed.
17   Thank you for being here today.
18       Have you ever given a
19   deposition before?
20       A.    I have not.
21       Q.    Okay.  So just before we get
22   started, we'll go over a few ground rules to
23   hopefully make your day a little bit easier.
24   Okay?
25       A.    Okay.

Highly Confidential - Subject to Further Confidentiality Review

**Page 10**

1     Q.    First, and perhaps most
2 important, is if I ask a question and you
3 don't understand it, please let me know.
4 Okay?
5     A.    Okay.
6     Q.    Okay.  So if you don't
7 understand the question, I will try to
8 rephrase it so that we can both be on the
9 same page.  Okay?
10     A.    Okay.
11     Q.    If you do not let me know that
12 you don't understand a question, I will
13 assume that you do understand the question.
14     Do you understand that?
15     A.    Yes.
16     Q.    Also very important, if a
17 question calls or an answer calls for a "yes"
18 or "no," please provide a verbal answer and
19 don't shake your head.  That way, the court
20 reporter can take down your answer.  Okay?
21     A.    Okay.
22     Q.    Any questions you have before
23 we begin?
24     A.    No.
25     Q.    Is there any reason or anything

**Page 11**

1 that would prevent you from testifying
2 truthfully today?
3     A.    No.
4     Q.    And if you want to take a break
5 at any time, please let us know and we'll do
6 so.  I just ask that you would answer any
7 question that's pending.
8     Do you understand that?
9     A.    Okay.
10     Q.    So when we get started, I'm
11 going to give you a couple of documents to
12 kind of get us started, which is going to be
13 your annual performance review.  So that will
14 help us kind of frame our discussion.
15     (Walmart-Reed Deposition
16 Exhibit 1 was marked for
17 identification.)
18     Q.    (BY MR. BOWER) I don't want
19 this to be a guessing game here.  And also
20 I'm going to give you your LinkedIn profile.
21     A.    Okay.
22     (Walmart-Reed Deposition
23 Exhibit 2 was marked for
24 identification.)
25     Q.    (BY MR. BOWER) And you can

**Page 12**

1 certainly review those as we go throughout
2 the day.  I don't have any questions on them
3 right now.  I just wanted you to have them in
4 case you need to refer to them.  Okay?
5     A.    Okay.
6     Q.    So I just want to start this
7 morning with a bit of your background.
8     A.    Okay.
9     Q.    And kind of your earlier years
10 at Walmart.
11     MS. FUMERTON:  And, Zach, just
12 to make sure, this is going to be
13 Exhibit 1?
14     MR. BOWER:  Yeah, sorry.
15 That's important for the record.
16 Thank you.
17     I believe that Exhibit 1 is
18 your LinkedIn profile.  And Exhibit 2
19 will be your performance review.
20     THE WITNESS:  Okay.
21     MR. BOWER:  Okay?
22 Thank you for that, Tara.
23     MS. FUMERTON:  And so you don't
24 want her to take time to review this
25 now.  We'll just have it.

**Page 13**

1     MR. BOWER:  She can review it
2 as questions come up.  I just want her
3 to have it there.  If she needs to
4 refer to it, certainly do.  But
5 there's no reason to review it at the
6 moment.
7     MS. FUMERTON:  Okay.  Can I
8 just at least let her, then, flip
9 through the review just to see what's
10 in it?
11     MR. BOWER:  Sure.
12     MS. FUMERTON:  I'm not sure she
13 would understand -- this would even be
14 helpful for a question.
22     Q.    Okay.  Yes, so why don't you
23 flip through it and just familiarize yourself
24 with it, and then we'll start at least
25 briefly on kind of your early days at

Highly Confidential - Subject to Further Confidentiality Review

Page 14

1 Walmart.
2     A.    Okay.
3     Q.    Okay. Thanks. And certainly
4 if I ask specific questions on this or you
5 need to refer to it throughout the day,
6 please do so --
7     A.    Okay.
8     Q.    -- okay?
9        So can you just describe
10 briefly for us your -- any education that you
11 received after high school?
12     A.    Yes. I went to Arkansas Tech
13 University. I have a major in chemistry and
14 a minor in biology.
15     Q.    Okay. And then what did you do
16 immediately after graduating from
17 Arkansas Tech?
18     A.    I worked for a water filtration
19 company. And then a liquor store part time.
20     Q.    Okay. And then you graduated
21 in approximately 2006; is that correct?
22     A.    Yes. December 2006.
23     Q.    Okay. And then in 2007, you
24 began working at Walmart; is that correct?
25     A.    Yes.

