```
 1        IN THE UNITED STATES DISTRICT COURT
 2         FOR THE EASTERN DISTRICT OF OHIO
 3               EASTERN DIVISION
 4                   -  -  -
 5   IN RE:  NATIONAL    :  MDL NO. 2804
     PRESCRIPTION OPIATE :
 6   LITIGATION          :
     ----------------------------------------
 7                       :  CASE NO.
     THIS DOCUMENT       :  1:17-MD-2804
 8   RELATES TO ALL CASES:
                         :  Hon. Dan A.
 9                       :  Polster
10                   -  -  -
           Tuesday November 20, 2018
11                   -  -  -
12   HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
             CONFIDENTIALITY REVIEW
13
                     -  -  -
14
               Videotaped deposition of
15   MARK VERNAZZA, taken pursuant to notice,
     was held at Zuckerman Spaeder, LLP,
16   1800 M Street NW, Suite 1000, Washington,
     DC 2003, beginning at 9:13 a.m., on the
17   above date, before Amanda Dee
     Maslynsky-Miller, a Certified Realtime
18   Reporter.
19
                     -  -  -
20
21
           GOLKOW LITIGATION SERVICES
22      877.370.3377 ph | 917.591.5672 fax
               deps@golkow.com
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES:
 2

 3         WEISMAN, KENNEDY & BERRIS CO., L.P.A
           BY:  ERIC KENNEDY, ESQUIRE
 4              DANIEL P. GOETZ, ESQUIRE
           101 W. Prospect Avenue
 5         Midland Building, Suite 1600
           Cleveland, Ohio 44115
 6         (216) 781-1111
           Ekennedy@weismanlaw.com
 7         Dgoetz@weismanlaw.com
           Representing the Plaintiffs
 8

 9

10

           LEVIN PAPANTONIO THOMAS MITCHELL
11         RAFFERTY PROCTOR PA
           BY:  WILLIAM BAKER, ESQUIRE
12              STEPHANIE HACKMAN, PARALEGAl
           316 South Baylen Street
13         Pensacola, Florida 32502
           (850) 485-4160
14         Wcb850@gmail.com
           Representing the Plaintiffs
15

16

17         MOTLEY RICE LLC
           BY:  MICHAEL E. ELSNER, ESQUIRE
18              MICHAEL HALL, ESQUIRE
                AMANDA UNTERREINER, PARALEGAL
19         28 Bridgeside Boulevard
           Mount Pleasant, South Carolina 29464
20         (843) 216-9000
           Melsner@motleyrice.com
21         Representing the Plaintiffs
22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   APPEARANCES:   (Continued)

 2

 3          GARSON AND JOHNSON LLC
            BY:  JAMES A. DEROCHE, ESQUIRE
 4          101 W. Prospect Avenue
            Midland Building, Suite 1610
 5          Cleveland, Ohio 44115
            (216) 696-9330
 6          Jderoche@garson.com
            Representing the Plaintiffs
 7

 8

 9          PELINI, CAMPBELL & WILLIAMS, LLC
            BY: GIANNA M. CALZOLA-HELMICK, ESQUIRE
10          Bretton Commons
            Suite 400
11          8040 Cleveland Avenue NW
            North Canton, Ohio 44720
12          (330) 305-6400
            Giannac@pelini-law.com
13          Representing the Defendant,
            Prescription Supply, Inc.
14

15

16

            COVINGTON & BURLING LLP
17          BY: EMILY KVESELIS, ESQUIRE
            850 Tenth Street, NW
18          Suite 856N
            Washington, DC 20001
19          (202) 662-5000
            ekveselis@cov.com
20          Representing the Defendant,
            McKesson Corporation
21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES:   (Continued)

 2

 3            WILLIAMS & CONNOLLY, LLP
              BY: STEVEN M. PYSER, ESQUIRE
 4            725 Twelfth Street, N.W.
              Washington, DC  20005
 5            (202) 434-5000
              spyser@wc.com
 6            Representing the Defendant,
              Cardinal Health
 7

 8

 9            REED SMITH, LLP
              BY: LINDSAY A. DEFRANCESCO, ESQUIRE
10            1301 K Street, N.W.,
              Suite 1000 - East Tower
11            Washington, D.C., 20005
              (202) 414-9200
12            Ldefrancesco@reedsmith.com
              Representing the Defendant,
13            Amerisource Bergen Drug
              Corporation
14

15

16            ZUCKERMAN SPAEDER LLP
              BY:  ERIC R. DELINSKY, ESQUIRE
17            BY:  ALEXANDRA W. MILLER, ESQUIRE
              1800 M Street NW
18            Suite 1000
              Washington, DC 20036
19            (202) 778-1800
              Edelinsky@zuckerman.com
20            Smiller@zuckerman.com
              Representing the Defendants,
21            CVS Indiana, CVS RX Services
              and The Witness, Mark Vernazza
22

23

24
```

```
 1    APPEARANCES: (Continued)
 2    VIA TELEPHONE/LIVESTREAM:
 3
 4            JONES DAY
             BY: EDWARD M. CARTER, ESQUIRE
 5            325 John H. McConnell Boulevard
             Suite 600
 6            Columbus, Ohio 43215
             (614) 469-3939
 7            emcarter@jonesday.com
             Representing the Defendant,
 8            Walmart
 9
10
             MORGAN LEWIS & BOCKIUS, LLP
11            BY: JOHN M. MALOY, ESQUIRE
             101 Park Avenue
12            New York, New York 10178
             (212) 309-6000
13            John.maloy@morganlewis.com
             Representing the Defendant,
14            Rite Aid of Maryland
15
16
17            MARCUS & SHAPIRA LLP
             BY:  STEPHANIE M. WEINSTEIN, ESQUIRE
18            One Oxford Centre
             35th Floor
19            Pittsburgh, Pennsylvania 15219
             (412) 471-3490
20            Weinstein@marcus-shapira.com
             Representing the Defendant,
21            HBC Company
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES: (Continued)
 2    VIA TELEPHONE/LIVESTREAM:
 3
             ZUCKERMAN SPAEDER LLP
 4           BY:  GRAEME W. BUSH, ESQUIRE
             1800 M Street NW
 5           Suite 1000
             Washington, DC 20036
 6           (202) 778-1800
             Gbush@zuckerman.com
 7           Representing the Defendants,
             CVS Indiana, CVS RX Services
 8           and The Witness, Mark Vernazza
 9
10
             CAVITCH FAMILO & DURKIN, CO., L.P.A.
11           BY:  CHIP ERB, ESQUIRE
             Twentieth Floor
12           1300 East Ninth Street
             Cleveland, Ohio 44114
13           LWErb@cavitch.com
             Representing the Defendant,
14           Discount Drug Mart
15
16
             BARTLIT BECK LLP
17           BY:  ALEX J. HARRIS, ESQUIRE
             1801 Wewatta Street
18           Suite 1200
             Denver, Colorado 80202
19           (303) 592-3100
             Alex.harris@bartlit-beck.com
20           Representing the Defendant,
             Walgreens
21
22
      ALSO PRESENT:
23    Daniel Holmstock, Videographer
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    -   -   -
 2                I N D E X
 3                    -   -   -
 4

    Testimony of: MARK VERNAZZA
 5
 6      By Mr. Kennedy                          12
 7
 8                    -   -   -
 9              E X H I B I T S
10                    -   -   -
11

    NO.              DESCRIPTION              PAGE
12

    CVS-Vernazza
13  Exhibit-1     United States Code -
                  Section 823                 76
14

    CVS-Vernazza
15  Exhibit-3     CVS-MDLT1-000010552-555     100
16  CVS-Vernazza
    Exhibit-4     CVS-MDLT1-000013534-536     135
17

    CVS-Vernazza
18  Exhibit-6     CVS-MDLT1-000025204-259     205
19  CVS-Vernazza
    Exhibit-7     CVS-MDLT1-000034234-300     229
20

    CVS-Vernazza
21  Exhibit-8     CVS-MDLT1-000024877-941     274
22  CVS-Vernazza
    Exhibit-9     CVS-MDLT1-000088956-9025    304
23  CVS-Vernazza
    Exhibit-14    CVS-MDLT1-000034374
24                With attachment             222
```

Highly Confidential - Subject to Further Confidentiality Review

```
1                    -  -  -
2                 E X H I B I T S
3                    -  -  -
4
   NO.              DESCRIPTION              PAGE
5
   CVS-Vernazza
6  Exhibit-16   CVS-MDLT1-000034175-177      397
7  CVS-Vernazza
   Exhibit-17   CVS-MDLT1-000024523-524      429
8
   CVS-Vernazza
9  Exhibit-18   CVS-MDLT1-000029864
                With attachment              445
10
   CVS-Vernazza
11 Exhibit-18A  CVS-MDLT1-000029864-866      432
12 CVS-Vernazza
   Exhibit-23   CVS-MDLT1-000034168-171      420
13
   CVS-Vernazza
14 Exhibit-24   CVS-MDLT1-000075542          414
15 CVS-Vernazza
   Exhibit-25   CVS-MDLT1-000029877-880      446
16
   CVS-Vernazza
17 Exhibit-30   CVS-MDLT1-000057751-754      308
18 CVS-Vernazza
   Exhibit-31   CVS-MDLT1-000075299-312      317
19
   CVS-Vernazza CVS-MDLT1-000076284-285
20 Exhibit-32                                295
21 CVS-Vernazza
   Exhibit-34   CVS-MDLT1-000061097          266
22
   CVS-Vernazza
23 Exhibit-40   CVS-MDLT1-000089188          300
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
                    E X H I B I T S

                       -   -   -

NO.                 DESCRIPTION                     PAGE
CVS-Vernazza
Exhibit-43    CVS-MDLT1-000081281              267

CVS-Vernazza
Exhibit-44    CVS-MDLT1-000089315-379          280
CVS-Vernazza
Exhibit-45    CVS-MDLT1-000090853-854          238

CVS-Vernazza
Exhibit-46    CVS-MDLT1-000091508-518          119
CVS-Vernazza
Exhibit-48    CVS Controlled Drug Manual:
              Suspicious Order Monitoring
              Procedure                        285

CVS-Vernazza
Exhibit-49    CVS-MDLT1-000087889-890          254
CVS-Vernazza
Exhibit-65    CVS-MDLT1-000019722-786          150

CVS-Vernazza
Exhibit-93    CVS-MDLT1-000068377-381          182
CVS-Vernazza
Exhibit-103   Amended First Notice of
              Deposition Pursuant to Rule
              30(b)(6) and Document Request
              Pursuant to Rule 30(b)(2)
              and Rule 34 to Defendant
              CVS Health Corporation           25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1
                     E X H I B I T S
 2

                        -   -   -
 3

 4    NO.              DESCRIPTION                  PAGE
 5    CVS-Vernazza
      Exhibit-104   Amended Second Notice of
 6                  Deposition Pursuant to Rule
                    30(b)(6) and Document Request
 7                  Pursuant to Rule 30(b)(2)
                    and Rule 34 to Defendant
 8                  CVS Health Corporation      26
 9    CVS-Vernazza
      Exhibit-105   9/21/18 Letter from
10                  Daniel Goetz to Eric
                    Delinsky                    27
11
      CVS-Vernazza
12    Exhibit-108   10/22/18 Letter from
                    Daniel Goetz to Eric
13                  Delinsky                    27
14    CVS-Vernazza
      Exhibit-111   CVS-MDLT1-000103859-867     426
15
      CVS-Vernazza
16    Exhibit-119   CVS-MDLT1-000012286         460
17    CVS-Vernazza
      Exhibit-125   CVS-MDLT1-000034172;
18                  Native                      453
19
20
21
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                      -   -   -

 2            DEPOSITION SUPPORT INDEX

 3                      -   -   -

 4

 5    Direction to Witness Not to Answer

 6    Page Line      Page Line       Page Line

 7    None

 8

 9

10    Request for Production of Documents

11    Page Line      Page Line       Page Line

12    None

13

14

15    Stipulations

16    Page Line      Page Line       Page Line

17    12       1

18

19

20    Question Marked

21    Page Line      Page Line       Page Line

22    None

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    -  -  -

 2            (It is hereby stipulated and

 3       agreed by and among counsel that

 4       sealing, filing and certification

 5       are waived; and that all

 6       objections, except as to the form

 7       of the question, will be reserved

 8       until the time of trial.)

 9                    -  -  -

10            VIDEO TECHNICIAN:  We are

11       now on the record.  My name is

12       Daniel Holmstock.  I'm the

13       videographer for Golkow Litigation

14       Services.  Today's date is

15       November 20th, 2018.  The time on

16       the video screen is 9:13 a.m.

17            This video deposition is

18       being held at Zuckerman Spaeder

19       LLP, 1800 M Street, Northwest,

20       Suite 1000, in Washington, D.C.,

21       in the matter of In Re National

22       Prescription Opiate Litigation

23       pending before the United States

24       District Court for the Northern
```

Highly Confidential - Subject to Further Confidentiality Review

 1      District of Ohio, Eastern

 2      Division.  The deponent is CVS,

 3      and representing CVS is Mr. Mark

 4      Vernazza.

 5          The court reporter is Amanda

 6      Miller.  Counsel will be noted on

 7      the stenographic record.  And

 8      will, now, the court reporter

 9      administer the oath?

10                 -   -   -

11          MARK VERNAZZA, after having

12      been duly sworn, was examined and

13      testified as follows:

14                 -   -   -

15          MR. KENNEDY:  This is Eric

16      Kennedy, I represent the

17      plaintiffs in this litigation.

18          If we can go around the room

19      and everybody just introduce

20      themselves and let us know who you

21      represent, please.

22          MR. GOETZ:  Dan Goetz,

23      plaintiffs.

24          MR. BAKER:  William Baker,

1        plaintiffs.

2              MR. DEROCHE:  James DeRoche,

3        plaintiffs.

4              MR. ELSNER:  Michael Elsner,

5        plaintiffs.  And with me today are

6        Michael Hall and Amanda

7        Unterreiner.

8              MS. CALZOLA:  Gianna Calzola

9        from Pelini Campbell & Williams on

10       behalf of Prescription Supply,

11       Inc.

12             MS. DEFRANCESCO:  Lindsay

13       DeFrancesco, Reed Smith, on behalf

14       of Amerisource Bergen.

