```
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF OHIO

 3                     EASTERN DIVISION

 4

 5    ----------------------------) MDL No. 2804

 6    IN RE:  NATIONAL PRESCRIPTION )

 7    OPIATE LITIGATION            )

 8    ----------------------------) Case No. 17-md-2804

 9    THIS DOCUMENT RELATES TO:    )

10    ALL CASES                    )

11    ----------------------------) Hon. Dan A. Polster

12

13                  HIGHLY CONFIDENTIAL

14        SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

15

16               VIDEOTAPED DEPOSITION OF

17                     ELLEN WILSON

18

19                   January 24, 2019

20

21                 Indianapolis, Indiana

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1

 2

 3

 4

 5              The videotaped deposition of ELLEN WILSON,

 6      called by the Plaintiffs for examination, taken

 7      pursuant to the Federal Rules of Civil Procedure of

 8      the United States District Courts pertaining to the

 9      taking of depositions, taken before JULIANA F.

10      ZAJICEK, a Registered Professional Reporter and a

11      Certified Shorthand Reporter, at the Indianapolis

12      Marriott Downtown, Texas Room, 350 West Maryland

13      Street, Indianapolis, Indiana, on January 24, 2019, at

14      4:40 p.m.

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES:
 2    ON BEHALF OF THE PLAINTIFFS:
 3          MOTLEY RICE LLC
             28 Bridgeside Boulevard
 4           Mt. Pleasant, South Carolina 29464
             843-216-9250
 5           BY:  MICHAEL E. ELSNER, ESQ.
                  melsner@motleyrice.com
 6
 7    ON BEHALF OF THE PLAINTIFFS:
 8          WEISMAN KENNEDY & BERRIS CO LPA
             1600 Midland Building
 9           101 Prospect Avenue
             Cleveland, Ohio 44115
10           216-781-1111
             BY:  DANIEL P. GOETZ, ESQ.
11                dgoetz@weismanlaw.com
12
      ON BEHALF OF AMERISOURCEBERGEN CORPORATION and
13    AMERISOURCEBERGEN DRUG CORPORATION:
14          JACKSON KELLY PLLC
             500 Lee Street East, Suite 1600
15           Charleston, West Virginia 25301-3202
             304-340-1018
16           BY:  JILL McINTYRE, ESQ. (Telephonically)
                  jmcintyre@JacksonKelly.com
17
18    ON BEHALF OF CARDINAL HEALTH, INC.:
19          ARMSTRONG TEASDALE LLP
             7700 Forsyth Boulevard, Suite 1800
20           St. Louis, Missouri 63105
             314-621-5070
21           BY:  SARAH E. HARMON, ESQ.
                  sharmon@ArmstrongTeasdale.com
22
23
24
```

```
 1   APPEARANCES: (Continued)
 2   ON BEHALF OF CVS INDIANA, LLC AND CVS RX SERVICES,
     INC.:
 3
         ZUCKERMAN SPAEDER LLP
 4       1800 M Street, NW, Suite 1000
         Washington, D.C. 20036
 5       202-778-1800
         BY:  R. MILES CLARK, ESQ.
 6            mclark@zuckerman.com
              PAUL B. HYNES, JR., ESQ.
 7            phynes@zuckerman.com
 8
     ON BEHALF OF ENDO HEALTH SOLUTIONS INC., ENDO
 9   PHARMACEUTICALS INC., PAR PHARMACEUTICAL COMPANIES,
     INC.:
10
         BAKER HOSTETLER
11       Key Tower
         127 Public Square, Suite 2000
12       Cleveland, OH 44114-1214
         216-861-6486
13       BY:  TERA N. COLEMAN, ESQ. (Telephonically)
              tcoleman@bakerlaw.com
14
15   ON BEHALF OF WALMART INC.:
16       JONES DAY
         77 West Wacker Drive
17       Chicago, Illinois 60601-1692
         312-269-4164
18       BY:  CHRISTINE D. PROROK, ESQ.
              (Telephonically)
19            cprorok@jonesday.com
20
     ALSO PRESENT:
21
         KAITLYN EEKHOFF, Law Clerk,
22            Motley Rice LLC
23   THE VIDEOGRAPHER:
         MR. ANTHONY MICHELETTO,
