UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) ) ) ) ) ) | CASE NO.: 1:17MD2804<br><br>JUDGE DAN A. POLSTER<br><br>BRIEF IN SUPPORT OF MAINTAINING THE COURT'S PROTECTIVE ORDER |

**I.    STATUS OF MEET AND CONFER**

On July 15, 2019, the Court ordered the Plaintiffs, the Defendants, the United States Department of Justice and the Drug Enforcement Administration ("DEA"), and the Media Intervenors to meet and confer to discuss whether they could agree to a modification of the Court's protective order regarding ARCOS data and Suspicious Order Reports (SORs).  (Order regarding ARCOS Data Protective Order, ECF No. 1845 PageID #57487.  The parties, the DEA and the Media Intervenors met on July 22, 2019, and July 24, 2019, to discuss whether they could agree to any modifications of the protective order or additional public data releases.  However, no agreement could be reached on the disclosure of any additional data or on the modification of the protective order.  On July 25, 2019, the parties, the DEA and the Media Intervenors met again.  The DEA and the Media Intervenors agreed to a proposed order whereby the SORs data that DEA has produced to the parties would be de-designated as confidential under the protective order while allowing DEA fourteen days to determine if any additional redactions are necessary.  The parties have not reached an agreement regarding the 2013/2014 ARCOS data.  Accordingly, the DEA hereby submits this brief in support of maintaining the

Court's Consolidated ARCOS Protective Order (ECF No. 1545) as it relates to the 2013 and 2014 ARCOS data and the SORs.

## II.  MAINTAINING THE PROTECTIVE ORDER PROTECTS THE PARTIES' RIGHTS TO SEEK FURTHER APPELLATE REVIEW

The DEA urges the Court to maintain the status quo and not make any modifications to the ARCOS Protective Orders until after the time to seek further review has passed and the mandate has issued.  Any decision to modify the Protective Orders and to release the ARCOS database to the Media Intervenors could threaten the ability of the United States or any other party to obtain full relief by seeking rehearing or review of the Sixth Circuit's decision.  Once the ARCOS information is provided to the media and made public, it would be virtually impossible to undo such disclosure, even if the Sixth Circuit's decision was subsequently vacated or modified.  Thus, maintaining the status quo temporarily until the mandate issues, consistent with the allocation of jurisdiction between this Court and the court of appeals, preserves the rights of all of the parties.

Further, as noted in its previous filing, it is the position of the DEA that, until the mandate issues, "the court of appeals retains jurisdiction over the case," and "the district court or agency whose order is being reviewed *cannot proceed in the interim.*"  *Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 951-52 (6th Cir. 1999) (emphasis added); *see also* 16AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3987 (4th ed. Apr. 2019 update) ("Until the mandate issues, . . . the case ordinarily remains within the jurisdiction of the court of appeals and the district court lacks power to proceed further with respect to the matters involved with the appeal." (footnotes omitted)).  Decisions of the Sixth Circuit and other courts of appeals make clear that a district court should not proceed to implement the decision of a court of appeals until the mandate has issued.  *See Fort Gratiot Sanitary Landfill, Inc. v.*

2

*Michigan Dep't of Natural Res.*, 71 F.3d 1197, 1202 (6th Cir. 1995) ("The customary procedure on remand creates a duty on the part of lower courts, which obtain jurisdiction *after* receiving the mandate of an appellate court, to obey the terms of the mandate and carry it into effect." (emphasis added)).

Because the DEA is not a party to these cases, it has no interest in either expediting or delaying these proceedings.  Rather, the DEA's only interests are the administration of justice and the efficient and effective completion of its vital law enforcement mission.  The government is acting, consistent with the Federal Rules of Appellate Procedure, to preserve the Solicitor General's prerogative to authorize the Department of Justice to seek further review of an adverse decision of a court of appeals.  *See* 28 C.F.R. § 0.20(b) (making the Solicitor General responsible for "[d]etermining whether, and to what extent," the government will file "petitions for rehearing en banc").  The Federal Rules of Appellate Procedure provide "45 days after entry of judgment" to file a rehearing petition in cases involving the government, Fed. R. App. P. 40(a)(1); *see also* Fed. R. App. P. 35(c), in explicit "recogni[tion] that the Solicitor General needs time to conduct a thorough review of the merits of a case before requesting a rehearing," Fed. R. App. P. 40(a) Advisory Committee's note to 1994 amendment.  The decision of the court of appeals is of substantial significance to the United States, and the time afforded by the Federal Rules is necessary to permit adequate consultation within the affected components of the government and to permit preparation of a petition for rehearing if authorized by the Solicitor General.  Further, waiting for the mandate to issue before modifying or vacating the provisions of the Protective Orders governing ARCOS data will not interfere with the conduct of the litigation, and doing so is of critical importance because the time has not yet passed for the United States to make a decision on whether to seek further review of the decision.

