UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | MDL No. 2804<br><br>Case No. 17-MD-2804<br>Judge Dan Aaron Polster |

**DECLARATION OF JOEY LENSEIGNE IN SUPPORT OF THE
UNITED STATES OF AMERICA'S BRIEF OPPOSING THE DISCLOSURE OF 2013-
2014 ARCOS DATA**

I, Joey Lenseigne, hereby make this declaration pursuant to 28 U.S.C. § 1746. I declare as follows:

**Background**

1. I make the factual statements herein based on my personal knowledge and on information provided to me in my capacity as an employee of the United State Department of Justice (DOJ), Drug Enforcement Administration (DEA), and my personal consideration of information provided by my staff. Should I be called as a witness, I would competently testify to the factual statements herein.

2. Currently, I serve as the Chief of the Pharmaceutical Investigations Section of the Diversion Control Division (DOP) at DEA. DOP provides operational support and funding for Diversion and Tactical Diversion Squad criminal investigations; evaluates current diversion

trends both nationally and internationally to proactively plan and provide assistance to the field in target investigations; and coordinates domestic and foreign pharmaceutical investigations.

3. Prior to my recent appointment, I held the position of Staff Coordinator within the Pharmaceutical Investigations Section. As Staff Coordinator, I focused on the opioid epidemic within my geographic area of responsibility and led many of Diversion's cyber-related investigative efforts.

4. My tenure as a DEA employee spans 21 years.

5. Diversion's mission is to prevent, detect, and investigate the diversion of controlled pharmaceuticals and listed chemicals from legitimate sources to illicit ones while ensuring an adequate and uninterrupted supply for legitimate medical, commercial, and scientific needs. As part of this mission, Diversion coordinates investigations within DEA and with our law enforcement counterparts at the federal and state level.

**ARCOS Data**

6. As explained in the Declaration of Assistant Administrator of Diversion Control, John Martin, which was filed in support of the United States of America's Objections to Disclosure of ARCOS Data on June 25, 2018, the Automation of Reports and Consolidated Orders System ("ARCOS"), is an automated, comprehensive drug reporting system maintained by DEA into which manufacturers and distributors report information about certain controlled substances. The reported information includes supplier name, registration number; address and business activity; buyer name, registration number and address; drug code; transaction date; total dosage units; and total grams. Approximately 1,200 manufacturers and distributors are required

by law to report to ARCOS. (See Declaration of Assistant Administrator of Diversion Control, DEA, John Martin ("Martin. Decl.") at ¶ 7.)

7. DEA does not share unredacted ARCOS information with the public. Rather, DEA uses ARCOS internally as tips and leads in an effort to determine whether legal action is warranted based on DEA's analysis of the data.

8. DEA also provides ARCOS data to investigators in federal, state and local government agencies throughout the United States on a case by case basis to identify and combat the diversion of controlled substances into illicit channels of distribution.

9. During discovery in this litigation, DEA was ordered to produce ARCOS data for all 50 states and several U.S. territories for the time period of January 1, 2006 to December 31, 2014, for the following fourteen drugs (14): oxycodone, hydrocodone, hydromorphone, fentanyl, morphine, oxymorphone, tapentadol, buprenorphine, codeine, dihydrocodeine, meperidine, levorphanol, methadone, and opium.

10. Because DEA does not share unredacted ARCOS information with the public and instead relies on ARCOS internally for tips and leads or as part of its collaborative efforts with other law enforcement entities to combat diversion, DEA sought a protective order for the ARCOS data.

11. On May 18, 2018, June 5, 2018, July 2, 2018, July 19, 2018, and August 23, 2018, date, DEA produced the ARCOS data as ordered by the Court with the understanding that the disclosure of the data would be limited by the terms of the Protective Order entered by the Court.

12. DEA continues to assert the law enforcement privilege over all ARCOS data produced in this litigation.

13. As stated in the Martin Declaration, public disclosure of ARCOS data can cause harm in several ways. First, disclosure of ARCOS information creates a very real risk of undermining open investigations and legal proceedings that rely on ARCOS information. Martin Decl. ¶ 16. The relative age of the ARCOS data is not dispositive.

14. Because investigations and legal proceedings take time to develop, there are frequently open investigations and pending litigation that rely on ARCOS data that is 10 years old, or even older.

15. By way of example, in late 2017, DEA was able to secure a civil fine from a pharmacy owner based on ARCOS data from 2009 through 2011. DEA began to investigate this East Coast pharmacy several years ago after reviewing data suggesting that the pharmacy was ordering excessive amounts of controlled substances and accepting and filling forged prescriptions. As the investigation continued, DEA queried the ARCOS database for orders of oxycodone, morphine, methadone and fentanyl purchases the pharmacy had made from March 1, 2009 to February 28, 2011. After years of diligent investigation, in late 2017, the pharmacy owner entered into discussions to pay a civil fine for the violations found during the audit of his two pharmacies.

16. As recently as this month, ARCOS data from 2007 through 2015 was recently successfully used by DEA and its law enforcement partners to build a case and secure an indictment against pharmaceutical distributor Miami-Luken and two of its top officials. The distributor and its employees were charged with conspiring to pour millions of pain pills into

communities in Ohio, West Virginia and Kentucky. The investigative techniques and information that led to securing these grand jury indictments, include the very ARCOS data from 2007—2015 that is the subject to these proceedings. (Exhibit A—Unsealed Indictment).

17. Release of the ARCOS information at issue in the Miami-Luken case prior to the successful indictment could have tipped off Miami-Luken and its executives that DEA was investigating their conduct and could have comprised DEA's investigation.

18. This perceived harm is not hypothetical. As explained in the Martin Declaration, public disclosure of ARCOS data by the media could tip off companies that DEA may be investigating them. Conversely, it could also cause the media to incorrectly focus on companies that have not committed any wrongdoing. Martin Decl. ¶ 32. This is because unlike DEA diversion investigators who work with ARCOS data regularly and are trained to interpret and understand patterns of activity, members of the general public do not have such training.

19. This potential harm previewed in the Martin Declaration has already come to pass. Significantly, on July 17, 2019, the Washington Post reported that the ARCOS data suggested that six of the largest distribution companies had fueled the opioid epidemic. Scott Higham, Sari Horitz and Steven Rich, *An epidemic unmasked*, Washington Post, July 17, 2019, at A1.

20. DEA cannot confirm or deny whether, based on its review of the ARCOS data, it may be investigating any of the companies profiled by the Washington Post because that would tip off any such companies who may be under investigation. The harm, however, has already been done. If any of the companies that DEA may be investigating did not already think they

were under scrutiny, they will now suspect that they may be based on the news reports calling out their data.

21. DEA also cannot confirm or deny, whether based on its review of the ARCOS data, it may have determined that any of the profiled companies should be investigated for wrongdoing. For any such companies that may be subject to mistaken suspicion, however, the harm has already happened. Such companies are already under increased media and public scrutiny, regardless of whether they engaged in criminal behavior.

For all these reasons, information pertinent to quantities of opioids maintained in 2006-2014 ARCOS data should remain confidential and not be made publicly available. I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

_____7/26/2019_____                    _____[signature]_____
Date                                      Declarant