# EXHIBIT 4

ORDER

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 83-10899 CA 32

THEODORE B. GOULD and
MIAMI CENTER CORP., no
Individually but as GENERAL
PARTNERS OF MIAMI CENTER
LIMITED PARTNERSHIP,

        Plaintiffs,

v.

JPDI, and PATRICK
POWER CORP., a Florida corporation,
and JAMES P. DRISCOLL, individually,

        Defendants.
_____/

### ORDER ON PROCEEDINGS SUPPLEMENTARY TO EXECUTION

This cause having come before the Court on plaintiffs' Motion for Proceedings Supplementary to Execution and the Court having review the filed and the evidence presented by the parties, having heard argument of course and being otherwise fully advised in the premises, hereby finds as follows:

1. On March 28, 1983, Miami Center Limited Partnership ("MCLP") filed a lawsuit against JPDI ("JPDI") for breach of contract. In 1986, after a bench trial that was presided over by the late Judge Milton Friedman, MCLP was awarded the following judgments against JPDI: Damages in the amount of $750,054.85; Prejudgment interest in the amount of $327,936.42; Taxable costs in the amount of $123,796.80; and Attorneys fees in the amount of $620,499.90.

2. The Third District Court of Appeal reversed and remanded for further proceedings on the award of costs and attorneys' fees. An Amended Costs and Attorneys' Fees was entered pursuant to a Settlement Agreement awarding $609,539.90 in attorneys fees and $84,693.02 in costs.

3. On August 5, 1987, MCLP initiated proceedings supplement to execution against JPDI. Driscoll Industries, Inc. ("DII") was impleaded into the proceeding supplement. In 1988, Judge Friedman ruled that JPDI had fraudulently transferred more than $1,200,000 of its assets and real

estate to DII. The judge voided the transfers of two parcels of properties in the State of Florida but could not void the transfers of the other assets located in Michigan and Illinois.

4.     While the underlying action was pending, on August 22, 1984, MCLP filed for voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. A liquidating trust was created and all assets owned by MCLP were assigned and transferred to the Liquidating Trustee, including the judgment claims. It took thirteen years for MCLP to emerge from bankruptcy.

5.     After the close of the bankruptcy, Plaintiffs, Theodore B. Gould and Miami Center Corporation, not individually but as general partners of MCLP filed a motion for impleader of third parties, PPC ("PPC") and James P. Driscoll, individually, for proceedings supplementary to Plaintiffs execution upon the judgments entered against the Defendant, JPDI. MCLP is a judgment creditor and has filed an affidavit showing that the sheriff holds an unsatisfied writ of execution on said money judgments.

6.     Personal liability was alleged against PPC. It is first alleged that Patrick Power is a successor to the assets and liabilities of DII. Secondly, it is alleged that PPC is a mere continuation of the business of the judgment debtor, JPDI. Third, it is alleged that Patrick Power bears personal liability under the doctrine of de facto merger. Fourth, it is alleged that Patrick Power has operated as an alter ego of the judgment debtor, JPDI. Fifth, personal liability is justified on equitable grounds under Florida law.

7.     Personal liability against James P. Driscoll, individually, is also alleged. First, it is alleged that he is the dominant, and the sole shareholder of JPDI, the judgment debtor and that he is the one that effectuated the fraudulent transfers of the "assets" to DII and to PPC.

8.     PPC argues that MCLP lacks standing to enforce judgment and pursue proceedings supplementary as a result of MCLP's bankruptcy. Patrick Power argues that the judgment did not revert to MCLP after the close of the bankruptcy. Patrick Power also argues that the statute of limitations has expired for MCLP to collect on the judgment. Patrick Power also argues the equitable doctrine of laches.

9.     PPC claims that it was incorporated three years before the judgment was entered against JPDI. PPC was a self-sufficient business operating out of Ft. Lauderdale, Florida. Second, JPDI was a union business that only hired union workers and performed union projects. Patrick Power is a non-union business that hired only non-union workers and worked on non-union projects. When PPC and its Parent company merged, no DII assets were transferred to, and no DII liabilities were assumed by PPC.

10.    Plaintiffs have standing to bring this proceeding in this court. Defendants' first argue that the statute of limitations have expired to bring this proceeding. Florida Statute § 95.11, limitations other than for the recovery of real property, states:

> Actions other than for recovery of real property shall be commenced as follows:
> (1) Within twenty years.--An action on a judgment or decree of a court of record in this state.

2

11.     In this case, Judge Friedman entered his findings regarding the fraudulent transfers in 1987. This proceeding supplementary began in the year 2003. As a result, 16 years have elapsed between the actions. Therefore, this proceeding falls within the twenty year statute of limitations and the plaintiffs have standing.

