# EXHIBIT 16

### PUBLIC SESSION MINUTES
### North Carolina State Board of CPA Examiners
### September 22, 2008
### 1101 Oberlin Road
### Raleigh, NC 27605

**MEMBERS ATTENDING:**  Arthur M. Winstead, Jr., CPA, President; Michael C. Jordan, CPA, Vice President; Jordan C. Harris, Jr., Secretary-Treasurer; Jeffrey T. Barber, CPA; Norwood G. Clark, Jr., CPA; Tyrone Y. Cox, CPA; and Maria M. Lynch, Esq.

**STAFF ATTENDING:**  Robert N. Brooks, Executive Director; J. Michael Barham, CPA, Deputy Director; Lisa R. Hearne, Manager-Communications; Ann J. Hinkle, Manager-Professional Standards; Buck Winslow, Manager-Licensing; and Noel L. Allen, Legal Counsel.

**GUESTS:**  James T. Ahler, CEO, NCACPA; Sharon Bryson, COO, NCACPA; John Morgan, CPA, Esq., Chair, NCACPA; Joan Pharr, CPA, NCACPA; Jay Lesemann, CPA, NCACPA; David Horne, Esq.; Curt B. Lee, Legislative Liaison, NCSA; Fred Bautters, Crowe Chizek & Company, LLC; Stanley Parzen, Esq.; David Coats, Esq.; Michael Weisel, Esq.; and Suzanne Jolicoeur, AICPA.

**CALL TO ORDER:**  President Winstead called the meeting to order at 10:05 a.m.

**MINUTES:**  The minutes of the August 18, 2008, meeting were approved as submitted.

**FINANCIAL AND BUDGETARY ITEMS:**  The August 2008 financial statements were accepted as submitted.

Messrs. Jordan and Winstead moved to approve a budget amendment increasing computer supplies by $2,500 and decreasing the capital budget-equipment by $2,500. Motion passed.

**REQUEST FOR DECLARATORY RULING:**  President Winstead reconvened the Hearing from July 21, 2008, to hear the Request for Declaratory Ruling as submitted by Crowe Chizek & Company, LLC ("Crowe"). Mr. Winstead withdrew from participation in the matter and Vice President Jordan assumed the role of chair for the Hearing. Michael L. Weisel, Esq.; David Coats, Esq.; and Stanley Parzen, Esq.; attorneys representing Crowe, made a presentation to the Board. Mr. Bautters, of Crowe, also made comments to the Board during the Hearing. All information presented by Crowe and the Board was agreed upon and was entered into the public record. Messrs. Barber and Harris moved to enter Closed Session to consider the information presented and the draft Declaratory Ruling presented by Board staff and Legal Counsel. Motion passed. Mr. Clark and Ms. Lynch moved to re-enter the Hearing from Closed Session. Ms. Lynch and Mr. Harris moved to deny the request of Crowe Chizek & Company, PLLC, to include "Horwath" in its partnership firm name. Motion passed with six (6)

affirmative votes and zero (0) negative votes. The entire Hearing is a matter of public record (Appendix I).

**REPORT OF THE PROFESSIONAL STANDARDS COMMITTEE:**  Mr. Clark moved and the Board approved the following recommendations of the Committee:

<u>200609-070-1, 200609-70-2, 200609-070-3</u> – James F. Baker, Jeffery B. Baker, and James F. Baker, CPA, PA - Approve the signed Supplemental Consent Order (Appendix II).
<u>C20081514 – Hugh O. Queen</u> – Approve the signed Consent Order (Appendix III).
<u>C20085877 – James Kar</u> – Messrs. Barber and Winstead moved to approve the Emergency Order for Revocation and Notice. Motion passed with five (5) affirmative votes and zero (0) negative votes (Appendix IV).
<u>C20085882 – Etim Udoh</u> - Messrs. Barber and Jordan moved to approve the Emergency Order for Revocation and Notice. Motion passed with five (5) affirmative votes and zero (0) negative votes (Appendix V).
<u>C2007619</u> - Approve a Notice of Hearing for Ben Carl Wethington for March 25, 2009, at 10:00 a.m.
<u>C2007644</u> - Approve a Notice of Hearing for Dorinda Denise Powell for March 25, 2009, at 10:00 a.m.
<u>C20081538</u> – Close the case without prejudice.
<u>C2007718-1, C2007718-2</u> – Calvin Lewis Blanton and Calvin L. Blanton, CPA, PA – Messrs. Jordan and Barber moved to approve the Consent Order for permanent revocation of the North Carolina CPA certificate issued to Calvin Lewis Blanton by the Board and to cancel the registration of the firm, Calvin L. Blanton, CPA, PA. Motion passed with five (5) affirmative votes and zero (0) negative votes (Appendix VI).
<u>C20081755 – Ki-Hyun Chun</u> – Approve the signed Consent Order (Appendix VII).
<u>C2007520 – Russell N. Allen</u> – Messrs. Barber and Jordan moved to approve the Consent Order for suspension of the North Carolina CPA certificate issued to Russell Neil Allen by the Board and suspend the registration of the firm, Russell N. Allen, CPA, PA. Motion passed with five (5) affirmative votes and zero (0) negative votes (Appendix VIII).

**REPORT OF THE PROFESSIONAL EDUCATION AND APPLICATIONS COMMITTEE:** Mr. Cox moved and the Board approved the following recommendations of the Committee:

**Transfer of Grades Applications** - The following were approved:

Sterling Poole Dibb
Joseph Erin Paisley
Natalie Lynn Smith

Xiaodong Wang
Michael Adam Welner

**Original Certificate Applications** - The following were approved:

Brent Raymond Absher

Amin Ainolhayat

Matthew J. Anderson
Melissa Renée Beasley
Kamran John Beikmohamadi
LaKeisha Nicole Betton
Megan Stainback Boswell
Jennifer Nicole Brady
J. Nicole Brantley
Kristina Picornell Cabrejas
Sarah Jordan Cain
Julia P. Collins
Susan Lindsay Dack
Sterling Poole Dibb
Michael Joseph Ferguson
Tobias Rasmus Fricke
April R. Gallagher
Nathanael Miller Harrison
Amy Holshouser Hastings
James Darren Hendrix
Jason Craig Henkel
Michael John Jackyra
Jared Gabriel Johnson
Maria Erica Kemp
William Rufus Kiser III
Jonathan Michael LeFave
Renée Patterson Leonard
Nicholas Carl Leone
Antonette L. Lockett
Joseph Byron Maxim
Gina Lynn McGowan

Cassie Alisha Melton
Jesse Samuel Monza
Andrew Logan Myers
Joseph Erin Paisley
Parvinder Singh Parmar
Ryan Merrell Perry
Andrew James Peters
Julie Barr Plexico
Benjamin Craig Pratt
Leslie Catherine Price
Elizabeth Cort Ray
Bethaney Elaine Ryals
Ryan David Satterfield
Kunal K. Shah
Cole Costello Shephard
Jacob M. Sizemore
Natalie Lynn Smith
Michael Simmons Steele
David Franklin Stewart
Joseph Wade Sutton
Jenny Anne Thomas
Teri Ginn Tracy
Xiaodong Wang
Kristin Allgood Washam
Matthew Boyd Watts
Michael Adam Welner
Laura Kathryn Wiggins
Shannon Teah Willert

Staff reviewed and recommended approval of the original application submitted by Krista Sharpe Waugh. Ms. Waugh failed to disclose a possession of alcohol conviction with her exam application but provided pertinent information with her certificate application. Staff recommended approval of the application with a one-year probationary period. The Committee approved the application.

Staff reviewed and recommended approval of the original application submitted by Rishi Narendra Patel. Mr. Patel failed to disclose a PJC for driving after consuming alcohol under age 21 with his exam application but provided pertinent information with his certificate application. Staff recommended approval of the application with a one-year probationary period. The Committee approved the application.

**Reciprocal Certificate Applications** - The following were approved:

John Andrew Brobst
Laurie Dawn Cole
Thomas Clayton Davis
Ginger Elkins Doherty
Christopher James Fameree
Cary Greenberg
Natalie Nina Manfredi Holton
Sarah Lynn Kennedy
Benjamin Louis Kirchhoff
Margaret Elizabeth Lowe
Scott Thomas Matheson

Walter Phillips Miller Jr.
Geoffrey Ronald Mize
Hilary Dana Moszynski
Donika Lee Muckler
Amanda Irene Springer Nicholson
Adah Marie Roberts
Edward Joseph Steh
Christopher Smyth Wilde
David Michael Woodworth
Michael John Wurdack

**Temporary Permits** - The following temporary permits were approved by the Executive Director and ratified by the Board:

Ronald David Hickey T5054
Paige Bell Riordon T5055
Andrew Leigh McCoach T5056
John William Higbee T5057
Daniel John McIntyre T5058
Kathleen Mary Mason T5059
Michael Joseph Bodah T5060
William Matthew Vannelli T5061
Robert Cory Rogers T5081
Lesley Walters Parker T5082
Robert Dean Dohrer T5083
Jason Tyler Lee T5084
Adrienne L. Crutch T5085
Gregory J. Dudley T5086
Hillel Nathaniel Caplan T5087

John David Mollohan T5088
Patsy Ann Morton T5089
Melissa Knauss Hinman T5090
Aaron Joiner Singleton T5091
John Francis Izzo T5092
Daniel Thomas Albano T5093
Kelly Michele Ganley T5094
Heather LeAnne Smith T5095
Christine Snyder Young T5096
Mason Hirum Mullins T5097
Shawn Anita Pack T5098
Anne Elizabeth Davenprot T5099
Grace Mitchell Neal T5101
Larry Daniel T5102
Craig J. Nowakowski T5103

**Reinstatements** - The following were approved:

Elizabeth Haney Funderburk #29238
Geoffrey Keith Gardner #27536
Michael Scott Kelly #27742
Lisa Lynn Koebrich #31915

Kimberly Gene Racine #22405
Kenneth Melton Staley #17982
Scott James Wachtel #23977

**Reissuance of New Certificate** - Applications for reissuance of new certificate submitted by the following were approved.

