**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| This document relates to: | Hon. Dan Aaron Polster |
| *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-OP-45090 | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SPECIALLY-APPEARING DEFENDANT TEVA PHARMACEUTICAL INDUSTRIES LTD. TO DISMISS THE THIRD AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ................................................................................................. 1

II.  LEGAL ARGUMENT ........................................................................................ 5

    A.  Plaintiffs' Arguments Fail Because None of Their Theories Of Personal Jurisdiction Were Pled In Plaintiffs' TAC ............................................................ 6

    B.  Even If The Court Were To Consider Plaintiffs' Unpled Theories Of Personal Jurisdiction, Plaintiffs Have Failed To Establish Alter-Ego Liability ............................................................................................................... 7

        1.  Teva Ltd. Does Not Completely Control Or Dominate Teva USA, Cephalon, Or Any Of The Actavis Generic Entities ................................. 8

            a.  Teva Ltd. Does Not Have The Same Address, Phone Lines, Or Headquarters As Its Indirect Subsidiaries .............................. 10

            b.  Teva Ltd. Does Not Complete The Same Jobs As Its Indirect Subsidiaries .................................................................... 10

            c.  Teva Ltd. Shares Some Corporate Officers With Its Indirect Subsidiaries Pursuant To Arms-Length Agreements ................... 11

            d.  Teva. Ltd. Did Not Engage In the Same Business Enterprise As Its Indirect Subsidiaries ......................................... 12

            e.  Teva Ltd. And Its Indirect Subsidiaries Maintain Separate Books, Tax Returns, and Financial Statements ........................... 14

            f.  Teva Ltd. Does Not Use And Have The Same Assets As Its Indirect Subsidiaries .................................................................... 15

            g.  Teva Ltd. Does Not Exert Control Over The Daily Affairs Of  Its Indirect Subsidiaries ......................................................... 18

        2.  Plaintiffs Do Not Even Attempt To Identify Any Fraud, Extreme Misconduct, Or Other Injustice By Teva Ltd ......................................... 20

    C.  The Court May Not Exercise Personal Jurisdiction Over Teva Ltd. As The Alleged Successor-In-Interest of Ivax, Barr, Cephalon Or The Actavis Generic Entities ................................................................................................... 21

    D.  Plaintiffs Fail To Present Any Facts Demonstrating That Teva Ltd. Was Complicit In The Purported Wrongful Conduct Of Its Indirect Subsidiaries ...... 26

    E.  There Is No Basis For This Court To Delay Deciding This Motion To Dismiss At Trial ............................................................................................... 27

III.  CONCLUSION ................................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

CASES     PAGE(S)

*Alkanani v. Aegis Def. Servs., LLC*,
   976 F. Supp. 2d 13 (D.D.C. 2014) ........................................................................25

*Anwar v. Dow Chem. Co.*,
   876 F.3d 841 (6th Cir. 2017) ..................................................................... passim

*Anwar v. Dow Chem. Co.*,
   No. 15-CV-12708, 2016 WL 5070269 (E.D. Mich. Sept. 20, 2016), *aff'd,* 876
   F.3d 841 (6th Cir. 2017) ............................................................................8

*Anwar v. Dow Chemical Co*.,
   876 F.2d 841 (6th Cir. 2016). (Opp. ) .....................................................9

*Arpaio v. Dupre*,
   527 F. App'x 108 (3d Cir. 2013) ..............................................................6

*Bash v. Textron Fin. Corp.*,
   524 B.R. 745 (N.D. Ohio 2015)..............................................................16

*Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*,
   617 N.E.2d 1075 (Ohio 1993) ................................................... passim

*BRG Corp. v. Chevron U.S.A., Inc.*,
   163 A.D.3d 1495, 82 N.Y.S.3d 798 (N.Y. App. Div. 2018) ...................23

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017)..........................................................................4, 22

*Citibank, N.A. v. Hicks*,
   No. CIV.A.03-2283, 2004 WL 945142 (E.D. Pa. Apr. 29, 2004) ...........14

*City of Chicago v. Purdue Pharma L.P.*,
   No. 14 C 4361, 2015 WL 2208423 (N.D. Ill. May 8, 2015) ...............13, 14, 27

*Conn v. Zakharov*,
   667 F.3d 705 (6th Cir. 2012) ..................................................................5

*Corrigan v. U.S. Steel Corp.*,
   478 F.3d 718 (6th Cir. 2007) ...............................................................9, 12

*County of Nueces and Nueces County Hospital District v. Purdue Pharma L.P., et al.*,
   Case No. 2018-CCV-61176-4....................................................................7

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..............................................................................................4, 22

*Davis County v. Purdue Pharma L.P., et al.*,
    Case No. 180700870..............................................................................................7

*Dean v. Motel 6 Operating L.P.*,
    134 F.3d 1269 (6th Cir. 1998) ..............................................................................7

*Dombroski v. WellPoint, Inc.*,
    895 N.E.2d 538 (Ohio 2008)............................................................................8, 21

*Flaugher v. Cone Automatic Mach. Co.*,
    507 N.E.2d 331 (1987)..........................................................................................23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..............................................................................................22

*Holbrook v. Mazda Motor Corp.*,
    No. CV 6:17-244-DCR, 2018 WL 1571905 (E.D. Ky. Mar. 30, 2018) ...................8

*Hosain-Bhuiyan v. Barr Labs., Inc.*,
    No. 17 CV 114 (VB), 2017 WL 4122621, at *3 (S.D.N.Y. Sept. 14, 2017) ............2

*In re Chicago Truck Ctr., Inc.*,
    398 B.R. 266 (Bankr. N.D. Ill. 2008) ...................................................................14

*In re Chocolate Confectionary Antitrust Litig.*,
    641 F. Supp. 2d 367 (M.D. Pa. 2009) ...............................................................14, 17

*In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012) ......14, 17

*Indah v. United States Sec. and Exchg. Comm'n*,
    661 F.3d 914 (6th Cir. 2011) ...............................................................................7

*Int'l Watchman Inc. v. Strap.ly*,
    No. 1:18 CV 1690, 2019 WL 1903557 (N.D. Ohio Apr. 29, 2019) ......................26

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*,
    23 F. Supp. 2d 796 (N.D. Ohio 1998)...................................................................26

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991)....................................................................................25

*Lyman Steel Corp. v. Ferrostaal Metals Corp.*,
    747 F. Supp. 389 (N.D. Ohio 1990).......................................................................5

*Medical Dist., Inc. v. Quest Healthcare, Inc.*,
  2002 WL 32398447 (W.D. Ky. 2002) ................................................................7

*Microsys Computing, Inc. v. Dynamic Data Systems*,
  LLC, 2006 WL 2225821 (N.D. Ohio Aug. 2, 2006) .......................................26

*Mkt./Media Research, Inc. v. Union Tribune Pub. Co.*,
  951 F.2d 102 (6th Cir. 1991) .........................................................................27

*One Media IP Ltd. v. S.A.A.R. SrL*,
  122 F. Supp. 3d 705, 715 (M.D. Tenn. 2015) ..................................................5

*Palnik v. Westlake Entm't, Inc.*,
  344 F. App'x 249 (6th Cir. 2009) ...................................................................27

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
  No. CV 16-665, 2017 WL 3129147 (E.D. Pa. July 24, 2017) ...........................2

*Precision, Inc. v. Kenco/Williams, Inc.*,
  66 F. App'x 1 (6th Cir. 2003) .........................................................................17

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915 (2016).................18

*Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co*,
  669 F.3d 790 (6th Cir. 2012) .........................................................................16

*Serras v. First Tennessee Bank Nat. Ass'n*,
  875 F.2d 1212 (6th Cir. 1989) .......................................................................27

*SFS Check, LLC v. First Bank of Delaware*,
  774 F.3d 351 (6th Cir. 2014) ...................................................................2, 5, 21

*Singh v. Daimler*,
  AG, 902 F. Supp. 2d 974 (E.D. Mich. 2012) ....................................................7

*Smith v. Teva Pharm. USA, Inc.*,
  No. 17-61058-CIV, 2018 WL 550252 (S.D. Fla. Jan. 24, 2018).......................2

*Talmer Bank & Tr. v. Minton Firm, P.C.*,
  660 F. App'x 439 (6th Cir. 2016) ...................................................................21

*Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*,
  395 F.3d 1275 (Fed. Cir. 2005)........................................................................6

*UHS of Delaware, Inc. v. United Health Servs., Inc.*,
  No. 1:12-CV-485, 2015 WL 539736 (M.D. Pa. 2015)......................................14

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ........................................................................................................7

