# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| *Track One Cases* | Hon. Dan Aaron Polster |

## DECLARATION OF DORON HERMAN

I, Doron Herman, declare as follows:

1. I am currently employed as the SVP, Head of Tax at Teva Pharmaceutical Industries Ltd. ("Teva Ltd."). I have personal knowledge of Teva Ltd.'s corporate structure, its operations, the relationship between Teva Ltd. and its United States-based subsidiaries, including but not limited to Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Watson Laboratories, Inc. (collectively, the "Actavis Generic Entities"), Cephalon, Inc. ("Cephalon"), and Teva Pharmaceuticals USA, Inc. ("Teva USA"), and the matters stated herein. I make this declaration based on my own personal knowledge and am competent to testify as to the statements made in this declaration.

2. Teva Ltd. does not manufacture, sell, market, or distribute opioid medicines in the United States. Nor does Teva Ltd. hold a Drug Enforcement Administration ("DEA") license.

3. Teva Ltd. does not control the day-to-day aspects of its United States-based subsidiaries, including Cephalon, Teva USA, or the Actavis Generic Entities. In its role as corporate parent, Teva Ltd. provides managerial oversight and other forms of strategic support and direction to United States-based subsidiaries within the Teva corporate family, including issuing a limited number of high-level policies on critical business issues applicable to Teva Ltd. and all subsidiaries. Teva Ltd., however, does not direct or control its United States-based subsidiaries'

businesses on a day-to-day basis. Such operations are solely the responsibility of the local subsidiary and its management. In my experience, this arrangement is consistent with a typical parent-subsidiary relationship.

4. None of Teva Ltd.'s United States-based subsidiaries participate or otherwise make use of the Teva corporate family's trade receivables securitization program. The trade receivables securitization program is an elective method for participating entities under the Teva corporate family to receive immediate compensation in exchange for, among other things, depositing receivables into a Special Purpose Entity ("SPE"). The program allows participating entities to receive immediate compensation from a bank, as opposed to having to wait for payment on the receivable. At no point in any of the transactions for the trade receivables securitization program do Teva Ltd. or its subsidiaries commingle funds or receive less than fair-market value for their receivables. This program certainly does not give Teva Ltd. sole control or use over proceeds from the receivables of United States-based subsidiaries.

5. Teva Ltd. does not make any payments to any manager, officer, or employee of its subsidiaries for services provided on behalf of any subsidiary. Each manager, officer, or employee of Teva Ltd. or its United States-based subsidiaries who has global responsibilities provides those global services pursuant to an arms' length intercompany agreement between Teva Ltd. and its United States-based subsidiaries. Under those intercompany agreements, whichever entity receives global services from the manager, officer, or employee pays the employing entity (either Teva Ltd. or one of its United States-based subsidiaries) for those services.

6. Teva Ltd. does not use its United States-based subsidiaries' cash to repurchase shares or pay dividends to its shareholders. Any money provided to Teva Ltd. by its United States-based subsidiaries is only provided as part of a fair-market value exchange pursuant to an arm's

length transaction between Teva Ltd. and the subsidiary. Teva Ltd. has not moved and does not move money at its discretion between its reserves and those of its United States-based subsidiaries. Transactions between Teva Ltd. and its subsidiaries occur pursuant to formally documented and arms-length arrangements, including intercompany lending agreements, intercompany product royalty agreements, and intercompany service agreements.

7. Any bonus money paid to an employee of one of Teva Ltd.'s United States-based subsidiaries comes from that subsidiary and not from Teva Ltd.

8. When Teva Ltd. acquired Ivax Corporation ("Ivax"), Barr Pharmaceuticals, Inc. ("Barr"), Cephalon, and the Actavis Generic Entities (the "Acquired Entities"), none of the Acquired Entities merged with Teva Ltd. All Acquired Entities were acquired pursuant to equity transactions, whereby an indirect subsidiary of Teva Ltd. acquired an ownership stake in the Actavis Generic Entities, and Ivax, Barr, and Cephalon merged with indirect subsidiaries of Teva Ltd. (collectively, the "Surviving Entities"). All of the Surviving Entities (as indirect subsidiaries) continue to operate separately and independently of Teva Ltd., and have separate management that sets policies for the Surviving Entities (and not Teva Ltd.). Teva Ltd. does not control the Surviving Entities' day-to-day activities, does not conduct or transact business on behalf of the Surviving Entities, and does not manage the daily business affairs of the Acquired Entities.

9. Teva Ltd. does not have the same address, phone line, or headquarters as its United States-based subsidiaries.

10. All of Teva Ltd.'s United States-based subsidiaries keep separate financial books and records, and file a consolidated tax return that is separate from Teva Ltd., which files its own returns. Teva Ltd. aggregates information provided by its subsidiaries for managerial, reporting, and tax purposes, but does not keep or maintain the financial records for those subsidiaries.

Pursuant to 28 U.S.C. §1746(1), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: July 30, 2019         By: _____
                                Doron Herman