**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| This document relates to: | Hon. Dan Aaron Polster |
| *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-OP-45090 | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SPECIALLY-APPEARING DEFENDANT TEVA PHARMACEUTICAL INDUSTRIES LTD. TO STRIKE THE EXPERT REPORT OF ALEC FAHEY**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

I.     PLAINTIFFS NEVER DISCLOSED MR. FAHEY AS AN EXPERT ........................... 2

II.    THE FAHEY REPORT ................................................................................ 4

ARGUMENT ........................................................................................................ 6

I.     THE COURT SHOULD STRIKE THE FAHEY REPORT AS UNTIMELY, UNAUTHORIZED, AND INADMISSIBLE .................................................... 6

    A.     The Fahey Report Is Untimely Under CMO 8 ................................ 6

    B.     The Fahey Report Disregards The April 3 Order, Which Does Not Contemplate Expert Reports ........................................................ 8

    C.     The Fahey Report Violates Federal Rule of Evidence 702 and *Daubert* ............. 9

II.    IF THE COURT DOES NOT STRIKE THE FAHEY REPORT, TEVA LTD. WILL SUFFER ADDITIONAL PREJUDICE BECAUSE IT CANNOT TAKE APPROPRIATE RECIPROCAL DISCOVERY ...................................... 12

CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Adams v. Farbota*,
   306 F.R.D. 563 (M.D. Tenn. 2015) ...............................................................................6

*Anwar v. Dow Chem. Co.*,
   876 F.3d 841 (6th Cir. 2017) ...........................................................................11, 12

*Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*,
   617 N.E.2d 1075 (Ohio 1993)...................................................................................12

*Borg v. Chase Manhattan Bank USA, N.A.*,
   247 F. App'x. 627 (6th Cir. 2007) ............................................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)..............................................................................................1, 9

*Delay v. Rosenthal Collins Grp., LLC*,
   No. 2:07-CV-568, 2012 WL 5878873 (S.D. Ohio Nov. 21, 2012) ..........................10

*Estes v. King's Daughters Med. Ctr.*,
   59 F. App'x 749 (6th Cir. 2003) ...............................................................................8

*Gentry v. Hershey Co.*,
   687 F. Supp. 2d 711 (M.D. Tenn. 2010)....................................................................6

*Georgel v. Preece*,
   No. 0:13-57, 2014 U.S. Dist. LEXIS 194562 (E.D. Ky. Dec. 10, 2014)..................14

*Grayiel v. AIO Holdings, LLC*,
   No. 3:15-CV-00821, 2019 U.S. Dist. LEXIS 97113 (W.D. Ky. Mar. 15, 2019) .................13

*Halvorsen v. Plato Learning, Inc.*,
   167 F. App'x 524 (6th Cir. 2006) .............................................................................9

*Hester v. Vision Airlines, Inc.*,
   No. 2:09-cv-00117, 2013 U.S. Dist. LEXIS 127340 (D. Nev. Sept. 5, 2013).........14

*Hodges v. Salvanalle, Inc.*,
   No. 1:12-cv-2851, 2014 WL 584756 (N.D. Ohio Feb. 12, 2014) ............................7

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004).....................................................................11

*Inv'rs Asset Acquisition, LLC v. Scardina*,
Case No. 2014CA004618, Order Granting in Part and Denying in Part
Plaintiffs' Motion in Limine to Exclude Alex Fahey ........................................................12

*Istvan v. Honda Motor Co., Ltd.*,
455 F. App'x 568 (6th Cir. 2011) .........................................................................................12

*Overlook Mut. Homes, Inc. v. Spencer*,
No. 3:07CV398, 2008 WL 5120698 (S.D. Ohio Oct. 3, 2008) ...............................................8

*Pride v. BIC Corp.*,
218 F.3d 566 (6th Cir. 2000) ..........................................................................................6, 9

*Rheinfrank v. Abbott Labs., Inc.*,
No. 1:13-cv-144, 2015 U.S. Dist. LEXIS 191660 (S.D. Ohio Oct. 2, 2015) .........................10

*Shannon v. State Farm Ins.*,
No. 14-cv-14153, 2016 U.S. Dist. LEXIS 69661 (E.D. Mich. May 27, 2016) ........................6

*Shough v. Mgmt. & Training Corp.*,
No. 3:16 CV 53, 2018 WL 295576 (N.D. Ohio Jan. 3, 2018) ..................................................9

*Torres v. County of Oakland*,
758 F.2d 147 (6th Cir. 1985) .............................................................................................10

*United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*,
821 F.3d 742 (6th Cir. 2016) ...............................................................................................7

*Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*,
253 F. Supp. 3d 997, 1015 (S.D. Ohio 2015) ....................................................................11

*Webb v. Lucas*,
No. 1:07CV3290, 2017 WL 11037355 (N.D. Ohio Apr. 18, 2017) .........................................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 26.................................................................................................................7, 13

Fed. R. Civ. P. 26(a) ...............................................................................................................7

Fed. R. Civ. P. 26(a)(2)(A) ......................................................................................................6

Fed. R. Civ. P. 26(a)(2)(B)(ii).................................................................................................8

Fed. R. Civ. P. 26(a)(2)(B)(iv).................................................................................................8

Fed. R. Civ. P. 26(a)(2)(B)(v).................................................................................................8

Fed. R. Civ. P. 26(a)(2)(D) ......................................................................................................6

Fed. R. Civ. P. 26(b)(4)(A) ...............................................................................................13

Fed. R. Evid. 702 ........................................................................................................1, 9

Fed. R. Evid. 702(a) .........................................................................................................9

Fed. R. Evid. 704 ...........................................................................................................10

Fed. R. Evid. 704(a) .........................................................................................................9

Fed. R. Civ. Pro. 26(a)(2) ................................................................................................6

Fed. R. Civ. Pro. 26(a)(2)(B) ..........................................................................................8

Fed. R. Civ. Pro. 37(c)(1) ................................................................................................7

## INTRODUCTION

Plaintiffs may not subject an Israeli-based company beyond the Court's jurisdiction to civil litigation in the United States—let alone a protracted and expensive litigation like this one.  Under controlling law, plaintiffs must plead and then adduce facts sufficient to demonstrate that the Court has personal jurisdiction over each and every defendant.  Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") moved this Court in January 2019 to dismiss Plaintiffs' claims because their pleadings lacked any jurisdictional allegations to support this Court's exercise of personal jurisdiction over Teva Ltd.—which is headquartered in Israel and which does not manufacture, market, sell, or distribute opioid medicines in Ohio or anywhere else in the United States.

Recognizing this fundamental flaw, Plaintiffs sought to delay the Court's decision on Teva Ltd.'s motion to allow them time to take jurisdictional discovery and try to manufacture some type of argument.  They propounded a broad range of discovery requests seeking information on Teva Ltd.'s corporate form, business operations, and finances.  The Special Master ordered Teva Ltd. to produce documents and a corporate representative for deposition and set a schedule for production.  (Dkt. No. 1512.)  Teva Ltd. complied with its obligations.

After seeking multiple extensions, Plaintiffs filed their Opposition brief on July 5, 2019.  To Teva Ltd.'s surprise, Plaintiffs' brief attached the report of a previously undisclosed expert, Alec Fahey, a certified public accountant ("CPA") that Plaintiffs had retained in January (the "Fahey Report").  This report comes nearly three months too late.  The Court's Case Management Order ("CMO") 8 set March 25, 2019 as the deadline for Plaintiffs to designate their experts.  Although Plaintiffs retained Mr. Fahey *in January*, they neglected to disclose him or seek an extension for his report.  And even if Plaintiffs had complied with the Court's orders and the Federal Rules of Civil Procedure, the Fahey Report is inadmissible.  The Fahey Report offers legal

conclusions, simply narrates the evidence, and offers nothing to assist the trier of fact—making such a report prohibited under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588, 597 (1993).

In short, as matter of fairness and due process, the Fahey Report should be struck. Excluding the report altogether is particularly appropriate here, where Teva Ltd. cannot test Mr. Fahey's opinions in a deposition or submit a rebuttal report. (*See* Declaration of Steven A. Reed ("Reed Decl."), Exs. 9-10 (barring further discovery by Teva Ltd.).)  Indeed, Teva Ltd. has no means of challenging Mr. Fahey on the many inaccuracies in the Fahey Report, upon which Plaintiffs' alter ego theory of personal jurisdiction depends.  At a minimum, Teva Ltd. should be provided the opportunity to depose Mr. Fahey and to supplement its briefing and the record on its pending motion to dismiss through the submission of a rebuttal expert report.[1]

## BACKGROUND

### I.   PLAINTIFFS NEVER DISCLOSED MR. FAHEY AS AN EXPERT.

On January 15, 2019, Teva Ltd. moved to dismiss for lack of personal jurisdiction.  (Dkt. No. 1264.)  Plaintiffs' Opposition to Teva Ltd.'s motion was originally due February 14, 2019.  But, despite filing this case more than two years ago and being aware that the issue of jurisdictional discovery was ripe when the Court issued Case Management Order One on April 11, 2018 (Dkt. No. 232), Plaintiffs waited until after the close of fact discovery and the eve of Plaintiffs' deadline to respond to Teva Ltd.'s motion, and only then asked the Court for an extension to respond "after personal jurisdiction discovery is complete." (Dkt. No. 1365.)  The Court granted the request and

