**In re National Prescription Opiate Litigation: MDL 2804**
**Summary Sheet of Concise Issues Raised**

**Opposition Name:**   Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions for Summary Judgment on Plaintiffs' Civil Conspiracy, RICO and OCPA Claims

**Opposing Parties:**   Plaintiffs Summit County and Cuyahoga Counties

*****************

*Issue 1:*   Are the RICO Manufacturer Defendants entitled to summary judgment regarding the existence of the Opioid Marketing Enterprise?

*Answer:*   No.  The record demonstrates ample evidence of the RICO Marketing Enterprise that had the common purpose of expanding the market for opioids and that RICO Manufacturer Defendants carried out that purpose through unlawful conduct via the predicate acts (which the Defendants do not challenge).  The evidence shows the RICO Manufacturer Defendants coordinated their conduct through direct interactions and groups, such as the Pain Care Forum.  The RICO Manufacturer Defendants also coordinated their actions through their use of Front Groups and Key Opinion Leaders (KOLs) to promote their unified message.

Contrary to the Manufacturer Defendants' arguments, Plaintiffs do not need to show that RICO Manufacturer Defendants controlled or directed the Front Groups and KOLs themselves.  Plaintiffs seek to impose RICO liability based on the RICO Manufacturer Defendants' actions, not those of the Front Groups or KOLs.  Plaintiffs do not argue that the Front Groups or KOLs are participants in the RICO Marketing Enterprise.  As a result, all Plaintiffs must show is that the Defendants participating in the Marketing Enterprise took "some part in directing the enterprise's affairs," *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), or made "decisions on behalf of the enterprise or . . . knowingly carr[ied] them out," *U.S. v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008).  As discussed in the Plaintiffs' Opposition, Plaintiffs have adduced ample evidence to make that showing.

*Issue 2:*   Are RICO Defendants entitled to summary judgment regarding the existence of the Opioid Supply Chain Enterprise?

*Answer:*   No.  The record demonstrates that the RICO Supply Chain Defendants coordinated with each other to form the Opioid Supply Chain Enterprise with the common purpose of maintaining an uninterrupted and expansive supply of opioids, notwithstanding their obligations under the law to control that supply be identifying, reporting, and halting the shipment of suspicious orders.  The RICO Defendants used their direct relationships and membership in groups like the PCF and HDA to coordinate their activities regarding diversion control and suspicious order monitoring.

The record also demonstrates that the RICO Distributor Defendants controlled and participated in the affairs of the Opioid Supply Chain Enterprise because they repeatedly made decisions on behalf of the Supply Chain Enterprise and supported the common goal of protecting the supply chain, by coordinating with the other RICO Supply Chain Defendants about suspicious orders and suspicious order monitoring, refusing to stop suspicious orders, working together to thwart DEA's enforcement

