*In re National Prescription Opiate Litigation*: **MDL 2804**
**Summary Sheet of Concise Issues Raised**

**Opposition Name:** Plaintiffs' Memorandum in Opposition to Defendant Rite Aid of Maryland's Motion for Summary Judgment

**Opposing Parties:**   Plaintiffs Summit County and Cuyahoga County

**Concise Description:**  Rite Aid of Maryland ("Rite Aid") moved for Summary Judgment on all claims, arguing that Plaintiffs failed to offer any evidence that Rite Aid failed to maintain effective controls against diversion.  In particular, Rite Aid argues that a purported lack of expert evidence dooms Plaintiffs' case against Rite Aid.  Rite Aid's argument fails because there is ample undisputed evidence -- much of it Rite Aid's own admissions -- that Rite Aid did not maintain effective controls against diversion and had no system to identify and report suspicious orders.  **Indeed, Rite Aid never identified or reported a single suspicious order.**

Expert testimony is not needed when, as here, the breach of duty is so obvious as to be easily recognized by the average juror.  Rite Aid admits that it *never* identified *any* suspicious orders before shipment.  Rite Aid never reported any suspicious orders to DEA.  Notwithstanding the obvious violations that flow from Rite Aid's having failed to identify or report a single suspicious order, the undisputed facts show that Rite Aid had suspicious orders from numerous sources.  Rite Aid serviced customers from "pill mill" doctors who were indicted.  Rite Aid's pharmacists lost their licenses for stealing opioids.  Rite Aid entered into a settlement with the United States which included a finding that "Rite Aid knowingly filled prescriptions for controlled substances that were not issued for a legitimate medical purpose."  Rite Aid maintained a list of "suspicious prescribers."

The above aside, even if expert testimony is required to prove Plaintiffs claims, Plaintiffs have offered it. Plaintiffs designated Dr. Whitelaw as an expert on the relevant standards surrounding the design, implementation, and operation of corporate and controlled substances compliance programs for the pharmaceutical industry.

Moreover, the undisputed factual record shows Rite Aid violated the CSA in nearly all the same ways the defendant did in *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F.3d 206 (D.C. Cir. 2017).  Rite Aid only identified suspicious orders after shipment; Rite Aid used a threshold-based suspicious order monitoring system; Rite Aid cut above-threshold orders to below threshold before shipment without performing the requisite due diligence; and Rite Aid did not maintain detailed records of past orders.

Lastly, the government audits that Rite Aid argues are evidence of its effective controls against diversion are both inadmissible and do not evidence Rite Aid's compliance with the CSA requirements.  The DEA expressly stated that Rite Aid's 2005 and 2012 audits were "not designed to endorse suspicious order monitoring systems."

**Filing Date:**  June 28, 2019 (Dkt. 1779)
**Response Date:**  July 31, 2019
**Reply Date:**  August 16, 2019