IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*"Track One Cases"* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**MALLINCKRODT PLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT REPORT OF ALEC FAHEY**

Plaintiffs ask the Court to accept at face value the untested, untimely, and unauthorized report of their CPA expert, Alec Fahey (the "Fahey Report").  Plaintiffs do not adduce any actual evidence of Mallinckrodt plc's "complete control" or domination of its indirect subsidiaries—let alone the fraud or extreme misconduct—required to establish personal jurisdiction over a foreign company under an alter ego theory.  *See* Dkt. No. 1835 at 4-6, 14.  Instead, Plaintiffs rely on the Fahey Report's conclusory and inaccurate assertions.  With their jurisdictional argument hanging in the balance, Plaintiffs now ask the Court to overlook the Fahey Report's substantive and procedural defects.

First, Plaintiffs argue that Mr. Fahey is exempt from the disclosure rules governing expert discovery because he is a summary witness under Federal Rule of Evidence 1006.  But Mr. Fahey's own description of his engagement belies that characterization:

> The objective and scope of the ***investigation***, as it relates to this Declaration, has been ***to determine*** whether Mallinckrodt plc ("Parent") controls and dominates its subsidiaries and whether the control factors analyzed ***establish*** from a financial and accounting standpoint that the subsidiaries are agents of the Parent.

Fahey Rep. at 2 (emphasis added).  By his own account, Mr. Fahey's assignment was not to present a neutral summary of voluminous documents—the role of a Rule 1006 witness—but to "analyze[]"

evidence from his expert "financial and accounting standpoint" and offer his opinions regarding the central legal questions of "control," "dominat[ion]," and "agen[cy]." *Id.*

Second, although Plaintiffs ultimately acknowledge, as they must, that Mr. Fahey is offering *some* expert opinions, Dkt. No. 2065 at 2, they nevertheless insist that he is not subject to *Daubert* because his report will be evaluated by the Court, rather than a jury.  That is simply wrong. But more importantly, the Fahey Report is not helpful to any factfinder because it distorts and misrepresents Mallinckrodt plc's documents.  To the extent the Fahey Report includes any "analysis" beyond its blatant inaccuracies and misstatements, it comes in the form of legal conclusions that invade the province of the Court.  *See* Fahey Rep. at 4.

Finally, Plaintiffs offer *post hoc* excuses for failing to properly disclose Mr. Fahey but the requirements of the Federal Rules of Civil Procedure pertaining to experts allow no such exceptions.  Despite Rule 37(c)(1)'s requirement of "absolute compliance" with Rule 26, Plaintiffs have failed to provide the requisite reliance list or an accounting of Mr. Fahey's qualifications, publications, or prior testimony.  Remarkably, Plaintiffs suggest these shortcomings were somehow Mallinckrodt plc's fault.  But as the procedural history makes clear, Mallinckrodt plc adhered to this Court's orders governing the service of foreign parent entities and the subsequent orders governing the timing and scope of jurisdictional discovery.

Plaintiffs, on the other hand, have offered no explanation—as they must, under the Federal Rules—for withholding Mr. Fahey for almost six months after he was retained, thereby allowing the Court's expert disclosure deadline to lapse.  Nor do Plaintiffs establish—again, as they must— that Mallinckrodt plc suffered no prejudice as a result of Plaintiffs' violations.  Plaintiffs' arguments that Mallinckrodt plc did not notice Mr. Fahey's deposition, and submitted three fact affidavits with its reply, are red herrings.  As Plaintiffs are aware, the Court's orders expressly

2

forbade Mallinckrodt plc from conducting further discovery in support of its motion to dismiss. Noticing Mr. Fahey's deposition was simply not an option. Similarly, in pointing to the fact affidavits Mallinckrodt plc filed with its reply, Plaintiffs ignore that declarations from percipient fact witnesses are no substitute for rigorous cross examination and a counter-expert. Plaintiffs' half-hearted suggestion that Mallinckrodt plc can conduct remedial discovery of Mr. Fahey is at odds with the Court's orders and the current trial schedule. Accordingly, the Court should strike the Fahey Report.

