IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) CASE NO.  1:17-MD-2804 <br> ) <br> ) JUDGE DAN A. POLSTER <br> ) <br> ) MAGISTRATE JUDGE DAVID A. <br> ) RUIZ <br> ) <br> ) RESPONSE OF THE W.P. COMPANY, <br> ) LLC, *dba* THE WASHINGTON POST, <br> ) TO CERTAIN DEFENDANTS' <br> ) OBJECTION TO PROPOSED ORDER <br> ) DE-DESIGNATING DEA SUSPICIOUS <br> ) ORDER REPORTS AND MEDIA <br> ) INTERVENORS' POSITION PAPER <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Now comes THE W.P. COMPANY, LLC, *dba* The Washington Post ("Media Intervenor" or "The Post"), by and through undersigned counsel, and hereby submits its Response to Certain Defendants' Objection to Proposed Order De-Designating DEA Suspicious Order Reports and Media Intervenors Position Paper. (R. 2080)[1] Initially, there appears to be confusion about the difference between a judicial record and a public record.

---

[1] The Post also adopts the positions set out by HD Media in its brief on this subject.

1

## I. ARCOS Data and SORs are public records, not judicial records

The Media Intervenors do not contend that the ARCOS Data or Suspicious Order Reports ("SORs") are judicial records.[2] Rather, they are public records, meaning that they are subject to disclosure by the public entity Plaintiffs upon request in compliance with state public records statutes.  The permanent, blanket Protective Order[3] in this case effectively prevented the public entity Plaintiffs from complying with their duties under Ohio's Public Records Act.  The Media Intervenors challenged the Protective Order, asserting that there was not "good cause" for it, as required by Fed. R. Civ. P. 26(c).  The Sixth Circuit Court of Appeals agreed, vacating and remanding.  That left the District Court with two options: (1) Lift the Protective Order totally, as it did for the ARCOS Data from 2006 through 2012; or (2) Tailor a Protective Order that would meet the "good cause" standard.  The District Court sought input from the Drug Enforcement Administration ("DEA") and Pharmaceutical Defendants for "good cause" to keep the 2013-2014 ARCOS Data and the SORs under a Protective Order.

The Media Intervenors and the DEA reached agreement on lifting the Protective Order as it pertained to SORs, and respectfully urge this Court to enter the proposed order. (R. 2040-2)

Because no good cause has been demonstrated to keep the 2013-2014 ARCOS Data secret, the Protective Order should be lifted as to that ARCOS Data, removing all obstacles to distributing the information. The Pharmaceutical Defendants' reliance on "judicial records" and "right of access to raw discovery" is misplaced. (R. 2080, Page ID# 286624-5) These are not judicial records, and no one is asserting a right of access to raw discovery.  Rather, these are

---

[2] Though they might become judicial records if and when they are filed with pleadings on the docket.  Like the Pharmaceutical Defendants, The Post has no evidence that they have been, but that is of no import.

[3] Numerous Protective Orders have been issued and amended in this case.  This document is intended to refer to the Protective Order currently in effect.

2

public records which cannot be withheld by public entity Plaintiffs absent "good cause" for a Protective Order.

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20 (1984), is distinguished on several fronts,[4] but two are key:

(1) In *Seattle Times,* the trial court entered the Protective Order upon a showing that constituted good cause as required by Rule 26(c). *Seattle Times,* 467 U.S. at 21.  In *In Re Opiate Litigation,* the Sixth Circuit vacated the Protective Order that was issued, determining that there was no good cause for it.

(2) In *Seattle Times,* the issue was whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process. *Id.* at 22.  Contrast that with *In Re Opiate Litigation,* where the issue is whether an overbroad, blanket permanent Protective Order can prevent a party from sharing information received during discovery and whether it could in fact supersede a public entity's duty under state statute.

There is a stark difference in the facts and the information being sought:  The Seattle Times was a defendant in a defamation action where personal information about donors to a religious group was disclosed to the newspaper in discovery. The newspaper wanted to publish that information and was stymied by a Protective Order.  In *In Re Opiate Litigation,* the media is not a party except to the extent it is observing and reporting on issues of immense public

---

[4]*Shane Group., Inc. v. Blue Cross Blue Shield of Mich.,* 825 F.3d 299 (6th Cir. 2016) also is distinguished regarding the ARCOS Data, but on point in consideration of the myriad other records filed under seal in this MDL.  *Shane,* which focused on the withholding and sealing of court records, was a class action litigated largely in the dark.  Even the settlement documents were withheld from the public.  The Sixth Circuit vacated and remanded, holding that the district court abused its discretion in sealing the documents.  There was no request for records from a public entity party in that case.

3

concern.  A key reason that the issues are of immense public concern is that there are nearly 2,000 states, cities, townships and counties which have filed suit on behalf of their residents, ostensibly to recover costs incurred as a result of the opioid epidemic.

The Sixth Circuit's decision and The Post's position are consistent with the holding in *Seattle Times:* Where a Protective Order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.  *Seattle Times,* 467 U.S. at 37.  Where, however, a Protective Order is *not* entered on a showing of good cause, where it is *not* limited to the context of pretrial discovery, and where it *does* restrict the dissemination of the information if gained from other sources (such as through a state public records request), then it does offend the First Amendment.

