```
 1             IN THE DISTRICT COURT OF THE UNITED STATES
                  FOR THE NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION

 3
      IN RE: NATIONAL              )
 4    PRESCRIPTION                 )
      OPIATE LITIGATION,           )   Judge Polster
 5                                 )   Cleveland, Ohio
                    Plaintiffs,    )
 6                                 )   Civil Action
                                   )   Number 1:17MD02804
 7                                 )
      APPLIES TO ALL CASES         )
 8

 9

10                          - - - - -

11              TRANSCRIPT OF PROCEEDINGS HAD BEFORE

12            THE HONORABLE DAN AARON POLSTER

13                    JUDGE OF SAID COURT,

14               ON WEDNESDAY, AUGUST 7, 2019
                            - - - - -
15

16

17   Official Court Reporter:     Shirle M. Perkins, RDR, CRR
                                  U.S. District Court
18                                801 West Superior, #7-189
                                  Cleveland, OH 44113-1829
19                                (216) 357-7106

20

21

22

23
     Proceedings recorded by mechanical stenography; transcript
24   produced by computer-aided transcription.

25
```

```
 1    APPEARANCES:

 2     For the Plaintiffs:          PETER WEINBERGER, ESQ.,
                                    Spangenberg, Shibley &
 3                                  Liber
                                    Suite 1700
 4                                  1001 Lakeside Avenue, E
                                    Cleveland, OH 44114
 5                                  (216) 696-3232

 6

 7     For Derric and Ceonda Rees:  SCOTT BICKFORD, ESQ.,
                                    Martzell & Bickford
 8                                  338 Lafayette Street
                                    New Orleans, LA 70130
 9                                  (504) 581-9065

10
       For Jodi Shaffer:            MARC DANN, ESQ.,
11                                  Dann Law
                                    P.O. Box 6031040
12                                  Cleveland, OH 44103
                                    (216) 373-0539
13
       Also Present:                THOMAS BILLAK, ESQ.,
14                                  KEVIN THOMPSON, ESQ.,
                                    MARK DANN, ESQ.,
15

16

17

18

19

20

21

22

23

24

25
```

1       WEDNESDAY SESSION, AUGUST 7, 2019, AT 9:22 A.M.

2              THE COURT: All right. Good morning,
3    everyone.
4              This is a hearing on the NAS class action case or
5    cases.
6              These cases, of course, are dramatically different
7    from the other cases in the MDL. It's not clear to me they
8    really belong here, but they were transferred to this Court.
9    So I have them. And I need to decide how to -- how to
10   proceed.
11             I requested the parties propose a schedule for dealing
12   with the motion for class certification. I had assumed that
13   it would be a fairly quick process, but the schedule the
14   parties have proposed lasts more than a year, which is not
15   anything I contemplated and not anything I planned to do.
16   I've got to decide very quickly whether these cases, one,
17   whether they're appropriate for class certification. I
18   obviously have some serious questions. And two, if they
19   belong in the MDL. And I've got to make that decision
20   quickly and I intend to do it.
21             So I need to determine from the parties what -- what
22   you need to tee up this motion for class certification. To
23   me, it's a mixed question of fact and law. The Plaintiffs
24   have to demonstrate, indicate how they hope to prove their
25   contentions, but -- and more significantly, how common

1  issues of fact substantially predominate over individual

2  questions.  And these cases are totally unlike anything else

3  in the MDL.  The cases in the MDL almost exclusively are

4  brought by Government entities, states, cities, counties,

5  seeking injunctive relief and monetary damages for public

6  services that had been expended in the past and will be

7  expended in the future.

8  The Plaintiffs have very specifically disclaimed any

9  intent to focus on any individual who's been harmed;

10  addicted, overdosed, injured, died, whatever.

11  They're not going to try to prove their cases through

12  proof of any individual injury.  They're doing it through

13  aggregate proof.  And again, they're not -- they're not

14  focusing on any individuals because that isn't the injury

15  and that's not the harm.

16  Of course, this -- this class action is the opposite.

17  It's made up of individual claims for individuals who are

18  born with Neonatal Abstinence Syndrome and require medical

19  monitoring; in some cases, very expensive medical treatment

20  for many years.

21  So these are individual claims.  So they've been

22  lumped together in a class action.  The Court has great

23  doubt as to whether they're appropriate for class action,

24  and I need to address that quickly.

25  Now, can the Plaintiffs tell me what discovery they

1 need to address that question? Really, whether individual,

2 individual questions, both on liability and damages,

3 predominate? If so, it can't be a class, and it's got to be

4 brought as individual cases, and it won't be in this MDL.

