# Exhibit 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | No. 1:17-md-2804 |
| | ) | Judge Dan A. Polster |
| This Document Relates To: | ) ) | |
| Track One Cases. | ) ) ) | |

PLAINTIFFS' SUPPLEMENTAL DISCLOSURE OF EXPERT WITNESS

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiffs hereby disclose the identity of a witness they may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705: Professor Marc I. Steinberg.  This disclosure responds to Allergan Defense expert Jonathan R. Macey.  During Professor Macey's May 29, 2019 deposition, he testified regarding the limited universe of documents reviewed to form his opinion about the appropriateness of piercing the corporate veil to reach the parent corporation, Allergan plc.  Further to orders by Special Master Cohen, Allergan produced documents as late as June 13, 2019 and June 18, 2019 relevant to this issue and even produced documents as late as July 30, 2019, which Plaintiffs have yet to review. As a result of Defendants' delay tactics, Mr. Steinberg's report was just completed, and Plaintiffs were unable to disclose him at any earlier date.  Plaintiffs retain the right to supplement this disclosure to the full extent permitted under the Federal Rules of Civil Procedure, Federal Rules of Evidence and orders of the Court.

DATED:  July 31, 2019

ROBBINS GELLER RUDMAN
  & DOWD LLP
AELISH M. BAIG
MATTHEW S. MELAMED


_____
      AELISH M. BAIG

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
mmelamed@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
DOROTHY P. ANTULLIS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
dantullis@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
THOMAS E. EGLER
CARISSA J. DOLAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com
cdolan@rgrdlaw.com

Attorneys for Plaintiffs

4832-7838-0189.v1

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION LITIGATION ) | |
| ) | |
| County of Summit, Ohio, et al. ) | |
| ) | |
| v. ) | CASE NO. 1:17-MD-2804 |
| ) | |
| Purdue Pharma L.P., et al. ) | JUDGE DAN AARON POLSTER |
| ) | |
| ) | TRACK ONE CASES |
| The County of Cuyahoga ) | |
| ) | |
| v. ) | |
| ) | |
| Purdue Pharna L.P., et al. ) | |

**EXPERT WITNESS REPORT OF MARC I. STEINBERG**

## I. BACKGROUND

(A)      I am the Rupert and Lillian Radford Chair in Law and Professor of Law at the Southern Methodist University (SMU) Dedman School of Law.   I am the former Senior Associate Dean for Academics as well as the former Senior Associate Dean for Research at the SMU Law School.   The courses I have taught since I entered full-time teaching in 1982 include Business Enterprises, Securities Regulation, and Lawyering and Ethics for the Business Attorney.

Page Two  (Expert Witness Report of Marc I. Steinberg)

(B)  Prior to becoming a full-time academician in 1982, I was an attorney at the U.S. Securities and Exchange Commission (SEC), including serving as an attorney in the SEC's Division of Enforcement and as the special projects counsel to the SEC's General Counsel.

(C)  From 1986 to the present, I have served as a consultant to law firms and as an expert witness in scores of matters relating to company law as well as custom and practice in regard thereto. A number of these engagements focused on the subjects addressed in this expert witness report (Report):  stated generally, under custom and practice, the structures, relationships, activities, and/or corporate governance practices of parent and subsidiary corporations.

(D)  I have authored approximately 38 books as well as approximately 150 law review articles.  I have been both retained as an expert witness and written on subjects raised in this litigation.  For example, my scholarship includes a textbook entitled "Developments in Business Law and Policy" (2012) and a coauthored textbook entitled "Business Enterprises:  Legal Structures, Governance, and Policy" (3d edition 2016).  On the broader subject of corporate governance, my recently published book "The Federalization of Corporate Governance"  (Oxford University Press  2018),  has been favorably received.  For example, the Honorable E. Norman Veasey, the former Chief Justice of the Delaware Supreme Court, stated:  "Professor Steinberg has written a very readable, comprehensive, and historical analysis of the fascinating study of the

Page Three  (Expert Witness Report of Marc I. Steinberg)

tension between the internal affairs doctrine under state law and the contained role of

federal law in the firmament of corporate governance.  Although some of Professor

Steinberg's policy conclusions may be controversial, this book is a very valuable

contribution to the literature as a meticulously-researched and thoughtfully organized

scholarly work."  (on back cover book jacket)

(E)      During my second year of law school, I had the honor of serving as an

extern law clerk to Judge Anthony J. Celebrezze of the U.S. Court of Appeals for the

Sixth Circuit.  After graduation from UCLA (J.D.), I served as the law clerk for Judge

Stanley N. Barnes of the U.S. Court of Appeals for the Ninth Circuit. I thereafter

received my LL.M. from Yale Law School.  After graduating from Yale,  I served as a

legislative assistant  --  the only attorney on the staff  --  to Senator Robert P. Griffin of

Michigan (who  was  a  graduate  of  the  University of Michigan Law School and who

subsequently served as a Justice on the Michigan Supreme Court).

(F)      I am the editor-in-chief of The International Lawyer (an American Bar

Association publication) as well as The Securities Regulation Law Journal.  In addition,

I serve on the advisory board of The Journal of Corporation Law.  I  am a life member of

the American Law Institute (ALI).

(G)      I have  lectured  abroad  in  the  fields  of  company  and  securities  law,

including, for example, presenting at law schools and/or the practicing bar in Argentina,

Page Four  (Expert Witness Report of Marc I. Steinberg)

Australia, China, England, Finland,  Germany, Israel, Italy, Japan, Russia, Scotland, South Africa, and Sweden.

(H)     I am a member of the Texas Bar, Maryland Bar, California Bar (inactive status) and District of Columbia Bar (inactive status).

(I)     A complete copy of my curriculum vitae (CV) accompanies this Report in Annex  A  hereto.

(J)     A list of my expert witness court and deposition testimony during at least the prior four years is set forth in  Annex  B  hereto.  I am being compensated for all time incurred at the rate of $800 per hour in this matter, with a minimum payment of $10,000.

## II.    MATERIALS  REVIEWED

The documents and other materials that I considered in connection with this Report are set forth in  Annex  C  hereto.  This list (set forth in  Annex  C) was prepared by counsel for the plaintiffs. In addition, I have relied upon court decisions, statutes, and commentary (some of which are cited in this Report) -- through my decades of teaching, writing, and serving as an expert witness in regard to this subject matter.

## III    DOCUMENTS  AVAILABLE

When reviewing the documents and other materials that upon my request were provided to me by counsel to the plaintiffs in this litigation,  I did not receive key

Page Five  (Expert Witness Report of Marc I. Steinberg)

materials that likely would have been useful in my preparation of this Report.  My understanding is that these materials have not been made available to plaintiffs by defense counsel  and/or  they do not exist. *Examples include*:  minutes of board of director and board committee meetings (including corporate resolutions and other documentation related thereto) addressing transactions and other relevant events between the parent and subsidiary enterprises  and/or  among a number of the subsidiary enterprises;   minutes  of  shareholder  meetings  (including  documentation related thereto); documentation or other materials setting forth in sufficient detail the flow of funds to and from the parent and subsidiary enterprises as well as to and from the subsidiary enterprises (identifying the specific enterprises involved in the subject transaction,  transfer,  or  undertaking);   an accounting of the $33.75 billion received by the parent  company Allergan plc in  the Teva  Pharmaceutical transaction; and documentation  evidencing inter-company transfers of assets and liabilities within the "corporate group".  In addition, the deposition testimony thus far provided fails to fill to any significant degree these voids. See,  e.g.,  Deposition  Testimony  of  Stephan Kaufhold  (designated  as  corporate representative to testify on behalf of Allergan plc) (Oct. 26, 2018) at page 95 (answering affirmatively to the question whether Allergan plc received $33.75 billion in cash for the sale of its generics business to Teva  --  when

---

1/
    I did receive some heavily redacted board meeting minutes and related materials  produced in this action that were not helpful with respect to this inquiry.
2/
    I did review the two PLC ledgers produced in this action which detail relatively few transactions with respect to this inquiry and do not appear to reflect what happened to the $33.75 billion.

Page Six (Expert Witness Report of Marc I. Steinberg)

asked "on whose financial statements were the $33.75 billion in cash recorded", responding "... I don't have that direct knowledge.").

Professor Macey's Report does not address the absence of this meaningful information which is directly relevant to an analysis of enterprise liability and veil-piercing. As set forth in this Report, under custom and practice, significant issues are present that provide a sound basis to opine that legitimate questions of fact exist with respect to whether Allergan plc as well as certain of its subsidiaries are subject to liability for the debts incurred by the corporate enterprise.

## IV. OPINIONS RENDERED

At this time, my expert witness opinions are as follows:

(A) My understanding is that Allergan plc received approximately $33.75 billion in cash and approximately 100 million shares for the sale of its generic business to Teva Pharmaceuticals Industries Ltd. See Master Purchase Agreement dated as of July 26, 2015 by and between Allergan PLC and Teva Pharmaceutical Industries, Ltd. at Section 1.1 (defining "Cash Consideration" as meaning $33,750,000,000 as adjusted in accordance with Section 3:3 ["Purchase Price Adjustments"] and defining "Stock Consideration" as meaning "a number of shares of Buyer Parent Stock equal to the quotient of $6,750,000,000 divided by the Buyer Parent VWAP [volume weighted average price] of Buyer Parent Stock as of the end of the New York Stock Exchange trading day on July 31, 2015") (ALLERGAN_MDL_SUPP_00000174, at 181, 187, 206)

Page Seven  (Expert Witness Report of Marc I. Steinberg)

Insofar as I am aware, it does not appear that an accounting of the approximate $40 billion was produced by Allergan plc.  Simply put, where did the money go?  Allergan plc corporate representative  Stephen Kaufhold  testified in his deposition that "approximately  $6.2 billion ... went to ... "Activis Capaital S.a.r.l. ... where we had debt outstanding.  We paid off approximately $6.2 billion of term loans, so the proceeds went there."  Mr. Kaufhold further testified that he believed that:  "A portion [later stating  "a majority"]  of the proceeds also went  to ... the  Holdco  [Allergan  Holdco  US,  which according to Mr. Kaufhold, was the direct parent of "Activis Holdco, US. that was sold to Teva"] ... who had its net investment in the group that we sold to Teva."  Deposition of Stephen Kaufhold at pages 96-97 (October 26, 2018).  Otherwise, Mr. Kaufhold did not identify how the remainder of the proceeds  from the Teva transaction were distributed.  It is to be expected that a corporate representative in deposition testimony representing Allergan plc would know where precisely (or near precisely) the approximate $40 billion received from Teva went.  Hence, it appears that Mr. Kaufhold did not know or Allergan plc does not know itself.

Without the receipt of an appropriate accounting and/or the provision of other relevant documents, it is problematic to ascertain whether Allergan's plc's conduct was consistent with custom and practice.  For example, insofar as I am aware, I have seen no  evidence  supporting  that  the  requisite  authorizations  were  procured  from  the Allergan  plc  subsidiary  enterprises  whose  stock  was  sold  to  Teva -- including authorization by the subject boards of directors and shareholders.  Of key importance is

Page Eight  (Expert Witness Report of Marc I. Steinberg)

that the Allergan enterprise assets that were sold to Teva were the shares of the subject subsidiaries, not of the parent corporation Allergan plc.  Thus, Allergan plc did not directly own these shares; rather, a number of its subsidiaries did so.  Likewise, insofar as I am aware, I have seen no evidence supporting that authorizations were provided to validly allow Allergan plc to distribute  the proceeds from Teva Pharmaceuticals  -- i.e., that the direct parent enterprises of the subject subsidiaries whose stock was sold to Teva in fact effected the requisite authorizations.   From my understanding, nor did Professor Macey identify any such documentation -- which is critical to his ultimate conclusion -- in his Report.

(B)     I have reviewed Professor Macey's Report and disagree with a number of his opinions.  For example:

(1)     Professor Macey's Report conveys the impression that the corporate veil is pierced on a rare basis.   Although language in some court decisions supports Professor Macey's position,  the statistics tell a different story  -- namely,  that  it is not unusual for plaintiffs to successfully pierce the corporate veil.   See, e.g., John Matheson*, The Modern Law of Corporate Groups: An Empirical Study of Piercing the Corporate Veil in the Parent-Subsidiary Context*, 87 N. Car. L. Rev. 1091, 1110, 1114 (2009) (in the parent-subsidiary database finding that "courts pierced the corporate veil in 20.56% of the cases"); Peter Oh, *Veil-Piercing*, 89 Tex. L. Rev. 81, 107, 110 (2010) ("The present study finds an overall veil-piercing of 48.51%",  and in the entity context  41.17%); Robert P. Thompson, *Piercing the Veil Within Corporate Groups:*

Page Nine  (Expert Witness Report of Marc I. Steinberg)

*Corporate Shareholders as Mere Investors*,13 Conn. J. Int'l L. 379, 386 (1999) (focusing on corporate groups and finding veil successfully pierced in 34% of cases).

(2)    Professor Macey takes the position that the corporate veil should be pierced only if misrepresentation or fraud occurs.  See Macey Report, page 8 ("From a policy perspective, it generally is believed that piercing the corporate veil requires a demonstration that the entity whose corporate separateness is being attacked was organized or used by its parent to mislead creditors or to perpetrate a fraud on such creditors.").   The only jurisdiction of which I am aware where actual fraud is required to be shown in the piercing context is Texas and is limited to contract cases.  See Section 21.223(b) of the Texas Business Organizations Code.   This point is illustrated by a recent "Paper" written by attorneys at "the not-so-plaintiff-friendly" firm Gibson Dunn (which firm has retained me in the past as an expert witness).  See Robert A. Kyman, et al., *Strategies Regarding Corporate Veil Piercing and Alter Ego Doctrine* (July 31, 2018) (with the name Gibson Dunn appearing on each page of the Paper) (Gibson Dunn Paper).  With respect to the "basic test" of  "piercing the corporate veil",  the Paper (at page 5) identifies "two key elements": *First,* "Fraud/Injustice/Inequitable  Result"  -- "The failure to disregard the separateness of the corporate entity would sanction a fraud *or promote injustice*". (emphasis supplied). *Second*, "Single  Economic  Entity"  -- "'Alter  Ego'  A unity of interest and ownership between the corporate entity and its equitable owners.  Insufficient corporate separateness." (citing *Mason  v.  Network of Wilmington, Inc.*, 2005 WL 1653954 (Del. Ch. 2005)).  The Paper thereafter  (at page 6)

Page Ten  (Expert Witness Report of Marc I. Steinberg)

recognizes that "Alter Ego" is a "Fact-Intensive Inquiry" and identifies the following criteria: "Inadequate capitalization", "Insolvency", "Lack  of  corporate  formalities", "Siphoned company funds", "Facade for controlling shareholder" "*Plus* Fraud, Injustice, or Unfairness" (emphasis in original) (citing *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063 (Del. Ch. 2008). This Paper by Gibson Dunn attorneys reflects the mainstream view with respect to veil piercing.  In other words, even if fraud or misrepresentation is absent,  veil piercing under custom and practice  (depending upon the facts and circumstances) may be appropriate in situations where, for example, there exists unilateral conduct by the parent corporation without respecting the separate identity of  the  subject  affiliate(s),  lack  of  adherence  to  corporate  formalities, commingling of assets and liabilities (e.g., cash, liquid assets, debt obligations, and/or use of personnel), and siphoning off by the parent of funds or other assets belonging to the subject affiliate(s).  Thus, Professor Macey's position of veil piercing does not reflect current practice.

