1           IN THE UNITED STATES DISTRICT COURT

           FOR THE NORTHERN DISTRICT OF OHIO

2                   EASTERN DIVISION

3

    ------------------------    )

4   IN RE: NATIONAL             ) MDL No. 2804

    PRESCRIPTION OPIATE         )

5   LITIGATION                  ) Case No.

    ------------------------    ) 1:17-MD-2804

6                               )

    THIS DOCUMENT RELATES TO    ) Hon. Dan A. Polster

7   ALL CASES                   )

    ------------------------    )

8

9                   HIGHLY CONFIDENTIAL

10        SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

11

12             VIDEOTAPED DEPOSITION OF

13                   TOMSON GEORGE

14               January 14, 2019

15

16               Chicago, Illinois

17

18

19

20

21

22           GOLKOW LITIGATION SERVICES

                 877.370.3377

23               deps@golkow.com

24

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Case: 1:17-md-02804-DAP Doc #: 2173-21 Filed: 08/12/19 78 of 306. PageID #: 308760.

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

1    Q.    That paragraph goes on to say, "In

2   July 2011, the Florida Surgeon General declared a

3   public health emergency based on the prescription

4   pill epidemic which results in an average of seven

5   overdose deaths per day in Florida."

6         Do you see that?

7    A.    I do.

8    Q.    Did you have an independent knowledge

9   prior to seeing this here that there was a public

10  health emergency declared in Florida back in

11  July of 2011?

12   A.    I can't say I'm -- I knew of a July 2011

13  public health emergency, if that's what you're

14  asking.

15   Q.    It goes down to paragraph 3.  It says,

16  "Oxycodone is a dangerously addictive Schedule II

17  controlled substance."

18         Do you agree with that portion of that

19  sentence?

20   A.    I don't know if that's how I'd

21  specifically characterize it.  Oxycodone being a

22  Schedule II drug has addictive properties.  But I

23  think that, you know, any drug could also be

24  dangerous, you know.

```
 1              So, it's a matter of making -- it's what

 2    pharmacists do also to make sure that they help

 3    protect the patient so that when a prescription is

 4    dispensed that it's done so in a safe manner.

 5        Q.    Okay?  You said -- you said there that

 6    any drug could be dangerous?

 7        A.    Sure.

 8        Q.    Is oxycodone the same as just any other

 9    drug in your opinion?

10        A.    I mean, it's classified by the DEA as a

11    Schedule II drug, which gives it a higher rating in

12    their scale as far as potential risk related to

13    addiction.

14        Q.    Okay.  Do you agree or disagree that

15    oxycodone is a dangerously addictive drug?

16        A.    It can be an addictive drug, but I also

17    understand many people take it safely every day.

18        Q.    Do you agree or disagree that we're in

19    the midst of a public health crisis related to

20    opioid abuse?

21        A.    I think there is definitely a lot of

22    people impacted by the issue every single day.

23        Q.    What do you mean by "impacted"?

24        A.    There are people who do overdose from
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    controlled substance medications.
 2        Q.    Do you agree there is a lot of people
 3    that are addicted to drugs such as oxycodone?
 4        A.    That's what I understand.
 5        Q.    With that backdrop, with that
 6    understanding that a lot of people are addicted to
 7    it, a lot of people I think you just said overdose
 8    from it, do you agree or disagree that oxycodone is
 9    a dangerously addictive Schedule II controlled
10    substance?
11        MR. BENSINGER:  Asked and answered.
12    BY THE WITNESS:
13        A.    I don't think I can categorically
14    subscribe to that statement as a...
15    BY MR. GADDY:
16        Q.    That sentence goes on to say, "which is
17    known to be highly abused and diverted in the State
18    of Florida."
19            Do you see that?
20        A.    Is that paragraph 2 still?
21        Q.    Yeah.  I'm sorry.  It's the second half
22    of that first sentence.  No, I'm sorry.  We are in
23    paragraph 3 now.
24        A.    I'm sorry.
```

Highly Confidential - Subject to Further Confidentiality Review

1    Q.    Let's read the whole sentence again.

2         It says, "Oxycodone is a dangerously

3    addictive Schedule II controlled substance which is

4    known to be highly abused and diverted in the State

5    of Florida."

