```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF OHIO
 2                       EASTERN DIVISION

 3

     ------------------------    )
 4   IN RE: NATIONAL             ) MDL No. 2804
     PRESCRIPTION OPIATE         )
 5   LITIGATION                  ) Case No.
     ------------------------    ) 1:17-MD-2804
 6                               )
     THIS DOCUMENT RELATES TO    ) Hon. Dan A. Polster
 7   ALL CASES                   )
     ------------------------    )
 8

 9                    HIGHLY CONFIDENTIAL

10        SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

11

12              VIDEOTAPED DEPOSITION OF

13                    JOHN MERRITELLO

14                   January 18, 2019

15

16                   Chicago, Illinois

17

18

19

20

21

22              GOLKOW LITIGATION SERVICES
           877.370.3377 ph | 917.591.5672 fax
23                    deps@golkow.com

24
```

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

**REDACTED**

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

**REDACTED**

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Case: 1:17-md-02804-DAP  Doc #: 2173-42  Filed: 08/12/19  80 of 235.  PageID #: 314284.

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

```
 8    BY THE WITNESS:

 9         A.    I think you lost me a little bit --

10    BY MR. SHKOLNIK:

11         Q.    I'll rephrase it.

12         A.    -- with a group coming from West

13    Virginia into some other state with a handful of

14    prescriptions.

15         Q.    And a lot of cash.

16         A.    And a lot of cash and it's the same guy

17    that's going to go around to a bunch of pharmacies.

18    He's committing a crime now, isn't he?

19         Q.    It's possible.  But the fact --

20         A.    Terrible.

21         Q.    But the fact of the matter is if you

22    have people willing to pay cash, I don't care if

23    it's Howard Hughes or John Smith from Main Street,

24    if you have a group of people willing to pay cash
```

1    and the store has two separate ceilings, one for

2    generic OxyContin and one for brand OxyContin, that

3    would be a way for the store to sell upwards of

4    double of the OxyContin without triggering

5    ceilings --

6        MR. BENSINGER:  Objection; foundation.

7    BY MR. SHKOLNIK:

8        Q.    -- if you don't combine them?

9        MR. BENSINGER:  Objection; foundation,

10   improper hypothetical.

11   BY THE WITNESS:

12       A.    I'm going to have to argue with you

13   because across the universe, the brand line would

14   be very, very low and even a prescription or two

15   could put a store over its ceiling in a minute.

16           That number is going -- you're going to

17   be crawling  -- that number is going to be crawling

18   along the bottom here without --

19       MR. SHKOLNIK:  Can you put that back up on the

20   screen, please.

21   BY THE WITNESS:

22       A.    Oh.

23   BY MR. SHKOLNIK:

24       Q.    No, it's fine.  I didn't realize it was

Highly Confidential - Subject to Further Confidentiality Review

1    shut down.

2           I gather what you're saying --

3       MR. BENSINGER:  Excuse me.  Mr. Merritello,

4    had you finished your answer?

5       MR. SHKOLNIK:  Oh, I'm sorry.

6       MR. BENSINGER:  Could you read back the answer

7    and you let us know if you had finished or you were

8    interrupted.

9       MR. SHKOLNIK:  I don't mean to cut you off.

10              (WHEREUPON, the record was read

11               by the reporter as requested.)

12   BY THE WITNESS:

13      A.    Let me rephrase just a little bit of

14   what I said.

15   BY MR. SHKOLNIK:

16      Q.    Sure.

17      A.    The regression line would be very, very,

18   very, very low.  That number would be a very small

19   number.  And if you filled a prescription of 30 or

20   60 and you did it twice, you're going to be sizably

21   out of range for that branded item and it's going

22   to be reported back.

23      Q.    Okay.

24      A.    Okay?  And the other, the generic line,

Highly Confidential - Subject to Further Confidentiality Review

```
 1    I would anticipate that under normal circumstances

 2    in a normal store would be much higher than that

 3    branded item.  So, the idea that you could double

 4    there, I don't agree with that.  I don't believe

 5    you could do that.

 6         Q.    If I take out double, you could still

 7    have increased sales by not combining the two

 8    ceilings?

 9         MR. BENSINGER:  Objection; foundation,

10    improper hypothetical.

11    BY THE WITNESS:

12         A.    A very slight one.

13    BY MR. SHKOLNIK:

14         Q.    And do you know what was happening in

15    Florida during the 2010 to 2012 time frame in terms

16    of the numbers of pills that were being dispensed

17    at the Walgreens pharmacies?  When I say pills, the

18    C-IIs, the controlled substances.

19         A.    No, no, I can't recall that.

20         Q.    If we can go to the next page, which is

21    619 of the PowerPoint.  Here there's a description

22    and it says -- we know this PowerPoint is in

23    January of 2013.  The PowerPoint is now saying,

24    "SOM version 5.5 is an industry leading enhancement
```

Highly Confidential - Subject to Further Confidentiality Review

1    to SIMS."

