1          IN THE UNITED STATES DISTRICT COURT
2           FOR THE NORTHERN DISTRICT OF OHIO
3                 EASTERN DIVISION
4                    -  -  -
5    IN RE:  NATIONAL     :  MDL NO. 2804
     PRESCRIPTION OPIATE  :
6    LITIGATION           :
     ----------------------------------------
7                         :  CASE NO.
     THIS DOCUMENT        :  1:17-MD-2804
8    RELATES TO ALL CASES:
                          :  Hon. Dan A.
9                         :  Polster
10                   -  -  -

           Thursday February 7, 2019
11                   -  -  -
12   HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
             CONFIDENTIALITY REVIEW
13
                     -  -  -
14

               Videotaped deposition of AL
15   PAONESSA, taken pursuant to notice, was
     held at Buffalo Marriott Harbor Center,
16   95 Main Street, Buffalo, New York 14203,
     beginning at 10:05 a.m., on the above date,
17   before Amanda Dee Maslynsky-Miller, a
     Certified Realtime Reporter.
18
                     -  -  -
19
20
21
22          GOLKOW LITIGATION SERVICES
        877.370.3377 ph | 917.591.5672 fax
23             deps@golkow.com
24

```
 1    APPEARANCES:
 2
 3         WEITZ & LUXENBERG, P.C.
           BY: PAUL J. PENNOCK, ESQUIRE
 4         BURTON KING, PARALEGAL
           BEN TRUAX, PARALEGAL
 5         CONOR KENNEDY, PARALEGAL
           700 Broadway
 6         New York, New York 10003
           (212) 558-5500
 7         Ppennock@weitzlux.com
           Representing the Plaintiffs
 8
 9
10         FOLEY LARDNER LLP
           BY:  KATY E. KOSKI, ESQUIRE
11         BY:  GRAHAM D. WELCH, ESQUIRE
           111 Huntington Avenue
12         Suite 2500
           Boston, Massachusetts 02199
13         Kkoski@foley.com
           Gwelch@foley.com
14         Representing the Defendant,
           Anda Pharmaceuticals, Inc.
15
16
     VIA TELEPHONE/LIVESTREAM:
17
18         ARNOLD & PORTER KAYE SCHOLER LLP
           BY:  DAVID KOUBA, ESQUIRE
19         601 Massachusetts Ave, NW
           Washington, DC 20001
20         (202) 942-5000
           david.kouba@arnoldporter.com
21         Representing the Defendant,
           Endo Pharmaceuticals
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES: (Continued)
 2
      VIA TELEPHONE/LIVESTREAM:
 3
 4          WEITZ & LUXENBERG, P.C.
            BY:  TERESA CURTIN, ESQUIRE
 5          700 Broadway
            New York, New York 10003
 6          (212) 558-5500
            Tcurtin@weitzlux.com
 7          Representing the Plaintiffs
 8
 9
10          JONES DAY
            BY: MEREDITH C. KINCAID, ESQUIRE
11          1420 Peachtree Street, N.E.
            Suite 800
12          Atlanta, Georgia 30309
            (404) 521-3939
13          Mkincaid@jonesday.com
            Representing the Defendant,
14          Walmart
15
16
17          COVINGTON & BURLING LLP
            BY:  CLAYTON BAILEY, ESQUIRE
18          850 Tenth Street, NW
            Suite 856N
19          Washington, DC 20001
            (202) 662-5000
20          cbailey@cov.com
            Representing the Defendant,
21          McKesson Corporation
22
23
24
```

```
 1    APPEARANCE: (Continued)
 2    VIA TELEPHONE/LIVESTREAM:
 3
 4         JACKSON KELLY PLLC
           BY:  SANDRA K. ZERRUSEN, ESQUIRE
 5         50 South Main Street
           Suite 201
 6         Akron, Ohio 44308
           (330) 252-9060
 7         Skzerrusen@jacksonkelly.com
           Representing the Defendant,
 8         AmerisourceBergen Corporation
 9
10
11         CLARK MICHIE LLP
           BY:  CHRISTOPHER J. MICHIE, ESQUIRE
12         220 Alexander Street
           Princeton, New Jersey 08540
13         (609) 423-2143
           Chris.michie@clarkmichie.com
14         Representing the Defendant,
           Pernix Therapeutics Holdings, Inc.
15
16
17    ALSO PRESENT:
      Dan Lawlor, Videographer
18
19
20
21
22
23
24
```

```
 1                    -   -   -
 2               I N D E X
 3                    -   -   -
 4

    Testimony of: AL PAONESSA
 5
            By Mr. Pennock              13, 218
 6          By Ms. Koski                210
 7

 8
                    -   -   -
 9
               E X H I B I T S
10
                    -   -   -
11
    NO.             DESCRIPTION              PAGE
12
    Anda-Paonessa
13  Exhibit-1    Resume, Albert R.
                 Paonessa, III             15
14
    Anda-Paonessa
15  Exhibit-2    Anda_Opioids_MDL_
                 0000618121-123            25
16
    Anda-Paonessa
17  Exhibit-3    Anda_Opioids_MDL_
                 0000078211-212            35
18
    Anda-Paonessa
19  Exhibit-4    Anda_Opioids_MDL_
                 0000276293-299            49
20
    Anda-Paonessa
21  Exhibit-5    Anda_Opioids_MDL_
                 0000282942                54
22
    Anda-Paonessa
23  Exhibit-6    Anda_Opioids_MDL_
                 0000273585-586            58
24
```

```
 1                      -   -   -
 2                 E X H I B I T S
 3                      -   -   -
 4   NO.            DESCRIPTION              PAGE
 5   Anda-Paonessa
     Exhibit-7    Anda_Opioids_MDL_
 6                0000258573                66
 7   Anda-Paonessa
     Exhibit-8    Anda_Opioids_MDL_
 8                0000258572                71
 9
     Anda-Paonessa
10   Exhibit-9    Anda_Opioids_MDL_
                  0000091168-176            77
11
     Anda-Paonessa
12   Exhibit-10   PBS.org; Understanding the
                  Opioid Epidemic, Michael?s
13                Story                     86
14   Anda-Paonessa
     Exhibit-11   Allergan_MDL_
15                01030377-3738             87
16   Anda-Paonessa
     Exhibit-12   Anda_Opioids_MDL_
17                0000611326-327            90
18   Anda-Paonessa
     Exhibit-13   Anda_Opioids_MDL_
19                0000108236-243            95
20   Anda-Paonessa
     Exhibit-14   Anda_Opioids_MDL_
21                0000109074-073           105
22   Anda-Paonessa
     Exhibit-15   Anda; Back in Stock and
23                Last Chance Flyer        108
24
```

```
 1                    -   -   -
 2                E X H I B I T S
 3                    -   -   -
 4   NO.           DESCRIPTION              PAGE
 5   Anda-Paonessa
     Exhibit-16   Sales Flyer; Are you
 6                Promoting all of these   112
 7   Anda-Paonessa
     Exhibit-17   Anda; Oxycodone 5% Off   115
 8
     Anda-Paonessa
 9   Exhibit-18   Anda_Opioids_MDL_
                  0000610161               118
10
     Anda-Paonessa
11   Exhibit-19   Anda_Opioids_MDL_
                  0000610178-184           121
12
     Anda-Paonessa
13   Exhibit-20   Anda_Opioids_MDL_
                  0000612614               128
14
     Anda-Paonessa
15   Exhibit-21   Anda_Opioids_MDL_
                  0000278594-615           135
16
     Anda-Paonessa
17   Exhibit-22   US Department of Justice;
                  11/3/16; United States
18                Reaches $900,000 Settlement
                  With Drug City Pharmacy and
19                Its Former Owner for
                  Unlawful Distribution of
20                Controlled Substances    146
21   Anda-Paonessa
     Exhibit-23   Anda_Opioids_MDL_
22                0000078404-405           150
23   Anda-Paonessa
     Exhibit-24   Anda_Opioids_MDL_
24                0000078400-401           151
```

```
 1                    -   -   -
 2                 E X H I B I T S
 3                    -   -   -
 4    NO.             DESCRIPTION                PAGE
 5    Anda-Paonessa
      Exhibit-25    Anda_Opioids_MDL_
 6                  0000282932                   157
 7    Anda-Paonessa
      Exhibit-26    Anda_Opioids_MDL_
 8                  0000274716-717;
                    With Attachment              164
 9
      Anda-Paonessa
10    Exhibit-27    Anda_Opioids_MDL_
                    0000274587-589               166
11
      Anda-Paonessa
12    Exhibit-28    Anda_Opioids_MDL_
                    0000272213-215               169
13
      Anda-Paonessa
14    Exhibit-29    Anda_Opioids_MDL_
                    00002722520-521              172
15
      Anda-Paonessa
16    Exhibit-30    Anda_Opioids_MDL_
                    0000272517-519               176
17
      Anda-Paonessa
18    Exhibit-31    Anda_Opioids_MDL_
                    0000090857-858               178
19
      Anda-Paonessa
20    Exhibit-32    Anda_Opioids_MDL_
                    0000090808                   178
21
      Anda-Paonessa
22    Exhibit-33    Anda_Opioids_MDL_
                    0000090805-807               179
23
24
```

```
 1                      -  -  -
 2                  E X H I B I T S
 3                      -  -  -
 4   NO.            DESCRIPTION              PAGE
 5   Anda-Paonessa
     Exhibit-34    United States District
 6                 Court; Search and Seizure
                   Warrant                   186
 7
     Anda-Paonessa
 8   Exhibit-35    Anda_Opioids_MDL_
                   0000275048                192
 9
     Anda-Paonessa
10   Exhibit-36    Anda_Opioids_MDL_
                   0000284363-364            193
11
     Anda-Paonessa
12   Exhibit-37    Skipped
13   Anda-Paonessa
     Exhibit-38    Anda_Opioids_MDL_
14                 0000273292-293            193
15   Anda-Paonessa
     Exhibit-39    Anda_Opioids_MDL_
16                 0000273518                194
17   Anda-Paonessa
     Exhibit-40    Anda_Opioids_MDL_
18                 0000287964                194
19   Anda-Paonessa
     Exhibit-41    Anda_Opioids_MDL_
20                 0000273617                195
21   Anda-Paonessa
     Exhibit-42    Anda_Opioids_MDL_
22                 0000273762                195
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                          -   -   -

 2                      E X H I B I T S

 3                          -   -   -

 4   NO.              DESCRIPTION                   PAGE

 5   Anda-Paonessa

     Exhibit-43    Anda_Opioids_MDL_

 6                  0000283018-019                  195

 7   Anda-Paonessa

     Exhibit-44    Anda_Opioids_MDL_

 8                  0000274800                      196

 9   Anda-Paonessa

     Exhibit-45    Anda_Opioids_MDL_

10                  0000272207-208                  214

11   Anda-Paonessa

     Exhibit-46    Anda_Opioid_MDL_Tx-data_

12                  CUY-SUM-OH_00001;

                    With Attachment                 218s

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                         -   -   -

 2              DEPOSITION SUPPORT INDEX

 3                         -   -   -

 4

 5   Direction to Witness Not to Answer

 6   Page     Line   Page  Line      Page  Line

 7   190      12

 8

 9

10   Request for Production of Documents

11   Page  Line     Page  Line       Page  Line

12   None

13

14

15   Stipulations

16   Page  Line     Page  Line       Page  Line

17   12       1

18

19

20   Question Marked

21   Page  Line     Page  Line       Page  Line

22   None

23

24
```

```
 1                 -   -   -
 2              (It is hereby stipulated and
 3          agreed by and among counsel that
 4          sealing, filing and certification
 5          are waived; and that all
 6          objections, except as to the form
 7          of the question, will be reserved
 8          until the time of trial.)
 9                 -   -   -
10              VIDEO TECHNICIAN:  We are
11          now on the record.  My name is Dan
12          Lawlor, I'm a videographer with
13          Golkow Litigation Services.
14          Today's date is February 7th,
15          2019, and the time is 10:05 a.m.
16              This video deposition is
17          being held in Buffalo, New York,
18          in the matter of National
19          Prescription Opiate Litigation,
20          MDL Number 2804.
21              The deponent is Al
22          Paonessa.  Counsel will be noted
23          on the stenographic record.  The
24          court reporter is Amanda Miller
```

