# PSJ18 WALGREENS Opp Exh 38

Message

| | |
|---|---|
| **From**: | Bleser, Mike [mike.bleser@walgreens.com] |
| **Sent**: | 3/30/2013 4:12:44 PM |
| **To**: | Foreman, Jeffrey [jeffrey.foreman@walgreens.com]; Pike, Matt [matt.pike@walgreens.com]; Rurka, David [david.rurka@walgreens.com]; House, Emily [emily.house@walgreens.com]; Butterfield, Megan [megan.butterfield@walgreens.com]; Groth, Bill [bill.groth@walgreens.com]; Murray, Denman [denman.murray@walgreens.com]; Reiter, David [david.reiter@walgreens.com]; Mikulak, Zach [zachary.mikulak@walgreens.com] |
| **Subject**: | FW: Final Draft for WAGs |
| **Attachments**: | Walgreen Letter - Final Draft.docx; ATT00001.htm |
| | |
| **Flag**: | Follow up |

Please take a look at this before our 7:00AM meeting on Monday.....thanks.

---

**From:** Destefano, Frank
**Sent:** Saturday, March 30, 2013 10:46 AM
**To:** Foreman, Jeffrey; Bleser, Mike
**Cc:** Jeffrey Berkowitz; Crawford, Kermit
**Subject:** Fwd: Final Draft for WAGs

Please get together with your teams on this, as well as Finance, early enough so that you can have recommendations that we can give Kermit by mid-day Monday.

Kermit... has Mia assigned anyone yet who will be point on the Accounting aspects and implications of the attached? Thanks.

Sent from my iPhone

Begin forwarded message:

**From:** "Crawford, Kermit" <kermit.crawford@walgreens.com>
**Date:** March 29, 2013, 6:05:58 PM CDT
**To:** "Sabatino, Thomas" <thomas.sabatino@walgreens.com>, "Destefano, Frank" <frank.destefano@walgreens.com>, "Reed, Jan" <jan.reed@walgreens.com>
**Cc:** "Schneider, Bryan" <bryan.schneider@walgreens.com>, "Bleser, Mike" <mike.bleser@walgreens.com>
**Subject: FW: Final Draft for WAGs**

# Redacted – Attorney Client Privileged

Kermit Crawford
President
Pharmacy, Health and Wellness
Walgreens
108 Wilmot Road, MS #1858
Deerfield, IL 60015
P: 847-315-3154
F: 847-315-3652

HIGHLY CONFIDENTIAL

WAGMDL00682159

**From:** <Kaufmann>, Mike <Mike.Kaufmann@cardinalhealth.com>
**Date:** Friday, March 29, 2013 2:34 PM
**To:** Kermit Crawford <kermit.crawford@walgreens.com>
**Subject:** Fwd: Final Draft for WAGs

I know this needs a little work but think it is close. Lets talk Monday to try and finalize as I have to stop wheels on Tuesday and refocus the team on new dates. Call me any time and Shelly will interrupt me.

Sent from my iPad

Begin forwarded message:

**From:** "Falk, Steve" <Steve.Falk@cardinalhealth.com>
**Date:** March 29, 2013, 12:30:02 PM EDT
**To:** "Kaufmann, Mike" <Mike.Kaufmann@cardinalhealth.com>
**Cc:** "Giacomin, Jon" <Jon.Giacomin@cardinalhealth.com>, "Scott, Jim" <Jim.Scott@cardinalhealth.com>, "Bennett, Jeff" <Jeff.Bennett@cardinalhealth.com>
**Subject: Final Draft for WAGs**

Mike – as we discussed, here's the final draft for sending to WAGs.


*Steve Falk*
*EVP, General Counsel*
*Cardinal Health*
*614.757.7789*

---

This message is for the designated recipient only and may contain privileged, proprietary or otherwise private information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.

Dansk - Deutsch - Espanol - Francais - Italiano - Japanese - Nederlands - Norsk - Portuguese - Chinese Svenska: www.cardinalhealth.com/legal/email

HIGHLY CONFIDENTIAL

WAGMDL00682160

P-WAG-02114.001

DRAFT FOR DISCUSSION PURPOSES 3.29,13

Cardinal Health
7000 Cardinal Place
Dublin, Ohio 43017
614.757.5000 tel

cardinalhealth.com



March 29, 2013

Mr. Kermit Crawford
President-Pharmacy, Health and Wellness
Walgreen Co.
200 Wilmot Rd., MS#2194
Deerfield, IL 60013

Re: Transition of Primary Distribution of CIIs; Amendment to Our Existing Agreements

Kermit,

As we discussed, this letter is intended to document our discussion and agreement regarding the transition of Schedule II Legend Drugs ("CIIs") on a primary basis from Cardinal Health to an alternate distributor. Separately, we have discussed and agreed to amend certain aspects of our existing distribution agreements to contemplate the wind-down of our overall distribution relationship on August 31, 2013.

