# PSJ18 WALGREENS Opp Exh 56

```
 1         IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF OHIO
 3                   EASTERN DIVISION
 4                       - - -
 5
     IN RE:  NATIONAL         :   HON. DAN A.
 6   PRESCRIPTION OPIATE      :   POLSTER
     LITIGATION               :
 7                            :
     APPLIES TO ALL CASES     :   NO.
 8                            :   1:17-MD-2804
                              :
 9
                - HIGHLY CONFIDENTIAL -
10
     SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
11
                         - - -
12
                   October 25, 2018
13
                         - - -
14
15              Videotaped deposition of
     EDWARD HAZEWSKI, taken pursuant to
16   notice, was held at the law offices of
     Reed Smith, LLP, 1717 Arch Street,
17   Philadelphia, Pennsylvania, beginning at
     9:36 a.m., on the above date, before
18   Michelle L. Gray, a Registered
     Professional Reporter, Certified
19   Shorthand Reporter, Certified Realtime
     Reporter, and Notary Public.
20
                         - - -
21
22         GOLKOW LITIGATION SERVICES
        877.370.3377 ph | 917.591.5672 fax
23              deps@golkow.com
24
```

Highly Confidential - Subject to Further Confidentiality Review

| | | |
|---|---|---|
| 1 | | thresholds."  Do you see that? |
| 2 | A. | Yes. |
| 3 | Q. | Okay.  He then says, "Since ABC's position can't get any worse."  Do you see that? |
| 6 | A. | Yes. |
| 7 | Q. | Do you have any understanding when he said this to you, what he meant by that? |
| 10 | A. | I have no idea. |
| 11 | Q. | Okay.  He says, "My recommendation would be to send a formal letter to DEA outlining the issue and requesting a formal opinion." |
| 15 | | Do you see that? |
| 16 | A. | Yes. |
| 17 | Q. | Do you have any recollection about whether a formal letter was ever sent to the DEA about disclosing threshold levels? |
| 21 | A. | I do not. |
| 22 | Q. | Okay.  It's your understanding that the policy at ABDC has always been not to divulge threshold |

Highly Confidential - Subject to Further Confidentiality Review

1 levels?
2     A.   Yes.
3     Q.   You are not aware of any
4  change after this where they then said
5  you could divulge threshold levels to
6  customers?
7     A.   I am not aware of such a
8  change.
9     Q.   If there was a change, given
10 your role in the company, it's something
11 you would have been aware of, correct?
12          MR. NICHOLAS:  Object to the
13     form.  Go ahead.
14          THE WITNESS:  Yes.
15 BY MR. PIFKO:
16     Q.   Are you aware -- from time
17 to time was it the company's practice to
18 send formal letters to DEA asking for
19 their position on -- on certain issues?
20     A.   I wasn't involved in
21 composing letters of that kind.  I -- I
22 don't know if they communicated.  I'm
23 sure there's been questions asked but
24 beyond that I couldn't say.

1         Q.    Okay.  Are you aware, other
2 than the discussion here about doing that
3 in this context, are you aware of any
4 discussion about doing that kind of thing
5 in any other context?
6         A.    No.
7             (Document marked for
8         identification as Exhibit
9         ABDC-Hazewski-6.)
10            (Document marked for
11        identification as Exhibit
12        ABDC-Hazewski-7.)
13 BY MR. PIFKO:
14         Q.    I'm going to hand you two
15 exhibits, what's marked as Exhibit 6 and
16 Exhibit 7.
17         For the record, Exhibit 6 is
18 a one-page e-mail Bates labeled
19 ABDCMDL00282490.
20         And Exhibit 7 is a document
21 that was attached to that, was produced
22 in native, Bates labeled ABDCMDL00282491.
23         Take a minute to review
24 those and let me know when you're done.

```
 1        A.   I've reviewed.
 2        Q.   Okay.  Do you recall sending
 3   e-mails to Walgreens people?
 4        A.   Yes.
 5        Q.   Okay.  This is an e-mail
 6   dated April 8, 2014, from you to a whole
 7   host of people at Walgreens.  Do you see
 8   that?
 9        A.   Yes.
10        Q.   Okay.  And you say, "Team
11   WAG, find attached some data that I
12   believe could be the basis for part of
13   our discussion.  Briefly, the first tab
14   is all Walgreens locations that had
15   Schedule II controlled substance order
16   lines flagged by the order monitoring
17   program, sorted largest (most lines) to
18   smallest.  We can discuss further
19   tomorrow."
20             Do you see that?
21        A.   Yes.
22        Q.   Do you agree that you sent
23   them the attached spreadsheet?
24        A.   Yes.
```

1      Q.    If you look at that
2  spreadsheet, among, in addition to
3  disclosing the information that you
4  discuss in your e-mail.  If you look, one
5  of the columns is the threshold.
6            Do you see that?
7      A.    Yes.
8      Q.    And then it lists the
9  threshold for each location.  Do you see
10 that?
11     A.    Yes.
12     Q.    Is that correct?
13     A.    That's correct.
14     Q.    If it was against the
15 company's policy and the DEA told you not
16 to share thresholds, why were you sending
17 them to Walgreens?
18     A.    Well, the information that
19 was sent, and I believe the basis for
20 this message, was a request received from
21 Walgreens' pharmacy integrity unit, which
22 that unit are the people who are listed
23 on this e-mail.
24            Their pharmacy integrity

```
 1   group are their version of our diversion
 2   control team.  So they monitored their
 3   internal customer orders.  And we worked
 4   on a regular basis hand in hand with that
 5   group with the -- obviously, the goal
 6   jointly to help monitor the customer
 7   orders generated by their stores.
 8              They had made a request at
 9   some point that orders submitted by their
10   stores that breach a threshold just be
11   canceled and not reviewed any further,
12   that they would not like those orders to
13   be filled.
14              So this -- I can't say this
15   for certain.  But I believe the sending
16   of this information was in furtherance of
17   their request and our joint efforts to
18   work together to try to, you know,
19   achieve our goals.
20        Q.    Was it a regular occurrence
21   for you to send data that included the
22   thresholds and order monitoring program
23   details to Walgreens?
24        A.    A regular occurrence, no.
```