# PSJ18 WALGREENS Opp Exh 59

Highly Confidential - Subject to Further Confidentiality Review

```
 1          IN THE UNITED STATES DISTRICT COURT
 2           FOR THE EASTERN DISTRICT OF OHIO
 3                    EASTERN DIVISION
 4                       -  -  -
 5   IN RE:  NATIONAL      :  MDL NO. 2804
     PRESCRIPTION OPIATE   :
 6   LITIGATION            :
     ---------------------------------------------
 7                         :  CASE NO.
     THIS DOCUMENT         :  1:17-MD-2804
 8   RELATES TO ALL CASES: :
                           :  Hon. Dan A.
 9                         :  Polster
10                       -  -  -
               Friday, December 14, 2018
11                       -  -  -
12      HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
                 CONFIDENTIALITY REVIEW
13
                         -  -  -
14
                    Videotaped deposition of
15      ELIZABETH GARCIA, taken pursuant to
        notice, was held at the law offices of
16      Reed Smith LLP, Three Logan Square, 1717
        Arch Street, Suite 3100, Philadelphia,
17      Pennsylvania 19103, beginning at 9:49
        a.m., on the above date, before Amanda
18      Dee Maslynsky-Miller, a Certified
        Realtime Reporter.
19
                         -  -  -
20
21
22
23          GOLKOW LITIGATION SERVICES
         877.370.3377 ph | 917.591.5672 fax
24                deps@golkow.com
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    -  -  -
 2   BY MR. CLUFF:
 3        Q.    It's a multipage e-mail.
 4             Go ahead and read the
 5   entirety of the document so you can feel
 6   familiar with it.
 7        A.    I don't remember this,
 8   but --
 9        Q.    But have you had a chance to
10   look through it and kind of familiarize
11   yourself with it?
12        A.    A little bit, yes.
13        Q.    Let's start at the top.
14             The last e-mail in this
15   chain, which is the top e-mail on the
16   first page, it's from Sharon Hartman to a
17   number of ABC associates, it looks
18   like -- sorry, I said ABC, I meant
19   AmerisourceBergen.
20             You're included on the
21   addressee list, correct?
22        A.    Yes.
23        Q.    And do you see the subject
24   line says, Weekly OMP statistics?
```

```
 1        A.    Yes.
 2        Q.    Do you recall, during your
 3   time at AmerisourceBergen, that
 4   AmerisourceBergen shared weekly OMP
 5   statistics with Walgreens?
 6        A.    Yes.
 7        Q.    What are OMP statistics?
 8        A.    Purchases and which
 9   customers, which stores, might have hit
10   the OMP.
11        Q.    When you say "might have,"
12   did you tell Walgreens, like, hey, this
13   store might have hit their threshold or
14   that they actually hit?
15              MS. MCCLURE:  Objection to
16        form.
17              THE WITNESS:  They hit OMP.
18   BY MR. CLUFF:
19        Q.    So the weekly OMP
20   statistics, as I understand it from what
21   you just told me, was a report that
22   AmerisourceBergen gave to Walgreens about
23   which stores hit or exceeded their OMP
24   parameters, correct?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.    Which orders hit OMP, yes.
 2          Q.    Was there any other data
 3   included in those statistics that you
 4   provided to Walgreens?
 5          A.    I don't recall.
 6          Q.    I had you set aside -- no,
 7   never mind.
 8                So continuing with what we
 9   marked as Exhibit-9, if you look at the
10   very last page, there's an e-mail that
11   starts from Lino Guerreiro.  It goes to
12   Natasha Polster, Eric Stahmann, Patricia
13   Daugherty, Christopher Dymon, Edward
14   Bratton, Nick Leners.
15                Those are all in the "to"
16   line; is that correct?
17          A.    Yes.
18          Q.    Are those all Walgreens
19   employees?
20          A.    Yes.
21          Q.    So that seems to be accurate
22   with your recollection about providing
23   this data to Walgreens, correct?
