# PSJ18 WALGREENS Opp Exh 62



# Memorandum

**To:** Todd Polarolo

**From:** Justin Joseph

**Date:** 5/27/2006

**Re:** DEA Audit Preliminary Response 03-06-06

---

**Accountability:**
Store #05828 never filed a claim for WIC 675756, which was stolen from the courier. We filed a DEA Form 106, and the control drug "shipments by item" indicates product was shipped; therefore, the store was billed for controlled drugs they did not receive. The DEA checked 8 WICs total, and the remaining 7 were correct. They noted that we were very accurate in following items through the DC.

**Security:**
Current cage does not meet requirements and there were no recommendations due to upcoming construction for CII. They praised our alarm and camera system and were highly complementary of our card access program. Acknowledged Tonia by name on her effectiveness

**1301.74(b):**
DEA feels that the suspicious ordering report is inadequate: they specifically did not like the DEA Factor and would like to know how we determine it. They would like a better description of the formula used to determine a suspicious order. The explanation of the formula is: All stores are put into groups of 25 based on the amount of daily prescriptions filled. The average is then taken from the orders to the DC on each group of 25. The result is Average order * DEA factor = trigger. They said the formula should be based on (Size, pattern, frequency).

**1301.74(e)**
Said we should not be identifying control totes by the Red Seal. Currently we only use Red Seals for totes containing controlled substances.

**1304.04(a)**
Since we do not have the original POs in-house, we should have filed for central record keeping.

**1304.11(a)**
We provided them with three inventories: initial, 1 year, and biennial. The biennial was the only one to indicate that it was taken at the close of business. This should be included in the CM-15 manual.

**1304.22(b)**
They felt that report repb309 was inadequate to use as a primary receiving record. They indicated that report repb263 was a more accurate report to use for that document as it most closely resembled a PO.

**"PRESCRIPTION FOR SUCCESS"**

HIGHLY CONFIDENTIAL

WAGMDL00709508

*November 14, 2008*

However they did indicate it lacked some information and did note that some of the DEA numbers were incorrect or old.

### 1309.71(8)
When we provided them with the list of PSE list one items, they asked how many were just List One. We could not give them only List One items, we need to be able to query PSE List One and Non-PSE List One items. In addition they found one WIC 664464 PSEUDOEPHEDRINE 30MG TAB (RUG)+24 was not listed as "PSE LIST ONE" under the special product type. Jill Nailor is currently working with the Item/Vendor team on the marketing side.

### 1310.03(f)
They asked how we determine when a regulated transaction has been met. We could not provide them with a report listing regulated transactions. This should be based on the item and the milligrams of Pseudoephedrine that it contains. Who sets the threshold for regulated transactions, how is this determined? We are required to know this at the DC level.

### 1310.05(a)(1)
### 1310.05(b)
This is similar to the response to 1301.74(b), but the formula can't be based on prescriptions because the product is sold over the counter. They also stated that we are required to call in suspicious orders within 24 hours and should follow up with a written report within 15 days. We should not use averages due to spikes in orders during cold, flu, and allergy season. They also said that analysis is required we should not rely soley on a report.

### 1310.06(a)(3)
The Milligram should be listed for every transaction on report sbpb657 "special product type- shipped item report" and AHPB021 "Received Item by Product Category" report.

### Closing notes:
We are doing a great job in the DC of distributing Control and PSE List One but should have a better working knowledge on processes that happen outside of the DC. We should not have to rely on corporate to provide all of the answers.

They are going to recommend a Letter of Admonition (LOA), as it was our first DEA audit. We will have 30 days to respond to the letter. If our response meets their requirements, we will not hear back from them. They also stated that we can call them for their input prior to making any changes.

We were informed that at our next audit they will be reviewing the list of items from the letter of admonition. If we are found to be non-compliant, civil fines average $10,000 per transaction.

They also stated they can review other DC's audits to determine if there have been ongoing issues with the same regulations. Fines could be issued to all DC's.

They thanked us for our cooperation and hospitality.

2

HIGHLY CONFIDENTIAL

WAGMDL00709509