PSJ11 CVS Opp Exh 19

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document related to:<br><br>*Track One Cases.* | MDL No. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

### CVS'S WRITTEN RESPONSES TO TOPICS 8, 9, 12, 13, AND 14 OF PLAINTIFFS' AMENDED SECOND NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6)

Defendants CVS Indiana, L.L.C. and CVS Rx Services, Inc. ("CVS") provide below their written responses to Topics 8, 9, 12, 13, and 14 of Plaintiffs' Amended Second Notice of Deposition Pursuant to Rule 30(b)(6).

### OBJECTIONS

CVS makes these responses subject to and without waiving its General Objections, Objections to Plaintiffs' Assertions of CVS's Duty to Prepare, Objections to Definitions, Objections to the Relevant Time Period, and specific Objections to Topics 8, 9, 12, 13, and 14 set forth in CVS's July 25, 2018 Objections to Plaintiffs' Amended Second Rule 30(b)(6) Notice.

### WRITTEN RESPONSES

8. The source and type of data known to be available to You and that You obtained about pharmacies in CT1 jurisdictions from internal sources or external sources (e.g., IMS Health, QuintilesIMS, IQVIA, Pharmaceutical Data Services, Source Healthcare Analytics, NDS Health Information Services, Verispan, Quintiles, SDI Health, ArcLight, Scriptline, Wolters Kluwer, PRA Health Science, Value Centric and/or data miner vendor) related to Your distribution of HCPs and/or investigation of potentially suspicious orders of HCPs. (As redrafted in Dan Goetz's October 22, 2018 Letter to Eric Delinsky and Paul Hynes.)

CVS objects to redrafted Topic 8 on the same general and specific grounds it objected to Topic 8 prior to redrafting, including on the ground that it is vague and ambiguous (*see. e.g.,* "related to Your distribution of HCPs"). CVS further objects to redrafted Topic 8 to the extent it calls for dispensing data beyond the scope of Discovery Ruling No. 8. Subject to and without waiving these objections, CVS responds as follows. To the best of the company's knowledge at this time, CVS did not obtain data for pharmacies located in the Track One jurisdictions from IQVIA or other external data sources for use in its suspicious order monitoring of HCP orders from those pharmacies. Individuals responsible for reviewing HCP orders that were identified through CVS's suspicious order monitoring system had access to databases containing internal CVS data. These databases contained data reflecting the dispensing and ordering of HCPs by CVS pharmacies. In addition, reviewers were able to obtain information regarding particular HCP orders by placing calls to CVS pharmacists and/or field personnel.

9. **All information you provided or received from 867 to 852 sales data, whether via internal or external sources, related to the sale or distribution of control [sic] substances.**

    To the best of the company's knowledge at this time, CVS did not provide or receive 867 or 852 sales data related to the sale or distribution of HCPs during the relevant period.

12. **The volume, manufacturer, type, size, dosage, buyer and date of each order of prescription opiate sold into the CT1 jurisdictions from 1995 to the present.**

    *See* CVS-MDLT1-00003782 – 00007364.

13. **For each such transaction, the cost of your purchase and the price of your resale.**

    CVS's mainframe system does not record the costs paid by CVS for items it ships to CVS retail pharmacies, nor would it be possible through reasonable efforts to ascertain that information. The mainframe only records the price to CVS of the items it ships as of the time of

shipment, which may or may not reflect the price CVS paid for the items at the time it purchased them from a manufacturer or wholesaler.

The "price of … resale" for items distributed from CVS to CVS retail pharmacies is the same as the price that a manufacturer or wholesaler would charge CVS for the item at the time it was shipped to a CVS retail pharmacy. Money does not change hands between CVS and a CVS retail pharmacy to which it ships items. The transaction is reflected in a book entry in the mainframe.

14. **Each suspicious order You received between January 1, 1995 to the present arising out of the CT1 jurisdictions and whether each was declined, shipped and/or reported as well as the due diligence performed arising out of each suspicious order reported to the DEA.**

The only opioids within Discovery Ruling Nos. 2 and 3 that CVS distributed were hydrocodone combination products (HCPs). CVS only distributed HCPs to CVS pharmacies, and CVS only did so during the time when DEA classified HCPs as Schedule III controlled substances. CVS therefore has not distributed HCPs since September 2014.

To date, CVS has not located information indicating that it identified a suspicious order for an HCP arising out of the Track One jurisdictions during the relevant time period.

When CVS determines that an order for a controlled substance is suspicious, its policy is and has been to decline to ship the order and to report the order to the DEA.

Dated: November 15, 2018	Respectfully submitted,

*/s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
Paul B. Hynes, Jr.
Zuckerman Spaeder LLP
Suite 1000
1800 M Street, NW
Washington, DC 20036
202-778-1800
202-822-8106 (fax)
edelinsky@zuckerman.com
smiller@zuckerman.com
phynes@zuckerman.com

*Counsel for CVS Indiana, L.L.C., and CVS Rx Services, Inc.*

## CERTIFICATE OF SERVICE

I, Eric R. Delinsky, certify that on November 15, 2018, I caused CVS Indiana, L.L.C.'s and CVS Rx Services, Inc.'s Written Response Topics 8, 9, 12, 13, and 14 of Plaintiffs' Amended Second Notice of Deposition Pursuant to Rule 30(b)(6) to be served on counsel of record for plaintiffs and defendants pursuant to the Order Concerning Service in the Track One Cases, dated September 17, 2018.

    For Plaintiffs:    mdl2804discovery@motleyrice.com

    For Defendants:    xALLDEFENDANTS-MDL2804-Service@arnoldporter.com

/s/ *Eric R. Delinsky*
Eric R. Delinsky