# PSJ4 SOL Opp Exh 24

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

### SUMMIT COUNTY AND CITY OF AKRON, OHIO PLAINTIFF FIRST AMENDED RESPONSES AND OBJECTIONS TO DISTRIBUTOR DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Case Management Order in *In re National Prescription Opiate Litigation*, No. 1:17-cv-2804 (Dkt. No. 232), the County of Summit, Ohio and the City of Akron, Ohio (collectively "Plaintiff") hereby responds to Distributor Defendants'[1] First Set of Interrogatories (the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

### OBJECTIONS

The following objections apply to each Interrogatory. To the extent that certain specific objections are cited in response to an individual Interrogatory, those specific objections are provided because they are applicable to that specific Interrogatory and are not a waiver of the other objections applicable to information falling within the scope of such Interrogatory.

1.     Plaintiff objects to each Interrogatory to the extent they are overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seek

---

[1] The Distributor Defendants are AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively "Distributors").

to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the ESI Protocol entered in this matter or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      Plaintiff objects to each Interrogatory to the extent they seek information restricted from dissemination pursuant to court order, statute, or regulation.  Further, any response made by Plaintiff to the Interrogatories is not intended to waive, and does not constitute any waiver of, any objection to the admissibility, authenticity, competency or relevance of the information produced or identified.

3.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained or document provided herein.  All such objections and the grounds therefore are hereby reserved.

4.      No admission of any nature whatsoever is to be implied or inferred in these responses.  The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

5.      Plaintiff objects to each Interrogatory to the extent Plaintiff has not yet completed its investigation of the facts relating to this action and has not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

6.      Plaintiff objects to each Interrogatory to the extent they purport to require Plaintiff to produce documents that are in the public domain or otherwise available to Distributors as easily from other sources as from Plaintiff.

2

7.     Plaintiff objects to each Interrogatory to the extent they purport to state facts, assumptions, or characterizations that are disputed.

8.     Plaintiff objects to each Interrogatory to the extent they seek information more appropriately obtained through other methods of discovery.

9.     Plaintiff objects to each Interrogatory to the extent that they seek information that is proprietary or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

10.     Plaintiff objects to each Interrogatory to the extent they seek confidential investigative, personal, or health information in Plaintiff's possession, custody, or control (collectively, "Confidential Information").

11.     Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its general and specific objections and without waiver of any objection.

12.     Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control."

13.     Plaintiff objects to each Interrogatory to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions.  In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

14.     Plaintiff objects to each Interrogatory to the extent they seek information that is not within Plaintiff's possession, custody, or control, seek documents that do not already exist, or

which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff.

15.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

16.     Plaintiff intends to complete its responses by the time agreed upon by the parties for the completion of discovery, or by the date ordered by the Court.  Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Interrogatories.  All final decisions regarding whether any information will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of written discovery.

17.     Plaintiff objects to the Distributors' instruction that:  "Each Plaintiff must individually respond to each of these Interrogatories."  No federal rule prevents Plaintiff from submitting collective answers to Distributors' collective Interrogatories.  Where the responses and objections to these Interrogatories are the same for each Plaintiff, a collective response herein will in no way prejudice Defendants.  In each instance where the answers are not the same for each Plaintiff, any differences have been set forth herein with particularity.

## NON-WAIVER

1.     Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.     If Plaintiff, in response to any Interrogatory, inadvertently discloses information that is or could be the subject of the objections stated herein, such disclosure is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information disclosed.

3.      Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.      Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses.  Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatory 1

State the years during which you claim each Distributor Defendant engaged in conduct for which You seek damages.

### Response 1

Plaintiff objects that this Interrogatory contains a reference to an ambiguous phrase, "conduct."  Subject to and without waiving all objections, Plaintiff incorporates the allegations in its second amended complaint.  In addition, Plaintiff's investigation of its damages caused by the Defendants is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.  Subject to and without waiving any objections, Plaintiff responds that every year a given Distributor Defendant distributed opioids is relevant.  Plaintiff reserves the right to supplement, amend or modify this response as discovery proceeds.

### Interrogatory 2

Identify each pharmacy within Your geographical boundaries that placed Suspicious Orders for Prescription Opioids for each year of the Timeframe.

**Response 2**

Plaintiff objects that this Interrogatory is vague as to "Suspicious Orders."  Plaintiff further objects to this request in that it calls for information in the Distributors' possession or control, or just as available to Distributors from its own business dealings or third-party sources as may be available to Plaintiff, and thus places an undue burden on Plaintiff to gather.

Subject to and without waiving all objections, Plaintiff responds as follows:

Defendants have several responsibilities under state and federal law with respect to control of the supply chain of opioids.  The U.S. Department of Justice Drug Enforcement Administration provides a series of guidelines on Suspicious Orders Reporting ("SOR"), contained in the Chemical Handlers Manual, that "are intended to assist chemical manufacturers, distributors, wholesalers and retailers to be alert to suspicious orders involving listed chemicals," which include opioids.  "The guidelines are intended to apply to all aspects of commercial chemical manufacturing and distribution." Defendants must set up a system to prevent diversion, including excessive volume and other suspicious orders. This includes reviewing Defendants' own data, relying on their observations of prescribers and pharmacies, and following up on reports or concerns of potential diversion. All suspicious orders must be reported by Defendants to relevant enforcement authorities. Further, distributors must also stop shipment of any order which is flagged as suspicious and only ship orders which were flagged as potentially suspicious if, after conducting due diligence, they can determine that the order is not likely to be diverted into illegal channels.

The Controlled Substances Act requires manufacturers and distributors of Schedule II substances like opioids to: (a) limit sales within a quota set by the DEA for the overall production of Schedule II substances like opioids; (b) register to manufacture or distribute opioids; (c) maintain effective controls against diversion of the controlled substances that they

manufacture or distribute; and (d) design and operate a system to identify suspicious orders of controlled substances, halt such unlawful sales, and report them to the DEA.

To ensure that even drugs produced within quota are not diverted, federal regulations issued under the CSA mandate that all registrants, manufacturers and distributors alike, "design and operate a system to disclose to the registrant suspicious orders of controlled substances." 21 C.F.R. § 1301.74(b). Registrants are not entitled to be passive (but profitable) observers, but rather "shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant." *Id.* Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency. *Id.* Other red flags may include, for example, "[o]rdering the same controlled substance from multiple distributors." *Id.*

These criteria are disjunctive and are not all inclusive. For example, if an order deviates substantially from a normal pattern, the size of the order does not matter and the order should be reported as suspicious. Likewise, a distributor or manufacturer need not wait for a normal pattern to develop over time before determining whether a particular order is suspicious. The size of an order alone, regardless of whether it deviates from a normal pattern, is enough to trigger the responsibility to report the order as suspicious. The determination of whether an order is suspicious depends not only on the ordering patterns of the particular customer but also on the patterns of the entirety of the customer base and the patterns throughout the relevant segment of the industry. For this reason, identification of suspicious orders serves also to identify excessive volume of the controlled substance being shipped to a particular region.

Defendants have continued to integrate vertically by acquiring businesses that are related to the distribution of pharmaceutical products and health care supplies. In addition to the actual distribution of pharmaceuticals, as wholesalers, Distributor Defendants also offer their

pharmacy, or dispensing, customers a broad range of added services. For example, Distributor Defendants offer their pharmacies sophisticated ordering systems and access to an inventory management system and distribution facility that allows customers to reduce inventory carrying costs. Distributor Defendants are also able to use the combined purchase volume of their customers to negotiate the cost of goods with manufacturers and offer services that include software assistance and other database management support.  As a result of their acquisition of a diverse assortment of related businesses within the pharmaceutical industry, as well as the assortment of additional services they offer, Distributor Defendants have a unique insight into the ordering patterns and activities of their dispensing customers.

