PSJ4 SOL Opp Appendix A

| DISCOUNT DRUG MART | | |
|---|---|---|
| **Exhibit No.** | **Date** | **Description** |
| **PSJ4 SOL Opp App A Exh 1**–DDM00169973 | | Tom Nameth preemptively notifies his "gang" to not order any extra Oxy/APAP, based upon instruction from McKesson, because it is placing them over the limit. |

| ENDO/PAR/QUALITEST | | |
|---|---|---|
| **Exhibit No.** | **Date** | **Description** |
| **PSJ4 SOL Opp App A Exh 2**–PAR_OPIOID_MDL_0000398174 | 7/2/2009 | Former DEA Chief of the Regulatory Section, Michael Mapes reviewed Qualitest's Order Monitoring Program and found that many requests for "several times greater than the current limit" were cut down, approved, and released, along with a corresponding increase to the customer's product limit. |
| **PSJ4 SOL Opp App A Exh 3**–PAR_OPIOID_MDL_0000398175 at 177 | 6/18/2009 | Mapes noted: "Each Order Release Request that is rejected or modified by QT should be sent to DEA as a suspicious order." |
| Stephen Macrides Dep. (03/15/19), Dkt. # 1966-11 at 103:19 – 109:5<br><br>Lisa Walker Dep. (12/04/18), Dkt. # 1971-20 at 65:20 – 68:7 | | Neither Endo nor UPS have reported a single Endo order to the DEA as suspicious from 1999 through 2019. |

| HBC SERVICE COMPANY | | |
|---|---|---|
| **Exhibit No.** | **Date** | **Description** |
| Fred Bencivengo Dep. (01/22/2019), Dkt. # 1959-1 at 68:2 – 69:17; *see also*<br><br>**PSJ4 SOL Opp App A Exh 4**–HBC_MDL00136237 (Bencivengo Dep. Exh 3) | 6/26/2013 | Deposition developed McKesson's practice of preemptively warning Giant Eagle when its pharmacies ordered 60% or more of McKesson's internal threshold. |

## PSJ4 SOL Opp Appendix A

| | | |
|---|---|---|
| **PSJ4 SOL Opp App A Exh 5**–HBC_MDL00137363 (Michael Bianco Dep. (01/18/19), Dkt # 2804-17 at Exh 14)<br><br>**PSJ4 SOL Opp App A Exh 6**–Bianco Dep., Dkt. # 2804-17 at 111:19 – 134:2; *especially: 124:21–23* | 10/1/2014 | Email from Michael Bianco, Jr. to Joseph Millward, CC: Gregory Carlson, Subj: FW: Narcs Found in tote, October 1, 2014; (Michael Bianco claims to not know what the warehouse told the DEA, when the exhibit is clear that HBC told the DEA it did not have HCPs, which the exhibit states it did in fact have). |

| | | |
|---|---|---|
| | **HENRY SCHEIN** | |
| **Exhibit No.** | **Date** | **Description** |
| **PSJ4 SOL Opp App A Exh 7**–HSI-MDL-00020069 | 2/1/2012 | Email discussion between HS Regulatory Compliance team discussing Concealing Diversion for Profits … Concealing sales to self-medicating doctor due to large sales volume |
| **PSJ4 SOL Opp App A Exh 8**–HSI-MDL-00039634 | 2/27/2015 | Email discussion between HS Regulatory Compliance team regulatory concealing suspicious order … **"Please do not send a SO letter to the DEA."** |
| **PSJ4 SOL Opp App A Exh 9**–Bill Brandt Dep. (02/14/19), Dkt. # 2804-17 at 145:25 – 146:8 | | "Is it your understanding that prior to October 2017, Henry Schein was not reporting orders when discovered – suspicious orders when discovered to the DEA?" – A. "Yeah, I don't know the exact date that we changed, but we did change. I just don't know the date that we formally did -- make that change." |

| | | |
|---|---|---|
| | **McKESSON** | |
| **Exhibit No.** | **Date** | **Description** |
| **PSJ4 SOL Opp App A Exh 10**–MCKMDL00000021 at 039 | 8/24/2011 | McKesson's internal policy not to even use the word "suspicious" in communications to ensure it would not have to block shipments.  That policy can be found at page 20 of the PDF. |
| **PSJ4 SOL Opp App A Exh 11**–MCKMDL00330924<br><br>**PSJ4 SOL Opp App A Exh 12**–MCKMDL00540033 | 4/25/2007<br><br>12/10/2007 | McKesson deceives DEA about nature of LDMP program (in place in 2007 and 2008).  McKesson represented to DOJ that under the LDMP "customers will not be allowed to exceed the 8,000 monthly dosage limit until a due diligence review has been completed."   (MCKMDL00330924 at 00330926; also |

