UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | No. 1:17-md-2804 |
| | ) | Judge Dan A. Polster |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) ) | |

DECLARATION OF AELISH M. BAIG IN SUPPORT OF
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ALLERGAN DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND, IN THE ALTERNATIVE, REQUEST FOR
RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(d)

I, AELISH M. BAIG, declare as follows:

1.      I am a member of the law firm of Robbins Geller Rudman & Dowd LLP, which has been appointed to the plaintiffs' executive committee of the MDL and represents Plaintiffs in the above-captioned action.  I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.  I submit this declaration in support of Plaintiffs' Memorandum in Opposition to Allergan Defendants' Motion for Summary Judgment ("Memorandum").  Specifically, I submit this declaration in support of Plaintiffs' conditional request therein for relief under Federal Rule of Civil Procedure 56(d).

2.      As set forth in Plaintiffs' Memorandum, Plaintiffs do not believe it is necessary to reach the issue of whether they can pierce the corporate veil and, regardless, that evidence exists creating an issue of fact that prevents summary judgment on that basis.  However, in the event the Court is inclined to credit movant Allergan plc's argument that Plaintiffs cannot pierce the corporate veil, Plaintiffs have not been provided certain facts necessary to further justify its opposition to that basis for summary judgment.

3.      Allergan plc moved to dismiss Plaintiffs' complaint on January 15, 2019, on the ground that it was not subject to personal jurisdiction.  Dkt. #1258.  In response, on January 25, 2019, Plaintiffs served personal jurisdiction discovery in the form of document requests, a true and correct copy of which is attached as Exhibit 1 hereto.

4.      On April 3, 2019, Special Master Cohen ordered Allergan plc to produce documents related to six discrete jurisdictional discovery issues and respond to certain interrogatories.  Dkt. #1512 at 6-7.

5.      Specifically, the Court ordered Allergan plc to produce documents related to:

(a)      corporate organizational charts;

(b)      tax returns including all schedules and attachments;

- 1 -

(c)     policies regarding branding, marketing, sales, promotion, distribution, regulatory affairs, and pharmacovigilance, to the extent they apply to opioids;

(d)     policies regarding accounting;

(e)     policies regarding corporate management to the extent such policies bear on opioid-related subsidiaries; and

(f)     annual reports.

*Id.*

6.     Documents concerning numerous of Plaintiffs requests were not produced. According to the Expert Witness Report of Marc I. Steinberg, attached as Exhibit 42 to Plaintiffs' Memorandum ("Mem. Ex. 42"), certain of the unproduced documents responsive to Plaintiffs' requests would be highly probative of whether the corporate veil could be pierced in this action.

7.     The list that follows identifies categories of documents Professor Steinberg identified as highly probative of whether the corporate veil can be pierced in this action.  For each category of information listed below, the parenthetical citation references Professor Steinberg's report and the footnote citation references the document request or requests seeking the information identified by Professor Steinberg.

(a)     Minutes of board of director and board committee meetings (including corporate resolutions and other documentation related thereto) addressing transactions and other relevant events between the parent and subsidiary enterprises and/or among a number of the subsidiary enterprises.  (Mem. Ex. 42 at 5);[1]

---

[1]   Ex. 1 at Request No. 8 (documents reflecting the manner in which decisions have been and continue to be made vis-à-vis subsidiaries concerning opioids); Request Nos. 12-13 (documents resulting from due diligence investigation regarding the sale of the Actavis Generic Business to Teva in 2016); Request No. 17 (documents reflecting the responsibilities of Board committees, task forces, or working groups related to opioids); Request No. 26 (documents reflecting accounting between Allergan plc and subsidiaries).

