PSJ17 Exh 63

### CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT (the "Agreement"). is entered into as of January 22, 2015, ("Effective Date"), by and between Teva Sales and Marketing, Inc. ("Teva") with offices at 41 Moores Road, Frazer, PA  19355 and Michael Brennan, MD, an individual with offices at 140 Sherman Street, Fairfield, CT 06824("Consultant").

### RECITALS

A.  Teva desires to engage Consultant to provide consulting services as more fully set forth in this Agreement; and

B.  Consultant desires to provide such consulting services to Teva in accordance with the terms and conditions of this Agreement.

NOW THERFORE, in consideration of the premises and mutual promises and undertakings contained herein, the parties agree as follows:

1.  **SERVICES**.

    (a)    During the Term (as defined below) of this Agreement, Consultant agrees to provide the following consulting services:  present a slide presentation for video recording and publication on the internet, as described in more detail on Exhibit A (the "Services"). To the extent Exhibit A conflicts with this Agreement, the terms and conditions of this Agreement shall control. Any additional services must be agreed to in writing, **in an amendment to this Agreement,** which describes the timing and scope of the additional Services and the monies payable by Teva for such Services.

    (b)    Consultant's primary contact at Teva will be Mathew Day, or such other person as Teva notifies Consultant in writing.

    (c)    The parties agree that this is a personal services contract and that Teva expects all work performed hereunder to be performed by Consultant.  Consultant will not, in whole or in part, assign or subcontract any of the Services to be performed hereunder without the prior written consent of Teva.

2.  **COMPENSATION**.

    (a)    In consideration of the Services rendered hereunder Teva shall pay Consultant the amounts specified in Exhibit A attached hereto, in accordance with the payment schedule set forth on Exhibit A.  The compensation set forth on Exhibit A shall be the total consideration for the Services rendered hereunder.  The budget for Services may only be modified by a **written amendment** to this agreement. Consultant will submit an invoice that includes reasonable details regarding the Services performed and approved expenses incurred by Consultant, including receipts for approved expenses incurred.  Teva will pay Consultant's compensation and reimbursable expenses within thirty (30) days following its receipt of Consultant's invoice.

Consulting Agreement Template (Feb 2013)

1

**Highly Confidential**

**TEVA_MDL_A_06788866**

(b)     Teva shall reimburse Consultant for reasonable out-of-pocket travel and other expenses incurred by Consultant in performance of the Services hereunder; provided, however, that such expenses have been approved in advance by Teva. Such expenses may include approved travel, hotel and accommodations, meals when travel is related to the Services, car rental, gas and mileage. Each invoice for expenses shall be supported by all relevant receipts.

(c)     Teva pays all invoices for Services and approved expenses via electronic transfer (ACH). Consultant will deliver a completed and signed Deposit Form (Attachment 1 hereto) at the time of execution of this Agreement and a completed and signed W-9 Information Form (Attachment 2 hereto) within no more than five business days after the effective date of this Agreement. Teva reserves the right to withhold payments and will not process invoices until Teva receives both completed and signed forms.

(d)     In the event that Consultant is a healthcare provider, Consultant acknowledges and agrees that Teva may be required to publicly disclose certain terms of this Agreement, including the identity of Consultant, the nature of the Services performed hereunder, and any payment, meal, reimbursement of expenses, or any other thing of value provided to Consultant under this Agreement.

(e)     Consultant will not provide any payment, meal, reimbursement of expenses, or any other thing of value to a healthcare provider on behalf of Teva. A healthcare provider is any individual who is licensed to prescribe prescription medication or who can otherwise treat or assist in the treatment of patients.

## 3.     TERM AND TERMINATION.

(a)     This Agreement will be effective as of the date first written above and shall continue in effect until the Services are completed to the satisfaction of Teva or for a period of one (1) year ("Term"), which ever occurs later, unless terminated earlier in accordance with this Agreement. Teva shall have the right to terminate this Agreement at any time for any reason by providing thirty (30) days written notice to Consultant. Teva shall have the right, by giving written notice, to immediately terminate this Agreement and immediately terminate the performance of Services in the event Teva determines that Consultant is not satisfactorily performing Services. Upon receipt of a termination notice from Teva, Consultant will immediately discontinue Services on the date specified in the notice. Consultant will be paid the agreed upon rate for any Services performed up to the termination date specified in the termination notice.

