# PSJ10 Exh 19

Highly Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION
 3
      IN RE: NATIONAL          )
 4    PRESCRIPTION             )  MDL No. 2804
      OPIATE LITIGATION        )
 5    _____  )  Case No.
                               )  1:17-MD-2804
 6                             )
      THIS DOCUMENT RELATES    )  Hon. Dan A.
 7    TO ALL CASES             )  Polster
 8
                 FRIDAY, OCTOBER 26, 2018
 9
         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
10                 CONFIDENTIALITY REVIEW
11                        - - -
12            Videotaped deposition of Stephan
13   Kaufhold, held at the offices of LIEFF
14   CABRASER HEIMANN & BERNSTEIN, LLP, 250 Hudson
15   Street, 8th Floor, New York, New York,
16   commencing at 12:03 p.m., on the above date,
17   before Carrie A. Campbell, Registered
18   Diplomate Reporter and Certified Realtime
19   Reporter.
20
21
22                        - - -
             GOLKOW LITIGATION SERVICES
23      877.370.3377 ph | 917.591.5672 fax
                  deps@golkow.com
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1              A P P E A R A N C E S :
 2

 3      ROBBINS GELLER RUDMAN & DOWD LLP
        BY:  MATTHEW S. MELAMED, ESQUIRE
 4           mmelamed@rgrdlaw.com
             DORY P. ANTULLIS, ESQUIRE
 5           dantullis@rgrdlaw.com
        1 Montgomery Street, Suite 1800
 6      San Francisco, California 94104
        (415) 393-1500
 7      Counsel for Plaintiffs
 8
 9      WILLIAMS & CONNOLLY LLP
        BY:  ANDREW C. MCBRIDE, ESQUIRE
10           amcbride@wc.com
             725 Twelfth Street, N.W.
11      Washington, DC 20005
        (202) 434-5331
12      Counsel for Cardinal Health, Inc.
13
14      REED SMITH LLP
        BY:  SAMANTHA L. ROCCHINO, ESQUIRE
15           srocchino@reedsmith.com
        Three Logan Square
16      1717 Arch Street, Suite 3100
        Philadelphia, Pennsylvania 19103
17      (215) 851-8100
        Counsel for AmerisourceBergen
18
19
        JONES DAY
20      BY:  EDWARD M. CARTER, ESQUIRE
             emcarter@jonesday.com
21      325 John H. McConnell Boulevard
        Suite 600
22      Columbus, Ohio 43215-2673
        (614) 469-3939
23      Counsel for Walmart
24
25
```

```
 1      PELINI, CAMPBELL & WILLIAMS LLC
        BY:  PAUL B. RICARD, ESQUIRE
 2           pbricard@pelini-law.com
        8040 Cleveland Avenue NW, Suite 400
 3      North Canton, Ohio 44720
        (330) 305-6400
 4      Counsel for Prescription Supply,
        Inc.
 5
 6
        ROPES & GRAY, LLP
 7      BY:  MAX R. MAEROWITZ, ESQUIRE
             Max.Maerowitz@ropesgray.com
 8           (VIA TELECONFERENCE)
        800 Boylston Street
 9      Boston, Massachusetts 02199-3600
        (617) 951-7000
10      Counsel for Mallinckrodt
11
12      MARCUS & SHAPIRA LLP
        BY:  DARLENE M. NOWAK, ESQUIRE
13           nowak@marcus-shapira.com
             (VIA TELECONFERENCE)
14      One Oxford Centre, 35th Floor
        Pittsburgh, Pennsylvania 15219-6401
15      (412) 338-4690
        Counsel for HBC
16
17
        ARNOLD & PORTER KAYE SCHOLER, LLP
18      BY:  JOANNA PERSIO, ESQUIRE
             joanna.persio@arnoldporter.com
19      601 Massachusetts Avenue, NW
        Washington, DC 20001-3743
20      (202) 942-5000
        Counsel for Endo Pharmaceuticals
21      Inc., and Endo Health Solutions Inc.
22
23
24
25
```

