PSJ10 Exh 20

## MANAGEMENT SERVICE AGREEMENT

This **AGREEMENT** ("Agreement") is effective as of the 1st of January 2016 by and among:

**ALLERGAN SALES, LLC,** a limited liability company organized in the State of Delaware, whose registered office address is: 2525 Dupont Drive, Irvine, CA 92612, USA

**ALLERGAN, INC.,** a corporation organized in the State of Delaware whose registered office address is: 2525 Dupont Drive, Irvine, CA 92612, USA

("Hereinafter, Allergan Sales, LLC and Allergan, Inc. are collectively referred to as the "Service Provider");

And

**ALLERGAN PLC.,** an Irish public limited company, whose registered address is Clonshaugh Business and Technology Park, Coolock, Dublin 5, Ireland ("Company");

(Hereinafter Service Provider and Company will be referred to individually as a "Party" and collectively as the "Parties").

## RECITALS

**WHEREAS:**

A. The Service Provider and Company are members of a multinational group of enterprises (the "Group");

B. Company has a continuing need for management advice, technical assistance and decision support in areas such as financial administration, tax, audit, treasury, legal, information technology, human resources, regulatory, quality and compliance affairs, sales and marketing, and other high level management functions, for its business activities;

C. The Service Provider has the requisite skills and has therefore been selected to provide and coordinate a variety of useful and beneficial services ("Services") to Company and the Service Provider is willing to perform such services for Company;

1

D.  The Parties wish to affirm their past relationship that has existed between them prior to the date of executing this Agreement and memorialize this past relationship and provide a framework for their future relationship, in each case, relating to the subject matter of this Agreement. Accordingly, the Parties have agreed that this Agreement shall be effective as and from January 1, 2016 (the "Effective Date");

E.  The Parties mutually agree that all responsibilities and obligations for such previously rendered Services have been performed to their mutual satisfaction and no outstanding liabilities or obligations arising from such previously rendered Services exist;

F.  Company recognizes that all costs incurred by the Service Provider in the provision of the Services shall be charged to Company plus an arms-length mark-up where appropriate; and

G.  Company and Service Provider wish to enter into this Agreement as of the Effective Date.

**NOW, THEREFORE** in consideration of the covenants contained herein, the above recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto intending to be legally bound, hereby agree as follows:

1. **DEFINITIONS**

For the purposes of this Agreement, the following terms hall have the following meanings:

1.1 **"Aggregate Costs"** shall have the meaning set forth in Article 3 below.

1.2 **"Confidential Information"** shall mean and include all data and information of a confidential nature, including know-how and trade secrets, relating to the business, the affairs, any development projects or other products or services of each Party. Confidential Information may be communicated orally, visually, in writing or in any other recorded or tangible forms. Data and information shall be considered Confidential Information: a) if a Party has marked them as such; b) if a Party orally or in writing has advised the receiving party of that confidential nature; or c) if due to the nature or character a reasonable person in a like position under like circumstances as the receiving Party would treat them as secret and confidential.

1.3 **"Individuals"** shall mean those individuals identified by Service Provider to Company who shall perform the Services provided by Service Provider, each of which shall be a director, employee or an officer of Service Provider.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                      ALLERGAN_MDL_04451502

1.4 **"Service Fee"** shall mean the fees payable by Company to the Service Provider to be calculated in accordance with Article 3.1; provided however, that Service Provider shall not receive a Service Fee for Services that directly benefit themselves.

1.5 **"Services"** shall have the meaning set forth in the Exhibit A.

2. **SERVICES**

2.1 Engagement: Company hereby engages the Service Provider to render the Services throughout the term of this Agreement. Company hereby asks the Service Provider to perform the Services on a continuing basis without any further specific request or whenever Company calls or places an order for them with Service Provider.

2.2 Services: During the term of this Agreement, subject to the terms and conditions stated herein, the Service Provider will perform the Services, which may be performed on a Group-wide basis. The Services may be amended from time to time by written agreement of the parties.

2.4 Additional Services: In addition to the Services, Company may also request the Service Provider to render additional special services, and Service Provider undertakes to comply with such requests to the extent it is able to. The amount that Company is billed for these special services shall be over and above the amount that is determined to be the Service Fee for Company as computed under Article 3 of this Agreement.

