PSJ10 Exh 69

Highly Confidential - Subject to Further Confidentiality Review

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF OHIO
 2                          EASTERN DIVISION
 3

     --------------------------    )
 4   IN RE: NATIONAL               ) MDL No. 2804
     PRESCRIPTION OPIATE           )
 5   LITIGATION                    ) Case No.
     --------------------------    ) 1:17-MD-2804
 6                                 )
     THIS DOCUMENT RELATES TO      ) Hon. Dan A. Polster
 7   ALL CASES                     )
     --------------------------    )
 8
 9                       HIGHLY CONFIDENTIAL
10           SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
11
12
13                    VIDEOTAPED DEPOSITION OF
14
15                     MICHAEL STEPHEN DORSEY
16
17                         January 8, 2019
18
19                         Chicago, Illinois
20
21
22
23                    GOLKOW LITIGATION SERVICES
                 877.370.3377 ph | 917.591.5672 fax
24                         deps@golkow.com
```

```
 1
 2
 3
 4
 5              The videotaped deposition of
 6    MICHAEL STEPHEN DORSEY, called by the Plaintiffs
 7    for examination, taken pursuant to the Federal
 8    Rules of Civil Procedure of the United States
 9    District Courts pertaining to the taking of
10    depositions, taken before CORINNE T. MARUT, C.S.R.
11    No. 84-1968, Registered Professional Reporter and a
12    Certified Shorthand Reporter of the State of
13    Illinois, at the offices of Morgan, Lewis & Bockius
14    LLP, Suite 500, 77 West Wacker Drive, Chicago,
15    Illinois, on January 8, 2019, commencing at 9:02
16    a.m.
17
18
19
20
21
22
23
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES:
 2      ON BEHALF OF THE PLAINTIFFS:
 3          ROBBINS GELLER RUDMAN & DOWD LLP
             One Montgomery Street, Suite 1800
 4           San Francisco, California  94104
             415-288-4545
 5           BY:  MATTHEW S. MELAMED, ESQ.
                  mmelamed@rgrdlaw.com
 6                KELLI BLACK, ESQ.
                  kblack@rgrdlaw.com
 7
 8           WAGSTAFF & CARTMELL LLP
             4740 Grand Avenue, Suite 300
 9           Kansas City, Missouri  64112
             816-701-1100
10           BY:  JONATHAN P. KIEFFER, ESQ.
                  jpkieffer@wcllp.com
11                JACK T. HYDE, ESQ.
                  jhyde@wcllp.com
12
13      ON BEHALF OF TEVA PHARMACEUTICALS USA, INC.:
14          MORGAN, LEWIS & BOCKIUS LLP
             77 West Wacker Drive
15           Chicago, Illinois  60601
             312-324-1000
16           BY:  TINOS DIAMANTATOS, ESQ.
                  tinos.diamantatos@morganlewis.com
17
18      ON BEHALF OF DEFENDANT ALLERGAN FINANCE, LLC:
19          KIRKLAND & ELLIS LLP
             300 North LaSalle Street
20           Chicago, Illinois  60654
             312-862-3429
21           BY:  MARTIN L. ROTH, ESQ.
                  martin.roth@kirkland.com
22                PRATIK K. GHOSH, ESQ.
                  pratik.ghosh@kirkland.com
23
24
```

```
 1   APPEARANCES (Continued):
 2     ON BEHALF OF ENDO HEALTH SOLUTIONS INC. and
       ENDO PHARMACEUTICALS, INC.,
 3     PAR PHARMACEUTICAL, INC., and PAR PHARMACEUTICAL
       COMPANIES, INC. (f/k/a Par Pharmaceutical
 4     Holdings, Inc.):
 5         ARNOLD & PORTER KAYE SCHOLER LLP
           370 Seventeenth Street, Suite 4400
 6         Denver, Colorado  80202-1370
           303-863-2373
 7         BY:  ELISEO R. PUIG, ESQ.
                eliseo.puig@arnoldporter.com
 8
 9     ON BEHALF OF McKESSON CORPORATION:
10         TABET DIVITO & ROTHSTEIN LLC
           209 South LaSalle Street, 7th Floor
11         Chicago, Illinois  60604
           312-762-9461
12         BY:  KYLE A. COOPER, ESQ.
                kcooper@tdrlawfirm.com
13
14     ON BEHALF OF CARDINAL HEALTH, INC.:
15         ARMSTRONG TEASDALE LLP
           7700 Forsyth Boulevard, Suite 1800
16         St. Louis, Missouri  63105
           314-621-5070
17         BY:  JULIE FIX MEYER, ESQ.
                jfixmeyer@ArmstrongTeasdale.com:
18
19     ON BEHALF OF AMERISOURCEBERGEN CORPORATION:
20         JACKSON KELLY PLLC
           50 South Main Street, Suite 201
21         Akron, Ohio  44308
           330-252-9060
22         BY:  ANDREW N. SCHOCK, ESQ.
                anschock@jacksonkelly.com
23              (via telephonic communication)
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES (Continued):
 2      ON BEHALF OF WALMART:
 3          JONES DAY
             77 West Wacker Drive
 4           Chicago, Illinois  60601-1692
             312-782-3939
 5        BY:  MARK W. DeMONTE, ESQ.
                 mdemonte@jonesday.com
 6

