UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-op-45090 (N.D. Ohio)<br><br>*The County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P., et al*.<br>Case No. 1:17-op-45004 (N.D. Ohio) | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

**PHARMACY DEFENDANTS' RESPONSE TO
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT ON
<u>ABATEMENT OF AN ABSOLUTE PUBLIC NUISANCE</u>**

TABLE OF CONTENTS

Argument in Response ...................................................................................... 1

I.    Plaintiffs Are Not Entitled to Summary Judgment on the Existence
of a Nuisance. .................................................................................................. 1

II.   Plaintiffs Are Not Entitled to Summary Judgment on Joint and
Several Liability............................................................................................... 4

Conclusion ........................................................................................................ 6

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Angerman v. Burick*,
   No. 02CA0028, 2003 WL 1524505 (Ohio Ct. App. 2003)......................................................2

*Brown v. Scioto Cty. Bd. of Commrs.*,
   622 N.E.2d 1153 (1993)......................................................................................................3

*Cincinnati v. Beretta U.S.A. Corp.*,
   768 N.E.2d 1136 (Ohio 2002)..........................................................................................2, 4

*City of Columbus v. Rohr*,
   1907 WL 572 (Ohio Cir. Ct. Oct. 10, 1907)........................................................................6

*In re Lead Paint Litig.*,
   924 A.2d 484 (N.J. 2007)....................................................................................................3

*Metzger v. Pennsylvania, O. & D. R. Co.*,
   66 N.E.2d 203 (Ohio 1946).................................................................................................2

*State ex rel. Montgomery v. Portage Landfill & Dev. Co.*,
   No. 98-P-0033, 1999 WL 454623 (Ohio Ct. App. June 30, 1999)...................................2, 6

*Ogle v. Kelly*,
   629 N.E.2d 495 (Ohio Ct. App. 1993)................................................................................3

*Pang v. Minch*,
   559 N.E.2d 1313 (Ohio 1990).............................................................................................5

*People v. ConAgra Grocery Products Co.*,
   227 Cal. Rptr. 3d 499 (Ct. App. 2017) ..............................................................1, 3, 4, 5, 6

*State v. Lead Indus., Ass'n, Inc.*,
   951 A.2d 428 (R.I. 2008)....................................................................................................3

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 821b(1)......................................................................................2

**ARGUMENT IN RESPONSE**

Pharmacy Defendants[1] adopt Defendants' Memorandum in Opposition to Track One Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Public Nuisance Claim. Pharmacy Defendants respectfully file this response to highlight additional deficiencies in Plaintiffs' motion, which fails on multiple, independent grounds as to the Pharmacy Defendants. Most notably, because Pharmacy Defendants have ceased distributing opioids, Plaintiffs fail to show an ongoing nuisance, much less joint and several liability for abatement.

Moreover, the relief Plaintiffs seek is unprecedented: their principal authority—*People v. ConAgra Grocery Products Co.*, 227 Cal. Rptr. 3d 499 (Ct. App. 2017), essentially the only case permitting a remotely similar remedy—applied law materially different from Ohio's and involved claims materially different from Plaintiffs'. Indeed, the cases cited by Plaintiffs confirm that they cannot receive the rulings that they seek.

**I.  Plaintiffs Are Not Entitled to Summary Judgment on the Existence of a Nuisance.**

Plaintiffs seek summary judgment regarding a public nuisance claim based on "the opioid epidemic," which they allege "is an ongoing public nuisance in Cuyahoga and Summit Counties." ECF 1788, Pls' Mem. Support ("Mot.") at 4.

As an initial matter, for the reasons set forth in Manufacturer Defendants' Memorandum in Support of Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims, Plaintiffs' allegations are simply too vague to support a claim. Plaintiffs have "never expressly define[d] what they mean by the term 'opioid epidemic,'" instead "putting a 'nuisance' label on an unspecified set of conditions." Mfg. Defs.' Mem. Supp. MSJ Pls.' Public Nuisance Cls. at 2.

