# PSJ3
# Exhibit 57A



# REMOXY™

## NATIONAL ADVISORY BOARD

July 7-8, 2006 The Carlyle Hotel, New York City

July 8, 2006

REDACTED

Dear Dr. Portenoy:

On behalf of King Pharmaceuticals, Inc., we would like to thank you for your participation in the Remoxy National Advisory Board held on July 7-8, 2006, at the Carlyle Hotel in New York City. The meeting was a great success, and we sincerely appreciate your contribution. We look forward to working with you again in the near future.

In consideration of your expert advice and feedback, enclosed is your honorarium in the amount of $3,500.00

If you have any out-of-pocket expenses, please submit your reimbursement form at your earliest convenience to:

Natalie Gallagher
Program Manager
545 West 45th Street, 8th Floor
New York, NY
Fax: 212-957-7230

Should you have any questions, please feel free to contact me or anyone on our team.

With warm regards,

Bridgette Popp
PMG Communications
*A McMahon Group Company*
212-957-5300 x296
bpopp@mcmahonpmg.com

King Pharmaceuticals

CONFIDENTIAL



301 Edgewater Place ▪ Suite 300 ▪ Wakefield, MA 01880
Tel 781.246.6646 ▪ Fax 781.246.2822
www.fusion-meded.com

March 30, 2006

Russel K. Portenoy

REDACTED

Dear Dr Portenoy:

Enclosed is your honorarium check for $5000 for the valuable time you contributed to the Breakthrough Pain Digital Animations.

We look forward to working with you in the future.

Best regards,

Tracy Lasquade
Senior Project Manager
Fusion Medical Education LLC
978-740-3230 x116

CONFIDENTIAL



May 31, 2006

Russell Portenoy, MD

REDACTED

Dear Dr. Portenoy,

On behalf of Endo Pharmaceuticals and Shaw Science Partners, thank you for your contribution to *Opana ER Science Communication Platform*. In appreciation of your contribution, enclosed please find an honorarium in the amount of $1,000. We look forward to working with you again.

Sincerely,

Fielding Shaw
Project Manager

Enclosure

CONFIDENTIAL

RP_000223

# CONFIDENTIALITY & CONSULTING AGREEMENT

This Consulting Agreement (the "Agreement") is entered into this June 28, 2006, by and between King Pharmaceuticals, Inc., with an office located at 501 Fifth Street, Bristol, Tennessee 37620 and Pain Therapeutics, Inc., with an office located at 416 Browning Way, South San Francisco, California 94080 (hereinafter collectively referred to as "Companies") and Russell K. Portenoy, MD, an individual with an address at 15 Glenn Place, Hastings on Hudson, NY 10706 (hereinafter referred to as "Consultant").

WHEREAS, Consultant is an individual who has extensive knowledge, experience and insight related to clinical issues relating to pain management; and

WHEREAS, Companies desire to obtain, and Consultant desires to provide professional consulting services of the type described below.

NOW, THEREFORE, in consideration of the foregoing and the covenants contained herein, the parties hereto agree as follows:

## I.     DUTIES OF CONSULTANT

A.     <u>Services</u>.  In consideration of the compensation provided to Consultant hereunder, Consultant agrees to perform the services listed in <u>Exhibit A</u> (the "Services"), which is attached hereto and made a part hereof, as reasonably requested by Companies.

B.     <u>Representations and Warranties</u>.  Consultant represents, warrants and covenants that:

1.     Consultant has extensive knowledge, experience and insight related to pain management;

2.     Consultant is not subject to exclusion, suspension, or debarment from any federal or state program;

3.     The rights and services covered by this Agreement are not in violation of any other agreement with any other party or of any other lawful restriction of any kind;

4.     Consultant shall observe and comply with all applicable laws and regulations pertaining to the Services to be rendered pursuant to this Agreement; and

5.     Consultant has and shall have the unrestricted right to disclose any information he/she submits to Companies, free of all claims of third parties, and such disclosures do not and shall not breach or conflict with any confidentiality provisions of any agreement to which Consultant is a party.

1

**CONFIDENTIAL**

RP_000224

C.    <u>Materials Produced Under Agreement</u>.  Consultant agrees that all materials produced for, or at the request of Companies under this Agreement, shall be considered works made for hire and the property of Companies.  All materials provided to Consultant and/or produced under this Agreement shall be and remain the property of Companies whether or not registered.

II.    COMPENSATION

A.    <u>Compensation</u>.  For Services provided by Consultant in accordance with this Agreement, Companies shall pay Consultant, and Consultant shall accept as payment in full, the compensation set forth in <u>Exhibit B</u> attached hereto.  The parties agree and acknowledge that the compensation paid to Consultant hereunder constitutes fair market value and that the compensation:

    1.    has not been determined in a manner that takes into account the volume or value of any orders, purchases or referrals made, or expected to be made, or business generated for Companies or its affiliates' products by Consultant, by others under Consultant's direction or control, or by any institution with which Consultant is affiliated; and

    2.    is not being given in exchange for any explicit or implicit agreement by Consultant, Consultant's business partners, others under Consultant's direction or control, or any institution with which Consultant is affiliated, to provide a favorable formulary or procurement decision with respect to Companies or its affiliates products.

B.    <u>Expenses</u>.  In connection with the Services provided by the Consultant pursuant to this Agreement, Companies shall reimburse the Consultant for all reasonable transportation, lodging and customary out-of-pocket expenses actually incurred by the Consultant in connection therewith, provided that such costs have been pre-approved by Companies in writing.  Companies will not reimburse Consultant for expenses considered by Companies, in its sole discretion, to be lavish, excessive or otherwise not normal or customary.

C.    <u>Invoice</u>.  Upon completion of the Services, Consultant shall submit an invoice to Companies along with the necessary documentation to support the pre-approved expenses actually incurred by Consultant.

III.    TERM AND TERMINATION

A.    <u>Term</u>.  This Agreement shall be effective for the advisory board meeting on July 8 7 and 8 2006, unless sooner terminated as provided below.

B.    <u>Termination</u>.  Either party may terminate this Agreement at any time, for any reason.

2

CONFIDENTIAL

RP_000225

C. <u>Effect of Termination</u>. Upon termination or expiration of this Agreement, the respective rights and duties of the parties shall terminate; except that (1) Consultant shall be paid in full for all Services provided in accordance with this Agreement prior to this Agreement's termination or expiration; and (2) Consultant shall return to Companies, promptly upon termination or expiration of this Agreement, any and all materials and other documents (including Confidential Information), and any equipment and materials, provided to Consultant.

IV. CONFIDENTIAL INFORMATION

A. <u>Confidential Information</u>. Consultant acknowledges that, in the performance of the Services hereunder, Consultant may obtain access to Confidential Information of Companies. As used herein, Confidential Information means all information that is disclosed to Consultant by or on behalf of Companies or learned by Consultant pursuant to the Services hereunder relating in any way to Companies' business or potential business operations or to Companies' research and development activities (including but not limited to new pharmaceutical products). Any reports prepared by Consultant for or on behalf of Companies shall also be deemed Confidential Information.

B. <u>Obligation of Confidentiality</u>. Consultant agrees, during and after the term of this Agreement, unless specifically permitted in writing by Companies, to:

    1. Retain in confidence and not disclose to any third party any such Confidential Information; and

    2. Use any such Confidential Information only for the purpose of carrying out the Services hereunder.

C. <u>Return of Confidential Information</u>. Upon completion of the Services hereunder or other termination of this Agreement, Consultant will return to Companies all documents (including all copies thereof) and all tapes or other embodiments of information or data disclosed to, or generated by, Consultant in connection with this Agreement.

V. RELATIONSHIP OF THE PARTIES

A. <u>Independent Contractor</u>. Consultant is performing Services hereunder as an independent contractor and not as an employee or agent of Companies. Consultant will not participate in employee benefit plans or receive any other compensation or benefits of any kind whatsoever. Payments hereunder shall be without deduction for taxes of any kind. Any taxes payable as a result of the compensation hereunder shall be entirely the responsibility of Consultant. Neither party has the authority to bind the other without the express written authorization of the other party.

B. <u>No Obligation.</u> Nothing in this Agreement shall be deemed a requirement or an expectation that Consultant use or advocate the use of any products of Companies or its affiliates for any given medical treatment.

**CONFIDENTIAL**

RP_000226

VI.    INDEMNIFICATION

Companies shall indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties") from and against any third party claims, actions (including claims and actions related to infringement of intellectual property rights), losses, expenses and damages, including but not limited to court costs and attorneys' fees (collectively, "Damages"), resulting from or arising out of performance of the Services hereunder; provided, however, that Companies shall not be liable for any Damages resulting from or arising out of Consultant's gross negligence or willful misconduct or Consultant's failure to perform Services in accordance with Article I, Section D, above.

VII.    NOTICE

All notices provided under this Agreement shall be in writing and shall be deemed to be properly given and to be effective on the date of delivery if delivered in person, by overnight mail through a recognized delivery service providing proof of delivery, or by registered or certified mail, return receipt requested, to the address set forth above.  Notices to Companies shall be addressed to the General Counsels at:

King Pharmaceuticals, Inc.          Pain Therapeutics, Inc.
400 Crossing Boulevard              416 Browning Way
Bridgewater, NJ 08807               South San Francisco, CA 94080
908-429-6000                        650-824-8200

VIII.    MISCELLANEOUS

A.    This Agreement, including all Exhibits and other attachments hereto, constitutes the entire agreement between the parties relating to the subject matter hereof and supersedes all prior agreements, understandings, representations and statements regarding the subject matter contained herein.  This Agreement shall not be amended except by written agreement between the parties.  No oral waiver, amendment or modification shall be effective under any circumstances.  Any waiver by either party of any of this Agreement's terms and conditions or of a breach or failure to perform shall not constitute a general waiver of such term or condition or a waiver of any subsequent breach or failure to perform.

B.    This Agreement has been entered into in the State of New York, and shall be construed and interpreted in all respects in accordance with the laws thereof.

C.    This Agreement may not be assigned by Consultant without the prior written consent of Companies.

4

CONFIDENTIAL

D.      Companies agree that they will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

E.      Companies are responsible for maintaining, at Companies' own expense and throughout the Agreement Term, programs of insurance or self-insurance as it deems appropriate to protect its liabilities and contractual obligations.

F.      Sections IV and VI shall survive termination or expiration of this Agreement.


IN WITNESS WHEREOF, Companies and Consultant have duly caused this Agreement to be duly executed in their names and on their behalf as of the date first written above.

KING PHARMACEUTICALS, INC,

By: _____
Name: _John LaLofa_
Title: _Sr. VP NeuroScience Marketing_
Date: _7/7/06_


PAIN THERAPEUTICS, INC.

By: _____
Name: _Peter S. Roddy_
Title: _Vice President & CFO_
Date: _7/7/06_

CONSULTANT

By: _____
Name: _____
Title: _____
Date: _____
Tel #: _____
Tax ID #: _____

5

CONFIDENTIAL

EXHIBIT A

SERVICES

Consultant agrees to provide information on personal experience as a professional practitioner regarding diagnosis, management and treatment of pain including, but not limited to what determines appropriate choice of treatment for a variety of patients and conditions seen in a typical  practice as applicable, and within the scope of his/her licensure.

6

CONFIDENTIAL

RP_000229

EXHIBIT B

COMPENSATION

In consideration of Service provided by Consultant at a one-day meeting of consultants organized by Companies to discuss issues concerning pain management and the position of Remoxy™ in the competitive marketplace, including for time spent traveling to and from the meeting, Companies will pay Consultant a fee of Three Thousand Five Hundred Dollars ($3,500.00).

In addition to fees prescribed above, Companies shall reimburse Consultant's expenses in accordance with the requirements of Article II.