Page 15

1     Q.    And what was your first job at
2 Walmart?
3     A.    It was an optical contract
4 coordinator.
5

14     Q.    And then what was your next job
15 at Walmart?
16     A.    It was an audit manager with
17 health and wellness compliance.
18     Q.    Can you just describe briefly
19 what that means?
20     A.    Yes. We audited health and
21 wellness compliance programs, things like our
22 partial bill program and Medicaid
23 tamper-resistant prescriptions.
24     Q.    And that was from approximately
25 October 2008 to April 2010?

Page 16

1     A.    Yes.
2     Q.    Okay. And I'm referring to
3 Exhibit 1, which is your LinkedIn profile.
4     A.    Mm-hmm. (Witness nods.)
5     Q.    During that -- strike that.
6        In that position, did you have
7 any involvement in Walmart's suspicious order
8 monitoring?
9     A.    No.
10     Q.    Did you have any involvement in
11 the distribution of Schedule II narcotics?
12     A.    No.
13     Q.    And then, what did you --
14     MR. MILLER: I'm sorry, I
15 apologize. On the phone, I don't know
16 if others can hear, but I can hear
17 almost nothing.
18     MS. NOWAK: Same here.
19     MR. BOWER: All right. Well,
20 why don't we go off the record for a
21 moment and we'll try to rearrange the
22 phone.
23     THE VIDEOGRAPHER: 8:15. We
24 are off the video record.
25     (Recess taken, 8:16 a.m. to

Page 17

1 8:16 a.m.)
2     THE VIDEOGRAPHER: 8:17. We
3 are on video record.
4     Q.    (BY MR. BOWER) All right.
5 Let's continue where we left off, then.
6        After your position as a health
7 and wellness audit manager, what was your
8 next position at Walmart?
9     A.    It was a systems manager in
10 health and wellness compliance.
11     Q.    And what -- how did your duties
12 and responsibilities change with that change
13 in title?
14     A.    I started focusing more on data
15 and analytics, and system-related things,
16 databases, queries, that kind of thing.
17        Oh, I guess technically the
18 next position was a compliance analyst.
19 Sorry, I skipped a position.
20     Q.    That's fine. That's why I
21 wanted to supply this, to kind of make sure
22 we get it right.
23     A.    Yes.
24     Q.    So the compliance analyst
25 position was before the systems manager; is

Page 18

1 that correct?
2     A.    Yes.
3     Q.    And you held the compliance
4 analyst position for approximately three and
5 a half years?
6     A.    Yes.
7     Q.    Okay.  And then just briefly,
8 what did you do as a health and wellness
9 compliance analyst?
10     A.    I created databases, created
11 reports, pulled data.  Anything data and
12 analytics-related.
13     Q.    And just generally, what do you
14 mean by "analytics"?
15     A.    So any kind of reports that
16 they needed.  If -- for audit purposes, if we
17 needed to pull data and then find trends and
18 see if some -- find out why or -- it's that
19 kind of thing.
20     Q.    And who would ask you to pull
21 this data?
22         MS. FUMERTON:  Objection to
23     form.
24         MR. BOWER:  I'll strike that.
25

Page 19



Page 20



Page 21

13     Q.    I'm sorry, another instruction
14 I should have given is -- I apologize I
15 didn't.  Just please -- I know it's difficult
16 sometimes -- let me finish my question.
17     A.    Sorry.
18     Q.    So the -- just to make it easy
19 on the court reporter so that she can take
20 down the question, then your answer, and give
21 your attorney an opportunity to object.
22 Okay?
23         MS. FUMERTON:  Yes.  You're
24     both actually starting to interrupt
25     each other a little bit, so just slow



Page 22

1  it down a little bit to make sure he's
2  finished, and then if you could also
3  do the same, make sure she's finished.

Page 23

23  MS. FUMERTON: Objection, form.
24  And if I object, unless I instruct you
25  not to answer, you still go ahead and

Page 24

1  answer his question.
2  THE WITNESS: Okay.
3  MS. FUMERTON: He may or may
4  not rephrase it. He may just ask you
5  to answer as stated.
6  THE WITNESS: Okay.