15             MS. KVESELIS:  Emily

16       Kveselis, Covington & Burling, for

17       McKesson.

18             MR. PYSER:  Steven Pyser,

19       Williams and Connolly, Cardinal

20       Health.

21             MS. MILLER:  Sasha Miller,

22       Zuckerman Spaeder, on behalf of

23       CVS, Indiana, LLC and CVS RX

24       Services, Inc., and on behalf of

Highly Confidential - Subject to Further Confidentiality Review

1    the corporate designee, Mr. Mark

2    Vernazza.

3         MR. DELINSKY:  Eric

4    Delinsky, of Zuckerman Spaeder on

5    behalf of CVS Indiana, LLC and CVS

6    RX Services Inc., and on behalf of

7    their corporate designee, Mark

8    Vernazza and Mr. Vernazza himself.

9         And just at the outset, I

10   would like to make clear that the

11   deposition is of CVS Indiana, LLC

12   and CVS RX, Inc., the two CVS

13   defendants named in the case.

14        MR. KENNEDY:  Eric Kennedy

15   on behalf of plaintiffs.

16        The gentleman who manages

17   our exhibits is not here,

18   unexpectedly.  We hope everything

19   is okay.

20        But because of that, we're

21   going to use paper exhibits.  And

22   we're not going to be putting them

23   up on the screen.  And we have an

24   agreement that those paper

Highly Confidential - Subject to Further Confidentiality Review

1           exhibits that we utilize,

2           thereafter, if this deposition is

3           played, the video will be played,

4           we will be allowed to use those

5           exhibits, split the screen and

6           highlight what is actually read

7           into the record and referenced by

8           the witness.

9                   Agreeable?

10                  MR. DELINSKY:  Agreeable.

11                  MR. KENNEDY:  Great.

12                      -   -   -

13                  EXAMINATION

14                      -   -   -

15     BY MR. KENNEDY:

16          Q.    Sir, my name is Eric

17     Kennedy.  We briefly met.

18                  Could you please state your

19     full name for the record?

20          A.    My full name is Mark Robert

21     Vernazza.

22          Q.    And what is your

23     professional address, sir?

24          A.    1 CVS Drive in Woonsocket,

1  Rhode Island.

2       Q.    And who is your current

3  employer?

4       A.    CVS Pharmacy, Inc.

5       Q.    And what is your present

6  position with CVS Pharmacy, Inc.

7       A.    Senior legal counsel.

8       Q.    Tell me about your current

9  duties and responsibilities.

10       A.    I assist the company

11  primarily with respect to litigation and

12  government investigations.

13       Q.    And when you said "senior

14  legal counsel," that means you are a

15  lawyer?

16       A.    I am a lawyer.

17       Q.    You do not work, am I

18  correct, for either of the CVS defendants

19  in this case?

20       A.    I may, from time to time,

21  perform services on behalf of those

22  entities.  I'm not employed by those

23  entities.

24       Q.    And when you provide

1    services for those entities, CVS Indiana,

2    LLC and CVS RX Services, who pays you?

3           A.    CVS Pharmacy, Inc.

4           Q.    Tell me about your career,

5    if you can, briefly, with CVS.

6           A.    I joined the company in

7    approximately January of 2014 as senior

8    legal counsel.  I have remained in that

9    position until the present day.

10          Q.    Have your responsibilities

11   as a lawyer at CVS, have they involved,

12   in any way, a suspicious order monitoring

13   of controlled substances?

14                MR. DELINSKY:  I would

15          instruct the witness not to

16          answer, to the extent it calls for

17          attorney-client information.

18   BY MR. KENNEDY:

19          Q.    And at all times, please, do

20   not answer any questions that you believe

21   or feel invade that privilege, all right?

22          A.    Absolutely.

23                I have been part of a team

24   of lawyers in-house that advises the

1    company with respect to litigation,

2    including this litigation, as well as

3    controlled substances matters more

4    generally.

5         Q.    And that did not begin until

6    2014, would that be true?

7         A.    That would be true.

8         Q.    And your responsibilities

9    with respect to the monitoring of

10   suspicious orders, would I be correct

11   that those responsibilities did not begin

12   until after CVS stopped distributing

13   hydrocodone drugs to CVS pharmacies?

14             MR. DELINSKY:  Object to

15        form.

16             THE WITNESS:  I'm not a part

17        of the team that regularly reviews

18        suspicious orders.  My

19        responsibility is providing legal

20        services with the company,

21        beginning upon my employment with

22        the company in January of 2014.

23   BY MR. KENNEDY:

24        Q.    All right.  So there was

1   some overlap?

2        A.    CVS ceased the distribution

3   of hydrocodone combination products upon

4   those products being upscheduled to

5   Schedule II in October of 2014.  That is

6   before I joined the company.

7        Q.    All right.

8        A.    Excuse me.  I joined the

9   company before that time.

10       Q.    Correct.  Let's just cut to

11  the chase.

12            You've had no

13  responsibility, at any point in time, in

14  the creation, implementation or direct

15  management of any controlled substance

16  monitoring program at CVS; true?

17            MR. DELINSKY:  Object to

18       form.

19            THE WITNESS:  I'm not sure

20       that I can answer that question

21       without revealing privileged

22       communications.

23  BY MR. KENNEDY:

24       Q.    Let me ask you, identify for

1    me what controlled substance operating

2    policies and procedures that you wrote?

3              MR. DELINSKY:  Object to

4         form.  And I instruct the witness

5         not to --

6    BY MR. KENNEDY:

7         Q.    Prior to October of 2014,

8    tell me which ones you wrote.

9         A.    Prior to October?

10        Q.    Of 2014, yes.

11             MR. DELINSKY:  Object to the

12        form of the question.  And I

13        instruct -- I instruct the witness

14        not to answer, to the extent

15        answering requires the disclosure

16        of attorney-client privileged

17        information.

18             THE WITNESS:  I don't recall

19        offering any controlled substance

20        policy with respect to suspicious

21        order monitoring, prior to October

22        of 2014.

23   BY MR. KENNEDY:

24        Q.    You didn't operate -- you

1    didn't create or write any; would that be

2    true?

3           A.    With respect to suspicious

4    order monitoring, that's correct.

5           Q.    Your involvement with

6    suspicious order monitoring has always

7    been as a lawyer, correct?

8           A.    That's correct.

9           Q.    In 2006, where were you

10   working?

11          A.    At a law firm in Boston.

12          Q.    Any involvement with CVS in

13   2006?

14          A.    Not to my recollection.

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



15          A.    My understanding is yes.

16          Q.    Now, you've been asked to

17   provide testimony in response to 30(b)(6)

18   notices in this case.

19                Would that be correct?

20          A.    Yes.

21          Q.    And I'm going to mark those

22   exhibits, if we can.

23                MR. KENNEDY:  Can we take a

24          break for a second?

Highly Confidential - Subject to Further Confidentiality Review

1                        -   -   -

2                    (Whereupon, a discussion off

3              the record occurred.)

4                        -   -   -

5                    VIDEO TECHNICIAN:  The time

6              is 9:22 a.m.  We're going off the

7              record.

8                        -   -   -

9                    (Whereupon, a brief recess

10             was taken.)

11                       -   -   -

12                   VIDEO TECHNICIAN:  The time

13             is 9:31 a.m.  We are back on the

14             record.

15      BY MR. KENNEDY:

16             Q.    All right.  Before we went

17      off the record, I asked you whether or

18      not you were here in response to 30(b)(6)

19      notices that had been served on CVS.

20                   And your answer was that you

21      are, correct?

22             A.    On behalf of CVS Indiana,

23      LLC and CVS RX Services, Inc., the

24      defendants in this case.

```
 1            Q.    All right.  I'm going to

 2    refer to them as the CVS defendants; so

 3    you'll know what I'm talking about when I

 4    say CVS defendants, it will be those two

 5    distributor entities that you just

 6    described, all right?

 7            A.    That's fair.

 8            Q.    I'm going to give you CVS

 9    Exhibit-103, I think we already have 103,

10    104, 105 and 108.

11                 Is 103 the first amended

12    notice of deposition pursuant to Rule

13    30(b)(6)?

14                     -   -   -

15                 (Whereupon, CVS-Vernazza

16            Exhibit-103, Amended First Notice

17            of Deposition Pursuant to Rule

18            30(b)(6) and Document Request

19            Pursuant to Rule 30(b)(2) and Rule

20            34 to Defendant CVS Health

21            Corporation, was marked for

22            identification.)

23                     -   -   -

24                 THE WITNESS:  I see that
```

1              document, yes.

2    BY MR. KENNEDY:

3         Q.    And 104 is the amended

4    second notice of deposition pursuant to

5    Rule 30(b)(6), correct?

6                    -  -  -

7              (Whereupon, CVS-Vernazza

8              Exhibit-104, Amended First Notice

9              of Deposition Pursuant to Rule

10             30(b)(6) and Document Request

11             Pursuant to Rule 30(b)(2) and Rule

12             34 to Defendant CVS Health

13             Corporation, was marked for

14             identification.)

15                    -  -  -

16             THE WITNESS:  I see that

17             document as well.

18   BY MR. KENNEDY:

19        Q.    And then we have 105 and

20   108, which are two letters from our law

21   firm which are amending and describing

22   further these notices, correct?

23                    -  -  -

24             (Whereupon, CVS-Vernazza

Highly Confidential - Subject to Further Confidentiality Review

1            Exhibit-105, 9/21/18 Letter from

2            Daniel Goetz to Eric Delinsky, was

3            marked for identification.)

4                         -   -   -

5            (Whereupon, CVS-Vernazza

6            Exhibit-108, 10/22/18 Letter from

7            Daniel Goetz to Eric Delinsky, was

8            marked for identification.)

9                         -   -   -

10            THE WITNESS:  I see two

11            letters that I presume to be from

12            your law firm, yes.

13    BY MR. KENNEDY:

14            Q.    And I think you've indicated

15    that you are here in response to those

16    notices, and you are speaking on behalf

17    of CVS Indiana, LLC, correct?

18            A.    Yes.  And CVS RX Services,

19    Inc.

20            Q.    That we're going to refer to

21    as the CVS defendants as we move forward.

22            A.    Yes.

23            I just want to clarify this

24    notice does say CVS Health.  I'm not here

1    on behalf of CVS Health.

2         Q.    Let me ask you this:  Did

3    only employees of CVS Indiana, LLC and

4    CVS RX Services, Inc. create, develop and

5    manage the suspicious order monitoring

6    policies between 2006 and 2014?

7              MR. DELINSKY:  Object to the

8         form.

9              THE WITNESS:  To the best of

10        my corporate knowledge, no.  And

11        to the extent that the services

12        were performed by entities other

13        than those two entities, on behalf

14        of those two entities, to the

15        topics that have been designated

16        here, I'm prepared to provide

17        testimony on that as well.

18   BY MR. KENNEDY:

19        Q.    The other entities that

20   would have provided services to the CVS

21   defendants, with respect to the creation

22   and management of suspicious order

23   monitoring policies, would have been,

24   number one, CVS Pharmacy, Inc., true?

```
 1                    MR. DELINSKY:  Object to the
 2          form.
 3                    THE WITNESS:  CVS Pharmacy,
 4          Inc. would have provided some of
 5          those services, yes.
 6   BY MR. KENNEDY:
 7          Q.    And CVS Pharmacy, Inc.,
 8   would that be the parent or the owner of
 9   the CVS defendants?
10          A.    Yes.
11          Q.    What other CVS entities
12   provided services in the creation or the
13   management of the suspicious order
14   monitoring policies of the CVS
15   defendants?
16                    MR. DELINSKY:  Object to
17          form.
18                    THE WITNESS:  I don't have
19          corporate knowledge that there
20          were other such entities involved.
21          There may have been, I don't have
22          that knowledge at this point in
23          time.
24   BY MR. KENNEDY:
```

1        Q.    The first notice that we

2    marked as Exhibit-103, that asks that you

3    would come prepared to provide

4    testimony -- if you look at Page 6, that

5    you would come and be prepared to provide

6    testimony with respect to, A, your

7    past -- and "your" would be the CVS

8    defendants -- past, present suspicious

9    order monitoring system, SOMS program

10   policies and procedures, correct?

11       A.    I see that language.

12       Q.    And are you prepared to do

13   that today, to provide testimony with

14   regard to that topic that we've outlined

15   as A?

16            MR. DELINSKY:  Before you

17       answer, Mr. Vernazza.

18            I would just like to put on

19       the record the fact that written

20       objections were served on

21       plaintiffs by the CVS defendants

22       as to both the first and second

23       notice, and additional

24       correspondence was sent by the --

Highly Confidential - Subject to Further Confidentiality Review

1           by counsel for the CVS defendants

2           regarding the scope and objections

3           to the topics in the two notices

4           that have been marked as

5           Exhibits-103 and 104.

6                 And, of course, there were

7           considerable verbal conversations

8           among counsel for the CVS

9           defendants and plaintiffs

10          regarding the scope of the

11          exhibits.  Those are not part of

12          the record as of yet, and I simply

13          would note that the topics in the

14          two notices are subject to the

15          objections and subsequent

16          discussions among counsel.

17     BY MR. KENNEDY:

18          Q.    If you'd look at H, if you

19     would, of this notice that was provided

20     to the CVS defendants.

21                And let me ask you, on

22     behalf of the CVS defendants, are you

23     prepared to provide testimony,

24     information and facts with respect to the

1    present policies and procedures related

2    to due diligence following the detection

3    of a suspicious order, past or present?

4              MR. DELINSKY:  Object to

5         form.  And I simply incorporate,

6         by reference, the remarks I just

7         made regarding the scope of this

8         notice.

9              THE WITNESS:  I am prepared

10         to testify as to the due diligence

11         and the process that CVS undertook

12         to identify and report suspicious

13         orders.

14   BY MR. KENNEDY:

15         Q.    And if we look at H -- or,

16   excuse me, if we look at I, have you come

17   prepared to provide testimony and facts

18   with respect to the past, present policy,

19   procedure, standards and metrics used to

20   identify orders of unusual size, orders

21   deviating substantially from a normal

22   pattern, and orders of unusual frequency?

23         A.    I have, again, prepared to

24   testify, on behalf of the CVS defendants,

1    with respect to the policies --

2         Q.    So my answer would be yes --

3    your answer would be yes?