24       Golkow Litigation Services.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                        I N D E X

 2

 3   WITNESS:                              PAGE:

 4    ELLEN WILSON

 5        EXAM BY MR. GOETZ...................    7

 6

 7                        * * * * *

 8

 9                     E X H I B I T S

10   CVS - WILSON EXHIBIT              MARKED FOR ID

11     No. 1    Handwritten drawing              87

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1            THE VIDEOGRAPHER:  We are now on the record.  My

 2    name is Anthony Micheletto.  I am a legal vid --

 3    videographer for Golkow Litigation Services.

 4                 Today's date is January 24th, 2019.  The

 5    time is 4:40 p.m. as indicated on the video screen.

 6                 This video deposition is being held in

 7    Indianapolis, Indiana, in the matter of In Re National

 8    Prescription Opiate Litigation, before the

 9    United States District Court for the Northern District

10    of Ohio, Eastern Division.

11                 Our deponent is Ellen Wilson.

12                 Will counsel please identify yourselves

13    for the video record.

14        MR. GOETZ:  Dan Goetz for the Plaintiffs.

15        MR. ELSNER:  Michael Elsner for the Plaintiffs.

16        MS. HARMON:  Sarah Harmon for Cardinal Health.

17        MR. CLARK:  Miles Clark for Zuckerman Spaeder on

18    behalf of CVS Indiana, LLC, CVS RX Services, Inc., and

19    the witness.

20        MR. HYNES:  Paul Hynes from Zuckerman Spaeder,

21    LLP, on behalf of CVS Rx Services, Inc., CVS Indiana,

22    LLC, and the witness.

23        THE VIDEOGRAPHER:  Our court reporter today is

24    Juliana Zajicek.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              Please swear in the witness.

 2         MS. MCINTYRE:  Do you -- do you want to know who

 3    is on the phone?

 4         THE VIDEOGRAPHER:  Yes, please.

 5         MS. MCINTYRE:  This is Jill McIntyre from

 6    Jackson Kelly on behalf of AmerisourceBergen Drug

 7    Corporation.

 8         MS. PROROK:  And this is Christine Prorok from

 9    Jones Day on behalf of Walmart.

10              (WHEREUPON, the witness was duly

11               sworn.)

12                   ELLEN WILSON,

13    called as a witness herein, having been first duly

14    sworn, was examined and testified as follows:

15                   EXAMINATION

16    BY MR. GOETZ:

17         Q.   Ms. Wilson, my name is Dan Goetz, and we

18    met briefly before this.

19              It is my understanding you had a death in

20    the family recently, correct?

21         A.   Correct.

22         Q.   I -- I can't tell you how much I

23    appreciate you changing your schedule and being here

24    today and accommodating us.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                And you also have a hard stop at 6:30,

 2   correct?

 3        A.    Yes.

 4        Q.    Okay.  We will do our best to be done and

 5   if we are not done, then we'll figure out some way to

 6   continue this testimony, okay?

 7        A.    Okay.

 8        Q.    What is -- if I ask you a question and you

 9   don't understand it, please tell me.

10        A.    Okay.

11        Q.    And -- and I will rephrase it.

12                And by the same token, if you answer the

13   question, I'll assume you understood it.

14                Fair enough?

15        A.    Yes.

16        Q.    How far did you go in school?

17        A.    Just Grade 12.

18        Q.    Okay.

19        A.    12th grade.

20        Q.    I --

21        A.    Can you not hear me?

22        Q.    Because of the fan being right over me,

23   I -- I might need you to speak up a little.

24        A.    Okay.
```