### III. GOOD CAUSE EXISTS TO MAINTAIN THE PROTECTIVE ORDER AS APPLIED TO 2013/2014 ARCOS DATA

Pursuant to Fed. R. Civ. P. 26(c)(1), a court may issue a protective order upon "good cause." Here, there is good cause to continue protecting the 2013/2014 ARCOS data from public disclosure, because public disclosure of ARCOS data can cause harm in several ways. First, disclosure of ARCOS information creates a very real risk of undermining open investigations and legal proceedings that rely on ARCOS information because it could tip off companies that DEA may be investigating them. (Declaration of Joey Lenseigne, attached as Exhibit 1, at ¶ 13.) Importantly, the relative age of the ARCOS data is not dispositive because investigations and legal proceedings take time to develop and there are frequently open investigations and pending litigation that rely on ARCOS data that is 10 years old, or even older. (Id. at ¶ 14.)

By way of example, in late 2017, DEA was able to secure a civil fine from a pharmacy owner based on ARCOS data from 2009 through 2011. DEA began to investigate this East Coast pharmacy several years ago after reviewing data suggesting that the pharmacy was ordering excessive amounts of controlled substances and accepting and filling forged prescriptions. (Id. at ¶ 15.) As the investigation continued, DEA queried the ARCOS database for orders of oxycodone, morphine, methadone and fentanyl purchases the pharmacy had made from March 1, 2009 to February 28, 2011. (Id.) After years of diligent investigation, in late 2017, the pharmacy owner entered into discussions to pay a civil fine for the violations found during the audit of his two pharmacies. (Id.)

As recently as this month, ARCOS data from 2007 through 2015 was successfully used by DEA and its law enforcement partners to build a case and secure an indictment against pharmaceutical distributor Miami-Luken and two of its top officials. (Id. at 16.) The distributor and its employees were charged with conspiring to pour millions of pain pills into communities

4

in Ohio, West Virginia and Kentucky.  (Id.)  The investigative techniques and information that led to securing these grand jury indictments, include the very ARCOS data from 2007—2015 that is the subject to the MDL proceedings. (Id. at Exhibit A—Unsealed Indictment).  Had the ARCOS information at issue in the Miami-Luken case been released prior to the successful indictment, such release could have tipped off Miami-Luken and its executives that DEA was investigating their conduct and could have comprised DEA's investigation.  (Id. at 17.)  Thus, the harm is real and not hypothetical that public disclosure of ARCOS data by the media could tip off companies that DEA may be investigating them.

The release of earlier ARCOS data may be already causing this harm.  For example, on July 17, 2019, the Washington Post reported that the ARCOS data suggested that six of the largest distribution companies had fueled the opioid epidemic.  (Id. at ¶ 19 (citing Scott Higham, Sari Horitz and Steven Rich, An epidemic unmasked, Washington Post, July 17, 2019).)  While DEA cannot confirm or deny whether such companies are under investigation, those companies will now suspect that they may be under scrutiny based on the news reports calling out their data and such advanced warning makes any DEA investigation or enforcement effort more difficult.  (Id. at 20.)

Based on the foregoing, there is good cause to maintain the protective order as it relates to the 2013/2014 ARCOS data.