12.     Defendants' affirmative defense of laches does not stand in this case. Ordinarily a party has 20 years in which to enforce a judgment, however, when undue delays are exercised without sufficient reason, equitable defenses may be raised which may cut off the right to satisfy a judgment. *Winter v. Allstate Mortg. Corp. of Florida*, 303 So.2d 399 (Fla. 3d DCA 1974). Defendants argue the defense of laches. Florida statute § 95.11(6) states:

> Laches shall bar any action unless it is commenced within the time provided for legal actions concerning the same subject matter regardless of lack of knowledge by the person sought to be held liable that the person alleging liability would assert his or her rights and whether the person sought to be held liable is injured or prejudiced by the delay. This subsection shall not affect application of laches at an earlier time in accordance with law.

Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. *Ticktin v. Kearin,* 807 So.2d 659 (Fla. 3d DCA 2001). It is an equitable defense, and its applicability depends upon the circumstances of each case. Delay alone in asserting a right does not constitute laches, and the burden is on the party who asserts the doctrine of laches to prove prejudice. *Id.* The first of these elements is that there must be conduct by the defendant, or one under whom the defendant claims, giving rise to the situation of which complaint is made. *Tower v. Moskowitz*, 262 So.2d 276 (Fla. 3d DCA 1972). The second element is that the plaintiff, having had knowledge or notice of the defendant's conduct, and having been afforded the opportunity to institute suit, is guilty of not asserting his rights by suit. *Id.* The third element is the lack of knowledge on the part of the defendant that the plaintiff will assert the right on which plaintiff bases his suit. *Id.* One who comes into equity must come with clean hands else all relief will be denied him regardless of merit of his claim, and it is not essential that act be a crime; it is enough that it be condemned by honest and reasonable men. *Roberts v. Roberts,* 84 So.2d 717 (Fla. 1950).

13.     This is an equity proceeding and the defendants do not have clean hands in this defense. The defendants were found in a previous proceeding supplementary to have evaded the judgments against them by fraudulently transferring assets from JPDI to Driscoll Industries, Inc. In addition, defendants did not meet their burden in showing that they are prejudiced. Defendants were aware of the outstanding judgment. Defendants attempted to hinder Plaintiffs collection efforts on the judgment. As a result, the defendants' defense of laches does not stand in this case.

14.     Plaintiffs' judgment reverted back to them after the bankruptcy proceedings were closed. The Federal bankruptcy statute, 11 U.S.C. §554, Abandonment of property of the estate, states:

3

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential benefit to the estate.
(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for the purposes of section 350 of this title.
(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

By operation of law, property, including a cause of action, properly scheduled by debtor pursuant to Bankruptcy Code and not administered by trustee reverts to debtor's possession once the bankruptcy estate is fully administered and debtor's bankruptcy case is closed. ("If a cause of action that preexisted the filing of the bankruptcy petition is ... abandoned by the trustee, then it is property of the debtor and the debtor will have standing to pursue the cause of action in his or her own name.") *Fedotov v. Peter T. Roach and Associates, P.C.*, 354 F.Supp.2d 471 (S.D.N.Y.,2005)

15. In this case, the judgment was transferred to the liquidating trust and became the property of the estate. The liquidating trustee did not pursue the judgment. The case was not administered at the time of the closing of the bankruptcy proceeding. The bankruptcy court made no mention about the ongoing litigation of this case. As a result, the judgment reverted back to the debtors in the plaintiffs. Therefore, the plaintiffs are allowed to pursue the proceeding supplement in this case.

16. In order to pierce the corporate veil the plaintiff must show that the corporation was dominated and controlled by its shareholders in such a way that it was in essence merely an alter ego, used for the shareholders' personal benefit and a showing of improper conduct. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla.1984). The improper conduct must impose an injury on the claimant. *Seminole Boatyard v. Christoph*, 715 So. 2d 987 (Fla. 4th DCA 1998). There are at least fifteen factors that have been deemed to be relevant in a determination of whether a corporate entity should be disregarded: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e. issuance of stock, election of directors, keeping of corporate records and the like; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether the related corporations deal with the dominated corporation at arms length; (8) whether the corporations are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporations by other corporations in the group; (10) whether the corporation in question has been properly used by others of the corporations as if it were their own; (11) financing of subsidiary by parent; (12) informal

4

intercorporate loan transactions; (13) parent and subsidiary's filing of consolidated income tax returns; (14) whether subsidiary's directors act independently in interest of subsidiary rather than in interest of parent; (15) existence of fraud, wrongdoing or injustice to third parties. *Hilton Oil Transport v. Oil Transport Co., S.A.*, 659 So. 2d 1141 (Fla. 3d DCA1995).