Mason Tyler Beaumont #31759                  Karla K. Shepard #28614
Kenneth Marc Postal #29253                    Sona Alexanian Thorburn #19812

**Reissuance of New Certificate and Consent Agreement** - An application for reissuance of new certificate and consent agreement submitted by Martha Ann Zeigler (#18148) was approved.

**Firm Registrations** - The professional corporation Wheeler & Company CPAs, P.C. was approved by the Executive Director and ratified by the Board.

**Retired Status Applications -** The Committee approved the request for retired status submitted by Robert Erwin Willis (#5196) because he is completely retired and does not receive any earned compensation for current personal services in any job whatsoever.

**CPE Matters -** The Committee approved the following ethics courses:

"Ethics Update for the North Carolina CPA for 2008" (Update) Haynes Strand and Company, LLP (Board-Approved CPE Sponsor)
"Professional Ethics and Conduct – 2008" (Update) Scharf Pera & Co., LLP (Board-Approved CPE Sponsor)

**Letters of Warning -** Staff received renewals from the individuals listed below which list 2007 CPE taken between January 1 and June 30, 2008, without an approved extension. Staff recommended a Letter of Warning for a first offense pursuant to 21 NCAC 08G .0406(b)(1). The Committee approved staff recommendation:

Robert Tucker 3333                    Thomas Faircloth 12851
Robert Bower Jr. 4120                 David Fouts 12856
Earl Baucom 5135                      Robert Segal 13105
James Wollin 7755                     David Fligel 13282
Coulson Mucher 9403                   Lora Quinn 13367
George Webb Jr. 9978                  David Byrd 13678
Jerry Smith 10401                     Joseph Sanders IV 14019
Thomas Brantley 11013                 Sherri McGirt 14107
Christopher Jones 11729               Charles Oliphant 14165
Larry Pannell 11786                   James Jones 14447
Charles Jenkins 11845                 Carley Walker 14461
Etta Grant 11953                      Malcolm Niven 14513
Michael Burton 12494                  John Klosek 14812
David Lee 12789                       Mary Parkinson 14832
James Teal 12797                      Donald Devers 14852

Ann Wilson 14980
Richard Campbell 15154
Robert Brown Jr. 15166
Susan Waters 15267
Charles Leslie Jr. 15301
Pamela Baker 15525
Allen Breeding 15537
Thomas Leary Jr. 15572
Nancy O'Hanlon 15664
Norman Nelson 15694
William Shurley 15954
Rick Deese 15979
Kenneth Griffin 15985
H. Stoneham III 16057
Jolinda Boelkins 16218
William Beal III 16368
Albert Fickling II 16376
Elizabeth Davison 16503
Stephen Moses 16771
Kathryn Jones 17211
Jerry Parks 17675
Eugene Smith 17692
Leslie Smith 17981
Cynthia Johnson 18796
Kenneth Query 18964
Kathleen Lopiano 19163
Elizabeth Caviness 19575
Mary Daly 19669
Izumi Woolley 20089
Roger Jones 20480
Donald Button 20540
Lori Cobb 20692
William Easton 20703
Stephen Nuckolls 20766
David Vines 20902
Patricia Jackson 21004
Ronald Smith 21640
Michelle Estes 21728
Arthur King 21911
Kim Greene 22087
Tom Eilers Jr. 22161
Gregory Clutter 22798
Tammy Bridges 22848

Chloe Redman-Johnson 22878
Kent Francois 22905
Cindy Campbell 23016
Michael Dickerson 23024
Dana Letchworth 23197
Kathryn Huff 23255
Joseph Mastaler Jr. 23265
Peter Waring 23482
Brett Green 23614
Sheree Ross 23689
Deborah Stephenson 23696
Sharon Pierce 23884
Laura Crandall 24413
Erika Rotheim 24497
Patricia Smith 24567
Thomas Rowlett 24718
Sandra Mattos 24918
Michael Gordon 25046
Jodi Frazier 25174
Elizabeth Mattson 25204
Carla Shumate 25219
Eric Setzer 25264
Martin Amundson 25403
James Briley Jr. 25406
Linda Coad 25470
Caralene Hewitt 25540
Lisa Konevitch 25762
Diane Mahoney 25768
Joel Good 25863
Sarah Greene 25975
Michael Ryan 26081
Tammie Cartledge 26097
Michael Wilson 26155
Paul Sipe 26284
Do Chun 26413
David Farren 26433
Sandra Meyer 26546
Brian Vernile 26833
Marc Blinderman 26879
Michelle Durner 26922
Erin Garrett 26928
Robert Knox 27257
David Crooke 27332

Richard Fedorowich Jr. 27341
Sean Nolan 27393
Donald Pagach 27399
Joseph Osborn 27697
Cathy Baxter 27947
Erica Smith 28193
Susan Almerez 28217
Sheryl Smith 28322
Janet Abbott 28376
Tracy Hamilton 28549
Jon Shell 28599
Patricia Maloney 28647
Derrick Steele 28732
George Knab 28756
Kirk Frohme 29016
Sarah Wilde 29058
Elizabeth Brown 29269
Zachary Miller 29376
Theresa Meza 29430
Matthew Molbert 29595
Lisa Pierce 29600
Maureen Sheehy 29607
Lindsay Hoppe 29706
Michael Addison 29777
Johnathan Smith 29930
Amy King 29948
Summer Cline 30048
John McCallum 30069
Wayne Peters 30072
Joseph Sandner IV 30126
Jennifer Buller 30171
Darci Bly 30479
Jennifer Rivers 30614
John Thomas 30647
Cynthia Tennill 30774
Christopher Duffell 30850
Joseph Pickett 30870
Sonja Speck 31077
Stathis Poulos 31185
W. Luper 31290
Kristina Manley 31376
Anthony Quinton 31393
William Brown III 31445

Scott Taylor 31512
Diana Miller 31561
Jill Burns 31563
Hazel Ryon 31567
Woodrow McDonald 31643
Patrick Mutongi 31736
Daniel Stewart 31819
Robert McEwan 31872
Thomas Lewis VI 31917
Patricia Siefken 31998
Peter Wilson Jr. 32082
James Liddy 32113
Lori Nelson 32134
Tonia Abbott 32135
Joanne Edelman 32142
Petrina Johnson 32298
Stephen Clarke 32397
Wesley Davis 32401
Cheryl Hennen 32431
Joseph Hanlon 32471
John Black 32484
Richard Tirrell 32506
Graham Wienke 32515
Robert Migliaccio 32538
Cheryl Lyon 32554
Haiti Feng 32583
Amy Nobs 32591
Alec Fahey 32616
Erin LeClair 32644
Jeffry Karr 32645
Preeti Mamani 32660
Douglas Bazley 32667
William Springs 32693
Michael Cavanagh 32713
Joseph Trepanier III 32726
Elizabeth Breen 32730
Carl Howes Jr. 32740
Andrew Preston 32749
Amanda Morrison 32777
Irene DeZwaan 32785
Erin Spaak 32816
Steven Harris 32876
Douglas Baker 32911

Svetlana Wolfe 32960
Meghan Metzler 32994
Robert Gibson 33000
Nathan Auman 33129

Andrew Wilcox 33196
Brenda Levin 33201
Ashley Bradshaw 33317

**Examinations –** The Committee reviewed and approved the following staff approved applicants to sit for the Uniform CPA Examination:

Beren Armstrong
Lindsey Averette
Jibolu Ayodele
Amanda Baltrucki
Krista Barnhill
Shannon Basquez
Donna Bembnister
Douglas Black
Adam Boatman
Stephen Bogdon
Kevin Bolick
James Bowman
Brandon Brake
Sandra Breitschwerdt
Wyona Brinegar
Andrew Brothers
Eugene Bruton
Lien Buchanan
Darren Buer
Karen Byrd
Tiffany Byrd
John Cali
Dana Carpenter
Sarah Carson
Kelley Carter
Mark Causey
Kenneth Cibik
Gregory Clark
Meghan Clark
Eddie Clifton
Scott Cohen
Charlene Cook Controne
Sierra Cooley
Catherine Davenport
John Dee

Matthew Dinkins
Joshua Downs
Carolyn Duke
John Dunn
Oliver Earney
Natalie Emory
Melanie Eveker
Jennifer Ford
Lisa Frank
Kevin Franks
Lewis Garber
Joseph Garrison
Sunny Gentry
Edward Gill
Karin Gillespie
Aaron Glicken
Mya Gonder
Katherine Granger
Brandon Gray
Shelly Ann Hakim
Richard Hardy
Deirdre Hart
Steven Hodges
Elizabeth Holt
Christopher Hughes
Matthew Hughes
Paragi Jariwala
Lori Johnson
Roberta Johnson
Alexander Jones
Daniel Kramer
Michael Lail
Jonathan Lambeth
Charmaine Lau
Jonathan Layne

Public Session Minutes
September 22, 2008
Page 9 of 10

Amanda Leong
Edward Linton
Heather Livingston
Ruben Lopez
Leo Lucisano
Sarah Luikey
Andrew Machek
John Marks
Lea Matthis
Kristin Mayo
Bellonora McCallum
Inge McCrory
Jennifer McNeilus
Renee McNutt
Debra Medlin
Erica Melton
Patrick Milburn
Jamie Miller
Justin Miller
Kymberly Mitro
Thomas Monte
Miranda Moore
Brandon Moorefield
Matthew Morse
Michelle Nowlin
Anastasios Omiridis
Rebecca Owens
Tara Parks
Kimberly Patterson
Sharla Payton
Stephen Peoples
Neil Peraza
Lori Perry
Paul Polk
William Porter
Dana Priddy
Anthony Privette
Stacee Rash
Matthew Rector
Jennifer Reilly
Olga Rivenbark