*Welco Indus., Inc. v. Applied Cos.*,
    617 N.E.2d 1129 (1993) ........................................................................22, 23, 24

*Whitener v. Pliva, Inc.*,
    606 F. App'x 762 (5th Cir. 2015) ...............................................................................2

*Williams v. MD Helicopters, Inc.*,
    Civ. No. 14-137787, 2015 WL 4546770 (E.D. Mich. July 28, 2015) .......................5

*Williams v. Romarm*,
    SA, 756 F.3d 777 (D.C. Cir. 2014) ............................................................................6

*Wolf v. Celebrity Cruises, Inc.*,
    683 F. App'x 786 (11th Cir. 2017) ............................................................................6

*Word Music, LLC v. Priddis Music, Inc.*,
    2007 WL 3231835 (M.D. Tenn. 2007) ......................................................................7

**STATUTES**

Racketeer Influenced and Corrupt Organizations Act ....................................................26

**OTHER AUTHORITIES**

17 C.F.R. § 230.421 ..........................................................................................................13

Christopher Cox, U.S. Sec. & Exch. Comm'n Chairman, *Keynote Address to the
    Center for Plain Language Symposium: Plain Language and Good Business*
    (Oct. 12, 2007) ........................................................................................................13

Fed. R. Civ. P. 12(b)(2) .....................................................................................................5

SEC Financial Reporting Manual .....................................................................................14

# I.      __INTRODUCTION__

Plaintiffs do not dispute that Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") is a foreign Israeli company with headquarters and a principal place of business in Israel; that it does not manufacture, market, promote, or sell opioids in Ohio or anywhere else in the United States; and that it has no office, property, employees, or registered agent in the United States.  Given these undisputed facts, the Court lacks both specific and general personal jurisdiction over Teva Ltd. under controlling Supreme Court law and basic principles of constitutional due process.

Instead, Plaintiffs now seek to set aside bedrock jurisdictional principles and assert personal jurisdiction over Teva Ltd. based solely on its routine parent-subsidiary relationship with its United States-based, indirect-held subsidiaries.  But Teva Ltd. is a publicly-traded Israeli company and the corporate parent to over 300 directly or indirectly-held subsidiaries located across North America, Europe, Australia, and South America.  In that role, Teva Ltd. necessarily exercises some managerial oversight over and gives other forms of strategic support to subsidiaries within the "Teva" corporate family—the hallmark of any parent/subsidiary relationship, particularly for a multi-national corporate organization.  Such routine oversight is insufficient as a matter of law to ignore Teva Ltd.'s corporate separateness from its subsidiaries for purposes of exerting personal jurisdiction over it.  And it is certainly insufficient to force an Israeli company with no connection to Ohio to incur substantial burden and expense defending itself in complicated litigation regarding the opioid abuse crisis.

Ignoring this reality, Plaintiffs now argue for the first time in their Opposition that Teva Ltd. should be subject to personal jurisdiction because:  (1) it is the alleged "alter-ego" of its subsidiaries; (2) it is the alleged "successor" of various companies that it acquired (several of which are not even Defendants to this action); and (3) Teva Ltd. participated in a civil conspiracy. In making these arguments, Plaintiffs mischaracterize the facts (and undisputed deposition

testimony) and misstate the law.  Indeed, while courts across the country have repeatedly dismissed Teva Ltd. from lawsuits due to lack of personal jurisdiction,[1] no court has ever held that Teva Ltd. is subject to personal jurisdiction based upon the independent conduct of its subsidiaries. Plaintiffs' novel arguments fail for numerous reasons.

*First*, Plaintiffs' "alter-ego," "successor," and "conspiracy" theories of personal jurisdiction fail for one simple reason:  *none* of these allegations are plead in Plaintiffs' Third Amended Complaint ("TAC").   Despite having had various opportunities to amend their complaint, allegations of "alter-ego," "successorship," and "conspiracy," or the supposed facts underlying these personal jurisdiction theories, are nowhere to be found in the TAC.   For this reason alone, the motion to dismiss should be granted.

*Second*, even if the Court were to consider Plaintiffs' new, unpled alter-ego theory, Plaintiffs do not and cannot offer sufficient evidence to meet their heavy burden of showing that Teva Ltd. exercised such extensive control over its subsidiaries that they have "no separate mind, will, or existence of [their] own."  *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1077 (Ohio 1993).  Instead, as Plaintiffs acknowledge (and the declaration and deposition testimony of Teva Ltd.'s corporate representative confirms), Teva Ltd. is a publicly-traded company with separate headquarters, assets, bank accounts, employees, officers, and records from its subsidiaries.  No matter how many times Plaintiffs use the words "control" or

---

[1]    *See, e.g.*, *Whitener v. Pliva, Inc.*, 606 F. App'x 762, 765 (5th Cir. 2015) (no personal jurisdiction over Teva Ltd. in Louisiana); *Smith v. Teva Pharm. USA, Inc*., No. 17-61058-CIV, 2018 WL 550252, at *3 (S.D. Fla. Jan. 24, 2018) (same in Florida); *Hosain-Bhuiyan v. Barr Labs., Inc.*, No. 17 CV 114 (VB), 2017 WL 4122621, at *3 (S.D.N.Y. Sept. 14, 2017) (same in New York); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. CV 16-665, 2017 WL 3129147, at *3, 7–8 (E.D. Pa. July 24, 2017) (same in Pennsylvania); *City of Chicago v. Purdue Pharma L.P.*, No. 14 C 4361, 2015 WL 2208423, at *7 (N.D. Ill. May 8, 2015) (same in Illinois).

"domination," they cannot escape these basic facts.  Teva Ltd. is simply not "fundamentally indistinguishable" from its subsidiaries.  *Id.* at 1086.

In fact, Plaintiff's new personal jurisdiction theories rely almost exclusively on the assertions in the improperly submitted and previously undisclosed report of purported expert Mr. Alec Fahey (the "Fahey Report").  Once the Fahey Report is properly stricken, the entire purported basis for personal jurisdiction crumbles too.[2]  But even if the Court considers the Fahey Report, it offers nothing more than evidence of a typical parent-subsidiary relationship, including some shared officers, some global policies, some financial arrangements, and some strategic oversight by Teva Ltd.'s management team over fundamental issues impacting the business as a whole— not over the day-day-to affairs of its subsidiaries.  Tellingly, despite the Teva and Actavis Generic Entities' production of more than 16 million pages of documents, neither Mr. Fahey nor Plaintiffs cite a single email or internal company document that even suggests—let alone demonstrates by a preponderance of the evidence—that Teva Ltd. controls the daily operations of its United States-based, indirect subsidiaries.

*Third*, Plaintiffs do not even attempt to show that Teva Ltd.'s purported actions amounted to fraud or extreme misconduct, or that the failure to pierce the corporate veil would otherwise result in manifest injustice, as required by Sixth Circuit and Ohio law.  Plaintiffs' failure to address this required element of the alter-ego jurisdictional analysis is independently dispositive.

---

[2]     Teva Ltd. moved to dismiss the Complaint for lack of jurisdiction in January 2019.  Plaintiffs asked the Court to postpone its decision on the motion until they could conduct further fact discovery.  (Dkt. No. 1365.)  Months later (and well after the Court-set deadline to disclose experts), Plaintiffs now submit a report of a previously undisclosed and unauthorized purported expert to assert that Teva Ltd. so completely controlled it US-based subsidiaries that the Court may assert personal jurisdiction over it.  Plaintiffs' reliance on the Fahey Report is improper for the reasons stated in Teva's motion to strike.  *See* Mem. of Law in Support of Motion to Strike ("Mot. To Strike").

3

*Fourth*, Plaintiffs claim that Teva Ltd. is subject to personal jurisdiction because it is the "successor" of United States-based companies it previously acquired. Again, Plaintiffs have their facts wrong. Each of the acquired companies remains a separate corporate entity, and none merged directly into Teva Ltd., as would be required to make Teva Ltd. the corporate successor to that entity. Teva Ltd. cannot be subjected to personal jurisdiction based solely on the contacts of those separate corporate entities. If the law were otherwise, every foreign parent would be subject to personal jurisdiction whenever and wherever it acquires equity ownership of a separately-incorporated subsidiary. Controlling Supreme Court law, including *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ("*BMS*") and *Daimler AG v. Bauman*, 571 U.S. 117 (2014) ("*Daimler*"), hold otherwise.