---

[1]     As Teva Ltd. has explained in its Reply Memorandum in Support of its Motion to Dismiss, even if the Court does not strike the Fahey Report, this Report still fails to show a *prima facie* case of personal jurisdiction over Teva Ltd.—much less establish such jurisdiction by a preponderance of the evidence.  At most, once the rhetoric and legal conclusions are properly discarded (and the factual mistakes are remedied), the Fahey Report shows nothing more than the indicia of a traditional parent/subsidiary relationship, which is not a basis for personal jurisdiction.

directed the parties to meet and confer with Special Master Cohen on "whether and to what extent" Plaintiffs may conduct personal jurisdictional discovery.  (Dkt. No. 1372.)

Teva Ltd. met and conferred with Plaintiffs various times regarding potential jurisdictional discovery.  Plaintiffs mentioned nothing regarding experts.  On March 18, 2019 and March 21, 2019, the parties provided their last letter reports on these meet and confers to Special Master Cohen.  (Reed Decl., Exs. 1-2.)  As before, Plaintiffs mentioned nothing regarding experts.

On March 25, 2019, as required by CMO 8, Plaintiffs disclosed and submitted reports for twenty experts in the Track One cases.  (CMO 8, Dkt. No. 1306.)  Plaintiffs failed to disclose Mr. Fahey as an expert, even though he had been retained in early January.  (Fahey Rep. at 3.)

On April 3, Special Master Cohen formally announced that Plaintiffs were entitled to "limited jurisdictional discovery" from Teva Ltd. ("April 3 Order") and ordered Teva Ltd. to produce selected categories of documents and a corporate representative for deposition to testify on topics relevant to the personal jurisdiction analysis.  (Dkt. No. 1512.)  He then set a deadline for Teva. Ltd.'s production and deposition, and extended Plaintiffs' due date for their Opposition to June 5, 2019.  *Id.*  Neither the agreement nor the order permitted the belated submission of expert disclosures.

In accordance with the April 3 Order, Teva Ltd. produced responsive documents on May 1, June 3, June 11, June 13, and July 2, 2019.  (Reed Decl., Exs. 3-7.)  On July 5, after requesting multiple extensions, Plaintiffs filed their Opposition to Teva Ltd.'s motion to dismiss for lack of personal jurisdiction.  (Dkt. No. 1815.)   Without any notice, Plaintiffs attached to their filing the report of Mr. Fahey, a CPA whom Plaintiffs retained in January to determine "whether Teva Pharmaceutical Industries Limited ('Parent') controls and dominates its subsidiaries, and whether the control factors analyzed establish from a financial and accounting standpoint that the

-3-

subsidiaries are agents of the Parent."  (Dkt. No. 1815-2.)  As discussed below, two days ***before*** Plaintiffs submitted the Fahey Report, the Court had already issued a non-docketed order denying Teva Ltd. the ability to take any discovery, including as to Mr. Fahey.  (Reed Decl., Ex. 9-10.)

On July 2, Mallinckrodt plc, in response to Plaintiffs' filing of a similar previously undisclosed expert report by Mr. Fahey in opposition to their motion to dismiss for lack of personal jurisdiction, submitted a letter to the Court and noted that it planned to file a motion to strike, or in the alternative, to depose Mr. Fahey and submit a rebuttal expert report.  (Reed Decl., Ex. 8.)  The next day, the Court issued a non-docketed Order (the "July 3 Order"), stating:

> Mallinckrodt, Allergan, and Teva have asked the Court for additional time and discovery on their Motions to Dismiss For Lack of Personal Jurisdiction . . . The Court has thus far been exceedingly generous with requests for discovery . . . but ***at this time the parties have received all the discovery and extension of time they are going to get***.

(Reed Decl., Ex. 9 (emphasis added).)[2]

On July 5, Mallinckrodt plc filed a motion to clarify, asking the Court whether the July 3 Order precluded it from filing a motion for relief in connection with the Fahey Report.  (Dkt. No. 1814.)  In a non-docketed Order (the "July 8 Order"), the Court indicated that its July 3 Order did not prevent Mallinckrodt pc, Allergan plc, or Teva Ltd. from moving to strike, but stated that "***no additional discovery*** or extensions of time will be granted."  (Reed Decl., Ex. 10) (emphasis added).  To date, Teva Ltd. has been given no ability to take any discovery as to Mr. Fahey to explore and challenge the basis for his opinions.  While the Fahey Report does not establish personal jurisdiction (or even raise a *prima facie* case), it is procedurally and substantively improper—and should be stricken.