|  |  |
|---|---|
|  | actions, and by helping pharmacies to evade thresholds that otherwise would have required an order not to be shipped. This is sufficient evidence of an enterprise. *See Boyle v. U.S.*, 556 U.S. 938, 944 (2009); *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473, 492-93 (6ᵗʰ Cir. 2013); *Ouwinga v. Benistar*, 694 F.3d 783, 794 (6th Cir. 2012). |
| *Issue 3*: | Are Defendants entitled to summary judgment on the basis of causation? |
| *Answer:* | No. As detailed more fully in the Plaintiffs' Memorandum in Opposition to Defendants' Motions for Summary Judgment on Proof of Causation (PSJ2), Plaintiffs have shown that there is sufficient evidence such that a jury could determine that Defendants' actions and inactions were a substantial factor in causing the opioid epidemic. Defendants have not demonstrated that any intervening or superseding causes were not foreseeable. Contrary to Distributor Defendants' argument, it is irrelevant that the DEA had access to the ARCOS database because Distributors failed in their obligation *not to ship* suspicious orders. |
| *Issue 4*: | Have Plaintiffs established RICO and OCPA injuries for which damages are available? |
| *Answer:* | Yes. As this Court has already found, Plaintiffs seek to recover their own monetary losses which are injuries to "business or property" within the meaning of RICO; they do not seek to recover county residents' economic losses stemming from personal injury. *In re Nat'l Prescription Opiate Litig.,* No. 1:18-OP-45090, 2018 WL 6628898, at *8-9 (N.D. Ohio Dec. 19, 2018). Contrary to Manufacturer Defendants' argument, there is nothing that excludes branded advertising from enterprise conduct that advanced the Marketing Enterprise's common purpose.<br><br>Plaintiffs' damages are also recoverable under the OCPA, which does not limit recovery to injuries to "business or property." *See* Ohio Rev. Code. § 2923.34(A). |
| *Issue 5*: | Are Manufacturer Defendants entitled to summary judgment on Plaintiffs' conspiracy claims because there is no evidence of an agreement among the Manufacturers? |
| *Answer*: | No. The record demonstrates that the Manufacturers shared in a general conspiratorial objective to expand the opioid market, including through disregarding their CSA obligations. *See Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). Manufacturers worked together to increase and maintain the opioid market through the common practice of disseminating false marketing representations about opioids in general and about their own products. Evidence of an agreement may also be found in Manufacturers' decision to work with Distributors and Pharmacies to remain silent about regulatory violations and indicators of diversion in order to keep the opioid supply chain flowing and their markets growing. All of this evidence demonstrates that there was a meeting of the minds among the Manufacturer Defendants to expand the opioid market through unlawful means. |
| *Issue 6*: | Are Distributor and Pharmacy Defendants entitled to summary judgment on Plaintiffs' conspiracy claims because there is no direct evidence that the Distributors and Pharmacies conspired with one another to circumvent and disregard requirements to report or halt suspicious orders? |
| *Answer*: | No. The record shows the Pharmacies and Distributors engaged in substantially the same coordinated activities, using memberships in the HDA and NACDS and their distribution relationships to grow and protect the Opioid Supply Chain, including through disregard of the CSA. Specifically, the evidence demonstrates that |

> Defendants engaged in the same or similar conduct in failing to comply with CSA duties, and that at the same time they constantly communicated and coordinated with each other, both directly and through trade groups, such that a jury could reasonably conclude that the Defendants' actions are consistent with the existence of conspiracy to protect the supply chain and the resulting profits.  Additionally, evidence of an agreement among Defendants is borne out by their coordinated failures to implement effective controls against diversion and their common actions to circumvent and obstruct DEA regulatory activity.  *See United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991); *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012.  Moreover, Defendants' coordination is not ordinary business conduct because Defendants were engaged in unlawful or illegitimate activities -- Defendants were not entitled to distribute opioids without complying with their legal duties to maintain effective controls against diversion and report and halt suspicious orders.
>
> Moreover, contrary to Defendants' arguments, Plaintiffs do not argue that membership or participation in a trade organization alone proves a conspiracy or RICO violation.  Rather, the trade associations such as the PCF, HDA, and NACDS provide evidence of direct coordination among the Defendants to promote their expansion of the opioid market.
>
> Finally, Distributors and Pharmacies do not have to have joined in the Manufacturers' false marketing to be part of the conspiracy to grow the prescription opioid market.  It is sufficient that the Distributors and Pharmacies "shared [the] general conspiratorial objective" and had "a common understanding" to "disregard drug reporting obligations [and other anti-diversion duties] to effectuate that goal."  *See In re: National Prescription Opiate Litigation*, 2018 WL 6628898, at *11.

| | |
|---|---|
| *Issue* 7: | Are Defendants' activities protected by the First Amendment or the *Noerr-Pennington* doctrine? |
| *Answer*: | No.  Plaintiffs do not attempt to impose liability upon the Defendants for their lobbying or petitioning activities, nor do Plaintiffs argue that these activities were unlawful conduct. |

Filing Date:  June 28, 2019

Response Date:  July 31, 2019

Reply Date:  August 16, 2019

3