I. **MR. FAHEY IS NOT A SUMMARY WITNESS, AND THE NUMEROUS INACCURACIES IN HIS REPORT WARRANT EXCLUSION**

Plaintiffs misstate the law and misrepresent the record by arguing that the Fahey Report is admissible pursuant to Rule 1006. Dkt. No. 2065 at 4. Rule 1006 permits (but does not require) the admission of evidence in the form of "a summary, chart, or calculation to prove the content of voluminous writings." The Fahey Report does not qualify. Rather than provide a summary of the facts set forth in voluminous documents, it offers unmistakable opinion testimony, including blatant mischaracterizations and interpretations of the underlying evidence. Where, as here, a party nominally summarizes documents while providing opinions based on those documents, the summary is subject to the rules governing expert testimony. *Auto Indus. Supplier ESOP v. Ford Motor Co.*, 435 F. App'x 430, 452 (6th Cir. 2011) (holding that the expert's report was "more than just a summary of data" under Rule 1006 because it contained "data manipulations, adjustments, and calculations using the data presented, and [was] therefore subject to rules governing opinion testimony and expert testimony"); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007) (explaining that the witness's "calculations went beyond the data they summarized and included several assumptions, inferences, and projections about future events," which represented the witness's opinion, rather than the underlying information, and were therefore subject to the rules

3

governing opinion testimony). The Fahey Report likewise includes opinions and inferences that go well beyond mere summaries of the evidence. *See infra.*

Beyond its improper opinions, the Fahey Report is replete with misleading quotes from Mallinckrodt plc documents and unsupported arguments about Mallinckrodt plc's corporate structure. *See* Dkt. No. 1836-1 at 10-11. It is blackletter law that "courts must be scrupulous in assuring that [Rule 1006] summar[ies] accurately portray[] the contents of the underlying material" and thus "guard against summaries that contain . . . outright argument." 2 *McCormick On Evidence* § 241 (7th ed. updated June 2016). The only authority that Plaintiffs cite supports this principle. *See United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) ("[A] summary document must be accurate and nonprejudicial. This means first that the information on the document summarizes the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner [and] that the information on the summary is not embellished by or annotated with the conclusions of or inferences drawn by the proponent . . . .") (internal quotation marks omitted).

The following represents a non-exhaustive list of inaccurate and argumentative statements in the Fahey Report that render it inadmissible under Rule 1006 (or otherwise).

**Misleading Quotations and Citations**. Mr. Fahey repeatedly misrepresents the documents underlying his statements:

- Mr. Fahey quotes Mallinckrodt plc's 2017 Form 10-k as stating that the "[p]arent, through is BoD, 'has sole discretion' of its subsidiaries' cash flows." Fahey Rep. at 16. Yet, the cited statement in the 10-k relates only to the payment of Mallinckrodt plc's dividends: "The recommendation, declaration and payment of dividends in the future by us will be subject to the sole discretion of our Board of Directors . . . ." Dkt. No. 1812-40, Ex. 21 at 2 (emphasis added).

- Mr. Fahey also purports to quote the same 10-k for the position that "[p]arent controls its subsidiaries' 'marketing and sales strategies' and 'promotional efforts' and 'developed a robust Compliance Program' through its 'own marketing and support

4

sales force.'" Fahey Rep. at 6 (¶1.c). But the full text from which those phrases were quoted never mentions controlling any subsidiary's marketing, sales, promotion, or compliance programs. *See* Dkt. No. 1812-35, Ex. 16 at 2.

- Mr. Fahey states that "[p]arent commingles its funds with its subsidiaries" and "used cash flows from the opioid business to fund its corporate overhead, selling, general and administrative and 'shared services' costs." Fahey Rep. at 16. But neither of the exhibits Mr. Fahey cites—certain consolidated cash flow statements from Mallinckrodt plc's 2017 10-k and an internal presentation deck—demonstrate any evidence of "commingling" or even contain the language he purports to quote. *See* Dkt. No. 1812-39, 1812-44, Exs. 20, 25.[1]