Further, the Pharmaceutical Defendants' assertion that "It is well-established that only 'court records' are subject to a presumption of public access" is false.  On the contrary, there is a strong presumption of public access to "public records," which includes "any document, device or item . . . created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." (O.R.C. §149.011(G))  This Court has already acknowledged that ARCOS Data meets that definition, as it wrote: "Plaintiffs have used this data to dismiss some defendants they had sued initially, and to add some defendants not initially sued." (R. 800, Page ID# 18981)   The records did in fact transmogrify into public records when they were used by public entities to add and delete defendants to this case.  Since neither the DEA nor the Pharmaceutical Defendants have articulated good cause, there is no justification for a continued Protective Order and no prohibition to their release.

## II.  All SORs produced to Plaintiffs are equally accessible

All records produced to public entity Plaintiffs, whether by the DEA or other sources, would be equally accessible pursuant to a public records request, absent good cause for a Protective Order.  There has been no distinction between SORs produced by the DEA and SORs produced by any other party, nor should there be.  Public records are defined as "records kept by any public office, including, but not limited to, state, county, city, village, township and school district units. . . ."  (O.R.C. §149.43(A)(1))   Respectfully, that would include the public entities who are Plaintiffs and who have received the records.  The Certain Pharmaceutical Defendants' objection, based on the notion that the records are "raw discovery that has not become a judicial record," fails because the "judicial record" argument fails.

## III.  Allegations of harm done by publication are not credible

The DEA and the Declaration of Joey Lenseigne opposing the disclosure of the 2013-2014 ARCOS Data cite actual "harm" caused by publication as good cause for the Protective Order.  (R. 2040 and R. 2040-1) But their rationale is dumbfounding.  It goes like this:

1. "[T]he harm is real and not hypothetical that public disclosure of ARCOS data by the media could tip off companies that DEA may be investigating them." (R. 2040, Page ID# 282705)

2. "The release of earlier ARCOS data may be already causing this harm.  For example, on July 17, 2019, the Washington Post reported that the ARCOS data suggested that six of the largest distribution companies had fueled the opioid epidemic. (Internal citation to Washington Post story omitted.)  While DEA cannot confirm or deny whether such companies are under investigation, those companies will now suspect that they may be under scrutiny based on the news reports calling out their data and such advanced warning makes any DEA investigation or enforcement effort more difficult." (R. 2040, Page ID# 282705)

3. "Based on the foregoing, there is good cause to maintain the Protective Order as it relates to the 2013/2014 ARCOS data." (R. 2040, Page ID# 282705)

5

And in Chief Lenseigne's declaration at paragraph 18: "This perceived harm is not hypothetical."

At paragraph 19: "This potential harm previewed in the Martin Declaration has already come to pass." (Citing the Washington Post's July 17, 2019, story.)

At paragraph 20:

"DEA cannot confirm or deny whether, based on its review of the ARCOS data, it may be investigating any of the companies profiled by the Washington Post because that would tip off any such companies who may be under investigation. The harm, however, has already been done. If any of the companies that DEA may be investigating did not already think they were under scrutiny, they will now suspect that they may be based on the news reports calling out their data." (R. 2040, Page ID# 282714-5)

Respectfully, the DEA appears not to give the Pharmaceutical Defendants credit for much savvy. As anyone following this MDL can tell, the Pharmaceutical Defendants are loaded with lawyers. The Pharmaceutical Defendants received the ARCOS Data from the DEA at the same time the Plaintiffs did – many months ago.[5] One imagines that upon receipt of the data, attorneys for the major drug companies took a look at it, perhaps even assessed where their clients fell on the scale of significant players. One does not imagine that they would put it at the bottom of their to-do pile and wait to see whether The Post writes about them.

### IV. This Court retains jurisdiction over the case, including Protective Orders

And finally, the Certain Pharmaceutical Defendants' assertion that this Court lacks jurisdiction to amend its Protective Orders is puzzling, given that the District Court has routinely amended its Protective Orders in this case – even while the case was on appeal and as recently as three weeks before oral argument. (R. 1545, Page ID# 43954-43962) Nothing prevents the

---

[5] In reality, since the Pharmaceutical Defendants are the original source of the ARCOS Data, they had it even before the DEA.

6

District Court from complying with the Sixth Circuit Order in advance of the issuance of a mandate.  The District Court retains discretion to manage the case the way it sees fit, and it is only an *abuse* of that discretion that would yield an adverse ruling.  That is true regardless of whether the mandate issues as scheduled on Monday (making this point moot), or whether a request for rehearing is filed, perhaps delaying the mandate.

**Conclusion**

For these reasons and those articulated in its earlier briefs, The Washington Post respectfully requests that this Court vacate the Protective Order as it relates to the 2013-2014 ARCOS Data.  Further, The Washington Post respectfully requests that the Court enter the Proposed Agreed Order De-Designating DEA Suspicious Order Reports submitted by the DEA on July 26, 2019. (R. 2040-2)

        Respectfully submitted,

        THE LEFTON GROUP, LLC

        */S/ Karen C. Lefton*
        KAREN C. LEFTON (0024522)
        TIMOTHY D. SMITH (0007636)
        3480 W. Market Street, Suite 304
        Akron, Ohio  44333
        330-864-2003 - office
        330-606-8299 - cell
        Karen@theleftongroup.com
        tdsmith@kent.edu

        *Attorneys for The W.P. Company, LLC,* dba *The Washington Post*

## CERTIFICATE OF SERVICE

I certify that on August 4, 2019, a copy of the foregoing was electronically filed and served on all counsel of record for this case through the Court's electronic filing system.

*/s/ Karen C. Lefton*
Karen C. Lefton

*An Attorney for The W.P. Company, LLC,* dba *The Washington Post*