5 If so, maybe it can be brought as a class. Whether it stays

6 in the MDL is between me and the JPML.

7 So you're talking about months and months of

8 discovery, expert reports. I don't understand why you need

9 months of discovery. I don't understand why you need any

10 expert reports. So someone needs to educate me.

11 MR. BICKFORD: Good morning, Judge. Scott

12 Bickford representing the NAS babies.

13 Judge, in order for us to -- well, first of all, we're

14 asking for medical surveillance monitoring class, first of

15 all. So it depends what the ask in this case is. And first

16 and foremost would be a medical surveillance and monitoring

17 class, which is to avoid or minimize the eventual damage or

18 to abate the damage that children have.

19 It's -- the NAS babies, as this Court knows, is a

20 unique class of individuals. They are, by definition,

21 babies that are born with Neonatal Abstinence Syndrome,

22 Number 1. So they have, unlike most medical monitoring

23 cases, they have a pre-existing injury. It is not a

24 speculative or future injury. And the necessity of medical

25 monitoring of these children is to monitor what

1  manifestations of the existing injury take place in the
2  future.  Those manifestations are fairly documented.  I
3  think they're pretty --
4             THE COURT:  They're going to be different for
5  each child.  For some, happily, it won't be much; for some,
6  they may have permanent -- permanent injuries.
7             MR. BICKFORD:  Hence, the medical monitoring
8  issue because what we want to do is to track -- to register
9  these children, to track these children, to see -- to track
10 the 40 percent -- the odd 40 percent of these children that
11 develop mental disabilities, learning disabilities.
12            THE COURT:  Again, this is all individual --
13 that's the point.  It's all individual.  And the other issue
14 is proof of causation.  All right?
15    I don't see how -- I mean each -- each individual was
16 born to a mother.  The mother obviously ingested opioids at
17 some point during the pregnancy.  We know that.  That's the
18 only way you get Neonatal Abstinence Syndrome.  Okay?
19    How and when and whose opioids each mother ingested is
20 different for each -- for each mother.  Some of them may
21 have ingested prescription opioids, some may have ingested
22 street drugs, some of them may have started on prescription
23 opioids and gone to street drugs, some may not.  It's
24 different for each individual mother.  Okay?
25    So what I've got to -- and no amount of discovery is

|          |                                                                      |
|----------|----------------------------------------------------------------------|
| 1        | going to change that. I know that, you know that. All                |
| 2        | right? You've got to tell me succinctly how you plan to              |
| 3        | prove your case and how -- and how it is appropriate for a           |
| 4        | class action. I'm not sure you need any discovery for that           |
| 09:51:03 5 | and you certainly don't need an expert. You've got to tell         |
| 6        | me and convince me of that in order to get class                     |
| 7        | certification. If you do, I'll certify a class. If you               |
| 8        | don't, I won't, and you'll have to bring individual cases.           |
| 9        | So I need -- I don't think you need a year. If you               |
| 09:51:19 10 | need a year, you're not going to get it. So tell me -- I          |
| 11       | mean I don't know what discovery you need to answer those            |
| 12       | questions. If you need discovery, I'll allow a short period          |
| 13       | of time for discovery.                                               |
| 14       | MR. BICKFORD: Well, presently, the question                          |
| 09:51:40 15 | is, is the -- is the class certification that we seek a           |
| 16       | class certification against the distributors in a divergent          |
| 17       | market or do we seek it against just, for instance, Purdue           |
| 18       | for those mothers that basically ingested a Purdue product           |
| 19       | in the market? So -- it depends on what --                           |
| 09:52:06 20 | THE COURT: How are you -- I mean --                              |
| 21       | MR. BICKFORD: How we define the class --                             |
| 22       | THE COURT: You've got to do that. I'm not                            |
| 23       | going --                                                             |
| 24       | MR. BICKFORD: I understand that, Judge.                              |
| 09:52:13 25 | THE COURT: I'm not going to give you a year                       |

1 to figure that out.

2 MR. BICKFORD: No. And what we asked for was
3 a very short reasonable time to amend complaints, which was
4 within 30 days, and 50 days thereafter to file our class
5 cert motion, together with our Defendant, with our expert
6 reports, justifying the reasonable and necessary extent of
7 the medical monitoring in this particular case.