       (3)    Professor Macey implicitly assumes that the internal affairs doctrine (applying the law of the state of formation) is the approach that courts follow in veil piercing cases.  See Macey Report at pages 29-30.  Because the issue of veil piercing implicates the asserted rights of creditors, numerous courts have declined to apply the internal affairs doctrine in this context.  See Daniel Mendelsohn and Carmen Fonda, *Risky Business:  What You Didn't Know About Veil Piercing of Wholly Owned Subsidiaries*, American Bar Association, Business Law Today (March 13, 2018)

Page Eleven  (Expert Witness Report of Marc I. Steinberg)

("Judicial consideration of choice of law is rare in veil-piercing cases, but a brief survey leads to the discovery that state courts often apply their own state laws, regardless of where the subject entities are formed.").  Accordingly, Professor Macey's evident position on the application of the internal affairs doctrine in the veil piercing setting is misplaced.  There is a sound basis for this rejection by numerous courts:  "[A]llowing a state like Delaware  [with respect to a corporation's involuntary creditors]  to determine the scope of tort liability for companies incorporating under its law invites gross opportunism on the part of both the state and shareholders that invest in its corporations...."  Henry Hansmann and Reiner Kraakaman,  *A Procedural Focus on Unlimited Shareholder Liability*, 106 Harv. L. Rev. 446, 451 (1992).

(4)     Another assertion made by Professor Macey is, "as a theoretical and a practical matter, the analysis that is used when attempting to pierce the corporate veil of a corporation cannot be used when attempting to pierce the corporate veil of an LLC."  Macey Report at page 28.  Professor Macey's opinion is not shared by numerous statutory and judicial determinations that have addressed this subject.  See, e.g., Section 322B.303(2) of the Minnesota Statutes Annotated  (applying corporate veil-piercing doctrines to LLCs);  *Kaycee Land and Livestock v. Flahive*, 46 P.3d 323, 327 (Wyo. 2002) ("We can discern no reason, in either law or policy, to treat LLC's  [with respect to veil piercing] differently than we treat corporations [and that] [i]f the members and officers of an LLC fail to treat it as a separate entity as contemplated by statute, they should not enjoy immunity from individual liability for the LLC's acts that cause

Page Twelve  (Expert Witness Report of Marc I. Steinberg)

damage to third parties."); Gibson Dunn Paper at page 8 (stating that "[e]xcept [that] somewhat less emphasis is placed on whether the LLC observed internal formalities because fewer such formalities are legally required", -- "[c}ourts generally apply the same rules for LLC veil piercing").

(5)  Professor Macey opined: "It is common for companies within the same corporate group to use the same stationary, to share domain names/emails ...." Macey Report at page 23.  To my knowledge, whether this practice is common with respect to enterprises within a corporate group having a publicly-held parent company or having a large-asset privately-held parent entity has not been empirically measured. But to engage in these practices incurs undue risk -- To do so may induce individuals and entities outside of the subject enterprise group to be misled regarding the identity of the business enterprise that in fact is involved in the subject transaction or other endeavor.  Use of incorrect letterheads or email addresses by personnel, depending on the facts and circumstances, may cause reasonable reliance to be placed by outside persons and constitute misrepresentation in the veil piercing setting.  In addition, receipt or sending of invoices or other significant materials with the parent company being identified as a primary party in interest may also evidence misrepresentation and/or attribution for purposes of principal liability as well as for veil piercing.

Based on the materials I have reviewed thus far, there exists evidence of such behavior.  For example, an invoice (# 009394) dated February 9, 2017 in the

Page Thirteen  (Expert Witness Report of Marc I. Steinberg)

amount of  $37,743.94  was sent by  InVentiv Health  to Allergan, Plc  having the project name  "Opioid  PMR  Support".  (ALLERGAN_MDL_04382952) (see  Deposition Testimony of Jennifer Altier at pages 39-41 (August 2, 2018) (testifying that InVentiv was "[a] contract sales force organization" that supplied the entire sales force for promoting  Kadian  among  a  number  of  other  drugs).  Absent  communication otherwise,  this invoice may reasonably be understood as representing that Allergan plc itself is directly involved with respect to "Opioid PMR Support".  Another example is a letter bearing "Allergan"  letterhead with "Allergan, plc"  and that company's address at the top of every page (except the first page) to Tracy Thomas of Lakewood Ohio dated August 3, 2016  responding to her  "recent request for information concerning the availability of the prescribing information for NORCO ...." (ALLERGAN_MDL_02185805) Toward the end of the letter,  the following is stated:  "Any publication of the provided information or use beyond this intent is prohibited without written authorization from *Allergan, plc*....  Thank you for your interest in *Allergan, plc  products*." (emphasis supplied) *(Id.* at 5183-84).  Absent communication otherwise, this letter may reasonably be understood as representing that Allergan plc is directly involved in the manufacturing, marketing, and/or distributing of NORCO.

A similar  letter with  "Allergan"  and  "Allegan plc"  being clearly identified on the top of each (but the first)  page  evidently  was  sent  by  Allergan, plc  to individuals "concerning the availability of the prescribing information for KADIAN ...."  ("Dear PII" Letter  dated  January 17, 2017)  **(**ALLERGAN_MDL_02869386)  The text of this

Page Fourteen  (Expert Witness Report of Marc I. Steinberg)

letter also makes clear that Allergan, plc is the company primarily involved, stating:
"The above information is being provided in response to your specific inquiry.  *Allergan,*
*plc makes no recommendation regarding unapproved uses*....  Any publication of the
provided information or use beyond this intent is prohibited without written authorization
*from Allergan, plc.....*"   (emphasis supplied) *(Id.* at 9387).  The letter closes:  "Thank you
for your interest in *Allergan, plc products*."  (emphasis supplied)  *(Id.* at 9388).  Absent
communication otherwise, this letter may reasonably be understood as representing
that Allergan plc is directly involved in the manufacturing, marketing, and/or distributing
of KADIAN.

Moreover, email communications sent among a number of Allergan entity group
employees identified themselves as having a position with Allergan, plc even though
such person's  email address has a different internal address. Strikingly, Allergan plc
has no employees.  See Deposition Testimony of Allergan Corporate Representative
Stephen Kaufhold at pages 98,122 ("Allergan PLC has no employees.").  Indeed, as Mr.
Kaufhold testified (*id.* at page 108), "there's no large cash balances being maintained at
Allergan PLC, just sufficient cash to pay the expenses of maintaining that entity."

For  examples  of  such  Allergan  corporate group email communications, see
email from Julienne Balcon to Wendy Despain  dated  August 4, 2015 ("Subject: FW:
Branded  Legacy  Actavis/Watson  Products List")  (actavis.com email address)
(ALLERGAN_MDL_01334578);  email from Anna Haripersaud to Wendy Despain  dated
August 18, 2015 ("Subject: RE: Annual  Report  Request  Memo - Kadian (morphine

Page Fifteen  (Expert Witness Report of Marc I. Steinberg)

sulfate) NDA") (actavis.com email address)  (ALLERGAN_MDL_01334588); email from
Mary Woods to Laura Pinti dated August 2, 2017 ("Subject:  Request for DEA - SOMs
info.  Thank  you.") (allergan.com email address)  (ALLERGAN_MDL_01836286);
group email from "Daily Inventory Report" transmitted by Ebenezer Ankrah to scores of
individuals ("Subject:  Daily Back-order Report for 12/11") (actavis.com email address)
(ALLERGAN_MDL_01489486-488); deposition testimony of Mr. Kaufhold at pages
146-153.  The foregoing communications both internally and externally  evidence  that
Allergan  plc  was  integrally  involved  in  the  opioid  business.

      (6)  Professor Macey opines:  "It is common for parent companies to
directly or indirectly provide shared services such as insurance procurement, cash
management, accounting, legal, technical, environmental, and to charge for such
services."  Macey Report at page 18.  I agree with Professor Macey's opinion.  In the
situation at bar, however, the opposite occurred.  See Management Service Agreement
effective January 1, 2016 between Allergan Sales, LLC and Allergan, Inc. (collectively
referred to as "Service Provider") and Allergan PLC whereby the Service Provider is
to provide "Management Services" as well as "General and Administrative Services" to
Allegan PLC (Exhibit A of the Agreement)  (ALLERGAN_MDL_04451501, at 1514.  The
broad spectrum of services set forth in Exhibit A do not exclude those that are related to
the  manufacturing and distributing of opioid products. Significantly, the Agreement also
provides for the  Service  Provider  to  perform  services  on  a  "Group-wide  basis"
while being compensated by Allergan PLC.  See  "RECITALS"  --  (A)  "The Service

Page Sixteen  (Expert Witness Report of Marc I. Steinberg)

Provider and Company  [Allergan  PLC]  are members of a multinational group of enterprises (the  "Group");"  (F)  "Company recognizes that all costs incurred by the Service Provider in the provision of the Services shall be charged to Company plus an arms-length mark-up where appropriate;"  "SERVICES"  --  2.2  "During the term of this Agreement, subject to the terms and conditions stated herein, the Service Provider will provide the Services, which may be performed on a  *Group-wide  basis*...."  (emphasis supplied)  "FEES"  --  3.1  "In consideration of the Services to be rendered by the Service Provider under this Agreement,  Company agrees and undertakes to pay the relevant service fee to the Service Provider  ...."  Note that pursuant to Section 2.6, the Services may be reciprocal:  "Reciprocal Company Services:  From to time after the Effective Date, the Parties agree that Company may provide Services to the Service Provider at Service Provider's request...."  (*Id.* at 1501-1503)

The Services set forth in Exhibit A of the Management Service Agreement encompass Services that are viewed as essentially substantive in character, including: "executive management services that provide strategic direction in terms of business operations, financial goals and long-term growth" and "general and administrative services" that pertain to  accounting  and  finance,  legal  services,  corporate communications, banking, investor relations, law compliance, global strategic operations, and global strategic marketing and sales. *Id.* at 1514.  These types of activities are integral to the operation, profitability, and long-term financial growth of a multi-national group of enterprises.  Many of these activities are substantive  --  not

Page Seventeen  (Expert Witness Report of Marc I. Steinberg)


ministerial.  And these services may be performed by the Service Provider  -- i.e.,
certain subsidiaries of Allergan plc  --  for the benefit of Allergan plc and its subsidiaries
on a "Group-wide basis."  (*Id*. at 1503 (at 2.2))

To date, insofar as I am aware, I have not seen documentation that, for example:
shows a comprehensive list of the services that  Allergan Sales, LLC  and Allergan, Inc.
("Service  Provider")  provided to  Allergan PLC  and the other enterprises within the
Allergan group;  evidences that  Allergan PLC in fact compensated the Service Provider
in accordance with the provisions of the Agreement;  with respect to services performed
by  Service Provider  on a  Group-wide basis within the  Allergan entity family, identifies
the enterprise(s) that directed the Service Provider to perform the requested services;
and that an accounting  (or other documentation)  exists  that  reflects  the  conducting
 of this Management Service Agreement.

Thus, with respect to its implementation, the Management Service Agreement
poses the realistic possibility that:  the parent company  Allergan PLC  delegated the
provision of key services pursuant to the Management Service Agreement to two of its
subsidiaries;  pursuant to this Agreement,  these services were authorized to be
performed by two subsidiaries on a Group-wide basis within the Allergan entity family;
an adequate accounting or other sufficient documentation does not exist to reflect the
performance and payment of these services;  the commingling of assets and liabilities
occurred  among  a  number  of  Allergan  Group-wide  enterprises  with respect to the

Page Eighteen  (Expert Witness Report of Marc I. Steinberg)

performance of these services; and that the separate identity of a number of the Allergan Group-wide entitles was not adhered to with respect to the administration and implementation of the Management Service Agreement.  The foregoing factors, if in fact the situation, would support the levying of alter ego/piercing the corporate veil liability.

        (7)    Professor Macey opines:  "It is common business practice for parent companies to control the capital expenditures of their subsidiaries.  In particular, it is common for parent companies and controlling shareholders to approve leases, major capital expenditures, large investments, major policy decisions and sales of securities."  Macey Report at page 19.  The above language overstates customary business practice. Of course,  parent companies have control of their wholly-owned subsidiaries by being able to elect all members of each subsidiary's board of directors and by being the 100% shareholder in the shareholder meeting context.  But that is far different from the  parent  corporation  itself  approving  a  wholly-owned  subsidiary's major  capital expenditures,  large  investments,  and  significant  leases. These  types of  actions, consistent with custom and practice and in compliance with applicable law, are to be approved by the board of directors of the subject subsidiary and, if statutorily required or mandated pursuant to internal corporate governance provisions,  by the wholly-owned subsidiary's  sole  shareholder. Action  by  the  parent  corporation inconsistent  with respecting these statutory norms provides a basis to support veil piercing. Insofar as I am aware,  I have not seen any materials documenting that these corporate norms were adhered to by the Allergan-Group of enterprises.

Page Nineteen  (Expert Witness Report of Marc I. Steinberg)

(8)     As Professor Macey observes, "certain employees involved in the operations of the Allergan Entities simultaneously performed roles as officers of other corporations within the [Allergan] corporate group."  He considers this practice (known as "double hatting") "a matter of ordinary and customary corporate governance" -- asserting that it "does not provide a justification for imposing liability on the holding company from a corporate governance perspective...."  Macey Report at page 20.  On this issue, I agree that this practice is not unusual.   In the case at bar, seven of eight of Allergan plc's executive officers also serve as officers of Allergan Finance, LLC. (Compare Allergan, plc Form 10-K for the fiscal year ended December 31, 2018, at page 85, with Second Amended and Restated Operating Agreement of Allergan Finance, LLC (effective date March 9, 2018) (ALLERGAN_MDL_SUPP_00000326, at 0331-0332)  Although the practice of "double hatting" by itself is not sufficient ordinarily to pierce the corporate veil, under custom and practice, it does subject enterprise groups that engage in this practice to greater risk as a number of courts view this practice as a factor weighing in favor of veil piercing.