6         Do you see that?

7    A.    I do.

8    Q.    We just spent a moment talking about the

9    first portion of that sentence.  The second

10   portion, it says, "Oxycodone is known to be highly

11   abused and diverted in the State of Florida."

12        Do you agree with that sentence?

13   A.    I don't --

14   MR. BENSINGER:  Objection; foundation.

15   BY THE WITNESS:

16   A.    I don't know if I have enough

17   information to completely agree with that sentence.

18   I've heard of that type of conversation.

19   BY MR. GADDY:

20   Q.    Had you heard of that or were you aware

21   of that back in September of 2012 when this

22   document was published?

23   A.    I could not say I was.

24   Q.    Did anybody -- are you aware or do you

Highly Confidential - Subject to Further Confidentiality Review

 1   have any memory of anybody at Walgreens making you

 2   aware of the information contained within that

 3   sentence?

 4       A.   No one at Walgreens notified me of that

 5   first sentence that you talked about.

 6       Q.   So, in the time period leading up to

 7   this document, which is dated September 13, 2012,

 8   do you have any understanding of any suspicious

 9   order monitoring program that Walgreens had in

10   place on the distribution side?

11       A.   It wouldn't be part of my job role, so

12   it would be hard for me to comment on.  I mean...

13       Q.   Is the answer no, that you don't have

14   any understanding of that, that we should talk to

15   other people about the suspicious order monitoring?

16       A.   Yes, if that's your focus of the

17   question, I would not be the person to talk to

18   about that.

19       Q.   What about on the pharmacy side, so the

20   dispensing side.  What systems were in place to

21   allow pharmacies to monitor their dispensing

22   practices?

23       A.   Which date would you like me to think

24   about?

1    Q.    Again, this is in the time period

2   leading up to the date of this document, which is

3   September 2012, and what I'm asking is:  What

4   policies or programs did Walgreens have in place on

5   the dispensing side to ensure that only valid,

6   appropriate, medically necessary prescriptions were

7   filled?

8       MR. BENSINGER:  Objection; foundation.

9   BY THE WITNESS:

10      A.    On the topic of dispensing controlled

11  substances, I think three things come to mind

12  around controlled substances that I was at least

13  familiar with to some level.

14          One is Walgreens' good faith dispensing

15  policies and procedures.  Second is I think as part

16  of the pharmacist drug utilization review, I think

17  there was a warning message, for example, if a

18  prescription was being refilled early and then,

19  third, as it relates to prescription drug

20  monitoring reporting.

21  BY MR. GADDY:

22      Q.    So, as far as programs that were in

23  place to ensure that only appropriate and medically

24  necessary prescriptions were filled, you're

1    pointing us to three things:  The good faith

2    dispensing program?

3         A.    Um-hmm.

4         Q.    The drug utilization review and any

5    prescription drug monitoring program, correct?

6         A.    Yeah.

7         Q.    Are these policies or procedures that

8    are in place within the pharmacies or are these

9    policies and procedures that give folks in the

10   business side of Walgreens the visibility to see

11   what's going on in their pharmacies?

12        MR. BENSINGER:  Objection; foundation.

13   BY MR. GADDY:

14        Q.    Let me strike that and ask that a

15   different way.

16             Are those pharmacy programs?

17        A.    Yeah, the pharmacy -- the locations and

18   the pharmacists and technicians inside, those would

19   be the ones that are impacted by what I just called

20   out.

21        Q.    Okay.  And we'll look in a minute at

22   exactly when the Florida PDMP went into place.  I

23   think it was 2011.

24             But prior to this date that we're

1    talking about, September 2012, how long do you

2    believe the good faith dispensing program had been

3    in place?