2            Do you recall what 5.5 was?

3    A.    Not -- not off the top of my head.  I'm

4    sorry.

5    Q.    But by this point in time, your team had

6    already developed the ceiling algorithm, by 2013,

7    correct?

8    A.    I'll guess that 5.5 is referring to the

9    ceiling tool, the whole thing, including the

10   dashboard for the integrity group and all of the

11   workings on the store AS400.

12   Q.    And here it says, "Program enhancement

13   to SIMS to impact ordering processes of all

14   controlled substances and PSE.

15           "Part of the calculations use an

16   accumulation of receipts of each controlled

17   substance over the last six weeks time."

18           Was part of the analysis, I guess it's

19   the regression model that's being utilized, did it

20   contemplate a six-week lookback or were you

21   contemplating some other -- did you consider other

22   lookback periods in developing the algorithm?

23   A.    So, when I went to the meeting and then

24   there was subsequent meetings and an iteration with

1    programmers and design, that six-week is

2    configurable.

3            Six weeks was what I thought they ought

4    to start at, and I believe they are still using six

5    weeks today because that's recent enough history

6    and it actually is a complete six weeks.  Today a

7    receipt comes in and six weeks go and a day, that

8    one comes out of that total that the store has

9    received in six weeks.

10           That's the -- that's the amount that

11   you're looking at.  You're looking at a six-week

12   amount of receipts at that store pitted against the

13   whole chain.

14       Q.    And so when you say six weeks receipts,

15   are we talking receipts buying from the

16   distribution center or receipts related to sales or

17   both?

18       MR. BENSINGER:  Objection.

19   BY THE WITNESS:

20       A.    Receipts and sales, in my terminology,

21   we have to keep separate.

22           A receipt is an inbound from a vendor or

23   from a distribution center or from another store,

24   which is a no-no I think, but at points in time in

1    the past they had done that.

2    BY MR. SHKOLNIK:

3        Q.    Understand.

4        A.    Or they had buyouts from where we would

5    take over a pharmacy and we would induct a receipt

6    into the system.

7             All of those are considered receipts of

8    product as it's coming in the door.

9        Q.    Okay.  I'm glad you clarified.

10       A.    Not sold.  Not sold, though.  That's

11   different.

12       Q.    I just didn't want anyone to be looking

13   at this thinking when I think of a receipt, I'm

14   like I go buy something, they give me a piece of

15   paper, that's a receipt.  We're talking a different

16   receipt in the sense of ceiling application?

17       A.    Correct.  And we could even use the

18   word, instead of receipts, which seems to be

19   confusing, we could just say received quantity and

20   we would be more proper.

21       Q.    So, what -- the ceiling calculation that

22   you had suggested and which actually was adopted

23   into the ceiling program was a lookback of six

24   weeks of what was received by the specific

```
 1    pharmacy, it's calculated, and it's compared to

 2    similar pharmacies across the chain in terms of

 3    their receipts, their average receipts, for that

 4    molecule?

 5        MR. BENSINGER:  Objection;

 6    mischaracterization.  You can answer.

 7    BY THE WITNESS:

 8        A.    I think you're close to the idea.

 9    BY MR. SHKOLNIK:

10        Q.    I'm trying.

11        A.    It's drawing what a normal store should

12    be receiving in a six-week period of time and then

13    pits that against what's actually happening at that

14    given location.  And if it's too far away from the

15    norm, it becomes that 75% or it becomes over the

16    ceiling, if you would.

17        Q.    But when you're saying, and using your

18    phraseology, the normal store, the normal store

19    would be a store similar to the one we're

20    analyzing, not just store in Little Town in Iowa

21    and store in Manhattan that may have vastly

22    different receipts of -- received -- receivables of

23    the opioids.  You're using similar class stores,

24    are you not?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1        MR. BENSINGER:  Objection; vague.

 2   BY THE WITNESS:

 3        A.    No.  When I -- when I say norm, normal,

 4   I'm lumping them by volume group.  So, for a store

 5   that does 400 prescriptions, 405 would be

 6   different.  500, you would come out with a

 7   different number from the regression line as it

 8   moved up the line or down the line.  Not geography.

 9   I think that's what you were getting at.

10   BY MR. SHKOLNIK:

11        Q.    No.  I was just talking about -- I

12   should have clarified it.

13             So, you're looking at stores by volume.

14   It could be a store in Little Town in Florida that

15   may take receipt of a million pills.  You compare

16   it to a store anywhere, could be a city or a town

17   somewhere else that gets a million pills.  That

18   would be a -- that's the norm.

19        A.    All gets baked into this equation.

20        Q.    Then it says up on the PowerPoint,

21   "Tolerance and ceiling limits are applied to

22   individual orders at the store level."

23             So, now in the 5.5 version, what's being

24   done at Walgreens, and this is sometime in 2013,
```