1          and will now swear in the witness.

2                        -   -   -

3              AL PAONESSA, after having

4          been duly sworn, was examined and

5          testified as follows:

6                        -   -   -

7              EXAMINATION

8                        -   -   -

9     BY MR. PENNOCK:

10         Q.    Mr. Paonessa, my name is

11    Paul Pennock.  I'm going to have quite a

12    few questions for you today.

13              Can we have an agreement

14    that if at any time you don't understand

15    my questions, you'll let me know?

16         A.    Yes.

17         Q.    Otherwise, I'm going to

18    assume that you understood them, okay?

19         A.    Okay.

20         Q.    You do understand we're

21    relying upon the truth of your answers

22    here today?

23         A.    Yes.

24         Q.    As I understand it, you were

Highly Confidential - Subject to Further Confidentiality Review

1    president of a company known as Anda from

2    2005 to 2015; is that right?

3          A.    Correct.

4          Q.    And you worked at Anda, as

5    well as a predecessor company, for some

6    years before that; is that correct?

7          A.    Yes.

8          Q.    So before you became

9    president, you worked in sales for about

10   four years?

11         A.    Two years in sales.

12         Q.    Two years in sales.

13               And before that, you worked

14   in IT?

15         A.    Yes.  Two years.

16         Q.    And the work that you did

17   throughout that entire time period

18   involved the distribution of

19   pharmaceuticals; is that right?

20         A.    Yes.

21         Q.    During that time period, and

22   I'm going to focus right now from 2005 to

23   2015, during that time period, some of

24   the pharmaceuticals that your company was

Highly Confidential - Subject to Further Confidentiality Review

```
 1    responsible for distributing were

 2    opioids; is that correct?

 3         A.    Correct.

 4                   -  -  -

 5              (Whereupon, Anda-Paonessa

 6         Exhibit-1, Resume, Albert R.

 7         Paonessa, III, was marked for

 8         identification.)

 9                   -  -  -

10    BY MR. PENNOCK:

11         Q.    I marked as Exhibit-1 to

12    your deposition what I understand to be

13    your resume.

14              MR. PENNOCK:  Do you need a

15         copy of that?

16              Do you need a copy?

17              MS. KOSKI:  Yes.

18    BY MR. PENNOCK:

19         Q.    Now, you currently work for

20    a company known as KeySource?

21         A.    Yes.

22         Q.    And they also distribute

23    pharmaceuticals?

24         A.    Yes.
```

1    Q.    Did they distribute opioids?

2    A.    No.

3          MS. KOSKI:  Object to form.

4  BY MR. PENNOCK:

5    Q.    Did they, at one time,

6  distribute opioids?

7    A.    Yes.

8    Q.    Back when you were at Anda,

9  were they sometimes a customer of yours?

10   A.    Not that I know of.

11   Q.    I want to turn to the last

12 page of your resume, because I had a

13 question about something on it.

14         So, first of all, you

15 indicate here that your strongest belief

16 is that you always do what is right.

17         Do you see that statement?

18   A.    Yes.

19   Q.    Is that something you wrote?

20   A.    Yes.

21   Q.    Is that a belief that you've

22 held for a long time, or just when you

23 prepared this resume?

24   A.    Always.

Highly Confidential - Subject to Further Confidentiality Review

1    Q.    A long time?

2    A.    Yes.

3    Q.    You also have something

4  called a link to a Myers-Briggs

5  Interpretive Report.

6          Do you see that?

7    A.    Yes.

8    Q.    Myers-Briggs, this is some

9  kind of personality analysis; is that

10  correct?

11          MS. KOSKI:  Object to form.

12          THE WITNESS:  I believe.

13    I'm not sure.  I believe so.

14  BY MR. PENNOCK:

15    Q.    Did somebody else put this

16  on your resume, or did you put this on?

17    A.    It was suggested by the

18  person that created the resume for me.

19    Q.    That you took this

20  personality test, right?

21    A.    No.

22          MS. KOSKI:  Object to form.

23          You can answer.

24          THE WITNESS:  This was

Highly Confidential - Subject to Further Confidentiality Review

```
1              given -- this test was done while

2              we were owned by Actavis, which

3              was the parent company of Anda.

4                   They gave the test to the

5              executives, and I took it and I

6              got the report from it.  And this

7              gentleman who did my profile asked

8              me if I had any of these, I said

9              yes.  And he thought it was good

10             to put it into the resume, or at

11             least the link to the document.

12   BY MR. PENNOCK:

13             Q.    Did you object to putting

14   this on?

15             A.    No.

16             Q.    So it indicates that your

17   personality, as determined by this

18   Myers-Briggs test, includes -- the

19   summary includes extraversion, right?

20                   That's what it found?

21             A.    Yes.

22             Q.    I mean, you sent this resume

23   to people, haven't you?

24             A.    Yes.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              Q.    So when you sent it to them,
 2   this was on there, right?
 3              A.    Correct.
 4              Q.    And it also indicates that
 5   you have intuition, right?
 6              A.    Yes.
 7              Q.    And that your thinking and
 8   perceiving, that's your personality type,
 9   ENTP, right?
10              A.    Yes.
11              Q.    And you also wrote that
12   ENTPs tend to be innovative, strategic
13   thinkers, versatile, analytical and
14   entrepreneurial.
15                    Do you see that?
16              A.    It's written there.  I did
17   not write that.  That was -- comes from
18   the Myers-Briggs description of what an
19   ENTP is.
20              Q.    Again, but this is your
21   resume, you put that on there to declare
22   yourself to have been found to be these
23   things by the Myers-Briggs test, right?
24              A.    Yes.
```

```
 1              Q.    Let me back up a little bit.

 2              You --

 3              MS. KOSKI:  I'm sorry, just

 4        for one second.  You didn't mark

 5        the exhibit, or if you did, you

 6        might have the one with the label.

 7              MR. PENNOCK:  I have it

 8        right here.

 9              MS. KOSKI:  The one he has

10        doesn't have a label.  Did you

11        want him to be looking at the

12        labeled one, or do you want to

13        keep those?

14              MR. PENNOCK:  Whatever you

15        prefer.  It doesn't matter to me.

16        I just realized I was writing on

17        the marked one.

18              MS. KOSKI:  I saw you

19        underlining it too.  But you might

20        want to be using the marked one.

21        I'm just trying to figure it out.

22    BY MR. PENNOCK:

23              Q.    When you were at Anda, you

24        would sell -- well, let me back up.
```

1          What is oxy?

2          MS. KOSKI:  Object to form.

3          THE WITNESS:  A

4     pharmaceutical drug.

5  BY MR. PENNOCK:

6          Q.    You've used that term

7  before, right, oxy?

8          A.    Oxy?  Sure.  Yes.

9          Q.    What does it refer to?

10         A.    OxyContin.

11         Q.    Is that it?  Does it refer

12  to anything other than OxyContin?