1. CII Transition. As you know, Cardinal Health accommodated Walgreen's request to take on primary distribution of CIIs to certain pharmacy locations previously serviced by Jupiter and Perrysburg. Cardinal Health accommodated Walgreen's request for a limited period of time in order to help Walgreen avoid a significant disruption to the needs of legitimate patients. However, as explained in my letter dated March 22, 2013 and as permitted by our existing agreements, Cardinal Health is no longer willing to continue to serve in a primary distribution role for CII's given the long term investments required, and we notified Walgreen of a transition plan. Following my March 22nd letter, Walgreen requested more time to plan for its transition to an alternate CII primary supplier. In the continued interest of helping Walgreen avoid patient disruptions, we are willing to further accommodate Walgreen by extending the transition period as described below.

    a. The dates of transition in my March 22, 2013 letter will be extended until April 26, 2013 for the pharmacies previously serviced out of Jupiter, and until May 24, 2013 for the pharmacies previously serviced out of Perrysburg.
    b. Following these transition dates, Cardinal Health will continue to serve as a secondary supplier of CIIs to those stores (as we did before) through the end of our DSD Agreement.

HIGHLY CONFIDENTIAL

WAGMDL00682161

P-WAG-02114.001

Kermit Crawford
Walgreen Co.
March 28, 2013
Page 2

    c. In addition, Walgreen will transition its warehouse purchases of CIIs to another distributor effective May 10, 2013, and thereafter Cardinal Health will provide no distribution of CIIs to Walgreen warehouses.

    d. For complete clarity and notwithstanding anything to the contrary, Cardinal Health will continue to reserve the right, in its sole discretion, to refuse, suspend or terminate distribution of controlled substances to any Walgreen location, including Walgreen warehouses, pursuant to Cardinal Health's anti-diversion processes and controls.

2. <u>Second Amendment to Supply Agreements</u>:  Separately, we have discussed certain items associated with the wind-down of our overall distribution relationship effective August 31, 2013.  Specifically, we have agreed to modify or resolve certain aspects of the DSD Agreement[1] and the Warehouse Agreement[2], as set forth below.

    a. <u>Invoice Payments and Disputes</u>:  Notwithstanding any provision under the Agreements to the contrary or otherwise, Cardinal Health and Walgreen agree to the provisions described in Exhibit A to this letter regarding outstanding amounts owed to Cardinal Health and potential disputes of existing and future amounts owed to Cardinal Health by Walgreen.

    b. <u>Limitation on Returns</u>:  Notwithstanding any other provision in the Agreements to the contrary, for each month during the period from March 1, 2013 to August 31, 2013, Walgreen shall have no right to make, and shall not make, returns of Merchandise to or through Cardinal Health for any reason whatsoever under either Agreement in excess of Walgreen's average historical return rate (computed based upon sales dollars), which for this provision is agreed to be 7%.  In addition, Walgreen shall have no right to make, and shall not make, any returns of any Merchandise to or through Cardinal Health for any reason whatsoever under either Agreement following August 31, 2013.  Cardinal Health shall have no obligation to accept, process or provide any credit for returns made in violation of this paragraph.

    c. <u>Service Level Commitment</u>.  The parties agree that no Service Level penalties or credits shall be due from Cardinal Health to Walgreens with respect to any period on or after June 1, 2013, and the provisions in the Agreements regarding potential Service Level penalties or credits from Cardinal Health to Walgreen shall be discontinued on that date and thereafter no longer apply.  As an additional incentive for Cardinal Health to maintain high service levels during the final months of the Agreements, for each of July and August 2013, Walgreen will pay to Cardinal Health a service level bonus of (a) $4,000,000 for such month under the DSD Agreement if Cardinal Health maintains a Service Level of at least 97%, and (b) $4,000,000 for such month under the Warehouse Agreement if Cardinal Health maintains a Service Level of at least 98%.  For clarity, this is a total potential bonus of $16,000,000.  Within 5 business days after the end of each of July and August 2013, Cardinal Health will send to Walgreen a

---

[1] Supply Agreement (DSD Purchases) between Cardinal Health 110, Inc, ("Cardinal Health") and Walgreen Co. ("Walgreen"), dated January 1, 2008, amended effective July 1, 2010 (the "DSD Agreement").

[2] Supply Agreement (Warehouse Purchases) between Cardinal Health and Walgreen, dated January 1, 2008, amended effective July 1, 2010 (the "Warehouse Agreement", and together with DSD Agreement, the "Agreement(s)").

HIGHLY CONFIDENTIAL

P-WAG-02114.001

Kermit Crawford
Walgreen Co.
March 28, 2013
Page 3

        calculation of the Service Level under each Agreement for the preceding month together with a calculation of the service level bonus due for such month. Walgreen will pay any such bonuses due within three business days after its receipt by Cardinal Health of the foregoing calculation.

    d. <u>Defined Terms; Conflicts</u>: Unless otherwise defined above, capitalized terms in this letter have the same meaning as set forth in the Agreements. Except as set forth above, all other terms under the Agreements shall remain in full force and effect. To the extent any provision under either Agreement conflicts with the terms of this letter, the terms of this letter shall control.