24          A.    Correct.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1         Q.    So when you say they were
 2   "your counterparts," could you describe
 3   what that means?
 4         A.    They were investigators
 5   also.
 6         Q.    And what were they
 7   investigating?
 8         A.    They monitored their own
 9   accounts.
10         Q.    Was there a special or
11   unique relationship between the diversion
12   control team and the WAG team?
13              MS. MCCLURE:  Objection to
14         form.
15              THE WITNESS:  We were
16         counterparts for our respective
17         businesses.
18   BY MR. CLUFF:
19         Q.    Was there any communication
20   between the diversion control team and
21   the WAG integrity team if a Walgreens'
22   order exceeded thresholds?
23              MS. MCCLURE:  Objection to
24         form.
```

```
 1                THE WITNESS:  If we saw
 2        something unusual, we would call
 3        it to their attention.
 4   BY MR. CLUFF:
 5        Q.    What happened after you
 6   called it to their attention?
 7                MS. MCCLURE:  Objection to
 8        form.
 9                THE WITNESS:  I don't know
10        what they did.
11   BY MR. CLUFF:
12        Q.    Would AmerisourceBergen ever
13   take action on an order that exceeded
14   threshold without talking to the WAG
15   integrity team?
16                MS. MCCLURE:  Objection to
17        form.
18                THE WITNESS:  Generally, no.
19   BY MR. CLUFF:
20        Q.    I've been saying WAG
21   integrity team.
22                I'm using the abbreviation,
23   W-A-G, do you know that to mean
24   Walgreens?
```

```
 1          A.    Yes.
 2          Q.    I'll clear that up in the
 3   future.  I just wanted to be on the same
 4   page.
 5                So you said that, generally,
 6   no, Amerisource didn't take action on
 7   orders that exceeded threshold without
 8   talking to Walgreens, right?
 9          A.    Correct.
10          Q.    So what happened after, in
11   your experience, AmerisourceBergen
12   communicated to Walgreens about an order
13   that exceeded threshold?
14                MS. MCCLURE:  Objection to
15          form.
16                THE WITNESS:  I don't know
17          what action they took on their
18          end.
19   BY MR. CLUFF:
20          Q.    Did you receive any
21   communications back from the Walgreens
22   integrity team at that point?
23                MS. MCCLURE:  Objection to
24          form.
```

```
 1                THE WITNESS:  Either at that
 2        point or in the future, once they
 3        resolved the issue.
 4   BY MR. CLUFF:
 5        Q.    What do you mean by
 6   "resolved the issue"?
 7        A.    Whether that is a legitimate
 8   need for their patients or not, that
 9   order.
10        Q.    And what would happen if
11   Walgreens determined that an order was
12   not for the legitimate needs of a
13   patient --
14                MS. MCCLURE:  Objection to
15        form.
16   BY MR. CLUFF:
17        Q.    -- at AmerisourceBergen;
18   would the order be cancelled?
19        A.    They would indicate, please
20   cancel.
21        Q.    At that point, would you
22   cancel the order?
23                MS. MCCLURE:  Objection to
24        form.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                THE WITNESS:  Yes.
 2   BY MR. CLUFF:
 3       Q.    And when I say "you," I mean
 4   AmerisourceBergen.
 5                After you cancelled the
 6   order, would you report that to the DEA?
 7                MS. MCCLURE:  Objection to
 8        form.
 9                THE WITNESS:  Yes.  Unless
10        it was human error or something
11        like that.
12   BY MR. CLUFF:
13       Q.    I want to look now again
14   back to Exhibit-9.
15                The second page, your e-mail
16   in the top part of the page is the one
17   dated November 21, 2014.
18                You say, I agree that action
19   needs to be taken on Walgreens -- which
20   is abbreviated, WAG's -- part to make
21   sure that -- ensure they do not order
22   large amounts over threshold.
23                Do you see that?
24       A.    I see that.
```