Despite Defendants' obligations to monitor and report suspicious orders, the ARCOS database identifies these pharmacies as having suspicious orders for opioids within Summit County, Ohio[2]:

| PHARMACY/BUYER NAME | CITY/STATE |
| --- | --- |
| Dr. A. J. GINGO | AKRON, OH |
| THE FRED W ALBRECHT GROCERY CO | STOW, OH |
| RITZMAN PHARMACY #107 | AKRON, OH |
| SUMMIT PAIN SPECIALISTS PHARMACY | STOW, OH |
| RITZMAN PHARMACY #106 | NORTON, OH |
| THE FRED W ALBRECHT GROCERY | AKRON, OH |
| SKILLED CARE PHARMACY-CLEV | TWINSBURG, OH |
| WALGREEN CO. | CUYAHOGA FALLS, OH |
| RITZMAN PHARMACY #101 | AKRON, OH |
| OHIO CVS STORES, L.L.C. | AKRON, OH |
| ACME PHARMACY #11 | TALLMADGE, OH |
| WALGREEN CO. | AKRON, OH |
| MARC GLASSMAN INC | AKRON, OH |
| RITE AID OF OHIO, INC. | BARBERTON, OH |

---

[2] This does not account for the flood of opioids from surrounding counties and states; Plaintiff expressly reserves its right to amend, modify or supplement on this point.

| | |
|---|---|
| TARGET STORES A DIV. OF TARGET CORP. | AKRON, OH |
| KLEIN'S PHARMACY | CUYAHOGA FALLS, OH |
| GIANT EAGLE PHARMACY #4036 | CUYAHOGA FALLS, OH |
| CHILDRENS HOSPITAL MED CTR | AKRON, OH |
| FRED W ALBRECHT GROCERY CO | AKRON, OH |
| GLASSMAN INC | SAGAMORE HILLS, OH |
| RITE AID OF OHIO, INC. | AKRON, OH |
| RITE AID OF OHIO, INC. | TALLMADGE, OH |
| SUMMA HEALTH SYSTEM | AKRON, OH |
| GIANT EAGLE PHARMACY #5878 | CUYAHOGA FALLS, OH |
| THE FRED W ALBRECHT GROCERY | AKRON, OH |
| AKRON PHARMACY | AKRON, OH |
| GIANT EAGLE PHARMACY #6299 | NORTHFIELD, OH |
| KLEIN'S COMMUNITY HEALTH | AKRON, OH |
| MARCS CHAPEL HILL INC | CUYAHOGA FALLS, OH |
| TARGET STORES A DIV.OF TARGET CORP. | FAIRLAWN, OH |
| KMART PHARMACY #7383 | BARBERTON, OH |
| THE FRED W ALBRECHT GROC CO | NORTON, OH |
| RITZMAN PHARMACY #105 | AKRON, OH |
| THE FRED W ALBRECHT GROCERY | HUDSON, OH |
| RITE AID OF OHIO, INC. | FAIRLAWN, OH |
| THE FRED W ALBRECHT GROCERY | STOW, OH |
| RITE AID OF OHIO, INC. | AKRON, OH |
| THE FRED W ALBRECHT GROCERY | CUYAHOGA FALLS, OH |
| GIANT EAGLE PHARMACY #4031 | BARBERTON, OH |
| GIANT EAGLE PHARMACY #4030 | TALLMADGE, OH |
| RITE AID OF OHIO, INC. | AKRON, OH |
| COLONIAL PHARMACY | BATH, OH |
| MARC | AKRON, OH |
| NEW CHOICE PHARMACY | CUYAHOGA FALLS, OH |
| VA OUTPATIENT CLINIC | AKRON, OH |
| RITE AID OF OHIO, INC. | AKRON, OH |

GIANT EAGLE PHARMACY #4124          AKRON, OH

GIANT EAGLE PHARMACY #4029          AKRON, OH

Further, Plaintiff identifies these pharmacies as having the largest shipments of opioids:

| PHARMACY NAME | ADDRESS |
| --- | --- |
| KLEIN'S PHARMACY | KLEIN BARRY E<br>2015 STATE RD<br>CUYAHOGA FALLS, OH  44223 |
| THE FRED W ALBRECHT GROCERY CO | 4302 ALLEN RD SUITE #110<br>STOW, OH  44224 |
| NEW CHOICE PHARMACY | 1900 23RD STREET<br>CUYAHOGA FALLS, OH  44223 |
| RITE AID OF OHIO, INC. | 325 EAST WATERLOO ROAD<br>AKRON, OH  44319 |
| RITZMAN PHARMACY #101 | 1323 COPLEY RD<br>AKRON, OH  44320 |
| OHIO CVS STORES, L.L.C. | 590 EAST MARKET STREET<br>AKRON, OH  44304 |
| SUMMIT PAIN SPECIALISTS PHARMACY | 4302 ALLEN RD SUITE 300<br>STOW, OH  44224 |
| GIANT EAGLE PHARMACY #4031 | 41 5TH STREET SE<br>BARBERTON, OH  44203 |
| WALGREEN CO. | 2645 STATE RD<br>CUYAHOGA FALLS, OH  44223 |
| WALGREEN CO. | 302 CANTON ROAD<br>AKRON, OH  44312 |
| THE FRED W ALBRECHT GROCERY | DBA ACME PHARMACY #18<br>2147 EAST AVENUE<br>AKRON, OH  44314 |
| WALGREEN CO. | 1130 S. ARLINGTON ST<br>AKRON, OH  44306 |
| OHIO CVS STORES, L.L.C. | 3352 KENT ROAD<br>STOW, OH 44224 |
| WALGREEN CO. | 900 WOOSTER RD NORTH<br>BARBERTON, OH  44203 |
| RITE AID OF OHIO, INC. | 1540 CANTON ROAD<br>AKRON, OH  44312 |
| HIGHLAND SQUARE PHCY | 786 W MARKET ST<br>AKRON, OH  44303 |
| OHIO CVS STORES, L.L.C. | 1225 CANTON RD<br>AKRON, OH  44312 |

| | |
|---|---|
| WALGREEN CO. | 1303 COPLEY ROAD<br>AKRON, OH  44320 |
| RITZMAN PHARMACY #107 | 157 WEST CEDAR STREET<br>AKRON, OH  44307 |
| NEW CHOICE PHARMACY | 1900 23RD STREET<br>CUYAHOGA FALLS, OH  44223 |
| RITE AID OF OHIO, INC. | 1047 KENMORE BOULEVARD<br>AKRON, OH  44314 |
| GIANT EAGLE PHARMACY #4124 | 484 EAST WATERLOO RD<br>AKRON, OH  44319 |
| WALGREEN CO. | 830 BRITTAIN RD<br>AKRON, OH  44305 |
| OHIO CVS STORES, L.L.C. | 235 EAST CUYAHOGA FALLS AVE<br>AKRON, OH  44310 |
| OHIO CVS STORES, L.L.C. | 4195 S. CLEVELAND-MASSILLON ROAD<br>NORTON, OH  44203 |
| WALGREEN CO. | 834 W. MARKET STREET<br>AKRON, OH  44303 |
| WALGREEN CO. | 3009 W. MARKET ST.<br>FAIRLAWN, OH  44333 |
| RITZMAN PHARMACY #102 | 390 ROBINSON AVENUE, SUITE A<br>BARBERTON, OH  44203 |
| FRED W ALBRECHT GROCERY CO | DBA ACME PHARMACY #14<br>3235 MANCHESTER RD<br>AKRON, OH  44319 |
| OHIO CVS STORES, L.L.C. | 2091 EASTWOOD AVENUE<br>AKRON, OH  44305 |
| OHIO CVS STORES, L.L.C. | 780 BRITTAIN ROAD<br>AKRON, OH  44305 |
| OHIO CVS STORES, L.L.C. | 1711 STATE RD<br>CUYAHOGA FALLS, OH  44223 |
| OHIO CVS STORES, L.L.C. | 426 ROBINSON AVE.<br>BARBERTON, OH  44203 |
| RITE AID OF OHIO, INC. | 2975 WEST MARKET STREET<br>FAIRLAWN, OH  44333 |
| OHIO CVS STORES, L.L.C. | 1949 WEST MARKET STREET<br>AKRON, OH  44313 |
| RALEY DRUG STORE, INC | 1760 GOODYEAR BLVD<br>AKRON, OH  44305 |
| WALGREEN CO. | 1925 W. MARKET ST.<br>AKRON, OH  44313 |
| OHIO CVS STORES, L.L.C. | 10380 NORTHFIELD ROAD<br>NORTHFIELD, OH  44067 |

11

| | |
|---|---|
| DISCOUNT DRUG MART #33 | 655 PORTAGE TRAIL<br>CUYAHOGA FALLS, OH  44221 |
| GIANT EAGLE PHARMACY #4029 | 2801 EAST WATERLOO ROAD<br>AKRON, OH  44312 |
| GIANT EAGLE PHARMACY #4030 | 205 WEST AVE<br>TALLMADGE, OH  44278 |
| WALGREEN CO. | 9043 DARROW RD<br>TWINSBURG, OH  44087 |
| RITE AID OF OHIO, INC. | 4053 SOUTH MAIN STREET<br>AKRON, OH  44319 |
| RITE AID OF OHIO, INC. | 1403 WOOSTER ROAD WEST<br>BARBERTON, OH  44203 |
| COPE PHARMACY INC | 941 WEST NIMISILA RD<br>AKRON, OH  44319 |
| WALGREEN CO. | 2086 GRAHAM RD.<br>STOW, OH  44224 |
| THE FRED W ALBRECHT GROCERY | DBA ACME PHARMACY #2<br>2420 WEDGEWOOD DRIVE<br>AKRON, OH  44312 |
| RITE AID OF OHIO, INC. | 45 EAST AVENUE<br>TALLMADGE, OH  44278 |
| THE FRED W ALBRECHT GROC CO | DBA: ACME PHARMACY 6<br>3200 GREENWICH ROAD<br>NORTON, OH  44203 |
| HEALTHSPAN INTEGRATED CARE | 1260 INDEPENDENCE AVE<br>AKRON, OH  44310 |

In addition, Plaintiff's investigation of the wrongful conduct of Defendants including the identification of suspicious orders for prescription opioids within the County is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure. Plaintiff reserves the right to supplement, amend or modify this response as discovery proceeds.