2

**PSJ4 SOL Opp Appendix A**

| | | |
|---|---|---|
| William de Gutierrez-Mahoney Dep. (11/28/18), Dkt. # 1966-12 at 584:11 - 17 | | stamped MCK-HOI-002-0000001 at 0000003).  But, this is not how the program actually operated. Testimony from McKesson's regulatory employees confirmed that the LDMP had no mechanism to block orders once the 8,000 unit threshold was met and while an investigation was ongoing. (11/28/18 William Mahoney Depo. at 584:11-17).  In fact, pharmacy customers were routinely permitted to exceed the 8,000 monthly dosage thresholds prior to a due diligence reviewing being completed by McKesson. (See e.g., MCKMDL00540033). |

| *TEVA and Related Entities (Actavis, Allergan and Watson)* |||
|---|---|---|
| *Exhibit No.* | *Date* | *Description* |
| **PSJ4 SOL Opp App A Exh 13–** ALLERGAN_MDL_02128035 | 2/11/2009 | A senior manager from Actavis' Customer Service Department informed her boss that the existing pre-merger Actavis SOM process **was inadequate to "prevent shipping excess product."** "For starters, the report is not cumulative… if a customer's monthly usage is 3000 units they can order 2999 units every day of the month and it would not be caught." |
| **PSJ4 SOL Opp App A Exh 14–** ALLERGAN_MDL_01839001 at 002 | 5/3/2004 | The Watson SOM system allowed customers to circumvent a hold on a suspicious order by either canceling the order or cutting the quantity. |
| **PSJ4 SOL Opp App A Exh 15–** ALLERGAN_MDL_02166476 | 2/9/2004 | Any time there was a question during the order process of a suspicious order quantity, we went (and still follow the same procedure) back to a customer to let them know we would need to notify the DEA due to the quantity they wanted to order. In response, they either reduced the quantity or cancelled the order. |

| *JANSSEN* |||
|---|---|---|
| *Exhibit No.* | *Date* | *Description* |
| **PSJ4 SOL Opp App A Exh 16–** JAN-MS-05444782 | 2/16/2018 | Janssen's Director of Regulatory Compliance: "I don't think we want to question release decisions after the fact." |

3

PSJ4 SOL Opp Appendix A

| **PSJ4 SOL Opp App A Exh 17–** JAN-MS-02967029 | 11/07/2017 | Recognizing problems with its SOM program, while evaluating a request for immediate enhancement, Janssen took the position that its SOM system "needs to be revamped to identify orders that are really 'suspicious' as these need to be reported to DEA, while maintaining its focus on all Schedule 2 orders as they may become a real 'suspicious' order **but do not want to alert the DEA at this point"** |
|---|---|---|
| **PSJ4 SOL Opp App A Exh 18–** JAN-MS-05444648 | 2/6/2018 | While drafting an SOM report, instructions are provided and implemented to delete a sentence reading: "SOM has not reported an order for controlled substances as suspicious during its time in operation." **("Okay; sentence has been deleted!")** |

| *WALGREENS* | | |
|---|---|---|
| ***Exhibit No.*** | ***Date*** | ***Description*** |
| **PSJ4 SOL Opp App A Exh 19-** WAGMDL00414048 | 2/4/2013 | Walgreens admitted, "The orders the war room members are able to investigate today, are a week old. **In most cases these orders have already been shipped making it very hard for us to report any orders** . . . ." |
| Edward Bratton Dep. (12/16/18), Dkt. # 1959-10 at 258-259 | | Bratton testifies that in Walgreens' system when an order had been reduced, not filled, that a store could go to another store and **"interstore."** |
| Bratton Dep., Dkt. # 1959-10 at 266-268 and Exhibit 26 | | Bratton admits there had been 102,000 orders up to this time in August of 2011 that had been flagged, cut, reduced and, according to the practices of Walgreens, not reported to the DEA as suspicious. |
| **PSJ4 SOL Opp App A Exh 20-** WAGMDL00133996 | 10/2/2017 | Describes process where Walgreens orders deemed suspicious will be "intercepted at the time of release…and reduced to a non-suspicious level." |