- 2 -

(b)  Minutes of shareholder meetings (including documentation related thereto) (*id.*);[2]

(c)  Documentation or other materials setting forth in sufficient detail the flow of funds to and from the parent and subsidiary enterprises as well as to and from the subsidiary enterprises (identifying the specific enterprises involved in the subject transaction, transfer, or undertaking) (*id.*);[3]

(d)  An accounting of the $33.75 billion received by the parent company Allergan plc in the Teva Pharmaceutical transaction (*id.*);[4]

(e)  Documentation evidencing inter-company transfers of assets and liabilities within the "corporate group" (*id.*);[5]

(f)  Documents reflecting that the requisite authorizations were procured from the Allergan plc subsidiary enterprises whose stock was sold to Teva, including authorization by the subject boards of directors and shareholders (Mem. Ex. 42 at 7);[6]

---

[2]  *E.g.*, Ex. 1 at Request No. 8 (documents reflecting the manner in which decisions have been and continue to be made vis-à-vis subsidiaries concerning opioids);

[3]  Ex. 1 at Request No. 9 (documents reflecting budgets, funding, the commingling of funds, control over accounting, and how financial books and records are kept for Allergan plc and its subsidiaries); Request No. 26 (documents reflecting accounting between Allergan plc and subsidiaries).

[4]  Ex. 1. at Request No. 13 (all documents reflecting possible sale of generic business to Teva); Request No. 39 (year-end balance sheets, statements of income, statements of cash flows, and statements of changes in shareholder equity for Allergan plc and each of its subsidiaries from 2014-2017, inclusive).

[5]  Ex. 1 at Request No. 9 (documents reflecting budgets, funding, the commingling of funds, control over accounting, and how financial books and records are kept for Allergan plc and its subsidiaries); Request No. 26 (documents reflecting accounting between Allergan plc and subsidiaries).

[6]  Ex. 1 at Request No. 8 (documents reflecting the manner in which decisions have been and continue to be made vis-à-vis subsidiaries concerning opioids); Request No. 26 (documents reflecting accounting between Allergan plc and subsidiaries).

4821-4895-5550.v1

(g)     Documents reflecting the services, pursuant to the Management Service Agreement effective January 1, 2016, that Allergan Sales, LLC and Allergan, Inc. provided to Allergan plc and other enterprises in within the Allergan group; the enterprises that directed the Allergan Sales, LLC and/or Allergan, Inc. to perform the requested services; and an accounting reflecting the conducting of the Management Service Agreement (*id.* at 17);[7] and

(h)     Documents reflecting whether Allergan plc maintains a bank account, whether (and which of) its subsidiaries maintain their own bank accounts, whether funds from subsidiaries' accounts are transferred to a centralized cash management account and recorded as credits to the subsidiaries, and whether these funds are listed as assets on the relevant subsidiary's balance sheets but returned to the subsidiary on request (and at whose request) (*id.* at 22).[8]

8.     Allergan provided additional discovery responses and document production on July 30, 2019, as Plaintiffs were finalizing their responses to the summary judgment motions.  Plaintiffs have not yet had the opportunity to review the production, so it is unclear whether it includes any of the information identified herein as missing.  Regardless, Allergan's belated production is another indication of its attempt to secure improper advantages during discovery for the purpose of handicapping Plaintiffs' ability to defeat summary judgment and prove their case to the jury.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 31st day of July, 2019, at San Francisco, California.

AELISH M. BAIG

---

[7]     Ex. 1 at Request No. 8 (documents reflecting the manner in which decisions have been and continue to be made vis-à-vis subsidiaries concerning opioids).

[8]     Ex. 1 at Request No. 9 (documents reflecting budgets, funding, the commingling of funds, control over accounting, and how financial books and records are kept for Allergan plc and its subsidiaries); Request No. 26 (documents reflecting accounting between Allergan plc and subsidiaries); Request No. 39 (year-end balance sheets, statements of income, statements of cash flows, and statements of changes in shareholder equity for Allergan plc and each of its subsidiaries from 2014-2017, inclusive).

- 4 -

EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | No. 1:17-md-2804 |
| | ) | Judge Dan A. Polster |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO
ALLERGAN PLC

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("Rule"), as well as Case Management Order One in *In re National Prescription Opiate Litigation* (ECF No. 232 in No. 1:17-md-2804), Plaintiffs hereby request that Defendant Allergan plc respond to the following requests for production ("Requests") in accordance with its obligations under the Federal Rules of Civil Procedure. Responses to the Requests shall be provided in the manner required by Rule 34(b)(2), the Local Rules of the Northern District of Ohio, the Court's Case Management Order One, filed April 11, 2018 (ECF No. 232), and any other applicable law or rules, within 30 days of the service of these Requests.