(b)     Teva shall have the right to immediately terminate this Agreement, by giving written notice to Consultant, in the event the U.S. Food and Drug Administration, any other governmental or regulatory agency, or any law, rule, or regulation prohibits the Services or if by their intervention it becomes unfeasible for Teva to continue to use the Services. Further, upon receipt of notice by Teva of Consultant's debarment and/or exclusion by any government agency, or if Teva otherwise becomes aware of Consultant's debarment and/or exclusion or threatened debarment and/or exclusion, Teva shall have the right to immediately terminate this Agreement. In the event of such early termination, Teva will be obligated to pay only for Services performed up to and including the date of termination and not previously reimbursed by Teva.

**Highly Confidential**                                                                 **TEVA_MDL_A_06788867**

4.     **REPRESENTATIONS, WARRANTIES AND COVENANTS.**

(a)     Consultant represents and warrants that Consultant has never been and is not currently excluded, debarred, suspended or otherwise ruled ineligible to participate in any Federal health care program (as in defined in 42 U.S.C. § 1320a-7b(f)) and Consultant has not engaged in any activity that could lead to Consultant becoming excluded, debarred, suspended or otherwise ruled ineligible to participate in any Federal health care program.

(b)     Consultant represents and warrants that:

    i.     Consultant has not been debarred under Section 306(a) or Section 306(b) of the Federal Food, Drug and Cosmetic Act, or excluded from participation in any federal healthcare program under Section 1128 of the Social Security Act as those laws may be amended from time to time, or any other local, state or federal law applicable to the pharmaceutical industry and does not and will not use in any capacity the services of any person so debarred;

    ii.     Consultant has not been convicted of a criminal offense that falls within the scope of mandatory exclusion from participation in any Federal healthcare program under 42 U.S.C. § 1320a-7(a).

Consultant shall notify Teva immediately if Consultant should, in the future, be excluded, debarred, suspended or otherwise ruled ineligible to participate in any Federal health care program ("Excluded" or "Exclusion") or if any action is taken that could lead toward Consultant being Excluded. Teva reserves the right to screen Consultant against the Office of the Inspector General and General Services Administration exclusion databases and any other relevant databases.

(c)     Consultant represents and warrants that the Services do not and will not involve the counseling or promotion of a business arrangement or other activity that violates any local, state or federal law.

(d)     Consultant represents and warrants that Consultant will comply in all material respects with all applicable foreign and United States federal and state statutes and regulations, including but not limited to: (i) the Anti-Kickback provisions of the Social Security Act, 42 U.S.C. § 1320a-7b, and the relevant regulations at 42 C.F.R. Part 1001 ("Healthcare Fraud and Abuse Laws"); (ii) the False Claims Act, 31 U.S.C. § 3729; and (iii) statutes or regulations relating to the confidentiality and security of personal and medical data, including but not limited to, the health information privacy regulations promulgated under the provisions of the Health Insurance Portability and Accountability Act of 1996, 45 C.F.R. § 160-164 and any other laws and/or regulations relating to the maintenance, use, transmission or other activity concerning patient records and confidentiality of personal and medical data.

(e)     Consultant represents and warrants that Consultant is not a party to, or bound by, any agreement or commitment, or subject to any restriction, including but not limited to agreements related to existing or previous employment containing confidentiality or non-compete covenants, which now or in the future could interfere with the performance by Consultant of Services under this Agreement or may have a possibility of adversely affecting the business of Teva and/or its Affiliates.

Consulting Agreement Template (Feb 2013)

**Highly Confidential**                                                                    **TEVA_MDL_A_06788868**

(f)     Consultant represents and warrants that entering into this Agreement and providing Services to Teva hereunder is not in conflict with the policies of any institution with which she/he is affiliated and that she/he is not required to disclose or assign to any such institution any inventions made by him in the course of performing such Services for Teva under this Agreement.

(g)     Consultant represents and warrants that the compensation paid to Consultant hereunder constitutes fair market value for the Services performed based upon the time spent performing the Services and has not been determined in a manner that takes into account the volume or value of any referrals or business generated between the parties. Further, Consultant represents and warrants that this compensation is not being paid in exchange for or in return for any explicit or implicit agreement to purchase, prescribe, dispense, recommend or provide favorable formulary status for any Teva products.