```
 1      MORGAN, LEWIS & BOCKIUS LLP
        BY:  EVAN K. JACOBS, ESQUIRE
 2           evan.jacobs@morganlewis.com
        1701 Market Street
 3      Philadelphia, Pennsylvania 19103
        (215) 963-5000
 4      Counsel for Teva Pharmaceuticals
        USA, Inc., Cephalon, Inc., Watson
 5      Laboratories, Inc., Actavis LLC,
        Actavis Pharma, Inc., f/k/a Watson
 6      Pharma, Inc.
 7
 8      KIRKLAND & ELLIS, LLP
        BY:  JENNIFER LEVY, ESQUIRE
 9      655 15th Street, NW, Suite 1200
        Washington, DC 20005
10      (202) 879-5000
11      and
12      BY:  MICHAEL LEFEVOUR, ESQUIRE
             michael.lefevour@kirkland.com
13      300 North LaSalle
        Chicago, Illinois 60654
14      (312) 862-2000
        Counsel for Allergan Finance, LLC
15
16
        COVINGTON & BURLING LLP
17      BY:  ANDREW PALMER, ESQUIRE
             (VIA TELECONFERENCE)
18      850 Tenth Street, NW
        Washington, DC 20001-4956
19      (202) 662-6000
        Counsel for McKesson Corporation
20
21
     VIDEOGRAPHER:
22       HENRY MARTE,
         Golkow Litigation Services
23
                      - - -
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                 My name's Stephan Kaufhold.
 2   I'm senior vice president, treasurer of
 3   Allergan.
 4                 My home address is 781 Backhus
 5   Estate Road, Glen Gardener, New Jersey.  My
 6   work address is 5 Giralda Farms, Madison, New
 7   Jersey.
 8        Q.    My job today is to ask clear
 9   questions.  If the question I ask is unclear,
10   please let me know.
11        A.    Sure.
12        Q.    Please answer audibly, as you
13   are doing.  Please avoid shaking your head or
14   nodding for a no or yes respectively.
15              Okay?
16        A.    Understood.
17        Q.    And similarly, please answer
18   with easily transcribable words such as yes
19   or no and not uh-huh or huh-uh.
20              Okay?
21        A.    Yes.
22        Q.    Have you been deposed before?
23        A.    I have.
24        Q.    So you're generally familiar
25   with the process?
```

```
 1       A.      I am.
 2       Q.      You understand that you've been
 3   designated by a corporation to speak on
 4   behalf of that corporation in your testimony
 5   today, correct?
 6       A.      That is correct.
 7       Q.      What is the name of the entity
 8   that designated you to testify on its behalf?
 9       A.      It would be Allergan PLC.
10       Q.      And you are currently an
11   employee of Allergan PLC; is that correct?
12       A.      That is not correct.
13       Q.      Who are you currently employed
14   by?
15       A.      I'm employed by Allergan Sales,
16   LLC.
17       Q.      What is Allergan Sales, LLC's,
18   relationship to Allergan PLC?
19       A.      It is an indirect subsidiary.
20       Q.      Can you please tell me your
21   educational and employment history from --
22   starting from college and going through to
23   present?
24       A.      Absolutely.
25               Undergraduate degree from
```