2.5 No Authorization: Nothing in this Agreement shall authorize Service Provider to enter into, or conclude any contract or agreement for, or on behalf of Company.

2.6 Reciprocal Company Services: From time to time after the Effective Date, the Parties agree that Company may provide Services to the Service Provider at Service Provider's request. Any such Services provided by Company shall be governed by the terms and conditions set forth in this Agreement, with the exception that any reference to "Company" shall be replaced with "Service Provider" and any references to "Service Provider" shall be replaced with "Company."

3. **FEES**

3.1 Fees Payable: In consideration of the Services to be rendered by the Service Provider under this Agreement, Company agrees and undertakes to pay the relevant service fee to the Service Provider which shall comprise the relevant costs of Service Provider and a mark-up on these costs, which shall be determined by the Parties under the best method based on arm's length

3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
ALLERGAN_MDL_04451503

principles. The Parties agree that the mark-up will be determined to fairly reflect the respective roles, responsibilities and risks of the Parties under the Agreement.

3.2 VAT: Invoices shall include value added taxes or similar taxes if applicable, which shall be payable by Company.

3.3 Mark-ups: The mark-ups required by this Article 3 may be changed from time to time by written agreement of the Parties.

4. PAYMENT

4.1 Invoicing: Service Provider shall invoice Company as mutually agreed by the Parties for the relevant Service Fee for that quarter. If additional relevant items of cost are identified after such invoice has been issued, but before the income tax returns of Company are filed for any fiscal year, the Service Provider shall use its reasonable efforts to provide supplemental invoices to insure that all relevant costs and mark-ups have been charged to the Party or Parties responsible therefor under this Agreement. Payments shall be based on actual figures.

4.2 Payment of Invoices: Company shall pay to Service Provider the amount invoiced within thirty (30) days of receipt of such invoice through the Parties' in a manner mutually agreed by the Parties.

4.3 Interest Charge: All sums payable under this Agreement shall be subject to interest equal to the Three Month US Dollar London Interbank Offered Rate ("LIBOR") plus one percent (1%), as of the first day of the month following the month in which the payment or reimbursement is due.

4.4 Reallocation after Governmental Adjustment: If any part of the Service Fee or mark-ups allocated to any Party (for any year) is adjusted by any governmental body, in the year such adjustment becomes final. Company shall pay an appropriate correlative adjustment, including interest in addition to the Service fee and mark-ups determined under this Article.

5. RECORDS AND DOCUMENTATION OF COST

Costing System and Maintenance of Books: For the purposes of this Agreement, in order to facilitate apportionment of costs, Service Provider shall establish a costing system that conforms to the requirements of US GAAP. In particular, the Service Provider shall keep true and accurate books and records in such detail as is necessary to identify the cost related to rendering the Services for a period in accordance with Service Provider's normal retention policy.

4

6. **ACCOUNTING**

   Accounting Method: Costs, revenue and any other financial measures in this Agreement shall be determined under US GAAP.

7. **CONFIDENTIAL INFORMATION**

   7.1 Confidential Information: Each Party receiving Confidential Information (the "Receiving Party") from another Party (the "Disclosing Party") hereby acknowledges and agrees that all of the Confidential Information is, and shall remain, the sole and exclusive property of the Disclosing Party and is disclosed to the Receiving Party solely to permit it to perform its obligations under this Agreement. The Receiving Party shall not utilize any of the Confidential Information for any other purpose whatsoever, and shall not disclose or reveal any of the Confidential Information to any third party without the prior written authorization of the Disclosing Party; provided however, that the Receiving Party may disclose the Confidential Information to those of the Receiving Party's employees and consultants that (a) require access to such Confidential Information to permit the Receiving Party to perform its obligations under this Agreement, and (b) have executed a non-disclosure agreement, in a form reasonably satisfactory to the Disclosing Party, which effectively prohibits the unauthorized use or disclosure of the Confidential Information. The Receiving Party shall implement all security procedures specified by the Disclosing Party and shall take all other actions requested by the Disclosing Party, including the initiation of legal action to enforce employee or consultant non-disclosure agreements, to prevent the unauthorized use or disclosure of the Confidential Information.

   7.2 Security: Each Party shall implement all security measures and shall take all action including, but not limited to, the initiation and prosecution of legal or administrative actions to prevent the unauthorized use, appropriation or disclosure of another Party's Confidential Information by any employees, suppliers or subcontractors.