 7      ON BEHALF OF ROCHESTER DRUG CO-OP:
 8          ALLEGAERT BERGER & VOGEL LLP
             111 Broadway, 20th Floor
 9           New York, New York  10006
             212-616-7060
10        BY:  LYNNE M. FISCHMAN UNIMAN, ESQ.
                 luniman@abv.com
11                  (via livestream)
                 LUCY N. ONYEFORO, ESQ.
12               lonyeforo@abv.com
                    (via livestream)
13

14      ON BEHALF OF THE DEPONENT:
15          GODFREY KAHN S.C.
             833 East Michigan Street, Suite 1800
16           Milwaukee, Wisconsin  53202-5615
             414-273-3500
17        BY:  BRIAN C. SPAHN, ESQ.
                 bspahn@gklaw.com
18

19

20

21

22

23

24
```

 1   ALSO PRESENT:

 2        CHRIS GRIMM, Trial Technician

 3

 4

 5

 6   VIDEOTAPED BY:  BEN STANSON

 7

 8

 9   REPORTED BY:  CORINNE T. MARUT, C.S.R. No. 84-1968

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1          MR. ROTH:  Object to form.

2     BY THE WITNESS:

3          A.    I don't know if it was a requirement.

4     It was a meeting that we -- that was -- the group

5     of, you know, obviously chain drugstores and

6     manufacturers.  So, it was a meeting that you, I

7     guess you went to.

8     BY MR. MELAMED:

9          Q.    What happened at those meetings?  In a

10    general sense.  I'm not asking you to remember

11    specific presentations.  But generally, you know,

12    what kind of events occurred during the annual

13    meetings?

14         A.    It's during those -- it's meetings

15    really, it's interactions with -- so, it's a forum

16    which allows really for all members, so that would

17    be the retailers as well as wholesalers that would

18    attend, to effectively and efficiently meet and

19    have business discussions all in one place versus

20    flying all over the nation.

21         Q.    So, is it fair to say that the primary

22    purpose of attending -- of Actavis' attendance at

23    the NACDS annual meetings was to have personal

24    meetings with wholesalers and/or drugstores?

```
 1          MR. DIAMANTATOS:  Objection; form, foundation.
 2   BY MR. MELAMED:
 3       Q.   I'm sorry.  Not drugstores.  Pharmacies.
 4          MR. DIAMANTATOS:  Objection; form, foundation.
 5   BY THE WITNESS:
 6       A.   Sorry.  Can you just say it one more
 7   time.
 8   BY MR. MELAMED:
 9       Q.   The primary purpose of Actavis -- let
10   me -- I'll restate the question.
11       A.   Okay.
12       Q.   Is your understanding of the primary
13   purpose of Actavis' attendance at the annual
14   meetings to engage in the meetings you were
15   discussing with its -- with your customers?
16          MR. ROTH:  Object to form.
17   BY THE WITNESS:
18       A.   The -- well, the form of it is together,
19   that you have your customers there so you meet with
20   them as well as you have internal meetings
21   because -- we are spread out throughout the nation,
22   so it affords that opportunity for everyone to be
23   together as well.
24   BY MR. MELAMED:
```

```
 1          Q.   And about how many customers would you
 2    meet with at an annual meeting?
 3          A.   Personally or as a company?
 4          Q.   Let's start with personally.
 5          A.   I guess it's depending on my -- who the
 6    I guess customer base was.  Could be eight and
 7    above, could be more.
 8          Q.   And as a company, approximately, again,
 9    I'm not asking you to identify each of the entities
10    you met with during any particular meeting, but
11    approximately how many customers would Actavis as a
12    company meet with at one of these annual meetings?
13          A.   Six hours, 12 hours.  Maybe there was,
14    let's say, 18 hours of open -- I don't know.  I'm
15    estimating if it was 18 or 20 in 30-minute time
16    slots.  So, could be up to 40.
17          Q.   And would people -- would there be
18    meetings with multiple customers occurring at the
19    same time period with different Actavis employees?
20          A.   Separately.
21          Q.   Separate meetings.  So, for instance,
22    just to talk about time slots.  If there was a 9:00
23    a.m. time slot and it was a half hour, is it
24    possible that Actavis would meet with more than one
```