---

[1] "Pharmacy Defendants" are CVS Rx Services, Inc. and CVS Indiana, L.L.C. ("CVS Distributors"), Rite Aid of Maryland, Inc., d/b/a Mid-Atlantic Customer Support Center ("Rite Aid"), Walgreen Co. and Walgreen Eastern Co. ("Walgreens"), HBC Service Company, an unincorporated operating division of Giant Eagle, Inc. ("Giant Eagle"), Discount Drug Mart ("DDM"), and Walmart Inc. ("Walmart").

The cases cited by Plaintiffs further undermine their definition of the nuisance as "the opioid epidemic." *Angerman v. Burick*, for example, quoted by Plaintiffs at 2, makes clear that the "nuisance" is the defendant's act, not the plaintiff's injury: "An absolute nuisance . . . consists of either a culpable and intentional **act** resulting in harm, or an **act** involving culpable and unlawful conduct causing unintentional harm, or a nonculpable **act** [in limited circumstances]." No. 02CA0028, 2003 WL 1524505, at *2 (Ohio Ct. App. 2003) (quoting *Metzger v. Pennsylvania, O. & D. R. Co.*, 66 N.E.2d 203 (Ohio 1946)) (emphases added)).[2]

Plaintiffs' authority requires them to define any alleged nuisance in terms of Defendants' conduct. But the "opioid epidemic"—whatever Plaintiffs may mean by the phrase—is not Defendants' conduct. It is alleged to be an **effect** of Defendants' conduct, and the allegedly wrongful conduct varies materially among Defendants. For example, because Plaintiffs allege that distributors and manufacturers engaged in different wrongful conduct, there can be no single "nuisance" for which both groups of defendants could be liable.

Nor have Plaintiffs shown entitlement to abatement, which merely permits a plaintiff to "reduce or eliminate **the nuisance** prospectively." Mot. at 23. Because "the nuisance" is the conduct of Defendants that is alleged to interfere with the public health, any "nuisance" would be fully eliminated prospectively by enjoining Defendants from engaging in the conduct.

Although some nuisances (in limited circumstances) that involve inaction must be abated by affirmative conduct—for example, the nuisance of "maintenance of a pond breeding malarial mosquitoes" continues indefinitely until abated by removal of the pond or mosquitoes, *see* Restatement, § 821B, cmt b (listing as example of public nuisance)—where, as here, the alleged

---

[2] *See also Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (quoting Restatement (Second) of Torts § 821b(1) for the proposition that a public nuisance includes "acts" and "conduct"); *State ex rel. Montgomery v. Portage Landfill & Dev. Co.*, No. 98-P-0033, 1999 WL 454623, at *1 (Ohio Ct. App. June 30, 1999) (describing the "public nuisance" as "the manner in which the defendants operated the landfill").

2

nuisance is affirmative conduct (*e.g.*, distributing), abatement is fully accomplished by a prohibitory injunction.

Pharmacy Defendants have stopped distributing opioids; many stopped years ago. Because Pharmacy Defendants have already discontinued any conduct that might possibly be alleged to constitute a nuisance, Plaintiffs have failed to show any entitlement to any abatement at all.

Moreover, abatement could be available only where there is control of the nuisance by the defendant.[3] *See In re Lead Paint Litig.*, 924 A.2d 484, 499 (N.J. 2007) ("[A] public entity which proceeds against the one in control of the nuisance may only seek to abate, at the expense of the one in control of the nuisance."); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 446 (R.I. 2008) (same). Based, in part, on the requirement of control, both New Jersey and Rhode Island dismissed public nuisance claims against manufacturers and distributors of lead paint. Because the lead paint was in the homes of consumers at the time of suit (and outside the control of the defendants), a suit for public nuisance was unavailable. *See id.* at 455 ("[T]he state's complaint also fails to allege any facts that would support a conclusion that defendants were in control of the lead pigment at the time it harmed Rhode Island's children.").