CONFIDENTIAL

RP_000230



September 18, 2006

Russell Portenoy, MD
Beth Israel Medical Center
First Avenue at 16th Street
NYC, NY 10003

Dear Dr. Portenoy:

We are pleased to confirm your participation in the teleconference call for content development of an 8-page CME *Clinical Courier®* publication on the topic of *Managing Pain Safely with Opioid Analgesics: Who, When, and How* (working title). The teleconference call has been scheduled for Monday, September 25, 2006 at 12:00 PM EDT. This program is presented by the National Institute on Drug Abuse and the *Clinical Courier®* publication will be jointly sponsored by IMED Communications and Penn State College of Medicine. This program is supported by an educational grant from Endo Pharmaceuticals.

For your time and expertise, we are pleased to offer an honorarium of $750 for your participation on the teleconference and $1,500 for review of the *Clinical Courier®* publication.

Additionally, the *Clinical Courier®* publication will be reproduced as a *Special Report* for submission to *Pain Medicine News* for distribution to pain specialists including PCPs, neurologists, rheumatologists, emergency medicine, and physical medicine and rehabilitation.

**Teleconference Information:** The teleconference is scheduled for Monday, September 25, 2006 at 12:00 PM EDT. Please call 866-201-0082 and enter code 415767.

**Next Steps:**
Please complete the enclosed forms and return the following via fax to IMED at 908-832-9083 as soon as possible:

➤ **Title Sheet and Curriculum Vitae:** To ensure that your academic and clinical affiliations are accurate in the publications to be produced, please complete the enclosed title sheet (please return via fax). In addition, please provide your CV for our files. You may e-mail your CV directly to AnnMarie Duncan at aduncan@ascendmedia.com.

➤ **W9:** to ensure payment of your honorarium, please complete and return the W-9 form via fax.

➤ **Disclosure Form:** Please complete the attached Penn State College of Medicine Disclosure form and return via fax.

CONFIDENTIAL

RP_000231

Russell Portenoy, MD
September 18, 2006
Page 2

Thank you for your consideration and participation in this important educational program.

Kind regards,

Daniel Duch, PhD
Project Manager
(908) 832-4152

Enclosures:     Penn State College of Medicine Disclosure
                Title Sheet
                W-9

cc:     D. Thomas (NIDA)
        T. Allgier-Baker (Penn State)
        D. Calvani (IMED)
        A. Duncan (IMED)
        S. Kuhn (IMED)

CONFIDENTIAL

RP_000232

Managing Pain Safely with Opioid Analgesics: Who, When, and How

September 25, 2006

**TITLE SHEET**

IMED
*Communications LLC*

(Please print or type your information AS IT SHOULD APPEAR ON PRINTED MATERIALS)

**Name:** PORTENOY RUSSELL K.
Last Name          First Name          Middle Initial

**Degree(s):** M.D.

## Professional Affiliations:

**Academic Title/Affiliation:** (University, etc.)
Professor, Departments of Neurology and Anesthesiology
Albert Einstein College of Medicine
Bronx, NY

**Clinical Title/Affiliation:** (Hospital, etc.)
Chairman and Gerald J. and Dorothy R. Friedman Chair in Pain and
Palliative Care, Dept. of Pain Medicine and Palliative Care,
Beth Israel Medical Center, NY, NY

## Preferred Name & Address for Routine Correspondence:

(Include title & affiliation if appropriate)
Russell K. Portenoy, MD
Dept. of Pain Medicine and Palliative Care
Beth Israel Medical Center
First Avenue at 16th St
New York, NY 10003

## Preferred Name & Mailing Address for Honorarium:

(Include title & affiliation if appropriate)
Same as above

## Honorarium will be paid to (please check one)

☐ Partnership   ☐ Corporation   ☒ Individual

**SS # or Tax ID:**

**Tel. Number:** Office: 212-844-1505   Home:   Cell:

**Fax Number:** Office: 212-844-1503   Home:   Pager:

**E-mail:** rportenoy@chpnet.org

**Assistant:** Moy Gloria
Last Name          First Name

**Asst. Tel:** Same   E-mail: gmoy@chpnet.org

**Preferred Method of Contact:** ☒ E-mail   ☐ Phone   ☐ Fax

**PLEASE FAX BACK TO AnnMarie Duncan 908-832-9083 as soon as possible**

CONFIDENTIAL

RP_000233



## DISCLOSURE OF RELATIONSHIPS WITH COMMERCIAL COMPANIES

Penn State College of Medicine must insure balance, independence, objectivity, and scientific rigor in all its educational activities. All speakers and academic coordinators are expected to disclose to the audience **all financial relationships** with pharmaceutical companies, biomedical device manufacturers, and other healthcare-related for-profit entities. In addition, course faculty must disclose to the audience any discussion of investigational and/or off-label uses of drugs or devices.

(Financial interest or other relationship may include grants or research support, employee, consultant, stockholder, member of speakers bureau, owner of a company or product, designer of a product, etc.)

**Title of CE Activity:** Managing Pain Safely with Opioid Analgesics: Who, When and How
**Date:** September 25, 2006
**Speaker Name:**
**Title of Presentation:** N/A – Faculty for CME *Clinical Courier*® publication and *Special Report* to *Pain Medicine News*

1. Within the past twelve months, I have received support from or have had a relationship with a pharmaceutical company, biomedical device manufacturer, or other healthcare-related for-profit entity.
     ___✓___ YES     _____ NO

     If yes, please check all that apply:
     <u>Nature of Relationship</u>:          <u>Company</u>:
     (  ) Speakers Bureau
     (  ) Research Grant
     (  ) Stockholder                          *see attached*
     (  ) Employment Affiliation
     (  ) Other _____

2. Will you discuss any off-label uses?                    _____ YES   ✓ NO
     If yes, please identify the product and the unlabeled use.
     _____

3. Will you discuss any investigational uses?              _____ YES   _____ NO
     If yes, please identify the product and the investigational use.
     _____

4. Have you been asked to promote or market any products?  _____ YES   ✓ NO
     If yes, what products? _____

I certify that this information is true and correct. I understand that I am responsible for ensuring that any discussion of investigational and/or off-label uses of a product is disclosed to the audience.

Signature: _____     Date: 9/22/06

**NOTE: Disclosure information will be provided to the audience.**

CONFIDENTIAL

**Russell K. Portenoy, MD**
**Department of Pain Medicine and Palliative Care (DPMPC)**

**Financial Disclosure Listing, August 4, 2006**

| | |
|---|---|
| Abbott | Compensated Consultant |
| Alza Corporation | Compensated Consultant |
| Archimedes Pharma Ltd. | Compensated Consultant |
| Bayer | Compensated Consultant |
| BioDelivery Sciences | Compensated Consultant |
| Biovail | Compensated Consultant |
| Cephalon | Grant to DPMPC; Compensated Consultant |
| CIMA Pharmaceuticals | Research Study Grant |
| Cytogel | Compensated Consultant |
| Elan Pharmaceuticals | Grant to DPMPC |
| Endo Pharmaceuticals | Compensated Consultant; Grant to DPMPC; Research Study Contract |
| Eurand | Compensated Consultant |
| Forest Laboratories | Compensated Consultant |
| Glaxo SmithKline | Research Study Grant; Compensated Consultant |
| GPC Biotech | Compensated Consultant |
| GW Pharmaceuticals | Grant to DPMPC |
| IPGDX | Grant of DPMC |
| Janssen/Ortho-McNeil | Compensated Consultant |
| Janssen Pharmaceutica | Grant to DPMPC |
| King Pharmaceuticals | Compensated Consultant |
| Ligand Pharmaceuticals | Compensated Consultant; Grant to DPMPC |
| Merck | Compensated Consultant |
| Methaphore | Research Study Grant |
| Mylan Technologies | Compensated Consultant |
| Nektar Therapeutics | Compensated Consultant |
| Neuromed | Compensated Consultant |
| Organon | Grant to DPMPC |
| Ortho Biotech | Research Study Grant |
| Ortho McNeil | Compensated Consultant |
| Painceptor | Compensated Consultant |
| Pfizer | Research Study Contract; Grant to DPMPC; Compensated Consultant |
| Pharmos | Compensated Consultant |
| Progenics | Research Study Contract |
| Purdue Pharma | Research Study Contract |
| Sarentis | Compensated Consultant |
| UCB Pharma | Research Study Consultant |
| Wex Pharmaceuticals | Compensated Consultant |
| Xenon Pharmaceuticals | Compensated Consultant |
| Zars Pharmaceuticals | Research Study Contract |

CONFIDENTIAL



ALPHARMA®
Branded Products Division

One New England Avenue
Piscataway, NJ  08854
United States
Tel:  1-877-452-3426

November 27, 2006

Russell Portenoy, MD
Chairman
Department of Pain Medicine and Palliative Care
Beth Israel Hospital
1st Avenue at 16th Street
New York, NY 10003

Dear Dr. Portenoy:

This will letter will confirm our arrangement for consulting services to be provided by you ("Consultant") to Alpharma Branded Products Division Inc. (the "Company") in connection with an Advisory Board on Legal/Ethical Issues to be held on November 30-December 1, 2006, in Washington, District of Columbia, (the "Program") during which you will be asked to provide your perspectives on prominent issues concerning prescribing and using opioids for the management of chronic pain; implications of marketing abuse-deterrent opioid formulations; and potential legal/regulatory/medical concerns and challenges in encouraging abuse-deterrent opioid options in the management of chronic pain.  You will also be available to provide feedback to the Company on various issues relating to KADIAN® (collectively the "Consulting Services").  In the course of this consulting arrangement the Company agrees to pay you a consulting fee of $3,000.00 for the Consulting Services, plus reasonable travel expenses incurred in connection with your participation in the Program.

All consulting fees will be paid and travel expenses reimbursed within thirty (30) days after delivery of your invoice, together with appropriate receipts, to Genesis Healthcare, 1160 Route 22 East, Suite 301, Bridgewater, NJ 08807.  Genesis Healthcare will be responsible for issuing payment directly to you on behalf of the Company.  This Agreement shall terminate upon the completion of the Consulting Services and payment of any outstanding amounts due to you hereunder.  Your engagement as a Consultant to the Company hereunder shall be limited to your work in connection with and participation in the Program, as arranged through Genesis Healthcare.

Responsibilities of Consultant.  Consultant shall use his best efforts to (i) provide the Consulting Services in a professional manner to the best of his abilities in accordance with the terms hereof; (ii) keep the Company advised of the status of the Consulting Services; (iii) permit any representative duly authorized in writing by the Company to review and observe from time to time the provision of the Consulting Services; and (iv) keep accurate books and records documenting the provision of Consulting Services and provide the Company with reports, descriptions, outlines, procedures and the like, as are appropriate to the nature of the Consulting Services. The parties agree that the Consultant will not, except  as specifically authorized by the Company, have any authority to bind or act on behalf of the Company and the Consultant is expected to render the Consulting Services as negotiated from time to time by the parties upon their mutual agreement, all upon the terms and conditions hereinafter set forth.

1

CONFIDENTIAL

RP_000236

Compliance.  Consultant acknowledges that the Company operates in a regulated industry and as such must adhere to certain regulations with regard to retaining consultants and agents.  In that regard, Consultant covenants to reasonably comply with all applicable federal and state laws and regulations pertinent to the Consulting Services.

Ownership.  If, during the course of performing the Consulting Services, Consultant discloses to the Company any ideas, inventions or other similar innovation or information which may be patentable or copyrightable, Consultant agrees that such information will be the property of the Company and that the Consultant will at the Company's request and cost do, or cause to be done, whatever is reasonably necessary to secure the rights thereto by patent, copyright or otherwise to the Company.

Confidentiality.  Consultant agrees that all business, technical and financial information (including, without limitation, the identity of any information relating to products, equipment, strategy, customers or employees) which Consultant develops, learns or obtains in connection with preparing for the Program and in performing the Consulting Services or that are received by or for Company in confidence, constitute "Confidential and Proprietary Information." Consultant will hold in confidence and not disclose or, except in performing the Consulting Services, use any of the Confidential and Proprietary Information. However, Consultant shall not be obligated under this paragraph with respect to information Consultant can document is or becomes readily publicly available without restriction through no fault of Consultant or was known to Consultant at time of disclosure or independently developed by Consultant. Upon termination and as otherwise requested by Company, Consultant will promptly return to Company all items and copies containing or embodying Confidential and Proprietary Information, except that Consultant may keep its personal copies of its compensation records and this Agreement. The terms and conditions of this Paragraph shall survive any termination of this Agreement for a period of five (5) years.