Page 25





Page 30

7       MR. MILLER:  I'm sorry to
8   interrupt again.  This is Jake Miller
9   on the phone.  I can hear virtually
10  nothing any longer.
11      MR. BOWER:  All right.  Well
12  let's go off the record.
13      THE VIDEOGRAPHER:  8:31.  We
14  are off the video record.
15      (Recess taken, 8:31 a.m. to
16  8:33 a.m.)
17      THE VIDEOGRAPHER:  8:34.  We
18  are on the video record.
19  Q.    (BY MR. BOWER) So let's try to
20  pick back up where we left off.  And I think
21  I asked a poor question, so let me ask a
22  different question.
23

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 42

Page 44

1  MS. FUMERTON:  You and I have
2  talked about this before.  "Yes" or
3  "no" question can sometimes invade
4  attorney-client privilege.  I'm not
5  saying whether this does.  I'm just
6  cautioning the witness that if she had
7  conversations with counsel about a
8  specific topic, not to answer those
9  communications.  It goes to the level
10  of detail.
11       So as I said, this may not be
12  an issue, but you can go ahead and
13  answer the question as long as it's
14  not going to reveal your
15  communications with counsel.

Page 43

Page 45

17      MS. FUMERTON:  I'm going to
18  object to the question just in case
19  it -- I don't know that it would --
20  involves communications with legal.
21  But if it's communications outside of
22  legal --
23      MR. BOWER:  No, it's a
24  yes-or-no question.  It doesn't call
25  for legal advice.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 50

Page 51

MS. FUMERTON: Yeah, take your
time to familiarize yourself with the
document, if you need to, to answer
his questions. Because I know there's

Page 52

additional detail.
I mean --
MR. BOWER: Right.
MS. FUMERTON: I'm not
testifying, but ...

Page 53

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 66

Page 68



9     MS. FUMERTON:  Is it a good
10  time to take a break or ...
11     MR. BOWER:  I think so.  Yeah.
12  Let me just make sure I don't have
13  anything else on this time period, at
14  least at the moment.
15     Yeah, why don't we take a
16  break.  We've been going a while.
17     THE VIDEOGRAPHER:  9:16.  We
18  are off video record.
19     (Recess taken, 9:17 a.m. to
20  9:34 a.m.)
21     THE VIDEOGRAPHER:  9:34.  We
22  are on video record.
23  Q.    (BY MR. BOWER)  All right.
24  Ms. Reed, we're back on the record.  I'm just
25  going to hand you a couple more exhibits.

Page 67

Page 69

1  And these I do want you to take a moment to
2  review.
3

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 82



Page 84

```
1    approximate time?
2        A.    I would say that those terms I
3    first heard in the media within the last
4    couple of years.
5        Q.    By "those terms," you mean
6    opioid crisis?
7        A.    Yes.
8        Q.    What about a broader issue with
9    respect to abuse of controlled substances?
10          MS. FUMERTON:  Objection, form.
11          THE WITNESS:  What's your
12       question?
13       Q.    (BY MR. BOWER) I'm just trying
14   to figure out.  You seem to be stuck on my
15   term "opioid crisis."  I'm just trying to
16   figure out if you use different terms, if you
17   define it as abuse of prescription drugs, of
18   drug issues with respect to Schedule II
19   narcotics.  Anything broader than that.  When
20   did you first become aware that our country
21   was having a problem with prescription drug
22   abuse?
23          MS. FUMERTON:  Objection, form.
24          THE WITNESS:  So I've worked in
25       the health and wellness space the
```