4              MR. DELINSKY:  Excuse me,

5         Mr. Vernazza, you can finish your

6         answer.

7              THE WITNESS:  With respect

8         to the policies, practices and

9         procedures that CVS used to

10        identify and report suspicious

11        orders.

12   BY MR. KENNEDY:

13        Q.    And that would include the

14   policies and procedures and metrics and

15   standards relating to the identification

16   of orders of unusual size, orders

17   deviating substantially from a normal

18   pattern and orders of unusual frequency;

19   is that true?

20             MR. DELINSKY:  And I would

21        note again that these topics have

22        been narrowed and have been made

23        subject to objections and

24        discussion among counsel.

1              THE WITNESS:  Again, the

2         suspicious order monitoring

3         processes and systems and due

4         diligence conducted in connection

5         with those is a topic that I have

6         undertaken to prepare to provide

7         testimony on today.

8    BY MR. KENNEDY:

9         Q.    Would the answer to my

10   question then be yes?

11        A.    I'm sorry, could you repeat

12   the question?

13        Q.    I want you to listen very

14   carefully to my question, and there's no

15   need for you to repeat my question in

16   your answer, if it doesn't call for it,

17   all right?

18             My question is very simply,

19   Number I, part of the 30(b)(6) notice,

20   have you come prepared to provide

21   testimony with respect to the CVS

22   defendants' past, present, policy,

23   procedures, standards and metrics used to

24   identify orders of unusual size, orders

Highly Confidential - Subject to Further Confidentiality Review

1    deviating substantially from a normal

2    pattern and orders of unusual frequency?

3             MR. DELINSKY:  I just

4         incorporate my comments again

5         regarding the scope of the notice.

6             THE WITNESS:  I understand

7         that there's been some narrowing

8         among counsel as to the topics and

9         some objections as to the topics.

10            I am prepared to testify, on

11        behalf of the CVS defendants, with

12        respect to the company's

13        suspicious order monitoring

14        policies, procedures and

15        practices.

16   BY MR. KENNEDY:

17        Q.    All right.

18            MR. KENNEDY:  Could you read

19        my question back again?

20            I want you to listen to this

21        question very carefully.  It's not

22        the one you're answering, but I

23        want you to answer my question.

24                        -  -  -

Highly Confidential - Subject to Further Confidentiality Review

1          (Whereupon, the court

2     reporter read following part of

3     the record:

4          "Question: My question is

5     very simply, Number I, part of the

6     30(b)(6) notice, have you come

7     prepared to provide testimony with

8     respect to the CVS defendants'

9     past, present, policy, procedures,

10    standards and metrics used to

11    identify orders of unusual size,

12    orders deviating substantially

13    from a normal pattern and orders

14    of unusual frequency?")

15               -   -   -

16         MR. DELINSKY:  I'd like to

17    object to form.  I incorporate my

18    comments to the scope of the

19    notice.

20         And, Mr. Kennedy, I would

21    simply note that some, if not

22    many, of the topics set forth in

23    the notice that don't square with

24    what the CVS defendants did or

Highly Confidential - Subject to Further Confidentiality Review

1          didn't do, making it difficult to

2          answer in any way other than the

3          way that Mr. Vernazza already has

4          answered.

5     BY MR. KENNEDY:

6          Q.    Do you want to incorporate

7     the objection into your answer?

8          A.    I'm not sure what you mean

9     by that.

10          But to the extent that

11     objections have been made and agreements

12     have been made among counsel to narrow

13     the scope of the topics, I am prepared to

14     testify to that topic.

15          Q.    All right.  And how have

16     they been narrowed with respect to what

17     we just read?  Have they been narrowed

18     with respect to I?

19          MR. DELINSKY:  I'm

20          instructing the witness --

21     BY MR. KENNEDY:

22          Q.    And I'm talking about -- and

23     I just want to know, from '06 to '14,

24     okay, '06 to '14, Number I, how have they

Highly Confidential - Subject to Further Confidentiality Review

1  been narrowed that it's going to limit

2  your preparation, your ability to provide

3  us with that testimony and that evidence?

4          MR. DELINSKY:  And I would

5              instruct the witness not to answer

6              to the extent it discloses your

7              communications with counsel.

8          THE WITNESS:  I've conducted

9              an extensive effort to prepare on

10             the topic of the suspicious order

11             monitoring policies, procedures,

12             practices on behalf of the CVS

13             defendants in preparation for this

14             deposition.

15  BY MR. KENNEDY:

16      Q.    And did your preparation

17  include learning and understanding the

18  procedures in relation to unusual size,

19  frequency, and pattern with respect to

20  suspicious orders?

21          MR. DELINSKY:  Object to the

22              form.

23          THE WITNESS:  That's

24              included in the scope of my

Highly Confidential - Subject to Further Confidentiality Review

1      preparation.

2    BY MR. KENNEDY:

3          Q.     That was easy, wasn't it?

4    We didn't have to take 20 minutes.

5          A.     I'm just attempting to

6    answer your question.

7          Q.     Work harder.

8          MR. DELINSKY:  Objection.

9    Counsel.

10   BY MR. KENNEDY:

11         Q.     Can you tell me what efforts

12   you or the CVS defendants have made to

13   provide you with information known or

14   reasonably available to the CVS

15   defendants with respect to the topics

16   that you're going to testify on?

17         A.     Yes.  I have conducted

18   interviews with current and former CVS

19   personnel.  Those interviews number in

20   excess of 40 different individuals that I

21   have interviewed, many individuals on

22   multiple occasions.

23                I have undertaken a review

24   of a number of different documents in

1  preparation for the deposition.

2            I have sat with our current

3  suspicious order monitoring team and

4  watched them perform their work for a

5  good portion of a morning.

6            I have traveled to the

7  Indianapolis distribution center for the

8  purposes of observing their operations

9  and conducting interviews with personnel

10  at that facility.

11            There may be more, but

12  that's what comes to mind.

13       Q.    And can you tell me how much

14  time you've put into educating yourself,

15  or being educated, with respect to the

16  suspicious order monitoring systems,

17  programs and procedures at the CVS

18  defendants?

19       A.    I can't put a precise time

20  on it.  The best of my estimation, the

21  amount of time I've spent preparing for

22  this deposition exceeds four weeks of

23  business days.

24       Q.    Did you interview and spend

Highly Confidential - Subject to Further Confidentiality Review

1    time with Mr. Martoletti?

2         A.    I did.

3         Q.    And on how many occasions

4    did you speak with him?

5         A.    More than one.

6         Q.    And what about Ms.

7    Propatier, did you interview her?

8         A.    I did.

9         Q.    On how many occasions?

10        A.    In preparation for this

11   deposition, I believe I interviewed Ms.

12   Propatier one time.

13        Q.    And what about Mr. Devlin?

14        A.    Yes.  I interviewed Mr.

15   Devlin in preparation for this

16   deposition.  I spoke with him more than

17   once in preparation.

18        Q.    And where did you interview

19   or speak to Mr. Martoletti?

20        A.    By telephone.

21        Q.    And Mr. Devlin?

22        A.    In person and by telephone.

23        Q.    And Ms. Propatier, in person

24   or telephone?

Highly Confidential - Subject to Further Confidentiality Review

1    A.    In person.

2    Q.    And you understand, as a

3  lawyer, that your testimony here does not

4  necessarily represent your knowledge but

5  represents the knowledge of the CVS

6  defendants?  You understand that?

7    A.    I understand that as the

8  30(b)(6) deponent here today.

9    Q.    And you understand that your

10  testimony here today represents the

11  positions of the CVS defendants on the

12  topics that we're going to talk about?

13  You understand that?

14        MR. DELINSKY:  Object to

15    form.

16        THE WITNESS:  I understand

17    that I'm being asked to provide

18    corporate testimony.

19  BY MR. KENNEDY:

20    Q.    And corporate testimony

21  means you're providing testimony on

22  behalf of the CVS defendant corporations?

23    A.    That's my understanding.

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16    BY MR. KENNEDY:

17         Q.    Now, the two CVS defendants

18    both distribute controlled substances,

19    correct?

20              MR. DELINSKY:  Object to

21         form.

22              THE WITNESS:  Both of

23         these --

24    BY MR. KENNEDY:

1    Q.    To CVS pharmacies, correct?

2    A.    Both of the CVS entities

3 named as defendants in this case are

4 distributors of controlled substances.

5 They are now, and have always been, only

6 distributors of Schedule III through V

7 controlled substances, and have never

8 been distributors of Schedule II

9 controlled substances.

10          Additionally, those entities

11 have only distributed controlled

12 substances to CVS pharmacies, to the best

13 of my corporate knowledge.

14    Q.    So the answer to my question

15 would be yes, correct?

16          MR. DELINSKY:  Object to

17      form.

18          THE WITNESS:  I think the

19      answer to your question is the

20      answer I provided to your

21      question.

22 BY MR. KENNEDY:

23    Q.    Well, the shortened version

24 would be yes, correct?

1          MR. DELINSKY:  Object to the

2          form.

3    BY MR. KENNEDY:

4          Q.    The two distribution centers

5    that we're talking about, the two CVS

6    defendants, distribute controlled

7    substances to CVS pharmacies; is the

8    answer to that yes?

9          MR. DELINSKY:  Object to

10         form.  The answer has already been

11         provided.

12         THE WITNESS:  The answer is

13         that yes, insofar as we're talking

14         about Schedule III through V

15         controlled substances and only to

16         CVS pharmacies.

17   BY MR. KENNEDY:

18         Q.    Unless I'm talking about --

19   unless I specifically let you know, we're

20   talking about Schedule III hydrocodone

21   drugs, all right, that CVS distributed to

22   the CVS pharmacies, all right?

23         A.    With respect to --

24         MR. DELINSKY:  Object to

1          form.  And I don't think there's a

2          question pending, or is there?

3   BY MR. KENNEDY:

4          Q.    Do you understand that

5   that's what we're here talking about?

6   We're talking about hydrocodone drugs

7   being distributed by CVS defendants to

8   the CVS pharmacies.

9               You understand that's kind

10  of the topic of the litigation here?

11              MR. DELINSKY:  I would just

12         like to -- I object to form.  It's

13         hydrocodone combination products.

14  BY MR. KENNEDY:

15         Q.    When I say "hydrocodone

16  drugs," you know I'm talking about HCPs

17  or hydrocodone products, all right?  You

18  understand that?

19              I think we kind of been

20  through that.

21              MR. DELINSKY:  Object to --

22  BY MR. KENNEDY:

23         Q.    You understand that?

24              MR. DELINSKY:  Object to the

Highly Confidential - Subject to Further Confidentiality Review

1          shorthand that's being used in the

2          question.  There's a question as

3          to whether they are drugs or

4          medicine.

5     BY MR. KENNEDY:

6          Q.    Well, CVS refers to them as

7     drugs, don't they, in every one of their

8     standard operating procedures?

9               You've reviewed those.

10    Don't they refer to them as drugs?

11         A.    Medications or drugs,

12    certainly.

13         Q.    In fact --

14         A.    Everything CVS dispenses is

15    an FDA-approved medication.

16              But shorthand, in the

17    industry, may be drugs.

18         Q.    Well, shorthand, every --

19    what's the name of your -- the standard

20    operating procedures?  Isn't it

21    controlled drugs?

22         A.    Sure.

23         Q.    Right.  So that's a term

24    you're familiar with, right, drugs?

1          A.     We're talking about

2    controlled substances that are regulated

3    by the DEA and approved by the FDA.

4    We're not, of course, talking about

5    street drugs.

6          Q.     I'm talking about the term

7    "drugs" that you and CVS used in every

8    one of its standard operating procedures.

9               Do you know what I'm talking

10   about?

11         A.     I'm --

12         Q.     Do you know what I'm talking

13   about when I use the term "controlled

14   drugs"?  Do you understand that?

15              MR. DELINSKY:  Object to

16         form.  If there's a document

17         you're referring to, please show

18         the witness.

19   BY MR. KENNEDY:

20         Q.     Do you understand that?

21         A.     If you're talking about

22   controlled drugs, I would understand you

23   to be talking about those medications

24   that are scheduled by the DEA as

1    controlled substances.

2          When you say "controlled

3    substances," that may refer to a broader

4    class of controlled substances than

5    simply hydrocodone combination products.

6        Q.   Did CVS, from '06 to '14,

7    understand that hydrocodone drugs were

8    highly addictive?  Did they understand

9    that?

10         MR. DELINSKY:  Object to the

11        form of the question.  That is

12        outside the scope of the two

13        deposition notices.

14         To the extent the witness

15        has corporate knowledge, you may

16        answer.

17         THE WITNESS:  Could you

18        repeat the question?

19    BY MR. KENNEDY:

20        Q.   Did CVS, from 2006 to 2014,

21    did they understand that hydrocodone

22    drugs, HCPs, were a highly addictive

23    drug?

24         MR. DELINSKY:  Same

1          objection.

2              THE WITNESS:  CVS understood

3          that they were controlled

4          substances in Schedule III,

5          between 2006 and 2014.

6              MR. KENNEDY:  Could you read

7          my question back, please?

8              I want you to answer my

9          question.

10                   -   -   -

11              (Whereupon, the court

12          reporter read the following part

13          of the record:

14              "Question:  Did CVS, from

15          2006 to 2014, did they understand

16          that hydrocodone drugs, HCPs, were

17          a highly addictive drug?")

18                   -   -   -

19              MR. DELINSKY:  Object to

20          form.  Object on the grounds that

21          the question is outside the scope

22          of the deposition.

23              Further object on the

24          grounds that the question has been

1          asked and answered directly.

2               THE WITNESS:  CVS was

3          familiar with those drugs as being

4          controlled substances in Schedule

5          III.  CVS was also aware that

6          controlled substances could be

7          abused or misused.

8               Beyond that, I'm not sure I

9          have corporate knowledge to answer

10         your question.

11    BY MR. KENNEDY:

12         Q.    Did CVS understand, between

13    2006 and 2014, that there was an opioid

14    epidemic in the United States of America?

15              MR. DELINSKY:  Object to

16         form.  Object to the -- on the

17         grounds that that question is

18         outside the scope of the

19         deposition notices.

20              Mr. Kennedy, could you

21         please identify the topic to which

22         this question pertains?