Highly Confidential - Subject to Further Confidentiality Review

```
1          Q.     To 12th grade?

2          A.     True.

3          Q.     And when did you graduate?

4          A.     1989.

5          Q.     And after you graduated, where did you go

6    work?

7          A.     After high school?

8          Q.     Yes.

9          A.     I had my daughter, so I didn't work.

10         Q.     Okay.  What was your first job after high

11   school?

12         A.     Phar-Mor.

13         Q.     And -- and what did you do at Phar-Mor?

14         A.     I was a cash register -- cashier.

15         Q.     And -- and how long were you there for?

16         A.     About three years.

17         Q.     And from when to when?

18         A.     From '9 -- I had her in '90, so that would

19   be '91 to '94.

20         Q.     And what did you do after Phar-Mor?

21         A.     While I was still at Phar-Mor, I went to

22   C -- or it would have been Hooks at -- in '93.

23         Q.     And what did you do at Hooks?

24         A.     I went to -- I started out in Flow 2 as a
```

Highly Confidential - Subject to Further Confidentiality Review

1    order filler for probably six months and then I went

2    up to the Rx department.

3         Q.    And Hooks, that facility eventually became

4    a CVS facility, is that correct?

5         A.    Yes, it was.  It went from Hooks to Revco

6    to CVS.

7         Q.    And -- and when did it become a CVS

8    facility?

9         A.    I'm not sure.

10        Q.    Do you have an idea?

11        A.    No.

12        Q.    Okay.  And in '93 when you went to Hooks

13   Drugs and you said you were a Flow 2 order filler?

14        A.    Yes.

15        Q.    What is that, just briefly?

16        A.    It was a flow module that held toothpaste,

17   tooth brushes, mouth wash, shampoo.  That was it.  I

18   think that was it.

19        Q.    And -- and then you said you went to R --

20   the Rx department?

21        A.    The Rx department, yes.

22        Q.    Does that mean you were in the cage?

23        A.    No.  I started out in one of the flow --

24   one of the picking aisles in -- up in Rx.

Highly Confidential - Subject to Further Confidentiality Review

```
1        Q.    And how long were you there?

2        A.    In the Rx department?

3        Q.    Yes.

4        A.    From '93 until six months ago.

5        Q.    What happened six months ago?

6        A.    I went to inventory control.

7        Q.    There is a controlled substances cage at

8    the CVS Indiana distribution warehouse?

9        A.    Yes.

10       Q.    Okay.  When did you start working in that

11   cage?

12       A.    In '96, December of '96.

13       Q.    And you worked in that cage until when?

14       A.    Six months ago.

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



24    BY MR. GOETZ:

Highly Confidential - Subject to Further Confidentiality Review

1      Q.    How long did you work with Charlotte

2  Rucker after she trained you?

3      A.    Two months.  Probably two months because

4  she retired.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19  BY MR. GOETZ:

20      Q.    First, who was your supervisor in 2006?

21      A.    Steve -- I believe it was Steve Campbell.

22  Steve -- we had two supervisors, Steve Campbell and

23  Robert Richardson.

24      Q.    And who was the supervisor in 2007?

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.    I'm not sure what year Steve left the

 2   company, but then we went to Gary Lamberth and Dan

 3   Deaton.

 4        Q.    And how long were they your supervisor?

 5        A.    Gary Lamberth was from, I'm not sure

 6   exactly when he started there, but he recently left

 7   the company.

 8        Q.    Was -- was Gary Lamberth your supervisor

 9   from around 2007 through September of 2014?

10        A.    I believe so.

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review







Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



21        Q.    Other than Sherri Hinkle -- do you know

22    who Sherri Hinkle is?

23        A.    Yes.

24        Q.    Who is that?

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.    That is the Rx inventory control girl.

 2          Q.    And -- and what does that mean?

 3          A.    She would -- for us in the cage, it would

 4    mean she is the girl that we would go to if we had any

 5    problems as far as, like, the quantity, that some --

 6    that one of the stores ordered, we would go to her, if

 7    we had an out, we would go to her.

 8          Q.    Well, did she -- was she also a picker?

 9          A.    No.

10          Q.    No.

11                Would -- did she do -- check the totes?

12          A.    No.

13          Q.    So she -- was she in the cage?

14          A.    No.

15          Q.    No.

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

1

2      Q.    All right.  But -- but from '06 to '14,

3   you never remember her as a picker or a packer?

4      A.    No.

5      Q.    How often in 2000 -- what was -- was

6   Sherri there from 2006 to 2014?

7      A.    Yes.

8      Q.    And was she serving that role of Rx

9   inventory control?

10      A.    Yes.

11

12

13

14

15

16

17

18

19

20

21

22

23

24



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



18      Q.    In 2006, what were the names of the people

19   in the cage?

20      A.    I don't know.

21      Q.    What about in 2007?

22      A.    I don't know.

23      Q.    What about in 2008?

24      A.    I don't know.

Highly Confidential - Subject to Further Confidentiality Review

```
 1          Q.    What about in 2010?