## IV. THE DEA AND MEDIA INTERVENORS AGREE TO AN ORDER DE-DESIGNATING AS CONFIDENTIAL THE SUSPICIOUS ORDER REPORTS PRODUCED BY THE DEA

After meeting and conferring, the DEA and the Media Intervenors have agreed to a proposed order by the Court de-designating as confidential under Paragraph 11 of the Opinion and Consolidated ARCOS Protective Order (ECF No. 1545) the Suspicious Order Reports

(SORs) produced by the Drug Enforcement Administration (DEA).  Specifically, the DEA and the Media Intervenors agree that, upon an issuance of an order, the "electronic SORS data, "which are defined as those SORS that registrants sent to DEA headquarters pursuant to a memorandum of agreement, produced by the DEA to the parties shall be de-designated confidential and its possession, use, and disclosure would no longer be restricted by the Protective Order.  Further, the DEA and the Media Intervenors agree that DEA would have fourteen (14) days from the issuance of an order to review the remaining SORS data[1] it produced to determine whether any additional redactions are warranted for privileged information, including, but not limited to, law enforcement sensitive information, confidential source information, grand jury information, and privacy protected information.  If the DEA determines that additional redactions are warranted, it agrees to notify the parties and the Media Intervenors of such redactions and the basis therefore, and will provide the parties with a revised redacted version of that SOR that is not designated confidential.  To the extent that DEA does not request any additional redactions, the DEA and the Media Intervenors agree to an order that the remaining SORS data produced by DEA to the parties shall be de-designated confidential and its possession, use, and disclosure will no longer be restricted by the protective order.   A proposed order is attached hereto as Exhibit B and has been approved by DEA and the Media Intervenors.

## V. CONCLUSION

Based on the foregoing, this Court should not vacate or modify the provisions of its Protective Orders governing ARCOS data before the Sixth Circuit has issued its mandate.

---

[1] The "remaining SORS data" includes: (1) submissions by registrants to DEA field offices, and (2) DEA-6 reports prepared by the DEA from SORS data.  With respect to the first category, the DEA does not anticipate any redactions.  However, due to the manner of the original production in which these two categories of documents were produced together, it is not possible to identify the two separate categories without reviewing the full production.

Rather, the Court should maintain the status quo while the Solicitor General of the United States and the other parties determine whether to seek further review of the opinion of the U.S. Court of Appeals for the Sixth Circuit issued on June 20, 2019.  Disclosing ARCOS data before the mandate has issued would upset the balance of jurisdiction between this Court and the court of appeals and threaten the ability of the United States or any other party to obtain complete relief by seeking rehearing or review of the Sixth Circuit's decision.

Regardless of whether the Sixth Circuit's decision is vacated or modified, good cause exists to maintain the Protective Orders as it relates to the 2013/2014 ARCOS data.  Further, DEA agrees to the de-designation of the SORs data as set forth above.  Therefore, the DEA urges this Court to maintain the Protective Orders.

        Respectfully submitted,

        JODY H. HUNT
        Assistant Attorney General

        AVA ROTELL DUSTIN
        Executive United States Attorney
        Attorney for the United States
        Acting Under Authority Conferred by 28 U.S.C. § 515

By:   /s/ James R. Bennett II
        JAMES R. BENNETT II (OH #0071663)
        Assistant U.S. Attorney
        801 West Superior Avenue, Suite 400
        Cleveland, Ohio  44113-1852
        (216) 622-3988 (Direct)
        (216) 522-4982 (Facsimile)
        E-mail:  james.bennett4@usdoj.gov

/s/Natalie A. Waites
Michael D. Granston
Andy Mao
Natalie A. Waites
United States Department of Justice
Civil Division/Fraud Section
175 N Street, N.E., Room 10.222
Washington, D.C. 20002
(202) 616-2964
Natalie.A.Waites@usdoj.gov

Attorney for U.S. Department of Justice
Drug Enforcement Administration

CERTIFICATE OF SERVICE

I certify that on July 26, 2019, a copy of the foregoing *Brief of the Department of Justice Drug Enforcement Administration* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ James R. Bennett II
JAMES R. BENNETT II
Assistant U.S. Attorney

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing *Brief of the Department of Justice Drug Enforcement Administration* is eight (8) pages in length and within the limitations set by the local rules.

/s/ James R. Bennett II
JAMES R. BENNETT II
Assistant U.S. Attorney