17. PPC is liable to MCLE as the alter ego and the mere continuation of the judgment debtor, JPDI. The court finds that the above factors collectively justify disregarding the corporate entity. In June 1985, PPC guaranteed a $3,000,000 credit limit for JPDI. On June 30, 1985, James P. Driscoll personally guaranteed a $750,000 loan to JPDI. On October 21, 1985, DII guaranteed a $3,000,000 credit line for JPDI. On June 2, 1986, JPDI guaranteed a $1,000,000 credit line for PPC. On June 2, 1986, Mr. Driscoll, individually, guaranteed a credit line for PPC for $700,000. On June 2, 1986, DII guaranteed a credit line for PPC for $1,000,000. On November 14, 1986, PPC guaranteed another $3,000,000 credit limit for JPDI. On November 14, 1986, PPC was guaranteed another credit line by JPDI for $1,000,000. JPDI had guaranteed the loans by PPC with Harris Bank and secured it with JPDI's assets. In a 1988 report to Harris Trust Bank, by Gustafson:

> Patrick Power Corp. is a well-known, expertly operated electrical contracting firm. We are firmly established in this market, and have been since 1972. From 1972 till November, 1983, our employees worked in this market under the style of James P. Driscoll, Inc., a union electrical contracting firm. We had been performing up to $32,000,000 annual sales volume that was constantly profitable. James P. Driscoll, Inc. was one of the last union contractors to depart the state of Florida. Patrick Power Corp. was established as a merit shop company to offer services to this marketplace. Patrick Power was also fortunate enough to retain all of our management and field supervisors that had formerly worked many years for James P. Driscoll, Inc.

As reflected by these various transactions and others not mentioned in this order, these corporations and James P. Driscoll acted ==interdependent== of each other. These transactions were not conducted at arm's length. There is a lack of consideration. There is a lack of promissory notes or loan repayment agreements between the corporations. The payments of these loans were guaranteed by the corporations collectively and James P. Driscoll, individually. The corporations and James P. Driscoll commingled their assets. There is an absence of corporate formalities. The corporations consolidated their financial statements and consolidated their income tax returns.

18. In addition, there is an ==overlap in ownership, officers, directors, and personnel==. Ownership of JPDI, PPC and DII, was dominated by one shareholder, James P. Driscoll. James P. Driscoll was the President of JPDI. James P. Driscoll was the president of DII. James P. Driscoll's brother in law was the president of PPC, however, after the merger, James P. Driscoll was the president JPDI. Currently, James P. Driscoll is a fifty percent shareholder in the company.

5

19. Furthermore, JPDI, DII and PPC all shared common office space. JPDI, DII and PPC's business address was 1818 W. 103rd Street, Chicago, Ill. James P. Driscoll referred to PPC as his Florida office.

20. There is an existence of fraud, wrongdoing and injustice by JPDI, DII, PPC and James P. Driscoll, individually to MCLP. In 1988, Judge Friedman determined that JPDI fraudulently transferred its assets to DII. DII later merged with PPC. These transactions evidence the fact that JPDI's assets were being depleted in order to avoid payment to MCLP of its judgment. The court finds that the above factors collectively justify disregarding the corporate entity.

For the above stated reasons, it is herby ORDERED and ADJUDGED, that:

a. Plaintiffs' Motion for Proceedings Supplementary to Execution, which requests this court find successor liability of Patrick Power Corporation as the mere continuation, alter ego, and the de facto merger of the judgment debtor, James P. Driscoll, Inc. is GRANTED.
b. Plaintiffs' Motion for Proceedings Supplementary to Execution, which requests this court find successor liability of James P. Driscoll, individually on the basis of alter ego and as the dominant shareholder of the judgment debtor is GRANTED.
c. The Court finds for the Plaintiffs, Theodore B. Gould and Miami Center Corporation as general partners of Miami Center Limited Partnership shall recover from Patrick Power Corporation and James P. Driscoll, individually on the judgments previously entered, and awards the amount of $5,894,879.39, the full value of MCLP"s judgments including principal and interest as of August 1, 2005.
d. This court retains jurisdiction to determine costs, additional interest, and reasonable attorney's fees incurred by plaintiffs in these proceedings supplement to execution.

DONE AND ORDERED in chambers at Miami Dade County, Florida on this ___7___ day of ___March___ 2006.

Judge Sarah I. Zabel

JUDGE SARAH ZABEL
CIRCUIT COURT JUDGE

Copies furnished to all counsel of record.

6