Allison Robbins
Bryant Robertson
Christopher Rodgers
Jeremy Russell
James Sandy
Paul Schaff
Jack Schaper
Adam Schuett
Vicki Shaffer
Roopa Shivaprasad
Olanrewaju Shofoluwe
Tony Siceloff
Megan Simpson
Sara Sloan
Jordan Smith
Kyle Smith
Paul Staley
Christopher Stanley
Joseph Talton
Nathan Tate
Toni Thereault
Marilou Thoman
Rebecca Thompson
Randall Tolbert
Nicholas Troia
John Vann
John Vogt
Tara Wagner
Andrew Walker
Matthew Walker
Jonathan Ward
Kelly Watson
Jennifer Weaver
Shauna Whitener
Elizabeth Whitmer
Robert Wiggins
Barry Williams
Matthew Wilson
Stephen Wilson
Carole Wilson Pesta
Brian Young

Staff reviewed and requests committee guidance regarding a CPA exam application. The Committee informed staff that the applicant should provide five moral character references who were aware of the applicant's criminal conviction. The applicant should also provide an explanation of the incident and explain how he/she has been rehabilitated.

**Request for Committee Guidance -** Staff reviewed and requested guidance regarding two hypothetical CPE situations that came about as a result of rule changes. The Committee considered both licensees to be compliant with Board rules.

**REPORT OF THE MOBILITY COMMITTEE:**  Mr. Jordan presented a clarification of certain aspects to the report and recommended actions on CPA mobility. Mr. Morgan, Chair of the NCACPA, made remarks regarding the NCACPA's position on CPA mobility. Executive Staff and Legal Counsel were instructed to write mobility legislation, which includes firm registration, pursuant to UAA Section 23 and to maintain the Board's "CPA = CPA" position without penalizing individuals from jurisdictions that are not considered substantially equivalent.

**PUBLIC HEARING:**  President Winstead called the Public Hearing to order to hear Case No. 20072860 and Case No. 20085431 - Walter Jeffrey Daniel, CPA #9843 and W. Jeffrey Daniel, CPA, PA. Mr. Daniel was not present at the Hearing nor was he represented by counsel at the Hearing. Mr. Brooks was sworn in and presented testimony. Messrs. Cox and Clark moved to approve a Board Order permanently revoking the North Carolina CPA certificate issued to Walter Jeffrey Daniel by the Board and suspending the registration for the firm, W. Jeffrey Daniel, CPA, PA. Motion passed with seven (7) affirmative votes and zero (0) negative votes. The entire Public Hearing is a matter of public record (Appendix IX).

**ADJOURNMENT:**  Ms. Lynch and Mr. Barber moved to adjourn the meeting at 3:45 p.m. Motion passed.

Respectfully submitted:                              Attested to by:


Robert N. Brooks                                      Arthur M. Winstead, Jr., CPA
Executive Director                                    President

## DECLARATORY RULING

**RE:**              Including Network Name in Partnership Firm Name

**PETITIONER:**      Crowe Chizek & Company LLC ("Crowe")
                     PO Box 3697
                     Oakbrook, Illinois 60522-3697

**DATE REQUESTED:**  May 16, 2008

**QUESTION:**        Crowe is a member of Horwath International, an association
                     or network of businesses which includes, but is not limited
                     to, registered accounting firms.  Although an individual
                     CPA named Horwath was a partner in a registered CPA firm
                     named Laventhol and Horwath, the individual named
                     Horwath is deceased and his CPA firm was dissolved
                     through bankruptcy proceedings.  Neither the deceased
                     individual nor the demised firm has been partners in Crowe
                     or any CPA firm named Horwath International.

                     Can Crowe include "Horwath," a brand name based upon a
                     deceased CPA, in its partnership firm name even though no
                     individual licensee named "Horwath" was ever a partner in
                     Crowe and the entity which owns the Horwath brand,
                     "Horwath International", is a non-owner and is not
                     authorized to practice public accountancy anywhere in the
                     world?

**ANSWER:**          No.

## I.    Procedural History

On October 1, 2007, Crowe Chizek & Company, LLC (but registered in North Carolina as Crowe Chizek & Company, PLLC) ("Crowe") informed the Board staff, that the firm desired to change its name to Crowe Horwath LLP.  By letter dated November 16, 2007, the Board staff indicated its belief that the name change appeared to be contrary to the law because the use of "Horwath" in the firm name could have the capacity or tendency to deceive the public.

On May 16, 2008, Crowe submitted a Declaratory Ruling request.  By consent the Board's hearing on the request commenced on July 19, 2008.  Because of the large volume of new documents provided by Crowe at that hearing, by agreement, the Board reconvened the hearing on September 22, 2008.

1

## II.    Summary of Contentions

In support of its request, Crowe asserts that in order to compete effectively in a global economy, Crowe became a member firm of Horwath International which is composed of over one hundred "independent" member firms from various countries around the world, each practicing according to local laws and customs.  Crowe claims that use of "Horwath" in the firm name was a conforming use of the Horwath brand and was being imposed as a condition of membership in the organization.  The Board's staff presented evidence that an officer of Crowe chaired the Horwath International marketing committee which had agreed upon the requirement, and that the applicable Board rules already allow Crowe to freely market its relationship with Horwath International by reference to its network membership in its letterhead and marketing materials.

Crowe also contends that the proposed name is not deceptive.  At the July hearing, Crowe offered the opinion of a professor of marketing that the firm's use of the Horwath brand could help the firm compete and that clients would not be deceived because of the firm's proposed use of disclosure language in its engagement agreements.  On the other hand, the Board's staff noted that the Board's duty is not just to protect clients, but also the members of the public who rely upon Crowe's reports yet might not see the disclosures in engagement letters.   Additionally, the American Institute of Certified Public Accountants (AICPA) has studied this issue and appears to have reached the conclusion that disclosure is an inadequate safeguard.  Further, even though this declaratory ruling involves a hypothetical firm, the Board's staff also presented substantial evidence that the proposed name has the capacity or tendency to deceive in several ways.  For example, the staff presented evidence that clients and the public have already been misled to believe that Horwath International is, itself, a bona fide accounting firm (it is not), that the partners of the member firms are in partnership with each other (they are not), and that Horwath International has a long heritage of nearly a century as a professional services firm (it does not).

Crowe additionally urges unless it is allowed to include "Horwath" in its partnership name, it will not be able to compete effectively with other "grandfathered" firms such as BDO Seidman LLP, Grant Thornton LLP, or KPMG LLP.   Crowe further asserts that there are no reasonable differences with the grandfathered firm names.  The Board's staff pointed out that those other firms are substantively different from Crowe's proposed situation and that North Carolina courts have recently upheld the Board's "grandfathering" rules against a similar attack.

Finally, Crowe has asserted the Board should rule that the proposed name is not deceptive because a majority of other states have already "approved" the name.  By contrast, the Board's staff pointed out that it is still unclear how many states have formally "approved" the proposed name, that not all states have done so, and that not only the base facts but also the applicable laws are different from state to state.

2

### III.    Applicable Statutes and Rules

Although Crowe argues otherwise, this interpretation should not be limited to the application of one or two rules out of context.  Thus the answer to Crowe's request involves several statutes and rules, including:   NC Gen. Stat. § 93-12 (CPA Board powers), NC Gen. Stat. § 150B-2(6) (person aggrieved), NC Gen. Stat. § 55B-5 (Professional Corporation names), NC Gen. Stat. § 55D-20(b), NC Gen. Stat. § 59-84.3 (names of registered limited liability partnerships), 21 NCAC 08N .0202 (defining deception), 21 NCAC 08N .0302(a) (forms of practice), 21 NCAC 08N .0307 (firm names), 21 NCAC 08K .0201(c) (use of CPA in firm name), as well as other rules and standards of practice applicable to all registered firms.

In particular, 21 NCAC 08N .0307 states in pertinent part:

> (a) Deceptive Names Prohibited. A CPA or CPA firm shall not trade upon the CPA title through use of any name that would have the capacity or tendency to deceive.  The name of one or more former members of the CPA firm, as defined in 21 NCAC 08A .0301, may be included in the CPA firm name.  The name of a non-CPA owner in a CPA firm name is prohibited.

> (b) Style of Practice. It is considered misleading if a CPA firm practices under a name or style which would tend to imply the existence of a partnership or registered limited liability partnership … of more than one CPA shareholder or CPA member or an association when in fact there is no partnership nor is there more than one CPA shareholder or CPA member of a CPA firm….

Further, 21 NCAC 08N .0202 which states in pertinent part:

> (a) Deception Defined. A CPA shall not engage in deceptive conduct.  Deception includes fraud or misrepresentation and representations or omissions which a CPA either knows or should know have a capacity or tendency to deceive. Deceptive conduct is prohibited whether or not anyone has been actually deceived.

### IV.    Discussion, Findings and Conclusions of Law

Based upon the record, including hundreds of pages of exhibits submitted by Crowe and by the Board's staff, as well as the information received at the hearings on this

3

matter, the Board rules for the reasons set out below that the proposed name "Crowe Horwath, LLP" has the capacity or tendency to deceive the public and thus would be contrary to applicable North Carolina statutes and rules.

### A. The proposed name, in and of itself, would have the capacity or tendency to deceive because the "Horwath" is not the name of a present or former partner, but is only a brand owned by a third party non-licensee non-owner.