*Lastly*, Plaintiffs argue that Teva Ltd. was complicit in the alleged misconduct of others, and that this "conspiracy" provides an independent basis to support personal jurisdiction over Teva Ltd. This argument, too, should be summarily rejected. The Sixth Circuit has never recognized this doctrine of personal jurisdiction—and courts within the Northern District of Ohio have *expressly rejected it*. In addition, even if this theory were viable (and it is not), Plaintiffs have not presented evidence of *a single action by Teva Ltd.* that would support the finding of its participation in some conspiracy—much less any action in the United States. There is simply no evidence that Teva Ltd. directed, participated in, or was even aware of any alleged criminal conduct. This theory fails, too.

For all these reasons, the Court should reject Plaintiffs' invitation to rewrite personal jurisdiction law and to force an Israeli entity that engaged in no claims-related conduct in the United States to incur the massive costs and burden of defending itself in this high-profile case

merely because it engages in typical relations with its US-based subsidiaries. Controlling precedent forecloses this result. Teva Ltd.'s motion should be granted.

## II.  LEGAL ARGUMENT

Plaintiffs do not dispute that in order "[t]o survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff must prove that jurisdiction is proper over each defendant individually." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355-56 (6th Cir. 2014). Plaintiffs misstate their burden, however, in arguing that they are entitled to survive Teva Ltd.'s motion to dismiss so long as they can make a *prima facie* case for personal jurisdiction.[3]  Teva Ltd. has produced jurisdictional discovery to Plaintiffs.  Under these circumstances, the Sixth Circuit and numerous district courts have recognized that "[w]hen, as here, the district court allows discovery on the motion, the court should consider the facts offered by both parties ***and rule according to the preponderance of the evidence***." *SFS Check*, 774 F.3d at 356 (emphasis added); *see also One Media IP Ltd. v. S.A.A.R. SrL*, 122 F. Supp. 3d 705, 715 (M.D. Tenn. 2015) (same); *Williams v. MD Helicopters, Inc.*, Civ. No. 14-137787, 2015 WL 4546770, at *2 (E.D. Mich. July 28, 2015) (same); *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F. Supp. 389, 392 n. 5 (N.D. Ohio 1990) ("While the opportunity for discovery and depositions is critical, Plaintiffs have only to meet a *prima facie* burden at this stage. Following discovery, they will have to meet the burden of a preponderance of the evidence.").[4]

---

[3]     Plaintiffs' reliance on dicta in *Schneider v. Hardesty* is misplaced: the *Schneider* court did not expressly rule on the applicability of a *prima facie* standard because it found that "Schneider has demonstrated personal jurisdiction over Nelson in Ohio even under the more exacting standard imposed by the district court—the preponderance-of-the-evidence standard." 669 F.3d 693, 699 (6th Cir. 2012).

[4]     At a minimum, something significantly more than the *prima facie* standard applies at this stage. Indeed, where, as here, "the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction," the prima facie "proposition loses some of its significance." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (internal citation omitted).

5

Here, Plaintiffs do not dispute that there is no general jurisdiction over Teva Ltd. and no specific jurisdiction over Teva Ltd. based on any of its own conduct.  Indeed, they do not cite any "case-linked" conduct by Teva Ltd. in Ohio.  This should end the inquiry.  (Mot. To Dismiss, Dkt. No. 1264, at 4-13.)  Nonetheless, Plaintiffs argue that jurisdiction is proper based upon the purported relationship between Teva Ltd. and its indirectly-held, US-based subsidiaries. (Pls.' Opp. To Mot. To Dismiss ("Opp."), Dkt. No. 1815, at 23 (the "acts carried out by Teva Ltd.'s US subsidiaries—the marketing and sale of opioids into Ohio—are properly attributable to Teva Ltd.").  As described below, Plaintiffs have failed to meet their burden of establishing a basis for exercising personal jurisdiction over the Israel-based Teva Ltd. under any such theory.

### A. Plaintiffs' Arguments Fail Because None of Their Theories Of Personal Jurisdiction Were Pled In Plaintiffs' TAC.

The alter-ego, successorship, and conspiracy theories that now form the sole basis under which Plaintiffs' ask this Court to exercise personal jurisdiction over Teva Ltd. fail for one simple reason:  ***none*** of these theories are plead in Plaintiffs' TAC (which was only recently filed).  Plaintiffs may rely on jurisdictional discovery to the extent it can "*supplement* jurisdictional ***allegations***."  *Williams v. Romarm*, SA, 756 F.3d 777, 786 (D.C. Cir. 2014) (emphasis added); *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 792 (11th Cir. 2017); *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005); *Arpaio v. Dupre*, 527 F. App'x 108, 110 (3d Cir. 2013).  Here, despite having had multiple opportunities to amend their complaint and set forth their theory of personal jurisdiction, allegations of "alter-ego," "successorship," or "conspiracy" as to Teva Ltd. are nowhere to be found.  Plaintiffs cannot supplement what is entirely missing from their pleadings.[5]  Where, as here, the "complaint does

---

[5]      To the extent Plaintiffs argue they could not have asserted their new alter ego, successor, or conspiracy theories of personal jurisdiction prior to receiving jurisdictional discovery from Teva Ltd., this argument is without merit.  A number of plaintiffs in other jurisdictions have asserted in their complaints

not even *allege* personal jurisdiction via an alter-ego theory or allege any facts [that] would provide a basis for the exercise of such jurisdiction," the Sixth Circuit and others have rejected these alternative theories of jurisdiction and "grant[ed] the motion [to dismiss] on this basis alone."[6] This Court should do the same.

### B. Even If The Court Were To Consider Plaintiffs' Unpled Theories Of Personal Jurisdiction, Plaintiffs Have Failed To Establish Alter-Ego Liability.

Plaintiffs concede that Teva Ltd. does not have any independent contacts with the state of Ohio.  Instead, Plaintiffs assert that Teva Ltd.'s United States-based, indirect subsidiaries—Teva USA, Cephalon, and the Actavis Generic Entities—acted as Teva Ltd.'s "alter ego."  (Opp. at 5.)

The principle is "deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal citation omitted); *see also Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1275 (6th Cir. 1998) (holding that personal jurisdiction does not exist "merely by owning all or some of a corporation

---

similarly creative theories of personal jurisdiction as to Teva Ltd. based on its relationship with its subsidiaries—and all of them were plead before Plaintiffs' TAC and without any reliance on jurisdictional discovery.  *See* Complaint, *Davis County v. Purdue Pharma L.P., et al.*, Case No. 180700870 (alleging that Teva Ltd., Teva USA, and Cephalon are "alter-egos of each other," are "collectively run as a single integrated business organization without regard for corporate formalities," and are "agents of each other or work in active concert."); Complaint, *County of Nueces and Nueces County Hospital District v. Purdue Pharma L.P., et al.*, Case No. 2018-CCV-61176-4 (same).

[6]    *Singh v. Daimler*, AG, 902 F. Supp. 2d 974, 982 (E.D. Mich. 2012) (emphasis in original); *see also Indah v. United States Sec. and Exchg. Comm'n*, 661 F.3d 914, 923 (6th Cir. 2011) (concluding that the district court correctly rejected the applicability of the alter-ego theory of personal jurisdiction where the "plaintiffs have not alleged that [the parent defendant] 'exerts so much control over' " its subsidiaries the parent and either of the subsidiary "companies 'do not exist as separate entities but are one and the same for purposes of jurisdiction.'") (emphasis added); *see also Word Music, LLC v. Priddis Music, Inc.*, 2007 WL 3231835 at *8 (M.D. Tenn. 2007) (granting motion to dismiss for lack of personal jurisdiction and noting that "Plaintiff has simply not alleged any facts that would support jurisdiction over [the moving defendant] on the basis of an alter ego theory."); *Medical Dist., Inc. v. Quest Healthcare, Inc.*, 2002 WL 32398447 at *5 (W.D. Ky. 2002) (granting motion to dismiss for lack of personal jurisdiction and noting that Plaintiff failed to allege facts supporting an alter-ego theory.)

subject to jurisdiction"). The "presumption of corporate separateness between a parent and its subsidiary" may only be overcome through "clear evidence, beyond the subsidiary's mere presence within the bosom of the corporate family, that the parent exerts such control over the subsidiary as to make the latter its agent or alter ego." *Holbrook v. Mazda Motor Corp.*, No. CV 6:17-244-DCR, 2018 WL 1571905, at *4 (E.D. Ky. Mar. 30, 2018) (internal citation omitted); *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 544 (Ohio 2008) (Piercing the corporate veil in Ohio "remains a rare" exception, to be applied only in "exceptional circumstances.") (citation omitted).

To support jurisdiction through the rare exception of an alter-ego theory, Plaintiffs must demonstrate at least two elements: (1) complete control or domination over the entity by the party the plaintiff seeks to hold liable, ***and*** (2) fraud, extreme misconduct, or other injustice. *See Belvedere Condo.*, at 1085; *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848-49 (6th Cir. 2017). Plaintiffs do not and cannot demonstrate either.