---

[2]     Teva Ltd. never asked for additional discovery on its motion to dismiss for lack of personal jurisdiction, and, in fact, Plaintiffs were the ones who requested and obtained that discovery.

## II.  THE FAHEY REPORT

Though titled a "declaration," the 33-page Fahey Report is a thinly-veiled expert report that selectively quotes from Teva Ltd.'s SEC filings, corporate documents, financial statements, and other documents.  (Dkt. No. 1817.)  Like Plaintiffs' other expert reports, the Fahey Report purports to include a statement of qualifications, scope of engagement, compensation rate, list of documents reviewed, summary of conclusions, and selective excerpts of documents reviewed.  *Id.* For example, the Fahey Report states that Mr. Fahey's fee is "not contingent on the outcome of this matter" and that his hourly rate is "$225 for review and analysis, research, report preparation and testimony." *Id.* at 5.

The Fahey Report also includes a summary of "conclusions" which Mr. Fahey "reserve[s] the right" to supplement.  *Id.*  He presents three main conclusions:

1. Parent, through its Board of Directors ("BoD"), CEO and common officers, controls its subsidiaries, so that its subsidiaries, including the U.S. subsidiaries that sold opioid products, lack independence and have no control over their fate or existence.

2. Parent has extensive investment in its U.S. subsidiaries and enjoys substantial financial and tax benefits from its operations in the U.S.

3. The control, domination and financial benefit factors which are identified in this Declaration, are relevant to the determination of the legal theory that the U.S. subsidiaries that sold the opioid products are agents and/or alter egos of the Parent.

*Id.*  All of these conclusions, however, rest upon facts that could equally apply to any traditional parent/subsidiary relationship.  Moreover, the Fahey Report ignores many of the key legal factors that determine whether a subsidiary is a mere alter ego for purposes of personal jurisdiction. Worse, the Fahey Report cites and then often mischaracterizes cherry-picked excerpts of produced and public documents, including Teva Ltd's 10-K filings, investor announcements, credit agreements, company policies, and more.  *See generally id.*  It even includes charts that purportedly

and wrongly show that Teva Ltd. shares its funds with its subsidiaries, yet provides no basis for the conclusions Mr. Fahey draws. *See generally id.*

## ARGUMENT

## I. THE COURT SHOULD STRIKE THE FAHEY REPORT AS UNTIMELY, UNAUTHORIZED, AND INADMISSIBLE

### A. The Fahey Report Is Untimely Under CMO 8

As an initial matter, the Fahey Report should be struck because it violates CMO 8, which required Plaintiffs to disclose their experts by March 25, 2019. (Dkt. No. 1306.) Even though Plaintiffs had retained Mr. Fahey on January 2, they failed to disclose him as an expert witness until July 5, over three months after the deadline for expert disclosures. *Id.* In fact, despite multiple opportunities, Plaintiffs never even disclosed to Teva Ltd. (or the Court) that it was contemplating retaining such an expert. Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose its testifying witnesses "at the time and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(A); Fed. R. Civ. P. 26(a)(2)(D). Here, the Court-ordered disclosure deadline was March 25, 2019. (Dkt. No. 1306.)

Courts in the Sixth Circuit regularly "exclud[e] an expert witness's testimony for failure to comply with the court's expert disclosure deadline." *Adams v. Farbota*, 306 F.R.D. 563, 572 (M.D. Tenn. 2015); *see e.g.*, *Gentry v. Hershey Co.*, 687 F. Supp. 2d 711, 725 (M.D. Tenn. 2010) (finding expert report "should not be considered" because party "wait[ed] until the end of discovery and attempt[ed] to supplement an expert report in opposition to a motion for summary judgment"); *see also Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000) ("District courts have broad discretion to exclude untimely disclosed expert-witness testimony."); *Shannon v. State Farm Ins.*, No. 14-cv-14153, 2016 U.S. Dist. LEXIS 69661, at *7 (E.D. Mich. May 27, 2016)

(listing Sixth Circuit decisions upholding district court orders striking experts as a result of discovery violations).

Indeed, "Federal Rule of Civil Procedure 37(c)(1) requires **absolute compliance** with Rule 26(a)—that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016) (internal citations omitted). Thus, "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial," unless the party proves that the failure was substantially justified or is harmless.[3] Fed. R. Civ. P. 37(c)(1).