**Unsourced Statements and Data**. Mr. Fahey also fails to identify the sources for other quotes and conclusions. For example, Mr. Fahey includes three charts to represent the "disposition of cash controlled by Mallinckrodt plc," "Mallinckrodt plc's sources of cash," and "Mallinckrodt plc's uses of cash," as reflected in "Mallinckrodt plc's Consolidated Statements of Cash Flows" but provides no source for the data. *Id.* at 10-11.[2] Because Mr. Fahey does not identify the source(s) consulted towards, or methodology employed in, constructing these charts, he has failed to set a foundation for the admissibility of these charts and "the court has no way to evaluate their accuracy." *AT&T Corp. v. Overdrive, Inc.*, No. 1:05CV1904, 2007 WL 120654, at *6 (N.D. Ohio Jan. 10, 2007) (citing *Needham v. White Labs, Inc.*, 639 F.2d 394, 403 (7th Cir. 1981)).

**Opinions, Inferences, and Argumentative Assertions**. Finally, Mr. Fahey offers numerous assertions beyond the scope of a Rule 1006 summary. Among other statements, he asserts (without support) that:

- "Parent, through its Board of Directors ('BoD') and common officers, controls its subsidiaries – not just through majority control but through domination – over finances, revenues, transfer, sale and assignment of assets, assumption of debt, strategy, vision, policy, business practices, marketing, reporting, budgets, management compensation in stock option awards – so that its subsidiaries, including Mallinckrodt LLC and

---

[1] Mr. Fahey's misleading citations are particularly problematic because he often fails to include the documents in full as exhibits to his Report.

[2] Although it is unclear whether Mr. Fahey relied on Exhibit 20 in creating these charts, the consolidated cash flow statements that appear in Exhibit 20 do not contain the detail Mr. Fahey purports to distill in his graphics. *See* Dkt. No. 1812-39, at Ex. 20.

- SpecGX LLC, lack independence and have no control over their fate or existence." Fahey Rep. at 4.
- "The control, domination and financial benefit factors which are identified in this Declaration, are relevant to the determination of the legal theory that Mallinckrodt, LLC and SpecGX, LLC are agents and/or alter egos of the Parent." *Id.*
- "Parent controls its subsidiaries' 'marketing and sales strategies' and 'promotional efforts' and 'developed a robust Compliance Program' and 'have implemented an internal crossfunctional processes to review and approve product-specific materials, presentations and external communications to address the risk of misbranding or mislabeling our products through our promotional efforts[.]'" *Id.* at 15.
- "As a result, Parent retains and commingles the net cash flows generated from the opioid and the new branded business including proceeds from loans and the sale of 'business units' that existed before and after its separation from Covidien." *Id.* at 16.

These statements, and others, are nothing more than Mr. Fahey's "conclusions" and "inferences," and therefore are inadmissible. *Bray*, 139 F.3d at 1110.

Although Mallinckrodt plc has identified numerous fundamental inaccuracies in Mr. Fahey's report, *see* Dkt. No. 1836-1 at 10-11, Plaintiffs accuse Mallinckrodt plc of "nit-picking around the margins" and ignoring the Fahey Report's "core assertions." Dkt. No. 2065 at 14.  Yet, tellingly, Plaintiffs respond to only one inaccuracy identified in Mallinckrodt plc's opening brief – that Michael-Bryant Hicks was, in Plaintiffs' telling, an employee of both Mallinckrodt plc and Mallinckrodt LLC. *See id.* at 12.  However, as Mallinckrodt plc's fact affiant, Stephanie D. Miller, clearly explained, Mr. Hicks signed the document cited by Plaintiffs "on behalf of Mallinckrodt LLC in his capacity as Senior Vice President & General Counsel of Mallinckrodt plc, ***pursuant to a delegation of authority***." Dkt. No. 1835-7 at ¶ 8 (emphasis added).  As Ms. Miller noted, "Mr. Hicks has never served as an officer of Mallinckrodt LLC." *Id.*  Nothing in any document Plaintiffs cite contradicts her statement.  In any event, the Court should disregard such straw men: as detailed above, Mr. Fahey's "core assertions" amount to interpretations of evidence and improper legal opinions – not neutral fact summaries.  Accordingly, the Fahey Report is inadmissible under Rule 1006.