8 At that point, there was a -- and we needed that four
9 months to look at the discovery that's already been done in
10 this case to surmount certain defenses that arise that the
11 Court has somewhat alluded to but there are other defenses
12 that arise in this case that may be surmounted due to the
13 Defendant's marketing procedures which had been extensively
14 looked at by the PEC. And there may be some additional
15 issues of what actual physical warnings on the NAS issue
16 were issued by the pharmaceutical industry as a whole.

17 So those are the principle issues that we need to look
18 at in forming our class cert motion that would go before the
19 Court; at which point, we would tender our experts, we would
20 tender the -- to the Defendants and they would have a short
21 discovery period to produce experts to the contrary, and the
22 Court would have briefs on the issue and then decide on
23 whether or not it decides to have a hearing on the issue.

24 So that's the -- that was the plan. I think that
25 originally, we had looked at a plan that ended in February

1 because of the holidays in November and December and the
2 timing of that issue. That was pushed out to what the
3 present plan is.
4 We've discussed the issue with the Defendants today.
5 We're willing to rework the schedule, understanding that the
6 Court wants to resolve this more quickly and are prepared to
7 propose a separate schedule tomorrow to the Court on the --
8 a revised schedule tomorrow to the Court.
9 THE COURT: I --
10 MR. BILLAK: Your Honor, if I might interrupt.
11 I'm Tom Billak, and we're also one of the people that
12 represents some of the children here.
13 I think, your Honor, you're right. You have hit the
14 nail on the head. The discovery that we need has nothing to
15 do with the theory of the class certification towards the
16 market, and so we --
17 THE COURT: Well, it may. I mean I still
18 don't -- I'm going to have to know -- you're going to have
19 to explain to me how you're going to prove your case because
20 that may -- that very well may influence the class cert
21 issue.
22 MR. BILLAK: So we --
23 THE COURT: And who's against --
24 MR. BILLAK: Plaintiffs have put that on how
25 we intend to prove that. And so what we say is that by this

1   oversupplying of the market, particularly like in West
2   Virginia, Ohio, and in Pennsylvania, they have flooded and
3   created this market. And they work together in concert to
4   create this market. So if you contributed to that market,
5   then you're liable for it all. And the point is in some of
6   these states, the law is extremely surprising and very
7   favorable on both.
8   THE COURT: Well, that's another -- it may be
9   true in some states, but that -- that's the reason why there
10  shouldn't be any nationwide class action. You want to bring
11  a case in a particular state, so fine.
12  MR. BILLAK: I think that the issue of --
13  you're right, your Honor, many states, it is very
14  problematic on whether you could do a class.
15  Number 2, the nationwide class, I would think the only
16  thing that we could probably do is what Ms. Cabraser was
17  arguing, for was some type of negotiating class.
18  THE COURT: Well, no, you're not in any
19  negotiated class. That had to do with cities and counties.
20  Okay?
21  MR. BILLAK: But, that would be the only
22  thing. I don't think --
23  THE COURT: Well, let's start -- why don't you
24  withdraw this -- why don't you withdraw this, go back to the
25  drawing board, decide what you want to do. If you want to

1     bring some cases in State Court, you know, where you think
2     the law covers this, I -- you can do it.  I -- I don't
3     think -- I have great doubts whether this is a viable
4     nationwide class action.  Okay?  But, you can -- you want to
5     try and convince me, you can, but I -- you're not doing a
6     very good job so far.
7                 MR. BICKFORD:  Judge, the Court's order that
8     we're following at this point anticipated that we would file
9     three individual State Court class actions and a nationwide
10    class action, which is what we have intended to do.  And so
11    we're following that dictate.  We would propose those to the
12    Court.
13         Now, remember that medical -- and the Court looks at
14    the umbrella of --
15                THE COURT:  First of all, I don't have any
16    state cases.  You want to file something in State Court, you
17    file it in State Court.
18                MR. BILLAK:  Well, your Honor, we're in
19    Federal Court because the tort reform that was passed, I
20    guess it was like in the late 90's, required the class
21    action cert filed in state -- if they involved a number of
22    Plaintiffs, have to be filed in federal court.
23                MR. BICKFORD:  The Fair Act brings us here.
24                MR. BILLAK:  And so the point is we're in
25    Federal Court, and we filed in this Federal Court like, for