(9)     Professor Macey's Report seems to take the position that cash and other assets of the enterprises comprising the Allergan corporate group were properly accounted for and that services provided by Allergan plc and other affiliates were correctly charged.  See Macey Report at pages 18-19, 21-22.  As addressed in Section IV(A), (B)(6) of this Report, insofar as I am aware, I have not seen documentation sufficient to render such an opinion.

Page Twenty  (Expert Witness Report of Marc I. Steinberg)

As an additional example, certain  of Allergan plc's subsidiaries serve as

guarantors  of  debt  incurred  by  Allergan plc (or a number of its subsidiaries)  to

noteholders  and other creditors.  (See Allergan plc Form 10-K for the fiscal year ended

December 31, 2018, Note 17 to the Consolidated Financial Statements, at F-60 to F-61,

F-90; Allergan Public Limited Company 2016 Irish Annual Report, at 66-72, Note 14 to

the Consolidated Financial Statements at 155-162)  Questions arise as to the corporate

governance  procedures implemented to procure these guarantees and the benefits that

the affected subsidiaries have received by serving as guarantors for the benefit of the

parent company,  Allergan plc,  or other subsidiaries of Allergan plc.  For example, if

Allergan plc has used its control to compel certain of its subsidiaries to guarantee the

parent's (or other subsidiaries')  obligations without adequate consideration to such

guarantor subsidiaries, this situation would illustrate the lack of arm's length negotiation

-- signifying  domination  and  control  by  Allergan  plc  as  well  as  evidence  of  unfair

conduct by Allergan plc.

On a related subject, Note 10 to the Consolidated Financial Statements of

Allergan plc's 2016 Irish Annual Report (at page 248) states:

> "**Loans with subsidiaries**
>
> "As of December 31, 2016, a consolidated subsidiary Warner Chilcott Limited,
> an indirect wholly owned subsidiary of Allergan plc[,] had  $13.3 billion  in
> receivables from Allergan plc.  These receivables related to intercompany
> loans between Allergan plc and subsidiaries of Warner Chilcott Limited, Activis
> Capital, S.a.r.l. and Forest Finance BV.  These loans are interest-bearing loans
> with varying term dates.  Total interest expense recognized during the year
> ended December 31, 2016 was $41.2 million."

Page Twenty-One  (Expert Witness Report of Marc I. Steinberg)


This disclosure indicates that intercompany loans between Allergan plc and subsidiaries of Warner Chilcott Limited, Activis Capital, S.a.r.l. and Forest Finance BV were reflected as receivables by only one such indirect wholly owned subsidiary of Allergan plc  --  i.e, Warner Chilcott Limited.  Whether a sufficient accounting was effected with respect to the enterprises that received the loans from Allergan plc  --  namely, subsidiaries of Warner Chilcott Limited, Activis Capital, S.a.r.l. and Forest Finance BV  --  is not disclosed.  As  such,  the failure to undertake a transparent accounting accurately reflecting the loans extended and interest expense incurred raises the specter of commingling and unfair conduct among the Allergan plc enterprise group.

Another example is provided by Allergan PLC's Responses and Objections to Plaintiffs'  First Set of Interrogatories to Allergan PLC.  The following is set forth in Interrogatory No.  26:

> "Describe the cash management systems and procedures employed by You [namely, Allergan plc]  and each of Your direct and indirect subsidiaries since May 16, 2013, and include in the description a description of all procedures and mechanisms in place to segregate the cash of each of You and any of Your direct or indirect subsidiaries to otherwise prevent the commingling of such cash."

In response to this Interrogatory, Allergan plc stated:

> "....
>
> "Subject to and without waiving its objections, Allergan plc states that it *does not have any bank accounts.  Several* of its direct or indirect subsidiaries have their own bank accounts.  Cash from these accounts is swept into a *general account* at the end of every day.  However, each subsidiary maintains separate books, records, and balance sheets that reflect the cash that is owned by each respective subsidiary.  Consistent with best corporate practices, funds transferred

Page Twenty-Two  (Expert Witness Report of Marc I. Steinberg)

> from a subsidiary's account to a centralized cash management account are recorded as credits to the subsidiary.  These funds remain assets on the balance sheets of the relevant subsidiary and *such funds are returned to the subsidiary on request*."

Allergan plc's Response to Interrogatory No. 26 (emphasis supplied)

This response merits further exploration.  From Allergan plc's response to the Interrogatory, it may be posited that:  Allergan plc, the parent corporation, has no bank account; several but clearly not all (and perhaps far less than a majority) of its subsidiaries have their own bank accounts; funds from each subsidiary's account are transferred to a centralized cash management account and such funds are recorded as credits to such subsidiary (but with no explanation which enterprise(s) have control over the centralized cash management account); and these funds are listed as assets on the relevant subsidiary's balance sheets but are returned to the subsidiary *upon request* (upon request by whom, who controls the making of such request, what ultimately happens to those funds if no request is made).  The answers to these inquiries are material to ascertaining whether the cash of each separate enterprise was properly treated in actuality as its cash and was not improperly commingled with the assets of other Allergan enterprises.

(C)     Based on the analysis set forth in Sections III and  IV(A)-(B) of this Report, it is my opinion that legitimate and material factual questions exist with respect to the liability of Allergan plc as well as the propriety of veil piercing regarding Allergan plc and its subsidiaries.  This opinion is based on my understanding of corporate governance

Page Twenty-Three  (Expert Witness Report of Marc I. Steinberg)

practices as they are customarily adhered to in the parent-subsidiary context.  As a separate basis, this conclusion is informed by the application of legal principles that prevail in the alter ego/veil piercing context in this country.

## V.    RESERVING OPTION TO UPDATE OR MODIFY THIS REPORT

I reserve the option to update or otherwise modify this Report upon my receipt of documents, testimony, and/or other materials that become known to me after the date of this Report.

July 26, 2019

MARC I. STEINBERG

ANNEX   A

# MARC I. STEINBERG

| | |
|---|---|
| Dedman School of Law | Office:  (214) 768-4072 |
| Southern Methodist University | Cell:      (214) 789-4803 |
| 3315 Daniel Avenue | Email:  msteinbe@smu.edu |
| Dallas, Texas  75205 | marcsteinberg@me.com |

## PRESENT POSITION

Rupert and Lillian Radford Chair in Law and Professor of Law
Dedman School of Law
Southern Methodist University

## SELECTED PROFESSIONAL EXPERIENCE

1989-Present:                    Radford Chair in Law and Professor of Law
                                 Dedman School of Law
                                 Southern Methodist University

2013-Present:                    Director, Corporate Counsel
                                 Externship Program
                                 Dedman School of Law
                                 Southern Methodist University

March 2018:                      Distinguished Visiting Scholar
                                 University of New South Wales
                                 (Sydney)

March 2017:                      Visiting Professor
                                 Bocconi University (Italy)

November 2016:                   Visiting Academic Fellow
                                 Lauterpacht Centre of International Law
                                 University of Cambridge

1

| | |
|---|---|
| 2006-2012: | Senior Associate Dean for Research<br>Dedman School of Law<br>Southern Methodist University |
| 1998-2003: | Senior Associate Dean for Academics<br>Dedman School of Law<br>Southern Methodist University |
| 2003-Present: | Founding Director<br>SMU Corporate Directors' Institute |
| 2012-2013: | Visiting Professor<br>Bar Ilan University<br>Israel |
| 2012-2013: | Visiting Professor<br>University of London |
| June 2010: | Visiting Professor<br>Bar Ilan University<br>Israel |
| June 2007: | Visiting Professor<br>University of Heidelberg<br>Germany |
| May-June 2005: | Visiting Professor<br>University of Gothenburg<br>Sweden |
| October 2004: | Paul Hastings Visiting Professor in<br>Corporate and Financial Law<br>The University of Hong Kong |
| 1994-2004: | Visiting Professorial Fellow (in<br>International Securities Regulation)<br>Banking and Finance Law Unit<br>Centre for Commercial Law Studies<br>University of London |

| | |
|---|---|
| 1997-2000: | President<br>Institute of International Banking<br>and Finance<br>Dedman School of Law<br>Southern Methodist University |
| Feb.- March 1998: | Parsons Visiting Scholar, University<br>of Sydney; Visiting Professor, University of<br>Western Australia |
| 1989-1997: | Of Counsel<br>Winstead, Sechrest, & Minick, P.C.<br>Dallas, Texas |
| October 1997: | Visiting Professor, Meiji Gakuin<br>University, Tokyo |
| March 1996: | Visiting Scholar: University of<br>Buenos Aires, University of Belgrano |
| March 1995: | Visiting Scholar: University of Cape Town,<br>Rand Afrikaans University,<br>University of Stellenbosch,<br>University of Witwatersrand |
| June 1994: | Distinguished Lecturer<br>Centre of Commercial Law Studies<br>University of London |
| March 1993: | Inaugural Visiting Charles F. Hartsock<br>Chair Professor of Law<br>College of Law<br>University of Cincinnati |
| Feb.-June 1991: | Visiting Professor: University of Konstanz<br>(Germany); Parsons Visiting Scholar:<br>University of Sydney; Visiting Scholar:<br>University of Canterbury, Victoria<br>University of Wellington (New Zealand), |

|  | University of Melbourne, Hong Kong Polytechnic School of Law; Lecturer: Ministry of Finance Course on International Taxation, Taipei Taiwan |
|---|---|
| 1985-1989: | Professor of Law<br>School of Law<br>University of Maryland |
| Fall 1988: | Visiting Radford Professor of Law<br>School of Law<br>Southern Methodist University |
| 1986-1989: | Of Counsel<br>Melnicove, Kaufman, Weiner,<br>Smouse & Garbis, P.A.<br>Baltimore, Maryland |
| Spring 1988: | Visiting Professor<br>The Wharton School<br>The University of Pennsylvania |
| November 1986: | Visiting Fellow: Universities of Stockholm,<br>Gothenburg, Lund, and Uppsala |
| 1983-1985: | Associate Professor<br>School of Law<br>University of Maryland |
| 1983: | Adviser to former U.S. Supreme Court<br>Justice Arthur J. Goldberg for the Federal<br>Advisory Committee Report on Tender<br>Offers |
| 1982-1983: | Visiting Associate Professor<br>The National Law Center<br>George Washington University |

| 1979-1982: | Special Projects Counsel (Confidential Legal Adviser to the General Counsel) Office of the General Counsel Securities and Exchange Commission |
| --- | --- |
| 1978-1979: | Attorney Division of Enforcement Securities and Exchange Commission |
| Spring 1979: | Adjunct Professor School of Law Georgetown University |
| 1977-1978: | Legislative Counsel U.S. Senator Robert P. Griffin |
| 1975-1976: | Law Clerk U.S. Court of Appeal Judge Stanley N. Barnes (Ninth Circuit) |
| Spring 1974: | Extern Law Clerk U.S. Court of Appeal Judge Anthony J. Celebrezze (Sixth Circuit) |
| Summer 1971-1973: | Tennis Professional Ramblewood Swim & Tennis Club Northville, Michigan |

## SELECTED TEACHING EXPERIENCE

| 1989-Present: | Dedman School of Law Southern Methodist University (Business Enterprises, Securities Regulation, Securities Litigation and Enforcement, Lawyering and Ethics for the Business Attorney, Corporate Counsel Externship Program) |
| --- | --- |

| March 2017: | School of Law |
| | Bocconi University (Italy) |
| | (Financial Institutions and Markets Law) |
| | |
| March 2013: | School of Law |
| | Bar Ilan University (Israel) |
| | (Securities Law) |
| | |
| October 2012: | Centre for Commercial Law Studies |
| | University of London |
| | (Securities Law) |
| | |
| June 2010: | School of Law |
| | Bar Ilan University (Israel) |
| | (Securities Law) |
| | |
| June 2007: | School of Law |
| | University of Heidelberg |
| | (Company and Securities Law) |
| | |
| May-June 2005: | Gothenburg University Department of Law |
| | (Company and Securities Law) |
| | |
| October 2004: | School of Law |
| | The University of Hong Kong |
| | (Company and Securities Law) |
| | |
| 1994-2004: | Centre for Commercial Law Studies |
| | University of London |
| | (International Securities Regulation, |
| | Corporate Finance) |
| | |
| March 1998: | School of Law |
| | The University of Western Australia |
| | (Corporate Finance and Securities |
| | Regulation) |

June 1991:                          School of Law
                                    The University of Konstanz (Germany)
                                    (Transnational Securities Transactions:
                                    The American Perspective)

1983-1989:                          School of Law
                                    University of Maryland
                                    (Business Associations, Securities
                                    Regulation, Securities Regulation Seminar,
                                    SEC Student Observer Program, National
                                    Securities Moot Court Competition)

Spring 1988:                        The Wharton School
                                    University of Pennsylvania
                                    (Securities Regulation)

November 1986:                      School of Law
                                    Universities of Stockholm, Gothenburg,
                                    Lund, Uppsala, and Helsinki
                                    (U.S., Swedish, and Finnish Stock Exchange
                                    Regulation)

1982-1983:                          The National Law Center
                                    George Washington University
                                    (Corporations, Securities Regulation,
                                    Regulation of the Securities Markets)

Spring 1979:                        Georgetown University Law Center
                                    (Professional Responsibility)

## EDUCATION

1976-1977: LL.M., Yale University (Graduate Fellow; Full Tuition Scholarship)

1972-1975: J.D., University of California, Los Angeles (Board of Editors,
           UCLA-Alaska Law Review)

1968-1972: A.B., University of Michigan (Magna Cum Laude; Honors in History
           with High Distinction)

## PROFESSIONAL AFFILIATIONS AND HONORS

| | |
|---|---|
| Member: | The American Law Institute (1987-Present) (Life Member, 2011-Present) |
| | Executive Committee, American Association of Law Schools (AALS), Section of Professional Responsibility (2014 – Present) |
| | Working Group of the Enforcement Gallery, Securities and Exchange Commission Historical Society (2018-present) |
| | Financial Industry Regulatory Authority (FINRA), National Adjudicatory Council (NAC) (2012 – 2014) |
| | Securities Law Committee, State Bar of Texas (2002-Present) |
| Board of Int'l Scholars: | Banking and Finance Law Unit at the Centre for Commercial Law Studies, University of London (1994-2004) |
| Fellow: | London Institute on International Banking, Finance and Development Law, Centre for Commercial Law Studies, University of London (1995-2004) |
| | Maguire Teaching Fellow, Cary M. Maguire Center for Ethics and Public Responsibility, Southern Methodist University (2002-2003) |
| President: | President, SMU Law School Institute of International Banking and Finance (1997-2000) |
| Editor: | Editor-in-Chief, The International Lawyer (2001-Present) |
| | Editor-in-Chief, The Securities Regulation Law Journal (1987-Present) |
| | Editor, Southern Methodist University Dedman School of Law SSRN Legal Studies Research Paper Series (2007-2013) |