4         A.    I don't know offhand, to be honest.

5         Q.    Okay.  And what about that drug

6    utilization review?

7         A.    That -- I mean the concept of the system

8    checking for, you know, drug interactions,

9    including early refills, that's been there since

10   the day I was a pharmacist.  I don't know the exact

11   timing, whether or not the early refill portion was

12   there from Day One or it came into effect at some

13   point during my time with Walgreens Company.

14        Q.    But those are three programs or three

15   tools that were available to pharmacists during

16   this time period, correct?

17        A.    Yeah, depending on the state and the

18   prescription drug monitoring program, I would

19   expect that the other two would apply as well.

20        Q.    But would you agree that good faith

21   dispensing program that you are talking about here

22   had been in place for several years?

23        A.    That's what I understand.

24        Q.    If you go down to paragraph 4, still on

1    page 29, it says, "Since 2009, Walgreens' Jupiter

2    Florida distribution center has been the single

3    largest distributor of oxycodone products in

4    Florida.  At about the same time as the abuse of

5    prescription drugs became an epidemic in Florida,

6    Walgreens' Florida retail pharmacies, supplied by

7    Respondent, commanded an increasingly large

8    percentage of the state's growing oxycodone

9    business."

10           Do you see that?

11      A.    I do.

12      Q.    Is that information that you were aware

13   of?

14      MR. BENSINGER:  Objection; vague.

15   BY THE WITNESS:

16      A.    I don't -- I mean, I'm not familiar with

17   the document and the statements that you just read

18   wouldn't have been something that I would have been

19   I think aware of in my role at the company.

20   BY MR. GADDY:

21      Q.    It says, "In 2010, only three Walgreens

22   retail pharmacies were in the top 100 purchasers of

23   oxycodone within Florida.  In 2011, 38 Walgreens

24   pharmacies made the top ten" -- excuse me -- "the

1  top 100 and six were in the top ten.  Through

2  May 2012, 44 Walgreens pharmacies are in the top

3  100 oxycodone purchasers, all of them supplied by

4  Respondent."

5          Do you see that?

6      A.    I do.

7      Q.    Do you agree that there's a correlation

8  between the amount of opioids dispensed and the

9  amount that would have to be distributed to those

10  stores?

11          What I mean by that is the more drugs a

12  pharmacy dispense, the more drugs they're going to

13  have to order from a distribution center, correct?

14      A.    That does make sense to me.

15      Q.    Okay.  You understand the information in

16  paragraph 4 to be talking about how Walgreens

17  stores within the State of Florida gained an

18  increasingly large percentage of the oxycodone that

19  was dispensed within the state?

20      A.    I do read that here.

21      Q.    During this time period, 2009, 2010,

22  2011, 2012, who at Walgreens would be monitoring

23  this rise in volume in oxycodone going to Florida?

24      MR. BENSINGER:  Objection; foundation.

1    BY THE WITNESS:

2        A.    I don't know of anyone that would be

3    specifically monitoring any increase in oxycodone

4    specifically.

5    BY MR. GADDY:

6        Q.    Do you know of any department or piece

7    of software that would be monitoring such an

8    increase in volume?

9        MR. BENSINGER:  Objection; compound,

10   foundation.

11   BY THE WITNESS:

12       A.    I mean, it would be outside of my

13   general knowledge base in my role at the company

14   for me to know that type of information.

15   BY MR. GADDY:

16       Q.    And at the time that this increase is

17   happening, the 2010 with three Walgreens pharmacies

18   in the top 100, 2011, 38 Walgreens pharmacies in

19   the top 100, and 2012, 44 Walgreens pharmacies in

20   the top 100, as far as oxycodone prescriptions go,

21   during that time period the good faith dispensing

22   program and the drug utilization review are in

23   effect, correct?

24       A.    That's my understanding.

1    Q.    And at least for some of that time

2  period the Florida PDMP is in effect?