Highly Confidential - Subject to Further Confidentiality Review

1   there is two different models that are running that

2   would have to -- that an order would be run through

3   before it's distributed, correct?

4       MR. BENSINGER:  Objection; mischaracterization.

5   BY MR. SHKOLNIK:

6       Q.    I'll rephrase it.

7       A.    Thanks.

8       Q.    At this point in 2013 when 5.5 is

9   initiated, when an order is placed, before it's

10  received in the store, there is going to be two

11  analyses applied to the order.  One is the

12  tolerance and one is the ceiling limit.  Am I

13  correct?

14      MR. BENSINGER:  Same objection.  You can

15  answer.

16  BY THE WITNESS:

17      A.    Before the order is placed, before it

18  becomes an order, and if it's a suggested order,

19  which means it's generated by the system, it will

20  take into account the ceiling value and then if

21  the -- and I'm going to use the term "user," but

22  let's say it's the pharmacist or whoever in the

23  pharmacy, operator, alters the suggested quantity

24  or has created a manual order, that would be

```
1    subject then to the tolerance and, again, before it

2    transmits to the ceiling.

3             Does that make sense?

4    BY MR. SHKOLNIK:

5        Q.    Yes, yes.

6        A.    Okay.

7        Q.    So, now as a result of the 5.5, the

8    distribution center never gets an order if it

9    exceeds either tolerance or ceiling or both,

10   irrespective if it's a computer-generated one or a

11   manual one?

12       A.    If an order is -- will not be generated,

13   an automated order, if it's generated, will not

14   exceed the ceiling limit and if the user enters a

15   quantity which pushes the -- that above the

16   ceiling, they get zero.

17            If there was an order for, say, two

18   bottles and that was below the ceiling but the user

19   went and put in three, they get zero.  Never goes

20   out.

21       Q.    That became in effect in 2013?

22       A.    With this.

23       Q.    5.5?

24       MR. BENSINGER:  Objection; misstatement.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1       MR. SHKOLNIK:  I'll rephrase it.

 2  BY MR. SHKOLNIK:

 3       Q.    Did that go into effect as part of 5.5,

 4  whatever date 5.5 became effective?

 5       MR. BENSINGER:  Objection; foundation.

 6  BY THE WITNESS:

 7       A.    That's how the ceiling works.  If the

 8  store forces a quantity -- when I say "force."  If

 9  a store manipulates a suggested quantity or enters

10  a quantity that's above the ceiling, no order is

11  placed.  Zero.  Whether there was one already there

12  for some number of packages and the additional

13  packages the store is requesting brings it over,

14  they get zero.

15  BY MR. SHKOLNIK:

16       Q.    Wasn't there a period of time where the

17  computer would reduce it to either the ceiling or

18  the tolerance level or both and let the order

19  proceed?

20       A.    Ceiling does not work that way.  I'm not

21  the expert on tolerance, but I believe tolerance

22  would have -- there was a time when the tolerance

23  would actually adjust the order and then send it.

24       Q.    So, when you put in the ceiling
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   criteria, that stopped that process from happening?

 2        A.    Yes, sir.

 3        MR. BENSINGER:  Objection; vague.

 4   BY MR. SHKOLNIK:

 5        Q.    Would I be correct in stating that

 6   around the time when you released 5.5 there was a

 7   discussion amongst the people working on this

 8   ceiling task that the company was concerned that

 9   its use of a reduction factor to allow an order to

10   go forward was somehow violative of the DEA's

11   recommendations?

12        MR. BENSINGER:  Objection; foundation.

13             And, Mr. Merritello, I admonish you not

14   to reveal the substance of attorney-client

15   communications to the extent the answer calls for

16   it and to confer with me as counsel to the extent

17   you have any question or concern as to whether in

18   answering the question you might reveal a

19   privileged attorney-client communication.

20             Otherwise you may answer if you have the