13         A.    Not that I know of.

14         Q.    So when you were at Anda --

15  by the way, you were often referred to as

16  AL3; is that right?

17         A.    Yes.

18         Q.    Because you're Albert

19  Paonessa, III, correct?

20         A.    Right.

21         Q.    So when you were at Anda, at

22  one point in time, at least during 2008,

23  you were selling about $7.5 million a

24  quarter in oxy; isn't that right?

Highly Confidential - Subject to Further Confidentiality Review

1          A.     I'm not sure.

2          Q.     So if you were selling $7.5

3    million a quarter, that would be about

4    $30 million in oxy a year, right?

5                 MS. KOSKI:  Object to form.

6                 THE WITNESS:  Math-wise,

7          yes.

8    BY MR. PENNOCK:

9          Q.     And, by the way, for the ten

10   years that you were president at Anda,

11   how much did you earn, in total?

12                MS. KOSKI:  Object to form.

13                THE WITNESS:  I don't know.

14   BY MR. PENNOCK:

15         Q.     Do you have an estimate for

16   how much you earned?

17         A.     For the ten years?

18                MS. KOSKI:  Are you asking

19         him personally or the company?

20                MR. PENNOCK:  I'm asking him

21         how much he earned for the ten

22         years he was at Anda.

23                MS. KOSKI:  Personally?

24                THE WITNESS:  I can try to

1    go year by year and add it up in

2    my head, but I don't really know

3    how much it was.  A lot of it was

4    in stock, too.  So that changed in

5    value over time.

6          My salary was around

7    $400,000.  And then I got bonuses

8    of up to 50 to 75 percent of that.

9    So on a yearly basis, I would get

10    somewhere around $650,000.

11          And then I got stock that

12    vested over four years.  And I

13    don't know what the value of that

14    is.  But the company itself grew

15    quickly and the stock appreciated,

16    too.  So it was Actavis stock, it

17    wasn't Anda stock.

18    BY MR. PENNOCK:

19          Q.    So taking your income,

20    including bonuses, we can rough it out

21    that as -- ten years as president, you

22    made somewhere in the neighborhood of

23    $6.5 million?

24          A.    Possibly.

1    Q.    And in addition to that, you

2    received stock?

3    A.    Yes.

4    Q.    What were your bonuses based

5    on?

6    A.    Bonuses were based -- 40

7    percent was based on the contribution or

8    what Anda did for the company, and then

9    60 percent was based on what Actavis did

10   as a company.

11   Q.    Did you meet with lawyers

12   regarding your deposition here today to

13   prepare?

14   A.    Yes.

15   Q.    How long did you meet?

16   A.    Yesterday, probably three,

17   four hours.

18   Q.    Did you meet with any --

19   anybody other than a lawyer to prepare

20   you for presentation at this deposition?

21   A.    No.

22   MR. PENNOCK:  I'll mark this

23   as Exhibit-2.

24   -   -   -

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  (Whereupon, Anda-Paonessa

 2          Exhibit-2,

 3          Anda_Opioids_MDL_0000618121-123,

 4          was marked for identification.)

 5                     -   -   -

 6                  THE WITNESS:   Okay.

 7   BY MR. PENNOCK:

 8          Q.    Sir, you've had an

 9   opportunity to read Exhibit-2; is that

10   right?

11          A.    Yes.
```

Highly Confidential - Subject to Further Confidentiality Review

15          Q.     Mallinckrodt was one of your

16  competitors?

17          A.     No.

18          Q.     Who is Mallinckrodt?

19          A.     They are a manufacturer of

20  generic pharmaceuticals.

21          Q.     And you didn't consider them

22  to be one of your competitors at that

23  time?

24          A.     No.

Highly Confidential - Subject to Further Confidentiality Review

1    Q.    They didn't distribute in

2  any way?

3    A.    I'm not sure what they

4  distributed.  They sold to other

5  distributors and wholesalers like myself.

6

7

8

9

10

11

12    Q.    So Kinray was a distributor?

13    A.    Wholesaler/distributor, yes.

14  They were a full-line wholesaler.

15    Q.    What does that mean?

16    A.    They sold brand drugs,

17  generic drugs, OTCs, Kleenex, things like

18  that.  So they did the front end and the

19  back end of a pharmacy.

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22        Q.    At some point in the summer
23   of 2007, you formed an agreement with the
24   DEA that you would not sell more than
```

1    5,000 units of a particular drug to

2    customers of yours; is that correct?

3              MS. KOSKI:  Object to form.

4              THE WITNESS:  No.

5    BY MR. PENNOCK:

6         Q.    You had an agreement that

7    you would not sell more than 5,000 units

8    of a drug to customers, more than that in

9    one month, right?

10             MS. KOSKI:  Object to form.

11             THE WITNESS:  No.

12   BY MR. PENNOCK:

13        Q.    So what agreement did you

14   form, in your mind, in 2007?

15             MS. KOSKI:  Object to form.

16             Go ahead.

17             THE WITNESS:  There was

18        never an agreement.  We met with

19        the DEA, and the DEA gave us a

20        guideline that nobody should

21        really have more than 5,000

22        tablets at any time.

23             They didn't define -- at

24        that point in time, they didn't

Highly Confidential - Subject to Further Confidentiality Review

1           define if it was an opioid or the

2           type of chemical it was.  They

3           just basically said no pharmacy

4           should have more than 5,000,

5           unless there's reasons for it, and

6           we would have to understand why we

7           would give them more than 5,000.

8                But as a rule of thumb, that

9           they felt that we should not -- a

10          common -- based on the industry, a

11          pharmacy should not, probably,

12          sell more than 5,000 tablets at

13          any time, unless there was a

14          reason for it, that we would have

15          to investigate.

16     BY MR. PENNOCK:

17          Q.   Well, after having this

18     discussion with the DEA -- by the way,

19     you were personally part of that

20     discussion, weren't you?

21          A.   Which discussion was it?  We

22     spoke with them a lot.

23          Q.   Whatever discussion you had

24     where they provided you with this

1    guideline that you should probably not

2    sell more than 5,000 tablets at any time,

3    unless there was a reason for it.

4         A.    I don't recall the exact

5    time that that conversation happened, but

6    you're in the right time frame.  It was

7    somewhere in there.

8              We spoke with them a lot.

9    The DEA -- the local DEA was literally

10   across the street from the Anda office.

11   We communicated all the time, a lot.

12             But I don't remember that

13   exact conversation.  But at that point,

14   it was 5,000 is what they discussed it

15   would be, a rule of thumb for us to look

16   at.

17        Q.    And you took that rule of

18   thumb very seriously, didn't you?

19        A.    Yes.

20        Q.    And you applied that to your

21   practice, in terms of sales; isn't that

22   right?

23        A.    Yes.

24        Q.    And the reason that you

1   applied it to your practice, in terms of

2   sales, was because you understood that

3   there was -- there appeared to be a

4   problem regarding the diversion of

5   opioids, right?

6           A.    Yes.

7           Q.    And at that time, was that a

8   concern of yours, to take steps to avoid

9   the diversion of opioids?

10          A.    Yes.

11          Q.    Now, you mentioned that if

12  some customer wanted more than 5,000,

13  that, then, you would investigate, true?

14          A.    Yes.

15          Q.    And what was the nature of

16  that investigation?

17          A.    If we are talking about the

18  2006, '07 time frame, then they would

19  have a questionnaire.  We understand who

20  they sold to.  We would look at exactly

21  what we sold to them, too, ourselves, and

22  look at what their mix was.

23              Then we would try to also

24  get a dispensing record from them of what

1    they're dispensing so we could find out

2    where else they're buying opioids from.

3    Because the DEA would not share that

4    information with us.

5         Q.    When you -- if you received

6    an order for, let's say, 10,000 units,

7    would you report that to the DEA if you

8    didn't agree to fulfill that order?

9              MS. KOSKI:  Object to form.

10             THE WITNESS:  We did -- our

11             goal was to do the due diligence

12             on the front end to not even allow

13             a person to place an order for

14             that.

15             So they knew what their --

16             their limits that they could

17             possibly have.  If they tried to

18             place an order, which they didn't,

19             if they tried to place an order,

20             we would have identified the DEA

21             that they wanted more than the

22             5,000 limit.

23             But if they -- but we would

24             try to proactively not allow --

```
 1          proactively tell our customers
 2          that this is all you're going to
 3          get.  And if there's a reason that
 4          your facility needs more than
 5          5,000, then you're going to have
 6          to, you know, give us more due
 7          diligence in order for us to
 8          approve that.
 9                     -  -  -
10          (Whereupon, Anda-Paonessa
11          Exhibit-3,
12          Anda_Opioids_MDL_0000078211-212,
13          was marked for identification.)
14                     -  -  -
15   BY MR. PENNOCK:
16          Q.    I'm going to show you what's
17   been marked as Exhibit-3 to your
18   deposition.
19               MR. PENNOCK:  For the
20          record, I did not identify it,
21          Exhibit-2 was Anda_Opioids_MDL,
22          Bates number 0000618121.
23               Exhibit-3 is same prefix,
24          0000078211.
```

1            THE WITNESS:   Okay.

2    BY MR. PENNOCK:

3

4

5

6

7            Q.    And Michael Cochrane, he was

8    somebody that worked for you, right?

9            A.    Yes.

10           Q.    And he was involved in -- or

11   he was responsible for compliance; is

12   that right?

13           A.    Yes.

14           Q.    And Patrick Cochrane also

15   worked for you, right?