Please sign below to document Walgreen's agreement to the terms of this letter.

Sincerely,


Mike Kaufmann, President
Cardinal Health 110, Inc.



**Acknowledged and Agreed:**

**Walgreen Co.**


_____
Kermit Crawford
President-Pharmacy, Health and Wellness
Date:_____

HIGHLY CONFIDENTIAL

WAGMDL00682163

P-WAG-02114.001

Kermit Crawford
Walgreen Co.
March 28, 2013
Page 4

## Exhibit A
Invoice Payments and Disputes

Notwithstanding any provision under the Agreements to the contrary or otherwise, Cardinal Health and Walgreen agree as follows:

i. Walgreen must pay all Cardinal Health invoices in full no later than the applicable due dates under the Agreements, even if Walgreen submits, or intends to submit, a Dispute (as defined below) with respect to any applicable invoice. For the avoidance of doubt, Walgreen shall not withhold or otherwise offset any payment due to Cardinal Health under any invoice for amounts Walgreen believes it may be owed based upon any claim or basis, unless otherwise mutually agreed upon by the parties following resolution of a Dispute in accordance with the terms below.

ii. If Walgreen fails to timely pay any invoice in full as described in this letter, Cardinal Health may in its sole discretion take all or any of the following actions (in addition to any other rights or remedies it may have under the Agreements or at law or equity), (A) assess Walgreen liquidated damages equal to 5% of the unpaid invoice, (B) discontinue providing Merchandise under either Agreement until any unpaid invoices (and liquidated damages payments if applicable) are paid in full, and/or (C) terminate either or both of the Agreements upon written notice without further obligation or liability.

iii. Subject to the conditions below, if Walgreen reasonably and in good faith believes there is any discrepancy, claim or dispute related to any amounts paid or due under either Agreement, including without limitation any invoice amounts, rebates, credits or other amounts (a "Dispute"), Walgreen may separately submit the Dispute in writing by email to Cardinal Health, c/o Tom Saad, Manager-Collections (tom.saad@cardinalhealth.com), along with written documentation setting forth in specific detail the nature of the Dispute and explaining Walgreen's position. If Walgreen does not provide Cardinal Health with notice of a Dispute within sixty (60) days of the date of the applicable invoice, or, for non-invoice items, within sixty (60) days of the date any other disputed amount was otherwise originally due under either Agreement, Walgreen shall be forever foreclosed and barred from raising, and shall forever release Cardinal Health and its affiliates from, such Dispute and Cardinal Health shall have no additional obligations regarding any issues applicable to the Dispute. In addition, Walgreen forever releases Cardinal Health and its affiliates from any and all Disputes for invoices dated, or amounts otherwise originally due, prior to February 1, 2013 where such Dispute has not been communicated by Walgreen to Cardinal Health in writing prior to March 29, 2013.

iv. Upon timely filing of a Dispute by Walgreen, the parties shall cooperate in good faith to resolve the Dispute. If Cardinal Health, acting reasonably and in good faith, determines that (a) a Dispute is valid, Cardinal Health will adjust the invoice or otherwise make payment to Walgreen to remedy the issue in a manner it reasonably deems appropriate, or (b) a Dispute is not valid, Cardinal Health will make no adjustments and the matter will be deemed finally settled.

HIGHLY CONFIDENTIAL

WAGMDL00682164

Kermit Crawford
Walgreen Co.
March 28, 2013
Page 5

v.    Within ten (10) calendar days following the date of this letter, Walgreen shall pay Cardinal Health $16,773,800 as full and final payment for the invoices and matters identified in Table A, below, and Walgreen forever releases Cardinal Health from any and all Disputes – previously raised by Walgreen or not -- related to such invoices and matters.  In addition, Walgreen will work expeditiously with Cardinal Health to resolve and pay by April 19, 2013, the outstanding items set forth in Table B, below.

Table A

| Item | Amount (in 000's) |
|---|---|
| 3rd Party Returns -- Past Due despite WAGs having received vendor credit | $10,777.4 |
| 3rd Party Returns – Bankrupt/Inactive or Out of Business vendors | $2,538.7 |
| DSD & Warehouse Agreement -- Outstanding Audit Requests (amounts incorrectly taken by WAGs based on prior audits) | $990.2 |
| DSD Agreement – Unpaid Invoices past due | $1,283.0 |
| Axcan/Novation – denied chargebacks due to WAGs adding items to two different GPOs | $620.0 |
| Borschow – Unauthorized deductions claimed by WAGs | $564.5 |
| **Total** | **$16,773.8** |

Table B

| Item | Amount (in 000's) |
|---|---|
| Warehouse Agreement – Overage, Shortage & Damage claimed by WAGs | $3,662.0 |

HIGHLY CONFIDENTIAL

WAGMDL00682165