**Interrogatory 3**

Identify each pharmacy within Your geographical boundaries that diverted or wrongfully dispensed Prescription Opioids for each year of the Timeframe.

**Response 3**

Plaintiff objects that this Interrogatory is unduly burdensome to the extent it requests Plaintiff to identify each such pharmacy.  Plaintiff further objects to this request to the extent it calls for information in the Distributors' possession or control, or just as available to Distributors from third-party sources as it may be available to Plaintiff, and thus places an undue burden on Plaintiff to gather.

Subject to and without waiving all objections, Plaintiff recently obtained the ARCOS database information and is analyzing this information.  Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will identify such pharmacies.  Plaintiff further responds: See Response to Interrogatory No. 2.

In addition, Plaintiff's investigation of the wrongful conduct of Defendants including the identification of wrongful diversion of prescription opioids within the County is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.  Plaintiff reserves the right to supplement, amend or modify this response as discovery proceeds.

**Interrogatory 4**

Identify Your past or present employees or representatives, for each year of the Timeframe, with knowledge regarding the wrongful abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of (a) Prescription Opioids or (b) other opioids.

**Response 4**

Subject to and without waiving all objections, Plaintiff answers as follows:  Plaintiff has produced organizational charts and custodian lists that identify employees or representatives.  In addition, the table provided below identifies document custodians:

| Name | Title | Jurisdiction |
|---|---|---|
| Honorable Joy Malek Oldfield | Judge, Court of Common Pleas; Member of Summit County Opiate Task Force | Summit |
| Honorable Thomas Teodosio | Judge, Court of Common Pleas; Member of Summit County Opiate Task Force | Summit |
| Dr. Lisa Kohler | Chief Medical Examiner, Summit County | Summit |
| Gary Guenther | Chief Investigator, Summit County Medical Examiner's Office | Summit |
| John Galonski | Civil Division, Summit County Prosecutor's Office | Summit |
| Brad Gessner | Criminal Division, Summit County's Prosecutor's Office | Summit |
| Laurie Fischer | Probation Supervisor, Court of Common Pleas, Second Division | Summit |
| Rich Marountas | Chief Epidemiologist | Summit |
| Leanne Beavers | Director of Clinical Health | Summit |
| Donna Skoda | Health Commissioner | Summit |
| Jerry Craig | Executive Director, ADM | Summit |
| Doug Smith | Doctor, ADM Chief Clinical Officer, ADM | Summit |
| Mary Alice Sonnhalter | Retired, ADM | Summit |
| Aimee Wade | ADM Assoc. Dir. Of Clinical Services, ADM | Summit |
| Christine Croce | Judge, Court of Common Pleas | Summit |
| Brian Nelson | Director of Finance and Budget | Summit |
| Lisa  DiSabato-Moore | Special Projects Administrator, Juvenile Court | Summit |
| Curtis Howard | Chief Probation Officer, Juvenile Court | Summit |
| Getta Kutuchief | Education and Community Outreach Coordinator, Juvenile Court | Summit |
| Becky Ryba | FRRC Coordinator (Family Reunification through Recovery Court), Juvenile Court | Summit |
| Kathryn VanHorn | Crossroads Supervisor, Juvenile Court | Summit |
| Todd Barr | Deputy Medical Examiner, Medical Examiner's Office | Summit |
| Justin Benner | Forensic Investigator, Medical Examiner's Office | Summit |
| Denice DiNapoli | Senior Administrator, Medical Examiner's Office | Summit |
| Clarence Dorsey | Forensic Investigator, Medical Examiner's Office | Summit |
| Lauren Fowler | Forensic Investigator, Medical Examiner's Office | Summit |

| Jasmine Griffin | Forensic Investigator, Medical Examiner's Office | Summit |
|---|---|---|
| Jason Grom | Forensic Investigator, Medical Examiner's Office | Summit |
| Jenna Kolb | Forensic Investigator, Medical Examiner's Office | Summit |
| Michael McGill | Forensic Investigator, Medical Examiner's Office | Summit |
| Steve Perch | Chief Toxicologist, Medical Examiner's Office | Summit |
| Amy Schaefer | Investigator Supervisor, Medical Examiner's Office | Summit |
| George Sterbenz | Chief Deputy Medical Examiner | Summit |
| Kelsie Stopak | Forensic Investigator, Medical Examiner's Office | Summit |
| Robert (Mike) Velten | Forensic Investigator, Medical Examiner's Office | Summit |
| Melanie Hart | Administrative Assistant to Sherri Bevan Walsh, Prosecutor | Summit |
| Jon Baumoel | Prosecutor | Summit |
| Joseph Macalees | Assistant Prosecutor | Summit |
| Colleen Sims | Assistant Prosecutor | Summit |
| Matt  Paolino | Captain , Sheriff's Office | Summit |
| Hilton Baker | Captain, Sheriff's Office | Summit |
| Lori Baker-Stella | Deputy, Sheriff's Office | Summit |
| Carmen Ingram | Deputy , Sheriff's Office | Summit |
| Stacy Milkey | Admin. Asst. , Sheriff's Office | Summit |
| Mike Walsh | Sergeant, Sheriff's Office | Summit |
| Scott Cottle | Lieutenant, Sheriff's Office | Summit |
| Rich Paolucci | Captain , Sheriff's Office | Summit |
| Bill Holland | Public Information Officer, Sheriff's Office | Summit |
| Pat Hunt | Staff, Sheriff's Office | Summit |
| Cpt. Brian Harding | Captain, Technical Services Bureau | Akron |
| Steve Fricker | Deputy Director of Finance | Akron |
| Judge Jon Oldham | Presiding Judge, Recovery / Drug Court | Akron |
| Montrella Jackson | Administrator | |
| Charles Brown | Deputy Mayor for Public Safety, formerly Assistant to the Mayor | Akron |
| Craig Gilbride | Formerly Deputy Mayor for Public Safety, Chief of Police (retired) | Akron |

| | | |
|---|---|---|
| Robert Ross (retired) | Formerly Deputy Mayor for Public Safety, Fire Chief (retired) | Akron |
| Chief Kenneth Ball | Police Chief, formerly Deputy Chief, Investigative Subdivision | Akron |
| Deputy Chief Michael Caprez | Deputy Chief, Uniform Subdivision, formerly Deputy Chief, Communications Subdivision | Akron |
| Deputy Chief Jesse Leeser | Deputy Chief, Investigative Subdivision, formerly Captain, Technical Services Bureau | Akron |
| Sgt. Eric Wood | Sergeant, Chief's Office | Akron |
| Deputy Chief Paul Calvaruso (retired) | Formerly Deputy Chief, Patrol Subdivision (retired) | Akron |
| Cpt. Sylvia Trundle (retired) | Formerly Captain, Investigative Subdivision (retired) | Akron |
| Cpt. Terry Pasko | Captain, Patrol Subdivision, formerly lieutenant, street narcotics unit (SNUDS) | Akron |
| Officer Michael Schmidt | Officer, Narcotics Unit, opioid heroin overdose death investigator | Akron |
| Officer Tim Harvey | Officer, Narcotics Unit, opioid heroin overdose death investigator | Akron |
| Officer Patrick Didyk | Officer, Street Narcotics (SNUDS) Unit, opioid heroin overdose death investigator | Akron |
| Officer Timothy Wypasek | Officer, Street Narcotics (SNUDS) Unit, opioid heroin overdose death investigator | Akron |
| Erika Wiles | Crime Analyst II, Planning and Research Office | Akron |
| Cpt. Michael Shearer | Captain, Narcotics, SNUDS, Vice Subdivision | Akron |
| Lt. David Garro | Lieutenant, Narcotics Unit | Akron |
| Cpt. Chip Westfall (retired) | Formerly Lieutenant, Narcotics Unit (retired) | Akron |
| Lt. Rick Edwards | Police Information Officer | Akron |
| Cpt. Melissa Schnee | Captain, Services Subdivision | Akron |
| Cpt. Daniel Zampelli (retired) | Formerly Captain, Services Subdivision (retired) | Akron |
| Chief Clarence Tucker | Chief of Fire Division | Akron |
| Chief Ed Hildebrand (retired) | Formerly Chief of Fire Division (retired) | Akron |
| Deputy Chief Charles Twigg | Deputy Chief of Fire Division | Akron |
| District Chief Joseph Natko | District Chief / EMS Bureau Manager | Akron |
| District Chief Rich Vober | Deputy Chief | Akron |