If Defendant Allergan plc finds any term or other aspect of the Requests vague, ambiguous or otherwise objectionable and intends to so object, counsel for Plaintiffs offer to promptly meet with counsel for Defendant Allergan plc to resolve any issues.

## I.  DEFINITIONS

1.  "You" or "Your" means Defendant Allergan plc and its officers, directors, employees, partners, representatives, agents, divisions, predecessors or successors-in-interest, and other persons or entities acting on its behalf or controlled by it.

2.  "Actavis Generic Business" means the entities acquired by Teva from You on August 2, 2016.

3.  "Communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) and, with respect to oral communications, includes any document evidencing such oral communications. It includes the transmittal of information by any means, including e-mail, SMS, MMS or other "text" messages, messages on "social networking" sites (including, but not limited to, Facebook, Google+, MySpace, Instagram, Snapchat and Twitter), shared applications from cell phones, or by any other means. "Communications" also shall include, but is not limited to, all originals and copies that are provided by You or to You by others.

- 1 -

4.　　　"Defendants" means the named Defendants in the above-captioned matter.

5.　　　"Document" is defined to be synonymous in meaning and equal in scope of the usage of this term in Rule 34.  A draft or non-identical copy is a separate document within the meaning of this term.  In all events, the definition of "Document" shall include "Communications," as defined below.

6.　　　"Endo" means Defendants Endo Health Solutions Inc., Endo Pharmaceuticals, Inc. and Par Pharmaceutical, Inc. and their officers, directors, employees, partners, representatives, agents, corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest and other Persons or entities acting on their behalf or controlled by them.

7.　　　"Identity" or "Identify," when referring to a corporate entity, means the full formal name of the company, its location and place of incorporation and principal place of business, and its parent or subsidiary relationship or affiliation to any of Your related entities.

(a)　　　"Identity" or "Identify" with respect to Persons means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural Person, additionally, the present or last known place of employment.  Once a Person has been identified in accordance with this subparagraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of that Person.

(b)　　　"Identify" with respect to Documents means to give, to the extent known: (i) the type of Document; (ii) the general subject matter of the Document; (iii) the date of the Document; and (iv) the author(s), addressee(s) and recipient(s) of the Document.

(c)　　　"Identify" with respect to Communications means to Identify: (i) the parties to the Communication; (ii) the form of the Communication; (iii) the date of the Communication; (iv) the subject of the Communication; and (v) the manner(s) in which the Communication was/is recorded or memorialized.

8.      "Janssen" means Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Noramco, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. and Janssen Pharmaceutica, Inc. and their officers, directors, employees, partners, representatives, agents, corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest and other Persons or entities acting on their behalf or controlled by them.

9.      "Mallinckrodt" means Defendants Mallinckrodt plc, Mallinckrodt LLC and SpecGx LLC and their officers, directors, employees, partners, representatives, agents, corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest and other Persons or entities acting on their behalf or controlled by them.

10.     "Marketing" means the action or business of promoting, selling or providing information about Opioids or Opioid Products.  "Marketing" includes both branded and unbranded Communications; branded and unbranded informational or educational programs; detailing by sales representatives (including electronic detailing); continuing medical education; publication of scientific medical or marketing articles, Scientific Research, studies or reports; websites (whether branded or unbranded); video or other visual media; and sales blasts, messages or other means used to sell or promote Opioids or Opioid Products for sale or distribution.

11.     "Opioid" means that class of drugs, legal or illegal, natural or synthetic, used to control pain, including, but not limited to, the drugs referenced in Plaintiffs' Complaint in the above-referenced matter.

12.     "Opioid Product(s)" means the Opioids that You developed, manufactured, marketed, promoted, sold or distributed.  This includes coatings, capsule configurations, delivery systems or mechanisms that include, but are not limited to, anti-abuse, tamper resistance and crush-proof mechanisms and mechanisms to deter immediate release.  "Opioid Products" is also intended to

- 3 -

include rescue medication for breakthrough pain.  "Opioid Products" includes both name-brand and generic products.

13.      "Order" means any order or transaction relating to the purchase of any Opioid Products from You.