(h)     If, during the Term of this Agreement and for a period of two (2) years thereafter, Consultant is or becomes a member of a committee that sets formularies or develops clinical guidelines, Consultant shall disclose to the committee the existence and nature of Consultant's relationship with Teva.

(i)     Consultant represents and warrants that he/she has not engaged in or been accused of engaging in any inappropriate, unethical or unprofessional conduct, and will not engage in such conduct during the term of this Agreement.

5.     **WORK PRODUCT.** All ideas, data, developments, methods, improvements, materials or products either devised or generated by Consultant during and related to or growing out of the Services performed pursuant to this Agreement will be and remain the sole and exclusive properties of Teva or any Affiliate designated by Teva and will be treated by Consultant as Confidential Information covered by Section 6 below. In the event that any such ideas, data, developments, methods, improvements materials or products become the subject of patent applications or patents, Consultant will immediately upon the request of Teva and at Teva's expense do all things necessary to effect an assignment of such patent applications and patents to Teva or any Affiliate designated by Teva, including without limitation the execution of appropriate documents to evidence and record such assignment. The obligations of the parties pursuant to this Section 5 shall survive completion or termination of this Agreement.

6.     **CONFIDENTIALITY AND NONDISCLOSURE.**

(a)     All information disclosed by Teva or becoming known to Consultant as a result of entering into this Agreement, including, without limitation, the terms and provisions of this Agreement, or performing the Services requested hereunder is the "Confidential Information" of Teva and will be maintained by Consultant in strict confidence.

(b)     Confidential Information does not include (i) information that is now public knowledge or subsequently becomes such through no breach of this Agreement, (ii) documented information that is rightfully in Consultant's possession prior to the Effective Date or (iii) information that is disclosed to Consultant by a third party, unless such disclosure constitutes, or either directly or indirectly results from, a breach of any agreement to which Teva is a party.

Consulting Agreement Template (Feb 2013)

4

(c)     Consultant agrees that she/he will not permit Confidential Information in her/his possession to be disclosed to any third party or used for any purpose not authorized by Teva in writing. In furtherance of this obligation, Consultant will not place or permit to be placed any Confidential Information on or in any computer equipment, electronic storage devices or files of any third party, including, without, limitation, any institution with which Consultant is affiliated.

(d)     These obligations of confidentiality and non-disclosure will survive the termination of this Agreement and the completion of Services to be provided hereunder.

## 7.     INDEMNIFICATION; LIMITATION OF LIABILITY.

(a)     Teva agrees to defend, indemnify and hold harmless Consultant from and against any and all liabilities, claims, damages and causes of action (including costs and reasonable counsel fees) of any third party arising from or based upon acts or omissions of Teva or its agents or employees related to the Services. This provision does not require Teva to defend, indemnify or hold harmless Consultant (including costs and reasonable counsel fees) for any actions or conduct of Consultant giving rise to liability, and nothing in this section shall be construed to transfer to Teva any liability for any acts or conduct of Consultant. Teva shall be notified of any claim made against Consultant immediately, but in no event later than ten (10) days after Consultant's receipt of notice of such claim, and Teva shall have the right to select defense counsel and to direct the defense or settlement of any such claim. Consultant shall cooperate at the request of Teva in the defense of any such claim.

(b)     Consultant agrees to defend, indemnify and hold harmless Teva, its directors, officers, employees, agents and affiliates, from and against any and all liabilities, claims, damages and causes of action (including costs and reasonable counsel fees) of any third party arising from or based upon acts or omissions of Consultant related to the Services, including without limitation, negligence, willful misconduct, any claim for copyright, patent or other intellectual property infringement, and any breach of a representation or warranty provided herein. This provision does not require Consultant to defend, indemnify or hold harmless Teva (including costs and reasonable counsel fees) for any actions or conduct of Teva giving rise to liability, and nothing in this section shall be construed to transfer to Consultant any liability for any acts or conduct of Teva. Consultant shall be notified of any claim made against Teva immediately, but in no event later than ten (10) days after Teva's receipt of notice of such claim, and Consultant shall have the right to select defense counsel and to direct the defense or settlement of any such claim. Teva shall cooperate at the request of Consultant in the defense of any such claim.

(c)     The obligations of the parties pursuant to this Section 7 shall survive completion or termination of this Agreement.