```
 1    Loyola College, which is now Loyola
 2    University, in Baltimore, Maryland; business
 3    administration, BA, concentration economics,
 4    finance.
 5              I also have a BS in accounting
 6    from St. Peters College.
 7              Graduate degree, MBA, in
 8    corporate finance from Fairleigh Dickinson,
 9    and I've done some postgraduate work at
10    Columbia University.
11              From an employment perspective,
12    since graduating college, if you want to go
13    that far back, first job was with Security
14    Pacific Finance Corp., which was consumer
15    lending.
16              I then worked for Chase
17    Manhattan Leasing as a credit analyst.  That
18    was then -- that operation was bought by AT&T
19    Credit Corporation financing telephone sets.
20              We were then sold to Nomura
21    Securities PLC, followed by a sale to
22    Newcourt Credit.
23              We were then bought by CIT.
24              CIT was sold to Tyco; we went
25    public again.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   had a chance to look through those and ask
 2   Special Master Cohen and, if necessary, Judge
 3   Polster for the right to do so because of
 4   these late-produced documents.
 5              Did you talk to anybody at
 6   Allergan or any Allergan-related entity in
 7   preparation for your testimony today?
 8        A.    I have spoken to some people
 9   within the company, yes.
10        Q.    Who have you spoken to?
11        A.    Members of our tax group.
12        Q.    Which members of your tax
13   group?
14        A.    Marty Shindler, Carina
15   Sinclair.
16        Q.    Why did you speak to members of
17   the tax group?
18        A.    Carina is the one who tracks
19   and maintains the corporate structure slides
20   that we've provided, and in regard to the
21   ANDAs and the transfers of IP, I spoke to
22   Marty Shindler as well.
23        Q.    Is Marty Shindler also in the
24   tax group?
25        A.    Yes, he is.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1         Q.    And what tax -- what entity's
 2   tax group do these people work for?
 3               What is the name of the
 4   corporation they work for?
 5         A.    They work for Allergan Sales,
 6   LLC.
 7         Q.    Does Allergan PLC maintain its
 8   own tax group separate and distinct from
 9   Allergan Sales, LLC?
10         A.    Does not.
11         Q.    And you mentioned you spoke to
12   outside counsel in preparation for today's
13   deposition, correct?
14         A.    That's correct.
15         Q.    About how many times did you
16   speak with outside -- let -- let me withdraw
17   that.
18               About how many hours total did
19   you speak with outside counsel in preparation
20   for the deposition?
21         A.    Probably somewhere between 15
22   and 20 hours.
23         Q.    Over what period of time did
24   those 15 to 20 hours occur?  For example, was
25   that during the last week?  Was it over the
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   last month?
 2        A.    It was over the last -- I would
 3   say over the last week.
 4        Q.    Did you speak with anybody
 5   aside from colleagues at Allergan entities
 6   and outside counsel in preparation for
 7   today's deposition?
 8        A.    I have not.
 9        Q.    Did you speak to anybody at
10   Teva Pharmaceuticals in preparation for
11   today's deposition?
12        A.    I have not.
13        Q.    You're aware that some of the
14   subject matter covered by today's deposition
15   concerns generic opioids that were sold by
16   Allergan PLC to Teva, correct?
17        A.    Could you rephrase that,
18   please?
19        Q.    One of the subjects we're going
20   to talk about today is generic opioids,
21   correct?
22        A.    That is correct.
23        Q.    And the generic opioids were
24   sold by Allergan PLC, correct?
25        A.    Allergan PLC was the party to
```

 1   and here "we" is the "financial information
 2   and transactions of Watson Pharmaceuticals,
 3   Inc., prior to January 2013, Actavis, Inc.,
 4   from January 2013 to October 2013, and
 5   Allergan PLC and Warner Chilcott Limited,
 6   subsequent to October 2013.
 7            You see that, correct,
 8   regarding "we"?
 9       A.   Actavis, comma, Inc., from
10   January 23, 2013, to October 1, 2013.
11       Q.   Okay.  And the rest of what I
12   said was correct?
13       A.   Yes.
14       Q.   Okay.  That "we" will receive
15   $33.75 billion in cash and 100.3 million Teva
16   ordinary shares or American depositary
17   shares, correct?
18       A.   Yes.
19       Q.   Is that what Allergan PLC
20   received for the sale of its generics
21   business to Teva?
22       A.   At the -- this was, again,
23   2015.  This had a certain value of the 100
24   million shares.  On the day it closed, the
25   100 million shares would have been valued

Highly Confidential - Subject to Further Confidentiality Review

1    something different than what is in this
2    agreement.
3         Q.    So you did -- Allergan PLC did
4    receive approximately $33.75 billion in cash?
5         A.    That is correct.
6         Q.    And then it received --
7         A.    Shares.
8         Q.    -- some -- some body of
9    approximately 100 million shares, give or
10   take, depending on the current value of the
11   shares?
12        A.    Exactly.
13        Q.    Where did that money get -- on
14   whose financial statements were the
15   $33.75 billion in cash recorded?
16        A.    Would have been recorded --
17   again, I don't have that direct knowledge.
18        Q.    You were the treasurer --
19   currently your job is as treasurer, correct?
20        A.    Yes.
21        Q.    And you're treasurer of --
22   what's the name of the company?  It's
23   Allergan...
24        A.    I'm treasurer of several legal
25   entities in the Allergan group of companies.

Highly Confidential - Subject to Further Confidentiality Review

```
 1         Q.     I'm sorry, who's your -- who
 2    are you employed by?
 3         A.     I'm employed by Allergan Sales,
 4    LLC.
 5         Q.     And as treasurer of Allergan
 6    Sales, LLC, one of the companies that you
 7    provide services to, that you are treasurer
 8    for, is Allergan PLC, correct?
 9         A.     That is correct.
10         Q.     Do you know whether the
11    $33.75 billion went on to Allergan PLC's
12    financial statements?
13         A.     It went on its consolidated
14    financial statements.
15         Q.     Do you know what happened to
16    that money --
17         A.     Yes.
18         Q.     -- how it derived through --
19    how it made its way through the organization,
20    if it did?
21         A.     Yes.
22         Q.     What happened to the
23    $33.75 billion?
24         A.     When we received the company,
25    some of it, approximately $6.2 billion, went
```

1    to -- would have been called Actavis Capital

2    S.a.r.l., okay, where we had debt

3    outstanding.  We paid off approximately

4    6.2 billion of term loans, so the proceeds

5    went there.

6             A portion of the proceeds also

7    went to, I believe it would have been, the

8    Holdco, which was the owner, who had its net

9    investment in the group that we sold to Teva.

10    Q.    What was the owner of the

11    hold -- what was the Holdco that sold the

12    generics entities?

13    A.    In regard to the August 2,

14    2016, org chart, page 2 of 6 -- and again,

15    this is MDL03674502.  If you go to page 2,

16    you see the top box that's in yellow, Actavis

17    Holdco US, that was sold to Teva.

18             It's direct parent was Allergan

19    Holdco US, comma, Inc.  So a portion, a

20    majority of the funds, went to that entity.

21    Q.    At that point in time did

22    Allergan Holdco US, comma, Inc., have any

23    employees?

24    A.    No, it did not.

25    Q.    Did Actavis Holdco US, comma,