   7.3 Exceptions to Confidentiality Obligations: The provisions of Article 7.1 shall not apply, or shall cease to apply, to data and information supplied by the Disclosing Party to the extent, but only to the extent, that such Confidential Information:

   a. passes into the public domain through no fault of the Receiving Party;

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER　　　　　　　　　　　　　　　　　　　ALLERGAN_MDL_04451505

b. was known to the Receiving Party prior to disclosure hereunder by the Disclosing Party;

c. is disclosed to the Receiving Party by a third party that is under no duty of nondisclosure to the Disclosing Party(s);

d. is required to be disclosed under any applicable law, regulation or governmental order; provided however, that the party proposing to disclose Confidential Information pursuant to this Article 7.3 (d) shall give prior written notice of such legal disclosure requirement to the Disclosing Party so that the Disclosing Party can take appropriate action to protect the confidentiality, and prevent the unauthorized use or appropriation of such of its Confidential Information.

## 8. WARRANTY

8.1 The Service Provider will render Services that meet high standards of professional workmanship and will only employ qualified personnel.

8.2 The liability of any Service Provider for a material breach of the terms of this Agreement shall be limited to cases where the other Party may prove gross negligence or wrongful intent on the part of that Service Provider or of any of its employees, provided however, that in no event shall the Service Provider be held liable for any consequential damages or for any loss of profits suffered by Company or by any, third party, and provided further that the amount of damages claimed in respect of all breaches of contract that may occur during one calendar year in regard to Company shall not exceed the Service Fee that Company owes to the respective Service Provider for the year during which the breach of contract has occurred.

8.3 Service Provider's liability for torts committed by Service Provider or its employees shall be limited to cases where Company is able to prove that Service Provider or one or more of its employees have acted with wrongful intent or gross negligence. Service Provider's liability for torts committed by third parties whom Service Provider has engaged to help render the Services shall be limited to that amount of damages that Service Provider can recover from that party.

## 9. RISKS

The Parties shall each bear their respective risks undertaken in this Agreement.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ALLERGAN_MDL_04451506

## 10. TERM AND TERMINATION

10.1 Term. This Agreement shall be in full force and effect until December 31, 2017 and shall be automatically renewed for successive 12-month periods unless otherwise terminated as provided herein. Notwithstanding the foregoing, the term of this Agreement shall expire upon the following events: (i) Company and Service Provider cease to be Affiliates with respect to each other; (ii) bankruptcy or insolvency of the other Party; (iii) the thirtieth (30th) day from written notice by one Party of the material breach of any provision of this Agreement by the other Party, unless its cure is sooner affected; or (iv) on the giving of ninety (90) days written notice by either Party.

10.2 Survival. Notwithstanding anything to the contrary that may be contained herein, all confidentiality provisions and obligations and other provisions which by their terms are to be performed or complied with subsequent to the expiration or termination of this Agreement, shall survive and continue in full force and effect.

10.3 Return of Materials and Documents. In the event of termination of this Agreement, each Party shall in a timely manner, return to the other Party all records, notes and other documents and materials that contain and embody any of the other Party's Confidential Information in its possession as of the effective date of termination.

10.4 Final Payment. Upon termination of this Agreement for any reason whatsoever, Service Provider shall provide final invoices pursuant to the provisions of Article 6 hereof within 45 days of the effective date of termination of this Agreement and all payments with respect to such final invoices shall payable upon the earlier of (i) 30 days after receipt of such invoice by Company; or (ii) 60 days of the effective date of termination of this Agreement.

10.5 Return of Materials and Documents. In the event of termination of this Agreement, each Party shall in a timely manner, return to the other Party all records, notes and other documents and materials that contain and embody any of the other Party's Confidential Information in its possession as of the effective date of termination.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ALLERGAN_MDL_04451507

## 11. COMPLIANCE WITH APPLICABLE LAWS

In the exercise of their respective right and the performance of their respective obligations under this Agreement, each Party shall comply with all applicable laws, regulations and governmental orders. Without limiting the generality of this Article 11, each Party shall obtain and shall maintain in full force and effect throughout the continuance of this Agreement, all licenses, permits, authorizations, approvals, government filings and registrations necessary or appropriate for the exercise of its rights and the performance of its obligations hereunder.