Plaintiffs' principal authority—*People v. ConAgra Grocery Products Co.*, 227 Cal. Rptr. 3d 499 (Ct. App. 2017)—permitted lead paint nuisance claims to proceed only because California (unlike Ohio) has abandoned the traditional "control" requirement. *See id.* at 549 (under California

---

[3] For example, an entity that owns (or controls) a pond where malarial mosquitoes are breeding is engaging in the conduct of "maintaining the pond." This conduct could be abated by ordering the entity to no longer maintain the pond breeding mosquitoes (*i.e.*, to remove the pond or remove the mosquitoes). But if the pond has been sold to a third party, the entity originally responsible for creating the pond is no longer maintaining the pond (*i.e.*, no longer controls the nuisance) and thus cannot be liable for abatement. *See Brown v. Scioto Cty. Bd. of Commrs.*, 622 N.E.2d 1153, 1163 (1993) ("Since appellees no longer operate and maintain the sewage treatment plant, they cannot be enjoined regarding the plant's operation and maintenance."); *Ogle v. Kelly*, 629 N.E.2d 495, 498-500 (Ohio Ct. App. 1993) (a landlord out of possession and control cannot be liable for a nuisance).

3

law, nuisance "does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance").

But like New Jersey and Rhode Island (and unlike California), Ohio retains the requirement of control for liability of public nuisance.  In *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), the defendants argued that they could not be held liable "because they did not have control over the alleged nuisance at the time of injury." *Id.* at 1143.  Rather than follow California and reject control as an element, the Ohio Supreme Court instead held that the complaint adequately pleaded control: "Appellant's complaint alleged that appellees created a nuisance through their ongoing conduct of marketing, distributing, and selling firearms in a manner that facilitated their flow into the illegal market.  Thus, appellant alleged that appellees control the creation and supply of this illegal, secondary market for firearms[.]" *Id.*  Regardless of the correctness of other aspects of the decision, *Beretta* confirms that, unlike California, Ohio retains control as an element of public nuisance.

Significantly, the *Beretta* plaintiffs could plausibly allege ongoing control of the illegal secondary market for firearms only because of "ongoing conduct"—*i.e.*, ongoing distribution—by defendants.  In this case, Plaintiffs make no similar allegations against Pharmacy Defendants, whose conduct has already ceased and who thus cannot possibly exert any present control over any illegal secondary market for opioids in Ohio.  Any request for summary judgment regarding joint and several liability for abatement should be denied on this basis.

**II.  Plaintiffs Are Not Entitled to Summary Judgment on Joint and Several Liability.**

Indeed, Plaintiffs provide only cursory briefing regarding joint and several liability.  Mot. at 22-23.  As an initial matter, for the reasons set forth in Defendants' Memorandum in Opposition to Track One Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Public Nuisance Claim, their claims are subject to Ohio's apportionment statute.  Even aside from that statute,

4

apportionment is well-engrained into Ohio jurisprudence.  *Pang v. Minch*, 559 N.E.2d 1313, 1323 (Ohio 1990).  This Court should not depart from that principle and adopt a novel expansion of liability under Ohio law.

Pharmacy Defendants illustrate the sound reasons behind this policy.  Consider, for example, Rite Aid, which distributed only small portion of opioids: **0.048%** of morphine milligram equivalents ("MMEs") distributed into Cuyahoga and Summit Counties during the limitations period (April 25, 2014 to April 25, 2018) and **0.71%** of MMEs distributed from 2006 to 2014.  Jena Rep. ¶49; ECF No. 1888-2 (Jena Decl. ISO Rite Aid Motion for Summary Judgment).  Rite Aid distributed only one relevant opioid: hydrocodone combination products, which was classified by DEA as a Schedule III drug.  And in contrast to the increased opioid distribution to which Plaintiffs' experts attribute the opioid epidemic, Cutler Rep. ¶50; Gruber Rep. § III, Rite Aid's distribution of opioids remained steady or decreased until it ceased distribution in September 2014, nearly five years ago.  Jena Rep. ¶¶50-52.

Many Pharmacy Defendants likewise distributed only a small percentage of opioids and ceased distribution years ago.  It defies reason and basic fairness to hold them jointly and severally liable for abating the entire "opioid epidemic" as it exists today when they ceased any relevant conduct years ago, have no control over "the opioid epidemic," and distributed only a miniscule percentage of opioids in any event.  Ohio law does not permit such a result.