Non-Disparagement.    The Consultant agrees that during the Term of this Agreement and all times thereafter, the Consultant shall not disparage the reputation of the Company or its product, the Company's affiliates, or any of their respective officers, directors, employees, or representatives.

Relationship of the Parties.  Notwithstanding any provision hereof, for all purposes of this Agreement each party shall be and act as an independent contractor and not as partner, joint venturer, or agent of the other and shall not bind nor attempt to bind the other to any contract. Consultant is an independent contractor and is solely responsible for all taxes, withholdings, and other statutory or contractual obligations of any sort, including, but not limited to, Workers' Compensation Insurance and Consultant agrees to defend, indemnify and hold Company harmless from any and all claims, damages, liability, attorneys' fees and expenses on account of an alleged failure by Consultant to satisfy any such obligations.

Assignment.  This Agreement and the services contemplated hereunder are personal to Consultant and Consultant shall not have the right or ability to assign, transfer, or subcontract any rights or obligations under this Agreement without the written consent of Company. Any attempt to do so shall be void.

Severability.  Each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Entire Agreement.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreements between them.  This Agreement may be amended only in writing executed by the parties hereto affected by such amendment.

Governing Law. This Agreement shall be governed by the laws of the State of New Jersey, without giving effect to the conflicts of law principles thereof.

2

CONFIDENTIAL

RP_000237

Acknowledgement.  Consultant acknowledges that the Company has not imposed any obligation on Consultant in connection with this Agreement, or otherwise, to purchase, prescribe or likewise support the Company's product.

The following provisions run to the benefit, and are enforceable by Russell Portenoy, M.D. ("Consultant") and Beth Israel Medical Center ("Beth Israel"):

a.       COMPANY agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

b. COMPANY agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) (collectively "Liabilities") asserted against any of the Indemnified Parties relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement unless such Liabilities are caused by the negligence or willful misconduct of the Indemnified Parties.  This provision shall survive the termination of this Agreement.

c. COMPANY shall provide and maintain at its own expense during this Agreement the following insurance coverages with such insurers as shall be acceptable to Beth Israel in minimum limits of $1 million per occurrence and $2 million in the aggregate: comprehensive general liability, including products liability and contractual liability . COMPANY shall inform Beth Israel of any changes in or cancellation of such insurance.

d. Dr. Portenoy agrees to maintain, for the length of this agreement, professional errors and omissions (malpractice) insurance.

If the foregoing accurately reflects your understanding of our arrangement, please execute and return one fully executed copy of this letter Agreement to the undersigned.

Very truly yours,

*J. W. Stauffer DO.*

Name: Joseph Stauffer, DO
Title: Vice President, Clinical Research and Medical Affairs

ACCEPTED AND AGREED:

Print Name: *R Portenoy MD*

SS#: __            REDACTED

Date: __  *1/28/06*

**CONFIDENTIAL**

3

**DIVERSION means the shifting of legally obtainable drugs into illegal channels or the acquisition of a controlled substance by an illegal method.**

3.  What is your perception of the potential of __DIVERSION__ for the following drugs? (CHECK ONLY ONE)

| D-SCORE | N/A<br>I am not familiar with this drug | 0<br>Definitely not be diverted | 1<br>Unlikely to be diverted | 2<br>Possible to be diverted | 3<br>Likely to be diverted | 4<br>Definitely be diverted |
|---|---|---|---|---|---|---|
| 1.  Tylenol® (acetaminophen) | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ |
| 2.  Sudafed® (pseudoephedrine) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 3.  MS Contin® (morphine sulfate controlled-release) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 4.  Dilaudid® (hydromorphone HCl) tablets | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ |
| 5.  KADIAN® (extended-release morphine sulfate) capsules | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ |
| 6.  Cocaine        *N/A* | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 7.  Duragesic® (fentanyl transdermal system) | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 8.  Methadone HCl tablets (generic) | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 9.  Percocet® (oxycodone/acetaminophen) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 10.  Vicodin® (hydrocodone bitartrate/acetaminophen) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 11.  Ritalin® (methylphenidate) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 12.  OxyContin® (oxycodone HCl controlled-release) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 13.  Motrin® (ibuprofen) tablets | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ |
| 14.  Marijuana        *N/A* | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 15.  Valium® (diazepam) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 16.  Wellbutrin® (bupriopion) tablets | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ |
| 17.  Oxycodone IR HCl tablets (generic) | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 18.  Ambien® (zolpidem tartrate) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |

Please fax back to Chris Lewis at (908) 541-0530 at your earliest convenience.

3

CONFIDENTIAL

RP_000239

**ABUSE** means a pattern of substance use leading to clinically significant impairment and continued use despite harm to self or others.

**2. What is your perception of the potential of <u>ABUSE</u> of the following drugs? (CHECK ONLY ONE)**

| A-SCORE | N/A | 0 | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| | I am not familiar with this drug | Definitely not be abused | Unlikely to be abused | Possible to be abused | Likely to be abused | Definitely be abused |
| 1. Tylenol® (acetaminophen) | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ |
| 2. Sudafed® (pseudoephedrine) tablets | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ |
| 3. MS Contin® (morphine sulfate controlled-release) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 4. Dilaudid® (hydromorphone HCl) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 5. KADIAN® (extended-release morphine sulfate) capsules | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 6. Cocaine | ☑ *N/A* | ☐ | ☐ | ☐ | ☐ | ☐ |
| 7. Duragesic® (fentanyl transdermal system) | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 8. Methadone HCl tablets (generic) | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 9. Percocet® (oxycodone/acetaminophen) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 10. Vicodin® (hydrocodone bitartrate/acetaminophen) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 11. Ritalin® (methylphenidate) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 12. OxyContin® (oxycodone HCl controlled-release) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 13. Motrin® (ibuprofen) tablets | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ |
| 14. Marijuana | ☑ *N/A* | ☐ | ☐ | ☐ | ☐ | ☐ |
| 15. Valium® (diazepam) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 16. Wellbutrin® (bupriopion) tablets | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ |
| 17. Oxycodone IR HCl tablets (generic) | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 18. Ambien® (zolpidem tartrate) tablets | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |



Please fax back to Chris Lewis at (908) 541-0530 at your earliest convenience.

2

CONFIDENTIAL

RP_000240

## Alpharma Branded Products Division Inc.
## Advisory Board Meeting Survey

Name: _R. Latenoj MD_

**MISUSE** means the use of a substance for a purpose not consistent with legal or medical guidelines, as in the non-medical use of prescription medications

I. What is your perception of the potential for **MISUSE** of the following drugs? (CHECK ONLY ONE)

| M-SCORE | N/A | 0 | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|
| | I am not familiar with this drug | Definitely not be misused | Unlikely to be misused | Possible to be misused | Likely to be misused | Definitely be misused |
| 1. Tylenol® (acetaminophen) | | ☑ | | | | |
| 2. Sudafed® (pseudoephedrine) tablets | | | | ☑ | | |
| 3. MS Contin® (morphine sulfate controlled-release) tablets | | | | ☑ | | |
| 4. Dilaudid® (hydromorphone HCl) tablets | | | | ☑ | | |
| 5. KADIAN® (extended-release morphine sulfate) capsules | | | | ☑ | | |
| 6. Cocaine   N/A | | | | | | |
| 7. Duragesic® (fentanyl transdermal system) | | | | ☑ | | |
| 8. Methadone HCl tablets (generic) | | | | ☑ | | |
| 9. Percocet® (oxycodone/acetaminophen) tablets | | | | ☑ | | |
| 10. Vicodin® (hydrocodone bitartrate/acetaminophen) tablets | | | | ☑ | | |
| 11. Ritalin® (methylphenidate) tablets | | | | ☑ | | |
| 12. OxyContin® (oxycodone HCl controlled-release) tablets | | | | ☑ | | |
| 13. Motrin® (ibuprofen) tablets | | ☑ | | | | |
| 14. Marijuana   N/A | | | | | | |
| 15. Valium® (diazepam) tablets | | | | ☑ | | |
| 16. Wellbutrin® (bupriopion) tablets | ▨ | | | | | |
| 17. Oxycodone IR HCl tablets (generic) | | | | ☑ | | |
| 18. Ambien® (zolpidem tartrate) tablets | | | | ☑ | | |

Please fax back to Chris Lewis at (908) 541-0530 at your earliest convenience.     1

# CONFIDENTIAL

RP_000241



**ALPHARMA**®
Branded Products Division

One New England Avenue
Piscataway, NJ 08854
United States
Tel: 1-877-452-3426

November 27, 2006

Russell Portenoy, MD
Chairman
Department of Pain Medicine and Palliative Care
Beth Israel Hospital
1st Avenue at 16th Street
New York, NY 10003

Dear Dr. Portenoy:

This will letter will confirm our arrangement for consulting services to be provided by you ("Consultant")
to Alpharma Branded Products Division Inc. (the "Company") in connection with an Advisory Board on
Legal/Ethical Issues to be held on November 30-December 1, 2006, in Washington, District of Columbia,
(the "Program") during which you will be asked to provide your perspectives on prominent issues
concerning prescribing and using opioids for the management of chronic pain; implications of marketing
abuse-deterrent opioid formulations; and potential legal/regulatory/medical concerns and challenges in
encouraging abuse-deterrent opioid options in the management of chronic pain. You will also be available
to provide feedback to the Company on various issues relating to KADIAN® (collectively the "Consulting
Services"). In the course of this consulting arrangement the Company agrees to pay you a consulting fee of
$3,000.00 for the Consulting Services, plus reasonable travel expenses incurred in connection with your
participation in the Program.

All consulting fees will be paid and travel expenses reimbursed within thirty (30) days after delivery of your
invoice, together with appropriate receipts, to Genesis Healthcare, 1160 Route 22 East, Suite 301,
Bridgewater, NJ 08807. Genesis Healthcare will be responsible for issuing payment directly to you on
behalf of the Company. This Agreement shall terminate upon the completion of the Consulting
Services and payment of any outstanding amounts due to you hereunder. Your engagement as a
Consultant to the Company hereunder shall be limited to your work in connection with and participation in
the Program, as arranged through Genesis Healthcare.

Responsibilities of Consultant. Consultant shall use his best efforts to (i) provide the Consulting Services in
a professional manner to the best of his abilities in accordance with the terms hereof; (ii) keep the Company
advised of the status of the Consulting Services; (iii) permit any representative duly authorized in writing by
the Company to review and observe from time to time the provision of the Consulting Services; and (iv)
keep accurate books and records documenting the provision of Consulting Services and provide the
Company with reports, descriptions, outlines, procedures and the like, as are appropriate to the nature of the
Consulting Services. The parties agree that the Consultant will not, except as specifically authorized by the
Company, have any authority to bind or act on behalf of the Company and the Consultant is expected to
render the Consulting Services as negotiated from time to time by the parties upon their mutual agreement,
all upon the terms and conditions hereinafter set forth.

1

CONFIDENTIAL

Compliance.  Consultant acknowledges that the Company operates in a regulated industry and as such must adhere to certain regulations with regard to retaining consultants and agents.  In that regard, Consultant covenants to reasonably comply with all applicable federal and state laws and regulations pertinent to the Consulting Services.

Ownership.  If, during the course of performing the Consulting Services, Consultant discloses to the Company any ideas, inventions or other similar innovation or information which may be patentable or copyrightable, Consultant agrees that such information will be the property of the Company and that the Consultant will at the Company's request and cost do, or cause to be done, whatever is reasonably necessary to secure the rights thereto by patent, copyright or otherwise to the Company.