Page 83

Page 85

```
1    majority of my career.  Now, I've
2    worked in an independent pharmacy when
3    I was in high school, in college.  And
4    so I would say that's been something
5    that's been known by me for the
6    majority of my career, that ...
7        Q.    (BY MR. BOWER) I don't want to
8    cut you off.  Are you --
9        A.    Yeah.
```

```
16       Q.    Are you aware that our country
17   is in the middle of an opioid crisis?
18       A.    Yes.
19          MS. FUMERTON:  Objection, form.
20       Q.    (BY MR. BOWER) And when did
21   you first become aware of the opioid crisis?
22          MS. FUMERTON:  Objection, form.
23          THE WITNESS:  I don't know the
24       exact time.
25       Q.    (BY MR. BOWER) Do you know an
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review


Page 98

Page 100

Page 99

Page 101

6   Q.   (BY MR. BOWER)  And let me just
7   ask just so I get an understanding of what
8   your familiarity is.
9        Why do you think you're here
10  today?
11       MS. FUMERTON:  I -- I object to
12  that question to the extent that it is
13  seeking any information relating to
14  conversations with counsel.
15       To the extent you can answer
16  that question without revealing those
17  questions, you can answer the
18  question -- revealing those
19  communications, you can answer the
20  question.
21       THE WITNESS:  Okay.  So I'm
22  here because of my involvement with
23  the suspicious order monitoring
24  program, and that involves opioids
25  which are included in this case.

Highly Confidential - Subject to Further Confidentiality Review

Page 102

1    Q.    (BY MR. BOWER)  Do you have any
2  understanding, other than what you've just
3  told us, what this case is about?
4        MS. FUMERTON:  Again, the
5    witness can answer to the extent that
6    she can do so without revealing any
7    communications with counsel, but
8    otherwise I instruct her not to answer
9    that question.
10       THE WITNESS:  The only way I
11   know is because of counsel.
12   Q.    (BY MR. BOWER)  Okay.  So other
13 than in communications with counsel, you
14 didn't do anything else to educate yourself
15 as to why Walmart is involved in this case;
16 is that correct?
17   A.    Correct.
18   Q.    You haven't reviewed the
19 complaint, for example?
20   A.    No, I have not reviewed the
21 complaint.
22   Q.    You're not familiar with the
23 allegations that are being made against
24 Walmart; is that correct?
25       MS. FUMERTON:  Again, in the

Page 103

1  context, outside of communications
2  with counsel, you can answer that.
3        If you have such knowledge, you
4  can answer that question, but it's not
5  directed based, I think, on his
6  earlier ones, on our communications.
7        I know, it's a tricky --
8        THE WITNESS:  I think the
9    answer is still no.
10       MR. BOWER:  Okay.
11   Q.    (BY MR. BOWER)  And have you
12 ever been asked whether you have documents
13 that may be responsive to the allegations in
14 this case?
15       MS. FUMERTON:  Objection, form.
16   And to the extent -- objection, form.
17   If you can understand and answer his
18   question, you can answer "yes" or
19   "no."
20       THE WITNESS:  Can you rephrase
21   the question?  Try it that way?
22   Q.    (BY MR. BOWER)  Sure.  And let
23 me do it this way.
24       We'll see today some documents,
25 some emails from you to others in Walmart and

Page 104

1  some other documents that were produced to us
2  in this case.  Okay?
3    A.    Okay.
4    Q.    Has anyone ever asked you
5  whether you might have documents to produce
6  to us that might relate to the allegations in
7  this case?
8        MS. FUMERTON:  Again, objection
9    to the form of the question.
10       If the question is has anybody
11   asked her to -- whether or not she has
12   documents -- my objection is to the
13   "allegations in this case" portion of
14   the question.  If you could rephrase.
15   And I'm not trying to be difficult.
16   I'm just trying to be helpful to get
17   you the information you want without
18   getting into any privileged
19   information.
20   Q.    (BY MR. BOWER)  Do you
21 understand the question?
22   A.    The basic form of the question,
23 I think so, yes.
24   Q.    Okay.  I'm just trying to get
25 at whether anyone said, hey, Roxy, do you

Page 105

1  have -- we've been sued in this case.  Do you
2  have anything that might be relevant to the
3  case?
4        Anyone ever talk to you about
5  that?
6    A.    With that wording, no.
7    Q.    What about with any wording
8  similar to that?
9    A.    Similar to that, no.
10   Q.    What about in any capacity?
11       I mean, I'm not trying to play
12 games here.  I'm just trying to figure out --
13 we've made certain document requests to
14 Walmart.  Right?  Certain documents were
15 produced.  I'm just wondering whether anyone
16 ever came to you and said, "Hey, do you have
17 anything that we might need to produce in
18 connection with this opioid case?"
19       MS. FUMERTON:  Okay.  So I
20   think she's answered that question,
21   and I think this is getting into
22   complicated attorney -- potentially
23   attorney-client privileged information
24   that may be difficult for her to
25   navigate on her own.  I can make this

Highly Confidential - Subject to Further Confidentiality Review



Page 106

1  representation, if this helps.
2
8      MR. BOWER:  Okay.  That is
9  helpful.
10     Q.   (BY MR. BOWER)  So other than
11  what your counsel just said, have you, for
12  example, been asked whether you have emails
13  that might relate to the allegations that
14  have been made against Walmart?
15     A.   No.
16     Q.   So let's go back to -- sorry
17  for that.
18

Page 107

Page 108

Page 109

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 122

Page 124

Page 123

Page 125

19    Q.   Okay.  I think we're done with
20  that document.
21        MS. FUMERTON:  We have been
22  going approximately an hour.  A little
23  over an hour.  Is now a --
24        MR. BOWER:  Yeah, it is.  I
25  might have just one follow-up

Highly Confidential - Subject to Further Confidentiality Review



Page 126

1    question, but we can certainly take a
2    break.  Let me just read my notes.
3           No, we can take a break.
4           MS. FUMERTON:  Okay.
5           THE VIDEOGRAPHER:  10:44.  We
6    are off the video record.
7           (Recess taken, 10:44 a.m. to
8    10:59 a.m.)
9           THE VIDEOGRAPHER:  10:59.  We
10   are on video record.
11   Q.    (BY MR. BOWER)  Now we're back
12   on the record.
13   A.    Okay.
14   Q.    Let me hand you what's marked
15   as Exhibit 5.
16          (Walmart-Reed Deposition
17   Exhibit 5 was marked for
18   identification.)
19

Page 127

Page 128

Page 129



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 146

Page 147