23              MR. KENNEDY:  Let me ask the

24         first question.

Highly Confidential - Subject to Further Confidentiality Review

1  BY MR. KENNEDY:

2      Q.    Let me ask you this: If CVS

3  is writing, establishing and putting in

4  place suspicious order monitoring

5  policies, if they're doing that,

6  shouldn't they understand the existence

7  of an epidemic in relation to those

8  substances in the United States of

9  America?

10          MR. DELINSKY:  Object to

11      form.

12  BY MR. KENNEDY:

13      Q.    Can you answer that?

14      A.    I'm not sure that I have

15  corporate knowledge with respect to that

16  question.

17      Q.    So CVS has no position on

18  whether or not they should understand the

19  existence of an epidemic in relation to

20  the drugs that it is distributing --

21          MR. DELINSKY:  Object to

22      the --

23  BY MR. KENNEDY:

24      Q.    -- is that your position?

1    Is that the position of CVS defendants in

2    this case?

3                    MR. DELINSKY:  Object to

4            form.

5                    THE WITNESS:  That is not

6            the position of CVS, as you've

7            characterized it.

8                    I don't have corporate

9            knowledge to answer your question

10           throughout the time period that

11           you have set forth, in the manner

12           that you've set it forth.

13                   It's not a topic that I

14           understood to be part of the

15           topics that I prepared for in the

16           course of preparing for this

17           deposition.  And for that reason,

18           at this point in time, I don't

19           have corporate knowledge that can

20           respond to that question.

21   BY MR. KENNEDY:

22           Q.   So let me ask you, you

23   didn't think you needed to understand and

24   know whether CVS was aware of an opioid

1    epidemic during the period of time that

2    they are establishing, creating and

3    managing policies and procedures to limit

4    diversion in the shipping of suspicious

5    orders of the drugs?  You didn't find a

6    need to prepare on that topic?

7              MR. DELINSKY:  Object to

8         form.  You're referring to a

9         topic, Mr. Kennedy.

10             I'm going to make my second

11        request for you to identify the

12        topic that questions regarding a

13        potential opioid epidemic pertain

14        to before we proceed any further.

15             MR. KENNEDY:  And I'll go

16        back to my question.

17   BY MR. KENNEDY:

18        Q.    Does CVS believe, does CVS

19   take the position that it was necessary

20   for them to understand the opioid

21   epidemic in this country when they were

22   writing policies and procedures to

23   monitor the drugs that they were selling

24   that were involved in this epidemic?

1           MR. DELINSKY:  Object to

2      form.  Object on -- to the extent

3      it's outside -- insofar as it's

4      outside the scope of the

5      deposition notice.

6           THE WITNESS:  The company

7      took steps to comply with the

8      Controlled Substances Act, with

9      the regulations promulgated under

10      the Controlled Substances Act, and

11      state law, and for its pharmacists

12      to dispense legitimate

13      prescriptions to patients for

14      the -- legitimate medical

15      purposes.

16  BY MR. KENNEDY:

17      Q.   Did I ask you -- did I just

18  ask you whether or not they made efforts

19  to conform to the law?  Did I ask you

20  that?

21           MR. DELINSKY:  Object to the

22      form of the question.

23  BY MR. KENNEDY:

24      Q.   Did I ask you that question?

Highly Confidential - Subject to Further Confidentiality Review

 1            MR. DELINSKY:  I object to

 2      the form of the question.

 3            MR. KENNEDY:  That's fine.

 4            MR. DELINSKY:  You

 5      effectively did.

 6            MR. KENNEDY:  If we could

 7      just take a moment.

 8            You know, the protocols with

 9      respect to depositions say you are

10      allowed to object, but you are not

11      allowed to give a speech prior to

12      every single answer.  You're not

13      allowed to do that.

14            You're allowed to object,

15      and that is all you're allowed to

16      do, in the protocols that we

17      absolutely, positively negotiated

18      for a long time.

19            This deposition is taking

20      twice as long as it needs to do,

21      because you are repeating my

22      question, and your objection is as

23      long as my question, for every

24      question.  And I just don't think

1    you're allowed to do that.  I

2    would ask that you stop doing

3    that.

4         MR. DELINSKY:  Mr. Kennedy,

5    I think the record will speak to

6    itself on that subject, number

7    one.

8         Number two, we have asked

9    you now three times to identify

10   the topic to which this line of

11   questioning pertains, and you have

12   not identified one.

13        MR. KENNEDY:  Very, very

14   simply.  If you're writing

15   policies to monitor the drugs that

16   you're selling, you should know

17   about the death and the addiction

18   that those drugs are causing, when

19   you are writing those policies.

20   And the topic here is their

21   efforts to write those policies.

22        Now, if this witness

23   believes that CVS had no need to

24   know about the people that these

1      drugs were killing and addicting,

2      when writing those policies, then

3      he should say so, and I will move

4      on.

5            But if he agrees with me

6      that they should know about the

7      people that these drugs are

8      killing and addicting, when they

9      write their policies with respect

10     to the sale of these drugs to our

11     communities, then he should answer

12     the questions about what they knew

13     with respect to the epidemic.

14     That's very simple.

15           So I'll ask my question

16     again, and I want you to listen

17     carefully.

18           MR. DELINSKY:  I --

19           MR. KENNEDY:  Go ahead.

20           MR. DELINSKY:  Before you

21     do --

22           MR. KENNEDY:  Yes.

23           MR. DELINSKY:  I object to

24     your commentary.  It's laden --

Highly Confidential - Subject to Further Confidentiality Review

1          MR. KENNEDY:  I object to

2     your --

3          MR. DELINSKY:  It's laden

4     with factual assumptions.  It's

5     not appropriate for the deposition

6     to be giving speeches or opening

7     statements.

8          And I have now asked you for

9     a fifth time to direct us to the

10    particular topic to which you

11    believe this line of question

12    pertains so that we may evaluate

13    it.

14         MR. KENNEDY:  And it's the

15    topics we read into the record.

16    Their policies and procedures with

17    respect to suspicious order

18    monitoring.

19 BY MR. KENNEDY:

20    Q.   Let me ask you -- let me ask

21 you a very simple question.

22         Do you believe that CVS

23 should have been aware of the existence

24 of the opioid epidemic, between '06 and

1    2014, while they were creating,

2    preparing, managing their suspicious

3    order monitoring policy?

4                MR. DELINSKY:  Object to

5           form.  Object as outside the scope

6           of the notice.

7                THE WITNESS:  That is not a

8           topic on which I have undertaken

9           preparation for this deposition,

10          and for that reason is a topic on

11          which I do not have corporate

12          knowledge to provide at this time.

13   BY MR. KENNEDY:

14          Q.   Do you know whether or not

15   CVS was aware of the extent of the opioid

16   epidemic between 2006 and 2014, as a

17   distributor of opioids to CVS pharmacies?

18               MR. DELINSKY:  Object to

19          form.  Object as outside the scope

20          of the deposition notice --

21          notices, plural.

22               THE WITNESS:  To the best of

23          my corporate knowledge, CVS was

24          aware that hydrocodone combination

Highly Confidential - Subject to Further Confidentiality Review

1       products were Schedule III

2       products during that time period,

3       and that CVS took steps to comply

4       with the law with respect to

5       Schedule III controlled

6       substances.

7           MR. KENNEDY:  Would you read

8       the question back, please?

9           MR. DELINSKY:  Excuse me,

10      were you done with your answer?

11          THE WITNESS:  Yes.

12              -   -   -

13          (Whereupon, the court

14      reporter read the following part

15      of the record:

16          "Question:  Do you know

17      whether or not CVS was aware of

18      the extent of the opioid epidemic

19      between 2006 and 2014, as a

20      distributor of opioids to CVS

21      pharmacies?")

22              -   -   -

23          THE WITNESS:  Again, Mr.

24      Kennedy, that is not a topic that

1            I understood to be part of the

2            noticed topics that I prepared for

3            in preparation for this

4            deposition.

5                 So I don't have corporate

6            knowledge that I can provide on

7            the topic at this time.

8                 MR. DELINSKY:  And I would

9            just like to ensure that my -- I

10           objected on two grounds to that

11           same question and that those are

12           incorporated into the read back

13           question.

14     BY MR. KENNEDY:

15           Q.    Did CVS know, by 2010, that

16     prescription drugs were killing more

17     people in America than heroin and cocaine

18     combined?

19                 MR. DELINSKY:  Object to

20           form.  Object as outside the scope

21           of the notice.

22                 I'd ask Mr. Kennedy, as to

23           this question, if he could

24           identify a particular topic in

1    your notices to which this

2    question pertains.

3            THE WITNESS:  Again, that is

4    not a topic that I undertook to

5    prepare on in advance of this

6    deposition.  CVS was aware of

7    hydrocodone combination products

8    being Schedule III controlled

9    substances.  CVS was aware, and

10   has been aware at various times,

11   that those products can be abused

12   and misused.

13           MR. KENNEDY:  We need to

14   call the Special Master, just to

15   try to get the parameters down.

16   Can we take a break?

17           MR. DELINSKY:  I think

18   they're in court.

19                 -  -  -

20       (Whereupon, a discussion off

21   the record occurred.)

22                 -  -  -

23           MR. DELINSKY:  Mr. Kennedy,

24   again, I've asked you for -- to

1    identify a topic to which your

2    questions about CVS's knowledge

3    about the opioid epidemic pertain.

4    And if you identify it, we, of

5    course, will consider it.  But you

6    haven't identified one.

7  BY MR. KENNEDY:

8    Q.    We're going to take a look

9  at Exhibit-1.

10               -   -   -

11          (Whereupon, CVS-Vernazza

12    Exhibit-1, United States Code -

13    Section 823, was marked for

14    identification.)

15               -   -   -

16  BY MR. KENNEDY:

17    Q.    Have you seen this before,

18  Exhibit-1?

19    A.    I haven't seen this

20  particular printout before.  But I

21  presume this to be a printout from the

22  Controlled Substances Act, resources on

23  the DEA website.

24    Q.    Does it say Title 21, United

1  States Code, Controlled Substances Act?

2       A.    That's what it says.

3       Q.    Are you familiar with that

4  act?

5       A.    I am generally familiar with

6  the Controlled Substances Act, yes.

7       Q.    Did you review that in

8  preparation for your understanding of the

9  testimony you would be providing today?

10       A.    I have reviewed certain

11  components of the Controlled Substances

12  Act.

13       Q.    When did CVS, the CVS

14  defendants, first become aware of the

15  Controlled Substances Act of 1971?

16            MR. DELINSKY:  Object to

17            form.  It's outside the scope of

18            the notice.

19            THE WITNESS:  I have no

20            corporate knowledge that CVS has

21            ever been unaware of the

22            Controlled Substances Act.

23  BY MR. KENNEDY:

24       Q.    Should they have been aware

1    of it in 2006?

2         A.    I understand that in 2006

3    CVS was aware of the Controlled

4    Substances Act.

5         Q.    Did you hear my question?

6              MR. DELINSKY:  Object to

7         form.

8              THE WITNESS:  I thought I

9         answered it.

10   BY MR. KENNEDY:

11        Q.    My question was, should CVS

12   have been aware of the Controlled

13   Substances Act in 2006?

14              MR. DELINSKY:  Object to

15        form.  Asked and answered.

16   BY MR. KENNEDY:

17        Q.    I didn't ask you whether

18   they were, I asked you should.

19              Should they have been aware

20   of it in 2006, the Controlled Substances

21   Act?  Should they have been?

22        A.    As a --

23              MR. DELINSKY:  Excuse me.

24              Object to form.  Object as

1              outside the scope of the notice.

2              Object as outside the scope of

3              Special Master Cohen's rulings on

4              the deposition notices.  And

5              object on the grounds that the

6              question has been asked and

7              answered.

8                       THE WITNESS:  In 2006, CVS

9              was a DEA registrant in a number

10             of different capacities, and so

11             surely CVS would have been aware

12             of the Controlled Substances Act,

13             which provides for such licensure.

14     BY MR. KENNEDY:

15             Q.    Should have been aware and

16     were aware; is that your answer?

17             A.    Yes.

18             Q.    Do you know how CVS became

19     aware of this, the Controlled Substances

20     Act?

21                     MR. DELINSKY:  Object to

22             form.  Object to scope, on scope

23             grounds as well.

24                     THE WITNESS:  That's not

1    something on which I have

2    corporate knowledge.

3  BY MR. KENNEDY:

4    Q.    Look at Number E, if we can

5  scroll down.

6    Look at E, if you would,

7  E(1).

8    A.    I just need to take a minute

9  to review the rest of the document, if

10 you would.

11    Q.    All of E, please.  All of E

12 plus (1).

13    Now, E, E is titled,

14 Distributors of Controlled Substances in

15 Schedule III, IV or V.

16    Do you see that?

17    A.    Yes.  If you could wait just

18 a second.  I'm still reviewing the

19 document.

20    Yes, sir.  I'm ready for

21 your question.

22    Q.    E is titled, Distributors of

23 Controlled Substances in Schedules III,

24 IV and V, correct?

1        A.     That's what I see here.

2        Q.     That would include the CVS

3   distributors?

4        A.     CVS distributors were

5   distributors of controlled substances in

6   Schedules III, IV and V, that is correct.

7        Q.     Would the answer to my

8   question be yes?

9            MR. DELINSKY:  Object to

10           form.

11           THE WITNESS:  I think your

12           question was, and the CVS

13           distributors.  I was providing an

14           answer to your question.

15   BY MR. KENNEDY:

16        Q.     This is a yes-or-no

17   question, all right?  I'm just going to

18   give you a kind of heads up, it's a

19   yes-or-no question, all right?  So listen

20   very carefully.

21            Would E, what we just read,

22   apply to CVS as a distributor of Schedule

23   III opioids?

24            MR. DELINSKY:  Object to

Highly Confidential - Subject to Further Confidentiality Review

1       form.

2             THE WITNESS:  And my

3       response was that CVS distributors

4       were distributors of Schedule III

5       opioids.

6   BY MR. KENNEDY:

7       Q.    So the answer -- let me ask

8   you:  Were you told to repeat my question

9   in every answer so that this would take

10  longer?

11            MR. DELINSKY:  Object to

12      form.  I instruct you not to

13      answer that question.