 2          A.    I don't know.

 3          Q.    2011?

 4          A.    I don't know.

 5          Q.    You can't -- you don't remember anybody's

 6     name.

 7                What about in 2012?

 8          A.    Lori Huddleston.  Lori Huddleston.

 9          Q.    In 2012?

10          A.    Yes.

11          Q.    What did Lori do?

12          A.    She either packed or picked the orders

13     like I did.

14

15

16

17

18

19

20

21

22          Q.    What about in 2013, do you remember

23     anybody in the cage?

24          A.    Lori Huddleston.
```

Highly Confidential - Subject to Further Confidentiality Review

```
1        Q.    Anybody else?

2        A.    I don't remember.

3        Q.    What about in 2014?

4        A.    Lori Huddleston.

5        Q.    Anybody else?

6        A.    I don't remember.
```



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12

13

14      Q.    Ms. Wilson, I -- I really do appreciate

15   you being here, and -- and so please don't take this

16   as disrespectful, and I know you've had a really hard

17   week.  We are trying to figure out what the pickers

18   and packers did as it relates to suspicious order

19   monitoring, and so I'm curious if -- if there would be

20   anybody that would actually have, if you know, anybody

21   that -- from 2006 to '14 would actually have a -- a

22   better memory of what was happening --

23      MR. HYNES:  Objection.

24   BY MR. GOETZ:

```
 1        Q.     -- at that time.

 2        A.     I don't know.

 3        Q.     Okay.  Did you speak to anybody other than

 4   your counsel about today's testimony?

 5        A.     No.

 6        MR. HYNES:  Objection to form.

 7   BY MR. GOETZ:

 8        Q.     You didn't talk to your spouse?

 9        A.     No.

10        Q.     You didn't talk to anybody at work about

11   this testimony?

12        A.     No.

13        Q.     Did -- did you prepare for today's

14   testimony?

15        A.     Just talked to him.

16        Q.     And -- and how long did you talk to him?

17        A.     A couple of hours yesterday and a couple

18   of hours today.

19        Q.     And -- and any -- any other time?

20        A.     No.

21        Q.     Did you review documents?

22        A.     No.

23        Q.     How many days per week would you work in

24   2006?
```

Highly Confidential - Subject to Further Confidentiality Review

1          A.     Five.

2          Q.     And -- and how many hours per day?

3          A.     Eight hours.

4          Q.     And was that pretty much consistent from

5    2006 to 2014?

6          A.     Yes.

Highly Confidential - Subject to Further Confidentiality Review



18    Q.    Do you know when Deborah Foster left the

19  cage?

20    A.    She retired in 2018.

21    Q.    Do you know where Deborah Foster lives?

22    A.    I have a general idea.  I don't know the

23  exact address.

24    Q.    Can you give me the city?

Highly Confidential - Subject to Further Confidentiality Review

1          A.    Indianapolis.

2          Q.    Do you have an estimate how long you were

3     in the cage with Deborah Foster?

4          MR. HYNES:  Objection to form.

5     BY THE WITNESS:

6          A.    I don't -- I don't remember.  I don't

7     know.

8     BY MR. GOETZ:

9

10

11

12

13    BY MR. GOETZ:

14         Q.    Between 2006 and 2018, did the activity of

15    the cage change, in other words, if we were to see a

16    video today of what the cage looks like, would that be

17    pretty similar to what it looked like in 2006?

18         MR. HYNES:  Objection to form.

19    BY THE WITNESS:

20         A.    You want to know if the cage looks like it

21    did now -- from 2006 to now?

22    BY MR. GOETZ:

23         Q.    No, ma'am.

24               So you just left the cage?

Highly Confidential - Subject to Further Confidentiality Review

```
1        A.    Yes.