Rule 21 NCAC 08N .0307(a) only expressly permits CPA firms to bear the names of "present or former members of the CPA firm." Rule 21 NCAC 08A .0301(b)(25) defines "Member of a CPA firm" as "any CPA who has an equity ownership interest in a CPA firm." Crowe concedes that "Horwath" is not a present or former member of the firm, nor a predecessor firm, but argues that the Board should interpret that provision in the rule as permissive rather than exclusive, and, instead, evaluate the proposed name on the basis of whether or not it is deceptive. Even if that is the correct approach, the proposed name is unacceptable because including "Horwath" in the name does not accurately describe Crowe as member of the Horwath International network; it would proclaim that something or someone named "Horwath" is or was a licensee and is or was a partner in the firm. In line with this rule is the statute which requires that only the names of general partners can be in the name of a limited liability partnership. NC Gen. Stat. § 55D-20(b) (name of a limited partnership shall not contain the name of a limited partner).

Crowe, itself, has limited, or no vested, protectable right in the name "Horwath." Crowe, does not actually own the brand "Horwath." The record shows that the "Horwath" trademark is owned by a non-CPA entity called Horwath International Registration, Ltd. Corporation, pursuant to a registration dated October 16, 1990. One month later, the accounting firm of Laventhol and Horwath filed for bankruptcy which ended in liquidation in 1992. At that time, there were still unresolved issues with this Board regarding allegations of substandard audit work by the firm of Laventhol and Horwath. It appears that approval of the proposed name would provide Crowe with the benefit of a "Horwath" brand identification without the financial or regulatory burden of responsibility for the prior entity's conduct. Thus, although coincidentally, the name "Horwath" happens to be the name of a deceased licensee, the brand name "Horwath" is neither a living licensee nor a natural person nor a person with a past or present ownership interest in the firm Crowe Horwath LLP. Crowe has conceded in the record that "Horwath" never has had an equity interest in Crowe.

The "Horwath" in Crowe's partnership name is a brand name also used by hundreds of businesses who are not now, never have been, and legally never could be the same as the other names in the firm's name: owner-licensees. To the extent the names in a professional partnership still communicate to the public all that goes with the status of owner-licensee, as partnership names have done for over one hundred years of accountancy regulation, the addition of "Horwath" in Crowe's firm name would not

4

merely "have the capacity or tendency to deceive," but would be false. Our courts have repeatedly upheld narrow restrictions on commercial speech, and, indeed, quite recently made it clear that there is no right to use a deceptive, much less a false name in a partnership name.

As the Kansas Board of Accountancy initially determined in response to Crowe:

> It is further understood that the name "Horwath" refers to an individual who is deceased and who is not personally affiliated with Crowe Horwath LLP. Respondent has provided no information to suggest that Mr. Horwath was a past partner, member or shareholder of Crowe Chizek and Company LLC or Crowe Horwath LLP.

In reasoning that is consistent with this Board's, the Kansas Board also initially determined that the proposed name was unacceptable because:

> …such a name may not include the name of an individual who is neither a present nor a past partner, member or shareholder of the firm or its predecessor and it may not include the name of an individual who is not a certified public accountant.

Crowe has appealed the Kansas ruling, but the reasoning of the Kansas Board still appears sound.

Although Crowe expressly referenced the AICPA Model Code of Conduct at the hearing on this request (Hr'g Tr. 55-57, 93, 133, Jul. 21, 2008), that revision to the Code has not yet been adopted either by the AICPA or, by reference, this Board, and still appears to prohibit precisely the name change Crowe proposes. Indeed, the current AICPA Model Rule of Conduct has been expressly interpreted to prohibit the sort of name which Crowe now requests. As provided in the current interpretations:

> 179. Practice of Public Accounting under Name of Association or Group
>
> .357 Question—Several CPA firms wish to form an association or group whereby certain joint advertising, training, professional development and management assistance will take place. The firms will otherwise remain separate and distinct. Would it be proper for such firms to practice public accounting under the name of an association or group in the United States?
>
> .358 Answer—<u>The practice of public accounting under such a name in the United States is not permitted since it would</u>

> be likely to confuse the public as to the nature of the actual relationship which exists among the firms. Instead, each firm should practice only in its own firm name and may indicate the association or group name elsewhere on the firm stationery. Each firm may also list on its stationery the names of the other firms in the association or group.

The change which Crowe cites in response to the Board's concerns about the lack of independence within the network, if approved, would not be effective until December 2010. Implementation in this state would likely require rule changes including a new definition of the term "firm." In short, Crowe's reliance on the AICPA Model Code as a justification for the proposed name change is misplaced or premature.

**B.      The record includes substantial evidence that the proposed name has the "capacity or tendency to deceive."**

This Board's rule on deceptive firm names is narrowly drawn and does not prevent Crowe from communicating any truthful information. Nothing in the North Carolina laws and rules restricts Crowe from truthfully marketing its actual relationship with the Horwath International network or from truthfully marketing itself as part of a large, worldwide network of firms. The rules only prohibit firm names and marketing which have a capacity or tendency to deceive. Aside from the obvious (that no licensee named Horwath ever was a partner in the Crowe firm), there is also substantial evidence in the record that the use of "Horwath" in the actual firm's name has the capacity or tendency to deceive the public.

Although it is often difficult to have "evidence" of how a hypothetical name is deceptive, under the rules previously cited, the Board must only determine whether a proposed firm name has the "capacity or tendency to deceive." In light of that standard under the rules and the Court of Appeals holding in *McGladrey & Pullen, LLP v. N.C. State Bd. of CPA Examiners*, 171 N.C. App. 610, 615 S.E.2d 339 (2005) which upheld the Board's finding that a proposed firm name had a capacity or tendency to deceive based on similar facts, the record contains substantial evidence of a "capacity or tendency to deceive."

(1)      The adoption of the network name "Horwath" in Crowe's partnership name has a capacity or tendency to deceive the public because "Horwath" already portrays itself as a real accounting "firm" even though it is not. The record includes numerous overt representations by Horwath International as well as current members of its network. Indeed, Horwath International's self-proclaimed "vision" is to be known as a professional services firm. The record further shows that as a result third party and press reports have incorrectly portrayed Horwath International is a "firm" when, of course, it is not. Indeed, as was the case in *McGladrey*, the Record includes SEC filings identifying Horwath International as an independent auditor.

6

(2)     The adoption of the network name "Horwath" in Crowe's partnership name has a capacity or tendency to deceive employees, clients, and the public because Horwath International already portrays the principals of the firms in its network as "<u>partners</u>" when, in fact, Crowe concedes that they are *not* partners.  Again, the record includes Horwath International members' own websites containing statements to the effect that they have over 15,000 "partners" in Horwath International.  The record includes third party and press reports indicating that the public already hasmisperceived the relationship of the individual owners of the member firms as partners in Horwath International.

(3)     Horwath International as well as some of its current network members encourages the erroneous impression that it has a long heritage of nearly a century of providing accounting services.  The record shows that the actual history of Horwath International is quite different.  Horwath International was at most a spin-off of Laventhol and Horwath which went bankrupt in the early 1990s.  It appears from the record that at that time, every effort was made to distinguish Horwath International as an entirely separate entity whose assets, if any, and membership, if any, were entirely separate from the firm Laventhol and Horwath.  There appears to be no direct legal connection between Laventhol and Horwath or Horwath and Horwath as predecessor firms or owners of Horwath International.  It is noteworthy, despite Horwath International's attempts to tie its claim to a century of history based upon its rights to the name Horwath, the 1990 trademark registration disclosed that its *first use in commerce* was in 1989.

(4)     The adoption of the network name "Horwath" in Crowe's partnership name has a capacity or tendency to deceive the public because Horwath International already portrays itself as a large professional accounting entity even though it is not.  The record includes representations by Horwath International in its newsletters and on its website as well as by current members of its network to the effect that it is an accounting or "professional services firm."  The record also includes third party and press reports incorrectly concluding that the Horwath International network is a professional accounting entity when, of course, it is not.  The record shows that, in fact, Horwath International includes numerous non-accounting firms such as investment advisors, bankers, and other entities not regulated under any state or country's accountancy licensing laws.  The record includes substantial evidence such as SEC filings and press accounts showing that clients and the public already misperceive the true nature of the Horwath International network.  In the *McGladrey* case, the Court of Appeals cited similar evidence in support of the Board's finding that the proposed name had a capacity or tendency to deceive. 171 N.C. App. at 615-16, 615 S.E.2d at 343.  There the public mistakenly believed non-accounting affiliates of RSM International were CPA firms. *Id.*

7

(5)    The deceptive capacity in the use of "Horwath" is compounded by the potential that not only consumers, but the public (third parties who rely upon CPA firms' audits and other attest work) would also assume that affiliated entities also bearing the brand name "Horwath" are also qualified as licensees and obligated to comply with professional standards such as those requiring licensees to be independent or objective. Other concerns include: (a) Horwath International apparently has the sway over its members such as Crowe to "mandate" use of "Horwath" in its partnership name despite the prohibition against a licensee subordinating its judgment to the will of a non-licensee; (b) unlike distant offices within a traditional CPA firm, the members of the network apparently do not agree to observe the independence requirements that are fundamental to attest services; (c) unlike traditional CPA firms, the Horwath association (or network) would not be subject to a peer review; and (d) unlike traditional CPA firms, the unlicensed members of the Horwath network who render professional services in this state apparently would not agree to be subject to the Board's jurisdiction.