### 1. Teva Ltd. Does Not Completely Control Or Dominate Teva USA, Cephalon, Or Any Of The Actavis Generic Entities.

Under both Ohio and Sixth Circuit law, Plaintiffs must show that Teva Ltd. so completely controls or dominates Teva USA, Cephalon, and the Actavis Generic Entities that the subsidiaries "ha[ve] no separate mind, will, or existence of its own." *Belvedere Condo.*, 617 N.E.2d at 1086; *accord Anwar*, 876 F.3d at 848 (holding that plaintiff asserting alter-ego doctrine must establish "that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist").[7] As a matter of common sense, that is clearly not the case.

As a threshold matter, Plaintiffs ignore completely that Teva USA, Cephalon, and the Actavis Generic Entities are ***indirect subsidiaries*** of Teva Ltd., separated from their ultimate

---

[7] Federal common law and the law of Ohio govern the "alter ego" analysis. Plaintiffs assume, without any analysis, that federal common law applies to the alter-ego question. (Opp. at 5 (citing federal law).) However, the vast majority of the claims in this litigation arise under the laws of the state of Ohio.

corporate parent by multiple levels of ownership.  (*See* Organizational Chart, Crawford Decl. Ex. A, Ex. 3 to Deposition of Teva Ltd.'s 30(b)(6) corporate representative Doron Herman ("Herman 30(b)(6) Tr.").)  To succeed under an alter-ego theory, Plaintiffs must demonstrate that the corporate veil should be pierced as to each and every entity in the ownership structure between Teva Ltd. and each of Teva USA, Cephalon, and the Actavis Generic Entities.  Plaintiffs ***do not even argue—much less provide evidence sufficient to satisfy their heavy burden—***that the Court can and should disregard the corporate form as to each of these intermediate-parent levels.  *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 725-26 (6th Cir. 2007) (holding that plaintiffs failed the first prong of Ohio's veil piercing test where the defendant parent entity was separated from its relevant subsidiary by two other subsidiaries, "and the plaintiffs have not presented any evidence showing why the corporate form should be disregarded as to each of these levels of subsidiaries.").

Even putting aside that dispositive failure, however, Plaintiffs fail to present any evidence to demonstrate that Teva Ltd. "completely" controls Teva USA, Cephalon, or the Actavis Generic Entities.  When undertaking an alter-ego analysis, both Ohio and the Sixth Circuit look to non-exhaustive lists of factors to determine the extent of control.[8]  In their brief, Plaintiffs rely upon the seven factors articulated by the Sixth Circuit in *Anwar v. Dow Chemical Co.*, 876 F.2d 841

---

"Because this Court has federal jurisdiction over [Plaintiffs'] federal claims and supplemental jurisdiction over her state law claims, this Court must look both to federal law and [state] law to supply the law on alter-ego personal jurisdiction." *Anwar v. Dow Chem. Co.*, No. 15-CV-12708, 2016 WL 5070269, at *3 (E.D. Mich. Sept. 20, 2016), *aff'd*, 876 F.3d 841 (6th Cir. 2017) (internal citation omitted); *see also Anwar*, 876 F.3d at 848 (same).

[8]       Because Plaintiffs ignore the applicability of Ohio law to most of their claims, Plaintiffs do not examine the majority of relevant factors in the Ohio alter-ego analysis. In *Corrigan v. United States Steel Corp.*, the Sixth Circuit held that the plaintiffs failed to satisfy the first prong of the Ohio veil piercing test because they had "neither alleged nor shown" a number of factors Ohio courts consider material to the analysis. 478 F.3d at 726. So too here. Plaintiffs' state law claims against Teva Ltd. should be dismissed on that independent basis as well.

(6th Cir. 2016). (Opp. at 5); *see also Anwar*, 876 F.3d at 849.[9] Plaintiffs do not come close to showing the requisite control based upon these factors.

### a. Teva Ltd. Does Not Have The Same Address, Phone Lines, Or Headquarters As Its Indirect Subsidiaries.

It is undisputed that Teva Ltd. does not have the same address or phone lines as its indirectly held subsidiaries. (Declaration of Doron Herman ("Herman Decl."), at ¶ 9, attached as Exhibit 1 to Declaration of Steve Reed ("Reed Decl.").) Plaintiffs wholly ignore this factor. Indeed, Teva Ltd.'s headquarters are in Israel, unlike the US-based headquarters for its indirect subsidiaries. (West Declaration, Dkt. No. 1264-2, at ¶ 2.) This factor alone shows that the companies are not indistinguishable.

### b. Teva Ltd. Does Not Complete The Same Jobs As Its Indirect Subsidiaries.

Teva Ltd. is an Israeli parent company with 300 direct and indirect subsidiaries. Cephalon, Teva USA, and the Actavis Generic Entities engage in the marketing, sale, and/or distribution of various pharmaceuticals, including opioids, in the United States. Teva Ltd. does no such thing. Indeed, as explained in the Declaration of Doron Herman, SVP Head of Tax at Teva Ltd., Teva Ltd. does not even hold the Drug Enforcement Administration ("DEA") registrations and licenses required to market, sell, and/or distribute opioids in the United States. (Ex. 1, Herman Decl., at ¶ 2.) Plaintiffs ignore this factor, too.

---

[9]    Those factors include: (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation. *Anwar*, 876 F.3d at 849.

### c. Teva Ltd. Shares Some Corporate Officers With Its Indirect Subsidiaries Pursuant To Arms-Length Agreements.

Plaintiffs contend that Teva Ltd. and its United States-based indirect subsidiaries share various "management and officers."  (Opp. at 5.)  Like the plaintiff in *Anwar*, however, Plaintiffs fail to actually identify ***any*** shared employees—only some "managers with shared roles."  876 F. 3d at 850 (no personal jurisdiction under alter-ego doctrine where plaintiff only alleges facts partially satisfying several factors).  At most, Plaintiffs identify "executive management officers" for Teva Ltd. to whom employees of Teva USA ultimately report. (Opp. at 7-8).  This is the hallmark of any parent-subsidiary relationship.   Indeed, shared management between a corporate parent and subsidiary is common and insufficient to impose jurisdiction under any doctrine.  *Anwar*, 867 F.3d at 849 ("Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.") (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915 (2016)).  This certainly does not render Teva Ltd. and its subsidiaries "fundamentally indistinguishable."  *Belvedere Condo. Unit Owners' Assn.*, 617 N.E.2d at 1086.

Moreover, Plaintiffs ignore that each entity in the Teva corporate family fairly compensates the other for any services being shared through intercompany agreements.   Each manager, officer, or employee of Teva Ltd. or its United States-based subsidiaries who has global responsibilities provides those global services pursuant to an arms' length intercompany agreement between Teva Ltd. and its United States-based subsidiaries.  (Ex. 1, Herman Decl., at ¶ 5.)  Teva Ltd., for instance, compensates Teva USA for providing investor relationship services to Teva Ltd. pursuant to an intercompany agreement between both companies.  (Crawford Decl. Ex. A, Herman 30(b)(6) Tr., at 69:3-69:19.)  Likewise, Teva Ltd.'s subsidiaries pay for use of the global services provided by the various global divisions that oversee various business operations, including Teva Global Finance, Global Tax, Global Compliance, the Pharmacovigilance Global Department, and Global

11

Real Estate.  (*See* Crawford Decl. Ex. A, Herman 30(b)(6) Tr., at 185:20-187:3; Ex. 1, Herman Decl., at ¶ 5; Fahey Rep. at 29-30.) [10]

This arms-length arrangement applies to individuals, too.  Consistent with the intercompany agreements, Teva Ltd. does not make any payments to any manager, officer, or employee for services provided on behalf of any subsidiary.  (Ex. 1, Herman Decl., at ¶ 5.)  For example, Teva Ltd. and other Teva subsidiaries compensate Ms. Debra Barret—a Teva USA officer—for providing any global services to these companies in her position as Senior Vice President of Government Affairs and Public Policy at Teva USA.  (Crawford Decl. Ex. A, Herman 30(b)(6) Tr., at 121:13-122:8.)

Contrary to Plaintiffs' rhetoric and mischaracterizations, Plaintiffs do not offer any evidence of any significant number or percentage of shared employees to suggest that Teva Ltd. is really the same as its subsidiaries.  At most, there is some overlap in management between Teva Ltd. and its subsidiaries—and pursuant to arms-length intercompany agreements.  As a matter of law, this is insufficient to sustain an alter-ego theory of personal jurisdiction. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 726 (6th Cir. 2007) (applying principle).