Plaintiffs' failure to disclose Mr. Fahey was neither substantially justified nor harmless. Plaintiffs concede that they engaged Mr. Fahey on January 2, 2019, almost three months before the CMO 8 expert disclosure deadline.  (Fahey Rep. at 3.)  In *Bradford v. Bracken County*, the district court struck an expert report filed nearly three months after the court's deadline and eight days after defendants filed their summary judgment motions.  No. 09-115, 2012 WL 2178994, at *6-7 (E.D. Ky. June 13, 2012).  As here, plaintiffs' untimely disclosure was "a calculated decision" based on plaintiffs' review of the motions and "[could] not be considered harmless."  *Id.* at *7. The court reasoned that defendants would be "strongly prejudiced" if it allowed the report because defendants had no notice of the report's contents or "opportunity to depose" the expert.  *Id.* at *9; *see also Hodges v. Salvanalle, Inc.*, No. 1:12-cv-2851, 2014 WL 584756, at *3 (N.D. Ohio Feb. 12, 2014) (striking expert report filed in opposition to plaintiffs' summary judgment motion where

---

[3]     *Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x. 627, 636 (6th Cir. 2007) ("Plaintiffs, as the sanctioned party, bear the burden of proving that their noncompliance with the rules and scheduling order was harmless.").

"[d]efendants ha[d] not sought leave for, or even acknowledged, their untimely disclosure").[4]  So
too here.

> **B.    The Fahey Report Disregards The April 3 Order, Which Does Not
> Contemplate Expert Reports**

The April 3 Order defines the limited basis for permitting Plaintiffs not to respond to Teva
Ltd.'s motion to dismiss.  (Dkt. No. 1512, at 5.)  It provided that Plaintiffs would receive certain
categories of documents and a deposition before Plaintiffs were required to file their Opposition.
(Dkt. No. 1512 at 6.)  Plaintiffs never sought nor received leave to offer expert testimony (written
or otherwise) in response to Teva Ltd.'s motion to dismiss.  That failure warrants exclusion, and
courts in this district have granted motions to strike expert reports on analogous facts.  *See e.g.*,
*Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 752 (6th Cir. 2003) (affirming trial court's
striking of expert report where "plaintiffs did not disclose [expert] as an expert witness at any time
prior to the filing of her affidavit on March 21, 2001 . . . months after the deadline for plaintiffs'
expert disclosures."); *Overlook Mut. Homes, Inc. v. Spencer*, No. 3:07CV398, 2008 WL 5120698,
at *3 (S.D. Ohio Oct. 3, 2008) (striking expert report where plaintiff "failed to comply with the
Court's deadline to submit its expert witness report" and holding that "an imposition of sanctions
upon [Plaintiffs] is automatic and mandatory.").

Critically, because expert reports were not contemplated by the April 3 Order, and
Plaintiffs failed to timely disclose their expert, Teva Ltd. had no opportunity to depose Mr. Fahey

---

[4]     The Fahey Report violates Federal Rule of Civil Procedure 26(a)(2)(B) in additional ways. First,
the Fahey Report does not contain a complete list of Mr. Fahey's qualifications or the publications Mr.
Fahey has authored in the past ten years. *See* Fed. R. Civ. P. 26(a)(2)(B)(iv). Second, it lacks a list of cases
that Mr. Fahey has testified in during the past four years. *See* Fed. R. Civ. P. 26(a)(2)(B)(v). Third, it fails
to provide a full account of the facts and data that Mr. Fahey considered in forming his opinions. *See* Fed.
R. Civ. P. 26(a)(2)(B)(ii). For example, while the Fahey Report sets out a list of "Documents Reviewed,"
this is not a complete list of the reliance materials he considered.  (*See* Fahey Rep. at 3-4) (listing, for
example, "[o]rganization charts," "various public records searches," and "[v]arious pleadings and motions"
as documents reviewed, but not specifically disclosed).

or to submit a rebuttal report.  *See Shough v. Mgmt. & Training Corp.*, No. 3:16 CV 53, 2018 WL 295576, at *4 (N.D. Ohio Jan. 3, 2018) (finding failure to disclose not harmless and granting motion to strike where party had no prior knowledge of expert's testimony and did not have a chance to cross-examine him); *Webb v. Lucas*, No. 1:07CV3290, 2017 WL 11037355, at *4 (N.D. Ohio Apr. 18, 2017) (holding that "expert witnesses must be excluded because they were never disclosed" and that plaintiffs cannot "claim the failure to disclose was harmless" where [d]efendants were deprived of the opportunity to challenge the methodology and qualifications of these experts via *Daubert* challenges . . [and] were further denied the opportunity to question these witnesses on their conclusions, compensation and recent testimony in other cases, all of which work a manifest prejudice to [d]efendants").  The prejudice resulting from such one-sided "discovery" is itself sufficient to justify striking the Fahey Report.