## II. THE FAHEY REPORT SHOULD BE EXCLUDED UNDER *DAUBERT* BECAUSE IT IS NOT HELPFUL TO THE TRIER OF FACT

Plaintiffs next argue that to the extent Mr. Fahey offers expert opinions, he need not comply with *Daubert* because the *Court* will decide Mallinckrodt plc's motion to dismiss. *See* Dkt. No. 2065 at 14. That argument is disingenuous and wrong. In the same brief, Plaintiffs indicate that they *may* decide to call Mr. Fahey to testify at the (jury) trial. *See id.*[3] And even where a judge is the factfinder, courts routinely exclude expert reports that fail to satisfy *Daubert*. *See e.g., Balimunkwe v. Bank of Am.*, No. 1:14-cv-327, 2015 WL 5167632, at *2, 14 (S.D. Ohio Sept. 3, 2015) (excluding plaintiff's expert as unreliable and unqualified even though the case was scheduled for a bench trial); *Owens v. United States*, No. 15-CV-225-JMH, 2017 U.S. Dist. LEXIS 141562, at *4 (E.D. Ky. Aug. 31, 2017) (excluding plaintiff's expert report prior to bench trial because the bases for her opinions were undisclosed).

Exclusion is particularly warranted here because the Fahey Report is replete with unsupported assertions and misleading quotations. *See supra* at I. And even if Mr. Fahey had provided a full record, his factual narrative that "weighs the evidence" does not help the Court. *See In re M/V MSC FLAMINIA*, No. 12-cv-8892 (KBF), 2017 WL 3208598, at *3 (S.D.N.Y. July 28, 2017) ("[T]he fact that the trial will be to the bench does not diminish, let alone eliminate the requirements of Rule 702 . . . . [experts] are not percipient witnesses . . . and they are not a vehicle to provide a factual narration."); *In re Lyondell Chem. Co.*, 558 B.R. 661, 668 (Bankr. S.D.N.Y. 2016) (applying Rule 702 from the bench to exclude portions of expert reports since "cherry-picking and editorializing is exactly the type of 'factual narrative' that courts routinely exclude because it invades the province of the factfinder").

---

[3] Plaintiffs state that the Fahey Report is not being presented to the jury "at this point." Dkt. No. 2065 at 14.

Mr. Fahey's legal conclusions are no more helpful.  Mr. Fahey concludes that Mallinckrodt plc "controls its subsidiaries – not just through majority control but through domination[,]" and "[t]he control, domination and financial benefit factors . . . are relevant to the determination of the *legal theory* that Mallinckrodt, LLC and SpecGX, LLC are *agents* and/or *alter egos* of the [Mallinckrodt plc]."  Fahey Rep. at 4 (emphasis added).  It is undisputed that experts may not opine on the law because "the trial judge does not need the judgment of witnesses."  *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984); *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 593 (6th Cir. 2014) (excluding an expert report that defined legal terms and applied the law to the facts).  Here, the terms used by Mr. Fahey – "control," "domination," and "independence" – have a distinct and specialized meaning in the law, and must be left to the Court's interpretation.  *See Torres v. Cty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985);[4] Fed. R. Evid. 704 advisory committee's note.  Plaintiffs' conclusory assertion that Mr. Fahey is "not offering legal opinions" does not alter that reality.

Nor does Plaintiffs' assertion that declarations of financial experts are "routinely admitted," Dkt. No. 2065 at 14-15.  That position is based on cases that are readily distinguishable or wholly irrelevant.  In several of those cases, the opposing party did not adequately challenge the expert.  *See In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d 815, 834-35 (N.D. Ohio 2010) (explaining that the opposing party did "not make clear the reasons that it seeks exclusion"); *Tharo Sys. Inc. v. Cab Produkttechnik GMBH*, 196 Fed. App'x 366, 375-77 (6th Cir. 2006) (stating, for example, that the opposing party did "not challenge the magistrate judge's finding" that the proposed expert "was qualified 'to opine on the value of technology,'" and did not argue that