1    example, Pennsylvania and West Virginia, and then the panel
2    sent us all here.  And --
3                THE COURT:  Well, I could send it back real
4    fast.  And maybe I'll just do that.  Okay?  I -- this is not
5    growing -- I don't think this is a good productive use of my
6    resources.
7         So maybe I'll just shoot them back.  They can go back
8    to around the country.  I think these are unworkable cases,
9    unmanageable cases.  I don't understand them.  If you can't
10   succinctly explain it to me, I think this -- the quick thing
11   is I'll just send them back to the JPML and let them do what
12   they want.
13               MR. DANN:  Judge, can I take a short swing at
14   this?
15               THE COURT:  Very short.
16               MR. DANN:  Yes, your Honor.  My name is Mark
17   Dann on behalf of the children, NAS-affected children.
18        Your Honor, the establishment of a medical monitoring
19   protocol by injunction on a nationwide basis or on a
20   state-by-state basis, depending on the outcome of your
21   evaluation of the case law, is actually a relatively simple
22   and quick solution.  These children are getting older
23   everyday, and the ability to --
24               THE COURT:  I understand that, Mark, but I
25   don't see how you're going to -- how you're going to -- how

1  you're going to track the harm from Baby A to any one
2  Defendant unless you can categorically show that, you know,
3  that while -- while she was pregnant, that baby's mother
4  took a drug from a, you know, a particular manufacturer.
5      MR. DANN: Your Honor, our challenge is no
6  more challenging than the challenge of the cities and
7  counties.
8      THE COURT: No, they've got -- they can do it
9  in an aggregate way. I don't see how you do it.
10     MR. DANN: I think we could present that
11 evidence in an aggregate way that would allow the Court to
12 establish clear monitoring standards so that these -- these
13 children can get the interventions that they need.
14 Many of these children are in foster care right now.
15 They're without parents with the resources to have the
16 psychologists and the special education evaluations and the
17 things that need to be done to make sure that they get the
18 resources they need. And the injunctive part of this is, I
19 think we're all in agreement, is literally the only part of
20 this of these cases that could be -- would lend themselves
21 to class treatment and could potentially lend themselves to
22 national treatment as it relates to just establishing
23 protocols and establishing the mechanism for funding, a
24 medical monitoring fund that will allow these children to
25 receive those services.

1  It could be a very important --

2  THE COURT: That's only part of the case. I
3  mean you've got -- your case encompasses a whole lot of
4  other things. All right?

5  MR. DANN: We could skinny this down --

6  THE COURT: I suggest you go back to the
7  drawing board and figure out what you want to do and how you
8  want to do it and where you want to file it. All right?
9  Because what you've got, I don't think is manageable,
10 workable in this court or maybe any other court.

11  So that's my suggestion.

12  MR. THOMPSON: Your Honor, may I -- I'm Kevin
13 Thompson from West Virginia. And I'd just like to answer
14 your --

15  THE COURT: I'm very sympathetic to these
16 children. That isn't -- I mean obviously, you know, through
17 no fault of their own, they were born, you know, addicted.
18 All right? I mean it's horrendous, but how -- how you deal
19 with it in a lawsuit is, you know, that's what you've got to
20 convince me or any court.

21  MR. THOMPSON: Well, your Honor --

22  THE COURT: What you have -- what you have
23 isn't going to cut it.

24  MR. THOMPSON: Well, your Honor, medical
25 monitoring, by its very nature, is not an individual issue,

1  the cause.  The most important part of it is the

2  epidemiology and the fact that you're going to help a

3  community.  The --

4  　　　　　　THE COURT:  Wait a minute.  But you've got to

5  prove it as to any individual defendant, the causation and

6  the liability.  All right.

7  　　　　　　MR. THOMPSON:  I don't think so, your Honor.

8  　　　　　　THE COURT:  Well, I do.  I do.

9  　　　　　　MR. THOMPSON:  Because we're selling --

10  　　　　　　THE COURT:  You're going to have to convince

11  me or any Judge that you can to get a class.  Obviously, you

12  need an individual to bring an individual case.

13  　　　　　　MR. THOMPSON:  The ATSDR provides --

14  　　　　　　THE COURT:  Look, I didn't want to argue the

15  case.  I mean I -- I was hoping to have a fairly simple,

16  short process.  It isn't happening.

17  　　　So I suggest you all go back -- I'm doing nothing.

18  You go back to the drawing board, come up with some -- a new

19  case or cases.  If you think there's a class action case

20  that should be brought, bring it.  I'll look at it.

21  　　　　　　MR. DANN:  Your Honor, if we're able to get

22  the dates completed by February --

23  　　　　　　THE COURT:  The case -- you're describing a

24  different case or cases than you've got.  Okay?