Council Member:   Member of the Council, Section of International Law, American Bar Association (2001-Present)

Scholarship:   The Marc I. Steinberg Securities Law Scholarship at the SMU School of Law (Donated and Sponsored by The Securities Law Section of The Dallas Bar Association) (1999 - Present)

Recipient:   SMU Author's Award for International Securities Law: A Contemporary and Comparative Analysis (Presented by Dedman College, Godbey Lecture Series April 2000)

Advisory Boards:   Academic Advisory Board:

The University of Hong Kong Faculty of Law, Asian Institute of International Financial Law (1999-Present)

Panel of Academic Contributors - Black's Law Dictionary (8th ed. 2004) (9th ed. 2009) (10th ed. 2014) (11th ed. 2019)

SMU Dedman School of Law, Rowling Center for Business Law Faculty Advisory Board (2018-present)

SEC Historical Society Museum Committee (2010)

Corporate Compliance Center, South Texas College of Law (2004-2010)

Board of Contributing Editors and Advisers:

      The International Lawyer
         (1991-1996, 1999-Present)
      The Journal of Corporation Law
         (1981-Present)
      Law and Business Review of
         the Americas (1995-2018)

|                      | Studies in International Financial Economic and Technology Law, British Institute of International and Comparative Law (2006-2012) |
|                      | South Texas College of Law Corporate Compliance Center (2004-2010) |
|                      | Broker-Dealer Dispute Report (1999-2001) |
|                      | IOSCO Advisory Group on Emerging Markets (1997-2000) |
|                      | Kluwer Yearbook of International Financial and Economic Law (1997-2000) |
|                      | The Delaware Journal of Corporate Law (1981-1996) |
|                      | Business Information and Privacy Reporter (1987-1990) |
|                      | The Corporation Law Review (1981-1985) |
|                      | The Securities Regulation Law Journal (1981-1987) |
|                      | University of Maryland Journal of International Law and Trade (1984-1989) |

Teaching Fellow:      SMU Maguire Center for Ethics and Public Responsibility (2002-2003)

External Examiner:      The University of Hong Kong (in Comparative Securities Law) (1999-Present)

            The University of London (LL.M. Examinations) (1999-2004)

Founding Director:      SMU Corporate Directors' Institute (2003-2018)

Adviser:      Members' Consultative Group, ALI Restatement of the Law Governing Lawyers (1991-2000)

            Members' Consultative Group, ALI Restatement of the Law Governing Agency (2001-2006)

            SMU Law Review Corporate Counsel Annual Symposium (1993-2018)

|  | Adviser, SMU Business Law Society (2001-Present) |
|  | Adviser to the Mead Data Central/Lexis Federal Securities Law Library (1989-1995) |
|  | Adviser, Bloomberg L.P. (2000-2002) |
|  | Consultant, A Handbook of Business Law Terms (West 1999) |
| Executive Committee: | Section of International Law, American Bar Association (2001-Present) |
| Mediator: | Completed Basic Mediation Training Course |
| Recipient: | Outstanding Young Men of America (1979) |
| Bar Memberships: | Texas, Maryland, California (inactive), District of Columbia (inactive), United States Supreme Court Bars |

## FELLOWSHIPS AND LECTURES

William Marshall Bullitt Memorial Lectureship, Louis D. Brandeis School of Law, University of Louisville (February 28, 2019)

Distinguished Visiting Scholar, University of New South Wales, School of Law, Sydney (March 2018)

Visiting Professor, Bocconi University, Milan, Italy (March 2017)

Visiting Academic Fellow, Lauterpacht Centre of International Law, University of Cambridge (November 2016)

Visiting Professor, University of London (2012-2013)

Visiting Professor, Bar Ilan University, Israel (2012-2013, June 2010)

Presentation, Moscow State University Criminal Law Faculty, Moscow (May 28, 2009)

Presentation, Federal Anti-Monopoly Service and Federal Service for the Regulation of Financial Markets of the Russian Federation, Moscow (May 27, 2009)

Presentation, Ministry of Internal Affairs, Economic Crimes Department of the Russian Federation, Moscow (May 26, 2009)

Visiting Professor, University of Heidelberg, Heidelberg, Germany (June 2007)

Foulston Siefkin Distinguished Lecturer, Washburn University School of Law (Feb. 23-24, 2006)

Presentation, University of Stockholm Centre for Commercial Law, Stockholm (May 30, 2005)

Visiting Professor, University of Gothenburg, Gothenburg (May - June 2005)

The Paul Hastings Visiting Professorship in Corporate and Financial Law, University of Hong Kong Faculty of Law (October 2004)

Visiting Professorial Fellow in International Securities Regulations, Banking and Finance Law Unit, Centre for Commercial Law Studies, University of London (1994-2004)

Associate Fellow, London Institute on International Banking, Finance and Development Law, Centre for Commercial Law Studies, University of London (1995-2004)

Winston S. Howard Distinguished Lecturer, University of Wyoming College of Law (April 11-12, 2003)

Symposium on International Securities Law, The University of Pennsylvania Law School (Jan. 19, 2001)

Presentation, University of Peking 100th Anniversary Conference, Beijing (May 1-3, 1998)

Visiting Professor, The University of Western Australia, Perth (March 1998)

Parsons Visiting Scholar, The University of Sydney (February 1998)

Visiting Professor, Meiji-Gakuin University, Tokyo (October 1997)

Visiting Scholar, Asia University, Tokyo (October 1997)

Visiting Scholar, University of Buenos Aires, University of Belgrano (March 1996)

Lecturer, International Development Law Institute, Rome (June 1994) (June 1996)

Visiting Scholar, University of Cape Town, Rand Afrikaans University, University of Stellenbosch, University of Witwatersrand (March 1995)

Distinguished Lecturer, Banking and Finance Law, Centre of Commercial Law Studies, University of London (June 1994)

The David Hume Institute and the University of Edinburgh (June 1994)

Inaugural Visiting Charles F. Hartsock Professor of Law, University of Cincinnati College of Law (March 11-15, 1993)

Keynote Speaker, Australian Corporate Law Professors Conference, Brisbane (February 1-2, 1993)

German Marshall Fund Recipient, University of Konstanz School of Law (June 1991)

Visiting Scholar in Corporate and Securities Law (Law Schools of University of Sydney, University of Melbourne, Victoria  University of Wellington, University of Canterbury (February-April 1991)

Faculty Seminars Presented at Law Schools of University of Sydney, University of Melbourne, Monash University, Murdock University, Hong Kong Polytechnic University (March-May 1991)

The Swedish Institute, Lecture and Consult Regarding American and Swedish Securities Regulation (University of Stockholm, Gothenburg University, University of Lund, Uppsala University, University of Helsinki, Swedish

Banking Lawyers Association, Swedish Stock Exchange, Swedish Stock Market Board (November 1986)

The Lauder Institute, The Wharton School of the University of Pennsylvania (February 7, 1986)

Baron de Hirsch Meyer Endowed Lectures, American Law Institute (ALI) Draft Restatement on Corporate Governance, University of Miami School of Law (March 4, 1983)

## SELECTED EXPERT WITNESS AND RELATED ENGAGEMENTS

"Professor Marc Steinberg, whose résumé is attached in Appendix F [of this book], is an outstanding example of an expert qualified by his specialized knowledge of securities law and practice to offer admissible opinions in securities fraud cases.  Professor Steinberg has been qualified to offer expert opinion testimony in numerous securities fraud cases on issues such as the role of attorneys in securities transactions, the industry standards for practices that are in compliance with securities regulations, the materiality of misstatements and omissions, and the illicit strategies employed to evade the securities laws."  (Kaufman, Expert Witnesses: Securities Cases, § 6:2, at 197 (Thomson/West 2011).

Abdula v. Canadian Solar, Inc., No. C-710-10 (Ontario Canada Superior Court)

Belo Holdings, Inc., et al., v. AHN Holdings, Inc., et al., No. DV98-07579 (Dallas County Texas)

BFA Liquidation Trust v. Arthur Andersen LLP, No. CV2000-015849 (Superior Court Maricopa County Arizona)

Canadian Imperial Bank of Commerce and Her Majesty the Queen, No. 2010-2864 (IT) G (Tax Court of Canada)

In re Elk Corporation (Wetzel v. Karol), No. CC-06-18652-B (Dallas County Texas)

In re Enron Corporation Securities Litigation, Civ. No. H-01-3624 (S.D. Texas)

Facciola v. Greenberg Traurig LLP, et al. ("Radical Bunny"), No. 2:10-cv-01025 (D. Arizona)

Great Rivers Cooperative of Southeastern Iowa v. Farmland Industries, Inc., Civil Action No. 4-95-CV-70529 (S.D. Iowa)

Optek L.P. et al. v. Lucent Technologies, Inc., et al., No. 1-01-226 (Rockwall County Texas)

The People of the State of New York v. Mark Belnick (Tyco), Indictment # 143-03 (N.Y. Cty. Sup. Ct. 2004)

In the Matter of Piper Capital Management, Admin. Proc. File No. 3-9657 (SEC Minneapolis, Minnesota)

Securities and Exchange Commission v. Mark Cuban, No. 08-cv-2050 (N.D. Texas)

Stenovich et al. v. Eccles et al., No. 000907870 (Salt Lake County, Utah)

United States v. Martha Stewart, (51 03 Cr. 717) (S.D.N.Y.)

In the Matter of Theodore W. Urban, Admin. Proc. File No. 3-13655 (SEC Washington D.C.)

In re White Nile Software, Inc., Civil Cause No. 06-03319-A (Dallas County Texas) (Appointment as Temporary Receiver)

## PUBLICATIONS

## BOOKS

The Federalization of Corporate Governance (Oxford University Press) (2018) (328 pp.)

Corporate Internal Affairs — A Corporate and Securities Law Perspective (Quorum Press) (1983) (294 pp.)

Tender Offers  —  Developments and Commentaries (Quorum Press) (1985) (editor) (384 pp.)

Securities Regulation:  Liabilities and Remedies (Law Journal Press) (2018) (first published 1984) (including updates 1-60) (two volumes, app. 1,300 pp.)

Securities Practice: Federal and State Enforcement (West, Clark Boardman Callaghan) (1985) (including annual Supplements 1987- 2001) (lead coauthor) (two volumes, app. 1,200 pp.)

Securities Practice: Federal and State Enforcement (West) (2d edition 2001) (including annual Supplements 2002-2019) (lead coauthor) (two volumes, app. 2,000 pp.)

Contemporary Issues in Securities Regulation (Butterworth Legal Publishers) (1988) (editor) (508 pp.)

Textbook on Business Enterprises:  Legal Structures, Governance and Policy (Lexis/Nexis) (coauthored) (2009) (731 pp.) and Professor's Manual

Textbook on Business Enterprises:  Legal Structures, Governance and Policy (Lexis/Nexis) (coauthored) (2d edition 2012) (940 pp.) and Professor's Manual

Textbook on Business Enterprises:  Legal Structures, Governance and Policy (Carolina Academic Press) (coauthored) (3d edition 2016) (974 pages) and Professor's Manual

Textbook on Securities Regulation (Matthew Bender & Co.) (1986) (1,032 pp.) (including 1988, 1989, 1990, 1991, 1992 Supplements) and Professor's Manual

Textbook on Securities Regulation (Matthew Bender & Co.) (2d edition 1993) (1,486 pp.) (including 1994, 1995, 1996, 1997 Supplements) and Professor's Manual

Textbook on Securities Regulation (Matthew Bender & Co.) (3d edition 1998) (1,231 pp.) (including 1999, 2000, 2001, 2002 Supplements) and Professor's Manual

Textbook on Securities Regulation (Lexis/Nexis) (4th edition 2004) (1,297 pp.) (including 2005, 2006, 2007 Supplements) and Professor's Manual

Textbook on Securities Regulation (Lexis/Nexis) (5th edition 2008) (1,010 pp.) and Professor's Manual

Textbook on Securities Regulation (Lexis/Nexis) (revised 5th edition 2009) (1,010 pp.) (including 2010, 2011, 2012 Supplements)

Textbook on Securities Regulation (Lexis/Nexis) (6th edition 2013) (1,164 pp.) and Professor's Manual (including 2014, 2015, 2016 Supplements)

Textbook on Securities Regulation (Carolina Academic Press) (7th edition 2017) (1,292 pp.) and Professor's Manual (including 2018, 2019 Supplements)

Textbook on Securities Litigation:  Law, Policy, and Practice (Carolina Academic Press) (coauthored) (2016) (955 pp.) and Professor's Manual (including 2018, 2019 Suplements)

Reference Text on Understanding Securities Law (Matthew Bender & Co.) (1989) (289 pp.)

Reference Text on Understanding Securities Law (Matthew Bender & Co.) (2d edition 1996) (416 pp.)

Reference Text on Understanding Securities Law (LEXIS Publishing) (3rd edition 2001) (431 pp.)

Reference Text on Understanding Securities Law (LEXIS Publishing) (4th edition 2007) (481 pp.)

Reference Text on Understanding Securities Law (Lexis/Nexis) (5th edition 2009) (502 pp.)

Reference Text on Understanding Securities Law (Lexis/Nexis) (6th edition 2014) (520 pp.)

Reference Text on Understanding Securities Law (Carolina Academic Press) (7th ed. 2018) (552 pp.)

Insider Trading (Little Brown & Co.) (coauthored) (1996) (1,237 pp.) (including 1998, 1999, 2000, 2001, 2002 Supplements)

Insider Trading (Practising Law Institute) (coauthored) (2d edition 2005) (two volumes) (1,940 pp.) (including 2006, 2008 Supplements)

Insider Trading (Oxford University Press) (3d edition 2010) (coauthored) (1,147 pp.)

Corporate and Securities Malpractice (Practising Law Institute) (1992) (470 pp.)

Lawyering and Ethics for the Business Attorney (Thomson/West) (2002) (175 pp.) and Professor's Manual

Lawyering and Ethics for the Business Attorney (Thomson/West) (2d edition 2007) (205 pp.) and Professor's Manual

Lawyering and Ethics for the Business Attorney (Thomson/West) (3d edition 2011) (210 pp.) and Professor's Manual

Lawyering and Ethics for the Business Attorney (West) (4th edition 2016) (240 pp.) and Professor's Manual

Attorney Liability After Sarbanes-Oxley (Law Journal Press) (2018) (first published 2005) (including annual Upkeeps 1-13) (app. 550 pp.)

Developments in Business Law and Policy (Cognella) (2012) (469 pp.)

International Securities Law: A Contemporary and Comparative Analysis (Kluwer Law International) (1999) (340 pp.)

Global Issues in Securities Law (West) (coauthored) (2013) (191 pp.)

Inside Counsel – Practices, Strategies and Insights (West) (coauthored) (2015) (328 pp.)