3    A.    If the Florida PDMP started in 2011,

4  that would be correct.

5    Q.    Those programs, the good faith

6  dispensing, the drug utilization review and the

7  PDMP, again, assuming it's in place in a particular

8  state, would those same three programs be the same

9  safeguards that were in place regardless of what

10  state we're looking at?

11    A.    I think two for sure and then the PDMP

12  if one was active in that state.

13    Q.    Okay.  So, the good faith dispensing and

14  the drug utilization review would have been the

15  safeguards in place in all 50 states and then

16  potentially a PDMP?

17    A.    Yeah, around dispensing purposes,

18  correct.

19    Q.    That would be the same answer if we're

20  talking about Ohio, correct?

21    A.    Yep.

22    Q.    Same answer if we're talking about West

23  Virginia?

24    A.    I don't -- well, West Virginia,

 1   depending on the timing, we also have some of those

 2   ID requirements.  I forgot when that was

 3   implemented as well.  That could have been an

 4   additional element.

 5       Q.    If you look at paragraph 5, it says,

 6   "According to DEA records, in 2011, Walgreens

 7   operated 7,862 retail pharmacies in the

 8   United States.  Sixteen of the top 25 largest

 9   Walgreens retail oxycodone purchasers, included the

10   top 6 purchasers" -- excuse me -- "including the

11   top 6 purchasers, were in Florida and supplied by

12   Respondent.  The following table shows these six

13   stores and their yearly oxycodone purchases for

14   2009 through 2011."

15           Do you see that and then do you also see

16   the chart on the following page?

17       A.    I do.

18       Q.    Okay.  And do you understand the

19   information that this -- that this -- that this

20   chart is relaying and how it's set up as far as the

21   store location in the left-hand column and then the

22   oxycodone purchases by dosage unit for each of the

23   three years in the next three columns?

24       A.    Yeah, I do see those headings.

1      Q.    And for the first store there in Hudson,

2   Florida, it looks like in 2009 they purchased

3   388,000 dosage units of oxycodone.

4          Do you see that?

5      A.    Yes, I do.

6      Q.    And the following year, 2010, they

7   purchased 913,000 dosage units, correct?

8      A.    I see that.

9      Q.    And in 2011, that same store purchased

10  over 2.2 million dosage units of oxycodone,

11  correct?

12     A.    I do see that.

13     Q.    Would you agree with my very rough math

14  that it looks like that's approximately a 5 times

15  increase in oxycodone purchases from 2009 to 2011?

16     A.    In that range, yeah.

17     Q.    And that occurred while this pharmacy

18  had a good faith dispensing program, correct?

19     A.    Again, I don't remember exactly which

20  year the good faith dispensing policy started, but

21  at some point I would expect that would be in

22  place.

23     Q.    This occurred while this pharmacy had

24  the drug utilization review, correct?

1      A.    That's correct.

2      Q.    And assuming the PDMP went into place in

3   2011, at least a portion of it had the benefit of

4   the PDMP also?

5      A.    That makes sense.

6      Q.    If you look at the second entry there

7   for the Fort Myers store, 3099, you see that in

8   2009 they had 95,000 purchases of -- or excuse

9   me -- 95,000 dosage units of oxycodone that they

10  purchased, correct?

11     A.    I do.

12     Q.    In 2010, they purchased 496,000 dosage

13  units of oxycodone, correct?

14     A.    I do.

15     Q.    And, again, in 2011, it looks like they

16  purchased over 2.1 million dosage units of

17  oxycodone.

18         Do you see that?

19     A.    I do see that.

20     Q.    And, again, just using very, very rough

21  math, would you agree that's approximately a 20

22  times increase in the number of oxycodone dosage

23  units being purchased from 2009 to 2011?

24     A.    In that range, yes.

1      Q.     And, again, this would have been while

2   Walgreens good faith dispensing program and the

3   drug utilization review and at least a little bit

4   of the prescription drug monitoring program were in

5   place, correct?