21   question in mind.

22   BY MR. SHKOLNIK:

23        Q.    Do you want me to ask it again?  I could

24   read it back.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1      A.    Yes.

 2      MR. BENSINGER:  Could you read it back.

 3           Could you read it back.

 4      MR. SHKOLNIK:  I'm sorry.  I was going to

 5  reask the question, but read it back is fine.

 6                (WHEREUPON, the record was read

 7                 by the reporter as requested.)

 8  BY THE WITNESS:

 9      A.    Was there a concern?  I -- I can't

10  recall.  I'm trying to put my arms around what that

11  means.

12  BY MR. SHKOLNIK:

13      Q.    Okay.  Let me -- were there any

14  discussions among the group that were working on

15  the ceiling project that went along the lines of we

16  have been reducing orders that exceeded tolerance

17  and the DEA has indicated that that's not an

18  appropriate way to handle an over-tolerance order

19  and that now with respect to ceilings, we're going

20  to stop that?

21      MR. BENSINGER:  Again, Mr. Merritello, we

22  should confer before you answer if to any extent

23  your answer is eliciting an attorney-client

24  communication.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   BY THE WITNESS:

 2       A.    I guess I don't understand, I'm sorry,

 3   the question.  I don't know.

 4   BY MR. SHKOLNIK:

 5       Q.    If you don't understand, I have to retry

 6   it until I get for you to understand.

 7             Did you become aware at any point in

 8   time, and I don't mean with conversations with

 9   counsel in prep for a deposition, did you,

10   Mr. Merritello, back when you were working on the

11   project, the ceiling project, did you become aware

12   that the DEA had indicated to Walgreens and other

13   pharmacy distributors that the reduction of a

14   potentially suspicious order to a lower amount to

15   avoid hitting ceiling, that that was an

16   inappropriate practice?

17       MR. BENSINGER:  So, Mr. Merritello, my

18   admonition is not limited to attorney-client

19   communications in preparing for your deposition

20   today.

21             If at the time in order to answer the

22   pending question you have some doubt in your mind

23   as to whether in answering you'd be revealing an

24   attorney-client communication that took place back
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   at the time, I need to confer with you before you

 2   answer and we'll go off the record.  Otherwise you

 3   can go ahead and answer.

 4   BY THE WITNESS:

 5        A.   I guess -- I'm trying to figure.  I

 6   can't even guess at what you're -- at what I'm

 7   being asked.  There is -- your --

 8   BY MR. SHKOLNIK:

 9        Q.   I don't want you to guess.

10        A.   Okay.

11        Q.   I'll rephrase.  It's easier.

12             You were aware that prior to the ceiling

13   being implemented under 5.5, one of the practices

14   at Walgreens was if an order was placed, whether it

15   was an electronic or by a pharmacist manually, if

16   the order would have exceeded the tolerance, there

17   was an automatic reduction of the order to a level

18   that was below the tolerance and allow the order to

19   go through?  You were aware of that, correct?

20        MR. BENSINGER:  Objection; foundation.

21   BY THE WITNESS:

22        A.   Yeah, I'm aware of how tolerance works,

23   and there was a period of time when they had the

24   tolerance program without the ceiling program, that
```

1    there was an adjustment made to that.

2    BY MR. SHKOLNIK:

3         Q.    Did you become aware when you got on to

4    the team working on ceiling that Walgreens had been

5    advised by DEA that the practice of making the

6    adjustment, the reduction down, was an

7    inappropriate practice?

8         MR. BENSINGER:  Objection; vague.

9    BY MR. SHKOLNIK:

10        Q.    From the DEA's perspective.

11        MR. BENSINGER:  Objection; vague.

12   BY THE WITNESS:

13        A.    Again, the ceiling doesn't allow the

14   order to go.

15   BY MR. SHKOLNIK:

16        Q.    I understand.

17        A.    It vaporizes.  It's just non- -- it's

18   non-existent.