16           A.    Yes.

17           Q.    And he also -- you consulted

18   him with respect to compliance as well on

19   occasion, right?

20           A.    Yes.

21

22

23

24



Highly Confidential - Subject to Further Confidentiality Review



Case: 1:17-md-02804-DAP Doc #: 2173-52 Filed: 08/12/19 39 of 226. PageID #: 316678.

Highly Confidential - Subject to Further Confidentiality Review







Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11          MR. PENNOCK:  Oh, I didn't

12     pick up on that.  I apologize.

13     Let me -- let me check that.

14  BY MR. PENNOCK:

15     Q.    Who is George Fields?

16     A.    George Fields, in 2007,

17  would have been director of sales.

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12

13        Q.    So if a customer placed an

14   order -- withdrawn.

15             If a customer requested to

16   place an order with you that was

17   increasing their limits and you declined

18   it, then you would report it to the DEA,

19   right?

20             MS. KOSKI:  Object to form.

21             THE WITNESS:  Well, it would

22        not be an order.  They would

23        request for a limit increase.

24             If they wanted a limit

1    increase, we would do the due

2    diligence on the customer.  So

3    this was always a contention with

4    the DEA, that we said, we won't

5    allow people to order, we've put

6    systems in, they can't order more

7    than they're allowed to have.

8         And we trained them, if you

9    want more, you need to give us

10   information.  And the

11   information -- you're talking in

12   2007 and '08.  It changed again in

13   2010, '12.  It changed again,

14   probably, before I left Anda.

15        So it was constantly us

16   trying to figure out exactly --

17   you know, part of my opinion of

18   the DEA was they wanted us to work

19   extra hard on this, and I agree

20   with that opinion of theirs, but

21   they never gave us really solid

22   guidelines of what to go on and

23   what to do.

24        So we would do everything we

Highly Confidential - Subject to Further Confidentiality Review

1              can to try to figure out, you

2              know, what this -- if this

3              customer was a good customer or a

4              bad customer when it came to

5              opioids.

6                    So, most likely, an order

7              never came through for -- from an

8              independent pharmacy, because we

9              didn't allow them to order and we

10             either turned them over to the DEA

11             or we gave them the increase.

12      BY MR. PENNOCK:

13      [REDACTED]

Highly Confidential - Subject to Further Confidentiality Review

1    BY MR. PENNOCK:

2         Q.    Okay.  Let me see if I can

3    understand this, though.

4              You mentioned several times

5    the -- looking at and not agreeing to

6    fulfill an order from an independent

7    pharmacy.

8              But I -- is it correct that

9    you had a different standard for

10   distributors?

11             MS. KOSKI:  Object to form.

12             THE WITNESS:  Possibly.  I

13       don't recall.

14   BY MR. PENNOCK:

15        Q.    You would agree with me that

16   an order -- withdrawn.

17             You would agree, wouldn't

18   you, that selling 75,000 units of an

19   opioid to a pharmacy per month was a very

20   high order?

21             MS. KOSKI:  Object to form.

22             THE WITNESS:  It would be

23       unique.

24   BY MR. PENNOCK:

Highly Confidential - Subject to Further Confidentiality Review

1    Q.    Have you seen documents

2  relating to Lake Erie Medical?

3    A.    Yes.

4    Q.    Do you know who Lake Erie

5  Medical is?

6    A.    Yes.

7    Q.    Who is Lake Erie Medical?

8    A.    They are a repackaging

9  company out of Erie, Pennsylvania.

10    Q.    What does that mean, a

11  repackaging company?

12    A.    This particular company

13  would take different pharmaceuticals in

14  bottles and they would break them down

15  into tablets -- into unit of use type of

16  tablets for nursing homes, hospitals,

17  blister packs, a unit of use may be 28

18  pills or 10 pills, and then put it into

19  their own NDC number.  And then it would

20  be sold -- resold to whoever the

21  pharmacies were that they had accounts

22  with.

23    Q.    You said that -- you were

24  referring to Lake Erie Medical in Erie,

1    Pennsylvania?

2         A.    I believe that's where

3    they're from.

4         Q.    Do you know of a Lake Erie

5    Medical in Toledo, Ohio?

6         A.    No, I don't recognize that.

7    I don't remember that.  I thought they

8    were in Erie, Pennsylvania.

9              They came and visited us --

10   I don't remember.  And we visited them,

11   too.  But I didn't go on the trip to

12   visit them.

13                    -   -   -

14              (Whereupon, Anda-Paonessa

15        Exhibit-4,

16        Anda_Opioids_MDL_0000276293-299,

17        was marked for identification.)

18                    -   -   -

19   BY MR. PENNOCK:

20        Q.    Let me show you what's been

21   marked as Exhibit-4 now to your

22   deposition, bearing Bates number

23   0000276293.

24        A.    Okay.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
1

2

3

4

5          Q.     He was in charge, we

6    mentioned earlier, of compliance, right?

7          A.     Correct.

8          Q.     Meaning compliance with

9    these regulations and laws concerning the

10   distribution and the sale of opioids --

11               MS. KOSKI:  Objection.

12   BY MR. PENNOCK:

13         Q.     -- as well as other

14   compliance, right?

15               MS. KOSKI:  Object to form.

16               THE WITNESS:  Yes.

17   BY MR. PENNOCK:

18         Q.     Now, this someone -- Jeannie

19   Sieren, do you know who she is?

20         A.     No.

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



- - -

(Whereupon, Anda-Paonessa

Highly Confidential - Subject to Further Confidentiality Review

```
 1            Exhibit-5,

 2            Anda_Opioids_MDL_0000282942, was

 3            marked for identification.)

 4                    -   -   -

 5    BY MR. PENNOCK:

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 1

 2

 3

 4

 5

 6

 7
```

 8    BY MR. PENNOCK:

 9         Q.    Do you know where any of

10    that documentation is?

11         A.    It would be in the Anda

12    compliance department.

13         Q.    It should be in the Anda

14    compliance files, right?

15         A.    I would assume so, yes.

16         Q.    Right.  You never directed

17    anyone to destroy any documents --

18         A.    Never.

19         Q.    -- did you?

20         A.    Never.

21         Q.    You never directed anyone to

22    destroy any e-mails?

23         A.    Never.

24         Q.    You have -- did you ever

Highly Confidential - Subject to Further Confidentiality Review

1    learn that there was any destruction of

2    documents concerning opioids at Anda?

3         A.    Never.

4         Q.    Since -- even since you

5    left, have you heard any rumor of that?

6         A.    Never.

7         Q.    Sir, I'm showing you what's

8    been marked as Exhibit-6 to your

9    deposition.  And it's 0000273685.

10                   -  -  -

11              (Whereupon, Anda-Paonessa

12         Exhibit-6,

13         Anda_Opioids_MDL_0000273585-586,

14         was marked for identification.)

15                   -  -  -

16              MS. KOSKI:  The exhibit that

17         you gave the witness seems to be

18         more pages than the one that you

19         gave me.

20              Oh, you just gave him more

21         than one copy.

22              MR. PENNOCK:  Sorry.

23    BY MR. PENNOCK:

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21



22    BY MR. PENNOCK:

23          Q.    You knew people were dying

24    from opioids at that time, didn't you?

Highly Confidential - Subject to Further Confidentiality Review

1              MS. KOSKI:  Object to form.

2              THE WITNESS:  I would assume

3         they did.  But I don't -- you

4         know, I don't believe that, at

5         that period of time, it was like

6         what we currently see today.

7    BY MR. PENNOCK:

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                    -   -   -

21            (Whereupon, Anda-Paonessa

22        Exhibit-7,

23        Anda_Opioids_MDL_0000258573, was

24        marked for identification.)

Highly Confidential - Subject to Further Confidentiality Review

1                        -   -   -

2    BY MR. PENNOCK:

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    BY MR. PENNOCK:

24          Q.    Okay.  Wholesaler.

Highly Confidential - Subject to Further Confidentiality Review

1           Do you draw -- is there some

2    distinction between a distributor and a

3    wholesaler?

4           A.    Yeah, the full-line

5    wholesaler versus a distributor.  A

6    distributor is more of a secondary or

7    tertiary to pharmacies around the

8    country, where a full-line wholesaler, he

9    would be selling everything to most of

10   his accounts; but he also operated

11   slightly as a distributor, too, with some

12   telesales, which wasn't really common in

13   our industry.

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19                          -   -   -

20                 (Whereupon, Anda-Paonessa

21          Exhibit-8,

22          Anda_Opioids_MDL_0000258572, was

23          marked for identification.)

24                          -   -   -

Highly Confidential - Subject to Further Confidentiality Review

1    BY MR. PENNOCK:

2         Q.    Let me show you Exhibit-8.

3    It's a little confusing.

4              MR. PENNOCK:  Exhibit-7, by

5         the way, if I didn't read it, was

6         0000258573.

7              Exhibit-8 is 0000258572.

8    BY MR. PENNOCK:

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. PENNOCK:

 2         Q.    Really?

 3              MS. KOSKI:  I didn't hear

 4         you say something, but then

 5         there's an indication on the

 6         transcript that you said "really."

 7              Did you ask that question?

 8         Or was that just -- is there

 9         something pending?

10              MR. PENNOCK:  I may have

11         said that.  This entire case blows

12         my mind.

13              MS. KOSKI:  Move to strike

14         the colloquy.

15              MR. PENNOCK:  Well, we'll

16         get to another aspect of that.

17    BY MR. PENNOCK:

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

1 ████████████████████████████████████

2                    -   -   -

3              (Whereupon, Anda-Paonessa

4         Exhibit-9,

5         Anda_Opioids_MDL_0000091168-176,

6         was marked for identification.)