16

| Cpt. Leon Henderson | Captain, Safety Communications | Akron |
| Cpt. Chris Karakis | Captain, EMS Bureau Manager | Akron |
| District Chief Jim Willoughby | District Chief, formerly Captain, EMS Bureau Manager | Akron |
| Deputy Chief Dale Evans (retired) | Formerly Deputy Chief, EMS Bureau Manager (retired) | Akron |
| Lt. Joseph Shumaker | Lieutenant, Fire / EMS | Akron |
| Albert Minnich (retired) | Formerly fire medic (retired) | Akron |
| Les Gaiser (retired) | Formerly Captain, Fire / EMS (retired) | Akron |
| Guy Randall | Fire / EMS medic, training | Akron |
| Lt. Sierjie Lash | Public Information Officer | Akron |
| Terry Albanese (retired) | Assistant to the Mayor for Education, Health, and Families | Akron |
| Gert Wilms | Chief Prosecutor | Akron |
| Tony Ingram | Chief Probation Officer | Akron |
| Jeff Sturmi | Deputy Chief Probation Officer | Akron |

Plaintiff identifies the following individuals as most knowledgeable:

| Name | Title | Jurisdiction |
| --- | --- | --- |
| Judge Jon Oldham | Presiding Judge, Recovery / Drug Court | Akron |
| Tony Ingram | Chief Probation Officer | Akron |
| Cpt. Michael Shearer | Captain, Narcotics, SNUDS, Vice Subdivision | Akron |
| Deputy Chief Charles Twigg | Deputy Chief of Fire Division | Akron |
| Steve Fricker | Deputy Director of Finance | Akron |
| Officer Michael Schmidt | Officer, Narcotics Unit, opioid heroin overdose death investigator | Akron |
| Gert Wilms | Chief Prosecutor | Akron |
| District Chief Joseph Natko | District Chief / EMS Bureau Manager | Akron |
| Craig Morgan | Deputy Prosecutor | Akron |

Plaintiff reserves the right to amend, supplement or modify this response as discovery continues.

## Interrogatory 5

Identify all persons in Your government entity for each year of the Timeframe, who held the position of mayor, city council member, county commissioner, county supervisor, county executive, chief health officer, county auditor, county recorder, county sheriff, county coroner or

17

medical examiner, county treasurer, chief accountant, chief financial officer, police chief,

correctional facility supervisor, warden, deputy warden, fire chief, or the equivalent of such

titles.  Include as part of your response each person's name, position, and period of time during

which he or she held the position.

### Response 5

Plaintiff objects that this Interrogatory is overly broad and unduly burdensome to the

extent it requests Plaintiff to identify all persons who held the position of  mayor, city council

member, county commissioner, county supervisor, county executive, chief health officer, county

auditor, county recorder, county sheriff, county coroner or medical examiner, county treasurer,

chief accountant, chief financial officer, police chief, correctional facility supervisor, warden,

deputy warden, fire chief, or the equivalent of such titles.  Plaintiff further objects to this

Interrogatory to the extent that the requested information is available to the public and to the

Distributors through internet sources, and thus responding to the Interrogatory imposes an undue

burden on Plaintiff.

Subject to and without waiving all objections, Plaintiff answers as follows:  Plaintiff

refers to the response to Interrogatory 4.  Plaintiff has produced organizational charts that

respond to this Interrogatory and refer Defendants to those and to publicly available information

on each plaintiff's website as referenced in response to Interrogatory No. 9.  Subject to and

without waiving objections, Plaintiff responds:

| Jurisdiction | Contact name | Position |
|---|---|---|
| Summit County | Honorable Joy Malek Oldfield | Judge; Member of Summit County Opiate Task Force |
| | Honorable Christine Croce | Judge; Turning Point (drug court) |
| | Matt Paolino | Captain, Narcotics Division, Summit County Sheriff |
| | Dr. Lisa Kohler | Chief Medical Examiner, Summit County |

| | | |
|---|---|---|
| | Gary Guenther | Chief Investigator, Summit County Medical Examiner's Office |
| | Steve Perch | Chief Toxicologist, Summit County Medical Examiner's Office |
| | Brad Gessner | Criminal Division, Summit County's Prosecutor's Office |
| | Laurie Fischer | Probation Supervisor, Court of Common Pleas, Second Division |
| | Ilene Shapiro | Executive |
| | Brian Nelson | Finance & Budget Director |
| | Steve Barry | Sheriff |
| | Sherri Bevan Walsh | Prosecutor |
| Akron | Kenneth R. Ball II | Chief of Police |
| | Clarence Tucker | Chief of Fire |
| | Donald L. Plusquellic | Mayor (1987 – 2015) |
| | Garry Moneypenny | Mayor (5/31/15 – 6/10/15) |
| | Jeff Fusco | Mayor (6/11/15 – 1/1/16) |
| | Dan Horrigan | Mayor (1/1/16 – Present) |

Plaintiff further responds to this interrogatory by producing non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).  Plaintiff refers Defendants to annual reports and organizational charts produced in this litigation.

To the extent all positions and identities are not noted, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will identify such individuals.  Plaintiff reserves the right to supplement, amend or modify this response as discovery proceeds.

**Interrogatory 6**

Identify all Your residents, for each year of the Timeframe, who experienced drug overdose(s), separately identifying those drug overdoses caused by (a) Prescription Opioids (b) other opioids, or (c) other drugs. Include as part of your response whether each drug overdose was fatal.

19

**Response 6**

The Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.  Moreover, producing such information would cause substantial harm to the strong privacy interests held by the individuals whose private medical files are the subject of this Interrogatory.  See also response to Interrogatory No. 1.

Plaintiff objects to this Interrogatory to the extent that it calls for disclosure of Privileged and Confidential Information.  Also, the Interrogatory is overly broad and unduly burdensome and seeks information beyond Plaintiff's possession, custody, and control.  Further objecting, the Interrogatory contains a reference to several undefined terms and phrases, namely, "experienced" and "other opioids."

To the extent that responsive information is in Plaintiff's possession, custody or control, Plaintiff objects that the burden of responding to this Interrogatory is wholly unproportional to the needs of the case considering:  (i) the marginal importance of the information to the claims and defenses in this litigation and (ii) the substantial cost to identify such responsive information.

Plaintiff responds that this interrogatory seeks confidential and sensitive information protected from disclosure under both State and federal statutes, rules, and regulations.  Specifically, this Interrogatory seeks protected health information prohibited from disclosure under the Health Insurance Portability and Accountability Act ("HIPPA"), 42 C.F.R. part 2, and other State and federal statutes, rules and regulations, and runs contrary to the ruling of Special Master Cohen in Discovery Order No. 1 dated June 11, 2018.

Subject to and without waiving all objections, Plaintiff answers as follows:

The Summit County Opiate Task Force, referenced in response to Interrogatory 9, reports the following:

    1.      Drug Overdose Emergency Department Visit Summary.



2.      Drug Overdose Emergency Department Visit Summary.



3. Drug Overdoses (Epicenter) – Drug Overdose Emergency Department Visit Summary.



4.      Drug Overdose Deaths – Average OD Deaths Per month by Year



Furthermore, Summit County's Alcohol, Drug Addiction, and Mental Health Services

tracks hospital admissions for opiate abuse and dependence, which reported the following at an

Opiate Conference on July 1, 2014:

| Year | Opiate-related Hospital Admissions |
|------|-----------------------------------|
| 2001 | 12.1% |
| 2003 | 12.1% |
| 2005 | 12.8% |
| 2007 | 15.3% |
| 2009 | 15% |
| 2011 | 17.5% |
| 2012 | 20.6% |

Plaintiff also responds as follows:

An epidemiological report from the Ohio Governor's Cabinet opiate action team cited the shutdown of southern Ohio pill mills as one of the chief factors in an increase throughout Ohio in heroin overdose rates (which, as explained below, is the drug turned to by prescription opioid users when those drugs are no longer available or too expensive). Consistent with this observed statewide trend, Summit County has seen a spike in heroin overdoses. Further, law enforcement in the County note that the vast majority of heroin users started with prescription opioids.

Ohio is among the states hardest hit by the opioid epidemic. "Opioid addiction, abuse, and overdose deaths have become the most pressing public health issue facing Ohio."  Ohio now "leads the country in drug overdose deaths per capita, a rate that continues to rise, overwhelming families, communities, and local governments across the state." Overdose deaths have become the leading cause of death for Ohioans under the age of 55, and across all ages, more than two and a half times as many people die from drug overdoses as from car accidents. Most of the overdose fatalities in Ohio involved opioids.

In Ohio, an average of 14 people now die per day from fatal drug overdoses. Provisional data from the CDC showed the crisis continuing to explode during the first half of last year, with 5,232 Ohio overdose deaths recorded in the 12 months ending June 31, 2017. Most of the overdose fatalities in Ohio involved opioids. These grim numbers likely understate the number of lives lost due to incomplete reporting.

Tragically, "Ohio's death rate has grown faster than the national rate."  From 2000 to 2012, the State experienced a more that 366% increase in drug overdose deaths, a startling statistic driven largely by overdoses from prescription drugs. Measured from 2000 to 2015, the numbers are even more staggering: the rate of unintentional drug poisonings in Ohio jumped 642%, with the increase driven largely by opioid-related overdoses. In 2015, there were 3,050

Ohio overdose deaths, up 20.5% from 2,531 Ohio overdose deaths in 2014. Eighty-five percent of these overdoses involved opioids.