14.      "Person" means any natural person or any business, legal or governmental entity or association.

15.      "Plaintiffs" means all the named Plaintiffs in the above-captioned matter.

16.      "Purdue" means Defendants Purdue Pharma L.P., Purdue Pharma Inc. and The Purdue Frederick Company, Inc. and their officers, directors, employees, partners, representatives, agents, corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest and other Persons or entities acting on their behalf or controlled by them.

17.      "Scientific Research" means studies, investigations, trials, articles, comparisons, case histories, reviews, reports or analyses that are conducted by doctors, researchers or other investigators.

18.      "Suspicious Order(s)" shall be as defined by the U.S. Drug Enforcement Administration ("DEA") and means and includes, but shall not be limited to, Orders for Opioids or Opioid Products of unusual size, orders deviating substantially from a normal pattern and orders of unusual frequency.

19.      "Teva" means Teva Pharmaceuticals USA, Inc., and its officers, directors, employees, partners, representatives, agents, corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest, and other Persons or entities acting on its behalf or controlled by it.

20.      "Warner Chilcott" means Warner Chilcott plc.

- 4 -

## II.    INSTRUCTIONS

1.      The time period covered by these Requests is one year prior to the launch of each relevant Opioid Product through the date of Your response, unless otherwise specified, or as specified in rulings by the Court or Special Master, whichever period is longer.

2.      All Electronically Stored Information ("ESI") shall be produced in its original native form, including all metadata, and shall be subject to the provisions of the agreed-upon ESI protocol.

3.      All video and audio files must be produced in the manner in which you store and retrieve them, *i.e.*, in their native formats, and shall be subject to the provisions of the agreed-upon ESI protocol.

## III.    REQUESTS FOR PRODUCTION

REQUEST NO. 1:

Documents that reflect Your corporate organizational structure and governance and how You are structured to oversee and manage Your global operations with regard to the development, testing, regulatory approval, manufacture, branding, Marketing, sale, promotion, distribution, Suspicious Order monitoring and pharmacovigilance relating to Your generic and name-brand pharmaceutical drug products, including Opioid Products.

REQUEST NO. 2:

Documents that reflect Your global corporate branding and Marketing plans and efforts to market Your pharmaceutical drug products under Your name and the Identity of the Persons and departments responsible for corporate branding.

REQUEST NO. 3:

Documents that reflect the Identity, roles and operations of Your subsidiaries (including direct and indirect subsidiaries) involved in the development, testing, regulatory approval, manufacture, branding, Marketing, sale, promotion, distribution, Suspicious Order monitoring or

- 5 -

pharmacovigilance relating to Your generic and name-brand pharmaceutical drug products, including Opioid Products, and Your corporate relationship to those subsidiaries.

REQUEST NO. 4:

Documents that reflect the manner in which You monitor, oversee, direct and control Your subsidiaries (including direct and indirect subsidiaries) with regard to the development, testing, approval, manufacture, Marketing, sale, promotion, distribution, Suspicious Order monitoring or pharmacovigilance relating to Your generic and name-brand pharmaceutical drug products, including Opioid Products.  This includes Documents reflecting any meetings, reports, audits, directives, recommendations and other communications between You and Your subsidiaries.

REQUEST NO. 5:

Documents that reflect the Identity of Your employees in the United States who are involved in the development, testing, approval, manufacture, Marketing, sale, promotion, distribution, Suspicious Order monitoring or pharmacovigilance relating to Your generic and name-brand pharmaceutical drug products, including Opioid Products.

REQUEST NO. 6:

Documents that reflect the Identity, including the location, description and ownership, of any of Your plants, property and equipment in the United States.

REQUEST NO. 7:

Documents that reflect the manner in which decisions have been and continue to be made to hire or terminate Your employees in the United States, including, but not limited to, the employees of Your direct and indirect subsidiaries.

REQUEST NO. 8:

Documents that reflect the manner in which decisions have been and continue to be made as to how Your direct and indirect subsidiaries are to work together with regard to the development,

- 6 -

testing, regulatory approval, manufacture, branding, Marketing, sale, promotion, distribution, regulation or compliance, Suspicious Order monitoring or pharmacovigilance relating to Your generic and name-brand pharmaceutical drug products, including Opioid Products, and how those decisions are implemented.