(d)     LIMITATION OF LIABILITY: EXCEPT FOR (A) THE INDEMNIFICATION OBLIGATIONS UNDER THIS AGREEMENT, (B) THE GROSS NEGLIGENCE, INTENTIONAL MISCONDUCT OR FRAUD OF A PARTY AND (C) CONSULTANT'S BREACH OF ARTICLES 5 OR 6, NEITHER PARTY SHALL HAVE ANY LIABILITY TO THE OTHER FOR ANY INCIDENTAL, PUNITIVE, CONSEQUENTIAL DAMAGES OR OTHER SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO, THE LOSS OF OPPORTUNITY, LOSS OF REVENUE OR PROFIT, IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT.

Consulting Agreement Template (Feb 2013)

5

Highly Confidential                                                                        TEVA_MDL_A_06788870

8.    **ADVERSE EVENT REPORTING.** Consultant shall comply fully and promptly with all regulatory safety reporting requirements regarding Teva's products. Consultant will notify Teva as follows: all adverse event (AE) and product complaint (PC) information received by Consultant in connection with performing the Services (including: pregnancy exposure, infant exposure during breastfeeding, overdose, abuse, misuse, medication errors, lack of efficacy, contamination with infectious agents, drug interactions, occupational exposure, and any other safety information as reasonably requested by Teva) must be reported to Teva Pharmacovigilance by Consultant within one business day by telephone (866-832-8537) or by email (drug.safety@tevapharm.com). If AE/PC information is received by Consultant on a non-business day or after regular business hours of a business day, then Consultant must transmit the information by the end of the next business day. However, if more than 3 non-business days occur in a row, it is the responsibility of Consultant to transmit the information by the end of day three. Notwithstanding the foregoing, the time period, criteria and method for reporting AE/PC information, including any special safety topics, may be modified by Teva in separate correspondence.

9.    **NOTICES.** All notices required hereunder will be deemed given when sent by registered or certified mail, postage prepaid, return receipt requested, to Consultant's address stated above or to the Teva address stated above unless prior written notice of a change of address is given.

10.    **RELATIONSHIP OF THE PARTIES.**

(a)    Consultant is an independent contractor and this Agreement does not create an employer/employee relationship between Consultant and Teva. Consequently, Consultant will not be entitled to receive any employee benefits, including without limitation any health, accident, liability or other insurance, which are made available to an employee of Teva. Consultant will have no actual, apparent or implied authority to bind Teva to any obligation whatsoever.

(b)    Consultant acknowledges that Consultant is an independent contractor, as defined by the Internal Revenue Service, and not an agent or employee of Teva. Consultant further acknowledges and accepts responsibility for all the attendant rights and liabilities of such an independent contractor. Any provision in this Agreement or any action by Teva which may appear to give Teva the right to direct or control Consultant in performing Services means Consultant will follow the desires of Teva in the results of Services only.

(c)    Consultant acknowledges sole responsibility for the provision of Consultant's pension or welfare benefits and for payment of income and self-employment taxes for Consultant's earnings under this Agreement.

11.    **SEVERABILITY.** The invalidity or unenforceability of any term or provision of this Agreement will not affect the validity or enforceability of any other term or provision hereof.

12.    **WAIVER.** Waiver by either party or the failure by either party to claim a breach of any provision of this Agreement will not be deemed to constitute a waiver or estoppel with respect to any subsequent breach of any provision hereof.

13.    **PUBLICATION; THIRD PARTY COMMUNICATION.**

Consulting Agreement Template (Feb 2013)

6

**Highly Confidential**                                                                      **TEVA_MDL_A_06788871**

(a)    Consultant may not publish the results or any information arising out of the performance of Services under this Agreement without the prior written consent of Teva.

(b)    Neither party will issue any press release or other third party communication relative to this Agreement without the prior written consent of the other party. Neither party will use the name of the other party or the names of the other party's employees in any advertising or sales promotional material or in any other way not required by law or regulation without the prior written consent of the other party.

14.    **ASSIGNMENT; BINDING EFFECT**.

(a)    Neither party hereto may assign, cede or transfer any of its rights or obligations under this Agreement without the prior written consent of the other party; provided, however, without such consent Teva may assign this Agreement to an Affiliate or in connection with the transfer or sale of all or substantially all of its assets or business to which this Agreement relates or its merger or consolidation with another company.