## 12. COMPLIANCE WITH ANTI-CORRUPTION LAWS

12.1 The Parties agree to comply with applicable anti-corruption laws such as the U.S. Foreign Corrupt Practices Act (FCPA) and the UK Bribery Act of 2010 and, as well as any laws implementing the U.N. Convention Against Corruption and the OECD Anti-bribery Convention (collectively, the "Anti-Corruption Laws"). Each Party undertakes that, in connection with its performance of its obligations under this Agreement, it, its directors, employees and officers have not and shall not directly or indirectly (a) offer, provide, authorize for or promise to another person, or (b) request, accept or agree to accept from another person any financial or other advantage or anything of value ("Benefit"), if such Benefit is for the purpose of influencing the receiving person improperly in his or her official capacity for the purpose of obtaining a business advantage, or where such Benefit would constitute a violation of any applicable Anti-Corruption Law.

12.2 In the event that a Party is accused of or becomes subject to investigation by a Governmental Authority for an alleged violation of applicable Anti-Corruption Laws in connection with this Agreement, or a Party notifies the other Party that it has a reasonable basis for believing that the other Party has not complied with applicable Anti-Corruption Law in connection with this Agreement (and discloses in reasonable detail the evidence underlying such belief), the notifying Party shall have the right to request in writing that the other Party provide access to (either directly or through legal counsel or an internationally recognized independent auditor) such written records or other information reasonably required to credibly refute such alleged non-compliance.

12.3 If, in connection with this Agreement, a Party breaches its obligations under Articles 12.1 or 12.2, above or admits to a violation or is determined by a governmental authority to have violated applicable Anti-Corruption Law, then the other Party shall be entitled to immediately terminate this Agreement upon written notice to that Party.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    ALLERGAN_MDL_04451508

## 13. GENERAL PROVISIONS

13.1 <u>Independent Contractors.</u> In the exercise of their respective rights and the performance of their respective obligations under this Agreement, the Parties are, and shall remain, independent contractors. Nothing in this Agreement shall be construed (i) to constitute the Parties as principal and agent, partners, joint ventures, or otherwise as participants in a joint undertaking or (ii) to authorize any Party to enter into any contract or other binding obligation on the part of the other Party, and unless separately authorized to do so, neither Party shall represent to any other person, firm, corporation, or other entity that it is authorized to enter into any such contract or other obligation and specifically on behalf of the other Party.

13.2 <u>Assignment</u>. Neither Party shall have the right or power to assign, delegate or otherwise transfer any or all of its rights or obligations arising under this Agreement without the prior written authorization of the other Party, and such assignment, delegation, or other transfer shall then be effective only upon written Agreement of the assignee, delegate or transferee to assume and be bound by the terms, conditions and limitations of this Agreement to the same extent it would have been bound had such assignee, delegate, or transferee been an original party to this Agreement; provided however, that the prior written authorization of one of the Parties hereto shall not be required for the other Party to assign any of its rights, or delegate or subcontract any of its obligations, under this Agreement to a related party of that party.

13.3 <u>Notices</u>. All notices, reports and other communications between the Parties shall be sent by registered air mail, postage prepaid and return receipt requested, facsimile with a confirmation copy sent by registered air mail, or electronic mail with confirmation of receipt, addressed to the Party at its address indicated on the signature page of this Agreement. All notices, reports and other communications given in accordance with this Article 12.3 shall be deemed received if sent by (i) registered air mail, 7 days after the date of mailing; and (ii) facsimile or electronic mail twenty-four (24) hours after the time and date of transmission.

13.4 <u>Waivers.</u> The failure by either Party to assert any of its rights hereunder, including, but not limited to, the right to terminate this Agreement due to a breach or default by another Party hereto, shall not be deemed to constitute a waiver by that Party of its right thereafter to enforce each and every provision of this Agreement in accordance with its terms.

9

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ALLERGAN_MDL_04451509

13.5 Force Majeure. Except for the obligation to make payment when due, each Party shall be excused from liability for the failure or delay in performance of any obligation under Agreement by reason of any event beyond such Party's reasonable control including but not limited to Acts of God, fire, flood, explosion, earthquake, or other natural forces, war, civil unrest, terrorism, accident, destruction or other casualty, any act inaction or delay of any government or government agency, any lack or failure of transportation facilities, any lack or failure of supply of raw materials, any strike or labor disturbance, or any other event whether similar or dissimilar to those enumerated above. Such excuse from liability shall be effective only to the extent and duration of the event(s) causing the failure or delay in performance and provided that the Party has not caused such event(s) to occur. All delivery dates in this Agreement that have been affected by force majeure shall be tolled for the duration of such force majeure.