Moreover, Plaintiffs authority confirms that joint and several liability applies only if an injury is indivisible.  *See People v. ConAgra Grocery Products*, 227 Cal. Rptr. 3d at 557 (affirming "imposition of joint and several liability" because "defendants failed to show that the public nuisance was divisible"); *see also* Mot. at 23 (citing *People v. ConAgra*).  *People v. ConAgra* is

5

an extreme outlier—no other case (certainly no Ohio case[4]) has upheld similar joint and several liability for costs of abatement.

Even under the reasoning of *People v. ConAgra*, however, Plaintiffs' claims based on distribution are divisible. In that case, one of the defendants argued that the nuisance was divisible and that its liability should be apportioned based on the share of total lead paint used in California for which it was responsible. *Id.* at 557. The California Court of Appeals rejected this argument because the claims asserted against the defendant were based on "promotion of lead paint for interior residential use" rather than distribution of lead paint. *Id.* And no evidence at trial showed "that an entity's share of the total amount of lead used in California bore any relationship to that entity's liability" for promotion of lead paint for interior use. *Id.*

Here, in contrast, Plaintiffs' claims against Pharmacy Defendants are based on distribution. And an entity's liability for wrongful distribution would be directly related to the entity's share of wrongful distribution. Indeed, Plaintiffs' experts have purported to quantify the wrongful distribution by each Pharmacy Defendant.[5] McCann Rep. ¶¶ 135-152. The evidence in this record thus demonstrates that, at least with respect to entities sued for distribution, Plaintiffs' alleged injuries are divisible and joint and several liability is unavailable.

## Conclusion

The Court should deny Plaintiffs' partial motion for summary judgment.

---

[4] The Ohio cases cited by Plaintiffs (at 22-23) do not support them. *State ex rel. Montgomery v. Portage Landfill & Dev. Co.*, 98-P-0033, 1999 WL 454623 (Ohio Ct. App. June 30, 1999), primarily holds there is no jury trial right in an abatement action, involved joint action by the defendants (a company and its president), and includes no discussion of joint and several liability. *City of Columbus v. Rohr*, 1907 WL 572 (Ohio Cir. Ct. Oct. 10, 1907), holds that damages could be apportioned and merely notes, in *dicta*, the possibility of joint and several liability for abatement, *id.* at *2, but the decision neither discusses the form of abatement (injunctive relief or costs such as those sought by Plaintiffs) nor actually holds that joint and several liability for abatement is available.

[5] As detailed in Pharmacy Defendants' motion for summary judgment on causation, to prove the proximate causation of any injuries (including for any nuisance claim), Plaintiffs must actually prove they suffered injuries arising from diversion of opioids from suspicious shipments that Pharmacy Defendants would not have shipped if they had complied with their duties under the Controlled Substances Act.

| | |
|---|---|
| Dated: July 31, 2019 | Respectfully submitted, |

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
*Counsel for Walgreen Co. and Walgreen Eastern Co.*

/s/ Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
tmtabacchi@jonesday.com
tfumerton@jonesday.com
*Counsel for Walmart Inc.*

/s/ Kelly A. Moore
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
elisa.mcenroe@morganlewis.com
*Counsel for Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center*

s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Phone: (202) 778-1800
Fax: (202) 822-8106
edelinsky@zuckerman.com
smiller@zuckerman.com
*Counsel for CVS Rx Services, Inc. and CVS Indiana, L.L.C.*

/s/ Timothy D. Johnson
Timothy D. Johnson
Gregory E. O'Brien
CAVITCH FAMILO & DURKIN, CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, OH 44114
Phone: (216) 621-7860
Fax: (216) 621-3415
tjohnson@cavitch.com
gobrien@cavitch.com
*Counsel for Discount Drug Mart, Inc.*

/s/ Robert M. Barnes
Robert M. Barnes
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Center
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
rbarnes@marcus-shapira.com
kobrin@marchus-shapira.com
*Counsel for HBC Service Company*