Confidentiality.  Consultant agrees that all business, technical and financial information (including, without limitation, the identity of any information relating to products, equipment, strategy, customers or employees) which Consultant develops, learns or obtains in connection with preparing for the Program and in performing the Consulting Services or that are received by or for Company in confidence, constitute "Confidential and Proprietary Information." Consultant will hold in confidence and not disclose or, except in performing the Consulting Services, use any of the Confidential and Proprietary Information. However, Consultant shall not be obligated under this paragraph with respect to information Consultant can document is or becomes readily publicly available without restriction through no fault of Consultant or was known to Consultant at time of disclosure or independently developed by Consultant. Upon termination and as otherwise requested by Company, Consultant will promptly return to Company all items and copies containing or embodying Confidential and Proprietary Information, except that Consultant may keep its personal copies of its compensation records and this Agreement. The terms and conditions of this Paragraph shall survive any termination of this Agreement for a period of five (5) years.

Non-Disparagement.    The Consultant agrees that during the Term of this Agreement and all times thereafter, the Consultant shall not disparage the reputation of the Company or its product, the Company's affiliates, or any of their respective officers, directors, employees, or representatives.

Relationship of the Parties.  Notwithstanding any provision hereof, for all purposes of this Agreement each party shall be and act as an independent contractor and not as partner, joint venturer, or agent of the other and shall not bind nor attempt to bind the other to any contract. Consultant is an independent contractor and is solely responsible for all taxes, withholdings, and other statutory or contractual obligations of any sort, including, but not limited to, Workers' Compensation Insurance and Consultant agrees to defend, indemnify and hold Company harmless from any and all claims, damages, liability, attorneys' fees and expenses on account of an alleged failure by Consultant to satisfy any such obligations.

Assignment.  This Agreement and the services contemplated hereunder are personal to Consultant and Consultant shall not have the right or ability to assign, transfer, or subcontract any rights or obligations under this Agreement without the written consent of Company. Any attempt to do so shall be void.

Severability.  Each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Entire Agreement.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreements between them.  This Agreement may be amended only in writing executed by the parties hereto affected by such amendment.

Governing Law. This Agreement shall be governed by the laws of the State of New Jersey, without giving effect to the conflicts of law principles thereof.

2

CONFIDENTIAL

Acknowledgement.  Consultant acknowledges that the Company has not imposed any obligation on Consultant in connection with this Agreement, or otherwise, to purchase, prescribe or likewise support the Company's product.

The following provisions run to the benefit, and are enforceable by Russell Portenoy, M.D. ("Consultant") and Beth Israel Medical Center ("Beth Israel"):

a.      COMPANY agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

b.  COMPANY agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) (collectively "Liabilities") asserted against any of the Indemnified Parties relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement unless such Liabilities are caused by the negligence or willful misconduct of the Indemnified Parties.  This provision shall survive the termination of this Agreement.

c.  COMPANY shall provide and maintain at its own expense during this Agreement the following insurance coverages with such insurers as shall be acceptable to Beth Israel in minimum limits of $1 million per occurrence and $2 million in the aggregate: comprehensive general liability, including products liability and contractual liability . COMPANY shall inform Beth Israel of any changes in or cancellation of such insurance.

d. Dr. Portenoy agrees to maintain, for the length of this agreement, professional errors and omissions (malpractice) insurance.

If the foregoing accurately reflects your understanding of our arrangement, please execute and return one fully executed copy of this letter Agreement to the undersigned.

Very truly yours,

*J. W. Stauffer DO.*

Name: Joseph Stauffer, DO
Title: Vice President, Clinical Research and Medical Affairs

ACCEPTED AND AGREED:

Print Name: *R Portenoy*

SS#: _          REDACTED

Date: *11/28/06*

3

**CONFIDENTIAL**

RP_000244



**ALPHARMA**®
Branded Products Division

One New England Avenue
Piscataway, NJ  08854
United States
Tel:  1-877-452-3426

November 27, 2006

Russell Portenoy, MD
Chairman
Department of Pain Medicine and Palliative Care
Beth Israel Hospital
1st Avenue at 16th Street
New York, NY 10003

Dear Dr. Portenoy:

This will letter will confirm our arrangement for consulting services to be provided by you ("Consultant") to Alpharma Branded Products Division Inc. (the "Company") in connection with an Advisory Board on Legal/Ethical Issues to be held on November 30-December 1, 2006, in Washington, District of Columbia, (the "Program") during which you will be asked to provide your perspectives on prominent issues concerning prescribing and using opioids for the management of chronic pain; implications of marketing abuse-deterrent opioid formulations; and potential legal/regulatory/medical concerns and challenges in encouraging abuse-deterrent opioid options in the management of chronic pain.  You will also be available to provide feedback to the Company on various issues relating to KADIAN® (collectively the "Consulting Services").  In the course of this consulting arrangement the Company agrees to pay you a consulting fee of $3,000.00 for the Consulting Services, plus reasonable travel expenses incurred in connection with your participation in the Program.

All consulting fees will be paid and travel expenses reimbursed within thirty (30) days after delivery of your invoice, together with appropriate receipts, to Genesis Healthcare, 1160 Route 22 East, Suite 301, Bridgewater, NJ 08807.  Genesis Healthcare will be responsible for issuing payment directly to you on behalf of the Company.  This Agreement shall terminate upon the completion of the Consulting Services and payment of any outstanding amounts due to you hereunder.  Your engagement as a Consultant to the Company hereunder shall be limited to your work in connection with and participation in the Program, as arranged through Genesis Healthcare.

Responsibilities of Consultant.  Consultant shall use his best efforts to (i) provide the Consulting Services in a professional manner to the best of his abilities in accordance with the terms hereof; (ii) keep the Company advised of the status of the Consulting Services; (iii) permit any representative duly authorized in writing by the Company to review and observe from time to time the provision of the Consulting Services; and (iv) keep accurate books and records documenting the provision of Consulting Services and provide the Company with reports, descriptions, outlines, procedures and the like, as are appropriate to the nature of the Consulting Services. The parties agree that the Consultant will not, except  as specifically authorized by the Company, have any authority to bind or act on behalf of the Company and the Consultant is expected to render the Consulting Services as negotiated from time to time by the parties upon their mutual agreement, all upon the terms and conditions hereinafter set forth.

1

**CONFIDENTIAL**

Compliance.  Consultant acknowledges that the Company operates in a regulated industry and as such must adhere to certain regulations with regard to retaining consultants and agents.  In that regard, Consultant covenants to reasonably comply with all applicable federal and state laws and regulations pertinent to the Consulting Services.

Ownership.  If, during the course of performing the Consulting Services, Consultant discloses to the Company any ideas, inventions or other similar innovation or information which may be patentable or copyrightable, Consultant agrees that such information will be the property of the Company and that the Consultant will at the Company's request and cost do, or cause to be done, whatever is reasonably necessary to secure the rights thereto by patent, copyright or otherwise to the Company.

Confidentiality.  Consultant agrees that all business, technical and financial information (including, without limitation, the identity of any information relating to products, equipment, strategy, customers or employees) which Consultant develops, learns or obtains in connection with preparing for the Program and in performing the Consulting Services or that are received by or for Company in confidence, constitute "Confidential and Proprietary Information." Consultant will hold in confidence and not disclose or, except in performing the Consulting Services, use any of the Confidential and Proprietary Information. However, Consultant shall not be obligated under this paragraph with respect to information Consultant can document is or becomes readily publicly available without restriction through no fault of Consultant or was known to Consultant at time of disclosure or independently developed by Consultant. Upon termination and as otherwise requested by Company, Consultant will promptly return to Company all items and copies containing or embodying Confidential and Proprietary Information, except that Consultant may keep its personal copies of its compensation records and this Agreement. The terms and conditions of this Paragraph shall survive any termination of this Agreement for a period of five (5) years.

Non-Disparagement.     The Consultant agrees that during the Term of this Agreement and all times thereafter, the Consultant shall not disparage the reputation of the Company or its product, the Company's affiliates, or any of their respective officers, directors, employees, or representatives.

Relationship of the Parties.  Notwithstanding any provision hereof, for all purposes of this Agreement each party shall be and act as an independent contractor and not as partner, joint venturer, or agent of the other and shall not bind nor attempt to bind the other to any contract. Consultant is an independent contractor and is solely responsible for all taxes, withholdings, and other statutory or contractual obligations of any sort, including, but not limited to, Workers' Compensation Insurance and Consultant agrees to defend, indemnify and hold Company harmless from any and all claims, damages, liability, attorneys' fees and expenses on account of an alleged failure by Consultant to satisfy any such obligations.

Assignment.  This Agreement and the services contemplated hereunder are personal to Consultant and Consultant shall not have the right or ability to assign, transfer, or subcontract any rights or obligations under this Agreement without the written consent of Company. Any attempt to do so shall be void.

Severability.  Each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Entire Agreement.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior agreements between them.  This Agreement may be amended only in writing executed by the parties hereto affected by such amendment.

Governing Law.  This Agreement shall be governed by the laws of the State of New Jersey, without giving effect to the conflicts of law principles thereof.

2

**CONFIDENTIAL**

<u>Acknowledgement</u>.  Consultant acknowledges that the Company has not imposed any obligation on Consultant in connection with this Agreement, or otherwise, to purchase, prescribe or likewise support the Company's product.

The following provisions run to the benefit, and are enforceable by Russell Portenoy, M.D. ("Consultant") and Beth Israel Medical Center ("Beth Israel"):

a.       COMPANY agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

b.  COMPANY agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) (collectively "Liabilities") asserted against any of the Indemnified Parties relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement unless such Liabilities are caused by the negligence or willful misconduct of the Indemnified Parties.  This provision shall survive the termination of this Agreement.

c.  COMPANY shall provide and maintain at its own expense during this Agreement the following insurance coverages with such insurers as shall be acceptable to Beth Israel in minimum limits of $1 million per occurrence and $2 million in the aggregate: comprehensive general liability, including products liability and contractual liability . COMPANY shall inform Beth Israel of any changes in or cancellation of such insurance.

d. Dr. Portenoy agrees to maintain, for the length of this agreement, professional errors and omissions (malpractice) insurance.

If the foregoing accurately reflects your understanding of our arrangement, please execute and return one fully executed copy of this letter Agreement to the undersigned.

Very truly yours,

*J. W. Stauffer DO.*

Name: Joseph Stauffer, DO
Title: Vice President, Clinical Research and Medical Affairs

ACCEPTED AND AGREED:

Print Name: _____

SS#: _____        REDACTED

Date: ___11/28/06___

**CONFIDENTIAL**

3

DATED                              2006


(1)   ARCHIMEDES PHARMA LIMITED


(2)   RUSSELL K. PORTENOY, MD

and

(3)   THE BETH ISRAEL MEDICAL CENTER

---

**CONSULTANCY AGREEMENT**

---

698066/3

CONFIDENTIAL

RP_000248

THIS AGREEMENT is made on                                    2006

BETWEEN:

(1)   **ARCHIMEDES PHARMA LIMITED** (registered no. 5308647) having an address of
      250 South Oak Way, Green Park, Reading, RG2 6UG ("Archimedes");

(2)   **RUSSELL K. PORTENOY, MD.** whose address is c/o Beth Israel Medical Center, First
      Avenue at 16th Street, New York. NY 10003 USA ("the Consultant") and

(3)   **THE BETH ISRAEL MEDICAL CENTER** of First Avenue at 16th Street, New York. NY
      10003 USA ("the Beth Israel")

BACKGROUND

A     Archimedes wishes to engage the services of the Consultant and the Consultant is
      willing to provide his services on the terms of this Agreement.

B     The Consultant is an employee of the Beth Israel, and the Beth Israel has approved
      the terms of this Agreement.

C     The Beth Israel is a party to this Agreement for the purposes only of clauses 5, 7 and
      9 and is not intended to be bound by or to benefit from the provisions appearing in
      the other clauses of this Agreement.