```
13      [Document review.]
14      MS. FUMERTON:  I'm sorry.  Do
15  you need to ask me a question?
16      THE WITNESS:  Yes.
17  Can I ask her a question?
18      MS. FUMERTON:  Is it a question
19  about potentially privileged
20  information?
21      THE WITNESS:  Yes.
22      MS. FUMERTON:  Okay.  Can we
23  please go off the record?
24      MR. BOWER:  Sure.
25      THE VIDEOGRAPHER:  11:23.  We
```

Page 148

```
1   are off the video record.
2       (Recess taken, 11:23 a.m. to
3   11:25 a.m.)
4       THE VIDEOGRAPHER:  11:26.  We
5   are on the video record.
6       MS. FUMERTON:  And I just
7   wanted to -- I don't think a question
8   was pending.  She's in the process of
9   reviewing, so if she can continue to
10  review the document before you ask
11  questions, that would be appreciated.
12      MR. BOWER:  Sounds good.
13  Please do so.
14      THE WITNESS:  Okay.
15
```

Page 149

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Case: 1:17-md-02804-DAP Doc #: 1983-23 Filed: 07/24/19 41 of 101. PageID #: 249311



Highly Confidential - Subject To Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject To Further Confidentiality Review



**Page 178**

**Page 179**

23    MS. FUMERTON: Zach, it's noon.
24    So I don't know when a good time would
25    be for lunch or if the witness or the

**Page 180**

1    court reporter are okay to keep going.
2    Or if it's a good time to take a
3    break.
4        MR. BOWER:  How long have we
5    been on?
6        MS. FUMERTON:  A little bit
7    over an hour.
8        THE VIDEOGRAPHER:  35 minutes
9    since we took that little quick break.
10       MR. BOWER:  We can take a break
11   now.  Do you want to take a break for
12   lunch?
13       THE WITNESS:  Sure.
14       MR. BOWER:  Let's do that.
15       THE VIDEOGRAPHER:  It's 12:01.
16   We are off the video record.
17       (Recess taken, 12:01 p.m. to
18   12:34 p.m.)
19       THE VIDEOGRAPHER:  12:34.  We
20   are on the video record.
21   Q.    (BY MR. BOWER)  Okay.  We're
22   back on the record after lunch.  You
23   understand you're still under oath?
24   A.    Yes.
25

**Page 181**



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject To Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Page 242

Page 243

Page 244

Page 245

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 250

Page 252

Page 251

6      Q.    Okay.
7            MR. BOWER:  Do you want to take
8      a break now or do you want to --
9            THE WITNESS:  If this is a
10     logical stopping point, that's fine.
11           MR. BOWER:  I think it's a
12     logical -- I'm not sure how long --
13           We can go off.
14           THE VIDEOGRAPHER:  1:57.  We
15     are off the video record.
16           (Recess taken, 1:57 p.m. to
17     2:15 p.m.)
18           THE VIDEOGRAPHER:  2:15.  We
19     are on video record.

Page 253

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 266

Page 267

Page 268

Page 269

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 274

Page 276

Page 275

Page 277

Highly Confidential - Subject to Further Confidentiality Review



Page 278

Page 280

1 MS. FUMERTON: There was a
2 pending question that the witness had
3 asked to consult me about with respect
4 to privilege. I am going to instruct
5 her not to answer the pending
6 question.
7 MR. BOWER: Okay. And I just
8 note for the record that we've been
9 off the record now for about
10 45 minutes, which I think is a little
11 bit peculiar to consult on one
12 question. And I do have some other
13 questions which I understand your
14 counsel may instruct you not to
15 answer, but I'm going to ask them and
16 then we'll see how it goes.
17 MS. FUMERTON: And I would just
18 like to make a statement on the record
19 that I had asked you during the break
20 whether or not we could move on from
21 this question and potentially get back
22 to it at a later point in time during
23 today. And you refused to do that
24 accomodation. And so you have an