14  BY MR. KENNEDY:

15      Q.    I just asked a simple

16  yes-or-no, question and you have to

17  repeat my entire question in your answer.

18  The time we are wasting isn't fair to

19  anybody here.

20            So if it's a yes-or-no

21  question, then please answer yes or no.

22  If you need to explain, then please go

23  ahead and explain.  All right?

24      A.    I didn't understand that to

1    be a yes-or-no question.

2         Q.    Under E, it then states, The

3    attorney general shall register an

4    applicant to distribute controlled

5    substances in Schedules III, IV or V,

6    unless he determines that the issuance of

7    such registration is inconsistent with

8    the public interest.  In determining the

9    public interest, the following factors

10   shall be considered.  1, maintenance of

11   effective controls against diversion of

12   particular controlled substances into

13   other than legitimate medical, scientific

14   and industrial channels.

15          Did I read that correctly?

16        A.    I believe you did.

17        Q.    Did you understand and did

18   CVS understand that to be what this act

19   of Congress stated in 1971?

20          MR. DELINSKY:  Object to

21        form.  Object on scope grounds.

22          THE WITNESS:  I am not sure

23        I understood the question.

24          Could you repeat it?

```
 1    BY MR. KENNEDY:

 2         Q.    Was CVS aware of that

 3    statement by Congress in this act as of

 4    2006?

 5              MR. DELINSKY:  Object to

 6         form.

 7              THE WITNESS:  I don't have

 8         corporate knowledge as to the

 9         extent of CVS's knowledge of that

10         particular provision at that

11         particular point in time.

12              I can say that CVS was a

13         registrant and would have applied

14         and met the standard set forth

15         here in order to receive a

16         registration.

17    BY MR. KENNEDY:

18         Q.    Fine.  So can we agree that

19    CVS certainly should have been aware of

20    E(1) in 2006 as a registrant and as a

21    distributor of controlled substances?

22              MR. DELINSKY:  Object to

23         form.

24    BY MR. KENNEDY:
```

Highly Confidential - Subject to Further Confidentiality Review

1          Q.     True?

2          A.     CVS is aware of the

3     Controlled Substances Act.  This is a

4     provision that refers to what the

5     attorney general should do upon

6     application for a registration by a

7     potential registrant.

8                 And as I have said, CVS was

9     a registrant in 2006.

10         Q.     Can we agree that CVS should

11    have been aware of E(1) that we just read

12    in relation to the maintenance of

13    effective controls against diversion?

14    CVS should have been aware of E(1) in

15    this statute by the United States

16    Congress in 2006?  Should have been aware

17    of it, correct?

18                MR. DELINSKY:  Object to

19         form.

20                THE WITNESS:  Again, I don't

21         have corporate knowledge as to the

22         particular nature in which CVS was

23         aware of this particular

24         provision, which applies to the

1          attorney general in acting upon

2          applications for registrations.

3               I do know that CVS would

4          have applied for a registration

5          and received one, presumably

6          consistent with the provision of

7          the Controlled Substances Act.

8               I'm aware of no information

9          suggesting that CVS was not aware

10         of the Controlled Substances Act

11         in general.

12     BY MR. KENNEDY:

13         Q.   And I asked you whether they

14     should have been aware of it, not whether

15     they were or whether they were not.  I

16     haven't asked you whether they agreed or

17     disagreed.  I haven't asked you for any

18     legal interpretation.

19               I'm asking you, should CVS

20     have been aware of this statement by

21     Congress contained in E(1) that we have

22     read?  Should they have been aware of

23     this in 2006?  That's my question.

24               MR. DELINSKY:  Object to

Highly Confidential - Subject to Further Confidentiality Review

1            form.  Object on the grounds that

2            it's outside the scope of the

3            notices.

4                 THE WITNESS:  I really don't

5            know --

6                 MR. DELINSKY:  Object as

7            asked and answered.

8                 THE WITNESS:  I don't know

9            what you mean by "should."  I'm

10           trying to answer the best way I

11           can, based on the factual

12           corporate knowledge that I have.

13    BY MR. KENNEDY:

14           Q.    As someone or a registrant

15    that is attempting to maintain effective

16    controls against diversion, should they

17    have known of the existence of E(1), the

18    statement by the United States Congress

19    in 1971?  Should they have known that?

20                 MR. DELINSKY:  Same

21           objections.

22                 THE WITNESS:  Sir, I think

23           that's the same question you've

24           now asked me several times.  I can

1           give you the same answer, which is

2           that this is a provision of the

3           Controlled Substances Act.  I have

4           no reason to believe that CVS

5           wasn't aware of the Controlled

6           Substances Act.

7                This particular provision

8           appears to apply to the attorney

9           general.

10               MR. KENNEDY:  I'm just going

11          to note in the record your refusal

12          to answer my question.

13               THE WITNESS:  Sir, I don't

14          believe I'm refusing to answer

15          your question.  I'm trying to

16          answer your question to the best

17          of my ability.

18     BY MR. KENNEDY:

19          Q.    Do you know what the word

20     "should" means?  I mean, you understand

21     my question.  I mean, you're a lawyer.

22               You have taken depositions

23     in the past, have you not?

24          A.    I have taken depositions.

1    Q.    How many?

2    A.    A handful.

3    Q.    And when I ask you, should

4    they have been aware of this provision

5    and this statute, do you not know what I

6    mean?  Whether or not they should have

7    been aware of it as opposed to were they

8    aware of it.  I'm asking you should they

9    have been.

10         MR. DELINSKY:  Object to

11         form.

12         THE WITNESS:  I really don't

13         understand your question as to

14         "should have been" with respect to

15         this particular provision.

16         Again, I have no reason to

17         believe that CVS, as a DEA

18         registrant, was not aware of the

19         Controlled Substances Act,

20         including this provision, as of

21         2006.

22         MR. DELINSKY:  Let's take a

23         break.  We've been on the record

24         for about 50 minutes.

1             VIDEO TECHNICIAN:  The time

2       is 10:26 a.m.  We're going off the

3       record.

4                  -   -   -

5             (Whereupon, a brief recess

6       was taken.)

7                  -   -   -

8             VIDEO TECHNICIAN:  The time

9       is 10:44 a.m.  And we're back on

10       the record.

11   BY MR. KENNEDY:

12        Q.    Sir, you understand when I

13   say "CVS," I mean the CVS defendants in

14   this case?  You understand that?

15        A.    Okay.  I think you had

16   defined the CVS defendants earlier to me,

17   the two defendants in the case.

18             You're now saying you want

19   to further define the CVS defendants as

20   just CVS?

21        Q.    Yes.  When I ask you a

22   question, when I say "CVS," "CVS

23   defendants," I'm meaning the same thing.

24             Do you understand that?

Highly Confidential - Subject to Further Confidentiality Review

1        A.    I'm not sure I have

2   understood that to this point.

3             When I might use the term

4   "CVS," I might speak to CVS more broadly

5   than just the CVS defendants.

6        Q.    When I say "CVS," I mean the

7   defendants, unless I say otherwise, all

8   right?

9        A.    I will try to keep that in

10   mind.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



12   BY MR. KENNEDY:

13          Q.    In '06 and '07, did the CVS

14   distributors, or any CVS entity,

15   including CVS Pharmacy, Inc., have any

16   meetings with the DEA to talk about

17   controlled substance monitoring?

18              MR. DELINSKY:  Object to

19          form.  Object as outside the

20          scope, to the extent it's outside

21          the scope of the deposition

22          notice.

23   BY MR. KENNEDY:

24          Q.    Do you know?

1      A.   Could you set forth the time

2  period again?

3      Q.   In '06 or '07 or '08, did

4  the CVS defendants, or any CVS entity,

5  including CVS Pharmacy, Inc., have any

6  meetings with the DEA to talk about

7  suspicious order monitoring of controlled

8  substances?

9           MR. DELINSKY:  Same

10          objections.

11          THE WITNESS:  I do not have

12          corporate knowledge as to whether

13          or not the CVS defendants, as

14          you've used the term, or CVS

15          Pharmacy, Inc. had a meeting with,

16          for instance, DEA headquarters

17          concerning suspicious order

18          monitoring.

19          DEA does regularly inspect

20          and conduct audits of our

21          distribution facilities, and so

22          there may have been conversations

23          about suspicious order monitoring

24          in one of our facilities during

Highly Confidential - Subject to Further Confidentiality Review

1    one of those types of interactions

2    during that time period.

3         I just don't know for

4    certain as I sit here.

5  BY MR. KENNEDY:

6         Q.    When, if ever -- well, when.

7  When did the CVS defendants, when did

8  they become aware of the Know Your

9  Customer requirement or program of the

10 DEA?

11        MR. DELINSKY:  Object to

12   form.

13        THE WITNESS:  I don't have

14   corporate knowledge as to when

15   exactly CVS would have acquired

16   knowledge of the DEA's Know Your

17   Customer language.

18        I do know that CVS received

19   at least some correspondence from

20   the DEA that, to the best of my

21   recollection, references that type

22   of language.

23 BY MR. KENNEDY:

24        Q.    And when the DEA talks about

1    Know Your Customer, did CVS understand

2    that to mean the customer being the CVS

3    pharmacies that you were distributing

4    hydrocodone drugs to?

5              MR. DELINSKY:  Object to

6         form.

7              THE WITNESS:  Yes.  The only

8         customers that distribution

9         centers would have would be the

10        CVS stores.

11   BY MR. KENNEDY:

12        Q.    And if there is evidence

13   throughout this case that in '07, '08 the

14   DEA communicated to distributors across

15   the country the Know Your Customer

16   program and requirement, do you have any

17   knowledge that would indicate that CVS

18   was unaware of the Know Your Customer

19   program by the DEA?

20             MR. DELINSKY:  Object to

21        form.

22             THE WITNESS:  I do not have

23        any specific corporate knowledge

24        that the company was unaware of

1           that concept being communicated by

2           the DEA.

3    BY MR. KENNEDY:

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



16          MR. KENNEDY:  Exhibit-3,

17     please.  We're going to look at

18     Exhibit-3, the first of the DEA

19     letters I think you referenced to.

20              -   -   -

21          (Whereupon, CVS-Vernazza

22     Exhibit-3,

23     CVS-MDLT1-000010552-555, was

24     marked for identification.)

Highly Confidential - Subject to Further Confidentiality Review

1                  -  -  -

2    BY MR. KENNEDY:

3          Q.    Do you know who Mr.

4    Rannazzisi is?

5          A.    I do.

6          Q.    And who is he?

7          A.    Mr. Rannazzisi is a former

8    official with the DEA with

9    responsibilities for oversight over the

10   DEA's diversion control organization.

11         Q.    If you'll take a look at

12   Exhibit-3, that is a letter, is it not,

13   from the United States Department of

14   Justice, Drug Enforcement Administration,

15   which is the DEA, correct?

16         A.    The Drug Enforcement

17   Administration is what I would consider

18   to be the DEA, yes.

19         Q.    September 27, 2006 is the

20   date of this letter, true?

21         A.    The letter appears to be

22   dated September 27, 2006.

23         Q.    CVS Indiana, LLC, one of the

24   defendants in this case, it appears as if

1    they received this letter, true?

2         A.    To the best of our corporate

3    knowledge, that is true.

4         Q.    And who was this letter

5    shared with?  Was this shared with CVS

6    Pharmacy, Inc. at this point in time, in

7    2006, around September?

8         A.    I do not have corporate

9    knowledge as to who this particular

10   letter may have been shared with at CVS

11   Pharmacy, Inc., or if this letter was

12   shared with anyone at CVS Pharmacy, Inc.

13        Q.    And you don't know whether

14   it was shared with the other defendant,

15   the other distributor defendant in this

16   case, CVS RX Services?

17        A.    I, likewise, don't have

18   corporate knowledge of that.

19             MR. DELINSKY:  Just so the

20        record is clear, and Mr. Kennedy,

21        I don't mean to take your time, so

22        we can excise this 30 seconds, but

23        the CVS RX Services, Inc. did not

24        open its distribution center, I

Highly Confidential - Subject to Further Confidentiality Review

1      may not have the date right, until

2      2011 or 2012.

3              MR. KENNEDY:  Fine.  Thank

4      you.

5  BY MR. KENNEDY:

6      Q.    The letter, Exhibit-3, from

7  the DEA to one of the CVS defendants,

8  let's look at the first sentence, if we

9  could.

10             It states, This letter is

11 being sent to every commercial entity in

12 the United States registered with the

13 Drug Enforcement Administration (DEA) to

14 distribute controlled substances.

15             CVS Indiana, at that point

16 in time, was a registrant, correct?

17     A.    To my understanding, that's

18 correct.

19     Q.    And we don't know whether

20 CVS Pharmacy, Inc. was a registrant to

21 distribute at this time; would that be

22 true?

23     A.    I don't have corporate

24 knowledge of that.

1    Q.    Look at the first sentence

2    under background, if you would.

3         And does it state, and this

4    is the DEA to CVS Indiana, As each of you

5    is undoubtedly aware, the abuse

6    (nonmedical use) of controlled

7    prescription drugs is a serious and

8    growing health problem in this country.

9         Do you see that statement?

10   A.    I do.

11   Q.    Was, I'm assuming, then, CVS

12   Indiana, at this point in time, was aware

13   of that statement in 2006, that statement

14   by the DEA?

15   A.    To the best of my corporate

16   knowledge, CVS received this letter --

17   CVS Indiana received this letter and

18   would have reviewed its contents,

19   including that sentence.

20   Q.    Do you know whether CVS

21   Indiana, or any other CVS entity,

22   disagreed with that statement in 2006?

23        MR. DELINSKY:  Object to

24        form.  Object on scope grounds, to

1             the extent the question

2             encompasses any other CVS entity.

3                  THE WITNESS:  I have no

4             knowledge that CVS disagreed with

5             that.

6 BY MR. KENNEDY:

7       Q.    Look to the third paragraph

8 over to the right, four lines down, that

9 starts with, Distributors are.

10            You can look at that whole

11 sentence.

12            The sentence states,

13 Distributors are, of course, one of the

14 key components of the distribution chain.