2        Q.    Six months ago, correct?

3        A.    Yes.

4        Q.    If we were to see a video of what that

5   cage looked like six months ago, the activity, because

6   they were recording it, the activity of what the cage

7   looked like, the speed with which you had to pick,

8   would -- would that -- would that be similar to what

9   we would see if we had video from 2006?

10       MR. HYNES:  Objection to form.

11  BY THE WITNESS:

12       A.    I don't know.

13  BY MR. GOETZ:

14       Q.    Your job stayed pretty much the same,

15  correct?

16       A.    Yes.

17       Q.    Okay.  The speed with which you picked

18  stayed pretty much the same, correct?

19       A.    Yes.

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12      MR. HYNES:  Objection to form.

13  BY MR. GOETZ:

14      Q.    When you were looking for -- strike that.

15      MR. GOETZ:  May I have -- can you put up

16  Exhibit 6.

17          I only have one copy of this and it was

18  marked Exhibit 6 yesterday for Dugger.  Okay?

19      MR. HYNES:  Okay.

20      MR. GOETZ:  I'm just going to ask her a couple

21  of questions about it.

22      MR. HYNES:  That's fine.  That's fine.

23          This is the same document.

24          Do you want to direct her to a particular

Highly Confidential - Subject to Further Confidentiality Review

```
 1   page or --

 2   BY MR. GOETZ:

 3        Q.    Well, I just -- first, could you go to

 4   the -- I've handed you what's been marked as Exhibit 6

 5   for Dugger.  We --

 6              Do you know Terrence Dugger?

 7        A.    Yes.

 8        Q.    And you worked with him?

 9        A.    I knew him.

10        Q.    Did --

11        A.    I didn't have very much contact with him.

12        Q.    Okay.  Could you turn to 88957, the next

13   page.

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
1

2

3

4
```

5       Q.    Okay.  Could you turn to 88996.

6       THE WITNESS:  Yeah, I got makeup in my eye.

7       MR. HYNES:  Do you want to take a break?

8       MR. GOETZ:  Do you want to take a break?

9       THE WITNESS:  Yes.

10      MR. HYNES:  She has something in her eye.  Let's

11  take a quick break.  I'm sorry, Dan.

12      MR. GOETZ:  That's all right.

13      THE VIDEOGRAPHER:  We are off the record at

14  5:29 p.m.

15                  (WHEREUPON, a recess was had

16                   from 5:29 to 5:39 p.m.)

17      THE VIDEOGRAPHER:  We are back on the record at

18  5:39 p.m.

19  BY MR. GOETZ:

20      Q.    Are you better?

21      A.    I think so.

22      Q.    If you need to take a break at any time,

23  let me know, okay?

24      A.    Okay.

Highly Confidential - Subject to Further Confidentiality Review

1        Q.      You should not be miserable, all right?

2    So --

3        A.      Okay.

4        Q.      -- even if a question is pending and

5    your -- your eyes are hurting, let me know, okay.

6        A.      Okay.

7        Q.      I don't want to know what you talked about

8    with Mr. Hynes, but do you have an understanding of --

9    of why you are here testifying today?

10       A.      Yes.

11       Q.      All right.  And what is that

12   understanding, and I don't want to know what Mr. Hynes

13   told you, but generally what is that understanding?

14       A.      You just want to know what I did or do in

15   the cage, the -- the order -- the process of ordering

16   and the process of scanning and who I go to if I was

17   to have a problem with some of the orders, if I see

18   something is too big, who I go to.

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11      Q.     Let me ask you a question because this is

12   actually important.

13             You said that you would go to Ms. Hinkle

14   if an order was too big, correct?

15      A.     Yes.

16      Q.     You would alert her?

17      A.     Yes.

18      Q.     So you would have to make that judgment,

19   correct?

20      A.     Yes.

21      Q.     How would you make that judgment?

22      MR. HYNES:   Objection to form.

23   BY THE WITNESS:

24      A.     When you're in there day in and day out

1    you just know when an order is too big.

2    BY MR. GOETZ:

3        Q.    Mr. Milikan testified it was a gut

4    feeling?