## C.    Crowe's proposed arrangement is not identical to the other firms it cites.

Crowe has urged that its proposed name is like the names of other similarly situated firms licensed in North Carolina.  For example, Crowe argues that "Laventhol & Horwath's international affiliate was Horwath & Horwath International, similar to KPMG and KPMG International as well as BDO Seidman, LLP and BDO International." Every firm identified by Crowe falls into one or more of the following categories that make each substantially different from Crowe:  (1) the firm name was grandfathered pursuant to Board rules adopted in 1999; (2) the firm name is a combination of names from firms that actually merged; and, (3) the affiliated international entity's name was derived from the CPA firm's name (rather than vice versa as would be the case for Crowe).  As explained above, Crowe's proposed name is new and not qualified for grandfathering, Crowe is not merging with "Horwath" and the international network, and Crowe would have no right to the "Horwath" name except as a licensee.  In line with the rules, this Board's application of its grandfathering rule, NC Gen. Stat. § 55B-5 provides that the Board may limit the names that professional corporations may use, but such regulations "may not prohibit the continued use of any corporate name duly adopted in conformity with the General Statutes and with the pertinent licensing board regulations in effect at the date of such adoption."  Regardless, the *McGladrey* decision suffices as the last word on this point. In *McGladrey*, the Court of Appeals held that this Board's treatment of firms such as Grant Thornton is "easily distinguishable" because those firms are international public accounting firms as opposed to networks of accounting and non-accounting firms.  *McGladrey*,  171 N.C. App. at 616-17, 615 S.E.2d at 343-44.  Crowe argues that although it is identical to these other firms, and that it is different from *McGladrey*, yet, unlike *McGladrey*, Crowe has refused to provide copies of agreements or other documents which would assist the Board in understanding the true nature of the relationship among the various CPA firm members, non-CPA members and the Horwath network.

Crowe contends that it should be allowed to use a non-licensee, non-owner brand name so that it can compete with the larger accounting firms in international commerce. Crowe has not presented evidence of a single potential client it has lost as a result of the Board's rule. The registered CPA firms mentioned in Crowe's ruling request are real "firms." Horwath International is *not* a "firm," much less a CPA firm – it is only a network or association of firms. The difference between a bonafide CPA firm and Horwath International is substantial and confusing. And, according to the information provided by Crowe, although some members are accounting firms, many members are nowhere authorized to engage in the practice of public accounting, but offer a variety of other services. Regardless of whether or not the network members are licensed as CPA or Chartered Accountant firms, Crowe indicates that the marketing plan is to brand all members collectively under the banner of "Horwath."

The record shows that other professions such as attorneys have required professional corporations to render services through partnerships bearing only the names of living or deceased licensed professionals who are practicing or once practiced in the firm, owned the firm, were individually liable for the firm's professional negligence, were personally responsible for the firm's compliance with professional standards, shared in the profits and losses of the firm, and individually obeyed the laws and rules that every other partner had to obey. For the traditional accounting firm mentioned by Crowe, those presumptions remain valid for the members of the firm. Yet, Crowe admits in the record that such would not be true for other member firms in the network bearing the brand name "Horwath." This is not a technical difference. This is a substantive difference deeply rooted in the statutes and rules as well as the common law. If it were of no matter, and it were permissible to insert a brand name into a partnership's name as though the plethora of unlicensed businesses it stood for were the same as real partners, then there would be little meaning or purpose for professional corporations, limited liability partnerships, or professional limited liability companies. Crowe's desire to compete internationally is commendable, but it does not have a right to include the name of a non-owner, non-licensee brand name it does not own in its partnership name in order to make it appear to be a CPA firm as big as competing international accounting firms when it is not.

### D. Crowe's claim that other states' have already approved its proposed name does not oblige this Board to ignore evidence or North Carolina law.

Crowe asserts a bandwagon effect as another reason for approving the proposed name regardless of whether or not it has the capacity or tendency to deceive. But, the number of approving states is unclear from the record. In Crowe's September 27, 2007 letter, it claimed that "over 35" states including Virginia, had "approved" the proposed name, but that in new evidence Crowe claimed "approval" in 32 states but *not* in Virginia. In Crowe's March 17, 2008, request to the Kansas Board of Accountancy, it claimed that "over 30 other states" had approved the proposed name, but made no mention of North

9

Carolina's position. Later, in a May 2008 request to the Kansas Board, Crowe claimed that "as of May 1, 2008, thirty-seven states approved the proposed name change...." A review of the various emails and other correspondence of record from different states indicates that in the light most favorable to Crowe, it is unclear as to how many states have actually, consciously or formally "approved" the proposed name, that basic facts (such as the ownership of the firm) have changed, and that the applicable statutes and rules have been different among the states. It is noteworthy that Kansas, which formally ruled against Crowe's request several months ago, is, like North Carolina, one of a few so-called "title" states (where only the CPA title and not the practice of public accountancy is restricted). Additionally, unlike most states, North Carolina's rules specifically define "deception" (consistent with other North Carolina consumer protection laws) to include the "capacity or tendency to deceive." Regardless, this Board is obliged by law to apply this state's rules to protect this state's citizens.

## V.    CONCLUSION:

Inasmuch as there is substantial evidence that Crowe's proposed use of a network brand in its partnership name would have the capacity or tendency to deceive as prohibited by the Board's rules, it is also incongruous that the Board might approve such a usage in light of the fact that Rule 21 NCAC 08N.0307 also prohibits the use of a non-licensee owner in a firm name. The fact that the non-licensee (Horwath) is also *not* an owner does not cure the problem, but would compound it. *See McGladrey*, 171 N.C. App. at 617, 615 S.E.2d at 343.

For the reasons set out above, the Board rules that based upon the hearing and other information in the record, the proposed name would not be permitted under the applicable statutes and rules.

Approved by the Board
September 22, 2008

Vice-President

10

NORTH CAROLINA          BEFORE THE NORTH CAROLINA STATE BOARD OF
WAKE COUNTY             CERTIFIED PUBLIC ACCOUNTANT EXAMINERS
                        CASE #200609-070-1, 200609-070-2, and 200609-070-3

IN THE MATTER OF:
James Franklin Baker, #3096
Jeffery Bruce Baker, #32566                 SUPPLEMENTAL
James F. Baker, C.P.A., P.A.                <u>CONSENT ORDER</u>
    Respondents

THIS CAUSE, coming before the Board at its offices at 1101 Oberlin Road, Raleigh, Wake County, North Carolina, with a quorum present.  Pursuant to NCGS 150B-41, the Board and Respondents stipulate the following Findings:

1.    Respondent James Franklin Baker (hereinafter "Respondent James Baker") is the holder of North Carolina certificate number 3096 as a Certified Public Accountant.

2.    Respondent Jeffery Bruce Baker (hereinafter "Respondent Jeffery Baker") is the holder of North Carolina certificate number 32566 as a Certified Public Accountant.

3.    Respondent James F. Baker, C.P.A., P.A. (hereinafter "Respondent Firm") is a registered certified public accounting corporation in North Carolina.

4.    In July of 2007, the Board approved a Consent Order with Respondents regarding deficiencies in audits performed by Respondents.

5.    Said Consent Order suspended Respondent James Baker from participating in, reviewing, or performing audits of any government unit or audits of any component unit of a government unit for five (5) years and required Respondent Jeffrey Baker on behalf of Respondent Firm to obtain pre-issuance review of all audits of government units and component units of government units.

6.    Respondent Jeffrey Baker on behalf of Respondent Firm and in accordance with said Consent Order has continued to participate in, review, and perform audits of eight (8) governmental units and/or component units.

NC
SEP 2- 2008
CPA

Consent Order - 2
James Franklin Baker, et al.

7.    Pursuant to the prior Consent Order, Board staff has reviewed seven (7) pre-issuance review reports issued by the pre-issuance reviewer of the audits performed by Respondent Firm.  Based upon its review of said reports, Board staff determined that there continued to be numerous errors and deficiencies in each of the audits, numerous violations of both generally accepted accounting principles and auditing standards, and no improvement in audit quality, even after seven (7) pre-issuance reviews.

8.    Additionally, an audit report for a county required by the Local Government Commission to be issued on or before October 31, 2007, was not submitted to the pre-issuance reviewer by Respondent Firm until June 2008.

9.    Respondents wish to resolve this matter by consent and agree that the Board staff and counsel may discuss this Consent Order with the Board *ex parte*, whether or not the Board accepts this Consent Order as written. Respondents understand and agree that this Consent Order is subject to review and approval by the Board and is not effective until approved by the Board at a duly constituted Board Meeting.

BASED upon the foregoing, the Board makes the following Conclusions of Law:

1.    Respondents are subject to the provisions of Chapter 93 of the North Carolina General Statutes (NCGS) and Title 21, Chapter 8 of the North Carolina Administrative Code (NCAC), including the Rules of Professional Ethics and Conduct promulgated and adopted therein by the Board.

2.    Respondents' actions as set out above constitute violations of NCGS 93-12 (9) e and 21 NCAC 08N .0103, .0201, .0209, .0212, .0403, and .0405.

BASED on the foregoing and in lieu of further proceedings under 21 NCAC Chapter 8C, the Board and Respondents agree to the following Order:

1.    Respondent Firm, Respondent James Baker, and Respondent Jeffrey Baker are suspended from participating in, reviewing or performing audits, reviews of financial statements, compilations of financial statements, or agreed-upon-procedures for any entity for five (5) years.  After five (5) years, Respondent Firm, Respondent James Baker, and Respondent Jeffrey Baker may petition the Board for reinstatement of the privilege to offer, participate in, perform, and review the above services.  Any request for the reinstatement of said privileges would include evidence of steps taken by Respondent Firm, Respondent James Baker, and Respondent Jeffrey Baker to assure the Board that they would be able to offer and perform audits, reviews of financial statements, compilations of financial statements, and agreed-upon-

NC BOARD OF
Received
SEP 2- 2008
CPA EXAMINERS

Consent Order - 3
James Franklin Baker, et al.

procedures in a competent manner. A condition of said privilege, in the discretion of the Board, may be a requirement that Respondent James Baker and Respondent Jeffrey Baker retake and pass the audit portion of the Uniform CPA Examination or its equivalent.