### d.  Teva. Ltd. Did Not Engage In the Same Business Enterprise As Its Indirect Subsidiaries.

Plaintiffs fail to cite a single piece of evidence demonstrating that Teva Ltd. engaged in the same business enterprise as its relevant United States-based subsidiaries—Teva USA, Cephalon, or the Actavis Generic Entities.  Nor could they.  It is undisputed that Teva Ltd. does not market, manufacture, sell, or distribute opioid drugs in the United States, and it does not have a DEA

---

[10]     Plaintiffs also note that Teva Ltd. purchases insurance for the entire Teva corporate family.  (Opp. at 14.)  But the cost of this insurance is allocated to each legal entity.  (Crawford Decl. Ex. A, Herman 30(b)(6) Tr. at 121:13-122:8.)

registration of any kind that would allow it to do so. (West Decl., Dkt. No. 1264-2 at ¶ 3; Herman Decl., at ¶ 2.) Plaintiffs cite no evidence demonstrating otherwise.

Instead, Plaintiffs resort to semantics, selectively pointing to various publicly filed descriptions of Teva Ltd.'s objectives and the consolidated business activities of the entire corporate family. (Opp. at 12-13.) Plaintiffs go so far as to suggest that Teva Ltd.'s use of collective language like "we" and "our" in public filings, and use of the generalized term "Teva" to refer to the entire Teva corporate family, somehow demonstrate that Teva Ltd. exerted complete control over its subsidiaries such that they are alter egos of each other. *Id.* But pursuant to Rule 421 of the Securities Act, securities filings "must use plain English principles." 17 C.F.R. § 230.421.[11] As the SEC has explained, "plain English principles" involve the use of personal pronouns and "[t]he pronouns to use are first-person plural (we, us, our/ours)." Office of Investor Education & Assistance, U.S. Sec. & Exch. Comm'n, *A Plain English Handbook: How to Create Clear SEC Disclosure Documents* at 22 (1998), http://www.sec.gov/pdf/handbook.pdf. Teva Ltd.'s use of those very pronouns is not evidence that it has ignored corporate formality; it is proof that it conformed its public filings to the SEC's regulatory specifications. *Id.*

More importantly, a corporation's use of "we," "our," and other collective pronouns to signify one global brand, as Teva Ltd. has done here, is a common practice among parent-subsidiary relationships and has repeatedly been held insufficient to sustain alter-ego allegations. *See, e.g.*, *City of Chicago v. Purdue Pharma L.P.*, No. 14 C 4361, 2015 WL 2208423, at *7 (N.D. Ill. May 8, 2015) (finding no personal jurisdiction over Teva Ltd. in opioid litigation despite similar

---

[11]    While the rule only expressly requires the use of plain English in Prospectuses (as defined in the Securities Act), the SEC has encouraged public companies to use plain English in all disclosures. *See, e.g.*, Christopher Cox, U.S. Sec. & Exch. Comm'n Chairman, *Keynote Address to the Center for Plain Language Symposium: Plain Language and Good Business* (Oct. 12, 2007), http://www.sec.gov/news/speech/2007/spch101207cc.htm.

evidence); *UHS of Delaware, Inc. v. United Health Servs., Inc.*, No. 1:12-CV-485, 2015 WL 539736, at *7 (M.D. Pa. 2015); *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012) ("Enterprise Rent–A–Car is portrayed as a single brand to the public, but this evidence does not demonstrate the necessary control by defendant parent over the subsidiaries."); *Citibank, N.A. v. Hicks*, No. CIV.A.03-2283, 2004 WL 945142, at *1 (E.D. Pa. Apr. 29, 2004) ("A blurred line of distinction between two companies does not mean that the two companies are actually (legally) alter egos."); *In re Chicago Truck Ctr., Inc.*, 398 B.R. 266, 278 (Bankr. N.D. Ill. 2008) ("The corporations are and were independent legal entities, which cannot be collapsed into one company just because an internal memo uses a "/" between GM and GMAC.").

>  **e.    Teva Ltd. And Its Indirect Subsidiaries Maintain Separate Books, Tax Returns, and Financial Statements.**

Plaintiffs point to Teva Ltd.'s use of consolidated public filings and family-wide policies as indicators that Teva Ltd. does not maintain separate financial records.  (Opp. at 8-10.)  Such consolidated filings and policies, however, are routine and generally accepted practices of large corporate families.  *See* SEC Financial Reporting Manual, *accessible at* https://www.sec.gov/corpfin/cf-manual/topic-2 ("U.S. GAAP has been revised to ***require*** consolidation by a parent of a subsidiary") (emphasis added);  *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 394 (M.D. Pa. 2009) ("[a] parent corporation is entitled to establish group-wide financial protocols"); *City of Chicago*, 2015 WL 2208423, at *7 (same).  Thus, they have no bearing on the alter-ego analysis.

In any event, what is relevant—and what Plaintiffs wholly ignore—is that Teva Ltd. and its direct and indirect subsidiaries (including Teva USA, Cephalon, and the Actavis Generic Entities) ***all*** maintain separate financial records.  (Ex. 1, Herman Decl., at ¶ 10.)  Financial books and records

are kept separately, just as tax returns are filed separately.  (*Id.*)  Teva Ltd. simply aggregates information provided by its subsidiaries for managerial, reporting, and tax purposes but does not maintain them.  (*Id.*)  Plaintiffs do not and cannot offer any evidence that these corporate formalities are not preserved—a threshold requirement for veil-piercing.

### f.    Teva Ltd. Does Not Use And Have The Same Assets As Its Indirect Subsidiaries.

Ignoring that Teva Ltd. and its subsidiaries have separate headquarters (separated by thousands of miles), Plaintiffs nonetheless argue that Teva Ltd. and its United States-based, indirectly-held subsidiaries use common assets.  (Opp. 9-12.)  But Plaintiffs' alleged evidence does not support veil-piercing.  Worse, each of Plaintiffs' arguments is based on a blatant mischaracterization of the record.

First, Plaintiffs claim that Teva Ltd. commingles its funds with those of its subsidiaries through the use of a Special Purpose Entity ("SPE"), but this is demonstrably false—as Plaintiffs are well aware.  (Opp. 10-11.)  As the deposition of Teva Ltd.'s 30(b)(6) corporate representative makes clear, the SPE is simply an ***elective*** method for ***participating*** entities within the Teva corporate family to receive cash in exchange for depositing receivables into the SPE.  (Crawford Decl. Ex. A, Herman 30(b)(6) Tr. at 178:5-179:21).  Through use of the SPE, the subsidiaries can exchange receivables for immediate compensation, as opposed to waiting for payment on the receivable.  At no point in ***any*** of these transactions do any Teva entities commingle funds or receive less than fair-market value for their receivables.  (Ex. 1, Herman Decl., at ¶ 4.)  Everything is conducted at arms' length.  (*Id.*)  Even more critically to this personal jurisdiction analysis, ***none*** of Teva Ltd.'s United States-based subsidiaries even participate in the SPE

program.  (*Id.*).  Therefore, Plaintiffs' accusations of commingling via the SPE are not only false, but also entirely irrelevant to any alter-ego theory in this case.

Plaintiffs next claim that Teva Ltd. uses its subsidiaries' cash to repurchase its own shares and pay dividends to its shareholders.  (Opp. at 11.)  Not so.  Any cash from subsidiaries is borrowed at fair-market value pursuant to an arm's length transaction between Teva Ltd. and each individual subsidiary.  (Ex. 1, Herman Decl., at ¶ 6)  This is not evidence of comingling or shared financial assets; it is evidence confirming the opposite.  *Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co*, 669 F.3d 790, 795 (6th Cir. 2012) (holding that two companies were not alter egos where one company interacted with another company pursuant to arm's-length transactions.)  Transactions between Teva Ltd. and its subsidiaries occur pursuant to formally-documented financial arrangements, including intercompany lending agreements, intercompany product royalty agreements, intercompany service agreements, and the issuance of dividends to shareholders.  (Ex. 1, Herman Decl., at ¶¶ 5-6.)  Critically, Teva Ltd. does not move money at its discretion between its reserves and those of its subsidiaries, and Plaintiffs cite no evidence to the contrary (nor could they).  (*Id*. at ¶ 6.)

Moreover, Plaintiffs do not even attempt to argue—much less demonstrate—that any US-based subsidiaries are undercapitalized, much less that Teva Ltd. is somehow creating that undercapitalization.  The reality is that Teva Ltd.'s subsidiaries operate independently and are well-funded—not mere fictions indistinguishable from Teva Ltd.  There is no basis to support any alter-ego theory.  *See, e.g.*, *Bash v. Textron Fin. Corp.*, 524 B.R. 745, 753-54 (N.D. Ohio

2015) (fact that subsidiary was not undercapitalized points in favor of not piercing the corporate veil.)