### C.    The Fahey Report Violates Federal Rule of Evidence 702 and *Daubert*

Setting aside the issues of untimeliness and unfair surprise, Federal Rule of Evidence 702 and *Daubert* likewise compel exclusion.  Under Rule 702, an expert must apply "scientific, technical, or other specialized knowledge" to "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  To prevent testimony that falls short of these principles, the Supreme Court has directed district courts to perform a "gatekeeping" function "to determine whether the principles and methodology underlying the testimony itself are valid." *Pride v. BIC Corp.*, 218 F.3d 566 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 588, 597.)  Here, the Fahey Report is not valid and usurps the role of both the jury and the judge.

As a threshold matter, Mr. Fahey invades the province of the Court by offering legal conclusions.  While "[a]n opinion is not objectionable just because it embraces an ultimate issue," *see* Fed. R. Evid. 704(a), it is inadmissible where it amounts to a "legal opinion." *Halvorsen v.*

*Plato Learning, Inc.*, 167 F. App'x 524, 531 (6th Cir. 2006).  When terms used by the witness have a "separate, distinct and specialized meaning in the law different from that present in the vernacular . . . exclusion is appropriate."  *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985).

Here, Mr. Fahey sets forth his opinion of what he believes to be the law in three "conclusions."  *See* (Fahey Rep. at 5.) For example, Mr. Fahey concludes that "[t]he ***control, domination and financial benefit factors*** which are identified in this Declaration, are ***relevant to the determination of the legal theory that the U.S. subsidiaries are agents and/or alter egos of the Parent***."  *Id.* (emphasis added).  Mr. Fahey's opinions are inadmissible because the terms "domination," "control," and "alter ego" have a "separate, distinct and specialized meaning in the law."  *Torres*, 758 F.2d at 151 (excluding witness testimony about illegal sex discrimination because "the term 'discrimination' has a specialized meaning in the law and in lay use the term has a distinctly less precise meaning"); *see also* Fed. R. Evid. 704 Advisory Committee's Note.  Interpretation of those terms is for the Court.  As a result, Mr. Fahey's opinions and legal conclusions should be excluded. *See Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-CV-568, 2012 WL 5878873, at *7 (S.D. Ohio Nov. 21, 2012) (citing *United States v. Nixon*, 694 F.3d 623, 631 (6th Cir. 2012)).

Second, the Fahey Report invades the fact-finding province of the jury because it offers no real expert opinion, but, instead, merely describes documents—and, worse, does so selectively and often inaccurately.  (*See e.g.*, Fahey Rep. at 9.)  Courts routinely limit or exclude expert opinions that simply narrate documents and tell the fact-finder what they supposedly mean.  *Rheinfrank v. Abbott Labs., Inc.*, No. 1:13-cv-144, 2015 U.S. Dist. LEXIS 191660, at *26-27 (S.D. Ohio Oct. 2, 2015) (holding that an expert "cannot be presented to the jury solely for the purpose of constructing a factual

-10-

narrative based upon record evidence"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (stating that the jury "is equally capable of constructing" the facts from evidence introduced through "percipient witnesses and documentary evidence").

The Fahey Report consists of 33 pages of unsourced statements and quotes with occasional citations to Teva Ltd.'s SEC filings, company policies, Israeli financial statements, and other documents, unsorted excerpts of which are attached to the report.  The Fahey Report categorizes the statements under "Factors Supporting Parent Control & Domination and Nature of Its Relationship with Subsidiaries."  (Fahey Rep. at 2, 7, 19.)  But this factual summary is nothing more than Mr. Fahey's "interpretation" of documents—something that this Court is equally capable of doing in connection with the pending motion or any evidentiary hearing.  *See cf. Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 253 F. Supp. 3d 997, 1015 (S.D. Ohio 2015).  Mr. Fahey may not provide argument for Plaintiffs "while cloaked in the guise of 'expert testimony.'"  *Id.* at 1012.  His report should therefore be excluded for this reason as well.[5]

Lastly, the Fahey Report will not assist the trier of fact for yet another reason:  it fails to address all of the factors in *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 849 (6th Cir. 2017) regarding veil piercing, such as the existence of separate bank accounts, records, and headquarters, whether the parent and subsidiary retain separate employees, and even whether the parent exercises day-to-day control over basic decisions by the subsidiary (as opposed to decisions that impact the corporate family as a whole).  Instead, the Fahey Report selectively evaluates only particular factors that Plaintiffs believe support their incorrect view of "control" and "domination."  Nor does the Fahey Report even address what alleged arrangements reflect a typical parent/subsidiary

---

[5]     Teva Ltd. reserves the right to further challenge Mr. Fahey's qualifications and the reliability and fit of his report if and when it is given the opportunity to depose him.

relationship.[6]  In fact, it is not even clear what Mr. Fahey means through his repeated references to "control"—which, under Sixth Circuit and Ohio law, requires such control that the subsidiary effectively has no separate existence apart from the parent.  *See Anwar*, 876 F.3d at 848-49; *see also See Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1085 (Ohio 1993).