---

[4] Despite Plaintiffs' attempt to distinguish *Torres* based on facts not relevant here, striking the Fahey Report because it contains legal conclusions would not be an "extreme step."  *See Killion*, 761 F.3d at 593 (upholding the exclusion of an expert report that defined legal terms and applied the law to the facts).

benchmarking was an unreliable method despite having had the opportunity to "rigorously cross-examine [the expert] in an effort to cast doubt on his testimony"). In addition, *Keats v. United States* involves experts in commodities transactions but does not evaluate a motion to strike or exclude those experts' testimony. 865 F.2d 86, 87 (6th Cir. 1988). *Roper v. Secretary of Health and Human Services* does not involve a *Daubert* analysis, or expert testimony at all, and concerns review of a determination by the Secretary of Health and Human Services regarding an individual's retirement benefits. 769 F. Supp. 243 (N.D. Ohio 1990).

In short, the fact that Mr. Fahey is a CPA does not render his report *de facto* admissible. *See TCE Sys. v. Thomas & Betts Corp.*, No. 00-72628, 2005 U.S. Dist. LEXIS 31057, at *12 (E.D. Mich. Nov. 21, 2005) (excluding expert report of CPA because it was not helpful to the trier of fact). And a report consisting of "argumentative narrative" and "unsubstantiated conclusions" should be excluded, regardless of the type of expert. *See Hillside Prods. v. Cty. of Macomb*, 389 F. App'x 449, 461 (6th Cir. 2010) (upholding the district court's decision to exclude the expert report of plaintiffs' CPA).

### III. PLAINTIFFS HAVE NO EXCUSE FOR THEIR UNTIMELY DISCLOSURE OF MR. FAHEY OR THEIR OTHER RULE 26 VIOLATIONS

#### A. Plaintiffs Cannot Blame Mallinckrodt plc for Their Flouting of the Court's Expert Disclosure Deadlines

Plaintiffs argue that Mallinckrodt plc's purported "attempts to evade service and refusal to provide discovery" somehow delayed Plaintiffs' disclosure of Mr. Fahey. Dkt. No. 2065 at 5-6. But in fact, Mallinckrodt plc accepted service in January 2019, only days after Plaintiffs engaged Mr. Fahey. *See id.* at 6; Fahey Rep. at 2.[5] Mallinckrodt plc then filed its motion to dismiss on

---

[5] Mallinckrodt plc accepted service on January 11, 2019, without waiver of its defenses (including lack of personal jurisdiction), as a result of the Court's November 9, 2018 Order. Dkt. No. 1108 at 1 (modifying CMO One "to lift the suspension of service upon any foreign entity that is a parent . . . of any corporate defendant in the MDL to the extent that the MDL Defendant must accept service for the foreign entity").

9

January 17, 2019, more than two months *before* Plaintiffs' expert disclosure deadline. *See* Dkt. No. 2065 at 6.  Plaintiffs therefore had no justification for failing to disclose Mr. Fahey on March 25, alongside their twenty other experts.

Plaintiffs' claim that they were waiting on discovery from Mallinckrodt plc is pretext.  The majority of the documents cited by Mr. Fahey in his report are publicly available.  Moreover, as of January 25, Mallinckrodt LLC and SpecGx LLC had produced over 1.4 million documents to Plaintiffs.  And, to the extent Plaintiffs needed additional documents from Mallinckrodt plc to support Mr. Fahey's report, they could have requested an extension of the expert disclosure deadline from the Court.  They did not.  Instead, Plaintiffs withheld Mr. Fahey for nearly six months—allowing the March 25 expert disclosure deadline to lapse.  Plaintiffs also chose not to disclose Mr. Fahey to Special Master Cohen prior to his April 3 ruling on the scope of jurisdictional discovery.  Those decisions were Plaintiffs', not Mallinckrodt plc's.  *See Murray v. Ohio Cas. Corp.*, No. 2:04-CV-539, 2005 WL 2373857, at *3 (S.D. Ohio Sept. 27, 2005) (striking expert report first submitted in connection with opposition for summary judgment because the untimely report violated the deadline established in the court's order and offered a legal conclusion).