25  　　　　　　MR. DANN:  Okay.

|    |    |
|----|----|
| 1  | THE COURT: So. |
| 2  | MR. BILLAK: Your Honor, if I -- |
| 3  | THE COURT: All right. I'm sorry. I wanted |
| 4  | something, you know, streamlined. It isn't happening. I |
| 5  | made some suggestions. Yes? |
| 6  | MR. WEINBERGER: Peter Weinberger on behalf of |
| 7  | Plaintiffs Executive Committee. |
| 8  | And I did participate in the phone call conference |
| 9  | that led to the proposal, just to listen in to see what the |
| 10 | issues were. |
| 11 | On behalf of the PEC, we -- I think it's important for |
| 12 | us to state for the record that our abatement remedies that |
| 13 | we set forth in our expert reports to abate the public |
| 14 | nuisance includes remedies associated with the NAS babies, |
| 15 | both with respect to future costs associated with the health |
| 16 | care system, related to monitoring their conditions, as well |
| 17 | as treating them, as well as abatement remedies in the form |
| 18 | of money going towards foster care. |
| 19 | And in our discussions with counsel, who are here on |
| 20 | behalf of the NAS babies over the last number of months, we |
| 21 | have pointed that out to them to reflect the fact that we |
| 22 | believe that what we have proposed to abate this public |
| 23 | nuisance as relates directly to the clients or the class |
| 24 | that they purport to represent are within the remedies that |
| 25 | we are seeking. |

1  THE COURT: Well, thank you. I sort of
2  thought that was the case. So that's another reason why
3  I -- I'm very skeptical of these cases proceeding
4  separately, so.
5  MR. BICKFORD: And, Judge, I think that we
6  both have an issue on that and --
7  THE COURT: Well --
8  MR. DANN: Your Honor, I personally -- I
9  personally watched the Governor in the legislature take the
10  tobacco settlement money that the state was awarded for
11  cessation of tobacco use and for treatment of people who
12  were injured by tobacco and securitize that and use it to
13  create a tax cut for the people of Ohio on my watch. When I
14  was Attorney General, I saw it happen.
15  The city -- no offense to the politicians, but the
16  cities and the counties and the states in this are not --
17  are not in a position to reliably protect the interests of
18  these children as they -- as they grow up. And this court
19  is in a unique position to be able to do that.
20  At a minimum, we'd ask that you remand these cases
21  back to the district courts from whence they came.
22  THE COURT: First of all, I don't have the
23  authority to do it, to just require the JPML. I think
24  they're unmanageable and unworkable. I'm not going to do
25  that. I mean you -- I suggest you go back to the drawing

board. You got to convince me or any other court that you're seeking relief different than that relief sought by the cities and counties, Number 1.

Number 2, if all you're seeking is medical monitoring, then say that and drop everything else.

Number 3, you've got to -- if you want to bring this as a nationwide class action, you've got to show how it's manageable, workable. You've got to show how individual, you know, combinations of fact predominate when you've got individual, individual babies who were born of individual mothers, each of whom had a different chain of drug use, and how you're going to prove this or tie this to anyone.

You're not a state or a public entity that can sue on behalf of the collective. That's the difference between your case and the other ones I have, the 2000 other ones. So --

MR. BICKFORD: Judge, with all due respect --

THE COURT: -- if and when you do all those things and something's in front of me, I'll take a look at it, but at the -- I'm not doing anything with what there is now.

MR. BICKFORD: Judge, with all due respect, what we had intended to do was just that.

THE COURT: Well, it didn't happen. So you go back to the drawing board. If you have something else you

```
 1   end up presenting, I'll at some point, when I have the time,
 2   I'll take a look at it.  But I think you should strongly
 3   reconsider whether you need to have a separate case or
 4   whether -- the relief that you're -- you're seeking is
 5   already being sought.
 6               MR. BICKFORD:  Judge, that was the purpose of
 7   us, in 30 days, filing our amended complaints and then
 8   moving for class certification.
 9               THE COURT:  Well, you can do whatever you
10   want.  Okay?
11        Obviously, you want to amend the complaint, you want
12   to scrap it, you want to go somewhere else, do whatever you
13   want, you know.  I -- I'm not -- but I'm not issuing any
14   schedule approaching this.
15        So all right.  Thank you for everyone's time and
16   attention.
17              (Proceedings adjourned at 10:09 a.m.)
```

```
 1              C E R T I F I C A T E

 2          I certify that the foregoing is a correct

 3   transcript from the record of proceedings in the

 4   above-entitled matter.

 5

 6

 7

 8   s/Shirle Perkins
     Shirle M. Perkins, RDR, CRR
 9   U.S. District Court - Room 7-189
     801 West Superior Avenue
10   Cleveland, Ohio 44113
     (216) 357-7106
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```