Securities and Exchange Commission v. Cuban — A Trial of Insider Trading (Twelve Tables Press) (2019) (334 pp.)

## LAW REVIEW ARTICLES AND BOOK CHAPTERS ON CORPORATE/SECURITIES/BUSINESS LAW

1.  Waiver of Venue Under the National Bank Act: Preferential Treatment for National Banks, 62 Iowa Law Review 129 (1976)

2.  The 1974 Amendments to the Freedom of Information Act:  The Safety Valve Provision Excusing Agency Compliance with Statutory Time Periods, 52 Notre Dame Lawyer 235 (1976)

3.  Attorney Fee Schedules and Legal Advertising:  The Implications of Goldfarb, 24 U.C.L.A. Law Review 475 (1977) (coauthored)

4.  Citizens & Southern National Bank v. Bougas — Achieving Justice Under the Venue Provision of the National Bank Act, 12 Georgia Law Review 161 (1978)

5.  The Legitimacy of Defensive Tactics in Tender Offers, 64 Cornell Law Review 901 (1979) [republished in 12 Securities Law Review 595 (1981)] (coauthored)

6.  Section 17(a) of the Securities Act of 1933 After Naftalin and Redington, 68 Georgetown Law Journal 163 (1979)

7.  Section 29(b) of the Securities Exchange Act of 1934 — A Viable Remedy Awakened, 48 George Washington Law Review 1 (1979) [republished in 13 Securities Law Review 153 (1981)] (coauthored)

8.  Implied Private Rights of Action Under Federal Law, 55 Notre Dame Lawyer 33 (1979) [republished in 12 Securities Law Review 433 (1980)]

9.  SEC and Other Permanent Injunctions — Standards for Their Imposition, Modification, and Dissolution, 66 Cornell Law Review 27 (1980) [republished in 13 Securities Law Review 263 (1981)]

10. Accountants' Liability and Responsibility: Securities, Criminal and Common Law, 13 Loyola University (L.A.) Law Review 247 (1980) [republished in 13 Securities Law Review 427 (1981)] (coauthored)

11. The Use of Special Litigation Committees to Terminate Shareholder Derivative Suits, 35 University of Miami Law Review 1 (1980)

12. A Reappraisal of Santa Fe: Rule 10b-5 and the New Federalism, 129 University of Pennsylvania Law Review 263 (1980) [republished in 13 Securities Law Review 25 (1981)] (coauthored)

13. Variations of "Recklessness" After Hochfelder and Aaron, 8 Securities Regulation Law Journal 179 (1980) (coauthored)

14. Dismissing Derivative Suits, The Corporate Director 1 (July/August 1980)

15. Municipal Bonds Subject to SEC Regulations, New York Law Journal 19 (Nov. 17, 1980)

16. Rule 10b-5 and the New Federalism, 53 Wisconsin Bar Bulletin 16 (Nov. 1980) (coauthored)

17. The Role of Inside Counsel in the Corporate Accountability Process, 4 Corporation Law Review 3 (1981) [republished in 13 Securities Law Review 495 (1981)] (coauthored)

18. Steadman v. SEC — Its Implications and Significance, 6 Delaware Journal of Corporate Law 1 (1981)

19. Fiduciary Duties and Disclosure Obligations in Proxy and Tender Contests for Corporate Control, 30 Emory Law Journal 169 (1981) [republished in 14 Securities Law Review 263 (1982); Corporate Counsel's Annual 413 (1982)]

20. Municipal Issuer Liability Under the Federal Securities Laws, 6 Journal of Corporation Law 277 (1981)

21. Disclosure of Information Bearing on Management Integrity and Competency, 76 Northwestern University Law Review 555 (1981) (coauthored)

22.     Application of the Business Judgment Rule and Related Judicial Principles
        — Reflections From a Corporate Accountability Perspective, 56 Notre
        Dame Lawyer 903 (1981)

23.     Aaron's Unanswered Questions, 4 Corporation Law Review 166 (1981)
        [column]

24.     Steadman — Some Reflections, 4 Corporation Law Review 357 (1981)
        [column]

25.     State Law Decisions After Santa Fe, 8 Securities Regulation Law Journal
        79 (1981) [column]

26.     The SEC's Administrative and Legislative Programs Aimed at Regulating
        Corporate Internal Affairs, published in Standards for Regulating
        Corporate Internal Affairs at 317, The Ray Garrett, Jr., Corporate and
        Securities Law Institute (Sponsored by Northwestern University School of
        Law) (1981) (coauthored)

27.     The Liability of Tax Practitioners: Tax Shelters — An SEC Staff
        Perspective, Major Tax Planning — 1981, Chapter 21, USC Tax Institute
        (Matthew Bender & Co.) (coauthored)

28.     The Propriety and Scope of Cumulative Remedies Under the Federal
        Securities Laws, 67 Cornell Law Review 557 (1982) [republished in 15
        Securities Law Review 233 (1983); Corporate Counsel's Annual 373
        (1983)]

29.     The Interplay Between State Corporation and Federal Securities Law —
        Santa Fe, Singer, Burks, Maldonado, Their Progeny & Beyond, 7
        Delaware Journal of Corporate Law 1 (1982) (coauthored)

30.     The Securities and Exchange Commission's Administrative, Enforcement,
        and Legislative Programs and Policies — Their Influence on Corporate
        Internal Affairs, 58 Notre Dame Law Review 173 (1982)

31.     The "True Purpose" Cases, 5 Corporation Law Review 249 (1982)
        [column]

32.    Maldonado in Delaware: Special Litigation Committees — An Unsafe Haven, 9 Securities Regulation Law Journal 381 (1982) [column]

33.    Corporate/Securities Counsel — Conflicts of Interest, 8 Journal of Corporation Law 577 (1983) [republished in 16 Securities Law Review 677 (1984); Corporate Counsel's Annual 335 (1984)]

34.    The ALI Draft Restatement on Corporate Governance — The Business Judgment Rule, Related Principles and Some General Observations, 37 University of Miami Law Review 295 (1983) (Presented at the Baron de Hirsch Meyer Lectures)

35.    Baron de Hirsch Meyer Lectures, ALI Draft Restatement on Corporate Governance, 37 University of Miami Law Review 319 (1983) (transcript of proceedings)

36.    Cumulative Remedies Under Sections 9 and 10(b) of the Securities Exchange Act — A Response to Chemetron, 6 Corporation Law Review 165 (1983) [column]

37.    Some Thoughts on Regulation of Tender Offers, 43 Maryland Law Review 240 (1984)

38.    The New Law of Squeeze-Out Mergers, 62 Washington University Law Quarterly 351 (1984) (coauthored)

39.    The Pennsylvania Antitakeover Legislation, 12 Securities Regulation Law Journal 184 (1984) [column]

40.    SEC Subpoena Enforcement Practice, 11 Journal of Corporation Law 1 (1985)

41.    The Duty Owed to Minority Shareholders by an Investment Banker in Rendering a Fairness Opinion, 13 Securities Regulation Law Journal 80 (1985) (coauthored) [column]

42.    Parallel Proceedings, 8 Corporation Law Review 335 (1985) (coauthored) [column]

43. Some Thoughts on Regulation of Tender Offers, published in Tender Offers – Developments and Commentaries at 273 (Greenwood Press) (M. Steinberg, ed. 1985)

44. SEC Disclosure Policy — Who Speaks for the Investor?, 14 Securities Regulation Law Journal 122 (1986)

45. Duty to Disclose Negotiations, 14 Securities Regulation Law Journal 76 (1986) [column]

46. Recommendations for Reform of Swedish Stock Exchange and Corporation Law, 53 Advokaten 29 (No. 1 1987) (The Swedish Bar Journal); 11 Maryland Journal of International Law and Trade 185 (1987)

47. Issuer Affirmative Disclosure Obligations — An Analytical Framework for Merger Negotiations, Soft Information, and Bad News, 46 Maryland Law Review 923 (1987) (coauthored)

48. Definition of "Security":  The "Context" Clause, Investment Contract Analysis and Their Ramifications, 40 Vanderbilt Law Review 489 (1987) (coauthored) [republished in 20 Securities Law Review 3 (1988)]

49. Duty to Disclose "Bad News," 15 Securities Regulation Law Journal 318 (1987) [column]

50. Stock Exchange Exception to Appraisal and its Ramifications for the Constitutionality of State Takeover Statutes, 15 Securities Regulation Law Journal 105 (1987) [column]

51. Introduction, Symposium on Issuer Disclosure Obligations, 46 Maryland Law Review 908 (1987)

52. Introduction, Symposium on Transnational Securities Regulation, 11 Maryland Journal of International Law and Trade v (1987)

53. On Teaching Securities Regulation, The Matthew Bender Law School Report (April 1987)

54.　　Attorney Conflicts of Interest in Corporate Acquisitions, 39 Hastings Law Journal 579 (1988)

55.　　The Application and Effectiveness of SEC Rule 144, 49 Ohio State Law Journal 473 (1988) (coauthored)

56.　　The Evisceration of the Duty of Care, 42 Southwestern Law Journal 919 (1988) (Commentary)

57.　　Tender Offer Regulation:  The Need for Reform, 23 Wake Forest Law Review 1 (1988)

58.　　Federal Preemption of State Antitakeover Statutes:  The Time for Congressional Action Is Now, 16 Securities Regulation Law Journal 80 (1988) [column]

59.　　Should the Feds Take Over State Takeover Law?, Business and Society Review 54 (1988)

60.　　Rule 144(k):  An Overview and Assessment, 16 Securities Regulation Law Journal 420 (1989) (coauthored) [column]

61.　　Attorney Conflicts of Interest:  The Need for a Coherent Framework, 66 Notre Dame Law Review 1 (1990) (coauthored)

62.　　Notes as Securities: Reves and Its Implications, 51 Ohio State Law Journal 675 (1990)

63.　　From the Editor-in-Chief, 18 Securities Regulation Law Journal 227 (1990)

64.　　How to Comply With the Law, 26 Australian Law News No. 5, at 20 (June 1991)

65.　　Attorney Liability for Client Fraud, 1991 Columbia Business Law Review 1 (1991) [republished in 24 Securities Law Review 275 (1992)]

66.　　Nightmare on Main Street:  The Paramount Picture Horror Show, 16 Delaware Journal of Corporate Law 1 (1991)

67. Legal Opinions in Securities Transactions, 16 Journal of Corporation Law 375 (1991) (coauthored)

68. The Joint Defense Doctrine in Federal Securities Litigation, 18 Securities Regulation Law Journal 339 (1991) (coauthored)

69. Attorney Liability Under the Securities Laws, 45 Southwestern Law Journal 711 (1991)

70. The Inside Story on Insider Trading, 27 Australian Law News No. 2, at 18 (March 1992)

71. The Judicial and Regulatory Constriction of Section 16(b) of the Securities Exchange Act of 1934, 68 Notre Dame Law Review 33 (1992) (coauthored) [republished in 35 Corporate Practice Commentator 341 (1993)]

72. The Limited Liability Company as a Security, 19 Pepperdine Law Review 1105 (1992) (coauthored)

73. Securities Malpractice Exposure: Client Representation - Certain Problematic Situations, 20 Securities Regulation Law Journal 199 (1992) [column]

74. Foreword, 19 Pepperdine Law Review 851 (1992)

75. Symposium on Securities Regulation, 19 Pepperdine Law Review 1205 (1992) (transcript of proceedings)

76. From the Editor-in-Chief, 19 Securities Regulation Law Journal 323 (1992)

77. The Corporate Law Reform Act: A View From Abroad, 3 Australian Journal of Corporate Law 154 (1993) (Delivered as the Keynote Speaker at the 1993 Australian Corporate Law Professors' Conference)

78. The Emergence of State Securities Laws: Partly-Sunny Skies for Investors, 62 University of Cincinnati Law Review 395 (1993) (Presented as the Inaugural Visiting Charles F. Hartsock Professor of Law)

79. The Supreme Court, Implied Rights of Action, and Proxy Regulation, 54 Ohio State Law Journal 67 (1993) (coauthored)

80. Standing Under Section 16(b) of the Securities Exchange Act, 21 Securities Regulation Law Journal 178 (1993) (coauthored)

81. Symposium on Contemporary Issues in Securities Regulation and Corporate Law, 62 University of Cincinnati Law Review 554 (1993) (transcript of proceedings)

82. From the Editor-in-Chief, 21 Securities Regulation Law Journal 3 (1993)

83. State Securities Laws — A Panacea for Investors?, 22 Securities Regulation Law Journal 53 (1994)

84. Compliance Programs for Insider Trading, 47 SMU Law Review 1783 (1994) (coauthored)

85. The Changing Role of the Securities Lawyer in 25th Annual Institute on Securities Regulation 295 (1994) (coauthored)

86. Book Review, 22 Securities Regulation Law Journal 104 (1994)

87. The Texas Securities Act: A Plaintiff's Preferred Route?, 58 Texas Bar Journal 1096 (1995)

88. Regulation S and Rule 144A: Creating a Workable Fiction in an Expanding Global Securities Market, 29 International Lawyer 43 (1995) (coauthored)

89. The Ramifications of Recent U.S. Supreme Court Decisions on Federal and State Securities Regulation, 70 Notre Dame Law Review 489 (1995)

90. The Bespeaks Caution Doctrine and Related Defenses, 23 Securities Regulation Law Journal 447 (1996) [column]

91.    The Role of Inside Counsel in the 1990s: A View From Outside, 49 SMU Law Review 483 (1996)

92.    Litigation Reform Act Will Have Major Impact, 24 Securities Regulation Law Journal 115 (1996)

93.    The United States Enacts the Private Securities Litigation Reform Act of 1995, Journal of Business Law 299 (1996)

94.    Emerging Securities Markets — A View of Internationalization from the U.S., published in Emerging Financial Markets and the Role of International Financial Organizations at 429 (Kluwer Law International) (1996)

95.    Emerging Capital Markets: Proposals and Recommendations for Implementation, 30 International Lawyer 715 (1996)

96.    Symposium: Securities Law After the Private Securities Litigation Reform Act – Unfinished Business, 50 SMU Law Review 9 (1996)

97.    Contribution and Proportionate Liability Under the Federal Securities Laws in Multidefendant Securities Litigation After the Private Securities Litigation Reform Act of 1995, 50 SMU Law Review 337 (1996) (coauthored)

98.    Securities Arbitration: Better for Investors Than the Courts?, 62 Brooklyn Law Review 1503 (1996)

99.    The Private Securities Litigation Reform Act: Contribution and Proportionate Liability, 25 Securities Regulation Law Journal 333 (1997) (coauthored)

100.   Securities Arbitration — A Decade After McMahon, 26 Securities Regulation Law Journal 117 (1998) [column]

101.   Securities Arbitration in the United States, published in Yearbook of International Financial and Economic Law - 1997 at 251 (Kluwer Law International) (1999)