6      A.     That is correct.

7      Q.     I promise we won't look at all of them,

8   but this will be the last one we do.

9             But do you see No. 3, store 06997 for

10  Oviedo, Florida, in 2009 they ordered 80,000 dosage

11  units of oxycodone?

12     A.     I see that.

13     Q.     And in 2010 that went up to 223,000.  Do

14  you see that?

15     A.     I do see that.

16     Q.     And that in 2011 it went up to over

17  1.6 million dosage units of oxycodone.

18            Do you see that?

19     A.     I do.

20     Q.     About how many times did those -- the

21  dosage unit of oxycodone purchased increased from

22  '09 to '11 with that particular store?

23     MR. BENSINGER:  Objection; vague.

24  BY THE WITNESS:

Highly Confidential - Subject to Further Confidentiality Review

```
 1        A.    Are you asking me to divide 1.6 million

 2   by 80,000 roughly?

 3   BY MR. GADDY:

 4        Q.    Roughly 16-time increase.  Does that

 5   sound about right?

 6        A.    Yeah, I -- I don't want to get hung up

 7   on math, but it's an increase.

 8        Q.    You've got no reason to dispute at least

 9   a 16-time increase in oxycodone dosage units going

10   to this particular Walgreens pharmacy from 2009 to

11   2011, do you?

12        A.    Yes.

13        Q.    And, again, just like the other two,

14   this would be while Walgreens' good faith

15   dispensing program was in place, while the drug

16   utilization review was in place and at least a

17   portion of it would have been while the Florida

18   PDMP was in place, correct?

19        A.    That's correct.

20        Q.    Did you, prior to us looking at this

21   information in this chart just now within this

22   Order to Show Cause that was issued by the DEA, did

23   you have any understanding that this amount of

24   oxycodone and this much of an increase of oxycodone
```

Highly Confidential - Subject to Further Confidentiality Review

 1    was going to Walgreens pharmacies during this time

 2    period?

 3         A.    I was not familiar with this extent in

 4    2012, if that's what you're asking.

 5         Q.    Did anybody with Walgreens ever sit down

 6    with you or are you aware of them sitting down with

 7    anybody else within Walgreens and saying, "This is

 8    what happened in these situations in Florida.  We

 9    made mistakes.  Let's learn from these mistakes and

10    put some corrective actions in place"?

11         MR. BENSINGER:  Objection; compound.

12    BY THE WITNESS:

13         A.    And there is a lot there.

14         MR. BENSINGER:  Vague.

15    BY THE WITNESS:

16         A.    But no one has reviewed these statistics

17    with me during my time at Walgreens in 2012, for

18    example.  Whether or not they've had conversations

19    with other people, I don't know if I could speak to

20    that.

21    BY MR. GADDY:

22         Q.    One of the areas that you had some

23    significant involvement in at Walgreens is the

24    prescription drug monitoring programs, correct?

```
 1        A.    That is correct.

 2        Q.    And you agree that, and we'll look at

 3   the exact date in just a minute I promise, but I'll

 4   represent to you that it's in 2011, one goes into

 5   effect in the State of Florida.

 6        A.    Okay.

 7        Q.    You agree that Florida had a PDMP?

 8        A.    Yes.

 9        Q.    And has one today?

10        A.    Yes.

11        Q.    Did anybody ever come to you with these

12   numbers at Walgreens and ask you, "How are we

13   getting these increases in oxycodone prescriptions

14   when Florida's implemented a prescription drug

15   monitoring program"?

16        MR. BENSINGER:  Objection.

17   BY THE WITNESS:

18        A.    I don't --

19        MR. BENSINGER:  Misleading.

20   BY THE WITNESS:

21        A.    I don't think anyone would have that

22   type of conversation with me for a couple different

23   reasons because I think they are two separate

24   pieces.
```

 1                  When pharmacies report into the

 2      prescription drug monitoring program there is no --

 3      it just goes into the State's database.  So, the

 4      State would probably have greater visibility into

 5      that type of information.  So, I wouldn't expect

 6      someone to be actively using that data to monitor

 7      the extent of any dispensings described in this

 8      chart.