19        Q.    But I'm talking about before you

20   implemented the ceiling.  Did you become aware that

21   the DEA had suggested to Walgreen, DEA

22   representatives had suggested to Walgreens, the

23   practice of adjusting down as was being done with

24   the tolerance program was an inappropriate

Highly Confidential - Subject to Further Confidentiality Review

1  practice?

2      A.    You're asking me that at the time that

3  we were putting together this program was I aware

4  of that?

5      Q.    Yes.

6      A.    I'm going to have to tell you I don't

7  recall.  I may have heard discussion, but...

8      Q.    Okay.  Would it be fair to say it was

9  not one of the program requirements that you were

10  charged with, that we have got to get rid of the

11  adjustment down component when we implement

12  ceiling?

13      A.    Ceiling doesn't work that way.  We

14  just -- this is it and no more.

15      Q.    I understand.

16      A.    And that was a -- that was also not a

17  very popular answer to the group.  They didn't like

18  the idea that, well, what if we need to get it?

19  No.  You got to go to the integrity team now.

20      Q.    If someone had -- I'll withdraw the

21  question.

22      MR. SHKOLNIK:  Let's take our break now.  We

23  have been going at this a while.  Thank you so

24  much.

```
 1        THE VIDEOGRAPHER:  We are off the record at

 2   10:26 a.m.

 3                 (WHEREUPON, a recess was had

 4                  from 10:26 to 10:37 a.m.)

 5        THE VIDEOGRAPHER:  We are back on the record

 6   at 10:37 a.m.

 7                 (WHEREUPON, a certain document was

 8                  marked Walgreens-Merritello Exhibit

 9                  No. 2:  Excerpts of Personnel File,

10                  John Merritello; not Bates

11                  stamped.)

12   BY MR. SHKOLNIK:

13        Q.    Mr. Merritello, I'm going to hand you

14   what we're marking as Exhibit 2.  It's a copy of

15   excerpts of your personnel file.  Really not going

16   to go into a lot of it.  If you could --

17        MR. SHKOLNIK:  And there's no Bates -- for the

18   people above, there is no Bates number on this

19   because it was just produced.  It hasn't been

20   processed.  But it is the personnel file.

21   BY MR. SHKOLNIK:

22        Q.    If you could turn to page -- in the

23   first section on the bottom it says page 6 of 18,

24   because there is two segments where you'll have
```

```
 1    those numberings.  Maybe not.  Yeah.  The first

 2    section is where I'm going.  6 of 18.

 3              And from looking at this document, which

 4    is highly redacted, at the bottom of the page, it

 5    says "Annual Performance Review (Fiscal Year 13) -

 6    Corporate, John Merritello, Jr."

 7              Have you had an opportunity to see this

 8    document before?

 9         A.    It looks a little familiar.

10         Q.    As part of the yearly reviews, is it

11    common at Walgreens that you would put in your

12    assessment of what you think you accomplished and

13    then your immediate supervisor here, Denman Murray,

14    would put in his evaluation and that's what your

15    yearly review would include?

16         A.    Yes.

17         Q.    In -- on this page, page 8 (sic) of 18,

18    one section is "SOM/Tool Kit" up on the top.  And

19    then it says, "v5 implemented Q2, v6 and 7

20    implemented Q4."

21              Just so we're talking the same language,

22    when they say "v5 implemented Q2," what does that

23    mean?

24         A.    I'm guessing that that means version 5.
```

Highly Confidential - Subject to Further Confidentiality Review

```
1        Q.     Of the SOM?

2        A.     Of the SOM.

3        Q.     And that's what we were just talking

4   about, the ceiling component?  Am I correct?

5        A.     Yep.

6        Q.     And then "version 6/7 implemented Q4,"

7   we can go into later what 6 and 7 were, but that

8   just means based upon your -- what you're writing

9   here in your personnel file that both 5, 6 -- I'm

10  sorry.  Not both.  5, 6 and 7 were all implemented

11  fiscal year 2013 which began on September 1, 2012

12  and ended August 3, 2013?

13       A.     I believe that's correct.

14       Q.     And when it says Q2, that would mean v5

15  was implemented sometime in the winter of 2013,

16  correct?

17       A.     That makes sense.

18       Q.     The first quarter being September to

19  December.  Quarter 2, January to, say, March or so,

20  correct?
```

REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

REDACTED

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

# REDACTED

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED

Highly Confidential - Subject to Further Confidentiality Review

# REDACTED