7                    -   -   -

8  BY MR. PENNOCK:

9         Q.    Let me show you what's been

10 marked as Exhibit-9 to your deposition.

11 ████████████████████████████████████

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15    BY MR. PENNOCK:

16        Q.    Were you paying attention to

17    anything that was going on?

18            MS. KOSKI:  Object to form.

19    BY MR. PENNOCK:

20        Q.    With respect to opioids and

21    their distribution and diversion at that

22    time?

23            MS. KOSKI:  Object to form.

24        You don't need to answer that.

Highly Confidential - Subject to Further Confidentiality Review

1           That's inappropriate.

2                  You can ask a question and

3        answer.

4                  MR. PENNOCK:  I'm asking

5        him.

6    BY MR. PENNOCK:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6          MR. PENNOCK:  Why don't we

7      take a quick break?

8          VIDEO TECHNICIAN:  Going off

9      record.  The time is 11:21.

10           -  -  -

11        (Whereupon, a brief recess

12      was taken.)

13           -  -  -

14          VIDEO TECHNICIAN:  We are

15      going back on record.  Beginning

16      of Media File Number 2.  The time

17      is 11:35.

18  BY MR. PENNOCK:

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8                      -  -  -

9            (Whereupon, Anda-Paonessa

10      Exhibit-10, PBS.org; Understanding

11      the Opioid Epidemic, Michael?s

12      Story, was marked for

13      identification.)

14                      -  -  -

15            MS. KOSKI:  You might have

16      given me your -- there's a

17      handwritten note on this.  I don't

18      know if there's more.

19            MR. PENNOCK:  It's just my

20      10.

21   BY MR. PENNOCK:

22      Q.    I'm just wondering, is

23   that -- because you're from this area,

24   did you ever see this news report?

Highly Confidential - Subject to Further Confidentiality Review

 1          A.    No.

 2          Q.    Have you seen news reports

 3   regarding opioid deaths in the United

 4   States --

 5          A.    Yes.

 6          Q.    -- individuals and so forth?

 7                MS. KOSKI:  Let him finish

 8          his question.

 9                THE WITNESS:  Yes.

10   BY MR. PENNOCK:

11

12

13

14

15                    -   -   -

16                (Whereupon, Anda-Paonessa

17          Exhibit-11,

18          Allergan_MDL_01030377-3738, was

19          marked for identification.)

20                    -   -   -

21   BY MR. PENNOCK:

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

21          Q.    All right.  And did she --

22   was she above you, Tracey Hernandez?

23                MS. KOSKI:  Object to form.

24   BY MR. PENNOCK:

Highly Confidential - Subject to Further Confidentiality Review

1          Q.    In other words, was she sort

2    of one of your people that were higher up

3    than you, because she's at Watson?

4               No?

5          A.    No, I don't believe so.

6

7

8

9

10

11         Q.    Now, Anda did promote

12   opioids, didn't they?

13         A.    Yes.

14         Q.    I'd like to go through some

15   of that with you.

16               -  -  -

17               (Whereupon, Anda-Paonessa

18         Exhibit-12,

19         Anda_Opioids_MDL_0000611326-327,

20         was marked for identification.)

21               -  -  -

22               MS. KOSKI:  Thank you.

23   BY MR. PENNOCK:

24         Q.    Exhibit-12 to your

Highly Confidential - Subject to Further Confidentiality Review

```
 1      deposition is

 2      Anda_Opioids_MDL_0000611326.

 3             A.     Okay.
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16               -   -   -

17               (Whereupon, Anda-Paonessa

18        Exhibit-13,

19        Anda_Opioids_MDL_0000108236-243,

20        was marked for identification.)

21               -   -   -

22    BY MR. PENNOCK:

23        Q.    I'm going to show you Bates

24    number Anda_Opioids_MDL_0000108236, is

Highly Confidential - Subject to Further Confidentiality Review

```
 1    the initial Bates number.  It ends in

 2    243.  The Bates got cut off in the

 3    photocopy.  Just take a moment and look

 4    at that.

 5         A.    Okay.

 6         Q.    So this is a -- this

 7    document, Exhibit --

 8              MR. PENNOCK:  What Exhibit

 9         number is this?

10              MS. KOSKI:  13.

11              MR. PENNOCK:  13.

12         Exhibit-13.

13    BY MR. PENNOCK:

14

15

16

17

18

19

20

21

22

23

24
```



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16   BY MR. PENNOCK:

17          Q.    And did anyone, including

18   you, sit back and say, maybe we shouldn't

19   make it easier for people to buy these

20   opioids; maybe we should make it harder

21   for them to do so?

22          A.    We did make it harder.  They

23   couldn't just buy it because I had it.

24   We made it harder for them to order it

Highly Confidential - Subject to Further Confidentiality Review

1   based on our due diligence that we did.

2            Using us as a supplier and

3   making it easier for them to buy from us,

4   yes, we did that.  We converted to CSOS

5   also, which was very important to the

6   DEA, because they gave them better

7   visibility into it.  So we did that.

8            But nothing changed of how

9   we looked at people in 2010 -- I mean, it

10  changed of how we looked at it.  It was

11  much more stringent and harder than it

12  was in 2006 and '07 to buy from us.

13           Just because I had the

14  products and gave them an easier way to

15  mail me a form did not make it easier for

16  them to acquire the product from me.

17       Q.   You just said that you were

18  doing this to make it easier for them;

19  you just said that.

20       A.   To mail in their form,

21  that's what I said.

22       Q.   Make it easier to get the

23  product?

24       A.   It didn't make it easier to

Highly Confidential - Subject to Further Confidentiality Review

```
 1   get 5,000 tablets or more, no.  That's

 2   not what I said.

 3           I said it was easier for

 4   them to order, not to get more product.

 5       Q.    Right.  So did you ever sit

 6   back and say, maybe we shouldn't make it

 7   so easy for them to order?

 8           MS. KOSKI:  Object to form.

 9           THE WITNESS:  I didn't -- I

10       don't think about it in the

11       context that you're conveying now,

12       no.

13                 -  -  -

14           (Whereupon, Anda-Paonessa

15       Exhibit-14,

16       Anda_Opioids_MDL_0000109074-073,

17       was marked for identification.)

18                 -  -  -

19           (Whereupon, a discussion off

20       the record occurred.)

21                 -  -  -

22   BY MR. PENNOCK:

23       Q.    Allow me to show you,

24   please, Exhibit-14 to your deposition.
```

Highly Confidential - Subject to Further Confidentiality Review

1     Anda_Opioids_MDL_00000109074.  I'd like

2     to show you 073 followed by 074.

3          A.    Okay.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2               -   -   -

3           (Whereupon, Anda-Paonessa

4       Exhibit-15, Anda; Back in Stock

5       and Last Chance Flyer, was marked

6       for identification.)

7               -   -   -

8   BY MR. PENNOCK:

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1    BY MR. PENNOCK:

2         Q.   Does that seem like a

3    reasonable date to you for this?

4              MS. KOSKI:  Can we go off

5         for a second?

6              MR. PENNOCK:  Sure.

7              VIDEO TECHNICIAN:  Going off

8         record.  The time is 12:04.

9                   -  -  -

10             (Whereupon, a brief recess

11        was taken.)

12                  -  -  -

13             VIDEO TECHNICIAN:  Going

14        back on the record.  Beginning of

15        Media File Number 3.  The time is

16        12:05.

17   BY MR. PENNOCK:

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11

12

13                      -   -   -

14                (Whereupon, Anda-Paonessa

15          Exhibit-16, Sales Flyer; Are you

16          Promoting All of These, was marked

17          for identification.)

18                      -   -   -

19   BY MR. PENNOCK:

20          Q.    Let me show you Exhibit-16.

21   This is Anda_Opioids_MDL_0000611426.

22          A.    Okay.

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23              MS. KOSKI:  Wait for a

24        question.

```
 1                    -   -   -

 2              (Whereupon, Anda-Paonessa

 3         Exhibit-17, Anda; Oxycodone 5%

 4         Off, was marked for

 5         identification.)

 6                    -   -   -

 7    BY MR. PENNOCK:

 8         Q.    Exhibit-17 bears Bates

 9    number Anda_Opioids_MDL_0000611413.

10         A.    Yes.

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22        Q.    But Protonics hasn't killed
23    a quarter million people in the United
24    States, has it?
```

```
1              MS. KOSKI:  Object to form.

2         Lacks foundation.

3                   -   -   -

4              (Whereupon, Anda-Paonessa

5         Exhibit-18,

6         Anda_Opioids_MDL_0000610161, was

7         marked for identification.)