The problem is only getting worse: between 2015 and 2016, overdose deaths in Ohio rose by nearly 33% to 4,329 people. Reports from death certifications show that the overall number of drug overdose deaths attributable to all opioids rose from 85% in 2015 to 86.3% in 2016. In the City of Akron, the Police Department responded to 2,114 overdoses in 2016 and the first six months of 2017 alone.

Figure 4. Epidemics of unintentional drug overdoses in Ohio, 1979-2008.[12,13,14]



These figures make the opioid epidemic in Ohio one of the most deadly epidemics the state has faced, measured by deaths and mortality rates. In 2010, mortality rates were four to five times higher than the rates during the "black tar" heroin epidemic in the mid-1970s and more than three times what they were during the peak years of the crack cocaine epidemic in the early 1990s. To quote one Ohio medical examiner: we are currently suffering a "slow-moving mass fatality that occurred last year, is occurring again this year, and will occur again next year."

In Summit County, the epidemic, as County Executive Ilene Shapiro has noted, "does not appear to be slowing down, and the numbers are staggering." More people died in Summit County from drug overdoses in 2015 and 2016 alone than the entire decade of 2000 to 2009. Altogether, 1,053 Summit County residents died from drug overdoses between 2012 and mid-August 2017. Summit County Public Health recorded more than twice as many (2,243) drug overdoses in 2016 alone, which equates to an average of one overdose every 3.6 hours. Fatal heroin overdoses have increased: in 2015, 153 people died in Summit County from a fatal heroin or fentanyl overdose and by 2016, that number had climbed to 225—a new death virtually every weekday. Overall, the Summit County Medical Examiner's office has seen a 209% increase in the number of overdose deaths.



Ohio's Prescription Drug Abuse Task Force has found that individuals addicted to prescription opioids often transition to heroin due to its lower cost, ready availability, and similar high. Similarly, a study by the Ohio Substance Abuse Monitoring Network reported on the

connection between oxycodone use and heroin addiction, fording that "young new heroin abusers seeking treatment reported OxyContin abuse prior to becoming addicted to heroin," often after OxyContin became too expensive or difficult to obtain."

Carfentanil, a powerful derivative of fentanyl, has increasingly been found in heroin and fentanyl sold illicitly. Carfentanil is so strong that it is typically used in veterinary medicine to sedate large wild animals such as elephants, and has been researched as a chemical weapon. A dose the size of a grain of salt can rapidly lead to deadly overdose in humans. In July of 2016, Akron, for example, saw 236 overdose cases in just 21 days, with at least 14 fatalities suspected to be linked to carfentanil. Because of its potency, the Ohio Attorney General's website recommends that chemists and lab technicians who test for carfentanil use protective gear.

So deadly is this trend that surges of fatal drug overdoses have outpaced the capacity of some local morgues. Coroners or medical examiners from at least four Ohio communities— Cuyahoga, Ashtabula, Summit, and Stark Counties— have had to request the use of a refrigerated trailer known as a "mobile morgue unit" and originally intended for catastrophes leading to mass casualties, from the Ohio Department of Health. Summit County has had to make use of the mobile morgue on five separate occasions. The refrigerated trailer doubles the number of bodies that the County Medical Examiner's Office could otherwise hold at one time.

Autopsy reports confirm that many of the deaths are related to oxycodone, hydrocodone, other prescription opioids, heroin and fentanyl.

With the increase in opioid-related fatalities, investigators with the Summit County Medical Examiner's Office must face heart-breaking tragedies. One investigator was called upon to determine the cause of four deaths—two children and a father from the same family within a nine month period; a fourth family member died two months later. A mother lost both of her adult sons to opioid overdoses within weeks of each other. The presence of an investigator from

the Summit County Medical Examiner's Office has become so common that family members recognize them and know someone has died even before the news is broken to them. In the words of the County's Chief Medical Examiner, opioids are killing an entire generation in Summit County, and wreaking havoc on those who survive, too. Many grieving families have been financially tapped out by the costs of repeated cycles of addiction treatment programs; others have lost hope and given up.

This increasing number of cases takes both a physical and mental toll on investigators and first responders. The Summit County Medical Examiner's Office has struggled to retain and recruit qualified death investigators. In addition to burn-out, the Summit County Medical Examiner's Office has faced increased costs of overtime, laboratory, toxicology and other costs. Between 2012 and 2016, there was a 47% increase in autopsies, a 436% increase in toxicology lab costs to identify new drugs, mostly synthetic opioids that have swept up individuals already addicted to opioids, and a 100% increase in the costs to transport the bodies.  In the City of Akron, the Police Department responded to 2,114 overdoses in 2016 and the first six months of 2017.

Overdose deaths are only one consequence. Opioid addiction and misuse also result in an increase in emergency room visits, emergency responses, and emergency medical technicians' administration of Narcan or naloxone—the antidote to opioid overdose. In fact, while the rate of opioid-related emergency department visits increased in almost all states from 2009 to 2014, Ohio experienced the greatest increase of any state in the nation, and the rate of opioid-related inpatient stays more than doubled as well, according to data from the Agency of Healthcare Research and Quality.



Ohio EMS personnel administered naloxone (or Narcan) more than 44,500 times in 2017 alone. This means that, on average, Ohio EMS personnel administered over 122 doses of naloxone every day in 2017 alone. This information, too, is likely understated, as only 72% of Ohio EMS agencies reported data for inclusion in the state's summary brief.

Individuals addicted to opioids are so familiar with the potential for overdose that many choose to use drugs in public places, such as a Walmart bathroom, where they can be found and revived. In July of 2016, Summit County overdoses spiked to 19 a day, and in a single week in October of 2017, 54 Summit County residents sought help at emergency rooms after overdosing.

As communities have worked to save lives, the opioid epidemic has continued to outpace their efforts. Opioid addiction is now the primary reason that Ohioans seek substance abuse treatment. Addiction treatment centers in Summit County report that the majority of their patients who abuse heroin migrated from prescription opioids, particularly once doctors cut off their prescriptions. A doctor interviewed by the County expressed concerns that, were he to stop seeing as many patients taking opioids, he feared these patients would switch to heroin. In Akron, 87% of one treatment program's clients report opioids as their primary or secondary drug of abuse. In Ohio, from 2010 to 2014, roughly 50,000 individuals per year received treatment for their substance dependence or abuse—less than one-fifth of all individuals in state with substance dependence or abuse. Data contained within amfAR's Opioid & Health Indicators show that in 2014, Summit County had a rate of drug dependence of 2.56% and a rate of non-medical use of pain relievers of 4.82%, and that 87.5% of people who need addiction treatment in the County do not receive it.

The County also has experienced an increase in drug-related crimes and has had to increase its spending on drug-related treatment and prevention. In one town in the County, roughly 80% to 85% of police calls and investigations are related to drugs, and the majority of those involve opioids. The Summit County jail provides services related to opioid detoxification, including preventing suicides believed to be related to opioid withdrawal and now provides Narcan to inmates upon discharge to help prevent future overdoses. From 2012 to 2017 to date, the County's Children Services Board has incurred nearly $24 million in costs, and the County's Alcohol, Drug Addiction, and Mental Health Services Board ("ADM Board") more than $10 million costs related directly to the opioid epidemic. Even school resource officers address opioids on a daily basis, largely stemming from students who obtain opioids through prescriptions filled by family members.

31

In Ohio, the number of infants born with neonatal abstinence syndrome increased six-fold in from 2004 to 2011. From 2009 to 2014, data from seven regional hospitals showed a greater-than six-fold increase in drug-exposed infants. As a whole, the State has seen an 816% increase in the number of infants born with Neonatal Abstinence Syndrome ("NAS") from 2006 to 2015, with opioids and other illegal narcotics being the most commonly implicated drugs since 2009. In 2015 alone, 2,174 infants were admitted to inpatient settings for this painful condition, an average of six per day. NAS has become so prevalent in Ohio communities that the state's Department of Health now recommends screening all newborns for NAS.

This dramatic rise in NAS is an epidemic within an epidemic. According to the Ohio Perinatal Quality Collaborative, the "NAS epidemic is steadily increasing, overwhelming social service systems and public payers."207 In 2013, the average inpatient stay and bill for babies suffering from NAS was four times longer and four times higher than for other infants in Ohio. Newborns with NAS spent approximately 26,000 days in Ohio hospitals in 2014, with health care costs skyrocketing. These hospitals lack the resources to provide a safety net for these families; mothers and babies often are discharged from hospitals without resources to transition them to addiction treatment programs.

Data from just one of Summit County's hospitals indicates that roughly 300-350 babies each year suffer from neonatal abstinence syndrome. The numbers have increased dramatically, beginning in 2013, up from 100 to 150 babies per year. For the most part, the mothers started on prescription opioids (typically Percocet or Vicodin) and ultimately moved to heroin.

The financial and human costs that are already known are staggering; resources are being diverted from other important uses and some agencies will likely have to increase operating levies to fund their services, shifting an additional burden to Summit County residents. These

costs do not even contemplate the resources necessary to fully address the epidemic.  Plaintiff also refers Defendants to overdose reports produced in this litigation.