REQUEST NO. 9:

Documents that reflect the manner in which budgets are created for You and Your direct and indirect subsidiaries and how those subsidiaries are financed, the manner in which their funds are held, the extent to which their funds are commingled, what entity controls their financial accounting, how financial books and records are kept, and the Identity of any and all financial accountants or accounting firms retained with regard to accounting for those funds.

REQUEST NO. 10:

Documents that reflect the Identity of all entities You sold with the Actavis Generic Business in 2016 that had any role or involvement in the development, testing, regulatory approval, manufacture, Marketing, sale, promotion, distribution, regulation or compliance, or pharmacovigilance relating to Your generic and name-brand pharmaceutical drug products, including Opioid Products, and the corporate relationships among those entities and the role of each entity sold with regard to Opioids.

REQUEST NO. 11:

Documents that reflect the manner in which You conducted any due diligence with regard to Your sale of the Actavis Generic Business in 2016, and the Identity of all entities, Your departments or divisions, and Persons, including third parties or vendors, that conducted or assisted in conducting the due diligence.

REQUEST NO. 12:

All Documents resulting from Your due diligence investigation with regard to Your sale of the Actavis Generic Business in 2016 and that relate to or concern Opioid Products.

REQUEST NO. 13:

All Documents that reflect findings, reports or conclusions concerning the due diligence You conducted with regard to Your sale of the Actavis Generic Business in 2016, including, but not limited to, Documents reflecting any business, legal and financial investigation of the Actavis Generic Business's Opioid Products in preparation for that business's possible sale transaction and the Identity of all agreements reached with Teva regarding the sale.

REQUEST NO. 14:

Documents that reflect the manner in which you conducted any due diligence with regard to Your merger with Warner Chilcott in 2013 and the creation of Actavis plc for the purpose of facilitating that business combination, and the Identity of all entities, Your departments or divisions, and Persons, including third parties or vendors, that conducted or assisted in conducting the due diligence.

REQUEST NO. 15:

All Documents resulting from your due diligence investigation with regard to Your merger with Warner Chilcott in 2013 and the creation of Actavis plc for the purpose of facilitating that business combination that relate to or concern Opioid Products.

REQUEST NO. 16:

All Documents that reflect findings, reports or conclusions concerning the due diligence You conducted with regard to Your merger with Warner Chilcott in 2013 and the creation of Actavis plc for the purpose of facilitating that business combination, including expected sales, revenue and profits and other benefits from the sale of Opioid Products in the United States after the acquisition.

- 8 -

REQUEST NO. 17:

Documents that reflect the identity of Your Board and the composition and responsibilities of any Board committees, task forces or working groups comprised of Board members related to Your generic and name-brand pharmaceutical drug products, including Opioid Products.

REQUEST NO. 18:

All annual reports or similar reports filed with United States, Irish or any other national regulators.

REQUEST NO. 19:

To the extent such departments exist, Documents that reflect the structure of Your Marketing and sales departments for Your generic and name-brand pharmaceutical drug products (including Opioid Products), including divisions within each department (*i.e.*, regional/segment/area divisions for sales and Marketing).

REQUEST NO. 20:

To the extent such departments exist, Documents that reflect the job responsibilities for each position in Your sales and Marketing departments and any compensation structure that is based in whole or in part on levels of sales of Your generic and name-brand pharmaceutical drug products, including Opioid Products.

REQUEST NO. 21:

Documents that reflect Your involvement in the manner in which You or Your direct or indirect subsidiaries market, price and sell Your generic and name-brand pharmaceutical drug products, including Opioid Products, globally, including in the United States.  Include how you develop and implement global brand, Marketing and pricing plans for the sale of Your products, the Persons and departments involved in developing those plans, and implementation and reporting structure for these plans between You and Your direct and indirect subsidiaries.

1526025_1

REQUEST NO. 22:

To the degree that such departments exist, Documents that reflect the structure of Your regulatory, manufacturing, distribution and compliance departments for Your generic and name-brand pharmaceutical drug products (including Opioid Products), including divisions within each department (*i.e.*, regional/segment/area divisions for sales and Marketing).