(b)    This Agreement will inure to the benefit of and be binding upon each party and its successors and permitted assigns. No assignment will relieve either party of the performance of any accrued obligation which such party may then have under this Agreement.

15.    **NON-SOLICITATION**. During the term of this Agreement, and for one (1) year thereafter, Consultant agrees to refrain from hiring or attempting to hire any of Teva's employees without the consent of Teva.

16.    **RETURN OF TEVA PROPERTY.** Consultant will return to Teva any property of Teva in his/her possession, at any time when so requested by Teva and in any event upon termination or expiration of this Agreement. Consultant will not remove any Teva property from Teva premises without written authorization from Teva.

17.    **INSURANCE.** Consultant agrees that, during the term of this Agreement, Consultant will carry policies of liability insurance (including professional liability insurance if applicable) in amounts that are the greater of (i) amounts sufficient to cover Consultant's obligations under this Agreement; or (ii) amounts as required by applicable law. Consultant will furnish certificates of insurance or other documentation of such coverage to Teva upon request.

18.    **FURTHER ACTION**. Each party hereto shall take, or cause to be taken, all actions necessary and proper under applicable laws, rules and regulations, and execute and deliver such further documents, as may be reasonably requested by the other party in connection with the operation of this Agreement.

19.    **AFFILIATES.** The parties agree that any of Teva's Affiliates may receive Services under this Agreement as if they were Teva. Any Affiliate of Teva that receives such Services shall be considered "Teva" as such term is used herein and shall be subject to all of the terms and conditions of this Agreement. An Affiliate of Teva includes, without limitation, Teva Pharmaceutical Industries Ltd, Teva Pharmaceuticals USA, Inc; Teva Neuroscience, Inc.; Cephalon, Inc.; Teva Parenteral Medicines, Inc.; Teva Respiratory, LLC.; Teva Women's Health, Inc. and Teva Branded Pharmaceutical Products R&D, Inc.

Consulting Agreement Template (Feb 2013)

**Highly Confidential**    **TEVA_MDL_A_06788872**

20.   **ENTIRE AGREEMENT; AMENDMENTS**. This Agreement contains the entire agreement of the parties and may not be changed orally, but only by an agreement in writing signed by both parties.

21.   **GOVERNING LAW**. This Agreement shall be deemed to have been made in the State of Delaware and shall be interpreted and enforced in accordance with the laws of the State of Delaware of, without giving effect to the conflict of laws principles thereof.

22.   **COUNTERPARTS**. This Agreement may be executed in counterparts, each of which will be deemed an original, but both of which taken together will constitute one and the same instrument.

Consulting Agreement Template (Feb 2013)

**Highly Confidential**

**TEVA_MDL_A_06788873**

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

Teva Sales and Marketing, Inc.

By _____

Name ___JEFFREY DIERKS_____

Title _DIRECTOR, PAIN CARE MARKETING_____

By _____

Name __John Hassler_____

Title __2-18-15_____

Michael Brennan, MD

By _____

Name ___Michael Brenn_____

Title ___Ax f_____

Highly Confidential

TEVA_MDL_A_06788874

## EXHIBIT A

**Description of Consulting Services and Compensation**

Services:

The Services include: Consultant will participate in a video shoot held for a duration of 1 day, at the Digital Arts Studio in New York City, NY on January 30, 2015. Prior to the video shoot, Consultant will participate in planning call(s) and will be audio-recorded presenting a Teva-approved presentation. Speaker will attend on-site rehearsal and present along with two other Faculty Speakers during the video shoot. The final video will be hosted on the Pain Matters website.

- Consultant agrees to be photographed, audiotaped, videotaped, and have Consultant's personal likeness recorded through other means by Teva or its agents. Collectively, the audio and video recordings are referred to as "Recordings."
- Consultant authorizes Teva to transcribe the Recordings into print.
- Consultant agrees to allow Teva to use, incorporate, re-use, alter and/or edit Consultant's statements, quotes, name, likeness and portrayal in whole or in part, in any and all of the Recordings.
- Consultant agrees to allow Teva to copyright the Recordings in Teva's name (the Recordings shall be considered a "work made for hire").
- Consultant understands that all rights to any information or material Consultant provide to Teva as part of the Recordings shall be Teva's property and that Teva has no obligation to use the Recordings.
- Consultant agrees that Teva may publish the Recordings, including publication on the internet, and that Consultant may not be given the chance to review/approve Consultant's image, or any finished materials that includes Consultant's information obtained as part of the Recordings.