13.6 Governing Law. This Agreement is construed under and ruled by the laws the State of New York, without regard to its conflict of law principles.

13.7 Legal Fees. If any Party to this Agreement resorts to any legal action or arbitration in connection with this Agreement, the prevailing Party shall be entitled to recover reasonable fees of attorneys and other professionals in addition to all court costs and arbitrator's fees which that Party may incur as a result.

13.8 Integration/Modification. This Agreement is both a final expression of the Parties' agreement, and a complete and exclusive statement with respect to all of its terms. The Exhibits referred to in this Agreement are a part of this Agreement. This Agreement supersedes all prior and contemporaneous agreements and communications, whether oral, written or otherwise, concerning any and all matters contained herein. No trade customs, courses of dealing, or courses of performance by the Parties shall be relevant to modify, supplement or explain any term(s) used in this Agreement. This Agreement may only be modified or supplemented in a writing expressly stated for such purpose and signed by the Parties to this Agreement.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER　　　ALLERGAN_MDL_04451510

13.9 <u>Construction; Interpretation</u>. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. Any article, section, recital, exhibit, schedule and party references are to this Agreement, unless otherwise stated. No Party, or its counsel shall be deemed the drafter of this Agreement for purposes of construing the provisions of this Agreement, and all provisions of this Agreement shall be construed in accordance with their fair meaning, and not strictly for or against any Party. Where words or phrases are used herein in the singular, such usage is intended to include the plural forms where appropriate to the context, and vice versa. The words "including," "includes," and "such as," are used in their non-limiting sense and have the same meaning as "including without limitation" and "including, but not limited to." "Herein'" means anywhere in this Agreement. "Hereunder," "hereof," and "hereto," mean under or pursuant to any provision of this Agreement.

13.10 <u>Counterparts; Facsimile</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which, taken together, shall constitute one instrument. For purposes hereof, a facsimile copy of this Agreement, including the signature pages hereto, shall be deemed to be an original.

*[Remainder of Page Intentionally Left Blank*

*Signature page follows]*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ALLERGAN_MDL_04451511

**IN WITNESS WHEREOF**, each of the Parties has caused this Agreement to be executed on its behalf by its duly authorized officer.

"SERVICE PROVIDER"      "SERVICE PROVIDER"

Allergan Sales, LLC     Allergan, Inc.

By: *[signature]*     By: *[signature]*

Name: Stephen M. Kaufhold     Name: James C. D'recca

Title: Vice President     Title: Vice President

"COMPANY"

Allergan plc

By: _____

Name: _____

Title: _____

*[Signature page – Management Services Agreement]*

12

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ALLERGAN_MDL_04451512

IN WITNESS WHEREOF, each of the Parties has caused this Agreement to be executed on its behalf by its duly authorized officer.

"SERVICE PROVIDER"         "SERVICE PROVIDER"
Allergan Sales, LLC         Allergan, Inc.

By: _____        By: _____

Name: _____        Name: _____

Title: _____       Title: _____

"COMPANY"

Allergan plc

By: _____

Name: A. Robert Bailey

Title: Chief Legal Officer and Secretary

[Signature page – Management Services Agreement]

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ALLERGAN_MDL_04451513

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## EXHIBIT A

Pursuant to this Agreement, the services provided by the Service Provider to Company may include the following:

### Management Services

Management services may include, but are not limited to, executive management services that provide strategic direction in terms of business operations, financial goals and long-term growth.

### General and Administrative Services

General and administrative services may include, but are not limited to, information technology, human resources, legal services, accounting and finance, internal audit, tax, corporate communications, treasury services (which may include, but are not limited to, treasury management, banking, accounting, systems and computer assistance and general treasury assistance), investor relations, supply chain, business development, alliance management, corporate legal affairs, financial administration, certain quality and compliance affairs, global strategic sales and marketing, global strategic operations and general management assistance.

ALLERGAN_MDL_04451514