OPERATIVE PROVISIONS

1.    Definitions

      1.1.   In this Agreement, the following words and expressions have the following
             meanings:

             "Affiliate"                    means any natural or legal person which
                                            Controls, is Controlled by, or is under
                                            common Control with Archimedes;

             "Confidential Information"     means any information in any form or
                                            medium concerning the business, affairs,
                                            technology, plans, strategy, products or
                                            services (or future products or services) of
                                            Archimedes or of any Affiliate or of any
                                            person with whom Archimedes or any
                                            Affiliate is in business negotiations or has
                                            contracted or to whom Archimedes or any
                                            Affiliate owes a duty of confidence; including
                                            all information which is disclosed by
                                            Archimedes or any Affiliate to the Consultant
                                            and all information generated by the
                                            Consultant in the provision of the Services;

             "Control"                      means direct or indirect beneficial ownership
                                            of: more than fifty percent of the issued
                                            share capital or voting rights; or the legal

698066/3

CONFIDENTIAL                                                        RP_000249

Page 3

| | |
|---|---|
| | power to direct or cause the direction of or exercise a dominant influence over the management and policies of Archimedes or other such natural or legal person as the case may be (and variations such as "Controlled" and "Controlling" will be construed accordingly); |
| "Effective Date" | means the date of this Agreement; |
| "Intellectual Property" | means patents, trade marks, service marks, registered designs, copyrights, database rights, design rights, know-how, confidential information, applications for and rights to apply for any of the above, and any other similar rights recognised from time to time in any country, together with all rights of action in relation to the infringement of any of the above; |
| "Services" | means the consultancy services to be provided to Archimedes as set out in Schedule 1; |
| "Term" | means the period from the Effective date until 31st December 2006; |
| "Working Day" | means a period of 8 hours. |

## 2.    Commencement and duration

2.1.    This Agreement will come into force on the Effective Date and will subject to prior termination pursuant to clause 2.4 continue in force until the expiry of the Term. At that time the Agreement will be reviewed and may be renewed subject to the Consultants' and Archimedes' agreement.

2.2.    Archimedes may at its discretion terminate this Agreement prior to the expiry of the Term with or without service of all or any notice pursuant to clause 2.4.1 making a payment to the consultant equivalent to the sum of fees he would have earned had he worked until the expiry of the Term or the expiry of the notice period as the case may be, provided always that in the case of immediate termination pursuant to clause 2.4.2 the Consultant shall have no entitlement to receive any such payment in lieu of fees.

2.3.    Clauses 5, 6, 7, 8, 9.1, 9.3 and 9.5 will survive termination of this Agreement and will remain in force indefinitely.

698066/3

# CONFIDENTIAL

Page 4

2.4.     This Agreement may be terminated prior to the expiry of the Term, by

    2.4.1.     Either Archimedes or the Consultant serving on the other at least 3 months written notice of termination; or

    2.4.2.     Archimedes serving the Consultant with written notice of termination with immediate effect and without compensation if the Consultant shall have:

    a)     committed any serious or (after warning) persistent or continuing breach of this Agreement;

    b)     been guilty of any serious misconduct or gross neglect in the performance of the Services;

    c)     been guilty of any act, conduct or omission that causes or is likely to cause serious damage or discredit to Archimedes or any Affiliate or any customer of Archimedes.

## 3.    Provision of Services

3.1.     During the Term the Consultant will provide the Services at such times as may be reasonably requested by Archimedes on a "when needed" basis.

3.2.     The Consultant shall keep detailed records of all things done by him in relation to the provision of the Services and on request shall give access to or copies of such records to Archimedes, and shall provide such other written or oral advice or information regarding the Services, as Archimedes may reasonably require.

3.3.     The Consultant shall provide the Services to the best of his ability and in an expert and diligent manner.

## 4.    Payment Terms

4.1.     Archimedes will pay the Consultant a fee of $500 per hour for work done on an ad hoc basis in providing the Services. If more extensive work is required, such as for longer meetings or preparation of talks etc., then the fee for the work will be agreed in advance in the form of a written brief and response, on the basis of the hourly rate or $4000 per day.

4.2.     Archimedes will reimburse the Consultant for all reasonable out-of-pocket expenses properly incurred in performing the Services including the cost of hotel accommodation and travel expenses provided that any item of expenditure over $400 is approved by Archimedes before it is incurred.

4.3.     The Consultant will invoice Archimedes monthly in arrears detailing the hours worked and expenses incurred during the previous month and Archimedes will pay each invoice within 28 days after its date.

698066/3

**CONFIDENTIAL**

Page 5

5.    **Status of Consultant**

5.1.    Nothing in this Agreement is intended to create a contract of employment between Archimedes and the Consultant.  The Consultant acknowledges and agrees that he is an independent contractor and that this consulting arrangement will not give him any rights to any pension, insurance, car or other fringe benefits from Archimedes.

5.2.    The Consultant will indemnify and hold Archimedes harmless from any income tax or employee's or employer's National Insurance contributions or other statutory contributions or deductions due whether under the law of the United Kingdom or the United States on payments to the Consultant under this Agreement.  The Consultant will account for his income tax, VAT and National Insurance contributions or other statutory taxes, deductions or contributions (as applicable) to the appropriate authorities.

5.3.    The Consultant will have no authority and will not hold himself out as having:

4.3.1    any authority to incur any expenditure in the name of or for the account of Archimedes; or

4.3.2    any authority to do or say anything on behalf of or in the name of Archimedes

unless he is specifically authorised to do so by Archimedes in writing.

5.4.    The Consultant warrants that:

5.4.1.    by entering into this Agreement and providing the Services to Archimedes he will not be acting in breach of any term of his employment contract with the Beth Israel  or of any other employment or consultancy contract which he may have entered into prior to the Effective Date; and

5.4.2.    no third party will have any claim over any Intellectual Property that may be created by him in the course of providing the Services.

5.5    Beth Israel warrants that in entering into this Agreement and providing the Services to Archimedes the Consultant will not be acting in breach of any term of his employment contract with Beth Israel, and that Beth Israel will have no claim over any Intellectual Property that may be created by the Consultant in the course of providing the Services.

6.    **Confidentiality and Company Property**

6.1.    The Consultant will:

6.1.1.    keep all Confidential Information in strict confidence;

6.1.2.    not disclose any Confidential Information in whole or part to any third party without the prior written consent of Archimedes or as

698066/3

# CONFIDENTIAL

Page 6

otherwise expressly permitted by any other clause of this Agreement;

6.1.3.   use the Confidential Information exclusively for the purpose of providing the Services.

6.2.   The obligations set out in clause 6.1 will not apply to information that the Consultant can show by written records:

6.2.1.   was information that was in the public domain prior to the Effective Date or entered into the public domain after the Effective Date otherwise than by default on the part of the Consultant;

6.2.2.   became known to the Consultant by the action of a third party who the Consultant had no reason to believe to be in breach of any obligation of confidentiality to Archimedes or to any Affiliate; or

6.2.3.   was generated or acquired by the Consultant other than through the provision of the Services to Archimedes.

6.3.   The Consultant will not be in breach of the obligations set out in clause 6.1 to the extent that he is required to disclose Confidential Information by or to a court or other public or regulatory body that has jurisdiction over him, provided that disclosure is made only to the extent required and for the purpose of complying with that requirement and that the Consultant takes all reasonable measures to avoid further disclosure.

6.4.   The Consultant will promptly return to Archimedes all Confidential Information in his possession or under his control (including any copies) if requested to do so in writing by Archimedes at any time.

6.5.   All notes, computer disks and tapes, memoranda, correspondence, records, documents (including copies thereof) and other tangible items made, used or held by the Consultant during the continuance of this Agreement which relate directly or indirectly to Archimedes' business shall be and remain at all times the property of Archimedes.  Upon the termination of this Agreement (for whatever reason), the Consultant shall promptly deliver to Archimedes all such tangible items which are in his possession or under his control and which belong to Archimedes or any Affiliate, and/or contain Confidential Information.

## 7.   Intellectual Property Rights

7.1.   If any new Intellectual Property is conceived or created in the course of conducting the Services, all such Intellectual Property will belong to and be the absolute property of Archimedes and the Consultant and the  Beth Israel each hereby assign and agree to assign all of his or its interest in any such Intellectual Property to Archimedes.

7.2.   The Consultant will fully and promptly disclose to Archimedes any and all Intellectual Property created by him in the provision of the Services.

698066/3

**CONFIDENTIAL**

Page 7

7.3.   The Consultant and the Beth Israel will each take any further action and execute any document reasonably required by Archimedes to give effect to any of Archimedes rights under this Agreement or to enable their registration in any country provided that Archimedes pays their  reasonable expenses in doing so.

8.    **Indemnities**

8.1.   Archimedes agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

8.2.   Archimedes agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) asserted against any of the Indemnified Parties as a result of a third party claim against Archimedes relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement.  This provision shall survive the termination of this Agreement.

8.3.   Archimedes shall provide and maintain at its own expense during this Agreement the following insurance coverage with reputable insurers in minimum limits of $1 million per occurrence and $3 million in the aggregate: professional liability, comprehensive general liability, including products liability, contractual liability and errors and omissions.  Archimedes shall provide evidence of such insurance within 30 days of written request by Beth Israel, but not more than once in any 12 month period.

8.4.   Beth Israel confirms that it carries insurance coverage with reputable insurers in relation to: professional liability, comprehensive general liability, including errors and omissions, both for itself and the Consultant, in minimum limits of $1 million per occurrence and $3 million in the aggregate. Beth Israel shall provide evidence of such insurance within 30 days of written request by Archimedes, but not more than once in any 12 month period.

9.    **General**

9.1.   Any notice to be given under this Agreement must be in writing and delivered to the other party (or parties for the purposes of clauses 5, 7 and 9 which apply to the Beth Israel as well as to Archimedes and the Consultant) by hand, sent by prepaid first class post or sent by fax.  A notice will be deemed to take effect on the day it is delivered by hand, two business days after the date of posting or, if sent by fax on despatch provided that the sender has a printed transmission report confirming error free transmission of all pages to the correct fax number.

698066/3

**CONFIDENTIAL**

RP_000254

Page 8

The parties' addresses and fax numbers for the service of notices under this Agreement are as follows (until altered by notice given in accordance with this clause):

**For Archimedes**

Address:  250 South Oak Way, Green Park, Reading, Berks. RG2 6UG

Fax no:  +44 (0)118 931 5051

For the attention of: Michael Clark

**For the Consultant**

Address:  The Beth Israel Medical Center, First Avenue at 16th Street, New York. NY 10003 USA

Fax no:  +1 212 844 1465

**For Beth Israel**

Address:  The Beth Israel Medical Center, First Avenue at 16th Street, New York. NY 10003 USA

Fax no:  +1 212 844 1503

Copy to:  Continuum Health Partners Legal Affairs
555 West 57th Street, 18th Floor
New York, New York 10019

Fax no:  + 1 212 523-3935

9.2.   The Consultant may not assign or subcontract any of his rights or duties under this Agreement without the prior written consent of Archimedes.

9.3.   This Agreement sets out the entire agreement of the parties in relation to its subject matter.  The parties acknowledge that they  have not entered into this Agreement on the basis of any warranty, representation, statement agreement or undertaking except those expressly set out in this Agreement.

9.4.   No amendment or addition to this Agreement shall be effective unless it is in writing and signed by all the parties.

9.5.   This Agreement shall be governed and construed in accordance with English law and will be subject to the exclusive jurisdiction of the English courts, except that Archimedes may take whatever actions it deems fit in any jurisdiction if Archimedes believes it is necessary for the protection of the Confidential Information.

698066/3

# CONFIDENTIAL

Page 9

Signed by the parties on the date appearing at the head of this Agreement.

**SIGNED** for and on behalf of
**ARCHIMEDES PHARMA LIMITED**

Signature: ............ *Michael Clk* ...............

Name: ................ *MICHAEL CLARK* ...............

**SIGNED** by **RUSSELL K. PORTENOY, MD.**

Signature: ...........................................

**SIGNED** for and on behalf of

**BETH ISRAEL MEDICAL CENTER**

Signature: ...........................................
Name: ............ *DAVID SHULKIN, MD* ...............

698066/3

# CONFIDENTIAL

Page 10

## Schedule 1

### The Services

To provide clinical expert advice for the development of Archimedes' cancer pain and pain projects including, but not limited to Fentanyl Citrate Nasal Spray. These will take the form of meetings, written reports, presentations, conversations and email contact both ad hoc and project based. The consultant may also be required to chair and attend internal and external meetings for and on behalf of Archimedes.