25 obligation with respect to your

Page 279

Page 281

1 clients; I have an obligation with
2 respect to my clients, and I will
3 exercise that zealously.
4 MR. BOWER: And I understand
5 that you will. I didn't realize we
6 were making those statements on the
7 record. So in fairness to myself,
8 your question was broader. You asked
9 me to move on from this entire topic,
10 and you asked for a lot of time to get
11 answers on this. You stated you were
12 unaware of this prior to now, which I
13 think is very unusual and suspect.
14 And I said I don't think that's
15 appropriate. We're entitled to
16 truthful testimony from this witness,
17 and you're entitled to make your
18 instructions as you see appropriate.
19 After you made that request,
20 you then took the half an hour that
21 you requested from me, so now you have
22 had all the time that you need, and I
23 expect you will be prepared to
24 instruct your witness as you see fit.

11 MS. FUMERTON: Unless I have an
12 opportunity to consult with her, I'm
13 going to instruct her not to answer.
14 I can consult with her during a break.
15 MR. BOWER: Why don't you do
16 that.
17 MS. FUMERTON: Consult now?
18 MR. BOWER: Yes.
19 MS. FUMERTON: Okay.
20 THE VIDEOGRAPHER: 2:46. We
21 are off the video record.
22 (Recess taken, 2:46 p.m. to
23 3:26 p.m.)
24 THE VIDEOGRAPHER: 3:26. We
25 are on the video record.



Page 282

14    MR. BOWER:  Right.  Which is, I
15  think, inappropriate.  She's here for
16  a deposition.  Unless you're going to
17  give us more than seven hours, we need
18  to ask her our questions.  So we're
19  going to have to do that now.
20    MS. FUMERTON:  Well, I was
21  actually being respectful of the
22  record and not having this lengthy
23  discussion on the record and going off
24  the record and have that conversation
25  with you so that you would have your

Page 283

1  entire seven hours.  So I think we
2  should move on, and I will instruct
3  the witness appropriately.
4    MR. BOWER:  So thank you.

Page 284

Page 285

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

Page 318



Page 320

1    testify.
2         THE WITNESS:  Sorry, I'm trying
3    to --
4         MR. BOWER:  No problem.

Page 319

9         MS. FUMERTON:  If these -- if
10   you're discussing -- are you talking
11   about investigations with counsel, or
12   are you talking about something
13   outside of work with counsel?  With
14   the legal -- with legal?
15        Well, I'm now asking questions.
16        I'm going to instruct you not
17   to -- I apologize.
18        I'm going to instruct you not
19   to answer the question to the extent
20   that you could only answer that
21   question based on communication with
22   counsel.
23        If you have an -- if there is
24   another use outside of communications
25   with counsel or legal, you can

Page 321

3         MS. FUMERTON:  I'm going to
4    instruct her not to answer that
5    question on the basis that it's
6    privileged.  She made it clear earlier
7    that she cannot think of any examples
8    that would not involve legal.
9         MR. BOWER:  She didn't make it
10   clear, and I don't think that the
11   fact -- the circumstance is a legal
12   advice.  I'm just asking what the
13   circumstances are.
14        MS. FUMERTON:  No, you're
15   asking the circumstances that made it
16   useful.  And I think that that
17   would --
18        Again, if she can give an
19   example that would not have been in
20   connection with a request from legal,
21   she can answer the question.  If she
22   can only answer the question in
23   connection with a request from legal,
24   I'm going to instruct her not to
25   answer the question.

Highly Confidential - Subject to Further Confidentiality Review



Page 322

1        THE WITNESS: Can I answer it
2  in a very generic term?
3        MS. FUMERTON: If it will not
4  reveal communications with counsel.
5        THE WITNESS: Okay. Then I can
6  answer generically.