15            Does CVS disagree with that

16 statement, do you know, in 2006?  And the

17 CVS Indiana, I'm talking about.

18       A.    I have no corporate

19 knowledge, at this point in time, that

20 CVS disagreed with that statement.

21       Q.    The next sentence states, If

22 the closed system is to function properly

23 as Congress envisioned, distributors must

24 be vigilant in deciding whether a

Highly Confidential - Subject to Further Confidentiality Review

1   prospective customer can be trusted to

2   deliver controlled substances only for

3   lawful purposes.

4            CVS, any knowledge that they

5   disagreed with that statement in 2006?

6            MR. DELINSKY:  Object to

7        form.  Object on the grounds it's

8        outside the scope of the Special

9        Master Cohen's rulings on the

10       30(b)(6) topics.

11  BY MR. KENNEDY:

12       Q.   Any evidence that they

13  disagreed with that, at that point in

14  time, in '06?

15       A.   I have no corporate

16  knowledge as to whether or not CVS

17  disagreed with that statement in 2006.

18       Q.   It next states, This

19  responsibility is critical.

20            Any information that CVS

21  Indiana disagreed with that statement in

22  2006?

23            MR. DELINSKY:  Same

24        objections.  Form and scope.

Highly Confidential - Subject to Further Confidentiality Review

1              THE WITNESS:  I have no

2         corporate knowledge, at this point

3         in time, as to whether or not CVS

4         agreed or disagreed with the

5         statement there.

6    BY MR. KENNEDY:

7         Q.    If you go to the next page,

8    10553.  The second paragraph, second

9    sentence that starts with, Moreover.

10             It states --

11        A.    I'm sorry, sir, which?

12        Q.    Second page -- I'm sorry,

13   second page, second paragraph starting

14   with, Moreover.

15             It states, Moreover, all

16   registrants - manufacturers,

17   distributors, pharmacies and

18   practitioners - share responsibility for

19   maintaining appropriate safeguards

20   against diversion.

21             At this point in time, in

22   '06, did CVS understand that to be the

23   position of the DEA?

24        A.    Having received this letter,

Highly Confidential - Subject to Further Confidentiality Review

1  as CVS Indiana, LLC, and having reviewed

2  the letter, CVS would have understood

3  that statement to be a statement made by

4  the DEA.

5       Q.    The next sentence starts

6  with, Nonetheless.

7            Nonetheless, given the

8  extent of prescription drug abuse in the

9  United States, along with the dangerous

10 and potentially lethal consequences of

11 such abuse, even just one distributor

12 that uses its DEA registration to

13 facilitate diversion can cause enormous

14 harm.

15           CVS Indiana would have been

16 aware of that statement by the DEA,

17 correct, because they received this

18 letter, and we assume they read it, true?

19      A.    As I said, CVS Indiana did

20 receive this letter and, presumably,

21 would have reviewed it and been aware of

22 that statement by the DEA.

23      Q.    Any knowledge that you have

24 in your preparation, any knowledge to

1    indicate that any CVS entity disagreed

2    with that statement in 2006?

3         A.    I do not have any corporate

4    knowledge that CVS disagreed with that

5    statement.

6         Q.    If you go down to the

7    paragraph two down that starts with, The

8    DEA regulations require.

9              This 2006 letter goes on to

10   state, The DEA regulations require all

11   distributors to report suspicious orders

12   of controlled substances.

13             Again, CVS Indiana would

14   have been aware of that statement and

15   position of a requirement by the DEA,

16   true?

17        A.    CVS -- I have no corporate

18   knowledge that CVS would not have been

19   aware of this statement in this letter

20   that CVS Indiana received.

21        Q.    All right.  And this one is

22   important, this -- the DEA now quotes, in

23   this letter in '06, they quote from

24   federal regulations, do they not, in the

Highly Confidential - Subject to Further Confidentiality Review

1  very next indented paragraph?  Is that a

2  quote from a federal regulation?

3          A.    I understand it to be so.

4          Q.    And it states, The

5  registrant shall -- now you're a lawyer.

6  What does that word "shall" mean?

7                MR. DELINSKY:  Object to

8          form, to the extent that's

9          calling -- and object to scope, to

10         the extent that's calling for a

11         legal interpretation, it's outside

12         the scope of Special Master

13         Cohen's ruling.

14  BY MR. KENNEDY:

15         Q.    Shall is a mandate; that's a

16  serious word, is it not, in the English

17  language and under the law?  Shall means

18  you've got to do it, right?

19                MR. DELINSKY:  Same

20         objections.

21                THE WITNESS:  I'm not here

22         to interpret what the words of the

23         regulation mean.

24  BY MR. KENNEDY:

1    Q.    You're here on behalf of the

2  CVS defendants in this case to talk about

3  what they did to monitor controlled

4  substances, correct?

5    A.    I'm happy to talk about

6  that, sir.

7    Q.    And wouldn't we agree that

8  they certainly would have had to read

9  this regulation and understand it, right?

10  Correct?

11        They would have to do that;

12  to put together a controlled substance

13  monitoring program, can we agree they

14  would have to have read, have to have

15  read, this regulation and understood what

16  it means, true?

17    A.    I have no corporate

18  knowledge that CVS didn't read this

19  regulation.

20    Q.    And when they read it and

21  saw the word "shall," they certainly

22  should have understood what that word

23  meant, right?

24        MR. DELINSKY:  Object to

 1              form.  Object on the ground that

 2              this line of questioning violates

 3              Special Master Cohen's ruling on

 4              September 3rd regarding the scope

 5              of these topics.

 6     BY MR. KENNEDY:

 7         Q.    Am I right?

 8              THE WITNESS:  Could you read

 9         the question?

10     BY MR. KENNEDY:

11         Q.    When CVS put together its

12     monitoring policies and they received

13     this letter from the DEA quoting the

14     regulation with respect to monitoring

15     policies and they saw that the

16     government, the federal government in its

17     regulations, had used the word "shall"

18     with respect to their responsibility to

19     establish a system, they should have

20     understood the meaning of the word

21     "shall," correct?

22              MR. DELINSKY:  Object to

23         form.  Object on scope grounds.

24         Object to the extent --

1    BY MR. KENNEDY:

2         Q.    Isn't that true, sir?

3              MR. DELINSKY:  Object to the

4         extent that this line of

5         questioning violates Special

6         Master Cohen's prior ruling on

7         these topics.

8    BY MR. KENNEDY:

9         Q.    Isn't that true, they needed

10   to understand the word "shall" when

11   putting together their policies to

12   monitor the distribution of controlled

13   substances?

14             MR. DELINSKY:  Same

15        objections.

16             THE WITNESS:  My corporate

17        knowledge is that CVS, in putting

18        together its policies, was aware

19        of this regulation and all of the

20        words in the regulation.

21   BY MR. KENNEDY:

22        Q.    Right.  And they should have

23   understood that "shall" doesn't mean

24   maybe, maybe we need to do this, or we

Highly Confidential - Subject to Further Confidentiality Review

1    don't have to do this necessarily; they

2    should have understood that "shall" means

3    you have to do it, correct?  Shouldn't

4    they have understood that?

5              MR. DELINSKY:  Object to

6         form.

7    BY MR. KENNEDY:

8         Q.   And if you don't know,

9    that's fine.  But --

10             MR. DELINSKY:  Mr. Kennedy,

11        please indulge me.  Object to the

12        form of the question.  I --

13        Special Master Cohen specifically

14        ruled on these topics.  And he

15        struck from them questions

16        regarding the interpretation of

17        any laws and limited to -- them to

18        questions about compliance with

19        the laws.

20             This line of questions is in

21        violation of Special Master's

22        rulings.  And, again, if you want

23        to take a break and review the

24        ruling, I have copies here.

Highly Confidential - Subject to Further Confidentiality Review

1          MR. KENNEDY:  Let me ask

2     you, so we can -- your speaking

3     does not -- does not count on my

4     tape time; is that correct?

5          MR. DELINSKY:  No, it

6     counts.

7          MR. KENNEDY:  Then we've got

8     to do something.  Because you're

9     taking up three-quarters of my

10    tape time.

11         MR. DELINSKY:  You're asking

12    questions that violate Special

13    Master's ruling.

14         MR. KENNEDY:  And you have

15    the right to object or instruct

16    not to answer, but not to talk for

17    three minutes every question.  And

18    you should just do one of the two.

19         And I will give you a

20    continuing objection on form and

21    scope of the notice for every

22    question going forward so we don't

23    have to take the time to do that.

24    I'm willing to do that.

Highly Confidential - Subject to Further Confidentiality Review

1          MR. DELINSKY:  I think the

2     record will speak for itself on

3     the length and propriety of my

4     objections.

5 BY MR. KENNEDY:

6     Q.    Let me ask you this: Let's

7 go on and read further and see what the

8 DEA was telling the CVS defendant from

9 Indiana here.

10          It next states, The

11 registrant shall -- shall inform the

12 field division of the Administration in

13 his area of suspicious orders when

14 discovered by the registrant -- and that

15 would be CVS Indiana, correct?

16     A.    Yes.

17     Q.    Suspicious orders -- this is

18 coming from the regulation, Suspicious

19 orders include orders of unusual size,

20 orders deviating substantially from a

21 normal pattern and orders of unusual

22 frequency.

23          CVS Indiana would have been

24 aware of that statement had they received

1    and read this letter, correct?

2         A.    I believe that's correct.

3         Q.    Is there any indication from

4    your study, from your four weeks of study

5    of this case, that CVS, or any of the CVS

6    entities, that being the other defendant

7    or CVS Pharmacy, Inc., disagreed with

8    that statement?

9              MR. DELINSKY:  Object to

10             form.

11             THE WITNESS:  I have no

12             corporate knowledge that CVS

13             disagreed with that statement.

14   BY MR. KENNEDY:

15        Q.    The next statement by the

16   DEA in this letter starts with, It bears

17   emphasis.

18             The DEA next states, in

19   2006, It bears emphasis that the

20   foregoing reporting requirement is in

21   addition to, and not in lieu of, the

22   general requirement under 21 U.S.C. 823

23   (e) that a distributor maintain effective

24   controls against diversion.

Highly Confidential - Subject to Further Confidentiality Review

```
1              CVS Indiana would have been

2   aware of that statement by the DEA,

3   correct?

4        A.    I have no corporate

5   knowledge that CVS was not aware of that

6   statement.

7        Q.    And you have no corporate

8   knowledge that they disagreed with that

9   statement, true?

10       A.    I also have no corporate

11  knowledge that CVS has agreed with that

12  statement.

13       Q.    The DEA next states, in

14  2006, Thus -- Thus, in addition to

15  reporting all suspicious orders, a

16  distributor has a statutory

17  responsibility to exercise due diligence

18  to avoid filling suspicious orders that

19  might be diverted into other than

20  legitimate medical, scientific and

21  industrial channels.  Failure to exercise

22  such due diligence could, as

23  circumstances warrant, provide a

24  statutory basis for revocation or
```

Highly Confidential - Subject to Further Confidentiality Review

1    suspension of a distributor's

2    registration.

3              Do you have any corporate

4    knowledge that would indicate that CVS,

5    any of the CVS entities, CVS Pharmacy,

6    Inc. or the two defendants, would

7    disagree with that statement by the DEA

8    in 2006?

9              MR. DELINSKY:  Object to

10        form.

11             THE WITNESS:  I do not have

12        any corporate knowledge that any

13        CVS entity would have disagreed

14        with that statement in 2006.

15                  -   -   -

16             (Whereupon, CVS-Vernazza

17        Exhibit-46,

18        CVS-MDLT1-000091508-518, was

19        marked for identification.)

20                  -   -   -

21    BY MR. KENNEDY:

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



18          Q.     The date of this e-mail is

19    important.

20                 The date of this e-mail is

21    2/21/08, correct?

22          A.     The e-mail reflects a date

23    of 2/21/08, I agree with that.

24          Q.     And there's an attachment of

Highly Confidential - Subject to Further Confidentiality Review

 1    DEA letter, September 27, '06, and the

 2    attachment of an additional DEA letter

 3    from '07, true?

 4         A.    As I mentioned, I haven't

 5    had a chance to review this document now.

 6    I'll take a look at it.

 7         Q.    I'm just reading the

 8    attachments.  Under subject, I'm reading

 9    the purported attachments, right?

10         A.    Well, it looks like there

11    maybe are three attachments.  I think you

12    referenced two.

13         Q.    Let's go -- go to Page

14    91513.

15              We have already looked at

16    the 2006 letter from the DEA that was

17    received by Indiana -- CVS Indiana,

18    correct?  We talked about --

19         A.    We have.  I haven't had a

20    chance to review this document to

21    determine whether or not that letter is

22    also attached to this.

23         Q.    I'm not asking you any

24    question about that.

Highly Confidential - Subject to Further Confidentiality Review

1          You and I have already

2   reviewed the 2006 DEA letter to CVS

3   Indiana, correct?

4          A.    We have reviewed a September

5   27th, 2006 letter addressed to --

6          Q.    So my answer is yes?

7          A.    -- CVS Indiana, LLC.

8          Q.    So my answer is yes,

9   correct?

10          MR. DELINSKY:  Object to

11          form.

12   BY MR. KENNEDY:

13          Q.    My answer is yes, right?

14          A.    I answered -- yes --

15          Q.    Yes.

16          A.    -- we reviewed a letter

17   dated September 27th, 2006 to Indiana,

18   LLC.

19          Q.    That was my question, right?

20          A.    I don't think that was

21   exactly your question.

22          Q.    Well, I want you to answer

23   my exact questions.

24          You and I have already

Highly Confidential - Subject to Further Confidentiality Review

1    reviewed the 2006 correspondence from the

2    DEA to Indiana, LLC, correct?

3            A.    We've reviewed one letter.

4            Q.    Correct.

5            A.    You said 2006

6    correspondence.  I just want to be a

7    little bit more precise, to make sure

8    we're talking about the same thing.

9            Q.    DEA sent out a second

10   letter, in 2007, to all distributors, did

11   they not?

12           Sir?  Sir, I'm not asking

13   you anything about the exhibit.

14           Did the DEA send out a

15   second letter to all distributors in 2007

16   again talking about suspicious order

17   monitoring?

18           MR. DELINSKY:  Mr. Vernazza,

19       you may read the document if you

20       feel you need to, to answer the

21       question.

22           THE WITNESS:  The letter

23       here in the exhibit that you've

24       put in front of me does not have

1    an addressee.

2  BY MR. KENNEDY:

3    Q.    I'm not asking you about the

4  exhibit yet.  I'm just asking you a

5  question.