5        A.    Yes.

6        MR. HYNES:  Objection.

7    BY MR. GOETZ:

8        Q.    Would you agree it's a gut feeling?

9        A.    Yes.

10       Q.    Okay.  And I appreciate that, but

11   unfortunately we are going to have to explain to

12   experts and a jury what that means.

13             So what does that mean, that gut feeling?

14       MR. HYNES:  Objection to form.

15   BY THE WITNESS:

16       A.    You just know after you're in there day in

17   and day out what's a big number.  Like if they are

18   ordering, like, five, five, five and then all of a

19   sudden there is 150, that's a red flag.

20   BY MR. GOETZ:

21       Q.    When you say "they are ordering" --

22       A.    The --

23       Q.    -- "five, five, five"?

24       A.    On the pick document, if it says --

Highly Confidential - Subject to Further Confidentiality Review

1    every -- every item in that cage they want five and

2    then all of a sudden it shoots up to, like, 150, that

3    would be a red flag.

4         Q.    Okay.  So if -- if they want five

5    Amoxicillin and then 150 hydro, that's a problem.

6              Is that what I'm hearing you say?

7         A.    Amoxicillin is not in the cage.

8         Q.    So what is in the cage?  You talked about

9    testosterone.

10         A.    Testosterone.

11         Q.    If they want five units of -- of

12    testosterone and 150 of hydro, that to you is a sign

13    there is a problem?

14         A.    Yes.

15

16

17

18

19         A.    Charlotte Rucker, when she trained me, she

20    said as -- we have three different size bottles of

21    hydrocodone in the cage.  She said, As a rule you send

22    out 12 -- no more than 12 of the little ones, six of

23    the big ones and two to three of the bigger -- the

24    large size ones as a rule across the board.

Highly Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. GOETZ:

 2         Q.    And that was in 1996?

 3         A.    Yes.

 4         Q.    And did you live by that rule for the --

 5    for the remainder of your time there?

 6         A.    Yes.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5    BY MR. GOETZ:

6         Q.    Could you turn to Exhibit 6, please.

7         MR. HYNES:  Is this the one you handed to us

8    before, Dan?

9         MR. GOETZ:  Yeah, yes.

10        MR. HYNES:  Is there a page number you want us

11   to go to?

12        MR. GOETZ:  Could you look at 88996, please.

13        MR. HYNES:  Okay.  We are there.

14   BY MR. GOETZ:

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review







Highly Confidential - Subject to Further Confidentiality Review



16        MR. GOETZ:  Let's take a break.

17        MR. HYNES:  Okay.

18        THE VIDEOGRAPHER:  We are off the record at

19    5:59 p.m.

20                    (WHEREUPON, a recess was had

21                    from 5:59 to 6:07 p.m.)

22        THE VIDEOGRAPHER:  We are back on the record at

23    6:07 p.m.

24    BY MR. GOETZ:

Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21     Q.    Okay.  You went and moved to inventory

22   control about six months ago?

23     A.    Yes.

24     Q.    And -- and what does that mean in your new

1    job?

2         A.    Inventory control is -- I work actually in

3    the twilight area and that's where -- if boxes get

4    lost somewhere in the warehouse, they bring them to

5    the twilight and then it is my job to find out where

6    they actually go, whether they go to the reserve or to

7    the picking location.

8         Q.    So are -- are you in inventory control for

9    the entire distribution center?

10        A.    Yes.

11        Q.    So it's not -- it's not just related to

12   controlled substances?

13        A.    No, I don't work in the Rx anymore.

14        Q.    And that distribution center distributes

15   products for the entirety of CVS, the front of the

16   store and the back of the store, correct?

17        A.    Yes.

18        Q.    So toothpaste, toilet paper, candy bars,

19   all of that?

20        A.    Yes.

21        MR. GOETZ:  That is all I have.  Thank you for

22   your time.