CONSENTED TO THIS THE ___21ˢᵗ___ DAY OF _August_____, 2008.

_____
Respondent James Baker

_____
Respondent Jeffrey Baker

_____
Respondent Firm

APPROVED BY THE BOARD THIS THE ___22___ DAY OF _September___, 2008.

NORTH CAROLINA STATE BOARD OF CERTIFIED
PUBLIC ACCOUNTANT EXAMINERS



BY: _____
President



NORTH CAROLINA      BEFORE THE NORTH CAROLINA STATE BOARD OF

WAKE COUNTY      CERTIFIED PUBLIC ACCOUNTANT EXAMINERS

                           CASE #:  C20081514

IN THE MATTER OF:

Hugh O. Queen, # 21127                     <u>CONSENT ORDER</u>

    Respondent

THIS CAUSE, coming before the Board at its offices at 1101 Oberlin Road, Raleigh, Wake County, North Carolina, with a quorum present.  Pursuant to NCGS 150B-41, the Board and Respondent stipulate the following Findings:

1.     Respondent is the holder of North Carolina certificate number 21127 as a Certified Public Accountant.

2.     Respondent was engaged to prepare joint tax returns for clients.

3.     Prior to filing a tax extension, Respondent failed to inform the clients that interest and penalties would begin to accrue with the filing of the extension if the clients had not had taxes withheld during the tax year or if the clients had not submitted the estimated taxes due with the filing of the extension.

4.     When Respondent prepared the return and the clients filed the returns, taxes were owed by the client and the clients incurred interest and penalties on the unpaid taxes.

5.     Respondent wishes to resolve this matter by consent and agrees that the Board staff and counsel may discuss this Consent Order with the Board *ex parte*, whether or not the Board accepts this Consent Order as written. Respondent understands and agrees that this Consent Order is subject to review and approval by the Board and is not effective until approved by the Board at a duly constituted Board Meeting.

BASED upon the foregoing, the Board makes the following Conclusions of Law:

1.     Respondent is subject to the provisions of Chapter 93 of the North Carolina General Statutes (NCGS) and Title 21, Chapter 8 of the North Carolina Administrative Code (NCAC), including the Rules of Professional Ethics and Conduct promulgated and adopted therein by the Board.

NC BOARD
Received
AUG 18 2008

Consent Order - 2
Hugh O. Queen

2.   Respondent's actions as set out above constitute violations of 21 NCAC
     8N .0211 and .0212 (2).

     BASED on the foregoing and in lieu of further proceedings under 21 NCAC Chapter
8C, the Board and Respondent agree to the following Order:

1.   Respondent is censured.

CONSENTED TO THIS THE ____8____ DAY OF ___AUGUST_____, 2008.


_____Hugh O Queen_____
Respondent

APPROVED BY THE BOARD THIS THE __22__ DAY OF __September__,
2008.

NORTH CAROLINA STATE BOARD OF CERTIFIED
PUBLIC ACCOUNTANT EXAMINERS


BY: _____
    President



Appendix IV

| | |
|---|---|
| NORTH CAROLINA | BEFORE THE NORTH CAROLINA STATE BOARD OF |
| WAKE COUNTY | CERTIFIED PUBLIC ACCOUNTANT EXAMINERS |
| | CASE #s: C20085877 |

| | |
|---|---|
| IN THE MATTER OF: | EMERGENCY ORDER |
| James Kar, #29579 | FOR REVOCATION and NOTICE |
|    Respondent | |

Upon substantial evidence, the Board finds that Respondent has engaged in general and specific conduct demonstrating that he is no longer fit to continue to hold a certificate as a Certified Public Accountant. Specifically, prior to and during the period of time in which he has been a licensee and has been engaged in rendering accounting services to the public, there is substantial evidence that Respondent committed each of the following acts or omissions in violation of the North Carolina accountancy laws and rules [GS §93-3, 93-4, 93-6, 93-12 (9) e, and 21 NCAC 8N .0202, and .0203 (b)(3)]:

1.  Respondent James Kar (hereinafter "Respondent") is the holder of North Carolina certificate number 29579 as a North Carolina certified public accountant.

2.  From July of 1990 through May of 2002, Respondent was duly licensed as a CPA in the State of Oregon. In May of 2002, Respondent signed and accepted a Consent Order in which he consented to the revocation of his Oregon license based on his agreement to plead guilty to a felony. (Exhibit 1)

3.  Prior to signing the Consent Order with the Oregon Board of Accountancy, Respondent submitted, in April of 2002, an application to the North Carolina State Board of CPA Examiners (NC Board) for a reciprocal license based on his Oregon license.

4.  Despite being arrested and charged, on said North Carolina license application, Respondent failed to affirmatively respond to the Moral Character Data request, "Have you been charged, arrested, convicted, found guilty of, or pleaded *nolo contendere* to any criminal offense?".

5.  Despite being under investigation, on said North Carolina license application, Respondent failed to affirmatively respond to the Moral Character Data request, "Have you been investigated, charged or disciplined or are currently under investigation by a governing or licensing board or by a state or federal agency?".

6.  During the pendency of his licensure application, Respondent failed to inform the NC Board of his felony conviction in Oregon or of the Oregon Board's revocation of his Oregon license.

Emergency Order - 2
James Kar

7.    Absent the relevant information regarding his arrest and conviction and the investigation and his revocation, the NC Board granted Respondent a North Carolina license in July of 2002.

8.    Beginning with his July 1, 2003, – June 30, 2004, through his July 1, 2008, – June 30, 2009, annual license renewals, Respondent failed to inform the Board of any charges or convictions against him, any investigation of his actions, or any revocation of his license.

9.    Respondent's failures to inform the NC Board of his Oregon arrest and felony conviction represent violations of NCGS 93-12 (9)a, b, and d, and 21 NCAC 8F .0502, 8N .0203, .0204, and .0207.

10.   Respondent's failures to inform the NC Board of the investigation and revocation of his license represent violations of NCGS 93-12 (9)c and e, and 21 NCAC 8F .0502, 8N .0202 (a), .0202 (b)(3), and .0204.

11.   The Board finds that in light of the seriousness of the allegations and substantial evidence establishing the conduct in question, as well as evidence of the imminent danger of continued and irreparable harm to the public, that the public welfare requires this emergency action.

The Board therefore issues this Emergency Order, pursuant to N.C.G.S. §150B-3(c), to revoke Respondent's certificate as a Certified Public Accountant.  This Order is effective immediately at the time of service of this Order upon Respondent, and shall remain in effect until this proceeding may be concluded pursuant to NCGS §150B.  This Order shall constitute the Notice of Hearing to be held for this matter in the Board Office on February 16, 2009, at 10:00 a.m.

Adopted by a vote of __5__ to __0__ by the Board on this the __22__ day of _September_, 2008.



NORTH CAROLINA STATE BOARD OF CERTIFIED
PUBLIC ACCOUNTANT EXAMINERS


BY: _____
              President

1
2

**BEFORE THE**
**BOARD OF ACCOUNTANCY**
**STATE OF OREGON**

3  In the Matter of:                          )        CASE NO. 02-03-019
                                             )
4  James Kar, License No. 6445               )        CONSENT ORDER
                                             )
5  ──────────────────────────────            )

6        The Board of Accountancy (Board) is the state agency responsible for licensing and

7  regulating the practice of certified public accountants in the State of Oregon. James Kar ("Kar")

8  holds License No. 6445, issued by the Board on July 17, 1990.

9        1. Kar has agreed to plead guilty to a felony violation of ORS 166.720, related to

10  racketeering activity, an essential element of which is dishonesty.

11        2. As a part of the plea agreement, Kar has agreed that the circuit court may enter an order

12  revoking his license to practice as a certified public accountant (CPA) pursuant to ORS

13  166.725(1)(d).

14        3. The circuit court has ordered the revocation of Kar's license to practice as a CPA.

15        4. Kar agrees that the Board may revoke his license to practice as a CPA.

16        5. The Board revokes Kar's license to practice as a CPA based upon the order of the

17  circuit court, Kar's agreement, and ORS 673.170(2)(h).

18        6. Kar waives all rights to a contested case hearing or any further appeal of the

19  revocation.

20        _____
              James Kar
21            Date: _____5/1/02_____

22

23        IT IS SO ORDERED this _20th_ day of _May_, 2002.

24        BOARD OF ACCOUNTANCY
          State of Oregon
25
          By: _____
26            BOARD CHAIR

PAGE 1 - CONSENT ORDER (Kar) (GENB8290)

Exhibit 1

| NORTH CAROLINA | BEFORE THE NORTH CAROLINA STATE BOARD OF |
|---|---|
| WAKE COUNTY | CERTIFIED PUBLIC ACCOUNTANT EXAMINERS |
| | CASE #: C20085882 |

| IN THE MATTER OF: | EMERGENCY ORDER |
|---|---|
| Etim J. Udoh, #29680 | FOR REVOCATION and NOTICE |
| Respondent | |

Pursuant to North Carolina General Statute (NCGS) 150B-3(c), the Board finds that there is substantial evidence that Respondent has engaged in general and specific conduct demonstrating that he is no longer fit to continue to hold a certificate as a Certified Public Accountant. Specifically, during the period of time in which he has been a licensee and has been engaged in rendering accounting services to the public, there is substantial evidence that Respondent committed each of the following acts or omissions in violation of the North Carolina accountancy laws and rules, NCGS 93-12 (9) e, and 21 NCAC 8N .0202, .0203, .0204, and .0207.