When the rhetoric and labels are stripped away, Plaintiffs' remaining allegations of shared financial assets between Teva Ltd. and its subsidiaries rests upon a gross mischaracterization of the undisputed facts and mere references to typical parent/subsidiary arrangements:

- **Bonus Policy**.  Plaintiffs claim that Teva Ltd. authorized a bonus policy applicable to all its subsidiaries (Opp. 11), but any bonus money comes from the entity issuing the bonus. (Ex. 1, Herman Decl., at ¶ 7.)  Moreover, this is nothing more than a high-level management policy typically exercised by parent companies over their subsidiaries.  *See In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d at 394 (holding that "[a] parent corporation is entitled to establish group-wide financial protocols."); *In re Enter.*, 735 F. Supp. 2d at 319 (holding that operating procedures issued by parent and applicable to subsidiary, which required the subsidiary to follow a protocol if it wished to deviate from these procedures, were insufficient to sustain alter-ego allegations);

- **Contract Policy**.  Plaintiffs claim that Teva Ltd. "controls" contracts by its subsidiaries (Opp. at 11), but Plaintiffs cite only a basic high-level policy clarifying that the "proper corporate supervisor, in conjunction with the relevant Teva Legal function and the Global Compliance Group," must approve certain important contracts. (Ex. 25 to Fahey Report.)  Plaintiffs and the Fahey Report conveniently omit the section listing the many types of contracts that do ***not*** require any such review.  (TEVA_MDL_JD_00001128 at 3-4, attached hereto as Exhibit 2 to Reed Decl.)  Some form of financial control and approval by a parent over its subsidiaries' conduct is insufficient to support veil-piercing.  *See Precision, Inc. v. Kenco/Williams, Inc.*, 66 F. App'x 1, 4-5 (6th Cir. 2003) (holding that fact that "parent had financial control of the subsidiary through approval of budgets and capital expenditures" is insufficient to sustain alter-ego allegations.)

- **Tax Benefits**.  Plaintiffs' assertions that Teva Ltd. receives tax benefits in the U.S and Israel as a result of its ownership of its United States-based subsidiaries has nothing to do with sharing financial assets; it is simply a consequence of each nation's tax code.  (Opp. at 11-12.)

This evidence shows nothing more than a typical parent-subsidiary relationship by a multi-national Israel-based company monitoring the performance of its subsidiaries.  It does not show

the lack of separate assets—much less total control and domination by Teva Ltd. over Cephalon,

Teva USA, the Actavis Generic Entities, or any other US-subsidiary.

> **g.     Teva Ltd. Does Not Exert Control Over The Daily Affairs Of Its Indirect Subsidiaries.**

Plaintiffs argue that Teva Ltd. controlled the *day-to-day affairs and operations* of its United

States-based, indirectly held subsidiaries—Teva USA, Cephalon, and the Actavis Generic Entities.

(Opp. at 12-16.)    But after the production of millions of pages of documents by these separate

corporate defendants, and jurisdictional discovery of Teva Ltd., Plaintiffs offer nothing more than

evidence that Teva Ltd. is involved in some critical decisions that impact the "Teva" brand as a

whole—not, for instance, who gets hired or fired, how products get marketed, or even the team doing

the marketing.  Nothing Plaintiffs cite is inconsistent with the typical managerial oversight that all

corporate parents and majority shareholders provide to their subsidiaries.  *See, e.g.*, *Anwar*, 876 F.3d

at 849 (alter ego doctrine requires "[a] showing that the parent controls the subsidiary to such a

degree as to render the latter the mere instrumentality of the former . . . [exercising] pervasive control

over the subsidiary . . . from broad policy decisions to routine matters of day-to-day operation.");

*Ranza*, 793 F.3d at 1074 ("A parent corporation may be directly involved in financing and macro-

management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely

its alter ego.") (internal citation and quotation omitted).

Plaintiffs, for instance, resort to cherry-picked language from Teva Ltd.'s consolidated

filings and other public documents that describe the Teva corporate family's pharmaceutical business

and management in very general terms, using pronouns like "we," "our" and "Teva."  (Opp. at 16-

17.)  As explained above, such descriptions are irrelevant to the alter-ego analysis.  If Teva Ltd. truly

dominated the daily activities of its subsidiaries from its headquarters in Israel, such that they had no

separate corporate existence, one would expect that Plaintiffs could cite documents showing

individuals associated with Teva Ltd. exerting control over the day-to-day decisions of Teva USA, Cephalon, and the Actavis Generic Entities.  Plaintiffs fail to cite any such documents.

Plaintiffs further try to characterize the global responsibilities of individuals within the Teva corporate family as supposed "proof" that Teva Ltd. controls the daily affairs of its subsidiaries. (Opp. at 12-17.)  But the opposite is true.  As Teva Ltd.'s 30(b)(6) corporate representative confirmed, the day-to-day operations are solely in control of the employees of each subsidiary. (Crawford Decl. Ex. A, Herman 30(b)(6) Tr. at 190:2-20, 257:21-258:11, 373:9-374:6, 377:4-17, 378:23-379:1.)  Those employees make daily decisions about the marketing, sale, and distribution of pharmaceutical products.  Those employees even instruct the Teva global departments (not the other way around) as to what products to develop.  (*Id*. at 190:2-20.)  Once the product is developed, it is again the employees of the subsidiaries who decide manufacturing quantities and schedule.  (*Id*.)

Plaintiffs next offer a few examples of key corporate decisions over which Teva Ltd. had some insight—but none show control over day-to-day operations.  For example, Plaintiffs argue that a Teva Ltd. employee headed the Pharmacovigilance Global Department and that this group conducted at least one independent audit of Teva USA (Opp. at 14), but this shows the opposite of day-to-day control:  it shows high-level oversight over "medical safety evaluation operations around the world."  (Crawford Decl. Ex. A, Herman 30(b)(6) Tr., at 330:13-15).  Indeed, as Mr. Herman made clear, "there were Teva USA employees responsible for the medical safety evaluation in the US.  They [simply] had professional reporting lines to the global head of medical safety evaluation that was, at that point in time, a TPI [Teva Ltd.] employee."  (*Id.* at 329:12-17).  Similarly, Plaintiffs' references to high-level policies by Teva Ltd. to ensure global brand messaging, the use of a single

"Teva website portal," and global restructuring decisions that impact subsidiaries (Opp. at 14, 17) show nothing more than typical—and necessary—parental management.

Likewise, Plaintiffs' assertion that "it was the recommendation of Teva Ltd.'s Executive Management, with Teva Ltd.'s CEO's ultimate approval, that decided not to launch a Teva opioid product in the U.S. for which it already had approval" is simply untrue.  (Opp. at 13.)  The member of Teva Ltd.'s Executive Management who made that recommendation was Brendan O'Grady, whom Plaintiffs concede is an employee and officer of Teva USA (as well as a global officer).  (Opp. at 15; Fahey Rep. at 7-8; Dk No. 1817 at 45.)  Moreover, whether a subsidiary should not move forward with a new FDA-approved product, particularly after significant investment in the development of that product, is a fundamental decision "material to TPI [Teva Ltd.] and the group . . . not only to Teva USA."  (Crawford Decl. Ex. A, Herman 30(b)(6) Tr., at 343: 2-15.)  It certainly does not reflect control over the day-to-day operations of the subsidiary, such as budget allocations for products or even how any product is marketed, by whom, to whom, when, and where.  There is no such evidence.[12]

At most, Plaintiffs' evidence shows "macromanagement" by Teva Ltd. over key issues impacting its subsidiaries—a showing that is woefully insufficient to support the application of the alter ego doctrine.  *Anwar*, 876 F.3d at 850.