Given these fundamental failures, the Fahey Report offers no assistance in resolving the basic question of whether Teva Ltd., an Israeli company that does not manufacture, market, sell, or distribute opioids in the United States, is nonetheless subject to personal jurisdiction in the United States.  The Fahey Report should be viewed and excluded for what it is:  an untimely and inadmissible effort to distract the Court away from these fundamental facts showing why no personal jurisdiction exists.

II.    **IF THE COURT DOES NOT STRIKE THE FAHEY REPORT, TEVA LTD. WILL SUFFER ADDITIONAL PREJUDICE BECAUSE IT CANNOT TAKE APPROPRIATE RECIPROCAL DISCOVERY.**

The Fahey Report raises serious questions about Mr. Fahey's qualifications and methodology.  For example, Mr. Fahey fails to demonstrate that he has any experience with Israeli accounting standards and practices.  Nor does he demonstrate that he has experience with respect to the structure of global pharmaceutical companies.  Teva Ltd. should be allowed to depose Mr. Fahey to determine whether he is qualified to opine on the corporate form and financial practices of an Israeli parent company, especially where there is evidence that calls into question his qualifications.[7]  *See, e.g.*, *Istvan v. Honda Motor Co., Ltd.*, 455 F. App'x 568, 572 (6th Cir. 2011)

---

[6]    Mr. Fahey's Report does not even offer any basis to conclude that he has sufficient experience to opine on the relationship between a foreign parent pharmaceutical company and its US-based indirectly-held subsidiaries.

[7]    Mr. Fahey's expert testimony appears to have been partially excluded in at least one case, s*ee Inv'rs Asset Acquisition, LLC v. Scardina*, No. 2014CA004618, Order Granting in Part and Denying in Part Plaintiffs' Motion in Limine to Exclude Alex [*sic*] Fahey's Expert Testimony, (Fla. Cir. Ct. Jan. 27, 2017),

(excluding an expert in engineering who relied only on his "general knowledge" of motorcycle design and experience operating motorcycles, but lacked specific knowledge about the motorcycle model at issue).

With respect to methodology, Mr. Fahey's factual narrative is littered with omissions and inaccuracies.  To name a few, Mr. Fahey selectively quotes from Teva Ltd.'s 10-K to erroneously conclude that Teva Ltd.'s trade receivables securitization program is evidence that Teva Ltd. "commingles" funds with its United States subsidiaries.  (Fahey Rep. at 25-26.)  In fact, that same document makes clear that there is no commingling because each participating subsidiary is required to "sell receivables to BNP [Bank] for an amount equal to their nominal amount."  (Fahey Rep. Ex. 22.)

In another example, Mr. Fahey cites to Teva Ltd.'s Articles of Association as support for the allegation that "Parent, through its BoD [Board of Directors], has sole discretion and retains the earnings or profits of its U.S. and foreign subsidiaries."  (Fahey Rep. at 14.)  But that same document makes clear that that the BoD's sole direction relates only to the payment of dividends from Teva Ltd.'s own profits: "[T]he Board of Directors[ has] sole discretion, *for the supplementing or payment of a dividends* or for any other purpose which shall be appropriate *for use of the Company's* profits."  (Fahey Rep. Ex. 6.)  These inaccuracies are not minor – they go to the heart of Plaintiffs' very theory that Teva Ltd. is subject to the Court's jurisdiction based upon some flawed "alter ego" theory.  (Pl. Opp. at 2, 12, 14.)[8]

---

and initial research indicates that Mr. Fahey received a "Letter of Warning" from the North Carolina State Board of CPA Examiners in 2008. *See* North Carolina State Board of CPA Examiners, Public Session Minutes dated Sept. 22, 2008, pp. 5, 7, available at https://nccpaboard.gov/wp-content/uploads/2011/07/09-2008-Minutes.pdf.