      **B.**      **Plaintiffs Have Failed to Prove That Their Untimely Disclosure of Mr. Fahey Was Substantially Justified or Harmless**

Plaintiffs argue that the Court should allow Mr. Fahey's late disclosure because Mallinckrodt plc can identify no prejudice.  That is incorrect.  As an initial matter, it is *Plaintiffs* who bear the burden of proving that their delayed disclosure of the Fahey Report does not warrant exclusion.[6]  *Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 637 (6th Cir. 2007)

---

[6] Plaintiffs' misguided attempt to saddle Mallinckrodt plc with the burden of establishing prejudice is contrary to the case law, including the case law cited by Plaintiffs, which requires the *noncompliant* party to show why that party failed to comply with Rule 26 and why that failure was substantially justified or harmless.  *See e.g.*, *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) ("We agree with the circuits that have put the burden on the potentially sanctioned party to prove harmlessness."); *see also U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016) (same).

(affirming exclusion of expert report where "there is no suggestion that [the defendant] was aware of plaintiffs' intent to supply expert testimony, or of [the expert's] identity, before plaintiffs filed a response to [the defendant's] motion for summary judgment"). Indeed, the Federal Rules of Civil Procedure mandate ***absolute compliance*** with Rule 26(a). Fed. R. Civ. P. 37(c)(1). Despite Plaintiffs' appeal to the Court's "discretion," a trial court *must* sanction a party for violating Rule 26, unless that violation was "substantially justified" or "harmless." *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016); *see e.g.*, *Vaughn v. City of Lebanon*, 18 F. App'x 252, 263 (6th Cir. 2001) (affirming exclusion of expert report and explaining that "absent a showing of 'substantial justification' or 'harmless' violation, Rule 37(c)(1) requires a district court to impose a sanction for violation of the disclosure requirement").

There is no reason for the Court to allow the untimely report or excuse Plaintiffs' noncompliance with Rule 26 here. Plaintiffs try to distinguish the cases cited in Mallinckrodt plc's motion to strike, but those cases are plainly analogous to the case at bar. In *Chicago Insurance Co. v. Capwill*, the court struck an expert report that – like Mr. Fahey's – was filed without leave in connection with an opposition brief after the court's limited discovery period had passed. No. 3:01 CV 2588, 2009 WL 3063351, at *8 (N.D. Ohio Sept. 21, 2009). Similarly, the court in *Shough v. Management & Training Corp.* granted a party's motion to strike where that party, like Mallinckrodt plc, had no knowledge of the expert's testimony and did not have a chance to cross-examine that expert. No. 3:16 CV 53, 2018 WL 295576, at *4 (N.D. Ohio Jan. 3, 2018). These cases and others support striking the Fahey Report.[7]

---

[7] Notably, Plaintiffs simply ignore several other cases in Mallinckrodt plc's motion to strike that support striking the Fahey Report, Dkt. No. 1836-1, including *Bradford v. Bracken Cty.*, No. 09-115-DLB-JGW, 2012 WL 2178994, at *6 (E.D. Ky. June 13, 2012) and *Hodges v. Salvanalle, Inc.*, No. 1:12-CV-2851, 2014 WL 584756, at *3 (N.D. Ohio Feb. 12, 2014). Nor do Plaintiffs attempt to address their other flagrant violations of Rule 26. *See* Dkt. No. 1836-1, at 7, n.2.