102.  The Development of Internationally Acceptable Accounting Standards: A Universal Language for Finance in the 21st Century, 27 Securities Regulation Law Journal 324   (1999) (coauthored) [republished in Yearbook of International Financial and Economic Law - 1998, at 87 (1999) and in International Financial Sector Reform, at 87 (2002)]

103.  Disclosure in Global Securities Offerings: Analysis of Jurisdictional Approaches, Commonality and Reciprocity, 20 University of Michigan Journal of International Law   207 (1999) (coauthored)

104.  Corporate Counsel: Roles and Liabilities, 52 SMU Law Review 707 (1999), 64 Journal of Air Law and Commerce 663 (1999)

105.  Securities Arbitration: A Post-McMahon Irony, 1 Broker-Dealer Dispute Report No. 2, at 12 (Feb. 2000)

106.  The Plight of "Secondary Actors" Under Section 10(b): Distinguishing Primary from Secondary Liability, 28 Securities Regulation Law Journal 36 (2000) (coauthored)

107.  The "Accredited" Individual Purchaser Under SEC Regulation D: Time to Up the Ante, 29 Securities Regulation Law Journal 93 (2001) [column]

108.  Emerging Capital Securities Markets: Tasks, Challenges and Objectives, published in A New International Financial Architecture: A Viable Approach at 237 (The British Institute of International and Comparative Law) (2001)

109.  Insider Trading, Selective Disclosure and Prompt Disclosure: A Comparative Analysis, 22 University of Pennsylvania Journal of International Economic Law 635 (2001)

110.  Legal Reform and the Importance of Robust Securities Markets, published in International Financial Sector Reform at 45 (Kluwer Law International) (2002)

111.    Lurking in the Shadows: The Hidden Issues of The Securities and
        Exchange Commission's Regulation FD, 27 Journal of Corporation Law
        173 (2002) (coauthored)

112.    Curtailing Investor Protection Under the Securities Laws:  Good for the
        Economy?, 55 SMU Law Review 347 (2002)

113.    Short-Form Mergers in Delaware, 27 Delaware Journal of Corporate Law
        489 (2002)

114.    The SEC and the Securities Industry Respond to September 11th, 36
        International Lawyer 131 (2002)

115.    Sarbanes-Oxley: A Note from the Editor-In-Chief, 30 Securities
        Regulation Law Journal 358 (2002)

116.    "Tips" to Avoid Corporate/Securities Malpractice, 31 Securities
        Regulation Law Journal 117 (2003)

117.    Foreword — Symposium on International Company and Securities Law,
        37 International Lawyer 1 (2003)

118.    Insider Trading Regulation — A Comparative Analysis, 37 International
        Lawyer 153 (2003)

119.    Lawyer Liability After Sarbanes-Oxley — Has the Landscape Changed?, 3
        Wyoming Law Review 371 (2003) (delivered as the Winston S. Howard
        Distinguished Lecturer)

120.    The SEC's Use of "Plain English": A Note from the Editor-In-Chief, 31
        Securities Regulation Law Journal 272 (2003)

121.    Book Review, 32 Securities Regulation Law Journal 136 (2004)

122.    Insider Trading — A Comparative Perspective at 831, published in
        Current Developments in Monetary and Financial Law (International
        Monetary Fund) (2005)

123.     Alter Ego and Single Business Enterprise in the Texas Contractual Debt Context, 41 Texas Journal of Business Law 1 (2005) (Official Publication of the Business Law Section of the State Bar of Texas In Association With The University of Texas School of Law)

124.     Minimizing Corporate Liability Exposure When the Whistle Blows in the Post Sarbanes-Oxley Era, 30 Journal of Corporation Law 445 (2005) (coauthored)

125.     Counsel Conflict Dilemmas in Mergers and Acquisitions, 47 South Texas Law Review 3 (2005)

126.     Attorney Liability Under the State Securities Laws: Landscapes and Minefields, 3 University of California Berkeley Business Law Journal 1 (2005) (coauthored)

127.     Attorney Conflict Scenarios in the M&A Setting, 33 Securities Regulation Law Journal 310 (2005)

128.     Enhancing Corporate Governance in the Mergers and Acquisitions Context — The Lawyer's Independence, published in Corporate Governance Post-Enron — Comparative and International Perspectives, at 151 (The British Institute of International and Comparative Law) (2006)

129.     The Corporate /Securities Attorney as a "Moving Target" — Client Fraud Dilemmas, 46 Washburn Law Journal 1 (2006) (delivered as the Foulston Siefkin Distinguished Lecturer)

130.     Disney Goes Goofy:  Agency, Delegation & Corporate Governance, 60 Hastings Law Journal 201 (2008) (coauthored)

131.     Examining the Pipeline:  A Contemporary Assessment of Private Investments in Public Equity ("PIPEs"), 11 University of Pennsylvania Journal of Business Law 1 (2008) (coauthored)

132.     A Prolonged Slump for "Plaintiff-Pitchers":   The Narrow "Strike Zone" for Securities Plaintiffs in the Fourth Circuit, 88 North Carolina Law Review 1923 (2010) (coauthored)

133.     Attorney Conflict Dilemmas in Parent-Subsidiary Related Party Transactions, 38 Securities Regulation Law Journal 381 (2010)

134.     Blurring the Lines Between Pleading Doctrines:  The Enhanced Rule 8(a)(2) Plausibility Pleading Standard Converges With the Heightened Pleading Standards Under Rule 9(b) and the PSLRA, 30 University of Texas Review of Litigation 1 (2010) (coauthored)

135.     The Assault on Section 11 of the Securities Act — A Study in Judicial Activism, 63 Rutgers Law Review 1 (2010) (coauthored)

136.     Attorney Conflicts of Interest — The Use of "Screening" in the Corporate/Securities Setting, 39 Securities Regulation Law Journal 191 (2011)

137.     Enhanced "Blue Sky" Enforcement:  A Path to Help Solve Our Public School Funding Dilemma, 50 Washburn Law Journal 563 (2011) (lead contribution in Issue commemorating 100th anniversary of Kansas "blue sky" statute)

138.     Transnational Dealings — Morrison Continues to Make Waves, 46 International Lawyer 829 (2012) (coauthored)

139.     Pleading Securities Fraud Claims — Only Part of the Story, 45 Loyola University (Chicago) Law Journal 603 (2014) (Symposium Issue)

140.     The Emergence of a New Battleground:  Liability for Secondary Market Violations in Ontario, 48 International Lawyer 17 (2014) (coauthored)

141.     In Honor of Stanley Sporkin, 43 Securities Regulation Law Journal 5 (2015)

142.     In Honor of Professor Alan R. Bromberg, 68 SMU Law Review xi (2015)

143.     Professor Alan R. Bromberg's Rule 10b-5, 68 SMU Law Review 617 (2015)

144.     A View from the U.S. — Corporate Counsel as "Gatekeeper", 61 Rivista Delle Societa 914 (2016)

145.    From the Regulatory Abyss:  The Weakened Gatekeeping Incentives
        Under the Uniform Securities Act, 35 Yale Law & Policy Review 1 (2016)
        (coauthored)

146.    Fifty Years of Excellence, 50 International Lawyer 3 (2017)

147.    From the Editor-in-Chief, 45 Securities Regulation Law Journal 5 (2017)

148.    The SEC's Neglected Weapon:  A Proposed Amendment to Section
        17(a)(3) and the Application of Negligent Insider Trading, 19 University
        of Pennsylvania Journal of Business Law 239 (2017) (coauthored)

149.    Laxity at the Gates:  The SEC's Neglect to Enforce Control Person
        Liability, 11 Virginia Law & Business Review 201 (2017) (coauthored)
        (abstract in Columbia University Law School's Blog on Corporations and
        the Capital Markets, August 24, 2017)

150.    Texas Gulf Sulphur at Fifty — A Contemporary and Historical
        Perspective, 71 SMU Law Review 625 (2018)

151.    The Litigation Privilege as a Shelter for Miscreant Legal Counsel, 97
        Oregon Law Review 1 (2018) (coauthored)

152.    The Federalization of Corporate Governance — An Evolving Process, 50
        Loyola University (Chicago) Law Journal 539 (2019)

153.    Insider Trading — SEC v. Mark Cuban — A Litigation Saga, 58
        University of Louisville (Louis D. Brandeis School of Law) Law Review 1
        (2019) (delivered as the William Marshall Bullitt Lecturer) (forthcoming)

## SELECTED OTHER LAW REVIEW PUBLICATIONS

1.      Right to Speedy Trial: The Constitutional Right and Its Applicability to the
        Speedy Trial Act of 1974, 66 Journal of Criminal Law and Criminology
        229 (1975) (Published by Northwestern University School of Law)

2.  The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act:  Negligence Actions by Longshoremen Against Shipowners — A Proposed Solution, 37 Ohio State Law Journal 767 (1976)

3.  The California Natural Death Act — A Failure to Provide for Adequate Patient Safeguards and Individual Autonomy, 9 Connecticut Law Review 203 (1977)

4.  Dismissal With or Without Prejudice Under the Speedy Trial Act: A Proposed Interpretation, 68 Journal of Criminal Law and Criminology 1 (1977) (Published by Northwestern University School of Law)

5.  Federalism, the Tenth Amendment and the Legal Profession, 56 Nebraska Law Review 783 (1977) (coauthored)

6.  Antenuptial Agreements Under California Law, 11 University of San Francisco Law Review 317 (1977) (coauthored)

7.  Lawyers' Advertising and Warranties: Caveat Advocatus, 64 American Bar Association Journal 867 (1978) (coauthored)

8.  Summary Commitment of Defendants Incompetent to Stand Trial, 22 St. Louis University Law Journal 1 (1978)

9.  Legal Advertising and Warranty Liability:  Let the Lawyer Beware, 1978 Washington University Law Quarterly 443 (1978) (coauthored)

10.  Second Opinion for Lawyers — The 'Consultative Attorney,' New York Law Journal 1 (Jan. 3, 1983) [editorial commending article, National Law Journal 12 (Jan. 10, 1983)] (coauthored)

11.  Acknowledgments from the Co-Editors-in-Chief for "The Rule of Law Papers," 43 International Lawyer 1 (2009) (coauthored)

## SELECTED CLE AND RELATED PUBLICATIONS

1.  Civil Liabilities, Implied Remedies, Special Litigation Committees and Related Issues, Conference on Securities Regulation and the Capital Raising Process for the Small Issuer (Federal Bar Association 1981) (coauthored)

2.  Developments in Professional Responsibilities, Conference on Securities Regulation and the Capital Raising Process for the Small Issuer (Federal Bar Association 1981) (coauthored)

3.  Developments Under the Federal Securities Laws:  States of Mind, Burdens of Proof, Rule 14e-3, and Recent Supreme Court Decisions and Their Progeny, Conference on Fraud and Fiduciary Duty Under the Federal Securities Laws (ALI-ABA 1981) (coauthored)

4.  Proxy Litigation and Contests — An Overview of Applicable Statutes, Rules and Selected Legal Issues, Conference on Proxy Litigation and Contests (New York Law Journal Seminars-Press 1981) (coauthored)

5.  Disclosure Trends Under the Securities Acts, National Institute on Securities Regulation, University of Colorado School of Law (1982)

6.  The Supreme Court and Securities Law: An Update and A Look Ahead, University of California Securities Regulation Institute (1982) (coauthored)

7.  Selected Developments in Securities Litigation, National Institute on Securities Regulation, University of Colorado School of Law (1983)

8.  Definition of a Security, National Institute on Securities Regulation, University of Colorado School of Law (1984) (coauthored)

9.  Selected Issues in Proxy Disclosure, Litigation, and Contests, Conference on Shareholder Meetings: Dealing with Management and Shareholder Proposals (Practising Law Institute 1984)

10. Developments in Proxy Disclosure, Litigation and Contests, National Institute on Securities Regulation, University of Colorado School of Law (1985)

11. Application of the Federal Securities Laws to Foreign Companies Seeking to Raise or Invest Capital in the United States, Stockholm, Sweden and Helsinki, Finland (1986) (coauthored)

12. Selected Developments in Securities Litigation, MICPEL (Maryland) Securities Law Course (1986)

13. Notes as Securities, 23rd Annual Securities Regulation Conference of the Los Angeles County Bar (1990)

14. Law Compliance Programs, Law Council of Australia, Melbourne and Perth, Australia (1991)

15. Securities Counsel in the 1990s: Are We Moving Targets?, Twenty-Fifth Annual Institute on Securities Regulation (Practising Law Institute 1993)

16. Capital and Securities Markets, International Development Law Institute, Enterprise and Investment Lawyers Course, Rome, Italy (1994)

17. Selected Federal and State Securities Litigation Developments, SMU Law Review Corporate Counsel Symposium (1994)

18. The Ramifications of Central Bank of Denver on Federal and State Securities Litigation, Twenty-Sixth Annual Institute on Securities Regulation (Practising Law Institute 1994)

19. Capital and Securities Markets in Southern Africa, International Law Association of South Africa Seminar (1995)

20. The Private Securities Litigation Reform Act of 1995, Dallas Bar Association (1996)

21. Emerging Capital Markets, Buenos Aires and Rome (1996)

22.  Statutes of Limitations in SEC Enforcement Actions, ABA Section of Business Law (Spring Meeting) (1997) (coauthored)

23.  The U.S. Corporate Attorney — Ethical and Legal Issues, Tokyo (1997)

24.  Insider Trading and Government Enforcement, Perth Australia (1998)

25.  Capital Markets Reform in Emerging Markets: Selective Lessons from the United States Models, 100th Anniversary of the University of Peking, Beijing (1998)

26.  Emerging Capital Markets: Proposals for Consideration, ABA Annual Meeting, Section of Business Law, Toronto (1998)

27.  Ethical and Legal Issues Facing Securities Lawyers, Thirty-First Annual Institute on Securities Regulation (Practising Law Institute 1999)

28.  Closely-Held Corporation Disputes: Key Litigation Issues, Business Litigation Section, Dallas Bar Association (2001)

29.  Ethical and Legal Challenges Facing Securities Lawyers, The Association of the Bar of the City of New York (2001)

30.  Corporate/Securities Attorneys: Ethical and Liability Concerns, Program Sponsored by the Practising Law Institute and Vanderbilt University School of Law, Nashville (2002)

31.  Sarbanes-Oxley Act: An Overview of the Act and SEC Rulemaking, SMU Corporate Directors' Institute, Supported by the New York Stock Exchange Foundation (2003)

32.  Insider Trading Regulation — A Comparative Perspective, ABA Annual Meeting, Section of Business Law, San Francisco (2003)

33.  Contributing Author, Employee Benefits Law, ABA Section of Labor and Employment Law (2d ed. 2004 Supp.)

34.     The Corporate/Securities Attorney as a "Moving" Target: Ethical and Liability Dilemmas, University of Texas Conference on Securities Regulation and Business Law Problems (2006)