 9      BY MR. GADDY:

10          Q.    Okay.  Walgreens' pharmacists in Florida

11      have access to the PDMP data in the State of

12      Florida, correct?

13          A.    Yeah, they have access to it, correct,

14      yep.

15          Q.    Are the Florida Walgreens pharmacists

16      encouraged to utilize that database to see whether

17      or not there are large increases in opioids being

18      dispensed by their pharmacy?

19          MR. BENSINGER:  Objection; foundation.

20      BY THE WITNESS:

21          A.    That's not how a database is used by a

22      pharmacist, generally speaking.  You would as a

23      pharmacist, upon receiving a prescription, if there

24      is any issues, concerns raised during your review

Highly Confidential - Subject to Further Confidentiality Review

1  or if there is a state law, rule that requires

2  otherwise on a case-by-case basis, you would be

3  looking at a specific patient and looking at their

4  controlled substance history for any trends of

5  misuse or overutilization.

6  BY MR. GADDY:

7      Q.    So, the answer is no, Walgreens

8  pharmacists are not encouraged to look at the PDMP

9  to determine whether or not their particular

10  pharmacy or neighboring pharmacies are seeing a

11  large increase in the dispensing of controlled

12  substances?

13      MR. BENSINGER:  Objection; foundation.

14  BY THE WITNESS:

15      A.    Walgreens pharmacists are -- have access

16  to the PDMP to review specific patients

17  information.  You can't view other pharmacies'

18  information in that database.

19  BY MR. GADDY:

20      Q.    If you will turn for me, please, to

21  page 39 down at the bottom of the page.

22          Do you see up at the top of the page it

23  says, "In view of the foregoing"?  Do you see where

24  I am?

```
 1        A.    I do see that.

 2        Q.    It says, "In view of the foregoing, and

 3   based on information before the agency as of the

 4   issuance of this notice, it is my preliminary

 5   finding pursuant to certain statutes that

 6   Walgreens' continued registration is inconsistent

 7   with the public interest."

 8              Do you see that?

 9        A.    I do.

10        Q.    It goes on to say that "Under the

11   summarized facts and circumstances described

12   herein, it is also my preliminary finding,

13   significantly in light of the rampant and deadly

14   problem of prescription controlled substance abuse

15   in Florida, that Respondent's continued

16   registration while these proceedings are pending

17   constitutes an imminent danger to the public health

18   and safety."

19              Do you see that?

20        A.    I do.

21        Q.    It says, "Accordingly, pursuant to the

22   provisions of certain statutes and regulations,

23   that the DEA Certificate of Registration," and it

24   gives the number, "is hereby suspended, effective
```

Highly Confidential - Subject to Further Confidentiality Review

1    immediately."

2              Do you see that?

3         A.    I do.

4         Q.    Did you have an understanding that the

5    DEA suspended the ability of the Jupiter

6    distribution center to distribute any controlled

7    substances?

8         MR. BENSINGER:  Objection; vague.

9    BY THE WITNESS:

10        A.    At some point I became aware of the

11   Jupiter distribution center was not allowed to

12   distribute controlled substances.

13   BY MR. GADDY:

14        Q.    Okay.  How did you become aware of that?

15        A.    It's hard for me to really remember.

16   Again, it could have been through public, newspaper

17   headline type situation, article, could have been

18   through at work, you know, maybe general

19   conversation or something along those lines.

20        Q.    You understand that the DEA is saying

21   here that Walgreens' ability to continue to

22   distribute opioids from the Jupiter distribution

23   center constitutes an imminent danger to the public

24   health and safety.  Do you understand them to be

Highly Confidential – Subject to Further Confidentiality Review

1    saying that?