8                   -   -   -

9    BY MR. PENNOCK:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 1
 2
 3
 4
 5
 6              MR. PENNOCK:  I'm going to
 7       take a break.  Lunch is coming.
 8              MS. KOSKI:  12:30?
 9              MR. PENNOCK:  Oh, 12:30.
10              MS. KOSKI:  Do you want to
11       power through to 12:30?
12              MR. PENNOCK:  We'll take a
13       break right now.
14              VIDEO TECHNICIAN:  Going off
15       record.  The time is 12:19.
16                     -   -   -
17              (Whereupon, a luncheon
18       recess was taken.)
19                     -   -   -
20              VIDEO TECHNICIAN:  We are
21       back on record.  This is the
22       beginning of Media File Number 4.
23       The time is 1:11.
24    BY MR. PENNOCK:
```

Highly Confidential - Subject to Further Confidentiality Review

1           Q.   Mr. Paonessa, let me show

2      you, please, what's been marked now as

3      Exhibit-19 to your deposition.

4                      -   -   -

5                (Whereupon, Anda-Paonessa

6           Exhibit-19,

7           Anda_Opioids_MDL_0000610178-184,

8           was marked for identification.)

9                      -   -   -

10     BY MR. PENNOCK:

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8          Q.     Okay.

9                 MR. PENNOCK:  I'm sorry,

10       sir.  I need to mark that as

11       Exhibit-20.

12                 Exhibit-20 of your

13       deposition is a --

14                 MS. KOSKI:  Now you're

15       testing my eyes.

16                 MR. PENNOCK:  -- Bates

17       number 0000612614.

18                     -   -   -

19                 (Whereupon, Anda-Paonessa

20       Exhibit-20,

21       Anda_Opioids_MDL_0000612614, was

22       marked for identification.)

23                     -   -   -

24    BY MR. PENNOCK:

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8    BY MR. PENNOCK:

9         Q.    But you told us a little

10   while ago, Question -- do you remember

11   this question and answer?

12              Question:  You did not have

13   any program, you didn't have any goal to

14   sell opioids of any kind?

15              Answer:  No.  Absolutely no

16   goal to sell opioids as a goal within our

17   organization.

18              Do you remember that

19   question and answer?

20        A.    I do.  And it's out of

21   context, because that was -- you were

22   describing what I understood as a goal, a

23   promotional period, something that I

24   could sell more of something.

1          This was to try to move

2     product for Watson, still in the normal

3     channels that we have, being able to be

4     able to sell it.  And, you know, still

5     following the same rules and procedures

6     we had of how much somebody could have of

7     it.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20          Q.    I mean, I asked you at the

21    beginning of the dep, you understand I'm

22    relying, and we're all relying, on the

23    truth of your answers here today, don't

24    you?
```

```
 1              MS. KOSKI:  Objection.  Move

 2         to strike your colloquy.  You're

 3         mischaracterizing his testimony.

 4              MR. PENNOCK:  It's not

 5         colloquy.

 6              THE WITNESS:  Yes.

 7                   -   -   -

 8              (Whereupon, Anda-Paonessa

 9         Exhibit-21,

10         Anda_Opioids_MDL_0000278594-615,

11         was marked for identification.)

12                   -   -   -

13    BY MR. PENNOCK:

14         Q.   I'm marking Exhibit-21 to

15    your deposition, sir.  It's 0000278594,

16    and it ends at 615.

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19                      -   -   -

20             (Whereupon, Anda-Paonessa

21         Exhibit-22, US Department of

22         Justice; 11/3/16; United States

23         Reaches $900,000 Settlement with

24         Drug City Pharmacy and its Former
```

1        Owner for Unlawful Distribution of

2        Controlled Substances, was marked

3        for identification.)

4                   -   -   -

5   BY MR. PENNOCK:

6        Q.    I'll show you what's being

7   marked as Exhibit-22 to your deposition,

8   sir.

9        A.    Okay.

10       Q.    The title of this, this is

11  an article -- I'm sorry, this is a press

12  release from the United States Attorney's

13  Office, District of Maryland, United

14  States Reaches Settlement with Drug City

15  Pharmacy and Its Former Owner for

16  Unlawful Distribution of Controlled

17  Substances.

18            Do you see that?

19       A.    Yes.

20       Q.    And they say here, According

21  to the settlement agreement, Drug City

22  and Lichtman admitted that from January

23  2010 to April 4, 2012, they dispensed

24  controlled substances in a manner not

Highly Confidential - Subject to Further Confidentiality Review

1    fully consistent with their compliance

2    obligations under the Controlled

3    Substances Act and related regulations.

4              Right?

5         A.    Yes.

6         Q.    Do you see that?

7         A.    Yes.



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 1              (Whereupon, Anda-Paonessa

 2         Exhibit-23,

 3         Anda_Opioids_MDL_0000078404-405,

 4         was marked for identification.)

 5              -   -   -

 6   BY MR. PENNOCK:

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14                        -   -   -
15                (Whereupon, Anda-Paonessa
16        Exhibit-24,
17        Anda_Opioids_MDL_0000078400-401
18        was marked for identification.)
19                        -   -   -
20   BY MR. PENNOCK:
21        Q.    Exhibit-24 to your
22   deposition is Bates number 0000078400.
23        A.    Okay.
24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12

13

14          Q.      Which drug?

15          A.      Drug City.

16                  We talked to her about Drug

17     City, and tried to get her -- do we know

18     anything about Drug City?  Do you see

19     something that's a problem with Drug

20     City?  Showed her the data on them too.

21     And she left that there wasn't a problem

22     with them.

23                  And even so, we still

24     cancelled them from getting Oxy from us

1    almost a year ahead of time -- or, no,

2    seven months.

3        Q.    So you told her, Gayle Lane,

4    that there was a problem with Drug City?

5        A.    No, I did not say there was

6    a problem with Drug City.  We showed our

7    due diligence on Drug City and asked her

8    opinion on it, because we went to the DEA

9    many times to ask their opinion of how we

10   were doing our due diligence.

11            And she did not have a

12   problem with Drug City with what we

13   showed her that day.

14       Q.    And so you didn't shut them

15   down?

16       A.    Not when the DEA told me, I

17   don't see an issue here.

18       Q.    Do you have any

19   documentation regarding this conversation

20   you're alleging with Gayle Lane?

21            MS. KOSKI:  Object to form.

22            THE WITNESS:  I personally

23       do not.

24   BY MR. PENNOCK:

Highly Confidential - Subject to Further Confidentiality Review

1      Q.    Do you know if it exists?

2      A.    Possibly.

3      Q.    What would be the form of

4  that documentation of this conversation

5  with the DEA?

6      A.    Someone -- it would have had

7  to be either Mike, Patrick or Jay

8  Spellman, because the three of us sat

9  with her that day that she would -- if

10  one of them documented it.

11           It could even be in the due

12  diligence of them that we talked to

13  Gayle.

14      Q.    Why is it that you brought

15  up Drug City to her in 2011 and not, for

16  example, in 2010, 2009?

17      A.    Because the due diligence we

18  were doing fell within the parameters

19  that we felt were okay for that -- for

20  that places and the size that they were.

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11                      -  -  -
12              (Whereupon, Anda-Paonessa
13         Exhibit-25,
14         Anda_Opioids_MDL_0000282932, was
15         marked for identification.)
16                      -  -  -
17    BY MR. PENNOCK:
18
19
20
21
22         Q.    You just told us that you
23    had done your due diligence on Drug City
24    and had indicated, for the time that you
```

Highly Confidential - Subject to Further Confidentiality Review

1  were selling them until the end, that

2  they were okay to sell to.  I think you

3  said something about because of their

4  size.

5          Do you remember that?  I can

6  get you the exact quote, if you want it.

7          A.    Yes.

8          Q.    So you told her, Gayle Lane,

9  that there was a problem with Drug City?

10          No, I did not say there was

11  a problem with Drug City.  We showed her

12  our due diligence on Drug City and asked

13  her her opinion on it.  Because we went

14  to the DEA many times to ask their

15  opinion about how we were doing our due

16  diligence.  And she said she did not have

17  a problem with Drug City, what we showed

18  her.

19          And you said -- do you

20  remember that?

21          A.    Yes.

22  ████████████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17    BY MR. PENNOCK:

18          Q.    Do you know how many people

19    died from opioids in 2010?

20                MS. KOSKI:  You don't need

21          to answer that question.

22    BY MR. PENNOCK:

23          Q.    Do you know that?

24                MS. KOSKI:  Object to form.

Highly Confidential - Subject to Further Confidentiality Review

1          Move to strike.

2     BY MR. PENNOCK:

3          Q.    Do you know an estimate of

4     how many died that year?

5               MS. KOSKI:  Object to form.

6          Lacks foundation.

7               MR. PENNOCK:  Let's take a

8          quick break, please.

9               VIDEO TECHNICIAN:  Going off

10         record.  The time is 2:04.

11                    -  -  -

12         (Whereupon, a brief recess

13         was taken.)

14                    -  -  -

15              VIDEO TECHNICIAN:  Going

16         back on record.  Beginning of

17         Media File 5.  The time is 2:16.

18    BY MR. PENNOCK:

19         Q.    Mr. Paonessa, I'm going to

20    show you what's being marked as

21    Exhibit-26 to your deposition,

22    0000274716.

23                    -  -  -

24              (Whereupon, Anda-Paonessa

Highly Confidential - Subject to Further Confidentiality Review

1          Exhibit-26,

2          Anda_Opioids_MDL_0000274716-717;

3          With Attachment, was marked for

4          identification.)

5                    -   -   -

6    BY MR. PENNOCK:

7          Q.     Please take a look at that.

8          A.     Okay.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



- - -

(Whereupon, Anda-Paonessa

Exhibit-27,

Anda_Opioids_MDL_0000274587-589,

was marked for identification.)

- - -

BY MR. PENNOCK:

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5                    -   -   -

6                (Whereupon, Anda-Paonessa

7          Exhibit-28,

8          Anda_Opioids_MDL_0000272213-215,

9          was marked for identification.)

10                   -   -   -

11    BY MR. PENNOCK:

12          Q.    Take a look at Exhibit-28.

13    This is 0000272213.

14          A.    Okay.

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



         Q.    So who is Emily Schultz?

         A.    She was one of the

compliance clerks that gathered and

analyzed the data from the -- that we

received from pharmacies.

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



1

2

3

4

5

6

7

8

9

10

11              -   -   -

12          (Whereupon, Anda-Paonessa

13      Exhibit-29,

14      Anda_Opioids_MDL_00002722520-521,

15      was marked for identification.)

16              -   -   -

17  BY MR. PENNOCK:

18          Q.     This is marked Exhibit-29 to

19  your deposition.   Bates number 272520.

20          A.     Okay.

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review







```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10      Q.    Okay.  I'll show you that
11  you --
12              -   -   -
13          (Whereupon, Anda-Paonessa
14      Exhibit-30,
15      Anda_Opioids_MDL_00002722520-521,
16      was marked for identification.)
17              -   -   -
18  BY MR. PENNOCK:
19
20
21
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5        MR. PENNOCK:  Give me a

6    five-minute break, please.

7        VIDEO TECHNICIAN:  Going off

8    record.  The time is 2:36.

9            -   -   -

10        (Whereupon, a brief recess

11    was taken.)

12            -   -   -

13        VIDEO TECHNICIAN:  Going

14    back on record.  Beginning of

15    Media File 6.  The time is 2:45.

16 BY MR. PENNOCK:

17        Q.   Sir, I'm going to show you

18 Exhibit-31, please.

19            -   -   -

20        (Whereupon, Anda-Paonessa

21    Exhibit-31,

22    Anda_Opioids_MDL_0000090857-858,

23    was marked for identification.)

24            -   -   -

```
 1    BY MR. PENNOCK:

 2         Q.    This is 90857.

 3              MR. PENNOCK:  Where's the

 4         attachment?  Oh, it came

 5         separately.

 6                   -   -   -

 7              (Whereupon, Anda-Paonessa

 8         Exhibit-32,

 9         Anda_Opioids_MDL_0000090808, was

10         marked for identification.)

11                   -   -   -

12    BY MR. PENNOCK:

13         Q.    Here is the attachment that

14    was produced separately, Exhibit-32.

15              MS. KOSKI:  Oh, this one is

16         yours.

17    BY MR. PENNOCK:

18         Q.    The attachment is 90808.

19              MS. KOSKI:  Was this

20         attached to something else?

21              THE WITNESS:  This was

22         attached to this.

23              I'm assuming this was

24         attached to the e-mail, right?
```

```
 1          When it says attachment --

 2               MR. KING:  It says -- the

 3          e-mail refers to an attachment.

 4               THE WITNESS:  Right.  Which

 5          is this.

 6               MS. KOSKI:  So it's --

 7               THE WITNESS:  Right here.

 8               MS. KOSKI:  Got it.  The

 9          Bates numbers aren't sequential.

10          But it's okay.

11               THE WITNESS:  Okay.

12                    -   -   -

13               (Whereupon, Anda-Paonessa

14          Exhibit-33,

15          Anda_Opioids_MDL_0000090805-807,

16          was marked for identification.)

17                    -   -   -

18     BY MR. PENNOCK:

19          Q.   Here is -- I'm marking

20     Exhibit-33.  This is 90805.

21          A.   Okay.

22

23

24
```



Q.    Barry Koran, senior account

manager -- he would be in sales; is that

right?

A.    Yes.



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6                      -   -   -

7                  (Whereupon, Anda-Paonessa

8           Exhibit-34, United States District

9           Court; Search and Seizure Warrant,

10          was marked for identification.)

11                     -   -   -

12   BY MR. PENNOCK:

13          Q.    I'll show you what I'm

14   marking as Exhibit-34.  I'd like to

15   quickly go through this with you and

16   direct you to certain pages, sir.

17              MS. KOSKI:  Can you

18          represent for the record what this

19          is?  It's not from our files.

20              MR. PENNOCK:  Sure.  Marked

21          as Exhibit-34, a seizure and

22          search warrant that, as indicated,

23          was issued by the United States

24          District Court for the Central

1    District of California in November

2    of 2017.

3  BY MR. PENNOCK:

4    Q.    If you turn to Page 3, you

5  will see that it was directed at -- you

6  see the document reflects it was directed

7  at United Pharmacy, Inc., Los Angeles,

8  California?

9    Page 3.

10    MS. KOSKI:  I'm struggling,

11    too.

12    But I'm not sure the witness

13    is familiar with the form of the

14    document.

15    Can you put it on the

16    screen, maybe, so we can see it?

17    MR. PENNOCK:  Yep.

18    MS. KOSKI:  So page numbered

19    3, not the Roman.

20    Just look on the screen.

21    THE WITNESS:  Sorry, I

22    didn't see that.  Okay.

23    Okay, I have it.  Yes.

24  BY MR. PENNOCK:

Highly Confidential - Subject to Further Confidentiality Review

1    Q.    Okay.  So you see that it's

2  directed at United Pharmacy, Inc.?

3    A.    Yes.

4    Q.    And -- hold on.  And I just

5  want to direct your attention to the

6  doctor that is mentioned on here.  Page

7  21.

8    A.    Okay.

9    Q.    In February of 2015, the DEA

10  initiated the investigation in this case

11  after receiving information from the DEA

12  Fresno resident office that Dr. Ernestina

13  Saxton was writing large quantities of

14  controlled substance prescriptions for

15  patients located in Los Angeles.

16        Do you see that?

17    A.    Yes.

18  ███████████████████████████████

19  ███████████████████████████████

20  ███████████████████████████████

21  ███████████████████████████████

22  ███████████████████████████████

23    Q.    Did this ever come to your

24  attention?

Highly Confidential - Subject to Further Confidentiality Review

1        A.    No.

2              MS. KOSKI:  I'm going to

3        object.  The document is dated

4        2017.  Mr. Paonessa didn't work at

5        Anda in 2017.

6              MR. PENNOCK:  Okay.

7              MS. KOSKI:  In fact had been

8        gone for two years --

9              MR. PENNOCK:  Hmm?

10             MS. KOSKI:  You had been

11       gone for two years by then, right?

12             THE WITNESS:  Three by then.

13       Because it says Anda '17.

14  BY MR. PENNOCK:

15       Q.    Take a look at Page 25.

16       A.    Okay.

17       Q.    It says, United dispensed

18  over 1 million dosage units of oxycodone

19  over the same period, with over 400,000

20  dosage units of 30-milligram oxycodone.

21             Do you see that?

22       A.    Yes.

23             MS. KOSKI:  I don't know

24       where you are.  What paragraph?

Highly Confidential - Subject to Further Confidentiality Review

 1                    THE WITNESS:  25, right

 2          here.

 3                    MS. KOSKI:  I'm with you.

 4          Sorry.

 5  BY MR. PENNOCK:

 6          Q.    So whatever your protocol

 7  was for due diligence back in 2012, you

 8  would agree with me, if the allegations

 9  contained in this document are correct,

10  that the due diligence with respect to

11  this facility failed pretty badly?

12                    MS. KOSKI:  I'm going to

13          object to form.  And I'll instruct

14          you not to answer.

15                    He's not a lawyer.  This

16          is -- if the allegations in this

17          document, which is a search and

18          seizure warrant are correct.  How

19          can he answer that question?

20                    MR. PENNOCK:  I don't think

21          it's too hard.  I'm just -- so I'm

22          going to reiterate my question.

23  BY MR. PENNOCK:

24          Q.    I'm asking you, you've seen

Highly Confidential - Subject to Further Confidentiality Review

```
 1   this document?

 2          A.     Yes.

 3          Q.     Assuming this to be

 4   authentic, which I'm representing it is,

 5   assuming these allegations against this

 6   doctor to be correct, Dr. Ernestina

 7   Saxton, you would agree with me that

 8   whatever due diligence you and your

 9   colleagues did in 2012 were insufficient

10   to make an appropriate determination as

11   to the prescriptions and use of

12   medications by Ernestina Saxton?

13               MS. KOSKI:  Object to form.

14          Lacks foundation.  Calls for a

15          legal conclusion.

16               You can answer if you want

17          to speculate for Mr. Pennock.

18               THE WITNESS:  I don't know

19          what they were buying in 2012.

20          This is 2017.  I have no idea what

21          they had in their due diligence

22          that we had on file for them at

23          that period of time.

24   BY MR. PENNOCK:
```

Highly Confidential - Subject to Further Confidentiality Review

 1          Q.    Sir, I have a series of

 2    documents I'd like you to look at.  I'm

 3    going to mark them all and hand them to

 4    you one by one.  Before I question, I'll

 5    get them all marked.

 6               MR. PENNOCK:  I'm going to

 7          need a number of other tabs.

 8                    -  -  -

 9               (Whereupon, Anda-Paonessa

10          Exhibit-35,

11          Anda_Opioids_MDL_0000275048, was

12          marked for identification.)

13                    -  -  -

14    BY MR. PENNOCK:

15          Q.    Here is Exhibit-36, which is

16    275048.

17               MS. KOSKI:  Is that 35?

18               MR. PENNOCK:  Wait a second.

19          Was that 35?

20               MS. KOSKI:  35.

21               MR. PENNOCK:  Sorry, I

22          marked 35 was --

23               MS. KOSKI:  You gave him 35,

24          you just said 36.

```
 1            MR. PENNOCK:  So 35 was

 2       275048.

 3                 -  -  -

 4            (Whereupon, Anda-Paonessa

 5       Exhibit-36,

 6       Anda_Opioids_MDL_0000284363-364,

 7       was marked for identification.)

 8                 -  -  -

 9            MR. PENNOCK:  36 is 284363.

10                 -  -  -

11            (Whereupon, Anda-Paonessa

12       Exhibit-38,

13       Anda_Opioids_MDL_0000284363-364,

14       was marked for identification.)

15                 -  -  -

16            MR. PENNOCK:  38 is 273292.

17            I have 37 over here, I'm

18       looking for another copy.

19            MS. KOSKI:  You gave me --

20       okay, 38.

21            This is an extra copy of 38.

22       This is an extra of 38.

23                 -  -  -

24            (Whereupon, Anda-Paonessa
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              Exhibit-39,

 2              Anda_Opioids_MDL_0000273518, was

 3              marked for identification.)

 4                      -   -   -

 5                  MR. PENNOCK:  39 is 273518.

 6                  THE WITNESS:  I don't have

 7         37.

 8                  MS. KOSKI:  I know.  I think

 9         he's working on it.

10                      -   -   -

11                  (Whereupon, Anda-Paonessa

12         Exhibit-40,

13         Anda_Opioids_MDL_0000287964, was

14         marked for identification.)

15                      -   -   -

16                  MR. PENNOCK:  40 is 287964.

17                      -   -   -

18                  (Whereupon, Anda-Paonessa

19         Exhibit-41,

20         Anda_Opioids_MDL_0000273617, was

21         marked for identification.)

22                      -   -   -

23                  MR. PENNOCK:  41 is 273617.

24                      -   -   -
```

Highly Confidential - Subject to Further Confidentiality Review

```
1                    (Whereupon, Anda-Paonessa
2          Exhibit-42,
3          Anda_Opioids_MDL_0000273762, was
4          marked for identification.)
5                        -   -   -
6              MR. PENNOCK:  42 is 273762.
7                        -   -   -
8                    (Whereupon, Anda-Paonessa
9          Exhibit-43,
10         Anda_Opioids_MDL_0000283018-019,
11         was marked for identification.)
12                       -   -   -
13             MR. PENNOCK:  43 is 283018.
14                       -   -   -
15                   (Whereupon, Anda-Paonessa
16         Exhibit-44,
17         Anda_Opioids_MDL_0000274800, was
18         marked for identification.)
19                       -   -   -
20             MR. PENNOCK:  44 is 274800.
21             MS. KOSKI:  The only one he
22         did not get was 37.
23             MR. PENNOCK:  I don't have a
24         copy of it.  I'll just keep it
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              right here for a moment so I don't

 2         lose track.

 3              MS. KOSKI:  Okay.

 4              MR. PENNOCK:  We don't have

 5         a copy, right?

 6              We started with 35?

 7              MS. KOSKI:  He's given you

 8         ten exhibits.  Listen to the

 9         questions, so you know which ones

10         he's referring to.

11    BY MR. PENNOCK:

12         Q.   So, Mr. Paonessa, I'd like

13    to look at Exhibit Number 35, please.

14         A.   Okay.

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

1

2

3          Q.    It looks like -- I'm sorry,

4   39 is a duplicate.

5                Sorry, 37 is a duplicate of

6   36.

7                MS. KOSKI:  That's why you

8          didn't have any copies.

9                MR. PENNOCK:  What?

10               MS. KOSKI:  That's why you

11         didn't have any copies.  That's

12         the one we didn't get.

13  BY MR. PENNOCK:

14         Q.    So this would be 38.

15               MS. KOSKI:  We'll just skip

16         37, and the record will show

17         there's no 37.

18               MR. PENNOCK:  That's right.

19  BY MR. PENNOCK:

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review





```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19          Q.    And last, Exhibit-44 --

20              MS. KOSKI:  Is that a

21      repeat?

22  BY MR. PENNOCK:

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1
 2
 3
 4
 5          MR. PENNOCK:  Okay.  I don't
 6     think I have -- I have no further
 7     questions.  Thank you.
 8          MS. KOSKI:  I will have a
 9     couple, but can I take a quick
10     break first to make it shorter?
11          MR. PENNOCK:  Yes.
12          VIDEO TECHNICIAN:  Going off
13     the record.  The time is 3:19.
14               -  -  -
15          (Whereupon, a brief recess
16     was taken.)
17               -  -  -
18          VIDEO TECHNICIAN:  Going
19     back on record.  Beginning of
20     Media File Number 7.  The time is
21     3:29.
22               -  -  -
23               EXAMINATION
24               -  -  -
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    BY MS. KOSKI:

 2           Q.    Mr. Paonessa, I just have a

 3    few questions about some of the exhibits

 4    that you went through with Mr. Pennock.

 5                 Do you have the exhibits in

 6    front of you?

 7           A.    Yes.

 8           Q.    If you'd turn to Exhibit-6.

 9           A.    Okay.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
 1  ████████████████████████████████████████

 2                  -   -   -

 3              (Whereupon, Anda-Paonessa

 4          Exhibit-45,

 5          Anda_Opioids_MDL_0000272207-208,

 6          was marked for identification.)

 7                  -   -   -

 8  BY MS. KOSKI:

 9          Q.    And for the record --

10          A.    Okay.

11  ████████████████████████████████████████

12  ████████████████████████████████████████

13  ████████████████████████████████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ████████████████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  ████████████████████████████████████████

22  ████████████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████
```

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review

```
1          Q.    Okay.

2               MS. KOSKI:  That's all I

3    have.

4               Do you have follow-up?

5               MR. PENNOCK:  Yes, I do have

6    a couple.  Just a couple.

7                    -  -  -

8               (Whereupon, a discussion off

9    the record occurred.)

10                   -  -  -

11              MR. PENNOCK:  Give us two

12   minutes.  We're just looking for

13   something.

14                   -  -  -

15              EXAMINATION

16                   -  -  -

17   BY MR. PENNOCK:
```

Highly Confidential - Subject to Further Confidentiality Review

1

2

3                    -   -   -

4              (Whereupon, Anda-Paonessa

5        Exhibit-46,

6        Anda_Opioid_MDL_Tx-data_CUY-SUM-OH

7        _00001; With Attachment, was

8        marked for identification.)

9                    -   -   -

10   BY MR. PENNOCK:

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review



Highly Confidential - Subject to Further Confidentiality Review



16          MR. PENNOCK:  Thank you.

17          MS. KOSKI:  I have nothing

18     further.

19          VIDEO TECHNICIAN:  This

20     concludes today's deposition.

21     Going off the record.  The time is

22     3:41.

23                    -  -  -

24          (Whereupon, the deposition

Highly Confidential - Subject to Further Confidentiality Review

1          concluded at 3:41 p.m.)

2                    -   -   -

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    CERTIFICATE

 2

 3

 4            I HEREBY CERTIFY that the

 5   witness was duly sworn by me and that the

 6   deposition is a true record of the

 7   testimony given by the witness.

 8

 9

10

     Amanda Maslynsky-Miller

11   Certified Realtime Reporter

     Dated:  February 11, 2019

12

13

14

15

16

17            (The foregoing certification

18   of this transcript does not apply to any

19   reproduction of the same by any means,

20   unless under the direct control and/or

21   supervision of the certifying reporter.)

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1            INSTRUCTIONS TO WITNESS

 2

 3            Please read your deposition

 4   over carefully and make any necessary

 5   corrections.  You should state the reason

 6   in the appropriate space on the errata

 7   sheet for any corrections that are made.

 8            After doing so, please sign

 9   the errata sheet and date it.

10            You are signing same subject

11   to the changes you have noted on the

12   errata sheet, which will be attached to

13   your deposition.

14            It is imperative that you

15   return the original errata sheet to the

16   deposing attorney within thirty (30) days

17   of receipt of the deposition transcript

18   by you.  If you fail to do so, the

19   deposition transcript may be deemed to be

20   accurate and may be used in court.

21

22

23

24
```

Highly Confidential - Subject to Further Confidentiality Review

```
1                    - - - - - -

                     E R R A T A

2                    - - - - - -

3    PAGE    LINE    CHANGE/REASON

4    _____   _____   _____

5    _____   _____   _____

6    _____   _____   _____

7    _____   _____   _____

8    _____   _____   _____

9    _____   _____   _____

10   _____   _____   _____

11   _____   _____   _____

12   _____   _____   _____

13   _____   _____   _____

14   _____   _____   _____

15   _____   _____   _____

16   _____   _____   _____

17   _____   _____   _____

18   _____   _____   _____

19   _____   _____   _____

20   _____   _____   _____

21   _____   _____   _____

22   _____   _____   _____

23   _____   _____   _____

24   _____   _____   _____
```

1
                    ACKNOWLEDGMENT OF DEPONENT
2

                    I,_____, do
3    hereby certify that I have read the
     foregoing pages, 1 - 221, and that the
4    same is a correct transcription of the
     answers given by me to the questions
5    therein propounded, except for the
     corrections or changes in form or
6    substance, if any, noted in the attached
     Errata Sheet.

7

8    _____
      AL PAONESSA                    DATE
9

10

     Subscribed and sworn
11   to before me this
     _____ day of _____, 20_____.

12

     My commission expires:_____
13

14   _____
     Notary Public

15

16

17

18

19

20

21

22

23

24

Highly Confidential - Subject to Further Confidentiality Review

1                        LAWYER'S NOTES

2    PAGE    LINE

3    _____   _____   _____

4    _____   _____   _____

5    _____   _____   _____

6    _____   _____   _____

7    _____   _____   _____

8    _____   _____   _____

9    _____   _____   _____

10   _____   _____   _____

11   _____   _____   _____

12   _____   _____   _____

13   _____   _____   _____

14   _____   _____   _____

15   _____   _____   _____

16   _____   _____   _____

17   _____   _____   _____

18   _____   _____   _____

19   _____   _____   _____

20   _____   _____   _____

21   _____   _____   _____

22   _____   _____   _____

23   _____   _____   _____

24   _____   _____   _____