Plaintiff reserves the right to supplement, amend or modify its response as discovery continues, or to answer this interrogatory by producing non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).  In addition, discovery is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory 7**

Identify all Your residents who became addicted to a Prescription Opioid during the Timeframe.

**Response 7**

Plaintiff objects to this Interrogatory to the extent that it calls for disclosure of Privileged and Confidential Information.  Also, the Interrogatory is overly broad and unduly burdensome and seeks information beyond Plaintiff's possession, custody, and control.  Further objecting, the Interrogatory contains a reference to an undefined term, "addicted."

To the extent that responsive information is in Plaintiff's possession, custody or control, Plaintiff objects that the burden of responding to this Interrogatory is not proportional to the needs of the case considering:  (i) the marginal importance of the information to the claims and defenses in this litigation and (ii) the substantial cost to identify such responsive information.  The information has marginal—if any—importance to the claims and defenses in this litigation because Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff do not require a showing that any third-party individuals were harmed.

Plaintiff responds that this Interrogatory seeks confidential and sensitive information protected from disclosure under both State and federal statutes, rules, and regulations. Specifically, this Interrogatory seeks protected health information prohibited from disclosure under the Health Insurance Portability and Accountability Act ("HIPPA"), 42 C.F.R. part 2, and other State and federal statutes, rules and regulations, and runs contrary to the ruling of Special Master Cohen in Discovery Order No. 1 dated June 11, 2018.

Moreover, producing such information would cause substantial harm to the strong privacy interests held by the individuals whose private medical files are the subject of this Interrogatory.  Therefore, Plaintiff is unable to produce information pursuant to this Interrogatory and refer Defendants to Plaintiff's response to Interrogatory No. 6.

Plaintiff reserves the right to supplement, amend or modify its response as discovery continues or by producing non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).  Plaintiff refers Defendants to Discovery Ruling No. 1 dated June 11, 2018, on the subject of individual data and burden.

**Interrogatory 8**

Identify all persons who wrongfully manufactured, sold, possessed, used, distributed, prescribed, or dispensed Prescription Opioids within Your geographical boundaries during the Timeframe.

**Response 8**

Plaintiff objects to this Interrogatory to the extent that it calls for disclosure of Privileged and Confidential Information.  Plaintiff objects to this Interrogatory as overly broad and unduly burdensome and seeking information beyond Plaintiff's possession, custody, and control. Further objecting, the Interrogatory contains a reference to several undefined terms and phrases, namely, "wrongfully," "geographical boundaries," and "dispensed."

Subject to and without waiving all objections, Plaintiff incorporates the allegations in its Second Amended Complaint and will continue to conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will identify such entities in addition to the Defendants identified in the Second Amended Complaint. Further responding, Plaintiff recently obtained the ARCOS database information and is still analyzing this information. Plaintiff's investigation of the wrongful conduct of Defendants including the identification of wrongful diversion of prescription opioids and other wrongful conduct within the County is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

Subject to and without waiving all objections, Plaintiff answers as follows: Purdue Pharma, L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals, Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc. f/k/a Par Pharmaceutical Holdings, Inc.; Janssen Pharmaceuticals, Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc. f/k/a/ Janssen Pharmaceutical, Inc.; Johnson & Johnson; Noramco, Inc.; Teva Pharmaceutical Industries, Ltd.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Allergan PLC f/k/a Actavis PLC; Allergan Finance LLC, f/k/a/ Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc; Insys Therapeutics, Inc., Mallinckrodt PLC; Mallinckrodt LLC; AmerisourceBergen Drug Corporation, Anda, Inc.; Cardinal Health, Inc., Discount Drug Mart, Inc.; HBC Service Company; McKesson Corporation, Henry Schein Entities; CVS Health Corporation, Miami-Luken, Inc.; Prescription Supply, Inc.; Walgreens Boots Alliance, Inc. a/k/a Walgreen Co.; and Wal-Mart Inc., f/k/a Wal-Mart Stores, Inc. wrongfully distributed

Prescription Opioids within Plaintiff's geographical boundaries during the Timeframe, as alleged in the Amended Complaint.

Subject to and without waiving all objections, Plaintiff further answers as follows:  Since 2014, at least four prescribers in Summit County were convicted of crimes involving drug diversion.  An Akron-area physician – Adolph Harper, Jr. – and three of his employees – Adria Harper, Patricia Laughman and Tequilla Berry, pled guilty in October 2014 for prescribing hundreds of thousands of doses of prescription opioids between 2009 and 2012.  In December 2014, a former Copley Township family-medicine doctor named Brian Heim pled guilty to conspiracy to distribute controlled substances and 20 counts of distribution of controlled substances.  In March 2015, he was sentenced to more than five years in federal prison.

Plaintiff reserves the right to supplement or modify its response as discovery continues, or to answer this interrogatory by producing responsive documents pursuant to Federal Rule of Civil Procedure 33(d).  In addition, discovery is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory 9**

Identify Your efforts during each year of the Timeframe to address public health and safety hazards that You attribute to the wrongful conduct of Distributor Defendants.  Include as part of your response information concerning Your expenditure of taxpayer dollars to fund these efforts.

**Response 9**

Subject to and without waiving all objections, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will produce documents that identify Plaintiff's efforts and programs to address the opioid epidemic.

In addition, Plaintiff's investigation of its damages and "expenditure of taxpayer dollars" caused by the Defendants is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

Subject to and without waiving all objections, Plaintiff answers as follows: In 2014, the County of Summit Alcohol, Drug Addiction and Mental Health Board convened the Summit County Opiate Task Force, a group of individuals and organizations committed to reducing the tragic consequences of opiate addiction in response to the rising public health crisis affecting residents of Summit County. There are over 100 Summit County citizens who are active Task Force members. The Task Force holds quarterly meetings to update the public members and the community on the developments and initiatives to fight the opiate epidemic. The Task Force is comprised of Subcommittees: Advocacy, Criminal Justice, Family Support, Healthcare, Public Awareness and Youth and Youth and Young Adults. Each subcommittee has a Chair or Co-chair. The Task Force addresses the opioid epidemic on multiple fronts including Prevention, Education, Community Outreach, Treatment and Recovery Support. Much of this information regarding this Task Force, its extensive programs and persons involved are available at https://www.admboard.org/opiate-task-force.aspx; www.summitcountyopiatetaskforce.org and www.summitcountyaddictionhelp.org.

The Police and Fire Departments in the County have been in the forefront in addressing the opioid public health crisis. Departments have been increasingly challenged to maintain their duties with current personal and have increased law enforcement, fire, and emergency services to respond to drug overdoses. In the City of Akron, the Police Department responded to 2,114 overdoses in 2016 and the first six months of 2017.

Summit County has experienced an increase in drug-related crimes, and has had to increase its spending on drug-related treatment and prevention.  The Summit County jail provides services related to opioid detoxification, including preventing suicides believed to be related to opioid withdrawal and now provides Narcan to inmates upon discharge to help prevent future overdoses.  Law enforcement, fire, and emergency services personnel spend time with School administrators to educate and address students about the opioid crisis.

The increasing number of cases takes both a physical and mental toll on investigators and first responders.  The Summit County Medical Examiner's Office has struggled to retain and recruit qualified death investigators.  The Medical Examiner's Office has had to hire four Locum Tenens doctors to assist in the case load.  In addition to burn-out, the Summit County Medical Examiner's Office has faced increased costs of overtime, laboratory, toxicology and other costs. The increased case load and decreased staffing cost the Summit County Medical Examiner's Office its National Association of Medical Examiners Accreditation due to lengthy turnaround times and heavy caseloads for pathologists.  Between 2012 and 2016, there was a 47% increase in autopsies, a 436% increase in toxicology lab costs to identify new drugs, mostly synthetic opioids that have swept up individuals already addicted to opioids, and a 100% increase in the costs to transport the bodies.  There has been a 209% increase in the number of overdose deaths.

The surge of fatal drug overdoses have outpaced the capacity of some local morgues. Coroners and medical examiners in Summit County have had to request the use of refrigerated trailers known as "mobile morgue units."  Summit County has had to make use of the mobile morgues at least five separate occasions.  These refrigerated trailers double the number of bodies that the County Medical Examiner's Office could otherwise hold at one time.

Resources are diverted from other important uses and agencies will likely have to increase operating levies to fund their services, shifting an additional burden to Summit County residents.  These costs do not even contemplate the resources necessary to fully address or abate the epidemic.

Plaintiff has provided various treatment programs and centers.  They include an ADM (Alcohol Drug and Mental Health Services Board) Addiction Helpline, Quick Response Team, Police and EMS Naloxone reversals, Residential and Detox Access, Medication Assisted Treatments (MAT) and Interim Crisis Services.  Detox beds have been added to the Detox unit and Summit County will host the largest detox center in Ohio.  Data contained within amfAR's Opioid & Health Indicators show that in 2014, Summit County had a rate of drug dependence of 2.56% and a rate of non-medical use of pain relievers of 4.82%, and that 87.5% of people who need addiction treatment in the County do not receive it.

In October 2017, Summit County, with a population of over 540,000 citizens, declared a State of Emergency in the county due to the opioid epidemic.  Summit County is listed as a High Intensity Drug Trafficking Area with the fourth highest drug overdose death rate and the second highest in fentanyl deaths in the state of Ohio for 2016. Summit County and the City of Akron are intertwined in many of their efforts to address the opioid epidemic.  The Summit County Drug Unit is co-located with the Akron Police Department Narcotics Unit.  It is a multi-jurisdictional task force that investigates major organized groups involved in the illegal distribution of drugs as well as any alleged violations by persons involved in the use or sale of illegal drugs.  The Summit County Drug Unit also has the responsibility to identify and destroy illegal channels of drugs into Summit County, arrest violators and seize their illicit financial assets.  The Drug Unit consists of the following agencies:  Summit County Sheriff's Office, Summit County Prosecutor's Office, Akron Police Department, The University of Akron Police

Department, Barberton Police Department, Cuyahoga Falls Police Department, Stow Police Department, Copley Police Department, Bureau of Criminal Identification & Investigation, FBI, DEA, ATF and the IRS.

In 2016, the Drug Unit created an Opiate Task Force to handle overdose investigations. The Summit County Drug Unit also teamed with the Akron Police Department Task Force to form the Akron/Summit County HIDTA (High Intensity Drug Trafficking Area) Initiative, the largest such initiative in the state of Ohio.

In 2014, the Summit County Prosecutor's Office created an Opiate Unit for low and moderate risk opioid offenders that consists of four distinct phases that provide intensive supervision services upfront and linkage/coordination to community treatment providers. The Opiate Unit has grown to consist of four probation officers with specialized training due to the growing opiate epidemic. The Adult Probation Department was awarded the SMART Grant through the Ohio Department of Rehabilitation and Correction to combat the growing percentage of opiate addicted individuals that come through the program. During 2016, there were 429 cases placed in this specialty unit; of which 295 cases were closed and 95 of those cases consisting of successful completions. Two drug court judges do community outreach regarding opioids and other drugs.

The Drug Court also has a program called Turning Point which is a special court given the responsibility to handle cases involving drug-using/abusing, non-violent offenders, through immediate comprehensive supervision, drug testing, and treatment services, as well as immediate sanctions and incentives. The Faith in Recovery Program provides a spiritual mentor from a local church as an added option for participants. The Valor Court is provided for the specialized needs of those who have served our country, providing access to programs, treatment and interaction with mentors.

The Summit County ADM Board "exists for citizens of Summit County a healthy community in which a continuum of case supports mental wellness and freedom from addiction, with outcomes optimizing use of available resources" – including minimizing opiate related dependency, deaths and overdoses. The ADM Board was instrumental in establishing the Opiate Task Force in early 2014, which has grown to over 400 members consisting of physicians, pharmacists, faith leaders, judges, prosecutors, police chiefs, school superintendents and multiple agency leaders, public health officials, elected representatives, ADM Board staff and concerned citizens. In 2016, 52,517 citizens of Summit County benefited from ADM Board funded services; 4,203 clients received substance abuse treatment. In 2017, the ADM Board budgeted an additional $3.2 million to expand detoxification, Quick Response Teams and recovery coaching services.

The ADM Addiction Hotline is run by Akron Summit Community Action and provides a single phone number to enable those seeking addiction services to identify a qualified provider agency for quick access to an assessment and ongoing treatment. In 2016, the ADM Crisis Center provided 2,199 detoxification admissions, up by 622 admissions from 2015. The Gloves Up Campaign was launched in 2017 to help promote the ADM Addiction Helpline and other initiatives. The 2018 ADM Budget for non-Medicaid services increased 5% due to measures planned to address the Opioid Epidemic; other contracts and allocations increased 46% due to measures planned to address this epidemic.

The Summit County Opiate Task Force focuses on awareness, education, treatment and recovery. The Task Force provides pharmacist training on Narcan, expanded use of Vivitrol, addiction education, referral services and public education through partnerships with local pharmacies. The Task Force is encouraging school districts to become involved in prevention and awareness programs. Summit County is adding ten beds to its detox unit, making it the

41

largest detox center in Ohio.  The Task Force has quarterly, public meetings to encourage community involvement.

The City of Akron is reported to have 58.74% of the total overdoses in Summit County. The Akron Fire Department reports there were 4173 Opiate EMS incident reports and utilization of Narcan from July 2010 to June 2018.  There are about 15,000 opioid-related incident reports and 1,700 Reports of Investigations that the City of Akron Police Department is responsible for investigating.  In 2016 and the first six months of 2017, the City of Akron Police Department responded to 2,114 overdoses.

The Akron Municipal Drug Court was initiated in 1995 as a collaborative effort between Summit County Courts, the Akron Police Department, the Akron Prosecutor's Office, the Public Defender's Office, the Akron Municipal Probation Department, the Summit County ADM Board and Oriana House, Inc.

The Akron Quick Response Teams ("QRT") are a collaborative effort between Summit County Public Health, Akron Fire Department and Akron Police Department.  This team focuses on connecting with individuals who have been struggling with addiction to opioids and have recently overdosed.  The QRT is also responsible for distribution of naloxone kits.  From March 2017 to May 2018, the QRT made a total of 537 visits and distributed 44 naloxone kits.

Summit County treatment and recovery services offered are:

| Program | Description |
|---|---|
| The Akron General Edwin Shaw Rehabilitation Institute | An intensive outpatient program for chemical dependency; monitors Suboxone intake during transition from a detox center. |
| Akron Medical Center | Inpatient treatment program for opioid addiction. |
| Akron Urban Minority Alcoholism Drug Abuse Outreach Program (UMADAOP) | Established in 1980 via legislative action to provide substance abuse education, prevention and treatment for African and Hispanic Americans throughout the State of Ohio. |

| | |
|---|---|
| Asian Services in Action, Inc. | A treatment resource with an ambulatory detoxification/treatment center. |
| Community Health Center | Provides Summit County with a comprehensive treatment plan for the rehabilitation and prevention of addiction; provides medically-assisted treatment for opioid addicted adults; goal is to provide complete methadone maintenance and rehabilitation counseling services to eliminate opioid and other drug use and the spread of infectious diseases. |
| Cover 2 Resources | A nonprofit organization to spread awareness and educate those touched by the opioid epidemic. |
| Interval Brotherhood Home (IBH) | An addiction recovery center in operation since 1970 providing an abstinence-based residential treatment program with educational classes for family members. |
| Mature Services Avenues to Recovery | A drug addiction treatment service. |
| Oriana House | Summit County's Alternative Corrections Provider offering treatment and recovery for alcoholism and chemical dependency. |
| Restore Addiction Recovery | A treatment and recovery campus that assists those struggling with addiction through a faith-based program. |
| Rigel Recovery Services | Provides medication assisted treatment with prescription Vivitrol and an intensive outpatient treatment program specific to the use of opioids. |
| Summa Akron City Hospital | Inpatient detox for opioid addiction. |
| Summit County Public Health | Member of the Opiate Task Force and provides quarterly reports on drug overdoses. Oversees Project DAWN which is a community-based drug overdose prevention and education project where participants receive training on recognizing the signs and symptoms of overdose and administering intranasal Naloxone/Narcan. |
| Summa Health System | The Summa Health Behavioral Health Institute provides inpatient and outpatient services to combat a variety of addiction disorders; operates a Vivitrol Clinic in Akron; the Summa Community Leadership Institute endeavors to involve the community in fighting the opioid epidemic. |

| Summit Safe Needle Exchange Program | A free, anonymous syringe exchange program which includes overdose prevention training and risk reduction counseling. |
| Summit Psychological Associates | An outpatient medically assisted treatment (Vivitrol) program for Oriana House. |
| Summit County Community Partnership | A consortium of community resources committed to preventing substance abuse using evidence based prevention techniques, information and activities. |
| Jake's Reach | An Akron-based opiate addiction resource group. |
| Hope United | A foundation founded to fight drug addiction. |

The following table describes other examples of the efforts made to address public health and safety hazards of the opioid epidemic caused by the wrongful conduct of Distributor Defendants.

| Jurisdiction | Efforts to Address Opioid Epidemic |
|---|---|
| Summit County | • Summit County Alcohol, Drug Addiction and Mental Health Board:  Quick Response Teams, DAWN, Addiction Helpline; Opiate Task Force and the planning, maintaining and executing responses to the opioid epidemic; purchase of Narcan; manages waitlists for residential treatment facilities; additional training, education and treatment;<br><br>• Summit County Medical Examiner:  increased number of deaths caused by the opioid epidemic for the Summit County Medical Examiner's office to process and investigate; additional staffing and resources, additional costs for contractors/vendors;<br><br>• Summit County Prosecutors: increased caseload and prosecutions relating to the opioid epidemic;<br><br>• Summit County Court of Common Pleas (including probation and specialty courts, like drug court): increased caseload and probation services relating to the opioid epidemic; Opioid Unit in adult probation department; two drug court judges do community outreach re opioids and other drugs; Indigent Defense – increased County expenditures to fund this Court program for indigent defendants;<br><br>• Summit County Juvenile Court (including probation and specialty courts): increase in number of parents participating in Family Reunification Through Recovery Court due to opioid use; increase in staff trainings related to opioid use;<br><br>• Summit County Children Family Services: host Northeast Ohio Regional Training Center which provides trainings related to opioids, 25% of the staff trainings they do relate to opioids; social workers |

| | |
|---|---|
| | who exclusively deal with families and substance abuse issues; collaborate with juvenile court program, Family Reunifications through Recovery; Oriana House; provides licensure hours for Close Up which addresses opioids increased costs due to increased placement of children abused and neglected due to opioid addictions; the STARS Program (Summit County Collaborative on Trauma, Alcohol & Other Drug & Resiliency Building Services for Children & Families) provides intensive trauma and treatment services to eligible families with support from various community partners, such as in-home alcohol and other drug assessments, Recovery Coaches, ongoing substance abuse treatment, the Nurturing Parenting Program, trauma screening and services, and tutoring and mentoring for children; in 2016, 113 families were enrolled in the STARS Program;<br><br>• Summit County Sheriff:  services, including but not limited to, training, investigations, staffing, jail expenses, dispatch services, task force as a result of the opioid epidemic; members of Quick Response Team; DARE education; drug task force members meet with community organizations to discuss opioids; drug take back days; implement House Bill 277 aka Good Samaritan Law; receive Narcan training;<br><br>• Summit County General Health District: purchase of Narcan; Quick Response Team; Syringe Harm Reduction Program; educational campaigns, expanded medically assisted treatment programs;<br><br>• Summit County Executive: Incident Management Assistance Team ("IMAT") coordinates activities of the Opiate Task Force and the Addiction Counsel |
| | |
| Akron | • Opioid-focused Quick Response Team (QRT);<br><br>• Purchases of Narcan, drug testing kits, and Immunity Hearing Requirement forms;<br><br>• Increased Police/Fire/EMS service calls for overdoses;<br><br>• Increased Police Division services for opioid investigations, including training, detailing of staff to task forces;<br><br>• Safety Communications handling of increased dispatches and related Police/Fire/EMS support;<br><br>• Law Department Criminal Division's increased prosecutions relating to the opioid epidemic;<br><br>• Municipal Court's increased caseload and probation load relating to the opioid epidemic;<br><br>• Planning and executing a response to the opioid  epidemic, including community educational awareness by Police, the Mayor's office, and other city departments; |

| | • Funding of third party entities that provide various support services related to the opioid epidemic, including Oriana House, Interval Brotherhood Home, Summit Co. Public Health, etc. |
|---|---|

Plaintiff reserves the right to supplement or modify its response as discovery continues, or to answer this interrogatory by producing non-privileged, responsive documents pursuant to Federal Rule of Civil Procedure 33(d).  In addition, discovery is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory 10**

Identify each instance for each year of the Timeframe in which You notified a state or federal official or agency (including but not limited to the United Stated Drug Enforcement Agency, a United States Attorney or representative thereof, Ohio Department of Medicaid and its constituent providers, Ohio Department of Public Safety, Ohio Automated Rx Reporting System, State of Ohio Board of Pharmacy, and State Medical Board of Ohio), insurer, third party payer, or pharmacy benefit manager of suspected diversion, improper or excessive dispensing, improper prescribing, unlawful sale, or other suspected wrongdoing related to Prescription Opioids.

**Response 10**

See response to Interrogatory No. 1.  Plaintiff objects that this Interrogatory is overly broad and unduly burdensome and seeks information beyond Plaintiff's possession, custody, and control.  Further objecting, the Interrogatory contains a reference to several undefined terms and phrases, namely, "excessive dispensing" and "improper prescribing."  Plaintiff objects to this Interrogatory because certain responsive information is subject to the law enforcement privilege or privacy rights.

Subject to and without waiving all objections, Plaintiff answers as follows:  Plaintiff refers Defendants to https://www.ohiopmp.gov/Reports.aspx for available OARRS data. Plaintiff will supplement this answer with non-privileged information responsive to this Interrogatory once the information is available to the Plaintiff.  In addition, discovery is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

**Interrogatory 11**

Identify each investigation, arrest, or prosecution within Your geographical boundaries for each year of the Timeframe that involved (a) a Prescription Opioid or (b) other opioids. Include as part of your response any information or evidence that connects each investigation, arrest, or prosecution to a Prescription Opioid distributed by Distributor Defendants.

**Response 11**

Plaintiff objects that this Interrogatory is overly broad and unduly burdensome and seeks information beyond Plaintiff's possession, custody, and control.  Subject to and without waiving all objections, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will supplement this answer with non-privileged information responsive to this Interrogatory once the information is available to the Plaintiff.

Plaintiff responds and incorporates the answer to Interrogatory No. 8.  Plaintiff also refers Defendants to court and prosecutor files produced in this litigation as responsive to this request pursuant to Federal Rule of Civil Procedure 33(d).

In addition, discovery is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO 1 and the Federal Rules of Civil Procedure.

Dated:  June 20, 2018

Respectfully submitted,

By:  /s/  Linda Singer
Linda Singer

Joseph F. Rice
Jodi Westbrook Flowers
Anne McGinness Kearse
David I. Ackerman
Jeffrey C. Nelson
MOTLEY RICE LLC
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: (202) 232-5504

## **CERTIFICATE OF SERVICE**

I, Colleen Hemelgarn, certify that on June 20, 2018, I caused the foregoing to be served via electronic mail on the individuals on the attached service list.

<u>/s/ Colleen Hemelgarn</u>

## Verification

I, _Deborah Matz_ , declare:

I am the _Law Director_ for the County of Summit, Ohio.  I am authorized to make this verification on behalf of Plaintiff the County of Summit, Ohio.  The foregoing **Plaintiff's First Amended Responses and Objections to Distributor Defendants' First Set of Interrogatories** represents a municipal corporate response, based on information, in part, assembled by the County of Summit, Ohio employees and/or representatives.  Because the matters stated in the document identified above constitute a corporate response, they are not all necessarily within my personal knowledge, or within the personal knowledge of any single individual.  Subject to these limitations, the information contained in the foregoing response is, to the best of the County of Summit, Ohio's knowledge, true and correct.  The County of Summit, Ohio reserves the right to make any changes should it appear that any omissions or errors have been made.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Summit, Ohio on this _21st_ day of June, 2018

_Deborah Matz_
Signature

_Deborah S. Matz_
Print Name

_Law Director_
**For** Summit County

## **Verification**

I, Michael Caprez, declare:

I am a Deputy Chief, Division of Police for the City of Akron, Ohio.  I am authorized to make this verification on behalf of Plaintiff the City of Akron, Ohio.  The foregoing **Plaintiff's Entities First Amended Responses and Objections to Distributor Defendants' First Set of Interrogatories** represents a municipal corporate response, based on information, in part, assembled by the City of Akron, Ohio employees and/or representatives.  Because the matters stated in the document identified above constitute a corporate response, they are not all necessarily within my personal knowledge, or within the personal knowledge of any single individual.  Subject to these limitations, the information contained in the foregoing response is, to the best of the City of Akron, Ohio's knowledge, true and correct.  The City of Akron, Ohio reserves the right to make any changes should it appear that any omissions or errors have been made.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Akron, Ohio on this 22d day of June, 2018

Deputy Chief Michael Caprez
Akron Division of Police

Sworn to before me and subscribed in my presence on this 22nd day of June, 2018.

Marlene E. Long
Resident Summit County
Notary Public, State of Ohio
My Commission Expires: April 18, 2022

Notary Public

## **Verification**

I, Charles Twigg, declare:

I am a Deputy Chief, Division of Fire for the City of Akron, Ohio.  I am authorized to make this verification on behalf of Plaintiff the City of Akron, Ohio.  The foregoing **Plaintiff's Entities First Amended Responses and Objections to Distributor Defendants' First Set of Interrogatories** represents a municipal corporate response, based on information, in part, assembled by the City of Akron, Ohio employees and/or representatives.  Because the matters stated in the document identified above constitute a corporate response, they are not all necessarily within my personal knowledge, or within the personal knowledge of any single individual.  Subject to these limitations, the information contained in the foregoing response is, to the best of the City of Akron, Ohio's knowledge, true and correct.  The City of Akron, Ohio reserves the right to make any changes should it appear that any omissions or errors have been made.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Akron, Ohio on this _____ day of June, 2018.

_____
Deputy Chief Charles Twigg
Akron Division of Fire

Sworn to before me and subscribed in my presence on this _____ day of June, 2018.

_____
Notary Public

ANDREA A. JONES
Residence - Summit County
Notary Public, State of Ohio
My Commission Expires 4-23-22