REQUEST NO. 23:

Documents that reflect Your involvement in the manner in which You or Your direct or indirect subsidiaries develop, manufacture and distribute Your generic and name-brand pharmaceutical drug products, including Opioid Products, globally, including in the United States, including, but not limited to, how you develop and implement global development, manufacturing and distribution plans for Your products, the Persons and departments involved in developing those plans and the reporting structure for these plans.

REQUEST NO. 24:

Documents that reflect Your policies and procedures concerning the branding, Marketing, sale, promotion and distribution of Your generic and name-brand pharmaceutical drug products, including Opioid Products.

REQUEST NO. 25:

Documents that reflect Your policies and procedures concerning regulatory, pharmacovigilance and drug safety, and compliance with regulations and conditions concerning the sale, Marketing and distribution of Your generic and name-brand pharmaceutical drug products, including Opioid Products.

REQUEST NO. 26:

Documents that reflect Your policies and procedures as to how You manage your global operations and that concern or affect Your operations in the United States concerning internal

1526025_1

accounting, internal and external audits, directives from You to Your direct or indirect subsidiaries, and reporting back by a subsidiary to You on the subsidiary's operations.

REQUEST NO. 27:

Documents that reflect Your policies and procedures with regard to personnel management, including, but not limited to, hiring, promotion, termination and reviews.

REQUEST NO. 28:

Documents that reflect surveys, focus groups, market research or other similar research or investigation that You performed or had performed on Your behalf, or that you received or reviewed, regarding physician or public perceptions of the safety, efficacy and/or addictive nature of Your Opioid Products, other Opioid products, or Opioids and Your use of focus groups, research or investigations in developing a sales and marketing strategy and/or a strategy on how to effect, change or influence those perceptions.

REQUEST NO. 29:

Documents that reflect the role of wholesalers, distributors, pharmacies, hospitals, formularies, and government entities, agencies and departments (including any other Defendants) in the supply chain for Your Opioid Products and the responsibilities of each with respect to Marketing, sales, supply, Suspicious Order monitoring and potential diversion.

REQUEST NO. 30:

Documents that reflect reports or the like that were given to the Board regarding Your generic or name-brand pharmaceutical drug products, including Opioid Products, for the United States, including, but not limited to, reports regarding:

      (a)      Sales;

      (b)      Lobbying efforts;

      (c)      Safety and efficacy of Opioids or Your Opioid Products;

- 11 -

(d)        Submissions to the FDA or DEA;

(e)        Documents, studies, reports, data or other information that You did not submit to the FDA or DEA;

(f)        Abuse potential for Opioids or Your Opioid Products;

(g)        Reports of abuse, misuse, diversion, addiction or dependence regarding Opioids or Your Opioid Products;

(h)        Government investigations regarding Opioids or Your Opioid Products; and

(i)        Sales and Marketing of Opioids or Your Opioid Products.

REQUEST NO. 31:

Documents that reflect Your annual sales, revenue, profits and market share for and the identity of each Opioid Product sold in the United States.

REQUEST NO. 32:

Documents that reflect any meetings, correspondence, Communications, Documents, contracts or agreements between You and Purdue, Janssen, Endo, Teva or Mallinckrodt (and any of their predecessor or successor companies, subsidiaries or affiliates), concerning the manufacture, development, formulation, Marketing, advertising, sale and distribution of generic and name-brand pharmaceutical drug products, including Opioid Products.

REQUEST NO. 33:

Documents that reflect financial and business arrangements with any of the Defendants in this matter, including any contractual relationships between You and any of the Defendants in this matter.

REQUEST NO. 34:

Documents that reflect Communications between You and any of your direct or indirect subsidiaries concerning the development, regulatory approval and regulatory matters, branding,

- 12 -

Marketing, sale, promotion, distribution and Suspicious Order monitoring concerning Opioid Products in the United States.

REQUEST NO. 35:

Documents that reflect Communications by and between Your employees concerning the development, regulatory approval, Marketing, sale, promotion, distribution and Suspicious Order monitoring concerning Opioid Products in the United States.

REQUEST NO. 36:

Documents that reflect Your global brand, Marketing and sales plans concerning Your generic and name-brand pharmaceutical drug products, including Opioid Products.

REQUEST NO. 37:

Documents that reflect Your market research, analysis or projections concerning the generic pharmaceutical drug market, including for Opioid Products, in the United States.

REQUEST NO. 38:

Documents that reflect performance reviews conducted by You of the officers, and of department heads for your direct or indirect subsidiaries to the extent any of their departments were involved in the Marketing, sale, promotion, distribution and Suspicious Order monitoring for Opioid Products.

REQUEST NO. 39:

For You and each of Your direct or indirect subsidiaries: (i) year-end balance sheets for each such entity for each year ending during 2013, 2014, 2015, 2016 and 2017; (ii) statements of income for each year ending during 2013, 2014, 2015, 2016 and 2017; (iii) statements of cash flows for each year ending during 2013, 2014, 2015, 2016 and 2017; and (iv) statements of changes in shareholders' equity for each year ending during 2013, 2014, 2015, 2016 and 2017.

- 13 -

REQUEST NO. 40:

Provide each United States patent held by You or any of Your subsidiaries at any time since May 16, 2013, and each current pending patent application.

REQUEST NO. 41:

Documents evidencing or summarizing all business related to travel to the United States by any of Your officers, directors, employees or agents from May 16, 2013 to the present.

DATED:  January 25, 2019          ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                  AELISH M. BAIG
                                  MATTHEW S. MELAMED

                                            MATTHEW S. MELAMED

                        Post Montgomery Center
                        One Montgomery Street, Suite 1800
                        San Francisco, CA  94104
                        Telephone:  415/288-4545
                        415/288-4534 (fax)
                        aelishb@rgrdlaw.com
                        mmelamed@rgrdlaw.com

                        ROBBINS GELLER RUDMAN
                          & DOWD LLP
                        PAUL J. GELLER
                        MARK J. DEARMAN
                        DOROTHY P. ANTULLIS
                        120 East Palmetto Park Road, Suite 500
                        Boca Raton, FL  33432
                        Telephone:  561/750-3000
                        561/750-3364 (fax)
                        pgeller@rgrdlaw.com
                        mdearman@rgrdlaw.com
                        dantullis@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THOMAS E. EGLER
BRIAN O. O'MARA
CARISSA J. DOLAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com
bomara@rgrdlaw.com
cdolan@rgrdlaw.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of January 2019, the foregoing has been served via email only to the following defense and defense liaison counsel:

Jennifer G. Levy, P.C.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
jennifer.levy@kirkland.com

Donna Welch, P.C.
Martin L. Roth
Timothy W. Knapp
Kirkland & Ellis LLP
300 North LaSalle, Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
donna.welch@kirkland.com
rothm@kirkland.com
tknapp@kirkland.com

*Counsel for Allergan*

Mark Cheffo, Esq.
Dechert LLP Three
Bryant Park
1095 Avenue of the Americas
New York, NY 10036
mark.cheffo@dechert.com

Carol Rendon, Esq.
Baker Hostetler
Key Tower, 127 Public Square
Cleveland, OH 44114
crendon@bakerlaw.com

Enu Mainigi, Esq.
Williams & Connolly 725
Twelfth Street, NW.
Washington, DC 20005
emainigi@wc.com

1526025_1

Shannon McClure, Esq.
ReedSmith
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
smcclure@reedsmith.com

Geoffrey E. Hobart, Esq.
Covington & Burling One
CityCenter
850 Tenth Street, NW.
Washington, DC 20001
ghobart@cov.com

Kaspar Stoffelmayr, Esq.
Bartlit Beck
54 West Hubbard Street, Ste 300
Chicago, IL 60654
Kaspar.stoffelmayr@bartlit-beck.com

Tyler Tarney, Esq.
Gordon & Rees
41 S. High Street, Suite 2495
Columbus, OH 43215
ttarney@grsm.com

*Defendants' Liaison Counsel*

xALLDEFENDANTS-MDL2804-Service@arnoldporter.com

mdl2804discovery@motleyrice.com

s/ MELISSA BACCI
MELISSA BACCI