Compensation:

In consideration of the Services rendered hereunder by Consultant, Teva shall pay Consultant $4500.00 as complete compensation.

Teva pays all invoices for Services and approved expenses via electronic transfer (ACH). Consultant will deliver a completed and signed Deposit Form (Attachment 1 hereto) at the time of execution of this Agreement and a completed and signed W-9 Information Form (Attachment 2 hereto) within no more than five business days after the effective date of this Agreement. Teva reserves the right to withhold payments and will not process invoices until Teva receives both completed and signed forms.

Consulting Agreement Template (Feb 2013)

**Highly Confidential**

**TEVA_MDL_A_06788875**

Schedule of Payments:  Payment is due upon receipt of invoice.

Consultant will submit an invoice that includes reasonable details regarding the Services performed and expenses incurred by Consultant, including receipts.

Highly Confidential

TEVA_MDL_A_06788876

**ATTACHMENT 1**
**DEPOSIT FORM**

Please complete and return the Deposit Form with this Agreement. Teva pays all Consultant invoices via electronic transfer (ACH). Payments will not be processed until Teva receives completed forms.

Name _____

Contact for electronic payments:

      Name _____

      Phone Number _____

      E-mail address _____

Bank Name _____

Bank Address _____

City, St, Zip _____

Bank Routing number (ABA) _____

Bank Account number _____

I authorize Teva to make electronic payments into Consultant's bank account as provided above.

Signature _____

Title _____

Date _____

Highly Confidential
TEVA_MDL_A_06788877

**ATTACHMENT 2**
**W-9 Information Form**

Please complete the W9 Information Form within five business days of the effective date of this Agreement and fax to Teva.

**Highly Confidential**

**TEVA_MDL_A_06788878**

**Highly Confidential**

**TEVA_MDL_A_06788879**

## Marketing Contract Review/Signoff

VENDOR NAME: _Michael Brennan, MD_

PROJECT NAME: _Pain Matters - Speaker_

PROJECT LEAD _Matt Day_    DOLLAR AMOUNT: $ _4,500_

☐ VANTRELA ER  ☐ NUVIGIL  ☐ FENTORA  ☐ AMRIX  ☐ OTHER

CONTRACT TYPE:
☐ Master Service Agreement (MSA)          ☐ Statement of Work (SOW)
☐ Advisory Board Agreement                ☐ Confidentiality Disclosure Agreement (CDA)
☐ Services Agreement                      ☑ Consulting Agreement
☐ Advocate Contract                       ☐ Other Agreement
☐ Amendment to Contract (attach copy of original contract)

SCOPE OF PROJECT and/or Change from Previous Agreement: _____

_Consulting Agreement for participation in video shoot for "Evolving_
_Roles, Same Goals" presentation that will be used to educate HCPs_
_on Appropriate Use, AD technology & FDA guidelines. Video will live_
_on PainMatters.com and be used at conventions to drive awareness/education._
_Aligns with 1st strategic imperative of brand plan- Education_

***Prior to the following approvals, ALL contracts/agreements are to have the Legal stamp
and Supply Management stamp (≥ $100,000 when applicable)***

| | |
|---|---|
| Comments: _MM - A Cw DJ_ | Date: _2/18/15_ |
| Project Lead (Name/Title): _Associate Director / Marketing_ | |
| Comments: | Date: |
| Second Level Approval (Name/Title): _JEFFREY DIERKS_  _DIRECTOR PAIN CARE MKTG_ | _2/18/15_ |
| Comments: | Date: _2-18-15_ |
| Third Level Approval (Name/Title) - (IF APPLICABLE): | |
| Comments: | Date: |
| Fourth Level Approval (Name/Title)- (IF APPLICABLE): | |
| Comments: | Date: |
| Fifth Level Approval (Name/Title)- (IF APPLICABLE): | |

N:\Marketing\Forms\Contract Review and Signoff Coversheet REVISED 06-12-13.docx                    1

Highly Confidential                                                                 TEVA_MDL_A_06788880

**Highly Confidential**

**TEVA_MDL_A_06788881**