698066/3

CONFIDENTIAL

DATED                              2006

(1)    ARCHIMEDES PHARMA LIMITED

(2)    RUSSELL K. PORTENOY, MD

and

(3)    THE BETH ISRAEL MEDICAL CENTER

CONSULTANCY AGREEMENT

69806673

CONFIDENTIAL

RP_000258

**THIS AGREEMENT** is made on                                    2006

**BETWEEN:**

(1)   **ARCHIMEDES PHARMA LIMITED** (registered no. 5308647) having an address of 250 South Oak Way, Green Park, Reading, RG2 6UG ("Archimedes");

(2)   **RUSSELL K. PORTENOY, MD.** whose address is c/o Beth Israel Medical Center, First Avenue at 16th Street, New York. NY 10003 USA ("the Consultant") and

(3)   **THE BETH ISRAEL MEDICAL CENTER** of First Avenue at 16th Street, New York. NY 10003 USA ("the Beth Israel")

**BACKGROUND**

A     Archimedes wishes to engage the services of the Consultant and the Consultant is willing to provide his services on the terms of this Agreement.

B     The Consultant is an employee of the Beth Israel, and the Beth Israel has approved the terms of this Agreement.

C     The Beth Israel is a party to this Agreement for the purposes only of clauses 5, 7 and 9 and is not intended to be bound by or to benefit from the provisions appearing in the other clauses of this Agreement.

**OPERATIVE PROVISIONS**

1.    **Definitions**

      1.1.   In this Agreement, the following words and expressions have the following meanings:

| | |
|---|---|
| "Affiliate" | means any natural or legal person which Controls, is Controlled by, or is under common Control with Archimedes; |
| "Confidential Information" | means any information in any form or medium concerning the business, affairs, technology, plans, strategy, products or services (or future products or services) of Archimedes or of any Affiliate or of any person with whom Archimedes or any Affiliate is in business negotiations or has contracted or to whom Archimedes or any Affiliate owes a duty of confidence; including all information which is disclosed by Archimedes or any Affiliate to the Consultant and all information generated by the Consultant in the provision of the Services; |
| "Control" | means direct or indirect beneficial ownership of: more than fifty percent of the issued share capital or voting rights; or the legal |

6980663

CONFIDENTIAL

RP_000259

Page 3

|  | power to direct or cause the direction of or exercise a dominant influence over the management and policies of Archimedes or other such natural or legal person as the case may be (and variations such as "Controlled" and "Controlling" will be construed accordingly); |
|---|---|
| "Effective Date" | means the date of this Agreement; |
| "Intellectual Property" | means patents, trade marks, service marks, registered designs, copyrights, database rights, design rights, know-how, confidential information, applications for and rights to apply for any of the above, and any other similar rights recognised from time to time in any country, together with all rights of action in relation to the infringement of any of the above; |
| "Services" | means the consultancy services to be provided to Archimedes as set out in Schedule 1; |
| "Term" | means the period from the Effective date until 31st December 2006; |
| "Working Day" | means a period of 8 hours. |

## 2. Commencement and duration

2.1.   This Agreement will come into force on the Effective Date and will subject to prior termination pursuant to clause 2.4 continue in force until the expiry of the Term. At that time the Agreement will be reviewed and may be renewed subject to the Consultants' and Archimedes' agreement.

2.2.   Archimedes may at its discretion terminate this Agreement prior to the expiry of the Term with or without service of all or any notice pursuant to clause 2.4.1 making a payment to the consultant equivalent to the sum of fees he would have earned had he worked until the expiry of the Term or the expiry of the notice period as the case may be, provided always that in the case of immediate termination pursuant to clause 2.4.2 the Consultant shall have no entitlement to receive any such payment in lieu of fees.

2.3.   Clauses 5, 6, 7, 8, 9.1, 9.3 and 9.5 will survive termination of this Agreement and will remain in force indefinitely.

CONFIDENTIAL

Page 4

2.4. This Agreement may be terminated prior to the expiry of the Term, by

    2.4.1. Either Archimedes or the Consultant serving on the other at least 3 months written notice of termination; or

    2.4.2. Archimedes serving the Consultant with written notice of termination with immediate effect and without compensation if the Consultant shall have:

    a) committed any serious or (after warning) persistent or continuing breach of this Agreement;

    b) been guilty of any serious misconduct or gross neglect in the performance of the Services;

    c) been guilty of any act, conduct or omission that causes or is likely to cause serious damage or discredit to Archimedes or any Affiliate or any customer of Archimedes.

## 3. Provision of Services

3.1. During the Term the Consultant will provide the Services at such times as may be reasonably requested by Archimedes on a "when needed" basis.

3.2. The Consultant shall keep detailed records of all things done by him in relation to the provision of the Services and on request shall give access to or copies of such records to Archimedes, and shall provide such other written or oral advice or information regarding the Services, as Archimedes may reasonably require.

3.3. The Consultant shall provide the Services to the best of his ability and in an expert and diligent manner.

## 4. Payment Terms

4.1. Archimedes will pay the Consultant a fee of $500 per hour for work done on an ad hoc basis in providing the Services. If more extensive work is required, such as for longer meetings or preparation of talks etc., then the fee for the work will be agreed in advance in the form of a written brief and response, on the basis of the hourly rate or $4000 per day.

4.2. Archimedes will reimburse the Consultant for all reasonable out-of-pocket expenses properly incurred in performing the Services including the cost of hotel accommodation and travel expenses provided that any item of expenditure over $400 is approved by Archimedes before it is incurred.

4.3. The Consultant will invoice Archimedes monthly in arrears detailing the hours worked and expenses incurred during the previous month and Archimedes will pay each invoice within 28 days after its date.

69809673

**CONFIDENTIAL**

Page 5

5.     **Status of Consultant**

5.1.   Nothing in this Agreement is intended to create a contract of employment between Archimedes and the Consultant.  The Consultant acknowledges and agrees that he is an independent contractor and that this consulting arrangement will not give him any rights to any pension, insurance, car or other fringe benefits from Archimedes.

5.2.   The Consultant will indemnify and hold Archimedes harmless from any income tax or employee's or employer's National Insurance contributions or other statutory contributions or deductions due whether under the law of the United Kingdom or the United States on payments to the Consultant under this Agreement.  The Consultant will account for his income tax, VAT and National Insurance contributions or other statutory taxes, deductions or contributions (as applicable) to the appropriate authorities.

5.3.   The Consultant will have no authority and will not hold himself out as having:

4.3.1   any authority to incur any expenditure in the name of or for the account of Archimedes; or

4.3.2   any authority to do or say anything on behalf of or in the name of Archimedes

unless he is specifically authorised to do so by Archimedes in writing.

5.4.   The Consultant warrants that:

5.4.1.   by entering into this Agreement and providing the Services to Archimedes he will not be acting in breach of any term of his employment contract with the Beth Israel  or of any other employment or consultancy contract which he may have entered into prior to the Effective Date; and

5.4.2.   no third party will have any claim over any Intellectual Property that may be created by him in the course of providing the Services.

5.5    Beth Israel warrants that in entering into this Agreement and providing the Services to Archimedes the Consultant will not be acting in breach of any term of his employment contract with Beth Israel, and that Beth Israel will have no claim over any Intellectual Property that may be created by the Consultant in the course of providing the Services.

6.     **Confidentiality and Company Property**

6.1.   The Consultant will:

6.1.1.   keep all Confidential Information in strict confidence;

6.1.2.   not disclose any Confidential Information in whole or part to any third party without the prior written consent of Archimedes or as

6980603

**CONFIDENTIAL**

Page 6

otherwise expressly permitted by any other clause of this Agreement;

6.1.3.  use the Confidential Information exclusively for the purpose of providing the Services.

6.2.  The obligations set out in clause 6.1 will not apply to information that the Consultant can show by written records:

6.2.1.  was information that was in the public domain prior to the Effective Date or entered into the public domain after the Effective Date otherwise than by default on the part of the Consultant;

6.2.2.  became known to the Consultant by the action of a third party who the Consultant had no reason to believe to be in breach of any obligation of confidentiality to Archimedes or to any Affiliate; or

6.2.3.  was generated or acquired by the Consultant other than through the provision of the Services to Archimedes.

6.3.  The Consultant will not be in breach of the obligations set out in clause 6.1 to the extent that he is required to disclose Confidential Information by or to a court or other public or regulatory body that has jurisdiction over him, provided that disclosure is made only to the extent required and for the purpose of complying with that requirement and that the Consultant takes all reasonable measures to avoid further disclosure.

6.4.  The Consultant will promptly return to Archimedes all Confidential Information in his possession or under his control (including any copies) if requested to do so in writing by Archimedes at any time.

6.5.  All notes, computer disks and tapes, memoranda, correspondence, records, documents (including copies thereof) and other tangible items made, used or held by the Consultant during the continuance of this Agreement which relate directly or indirectly to Archimedes' business shall be and remain at all times the property of Archimedes.  Upon the termination of this Agreement (for whatever reason), the Consultant shall promptly deliver to Archimedes all such tangible items which are in his possession or under his control and which belong to Archimedes or any Affiliate, and/or contain Confidential Information.

7.  **Intellectual Property Rights**

7.1.  If any new Intellectual Property is conceived or created in the course of conducting the Services, all such Intellectual Property will belong to and be the absolute property of Archimedes and the Consultant and the  Beth Israel each hereby assign and agree to assign all of his or its interest in any such Intellectual Property to Archimedes.

7.2.  The Consultant will fully and promptly disclose to Archimedes any and all Intellectual Property created by him in the provision of the Services.

69806873

**CONFIDENTIAL**

Page 7

7.3. The Consultant and the Beth Israel will each take any further action and execute any document reasonably required by Archimedes to give effect to any of Archimedes rights under this Agreement or to enable their registration in any country provided that Archimedes pays their reasonable expenses in doing so.

8. **Indemnities**

8.1. Archimedes agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

8.2. Archimedes agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) asserted against any of the Indemnified Parties as a result of a third party claim against Archimedes relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement. This provision shall survive the termination of this Agreement.

8.3. Archimedes shall provide and maintain at its own expense during this Agreement the following insurance coverage with reputable insurers in minimum limits of $1 million per occurrence and $3 million in the aggregate: professional liability, comprehensive general liability, including products liability, contractual liability and errors and omissions. Archimedes shall provide evidence of such insurance within 30 days of written request by Beth Israel, but not more than once in any 12 month period.

8.4. Beth Israel confirms that it carries insurance coverage with reputable insurers in relation to: professional liability, comprehensive general liability, including errors and omissions, both for itself and the Consultant, in minimum limits of $1 million per occurrence and $3 million in the aggregate. Beth Israel shall provide evidence of such insurance within 30 days of written request by Archimedes, but not more than once in any 12 month period.

9. **General**

9.1. Any notice to be given under this Agreement must be in writing and delivered to the other party (or parties for the purposes of clauses 5, 7 and 9 which apply to the Beth Israel as well as to Archimedes and the Consultant) by hand, sent by prepaid first class post or sent by fax. A notice will be deemed to take effect on the day it is delivered by hand, two business days after the date of posting or, if sent by fax on despatch provided that the sender has a printed transmission report confirming error free transmission of all pages to the correct fax number.

69806673

CONFIDENTIAL

Page 8

The parties' addresses and fax numbers for the service of notices under this Agreement are as follows (until altered by notice given in accordance with this clause):

**For Archimedes**

| | |
|---|---|
| Address: | 250 South Oak Way, Green Park, Reading, Berks. RG2 6UG |
| Fax no: | +44 (0)118 931 5051 |

For the attention of: Michael Clark

**For the Consultant**

| | |
|---|---|
| Address: | The Beth Israel Medical Center, First Avenue at 16th Street, New York. NY 10003 USA |
| Fax no: | +1 212 844 1465 |

**For Beth Israel**

| | |
|---|---|
| Address: | The Beth Israel Medical Center, First Avenue at 16th Street, New York. NY 10003 USA |
| Fax no: | +1 212 844 1503 |
| Copy to: | Continuum Health Partners Legal Affairs 555 West 57th Street, 18th Floor New York, New York 10019 |
| Fax no: | + 1 212 523-3935 |

9.2.  The Consultant may not assign or subcontract any of his rights or duties under this Agreement without the prior written consent of Archimedes.

9.3.  This Agreement sets out the entire agreement of the parties in relation to its subject matter.  The parties acknowledge that they  have not entered into this Agreement on the basis of any warranty, representation, statement agreement or undertaking except those expressly set out in this Agreement.

9.4.  No amendment or addition to this Agreement shall be effective unless it is in writing and signed by all the parties.

9.5.  This Agreement shall be governed and construed in accordance with English law and will be subject to the exclusive jurisdiction of the English courts, except that Archimedes may take whatever actions it deems fit in any jurisdiction if Archimedes believes it is necessary for the protection of the Confidential Information.

698066/3

**CONFIDENTIAL**

Page 9

Signed by the parties on the date appearing at the head of this Agreement.

**SIGNED** for and on behalf of
**ARCHIMEDES PHARMA LIMITED**

Signature: ..............................................................................

Name: ..............................................................................

**SIGNED** by **RUSSELL K. PORTENOY, MD.**

Signature: ..............................................................................

**SIGNED** for and on behalf of

**BETH ISRAEL MEDICAL CENTER**

Signature: ..............................................................................
Name: ............... DAVID  SHULKIN, MD .................

69806673

CONFIDENTIAL

RP_000266

Page 10

## Schedule 1

## The Services

To provide clinical expert advice for the development of Archimedes' cancer pain and pain projects including, but not limited to Fentanyl Citrate Nasal Spray. These will take the form of meetings, written reports, presentations, conversations and email contact both ad hoc and project based. The consultant may also be required to chair and attend internal and external meetings for and on behalf of Archimedes.

6980443

CONFIDENTIAL

**BethIsrael**

University Hospital and
Manhattan Campus for
the Albert Einstein College
of Medicine

**Department of Pain Medicine
and Palliative Care
Beth Israel Medical Center**
Milton and Carroll Petrie Division
First Avenue at 16th Street
New York, NY 10003
Fax: 212 844 1503

www.WeHealNewYork.org

TO:         David Sulkin, MD

FROM:     Russell K. Portenoy, MD

DATE:     February 27, 2006

RE:          Signature on Agreement

I enclose consultations agreements between a company named Archimedes Pharma Limited and me.  It is a routine agreement that has been fully vetted by Ellen Rosenthal in Legal Affairs.  The company however, requests an institutional signature in addition to mine.

This request for consultation related to study methodology is similar to many others I have done. It often lead to studies that are offered to my department.

Would you be willing to sign these copies and return them to me?

Thank you.

CC: Ellen Rosenthal

**Continuum** Health Partners, Inc.







CONFIDENTIAL

## CONFIDENTIALITY AGREEMENT

**THIS AGREEMENT** is made on the          day of                                    2005

**BETWEEN**

(1)     **ARCHIMEDES PHARMA LIMITED** (registered no. 5308647) having an address at Albert Einstein Centre, Nottingham Science and Technology Park, University Boulevard, Nottingham, NG7 2TN ("Archimedes"); and

(2)     **Dr Russell K Portenoy** whose address is **Beth Israel Medical Centre Department of Pain & Palliative Care New York, New York** ("Recipient").

**BACKGROUND**

Archimedes wishes to disclose and the Recipient wishes to receive certain Confidential Information on the terms set out in this Agreement.

**OPERATIVE PROVISIONS**

1.      In this Agreement the following words shall have the following meanings:

"Confidential Information"          means any information in any form or medium disclosed by Archimedes to the Recipient by any means at any time concerning the business, affairs, technology, plans, strategy, products or services (or future products or services of Archimedes or of any person with whom Archimedes is in business negotiations or has contracted or to whom Archimedes owes a duty of confidence;

"Purpose"          means the provision of advice to Archimedes as part of a Scientific Advisory Board for the product fentanyl citrate nasal spray

2.      In consideration of the disclosure of Confidential Information by Archimedes to the Recipient, the Recipient agrees:

2.1.    to keep all Confidential Information in strict confidence and to use at least the same level of care in safeguarding it that it uses with its own material of a similar nature;

2.2.    not to disclose any Confidential Information in whole or in part to any third party without the prior written consent of Archimedes, or as otherwise expressly permitted by any other clause of this Agreement; and

2.3.    to use the Confidential Information exclusively for the Purpose.

3.      The obligations of confidentiality set out in clause 2 will not apply to any Confidential Information that the Recipient can show by written records:

647463/1

# CONFIDENTIAL

Page 2

3.1.  was known to the Recipient prior to its disclosure by Archimedes or is information that is generally available to the public through no act or default on the part of the Recipient;

3.2.  was not acquired directly or indirectly from Archimedes but was obtained from a third party who was not under any obligation of confidence with respect to the Confidential Information;

3.3.  was generated by it or on its behalf independently of the disclosure of Confidential Information by Archimedes.

4.  The Recipient will not be in breach of its obligations under clause 2 to the extent that it is required to disclose Confidential Information by or to a court or other public or regulatory body that has jurisdiction over it, provided that disclosure is made only to the extent required and for the purposes of complying with that requirement and that the Recipient takes all reasonable measures to avoid further disclosure.

5.  The Recipient will return immediately to Archimedes all Confidential Information in its possession or under its control (including any copies) if requested to do so in writing by Archimedes at any time.

6.  The obligations on the Recipient under this Agreement will continue in force for a period of 5 years after the date of this Agreement.

7.  This Agreement will be governed by and construed in accordance with the laws of the State of New York (or remain silent)

**SIGNED BY AND ON BEHALF OF )**
**ARCHIMEDES PHARMA LIMITED )**

Name: MICHAEL CLARK

Position: GROUP MARKETING AND BUSINESS DEVELOPMENT DIRECTOR

**SIGNED BY Russell K Portenoy**

647463/1

# CONFIDENTIAL

# CONFIDENTIALITY AGREEMENT

**THIS AGREEMENT** is made on the          day of                              2005

**BETWEEN**

(1)  **ARCHIMEDES PHARMA LIMITED** (registered no. 5308647) having an address at Albert Einstein Centre, Nottingham Science and Technology Park, University Boulevard, Nottingham, NG7 2TN ("Archimedes"); and

(2)  **Dr Russell K Portenoy** whose address is **Beth Israel Medical Centre Department of Pain & Palliative Care New York, New York** ("Recipient").

**BACKGROUND**

Archimedes wishes to disclose and the Recipient wishes to receive certain Confidential Information on the terms set out in this Agreement.

**OPERATIVE PROVISIONS**

1.      In this Agreement the following words shall have the following meanings:

"Confidential Information"      means any information in any form or medium disclosed by Archimedes to the Recipient by any means at any time concerning the business, affairs, technology, plans, strategy, products or services (or future products or services of Archimedes or of any person with whom Archimedes is in business negotiations or has contracted or to whom Archimedes owes a duty of confidence;

"Purpose"      means the provision of advice to Archimedes as part of a Scientific Advisory Board for the product fentanyl citrate nasal spray

2.      In consideration of the disclosure of Confidential Information by Archimedes to the Recipient, the Recipient agrees:

2.1.      to keep all Confidential Information in strict confidence and to use at least the same level of care in safeguarding it that it uses with its own material of a similar nature;

2.2.      not to disclose any Confidential Information in whole or in part to any third party without the prior written consent of Archimedes or as otherwise expressly permitted by any other clause of this Agreement; and

2.3.      to use the Confidential Information exclusively for the Purpose.

3.      The obligations of confidentiality set out in clause 2 will not apply to any Confidential Information that the Recipient can show by written records:

647463/1

# CONFIDENTIAL

3.1.    was known to the Recipient prior to its disclosure by Archimedes or is information that is generally available to the public through no act or default on the part of the Recipient;

3.2.    was not acquired directly or indirectly from Archimedes but was obtained from a third party who was not under any obligation of confidence with respect to the Confidential Information;

3.3.    was generated by it or on its behalf independently of the disclosure of Confidential Information by Archimedes.

4.    The Recipient will not be in breach of its obligations under clause 2 to the extent that it is required to disclose Confidential Information by or to a court or other public or regulatory body that has jurisdiction over it, provided that disclosure is made only to the extent required and for the purposes of complying with that requirement and that the Recipient takes all reasonable measures to avoid further disclosure.

5.    The Recipient will return immediately to Archimedes all Confidential Information in its possession or under its control (including any copies) if requested to do so in writing by Archimedes at any time.

6.    The obligations on the Recipient under this Agreement will continue in force for a period of 5 years after the date of this Agreement.

7.    This Agreement will be governed by and construed in accordance with the laws of the State of New York (or remain silent)

**SIGNED BY AND ON BEHALF OF )**
**ARCHIMEDES PHARMA LIMITED )**    .......................................

Name:

Position:

**SIGNED BY Russell K Portenoy**     ...........................................

647463/1

# CONFIDENTIAL



December 8, 2005

<u>VIA FEDERAL EXPRESS</u>

Russell K. Portenoy, MD
Department of Pain Medicine and Palliative Care
Beth Israel Medical Center
First Avenue at 16th St.
New York, NY, USA, 10003

Dear Dr. Portenoy:

Thank you for agreeing to serve as an advisor for Biovail's important pain management drug development advisory board, *Advancing Pain Management: Exploring New Treatment Options*.

Enclosed for your review and signature, please find two copies of the Biovail Consulting Agreement.  Please sign, date, and return *both* of these Agreements by December 16, 2005, using the enclosed envelope; note that this also requires a witness signature.  Unless you have made individual arrangements with us, this agreement reflects your commitment to complete assigned pre-work and fully participate in this meeting from 6:00 pm on December 21 through 4:00 pm on December 22.

As a reminder, the meeting will take place at the Sofitel New York.  The program will start with a reception at 6:00 pm on December 21, followed by a Biovail technology presentation at 7:00 p.m.  This presentation is a required component of your participation in this advisory board, as it provides important context for the meeting.

We will be in touch with you to further coordinate program details.  In the interim, if you have any questions, please do not hesitate to contact me via telephone at (973) 830-8415 or e-mail at lschlossberg@clarushealth.com.

Sincerely,

Lauren Schlossberg
Director, Strategic Services

Enclosures

CONFIDENTIAL

**ABBOTT**

Global Pharmaceutical Research and Development

Abbott Laboratories
100 Abbott Park Road
Abbott Park, Illinois 60064-3500

### PROFESSIONAL SERVICES AGREEMENT

Abbott Laboratories ("Abbott") desires to retain Russell Portenoy, MD ("You"), with an address of First Avenue at 16th Street, Department of Pain Medicine and Palliative Care, Beth Israel Medical Center, New York, NY  10003, and social security number 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, as a consultant on the following terms and conditions.

1. <u>Professional Services</u>. As Abbott reasonably directs, You shall perform the activities set forth in Exhibit A (attached hereto and made a part hereof), which may be amended in writing by the parties at any time (the "Services"). As Abbott may reasonably request, You shall submit written reports on the progress of the Services.

2. <u>Contacts</u>. Your Abbott contact will be Victor Jorden, MD, MPH, or whomever Abbott may designate. Abbott's contact with You will be Russell Portenoy, MD.

3. <u>Compensation</u>. In consideration for Your performance of the Services described in this Agreement, Abbott shall pay You an amount not to exceed Twenty-Seven Thousand Dollars ($27,000.00) during the term of this Agreement, as described in Exhibit A.  This total compensation is inclusive of all reasonable and necessary travel (coach class if by air, consistent with Abbott's travel policy) and out-of-pocket expenses (food, telephone calls and lodging, where applicable) as authorized by Abbott and incurred by You in performing the Services.  In the event of premature termination of the Agreement by Abbott, Abbott shall pay You for Services performed on a prorated basis and for all reasonable and necessary out-of-pocket expenses incurred by You through the date of termination. Abbott shall pay You upon receipt and approval of an invoice and appropriate receipts, similar to the form as set forth in Exhibit B attached hereto, containing reasonable documentation of Services performed by You.

4. <u>Compliance</u>. In performance of the Services, You shall comply with all applicable laws, regulations and guidance documents including but not limited to rules governing healthcare programs. In addition, while on Abbott's premises You shall comply with Abbott's policies.

5. <u>Term and Termination</u>. This Agreement shall be effective upon full execution by the parties and shall be effective for a period of one (1) year thereafter. Abbott may immediately terminate this Agreement without cause upon notice to You. Either party may terminate this Agreement immediately upon written notice to the other party in the event of a breach by the other party of a material provision of this Agreement that remains uncured thirty (30) days following receipt of notice of such breach from the non-breaching party. Termination or expiration of this Agreement shall not affect any rights or obligations which have accrued prior thereto or in connection therewith, or any obligations hereunder which by their terms should survive termination or expiration.

6. <u>Confidential Information</u>. During the term of this Agreement and thereafter, You shall not disclose or use Confidential Information except as permitted in this Agreement or in writing by Abbott. You agree that any of Your employees, agents or subcontractors having access to the Confidential Information under this Agreement shall abide by the confidentiality obligations set forth in this Agreement. "Confidential Information" shall mean all information, data and materials concerning Abbott and the Services disclosed to You by or on behalf of Abbott, or developed as a result of Your performance of the Services, including but not limited to any individually identifiable health information, except any portion thereof which: (a) is known to You on a non-confidential basis before receipt thereof under this Agreement, as evidenced by Your written records; (b) is disclosed to You after acceptance of this Agreement by a third party having a right to make such disclosure in a non-confidential manner; or (c) is or becomes part of the public domain through no fault of Your own. You shall not disclose to Abbott any information which is confidential and/or proprietary to a third party without first obtaining the written consent of both such third party and Abbott. Upon the earlier of completion of the Services or termination or expiration of this Agreement, You shall return to Abbott all Confidential Information

Template: PSA 05.02.2005
Document Title: 12445 FINAL.doc

**CONFIDENTIAL**

Page 1
File Version: 1/4/2006 5:48 PM, 13,579

RP_000274

CONFIDENTIAL



Portenoy, MD, Russell
January 4, 2006

provided to You by or on behalf of Abbott, or developed by You as a result of Your performance of the Services, as requested by Abbott. Nothing in this Agreement shall be construed to restrict You from disclosing Abbott's Confidential Information as required by law or court order or other governmental order, provided in each case that You shall timely inform Abbott so that Abbott may seek a protective order.

7.  <u>Deliverables and Work Product</u>. All reports, communications, material, information, innovations, inventions or discoveries (whether or not patentable or copyrightable) conceived, reduced to practice, made or developed by You solely or jointly with others in connection with Your performance of the Services shall be promptly disclosed to and be the sole property of Abbott, and You hereby assign to Abbott all right, title and interest therein without any obligation on Abbott to pay royalties or other remuneration therefore. To the extent the foregoing is copyrightable (including, without limitation, computer programs, source code, object code and supporting documentation), it shall be deemed a Work Made for Hire or alternatively a Specially Commissioned Work under the Copyright Act of 1976 and shall become and remain the sole property of Abbott. To the extent any such material may not be a Work Made for Hire, You agree to assign and do hereby assign such material to Abbott. At Abbott's request and expense, You shall execute such documents and take such other actions, as Abbott deems necessary or appropriate, to obtain, record or enforce patents, copyrights or assignments thereof in Abbott's name. Notwithstanding the foregoing, Abbott shall not acquire ownership of any materials, information, know-how, tools, models, methodologies, techniques and/or other intellectual property owned by You prior to Your performance of Services under this Agreement or that is licensed by You from any third party (all of the foregoing, "Pre-existing Intellectual Property"). You hereby grant to Abbott a non-exclusive, irrevocable, royalty-free worldwide license to use, modify, and enhance such Pre-existing Intellectual Property (including the right to sublicense) to the extent that such license is required to enable Abbott to make use of Your Services hereunder, including without limitation any deliverables and work product.

8.  <u>Presentations, Publications and Publicity</u>. You shall not present or publish, nor submit for publication, any work resulting from the Services without Abbott's prior written approval. You shall not use Abbott's name in any publicity, advertising or announcement, or disclose the existence or terms of this Agreement, without Abbott's prior written consent (which is in its sole discretion to grant or withhold).

9.  <u>Representation and Warranties</u>. Each party represents and warrants that: (a) neither this Agreement, nor any payment hereunder, is in exchange for any explicit or implicit agreement or understanding that You purchase, lease, order, prescribe, recommend or otherwise arrange for, or provide formulary or other preferential or qualifying status for the use of Abbott products; and (b) the total payment for the Services represents the fair market value for the Services and has not been determined in any manner that takes into account the volume or value of any referrals or business between You and Abbott. You represent and warrant that if the scope of Services includes promotional speaking about Abbott's products, the contents of the presentation will be within approved product labeling. You represent and warrant that the terms of this Agreement are not inconsistent with any other contractual or legal obligations You may have or with the policies of any institution with which You are associated, and that You have obtained approval from the institution(s) with which You are associated for Your provision of the Services, including the compensation to be paid to You hereunder. If You are an employee or special employee of any government, You acknowledge that:

   a.  Abbott is not offering this compensation because of Your official position, or

   b.  Abbott is offering this compensation because of Your official position and You have received written authorization from Your agency's ethics official or an internal agency procedure exists authorizing acceptance of such compensation.

   If b. above, attach authorization or copy of internal agency procedure, as applicable, to this document.

CONFIDENTIAL



Portenoy, MD, Russell
January 4, 2006

If to Abbott, address to:

Abbott Laboratories
Victor Jorden, MD, MPH
Medical Director
Dept. R440, Bldg. AP34
100 Abbott Park Road
Abbott Park, IL 60064-3500
Phone: 847-935-7775
Fax:  847-935-7633

Invoices shall be sent to:

Abbott Laboratories
Victor Jorden, MD, MPH
Medical Director
Dept. R440, Bldg. AP34
100 Abbott Park Road
Abbott Park, IL 60064-3500

With a copy to:

Abbott Laboratories
Divisional Vice President
Domestic Legal Operations
D322, Bldg. AP6D
100 Abbott Park Road
Abbott Park, IL  60064
Fax: -847-938-1206

13. <u>Indemnification</u>.  You agree to indemnify Abbott and its affiliates, employees, directors, officers and agents and hold them harmless against any liability, judgment, demand, action, suit, loss, damage, cost and other expense (including but not limited to reasonable attorneys' fees and court costs) ("Liability") resulting from any third party claims made or proceedings brought against Abbott to the extent such Liability arises as a result of Your negligence, willful misconduct or breach of the representations and warranties set forth in this Agreement.

14. <u>Miscellaneous</u>. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all previous agreements and undertakings with respect thereto. This Agreement may be modified only by written agreement signed by the parties. You may not assign this Agreement or any interest herein, or delegate any duty hereunder, to any third party without Abbott's prior written consent (which is in its sole discretion to grant or withhold). This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, excluding its conflicts of laws provisions.

AGREED:

ABBOTT LABORATORIES

By: _Joseph M Bebay_

Name: _Joseph M Bebay_

Title: GPRD Outsourcing Manager

Date: 05 - Jan - 2006

AGREED:

RUSSELL PORTENOY, MD

By: _____

Name: _____

Title: _____

Date: _____

CONFIDENTIAL

RP_000276



Portenoy, MD, Russell
January 4, 2006

10. <u>Debarment and Exclusion</u>. You represent and warrant that neither You, nor any of Your employees or agents performing Services hereunder, have ever been, are currently, or are the subject of a proceeding that could lead to You or such employees or agents becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual. You further covenant, represent and warrant that if, during the term of this Agreement, You, or any of Your employees or agents performing Services hereunder, become or are the subject of a proceeding that could lead to that party becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual, You shall immediately notify Abbott, and Abbott shall have the right to immediately terminate this Agreement. This provision shall survive termination or expiration of this Agreement. For purposes of this provision, the following definitions shall apply:

    a.    A "Debarred Individual" is an individual who has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from providing services in any capacity to a person that has an approved or pending drug product application.

    b.    A "Debarred Entity" is a corporation, partnership or association that has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from submitting or assisting in the submission of any abbreviated drug application, or a subsidiary or affiliate of a Debarred Entity.

    c.    An "Excluded Individual" or "Excluded Entity" is (i) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal health care programs such as Medicare or Medicaid by the Office of the Inspector General (OIG/HHS) of the U.S. Department of Health and Human Services, or (ii) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal procurement and non-procurement programs, including those produced by the U.S. General Services Administration (GSA).

    d.    A "Convicted Individual" or "Convicted Entity" is an individual or entity, as applicable, who has been convicted of a criminal offense that falls within the ambit of 21 U.S.C. §335a(a) or 42 U.S.C. §1320a - 7(a), but has not yet been excluded, debarred, suspended or otherwise declared ineligible.

11. <u>Independent Contractor</u>. Your status under this Agreement is that of an independent contractor. You shall not be deemed an employee, agent, partner or joint venturer of Abbott for any purpose whatsoever, and You shall have no authority to bind or act on behalf of Abbott. This Agreement shall not entitle You to participate in any benefit plan or program of Abbott. You shall be responsible for, and agree to comply with, obligations under all applicable tax laws for payment of income and, if applicable, self-employment tax. You are not entitled to worker's compensation coverage by Abbott, and You hereby waive any and all rights You may have to be covered under Abbott's worker's compensation policies.

12. <u>Notices</u>. All notices hereunder shall be in writing and shall be either deposited in the United States mail, certified mail, return receipt requested with postage paid, or personally delivered by express courier or faxed as follows:

    **If to You, address to:**

    Russell Portenoy, MD
    Department of Pain Medicine and Palliative Care
    First Avenue at 16th Street
    New York, NY  10003

CONFIDENTIAL



Portenoy, MD, Russell
January 4, 2006

## EXHIBIT A

## Description of Professional Services

1.  Scope of Project (detailed description of Services to be performed):

    You will act as a medical consultant on an as-needed basis to Abbott's Pain Care Team. Working in this capacity, You may be asked to provide input based on your experience in and knowledge of analgesia clinical trials and analgesia drug development, including but not limited to the following:

    - Review of clinical research protocols, from conceptual basis to finished product
    - Overall assessment of clinical development program
    - Development of Phase III program
    - Life-cycle management
    - Attend meetings and/or conference calls as needed when requested by Abbott

2.  Deliverables/Timelines/Payment Terms:

| Deliverable(s) | Due Date/ Timeline | Payment Terms | Total |
|---|---|---|---|
| Medical consulting on an as-needed basis. | Timelines for completion will be mutually agreed upon for each request at the time it is made. | $500.00/hr. for a total of 50 hours | $25,000.00 |
| | | | |

| | |
|---|---|
| Subtotal | $25,000.00 |
| Travel and out-of-pocket expenses (not to exceed) | $2,000.00 |
| Total Compensation (not to exceed) | $27,000.00 |

(Invoices must be submitted with all requests for payment)

Template: PSA 05.02.2005
Document Title: 12445 FINAL.doc

CONFIDENTIAL

File Version: 1/4/2006 5:48 PM, 13,579

CONFIDENTIAL

RP_000278



Portenoy, MD, Russell
January 4, 2006

## EXHIBIT B

Invoice # _____

Statement for Services Provided in Accordance with the Professional Services Agreement

Period of _____, 200_

to

_____, 200_

| Number of Hours/Days Worked or Project Deliverable | Brief Description of Services Performed |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| AIRFARE |  |
| GROUND TRANSPORTATION |  |
| LODGING |  |
| MEALS |  |
| TELEPHONE |  |

Total Costs: _____

Individual certifies that the Services described above, as more fully set forth in the Agreement, have been provided. Additional details and receipts are provided on the attached pages.

Signature: _____

Tax I.D. # _____

Date: _____

Template: PSA 05.02.2005
Document Title: 12445 FINAL.doc

**CONFIDENTIAL**

File Version: 1/4/2006 5:48 PM, 13,579

CONFIDENTIAL

RP_000279