7        MR. BOWER: Okay.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Page 334

Page 336

Page 335

Page 337

25          MS. FUMERTON:  Is this a --

Highly Confidential - Subject to Further Confidentiality Review



Page 338

1  could we take a quick break?  I mean,
2  like five minutes?  It looks like we
3  have about an hour left on the record.
4  So that may be natural.
5      THE VIDEOGRAPHER:  4:17.  We
6  are off the video record.
7      (Recess taken, 4:17 p.m. to
8  4:36 p.m.)
9      THE VIDEOGRAPHER:  4:36.  We
10 are on the video record.
11     (Walmart-Reed Deposition
12 Exhibit 14, was marked for
13 identification.)

Page 340

Page 339

Page 341



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

Page 358



Page 359

5      (Walmart-Reed Deposition
Exhibit 16, was marked for
identification.)
8      MR. MILLER:  Can we get a Bates
number on Exhibit 15?  I don't think
that was established.
11      MR. BOWER:  Sure.  It's 7071
through 7072.
13      MR. MILLER:  That's 16.
14      MR. BOWER:  Sorry, yeah, we're
on 16.  Did I say 17?
16      MR. MILLER:  No, he asked about
15, I think.
18      THE WITNESS:  You put 17 on
here.
20      MS. FUMERTON:  All right.  Can
we -- because I have the last one
before that as 15.
23      MR. BOWER:  Why don't we go off
the record just for a moment just to
clear that up.

Page 360

1      THE VIDEOGRAPHER:  Stand by.
5:01.  We are off the video record.
3      (Recess taken, 5:01 p.m. to
5:02 p.m.)
5      THE VIDEOGRAPHER:  5:02.  We
are on the video record.
7      Q.    (BY MR. BOWER)  We are back on
the record now and let me clear up my
mistake.  Exhibit 15 is ending in Bates
No. 4624 and 46 for -- to 4626.  And then
Exhibit 16 is 7071 and 7072.
12      MS. FUMERTON:  Okay.  And I
don't think you've had a chance to
review yet, so why don't you go ahead
and review the document.
16      [Document review.]
17      THE WITNESS:  Okay.

Page 361

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Page 386

Page 388

1   the record.  I just have two quick --
2   hopefully -- documents I'm going to show you.
3   I'm going to give them to you one at a time
4   so we can hopefully move quickly through
5   them.  Exhibit 20.  Bates No. 28865 through
6   66.

Page 387

11       MR. BOWER:  Okay.  Thank you.
12  Why don't we just take a quick break.
13       MS. FUMERTON:  Okay.
14       MR. BOWER:  We can keep it
15  quick.
16       THE VIDEOGRAPHER:  5:34.  We
17  are off the video record.
18       (Recess taken, 5:34 p.m. to
19  5:42 p.m.)
20       THE VIDEOGRAPHER:  5:42.  We
21  are on the video record.
22       (Walmart-Reed Deposition
23  Exhibit 20, was marked for
24  identification.)
25  Q.    (BY MR. BOWER) We are back on

Page 389

Highly Confidential - Subject to Further Confidentiality Review



**Page 390**

**Page 391**

**Page 392**

12    Q.    (BY MR. BOWER)  Well, the --
13        MS. FUMERTON:  And you're
14    over -- we're over --
15        She says she doesn't know.
16    This does not refresh her
17    recollection, that she has no
18    knowledge of that document, and we're
19    over our seven hours.
20        MR. BOWER:  Well, look.  We're
21    over our seven hours for a variety of
22    reasons, a lot of which was discussion
23    with counsel on the record, so I'm
24    going to -- do you want to cut me off?
25        I have a few more questions.

**Page 393**

1    It's your decision.
2        MS. FUMERTON:  We're ending the
3    deposition.
4        Are we at seven hours?
5        We're ending the deposition.
6        MR. BOWER:  Okay.

18        MS. FUMERTON:  Okay.  Well, we
19    obviously disagree with that, but that
20    will be, I'm sure, a fight for another
21    day.
22        THE VIDEOGRAPHER:  5:47 p.m.
23    We are off the video record.
24        This concludes the video
25    deposition.

Highly Confidential - Subject to Further Confidentiality Review

| Page 394 |
|---|

1        (Proceedings recessed at
2    5:47 p.m.)
3              --o0o--
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| Page 396 |
|---|

1            INSTRUCTIONS TO WITNESS
2
3            Please read your deposition over
4    carefully and make any necessary corrections.
5    You should state the reason in the
6    appropriate space on the errata sheet for any
7    corrections that are made.
8            After doing so, please sign the
9    errata sheet and date it.
10           You are signing same subject to
11   the changes you have noted on the errata
12   sheet, which will be attached to your
13   deposition.
14           It is imperative that you return
15   the original errata sheet to the deposing
16   attorney within thirty (30) days of receipt
17   of the deposition transcript by you.  If you
18   fail to do so, the deposition transcript may
19   be deemed to be accurate and may be used in
20   court.
21
22
23
24
25

| Page 395 |
|---|

1              CERTIFICATE
2        I, DEBRA A. DIBBLE, Registered
     Diplomate Reporter, Certified Realtime
3    Reporter, Certified Realtime Captioner,
     Certified Court Reporter and Notary Public,
4    do hereby certify that prior to the
     commencement of the examination, ROXANNE REED
5    was duly sworn by me to testify to the truth,
     the whole truth and nothing but the truth.
6
         I DO FURTHER CERTIFY that the
7    foregoing is a verbatim transcript of the
     testimony as taken stenographically by and
8    before me at the time, place and on the date
     hereinbefore set forth, to the best of my
9    ability.
10       I DO FURTHER CERTIFY that pursuant
     to FRCP Rule 30, signature of the witness was
11   not requested by the witness or other party
     before the conclusion of the deposition.
12
         I DO FURTHER CERTIFY that I am
13   neither a relative nor employee nor attorney
     nor counsel of any of the parties to this
14   action, and that I am neither a relative nor
     employee of such attorney or counsel, and
15   that I am not financially interested in the
     action.
16
19
     _____
     DEBRA A. DIBBLE, RDR, CRR, CRC
20   NCRA Registered Diplomate Reporter
     NCRA Certified Realtime Reporter
21   Certified Court Reporter
22
     Dated: 15 January 2019
23
24
25

| Page 397 |
|---|

1               ERRATA
2    Page  LINE  CHANGE
3    ____ ____ _____
4        REASON: _____
5    ____ ____ _____
6        REASON: _____
7    ____ ____ _____
8        REASON: _____
9    ____ ____ _____
10       REASON: _____
11   ____ ____ _____
12       REASON: _____
13   ____ ____ _____
14       REASON: _____
15   ____ ____ _____
16       REASON: _____
17   ____ ____ _____
18       REASON: _____
19   ____ ____ _____
20       REASON: _____
21   ____ ____ _____
22       REASON: _____
23   ____ ____ _____
24       REASON: _____
25

Highly Confidential - Subject to Further Confidentiality Review

Page 398

1      ACKNOWLEDGMENT OF DEPONENT
2
3
4          I, ROXANNE REED, do hereby certify
       that I have read the foregoing pages and that
5      the same is a correct transcription of the
       answers given by me to the questions therein
6      propounded, except for the corrections or
       changes in form or substance, if any, noted
7      in the attached
       Errata Sheet.
8
9
10
11
12     _____
       ROXANNE REED              DATE
13
14
15     Subscribed and sworn to before me this
16     _____ day of _____, 20 _____.
17     My commission expires: _____
18
19     _____
20     Notary Public
21
22
23
24
25

Page 399

1      LAWYER'S NOTES
2
3  PAGE    LINE
4    _____  _____   _____
5    _____  _____   _____
6    _____  _____   _____
7    _____  _____   _____
8    _____  _____   _____
9    _____  _____   _____
10   _____  _____   _____
11   _____  _____   _____
12   _____  _____   _____
13   _____  _____   _____
14   _____  _____   _____
15   _____  _____   _____
16   _____  _____   _____
17   _____  _____   _____
18   _____  _____   _____
19   _____  _____   _____
20   _____  _____   _____
21   _____  _____   _____
22   _____  _____   _____
23   _____  _____   _____
24   _____  _____   _____
25