6    Did -- do you have

7  knowledge, on behalf of the CVS

8  defendants, that the DEA indeed sent out

9  a second letter in 2007 to all

10 distributors again outlining their duties

11 and responsibilities under the

12 regulations and the Controlled Substances

13 Act?  Are you aware of that?

14   A.    And, sir, I was attempting

15 to answer your question before you cut

16 me --

17   Q.    Are you aware --

18   A.    -- off.  If you could let me

19 answer the question, I'll let you know.

20   Q.    Are you aware of that, that

21 the DEA sent out a letter to all

22 distributors in '07, similar to the

23 letter they sent out in '06?  Are you

24 aware of that?

Highly Confidential - Subject to Further Confidentiality Review

1         A.    I have seen statements to

2    that effect.

3         Q.    Okay.

4         A.    We have not been able to

5    locate a copy of the 2007 letter.

6         Q.    Sir, just answer my

7    questions.  I'm going to get to that.

8              You are aware that they did

9    that, correct?

10             MR. DELINSKY:  Object to

11        form.

12             THE WITNESS:  No, I'm not

13        aware that they did that, because

14        I have been unable to find a copy

15        of that letter in our -- in our

16        files to validate that CVS

17        Indiana, LLC, received a copy of

18        the 2007 letter.

19   BY MR. KENNEDY:

20        Q.    And I'm not asking you that,

21   all right?

22        A.    Well, CVS Indiana, LLC --

23        Q.    Right.

24        A.    -- was a DEA registrant --

Highly Confidential - Subject to Further Confidentiality Review

1    Q.    Right.

2    A.    -- in 2007.

3    Q.    Correct.

4    A.    I have not located a copy of

5    that letter in our files as sent to CVS

6    Indiana, LLC, based on my investigation

7    to date.  Therefore, I am unable to say,

8    to the best of my corporate knowledge,

9    with certainty, that CVS Indiana, LLC,

10   received the 2007 letter.

11        You asked me whether or not

12   DEA sent that letter to all registrants.

13   I do not have corporate knowledge as to

14   whether or not Indiana, LLC, received

15   that letter at this point in time.

16   Q.    All right.  If the DEA did

17   what they said they did, sent it out to

18   all registrants, then CVS Indiana, LLC

19   should have received a copy of the

20   February of '07 letter, correct?

21        MR. DELINSKY:  Object to

22   form.

23   BY MR. KENNEDY:

24   Q.    If the DEA did what they

1   said they did, true?

2              MR. DELINSKY:  Object to

3         form.

4              THE WITNESS:  Are you

5         referring to a particular

6         statement by the DEA when you say

7         they said --

8   BY MR. KENNEDY:

9         Q.    You can assume that the DEA

10  has stated that they sent a letter, dated

11  February 7th, 2007, to all registrants,

12  all distributors.  Assume that to be

13  true.

14             If they did indeed do what

15  they say they did, then CVS Indiana

16  should have received a copy of the

17  February 7th letter, true?

18             MR. DELINSKY:  Object to

19        form.

20             THE WITNESS:  CVS Indiana

21        was a DEA registrant in 2007.  If

22        every DEA registrant received a

23        copy of the letter, CVS Indiana,

24        as a registrant, would presumably

Highly Confidential - Subject to Further Confidentiality Review

1    have received a copy of that

2    letter.

3         We have been unable to

4    locate the 2007 letter in our

5    files.

6  BY MR. KENNEDY:

7       Q.    And that certainly does not

8  mean you didn't receive it, correct, just

9  because you couldn't find it, true?

10      A.    It does not necessarily mean

11 we didn't receive it.  I agree with that.

12      Q.    Look at Page 91513, if you

13 would.  Exhibit-46.

14           This is the February 7th,

15 2007 letter from the DEA, true?  True?

16      A.    This is a letter dated

17 February 7th, 2007.  It appears to be

18 redacted in some form, and I have not

19 reviewed this particular copy, which also

20 bears, maybe, some annotations.

21      Q.    Sir, I asked you, is this

22 the February 7, 2007 letter from the DEA?

23 Is that what it appears to be?  Simple

24 question.

Highly Confidential - Subject to Further Confidentiality Review

1    A.    It appears to be a letter on

2  DEA letterhead, dated February 7, 2007.

3  Signed by Mr. Rannazzisi.

4    Q.    And was this letter sent to

5  CVS on 2/21/08 by Mr. Buzzeo?

6    A.    Again, assuming that Amy

7  Lynn Brown is an employee of CVS, the

8  answer to that would appear to be yes.

9    Q.    Look at the Bates stamp down

10 at the bottom.

11    Does that say CVS?

12    A.    It does.

13    Q.    Do you understand this was

14 provided to us from the CVS files?

15    A.    I presume that to be the

16 case.

17    Q.    All right.  So CVS received

18 this; we can agree with that, right?

19    A.    To the best of my corporate

20 knowledge at this point in time, yes.

21    Q.    This letter, again, 91513,

22 it starts off with, This letter is being

23 sent to every commercial entity in the

24 United States registered with the Drug

Highly Confidential - Subject to Further Confidentiality Review

1    Enforcement Administration (DEA) to

2    distribute controlled substances.

3              That's a statement by the

4    DEA that this was sent to all of the

5    registrants, which should have included

6    CVS Indiana, true?  True?

7         A.    CVS was -- Indiana was a

8    commercial entity in the United States

9    registered with the DEA to distribute

10   controlled substances.

11        Q.    Is my answer yes?  Is the

12   answer to my question is yes?

13             MR. DELINSKY:  Object to

14        form.

15   BY MR. KENNEDY:

16        Q.    You don't have to repeat --

17   again, we have limited time.  You don't

18   have to repeat my question in your

19   answer.

20             Is the answer to that

21   question yes?

22        A.    I didn't repeat your

23   question in my answer.  I gave an answer.

24             The answer is that CVS

1    Indiana was registered with the DEA to

2    distribute controlled substances at the

3    time that this letter is dated.  There is

4    a statement in this letter that it's

5    being sent to every such registrant.



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3          Q.    At the very least, we've got

4     a CVS Bates number on this so this came

5     from CVS files, true?  Despite who Amy

6     Lynn is, this came from CVS files, true?

7          A.    CVS files, yes.  But not

8     necessarily only CVS Pharmacy, Inc.

9     files.

10              My understanding from --

11         Q.    If you want to take a look

12    at Exhibit-4, please.

13         A.    -- taking a look at

14    documents that have been --

15         Q.    Take a look at Exhibit-4,

16    please.

17         A.    -- produced in this case

18    that have been taken from the files of

19    both CVS Indiana, CVS RX Services, Inc.

20    and CVS Pharmacy, Inc.

21                   -  -  -

22              (Whereupon, CVS-Vernazza

23         Exhibit-4,

24         CVS-MDLT1-000013534-536, was

1          marked for identification.)

2                    -  -  -

3    BY MR. KENNEDY:

4          Q.    I'll show you Exhibit-4, if

5    I could.

6                    Do you have Exhibit-4?

7          A.    Yes, sir.

8          Q.    Exhibit-4 is an e-mail, is

9    it not, from Craig Schiavo; is that

10   correct?

11         A.    I just need a minute to

12   review the document.

13         Q.    I'm just asking you whether

14   it's an e-mail from Craig Schiavo.

15                  Do you see up at the top

16   where it says, From?

17         A.    I need to review the

18   document in order to answer that

19   question, sir.

20                  Yes, sir, this does appear

21   to be an e-mail from Mr. Schiavo.

22         Q.    And attached -- and Mr.

23   Schiavo, where does he work?

24         A.    He works for, I believe, CVS

1   Pharmacy, Inc. in Rhode Island.

2          Q.    And he's attaching a

3   December 27, 2007 letter from the DEA.

4   And I think this is the third letter that

5   the DEA sent to all distributors.

6              Am I right?  Do you see the

7   attachment, which would be 13535?

8          A.    I do see that attachment,

9   yes.

10         Q.    Look at the first sentence

11  where it says, Dear Registrant.

12             It states, Dear Registrant,

13  This letter is being sent to every entity

14  in the United States registered with the

15  Drug Enforcement Administration (DEA) to

16  manufacture or distribute controlled

17  substances.

18             At that point in time, CVS

19  Indiana, LLC was registered to distribute

20  controlled substances, true?

21         A.    I believe that is true.

22         Q.    Have you reviewed this

23  letter before?

24         A.    Perhaps some components of

Highly Confidential - Subject to Further Confidentiality Review

1  it.

2         Q.    I'm not going to go through

3  all of this, but this was also attached

4  to 46, Exhibit-46, was the 2008 e-mail to

5  you -- or not to you, but to CVS,

6  correct?

7              So you would have received

8  this -- if the DEA is accurate in their

9  statement, CVS Indiana would have

10  received this in December of '07 and it

11  was also attached to the 2008 e-mail that

12  was sent to Amy Lynn in 2008?

13         A.    I'm sorry, could you repeat

14  the question?

15         Q.    If the first sentence is

16  true, that this was sent to all

17  registrants to distribute controlled

18  substances, then this letter would have

19  been received by CVS Indiana in 2007,

20  true?

21         A.    Given that CVS Indiana was a

22  registrant, if the statement in the first

23  sentence is accurate, then, presumably,

24  CVS Indiana would have received the

1   letter.

2        Q.    And, again, have you

3   reviewed this letter?

4        A.    My testimony was that I have

5   reviewed, perhaps, certain components of

6   this letter.

7        Q.    Let's look at the second

8   paragraph.  It starts with, In addition.

9             It states, In addition to,

10  and not in lieu of, the general

11  requirement under 21 U.S.C. 823, that

12  manufacturers and distributors maintain

13  effective controls against diversion, DEA

14  regulations require all manufacturers and

15  distributors to report suspicious orders

16  of controlled substances.

17            From your knowledge of this

18  case, at this point in time, did any CVS

19  entity disagree with that position of the

20  DEA?

21            MR. DELINSKY:  Object to

22        form.  Object to scope.  Object to

23        the extent it calls for a legal

24        interpretation in violation of

1          Special Master Cohen's ruling.

2               THE WITNESS:  At this point

3          in time, I do not have corporate

4          knowledge that any CVS entity

5          disagreed with that statement.

6     BY MR. KENNEDY:

7          Q.    It next states, Title 21 CFR

8     1301.74(b) specifically requires that a

9     registrant design and operate a system to

10    disclose to the registrant suspicious

11    orders of controlled substances.

12               CVS would have been aware of

13    that statement had they received this

14    letter in '07, true?

15         A.    To the best of my corporate

16    knowledge at this point in time, had CVS

17    Indiana received this letter at that

18    point in time, presumably, it would have

19    been reviewed and CVS Indiana would have

20    been aware of the statement.

21         Q.    And next it states, The

22    regulation clearly indicates that it is

23    the sole -- sole responsibility of the

24    registrant to design and operate such a

1  system.

2          Do you see that?

3      A.    I do see that.

4      Q.    Let me ask you this: The

5  registrant is the CVS Indiana, correct?

6      A.    The -- yes, the registrant

7  would be CVS Indiana with respect to the

8  distribution activities at the CVS

9  Indiana distribution center.

10     Q.    All right.  Now, as we go

11  forward today and talk about the design

12  and operation of a system to disclose,

13  can we agree that the design and the

14  operation of the system to disclose

15  suspicious orders was designed and

16  operated by CVS Pharmacy, Inc. and not

17  the registrant, as required?

18          MR. DELINSKY:  Object to

19     form.

20          THE WITNESS:  Not at all

21     times, no.

22  BY MR. KENNEDY:

23     Q.    Well, I'm going to ask you

24  about that.

Highly Confidential - Subject to Further Confidentiality Review

1              As we move through today,

2    I'm going to ask you who did what, where

3    and when, as to whether or not it is the

4    distribution center, the registrant being

5    identified in this DEA letter, or whether

6    or not it is CVS Pharmacy, Inc., all

7    right?

8              We're going to be very clear

9    about that as we proceed, is that

10   agreeable, that we can be clear about

11   that?

12             MR. DELINSKY:  Object to

13        form.

14   BY MR. KENNEDY:

15        Q.    Agreeable?

16        A.    I'll respond to your

17   questions the best I can, based on the

18   question that's asked.

19        Q.    Let's move on.

20             Generally, pharmacies have

21   certain responsibilities with respect to

22   filling prescriptions, certain

23   requirements with respect to attempting

24   to prevent diversion?  Pharmacies have

Highly Confidential - Subject to Further Confidentiality Review

1  those certain responsibilities; agreed?

2       A.   There are certain

3  responsibilities, under the Controlled

4  Substances Act, that are incumbent upon

5  pharmacies and pharmacists with respect

6  to the filling of controlled substances.

7  Certainly, one of those is the pharmacy's

8  duty to perform corresponding

9  responsibility, or obligation under the

10 law to perform corresponding

11 responsibility, due diligence, before

12 dispensing a prescription.  That's

13 certainly consistent with the prevention

14 of diversion.

15      Q.   And can we agree that just

16 because pharmacies have certain

17 responsibilities under the law, that does

18 not in any way abdicate or negate the

19 responsibilities of a distributor with

20 respect to suspicious order monitoring?

21 Can we agree with that?

22            MR. DELINSKY:  Object to

23        form.  Object on scope grounds,

24        including in light of Special

1          Master Cohen's ruling on the

2          interpretation of Controlled

3          Substances Act and its

4          regulations.

5                  THE WITNESS:  Could you

6          repeat the question?

7   BY MR. KENNEDY:

8          Q.    Can we agree that just

9   because the pharmacies have certain

10  responsibilities that you just described,

11  can we agree that just because those

12  responsibilities exist on the part of a

13  pharmacy, those do not in any way

14  diminish or negate the responsibilities

15  of the distributor with respect to

16  monitoring suspicious orders?

17                 MR. DELINSKY:  Same

18         objections.

19                 THE WITNESS:  The

20         regulations in the Controlled

21         Substances Act provide for

22         different obligations on behalf of

23         pharmacies and distributors.

24                 CVS undertakes to comply

Highly Confidential - Subject to Further Confidentiality Review

1          with both sets of obligations.

2    BY MR. KENNEDY:

3          Q.    And one does not affect the

4    other, correct?

5               MR. DELINSKY:  Object to

6          form.  Object on scope grounds.

7          Object on the grounds of Special

8          Master Cohen's ruling.

9               THE WITNESS:  No, I don't

10          know that I would agree with that.

11          A pharmacy places orders for

12          controlled substances that are

13          shipped.  There can be any number

14          of processes, procedures,

15          safeguards in place at the

16          pharmacy that would result in the

17          pharmacy not placing orders that

18          would be identified by a

19          distributor as suspicious.

20    BY MR. KENNEDY:

21          Q.    Let me ask you this -- I'm

22    going to ask you again.

23               Is it the position of the

24    CVS defendants that because they had

1  pharmacy policies in place that their

2  responsibility to monitor suspicious

3  orders was less?

4       A.   No, that's not the question

5  you asked me.

6              MR. DELINSKY:  Excuse me.

7  BY MR. KENNEDY:

8       Q.   That's the question I'm just

9  asking.  And if you'll answer the

10  question I just asked, please.

11             MR. DELINSKY:  Object to

12      form.

13  BY MR. KENNEDY:

14      Q.   Do you want her to read the

15  question back?

16      A.   Sure.  I think they are two

17  different questions.

18      Q.   I want you just to answer

19  the one I just asked.

20      A.   Okay.  Well, it's a new

21  question, so I'll respond to it.

22      Q.   We'll just do one at a time.

23  If you would please just answer the most

24  recent question, that would make things

Highly Confidential - Subject to Further Confidentiality Review

1    easier.

2         A.    That would be great, if she

3    can read it back.

4              MR. KENNEDY:  Would you read

5         it back, please?

6                   -  -  -

7              (Whereupon, the court

8         reporter read the following part

9         of the record:

10             "Question:  Let me ask you

11        this -- I'm going to ask you

12        again.

13             "Is it the position of the

14        CVS defendants that because they

15        had pharmacy policies in place

16        that their responsibility to

17        monitor suspicious orders was

18        less?")

19                   -  -  -

20             THE WITNESS:  There was no

21        less an obligation to monitor

22        suspicious orders.

23             The question that you had

24        asked before was whether or not

Highly Confidential - Subject to Further Confidentiality Review

1          there could be -- whether it was

2          relevant.

3     BY MR. KENNEDY:

4          Q.    I just want that question.

5     So your answer is fine.

6                The responsibility is not

7     less, correct?

Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5      Q.     The Know Your Customer

6   obligation that you just talked about,

7   that had been expressed by the DEA going

8   back to 2007 and 2008, correct?

9              MR. DELINSKY:  Object to

10         form.

11             THE WITNESS:  I would have

12         to review a document to confirm

13         that.  But it sounds consistent

14         with my understanding.

15   BY MR. KENNEDY:

16      Q.     And would you agree that the

17   responsibility that a distributor has

18   under the Controlled Substances Act and

19   the regulatory requirements cannot be

20   abdicated or transferred to anyone else?

21   Do you agree with that?

22      A.     There were certain services

23   that could be performed on behalf of the

24   registrant and that were performed on

1  behalf of the registrant, for the

2  registrant; so, for instance, to the

3  extent that corporate logistics personnel

4  are involved in operating a suspicious

5  order monitoring system for the

6  registrant.

7       Q.    Do you agree with that

8  statement, the responsibilities that a

9  distributor, a CVS distributor, has under

10  the regulatory requirements cannot be

11  abdicated or transferred to anyone else?

12  Do you agree with that, sir; yes or no?

13            MR. DELINSKY:  Object to the

14       form of the question.  Object on

15       the grounds that this question,

16       again, is outside the scope of the

17       deposition notice as ruled upon by

18       Special Master.

19  BY MR. KENNEDY:

20       Q.    Do you agree with that, sir?

21       A.    I think the regulation

22  speaks for itself.

23            MR. KENNEDY:  Exhibit-65.

24                   -  -  -

1            (Whereupon, CVS-Vernazza

2        Exhibit-65,

3        CVS-MDLT1-000019722-786, was

4        marked for identification.)

5                -  -  -

6   BY MR. KENNEDY:

7        Q.    Sir, you took four weeks to

8   prepare for this today, did you not?

9        A.    I did.

10       Q.    You talked to 40 different

11  people actually involved with this

12  program?

13       A.    I think it's more than 40.

14       Q.    Four weeks of time, several

15  hundred hours?

16       A.    That's fair.

17       Q.    Reviewed documents?

18       A.    I have.

19            MR. DELINSKY:  Let's take a

20       break, before we get to the

21       exhibit.  I don't want you to show

22       us the exhibit.  Let's take a

23       break.

24            MR. KENNEDY:  What's that?

1          MR. DELINSKY:  Let's take a

2     break.  It's been about 55

3     minutes.

4          MR. KENNEDY:  I'm in the

5     middle of showing him an exhibit.

6          MR. DELINSKY:  I don't want

7     to see -- right.  That's why --

8     the exhibit has yet to be shown to

9     him, and that's why I propose we

10    take the break now.

11         VIDEO TECHNICIAN:  The time

12    is 11:41 a.m.  We are going off

13    the record.

14              -  -  -

15         (Whereupon, a brief recess

16    was taken.)

17              -  -  -

18         VIDEO TECHNICIAN:  The time

19    is 11:59 a.m.  And we're back on

20    the record.

21    BY MR. KENNEDY:

22         Q.   Sir, we're showing you

23    Exhibit-65.

24              Have you seen this before?

1    A.    Allow me to just take a

2    minute to review.

3    Q.    Sir, if you look at the top

4    of the first page --

5    A.    I apologize.  I'm still

6    looking through the document.

7    Q.    You don't know whether

8    you've seen this before?

9    A.    I reviewed a great number of

10   documents in preparation for this

11   deposition.  I'm attempting to review the

12   document in order to answer that

13   question.

14   Q.    Maybe if you just -- if you

15   look at the title on the first page, that

16   would help you out.

17   A.    Yes, I did.

18   Q.    We can look at the title,

19   then, all the way at the top, this is the

20   CVS distribution center -- distribution

21   center controlled drug-DEA standard

22   operating procedures manual, true?

23   A.    I'm sorry, I just want to

24   clarify my prior answer.

Highly Confidential - Subject to Further Confidentiality Review

1          To the extent that your

2     question was whether or not I reviewed

3     this, I did look at the front page when

4     you asked me to look at the front page.

5          I have not yet been able to

6     determine whether or not I reviewed this

7     document in preparation for the

8     deposition.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



18          But the point of this was

19    not to produce results for the purposes

20    of determining whether suspicious orders

21    were made and reporting those to the DEA.

22          Q.    And this PDMR report is

23    printed every three months, true?  This

24    is a three-month report?  Do you know

Highly Confidential - Subject to Further Confidentiality Review

1     that?

2            A.    I believe it's -- perhaps

3     comes out on different cadences over the

4     course of time.  To the best of my

5     corporate knowledge, I understood it to

6     be a monthly report.

7            Q.    So this isn't -- certainly

8     isn't looked at before any particular

9     order for a controlled substance is being

10    shipped out to one of your pharmacies,

11    true?

12           A.    It is not.

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1        Q.    And would I be correct to

2    say there were no written policies,

3    procedures and protocols for those

4    pickers and the packers in '06, with

5    respect to their obligations?  Nothing in

6    writing?

7        A.    In 2006, not in writing.  We

8    later have reduced that process to

9    writing, as a part of a policy.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review

1

2

3      Q.    Can you describe to me the

4   training program that the pickers and the

5   packers went through to identify unusual

6   orders of size, frequency or pattern?

7            MR. DELINSKY:  Object to

8         form.

9            THE WITNESS:  Are you

10        speaking -- in which time period?

11   BY MR. KENNEDY:

12      Q.    In '06.  In '06.

13      A.    To the best of my corporate

14   knowledge, there was no formal training

15   program.  However, the pickers and the

16   packers who I spoke with who worked in

17   that environment in 2006 told me that

18   they were aware of that component of

19   their job responsibilities and had

20   acquired that knowledge in the course of

21   their employment.

22      Q.    And what were the job

23   requirements to be a picker and a packer

24   at a CVS distribution center in 2006?

Highly Confidential - Subject to Further Confidentiality Review

1              A.     I'm unaware of the formal

2      job requirements.  I have been told that



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



```
22          Q.    Well, then, we'll go through

23    this a little bit more carefully.

24                Do you agree with her
```

Highly Confidential - Subject to Further Confidentiality Review

1    statement here, We are still in the

2    process of writing the suspicious order

3    monitoring section of this standard

4    operating procedure?

5              As of this date, do you

6    agree that it was still being written, in

7    November of 2007?  Do you agree with that

8    statement?

9         A.    To the best of my corporate

10   knowledge, that is true.



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5      Q.    All right.  So what we're

6  seeing in Exhibit-6 is not the suspicious

7  order monitoring policy that was put into

8  effect on 12/1/07; is that what you're

9  saying?

10      A.    What I'm saying is I don't

11  believe that there was a suspicious order

12  monitoring policy put into place as of

13  that date.

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

14          We agree, at this point in

15    time now, it's April of '09, and the

16    standard -- or, excuse me, the suspicious

17    order monitoring section is still not

18    included in the standard operating

19    procedures, correct?

20          A.   A final version is not

21    included in the standard operating

22    procedures being referenced by Mrs.

23    Propatier in this e-mail.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



10          A.     Based on my preparation for

11    this deposition and the interviews that I

12    have conducted and my corporate

13    knowledge, the IRR report was the report

14    that would flag orders for additional

15    review.  And within the logistics

Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





1

2

3

4

5

6            THE WITNESS:  At this point

7        in time, to the best of my

8        corporate knowledge, Mr.

9        Mortelliti was taking the first

10       pass through the IRR himself.  And

11       he would reach out for additional

12       resources to help him conduct his

13       due diligence as appropriate.

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



9          A.     In the first-pass review,

10    I'm unable to provide additional names of

11    folks who helped Mr. Mortelliti during

12    the period of time when he had primary

13    responsibility for the review of that

14    report.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15        THE WITNESS:  I understand
16    that Mr. Mortelliti's practice
17    would have been to review the
18    report on a daily basis and
19    determine whether items on the
20    report warranted further review
21    and due diligence and conduct that
22    review and due diligence as he
23    deemed appropriate.
24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



```
 7              THE WITNESS:  I'm not aware,

 8        during that time period, that Mr.

 9        Mortelliti identified any orders

10        that were deemed suspicious and

11        reported to the DEA.
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



       Q.    Some rare occasion,

something might get flagged for some

other reason.

               But if you don't get flagged

in the IRR report, there's not going to

Highly Confidential - Subject to Further Confidentiality Review

1    be due diligence, true?

2              MR. DELINSKY:  Object to

3         form.

4              THE WITNESS:  I can't say

5         that that's universally true.  But

6         for the most part, that would be

7         true.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3          MR. KENNEDY:  Thank you.

4          VIDEO TECHNICIAN:  The time

5     is 6:36 p.m. on November 20th,

6     2018.  Going off the record.

7     Ending today's videotape session.

8               -  -  -

9          (Whereupon, the deposition

10    concluded at 6:36 p.m.)

11               -  -  -

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1                    CERTIFICATE

 2

 3

 4              I HEREBY CERTIFY that the

 5    witness was duly sworn by me and that the

 6    deposition is a true record of the

 7    testimony given by the witness.

 8

 9

10

           Amanda Maslynsky-Miller

11         Certified Realtime Reporter

           Dated:  November 23, 2018

12

13

14

15

16

17              (The foregoing certification

18    of this transcript does not apply to any

19    reproduction of the same by any means,

20    unless under the direct control and/or

21    supervision of the certifying reporter.)

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              INSTRUCTIONS TO WITNESS

 2

 3              Please read your deposition

 4   over carefully and make any necessary

 5   corrections.  You should state the reason

 6   in the appropriate space on the errata

 7   sheet for any corrections that are made.

 8              After doing so, please sign

 9   the errata sheet and date it.

10              You are signing same subject

11   to the changes you have noted on the

12   errata sheet, which will be attached to

13   your deposition.

14              It is imperative that you

15   return the original errata sheet to the

16   deposing attorney within thirty (30) days

17   of receipt of the deposition transcript

18   by you.  If you fail to do so, the

19   deposition transcript may be deemed to be

20   accurate and may be used in court.

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

1                    - - - - - -

                 E R R A T A

2                    - - - - - -

3    PAGE   LINE   CHANGE/REASON

4    _____  _____  _____

5    _____  _____  _____

6    _____  _____  _____

7    _____  _____  _____

8    _____  _____  _____

9    _____  _____  _____

10   _____  _____  _____

11   _____  _____  _____

12   _____  _____  _____

13   _____  _____  _____

14   _____  _____  _____

15   _____  _____  _____

16   _____  _____  _____

17   _____  _____  _____

18   _____  _____  _____

19   _____  _____  _____

20   _____  _____  _____

21   _____  _____  _____

22   _____  _____  _____

23   _____  _____  _____

24   _____  _____  _____

Highly Confidential - Subject to Further Confidentiality Review

```
 1              ACKNOWLEDGMENT OF DEPONENT

 2

                I,_____, do

 3    hereby certify that I have read the

      foregoing pages,  1 - 472, and that the

 4    same is a correct transcription of the

      answers given by me to the questions

 5    therein propounded, except for the

      corrections or changes in form or

 6    substance, if any, noted in the attached

      Errata Sheet.

 7

 8    _____

      ███████████                       DATE

 9

10

      Subscribed and sworn

11    to before me this

      _____ day of _____, 20____.

12

      My commission expires:_____

13

14    _____

      Notary Public

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

1                    LAWYER'S NOTES

2    PAGE  LINE

3    _____  _____  _____

4    _____  _____  _____

5    _____  _____  _____

6    _____  _____  _____

7    _____  _____  _____

8    _____  _____  _____

9    _____  _____  _____

10   _____  _____  _____

11   _____  _____  _____

12   _____  _____  _____

13   _____  _____  _____

14   _____  _____  _____

15   _____  _____  _____

16   _____  _____  _____

17   _____  _____  _____

18   _____  _____  _____

19   _____  _____  _____

20   _____  _____  _____

21   _____  _____  _____

22   _____  _____  _____

23   _____  _____  _____

24   _____  _____  _____