23        THE WITNESS:  Thank you.

24        MR. GOETZ:  And thank you for coming today.

Highly Confidential - Subject to Further Confidentiality Review

```
 1          THE WITNESS:  Thank you.

 2          MR. HYNES:  Thank you.

 3          MR. GOETZ:  Good luck.

 4          THE VIDEOGRAPHER:  We are off the record at

 5   6:09 p.m.  This concludes the videotape deposition of

 6   Ellen Wilson.

 7                   (WHEREUPON, discussion was had

 8                    off the record.)

 9                   (WHEREUPON, the following proceedings

10                    were had on the stenographic record

11                    only:)

12   BY MR. GOETZ:

13        Q.    Ms. Wilson, is this the drawing you made?

14        A.    Yes.

15        Q.    We are going to mark this as Wilson

16   Exhibit 1, okay?

17        A.    Yes.

18                   (WHEREUPON, a certain document was

19                    marked CVS - Wilson Deposition

20                    Exhibit No. 1, for identification, as

21                    of 01/24/2019.)

22          MR. GOETZ:  Okay.  Thank you.

23                   (Time Noted:  6:10 p.m.)

24             FURTHER DEPONENT SAITH NAUGHT.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    REPORTER'S CERTIFICATE

 2

 3              I, JULIANA F. ZAJICEK, C.S.R. No. 84-2604,

 4     a Certified Shorthand Reporter, do hereby certify:

 5              That previous to the commencement of the

 6     examination of the witness herein, the witness was

 7     duly sworn to testify the whole truth concerning the

 8     matters herein;

 9              That the foregoing deposition transcript

10     was reported stenographically by me, was thereafter

11     reduced to typewriting under my personal direction and

12     constitutes a true record of the testimony given and

13     the proceedings had;

14              That the said deposition was taken before

15     me at the time and place specified;

16              That I am not a relative or employee or

17     attorney or counsel, nor a relative or employee of

18     such attorney or counsel for any of the parties

19     hereto, nor interested directly or indirectly in the

20     outcome of this action.

21              IN WITNESS WHEREOF, I do hereunto set my

22     hand on this 28th day of January, 2019.

23

24              JULIANA F. ZAJICEK, Certified Reporter
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  DEPOSITION ERRATA SHEET

 2

 3

 4   Case Caption:   In Re: National Prescription

 5                   Opiate Litigation

 6

 7         DECLARATION UNDER PENALTY OF PERJURY

 8

 9         I declare under penalty of perjury that I

10   have read the entire transcript of my Deposition taken

11   in the captioned matter or the same has been read to

12   me, and the same is true and accurate, save and except

13   for changes and/or corrections, if any, as indicated

14   by me on the DEPOSITION ERRATA SHEET hereof, with the

15   understanding that I offer these changes as if still

16   under oath.

17

18                                   ELLEN WILSON

19

20   SUBSCRIBED AND SWORN TO

21   before me this      day

22   of                  , A.D. 20__.

23

24           Notary Public
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  DEPOSITION ERRATA SHEET

 2   Page No._____Line No._____Change to:_____

 3   _____

 4   Reason for change:_____

 5   Page No._____Line No._____Change to:_____

 6   _____

 7   Reason for change:_____

 8   Page No._____Line No._____Change to:_____

 9   _____

10   Reason for change:_____

11   Page No._____Line No._____Change to:_____

12   _____

13   Reason for change:_____

14   Page No._____Line No._____Change to:_____

15   _____

16   Reason for change:_____

17   Page No._____Line No._____Change to:_____

18   _____

19   Reason for change:_____

20   Page No._____Line No._____Change to:_____

21   _____

22   Reason for change:_____

23   SIGNATURE:_____DATE:_____

24                      ELLEN WILSON
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                   DEPOSITION ERRATA SHEET

 2    Page No._____Line No._____Change to:_____

 3    _____

 4    Reason for change:_____

 5    Page No._____Line No._____Change to:_____

 6    _____

 7    Reason for change:_____

 8    Page No._____Line No._____Change to:_____

 9    _____

10    Reason for change:_____

11    Page No._____Line No._____Change to:_____

12    _____

13    Reason for change:_____

14    Page No._____Line No._____Change to:_____

15    _____

16    Reason for change:_____

17    Page No._____Line No._____Change to:_____

18    _____

19    Reason for change:_____

20    Page No._____Line No._____Change to:_____

21    _____

22    Reason for change:_____

23    SIGNATURE:_____DATE:_____

24                      ELLEN WILSON
```