1.  Respondent Etim J. Udoh (hereinafter "Respondent") is the holder of North Carolina certificate number 29680 as a certified public accountant.

2.  While he licensed as a certified public accountant, Respondent was registered with the Board as an individual practitioner firm.

3.  In March of 2008, Respondent was arrested and charged with six (6) counts of obtaining property under false pretense.

4.  On July 21, 2008, the Honorable Allen Baddour, Superior Court Judge of Wake County, accepted Respondent's guilty plea to two (2) felony counts of obtaining property under false pretense. Respondent was sentenced to from five (5) to six (6) months in prison, but said prison sentence was suspended and Respondent was placed on twenty-four (24) months of supervised probation. Respondent was assessed fines, court costs, and community service fees totaling $2,441.50. Respondent was required to complete one hundred (100) hours of community service within the first one hundred eighty (180) days of his probation. Further, Respondent was required to file accurate amended tax returns and pay any taxes owed within the first six (6) months, to timely and accurately file and pay all state and federal tax returns, to cease preparing or assisting in any manner with the preparation of any tax returns other than his own, and instructed that restitution will be determined by the probation officer after tax returns are filed.

Emergency Order - 2
Etim J. Udoh

5.  On his July 1, 2008,-June 30, 2009, annual license renewal, Respondent
failed to inform the Board of any arrests or charges against him.

6.  Respondent failed to notify the Board within thirty days of his conviction
of a criminal offense.

7.  Respondent's failures to inform the Board of the arrests, charges, and
convictions represents violations of NCGS 93-12 (9)a, b, d, and e and
21 NCAC 08N .0202(a), .0203, .0204, .0207, and .0208.

8.  The Board finds that in light of the seriousness of the allegations and
substantial evidence establishing the conduct in question, as well as
evidence of the imminent danger of continued and irreparable harm to the
public, that the public welfare requires this emergency action.

The Board therefore issues this Emergency Order, pursuant to N.C.G.S. §150B-3(c), to
revoke Respondent's certificate as a Certified Public Accountant.  This Order is effective
immediately at the time of service of this Order upon Respondent, and shall remain in
effect until this proceeding may be concluded pursuant to NCGS §150B.  This Order
shall constitute the Notice of Hearing to be held for this matter in the Board Office on
February 16, 2009, at 10:00 a.m.

Adopted by a vote of __5__ to __0__ by the Board on this the __22__ day of __September__,
2008.

NORTH CAROLINA STATE BOARD OF CERTIFIED
PUBLIC ACCOUNTANT EXAMINERS

BY:_____
President

Appendix VI

NORTH CAROLINA  BEFORE THE NORTH CAROLINA STATE BOARD OF
WAKE COUNTY   CERTIFIED PUBLIC ACCOUNTANT EXAMINERS
         CASE #:  C2007718-1 and C2007718-2

IN THE MATTER OF:
Calvin Lewis Blanton, #16066      CONSENT ORDER
Calvin L. Blanton, CPA, P.A.
 Respondents

   THIS CAUSE, coming before the Board at its offices at 1101 Oberlin Road, Raleigh, Wake County, North Carolina, with a quorum present.  Pursuant to NCGS 150B-41, the Board and Respondent stipulate the following Findings:

1.  Respondent Calvin Lewis Blanton (hereinafter "Respondent Blanton") was the holder of North Carolina certificate number 16066 as a certified public accountant.

2.  Respondent Calvin L. Blanton, CPA, P.A. (hereinafter "Respondent firm"), was a licensed certified public accounting professional corporation in North Carolina.  Respondent Blanton was the sole shareholder of Respondent firm.

Count 1

3.  On or about October 23, 2007, Respondent Blanton pled guilty to charges regarding his failure to file a North Carolina Corporate Income and Franchise Tax Return for Blanton Enterprises for the tax year 2002 and failure to file individual state tax returns for 2002 and 2003.  Respondent was sentenced to forty-five (45) days in custody; however, this sentence was suspended and Respondent Blanton was placed on twelve months of supervised probation. Respondent was fined $1,000.00 and ordered to file and pay all delinquent taxes within ninety (90) days.  Pursuant to the Court's order, upon payment of all costs, fines, and back taxes, Respondent's probation was to be changed from supervised to unsupervised probation.

4.  On or about October 23, 2007, Respondent Blanton pled guilty to charges regarding his failure to file North Carolina Corporate Income and Franchise Tax Returns for Respondent firm for the tax years 2002, 2003, and 2004. Respondent was sentenced to forty-five (45) days in custody; however, this

NC BC
Received
SEP 19 2008
CPA EXAMINERS

Consent Order - 2
Calvin Lewis Blanton
Calvin L. Blanton, CPA, P.A.

sentence was suspended and Respondent Blanton was placed on twelve months of supervised probation. Respondent was fined $1,000.00, sentenced to one hundred (100) hours of community service, assessed $120.00 in court costs, assessed $200.00 in community services fees, and ordered to file and pay all delinquent taxes within ninety (90) days. Pursuant to the Court's order, upon payment of all costs, fines, and back taxes, Respondent's probation was to be changed from supervised to unsupervised probation.

5.   Respondent represents that he has filed and paid all North Carolina Corporate Income and Franchise taxes deemed delinquent within ninety (90) days of sentencing. Respondent also represents that he has paid all court costs and community service fees imposed. Respondent further represents that he will complete all 100 hours of community service by September 30, 2008., and that according to the terms of the probation Respondent would be released from probation on or about October 22, 2008.

## Count 2

6.   The Internal Revenue Service obtained tax liens against Respondent firm for failure to pay 941s for the periods ending June 3, 2000 ($9,043.60), September 30, 2000 (($3,493.03), March 31, 2001 ($1,112.12), and June 30, 2001 ($894.65).

7.   Respondent firm represents that it has paid all outstanding 941 taxes to the Internal Revenue Service for the periods ending June 3, 2000, September 30, 2000, March 31, 2001, and June 30, 2001.

8.   Respondents wish to resolve this matter by consent and agree that the Board staff and counsel may discuss this Consent Order with the Board *ex parte*, whether or not the Board accepts this Consent Order as written. Respondent understands and agrees that this Consent Order is subject to review and approval by the Board and is not effective until approved by the Board at a duly constituted Board Meeting.

BASED upon the foregoing, the Board makes the following Conclusions of Law:

1.   Respondents are subject to the provisions of Chapter 93 of the North Carolina General Statutes (NCGS) and Title 21, Chapter 8 of the North Carolina Administrative Code (NCAC), including the Rules of Professional Ethics and Conduct promulgated and adopted therein by the Board.

2.   Respondents' actions as set out above constitute violations of NCGS 93-12 (9)b, d and e and 21 NCAC 8N .0201, .0203, .0204, and .0207.

Consent Order - 3
Calvin Lewis Blanton
Calvin L. Blanton, CPA, P.A.

BASED on the foregoing and in lieu of further proceedings under 21 NCAC Chapter 8C, the Board and Respondents agree to the following Order:

1.    The Certified Public Accountant certificate issued to Respondent Blanton, Calvin Lewis Blanton, is hereby permanently revoked.

2.    The firm registration for Respondent firm, Calvin L. Blanton, CPA, P.A., is hereby canceled.

CONSENTED TO THIS THE ___16th___ DAY OF SEPTEMBER, 2008.


_____
Respondent Blanton

_____
Authorized Representative for Respondent Firm


APPROVED BY THE BOARD THIS THE __22__ DAY OF __September__, 2008.

NORTH CAROLINA STATE BOARD OF CERTIFIED
PUBLIC ACCOUNTANT EXAMINERS


BY: _____
President

NORTH CAROLINA          BEFORE THE NORTH CAROLINA STATE BOARD OF
WAKE COUNTY             CERTIFIED PUBLIC ACCOUNTANT EXAMINERS
                        CASE #: C20081755

IN THE MATTER OF:
Ki-Hyun Chun, #14075                              CONSENT ORDER
    Respondent

THIS CAUSE, coming before the Board at its offices at 1101 Oberlin Road, Raleigh, Wake County, North Carolina, with a quorum present.  Pursuant to NCGS 150B-41, the Board and Respondent stipulate the following Findings:

1. Respondent is the holder of North Carolina certificate number 14075 as a Certified Public Accountant.  Respondent is not a licensed attorney authorized to practice law in North Carolina.

2. Respondent, on behalf of clients, has prepared, signed, and filed Articles of Incorporation with the North Carolina Secretary of State's (Secretary of State) office.

3. The Board has in numerous newsletter articles informed licensees that the North Carolina State Bar has determined that preparing, signing, or filing a client's Articles of Incorporation with the Secretary of State's office by a CPA who is not also licensed as an attorney constitutes the unauthorized practice of law.

4. Respondent represents that he has ceased these activities and has agreed to refrain from engaging in this conduct in the future.

5. Respondent contends that his preparation, signing, and filing of the Articles of Incorporation was not willful and was not done with the intent to deceive or mislead the public.  ·

6. Respondent wishes to resolve this matter by consent and agrees that the Board staff and counsel may discuss this Consent Order with the Board *ex parte*, whether or not the Board accepts this Consent Order as written. Respondent understands and agrees that this Consent Order is subject to review and approval by the Board and is not effective until approved by the Board at a duly constituted Board Meeting.

Consent Order - 2
Ki-Hyun Chun

BASED upon the foregoing, the Board makes the following Conclusions of Law:

1.  Respondent is subject to the provisions of Chapter 93 of the North Carolina General Statutes (NCGS) and Title 21, Chapter 8 of the North Carolina Administrative Code (NCAC), including the Rules of Professional Ethics and Conduct promulgated and adopted therein by the Board.

2.  Respondent's actions as set out above constitute violations of NCGS 93-1 (b) and 93-12 (9)e and 21 NCAC 8N .0202 (b)(6), .0203, and .0204.

BASED on the foregoing and in lieu of further proceedings under 21 NCAC Chapter 8C, the Board and Respondent agree to the following Order:

1.  Respondent shall pay a one thousand dollar ($1,000.00) civil penalty to be remitted with this signed Order.

CONSENTED TO THIS THE _5th_ DAY OF _September_, 2008.

_____
Respondent

APPROVED BY THE BOARD THIS THE _22_ DAY OF _September_, 2008.

NORTH CAROLINA STATE BOARD OF CERTIFIED
PUBLIC ACCOUNTANT EXAMINERS

BY: _____
President

Appendix VIII

NORTH CAROLINA                 BEFORE THE NORTH CAROLINA STATE BOARD OF
WAKE COUNTY                    CERTIFIED PUBLIC ACCOUNTANT EXAMINERS
                               CASE #: C2007520

IN THE MATTER OF:
Russell Neil Allen, #15271                              CONSENT ORDER
Russell N. Allen, CPA, P.A.
    Respondents

     THIS CAUSE, coming before the Board at its offices at 1101 Oberlin Road, Raleigh, Wake County, North Carolina, with a quorum present.  Pursuant to NCGS 150B-41, the Board and Respondent stipulate the following Findings:

1.    Respondent Russell Neil Allen (hereinafter "Respondent Allen") is the holder of North Carolina certificate number 15271 as a Certified Public Accountant.

2.    Respondent Russell N. Allen, CPA, P.A. (hereinafter "Respondent Firm"), is a registered certified public accounting corporation in North Carolina. Respondent Allen is the sole shareholder, president of Respondent Firm and responsible for Respondent Firm's compliance with the applicable laws and rules.

3.    In 1997, the Board disciplined Respondent Allen for failure to pay his firm's 941 Employer's Quarterly Payroll Taxes for three (3) quarters which resulted in a tax lien by the Internal Revenue Service (IRS).

4.    In February of 2007, the IRS filed another tax lien against Respondent Allen and Respondent Firm for failure to pay Respondent Firm's payroll taxes.

5.    Respondent Allen failed to timely pay Respondent Firm's 941 Employer's Quarterly Payroll Taxes for the periods ending March 31, 1998 ($8,762.25), June 30, 1998 ($13,918.96), September 30, 2002 ($7,167.61), June 30, 2004 ($9,786.09), and June 30, 2005 ($3,311.25).

6.    Respondent Allen contends that his subsequent failure to timely pay the obligations in paragraph 5 above was due to a financial hardship caused by a medical disability of a family member.

7.    On May 30, 2007, Respondent Allen agreed to an installment agreement with the IRS to pay the outstanding taxes, penalties, and interest totaling $42,946.16.

Consent Order – 2
Russell Neil Allen
Russell N. Allen, CPA, P.A.

8.  Respondents wish to resolve this matter by consent and agree that the Board staff and counsel may discuss this Consent Order with the Board *ex parte*, whether or not the Board accepts this Consent Order as written. Respondents understand and agree that this Consent Order is subject to review and approval by the Board and is not effective until approved by the Board at a duly constituted Board Meeting.

BASED upon the foregoing, the Board makes the following Conclusions of Law:

1.  Respondents are subject to the provisions of Chapter 93 of the North Carolina General Statutes (NCGS) and Title 21, Chapter 8 of the North Carolina Administrative Code (NCAC), including the Rules of Professional Ethics and Conduct promulgated and adopted therein by the Board.

2.  Respondents' actions as set out above constitute violations of NCGS 93-12(9)e and 21 NCAC 08N .0201, .0203(a)(b)1, .0207, and .0208.

BASED on the foregoing and in lieu of further proceedings under 21 NCAC Chapter 8C, the Board and Respondents agree to the following Order:

1.  The Certified Public Accountant certificate issued to Respondent Allen, Russell Neil Allen, is hereby suspended. Respondent shall not apply for modification of discipline and reinstatement for five (5) years from the date this Order is approved by the Board.

2.  The firm registration for Respondent Firm, Russell N. Allen, CPA, P.A., is hereby suspended.

CONSENTED TO THIS THE ___19th___ DAY OF ___SEPTEMBER___, 2008.


_Russell Neil Allen_
Respondent Allen


_Russell N. Allen, President_
Authorized Representative for Respondent Firm

Consent Order – 3
Russell Neil Allen
Russell N. Allen, CPA, P.A.

APPROVED BY THE BOARD THIS THE **22** DAY OF **September** ,
2008.

NORTH CAROLINA STATE BOARD OF CERTIFIED
PUBLIC ACCOUNTANT EXAMINERS

BY: _Arthur Whitehead_

President

NORTH CAROLINA     BEFORE THE NORTH CAROLINA STATE BOARD OF
WAKE COUNTY        CERTIFIED PUBLIC ACCOUNTANT EXAMINERS
CASE #: C20072860 and C20085431

IN THE MATTER OF:
Walter Jeffrey Daniel, #9483                  <u>BOARD ORDER</u>
W. Jeffrey Daniel, CPA, PA
     Respondents

THIS CAUSE coming before the Board at its offices at 1101 Oberlin Road, Raleigh, Wake County, North Carolina, at public hearing, with a quorum present, the Board finds, based on the evidence presented at the hearing on September 22, 2008, that:

<u>FINDINGS OF FACT</u>

1.     The parties have been properly identified.

2.     The Board has jurisdiction over the Respondent and this matter.

3.     Respondent received at least fifteen (15) days written Notice of Hearing of this Matter by personal service, certified mail, or other approved personal delivery.

4.     Venue is proper and the Noticed Hearing was properly held at 1101 Oberlin Road, Raleigh, North Carolina.

5.     Respondent had no objection to any Board Member's participation in the Hearing of this Matter.

6.     Respondent was not present at the Hearing and was not represented by counsel.

7.     Respondent Walter Jeffrey Daniel (hereinafter "Respondent Daniel") was the holder of a certificate as a Certified Public Accountant in North Carolina which Respondent forfeited for failure to renew on August 8, 2008, and is therefore subject to the provisions of Chapter 93 of the North Carolina General Statutes (NCGS) and Title 21, Chapter 8 of the North Carolina Administrative Code (NCAC), including the Rules of Professional Ethics and Conduct promulgated and adopted therein by the Board.

Board Order - 2
Walter Jeffrey Daniel
W. Jeffrey Daniel, CPA, PA

8.  Respondent W. Jeffrey Daniel, CPA, PA (hereinafter "Respondent firm"), was a licensed certified public accounting professional corporation in North Carolina but the Respondent firm was suspended by the Board and the Office of the Secretary of State on August 8, 2008, because it no longer had a licensed CPA shareholder and is therefore subject to the provisions of Chapter 93 of the North Carolina General Statutes (NCGS) and Title 21, Chapter 8 of the North Carolina Administrative Code (NCAC), including the Rules of Professional Ethics and Conduct promulgated and adopted therein by the Board.  Respondent Daniel was the sole shareholder of Respondent firm.  At all times relevant, Respondent Daniel was the principal shareholder, president and individual responsible for Respondent firm's compliance with state and federal tax laws as well as North Carolina's accountancy laws.  The Respondent firm's actions and failures to act are attributable to Respondent Daniel.

9.  In October of 2007, the United States Department of the Treasury (US Treasury) obtained a tax lien totaling $8,499.87 against Respondent firm for unpaid unemployment taxes (940) and penalties for failure to file tax returns (6721).

10. In October of 2007, the US Treasury obtained a tax lien totaling $35,266.16 against Respondent firm for unpaid Employee Withholding taxes (941) for fifteen (15) quarters from June of 2002 through March of 2007.

11. In February of 2008, the US Treasury obtained a tax lien totaling $4,200.00 against Respondent firm for penalties for failure to file tax returns (6721).

12. Board staff sent mailings, by first-class mail and certified return/receipt mail, regarding the tax liens to Respondents at the last known mailing address for Respondent firm.  Neither Respondent Daniel nor any representative of Respondent firm replied to these mailings.

13. Board staff then sent an email regarding the tax lien and his failures to respond to Board inquiries to Respondents at Respondent Daniel's last known email address.  Neither Respondent Daniel nor any representative of Respondent firm replied to this email.

14. Board staff contacted Respondent Daniel by telephone regarding the tax lien and his failures to respond to Board inquiries.  In the telephone conversation, Respondent Daniel informed Board staff that he had been busy but would respond within one week.

Board Order - 3
Walter Jeffrey Daniel
W. Jeffrey Daniel, CPA, PA

15. Despite Respondent Daniel's promise to respond, to date, Board staff has not received a response from Respondent Daniel, any other representative of Respondent firm, or anyone acting on behalf of Respondents.

## CONCLUSIONS OF LAW

1. Respondents' actions and failures to act which resulted in the tax liens are violations of NCGS 93-12 (9)d, and e and 21 NCAC 8N .0201, .0203 (b)(1), .0204 and .0207.

2. Respondents' failures to timely respond to Board inquiries are violations of NCGS 93-12 (9)e and 21 NCAC 8N .0206.

BASED ON THE FOREGOING, the Board orders in a vote of __7__ to __O__ that:

1. The Certified Public Accountant certificate issued to Respondent, Walter Jeffrey Daniel, is hereby permanently revoked.

2. The firm registration for Respondent firm, W. Jeffrey Daniel, CPA, P.A., is hereby suspended. .

This the __22nd__ day of __September 2008__.



NORTH CAROLINA STATE BOARD OF CERTIFIED
PUBLIC ACCOUNTANT EXAMINERS

BY: _____
President