### 2.     Plaintiffs Do Not Even Attempt To Identify Any Fraud, Extreme Misconduct, Or Other Injustice By Teva Ltd.

In addition to showing that Teva Ltd. and its subsidiaries are indistinguishable (which Plaintiffs have failed to do), Plaintiffs also must demonstrate that Teva Ltd. abused the corporate

---

[12]     With respect to opioids, Plaintiffs note that the CEO of Teva Ltd. directed a working group to review the status of the opioid abuse epidemic in the United States and consider potential responses.  (Opp. at 16.)  But there is no showing that Teva Ltd. dictated the responses.  And as Mr. Herman testified, "these are all Teva US employees [on the email].  This is an opioid epidemic in the US market.  This is a Teva USA issue."  (Crawford Decl. Ex. A, Harman 30(b)(6) Tr., at 364:23-365:1).  Regardless, nothing about that action supports Plaintiffs' alter-ego theory.

form to commit fraud, extreme misconduct, or other injustice.  *See Belvedere Condo.*, 617 N.E.2d at 1077; *see also Anwar*, 876 F.3d at 849.  This additional prong of the alter-ego liability analysis ensures that courts will look past the corporate form in only rare cases with extraordinary facts: "Limiting piercing to cases in which the shareholders used their complete control over the corporate form to commit **specific egregious act**s is key to maintaining this [policy-driven] balance." *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 544 (Ohio 2008).  A merely "unjust or inequitable act" is insufficient.  *Id.* at 544-45.

Plaintiffs do not even attempt to address this prong, much less satisfy it.  The argument is thus forfeited, and Teva Ltd. must be dismissed.  *See Talmer Bank & Tr. v. Minton Firm, P.C.*, 660 F. App'x 439, 444 (6th Cir. 2016) ("[t]o 'raise' an argument, a litigant must provide some minimal argumentation in favor of it, and we do not have that here . . .  We therefore deem this argument forfeited.")  In any event, there are no allegations—much less evidence—to suggest that Teva Ltd. engaged in fraud or extreme misconduct by allegedly controlling the decision-making of its subsidiaries, or that failing to apply the alter ego doctrine would result in a manifest injustice. Indeed, Plaintiffs have sued more than 10 solvent indirect subsidiaries of Teva Ltd. for which there **is** personal jurisdiction.  There is no evidence justifying application of the exceedingly "rare exception" to the general rule that the actions of a subsidiary cannot be imputed to the parent.

### C.   The Court May Not Exercise Personal Jurisdiction Over Teva Ltd. As The Alleged Successor-In-Interest of Ivax, Barr, Cephalon Or The Actavis <u>Generic Entities</u>.

Plaintiffs also claim that Teva Ltd. is subject to personal jurisdiction because it is the alleged "successor" of various United States-based companies under Ohio law.  (Opp. at 17-20.) This theory fails for multiple reasons.

*First*, the concept of generalized "successor" personal jurisdiction is inconsistent with controlling Supreme Court authority.  As a matter of fundamental due process, personal

jurisdiction cannot rest upon the conduct of agents or other third parties, particularly with respect to a foreign entity.  *See BMS,* 137 S.Ct. at 1781; *Daimler AG*, 571 U.S. at 139; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 921, 929 (2011) (same).  In *Daimler*, the Supreme Court held that "even if we were to assume that [the subsidiary] is at home in California, and further to assume [that the subsidiary's] contacts are imputable to [the parent], there would still be no basis to subject [the parent] to general jurisdiction in California, for [the parent's] slim contacts with the State hardly render it at home there."  571 U.S. at 136.  More recently, in *BMS,* the Supreme Court evaluated the exercise of specific personal jurisdiction over a foreign corporation based on its relationship with third parties, and made clear that "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction. . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."  137 S. Ct. at 1781 (internal citation omitted).

Here, like the parent company in *Daimler*, Teva Ltd. is not "at home" in the United States (regardless of any acquisition) because it is not headquartered and does not have its principal place of business there.  (Mot., at 8-9.)  And Teva Ltd. has never marketed, sold, or distributed opioids in the United States—as required for specific personal jurisdiction.  (*Id.* at 9-10.)  Tellingly, Plaintiffs do not even bother to address federal personal jurisdiction principles—or this controlling Supreme Court case law—in any meaningful way.

Indeed, the very cases cited by Plaintiffs show why this theory is not applicable here.  The Ohio Supreme Court has applied the successorship theory only as a means of establishing *liability*—and neither it nor any Ohio state court has extended it to serve as an independent basis for exercising *personal jurisdiction*.  For instance, Plaintiffs cite *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (1993), but the Ohio Supreme Court did not even mention personal

jurisdiction there; instead, it applied the successorship theory of liability simply in response to the question of "whether a stranger corporation that purchases the assets of another corporation may be held *liable* for the unassumed contractual obligations of the predecessor under a ***theory of successor liability***."  617 N.E.2d at 1132 (emphasis added).  Similarly, in *Flaugher v. Cone Automatic Mach. Co.*, 507 N.E.2d 331 (1987), the Ohio Supreme Court did not mention personal jurisdiction; it applied the successorship theory of liability solely to determine "whether either of the appellee corporations falls within a recognized exception to the traditional rule of successor non-*liability*."  507 N.E.2d at 333-34 (emphasis added).[13]  Plaintiffs' request that this Court expand the successorship theory of liability in Ohio to serve as an independent basis for exercising personal jurisdiction—beyond the boundaries established by the Ohio Supreme Court—should be rejected.[14]

**Second,** Plaintiffs' successorship arguments about Barr Pharmaceuticals, Inc. ("Barr") and Ivax Corporation ("Ivax") are irrelevant.  There are no allegations about either company in the TAC, and neither of these entities is a party to the litigation.  Even if Teva Ltd. were subject to personal jurisdiction based on the indirect acquisition of Barr and Ivax (and it is not), it would at

---

[13]     The State of Ohio is not alone in failing to recognize the successorship theory of liability as an independent basis for exercising personal jurisdiction.  *See BRG Corp. v. Chevron U.S.A., Inc.*, 163 A.D.3d 1495, 1496, 82 N.Y.S.3d 798, 799 (N.Y. App. Div. 2018) ("[P]laintiffs contend that personal jurisdiction exists over defendant because it ostensibly bears successor liability for a predecessor corporation that was itself subject to personal jurisdiction in New York. The Third Department, however, expressly rejected that jurisdictional theory in *Semenetz* (*see id.* at 1140, 801 N.Y.S.2d 78). The "successor liability rule[s]," wrote the *Semenetz* court, "deal with the concept of tort liability, not jurisdiction. When and if [successor liability] is found applicable, the corporate successor would be subject to liability for the torts of its predecessor in any forum having in personam jurisdiction over the successor, but the [successor liability rules] do not and cannot confer such jurisdiction over the successor in the first instance" (*id.*)").

[14]     Plaintiffs' citation to a single federal district decision applying the successorship theory of liability as an independent basis for personal jurisdiction over a foreign parent is insufficient.  (Opp. at 17) (citing *Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531 (S.D. Ohio 2012)).  That decision did not involve a foreign parent company, and the court found that the allegations were sufficient to find that the purchasing company actively continued the operations of the predecessor or engaged in the transaction to escape liability.  *Id.* at 541.  There are no such allegations or arguments here.

most be subject to personal jurisdiction only as to claims related to those entities' marketing or distribution of their opioid medications—none of which have been pled or are at issue here.

**Third**, even if Plaintiffs' successorship arguments could establish personal jurisdiction (and they cannot), the successorship doctrine is not applicable to impose personal jurisdiction over Teva Ltd.  Without providing the underlying transaction documents, Plaintiffs argue that Teva Ltd. somehow "merge[d]" with Barr, Ivax, Cephalon, and the Actavis Generic Entities.  (Opp. at 20.)  But any argument that Teva Ltd. merged with these companies for purposes of successor liability is nonsense, and disproved by Plaintiffs' own cited documents.  **All** of these entities were acquired—through equity transactions (and not asset purchases)—by indirect subsidiaries of Teva Ltd; **none** merged with Teva Ltd.  (Ex. 1, Herman Decl., at ¶ 8; *see* Fahey Rep. Ex. 17 at 9, Ex. 18 at 16, Ex. 19 at 8.)  Under Plaintiffs' own reading of successor liability,[15] whereby liability supposedly flows to the "merged" entity (Opp. at 17), any such liability as to Barr, Ivax, Cephalon, and the Actavis Generic Entities lies, at most, with the indirect Teva Ltd. subsidiaries that acquired the equity of those entities—**not** with Teva Ltd.  At a minimum, this offers no basis to impose personal jurisdiction on Teva Ltd.

**Fourth**, Plaintiffs argue that Teva Ltd. **agreed** to pay settlements of investigations into the conduct of various United States' subsidiaries concerning non-opioid products.  (Opp. at 19-20.)  But making a settlement payment for the conduct of a subsidiary cannot subject a foreign entity to personal jurisdiction as a matter of law—it is not even one of the four narrow circumstances under which Ohio courts allow the exercise of successor liability.  *See Welco*, 617 N.E.2d 1129, 1134.  And, even if it could, those investigations do not involve any conduct by any subsidiary pertaining to the sale, marketing, or distribution of opioid medicines.  Plaintiffs also argue that personal

---

[15]     Notably, Plaintiffs wrongly describe these transactions as asset purchase transactions in their opposition—which further shows Plaintiffs' flawed shotgun approach to personal jurisdiction.

jurisdiction over Teva Ltd. is proper because it submitted to the personal jurisdiction of a district court to settle an investigation by the ***Federal Trade Commission*** ("FTC") into Cephalon's non-marketing conduct about non-opioid medicines (Opp. at 19), but this too is insufficient.  Even if Teva Ltd. agreed to submit to jurisdiction in one court (in connection with a settlement agreement about antitrust issues), that does not mean that it agreed to submit to the personal jurisdiction of this Court in Ohio with respect to the actions of each of its indirectly held subsidiaries.  *See Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 37 n. 10 (D.D.C. 2014) ("[I]t is well established that consent to personal jurisdiction in one case does not waive the right to assert lack of personal jurisdiction in another case in that same forum."); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n. 5 (2d Cir. 1991) ("A party's consent to jurisdiction in one case, however, extends to that case alone. It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available.")  These cases have nothing to do with the claims pled in this action and, thus, cannot possibly form the basis for specific personal jurisdiction, which requires case-linked contacts by Teva Ltd. with Ohio.

***Lastly***, in support of its successorship argument as to the Actavis Generic Entities, Plaintiffs argue that Teva Ltd. "agreed to indemnify" Allergan plc with respect to claims related to the conduct of the Actavis Generic Entities it acquired.  (Fahey Report at 6-7.)  But an indemnification agreement is not a basis for personal jurisdiction (and Plaintiffs offer no such case), and has nothing to do with successorship principles.  More simply, an indemnification arrangement between Allergan plc (an Irish company) and Teva Ltd. (an Israeli company) does not make Teva Ltd. responsible for the liabilities (if any) of the entirely separate Actavis Generic Entities.  (Ex. 20 to Fahey Rep., at 13.)  Once again, there is no dispute that Teva Ltd. did not sell,

marketing, or distribute opioid medicines in Ohio or anywhere in the United States. (Ex. 1, Herman Decl., at ¶ 2.) No personal jurisdiction exists.

### D. Plaintiffs Fail To Present Any Facts Demonstrating That Teva Ltd. Was Complicit In The Purported Wrongful Conduct Of Its Indirect Subsidiaries

Plaintiffs try to hedge their alter-ego theory by relying upon a tortured conspiracy theory of personal jurisdiction—that "to the extent that Teva Ltd. was complicit" in the purportedly criminal conduct of Cephalon, Teva USA, or the Actavis Generic Entities, such conduct would independently support jurisdiction over Teva Ltd. (Opp. 20-21 (acknowledging that Teva Ltd. did not commit any acts in Ohio).) This argument fails for many reasons.

As an initial matter, "courts in this district have declined to exercise personal jurisdiction over a non-resident defendant based solely upon participation in a conspiracy when the defendant has no other contacts with Ohio." *Int'l Watchman Inc. v. Strap.ly*, No. 1:18 CV 1690, 2019 WL 1903557, at *4 (N.D. Ohio Apr. 29, 2019); *see also Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F. Supp. 2d 796, 808 (N.D. Ohio 1998) ("[F]ederal courts in Ohio have not adopted the conspiracy theory which would impute a co-conspirator's jurisdictional contacts with the forum to the foreign defendant seeking dismissal."); *Microsys Computing, Inc. v. Dynamic Data Systems*, LLC, 2006 WL 2225821, at *9 n. 8 (N.D. Ohio Aug. 2, 2006) (citing *Philip Morris* and holding that "[plaintiff's] Complaint asserts a claim of conspiracy against both [defendants]. This claim, however, cannot support the exercise of personal jurisdiction over [defendant] where [defendant] has no contacts with Ohio."). Tellingly, Plaintiffs fail to cite a single case in support of their theory of personal jurisdiction. The Court should reject it.

In addition, even if this were a viable theory (and it is not), Plaintiffs have not presented evidence of *a single action by Teva Ltd.* (much less any action in the United States) that would support the finding of a conspiracy or RICO enterprise. Nor do Plaintiffs cite a single allegation

26

or case to support this theory.  After jurisdictional discovery, Plaintiffs offer nothing to show that Teva Ltd. directed or participated in (or was even aware of) any alleged wrongful conduct at issue by any defendant in this litigation.  This defeats Plaintiffs' theory.

### E.     There Is No Basis For This Court To Delay Deciding This Motion To Dismiss At Trial.

Plaintiffs make one last-ditch effort to avoid dismissal, arguing that this Court should defer the personal jurisdiction issue until trial because "the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits."  (Opp. at 21.) (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989).)  But Plaintiffs have failed to identify a single example of intertwinement between the jurisdictional dispute and the merits dispute.  As numerous courts have done, including in *City of Chicago*, a finding of no personal jurisdiction can be made without wading into the merits of any opioid-related claims.  *See City of Chicago*, 2015 WL 2208423, at *7.

Moreover, the Sixth Circuit has repeatedly explained that the holding in *Serras* is narrow and does not mean that a plaintiff is excused from the baseline requirement to meet its burden of proof.  *See Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 253 (6th Cir. 2009); s*ee also Mkt./Media Research, Inc. v. Union Tribune Pub. Co.*, 951 F.2d 102, 106 (6th Cir. 1991). Plaintiffs' suggestion that they can be relieved from meeting their burden to demonstrate personal jurisdiction by punting the issue to trial "misstates the law." *Palnik*, 344 F. App'x 249 at 253 (holding that the existence of "intimately intertwined" facts does not relieve the plaintiff of its burden."); *see also Mkt./Media Research*, 951 F.2d at 106.

Plaintiffs have had more than enough opportunity to develop a record that would support the exercise of personal jurisdiction over Teva Ltd.  There is little doubt that this complex litigation imposes significant burdens on all parties.  Particularly given the undisputed fact that Israeli-based

Teva Ltd. is not subject to general personal jurisdiction in this Court, and that Teva Ltd. did not have any direct, case-linked contacts with Ohio as required for specific personal jurisdiction, there is simply no sound legal basis to force Teva Ltd. to participate in complex litigation and trial in a foreign court based upon the alleged conduct of separate corporate entities and demonstrably false alter-ego arguments.  Plaintiffs' "wait and see at trial" strategy should be flatly rejected.

## III.    <u>CONCLUSION</u>

For all the foregoing reasons, and the reasons stated in Teva Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction and Supporting Memorandum of Law, Teva Ltd. respectfully requests that the Court dismiss the claims asserted by Plaintiffs against Teva Ltd. for lack of personal jurisdiction.


Dated:  July 30, 2019                            Respectfully submitted,


                                                 */s/ Steven A. Reed*
                                                 Steven A. Reed
                                                 Eric W. Sitarchuk
                                                 Rebecca J. Hillyer
                                                 MORGAN, LEWIS & BOCKIUS LLP
                                                 1701 Market St.
                                                 Philadelphia, PA 19103-2921
                                                 Tel: (215) 963-5603
                                                 steven.reed@morganlewis.com
                                                 eric.sitarchuk@morganlewis.com
                                                 rebecca.hillyer@morganlewis.com

                                                 Nancy L. Patterson
                                                 MORGAN, LEWIS & BOCKIUS LLP
                                                 1000 Louisiana Street, Suite 4000
                                                 Houston, TX 77002-5005
                                                 Tel:  (713) 890-5195
                                                 nancy.patterson@morganlewis.com

                                                 Brian Ercole
                                                 MORGAN, LEWIS & BOCKIUS LLP
                                                 200 South Biscayne Boulevard, Suite 5300

Miami, FL 33131
Telephone: (305) 415-3000
Facsimile: (305) 415-3001
brian.ercole@morganlewis.com

*Attorneys for Specially-Appearing Defendant Teva*
*Pharmaceuticals Industries Ltd*

## **LOCAL RULE 7.1(F) CERTIFICATION**

I certify that this case has been assigned to the "litigation track" pursuant to CMO One

and that this Memorandum adheres to the page limitations set forth in Case Management Order

One (Dkt. 232) and L.R. 7.1(f).


Dated: July 30, 2019                              By: /s/ *Steven A. Reed*
                                                  MORGAN, LEWIS & BOCKIUS LLP
                                                  1701 Market St.
                                                  Philadelphia, PA 19103-2921
                                                  Telephone: (215) 963-5000
                                                  Facsimile: (215) 963-5001
                                                  steven.reed@morganlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2019, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

Dated:  July 30, 2019

*/s/ Steven A. Reed*
Steven A. Reed
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
steven.reed@morganlewis.com