[8]     Aside from his inaccuracies and omissions, Mr. Fahey often provides no discernible basis for his opinions. For example, the Fahey Report includes a chart that Plaintiffs claim supports the allegation that Teva Ltd. and its subsidiaries commingled funds, but Mr. Fahey provides no indication of where the chart or any purported basis for it comes from.  (*See* Fahey Rep. at 18.)  As the Rule 30(b)(6) representative for

In the ordinary case, the Federal Rules allow a party to challenge thinly supported expert opinions like Mr. Fahey's.  Federal Rule of Civil Procedure 26 expressly permits the deposition of testifying experts, and "contemplates rebuttal witnesses." Fed. R. Civ. P. 26(b)(4)(A); *Grayiel v. AIO Holdings, LLC*, No. 3:15-CV-00821, 2019 U.S. Dist. LEXIS 97113, at *17 (W.D. Ky. Mar. 15, 2019) ("Defendants are entitled to present an expert who can counter the valuation methods of the Plaintiff's expert.").  Here, however, the Court has barred Teva Ltd. from seeking further discovery.  (*See* Reed Decl., Ex. 9 ("[A]t this time the parties have received all the discovery and extension of time they are going to get."); Reed Decl., Ex. 10 ("[N]o additional discovery or extensions of time will be granted on their Motions to Dismiss").)  To the extent Teva Ltd. has misinterpreted the Court's orders, it requests the opportunity to move to depose Mr. Fahey and submit a rebuttal report.

Given that Plaintiffs' Opposition turns on the Fahey Report, permitting the Fahey Report to stand without the opportunity to depose him or submit a rebuttal report would contravene not only *Daubert*'s gatekeeping directive, but also the demands of due process.  *Georgel v. Preece*, No. 0:13-57, 2014 U.S. Dist. LEXIS 194562, at *4 (E.D. Ky. Dec. 10, 2014) (finding it "inequitable" if one party "was allowed to surprise [the other] with an expert witness not subject to attack by rebuttal expert testimony"); *Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117, 2013 U.S. Dist. LEXIS 127340, at *8 (D. Nev. Sept. 5, 2013) (allowing a party to depose an opposing party's expert witness and submit a rebuttal report "comport[s] with due process").

## CONCLUSION

For the foregoing reasons, Teva Ltd. respectfully requests that the Court strike the Fahey Report.  In the alternative, Teva Ltd. should be provided the opportunity to depose Mr. Fahey and

---

Teva Ltd. has made clear, there is no commingling of funds.  (Crawford Decl. Ex. A, Herman 30(b)(6) Tr., at 376:18-377:3.)

to supplement its briefing and the record on its pending motion to dismiss for lack of personal jurisdiction through the submission of a rebuttal expert report.

Dated:  July 30, 2019                          Respectfully submitted,


                                               */s/ Steven A. Reed*
                                               Steven A. Reed
                                               Eric W. Sitarchuk
                                               Rebecca J. Hillyer
                                               MORGAN, LEWIS & BOCKIUS LLP
                                               1701 Market St.
                                               Philadelphia, PA 19103-2921
                                               Tel: (215) 963-5603
                                               steven.reed@morganlewis.com
                                               eric.sitarchuk@morganlewis.com
                                               rebecca.hillyer@morganlewis.com

                                               Nancy L. Patterson
                                               MORGAN, LEWIS & BOCKIUS LLP
                                               1000 Louisiana Street, Suite 4000
                                               Houston, TX 77002-5005
                                               Tel:  (713) 890-5195
                                               nancy.patterson@morganlewis.com

                                               Brian Ercole
                                               MORGAN, LEWIS & BOCKIUS LLP
                                               200 South Biscayne Boulevard, Suite 5300
                                               Miami, FL 33131
                                               Telephone: (305) 415-3000
                                               Facsimile: (305) 415-3001
                                               brian.ercole@morganlewis.com

                                               *Attorneys for Specially-Appearing Defendant Teva*
                                               *Pharmaceutical Industries Ltd.*

## **LOCAL RULE 7.1(F) CERTIFICATION**

I certify that this case has been assigned to the "litigation track" pursuant to CMO One

and that this Memorandum adheres to the page limitations set forth in Case Management Order

One (Dkt. 232) and L.R. 7.1(f).


Dated: July 30, 2019                    By: /s/ *Steven A. Reed*
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        1701 Market St.
                                        Philadelphia, PA 19103-2921
                                        Telephone: (215) 963-5000
                                        Facsimile: (215) 963-5001
                                        steven.reed@morganlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2019, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


Dated:  July 30, 2019                         */s/ Steven A. Reed*
                                              Steven A. Reed
                                              MORGAN LEWIS & BOCKIUS LLP
                                              1701 Market Street
                                              Philadelphia, PA 19103
                                              Telephone: (215) 963-5000
                                              Facsimile: (215) 963-5001
                                              steven.reed@morganlewis.com