11

### IV. MALLINCKRODT PLC WILL SUFFER PREJUDICE IF THE COURT DOES NOT STRIKE THE FAHEY REPORT

#### A. The Court's July 3 and July 8 Orders Preclude Mallinckrodt plc From Taking Remedial Discovery

The Court's orders preclude Mallinckrodt plc from taking remedial discovery by deposing Mr. Fahey or submitting a rebuttal expert report. Puzzlingly, however, Plaintiffs' opposition to the motion to strike faults Mallinckrodt plc for complying with those orders by not noticing Mr. Fahey's deposition. The Special Master's April 3 Order did not contemplate expert discovery, let alone expert depositions, and the Court's July 3 and July 8 Orders expressly forbade Mallinckrodt plc from conducting additional discovery in support of its motion to dismiss. *See* Dkt. No. 1512; 1836-2, Exs. A, B. Plaintiffs' offer to make Mr. Fahey available for deposition is thus hollow, as Plaintiffs cannot authorize Mallinckrodt plc to contravene the Court's orders. With that said, in light of Plaintiffs' offer, Mallinckrodt plc renews its request for leave to depose Mr. Fahey and submit an expert rebuttal report within an appropriate time frame. *See* Dkt. No. 1836-1 at 11; Dkt. No. 1836-2, Exs. A, B, F.

#### B. The Fact Affidavits Filed in Support of Mallinckrodt plc's Reply Brief Are Not a Substitute for an Expert Rebuttal Report

Mallinckrodt plc's affidavits proffer facts to support its position that the Court lacks jurisdiction over Mallinckrodt plc, as the Sixth Circuit expressly permits. *See, e.g.*, *NTCH-West Tenn, Inc. v. ZTE Corp.*, 761 F. App'x 485, 487 (6th Cir. 2019) (allowing a defendant to offer a declaration from its legal director in support of its Rule 12(b)(2) motion); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997) (finding that the trial court properly relied on the defendant's affidavits for purposes of determining its motion to dismiss based on lack of personal jurisdiction). Those affidavits cannot alleviate the prejudice caused by the Fahey Report. The affiants are percipient witnesses and do not opine on Mallinckrodt plc's corporate filings,

general ledger, or tax returns from an expert accounting perspective. They do not provide counter expert "opinions" and "conclusions" on the topics on which Mr. Fahey opines, as one would expect from a rebuttal report.[8]

Normally, the Federal Rules would allow a party to challenge an infirm expert opinion, like Mr. Fahey's, through deposition. Fed. R. Civ. P. 26(b)(4)(A); *Grayiel v. AIO Holdings, LLC*, No. 3:15-CV-00821-CHB-LLK, 2019 U.S. Dist. LEXIS 97113, at *17 (W.D. Ky. Mar. 14, 2019). But Mallinckrodt plc is precluded from deposing Mr. Fahey. It is likewise prevented from submitting a rebuttal report to challenge Mr. Fahey's qualifications, methodology, and opinions—as would typically be its right. Therefore, allowing Mr. Fahey's inaccurate and inadmissible opinions to stand unrebutted will result in serious and irreversible prejudice to Mallinckrodt plc.

## CONCLUSION

For the foregoing reasons, Mallinckrodt plc respectfully requests that the Court strike the Fahey Report.

Dated: August 2, 2019

Respectfully submitted,

/s/ *Brien T. O'Connor*
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
(617) 235-4650

---

[8] Plaintiffs' characterization of John Einwalter as an undisclosed expert is particularly unavailing. Mr. Einwalter is not being offered as an expert, and his affidavit bears no resemblance to an expert report. Moreover, his statement regarding "cash pooling" as "a common corporate practice" is based on his personal knowledge. That statement does not transform his affidavit into an expert report. *See Cox v. Tenn. Valley Auth.*, No. 92-5641, 1993 WL 72488, at *5-6 (6th Cir. 1993) ("While [the affiant] has expertise about flooding, he is not an expert retained by TVA for the purposes of testifying at trial. Instead, he is a veteran TVA employee with substantial knowledge pertaining to this case."). In addition, Plaintiffs half-heartedly complain that they were denied the opportunity to depose Alasdair John Fenlon. Mr. Fenlon submitted his first declaration in January in connection with Mallinckrodt plc's motion to dismiss. Plaintiffs filed their opposition to Mallinckrodt plc's motion to dismiss on June 21, 2019. Dkt. No. 1717 (refiled as Dkt. No. 1812). Plaintiffs thus had over five months to notice Mr. Fenlon's deposition (and, indeed, they negotiated for a deposition of another foreign entity's witness) but did not do so.

Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Counsel for specially appearing
Defendant Mallinckrodt plc*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of August 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

/s/ *Brien T. O'Connor*
Brien T. O'Connor