35.     Internal Investigations from Counsel's Perspective, Second Annual National Institute on Securities Fraud, American Bar Association, Section of Business Law, Washington (2007)

36.     Insider Trading Regulation:  A View of the United States Regimen, Roundtable with Ministry of Internal Affairs, Economic Crimes Department, Russian Federation, Moscow (2009)

37.     The Focus on Emerging Capital Markets:  Proposals for Consideration, Roundtable with Federal Anti-Monopoly Service and Federal Service for the Regulation of Financial Markets, Russian Federation, Moscow (2009)

38.     Attorney Liability After Sarbanes-Oxley, Corporate Governance — A Master Class 2011, Practising Law Institute, New York City (2011)

39.     Insider Trading and Timely Disclosure under the U.S. Securities Laws — Fifty Years After the Seminal Case of Texas Gulf Sulphur, University of New South Wales, Sydney (2018)

## BLOGS

1.      How the SEC Neglects to Enforce Control Person Liability, CLS Blue Sky Blog, Columbia University Law School's Blog on Corporations and the Capital Markets (August 22, 2017) (coauthored)

2.      Corporate Governance From a Federal Law Perspective, Oxford University Press (OUP) Blog (March 26, 2018)

3.      The Federalization of Corporate Governance, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 21, 2018)

4.      The SEC v. Mark Cuban, Harvard Law School Forum on Corporate Governance and Financial Regulation (April 11, 2019)

## PRESENTATIONS FOR SELECTED EDUCATIONAL AND PROFESSIONAL PROGRAMS AND SEMINARS

Speaker, Ethics & Compliance Certification Program, SMU Edwin L. Cox School of Business (Dallas February 27, 2019)

Speaker, Workshop in Business Law and Economics, Corporate Governance, University of Texas School of Law (Austin October 15, 2018)

Speaker, Luncheon Presentation, The Federalization of Corporate Governance, UCLA School of Law (Los Angeles October 4, 2018)

Speaker, Lehman 10 Years Later:  Lessons Learned?, Loyola University Chicago School of Law Annual Institute for Investor Protection (Chicago September 14, 2018)

Lecture, Insider Trading — A View from the U.S., University of New South Wales Faculty of Law (Sydney March 13, 2018)

Lecture, Insider Trading in Australia and the United States, Corporate Governance Discussion Group of the Australian Club (Sydney March 12, 2018)

Lecture, U.S. Insider Trading Law — A Study in Arbitrary and Uncertain Application, University of Bocconi, Department of Legal Studies (Milan Italy March 15, 2017)

Planning Committee, Innovation in Financial Law and Systems — A Conference in Honour of Professor Joseph J. Norton (London May 6, 2016, and Dallas May 5, 2017)

Lecture, Expanding Liability of Corporate Counsel in the U.S., University of Cambridge Centre for Corporate and Commercial Law (Cambridge England November 24, 2016)

Speaker, The New Normal of Financial Fraud:  The Role of Lawyers, Regulation and Litigation, Annual Institute for Investor Protection Conference, Loyola University Chicago School of Law (Chicago October 7, 2016)

Panelist, Litigation and Enforcement in the C-Suite, University of Texas Annual Conference on Securities and Business Law (Dallas Feb. 11-12, 2016)

Planning Committee, University of Texas Annual Conference on Securities Regulation (1997-2015)

Speaker, Teaching Law School, Association of Corporate Counsel Annual Meeting (Boston October 19, 2015)

Speaker, Corporate Hot Issues, Advanced In-House Counsel Conference, Texas State Bar (San Antonio August 13-14, 2015)

Panelist, The Legal Landscape After Ritchie v. Rupe, University of Texas Annual Conference on Securities Regulation and Business Law (Dallas Feb. 12, 2015)

Panelist, The New Landscape of Securities Fraud Class Actions, Annual Institute for Investor Protection Conference, Loyola University Chicago School of Law (Chicago October 24, 2014)

Luncheon Speaker, Ethics and Professionalism for the M&A Lawyer, University of Texas Mergers and Acquisitions Conference (Dallas October 16, 2014)

Panelist, Close Corporation Developments, University of Texas Annual Conference on Securities Regulation and Business Law (Dallas Feb. 13-14, 2014)

Speaker, Effective and Ethical Pre-Filing Strategies for Investigating and Pleading Securities Fraud Claims, Annual Institute for Investor Protection Conference, Loyola University Chicago School of Law (Chicago October 25, 2013)

Speaker, Transnational Securities and Regulatory Litigation in the Aftermath of Morrison v. National Australia Bank, Max-Planck Institute Luxembourg for International, European and Regulatory Procedural Law, McGeorge School of Law, University of the Pacific (Sacramento March 1, 2013)

Speaker, Competition and Financial Regulation — Contemporary and Comparative Issues, Session on Takeover Regulations, National Law School of India University (Bangalore India May 1, 2012) (by skype)

Panelist, U.S. Supreme Court Decisions Involving Securities Law — The
Landscape Reshaped, University of Texas Annual Conference on Securities
Regulation and Business Law (Dallas Feb. 9-10, 2012)

Speaker, Corporate Governance — A Master Class 2011, Practising Law Institute
(New York City Feb. 16, 2011)

Panelist, Federal and State Securities Litigation Developments, University of Texas
Annual Conference on Securities Regulation and Business Law (Dallas Feb. 10-
11, 2011)

Panelist, The Role of State Regulators in the New Financial Services Regulatory
Landscape (North American Securities Administrators Association) (Denver
September 13, 2009)

Participant, Roundtable on "Corporate Raiding, Insider Trading and the World
Financial Crisis" (Moscow State University May 28, 2009)

Participant, Roundtable with Russian Federation Anti-Monopoly Service on
"Preventing Anti-Competition Practices and Securities Violations" (Moscow
May 27, 2009)

Participant, Roundtable with Russian Federation Ministry of Internal Affairs,
Economic Crimes Department on "Corporate Raiding and Securities Fraud"
(Moscow May 26, 2009)

Speaker, Legal and Ethical Concerns for the Corporate/Securities Attorney,
University of Texas Annual Conference on Securities Regulation and Business
Law (Dallas Feb. 12-13, 2009)

Speaker, Raising Money in Today's Capital Markets, Society of International
Business Fellows (Dallas May 5, 2008)

Speaker, Gambling with Selective Waiver of the Attorney-Client and Work Product
Doctrine Privileges, American Bar Association, Section of Business Law (Spring
Meeting) (Dallas April 11, 2008)

Planning Committee, American Bar Association, Business Law Section, 2008
    Spring Meeting (Dallas April 10-13, 2008)

Moderator, University of Texas Annual Conference on Securities Regulation and
    Business Law (Dallas Feb. 7-8, 2008)

Speaker, The Second Annual National Institute on Securities Fraud, American Bar
    Association, Section of Business Law (Washington Oct. 26, 2007)

Speaker, Ethics and Business Litigation, State Bar of Texas Annual Meeting,
    Antitrust and Business Litigation Section (San Antonio June 21, 2007)

Speaker, How Boards of Directors Can Oversee Strategic Decisions & Get
    Investigations Right, Directors' Roundtable (Dallas Feb. 6, 2007)

Speaker, Texas State Securities Board Training Program (Austin Dec. 13, 2006)

Speaker, Inside Counsel — Ethical and Liability Concerns, Texas General Counsel
    Forum (Dallas May, 3, 2006)

Training Seminar, Securities and Futures Commission (SFC), Hong Kong (Oct. 8,
    2004)

Public Lecture, Recent Developments in U.S. and European Securities Regulation,
    University of Hong Kong (Oct. 5, 2004)

Speaker, Responding to Corporate Wrongdoing: The Ethical and Legal
    Responsibilities of Attorneys and Audit Committees (Corporate Compliance
    Center, South Texas College of Law (Houston Nov. 12, 2004))

Speaker, University of Texas Annual Conference on Securities Regulation and
    Business Law Problems (Dallas Feb. 19-20, 2004)

Chair, FindLaw Corporate Counsel Program on Securities Update & Litigation
    Defense (Las Colinas Texas Nov. 21, 2003)

Speaker, Criminal Securities Enforcement in the New Era, American Bar Association Annual Meeting, Section of Business Law (San Francisco August 8, 2003)

Speaker, In the Aftermath of Enron and Andersen: Lessons to be Learned (Pulaski County Bar Association) (Little Rock May 22, 2003)

Speaker, Program on Nuts and Bolts of Securities Law (Vanderbilt University School of Law and The Practising Law Institute) (Nashville May 15-16, 2003)

Speaker, Evolving Role of Corporate Counsel in the New Business Environment (The Texas Center for Legal Ethics and Professionalism) (Plano Texas Jan. 16, 2003)

Speaker, Current Developments in Monetary and Financial Law (International Monetary Fund Institute) (Washington D.C. May 16, 2002)

Speaker, Program on Nuts and Bolts of Securities Law (Vanderbilt University School of Law and the Practising Law Institute) (Nashville May 16-17, 2002)

Chair and Speaker, Ethical and Legal Challenges Facing Securities Lawyers (Association of the Bar of the City of New York) (New York City May 8, 2002)

Speaker, University of Texas Annual Conference on Securities Regulation and Business Law Problems (Galveston Feb. 21-22, 2002)

Speaker, Conference on Terrorism's Burden on Globalization (ABA Section of International Law and Practice) (Dallas Feb. 7, 2002)

Speaker, American Bar Association Annual Meeting, Section of Business Law (Chicago August 4, 2001)

Speaker, Symposium on International Monetary and Financial Law in the New Millennium (British Institute of International and Corporate Law) (London June 1-2, 2001)

Speaker, Program on Nuts and Bolts of Securities Law (Vanderbilt University School of Law and The Practising Law Institute) (Nashville May 17-18, 2001)

Chair and Speaker, Ethical and Legal Challenges Facing Securities Lawyers
(Association of the Bar of the City of New York) (New York City April 16,
2001)

Speaker, Topical Comparative Securities Law Issues in the Americas, Multilaw
Multinational Association of Independent Law Firms, 2001 Americas Regional
Conference (Dallas Feb. 9, 2001)

Speaker, Program on Nuts and Bolts of Securities Law (Vanderbilt University
School of Law and The Practising Law Institute) (Nashville May 18-19, 2000)

Speaker, University of Texas Annual Conference on Securities Regulation and
Business Law Problems (Dallas Feb. 17-18, 2000)

Speaker, Thirty-First Annual Institute on Securities Regulation (Practising Law
Institute) (New York City Nov. 4-6, 1999)

Speaker, University of Texas Annual Conference on Securities Regulation and
Business Law Problems (Dallas Feb. 18-19, 1999)

Speaker, American Bar Association Annual Meeting, Section of Business Law
(Toronto August 3, 1998)

Presentation, 100th Anniversary of the University of Peking (Beijing May 3, 1998)

Speaker, Seminar on Insider Trading and Government Enforcement Sponsored by
The University of Western Australia (Perth March 5, 1998)

Symposium on Securities Arbitration: A Decade After McMahon, Brooklyn Law
School (October 25, 1996)

Address Before the Buenos Aires Lawyers Association and the Bank of Boston
(Buenos Aires March 20, 1996)

Address Before the Buenos Aires Stock Exchange (Buenos Aires March 18, 1996)

Address Before the Argentine Securities and Exchange Commission (Buenos Aires March 15, 1996)

Speaker, Dallas Bar Association, The Private Securities Litigation Reform Act of 1995 (Dallas Feb. 26, 1996)

Speaker, Conference on Emerging Financial Markets and International Financial Institutions, Sponsored by the European Bank for Reconstruction and Development (London May 25-26, 1995)

Speaker, Seminar on International Economic Law, Sponsored by the International Law Association of South Africa (Johannesburg March 14, 1995)

Faculty, International Lawyering in the Americas, Sponsored by SMU School of Law (Dallas Jan. 26-27, 1995)

Speaker, Twenty-Sixth Annual Institute on Securities Regulation (Practising Law Institute) (New York City Nov. 3-5, 1994)

Speaker, Securities Arbitration: Training the Litigant, Sponsored by The American Arbitration Association (Dallas April 22, 1994)

Speaker, University of Texas Annual Conference on Securities Regulation and Business Law Problems (Dallas March 10-11, 1994)

Speaker, Twenty-Fifth Annual Institute on Securities Regulation (Practising Law Institute) (New York City Nov. 4-6, 1993)

Symposium on Contemporary Issues in Securities Regulation and Corporate Law Sponsored by University of Cincinnati College of Law (Cincinnati March 12, 1993)

Keynote Speaker for the Fifth Annual Midwest Securities Law Institute (Detroit Dec. 10, 1992)

Symposium on Current Issues in Securities Regulation Sponsored by Pepperdine University School of Law (Malibu Feb. 22, 1992)

Speech Before the Board of Directors Conference, Texas Legal Services Center (Fort Worth Sept. 14, 1991)

Address Before the German-American Lawyers' Association (Munich June 6, 1991)

Address Before the Securities Commission and Securities Market Institute of Taiwan (Taipei May 24, 1991)

Address Before the Business Law Section of the Law Council of Australia (Perth May 9, 1991)

Address Before the International Law Section of the Law Council of Australia (Melbourne April 24, 1991)

Address Before the Law Institute of Victoria (Melbourne April 23, 1991)

Address Before the Australian Trade Practices Commission (Canberra April 17, 1991)

Presentation Before the Securities Commission and Law Council of New Zealand (Wellington Feb. 27, 1991)

Presentation of Seminar before University of Hawaii Law Alumni (Honolulu Feb. 9, 1991)

Participant for the 23rd Annual Securities Regulation Conference of the Los Angeles County Bar (Oct. 24, 1990)

Course on Securities Regulation, The Southwestern Legal Foundation (Dallas Dec. 12-13, 1989)

Lecturer for FDIC Training Conference (San Antonio Oct. 26, 1989)

Course on Securities Regulation, The Southwestern Legal Foundation (Dallas Dec. 6-7, 1988)

Participant for the Aresty Institute of Executive Education, The Wharton School of the University of Pennsylvania (April 28, 1988)

45

Symposium on Tender Offer Regulation, Wake Forest University School of Law
(April 1, 1988)

Addresses Before the Swedish and Finnish Banking Lawyers Associations
(Stockholm, Nov. 12, 1986 and Helsinki, Nov. 20, 1986)

Speaker, Shareholder Meetings: Dealing with Management and Shareholder
Proposals (PLI & American Society of Corporate Secretaries) (New York City
Sept. 20-21, 1984)

Speaker, National Institute on Securities Regulation (Boulder, Colorado May
30-31, June 1, 1984)

Speaker, National Institute on Securities Regulation (Boulder, Colorado June 1-3,
1983)

Speaker, National Institute on Securities Regulation (Boulder, Colorado June 1-4,
1982)

Speaker, Securities Regulation and the Capital Raising Process for the Small Issuer
(FBA Midyear Meeting) (Dallas March 25-26, 1982) (Conference Co-Chairman)

Speaker, Fraud and Fiduciary Duty Under the Federal Securities Laws (ALI-ABA)
(Washington April 30, 1981)

Speaker, North American Securities Administrators Association (NASAA) —
Panel on Securities Law Developments (Washington April 27, 1981) [Reviewed
in Securities Regulation & Law Report (BNA) No. 604, F-4 (May 20, 1981)]

Speaker, Proxy Contests and Battles for Corporate Control (PLI) (Los Angeles Feb.
23-24, 1981)

Speaker, National Institute of Municipal Law Officers (NIMLO) — Panel on
Municipal Finance and Municipal Securities Disclosure Requirements (New
York City Nov. 17, 1980) [Reviewed in 22 Municipal Attorney 4 (Jan. 1981)]

Speaker, The Investor, the Corporation and the Commission — New Developments
and Tactics in Stockholder Litigation (PLI) (San Francisco April 17-18, 1980)

Panelist for Other Professional Conferences in Baltimore, Charlotte, Cincinnati, Cleveland, Dallas, Dayton, Detroit, Houston, Minneapolis, New Orleans, Oklahoma City, and Washington, D.C.

Luncheon Speaker for Bar Association Meetings in Cleveland, Dallas and Richmond, for Institute of Internal Auditors in Washington, D.C.

Lecturer for Rule of Law Conferences

Lecturer for American Arbitration Association Programs

Lecturer for Law Firm and Corporate Counsel In-House CLE Programs

Lecturer for SEC and Texas State Securities Board Training Programs and Seminars

Commentator for various Television, Radio, Newspaper, and Other Mass Media Services

## SELECTED MARYLAND LAW SCHOOL ACTIVITIES (1983-1989)

Coordinator, SEC Student Observer Program, 1983-1989
Faculty Adviser, Maryland Journal of International Law and Trade, 1984-1989
Faculty Adviser, Maryland Team for the National Securities Moot Court Competition, 1985-1989
Faculty Adviser, Maryland Business Law Society, 1988-1989
Procured Articles on Behalf of The Maryland Law Review [e.g., Justice Arthur J. Goldberg's article in 43 Maryland Law Review 225 (1984)]
Coordinator, Maryland Law School Program on "Regulation of Tender Offers" (September 22, 1983)
Coordinator, Maryland Law School Program on "Corporate/Securities Law Developments" (November 1, 1984)
Secretary, Order of the Coif (Maryland Chapter), 1984-1988
University of Maryland Representative, Proxy Voting Committee, 1985-1986
Law School Representative, Middle States' Self Study Task Force on Research, 1985
Member, Appointments Committee, 1989
Member, Curriculum Committee, 1987-1988
Chairman, Research Committee, 1985-1986
Member, Teaching and Student Evaluation Committee, 1984-1985

Member, Tenure and Promotions Committee, 1985-1989
Resident Agent, Maryland Softball Team, 1984 Season
Member, Research Committee, 1983-1984
Faculty Secretary, 1983-1984

## SELECTED SMU ACTIVITIES (1989-Present)

Senior Associate Dean for Research, 2006-2012
Senior Associate Dean for Academics, 1998-2003
Board of Directors, SMU Willis M. Tate Distinguished Lecture Series, 1992-1995
Founding Director, SMU Corporate Directors' Institute, 2003-Present
Faculty Adviser, SMU Law Review Corporate Counsel Annual Symposium, 1993-2018
Director, SMU Corporate Counsel Externship Program, 2013-Present
Faculty Advisor, Business Law Society, 2001-Present
Editor, SMU Dedman School of Law SSRN Legal Studies Research Paper Series, 2007-2013
Faculty Member, Barristers, 1993-Present
Faculty Adviser, SEC Student Observer Program, 1992-2014
Chair, University Review Committee for Women's Studies Program, 1999-2000
Law School Representative, University Senate, 1991-1993
Chair, Law Review Committee, 2017-2018
Chair, Curriculum Committee, 2003-2004, 2005-2006
Chair, Appointments Committee, 1992-1993
Member, Appointments Committee, 1993-1994
Member (ex officio), Appointments Committee (1998-2004, 2007-2012)
Member, Executive Committee, 1994-1995
Member, Law Review Committee, 2018-2019
Chair, Endowed Lecturers Committee, 1990, 1991-1996
Chair, Chair Search Committee, 1989-1990, 2018-2019
Chair, Mentoring Group, 2008-2012
Member, Judicial Clerkship Committee, 2016-2017
Member, Library Committee, 2008-2012
Member, Reputation Committee, 2009-2010
Member, Chair Search Committee, 1991-1992, 1993-1996
Member, Self Study Committee, 1995-1996
Member, Minority Student Relations Committee, 1989-1990
Member, Financial Aid Committee, 1990
Member, Graduate Committee, 1995-1996
Member, Institutional Effectiveness Committee, 1999-2003

## COMMUNITY SERVICE

Executive Committee, Southwest Region, Anti-Defamation League, 1997-Present
Fellow, Dallas Bar Foundation, 2005-Present
Member, Tennis Court Committee, Town of Highland Park, 2018
Member, Highland Park Independent School District (Texas), Steering Committee
    for a More Inclusive and Respectful Environment, 2017
Board of Directors, Dallas Hebrew Free Loan Association, 2010-2012
Board of Directors, Dallas Chapter, American Red Cross, 1992-1995
Board of Trustees, National Kidney Foundation of Texas, 1995-1997
Executive Committee, Southwest Region, American Jewish Committee, 1997-2002
Executive Committee, Southwest Region, American Jewish Congress, 1997-2007
Co-Chair, 2002 SMU United Way Campaign

## REFERENCES

Furnished on request

ANNEX   B

Marc I. Steinberg

Expert Witness Court and Deposition Testimony

(All SEC Cases — No Time Period;

Private Actions — Approximately Last Four Years)

1. Burr v. Dollar General Corporation, No. CT-000728-06 (Shelby County Tennessee) (Deposition)

2. Ebert v. Gustin, et al., No. 4:15-cv-225-0 (Northern District Texas) (Deposition and Trial Testimony)

3. Lang v. Mathews, Cause No. 2016-cI-04806 (Bexar County, Texas) (Deposition)

4. MCG Capital Corporation v. Nexbank Capital Advisors, Cause No. DC-13-14628 (Dallas County Texas) (Deposition)

5. In the Matter of Piper Capital Management, Securities and Exchange Commission Administrative Proceeding No. 3-9657 (ALJ) (Minneapolis Minnesota) (Court Testimony)

6. Schlumberger Technology Corporation v. Hopwood, et al., Cause No. 17-DCV-241894 (Fort Bend County, Texas) (Deposition)

7. Securities and Exchange Commission v. Cuban, Case No. 08-cv-2050 (U.S. Northern District Texas) (Deposition)

8. Securities and Exchange Commission v. Heartland Advisors, Inc., et al., Civil Action No. 03 C 1427 (U.S. Eastern District Wisconsin) (Deposition)

9. Securities and Exchange Commission v. Tee to Green Golf Parks, Inc., Civil Action No. 00 CV 0478 (U.S. Western District New York) (Expert Witness Report Only)

10. Stoller v. Funk, Case No. CIV-11-1144-M (U.S. Western District Oklahoma) (Deposition)

11. In the Matter of Theodore W. Urban, Securities and Exchange Commission Administrative Proceeding No. 3-13655 (ALJ) (Washington DC) (Court Testimony)

12. Wood v. Sunwest Bank, Case No. BC479843 (Super. Ct. County of Los Angeles California) (Deposition and Trial Testimony)

ANNEX C

**MATERIALS REVIEWED**

Expert Report of Professor Jonathan R. Macey, *County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al., The County of Cuyahoga v. Purdue Pharma, L.P., et al.*, Case No. 1:17-MD-2804 (N.D. Ohio) (May 10, 2019), all documents cited therein and listed in Exhibit 3 thereto.

Deposition of Stephen Kaufhold, *In re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) (Oct. 26, 2018)

Deposition of Jennifer Altier, *In re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) (Aug. 2, 2018)

Allergan Schedule 1.1(f) Transferred Entities

Allergan Schedule 2 Production Fees

Allergan Schedule 4.6(c) Transferred Group

Third Amended Complaint and Jury Demand, *In re National Prescription Opiate Litigation*, MDL No. 2804; *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-op-45090 (N.D. Ohio) (Mar. 21, 2019)

Teva Master Purchase Agreement (July 26, 2015) and Amendments and Schedules Thereto

Allergan plc SEC Form 10-K for the fiscal year ended December 31, 2018

Allergan Public Limited Company 2016 Irish Annual Report

Correspondence, Donna M. Welch to Thomas E. Egler (May 11, 2019)

Allergan plc's Responses and Objections to Plaintiffs' First Set of Interrogatories to Allergan plc (May 11, 2019)

ALLERGAN_MDL_03674501

ALLERGAN_MDL_SUPP_00000174

ALLERGAN_MDL_01385833

ALLERGAN_MDL_SUPP_00000309

ALLERGAN_MDL_01385783

ALLERGAN_MDL_SUPP_00000132

ALLERGAN_MDL_SUPP_00000326

ALLERGAN_MDL_01335569

ALLERGAN_MDL_01334578

ALLERGAN_MDL_01334568

ALLERGAN_MDL_01334588

ALLERGAN_MDL_01489486

ALLERGAM_MDL_02024980

ALLERGAN_MDL_01836286

ALLERGAN_MDL_02185805

ALLERGAN_MDL_02869386

ALLERGAN_MDL_04382952

ALLERGAN_MDL_04382929

ALLERGAN_INSURANCE_000005

ALLERGAN_INSURANCE_003749

ALLERGAN_INSURANCE_003635

ALLERGAN_INSURANCE_003704

ALLERGAN_INSURANCE_003613

ALLERGAN_INSURANCE_003586

ALLERGAN_INSURANCE_003564

ALLERGAN_INSURANCE_003730

ALLERGAN_MDL_04451501

ALLERGAN_MDL_03364963

ALLERGAN_MDL_03365075

ALLERGAN_MDL_03365077

ALLERGAN_MDL_03365094

ALLERGAN_MDL_03364974

ALLERGAN_MDL_03364969

ALLERGAN_MDL_03364976

ALLERGAN_MDL_03364983

ALLERGAN_MDL_03363466

ALLERGAN_MDL_03364402

ALLERGAN_MDL_03364403

ALLERGAN_MDL_03364461

ALLERGAN_MDL_03364462

ALLERGAN_MDL_03364512

ALLERGAN_MDL_03364513

ALLERGAN_MDL_03364578

ALLERGAN_MDL_03364580

ALLERGAN_MDL_03364955

ALLERGAN_MDL_03364956

ALLERGAN_MDL_03364959

ALLERGAN_MDL_03364960

ALLERGAN_MDL_03365064

ALLERGAN_MDL_03364837

ALLERGAN_MDL_03363463

ALLERGAN_MDL_03365041

ALLERGAN_MDL_03365050

ALLERGAN_MDL_03363472

ALLERGAN_MDL_03363476

ALLERGAN_MDL_03364991

ALLERGAN_MDL_03364404

ALLERGAN_MDL_03364463

ALLERGAN_MDL_03364464

ALLERGAN_MDL_03364514

ALLERGAN_MDL_03364579

ALLERGAN_MDL_03364581

ALLERGAN_MDL_03364957

ALLERGAN_MDL_03364958

ALLERGAN_MDL_03364961

ALLERGAN_MDL_03364962

ALLERGAN_MDL_03364405

ALLERGAN_MDL_03363607

ALLERGAN_MDL_03364860

ALLERGAN_MDL_03363554

ALLERGAN_MDL_03364349

ALLERGAN_MDL_03364465

ALLERGAN_MDL_03363642

ALLERGAN_MDL_03363722

ALLERGAN_MDL_03363795

ALLERGAN_MDL_03364515

ALLERGAN_MDL_03363676

ALLERGAN_MDL_03364003

ALLERGAN_MDL_03363649

ALLERGAN_MDL_03363723

ALLERGAN_MDL_03363469

ALLERGAN_MDL_03363524

ALLERGAN_MDL_03363568

ALLERGAN_MDL_03365154

ALLERGAN_MDL_03364227

ALLERGAN_MDL_03363975

ALLERGAN_MDL_03363716

ALLERGAN_MDL_03364310

ALLERGAN_MDL_03364317

ALLERGAN_MDL_03363980

ALLERGAN_MDL_03363707

ALLERGAN_MDL_03363708

ALLERGAN_MDL_03364122

ALLERGAN_MDL_03363691

ALLERGAN_MDL_03365116

ALLERGAN_MDL_03363734

ALLERGAN_MDL_03363541

ALLERGAN_MDL_03364196

ALLERGAN_MDL_03363655

ALLERGAN_MDL_03363805

ALLERGAN_MDL_03363588

ALLERGAN_MDL_03363595

ALLERGAN_MDL_03363601

ALLERGAN_MDL_03363490

ALLERGAN_MDL_03363507

ALLERGAN_MDL_03363608

ALLERGAN_MDL_03363625

ALLERGAN_MDL_03365097

ALLERGAN_MDL_03363771

ALLERGAN_MDL_03364172

ALLERGAN_MDL_03363740

ALLERGAN_MDL_03363473

ALLERGAN_MDL_03364154

ALLERGAN_MDL_03364200

ALLERGAN_MDL_03364071

ALLERGAN_MDL_03364278

ALLERGAN_MDL_03364754

ALLERGAN_MDL_03363485

ALLERGAN_MDL_03364303

ALLERGAN_MDL_03364582

ALLERGAN_MDL_03364097

ALLERGAN_MDL_03363838

ALLERGAN_MDL_03363737

ALLERGAN_MDL_03363738

ALLERGAN_MDL_03363739

ALLERGAN_MDL_03364144

ALLERGAN_MDL_03363459

ALLERGAN_MDL_03363931

ALLERGAN_MDL_03364023

ALLERGAN_MDL_03363868

ALLERGAN_MDL_03365494

ALLERGAN_MDL_03365690

ALLERGAN_MDL_03365625

ALLERGAN_MDL_03365204

ALLERGAN_MDL_03365717

ALLERGAN_MDL_03365410

ALLERGAN_MDL_03365831

ALLERGAN_MDL_03365609

ALLERGAN_MDL_03365447

ALLERGAN_MDL_03365761

ALLERGAN_MDL_03365402

ALLERGAN_MDL_03365488

ALLERGAN_MDL_03365822

ALLERGAN_MDL_03365852

ALLERGAN_MDL_03365798

ALLERGAN_MDL_03365928