2         A.    I do read that here.

3         Q.    Okay.  Thinking back to those numbers of

4    oxycodone dosage units going to those different

5    pharmacies, do you agree with that statement that

6    pharmacies dispensing that much -- that many dosage

7    units of controlled substance is a danger to the

8    public safety?

9         MR. BENSINGER:  Objection; calls for a legal

10   conclusion.

11   BY THE WITNESS:

12        A.    I think that -- it looks like they ruled

13   based upon a number of factors that there was a

14   danger as stated here.  You know, looking at the

15   numbers on their own, I don't know if I can

16   independently just draw that conclusion because

17   there may be other factors involved.

18             As pharmacies do dispense prescriptions,

19   it also relates to, you know, what prescriptions

20   are being dropped off at the pharmacy, what

21   patients, you know, what their needs are, you know,

22   general vicinity and things like that.  That could

23   vary as well.

24   BY MR. GADDY:

1      Q.    Okay.  Is it normal for a pharmacy to

2   increase the amount of oxycodone that it's

3   dispensing by 5 times or 16 times or 20 times over

4   a two-year period?

5      MR. BENSINGER:  Objection; foundation.

6   BY THE WITNESS:

7      A.    I couldn't -- I couldn't tell you that.

8   BY MR. GADDY:

9      Q.    Do you agree or disagree or have no

10   opinion on the DEA's statement here that Walgreens

11   continuing to be able to distribute controlled

12   substances from the Jupiter, Florida distribution

13   center constitutes an imminent danger to the public

14   health and safety?

15      A.    I mean, reading the statement, obviously

16   that is a strong statement; and I would expect that

17   whatever findings that contributed to that

18   statement were based upon evidence that they would

19   review.

20      Q.    You'll agree that the DEA is an

21   authority when it comes to controlled substances

22   and monitoring the diversion and drug abuse

23   associated with them?

24      A.    They're an agency that's tasked with

Highly Confidential - Subject to Further Confidentiality Review

1    regulating controlled substances, and part of that

2    is ensuring that controlled substances are I guess

3    safely distributed from one point to the patient at

4    the end of that.

5        Q.    And when making decisions like the

6    statements that we have been looking at here in

7    this document, you would defer to the DEA and their

8    judgment on issues such as that?

9        MR. BENSINGER:  Objection.

10   BY THE WITNESS:

11       A.    I don't know if I would --

12       MR. BENSINGER:  Foundation.

13   BY THE WITNESS:

14       A.    -- go that far.  I think that they are

15   charged with enforcing the regulations.  And,

16   again, I don't know the particulars of this case or

17   what would have prompted them to come with that

18   specific statement.

19   BY MR. GADDY:

20       Q.    You don't have any reason to disagree

21   with the statements the DEA is making here, do you?

22       A.    I wouldn't know enough about the

23   situation to go one way or the other.

24       Q.    Okay.  So, this document we are looking

Highly Confidential - Subject to Further Confidentiality Review

 1    at was the Order to Show Cause.  I want to spend

 2    just a moment to look at the settlement agreement

 3    itself.  Okay.  The settlement agreement is going

 4    to be the very first page.  We're just going to

 5    start on the very first page of the document.

 6        A.    Page 1 of 349?

 7        Q.    Correct.  Do you see above that there is

 8    also a numbering that says page 1 of 13.

 9              Do you see that?

10        A.    Oh, I do.

11        Q.    And so that's going to be the settlement

12    agreement.

13              You see there in the first paragraph at

14    the top of the page it says, "This Memorandum of

15    Agreement is entered into between the DOJ, the DEA

16    and Walgreens."

17              Do you see that?

18        A.    I do read that.

19        Q.    And you've never seen this, correct?

20        A.    Not as part of my job or...

21        Q.    Have you ever seen this ever?

22        A.    Maybe during prep briefly.

23        Q.    Okay.  Outside of the context of this

24    deposition or any preparation you did for this

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review



**REDACTED**

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review





**REDACTED**

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential – Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review



REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED